1  UNITED STATES BANKRUPTCY COURT

2  NORTHERN DISTRICT OF CALIFORNIA

3  -oOo-

4  In Re:                          ) Case No. 19-30088
                                   ) Chapter 11
5  PG&E CORPORATION AND PACIFIC    )
   GAS AND ELECTRIC COMPANY,       ) San Francisco, California
6                                  ) Tuesday, November 9, 2021
                        Debtors.   ) 10:00 AM
7  _____
                                   REORGANIZED DEBTORS' SEVENTY-
8                                  SIXTH OMNIBUS OBJECTION TO
                                   CLAIMS (NO LIABILITY /
9                                  PASSTHROUGH CLAIMS) FILED BY
                                   PG&E CORPORATION [10537]
10
                                   REORGANIZED DEBTORS' SEVENTY-
11                                 NINTH OMNIBUS OBJECTION TO
                                   CLAIMS (BOOKS AND RECORDS
12                                 CLAIMS) FILED BY PG&E
                                   CORPORATION [10673]
13
                                   REORGANIZED DEBTORS'
14                                 OBJECTION TO PROOF OF CLAIM
                                   NO. 58562 FILED BY FULCRUM
15                                 CREDIT PARTNERS LLC AS
                                   TRANSFEREE OF TUSCAN RIDGE
16                                 ASSOCIATES, LLC [11288] FILED
                                   BY PG&E CORPORATION
17
                                   MOTION FOR RELIEF FROM PLAN
18                                 INJUNCTION, TO COMPEL
                                   ARBITRATION AND/OR FOR
19                                 ABSTENTION FILED BY FULCRUM
                                   CREDIT PARTNERS LLC [11066]
20
                                   REORGANIZED DEBTORS' ONE
21                                 HUNDRED SEVENTH OMNIBUS
                                   OBJECTION TO CLAIMS (MCCOLM
22                                 CLAIMS) FILED BY PG&E
                                   CORPORATION [11227]
23

24          TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE DENNIS MONTALI
25       UNITED STATES BANKRUPTCY JUDGE

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1
     APPEARANCES (All present by video or telephone):
 2
     For the Reorganized          THOMAS B. RUPP, ESQ.
 3   Debtors:                     JANE KIM, ESQ.
                                  Keller Benvenutti Kim LLP
 4                                650 California Street
                                  Suite 1900
 5                                San Francisco, CA 94108
                                  (415)636-9015
 6
                                  GAYLE G. GOUGH, ESQ.
 7                                Gough & Hancock LLP
                                  50 California Street
 8                                Suite 1500
                                  San Francisco, CA 94111
 9                                (415)848-8918

10   For Fulcrum Credit           DIANE C. STANFIELD, ESQ.
     Partners LLC:                Alston & Bird, LLP
11                                333 South Hope Street
                                  16th Floor
12                                Los Angeles, CA 90071
                                  (213)576-1000
13
     For Tuscan Ridge             JAMIE P. DREHER, ESQ.
14   Associates, LLC:             Downey Brand LLP
                                  621 Capital Mall
15                                18th Floor
                                  Sacramento, CA 95814
16                                (916)444-1000

17   Also Present:                Ora Green
                                  Individual claimant
18
                                  David P. Addington
19                                Individual claimant

20                                Patricia A. McColm
                                  Individual claimant
21

22

23

24

25
```

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18  Court Recorder:                     LORENA PARADA/ANKEY THOMAS
                                        United States Bankruptcy Court
19                                      450 Golden Gate Avenue
                                        San Francisco, CA 94102
20

21  Transcriber:                        MICHAEL DRAKE
                                        eScribers, LLC
22                                      7227 N. 16th Street
                                        Suite #207
23                                      Phoenix, AZ 85020
                                        (973)406-2250
24

25  Proceedings recorded by electronic sound recording;
    transcript provided by transcription service.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, NOVEMBER 9, 2021, 10:00 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Calling the matter of PG&E Corporation.

5    I'll bring Mr. Rupp.

6            MR. RUPP:  Good morning, Your Honor.  Thomas Rupp for

7    the reorganized debtors.

8            THE COURT:  Good morning, Mr. Rupp.  By my count, we

9    have three items on the 10 o'clock calendar.  Do you have a

10   preference on which way we take them?

11           MR. RUPP:  Yes, Your Honor.  Thank you.  Just for

12   housekeeping purposes, this morning I would like to take

13   Addington followed by  Green.  And I will be representing the

14   company for those two matters.  And then we can follow with the

15   Fulcrum/Tuscan Ridge matters where my colleague, Jane Kim, and

16   our cocounsel, Gayle Gough, will be representing the company

17   for the Fulcrum matters.

18           THE COURT:  Okay.  And that's fine.  Let's bring in

19   Mr. Addington.

20           THE CLERK:  If Mr. Addington is an attendee, would you

21   please raise a hand?  Mr. Addington?

22           THE COURT:  Mr. Rupp, have you heard from Mr.

23   Addington after he filed his response?

24           MR. RUPP:  I have not heard from him since he filed

25   his response.  I did receive the response yesterday, so I

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    expect him to be -- to be joining us.  I'm happy to take the

2    Green matter and then have Mr. Addington's matter trail.

3           THE COURT:  Okay.  Ms. Parada or -- is Ms. Green in

4    the audience?

5           THE CLERK:  Yes.  Ms. Green is there.  And I'll bring

6    her in now.  She was there, Your Honor.  I don't --

7           THE COURT:  Ms. Green, if you're in the audience,

8    would you raise your hand?

9           THE CLERK:  Oh, there they are, Your Honor.  They're

10   joining now.

11          THE COURT:  All right.  Okay.  Ms. Green, good

12   morning.  Could you turn on your microphone and your camera if

13   you're so inclined?

14          MS. GREEN:  I'm pushing the button to start the video.

15   It's not starting.

16          THE COURT:  Yeah.  We had trouble with the video

17   before.  But can you hear me all right?

18          MS. GREEN:  Yes, I can hear you.

19          THE COURT:  All right.  So my staff informs me that

20   either yesterday or this morning you have filed something.  I

21   have not had a chance to review that.  Mr. Rupp, are you aware

22   of a last-minute filing by Ms. Green?

23          MR. RUPP:  Your Honor, I'm checking my email now.  I

24   just see at 10:04 I just received a response filed by Willie

25   and Ora Green.

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  So Ms. Green, since neither Mr. Rupp nor I

2    have had a chance to review it, why don't you summarize for me

3    what your papers say and what you think I should be doing this

4    morning?

5    MS. GREEN:  What I did from our last session, I did go

6    and I located Mr. Kisak (ph.).  And I explained to him what had

7    happened and everything.  And so what he did was he did a

8    letter of verification of who he is.  Everything that you asked

9    for on your request he, you know, did it and forwarded it to

10   me.  And so what I did was I came down to the court yesterday

11   and put it in the drop box so you would have the signed, you

12   know, document.  And also too I did go online as a backup and

13   send it through the court's uploading system also too.

14   So, you know, and then also too there was another one

15   where the person that did the quote for the driveway contacted

16   me with the update and a change.  So that was included also.

17   THE COURT:  Okay.  Well, what do you think I should do

18   with what has been filed?  Since you're the only one that's

19   familiar with it, what do you think we should do about it this

20   morning?

21   MS. GREEN:  You don't have anything at this point that

22   you can view?

23   THE COURT:  Well, I can't even look at the document

24   yet.  This isn't instantaneous.  We usually can do pretty well

25   at looking at things.  But even if I were able to look at it, I

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   generally don't take the time to read things while people are

2   waiting for me to make decisions.  I'm looking at our court

3   docket.  And yes, I do see something that was just placed on

4   the docket by the staff, a five-page document.  And I'll just

5   take a quick look.  But whether I have a chance to review it or

6   not, Mr. Rupp has a chance to review it and comment on it.

7         So let me just look quickly at the document.  I did --

8   you didn't do anything wrong.  I gave you the opportunity to

9   file something prior to the hearing.  And you did.  So I'm

10  not -- no problem.  We just have to decide what to do about it.

11        But, well, it looks like the first three pages are

12  documents that is essentially your argument because there's no

13  signature and there's no author, but it's -- the way the

14  opening sentence reads, it appears to be your position.  And

15  then the -- going to the fourth page, again, is addressed to me

16  and -- from Mr. Kisak.

17        So I think the best thing for me to do is to let Mr.

18  Rupp have a chance to respond and either take the matter on the

19  papers and make a decision or just set it over for further

20  hearing.  I can't give you the full opportunity to flesh out

21  your arguments or for Mr. Rupp to do the same without time to

22  do it.  So that's what I'm inclined to do.  I could put it over

23  just to the next hearing which is a couple weeks from now.

24        Mr. Rupp, what's your pleasure?

25        MR. RUPP:  Your Honor, I did just open the document.

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    It is five pages.  And there does appear to be a letter from

2    Mr. Kisak.  However, I would like the opportunity to review it

3    and review it with my client and speak with my client about it.

4    So I think where we are now, we -- I would like a continuance

5    of -- to the next hearing.  And we can take this up on the 23rd

6    of November.  I think that's our next hearing.

7              MS. GREEN:  23rd of November?

8              THE COURT:  I think that's what I need to do.  I can't

9    give your position a full review.  And as I said, Mr. Rupp and

10   his client have an opportunity also.  This is -- it's okay to

11   accommodate you to get something at the last minute, but we

12   can't just suddenly indecently decide what's the right thing to

13   do.  So --

14             THE CLERK:  Excuse me.  Excuse me, Your Honor.  The

15   document that was filed is actually twenty-six pages.  The case

16   administrators are in the process of scanning and docketing as

17   it was just picked up this morning.

18             THE COURT:  Okay.  Ms. Green --

19             THE CLERK:  So the --

20             THE COURT:  -- what are the pages that follow the

21   statement by Mr. Kisak?

22             MS. GREEN:  I did not send anything in that was

23   twenty-six pages.  It's short.  It had pictures because the

24   last time we had spoke you were saying that you did not have

25   actually a visual of what the damage really looked like.  So

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    what I did was the pictures that I had that were in color, not

2    sending them online but to actually give you the pictures to

3    show you exactly what the damage looked like inside the garage

4    and in the driveway, exactly what the damage looked like.  So

5    that was included -- that's what I dropped off downstairs.  And

6    then --

7              THE COURT:  Okay.

8              MS. GREEN:  And also --

9              THE COURT:  Ms. -- okay.  Hold on, Ms. Green.

10             Ms. Parada, we do have a calendar on the 23rd at 10,

11   right?

12             THE CLERK:  Yes, Your Honor.

13             THE COURT:  Okay.  Mr. Rupp, I presume if I ask you to

14   file a response by, say, the Friday before, you should be able

15   to -- that shouldn't be a problem for you, right?

16             MR. RUPP:  Yes, the 19th.  That should work for us.

17             THE COURT:  Ms. Green, I'm going to continue this to

18   November 23rd at 10 o'clock.  We'll do it the same way on Zoom

19   like this.  Mr. Rupp for the company will file a response by

20   the prior Friday, that's 19th.  And I will have reviewed,

21   obviously, your papers before then.  And I will review his

22   filings before the 23rd.  And on the 23rd I will give you

23   probably -- I presume -- I haven't decided what I'll do.  I'll

24   give you an opportunity to make a brief argument.  And then

25   I'll either make a decision or I'll take it under advisement

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   and do a decision after that.

2          So that's the plan, okay?  Is the 23rd at 10 o'clock

3   convenient for you?

4          MS. GREEN:  Yes.  May I have a -- I have a question

5   also.

6          THE COURT:  Yes.

7          MS. GREEN:  During that time that we're in term, does

8   that allow Mr. Rupp and I to try to negotiate anything or just

9   he's reading over what I have and --

10          THE COURT:  You have time -- you have time any time to

11  negotiate.  I got the impression that the -- and I encouraged

12  you all to see if you could come to a compromise previously and

13  was not successful.  But I encourage compromise.  And if you

14  can -- without my involvement you pick up the phone or pick up

15  a Zoom camera and talk to Mr. Rupp and his client as he wishes,

16  and I would welcome for the benefit.  I think it would be in

17  the best interest of you and your husband and, frankly, PG&E to

18  get this matter decided amicably and swiftly.

19          And that's always the case.  My point is I believe you

20  have -- there have been some attempts to come up with a

21  solution so far unsuccessfully, but that doesn't mean there

22  isn't worth trying again.  And I know Mr. Rupp and his client

23  are no opposed to seeing if there's a resolution that way.  So

24  I hope that's an answer.

25          I will continue this to the 23rd at 10, but I will

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    continue it beyond that if both sides agree that you need to

2    have further opportunity to try to settle.  But if you don't

3    settle, I'll listen to -- and be prepared to review what you

4    filed and what the company will file and to take it up on the

5    23rd at 10 o'clock.

6              MR. RUPP:  Your --

7              MS. GREEN:  I have a --

8              MR. RUPP:  Your Honor, just to -- just real quickly on

9    that.  As far as a ruling, if we look at Mr. Kisak's report --

10   and the company may wish to have its own report made by its own

11   expert.  So is that something that the Court would consider as

12   far -- I just want to be clear, as far as timing goes, if the

13   Court intends to make a ruling no matter what on the 23rd or if

14   there's more --

15             THE COURT:  I'm completely open, Mr. Rupp, as you --

16   should be obvious, we're taking this matter a little more

17   informally for the benefit of Ms. Green not to shortchange

18   them, but I'm not going to shortchange the company either.  If

19   you believe it's appropriate to file something in response the

20   first order -- the first way to do it is to ask Ms. Green if

21   she agrees to put it over to a later date.  If she -- if she

22   agrees, you don't need me.  If she disagrees, you can ask me.

23   And chances are I will do it because that's the way we've been

24   doing this matter.  So I don't (audio interference) as an

25   option.  Further examination is an option if the company

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   believes that's necessary.  Obviously, we're trying to cut down

2   on the expense here.  So hiring more experts is more expensive.

3   You know that.

4          MR. RUPP:  Of course.

5          MS. GREEN:  Your Honor, I have a question also, too,

6   if I could please ask one.  PG&E has had years to come up with

7   a conclusion on how, when, and why the damage happened to our

8   property.  It was caused by the negligence of PG&E.  And if

9   PG&E would -- did due diligence and proper and timely

10  investigation of our claim instead of ignoring us, we had even

11  furnished all the evidence that they're even using in the

12  reports, the pictures, documentation.  And even I went and

13  filed -- you know, Mr. Kisak.

14         PG&E hasn't presented any evidence, you know, to say

15  that this never happened because even their own people know it

16  happened.  But I'm requesting that, you know, we go ahead and

17  shorten this to go ahead and -- and, you know, settle this

18  because what's happening is the company that I got the quotes

19  from, those quotes are good for thirty days.  And then it's a

20  price change.  So I was just notified that one of the companies

21  that I had got a quote from and the thirty days had expired, he

22  called me and said that it's going to be a price difference.

23  You know, so I'm thinking, okay, well, go ahead and send the

24  quote for that because I'm thinking it's only going to be maybe

25  a couple of hundred dollars or something like that.  It's way

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    more than a couple hundred dollars.

2              THE COURT:  Well, Ms. Green --

3              MS. GREEN:  And (indiscernible) --

4              THE COURT:  -- let's -- let's -- Ms. Green, let's go

5    back for a minute, make sure you're mindful of something.  I've

6    been very tolerant and lenient from -- of you and your husband

7    not to require things to be more formal, not to have things

8    signed under oath and so on, including up to today.  And I

9    don't even know if the document today would pass muster, but

10   I've been permitting you to do it on a more informal basis.

11             What the company hasn't admitted is whether it's

12   liable to you for what happened.  And you have the burden of

13   proving that the company did it.  They don't have to prove that

14   they didn't do it unless you can prove that they did do it.  So

15   the fact of the matter is you have explained to me you were

16   there.  You saw the trucks.  You heard the noise.  You saw the

17   dust.  You have documented at least some evidence of damage to

18   your driveway or your garage.  But no professional has

19   concluded that there was a cause there.  In other words, a

20   professional should say in my opinion this is why it happened.

21   It happened because of the PG&E trucks on the property and so

22   on and so forth.

23             So PG&E is willing to talk to you further about a

24   consensual agreement.  And what Mr. Rupp has said is, if

25   necessary, PG&E might want to put on some contrary evidence.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   I'm not -- I'm not going to run rough shot over each side.  I'm

2   going to let it play out its course.  But you can settle this

3   case any time without any further expense.

4           I would add further, nothing is prohibiting you from

5   fixing your garage.  This damage occurred some time ago.  You

6   could have fixed it two years ago or one year ago or one week

7   ago.  And your choice has been not to fix it because you

8   believe PG&E will give you money.  But the point is, if the

9   garage has been damaged and there's a contractor who can fix

10  it, you're free to go fix it.  And if you fix it and then PG&E

11  is ordered to reimburse you, then you're head of the game or

12  you're no worse off.  If you fix it at your expense and the

13  Court rules that PG&E is not liable, then that's -- what

14  happens happens.

15          And so that's where we are.  So we can't -- don't mix

16  up your ability and your entitlement to fix the property with

17  whether PG&E is going to reimburse you for it.

18          So I will hear -- look forward to seeing you on

19  November 23rd unless either the -- both sides agree to put it

20  over further or, Ms. Green, if you're unwilling to agree if Mr.

21  Rupp make a case to put it over so the company can do more

22  preparation, that'll be the result also.

23          Meanwhile, thank you for submitting (audio

24  interference) --

25          MS. GREEN:  Also, before we -- before we leave, I

PG&E Corporation and Pacific Gas and Electric Company

1    wanted to notify you by accident we received forms that belong

2    to Mr. Addleton (sic).  They were in the envelope with my court

3    forms.

4              THE COURT:  To Mr. Addington?

5              MS. GREEN:  I'm sorry?

6              THE COURT:  You said it's for Mr. Addington?

7              MS. GREEN:  Yes.

8              THE COURT:  Okay.  Well, Mr. Rupp, you might need to

9    look into that.  We'll ask if Mr. Addington is missing some

10   papers.  Maybe Ms. Green accidentally got a second set of the

11   papers.

12             MR. RUPP:  I suspect it was a second set, Your Honor,

13   but I can definitely verify with Prime Clerk.  I know Mr.

14   Addington did receive at least by email those forms that -- the

15   status conference statement since he responded to it.  But we

16   can discuss that in front of Mr. Addington.

17             THE COURT:  Ms. Green, thank you -- Ms. Green, thank

18   you for pointing that out.  Go ahead and just toss them.

19             MS. GREEN:  All right.

20             THE COURT:  And I appreciate your telling me that.

21             MS. GREEN:  All right.  Thank you.  I look forward to

22   speaking --

23             THE COURT:  Thank you.

24             MS. GREEN:  -- with you, Mr. Rupp.

25             MR. RUPP:  Likewise.  Thank you.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Okay.  Good luck to both of you.

2      MS. GREEN:  Goodbye.

3      THE COURT:  Okay.  Give me one second.  I just have to

4  take care of one -- I'm not leaving.  I'm standing up just for

5  a second.

6      Okay.  We'll bring in -- I see Mr. Addington.

7      MR. ADDINGTON:  Yes, sir.

8      THE COURT:  Good morning, Mr. Addington.  Can you

9  state your appearance?

10     MR. ADDINGTON:  My name is David Addington.  And I am

11 a claimant in the PG&E bankruptcy 3093, I believe.

12     THE COURT:  That's the number.  We know the number.

13     Look, it seems to me that we're just kind of going

14 around in circles about terminology.  Mr. Addington, your

15 position is that, before the bankruptcy, you took action that

16 you were entitled to take.  And you terminated the easement.

17 And PG&E says no, you didn't.  And that's a dispute.  That's a

18 critical dispute here.

19     But on the day of the bankruptcy then, according to

20 your view, there was no record easement.  So the question is,

21 what should the Bankruptcy Court do?  Well, the simple solution

22 is the Bankruptcy Court could say to the company if you want a

23 declaration that there is an easement, you need to file an

24 adversary proceeding.  And we need to tee up the determination

25 of who is the owner.  Does Mr. Addington own the easement now

PG&E Corporation and Pacific Gas and Electric Company

1  or is the easement gone because he's the property owner or does

2  PG&E have the easement that it believes it's had all along.

3  And the Court has the jurisdiction to determine that under

4  these circumstances, particularly if the parties agree.

5          And whether we call it quiet title or something else,

6  it's still a legal determination of the relative rights of the

7  parties.  And Mr. Addington, I think your proposal is probably

8  perfectly right that says you'll agree to have the Court

9  determine if PG&E agrees to the outcome if it comes out

10  favorably.  And it would seem to me that's exactly what would

11  be the outcome if there was a formal adversary proceeding or,

12  Mr. Addington, you can agree and PG&E can agree that we don't

13  need a formal adversary because I think it can be done by a

14  claim objection.

15          But at the end of the day, it's the same results.  In

16  other words, the determination of what the record title should

17  be, should it be consistent with Mr. Addington's point of view

18  or to the company's point of view and consistent with whether

19  Mr. Addington has a claim or not.  If he doesn't have -- if he

20  never had a right to terminate the easement, he probably

21  doesn't have a claim.  Conversely, if he had the right to

22  terminate the easement, maybe he does have a claim.  And what's

23  the amount, that's a separate question.

24          So I'm of the view that the right thing to do here is

25  to get both sides to agree that the Bankruptcy Court can

PG&E Corporation and Pacific Gas and Electric Company

1    determine the fundamental question, does PG&E have an easement

2    or it doesn't?  If it does, it seems to me Mr. Addington

3    doesn't have a claim anymore.  If Mr. Addington prevails and

4    that determination, then the question might be whether he's

5    entitled to a monetary recovery based upon PG&E's use of the

6    property or use of the lines since the easement was terminated.

7        Now, that's a longwinded way of saying you both seem

8    to have agreed that that's where we ought to end up.  Mr. Rupp,

9    do you agree that that's the right way to trim the issue?  And

10   we don't have to call it an adversary proceeding if both sides

11   agree the Court can make a determination.

12       MR. RUPP:  I think that's a fair characterization,

13   Your Honor.  That is the -- one of the critical issues to this

14   claim.  And we both have every right to contest that.  And it's

15   essential to resolving the claim.  So whether it be in a formal

16   adversary proceeding or in the scope of a claim objections,

17   it's still the issue the Court will have to rule on after

18   briefing by other parties.

19       THE COURT:  Well, before I ask Mr. Addington, if

20   you -- your side prevails, Mr. Rupp, and the Court determines

21   that there never was a -- there always was for all purposes an

22   easement and Mr. Addington had no ability and no legal ability

23   to terminate it, do you also believe he has no claim?  I mean,

24   you have no claim, right?

25       MR. RUPP:  Correct.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Okay.  Mr. Addington, do I frame the issue

2  correctly from your point of view?

3    MR. ADDINGTON:  Yes, sir, you do.

4    THE COURT:  Okay.  The question -- okay.  Then the

5  question is how to do it to maintain record.  Again, Mr.

6  Addington, I don't know what your experience is in the law, but

7  you seem to be quite conversant with some of the things we're

8  talking about.  But I don't want to turn this into a job

9  interview.  But we have to -- we have to make a record here.

10    And so the way a trial court must tee up an issue

11  mostly for the benefit of the litigants but also for the

12  benefit of any court on appeal is to figure out if there are

13  any facts in dispute and then, if not, to articulate what the

14  facts are and establish those facts as part of the record.  If

15  there are disputed facts, then the Court has to make a

16  determination of how the facts from -- based upon the evidence

17  play out.

18    My own take is there aren't any disputed facts.  There

19  was an easement back in the last century.  At some point in the

20  more recent times, Mr. Addington acquired the property.  And he

21  then took advantage of what he thought was his entitlement to

22  terminate the easement.  And PG&E takes a contrary view.  It

23  seems to me that when they -- a brief statement of those are

24  the relevant facts or whatever additional facts that either of

25  you would add, we just -- we have to put them into the record.

PG&E Corporation and Pacific Gas and Electric Company

1          Mr. Rupp, again, back to you.  Are there -- is there

2     some other critical fact that I haven't mentioned?

3          MR. RUPP:  I don't believe so, Your Honor.  I think

4     that's -- that tees up the issue as well as it's been put into

5     the record by Mr. Addington's claim.  There's a recorded

6     termination of easement.  And Mr. Addington thinks that it is

7     valid and it terminates the easement.  And the company disputes

8     that.  I don't -- I don't see any other facts as to that

9     determination.

10          THE COURT:  How about you, Mr. Addington?  Do you

11     believe there are any facts that would dictate a different

12     outcome?

13          MR. ADDINGTON:  No, sir, I don't think so.  I think

14     the facts are in agreement.

15          THE COURT:  What I'd like to do then -- thank you.

16     I'm glad it's so easy for me to state them.  Obviously, it's an

17     easy history.  It's a -- it's a difficult, perhaps, problem,

18     but an easy history.

19          To put this all in context, when PG&E files a

20     bankruptcy, Mr. Addington files a proof of claim.  PG&E files

21     an objection to the proof of claim.  And really, what we're

22     procedurally is that setting.  And in my opinion the right

23     thing to do is for me to say to PG&E, PG&E, you are claiming an

24     easement, you're claiming that Mr. Addington had no right to

25     terminate it, make a motion.  And in other words, make the --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  make the argument, establish the -- file a statement of agreed

2  facts.  You file your opening brief as to why you should

3  prevail.  Mr. Addington, file a response.  And the company file

4  a closing reply.  Three briefs.  We don't need four.

5  Mr. Addington, in your -- you said you would like the

6  ability to have a surreply.  One of the nightmarish things for

7  trial judges to do is to get too many briefs because when the

8  facts are not disputed, what happens if you get too many briefs

9  is everybody says the same thing over and over again.

10  So I would -- I would propose consistent with the time

11  table that was set forth in -- I guess it was set forth in what

12  PG&E filed, PG&E -- what Mr. Rupp called supplemental brief

13  just be an opening brief on this issue.  And I would give Mr.

14  Rupp the homework assignment of drafting the brief statement of

15  facts.  And then you, Mr. Addington, agree that it's an agreed

16  statement of facts.  And then the company respond and Mr.

17  Addington -- excuse me, I'm sorry.  I'm sorry.  The company

18  file the opening brief, Mr. Addington respond, and the company

19  reply.  And we don't need a fourth brief.

20  Mr. Addington, I don't want you to feel like you're

21  disadvantaged because they get to file two briefs.  It's just

22  the traditional way, opening, response, reply.  I wouldn't

23  oppose letting you have a brief surreply just so you feel that

24  the matter is even, but the point is with simple facts, it is

25  the legal argument that you set forth.  I almost could say no

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   reply brief, one side simultaneous briefs or not. But I'd

2   rather --  I'll stick with the more traditional one.

3            So Mr. Rupp, can I simply direct that you will file --

4   you will draft and Mr. Addington will be given an opportunity

5   to agree to an agreed statement of facts which is essentially

6   what I just summarized?

7            MR. RUPP:  Your Honor, I think that's a good idea.  I

8   just wonder, given -- without blaming either party, how

9   discussions have gone in the past, if there are disputes over

10  the agreed statement of facts, would it be possible to have

11  some kind of response to the agreed statement?  I'm just trying

12  to anticipate if the parties aren't able to agree or if it

13  takes time to --

14           THE COURT:  Well, you just a moment ago agreed to my

15  statement.

16           MR. RUPP:  I did.

17           THE COURT:  I'll have enough faith in the system that

18  what I just summarized will be what you'll draft, and it won't

19  be twenty more pages of history that Mr. Rupp feels -- excuse

20  me, that Mr. Addington feels that he wants to respond to.

21           So Mr. Rupp, try your hand at the first draft at a

22  brief statement of agreed facts and see if Mr. Addington will

23  agree.  If Mr. Addington disagrees, I guess I will -- certainly

24  will give him an opportunity to make his own statement of

25  facts.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    The one thing I don't want to do is turn what really

2 ought to be teed up as a legal argument into a disputed factual

3 issue that requires a different set.  So that we all -- there

4 ought to be a way to just -- to briefly and clearly for the

5 purposes of appeal.

6    I know the facts.  I just gave them to you.  I look

7 forward to the legal briefs.  But I -- again, as a trial judge,

8 I have to make sure that there's a record that's clear that

9 goes to the appellate court if there's a review.

10    So Mr. Rupp, make me an offer of when you could have a

11 draft statement of facts.

12    MR. RUPP:  Would this be concurrent with the brief?

13    THE COURT:  No.  You can do it ahead of time.

14    MR. RUPP:  Okay.  I think -- check my --

15    THE COURT:  What did you say?

16    MR. RUPP:  I'm just looking at my calendar, Your

17 Honor.

18    THE COURT:  oh, okay.  I mean, you can make it with

19 your opening brief if you want.  You proposed your opening --

20 what you called your supplement brief.  But in my opinion it's

21 the critical brief on this agreed procedure.  And it could be

22 the same, December 14th, but you need to have a draft for Mr.

23 Addington ahead of time so he can agree to it or disagree.

24    MR. RUPP:  Okay.  I can propose I guess a -- sorry,

25 one -- I can provide a draft, I would say, to Mr. Addington

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1     December 1st of a statement of fact.

2             THE COURT:  Mr. Addington, you ought to be able to

3     respond to that within a week, right?

4             MR. ADDINGTON:  Certainly.

5             THE COURT:  Okay.  So let's do a -- December 1st Mr.

6     Rupp will give us a statement of facts.  Mr. Addington, you'll

7     have a week to either agree or disagree.  And if you disagree,

8     you just need to have whatever facts you'd think.  And we'll

9     stick with your schedule.  Mr. Rupp will then file an -- what

10    I'll call the opening brief on January -- excuse me, December

11    14th.  Mr. Addington will reply on January 14th.  And PG&E

12    responds on January 26th.  And we'll have a hearing on February

13    2nd.  Is that -- can you clear that date, Mr. Rupp?

14            MR. RUPP:  Those dates work for me.

15            THE COURT:  No.  But did you clear those with Ms.

16    Parada?

17            MR. RUPP:  I did not.

18            THE CLERK:  Your Honor, February 2nd is an all-purpose

19    PG&E date.

20            THE COURT:  Okay.  So that'll be the date of the

21    hearing.  So again, agreed facts ideally with no debate,

22    December.  PG&E opening brief December 14th.  Addington

23    response January 14th.  PG&E reply January 26th.  And argument

24    on February 2nd.

25            MR. RUPP:  Your Honor, just to make clear, I'm not

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   directed to file the draft of undisputed facts; I'm just

2   sharing it with Mr. Addington on the 1st?

3          THE COURT:  Yes.  But if he agrees with you, then the

4   two of you file it as a joint statement.

5          MR. RUPP:  Okay.

6          THE COURT:  Mr. Rupp, you write down facts 1, 2, 3, 4,

7   5, 6, 7.  He says I agree.  The document is a statement of

8   agreed facts to both sides.

9          MR. RUPP:  Correct.  But I'm not filing the draft that

10  I'm sending to Mr. Addington?

11         THE COURT:  No, no, no.

12         MR. RUPP:  Okay.

13         THE COURT:  I said -- no.  I'm hopeful that the two

14  sides will come to an agreement on it.

15         MR. RUPP:  Very good.

16         THE COURT:  Okay.  Mr. Addington, I didn't -- I went

17  through that time table and I didn't -- I didn't put in there a

18  surreply from you.  So I'm just going to put it that way.  If

19  for some reason you feel that it's critical that you do so, you

20  can set up a phone conference.  And if necessary, we'll

21  continue the hearing so you can do it.  I don't think it's

22  necessary, but I'm not going to take away your right to ask,

23  okay?  You both okay with where we are?

24         MR. ADDINGTON:  Judge, I have but one concern.

25  Between December 15th and January 14th, while thirty days on

PG&E Corporation and Pacific Gas and Electric Company

1   the calendar, they are also thirty days that are sort of filled

2   with holiday and -- festivities.  Should I not get it ready by

3   January 15th, I assume I don't default; I would just be able to

4   beg for an extension.

5            THE COURT:  Well, the right way to beg for an

6   extension is to pick up the phone and call Mr. Rupp and --

7            MR. ADDINGTON:  Fair enough.

8            THE COURT:  And that would necessarily move the time

9   table for his response and the court hearing.  If he says no,

10  I'm going to hold your feet to the fire.  You can contact my

11  courtroom deputy, and we will set up a telephone conference.

12  These things tend to get worked out.  And --

13           MR. ADDINGTON:  Sure.

14           THE COURT:  -- people do observe the holidays.  But to

15  be honest with you, it doesn't take a month to draft a legal

16  brief here either.  But I will -- certainly, that's open for

17  you not to feel imposed upon.

18           MR. ADDINGTON:  Thank you very much.

19           THE COURT:  Okay.  All right.  Thank you both.

20           Mr. Rupp, did you have something else you wanted to

21  add?

22           MR. RUPP:  No, Your Honor.  Thank you.  I'll turn over

23  the podium to my colleague.  And I will see Your Honor at 11

24  o'clock on --

25           THE COURT:  Well, you won't see me, but you'll hear

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   me.

2          MR. RUPP:  I'll speak with Your Honor at 11 o'clock.

3          THE COURT:  Thank you, Mr. Addington.

4          MR. ADDINGTON:  Thank you.

5          THE COURT:  Okay.  Ms. Kim, would you state your

6   appearance, and Ms. Gough?

7          MS. KIM:  Good morning, Your Honor.  Jane Kim, Keller

8   Benvenutti Kim, on behalf of the debtors, the reorganized

9   debtors.  And I'm here with my cocounsel, Ms. Gough.

10         MS. GOUGH:  Good morning, Your Honor.  Gale Gough on

11  behalf of Pacific Gas and Electric Company and PG&E

12  Corporation.

13         THE COURT:  Good morning.

14         Ms. Stanfield, are you going to join us here?  Good

15  morning.

16         MS. STANFIELD:  Good morning, Your Honor.  Diane

17  Stanfield of Alston & Byrd appearing for Fulcrum Partners,

18  Credit Partners, LLC.

19         THE COURT:  So I assume you got the docket text that I

20  sent about the stipulation.

21         I have a couple of questions.  The parties themselves,

22  without any involvement by me, have decided that you want to do

23  this arbitration ahead of time.  My question is why.  It seems

24  like an unnecessary thing to do, at least as far as PG&E is

25  concerned, if PG&E wins on the merits.  Why is that -- and

PG&E Corporation and Pacific Gas and Electric Company

1    somebody just convince me why.  I mean, I'm not going to

2    disapprove it.  I'm just trying to have a big picture of why is

3    it a good thing to waste time on an arbitration that may be not

4    necessary.

5            MS. GOUGH:  Your Honor, I --

6            MS. STANFIELD:  So Your Honor --

7            MS. GOUGH:  May I?  this is Gayle Gough.  Just to make

8    clear, PG&E does not want to do the arbitration at the same

9    time.  We believe it should be a phased proceeding with the

10   evidentiary hearing followed by the arbitration.  We proposed

11   an edit to the status conference statements submitted by

12   Fulcrum.  And I hope Your Honor may have received that.

13           THE COURT:  No, I didn't.  I only got what I looked at

14   from -- that prompted the docket text.  I mean, I looked at the

15   docket yesterday, and I didn't see something new.  Maybe I

16   missed it.  When did --

17           MS. KIM:  Your Honor, there was a -- the reorganized

18   debtors filed this -- this is Jane Kim.

19           The reorganized debtors filed the status conference

20   statement on Friday after we received your docket text order at

21   docket number 11546 which explained that we hadn't agreed to

22   the stipulation that had been attached to Fulcrum's status

23   report that had been filed earlier that day.  And one of the

24   reasons was because we didn't believe that it was appropriate

25   to have the arbitration proceed simultaneously with the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  litigation on the objection.  And so our proposal, which was

2  reflected in the revised stipulation, was to have the

3  arbitration proceed after the evidentiary hearing on the claim

4  objection.

5         THE COURT:  Well, where is the revised stipulation?

6         MS. KIM:  It was attached as Exhibits A and B to the

7  status conference statement at docket number 11546.  Exhibit A

8  was a clean, and Exhibit B was a redline against Fulcrum's

9  version.

10        THE COURT:  No.  I think what's happened recently,

11 there have been a lot of activity on the docket, some stuff,

12 just kind of miscellaneous routine stuff.  And sometimes things

13 that are much more significant and -- you're right.  I do see

14 the status conference statement that you referred to.  But it's

15 just one of those things where, see, I had just filed the

16 docket text probably minutes earlier or something, I'm not sure

17 exactly the timing.  And so -- and then Mr. Rupp for other

18 matters was filing other things called status conference

19 statements.  And so I don't have perfect recall on everything.

20        So the problem is I didn't know of that document until

21 just now.  Now I see it.  And again, I'm not going to try to

22 read a fourteen-page document while you're all watching me.

23 But --

24        MS. GOUGH:  Your Honor, if I might direct the Court's

25 attention on page 6 of the status conference, there is a -- two

PG&E Corporation and Pacific Gas and Electric Company

1   paragraphs, paragraph 2 and paragraph 3.  Paragraph 2 has dates

2   that we proposed.  And counsel for Fulcrum and I had the

3   opportunity to speak yesterday.  And I believe that we agree on

4   the dates proposed.

5           THE COURT:  Okay.

6           MS. GOUGH:  A status conference.  However, there does

7   remain the dispute that Your Honor pointed out.  And that's in

8   paragraph 3 of page 6 of the status conference report filed by

9   PG&E.  And in that, the distinction between the two is PG&E

10  requests a phased proceeding with the arbitrator if necessary

11  and guided by the conclusion and order on the evidentiary

12  hearing.  The arbitrator would be appointed thirty days after

13  entry of the final order of the Court following the evidentiary

14  hearing to estimate cost.

15          And when counsel for Fulcrum and I spoke, that

16  remained the disagreement that Your Honor first raised.

17          THE COURT:  So Ms. Stanfield, what would you propose?

18          MS. STANFIELD:  Well, Your Honor, first of all, I will

19  confirm that we did agree to the dates proposed by PG&E.  And I

20  think we can probably enter into a stipulation as to that

21  portion.

22          And to everybody's point, the hang-up is that Fulcrum

23  and Tuscan Ridge would like to see these go on a dual track for

24  a couple of very strong reasons and also with, I think,

25  support.  First of all, the delay.  And I know Your Honor hears

PG&E Corporation and Pacific Gas and Electric Company

1   this all day long.  I know that everybody is unhappy with how

2   long it's taking to sort things out.  We're no different.  We

3   would like to see this done on a more speedy track.

4        And given that the parties did agree to arbitrate this

5   and really if everything had gone according to that agreement,

6   this would have been arbitrated two and a half years ago.  I

7   think that's entitled to some deference that they intended a

8   prompt response or result.

9        The other thing on a more practical level, Your Honor,

10  is that we did have a long day of mediation that was not

11  successful.  We have had a number of conversations before and

12  after that that have been unsuccessful.  And I think a lot of

13  the problem is that we do not have bookends.  We do not have

14  any kind of frame for those settlement conversations.  And if

15  we don't have an ability to liquidate that number, which really

16  is a discrete issue, I mean, it is a battle of cost estimators

17  in front of an arbitrator who has the experience to apply his

18  expertise to those cost estimates.  It's a very discrete issue.

19       And if we don't have that done, I don't think there is

20  a tiny chance that we will get this resolved without a full

21  evidentiary hearing going all the way through July 31st,

22  followed by another three to six months of arbitration.  So it

23  is a much more efficient way to go about it.  There is little,

24  if any, overlap.

25       And candidly, Your Honor, I know counsel and I had

(973) 406-2250 | operations@escribers.net | www.escribers.net

1          PG&E Corporation and Pacific Gas and Electric Company

2     discussions where we both feel very strongly about the merits.

3     No surprise there.  But unless the Court can conclude today

4     that there is absolutely no chance of liability, this is a

5     useful exercise.  And I don't think there's any way on the

6     papers or otherwise that the Court can find that there is no

7     chance of liability here.

8          So we would just respectfully request that we be

9     allowed to go on our second separate track, get the number

10    liquidated at the same time we're litigating the other issues.

11    We think that was a very reasonable compromise at the original

12    motion.  And we appreciate the efforts on both sides to meet

13    and confer.  But we, obviously, need some help with this one.

14         MS. KIM:  Your Honor --

15         THE COURT:  Well, help with the Court is hard to come

16    by when the Court doesn't know about a document that got filed.

17    And but here I would question, Ms. Stanfield, under the draft

18    that you provided on the 5th, the arbitration would happen

19    thirty days from now.  And what is the estimated time for the

20    duration of the arbitration, six months?

21         MS. STANFIELD:  No, Your Honor.  It wouldn't take that

22    long.  And I don't recall the specific language from our

23    original proposal, but I don't think we were anticipating that

24    we could actually conclude an arbitration in thirty days but

25    rather that we would choose an arbitrator, be doing it along

      the same time.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  No, that's right.  That's what I said.

2    I'm reading the document you filed on the 5th.  And it --

3    referring to today, approving the stip, it says within thirty

4    days of approval of the stip, the parties will engage in a

5    neutral arbitrator, et cetera, et cetera.

6    MS. STANFIELD:  Right.

7    THE COURT:  And with the various experience.  And I

8    don't believe it says anything about when the arbitration will

9    occur.  I'm just asking you what is your best judgment as to

10   the time it takes before you'll be in a position to arbitrate

11   and what -- the length and duration of the arbitration might

12   be.  In other words, imagine it's now January 15th.  And the

13   stipulation is effective.  The arbitrator -- when is the

14   arbitration likely to happen?

15   MS. STANFIELD:  Your Honor, our view is that it could

16   be easily done within sixty days.  We have a cost estimate

17   already prepared.  PG&E has had that in their hands for quite a

18   long time.

19   As far as I'm aware, they do not have a cost estimate

20   of their own.  And I'm sure that will take some time for them

21   to prepare.  So they may disagree with that timing.  But I

22   would say sixty days to an arbitration hearing.  And again,

23   it's really just a battle of those cost estimator experts.  And

24   so I think --

25   THE COURT:  Well, okay.

of 83 | operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric Company

1          MS. STANFIELD:  -- (indiscernible).

2          THE COURT:  But now if we go with the arbitration

3    phase later, when is the -- what's the revised timeline for the

4    hearing on the motion?  Again, you both -- the three of you all

5    are familiar with something that I am not familiar with that's

6    in the docket.  When would I be back in business doing what I'm

7    supposed to do?

8          MS. STANFIELD:  Now.  I don't think there would be any

9    delay at all.  They would be running simultaneously.

10          THE COURT:  No, no, I -- maybe I'll rephrase the

11    question.  The way -- the way I heard Ms. Gough describe it is

12    the arbitration will come after the Court makes a ruling.  My

13    question to you then is, well, when would the Court make a

14    ruling if the arbitration is not going concurrently?  Sixty

15    days?  I mean, when would you expect that I would be in a

16    position to make a ruling on the claim objection?

17          MS. STANFIELD:  Well, Your Honor, the dates that we've

18    agreed on would be unchanged.  So we stipulated now to a July

19    31st evidentiary hearing.  I recognize now you don't have those

20    dates in front of you.  But the dates that PG&E proposed and

21    that counsel and I discussed yesterday and agreed to would be

22    an evidentiary hearing on or before July 31st with discovery

23    cutoff dates to --

24          THE COURT:  Okay.  You don't need -- okay.  You don't

25    need to go into --

PG&E Corporation and Pacific Gas and Electric Company

1          MS. STANFIELD:  Right.

2          THE COURT:  Okay.  So keep in mind, again, for the --

3     your benefit, you're dealing with an uninformed judge.  The

4     document that I read had this matter being decided in May or

5     April.  And I had down a question to put to you, well, what

6     happens after that to the arbitration or what happens to the

7     motion.  In other words, it's unclear to me if the arbitration

8     is put on the backburner, what happens when the Court makes a

9     ruling on the claim objection.  Does the claim objection

10    resolve the question of relief from the plan injunction?  And I

11    don't know the answer.  What's the answer to that?

12         MS. STANFIELD:  I don't think it resolves that issue.

13    And I think -- and counsel for PG&E is probably in a better

14    position to speak to this than I am.  But I think that their

15    wishes here are to have liability established in the Bankruptcy

16    Court and damages to be established in the arbitration.  And

17    that -- I think the July 31st hearing would deal with

18    liability.  It would not result in approval of the claim

19    because it would have to be liquidated after that.  So --

20         THE COURT:  Okay.

21         MS. STANFIELD:  -- (indiscernible) --

22         THE COURT:  Okay.  But let's suppose -- let's suppose

23    it's either liquidated after that or concurrent with that.  Is

24    the motion for relief from stay then moot?

25         MS. STANFIELD:  It would be if we come to agreement on

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that, yes.

2          THE COURT:  Okay.  So really it comes down to my

3    figuring it out or perhaps getting a consensus here on whether

4    the -- whether we're on two tracks or one consecutive -- two

5    tracks or one track because --

6          MS. STANFIELD:  Right.

7          THE COURT:  -- I could say, fine, I got an easy

8    solution for you, we'll have the arbitration earlier, but we'll

9    have the claim objection earlier.  But you all -- counsel have

10   agreed to defer a claim objection -- I mean, not to defer it

11   but to pace it out in a certain manner.  So it really comes

12   down to whether I have the best judgment as to what to do.

13         You know what?  What would happen if I took the matter

14   under advisement, gave it some thought, and then gave -- had a

15   follow-up hearing just to kind of tell you what I think?  I

16   just -- I don't feel fully acquainted with it at the moment.

17   But if I say at the minimum -- I mean, it seems to me I could

18   say, sure, the schedule for the claim objection is fine and let

19   me have a little bit of time to think about and perhaps come

20   back to you with some questions, all of you, some questions

21   about whether to defer the arbitration or to move it on a

22   similar track.  There may be an in-between.

23         MS. GOUGH:  Your Honor, may I respond?

24         THE COURT:  Yes.

25         MS. GOUGH:  And I don't mean to interject here, but I

PG&E Corporation and Pacific Gas and Electric Company

1  would like to raise a couple of issues.  So we are looking at

2  this as -- and the question of liability is going to be very

3  important here because it's liability for the restoration of a

4  property and what our responsibilities are with respect to that

5  property.  As in any case where folks are advocating for a

6  phased liability first phase, there is a sense that prevailing

7  in the liability phase may avoid the need for the damages

8  phase.

9         Here the arbitration is very narrow.  The arbitration

10  provision is to appoint someone with a construction background.

11  It's not --

12         THE COURT:  Yes, I remember that.

13         MS. GOUGH:  It's not required to be a lawyer.  And it

14  is to estimate the cost to restore the license area.

15         The big question that has been the point of contention

16  between the parties is what is the obligation to restore the

17  license area.  And looking at the letter agreement, there is

18  the question of proportional reduction of restoration

19  obligations.  This has never been about the cost to pick up

20  some gravel.  I don't know that that would ever be a big issue.

21  The question is whether or not we have a liability for having

22  to pick up gravel.  So to us, it seems that we definitely need

23  the Court's guidance in terms of interpretation of the letter

24  agreement, application of that law to the circumstances in this

25  case.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    And then as in any phased litigation, if the -- a

2    party prevails, there's the possibility of no damage phase or a

3    very narrow damage phase or even more likely at that point when

4    we know the liability, we may be able to agree on the cost.  So

5    it is not the cost of picking up gravel but whether or not

6    there's an obligation to it.

7            THE COURT:  Yeah.

8            MS. STANFIELD:  Your Honor --

9            THE COURT:  Yes?  Yes, of course.

10           MS. STANFIELD:  Sorry.  I don't think I've ever heard

11   counsel suggest the possibility that there is no dispute about

12   the cost or that that's not the dispute.  Maybe what we should

13   be talking about is the stipulation as to the cost estimate and

14   let that play out in the Bankruptcy Court in terms of

15   proportionate reduction.

16           I mean, the big issue here, Your Honor, and I

17   understand PG&E phrases this in terms of excusing their

18   performance, what the letter agreement contemplates is under

19   certain specific conditions which we contend were not met, that

20   PG&E may have a right to a proportionate reduction of the cost

21   to estimate the license area.  And so the proportionate

22   reduction of what?  If we were to agree on a cost estimate up

23   front, that would obviate the need for the cost estimate

24   arbitration altogether, I think.  So maybe we should be

25   focusing on that.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Well, how do --

2    MS. GOUGH:  There --

3    THE COURT:  But how --

4    MS. GOUGH:  There is a response to that, but I'm

5 mindful that the Court is suggesting that the Court may want to

6 come back with questions.

7    THE COURT:  Well, my question is how -- what's the

8 best way to go -- to pin down that cost.  It's not -- it's

9 something -- a judicial role to do or it is something the

10 parties should just see if they could agree to?  I mean, I

11 wouldn't know where to begin.  How would I begin to estimate

12 the cost?

13    MS. GOUGH:  We're talking about it in a different

14 context, I believe.  So what we have is we have a very large

15 property that has an access road.  It has areas that were used

16 for staging equipment.

17    THE COURT:  Right.

18    MS. GOUGH:  Areas that were used for housing, areas

19 that were used and subsequently became water treatment plants.

20 So there is in our -- in PG&E's perspective we need to -- we

21 say that we are not responsible for restoring the area that

22 became a water treatment plant.  There's no point in estimating

23 a cost to restore that area.  There is no point in estimating a

24 cost for the access road because there is no obligation, we

25 will say.  And that requires discovery.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    And so another important aspect of the liability phase

2    is the discovery regarding the subsequent use of the license

3    area, the access road, the parking lots, the housing area, the

4    equipment staging area, the water treatment area, all of those

5    areas we say were used by the subsequent tenant to the

6    exclusion of any restoration obligation or excusing the

7    restoration obligation of PG&E.

8    And so then that's the part the Court would determine,

9    that you have an original tenant, and the tenant had a

10   restoration obligation.  But there's a subsequent tenant who

11   comes in and fully occupies and -- to the exclusion of the

12   original tenant.  And under the letter agreement, is there a

13   proportional reduction which is a proportion of one percent to

14   ninety-nine percent reduction.

15   And there are -- well, I don't know if I can get a

16   YouTube video admissible, but there are lots of stuff on the

17   internet that shows there was this massive use of the property

18   that precluded our restoration.  And that's what we want the

19   Court to look at.

20   THE COURT:  Okay.  I --

21   MR. DREHER:  May I address the Court, Your Honor?

22   THE COURT:  Just one second.

23   One I learn that it looked like we were just going to

24   go some sort of a status today, I just put on hold my going

25   into the background.  I originally read the objection -- I

PG&E Corporation and Pacific Gas and Electric Company

1    mean, excuse me, the motions by Fulcrum some time ago.  But

2    then when I -- when it kind of matched up with this, I just

3    kind of put this on the backburner which is the way I do

4    things.  So all of you who are intimately familiar with this

5    have the advantage over me.  I am not at all familiar with

6    this.  And so I can -- I just don't feel at all in a position

7    to know what's the right thing to do.

8            Was that Mr. Dreher who wanted to say something?

9            MR. DREHER:  May I address the Court, Your Honor?

10   Thank you.  Jamie Dreher.  I represent Tuscan Ridge Associates

11   who is the landowner, original claimholder, who subsequently

12   transferred the claim for claim purposes to Fulcrum, although

13   in the papers, we filed -- they've been filed jointly as we are

14   jointly prosecuting the claim.

15           So I just -- I appreciate Your Honor's perspective

16   trying to understand the kind of overlay of these two things.

17   And I just wanted to make a couple of comments from my client's

18   perspective.

19           THE COURT:  Yes.  Mr. Dreher, let me interrupt you for

20   just a second.

21           Ms. Parada, would you please notify the 11 o'clock

22   calendar parties that I'm running late?

23           THE CLERK:  Yes, Your Honor.

24           THE COURT:  And, I mean, I can't give you an estimate.

25   It'll be ten minutes after we're finished here.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. DREHER:  Okay.  I'll be very brief, Your Honor.

2          THE COURT:  Okay.

3          MR. DREHER:  And I just want to kind of lay out for

4    the record, I just feel compelled to for my client's

5    perspective, their view on some of these issues.

6          It's all about timing and delay at this point, Your

7    Honor.  I think we noticed yesterday that it was about the

8    three-year anniversary of the Camp Fire.  And so under the

9    scheduling proposal advanced by PG&E, I think what they are

10   suggesting is there wouldn't be determination of this claim

11   until the end of next year.  You're talking thirteen months

12   from now.

13         If Your Honor has some kind of evidentiary hearing in

14   the July timeframe, this exact scope of which I think is not

15   entirely clear, but then provides some kind of direction than

16   later I think is what PG&E is suggesting to a construction cost

17   estimator, maybe some contours, maybe not, I don't know how

18   that's going to sort out.  That's going to be another ninety

19   days.  And then what happens?  Then we're going to have to come

20   back to the Bankruptcy Court either for confirmation of that

21   arbitration award or review or whichever party feels aggrieved

22   may want something to say about it in front of Your Honor.

23         And the reality is the -- I think everybody is kind of

24   familiar with the news, the cost of labor and goods and

25   everything is skyrocketing.  The cost of financing and the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  caring cost of this property are devastating.  It's been three

2  years.  Another thirteen months, frankly, Your Honor, I just

3  have to object to PG&E's proposal in that regard from my

4  client's perspective.

5          And I would also say that liability, damages,

6  affirmative claims, defenses are litigated together all the

7  time.  And I think logically that's the only way to do this,

8  Your Honor, I think.  And I understand that you want to take

9  another review of the papers.

10          But I think the way this should work, Your Honor, is

11  there be a -- the I guess anticipated July final hearing.  But

12  before then, the cost estimate has to happen because it

13  actually has to fold into what Your Honor is deciding.  It has

14  to be in front of Your Honor in order to make an actual

15  determination on what, for example, portions of that cost,

16  restoration cost, might be allowed or not.

17          Otherwise, frankly, Your Honor, I'm not exactly clear

18  on what would be finally determined in July.  There's general

19  talk about PG&E's defenses and the subsequent use and a pro

20  rata reduction.  But without the numbers in front of Your

21  Honor, you're looking at another, I think, to my client, three

22  to six-month delay after that.  And --

23          THE COURT:  What's the best judgment of all of you as

24  to what the trial time would be and whether the -- whether the

25  arbitration is parallel or later?  What's the courtroom trial?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Are we talking about a multiday trial, multiweek trial?  I

2    mean, what are -- the bench trial, what -- I have no clue.  I'm

3    used to doing quick trials.

4         MS. STANFIELD:  This one could -- this one could be a

5    few days, Your Honor.  I don't think it's multiple weeks, but

6    it certainly could go up a week if PG&E puts on all of the

7    defenses that they're now proposing.

8         THE COURT:  Okay.  Well, again, it's not that I

9    couldn't do it.  And the calendar is such that I don't

10   anticipate that being a problem.  But the trial is the impact

11   on what you're saying -- I mean, look, it really comes down to

12   one question, I guess.  Do I go with Fulcrum and Tuscan and say

13   this arbitration go on a parallel track or its own track or

14   PG&E and say stretch it all out?  And again, it should be an

15   easy thing to talk about.

16        I guess as much as I hate to do this, I don't want to

17   just wing it and guess.  So I guess what I'll invite all of you

18   to do is to be patient with me.  I'll take this up at the next

19   hearing which is only a couple weeks away.  I'll get prepared.

20   And if you can reach an agreement before then, that's fine.

21   But if not, I'll at least have my thoughts together and have a

22   better sense of the big picture.

23        It isn't as though you all haven't made it clear, but

24   what you've made clear is that it's very complicated.  And I

25   understand that.  So --

PG&E Corporation and Pacific Gas and Electric Company

1        MS. STANFIELD:  Your Honor, may I just address --

2        THE COURT:  Yeah.

3        MS. STANFIELD:  -- one point that counsel raised for

4   PG&E?

5        To be clear on what we're asking to have arbitrated,

6   it does not involve anything that ECC, the subsequent tenant,

7   did to the property.  This is a cost estimate that was based as

8   of the time that PG&E vacated.  So it is not about asking PG&E

9   to restore damage done by somebody else, to restore property

10  that can't be restored.  It is about estimating the cost of the

11  damage that PG&E did to the gulf course, had done by the time

12  they vacated the property.

13       And I understand that we may not have agreement on

14  that exact date.  I don't know why.  It should be easy enough

15  to figure out when they left the property.  But it will be in

16  the February, March 2019 timeframe.  And ECC, the subsequent

17  tenant, didn't even use the property until the following month.

18  And so that is not actually a complicating factor in the

19  arbitration at all.

20       MS. GOUGH:  Your Honor --

21       THE COURT:  Well, that is --

22       MS. GOUGH:  -- may I respond to --

23       THE COURT:  But it is a -- wait a minute.  It is a

24  factor on how you allocate the responsibility after the fact

25  though, right?

PG&E Corporation and Pacific Gas and Electric Company

1    MS. STANFIELD:  That is the position PG&E takes.

2    THE COURT:  Okay.  I mean, that was --

3    MS. STANFIELD:  And that is --

4    THE COURT:  That's the point that Ms. Gough made.  I

5  understand.

6    Look, I'll apologize for the final time.  I'm just not

7  prepared based upon what I'm just explained.  I will be

8  equipped and prepared to give you my best judgment on what we

9  should do and do it at the hearing on November 23rd --

10    MS. KIM:  Your Honor --

11    THE COURT:  -- at 10 o'clock.

12    MS. KIM:  Your Honor, it's Jane Kim.

13    I seem to recall that there was a conflict on our side

14  for the November 23rd hearing which is -- was why I think we

15  had initially -- or we had been thinking about if this were to

16  be continued, that it would have to be continued to the first

17  hearing in December.

18    THE COURT:  Well, I can make it on a different day.

19  It can be specially set.  I mean, there's enough -- there's

20  enough at stake and enough counsel.  If someone is not

21  available, I'll be -- I'll tell you what, Ms. Kim.  I will let

22  you and Ms. Parada be in touch with a couple of alternative

23  dates.

24    And Ms. Parada, what I'd like you to do when we

25  conclude this hearing is, first of all, I'll talk to you, Ms.

PG&E Corporation and Pacific Gas and Electric Company

1    Parada, offline.  And then I'll let you be in touch with Ms.

2    Kim who can then circulate it among all counsel for a date for

3    continued hearing.  And I'm not pushing this out.  It's

4    probably -- and I also realize that Thanksgiving is looming,

5    and we might be able to do it either just before that or just

6    after that.  But I'm not going to tell you that I need time to

7    get prepared and then take a long time to get prepared.  I'll

8    do it quickly.

9            MS. STANFIELD:  We appreciate that, Your Honor.

10           MS. KIM:  Thank you, Your Honor.

11           MS. GOUGH:  And, Your Honor, may I just say, I

12   understand we don't need any more argument now.  But I just

13   want to say that we adamantly disagree with representations

14   that had been made.  And we'll save our arguments for next

15   time.

16           THE COURT:  Okay.  All right.  Thank you all for your

17   time.  I will talk to you soon.  And Ms. Parada will be in

18   touch with you, Ms. Kim.

19           MS. KIM:  Yes, Your Honor.

20           MS. GOUGH:  Thank you, Your Honor.

21           THE COURT:  Have a good weekend, everyone.  Goodbye.

22   We'll conclude.  And Ms. Parada, I will join by telephone in

23   about ten minutes.

24           THE CLERK:  Yes, Your Honor.

25           (Recess at 11:06 p.m.)

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE CLERK:  Calling the matter of PG&E Corporation.

2          THE COURT:  Good morning.  This is Judge Montali.  I

3    apologize for the delay.  We ran a little late on another

4    matter.

5          Who's appearing for the debtor this morning?

6          MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

7    Keller Benvenutti Kim on behalf of the reorganized debtors.

8    Also with me listening in is Mark Habib of Peters Habib McKenna

9    Juhl-Rhodes & Cardoza.

10          THE COURT:  All right.  Thank you.

11          Someone else want to be heard?

12          MS. MCCOLM:  Good morning, Your Honor.  Patricia

13    McColm.  I'm a claimant.

14          THE COURT:  Yes.  Yes, Ms. McColm.  Good morning.

15    Nice to hear from you.

16          But is there anyone else who wanted to be heard on the

17    call?  All right.

18          Ms. McColm, I presume you received my order.  And I

19    have allocated twenty minutes for you.  Would you like to

20    reserve some of your twenty minutes for rebuttal?

21          MS. MCCOLM:  Yes.  But, Your Honor, there was some

22    preliminary requests for accommodations.  I'm wondering if

23    you've had an opportunity to consider that and for me to know

24    your response.

25          THE COURT:  One of the requests was that you be given

PG&E Corporation and Pacific Gas and Electric Company

1    a transcript, and that'll be provided, though I don't think

2    there was anything else. Was there something else?

3        MS. MCCOLM: Yes, Your Honor, that I be provided with

4    leave to make my personal recorded notes because I'm incapable

5    of making proper notes by handwritten means from my crippled

6    hands.

7        THE COURT: Oh, I wasn't aware of that. So what would

8    you be doing? You mean you're recording this call?

9        MS. MCCOLM: I would record for my use of personal

10   notes only.

11       THE COURT: Mr. Rupp, is there any objection to that?

12       MR. RUPP: No objection here, Your Honor.

13       THE COURT: All right. That's fine, Ms. McColm.

14       MS. MCCOLM: And also I have hearing loss, so I am

15   not aware of the speech volume. And I don't know how loud I'm

16   talking. And I have a state-provided phone. And sometimes it

17   jumps out loud so I can hear. And I hope that it will not

18   appear to be disrespectful of the proceedings and that it be

19   accommodated.

20       THE COURT: It's fine. It's not a problem. Can you

21   hear me all right?

22       MS. MCCOLM: Yes. I'm having also some comprehension

23   issues with your speech, but I will do my best to understand.

24       THE COURT: My goal this morning is to listen, not to

25   speak. So I'm going to listen. I'm going to give you twenty

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   minutes.  I'm going to tell you you can reserve a portion of

2   it.  I'll remind you that I've -- there's a lot of papers that

3   have been filed, and I've read them.  And I don't want you to

4   focus on recent events because they're not relevant.  If there

5   have been recent events that you're upset about, you can have

6   recourse elsewhere but not here.  The issue today is whether

7   your claim should be allowed.

8           So with that, how much of the twenty minutes would you

9   like to reserve?

10          MS. MCCOLM:  Whatever is remaining after I finish my

11  beginning.

12          And may I know the status of the objections to the

13  reply and declaration of --

14          THE COURT:  I don't know what you're -- everything is

15  taken under submission.  And it's my practice to let the party

16  announce how much he or she wishes to reserve.  So I'll suggest

17  that you reserve five minutes.  That's fairly typical.

18          MS. MCCOLM:  Okay.

19          THE COURT:  So you have fifteen minutes.  And any

20  objections that have been filed are submitted.  And I'll deal

21  with it -- this is a status conference.  And under our

22  procedures, if your claim is -- or disallowable as a matter of

23  law, I can dispose of it.  If it requires evidentiary proof,

24  typically the get set later.

25          So with that in mind, go ahead.  And I'll start your

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    fifteen minutes.

2          MS. MCCOLM:  Thank you, Your Honor.  I appreciate that

3    explanation.

4          In summary, this claimant respectfully requests that

5    in the interest of party and judicial economy, that the

6    post-petition claims be heard in the California Superior Court

7    with new state law claims of action arising last week which

8    require urgent injunctive relief for repair of hazardous

9    condition caused by PG&E and that the pre-petition claims be

10   granted for good cause in that the reorganized debtors have not

11   presented evidence to rebut the validity of the claims or show

12   there is no liability on the state causes raised by claimant,

13   pre-petition causes which fall outside the scope of either the

14   easement or judgment and, in fact, are in violation thereof as

15   more fully set forth in the points presented here.

16         I agree that -- with the Court that the question was

17   whether post-petition claims should be heard in a court other

18   than the Bankruptcy Court.  I agree.  And the response reply

19   would tend to argue that there is jurisdiction and, thus, a

20   stay which is exactly why, Your Honor, that claims were not

21   filed in another court, because obviously no one wants to take

22   a chance on running afoul of the automatic stay.

23         There is not jurisdiction accepted but only to obtain

24   permission to proceed outside of bankruptcy without the

25   possible controversy of a stay in the state court.  There's

escribers
of 83 | operations@escribers.net | www.escribers.net
(973)

PG&E Corporation and Pacific Gas and Electric Company

1    been no waiver of a jury trial or objection to federal court

2    jurisdiction for the post-petition claims.

3         The focal point of the post-petition claims is not as

4    the reorganized debtors' reply alleges as being the, quote,

5    pre-petition dispute around the easement and judgment, which is

6    for the court -- is for the California Court of Appeal to

7    decide but that the PG&E behavior claimed is not consistent

8    with either the easement or judgment.  And PG&E did not request

9    a stay in the California Court of Appeal on any issue in that

10   matter.

11        There is no evidentiary showing by the reorganized

12   debtors that contravenes claimant's fact and authority set

13   forth in the claims.  The claims show that PG&E is in violation

14   of the easement and judgment.  The behaviors of PG&E are

15   outside thereof, constituting liability on the actionable state

16   causes that are complete in and of themselves upon occurrence.

17   Thus, the pre-petition claims are separate and complete state

18   causes upon occurrence and form no basis for resolution with

19   post-petition claims.

20        There is no jurisdiction of post-petition claims under

21   the Bankruptcy Code, Section 28 U.S.C. 1334.  Asserted claims

22   do not arise under, arise in, or are related to cases filed

23   under the Code as California law created the causes of action

24   stated have no effect on the bankruptcy estate.  And the causes

25   of action would exist without regard to the existence of the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    bankruptcy.

2         The post-petition claims warrant proceeding with the

3    new claims that arose last week where similar issues apply such

4    as the breach of oral agreement, resulting in extraordinary

5    damaged land without repair, which requires immediate

6    injunctive relief.  The Court could choose to exercise that

7    extensa as to all state court claims.

8         And I would just point out that the facts show that

9    three times the reorganized debtors have placed a PG&E lock on

10   the five-parcen subdivision gate at private road McColm Drive,

11   refusing to provide claimant with a key.  Locking me out of my

12   own property does not show good faith exercise of alleged

13   rights but shows malice and oppression towards this stigmatized

14   owner in contravention of an easement judgment where the motus

15   operandi shown is the false premise that, quote, we can do

16   whatever we want, we have an easement.

17        Reorganized debtors' behavior is not consistent with

18   any alleged rights under the easement and judgment.  It is

19   wrong.  It is appropriate for the post-petition claims to

20   proceed in the California Superior Court.

21        The pre-petition claims, the reorganized debtors fail

22   to meet their burden to overcome the presumption of validity of

23   claims.  No evidence is presented in contravention of any fact

24   or declaration filed in support of the claims.  Reorganized

25   debtors have not presented evidence to rebut the validity of

PG&E Corporation and Pacific Gas and Electric Company

1    the claims or show there is no liability on the causes stated.

2    Thus, the objection is not proven and claim is properly

3    granted.

4         Notice of need to inspect one tree identified as being

5    on the wrong address being disputed does not give PG&E the

6    right to destroy seventeen trees in response.  That is another

7    example of malice and oppression.  There were no inspection

8    reports that show any one or more trees was by judgment

9    authorized re, quote, may remove trees and clear away brush

10   within the area described by Exhibit C which may interfere with

11   the operation and use thereof by PG&E.  That is document

12   11228-1, page 5, lines 2.3, violation of judgment that any tree

13   was either within the described easement or that it interfered

14   with the operation and use by PG&E.  There was no showing that

15   any one was as indicated.

16        Violation of judgment also took place re access

17   outside the specified location.  PG&E access to its easement

18   described -- and I'm quoting, PG&E access to its easement

19   described in Exhibit C, dot, dot, (indiscernible) space,

20   managed vegetation on the property that is under or adjacent to

21   PG&E electrical transmission lines within the easement

22   described in Exhibit C, page 5, line 6.10, quoted from the

23   judgment.

24        The easement described in Exhibit C is designated as

25   demarcated by lines identified on the subdivision by parcel map

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    at page 1213 as, quote, PG&E transmission easement. No

2    evidence denies this fact in the reply. The claims arise

3    pre-petition are state causes and are complete and fall outside

4    the scope of the easement and the judgment itself as shown

5    above. They do not affect bankruptcy state but are entirely

6    under California law.

7         Claimant's claims and related documents are

8    evidentiary on the validity of the claims. There is nothing

9    evidentiary from the reorganized debtors in contravention.

10   Claims based on personal knowledge is evidence. I have so

11   testified based on personal investigation of tree value and

12   depreciation of land value. If need expert testimony, then

13   leave to amend and discovery for documentation in support is

14   requested.

15        In any event, there's been no denial of any specific

16   act which forms the basis of the claim. And no evidentiary

17   fact or authority has been presented in contravention of any

18   actionable point regarding violation of owner rights or claims

19   for damage to real property that occasioned by conduct of PG&E

20   and its agent. Objection re no liability based on alleged

21   judgment, that just does not lie.

22        Facts presented support each cause of action stated in

23   claims, acts, civil and criminal, which are not excused by

24   either an allegation of being an easement holder or by the

25   appealed judgment. The acts and issue fall outside the scope

PG&E Corporation and Pacific Gas and Electric Company

1  of the argued judgment.

2          The focus on the pre-petition claims such as the

3  protest that was raised regarding one tree notice for

4  inspection and possible removal, questionably noticing as

5  existing on an address not that of claimants, where CalFire

6  chief said there was no tree which posed a risk to powerlines,

7  does not justify the apparent malice and oppression attended to

8  the conduct of PG&E coming in without notice and without

9  inspection reports to justify destruction of seventeen mature

10  trees, the (indiscernible) of timber from those trees, painting

11  numbers on trees both cut and not cut inside and/or outside the

12  scope of the easement, most of which were outside, directed --

13  did not justify directing trespass to land not designated as

14  easement.

15          Establishing causes of action at time of incident

16  pre-petition, physical harm and emotional distress watching the

17  discretion of trees that were beautiful and necessary to the

18  enjoyment and value of the property, and irreparably reducing

19  the value of real property from the loss of those trees.  And

20  as indicated in my evidence, trees do effect property value.

21  There's no evidence to rebut the claim.  All submissions by

22  claimant are under penalty of perjury.

23          There's no evidentiary basis by reorganized debtors.

24  The judgment easement does not apply to the causes set forth in

25  the claims.  There's no inspection report showing need to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  destroy even one, let alone seventeen, trees. There's no

2  substantiation of need to paint large numbers on trees both on

3  and off easements, no denial of having so painted, and no

4  denial of not having removed these eyesores.

5  There's no denial of the harassing phone calls in

6  2018, twenty such fact calls and had to be stopped by requests

7  of the sheriff's department calling the PG&E agent to cease and

8  desist. There's no denial of interference with exercise of

9  state, constitutional, or other civil rights. There's no

10  denial of directing the sheriff personnel to trespass and

11  engage in unlawful police action, restricting claimant's

12  movement on her own property. There's no contravention of

13  estimate of damages, re tree loss or depreciation of value of

14  loss. There's no denial of infliction of emotional stress or

15  physical injury. There's no denial of loss of prospective

16  advantage. There's no denial that behaviors were intentional

17  with malice, reckless, wanton, and without competent

18  supervision. No denial that amount claimed is reasonable for

19  the harm inflicted. There's no denial that the organized

20  debtors came to the Court attempting to take advantage of its

21  own wrongs with unclean hands and maybe barred relief.

22  Reorganized debtors have not presented evidence to

23  rebut the validity of the claim or show there is no deniability

24  on the causes stated which fall outside the scope of either the

25  easement or judgment. Thus, the objection was not proven. And

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the claim is properly granted.  The pre-petition state law

2    claims are properly granted or given leave to proceed in the

3    California Superior Court.  And I reserve my remaining time.

4          THE COURT:  That was just about fifteen minutes, Ms.

5    McColm.  I'll reserve six minutes for you.

6          MS. MCCOLM:  Thank you.

7          THE COURT:  Mr. Rupp?

8          MR. RUPP:  Thank you, Your Honor.

9          For the record, Thomas Rupp with Keller Benvenutti Kim

10   for the reorganized debtors.

11         For the threshold matter regarding the pre-petition

12   and post-petition claims, the claims were filed.  Whether they

13   be pre-petition or post-petition, they're before this Court.

14   And the reorganized debtors submit that it does not make sense

15   to have duplicative litigation over them.  As to --

16         THE COURT:  Well, you do agree that Ms. McColm did

17   suggest that perhaps the Court could choose to abstain?  So

18   even though the claims were filed, there is an overlap.  I

19   think your response even mentioned that although some of the

20   claims cover post-petition, they're related.  But abstention

21   would tie together all the allegations going back to the

22   petitioner time but also the current dispute which is just a

23   continuation of the same thing.  So wouldn't abstention make

24   sense in this case?

25         MR. RUPP:  Your Honor, the Court's point is well

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    taken.  If the Court wishes to abstain, we would argue that

2    there's no other litigation pending as to these claims.  And

3    they're here now.  And we have briefed them.  So it's the

4    opportunity here to have this resolved, might be in the best

5    interest of judicial economy.

6        THE COURT:  Well, it is true.  It is true that the

7    principle of abstention usually starts with the premise that

8    there must be something to abstain from.  And the only matter

9    that is evident or existent on the record in a court is between

10   the company and Ms. McColm on appeal which is hardly what we're

11   talking about.

12       But the point is, she -- even in her argument this

13   morning, she asked for and alluded to the need for injunctive

14   relief.  So it seems like that it may well be an appropriate

15   thing.  But I'll leave it at that for now because there is --

16   it is true.  There's nothing from which to abstain.  Go ahead.

17       MR. RUPP:  Thank you, Your Honor.

18       With respect to the two claims in front of us today,

19   we respectfully argue that it is Ms. McColm who has not met her

20   burden to substantiate these claims.  They're pages of texts

21   and argument.  However, it is still entirely unclear what

22   exactly the damages were and what exactly the amounts are that

23   Ms. McColm alleges they are to be.  We have -- the claims end

24   up with large, round numbers such as 175- or 125,000.  But when

25   you look through the claims, we have perhaps 125 dollars for a

PG&E Corporation and Pacific Gas and Electric Company

1   lock here or another amount for a gate here or other amounts

2   for trees which is -- which is entirely speculative on Ms.

3   McColm's part.  And she has not provided receipts or estimates

4   or any kind of third-party validation of the amounts she

5   asserts.

6          Moreover, if we look at -- turning to the easements

7   and the judgment entered by the state court, here in paragraph

8   3, subsection B, this is docket 11228-1, the right of PG&E and

9   its successors and assigns to at any time enter upon said

10  Exhibit C lands for the purpose of directing, inspecting,

11  inspecting, and repairing said pole line or its appurtenances.

12  And PG&E may remove trees and clear away any brush within the

13  area described by Exhibit C which may interfere with the

14  operation and use thereof by PG&E for said purposes.

15         So as far as access goes, and we feel that we

16  submitted this and we tried to paint as clear of a picture as

17  we could in the Habib declaration, there is Ms. McColm's

18  property.  And there is a gate on Deadwood Road 300 feet away.

19  And that is the most direct path for PG&E or its contractors to

20  access the poles in question.

21         And as noted, there -- as the Court can see from the

22  past and the prior litigation, in the state court this didn't

23  come about for no reason.  There's a long history of high

24  tempers between Ms. McColm and the company.  However, the

25  photos Ms. McColm has submitted in her -- in her filings,

PG&E Corporation and Pacific Gas and Electric Company

1    regrettably they're not -- they are not very clear.  They are

2    black and white and very smudged.  But they do not seem to

3    really provide a strong evidence of any kind of damage.  She

4    contests there are ruts on her property.  And to the best I can

5    see, there are -- there may be tire tracks on the land, but

6    they do not seem to be ruts.

7          And moreover, in her filing she acknowledges that PG&E

8    made attempts to patch up the -- whatever ruts they may be with

9    hay, but she contested that she had an allergic reaction or a

10   possible allergic reaction, and the hay had to be cleaned up.

11         Regarding the lock, as far as the lock in her

12   declaration, there are photos of certain locks, I would point

13   out to the Court that it appears that there is a chain around

14   the fence and there is a lock with a PG&E mark.  And it is

15   locked to another lock which is then locked to the chain.  And

16   from what I understand, this is sort of the common practice in

17   rural areas where several parties can access a gate.  If you

18   unlock your lock, you can open the chain.  But the other party

19   can unlock their lock to open the chain and access the gate.

20         With respect to the trees, it's not at all clear from

21   Ms. McColm's filings whether these trees were actually cut

22   down, whether they were trimmed, how much they were trimmed,

23   and at what time this occurred.  It seems from at least the

24   first claim that they were simply marked.  And Ms. McColm

25   alleges that some debris was carried away and contests that

PG&E Corporation and Pacific Gas and Electric Company

1   this is firewood that was deprived of her.  But it's not at all

2   clear how much, what kind of debris it was, and in what quality

3   it was.

4           So all that being said, despite Ms. McColm's

5   opportunity to respond to our claims and respond to our claim

6   objection, we've gotten more arguments about the easement and

7   the judgment which is settled.  It's been settled by the state

8   court.  It was settled after a long trial.  The bottom line

9   here is there is a road.  There is a gate onto Ms. McColm's

10  property.  It's the simplest way for PG&E and its contractors

11  to access her property and access the poles on her property

12  which, to be fair, is an important public duty on PG&E's part

13  to be able to maintain these electrical poles and its equipment

14  and take special care that there is no vegetation encroaching

15  on the poles or on the wire.

16          And I strongly disagree that any of this was done out

17  of malice or out of bad faith.  This is simply what the company

18  needs to do as far as -- as far as this equipment goes and as

19  far as ensuring the safety of the public, including Ms.

20  McColm's property.

21          So with that, I think I can conclude it's just a

22  matter of -- looking at Ms. McColm's claims, it's impossible to

23  tell how these amounts add up to 175,000 or 125,000 or whatever

24  they may be.  There are no receipts.  There's no estimates.

25  There's nothing that we can gather as far as interpreting what

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   actually the company did wrong on the property and what the

2   cost would be to renumerate Ms. McColm if it were the case that

3   the company was liable for some damage.

4       From everything that we've heard from her and from the

5   things she has filed, it seems like the company regrettably had

6   to involve the sheriff's department to attend its contractors

7   and its employees when they visit Ms. McColm's property to

8   perform the work there.

9       THE COURT:  Okay.  We have plenty of time if you want

10  to go more, but you're also free to stop if you wish.

11      MR. RUPP:  I think that's all I need to say, Your

12  Honor.  We have our briefs.  And we tried to describe the issue

13  as easily as possible.  But the fact is that the claims --

14  there's no -- there's no backup to them beyond Ms. McColm's own

15  contest and -- contentions.  And even that doesn't remotely add

16  up to the amount she's asserting, even if they were taken to be

17  valid.

18      THE COURT:  Well, what if I conclude that it adds up

19  to some amount?  Then what do I do?  I mean, you kind of

20  dismissively said, well, maybe the 125 dollars and maybe

21  something was -- a value of a tree.  But, I mean, if there's

22  some amount, then I have a responsibility to pin it down and

23  fix it, right?  Do you want me to have a trial?  I mean, do we

24  need to go to trial on this or is it one of those things that

25  made it -- I don't know that there's a rule that says a

PG&E Corporation and Pacific Gas and Electric Company

1    claimant has to be -- prove a lot in order to recover a little.

2              MR. RUPP:  No, Your Honor.  We say that for purposes

3    of illustration that it hasn't even been shown that she

4    incurred any amount.

5              MS. MCCOLM:  Oh.

6              THE COURT:  Okay.  Okay.

7              MR. RUPP:  It's the company's position that there is

8    no liability on these claims.

9              THE COURT:  All right.  Thank you, Mr. Rupp.

10             Ms. McColm, you have six minutes.

11             MS. MCCOLM:  Your Honor, I respectfully disagree with

12   the approach and the argument of Mr. Rupp.

13             They claimed that there was no liability based on an

14   alleged dispute of the existence of an easement and judgment.

15   That isn't the basis for liability or a defense to liability at

16   all.  The causes of action, based on the jury instructions that

17   I've read for each of the causes of action read that are pled

18   and factually pled in the papers are -- show liability to the

19   claimant from PG&E.

20             They have not denied that they destroyed seventeen

21   trees and marked up -- the facts of the claims are not

22   disputed, period.  They did not provide any declarations or

23   evidence saying these things didn't happen.  They all happened.

24   The destruction all occurred.  And quite frankly, Your Honor,

25   because of my medical conditions and inform a proper status,

PG&E Corporation and Pacific Gas and Electric Company

1  going out and getting -- especially with the lack of sufficient

2  notice provided, getting expert reports or finding ones that I

3  had from before regarding valuations of trees and so forth was

4  just not possible and to be timely on the claims.

5  But the -- again, I provided personal knowledge of the

6  destruction of the research that mature trees at a minimum --

7  to destroy mature trees, each one is a minimum of a thousand

8  dollars.  And if they're larger -- and in this instance at a

9  building site, can be up to 20,000 apiece.  And the value of

10  property is diminished by a certain percentage.  My testimony

11  is evidence of the value.  The law accepts that in this claims

12  process.  And I agree with Your Honor that if more is needed,

13  sure, I guess we'd have to go to a trial.

14  To try and say these things didn't exist, they

15  certainly have not denied any of the things that I listed

16  there.  And the damage is not at all speculative.  The damage

17  that they caused is fact.  And then to say, oh, well, gee whiz,

18  we don't know what occurred, of course they know what occurred,

19  Your Honor.  They hired the people pursuant to supposedly a

20  report that they never shared with me.  They had receipts

21  showing -- or they should have receipts showing how many trees

22  they cut down, all the timber they stole from me.  They didn't

23  leave any timber on my property.  They took it away.

24  And then he's arguing new matter regarding the road

25  gate which is going to be the subject matter of litigation in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   another court.  So he's trying to bring up new matter which, on

2   the pre-petition claims, is not relevant because, Your Honor,

3   they were not using the road gate that he's referring to now

4   that's supposedly necessary to use that they've totally

5   destroyed the property on.  They were actually using another

6   road that has public road access that they had permission to

7   use.  And the photographs show that they were on the adjoining

8   property with the adjoining gate over which they took all the

9   tree parts, the actual trees they cut down.  They took them

10  over and through that gate which they had had permission to

11  use.  And now they're trying to change positions that, oh,

12  well, that gate was closer to the poles.  That would have been

13  more convenient.

14          But because of the malice and oppression, targeting

15  this claimant for trying so hard, standing up for themselves so

16  hard that I was not quite the easy victim they anticipated.

17  And with their attitude of having caused ruts and damage

18  previously that, oh, we don't even have to tell the owner who

19  caused the damage, we have an easement, we can do whatever we

20  want, that motus operandi has to be put a stop to.  They cannot

21  just come on to somebody's property, do whatever they want,

22  cause all the destruction they want, and then try and say, oh,

23  well, we can do it because we have an easement or we have a

24  judgment.  The judgment and the easement in this case do not

25  apply.  All these causes of action deserve a full credit and --

PG&E Corporation and Pacific Gas and Electric Company

1  for damages for what they caused.

2       I ended up in the emergency room with a risk of stroke

3  and high blood pressure and effects of my AFib and emotional

4  distress from watching the destruction of seventeen beautiful

5  trees that increased the value of the property.  And now that

6  is gone.

7       And they're talking about locks.  Your Honor, there

8  was no ability for me to enter the property when they put their

9  own PG&E lock on my subdivision gate.  It isn't necessarily

10  just a lockout of the owner showing malice and oppression.  It

11  is a lockout of potentially any one of the five lot owners for

12  the subdivision.  And their arrogance and we can do what we

13  don't says we don't care about other owners, we don't care

14  about the owner of this property.  We will destroy everything.

15  And as a matter of fact, their land person has now made the

16  assessment that because of how PG&E has behaved and where they

17  are and the way that they've conducted themselves, that it

18  is -- it is -- that the Trinity County building department will

19  not give anyone a permit to build on one entire lot, parcel D.

20  That is a huge diminution in value of the property.

21       And we're not -- I believe that the post-petition

22  claims should go to the Superior Court.  I think that absentia

23  of the state claims, whether they're just post-petition claims

24  or all the claims, so that if they want everything to all go

25  together, they can.  But I believe that more similar in nature

PG&E Corporation and Pacific Gas and Electric Company

1    are the claims that do deal with this gate which is new matter,

2    but then is more akin to the most disastrous actions they've

3    taken under this guise of we can do whatever we want.  And gee

4    whiz, maybe because of her disability, she can't defend against

5    us the way big fancy lawyers would be.  And as long as the case

6    is in bankruptcy, lawyers are very afraid to get involved

7    because of the automatic stay.  So --

8         THE COURT:  Okay.  Ms. McColm, assuming that your time

9    is up.  I appreciate your point and your preparation and your

10   argument.  And I'm going to take the matter under advisement.

11   And I will issue a ruling in due course.  So I thank you for

12   your efforts.

13        Thank you, Mr. Rupp.

14        Anyone else wish to be heard before I conclude the

15   hearing?  All right.  I'm going to conclude the hearing.

16        Thank you, Ms. Parada.  I'm going to sign off at this

17   point.  The matter stands submitted.

18        MS. MCCOLM:  Thank you, Your Honor.

19     (Whereupon these proceedings were concluded)

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

C E R T I F I C A T I O N

I, Michael Drake, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

/s/ MICHAEL DRAKE, CER-513, CET-513

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date:  November 11, 2021

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

# A

**ability (6)**
14:16;18:22,22;21:6;
31:15;67:8
**able (8)**
6:25;9:14;22:12;
24:2;26:3;38:4;47:5;
62:13
**above (1)**
55:5
**absentia (1)**
67:22
**absolutely (1)**
32:3
**abstain (4)**
58:17;59:1,8,16
**abstention (3)**
58:20,23;59:7
**accepted (1)**
51:23
**accepts (1)**
65:11
**access (13)**
39:15,24;40:3;54:16,
17,18;60:15,20;61:17,
19;62:11,11;66:6
**accident (1)**
15:1
**accidentally (1)**
15:10
**accommodate (1)**
8:11
**accommodated (1)**
49:19
**accommodations (1)**
48:22
**according (2)**
16:19;31:5
**acknowledges (1)**
61:7
**acquainted (1)**
36:16
**acquired (1)**
19:20
**act (1)**
55:16
**action (10)**
16:15;51:7;52:23,25;
55:22;56:15;57:11;
64:16,17;66:25
**actionable (2)**
52:15;55:18
**actions (1)**
68:2
**activity (1)**
29:11
**acts (2)**
55:23,25
**actual (2)**
43:14;66:9
**actually (9)**
8:15,25;9:2;32:23;
43:13;45:18;61:21;
63:1;66:5
**adamantly (1)**
47:13
**add (5)**
14:4;19:25;26:21;
62:23;63:15
**Addington (59)**
4:13,19,20,21,23;
15:4,6,9,14,16;16:6,7,
8,10,10,14,25;17:7,12,
19;18:2,3,19,22;19:1,3,
6,20;20:6,10,13,20,24;
21:3,5,15,17,18,20;
22:4,20,22,23;23:23,
25;24:2,4,6,11,22;25:2,
10,16,24;26:7,13,18;
27:3,4
**Addington's (3)**
5:2;17:17;20:5
**additional (1)**
19:24
**Addleton (1)**
15:2
**address (5)**
40:21;41:9;45:1;
54:5;56:5
**addressed (1)**
7:15
**adds (1)**
63:18
**adjacent (1)**
54:20
**adjoining (2)**
66:7,8
**administrators (1)**
8:16
**admissible (1)**
40:16
**admitted (1)**
13:11
**advanced (1)**
42:9
**advantage (4)**
19:21;41:5;57:16,20
**adversary (5)**
16:24;17:11,13;
18:10,16
**advisement (3)**
9:25;36:14;68:10
**advocating (1)**
37:5
**affect (1)**
55:5
**affirmative (1)**
43:6
**AFib (1)**
67:3
**afoul (1)**
51:22
**afraid (1)**
68:6
**again (14)**
7:15;10:22;19:5;
20:1;21:9;23:7;24:21;
29:21;33:22;34:4;35:2;
44:8,14;65:5
**against (2)**
29:8;68:4
**agent (2)**
55:20;57:7
**aggrieved (1)**
42:21
**ago (7)**
14:5,6,6,7;22:14;
31:6;41:1
**agree (27)**
11:1;14:19,20;17:4,
8,12,12,25;18:9,11;
21:15;22:5,12,23;
23:23;24:7;25:7;30:3,
19;31:4;38:4,22;39:10;
51:16,18;58:16;65:12
**agreed (15)**
18:8;21:1,15;22:5,
10,11,14,22;23:21;
24:21;25:8;28:21;
34:18,21;36:10
**agreement (12)**
13:24;20:14;25:14;
31:5;35:25;37:17,24;
38:18;40:12;44:20;
45:13;53:4
**agrees (4)**
11:21,22;17:9;25:3
**ahead (9)**
12:16,17,23;15:18;
23:13,23;27:23;50:25;
59:16
**akin (1)**
68:2
**allegation (1)**
55:24
**allegations (1)**
58:21
**alleged (4)**
53:12,18;55:20;
64:14
**alleges (3)**
52:4;59:23;61:25
**allergic (2)**
61:9,10
**allocate (1)**
45:24
**allocated (1)**
48:19
**allow (1)**
10:8
**allowed (3)**
32:8;43:16;50:7
**all-purpose (1)**
24:18
**alluded (1)**
59:13
**almost (1)**

**alone (1)**
57:1
**along (2)**
17:2;32:24
**Alston (1)**
27:17
**alternative (1)**
46:22
**although (2)**
41:12;58:19
**altogether (1)**
38:24
**always (2)**
10:19;18:21
**amend (1)**
55:13
**amicably (1)**
10:18
**among (1)**
47:2
**amount (7)**
17:23;57:18;60:1;
63:16,19,22;64:4
**amounts (4)**
59:22;60:1,4;62:23
**and/or (1)**
56:11
**anniversary (1)**
42:8
**announce (1)**
50:16
**anticipate (2)**
22:12;44:10
**anticipated (2)**
43:11;66:16
**anticipating (1)**
32:22
**anymore (1)**
18:3
**apiece (1)**
65:9
**apologize (2)**
46:6;48:3
**apparent (1)**
56:7
**appeal (5)**
19:12;23:5;52:6,9;
59:10
**appealed (1)**
55:25
**appear (2)**
8:1;49:18
**appearance (2)**
16:9;27:6
**appearing (2)**
27:17;48:5
**appears (2)**
7:14;61:13
**appellate (1)**
23:9
**application (1)**
37:24

**apply (4)**
31:17;53:3;56:24;
66:25
**appoint (1)**
37:10
**appointed (1)**
30:12
**appreciate (6)**
15:20;32:11;41:15;
47:9;51:2;68:9
**approach (1)**
64:12
**appropriate (4)**
11:19;28:24;53:19;
59:14
**approval (2)**
33:4;35:18
**approving (1)**
33:3
**appurtenances (1)**
60:11
**April (1)**
35:5
**arbitrate (2)**
31:4;33:10
**arbitrated (2)**
31:6;45:5
**arbitration (29)**
27:23;28:3,8,10,25;
29:3;31:22;32:17,19,
23;33:8,11,14,22;34:2,
12,14;35:6,7,16;36:8,
21;37:9,9;38:24;42:21;
43:25;44:13;45:19
**arbitrator (6)**
30:10,12;31:17;
32:24;33:5,13
**area (11)**
37:14,17;38:21;
39:21,23;40:3,3,4,4;
54:10;60:13
**areas (5)**
39:15,18,18;40:5;
61:17
**argue (3)**
51:19;59:1,19
**argued (1)**
56:1
**arguing (1)**
65:24
**argument (11)**
7:12;9:24;21:1,25;
23:2;24:23;47:12;
59:12,21;64:12;68:10
**arguments (3)**
7:21;47:14;62:6
**arise (3)**
52:22,22;55:2
**arising (1)**
51:7
**arose (1)**
53:3
**around (3)**

Min-U-Script®

Case: 19-30088    Doc# 11575    eScribers, LLC | (973) 406-2250    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 70 of 83    **(1) ability - around**
operations@escribers.net | www.escribers.net

16:14;52:5;61:13
**arrogance (1)**
67:12
**articulate (1)**
19:13
**aspect (1)**
40:1
**Asserted (1)**
52:21
**asserting (1)**
63:16
**asserts (1)**
60:5
**assessment (1)**
67:16
**assignment (1)**
21:14
**assigns (1)**
60:9
**Associates (1)**
41:10
**assume (2)**
26:3;27:19
**assuming (1)**
68:8
**attached (2)**
28:22;29:6
**attempting (1)**
57:20
**attempts (2)**
10:20;61:8
**attend (1)**
63:6
**attended (1)**
56:7
**attendee (1)**
4:20
**attention (1)**
29:25
**attitude (1)**
66:17
**audience (2)**
5:4,7
**audio (2)**
11:24;14:23
**author (1)**
7:13
**authority (2)**
52:12;55:17
**authorized (1)**
54:9
**automatic (2)**
51:22;68:7
**available (1)**
46:21
**avoid (1)**
37:7
**award (1)**
42:21
**aware (4)**
5:21;33:19;49:7,15
**away (7)**
25:22;44:19;54:9;

60:12,18;61:25;65:23

**B**

**back (8)**
13:5;19:19;20:1;
34:6;36:20;39:6;42:20;
58:21
**backburner (2)**
35:8;41:3
**background (2)**
37:10;40:25
**backup (2)**
6:12;63:14
**bad (1)**
62:17
**bankruptcy (17)**
16:11,15,19,21,22;
17:25;20:20;35:15;
38:14;42:20;51:18,24;
52:21,24;53:1;55:5;
68:6
**barred (1)**
57:21
**based (9)**
18:5;19:16;45:7;
46:7;55:10,11,20;
64:13,16
**basis (5)**
13:10;52:18;55:16;
56:23;64:15
**battle (2)**
31:16;33:23
**beautiful (2)**
56:17;67:4
**became (2)**
39:19,22
**beg (2)**
26:4,5
**begin (2)**
39:11,11
**beginning (1)**
50:11
**behalf (3)**
27:8,11;48:7
**behaved (1)**
67:16
**behavior (2)**
52:7;53:17
**behaviors (2)**
52:14;57:16
**believes (1)**
12:1;17:2
**belong (1)**
15:1
**bench (1)**
44:2
**benefit (5)**
10:16;11:17;19:11,
12;35:3
**Benvenutti (3)**
27:8;48:7;58:9
**best (10)**

7:17;10:17;33:9;
36:12;39:8;43:23;46:8;
49:23;59:4;61:4
**better (2)**
35:13;44:22
**beyond (2)**
11:1;63:14
**big (6)**
28:2;37:15,20;38:16;
44:22;68:5
**bit (1)**
36:19
**black (1)**
61:2
**blaming (1)**
22:8
**blood (1)**
67:3
**bookends (1)**
31:13
**both (15)**
11:1;14:19;16:1;
17:25;18:7,10,14;25:8,
23;26:19;32:1,11;34:4;
56:11;57:2
**bottom (1)**
62:8
**box (1)**
6:11
**breach (1)**
53:4
**brief (19)**
9:24;19:23;21:2,12,
13,14,18,19,23;22:1,
22;23:12,19,20,21;
24:10,22;26:16;42:1
**briefed (1)**
59:3
**briefing (1)**
18:18
**briefly (1)**
23:4
**briefs (7)**
21:4,7,8,21;22:1;
23:7;63:12
**bring (5)**
4:5,18;5:5;16:6;66:1
**brush (2)**
54:9;60:12
**build (1)**
67:19
**building (2)**
65:9;67:18
**burden (3)**
13:12;53:22;59:20
**business (1)**
34:6
**button (1)**
5:14
**Byrd (1)**
27:17

66:17,19;67:1
**causes (14)**
51:12,13;52:16,18,
23,24;54:1;55:3;56:15,
24;57:24;64:16,17;
66:25
**cease (1)**
57:7
**century (1)**
19:19
**certain (4)**
36:11;38:19;61:12;
65:10
**certainly (5)**
22:23;24:4;26:16;
44:6;65:15
**cetera (2)**
33:5,5
**chain (4)**
61:13,15,18,19
**chance (9)**
5:21;6:2;7:5,6,18;
31:20;32:3,6;51:22
**chances (1)**
11:23
**change (3)**
6:16;12:20;66:11
**characterization (1)**
18:12
**check (1)**
23:14
**checking (1)**
5:23
**chief (1)**
56:6
**choice (1)**
14:7
**choose (3)**
32:24;53:6;58:17
**circles (1)**
16:14
**circulate (1)**
47:2
**circumstances (2)**
17:4;37:24
**civil (2)**
55:23;57:9
**claim (35)**
12:10;17:14,19,21,
22;18:3,14,15,16,23,
24;20:5,20,21;29:3;
34:16;35:9,9,18;36:9,
10,18;41:12,12,14;
42:10;50:7,22;54:2;
55:16;56:21;57:23;
58:1;61:24;62:5
**claimant (9)**
16:11;48:13;51:4,12;
53:11;56:22;64:1,19;
66:15
**claimants (1)**
56:5
**claimant's (3)**

**C**

**calendar (6)**
4:9;9:10;23:16;26:1;
41:22;44:9
**CalFire (1)**
56:5
**CALIFORNIA (8)**
4:1;51:6;52:6,9,23;
53:20;55:6;58:3
**Call (7)**
4:3;17:5;18:10;
24:10;26:6;48:17;49:8
**called (4)**
12:22;21:12;23:20;
29:18
**Calling (3)**
4:4;48:1;57:7
**calls (2)**
57:5,6
**came (2)**
6:10;57:20
**camera (2)**
5:12;10:15
**Camp (1)**
42:8
**can (58)**
4:14;5:17,18;6:22,
24;8:5;10:14;11:22;
13:14;14:2,9,21;15:13,
16;16:8;17:12,12,13,
18,23,24,25;24:13;
25:20,21;26:10;30:20;
32:2,5;40:15;41:6;
44:20;46:18,19;47:2;
49:17,20;50:1,5,23;
53:15;60:21;61:4,17,
18,19;62:21,25;65:9;
66:19,23;67:12,25;
68:3
**candidly (1)**
31:25
**Cardoza (1)**
48:9
**care (4)**
16:4;62:14;67:13,13
**caring (1)**
43:1
**carried (1)**
61:25
**case (10)**
8:15;10:19;14:3,21;
37:5,25;58:24;63:2;
66:24;68:5
**cases (1)**
52:22
**cause (6)**
13:19;51:10;55:22;
66:22
**caused (6)**
12:8;51:9;65:17;

Min-U-Script®

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 71
of 83

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) arrogance - claimant's

52:12;55:7;57:11
**claimed (3)**
  52:7;57:18;64:13
**claimholder (1)**
  41:11
**claiming (2)**
  20:23,24
**claims (54)**
  43:6;51:6,7,9,11,17,
  20;52:2,3,13,13,17,19,
  20,21;53:2,3,7,19,21,
  23,24;54:1;55:2,7,8,10,
  18,23;56:2,25;58:2,12,
  12,18,20;59:2,8,18,20,
  23,25;62:5,22;63:13;
  64:8,21;65:4,11;66:2;
  67:22,23,23,24;68:1
**clean (1)**
  29:8
**cleaned (1)**
  61:10
**clear (17)**
  11:12;23:8;24:13,15,
  25;28:8;42:15;43:17;
  44:23,24;45:5;54:9;
  60:12,16;61:1,20;62:2
**clearly (1)**
  23:4
**CLERK (12)**
  4:4,20;5:5,9;8:14,19;
  9:12;15:13;24:18;
  41:23;47:24;48:1
**client (6)**
  8:3,3,10;10:15,22;
  43:21
**client's (3)**
  41:17;42:4;43:4
**closer (1)**
  66:12
**closing (1)**
  21:4
**clue (1)**
  44:2
**cocounsel (2)**
  4:16;27:9
**Code (2)**
  52:21,23
**colleague (2)**
  4:15;26:23
**color (1)**
  9:1
**coming (1)**
  56:8
**comment (1)**
  7:6
**comments (1)**
  41:17
**common (1)**
  61:16
**companies (1)**
  12:20
**company (24)**
  4:14,16;9:19;11:4,

10,18,25;12:18;13:11,
13;14:21;16:22;20:7;
21:3,16,17,18;27:11;
59:10;60:24;62:17;
63:1,3,5
**company's (2)**
  17:18;64:7
**compelled (1)**
  42:4
**competent (1)**
  57:17
**complete (3)**
  52:16,17;55:3
**completely (1)**
  11:15
**complicated (1)**
  44:24
**complicating (1)**
  45:18
**comprehension (1)**
  49:22
**compromise (3)**
  10:12,13;32:10
**concern (1)**
  25:24
**concerned (1)**
  27:25
**conclude (8)**
  32:2,23;46:25;47:22;
  62:21;63:18;68:14,15
**concluded (2)**
  13:19;68:19
**conclusion (2)**
  12:7;30:11
**concurrent (2)**
  23:12;35:23
**concurrently (1)**
  34:14
**condition (1)**
  51:9
**conditions (2)**
  38:19;64:25
**conduct (2)**
  55:19;56:8
**conducted (1)**
  67:17
**confer (1)**
  32:12
**conference (12)**
  15:15;25:20;26:11;
  28:11,19;29:7,14,18,
  25;30:6,8;50:21
**confirm (1)**
  30:19
**confirmation (1)**
  42:20
**conflict (1)**
  46:13
**consecutive (1)**
  36:4
**consensual (1)**
  13:24
**consensus (1)**

36:3
**consider (2)**
  11:11;48:23
**consistent (5)**
  17:17,18;21:10;52:7;
  53:17
**constituting (1)**
  52:15
**constitutional (1)**
  57:9
**construction (2)**
  37:10;42:16
**contact (1)**
  26:10
**contacted (1)**
  6:15
**contemplates (1)**
  38:18
**contend (1)**
  38:19
**contention (1)**
  37:15
**contentions (1)**
  63:15
**contest (2)**
  18:14;63:15
**contested (1)**
  61:9
**contests (2)**
  61:4,25
**context (2)**
  20:19;39:14
**continuance (1)**
  8:4
**continuation (1)**
  58:23
**continue (4)**
  9:17;10:25;11:1;
  25:21
**continued (3)**
  46:16,16;47:3
**contours (1)**
  42:17
**contractor (1)**
  14:9
**contractors (3)**
  60:19;62:10;63:6
**contrary (2)**
  13:25;19:22
**contravenes (1)**
  52:12
**contravention (5)**
  53:14,23;55:9,17;
  57:12
**controversy (1)**
  51:25
**convenient (1)**
  10:3;66:13
**conversant (1)**
  19:7
**conversations (2)**
  31:11,14
**Conversely (1)**

17:21
**convince (1)**
  28:1
**Corporation (3)**
  4:4;27:12;48:1
**correctly (1)**
  19:2
**cost (29)**
  30:14;31:16,18;
  33:16,19,23;37:14,19;
  38:4,5,12,13,20,22,23;
  39:8,12,23,24;42:16,
  24,25;43:1,12,15,16;
  45:7,10;63:2
**counsel (10)**
  30:2,15;31:25;34:21;
  35:13;36:9;38:11;45:3;
  46:20;47:2
**count (1)**
  4:8
**County (1)**
  67:18
**couple (9)**
  7:23;12:25;13:1;
  27:21;30:24;37:1;
  41:17;44:19;46:22
**course (6)**
  12:4;14:2;38:9;
  45:11;65:18;68:11
**Court (185)**
  4:3,8,18,22;5:3,7,11,
  16,19;6:1,10,17,23;7:2;
  8:8,18,20;9:7,9,13,17;
  10:6,10;11:11,13,15;
  13:2,4;14:13;15:2,4,6,
  8,17,20,23;16:1,3,8,12,
  21,22;17:3,8,25;18:11,
  17,19,20;19:1,4,10,12,
  15;20:10,15;22:14,17;
  23:9,13,15,18;24:2,5,
  15,20;25:3,6,11,13,16;
  26:5,8,9,14,19,25;27:3,
  5,13,19;28:13;29:5,10;
  30:5,13,17;32:2,5,14,
  14,15;33:1,7,25;34:2,
  10,12,13,24;35:2,8,16,
  20,22;36:2,7,24;37:12;
  38:7,9,14;39:1,3,5,5,7,
  17;40:8,19,20,21,22;
  41:9,19,24;42:2,20;
  43:23;44:8;45:2,21,23;
  46:2,4,11,18;47:16,21;
  48:2,10,14,25;49:7,11,
  13,20,24;50:14,19;
  51:6,16,17,18,21,25;
  52:1,6,6,9;53:6,7,20;
  57:20;58:3,4,7,13,16,
  17;59:1,6,9;60:7,21,22;
  61:13;62:8;63:9,18;
  64:6,9;66:1;67:22;68:8
**courtroom (2)**
  26:11;43:25
**court's (4)**

6:13;29:24;37:23;
58:25
**cover (1)**
  58:20
**created (1)**
  52:23
**Credit (2)**
  27:18;66:25
**criminal (1)**
  55:23
**crippled (1)**
  49:5
**critical (5)**
  16:18;18:13;20:2;
  23:21;25:19
**current (1)**
  58:22
**cut (6)**
  12:1;56:11,11;61:21;
  65:22;66:9
**cutoff (1)**
  34:23

**D**

**damage (17)**
  8:25;9:3,4;12:7;
  13:17;14:5;38:2,3;
  45:9,11;55:19;61:3;
  63:3;65:16,16;66:17,
  19
**damaged (2)**
  14:9;53:5
**damages (6)**
  35:16;37:7;43:5;
  57:13;59:22;67:1
**date (6)**
  11:21;24:13,19,20;
  45:14;47:2
**dates (9)**
  24:14;30:1,4,19;
  34:17,20,20,23;46:23
**David (1)**
  16:10
**day (6)**
  16:19;17:15;28:23;
  31:1,10;46:18
**days (13)**
  12:19,21;25:25;26:1;
  30:12;32:18,23;33:4,
  16,22;34:15;42:19;
  44:5
**Deadwood (1)**
  60:18
**deal (3)**
  35:17;50:20;68:1
**dealing (1)**
  35:3
**debate (1)**
  24:21
**debris (1)**
  61:25;62:2
**debtor (1)**

Min-U-Script®

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 72
of 83

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(3) claimed - debtor

48:5
**debtors (17)**
4:7;27:8,9;28:18,19;
48:7;51:10;52:12;53:9,
21,25;55:9;56:23;
57:20,22;58:10,14
**debtors' (2)**
52:4;53:17
**December (8)**
23:22;24:1,5,10,22,
22;25:25;46:17
**decide (3)**
7:10;8:12;52:7
**decided (4)**
9:23;10:18;27:22;
35:4
**deciding (1)**
43:13
**decision (3)**
7:19;9:25;10:1
**decisions (1)**
7:2
**declaration (7)**
16:23;50:13;53:24;
60:17;61:12
**declarations (1)**
64:22
**default (1)**
26:3
**defend (1)**
68:4
**defense (1)**
64:15
**defenses (3)**
43:6,19;44:7
**defer (3)**
36:10,10,21
**deference (1)**
31:7
**definitely (2)**
15:13;37:22
**delay (5)**
30:25;34:9;42:6;
43:22;48:3
**demarcated (1)**
54:25
**deniability (1)**
57:23
**denial (11)**
55:15;57:3,4,5,8,10,
14,15,16,18,19
**denied (2)**
64:20;65:15
**denies (1)**
55:2
**department (3)**
57:7;63:6;67:18
**depreciation (2)**
55:12;57:13
**deprived (1)**
62:1
**deputy (1)**
26:11

**describe (2)**
34:11;63:12
**described (7)**
54:10,13,18,19,22,
24;60:13
**deserve (1)**
66:25
**designated (2)**
54:24;56:13
**desist (1)**
57:8
**despite (1)**
62:4
**destroy (4)**
54:6;57:1;65:7;
67:14
**destroyed (2)**
64:20;66:5
**destruction (5)**
56:9;64:24;65:6;
66:22;67:4
**determination (9)**
16:24;17:6,16;18:4,
11;19:16;20:9;42:10;
43:15
**determine (4)**
17:3,9;18:1;40:8
**determined (1)**
43:18
**determines (1)**
18:20
**devastating (1)**
43:1
**Diane (1)**
27:16
**dictate (1)**
20:11
**difference (1)**
12:22
**different (5)**
20:11;23:3;31:2;
39:13;46:18
**difficult (1)**
20:17
**diligence (1)**
12:9
**diminished (1)**
65:10
**diminution (1)**
67:20
**direct (3)**
22:3;29:24;60:19
**directed (2)**
25:1;56:12
**directing (3)**
56:13;57:10;60:10
**direction (1)**
42:15
**disability (1)**
68:4
**disadvantaged (1)**
21:21
**disagree (7)**

23:23;24:7,7;33:21;
47:13;62:16;64:11
**disagreement (1)**
30:16
**disagrees (2)**
11:22;22:23
**disallowable (1)**
50:22
**disapprove (1)**
28:2
**disastrous (1)**
68:2
**discovery (4)**
34:22;39:25;40:2;
55:13
**discrete (2)**
31:16,18
**discretion (1)**
56:17
**discuss (1)**
15:16
**discussed (1)**
34:21
**discussions (2)**
22:9;32:1
**dismissively (1)**
63:20
**dispose (1)**
50:23
**dispute (9)**
16:17,18;19:13;30:7;
38:11,12;52:5;58:22;
64:14
**disputed (6)**
19:15,18;21:8;23:2;
54:5;64:22
**disputes (2)**
20:7;22:9
**disrespectful (1)**
49:18
**distinction (1)**
30:9
**distress (2)**
56:16;67:4
**docket (12)**
7:3,4;27:19;28:14,
15,20,21;29:7,11,16;
34:6;60:8
**docketing (1)**
8:16
**document (14)**
6:12,23;7:4,7,25;
8:15;13:9;25:7;29:20,
22;32:15;33:2;35:4;
54:11
**documentation (2)**
12:12;55:13
**documented (1)**
13:17
**documents (2)**
7:12;55:7
**dollars (5)**
12:25;13:1;59:25;

63:20;65:8
**done (7)**
17:13;31:3,19;33:16;
45:9,11;62:16
**dot (2)**
54:19,19
**down (12)**
6:10;12:1;25:6;35:5;
36:2,12;39:8;44:11;
61:22;63:22;65:22;
66:9
**downstairs (1)**
9:5
**draft (10)**
22:4,18,21;23:11,22,
25;25:1,9;26:15;32:16
**drafting (1)**
21:14
**DREHER (7)**
40:21;41:8,9,10,19;
42:1,3
**Drive (1)**
53:10
**driveway (3)**
6:15;9:4;13:18
**drop (1)**
6:11
**dropped (1)**
9:5
**dual (1)**
30:23
**due (2)**
12:9;68:11
**duplicative (1)**
58:15
**duration (2)**
32:19;33:11
**During (1)**
10:7
**dust (1)**
13:17
**duty (1)**
62:12

**E**

**earlier (4)**
28:23;29:16;36:8,9
**easement (40)**
16:16,20,23,25;17:1,
2,20,22;18:1,6,22;
19:19,22;20:6,7,24;
51:14;52:5,8,14;53:14,
16,18;54:13,17,18,21,
24;55:1,4,24;56:12,14,
24;57:25;62:6;64:14;
66:19,23,24
**easements (2)**
57:3;60:6
**easily (2)**
33:16;63:13
**easy (7)**
20:16,17,18;36:7;

44:15;45:14;66:16
**ECC (2)**
45:6,16
**economy (2)**
51:5;59:5
**edit (1)**
28:11
**effect (2)**
52:24;56:20
**effective (1)**
33:13
**effects (1)**
67:3
**efficient (1)**
31:23
**efforts (2)**
32:11;68:12
**either (17)**
5:20;7:18;9:25;
11:18;14:19;19:24;
22:8;24:7;26:16;35:23;
42:20;47:5;51:13;52:8;
54:13;55:24;57:24
**Electric (1)**
27:11
**electrical (1)**
54:21;62:13
**else (8)**
17:5;26:20;45:9;
48:11,16;49:2,2;68:14
**elsewhere (1)**
50:6
**email (2)**
5:23;15:14
**emergency (1)**
67:2
**emotional (3)**
56:16;57:14;67:3
**employees (1)**
63:7
**encourage (1)**
10:13
**encouraged (1)**
10:11
**encroaching (1)**
62:14
**end (4)**
17:15;18:8;42:11;
59:23
**ended (1)**
67:2
**engage (2)**
33:4;57:11
**enjoyment (1)**
56:18
**enough (6)**
22:17;26:7;45:14;
46:19,20,20
**ensuring (1)**
62:19
**enter (3)**
30:20;60:9;67:8
**entered (1)**

Min-U-Script®
Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 73
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
of 83

(4) debtors - entered

60:7
**entire (1)**
67:19
**entirely (4)**
42:15;55:5;59:21;
60:2
**entitled (3)**
16:16;18:5;31:7
**entitlement (2)**
14:16;19:21
**entry (1)**
30:13
**envelope (1)**
15:2
**equipment (4)**
39:16;40:4;62:13,18
**equipped (1)**
46:8
**especially (1)**
65:1
**essential (1)**
18:15
**essentially (2)**
7:12;22:5
**establish (2)**
19:14;21:1
**established (2)**
35:15,16
**Establishing (1)**
56:15
**estate (1)**
52:24
**estimate (13)**
30:14;33:16,19;
37:14;38:13,21,22,23;
39:11;41:24;43:12;
45:7;57:13
**estimated (1)**
32:18
**estimates (3)**
31:18;60:3;62:24
**estimating (3)**
39:22,23;45:10
**estimator (2)**
33:23;42:17
**estimators (1)**
31:16
**et (2)**
33:5,5
**even (18)**
6:23,25;12:10,11,12,
15;13:9;21:24;38:3;
45:17;57:1;58:18,19;
59:12;63:15,16;64:3;
66:18
**event (1)**
55:15
**events (2)**
50:4,5
**everybody (3)**
21:9;31:1;42:23
**everybody's (1)**
30:22

**everyone (1)**
47:21
**evidence (16)**
12:11,14;13:17,25;
19:16;51:11;53:23,25;
55:2,10;56:20,21;
57:22;61:3;64:23;
65:11
**evident (1)**
59:9
**evidentiary (14)**
28:10;29:3;30:11,13;
31:21;34:19,22;42:13;
50:23;52:11;55:8,9,16;
56:23
**exact (2)**
42:14;45:14
**exactly (8)**
9:3,4;17:10;29:17;
43:17;51:20;59:22,22
**examination (1)**
11:25
**example (2)**
43:15;54:7
**exclusion (2)**
40:6,11
**Excuse (6)**
8:14,14;21:17;22:19;
24:10;41:1
**excused (1)**
55:23
**excusing (2)**
38:17;40:6
**exercise (4)**
32:4;53:6,12;57:8
**Exhibit (8)**
29:7,8;54:10,19,22,
24;60:10,13
**Exhibits (1)**
29:6
**exist (2)**
52:25;65:14
**existence (2)**
52:25;64:14
**existent (1)**
59:9
**existing (1)**
56:5
**expect (2)**
5:1;34:15
**expense (3)**
12:2;14:3,12
**expensive (1)**
12:2
**experience (3)**
19:6;31:17;33:7
**expert (3)**
11:11;55:12;65:2
**expertise (1)**
31:18
**experts (2)**
12:2;33:23
**expired (1)**

12:21
**explained (4)**
6:6;13:15;28:21;
46:7
**explanation (1)**
51:3
**extensa (1)**
53:7
**extension (2)**
26:4,6
**extraordinary (1)**
53:4
**eyesores (1)**
57:4

**F**

**fact (13)**
13:15;20:2;24:1;
45:24;51:14;52:12;
53:23;55:2,17;57:6;
63:13;65:17;67:15
**factor (2)**
45:18,24
**facts (31)**
19:13,14,14,15,16,
18,24,24;20:8,11,14;
21:2,8,15,16,24;22:5,
10,22,25;23:6,11;24:6,
8,21;25:1,6,8;53:8;
55:22;64:21
**factual (1)**
23:2
**factually (1)**
64:18
**fail (1)**
53:21
**fair (3)**
18:12;26:7;62:12
**fairly (1)**
50:17
**faith (3)**
22:17;53:12;62:17
**fall (4)**
51:13;55:3,25;57:24
**false (1)**
53:15
**familiar (6)**
6:19;34:5,5;41:4,5;
42:24
**fancy (1)**
68:5
**far (12)**
10:21;11:9,12,12;
27:24;33:19;60:15;
61:11;62:18,18,19,25
**favorably (1)**
17:10
**February (4)**
24:12,18,24;45:16
**federal (1)**
52:1
**feel (9)**

21:20,23;25:19;
26:17;32:1;36:16;41:6;
42:4;60:15
**feels (3)**
22:19,20;42:21
**feet (2)**
26:10;60:18
**fence (1)**
61:14
**festivities (1)**
26:2
**few (1)**
44:5
**fifteen (3)**
50:19;51:1;58:4
**figure (2)**
19:12;45:15
**figuring (1)**
36:3
**file (16)**
7:9;9:14,19;11:4,19;
16:23;21:1,2,3,3,18,21;
22:3;24:9;25:1,4
**filed (26)**
4:23,24;5:20,24;
6:18;8:15;11:4;12:13;
21:12;28:18,19,23;
29:15;30:8;32:15;33:2;
41:13,13;50:3,20;
51:21;52:22;53:24;
58:12,18;63:5
**files (3)**
20:19,20,20
**filing (4)**
5:22;25:9;29:18;
61:7
**filings (3)**
9:22;60:25;61:21
**filled (1)**
26:1
**final (3)**
30:13;43:11;46:6
**finally (1)**
43:18
**financing (1)**
42:25
**find (1)**
32:5
**finding (1)**
65:2
**fine (6)**
4:18;36:7,18;44:20;
49:13,20
**finish (1)**
50:10
**finished (1)**
41:25
**fire (2)**
26:10;42:8
**firewood (1)**
62:1
**first (11)**
7:11;11:20,20;22:21;

30:16,18,25;37:6;
46:16,25;61:24
**five (3)**
8:1;50:17;67:11
**five-page (1)**
7:4
**five-parcen (1)**
53:10
**fix (7)**
14:7,9,10,10,12,16;
63:23
**fixed (1)**
14:6
**fixing (1)**
14:5
**flesh (1)**
7:20
**focal (1)**
52:3
**focus (2)**
50:4;56:2
**focusing (1)**
38:25
**fold (1)**
43:13
**folks (1)**
37:5
**follow (2)**
4:14;8:20
**followed (3)**
4:13;28:10;31:22
**following (2)**
30:13;45:17
**follow-up (1)**
36:15
**form (1)**
52:18
**formal (4)**
13:7;17:11,13;18:15
**forms (4)**
15:1,3,14;55:16
**forth (8)**
13:22;21:11,11,25;
51:15;52:13;56:24;
65:3
**forward (3)**
14:18;15:21;23:7
**forwarded (1)**
6:9
**four (1)**
21:4
**fourteen-page (1)**
29:22
**fourth (2)**
7:15;21:19
**frame (2)**
19:1;31:14
**FRANCISCO (1)**
4:1
**frankly (4)**
10:17;43:2,17;64:24
**free (2)**
14:10;63:10

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 74
of 83

**Friday (3)**
9:14,20;28:20
**front (8)**
15:16;31:17;34:20;
38:23;42:22;43:14,20;
59:18
**Fulcrum (9)**
4:17;27:17;28:12;
30:2,15,22;41:1,12;
44:12
**Fulcrum/Tuscan (1)**
4:15
**Fulcrum's (2)**
28:22;29:8
**full (4)**
7:20;8:9;31:20;
66:25
**fully (3)**
36:16;40:11;51:15
**fundamental (1)**
18:1
**furnished (1)**
12:11
**further (7)**
7:19;11:2,25;13:23;
14:3,4,20

**G**

**Gale (1)**
27:10
**game (1)**
14:11
**garage (4)**
9:3;13:18;14:5,9
**Gas (1)**
27:11
**gate (13)**
53:10;60:1,18;61:17,
19;62:9;65:25;66:3,8,
10,12;67:9;68:1
**gather (1)**
62:25
**gave (4)**
7:8;23:6;36:14,14
**Gayle (2)**
4:16;28:7
**gee (2)**
65:17;68:3
**general (1)**
43:18
**generally (1)**
7:1
**given (5)**
22:4,8;31:4;48:25;
58:2
**glad (1)**
20:16
**goal (1)**
49:24
**goes (4)**
11:12;23:9;60:15;
62:18

**Good (21)**
4:6,8;5:11;12:19;
16:1,8;22:7;25:15;
27:7,10,13,14,16;28:3;
47:21;48:2,6,12,14;
51:10;53:12
**Goodbye (2)**
16:2;47:21
**goods (1)**
42:24
**Gough (23)**
4:16;27:6,9,10,10;
28:5,7,7;29:24;30:6;
34:11;36:23,25;37:13;
39:2,4,13,18;45:20,22;
46:4;47:11,20
**granted (4)**
51:10;54:3;58:1,2
**gravel (1)**
37:20,22;38:5
**Green (39)**
4:13;5:2,3,5,7,11,14,
18,22,25;6:1,5,21;8:7,
18,22;9:8,9,17;10:4,7;
11:7,17,20;12:5;13:2,3,
4;14:20,25;15:5,7,10,
17,17,19,21,24;16:2
**guess (9)**
21:11;22:23;23:24;
43:11;44:12,16,17,17;
65:13
**guidance (1)**
37:23
**guided (1)**
30:11
**guise (1)**
68:3
**gulf (1)**
45:11

**H**

**Habib (3)**
48:8,8;60:17
**half (1)**
31:6
**hand (3)**
4:21;5:8;22:21
**hands (3)**
33:17;49:6;57:21
**handwritten (1)**
49:5
**hang-up (1)**
30:22
**happen (5)**
32:17;33:14;36:13;
43:12;64:23
**happened (9)**
6:7;12:7,15,16;
13:12,20,21;29:10;
64:23
**happening (1)**
12:18

**happens (7)**
14:14,14;21:8;35:6,
6,8;42:19
**happy (1)**
5:1
**harassing (1)**
57:5
**hard (3)**
32:14;66:15,16
**hardly (1)**
59:10
**harm (2)**
56:16;57:19
**hate (1)**
44:16
**hay (2)**
61:9,10
**hazardous (1)**
51:8
**head (1)**
14:11
**hear (7)**
5:17,18;14:18;26:25;
48:15;49:17,21
**heard (11)**
4:22,24;13:16;34:11;
38:10;48:11,16;51:6,
17;63:4;68:14
**hearing (31)**
7:9,20,23;8:5,6;
24:12,21;25:21;26:9;
28:10;29:3;30:12,14;
31:21;33:22;34:4,19,
22;35:17;36:15;42:13;
43:11;44:19;46:9,14,
17,25;47:3;49:14;
68:15,15
**hears (1)**
30:25
**help (2)**
32:12,14
**high (2)**
60:23;67:3
**hired (1)**
65:19
**hiring (1)**
12:2
**history (4)**
20:17,18;22:19;
60:23
**Hold (3)**
9:9;26:10;40:24
**holder (1)**
55:24
**holiday (1)**
26:2
**holidays (1)**
26:14
**homework (1)**
21:14
**honest (1)**
26:15
**Honor (85)**

**happens (7)** — column 4 continues:
4:6,11;5:6,9,23;7:25;
8:14;9:12;11:8;12:5;
15:12;18:13;20:3;22:7;
23:17;24:18,25;26:22,
23;27:2,7,10,16;28:5,6,
12,17;29:24;30:7,16,
18,25;31:9,25;32:13,
20;33:15;34:17;35:23;
38:8,16;40:21;41:9,23;
42:1,7,13,22;43:2,8,10,
13,14,17,21;44:5;45:1,
20;46:10,12;47:9,10,
11,19,20,24;48:6,12,
21;49:3,12;51:2,20;
58:8,25;59:17;63:12;
64:2,11,24;65:12,19;
66:2;67:7;68:18
**Honor's (1)**
41:15
**hope (3)**
10:24;28:12;49:17
**hopeful (1)**
25:13
**housekeeping (1)**
4:12
**housing (2)**
39:18;40:3
**huge (1)**
67:20
**hundred (2)**
12:25;13:1
**husband (2)**
10:17;13:6

**I**

**idea (1)**
22:7
**ideally (1)**
24:21
**identified (2)**
54:4,25
**ignoring (1)**
12:10
**illustration (1)**
64:3
**imagine (1)**
33:12
**immediate (1)**
53:5
**impact (1)**
44:10
**important (3)**
37:3;40:1;62:12
**imposed (1)**
26:17
**impossible (1)**
62:22
**impression (1)**
10:11
**in-between (1)**
36:22
**incapable (1)**

**49:4**
**incident (1)**
56:15
**inclined (2)**
5:13;7:22
**included (2)**
6:16;9:5
**including (2)**
13:8;62:19
**increased (1)**
67:5
**incurred (1)**
64:4
**indecently (1)**
8:12
**indicated (2)**
54:15;56:20
**indiscernible (5)**
13:3;34:1;35:21;
54:19;56:10
**inflicted (1)**
57:19
**infliction (1)**
57:14
**inform (1)**
64:25
**informal (1)**
13:10
**informally (1)**
11:17
**informs (1)**
5:19
**initially (1)**
46:15
**injunction (1)**
35:10
**injunctive (3)**
51:8;53:6;59:13
**injury (1)**
57:15
**inside (2)**
9:3;56:11
**inspect (1)**
54:4
**inspecting (2)**
60:10,11
**inspection (3)**
54:7;56:4,9,25
**instance (1)**
65:8
**instantaneous (1)**
6:24
**instead (1)**
12:10
**instructions (1)**
64:16
**intended (1)**
31:7
**intends (1)**
11:13
**intentional (1)**
57:16
**interest (3)**

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 75
of 83

10:17;51:5;59:5
**interfere (2)**
54:10;60:13
**interfered (1)**
54:13
**interference (3)**
11:24;14:24;57:8
**interject (1)**
36:25
**internet (1)**
40:17
**interpretation (1)**
37:23
**interpreting (1)**
62:25
**interrupt (1)**
41:19
**interview (1)**
19:9
**intimately (1)**
41:4
**into (9)**
15:9;19:8,25;20:4;
23:2;30:20;34:25;
40:25;43:13
**investigation (2)**
12:10;55:11
**invite (1)**
44:17
**involve (2)**
45:6;63:6
**involved (1)**
68:6
**involvement (2)**
10:14;27:22
**irreparably (1)**
56:18
**issue (17)**
18:9;17;19:1,10;
20:4;21:13;23:3;31:16,
18;35:12;37:20;38:16;
50:6;52:9;55:25;63:12;
68:11
**issues (6)**
18:13;32:9;37:1;
42:5;49:23;53:3
**items (1)**
4:9

**J**

**Jamie (1)**
41:10
**Jane (4)**
4:15;27:7;28:18;
46:12
**January (8)**
24:10,11,12,23;23;
25:25;26:3;33:12
**job (1)**
19:8
**join (2)**
27:14;47:22

**joining (2)**
5:1,10
**joint (1)**
25:4
**jointly (2)**
41:13,14
**judge (4)**
23:7;25:24;35:3;
48:2
**judges (1)**
21:7
**judgment (25)**
33:9;36:12;43:23;
46:8;51:14;52:5,8,14;
53:14,18;54:8,12,16,
23;55:4,21,25;56:1,24;
57:25;60:7;62:7;64:14;
66:24,24
**judicial (3)**
39:9;51:5;59:5
**Juhl-Rhodes (1)**
48:9
**July (7)**
31:21;34:18,22;
35:17;42:14;43:11,18
**jumps (1)**
49:17
**jurisdiction (5)**
17:3;51:19,23;52:2,
20
**jury (2)**
52:1;64:16
**justify (3)**
56:7,9,13

**K**

**keep (1)**
35:2
**Keller (3)**
27:7;48:7;58:9
**key (1)**
53:11
**Kim (19)**
4:15;27:5,7,7,8;
28:17,18;29:6;32:13;
46:10,12,12,21;47:2,
10,18,19;48:7;58:9
**kind (16)**
16:13;22:11;29:12;
31:14;36:15;41:2,3,16;
42:3,13,15,23;60:4;
61:3;62:2;63:19
**Kisak (5)**
6:6;7:16;8:2,21;
12:13
**Kisak's (1)**
11:9
**knowledge (2)**
55:10;65:5

**L**

**labor (1)**
42:24
**lack (1)**
65:1
**land (5)**
53:5;55:12;56:13;
61:5;67:15
**landowner (1)**
41:11
**lands (1)**
60:10
**language (1)**
32:21
**large (3)**
39:14;57:2;59:24
**larger (1)**
65:8
**last (6)**
6:5;8:11,24;19:19;
51:7;53:3
**last-minute (1)**
5:22
**late (2)**
41:22;48:3
**later (5)**
11:21;34:3;42:16;
43:25;50:24
**law (8)**
19:6;37:24;50:23;
51:7;52:23;55:6;58:1;
65:11
**lawyer (1)**
37:13
**lawyers (2)**
68:5,6
**lay (1)**
42:3
**learn (1)**
40:23
**least (5)**
13:17;15:14;27:24;
44:21;61:23
**leave (6)**
14:25;49:4;55:13;
58:2;59:15;65:23
**leaving (1)**
16:4
**left (1)**
45:15
**legal (6)**
17:6;18:22;21:25;
23:2,7;26:15
**length (1)**
33:11
**lenient (1)**
13:6
**letter (6)**
6:8;8:1;37:17,23;
38:18;40:12
**letting (1)**
21:23
**level (1)**
31:9

**liability (21)**
32:3,6;35:15,18;
37:2,3,6,7,21;38:4;
40:1;43:5;51:12;52:15;
54:1;55:20;64:8,13,15,
15,18
**liable (3)**
13:12;14:13;63:3
**license (4)**
37:14,17;38:21;40:2
**lie (1)**
55:21
**likely (2)**
33:14;38:3
**Likewise (1)**
15:25
**line (3)**
54:22;60:11;62:8
**lines (3)**
18:6;54:12,21,25
**liquidate (1)**
31:15
**liquidated (3)**
32:9;35:19,23
**listed (1)**
65:15
**listen (3)**
11:3;49:24,25
**listening (1)**
48:8
**litigants (1)**
19:11
**litigated (1)**
43:6
**litigating (1)**
32:9
**litigation (6)**
29:1;38:1;58:15;
59:2;60:22;65:25
**little (5)**
11:16;31:23;36:19;
48:3;64:1
**LLC (1)**
27:18
**located (1)**
6:6
**location (1)**
54:17
**lock (9)**
53:9;60:1;61:11,11,
14,15,18,19;67:9
**locked (2)**
61:15,15
**Locking (1)**
53:11
**lockout (2)**
67:10,11
**locks (2)**
61:12;67:7
**logically (1)**
43:7
**long (9)**
31:1,2,10;32:21;

33:18;47:7;60:23;62:8;
68:5
**longwinded (1)**
18:7
**look (15)**
6:23,25;7:5,7;11:9;
14:18;15:9,21;16:13;
23:6;40:19;44:11;46:6;
59:25;60:6
**looked (6)**
8:25;9:3,4;28:13,14;
40:23
**looking (7)**
6:25;7:2;23:16;37:1,
17;43:21;62:22
**looks (1)**
7:11
**looming (1)**
47:4
**loss (5)**
49:14;56:19;57:13,
14,15
**lot (6)**
29:11;31:12;50:2;
64:1;67:11,19
**lots (2)**
40:3,16
**loud (2)**
49:15,17
**luck (1)**
16:1

**M**

**maintain (2)**
19:5;62:13
**makes (2)**
34:12;35:8
**making (1)**
49:5
**malice (7)**
53:13;54:7;56:7;
57:17;62:17;66:14;
67:10
**managed (1)**
54:20
**manner (1)**
36:11
**many (3)**
21:7,8;65:21
**map (1)**
54:25
**March (1)**
45:16
**Mark (2)**
48:8;61:14
**marked (1)**
61:24;64:21
**massive (1)**
40:17
**matched (1)**
41:2
**matter (26)**

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 76
of 83

4:4;5:2,2;7:18;
10:18;11:13,16,24;
13:15;21:24;35:4;
36:13;48:1,4;50:22;
52:10;58:11;59:8;
62:22;65:24,25;66:1;
67:15;68:1,10,17
**matters (4)**
4:14,15,17;29:18
**mature (3)**
56:9;65:6,7
**May (29)**
10:4;11:10;28:3,7,
12;33:21;35:4;36:22,
23;37:7;38:4,20;39:5;
40:21;41:9;42:22;45:1,
13,22;47:11;50:12;
54:9;10;59:14;60:12,
13;61:5,8;62:24
**maybe (13)**
12:24;15:10;17:22;
28:15;34:10;38:12,24;
42:17,17;57:21;63:20,
20;68:4
**MCCOLM (29)**
48:12,13,14,18,21;
49:3,9,13,14,22;50:10,
18;51:2;53:10;58:5,6,
16;59:10,19,23;60:24,
25;61:24;63:2;64:5,10,
11;68:8,18
**McColm's (9)**
60:3,17;61:21;62:4,
9,20,22;63:7,14
**McKenna (1)**
48:8
**mean (22)**
10:21;18:23;23:18;
28:1,14;31:16;34:15;
36:10,17,25;38:16;
39:10;41:1,24;44:2,11;
46:2,19;49:8;63:19,21,
23
**means (1)**
49:5
**Meanwhile (1)**
14:23
**mediation (1)**
31:10
**medical (1)**
64:25
**meet (2)**
32:11;53:22
**mentioned (2)**
20:2;58:19
**merits (2)**
27:25;32:1
**met (2)**
38:19;59:19
**microphone (1)**
5:12
**might (8)**
13:25;15:8;18:4;

29:24;33:11;43:16;
47:5;59:4
**mind (2)**
35:2;50:25
**mindful (2)**
13:5;39:5
**minimum (3)**
36:17;65:6,7
**minute (3)**
8:11;13:5;45:23
**minutes (13)**
29:16;41:25;47:23;
48:19,20;50:1,8,17,19;
51:1;58:4,5;64:10
**miscellaneous (1)**
29:12
**missed (1)**
28:16
**missing (1)**
15:9
**mix (1)**
14:15
**moment (2)**
22:14;36:16
**monetary (1)**
18:5
**money (1)**
14:8
**Montali (1)**
48:2
**month (2)**
26:15;45:17
**months (4)**
31:22;32:19;42:11;
43:2
**moot (1)**
35:24
**more (25)**
11:14,16;12:2,2;
13:1,7,10;14:21;19:20;
22:2,19;29:13;31:3,9,
23;38:3;47:12;51:15;
54:8;62:6;63:10;65:12;
66:13;67:25;68:2
**Moreover (2)**
60:6;61:7
**morning (21)**
4:6,8,12;5:12,20;6:4,
20;8:17;16:8;27:7,10,
13,15,16;48:2,5,6,12,
14;49:24;59:13
**most (3)**
56:12;60:19;68:2
**mostly (1)**
19:11
**motion (5)**
20:25;32:11;34:4;
35:7,24
**motions (1)**
41:1
**motus (2)**
53:14;66:20
**move (2)**

26:8;36:21
**movement (1)**
57:12
**much (8)**
26:18;29:13;31:23;
44:16;50:8,16;61:22;
62:2
**multiday (1)**
44:1
**multiple (1)**
44:5
**multiweek (1)**
44:1
**must (2)**
19:10;59:8
**muster (1)**
13:9

## N

**name (1)**
16:10
**narrow (2)**
37:9;38:3
**nature (1)**
67:25
**necessarily (2)**
26:8;67:9
**necessary (8)**
12:1;13:25;25:20,22;
28:4;30:10;56:17;66:4
**need (27)**
8:8;11:1,22;15:8;
16:23,24;17:13;21:4,
19;23:22;24:8;32:12;
34:24,25;37:7,22;
38:23;39:20;47:6,12;
54:4;55:12;56:25;57:2;
59:13;63:11,24
**needed (1)**
65:12
**needs (1)**
62:18
**negligence (1)**
12:8
**negotiate (2)**
10:8,11
**neither (1)**
6:1
**neutral (1)**
33:5
**new (6)**
28:15;51:7;53:3;
65:24;66:1;68:1
**news (1)**
42:24
**next (6)**
7:23;8:5,6;42:11;
44:18;47:14
**Nice (1)**
48:15
**nightmarish (1)**
21:6

**ninety (1)**
42:18
**ninety-nine (1)**
40:14
**noise (1)**
13:16
**nor (1)**
6:1
**noted (1)**
60:21
**notes (3)**
49:4,5,10
**Notice (4)**
54:4;56:3,8;65:2
**noticed (1)**
42:7
**noticing (1)**
56:4
**notified (1)**
12:20
**notify (2)**
15:1;41:21
**NOVEMBER (7)**
4:1;8:6,7;9:18;
14:19;46:9,14
**number (7)**
16:12,12;28:21;29:7;
31:11,15;32:8
**numbers (4)**
43:20;56:11;57:2;
59:24

## O

**oath (1)**
13:8
**object (1)**
43:3
**objection (18)**
17:14;20:21;29:1,4;
34:16;35:9,9;36:9,10,
18;40:25;49:11,12;
52:1;54:2;55:20;57:25;
62:6
**objections (3)**
18:16;50:12,20
**obligation (6)**
37:16;38:6;39:24;
40:6,7,10
**obligations (1)**
37:19
**observe (1)**
26:14
**obtain (1)**
51:23
**obviate (1)**
38:23
**obvious (1)**
11:16
**obviously (5)**
9:21;12:1;20:16;
32:12;51:21
**occasioned (1)**

55:19
**occupies (1)**
40:11
**occur (1)**
33:9
**occurred (5)**
14:5;61:23;64:24;
65:18,18
**occurrence (2)**
52:16,18
**o'clock (5)**
4:9;9:18;10:2;11:5;
26:24;27:2;41:21;
46:11
**off (4)**
9:5;14:12;57:3;
68:16
**offer (1)**
23:10
**offline (1)**
47:1
**one (38)**
6:14,18;12:6,20;
14:6,6;16:3,4;18:13;
21:6;22:1,2;23:1,25;
25:24;28:23;29:15;
32:12;36:4,5;40:13,22,
23;44:4,4,12;45:3;
48:25;51:21;54:4,8,15;
56:3;57:1;63:24;65:7;
67:11,19
**ones (1)**
65:2
**online (2)**
6:12;9:2
**only (8)**
6:18;12:24;28:13;
43:7;44:19;49:10;
51:23;59:8
**onto (1)**
62:9
**oOo- (1)**
4:2
**open (5)**
7:25;11:15;26:16;
61:18,19
**opening (9)**
7:14;21:2,13,18,22;
23:19,19;24:10,22
**operandi (2)**
53:15;66:20
**operation (3)**
54:11,14;60:14
**opinion (3)**
13:20;20:22;23:20
**opportunity (7)**
7:8,20;8:2,10;9:24;
11:2;22:4,24;30:3;
48:23;59:4;62:5
**oppose (1)**
21:23
**opposed (1)**
10:23

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 77
of 83

oppression (5)
53:13;54:7;56:7;
66:14;67:10
option (2)
11:25,25
Ora (1)
5:25
oral (1)
53:4
order (8)
4:3;11:20;28:20;
30:11,13;43:14;48:18;
64:1
ordered (1)
14:11
organized (1)
57:19
original (5)
32:10,22;40:9,12;
41:11
originally (1)
40:25
otherwise (2)
32:5;43:17
ought (4)
18:8;23:2,4;24:2
out (24)
7:20;14:2;15:18;
17:9;19:12,17;26:12;
30:7;31:2;36:3,11;
38:14;42:3,18;44:14;
45:15;47:3;49:17;53:8,
11;61:13;62:16,17;
65:1
outcome (3)
17:9,11;20:12
outside (9)
51:13,24;52:15;
54:17;55:3,25;56:11,
12;57:24
over (15)
7:19,22;10:9;11:21;
14:1,20,21;21:9,9;
22:9;26:22;41:5;58:15;
66:8,10
overcome (1)
53:22
overlap (2)
31:24;58:18
overlay (1)
41:16
own (13)
11:10,10;12:15;
16:25;19:18;22:24;
33:20;44:13;53:12;
57:12,21;63:14;67:9
owner (7)
16:25;17:1;53:14;
55:18;66:18;67:10,14
owners (2)
67:11,13

**P**

pace (1)
36:11
Pacific (1)
27:11
page (6)
7:15;29:25;30:8;
54:12,22;55:1
pages (7)
7:11;8:1,15,20,23;
22:19;59:20
paint (2)
57:2;60:16
painted (1)
57:3
painting (1)
56:10
papers (10)
6:3;7:19;9:21;15:10,
11;32:5;41:13;43:9;
50:2;64:18
Parada (10)
5:3;9:10;24:16;
41:21;46:22,24;47:1,
17,22;68:16
Paragraph (5)
30:1,1,1,8;60:7
paragraphs (1)
30:1
parallel (2)
43:25;44:13
parcel (2)
54:25;67:19
parking (1)
40:3
part (4)
19:14;40:8;60:3;
62:12
particularly (1)
17:4
parties (11)
17:4,7;18:18;22:12;
27:21;31:4;33:4;37:16;
39:10;41:22;61:17
Partners (2)
27:17,18
parts (1)
66:9
party (6)
22:8;38:2;42:21;
50:15;51:5;61:18
pass (1)
13:9
past (2)
22:9;60:22
patch (1)
61:8
path (1)
60:19
patient (1)
44:18

Patricia (1)
48:12
penalty (1)
56:22
pending (1)
59:2
people (4)
7:1;12:15;26:14;
65:19
percent (2)
40:13,14
percentage (1)
65:10
perfect (1)
29:19
perfectly (1)
17:8
perform (1)
63:8
performance (1)
38:18
perhaps (5)
20:17;36:3,19;58:17;
59:25
period (1)
64:22
perjury (1)
56:22
permission (3)
51:24;66:6,10
permit (1)
67:19
permitting (1)
13:10
person (2)
6:15;67:15
personal (5)
49:4,9;55:10,11;65:5
personnel (1)
57:10
perspective (5)
39:20;41:15,18;42:5;
43:4
Peters (1)
48:8
petitioner (1)
58:22
PG&E (79)
4:4;10:17;12:6,8,9,
14;13:21,23,25;14:8,
10,13,17;16:11,17;
17:2,9,12;18:1;19:22;
20:19,20,23,23;21:12,
12;24:11,19,22,23;
27:11,24,25;28:8;30:9,
9,19;33:17;34:20;
35:13;38:17,20;40:7;
42:9,16;44:6,14;45:4,8,
8,11;46:1;48:1;51:9;
52:7,8,13,14;53:9;54:5,
11,14,17,18,21;55:1,
19;56:8;57:7;60:8,12,
14,19;61:7,14;62:10;

64:19;67:9,16
PG&E's (5)
18:5;39:20;43:3,19;
62:12
ph (1)
6:6
phase (7)
34:3;37:6,7,8;38:2,3;
40:1
phased (4)
28:9;30:10;37:6;
38:1
phone (5)
10:14;25:20;26:6;
49:16;57:5
photographs (1)
66:7
photos (2)
60:25;61:12
phrases (1)
38:17
physical (2)
56:16;57:15
pick (5)
10:14,14;26:6;37:19,
22
picked (1)
8:17
picking (1)
38:5
picture (3)
28:2;44:22;60:16
pictures (4)
8:23;9:1,2;12:12
pin (2)
39:8;63:22
place (1)
54:16
placed (2)
7:3;53:9
plan (2)
10:2;35:10
plant (1)
39:22
plants (1)
39:19
play (3)
14:2;19:17;38:14
please (3)
4:21;12:6;41:21
pleasure (1)
7:24
pled (2)
64:17,18
plenty (1)
63:9
pm (1)
47:25
podium (1)
26:23
point (24)
6:21;10:19;14:8;
17:17,18;19:2,19;

21:24;30:22;37:15;
38:3;39:22,23;42:6;
45:3;46:4;52:3;53:8;
55:18;58:25;59:12;
61:12;68:9,17
pointed (1)
30:7
pointing (1)
15:18
points (1)
51:15
pole (1)
60:11
poles (5)
60:20;62:11,13,15;
66:12
police (1)
57:11
portion (2)
30:21;50:1
portions (1)
43:15
posed (1)
56:6
position (9)
7:14;8:9;16:15;
33:10;34:16;35:14;
41:6;46:1;64:7
positions (1)
66:11
possibility (1)
38:2,11
possible (5)
22:10;51:25;56:4;
61:10;63:13;65:4
post-petition (13)
51:6,17;52:2,3,19,
20;53:2,19;58:12,13,
20;67:21,23
potentially (1)
67:11
powerlines (1)
56:6
practical (1)
31:9
practice (2)
50:15;61:16
precluded (1)
40:18
preference (1)
4:10
preliminary (1)
48:22
premise (2)
53:15;59:7
preparation (2)
14:22;68:9
prepare (1)
33:21
prepared (7)
11:3;33:17;44:19;
46:7,8;47:7,7
pre-petition (12)

Min-U-Script®

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 78
of 83

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(9) oppression - pre-petition

51:9,13;52:5,17;
53:21;55:3;56:2,16;
58:1,11,13;66:2
**presented (8)**
12:14;51:11,15;
53:23,25;55:17,22;
57:22
**pressure (1)**
67:3
**presume (3)**
9:13,23;48:18
**presumption (1)**
53:22
**pretty (1)**
6:24
**prevail (1)**
21:3
**prevailing (1)**
37:6
**prevails (3)**
18:3,20;38:2
**previously (2)**
10:12;66:18
**price (1)**
12:20,22
**Prime (1)**
15:13
**principle (1)**
59:7
**prior (3)**
7:9;9:20;60:22
**private (1)**
53:10
**pro (1)**
43:19
**probably (7)**
9:23;17:7,20;29:16;
30:20;35:13;47:4
**problem (7)**
7:10;9:15;20:17;
29:20;31:13;44:10;
49:20
**procedurally (1)**
20:22
**procedure (1)**
23:21
**procedures (1)**
50:22
**proceed (5)**
28:25;29:3;51:24;
53:20;58:2
**proceeding (7)**
16:24;17:11;18:10,
16;28:9;30:10;53:2
**proceedings (2)**
49:18;68:19
**process (2)**
8:16;65:12
**professional (2)**
13:18,20
**prohibiting (1)**
14:4
**prompt (1)**

31:8
**prompted (1)**
28:14
**proof (3)**
20:20,21;50:23
**proper (3)**
12:9;49:5;64:25
**properly (3)**
54:2;58:1,2
**property (40)**
12:8;13:21;14:16;
17:1;18:6;19:20;37:4,
5;39:15;40:17;43:1;
45:7,9,12,15,17;53:12;
54:20;55:19;56:18,19,
20;57:12;60:18;61:4;
62:10,11,11,20;63:1,7;
65:10,23;66:5,8,21;
67:5,8,14,20
**proportion (1)**
40:13
**proportional (2)**
37:18;40:13
**proportionate (3)**
38:15,20,21
**proposal (5)**
17:7;29:1;32:22;
42:9;43:3
**propose (3)**
21:10;23:24;30:17
**proposed (6)**
23:19;28:10;30:2,4,
19;34:20
**proposing (1)**
44:7
**prosecuting (1)**
41:14
**prospective (1)**
57:15
**protest (1)**
56:3
**prove (3)**
13:13,14;64:1
**proven (2)**
54:2;57:25
**provide (4)**
23:25;53:11;61:3;
64:22
**provided (6)**
32:17;49:1,3;60:3;
65:2,5
**provides (1)**
42:15
**proving (1)**
13:13
**provision (1)**
37:10
**public (3)**
62:12,19;66:6
**purpose (1)**
60:10
**purposes (6)**
4:12;18:21;23:5;

41:12;60:14;64:2
**pursuant (1)**
65:19
**pushing (2)**
5:14;47:3
**put (17)**
6:11;7:22;11:21;
13:25;14:19,21;19:25;
20:4,19;25:17,18;35:5,
8;40:24;41:3;66:20;
67:8
**puts (1)**
44:6

**Q**

**quality (1)**
62:2
**questionably (1)**
56:4
**quick (2)**
7:5;44:3
**quickly (3)**
7:7;11:8;47:8
**quiet (1)**
17:5
**quite (4)**
19:7;33:17;64:24;
66:16
**quote (7)**
6:15;12:21,24;52:4;
53:15;54:9;55:1
**quoted (1)**
54:22
**quotes (2)**
12:18,19
**quoting (1)**
54:18

**R**

**raise (3)**
4:21;5:8;37:1
**raised (4)**
30:16;45:3;51:12;
56:3
**ran (1)**
48:3
**rata (1)**
43:20
**rather (2)**
22:2;32:24
**re (4)**
54:9,16;55:20;57:13
**reach (1)**
44:20
**reaction (2)**
61:9,10
**read (7)**
7:1;29:22;35:4;
40:25;50:3;64:17,17
**reading (2)**
10:9;33:2

**reads (1)**
7:14
**ready (1)**
26:2
**real (3)**
11:8;55:19;56:19
**reality (1)**
42:23
**realize (1)**
47:4
**really (10)**
8:25;20:21;23:1;
31:5,15;33:23;36:2,11;
44:11;61:3
**reason (2)**
25:19;60:23
**reasonable (2)**
32:10;57:18
**reasons (2)**
28:24;30:24
**rebut (4)**
51:11;53:25;56:21;
57:23
**rebuttal (1)**
48:20
**recall (3)**
29:19;32:21;46:13
**receipts (4)**
60:3;62:24;65:20,21
**receive (4)**
4:25;15:14
**received (5)**
5:24;15:1;28:12,20;
48:18
**recent (3)**
19:20;50:4,5
**recently (1)**
29:10
**Recess (1)**
47:25
**reckless (1)**
57:17
**recognize (1)**
34:19
**record (12)**
16:20;17:16;19:5,9,
14,25;20:5;23:8;42:4;
49:9;58:9;59:9
**recorded (2)**
20:5;49:4
**recording (1)**
49:8
**recourse (1)**
50:6
**recover (1)**
64:1
**recovery (1)**
18:5
**redline (1)**
29:8
**reducing (1)**
56:18
**reduction (7)**

37:18;38:15,20,22;
40:13,14;43:20
**referred (1)**
29:14
**referring (2)**
33:3;66:3
**reflected (1)**
29:2
**refusing (1)**
53:11
**regard (2)**
43:3;52:25
**regarding (7)**
40:2;55:18;56:3;
58:11;61:11;65:3,24
**regrettably (2)**
61:1;63:5
**reimburse (2)**
14:11,17
**related (3)**
52:22;55:7;58:20
**relative (1)**
17:6
**relevant (3)**
19:24;50:4;66:2
**relief (6)**
35:10,24;51:8;53:6;
57:21;59:14
**remain (1)**
30:7
**remained (1)**
30:16
**remaining (2)**
50:10;58:3
**remember (1)**
37:12
**remind (1)**
50:2
**remotely (1)**
63:15
**removal (1)**
56:4
**remove (2)**
54:9;60:12
**removed (1)**
57:4
**renumerate (1)**
63:2
**reorganized (17)**
4:7;27:8;28:17,19;
48:7;51:10;52:4,11;
53:9,17,21,24;55:9;
56:23;57:22;58:10,14
**repair (2)**
51:8;53:5
**repairing (1)**
60:11
**rephrase (1)**
34:10
**reply (10)**
21:4,19,22;22:1;
24:11,23;50:13;51:18;
52:4;55:2

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 79
of 83

**report (6)**
11:9,10;28:23;30:8;
56:25;65:20
**reports (4)**
12:12;54:8;56:9;
65:2
**represent (1)**
41:10
**representations (1)**
47:13
**representing (2)**
4:13,16
**request (3)**
6:9;32:7;52:8
**requested (1)**
55:14
**requesting (1)**
12:16
**requests (5)**
30:10;48:22,25;51:4;
57:6
**require (2)**
13:7;51:8
**required (1)**
37:13
**requires (4)**
23:3;39:25;50:23;
53:5
**research (1)**
65:6
**reserve (7)**
48:20;50:1,9,16,17;
58:3,5
**resolution (2)**
10:23;52:18
**resolve (1)**
35:10
**resolved (2)**
31:20;59:4
**resolves (1)**
35:12
**resolving (1)**
18:15
**respect (3)**
37:4;59:18;61:20
**respectfully (4)**
32:7;51:4;59:19;
64:11
**respond (9)**
7:18;21:16,18;22:20;
24:3;36:23;45:22;62:5,
5
**responded (1)**
15:15
**responds (1)**
24:12
**response (18)**
4:23,25,25;5:24;
9:14,19;11:19;21:3,22;
22:11;24:23;26:9;31:8;
39:4;48:24;51:18;54:6;
58:19
**responsibilities (1)**

**37:4**
**responsibility (2)**
45:24;63:22
**responsible (1)**
39:21
**restoration (7)**
37:3,18;40:6,7,10,
18;43:16
**restore (5)**
37:14,16;39:23;45:9,
9
**restored (1)**
45:10
**restoring (1)**
39:21
**restricting (1)**
57:11
**result (3)**
14:22;31:8;35:18
**resulting (1)**
53:4
**results (1)**
17:15
**review (12)**
5:21;6:2;7:5,6;8:2,3,
9;9:21;11:3;23:9;
42:21;43:9
**reviewed (1)**
9:20
**revised (3)**
29:2,5;34:3
**Ridge (3)**
4:15;30:23;41:10
**right (40)**
5:11,17,19;8:12;
9:11,15;15:19,21;17:8,
20,21,24;18:9,14,24;
20:22,24;24:3;25:22;
26:5,19;29:13;33:1,6;
35:1;36:6;38:20;39:17;
41:7;45:25;47:16;
48:10,17;49:13,21;
54:6;60:8;63:23;64:9;
68:15
**rights (5)**
17:6;53:13,18;55:18;
57:9
**risk (2)**
56:6;67:2
**road (10)**
39:15,24;40:3;53:10;
60:18;62:9;65:24;66:3,
6,6
**role (1)**
39:9
**room (1)**
67:2
**rough (1)**
14:1
**round (1)**
59:24
**routine (1)**
29:12

**rule (2)**
18:17;63:25
**rules (1)**
14:13
**ruling (7)**
11:9,13;34:12,14,16;
35:9;68:11
**run (1)**
14:1
**running (3)**
34:9;41:22;51:22
**Rupp (81)**
4:5,6,6,8,11,22,24;
5:21,23;6:1;7:6,18,21,
24,25;8:9,9,13,16,19;
10:8,15,22;11:6,8,15;
12:4;13:24;14:21;15:8,
12,24,25;18:8,12,20,
25;20:1,3;21:12,14;
22:3,7,16,19,21;23:10,
12,14,16,24;24:6,9,13,
14,17,25;25:5,6,9,12,
15;26:6,20,22;27:2;
29:17;48:6,6;49:11,12;
58:7,8,9,25;59:17;
63:11;64:2,7,9,12;
68:13
**rural (1)**
61:17
**ruts (4)**
61:4,6,8;66:17

## S

**safety (1)**
62:19
**same (9)**
7:21;9:18;17:15;
21:9;23:22;28:8;32:9,
25;58:23
**SAN (1)**
4:1
**save (1)**
47:14
**saw (2)**
13:16,16
**saying (4)**
8:24;18:7;44:11;
64:23
**scanning (1)**
8:16
**schedule (2)**
24:9;36:18
**scheduling (1)**
42:9
**scope (7)**
18:16;42:14;51:13;
55:4,25;56:12;57:24
**second (7)**
15:10,12;16:3,5;
32:8;40:22;41:20
**Section (1)**
52:21

**seeing (2)**
10:23;14:18
**seem (6)**
17:10;18:7;19:7;
46:13;61:2,6
**seems (9)**
16:13;18:2;19:23;
27:23;36:17;37:22;
59:14;61:23;63:5
**send (3)**
6:13;8:22;12:23
**sending (2)**
9:2;25:10
**sense (4)**
37:6;44:22;58:14,24
**sent (1)**
27:20
**sentence (1)**
7:14
**separate (3)**
17:23;32:8;52:17
**session (1)**
6:5
**set (14)**
7:19;15:10,12;21:11,
11,25;23:3;25:20;
26:11;46:19;50:24;
51:15;52:12;56:24
**setting (1)**
20:22
**settle (4)**
11:2,3;12:17;14:2
**settled (3)**
62:7,7,8
**settlement (1)**
31:14
**seventeen (5)**
54:6;56:9;57:1;
64:20;67:4
**several (1)**
61:17
**shared (1)**
65:20
**sharing (1)**
25:2
**sheriff (1)**
57:10
**sheriff's (2)**
57:7;63:6
**short (1)**
8:23
**shortchange (2)**
11:17,18
**shorten (1)**
12:17
**shot (1)**
14:1
**show (10)**
9:3;51:11;52:13;
53:8,12;54:1,8;57:23;
64:18;66:7
**showing (6)**
52:11;54:14;56:25;

65:21,21;67:10
**shown (3)**
53:15;55:4;64:3
**shows (2)**
40:17;53:13
**sic (1)**
15:2
**side (4)**
14:1;18:20;22:1;
46:13
**sides (7)**
11:1;14:19;17:25;
18:10;25:8,14;32:11
**sign (1)**
68:16
**signature (1)**
7:13
**signed (2)**
6:11;13:8
**significant (1)**
29:13
**similar (3)**
36:22;53:3;67:25
**simple (2)**
16:21;21:24
**simplest (1)**
62:10
**simply (3)**
22:3;61:24;62:17
**simultaneous (1)**
22:1
**simultaneously (2)**
28:25;34:9
**site (1)**
65:9
**six (4)**
31:22;32:19;58:5;
64:10
**six-month (1)**
43:22
**sixty (3)**
33:16,22;34:14
**skyrocketing (1)**
42:25
**smudged (1)**
61:2
**solution (3)**
10:21;16:21;36:8
**somebody (2)**
28:1;45:9
**somebody's (1)**
66:21
**someone (3)**
37:10;46:20;48:11
**sometimes (2)**
29:12;49:16
**soon (1)**
47:17
**sorry (5)**
15:5;21:17,17;23:24;
38:10
**sort (5)**
26:1;31:2;40:24;

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 80
of 83

42:18;61:16
**space (1)**
　54:19
**speak (5)**
　8:3;27:2;30:3;35:14;
　49:25
**speaking (1)**
　15:22
**special (1)**
　62:14
**specially (1)**
　46:19
**specific (3)**
　32:21;38:19;55:15
**specified (1)**
　54:17
**speculative (2)**
　60:2;65:16
**speech (2)**
　49:15,23
**speedy (1)**
　31:3
**spoke (2)**
　8:24;30:15
**staff (2)**
　5:19;7:4
**staging (2)**
　39:16;40:4
**stake (1)**
　46:20
**standing (2)**
　16:4;66:15
**stands (1)**
　68:17
**Stanfield (26)**
　27:14,16,17;28:6;
　30:17,18;32:16,20;
　33:6,15;34:1,8,17;35:1,
　12,21,25;36:6;38:8,10;
　44:4;45:1,3;46:1,3;
　47:9
**start (2)**
　5:14;50:25
**starting (1)**
　5:15
**starts (1)**
　59:7
**state (17)**
　16:9;20:16;27:5;
　51:7,12,25;52:15,17;
　53:7;55:3,5;57:9;58:1;
　60:7,22;62:7;67:23
**stated (4)**
　52:24;54:1;55:22;
　57:24
**statement (20)**
　8:21;15:15;19:23;
　21:1,14,16;22:5,10,11,
　15,22,24;23:11;24:1,6;
　25:4,7;28:20;29:7,14
**statements (2)**
　28:11;29:19
**state-provided (1)**

49:16
**status (14)**
　15:15;28:11,19,22;
　29:7,14,18,25;30:6,8;
　40:24;50:12,21;64:25
**stay (6)**
　35:24;51:20,22,25;
　52:9;68:7
**stick (2)**
　22:2;24:9
**stigmatized (1)**
　53:13
**still (3)**
　17:6;18:17;59:21
**stip (2)**
　33:3,4
**stipulated (1)**
　34:18
**stipulation (7)**
　27:20;28:22;29:2,5;
　30:20;33:13;38:13
**stole (1)**
　65:22
**stop (2)**
　63:10;66:20
**stopped (1)**
　57:6
**stress (1)**
　57:14
**stretch (1)**
　44:14
**stroke (1)**
　67:2
**strong (2)**
　30:24;61:3
**strongly (2)**
　32:1;62:16
**stuff (3)**
　29:11,12;40:16
**subdivision (4)**
　53:10;54:25;67:9,12
**subject (1)**
　65:25
**submission (1)**
　50:15
**submissions (1)**
　56:21
**submit (1)**
　58:14
**submitted (5)**
　28:11;50:20;60:16,
　25;68:17
**submitting (1)**
　14:23
**subsection (1)**
　60:8
**subsequent (6)**
　40:2,5,10;43:19;
　45:6,16
**subsequently (2)**
　39:19;41:11
**substantiate (1)**
　59:20

**substantiation (1)**
　57:2
**successful (2)**
　10:13;31:11
**successors (1)**
　60:9
**suddenly (1)**
　8:12
**sufficient (1)**
　65:1
**suggest (3)**
　38:11;50:16;58:17
**suggesting (3)**
　39:5;42:10,16
**summarize (1)**
　6:2
**summarized (2)**
　22:6,18
**summary (1)**
　51:4
**Superior (4)**
　51:6;53:20;58:3;
　67:22
**supervision (1)**
　57:18
**supplement (1)**
　23:20
**supplemental (1)**
　21:12
**support (4)**
　30:25;53:24;55:13,
　22
**suppose (2)**
　35:22,22
**supposed (1)**
　34:7
**supposedly (2)**
　65:19;66:4
**sure (7)**
　13:5;23:8;26:13;
　29:16;33:20;36:18;
　65:13
**surprise (1)**
　32:2
**surreply (3)**
　21:6,23;25:18
**suspect (1)**
　15:12
**swiftly (1)**
　10:18
**system (2)**
　6:13;22:17

**T**

**table (3)**
　21:11;25:17;26:9
**talk (6)**
　10:15;13:23;43:19;
　44:15;46:25;47:17
**talking (8)**
　19:8;38:13;39:13;
　42:11;44:1;49:16;

59:11;67:7
**targeting (1)**
　66:14
**tee (2)**
　16:24;19:10
**teed (1)**
　23:2
**tees (1)**
　20:4
**telephone (2)**
　26:11;47:22
**telling (1)**
　15:20
**tempers (1)**
　60:24
**ten (2)**
　41:25;47:23
**tenant (7)**
　40:5,9,9,10,12;45:6,
　17
**tend (2)**
　26:12;51:19
**term (1)**
　10:7
**terminate (5)**
　17:20,22;18:23;
　19:22;20:25
**terminated (2)**
　16:16;18:6
**terminates (1)**
　20:7
**termination (1)**
　20:6
**terminology (1)**
　16:14
**terms (3)**
　37:23;38:14,17
**testified (1)**
　55:11
**testimony (2)**
　55:12;65:10
**texts (1)**
　59:20
**Thanksgiving (1)**
　47:4
**that'll (3)**
　14:22;24:20;49:1
**thereof (4)**
　51:14;52:15;54:11;
　60:14
**thinking (3)**
　12:23,24;46:15
**third-party (1)**
　60:4
**thirteen (2)**
　42:11;43:2
**thirty (8)**
　12:19,21;25:25;26:1;
　30:12;32:18,23;33:3
**Thomas (3)**
　4:6;48:6;58:9
**though (4)**
　44:23;45:25;49:1;

58:18
**thought (2)**
　19:21;36:14
**thoughts (1)**
　44:21
**thousand (1)**
　65:7
**three (8)**
　4:9;7:11;21:4;31:22;
　34:4;43:1,21;53:9
**three-year (1)**
　42:8
**threshold (1)**
　58:11
**thus (4)**
　51:19;52:17;54:2;
　57:25
**tie (1)**
　58:21
**timber (3)**
　56:10;65:22,23
**timeframe (2)**
　42:14;45:16
**timeline (1)**
　34:3
**timely (2)**
　12:9;65:4
**times (2)**
　19:20;53:9
**timing (4)**
　11:12;29:17;33:21;
　42:6
**tiny (1)**
　31:20
**tire (1)**
　61:5
**title (2)**
　17:5,16
**today (7)**
　13:8;9;32:2;33:3;
　40:24;50:6;59:18
**together (4)**
　43:6;44:21;58:21;
　67:25
**tolerant (1)**
　13:6
**took (7)**
　16:15;19:21;36:13;
　54:16;65:23;66:8,9
**toss (1)**
　15:18
**totally (1)**
　66:4
**touch (3)**
　46:22;47:1,18
**towards (1)**
　53:13
**track (7)**
　30:23;31:3;32:8;
　36:5,22;44:13,13
**tracks (3)**
　36:4;5;61:5
**traditional (2)**

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 81
of 83

21:22;22:2
trail (1)
　5:2
transcript (1)
　49:1
transferred (1)
　41:12
transmission (2)
　54:21;55:1
treatment (3)
　39:19,22;40:4
tree (8)
　54:4,12;55:11;56:3,
　6;57:13;63:21;66:9
trees (22)
　54:6,8,9;56:10,10,11,
　17,19,20;57:1,2;60:2,
　12;61:20,21;64:21;
　65:3,6,7,21;66:9;67:5
trespass (2)
　56:13;57:10
trial (14)
　19:10;21:7;23:7;
　43:24,25;44:1,1,2,10;
　52:1;62:8;63:23,24;
　65:13
trials (1)
　44:3
tried (2)
　60:16;63:12
trim (1)
　18:9
trimmed (2)
　61:22,22
Trinity (1)
　67:18
trouble (1)
　5:16
trucks (2)
　13:16,21
true (3)
　59:6,6,16
try (6)
　10:8;11:2;22:21;
　29:21;65:14;66:22
trying (8)
　10:22;12:1;22:11;
　28:2;41:16;66:1,11,15
TUESDAY (1)
　4:1
turn (4)
　5:12;19:8;23:1;
　26:22
turning (1)
　60:6
Tuscan (3)
　30:23;41:10;44:12
twenty (6)
　22:19;48:19,20;
　49:25;50:8;57:6
twenty-six (2)
　8:15,23
two (12)

4:14;14:6;21:21;
25:4,13;29:25;30:9;
31:6;36:4,4;41:16;
59:18
typical (1)
　50:17
typically (1)
　50:24

**U**

unchanged (1)
　34:18
unclean (1)
　57:21
unclear (2)
　35:7;59:21
under (19)
　9:25;13:8;17:3;
　32:16;36:14;38:18;
　40:12;42:8;50:15,21;
　52:20,22,23;53:18;
　54:20;55:6;56:22;68:3,
　10
undisputed (1)
　25:1
unhappy (1)
　31:1
uninformed (1)
　35:3
unlawful (1)
　57:11
unless (3)
　13:14;14:19;32:2
unlock (2)
　61:18,19
unnecessary (1)
　27:24
unsuccessful (1)
　31:12
unsuccessfully (1)
　10:21
unwilling (1)
　14:20
up (37)
　8:5,17;10:14,14,20;
　11:4;12:6;13:8;14:16;
　16:4,24;18:8;19:10;
　20:4;23:2;25:20;26:6,
　11;37:19,22;38:5,22;
　41:2;44:6,18;59:24;
　61:8,10;62:23;63:16,
　18;64:21;65:9;66:1,15;
　67:2;68:9
update (1)
　6:16
uploading (1)
　6:13
upon (7)
　18:5;19:16;26:17;
　46:7;52:16,18;60:9
upset (1)
　50:5

urgent (1)
　51:8
USC (1)
　52:21
use (13)
　18:5,6;40:2,17;
　43:19;45:17;49:9;
　54:11,14;60:14;66:4,7,
　11
used (5)
　39:15,18,19;40:5;
　44:3
useful (1)
　32:4
using (3)
　12:11;66:3,5
usually (2)
　6:24;59:7

**V**

vacated (2)
　45:8,12
valid (2)
　20:7;63:17
validation (1)
　60:4
validity (5)
　51:11;53:22,25;55:8;
　57:23
valuations (1)
　65:3
value (11)
　55:11,12;56:18,19,
　20;57:13;63:21;65:9,
　11;67:5,20
various (1)
　33:7
vegetation (2)
　54:20;62:14
verification (1)
　6:8
verify (1)
　15:13
version (1)
　29:9
victim (1)
　66:16
video (3)
　5:14,16;40:16
view (9)
　6:22;16:20;17:17,18,
　24;19:2,22;33:15;42:5
violation (5)
　51:14;52:13;54:12,
　16;55:18
visit (1)
　63:7
visual (1)
　8:25
volume (1)
　49:15

**W**

wait (1)
　45:23
waiting (1)
　7:2
waiver (1)
　52:1
wanton (1)
　57:17
wants (2)
　22:20;51:21
warrant (1)
　53:2
waste (1)
　28:3
watching (3)
　29:22;56:16;67:4
water (3)
　39:19,22;40:4
way (26)
　4:10;7:13;9:18;
　10:23;11:20,23;12:25;
　18:7,9;19:10;21:22;
　23:4;25:18;26:5;31:21,
　23;32:4;34:11,11;39:8;
　41:3;43:7,10;62:10;
　67:17;68:5
week (6)
　14:6;24:3,7;44:6;
　51:7;53:3
weekend (1)
　47:21
weeks (3)
　7:23;44:5,19
welcome (1)
　10:16
what's (11)
　7:24;8:12;12:18;
　17:22;29:10;34:3;
　35:11;39:7;41:7;43:23,
　25
Whereupon (1)
　68:19
whichever (1)
　42:21
white (1)
　61:2
whiz (2)
　65:17;68:4
Who's (1)
　48:5
Willie (1)
　5:24
willing (1)
　13:23
wing (1)
　44:17
wins (1)
　27:25
wire (1)
　62:15

wish (3)
　11:10;63:10;68:14
wishes (4)
　10:15;35:15;50:16;
　59:1
within (7)
　24:3;33:3,16;54:10,
　13,21;60:12
without (13)
　7:21;10:14;14:3;
　22:8;27:22;31:20;
　43:20;51:24;52:25;
　53:5;56:8,8;57:17
wonder (1)
　22:8
wondering (1)
　48:22
words (5)
　13:19;17:16;20:25;
　33:12;35:7
work (4)
　9:16;24:14;43:10;
　63:8
worked (1)
　26:12
worse (1)
　14:12
worth (1)
　10:22
write (1)
　25:6
wrong (4)
　7:8;53:19;54:5;63:1
wrongs (1)
　57:21

**Y**

year (2)
　14:6;42:11
years (4)
　12:6;14:6;31:6;43:2
yesterday (7)
　4:25;5:20;6:10;
　28:15;30:3;34:21;42:7
YouTube (1)
　40:16

**Z**

Zoom (2)
　9:18;10:15

**1**

1 (1)
　25:6
10 (7)
　4:9;9:10,18;10:2,25;
　11:5;46:11
10:04 (1)
　5:24
11 (3)

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 82
of 83

26:23;27:2;41:21
**11:06 (1)**
  47:25
**11228-1 (2)**
  54:12;60:8
**11546 (2)**
  28:21;29:7
**1213 (1)**
  55:1
**125 (2)**
  59:25;63:20
**125,000 (2)**
  59:24;62:23
**1334 (1)**
  52:21
**14th (6)**
  23:22;24:11,11,22,
  23;25:25
**15th (3)**
  25:25;26:3;33:12
**175- (1)**
  59:24
**175,000 (1)**
  62:23
**19th (2)**
  9:16,20
**1st (3)**
  24:1,5;25:2

**2**

**2 (3)**
  25:6;30:1,1
**2.3 (1)**
  54:12
**20,000 (1)**
  65:9
**2018 (1)**
  57:6
**2019 (1)**
  45:16
**2021 (1)**
  4:1
**23rd (13)**
  8:5,7;9:10,18,22,22;
  10:2,25;11:5,13;14:19;
  46:9,14
**26th (2)**
  24:12,23
**28 (1)**
  52:21
**2nd (3)**
  24:13,18,24

**3**

**3 (4)**
  25:6;30:1,8;60:8
**300 (1)**
  60:18
**3093 (1)**
  16:11
**31st (4)**

31:21;34:19,22;
35:17

**4**

**4 (1)**
  25:6

**5**

**5 (3)**
  25:7;54:12,22
**5th (2)**
  32:17;33:2

**6**

**6 (3)**
  25:7;29:25;30:8
**6.10 (1)**
  54:22

**7**

**7 (1)**
  25:7

**9**

**9 (1)**
  4:1

Case: 19-30088    Doc# 11575    Filed: 11/11/21    Entered: 11/11/21 08:31:23    Page 83
of 83