1  REBECCA J. WINTHROP (CA Bar No. 116386)
   ROBIN D. BALL (CA Bar No. 159698)
2  NORTON ROSE FULBRIGHT US LLP
   555 South Flower Street, Forty-First Floor
3  Los Angeles, California 90071
   Telephone:  (213) 892-9200
4  Facsimile:  (213) 892-9494
   rebecca.winthrop@nortonrosefulbright.com
5  robin.ball@nortonrosefulbright.com

6  Attorneys for Fire Victim Claimants ADVENTIST
   HEALTH SYSTEM/WEST, and FEATHER RIVER
7  HOSPITAL d/b/a ADVENTIST HEALTH FEATHER
   RIVER

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19 – 30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OPPOSITION OF ADVENTIST HEALTH SYSTEM/WEST AND ADVENTIST HEALTH FEATHER RIVER TO MOTION OF THE FIRE VICTIM TRUSTEE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY FROM ADVENTIST HEALTH SYSTEM/WEST AND ADVENTIST HEALTH FEATHER RIVER AND SERVICE OF A SUBPOENA ON FACTORY MUTUAL INSURANCE COMPANY**<br><br>**Hearing:**<br>Date: December 7, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Place: Via Zoom or AT&T Only |

Fire Victim Claimants Adventist Health System/West, a California religious non-profit corporation ("Adventist Health"), and Feather River Hospital, a California religious non-profit corporation, d/b/a Adventist Health Feather River ("AHFR" and, collectively with Adventist Health, "Adventist"), hereby submit the following Opposition to the *Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery from Adventist Health System/West and Adventist Health Feather River and Service of a Subpoena on Factory Mutual Insurance Company*, dated November 11, 2021 [Dkt. 11556] (the "Motion").

Dated: November 23, 2021

Respectfully Submitted:

REBECCA J. WINTHROP
ROBIN D. BALL
NORTON ROSE FULBRIGHT US LLP

By /s/ Rebecca J. Winthrop
REBECCA J. WINTHROP
Attorneys for Creditors ADVENTIST HEALTH SYSTEM/WEST, and FEATHER RIVER HOSPITAL d/b/a ADVENTIST HEALTH FEATHER RIVER

DOCUMENT PREPARED ON RECYCLED PAPER

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS | | 2 |
| | A. | Adventist's Claim | 2 |
| | B. | The Claims Resolution Procedures | 3 |
| | C. | Adventist's Claim Submissions To The Trust | 5 |
| | D. | The Trust's Discovery And Adventist's Response | 6 |
| | E. | The Trust's Inaccurate Statements Concerning the Merits of Adventist's Claims and Relationship with FM Global | 9 |
| III. | THE TRUSTEE CANNOT DEMONSTRATE "GOOD CAUSE" FOR THE PROPOSED DISCOVERY, WHICH IS CONTRARY TO THE CRP AND UNNECESSARY | | 11 |
| IV. | CONCLUSION | | 15 |

DOCUMENT PREPARED ON RECYCLED PAPER

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aromax, Inc.*,
  No. 190-01484 (Bankr. E.D. Cal.) ....................................................................................... 14

*In re Asset Resolution, LLC*,
  2012 WL 12905294 (D. Nev. Sept. 6, 2012) ....................................................................... 13

*Biakanja v. Irving*,
  49 Cal. 2d 647 (1958) ............................................................................................................ 9

*In re Dinubilo*,
  177 B.R. 932 (E.D. Cal. 1993) ...................................................................................... 11, 13

*In re Eagle-Picher Indust., Inc.*
  169 B.R. 130 (Bankr. S.D. Ohio 1994) ................................................................................ 11

*In re Forest Park Medical Center at Fort Worth, LLC*,
  2017 WL 1831092 (Bankr. N.D. Tex. May 4, 2017) ........................................................... 13

*In re GHR Energy Corp.*,
  35 B.R. 534 (Bankr. D. Mass. 1983) .................................................................................... 13

*In re Linens Holding Co.*,
  2009 WL 2163235 (D. Del. June 12, 2009) ......................................................................... 13

*In re Mayflower Communities*,
  2019 WL 4732379 (Bankr. N.D. Tex. Sept. 26, 2019) ........................................................ 13

*In re Millennium Lab Holdings II, LLC*,
  562 B.R. 614 (Bankr. D. Del. 2016) ..................................................................................... 12

**Rules and Statutes**

Cal. Ins. Code § 2071 .................................................................................................................... 9

*Fed. R. Bankr. Proc. Rule 2004* ........................................................................................ *passim*

*Fed. R. Bankr. Proc. Rule 2004(c)* ............................................................................................ 15

*Fed. R. Bankr. Proc. Rule 2004(d)* ............................................................................................ 15

*Fed. R. Bankr. Proc. Rule 2004(e)* ............................................................................................ 15

*Fed. R. Bankr. Proc. Rule 3018* .................................................................................................. 6

*Fed. R. Bankr. Proc. Rule 7024* ................................................................................................ 14

*Fed. R. Bankr. Proc. Rule 9014* ........................................................................................ 4, 5, 13

**Other Authorities**

10 *Collier on Bankruptcy,* ¶ 7026.01 p. 7026-3.............................................................................. 13

# I. INTRODUCTION

The Motion should be denied because taking discovery under the Federal Rules is contrary to the governing Fire Victim Claims Resolution Procedures ("CRP"), adopted by this Court in its *Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. 8053] ("Confirmation Order"),[1] and the process the CRP establishes for the Fire Victim Trust ("Trust's) review and consideration of Fire Victim Claims, and is wholly unnecessary because Adventist has complied with, and continues to comply with, the Trust's information requests properly issued in accordance with the CRP procedures.

The CRP "govern[s] the process by which each Claim is reviewed." CRP Sec. II.A. As detailed below, the CRP – which was meant to provide a less formal, less costly and less cumbersome process than litigation of a contested matter – specifies other processes for the Trust to obtain information to evaluate claims. The CRP contemplates discovery from Fire Victim Claimants under the Federal Rules *only* in the context of a "Judicial Determination" concerning the claim, a process an eligible Claimant may initiate only after the Trustee has issued his final determination (which has not occurred). While the Motion fails to acknowledge the issue, in response to Adventist's inquiries after the Trust first served its combined interrogatories, requests for admission and document demands (the "Federal Rules Discovery Requests"), the Trust was unable to identify anything authorizing such discovery. The Motion still does not do so, effectively conceding that the Trust had no such authority. Instead, the Trust is required to proceed in the manner specified in the CRP, whereby it obtains additional information through issuance of "deficiency notices" specifying the information it believes it needs – the process the Trust acknowledges it has pursued with thousands of other Fire Victim Claimants.

While Adventist consequently objected to the Trustee's service of the formal Federal Rules Discovery Requests, the assertion that Adventist has "stonewalled" is simply false. On the

---

[1] *See* Confirmation Order, ¶ 18(e)(ii) ("The Fire Victim Trust shall be governed by the Fire Victim Trust Documents [defined in Paragraph 18(a) as the Fire Victim Trust Agreement and the CRP], ¶ 18(a) ("the Fire Victim Trustee is authorized to carry out the purposes of the Fire Victim Trust, *as set forth* and subject to the Plan, this Confirmation Order, and *the Fire Victim Trust Documents*.") (emphasis added). Copies of the Fire Victim Trust Agreement (the "Trust Agreement") and the CRP can be found in Exhibit "A" to the *Notice of Filing Ninth Supplement to Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [Dkt. # 8057], Exhibit "A."

103583456

- 1 -

contrary, before the Federal Rules Discovery Requests were even issued, Adventist had already submitted over 127,000 pages of documents to the Trust, and made supplemental submissions on a number of occasions, some in response to Trust requests and some voluntarily.  In particular, Adventist has provided insurance information to the Trust on several occasions.  Most recently, while objecting to the Trust's discovery, Adventist provided additional information and documents concerning its insurance claim, and proposed to confer so that it could further address any information needed.  The Trust ignored that request.

Instead, the Trust finally posted "deficiency notices" on November 1, 2021, itemizing certain insurance-related and other information it now wanted to see (Motion Ex. D).  Adventist, as it has advised the Trust, is working to respond to the deficiency notices and provide additional information and documents (or, in some cases, to identify material responsive to the deficiency notices that the Trust has already received, but apparently not reviewed or understood). Nonetheless, again without first conferring with Adventist, the Trust filed the present Motion. The Trust has rejected Adventist's ensuing proposal that the Motion be deferred pending Adventist's responses to the deficiency notices, demanding that Adventist respond to both the deficiency notices *and* its discovery requests.

While the Trustee seems unwilling, at least with respect to Adventist, to abide by the Court-ordered procedures for claim evaluation, he should be required to do so.

**II.  STATEMENT OF FACTS**

A. <u>Adventist's Claim</u>

Adventist Health is a faith-based, nonprofit integrated health delivery system headquartered in Roseville, California.  AHFR is part of the Adventist Health hospital system. Before the Camp Fire, AHFR was a 100-bed acute care, community hospital with extensive operations in Butte County, but primarily in Paradise, California.  AHFR was devastated by the Camp Fire.  The fire swept over large portions of its main hospital campus in Paradise (the "Main Hospital Campus"), destroying the lower level of the hospital and 15 other hospital buildings, as well as valuable building contents.  It also seriously damaged the upper level of the hospital, its contents, and numerous other buildings and their contents, the Feather River Health Center

DOCUMENT PREPARED ON RECYCLED PAPER

103583456

- 2 -

(located outside of the Main Hospital Campus) and pharmacy, and many other medical office building spaces and leased locations (including valuable contents at those locations). Vehicles, landscaping, service roads, parking lots and walkways throughout the Main Hospital Campus, and acres of woodland adjacent to the Main Hospital Campus, were destroyed or seriously damaged.

Adventist (and several public entities and business claimants) did object to the Trust Documents' failure to provide for judicial review of the Trustee's decision (and this Court, over the Trustee's opposition, agreed), and to the Trust Documents' provisions concerning offsets against Fire Victim Claims for insurance (and this Court disagreed). With respect to the insurance offsets, while Adventist agreed that amounts actually recovered from its insurer should be deducted, it objected to provisions providing that insurance recoveries not actually obtained, but which are determined to be "available," could be deducted. *See Objection of Adventist Health, AT&T, Paradise Entities and Comcast to Trust Documents* [Dkt. 7072.][2] As discussed below, the Motion makes inaccurate statements concerning insurance coverage for Adventist's claim that serve only to heighten this concern.[3]

B. The Claims Resolution Procedures

The Trustee is, of course, obligated to comply with the Court-ordered CRP. CRP Sec. VII.A ("The CRP will govern the process by which each claim is reviewed, including determining whether a Claim is eligible or ineligible for payment"); Trust Agreement Section 2.4(a) ("The CRP shall govern the process by which each Fire Victim Claim shall be evaluated,

---

[2] The Motion's account of Adventist's objection to the Trust Documents (Motion at 3-4) is inaccurate in numerous respects. First, Adventist argued that both federal law and state law barred offsetting amounts not actually paid by the insurer. Dkt. 7072 at 17-23 . Second, Adventist's objection to the insurance offset did not challenge or threaten the Plan's "two-trust" structure. As the Trustee elsewhere acknowledges, Adventist's insurer FM Global did not submit a proof of claim in the bankruptcy and thus will not recover from the Subrogation Trust. Motion at 7-8. Consequently, Adventist was expressly carved out of the insurer-release requirements applicable to other Fire Victim Claimants precisely so that it could continue to pursue insurance recoveries even if it resolved its Fire Victim Claim against PG&E and the Trust. Dkt. No. 5153 (Stipulation); Dkt. No 5172 (Order approving stipulation); Fire Victim Trust Agreement § 1.4(f). Further, even if FM Global had submitted a claim, under the terms of the Subrogation Trust governing those funds, there would be no basis for it to assert a subrogation claim for amounts not actually <u>paid</u> to Adventist. Under the terms of the Subrogation Wildfire Trust, payments to insurers will be made only in respect of "Paid Claims," *i.e.*, claims for amounts actually paid by insurers to Fire Victims." Dkt. 7037 at 1802-02, 1815, 1817 (Subrogation Wildfire Trust Agreement, §§ 1.1(b), 6.1, 6.3(a), 6.4). In either event, the two trusts will avoid payment of any amount in respect of any insurance amount determined to be "available" but not actually paid by FM Global, resulting in a further windfall to both of the Trusts.

[3] An appeal by Adventist and other entities with respect to the Plan provisions permitting offset of insurance amounts not actually recovered from the Claimant's insurer is presently pending in the Ninth Circuit.

administered, processed, settled, expunged, determined and resolved"). The CRP sets forth the sorts of documents Claimants are to submit to support their claims (CRP Sec. II), and provides for the submission of a Claims Questionnaire (CRP Sec. VI). It establishes a process for the Trust's consideration of the claim, including provision for an initial claims determination, followed by a "three-tiered process" through which the Claimant can appeal a determination through various levels, including, ultimately to the Trustee. (CRP Secs. VII, VIII.) It also provides for Court review of the Trustee Determination for eligible Claimants through a "Judicial Determination" process. (CRP Sec. IX.) These provisions were heavily negotiated in connection with the Plan approval process. *See Response of the Official Committee of Tort Claimants to Objection of Adventist Health, AT&T, Paradise Entities and Comcast to Trust Documents* [Dkt. 7159] (the "TCC Trust Document Dispute Response"), p. 13 ("These are heavily negotiated agreements that pave the way for a process intended to fairly and quickly compensate fire victims. The Trustee and other trust professionals have worked diligently for months in setting up the complicated machinery of the trust administration to ensure the fair, equitable and swift administration of the multitude of Fire Victim Claims.").

In the provisions governing the initial claim determination, the CRP established a specific mechanism by which the Trust may obtain additional information: "If the Claim is missing documents or information required for the Trust to fully evaluate the Claim (a 'Deficient Claim'), the notice will explain what is required and provide a timeline within which the Claimant may resolve the deficiencies." (CRP Sec. VII.A.)[4] The provisions related to the three-tiered dispute-resolution process within the Trust further provide that the Claimant may submit supplemental information or documents to support their dispute. (CRP Sec. VIII.) Nothing in the CRP (or elsewhere) provides for the use of discovery under the Federal Rules in connection with these proceedings.

In contrast, CRP Section IX(B) provides that the Judicial Determination process in which an eligible Claimant challenges the Trustee's Determination "shall be treated as a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure." Section IX(B)(4)

---

[4] See also TCC Trust Document Dispute Response, p. 12.

further specifies that "[d]uring the Judicial Determination, the Claimant and the Trustee shall be governed by the rights and obligations imposed upon parties to a contested matter under the Federal Rules of Bankruptcy Procedure." (CRP Sec. IX(B)(4).) Consequently, as in other contested matters under Rule 9014, discovery in accordance with the Federal Rules (by both the Claimant and the Trustee) is contemplated for the Judicial Determination process. But there are no analogous provisions applicable to the Trust's claims-determination process before that stage.

The pre-Judicial Determination procedures were designed to provide a streamlined, less formal and more efficient process than the full-blown procedures, including discovery, applicable to contested matters. *See* CRP at 1 (Preamble) (noting that the CRP is to be implemented to secure the "just, speedy, and cost-efficient determination of every claim"); *id.* at Sec. II (the Trustee is to use information that "alleviates the burden on Claimants"); *see also* TCC Trust Dispute Document Response, p. 11 ("These agreements represent a thoughtful balance of complex procedures necessary to efficiently and objectively liquidate and pay the fire victims' claims in an even-handed and cost-effective manner."); *id.* p. 18 ("Such claims procedures establish an orderly, **alternative mechanism** to verify, evaluate, and resolve tort claims. . . . The Trust procedures . . . permit[] claims to be resolved in an effective, fair and cost-efficient manner"(emphasis added.)).

The Trust acknowledges that it has followed the deficiency notice process for thousands of other Fire Victim Claimants. Motion at 5. In particular, it notes that many of these notices involve requests for insurance information. *Id.* On the other hand, the Trust does not identify a single instance other than this where it has served discovery on a Fire Victim Claimant.

C. Adventist's Claim Submissions To The Trust

Adventist timely submitted its completed Claims Questionnaire in February 2021, including supplemental attachments addressing, among other things, its insurance (including aspects of its claim for which there is no insurance coverage or for which the coverage available is limited by the policy's terms and conditions). *See Declaration of Rebecca J. Winthrop* filed concurrently herewith (the "Winthrop Decl.") ¶ 2 & Ex. "AA". At the same time, Adventist submitted (a) a detailed, 69-page expert report (supplemented with supporting exhibits and 193

DOCUMENT PREPARED ON RECYCLED PAPER

pages of appendices and schedules) itemizing, analyzing and explaining the components of its claim), and (b) over 127,000 pages of documents, including its insurance policy, evidence of insurance payments received (which then totaled $60 million), and many other documents supporting and evidencing its claim, including invoices, financial statements and tax returns. Winthrop Decl. ¶ 3. As outlined above, Adventist's claim includes, *inter alia,* claims for the cleanup, repair and rebuilding, damage to timber and landscaping, and business income losses. It totals just over $497 million. In addition, Adventist sought punitive damages, but only "to the extent such damages are awarded by the Trust to any other claimant." *Id.* Ex. AA at 12.[5]

Since its initial submissions in February 2021, Adventist has made no less than six additional submissions to the Trust on a variety of topics, some voluntarily, some in response to informal requests by the Trust, and once in response to a notice of deficiency (which sought additional confirmation that the Claims Questionnaire signatory was authorized). Winthrop Decl. ¶ 4. In July 2021, for example, Adventist voluntarily reported that it had received an additional $67.8 million in insurance recoveries from FM Global and provided documentation of the payments. *Id.*[6]

### D. The Trust's Discovery And Adventist's Response

On September 13, 2021, counsel for the Trust emailed to counsel for Adventist copies of two sets of discovery requests, one directed to Adventist Health and one directed to AHFR, and each containing requests for admission, interrogatories and document demands. Winthrop Decl. ¶ 5 & Ex. BB. The Trust had not previously requested any of the documents or information sought by those requests, whether by deficiency notice as contemplated by the CRP or otherwise, and Adventist had at that juncture provided the insurance-related information the Trust had requested (and more). *Id.*

---

[5] Adventist's claim is no different than other Fire Victim Claimants. The "Proof of Claim (Fire Claim Related)" form approved by the Court for Fire Victim Claims specifically provided for punitive-damage claims, and every member of the Tort Claimants Committee included such a request. *See Motion of the Adventist Claimants for Estimation and Temporary Allowance of the Adventist Fire Damage Claims Solely For Voting Purposes Pursuant to Bankruptcy Rule 3018* [Dkt. 6174], n. 4. The CRP expressly contemplates that they may be permitted. *See* CRP Sec. IX(C).

[6] The Trust's proposed discovery, and that previously served, erroneously continue to reference only the original $60 million in insurance recoveries. *See* Motion Ex. B at 38, 57, 58, 100.

DOCUMENT PREPARED ON RECYCLED PAPER

103583456

- 6 -

The discovery requests invoked the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure, and recited that they were issued pursuant to "Section IX of the Fire Victim Claims Resolution Procedures (the 'CRP')." Winthrop Decl., Ex. BB at 57, 75. As discussed above (p. 5-6, *supra*), however, Section IX of the CRP, entitled "Court Review," addresses Judicial Determination proceedings instituted by an eligible Claimant only *after* the Trustee issues a determination following an initial decision and exhaustion of the three-tiered appeal process. (CRP Sec. IX; CRP Sec. VII; CRP Sec. VIII). Here, the Trust has not yet issued even an initial determination.

Consequently, Adventist immediately wrote to the Trust, pointing out that CRP Section IX is inapposite, and asking the Trust to identify any provision of the CRP that permitted it to take discovery under the Federal Rules. *Declaration of Eric Goodman in Support of Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 Etc.* [Dkt 11566-1] ( "Goodman Decl."), Ex. 1 (Winthrop Letter of September 16, 2021). The Trust was unable to do so, instead acknowledging that it could proceed by issuing a deficiency notice. *Id.* Ex. 2 (Goodman Letter of September 21, 2021). The Trust also suggested that it could proceed under Rule 2004, *id.*, but, in response to Adventist's inquiry concerning anything in the CRP or any other governing document that permitted it to ignore procedures specified in the CRP (which limit discovery to the Judicial Determination context) and proceed under Rule 2004, Goodman Ex. 3 (Winthrop Letter of September 27, 2001), the Trust was again unable to do so. Goodman Decl. Ex. 4 (Goodman Letter of October 4, 2021). Instead, the Trust could cite only to instances where it had proceeded under Rule 2004 on matters not involving discovery of a Fire Victim Claimant concerning a claim subject to the CRP (as it does again here). *Id.* Adventist accordingly objected to the Trust's Federal Rules discovery requests as unauthorized and inconsistent with the CRP. Goodman Decl. Ex. 3.

However, Adventist at the same time advised the Trust that it was committed to providing information and documents concerning its claim "in accordance with the CRP." Goodman Ex. 5 (Winthrop Letter of October 13, 2021). Moreover, while the Motion does not acknowledge it, Adventist submitted a further supplement to its Claims Questionnaire, addressing insurance and

DOCUMENT PREPARED ON RECYCLED PAPER

103583456

- 7 -

other issues raised by the Trust's attempted discovery (in some instances identifying information <u>already</u> in the Trust's possession concerning these topics which it seemed not to have reviewed or understood), and produced almost 2,000 additional pages of documents on these topics. Winthrop Decl. ¶ 6 & Ex. CC. Finally, Adventist expressly invited the Trust's counsel to meet and confer to discuss what additional information the Trust might need to evaluate Adventist's claim. Goodman Ex. 5 at 2 (Winthrop Letter of October 15, 2021).

The Trust, however, ignored that invitation. On November 1, 2021, it finally proceeded in accordance with the CRP, and issued two notices of deficiency seeking information. Motion Ex. D. Upon receipt of the notices, Adventist began working to address them, and is currently collecting additional documents and information for submission to the Trust in response to the two notices. Winthrop Decl. ¶ 7.

Then, on November 9, 2021, still without conferring with Adventist,[7] the Trust filed the present Motion. Although its prior effort had been ignored, Adventist again requested a meet and confer, now to discuss questions it had about the requests in the deficiency notices, and to discuss the Motion. Winthrop Decl. ¶ 7 & Ex. DD at 106. As to the deficiency notices: (1) Adventist asked why the request sought tax returns for several years, listing them as "Not Provided," when Adventist had submitted such returns with its submissions in February 2021, and provided Bates numbers; counsel for the Trust ultimately responded by acknowledging that it had now found the returns and would advise whether anything further was needed. *Id.* & Ex. DD at 103. (2) Adventist asked whether one of the notices, which listed only one of the numerous "loss locations" in Adventist's claim as the "loss location" at issue was meant somehow to be limited to that location, or meant to encompass all of Adventist's claim; counsel for the Trust eventually confirmed that, despite the reference to only one location, the request was meant to encompass all loss locations. *Id.* & Ex. DD at 103. (3) Adventist asked whether the notices' request for the "Complete Insurance Claim File with [FM Global]" was meant to be a request that Adventist ask

---

[7] This seems to be a common practice for the Trust. *See* Subrogation Trust's *Objection to Ex Parte Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Service of Subpoenas on the Subrogation Wildfire Trust, Subrogation Wildfire Claimants, and Insurers with Claim Files* [Dkt. 9587], ¶¶ 1-3, 6.

DOCUMENT PREPARED ON RECYCLED PAPER

that FM Global provide its file; counsel for the Trust later, after initially suggesting otherwise, confirmed that this was what was intended. *Id.* & Ex. DD at 102, 103. Adventist understands that FM Global is obligated to provide a copy of its file in accordance with Cal. Ins. Code § 2071, and is preparing such a request. *Id.* at 102.

As to the Motion, Adventist noted that, while it believed the Motion was not well-founded, Adventist is responding to the deficiency notices. Further, if the Trustee believes its current notices are not adequate, and that additional information is required, Adventist is committed to responding to any further requests made in accordance with the CRP (and is also willing to address any informal requests, as it has done previously. Winthrop Decl. Ex. DD at 100, 101, 102. . Consequently, the Motion is unnecessary, since the Trust can obtain information and documents by complying with the CRP, and entails unwarranted burden and expense. *Id.* Accordingly Adventist proposed that the Trust take the Motion off calendar, with the option of re-calendaring it later. *Id.* at 101, 102. The Trust, however, was unwilling to take the Motion off calendar unless, in addition to responding to the Trust's deficiency notices, Adventist would agree to respond to its (improper) discovery requests, with all the additional burden and complexity that entails. *Id.* at 100, 101.

E. <u>The Trust's Inaccurate Statements Concerning the Merits of Adventist's Claims and Relationship with FM Global</u>

The Motion makes several assertions concerning the merits of Adventist's claim and relationship with FM Global which are unwarranted and unsupported, and call into question whether the Trust is objectively or adequately reviewing Adventist's claim, much less reviewing the information and documentation that Adventist is submitting. First, the Trust suggests that $116.1 million is for "economic losses" of Adventist Health and "appears to be invalid" under *Southern California Gas Leak Cases,* 7 Cal. 5th 391 (2019). Motion at 6. The Trust's suggestion is both factually and legally erroneous; *inter alia,* no court has ever applied the economic loss doctrine to a parent entity particularly one which, like Adventist Health, has a proprietary interest in property damaged by a tortfeasor. Moreover, the economic loss doctrine is inapplicable here under *Biakanja v. Irving,* 49 Cal. 2d 647 (1958), and its progeny. Second, the Trust contends that

DOCUMENT PREPARED ON RECYCLED PAPER

103583456

- 9 -

the remaining $380.9 million of Adventist's claim constitutes "almost a fully insured loss." Motion at 7. Again, this is false. The Trust fails to acknowledge, however, that Adventist has made repeated submissions (most recently several weeks before the Motion was filed) explaining that portions of its claim are not covered, and that important portions of its coverage, particularly its business interruption coverage, are subject to significant limitations under the terms of the policy so that any recovery received under the policy will diverge significantly from the measure of damages to which Adventist is entitled from PG&E/the Trust under California law. Winthrop Decl. 6 & Exs. AA at 29 and CC. The documents Adventist has submitted include not only the terms of the insurance policy, but also exchanges with FM Global on a number of these issues. *Id.*

Adventist, as explained above, has recovered $127.8 million to date from FM Global (and has provided documentation of these payments to the Trust). (Notably, this includes amounts allocable to the Adventist Health losses which the Trust suggests are **barred** under the economic loss doctrine.) Adventist, acknowledges (as it always has) that such recoveries are properly deducted from its $497 million claim. Additionally, Adventist continues to seek additional recoveries from its insurance carrier. But notwithstanding those continued efforts, it is clear that, ultimately, portions of Adventist's claim will not be covered by insurance.

Finally, the Trustee implies that Adventist is acting improperly in the prosecution of its insurance claim due to its purported "ownership interest" in FM Global. Motion at 7. Adventist has repeatedly advised the Trustee that it holds **no ownership interest** in FM Global.[8] Yet, the Trustee ignores that information, and continues to raise inaccurate allegations in this regard to the Court.

---

[8] Winthrop Decl. Ex. CC. The Trustee's claims appear to be based on the fact that FM Global is a mutual insurer, and that insureds are "members" of FM Global when their policy is in effect. However, even if such "membership" were somehow relevant, Adventist previously advised the Trustee that its policy with FM Global is no longer in effect, that Adventist is no longer an FM Global member. *Id.*

DOCUMENT PREPARED ON RECYCLED PAPER

103583456

- 10 -

## III. THE TRUSTEE CANNOT DEMONSTRATE "GOOD CAUSE" FOR THE PROPOSED DISCOVERY, WHICH IS CONTRARY TO THE CRP AND UNNECESSARY

The Trustee has the burden of establishing that there is "good cause" for the relief he requests. *In re Eagle-Picher Indust., Inc.* 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) ("[T]he one seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks."); *see also In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993). The Trustee does not, and cannot, meet that burden here.

Instead, the Trust's proposal that it be permitted to serve discovery under the Federal Rules on Adventist, including requests for admission, interrogatories, and document demands, should be rejected because it is contrary to the CRP that this Court approved in the Confirmation Order to govern the Trust. The CRP specifically provides that "[t]he CRP will govern the process by which each claim is reviewed . . ." CRP Section VII.A. As discussed above, the CRP establishes specific mechanisms for the Trust to obtain the information needed to evaluate a claim, including via both the initial Claims Questionnaire process as well as the deficiency notice process. Those processes do not include any provision for discovery under the Federal Rules, except in one specific context: a Judicial Determination proceeding initiated **after** an eligible Claimant has received a claim determination and appealed it through the Trust's three-tiered appeal process and obtained a determination from the Trustee, at which point all the rights and obligations pertinent to a contested matter apply.

The Trust remains unable to identify anything in the CRP, the Fire Victim Trust Agreement, or the Confirmation Order which permits it to deviate from the claim evaluation processes set forth in CRP Sections V and VII and serve discovery under the Federal Rules (whether by simply serving discovery, as it initially attempted to do, or by invoking Rule 2004). Indeed, unable to reconcile its proposal with the CRP, the Motion attempts to avoid even acknowledging the issue – even though it was the express basis for Adventist's objection to the Trustee's attempted discovery. Goodman Decl., Ex. "1" (Winthrop Letter of September 16, 2021), Ex. "3" (Winthrop Letter of September 27, 2021). Not only is such discovery flatly at

DOCUMENT PREPARED ON RECYCLED PAPER

odds with the CRP's provisions, but it would undermine the CRP's express purposes of promoting "efficiency" and "alleviat[ing] the burden on Claimants." CRP Preamble, CRP Sec. II; *see also* TCC Trust Document Dispute Response, p. 11 (trust agreement and CRP "represent a thoughtful balance of complex procedures necessary to efficiently . . . pay . . . victims' claims in an even-handed and cost-effective manner").

Of course, the deficiency notice process is the process that the Trustee admits he has followed for over 9,000 other claimants. Motion at 5. That is the procedure the Trust had followed with Adventist as well, at least until (without any prior request for the information at issue) it improperly served discovery on Adventist. And that is the process it finally invoked as to information at issue here when it provided deficiency notices to Adventist on November 1, 2021, and which the Trustee can invoke again if warranted.

Conversely, the Trustee cites not a single case where it has sought or obtained discovery from a Fire Victim Claimant with respect to the nature or extent of its claim against the Trust. While the Trustee asserts that he has obtained discovery pursuant to Rule 2004 in several other circumstances, Motion at 11, none of them involved discovery directed to a Fire Victim Claimant with respect to its claim against the Trust. For example, the Trust references a 2004 subpoena directed to PriceWaterhouseCoopers in connection with the Trust's affirmative claims against that entity which were assigned to the Trust in the Confirmation Order. *Id.* (citing Dkt. 11145). The Trust also cites a Rule 2004 order apparently obtained on short notice against certain insurers who did not respond to or oppose the motion. *Id.* (citing Dkt. 9594). With the exception of Adventist, it appears the Trustee has proceeded in conformity with the procedures specified in the CRP for every Fire Victim Trust Claimant.

The Trustee's reference (Motion at 11) to liquidating trusts conducting discovery pursuant to Rule 2004 only further illustrates that such discovery is not warranted here. In stark contrast to the CRP, there is no suggestion in liquidating trust cases that the governing documents establish another procedure for claim investigation which the trustee is required to follow. *See, e.g., In re Millennium Lab Holdings II, LLC,* 562 B.R. 614 (Bankr. D. Del. 2016). Instead, the governing documents for liquidating trusts typically expressly authorize the liquidating trust to proceed post-

DOCUMENT PREPARED ON RECYCLED PAPER

confirmation under Rule 2004. *See In re Mayflower Communities,* 2019 WL 4732379, *39 (Bankr. N.D. Tex. Sept. 26, 2019); *In re Forest Park Medical Center at Fort Worth, LLC,* 2017 WL 1831092, *20 (Bankr. N.D. Tex. May 4, 2017); *In re Asset Resolution, LLC,* 2012 WL 12905294, *61 (D. Nev. Sept. 6, 2012); *In re Linens Holding Co.,* 2009 WL 2163235, *8 (D. Del. June 12, 2009).[9]

The Motion at 9, disturbingly, suggests the discovery sought should be permitted now because the Trust is "confident" Adventist will appeal the Trustee's decision, and that discovery would be permitted in the ensuing Judicial Determination/contested proceeding. This, as well as the other inaccuracies in the Trust's account, raises obvious concerns about the fairness and objectivity of the Trust's consideration of Adventist's claim. Adventist would like to assume that the Trust will properly consider the information it has provided and will provide pursuant to the deficiency notice process, and any additional information Adventist submits during the three-tiered Trust appeal process (should that prove necessary). That there may eventually be Judicial Determination proceeding here (though Adventist hopes otherwise) affords no basis for ignoring the procedures the CRP mandates that the Trust is to follow in its own evaluation of Adventist's claim.[10] Indeed, the Trust's argument turns Rule 2004 on its head: "If an adversary proceeding or contested matter is . . . likely to be filed [as the Motion suggests], it is improper for one of the parties to use a Rule 2004 examination as a substitute for, or in addition to, discovery" which can be taken once the contested matter commences. 10 *Collier on Bankruptcy,* ¶ 7026.01 p. 7026-3 (Richard Levin & Henry J. Sommer eds., 16th ed.).[11]

As the U.S. District Court in *In re Dinubilo*, 177 B.R. 932, 942 (E.D. Cal. 1993), reasoned, "[y]ou are asserting a claim and in order to assert it you have to assert it under [Rule

---

[9] The cases the Trust cites for the proposition that a Rule 2004 examination can be authorized to investigate proofs of claim are likewise inapposite because they do not involve claims subject to the provisions of the CRP or any analogous set of requirements post-confirmation which expressly provides other "alternative mechanisms" for investigation that are to "govern the process by which each claim is reviewed." CRP Sec. VII.A. *See* Motion at 10-11 (citing *In re Subpoena Duces Tecum, In re Deschetler, In re Michalski, In re Sheetz,* and *In re Countrywide Home Loans, Inc.*).

[10] Of course, discovery pursuant to CRP Section IX(B) is not a one-way street; instead, if the contested-matter provisions of Section IX(B) are triggered, both Adventist and the Trustee will be able to conduct discovery.

[11] *See also In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983).

DOCUMENT PREPARED ON RECYCLED PAPER

103583456 - 13 -

9014] if there is going to be an objection to your claim, and [if there is an objection, then], it seems to me that you are then obligated to proceed under Rule 7024 . . . or any other discovery matters allowable under those rules *as opposed to [Rule] 2004* [examination] which is generally related to a trustee trying to find out by way of examination whether there is any claim or other aspect of the case that he should be following." *Id.* (quoting *In re Aromax, Inc.,* No. 190-01484 (Bankr. E.D. Cal.) (emphasis added)).

In any case, there is no "good cause" for the requested relief under Rule 2004 because the CRP provides procedures for investigation of claims that work if the Trustee follows them. Despite the Motion's false assertions that Adventist has "stonewalled" or is "foot-dragging" because it objected to the Trustee's failure to abide by the CRP's requirements that are supposed to govern his actions, the discovery the Motion seeks is unnecessary. The Trustee has issued notices of deficiency and Adventist is addressing the matters they raise. Some of the notice items seek information that the Trust (despite its claims to have reviewed Adventist's submissions thoroughly) already has (e.g., tax returns, see p. 8 *supra*), or reflect a misunderstanding of the applicable insurance policy terms. Adventist will address those issues as well as providing additional documents and information to address the Trust's concerns. And Adventist is formally requesting that FM Global provide its claim file in accordance with California law. If there are additional items that the Trust seeks beyond those requested in the deficiency notices, Adventist stands ready to discuss those with the Trust (as it always has) and to respond to any further notices of deficiency the Trust may issue.

The last justification for the Motion offered by the Trustee, that "[w]ithout the requested information, the Fire Victim Trust cannot accurately estimate the total claims and must be conservative in determining how much can be paid out on account of Fire Victim Claims," Motion at 11-12, not only ignores that the CRP provides the appropriate mechanism for obtaining this information (and that it is being provided), but is of significant concern to Adventist (and should be of concern to every other holder of a potentially disputed claim). The Trustee appears to suggest that he will reserve for disputed claims only in those amounts which **he** "estimates" are the right amounts, as opposed to amounts actually in dispute. If so, and if the Trust is as

DOCUMENT PREPARED ON RECYCLED PAPER

103583456

- 14 -

underfunded as the Trustee asserts (Motion at 3),[12] the Trustee will be unable to meet his obligation to pay Adventist *pro rata* with other claimants (*see* Fire Victim Trust Agreement, Recitals G and H, §§ 1.2, 2.1(e)(4), 3.3(b); CRP Section VII(B)(1)) in the event that Adventist successfully challenges the determination (either in the three-tiered Trust process or through the Judicial Determination process). While Adventist will continue to comply with the CRP and produce information and documents as required, this Court should not countenance any effort by the Trustee to justify distributions based only on what the Trustee "estimates" should be recovered on account of Adventist's claims, rather than the full amount the Trustee knows is in dispute.

Finally, even if there were any basis to award relief here, Rule 2004 by its terms does not contemplate the use of requests for admission or interrogatories, as the Trustee requests. Instead, Rule 2004 provides only for the examination of witnesses and document production. *See* Rule 2004(c) (*attendance* and production of documents); Rule 2004(d) (time and place of examination); Rule 2004(e) (mileage).

## IV. CONCLUSION

For the foregoing reasons, Adventist respectfully requests this Court to deny the Motion.

Dated: November 23, 2021

REBECCA J. WINTHROP
ROBIN D. BALL
NORTON ROSE FULBRIGHT US LLP

By /s/ Rebecca J. Winthrop
REBECCA J. WINTHROP
Attorneys for Creditors ADVENTIST HEALTH SYSTEM/WEST, and FEATHER RIVER HOSPITAL d/b/a ADVENTIST HEALTH FEATHER RIVER

---

[12] The Motion repeatedly makes factual statements regarding the size of the Trust, number of claimants and claims, potential recovery for claimants, how the Trust addresses other claimants and their claim forms, and how the Trust uses data from insurance companies. *See, e.g.,* Motion at 5-6. Yet, none of these factual assertions is supported by a declaration or other evidence.

DOCUMENT PREPARED ON RECYCLED PAPER