1 | REBECCA J. WINTHROP(CA Bar No. 116386)
ROBIN D. BALL (CA Bar No. 159698)
2 | NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
3 | Los Angeles, California 90071
Telephone:     (213) 892-9200
4 | Facsimile:      (213) 892-9494
rebecca.winthrop@nortonrosefulbright.com
5 | robin.ball@nortonrosefulbright.com

6 | Attorneys for Creditors ADVENTIST HEALTH
SYSTEM/WEST, and FEATHER RIVER HOSPITAL
7 | d/b/a ADVENTIST HEALTH FEATHER RIVER

8 |

9 |                **UNITED STATES BANKRUPTCY COURT**

10 |               **NORTHERN DISTRICT OF CALIFORNIA**

11 |                  **SAN FRANCISCO DIVISION**

12 | In re:                                    | Case No. 19 – 30088 (DM)

13 | PG& E CORPORATION                          | Chapter 11
                                               | (Lead Case)
14 |          - and –                          | (Jointly Administered)

15 | PACIFIC GAS AND ELECTRIC                   | **DECLARATION OF REBECCA J.**
COMPANY,                                      | **WINTHROP IN SUPPORT OF OPPOSITION**
16 |                                           | **OF ADVENTIST HEALTH SYSTEM/WEST**
                                               | **AND ADVENTIST HEALTH FEATHER**
17 |          Debtors.                         | **RIVER TO MOTION OF FIRE VICTIM**
                                               | **TRUSTEE PURSUANT TO FEDERAL RULE**
18 |                                           | **OF BANKRUPTCY PROCEDURE 2004 FOR**
                                               | **ENTRY OF AN ORDER AUTHORIZING**
19 |                                           | **DISCOVERY FROM ADVENTIST HEALTH**
                                               | **SYSTEM/WEST AND ADVENTIST HEALTH**
20 |                                           | **FEATHER RIVER AND SERVICE OF A**
                                               | **SUBPOENA ON FACTORY MUTUAL**
21 |                                           | **INSURANCE COMPANY**

22 |                                           | **REDACTED VERSION OF**
                                               | **DOCUMENT PROPOSED TO BE**
23 |                                           | **FILED UNDER SEAL**

24 | ☐      Affects PG&E Corporation           | **Hearing:**
25 | ☐      Affects Pacific Gas and Electric   | Date:    December 7, 2021
              Company                           | Time:  10:00 a.m. (Pacific Time)
26 | ☒      Affects both Debtors               | Place:  Via Zoom or AT&T Only

27 | *All papers shall be filed in the Lead
Case, No. 19-30088 (DM).*

28 |

DOCUMENT PREPARED
ON RECYCLED PAPER

103601881.4

I, Rebecca J. Winthrop, declare as follows:

1.     I am an attorney, licensed to practice before all courts in the State of California.  I am Of Counsel in the law firm of Norton Rose Fulbright US LLP, and one of the attorneys primarily responsible for the representation of Adventist Health System/West ("Adventist Health") and Feather River Hospital, d/b/a Adventist Health ("AHFR," and together with Adventist Health, "Adventist").  Unless otherwise noted, I know the following facts of my own personal knowledge, and if called upon as a witness to this proceeding, I would and could competently testify thereto under oath.  I submit this Declaration in support of the *Opposition of Adventist Health System/West and Adventist Health Feather River to Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure Rule 2004 for Entry of an Order Authorizing Discovery From Adventist Health System/West and Adventist Health Feather River and Service of a Subpoena on Factory Mutual Insurance Company* (the "Rule 2004 Motion").

2.     Attached hereto as Exhibit "AA" is a true and correct copy of the following documents which were uploaded to the Fire Victim Trust Portal (the "Portal") on February 24 or 25, 2021:  (a) a fully completed Claims Questionnaire on behalf of both Adventist Health and AHFR; (b) an Addendum to Adventist's Claims Questionnaire, providing further information requested by the Claims Questionnaire; (c) a separate Insurance Attachment to Claims Questionnaire, providing further information regarding Adventist Health's insurance policy, amounts received and limitations on coverage provided thereunder; (d) Adventist's Loss Location Attachment to Claims Questionnaire, itemizing every location damaged or destroyed by the Camp Fire, along with multiple additional information regarding each location required by the Trust; and (e) the Adventist Health Feather River Camp Fire Properties Map, providing a pictorial view of all the different locations damaged or destroyed by the Camp Fire.

3.     On February 24, 2021, Adventist uploaded to the Portal the *Expert Report of Maryellen Sebold* of RSM US LLP (the "Sebold Report").  The Sebold Report is too voluminous to attach here but consists of a detailed 69-page expert report (supplemented with supporting exhibits and 193 pages of appendices and schedules) itemizing, analyzing and explaining the components of Adventist's claim.  Additionally, Adventist uploaded over 127,000 pages of

Document Prepared
on Recycled Paper

103601881.4

1    documents, including its insurance policy, evidence of insurance payments received (which then

2    totaled $60 million), and many other documents supporting and evidencing its claim, including

3    invoices, financial statements and tax returns.

4         4.    Since Adventist's initial submission outlined in Paragraphs 2 and 3 above,

5    Adventist has made at least six additional submissions to the Trust on a variety of topics. Some

6    were made voluntarily on their own, some were in response to informal requests from the Trust

7    via email or an "Alert" posted on Adventist's Portal, and one was in response to a notice of

8    deficiency (which sought additional confirmation that the Claims Questionnaire signature was

9    authorized). For example, in July 2021, Adventist voluntarily reported that it had received an

10   additional $67.8 million in insurance recoveries from FM Global, and posted documentation of

11   the payments to the Portal.

12        5.    Attached hereto as Exhibit "BB" is a true and complete copy of an email I received

13   from Eric Goodman on September 13, 2021, including two sets of discovery requests, one

14   directed to Adventist Health and one directed to AHFR, which were attached to the email

15   (together, the "Trust Discovery Requests"). Each of the Trust Discovery Requests contains

16   requests for admission, interrogatories and document demands.

17        6.    Attached hereto as Exhibit "CC" is a true and complete copy of a further

18   supplement to Adventist's Claims Questionnaire, addressing insurance and other issues raised by

19   the Trust's Discovery Requests, which Adventist uploaded to the Portal on October 20, 2021. It

20   was accompanied by over 1,900 pages of additional documents on these topics, including

21   exchanges with FM Global on a number of these issues.

22        7.    On November 1, 2021, the Trust posted two notices of deficiency to the Portal.

23   Since receiving these notices, Adventist has been working to address them, and is currently

24   collecting additional document and information for submission to the Trust in response to the two

25   notices.

26        8.    Although my earlier proposal to confer concerning the Trust's information needs

27   (contained in Goodman Declaration Ex. 5) had been ignored, upon receiving the Trust's Rule

28   2004 motion via ECF, I requested a meet and confer with the Trust to discuss questions we had

1    regarding both the new deficiency notices, and to discuss the Rule 2004 Motion.  Attached hereto

2    as Exhibit "DD" is a series of emails between me or my colleague, Robin Ball, and Mr. Goodman

3    attempting to address the issues.

4         I declare under penalty of perjury under the laws of the United States that the foregoing is

5    true and correct.

6         Executed this 23rd day of November, 2021, at Pasadena, California.

7

8                        */s/ Rebecca J. Winthrop*
                    REBECCA J. WINTHROP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

103601881.4

- 4 -

(Redacted Version
of Document to
Be Filed Under
Seal)

# EXHIBIT AA

# REDACTED

# REDACTED

# REDACTED

# REDACTED

**REDACTED**

# REDACTED

# REDACTED

# REDACTED

# REDACTED

**REDACTED**

# REDACTED

**REDACTED**

# REDACTED

# REDACTED

**REDACTED**

# REDACTED

# REDACTED

**REDACTED**

**REDACTED**

**REDACTED**

# REDACTED

# REDACTED

# REDACTED

# REDACTED

**REDACTED**

# REDACTED

# REDACTED

# REDACTED

**REDACTED**

**REDACTED**

# REDACTED

**REDACTED**

**REDACTED**

# REDACTED

# REDACTED

# REDACTED

# REDACTED

**REDACTED**

**REDACTED**

REDACTED

# REDACTED

**REDACTED**

# REDACTED

**REDACTED**

# REDACTED

# REDACTED

# REDACTED

# EXHIBIT BB

| From: | Goodman, Eric R. <EGoodman@brownrudnick.com> |
|---|---|
| Sent: | Monday, September 13, 2021 2:49 PM |
| To: | Winthrop, Rebecca J.; Ball, Robin |
| Cc: | Aulet, Kenneth; Molton, David J.; Strong, Marcus T. |
| Subject: | Discovery Requests |
| Attachments: | Adventist First Combined Discovery Requests.pdf; AHFR First Combined Discovery Requests.pdf |

[External Email – Use Caution]

Rebecca and Robin,

Attached find the Fire Victim Trustee's First Combined Discovery Requests for Adventist Health System/West and Adventist Health Feather River. If you have any questions, please let me know.

Best Regards,
Eric

# **brown**rudnick

**Eric R. Goodman**
Partner

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
T: 202.536.1740
M: 216.235.4242
egoodman@brownrudnick.com
www.brownrudnick.com

*********************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

*********************************************************************************

1   BROWN RUDNICK LLP
    David J. Molton (SBN 262075)
2   (DMolton@brownrudnick.com)
    Seven Times Square
3   New York, New York 10036
    Telephone:    (212) 209-4800
4   Facsimile:    (212) 209-4801

5   BROWN RUDNICK LLP
    Joel S. Miliband (SBN 077438)
6   (JMiliband@brownrudnick.com)
    2211 Michelson Drive, Seventh Floor
7   Irvine, California 92612
    Telephone:    (949) 752-7100
8   Facsimile:    (949) 252-1514

9   *Attorneys for Fire Victim Trust*

10              **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11                  **SAN FRANCISCO DIVISION**

12  **In re:**                          Bankruptcy Case
                                        No. 19-30088 (DM)
13  **PG&E CORPORATION**
                                        Chapter 11
14          **-and-**                   (Lead Case)
                                        (Jointly Administered)
15  **PACIFIC GAS AND ELECTRIC**
    **COMPANY,**                        **FIRE VICTIM TRUSTEE'S FIRST SET**
16                                      **OF REQUESTS FOR ADMISSION, FIRST**
            **Debtors.**                **SET OF INTERROGATORIES, AND**
17                                      **FIRST SET OF DOCUMENT REQUESTS**
    ☐  Affects PG&E Corporation         **TO ADVENTIST HEALTH**
18                                      **SYSTEM/WEST**
    ☐  Affects Pacific Gas and Electric Company
19  ■  Affects both Debtors

20  *All papers shall be filed in the Lead Case,*
21  *No. 19-30088 (DM)*

22

23

24

25

26

27

28

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure (the "Civil Rules"), Rules 9014, 7026, 7033, 7034 and 7036 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Section IX of the Fire Victim Claims Resolution Procedures (the "CRP"), the Honorable John K. Trotter (Ret.), in his capacity as the Fire Victim Trustee (the "Trustee"), by and through his undersigned counsel, submits to Adventist Health System/West ("Adventist" or "You"), the following requests for admission (the "Requests for Admission"), interrogatories (the "Interrogatories"), and requests for production of documents (the "Requests for Production"). Please produce the documents by delivering the production media to Mr. Eric Goodman, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, within thirty (30) days of the service of the Requests for Production. The Trustee further requests that Adventist respond to the Requests for Admission and the Interrogatories in accordance with Civil Rules 33 and 36.

## DEFINITIONS

The term "Adventist" shall mean Adventist Health System/West, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "AHFR" shall mean Feather River Hospital, d/b/a Adventist Health Feather River, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "Available Insurance Recoveries" shall have the same meaning as that term is used in Section 2.6 of the Fire Victim Trust Agreement.

The term "Camp Fire" shall mean the fire started on Thursday, November 8, 2018, in Northern California's Butte County.

The term "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other forms of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

The term "concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

The term "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

The term "Fire Victim Trust Agreement" shall mean the PG&E Fire Victim Trust Agreement dated as of July 1, 2020 that implements certain of the terms of the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020.

The term "FM Global" shall mean Factory Mutual Insurance Company, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "FM Global Policy" shall mean that Policy No. 1019191 issued by FM Global in favor of Adventist Health System / West and any subsidiary, and Adventist Health System / West's interest in any partnership or joint venture in which Adventist Health System / West has management control or ownership.

The term "Proof of Claim" shall mean the Proof of Claim (Fire Claim Related) filed by Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River in the Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company.

The term "Sebold Report" shall mean the Expert Report of Maryellen Sebold dated February 24, 2021.

The term "Shared Services" shall mean the variety of centralized services and functions that Adventist claims are common and provided across all Adventist Health hospitals and clinics, including but not limited to Feather River Hospital d/b/a Adventist Health Feather River.

The term "Time Element" shall have the same meaning as that term is used in the FM Global Policy.

The terms "You" or "Your" and variants thereof mean Adventist.

## **INSTRUCTIONS**

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Admission, Interrogatories, and Requests for Production, the following Instructions shall be followed:

1.    All responses shall comply with the requirements of the Civil Rules and the Bankruptcy Rules.

2.     Unless otherwise stated in a specific Request for Admission, Interrogatory, or Request for Production herein, the relevant time period shall be the period from the date of the Camp Fire to the present.

3.     These Requests for Admission, Interrogatories, or Requests for Production shall be deemed continuing in nature. In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Admission, Interrogatories, or Requests for Production, such additional information is to be promptly produced.

4.     Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

5.     You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

6. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

7. Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

8. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

9. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

10. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

        a. Identify the type, title and subject matter of the Document;

        b. State the place, date, and manner of preparation of the Document;

        c. Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

        d. Identify the legal privilege(s) and the factual basis for the claim.

11. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 10 above must be provided.

12.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

13.     If You object to any of these Requests for Admission, Interrogatories, or Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Admission, Interrogatory, or Request for Production, You shall respond to any other portions of such Admission, Interrogatory, or Request for Production as to which there is no objection and state with specificity the grounds of the objection.

14.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Admission, Interrogatories, or Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Admission, Interrogatories, or Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Admission, Interrogatory, or Request for Production, so state in Your response to that Request for Admission, Interrogatory, or Request for Production.

15.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

16.     If You deny knowledge or information sufficient to answer an Interrogatory (or any part thereof), provide the name and address of each person known or believed to have such

knowledge.  Identify each person who assisted or participated in preparing and/or supplying any of the information given in answer to these Interrogatories.

**MANNER OF PRODUCTION**

1.      All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents.  Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.      Database Load Files and Production Media Structure:  Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.      Electronic Documents and Data, Generally:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.      Emails and Attachments, and Other Email Account-Related Documents:  All Documents and accompanying metadata created and/or stored in the ordinary course of business

Case: 19-30088    Doc# 11617    Filed: 11/23/21    Entered: 11/23/21 18:46:37    Page 63
of 108

7

within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5.     Documents and Data Created or Stored in or by Structured Electronic Databases: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database.   Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

        a.     XML format file(s);

        b.     Microsoft SQL database(s);

        c.     Access database(s); and/or

        d.     fixed or variable length ASCII delimited files.

6.     Spreadsheets, Multimedia, and Non-Standard File Types:  All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced.  A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media.  To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein.  Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.     "Other" Electronic Documents:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available

software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8. <u>Paper Documents</u>: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## <u>REQUESTS FOR ADMISSION</u>

1. Admit that no insurer has denied coverage for any loss suffered by You because of the Camp Fire.

<u>RESPONSE</u>:

2. Admit that FM Global has not denied coverage to You under the FM Global Policy for any loss caused by the Camp Fire.

<u>RESPONSE</u>:

3. Admit that no insurer has denied coverage to You under any insurance policy for any loss caused by the Camp Fire.

<u>RESPONSE</u>:

4. Admit that You have not received any Communications from any insurer indicating that it has denied coverage for any loss suffered by You because of the Camp Fire.

<u>RESPONSE</u>:

1      5.     Admit that You have not received any Communications from FM Global indicating

2 that FM Global has denied coverage for any loss caused by the Camp Fire.

3      RESPONSE:

4

5      6.     Admit that You are a member of FM Global.

6      RESPONSE:

7

8      7.     Admit that You have an ownership interest in FM Global.

9      RESPONSE:

10

11      8.     Admit that some or all of the damages discussed in Opinion 7a of the Sebold Report

12 are insured by the FM Global Policy or another policy of insurance.

13      RESPONSE:

14

15      9.     Admit that some or all of the damages discussed in Opinion 7b of the Sebold Report

16 are insured by the FM Global Policy or another policy of insurance.

17      RESPONSE:

18

19      10.     Admit that some or all of the damages discussed in Opinion 8b of the Sebold Report

20 are insured by the FM Global Policy or another policy of insurance.

21      RESPONSE:

22

23      11.     Admit that You did not suffer any property damage because of the Camp Fire.

24      RESPONSE:

25

26      12.     Admit that You did not suffer any personal injury because of the Camp Fire.

27      RESPONSE:

28

1       13.    Admit that You have not violated any conditions or obligations or cooperation clauses

2 under the FM Global Policy.

3            <u>RESPONSE</u>:

4

5       14.    Admit that You have not violated any conditions or obligations or cooperation clauses

6 under any policy of insurance that covers losses caused by the Camp Fire.

7            <u>RESPONSE</u>:

8

9       15.    Admit that You have not exercised reasonable efforts to obtain all Available Insurance

10 Recoveries for damages caused by the Camp Fire.

11            <u>RESPONSE</u>:

12

13       16.    Admit that You have not vigorously pursued all insurance to which You are entitled

14 for damages caused by the Camp Fire.

15            <u>RESPONSE</u>:

16

17       17.    Admit that You do not have a written agreement with AHFR regarding the provision

18 of shared services to AHFR.

19            <u>RESPONSE</u>:

20

21       18.    Admit that Your 2018 policy with FM Global had a limit of $1 billion and did not

22 contain a sublimit for locations exposed to California wildfire.

23            <u>RESPONSE</u>:

24

25                         **INTERROGATORIES**

26   1.    Identify all property You owned that was damaged by the Camp Fire.

27            <u>RESPONSE</u>:

28

1     2.     Identify all personal injuries You suffered because of the Camp Fire.

2          RESPONSE:

3

4     3.     If You contend that You have exercised reasonable efforts to obtain all Available

5  Insurance Recoveries for damages caused by the Camp Fire, explain the factual basis for that

6  contention.

7          RESPONSE:

8

9     4.     Identify all efforts You have taken to recover under any policy of insurance, including

10  the FM Global Policy, for damages caused by the Camp Fire.

11          RESPONSE:

12

13     5.     Identify each category of damages discussed in the Sebold Report for which Adventist

14  has insurance coverage.

15          RESPONSE:

16

17     6.     For each category of damages discussed in the Sebold Report, identify the amount of

18  insurance coverage available to Adventist under any policy of insurance, including the FM Global

19  Policy.

20          RESPONSE:

21

22     7.     Identify the amount of damages suffered by Adventist because of the Camp Fire that

23  are insured by a policy of insurance, including the FM Global Policy.

24          RESPONSE:

25

26     8.     Identify all damages You sustained because of the Camp Fire that you did not submit

27  to FM Global or any other insurer.

28          RESPONSE:

1        9.      Identify any loss caused by the Camp Fire for which any insurer, including FM

2 Global, has denied coverage to You.

3        <u>RESPONSE</u>:

4

5        10.     Identify all Communications between You and any insurer, including FM Global,

6 where the insurer has denied coverage for damages caused by the Camp Fire.

7        <u>RESPONSE</u>:

8

9        11.     Identify all proofs of loss submitted by You to FM Global, or any other insurer, on

10 account of the Camp Fire.

11       <u>RESPONSE</u>:

12

13      12.     Identify all property You owned that was destroyed by the Camp Fire that was covered

14 by insurance and the amount of insurance coverage for such property.

15       <u>RESPONSE</u>:

16

17      13.     Identify all written agreements between You and AHFR for the provision of shared

18 services.

19       <u>RESPONSE</u>:

20

21      14.     Identify the method You elected to have Time Element loss calculated under the FM

22 Global Policy.

23       <u>RESPONSE</u>:

24

25      15.     Identify any hospitals owned by You or Your affiliates that realized an increase in

26 revenue because of the Camp Fire.

27       <u>RESPONSE</u>:

28

1       16.     Identify the persons most knowledgeable regarding the negotiations between You and

2  FM Global regarding the Camp Fire.

3       RESPONSE:

4

5         **REQUESTS FOR PRODUCTION**

6       1.     All Documents that support or refute Your responses to the foregoing Requests for

7  Admission and Interrogatories.

8       RESPONSE:

9

10     2.     Documents sufficient to identify the nature and extent of Your ownership interest in

11  FM Global.

12     RESPONSE:

13

14     3.     Documents sufficient to identify the nature and extent of Your member status in FM

15  Global.

16     RESPONSE:

17

18     4.     All Documents that Maryellen Sebold considered or relied on in connection with the

19  Sebold Report and the opinions set forth therein.

20     RESPONSE:

21

22     5.     Documents sufficient to identify reinsurers who have reinsured FM Global's liability

23  under the FM Global Policy for damages caused by the Camp Fire and the terms of such reinsurance,

24  including all reinsurance policies and treaties.

25     RESPONSE:

26

27

28

14

6.     If you contend that the FM Global Policy does not insure any part of the damages discussed in the Sebold Report or the Proof of Claim, Documents sufficient to identify all factual and legal bases that support that contention.

RESPONSE:

7.     If you contend that the FM Global Policy does insure any part of the damages discussed in the Sebold Report or the Proof of Claim, Documents sufficient to identify all factual and legal bases that support that contention.

RESPONSE:

8.     All Communications between You and FM Global concerning the Camp Fire, including any claims You may have under the FM Global Policy because of the Camp Fire.

RESPONSE:

9.     All Communications between You and any insurer concerning the Camp Fire, including any claims You may have because of the Camp Fire.

RESPONSE:

10.     All Documents that You intend to rely on in support of Your Proof of Claim.

RESPONSE:

11.     Each insurance policy under which Adventist has coverage for damages arising from the Camp Fire.

RESPONSE:

12.     All Documents in any insurance files for claims concerning the Camp Fire submitted to FM Global or any other insurer, including, but not limited to, Documents entitled "Proof of Loss."

RESPONSE:

Case: 19-30088    Doc# 11617    Filed: 11/23/21    Entered: 11/23/21 18:46:37    Page 71 of 108

1    13.    All Communications with any insurer, including FM Global, concerning coverage
2  available for the Camp Fire or any damages caused by the Camp Fire.

3         RESPONSE:

4

5    14.    All Documents concerning the payment of at least $60 million from FM Global
6  related to damage caused by the Camp Fire.

7         RESPONSE:

8

9    15.    All Documents concerning the provision of shared services from You to AHFR since
10  the Camp Fire.

11         RESPONSE:

12

13    16.    All Documents concerning Your intent to rebuild any property You owned that was
14  damaged by the Camp Fire.

15         RESPONSE:

16

17    17.    Any Document which supports Your decision to elect to have business interruption
18  and/or extra expense coverage calculated under the FM Global Policy utilizing the gross earnings or
19  gross profit method.

20         RESPONSE:

21

22

23

24

25

26

27

28

1    DATED: September 13, 2021      BROWN RUDNICK LLP

2

3             By:   /s/ Eric R. Goodman
                 Eric R. Goodman (admitted *pro hac vice*)
4                  (EGoodman@brownrudnick.com)
                 One Financial Center
5                  Boston, Massachusetts 02111
                 Telephone: (617) 856-8200
6                  Facsimile: (617) 856-8201

7                  David J. Molton (SBN 262075)
                 (DMolton@brownrudnick.com)
8                  Seven Times Square
                 New York, New York 10036
9                  Telephone: (212) 209-4800
                 Facsimile: (212) 209-4801
10
                 *Counsel to the Fire Victim Trustee*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  BROWN RUDNICK LLP
   David J. Molton (SBN 262075)
2  (DMolton@brownrudnick.com)
   Seven Times Square
3  New York, New York 10036
   Telephone:     (212) 209-4800
4  Facsimile:     (212) 209-4801

5  BROWN RUDNICK LLP
   Joel S. Miliband (SBN 077438)
6  (JMiliband@brownrudnick.com)
   2211 Michelson Drive, Seventh Floor
7  Irvine, California 92612
   Telephone:     (949) 752-7100
8  Facsimile:     (949) 252-1514

9  *Attorneys for Fire Victim Trust*

10                UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF CALIFORNIA
11                    SAN FRANCISCO DIVISION

12  **In re:**                          | Bankruptcy Case
                                        | No. 19-30088 (DM)
13  **PG&E CORPORATION**
                                        | Chapter 11
14        **-and-**                     | (Lead Case)
                                        | (Jointly Administered)
15  **PACIFIC GAS AND ELECTRIC
    COMPANY,**                          | **FIRE VICTIM TRUSTEE'S FIRST SET
16                                      | OF REQUESTS FOR ADMISSION, FIRST
          **Debtors.**                  | SET OF INTERROGATORIES, AND
17                                      | FIRST SET OF DOCUMENT REQUESTS
    □  Affects PG&E Corporation         | TO FEATHER RIVER HOSPITAL, D/B/A
18                                      | ADVENTIST HEALTH FEATHER
    □  Affects Pacific Gas and Electric Company | RIVER
19  ■  Affects both Debtors

20  *All papers shall be filed in the Lead Case,*
21  *No. 19-30088 (DM)*

22

23

24

25

26

27

28

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure (the "Civil Rules"), Rules 9014, 7026, 7033, 7034 and 7036 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Section IX of the Fire Victim Claims Resolution Procedures (the "CRP"), the Honorable John K. Trotter (Ret.), in his capacity as the Fire Victim Trustee (the "Trustee"), by and through his undersigned counsel, submits to Feather River Hospital, d/b/a Adventist Health Feather River ("AHFR" or "You"), the following requests for admission (the "Requests for Admission"), interrogatories (the "Interrogatories"), and requests for production of documents (the "Requests for Production").  Please produce the documents by delivering the production media to Mr. Eric Goodman, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, within thirty (30) days of the service of the Requests for Production.  The Trustee further requests that AHFR respond to the Requests for Admission and the Interrogatories in accordance with Civil Rules 33 and 36.

## DEFINITIONS

The term "Adventist" shall mean Adventist Health System/West, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "AHFR" shall mean Feather River Hospital, d/b/a Adventist Health Feather River, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "Available Insurance Recoveries" shall have the same meaning as that term is used in Section 2.6 of the Fire Victim Trust Agreement.

The term "Camp Fire" shall mean the fire started on Thursday, November 8, 2018, in Northern California's Butte County.

The term "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other forms of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

The term "concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

The term "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

The term "Fire Victim Trust Agreement" shall mean the PG&E Fire Victim Trust Agreement dated as of July 1, 2020 that implements certain of the terms of the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020.

The term "FM Global" shall mean Factory Mutual Insurance Company, along with its agents, employees, attorneys, officers, directors, shareholders, members, representatives, subsidiaries, predecessors and/or successors.

The term "FM Global Policy" shall mean that Policy No. 1019191 issued by FM Global in favor of Adventist Health System / West and any subsidiary, and Adventist Health System / West's interest in any partnership or joint venture in which Adventist Health System / West has management control or ownership.

The term "Main Campus" shall mean the main hospital campus of Adventist Health Feather River that was located in the town of Paradise, California, including the upper and lower hospital.

The term "Proof of Claim" shall mean the Proof of Claim (Fire Claim Related) filed by Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River in the Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company.

The term "Sebold Report" shall mean the Expert Report of Maryellen Sebold dated February 24, 2021.

The term "Shared Services" shall mean the variety of centralized services and functions that Adventist claims are common and provided across all Adventist Health hospitals and clinics, including but not limited to Feather River Hospital d/b/a Adventist Health Feather River.

The term "Time Element" shall have the same meaning as that term is used in the FM Global Policy.

The terms "You" or "Your" and variants thereof mean AHFR.

**INSTRUCTIONS**

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Admission, Interrogatories, and Requests for Production, the following Instructions shall be followed:

3

1.      All responses shall comply with the requirements of the Civil Rules and the Bankruptcy Rules.

2.      Unless otherwise stated in a specific Request for Admission, Interrogatory, or Request for Production herein, the relevant time period shall be the period from the date of the Camp Fire to the present.

3.      These Requests for Admission, Interrogatories, or Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Admission, Interrogatories, or Requests for Production, such additional information is to be promptly produced.

4.      Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

5.      You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf.  You must produce all such Documents even if they were deleted or in draft form.  Without limitation, hardware where such data may be stored includes:  servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives.  Electronically stored Documents include any computerized data or content stored on electromagnetic media.  Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word

processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

6.     Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

7.     Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

8.     Documents attached to each other should not be separated; separate Documents should not be attached to each other.

9.     Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

10.    If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

        a.     Identify the type, title and subject matter of the Document;

        b.     State the place, date, and manner of preparation of the Document;

        c.     Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

        d.     Identify the legal privilege(s) and the factual basis for the claim.

11.    Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any

Documents are produced with redactions, a log setting forth the information requested in Instruction 10 above must be provided.

12. To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

13. If You object to any of these Requests for Admission, Interrogatories, or Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Admission, Interrogatory, or Request for Production, You shall respond to any other portions of such Admission, Interrogatory, or Request for Production as to which there is no objection and state with specificity the grounds of the objection.

14. The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Admission, Interrogatories, or Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Admission, Interrogatories, or Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Admission, Interrogatory, or Request for Production, so state in Your response to that Request for Admission, Interrogatory, or Request for Production.

15. If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

16. If You deny knowledge or information sufficient to answer an Interrogatory (or any part thereof), provide the name and address of each person known or believed to have such knowledge. Identify each person who assisted or participated in preparing and/or supplying any of the information given in answer to these Interrogatories.

## MANNER OF PRODUCTION

1. All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2. <u>Database Load Files and Production Media Structure</u>: Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3. <u>Electronic Documents and Data, Generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4. Emails and Attachments, and Other Email Account-Related Documents: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

5. Documents and Data Created or Stored in or by Structured Electronic Databases: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

        a.    XML format file(s);

        b.    Microsoft SQL database(s);

        c.    Access database(s); and/or

        d.    fixed or variable length ASCII delimited files.

6. Spreadsheets, Multimedia, and Non-Standard File Types: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.  "Other" Electronic Documents:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.  Paper Documents:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## **REQUESTS FOR ADMISSION**

1.  Admit that no insurer has denied coverage for any loss suffered by You because of the Camp Fire.

RESPONSE:

2.  Admit that FM Global has not denied coverage to You under the FM Global Policy for any loss caused by the Camp Fire.

RESPONSE:

3.  Admit that no insurer has denied coverage to You under any insurance policy for any loss caused by the Camp Fire.

RESPONSE:

4.  Admit that You have not received any Communications from any insurer indicating that it has denied coverage for any loss suffered by You because of the Camp Fire.

RESPONSE:

1         5.       Admit that You have not received any Communications from FM Global indicating

2    that FM Global has denied coverage for any loss caused by the Camp Fire.

3             <u>RESPONSE:</u>

4

5         6.       Admit that You are a member of FM Global.

6             <u>RESPONSE:</u>

7

8         7.       Admit that You have an ownership interest in FM Global.

9             <u>RESPONSE:</u>

10

11        8.       Admit that some or all of the damages discussed in Opinion 1 of the Sebold Report

12   are insured by the FM Global Policy or another policy of insurance.

13            <u>RESPONSE:</u>

14

15        9.       Admit that some or all of the damages discussed in Opinion 2 of the Sebold Report

16   are insured by the FM Global Policy or another policy of insurance.

17            <u>RESPONSE:</u>

18

19        10.     Admit that some or all of the damages discussed in Opinion 3 of the Sebold Report

20   are insured by the FM Global Policy or another policy of insurance.

21            <u>RESPONSE:</u>

22

23        11.     Admit that some or all of the damages discussed in Opinion 4 of the Sebold Report

24   are insured by the FM Global Policy or another policy of insurance.

25            <u>RESPONSE:</u>

26

27

28

1    12.    Admit that some or all of the damages discussed in Opinion 5a of the Sebold Report

2    are insured by the FM Global Policy or another policy of insurance.

3        RESPONSE:

4

5    13.    Admit that some or all of the damages discussed in Opinion 5b of the Sebold Report

6    are insured by the FM Global Policy or another policy of insurance.

7        RESPONSE:

8

9    14.    Admit that some or all of the damages discussed in Opinion 6a of the Sebold Report

10   are insured by the FM Global Policy or another policy of insurance.

11       RESPONSE:

12

13   15.    Admit that some or all of the damages discussed in Opinion 6b of the Sebold Report

14   are insured by the FM Global Policy or another policy of insurance.

15       RESPONSE:

16

17   16.    Admit that some or all of the damages discussed in Opinion 8a of the Sebold Report

18   are insured by the FM Global Policy or another policy of insurance.

19       RESPONSE:

20

21   17.    Admit that You have not violated any conditions or obligations or cooperation clauses

22   under the FM Global Policy.

23       RESPONSE:

24

25   18.    Admit that You have not violated any conditions or obligations or cooperation clauses

26   under any policy of insurance that covers losses caused by the Camp Fire.

27       RESPONSE:

28

1  19. Admit that You have not exercised reasonable efforts to obtain all Available Insurance

2 Recoveries for damages caused by the Camp Fire.

3   RESPONSE:

4

5  20. Admit that You have not vigorously pursued all insurance to which You are entitled

6 for damages caused by the Camp Fire.

7   RESPONSE:

8

9  21. Admit that You do not have a written agreement with Adventist regarding the

10 provision of shared services to AHFR.

11   RESPONSE:

12

13  22. Admit that You do not intend to rebuild the Main Campus.

14   RESPONSE:

15

16  23. Admit that you do not intend to rebuild the Main Campus on the same site with new

17 materials of like size, kind, and quality that existed on the date of loss.

18   RESPONSE:

19

20  24. Admit that you do not intend to rebuild the Main Campus on the same or another site,

21 but not to exceed the size and operating capacity that existed on the date of loss.

22   RESPONSE:

23

24  25. Admit that Your 2018 policy with FM Global had a limit of $1 billion and did not

25 contain a sublimit for locations exposed to California wildfire.

26   RESPONSE:

27

28

## **INTERROGATORIES**

1.    If You contend that You have exercised reasonable efforts to obtain all Available Insurance Recoveries for damages caused by the Camp Fire, explain the factual basis for that contention.

RESPONSE:

2.    Identify all efforts You have taken to recover under any policy of insurance, including the FM Global Policy, for damages caused by the Camp Fire.

RESPONSE:

3.    Identify each category of damages discussed in the Sebold Report for which AHFR has insurance coverage.

RESPONSE:

4.    For each category of damages discussed in the Sebold Report, identify the amount of insurance coverage available to AHFR under any policy of insurance, including the FM Global Policy.

RESPONSE:

5.    Identify the amount of damages suffered by AHFR because of the Camp Fire that are insured by a policy of insurance, including the FM Global Policy.

RESPONSE:

6.    Identify all damages You sustained because of the Camp Fire that you did not submit to FM Global or any other insurer.

RESPONSE:

7. Identify any loss caused by the Camp Fire for which any insurer, including FM Global, has denied coverage to You.

RESPONSE:

8. Identify all Communications between You and any insurer, including FM Global, where the insurer has denied coverage for damages caused by the Camp Fire.

RESPONSE:

9. Identify all proofs of loss submitted by You to FM Global, or any other insurer, on account of the Camp Fire.

RESPONSE:

10. Identify all property You owned that was destroyed by the Camp Fire that was covered by insurance and the amount of insurance coverage for such property.

RESPONSE:

11. Identify all written agreements between You and Adventist for the provision of shared services.

RESPONSE:

12. Identify the cost to rebuild the Main Campus to the same condition that existed on the date of loss.

RESPONSE:

13. Explain when you anticipate reconstruction of the Main Campus.

RESPONSE:

14

1    14.    Identify the method You elected to have Time Element loss calculated under the FM
2  Global Policy.

3         RESPONSE:

4

5    15.    Identify the persons most knowledgeable regarding the negotiations between You and
6  FM Global regarding the Camp Fire.

7         RESPONSE:

8

9                    **REQUESTS FOR PRODUCTION**

10   1.    All Documents that support or refute Your responses to the foregoing Requests for
11  Admission and Interrogatories.

12        RESPONSE:

13

14   2.    Documents sufficient to identify the nature and extent of Your ownership interest in
15  FM Global.

16        RESPONSE:

17

18   3.    Documents sufficient to identify the nature and extent of Your member status in FM
19  Global.

20        RESPONSE:

21

22   4.    All Documents that Maryellen Sebold considered or relied on in connection with the
23  Sebold Report and the opinions set forth therein.

24        RESPONSE:

25

26

27

28

1        5.      Documents sufficient to identify reinsurers who have reinsured FM Global's liability

2    under the FM Global Policy for damages caused by the Camp Fire and the terms of such reinsurance,

3    including all reinsurance policies and treaties.

4        RESPONSE:

5

6        6.      If you contend that the FM Global Policy does not insure any part of the damages

7    discussed in the Sebold Report or the Proof of Claim, Documents sufficient to identify all factual and

8    legal bases that support that contention.

9        RESPONSE:

10

11       7.      If you contend that the FM Global Policy does insure any part of the damages

12   discussed in the Sebold Report or the Proof of Claim, Documents sufficient to identify all factual and

13   legal bases that support that contention.

14       RESPONSE:

15

16       8.      All Communications between You and FM Global concerning the Camp Fire,

17   including any claims You may have under the FM Global Policy because of the Camp Fire.

18       RESPONSE:

19

20       9.      All Communications between You and any insurer concerning the Camp Fire,

21   including any claims You may have because of the Camp Fire.

22       RESPONSE:

23

24       10.     All Documents that You intend to rely on in support of Your Proof of Claim.

25       RESPONSE:

26

27

28

16

1    11.    Each insurance policy under which AHFR has coverage for damages arising from the

2    Camp Fire.

3           RESPONSE:

4

5    12.    All Documents in any insurance files for claims concerning the Camp Fire submitted

6    to FM Global or any other insurer, including, but not limited to, Documents entitled "Proof of Loss."

7           RESPONSE:

8

9    13.    All Communications with any insurer, including FM Global, concerning coverage

10   available for the Camp Fire or any damages caused by the Camp Fire.

11          RESPONSE:

12

13   14.    All Documents concerning the payment of at least $60 million from FM Global

14   related to damage caused by the Camp Fire.

15          RESPONSE:

16

17   15.    All Documents concerning the provision of shared services from Adventist to You

18   since the Camp Fire.

19          RESPONSE:

20

21   16.    All Documents concerning Your intent to rebuild any property You owned that was

22   damaged by the Camp Fire.

23          RESPONSE:

24

25   17.    Any Document which supports Your decision to elect to have business interruption

26   and/or extra expense coverage calculated under the FM Global Policy utilizing the gross earnings or

27   gross profit method.

28          RESPONSE:

DATED: September 13, 2021                    BROWN RUDNICK LLP


                                            By:   /s/ Eric R. Goodman
                                                  Eric R. Goodman (admitted *pro hac vice*)
                                                  (EGoodman@brownrudnick.com)
                                                  One Financial Center
                                                  Boston, Massachusetts 02111
                                                  Telephone: (617) 856-8200
                                                  Facsimile: (617) 856-8201

                                                  David J. Molton (SBN 262075)
                                                  (DMolton@brownrudnick.com)
                                                  Seven Times Square
                                                  New York, New York 10036
                                                  Telephone: (212) 209-4800
                                                  Facsimile: (212) 209-4801

                                                  *Counsel to the Fire Victim Trustee*

(Redacted Version
of Document to Be
Filed Under Seal)

**EXHIBIT CC**

REDACTED

# REDACTED

REDACTED

# REDACTED



## Group Information

| **+ Add Claimant** | | **% Change** | **☆ Remove** |

Group ID: 168121

**Group Members:**

| Claimant ID | Name | |
|---|---|---|
| 1004200 | Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River | |

## Documents

**👤 Claimant Documents**

**Uploaded Files:**

**👁 Hide Documents**    **⬆ Upload Claimant Documents**

2021-10-20 Supp Attm to Claims Questionnaire Adventist.pdf has been uploaded successfully. To upload another file, repeat the process.

Filter: ALL ▾

| Document ID | Document Type | Upload Date | |
|---|---|---|---|
| 1020495 | Narrative Statement - 2021-10-20 Supplemental Attachment to Claims Questionnaire Adventist | 10/20/2021 | 🗑 |
| 1020424 | Other Supporting Document - AHFVT128770 - AHFVT130704.zip | 10/20/2021 | 🗑 |

# EXHIBIT DD

Case: 19-30088    Doc# 11617    Filed: 11/23/21    Entered: 11/23/21 18:46:37    Page 99
of 108

| From: | Ball, Robin |
|---|---|
| Sent: | Monday, November 22, 2021 4:17 PM |
| To: | Goodman, Eric R.; Winthrop, Rebecca J. |
| Cc: | Molton, David J.; Sieger-Grimm, Susan |
| Subject: | RE: Fire Victim Trust/Request to Meet and Confer |

Eric: Again, we are producing additional documents in response to your deficiency notices, which, unlike the discovery the Trust improperly served, are the method specified in the CRP for obtaining information about a Fire Victim Claim. If the Trust thinks those notices are inadequate and do not encompass everything the Trust believes it needs, then it can issue a further deficiency notice (to which we will similarly respond), or we can address the matter informally as described below. Consequently, it remains our view that your motion is not only ill-founded, but also unnecessary.

Best regards,

**Robin Ball** | Partner
Norton Rose Fulbright US LLP
555 South Flower Street, Forty-First Floor, Los Angeles, California 90071, United States
Tel +1 213 892 9366 | Fax +1 213 892 9494
robin.ball@nortonrosefulbright.com

## NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com
**From:** Goodman, Eric R. [mailto:EGoodman@brownrudnick.com]
**Sent:** Sunday, November 21, 2021 5:32 PM
**To:** Ball, Robin <robin.ball@nortonrosefulbright.com>; Winthrop, Rebecca J.
<rebecca.winthrop@nortonrosefulbright.com>
**Cc:** Molton, David J. <DMolton@brownrudnick.com>; Sieger-Grimm, Susan <SSieger-Grimm@brownrudnick.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer

Robin,

Thank you for the clarification. Based on your response, my understanding is that the FVT is not willing to take the Rule 2004 motion off calendar given that Adventist has not agreed to produce the documents requested.

Best Regards,
Eric

## brownrudnick

**Eric R. Goodman**
Partner

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
T: 202.536.1740
M: 216.235.4242
egoodman@brownrudnick.com

**From:** Ball, Robin <robin.ball@nortonrosefulbright.com>
**Sent:** Sunday, November 21, 2021 7:45 PM
**To:** Goodman, Eric R. <EGoodman@brownrudnick.com>; Winthrop, Rebecca J.
<rebecca.winthrop@nortonrosefulbright.com>
**Cc:** Molton, David J. <DMolton@brownrudnick.com>; Sieger-Grimm, Susan <SSieger-Grimm@brownrudnick.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer

---

CAUTION: **External E-mail. Use caution accessing links or attachments.**

---

Eric:

I am not sure what was unclear about my email. Again, the discovery you served was invalid, *ultra vires,* and contrary to the procedures specified in the CRP. We consequently are not proposing to respond to your discovery. We *are* responding to your deficiency notice, which, again, we assume seeks what the Trust believes is necessary to evaluate Adventist's claim. If the deficiency notices are inadequate in your view, then the Trust may elect to issue additional deficiency notices. And again, we remain willing, as we also have done before, to address informal requests and, as we have previously proposed, to confer about other such requests.

Best regards,

**Robin Ball** | Partner
Norton Rose Fulbright US LLP
555 South Flower Street, Forty-First Floor, Los Angeles, California 90071, United States
Tel +1 213 892 9366 | Fax +1 213 892 9494
robin.ball@nortonrosefulbright.com

## NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com

**From:** Goodman, Eric R. [mailto:EGoodman@brownrudnick.com]
**Sent:** Sunday, November 21, 2021 12:27 PM
**To:** Ball, Robin <robin.ball@nortonrosefulbright.com>; Winthrop, Rebecca J.
<rebecca.winthrop@nortonrosefulbright.com>
**Cc:** Molton, David J. <DMolton@brownrudnick.com>; Sieger-Grimm, Susan <SSieger-Grimm@brownrudnick.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer

Robin,

We are again seeking confirmation that Adventist will produce all documents requested by the deficiency notices and the discovery requests. In your email, you state that Adventist will respond to the deficiency notices. You also indicate that Adventist will respond to any additional deficiency notices, and that Adventist is willing to address informal requests. I also understand your position to be that you think the discovery requests we served were improper and inconsistent with the CRP. I cannot tell from your email if Adventist is offering to produce all documents requested by the deficiency notices and the discovery requests to Adventist (however you view them). Can you please answer that question? If the answer is yes, I would also request confirmation that Adventist and/or FM Global will produce a redaction/privilege log for any documents that are redacted.

Best Regards,
Eric

**brown**rudnick

**Eric R. Goodman**
Partner

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
T: 202.536.1740
M: 216.235.4242
egoodman@brownrudnick.com
www.brownrudnick.com

**From:** Ball, Robin <robin.ball@nortonrosefulbright.com>
**Sent:** Friday, November 19, 2021 1:02 PM
**To:** Goodman, Eric R. <EGoodman@brownrudnick.com>; Winthrop, Rebecca J.
<rebecca.winthrop@nortonrosefulbright.com>
**Cc:** Molton, David J. <DMolton@brownrudnick.com>; Sieger-Grimm, Susan <SSieger-Grimm@brownrudnick.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer

---

CAUTION: External E-mail. Use caution accessing links or attachments.

---

Eric:

Thank you for getting back to us. For the notices of deficiency: 1) We will wait to hear whether there is anything further on the tax returns beyond what we submitted with our Claims Questionnaire, but for now the Trust has what it needs; 2) We will treat the notice as applying to the entirety of our claim, rather than to the single address specified in the notice; 3) We will make a request to FM Global that it provide us a copy of its claim file; we understand that it has obligations under CA law in that regard and will ask that it comply with them. While FM Global may be able to redact privileged information, we will provide you what it gives us without further redactions.

As to taking the 2004 motion off calendar, we have repeatedly made clear that the discovery requests you served were improper and inconsistent with the CRP. As explained in our call Saturday, and outlined in my email below, we are responding to the deficiency notices the Trust issued on November 1, 2021, which we assume seek the information the Trust believes is necessary to evaluate our claim. We will, of course, continue to respond to any additional deficiency notices the Trust may issue in accordance with the CRP, as we have done before. And we remain willing, as we also have done before, to address informal requests and, as we have previously proposed, to confer about other such requests.

As to timing, as I indicated in our call, we expect to make rolling submissions to the Trust. Given the holiday next week, we expect to begin making such submissions by December 1, 2021. We are still working to collect emails and I cannot say, at this point, what the total volume is or when we will be able to complete the production.

Please let us know by Noon ET/9 a.m. PST on Monday, November 18, 2021, whether the Trust is amenable to taking the Rule 2004 motion off calendar.

Regards,

**Robin Ball** | Partner
Norton Rose Fulbright US LLP

## NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com

**From:** Goodman, Eric R. [mailto:EGoodman@brownrudnick.com]
**Sent:** Wednesday, November 17, 2021 6:57 PM
**To:** Ball, Robin <robin.ball@nortonrosefulbright.com>; Winthrop, Rebecca J.
<rebecca.winthrop@nortonrosefulbright.com>
**Cc:** Molton, David J. <DMolton@brownrudnick.com>; Sieger-Grimm, Susan <SSieger-Grimm@brownrudnick.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer


Robin,
The BIL team has identified the tax returns. We will let you know if any schedules are missing. I can also confirm that the BIL deficiency is intended to include all loss locations encompassed within the Adventist claim. Further, we would ask that Adventist obtain the insurer's claim file.
Regarding your request that we take the Rule 2004 motion off calendar: our understanding is that Adventist now intends to comply with the prior requests and will produce all of the insurance information that was previously requested, whether through the deficiency notice or the discovery requests. If true, this could obviate the need for Rule 2004 discovery on Adventist at this time. Can you please confirm that our understanding is correct and the date by which Adventist can commit to providing this information. Further, since part of the Rule 2004 discovery is directed at FM Global, we will also need confirmation that Adventist can and will obtain the insurer's claim file, without redaction. If you want to discuss further, please let me know.
Best Regards,
Eric

## brownrudnick

**Eric R. Goodman**
Partner

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
T: 202.536.1740
M: 216.235.4242
egoodman@brownrudnick.com
www.brownrudnick.com


**From:** Ball, Robin <robin.ball@nortonrosefulbright.com>
**Sent:** Tuesday, November 16, 2021 3:33 PM
**To:** Goodman, Eric R. <EGoodman@brownrudnick.com>
**Cc:** Winthrop, Rebecca J. <rebecca.winthrop@nortonrosefulbright.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer

CAUTION: External E-mail. Use caution accessing links or attachments.


Eric: I wanted to follow up on our call Saturday. I realize you have some other things going on, and thought you might not get back to us until Thursday, but, as I indicated Saturday, we hope to hear back sooner, particularly on our proposal

that, since we will be responding to the deficiency notices, you take the 2004 motion off calendar. As noted, while we think the motion to take discovery under the Federal Rules is not valid, given that the Trust has requested information through deficiency notices in accordance with the CRP procedures, and we are responding to those requests, the motion and the attendant burden and expense seem unnecessary. Given that an opposition is due next Tuesday, Nov. 23, 2021, your early response would be greatly appreciated.

As to the substance of the deficiency notices: I assume you got the bates numbers for the tax returns we previously produced. Please let us know as soon as you can whether your people just missed these (which seems to be the case, since the deficiency notice says no returns were submitted), whether you think there is something missing, or whether there is some other issue. (I note that the 2020 return is not yet available.)

You are also confirming whether, as you indicated in the call Friday, that while the business income loss deficiency notice references a single loss location address, it is not meant to be limited to that address but is intended to include the other loss locations encompassed in Adventist's claim. As discussed, given the substance of the requests, that seemed likely, but you wanted to confirm that it was the case.

You are also confirming whether request #1 in the business income loss deficiency notice is meant to be a request that Adventist obtain the insurer's claim file, or is instead, as you thought, meant to be a reference to Adventist's own insurance claim file.

Please get back to us about these matters as soon as possible.

Regards,

**Robin Ball** | Partner
Norton Rose Fulbright US LLP
555 South Flower Street, Forty-First Floor, Los Angeles, California 90071, United States
Tel +1 213 892 9366 | Fax +1 213 892 9494
robin.ball@nortonrosefulbright.com

## NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com

**From:** Ball, Robin
**Sent:** Saturday, November 13, 2021 10:40 AM
**To:** Goodman, Eric R. <EGoodman@brownrudnick.com>; Winthrop, Rebecca J.
<rebecca.winthrop@nortonrosefulbright.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer

Eric: As discussed, the bates range for the tax returns we produced is AHFVT126482-AHFVT127445.

**Robin Ball** | Partner
Norton Rose Fulbright US LLP
555 South Flower Street, Forty-First Floor, Los Angeles, California 90071, United States
Tel +1 213 892 9366 | Fax +1 213 892 9494
robin.ball@nortonrosefulbright.com

## NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com

**From:** Goodman, Eric R. [mailto:EGoodman@brownrudnick.com]
**Sent:** Friday, November 12, 2021 12:03 PM

I can do 6:00PM, ET today and noon, ET on Saturday.

Best Regards,
Eric

**brown**rudnick

**Eric R. Goodman**
Partner

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
T: 202.536.1740
M: 216.235.4242
egoodman@brownrudnick.com
www.brownrudnick.com

**From:** Winthrop, Rebecca J. <rebecca.winthrop@nortonrosefulbright.com>
**Sent:** Friday, November 12, 2021 2:58 PM
**To:** Goodman, Eric R. <EGoodman@brownrudnick.com>
**Cc:** Ball, Robin <robin.ball@nortonrosefulbright.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer

CAUTION: External E-mail. Use caution accessing links or attachments.

Hi Eric:  Following up on my email below, we did not receive a response from you so assume the times suggested for this morning did not work for your schedule.  We are still available this afternoon at 5:30 p.m. PST, or Saturday or Sunday at 8:30 a.m. PST.  If none of those times work, please let us know what times on Monday work (we are available basically any time that day except between 9-10:30 a.m. PST).

Thank you,
Rebecca.

**Rebecca J. Winthrop**
**NORTON ROSE FULBRIGHT US LLP**
**Tel +1 213 892 9346**
**rebecca.winthrop@nortonrosefulbright.com**

**From:** Winthrop, Rebecca J.
**Sent:** Thursday, November 11, 2021 12:01 PM
**To:** 'Goodman, Eric R.' <EGoodman@brownrudnick.com>
**Cc:** Ball, Robin <robin.ball@nortonrosefulbright.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer

Hi Eric:  I had suggested tomorrow morning PST because unfortunately I am traveling tomorrow afternoon and will be in transit starting at noon PST.  We could do earlier on Friday (i.e., 11 a.m. PST or 11:30 a.m. PST or basically any time

starting at 7:00 a.m. PST), or late Friday afternoon (i.e., 5:30 p.m. PST). Alternatively, we could do Saturday or Sunday at 8:30 a.m. PST, if any of those times work for you.

Rebecca J. Winthrop
**NORTON ROSE FULBRIGHT US LLP**
Tel +1 213 892 9346
**rebecca.winthrop@nortonrosefulbright.com**

**From:** Goodman, Eric R. [mailto:EGoodman@brownrudnick.com]
**Sent:** Thursday, November 11, 2021 10:48 AM
**To:** Winthrop, Rebecca J. <rebecca.winthrop@nortonrosefulbright.com>
**Cc:** Ball, Robin <robin.ball@nortonrosefulbright.com>
**Subject:** RE: Fire Victim Trust/Request to Meet and Confer

I could do 3:00PM, ET tomorrow.

# **brown**rudnick

**Eric R. Goodman**
Partner

BROWN RUDNICK LLP
601 Thirteenth Street NW Suite 600
Washington, DC 20005
T: 202.536.1740
M: 216.235.4242
egoodman@brownrudnick.com
www.brownrudnick.com

**From:** Winthrop, Rebecca J. <rebecca.winthrop@nortonrosefulbright.com>
**Sent:** Thursday, November 11, 2021 1:06 PM
**To:** Goodman, Eric R. <EGoodman@brownrudnick.com>
**Cc:** Ball, Robin <robin.ball@nortonrosefulbright.com>
**Subject:** Fire Victim Trust/Request to Meet and Confer

CAUTION: External E-mail. Use caution accessing links or attachments.

Mr. Goodman:

We would like to meet and confer with you as to some questions we have concerning the deficiency notices recently posted by the Trust and as to the Rule 2004 motion filed Tuesday. Are there times when we could speak tomorrow morning (Pacific Time), or, failing that, Monday? Please let us know as soon as possible.

Regards,

Rebecca Winthrop

**Rebecca J. Winthrop**

Norton Rose Fulbright US LLP
555 South Flower Street, Forty-First Floor, Los Angeles, California 90071, United States
Tel +1 213 892 9346 | Fax +1 213 892 9494
rebecca.winthrop@nortonrosefulbright.com

*Law around the world*
nortonrosefulbright.com

**CONFIDENTIALITY NOTICE:** This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

****************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

****************************************************************************

****************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

****************************************************************************

*********************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

*********************************************************************


*********************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

*********************************************************************


*********************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

*********************************************************************