WEIL, GOTSHAL & MANGES LLP
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for the Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR ONE HUNDRED EIGHTH OMNIBUS OBJECTION TO CLAIMS**<br><br>[Related to Docket Nos. 11230 & 11476]<br><br>Date: February 2, 2022<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

# TABLE OF CONTENTS

                                                                                                                                                       **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 2

      A.     Claimants Have Changed Their Theory of the Case ............................................ 2

      B.     Assembly Bill 1969 and the Two "Separate and Distinct" Feed-in-Tariff Programs .............................................................................................................. 2

      C.     Senate Bill 380 ..................................................................................................... 3

      D.     The Utility Seeks CPUC Clarification During the Transition to ReMAT ........... 4

      E.     The Claimants' CPUC Action .............................................................................. 5

      F.     Winding Creek Successfully Challenges ReMAT ............................................... 6

ARGUMENT ................................................................................................................................ 6

I.     The Pre-ReMAT Claims are Precluded by the CPUC Dismissal .................................... 7

      A.     Res Judicata Bars the Pre-ReMAT Claims .......................................................... 7

      B.     Collateral Estoppel Bars the Identical Issues Decided in the CPUC Action ....... 9

II.     Even if the Pre-ReMAT Claims Were Not Precluded by the CPUC Action, They Would Be Time-Barred as a Mater of Law ........................................................................ 10

      A.     Any Claim Under the Utility's Filed Tariffs Expired in 2017 .......................... 11

      B.     Any Claim Under the California Commercial Code Expired in 2017 .............. 11

      C.     Any Claim Under Section 399.20 of the Utilities Code Expired Pre-Petition ... 12

      D.     Any Claim Under PURPA Expired in 2017 ...................................................... 12

III.     In Any Event, There Is No Substantive Merit to the Claims ....................................... 13

      A.     The Pre-ReMAT Claims Lack Merit .................................................................. 13

      B.     Winding Creek's ReMAT Claim Lacks Merit .................................................. 15

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allco Renewable Energy Ltd. v. Mass. Elec. Co.*,
   875 F.3d 64 (1st Cir. 2017) ................................................................................................ 15

*California v. IntelliGender, LLC*,
   771 F.3d 1169 (9th Cir. 2014) ............................................................................................... 7

*Colebrook v. CIT Bank, N.A.*,
   64 Cal. App. 5th 259, 263 (Ct. App. 2021) ....................................................................... 7, 8

*Crowley v. Mod. Faucet Mfg. Co.*,
   44 Cal. 2d 321, 323 (1955) ..................................................................................................... 8

*Jensen-Edwards v. Nationstar Mortg., LLC (In re Jensen-Edwards)*,
   535 B.R. 336 (Bankr. D. Idaho 2015) ................................................................................. 11

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
   470 U.S. 373 (1985) ................................................................................................................ 7

*Meridian Fin. Servs., Inc. v. Phan*,
   67 Cal. App. 5th 657, 686 (Ct. App. 2021) ....................................................................... 7, 9

*Murray v. Alaska Airlines, Inc.*,
   50 Cal. 4th 860 (2010) ............................................................................................................ 7

*N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*,
   117 F. Supp. 2d 211 (N.D.N.Y. 2000) ................................................................................. 12

*Riggs v. Curran*,
   863 F.3d 6 (1st Cir. 2017) ............................................................................................... 12, 13

*Romano v. Rockwell Int'l, Inc.*,
   14 Cal. 4th 479 (1996) .......................................................................................................... 11

*In re Rose*,
   22 Cal. 4th 430 (2000) ............................................................................................................ 7

*Sedell v. Wells Fargo of Cal. Ins. Servs., Inc.*,
   No. C 10-4043 SBA, 2012 WL 3017541, at *8 (N.D. Cal. July 23, 2012) ........................ 11

*Smith v. Lachter (In re Smith)*,
   293 B.R. 220 (B.A.P. 9th Cir. 2003) ................................................................................... 10

*Spear v. Cal. State Auto. Ass'n*,
   2 Cal. 4th 1035 (1992) .......................................................................................................... 11

*Takahashi v. Bd. of Educ.*,
    202 Cal. App. 3d 1464 (Ct. App. 1988) ............................................................................... 8

*Toscano v. Adam*,
    812 F. App'x 687 (9th Cir. 2020) ..................................................................................... 11

*Wheeler v. Beard*,
    No. 03-4826, 2005 U.S. Dist. LEXIS 9778 (E.D. Pa. May 19, 2005) ............................. 11

*Winding Creek Solar LLC v. Pac. Gas & Elec. Co.*,
    Case No. 20-cv-02602-HSG (N.D. Cal.), Dkt. No. 7 ......................................................... 2

*Winding Creek Solar LLC v. Peevey*,
    293 F. Supp. 3d 980 (N.D. Cal. 2017) (Donato, J.) *aff'd sub nom.*, *Winding Creek
    Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019) ...................................................... 2

**Statutes**

11 U.S.C. § 108 .......................................................................................................................... 10

28 U.S.C. § 1658 ........................................................................................................................ 12

28 U.S.C. § 2462 ........................................................................................................................ 12

Cal. Civ. Proc. Code § 337 ............................................................................................... 11, 12, 13

Cal. Civ. Proc. Code § 338 ......................................................................................................... 12

Cal. Com. Code § 2205 .............................................................................................................. 11

Cal. Com. Code § 2206 .............................................................................................................. 11

Cal. Com. Code § 2725 .............................................................................................................. 11

Cal. Pub. Utils. Code § 399.20 ............................................................................................. *passim*

Cal. Pub. Utils. Code § 453 .......................................................................................................... 7

Cal. Pub. Utils. Code § 1709 ........................................................................................................ 7

**Other Authorities**

53 Cal. Jur. 3d Pub. Utils. § 133 .................................................................................................. 7

Pacific Gas and Electric Company (the "**Utility**"),[1] submits this reply (the "**Reply**") in further support of the *Reorganized Debtors' One Hundred Eighth Omnibus Objection to Claims (PURPA Claims)* [Dkt. No. 11230] (the "**Objection**"), and in response to the Claimants' opposition [Dkt. No. 11476] (the "**Opposition**").[2]

## PRELIMINARY STATEMENT[3]

The Claimants seemingly have no regard for the conservation of judicial resources. After litigating in this Court for over two years that the CPUC-imposed cap under ReMAT (defined below) gives rise to their Claims, the Claimants now shift their focus and espouse that the Utility was obligated to execute contracts submitted between June 7 and July 22, 2013 under an earlier tariff program ("**Pre-ReMAT**"). Among the many problems with this contention is that the CPUC previously dismissed it for failure to state a claim, finding that the Claimants were ineligible for the Pre-ReMAT program under which the contracts were submitted (the "**CPUC Dismissal**"). Thus, any claim predicated on Pre-ReMAT-alleged contracts is unequivocally barred by res judicata and collateral estoppel. In addition, to the extent the Claimants allege that the Utility breached some obligation to enter into contracts in 2013 not addressed by the CPUC Dismissal, the availability to pursue any such claims expired prior to the January 29, 2019 petition date (the "**Petition Date**") and are time-barred. Finally, even if not barred by res judicata, collateral estoppel, or the applicable statute of limitations, none of the Claimants can succeed on the merits of their Claims because the Utility was never obligated to enter into

---

[1] The Utility, together with PG&E Corporation, are collectively, the "**Debtors**," or as reorganized pursuant to the *Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8053], the "**Reorganized Debtors**" in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

[2] The "**Claimants**" and their respective claims are as follows: Winding Creek Solar LLC (No. 78665), Foothill Solar LLC (No. 78580), Hollister Solar LLC (No. 78304), Kettlemen Solar LLC (No. 78560), Vintner Solar LLC (No. 70884), Bear Creek Solar LLC (No. 78620), and Allco Renewable Energy Limited (No. 76149) (collectively, the "**Claims**").

[3] Unless otherwise indicated all emphasis is added and all internal citations and quotations are omitted. All references to Ex. [●] are to exhibits attached to the Declaration of Theodore E. Tsekerides filed contemporaneously herewith. References to AP Dkt. No. [●] are to docket entries in Adv. Pro. No. 19-03049 (N.D. Cal) (the "**Adversary Proceeding**"). Capitalized terms not defined herein have the meaning ascribed to them in the Objection or Opposition, as applicable.

any contracts with the Claimants and no valid contracts exist. Accordingly, there is no basis for any of the Claims to survive and no relief for this Court, or any other court, to provide.[4]

## FACTUAL BACKGROUND

### A. Claimants Have Changed Their Theory of the Case

On October 20, 2019, the Claimants initiated the Adversary Proceeding against the Utility. In describing the nature of the action, the Claimants alleged that the Utility refused to execute written contracts "for one simple reason"—the "cap on [the Utility's] obligation to purchase energy and capacity from Plaintiffs' facilities." AP Dkt. No. 1 ¶¶ 3–5. According to the Claimants, the underpinnings of their Claims were the findings and conclusions in two federal court decisions relating to the CPUC procurement program known as the Renewable Market Adjusting Tariff ("**ReMAT**").[5] Importantly, the Winding Creek Litigation *only* challenged ReMAT and did not address, in any way, ReMAT's predecessor, Pre-ReMAT.[6] *See Peevey*, 293 F. Supp. 3d at 981 (Winding Creek sued the CPUC "for a declaration that three CPUC orders conflict with federal law and consequently violate the Supremacy Clause of the United States Constitution. The CPUC orders set up a procurement program called Re-MAT"). Therefore, the only cap ever "declared unlawful" in the Winding Creek Litigation, upon which the Adversary Proceeding is predicated, was under ReMAT.

### B. Assembly Bill 1969 and the Two "Separate and Distinct" Feed-in-Tariff Programs

In 2006, the California legislature enacted Assembly Bill ("**AB**") 1969, adding Section 399.20 to the California Public Utilities Code (the "**Utilities Code**"). *See* Ex. A (CPUC Dismissal) at 3. Section 399.20 required state electric corporations, such as the Utility, to establish a new feed-in-tariff ("**FiT**") program "specifically for *public water and wastewater agencies* to own and operate renewable energy facilities" (the "**Wastewater Program**"). *Id.* at 4. The Wastewater Program was available on a first-

---

[4] The Utility reserved the right to object to the Claims "on any ground, and to amend, modify, or supplement [the] Objection." Obj. at 9–10.

[5] As the Claimants conceded in their statement of the case on appeal of this Court's dismissal of their Adversary Proceeding: "This matter follows this Court's decision in *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980 (N.D. Cal. 2017) (Donato, J.) *aff'd sub nom.*, *Winding Creek Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019)" (the "**Winding Creek Litigation**"). *See Winding Creek Solar LLC v. Pac. Gas & Elec. Co.*, Case No. 20-cv-02602-HSG (N.D. Cal.), Dkt. No. 7 at 6.

[6] The Claimants' Adversary Complaint refers to this program as "Pre-REMAT." *See* AP Dkt. No. 1 ¶ 23. The Opposition refers to this same program as "AB1969 feed-in tariff" or "AB1969 FIT." *See* Opp. at 2. The Utility refers to the program as "Pre-ReMAT."

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

come first-served basis for eligible generators up to a 250 megawatts ("**MW**") statewide program cap. *See id.* at 4 (citing Utilities Code § 399.20(e)). Although none of the Claimants are (or have ever been) public water or wastewater agencies, and are thus ineligible for the Wastewater Program, it is under that program they submitted the contracts they now claim the Utility wrongfully failed to execute.

On July 27, 2007, the CPUC issued a decision implementing the Wastewater Program. *See* Ex. B (D.07-07-027). The CPUC also directed PG&E and one other utility to create a ***separate*** program to provide a similar opportunity to small renewable generators other than public water or wastewater agencies (the "**Renewable Program**"). *See id.* at 43–48. Although the Claimants refer to these two programs collectively as AB1969 FIT, *see, e.g.*, Opp. at 2–4,[7] the Wastewater Program and the Renewable Program were "***separate and distinct***," with unique caps,[8] tariffs, and standard contracts. *See* Ex. B (D.07-07-027) at 43. The Claimants conceded as much in their CPUC Action (defined below) complaint. *See* Ex. C (CPUC Complaint) at 3–4. The Utility subsequently filed two separate tariffs—one for the Wastewater Program, and another for the Renewable Program—both of which the CPUC approved with certain modifications on February 20, 2008. *See* Ex. C (CPUC Complaint) at 4 & n.10.

### C. Senate Bill 380

In 2008, the California legislature enacted Senate Bill ("**SB**") 380, which amended Section 399.20 to require electrical corporations to file a tariff making the program available to any customer. *See* Ex. A (CPUC Dismissal) at 5. SB 380 expanded AB 1969 beyond public water and wastewater agencies and increased the applicable cap "from 250 MW statewide to 500 MW." *Id.* Relevant here, the Utility's Renewable Program eventually became fully subscribed, but capacity remained under the Wastewater Program. *See id.* at 4.

Crucially, SB 380 was ***not*** self-executing. *See id.* at 10. Indeed, SB 380's preamble "specifically notes that implementation of the bill would require an order or other action of the [CPUC]." *Id.* at 9. It ultimately took the CPUC until May 27, 2012 to issue a decision implementing SB 380 and subsequent legislation. *See id.* at 5. That decision also established ReMAT and directed the Utility to file a new

---

[7] *See also* Ex. A (CPUC Dismissal) at 4 ("The combined FiT program was often referred to as the Section 399.20 FiT despite the fact that Section 399.20 only applied to public water and waste water agencies. The program is also commonly called the FiT program.").

[8] *See* Ex. B (D.07-07-027) at 43 (imposing 250 MW limit (prorated per utility) for the Wastewater Program and a 228.4 MW limit for the Renewable Program).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

proposed tariff schedule based on the changes. *See id.* During the transition to ReMAT, the Utility's separate tariffs under the Wastewater Program and the Renewable Program—which the CPUC approved in 2008—***remained in effect*** until they closed on July 24, 2013. *See id.* at 5–6. Thus, the Claimants' Opposition incorrectly states that the Wastewater Program "was repealed" by SB 380. Opp. at 5 n.6.

### D. The Utility Seeks CPUC Clarification During the Transition to ReMAT

On April 5, 2013, the Utility sought CPUC clarification "that entities that are ***not*** public water or public wastewater agencies are ***ineligible*** to participate in the tariff and standard contract available to public and wastewater agencies." Ex. A (CPUC Dismissal) at 6–7. This was necessary because, after the Renewable Program became fully subscribed, the Utility received inquiries from entities that were "not public water and wastewater agencies" regarding the ability to execute power purchase agreements ("**PPAs**") under the Wastewater Program, which had remaining capacity. *See* Ex. D (PGE Clarification Motion) at 4. In seeking clarification, the Utility explained that it had declined to execute Wastewater Program PPAs with such entities because doing so would be inconsistent with (i) the CPUC's implementation of the two distinct Pre-ReMAT programs, and (ii) the Utility's administration of the Wastewater Program tariff. *See id.*

On July 23, 2013, Claimant Allco Renewable Energy Limited ("**Allco**") filed its own clarification motion with the CPUC seeking a declaration that restricting the Wastewater Program solely to public water and wastewater agencies was "contrary to law" because SB 380 eliminated such restriction as a matter of law. *See* Ex. E (Allco Clarification Motion) at 2. Additionally, Allco requested that the Utility be directed to execute PPAs with applicants that met the eligibility criteria for the Wastewater Program "***other than the water/wastewater aspect***" and that tendered executed PPAs before the program closed. *Id.* On July 24, 2013, a CPUC administrative law judge issued a decision addressing both the Utility's and Allco's motions and found that the Utility "has administered its AB 1969 program reasonably" and denied Allco's clarification request. Ex. A (CPUC Dismissal) at 7. Thus, the Utility was not required to execute Wastewater Program PPAs submitted by other facilities, such as the Claimants, because ***only*** public water and wastewater facilities were eligible for that program.

### E. The Claimants' CPUC Action

On July 23, 2013, the day before both Pre-ReMAT programs closed, the Claimants sued the Utility before the CPUC (the "**CPUC Action**"). *See* Ex. A (CPUC Dismissal) at 6. The Claimants alleged that they each executed PPAs under the Wastewater Program and submitted those agreements to the Utility between June 7, 2013 and July 22, 2013, and that the Utility was therefore "required by Section 399.20 to execute" those PPAs. *See id.*[9] Those agreements identified in the CPUC Action ***are the same*** fifty-seven agreements identified in the Opposition. *Compare* Ex. C (CPUC Complaint), Exhibit A, *with* Dkt. No. 11477 (the "**Melone Decl.**"), Exhibit A.

The CPUC dismissed the CPUC Action for failure to state a claim because, among other things, it found that the Claimants "modified the [Wastewater Program PPAs] to delete the PPA's required representation of applicant's status as a public water or wastewater agency." CPUC Dismissal at 6, 8. The Claimants purposely deleted the following from the CPUC-approved Wastewater Program PPA:

> Seller's Facility is (check one) ☐ a facility owned by a state, local, or federal agency and used in the treatment or reclamation of sewage and industrial wastes; or ☐ a facility owned by a state, local, or federal agency that develops, stores, distributes or supplies water.

*Compare* Ex. F (Wastewater PPA) § 4.3.1(a), *with* Melone Decl., Exhibit B § 4.3.1(a) (reading "[deleted]"). In short, the Claimants assertion to this Court that they "met all the requirements" of, and "were eligible for," the Wastewater Program, Opp. at 4, was knowingly and demonstrably false. Indeed, the CPUC already found the Claimants "were not eligible for the tariff at issue." Ex. A (CPUC Dismissal) at 13–15 ("Complainants did not meet the eligibility requirements of PG&E's Commission-approved [Wastewater Program PPA].").

The CPUC determined that the Utility "was not required to *sua sponte* amend its [Wastewater Program] tariff to expand eligibility" to other entities. *Id.* at 17. And because that tariff "remained in place after passage of SB 380, PG&E ***did not violate*** Section 399.20 when it rejected Complainants' applications." *Id.* The CPUC also concluded that the Utility adhered to the filed tariff and complied

---

[9] These are the same claims the Claimants highlight in their Opposition. *See* Opp. at 4 ("Starting on June 7, 2013, and ending on July 22, 2013, while the AB1969 FIT [*i.e.*, Pre-ReMAT] was still in effect, the Claimants executed the standard *AB1969 FIT* power purchase agreement ('PPA') and submitted them to PG&E with all required documentation for each facility of the Claimants.").

1 with the law. *See id.* at 8–9. Following dismissal, the CPUC denied the Claimants' request for rehearing.

2 *See generally* Ex. G (Rehearing Denial). On March 5, 2015, the California Court of Appeal summarily

3 denied the Claimants' petition for a writ of review, making the CPUC Dismissal final and conclusive in

4 collateral proceedings under California law. *See* Ex. H (Writ Denial).

5        **F.**       **Winding Creek Successfully Challenges ReMAT**

6        On July 24, 2013, the Utility's FiT program under ReMAT became effective and the tariff

7 schedules under the Wastewater Program and the Renewable Program closed. *See* Ex. A (CPUC

8 Dismissal) at 5–6. On October 24, 2013, Claimant Winding Creek sought declaratory and injunctive

9 relief against the CPUC, claiming that ReMAT violated PURPA. *See* Obj. at 4–5. On December 6,

10 2017, Judge Donato of the Northern District of California held that ReMAT violated PURPA, and the

11 Ninth Circuit affirmed on February 13, 2019. *See Peterman*, 932 F.3d at 865. No part of the claims in

12 the Winding Creek Litigation challenged whether either of the CPUC's two Pre-ReMAT Programs—

13 Wastewater or Renewable—violated PURPA. Nor did the Claimants attempt to challenge the

14 Renewable Program's cap in the CPUC Action, or any other proceeding in any forum.

15                                        **ARGUMENT**

16        The Claimants' focus on the alleged contracts submitted under the Pre-ReMAT is an odd choice.

17 The Claimants decisively lost that battle in the CPUC Action, where the CPUC found that the Utility

18 complied with the law by rejecting the Claimants' submissions and California's judicial branch declined

19 to review the CPUC Dismissal. Thus, as relates to the Pre-ReMAT program, the Claimants have

20 exhausted their opportunity to seek redress against the Utility and the Claims are barred by res judicata

21 and collateral estoppel. Moreover, although the Claimants seek to blame the Bankruptcy petition as an

22 excuse for failing to pursue their Claims in State Court earlier,[10] the undisputed facts undermine that

23 baseless assertion. In all the years between July 2013 and the Petition Date, the Claimants made no

24 effort to independently assert their Pre-ReMAT Claims in State Court. During that same time period,

25 Claimant Winding Creek failed to bring an "as-applied" challenge against the Utility to assert its ReMAT

26 Claim. Those strategic decisions have consequences, and the Claims are time-barred. In any event,

27

28 [10] *See* Opp. at 11 ("The fact that this claim is currently in a federal court is entirely because PG&E filed for bankruptcy relief.").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

there are no viable claims to assert against the Utility in any forum based on the Pre-ReMAT or ReMAT programs. The Claims should be disallowed and expunged.

I.        THE PRE-REMAT CLAIMS ARE PRECLUDED BY THE CPUC DISMISSAL

       Federal courts look to state law to determine whether a state agency decision should be given preclusive effect under res judicata or collateral estoppel. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). In California, final CPUC decisions are given preclusive effect. *See* Cal. Pub. Utils. Code § 1709 ("In all collateral actions or proceedings, the orders and decisions of the commission which have become final shall be conclusive."). Because the Claimants sought a writ of review of the CPUC Dismissal, once that review was denied, it became final. *See* 53 Cal. Jur. 3d Pub. Utils. § 133 ("[A] summary denial of [a writ of review] is deemed a final judicial determination on the merits."); *In re Rose*, 22 Cal. 4th 430, 445 (2000) ("[T]he order denying the petition was res judicata, even though no written opinion had been filed.").

       A.        **Res Judicata Bars the Pre-ReMAT Claims**

       Res judicata "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Meridian Fin. Servs., Inc. v. Phan*, 67 Cal. App. 5th 657, 686 (Ct. App. 2021). A prior judgment for the defendant "is a complete bar to the new action." *Murray v. Alaska Airlines, Inc.*, 50 Cal. 4th 860, 867 (2010). Under California law, res judicata applies when a second suit, such as here, involves (i) the same cause of action, (ii) between the same parties, (iii) after a final judgment on the merits in the first suit. *See Meridian*, 67 Cal. App. 5th at 686–87.[11] In light of the CPUC Action, each element is satisfied here.

       The purported causes of action giving rise to the Pre-ReMAT Claims are identical to that asserted in the CPUC Action. *See Colebrook v. CIT Bank, N.A.*, 64 Cal. App. 5th 259, 263 (Ct. App. 2021) (California's "primary right theory" provides that "a cause of action is comprised of a primary right of the plaintiff, a corresponding primary duty of the defendant, and a wrongful act by the defendant constituting a breach of that duty"). Any remedy flowing therefrom—whether it be injunctive relief

---

[11] To the extent a question remains whether state or federal law applies, the standard for res judicata is the same. *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1176 (9th Cir. 2014) ("Res judicata applies when the earlier suit: (1) reached a final judgment on the merits; (2) involved the same cause of action or claim; and (3) involved identical parties or privies.").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

already denied, the damages now sought, or any other form of relief—is barred by res judicata. *See id.* at 263 ("The primary right must also be distinguished from the *remedy* sought . . . relief is not to be confounded with the cause of action.") (emphasis in original).

In the CPUC Action, as here, the Claimants alleged that "[b]etween June 7, 2013, and July 22, 2013, the Complainants tendered executed standard form Section 399.20 [Wastewater Program] PPAs to PG&E for counter-execution for each Facility." Ex. C (CPUC Complaint) at 7. The Claimants sought relief from the CPUC after the Utility "refused, or failed, to execute those PPAs," which, in their view, was "contrary to applicable law." *Id.* at 2–3, 5. As here, the Claimants alleged that Section 399.20 and the Wastewater Program were bases for their claims. *See id.* at 7; Opp. at 7–8. The causes of action in the two proceedings take aim at the same allegedly wrongful conduct; thus, the first factor is satisfied.[12]

The second factor is also satisfied because the parties are the same. Nine entities brought the CPUC Action against the Utility.[13] Those same nine entities are identified as the "applicants" in the "index of power purchase agreement" identified in the Opposition. *See* Melone Decl., Exhibit A. And those nine entities are on whose behalf the Claimants submitted proofs of claim.[14]

Finally, the CPUC Dismissal is a final judgment on the merits. As stated above, that decision became final when the California Court of Appeals denied the Claimants' writ petition. Further, the CPUC dismissed the Claimants' complaint with prejudice for failure to state a claim upon which relief could be granted. *See* Ex. A (CPUC Dismissal) at 15; *Crowley v. Mod. Faucet Mfg. Co.*, 44 Cal. 2d 321, 323 (1955) (dismissal for failure to state a claim is a judgment on the merits and is "a bar to a subsequent action alleging the same facts"). In so doing, the CPUC held that, by rejecting the Claimants' applications, the Utility not only complied with its existing tariff, but that it "complied with the law." Ex. A (CPUC Dismissal) at 8; *see also id.* at 17 ("PG&E did not violate Section 399.20 when it rejected

---

[12] Although the Claimants did not allege violations of the Commercial Code, or PURPA, in the CPUC Action, those allegations relate to the same primary right—*i.e.*, the Utility's allegedly wrongful refusal to execute the Claimants' PPAs—so they, too, are barred by res judicata. *See Colebrook*, 64 Cal. App. 5th at 263; *see also Takahashi v. Bd. of Educ.*, 202 Cal. App. 3d 1464, 1481–82 (Ct. App. 1988) ("[A] judgment is binding as to all issues . . . that were raised or could have been raised.").

[13] (i) Winding Creek Solar LLC, (ii) Bear Creek Solar (NV) LLC, (iii) Bear Creek Solar Interconnection LLC, (iv) Kettleman Solar LLC, (v) Hollister Solar LLC, (vi) Vintner Solar LLC, (vii) Bear Creek Solar LLC, (viii) Spencer Meadow Solar LLC, and (ix) Allco Renewable Energy Limited.

[14] For example, Foothill Solar LLC submitted a proof of claim attaching PPAs allegedly executed by Bear Creek Solar Interconnection LLC, which was a CPUC-Action complainant. *See* Claim No. 78580.

Complainants' applications."). The CPUC rightfully reached this conclusion because the Claimants "are not public water or wastewater agencies," and they "did not meet the eligibility requirements" of Section 399.20 or the Utility's CPUC-approved Wastewater Program. *See id.* at 15. The facts have not changed; neither should the result. Res judicata bars the Pre-ReMAT Claims.

### B. Collateral Estoppel Bars the Identical Issues Decided in the CPUC Action

Collateral estoppel applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *Meridian*, 67 Cal. App. 5th at 686. As discussed above, the CPUC Dismissal was a final adjudication on the merits. Yet the Claimants raise a litany of identical issues in their Opposition that were actually litigated and necessarily decided by the CPUC.[15] The Claimants should be estopped from relitigating the findings of fact and conclusions of law reached in the CPUC Dismissal. *See* Ex. A (CPUC Dismissal) at 15–18. For example, the Claimants argue that the Utility "wrongfully refused" to counter-execute the PPAs the Claimants submitted. Opp. at 3. As a result, in the Claimants' view, the Utility "breached the obligation imposed on it under" both the CPUC-filed tariff, as well as Section 399.20. Opp. at 7–8. But the CPUC already addressed these issues, concluding that "[b]y complying with its existing tariff, PG&E complied with the law." Ex. A (CPUC Dismissal) at 8. Further, "PG&E did not violate Section 399.20 when it rejected Complainants' applications." *Id.* at 17. The crux of the Claimants' argument has not only been fully litigated, but conclusively resolved against them.

The Claimants also try to resuscitate several additional arguments rejected by the CPUC. For example, the Claimants feign that each facility and its respective owner "met all the requirements of the AB1969 FIT." Opp. at 4. They most assuredly did not. *See* Ex. A (CPUC Dismissal) at 15, 17–18. To make this argument, the Claimants' represent that SB 380 "repealed" the limitation that the Wastewater Program—and the Utility's CPUC-approved tariff thereunder—was only available to public water and wastewater entities. Opp. at 5 n.6. The Claimants made this identical argument in the CPUC Action, where it was soundly rejected. *See* Ex. A (CPUC Dismissal) at 9–11, 17. As the CPUC held, "contrary

---

[15] It is a rather low bar to demonstrate that an issue was "necessarily decided." That prong "require[s] only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding." *Meridian*, 67 Cal. App. 5th at 701 (citing *Samara v. Matar*, 5 Cal. 5th 322, 327 (2018)).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to Complainants' contentions, SB 380 was not self-executing" because implementation required an order, or other action, from the CPUC. *See id.* Thus, the Utility was not obligated to—and, in fact, lacked authority to—modify its Wastewater Program as the Claimants demanded. *See id.* at 17. Further, the need for CPUC action to implement SB 380 is why the Utility's two Pre-ReMAT tariff schedules—under the separate and distinct Wastewater Program and Renewable Program—remained in effect until July 24, 2013. *See id.* at 5–6, 16. Therefore, the Utility lawfully refused to execute the Claimants' inauthentic contracts under a program for which they were ineligible.

Moreover, the CPUC rejected the Claimants' argument that the Utility's administration of its tariff constituted a violation of Utilities Code Section 453(a) "by giving an unlawful disadvantage or prejudice to Complainants because they were not public water or wastewater agencies." *Id.* at 13. The CPUC held that, "as required by law," the Utility applied its Wastewater Program "consistently to exclude ***all*** entities other than public water and wastewater facilities." *Id.* at 13–14. The Wastewater Program "was never made, or intended to be made, available to the 'public in general.'" *Id.*[16] Thus, collateral estoppel also bars the Claims in full.

## II.  EVEN IF THE PRE-REMAT CLAIMS WERE NOT PRECLUDED BY THE CPUC ACTION, THEY WOULD BE TIME-BARRED AS A MATER OF LAW

The Opposition alleges that the Claims are based on upon a breach of the Utility's obligations under (i) the Utility's filed tariffs, (ii) Section 399.20 of the Utilities Code, (iii) PURPA, and (iv) for the first time ever, the California Commercial Code (the "**Commercial Code**"). *See* Opp. at 5. Even if the Claimants had not unilaterally and unlawfully modified the Wastewater Program PPAs in an attempted end-run of CPUC regulations, and even if the CPUC had not already dismissed, with prejudice, their identical claims in 2014, the Claims would still be disallowed and expunged because any applicable statute of limitation ran well before the Petition Date.[17]

---

[16] This finding, among others, belies the Claimants' argument that the Utility breached any obligations at all to the Claimants. In fact, the Utility had no obligation to the Claimants.

[17] While the Bankruptcy Code generally tolls filing deadlines pending the lifting of the automatic stay, that tolling only applies where the relevant period "has not expired ***before*** the date of the filing of the petition." 11 U.S.C. § 108(c); *see also Smith v. Lachter (In re Smith)*, 293 B.R. 220, 223 (B.A.P. 9th Cir. 2003) (same).

## A. Any Claim Under the Utility's Filed Tariffs Expired in 2017

The Opposition claims that the Utility breached its tariff obligations by not executing the Claimants' PPAs submitted between June 7 and July 22, 2013. *See* Opp. at 7. Even if these claims were valid, which they are not for the reasons stated above, under California law the statute of limitations for an "action upon any contract, obligation or liability founded upon an instrument in writing" is four years. Cal. Civ. Proc. Code § 337(a).[18] A cause of action for breach of contract accrues "at the time of breach, and the statute begins to run at that time regardless whether any damage is apparent or whether the injured party is aware of his or her right to sue." 3 Witkin, Cal. Proc. 6th Actions § 567(1) (2021).[19]

The appropriate date for accrual here is July 23, 2013, when the Claimants believed they had a cause of action against the Utility for its refusal to execute the Pre-ReMAT PPAs. By that date the Claimants were unquestionably under the impression that every essential element of their purported cause of action had already occurred. Therefore, the statute of limitations for this alleged breach expired on or before July 23, 2017—more than a full year *before* the Petition Date. The Claims are time-barred.

## B. Any Claim Under the California Commercial Code Expired in 2017

The Opposition claims that the Utility breached sections 2205 and 2206 of the Commercial Code. *See* Opp. at 5–7. Although this assertion is nowhere to be found in the Adversary Complaint,[20] under the Commercial Code, "[a]n action for breach of any contract for sale must be commenced ***within four years*** after the cause of action has accrued." Cal. Com. Code § 2725(1). As the facts confirm, the Claimants were aware on July 23, 2013 that the Utility had refused to execute the Pre-ReMAT PPAs. Under any Commercial Code theory posited by the Claimants (breach of a firm offer, repudiation, or otherwise), the statute of limitations lapsed in 2017 and the Claims are time-barred.

---

[18] Claims for a breach of a tariff filed with a public utilities commission sound in contract. *See, e.g.*, *Wheeler v. Beard*, No. 03-4826, 2005 U.S. Dist. LEXIS 9778, at *28–32 (E.D. Pa. May 19, 2005).

[19] *See Spear v. Cal. State Auto. Ass'n*, 2 Cal. 4th 1035, 1040 (1992) (a cause of action accrues when "the party owning it is entitled to begin and prosecute an action thereon," that is when "the last element essential to the cause of action" occurs); *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 486–87 (1996).

[20] New theories of liability, raised for the first time in opposition to a dispositive motion, are improperly before this Court. *See Toscano v. Adam*, 812 F. App'x 687 (9th Cir. 2020) (affirming district court's refusal to address a claim raised for the first time in opposition to summary judgment); *Sedell v. Wells Fargo of Cal. Ins. Servs., Inc.*, No. C 10-4043 SBA, 2012 WL 3017541, at *8 (N.D. Cal. July 23, 2012) (rejecting a new contract claim raised in opposition because the party did not include such theory in the pleadings); *Jensen-Edwards v. Nationstar Mortg., LLC (In re Jensen-Edwards)*, 535 B.R. 336, 346 (Bankr. D. Idaho 2015) (same).

### C. Any Claim Under Section 399.20 of the Utilities Code Expired Pre-Petition

Next, the Opposition claims that the Utility "breached the obligation imposed on it under the statute," referring to Utilities Code Section 399.20. Opp. at 8. The statute of limitations for an action "upon a liability created by statute, other than a penalty or forfeiture" is three years. Cal. Civ. Proc. Code § 338(a). But that section applies ***only*** where the liability is embodied in a statutory provision and was of a type that did not exist at common law. *See* 3 Witkin, Cal. Proc. 6th Actions § 719(1) (2021). It is therefore "inapplicable" to a liability that, "although imposed by statute, is contractual in nature." *Id.* (citing *People v. Wilson*, 240 Cal. App. 2d 574, 576 (Ct. App. 1966) ("A liability created by statute is one in which no element of agreement enters. It is an obligation which the law creates in the absence of an agreement.")). Here, of course, there was no agreement. But the Claims are nevertheless contractual in nature. Therefore, even if they are not barred under the three-year limitation imposed by California Code of Civil Procedure section 338, they are barred under section 337's four-year period.

### D. Any Claim Under PURPA Expired in 2017

Finally, the Opposition argues that the Utility breached its PURPA obligations by failing to purchase energy from the Claimants after they allegedly created legally enforceable obligations by submitting the Pre-ReMAT PPAs in 2013. Setting aside whether PURPA creates a private right of action for their allegations, which it does not, time is up for the Claimants to pursue this theory.

Although not entirely clear, the Claimants appear to advance their theory under PURPA's section 210, *see* Opp. at 10, which does not specify a statute of limitations.[21] It is "well-settled that if Congress fails to include a statute of limitations in a statute," courts should apply the "most closely analogous" statute of limitations under state law. *N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*, 117 F. Supp. 2d 211, 246 (N.D.N.Y. 2000) (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989)). In *Saranac Power*, where a utility sought relief from long-term contracts with two QFs, the district court imposed New York's four-month limitations period to challenge agency actions. *See* 117

---

[21] Because Congress enacted PURPA in 1978, 28 U.S.C. § 1658(a) does not apply, stating: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [enacted December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." Nor does 28 U.S.C. § 2462's five-year statute of limitations because the Claimants "do not stand in FERC's shoes to enforce the FPA or PURPA; they seek to redress their own economic injuries caused by," the Utility's allegedly wrongful refusal to execute written contracts. *Riggs v. Curran*, 863 F.3d 6, 11 (1st Cir. 2017). But even if either applied, the Claims would still be untimely.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

F. Supp. 2d at 246–47 (citing N.Y. C.P.L.R. § 217). In *Riggs*, where ratepayers claimed that their economic interests would be adversely affected because the PPA at issue would raise their electricity bills, the First Circuit affirmed the application of Rhode Island's three-year statute of limitations for personal injury. *See* 863 F.3d at 10–11. In *Franklin Energy Storage One, LLC v. Kjellander*, where QFs sued the commissioners of the Idaho Public Utilities Commission for classifying the facilities differently than what was in the QFs' FERC filings, the district court applied Idaho's four-year catchall statute of limitations. *See* No. 1:18-cv-00236-REB, 2020 U.S. Dist. LEXIS 8892, at *29 (D. Idaho Jan. 17, 2020).

Here, the gravamen of the Claimants' supposed cause of action is a failure "to purchase the energy and capacity at the rates and terms set forth in th[e] tariffs" the Claimants submitted to the Utility in 2013. Opp. at 9. In other words, an alleged breach of contract. The Utility submits that, although there is no contract, at most, the four-year statute of limitations would apply. *See* Cal. Civ. Proc. Code § 337(a). Because that cause of action accrued in 2013, the Claims were time-barred in 2017.[22]

### III. IN ANY EVENT, THERE IS NO SUBSTANTIVE MERIT TO THE CLAIMS

Regardless of which CPUC program, Pre-ReMAT or ReMAT, applies to the individual Claims, the result is the same. No valid contract, or legally enforceable obligation ("**LEO**") of any kind, ever formed here. The Claims should be disallowed and expunged. *See* Obj. at 7–9.

#### A. The Pre-ReMAT Claims Lack Merit

The Claimants' Pre-ReMAT Claims rest on three allegations that are objectively false. *First*, the Opposition misleadingly represents that "[e]ach of the Claimants were ***qualified applicants***" for the Wastewater Program. Opp. at 3, 6–8. This is simply not true. The Claimants "were not eligible for the tariff at issue." Ex. A (CPUC Dismissal) at 13–15 ("Complainants did not meet the eligibility requirements of PG&E's Commission-approved [Wastewater Program tariff].").[23] *Second*, the

---

[22] In the event that Claimant Winding Creek asserts the same four theories—alleged violations of the Utility's tariff, the Commercial Code, Section 399.20, and PURPA—for its ReMAT Claim, that is also barred by the same statutes of limitation. The first CPUC-sponsored auction under ReMAT—where Winding Creek attempted to bid at the $89.23/MWh base price, but did not receive a contract—began on November 1, 2013 and ended before January 1, 2014. *See* Ex. I (Winding Creek SAC) ¶ 58. Therefore, Winding Creek's ReMAT Claim accrued in late 2013 and expired in late 2017.

[23] Although they attempt to gloss over the issue here, the Claimants were quite candid in the CPUC Action, where they admitted that they did not qualify for the program. *See* Ex. C (CPUC Complaint) at 7 ("[T]he Facility and the respective project owner meets all the qualifications of the Section 399.20 E-PWF tariff and Section 399.20 standard PPA, ***other than the water/wastewater agency limitation***.").

Opposition asserts that the Utility "wrongfully" rejected their PPAs. Opp. at 3, 7–8. To the contrary, the Claimants conceded (because they had to) in the CPUC Action, that the Utility "complied" with its then-existing tariff. Ex. A (CPUC Dismissal) at 8. In fact, because they were ineligible for the Wastewater Program, the Claimants altered the Utility's filed tariff and deleted the required representation of the applicant's status as a public water or wastewater agency. *See id.* at 6, 13. Moreover, because the Utility was "required to follow [CPUC] direction before amending or replacing" its tariff "to remove the public water or wastewater agency eligibility requirements," the Utility "complied with the law" and "did not violate Section 399.20" when it rejected the Claimants' submissions. *Id.* at 8, 17.

*Third*, despite the Claimants' suggestion otherwise, neither Section 399.20 nor "AB1969FIT" (or any Pre-ReMAT program) obligated the Utility to "provide a 20-year electricity purchase contract to ***all*** qualified applicants." Opp. at 3, 7–8. In the CPUC Action, the Claimants acknowledged that the CPUC's implementation of the Pre-ReMAT programs "established distinct capacities and limits for each program." Ex. C (CPUC Complaint) at 3. In addition to the fifty-two Wastewater Program PPAs, which the Utility was not authorized to accept, the Claimants also submitted five PPAs under the fully subscribed Renewable Program. But by the terms of that CPUC-filed tariff, the Utility could not accept those either. *See* Ex. J (Renewable Schedule) at 1 ("Service under this Schedule is on a first-come-first-served basis and **shall be closed to new customers** once the combined rated generating capacity of Eligible Renewable Energy Resource within PG&E's service territory reaches 104.603 megawatts, as set forth in D. 07-07-027, effective July 26, 2007."). Thus, any "offer" or "invitation to accept" was automatically revoked once the cap was reached.

The Claimants never created a valid contract or LEO with the Utility under the Pre-ReMAT programs. The Claimants never challenged—let alone invalidated—the Renewable Program's cap. And because they did not qualify for the Wastewater Program with remaining capacity, the Claimants submitted forged PPAs, which the Utility lawfully rejected. There is therefore nothing left to be adjudicated in this Court or any other court on any legal theory raised by the Claimants, which requires the Pre-ReMAT Claims to be disallowed and expunged.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### B. Winding Creek's ReMAT Claim Lacks Merit

Similarly, the Utility never entered into a contract with Winding Creek under ReMAT. As stated in the Objection, PURPA does not create a contract or "any other enforceable obligation from which any 'customary legal incidents' could follow." Obj. at 7 (quoting *Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 71 (1st Cir. 2017)). In *Allco*, the First Circuit rejected the argument that PURPA's "obligation to purchase" entitled Allco to damages from the utility. *See id.* at 69–74. That is the same argument advanced here, which this Court should similarly reject. *See* Obj. at 7–9. In fact, PURPA does not even confer a private right of action against the Utility. *See Allco,* 875 F.3d. at 73–74 ("The district court therefore correctly granted [the utility's] motion to dismiss because PURPA does not give Allco a private right of action against [the utility].").[24] Therefore, Winding Creek is not entitled to damages for any alleged breach.

Nor did any so-called LEO form between the Utility and Winding Creek (or any other Claimant).[25] As stated in the Objection, which is unchallenged in the Opposition, each state determines when an LEO forms when implementing PURPA. *See* Obj. at 9. In California, and under ReMAT, the LEO formed when an applicant was **selected** from a pool of bidders. *See id.* Winding Creek was never selected from the queue. *See Peterman*, 932 F.3d at 864. Thus, no LEO formed between the parties and Winding Creek's Claim, in addition to the others, should be disallowed and expunged.

### CONCLUSION

WHEREFORE the Reorganized Debtors respectfully request entry of an order granting (i) the relief requested herein disallowing and expunging the Claims, and (ii) such other and further relief as the Court may deem just and appropriate.

---

[24] The Claimants mischaracterize *Allco* as relating exclusively to PURPA's Section 210**(h)**—as opposed to 210**(g)**—and the Federal Power Act (the "**FPA**"). *See* Opp. at 8–9. Rather, in describing "PURPA's framework for enforcing its requirement that states implement FERC's PURPA-implementing rules," the First Circuit recognized that "**Sections 210(g)–(h)** of PURPA create an **overlapping scheme** of federal and state judicial review of state regulatory action taken pursuant to PURPA." *Allco*, 875 F.3d at 67. Further, the First Circuit's discussion of the FPA was to reject Claimant Allco's alternative arguments that the FPA conferred a private right of action against the utility. *See id.* at 71–74 ("Allco's assertion that the FPA gives it a private right against [the utility] is similarly unavailing.").

[25] The other Claimants' alleged "legally enforceable obligations" are premised on altered PPAs.

| | | |
|---|---|---|
| 1 | Dated: December 3, 2021 | **WEIL, GOTSHAL & MANGES LLP** |
| 2 | | **KELLER BENVENUTTI KIM LLP** |

By:   /s/ *Theodore E. Tsekerides*
          Theodore E. Tsekerides

*Attorneys for the Reorganized Debtors*