# EXHIBIT A

Decision 14-05-026   May 15, 2014

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Winding Creek Solar LLC, Bear Creek Solar (NV) LLC, Bear Creek Solar Interconnection LLC, Kettleman Solar LLC, Hollister Solar LLC, Vintner Solar LLC, Bear Creek Solar LLC, Spencer Meadow Solar LLC, and Allco Renewable Energy Limited,<br><br>                    Complainants,<br><br>vs.<br><br>Pacific Gas and Electric Company (U39E),<br><br>                    Defendant. | Case 13-07-016<br>(Filed July 23, 2013) |

<u>Thomas Melone</u>, Attorney for Complainants,

<u>Anne H. Kim and Charles R. Middlekauff</u>, Attorneys for Pacific Gas and Electric Company, Defendant.

**DECISION DISMISSING COMPLAINT WITH PREJUDICE**

**1.    Summary**

This decision dismisses the complaint of Winding Creek Solar LLC, Bear Creek Solar (NV) LLC, Bear Creek Solar Interconnection LLC, Kettleman Solar LLC, Hollister Solar LLC, Vintner Solar LLC, Bear Creek Solar LLC, Spencer Meadow Solar LLC, and Allco Renewable Energy Limited (collectively, Complainants), for failure to state a claim upon which relief can be granted. The

91337286

Complainants allege that Pacific Gas and Electric Company (PG&E) failed to execute power purchase agreements with the Complainants under its Schedule E-PWF feed-in-tariff program for public water and wastewater agencies. The Complainants allege that PG&E's administration of its E-PWF tariff violated applicable law because PG&E did not modify its E-PWF tariff after Senate Bill (SB) 380 amended California Public Utilities Code Section 399.20.

Both parties acknowledge that a "state-filed tariff is law and binding on the public."[1] Because PG&E adhered to its existing Schedule E-PWF tariff, and because further action by the Commission was necessary before the tariff could be modified or replaced in accordance with SB 380, this Complaint must be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**2.    The Parties**

Winding Creek Solar LLC, Bear Creek Solar (NV) LLC, Bear Creek Solar Interconnection LLC, Kettleman Solar LLC, Hollister Solar LLC, Vintner Solar LLC, Bear Creek Solar LLC, Spencer Meadow Solar LLC, and Allco Renewable Energy Limited (collectively, Complainants) all own solar projects in various stages of development.

Pacific Gas and Electric Company (PG&E) is a natural gas and electricity service provider and is an investor-owned public utility under the jurisdiction of the California Public Utilities Commission (Commission).

---

[1] Complaint at 6, citing to *Pink Dot, Inc. v. Teleport Communications Group,* (2001) 89 Cal. App. 4th 407, 416; Answer at 8.

### 3. Procedural History

Complainants filed their Complaint on July 23, 2013. PG&E's Answer to the Complaint, filed on September 9, 2013, requested that the Complaint be dismissed under the doctrine of res judicata or collateral estoppel, or, alternatively, because Complainants failed to state a cause of action.

On October 2, 2013, the assigned Administrative Law Judge (ALJ) held a prehearing conference.

The Assigned Commissioner's and ALJ's Scoping Memo and Ruling (Scoping Memo) was issued on October 22, 2013. Pursuant to the Scoping Memo, the parties filed a Joint Stipulated Timeline of Events on October 30, 2013.

As directed by the Scoping Memo, the parties filed briefs addressing PG&E's request for dismissal. Opening briefs were filed on November 6, 2013 and Reply Briefs were filed on November 22, 2013.

As discussed below, disposition of this Complaint does not require resolution of any contested factual matters. Therefore, the relevant factual background is taken from the uncontested statements and descriptions in the parties' filings, including the Joint Stipulated Timeline of Events.

### 4. Background

Assembly Bill (AB) 1969 (Yee, Stats. 2006, ch. 731), enacted in 2006, added Section 399.20 to the California Public Utilities Code (Pub. Util. Code).[2] The intent of AB 1969 was "to encourage energy production from renewable resources at public water and wastewater facilities in an amount commensurate with water-related electricity demand." (Section 399.20(a) (as originally

---

[2] All subsequent Section references are to the California Public Utilities Code unless otherwise specified.

enacted).) Section 399.20 required state electric corporations, such as PG&E, to establish a new Feed-in-Tariff (FiT) program specifically for public water and wastewater agencies to own and operate renewable energy facilities.[3] The Section 399.20 FiT program was to be available on a first-come first-served basis for eligible generators up to 250 megawatts (MW) statewide program cap. (Section 399.20(e).)

On July 27, 2007, the Commission issued Decision (D.) 07-07-027 implementing Section 399.20 pursuant to AB 1969.[4] In the same decision, the Commission directed PG&E to create a separate program that would provide a similar opportunity to small renewable generators other than public water or wastewater agencies. PG&E subsequently filed Schedule E-PWF FiT program for the purchase of electricity from public water and wastewater agencies and Schedule E-SRG FiT program for the purchase of electricity from other small renewable generators. At some point thereafter, Schedule E-SRG was fully subscribed, but capacity remained in Schedule E-PWF. The combined FiT program was often referred to as the Section 399.20 FiT despite the fact that Section 399.20 only applied to public water and waste water agencies. The program is also commonly called the FiT program.

---

[3] As originally enacted, the eligibility requirements under Section 399.20 required generators to be "owned, and operated by the public water or wastewater agency… located on or adjacent to a water or wastewater facility . . ." and "sized to offset part or all of the electricity demand of the public water or wastewater agency." (399.20(b).)

[4] *Opinion Adopting Tariffs and Standard Contracts For Water, Wastewater and Other Customers to Sell Electricity Generated From RPS-Eligible Renewable Resources to Electrical Corporations* (2007) D.07-07-027.

In 2008, the Legislature enacted Senate Bill (SB) 380 (Kehoe, Stats. 2008, ch. 544), amending Section 399.20 to require electrical corporations to file a tariff making the program available to any customer. The program would no longer be limited to public water or wastewater agencies. SB 380 also expanded the program from 250 MW statewide to 500 MW.

For over ten years the Commission has maintained a series of rulemakings (collectively, the RPS Rulemaking)[5] to implement and administer California Renewable Portfolio Standard (RPS) Program which includes programs such as the FiT. In May 2012, in the RPS Rulemaking, the Commission issued D.12-05-035 to implement the statutory amendments contained in SB 380 and other recent legislation. D.12-05-035 also adopted a new pricing mechanism for electricity sold under the FiT program. This new pricing mechanism is known as the "Renewable Market Adjusting Tariff" (Re-MAT).[6] D.12-05-035 directed PG&E to file a new proposed tariff schedule based on the changes.

In May 2013, D.13-05-034 in the RPS Rulemaking directed PG&E to file a Tier 2 advice letter for approval of a new FiT standard contract (also known as power purchase agreements, or PPA) and tariff schedule.[7] On June 24, 2013, PG&E complied by filing Advice 4246-E, which the Commission approved on July 23, 2013. On July 24, 2013, PG&E's new FiT program, the E-ReMAT

---

[5] The RPS Rulemaking includes Rulemaking (R.) 11-05-005, R.08-08-009, R.06-05-027 and R.04-04-026.

[6] *Decision Revising Feed-In Tariff Program, Implementing Amendments to Public Utilities Denying Petitions For Modification of Decision 07-07-027 By Sustainable Conservation and Solutions For Utilities, Inc.* (2012) D.12-05-035.

[7] *Decision Adopting Joint Standard Contract For Section 399.20 Feed-In Tariff Program and Granting, In Part, Petitions For Modification of Decision 12-05-035* (2013) D.13-05-034.

Schedule, became effective and the prior FiT Program tariff schedules (E-PWF and E-SRG) were closed.

On July 23, 2013, the day before the original FiT schedules were closed, Complainants filed this action. Complainants allege that they each executed the Schedule E-PWF standard form PPA and submitted it to PG&E between June 7, 2013 and July 22, 2013, and that PG&E was therefore required by Section 399.20 to execute these PPAs. Complainants, however, modified the form PPA to delete the PPA's required representation of applicant's status as a public water or wastewater agency.[8]

In its Answer, PG&E states that it complied with its FiT program by rejecting the contracts because the Schedule E-PWF standard form contract is only available to public water or wastewater agencies. PG&E contends that the case should be dismissed for failure to state a cause of action as required under Section 1702 because PG&E complied with its tariff and with law.

In addition, on July 23, 2013, one of the Complainants (Allco Renewable Energy Limited (Allco)) filed a motion in the RPS Rulemaking asking whether PG&E's Schedule E-PWF was lawful and whether PG&E can be directed to accept PPAs under Schedule E-PWF even if the applicant is not a public water or waste water agency.[9] Previously, on April 5, 2013, PG&E had filed a Motion for Clarification in the RPS Rulemaking, in which it requested the Commission clarify PG&E's administration of its AB 1969 FiT program during the transition to its E-ReMAT Schedule by confirming "that entities that are not public water or public wastewater agencies are ineligible to participate in the tariff and standard

---

[8] Complaint at 7; Complaint Exhibit B.

[9] Complainants' Opening Brief at 10.

contract available to public and wastewater agencies."[10] On July 24, 2013, ALJ DeAngelis issued an e-mail ruling (the RPS Clarification Ruling) that addressed both the PG&E and Allco Motions. ALJ DeAngelis found that "PG&E has administered its AB 1969 program reasonably." ALJ DeAngelis denied all other aspects of PG&E's motion and denied Allco's clarification request.

In its Answer, PG&E contends that, in light of the RPS Clarification Ruling, this Complaint is barred by res judicata or collateral estoppel.

## 5. Discussion and Analysis
### 5.1. Standard for Motion to Dismiss

The Commission's jurisdiction to adjudicate complaints is set by Section 1702, which requires that the complaint set forth an "act or thing done or omitted to be done by any public utility . . . in violation or claimed to be in violation, of any provision of law or of any order or rule of the commission."

The Commission has employed two standards to evaluate a motion to dismiss a complaint. (D.13-01-002 at 3.)

> One standard is akin to the standard for a motion to dismiss in civil court. The other is akin to the standard for a motion for summary judgment in court. The first asks 'whether, taking the well-pleaded factual allegations of the complaint as true, the defendant is entitled to prevail as a matter of law.' (D.99-11-023 3 CPUC 3d 300, 301. *See* also D.12-03-037.) The second requires 'that the moving party must prevail based solely on the undisputed facts and matters of law.' (D.04-05-006.) (*Id*.)

Under either standard, the result in this case is the same.

---

[10] Answer at 4.

### 5.2. Analysis

By complying with its existing tariff, PG&E complied with the law. Both parties agree that a utility must comply with its existing tariffs as filed with the Commission.[11] Both parties agree that PG&E has complied with the tariff on file without modification and did not treat the tariff as modified by statute.[12] Therefore, taking the undisputed facts as true, the Complainants have failed to state a cause of action upon which relief can be granted and must be dismissed pursuant to Section 1702.

Complainants argue that PG&E should have *sua sponte* filed an amended tariff to comply with the statutory change. Complainants state that PG&E has previously filed new tariffs with the Commission without waiting for directions from the Commission. In reviewing the Motion to Dismiss, we have treated this factual allegation as true. Additionally, Complainants offer several different theories as to how PG&E, in spite of adhering to its filed tariff, could have violated a law or Commission order. We are not persuaded that any of these theories embodies a valid cause of action.

---

[11] *Pink Dot, Inc. v. Teleport Communications Group* (2001) 89 Cal. App. 4th 407, 416; Complaint at 6; Answer at 8. Complaints, however, assert that the filed tariff was changed by enactment of SB 380. In its *Complainants' Comments on Proposed Decision*, filed May 5, 2014, Complainants state "The Complainants do not agree that the fact that an existing tariff is on file immunizes PG&E from actions and inactions taken or not taken in accordance with the requirements of law, such as Section 399.20."

[12] Complainants' Reply Brief at 20; PG&E's Opening Brief at 20.

### 5.2.1. By Complying with its Commission-Approved Filed Tariff, PG&E Followed the Law

Both parties agree that PG&E complied with its filed tariff. The only issue to resolve is whether, as the Complainants claim, SB 380 was "self-executing" and thereby amended the tariff without further action of PG&E or the Commission.

Complainants assert that under California case law, a statute is "self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced." (*People v. Western Airlines, In*c. 42 Cal. 2d 621, 237 (1954).) In this instance, however, *Western Airlines* is not applicable.

First, SB 380 by itself did not supply a sufficient rule to support the privileges and duties under it. The details of those rules were to be set through the Commission tariff-approval process. Indeed, the preamble for SB 380 specifically notes that implementation of the bill would require an order or other action of the Commission.

Complainants also gloss over the other changes made to the statute by SB 380. In addition to ownership of the facility, SB 380 changed other eligibility requirements, including the location of the generation facility and the purpose of the energy supplied. These changes required the Commission's consideration in order to be properly implemented and coordinated with state RPS policies.

Additionally, Section 399.20 is part of the statute setting forth the California Renewables Portfolio Standard (Article 16 of the Public Utilities Code). At the time SB 380 was enacted, Article 16 stated that "it is the intent of the Legislature that the commission and the State Energy Resources Conservation and Development Commission implement the California Renewables Portfolio

Standard Program described in this article." Had PG&E unilaterally enacted new tariffs on their own, rather than participating in the Commission's active RPS Rulemaking, their actions would have contradicted the stated intent of the California legislature for the Commission to implement the RPS program.

*Western Airlines* also does not have direct application to this case for the simple reason that it is not a case about implementing laws passed by the Legislature. It is a constitutional case addressing the authority of the Legislature to modify, curtail or abridge a constitutional grant. Complainants apparently seek to reason by analogy, with the Commission taking the part of the Legislature. This line of reasoning is a stretch at best. SB 380 was not a constitutional grant and the Commission did not modify, curtail, or abridge SB 380. Rather, the Commission administered a detailed mechanism for utilities to provide, and for consumers to enjoy, a privilege granted by the Legislature. The Commission has not in any way changed the express provisions of Section 399.20, as amended by SB 380.[13]

Therefore, contrary to Complainants' contentions, SB 380 was not self-executing.

### 5.2.2. The Statute did not Require PG&E to Act in Violation of its Filed Tariff

Complainants make a number of ancillary arguments essentially saying that the actual language of Section 399.20 required PG&E to disregard its filed

---

[13] Complainants' reliance on *Western Airlines* is also misplaced because SB 380's preamble and its amendments to § 399.20 specifically grant the Commission authority to modify and curtail particular provisions of § 399.20. Specifically, the Commission may modify or adjust the requirements for any electrical corporation with less than 100,000 service connections, as individual circumstances merit.

tariff. Below, we consider each of Complainants' arguments in turn and find that they are not compelling.

### 5.2.2.1. Section 399.20(f)(1)

Section 399.20(f)(1) currently states that "[a]n electrical corporation shall make the tariff available to the owner or operator of an electric generation facility within the service territory of the electrical corporation, upon request, on a first-come-first-served basis, until the electrical corporation meets its proportionate share of a statewide cap … ."[14]

Complaints assert that the phrase "upon request" means that the utility must disregard the Commission tariff-approval process and make a new tariff available without further action from the Commission.

As discussed above, SB 380 is not self-executing. A utility must adhere to its filed tariff.[15] The phrase "upon request" applies to the current tariff, not proposed, but unapproved tariffs.

### 5.2.2.2. Section 399.20(c)

Section 399.20(c) states that "Every electrical corporation shall file with the commission a standard tariff for electricity purchased from an electric generation facility."

Complainants assert that under Section 399.20(c), PG&E should have made a "ministerial filing" to conform its existing tariff to the changes made by SB 380 "if PG&E believed that further action was necessary."[16] Contrary to

---

[14] Pub. Util. Code § 399.20(f)(1) (as enacted by SB 380).

[15] *Maria Lawrence v. PG&E* (2013) D.13-03-008 at Conclusions of Law 3.

[16] Complainants' Opening Brief at 20.

Complainants contention, as discussed above, PG&E was required to follow Commission direction before making any changes to its tariff based on the statutory amendments.  As required by the Commission, PG&E made a ministerial filing to implement the statutory amendments when, pursuant to D.13-05-034 (and the statute), it filed Advice 4246-E on June 24, 2013.[17]  The Commission approved PG&E's Advice Letter on July 23, 2013.[18]

### 5.2.2.3.   Section 399.20(n)

Section 399.20(n) lists reasons that a utility can reject an application.[19] Complainants argue that a utility cannot reject an application for any reason other than ones specifically listed in the statute.  This means that Complainants' applications could not be rejected for any other reason – including the fact that

---

[17] PG&E's Opening Brief at 4.

[18] *Id.*

[19] Section 399.20(n) states that:

> An electrical corporation may deny a tariff request pursuant to this section if the electrical corporation makes any of the following findings:
>
>> (1) The electric generation facility does not meet the requirements of this section.
>>
>> (2) The transmission or distribution grid that would serve as the point of interconnection is inadequate.
>>
>> (3) The electric generation facility does not meet all applicable state and local laws and building standards and utility interconnection requirements.
>>
>> (4) The aggregate of all electric generating facilities on a distribution circuit would adversely impact utility operation and load restoration efforts of the distribution system.

the tariff containing the SB 380 amendments had not yet been approved by the Commission.

This argument fails for at least two reasons.  First, one of the reasons for rejecting the applications is that Complainants modified the PPA form.  Section 399.20 does not delegate this right to applicants.  Second, there is no indication that this list of statutorily permitted reasons for rejecting an application is an exclusive list.

### 5.2.2.4. Section 399.20(o)

*Complainants' Comments on Proposed Decision* offered an additional theory upon which to bring an action.  Section 399.20(o) states that "Upon receiving notice of denial from an electrical corporation, the owner or operator of the electrical generation facility denied a tariff pursuant to this section shall have the right to appeal that decision to the commission."  Complainants did not raise this theory until after the proposed decision was issued.  It appears that Complainants did not expressly make an appeal under Section 399.20(o).[20]  However, if we deem the current Complaint to qualify as a Section 399.20 appeal, the result would still be dismissal because, as discussed above, PG&E did not violate Section 399.20(n).

### 5.2.3. There is no Basis on which to Find that PG&E Violated Section 453

Complainants allege that PG&E violated Section 453(a) by giving an unlawful disadvantage or prejudice to Complainants because they were not public water or wastewater agencies.  Because Complainants were not eligible

---

[20] Reply Comments of Pacific Gas and Electric Company on Proposed Decision of Judge McKinney, filed May 12, 2014.

for the tariff at issue, Section 453(a) does not apply in this situation. "Discrimination by public utility does not mean merely and literally unlike treatment accorded by a utility to those who may wish to do business with it, but refers to partiality in treatment of those in like circumstances seeking a class of service offered to the public in general." (*International Cable T.V. Corp. v. All Metal Fabricators* (1966) 66 Cal.P.U.C. 366.)  A complainant must allege that it incurred "prejudice or disadvantage in relationship to any comparable situation … or with the services to be provided by any other carrier under this section." (*Sunland Refining Corp. v. Southern Tank Lines, Inc.* (1976) 80 Cal.P.U.C. 806.)

Here, as required by law, PG&E applied its Schedule E-PWF tariff consistently to exclude ***all*** entities other than public water and wastewater facilities from its Schedule E-PWF tariff.  Schedule E-PWF was never made, or intended to be made, available to the "public in general."  Complainants were not in a situation comparable to being a public water or wastewater agency.  As a result, there was no discrimination in PG&E's administration of the tariff.

### 5.3.  Res Judicata and Collateral Estoppel

Because this complaint is dismissed for failure to state a cause of action, this decision does not address the relative merits of PG&E's res judicata or collateral estoppel claims.

## 6.  Conclusion

A complaint must allege a violation of a specific standard contained in a statute, rule or order of the commission, or a Commission-approved tariff. Complainants have failed to do so.  Because PG&E adhered to its existing Schedule E-PWF tariff and because further action by the Commission was necessary before the tariff could be modified or replaced in accordance with

SB 380, the complaint must be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## 7. Categorization and Need for Hearing

There are no disputed issues of material fact and no evidentiary hearings are necessary.

## 8. Comments on Proposed Decision

The proposed decision of the ALJ in this matter was mailed to the parties in accordance with Section 311 of the Public Utilities Code and comments were allowed under Rule 14.3 of the Commission's Rules of Practice and Procedure. Comments were filed on May 5, 2014 by Complainants, and reply comments were filed on May 12, 2014 by PG&E.

## 9. Assignment of Proceeding

Carla J. Peterman is the assigned Commissioner and Jeanne M. McKinney is the assigned ALJ in this proceeding.

## Findings of Fact

1. Complainants each executed and tendered a PG&E Schedule E-PWF standard form PPA and submitted it to PG&E between June 7, 2013 and July 22, 2013.

2. Complainants are not public water or wastewater agencies and their proposed facilities are not sized for the purpose of offsetting electricity demand from such an agency.

3. Pub. Util. Code § 399.20, as originally enacted, limited eligibility to electric generation facilities owned and operated by public water or wastewater agencies that met specific criteria.

4. Complainants did not meet the eligibility requirements of PG&E's Commission-approved Schedule E-PWF.

5.  On July 23, 2013, ALJ DeAngelis found that PG&E's administration of its tariff Schedule E-PWF was reasonable.

6.  In that same ruling, ALJ DeAngelis denied Allco's motion for clarification of whether PG&E could be directed to accept PPAs under Schedule E-PWF from applicants that are not a public water or wastewater agencies.

7.  SB 380 amended Section 399.20 to remove the language requiring an eligible electric generation facility to be owned and operated by a public water or wastewater agency, to be located on or adjacent to agency land, and to be sized to offset an agency's electricity use.

8.  SB 380 required Commission action or order to implement the SB 380 changes to Section 399.20.

9.  SB 380 did not authorize PG&E to implement the changes to Section 399.20 prior to action by the Commission.

10.  PG&E was obligated to follow Commission procedures to replace its Schedules E-PWF and E-SRG tariff and contracts.

11.  In D.13-05-013, the Commission directed PG&E to make specific filings to implement the SB 380 amendments and to implement a new pricing schedule called ReMAT.

12.  PG&E complied with D.13-05-034 by filing a Tier 2 advice letter for approval of its FiT PPA and tariff Schedule ReMAT.

13.  PG&E's original Section 399.20 Schedule E-PWF tariff implemented under AB 1969 remained effective until it was closed on July 24, 2013.

14.  On July 24, 2013 PG&E's Schedule E-ReMAT FiT became effective in place of the AB 1969 Schedule E-PWF tariff.

**Conclusions of Law**

1. Under Section 1702, Complainants must allege a violation of a specific standard contained in a statute, rule, or order of the Commission, or a tariff which has been approved by the Commission.

2. AB 1969 amended the Public Utilities Code to add Section 399.20 and defined "electrical generation facility" as an electric generation facility, owned and operated by a public water or wastewater agency that is a retail customer of an electrical corporation, and meets specific criteria.

3. AB 1969 specifically restricted Section 399.20 tariffs to public water and wastewater agencies with projects located on land owned by the agencies with the purpose of offsetting electrical needs of those agencies.

4. Because SB 380 required an action or order of the Commission prior to implementation; the SB 380 amendments to Section 399.20 were not self-executing.

5. PG&E was not required to *sua sponte* amend its Schedule E-PWF tariff to expand eligibility to entities other than public water or wastewater agencies.

6. PG&E was required to follow Commission direction before amending or replacing its Schedule E-PWF tariff to remove the public water or wastewater agency eligibility requirements.

7. PG&E's Schedule E-PWF tariff was enacted to comply with the language of Section 399.20 as enacted by AB 1969.

8. PG&E's Section 399.20 E-PWF tariff remained in place after passage of SB 380.

9. Because PG&E's Section 399.20 E-PWF tariff remained in place after passage of SB 380, PG&E did not violate Section 399.20 when it rejected Complainants' applications.

10. A complainant who is not a public water or wastewater agency cannot bring a § 453(a) claim based on PG&E's administration of its tariff Schedule E-PWF because that tariff specifically restricted eligible facilities to those operated by a public water or wastewater agency.

11. The complaint should be dismissed with prejudice.

# O R D E R

**IT IS ORDERED** that:

1. The complaint filed by Winding Creek Solar LLC, Bear Creek Solar (NV) LLC, Bear Creek Solar Interconnection LLC, Kettleman Solar LLC, Hollister Solar LLC, Vintner Solar LLC, Bear Creek Solar LLC, Spencer Meadow Solar LLC, and Allco Renewable Energy Limited on July 23, 2013 is dismissed with prejudice for failure to state a claim for which relief may be granted.

2. Hearings are not required.

3. Case 13-07-016 is closed.

This order is effective today.

Dated May 15, 2014, at San Francisco, California.

>           MICHAEL R. PEEVEY
>                  President
>           MICHEL PETER FLORIO
>           CATHERINE J.K. SANDOVAL
>           CARLA J. PETERMAN
>           MICHAEL PICKER
>                  Commissioners