# EXHIBIT G

L//ham

Date of Issuance
**November 21, 2014**

Decision 14-11-044    November 20, 2014

BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA

| | |
|---|---|
| Winding Creek Solar LLC, Bear Creek Solar (NV) LLC, Bear Creek Solar Interconnection LLC, Kettleman Solar LLC, Hollister Solar LLC, Vintner Solar LLC, Bear Creek Solar LLC, Spencer Meadow Solar LLC, and Allco Renewable Energy Limited,<br><br>        Complainants,<br><br>    vs.<br><br>Pacific Gas and Electric Company (U39E),<br><br>        Defendant. | Case 13-07-016<br>(Filed July 23, 2013) |

**ORDER CORRECTING TYPOGRAPHICAL ERROR AND DENYING APPLICATION FOR REHEARING OF DECISION (D.) 14-05-026**

**I. INTRODUCTION**

    In Decision (D.) 14-05-026 (or "Decision"),[1] we dismissed the complaint of Winding Creek Solar LLC, Bear Creek Solar (NV) LLC, Bear Creek Solar Interconnection LLC, Kettleman Solar LLC, Hollister Solar LLC, Vintner Solar LLC, Bear Creek Solar LLC, Spencer Meadow Solar LLC, and Allco Renewable Energy Limited (collectively, "rehearing applicants") for failure to state a claim upon which relief can be granted. The rehearing applicants had sought to execute power purchase agreements ("PPAs") with Pacific Gas and Electric Company ("PG&E") pursuant to

---

[1] All citations to Commission decisions are to the official pdf versions which are available on the Commission's website at: http://docs.cpuc.ca.gov/DecisionsSearchForm.aspx.

Case: 19-30088    Doc# 11655-7    Filed: 12/03/21    Entered: 12/03/21 14:55:37    Page 2 of 18

PG&E's Electric Schedule E-PWF tariff under Public Utilities Code section 399.20.[2] The complaint alleged that PG&E's administration of the tariff was contrary to applicable law and that PG&E erroneously limited the tariff to entities that are public water and wastewater agencies. The complaint requested that the Commission direct PG&E to enter into PPAs with the rehearing applicants under the section 399.20 tariff.

The rehearing applicants timely filed a rehearing application of the Decision. The rehearing application alleges that the Decision: (1) erroneously concluded that Senate Bill ("SB") 380 (Stats. 2009, ch. 328) did not eliminate the public water/wastewater agency restriction in PG&E's section 399.20 tariff; (2) ignored the fact that the burden to change the tariff was placed upon PG&E; (3) violated the plain meaning of section 399.20(f)(1); (4) ignored the plain meaning of section 399.20(c); (5) failed to apply the plain meaning of section 399.20(n); (6) disregarded the plain meaning of section 453; and (7) erroneously applied section 399.20(o). The rehearing application also argues that the Commission has no authority to enforce the public water/wastewater agency restriction in PG&E's tariff and that the restriction was void upon the effectiveness of SB 380.

PG&E filed a response to the rehearing application.

We have reviewed each of the allegations raised in the rehearing application, and are of the opinion that the granting of a rehearing is not warranted. Thus, we deny the application for rehearing of D.14-05-026.

## II. DISCUSSION

### A. SB 380 Was Not Self-Executing.

Assembly Bill 1969 (Stats. 2006, ch. 731) added section 399.20 to the Public Utilities Code. As originally enacted, section 399.20 required electrical corporations, such as PG&E, to establish a new Feed-in-Tariff ("FiT") program specifically for electric generation facilities that are owned and operated by public water

---

[2] All subsequent section references are to the Public Utilities Code, unless otherwise specified.

or wastewater agencies. We issued D.07-07-027[3] to implement AB 1969. In that decision, we approved a standard contract for PG&E to use in administering the FiT. (D.07-07-027, p. 58 [Conclusion of Law 3] (slip op.).)[4] Pursuant to D.07-07-027, PG&E filed with the Commission its Schedule E-PWF tariff and associated standard contract governing the purchase of electricity from public water and wastewater agencies under section 399.20.[5]

      SB 380 made certain amendments to section 399.20. Among other things, the bill changed the definition of an "electric generation facility." One of the changes to the definition was the elimination of the requirement that an electric generation facility be owned and operated by a public water or wastewater agency. The bill also expanded the size of the program from 250 megawatts to 500 megawatts.

      The rehearing applicants allege that the Decision erroneously concluded that SB 380 did not eliminate the public water and wastewater restriction in PG&E's E-PWF tariff. Relying on *People v. Western Airlines, Inc.* (1954) 42 Cal.2d 621 and *California Housing Finance Agency v. Elliott* (1976) 17 Cal.3d 575, the rehearing applicants claim that SB 380 was a self-executing law. (Rehrg. App., p. 2.) They claim that the provisions of SB 380 were clear and needed no further implementation. (Rehrg. App., p. 5.) This allegation has no merit, and the Decision correctly found that SB 380 was not self-executing. (D.14-05-026, pp. 9-10.)

---

[3] *Opinion Adopting Tariffs and Standard Contracts for Water, Wastewater and Other Customers to Sell Electricity Generated from RPS-Eligible Renewable Resources to Electrical Corporations* [D.07-07-027] (2007).

[4] Former section 399.20(e) allowed electrical corporations to make the terms of the tariff available to customers in the form of a standard contract.

[5] In D.07-07-027, we also directed PG&E to create a separate program that would provide a similar opportunity to small renewable generators other than public water or wastewater agencies. PG&E filed Schedule E-SRG for the purchase of electricity from other small renewable generators. This schedule was fully subscribed at the time the rehearing applicants sought to enter into contracts with PG&E.

The preamble to SB 380 explicitly stated that "this bill would require an order or other action of the [C]ommission to implement its provisions."[6] SB 380 required each electrical corporation to file with the Commission a standard tariff for electricity generated by an electric generation facility. (Former Pub. Util. Code, § 399.20, subd. (c).) SB 380 required each electrical corporation to make this tariff available to "customers that own and operate an electric generation facility within the service territory of the electrical corporation, upon request, on a first-come-first served basis," until the electrical corporation met its proportionate share of a 500 megawatt statewide total. (Former Pub. Util. Code, § 399.20, subd. (e).)

The rehearing applicants are correct that SB 380 was effective as of January 1, 2009. But even though SB 380 was in effect as of that date, it still required implementation. The section 399.20 FiT as amended by SB 380 was not available to PG&E's customers until PG&E filed a new or revised tariff with the Commission. As explained further in section II.B., below, this is a process governed by the Commission.

Neither *People v. Western Airlines, Inc.* nor *California Housing Finance Agency v. Elliott* demonstrates that SB 380 was self-executing. In *People v. Western Airlines, Inc.*, the California Supreme Court considered whether former sections 20 and 22 of Article XII of the California Constitution were self-executing.[7] The Supreme Court stated that these sections directly conferred upon the Commission power over the rates of

---

[6] The rehearing applicants claim that the Legislature's statement in the preamble was limited to former section 399.20(h). (Rehrg. App., p. 4, fn. 6.) Former section 399.20(h) provided that: "The [C]ommission may modify or adjust the requirements of this section for any electrical corporation with less than 100,000 service connections, as individual circumstances merit." There is no indication that the Legislature intended that former section 399.20(h) was the only part of SB 380 that required implementation by the Commission. The Legislature stated that an order or action by the Commission was necessary to implement SB 380's "provisions." Furthermore, it was possible that the Commission would not have needed to take any action based on former section 399.20(h) since this section authorized the Commission to modify or adjust the requirements of section 399.20 for certain electrical corporations "as individual circumstances merit." (Former Pub. Util. Code, § 399.20, subd. (h).)

[7] The Legislature repealed sections 20 and 22 of Article XII of the California Constitution in 1974. The Legislature amended article XII to restate its provisions but did not make any substantive changes. (Cal. Const., art. XII, § 9.)

transportation companies and section 20 directly prohibited such companies from increasing their rates without Commission authorization. (*People v. Western Airlines, Inc., supra,* 42 Cal.2d at p. 635.) The Court found these provisions to be self-executing. The Court held that: "[a] constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected or the duty imposed may be enforced." (*Id*. at p. 637.)

The rule set forth in *People v. Western Airlines, Inc.* is not applicable to the instant case. As explained above, the Legislature clearly intended that SB 380 would require implementation by the Commission. In addition, the section 399.20 FiT is part of the California Renewables Portfolio Standard ("RPS") Program,[8] and the Legislature has specifically tasked the Commission and the Energy Commission with implementation of the RPS program. (Pub. Util. Code, § 399.11, subd. (a).)[9] Moreover, the rehearing applicants do not explain why the rule in *People v. Western Airlines, Inc.*, which applied to constitutional provisions, would apply to this case, which involves a statute. (See D.14-05-026, p. 10.)

*California Housing Finance Agency v. Elliott* also involved an inquiry into whether a constitutional provision was self-executing. That case involved article XXXIV, section 1 of the California Constitution, which requires voter approval in any community in which a low-rent housing project is to be developed or acquired by a state public body. Article XXXIV, section 2 explicitly states that the provisions of article XXXIV are self-executing. In contrast, in this case, the Legislature explicitly stated that the provisions of SB 380 would require implementation by the Commission.

---

[8] The provisions of the RPS Program are set forth in Article 16 (commencing with section 399.11) of Division 1, Part 1, Chapter 2.3 of the Public Utilities Code.

[9] The former version of section 399.11(a), which was in effect at the time the Legislature enacted SB 380, referred to the Energy Resources Conservation and Development Commission, which is the formal name of the Energy Commission.

### B. PG&E Was Not Required to Act S*ua Sponte* to Revise Its Tariff but Was Required to Follow Commission Direction Regarding the Implementation of SB 380.

The rehearing applicants sought to enter into contracts with PG&E under PG&E's Schedule E-PWF between June 7, 2013 and July 22, 2013. By its terms, Schedule E-PWF, which was on file with the Commission during this period, only applied to public water and wastewater agencies. Therefore, the rehearing applicants were not eligible to participate in the program set forth in Schedule E-PWF. At the time the rehearing applicants sought to execute the contracts, PG&E had not revised its section 399.20 FiT on file with the Commission to reflect all of the amendments required by SB 380.

Citing several cases involving Southern California Gas Company,[10] the rehearing applicants assert that a utility's lax administration of its tariff is a valid cause of action. (Rehrg. App., pp. 5-6.) The rehearing applicants allege that the burden was on PG&E to maintain a tariff that comports with section 399.20. They allege that PG&E failed to change its tariff to remove the public water/wastewater agency provision for five years, while changing its tariff to reflect the other changes required by SB 380. (Rehrg. App., pp. 6 & 8-10.)

The Southern California Gas Company cases cited in the rehearing application are not relevant to the instant case. In those cases, we found that Southern California Gas Company was not diligent in administering its tariffs that had been filed with the Commission. In this case, it is undisputed that PG&E complied with its tariff that was on file with the Commission.

PG&E acted lawfully by complying with its filed tariff. PG&E has a duty to comply with its filed tariffs. A utility tariff filed with the Commission has the force

---

[10] *Golden Kraft, Inc. v. Southern California Gas Company* [D. 94-05-072] (1994) 54 Cal.P.U.C.2d 638; *Alloy Metals Co. Inc., v. Southern California Gas Company* [D.94-05-074] (1994) 54 Cal.P.U.C.2d 659; *Mission Industries v. Southern California Gas Company* [D. 94-05-075] (1994) 54 Cal.P.U.C.2d 667.

and effect of a statute. (*Dyke Water Company v. Public Utilities Com.* (1961) 56 Cal.2d 105, 123.) Any deviations from the tariff are unlawful unless authorized by the Commission. (*Ibid.*; *California Water and Telephone Co. v. Public Utilities Com.* (1959) 51 Cal.2d 478, 501; Pub. Util. Code, §§ 489, 532 & 761; General Order 96-B, General Rule 8.2.1.) In order to deviate from the terms of its filed tariff, PG&E would have needed to either request a deviation from the Commission or file a new tariff with the Commission with the changed terms. There is nothing in SB 380 that authorized PG&E to deviate from its filed tariff. SB 380 required PG&E to file a tariff with a Commission and to make *the filed tariff* available to customers that own and operate an "electric generation facility."

PG&E was not required to *sua sponte* file an advice letter to revise its tariff but was required to follow our direction regarding the implementation of SB 380.[11] We have jurisdiction over the public utilities of this state, including over electrical corporations, and may "do all things, whether specifically designated in [the Public Utilities Act] or in addition thereto, which are necessary and convenient" in the supervision and regulation of public utilities. (Cal. Const., art. XII, §§ 1-6; Pub. Util. Code, §§ 216, subd. (a) & 701.) In the preamble to SB 380, the Legislature clearly stated its intent that SB 380 would be implemented by the Commission. The preambles to both SB 32 (Stats. 2009, ch. 328) and SB 2 (1X) (Stats. 2011, 1st Ex. Sess. 2011-12, ch. 1), which enacted further amendments to section 399.20, also stated that action by the Commission was necessary to implement the bills' requirements. Furthermore, the

---

[11] The rehearing applicants allege that the Decision ignored the factual evidence that PG&E has *sua sponte* amended its various tariffs to comply with, and conform their tariffs to, legislative changes. (Rehrg. App., pp. 6 & 8-9.) This allegation fails to demonstrate any legal error. The Decision did not ignore this factual evidence. (See D.14-05-026, p. 8.) The fact that PG&E may have filed other advice letters *sua sponte* does not demonstrate that PG&E was required to *sua sponte* file an advice letter to implement SB 380 or was permitted to disregard the Commission's direction regarding the implementation of SB 380. Furthermore, the rehearing applicants' characterization of the advice letters contains factual inaccuracies. For example, the rehearing applicants assert that PG&E's Advice Letters 3965-E-A, 3830-E, 3584-E, and 3410-E-A made *sua sponte* changes to the E-PWF tariff, including, among other things, implementing changes made by SB 380. However, the changes in these advice letters involved changes to the AB 1969 FiT program and primarily involved pricing changes required by D.07-07-027.

Legislature has specifically tasked the Commission and the Energy Commission with implementation of the RPS program.  (Pub. Util. Code, § 399.11, subd. (a).)

We govern the process for the filing of a utility's tariffs.  Subject to statute and due process, we have the authority to establish our own procedures.  (Cal. Const., art. XII, § 2.)  Section 489 provides that a utility's tariffs are to be filed "within the time and in the form as the [C]ommission designates …."  (Pub. Util. Code, § 489; see generally General Order 96-B.)  "In approving a tariff, the [Commission] has the power to control that which in 'any manner affect[s] or relate[s] to rates … or service.' [Citation.]" (*Southern California Edison Co. v. City of Victorville* (2013) 217 Cal.App.4th 218, 228, first and last bracketed insertions added.)

We started the process for implementing SB 380 soon after the Governor signed the bill and PG&E complied with the our directives regarding the bill's implementation.  The Governor approved SB 380 on September 28, 2008.  On November 18, 2008, the administrative law judge in the RPS Rulemaking, Rulemaking (R.) 08-08-009, issued a ruling requiring PG&E, Southern California Edison Company, and San Diego Gas and Electric Company to file and serve proposed modified tariffs consistent with the changes required by SB 380 so that the Commission and interested parties could consider the proposals.  On December 2, 2008, PG&E filed and served its draft revised tariff based on SB 380.

We did not take action on PG&E's draft revised tariff because the Legislature subsequently passed further amendments to section 399.20.  Rather than a piecemeal approach, we had further proceedings to implement all of these amendments.  (See Joint Stipulated Timeline of Events, Attachment A, filed on October 30, 2013.)  The law in effect at the time the rehearing applicants sought to enter into the PPAs with PG&E was not merely the amendments to section 399.20 set forth in SB 380 but also the amendments set forth in SB 32 and SB 2 (1X).  We have since implemented SB 380, as

well as these subsequent statutes.[12]  On June 24, 2013, PG&E filed Advice Letter 4246-E, implementing the new section 399.20 FiT Program.  PG&E's new section 399.20 FiT, Schedule E-Re-MAT, became effective on July 24, 2013, and Schedules E-PWF and E-SRG closed on that date.  Schedule E-Re-MAT does not apply retroactively.

The rehearing applicants allege that section 399.11, which tasks the Commission and the Energy Commission with implementation of the RPS program, does not give the Commission the ability to implement or not implement legislative provisions as the Commission may choose in connection with its RPS rulemaking process.  (Rehrg. App., p. 7.)  The rehearing applicants allege that the Commission cannot approve, disapprove, or change other provisions enacted by the Legislature such as the public water/wastewater agency requirement or section 399.20(n).[13]  (Rehrg. App., p. 7.)  They also allege that the Commission cannot override the provisions of section 491, which allows PG&E to modify its tariffs on 30 days notice.  (Rehrg. App., p. 7.)

The rehearing applicants do not demonstrate that we acted to approve, disapprove, or change provisions enacted by the Legislature.  Rather, we acted within our authority to implement all of the changes to section 399.20 required by SB 380, as well as those required by SB 32 and SB 2 (1X).[14]

---

[12] See *Decision Revising Feed-In Tariff Program, Implementing Amendments to Public Utilities Code Section 399.20 Enacted by Senate Bill 380, Senate Bill 32, and Senate Bill 2 1X and Denying Petitions for Modification of Decision 07-07-027 by Sustainable Conservation and Solutions for Utilities, Inc.* [D.12-05-035] (2012); *Order Modifying Decision (D.) 12-05-035, and Denying Rehearing of Decision, as Modified* [D.13-01-041] (2013); *Decision Adopting Joint Standard Contract for Section 399.20 Feed-In Tariff Program and Granting, In Part, Petitions for Modification of Decision 12-05-035* [D.13-05-034 ] (2013).  Finding of fact 11 of the Decision erroneously cited to D.13-05-013 instead of D.13-05-034.  We modify the Decision to correct this typographical error.

[13] Section 399.20(n) provides that an electrical corporation may deny a tariff request pursuant to section 399.20 based on certain specified findings.  As discussed further in section II.E., below, the Decision did not violate section 399.20(n).

[14] We implemented these statutes in prior decisions such as D.12-05-035 and D.13-05-034.  The rehearing applicants may not collaterally attack these prior decisions.  (See Pub. Util. Code, §§ 1709 ["In all collateral actions or proceedings, the orders and decisions of the [C]ommission which have become final shall be conclusive."] & 1731, subd. (b)(1) [challenge required within 30 days of a decision's issuance].)

Moreover, the rehearing applicants do not explain how we in any way overrode the provisions of section 491. Section 491 merely sets forth the requirements for the notice that a public utility must provide when making changes to its tariffs. We did not in any way override these requirements.[15] There is nothing in section 491 that mandates when PG&E must revise a tariff.

Based on the foregoing, the rehearing application fails to demonstrate that we erred in dismissing the rehearing applicants' complaint.

### C. There Was No Violation of Section 399.20(f)(1).

Section 399.20(f)(1) provides that: "An electrical corporation shall make the tariff available to the owner or operator of an electric generation facility within the service territory of the electrical corporation, upon request…."[16] The rehearing applicants allege that PG&E's failure to make the section 399.20 tariff available to the rehearing applicants constitutes an act done or omitted to be done by PG&E in violation of section 399.20(f)(1). (Rehrg. App., pp. 9-10.) This allegation lacks merit.

The rehearing applicants were not eligible for PG&E's Schedule E-PWF as filed with the Commission. The law requires PG&E to comply with its filed tariffs. (*Dyke Water Company v. Public Utilities Com.*, *supra*, 56 Cal.2d at p. 123; Pub. Util. Code, §§ 489, 532 & 761; General Order 96-B, General Rule 8.2.1.) On the other hand, a tariff that has never been filed with the Commission has no legal effect. The rehearing applicants do not cite to any law that would allow PG&E to disregard its filed tariff and

---

[15] Section 491, in fact, authorizes the Commission to modify the notice requirements set forth in that section: "The [C]ommission, for good cause shown, may allow changes without requiring the 30 days' notice…." (Pub. Util. Code, § 491.)

[16] Section 399.20(f)(1) incorporates amendments made by SB 32, SB 2 (1X), and SB 1122 (Stats. 2012, ch. 612). The tariff referenced in section 399.20(f)(1), is not the tariff pursuant to SB 380, but the tariff that incorporates all of these subsequent amendments to section 399.20. We have implemented the changes required by SB 380, SB 32 and SB 2(1X), and are currently in the process of implementing the changes required by SB 1122, which requires procurement from specified categories of bioenergy projects. SB 380 had a similar provision that required the electrical corporation to make the section 399.20 tariff available upon request. (Former Pub. Util. Code, § 399.20, subd. (e).) However, SB 380's eligibility and program requirements for the tariff differed from the current requirements.

instead offer a tariff that has never been filed with the Commission. There is nothing in section 399.20 that would allow PG&E to do so. The rehearing applicants ignore the requirement in section 399.20 that the tariff is to be filed with the Commission. (Pub. Util. Code, § 399.20, subd. (c); see also former Pub. Util. Code, § 399.20, subd. (c).) The statute requires an electrical corporation to make the filed tariff available, not a proposed tariff that has never been filed with the Commission. (Pub. Util. Code, § 399.20, subd. (f)(1); see also former Pub. Util. Code, § 399.20, subd. (e).)

### D. The Decision Did Not Violate Section 399.20(c).

Section 399.20(c) provides that: "Every electrical corporation shall file with the [C]ommission a standard tariff for electricity purchased from an electric generation facility." The rehearing applicants allege that the Decision re-wrote the plain meaning of the statute by adding a precondition that an electrical corporation's obligation only arises if and when the Commission directs it to file a tariff. (Rehrg. App., p. 11.) They allege that PG&E failed to comply with this statute by not *sua sponte* filing a tariff that incorporated SB 380's amendments. (Rehrg. App., p. 11.)

The rehearing applicants fail to demonstrate a violation of section 399.20(c). As explained above, SB 380 was not self-executing and required implementation. The Commission was in the process of implementing the necessary amendments to section 399.20 and PG&E was required to follow the Commission's direction. PG&E has since filed its section 399.20 tariff that incorporates the amendments required by SB 380, SB 32 and SB 2 (1X).

### E. The Allegations That the Decision Violated Sections 399.20(n) and 399.20 (o) Lack Merit.

Section 399.20(n) sets forth reasons that an electrical corporation may deny a tariff request. Section 399.20(o) permits an owner or operator of the electric generation facility to appeal an electrical corporation's notice of denial to the Commission.[17] The

---

[17] There was no right to such an appeal under SB 380. SB 32, which was enacted after SB 380,

*(footnote continued on next page)*

rehearing applicants allege that PG&E did not make any of the findings required by section 399.20(n), and thus, violated the law when it denied the rehearing applicants' tariff requests. (Rehrg. App., p. 12.) The rehearing application also alleges that the Decision violated section 399.20(o) because the Decision failed to explain how PG&E did not violate section 399.20(n).[18] (Rehrg. App., p. 14.)

The Decision found that PG&E did not violate section 399.20(n) in rejecting the rehearing applicants' tariff requests because the rehearing applicants had modified the standard contract. (D.14-05-026, p. 13.) The Decision also found that there was no indication that section 399.20(n) was intended to be an exclusive list of reasons why an electrical corporation could reject a tariff request. (D.14-05-026, p. 13.)

The rehearing application fails to demonstrate any legal error in the Decision. Section 399.20(n)(3) provides that an electrical corporation may deny a section 399.20 tariff request if the electric generation facility does not meet all applicable state and local laws. A utility tariff filed with the Commission has the force and effect of the law. (*Dyke Water Company v. Public Utilities Com.*, *supra*, 56 Cal.2d at p. 123.) The rehearing applicants were not eligible for PG&E's filed tariff Schedule E-PWF. Therefore, PG&E did not violate section 399.20(n) in rejecting the rehearing applicants' tariff requests. We also did not violate section 399.20(o) by dismissing the complaint.[19]

Furthermore, PG&E was authorized to deny the rehearing applicants' tariff requests because the rehearing applicants modified the standard contracts. Former

---

*(footnote continued from previous page)*

added sections 399.20(n) and 399.20(o) to the Public Utilities Code.

[18] The rehearing applicants did not expressly make an appeal under section 399.20(o), and their complaint was deemed to qualify as the appeal.

[19] The rehearing applicants also allege that the Commission's denial of its appeal under section 399.20(o) was not supported by record evidence. (Rehrg. App., p. 15.) This allegation lacks merit. The Decision determined that the disposition of the rehearing applicants' complaint did not require the resolution of any contested factual matters and relied on uncontested statements and descriptions in the parties' filings. (D.14-05-026, p. 3.) The dismissal of the complaint was based on the undisputed facts that the rehearing applicants were not eligible for Schedule E-PWF, as filed with the Commission, and that PG&E complied with its filed tariff.

section 399.20(e)[20] permitted electrical corporations to make the terms of the section 399.20 tariff available in the form of a standard contract subject to Commission approval. PG&E elected to use a standard contract, which we approved in D.07-07-027. In D.07-07-027, we noted that the tariff and standard contract required each seller to select limited items but was otherwise on a "take it or leave it" basis. (D.07-07-027, pp. 8 and 58 [Conclusion of Law 4] (slip op.).)

The rehearing applicants allege that they used the standard contract but merely removed the representation that they were a public water/wastewater agency. (Rehrg. App., p. 12.) This constitutes a modification to the standard contract.

The rehearing applicants assert that if PG&E had a different form it wished to use, it could have. (Rehrg. App., p. 12.) Former section 399.20(e) required Commission approval of the standard contract. Thus, PG&E could not have offered a modified contract without Commission approval. PG&E and the rehearing applicants could have negotiated to modify the standard contract, but the resulting deal would have been outside the scope of the section 399.20 tariff/standard contract program. (See D.07-07-027, p. 8 (slip op.).)

The rehearing applicants also assert that the rejection of their tariff requests was unlawful because they met the statutory criteria for the section 399.20 tariff as set forth in SB 380. (Rehrg. App., p. 12.) The rehearing applicants could only participate in the section 399.20 program via a filed tariff and they were not eligible for the tariff that was on file with the Commission. Therefore, the rehearing applicants fail to demonstrate that the rejection of the tariff requests was unlawful.

### F. There Was No Violation of Section 453.

Section 453(a) provides: "No public utility shall, as to rates, charges, service, facilities, or in any other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or

---

[20] The current version of section 399.20(g) has a similar provision.

disadvantage." The rehearing applicants allege that PG&E violated section 453 by providing an improper advantage to public water or wastewater agencies to obtain service under the section 399.20 tariff without any statutory basis for doing so. (Rehrg. App., pp. 13-14.) They allege that the Decision's conclusion to the contrary is erroneous as a matter of law. (Rehrg. App., p. 14.)

The rehearing application fails to demonstrate legal error in the Decision. We have explained that under section 453:

> Discrimination by public utility does not mean, merely and literally, unlike treatment accorded by a utility to those who may wish to do business with it, but refers to partiality in the treatment of those in like circumstances seeking a class of service offered to the public in general. With respect to a utility's offer to serve the general public or a limited portion thereof, as evidenced by its schedules of rates and rules, the offer is made, to the extent of the utility's ability to provide the service, to serve impartially any member of the public who may qualify under the rules and is willing to pay the rates; here the duty to serve impartially is correlative with the right to demand and receive the service applied for.

(*International Cable T.V. Corp. v. All Metal Fabricators, Inc.* (1966) 66 Cal.P.U.C. 366, 382-383.) The rehearing applicants requested service under PG&E's Schedule E-PWF. As filed with the Commission, this tariff only applied to public water and wastewater agencies. At the time the rehearing applicants had sought to enter into the PPAs, PG&E's new tariff implementing SB 380, SB 32, and SB 2 (1X) had not yet been filed with the Commission. PG&E had a legal duty to comply with its filed tariff. (*Dyke Water Company v. Public Utilities Com.*, *supra*, 56 Cal.2d at p. 123; Pub. Util. Code, §§ 489, 532 & 761; General Order 96-B, General Rule 8.2.1.) The rehearing applicants were not qualified to accept service under Schedule E-PWF, and thus, were not similarly situated to public water and wastewater agencies. Therefore, the Decision did not err in finding that PG&E did not violate section 453.

### G. The Allegation That the Public Water/Wastewater Agency Restriction Was Unenforceable Has No Merit.

The rehearing applicants allege that once the Legislature passed SB 380, the Commission's legal authority to enforce the public water/wastewater agency restriction in PG&E's tariff ceased. (Rehrg. App., p. 15.) The rehearing applicants rely on Government Code Section 11342.1, which states: "Each regulation adopted, to be effective, shall be within the scope of authority conferred and in accordance with standards prescribed by other provisions of law." (Rehrg. App., p. 15.)

Government Code Section 11342.1 applies to the adoption of regulations, not to tariffs. Regardless, the rehearing applicants fail to demonstrate that we exceeded the scope of our authority by enforcing PG&E's Schedule E-PWF once SB 380 passed. As explained above, SB 380 was not self-executing and required implementation. The rehearing applicants do not cite to any law that prohibited the Commission from keeping the existing FiT program under AB 1969 in place while implementing the new program under SB 380. The Legislature has tasked the Commission with implementation of the section 399.20 FiT program and the RPS program. Moreover, the Legislature has conferred on the Commission expansive authority to "do all things, whether specifically designated in [the Public Utilities Act] or in addition thereto, which are necessary and convenient" in the supervision and regulation of public utilities. (Pub. Util. Code, § 701; see also *Consumers Lobby Against Monopolies v. Public Utilities Com*. (1979) 25 Cal.3d 891, 905-906.)

Furthermore, *assuming arguendo* that SB 380 automatically rendered the public water/wastewater agency provision in Schedule E-PWF void or unenforceable, this still would not have given the rehearing applicants the right to take service under Schedule E-PWF. Schedule E-PWF stated that: "This Schedule is optional for customers who meet the definition of an Eligible Public Water Facility or Eligible Public Wastewater Facility…." This tariff did not apply to any customers other than eligible public water/wastewater facilities. The removal of this provision would have meant that there were no customers eligible for the filed tariff. An amendment or deviation would

have been necessary in order for customers other than public water/wastewater facilities to be able to take service under Schedule E-PWF.  Therefore, the Decision did not err in dismissing the rehearing applicants' complaint.

> **H.	The Claim That the Public Water/Wastewater Agency Restriction Was Void and That No New Tariff Was Needed Lacks Merit.**

The rehearing applicants allege that the public water/wastewater agency restriction in PG&E's Schedule E-PWF was void upon the passage of SB 380 and that there was no need to file a new tariff sheet in order for the repeal of the public water/wastewater agency restriction to take effect.  (Rehrg. App., p. 16.)

As explained above, SB 380 was not self-executing.  The section 399.20 tariff, as amended by SB 380, was not available to PG&E's customers until PG&E filed a new or revised tariff with the Commission.  The rehearing applicants disregard the provision in SB 380 that it is the filed tariff that is made available.  (Former Pub. Util. Code, § 399.20, subds. (c) and (e).)  The rehearing applicants also ignore the fact that there are rules governing the filing of tariffs.  (See generally General Order 96-B.)  Contrary to rehearing applicants' assertions, it was necessary for PG&E to file a new tariff sheet before the section 399.20 tariff, as amended by SB 380, could be made available to its customers.  The rehearing applicants do not cite to any legal authority that demonstrates otherwise.

The rehearing applicants allege that PG&E's section 399.20 standard contract had a severability provision that made it clear that the remainder of the tariff and the standard contract would be in effect minus any invalid or void provisions.  (Rehrg. App., p. 16.)  Section 15 of the standard contract stated:

> If any provision in this Agreement is determined to be
> invalid, void or unenforceable by the [Commission] or any
> court having jurisdiction, such determination shall not
> invalidate, void, or make unenforceable any other provision,
> agreement or covenant of this Agreement and the Parties shall
> use their best efforts to modify this Agreement to give effect
> to the original intention of the Parties.

16

Nothing in Section 15 of the standard contract gave PG&E or other parties to the contract the authority to modify the standard contract or to determine that certain provisions of the standard contract were invalid, void, or unenforceable. Rather, it was for the Commission or a court having jurisdiction to determine whether certain provisions of the standard contract were invalid or void. Any modifications to the standard contract would have required Commission approval. (Former Pub. Util. Code, § 399.20, subd. (e).) Thus, the Decision was correct in determining that it was proper for PG&E to reject the rehearing applicants' tariff requests pursuant to Schedule E-PWF.

### III. CONCLUSION

For the reasons stated above, the application for rehearing of D.14-05-026 fails to demonstrate that rehearing of D.14-05-026 is warranted.

**THEREFORE, IT IS ORDERED** that:

1. Finding of Fact 11 on page 16 is modified to replace D.13-05-013 with D.13-05-034.
2. The application for rehearing of D.14-05-026 is denied.
3. Case (C.) 13-07-016 is closed.

This order is effective today.

Dated November 20, 2014, at San Francisco, California.

>                               MICHAEL R. PEEVEY
>                                        President
>                               MICHEL PETER FLORIO
>                               CATHERINE J.K. SANDOVAL
>                               CARLA J. PETERMAN
>                               MICHAEL PICKER
>                                        Commissioners