1  KELLER BENVENUTTI KIM LLP
   Tobias S. Keller (#151445)
2  (tkeller@kbkllp.com)
   Jane Kim (#298192)
3  (jkim@kbkllp.com)
   David A. Taylor (#247433)
4  (dtaylor@kbkllp.com)
   650 California Street, Suite 1900
5  San Francisco, CA 94108
   Tel: 415 496 6723
6  Fax: 650 636 9251

   JENNER & BLOCK LLP
   Laurie J. Edelstein (#164466)
   (LEdelstein@jenner.com)
   455 Market Street, Suite 2100
   San Francisco, CA 94105
   Tel: 628 267 6811

7

8  *Attorneys for Debtors and Reorganized Debtors*

9          **UNITED STATES BANKRUPTCY COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
10            **SAN FRANCISCO DIVISION**

11

12 **In re:**

13 **PG&E CORPORATION,**

14         **- and -**

15 **PACIFIC GAS AND ELECTRIC**
   **COMPANY,**
16
                  **Debtors.**
17
   ☐ Affects PG&E Corporation
18 ☒ Affects Pacific Gas and Electric Company
   ☐ Affects both Debtors
19
   *\* All papers shall be filed in the Lead Case, No.*
20 *19-30088 (DM).*

21

Bankruptcy Case No. 19-30088 (DM)

Chapter 11

(Lead Case) (Jointly Administered)

**REORGANIZED DEBTORS' OPPOSITION
TO TIGER NATURAL GAS, INC.'S MOTION
FOR RELIEF FROM PLAN INJUNCTION**

[Relates to Docket No. 11535]

Date:  December 21, 2021
Time:  10:00 a.m. (Pacific Time)
Place: (Tele/Videoconference Appearances Only)
       United States Bankruptcy Court
       Courtroom 17, 16th Floor
       San Francisco, CA 94102

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ................................................................................1

II.   BACKGROUND .................................................................................................2

    A.   Bankruptcy Background ...........................................................................2

    B.   The Proof of Claim .................................................................................3

    C.   Procedural Background............................................................................4

    D.   The Reorganized Debtors' Partial Objection to the Proof of Claim.......................5

III.  DISCUSSION ....................................................................................................5

    A.   Judicial Economy Favors Resolution of the Sherman Act Claim............................5

    B.   Tiger Fails to Show Cause to Modify the Plan Injunction......................................6

    C.   The *Curtis* Factors Weigh in Favor of this Court Deciding the Sherman Act Claim...................................................................................................................7

        1.   Modifying the Plan Injunction to Permit the District Court Action to Proceed Will Not Result in Complete Resolution of the Issues .................8

        2.   The Proof of Claim Is Not Based on Any Fiduciary Relationship Between PG&E and Tiger .....................................................................8

        3.   The District Court Is Not a "Specialized Tribunal" ....................................9

        4.   The District Court Action Does Not "Essentially Involve Third Parties" ..9

        5.   Judicial Economy Favors Resolution in the Bankruptcy Court.................10

        6.   The Parties Are Not "Prepared for Trial" in the District Court Action .....11

        7.   The "Balance of Hurt" Requires Resolution in the Bankruptcy Court......12

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*In re Am. Spectrum Realty, Inc.*, 540 B.R. 730 (Bankr. C.D. Cal. 2015) .......................................... 11

*In re Bailey*, 11 BR. 199, 201 (Bankr. E.D. Va. 1981)........................................................................ 8

*In re Baleine, LP*, 2015 U.S. Dist. LEXIS 140145 (C.D. Cal. Oct. 13, 2015) ................................ 11

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162 (9th Cir. 1990)....... 6

*In re Columbia Ribbon & Carbon Mfg. Co.*, 13 B.R. 276 (Bankr. S.D.N.Y. 1981) ........................ 10

*In re Commonwealth Bond Corporation*, 77 F.2d 308 (2d Cir. 1935) ................................................ 8

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) ....................................................................... *passim*

*Dampier v. Credit Invs., Inc. (In re Dampier)*, 2015 Bankr. LEXIS 3800
  (B.A.P. 10th Cir. Nov. 5, 2015)..................................................................................................... 11

*Kronemyer v. Am. Contrs. Indem. Co. (In re Kronemyer)*, 405 B.R. 915 (B.A.P. 9th Cir. 2009)........ 7

*In re Landmark Fence Co.*, 2011 U.S. Dist. LEXIS 150928 (C.D. Cal. Dec. 9, 2011)..................... 12

*Langenkamp v. Culp*, 498 U.S. 42 (1990)........................................................................................... 6

*In re Plumberex Specialties Prods., Inc.*, 311 B.R. 551 (Bankr. C.D. Cal. 2004).............................. 6

*In re SquareTwo Fin. Servs. Corp.*, 2017 Bankr. LEXIS 2570 (Bankr. S.D.N.Y. Sept. 11, 2017)...... 6

*In re Sunland, Inc.*, 508 B.R. 739 (Bankr. D. N.M. 2014)................................................................ 11

**Statutes**

15 U.S.C. § 2..................................................................................................................... *passim*

11 U.S.C. § 362................................................................................................................. *passim*

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, "**PG&E**" or the "**Debtors**," or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") respectfully submit this opposition (the "**Opposition**") to the *Motion for Relief from Plan Injunction* [Docket No. 11535] (the "**Motion**") filed by Tiger Natural Gas, Inc. ("**Tiger**"). Tiger seeks relief from the Plan Injunction (as defined herein) to prosecute the causes of action asserted in Claim No. 64095 (the "**Proof of Claim**") in *Tiger Natural Gas, Inc. v. Pacific Gas and Electric Company, et al.*, Case No. 16-06711 (the "**District Court Action**") pending in the United States District Court for the Northern District of California (the "**District Court**"). In support of the Opposition, the Reorganized Debtors submit the Declaration of Laurie J. Edelstein (the "**Edelstein Decl.**"), filed contemporaneously herewith.

## I. PRELIMINARY STATEMENT

The Reorganized Debtors oppose Tiger's request to modify the Plan Injunction at this time for one simple reason: the bankruptcy claims resolution procedures in this Court provide a more efficient forum to adjudicate Tiger's claim under the Sherman Act, 15 U.S.C. § 2 (the "**Sherman Act Claim**"), before further litigation on Tiger's other claims may become necessary. Tiger's complaint alleges claims under RICO, the Sherman Act, and the California Unfair Competition Law, as well as causes of action under California state law for intentional and negligent misrepresentation, intentional interference with contract, breach of contract, and breach of fiduciary duty against PG&E and three individual PG&E employees. Only the Sherman Act Claim implicates treble damages for PG&E. As asserted in Tiger's Proof of Claim, the resolution of the Sherman Act Claim alone would determine the difference between approximately $12 million in alleged actual damages (plus attorneys' fees) and $36 million in alleged treble damages.

The Reorganized Debtors intend to file a partial objection to Tiger's proof of claim, focused on the Sherman Act Claim, in advance of the hearing on the Motion. No similar dispositive pleading is before the District Court. Indeed, when the District Court Action was stayed as a result of the filing of these Chapter 11 Cases, the deadline for dispositive motions was still five months away. Moreover, the parties in the District Court Action had been litigating—and, if the Court grants Tiger's Motion,

would have to continue to litigate—all of Tiger's claims together.  The Reorganized Debtors submit that judicial determination of the Sherman Act Claim first could provide a path towards a consensual resolution of the entire proceeding.  The Reorganized Debtors have told Tiger that they are willing to stipulate to modification of the Plan Injunction with respect to all other claims; Tiger has refused.[1]

That the District Court Action had been pending for approximately two years before the Petition Date is not sufficient cause to modify the Plan Injunction prior to adjudication of the Sherman Act claim.  In addition, Tiger has conflated four different judges into the "District Court" that it argues has the expertise with respect to the District Court Action.  Core Transport Agents (each, a "**CTA**") filed four separate lawsuits against PG&E.  Judge Seeborg presided over one of the lawsuits and Judge Gilliam presided over two.  Neither is involved with the District Court Action brought by Tiger.  Judge White presides over the District Court Action, with Magistrate Judge Kim handling discovery disputes in the first instance.  Judge White has not had any proceedings in front of him with respect to any of the facts developed during discovery (which closed before the Petition Date with the exception of one limited issue).  Moreover, expert discovery concerning the Sherman Act Claim has yet to be conducted.  Thus, while Judge Seeborg and Magistrate Judge Kim may have experience with facts related to this dispute, Judge White—the only relevant "District Court"—does not.

Therefore, when the Reorganized Debtors bring their objection to the Sherman Act Claim in this Court and ask that the Court grant summary judgment on it based on evidence obtained during fact discovery and expert discovery that has yet to be completed, that litigation will not be duplicative of prior or pending proceedings or a waste of judicial resources.  The Reorganized Debtors submit that this Court's adjudication of the forthcoming Sherman Act Claim objection is appropriate, represents the most efficient use of the courts' resources, is non-prejudicial to any party, and is the path most likely to result in a consensual resolution of the litigation.

## II.     BACKGROUND

### A.     Bankruptcy Background

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary

---

[1] PG&E will address the meager evidence and strained legal theories underpinning these other claims when they are litigated.

cases under chapter 11 of the Bankruptcy Code. Prior to the Effective Date (as defined below), the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner was appointed in either of the Chapter 11 Cases. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

By Order dated June 20, 2020 [Docket No. 8053], the Bankruptcy Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be further modified, amended or supplemented from time to time, and together with any exhibits or scheduled thereto, the "**Plan**"). The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**"). [*See* Docket No. 8252].

The Plan enjoins any person or entity from, among other things, "(i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor." Plan at § 10.6 (the "**Plan Injunction**").

### B. The Proof of Claim

Tiger is a privately-owned provider of retail natural gas to residential and commercial customers throughout the United States. Edelstein Decl., Ex. A, ¶ 15.[2] Tiger filed the Proof of Claim against the Utility on October 18, 2019 for "[n]ot less than $85,264,783 plus other unliquidated damages" based upon the District Court Action. Edelstein Decl., Ex. A, page 2. The Proof of Claim seeks "no less than" $84 million, made up of: (1) $1.2 million in attorneys' fees prior to the filing of the Proof of Claim; (2) no less than $12 million actual damages on all but one claim; (3) no less than

---

[2] Tiger's District Court Action Complaint is attached to the Proof of Claim beginning on page 12.

$36 million in treble damages and attorneys' fees and costs under 18 U.S.C. § 1964(c);[3] and (4) no less than $36 million in treble damages and attorneys' fees and costs under 15 U.S.C. § 15. *Id*., Ex. A, page 9. Tiger also seeks currently unliquidated amounts for: (1) attorneys' fees after the filing of the Proof of Claim; (2) exemplary and punitive damages; and (3) "other expenses." *Id*.

### C. Procedural Background

PG&E moved to dismiss the Complaint on April 3, 2017. Edelstein Decl. ¶ 3. The District Court denied the Motion to Dismiss without a hearing, ruling that Tiger had met its pleading burden. PG&E filed its answer, denying all allegations, in the District Court Action on November 8, 2017. *Id*. at ¶ 4. On February 4, 2019, the Debtors filed a *Notice of Bankruptcy Proceeding* in the District Court Action based on these Chapter 11 Cases. *Id*. at ¶ 5. On February 27, 2019, the District Court entered the *Order Staying Case and Requiring Joint Status Reports*, staying the case. *Id*. at ¶ 6.

As of the Petition Date, the parties had engaged in fact discovery but had not yet conducted expert discovery, submitted motions for summary judgment, filed *Daubert* motions, or undertaken any pre-trial briefing or otherwise prepared for trial. *Id*. at ¶ 7. In fact, expert discovery was not set to close for over three months (on May 6, 2019), the deadline for dispositive motions was nearly five months away (June 21, 2019), *Daubert* motions were not due for six months (August 2, 2019), and trial was not scheduled to begin for over seven-and-a-half months (September 16, 2019). *Id*. at ¶ 8. On the Petition Date, no motions were pending in the District Court Action. *Id*. at ¶ 9.

On October 18, 2019, concurrent with the filing of the Proof of Claim, Tiger filed a motion seeking relief from the automatic stay in order to continue litigating the District Court Action [Docket No. 4322]. After PG&E opposed the motion [Docket No. 4622], the parties stipulated to limited relief from the stay to permit settlement discussions in front of the Honorable Carl J. West (Ret.) [Docket Nos. 5431, 5455]. That mediation was held on May 11, 2020; the parties were unable to reach a consensual resolution. Edelstein Decl. ¶ 10. Another mediation was held pursuant to the *Order Approving ADR and Related Procedures for Resolving General Claims* [Docket No. 9148] before the

---

[3] Although Tiger includes in the Proof of Claim treble damages under the RICO statute, 18 U.S.C. § 1964(c), it has asserted a RICO claim in the District Court Action only against the individual defendants and not directly against PG&E.

1    Honorable Wynne S. Carvill (Ret.) of JAMS on July 21, 2021, and again the parties failed to resolve

2    the dispute. *Id*. at ¶ 11.

3         On December 3, 2021, the Reorganized Debtors offered to stipulate to modification of the Plan

4    Injunction with respect to all but the Sherman Act Claim, but Tiger refused. *Id*. at ¶ 12.

5         **D.    The Reorganized Debtors' Partial Objection to the Proof of Claim**

6         The Reorganized Debtors dispute the validity and amount of the Proof of Claim and are

7    preparing a partial objection to the Sherman Act Claim (the "**Objection**"). The Objection will seek

8    dismissal of the Sherman Act Claim, and the Reorganized Debtors will reserve all rights to object to

9    the remainder of the Proof of Claim at a later date. Resolution of the Objection will require discovery

10   and an evidentiary hearing on the factual disputes that PG&E submits are properly before this Court.

11   **III.    DISCUSSION**

12        This Court is well situated to decide the Sherman Act Claim, which the Reorganized Debtors

13   submit will speed resolution of the entire dispute. Further, Tiger has failed to show "cause" as to why

14   the Plan Injunction should be modified.

15        **A.    Judicial Economy Favors Resolution of the Sherman Act Claim**

16        As Tiger has noted, three factually similar cases brought by CTAs against PG&E have been

17   litigated in the District Court. What Tiger fails to note is each one of those cases settled after the

18   Sherman Act claim was dismissed or the court expressed grave doubts about its viability. In *United*

19   *Energy Trading, LLC v. Pacific Gas and Electric Company*, Case No. 15 Civ. 02383 (N.D. Cal.) (the

20   "**UET Action**"), the plaintiff CTA voluntarily dismissed its Sherman Act claim on the eve of expert

21   discovery. Edelstein Decl. ¶ 13. The UET Action eventually settled. *Id*. at ¶ 14. Following the

22   dismissal of the Sherman Act claim in the UET Action, Judge Gilliam issued orders in *North Star Gas*

23   *Company v. Pacific Gas and Electric Company*, Case No. 15 Civ. 02575 (N.D. Cal.) (the "**North Star**

24   **Action**") and *Vista Energy Marketing, LP v. Pacific Gas and Electric Company*, Case No. 16 Civ.

25   04019 (N.D. Cal.) (the "**Vista Action**"), noting that the plaintiff CTA in the UET Action had dismissed

26   its substantially similar Sherman Act claim. Judge Gilliam further noted that the plaintiff CTA in the

27   UET Action was represented by the same counsel as represented the plaintiff CTAs in the North Star

28   and Vista Actions, and who also represents Tiger here and in the District Court Action. Judge Gilliam

ordered the plaintiff CTAs in the North Star and Vista Actions to state whether they sought to pursue their Sherman Act claims. Edelstein Decl.¶ 15, Exs. B and C. A week later, Judge Gilliam denied PG&E's motions to dismiss, but expressed "substantial doubt" regarding plaintiff CTAs' business torts theory of anticompetitive conduct, the same theory that forms the basis of Tiger's Sherman Act Claim. *Id.* at ¶ 16, Exs. D and E. The plaintiff CTAs in the North Star and Vista Actions settled with PG&E thereafter. Edelstein Decl. ¶ 17. The Reorganized Debtors believe that a ruling on the Sherman Act Claim here likely would facilitate a global resolution of the dispute.

The Objection, which will apply only to the Sherman Act Claim, will enable this Court to resolve that claim first; the Reorganized Debtors have offered to stipulate with Tiger to modification of the Plan Injunction with respect to all other claims. This Court already has jurisdiction over Tiger through its filing of the Proof of Claim. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990). Further, with the filing of the Objection, the Proof of Claim is subject to resolution by this Court as a contested matter. The Reorganized Debtors will file the Objection imminently and will be prepared to propose an expert discovery and summary judgment briefing schedule at the initial status conference on the Objection.

Judge White does not have such a clear-cut path forward because PG&E would need to move for bifurcation under Federal Rule of Civil Procedure 42. The motion practice on that issue would delay resolution of the Sherman Act Claim, and by extension, all of Tiger's other claims. Such motion practice is not necessary before this Court in the context of the Objection.

**B.     Tiger Fails to Show Cause to Modify the Plan Injunction**

Courts apply the same principles of "cause" to requests to modify a plan injunction as are applicable to motions for relief from the automatic stay. *See, e.g.*, *In re SquareTwo Fin. Servs. Corp.*, 2017 Bankr. LEXIS 2570 at *10-11 (Bankr. S.D.N.Y. Sept. 11, 2017). Section 362(d)(1) of the Bankruptcy Code authorizes a court to modify or terminate the automatic stay for "cause," which "has no clear definition and is determined on a case-by-case basis." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (internal citation omitted). The party requesting stay relief bears the burden of making a *prima facie* showing of cause under section 362(d)(1). *See In re Plumberex Specialties Prods.*, *Inc.*, 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004);

3 Collier on Bankruptcy ¶ 362.10 (2019) ("Failure to prove a prima facie case requires denial of the requested relief."). As explained below, Tiger has failed to meet its burden and therefore the Motion should be denied.

### C. The *Curtis* Factors Weigh in Favor of this Court Deciding the Sherman Act Claim

In determining whether cause exists to permit an action to proceed in a non-bankruptcy forum, courts analyze the twelve factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984);[4] *see also Kronemyer v. Am. Contrs. Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) ("We agree that the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another

---

[4] The *Curtis* factors are: (1) whether the relief will result in partial or complete resolution of issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and whether the tribunal has expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination; (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f); (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to a point where the parties are prepared for trial; and (12) the impact of the stay on the parties and the "balance of hurt." 40 B.R. at 799-800.

Tiger states that factors 5, 8, and 9 are not relevant here. Motion at 8. PG&E agrees, and this Opposition does not analyze these factors.

Tiger states that factor 2, relating to interference with the Chapter 11 Cases, and factor 7, relating to prejudice to creditors and harm to the estate, weigh in its favor. Motion at 9, 11. PG&E disputes Tiger's completely unsupported allegations regarding these factors. Litigating a complicated case in another forum would in fact be taxing on the attorneys and outside counsel working on the matter. Edelstein Decl. ¶ 24. Furthermore, as the Reorganized Debtors detailed in the *Status Report Regarding General Claims Reconciliation and Resolution Process* [Docket No. 11361], the Reorganized Debtors have expended substantial effort to make very significant progress through the claims resolution process. Proceeding with a hotly contested litigation in District Court will pull focus on some of the PG&E in-house attorneys and thus slightly slow that resolution process and harm creditors whose claims have not yet been reviewed. *Id.* However, PG&E concedes that these factors do not weigh as heavily in its favor as they did when it opposed Tiger's 2019 relief from stay motion. At best, these factors are neutral with respect to modification of the Plan Injunction.

forum."). Tiger's factual and legal arguments as to each of the nine relevant *Curtis* factors is either fatally flawed or, at best, neutral as to whether there is cause for modification of the Plan Injunction.

        1.      <u>Modifying the Plan Injunction to Permit the District Court Action<br>to Proceed Will Not Result in Complete Resolution of the Issues</u>

Litigation of all of Tiger's claims against PG&E in the District Court might result in resolution of all of those claims—several years down the line. As discussed above, the most efficient path forward to resolution of the entire dispute is for this Court to rule on the Sherman Act Claim. PG&E believes that disposition of the Sherman Act Claim likely will lead to a consensual settlement of the entire litigation between the parties.

        2.      <u>The Proof of Claim Is Not Based on Any Fiduciary Relationship<br>Between PG&E and Tiger</u>

Tiger states that one of its "strongest claims" is that PG&E is a fiduciary to Tiger. Motion at 10. This argument misconstrues the purpose of the *Curtis* factor. It is worth noting that there has been no determination in the District Court Action as to whether PG&E is Tiger's fiduciary. Rather, in the UET Action, Judge Seeborg stated merely that the plaintiff CTA in that proceeding *might* "be able to demonstrate the existence of a fiduciary relationship with PG&E *to the limited extent of billing activities*." Edelstein Decl. ¶ 18, Ex. F, page 15 (emphasis added). However, the mere allegation of a fiduciary relationship is not in and of itself sufficient to satisfy this *Curtis* factor. Lifting the stay may be appropriate only where the non-bankruptcy action concerns non-estate property that the debtor is holding in a fiduciary capacity. *See, e.g., In re Commonwealth Bond Corporation*, 77 F.2d 308, 309 (2d Cir. 1935) ("Once it appears that the state suit does not touch the debtor's property and is not moved by one of its creditors, the suitor should not be impeded, for the adjustment of a bankrupt's relations as fiduciary with its beneficiaries in the future is no affair of the bankrupt court"); *In re Dampier*, 523 B.R. 253, 257 (Bankr. D. Colo. 2015). Such proceedings do not need to be stayed because "they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *Curtis*, 40 B.R. at 799 (quoting *In re Bailey*, 11 BR. 199, 201, 202 (Bankr. E.D. Va. 1981)). Here, even if PG&E's role as billing and collections agent created a fiduciary relationship between PG&E and Tiger, Tiger has made no allegation that PG&E is holding property for Tiger as a fiduciary; Tiger is seeking damages, not the recovery or turnover of non-estate property. Because the

1  alleged breach of that duty does not relate to non-estate property held in a fiduciary capacity, it does

2  not weigh in favor of modifying the Plan Injunction.

3                              3.     <u>The District Court Is Not a "Specialized Tribunal"</u>

4          Tiger claims that this *Curtis* factor points in its favor but concedes that the District Court is not

5  in fact a "specialized tribunal." Motion at 10. Tiger's assertion that the District Court has acquired a

6  particular expertise with the issues in the District Court Action is belied by its own examples: the

7  District Court Action is before Judge White, but Magistrate Judge Kim presided over discovery

8  disputes, and Judges Seeborg and Gilliam presided over the other three CTA actions. *Id*. While the

9  United States District Court for the Northern District of California *as a whole* might have "particular

10  expertise with regard to the legal, regulatory and factual issues at play," *id*., the experience Magistrate

11  Judge Kim, Judge Seeborg, and Judge Gilliam acquired is irrelevant to the Motion. The only District

12  Court that matters for these purposes is Judge White. Although Judge White has ruled on the Motion

13  to Dismiss and an appeal from one of Judge Kim's discovery orders, he generally has not been

14  involved in the discovery process in the District Court Action, and there was no dispositive motion

15  pending before him as of the Petition Date. This Court is just as well-suited to analyze the regulatory

16  and factual issues at play.

17                              4.     <u>The District Court Action Does Not "Essentially Involve Third Parties"</u>

18          Tiger drastically overreaches by stating that the fact that the District Court Action involves

19  claims against three PG&E employees alone is sufficient reason to modify the Plan Injunction. Motion

20  at 10-11. The presence of the three employees named as defendants in the District Court Action in no

21  way renders the District Court Action "essentially" between those employees and Tiger. In fact, at a

22  hearing on March 27, 2019, this Court asked counsel for Tiger "You don't really want to prosecute this

23  lawsuit against one former and two current employees, do you? . . . I mean, that's crazy." Edelstein

24  Decl. ¶ 19, Ex. G at 23:2-5. The Court was referring to proceeding against these individuals in the

25  absence of PG&E, but the reverse is also true: their presence or absence cannot dictate whether the

26  Plan Injunction should be modified. Further, the only claim Tiger has asserted against the individual

27  defendants is a RICO claim. Edelstein Decl., Ex. A at Compl. (First Cause of Action). In addition, in

28

the UET Action, the plaintiff CTA dismissed one of individual defendants after the individuals moved for summary judgment on the RICO claim. Edelstein Decl. ¶ 20. Judge Seeborg then granted summary judgment in favor of the two remaining individual defendants and dismissed the RICO claim. Edelstein Decl. ¶ 18, Ex. F, pages 6, 18. Tiger also failed to serve any expert reports concerning its claim against the individual defendants after the District Court Action against PG&E was stayed upon the Petition Date, but before the District Court Action was stayed against the individual defendants. Edelstein Decl. ¶ 21.[5]

Equally overreaching is Tiger's statement that the Utility is a "conduit of natural gas," between Tiger and Tiger's customers, and thus by implication a "conduit" within the meaning of *Curtis*. Motion at 10-11. This is a misunderstanding of *Curtis* factor 6 (whether "the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question"). The critical point of this factor is *whether the debtor's role in the nonbankruptcy litigation is minimal* because it "*essentially* involves third parties, and the debtor functions *only* as a bailee or conduit for the goods or proceeds in question." 40 B.R. at 800 (emphasis added). For example, stay relief is appropriate where "the instant action is no more than a dispute between third parties and only incidentally involves the debtor, as an alleged bailee of the goods in issue." *In re Columbia Ribbon & Carbon Mfg. Co.*, 13 B.R. 276, 278 (Bankr. S.D.N.Y. 1981). This is not the situation in the District Court Action, which is a billing practices dispute between Tiger on the one hand and PG&E on the other. Tiger seeks a recovery of damages directly from PG&E based on allegations of misconduct *by* PG&E, and the fact that Tiger alleges that PG&E acts as an "intermediary billing agent" between Tiger's customers and Tiger does not render PG&E's role in the litigation "only" that of a bailee.

### 5. Judicial Economy Favors Resolution in the Bankruptcy Court

Tiger argues that it would be inefficient for this Court to bring itself up to speed on the legal and factual issues in this case and that Judge White's familiarity with the case history will make

---

[5] The automatic stay of the District Court Action against PG&E took effect on January 29, 2019, the Petition Date. The District Court, however, did not stay the case against the individual defendants until February 27, 2019. The deadline to serve opening expert reports was February 11, 2019. The individual defendants served opening expert reports on February 11, 2019 in accordance with the District Court's scheduling order. Tiger did not serve any expert reports in connection with its claim against the individual defendants. Edelstein Decl. ¶ 21.

1  resolution more economical. Motion at 11. That might be the case had Judge White presided over

2  every aspect of the litigation, including all discovery disputes, or were there dispositive motions

3  pending before him. However, the Parties have not been before Judge White on substantive legal

4  matters since 2017, when Judge White ruled on PG&E's motion to dismiss. Edelstein Decl. ¶ 22.

5  Following that ruling, Judge White presided over only one appeal from a discovery order by

6  Magistrate Judge Kim. *Id.* at ¶ 23. Expert discovery, summary judgment, and potentially trial on the

7  Sherman Act Claim can be picked up readily by this Court.

8          6.      The Parties Are Not "Prepared for Trial" in the District Court
                   Action

9          Tiger states that prior to the Petition Date, the District Court had scheduled trial to begin on

10  September 16, 2019, and then rehashes its argument that the District Court had developed a particular

11  expertise with respect to the subject matter of the litigation. Motion at 12. However, courts have

12  generally found readiness for trial to weigh in favor of lifting the stay only where trial was imminent.

13  *See, e.g.*, *In re Am. Spectrum Realty, Inc.*, *540* B.R. 730, 742 (Bankr. C.D. Cal. 2015) (five weeks from

14  petition date to scheduled trial date); *In re Baleine, LP*, 2015 U.S. Dist. LEXIS 140145, at *37-38

15  (C.D. Cal. Oct. 13, 2015) (three months); *Dampier v. Credit Invs., Inc. (In re Dampier)*, 2015 Bankr.

16  LEXIS 3800, at *21 (B.A.P. 10th Cir. Nov. 5, 2015) (discovery completed and foreign proceeding set

17  for trial less than three weeks after petition date).

18          As of the Petition Date, trial in the District Court Action was more than seven-and-a-half

19  months away and the parties had not yet conducted expert discovery, submitted motions for summary

20  judgment, filed *Daubert* motions, or undertaken any pre-trial briefing or otherwise prepared for trial.

21  Edelstein Decl. ¶ 7. Moreover, given the high likelihood of contentious litigation occurring during

22  each of these pre-trial phases, *see id.* ¶ 8, there exists a real possibility that if the District Court Action

23  were to resume, it would actually be much longer than seven-and-a-half months before trial actually

24  commenced. The temporally distant nature of any trial in the District Court Action, and the significant

25  discovery and related litigation that must first occur, cuts strongly in favor of denying the Motion. *See,*

26  *e.g., In re Sunland, Inc.*, 508 B.R. 739, 744-745 (Bankr. D. N.M. 2014) (no stay relief where trial

27  scheduled for eight months from petition date and no dispositive motions filed).

28

7.   The "Balance of Hurt" Requires Resolution in the Bankruptcy Court

The "most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." *In re Curtis*, 40 B.R. at 806.  And as the *Curtis* court further noted, "*even slight interference with the administration* may be enough to preclude relief in the absence of a commensurate benefit."  40 B.R. at 806 (emphasis added).  Indeed, "[i]t is not enough for the creditor to merely show that it will be hurt by the continuation of the stay, rather the creditor must show that neither the debtor nor the other creditors will be injured if the stay is lifted." *In re Landmark Fence Co.*, 2011 U.S. Dist. LEXIS 150928, at *23 (C.D. Cal. Dec. 9, 2011).  Tiger has failed to meet its burden to show that the Reorganized Debtors will not be harmed by a modification of the Plan Injunction.  Forcing the relevant PG&E in-house attorneys to focus on a heavily litigated District Court Action as to all of Tiger's claims, as opposed to proceeding in the orderly bifurcated staging outlined above, will cause injury to the Reorganized Debtors.  Edelstein Decl. ¶ 24.  Moreover, as discussed above, adjudication of the Sherman Act Claim and the Reorganized Debtors' Objection thereto first will make a consensual resolution of the entire dispute more likely and thereby increase the possibility of avoiding unnecessary further litigation and the parties' concomitant expense.  Accordingly, the balance of hurt weighs against modification of the Plan Injunction.

WHEREFORE, the Reorganized Debtors respectfully request entry of an order (i) denying the Motion as to the Sherman Act Claim, and (ii) granting such other and further relief as the Court may deem just and appropriate.

Dated: December 7, 2021

**KELLER BENVENUTTI KIM LLP**
**JENNER & BLOCK LLP**

By:  _____*/s/ Laurie J. Edelstein*_____
Laurie J. Edelstein

*Attorneys for Debtors and Reorganized Debtors*