**Exhibit A**

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

## Part 1: Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Tiger Natural Gas, Inc.<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? _____ |

| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Tiger Natural Gas, Inc.<br>c/o Leah Capritta, Esq.<br>Holland & Knight LLP<br>1801 California Street, Suite 5000<br>Denver, Colorado 80202<br><br>Contact phone (303) 974-6646<br>Contact email leah.capritta@hklaw.com | **Where should payments to the creditor be sent?** (if different)<br><br><br><br><br><br>Contact phone _____<br>Contact email _____ |

| 4. Does this claim amend one already filed? | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____ Filed on ____ / ____ / _____<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

Case: 19-30088   Doc# 11673-1   Filed: 12/07/21   Entered: 12/07/21 14:30:17   Page 2 of 49

Claim Number: 64095

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ _Not less than $85,264,783 plus other unliquidated damages_ . **Does this amount include interest or other charges?**

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Various causes of action as detailed in the Addendum and Complaint attached hereto as Exhibit "A"

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | | Amount entitled to priority |
|---|---|---|
| ☐ | Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ | Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ | Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ | Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ | Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ | Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Robert W. Davis, Jr.*
Robert W. Davis, Jr. (Oct 18, 2019)

**Email:** robert.davis@hklaw.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Robert | William | Davis, Jr. |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Holland & Knight LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 200 S. Orange Avenue, Suite 2600 | | |
| | Number        Street | | |
| | Orlando | FL | 32801 |
| | City | State | ZIP Code |
| Contact phone | (407) 244-5176 | Email | robert.davis@hklaw.com |

Official Form 410                                        Proof of Claim                                        page 3

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
    **(attach below)**

☐ **I do _not_ have supporting documentation.**

 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Proof of Claim

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

---

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
18 U.S.C. §§ 152, 157 and 3571.

---

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA  95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

> ## Do not file these instructions with your form

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| In re | Case No. 19-30089 |
|  | Chapter 11 |
| PACIFIC GAS AND ELECTRIC CORP. | Jointly Administered |
| Debtor. |  |

## ADDENDUM TO PROOF OF CLAIM

This Proof of Claim and Addendum thereto is submitted by Tiger Natural Gas, Inc. ("Tiger"), a privately-owned provider of retail natural gas to end-user residential and commercial customers throughout the United States, is headquartered at 1422 East 71st Street, Suite J, Tulsa, Oklahoma 74136.

## I.     BASIS OF THE CLAIM (SUPPLEMENT TO QUESTION NO. 8)

Tiger is a Core Transport Agent ("CTA") registered with the California Public Utilities Commission that provides retail natural gas to residences and small businesses within Debtor Pacific Gas & Electric Company ("Debtor")'s territory in Northern California.

By right under Gas Rule 23, Tiger elected Consolidated PG&E Billing, under which Debtor places Tiger's charges for its gas service on the customer's monthly energy statement, collects from the customer, and then remits payment to Tiger. As such, Debtor acts as Tiger's billing and collections agent. In connection with this role, Debtor sends Tiger daily and monthly electronic billing and payment reports purporting to inform Tiger about the status of its customer accounts.

On November 21, 2016, in the U.S. District Court for the Northern District of California ("Tiger Court"), Tiger filed suit for acts of on-going fraud committed by Debtor and three of its employees ("Tiger Case").  The factual issues in the Tiger Case center on Debtor's billing and

Exhibit 1A to Proof of Claim

collections program, known as "CC&B," its programming, and changes to that programming over the last decade. Specifically, Tiger alleges that Debtor seizes and then delays payment of money paid by Debtor's and Tiger's joint customer that should be remitted to Tiger. Tiger also alleges that Debtor presents certain credits, owed to the customer by Debtor, on the joint customer's energy statement such that the customer believes that no money is owed to Tiger (*i.e.*, the energy statement literally tells the customer that nothing is owed and that no payment is due), again delaying or preventing payment to Tiger. Finally, Tiger alleges that Debtor collects money owed to Tiger from disconnected joint customers and does not pay that amount to Tiger.

Notably, the daily and monthly reports from Debtor to Tiger show only the amount billed by Debtor and the amount that Debtor decided to allocate to Tiger, giving Tiger the intended impression that the customer simply has not paid Tiger while simultaneously giving the joint customer the intended impression that she has paid in full. Debtor and the individual defendants compound this fraud by refusing to provide Tiger with any other information about Tiger's customer accounts.

Tiger's Complaint, attached hereto as Exhibit "I," identifies dozens of false and misleading statements contained in the billing and payment reports constituting wire fraud, which have been on-going since at least 2011, as predicate acts under the Racketeer and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. Tiger named three employees of Debtor as RICO Defendants: Albert Torres, William Chen, and Tanisha Robinson (now Tanisha Brown). Tiger alleges that Debtor PG&E is vicariously liable under a theory of respondeat superior.

Tiger's claims directly against Debtor include violation of the Sherman Act, 15 U.S.C. § 2, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, intentional

#70793224_v4

interference with contract, intentional interference with prospective business advantage; and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.

On December 31, 2018, fact discovery largely closed in the Tiger Case although the Tiger Court ordered Debtor to provide an additional witness and a separate meeting of forensic examiners on several issues surrounding the CC&B system (and the data provided by Debtor from that system). One day of the forensic examination remained when Debtor PG&E filed for Chapter 11 bankruptcy on January 29, 2019.

On February 27, 2019, the Court stayed the Tiger Case in its entirety, directing the parties to provide a status report every 180 days and reserving the right to administratively close the case pending resolution of the Chapter 11 Cases.

## II.   AMOUNT OF CLAIM (SUPPLEMENT TO QUESTION NO. 7)

This Proof of Claim contains both liquidated and unliquidated components, estimated to be no less than $84 million, calculated as follows:

| | |
|---|---|
| Fees, Disbursements and Costs of Holland & Knight LLP, counsel to Tiger, through September 30, 2019: | $1,264,783 (consisting of attorneys' fees of Holland & Knight LLP in the amount of $927,199, plus reimbursable costs of $337,584) |
| Fees, Disbursements and Costs of Holland & Knight LLP, counsel to Tiger, after September 30, 2019: | Presently unliquidated |
| Actual Damages on Causes of Action II through IX: | No less than $12 million |
| Treble Damages and Attorneys' Fees and Costs as Provided in 18 U.S.C. § 1964(c): | No less than $36 million |
| Treble Damages and Attorneys' Fees and Costs as Provided in 15 U.S.C. § 15: | No less than $36 million |
| Exemplary and Punitive Damages as Permitted by Law: | Presently unliquidated |
| Other expenses: | Presently unliquidated |
| **TOTAL:** | **No less than $85,264,783 plus other unliquidated damages** |

#70793224_v4

Case: 19-30088   Doc# 11673-1   Filed: 12/07/21   Entered: 12/07/21 14:30:17   Page 10 of 49

## III.    **GENERAL RESERVATION OF RIGHTS**

This Proof of Claim is filed to protect Tiger from potential forfeiture of its claims and rights as referenced herein.  In filing this Proof of Claim, Tiger does not submit itself to the jurisdiction of this Court for any purpose other than with respect to the allowance of this Proof of Claim for any and all amounts referenced herein, and does not consent to the jurisdiction of the Bankruptcy Court to adjudicate any other matter relating to the matters addressed in this Addendum or Complaint.

The execution and filing of this Proof of Claim, and any subsequent amendment hereof, appearance, pleading, claim or suit is not intended to be, and should not be construed as, (a) a waiver of Tiger's right to assert that the Bankruptcy Court lacks constitutional authority to adjudicate claims asserted against Tiger; (b) a waiver of the right of Tiger to have final orders in non-core or "core" matters implicated by the Supreme Court's holding in Stern v. Marshall entered only after de novo review by a District Court judge; (c) a waiver of the right of Tiger to trial by jury in any proceeding so triable; (d) a waiver of the right of Tiger to have the reference withdrawn by the District Court for any matter involving Tiger, or to assert that the reference has already been withdrawn; or (e) a waiver of any other rights, claims, actions, defenses, set-offs, or recoupments to which Tiger is or may be entitled, in law or in equity, all of which rights, claims, actions, defenses, set-offs, and recoupments Tiger expressly reserves.

To the extent any of the claims asserted herein are administrative claims, nothing herein shall be construed as a waiver of any request for, right to, or expectation of administrative treatment of, any such claims, and Tiger reserves the right to seek payment of the same as administrative expense claims as the same become liquidated.

Tiger reserves all of its procedural and substantive defenses to any claim that may be asserted against Tiger by Debtor or any successor entity thereof, or any other person.  Tiger further

4

reserves all rights to amend or supplement this Claim, including to increase the Claim on account of amounts that become liquidated and other amounts due to Tiger that are not included in this Proof of Claim, whether through inadvertence or otherwise.

#70793224_v4

HOLLAND & KNIGHT LLP
Nicholas B. Melzer (246356)
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Telephone:  213.896.2400
Fax:  213.896.2450
E-mail: nicholas.melzer@hklaw.com

Attorneys for Plaintiff
TIGER NATURAL GAS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGER NATURAL GAS, INC., | ) **Case No.: 3:16-cv-6711** |
| Plaintiff, | ) **COMPLAINT FOR:** |
| vs. | ) **1. Violation of RICO, 18 U.S.C. § 1961-1968** |
| PACIFIC GAS AND ELECTRIC COMPANY, a California corporation; ALBERT TORRES, an individual; BILL CHEN, an individual; TANISHA ROBINSON, an individual, | ) **2. Respondeat Superior/Agency** <br> ) **3. Violation of Sherman Act, 15 U.S.C. § 2;** <br> ) **4. Breach of fiduciary duty** <br> ) **5. Intentional misrepresentation;** <br> ) **6. Negligent misrepresentation;** |
| Defendants. | ) **7. Intentional interference with contract;** <br> ) **8. Intentional interference with prospective business advantage; and** <br> ) **9. Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.** |
| | ) **DEMAND FOR JURY TRIAL** |

Plaintiff Tiger Natural Gas, Inc. ("Tiger" or "Plaintiff") files this Complaint against Defendants Pacific Gas and Electric Company ("PG&E"), Albert Torres, Bill Chen, and Tanisha Robinson for: (1) Violation of RICO, 18 U.S.C. § 1961-1968; (2) Respondeat Superior/Agency; (3) Violation of the Sherman Act § 2, 15 U.S.C. § 2; (4) Breach of fiduciary duty; (5) Intentional misrepresentation; (6) Negligent misrepresentation; (7) Intentional interference with contract; (8) Intentional interference with prospective business advantage; and (9) Violation of the California

COMPLAINT                                Exhibit "G" to Addendum                          CASE NO.:

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. In support of these claims, Tiger respectfully makes the following allegations.

## NATURE OF CASE

1. This case seeks to remedy PG&E's fraudulent, deceptive, and monopolistic practices in California's deregulated retail natural gas market.

2. PG&E is the traditional public utility in Northern California. PG&E currently holds between 70-90% of the natural gas commodity market. Tiger is a certified "Core Transport Agent," or "CTA," which is a competitive provider of natural gas in California. Tiger operates in PG&E's service area.

3. PG&E and Tiger compete to supply natural gas to the same residents and small businesses. Unless the customer affirmatively chooses a different CTA, the customer returns to PG&E by default at the severance of Tiger's contract with the customer.

4. Tiger has chosen consolidated billing and collections, available as a matter of right to CTAs under PG&E's tariffs. Under this option, PG&E sends one bill to the customer reflecting both its charges and Tiger's charges; PG&E is responsible for collecting payments and distributing that money to Tiger. PG&E acts as Tiger's agent for these important business functions.

5. PG&E has willfully and knowingly manipulated its agency position and engaged in improper and unlawful billing, collection, and payment practices under which PG&E uses its position as Tiger's billing and collections agent to effectively misappropriate money from Tiger, defraud Tiger and its customers, and unfairly compete with Tiger for core natural gas customers.

6. For example, PG&E receives payments from Tiger customers and "holds" that money in a PG&E account instead of paying it to Tiger for its commodity charges.

7. Similarly, PG&E applies credits from its own services or programs, such as rebates or credits for the use of solar panels, to Tiger's commodity gas charges. In this way, PG&E effectively misappropriates Tiger's customer charges to offset the money that PG&E owes to customers.

8. PG&E also inappropriately "reverses" customer charges. A "reversal" should occur only where PG&E permanently terminates service to a customer, either because of non-payment or

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 2 -

COMPLAINT

CASE NO.:

because the customer terminates PG&E service altogether. Put in perspective of the billing relationship, a reversal signals to Tiger that PG&E has not and cannot collect on any part of the customer's unpaid balances.

9.      PG&E, however, is reversing Tiger customer accounts for which PG&E has in fact received payment. Instead of applying those charges to the Tiger customer account balance, PG&E is crediting those amounts to its own electric or gas transportation accounts, and then inexplicably reversing the amounts owed to Tiger. PG&E similarly reverses accounts and then deceptively retains the customer.

10.     These actions cause Tiger substantial harm, both with respect to the amounts withheld and with respect to its relationships with its customers. Tiger has lost countless customers who were annoyed or upset at Tiger's collection efforts on fully paid accounts that PG&E falsely informed Tiger were in arrears.

11.     Further, Tiger has disconnected or cancelled hundreds of customer accounts for non-payment based on PG&E's false representations made over the wires in interstate commerce to Tiger that the Tiger customers had not paid their bill for Tiger's charges.

12.     PG&E has also used its fiduciary position as Tiger's billing and collections agent to engage in unlawful competition with Tiger by, among other things, inaccurately informing Tiger's customers that they need not pay for Tiger's services and by using its position as Tiger's billings and collections agent to improperly induce Tiger's customers to switch their service to PG&E.

13.     PG&E's abuse of its fiduciary relationship with Tiger as well as its abuse of its market power as a regulated monopoly is knowingly calculated to drive away as many customers from Tiger as possible back to PG&E; these actions are done with the specific intent to destroy competition in the retail natural gas commodity market in PG&E's service area.

14.     PG&E's actions hurt both consumers and competition in California, increasing commodity gas prices in California.

**THE PARTIES**

15.     Tiger Natural Gas, Inc. is a privately-owned provider of retail natural gas to end-user residential and commercial customers throughout the United States. Tiger is headquartered at 1422

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 3 -

COMPLAINT

CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

1   East 71st Street, Suite J, Tulsa, Oklahoma 74136.

2   16.   Defendant PG&E is a California corporation with its principal place of business

3   located at 77 Beale Street, San Francisco, California 94105. PG&E is a subsidiary of PG&E

4   Corporation and is one of the largest regulated investor-owned electric utilities in California. On its

5   website (http://www.pge.com), PG&E represents that its service area extends from Eureka in the

6   north to Bakersfield in the south, and from the Pacific Ocean to the Sierra Nevada. It operates

7   141,215 circuit miles of electric distribution lines and 18,616 circuit miles of interconnected

8   transmission lines throughout this area. According to its website, PG&E maintains 4.3 million

9   natural gas customer accounts.

10   17.   PG&E is a regulated monopoly utility within its service area. It is regulated by the

11   California Public Utility Commission ("CPUC").

12   18.   Defendant Albert Torres is the Vice President of Customer Operations at PG&E and

13   manages, *inter alia*, PG&E's billing, payment processing, and credit activities for its customers.

14   Defendant Bill Chen works at PG&E as its ESP Services Manager and manages PG&E's

15   relationships with CTAs (as well as PG&E's relationship with competitive electricity providers).

16   Defendant Tanisha Robinson works at PG&E as its Supervisor for EDI Operations and ESP Billing.

17   Ms. Robinson manages Optional Consolidated PG&E Billing and the process by which EDI files

18   (described below) are transmitted to Tiger.

19   **JURISDICTION & VENUE**

20   19.   This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this

21   action arises out of PG&E's violations of the laws of the United States. This Court has

22   supplemental jurisdiction over Tiger's claims based on California law under 28 U.S.C. § 1367. In

23   addition, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are

24   citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and

25   costs.

26   20.   This Court has personal jurisdiction over PG&E because PG&E resides in this State,

27   does business in this State, has engaged in acts or omissions within this State causing injury, and

28   has otherwise established contacts with this State making the exercise of personal jurisdiction

- 4 -

1   proper.

2       21.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) & (2) because PG&E

3   resides in this District, and a substantial part of the events or omissions giving rise to the action

4   occurred in this District.

5   **INTRADISTRICT ASSIGNMENT**

6       22.    Pursuant to Civil L-R 3.2(c), intradistrict assignment in San Francisco is proper

7   because the unlawful conduct that gives rise to these claims occurred in the City and County of San

8   Francisco.

9   **GENERAL ALLEGATIONS**

10       23.    PG&E has been the regulated monopoly utility in Northern California since 1905. It

11   traditionally provided both electricity and natural gas to all end users—both residential and

12   commercial—in its service area. As a monopoly utility, PG&E is regulated by the CPUC. Through

13   the use of a pre-approved formula, the CPUC regulates the rates that PG&E may charge for the

14   energy it provides, including the price it may charge for the commodity of natural gas.

15       24.    According to its website, PG&E has approximately 4.3 million natural gas customer

16   accounts in its service area.

17       25.    In 1991, the state legislature partially deregulated the natural-gas utility industry in

18   California.

19       26.    In connection with this deregulation, the CPUC established a pilot aggregation

20   program which offered residential and small commercial gas customers, called "core" customers,

21   the opportunity to aggregate their gas loads so that they could participate in competitive gas markets

22   and thereby obtain a lower price for natural gas. Because of this program, California residents are

23   free to purchase their commodity gas from either PG&E or from certain private providers, called

24   "Core Transport Agents," or CTAs.

25       27.    The stated purpose of the CTA program is to "lower[] CTA customer prices and

26   enabl[e] [CTAs] to better compete with utilities and weaken monopolies." (*See*

27   http://www.cpuc.ca.gov/General.aspx?id=4803.) CTAs such as Tiger provide much-needed and

28   consumer-driven alternatives to the utility model, such as gas commodity fixed pricing, unlimited

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

usage billing, winter fixed rates and guaranteed lower summer rates that the utility model—PG&E's model in particular—simply cannot provide.

28.     Although California core gas customers may purchase their natural gas from a non-monopoly CTA, the regulated monopoly utilities, including PG&E, continue to provide natural gas utility service to these customers.

29.     Accordingly, the CTAs compete with PG&E for natural gas core customers.

30.     A proposed CTA must fulfill exacting standards to operate in California, completing an extensive application, submitting the fingerprints of its executives, establishing its creditworthiness and, ultimately, posting a security bond. Accordingly, the regulatory process itself creates barriers to entry in addition to typical business needs such as capitalization and market expertise.

31.     CTAs purchase natural gas on the open market and sell the gas directly to end users using PG&E's distribution system. When an end user purchases gas from a CTA instead of PG&E, the utility charges a separate "transportation" charge to the customer. In addition, PG&E typically charges customers for electricity on the same bill.

32.     The natural gas supplied by the CTAs is fungible in chemical composition and function, completely interchangeable with that supplied by PG&E; both may be used by core customers to heat homes and businesses and other such uses.

33.     As another aspect of deregulation, CTAs may elect, as a matter of right, to have their billing consolidated with PG&E's; i.e., both the CTA's and PG&E's charges appear on one statement and the customer pays both with one check (or other method) to PG&E.

34.     Specifically, under PG&E's relevant tariffs, known as its "Gas Rules," CTAs have the right to participate in a billing and payment program called "Optional Consolidated PG&E Billing." If the CTA chooses this billing option, PG&E must calculate the CTA's charges based on the customer's gas usage and apply the proprietary and confidential rate provided by the CTA to PG&E once a month. Under Consolidated PG&E Billing, PG&E "assumes responsibility for the accuracy of the calculation of CTA's charges," but not for the accuracy of the CTA's rate per therm of natural gas provided. Gas Rule No. 23.C.1.c(1)(b)(iv).

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 6 -

COMPLAINT                                                                                     CASE NO.:

35.    PG&E operates Consolidated Billing as a unit separate from its primary business activities. Tanisha Robinson, for example, supervises two employees whose responsibility includes little else beyond sending the electronic files referenced in Paragraphs 54, 66, and 76 and otherwise maintaining the Consolidated Billing structure imposed by Gas Rule 23. William Chen similarly devotes all of his work time to managing either Consolidated Billing or to managing customer care issues (e.g., switching customers' gas commodity service either to or from a CTA) associated with Consolidated Billing.

36.    Under Consolidated Billing, PG&E also acts as the CTA's collections agent. As such, PG&E is required to pay to the CTA the amounts paid to PG&E for the CTA's gas commodity charges after it receives that money from the customer. Gas Rule 23.C.1.c(4)(a). PG&E is required to transfer the received payments to the CTA either 17 days after the bill was rendered to the customer or the next business day after the payment is received by the utility. *Id.*

37.    When transferring payments, PG&E is required to specify the amount paid by each service account. *Id.* If there are any amounts resulting from returned payments (e.g., the customer's check "bounces") or returned payment charges, PG&E may debit those amounts to the CTA on the billing statement for the following month. *Id.* The tariffs permit no other debits or set-offs.

38.    PG&E is responsible for collecting the unpaid balance of all charges from customers, sending notices informing customers of unpaid balances, and taking the appropriate actions to recover any unpaid amounts owed to the CTA. Gas Rule 23.C.1.c(5)(a).

39.    Tiger is a qualified CTA operating in PG&E's service area. Tiger signed a Core Gas Aggregation Service Agreement with PG&E in January 2009 and began serving customers in Northern California shortly thereafter.

40.    Tiger supplies natural gas to its customers by transporting it across interstate pipelines for delivery to the PG&E Citygate. On receipt of Tiger's gas, PG&E charges Tiger both for storing it and for transporting it to the customer based on "take or pay" terms, the amount of which is determined by reference to Tiger's overall volume (or "load") calculated on both a monthly and yearly basis.

41.    Tiger spends significant time and money marketing for customers. These activities

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 7 -

COMPLAINT                                                                                    CASE NO.:

include engaging in direct-mail marketing, door-to-door marketing, internet and print campaigns, and other activities.

42.     As a result of these marketing efforts, Tiger grew its customer base in PG&E's service area to approximately 39,000 customers as of October 2016.

43.     Tiger participates in the Consolidated PG&E Billing Option, making PG&E its billing and collections agent for all of Tiger's core customers in PG&E's service area. Tiger pays PG&E approximately $25,000 per month for this service.

44.     Because PG&E holds all of Tiger's customer information and also is responsible for calculating the amount due, billing those amounts, collecting the money, and providing it to Tiger, the utility exercises a tremendous amount of control over Tiger's customer base.

### PG&E's Payment Withholding Scheme

45.     After PG&E receives the customer's payment, it unilaterally divides the payments among the various service accounts contained in the bill, including Tiger's charges for natural gas, PG&E's transportation charge, and PG&E's electricity charges (if any). PG&E takes the position that this process is proprietary and will not share information about how it divides the payments received. In its role as Tiger's billing and collections agent, PG&E has engaged in improper and unlawful activities which have violated Tiger's rights and caused Tiger damages and irreparable harm in a number of ways.

46.     Specifically, for some of Tiger's core customers, PG&E simply does not remit to Tiger funds it has received for Tiger's gas commodity charges. As of the date of this filing, Tiger has not received full payment from PG&E on thousands of Tiger customer accounts. According to Tiger's records, as of at least October 2016, it is owed over $1.3 million from its customers with aging accounts past due by sixty days or more.

47.     To track the billing process, PG&E regularly provides Tiger with an Electronic Data Interchange ("EDI") file or a file transfer link containing information about each account for which there is activity.  For easy reference, Tiger in this Complaint refers to the types of information packets sent by PG&E as "EDI files" regardless of format.

48.     The EDI files contain information about the status of Tiger's customer accounts.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

Specifically, in the EDI files PG&E makes several representations to Tiger about its customers, including:

    a.    Tiger customers to whom PG&E has sent a bill containing Tiger's commodity gas charges and the amount of Tiger's charges that PG&E will collect;

    b.    Tiger customers who have paid Tiger's previous charges and the amount PG&E has apportioned to Tiger;

    c.    The balance of the Tiger customer's account for Tiger's commodity gas charges;

    d.    The identity of Tiger customers who have not fully paid Tiger's gas charges; and/or

    e.    The number and identity of Tiger customers who have had charges "reversed" by PG&E.

49.    PG&E's EDI files frequently contain intentionally false representations to Tiger about the status of its customer accounts, including representations that certain customers have not paid Tiger's charges, when those customers actually are current.

50.    PG&E sends the EDI files using interstate wires; that is, PG&E typically attaches the file or a link to a file-share site to an email that is sent over the internet from California to Tulsa, Oklahoma.

51.    Tiger relies on the data and representations of PG&E contained in the EDI files. When it does not receive payments from PG&E for its customers, Tiger may contact the customer regarding the delinquency.

52.    Often, however, the customers state that they have fully paid their energy bill to PG&E, including all of Tiger's gas charges.

53.    For these customers, PG&E's EDI files, sent over the internet from California to Tulsa, Oklahoma, and which show that the customer has not made the required payments for Tiger's commodity gas charges, contain intentionally false and misleading information and also fail to disclose material information about Tiger's customer accounts.

54.    For example, PG&E has used transmission over the internet to falsely report the status of the following accounts to Tiger:

    a.    By EDI file transmitted on or about March 7, 2011, PG&E notified Tiger of a

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 9 -

COMPLAINT                               CASE NO.:

delinquency for customer I. Smith (SAID *3870). PG&E continued to notify Tiger of on-going delinquencies by this customer on a daily basis until October 15, 2014, or over 1,000 such occurrences. In fact, the customer had paid in full, and PG&E had simply withheld payment to Tiger. Indeed, Tiger attempted to verify the status of this account with PG&E on October 15, 2013, February 25, 2014, and March 14, 2014, without receiving any substantive information from PG&E. On August 27, 2014, Jennifer Yee, a subordinate of the Individual Defendants stated, over interstate wire, that the customer had made "partial payments." This statement was false when made and, in fact, the customer had made consistent and timely payments. On or about October 15, 2014, Tiger disconnected this customer based on false information provided by PG&E.

b.      By EDI file transmitted on or about April 2, 2015, PG&E notified Tiger of a delinquency for Kyle W. (SAID *6681). PG&E continued to notify Tiger of on-going delinquencies by this customer on a daily basis until July 2, 2015, or about 90 such occurrences. In fact, the customer had timely paid his bill each month and PG&E showed no outstanding balance. Shortly thereafter, Tiger disconnected the customer for non-payment. "Manuel," an employee in PG&E's customer care, told the customer that PG&E had timely remitted each of his payments to Tiger, which was false when made. In addition, PG&E's customer care used the call opportunity occasioned by its false and misleading bills, as well as the disconnection occasioned by PG&E's false and misleading EDI files sent to Tiger, to falsely tell the customer that Tiger costs 60% more than PG&E.

c.      By EDI file transmitted on or about June 30, 2015, PG&E notified Tiger of a delinquency for Paul B. (SAID *1010).  PG&E continued to notify Tiger of these delinquencies until July 21, 2015 and, in fact, backdated several hundred dollars of transactions to June 24, 2014. On August 7, 2015, Tiger, in reliance on PG&E's false statements, sent the customer a collection letter for non-payment. The customer supplied copies of his PG&E bills showing payment in full and then disconnected from Tiger, reverting back to PG&E's gas service.

d.      By EDI file transmitted on or about June 20, 2013, PG&E notified Tiger of a

- 10 -

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

delinquency for customer City of M. (SAID *9520). PG&E continued to notify Tiger of on-going delinquency by this customer on a daily basis until July 20, 2016. That is, PG&E sent over 1,000 EDI files indicating that this customer was delinquent. PG&E's statements were false when made because the customer had, in fact, timely made all payments to PG&E. Alternatively, each of the EDI files sent to Tiger stated that this account had not paid when, in fact, PG&E had applied an energy credit on the customer's bills, indicating to the customer that no payment to Tiger was due.

e.      By EDI file transmitted on or about September 4, 2014, PG&E notified Tiger of a delinquency for customer City of M. (SAID *9115). PG&E continued to notify Tiger of on-going delinquency by this customer on a daily basis until September 2, 2016. That is, PG&E sent over 1,000 EDI files indicating that this customer was delinquent. PG&E's statements were false when made because the customer had, in fact, timely made all payments to PG&E. Alternatively, each of the EDI files sent to Tiger stated that this account had not paid when, in fact, PG&E had applied an energy credit on the customer's bills, indicating to the customer that no payment to Tiger was due.

f.      By EDI file transmitted on or about March 14, 2013, PG&E notified Tiger of a delinquency for customer County of S. C. (SAID *5075). PG&E continued to notify Tiger of on-going delinquency by this customer on a daily basis until March 17, 2016. That is, PG&E sent over 1,000 EDI files indicating that this customer was delinquent. PG&E's statements were false when made because the customer had, in fact, timely made all payments to PG&E. Alternatively, each of the EDI files sent to Tiger stated that this account had not paid when, in fact, PG&E had applied an energy credit on the customer's bills, indicating to the customer that no payment to Tiger was due.

g.      By EDI file transmitted on or about September 8, 2014, PG&E notified Tiger of a delinquency for customer E.R. Mobile Home Park (SAID *1005). PG&E continued to notify Tiger of on-going delinquency by this customer on a daily basis until March 30, 2015. That is, PG&E sent over 200 EDI files indicating that this customer was delinquent. PG&E's statements were false when made because the customer had, in fact, timely made

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 11 -

COMPLAINT                                                                                    CASE NO.:

all payments to PG&E. Alternatively, each of the EDI files sent to Tiger stated that this account had not paid when, in fact, PG&E had applied an energy credit on the customer's bills, indicating to the customer that no payment to Tiger was due.

h.      By EDI file transmitted on or about May 8, 2014, PG&E notified Tiger of a delinquency for customer County of S.J. (SAID *0150). PG&E continued to notify Tiger of on-going delinquency by this customer on a daily basis until September 16, 2015. That is, PG&E sent over 450 EDI files indicating that this customer was delinquent. PG&E's statements were false when made because the customer had, in fact, timely made all payments to PG&E. Alternatively, each of the EDI files sent to Tiger stated that this account had not paid when, in fact, PG&E had applied an energy credit on the customer's bills, indicating to the customer that no payment to Tiger was due.

55.     Tiger has cancelled hundreds of its customer accounts for non-payment based on false information about the status of payments received from PG&E.

56.     Many of these cancelled accounts had fully paid for the natural gas provided by Tiger, but PG&E did not provide those funds to Tiger, creating the impression that the customers had not paid the appropriate charges when, in fact, the customers had remitted to PG&E either the full or partial amount due for Tiger's charges.

57.     Tiger has otherwise continued to supply gas to PG&E for Tiger's active customers—including those detailed in Paragraphs 54a-h, above—not knowing that PG&E's accounting methods either failed to properly bill Tiger's customers for the gas or failed to properly credit to Tiger payments received from such customers. In effect, PG&E's Payment Withholding Scheme dupes Tiger into supplying gas to PG&E, which PG&E holds and uses knowing that its accounting methods ensure that Tiger will not be paid in full for such gas.

58.     PG&E's Payment Withholding Scheme additionally benefits PG&E because Tiger must pay PG&E transportation and storage fees, which are based on the volume of gas Tiger provides for its customers. The transportation and storage fees become stranded costs as a result of the Schemes set forth in this Complaint, since the Schemes prevent Tiger from recouping these costs from the affected customers. These fees are significant: Tiger pays PG&E over $180,000.00

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 12 -

1   per month in transportation fees alone.

2       59.     In other words, PG&E has engaged in a pattern and practice of intentionally

3   withholding money from Tiger that PG&E received from Tiger customers for natural gas delivered

4   by Tiger. PG&E benefits from its deception regardless of the action taken by Tiger. If Tiger cancels

5   the customers' accounts for non-payment, these customers revert back to PG&E for their natural-

6   gas service. If Tiger does not cancel, PG&E continues to receive Tiger's gas without paying for it

7   and continues to charge Tiger to transport and store the gas.

8       60.     Citing its customer confidentiality policies, PG&E refuses to provide information

9   related to the payment status of Tiger's customers. PG&E only tells Tiger the amount of money

10  PG&E has elected to apportion to Tiger. Tiger must trouble the customer for any other information,

11  such as the amount paid to PG&E or how PG&E has credited the customer's balance.

12      61.     In other words, having unlawfully kept money owed to Tiger and perpetuated a

13  scheme to engender cancellations from Tiger (for alleged non-payment) or to appropriate free gas

14  and storage/transportation fees, PG&E affirmatively prevents Tiger from uncovering the scheme by

15  citing "customer privacy" concerns.

16      **PG&E's Energy Credit Scheme**

17      62.     PG&E engages in a pattern and practice of offsetting Tiger's customers' charges for

18  natural gas delivered to Tiger's customers with credits from non-Tiger related charges.

19      63.     Neither the parties' contract nor the Gas Rules permit PG&E to offset PG&E's

20  customer credit structure with amounts owed to Tiger.

21      64.     For example, PG&E offers its customers certain subsidies and credits for obtaining

22  some of their electricity through solar panels and similar renewable energy programs. PG&E

23  improperly applies these credits to Tiger's gas commodities charges, such that the customer sees

24  either that no payment is due for the month or that an amount is due that will not cover Tiger's

25  charges.

26      65.     In other words, PG&E accepts gas from Tiger for these customers and delivers gas to

27  these customers on Tiger's behalf, but informs the customer that s/he does not need to pay any

28  amount because of an applied credit. Effectively, PG&E defrauds Tiger of its gas and uses it to

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 13 -

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

1    subsidize its customer credit programs.

2    66.    Some specific instances of this conduct include:

3    a.    By EDI file transmitted on or about January 23, 2015, PG&E notified Tiger that it

4    had billed Sareth R. (SAID *3593) for Tiger's gas commodity charges. In fact, PG&E had

5    applied an energy credit, indicating to the customer that he owed Tiger nothing. By EDI

6    files transmitted daily on or about August 24, 2015, PG&E similarly notified Tiger that it

7    had continued to bill and was attempting to collect Tiger's charges when in reality PG&E's

8    bills informed the customer that the customer owed nothing due to operation of the energy

9    credit.  Tiger disconnected this customer, relying on PG&E's false statements and returning

10    the account to PG&E's default gas service.

11    b.    By EDI file transmitted on or before September 15, 2015, PG&E notified Tiger that

12    it had billed customer Richard S. (SAID *3010) for Tiger's gas commodity charges. In fact,

13    PG&E had applied an energy credit, indicating to the customer that he owed Tiger nothing.

14    Until August 15, 2016, PG&E similarly sent Tiger daily EDI files stating that it had billed

15    and was attempting to collect Tiger's charges, when in reality PG&E's bills informed the

16    customer that he owed nothing due to operation of the energy credit. In total, PG&E

17    transmitted a total of over 330 false and misleading EDI files. On or about April 13, 2016,

18    Tiger disconnected this customer, relying on PG&E's false statements and returning the

19    account to PG&E's default gas service.

20    c.    By EDI file transmitted on or about June 26, 2012, PG&E notified Tiger that it had

21    billed an account for the City of M. (SAID *9615) for Tiger's gas commodity charges. In

22    fact, PG&E had applied an energy credit, indicating to the customer that it owed Tiger

23    nothing. By EDI files transmitted daily to the present day, PG&E similarly has notified

24    Tiger that it had again billed and was attempting to collect Tiger's charges when in reality

25    PG&E's bills inform the customer that it owes nothing due to operation of the energy credit.

26    In total, PG&E transmitted literally thousands of false and misleading EDI files to Tiger.

27    d.    By EDI file transmitted on or about April 23, 2015, PG&E notified Tiger that it had

28    billed John L. (SAID *1015) for Tiger's gas commodity charges. In fact, PG&E had applied

- 14 -

COMPLAINT

CASE NO.:

an energy credit, indicating to the customer that he owed Tiger nothing. By EDI files transmitted daily until April 11, 2016, PG&E similarly notified Tiger that it had again billed and was attempting to collect Tiger's charges when in reality PG&E's bills informed the customer that he owed nothing due to operation of the energy credit. In total, PG&E transmitted approximately 340 false and misleading EDI files to Tiger.

67.     In each case set forth above, PG&E's EDI file informed Tiger that it billed and was attempting to collect Tiger's gas commodity charges when, in fact, PG&E had applied a credit such that the customer was told not to pay Tiger anything. Further, PG&E's EDI file informed Tiger that the customer was not paying Tiger's gas commodity charges when, in fact, PG&E had induced the unwitting customer into not paying Tiger.

68.     Tiger has cancelled thousands of its customer accounts for non-payment based on false information about the status of payments received from PG&E.

69.     Tiger has otherwise continued to supply gas to PG&E for Tiger's active customers— including those detailed in Paragraphs 66a-d, above—not knowing that PG&E had not only failed to bill the customer but also affirmatively told the customer that s/he need not pay Tiger for its services. In effect, PG&E's Energy Credit Scheme dupes Tiger into supplying gas to PG&E, which PG&E holds and uses knowing that its accounting methods ensure that Tiger will not be paid for such gas and reducing the amount of credit that PG&E owes to the customer.

70.     PG&E's Energy Credit Scheme additionally benefits PG&E because Tiger must pay PG&E transportation and storage fees, which are based on the volume of gas Tiger provides for its customers. The transportation and storage fees become stranded costs as a result of the Schemes set forth in this Complaint, since the Schemes prevent Tiger from recouping these costs from the affected customers. These fees are significant: Tiger pays PG&E over $180,000 per month in transportation fees alone.

71.     In other words, PG&E has engaged in a pattern and practice of intentionally using Tiger's gas and gas commodity charges to underwrite PG&E's energy credit program. PG&E's Energy Credit Scheme also caused Tiger to cancel customers (for alleged non-payment). These customers then default to PG&E's gas commodity service.

- 15 -

72.     Citing its unlawful and unregulated customer confidentiality policies, PG&E refuses to provide information related to the payment status of Tiger's customers. That is, PG&E will only tell Tiger the amount of money PG&E has elected to apportion to Tiger. Tiger must trouble the customer for any other information, such as the amount paid to PG&E or how PG&E has credited the customer's balance.

73.     In other words, having kept money owed to Tiger and perpetuated a scheme to engender either cancellations from Tiger (for alleged non-payment) or free gas from Tiger (when Tiger continues to supply the customer), PG&E affirmatively prevents Tiger from uncovering the scheme by citing "customer privacy" concerns.

**The Reversal Scheme**

74.     PG&E has engaged in a pattern and practice of withholding amounts due to Tiger where PG&E claims that the funds are due for "reversals."

75.     PG&E's EDI files contain information showing which accounts have "reversed."

76.     Some specific examples of this include:

a.     By EDI file transmitted on or about March 15, 2016, PG&E represented that it had billed Richard S. (SAID *3010) $9.35 for Tiger's services, with a purported (but likely fraudulent) balance of $116.46. By EDI file sent on or about March 15, 2016, PG&E informed Tiger that it "reversed" previous customer payments in the amount of $46.90, $38.75, $29.78, $27.71,$27.38, $18.36, $18.26, $15.46, $12.78, $11.46, $9.75, $7.20, $6.82, $6.74, $6.16, $6.07, $5.88, $5.09, $4.96, $4.76, $4.74, $4.71, $4.62, $4.57, $4.46, $4.46, $4.40. That same day, PG&E applied payments in the amount of $1.73, $4.40, $4.46, $4.57, $4.71, $4.74, $4.76, $5.09, $6.74, $6.82, $12.78, $15.46, $18.26, $18.36, $27.71, $29.78, leaving a balance *after* application of payments of $288.32. On or about April 13, 2016, Tiger disconnected this customer, relying on PG&E's false statements and returning the account to PG&E's default gas service. Nevertheless, PG&E continued to apply and reverse these amounts on April 14, 2016, May 14, 2016, June 14, 2016, July 15, 2016, and August 15, 2106, reporting false balances to Tiger on a daily basis.

b.     By EDI file transmitted on or about May 24, 2015, PG&E represented that it had

- 16 -

billed Sareth R. (SAID *3593) $6.94 for Tiger's services, with a purported (but likely fraudulent) balance of $36.79. By EDI file sent on or about May 27, 2015, PG&E informed Tiger that it "reversed" previous customer payments in the amount of $41.33, $34.24, $31.60, $11.91, and $11.01. That same day, PG&E applied payments in the amount of $11.01, $11.91, $31.60, $34.24, and $41.33 leaving a balance *after* application of payments of $36.79. PG&E continued to apply and reverse these and other amounts on June 24, 2015, July 23, 2015, August 24, 2015, September 23, 2015, October 26, 2015, and periodically thereafter, reporting false balances to Tiger on a daily basis. On or about August 24, 2015, Tiger disconnected this customer, relying on PG&E's false statements and returning the account to PG&E's default gas service.

c.        By EDI file transmitted on or about August 7, 2014, PG&E represented that it had billed E.R. Mobile Home Park (SAID *1005) $1,060.86 for Tiger's services, with a purported balance of $1,060.86. By EDI file sent on or about August 11, 2014, PG&E informed Tiger that it "reversed" previous customer payments in the amount of $11,647.19, $3,172.71, $2,750.35, $640.72, and $466.36. That same day, PG&E applied payments in the amount of $11,647.19, $3,172.71, $2,750.35, $640.72, and $466.36. PG&E made additional reversals on that day in the amount of $7,299.88 and $4,918.88. PG&E also applied additional payments on that same day in the amount of $91.61, $256.12, $347.53, $4,918.88, and $7,299.88. PG&E continued to apply and reverse these and other amounts on this account on September 8, 2014, October 8, 2014, November 5 and 18, 2014, and December 6, 2014, causing large swings in the balances reported by PG&E.

77.      In December 2014, PG&E permanently "reversed" thousands of Tiger's customers, representing about $47,635.00 in reversals.  In February 2015, PG&E "reversed" another $30,000.00 worth of customers. Further, Tiger has identified thousands of accounts that PG&E has either reversed or disconnected to itself without notice to Tiger.

78.      Similar to some of the examples in Paragraphs 76a-c, PG&E backdated many of these reversals, as though the reversal had occurred months beforehand.

79.      According to the EDI files sent by PG&E many of the customers reversed by PG&E

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 17 -
COMPLAINT

CASE NO.:

had made payments in the prior months.

80.     PG&E has provided no explanation for this practice, and neither the contract between the parties nor the Gas Rules permit it.

81.     PG&E's EDI files showing a reversal falsely informed Tiger that these customers had "reversed," when in fact, they had not.

82.     Alternatively, PG&E's EDI files showing payments were false because they stated that the customer had paid Tiger's charges when, in fact, the customer had not.

83.     PG&E's actions have damaged Tiger by eroding its customer base, denying it current and future revenue. PG&E's actions have also damaged Tiger by disrupting its cash flow, which impacts nearly every aspect of its business. For example, Tiger cannot accurately project revenue or manage its credit facilities when PG&E mercurially reverses customers or offsets payments. The Schemes similarly interfere with Tiger's relationship with its customers, who become understandably angry and frustrated when their bills do not accurately reflect the balance owed to Tiger, resulting in significant additional expenses and penalties imposed on Tiger.

84.     The Schemes also render near impossible Tiger's ability to perform basic business functions, such as determining and reporting bad debt because the Schemes conceal from Tiger which balances have been paid (but not remitted to Tiger), which customers have been told not to pay Tiger at all (due to the Energy Credit Scheme) and which accounts and payments have been unlawfully reversed back to PG&E (the Reversal Scheme).

85.     The Schemes, moreover, diminish competition within the gas commodity market as a whole. Between 2012 and 2014—before full implementation of the Schemes—the firm pipeline capacity (or "load") for all CTAs grew from approximately 12% share of the total load to approximately 19%. Since implementation of the Schemes, however, the load has steadily and precipitously decreased to 15.4% of the total load.

86.     Further, the Schemes have resulted in increased consumer prices despite an ample supply of natural gas and despite decreasing wholesale prices. Between 2014 and present, the monthly California price of natural gas delivered to residential consumers has *increased* from $10 per thousand cubic feet to $12 per thousand cubic feet. During that same time period, the Citygate

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 18 -

price for natural gas in California has *decreased* from approximately $6.00 per thousand cubic feet to approximately $3.00 per thousand cubic feet. In other words, consumers in California are paying 20% more for natural gas since implementation of the Schemes even though the Citygate price is 50% less than it was in 2014.

87.     Perhaps more important, the Schemes prohibit customers from participating in alternative products, such as fixed price, unlimited usage pricing, winter fixed rates, and guaranteed lower summer rates.

88.     PG&E, as a corporation, does not acknowledge the Schemes. For example, on April 30, 2015, David Reyes (Defendant Robinson's subordinate) admitted in testimony, with PG&E's in-house counsel present, the facts underlying the Energy Credit Scheme (i.e., that non-cash credits are used to "mask" a CTA's charges). The day before, on April 29, 2015, PG&E's in-house counsel averred to the CPUC that PG&E does *not* apply non-cash credits to a CTA's charges. PG&E's in-house counsel have taken no steps to correct or reconcile either statement.

89.     Even after its own employee testified about the Schemes, PG&E has done little or nothing to curtail the unlawful acts of the Individual Defendants. PG&E profits from these acts in several ways: by charging Tiger transportation and storage fees; by increasing the bad debt of its competitors; and by reducing its own liability for mandatory credits. Finally, PG&E is able to charge consumers higher prices despite the falling Citygate cost of natural gas.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**(Violation of the Racketeer and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968)**

90.     Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 89 of this Complaint.

## FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS
### RICO COUNT I
**(Violation of RICO § 1962(c))**

91.     The allegations of paragraphs 1 through 90 are incorporated herein by reference.

92.     This Count is against Defendants Torres, Robinson, and Chen (the "Count I Defendants").

93.     Consolidated Billing is an enterprise engaged in and whose activities affect

- 19 -

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

interstate commerce.  The Count I Defendants engaged in the predicate act of wire fraud by way of the Payment Withholding Scheme, the Energy Credit Scheme and the Reversal Scheme in furtherance of the Consolidated Billing enterprise.

94.     The Count I Defendants are employed by or associate with the enterprise.

95.     The Count I Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding the Plaintiff.

96.     Specifically, Defendant Robinson directs her department to provide Tiger with the Electronic Data Interchange ("EDI") files containing the false information as detailed in Paragraphs 54, 66 and 76. Defendant Robinson directs her department to transmit this false information through interstate wires (i.e., over the internet and telephone network) to Tiger in Tulsa, Oklahoma. Defendant Robinson further directs her department to deceive Tiger when it enquires about these schemes.

97.     Defendant Torres oversees and directs the employees in Customer Operations to withhold payments from Tiger, as described *supra* in Paragraphs 54, 66 and 76. Defendant Torres similarly directs the employees in Customer Operations to apply PG&E energy credit programs (e.g., for solar panels, etc.) to Tiger's charges, as described *supra* in Paragraph 66. Defendant Torres directs the employees in Customer Operations to apply reversals in the manner described in Paragraph 76.  Finally, Defendant Torres directs the employees in Customer Operations to use customer care calls originating from the Payment Withholding Scheme and the Energy Credit Scheme to inform Tiger customers that they do not and will never pay less with Tiger's services and to convince the customer to drop Tiger.

98.     Defendant Chen oversees and manages the CTA program. Defendant Chen manages and implements the Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme. Specifically, Defendant Chen directs and coordinates these schemes between Defendant Robinson and Defendant Torres.

99.     The Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme constitute wire fraud in violation of 18 U.S.C. § 1343. Specifically, each of these Schemes

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

concern the transmission of false information in the EDI files, with the intent of either withholding payments from Tiger, defrauding Tiger of its gas commodity to subsidize PG&E's customer credit program, or reducing Tiger's customer base.

100.     The Payment Withholding Scheme, the Energy Credit Scheme, and the Reversal Scheme involve use of interstate wires (i.e., the internet) to transmit the EDI files to Tiger.

101.      The Count I Defendants have evidenced specific intent to defraud Tiger because the practical effect of the Schemes is that the customer defaults to PG&E's gas commodity service. The Count I Defendants have similarly evidenced specific intent to defraud Tiger because another practical effect of the Schemes is to withhold money from Tiger or to subsidize PG&E's other business units. Finally, the Count I Defendants evidence shows specific intent to defraud Tiger since they have undertaken efforts to conceal the Schemes.

102.     The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

103.     This pattern poses the threat of continuing. The first predicate act of the Reversal Scheme, for example, dates back to 2013 and continues through today. The Count I Defendants deploy the Payment Withholding Scheme and the Energy Credit Scheme each month with Tiger's customers via transmission of the false EDI files.

104.     As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Tiger has been injured in its business and property in that the Count I Defendants defraud Tiger of money or gas commodities and have eroded Tiger's customer base.

105.     WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows:

a.   Actual damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

b.   Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c); and

c.   Any other relief the Court determines is appropriate.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 21 -

COMPLAINT                                                                                        CASE NO.:

**RICO COUNT II**
**(Violation of RICO § 1962(d))**

106.    The allegations of paragraphs 1 through 105 are incorporated herein by reference.

107.    This Count is against Defendants Torres, Robinson, and Chen (the "Count II Defendant(s)").

108.    As set forth above, the Count II Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).

109.    The Count II Defendants have intentionally conspired and agreed to directly and indirectly conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

110.    The Count II Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

111.    As a direct and proximate result of the Count II Defendants' conspiracy to commit racketeering activities and violations of 18 U.S.C. § 1962(c), Tiger has been injured in its business and property in that the Count II Defendants defrauded Tiger of money or gas commodities and have eroded Tiger's customer base.

112.    WHEREFORE, Plaintiff requests that this Court enter judgment against the Count II Defendants as follows:

    a.    Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

    b.    Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c); and

    c.    Any other relief the Court determines is appropriate.

**SECOND CAUSE OF ACTION**
**(Respondeat Superior/Agency)**

113.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 22 -

COMPLAINT                                                                    CASE NO.:

1    through 112 of this Complaint.

2           114.    PG&E is distinct from the Consolidated Billing RICO enterprise operated by

3    Robinson, Chen, and Torres (the "Individual Defendants"). Specifically, Consolidated Billing is not

4    part of PG&E's voluntary business model nor is it intended to be a profitable line of business.

5    Indeed, PG&E neither officially condones nor acknowledges the existence of the Schemes. PG&E

6    officially denies, for example, the existence of the Energy Credit Scheme (as its in-house lawyers

7    did on April 29, 2015 in their averments before the CPUC), even though the Individual Defendants

8    and their employees openly acknowledge the practice and despite the fact that PG&E benefits from

9    it.

10          115.    PG&E has benefited from the racketeering activities of the Individual Defendants.

11   PG&E charges Tiger transportation and storage fees for natural gas. The Schemes increase the bad

12   debt of PG&E's competitors and increase PG&E's market share for core gas customers. Most

13   important, the Schemes reduce PG&E's own liability for any mandatory credit. Finally, as a result

14   of the Schemes, PG&E is able to charge consumers higher prices than it otherwise could, even

15   while the Citygate cost of natural gas falls.

16          116.    The Individual Defendants committed the racketeering activities within the time and

17   space limits of their employment with PG&E. That is, the Individual Defendants committed the

18   racketeering activities while they were working in PG&E's offices and with PG&E's systems. On

19   information and belief, the Individual Defendants were motivated to commit the racketeering

20   activities for the purpose of benefiting PG&E financially through increased profit and market share,

21   and thereby benefiting themselves as the employees responsible.

22          117.    The racketeering activities were of a kind that the Individual Defendants were hired

23   by PG&E to perform legitimately. That is, each Individual Defendant used his/her position at

24   PG&E to perpetuate the Schemes by committing the predicate acts under the auspices of their usual

25   job responsibilities. For example, Defendant Torres oversees the employees in Customer Operations

26   but directs them to withhold payments from Tiger in furtherance of the Payment Withholding

27   Scheme, as described *supra* in Paragraphs 54, 66 and 76. Defendant Torres similarly oversees the

28   employees in Customer Operations but directs them to apply PG&E energy credit programs (e.g.,

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 23 -

COMPLAINT                                                                              CASE NO.:

for solar panels, etc.) to Tiger's charges in furtherance of the Energy Credit Scheme, as described *supra* in Paragraph 66. Defendant Torres also directs the employees in Customer Operations to apply reversals in the manner described in Paragraph 76 in furtherance of the Reversal Scheme. Finally, Defendant Torres directs the employees in Customer Operations to use customer care calls to inform Tiger customers that they do not and will never pay less with Tiger's services and to convince the customer to drop Tiger, in furtherance of the Payment Withholding Scheme and the Energy Credit Scheme. Similarly, Defendants Robinson and Chen direct the employees in ESP Services and EDI Operations to compile and send the EDI files over the wires containing the false information set forth in Paragraphs 54, 66 and 76. None of the Individual Defendants would be able to perpetuate the Schemes without the authority vested in them through their positions at PG&E.

118.    PG&E eventually learned of the Schemes, as evidenced by the presence of its in-house counsel during the testimony of David Reyes on April 30, 2015 but, nonetheless, does nothing to stop them. As their employer, PG&E not only supplied the Individual Defendants with the means to perpetuate the Schemes, but PG&E could have stopped the Individual Defendants and, to date, has not done so.

119.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

    a.    Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

    b.    Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c); and

    c.    Any other relief the Court determines is appropriate.

### THIRD CAUSE OF ACTION
**(Attempt to Monopolize in Violation of the Sherman Act § 2, 15 U.S.C. § 2)**

120.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 119 of this Complaint.

121.    A market exists for the provision of natural gas to Core Customers in Northern

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 24 -

COMPLAINT

CASE NO.:

California. The geographical boundaries of this market are Eureka in the north to Bakersfield in the south, and from the Pacific Ocean to the Sierra Nevada (the "Relevant Geography"). Core Customers are all residential customers within the Relevant Geography regardless of load size, commercial customers with annual loads below 250,000 therms, and those commercial customers with annual loads above 250,000 therms who elect to receive the higher reliability associated with core service. The relevant product in this market is natural gas, which is a fossil fuel extracted from the earth and largely comprised of methane and other hydrocarbons. The natural gas sold to residential and small business customers for use as an energy source is fungible, may be interchanged regardless of the provider, and is not distinguishable by quality. It can be used for heating, cooking, and other household applications.

122.    PG&E is the traditional utility and, until 1991, held a state sanctioned monopoly in the Relevant Geography. Consequently, PG&E currently owns and operates all the infrastructure that physically stores and transports natural gas to Core Customers within the Relevant Geography. As a result of this monopoly, 100% of the Core Customers receive their gas via pipes, meters, and other facilities owned and operated by PG&E.

123.    PG&E also holds a near monopoly on natural gas billing and collections operations within the Relevant Geography. Nearly 100% of the Core Customers in the Relevant Geography receive a monthly utility bill from PG&E, whether for natural gas, the transportation of those services, or both.

124.    The CTAs compete with PG&E to sell natural gas to Core Customers within the Relevant Geography. Approximately twenty-two CTAs operate in the Relevant Geography using PG&E's infrastructure.

125.    Recognizing that establishing utility billing and collection services created an unfair barrier to entry, the CPUC requires PG&E to share its billing and collection services with CTAs. Approximately 18 CTAs use PG&E as their billing and collections agents (i.e., those CTAs use PG&E Consolidated Billing), paying PG&E about $.70 per customer per month for this service. No CTA retails to all Core Customers (i.e., both residential and small commercial) without using PG&E Consolidated Billing. A CTA like Tiger cannot practically or reasonably establish its own

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

billing and collection services within the Relevant Geography and continue to offer natural gas to Core Customers at competitive prices. Thus, without the use of PG&E's billing and collections services, CTAs like Tiger cannot compete with PG&E in the natural gas market. Consequently, PG&E's billing and collections services constitute an essential facility. Though the CPUC has compelled PG&E to share its billing and collection services, the CPUC lacks the effective power to regulate the scope, terms, and manner in which those services are provided to CTAs and has failed to prevent the predatory Schemes from occurring.

126.    Because the number of Core Customers varies and their individual gas usage is difficult to encapsulate, an entity's given market share is typically measured in terms of "load"— the percentage of the overall natural gas demand in the Relevant Geography the entity supplies.  In 2012, PG&E supplied 88% of the total load to Core Customers in the Relevant Geography, while all CTAs combined supplied 12%. By 2014, the CTAs increased their market share to 19%, while PG&E's share decreased to 81% of the total load to Core Customers in the Relevant Geography. Since implementation of the Schemes, however, PG&E has augmented its market share to 85%.

127.    PG&E sets the price for its natural gas to Core Customers on a monthly basis by application of a regulated formula. While the formula itself does not change, PG&E exercises discretion over variables, such as calculation of its purchase price, expenses, overcharges, and the like, to include in the formula. PG&E publishes this price once per month, typically around the twenty-fifth day, without prior approval from the CPUC. CTAs using PG&E's billing and collections must provide their monthly price to PG&E by the first of each month.

128.    PG&E has committed overt predatory and exclusionary acts demonstrating its specific intention to destroy competition for natural gas commodity service to Core Customers in the Relevant Geography by providing its billing and collections services in a fraudulent, unfair, unreasonable, and discriminatory manner, denying the CTAs fair and reasonable access to an essential facility. Specifically, PG&E uses its role as the CTAs' billing agent to withhold money due and owing to the CTAs by operation of the acts set forth in the Payment Withholding Scheme, which misleads the CTA into believing that the customer is not paying. The Energy Credit Scheme deceives both the customer into believing that no payment is due to the CTA and the CTA into

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

believing that the customer willfully is not paying. The CTAs, including Tiger, either disconnect these customers, defaulting them back to PG&E's gas commodity service, or attempt collection efforts which frustrate the customer into returning to PG&E's service. Finally, with the Reversal Scheme, PG&E simply disconnects Core Customers within the Relevant Geography from the CTAs' natural gas service and returns them to PG&E's natural gas service. These fraudulent, unfair, unreasonable, and discriminatory Schemes lack any legitimate business justification and evidence PG&E's specific intent to destroy competition in the natural gas market. Such Schemes are perpetrated against the CTAs not by competitive zeal, but by anticompetitive malice.

129.    PG&E, therefore, intentionally leverages its monopoly in its billing and collections services to expand its market share in the deregulated natural gas commodity market to Core Customers.

130.    The Schemes have several anti-competitive results. First, the Schemes significantly increase operating expenses for CTAs. For example, CTAs must expend large sums—typically millions of dollars annually—on marketing costs just to maintain their customer base as a result of the Reversal Scheme. Quite literally, the Schemes eliminate the CTAs customer base nearly as quickly as a CTA, spending millions of dollars each year, can build it up. CTAs have no ability to expand their output.

131.    In addition, CTAs have large carrying costs because the Payment Withholding Scheme and the Energy Credit Scheme ensure that the CTA will be either paid months late or not at all (that is, the CTAs must buy the natural gas and expend money storing and transporting it while PG&E prohibits payment from the customer).

132.    The Schemes are perpetuated against all CTAs using PG&E's billing and collections services and have resulted in significant loss of the CTA's market share and increased costs to the CTAs. Tiger alone has lost about half of its customers as a result of the Schemes. On May 28, 2016, another competitor, United Energy Trading, LLC filed a Complaint in the Northern District of California (styled *United Energy Trading, LLC v. Pacific Gas and Electric Co., et al.*, Case No. 3:15-cv-02383-RS) alleging, *inter alia*, that it also lost tens of thousands from its peak of 65,000 Core Customers in the Relevant Geography as a result of the Schemes. On June 9, 2016, another

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

competitor, North Star Gas Company d/b/a YEP, filed a Complaint in the Northern District of California (styled *North Star Gas Co. v. Pacific Gas and Electric Co., et al.*, Case No. 3:15-CV-02575-HSG) alleging, *inter alia*, that it has similarly lost tens of thousands from its peak of 54,000 Core Customers in the Relevant Geography as a result of the Schemes.  Similarly, other CTAs, such as Vista Energy, have reported that PG&E carries out the Schemes against their Core Customers in the Relevant Geography and that, similar to Tiger, United Energy and North Star, each CTA has reported loss of customer and market share.

133.    In short, the Schemes drive up the CTAs' expenses and, by winnowing their customer base, reduce the CTAs' effective economies of scale, preventing the CTAs from pricing natural gas as competitively against PG&E's price as they once could since, no matter how low the CTA sets it prices, PG&E can use Consolidated Billing to reverse customers back to itself, or dupe the CTA into terminating the service, or falsely convince their customers to leave the CTA's gas services and return to PG&E's services.

134.    Put another way, the predatory Schemes force CTAs into a Hobson's Choice: remain with PG&E's billing and collections services, operated in a predatory manner; or institute separate billing-and-collections, already determined to be a barrier to entry.

135.    Indeed, as a result of the Schemes, PG&E increased its share of the load—and, therefore, its share of the natural gas market for Core Customers in the Relevant Geography—from 81% to 85% in just the two years since implementing the predatory Schemes.

136.    Consumers themselves have been harmed by PG&E's anticompetitive conduct since PG&E has been able to raise its prices without fear of competition from the CTAs. For example, Core Customers have experienced a 20% increase in gas prices at a time when wholesale gas prices have decreased by 50%, as set forth in Paragraph 86.

137.    The Schemes pose a dangerous probability of allowing PG&E to achieve market power. The Schemes have erected barriers to entry and expansion in the Relevant Geography and resulted in a reduction in competition in the retail natural gas commodity market. Several companies that retail natural gas in other states, such as Colorado based Aurora NG, will not attempt entry as a result of PG&E's predatory practices. Other CTAs have allowed the Reversal

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 28 -

COMPLAINT

CASE NO.:

Scheme to dwindle their customer base for ultimate withdrawal from the market. One such CTA has seen its customer base decline from about 40,000 to just around 5,000 since January 2015; this company will not invest in acquiring additional customers because of the Schemes. PG&E's schemes have made entry and expansion unprofitable, despite the fact that PG&E's gas supply is priced above competitive levels, due to the increased costs of marketing, customer retention, and carrying costs imposed by the Schemes.

138. WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a. Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b. Treble damages and attorneys' fees and costs as provided in 15 U.S.C. § 15; and

c. Any other relief the Court determines is appropriate.

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

139. Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 138 of this Complaint.

140. As set forth above, because Tiger has selected the option of Consolidated PG&E Billing, PG&E acts as Tiger's billing and collections agent for all of Tiger's customers in PG&E's service area.

141. Specifically, PG&E calculates the amounts owed by Tiger's customers for natural gas, sends a bill containing Tiger's charges to Tiger's customers, collects payments from Tiger's customers, and remits (or is supposed to remit) those amounts to Tiger.

142. Under this arrangement, PG&E represents Tiger with respect to billing and collection issues to Tiger's customers and is entrusted with the duty to receive and disburse Tiger's money and to keep accurate records of these transactions. Because they are Tiger's customers, Tiger has a right to control and supervise PG&E's actions as the beneficiary of the fiduciary relationship.

143. Accordingly, PG&E is Tiger's agent under Cal. Civ. Code § 2295, and owes Tiger a

- 29 -

COMPLAINT

CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

fiduciary duty of loyalty.

144.    PG&E has retained moneys that it collected from Tiger's customers for its own benefit and has failed and refused to turn those amounts over to Tiger. This is a breach of PG&E's duty of loyalty to Tiger.

145.    In addition, PG&E has used its special relationship of trust as Tiger's billing and collections agent as well as its position as the default monopoly natural gas provider to improperly compete with Tiger, including making false representations to Tiger about the status of its customer accounts and also encouraging Tiger's customers to cancel Tiger's services so that the customer will revert back to PG&E.

146.    Tiger has been damaged by PG&E's breach of its fiduciary duty to Tiger, including amounts that PG&E has wrongfully withheld from Tiger and customers terminated without reason due to PG&E's fraudulent representations to Tiger.

147.    PG&E's breach of its duty of loyalty and fraud were done intentionally and with malice designed to injure Tiger.  Specifically, as set forth above in Paragraphs 45 through 89, PG&E made repeated false statements to Tiger about the amounts owed and paid by Tiger's customers, and wrongfully allocated Tiger customer payments to PG&E's own charges.

148.    PG&E's breach of its duty of loyalty and fraud were made with the advance knowledge and authorization of William H. Chen, the manager of PG&E's Account Services group for Core Transport Agents.

149.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b.    Exemplary and punitive damages as permitted by law;

c.    Its attorneys' fees and costs incurred as permitted by law; and

d.    Any other relief the Court deems appropriate.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 30 -

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

## FIFTH CAUSE OF ACTION
### (Intentional Misrepresentation)

150.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 149 of this Complaint.

151.    PG&E made repeated, intentionally false statements to Tiger every time that PG&E used the wires to transmit information about Tiger's customer accounts which reflected that Tiger's customers had not paid for all of Tiger's charges, but where in fact the customer had either fully paid for Tiger's charges or where PG&E told the customer not to pay Tiger's charges.

152.    These false statements were made as set forth in Paragraphs 54, 66, and 76 above and included affirmative false statements as to whether a customer had paid for Tiger's charges, as well as the intentional concealment of the fact that the customer had, in fact, paid Tiger's energy charges, but that PG&E retained those monies and applied them to its own customer accounts.

153.    PG&E intended that Tiger rely on PG&E's false statements and intentional concealment. Tiger justifiably relied on PG&E's false statements about its customers by sending collection and disconnection notices to these customers when, in fact, the customer's Tiger charges were fully paid to PG&E.

154.    PG&E's intentional false statements have caused Tiger damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which Tiger mistakenly attempted to collect from when in fact the customer had fully paid all of Tiger's charges but PG&E had wrongfully withheld those amounts from Tiger. Through its actions, PG&E intended to cause Tiger injury. Further, PG&E carried on its actions with a willful and conscious disregard of the rights of Tiger and Tiger's customers.

155.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.    Damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

b.    Exemplary and punitive damages under Cal. Civ. Code § 3294;

1     c.    Its attorneys' fees and costs incurred as permitted by law; and

2     d.    Any other relief the Court deems appropriate.

### SIXTH CAUSE OF ACTION
### (Negligent Misrepresentation)

156.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 155 of this Complaint.

157.    PG&E made repeated false statements to Tiger every time that PG&E used the wires to transmit information about Tiger's customer accounts which reflected that Tiger's customers had not paid for all of Tiger's charges, but where in fact the customer had fully paid for Tiger's charges but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill. These misrepresentations were material and were made without PG&E having reasonable grounds for believing the misrepresentations to be true.

158.    These misrepresentations were made as set forth in Paragraphs 1 through 89 above and included affirmative false statements as to whether a customer had paid for Tiger's charges, as well as the intentional concealment of the fact that the customer had, in fact, paid Tiger's energy charges, but that PG&E retained those monies and applied them to its own customer accounts.

159.    PG&E intended that Tiger rely on PG&E's misrepresentations. Tiger justifiably relied on PG&E's misrepresentations about its customers by, *inter alia*, disconnecting its customers when, in fact, the customer's Tiger charges were fully paid to PG&E.

160.    PG&E's misrepresentations described above have caused Tiger damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which Tiger mistakenly attempted to collect from when in fact the customer had fully paid all of Tiger's charges but PG&E had wrongfully withheld those amounts from Tiger.

161.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 32 -

COMPLAINT                                CASE NO.:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

a.   Actual damages in an amount to be proven at trial, but expected to be in the millions of dollars;

b.   Exemplary and punitive damages under Cal. Civ. Code § 3294;

c.   Its attorneys' fees and costs incurred as permitted by law; and

d.   Any other relief the Court deems appropriate.

### SEVENTH CAUSE OF ACTION
### (Intentional Interference with Contract)

162.   Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 161 of this Complaint.

163.   Tiger and its customers are parties to valid contracts under which Tiger provides natural gas and the customers pay Tiger's charges for that gas.

164.   PG&E is aware of Tiger's contracts with its customers.

165.   PG&E's intentional acts are designed to induce a breach or disruption of the contracts between Tiger and its customers. Specifically, PG&E made repeated, intentionally false statements to Tiger every time that PG&E used the wires to transmit information about Tiger's customer accounts which reflected that Tiger's customers had not paid for all of Tiger's charges, but where in fact the customer had fully paid for Tiger's charges but PG&E intentionally allocated those amounts to PG&E's portions of the customer's bill.

166.   In addition, PG&E's customer service representatives have encouraged Tiger customers to cancel Tiger's services during calls to discuss billing issues, which is an abuse of PG&E's status as Tiger's billing and collection agent.

167.   PG&E intended to interfere with contracts between Tiger and its customers by inducing Tiger to send disconnection notices to these customers when, in fact, the customers' Tiger charges were fully paid to PG&E.

168.   Certain Tiger customers have cancelled their contracts with Tiger based on PG&E's interference with the contracts between Tiger and these customers.

169.   PG&E's intentional interference with the contracts between Tiger and its customers have caused Tiger damages, including lost revenues and income unlawfully withheld by PG&E, lost

- 33 -

COMPLAINT                                                                    CASE NO.:

1   customers, lost market share, out-of-pocket costs associated with trying to collect customer

2   accounts which PG&E falsely represented were not paid, and costs associated with trying to repair

3   customer relationships for customers which Tiger mistakenly attempted to collect from when in fact

4   the customer had fully paid all of Tiger's charges but PG&E had wrongfully withheld those

5   amounts from Tiger.

6          170.    WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as

7   follows:

8          a.      Damages in an amount to be proven at trial, but estimated to be in the millions of

9          dollars;

10         b.      Damages under Cal. Civ. Code § 3294;

11         c.      Its attorneys' fees and costs incurred as permitted by law; and

12         d.      Any other relief the Court deems appropriate.

### EIGHTH CAUSE OF ACTION
### (Intentional Interference with Prospective Business Advantage)

15         171.    Tiger incorporates herein by reference all allegations set forth in Paragraphs 1

16   through 170 of this Complaint.

17         172.    Tiger and its customers have an economic relationship in which Tiger provides

18   natural gas and the customers pay Tiger's charges for that gas and under which there is a probability

19   of future economic benefit to Tiger.

20         173.    PG&E is aware of Tiger's economic relationship with its customers.

21         174.    PG&E's intentional acts are designed to induce a breach or disruption of the

22   economic relationship between Tiger and its customers. Specifically, PG&E made repeated,

23   intentionally false statements to Tiger every time that PG&E used the wires to transmit information

24   about Tiger's customer accounts which reflected that Tiger's customers had not paid for all of

25   Tiger's charges, but where in fact the customer had fully paid for Tiger's charges but PG&E

26   intentionally allocated those amounts to PG&E's portions of the customer's bill.

27         175.    PG&E intended to interfere with the economic relationship between Tiger and its

28   customers by inducing Tiger to send disconnection notices to these customers when, in fact, the

- 34 -
COMPLAINT                                                                        CASE NO.:

customers' Tiger charges were fully paid to PG&E.

176.     In addition, PG&E's customer service representatives have encouraged Tiger customers to cancel Tiger's services during calls to discuss billing issues, which is an abuse of PG&E's status as Tiger's billing and collection agent.

177.     Certain Tiger customers have cancelled their economic relationship with Tiger based on PG&E's interference with the economic relationship between Tiger and these customers.

178.     PG&E's intentional interference with the economic relationship between Tiger and its customers have caused Tiger damages, including lost revenues and income unlawfully withheld by PG&E, lost customers, lost market share, out of pocket costs associated with trying to collect customer accounts which PG&E falsely represented were not paid, and costs associated with trying to repair customer relationships for customers which Tiger mistakenly attempted to collect from when in fact the customer had fully paid all of Tiger's charges but PG&E had wrongfully withheld those amounts from Tiger.

179.     WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

    a.     Damages in an amount to be proven at trial, but estimated to be in the millions of dollars;

    b.     Exemplary and punitive damages under Cal. Civ. Code § 3294;

    c.     Its attorneys' fees and costs incurred as permitted by law; and

    d.     Any other relief the Court deems appropriate.

### NINTH CAUSE OF ACTION
#### (Violation of Cal. Bus. & Prof. Code § 17200, et seq.)

180.     Tiger incorporates herein by reference all allegations set forth in Paragraphs 1 through 179 of this Complaint.

181.     PG&E's actions as described above are unlawful, unfair, anti-competitive, and/or fraudulent business practices as defined by Cal. Bus. & Prof. Code § 17200, et seq.

182.     PG&E's unlawful, unfair, anti-competitive, and/or fraudulent business practices have caused Tiger damages and irreparable harm.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400

- 35 -

COMPLAINT                                                                 CASE NO.:

183.     Tiger seeks restitution of all amounts paid by Tiger customers to PG&E that PG&E has not remitted to Tiger, plus applicable interest.

184.     WHEREFORE, Plaintiff requests that this Court enter judgment against PG&E as follows:

a.     Restitution of all amounts paid by Tiger customers for Tiger natural gas charges which are being wrongfully held by PG&E;

b.     Its attorneys' fees and costs incurred as permitted by law; and

c.     Any other relief the Court deems appropriate.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff TIGER NATURAL GAS, INC. prays for judgment against Defendants Pacific Gas and Electric Company, Albert Torres, Bill Chen, and Tanisha Robinson as follows:

(1)     Actual damages on all applicable Counts in an amount to be proven at trial;

(2)     Treble damages and attorneys' fees and costs as provided in 18 U.S.C. § 1964(c);

(3)     Treble damages and attorneys' fees and costs against Pacific Gas & Electric Company as provided in 15 U.S.C. § 15;

(4)     Exemplary and punitive damages as permitted by law;

(5)     Any other attorneys' fees and costs as permitted by law; and

(6)     Such other and further relief as may be appropriate.

## JURY DEMAND

Tiger respectfully demands a trial by jury under Fed. R. Civ. P. 38 on all of its claims so triable as permitted by law.

Dated:  November 18, 2016

/s/ Nicholas B. Melzer
HOLLAND & KNIGHT LLP
Nicholas B. Melzer

Attorneys for Plaintiff
TIGER NATURAL GAS, INC.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400

- 36 -

COMPLAINT

CASE NO.:

# Electronic Proof of Claim_XS@ZW27386

Final Audit Report

| | |
|---|---|
| Created: | 2019-10-18 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAbnc9cEooBiz84kZhO2chClyIkumZ_tgA |

## "Electronic Proof of Claim_XS@ZW27386" History

Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-18 - 5:31:26 PM GMT

Robert W. Davis, Jr. (robert.davis@hklaw.com) uploaded the following supporting documents:
Attachment
2019-10-18 - 5:37:01 PM GMT

Web Form filled in by Robert W. Davis, Jr. (robert.davis@hklaw.com)
2019-10-18 - 5:37:01 PM GMT- IP address: 38.142.100.54

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/77.0.3865.75 Safari/537.36)
2019-10-18 - 5:37:04 PM GMT- IP address: 38.142.100.54

Signed document emailed to Prime Clerk E-Filing (efiling@primeclerk.com) and Robert W. Davis, Jr. (robert.davis@hklaw.com)
2019-10-18 - 5:37:04 PM GMT



POWERED BY
Adobe Sign