**Exhibit D**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH STAR GAS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, et al.,<br><br>Defendants. | Case No. 15-cv-02575-HSG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 60 |

Defendants Pacific Gas & Electric Company (PG&E), Albert Torres, Bill Chen, and Tanisha Robinson move to dismiss the First Amended Complaint ("FAC") filed by Plaintiff North Star Gas Company. More specifically, they seek to dismiss Plaintiff's claims pursuant to (1) the doctrine of *respondeat superior* and (2) the Sherman Act, 15 U.S.C. § 2.

For the reasons set forth below, the Court **DENIES** Defendants' motion to dismiss.

**I.   BACKGROUND**

   **A.   Factual Allegations**

The Court summarized the relevant factual allegations of this case in addressing Defendants' first motion to dismiss. *See* Dkt. No. 53 at 2-5.

   **B.   Procedural History**

Plaintiff filed this action on June 9, 2015, asserting claims under federal and state law. Against Torres, Chen, and Robinson ("Individual Defendants"), Plaintiff asserts substantive and conspiracy claims under the civil Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* FAC ¶¶ 97-118. Against PG&E alone, Plaintiff asserted nine claims, including—as relevant here—*respondeat superior* liability for the RICO counts, *id.* ¶¶ 119-25, and attempted monopolization in violation of the Sherman Act, *id.* ¶¶ 126-44.

On September 15, 2015, Defendants moved to dismiss Plaintiff's original complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 22. On September 26, 2016, the Court issued an order granting in part and denying in part Defendants' motion. As relevant here, the Court dismissed Plaintiff's Sherman Act claim, finding that Plaintiff's "refusal to deal" theory of antitrust injury was not cognizable under Section 2. Dkt. No. 53 at 41. The Court also found, however, that it could not rule out the possibility that Plaintiff could allege facts to support a business torts theory of anticompetitive conduct, and granted leave to amend on that ground. *Id.* at 42-43.

As to Plaintiff's *respondeat superior* claim, Defendants failed to argue in their motion that Plaintiff had inadequately pled those claims, instead raising that argument for the first time in their reply brief. *See* Dkt. No. 53 at 29-20 n.8. Because the Court does not consider arguments raised for the first time on reply where doing so could prejudice the opposing party, the Court was not inclined to consider the argument. *Id.* Nevertheless, Plaintiff's counsel acknowledged at the motion hearing that its *respondeat superior* claims needed to be pled with greater specificity, so the Court dismissed the claim with leave to amend. *Id.*

On October 26, 2016, Plaintiff filed the FAC. Dkt. No. 56. Defendants filed this second motion to dismiss the FAC on November 9, 2016. Dkt. No. 60. On January 24, 2017, the Court issued an order directing the parties to provide supplemental briefing on the legal basis, if any, for allowing a showing of anticompetitive conduct under Section 2 in a regulated industry based on a business torts theory. Dkt. No. 75. The parties did so on February 6, 2017. *See* Dkt. No. 78 (Plaintiff's briefing); Dkt. No. 79 (Defendants' briefing).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [it]self out of court" if it "plead[s] facts which establish that it cannot prevail on its . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

## III. DISCUSSION

Defendants contend that Plaintiff fails to state a claim as to its causes of action based on the *respondeat superior* doctrine and the Sherman Act. The Court addresses each claim in turn.

### A. *Respondeat Superior*

Under the doctrine of *respondeat superior*, an employer may be vicariously liable for its employee's RICO torts where: (1) the employer is distinct from the enterprise, *Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992); (2) the "employer benefitted from its employee's RICO violation," *Oki Semiconductor Co. v. Wells Fargo Bank Nat'l Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002); and (3) the employee's acts were committed "within the course and scope of her employment," *id.* Here, Plaintiff has adequately pled its *respondeat superior* claim.

#### i. Distinctiveness

First, for purposes of RICO liability, the Court held in its previous order that PG&E, the employer, was sufficiently distinct from Consolidated Billing, the alleged enterprise. *See* Dkt. No. 53 at 35-36.

#### ii. Employer Benefit

Second, Plaintiff's allegations could support a finding that PG&E benefitted from the

1    alleged RICO violation. For example, Plaintiff alleges that PG&E applied customers' PG&E
2    credits to North Star's gas charges, rather than to those customers' PG&E electricity bills, thereby
3    putting the customer in default with North Star. *See* FAC ¶¶ 63-73. Plaintiff alleges this confusion
4    led it to cancel more than 10,000 accounts for "non-payment based on what may be false
5    information about the status of payments received from PG&E." *Id.* ¶ 70. When those accounts are
6    cancelled, those customers automatically revert back to paying for PG&E's gas services. *Id.* ¶ 73.
7    More broadly, Plaintiff alleges that Defendants' schemes have led to a reduction of competition in
8    the market, which has increased PG&E's market share and allowed PG&E to charge higher prices.
9    *Id.* ¶¶ 92-93. While Defendants may challenge the factual bases for these assertions, the Court
10   must accept all facts pled in the FAC as true at this stage of the litigation.

### iii.  Course and Scope of Employment

For the doctrine of *respondeat superior* to be applicable, the alleged wrongdoing must also take place "within the course and scope of . . . employment." *Oki Semiconductor*, 298 F.3d at 775. This requirement is satisfied when "(1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform." *Id.* at 776. Plaintiff has pled facts that could support such a showing.

First, Plaintiff alleges that "the Defendants committed the racketeering activities while they were working in PG&E's offices and with PG&E's systems," FAC ¶ 122, putting the conduct within the time and space limits authorized by their employment. Second, Plaintiff also alleges that "the Individual Defendants were motivated to commit the racketeering activities for the purpose of benefitting PG&E financially through increased profit and market share, and thereby benefitting themselves as the employees responsible." *Id.*

Third, and finally, the alleged acts are "of a kind" the Individual Defendants were hired to perform. Despite Defendants' contention that the Individual Defendants "were hired with the expectation that they would perform legitimate work," Dkt. No. 60 at 10, all Plaintiff must aver is that Defendants violated RICO "by fulfilling their actual job responsibilities." *See United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183, 1192 (N.D. Cal. 2016). Plaintiff

1   does just that. *See* FAC ¶¶ 14-15 (arguing that while Torres' department had the ability to mail
2   accurate bills to PG&E's customers, it instead sent "fraudulent" bills); Dkt. No. 70 at 15 (alleging
3   that Chen and Robinson's departments, rather than using electronic mail to "inform[] billing
4   partners about the status of their mutual accounts," used it to report to North Star that customers
5   were not paying).

6   Defendants' motion to dismiss Plaintiff's *respondeat superior* claim is thus denied.

7   **B.    Sherman Act**

8   The Court's previous order granted Plaintiff leave to amend its Sherman Act claim based
9   on the possibility that Plaintiff could plead a cause of action "under a business torts theory of
10  anticompetitive conduct." Dkt. No. 53 at 42 (citing *Safeway Inc. v. Abbott Labs.*, 761 F. Supp. 2d
11  874, 896 (N.D. Cal. 2011) and *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 783-84 (6th
12  Cir. 2002)). Having reviewed the parties' supplemental briefing on this issue, the Court now has
13  substantial doubt as to whether this doctrine, which has never been recognized by the Supreme
14  Court or the Ninth Circuit, constitutes controlling Sherman Act precedent in this District.  While
15  Plaintiff argues, citing *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1137 (9th Cir.
16  2004), that its Section 2 claim is "based on existing antitrust standards," the Court disagrees that
17  the handful of old out-of-circuit authorities upon which it relies establish such standards in this
18  Circuit.  *See* Dkt. No 78 at 3-5 (citing *Conwood*, 290 F.3d 768; *Byars v. Bluff City News*, 609 F.2d
19  843 (6th Cir. 1979); and *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 715 (7th Cir. 1979)).

20  Because the Court cannot conclude that Plaintiff's Section 2 claim is solidly based on
21  "existing antitrust standards," Ninth Circuit precedent requires the Court to consider whether
22  antitrust liability should be expanded to apply in the context presented in this case.  "[T]he
23  regulatory context is an important consideration in deciding whether to recognize an expansion of
24  the contours of § 2 [of the Sherman Act]." *MetroNet*, 383 F.3d at 1134 (quoting *Verizon*
25  *Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004)). "To determine
26  whether we should expand the contours of Section 2 liability in a regulated industry, we must
27  weigh the 'benefits of antitrust intervention' against a 'realistic assessment of its costs.'" *Id.*
28  (quoting *Verizon*, 540 U.S. at 414). In carrying out this assessment, courts weigh factors such as

United States District Court
Northern District of California

1 consumer welfare, "allocative efficiency," and the risk and potential consequences of "a mistaken

2 inference by a factfinder in an antitrust suit." *See id.* at 1136.

3 Here, it is undisputed that the conduct alleged took place within the context of a

4 comprehensive regulatory scheme: PG&E, as a deregulated monopolist, was statutorily compelled

5 to provide optional access to an internal operational service not available to retail customers under

6 a regulator-approved operations and services contract. The Court therefore finds that it must

7 conduct the balancing analysis required by *MetroNet*. Because that test involves inherently fact-

8 intensive determinations regarding the costs and benefits of allowing antitrust claims in this

9 context, the Court finds that this determination must be made at a later stage of the case, once a

10 sufficient factual record has been developed. The Court cannot definitively find at this stage that

11 Plaintiff could not meet its burden under *MetroNet*.

12 Defendants' motion to dismiss Plaintiff's Sherman Act claim is therefore denied.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendants' motion to dismiss Plaintiff's FAC. The parties are ORDERED to appear at a case management conference on October 3, 2017 at 2:00 p.m. The parties shall submit a joint case management statement by September 26, 2017.

**IT IS SO ORDERED.**

Dated: September 7, 2017

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge