HOLLAND & KNIGHT LLP
Thomas D. Leland (pro hac vice)
Leah E. Capritta (pro hac vice)
1801 California Street, Suite 5000
Denver, Colorado 80202
Telephone (303) 974-6660
Facsimile (303) 974-6659
Email: thomas.leland@hklaw.com
leah.capritta@hklaw.com

HOLLAND & KNIGHT LLP
Vito Costanzo (SBN 132754)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450
Email: vito.costanza@hklaw.com

Attorneys for
TIGER NATURAL GAS, INC.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>　　　　　　Debtor. | CASE NO. 19-30089 (DM)<br><br>Chapter 11<br><br>**TIGER NATURAL GAS, INC.'S REPLY ISO MOTION FOR RELIEF FROM PLAN INJUNCTION**<br><br>Date:　December 21, 2021<br>Time:　10:00 AM<br>Judge:　Hon. Dennis Montali<br>Ctrm:　17 |

# Table of Contents

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | THE CURTIS FACTORS WEIGH IN FAVOR OF MODIFYING THE PLAN INJUNCTION | 2 |
| | | 1. The District Court Developed an Extensive Body of Law in the Four Related Cases That Will Result in the Most Efficient Resolution of Tiger's Case (Factors 1, 4, 10) | 3 |
| | | 2. The Extensive Discovery Conducted in the Underlying Tiger Case Also Renders the District Court the Most Efficient Forum for Adjudication (Factors 10, 11) | 5 |
| | | 3. The Continuation of the District Court Case Will Not Interfere with the Bankruptcy Case or Cause Prejudice (Factors 2 and 7) | 7 |
| | | 4. The District Court Case Involves PG&E as a Fiduciary (Factor 3) | 7 |
| | | 5. The District Court Case Involves Third Parties (Factor 6) | 8 |
| | | 6. The Balance of the Hardships to the Parties Weighs in Favor of Modifying the Plan Injunction (Factor 12) | 9 |
| | B. | PG&E'S PROPOSED MODIFICATION OF THE PLAN WOULD RESULT IN A DUPLICATION OF LITIGATION | 10 |
| III. | CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Am. Spectrum Realty, Inc.*,
    540 B.R. 730 (Bankr. C.D. Cal. 2015) .................................................................................. 6

*In re Anton*,
    145 B.R. 767 (Bankr. E.D.N.Y. 1992) .................................................................................. 2

*In re Baleine*,
    CV 14-02513 SJO, 2015 WL 5979948 (Oct. 13, 2015) ..................................................... 4, 7

*In re Coachworks Holdings, Inc.*,
    418 B.R. 490 (Bankr. M.D. Ga. 2009) .................................................................................. 1

*In re Columbia Ribbon & Carbon Mfg. Co., Inc.*
    13 B.R. 276, 278 (Bankr. S.D.N.Y. 1981) ............................................................................ 8

*In re Commonwealth Bond Corporation*,
    77 F.2d 308 (2d Cir. 1935) ................................................................................................... 8

*In re Comstock Financial Services, Inc.*,
    111 B.R. 849 (Bankr. C.D. Cal. 1990) ................................................................................ 11

*In re Curtis*,
    40 B.R. 795 (Bankr. D. Utah 1984) ............................................................................. *passim*

*Dampier v. Credit Invs., Inc.*,
    2015 Bankr. LEXIS 3800 (B.A.P. 10th Cir. Nov. 5, 2015) ................................................... 6

*In re Dampier*,
    523 B.R. 253 (Bankr. D. Colo. 2015) ................................................................................... 8

*In re Hakim*,
    212 B.R. 632 (Bankr. N.D. Cal. 1997) ................................................................................ 10

*In re Hunter*,
    32 B.R. 140 (Bankr. S.D. Fla. 1983) ..................................................................................... 3

*North Star Gas Company v. Pacific Gas & Electric Co.*,
    15-cv-2575-HSG ................................................................................................................... 1

*In re Roger*,
    539 B.R. 837 (C.D. Cal. 2015) ............................................................................................ 10

*Tiger Natural Gas, Inc. v. Pacific Gas and Electric Company, et al.*,
    Case No. 4:16-CV-06711 (JSW) .......................................................................................... 1

*In re Todd Shipyard*,
    92 B.R. 600 (Bankr. D. N.J. 1988) .............................................................................. 7

*United Energy Trading LLC v. Pacific Gas & Electric Co.*,
    15-cv-2383-RS ................................................................................................. *passim*

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
    707 F. Supp. 1170 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990) ........................... 10

*Vista Energy Marketing, LLP v. Pacific Gas & Electric Co.*,
    No. 16-cv-4019-HSG ................................................................................................ 1, 6

## I. INTRODUCTION

If nothing else, PG&E's opposition puts the best spin possible on having no less than three different district court judges deny four separate motions to dismiss the Sherman Act claims against it in four related cases. Having failed there, PG&E apparently believes this Court will prove a more pliable forum—and provide willing assistance in strong-arming a settlement from Tiger. This Court should reject PG&E's improper attempt to forum shop a resolution to Tiger's Sherman Act claim.

As the opposition unwittingly acknowledges, the District Court (and Judge White in particular) possesses familiarity with the highly complex facts and legal issues as the result of years of litigation on four related cases, all based on identical conduct by PG&E.[1] During the two years the District Court for the Northern District of California oversaw *Tiger Natural Gas, Inc. v. Pacific Gas and Electric Company, et al.*, Case No. 4:16-CV-06711 (JSW) (the "District Court Case"), it gained in-depth expertise with the intricate issues and evidence of the case. As just one example—notably missing from the opposition—the parties decided early on to apply the discovery **from all four cases** to each case to avoid duplication; that is, it will be much more difficult for the Court to extract and learn the procedural history of the case than the opposition implies.

More important, Tiger's Sherman Act claim relies on the same complex set of facts and procedural history as that of Tiger's other tort claims, and litigating the Sherman Act claim before the Bankruptcy Court only to re-litigate the same issues later would be an incredibly inefficient exercise, one that the *Curtis* factors expressly seek to avoid. *See In re Coachworks Holdings, Inc.*, 418 B.R. 490, 493 (Bankr. M.D. Ga. 2009) (lifting stay to determine liability in federal district court where case involved claims "likely to revolve around similar—if not identical—issues" and evidence such that proceeding in two different forums could be duplicative and potentially lead to inconsistent results). To be sure, if expediting this case genuinely motivated PG&E or if the

---

[1] The four cases allege identical conduct by PG&E: *Tiger Natural Gas, Inc. v. Pacific Gas and Electric Company, et al.*, Case No. 4:16-CV-06711 (JSW); *United Energy Trading LLC v. Pacific Gas & Electric Co.*, 15-cv-2383-RS ("United Energy"); *North Star Gas Company v. Pacific Gas & Electric Co.*, 15-cv-2575-HSG ("North Star Gas"), and *Vista Energy Marketing, LLP v. Pacific Gas and Electric Co.*, No. 16-cv-4019-HSG ("Vista Energy") (collectively, the "Related Cases").

resolution of the case had been central to its restructuring, it would have already removed the claim or requested that the entire case, not just one part of it, be adjudicated by the Bankruptcy Court. Or, if PG&E wanted to fast-track the Sherman Act claim, it could have proposed making a joint request with Tiger to Judge White to do so. At least armed with a response to that request from the district court, PG&E would have some basis for its assertions that its as-yet unfiled objection and as-yet unproposed expert discovery and summary judgment briefing schedules would provide a faster resolution than Judge White can provide the parties. PG&E has done none of these things because speed is not the point: for whatever reason, PG&E believes it can convince this Court to knock out Tiger's Sherman Act claim, in a way it believes Judge White is disinclined to do. PG&E has not identified any valid reason for divorcing the Sherman Act claim from Tiger's remaining claims, pointing only to the leverage it hopes to gain in settlement should this Court rule in PG&E's favor on the antitrust claim. (Opp. at 5-6.) That is not a legitimate use of this Court's remaining jurisdiction now that PG&E's plan has been confirmed and it has emerged from chapter 11 protection.

Because the *Curtis* factors remain firmly in favor of granting Tiger relief from the Plan Injunction, the Court should grant Tiger's Motion for Relief from the Plan Injunction so that it may liquidate its damages. *See In re Curtis*, 40 B.R. 795, 799 (Bankr. D. Utah 1984).

II. **ARGUMENT**

    A. **THE *CURTIS* FACTORS WEIGH IN FAVOR OF MODIFYING THE PLAN INJUNCTION[2]**

PG&E fails to articulate any rational explanation why it would be more prudent for this Court to adjudicate the Sherman Act claim while the remaining claims based on the same operative facts—and **which are central to Tiger's Sherman Act claim**—will be decided at some other time. (*See* Opp. at 5.) Instead, PG&E unabashedly admits its forum-shopping while inappropriately implying the contents of the parties' mediation, neither of which are factors properly examined under the *Curtis* test. *See In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992) (citing *In re*

---

[2] The parties agree that factors 5, 8, and 9 are not relevant here. (Opp. at 7, n.4.)

*Unioil*, 54 B.R. 192 (Bankr. D. Colo. 1985) (stay should not be applied to "shield misconduct"). The *Curtis* factors thus remain in favor of modifying the Plan Injunction.

> 1. **The District Court Developed an Extensive Body of Law in the Four Related Cases That Will Result in the Most Efficient Resolution of Tiger's Case (Factors 1, 4, 10)**

Addressing Tiger's claims before the Bankruptcy Court will not further judicial economy given the time and resources that would be required to onboard a new judge to become familiar with the complex legal and factual issues of the case, as well as the complicated discovery background developed across the Related Cases. Critically, PG&E admits that ***modifying the Plan Injunction will not ultimately result in complete resolution of the issues***. (*See* Opp. at 8.) While PG&E's opposition attempts to give the impression that the District Court Case involves straightforward and uncomplicated claims that were reviewed by a few magistrate judges (Opp. at 2), the reality is that the underlying factual basis is incredibly complex and has been developed over a series of four related litigations brought by Core Transport Agents or "CTAs," against PG&E, involving identical conduct by PG&E.[3] Among these four cases, the judges of the Northern District of California have issued no fewer than 128 orders deciding issues in these cases that continue to be of importance in the District Court Case, all of which have been overseen by one magistrate judge. PG&E instead gives short shrift to the history of these cases, which detail an ongoing combination of complex business torts perpetrated by PG&E, all of which form the basis of Tiger's Sherman Act claim. (Motion, Capritta Decl., ¶ 4.) *See In re Hunter*, 32 B.R. 140, 142 (Bankr. S.D. Fla. 1983) (lifting stay to continue litigation in federal district court upon finding it would "avoid the potential duplication of effort" and "save considerable time, effort and expense").

PG&E moreover misplaces emphasis on the possibility of settlement as an anticipated "efficiency." Not only does PG&E inaccurately claim success in eliminating the antitrust claims in the other cases, but those efforts never spurred settlement. Frankly, PG&E asks the Court to draw inferences about communications in the parties' confidential settlement discussions that are not only factually untrue, but also constitute a highly improper use of those discussions to gain a

---

[3] *See* n.1.

litigation advantage.[4] (Opp. at 5-6.) For example, PG&E inaccurately implies that Judge Gilliam issued a ruling on PG&E's motion to dismiss that resulted in the plaintiff settling. (Opp. at 5.) In reality, the Vista Energy case settled months later, and only after plaintiff United Energy Trading *defeated PG&E's* motion for summary judgment. (Declaration of Leah E. Capritta in Support of Reply in Support of Motion for Relief from Plan Injunction ("Capritta Decl."), ¶¶9-10, Ex. G.) Similarly, PG&E settled with United Energy only after PG&E lost a ruling on *Daubert* issues. (*Id.*, ¶11, Ex. H.) And while PG&E suggests that it prevailed on Sherman Act claims in the Related Cases, PG&E in fact lost its Rule 12 motions to dismiss the antitrust claim in all four cases. (*Id.*, ¶3, Exs. A-D.) Indeed, PG&E only "won" on the anti-trust issue when United Energy elected to voluntarily dismiss the claim rather than engage in more expensive motions practice when PG&E stonewalled discovery. (*Id.*, ¶8.) Most recently, Judge White ruled that there may be a need for more discovery for Tiger's Sherman Act depending on the parties' dispositive motions. (*Id.*, ¶7, Ex. F, p. 3.) This mixed track record better than anything else demonstrates PG&E's motive for finding a potentially more favorable forum to defend the Sherman Act claim. It has not been winning in the district court and wants to take advantage of this Court's bankruptcy jurisdiction to try its luck with a new judge.

Courts also consider the relative amount of fees in the foreign proceeding as compared to the bankruptcy action and the amount of time and resources it would require the bankruptcy court to expend to become fully apprised of the issues in the foreign action. *In re Baleine,* CV 14-02513 SJO, 2015 WL 5979948, at *11 (Oct. 13, 2015). Here, the district court (*i.e.,* Judge White and Magistrate Judge Sallie Kim) gained familiarity with all aspects of the case including the interrelated regulatory and legal issues and the complex discovery during the years the case remained pending there. For the Bankruptcy Court to become similarly apprised would require significant resources from both the parties and the Court and waste the efforts already expended by an able district court judge and magistrate judge.

---

[4] Tiger notes that PG&E's opposition relies heavily on innuendo suggesting to the Court that the Sherman Act has been a barrier to settlement. Notably, the Court has ordered the parties twice to confidential mediation, so PG&E's attempts to signal the contents of those discussions represents a highly improper disclosure (regardless of whether true or not).

4

With respect to *Curtis* factor four, as discussed, the District Court Case represents one of four similar cases filed by CTAs in the Northern District of California against PG&E. Magistrate Judge Kim presided over discovery disputes in each of these cases, and both Judge Seeborg (who presided over the *United Energy* action) and Judge White have rendered substantive decisions. (Capritta Decl., ¶6.) Accordingly, although the district court is not a specialized tribunal, it nevertheless gained particular expertise with regard to the legal, regulatory and factual issues at play in the District Court Case. This is particularly true here, where the Tiger case shares interrelated and overlapping documents and witnesses with all four Related Cases. While bankruptcy courts also have experience applying the law of other courts, the amount of time and resources that have already been devoted to the case, as evidenced by the sheer number of substantive orders entered among these cases, puts the district court in the best position to continue hearing the case.

Finally, while PG&E understandably elides over this critical fact, PG&E's proposal will not dispose of the entire case. Instead, PG&E proposes to put the Sherman Act front and center (in some as-yet-undefined way) and force Tiger to wait a still-undetermined amount of time for adjudication of the other claims. PG&E lacks any plan to liquidate those claims (except some vague, and in Tiger's view, improper assurance that the parties will settle once the Sherman Act claim resolves).

### 2. The Extensive Discovery Conducted in the Underlying Tiger Case Also Renders the District Court the Most Efficient Forum for Adjudication (Factors 10, 11)

Substantial discovery would need to be duplicated should the Sherman Act claim remain in this Court. Therefore, in addition to the expertise the district court has gained with the factual and legal issues of the case, the extensive, five-years-worth of discovery underlying the Tiger case, which is shared among the Related Cases, supports the district court's adjudication of the entire case.

PG&E's notion that fact discovery in the Tiger case is separate from the other Related Cases lacks merit since the parties agreed to ***joint*** discovery in the Related Cases to promote

5

efficiency and continuity among all four cases. (Capritta Decl., ¶4., Ex. E.) That is, the documents and witnesses in the Tiger case originate *from all four cases*, though the opposition plainly omits this inconvenient complication. As a result, there are a number of nuanced discovery issues due to the overlap of discovery, including depositions, documents, and issues relating to PG&E's data. (*Id.*, ¶5. ) Considering the District Court's expertise with the facts and legal issues, acquired in all four similar cases, as well as the advanced stage of the District Court Case, it would be inappropriate to adjudicate the Sherman Act claim in this Court.

Magistrate Judge Kim presided over all these interrelated discovery issues. (Capritta Decl., ¶6.) As just one example, just a few weeks before the Petition, Magistrate Judge Kim ordered a two-day forensic examination of PG&E's CC&B system between Tiger's computer system expert and PG&E's persons most knowledgeable as part of a discovery sanction against PG&E—a remedy PG&E failed to block because of its threatened bankruptcy.[5] (Motion, Capritta Decl., ¶¶9-12.) Judge White denied PG&E's motion, and those individuals had just begun the second day of this forensic examination expert when PG&E filed its Petition. (*Id.*, ¶¶12-13. ) In addition, while the parties only deposed nine individuals in the Tiger case, there are 23 relevant depositions from the *Vista Energy* and *United Energy* cases. (*Id.*, ¶5. ) Similarly, the four cases resulted in the parties exchanging hundreds of thousands pages of documents. (*Id.*) The parties also analyzed millions of transactions from tens of thousands of accounts from the CC&B system, again over four cases. (*Id.*, ¶6.) That is, not only has Magistrate Judge Kim remained a constant over all this relevant discovery, but Judge White himself has been involved in the relevant discovery between the parties. Relatedly, the extensive body of case law and shared discovery among the Related Cases did not exist in the case law cited by PG&E in support of its contention that the case has not sufficiently progressed towards trial readiness. (Opp. at 11.) Accordingly, the amount of time before the trial date is not an indicator of the amount of work to be done, unlike in *In re Am.*

---

[5] The history of this discovery sanction itself represents an enormous complication, involving PG&E delivering data to Tiger showing, *inter alia*, PG&E itself to be the gas commodity supplier for Tiger's customers rather than assigning those customers to Tiger. Just weeks before the close of discovery, PG&E announced that it had not properly "cleaned" the data before delivering it to Tiger, requiring PG&E to re-produce the entire set. Whether or not PG&E's system designates another supplier's customer as belonging to PG&E, perhaps obviously, factors into Tiger's fraud-based claims that undergird its business-torts theory of Sherman Act liability.

*Spectrum Realty, Inc.*, 540 B.R. 730, 742 (Bankr. C.D. Cal. 2015) and *Dampier v. Credit Invs., Inc.*, 2015 Bankr. LEXIS 3800, at *21 (B.A.P. 10th Cir. Nov. 5, 2015). These cases are neither controlling nor applicable to the facts before the Court and, in any event, have no application to circumstances involving a request to sever one claim and ignore the rest.

### 3. The Continuation of the District Court Case Will Not Interfere with the Bankruptcy Case or Cause Prejudice (Factors 2 and 7)

*Curtis* factors 2 and 7 continue to weigh in favor of modifying the plan injunction. In a footnote, PG&E argues that "litigating a complicated case in another forum would in fact be taxing on the attorneys and outside counsel working on the matter," citing only to the potential reallocation of "focus" of its in-house counsel, ultimately concluding that these factors be treated as neutral. (Opp. at 7, n.4.) However, litigation costs to a bankruptcy estate do not compel a court to deny stay relief and, in any event, since the parties will need to litigate some or all of the facts of the tort claims (because Tiger asserts a business-torts theory of antitrust liability) PG&E will no doubt require the "focus" of its in-house counsel regardless. *In re Baleine*, 2015 WL 5979948, at *9 (citing *In re Santa Clara Cnty. Fair Ass'n*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995)); *see In re Todd Shipyard*, 92 B.R. 600, 603 (Bankr. D. N.J. 1988) (incurrence of litigation expenses does not weigh against the liquidation of tort claims in another forum). Moreover, modifying the Plan Injunction will not negatively affect the bankruptcy case, where a plan has been confirmed and consummated. The District Court Case alleges tort claims based on Tiger and the Debtor's business relationship and daily dealings unrelated to the events that precipitated PG&E's bankruptcy proceeding (such as its management of the wildfire claims). In addition, the Trustee will maintain the ability to liquidate and administer the Debtor's estate, and the Plan with govern the distributions on Tiger's allowed claim if it prevails in the District Court Case. *See In re Baleine*, 2015 WL 5979948, at *8.

### 4. The District Court Case Involves PG&E as a Fiduciary (Factor 3)

Contrary to the opposition, PG&E's role as Tiger's billing and collections agent, which constitutes a fiduciary relationship is not a "mere allegation," but rather a district court finding at summary judgment. (Opp. at 8, Ex. F, p. 15.) In that order, the district court found that plaintiff

7

United Energy established the existence of a fiduciary relationship with respect to PG&E's billing practices, the heart of Tiger's claims. (*Id.*) Specifically, Tiger has alleged that Debtor PG&E exercises total control over CC&B (a fact which PG&E does not and cannot contest) and yet improperly bills their joint customers, improperly retains payments owed to Tiger and provides false information to Tiger about those accounts, all in breach of Debtor PG&E's fiduciary duty. The district court found that PG&E's control sufficiently establishes a fiduciary relationship between PG&E and the CTA. The only contested issue is whether PG&E breached that fiduciary relationship.

The case law relied on by PG&E is not applicable here as *In re Commonwealth Bond Corporation*, 77 F.2d 308, 309 (2d Cir. 1935) was decided almost 50 years before *Curtis,* and as such, does not consider the fiduciary relationship of a debtor in the context of the *Curtis* factors. And, unlike here, in *In re Dampier*, 523 B.R. 253, 257 (Bankr. D. Colo. 2015), the court in the underlying state court had not made a judicial finding on the topic of whether or not the debtor acted as a fiduciary. Additionally, the "proceedings" selectively referenced by PG&E at *Curtis*, 40 B.R. at 799 are "divorce and child custody proceedings," not the improper retaining of funds as alleged by Tiger. Accordingly, this factor weighs in favor of Tiger.

### 5. The District Court Case Involves Third Parties (Factor 6)

PG&E cited no case law supporting the proposition that the presence of three individual defendants is insufficient to satisfy this *Curtis* factor. The District Court Case features three individual defendants and Tiger's claims against them objectively cannot be adjudicated in this Court, supporting the need for a modification of the Plan Injunction to the extent that PG&E is a necessary party. PG&E's cited case *In re Columbia Ribbon & Carbon Mfg. Co., Inc.* supports Tiger's argument, as it points out that actions "which involve the rights of third parties often will be permitted to proceed in another forum." 13 B.R. 276, 278 (Bankr. S.D.N.Y. 1981) (quoting 2 Colliers on Bankruptcy at 362-50 (15th ed.)).

PG&E's contention about a lack of expert discovery against the individual defendants is a meritless non-sequitur. (Opp. at 10.) The *Curtis* factors only address the existence of claims against third parties, not the Debtor's assessment of the merits of those claims. Further, as PG&E is well

8

aware, it filed its petition prior to the expert discovery deadline, and Judge White *stayed* the District Court case soon after PG&E filed its petition, which ostensibly included all deadlines. (Motion, Ex. 3.) The fact that the parties cannot agree on a stayed deadline in the district court and its application to the individual defendants underscores the complex nature of this case and the need to grant the motion to allow the district court to adjudicate.

### 6. The Balance of the Hardships to the Parties Weighs in Favor of Modifying the Plan Injunction (Factor 12)

In addition to the aforementioned reasons, the balance of the hardships weighs in favor of modifying the Plan Injunction, given that the remaining claims are based on the same operative facts as the Sherman Act claim, because the litigation has already proceeded through five years of fact discovery, and because Tiger's remedy has already been too long deferred.

As an initial matter, PG&E has not yet actually objected to any part of Tiger's claim and certainly has not presented any legitimate procedure for resolving Tiger's dispute. Notably, Tiger attempted to confer with PG&E about the motion and received no response. Indeed, Tiger first learned of a "forthcoming objection" in an email dated December 3, 2021, during which time PG&E refused to state the basis for the objection, though Tiger affirmatively asked for it. (Capritta Decl., ¶17.) PG&E remained vague both about the objection and the anticipated process during a subsequent phone call. In addition to being unhelpful, such behavior presents a "cart-before-the-horse" proposition, in which PG&E asks this Court to deny Tiger's motion based on an objection it has not filed and a procedure it has not proposed. As it stands, no objection is before the Court nor will one be briefed prior to the hearing on Tiger's motion. Given that PG&E has enjoyed ample time to review Tiger's claims—including a two-week extension to respond to this motion—the Court should apply the *Curtis* factors without regard to any of PG&E's arguments premised on severing the Sherman Act claim.

Moreover, PG&E's proposed plan—such as it is—would have this Court adjudicate (somehow) the Sherman Act claim while requiring Tiger to wait in limbo on its other claims. Even as of this reply brief, PG&E has refused to reveal what that plan is, choosing instead to engage in

9

brinksmanship and leave Tiger without resolution of its claim (except, one supposes, to accept whatever PG&E might offer or not offer in settlement).

The message here is clear: Tiger will be left in lurch regardless of how this Court rules on the Sherman Act while PG&E attempts to strangle a settlement based on the sheer length of delay. If the Bankruptcy Court rules in PG&E's favor on the Sherman Act claim, PG&E's leverage is improved; if not, PG&E is no worse off, while Tiger will have lost still more time and still need to obtain relief to allow the District Court Case to move forward. Such a nakedly tactical invocation of this Court's bankruptcy jurisdiction represents a fundamental unfairness to Tiger. Tiger sought relief from the stay in 2019, only to stipulate to (essentially) withdrawing its motion to mediate with PG&E. (Capritta Decl., ¶13.) Tiger then followed the resolution process set forth in the Plan, including yet another mediation. (*Id.*, ¶14.) Indeed, PG&E did not even present this new proposal until after Tiger agreed to giving PG&E a two-week extension to respond to the present motion, a request made just two business days before PG&E's opposition deadline. (*Id.*, ¶¶16-17.) That is, the record reflects a cynical attempt by PG&E to use the bankruptcy process to string Tiger along without any affirmative plan to resolve Tiger's claims. The Court should not facilitate PG&E's efforts to prejudice Tiger and should instead grant the motion.

### B. PG&E'S PROPOSED MODIFICATION OF THE PLAN WOULD RESULT IN A DUPLICATION OF LITIGATION

Tiger bases its Sherman Act claim on a business torts theory of antitrust liability, thus requiring extensive analysis of the underlying business tort claims. That is, whether or not PG&E engaged in certain business torts—which, of course, PG&E strenuously denies—and whether or not those business torts in combination constitutes an attempt to maintain a monopoly will be central to adjudication of the Sherman Act claim. *See Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1176 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990) (finding that each of the alleged business torts underlying plaintiff's antitrust claim should be examined independently, in addition to antitrust claim itself).

As a result, nothing in Tiger's Sherman Act claim may be easily severed from the other business torts, resulting not only in duplicative litigation but the potential for inconsistent results

and prejudice to Tiger. *See In re Roger*, 539 B.R. 837, 851-52 (C.D. Cal. 2015) (reversing bankruptcy court upon finding clear error in denying stay relief where failing to lift the stay would result in duplicative litigation such that the appellant would be "prejudiced by having to litigate its claims…in a piecemeal fashion" if the stay were not lifted); *see also In re Hakim*, 212 B.R. 632, 642 (Bankr. N.D. Cal. 1997) (lifting stay to allow litigation to proceed in non-bankruptcy court where, among other things, doing so would avoid the risk of "inconsistent results and additional litigation"); *In re Comstock Financial Services, Inc.*, 111 B.R. 849, 856 (Bankr. C.D. Cal. 1990) (finding that "[i]n certain limited circumstances it makes sense to liquidate bankruptcy claims in non-bankruptcy courts to avoid duplicative litigation, to prevent waste of scant federal judicial resources, or to allow a court of special expertise to resolve a dispute within its purview" and "[i]t is usually best to resolve disputes between multiple parties arising out of the same nexus of facts in one court") (citing *In re Borbridge*, 81 B.R. 332 (Bankr. E.D. Pa. 1988)). From a practical standpoint, it would be impossible to determine whether antitrust violations occurred without examining the facts of the underlying business torts that comprise the claims in Tiger's case.

Further, any motion for summary judgment brought by PG&E in this Court regarding the Sherman Act claim would necessarily examine the underlying business torts—the very issue that PG&E asked Judge White to rule on in the district court case and which Judge White already rejected. Again, PG&E is not seeking a streamlined procedure but rather a different federal judge whom it hopes will help it leverage a settlement. PG&E could (and if it wanted to so, should have) have removed the District Court Case to this Court a long time ago. *See* Fed. R. Bankr. P. 9027(a)(2) (providing a debtor 90 days from the commencement of a bankruptcy case to remove actions). PG&E could also have proposed to Tiger a joint motion to have Judge White bifurcate and expedite the Sherman Act claim—Judge White's response to which would at least have informed the parties and this Court about whether adjudication of the Sherman Act claim here would be more expeditious. The fact that PG&E did neither of these things belies its argument, now, that expediency and efficiency represent the true motivations behind its proposal for adjudication of the claim before this Court.

//

11

## III. CONCLUSION

For the foregoing reasons, and based upon the arguments and evidence set forth Tiger's Motion for Relief from Plan Injunction and Memorandum of Points and Authorities, the Court should modify the Plan Injunction to allow Tiger to pursue its claims against the PG&E in the District Court Case.

DATED: December 14, 2021

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: /s/ *Leah E. Capritta*
Leah E. Capritta

*Attorneys for Tiger Natural Gas, Inc.*