EXHIBIT G

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED ENERGY TRADING, LLC,

   Plaintiff,

   v.

PACIFIC GAS & ELECTRIC CO., et al.,

   Defendants.

Case No. 15-cv-02383-RS

**ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

United Energy Trading, LLC ("UET") advances federal and state law claims against defendants Pacific Gas & Electric Company ("PG&E"), Albert Torres, and William Chen, challenging what UET asserts are unlawful billing, collection, and payment practices that misappropriate funds, defraud UET, and undermine UET's ability to compete with PG&E for natural gas customers. Both parties now move for partial summary judgment on a limited set of claims and issues. For the reasons explained below, PG&E's motion is granted as to UET's RICO and respondeat superior claims but denied as to UET's "payment withholding scheme" theory of liability and UET's challenge to PG&E's customer privacy and confidentiality policies. UET's motion for summary judgment as to PG&E's liability for breach of fiduciary duty and intentional interference with contract is denied.[1]

---

[1] The parties have filed multiple sealing motions related to materials associated with their summary judgment filings. PG&E's motions (Dkt. Nos. 193, 207, and 219) are granted. UET's motions (Dkt. Nos. 197 and 208) are also granted consistent with the following limitations outlined in the supporting declarations filed by PG&E's counsel. With regard to Dkt. No. 197,

## II. BACKGROUND

PG&E is the traditional public utility in Northern California. Until the 1990s, it held a state-sanctioned monopoly over the distribution of natural gas and thus owns and operates the entire infrastructure for storing and transporting natural gas to customers in Northern California. As a public utility, PG&E is regulated by the California Public Utilities Commission ("CPUC").

UET is a Core Transport Agent ("CTA"), meaning it buys gas on the open market and sells it to customers using PG&E's distribution system. Currently, UET serves approximately 36,000 customers in PG&E's service area. The geographic boundaries of this area extend from Eureka in the north to Bakersfield in the south, and from the Pacific Ocean in the west to the Sierra Nevada mountains in the east.

PG&E is required by state law to offer CTAs the option of consolidating billing. Under this program, both the CTA's charges and PG&E's charges appear on a single, consolidated statement. The customer pays both sets of charges with a single check to PG&E which is responsible for remitting payment to the CTA. UET has elected to participate in the consolidated billing program.

The instant dispute centers on UET's claims that PG&E and certain of its employees engage in unlawful activity related to implementation of consolidated billing. Specifically, UET identifies three separate schemes by which it claims PG&E defrauds UET and its customers. In the "payment withholding scheme," PG&E uses its role as billing agent to withhold money owed to UET, misleading UET into believing its customers are not paying. In the "energy credit scheme," PG&E applies credits from its own services or programs to UET's gas charges, effectively misappropriating UET's charges to offset the money PG&E owes its customers. In the "reversal scheme," PG&E inappropriately "reverses" UET customer charges, disconnecting customers from

---

Exhibit K2 may be filed under seal. Exhibits D1 and N3 may be filed as redacted in the versions attached to the Declaration of Seth R. Sias (Dkt. No. 200). With regard to Dkt. No. 208, Exhibit H3 may be filed under seal. Exhibits C7 and G1 may be filed as redacted in the versions attached to the Declaration of Seth R. Sias (Dkt. No. 211).

ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 15-cv-02383-RS
2

UET's natural gas service and thereby returning them to PG&E's natural gas service.

The coordinating entity behind these schemes, according to UET, is an associated-in-fact RICO enterprise it calls "Consolidated Billing." UET originally sued three individual defendants—Albert Torres (Vice President of Customer Operations at PG&E until his retirement in 2017), William Chen (a former Manager of PG&E's ESP Services Group and currently a regulatory analyst), and Tanisha Robinson (a Supervisor in Complex Billing)—for their participation in the Consolidated Billing enterprise. Ms. Robinson, however, was recently dismissed from the case.

Several issues in dispute in the instant motions arise out of the import and effect of an administrative proceeding before the CPUC in 2016. That proceeding (the "GT&S Proceeding" or "GT&S Decision") addressed PG&E's application for approval of rates for gas transmission and storage for the period 2015 through 2017. UET participated in the proceeding as an interested party as did the Core Transport Agent Consortium (CTAC), a coalition of CTAs to which UET belongs. The CPUC's final decision on PG&E's application was issued on June 23, 2016.[2]

### III. LEGAL STANDARD

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is therefore proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there

---

[2] The parties seek judicial notice of the GT&S Decision and of various documents including or related to: public tariff schedules filed by PG&E, other official CPUC acts, and materials filed with the CPUC as part of its proceedings. *See* PG&E's RJNs (Dkt. Nos. 191, 205, and 218) and UET's RJNs (Dkt. Nos. 195, 210, and 215). Neither party has objected to the other's requests. Judicial notice may be taken of a fact not subject to reasonable dispute because it either is generally known within the trial court's territorial jurisdiction, or can be readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The documents sought to be noticed satisfy this standard. Accordingly, the parties' requests are granted.

ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 15-cv-02383-RS
3

is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. In contrast, on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Only disputes over material facts matter. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Id.* at 255. It is not the task of the court, however, to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

The defendants move for partial summary judgment in their favor as to: 1) UET's claim against the Individual Defendants for violation of Sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968; 2) UET's related claim for respondeat superior liability against PG&E; 3) UET's "payment withholding scheme" theory of liability; and 4) UET's challenge to PG&E's customer privacy and confidentiality policies. UET, by contrast, moves for partial summary judgment as to PG&E's liability for: 1) breach of fiduciary duty; and 2) intentional interference with contract. Each of the claims and issues raised is addressed in turn below.

**A. PG&E's Motion for Summary Judgment**

1. RICO

Section 1962(c) of RICO makes it unlawful for any person associated with an alleged racketeering enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d) provides "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." To defeat the motion for summary judgment, UET must point to issues of fact regarding the existence of a RICO enterprise.[3] It has failed to do so.

RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Though this language is broad, the Supreme Court has provided guidance. In *United States v. Turkette*, 452 U.S. 576 (1981), the Court defined a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 583. More recently, the Court has noted that an "associated-in-fact" enterprise—like the one alleged here—"must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Here, UET's evidence does not a support a finding that the asserted RICO enterprise has the required structural features. The enterprise UET identifies—"Consolidated Billing"—is made up of PG&E employees operating within different departments supervised by Defendants Torres and Chen, and Tanisha Robinson. These individuals, UET asserts, pursue the common purpose of making it harder for UET to do business by implementing various schemes (involving regular and ongoing acts of wire fraud) which cause UET to receive money it is owed in an untimely fashion

---

[3] The complete elements of the Section 1962(c) claim that UET would need to prove at trial are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 15-cv-02383-RS
5

or not at all. Yet the evidence relied upon by UET to demonstrate coordination and communication between these individuals is decidedly lacking. This is especially true of the evidence against Defendants Torres and Chen whom UET accuses of supervising and "collaborat[ing] directly in furtherance of the enterprise." UET's Opp. to Defs.' Mot. for Summ. J. at 25. UET points to no phone calls between Torres and Chen, no emails sent directly between them, and no in-person meetings.

UET correctly points out that it is not required to show participants in the Consolidated Billing enterprise are organized into a formal unit. *Odom v. Microsoft*, 486 F.3d 541, 551-52 (9th Cir. 2007). It does not need to prove, for instance, that Chen and Torres sat at the top of a well-defined "hierarchical structure or chain of command." *Boyle*, 556 U.S. at 948 (internal quotation marks omitted). It does, however, have to point to some facts showing Chen and Torres at least had some awareness of the common purpose the RICO enterprise they allegedly supervised was trying to pursue—e.g., that they discussed their shared goal of defrauding UET and/or communicated that goal to others associated with the alleged enterprise so as to better coordinate their efforts. Given the absence of such a showing, UET cannot prove the alleged participants in Consolidated Billing were "associated together" in any meaningful sense beyond being PG&E employees doing jobs related to billing CTAs. This is not enough to generate a factual question as to the existence of a RICO enterprise for a reasonable jury. Accordingly, summary judgment is granted in favor of the defendants with regard to UET's RICO claims.[4]

2. Respondeat Superior

UET's claim for respondeat superior liability against PG&E depends on the existence of a viable RICO claim against the individual defendants. *See Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 775 (9th Cir. 1992) ("respondeat superior liability attaches only if an employer benefitted from its employee's RICO violation"). As discussed above, UET has no

---

[4] As an alternative ground for summary judgment on the RICO claims, defendants argue UET cannot establish a predicate act of wire fraud. Because UET has failed to establish the existence of a RICO enterprise, its ability to prove wire fraud need not be reached.

1   viable underlying RICO claim. Accordingly, summary judgment is granted in favor of PG&E as to
2   UET's claim for respondeat superior liability.

3           3. "Payment Withholding Scheme" and PG&E's Confidentiality Policies

4           The defendants advance two separate grounds they claim entitle them to summary
5   judgment on UET's "payment withholding scheme" theory of liability and UET's challenge to
6   PG&E's confidentiality policies. First, they argue the doctrines of res judicata and collateral
7   estoppel preclude UET from relitigating these issues as both have already been raised and fully
8   litigated before the CPUC. Second, even if adjudicating the issues were appropriate, doing so
9   would interfere with the CPUC's exclusive jurisdiction. Neither ground is compelling.

10           *i. Res Judicata and Collateral Estoppel*

11           "Res judicata, or claim preclusion, treats a judgment, once rendered, as the full measure of
12   relief to be accorded between the parties on the same claim or cause of action." *Hydranautics v.*
13   *FilmTec Corp.*, 204 F.3d 880, 887-88 (9th Cir. 2000). "An action is barred under res judicata
14   where (1) the prior litigation involved the same parties or their privies, (2) the prior litigation was
15   terminated by a final judgment on the merits, and (3) the prior litigation involved the same 'claim'
16   or 'cause of action' as the later suit." *Id.* at 888.

17           Collateral estoppel, or issue preclusion, "applies only where it is established that (1) the
18   issue necessarily decided at the previous proceeding is identical to the one which is sought to be
19   relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party
20   against whom collateral estoppel is asserted was a party or in privity with a party at the first
21   proceeding." *Id.* at 885 (9th Cir. 2000) (citation omitted). "The party asserting preclusion bears the
22   burden of showing with clarity and certainty what was determined by the prior judgment."
23   *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850 (9th Cir. 1997). "Collateral
24   estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a
25   prior proceeding." *See also Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*, 873 F.2d 229, 233
26   (9th Cir. 1989).

27           PG&E points to the 2016 GT&S Proceeding as the basis for its invocation of res judicata

28

ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 15-cv-02383-RS
7

and collateral estoppel. As discussed previously, that proceeding addressed PG&E's application for approval of rates for gas transmission and storage for the period 2015 through 2017. UET and the CTA consortium to which it belongs (CTAC) participated as interested parties.

As an initial matter, PG&E's assertion of res judicata is misguided. As noted above, res judicata applies to *claims*. Yet PG&E asks the Court to invoke res judicata to preclude UET's litigation of two *issues*: a) the payment withholding scheme theory of liability; and b) UET's challenge to PG&E's confidentiality policies. Even assuming PG&E's attack on these issues is a roundabout way of precluding UET from litigating the tort claims they support, the assertion of res judicata is inappropriate. Res judicata does not apply to claims that the first forum was incompetent to hear, *Freeman v. San Diego Ass'n of Realtors,* 322 F.3d 1133, 1142 n.8 (9th Cir. 2003), and UET could not bring its tort claims in the GT&S Proceeding because the CPUC could not provide a remedy for those claims. *See Vila v. Tahoe Southside Water Util.*, 233 Cal. App. 2d 469, 479 (Ct. App. 1965) ("The commission has no authority to award damages.")

The pertinent question is thus whether collateral estoppel applies. Application of the first analytical factor makes clear that it does not. The issues necessarily decided at the GT&S Proceeding are not the same issues that PG&E now seeks to preclude.

With regard to the payment withholding scheme, the relevant portion of the GT&S Proceeding addressed the tariffs governing PG&E's administration of the consolidated billing program: Gas Rules 8, 11, and 23. Gas Rule 23 generally requires that PG&E allocate partial payments proportionately among CTA and PG&E charges. *Appl. of PG&E Proposing Cost of Serv. & Rates for Gas Transmission & Storage Serv. for the Period 2015-2017 (U39G); & Related Matter* ("GT&S"), CPUC Decision No. 16-06-056, 2016 Cal. PUC Lexis 381 at *662. The rule includes an exception, however, for when an account is "considered delinquent or past due, and therefore, is at risk of service termination pursuant to Gas Rules 8 and 11." *Id.* at *707. Under such circumstances, PG&E may allocate partial payments to PG&E charges first. *Id*. "Gas Rule 11.D provides that bills are considered past due if payment is not received by PG&E within 19 days after the bill is mailed to the customer." *Id.* at *662-63. "Gas Rule 8 requires various steps

1  (e.g. 15 day mailed notice, 48 hour mailed notice and 24 hour in person or telephone notice)
2  before a delinquent customer can be considered for disconnection." *Id*. at *663.

3  During the GT&S Proceeding, CTAC and UET asserted PG&E was applying partial
4  payments from delinquent customers to PG&E charges first even when it was not considering
5  those customers for disconnection. To address this issue, CTAC asked the CPUC to change Gas
6  Rule 23 to require pro rata allocation of partial payments between PG&E and CTA charges
7  regardless of whether an account was past due. In other words, CTAC wanted to prohibit PG&E
8  from paying itself first under any circumstances. Relatedly, UET asked the CPUC to direct PG&E
9  to provide CTAs with a pro rata share of customer payments unless an account was subject to
10 service termination pursuant to Rules 8 and 11. The significance of this request was that Rules 8
11 and 11 have various notice requirements—as mentioned above—which UET believed PG&E was
12 not following in designating accounts as delinquent and potentially subject to termination.

13 The CPUC denied CTAC's request to change Rule 23, finding that maintaining the
14 exception to pro rata allocation for delinquent accounts better protected customers from service
15 disconnections. GT&S at *579. According to PG&E, the CPUC also "rejected" UET's position. In
16 its reply in support of its motion, PG&E writes:

> During the GT&S case, UET repeatedly urged that PG&E be required to send all notices under Gas Rule 11 and for the customer to be subject to service termination before PG&E was allowed to allocate payments to past due PG&E charges first. UET argued that the past due status of the account was not sufficient. After extensive discovery, evidentiary hearing, and briefing, the *CPUC rejected UET's position*. . . .

20 PG&E's Reply in Supp. of Mot. for Summ. J. at 10. (internal citations omitted) (emphasis added).
21 The problem with PG&E's version of events is that it is contradicted by explicit language in the
22 body of the CPUC's final decision. In fact, the CPUC wrote:

> *We agree with UET* that PG&E should only allocate partial payments to PG&E charges first when the account is subject to service termination pursuant to Gas Rules 8 and 11. PG&E should not be designating accounts as "delinquent" simply based on a CTA customer's history of late payment or because the CTA carries a balance.

26 GT&S at *579-80 (emphasis added).[5]

---

[5] PG&E argues its interpretation, which ignores the above language, is properly based on

ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 15-cv-02383-RS
9

In light of the above language, PG&E's attempt to present the GT&S Decision as an unambiguous finding that PG&E's allocation practices were and are compliant with Rule 23 stretches the decision too far. In essence, PG&E's argument is: 1) the GT&S Proceeding considered payment allocation under Rule 23; 2) suggestions were made by UET and others that PG&E was not complying with Rule 23; 3) the CPUC's decision not to change the rule was equivalent to finding PG&E was in compliance; and thus 4) UET cannot argue before this Court that PG&E was or is not in compliance.

As the portion of the decision quoted above indicates, the CPUC *did not* affirmatively find PG&E was in compliance with Rule 23. Nor did it find that PG&E's conduct going forward would necessarily be in compliance. If anything, the CPUC's language—clarifying the limited conditions under which: a) partial payments could be allocated to PG&E first; and b) accounts could be designated as "delinquent"—suggests it found reason to question whether PG&E's payment allocation practices were entirely above board.

Moreover, even if PG&E's interpretation of the GT&S Decision is correct, the decision does not conclusively address all aspects of the payment withholding scheme. As UET argues in its opposition to PG&E's motion for summary judgment, the payment withholding scheme is not just about whether PG&E improperly paid itself first under circumstances not permitted by its tariffs. The scheme also encompasses UET's allegations that PG&E misrepresented its allocation practices to UET—i.e., that the payment files PG&E sent to UET omitted material information UET needed to: a) verify PG&E was allocating payments correctly; and b) determine the true status of its customers' accounts. As explained in greater depth below, there are disputed material facts with regard to whether PG&E properly withheld this information. Under these circumstances, collaterally estopping UET from advancing its payment withholding scheme theory

---

"Conclusion of Law 296" which states: "PG&E should only allocate partial payments to PG&E charges first when the account is considered delinquent or past due, and therefore, is at risk of service termination pursuant to gas Rules 8 and 11." GT&S at *707. This conclusion, PG&E argues, is deliberately less stringent than the language in the body of the decision and permits PG&E to allocate partial payments to PG&E charges first the moment an account is past due.

of liability in its entirety is not warranted.[6]

PG&E's request to preclude UET's challenge to its confidentiality policies is similarly unavailing. During the GT&S Proceeding, CTAC argued that PG&E unreasonably limited the amount of basic customer billing information it shared with CTAs. Specifically, the CTAs complained that the payment and billing files PG&E shared with them did not include information such as the total balance on an account or the total amount of payment PG&E had received from a customer. Without this information, the CTAs were left in the dark as to their customers' status. They could not tell, for example, whether customers had made partial payments to PG&E, had refused to pay entirely, or were mistakenly being classified as delinquent.

In response, PG&E contended the information the CTAs wanted was confidential and could not be released without written customer authorization. At core, its argument was that CTAs were third parties that needed separate authorization to receive their own customers' payment and billing information.

The CPUC found "PG&E's arguments unconvincing" and contrary to portions of Public Utility Code Section 985. GT&S at *583, *585. Its final decision noted that "a CTA is the agent for the core customer (who is the principal) and thus has the right to all information related to the purpose of the agency, which would include the complete billing information." *Id.* at *585. PG&E correctly points out that, despite this finding, the CPUC required that Form 79-845A (which establishes the buyer/seller relationship between a CTA and a core customer) be revised to "make customer consent regarding disclosure of this information more explicit." *Id.* at *585. PG&E incorrectly suggests, however, that this requirement for revision somehow amounts to a factual

---

[6] *See McDarren v. Marvel Entm't Grp., Inc.*, 1995 WL 214482, at *5 (S.D.N.Y. Apr. 11, 1995) ("Where an issue is closely intertwined with an issue to be tried, a court has discretion to deny summary judgment even if the issue is 'ripe' for summary judgment."); s*ee also Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir. 1975) ("A court, in its discretion in shaping the case for trial, may deny summary judgment as to portions of the case that are ripe therefor, for the purpose of achieving a more orderly or expeditious handling of the entire litigation."); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* § 2737 (4th ed. 2017) ("[I]f the court determines that entering a partial summary judgment by identifying the facts that no longer may be disputed would not materially expedite the adjudication, it may decline to do so.")

ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 15-cv-02383-RS
11

finding that PG&E's prior refusal to disclose the information was justified by the regulations in place. It is not clear the CPUC reached so far.

As noted above, the CPUC was not convinced PG&E's interpretation of CPUC regulations regarding its ability to release information was legally sound. Nor was it convinced PG&E's position made practical sense. The CPUC noted that CTAs have two other billing options in addition to consolidated billing through PG&E: 1) the CTA could send its own bills and collect its own charges from customers; and 2) the CTA could handle the billing and collection of its own charges and of PG&E's charges associated with gas service. Under either of these options, the CTA would have access to all of the customer billing information at issue. Therefore, the CPUC saw no reason why a CTA should not be permitted to access this information simply because it elected to have PG&E handle consolidated billing.

In this context, the CPUC's requirement that Form 79-845A be revised to make customer consent regarding disclosure more explicit is best understood as a recognition that the GT&S Decision would affect the status quo. PG&E had not disclosed this information previously. Now it would have to. The CPUC presumably wanted to keep the process transparent and ensure that customers whose CTAs utilized PG&E's consolidated billing option were kept well-informed of who had access to their information. The revision requirement does not, as PG&E suggests, amount to a finding that PG&E was previously prohibited from disclosing the information at issue.[7] Thus, UET is not precluded from arguing here that PG&E's refusal to disclose the information sooner: a) was not required by CPUC regulation; and b) was tortious.

---

[7] UET also points to compelling evidence in support of the opposite position. First, it highlights a 2014 decision by an Administrative Law Judge who found PG&E's refusal to share customer billing information with UET was based on a misplaced reliance on the Gas Rules. The ALJ ruled, "So long as UET is seeking only information regarding its own customer account, and no provision of law prohibits PG&E from complying with those information requests, PG&E is obligated to turn over to UET the customer account information in its possession." *ALJ Ruling Granting Mot. for Inj. Relief*, Case 14001-006 (November 17, 2014), at 4. Second, UET asserts that until 2009, PG&E provided more information to CTAs than it does now and that its change in policy correlated more closely with a change in PG&E personnel than with a change in CPUC regulations.

*ii. CPUC's Exclusive Jurisdiction*

Public Utilities Code section 1759 limits jurisdiction to review a CPUC order to the California Court of Appeal and the California Supreme Court.[8] Section 2106 of the Public Utilities Code, however, grants courts jurisdiction to hear actions for damages against a public utility for violations of California law.[9] To resolve conflicts between these two sections, courts apply the three-part test laid out by the California Supreme Court in *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893 (1996) ("*Covalt*"). *See Kairy v. SuperShuttle Intern.*, 660 F.3d 1146, 1150 (9th Cir. 2011). Under this test, courts ask whether: (1) the CPUC has the authority to adopt a regulatory policy on the subject matter of the litigation; (2) the CPUC has exercised that authority; and (3) adjudication of the case before the court would hinder or interfere with the CPUC's exercise of regulatory authority. *See Covalt*, 13 Cal. 4th at 923, 926, 935.

PG&E unsuccessfully raised the issue of the CPUC's exclusive jurisdiction in one of its motions to dismiss. As set forth in the prior order addressing that motion, the first two factors of the *Covalt* test were met but not the third.

> The CPUC has authority to make and approve rules regarding both CTAs and Consolidated Billing—two subjects upon which it has exercised its authority via the Gas Rules—but UET does not ask this Court to construe those rules, so the instant action does not threaten to interfere with the CPUC's exercise of its authority.

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1137 (N.D. Cal. 2015). More specifically, the alleged schemes engaged in by PG&E (including the payment

---

[8] "No court of this state, except the Supreme Court and the court of appeal . . . shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties . . . ." Cal. Pub. Util. Code § 1759(a).

[9] "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person." Cal. Pub. Util. Code § 2106.

1  withholding scheme) represented intentionally tortious conduct exceeding anything contemplated
2  by the Gas Rules.
3      The reasoning in that earlier order remains applicable here and is unchanged by the
4  intervening issuance of the CPUC's GT&S Decision. In fact, the reasons why the GT&S Decision
5  does not justify the application of res judicata or collateral estoppel mirror why adjudication of
6  UET's claims here will not interfere with the CPUC's exercise of regulatory authority.
7      As explained above, the GT&S Decision addressed CPUC regulations related to payment
8  allocation and customer information disclosure. It clarified and made more explicit what these
9  rules meant and how they should apply going forward. The GT&S Decision did not, however,
10 ratify PG&E's past behavior as being in compliance with CPUC regulation. Nor did it find
11 PG&E's conduct going forward would necessarily be in compliance. The CPUC likely did not
12 issue these findings because it would have been unable to award UET and the other CTAs
13 adequate relief (i.e., damages) for the harm caused by PG&E's noncompliance.
14     That the CPUC has not and cannot fully address harms flowing from PG&E's alleged
15 noncompliance with its tariffs reflects why a district court can do so without interfering with the
16 CPUC's jurisdiction. A different construction of the relevant tariffs from that employed by the
17 CPUC is not a predicate for finding PG&E liable. Nor must the CPUC's GT&S decision or its
18 decisions in other proceedings be overturned to do so. In fact, rather than interfering with the
19 CPUC's jurisdiction, adjudication of UET's claims here serves the purpose of Section 2106 of the
20 Public Utilities Code, of providing individuals or entities harmed by the unlawful actions of a
21 public utility with a means of recovering for the "loss, damages, or injury caused thereby or
22 resulting therefrom." Cal. Pub. Util. Code § 2106.
23     In summary, the CPUC has not conclusively adjudicated whether PG&E's past and present
24 practices with regard to payment allocation and confidentiality comply with its tariffs.
25 Adjudicating these issues will not interfere with the CPUC's exclusive jurisdiction. Accordingly,
26 PG&E's motion for summary judgment precluding UET from litigating these issues is denied.

**B. UET's Motion for Summary Judgment**

1. Breach of Fiduciary Duty

UET seeks summary judgment as to PG&E's liability for breach of fiduciary duty. To prevail at trial on this claim, UET must prove: (1) the existence of a fiduciary relationship; (2) its breach; and (3) damage caused by the breach. *Benasra v. Mitchell Silberberg & Knupp LLP*, 123 Cal. App. 4th 1179, 1183 (2004). In short, UET's argument proceeds as follows. First, as UET's billing and collections agent, PG&E has a fiduciary duty to provide UET with material information related to UET's customers' accounts. Second, PG&E has breached its duty by failing to provide that information. Third, PG&E's breach has frustrated UET's ability to serve its customers effectively and forced UET to alter its business plan and marketing approach within PG&E's service area.[10]

The evidence identified by UET appears to satisfy element one of the claim. UET points to the GT&S Decision, as well as testimony by PG&E's own witnesses, to support the proposition that PG&E is UET's billing and collections agent. *See* GT&S Decision at *586 ("PG&E is an agent of the CTA when it is doing the combined billing on behalf of the CTA."). UET also highlights a number of cases suggesting the agency relationship between it and PG&E is of a type that California courts would generally view as giving rise to fiduciary duties. *See, e.g., Michelson v. Hamada*, 36 Cal. Rptr. 2d 343, 346 (Cal. Ct. App. 1994) (concluding sufficient evidence supported a finding that a fiduciary relationship existed with respect to billing and collection services provided by one doctor for another). While UET may therefore be able to demonstrate the existence of a fiduciary relationship with PG&E to the limited extent of billing activities, its bid for summary judgment runs aground on the shoals of breach.

Granted, two of the three arguments advanced by PG&E against finding breach—regarding the preclusive effect of the GT&S Decision and the exclusive jurisdiction of the CPUC over what

---

[10] UET acknowledges the record is not yet sufficiently developed to determine UET's damages as a matter of law. It asks only for a finding of liability, with damages to be determined subject to evidence and expert-witness testimony at trial.

customer information PG&E is allowed to disclose—were already found earlier to be unpersuasive. The third argument, however, standard in the summary judgment context, is more compelling. In short, PG&E asserts that whether or not it has complied with any fiduciary obligations it has as UET's billing agent is a triable issue of fact.

In support of this position, PG&E points to the testimony of its expert Daniel W. Ray, CPA/CFF, CFE. Ray examined the billing and accounting information for the eight customers that UET's Second Amended Complaint apparently invokes as exemplars of PG&E's alleged improper billing and collection practices. He found no evidence of any improper activities nor did he conclude any of the files were inaccurate. PG&E asserts that UET's expert, Gregory Thaler, did not refute these findings. UET naturally characterizes Thaler's findings differently. The fact remains, however, that the issue is disputed.

It also remains in dispute whether or not PG&E's refusal to provide the information at issue was based on a proper understanding of CPUC regulations regarding the disclosure of customer information. As noted previously, the GT&S Decision did not conclusively determine PG&E's conduct was in compliance with CPUC regulations. Neither, however, did it find PG&E was noncompliant. PG&E cites various CPUC decisions it says prohibited it from disclosing the account information at issue without explicit customer authorization. UET may eventually convince a jury PG&E's reliance on these decisions was misplaced and that its conduct was tortious. It has not debunked PG&E's position so conclusively that it is entitled to summary judgment.[11]

2. Intentional Interference with Contract

UET also seeks summary judgment as to PG&E's liability for intentional interference with contract. To prevail on this claim at trial, UET must prove: "(1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts

---

[11] Because UET fails to show undisputed facts establishing breach, the third element of the claim (damages) need not be addressed. PG&E's objection to UET's reply evidence is overruled as moot.

ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 15-cv-02383-RS
16

designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir. 2008).

UET satisfies the first two elements of the claim. As a registered CTA, UET enters into service contracts with customers to supply natural gas. PG&E is obviously aware of these contracts as it is responsible for billing and collecting payment from UET's customers. UET's proof of the remaining elements draws on its "energy credit scheme" theory of liability. Specifically, UET asserts PG&E applies energy credits to customers' accounts that often offset both PG&E and UET's charges, resulting in bills sent to customers indicating no payment is due. Despite affirmatively directing customers not to pay, PG&E represents to UET that customers have been billed for UET's charges. The result is that UET is led to believe its customers simply have not paid, thus interfering with UET's contractual relationships with its customers.

UET's theory is coherent but the evidence on which it relies is not sufficient to justify summary judgment. In particular, UET has failed to establish that there are no triable issues of fact with regard to: 1) whether the bills sent by PG&E are false or misleading; and 2) whether PG&E's alleged interference with UET's contracts was and is intentional.

With regard to the first issue, PG&E contends the information provided to UET's customers on their bills is accurate. While PG&E's billing system rolls up all charges into a single account balance on the first page of the bill, the first page also itemizes the charges for each service agreement (including those owed UET) and provides further details for each charge on subsequent pages. UET may ultimately convince a jury that the cumulative effect of how the charges are presented is misleading (at least in situations where credits have been applied) but it has not done so through undisputed material facts sufficient to support summary judgment.

With regard to the second issue, PG&E correctly points out that UET's evidence of intent is not airtight. One of UET's primary arguments in support of intent is that PG&E has known about the problem with the application of energy credits since 2007 but has done nothing to address it. The evidence on this point, however, is ambiguous. When the issue was originally

1  discovered in 2007 by former PG&E employee Ken Bohn, a manual workaround was put in place
2  to ensure that any payments misappropriated to PG&E as a result of the application of energy
3  credits were transferred to the CTA. Additional evidence indicates that in subsequent years PG&E
4  also at least attempted to develop an automated mechanism for addressing the issue. UET argues
5  the persistence of the problem indicates PG&E's corrective efforts, whether manual or automatic,
6  are at best ineffective and at worst insincere. Whether this is sufficient to satisfy the intent element
7  of the claim must be left to the trier of fact to decide. Given UET's failure to prove the absence of
8  disputed material facts, summary judgment as to PG&E's liability for intentional interference with
9  contract is inappropriate.

## V. CONCLUSION

PG&E's motion for partial summary judgment is granted as to UET's RICO and respondeat superior claims but denied as to UET's "payment withholding scheme" theory of liability and UET's challenge to PG&E's customer privacy and confidentiality policies. UET's motion for partial summary judgment is denied.

**IT IS SO ORDERED**.

Dated: January 22, 2018

RICHARD SEEBORG
United States District Judge

ORDER REGARDING MOTIONS FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 15-cv-02383-RS
18