| | |
|---|---|
| KELLER BENVENUTTI KIM LLP<br>Tobias S. Keller (#151445)<br>(tkeller@kbkllp.com)<br>Jane Kim (#298192)<br>(jkim@kbkllp.com)<br>David A. Taylor (#247433)<br>(dtaylor@kbkllp.com)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Tel: 415 496 6723<br>Fax: 650 636 9251 | JENNER & BLOCK LLP<br>Laurie J. Edelstein (#164466)<br>(LEdelstein@jenner.com)<br>455 Market Street, Suite 2100<br>San Francisco, CA 94105<br>Tel: 628 267 6811 |

*Attorneys for Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' PARTIAL OBJECTION TO PROOF OF CLAIM NO. 64095 FILED BY TIGER NATURAL GAS, INC.**<br><br>**Response Deadline:**<br>**January 4, 2021, 4:00 p.m. (Pacific Time)**<br><br>**Hearing Information If Timely Response Made:**<br>Date:  January 18, 2022<br>Time:  10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>        United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102 |

**TO:** **(A) THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) THE AFFECTED CLAIMANT; AND (D) OTHER PARTIES ENTITLED TO NOTICE:**

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, "**PG&E**" or the "**Debtors**," or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") file this partial objection (the "**Objection**") to Proof of Claim No. 64095 (the "**Proof of Claim**")[1] of Tiger Natural Gas, Inc. ("**Tiger**"), and in support thereof, submit the Declaration of Laurie J. Edelstein (the "**Edelstein Decl.**"), filed contemporaneously herewith, and further state the following:

## I. PRELIMINARY STATEMENT

Tiger is a non-utility supplier of natural gas to retail customers, including those in PG&E's service territory. As a Core Transport Agent ("**CTA**") that participates in PG&E's Core Gas Aggregation program under California Public Utilities Commission ("**CPUC**") rules and orders, Tiger has a choice with respect to billing its natural gas customers: it can bill them directly or it can elect to have PG&E bill the customer and collect money on Tiger's behalf through what is known as "**Consolidated PG&E Billing**." CPUC regulations require PG&E to provide CTAs with this Consolidated Billing option, and the CPUC actively oversees PG&E's implementation of it. Tiger has elected to use and rely on Consolidated PG&E Billing for years. Nonetheless, Tiger contends that Consolidated PG&E Billing—a service both required and regulated by the CPUC—somehow gives rise to antitrust liability under the Sherman Act, 15 U.S.C. § 2, along with treble damages (the "**Sherman Act Claim**").[2]

---

[1] A copy of the Proof of Claim is attached to the Edelstein Declaration as <u>Exhibit A</u>.

[2] The Proof of Claim additionally alleges claims under California state law for intentional and negligent misrepresentation, intentional interference with contract, breach of contract, breach of fiduciary duty, and respondeat superior liability against PG&E and a RICO claim against three individual PG&E employees. As discussed in the *Reorganized Debtors' Opposition to Tiger Natural Gas, Inc.'s Motion for Relief from Plan Injunction* [Docket No. 11672], PG&E agrees with Tiger that those additional claims may be litigated in the District Court.

The Sherman Act Claim is legally and factually deficient. To preserve the Court's resources and avoid duplication with the District Court Action (as defined below), this Objection is narrowly tailored to two threshold legal issues.[3] PG&E will show through this Objection, limited expert discovery, summary judgment briefing, and potentially argument that the Sherman Act Claim fails because (1) Tiger cannot demonstrate any antitrust injury and (2) Tiger's business torts theory of anticompetitive conduct is not a viable basis for antitrust liability. These threshold issues, if resolved in PG&E's favor, dispose of the entire Sherman Act Claim. Determination of these issues will not require resolution of the universe of facts underlying Tiger's allegations of tortious conduct. Further, the District Court specifically declined to resolve these issues prior to staying the District Court Action upon the filing of PG&E's bankruptcy petition.

## II. JURISDICTION

This Court has jurisdiction over this Objection under 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankuptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are section 502 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Bankruptcy Local Rules for the Northern District of California (the "**Local Rules**").

## III. BACKGROUND

### A. Bankruptcy Background

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. Prior to the Effective Date (as defined below), the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner was appointed

---

[3] The Reorganized Debtors reserve their rights to object on further bases to the Sherman Act Claim should this narrowly tailored Objection be unsuccessful.

in either of the Chapter 11 Cases. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263].

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806] (the "**Bar Date Order**"). The Bar Date Order set the deadline to file all proofs of claim in respect of any prepetition claim (as defined in section 101(5) of the Bankruptcy Code), including all claims of Fire Claimants (as defined therein), Wildfire Subrogation Claimants (as defined therein), Governmental Units (as defined in section 101(27) of the Bankruptcy Code), and Customers, and for the avoidance of doubt, including all secured claims and priority claims, against either of the Debtors as October 21, 2019, at 5:00 p.m. Pacific Time (the "**Bar Date**"). The Bar Date later was extended solely with respect to unfiled, non-governmental Fire Claimants to December 31, 2019 [Docket No. 4672][4]; and subsequently with respect to certain claimants that purchased or acquired the Debtors' publicly held debt and equity securities and may have claims against the Debtors for rescission or damages to April 16, 2020 [Docket No. 5943].

By Order dated June 20, 2020 [Docket No. 8053], the Bankruptcy Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be further modified, amended or supplemented from time to time, and together with any exhibits or scheduled thereto, the "**Plan**"). The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**"). [*See* Docket No. 8252].

---

[4] The claims of Fire Claimants will be administered through the Fire Victim Trust and the claims of Wildfire Subrogation Claimants through the Subrogation Wildfire Trust in accordance with the Plan.

Case: 19-30088    Doc# 11700    Filed: 12/15/21    Entered: 12/15/21 09:25:36    Page 4 of 11

### B. The Proof of Claim

Tiger's Proof of Claim, filed on October 18, 2019, is based on a suit (the "**District Court Action**") Tiger commenced on November 21, 2016 in the United States District Court for the Northern District of California (the "**District Court**").[5] The Proof of Claim alleges "[n]ot less than $85,264,783" in damages, including, among other things, treble damages stemming from the Sherman Act Claim. Edelstein Decl., Ex. A, page 9.

### C. Procedural Background

On November 4, 2021, Tiger moved to modify the Plan Injunction to permit the District Court Action to proceed [Docket No. 11535] (the "**Motion to Modify**"). Additional information regarding the history of the District Court Action and the Sherman Act Claim is set forth in the Reorganized Debtors' opposition to the Motion to Modify [Docket No. 11672] and the Declaration of Laurie J. Edelstein in support thereof [Docket No. 11673]. The Motion to Modify is scheduled to be heard on December 21, 2021.

## IV. STATEMENT OF FACTS

Tiger makes many factual allegations relating to the business torts allegedly committed by PG&E through Consolidated PG&E Billing; these facts are not relevant for purposes of this Objection. The only relevant facts here are that the CPUC regulates and has the exclusive jurisdiction to set the retail gas prices PG&E charges, PG&E's retail natural gas procurement rates fell between 2014 and 2016, and the CPUC, as part of its broad regulatory authority, extensively regulates the retail natural gas market and PG&E's provision of consolidated billing services to CTAs.

### A. The CPUC Regulates and Sets PG&E's Rates

The CPUC regulates and has the exclusive jurisdiction to set the retail natural gas rates PG&E charges consumers. Edelstein Decl., Ex. A, ¶ 23. Customers who purchase gas from PG&E pay a gas procurement charge, which is largely a pass-through charge. Edelstein Decl., Ex. B. PG&E charges customers the amount it costs PG&E to purchase natural gas to provide to its core customers. *Id.*,

---

[5] Tiger's Complaint in the District Court Action is attached to the Proof of Claim beginning on page 12. Edelstein Decl., Ex. A.

Ex. C.  The CPUC reviews and approves these rates and has the responsibility to ensure that PG&E's rates are just and reasonable.  *See* Cal. Pub. Util. Code § 451; *see also Hartwell Corp.* v. *Superior Court*, 27 Cal. 4th 256, 270 (2002) (the CPUC's "most obvious regulatory authority includes the regulation of rates").  The rates are set forth in tariffs filed by PG&E with the CPUC.  Edelstein Decl., Ex. B.  Each month PG&E files with the CPUC an advice letter seeking approval of revisions to reflect the current gas procurement rate.  *Id*., Ex. D.  These monthly filings provide customers and CTAs the opportunity to learn in advance what PG&E's regulated gas commodity rate will be for the coming month.

Customers who purchase gas directly from CTAs pay a gas procurement charge that is set by the CTA.  *Id*., Ex. A, ¶ 23.  The CPUC does not have regulatory authority over the rates CTAs charge.  Cal. Pub. Util. Code § 983.5(2).

PG&E's gas customers, as well as customers who buy gas directly from CTAs, also pay a gas transportation charge.  The gas transportation charge has been set through PG&E's Gas Transmission and Storage ("**GT&S**") proceedings, which have occurred approximately every three to four years.  *See, e.g.*, Edelstein Decl., Exs. E, F.

### B. Gas Prices Declined Between 2014 and 2016

In January 2014, PG&E's residential core gas procurement charge was $0.534 per therm; in January 2015, PG&E's residential core gas procurement charge was $0.504 per therm; in January 2016, PG&E's residential core gas procurement charge was $0.391 per therm; and in January 2017, PG&E's residential core gas procurement charge was $0.453 per therm.  Edelstein Decl., Ex. G, at page 2 (2014); *id*., Ex. H, at page 2 (2015); *id*., Ex. I, at page 2 (2016); and *id*., Ex. J, at page 2 (2017).

### C. The CPUC Has Exercised Its Broad Authority Over the Retail Natural Gas Market and PG&E's Consolidated Billing Services

As part of its broad constitutional and statutory authority to regulate public utilities in California, *see* Cal. Const., art. XII, §§ 1-2, 6, the CPUC extensively regulates the retail natural gas market, including the Core Gas Aggregation program and PG&E's required consolidated billing services.  The CPUC has exercised its authority through its restructuring of the natural gas market in the late 1990s and through PG&E's Gas Transmission and Storage rate proceedings.  *See, e.g.*,

Edelstein Decl., Exs. E, F. The CTAs have participated extensively in these proceedings. *Id*. In exercising its regulatory authority, the CPUC consistently takes into account the goals of federal and state antitrust law to increase competition for the benefit of consumers.

V. **ARGUMENT**

There are two threshold legal issues, which if resolved in PG&E's favor will dispose of the Sherman Act Claim. First, Tiger has not alleged and cannot demonstrate a cognizable antitrust injury under the Sherman Act. Second, Tiger's business torts theory of anticompetitive conduct is not viable given the highly regulated nature of the industry. Resolution of these issues does not require determination of the general set of facts alleged by Tiger relating to the business torts allegedly conducted by PG&E. And neither issue has been decided by Judge White in the District Court Action; in fact, Judge White specifically declined to rule on them.

### A. Tiger Bears the Burden of Proof on its Claim

A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).[6] Section 502(b)(1) of the Bankruptcy Code, however, provides in relevant part that a claim may not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Once the objector raises "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), quoting 3 L. King, *Collier on Bankruptcy* § 502.02 at 502-22 (15th ed. 1991), then "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence," *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)* 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996). "[T]he ultimate burden of persuasion is always on the claimant." *Holm*, 931 F.2d at 623 (quoting King, *Collier on Bankruptcy*); *see also Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d

---

[6] Upon the Reorganized Debtors' request, the deadline under Section 7.1 of the Plan for the Reorganized Debtors to bring objections to most categories of Claims initially was extended through and including June 26, 2021 [Docket No. 9563]. That deadline has been further extended through June 21, 2022 [Docket No. 11533], except with respect to the claims of certain state and federal governmental entities not applicable to this Objection.

1035, 1039 (9th Cir. 2000); *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (BAP 9th Cir. 1993); *In re Fidelity Holding Co.,* 837 F.2d 696, 698 (5th Cir. 1988).

### B.   Tiger Cannot Demonstrate Antitrust Injury

To prevail on its Sherman Act Claim, Tiger must demonstrate antitrust injury—that is, injury to consumers flowing from the alleged anticompetitive conduct. *See Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("[R]eduction of competition does not invoke the Sherman Act until it harms consumer welfare."). Tiger alleges that consumers "have been harmed by PG&E's anticompetitive conduct since PG&E has been able to raise its prices" and consumers "have experienced a 20% increase in gas prices at a time when wholesale gas prices have decreased by 50%." Edelstein Decl., Ex. A, ¶ 136. This is incorrect.

First, Tiger admits that the CPUC, not PG&E, sets the retail prices PG&E charges. *Id.* ¶ 23. As discussed above, the CPUC reviews PG&E's retail prices and must approve any increase. *See, e.g.,* Edelstein Decl., Ex. D. A leading antitrust treatise explains that when a price being attacked through an antitrust claim is "the result of a government rather than a private decision . . . . [a]ntitrust liability cannot attach." 3B Areeda & Hovenkamp, Antitrust Law § 786 (4th ed. 2015).

Second, Tiger incorrectly claims that between 2014 and November 2016 consumers experienced a 20% increase in gas prices as a result of PG&E's alleged anticompetitive conduct. Edelstein Decl., Ex. A ¶ 86. In January 2014, PG&E's core gas procurement charge was $0.534 per therm; in January 2015, PG&E's core gas procurement charge was $0.504 per therm; in January 2016, PG&E PG&E's core gas procurement charge was $0.391 per therm; and in January 2017, PG&E's core gas procurement charge was $0.453 per therm. Edelstein Decl., Ex. G, at page 2 (2014); *id.*, Ex. H, at page 2 (2015); *id.*, Ex. I, at page 2 (2016); and *id.*, Ex. J, at page 2 (2017).

Finally, even if PG&E's retail gas prices had increased (which they did not), Tiger cannot demonstrate a causal connection between any consumer harm and PG&E's alleged anticompetitive acts. *See Rebel Oil Co.,* 51 F.3d at 1433. The CPUC must approve any price increases. Tiger cannot show that PG&E's CPUC-approved prices for gas procurement, which largely are pass-through charges, increased *because of* PG&E's alleged anticompetitive conduct. Tiger also offers no

explanation as to why or how the CPUC would have allowed PG&E to raise rates as a reward for anticompetitive billing practices. Tiger has not and cannot provide facts to support its suggestion that PG&E's CPUC-approved rates were not just or reasonable.

In ruling that Tiger had sufficiently alleged antitrust injury to survive a motion to dismiss, the District Court was required to accept as true Tiger's allegation that gas prices had increased by 20%. Edelstein Decl., Ex. A ¶ 136. Accordingly, this Court's resolution of this issue does not implicate decisions Judge White has made in the District Court Action. Determination of this issue also does not require analysis of facts that overlap with Tiger's other causes of action. Narrowly targeted expert discovery in this Court will show that PG&E's natural gas procurement prices, in fact, decreased during the period of the alleged anticompetitive behavior.

### D. Tiger's Business Torts Theory of Anticompetitive Conduct Fails

To prove its Sherman Act Claim, Tiger must demonstrate that PG&E has (1) engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Tiger asserts that allegedly fraudulent and tortious conduct by PG&E in providing consolidated billing services—in other words, business torts—constitutes such anticompetitive conduct. However, neither the Supreme Court nor the Ninth Circuit has recognized such a business torts theory of antitrust liability. *See North Star Gas Co. v. PG&E*, No. 15 Civ. 2575, 2017 WL 3968495, at *3 (N.D. Cal. Sept. 7, 2017).[7] Further, the Supreme Court has limited the imposition of antitrust liability in regulated industries such as PG&E's. *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004); *Credit Suisse Secs. (USA) LLC v. Billing*, 551 U.S. 264, 283-85 (2007); *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438 (2009). PG&E is not aware of a Court of Appeals decision since *Trinko* that has endorsed a business torts theory of

---

[7] In *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 784 (6th Cir. 2002), the Court of Appeals for the Sixth Circuit held that business torts may in "rare gross cases" give rise to an antitrust claim. The business tort theory of antitrust liability, however, has received significant criticism, with a leading treatise explaining that to "the extent it is followed, the *Conwood* decision will lead to less aggressive competition and to higher prices in retail markets having a dominant firm." 3A Areeda & Hovenkamp, Antitrust Law § 782 (4th ed. 2015).

anticompetitive conduct in a regulated industry, such as exists here.[8] Where a regulatory structure designed to deter and remedy anticompetitive harm exists and the regulatory agency has taken action, the Supreme Court has held that antitrust liability is foreclosed. *Trinko*, 540 U.S. at 412-416; *Credit Suisse*, 551 U.S. at 283-85.

In the District Court Action, Judge White specifically reserved ruling on whether Tiger's business torts theory of anticompetitive conduct fell within existing antitrust standards. He also reserved ruling on whether Tiger was seeking to expand the contours of antitrust liability and whether such expansion would be warranted where, as here, a high regulated industry exists. Edelstein Decl., Ex. K, 9-10. Accordingly, this Court can decide the viability of Tiger's business torts theory without duplicating efforts of the District Court or addressing the factual issues underlying Tiger's business tort allegations.

## VI.     LOCAL RULE 3007-1(B)

Bankruptcy Local Rule 3007-1(b) states that "[w]here a factual dispute is involved, the initial hearing on an objection shall be deemed a status conference at which the Court will not receive evidence." The Reorganized Debtors submit that the threshold issues presented here can be resolved as a matter of law following narrowly targeted expert discovery. Accordingly, at the initial hearing and status conference on the Objection, the Reorganized Debtors will seek a schedule for this limited expert discovery and partial summary judgment briefing and argument.

## VII.    RESERVATION OF RIGHTS

The Reorganized Debtors hereby reserve the right to object, as applicable, in the future to the Proof of Claim on any ground, and to amend, modify, or supplement this Objection to the extent the Objection is not granted. A separate notice and hearing will be scheduled for any such further objections. Should the grounds of objection specified herein be overruled, wholly or in part, the Reorganized Debtors reserve the right to object to the Proof of Claim on any other grounds that the Reorganized Debtors may discover or deem appropriate. The Reorganized Debtors also reserve the right to assert any counterclaims or affirmative defenses, whether in connection with this Objection or

---

[8] The Sixth Circuit's decision in *Conwood* pre-dates *Trinko*.

in an adversary proceeding or other litigation, which counterclaims and defenses are expressly reserved.

**VIII.   NOTICE**

Notice of this Objection will be provided to (i) Tiger; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required.

WHEREFORE the Reorganized Debtors respectfully request (1) a scheduling conference pursuant to Bankruptcy Local Rule 3007-1 that establishes an appropriate limited expert discovery and partial summary judgment briefing and hearing schedule; (2) upon such briefing and hearing(s) and due consideration of the law and the evidence, an order disallowing the Sherman Act Claim in its entirety; and (3) such other and further relief as the Court may deem just and appropriate.

Dated: December 15, 2021

**KELLER BENVENUTTI KIM LLP**
**JENNER & BLOCK LLP**

By:   */s/ Laurie J. Edelstein*
         Laurie J. Edelstein

*Attorneys for Debtors and Reorganized Debtors*