**Exhibit K**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGER NATURAL GAS, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-06711-JSW<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

Now before the Court for consideration is the motion to dismiss filed by Pacific Gas and Electric Company ("PG&E"), Albert Torres ("Mr. Torres"), Bill Chen ("Mr. Chen") and Tanisha Robinson ("Ms. Robinson"). The Court shall refer to Mr. Torres, Mr. Chen, and Ms. Robinson collectively as the "Individual Defendants," and it shall refer to PG&E and the Individual Defendants collectively as "Defendants." The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY DENIES Defendants' motion.

## BACKGROUND[1]

From 1905 to 1991, PG&E was the regulated monopoly utility in Northern California for

---

[1] There are three other cases pending in this District that challenge the conduct at issue in this case. *See United Energy Trading LLC v. Pacific Gas & Electric Co.*, 15-cv-2883-RS ("*United Energy*"), *North Star Gas Company v. Pacific Gas & Electric Co.*, 15-cv-2575-HSG ("*North Star Gas*"), and *Vista Energy Marketing, LLP v. Pacific Gas & Electric Co.*, No. 16-cv-4019-HSG ("*Vista Energy*"). Plaintiff in this case is represented by the same counsel who represents the plaintiffs in those cases, and it filed the Complaint in this case after the *North Star Gas* and *United Energy* courts issued rulings on some of the claims at issue in this motion.

Plaintiff asks the Court to take judicial notice of four opinions issued in those cases. Because the opinions have been published in official reporters or on Westlaw, the Court denies that request as moot. It considers those opinions, as it would any relevant legal authority, in its analysis.

1   the provision of electricity and natural gas.  PG&E is regulated by the California Public Utilities
2   Commission ("CPUC"), which regulates the rates PG&E can charge for electricity and natural gas.
3   (Compl. ¶¶ 2, 17, 23, 25.)  In 1991, the California legislature partially deregulated the natural gas
4   market.  As part of that process, the CPUC established a pilot program for the purpose of creating
5   competitive gas markets and lowering the price consumers would pay for natural gas.  That
6   program offers residential and small commercial gas customers, referred to as "core" customers,
7   the option to aggregate natural gas purchases.  (*Id.* ¶¶ 25-27.)  California residents can continue to
8   purchase their gas from PG&E.  Alternatively, they may purchase natural gas from entities that
9   have been certified by the CPUC to act as "core transport agents" ("CTAs").  (*Id.* ¶¶ 26, 28, 30.)
10          Plaintiff, Tiger Natural Gas, Inc. ("Tiger"), has been certified as a CTA and signed a Core
11  Gas Aggregation Service Agreement with PG&E in 2009.  (*Id.* ¶ 39.)  Although CTAs like Tiger
12  sell natural gas directly to their customers, they rely on PG&E to distribute it, and PG&E charges
13  those customers a "transportation fee."  (*Id.* ¶ 31; *see also id.* ¶ 40.)  Under the deregulation
14  program, CTAs have the right to participate in a consolidated billing program, whereby "both the
15  CTA's and PG&E's charges appear on one statement" and the customer makes one payment to
16  PG&E.  (*Id.* ¶¶ 31, 33.)  Then, "PG&E must calculate the CTA's charges based on the customer's
17  gas usage and apply the proprietary and confidential rate provided by the CTA to PG&E once a
18  month."  (*Id.* ¶ 34.)  Under the consolidated billing program, PG&E 'assumes responsibility for
19  accuracy of the calculation of CTA's charges,' but not for the accuracy of the CTA's rate per
20  therm of natural gas provided."  (*Id.* ¶ 34 (quoting Gas Rule No. 23.C.1.c(1)(b)(iv)); *see also id.* ¶
21  36.)
22          In order to track billing, PGE provides CTAs with an "Electronic Data Interchange ('EDI')
23  file or a file transfer link containing information about each account for which there is activity."
24  (*Id.* ¶ 47.)  The EDI files contain information about: (1) customers to whom PG&E has sent a bill
25  containing a CTA's charges for gas; (2) customers who have paid a CTA's charges and the
26  amount apportioned to the CTA; (3) the balance of a CTA's customer account for its gas charges;
27  (4) the identity of customers who have not fully paid a CTA's charges; and/or (5) the number and
28  identity of a CTA's customers who have had charges reversed by PGE.  (*Id.* ¶ 48.)  PG&E also

acts as a collection agent for CTAs. If any payments from a customer to PG&E fail, for example if a check bounces, PG&E may debit those amounts to the CTA on the following month's billing statement, but the CPUC's tariffs do not permit any other debits or set-offs. (*Id.* ¶¶ 36-38.) Tiger also alleges that PG&E operates the consolidating billing program as a separate business unit, "Consolidated Billing," and alleges that Mr. Torres, Mr. Chen, and Ms. Robinson manage "Consolidated Billing's" operations. (*Id.* ¶¶ 18, 35.)

Tiger participates in the consolidating billing program. (*Id.* ¶ 43.) It alleges that "PGE has engaged in improper and unlawful activities which have violated [its] rights and caused [it] damages and irreparable harm in numerous ways." (*Id.*) Specifically, Tiger describes three different schemes that are designed to cause customers to revert back to PG&E to obtain their natural gas and destroy competition from the CTAs. (*See, e.g., id.* ¶¶ 83-87.)

The first scheme is a "Payment Withholding Scheme," whereby "PG&E simply does not remit to Tiger funds it has received for Tiger's gas commodity charges." (*Id.* ¶ 46.) As part of this scheme, PG&E transmits false information to Tiger in the EDI's about the status of customer accounts, including representations that a customer has not paid Tiger's charges when, in fact, that customer has paid. Because Tiger relies on the data contained in the EDI files, it may contact the customer regarding the purported delinquency or cancel a customer's account. (*Id.* ¶¶ 49-61.)

The second scheme is an "Energy Credit Scheme," whereby PG&E "engages in a pattern and practice of offsetting Tiger's customer charges for natural gas delivered to Tiger's customers with credits from non-Tiger related charges." (*Id.* ¶ 62.) By way of example, PG&E offers customers credits for obtaining electricity through solar or other reneweable energy sources. Instead of applying those credits to PG&E's charges, Tiger alleges PG&E applies the credits to Tiger's charges, which then reduces or eliminates the payment that would otherwise be due to Tiger. However, the EDI file provided to Tiger suggests that the customer has not paid the charges due for gas. Tiger alleges that, as a result, it has cancelled thousands of its customers accounts for non-payment and those customers then revert to PG&E to obtain their natural gas. (*Id.* ¶¶ 64-73.)

Finally, Tiger alleges that PG&E engages in a "Reversal Scheme," whereby PG&E

1   withholds "amounts due to Tiger where PG&E claims the funds are due for 'reversals,'" *i.e.*,
2   amounts that have been billed in error. (*Id.* ¶ 74.) By way of example, PG&E will send Tiger an
3   EDI stating that it billed a customer a specific amount, but then it will send a subsequent EDI that
4   states the charge was reversed. (*See Id.* ¶ 76.) Tiger alleges that PG&E has reversed over $70,000
5   in charges, when, in fact, the charges has been paid. Tiger also alleges that PG&E has backdated
6   many of these reversals and alleges this practice harms its cash flow. (*Id.* ¶¶ 77-83.)

7   Plaintiff alleges, *inter alia*, the Defendants violated RICO, 18 U.S.C. sections 1962(c) and
8   1962(d), and the Sherman Act, 15 U.S.C. section 2. The Court will address additional facts as
9   necessary in the analysis.

## ANALYSIS

**A.     Applicable Legal Standard.**

Defendants move to dismiss for failure to state a claim pursuant to Rule 12(b)(6). On a motion to dismiss under Rule 12(b)(6), the Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).[2] Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are

---

[2]     Plaintiff also asks the Court to take judicial notice of an order issued in a CPUC proceeding. (Dkt. No. 37-5.) Defendants also submit a request for judicial notice, in which they ask the Court to take judicial notice of tariff schedules, opinions and rulings of the CPUC, and advice letters filed with the CPUC. (*See* Dkt. Nos. 35-1 through 35-20.) The Court denies these requests for judicial notice as moot, because it did not rely on these documents to resolve the motion.

insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.     The RICO Claims.**

      **1.     The Claims Against the Individual Defendants.**

In its first claim, Tiger alleges the Individual Defendants violated 18 U.S.C. section 1962(c) ("Count One") and violated 18 U.S.C. section 1962(d) ("Count Two"). Section 1962(c) prohibits any person associated with an alleged racketeering enterprise from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs." In order to state a claim against the Individual Defendants under Section 1962(c), Tiger must allege facts supporting the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, SPRL v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." If Tiger states a claim under Section 1962(c), its claim under Section 1962(d) will survive. *See Odom v. Microsoft, Inc.*, 486 F.3d 541, 547 (9th Cir. 2007) (*en banc*). Therefore, the Court discusses the sufficiency of Tiger's claim against the Individual Defendants under Section 1962(c).

The Individual Defendants argue that Tiger fails to allege facts to show the existence of an "enterprise." A RICO "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4). An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). To allege an associated-in-fact enterprise, a plaintiff must allege three basic elements: (1) a common purpose; (2) an ongoing organization, whether formal or informal; (3) that functions as a continuing unit. *See Odom*, 486 F.3d at 552-53; *accord United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). Although a plaintiff need not allege that an associated-in-fact enterprise has "any particular organizational structure, separate or otherwise," *Odom*, 486 F.3d at 551, a plaintiff must "allege and prove the existence of two distinct entities: (1)

1    a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different

2    name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).

3         Tiger premises its RICO claim on allegations that "Consolidated Billing" is an associated-

4    in-fact enterprise comprised of the Individual Defendants.  The allegations in this case are

5    substantially similar to the allegations in the *North Star Gas* and *United Energy* cases, and the

6    courts in those cases found the plaintiffs sufficiently alleged that Consolidated Billing is an

7    associated-in-fact enterprise.  *See North Star Gas Company v. Pacific Gas & Electric Company*,

8    No. 15-cv-2575-HSG, 2016 WL 5358590, at *19 (N.D. Cal. Sept. 26, 2016) ("*North Star Gas I*");

9    *United Energy Trading, LLC v. Pacific Gas & Electric Company*, 146 F. Supp. 3d 1122, 1139-40

10   (N.D. Cal. 2015) ("*United Energy I*").

11        Tiger alleges that the Individual Defendants have joined together to operate Consolidated

12   Billing as a separate unit within PG&E, for the purpose of defrauding Tiger and to harm

13   competition within the natural gas market.  (*See, e.g.*, Compl. ¶¶ 34-36, 96-98.)  Tiger also

14   includes facts that some of the conduct began in 2011 and has continued through at least 2016.

15   (*See, e.g., id.* ¶¶ 54, 66, 76, 88.)  The Court concurs with the *North Star Gas* court's conclusion

16   that the "allegations about coordination among the Individual Defendants are somewhat sparse."

17   *North Star Gas I*, 2016 WL 5358590, at *19.  However, accepting the allegations as true and

18   viewing the facts in the light most favorable to Tiger, the Court finds no basis to distinguish the

19   allegations in this case from the allegations in the *North Star Gas* or *United Energy* cases.

20        In both the *North Star Gas* and the *United Energy* cases, the courts also found the plaintiffs

21   sufficiently alleged facts to satisfy the requirement that the RICO enterprise and the person be

22   distinct.  *North Star Gas I*, 2016 WL 5358590, at *20-21; *United Energy I*, 146 F. Supp. 3d at

23   1139-40.  Defendants argue that the courts in those cases did not examine whether the plaintiffs in

24   those cases "pleaded sufficient facts to establish a distinction between the alleged RICO enterprise

25   and PG&E."  (Reply at 13:8-10.)  In *United Energy I*, the court expressly stated that the plaintiff

26   identified "an entity sufficiently distinct from PG&E by stating allegations against the individual

27   defendants and averring the enterprise [Consolidated Billing] exists apart from the corporate

28   vehicle."  *United Energy I*, 146 F. Supp. 3d at 1140.

1    Similarly, in *North Star Gas I*, the court noted that "it is somewhat unclear whether
2    Plaintiff is alleging that the Individual Defendants were acting within the scope of their
3    employment." *North Star Gas I*, 2016 WL 5358590, at *20.  The court then examined the issue of
4    distinctiveness from both perspectives, *i.e.* based on whether the plaintiff alleged the individual
5    defendants were acting within the course and scope of their employment and whether they were
6    not.  The court found the allegations satisfied the distinctiveness rquirement in both situations and,
7    as to the latter, stated that "even if the 'Consolidated Billing' association-in-fact enterprise is in
8    some sense a sub-entity within PG&E, that does not pose any distinctiveness problem." *Id.*, 2016
9    WL 5358590, at *21.  The court also reasoned that "[d]istinctiveness would collapse if Plaintiff
10   *named* PG&E as both the RICO person subject to liability and the RICO enterprise, but without
11   dispute Plaintiff has not done so here." *Id.* (emphasis in original).  Therefore, although the court
12   noted its concerns with the "practical result of this rule in cases like this one," it concluded the
13   plaintiff had alleged distinctiveness.  *Id.*; *see also North Star Gas Company v. Pacific Gas &*
14   *Electric Company*, No. 15-cv-2575-HSG, No. 15-cv-2575-HSG, 2017 WL 3968495, at *2 (N.D.
15   Cal. Sept. 7, 2017) ("*North Star Gas II*") ("[T]he Court held in its previous order that PG&E, the
16   employer, was sufficiently distinct from Consolidated Billing, the alleged enterprise.").

17   The Court finds the reasoning in those cases persuasive and finds that it would apply to the
18   facts in this case.  Tiger may have an uphill battle proving its claim, but the Court concludes it
19   sufficiently alleges facts that satisfy the distinctiveness requirement.  Accordingly, it DENIES the
20   Individual Defendants' motion to dismiss the RICO claims against them.

21   **2.     The Claim Against PG&E.**

22   In its second claim for relief, Tiger alleges PG&E is liable under RICO based on a theory
23   of *respondeat superior*.[3]  PG&E may be held liable under that theory if Tiger alleges facts to show
24   that PG&E is distinct from the enterprise, PG&E benefited from the Individual Defendants'
25   violations of RICO, and the Individual Defendants' conduct occurred during the course and scope

---

[3]    As in the other cases, this claim is captioned "Respondeat Superior/Agency."  Tiger does not argue the allegations are sufficient to establish an agency relationship, and the Court has not addressed that theory.

7

1  of their employment. *See Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 775-
2  76 (9th Cir. 2002); *Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992); *North
3  Star Gas Company v. Pacific Gas & Electric Company*, No. 15-cv-2575-HSG, No. 15-cv-2575-
4  HSG, 2017 WL 3968495, at *2 (N.D. Cal. Sept. 7, 2017) ("*North Star Gas II*"); *United Energy
5  Trading, LLC v. Pacific Gas & Electric*, 177 F. Supp. 3d 1183, 1190 (N.D. Cal. 2016) ("*United
6  Energy II*"). As to the last requirement, that means "'the conduct occurred substantially within the
7  time and space limits authorized by the employment,' 'the employee was motivated, at least in
8  part, by a purpose to serve the employer,' and 'the act was of a kind that the employee was hired
9  to perform." *United Energy II*, 177 F. Supp. 3d at 1190 (quoting *Oki Semiconductor*, 289 F.3d at
10  775-76). In both of those cases, the courts concluded the plaintiffs sufficiently alleged facts to
11  show PG&E could be held liable under a theory of *respondeat superior*. *North Star Gas II*, 2017
12  WL 3968495, at *2; *United Energy II,* 177 F. Supp. 3d at 1190-92. The Court finds the reasoning
13  in those cases persuasive. Because the allegations in this case are materially indistinguishable
14  from the allegations in those cases, the Court finds Tiger sufficiently alleges a RICO claim against
15  PG&E under a theory of *respondeat superior.*
16  Accordingly, the Court DENIES PG&E's motion to dismiss this claim.

### C. The Sherman Act Claim.

In its third claim for relief, Tiger alleges PG&E violated Section 2 of the Sherman Act which makes it illegal to, *inter alia*, "… attempt to monopolize … any part of the trade or commerce among the several States, or with foreign nations[.]" 15 U.S.C. § 2. The essential elements of an attempted monopolization claim are: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving monopoly power; and (4) causal antitrust injury." *Rebel Oil Co. v. Atlantic Richfield, Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (internal quotations omitted). PG&E argues Tiger fails to allege facts showing it engaged in anticompetitive conduct and fails to allege facts that demonstrate antitrust injury.

#### 1. Anticompetitive Conduct.

PG&E argues that Tiger cannot state a claim based on a refusal to deal, the essential

1   facilities doctrine, or a "business torts" theory. In its opposition to the motion, Tiger states that its
2   claims are not predicated on either a refusal to deal or an essential facilities theory of liability.
3   Rather, it argues that "PG&E and its employees systematically engaged in fraudulent conduct
4   designed to eliminate competition from CTAs and raise the retail gas prices that consumers pay."
5   (Dkt. No. 36, Opp. Br. at 9:13-16.) For the reasons articulated below, the Court DENIES PG&E's
6   motion to dismiss.

The *United Energy* court found that "[t]he fraudulent conduct detailed in the schemes is plainly anti-competitive because it diminishes competition – harming allocative efficiency – and allegedly drives up prices." *United Energy Trading, LLC v. Pacific Gas & Electric Co.*, 200 F. Supp. 3d 1012, 1022 (N.D. Cal. 2016) ("*United Energy III*"). As discussed, the allegations in this case are substantially similar to the allegations in the *United Energy* case. Therefore, to the extent these allegations would fall within existing antitrust standards, this Court finds the court's reasoning in *United Energy III* would apply to the allegations in this case.[4] However, it is not clear that PG&E took the position in the *United Energy* case that the "business tort" theory of liability was not viable in the context of a regulated industry.

"Antitrust analysis must always be attuned to the particular structure and circumstances of the industry at issue. Part of that attention to economic context is an awareness of the significance of regulation." *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004); *cf. Pacific Bell Telephone Co. v. Linkline Communications*, 555 U.S. 438, 129 S.Ct. 1109, 1123 (2009). Before a court "expand[s] the contours of Section 2 liability in a regulated industry," it "must weigh the 'benefits of antitrust intervention' against a 'realistic assessment of its costs.'" *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1134 (9th Cir.

---

[4] In support of its opposition and its assertion that its claims are based such standards, Tiger cites *AstroTel, Inc v. Verizon Florida, LLC*, No. 8:11-cv-2224-T-33TBM, 2012 WL 1581596 (M.D. Fla. May 4, 2012) and *Z-Tel Communications, Inc. v. SBC Communications, Inc.*, 331 F. Supp. 2d 513 (E.D. Tex. 2004). In those cases, which involved the regulated telecommunications industry, the courts found the plaintiffs sufficiently alleged anticompetitive conduct based on allegations of, *inter alia*, product disparagement, falsifying billing and other records, and misusing confidential information. *AstroTel*, 2012 WL 1581596, at *4; *Z-Tel Communications*, 331 F. Supp. 2d at 528, 530-34. While those cases are not binding, they do provide some support for Tiger's argument that it is not seeking to expand the contours of liability under Section 2.

2004) (quoting *Verizon*, 540 U.S. at 414).

PG&E argues that *Pacific Bell, Verizon,* and *MetroNet* are determinative. In *Verizon*, the Court concluded that the plaintiff failed to state a claim based on a refusal to deal theory and held that the defendant's "alleged insufficient assistance in the provision of service to rivals is not a recognized anti-trust claim under this Court's existing refusal-to-deal" precedents. *Verizon*, 540 U.S. at 410. In *Pacific Bell*, the Supreme Court concluded that the plaintiff's "price-squeeze" theory also failed, where the defendant had no antitrust duty to deal with the plaintiff. 129 S.Ct. at 1119.

In *MetroNet*, the plaintiff argued that the defendant's attempt to eliminate arbitrage amounted to anticompetitive conduct. The Ninth Circuit, applying *Verizon* and *Pacific Bell*, found the plaintiff's theory was "novel" and, thus, engaged in the balancing test cited above. The court "decline[d] to expand the scope of Section 2 liability to [defendant's] attempts to eliminate arbitrage by [plaintiff]." 383 F.3d at 1137. None of these cases addressed the theories presented in this case, and none of these cases clearly show that Tiger's claims are not based on "existing antitrust standards."

However, neither the Supreme Court nor the Ninth Circuit have recognized a "business torts" theory of liability. *See, e.g., North Star Gas II*, 2017 WL 3968495, at *3. In its opposition brief Tiger does state that it relies on such a theory. Even if Tiger's allegations of anticompetitive conduct do not fall within the scope of existing antitrust standards, the Court still would deny PG&E's motion. That is because it cannot find, on this record, that Tiger would not be able to meet its burden under *MetroNet* to show that the benefits of antitrust intervention outweigh a realistic assessment of its costs. *Cf. North Star II*, 2017 WL 3968495, at *4.

**2.   Antitrust Injury.**

PG&E also argues that Tiger fails to allege sufficient facts to show antitrust injury. In order to allege antitrust injury, Tiger must allege "'(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (quoting *American Ad Management, Inc. v. General Telephone of California,* 190 F.3d

10

1051, 1055 (9th Cir. 1999)).  The *United Energy* court found the allegations were sufficient to allege antitrust injury.  *United Energy III*, 200 F. Supp. 3d at 1023-24.  The Court finds that reasoning persuasive.  In light of the substantial similarity between the allegations in that case and the allegations this case, the Court concludes Tiger sufficiently alleges antitrust injury.

Accordingly, the Court DENIES PG&E's motion to dismiss the Sherman Act claim.

**IT IS SO ORDERED.**

Dated: October 25, 2017

_____
JEFFREY S. WHITE
United States District Judge