

# SYMMETRY DEVICE RESEARCH, INC.
22078 ARBOR AVENUE SUITE 234        HAYWARD, CALIFORNIA 94541
TELEPHONE 510-491-3264              FACSIMILE 510-887-0993

**PG&E Bankruptcy Court**                                         December 13, 2021

**Northern District Of California**

**San Francisco Division**

**Omnibus Objection Chapter 11:** Exhibits 1A, 1C & 2A

**Bankruptcy Case Number:** 19-30088-DM

**Assigned to:** Honorable Dennis Montali

**Jointly Administered Case:** 19-30089-DM

**Proof of Claim Number(s):** 86933

**Reorganized Debtors:** PG&E Corporation - and - PG&E Gas & Electric Company

650 California Street, Suite 1900

San Francisco, California 94108

**Phone:** 415-496-6723

**Fax:** 650-636-9251

**Emails:** PGEclaims@kbkllp.com;

███████████████████████

Darwin E. Richards Respondent and Creditor to all of PG&E's notice concerning Chapter 11 Reorganization Bankruptcy Case No. **19-30088 (DM)**. The attorneys supporting PG&E's position were provided with **Symmetry Device Research Inc. (SDRI)** proof of claim's to show how SDRI had provided benefits to PG&E by not suing them on the theft of SDRI's invoices to the City of Richmond and the Richmond Housing Authority. This was done in violation of Assembly Bill **AB-1890**. The Electric Utility Industry Restructuring Act makes the generation of electricity competitive in California and is in the Public Interest nationally.

Also, SDRI kept PG&E out of a lawsuit from **East Bay Utility Municipal District (EBUMD)** and the **Alice Street Culdesac Association (ASCA)** in Jack London Square for an undocumented Natural Gas Main that could have caused loss of life and property, in a potential gas explosion. PG&E showed no thanks or appreciation for SDRI's critical find and report to them as did the ASCA and EBMUD had. This is like the narrative no good deed goes unpunished. PG&E controls the **California Public Utilities Commission (CPUC)** that issued a summons for me to appear at their headquarters on a felony charge of fraud, to keep SDRI out of the utility business. This was done to damage my firm, my credibility and my character.

Furthermore, CPUC allows all rate increases requested by PG&E; you can find these billing notices of increase in your monthly utility statements. **Towards Utility Rate Normalization (TURN)** will collaborate my statement wherein the end-user or rate payers are funding PG&E's Chapter 11 Bankruptcy Cost. This is an amazing scenario for an Investor Owned Public Utility Company that is a state run monopoly. How can it not manage its own profits?

My proof of claims documented all of these irregularities posted on records by the Superior Court of Alameda County even though I was never charged or subpoena to Criminal Court for false statements made by PG&E and CPUC. These actions by PG&E and CPUC to destroy my business is not unlike Illegal Asset Forfeiture and Unjust Property Enrichment. I conducted an investigation based on information I received from attorneys representing PG&E on those creditors that received compensation who are White contractors, but my firm SDRI received nothing.

Chapter 11 is for the Debtor's Reorganization and for the Claimants Renegotiation. The Attorneys for PG&E seem to be using all Courts denial of my petition for compensation from the City of Richmond and the Richmond Housing Authority as justification for the Omnibus objection for sustaining the Court's order or approval to bar me under a statute of limitation and to falsely state that I had sued PG&E and its validity to their Chapter 11 Bankruptcy Case.

Questioning an investigative organization where I am sure according to Mason-Tillman, there are few if any small disadvantaged minority business enterprises as venders to PG&E. How could the attorneys representing PG&E **(Thomas B. Rupp) (Jane Kim) (Stacy Campos)** and **(A. Anna Capelle)** establish a declaration concerning objection to claim at Section 2 Exhibits **1A**, **1C**, and **2A** where SDRI's proof of claim has not been legally disinvolved as provided to PG&E and the Courts for review, investigation and confirmation. How can claimant's proof of facts be untrue?

How can the Attorneys for PG&E establish a declaration based upon their exhibits, personal knowledge and that of their friends and associates when they have not spoken with me to validate the facts of my proof of claim, documented and filed with the Attorneys for PG&E in the Courts?

When my firm SDRI was registered and licensed by the **Federal Energy Regulatory Commission (FERC)**, we were a Nevada Corporation under the name Symmetry Device Research Inc. (SDRI). PG&E knew of the circumstances surrounding the theft of my funds from the City of Richmond and the Richmond Housing Authority. Surprisingly, PG&E located me by name **(Darwin E. Richards)** at my current address and informed me of their Chapter 11 reorganization beginning June 17, 2021, where I timely responded to all of their request.

Also, how can the statues of limitations expire prior to the petition date January 29, 2019 as established in Exhibits 1A, 1C, and 2A? How did the Attorneys for PG&E estimate the value for what is owned to creditors and their methods for reduction of that invoice cost? Some of the items listed under these Exhibits are not applicable to my case such as:

a) Barred by Statues of Limitations.
b) Barred by Court Order.
c) Barred by previous settlement agreement.
d) No liability based on investigation.

How did PG&E know how to find me and why, what was their motive? Since I timely responded to all of PG&E's request for SDRI's proof of claim, how could I have missed the deadline July 14, 2021 for filing and serving the Court? I had two different calls from PG&E's representatives possibly Thomas B. Rupp offering me a reduced compensation which was an insult to me since I had already reduced my closing offer to PG&E and my filings with the Court.

The manifestation of my timely response to avoid being barred based on statutes of limitation is shown in PG&E's representative statement; *"If you file a timely response, the hearing will be held at the date and time shown below. If factual disputes are presented by the objection and response, the hearing will proceed as a status conference; factual disputes will not be decided at the hearing, but at a future evidentiary hearing that may be set at the hearing"*. Issues of a purely legal nature, where facts are not in dispute may be decided at the hearing **(Bankruptcy Local Rule 3007-1)**.

According to the documented date and time for the scheduled hearing July 28, 2021, I spoke to the Honorable Judge Dennis Montali concerning the issue of my case and according to my presentation it was not fully finalized. My main concern was for the Court not to sustain the Omnibus objection to my proof of claim and there is no grounds to validate PG&E's position. The status of my proof of claim indicated that the objections in reference to Lamont Chappell and Darwin Richards are going forward on a contested bases **(DKTS.10919 & 10946)**.

I am not an Attorney, but I have followed to the best of my ability the instructions and direction of the Courts; but there seems to be some contradiction concerning the Courts justification for its ruling. Under the title it is hereby ordered that; **(1)** The Ninety-Third Omnibus objection is sustained with respect to the claims of Darwin Richards **(Claims Nos. 86933 and 96962)** for the reason stated on the record. **(2)** The response is overruled. **(3)** The claims of Darwin Richards **(Claims Nos. 86933 & 96962)** shall be disallowed and expunged. **(4)** This Court shall retain jurisdiction to resolve any disputes or controversies arising from this order.

For example, my firm SDRI being a licensed and registered natural gas and electric energy company by the FERC has been accepted into organizations throughout California for residential and commercial fire victims. Although SDRI is not advertising and marketing to fire victims they realized we are potentially a safer, higher quality and much more reliable utility firm because of Renewable Energy Technology and Distributed Energy Generation.

Furthermore, the Bankruptcy Court states these **Omnibus Claims Objections Procedures** do not provide any proof of claim with respect to **(a)** Fire Victims Claim or **(b)** Subrogation Wildfire Claims, **See:** https://www.pgefireinfo.com. I know that politics plays a strong role in justification and compensation in favor of Corporate America since the Superior Court, Appellate Court and Supreme Court ruled against my firm SDRI when my Attorney and I sued the City of Richmond and the Richmond Housing Authority for breach of contract and other violations.

Large monopolistic corporations that can afford high priced attorneys have destroyed Mom and Pop Businesses that pays 80% of the U.S tax base where profits are preeminent. SDRI was formed in the Public Interest where we are not in direct competition with PG&E and there is more than enough business to go around for firms that know how to manage their own operations. This is especially true when it comes to improving the environment through Energy Efficiency and Storage Conservation under Renewable Energy Technology something PG&E does not do well.

The consequences of which are now being manifested in financial instability in numerous markets, PG&E is a factual example of same. Truly Affirmative Action, Diversity and Competition are the keys but only through entrepreneurship endeavors, can it come into fruition. I hope that the Court will take these issues into consideration especially for businesses that are not a monopoly asking its self **(The Courts)** does **Small Minority Disadvantaged Business Enterprise Firms have a right to exist within our legal system and contribute to the U.S Economy?**

Since the claimant bears the burden of proof, with all due respect, it should be a simple matter to concur with the facts of my proof of claim in light of the complexity, redundancy and contradiction of the many Attorneys representing PG&E and their Chapter 11 Bankruptcy Case. My firm SDRI in many other cases signed a contractual agreement with that company in question where my firm successfully completed all assigned project work, but was not paid notably **S. J. Amoroso Construction Company, LLC (SJACC)**.

As you can see, this situation is not an isolated issue that happens against my firm and other small businesses. In my earlier statement where the Attorneys representing PG&E used my lawsuit against the City of Richmond and the Richmond Housing Authority to justify the Courts barring my case in PG&E's Chapter 11 Bankruptcy Case did not use this case against SJACC to do the same; why?

I have a great respect for the Courts, but I am amazed how the Attorneys representing PG&E can take an oath which states; *"Pursuant to 28 USC & 1746 I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge, information and belief"*. As I take this self-same oath as it relates to my proofs of claim and all aforementioned information presented.

# Working To Understand The Legal System:

### Chapter 11 Bankruptcy Renegotiate

Filing for Chapter 11 means that you are applying to reorganize. You are not giving up property; instead, the courts let you keep your property. You also can continue to operate your business as so, and you will renegotiate terms with creditors to remain open.

### The Issue of the Best Interest of the Creditors Test:

For the court to approve your repayment plan in Chapter 11 or Chapter 13, it must pass the "Best Interests of the Creditors" test. Essentially, you must leave creditors better off with your plan than they would have been if you filed for Chapter 7. Unsecured creditors are examined in your debt repayment plan. These creditors do not have collateral securing their loans; so, they have nothing to sell if you default.

### What Property is protected in Bankruptcy?

Some personal property is protected regardless of the type of bankruptcy you are filing. However, these are often state-specific exemptions. Therefore, it is best to speak with a bankruptcy attorney in your state to clarify which exemptions your estate qualifies for. Washington does allow residents to choose if they want the federal or state-mandated exemptions.

https://hawlaw.com/bankruptcy-exemptions/

### Creditors' Committees

Creditors' committees can play a major role in chapter 11 cases. The committee is appointed by the U.S. trustee and ordinarily consists of unsecured creditors who hold the seven largest unsecured claims against the debtor. 11 U.S.C. § 1102. Among other things, the committee: consults with the debtor in possession on administration of the case; investigates the debtor's conduct and operation of the business; and participates in formulating a plan. 11 U.S.C. § 1103. A creditors' committee may, with the court's approval, hire an attorney or other professionals to assist in the performance of the committee's duties. A creditors' committee can be an important safeguard to the proper management of the business by the debtor in possession.

https://www.findlaw.com/bankruptcy/business-bankruptcy/chapter-11-bankruptcy.html

**Creditors' Rights and Chapter 11 -Tweet**

Creditors of a Chapter 11 debtor have a variety of rights. They are free to examine the debtor at the meeting of creditors, about the debtor's assets and liabilities. If the case is complex, they can engage in more extensive examinations under Bankruptcy Rule 2004, to learn more about the financial condition of the Debtor. Creditors of a Chapter 11 debtor have a variety of rights. Any matter which may affect the administration of the estate, and regarding the debtor's right to a discharge. A creditor may file a request for special notice, which will give him notice of pleadings and actions in the case.

**Does a Claim Need to Be Filed?**

A creditor in a Chapter 11 case can review the debtor's schedules of assets and liabilities. If the creditor believes that the debtor has properly listed the creditor's claim, and has not designated it as "contingent, unliquidated or disputed", then the creditor may rely on the schedules and need not file his own proof of claim. His claim is deemed allowed, under the provisions of Bankruptcy Code Section 1111. He is free to file his own claim, but need not do so. If he elects to do so, he is required to attach copies of the pertinent underlying documents which support the claim, such as a contract, note, judgment, or other document.

**What if a Debt is Omitted From the Schedules?**

It is not uncommon for a debtor to inadvertently or through lack of knowledge omit a creditor from the original schedules. In this event, the debtor will file an amendment to the schedules, adding the omitted creditor, and giving the creditor notice of the proceedings.

If the debtor amends the schedules to change the amount or status of a creditor's claim, then he is required to give written notice to the affected creditor, under Bankruptcy Rule 1009(a). It is the better practice for a creditor to simply file a proof of claim. If he does so, the proof of claim supersedes the listing on the debtor's schedules, under Bankruptcy Rule 3003(c)(4). There is usually a deadline for the filing of proofs of claim, typically about 120 days after the filing of the case, and 180 days for tax creditors. Under Bankruptcy Code Section 502(a), a timely filed and completed proof of claim is deemed allowed. This generally means that the creditor has attached to his proof of claim copies of the relevant supporting documents.

**Objection to Claims Under Chapter 11**

Under Bankruptcy Rule 3007, a debtor can object to claims, in whole or in part, as well as to the status of claims, i.e., secured or priority. The objection initiates a contested matter. The creditor is given notice, usually 30 days, of the objection and is given the opportunity for a hearing before the bankruptcy judge. If notice of the objection is served on the creditor, and there is no response,

then the debtor can request that a default order be entered granting the requested relief. The Court typically grants the request, provided that there is a valid underlying basis for the objection. The proper amount and status of claims is quite important for determining voting rights on the plan of reorganization to be proposed by the debtor.

**Equity Security Holders in Chapter 11**

Under Bankruptcy Code Section 101(16) and (17), an equity security holder is defined as the holder of a share in a corporation, or an interest in a limited partnership. This term therefore is not applicable to individual bankruptcy cases. An equity security holder can participate in the Chapter 11, and is allowed to file a proof of interest (similar to a proof of claim). If he believes that his interest has been properly listed in the debtor's filed List of Equity Security Holders, then he is not required to file a proof of interest. If, however, the interest is listed as contingent, unliquidated or disputed, then he is required to file a proof of interest by the claims bar date. If he fails to do so, then he may be barred from voting on the plan or receiving distributions thereunder. As a general rule, under bankruptcy law's rules of priority, the equity security holders are in the most junior position as far as being paid, and often receive little or nothing under a plan.

**What happens if a Claim is Filed Late?**

There is a body of case law which allows the filing of late claims or interests, for good cause shown and excusable neglect. However, to avoid adverse consequences and possible loss of valuable legal rights, the best practice is to timely file the proof of interest or claim, with all of the required attachments.

**Does a bankruptcy toll the statute of limitations? The section 108(c) trap**

Most attorneys, whether or not they practice bankruptcy law, are familiar with the "automatic stay" of 11 U.S.C. §362(a). Amongst other things, it operates to stay collection actions, service of process, lien perfection, and judgment enforcement, upon the debtor's filing of a bankruptcy petition. Creditors and their attorneys alike, however, are less familiar with the provisions of 11 U.S.C. §108(c), which extends certain non-bankruptcy time limitations for taking actions that are prohibited while the automatic stay is in effect. Section108(c) provides, in pertinent part:

*"If applicable non-bankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of — (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . of this title . . . with respect to such claim."*

The extension applies equally to co-debtors **(individuals jointly obligated with the debtor on a consumer debt)** under chapter 12 or 13.

While the language of section 108(c) appears relatively straight-forward, it can be a trap for those unfamiliar with the provision. The most common example of section 108(c)'s applicability is when a statute of limitations expires while a debtor is in bankruptcy. Because of the automatic stay, the civil action cannot be commenced. However, section 108(c) extends the period to bring the action until 30 days after the stay is lifted, usually via court order or because the bankruptcy is dismissed. Many, unfamiliar with section 108(c), wrongly assume that a bankruptcy case tolls any applicable statute of limitations. This is incorrect. Under section 108(c), if the statute of limitations ran while the bankruptcy case was pending, then a creditor has only 30 days to bring its claim once the stay is lifted. This is true regardless of how long the creditor was "stayed" by virtue of the bankruptcy filing.

Similarly, the deadline is not tolled if it expires after the automatic stay has been lifted. Rather, a creditor has until the expiration of the deadline itself, unless such deadline expires less than 30 days after the lifting of the stay, in which case the 30-day extension of sub-section (2) applies. Put another way, a creditor gets the longer of the expiration of the statute of limitations or the 30-day extension.

Most Chapter 7 bankruptcies proceed swiftly to a discharge providing a creditor with certainty about the effect on its claim. In those cases, the creditor's claim is likely lost and any applicable statute of limitations becomes moot. Many Chapter 13 bankruptcies, however, are active for several years before eventually getting discharged or dismissed. If dismissed, pre-petition creditors once again have the ability to try to enforce their claims through collection or litigation. But, they must act swiftly if the deadline to act ran while the bankruptcy was pending.

If you represent creditors, make sure to properly advise your client about any applicable statute of limitations and the effect thereon of section 108(c). Failure to do so could result in your client losing its right to collect on its claim.

**Legal Definition of Toll**

1. To stop the running of a time period, especially a time period set by a statute of limitations.

**References:**

https://radixlaw.com/insights/does-a-bankruptcy-toll-the-statute-of-limitations-the-section-108c-trap/

https://www.law.cornell.edu/wex/toll

Please review and respond to the questions in this correspondence.

Thank You & Best Regards,

Darwin E. Richards

510-491-3264