KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>        - and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**REPLY IN SUPPORT OF REORGANIZED DEBTORS' SEVENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS WITH RESPECT TO PROOF OF CLAIM NO. 80878 FILED BY JULI WARD**<br><br>**[Related to Docket No. 10537]**<br><br>Date: December 21, 2021<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>        United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102 |

## I. PRELIMINARY STATEMENT

In advance of the December 21, 2021, 10:00 a.m. omnibus hearing (the "**Hearing**"), PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**" or "**PG&E**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this reply brief in support of the *Reorganized Debtors' Seventy-Sixth Omnibus Objection to Claims (No Liability / Passthrough Claims)* [Docket No. 10537] (the "**Omnibus Objection**")[1] with respect to Proof of Claim No. 80878 filed by Juli Ward (the "**Ward Claim**").

With respect to the Ward Claim, the Reorganized Debtors, by the Omnibus Objection, stated the legal grounds upon which they object to the Ward Claim, and presented facts in support of the Omnibus Objection by way of supporting declaration. The Reorganized Debtors having supported the Omnibus Objection by facts and law, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence," *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996).

The Reorganized Debtors submit that they are not liable on the Ward Claim because (i) Ms. Ward executed a full release of PG&E from any and all liability that may come from the energy-efficiency work done by Highlands Energy, (ii) the language in the agreement cited by Ms. Ward *permits* PG&E to access the premises to inspect the work of Highlands Energy, but does not *require* PG&E to do so, (iii) Ms. Ward does not provide any calculation in support of "her" $20,513.57 portion of the Ward Claim, (iii) the Donor Parties (defined below) assisted Ms. Ward of their own volition, and do not themselves have claims against PG&E, nor does Ms. Ward appear to have standing to pursue claims on their behalf, and (iv) Ms. Ward does not present any evidence to show that the work done by Highlands Energy caused her any damages.

The Ward Claim lists five parties as creditors in addition to Ms. Ward herself: Cheyenne &

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Seventy-Sixth Omnibus Objection.

Arapahoe Tribes, Living Church of God, Fresno EOC, J. Arakelian, and L. Kaprielian (the "**Donor Parties**"). The Ward Claim does not indicate that Ms. Ward has been authorized by the Donor Parties to pursue a claim on their behalf in the Chapter 11 Cases. Rather, Ms. Ward indicates that she is undertaking this on her own initiative to recover on behalf of these five parties that she alleges made voluntary monetary contributions to her during the period pertinent to the Ward Claim.

On December 13, 2021, the Bankruptcy Court entered the *Order Regarding Apparent Complaint Submitted by Juli Ward* [Docket No. 11690]. In this Order, the Bankruptcy Court acknowledged that it had received a document that was possibly intended as a complaint to initiate a new adversary proceeding (the "**Prospective Complaint**"). The Court noted that the Prospective Complaint contained substantive and procedural defects and advised that it would address the submission at the Hearing. As of this filing, the Prospective Complaint has neither been entered on the docket, nor has counsel for the Reorganized Debtors received a copy from Ms. Ward. The Reorganized Debtors reserve all rights and defenses with respect to the Prospective Complaint.

## II. BACKGROUND

### A. Ward Claim

On October 21, 2019, Ms. Ward filed the Ward Claim in the amount of $41,427.14.

On April 15, 2021, the Reorganized Debtors filed the Omnibus Objection, stating the harm or damage described in the Ward Claim was not caused by the Debtors and the Claim should be disallowed and expunged. The Omnibus Objection was originally set for hearing on May 26, 2021. Ms. Ward submitted an informal response to the Omnibus Objection, and the parties agreed to continue the hearing on the Ward Claim to June 15, 2021. [*See* Docket No. 10672 and May 21, 2021 Docket Text Entry].

On June 8, 2021, the Reorganized Debtors filed the *Reorganized Debtors' Report on Status and Resolution of Omnibus Objections with Respect to Certain Claims* [Docket No. 10758], stating that the Omnibus Objection would be removed from the Court's June 15, 2021 calendar so that the parties could attempt to reach a consensual resolution of the Ward Claim pursuant to the court-approved ADR procedures.

After removing the Omnibus Objection from the June 15 hearing calendar, the Reorganized Debtors attempted to resolve the Ward Claim through negotiation with Ms. Ward. After several rounds of settlement offers, the Reorganized Debtors and Ms. Ward reached an agreement in principle on an amount to resolve the Ward Claim. The Reorganized Debtors prepared a settlement agreement and delivered it to Ms. Ward, who then refused to sign and return the agreement despite several attempts by the Reorganized Debtors to follow up with her.

On November 16, 2021, the Debtors filed a *Notice of Continued Hearing on Certain of the Reorganized Debtors' Omnibus Objections to Claims* [Docket No. 11592) setting the Omnibus Objection with respect to the Ward Claim for hearing on December 21, 2021, with a formal response deadline of December 7, 2021. On December 7, 2021, Ms. Ward timely filed a *Formal Response to Notice of Continued Hearing on Certain of the Reorganized Debtors' Omnibus Objections to Claims* (the "**Opposition**") [Docket No. 11680].

B. **Factual Background**

1. **The Energy Savings Assistance Program**

The Debtors administer the Energy Savings Assistance Program (the "**ESA Program**") which provides income-qualified residential customers with home energy-saving improvements at no charge. The ESA Program supports the energy efficiency and weatherization of approximately 100,000 homes per year.[2]

2. **Highlands Energy's Work on the Ward Premises**

On June 24, 2017, Ms. Ward and her landlord, John Arakelian, both executed a Property Owner Waiver for the ESA Program (the "**Waiver Agreement**"). (Ward Claim at 14.) Through the Waiver Agreement, both Ms. Ward and Mr. Arakelian consented to have work done by PG&E's contractor, Highlands Energy, at Ms. Ward's residence, a single-family home located at 3795 N. Angus Street, in Fresno, California (the "**Premises**"). (Ward Claim at 14.) Both Ms. Ward and Mr. Arakelian agreed that PG&E would pay for the work to be done at the Premises, and that they would waive any and all claims against PG&E for damages arising out of the ESA Program.

---

[2] *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* at 95 [Docket No. 263].

According to Ms. Ward, a representative of Highlands Energy visited the Ward Premises on August 14, 2017, and performed work in connection with the ESA Program. (Ward Claim at 8.) The representative identified some unmated ducting in the attic crawlspace of the Premises and fixed the problem. (Ward Claim at 15.)

## III. ARGUMENT

### A. The Terms of the Waiver Agreement Defeat the Ward Claim

#### 1. Ms. Ward Waived Any Claim Against the Debtors

PG&E did not mandate that Ms. Ward participate in the ESA Program, nor was PG&E required to commission the work under the ESA Program. In consideration for paying for work performed by independent contractors under the ESA Program, PG&E requires owners and tenants of residential property to sign a waiver releasing it from all claims caused by the ESA Program. Paragraph 4 of the Waiver Agreement reads as follows:[3]

> In consideration for the performance and receipt of the Work at the Premises, which has been paid for by PG&E, at no cost to me, I hereby expressly waive and release on behalf of myself and all Occupants claiming by, through or under me, any and all claims against PG&E and its officers and employees from any damage, injury, loss or liability caused by the ENERGY SAVINGS ASSISTANCE PROGRAM, even if PG&E is actively or passively negligent, arising from or related to this Work; provided, however, that nothing in this Agreement shall constitute a waiver of any claims that I may have against any other participants in the ENERGY SAVINGS ASSISTANCE PROGRAM, such as the contractor who performs the Work or any other related measures (the "Installer").

(Ward Claim at 14.) The Ward Claim is a claim for damages arising from or related to the ESA Program, and Ms. Ward therefore waived and released any such claims against PG&E when she signed the Waiver Agreement. Notably, the waiver provision expressly carves out the Installer (in this case, Highlands Energy) from any release. In other words, any complaints by the tenant or landlord about the work performed by the independent contractor can be pursued against that party but not PG&E.

#### 2. Paragraph 6 of the Waiver Agreement Permits, but Does Not Require, PG&E to Access the Premises to Inspect the Work of Its Subcontractor

---

[3] For the Court's and the parties' convenience, a more legible form of the Waiver Agreement, which contains identical language in question to the Waiver Agreement attached to the Ward Claim, is attached hereto as **Appendix 1**.

Ms. Ward bases her claim entirely on Paragraph 6 of the Waiver Agreement and cites to it in both the Ward Claim and the Opposition. (Ward Claim at 8; Opp'n at 3.) Paragraph 6 of the Waiver Agreement reads as follows:

> I hereby authorize PG&E, the Installer and ENERGY SAVINGS ASSISTANCE PROGRAM Staff reasonable access to the Premises for the purpose of inspecting the Work of the ENERGY SAVINGS ASSISTANCE PROGRAM Installers.

(Ward Claim at 14.) Despite Ms. Ward's arguments to the contrary, Paragraph 6 of the Waiver Agreement imposes an obligation on Ms. Ward and her Landlord, <u>not</u> on PG&E. Nowhere in the Waiver Agreement is there a requirement that PG&E inspect, guarantee, or ensure the fitness of the Installer's work. As stated above, Ms. Ward waived and released PG&E from any such obligation through the Waiver Agreement.

### B. Ms. Ward May Not Pursue Claims Of The Donor Parties for The Voluntary Charitable Contributions to Ms. Ward

Ms. Ward purports to include in the Ward Claim the monetary contributions of the Donor Parties that she states should be refunded back to those Donor Parties. Ms. Ward does not submit any evidence that she has been authorized by any of the Donor Parties to pursue a claim in the Chapter 11 Cases on their behalf. While Ms. Ward may have good intentions, Ms. Ward may only pursue claims that she has against PG&E in the Ward Claim; she does not have standing to pursue claims on behalf of the Donor Parties. Moreover, the Donor Parties themselves do not have claims against PG&E; Ms. Ward provides no correlation between the amounts that the Donor Parties gave to Ms. Ward and any damages that were allegedly caused by PG&E. Ms. Ward's claim to recover the Donor Parties' monetary contributions to her should be disallowed.

### C. The Ward Claim Does Not State a Claim for Damages Against the Debtors

#### 1. Ms. Ward Does Not Provide Any Evidence That The Work Performed By Highlands Energy Was Defective Or Caused Her To Incur Damages

Notably, Ms. Ward does not directly allege that the work performed by Highlands Energy was defective. She does not provide any evidence – whether in the form of her own inspection or an inspection by someone else (such as her landlord, for example) or any other evidence – that the work was defective and caused her to incur higher utility bills. Ms. Ward bases her claim solely on her

suspicion, without any proof—that, without PG&E's inspection of Highland Energy's work, she cannot be certain whether her utility bills should have been lower.

Nor does Ms. Ward provide any evidence that her electric bills were in fact higher than they should have been. Indeed, a review of the billing information provided in the Ward Claim indicates that Ms. Ward's electrical usage was **higher** in the months **before** the August 2017 visit by Highlands Energy than they were during the corresponding months for the following years. *See* Ward Claim at pages 97-98. Accordingly, even if she had a claim against PG&E for the work performed by Highlands Energy – which she does not – that work seems to have been effective at reducing Ms. Ward's electric bill.

### 2. Ms. Ward Does Not Provide Support for the Amount of the Ward Claim

Finally, Ms. Ward provides no support for the total amount of her claim. Although Ms. Ward includes receipts of the contributions from the Donor Parties in the Ward Claim, as stated above, she does not provide any correlation between those donations and her claim against PG&E. Moreover, Ms. Ward does not provide any accounting for the $20,513.57 that she alleges is owed to her directly. Pages 97-98 of the Ward Claim contain what appears to be a summary of the gas and electricity billed by the Utility to Ms. Ward from the period of June 8, 2016 (the date she claims to have moved in to the Premises) to September 23, 2019 (approximately one month before she filed the Ward Claim on October 21, 2019). The visit by the representative of Highlands Energy on the Premises – from which the Ward Claim arises – occurred on August 14, 2017. Ms. Ward makes no allegation that she suffered damages caused by PG&E prior to the Highlands Energy visit on August 14, 2017. The sum of *all* amounts of gas and electricity billed to Ms. Ward between August 22, 2017, and September 23, 2019, is only **$5,452.85**.[4] Again, this is the *total* amount, and not some hypothetical difference between a "correct" amount and a higher amount incurred by Ms. Ward due to some fault in Highlands Energy's work. Ms. Ward's total asserted claim for $41,427.14 is about seven and a half times the total amount of her gas and electric bills during the period in question.

---

[4] For the Court's and the parties' convenience, a spreadsheet with this calculation is attached hereto as **Appendix 2**.

## IV. CONCLUSION

For the foregoing reasons, and the reasons set forth in the Omnibus Objection and the declaration filed in support of the Omnibus Objection, the Reorganized Debtors respectfully request that the Court sustain the Omnibus Objection and disallow and expunge the Claim.

Dated: December 16, 2021

**KELLER BENVENUTTI KIM LLP**

/s/ *Thomas B. Rupp*
Thomas B. Rupp

*Attorneys for Debtors and Reorganized Debtors*