KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**PARTIES' JOINT STATEMENT OF UNDISPUTED FACTS REGARDING REORGANIZED DEBTORS' SEVENTY-NINTH OMNIBUS OBJECTION TO CLAIMS – CLAIM OF DAVID ADDINGTON (CLAIM NO. 3093)**<br><br>**[Related to Docket No. 10673]**<br><br>Date: February 15, 2022<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>      United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102 |

In advance of the February 15, 2022, 10:00 a.m. omnibus hearing (the "**Hearing**"), PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") on the one hand, and Creditor David P. Addington ("**Addington**") on the other hand, hereby submit this joint statement of undisputed facts in connection with the Reorganized Debtors' objection to the claim of Mr. Addington (Claim No. 3093) (the "**Addington Proof of Claim**") through the *Reorganized Debtors' Seventy-Ninth Omnibus Objection to Claims (Books and Records Claims)* (the "**Omnibus Objection**") [Docket No. 10673]:

1. On or about December 9, 1908, The Realty Syndicate conveyed to Great Western Power Company an easement for the purpose of constructing and maintaining electrical transmission equipment over a tract of real property in Alameda County, California (the "**Easement**").

2. The document granting the Easement is dated December 9, 1908, and was recorded on March 17, 1909, in Book 1578 of Deeds, Page 189 of Official Records of Alameda County (the "**Grant**"). A handwritten copy of the Grant is attached as **Exhibit A** hereto. The Reorganized Debtors have in their possession a typewritten copy of the Grant, which is attached as **Exhibit B** hereto, that the Reorganized Debtors believe is identical to Exhibit A.

3. Pacific Gas and Electric Company ("**PG&E**") is the successor in interest to Great Western Power Company.

4. The servient tenement of the Easement was subsequently subdivided.

5. The Easement encumbered 298 Saint James Drive in Piedmont, California, when Mr. Addington purchased the property on November 10, 2015 (the "**Addington Property**").

6. Two utility towers, each of which support six 115 kW transmission lines, (the "**Equipment**") are currently on the Addington Property. The Equipment has been in this location since before November 10, 2015. PG&E states, and Mr. Addington does not dispute, that PG&E has owned, operated, and maintained the Equipment since before Mr. Addington purchased the Addington Property in November 2015.

7. The recorded Easement had not been terminated and was in effect on the Addington Property when Mr. Addington purchased the Addington Property in November 2015.

8. The Addington Property is surrounded by other residential properties and Saint James Drive. The Addington Property is 29,118 square feet of land area.

9. In 2016, PG&E removed paint and recoated the lattice steel towers on the Addington Property. As part of that work, PG&E believed it was necessary to remove soil from Mr. Addington's property. PG&E and Mr. Addington entered into a Tower Maintenance Work Soil Restoration Agreement dated September 2, 2016 (the **Restoration Agreement**"), which described certain work associated with the removal and replacement of soil from the area impacted by PG&E's tower coating project. A copy of the Restoration Agreement is attached as **Exhibit C** hereto.

10. PG&E and Mr. Addington also entered into a Revised Tower Maintenance Work Acknowledgement dated September 2, 2016 (the **"Revised Work Acknowledgement"**), which provided that PG&E would (i) demolish and offhaul a play court and (ii) offhaul 170 cubic yards of soil from the Addington Property. A copy of the Revised Work Acknowledgement is attached as **Exhibit D** hereto.

11. The Revised Work Acknowledgement provided that PG&E would pay Mr. Addington $36,790. This amount was based on a bid that Mr. Addington had obtained from his own contractor, GJR Development. The bid was attached to and made a part of the Revised Work Acknowledgement. PG&E subsequently paid Mr. Addington the $36,790 owing under the Revised Work Acknowledgement.

12. After PG&E and its subcontractors had left the Addington property, a dispute arose based on Mr. Addington's contention that PG&E did not complete all the work it had agreed to perform. To resolve this dispute, PG&E and Mr. Addington entered into a Tower Maintenance Work Acknowledgement Addendum dated November 4, 2016 (the "**Addendum**"). A copy of the Addendum is attached as **Exhibit E** hereto.

13. Under this Addendum, PG&E agreed to pay Mr. Addington an additional $13,000 in consideration for Mr. Addington's agreement that PG&E has performed the work described in the Revised Work Acknowledgement. The Addendum states as follows:

///

///

> PG&E agrees to pay you $13,000.00 as additional consideration, bringing the total consideration under the Agreement [the Revised Work Acknowledgement] amount to $49,790.00. In exchange you agree that PG&E has completed the work described in the Agreement. Please provide your signature below to indicate your agreement that your acceptance of this revised total consideration amount will constitute a full and final release of PG&E from obligations arising under that Agreement.

14. Mr. Addington countersigned the Addendum and PG&E paid the additional $13,000 to Mr. Addington. Mr. Addington executed an Acknowledgment of Payment on November 14, 2016 (the "**Acknowledgement of Payment**"), acknowledging receipt of $49,790 from PG&E. A copy of the Acknowledgement of Payment is attached as **Exhibit F** hereto. Under his signature, Mr. Addington handwrote: "But he still wants to know how much soil was removed from his property."

15. Mr. Addington has never filed a suit against PG&E for breach of contract or for any other reason.

16. From November 2016 through May 2017, Mr. Addington and PG&E exchanged e-mails regarding Mr. Addington's desired land use.

17. On June 1, 2017, Mr. Addington recorded an instrument titled Termination of Easement as Document No. 2017119659 in Official Records of Alameda County (the "**Termination Notice**"). A copy of the Termination Notice is attached as **Exhibit G** hereto. The Termination Notice states that the Grantor [David P. Addington] "hereby terminates and extinguishes [the Easement] as it relates to Grantor's property."

18. The Termination Notice does not identify a cause or basis for termination of the Easement.

19. Only Mr. Addington's signature appears on the Termination Notice. PG&E did not and does not consent to its recordation.

20. Shortly after recording the Termination Notice, on or about June 2, 2017, Mr. Addington sent an e-mail to PG&E demanding that PG&E remove the Equipment from the Addington Property. On June 15, 2017, PG&E rejected this demand in an e-mail to Mr. Addington from Joe Echols of PG&E, which stated as follows:

/ / /

> Mr. Addington,
> We are in receipt of your email dated June 2 in which you stated that you have terminated the easement for 298 Saint James Drive in Piedmont. Please note that a private property owner cannot unilaterally terminate an occupied easement. Accordingly, PG&E does not consider your termination of the easement to be valid and will continue to operate and maintain our existing facilities in accordance with our existing easement. No equipment will be removed from your property.
> Thank you,
> Joe Echols

21. PG&E has not removed the Equipment from the Addington Property. PG&E continues to use the Equipment to transmit electricity in the course of its business.

22. Other than as asserted in the Addington Proof of Claim filed in the Chapter 11 Cases, Mr. Addington has never brought an action in any court in connection with the Termination Notice, including to (i) establish or confirm the termination of the Easement as it relates to the Addington Property, or (ii) obtain an injunction or damages against PG&E in connection with the presence and operation of the Equipment on the Addington Property.

23. Other than as asserted in the current Chapter 11 Cases, PG&E has never brought an action in any court in connection with the Termination Notice, including to (i) seek a determination with respect to the Easement as it relates to the Addington Property, (ii) obtain an injunction or damages against Addington in connection with the alleged termination of the easement on the Addington Property or (iii) confirm ownership of the Equipment on the Addington property.

Dated: December 21, 2021

KELLER BENVENUTTI KIM LLP

/s/ Thomas B. Rupp

*Attorneys for Debtors and Reorganized Debtors*

/s/ David P. Addington