UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

-oOo-

| | |
|---|---|
| In Re: | ) Case No. 19-30088 |
| | ) Chapter 11 |
| PG&E CORPORATION AND PACIFIC | ) |
| GAS AND ELECTRIC COMPANY, | ) San Francisco, California |
| | ) Tuesday, December 21, 2021 |
| Reorganized debtors. | ) 10:00 AM |
| _____ | ) |

REORGANIZED DEBTORS' SEVENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY / PASSTHROUGH CLAIMS) FILED BY PG&E CORPORATION [10537]

REORGANIZED DEBTORS' ONE HUNDRED TENTH OMNIBUS OBJECTION TO CLAIM NOS. 76018 AND 78381 (GREENBERG CLAIMS) FILED BY PG&E CORPORATION [11420]

SCHEDULING CONFERENCE AS TO TODD GREENBERG RE CLAIM NO. 77335 [9455]

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES (All present by video or telephone):

| For Reorganized debtors: | THOMAS B. RUPP, ESQ. |
|---|---|
| | Keller Benvenutti Kim LLP |
| | 650 California Street |
| | Suite 1900 |
| | San Francisco, CA 94108 |
| | (415)636-9015 |
| | |
| | JENNIFER L. DODGE, ESQ. |
| | Law Offices of Jennifer L. Dodge Inc. |
| | 2512 Artesia Boulevard |
| | Suite 300D |
| | Redondo Beach, CA 90278 |
| | (310)372-3344 |

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1
     For Todd Greenberg:          RICHARD A. LAPPING, ESQ.
 2                                Trodella & Lapping LLP
                                  540 Pacific Avenue
 3                                San Francisco, CA 94133
                                  (415)399-1015
 4
     Also Present:                Juli Ward
 5                                Individual Claimant

 6                                Ora and Willie Green
                                  Individual Claimants
 7

 8

 9

10

11

12

13

14

15

16

17
     Court Recorder:              LORENA PARADA/ ANKEY THOMAS
18                                United States Bankruptcy Court
                                  450 Golden Gate Avenue
19                                San Francisco, CA 94102

20
     Transcriber:                 SHARONA SHAPIRO
21                                eScribers, LLC
                                  7227 N. 16th Street
22                                Suite #207
                                  Phoenix, AZ 85020
23                                (973)406-2250

24   Proceedings recorded by electronic sound recording;
     transcript provided by transcription service.
25
```

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, DECEMBER 21, 2021, 10:00 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session, the Honorable

5    Dennis Montali presiding, calling the matter of PG&E

6    Corporation.

7            I'll bring counsel in now.

8            Your Honor, which matter did you want to call first?

9            THE COURT:  Well, let's ask counsel for the debtor

10   where they want to go first.  I have my preference, but I'll

11   see if Mr. Rupp cares.

12           Good morning, Mr. Rupp.  You've got your mic muted.

13           MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

14   Keller Benvenutti Kim for the reorganized debtors.  Can you

15   hear me all right?

16           THE COURT:  Yes, I can.  Can you hear -- how about me?

17           MR. RUPP:  I hear you just fine.

18           THE COURT:  We've got the Greenberg claims, that Green

19   claim, and Ms. Ward.  So what's your preference?

20           MR. RUPP:  Your Honor, our preference would be to go

21   Green, and then Ward, and then Greenberg, where my cocounsel,

22   Jennifer Dodge, can join me.  But of course, if the Court would

23   rather take it some other way, we're happy to do it that way.

24           THE COURT:  No, I offered you the choice.  So let's do

25   it.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1           Ms. Parada, do we have Ms. Green available?

2           THE CLERK:  I do not see Ms. Green yet.

3           THE COURT:  Ms. Green, or anyone appearing on her

4    behalf, if you wish to be heard this morning, you need to

5    raise your hand electronically.

6           Well, Mr. Rupp, did you get the filings that Ms. Green

7    made yesterday?

8           MR. RUPP:  I did, Your Honor.  I just saw the -- there

9    was a statement on the docket, and some exhibits just arrived

10   this morning.  They looked like -- I'm not sure why they came

11   separately, but I did have a chance to look at them briefly.

12          THE COURT:  Okay.  All right.

13          Ms. Parada, I guess we'll pass on Green for a couple

14   of minutes and see if she shows up.  If not --

15          THE CLERK:  Yes, Your Honor.

16          THE COURT:  -- I don't know what we're going to do.

17   But let's go to the Ward matter.

18          THE CLERK:  Yes, Your Honor.  I'll bring in Ms. Ward

19   now.

20          THE COURT:  Hi, Ms. Ward.  Good morning.  Can you hear

21   me?  You don't have -- your microphone is muted.  There you go.

22   Can you hear me now?

23          MS. WARD:  Yes, Your Honor.  Yes.  Thank you.

24          THE COURT:  All right.  Your claim is kind of a

25   mystery to me because you act on behalf of a number of other

PG&E Corporation and Pacific Gas and Electric Company

1    people, but you're not an attorney, are you?

2             MS. WARD:  No, sir.

3             THE COURT:  And you don't -- do you have any liability

4    to the other claimants?

5             MS. WARD:  No, sir.

6             THE COURT:  Well, I don't know what you think you're

7    able to do to assert claims on their behalf.  Why do you think

8    you should be allowed to do that?

9             MS. WARD:  For their support of what I was going

10   through --

11            THE COURT:  Well, no, I understand --

12            MS. WARD:  -- monetarily.

13            THE COURT:  -- they support it.  I don't question that

14   they support it, but legally, if I were to award you any

15   recovery, why would it be for them?

16            MS. WARD:  Because those entities helped me when they

17   could have been using those funds to assist other people.

18            THE COURT:  Okay.  I understand, but the point is you

19   didn't -- you're not obligated to repay them, right?

20            MS. WARD:  No, sir, I'm not.

21            THE COURT:  Okay.  Well, I think that whatever

22   happened in the past and whatever assistance you got from third

23   parties, that is good for you.  And they should be

24   complimented, and I'm sure you've thanked them.  But legally, I

25   don't think there's anything that can be done.  I mean, if you

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

        PG&E Corporation and Pacific Gas and Electric Company

1   had a legal argument or something, I would --

2           MS. WARD:  Okay.

3           THE COURT:  -- obviously listen to that.  But let's

4   focus on the portion of the claim, which is a relatively small

5   portion, that you believe you are entitled to.  What is your

6   response to PG&E's argument that when the procedure or the

7   program was implemented, and this other company, Highland, came

8   in, you signed a release of any claims against PG&E; what am I

9   supposed to make of that?

10          MS. WARD:  That was for the damages caused by Highland

11  Energy, which I have not claimed that, sir.

12          THE COURT:  But you have a right to sue Highland or

13  would have maybe had a right to proceed against Highland.

14  Yeah, but I take it you haven't done that.

15          MS. WARD:  No, sir, for the reason that I was

16  instructed, along with my landlord, prior to the work being

17  done, was that we had to authorize PG&E to do an inspection or

18  we can opt to have Highlands Energy inspect their own work.  I

19  opted for PG&E to inspect the work because I didn't feel it'd

20  be advantageous to have one company inspect their own work.

21          THE COURT:  Mr. Rupp filed a support and paper,

22  though, that indicated that you waived any (audio interference)

23  PG&E by even undertaking participation in this assistance

24  program.  So what do you make of that?

25          MS. WARD:  Well, they --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  How do I ignore that?

2        MS. WARD:  Well, they failed to --

3        THE COURT:  No, you --

4        MS. WARD:  -- fulfil the terms of their contract --

5        THE COURT:  I under --

6        MS. WARD:  Oh, excuse me.

7        THE COURT:  I understand you're not a lawyer, and I'm

8   not trying to put you at a disadvantage because of that, but

9   what do I make of a document that you signed that says to PG&E

10  I waive any claim against you?

11        MS. WARD:  But they didn't come and do their work.

12        THE COURT:  No --

13        MS. WARD:  So I couldn't have anything against them.

14        THE COURT:  No.  No, they didn't come and inspect the

15  work --

16        MS. WARD:  Correct.

17        THE COURT:  -- according to you.  But in fact, and in

18  reality, Highland did the work, right, and perhaps incorrectly,

19  but Highland did the work.

20        MS. WARD:  Yes, sir.

21        THE COURT:  But you didn't pursue any claim against

22  Highland.

23        MS. WARD:  I didn't see any damage by Highland.

24        THE COURT:  Well, what damage have you suffered as a

25  result of whatever happened?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MS. WARD:  When I first moved into this property in

2    2016, I was moving in over a period of a month, a month-and-a-

3    half --

4    THE COURT:  No, I understand.  And your --

5    MS. WARD:  Okay.

6    THE COURT:  -- bills were high because you were in two

7    locations.  I understand.

8    MS. WARD:  Okay.  And I reached out to PG&E numerous

9    times:  could someone please come and do some kind of a study

10   on my energy efficiency here?  I wanted to know where I was

11   losing some -- maybe in the property not being sealed properly,

12   or whatever, and they said they really didn't have a program

13   for that at the time.  And then it was later that they did have

14   this energy assistance program that I became aware of, and I

15   actively pursued with my landlord to get some upgrade work

16   done, and we were told that PG&E would inspect the work.  Or,

17   you know, I could --

18   THE COURT:  Slow down.  You can't inspect the work

19   until the work is done.  So who told you who would do the work?

20   MS. WARD:  Highlands Energy.

21   THE COURT:  Right.  So someone said that Highland

22   Energy -- and you keep repeating that PG&E didn't inspect the

23   work, but the question is does that mean PG&E is liable for the

24   defective work?  Why do you translate: they didn't inspect,

25   therefore they're liable?  Why does that follow?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MS. WARD: How could they know that some of the issues

2  that I've had since then, with utility bills and other issues

3  with the HVAC system, they never inspected it; how could they

4  know that the work was done properly as contracted?

5    THE COURT: But don't you believe it was done

6  improperly?

7    MS. WARD: I don't know, I'm not -- I'm not an attic

8  technician. I did not crawl up in the crawl space to see the

9  defects.

10    THE COURT: So what if PG&E went in and inspected now

11  and said everything was done correctly, then what? Then where

12  are we?

13    MS. WARD: Well, then I'd know, okay, it's done;

14  great, super.

15    THE COURT: But you don't --

16    MS. WARD: I asked --

17    THE COURT: But you don't believe that, do you? You

18  don't believe --

19    MS. WARD: If they want to come inspect, that's fine.

20  I've been wanting them to inspect the work, as Highland Energy

21  did work, that's all.

22    THE COURT: Okay. So let's go in, and we've got two

23  choices. PG&E sends a technician and they inspect. The

24  technician says the work was done incorrectly, or the

25  technician says the work was done correctly. Two choices.

PG&E Corporation and Pacific Gas and Electric Company

1          MS. WARD:  Okay.

2          THE COURT:  What follows from either of those?  Let's

3    say you're presented with either of those two choices;

4    therefore, what follows?  What --

5          MS. WARD:  My satisfaction, knowing the truth.

6          THE COURT:  No, let's take the first example.  The

7    first example is the inspection says Highland messed up --

8          MS. WARD:  Okay.

9          THE COURT:  -- period.  So what follows next?

10         MS. WARD:  Pursuing a remedy.

11         THE COURT:  Well, you are trying to pursue a remedy

12   against PG&E, but if  PG&E comes in and says the work was done

13   correctly --

14         MS. WARD:  Okay.

15         THE COURT:  -- then you don't really have a claim

16   against PG&E, right?

17         MS. WARD:  No, then I'd have peace of mind knowing

18   that it was done correctly, that  --

19         THE COURT:  No, but I'm sorry.  Excuse me; I misspoke.

20   What if PG&E says the work was done incorrectly?  Then what

21   would you do?

22         MS. WARD:  Well, then I would trust their word that it

23   was done incorrectly.

24         THE COURT:  And not pursue a claim against Highland?

25         MS. WARD:  I can't.  I released them, right, for any

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  damages.

2          THE COURT:  Well, Ms. Ward, the point is you released

3  PG&E, I believe.

4          Mr. Rupp, I don't want to do all the talking.  Tell me

5  why you believe Ms. Ward's claim should be disallowed.

6          MR. RUPP:  Your Honor --

7          THE COURT:  Apart from talking about -- I understand

8  we don't have to go into whether she can assert claims for

9  others.  To some extent, she asserts some claim of her own, I

10  think.

11          MR. RUPP:  Thank you, Your Honor.  We feel that -- you

12  know, we covered this pretty thoroughly in our reply brief, but

13  just to restate what we talked about here today.  There's no

14  concrete allegation.

15          First of all, there's the waiver, and PG&E agreed to

16  pay for this program so this work could be done by a

17  contractor.  And in exchange for PG&E paying for this program

18  for customers such as Ms. Ward, they asked that claims against

19  PG&E be waived since Highlands Energy is the one doing the

20  work.

21          Second of all, it's not even really alleged in the

22  claim, and not here today, that Ms. Ward has suffered any

23  damages, that there has -- that even the work was done

24  incorrectly in the first place and she suffered some

25  hypothetical higher utility bills than she would have if

PG&E Corporation and Pacific Gas and Electric Company

1    Highland Energy had done the work correctly.

2           It's been -- since the work was done in 2017, Ms. Ward

3    mentions that she had the option of having Highlands Energy

4    inspect its own work.  Highlands Energy did the work; they

5    should be able to stand beside it and inspect it on Ms. Ward's

6    request.  But time has gone by, and Ms. Ward could have looked

7    at it herself,  although I don't want to impose on her to climb

8    into some crawl space, but she is a tenant; she has a landlord

9    that can do this inspection or have this inspection done.

10           If there were actual damages here, it would be on Ms.

11    Ward to make some kind of showing, as opposed to just the

12    uncertainty and the peace of mind of wanting to know whether

13    the work was done properly.

14           THE COURT:  Ms. Ward, let's go back and just be

15    practical for a minute, and forget bankruptcy and forget the

16    court and just forget -- and let's just talk, like, common

17    sense.  If I -- and let's pick a different trade rather than

18    electricity and gas; let's say a plumber.  So I call a plumber,

19    and I say, would you come and fix my sprinkler system?  And so

20    the plumber comes and sends me a bill and says, okay, it's

21    fixed.  And then the sprinkler system doesn't work correctly.

22    Do I call someone else?  I could call another plumber.  But

23    don't you think, intuitively -- and wouldn't you, intuitively,

24    go back to the first plumber and say you didn't do it

25    correctly; would you come and inspect your work and see what's

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  wrong?  And then if the first plumber says, no, I'm not going

2  to have anything to do with you, then maybe you call a second

3  plumber, and you come in and say to the second plumber, what's

4  wrong with this work that the first plumber did?  Why isn't

5  that the normal person's response to a situation like this,

6  from your point of view?

7          MS. WARD:  Because we were offered the option to have

8  PG&E inspect the work.  And I know, having kids, you know, that

9  would be sort of like saying to my son, go mop the kitchen, and

10  then tell him to go back in and inspect it himself.  Now, I'd

11  probably have a sibling go do it or some other --

12          THE COURT:  No, you'd go in.

13          MS. WARD:  -- entity --

14          THE COURT:  No, that's easy, as a parent, and I am a

15  parent, you'd say mop the kitchen, get it right, or you can't

16  go out, or you can't watch TV, or you can't do something; go

17  mop the kitchen.

18          Look, Ms. Ward, I don't know what is behind this.  I

19  understand you're entitled to peace of mind.  It's the end of

20  2021.  If there's something wrong with your electrical system,

21  or your heating system, or your monthly bills are too high, it

22  would seem to me that the first order of business is to get it

23  fixed, or for your landlord to get it fixed, not to go after

24  the big company to say you've got to come and inspect it, and

25  then telling me that, if they inspect it and say it's okay, you

PG&E Corporation and Pacific Gas and Electric Company

1    will have peace of mind.  And if they inspect it and say it's

2    not okay,  you know, you don't know what you'll do; maybe

3    you'll go after Highland.

4         The point is I have no choice here.  I have to apply

5    the facts and the law, in this context, in this bankruptcy.

6    And you haven't stated a claim that can be translated to a

7    liability for PG&E, particularly in the face of two critical

8    facts:  most of the claims are not even your claim, but

9    secondly, more important, you did sign a form that says I won't

10   sue PG&E.

11        Now, as a separate matter, and in terms of PG&E's

12   obligation to all of us, as customers in the world, in

13   California, to the extent that they have some ongoing

14   inspection responsibility, certainly you and I both know if you

15   had a gas smell in your kitchen, what are you supposed to do?

16   Call the fire department, or call PG&E, or both.  And PG&E has

17   an obligation to come and inspect to see if there's a problem.

18   But to say that PG&E had an obligation to come and see if

19   Highland did its work correctly is a statement, and a

20   legitimate statement, but it doesn't translate to any legal

21   claim.

22        So I'm afraid I'm going to have to tell you that I'm

23   going to sustain PG&E's objection and disallow your claim, in

24   large measure, because it's not your claim at all; it's other

25   organizations that help you, whether it be your landlord or the

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

    PG&E Corporation and Pacific Gas and Electric Company

1  other entities that are mentioned in the papers you're familiar

2  with.

3       But to the extent that you personally believe you are

4  entitled to some money recovery, and therefore your claim, your

5  remedy, in my opinion, would have been, and maybe still is, I

6  don't know, against Highland, but not against PG&E.

7       So I'm going to disallow your claim and sustain the

8  objection.

9       MS. WARD:  Okay.

10      THE COURT:  Also alerting you -- has alerted you to

11  the fact that you had filed this other document asserting that

12  you want to bring a class action.  I don't believe you are

13  entitled or have any right to bring a class action.  But in any

14  event, we don't have a procedure available in the bankruptcy

15  court to allow someone who wishes to file a class action to

16  have a waiver of any fee.

17      So my personal advice to you is don't pursue the class

18  action remedy.  If, for some reason, you think you still want

19  to file a class action against PG&E, and if you choose to do it

20  in federal bankruptcy court, you'll need to pay a fee.  But I

21  will warn you that, by virtue of my ruling that says you don't

22  have a claim, you probably don't even have any right to bring a

23  class action at this point.

24      If my decision is incorrect, and you believe that I'm

25  in error, you have a remedy through the legal system.  But at

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    least for now, the ruling of the Court will be that you don't

2    have a claim in the PG&E bankruptcy for these events that

3    occurred in 2017 that you described.

4            So I'm sorry to give you the bad news.  You put in a

5    lot of effort.  I can see a lot of energy and purpose, and I'm

6    not critical or faulting you personally.  But based upon what

7    we've explored here, and what the papers indicate, there simply

8    is no basis to allow you a claim in the PG&E bankruptcy.

9            So if you have any other questions, I'll listen, but

10   other than that, I don't think it's appropriate.

11           MS. WARD:  Yes.  Yes, sir.  You know, in relationship

12   to if I am representing these entities wrongly, I'm a member of

13   the Cheyenne Arapaho Tribe.  I'm a member  Of Living Church of

14   God.  Fresno EOC gave me their blessing and gave me all the

15   figures of what they helped me with.  Mr. Arakelian, my

16   landlord, is all behind it, as is my brother, Larry Kaprielian,

17   the last one.

18           THE COURT:  Your brother, your landlord, your church,

19   your tribe all have rights to file claims.  They didn't.  That

20   doesn't mean because you care about them, or they care about

21   you --

22           MS. WARD:  Okay.

23           THE COURT:  -- that you have the legal right to do it.

24   And this gets to --

25           MS. WARD:  Okay.

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  -- the question:  they chose, again, for a

2  good cause, to help you, and that's fine.  I'm glad they did.

3  And I'm glad that they're not looking to you to pay, and that's

4  good news for you.  But it doesn't translate to you have a

5  right to assert a claim on their behalf.  You're not a lawyer.

6  And as I say, you don't have to be a lawyer to be a plaintiff

7  in a class action, but you have to have a claim.  And I'm, in

8  effect, saying that you don't have a claim.

9    So I'll leave it at that.  I'm not trying to rub it

10  in.  I wish it were a better result for you.

11    Mr. Rupp, I'll ask you to prepare a form of order that

12  refers to the reasons stated on the record that Ms. Ward's

13  claim is disallowed in its entirety and to serve it on her.

14    So Ms. Ward, you'll get a form of a written order in

15  the mail, and that'll trigger any rights you have.

16    MS. WARD:  Okay.  Your Honor?

17    THE COURT:  Yes, ma'am.

18    MS. WARD:  In reference to me being -- they said that

19  I refused to sign agreements.  I have all the agreements that

20  they offered me where I've responded and signed.  So I don't

21  know exactly which settlement agreement they said I refused to

22  sign.  I have signed everything.  And --

23    THE COURT:  I'm only talking about whether you have a

24  claim.

25    Mr. Rupp, do you know what Ms. Ward is referring to?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MR. RUPP:  I don't, Your Honor.  It might be related

2  to the -- I'm not sure.

3      THE COURT:  Was this an attempt to have a settlement?

4      MS. WARD:  Yes.

5      MR. RUPP:  There --

6      MS. WARD:  Yes.

7      MR. RUPP:  There was an attempt --

8      THE COURT:  Oh, okay.

9      MR. RUPP:  -- to have a settlement, as we referenced

10  in our reply, but all I know is the settlement agreement, the

11  final agreement, was never signed.  And also, Ms. Ward did

12  respond to the objection, so --

13      THE COURT:  Ms. Ward, let me explain.  I can't see

14  what you're holding up.  But the way our legal system works,

15  when people come to the table, figuratively, and compromise

16  their positions, people like I generally don't have to be

17  involved.  And we encourage settlements.  And Mr. Rupp happens

18  to be the lawyer for the firm representing PG&E that's handled

19  a number of these, and so he's quite experienced with that.

20  And judges are paid and trained to make decisions, but one of

21  the things that judges love is when parties settle, in part,

22  because they are in charge of their own fate rather than

23  sometimes the cruel result of the legal system.

24      And so if there was an opportunity for PG&E to say we

25  will settle with you, Ms. Ward, on the following terms, and you

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   passed up that chance, then PG&E is justified in pressing their

2   claim objection. And if PG&E agreed to settle, and you believe

3   you did settle, then the question I ask is, well, then why are

4   we even having this hearing today? And we shouldn't be having

5   this hearing if there was a consummated settlement.

6          Now, if you believe that there already was a

7   settlement, I encourage you to take it up, not with me, but

8   with  Mr. Rupp. And Mr. Rupp knows me well enough, not

9   personally, but he knows the process of the Court, that if

10  there's been a mistake here, and there was a, I'll say, signed

11  settlement, an effective settlement, then Mr. Rupp knows that

12  it should have been put to bed as a settlement, not presented

13  to me as an argument that made me make a decision. It's not

14  that I'm afraid of making decisions; it's that I would rather

15  not make a decision if the parties can reach a consensual

16  resolution.

17         So, offline, if you believe that there was a

18  settlement, and you can persuade Mr. Rupp to go back and

19  revisit that, then fine; I welcome it for you. If you think

20  there really was a settlement, and he says, no, there wasn't,

21  then I will leave -- I can't give you legal advice on what you

22  ought to do next. Let's not worry about that for now. If you

23  believe there was an effective settlement, and you were misled

24  and should have had it buttoned up and signed and sealed, then

25  follow up on it, but not with me. Okay?

escribers
19 of 65 | operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric Company

1          MS. WARD:  Okay.

2          THE COURT:  All right.

3          MS. WARD:  Thank you, Your Honor.  I didn't feel that

4     there was a settlement.  I had done a counteroffer.  So I don't

5     want to pursue that, oh yes, it was settled, and, you know --

6          THE COURT:  Okay.

7          MS. WARD:  -- here's the agreement.  So I'm not going

8     that route.

9          THE COURT:  Okay.  Well, then I appreciate that, Ms.

10    Ward.  I thought you were telling me something different

11    and I'm --

12         MS. WARD:  No.

13         THE COURT:  -- and I'm  not here to second guess and

14    to do a Monday morning quarterback and say, well, you should

15    have settled.  It's not my (audio interference) to say it.  And

16    I'll leave it at that.  With that, I want to thank you for your

17    participation --

18         MS. WARD:  Thank you.

19         THE COURT:  -- and your effort and wish you happy

20    holidays.  Thank you very much.

21         MS. WARD:  Thank you, Mr. Rupp.  And thank you, Your

22    Honor.

23         MR. RUPP:  Thank you.

24         THE COURT:  Thank you, Ms. Ward.

25         Okay.  Ms. Parada, has Ms. Green shown up yet?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE CLERK:  Yes, Your Honor.  I'll bring her in now.

2          THE COURT:  Okay.  All right.  Good morning, Ms.

3    Green.  I can hear you, I think.  Now you've got your mic

4    muted.  Are you going to turn your camera on today or stay

5    behind the screen?

6          MS. GREEN:  I'm here.  I'm trying to turn the camera

7    on.

8          THE COURT:  Okay.

9          MS. GREEN:  Let me see.  It's still not working.

10   Could I try to get this on a tablet?  It says to use a

11   computer, but no --

12         THE COURT:  Go ahead.

13         MS. GREEN:  It's still giving the error messages.  I

14   don't know if --

15         THE COURT:  Go ahead.  Give it a try.

16         Ms. Parada, does she have to log out or anything and

17   log back in?

18         MS. GREEN:  I've just done -- I've just rejoined.  No.

19   Okay.  Let's see what it says.  It says choose -- I'm going to

20   try something else.  Settings, high definition.  Okay.  Can you

21   see me now?

22         THE COURT:  No.  I can hear you, though.

23         MS. GREEN:  I don't know what -- it works from here.

24         THE COURT:  If you don't mind that I can't see you, I

25   can hear you.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MS. GREEN:  Okay.  I'm here.

2    THE COURT:  So Ms. Green, you filed a number of papers

3    yesterday, and there was some confusion in my staff and I, but

4    we're all caught up with what you filed.  There's some

5    duplication in what you filed.

6    But I guess, Mr. Rupp, we're still at the point where

7    the company wants to do the physical inspection, and Ms. Green

8    doesn't want to do it; is that where we are at the moment?

9    MR. RUPP:  That's where we are, Your Honor.

10   THE COURT:  Ms. Green, I don't know what to say to

11   you.  The point is we've given you a lot of leeway, and I

12   continue to give you leeway, in terms of proving your case, but

13   PG&E has a right to prove its case too.  And I think there's a

14   number -- sort of, all of us, as citizens and humans, are

15   dealing with the Coronavirus and the Omicron, and all the other

16   horrible things.

17   And I fully understand that you and your  husband

18   don't want to put yourself at risk.  But there has to be a way

19   to do it.  And to me, there's an easy way to do it.  And I

20   mean, I went back and looked at the pictures of your home.  And

21   as I recall from the pictures, your entryway to your home is on

22   the left side of the garage.  Do you have an electric garage

23   opener, or is it only a manual garage opener?

24   MS. GREEN:  It's only manual.

25   THE COURT:  But you can do it, right?  I mean, can you

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    open it from the inside?

2         MS. GREEN:  Yes.

3         THE COURT:  So it seems to me that the simple thing to

4    do here is to have an agreed time when the PG&E people come, an

5    agreed number, I think no more than three people, a date and

6    time when they come to your home, that perhaps by telephone or

7    cell phone or something, you  have a contact person.  When the

8    PG&E person is outside the door and the person calls you and

9    says I'm here, that you have an opportunity to open the door of

10   the garage, go back inside your house, or stand inside the

11   front door, or somewhere, just so you know what's going on.

12        And I can insist that the persons that show up from

13   PG&E do not enter your home, only in the garage and the

14   driveway, that they're masked, that they provide proof of

15   vaccination.  And I think Mr. Rupp has already made it clear

16   that they won't physically do anything.  They'll just visually

17   inspect your garage and driveway, which should probably take

18   thirty minutes.

19        And I don't see that that puts you or your family or

20   anyone else at risk.  If you think it does, perhaps some other

21   person, a member of your family, or a friend or someone, could

22   simply -- you know, a younger person, that isn't in jeopardy

23   any more than most people, that could just do the same thing

24   you're doing.  But I cannot tell PG&E, sorry, Ms. Green has

25   made a case, Ms. Green's assistant, whether he's an expert, Mr.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  Kisak, or whatever he is, he's made a case that PG&E can't

2  prove its own case.

3          So that's a long way of saying you're going to have to

4  accommodate PG&E for what I think is a reasonable inspection

5  and that it is not an intrusion into the privacy of your home

6  and is not to put you in any jeopardy because of the virus.

7          And if you're unwilling to do that, unfortunately, I

8  might have to just strike your claim, which I'd rather not do.

9  So --

10          MS. GREEN:  Excuse me.  May I say something, Your

11  Honor?

12          THE COURT:  Of course.  Yes, of course.

13          MS. GREEN:  Did Mr. Rupp make you also aware that, all

14  the way back in 2017, that PG&E also had sent a representative?

15  This will be their second inspection, not the first; they came

16  again, and then they never came back afterwards.

17          THE COURT:  Oh, I know that.  You made it clear to me

18  in the papers.  But Ms. Green, in 2019, PG&E filed bankruptcy.

19  And after that, you filed a claim, and that's how you and I

20  come to meet each other.  And if PG&E had not filed bankruptcy

21  and you had never therefore done anything in court, at some

22  point you'd be out of luck because the time would have run.  So

23  PG&E's bankruptcy provided a way for you to assert a claim.

24  And again, Ms. Green, I'm persuaded that you may have a very

25  valid claim of some amount, but PG&E has a right to disprove

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   it, and I can't take away its options.

2           So the fact is the fact that what they did three years

3   ago or four years ago is irrelevant because you filed a claim,

4   and they have a right to defend the claim.  So it comes down to

5   the simple matter, none of us, any of us want to be dealing

6   with this virus and all the risks that are involved.  But that

7   doesn't mean the legal system suddenly gets one-sided for one

8   side versus the other.

9           And it's not -- this is not big corporation against

10  individual homeowner.  It's PG&E has a right to at least

11  determine whether your claim should be honored.  And I

12  understand, and I've encouraged you to try to settle, and you

13  have said you'd like to settle.  And I want you to settle, but

14  I don't want to be publicly involved in what PG&E has offered

15  and what you have countered.

16          So look, it comes down to the simple matter that if

17  you say, no, I will not allow the property to be inspected,

18  then I have no choice but to disallow the claim.  If you do

19  allow the property to be inspected, under circumstances that I

20  described or something similar, then PG&E will take a position,

21  and it will either agree or disagree about settling with you

22  then.  And if that still doesn't work, then I will have a

23  trial.  We will have a trial in court or on Zoom, and you will

24  be required to prove your case, and they will be obligated to

25  disprove your case.  It's that simple.  As much as I'd like you

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    to reach a consensual resolution, I can't make PG&E pay more

2    than they've offered, and I can't make you accept less than

3    you've agreed to accept.  Okay?

4            MS. GREEN:  Um-hum.  May I ask Your Honor a question?

5            THE COURT:  That's my choice.  That's my choice at the

6    moment.  Yes.  Go ahead, please.

7            MS. GREEN:  Okay.  Also there's the issue too where we

8    presented that report from Matthew Kisak.  PG&E is saying that

9    because Matthew Kisak was not employed as in his usual

10   profession, that that report is invalid.

11           THE COURT:  Ms. Green, that isn't what they said.

12   They've said Mr. Kisak doesn't work there now, and the company

13   is not in business.  No one has asked that I disregard Mr.

14   Kisak's report.  PG&E has said we want to get in and inspect it

15   ourselves.  And that's the issue.

16           And so if PG&E goes and inspects it themselves (audio

17   interference), and then PG&E says, no, we still don't think we

18   have any liability, then I will make a decision on what proof

19   is what.  And you know what I probably will want?  I'll

20   probably want you to produce Mr. Kisak.  Again, it's easy to do

21   it on Zoom rather than to pay him to come to San Francisco and

22   testify in a court.  And I would probably have him show up on

23   Zoom and explain to me why he reaches the conclusions he did,

24   and let Mr. Rupp, or whatever lawyer is working, cross-examine

25   him and ask him what they want.  And then I will make PG&E's

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    expert explain why PG&E believes it doesn't have to pay.  And I

2    will give you an opportunity, or anyone representing you, to

3    question PG&E's expert.  And then I'll make a decision based

4    upon the evidence.

5         So that's a long way of saying the Kisak report, as

6    good as it is or as weak as it is, is what you've laid out as

7    your case.  And I will consider that at some time, but not

8    until PG&E has an opportunity to rebut it.

9         So once again, I'm not trying to pressure you, and I'm

10   not going to give you a deadline of five minutes from now, but

11   I'm going to tell you that you'll have to make that decision,

12   under circumstances that I believe would be perfectly safe.

13   I'm not a doctor any more than you are, but I am a senior

14   citizen, as I guess you are.  And I don't take lightly what the

15   virus threatens me and my family and you and your family and

16   everyone.

17        So if you can have the water company come out and

18   check the water, or you can have somebody come out if you had

19   an emergency to deal with in your house, similarly, you can

20   have a PG&E person come out and inspect.

21        So once again, if you want to think about this, talk

22   to your husband and others, that's fine.  We'll have another

23   continuance.  If you tell me that's fine, you'll do it, then

24   I'll let you and Mr. Rupp work out the details.  And if you

25   tell me no, I won't do it, then I will tell you that I will

        PG&E Corporation and Pacific Gas and Electric Company

1  have to disallow your claim.

2          MS. GREEN:  Your Honor, I have one more question.  I

3  agree with what you're saying.  We will consider that.  But

4  also too, is that the same consideration for the three-by-five

5  hole that's cut in my driveway, or is that for just inside the

6  garage?

7          THE COURT:  Well, the hole, the three-by-five is in

8  the driveway, right?  It's not inside the house.

9          MS. GREEN:  Right.  But I'm saying if you cut it off

10  where you disallow, does that disallow the three-by-five hole

11  that's cut in my driveway that started the issue in the first

12  place, or is it the both of them, the garage and the driveway?

13  We know PG&E damaged the driveway.

14          THE COURT:  Well, Mr. Rupp, do you -- I mean, I've

15  been thinking about the cracking in the driveway and the

16  hearings we've had.  Where do you think -- if Ms. Green says,

17  no, I'm not going to allow the driveway -- the garage to be

18  inspected, what does that do with the three-by-five hole that

19  is physically there, and there's no question that PG&E created

20  that hole?  The question is whether they're liable for it.

21          MR. RUPP:  Your Honor, that is a very good question.

22  I think I'd have to talk to my client about what we would

23  expect the outcome to be in that instance.  I know that that

24  hole is from the work done by PG&E's contractor.  And I think

25  we've stated that PG&E's contractor has tried to -- made an

PG&E Corporation and Pacific Gas and Electric Company

1  offer to repair it before that was turned down by the Greens.

2  So --

3  MS. GREEN:  Excuse me, Mr. Rupp.  I do not agree with

4  you.

5  THE COURT:  Okay.

6  MS. GREEN:  I asked him to --

7  THE COURT:  Let him.  Hold on, Ms. Green.  Ms. Green,

8  don't interrupt him.  Let him finish and then --

9  MS. GREEN:  All right.

10  MR. RUPP:  So is the question essentially -- I just

11  want to be sure I've got the proposal right.  And if the

12  outcome is the Greens will refuse a property inspection, would

13  that mean that the Court would allow the claim just to fix the

14  three-by-five patch?

15  THE COURT:  Let me reframe the question, and then I'll

16  let you answer; of course, I will.  But let's pretend,

17  magically, that there are no cracks in your driveway and inside

18  the garage, and therefore we didn't have all this discussion.

19  What is the portion -- what's left of your damage claim, in

20  terms of dollars, for the three-by-five hole?  I don't know

21  from the papers, but you tell me, what is the economic cost to

22  repair that hole today; do you know?

23  MS. GREEN:  I have an estimate from Ergeon, and this

24  is a company -- a established company here in the city of

25  Oakland, and they do that kind of work.  I had their people

PG&E Corporation and Pacific Gas and Electric Company

1    come out and look at it.  They did an estimate, which is every

2    thirty days, you know, you get a quote, but the quote changes.

3    They gave me -- I think the last time we had spoke, and he did

4    an estimate, he says that because of the way the cracks are in

5    that driveway, because of that patch -- okay, the patch is

6    what's causing destabilization in the cracks, you know.  And so

7    he said they would need to replace the driveway because, even

8    if you patched it, the cracks are not going to stop --

9         THE COURT:  Wait, Ms. Green, I thought you were asking

10   me about three-by-five hole.

11        MS. GREEN:  This is about the three-by-five hole.  You

12   asked me about the cost and everything else too.  The last time

13   he gave me an estimate, I believe it was something around about

14   11,000 to replace that driveway.  And that's not the first time

15   that driveway was replaced.  That was technically somewhat of a

16   new driveway that we had put in.  And then the new --

17        THE COURT:  Ms. Green, I must tell you, I'm very

18   confused now, because what you're now telling me is that you

19   could fix the driveway for 11,000 dollars.  And you told me

20   before it was 40,000.  Then you said maybe it's going to be

21   20- --

22        MS. GREEN:  I'm look --

23        THE COURT:  -- and now you're talking 11-, so I mean,

24   I don't know what to make of what you're saying.

25        MS. GREEN:  I'm looking at an estimate that's here in

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    front of me.  This one was dated -- this is one of the

2    estimates that Ergeon gave me, but the -- and this was as of

3    November 28.  The complete price that he gave, he broke down to

4    do the driveway, and one price to do the garage.  That's what

5    the difference -- the difference in the price was.  And that

6    was 20,864 dollars to do the complete driveway and the garage

7    floor.  And he --

8         THE COURT:  Well, I'll tell you what.  Ms. Green, I'm

9    not going to waste my time or yours on this.  You have to make

10   a decision, and I'll give you a deadline to make a decision.

11   Are you going to allow PG&E to come in and inspect the entire

12   garage and driveway?  And if the answer is yes, then I'm going

13   to let you and Mr. Rupp work out the details.  If the answer is

14   no, then I'm going to disallow your claim, and you can

15   assert -- you can amend the claim if you believe there -- or

16   you can explain to Mr. Rupp and separately make a statement of

17   what you believe the damage would be before replacing the

18   three-by-five or repairing the three-by-five.  But if the

19   answer is to replace or to repair the three-by-five hole you're

20   going to do the whole driveway anyway, PG&E has a right to come

21   out and inspect the driveway, if that's the issue.

22        So do you need a short period of time, or do you need

23   until another hearing?  How much time would you like to decide

24   whether you're going to let them come in and inspect the garage

25   and driveway?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MS. GREEN:  Your Honor, my husband is here also.

2    MR. GREEN:  Judge, may I speak, please?

3    THE COURT:  Yes, sir.

4    MR. GREEN:  How are you doing today?

5    THE COURT:  Fine, thank you, Mr. Green.

6    MR. GREEN:  I've been letting my wife actually handle

7  all of this stuff that's been going on with the driveway.  One

8  of the things is that the three-by-five that they have in the

9  driveway, even if they came in just to repair that alone it

10 would be discolored on driveway because there's a stripe down

11 the middle in the square there.  The older driveways, if you've

12 noticed, that area they cut wouldn't resolve the problem.

13    THE COURT:  I understand.  But you still have to tell

14 me whether you're going to allow PG&E to inspect.

15    MR. GREEN:  Well, at this point, I think that, if they

16 can do it in phases, where they come out and inspect the

17 driveway, that -- we'll start with that first.

18    THE COURT:  No, this is not --

19    MR. GREEN:  That way --

20    THE COURT:  No, this isn't going to work for phases.

21 This is an opportunity, safety, safe precautions, masks,

22 vaccinations, you and your wife do not have to be physically in

23 the garage where whoever the people are that Mr. Rupp's client

24 wants, they come there on an agreed time, they are there for a

25 short period of time, they look at it, they make their own

PG&E Corporation and Pacific Gas and Electric Company

1    assessment, and they leave.

2        MR. GREEN:  Okay.  You said thirty minutes.  You

3    said --

4        THE COURT:  I don't know.  I don't know.  But I can't

5    imagine more it's more than --

6        MR. GREEN:  They said two hours.

7        MS. GREEN:  They said two to three hours.

8        THE COURT:  I mean, I don't know that.  I can't

9    possibly know what it takes.  I can't imagine they're out

10   there doing it to waste time, but I can't put a time limit on

11   them if it's reasonable.

12       MR. GREEN:  Okay.  So --

13       THE COURT:  No.  So look, you two have to decide, are

14   you willing to take what I personally would think would be a no

15   risk thing?  I'll state it again.

16       MR. GREEN:  We are willing to consider it.  And we

17   will --

18       THE COURT:  You open the door, your car is out of the

19   way.  You make sure that no one -- no one is seeking to come

20   into the house.  You either observe it from inside the house or

21   the driveway -- I mean, the sidewalk, or not at all.  Or you

22   have some third-party person there, just a trusted person,

23   like, just to watch to make sure there's nothing happening.

24   And the inspectors, with safety precautions in place, the same

25   as you'd get if you went to the grocery store or to a

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    restaurant or a hospital or a court, and they leave.  They

2    come, they go, and they leave.  And then they make their

3    assessment, and they try to settle this case or not.

4            I'll tell you what, I'm going to make this --

5            MR. GREEN:  We could consider it.  We'll --

6            THE COURT:  I'm going to give you a deadline to

7    consider it.

8            Ms. Parada, when is our next date?  Our next PG&E is

9    the 18th of February -- of January?

10           THE CLERK:  January 11th, Your Honor.

11           THE COURT:  I'm going to continue this to January

12   11th.  And Mr. Green --

13           MR. RUPP:  Your  Honor?

14           THE COURT:  -- you need to make a decision on this

15   inspection thing before the end of the year, before December

16   31.  And --

17           MR. RUPP:  Your Honor?

18           THE COURT:  Yes, sir.

19           MR. RUPP:  If I may, I apologize, but I will not be in

20   town on the 11th.  There's a hearing on the 18th, just a week

21   later.  If the Court could continue it to that date, that would

22   be --

23           THE COURT:  Okay.  But I'm still -- Mr. and Ms. Green

24   have to make a fundamental decision which, in my opinion, they

25   can make in five minutes.  But I'm not going to pressure them.

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Mr. and Ms. Green, I'm going to continue this hearing

2  again to the 18th.  You have until December 31, last day of the

3  year, to make a decision on what I've just described for

4  physical inspection of your driveway and garage, but not inside

5  your house, and not involving you personally in any kind of

6  contact with the inspectors, and something that you're

7  satisfied with that does not threaten your home or anyone

8  coming into your home.  There are plenty of ways to make this

9  happen safely.

10    And I will, again, tell Mr. Rupp to make sure the

11  people who come there are masked, and they can prove, if asked

12  by the Greens, or anyone acting on their behalf, to just prove

13  that they have vaccinations, and that they would physically

14  inspect the driveway and the garage and then depart.

15    And Mr. and Ms. Green, you have until December 31 to

16  make that decision.  You can do it informally by telling Mr.

17  Rupp.  If Mr. Rupp is informed that the Greens will not

18  consent, then my response is your claim will be disallowed, but

19  you will be allowed to amend the claim to demonstrate what it

20  would take to repair what we call the three-by-five hole.

21    You also have an opportunity to -- I mean, if there is

22  the inspection, then I'll just assume that the parties will

23  work out something that is mutually acceptable.  And for now,

24  we'll continue the hearing to the January 18th, 10 o'clock

25  date.  And if --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. GREEN:  Your Honor?

2    THE COURT:  If the inspection is scheduled, but hasn't

3    happened yet, or the inspection has happened, but PG&E hasn't

4    formally put together its response, then we'll have a further

5    continuance.  If you have any more questions, go ahead.  But

6    I'm ready to --

7    MR. GREEN:  Yeah, I'm just very concerned about -- we

8    probably will be considering the inspection, but --

9    THE COURT:  What's that?

10   MR. GREEN:  -- the time frame in which you put on --

11   there is no time frame they could be on our property.  I mean,

12   he sent us an email for two hours.

13   MS. GREEN:  Three -- two to three hours.

14   MR. GREEN:  Two to three hours.

15   THE COURT:  Okay.  Okay.

16   MS. GREEN:  I --

17   THE COURT:  Mr. Green, it's just a two-hour maximum,

18   two hours maximum, period.  End of story.  I have nothing to

19   talk about.  Two hours.

20   MR. GREEN:  So we don't leeway on this?  No way.

21   We're not getting into (audio interference) with this one

22   because --

23   THE COURT:  What's that?

24   MR. GREEN:  I said I don't think that we will be

25   treated fairly with this here.  We should have a time frame

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   when PG&E can be around our property.  And that's all I'm

2   asking the jury to consider at this point.

3             THE COURT:  Mr. and Ms. Green, I'm going to --

4             MR. GREEN:  I was going to --

5             THE COURT:  -- I'm going to interrupt you because

6   you're going -- this is going crazy.  You're asserting a claim

7   for 40,000 dollars and maybe would compromise for less.

8             MS. GREEN:  Forty?

9             THE COURT:  I am not going to tell PG&E they have to

10  be under some unreasonable time period to make an inspection.

11  So I'm using my judgment.  It's two hours on site.  And if

12  that's still too long for you, then let's just get over with it

13  and I will disallow your claim.  It's that simple.

14            MS. GREEN:  Thank you, Your Honor.  Also, Your Honor,

15  our claim is not for 40,000 dollars; it's below 30,000 --

16  40,000 dollars.

17            THE COURT:  Ms. Green, it doesn't matter what it is at

18  the moment.  It is what it is.  So I believe it was originally

19  asserted in the 40,000-dollar range, and at some point, Ms.

20  Green, I believe you indicated a willingness to settle for a

21  lesser amount.  That's fine.  But the point is, you are still

22  welcome to pick up the phone and call Mr. Rupp and compromise

23  this thing and be done with it.  I can only use the legal

24  system the way I'm using it.

25            So one more time, you have until December 31 to make a

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    decision about the two-hour inspection.  And if you choose not

2    to do that, Mr. Rupp should submit a form of order that

3    disallows your claim, and the reason your claim will be

4    disallowed will be because you have chosen not to allow PG&E

5    need to inspect property.

6              MS. GREEN:  Your Honor, I have one more question.

7              THE COURT:  Well, let me finish, please, and I'm --

8    then I'm wrapping this up.  If I disallow the claim, you will

9    be allowed a time, a reasonable, time to amend it, to correct

10   it, to show whatever you believe you're entitled to, to repair

11   the three by five inch -- excuse me -- three by five foot hole

12   that was placed in your driveway that we know about.

13             MS. GREEN:  Your Honor, please --

14             THE COURT:  I'm not going to take any more time on

15   this today. Last question.  Go ahead.

16             MS. GREEN:  Could we extend out our time a bit more,

17   because we would like time to -- to find an attorney at this

18   point -- to consider finding an attorney to represent us at

19   this time.

20             THE COURT:  Well, then you find that attorney by

21   December 31 and make a decision or December -- January 18th for

22   the hearing, Ms. Green.

23             MS. GREEN:  Okay.  Thank you.

24             THE COURT:  All right.  Happy holidays.  Good luck.

25             MS. GREEN:  Um-hum.

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  And my free advice is that you work it out

2   for the inspection so this can have an amicable resolution.

3          MS. GREEN:  All right.

4          THE COURT:  All right.  I'm going to conclude the

5   Green matter.

6          Mr. Rupp, for our purposes, we're continuing it to

7   January 18th at 10.  And if the Greens choose not to permit the

8   inspection, you should prepare a form of order that is

9   consistent with my ruling that disallows their claim, but

10  allows them to amend, to assert damages limited to their claim

11  for the three by five hole in the property that's been

12  discussed previously.  Okay?

13         MR. RUPP:  Very good, Your Honor.

14         THE COURT:  Okay, thank you very much.  All right.

15         We'll go to the Greenberg matter.

16         MR. RUPP:  Your Honor, I'll stay on for the Greenberg

17  matter.  (Audio interference).

18         THE COURT:  Counsel isn't joining you?

19         MR. RUPP:  Yeah, Jennifer Dodge should be joining.

20         THE COURT:  Oh, okay; oh, okay.

21         Mr. Lapping, good morning.

22         MR. LAPPING:  Good morning.  Happy holidays.

23         THE COURT:  Same to you.  All right, we're going to

24  wait for Ms. Dodge then.

25         All right, Ms. Dodge, can you state your appearance?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  Good morning.

2  MS. DODGE:  Good morning, Your Honor.  Jennifer Dodge

3  on behalf of the reorganized debtors.

4  THE COURT:  So since some time ago, whenever we had

5  the last hearing, I did review all the claims in their detail.

6  And I understand Mr. Lapping, why you wanted to have a separate

7  hearing.  And it is the same physical address.  It is a

8  different set of facts.  I understand that.  But for the

9  reasons I stated, I still think it's efficient to do it

10  together.  So I'm prepared to go ahead and schedule a trial --

11  I mean schedule deadlines for a hearing here, if that's what

12  you want.  You're the lawyer for the claimant, Mr. Lapping.

13  What do you want me to do, given that background?

14  MR. LAPPING:  Well, Your Honor, I guess -- I mean, if

15  you're convinced that this all should be in one hearing, that's

16  what we'll do.

17  We did have some preliminary things that we wanted to

18  do before we set a final hearing.  With respect to the

19  refrigerator claim, my client has gone to the City of -- the

20  Town of Fairfax and obtained some records, including

21  communications that the Town had with a representative of PG&E,

22  that casts -- shows that there may have been some work done at

23  the neighboring premises during the relevant time frame when he

24  was out of town. These were not produced in response to

25  discovery.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1     And people can miss emails, but what we want to do is

2   file a motion to compel PG&E to produce its file, its claim

3   file on the refrigerator claim on the grounds -- under Rule

4   26(b)(3)(A), that even though they're asserting work product,

5   there's factual material in there that's current, that was in

6   existence at the time.  And you that is -- and it may help us

7   prove the critical aspect of the refrigerator claim.

8         THE COURT:  What do you think it'll prove?  Just so I

9   understand.  The timing, the date, or the --

10        MR. LAPPING:  Yes, PG&E has produced a schedule, very

11  brief, that says that the only work that was done in or near

12  the property was done in March of 2016.

13        THE COURT:  Right.  Right.

14        MR. LAPPING:  And we think we can find evidence that

15  there's outages and such that occurred prior to that.  We have

16  an email that indicates that there was a prior outage.  It

17  doesn't give the date or the range.  And so what we'd like to

18  do is file a motion to compel to both get additional documents

19  and to get that claim filed on the grounds that there was --

20        THE COURT:  Oh, I understand what you want to do.  You

21  want --

22        MR. LAPPING:  Okay.

23        THE COURT:  -- but you want to establish some evidence

24  that you believe that PG&E might have that would be consistent

25  with Mr. Greenberg's rendition of the facts as to when the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    damage occurred.

2         MR. LAPPING:  Correct.

3         THE COURT:  Okay, Ms. Dodge are you aware of this

4    issue, and are you in a position to say whether it's something

5    we're going to have to fight about?  Or do they get it?

6         MS. DODGE:  Well, thank you, Your Honor.  First, I

7    want to say that we -- the Court allowed Mr. Greenberg to do

8    limited discovery on the refrigerator claim.  This is the 77335

9    claim.  And we answered the written discovery and produced

10   documents, and that was done, I believe it was back in June;

11   and now it's December.

12        And Mr. Lapping's talking about filing a motion to

13   compel.  And from our view, a motion to compel at this stage is

14   much too late.  If he wanted to file a motion to compel that

15   should have been done a long time ago.

16        Two, we would vigorously oppose any motion to compel

17   PG&E's claim file.  As I have told Mr. Lapping, the claims

18   department works at the direction of the legal department.

19   Those claim files are privileged work product.  And this claim

20   for me is just particularly frustrating because Mr. Greenberg

21   filed a claim against PG&E prior to the bankruptcy, back in

22   2016 when this occurred, and PG&E did its due diligence back

23   then, looked at its records, said that there was no outage

24   during that February 14th to February 21st time period when he

25   was out of town.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1           And the documents that we produced -- and again, I

2  went back and asked our PG&E people to double-check this to

3  make sure; and they said no, the scheduled outage had been

4  scheduled for earlier, but then it was pushed back, and it was

5  actually completed March 16th to 17th.

6           And I produced -- PG&E produced documents to that

7  effect to Mr. Lapping.  And Mr. Greenberg continues to insist

8  that there must have been some sort of outage.  And in fact,

9  Mr. Lapping asked for an additional eight-week extension to

10  respond to our objection so he could gather additional

11  evidence.  And we granted that to him.

12           And here we are now in December.  And he's still

13  saying there might be something.  I might have an email.

14  There's no date.  I mean, it just gets to a certain point

15  that --

16           THE COURT:  Slow down for a minute.

17           MS. DODGE:  Yeah.

18           THE COURT:  What if there was an unscheduled outage?

19  Would that have been discovered?  I mean, you just made

20  reference to a scheduled outage.  What if there was --

21           MS. DODGE:  Right.

22           THE COURT:  -- an unscheduled --

23           MS. DODGE:  Right.  No, we looked to see -- it's on

24  the circuit known as the San Rafael 1108.  We checked the

25  records to see if the outage -- if there was any outage on that

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    circuit between February 14th and February 20, when Mr.

2    Greenberg was out of town and then came home.  There was no

3    outage, scheduled or not.

4         THE COURT:  But what if Mr. Greenberg has

5    independently learned from the City that there was something

6    that suggests that that was the case?  Then what am I supposed

7    to do about it; pretend that it doesn't -- he can't have that

8    information?

9         MS. DODGE:  Well, no.  He can have whatever

10   information he wants.  But I mean, as Mr. Lapping just stated,

11   he said he has an email from the Town of Fairfax that

12   references a prior outage, but it doesn't have any date or

13   range.  And again, I mean, I'm all for full disclosure of

14   information.  He can do whatever he wants.  But it just gets

15   frustrating for me, Your Honor, after a while.

16        THE COURT:  Okay, well, Ms. Dodge, you are not

17   familiar with my procedure.  Mr. Lapping, you've been around me

18   for a long time.  I don't do formal motions to compel until

19   there's a meet-and-confer among counsel in an attempt to

20   resolve it informally.

21        So if -- have you shared this email with Ms. Dodge,

22   Mr. Lapping?

23        MR. LAPPING:  No, Your Honor.

24        THE COURT:  Okay, well --

25        MR. LAPPING:  Preparing --

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  I think --

2      MR. LAPPING:  -- things.  But the eight weeks we took

3  was the period --

4      THE COURT:  No, no.  No, no. I don't want to go there.

5      MR. LAPPING:  Okay.

6      THE COURT:  What I want you to do is I want you to

7  comply with my posted procedures for discovery disputes and see

8  if you can resolve it.  And if that isn't resolvable, then you

9  can make your motion.  That's all.  So you --

10     MR. LAPPING:  That's fine, Your Honor.

11     THE COURT:  -- if you share the email with her and

12  say, what about this, she can -- and if -- she can say, I'm not

13  going to give it to you or it's privileged.  Or she can say

14  what she wants.

15     But Ms. Dodge, I'm not going to sit here and decide

16  that we're not going to have discovery that could have been

17  done earlier because we have no agreed discovery cut-off.

18  There's no end of discovery.  And if you believe -- I mean,

19  look, the fact of the matter is, if there is evidence that is

20  not privileged, it should be produced, period.  So --

21     MS. DODGE:  I agree.

22     THE COURT:  -- follow my procedures on that one.

23     Now what -- is there anything else, Mr. Lapping?

24  Should we just still set this over for further hearings or -- I

25  mean further pre-trial or shall I set a trial for everything

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    together?

2         MR. LAPPING:  Well, Your Honor, I would -- I would ask

3    that -- I'm going to assume that we're going to meet and

4    confer, and that we're not going to be able to get to the

5    finish line on that.  We might, but we'll see.

6         So why don't we set a hearing for a possible motion to

7    compel that I would -- after meeting and conferring, in

8    February, let's say, and then a further hearing, I guess, in

9    March or April for the -- well, actually, I've got to be

10   careful here.  I'm going to be out on April 1st for a week.

11   So --

12        THE COURT:  So let's try -- without pinning your date

13   down, let's assume that you either can get what you want from

14   Ms. Dodge formally or informally, what else do you need to do

15   to be ready to go to trial?  You have to go -- you have to put

16   on the case first, so --

17        MR. LAPPING:  Right.

18        THE COURT:  -- so --

19        MR. LAPPING:  -- we will have --

20        THE COURT:  I agree with -- I agree with you again.

21   The issue over the refrigerator is legally separate from the

22   issue over the work under the deck and the gas rerouting and

23   the tree.  But the same lawyers, the same history, in fact.

24        And I haven't -- I don't know Mr. Greenberg, but he

25   certainly is prolix, and if he ends up describing the story the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    way he describes his declaration, it'll be a lot of story to

2    tell.

3              But what would you take to put on your case in chief?

4    Would it be more than a couple of hours or would it be several

5    days? What do you expect?

6              MR. LAPPING:  Oh, Your Honor, I think it would be a

7    couple of days, because I agree there's a long saga here

8    that -- and we have to bring in a tree expert.  So I think at

9    least the better part of two days.

10             THE COURT:  But the saga -- the saga largely is

11   irrelevant.  The story is either the refrigerator conked out

12   and spilled the stuff out or it didn't.  And the trees and the

13   deck did or didn't have problems.

14             MR. LAPPING:  Right.

15             THE COURT:  So what I'm getting at --

16             MR. LAPPING:  Well, Your Honor -- Your Honor, getting

17   to my argument, which is the refrigerator is one set.  I was

18   talking about the other claim.  That's what I think is --

19             THE COURT:  No, no.

20             MR. LAPPING:  -- going to take a couple of days.

21             THE COURT:  No.  But what I'm getting at is that - -

22   well, let me back up.  Ms. Dodge, you're the one that persuaded

23   me to hear these matters preliminarily together.  Do you

24   believe they should be tried separately or together?

25             MS. DODGE:  I believe they could be tried together.

PG&E Corporation and Pacific Gas and Electric Company

1    Your Honor.  I think it just makes sense rather than setting

2    separate hearing dates.  I under --

3              THE COURT:  No, but the only -- the commonality is Mr.

4    Greenberg as the percipient witness and you two lawyers.  I

5    mean, I presume your defense and any defense witnesses, anybody

6    who comes in and says, the stuff was all over the -- there was

7    no outage, that has nothing to do with what Mr. Greenberg

8    complains about for the rerouting of the gas line.  The

9    rerouting of the gas line, we have proof.

10             So it's going to be different witnesses.  The only

11   commonality, as I said, it's Mr. Greenberg and you two lawyers.

12   But I still think it -- it still seems economical to have one

13   trial.  And I guess you're agreeing with me, Ms. Dodge.  And --

14             MS. DODGE:  I am.

15             THE COURT:  So Mr. Lapping, it's kind of -- it's kind

16   of one trial that has two phases, right?  We have the

17   refrigerator set of the trial, followed by the tree and deck

18   set of the trial, right?

19             MR. LAPPING:  Yes.  Yes, Your Honor.  Absolutely.

20             THE COURT:  All I meant is that Mr. Greenberg's

21   declaration gives a long tale that is largely interesting but

22   irrelevant to the issue of whether PG&E has any money to pay.

23   That's all.  I'm not faulting him.  I'm just saying I don't

24   want to hear that at trial.

25             But Mr. Lapping, again, apart from your personal

                PG&E Corporation and Pacific Gas and Electric Company

1    schedule, when do you think you would be ready to put on your

2    trial?  Are we talking about six more months of discovery or

3    just the normal preparation, and we're likely to have a trial

4    in April?

5              MR. LAPPING:  Your Honor, I think late April would be

6    preferable for us.

7              THE COURT:  So what if I scheduled a two-day trial in

8    late April?

9              MR. LAPPING:  And there would be a scheduling order

10   with some deadlines and rules, and off we go.

11             THE COURT:  Right.  But you don't anticipate any

12   motions, I take it, any substantive motions.

13             MR. LAPPING:  No, not on the tree claim.

14             THE COURT:  Ms. Dodge again, putting aside the

15   discovery dispute, is there any reason why you couldn't be

16   ready to defend the trial in the end of April?  Or are there

17   any dispositive motions that you anticipate would be brought as

18   to either of the claims?  I mean, treating the two gas-related

19   claims as one dispute and the refrigerator as the other

20   dispute, is there any is there any -- are there any pre-trial

21   motions you anticipate that are dispositive?

22             MS. DODGE:  I can't -- well, I don't know if I want to

23   commit to something yet.  I haven't actually thought about that

24   in terms of there be any type of motion in limine.  Or are you

25   talking about something different?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Well, motions in limine is not usually a

2    dispositive motion unless you knock out witnesses.

3    MS. DODGE:  Right.

4    THE COURT:  I mean, I'm talking about summary

5    judgment.

6    MS. DODGE:  Right.

7    THE COURT:  This doesn't sound like summary judgment

8    in either one of these.  It sounds like it's all or nothing on

9    the facts.

10   MS. DODGE:  Right.  Yeah, no.  I think in terms of a

11   dispositive motion, I think here the issue is primarily fact-

12   dependent.  And because of that --

13   THE COURT:  Yes.

14   MS. DODGE:  -- I don't see that you're -- the Court

15   would be inclined to grant a summary judgment.

16   THE COURT:  Well, it's not that I'd be inclined to,

17   it's just that I wouldn't be allowed to, because --

18   MS. DODGE:  Right.

19   THE COURT:  -- obviously the first thing the person

20   says is there are facts in dispute.  And then I go, well, then

21   there's no summary judgment.

22   MS. DODGE:  Right.

23   THE COURT:  Look, I'm going to schedule a two-day

24   trial the end of April, now and then I'm also going to set a

25   pre-trial a few weeks prior just to talk about things.  And if

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    we have to adjust the trial, I don't anticipate a problem.

2            I will tell you that Judge Blumenstiel and I believe

3    one of my other colleagues is starting to think about hybrid

4    partially in-court trials.  But I am not.  And with the latest

5    Omicron issues, I'm not anticipating resuming any kind of in-

6    court trials.

7            So this would be a Zoom trial in April.  And I will

8    issue a trial scheduling order that is consistent with the

9    procedures that I think need to be followed.  And my personal

10   schedule is not at all difficult.

11           So when I say we'll set a trial date, it's not in

12   concrete from my point of view.  And we'll take another look at

13   this in, say, March.  So what I'm going to do is set a pre-

14   trial, another trial scheduling in March, with a trial in

15   April.

16           And Mr. Lapping if there's -- if it's necessary to

17   have a motion to compel, there's plenty of time to take that up

18   between now and then.

19           So working backwards, Ms. Parada, can you give me two

20   days in late April that we could do a trial?

21           THE CLERK:  April 18th and 19th.

22           THE COURT:  Are those dates convenient for counsel?

23           MR. LAPPING:  Yes, Your Honor.

24           THE COURT:  Ms. Dodge?

25           MS. DODGE:  I'm just checking my schedule.  Yes, those

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    dates should work; April 18th to 19th.

2         THE COURT:  Yes.  And Ms. Parada, in April for -- I'm

3    sorry, in March for a further scheduling conference?

4         THE CLERK:  We have March 15th as a PG&E all-purpose

5    date, or did you want to set it separately, Your Honor?

6         THE COURT:  No, we could do it then.  March 15th?

7    March 15th available, let's say, at 11 o'clock, for both of you

8    counsel?

9         MR. LAPPING:  Yes, Your Honor.

10        MS. DODGE:  Yes, Your Honor.

11        THE COURT:  Mr. Rupp, are you going to be involved in

12   this -- in the trial?  Let me -- or Ms. Dodge will have that, I

13   presume.

14        MR. RUPP:  No, Your Honor. Ms. Dodge is -- Ms. Dodge

15   is in charge here.

16        THE COURT:  Okay.  All right.  So I'm going to -- I'm

17   setting a two day trial that combines the objections to the

18   three Greenberg claims -- you know the numbers of them -- by

19   Zoom, and a scheduling conference on March 15th at 11.

20        And I will have issued the scheduling order before

21   then, in case there are any questions about or disagreements

22   with what I'm doing.

23        Is there any appetite to try to mediate this matter

24   through the system?  PG&E here -- there has (audio

25   interference) out there.

PG&E Corporation and Pacific Gas and Electric Company

1        MS. DODGE:  We did try to mediate, Your Honor,

2        THE COURT:  Yeah, okay.  I guess that's right.  I

3   guess you did.

4        Okay, then, unless either of you have any questions,

5   I'll wrap it up with that and wish you happy holidays and good

6   luck.

7        MR. LAPPING:  All right.  Thank you, Your Honor.

8        MS. DODGE:  Thank you, Your Honor.

9        THE COURT:  Thank you, Ms. Dodge.

10       MR. RUPP:  Happy holidays, Your Honor.

11       THE COURT:  Thank you Mr. Rupp.

12       (Whereupon these proceedings were concluded at 11:09 AM)

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net
of 65

1

2                          I N D E X

3    RULINGS:                                    PAGE LINE

4    Ms. Ward's claim is disallowed.             17      7

5    If the Greens do not allow inspection of the   39      7

6    property, their claim is disallowed, without

7    prejudice to their right to amend the

8    damages claim limited to the hole in their

9    property.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1

2                    C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *[signature: Sharona Shapiro]*

8

9    _____

10   /s/ SHARONA SHAPIRO, CET-492

11

12   eScribers

13   7227 N. 16th Street, Suite #207

14   Phoenix, AZ 85020

15

16   Date:  December 22, 2021

17

18

19

20

21

22

23

24

25

of 65
eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**able (3)**
5:7;12:5;46:4
**Absolutely (1)**
48:19
**accept (2)**
26:2,3
**acceptable (1)**
35:23
**accommodate (1)**
24:4
**according (1)**
7:17
**act (1)**
4:25
**acting (1)**
35:12
**action (7)**
15:12,13,15,18,19,
23;17:7
**actively (1)**
8:15
**actual (1)**
12:10
**actually (4)**
32:6;43:5;46:9;
49:23
**additional (3)**
41:18;43:9,10
**address (1)**
40:7
**adjust (1)**
51:1
**advantageous (1)**
6:20
**advice (3)**
15:17;19:21;39:1
**afraid (2)**
14:22;19:14
**afterwards (1)**
24:16
**again (14)**
17:1;24:16,24;26:20;
27:9,21;33:15;35:2,10;
43:1;44:13;46:20;
48:25;49:14
**against (14)**
6:8,13;7:10,13,21;
10:12,16,24;11:18;
15:6,6,19;25:9;42:21
**ago (4)**
25:3,3;40:4;42:15
**agree (7)**
25:21;28:3;29:3;
45:21;46:20,20;47:7
**agreed (7)**
11:15;19:2;23:4,5;
26:3;32:24;45:17
**agreeing (1)**
48:13
**agreement (4)**

17:21;18:10,11;20:7
**agreements (2)**
17:19,19
**ahead (6)**
21:12,15;26:6;36:5;
38:15;40:10
**alerted (1)**
15:10
**alerting (1)**
15:10
**allegation (1)**
11:14
**alleged (1)**
11:21
**allow (9)**
15:15;16:8;25:17,19;
28:17;29:13;31:11;
32:14;38:4
**allowed (5)**
5:8;35:19;38:9;42:7;
50:17
**allows (1)**
39:10
**all-purpose (1)**
52:4
**alone (1)**
32:9
**along (1)**
6:16
**although (1)**
12:7
**amend (4)**
31:15;35:19;38:9;
39:10
**amicable (1)**
39:2
**among (1)**
44:19
**amount (2)**
24:25;37:21
**answered (1)**
42:9
**anticipate (3)**
49:11,17,21;51:1
**anticipating (1)**
51:5
**Apart (2)**
11:7;48:25
**apologize (1)**
34:19
**appearance (1)**
39:25
**appearing (1)**
4:3
**appetite (1)**
52:23
**apply (1)**
14:4
**appreciate (1)**
20:9
**appropriate (1)**
16:10
**April (13)**

46:9,10;49:4,5,8,16;
50:24;51:7,15,20,21;
52:1,2
**Arakelian (1)**
16:15
**Arapaho (1)**
16:13
**area (1)**
32:12
**argument (4)**
6:1,6;19:13;47:17
**around (3)**
30:13;37:1;44:17
**arrived (1)**
4:9
**aside (1)**
49:14
**aspect (1)**
41:7
**assert (6)**
5:7;11:8;17:5;24:23;
31:15;39:10
**asserted (1)**
37:19
**asserting (3)**
15:11;37:6;41:4
**asserts (1)**
11:9
**assessment (2)**
33:1;34:3
**assist (1)**
5:17
**assistance (1)**
5:22;6:23;8:14
**assistant (1)**
23:25
**assume (3)**
35:22;46:3,13
**attempt (3)**
18:3,7;44:19
**attic (1)**
9:7
**attorney (4)**
5:1;38:17,18,20
**audio (6)**
6:22;20:15;26:16;
36:21;39:17;52:24
**authorize (1)**
6:17
**available (3)**
4:1;15:14;52:7
**award (1)**
5:14
**aware (3)**
8:14;24:13;42:3
**away (1)**
25:1

## B

**back (15)**
12:14,24;13:10;
19:18;21:17;22:20;

23:10;24:14,16;42:10,
21,22;43:2,4;47:22
**background (1)**
40:13
**backwards (1)**
51:19
**bad (1)**
16:4
**bankruptcy (10)**
12:15;14:5;15:14,20;
16:2,8;24:18,20,23;
42:21
**based (2)**
16:6;27:3
**basis (1)**
16:8
**became (1)**
8:14
**bed (1)**
19:12
**behalf (6)**
4:4,25;5:7;17:5;
35:12;40:3
**behind (3)**
13:18;16:16;21:5
**believes (1)**
27:1
**below (1)**
37:15
**Benvenutti (1)**
3:14
**beside (1)**
12:5
**better (2)**
17:10;47:9
**big (2)**
13:24;25:9
**bill (1)**
12:20
**bills (4)**
8:6;9:2;11:25;13:21
**bit (1)**
38:16
**blessing (1)**
16:14
**Blumenstiel (1)**
51:2
**both (5)**
14:14,16;28:12;
41:18;52:7
**brief (2)**
11:12;41:11
**briefly (1)**
4:11
**bring (7)**
3:7;4:18;15:12,13,
22;21:1;47:8
**broke (1)**
31:3
**brother (2)**
16:16,18
**brought (1)**
49:17

business (2)
13:22;26:13
**buttoned (1)**
19:24

## C

**CALIFORNIA (2)**
3:1;14:13
**Call (10)**
3:3,8;12:18,22,22;
13:2;14:16,16;35:20;
37:22
**calling (1)**
3:5
**calls (1)**
23:8
**came (6)**
4:10;6:7;24:15,16;
32:9;44:2
**camera (2)**
21:4,6
**Can (46)**
3:14,16,16,22;4:20,
22;5:25;6:18;11:8;
12:9;14:6;16:5;19:15,
18;21:3,20,22,25;
22:25,25;23:12;27:17,
18,19;31:14,15,16;
32:16;34:25;35:11,16;
37:1,23;39:2,25;41:1,
14;44:9,14;45:8,9,12,
12,13;46:13;51:19
**car (1)**
33:18
**care (2)**
16:20,20
**careful (1)**
46:10
**cares (1)**
3:11
**case (13)**
22:12,13;23:25;24:1,
2;25:24,25;27:7;34:3;
44:6;46:16;47:3;52:21
**casts (1)**
40:22
**caught (1)**
22:4
**cause (1)**
17:2
**caused (1)**
6:10
**causing (1)**
30:6
**cell (1)**
23:7
**certain (1)**
43:14
**certainly (2)**
14:14;46:25
**chance (2)**
4:11;19:1

Case: 19-30088    Doc# 11739    Filed: 12/22/21    Entered: 12/22/21 08:20:19    Page 56
of 65

**changes (1)**
30:2
**charge (2)**
18:22;52:15
**check (1)**
27:18
**checked (1)**
43:24
**checking (1)**
51:25
**Cheyenne (1)**
16:13
**chief (1)**
47:3
**choice (5)**
3:24;14:4;25:18;
26:5,5
**choices (3)**
9:23,25;10:3
**choose (4)**
15:19;21:19;38:1;
39:7
**chose (1)**
17:1
**chosen (1)**
38:4
**Church (2)**
16:13,18
**circuit (2)**
43:24;44:1
**circumstances (2)**
25:19;27:12
**citizen (1)**
27:14
**citizens (1)**
22:14
**city (3)**
29:24;40:19;44:5
**claim (62)**
3:19;4:24;6:4;7:10,
21;10:15,24;11:5,9,22;
14:6,8,21,23,24;15:4,7,
22;16:2,8;17:5,7,8,13,
24;19:2,24:8,19,23,25;
25:3,4,11,18;28:1;
29:13,19;31:14,15;
35:18,19;37:6,13,15;
38:3,3,8;39:9,10;
40:19;41:2,3,7,19;42:8,
9,17,19,19,21;47:18;
49:13
**claimant (1)**
40:12
**claimants (1)**
5:4
**claimed (1)**
6:11
**claims (12)**
3:18;5:7;6:8;11:8,
18;14:8;16:19;40:5;
42:17;49:18,19;52:18
**class (7)**
15:12,13,15,17,19,

23;17:7
**clear (2)**
23:15;24:17
**CLERK (8)**
3:4;4:2,15,18;21:1;
34:10;51:21;52:4
**client (3)**
28:22;32:23;40:19
**climb (1)**
12:7
**cocounsel (1)**
3:21
**colleagues (1)**
51:3
**combines (1)**
52:17
**coming (1)**
35:8
**commit (1)**
49:23
**common (1)**
12:16
**commonality (2)**
48:3,11
**communications (1)**
40:21
**company (8)**
6:7,20;13:24;22:7;
26:12;27:17;29:24,24
**compel (9)**
41:2,18;42:13,14,14,
16;44:18;46:7;51:17
**complains (1)**
48:8
**complete (2)**
31:3,6
**completed (1)**
43:5
**complimented (1)**
5:24
**comply (1)**
45:7
**compromise (3)**
18:15;37:7,22
**computer (1)**
21:11
**concerned (1)**
36:7
**conclude (1)**
39:4
**concluded (1)**
53:12
**conclusions (1)**
26:23
**concrete (2)**
11:14;51:12
**confer (1)**
46:4
**conference (2)**
52:3,19
**conferring (1)**
46:7
**confused (1)**

30:18
**confusion (1)**
22:3
**conked (1)**
47:11
**consensual (2)**
19:15;26:1
**consent (1)**
35:18
**consider (7)**
27:7;28:3;33:16;
34:5,7;37:2;38:18
**consideration (1)**
28:4
**considering (1)**
36:8
**consistent (3)**
39:9;41:24;51:8
**consummated (1)**
19:5
**contact (2)**
23:7;35:6
**context (1)**
14:5
**continuance (2)**
27:23;36:5
**continue (5)**
22:12;34:11,21;35:1,
24
**continues (1)**
43:7
**continuing (1)**
39:6
**contract (1)**
7:4
**contracted (1)**
9:4
**contractor (3)**
11:17;28:24,25
**convenient (1)**
51:22
**convinced (1)**
40:15
**Coronavirus (1)**
22:15
**Corporation (2)**
3:6;25:9
**correctly (8)**
9:11,25;10:13,18;
12:1,21,25;14:19
**cost (2)**
29:21;30:12
**counsel (6)**
3:7,9;39:18;44:19;
51:22;52:8
**countered (1)**
25:15
**counteroffer (1)**
20:4
**couple (4)**
4:13;47:4,7,20
**course (4)**
3:22;24:12,12;29:16

**Court (182)**
3:3,4,9,16,18,22,24;
4:3,12,16,20,24;5:3,6,
11,13,18,21;6:3,12,21;
7:1,3,5,7,12,14,17,21,
24;8:4,6,18,21;9:5,10,
15,17,22;10:2,6,9,11,
15,19,24;11:2,7;12:14,
16;13:12,14;15:10,15,
20;16:1,18,23;17:1,17,
23;18:3,8,13;19:9;
20:2,6,9,13,19,24;21:2,
8,12,15,22,24;22:2,10,
25;23:3;24:12,17,21;
25:23;26:5,11,22;28:7,
14;29:5,7,13,15;30:9,
17,23;31:8;32:3,5,13,
18,20;33:4,8,13,18;
34:1,6,11,14,18,21,23;
36:2,9,15,17,23;37:3,5,
9,17;38:7,14,20,24;
39:1,4,14,18,20,23;
40:4;41:8,13,20,23;
42:3,7;43:16,18,22;
44:4,16,24;45:1,4,6,11,
22;46:12,18,20;47:10,
15,19,21;48:3,15,20;
49:7,11,14;50:1,4,7,13,
14,16,19,23;51:6,22,
24;52:2,6,11,16;53:2,9,
11
**covered (1)**
11:12
**cracking (1)**
28:15
**cracks (4)**
29:17;30:4,6,8
**crawl (3)**
9:8,8;12:8
**crazy (1)**
37:6
**created (1)**
28:19
**critical (3)**
14:7;16:6;41:7
**cross-examine (1)**
26:24
**cruel (1)**
18:23
**current (1)**
41:5
**customers (2)**
11:18;14:12
**cut (4)**
28:5,9,11;32:12
**cut-off (1)**
45:17

**D**

**damage (5)**
7:23,24;29:19;31:17;
42:1

**damaged (1)**
28:13
**damages (5)**
6:10;11:1,23;12:10;
39:10
**date (11)**
23:5;34:8,21;35:25;
41:9,17;43:14;44:12;
46:12;51:11;52:5
**dated (1)**
31:1
**dates (3)**
48:2;51:22;52:1
**day (2)**
35:2;52:17
**days (6)**
30:2;47:5,7,9,20;
51:20
**deadline (3)**
27:10;31:10;34:6
**deadlines (2)**
40:11;49:10
**deal (1)**
27:19
**dealing (2)**
22:15;25:5
**debtor (1)**
3:9
**debtors (2)**
3:14;40:3
**DECEMBER (9)**
3:1;34:15;35:2,15;
37:25;38:21,21;42:11;
43:12
**decide (3)**
31:23;33:13;45:15
**decision (14)**
15:24;19:13,15;
26:18;27:1,11;31:10,
10;34:14,24;35:3,16;
38:1,21
**decisions (2)**
18:20;19:14
**deck (3)**
46:22;47:13;48:17
**declaration (2)**
47:1;48:21
**defective (1)**
8:24
**defects (1)**
9:9
**defend (2)**
25:4;49:16
**defense (2)**
48:5,5
**definition (1)**
21:20
**demonstrate (1)**
35:19
**Dennis (1)**
3:5
**depart (1)**
35:14

Case: 19-30088    Doc# 11739    Filed: 12/22/21    Entered: 12/22/21 08:20:19    Page 57
of 65

**department (3)**
14:16;42:18,18
**dependent (1)**
50:12
**described (3)**
16:3;25:20;35:3
**describes (1)**
47:1
**describing (1)**
46:25
**destabilization (1)**
30:6
**detail (1)**
40:5
**details (2)**
27:24;31:13
**determine (1)**
25:11
**difference (2)**
31:5,5
**different (5)**
12:17;20:10;40:8;
48:10;49:25
**difficult (1)**
51:10
**diligence (1)**
42:22
**direction (1)**
42:18
**disadvantage (1)**
7:8
**disagree (1)**
25:21
**disagreements (1)**
52:21
**disallow (9)**
14:23;15:7;25:18;
28:1,10,10;31:14;
37:13;38:8
**disallowed (4)**
11:5;17:13;35:18;
38:4
**disallows (2)**
38:3;39:9
**disclosure (1)**
44:13
**discolored (1)**
32:10
**discovered (1)**
43:19
**discovery (9)**
40:25;42:8,9;45:7,
16,17,18;49:2,15
**discussed (1)**
39:12
**discussion (1)**
29:18
**dispositive (4)**
49:17,21;50:2,11
**disprove (2)**
24:25;25:25
**dispute (4)**
49:15,19,20;50:20

**disputes (1)**
45:7
**disregard (1)**
26:13
**docket (1)**
4:9
**doctor (1)**
27:13
**document (2)**
7:9;15:11
**documents (4)**
41:18;42:10;43:1,6
**Dodge (38)**
3:22;39:19,24,25;
40:2,2;42:3,6;43:17,21,
23;44:9,16,21;45:15,
21;46:14;47:22,25;
48:13,14;49:14,22;
50:3,6,10,14,18,22;
51:24,25;52:10,12,14,
14;53:1,8,9
**dollars (6)**
29:20;30:19;31:6;
37:7,15,16
**done (32)**
5:25;6:14,17;8:16,
19;9:4,5,11,13,24,25;
10:12,18,20,23;11:16,
23;12:1,2,9,13;20:4;
21:18;24:21;28:24;
37:23;40:22;41:11,12;
42:10,15;45:17
**door (4)**
23:8,9,11;33:18
**double-check (1)**
43:2
**down (8)**
8:18;25:4,16;29:1;
31:3;32:10;43:16;
46:13
**driveway (30)**
23:14,17;28:5,8,11,
12,13,15,17;29:17;
30:5,7,14,15,16,19;
31:4,6,12,20,21,25;
32:7,9,10,17;33:21;
35:4,14;38:12
**driveways (1)**
32:11
**due (1)**
42:22
**duplication (1)**
22:5
**during (2)**
40:23;42:24

**E**

**earlier (2)**
43:4;45:17
**easy (3)**
13:14;22:19;26:20
**economic (1)**

29:21
**economical (1)**
48:12
**effect (2)**
17:8;43:7
**effective (2)**
19:11,23
**efficiency (1)**
8:10
**efficient (1)**
40:9
**effort (2)**
16:5;20:19
**eight (1)**
45:2
**eight-week (1)**
43:9
**either (9)**
10:2,3;25:21;33:20;
46:13;47:11;49:18;
50:8;53:4
**electric (1)**
22:22
**electrical (1)**
13:20
**electricity (1)**
12:18
**electronically (1)**
4:5
**else (6)**
12:22;21:20;23:20;
30:12;45:23;46:14
**email (6)**
36:12;41:16;43:13;
44:11,21;45:11
**emails (1)**
41:1
**emergency (1)**
27:19
**employed (1)**
26:9
**encourage (2)**
18:17;19:7
**encouraged (1)**
25:12
**end (6)**
13:19;34:15;36:18;
45:18;49:16;50:24
**ends (1)**
46:25
**Energy (12)**
6:11,18;8:10,14,20,
22;9:20;11:19;12:1,3,
4;16:5
**enough (1)**
19:8
**enter (1)**
23:13
**entire (1)**
31:11
**entirety (1)**
17:13
**entities (3)**

5:16;15:1;16:12
**entitled (5)**
6:5;13:19;15:4,13;
38:10
**entity (1)**
13:13
**entryway (1)**
22:21
**EOC (1)**
16:14
**Ergeon (2)**
29:23;31:2
**error (2)**
15:25;21:13
**essentially (1)**
29:10
**establish (1)**
41:23
**established (1)**
29:24
**estimate (5)**
29:23;30:1,4,13,25
**estimates (1)**
31:2
**even (9)**
6:23;11:21,23;14:8;
15:22;19:4;30:7;32:9;
41:4
**event (1)**
15:14
**events (1)**
16:2
**everyone (1)**
27:16
**evidence (5)**
27:4;41:14,23;43:11;
45:19
**exactly (1)**
17:21
**example (2)**
10:6,7
**exchange (1)**
11:17
**excuse (5)**
7:6;10:19;24:10;
29:3;38:11
**exhibits (1)**
4:9
**existence (1)**
41:6
**expect (2)**
28:23;47:5
**experienced (1)**
18:19
**expert (4)**
23:25;27:1,3;47:8
**explain (4)**
18:13;26:23;27:1;
31:16
**explored (1)**
16:7
**extend (1)**
38:16

**extension (1)**
43:9
**extent (3)**
11:9;14:13;15:3

**F**

**face (1)**
14:7
**fact (7)**
7:17;15:11;25:2,2;
43:8;45:19;46:23
**fact- (1)**
50:11
**facts (6)**
14:5,8;40:8;41:25;
50:9,20
**factual (1)**
41:5
**failed (1)**
7:2
**Fairfax (2)**
40:20;44:11
**fairly (1)**
36:25
**familiar (1)**
15:1;44:17
**family (4)**
23:19,21;27:15,15
**fate (1)**
18:22
**faulting (2)**
16:6;48:23
**February (6)**
34:9;42:24,24;44:1,
1;46:8
**federal (1)**
15:20
**fee (2)**
15:16,20
**feel (3)**
6:19;11:11;20:3
**few (1)**
50:25
**fight (1)**
42:5
**figuratively (1)**
18:15
**figures (1)**
16:15
**file (9)**
15:15,19;16:19;41:2,
2,3,18;42:14,17
**filed (11)**
6:21;15:11;22:2,4,5;
24:18,19,20;25:3;
41:19;42:21
**files (1)**
42:19
**filing (1)**
42:12
**filings (1)**
4:6

Case: 19-30088    Doc# 11739    Filed: 12/22/21    Entered: 12/22/21 08:20:19    Page 58
of 65

**final (2)**
18:11;40:18
**find (3)**
38:17,20;41:14
**finding (1)**
38:18
**fine (9)**
3:17;9:19;17:2;
19:19;27:22,23;32:5;
37:21;45:10
**finish (3)**
29:8;38:7;46:5
**fire (1)**
14:16
**firm (1)**
18:18
**first (18)**
3:8,10;8:1;10:6,7;
11:15,24;12:24;13:1,4,
22;24:15;28:11;30:14;
32:17;42:6;46:16;
50:19
**five (5)**
27:10;34:25;38:11,
11;39:11
**fix (3)**
12:19;29:13;30:19
**fixed (3)**
12:21;13:23,23
**floor (1)**
31:7
**focus (1)**
6:4
**follow (3)**
8:25;19:25;45:22
**followed (2)**
48:17;51:9
**following (1)**
18:25
**follows (3)**
10:2,4,9
**foot (1)**
38:11
**forget (3)**
12:15,15,16
**form (5)**
14:9;17:11,14;38:2;
39:8
**formal (1)**
44:18
**formally (2)**
36:4;46:14
**Forty (1)**
37:8
**four (1)**
25:3
**frame (4)**
36:10,11,25;40:23
**FRANCISCO (2)**
3:1;26:21
**free (1)**
39:1
**Fresno (1)**

16:14
**friend (1)**
23:21
**front (2)**
23:11;31:1
**frustrating (2)**
42:20;44:15
**fulfil (1)**
7:4
**full (1)**
44:13
**fully (1)**
22:17
**fundamental (1)**
34:24
**funds (1)**
5:17
**further (5)**
36:4;45:24,25;46:8;
52:3

## G

**garage (17)**
22:22,23,23;23:10,
13,17;28:6,12,17;
29:18;31:4,6,12,24;
32:23;35:4,14
**gas (5)**
12:18;14:15;46:22;
48:8,9
**gas-related (1)**
49:18
**gather (1)**
43:10
**gave (6)**
16:14,14;30:3,13;
31:2,3
**generally (1)**
18:16
**gets (4)**
16:24;25:7;43:14;
44:14
**given (2)**
22:11;40:13
**gives (1)**
48:21
**giving (1)**
21:13
**glad (2)**
17:2,3
**God (1)**
16:14
**goes (1)**
26:16
**Good (16)**
3:12,13;4:20;5:23;
17:2,4;21:2;27:6;
28:21;38:24;39:13,21,
22;40:1,2;53:5
**grant (1)**
50:15
**granted (1)**

43:11
**great (1)**
9:14
**Green (83)**
3:18,21;4:1,2,3,6,13;
20:25;21:3,6,9,13,18,
23;22:1,2,7,10,24;23:2,
24;24:10,13,18,24;
26:4,7,11;28:2,9,16;
29:3,6,7,7,9,23;30:9,
11,17,22,25;31:8;32:1,
2,4,5,6,15,19;33:2,6,7,
12,16;34:5,12,23;35:1,
15;36:1,7,10,13,14,16,
17,20,24;37:3,4,8,14,
17,20;38:6,13,16,22,
23,25;39:3,5
**Greenberg (14)**
3:18,21;39:15,16;
42:7,20;43:7;44:2,4;
46:24;48:4,7,11;52:18
**Greenberg's (2)**
41:25;48:20
**Greens (3)**
29:1,12;35:12,17;
39:7
**Green's (1)**
23:25
**grocery (1)**
33:25
**grounds (2)**
41:3,19
**guess (9)**
4:13;20:13;22:6;
27:14;40:14;46:8;
48:13;53:2,3

## H

**half (1)**
8:3
**hand (1)**
4:5
**handle (1)**
32:6
**handled (1)**
18:18
**happen (1)**
35:9
**happened (4)**
5:22;7:25;36:3,3
**happening (1)**
33:23
**happens (1)**
18:17
**happy (6)**
3:23;20:19;38:24;
39:22;53:5,10
**hear (10)**
3:15,16,17;4:20,22;
21:3,22,25;47:23;
48:24
**heard (1)**

4:4
**hearing (15)**
19:4,5;31:23;34:20;
35:1,24;38:22;40:5,7,
11,15,18;46:6,8;48:2
**hearings (2)**
28:16;45:24
**heating (1)**
13:21
**help (3)**
14:25;17:2;41:6
**helped (2)**
5:16;16:15
**here's (1)**
20:7
**herself (1)**
12:7
**Hi (1)**
4:20
**high (3)**
8:6;13:21;21:20
**higher (1)**
11:25
**Highland (16)**
6:7,10,12,13;7:18,19,
22,23;8:21;9:20;10:7,
24;12:1;14:3,19;15:6
**Highlands (5)**
6:18;8:20;11:19;
12:3,4
**himself (1)**
13:10
**history (1)**
46:23
**Hold (1)**
29:7
**holding (1)**
18:14
**hole (14)**
28:5,7,10,18,20,24;
29:20,22;30:10,11;
31:19;35:20;38:11;
39:11
**holidays (5)**
20:20;38:24;39:22;
53:5,10
**home (8)**
22:20,21;23:6,13;
24:5;35:7,8;44:2
**homeowner (1)**
25:10
**Honor (52)**
3:8,13,20;4:8,15,18,
23;11:6,11;17:16;18:1;
20:3,22;21:1;22:9;
24:11;26:4;28:2,21;
32:1;34:10,13,17;36:1;
37:14,14;38:6,13;
39:13,16;40:2,14;42:6;
44:15,23;45:10;46:2;
47:6,16,16;48:1,19;
49:5;51:23;52:5,9,10,
14;53:1,7,8,10

**Honorable (1)**
3:4
**honored (1)**
25:11
**horrible (1)**
22:16
**hospital (1)**
34:1
**hours (9)**
33:6,7;36:12,13,14,
18,19;37:11;47:4
**house (6)**
23:10;27:19;28:8;
33:20,20;35:5
**humans (1)**
22:14
**husband (3)**
22:17;27:22;32:1
**HVAC (1)**
9:3
**hybrid (1)**
51:3
**hypothetical (1)**
11:25

## I

**ignore (1)**
7:1
**imagine (2)**
33:5,9
**implemented (1)**
6:7
**important (1)**
14:9
**impose (1)**
12:7
**improperly (1)**
9:6
**in- (1)**
51:5
**inch (1)**
38:11
**inclined (2)**
50:15,16
**including (1)**
40:20
**incorrect (1)**
15:24
**incorrectly (5)**
7:18;9:24;10:20,23;
11:24
**in-court (1)**
51:4
**independently (1)**
44:5
**indicate (1)**
16:7
**indicated (2)**
6:22;37:20
**indicates (1)**
41:16
**individual (1)**

Case: 19-30088    Doc# 11739    Filed: 12/22/21    Entered: 12/22/21 08:20:19    Page 59
of 65

25:10
**informally (3)**
35:16;44:20;46:14
**information (3)**
44:8,10,14
**informed (1)**
35:17
**inside (8)**
23:1,10,10;28:5,8;
29:17;33:20;35:4
**insist (2)**
23:12;43:7
**inspect (30)**
6:18,19,20;7:14;
8:16,18,22,24;9:19,20,
23;12:4,5,25;13:8,10,
24,25;14:1,17;23:17;
26:14;27:20;31:11,21,
24;32:14,16;35:14;
38:5
**inspected (3)**
9:3,10;25:17,19;
28:18
**inspection (19)**
6:17;10:7;12:9,9;
14:14;22:7;24:4,15;
29:12;34:15;35:4,22;
36:2,3,8;37:10;38:1;
39:2,8
**inspectors (2)**
33:24;35:6
**inspects (1)**
26:16
**instance (1)**
28:23
**instructed (1)**
6:16
**interesting (1)**
48:21
**interference (6)**
6:22;20:15;26:17;
36:21;39:17;52:25
**interrupt (2)**
29:8;37:5
**into (7)**
8:1;11:8;12:8;24:5;
33:20;35:8;36:21
**intrusion (1)**
24:5
**intuitively (2)**
12:23,23
**invalid (1)**
26:10
**involved (4)**
18:17;25:6,14;52:11
**involving (1)**
35:5
**irrelevant (3)**
25:3;47:11;48:22
**issue (10)**
26:7,15;28:11;31:21;
42:4;46:21,22;48:22;
50:11;51:8

**issued (1)**
52:20
**issues (3)**
9:1,2;51:5

**J**

**January (6)**
34:9,10,11;35:24;
38:21;39:7
**Jennifer (3)**
3:22;39:19;40:2
**jeopardy (2)**
23:22;24:6
**join (1)**
3:22
**joining (2)**
39:18,19
**Judge (2)**
32:2;51:2
**judges (2)**
18:20,21
**judgment (5)**
37:11;50:5,7,15,21
**June (1)**
42:10
**jury (1)**
37:2
**justified (1)**
19:1

**K**

**Kaprielian (1)**
16:16
**keep (1)**
8:22
**Keller (1)**
3:14
**kids (1)**
13:8
**Kim (1)**
3:14
**kind (8)**
4:24;8:9;12:11;
29:25;35:5;48:15,15;
51:5
**Kisak (6)**
24:1;26:8,9,12,20;
27:5
**Kisak's (1)**
26:14
**kitchen (4)**
13:9,15,17;14:15
**knock (1)**
50:2
**knowing (2)**
10:5,17
**known (1)**
43:24
**knows (3)**
19:8,9,11

**L**

**laid (1)**
27:6
**landlord (7)**
6:16;8:15;12:8;
13:23;14:25;16:16,18
**Lapping (38)**
39:21,22;40:6,12,14;
41:10,14,22;42:2,17;
43:7,9;44:10,17,22,23,
25;45:2,5,10,23;46:2,
17,19;47:6,14,16,20;
48:15,19,25;49:5,9,13;
51:16,23;52:9;53:7
**Lapping's (1)**
42:12
**large (1)**
14:24
**largely (2)**
47:10;48:21
**Larry (1)**
16:16
**last (6)**
16:17;30:3,12;35:2;
38:15;40:5
**late (4)**
42:14;49:5,8;51:20
**later (2)**
8:13;34:21
**latest (1)**
51:4
**law (1)**
14:5
**lawyer (6)**
7:7;17:5,6;18:18;
26:24;40:12
**lawyers (3)**
46:23;48:4,11
**learned (1)**
44:5
**least (3)**
16:1;25:10;47:9
**leave (6)**
17:9;19:21;20:16;
33:1;34:1,2
**leeway (3)**
22:11,12;36:20
**left (2)**
22:22;29:19
**legal (10)**
6:1;14:20;15:25;
16:23;18:14,23;19:21;
25:7;37:23;42:18
**legally (3)**
5:14,24;46:21
**legitimate (1)**
14:20
**less (2)**
26:2;37:7
**lesser (1)**
37:21

**letting (1)**
32:6
**liability (3)**
5:3;14:7;26:18
**liable (3)**
8:23,25;28:20
**lightly (1)**
27:14
**likely (1)**
49:3
**limine (2)**
49:24;50:1
**limit (1)**
33:10
**limited (2)**
39:10;42:8
**line (3)**
46:5;48:8,9
**listen (2)**
6:3;16:9
**Living (1)**
16:13
**locations (1)**
8:7
**log (2)**
21:16,17
**long (7)**
24:3;27:5;37:12;
42:15;44:18;47:7;
48:21
**look (10)**
4:11;13:18;25:16;
30:1,22;32:25;33:13;
45:19;50:23;51:12
**looked (5)**
4:10;12:6;22:20;
42:23;43:23
**looking (2)**
17:3;30:25
**losing (1)**
8:11
**lot (4)**
16:5,5;22:11;47:1
**love (1)**
18:21
**luck (3)**
24:22;38:24;53:6

**M**

**ma'am (1)**
17:17
**magically (1)**
29:17
**mail (1)**
17:15
**makes (1)**
48:1
**making (1)**
19:14
**manual (2)**
22:23,24
**March (10)**

**letting** ... 
41:12;43:5;46:9;
51:13,14;52:3,4,6,7,19
**masked (2)**
23:14;35:11
**masks (1)**
32:21
**material (1)**
41:5
**matter (12)**
3:5,8;4:17;14:11;
25:5,16;37:17;39:5,15,
17;45:19;52:23
**matters (1)**
47:23
**Matthew (2)**
26:8,9
**maximum (1)**
36:17,18
**May (7)**
24:10,24;26:4;32:2;
34:19;40:22;41:6
**maybe (7)**
6:13;8:11;13:2;14:2;
15:5;30:20;37:7
**mean (24)**
5:25;8:23;16:20;
22:20,25;25:7;28:14;
29:13;30:23;33:8,21;
35:21;36:11;40:11,14;
43:14,19;44:10,13;
45:18,25;48:5;49:18;
50:4
**meant (1)**
48:20
**measure (1)**
14:24
**mediate (2)**
52:23;53:1
**meet (2)**
24:20;46:3
**meet-and-confer (1)**
44:19
**meeting (1)**
46:7
**member (3)**
16:12,13;23:21
**mentioned (1)**
15:1
**mentions (1)**
12:3
**messages (1)**
21:13
**messed (1)**
10:7
**mic (2)**
3:12;21:3
**microphone (1)**
4:21
**middle (1)**
32:11
**might (6)**
18:1;24:8;41:24;
43:13,13;46:5

Case: 19-30088    Doc# 11739    Filed: 12/22/21    Entered: 12/22/21 08:20:19    Page 60
of 65

mind (5)
   10:17;12:12;13:19;
   14:1;21:24
minute (2)
   12:15;43:16
minutes (5)
   4:14;23:18;27:10;
   33:2;34:25
misled (1)
   19:23
miss (1)
   41:1
misspoke (1)
   10:19
mistake (1)
   19:10
moment (3)
   22:8;26:6;37:18
Monday (1)
   20:14
monetarily (1)
   5:12
money (2)
   15:4;48:22
Montali (1)
   3:5
month (1)
   8:2
month-and-a- (1)
   8:2
monthly (1)
   13:21
months (1)
   49:2
mop (3)
   13:9,15,17
more (15)
   14:9;23:5,23;26:1;
   27:13;28:2;33:5,5;
   36:5;37:25;38:6,14,16;
   47:4;49:2
morning (11)
   3:12,13;4:4,10,20;
   20:14;21:2;39:21,22;
   40:1,2
most (2)
   14:8;23:23
motion (12)
   41:2,18;42:12,13,14,
   16;45:9;46:6;49:24;
   50:2,11;51:17
motions (6)
   44:18;49:12,12,17,
   21;50:1
moved (1)
   8:1
moving (1)
   8:2
much (5)
   20:20;25:25;31:23;
   39:14;42:14
must (2)
   30:17;43:8

muted (3)
   3:12;4:21;21:4
mutually (1)
   35:23
mystery (1)
   4:25

**N**

near (1)
   41:11
necessary (1)
   51:16
need (9)
   4:4;15:20;30:7;
   31:22,22;34:14;38:5;
   46:14;51:9
neighboring (1)
   40:23
new (2)
   30:16,16
news (2)
   16:4;17:4
next (4)
   10:9;19:22;34:8,8
none (1)
   25:5
normal (2)
   13:5;49:3
noticed (1)
   32:12
November (1)
   31:3
number (5)
   4:25;18:19;22:2,14;
   23:5
numbers (1)
   52:18
numerous (1)
   8:8

**O**

Oakland (1)
   29:25
objection (5)
   14:23;15:8;18:12;
   19:2;43:10
objections (1)
   52:17
obligated (2)
   5:19;25:24
obligation (3)
   14:12,17,18
observe (1)
   33:20
obtained (1)
   40:20
obviously (2)
   6:3;50:19
occurred (2)
   16:3;41:15;42:1,22
o'clock (2)

35:24;52:7
off (2)
   28:9;49:10
offer (1)
   29:1
offered (5)
   3:24;13:7;17:20;
   25:14;26:2
offline (1)
   19:17
older (1)
   32:11
Omicron (2)
   22:15;51:5
once (2)
   27:9,21
one (25)
   6:20;11:19;16:17;
   18:20;25:7;26:13;28:2;
   31:1,1,4;32:7;33:19,
   19;36:21;37:25;38:6;
   40:15;45:22;47:17,22;
   48:12,16;49:19;50:8;
   51:3
one-sided (1)
   25:7
ongoing (1)
   14:13
only (8)
   17:23;22:23,24;
   23:13;37:23;41:11;
   48:3,10
oOo- (1)
   3:2
open (3)
   23:1,9;33:18
opener (2)
   22:23,23
opinion (2)
   15:5;34:24
opportunity (6)
   18:24;23:9;27:2,8;
   32:21;35:21
oppose (1)
   42:16
opposed (1)
   12:11
opt (1)
   6:18
opted (1)
   6:19
option (2)
   12:3;13:7
options (1)
   25:1
order (9)
   3:3;13:22;17:11,14;
   38:2;39:8;49:9;51:8;
   52:20
organizations (1)
   14:25
originally (1)
   37:18

others (2)
   11:9;27:22
ought (1)
   19:22
ourselves (1)
   26:15
out (26)
   8:8;13:16;21:16;
   24:22;27:6,17,18,20,
   24;30:1;31:13,21;
   32:16;33:9,18;35:23;
   38:16;39:1;40:24;
   42:25;44:2;46:10;
   47:11,12;50:2;52:25
outage (11)
   41:16;42:23;43:3,8,
   18,20,25,25;44:3,12;
   48:7
outages (1)
   41:15
outcome (2)
   28:23;29:12
outside (1)
   23:8
over (6)
   8:2;37:12;45:24;
   46:21,22;48:6
own (7)
   6:18,20;11:9;12:4;
   18:22;24:2;32:25

**P**

paid (1)
   18:20
paper (1)
   6:21
papers (5)
   15:1;16:7;22:2;
   24:18;29:21
Parada (7)
   4:1,13;20:25;21:16;
   34:8;51:19;52:2
parent (2)
   13:14,15
part (2)
   18:21;47:9
partially (1)
   51:4
participation (2)
   6:23;20:17
particularly (2)
   14:7;42:20
parties (4)
   5:23;18:21;19:15;
   35:22
pass (1)
   4:13
passed (1)
   19:1
past (1)
   5:22
patch (3)

29:14;30:5,5
patched (1)
   30:8
pay (7)
   11:16;15:20;17:3;
   26:1,21;27:1;48:22
paying (1)
   11:17
peace (4)
   10:17;12:12;13:19;
   14:1
people (12)
   5:1,17;18:15,16;
   23:4,5,23;29:25;32:23;
   35:11;41:1;43:2
percipient (1)
   48:4
perfectly (1)
   27:12
perhaps (3)
   7:18;23:6,20
period (9)
   8:2;10:9;31:22;
   32:25;36:18;37:10;
   42:24;45:3,20
permit (1)
   39:7
person (9)
   23:7,8,8,21,22;
   27:20;33:22,22;50:19
personal (3)
   15:17;48:25;51:9
personally (5)
   15:3;16:6;19:9;
   33:14;35:5
persons (1)
   23:12
person's (1)
   13:5
persuade (1)
   19:18
persuaded (2)
   24:24;47:22
PG&E (77)
   3:5;6:8,17,19,23;7:9;
   8:8,16,22,23;9:10,23;
   10:12,12,16,20;11:3,
   15,17,19;13:8;14:7,10,
   16,16,18;15:6,19;16:2,
   8;18:18,24;19:1,2;
   22:13;23:4,8,13,24;
   24:1,4,14,18,20,25;
   25:10,14,20;26:1,8,14,
   16,17;27:1,3;28:13,
   19;31:11,20;32:14;
   34:8;36:3;37:1,9;38:4;
   40:21;41:2,10,24;
   42:21,22;43:2,6;48:22;
   52:4,24
PG&E's (9)
   6:6;14:11,23;24:23;
   26:25;27:3;28:24,25;
   42:17

Case: 19-30088   Doc# 11739   Filed: 12/22/21   Entered: 12/22/21 08:20:19   Page 61
of 65

**phases (3)**
32:16,20;48:16
**phone (1)**
23:7;37:22
**physical (3)**
22:7;35:4;40:7
**physically (4)**
23:16;28:19;32:22;
35:13
**pick (2)**
12:17;37:22
**pictures (2)**
22:20,21
**pinning (1)**
46:12
**place (3)**
11:24;28:12;33:24
**placed (1)**
38:12
**plaintiff (1)**
17:6
**please (5)**
8:9;26:6;32:2;38:7,
13
**plenty (2)**
35:8;51:17
**plumber (9)**
12:18,18,20,22,24;
13:1,3,3,4
**point (15)**
5:18;11:2;13:6;14:4;
15:23;22:6,11;24:22;
32:15;37:2,19,21;
38:18;43:14;51:12
**portion (3)**
6:4,5;29:19
**position (2)**
25:20;42:4
**positions (1)**
18:16
**possible (1)**
46:6
**possibly (1)**
33:9
**posted (1)**
45:7
**practical (1)**
12:15
**pre- (1)**
51:13
**precautions (2)**
32:21;33:24
**preferable (1)**
49:6
**preference (3)**
3:10,19,20
**preliminarily (1)**
47:23
**preliminary (1)**
40:17
**premises (1)**
40:23
**preparation (1)**

49:3
**prepare (2)**
17:11;39:8
**prepared (1)**
40:10
**Preparing (1)**
44:25
**presented (1)**
10:3;19:12;26:8
**presiding (1)**
3:5
**pressing (1)**
19:1
**pressure (2)**
27:9;34:25
**presume (2)**
48:5;52:13
**pretend (1)**
29:16;44:7
**pre-trial (3)**
45:25;49:20;50:25
**pretty (1)**
11:12
**previously (1)**
39:12
**price (3)**
31:3,4,5
**primarily (1)**
50:11
**prior (6)**
6:16;41:15,16;42:21;
44:12;50:25
**privacy (1)**
24:5
**privileged (3)**
42:19;45:13,20
**probably (7)**
13:11;15:22;23:17;
26:19,20,22;36:8
**problem (3)**
14:17;32:12;51:1
**problems (1)**
47:13
**procedure (3)**
6:6;15:14;44:17
**procedures (3)**
45:7,22;51:9
**proceed (1)**
6:13
**proceedings (1)**
53:12
**process (1)**
19:9
**produce (2)**
26:20;41:2
**produced (7)**
40:24;41:10;42:9;
43:1,6,6;45:20
**product (2)**
41:4;42:19
**profession (1)**
26:10
**program (6)**

6:7,24;8:12,14;
11:16,17
**prolix (1)**
46:25
**proof (3)**
23:14;26:18;48:9
**properly (3)**
8:11;9:4;12:13
**property (10)**
8:1,11;25:17,19;
29:12;36:11;37:1;38:5;
39:11;41:12
**proposal (1)**
29:11
**prove (7)**
22:13;24:2;25:24;
35:11,12;41:7,8
**provide (1)**
23:14
**provided (1)**
24:23
**proving (1)**
22:12
**publicly (1)**
25:14
**purpose (1)**
16:5
**purposes (1)**
39:6
**pursue (5)**
7:21;10:11,24;15:17;
20:5
**pursued (1)**
8:15
**Pursuing (1)**
10:10
**pushed (1)**
43:4
**put (12)**
7:8;16:4;19:12;
22:18;24:6;30:16;
33:10;36:4,10;46:15;
47:3;49:1
**puts (1)**
23:19
**putting (1)**
49:14

### Q

**quarterback (1)**
20:14
**quite (1)**
18:19
**quote (2)**
30:2,2

### R

**Rafael (1)**
43:24
**raise (1)**
4:5

**range (3)**
37:19;41:17;44:13
**rather (7)**
3:23;12:17;18:22;
19:14;24:8;26:21;48:1
**reach (2)**
19:15;26:1
**reached (1)**
8:8
**reaches (1)**
26:23
**ready (4)**
36:6;46:15;49:1,16
**reality (1)**
7:18
**really (4)**
8:12;10:15;11:21;
19:20
**reason (4)**
6:15;15:18;38:3;
49:15
**reasonable (3)**
24:4;33:11;38:9
**reasons (2)**
17:12;40:9
**rebut (1)**
27:8
**recall (1)**
22:21
**record (1)**
17:12
**records (3)**
40:20;42:23;43:25
**recovery (2)**
5:15;15:4
**reference (2)**
17:18;43:20
**referenced (1)**
18:9
**references (1)**
44:12
**referring (1)**
17:25
**refers (1)**
17:12
**reframe (1)**
29:15
**refrigerator (9)**
40:19;41:3,7;42:8;
46:21;47:11,17;48:17;
49:19
**refuse (1)**
29:12
**refused (2)**
17:19,21
**rejoined (1)**
21:18
**related (1)**
18:1
**relationship (1)**
16:11
**relatively (1)**
6:4

**release (1)**
6:8
**released (2)**
10:25;11:2
**relevant (1)**
40:23
**remedy (5)**
10:10,11;15:5,18,25
**rendition (1)**
41:25
**reorganized (2)**
3:14;40:3
**repair (6)**
29:1,22;31:19;32:9;
35:20;38:10
**repairing (1)**
31:18
**repay (1)**
5:19
**repeating (1)**
8:22
**replace (3)**
30:7,14;31:19
**replaced (1)**
30:15
**replacing (1)**
31:17
**reply (2)**
11:12;18:10
**report (4)**
26:8,10,14;27:5
**represent (1)**
38:18
**representative (2)**
24:14;40:21
**representing (3)**
16:12;18:18;27:2
**request (1)**
12:6
**required (1)**
25:24
**rerouting (3)**
46:22;48:8,9
**resolution (3)**
19:16;26:1;39:2
**resolvable (1)**
45:8
**resolve (3)**
32:12;44:20;45:8
**respect (1)**
40:18
**respond (2)**
18:12;43:10
**responded (1)**
17:20
**response (5)**
6:6;13:5;35:18;36:4;
40:24
**responsibility (1)**
14:14
**restate (1)**
11:13
**restaurant (1)**

Case: 19-30088    Doc# 11739    Filed: 12/22/21    Entered: 12/22/21 08:20:19    Page 62
of 65

34:1

**result (3)**
7:25;17:10;18:23

**resuming (1)**
51:5

**review (1)**
40:5

**revisit (1)**
19:19

**right (50)**
3:15;4:12,24;5:19;
6:12,13;7:18;8:21;
10:16,25;13:15;15:13,
22;16:23;17:5;20:2;
21:2;22:13,25;24:25;
25:4,10;28:8,9;29:9,
11;31:20;38:24;39:3,4,
14,23,25;41:13,13;
43:21,23;46:17;47:14;
48:16,18;49:11;50:3,6,
10,18,22;52:16;53:2,7

**rights (2)**
16:19;17:15

**risk (3)**
22:18;23:20;33:15

**risks (1)**
25:6

**route (1)**
20:8

**rub (1)**
17:9

**Rule (1)**
41:3

**rules (1)**
49:10

**ruling (3)**
15:21;16:1;39:9

**run (1)**
24:22

**Rupp (53)**
3:11,12,13,13,17,20;
4:6,8;6:21;11:4,6,11;
17:11,25;18:1,5,7,9,17;
19:8,8,11,18;20:21,23;
22:6,9;23:15;24:13;
26:24;27:24;28:14,21;
29:3,10;31:13,16;
34:13,17,19;35:10,17,
17;37:22;38:2;39:6,13,
16,19;52:11,14;53:10,
11

**Rupp's (1)**
32:23

**S**

**safe (2)**
27:12;32:21

**safely (1)**
35:9

**safety (2)**
32:21;33:24

**saga (3)**

47:7,10,10

**same (7)**
23:23;28:4;33:24;
39:23;40:7;46:23,23

**SAN (3)**
3:1;26:21;43:24

**satisfaction (1)**
10:5

**satisfied (1)**
35:7

**saw (1)**
4:8

**saying (10)**
13:9;17:8;24:3;26:8;
27:5;28:3,9;30:24;
43:13;48:23

**schedule (7)**
40:10,11;41:10;49:1;
50:23;51:10,25

**scheduled (6)**
36:2;43:3,4,20;44:3;
49:7

**scheduling (6)**
49:9;51:8,14;52:3,
19,20

**screen (1)**
21:5

**sealed (2)**
8:11;19:24

**Second (5)**
11:21;13:2,3;20:13;
24:15

**secondly (1)**
14:9

**seeking (1)**
33:19

**seem (1)**
13:22

**seems (2)**
23:3;48:12

**sends (2)**
9:23;12:20

**senior (1)**
27:13

**sense (2)**
12:17;48:1

**sent (2)**
24:14;36:12

**separate (2)**
14:11;40:6;46:21;
48:2

**separately (4)**
4:11;31:16;47:24;
52:5

**serve (1)**
17:13

**session (1)**
3:4

**set (12)**
40:8,18;45:24,25;
46:6;47:17;48:17,18;
50:24;51:11,13;52:5

**setting (2)**

48:1;52:17

**Settings (1)**
21:20

**settle (9)**
18:21,25;19:2,3;
25:12,13,13;34:3;
37:20

**settled (2)**
20:5,15

**settlement (13)**
17:21;18:3,9,10;
19:5,7,11,11,12,18,20,
23;20:4

**settlements (1)**
18:17

**settling (1)**
25:21

**several (1)**
47:4

**shall (1)**
45:25

**share (1)**
45:11

**shared (1)**
44:21

**short (2)**
31:22;32:25

**show (3)**
23:12;26:22;38:10

**showing (1)**
12:11

**shown (1)**
20:25

**shows (2)**
4:14;40:22

**sibling (1)**
13:11

**side (2)**
22:22;25:8

**sidewalk (1)**
33:21

**sign (3)**
14:9;17:19,22

**signed (7)**
6:8;7:9;17:20,22;
18:11;19:10,24

**similar (1)**
25:20

**similarly (1)**
27:19

**simple (5)**
23:3;25:5,16,25;
37:13

**simply (2)**
16:7;23:22

**sit (1)**
45:15

**site (1)**
37:11

**situation (1)**
13:5

**six (1)**
49:2

**Slow (2)**
8:18;43:16

**small (1)**
6:4

**smell (1)**
14:15

**somebody (1)**
27:18

**someone (5)**
8:9,21;12:22;15:15;
23:21

**sometimes (1)**
18:23

**somewhat (1)**
30:15

**somewhere (1)**
23:11

**son (1)**
13:9

**sorry (4)**
10:19;16:4;23:24;
52:3

**sort (3)**
13:9;22:14;43:8

**sound (1)**
50:7

**sounds (1)**
50:8

**space (2)**
9:8;12:8

**speak (1)**
32:2

**spilled (1)**
47:12

**spoke (1)**
30:3

**sprinkler (2)**
12:19,21

**square (1)**
32:11

**staff (1)**
22:3

**stage (1)**
42:13

**stand (2)**
12:5;23:10

**start (1)**
32:17

**started (1)**
28:11

**starting (1)**
51:3

**state (2)**
33:15;39:25

**stated (5)**
14:6;17:12;28:25;
40:9;44:10

**statement (4)**
4:9;14:19,20;31:16

**stay (2)**
21:4;39:16

**still (16)**
15:5,18;21:9,13;

22:6;25:22;26:17;
32:13;34:23;37:12,21;
40:9;43:12;45:24;
48:12,12

**stop (1)**
30:8

**store (1)**
33:25

**story (4)**
36:18;46:25;47:1,11

**strike (1)**
24:8

**stripe (1)**
32:10

**study (1)**
8:9

**stuff (3)**
32:7;47:12;48:6

**submit (1)**
38:2

**substantive (1)**
49:12

**suddenly (1)**
25:7

**sue (2)**
6:12;14:10

**suffered (3)**
7:24;11:22,24

**suggests (1)**
44:6

**summary (4)**
50:4,7,15,21

**super (1)**
9:14

**support (4)**
5:9,13,14;6:21

**supposed (3)**
6:9;14:15;44:6

**sure (8)**
4:10;5:24;18:2;
29:11;33:19,23;35:10;
43:3

**sustain (2)**
14:23;15:7

**system (11)**
9:3;12:19,21;13:20,
21;15:25;18:14,23;
25:7;37:24;52:24

**T**

**table (1)**
18:15

**tablet (1)**
21:10

**tale (1)**
48:21

**talk (5)**
12:16;27:21;28:22;
36:19;50:25

**talked (1)**
11:13

**talking (9)**

Case: 19-30088    Doc# 11739    Filed: 12/22/21    Entered: 12/22/21 08:20:19    Page 63
of 65

11:4,7;17:23;30:23;
42:12;47:18;49:2,25;
50:4
**technically (1)**
  30:15
**technician (4)**
  9:8,23,24,25
**telephone (1)**
  23:6
**telling (4)**
  13:25;20:10;30:18;
35:16
**tenant (1)**
  12:8
**terms (7)**
  7:4;14:11;18:25;
22:12;29:20;49:24;
50:10
**testify (1)**
  26:22
**thanked (1)**
  5:24
**that'll (1)**
  17:15
**therefore (5)**
  8:25;10:4;15:4;
24:21;29:18
**thinking (1)**
  28:15
**third (1)**
  5:22
**third-party (1)**
  33:22
**thirty (3)**
  23:18;30:2;33:2
**Thomas (1)**
  3:13
**thoroughly (1)**
  11:12
**though (3)**
  6:22;21:22;41:4
**thought (3)**
  20:10;30:9;49:23
**threaten (1)**
  35:7
**threatens (1)**
  27:15
**three (10)**
  23:5;25:2;33:7;
36:13,13,14;38:11,11;
39:11;52:18
**three-by-five (13)**
  28:4,7,10,18;29:14,
20;30:10,11;31:18,18,
19;32:8;35:20
**times (1)**
  8:9
**timing (1)**
  41:9
**today (7)**
  11:13,22;19:4;21:4;
29:22;32:4;38:15
**together (6)**

36:4;40:10;46:1;
47:23,24,25
**told (4)**
  8:16,19;30:19;42:17
**took (1)**
  45:2
**town (7)**
  34:20;40:20,21,24;
42:25;44:2,11
**trade (1)**
  12:17
**trained (1)**
  18:20
**translate (3)**
  8:24;14:20;17:4
**translated (1)**
  14:6
**treated (1)**
  36:25
**treating (1)**
  49:18
**tree (4)**
  46:23;47:8;48:17;
49:13
**trees (1)**
  47:12
**trial (25)**
  25:23,23;40:10;
45:25;46:15;48:13,16,
17,18,24;49:2,3,7,16;
50:24;51:1,7,8,11,14,
14,14,20;52:12,17
**trials (2)**
  51:4,6
**Tribe (2)**
  16:13,19
**tried (3)**
  28:25;47:24,25
**trigger (1)**
  17:15
**trust (1)**
  10:22
**trusted (1)**
  33:22
**truth (1)**
  10:5
**try (8)**
  21:10,15,20;25:12;
34:3;46:12;52:23;53:1
**trying (5)**
  7:8;10:11;17:9;21:6;
27:9
**TUESDAY (1)**
  3:1
**turn (2)**
  21:4,6
**turned (1)**
  29:1
**TV (1)**
  13:16
**two (22)**
  8:6;9:22,25;10:3;
14:7;33:6,7,13;36:12,

13,14,18,19;37:11;
42:16;47:9;48:4,11,16;
49:18;51:19;52:17
**two-day (2)**
  49:7;50:23
**two-hour (1)**
  36:17;38:1
**type (1)**
  49:24

## U

**Um-hum (2)**
  26:4;38:25
**uncertainty (1)**
  12:12
**under (7)**
  7:5;25:19;27:12;
37:10;41:3;46:22;48:2
**undertaking (1)**
  6:23
**unfortunately (1)**
  24:7
**unless (2)**
  50:2;53:4
**unreasonable (1)**
  37:10
**unscheduled (2)**
  43:18,22
**unwilling (1)**
  24:7
**up (18)**
  4:14;9:8;10:7;18:14;
19:1,7,24,25;20:25;
22:4;23:12;26:22;
37:22;38:8;46:25;
47:22;51:17;53:5
**upgrade (1)**
  8:15
**upon (2)**
  16:6;27:4
**use (2)**
  21:10;37:23
**using (3)**
  5:17;37:11,24
**usual (1)**
  26:9
**usually (1)**
  50:1
**utility (1)**
  9:2;11:25

## V

**vaccination (1)**
  23:15
**vaccinations (2)**
  32:22;35:13
**valid (1)**
  24:25
**versus (1)**
  25:8
**view (3)**

13:6;42:13;51:12
**vigorously (1)**
  42:16
**virtue (1)**
  15:21
**virus (3)**
  24:6;25:6;27:15
**visually (1)**
  23:16

## W

**Wait (2)**
  30:9;39:24
**waive (1)**
  7:10
**waived (2)**
  6:22;11:19
**waiver (2)**
  11:15;15:16
**wants (5)**
  22:7;32:24;44:10,14;
45:14
**Ward (72)**
  3:19,21;4:17,18,20,
23;5:2,5,9,12,16,20;
6:2,10,15,25;7:2,4,6,
11,13,16,20,23;8:1,5,8,
20;9:1,7,13,16,19;10:1,
5,8,10,14,17,22,25;
11:2,18,22;12:2,6,11,
14;13:7,13,18;15:9;
16:11,22,25;17:14,16,
18,25;18:4,6,11,13,25;
20:1,3,7,10,12,18,21,24
**Ward's (3)**
  11:5;12:5;17:12
**warn (1)**
  15:21
**waste (2)**
  31:9;33:10
**watch (2)**
  13:16;33:23
**water (2)**
  27:17,18
**way (15)**
  3:23,23;18:14;22:18,
19;24:3,14,23;27:5;
30:4;32:19;33:19;
36:20;37:24;47:1
**ways (1)**
  35:8
**weak (1)**
  27:6
**week (2)**
  34:20;46:10
**weeks (2)**
  45:2;50:25
**welcome (2)**
  19:19;37:22
**what's (8)**
  3:19;12:25;13:3;
23:11;29:19;30:6;36:9,

23
**whenever (1)**
  40:4
**Whereupon (1)**
  53:12
**whole (1)**
  31:20
**wife (2)**
  32:6,22
**willing (2)**
  33:14,16
**willingness (1)**
  37:20
**wish (4)**
  4:4;17:10;20:19;
53:5
**wishes (1)**
  15:15
**without (1)**
  46:12
**witness (1)**
  48:4
**witnesses (3)**
  48:5,10;50:2
**word (1)**
  10:22
**work (50)**
  6:16,18,19,20;7:11,
15,18,19;8:15,16,18,
19,19,23,24;9:4,20,21,
24,25;10:12,20;11:16,
20,23;12:1,2,4,4,13,21,
25;13:4,8;14:19;25:22;
26:12;27:24;28:24;
29:25;31:13;32:20;
35:23;39:1;40:22;41:4,
11;42:19;46:22;52:1
**working (3)**
  21:9;26:24;51:19
**works (3)**
  18:14;21:23;42:18
**world (1)**
  14:12
**worry (1)**
  19:22
**wrap (1)**
  53:5
**wrapping (1)**
  38:8
**written (2)**
  17:14;42:9
**wrong (3)**
  13:1,4,20
**wrongly (1)**
  16:12

## Y

**year (2)**
  34:15;35:3
**years (2)**
  25:2,3
**yesterday (2)**

Case: 19-30088   Doc# 11739   Filed: 12/22/21   Entered: 12/22/21 08:20:19   Page 64
of 65

4:7;22:3
**younger (1)**
23:22

## Z

**Zoom (5)**
25:23;26:21,23;51:7;
52:19

## 1

**10 (2)**
35:24;39:7
**11 (2)**
52:7,19
**11- (1)**
30:23
**11,000 (2)**
30:14,19
**11:09 (1)**
53:12
**1108 (1)**
43:24
**11th (3)**
34:10,12,20
**14th (2)**
42:24;44:1
**15th (4)**
52:4,6,7,19
**16th (1)**
43:5
**17th (1)**
43:5
**18th (8)**
34:9,20;35:2,24;
38:21;39:7;51:21;52:1
**19th (2)**
51:21;52:1
**1st (1)**
46:10

## 2

**20 (1)**
44:1
**20- (1)**
30:21
**20,864 (1)**
31:6
**2016 (3)**
8:2;41:12;42:22
**2017 (3)**
12:2;16:3;24:14
**2019 (1)**
24:18
**2021 (2)**
3:1;13:20
**21 (1)**
3:1
**21st (1)**
42:24
**26b3A (1)**

41:4
**28 (1)**
31:3

## 3

**30,000 (1)**
37:15
**31 (5)**
34:16;35:2,15;37:25;
38:21

## 4

**40,000 (4)**
30:20;37:7,15,16
**40,000-dollar (1)**
37:19

## 7

**77335 (1)**
42:8

Case: 19-30088    Doc# 11739    Filed: 12/22/21    Entered: 12/22/21 08:20:19
of 65