Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Bankruptcy Counsel for Spiro Jannings

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

Santa Rosa Division

In re

PG&E CORPORATION

- and –

PACIFIC GAS & ELECTRIC COMPANY

Reorganized Debtors

Case No. 19-30088
(jointly administered)

Chapter 11

**MOTION TO DISMISS AND ABSTAIN**

**(Re: Objection to Claim No. 58462; Dkt # 11388)**

TO: THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

COMES NOW Spiro Jannings, and moves the Court to abstain from adjudicating his Claim No. 58462 and the underlying State lawsuit for wrongful termination, and instead authorize it to be resolved in the pending State lawsuit, and in support thereof respectfully presents as follows:

## I. SUMMARY

This is and should be a State law wrongful termination lawsuit, proceeding to resolution in the State Superior Court. It is only the coincidence of PG&E's bankruptcy filing that leads this Court to consider it at all.

Even if the Court can exercise jurisdiction over this dispute, it is the strong policy of the federal courts, embedded in statute, not to do so, but rather to defer to the State Courts. Where, as here, no federal purpose would be served by wresting jurisdiction from the State Courts, mandatory and discretionary abstention doctrines urge that this Lawsuit be returned to the Superior Court, where it belongs.

## II. RELEVANT FACTS

On August 24, 2017, Spiro Jannings ("Spiro") filed a lawsuit in the Santa Clara County Superior Court (the "State Lawsuit") asserting damages for wrongful termination against PG&E. Spiro asserted no federal claims for relief, and there was no apparent basis on which federal jurisdiction over the State Lawsuit could have been asserted. According to PG&E, "[t]he case was litigated for over a year, during which time the Parties exchanged documentary evidence" and Spiro was deposed. Objection, 9:20-22, Dkt #11388.

On January 29, 2019, PG&E filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Spiro recognized that the bankruptcy filing resulted in an automatic stay preventing further prosecution of the State Lawsuit. Spiro duly filed a timely Proof of Claim..

On June 20, 2020, the Court confirmed PG&E's Plan of Reorganization. Under PG&E's Plan, Spiro's claim was "unimpaired."

On October 8, 2021, PG&E filed an Objection to Spiro's claim. The Objection asserted exclusively State law defenses and challenges. See generally, Objection; Dkt #11388. On October 23, 2021, Spiro's undersigned bankruptcy counsel approached PG&E to request additional time to respond to the Objection and, more fundamentally, to request that PG&E agree that the Bankruptcy Court abstain from the dispute and remand it to the Superior Court. PG&E continued the hearing on the Objection to claim and agreed to consider the abstention request.

On December 6, 2021, Spiro followed up on the abstention request, and on December 7, 2021, PG&E rejected that request, asserting that the resolution of Spiro's Claim was within the core jurisdiction of the Court. This Motion to Dismiss and Abstain followed.

### III. ARGUMENT

The explicit policy and principles of federal court jurisdiction urge that this matter be remanded to the Superior Court. Relying on legal principles which had their origin in Bankruptcy Act summary jurisdiction jurisprudence, PG&E argues that the Court is not *required* to abstain in favor of the Superior Court, and that may be so. But here, in the unique circumstances of this case, every policy urges the Court to abstain, and no justification for refusing to do so can be identified: in a full-payout mega-case where unsecured claims are unimpaired, there is no reason to wrest jurisdiction over State law claims from the State Court.

#### A. *The Principle of Federal Comity*

This Motion to Abstain is brought under 28 U.S.C. § 1334(c)(1), which provides for discretionary abstention as follows:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The principles the Court should consider in deciding whether to exercise its discretion to abstain are presented, at least in part, in the statute providing for mandatory abstention, 28 USC § 1334(c)(2).

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

*All* of the factors supporting mandatory abstention are present here, as discussed below.

While only discretionary and not mandatory abstention is applicable here; 28 U.S.C. § 157(b)(4), the standards for applying mandatory abstention should inform the Court's exercise of its discretion.

### B. PG&E's Argument: All Proofs of Claim Should be Adjudicated in Bankruptcy Court

For more than a century, the filing of a proof of claim was an act that had an outsized importance in bankruptcy jurisprudence.

Bankruptcy referees had little inherent power or importance, and certainly none of the "judicial power of the United States," so they could constitutionally resolve disputes almost only on the basis of the parties' mutual consent. This very restricted jurisdiction was referred to as "summary jurisdiction" and meant that in the ordinary scheme of things "real" disputes would be transferred to the District Court sitting as a "Court of Bankruptcy," which could exercise "plenary jurisdiction" over the dispute because it was an Article III court. This had the reciprocally unfortunate consequences of preventing bankruptcy referees from adjudicating disputes they were best situated to resolve while imposing on the district courts the duty to resolve cases they had no desire to address.

The solution took decades to fully develop but enshrined the critical importance of proofs of claim as the lynch pin of "jurisdiction by ambush." The solution reached its apotheosis in *Katchen v. Landy* 382 U.S. 323 (1966), in which the Supreme Court explained that as a non-Article III "court of equity," the bankruptcy referee was fully authorized to administer the bankrupt's *res* according to equitable principles, and could therefore adjudicate both claims and counterclaims in the course of that equitable administration. *Katchen* formed a basis of the case on which PG&E relies – *In re Conejo Enterprises, Inc.* 96 F.3d 346 (9th Cir. 1996) (note 6) – and remained largely good law until recently. In *Stern v. Marshall* 131 S. Ct. 2594 (2011), the Supreme Court substantively overruled *Katchen* by finding that the bankruptcy court could not constitutionally adjudicate certain counterclaims,

notwithstanding the filing of a proof of claim by the counter-claim respondent, thereby calling into question the continued primacy of proofs of claim in bankruptcy jurisdictional jurisprudence.

Giving *Katchen* whatever weight it is due does not resolve the instant Motion. As *Conejo* makes clear, while the court *may* choose to adjudicate an objection to a claim, it is also free to abstain, and relegate the issue to State court litigation.[1] Here, the Court is asked to exercise its discretion about whether to abstain from resolving this dispute in favor of the State Court; assuring the Court that it has the power to resolve this dispute says nothing about whether it should exercise that power.

### IV. APPLYING THE COURT'S DISCRETION TO ABSTENTION

#### A. *Guidance from the Abstention Statute*

Congressional policies respecting comity are specified in the statute providing for mandatory abstention; 28 U.S.C § 1334(c)(2). *All* of those provisions are met in this case:

- ✓ First, there must be a "timely motion of a party in a proceeding." Spiro filed this Motion promptly after the Objection was filed.

- ✓ Second, the proceeding must be "based upon a State law claim or State law cause of action." Here, the wrongful termination claim asserted in the State Lawsuit arises exclusively under State law.

- ✓ Third, the claim at issue must be "related to" but not "arising under" or "arising in" the bankruptcy case. Clearly, Spiro's Claim exists only under State law, and this Court exercises only "related to" jurisdiction over it, jurisdiction which wanes after a Plan has been confirmed, as has occurred here.

---

[1] The *Conejo* concurrence adopts the analytical framework proposed by the district court:

> The determination of whether a debt exists involves a non-core proceeding and whether to allow or disallow the debt after determining a debt exists involves a core proceeding… [T]he bankruptcy court has jurisdiction over the distribution of funds, but may not always have jurisdiction to adjudicate whether a claim for distribution of the funds exists.

*Conejo,* 96 F.3d. at 354. This analysis would suggest that the Court should abstain from resolving Spiro's Claim in the first instance; if the State Court finds an entitlement to a claim, this Court can thereafter consider allowance or disallowance if appropriate.

✓ Fourth, the claim "could not have been asserted in a Court of the United States absent related to jurisdiction." Clearly, that is the case respecting Spiro's Claim.

✓ And fifth, an action "is" commenced, and can be timely adjudicated, in a State Court of competent jurisdiction. Clearly, the State Lawsuit was commenced and litigated, and can be timely adjudicated, in the Santa Clara Superior Court.

The policy expressly manifested in Section 1334(c)(1) is to exercise discretionary abstention "in the interest of justice, or in the interest of comity with State courts or respect for State law." Mandatory abstention under Section 1334(c)(2) implements a comparable policy: to demonstrate comity to the State Courts by expressly abstaining from adjudicating matters whose connection to the bankruptcy case and the Federal Courts is tenuous. This case perfectly fits those policies.

### B. Spiro's Claim Has No Relevance to the Bankruptcy Case

The resolution of Spiro's Claim will have no impact, monetary or otherwise, on the bankruptcy case. Whether Spiro wins or loses, Spiro's Claim will not affect PG&E's progress in fulfilling its confirmed Plan of Reorganization. Indeed, PG&E has virtually admitted this: Spiro's Claim "unimpaired," which broadly contemplates that it will be unaffected by the bankruptcy process – if the outcome of Spiro's Claim could affect the feasibility of PG&E's Plan, that should have been disclosed and addressed in the confirmation proceedings; see, Section 1129(a)(11); not more than a year later.

Moreover, PG&E's Plan has been confirmed, so Spiro's Claim can have no impact on PG&E's reorganization. Rather, established law, adopted in this Circuit, holds that the rationale for bankruptcy court jurisdiction wanes after a Plan has been confirmed. *In re Pegasus Gold Corp.,* 394 F.3d 1189, 1194 (9th Cir. 2006) (after plan confirmation, the bankruptcy court must ask "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter" – clearly, there is no "nexus," let alone a close one, here).

### C. Other Factors Favor Abstention

#### 1. Discouraging Jurisdictional Opportunism

Admittedly, adjudicating objections to proofs of claim is part of the core authority of the bankruptcy court, an authority it would not abdicate in the ordinary case. This is, however, anything but an ordinary case.

PG&E is one of the largest business entities in California, itself the eighth largest economy on the planet, and as part of its ordinary business operations, PG&E was engaged in a multitude of pre-petition lawsuits, like Spiro's, which were entirely unrelated to the matters at issue in its bankruptcy case. With respect to those lawsuits, if the objection to Spiro's claim is any indication, PG&E seeks opportunistic benefits: the ability to require pre-petition claimants to engage specialty counsel to appear in a specialized and unaccustomed forum, or forfeit their claims.[2]

In the unique circumstances of this case, it makes sense to ask whether the Court should support and participate in this sort of jurisdictional opportunism, washing away properly asserted State law claims – entirely unrelated to PG&E's bankruptcy – solely because the claimant has failed to engage bankruptcy counsel to follow PG&E into this tribunal.

#### 2. Conserving Judicial Resources

Spiro's Claim asserts that PG&E wrongfully terminated his employment. PG&E's defense appears to rest on the impact of a collective bargaining agreement and the extent to which that agreement foreclosed Spiro's individual right of redress for wrongful termination under the Labor Management Relations Act; Objection, 10:18-13:17; Dkt #11388; and whether Spiro timely exhausted certain rights against his Union; 13:18-14:9. With respect, these are areas of law far outside of this Court's specialized expertise, requiring material efforts on this Court's part fairly to adjudicate.

---

[2] The Omnibus Securities Claims Objections provide a starker example: after the time to respond ran, PG&E obtained the disallowance by default of every respondent claimant who failed to engage counsel to file a timely response in the bankruptcy court… and then withdrew the Objection without prejudice with respect to every respondent claimant who filed a timely response. See, e.g., Fourteenth Securities Claims Objection, Dkt #11339; Request for Default Disallowance, Dkt. #11516; Order disallowing 20 claims by default, Dkt #11530.

Although PG&E seemingly asserts that the Court might summarily disallow Spiro's Claim, the assertion is based on arguments like Spiro "Has Admitted Facts Establishing Good Cause To Terminate His Employment; Objection," 14:10-11, Dkt #11388; and Spiro "has failed to provide sufficient documentation supporting his claim; Objection, 16:9-10, Dkt #11388.  This is intensely factual litigation which the Court must administer as such; see, B.L.R. 3007-1(b) ("Where a factual dispute is involved, the initial hearing on an objection shall be deemed a status conference at which the Court shall not take evidence.")

Thus, resolving Spiro's Claim will require a material imposition on this Court's resources, an imposition that is not within this Court's specialized expertise and will advance no cause other than wresting administration of this claim from a State Court well-suited to administer it.

## IV.  CONCLUSION

The Court has discretion to abstain from resolving the merits of claims, like Spiro's, which were the subject of pre-petition State Court litigation and would have been entitled to mandatory abstention, had the claimant not been required to file a proof of claim in order to retain a right to payment.

Here, the strong federal policies presented in the abstention statute all militate in favor of abstaining in favor of the State court, and in the unique circumstances of this case, there is no bankruptcy policy or justification to retain control over the resolution of Spiro's Claim.

Superior Court is best situated to resolve the State Lawsuit.  This Court should abstain from the Objection to Claim, and allow the determination of the claim to be supplied by the Superior Court (granting relief from any stay imposed by the Plan Confirmation Order).

DATED: December 28, 2021                     Respectfully submitted,

                                              ST. JAMES LAW, P.C.

                                              By:  /s/  *Michael St. James*  .
                                                      Michael St. James
                                              Bankruptcy Counsel for Spiro Jannings