KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' OPENING BRIEF IN SUPPORT OF OBJECTION TO CLAIM OF DAVID P. ADDINGTON (CLAIM NO. 3093)**<br><br>[Relates to Docket No. 10673] |

**Table of Contents**

I. PRELIMINARY STATEMENT ........................................................................................1
II. JURISDICTION ................................................................................................................3
III. BACKGROUND ................................................................................................................3
    B. Factual Background of the Addington Claim ........................................................3
        1. The Easement ..............................................................................................3
        2. PG&E's Work on the Equipment ................................................................5
        3. Mr. Addington's Termination Notice .........................................................6
    C. The Addington Claim .............................................................................................7
    D. The Omnibus Objection .........................................................................................8
IV. ARGUMENT .....................................................................................................................9
    A. An Easement May Be Extinguished Only Through Judicial Process Or Consent of the Easement Holder ............................................................................9
        1. Mr. Addington Bears the Burden of Proving the Easement Was Forfeited .....................................................................................................9
        2. The Addington Claim Does Not Allege Grounds for Extinguishment Because Mr. Addington Released PG&E ...................................................9
        3. Extinguishment and Forfeitures are Disfavored Remedies .........................10
        4. An Action in Superior Court Was Required to Extinguish the Easement ....................................................................................................12
    B. To the Extent That a Power of Termination Exists in the Grant, It Has Expired ..................................................................................................................13
    C. The Termination Notice Was Improperly Recorded ...........................................14
V. RESERVATION OF RIGHTS .........................................................................................15

# Table of Authorities

**Cases**

*Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222 (B.A.P. 9th Cir. 1995) ................................................................................................................ 1
*Brown v. Johnson*, 98 Cal. App. 3d 844 (1979) ........................................................................ 15
*Buechner v. Jonas*, 228 Cal. App. 2d 127 (1964) ................................................................ 11, 12
*Concord & Bay Point Land Co. v. City of Concord*, 229 Cal. App. 3d 289 (1991) ................. 13
*Flanagan v. San Marcos Silk Co.*, 106 Cal. App. 2d 458 (1951) ............................................. 13
*In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir. 1992) ............................................................ 1
*Johnson v. Ocean Shore Railroad Co.*, 16 Cal. App. 3d 429 (1971) ........................................ 13
*Lamont v. Ball*, 93 Cal. App. 2d 291 (1949) ............................................................................ 11
*Laux v. Freed*, 53 Cal. 2d 512 (1960) ....................................................................................... 13
*McNeece v. Wood*, 204 Cal. 280 (1928) ..................................................................................... 9
*People v. Ocean Shore R.R.*, 32 Cal. 2d 406 (1948) ................................................................ 12
*Reichardt v. Hoffman*, 52 Cal. App. 4th 754 (1997) ............................................................ 9, 10
*Sanders v. E. Bay Mun. Util. Dist.*, 16 Cal. App. 4th 125 (1993) .......................................... 9, 13
*Santa Monica v. Jones*, 104 Cal. App. 2d 463 (1951) ............................................................. 13
*Seeley v. Seymour*, 190 Cal. App. 3d 844 (1987) .................................................................... 15
*Severns v. Union Pac. R.R. Co.*, 101 Cal. App. 4th 1209 (2002) ............................................. 14
*Tamalpais Land & Water Co. v. Northwestern P. R. Co.*, 73 Cal. App. 2d 917 (1946) ........... 13
*Universal Sales Corp. v. Cal. etc. Mfg. Co.*, 20 Cal. 2d 751 (1942) ........................................ 11
*Ward v. Superior Court*, 55 Cal. App. 4th 60 (1997) .............................................................. 15
*Wooster v. Dep't of Fish & Game*, 211 Cal. App. 4th 1020 (2012) ........................................ 11

**Statutes**

28 U.S.C. § 1334 ......................................................................................................................... 3
28 U.S.C. § 1409 ......................................................................................................................... 3
28 U.S.C. § 157(b) ...................................................................................................................... 3
28 U.S.C. § 1408 ......................................................................................................................... 3
28 U.S.C. § 157 ........................................................................................................................... 3

Cal. Civ. Proc. Code § 320 .................................................................................................................. 13

Cal. Civil Code § 1007 .......................................................................................................................... 10

Cal. Civil Code § 1069 .......................................................................................................................... 13

Cal. Civil Code § 811 ..................................................................................................................... 10, 11

Cal. Civil Code § 880.020 ..................................................................................................................... 14

Cal. Civil Code § 885.010 ..................................................................................................................... 14

Cal. Civil Code § 885.030 ..................................................................................................................... 14

Cal. Gov't Code § 27279 ....................................................................................................................... 15

Cal. Gov't Code § 27280 ....................................................................................................................... 14

PG&E Corporation and Pacific Gas and Electric Company ("**PG&E**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this brief in support of the Reorganized Debtors' objection to the claim of David P. Addington (Claim No. 3093) (the "**Addington Claim**") through the *Reorganized Debtors' Seventy-Ninth Omnibus Objection to Claims (Books and Records Claims)* (the "**Omnibus Objection**") [Docket No. 10673].

Additional support for the Omnibus Objection is provided in this Opening Brief[1] and the *Parties' Joint Statement of Undisputed Facts Regarding Reorganized Debtors' Seventy-Ninth Omnibus Objection to Claims – Claim of David Addington (Claim No. 3093)* [Docket No. 11736] (the "**Joint Statement**" or "**J.S.**")[2] filed on December 21, 2021.

## I. PRELIMINARY STATEMENT

With respect to the Addington Claim, the Reorganized Debtors, by the Omnibus Objection, stated the legal grounds upon which they object to the Addington Claim, and presented facts in support of the Omnibus Objection by way of supporting declaration. The Reorganized Debtors having supported the Omnibus Objection by facts and law, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996).

The Reorganized Debtors submit that there is no genuine dispute as to material facts and that they are entitled to disallowance of the Addington Claim as a matter of law. Indeed, in accordance with the Court's direction, the Reorganized Debtors and Mr. Addington submitted a joint statement of undisputed facts upon which the Omnibus Objection relies. Mr. Addington's claim rests entirely on the contention that his recording of a notice of termination, without PG&E's consent, and without seeking his appropriate remedies from any court of competent jurisdiction, was effective to terminate the

---

[1] This Opening Brief, which is in support of the Omnibus Objection, is the "opening brief" referenced in the briefing schedule set forth in the Court's orders at docket nos. 11572 and 11741.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Joint Statement.

1

easement. Indeed, Mr. Addington must rely on this implausible argument because he has not been able to articulate any legal or factual basis for the extinguishment of the Easement under California law. The issues involved in determining the Addington Claim are issues of California law concerning real property, including easements, marketable record title, and recording of documents. A decision by this Court that the easement was never legally terminated will be sufficient to disallow the Addington Claim in its entirety.

Mr. Addington's unilateral recording of the notice of termination of easement was facially invalid and legally insufficient to terminate PG&E's easement. Importantly, Mr. Addington executed a release in exchange for compensation, acknowledging that PG&E had satisfied its obligations to him with respect to work done on the Addington Property prior to Mr. Addington's recording of the Termination Notice. Moreover, neither applicable law, nor even the language in the grant of the easement cited by Mr. Addington, creates a right in the original grantor or any successor thereto to terminate the easement in its sole discretion.

First, termination or extinguishment of an easement is an extreme and disfavored remedy, and extinguishment is not justified here, where Mr. Addington has failed to establish that any material term or condition of the easement was allegedly breached. Wherever possible, courts endeavor to remedy wrongs relating to easements through damages or injunctive relief, and not through forfeiting a party's vested property rights. This is especially applicable here, where the Equipment is a vital part of the electrical grid that transmits power to many thousands of the Utility's customers. Mr. Addington essentially argues that such a property right can be extinguished unilaterally at his sole discretion, without adjudication by any court, and without specifying and proving the grounds for termination.

Second, to the extent that the Termination Clause creates a "power of termination" as defined by California Law, such Termination Clause expired nearly a century ago pursuant to the California Marketable Record Title Act.

Third, Mr. Addington's recordation of the Termination Notice was improper, as on its face it is not a document that can be recorded. Only judicial orders and "instruments," defined as documents signed by a person *transferring title to property*, may be recorded. It would be contrary to any organized

2

recording system to allow persons to record self-serving documents that remove encumbrances to record title without the consent of the easement owner or the authority of a court.

## II.     JURISDICTION

This Court has jurisdiction over the Omnibus Objection under 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are section 502 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## III.     BACKGROUND

### A.     The Chapter 11 Cases and Claims Administration Process

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code.

By Order dated June 20, 2020 [Dkt. No. 8053], the Bankruptcy Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be further modified, amended or supplemented from time to time, and together with any exhibits or schedules thereto, the "**Plan**"). The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**"). *See* Dkt. No. 8252.

On June 30, 2020, the Bankruptcy Court entered the *Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections* [Docket No. 8228] (the "**Omnibus Objections Procedures Order**"), setting forth procedures for the omnibus objections to claims in these Chapter 11 Cases.

### B.     Factual Background of the Addington Claim

#### 1.     The Easement

Over one hundred ten years ago, The Realty Syndicate, a California corporation, conveyed to

3

Great Western Power Company an easement for the purpose of constructing and maintaining electrical transmission equipment over a tract of real property in Alameda County, California (the "**Easement**"). (J.S. ¶ 1.) The document granting the Easement is dated December 9, 1908, and was recorded on March 17, 1909, in Book 1578 of Deeds, Page 189 of Official Records of Alameda County (the "**Grant**"). (J.S. ¶ 2.) A handwritten copy of the Grant is attached as **Exhibit A** to the Joint Statement. (J.S. ¶ 2, Ex. A.) The Reorganized Debtors have in their possession a typewritten copy of the Grant, which is attached as **Exhibit B** to the Joint Statement, that the Reorganized Debtors believe is identical to Exhibit A. (J.S. ¶ 2, Ex. B.) PG&E is the successor in interest to Great Western Power Company. (J.S. ¶ 3.)

The land encumbered by the Easement was subsequently subdivided into multiple parcels, include the property that is commonly known as 298 Saint James Drive in Piedmont, California. (J.S. ¶ 4-5.) Mr. Addington purchased the property on November 10, 2015 (the "**Addington Property**"), over one hundred years after the Easement was granted. (J.S. ¶ 5.) Two utility towers, each of which support six 115 kW transmission lines (the "**Equipment**"), were located on the Addington Property when Mr. Addington purchased it, and the Equipment remains there in public service as of this filing. (J.S. ¶ 6, 21.)

The Grant describes an easement area that is a uniform width of 60 feet along a specified route over two tracts of land, comprised of 11.88 acres and 3.98 acres respectively. (J.S. Ex. A at 4-6, Ex. B at 2-5.) Following this description of the lands subject to the Easement, the Grant specifies certain conditions and reservations to the Grant in four enumerated paragraphs. (J.S. Ex. A at 7-8, Ex. B at 5-6.) Specifically, the Grant specifies the Grantee has the right to erect and maintain two [parallel] lines of steel towers within the 60-foot easement area. (J.S. Ex. A at 7, Ex. B at 5.) The first enumerated paragraph specifies a minimum distance between the towers in each parallel tower line (not less than 350 feet apart) and specifies a minimum height of the conductors (30 feet above the ground). (J.S. Ex. A at 7, Ex. B at 5.) The second and third enumerated paragraphs relate to reservations to the Grant in which the Grantor reserves the right to dedicate streets, avenues and or provide access to railroads across the 60-foot easement area not applicable here. (J.S. Ex. A at 7-8, Ex. B at 5-6.) The fourth enumerated

4

paragraph includes a general reservation in the favor of the Grantor to use the 60-foot easement area for all purposes, including mining and agriculture. (J.S. Ex. A at 8, Ex. B at 6.) That is, this reservation recognizes the residual right of the Grantor to use the same easement area, subject to the common law principle that the Grantor's residual use cannot unreasonably interfere with the Grantee's use under the easement. This reservation includes a restriction on the Grantee, that in its enjoyment of the priority of rights granted in the Grant, it is to avoid, to the extent reasonably possible, from interfering with the Grantor's residual use of the easement area: "[PG&E], in the enjoyment of the rights hereby granted, shall avoid so far as it reasonably can interfering with the use by [Mr. Addington] of said strip of land for any and all purposes." (J.S. Ex. A at 8, Ex. B at 6.) The fourth enumerated paragraph concludes with the grant of additional rights for the Grantee, including the right to patrol the tower lines and to install gates in any fences. (J.S. Ex. A at 8, Ex. B at 6.)

The final unenumerated paragraph of the Grant reads: "Any violation of the conditions of this grant shall terminate and extinguish the easement hereby granted" (the "**Termination Clause**"). (J.S. Ex. A at 8, Ex. B at 7.)

### 2. PG&E's Work on the Equipment

In 2016, PG&E removed paint and re-coated the lattice steel towers on the Addington Property. (J.S. ¶ 9.) As part of that work, PG&E determined that it was necessary to remove soil from Mr. Addington's property. (J.S. ¶ 9.) PG&E and Mr. Addington entered into a Tower Maintenance Work Soil Restoration Agreement dated September 2, 2016 (the **Restoration Agreement**"), which described certain work associated with the removal and replacement of soil from the area impacted by PG&E's tower coating project. (J.S. ¶ 9.) A copy of the Restoration Agreement is attached as **Exhibit C** to the Joint Statement. (J.S. ¶ 9, Ex. C.)

PG&E and Mr. Addington also entered into a Revised Tower Maintenance Work Acknowledgement dated September 2, 2016 (the **"Revised Work Acknowledgement"**), which provided that PG&E would (i) demolish and offhaul a play court and (ii) offhaul 170 cubic yards of soil from the Addington Property. (J.S. ¶ 10.) A copy of the Revised Work Acknowledgement is attached as **Exhibit D** to the Joint Statement. (J.S. ¶ 10, Ex. D.)

5

The Revised Work Acknowledgement provided that PG&E would pay Mr. Addington $36,790 in consideration for the work done on the Addington Property. (J.S. ¶ 11, Ex. D.) This amount was based on a bid that Mr. Addington had obtained from his own contractor, GJR Development. (J.S. ¶ 11.) PG&E subsequently paid Mr. Addington the $36,790 owing under the Revised Work Acknowledgement. (J.S. ¶ 11.)

After PG&E and its subcontractors had completed its re-coating and restoration work on the Addington Property, a dispute arose based on Mr. Addington's contention that PG&E did not perform all the work it had agreed to perform. (J.S. ¶ 12.) To resolve this dispute, PG&E and Mr. Addington entered into a Tower Maintenance Work Acknowledgement Addendum dated November 4, 2016 (the "**Addendum**"). (J.S. ¶ 12, Ex. E.) A copy of the Addendum is attached as **Exhibit E** to the Joint Statement. (J.S. ¶ 12, Ex. E.)

Under this Addendum, PG&E agreed to pay Mr. Addington an additional $13,000 in consideration for Mr. Addington's agreement that PG&E has performed the work described in the Revised Work Acknowledgement. (J.S. ¶ 13, Ex. E.) The Addendum states as follows:

> PG&E agrees to pay you $13,000.00 as additional consideration, bringing the total consideration under the Agreement [the Revised Work Acknowledgement] amount to $49,790.00. In exchange you agree that PG&E has completed the work described in the Agreement. Please provide your signature below to indicate your agreement that your acceptance of this revised total consideration amount will constitute a full and final release of PG&E from obligations arising under that Agreement.

(J.S. ¶ 13, Ex. E.) Mr. Addington countersigned the Addendum, and PG&E paid the additional $13,000 to Mr. Addington. (J.S. ¶ 14, Ex. E.) Mr. Addington executed an Acknowledgment of Payment on November 14, 2016 (the "**Acknowledgement of Payment**"), acknowledging receipt of $49,790 from PG&E. (J.S. ¶ 14, Ex. F.) A copy of the Acknowledgement of Payment is attached as **Exhibit F** to the Joint Statement. (J.S. ¶ 14, Ex. F.) Under his signature, Mr. Addington handwrote: "But he still wants to know how much soil was removed from his property." (J.S. ¶ 14, Ex. F.)

### 3. Mr. Addington's Termination Notice

Mr. Addington never filed a suit against PG&E for breach of contract, declaratory relief, or for any other reason. (J.S. ¶ 15.) On June 1, 2017, Mr. Addington recorded a document titled "Termination

6

of Easement" as Document No. 2017119659 in Official Records of Alameda County (the "**Termination Notice**"). (J.S. ¶ 17, Ex. G.) A copy of the Termination Notice is attached as **Exhibit G** to the Joint Statement. (J.S. ¶ 17, Ex. G.) The Termination Notice states that the Grantor [David P. Addington] "hereby terminates and extinguishes [the Easement] as it relates to Grantor's property." (J.S. ¶ 17, Ex. G.) The Termination Notice does not identify a cause or basis for termination of the Easement. (J.S. ¶ 18, Ex. G.) Only Mr. Addington's signature appears on the Termination Notice. (J.S. ¶ 19, Ex. G.) PG&E did not and does not consent to the recordation of the Termination Notice. (J.S. ¶ 19.)

Shortly after recording the Termination Notice, on or about June 2, 2017, Mr. Addington sent an e-mail to PG&E demanding that PG&E remove the Equipment from the Addington Property. (J.S. ¶ 20.) On June 15, 2017, PG&E rejected this demand in an e-mail to Mr. Addington from Joe Echols of PG&E, which stated as follows:

> Mr. Addington,
> We are in receipt of your email dated June 2 in which you stated that you have terminated the easement for 298 Saint James Drive in Piedmont. Please note that a private property owner cannot unilaterally terminate an occupied easement. Accordingly, PG&E does not consider your termination of the easement to be valid and will continue to operate and maintain our existing facilities in accordance with our existing easement. No equipment will be removed from your property.
> Thank you,
> Joe Echols

(J.S. ¶ 20.) PG&E has not removed the Equipment from the Addington Property and continues to use the Equipment to transmit electricity in the course of its business. (J.S. ¶ 21.) Other than as asserted in the Addington Proof of Claim filed in the Chapter 11 Cases, Mr. Addington has never brought an action in any court in connection with the Termination Notice, including to (i) establish or confirm the termination of the Easement as it relates to the Addington Property, or (ii) obtain an injunction or damages against PG&E in connection with the presence and operation of the Equipment on the Addington Property. (J.S. ¶ 22.)

    **C.**    **The Addington Claim**

On May 23, 2019, Mr. Addington filed the Addington Claim in the Chapter 11 Cases, which asserts a $3,548,941.93 prepetition claim in PG&E's bankruptcy for a "High Voltage Utility-Specific

7

Access Charge." In the Addington Claim, Mr. Addington contends that, upon his purported termination of the easement in 2017, he became entitled to charge PG&E for the electricity being transmitted through the Equipment over the Addington Property.

### D. The Omnibus Objection

On May 20, 2021, PG&E filed the Omnibus Objection, which objected to the Claim on the basis that, according to PG&E's books and records, the Claim did not assert a claim for which the Debtors had any liability.

On June 24, 2021, PG&E filed a *Status Conference Statement Regarding Reorganized Debtors' Seventy Ninth Omnibus Objection to Claims – Claim of David Addington (Claim No. 3093)* [Docket No. 10851] (the "**Status Conference Statement**"). Attached to the Status Conference Statement as Exhibit A was the response to the Omnibus Objection that counsel for the Reorganized Debtors received from Mr. Addington [Docket No. 10851-1]. In the Status Conference Statement, the Reorganized Debtors made clear that they disputed Mr. Addington's claim that he had terminated the easement and requested an opportunity to submit briefing on their argument that the purported termination was invalid. Status Conference Statement at 2-3. Mr. Addington filed a response to the Status Conference Statement on June 29, 2021 [Docket No. 10872].

On June 30, 2021, the Bankruptcy Court held a preliminary hearing with respect to the Omnibus Objection as it related to the Claim. Mr. Addington attended the hearing on his own behalf. At the end of that hearing, counsel for PG&E advised the Bankruptcy Court that PG&E would consider mediating the Claim, and the Bankruptcy Court continued the hearing pending such a determination.

On July 8, 2021, PG&E informed the Bankruptcy Court by notice that it intended to attempt to mediate the Claim [Docket No. 10896]. On August 25, 2021, PG&E and Mr. Addington participated in a mediation in front of E. Alexandra DeLateur. The mediation did not result in a settlement.

On November 9, 2021, the Bankruptcy Court held a status conference on the Addington Claim. On November 10, 2021, the Bankruptcy Court issued an order setting a schedule for supplemental briefing and a continued hearing on the Addington Claim [Docket No. 11572]. On December 21, 2021, the Parties filed the *Stipulation to Continue Hearing and Modify Briefing Schedule Regarding*

8

*Reorganized Debtors' Seventy-Ninth Omnibus Objection to Claims – Claim of David Addington (Claim No. 3093)* [Docket No. 11737], amending the schedule.

## IV. ARGUMENT

### A. An Easement May Be Extinguished Only Through Judicial Process Or Consent of the Easement Holder

#### 1. Mr. Addington Bears the Burden of Proving the Easement Was Forfeited

Mr. Addington bears the burden of proving that his Termination Notice was sufficient to destroy PG&E's title to the Easement. "As a general principle of equity, it is well established that forfeitures . . . are not favored by the courts, and are never enforced if they are couched in ambiguous terms." *Sanders v. E. Bay Mun. Util. Dist.*, 16 Cal. App. 4th 125, 130 (1993) (citation omitted). Civil Code section 1442 states: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." *Id.* (citing Cal. Civil Code § 1442). "The burden is upon the party claiming the forfeiture to show that such was the unmistakable intention of the instrument." *Id.* (quoting *McNeece v. Wood*, 204 Cal. 280, 284 (1928)). A party seeking the extinguishment of an easement must provide evidence of the burden on the servient tenement. *See Reichardt v. Hoffman*, 52 Cal. App. 4th 754, 768 (1997) (collecting cases). If the agreement can be reasonably interpreted so as to avoid forfeiture, it is a court's duty to do so. *Sanders v. E. Bay Mun. Util. Dist.*, 16 Cal. App. 4th at 130.

#### 2. The Addington Claim Does Not Allege Grounds for Extinguishment Because Mr. Addington Released PG&E

Mr. Addington cannot meet his burden with respect to extinguishment of the Easement because he expressly released any claim against PG&E with respect to the restoration work in 2016. In connection with that work, PG&E negotiated and entered into agreements with Mr. Addington, which specified the work to be done and paid him valuable consideration. (J.S., Exs. C-F.) Mr. Addington executed these agreements and acknowledgments and accepted payment of $49,790.00 in total consideration for the work done on the Easement and a full and final release of any claims thereunder. Given his acceptance of payment in full satisfaction and release of his claims under the Revised Work Acknowledgement, even if the 2016 restoration work could have formed the basis for termination of the

9

Easement – which, as discussed below, it cannot – Mr. Addington released any right to enforce such a claim.

### 3. Extinguishment and Forfeitures are Disfavored Remedies

Even if Mr. Addington had not released his claims with respect to the restoration work, he does not have the right to extinguish the Easement unilaterally. Mr. Addington had owned the Addington Property for less than a year and a half before he recorded the Termination Notice in an attempt to terminate the century-old Easement. Neither the Addington Claim nor the Termination Notice state any grounds for the purported termination of the Easement. In evaluating whether Mr. Addington's attempt to terminate the Easement by recording the Termination Notice was valid and effective, the Court should start with the twin principles that (a) extinguishment of an easement is appropriate only when the easement owner has acted in a manner that so exceeds the scope of the easement that it constitute an impermissible surcharge on the easement, and (b) forfeiture is a disfavored remedy requiring clear language defining the condition for forfeiture.

"Extinguishment of an easement is an extreme and powerful remedy, which is utilized only when use of the easement has been rendered essentially *impossible*." *Reichardt v. Hoffman*, 52 Cal. App. 4th at 767 (emphasis in original). Cal. Civil Code § 811 (enacted in 1872) sets forth the only grounds for the extinguishment of an easement (servitudes):

> A servitude is extinguished:
>
> 1. By the vesting of the right to the servitude and the right to the servient tenement in the same person;
>
> 2. By the destruction of the servient tenement;
>
> 3. By the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise; or,
>
> 4. When the servitude was acquired by enjoyment, by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment.

Cal. Civil Code § 811. Paragraphs 1, 2, and 4 do not apply to the Addington Claim.[3]

---

[3] Nor can Mr. Addington argue that he has acquired property rights through prescription. Civil Code Section 1007 provides that occupancy of an easement held by a public utility—no matter how long—cannot ever ripen into a prescriptive easement. Cal. Civil Code § 1007.

10

As stated above, an easement may be extinguished by performance of any act by the owner of the easement on either the dominant or servient estate, which is incompatible with the nature or exercise of the easement. Cal. Civil Code § 811 (3). Courts have required that, in order to find such incompatibility, there must be "a *permanent* interference or an act of a nature such that, thereafter, exercise of the easement cannot be made without severe burden upon the servient tenement." *Buechner v. Jonas*, 228 Cal. App. 2d 127, 132 (1964) (emphasis in original).

As for forfeiture, although an easement may be conveyed subject to conditions subsequent and extinguished if such conditions occur, the settled policy is "not to enforce a forfeiture in the absence of a clear statement to that effect." *Wooster v. Dep't of Fish & Game*, 211 Cal. App. 4th 1020, 1027 (2012) (citing *Universal Sales Corp. v. Cal. etc. Mfg. Co.*, 20 Cal. 2d 751, 771 (1942)). "The rule against construing language in a deed as a condition subsequent is merely a specific application of the more general rule that '[t]he law abhors forfeitures.'" *Id.* (quoting *Lamont v. Ball*, 93 Cal. App. 2d 291, 294 (1949).

Here, there are very few conditions on the easement holder's use of the easement specified in the Grant. The few conditions that exist mainly concern the spacing of the towers and establishing a minimum height of the power lines within the easement area. Mr. Addington has never alleged that any of these conditions were breached. As in *Wooster*, the remaining provisions in the Easement are reservations of rights by the grantor to access and use the property, with respect to which extinguishment of the Easement would not be appropriate in any event under *Wooster*, *Reichardt*, and *Buechner* given the availability of other, less extreme, remedies. But it is far from clear that Mr. Addington has alleged that any condition or reservation in the Easement has been breached. As of this filing, Mr. Addington has never stated the basis for his purported termination of the Easement, maintaining – incorrectly – that the Termination Clause of the Grant, which merely says violation of the conditions of the grant of easement shall terminate and extinguish the easement, gives him the unfettered, unreviewable right to terminate the Utility's interest in the Easement through the simple act of recording the Termination Notice and sending a copy to the Utility. As discussed above, in exchange for receiving $49,790, Mr. Addington *released* PG&E from any obligations arising under the Revised Work Acknowledgement.

11

Even if the Termination Clause could be invoked unilaterally to terminate the easement – and, as discussed below, it cannot – Mr. Addington does not, and cannot, cite to anything within the four corners of the easement that was violated.

To the extent that Mr. Addington's basis for his purported termination is the parties' agreements concerning the tower maintenance (wherein he waived his claims against PG&E in exchange for a substantial payment he acknowledges he received), those agreements are not part of the Grant and are therefore not conditions to the Easement or grounds for terminating the Easement. If the Utility were found to have breached those agreements, Mr. Addington's remedy would be damages or injunctive relief, not extinguishment of the Easement. *See, e.g.*, *Buechner v. Jonas*, 228 Cal. App. 2d at 134 (the general rule is that misuse or excessive use of an easement is not sufficient for abandonment or forfeiture, and that in such cases, an injunction, not forfeiture, is the proper remedy).

### 4. An Action in Superior Court Was Required to Extinguish the Easement

As stated above, Mr. Addington's allegations do not support a claim that PG&E has so materially violated the terms of the Easement that it should be extinguished. Indeed, the agreed facts do not demonstrate that Mr. Addington has *any* claim against PG&E with respect to its use of the Easement. Even if Mr. Addington could point to the conditions of the Easement that had been violated, however, he could not terminate the Easement without filing a legal action. The Termination Clause itself is phrased in a neutral manner: "Any violation of the conditions of this grant shall terminate and extinguish the easement hereby granted." Determination of such a "violation" would be an issue of fact for a court to decide, taken in consideration with the prevailing California case law against forfeitures. The Termination Clause does *not* create an additional power in the Grantor and its successors to act to terminate the easement on their own prerogative. This is especially so in light of case law that requires the Termination Clause to be strictly interpreted against the party seeking the forfeiture.

An action in a California state court (quiet title) is necessary to confirm, as a judicial matter, the termination of an easement that appears of record, even though the factual basis for the alleged termination may have occurred prior to the judicial action. *See, e.g.*, *People v. Ocean Shore R.R.*, 32 Cal. 2d 406, 417 (1948) (easement acquired by utility for public purpose is terminated by abandonment

12

of that purpose, as determined by trier of fact); *Johnson v. Ocean Shore Railroad Co.*, 16 Cal. App. 3d 429, 433 (1971); *Flanagan v. San Marcos Silk Co.*, 106 Cal. App. 2d 458, 463-66 (1951) (question of abandonment of easement to be determined by trial court). This is analogous to the enforcement of a power of termination through a fee simple subject to condition subsequent, where "the owner of a right of entry for breach of condition has a privilege and a power, but not a right; for by a right, in the strict sense, is meant a claim which may be enforced by legal machinery of some sort, and until an election to forfeit for breach, there is no such right in the one for whose benefit the condition exists." *Santa Monica v. Jones*, 104 Cal. App. 2d 463, 473 (1951) (quotations omitted).

Mr. Addington did not seek to enforce his claim and establish his right to reentry or an extinguishment of the easement in Superior Court. Had he tried to do so, the burden would have been on him to prove that any easement conditions had been breached. Whether a deed conveys an easement or a fee title subject to conditions subsequent, in either event the deed must be construed in favor of the grantee or its successor. *See Tamalpais Land & Water Co. v. Northwestern P. R. Co.*, 73 Cal. App. 2d 917, 925 (1946) (citing Cal. Civil Code § 1069); *see also Laux v. Freed*, 53 Cal. 2d 512, 522 (1960) (same). The burden in a quiet title action rests on the party alleging a violation of the deed provisions – that is, Mr. Addington. *See Tamalpais Land & Water Co. v. Northwestern P. R. Co.*, 73 Cal. App. 2d at 925. Mr. Addington did not seek such relief in the Superior Court and carry his burden. Instead, Mr. Addington used self-help and unilaterally recorded the Termination Notice; such an act was contrary to California state law. *See, e.g.*, Cal. Civ. Proc. Code § 320 (governing actions to enforce a power of termination and right to re-entry upon real estate); *see also Concord & Bay Point Land Co. v. City of Concord*, 229 Cal. App. 3d 289, 301 (1991) (action to enforce power of termination is based on right of entry); *Sanders v. E. Bay Mun. Util. Dist.*, 16 Cal. App. 4th 125, 133 (1993) (discussing same).

**B.     To the Extent That a Power of Termination Exists in the Grant, It Has Expired**

Even if Mr. Addington had brought a proper action in state court to terminate the Easement, it would have failed. As discussed above, Mr. Addington has failed to identify any condition subsequent under the Grant that was allegedly breached. Even if a condition under the Grant had been breached, however, any right to terminate the Easement on the basis of such breach expired decades ago. The

13

California Marketable Record Title Act ("**MRTA**") was passed in 1982 "to simplify and facilitate real property title transactions in furtherance of public policy by enabling persons to rely on record title to the extent provided in [the MRTA]." Cal. Civil Code § 880.020.

One key component of the MRTA was the abolition of powers of termination older than 30 years. *See* Cal. Civil Code § 885.030. Under the MRTA:

> "Power of termination" means the power to terminate a fee simple estate in real property to enforce a restriction in the form of a condition subsequent to which the fee simple estate is subject, whether the power is characterized in the instrument that creates or evidences it as a power of termination, right of entry or reentry, right of possession or repossession, reserved power of revocation, or otherwise, and includes a possibility of reverter that is deemed to be and is enforceable as a power of termination pursuant to Section 885.020.

Cal. Civil Code § 885.010. The MRTA was intended to apply retroactively to clear up the title where powers of termination were reserved by original grantors, but many years had passed without the original grantors showing an intention to retain such powers.

> The power of termination should expire after a period of 30 years unless within that time the holder of the power extends the period by recording a notice of intent to preserve the power; an extension should be good for 30 years at a time. There should be a five-year grace period for holders of powers of termination to record a notice of intent to preserve powers that would be immediately or within a short period affected by enactment of the statute. This scheme will ensure that only those powers of termination will burden property for an extended period that a person has an active interest in preserving. It will also keep record ownership of the power current and help in ascertaining current holders of the power. The scheme has the additional virtue of minimizing potential problems of constitutionality inherent in applying an absolute limitation on powers without the option of extension.

*Severns v. Union Pac. R.R. Co.*, 101 Cal. App. 4th 1209, 1219 (2002) (quoting Recommendation Relating to Marketable Title of Real Property (Nov. 1981) 16 Cal. Law Revision Com. Rep. (1981) pp. 421-422, fns. omitted). Here, to the extent that the Termination Clause gave the grantor a power of termination, it expired thirty years after recordation of the Grant, in 1939. *See* Cal. Civil Code § 885.030.

### C. The Termination Notice Was Improperly Recorded

The Termination Notice is void for an additional reason, which is that it is not an instrument that could be recorded. California Government Code section 27280, subdivision (a), provides that "[a]ny instrument or judgment affecting the title to or possession of real property may be recorded . . . ." Cal. Gov't Code § 27280. The Termination Notice is not a "judgment," hence, if recordable, it must be

14

recordable as an "instrument." The term "instrument" as used in Government Code section 27280 is defined in Government Code section 27279, subdivision (a), as one of three categories: "a written paper signed by a person or persons transferring the title to, or giving a lien on real property, or giving a right to a debt or duty." Cal. Gov't Code § 27279. A recordable "instrument" is therefore one which the person signing the paper either (a) transfers title, (b) "gives" a lien, or (c) "gives" a right or duty. *See Ward v. Superior Court*, 55 Cal. App. 4th 60, 64-65 (1997). The Termination Notice does not "transfer" title. It seeks to terminate an easement granted by Mr. Addington's predecessor in interest.[4] Nor does the Termination Notice "give," or create a lien on real property or a right to a debt or duty. *See id*.

The Utility did not sign the Termination Notice, nor has it ever consented to its recordation. (J.S. ¶ 19.) "Self-serving statements recorded in a chain of title are not instruments which are operative in transferring or creating a right or title and thus do not provide constructive notice to subsequent purchasers." *Brown v. Johnson*, 98 Cal. App. 3d 844, 850 (1979); *see also Seeley v. Seymour*, 190 Cal. App. 3d 844, 856 (1987) ("memorandum" recorded by prospective purchaser not an instrument and without merit as to effect on title).

If Mr. Addington truly believed that the Utility's actions were such a material breach of its common law duties as easement owner that the Easement should be deemed as terminated, it was incumbent on him to pursue such relief in a court of competent jurisdiction. His remedy would be to have the easement declared terminated, and if he prevailed, the judgment could then properly be recorded.

## V. RESERVATION OF RIGHTS

The Omnibus Objection reserved all of the Reorganized Debtors' rights to object to the Addington Claim on any basis whatsoever.[5] The Reorganized Debtors reaffirm these rights as to the

---

[4] Although Mr. Addington describes himself as the "Grantor" in the Termination Notice, presumably as successor-in-interest to the original grantor, he is not granting property rights but purporting to take them away from PG&E.

[5] "The Reorganized Debtors hereby reserve the right to object, as applicable, in the future to any of the Proofs of Claim listed in this Objection on any ground, and to amend, modify, or supplement this Objection to the extent an objection to a claim is not granted, and to file other objections to any proofs of claims filed in these cases, including, without limitation, objections as to the amounts asserted

15

Addington Claim and any other claim filed by Mr. Addington. The Reorganized Debtors further reserve all counterclaims, rights, and defenses arising out of, relating to, or in connection with the Addington Claim.

WHEREFORE, the Reorganized Debtors respectfully request entry of an order (i) sustaining the Omnibus Objection with respect to the Addington Claim, (ii) disallowing and expunging the Addington Claim in its entirety, and (iii) granting such other and further relief as the Court may deem just and appropriate.

Dated: December 29, 2021    **KELLER BENVENUTTI KIM LLP**

By: */s/ Thomas B. Rupp*
    Thomas B. Rupp

*Attorneys for Debtors and Reorganized Debtors*

---

therein, or any other claims (filed or not) against the Debtors, regardless of whether such claims are subject to this Objection. A separate notice and hearing will be scheduled for any such objections. Should the grounds of objection specified herein be overruled, wholly or in part, the Reorganized Debtors reserve the right to object to the No Legal Liability Claims on any other grounds that the Reorganized Debtors may discover or deem appropriate." (Omnibus Objection at 7.)

16