KELLER BENVENUTTI KIM LLP
Peter J. Benvenutti (# 60566)
(pbenvenutti@kbkllp.com)
Michael J. Coffino (# 88109)
(mcoffino@kbkllp.com)
Jane Kim (# 298192)
(jkim@kbkllp.com)
David A. Taylor (# 247433)
(dtaylor@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

JENNER & BLOCK LLP
Laurie Edelstein (#164466)
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone: (628) 267-6800
Facsimile: (628) 267-6859
Email: ledelstein@jenner.com

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' ONE HUNDRED THIRTEENTH OMNIBUS OBJECTION TO CLAIMS (CLAIM NOS. 77225, 78534, 78745 (in part), 78623 (in part), 105680, AND 105681)**<br>**(CITY OF SAN JOSE CLAIMS))**<br><br>**Response Deadline: February 16, 2022, 4:00 p.m. (PT)**<br><br>**Hearing Information If Timely Response Made:**<br>Date:  March 2, 2022<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  (Tele/Videoconference Appearances Only)<br>   United States Bankruptcy Court<br>   Courtroom 17, 16th Floor<br>   San Francisco, CA 94102 |

# TABLE OF CONTENTS

**Page**

I.    TABLE OF AUTHORITIES ........................................................................... iii

II.   PRELIMINARY STATEMENT ......................................................................2

III.  JURISDICTION ............................................................................................3

IV.  BACKGROUND ...........................................................................................4

The User Utility Tax Ordinance .................................................................4

The Franchise Fee Agreements ..................................................................5

The Municipal Public Lands Use Surcharge Legislation ....................................6

Gas PPP Surcharges .................................................................................6

The 2005 State Court Litigation .................................................................7

The Global Warming Solutions Act of 2006 and Climate Credits ........................8

Settlement of the Santa Clara Action ...........................................................8

Climate Credits ........................................................................................9

The Bankruptcy Case Filings ....................................................................11

The Initial Claims ...................................................................................13

The Late New Claims ..............................................................................13

V.   SPECIFICATION OF GROUNDS OF OBJECTION and ARGUMENT .....................14

    A.    The City Has No Basis to Assert Claims Against PG&E Corp. ..........................15

    B.    The Plain Language of the UUT Ordinance Bars the UUT Claims in Their Entirety .......16

    C.    The Plain Language of the Franchise Fee Ordinances Bars the Franchise Fee Claims in Their Entirety ..........17

    D.    The California Public Utilities Code Bars the UUT Claims ...............................18

    E.    The Reorganized Debtors Have Several Equitable Defenses to the City of San Jose Claims ..........19

           1.    Equitable Estoppel ...........................................................................19

           2.    Laches ........................................................................................21

           3.    Waiver .......................................................................................22

F. The Late New Claims Should Be Disallowed as Untimely ....................................22

G. A Prior Contractual Release Bars the City of San Jose Claims .............................25

H. The City of San Jose Claims Are Time-Barred ......................................25

I. The City Seeks Unauthorized Penalties and Interest .............................................26

J. The Penalties and Interest Sought by San Jose Are Unconstitutional ..................26

K. Even if the Franchise Fee Claims Had Merit, They Are Not Priority Tax Claims ......................................27

VI. LOCAL RULE 3007-1(B) ..........................................................................................28

VII. RESERVATION OF RIGHTS ......................................................................................28

VIII. NOTICE ......................................................................................................................29

IX. RELIEF REQUESTED ................................................................................................29

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*926 North Ardmore Ave. v. Cnty. of Los Angeles*, 3 Cal. 5th 319 (2017)......................................17

*In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir. 1992)...........................................................15

*Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*,
    178 B.R. 222 (B.A.P. 9th Cir. 1995)........................................................................15

*Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.*,
    145 Cal. App. 4th 1260 (2006) ...............................................................................21

*Cal. Fed. Savings & Loan Assn. v. City of Los Angeles*, 54 Cal. 3d 1 (1991) ..............................18

*City of Long Beach v. Mansell*, 3 Cal.3d 462 (1970).......................................................19

*City of Los Angeles v. Belridge Oil Co.*, 42 Cal. 2d 823 (1954)........................................17, 25

*City of San Bernardino Hotel/Motel Ass'n* v. *City of San Bernardino*,
    59 Cal. App. 4th 237 (1998) ..................................................................................26

*City of Torrance v. Southern California Edison Co*,  61 Cal. App. 5th 1071 (2021) .............18, 20

*County of San Diego v. Cal. Water & Tel. .Co.*, 30 Cal. 2d. 817 (1947).................................19

*County of Tulare v. City of Dinuba*, 188 Cal. 664 (1922) ..................................................28

*Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297 (1967) ......................................................19

*Duffy* v. *State Board of Equalization*, 152 Cal. App. 3d 1156 (1984)...........................................26

*Edison California Stores v. McColgan*, 30 Cal.2d 472 (1947) .....................................................17

*F.C.C.* v. *Fox Television Stations*, 567 U.S. 239 (2012) ......................................................26

*Feduniak v. California Coastal Commission*, 148 Cal. App. 4th 1346 (2007)............................21

*In re Fidelity Holding Co.,* 837 F.2d 696 (5th Cir. 1988).........................................................15

*Gray* v. *Whitmore*, 17 Cal. App. 3d 1 (1971) ...................................................................26

*Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035 (9th Cir. 2000).............................15

*In re Marriage of Lugo*, 170 Cal. App. 3d 427 (1980)........................................................21

*In re Mitchell*, 398 B.R. 557 (Bankr. N.D. Miss. 2008) .....................................................27

*Morrison* v. *State Bd. of Educ.*, 1 Cal. 3d 214 (1969) ........................................................26

*National Cable Television Assn. v. United States*, 415 U.S. 336 (1974)....................................27

*In re Nat'l Steel Corp.*, 316 B.R. 510 (Bankr. N.D. Ill. 2004)..........................................25

*In re Pac. Gas & Elec. Co.*, 311 B.R. 84 (Bankr. N.D. Cal. 2004) ........................................23, 24

*People ex rel. Lockyer* v. *R.J. Reynolds Tobacco Co.,* 37 Cal. 4th 707 (2005)............................27

*Roesch v. De Mota*, 24 Cal. 2d 563 (1944)..........................................................................22

*In re S.N.A. Nut Co.*, 188 B.R. 392 (Bankr. N.D. Ill. 1995) ....................................................27

*Santana v. Holiday Inns, Inc.*, 686 F.2d 736 (9th Cir. 1982)....................................................23

*Spencer v. Pugh (In re Pugh)*, 157 B.R. 898 (B.A.P. 9th Cir. 1993)..........................................15

*In re Stavriotis*, 977 F.2d 1202 (7th Cir.1992) ......................................................................24

*United States* v. *Bajakajian*, 524 U.S. 321 (1998)................................................................27

*United States v. Jose*, 499 F.3d 105 (1st Cir. 2007)................................................................27

*United States Fid. Guar. Co.* v. *State Board of Equalization*, 47 Cal.2d 384 (1956)..................19

*United States v. River Coal Co.*, 748 F.2d 1103 (6th Cir. 1984) ................................................27

*Walsh v. Kirby,* 13 Cal. 3d 95 (1974) ..................................................................................27

*Wright v. Holm (In re Holm)*, 931 F.2d 620 (9th Cir. 1991) ....................................................15

**Statutes and Rules**

11 U.S.C. § 502(a) ............................................................................................................15

11 U.S.C. § 502(b)(1) ........................................................................................................15

11 U.S.C. § 507(a)(8).................................................................................................. *passim*

Bankruptcy Local Rule 3007-1(b) ......................................................................................28

Cal. Civ. Proc. Code § 338(a) ............................................................................................25

Cal. Evid. Code § 623 ......................................................................................................19

Cal. Pub. Util. Code § 748.5 ..............................................................................................9

Cal. Pub. Util. Code § 799 ..........................................................................................18, 29

Cal. Pub. Util. Code § 890(a)..............................................................................................6

Cal. Pub. Util. Code § 6354(b) ............................................................................................6

Fed. R. Bankr. P. 3001(c)(2)(A) ........................................................................................29

Fed. R. Bankr. P. 3007(d) ..................................................................................................14

Fed. R. Bankr. P. 3007(e) ............................................................................................14, 15

Health & Saf. Code § 38500 *et seq*.......................................................................................8

San Jose Municipal Code § 4.68.010..................................................................................4

San Jose Municipal Code § 4.68.020..............................................................................4, 17

San Jose Municipal Code § 4.68.050..................................................................................4

San Jose Municipal Code § 4.68.070..................................................................................4

San Jose Municipal Code § 4.68.110..................................................................................4

San Jose Municipal Code § 4.68.140................................................................................26

San Jose Municipal Code § 4.68.200..................................................................................4

San Jose Ordinance No. 15879............................................................................................5

San Jose Ordinance No. 15880............................................................................................5

San Jose Ordinance No. 28179............................................................................................8

San Jose Ordinance No. 28720............................................................................................8

**<u>Treatises</u>**

*Collier on Bankruptcy* § 502.02 (15th ed. 1991) .........................................................15

Wright and Miller, *Federal Practice and Procedure,* § 1473 (1971).............................24

**TO:    (A) THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) THE AFFECTED CLAIMANT; AND (D) OTHER PARTIES ENTITLED TO NOTICE:**

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, "**PG&E**" or the "**Debtors**" or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") hereby submit this One Hundred Thirteenth Omnibus Objection (the "**Objection**") to the Proofs of Claim (as defined below) identified in the column headed "Claims To Be Disallowed and Expunged" on <u>**Exhibit 1**</u> annexed hereto, filed by the City of San Jose ("**the City**" or "**San Jose**").

This Objection addresses all or part of six Proofs of Claim.  Four – Claims Nos. 77225 (Utility) and 78534 (PG&E Corp.)[1], and Claims Nos. 78745 (Utility) and 78623 (PG&E Corp),[2] were filed October 21, 2019 (collectively, the "**Initial Claims**"). The other two – Claims Nos. 105680 (PG&E Corp.) and 105681 (Utility) – were filed June 5, 2020 (collectively, the "**Late New Claims**" and, together with the Initial Claims, the "**City of San Jose Claims**").[3]

In support of this Objection the Reorganized Debtors submit the Declarations of Cecilia Guiman ("**Guiman Decl.**") and Grant Guerra ("**Guerra Decl.**") and a Request for Judicial Notice ("**RJN**"), filed contemporaneously.

---

[1] All claims against PG&E Corp. are duplicates of identical claims against the Utility. They present no factual or legal basis for liability on the part of PG&E Corp. and are being objected to on that ground. *See* Section IV.A below. In general, the discussion and descriptions (including amounts) of the City of San Jose Claims in this Objection focus on the several claims filed against the Utility only.

[2] This Objection addresses only part of Claims Nos. 78745 and 78623, specifically the claims asserted in paragraph 1 (D) of Exhibit A to each of those Claims.  The balance of Claims Nos. 78745 and 78623 concern an entirely different subject matter than addressed here and are excluded from the definition of the "City of San Jose Claims" as used in this Objection.  *See* <u>**Exhibits 4-5**</u> to this Objection.  The Reorganized Debtors reserve all rights, arguments, defenses, and objections with respect to those claims, including the right to object to the balance of those claims at a later date.

[3] <u>**Exhibit 2**</u> annexed hereto is a table presenting the claim numbers and the time periods, nature, and alleged basis for those claims.  The filed Initial Claims are annexed hereto as <u>**Exhibits 3, 4, 5, and 6**</u>, respectively, and the Late New Claims as <u>**Exhibits 7 and 8**</u>.

## I. PRELIMINARY STATEMENT

The City of San Jose Claims may be divided into two categories based on the legal foundation on which they rest.

- The "**UUT Claims**" are based on San Jose's Utility Users Tax ("**UUT**"). The Initial Claims include UUT Claims (paragraph 1, subparagraphs A thru C, of the Addendum to Claims Nos. 77225 and 78534 and paragraph 1 (D) of Exhibit A to Claims Nos. 78745 and 78623). The Late New Claims restate those same UUT Claims (paragraph 1, subparagraphs A thru C, of the Addendum) and add (in Addendum paragraph 1, subparagraphs D and E) previously unasserted UUT Claims based on "Climate Credits" (defined at page 9 below). )

  In the Initial Claims, the City alleges that PG&E, in its capacity as statutory collection agent for the City, under-assessed and therefore under-collected UUT that the City levied upon its constituents who use electricity and gas in the City and who are billed for charges for those commodities by PG&E. Although the City does not specify the basis for the UUT Claims in the Initial Claims, the amounts claimed correspond generally to prior claims asserted informally by the City in two September 9, 2019 letters concerning PG&E's exclusion of certain types of charges from the tax base used to calculate the UUT– namely, the Franchise Fee Surcharge, the Gas Public Purpose Program surcharge, and the City Franchise Surcharge. The City seeks approximately $19 million on these claim elements, inclusive of interest and penalties through December 31, 2020.

  In the Late New Claims, the City asserts for the first time a claim for under-collection of UUT based on PG&E's application of state-mandated climate credits to customer charges prior to the calculation of the UUT. The City seeks approximately $9.2 million on this claim element, inclusive of interest and penalties through May 12, 2020. The City provides virtually no information to support its claims, including the complete absence of documentation.

- The "**Franchise Fee Claims**" are asserted solely in the Late New Claims, specifically in paragraph 1, subparagraphs F and G, of the Addendum to each of the Late New Claims. The City alleges that the Utility failed to pay the full amounts due under the franchise agreement between the parties. The franchise agreement, memorialized in a series of City ordinances,

establishes a fee on the Utility for use of public streets to provide gas and electricity to City residents. The franchise fee is based on a percentage of the Utility's "gross receipts" from the sale of gas or electricity to the Utility's customers within the corporate limits of the City. The City claims that the Utility improperly deducted state-mandated climate credits from its gross receipts before calculating the required fees. The City seeks approximately $2.8 million, inclusive of interest and penalties through May 12, 2020, but provides no further information or documents to support the claims.

As shown below, the City of San Jose Claims are undermined by the plain language of the local ordinances upon which they rely; are contrary to applicable federal, bankruptcy, and state law, and directives and approvals of the California Public Utilities Commission ("**CPUC**"); are barred by a prior settlement agreement; and run afoul of the U.S. and California Constitutions. Further the claims that San Jose asserts for the first time in the Late New Claims are time-barred and should be disallowed on that basis alone.

For decades, including to the present, PG&E has handled the billing practices at issue here with consistency and unobstructed transparency, has sought and obtained CPUC guidance and approval for those practices, has responded timely and cooperatively to requests of San Jose for information, including for two relatively recent audits the City conducted of PG&E's records, and has steadfastly complied with all legal requirements.

## II. JURISDICTION

This Court has jurisdiction over this Objection under 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are section 502 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### III.     BACKGROUND[4]

#### The Utility User Tax Ordinance

On July 6, 1970, the San Jose City Council adopted Ordinance No. 15285, codified as San Jose Municipal Code ("**SJ Municipal Code**") § 4.68 (Electricity, Thermal Energy, Energy, Gas, Telephone, and Water Use) (the "**UUT Ordinance**").  The avowed purpose of the UUT Ordinance is to provide "revenue for the usual current expenses of the city.  The provisions of this chapter are not enacted for regulatory purposes."  SJ Municipal Code § 4.68.010.  To achieve this goal, the City imposed a tax on its constituents for using telephones, gas, water, and electricity.

Regarding gas and electricity, the levied tax is "five percent of the *charges billed* for such [electricity or gas], including charges for service, transportation and delivery."  SJ Municipal Code §§ 4.68.050(A) [electricity] and 4.68.070(A) [gas] (emphasis added).  Although it contains an extensive definition provision, the UUT Ordinance does not define the term "charges billed."  *See* SJ Municipal Code § 4.68.020.  The utility supplying the gas or electricity is directed to bill and collect the tax "in accordance with [its] regular billing practice."  *Id*. § 4.68.110(A).  The UUT Ordinance further specifies that, "Any tax required to be paid by a service user under this chapter shall be deemed a debt owed by the service user to the city."  *Id*. § 4.68.200(A).  It also purports to impose a debt upon service suppliers to the City for taxes that were required to be collected but were not billed.  *Id*. § 4.68.200(B)(1).

Six months after enactment of the UUT Ordinance, on January 14, 1971, San Jose and PG&E signed an "Implementation Agreement" to carry out the statutory provisions.  In the agreement, the

---

[4] The facts that follow are based on the Declarations of Cecilia Guiman ("**Guiman Decl.**") and Grant Guerra ("**Guerra Decl.**") and the accompanying Request for Judicial Notice ("**RJN**").

The San Jose Claims encompass a complicated factual history that spans half a century. It entails events, legislative enactments, regulatory actions, and other related subjects that bear upon the various elements of the claims and this Objection. We narrate the background in chronological format as the most effective way to describe the factual and historical context for understanding the legal relationship of the parties. It also bears noting that, in light of the long history, some potential witnesses are no longer available, memories have faded, various print and electronic records have been discarded in the normal course of retention policies, and voluminous paper files, stored in crowded warehouses, are not easily accessible. The following facts therefore are a preliminary synopsis drawn from reasonably accessible materials and not intended to embody all relevant information, but to capture instead the essence of the legal and financial relationship of the parties and relevant regulatory oversight.  PG&E reserves the right to augment the facts at the appropriate time.

parties committed to "establish [implementation] procedures" that "are mutually satisfactory" and "in accordance with the rules and tariffs of the California Public Utilities Commission." It appears that the parties never amended the Implementation Agreement in writing to specify any additional implementation procedures. Guiman Decl. ¶ 2, Exhibit 1.

From the enactment of the UUT Ordinance through the present, for purposes of calculating the UUT, PG&E has consistently treated "charges billed" as the specific amounts ratepayers are *obligated to pay for energy services* they receive from PG&E, as approved through tariff and advice letter filings with the CPUC. Guiman Decl. ¶ 3.[5]

### The Franchise Fee Agreements

On September 20, 1971, San Jose and PG&E became signatories to separate but substantially identical gas and electric franchise agreements (initially memorialized in San Jose Ordinances Nos. 15879 and 15880, respectively). The franchise agreements allow PG&E to place infrastructure on public rights of way to deliver energy services to customers in the City, in exchange for payment to the City of a franchise fee. As stated in the governing ordinances, franchise fees are calculated as a specified percentage of PG&E's "gross receipts," defined as "all gross operating revenues *received or receivable . . . from the sale* of gas [or electricity] *to . . . customers with points of service within the corporate limits of the City*" (emphasis added) ("**Franchise Fees**"). San Jose later amended the underlying ordinances and thus the franchise agreements, but never changed the definition of "gross receipts."[6] Guiman Decl. ¶ 4, Exhibits 2 and 3**.**

---

[5] The UUT Ordinance expressly subordinates its provisions to CPUC actions whenever there is a conflict between the two: "Nothing contained in this chapter is intended to conflict with applicable rules, regulations or tariffs of any service supplier subject to the jurisdiction of the California Public Utilities Commission. In the event of any conflict, the provisions of said rules, regulations or tariffs shall control." SJ Municipal Code § 4.68.030. The Implementation Agreement has a similar provision: "In order to cooperate with the City in the administration of [the UUT Ordinance] . . . it is necessary to establish procedures . . in accordance with applicable rules and tariffs on file with the California Public Utilities Commission." Guiman Decl. ¶ 2, Exhibit 1 at 2. As will be shown, several actions of the CPUC conflict with the manner in which San Jose seeks to apply the UUT Ordinance. *See, e.g.*, *Colich & Sons v. Pac. Bell*, 198 Cal. App. 3d 1225 (tariffed rates have force and effect of law).

[6] The gas franchise agreement was amended by these subsequent ordinances: 21676 (June 5, 1984), 26913 (June 10, 2003), and 28719 (February 9, 2010). In parallel, the electric franchise agreement was amended by ordinances: 21677 (June 5, 1984), 26914 (June 10, 2003), and 28720 (February 9, 2010).

**The Municipal Public Lands Use Surcharge Legislation**

In 1993, California enacted Chapter 2.5 of the State's Public Utilities Code, titled Municipal Public Lands Use Surcharge, §§ 6350 through 6354 (the "**Surcharge Act**"). The legislation addressed the loss of franchise fee revenue to municipalities from the restructuring of the gas and electricity markets as consumers began purchasing energy from new providers that did not directly deliver energy to the customers, relying on utilities (like PG&E) already in place. Request for Judicial Notice ("**RJN**") ¶ 1, Exhibit A at 9-10 (CPUC Decision 16-04-026). The Surcharge Act required energy "transporters" like PG&E to collect and remit to municipalities franchise fee surcharges from direct access and community choice aggregation customers that obtain energy from Energy Services Providers (ESPs) ("transportation customers" under the statute), and to remit the collections to municipalities "in the manner and at the time prescribed for payment of franchise fees" in the applicable franchise agreement. Cal. Pub. Util. Code § 6354(b).

On April 11, 1994, following passage of the Surcharge Act, PG&E notified San Jose that it intended to list the new surcharge as a separate item on customer bills, called the "**Franchise Fee Surcharge**." PG&E has since followed that practice consistently, always treating the surcharge as a state mandated item unrelated to the gas or electricity it sells to customers. Guiman Decl. ¶ 5, Exhibit 4.

**Gas PPP Surcharges**

On September 29, 2000, California passed the Natural Gas Surcharge Act, imposing a surcharge on consumed natural gas. *See* Article 10 (Sections 890-900) in Chapter 4 of Division 1, Part 1 of the California Public Utilities Code. The central purpose of this surcharge was to fund gas-related public purpose programs ("**Gas PPP**"), like low-income customer assistance, cost-effective energy efficiency, and public interest research and development. Cal. Pub. Util. Code § 890(a); Guiman Decl. ¶ 6.

\*\*\*

On May 29, 2002, San Jose initiated an audit of the various collection and related accounts that PG&E maintained relative to fees and taxes. The initial focus was to ensure past compliance and offer

---

Guiman Decl. ¶ 4. The **"Franchise Fee Ordinance"** refers to San Jose Municipal Code section 15.40.410, titled Franchise Fees, and its amendments.

appropriate guidance for any recommended changes in record keeping. It later expanded the scope of the audit to include Franchise Fees and Franchise Fee Surcharges. Guiman Decl. ¶ 7.

On August 19, 2004, while the San Jose audit continued, the CPUC issued Decision 04-08-010 regarding the Gas PPP surcharge. Among other things, the CPUC ordered that utilities "identify the gas surcharge as a separate line item" on customer billings, "exclude gas surcharge amounts in determining franchise payments," and unbundle "public purpose program costs from their rates." RJN ¶ 2, Exhibit B at 48 (¶ 1), 49 (¶ 11), 50 (¶ 13).

Accordingly, in March 2005, in compliance with the CPUC order, PG&E began to identify the Gas PPP surcharge as a separate line item on customer bills, separate from the charges billed upon which UUT is calculated. The PPP is remitted quarterly to the California Department of Tax and Fee Administration, formerly known as the Board of Equalization. Guiman Decl. ¶ 6. PG&E notified San Jose that as a result of how the Gas PPP surcharge is handled, the City would see a reduction in UUT collections. Guiman Decl. ¶ 8.

In July 2005, San Jose requested that PG&E include the Gas PPP surcharge in the tax base for calculating the UUT. PG&E declined this request, explaining that Gas PPP surcharges are pass-through funds and not part of the revenue upon which UUT is calculated. In addition, PG&E referred the City to CPUC Decision 04-08-010, which had, among other things, determined that Gas PPP funds were not part of "utility revenues" and also specifically determined that the Gas PPP surcharge was not subject to franchise fees. That effectively ended the matter, and the PG&E practice of treating the Gas PPP surcharge as a separate line item on customer bills that is not part of the UUT tax base has continued to this day (without complaint from San Jose until after the filing of these bankruptcy cases). Guiman Decl. ¶ 9.

### The 2005 State Court Litigation

On December 22, 2005, San Jose filed a civil action against PG&E in Santa Clara County Superior Court seeking various relief, including a declaration of rights (the "**Santa Clara Action**"). RJN ¶ 6, Exhibit F (Complaint). Distilled, San Jose alleged that the methodology PG&E used to calculate Franchise Fee Surcharges due San Jose under the Surcharge Act in certain respects violated the Surcharge Act, as well as local laws, including the Franchise Fee Ordinances. San Jose did not assert

any claim or include any allegation based on the exclusion of the Gas PPP from the UUT tax base, an issue it had raised only months earlier that year. Nor did San Jose raise any other UUT issue or Franchise Fee issue it could have raised, including any of those it raises in the San Jose Claims now.

After granting PG&E's motion for summary judgment, the Superior Court on March 28, 2007 entered judgment in favor of PG&E and dismissed the complaint. San Jose appealed. Guerra Decl. ¶ 3.

### The Global Warming Solutions Act of 2006 and Climate Credits

On September 27, 2006, California enacted Assembly Bill 32 ("**AB 32**"), the Global Warming Solutions Act of 2006 (codified at Health & Saf. Code § 38500 et seq.). Among other things, AB 32 required the California Air Resources Board ("**CARB**") to develop a Scoping Plan to reduce Greenhouse Gas emissions ("**GHGs**") to 1990 levels by 2020. RJN ¶ 7(a). In response, the CARB commenced a rulemaking and program development process that eventually culminated in a Cap-and-Trade program. RJN ¶ 7(b).

### Settlement of the Santa Clara Action

In January 2010, PG&E and San Jose settled the Santa Clara Action while it was still on appeal. The general release given by San Jose in the settlement agreement included a waiver under California Civil Code section 1542 and encompassed all "matters which were raised and which could have been raised in the Complaint or Appeal." In addition, the settlement agreement obligated San Jose to cooperate with PG&E in seeking CPUC approval for a new surcharge that San Jose wanted PG&E to collect from its gas and electric customers within San Jose's boundaries. Guerra Decl. ¶ 4, Exhibit 1, ¶¶ 3(a), 6.

On February 23, 2010, pursuant to the settlement, the San Jose City Council adopted amendments to the then-existing electric and gas franchise agreements, Ordinance Nos. 28179 and 28720, requiring PG&E, subject to CPUC approval, to collect an additional three-tenths of one percent (0.30%) of PG&E's gross annual receipts from both its gas and electricity customers within the City (the "**City Franchise Surcharge**" or "**CFS**"). Guiman Decl. ¶ 10.

PG&E and San Jose coordinated to obtain CPUC approval of the CFS. Central to the approval process, PG&E submitted Advice Letter 3110-G/3651-E, dated April 5, 2010, to the Commission, which included proposed customer bill formats reflecting the surcharge. PG&E worked with the City on the

customer bill format relating to the billing of the surcharge, including how the surcharge would be presented on customer bills and how to address any customer inquiries on the CFS.  The PG&E mockup bill included with Advice Letter 3110-G/3651-E contained a special bill message notifying customers that information on the CFS was available by contacting City of San Jose Customer Service, providing a City telephone number for that purpose. The mockup bills identified the surcharge as a separate line item, apart from energy charges. They also disclosed that the proposed new .30% surcharge—as well as the Gas PPP surcharge—were excluded from UUT calculations. PG&E copied San Jose on these submissions. Guiman Decl. ¶ 11, Exhibit 5**,** Attachment A.  Effective May 5, 2010, the CUPC approved the Advice Letter. *Id*. at 1.

## Climate Credits

On December 17, 2010, in response to AB 32, the CARB adopted a Cap-and-Trade program to place an upper limit on statewide GHGs.  Health & Saf. Code, § 38501; Cal. Code Regs. tit. 17, § 95801 et seq.  The program established allowances equal to the total amount of permissible GHGs (i.e., the "**cap**"), and auction procedures and a trading system by which permits must be purchased to allow the capped GHGs (i.e., the "**trade**").  RJN ¶ 7(b). In a nutshell, California periodically distributes a number of GHG allowances among each of the three capped sectors (industrial, utility, and transportation).  The utility sector receives free (consigned) allowances that utilities must sell at auction and use the revenues to benefit their ratepayers.  RJN ¶ 7(c). AB 32 directed the CPUC to develop a methodology for electric and gas utilities subject to its jurisdiction, including PG&E, to distribute these revenues to customers. Cal. Pub. Util. Code § 748.5.

On December 28, 2012, the CPUC issued Decision 12-12-033, regarding Cap-and-Trade allowance revenue allocation for Investor-Owned Electric Utilities (like PG&E). RJN ¶ 3, Exhibit C (Decision 12-12-033).  Among other things, the CPUC ordered that a portion of electric utility auction revenues be distributed to electricity customers as semi-annual, on-bill credits ("the **Climate Credits**"). *Id*. at 205-206.  It also directed that the Climate Credits "be netted against the customer's bill for that month" and used as a "credit against their electricity purchases."  *Id*. at 119, 182.  The Commission intended Climate Credits to "result in a decrease in electricity bills."  *Id*. at 181.

On November 18, 2013, PG&E submitted to the CPUC Advice Letter 4318-E in compliance with CPUC Resolution E-4611, showing, among other things, how it intended to treat Climate Credits in its customer billings. The Advice Letter specified that members of the public may protest the submissions. The sample bills reflect a climate credit adjustment of UUT returned to customers. The Advice Letter became effective March 5, 2014. Guiman Decl. ¶ 12, Exhibit 6.

As a result, in 2014, PG&E began distributing the first of its semi-annual (April and October) Climate Credits to California customers who receive electric service. The Climate Credits are applied twice a year to electric bills (in April and October), and as later determined, once (in April) to gas bills (except when CPUC in 2018 mandated September). Customers using both electric and gas service receive both credits. Guiman Decl. ¶ 13.

In May 2014, PG&E by letter alerted municipalities in its service territory, including San Jose, that Climate Credits will reduce their UUT remittances, a reduction that would be included in the line item "Special Adjustments" in the monthly UUT statements PG&E sends them. The May correspondence also included the monthly UUT statement. Guiman Decl. ¶ 13, Exhibit 7.

On November 25, 2014, PG&E sent San Jose a second letter virtually identical to the May 23, 2014 letter, repeating that Climate Credits will reduce UUT remittances. The letter also included the monthly UUT statement. Guiman Decl. ¶ 15, Exhibit 8.

On October 22, 2015, the CPUC issued Decision 15-10-032 to specify procedures to follow for the Cap-and-Trade Program regarding *gas* allowance proceeds. Among other things, the CPUC concluded it "is reasonable to return natural gas allowance proceeds, net of administrative and outreach costs, to customers as a bill credit" and that the "credit should appear as a line-item on residential customer's bills." RJN ¶ 4, Exhibit D at 59 ¶ 6. The CPUC intended that the gas Climate Credit "provide a meaningful bill impact to customers." *Id.* at 38.

In March 2016, San Jose took steps to conduct an audit of PG&E records to "verify compliance" with San Jose's "Electricity, Thermal Energy, Gas, Telephone, and Water Use Tax Ordinances." Guiman Decl. ¶ 16.

On March 22, 2018, CPUC issued Decision 18-03-017 (Natural Gas GHG OIR). Among other things, the CPUC concluded that "Natural gas utilities should distribute GHG proceeds using the

procedures adopted in D.15-10-032, as updated by this decision." It further ordered that the utilities "must continue to follow the mandates adopted in Decision 15-10-032 unless explicitly superseded by this decision." RJN ¶ 5, Exhibit E.

After conferring with and receiving confirmation from CPUC staff about how to account for state and local charges in calculating the UUT in PG&E customer billings, on or about November 30, 2018, PG&E wrote municipalities, including San Jose, to inform them that it had begun processing the gas Climate Credit, and, like the electric Climate Credit, it would reduce UUT remittances. PG&E stated that: "The California Climate Credits reduce customers' overall electric and gas charges, which will reduce the UUT remittance to jurisdictions. . . . Customers will receive gas and electric climate credits in April and electric climate credits in October through 2020." The letter also included the monthly UUT statement. Guiman Decl. ¶ 17, Exhibit 9. PG&E again informed San Jose that the Climate Credits would reduce UUT remittances in in May 2019, November 2019, May 2020, June 2020, and July 2020. Guiman Decl. ¶ 17.

### The Bankruptcy Case Filings

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. Prior to the Effective Date (as defined below), the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner was appointed in either of the Chapter 11 Cases. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b). Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263].

As of the Petition Date, San Jose had commenced no legal action or other proceeding regarding any alleged shortfall in UUT collections or Franchise Fee underpayments or to challenge the established methods PG&E used to calculate those payments. Guiman Decl. ¶ 18.

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for*

*Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806] (the "**Bar Date Order**"). The Bar Date Order set the deadline to file all proofs of claim (each, a "**Proof of Claim**") in respect of any prepetition claim (as defined in section 101(5) of the Bankruptcy Code), including all claims of Fire Claimants (as defined therein), Wildfire Subrogation Claimants (as defined therein), Governmental Units (as defined in section 101(27) of the Bankruptcy Code), and Customers, and for the avoidance of doubt, including all secured claims and priority claims, against either of the Debtors as October 21, 2019, at 5:00 p.m. Pacific Time (the "**Bar Date**"). The Bar Date later was extended solely with respect to unfiled, non-governmental Fire Claimants to December 31, 2019 [Docket No. 4672][7]; and subsequently with respect to certain claimants that purchased or acquired the Debtors' publicly held debt and equity securities and may have claims against the Debtors for rescission or damages to April 16, 2020 [Docket No. 5943].

\*\*\*

On September 9, 2019, San Jose sent PG&E two similar letters. One letter alleged a UUT underpayment for gas billings based on the established PG&E practice of excluding the Franchise Fee Surcharge, the Gas PPP surcharge, and the CFS from the tax base. The second letter alleged UUT underpayment for electricity billings based on the established PG&E practice of excluding the Franchise Fee Surcharge and CFS from the tax base. The letters provided calculations for alleged UUT underpayments for gas and electricity billings for the period April 2014 through March 2017, including claimed interest and penalties, totaling $8,643,219 ($7,481,306 for gas and $1,161,913 for electricity). Guiman Decl. ¶ 19, Exhibit 10. Neither letter mentioned the established billing practice of excluding the Climate Credits from the UUT base.

Other than an issue San Jose raised in 2005 about how PG&E accounted for the Gas PPP in calculating the UUT, which PG&E apparently addressed and resolved at the time, San Jose did not complain about the established and longstanding practices of PG&E in calculating the UUT, including

---

[7] The claims of Fire Claimants are being administered through the Fire Victim Trust, and the claims of Wildfire Subrogation Claimants through the Subrogation Wildfire Trust, in accordance with the Plan.

1  how in its calculations PG&E accounted for the Franchise Fee Surcharge, the Gas PPP, and the CFS,

2  until the September 9, 2019 correspondence (**Exhibit 10**). Guiman Decl. ¶ 20.

3  <center>**The Initial Claims**</center>

4  On October 21, 2019, San Jose filed the Initial Claims—identical proofs of claim against the

5  Utility and PG&E Corp. based on alleged UUT shortfalls. The proofs of claim asserted $8,550,424.81

6  in alleged underpayment of gas billings for April 1, 2014 through March 2017 and $1,324,966.35 in

7  alleged underpayment of electrical billings for the same time period. Those amounts corresponded with

8  the amounts claimed in the September 9, 2019 letters, save slight increases that appear to reflect

9  additional claimed interest and penalties. The proofs of claim also asserted an additional estimated

10  amount of $8,700,000 covering a subsequent time period, April 1, 2017 through January 28, 2019,

11  presumably for both gas and electric billings during that time. The City's proofs of claim did not explain

12  the basis for the claims or provide any other specifics, nor did they provide supportive documentation.

13  *See* Exhibits 3-6 to this Objection.

14  On May 12, 2020, San Jose sent two similar letters to PG&E. The first letter alleged

15  underpayments of Franchise Fees for the period April 2014 through October 2019 based on the exclusion

16  of Climate Credits from calculation of PG&E's "gross receipts." The second alleged UUT

17  underpayments for the same time period based on the exclusion of Climate Credits from PG&E's "gross

18  charges billed for gas or electricity." Guiman Decl. ¶ 21, Exhibit 11. Neither claim was included in the

19  Initial Claims filed on the Bar Date.

20  The May 2020 letters were the first time San Jose complained about how PG&E accounted for

21  customer Climate Credits in either calculating the UUT or what was due San Jose under the Franchise

22  Fee agreements. Guiman Decl. ¶ 22.

23  On May 27, 2020, PG&E responded to the two May 12, 2020 letters. In addition to disagreeing

24  with the merits of the new claims, PG&E pointed out that the City did not include the pre-petition portion

25  of the Climate Credit-based claims in the Initial Claims or explain the omission. Guerra Decl. ¶ 5,

26  Exhibit 2.

27  <center>**The Late New Claims**</center>

28  On June 5, 2020, more than seven months after the Bar Date, on the eve of Plan confirmation,

and in apparent response to the PG&E letter of May 27, 2020, San Jose filed the Late New Claims—identical amended proofs of claim against the Utility and PG&E Corp. The Late New Claims repeated the Initial Claims and added the two Franchise Fee Claims and two new UUT Claims, both based on alleged improper application of the Climate Credits. Again, other than the reference to Climate Credits, San Jose provided no specifics or any supporting documentation. Nor did San Jose provide any excuse for, or seek any approval of, its untimely filing. *See* **Exhibits 7-8** to this Objection. And since filing the Late New Claims, San Jose has not sought approval for the untimely filing, now more than two years after the Bar Date.

Two weeks later, by Order dated June 20, 2020 [Docket No. 8053], the Bankruptcy Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be further modified, amended or supplemented from time to time, and together with any exhibits or schedules thereto, the "**Plan**"). The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**"). *See* Dkt. No. 8252.

The Reorganized Debtors file this Objection, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rule 3007(d), Bankruptcy Local Rule 3007-1, and the *Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections*, dated June 30, 2020 [Docket No. 8228] (the "**Omnibus Objections Procedures Order**"), seeking entry of an order disallowing and expunging the City of San Jose Claims, for which the Reorganized Debtors are not liable.

## IV. SPECIFICATION OF GROUNDS OF OBJECTION and ARGUMENT

The Omnibus Objections Procedures Order supplemented Bankruptcy Rule 3007(d) to permit the Reorganized Debtors to file objections to more than one claim if "[t]he claims seek recovery of amounts for which the Debtors are not liable" or "[t]he claims are objectionable on some other common basis under applicable bankruptcy or non-bankruptcy law . . . ." Omnibus Objections Procedures Order, ¶ 2(C)(iii), (vii). Bankruptcy Rule 3007(e) requires that an omnibus objection must list the claimants alphabetically and by cross-reference to claim numbers. The Reorganized Debtors and their professionals have reviewed each of the City of San Jose Claims identified on **Exhibit 1** and have determined that each represents a Proof of Claim for which the Reorganized Debtors are not liable.

There is only one claimant, the City, and claim numbers and amounts are identified in accordance with Bankruptcy Rule 3007(e). Furthermore, in accordance with the Omnibus Objections Procedures Order, the Reorganized Debtors have sent individualized notices to the City as the holder of the City of San Jose Claims. The Reorganized Debtors submit that several of the following specific objections can be resolved as a matter of law, while some presumably involve factual disputes that will require an evidentiary hearing following discovery.

A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).[8] Section 502(b)(1) of the Bankruptcy Code provides in relevant part that a claim may not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Once the objector raises "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02 at 502-22 (15th ed. 1991) then "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence," *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)* 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996). "[T]he ultimate burden of persuasion is always on the claimant." *Holm*, 931 F.2d at 623 (quoting King, *Collier on Bankruptcy*); *see also Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000); *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (BAP 9th Cir. 1993); *In re Fidelity Holding Co.,* 837 F.2d 696, 698 (5th Cir. 1988). As demonstrated below, San Jose cannot meet its burdens of proof.

The specific grounds for objection are stated in Sections A – K, as follows:

---

[8] Upon the Reorganized Debtors' request, the deadline under Section 7.1 of the Plan for the Reorganized Debtors to bring objections to Claims initially was extended through and including June 26, 2021 (except for Claims of the United States, which deadline was extended to March 31, 2021) [Docket No. 9563]. That deadline has been further extended through June 21, 2022 [Docket No. 11533], except with respect to the claims of certain state and federal governmental entities not applicable to this Objection.

### A. The City Has No Basis to Assert Claims Against PG&E Corp.

The legal relationship that San Jose has with the Debtors is exclusively with the Utility, the legal entity that provides electric and gas services to California customers. The City has no legal relationship with PG&E Corp. and provides no facts in its filings to suggest otherwise. Nor could it, as the undisputed facts show.

The UUT Ordinance imposes tax collection duties on "service suppliers" of electricity and gas, which it defines as a party that "sells electrical energy . . . in the city" and that "sells gas which is delivered through mains or pipes . . . in the city." PG&E Corp. does neither. The Utility, its subsidiary, does the selling and delivery. Further, the 1971 Implementation Agreement, designed to implement the UUT Ordinance, is between the City and "Pacific Gas and Electric Company," the subsidiary. Similarly, the Franchise Fee Ordinances, which form the basis for two of the Late New Claims, define the "Grantee" of the franchise as "Pacific Gas and Electric Company," the subsidiary.

Not surprisingly, the communications between the parties, exchanges of information, audits of the books and records, and described regulatory proceedings and actions recounted in the fact statement, involve the subsidiary only.

San Jose filed Claim Nos. 78534, 78745, and 105680 against PG&E Corp. in these Chapter 11 Cases without any factual and legal basis, and those claims should be summarily disallowed.

### B. The Plain Language of the UUT Ordinance Bars the UUT Claims in Their Entirety

The plain wording of the UUT ordinance—"charges billed for . . . [electric or gas services], including charges for service, transportation and delivery"—authorizes assessment of the UUT only on charges *billed* to customers *for energy and related services.*

"Charge" as a noun carries the primary definition of "*the price* demanded for something." Merriam-Webster Dictionary (emphasis supplied). "Charge" as a transient verb has two primary meanings: "to fix or ask as fee or *payment*" or "to ask *payment* of." Merriam-Webster Dictionary (emphasis supplied). "Billed" is the past simple and past participle of "bill," which according to the Cambridge Dictionary means: "to give or send someone a bill asking for *money that they owe* for a product or service." (Emphasis supplied.)

These straightforward definitions combine to produce a plain meaning of "charges billed" as a *fixed amount that one party is asking another to pay*. From enactment of the UUT Ordinance until the present, PG&E has performed in conformity with this plain meaning by calculating the UUT only on the actual charges billed. PG&E has not calculated UUT on billing credits, like the Climate Credits, as those credits reduce the amounts customers are billed or required to pay.

"Charges billed" for energy and related services also do not include additional state or city mandated surcharges or fees, such as the Franchise Fee Surcharge, the Gas PPP surcharge, or the CFS —as those surcharges and fees are not for energy that PG&E supplies or related services.

The City has had decades of opportunity to define these essential words in some manner. Yet, in defining statutory terms for the UUT Ordinance, San Jose failed to provide *any* definition for "charges billed" or delineate *any* methodology for assessing the tax base. SJ Municipal Code § 4.68.020.[9] At a minimum, therefore, and alternatively, the UUT Ordinance is ambiguous and, as a matter of law, must be interpreted against the City in its role as a taxing agency. *City of Los Angeles v. Belridge Oil Co.*, 42 Cal. 2d 823, 827 (1954); *see also 926 North Ardmore Ave. v. Cnty. of Los Angeles*, 3 Cal. 5th 319, 328 (2017) (quoting *Edison California Stores v. McColgan*, 30 Cal. 2d 472, 476 (1947) (court may not extend statutory provisions, "by implication, beyond the clear import of the language used.")).[10]

### C. The Plain Language of the Franchise Fee Ordinances Bars the Franchise Fee Claims in Their Entirety

Under the Franchise Fee Ordinances, the amount due for annual franchise fees is calculated on PG&E's "gross receipts," defined as "all gross operating revenues *received or receivable* . . . *from the sale of gas [and electricity] to* . . . *customers with points of service within the corporate limits of the City*" (emphasis added). Guiman Decl., Exhibits 2 & 3 at 2. The plain meaning of those terms

---

[9] Nor, as shown, did the City after July 2005, including in the later-filed Santa Clara Action or before the Petition Date, ever question or challenge PG&E's openly disclosed methodology for calculating UUT consistent with the plain meaning of "charges billed." The City's belated and distorted interpretation of "charges billed" cannot be squared with the plain language and reinforces the correctness, and even more so the reasonableness, of PG&E's interpretation of the controlling language.

[10] A tax on Climate Credits would allow San Jose to grab benefits the California state legislature mandated exclusively for statewide energy consumers, raising potential state preemption issues. PG&E reserves the right to raise preemption as a further basis for objection, depending on the outcome of discovery.

encompasses only amounts actually paid by or payable from utility customers "from the sale" of energy to them. PG&E has consistently paid franchise fees based on this meaning.

In the Late New Claims, however, San Jose takes the position that PG&E should include the Climate Credits as part of its "gross receipts." In enacting AB 32, the legislature created a separate trading market for the selling and purchasing of GHG allowances that generates a separate source of revenue apart from the sale of energy and related services to energy customers. Those revenues come from third-party facilities that acquire permits in compliance with state law and help carry out the essential purpose of AB 32 to reduce GHG emissions. They do not derive from the sale of energy to customers, which are entirely separate market transactions. Any additional revenues PG&E receives as a result of AB 32 thus stem from the auction of allowances in the open market created by the California Cap-and-Trade program and not from the sale of energy to ratepayers. Accordingly, they are not part of "gross receipts" as defined in the Franchise Fee Ordinances.

**D.      The California Public Utilities Code Bars the UUT Claims**

Section 799 of the California Public Utilities Code ("**Section 799**") and applicable decisional law bar the UUT Claims in their entirety.

Section 799 addresses "an issue of statewide concern," Cal. Pub. Util. Code § 799(c), and applies to "all taxes enacted by any local jurisdiction." *Id*. § 799(a). It declares that utilities "shall have no duty to independently investigate or inquire with the local jurisdiction concerning the validity of the tax ordinance" or "be liable to any customer as a consequence of collecting the tax." *Id.* §§ 799(a)(1), (2). It further declares that utilities "shall not be named as a party" in any actions regarding the collection, refund, or invalidation of the taxes, including for declaratory relief. *Id.* § 799(a)(4).

In *City of Torrance v. Southern California Edison Co.*, the Court of Appeal ruled that Section 799 immunizes energy providers like PG&E from liability to consumers arising from the collection of taxes on behalf of local municipalities, and also precludes local governments from seeking to hold energy providers like PG&E liable for any failure to collect those taxes. 61 Cal. App. 5th 1071, 1090 (2021). By claiming otherwise, the City is impermissibly running afoul of a state mandate. *See, e.g.*, *Cal. Fed. Savings & Loan Assn. v. City of Los Angeles*, 54 Cal. 3d 1, 16-17 (1991).

### E. The Reorganized Debtors Have Several Equitable Defenses to the City of San Jose Claims

#### 1. Equitable Estoppel

The California Evidence Code provides: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Cal. Evid. Code § 623. Equitable estoppel "rests firmly upon a foundation of conscience and fair dealing." *City of Long Beach v. Mansell*, 3 Cal.3d 462, 488 (1970).

Application of equitable estoppel against a public agency requires satisfaction of five elements. The first four are common to private party disputes, the fifth unique to public entities.

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Driscoll* v. *City of Los Angeles,* 67 Cal. 2d 297, 305 (1967); *see also* Cal. Evid. Code § 623, *supra*.

Courts are directed to apply these factors with "flexibility," giving recognition to a "proper concrete application within the broad equitable framework." *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 489 (1970).

As for the fifth factor, equitable estoppel is available against public entities "where justice and right require it." *United States Fid. Guar. Co.* v. *State Board of* Equalization, 47 Cal. 2d 384, 388 (1956). There is a limitation if invocation of the doctrine would nullify "a strong rule of policy, adopted for the benefit of the public." *County of San Diego v. Cal. Water & Tel. Co.*, 30 Cal. 2d. 817, 829-830 (1947). As shown below, that is not the case here.

To begin, San Jose knew for several years how PG&E calculated the UUT. For example, the City was informed repeatedly that PG&E did not include the value of the Climate Credits in the base used to calculate UUT. The City was aware of all other facts relevant to the claims it now asserts. Based on communications between the parties, various CPUC proceedings, the audits San Jose conducted of PG&E records, and the failure of San Jose to act or complain, PG&E had a right to believe the City

1    intended for PG&E to continue calculating the UUT as it had for years and had acquiesced in the

2    calculation methods.  PG&E relied reasonably on the failure of San Jose to voice complaint or take

3    specific action regarding those calculation methods, developing a statewide accounting and reporting

4    system and CPUC-approved billing formats to comply with local ordinances.

5           Further, applying estoppel in these circumstances will have virtually no effect (if any) on public

6    policy and the public interest.  Fundamentally, PG&E has carried out whatever policies are reflected in

7    the UUT Ordinance for decades, dutifully billing, collecting, and remitting the local tax San Jose has

8    imposed on its constituents.  That practice will continue no matter what happens in this proceeding.

9           Unlike land use cases where the assertion of equitable estoppel raises regulatory concerns, often

10   with pervasive impact on the public interest, neither local ordinance has a regulatory function.  Indeed,

11   as shown, the UUT Ordinance expressly disavows any regulatory purpose.

12          The only impact from applying estoppel here would be to disallow a monetary claim in a Chapter

13   11 case against a single party.  And even that impact would be *de minimis* because in that eventuality,

14   San Jose would still be free to pursue its constituents for any perceived tax shortfall under the UUT.  In

15   other words, the tax will still be collectible.  *City of Torrance vs. So. Cal. Edison Co.*, 61 Cal. App. 5th

16   1071, 1089-91 (2021).

17          In contrast, assuming the City's UUT Claims are otherwise valid, not applying estoppel will

18   substantially prejudice PG&E.  The most obvious prejudice arises from the City's claim that PG&E is

19   liable for the amounts it did not bill and collect from the customers on whom the taxes are imposed, and

20   if PG&E seeks to recover those amounts from customers through retroactive billings, the corresponding

21   expense and the potential disruption in its relationship with its customers.  Another burden is the financial

22   and administrative cost of undoing and revamping existing accounting systems.

23          What is more, PG&E has the ability to issue corrected bills for only up to three years from billing

24   dates.  If the City had notified PG&E earlier, PG&E could have re-billed the UUT to collect and remit

25   the tax from customers.  By delaying, San Jose has allowed the amount of its disputed claim to build,

26   including with respect to the interest and penalties it seeks.

27          San Jose is estopped to complain about the way PG&E has calculated the UUT.

28

### 2. Laches

"Laches is an equitable defense based on the principle that those who neglect their rights may be barred from obtaining relief in equity." *Feduniak v. California Coastal Commission*, 148 Cal. App. 4th 1346, 1381 (2007) (quoting *Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.*, 145 Cal. App. 4th 1260, 1274 (2006)). To prevail on a laches defense, a party must show "unreasonable delay" and "acquiescence in the act complained of or prejudice resulting from the delay." *Id*. While laches normally is a question of fact, it may be resolved as a matter of law where, as here, the relevant facts are undisputed. *Id*.

As shown in the fact section, San Jose waited several years to complain about how PG&E calculated the UUT, despite knowing that the methodologies PG&E employed conflicted with how it interpreted the governing ordinances. The most egregious delay concerns the Climate Credits.

In May 2014, PG&E alerted San Jose, with repeated reminders thereafter, that application of the credits to customers' bills would reduce the UUT because PG&E intended to assess the tax on the net amount after applying the credits. Yet San Jose did not assert a claim in any form or manner until more than *six years later* and, further, *several months after* the Bar Date, literally on the eve of plan confirmation, and only after PG&E mentioned the omission to the City. San Jose delayed unreasonably as a matter of law.

Nor would application of laches nullify any important public policy. *Cf. In re Marriage of Lugo*, 170 Cal. App. 3d 427, 435 (1980); *Feduniak v. California Coastal Commission*, 148 Cal. App. 4th 1346, 1381 (2007). The UUT Ordinance expressly disavows any regulatory purpose. It is a revenue generating vehicles to fund normal local government expenses. All that is at stake here is a money claim for alleged payment deficiencies. Disallowance of the City of San Jose Claims based on laches would have no public policy or interest impact.

In contrast, if laches were not applied, PG&E would suffer similar prejudices described above with respect to equitable estoppel.

The doctrine of laches bars San Jose from seeking to hold PG&E liable for alleged miscalculations of the UUT and Franchise Fees.

### 3. Waiver

"Waiver is the intentional relinquishment of a known right after knowledge of the facts." *Roesch v. De Mota*, 24 Cal. 2d 563, 572 (1944). As shown, San Jose has sat on its purported rights for several years, well aware of the circumstances it now maintains give rise to its claims. The City has waived any right to complain about the manner in which PG&E has calculated the UUT.

PG&E has been consistently transparent in the accounting methods San Jose now challenges. Indeed, San Jose has enjoyed full opportunity to participate in the CPUC proceedings that addressed the billing and accounting issues at issue here. In some cases, San Jose approved what PG&E submitted to the CPUC. In others, it had ample opportunity to participate and be heard. San Jose has continuously acquiesced in the PG&E and CPUC billing and calculation approaches. Further, as noted, San Jose conducted audits of PG&E records for the avowed purpose of examining the accounting methods at issue. The City well knew for years what it now complains about.

One conspicuous example is how PG&E treats Climate Credits in calculating the UUT. As shown, after the launch of the Cap-and-Trade program, starting in May 2014, and repeatedly thereafter, PG&E advised San Jose (and other municipalities) in writing that distribution of the Climate Credits to its customers will reduce UUT remittances. Yet, year in and year out, San Jose accepted UUT remittances from PG&E knowing that the basis for their calculation did not include the Climate Credits. San Jose not only waited until after the Chapter 11 cases were filed to take any formal action to challenge that treatment, but waited until well *after* the Bar Date, and only after PG&E told the City of its omission.

For a long time now, the City has relinquished the rights it purports to assert by way of the City of San Jose Claims.

### F. The Late New Claims Should Be Disallowed as Untimely

There is no question that the Late New Claims, which seek to amend and expand the Initial Claims, and were filed more than seven months after the Bar Date, are untimely. 11 U.S.C. § 502(b)(9). Their late filing raises two key issues: whether the late filing "relates back" to the timely filed Initial Claims and, if not, whether San Jose may be excused for the delay.

<u>First</u>, the Late New Claims do not relate back.

To relate back, "[a] new claim must be based upon a common core of operative facts." *In re Pac. Gas & Elec. Co.*, 311 B.R. 84, 88 (Bankr. N.D. Cal. 2004). Operative facts, not theory of liability, control the question of relation back. *Id*. at 89 (citing *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 739 (9th Cir. 1982)).

The Late New Claims introduce for the first time the omission of Climate Credits from the calculation of the UUT. They also introduce for the first time alleged underpayment of Franchise Fees and specifically the omission of Climate Credits from the calculation of "gross receipts" in determining annual amounts due. In both instances, the City materially altered the mix of facts underlying this dispute.

The Franchise Fee element of the Late New Claims and the entirety of the Initial Claims arise from different statutes with different statutory language and require different calculations. The Franchise Fee claims are calculated based on PG&E's "gross receipts," defined as "all gross operating revenues *received or receivable . . . from the sale* of gas [and electricity] to . . . customers *with points of service within the corporate limits of the City*." (Emphasis added.) The Initial Claims arise from the UUT Ordinance, which levies a tax in the amount of "five percent of the *charges billed* for such [electricity or gas], including charges for service, transportation and delivery." (Emphasis added.)

While the underlying bases may seem similar—as they focus on revenues from the sale of energy—they are not: the underlying revenues are calculated differently and are subject to different accounting systems. For example:

- PG&E accounts for uncollectible amounts differently for each of them.

- Revenues received from federal agencies are outside the scope of the UUT because they are exempt, but they count for franchise fee purposes.

- Natural gas vehicle revenue counts for franchise fee purposes, but not for the UUT, because state law preempts the field of motor vehicle fuels.

Because of the differences, PG&E employs different internal accounting systems for the two calculations. Thus, while the parties might each employ a single forensic accounting expert for trial, expert opinions for application of each statute will derive from entirely different factual bases and employ accounting principles unique to the separate calculations.

The same is true for the UUT component of the Late New Claims, which is based on alleged omission of Climate Credits from the tax base. It is true that those claims and the Initial Claims both derive from the UUT Ordinance. But in terms of underlying facts, they are a world apart. Although San Jose has not specified the basis for the Initial Claims, prior correspondence suggests that the City intends to assert an alleged failure to include the Municipal Surcharge, the Gas PPP surcharge, and CFS in the UUT calculation. Each of those elements is different from the others in its legal sources and factual underpinnings. Similarly, each is different from the Climate Credits, which arise from a separate state statute and are subject to separate accounting calculations and internal PG&E systems.

For example, the factual background for the Climate Credits involves the separate trading markets California has established for the sale and purchase of GHG permits and the distribution of the resulting revenues. None of the surcharges that underlie the Initial Claims have anything to do with the cap-and-trade market and how derived revenues should be categorized. It is not surprising therefore that the accounting systems PG&E employs to track cap-and-trade revenues, and how those revenues should be classified, are entirely different from the accounting needed to determine the amounts of the separate surcharges that San Jose maintains should be part of the UUT. Further, the CFS derives from the same "gross receipt" numbers as the Franchise Fees, which, as shown, implicate entirely different factual bases.

From both a factual and legal perspective, the Initial Claims and the Late New Claims are ships passing in the night. Their underlying facts are distinct, and they arise from different and distinct statutory enactments. The Late New Claims do not relate back to the filing of the Initial Claims.

<u>Second</u>, San Jose should not be excused from its failure to comply with the Bar Date with respect to the Late New Claims

"The purpose of permitting amendments to pleadings is to 'enable a party to assert matters that were overlooked or were unknown to him at the time he interposed his original complaint or answer.'" *In re Stavriotis*, 977 F.2d 1202, 1206 (7th Cir. 1992) (quoting Wright and Miller, *Federal Practice and Procedure,* § 1473 (1971)). Amendments are disfavored when the creditor had, as San Jose had here, "early warning about the potential for liability" to support the late claims. *In re Pac. Gas & Elec. Co.*, 311 B.R. 84, 91 (Bankr. N.D. Cal. 2004). It is the creditor's "responsibility to explore, investigate and

1    file a proof of claim against the Debtors, not the other way around." *In re Nat'l Steel Corp*., 316 B.R.

2    510, 518 (Bankr. N.D. Ill. 2004).

3        As shown in the factual background section, well before the Bar Date San Jose had full

4    knowledge that PG&E omitted Climate Credits from both the UUT calculations and the "gross receipts"

5    calculations for purposes of Franchise Fees. Despite this knowledge, San Jose did not include them in

6    any proof of claim filing until after PG&E, after the Bar Date, pointed out the omission in

7    correspondence. In addition, in the late filing, San Jose offered no facts to excuse its tardiness. Nor has

8    the City taken any action to seek court relief from the late filing.

9        San Jose is not entitled to invoke the relation back doctrine and its tardiness lacks any credible

10    excuse. The Late New Claims are too late.

11        **G.**      **A Prior Contractual Release Bars the City of San Jose Claims**

12        In the Santa Clara Action, San Jose sued PG&E seeking, among other things, a declaratory

13    judgment revising the methodology by which PG&E assessed fees the City alleged were due under the

14    Surcharge Act that in turn impacted the Franchise Fee Ordinances. After the trial court dismissed the

15    action as lacking in merit, and San Jose appealed, the parties settled the dispute in 2010. The settlement

16    agreement included a general release and a waiver of Section 1542 of the California Civil Code. The

17    scope of the release included all matters that "could have been" brought in the action. At the time, the

18    City was aware, from multiple sources, including an audit it conducted of PG&E records in 2004,

19    different CPUC proceedings and decisions, and direct communications with PG&E, how PG&E

20    calculated the UUT. San Jose could have brought—but did not bring—claims challenging those

21    methodologies in the earlier litigation. Instead, it elected to isolate one fee methodology only.

22    Accordingly, the doctrine of release at least in part bars challenges to the calculation methodologies that

23    are integral to the City of San Jose Claims.

24        **H.**      **The City of San Jose Claims Are Time-Barred**

25        The applicable statute of limitations bars the City of San Jose Claims in part. The UUT and

26    Franchise Fees Claims are based on statutes and thus subject to a three-year statute of limitations. Cal.

27    Civ. Proc. Code § 338(a); *e.g., City of Los Angeles v. Belridge Oil Company*, 42 Cal. 2d. 823, 834 (1954)

28    (applying the three-year limitations period section 338(a) to the underpayment of business license tax to

the City, noting that the limitations period "runs from the time the cause of action accrues, and the cause of action accrues when the tax becomes delinquent."). The Petition Date is January 29, 2019. The City of San Jose Claims date back to 2014. To the extent those claims arose prior to January 28, 2016, they are time-barred.

### I. The City Seeks Unauthorized Penalties and Interest

The penalties and interest the City seeks are unauthorized under the terms of the applicable ordinance. By its terms, the UUT Ordinance limits the imposition of penalties and interest to "delinquent remittances," which occur when a utility fails to remit taxes to the City it has collected from customers. SJ Municipal Code § 4.68.140(A). The UUT Ordinance does not authorize penalties or interest for unbilled (and therefore uncollected) taxes. PG&E has consistently and timely remitted to San Jose the taxes it has collected from City constituents and San Jose does not, and cannot, allege to the contrary. The interest and penalty provisions do not apply.

### J. The Penalties and Interest Sought by San Jose Are Unconstitutional

The interest and penalties the City seeks are unconstitutional for three independent reasons.

First, if the UUT and Franchise Fee Ordinances are interpreted the way San Jose urges, PG&E lacked sufficient notice that its calculation methodologies were improper. As a result, the statutes were not "sufficiently clear as to give a fair warning of the conduct prohibited," *Morrison* v. *State Bd. of Educ.*, 1 Cal. 3d 214, 231 (1969), rendering the financial add-ons San Jose seeks impermissible retroactive penalties in violation of the Fifth and Fourteenth amendments of the U.S. Constitution. *F.C.C.* v. *Fox Television Stations*, 567 U.S. 239, 253 (2012) (holding lack of fair notice); *City of San Bernardino Hotel/Motel Ass'n* v. *City of San Bernardino*, 59 Cal. App. 4th 237 (1998) (unconstitutionally vague tax statute); *Duffy* v. *State Board of Equalization*, 152 Cal. App. 3d 1156 (1984) (same).

Second, the penalties sought violate substantive due process because they are arbitrary and capricious. Due process means a person may be deprived of property "only if the conduct from which the deprivation flows is prescribed by reasonable legislation reasonably applied," *i.e.*, the law has "a real and substantial relation to the object sought to be attained." *Gray* v. *Whitmore*, 17 Cal. App. 3d 1, 21 (1971). The local statutes at issue do not satisfy this constitutional threshold standard for clarity. In

addition, large penalties or fines predicated on multiple, identical alleged "violations" violate due process because they are arbitrary and capricious. *Walsh v. Kirby,* 13 Cal. 3d 95, 97-106 (1974); *People ex rel. Lockyer* v. *R.J. Reynolds Tobacco Co.,* 37 Cal. 4th 707 (2005), *as modified* (Jan. 18, 2006).

Third, the penalties sought violate the Excessive Fines Clauses of the U.S. Constitution and the California Constitution. *See* U.S. Const., amend. VIII; Cal. Const. art. I, § 17. The U.S. Constitution's Excessive Fines Clause prohibits regulatory fines that are not proportional to the underlying conduct. *United States* v. *Bajakajian*, 524 U.S. 321, 334 (1998) (superseded by statute on other grounds as set forth in *United States v. Jose*, 499 F.3d 105, 110 (1st Cir. 2007)). The California Constitution also prohibits excessive fines and the taking of property without due process of law. *See People ex rel. Lockyer*, 37 Cal. 4th at 728; Cal. Const. art. I, § 7. PG&E was transparent about its collection methods and acted in good faith, consistently seeking CPUC guidance and approvals. Nor did PG&E have notice that its calculation methods were improper, or even that the City viewed them that way. Further, there is no relationship between the harm and the penalty. San Jose still can collect the alleged uncollected taxes from its residents.

## K. Even if the Franchise Fee Claims Had Merit, They Are Not Priority Tax Claims

Contrary to the City's assertion, the Franchise Fee Claims are not entitled to priority under the Bankruptcy Code, which grants priority to allowed, unsecured tax claims of governmental units. 11 U.S.C. § 507(a)(8); *see also* Plan § 2.4. Claims held by governmental entities such as the City relating to the collection of *fees* rather than *taxes*, however, are not granted priority. *In re Mitchell*, 398 B.R. 557, 558 (Bankr. N.D. Miss. 2008) (determining whether a governmental assessment is a tax claim entitled to priority, or a fee and thus an unsecured, non-priority claim); *In re S.N.A. Nut Co.*, 188 B.R. 392, 396 (Bankr. N.D. Ill. 1995) (same). A fee is a charge levied on something that "bestows a benefit on the applicant, not shared by other members of society." *National Cable Television Assn. v. United States*, 415 U.S. 336, 341 (1974). The chief distinction between a tax and a fee is that "a tax is an exaction for public purposes while a fee relates to an individual privilege or benefit to the payer." *United States v. River Coal Co.*, 748 F.2d 1103, 1106 (6th Cir. 1984).

California courts specifically hold that franchise fees are not taxes, but instead tolls or charges for use by the utility of the public entity's streets and other property. *County of Tulare v. City of Dinuba*, 188 Cal. 664 (1922) (fees payable by utility to public entity under franchise agreement were not a tax, but rather a toll or charge, and hence not affected by subsequently enacted state law that modified corporate taxation methods); *Jacks v. City of Santa Barbara,* 3 Cal.5th 248 (2017) (utility's franchise fees, so long as reasonable in relation to the value of the franchise, are not taxes and hence not subject to requirement of voter approval under Proposition 13 and related enactments).

The Franchise Fee Claims are based on a charge levied by the City against PG&E for the "individual privilege" of placing infrastructure on public rights of way to deliver energy services to customers in the City. Accordingly, the Franchise Fee Claims are not tax claims for purposes of section 507(a)(8) and therefore not entitled to statutory (or any) priority. In the event the City succeeds in recovering any amount on account of unpaid prepetition Franchise Fees, under the Plan, post-petition interest on the City's unsecured, non-priority claim is limited to the Federal Judgment Rate of 2.59%. Plan § 4.23.

## V.     LOCAL RULE 3007-1(B)

Bankruptcy Local Rule 3007-1(b) states that "[w]here a factual dispute is involved, the initial hearing on an objection shall be deemed a status conference at which the Court will not receive evidence." The Reorganized Debtors submit that, while some of the claims here can be resolved as a matter of law, others and their corresponding objections may involve disputed facts, which will require development through discovery. At the initial hearing and status conference on the Objection, the Reorganized Debtors will seek a schedule for discovery and summary judgment briefing.

## VI.     RESERVATION OF RIGHTS

The Reorganized Debtors hereby reserve the right to object, as applicable, in the future to any of the Proofs of Claim listed in this Objection on any ground, and to amend, modify, or supplement this Objection to the extent an objection to a claim is not granted, and to file other objections to any proofs of claims filed in these cases, including, without limitation, objections as to the amounts asserted therein, or any other claims (filed or not) against the Debtors, regardless of whether such claims are subject to this Objection. More specifically, PG&E does not concede and reserves the right to challenge the amount

1  of damages the City alleges in its claims. San Jose has not provided any basis for its damage calculations.

2  Nor has San Jose provided the required "statement itemizing interest, fees, expenses, or other charges

3  required by Bankruptcy Rule 3001(c)(2)(A)" regarding its claim for interest and penalties. A separate

4  notice and hearing will be scheduled for any further objections. Should the grounds of objection

5  specified herein be overruled, wholly or in part, the Reorganized Debtors reserve the right to object to

6  the City of San Jose Claims on any other grounds that the Reorganized Debtors may discover or deem

7  appropriate.

8  **VII.    NOTICE**

9       Notice of this Objection will be provided to (i) the City of San Jose; (ii) the Office of the U.S.

10 Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) all counsel and

11 parties receiving electronic notice through the Court's electronic case filing system; and (iv) those

12 persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to

13 Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required.

14 No previous request for the relief sought herein has been made by the Reorganized Debtors to this or

15 any other Court.

16 **VIII.    RELIEF REQUESTED**

17      Based on the foregoing specific objections, PG&E seeks the following relief:

18    1. A scheduling conference pursuant to Bankruptcy Local Rule 3007-1 that

19 establishes (a) an order for proceeding with hearings on the specific objections

20 identified above, consistent with judicial efficiency and the interests of justice; and (b)

21 an appropriate discovery and hearing schedule, consistent with any order the Court

22 enters regarding the process for subsequent hearings;

23    2. Upon one or more hearings and due consideration of the law and the evidence,

24 orders:

25      (a) disallowing the City of San Jose Claims in their entirety; and

26      (b) determining that PUC § 799 bars San Jose from imposing financial liability

27      on PG&E for any alleged failure to bill or collect User Utility Taxes, in the past

28      and in the future, in whole or in part;

3.  To the extent any portion of the City of San Jose Claims is not disallowed, an order determining that:

 (a) San Jose is not entitled to recover the interest and penalties it seeks;

 (b) The Franchise Fee Claims are not entitled to statutory priority under Bankruptcy Code § 507(a)(8); and

 (c) San Jose may not recover post-petition interest on its Franchise Fee Claims in excess of the rate permitted for general unsecured claims under the Plan; and

4.  For other and further relief appropriate in the circumstances.

Dated: January 21, 2022

**KELLER BENVENUTTI KIM LLP**
**JENNER & BLOCK LLP**

By: _____/s/ Michael Coffino_____
  Michael Coffino

*Attorneys for Debtors and Reorganized Debtors*