1

KELLER BENVENUTTI KIM LLP
Peter J. Benvenutti (# 60566)
(pbenvenutti@kbkllp.com)
Michael J. Coffino (# 88109)
(mcoffino@kbkllp.com)
Jane Kim (# 298192)
(jkim@kbkllp.com)
David A. Taylor (# 247433)
(dtaylor@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

JENNER & BLOCK LLP
Laurie Edelstein (#164466)
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone: (628) 267-6800
Facsimile: (628) 267-6859
Email: ledelstein@jenner.com

*Attorneys for Debtors and Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF CECILIA GUIMAN IN SUPPORT OF REORGANIZED DEBTORS' ONE HUNDRED THIRTEENTH OMNIBUS OBJECTION TO CLAIMS (CLAIM NOS. 77225, 78534, 78745 (in part), 78623 (in part), 105680, AND 105681) (CITY OF SAN JOSE CLAIMS))**<br><br>**Response Deadline: February 16, 2022, 4:00 p.m. (Pacific Time)**<br><br>**Hearing Information If Timely Response Made:**<br>Date:  March 2, 2022<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  (Tele/Videoconference Appearances Only)<br>       United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

I, Cecilia Guiman, pursuant to section 1746 of Title 28 of the United States Code, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the senior manager of the Revenue and Statistics Department at Pacific Gas and Electric Company ("**PG&E**"). I began my employ with PG&E in April 2006. Through my job duties and responsibilities, I am familiar with and knowledgeable about various events relating to the history of PG&E's relationship with the City of San Jose (the "**City**" or "**San Jose**"), including books and records related to the City's Utility User Tax ("**UUT**") ordinance ( "**UUT Ordinance**") and Franchise Fee Ordinances. I make this Declaration in support of the Reorganized Debtors' Objection to the San Jose claims identified above. Except when otherwise specified, I have personal knowledge of the information and matters set forth below, and as to the other matters, I am informed of them based on review of our files. If called as a witness, I could and would competently testify to the matters that follow.

2. My understanding from our files is that on or about January 14, 1971, San Jose and PG&E signed an "Implementation Agreement" to carry out the provisions of San Jose's then-recently enacted UUT Ordinance. To my knowledge, the parties never amended the Implementation Agreement in writing to specify any additional implementation procedures. A true and correct copy of the Implementation Agreement in our files is attached to this declaration as **Exhibit 1**.

3. To my knowledge, from the enactment of the UUT Ordinance through the present, for purposes of calculating the UUT, PG&E has consistently treated "charges billed" as the specific amounts ratepayers are obligated to pay for energy services they receive from PG&E, as approved through tariff and advice letter filings with the California Public Utilities Commission ("**CPUC**").

4. I am informed based on our files that on or about September 20, 1971, San Jose and PG&E become signatories to separate but identical gas and electric franchise agreements, which were initially memorialized in San Jose ordinances Nos. 15879 and 15880, respectively. True and correct copies of the Franchise Agreements in our files are attached to this declaration as **Exhibits 2 and 3.** I am further informed that San Jose later amended both the gas franchise agreement by ordinances 21676 (June 5, 1984), 26913 (June 10, 2003), and 28719 (February 9, 2010) and the electric franchise agreement by ordinances 21677 (June 5, 1984), 26914 (June 10, 2003), and 28720 (February 9, 2010).

5. On April 11, 1994, following passage of Chapter 2.5 of the State's Public Utilities Code, titled Municipal Public Lands Use Surcharge, §§ 6350 through 6354 (the "Surcharge Act"), PG&E notified San Jose of the passage of Senate Bill 278 requiring the utilities to calculate and collect a franchise fee surcharge on behalf of local municipalities. It is my understanding, in part based on our files and in part from personal knowledge, that PG&E has since followed that practice continuously, and in so doing, has always treated the surcharge as a state mandated billing item. A true and correct copy in our files of the April 11, 1994 letter to San Jose is attached to this declaration as **Exhibit 4**.

6. I understand that on September 29, 2000, California passed the Natural Gas Surcharge Act, which imposed a surcharge on consumed natural gas, the central purpose of which was to fund gas-related public purpose programs ("**Gas PPP**"), like low-income customer assistance, cost-effective energy efficiency, and public interest research and development. PG&E remits the Gas PPP quarterly to the California Department of Tax and Fee Administration, formerly known as the Board of Equalization.

7. Based on a file review, I understand that on May 29, 2002, San Jose initiated an audit of the various collection and related accounts that PG&E maintained relative to fees and taxes to ensure past compliance and offer appropriate guidance for any recommended changes in record keeping. San Jose, I am further informed, later expanded the scope of the audit to include franchise fees and franchise fee surcharges.

8. On March 1, 2005, in accordance with Decision 04-08-010 of the CPUC, PG&E began to identify Gas PPP surcharges as a separate line item on customer bills, separate from the charges billed upon which UUT is calculated. I am further informed that in 2005, PG&E notified San Jose that because of how the Gas PPP surcharge is handled, the City would see a reduction in UUT collections.

9. Our files indicate that, a few months later, in July 2005, San Jose requested that PG&E include the Gas PPP surcharge in the tax base for calculating the UUT. The files further indicate that PG&E declined this request, explaining that Gas PPP surcharges are pass-through funds and not part of the revenue upon which UUT is calculated. In addition, PG&E referred the City to CPUC Decision 04-08-010, which had, among other things, determined that Gas PPP funds were not part of "utility revenues" and, in a related context, specifically determined that Gas PPP surcharges were not subject to franchise fees. My understanding is that PG&E's response effectively ended the matter at the time. The

PG&E practice of treating the Gas PPP surcharge as a separate line item on customer bills and not part of the UUT tax base has continued to this day, without to my knowledge any complaint from San Jose until after the filing of these bankruptcy cases.

10.    On February 23, 2010, pursuant to a settlement of litigation between San Jose and PG&E, the San Jose City Council adopted amendments to the then-existing electric and gas franchise agreements, requiring that PG&E, subject to CPUC approval, collect an additional three-tenths of one percent (0.30%) of PG&E's gross annual receipts from both its gas and electric customers within the City (the "**City Franchise Surcharge**" or "**CFS**").

11.    PG&E and San Jose coordinated on the Advice Letter to obtain CPUC approval of the CFS. Central to the approval process, PG&E submitted Advice Letter 3110-G/3651-E dated April 5, 2010 to the CPUC, which included proposed customer bill formats reflecting the surcharge. PG&E worked with City staff on the customer bill format relating to the billing of the surcharge, including specifically how the surcharge would be presented on customer bills and how to address any customer inquiries on CFS. PG&E's mockup bill included with Advice Letter 3110-G/3651-E contained a special bill message notifying customers that information on the CFS is available by contacting the City of San Jose Customer Service and provided a City telephone number. The mockup bills we submitted to the CPUC identified the surcharge as a separate line item, apart from energy charges. They also disclosed that the proposed new .30% surcharge—as well as the Gas PPP charge—were excluded from the UUT calculation. PG&E copied San Jose on these submissions. A true and correct copy of the Advice Letter is attached to this declaration as **Exhibit 5**. Effective May 5, 2010, the CPUC approved the Advice Letter.

12.    On November 18, 2013, PG&E submitted to the CPUC Advice Letter 4318-E in compliance with CPUC Resolution E-4611. We included in the Advice Letter how PG&E intended to treat in its customer billings recently CPUC-mandated semi-annual revenue credits ("**Climate Credits**") as well as a notice that the public may protest the submissions. Climate Credits are issued as part of a statewide energy "cap and trade" program to reduce greenhouse gas emissions. The sample bills accompanying the Advice Letter reflect a climate credit adjustment of UUT returned to customers. A

1   true and correct copy of the Advice Letter is attached to this declaration as **Exhibit 6**. On March 5, 2014,

2   the CPUC approved the Advice Letter.

3         13.    Following CPUC approval of the Advice Letter, PG&E began distributing the first of its

4   semi-annual (April and October) Climate Credits to California customers who receive electric service.

5   PG&E applies the Climate Credits twice a year to electric bills (in April and October), and as later

6   determined, once (in April) to gas bills (except when CPUC one time in 2018 mandated October).

7   Customers using both electric and gas service receive both credits.

8         14.    In May 2014, PG&E by letter alerted all municipalities in PG&E's service area with UUT

9   ordinances, including San Jose, that Climate Credits will reduce their UUT remittances, a reduction that

10  will be included in the line item "Special Adjustments" in the periodic accountings PG&E sends them.

11  A true and correct copy of the May 23, 2014 letter sent to San Jose, along with the monthly Utility Users

12  Tax statement, is attached to this declaration as **Exhibit 7**.

13        15.    On November 25, 2014, PG&E sent San Jose a second letter virtually identical to the

14  May 23, 2014 letter, along with the monthly Utility Users Tax statement, a true and correct copy of

15  which is attached to this declaration as **Exhibit 8**.

16        16.    In March 2016, San Jose took steps to conduct an audit of PG&E records to "verify

17  compliance" with San Jose's "Electricity, Thermal Energy, Gas, Telephone, and Water Use Tax

18  Ordinances."

19        17.    After conferring with and receiving confirmation from CPUC staff about how to account

20  for state and local charges in calculating the UUT in PG&E customer billings, in late November 2018,

21  PG&E wrote municipalities, including San Jose, to inform them that it had begun processing the gas

22  Climate Credit, and like the electric climate credit, it would reduce UUT remittances. A true and correct

23  copy of the November 2018 letter, along with the monthly Utility Users Tax statement, is attached to

24  this declaration as **Exhibit 9**. PG&E sent virtually the identical communication to San Jose subsequently

25  in May 2019, November 2019, May 2020, June 2020, and July 2020.

26        18.    As of the petition date in these bankruptcy cases, San Jose had not to my knowledge

27  commenced any legal action or other proceeding regarding any alleged shortfall in UUT collections or

28

Franchise Fee underpayments or to challenge the established methods that PG&E used to calculate those payments.

19.     On September 9, 2019, San Jose sent PG&E two similar letters. One alleged a UUT underpayment for gas billings based on the established PG&E practice of excluding the Franchise Fee Surcharge, the Gas PPP, and the CFS from the tax base. The second alleged UUT underpayment for electricity billings based on the established PG&E practice of excluding the Franchise Fee Surcharge and CFS from the tax base. True and correct copies of both letters are attached to this declaration as **Exhibit 10**.

20.     To my knowledge, other than what occurred in 2005 when San Jose requested a change in how PG&E accounted for the Gas PPP in calculating the UUT, which PG&E declined to do, as mentioned in paragraph 9 of this declaration, San Jose did not challenge or question the established and longstanding practices of PG&E in calculating the UUT, including how in its calculations PG&E accounted for the Franchise Fee Surcharge, the Gas PPP, and the CFS, until the September 9, 2019 correspondence (**Exhibit 10**).

21.     On May 12, 2020, San Jose sent two similar letters to PG&E. The first alleged underpayments of Franchise Fees for the period April 2014 through October 2019 based on the exclusion of Climate Credits from the calculation of PG&E's "gross receipts."  The second alleged UUT underpayments for the same period based on the exclusion of Climate Credits from PG&E's "gross charges billed for gas or electricity" to its customers. True and correct copies of both letters are attached to this declaration as **Exhibit 11**.

22.     To my knowledge, the May 2020 letters were the first time that San Jose ever complained about how PG&E accounted for either customer Climate Credits in calculating the UUT or what was due San Jose under the Franchise Fee agreements.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed this twentieth day of January, 2022.

_/s/ Cecilia Guiman_
Cecilia Guiman
