**Exhibit 1**

San Jose

260

City of San Jose
Utility Users Tax

January 28, 1971

MR. J. A. SPROUL:

Attached is a copy of the executed Administrative Agreement with the City of San Jose.

E. B. LANGLEY, JR.

AMMarshall:jj

cc: DLBell
    ABCook ✓
    JLCounce
    GFHill
    EMSchroeder

Attach.

Case: 19-30088    Doc# 11845-1    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 2 of 16

# PACIFIC GAS AND ELECTRIC COMPANY

PG&E — 86 SOUTH THIRD STREET • SAN JOSE, CALIFORNIA 95114 • (408) 298-3333

E. B. LANGLEY, JR.
DIVISION MANAGER

December 9, 1970

Mrs. Jean Morss
Director of Finance
Department of Finance
City of San Jose City Hall
San Jose, California 95110

Dear Mrs. Morss:

This refers to Ordinance No. 15285 recently enacted by the City of San Jose providing for a utility users tax and adding Article XVII (comprising Sections 17000 through 17018) to the San Jose Municipal Code.

In order to cooperate with the City in the administration of Article XVII as it pertains to charges for gas and electric service, it is necessary to establish procedures to implement Article XVII which are mutually satisfactory, and which are in accordance with applicable rules and tariffs on file with the California Public Utilities Commission. Accordingly, the following arrangements, which are authorized by Section 17008 of the San Jose Municipal Code, are proposed.

## EXEMPTIONS

Attached is the list of our gas and electricity customers (service users) whom you have previously advised us are exempt from taxation under provisions of Article XVII. Please confirm your approval of these exemptions by signing one copy of the list and returning it to us. All other customers will be presumed to be subject to the tax unless you advise us in writing that you have granted an exemption. Requests for exemption will be made directly to the City; however, if you wish to furnish us with application forms, we shall be pleased to make them available to our customers as a convenience to them.

Should you in the future from time to time wish to compare our exemption list with your record of the exemptions you have authorized, we will furnish a copy of our list upon request.

Case: 19-30088    Doc# 11845-1    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 3 of 16

Mrs. Jean Morss
December 9, 1970
Page 2

REMITTANCE TO CITY

The tax rate of 7½ percent becomes operative on September 1, 1970, and the tax on gas and electricity service users will be added to our bills based upon meter readings taken on and after October 2, 1970. The tax rate of 7½ percent will be superseded by a tax rate of 5 percent which will become operative on May 1, 1971. The 5 percent tax rate on gas and electricity service users will be added to our bills based upon meter readings taken on and after June 2, 1971. Article XVII provides that tax collected in one month shall be remitted to the City on or before the last day of the following month, except that the taxes collected in May of any year shall be remitted on or before June 25. As discussed, we will comply with this provision by remitting the entire amount of tax billed in one month on the last day of the calendar month following the month in which billing is made, except that taxes billed in May of each year will be remitted on June 25. Accordingly, the first remittance of tax to the City will be made on November 30, 1970.

NONPAYMENT OF TAX BY SERVICE USER

It is anticipated that there will be instances where customers will intentionally withhold payment of the tax. Where a customer has notified P. G. and E. of his refusal to pay the tax or where it is evident that the tax is being excluded from bill payments, the unpaid tax will be included in the balance due shown on our bills for a period not to exceed four billing periods. At the end of the fourth billing period, the entire tax then owed by the customer will be transferred to the City for collection action in accordance with Section 17011 of the San Jose Municipal Code. In addition to taxes separately withheld by customers, taxes which are applicable to uncollectible accounts will also be transferred to the City for collection action as such accounts are referred to collection agencies or are written off. The total amount of taxes so transferred to the City for collection action in any one month will be deducted from the remittance made by P. G. and E. for that month.

If you concur with the foregoing proposals, please indicate your acceptance on behalf of the City of San Jose by signing two copies of this letter in the space designated below and returning them to us. Your cooperation is sincerely appreciated.

Sincerely,

[signature]

Att

Accepted _____
Title _____
Date _____

FPP:RKK:ME:B
Rev. 6/29/70

ORDINANCE NO. 15285

ORDINANCE OF THE CITY OF SAN JOSE AMENDING THE SAN JOSE MUNICIPAL CODE BY ENACTING, ADOPTING AND ADDING THERETO A NEW ARTICLE, WHICH SHALL BE NUMBERED ARTICLE XVII, PROVIDING FOR THE IMPOSITION AND COLLECTION OF TELEPHONE, GAS, WATER AND ELECTRICITY USERS TAX.

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

The San Jose Municipal Code is hereby amended by enacting, adopting and adding thereto a new Article, said new Article to be numbered and to read as follows:

ARTICLE XVII. TELEPHONE, GAS, WATER AND ELECTRICITY USERS TAX

17000. *Definitions.* Except where the context otherwise requires, the definitions contained in this Section shall govern the construction of this Article:

(a) "Person" shall mean all natural persons, domestic and foreign corporations, associations, syndicates, joint stock companies, partnerships of every kind, joint ventures, clubs, Massachusetts business or common law trusts and societies.

(b) "Month" shall mean a calendar month.

(c) "Service user" shall mean a person required to pay a tax imposed under the provisions of this Article.

(d) "Service supplier" shall mean any person required to collect a tax imposed under the provisions of this Article.

(e) "Tax Administrator" shall mean the Director of Finance of City.

Case: 19-30088   Doc# 11845-1   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 5 of 16

amount of the tax so collected has either been refunded to the service user or credited to charges subsequently payable to the service user, to the service supplier required to collect and remit said tax.

(c) <u>Refund to Service User</u>. Any service user may obtain a refund of taxes overpaid, or paid more than once, or erroneously or illegally collected or received by the City, by filing a claim in the manner provided in subsection (a) of this Section, but only when the service user having paid the tax to the service supplier establishes to the satisfaction of the Director of Finance of City that the service user has been unable to obtain a refund from the service supplier who collected the tax.

(d) <u>Proof Required</u>. No refund shall be paid under the provisions of this Section unless the claimant establishes his right thereto by written records showing entitlement thereto.

17015. <u>California Public Utilities Commission Jurisdiction</u>. Nothing contained in this ordinance is intended to conflict with applicable rules, regulations and tariffs of any service supplier subject to the jurisdiction of the California Public Utilities Commission. In the event of any conflict, the provisions of said rules, regulations and tariffs shall control.

17016. <u>Payment by City for Conversion Expenses</u>.

(a) Each service supplier shall be entitled, subject to the following provisions, to obtain reimbursement from City for the reasonable and necessary costs and expenses incurred by each such service supplier in making conversions to its

-14-

billing and accounting procedures necessitated by the change in the tax rate occurring from and after May 1, 1971.

(b) Any service supplier who has incurred such costs and expenses may claim reimbursement therefor by filing, no later than June 30, 1971, a written claim with the Tax Administrator, in form satisfactory to the Tax Administrator, setting forth the nature of the conversions necessitated by such change in the tax rate, and a detailed statement of the costs and expenditures incurred in connection therewith. The Tax Administrator may require any service supplier to provide additional information with respect thereto.

The Tax Administrator may approve said claim, or he may approve said claim in part, or reject said claim if he finds that all or parts thereof are invalid.

If the Tax Administrator determines that all or part of such claim is valid, he shall notify the qualifying service supplier of his determination and shall direct said service supplier to retain from its next succeeding tax remittance the portion of the claim so approved.

17017. <u>Purpose</u>. The taxes imposed and levied by the provisions of this Article are solely for the purpose of providing revenue for the usual current expenses of the City. The provisions of this Article are not enacted for regulatory purposes.

17018. <u>Severability</u>. If any section, subsection, sentence, clause, phrase or portion of this Article is for any reason held to be invalid or unconstitutional by the decision of any court of

#15285

thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses, phrases or portions be declared invalid or unconstitutional.

PASSED FOR PUBLICATION this 6th day of July, 1970 by the following vote:

AYES: Councilmen - Goglio, Gross, Mineta, James.

NOES: Councilmen - Colla, Shaffer.

ABSENT: Councilmen - Hays.

_____
Mayor
Ronald R. James

ATTEST:
_____
City Clerk
Francis L. Greiner

Case: 19-30088   Doc# 11845-1   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 8 of 16

\+ 62-6218 (REV. 8-64)

**PG and E**

FOR INTRA—COMPANY USES

DIVISION OR DEPARTMENT: San Jose
FILE NO.: 260
RE LETTER OF
SUBJECT: San Jose - Utility User's Tax

RECEIVED
MAR 11 1971
Commercial Operations

March 10, 1971

MR. A. B. COOK:

The City of San Jose Utility User's Tax Ordinance and our Administrative Agreement with the City provides that the tax rate will be reduced from 7½% to 5% on May 1, 1971.

It appears that the initiative to repeal the User's Tax will not appear on the April ballot. Therefore, it is our recommendation that arrangements be made to reprogram this percentage change effective with Serial D with readings of June 2, 1971.

I understand a breakdown of our costs for the implementation of the change is being prepared so that we can present the change to the City in accordance with Paragraph 17016 of the Ordinance.

Should it be necessary to revise the Administrative Agreement, would you please prepare and send us a rough draft?

E. B. LANGLEY, JR.

AMMarshall:jj

cc: JASproul
    EMSchroeder

Gene Simonetti

December 2, 1987

EAS F/u 12/14
EAS
MIKE WORKING ON LETTER — 12/14
K



MIKE MERTZ:

We have been working with Frank Iencarelli, on Bert Hazel's staff; Donna Fuller, Customer Accounting; and Rick Moss, Law Department regarding the City of San Jose proposal.

On the surface, we do not support the City of San Jose's proposal to increase our role as their tax collector. Customer Accounting also supports our position.

Rick Moss has been dealing with the City of San Jose on this matter. Mike Weaver is working with Rick and we will respond to Bert when we have costs and administrative impact on the corporation. This cost study is underway. Frank Iencarelli has been advised.

*[signed]*

Mike Weaver(223-3036):knw

R.M. MERTZ
DEC 3 1987
EAS
Please add to your project list



62-6218 (REV. 9/86)

**PG and E**

**FOR INTRA—COMPANY USES**

From Region or Department: Mission Trail Regional Customer Services

To Region or Department FILE NO.: 260.4

RE: LETTER OF SUBJECT: Utility Users Tax - San Jose

November 2, 1987

MIKE R. MERTZ:

Mr. Stan Whittum, Senior Investigator for the City of San Jose Finance Department, has proposed two changes to our Utility Users Tax collection procedures. Mr. Whittum has asked us to consider the proposals and respond by December 1 because the City is rewriting its ordinance for implementation in 1988.

Mr. Whittum's first proposal is:

- PG&E is not to deduct utility users taxes from billings when accounts are assigned to collection agencies.

- As a result of this change, the regular monthly payment to the City of San Jose for utility users tax would no longer include a deduction for taxes due on accounts assigned to agencies for collection.

- As an alternative, the utility users taxes would be deducted from the billings when accounts are transferred to Write-Off. At that time, uncollected taxes would also be deducted from the regular monthly payment to the City of San Jose.

The implementation of the first proposal would result in the following:

- The need to identify the tax amounts of all payments made to collection agencies for City of San Jose.

- A calculation of the fees due the collection agencies for the collection of taxes.

- A method to deduct the collection fees from the regular monthly payment to the City of San Jose.

- A method to determine the amount of tax still due on accounts at the time they are transferred to Write-Off.

- A method to deduct the amount of taxes from the regular monthly payment to the City of San Jose when accounts are transferred to Write-Off.

Mr. Whittum's first proposal would also delay the uncollected tax deductions from the regular monthly tax payments by approximately three months. This in effect, would be an additional delay in our revenues. Presently we pay the City of San Jose for all utility users tax as the taxes are billed and deduct taxes still unpaid at the time accounts are assigned to collection agencies.

Since all closing bills are now processed through the Centralized Closing Bill Unit in Stockton, a special arrangement of this sort for the City of San Jose would have to be made compatible with the CBU's operating procedures.

Mr. Whittum's second proposal is:

- PG&E is not to deduct utility users taxes when filing a claim in the case of bankruptcy. The taxes are to be included in our claim.

- As a result of this change, the regular monthly payment to the City of San Jose for utility users tax would no longer include a deduction for taxes on accounts which have filed for bankruptcy.

Our consideration of Mr. Whittum's second proposal should include thought about the following.

- Since no bankruptcy claims would be settled prior to the time accounts are normally transferred to Write-Off, a deduction at Write-Off time would not be feasible.

- The alternatives would have to be 1) hold these accounts out of Write-Off until settled or 2) code the accounts with a special code that keeps the tax on the account when it transfers to Write-Off.

- It is not uncommon for claims in bankruptcies to be settled after many years, and at only a portion of the claim.

- Since the taxes are already paid the City of San Jose on a billing basis, revenue due us would be delayed for the entire period.

- Since the bankruptcy settlement normally pays only a portion of the claim, we would need a method to determine how much should be applied to the tax portion and how much to deduct from our regular monthly payment to the City of San Jose for the unpaid portion.

We, naturally, wish to support the City of San Jose in their revenue requirement efforts with whatever is feasible and legal for us to do.

Case: 19-30088    Doc# 11845-1    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 12 of 16

Mr. Whittum has expressed to us the difficulties and expense associated with the establishment of procedures in the City offices to pursue these numerous small amounts, and the City's need for cooperation from the utilities.

Mr. Whittum has asked that we confer with Pacific Bell Company when deliberating over the proposals. Pacific Bell has, it appears, made some arrangements of these sorts in their utility users tax procedures.

Would you please advise us of the following in time to respond to Mr. Whittum by December 1.

- Are the proposals feasible; can such programming be done?

- If it can be done, how long would it take?

- How much would it cost the City of San Jose for us to do this type of special programming?

- Are there any legal or regulatory questions that need to be resolved beforehand?

- Since there is no other utility users tax jurisdiction handled in the manner proposed by Mr. Whittum, and we have no precedent to consult, are there any other questions or considerations that need be addressed?

Thank you for your cooperation in helping us respond. Any questions may be directed to Frank Iencarelli on extension 621-7183 or Willie Tyler on extension 621-7104.

*Bert Hazel*
BERT HAZEL

WJTyler(621-7104):at

cc: ERCarroll
    DSCollins
    DJFuller
    REJorgensen
    RHMoss
    GNRadford
    FJRegan
    MASilva
    RAStump
    SFSvensson
    CFVacek

**PG and E**

FOR INTRA—COMPANY USES

From Region or Department: COMMERCIAL

To Region or Department
FILE NO. 260.4

RE: LETTER OF
SUBJECT: Utility Users Tax - San Jose

December 30, 1987

BERT HAZEL:

We have reviewed the proposal of Mr. Stan Whittum, Senior Investigator for the City of San Jose Financial Department, regarding the two changes to our utility user tax collection procedures that were outlined in your letter dated November 2, 1987. After discussions with our Credit and Collection Department, the Closing Bill Unit Section, and Customer Accounting, it appears that the cost benefits are very questionable and that we feel Mr. Whittum's proposal will not be cost effective to the city.

However, we are basically complying with Mr. Whittman's first proposal. We presently assign unpaid closing bills to our new Closing Bill Unit that was established this year. The city tax is included with all the bills that are referred to our new internal collection agency. The city tax is only charged back to the city when our efforts to collect are exhausted and the bill is referred to an outside collection agency. Normally, this is approximately four months from the closed date. At the present time, our Closing Bill Unit has a very successful recovery rate of approximately 50% of the total amount assigned.

The Closing Bill Unit actively works all accounts assigned to it. As a result, accounts they assigned to an outside agency have only a 2 - 5 % recovery rate.

Due to a very low recover rate and an increased administrative burden on PG&E, we recommend that we do not adopt the city's second proposal which would include city tax with our bankruptcy filing.

If we filed the city tax with our bills, the unpaid tax would be reversed at write-off. We would not carry an unpaid tax for an indefinite period. Furthermore if a collection was made through the courts, we would first need to determine if the account was in write-off and then establish a procedure to distribute the amount (normally a partial settlement) to the utility and the city. We would then need to establish a program to adjust the balance of the unpaid tax and deduct that amount from the city's monthly check.

Based on the above, we feel the city's proposal would cause insurmountable administrative and controlling problems to assure the proper credit was applied. The results just do not justify a change in our procedure.

"THINK SAFETY"

Bert Hazel                    -2-                    December 30, 1987

The following is our response to the specific questions you asked in your letter.

1. Are the proposals feasible; can such programming be done?

   We feel the programming could be done. However, we feel to change our existing program is questionable, based on the success of our Closing Bill Unit. Reprogramming just does not appear to be a cost benefit to the city or PG&E. As an example in June, July, and August 1987, there was $63,000 in closing bills for San Jose ("vp" coded accounts) referred to an outside collection agency. To date, the agency has recovered $179 for .3% recovery rate. If the $179 included tax, the city would receive $8.95 less the normal collection agency fee. Therefore, it appears our Closing Bill Unit is helping the city achieve its desired closed account collection results, and additional programming and administrative costs would not benefit the city.

2. If it can be done, how long would it take?

   Depending on the final outcome and complexity, the time frame could be substantial, i.e., programming to include agency fees, full payments after write-off, partial payments, etc.

3. How much would it cost the City of San Jose for us to do this type of special programming?

   If the city tax was included with bills referred to the outside collection agency, the tax would still be reversed at our write-off date. Therefore, the outside agency would only have approximately two months to collect our total bill plus the tax. Since we only anticipate collecting 2 to 5% of the amount referred, the city tax portion would be minimal. We estimate that if these proposed changes were initiated, it would cost the city between $5,000 and $10,000 for our programming costs associated with these proposals. This cost estimate does not include administrative and additional carrying cost that the city should be responsible for in our effort to assure the city's proposal is revenue neutral to PG&E.

4. Are there any legal or regulatory questions that need to be resolved beforehand?

   There is a possibility that the city's proposed ordinance would need to be reviewed to assure our ratepayers are not subsidizing city's proposal. Also, the legality of an ordinance compelling the utility to assign the city unpaid taxes to our agency with our unpaid closing bills.

Case: 19-30088    Doc# 11845-1    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 15 of 16

Bert Hazel       -3-       December 30, 1987

5. Since there is no other utility users tax jurisdiction handled in the manner proposed by Mr. Whittum and we have no precedent to consult, are there any other questions or considerations that need to be addressed?

   The city should be advised that we do not support their proposals. We do not feel they would be cost effective and we do not want to administer different programs for each city's tax application. Based on the performance, our Closing Bill Unit will continue to take appropriate collection efforts to collect the tax for the city prior to the accounts being assigned to the outside collection agency or going to write-off.

Thank you for giving us the opportunity to review these proposals and your concerns. Any questions may be directed to Gene Simonetti on extension 223-2789 or Mike Weaver on extension 223-3036.

MICHAEL MERTZ

Mike Weaver(223-3036):knw

Case: 19-30088   Doc# 11845-1   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 16 of 16