1          **Exhibit 5**

STATE OF CALIFORNIA                                    ARNOLD SCHWARZENEGGER, *Governor*

## PUBLIC UTILITIES COMMISSION
505 VAN NESS AVENUE
SAN FRANCISCO, CA 94102-3298



May 21, 2010

<div align="center">

**Advice Letter 3110-G/3651-E**

</div>

Jane K. Yura
Vice President, Regulation and Rates
Pacific Gas and Electric Company
77 Beale Street, Mail Code B10B
P.O. Box 770000
San Francisco, CA 94177

**Subject: 0.3% Franchise Surcharge for Gas and Electric Customers within the City of San Jose**

Dear Ms. Yura:

Advice Letter 3110-G/3651-E is effective May 5, 2010.

Sincerely,

Julie A. Fitch, Director
Energy Division



**Jane K. Yura**
Vice President
Regulation and Rates

Pacific Gas and Electric Company
77 Beale St., Mail Code B10B
P.O. Box 770000
San Francisco, CA 94177

Fax: 415.973.6520

April 5, 2010

**Advice 3110-G/3651-E**
(Pacific Gas and Electric Company ID U 39 M)

Public Utilities Commission of the State of California

**Subject:** **0.3% Franchise Surcharge for Gas and Electric Customers within the City of San Jose**

Pacific Gas and Electric Company (PG&E) hereby requests approval by the California Public Utilities Commission (Commission) to bill and collect from its customers within the City of San Jose (City) an additional three tenths of one percent (0.3%) electric franchise surcharge and an additional three tenths of one percent (0.3%) gas franchise surcharge to be remitted to the City by PG&E, pursuant to new amendments to PG&E's existing franchise agreements with the City.

A sample of the revised bill format(s) are attached as Attachment A to this advice letter.

**Purpose**

PG&E proposes to add an additional three tenths of one percent (0.30%) franchise fee surcharge line item on the electric and gas bills of customers within the City pursuant to PG&E's new amendments to the franchise agreements with the City, which expressly provide for the additional amount to be surcharged to customers within the City. Under the terms of the franchise agreements, in order for PG&E to bill and collect the additional franchise surcharge, PG&E must obtain the Commission's approval. Commission Decision (D.) 89-05-063, dated May 26, 1989 (32 CPUC 2d 60),[1] established the procedure for filing an advice letter where the local governmental entity requires the public utility to collect franchise fees exceeding the average franchise fees within the service territory of the utility. PG&E makes this filing pursuant to D.89-05-063.

**Background**

PG&E's electric and gas franchises with the City were obtained in 1971. The franchise agreements include a provision that allows either party, within a prescribed time frame that occurs every ten years, to request a change in the amount of compensation to be paid annually ("the Franchise Fee Re-opener"). In the event the parties do not reach agreement on any requested change in the compensation, the Franchise Fee Re-opener provides that either party may refer the matter to arbitration. As a charter city, the City is permitted to negotiate franchise fees in excess of the statutory formulas set forth in the Broughton Act (Pub. Util. Code §§ 6001-6017) or the Franchise Act of 1937 (Pub. Util. Code §§ 6231-35). *See* D. 89-05-063 (32 CPUC 2d 60, 64). Pursuant to the Franchise

---

[1] Investigation 84-05-002, Guidelines For the Equitable Treatment of Revenue-Producing Mechanisms Imposed By Local Governmental Entities on Public Utilities.

Fee Re-Opener, the franchise agreements were amended in 1984 to increase the franchise fee to two percent (2.0%). The franchise agreements authorize either party to trigger the Franchise Fee Re-Opener next in calendar year 2011. PG&E and the City addressed the franchise fee to be paid under the electric and gas franchises, in advance of the prescribed time in Franchise Fee Re-Opener next year.[2] The parties recognized that an informal resolution of the franchise fee to be paid the City would avoid protracted negotiations and the transaction cost and expense of arbitration proceedings under the Franchise Fee Re-Opener. PG&E and the City reached agreement to structure an increase in the payment of franchise fees in accordance with the Commission's guidelines in D.89-05-063.

On February 23, 2010, the San Jose City Council adopted amendments to the electric and gas franchise agreements, Ordinance Nos. 28179 and 28720 (Attachment B, attached hereto and incorporated by reference).[3] The franchises require that PG&E pay the City a basic franchise fee of two percent (2.0%) of the gross annual receipts from the sale, transmission or distribution of gas and electricity within the City. In addition to the basic franchise fee, the electric and gas franchises provide for the payment of an additional three tenths of one percent (0.30%) of PG&E's gross annual receipts from its customers within the City, subject to the express condition that PG&E obtain Commission approval to collect and remit this additional amount to the City as a Franchise Fee Surcharge in accordance with D.89-05-063.

In D.89-05-063, the Commission addressed costs imposed on public utilities by local government revenue producing mechanisms and the appropriate ratemaking treatment for increases in franchise fees. As a preliminary matter, the Commission acknowledged that it did not dispute the authority or right of any local governmental entity which as a matter of general law or judicial decision has the jurisdiction to impose, levy or increase taxes and fees on utility customers or on the utility itself. (Id. at 69.) However, the Commission is the sole authority to determine and regulate the rates of a public utility for service furnished by it. (Id.) The Commission recognized that where franchise fees attributable to one city were substantially above the utility's service territory, being required to share in paying that city's higher-than-average costs in rates would result in inequities between classes of ratepayers. (Id.) The Commission stated:

> To continue to incorporate significantly differing levels of new
> and escalating local entity taxes and fees in basic rates
> applicable equally to all ratepayers in a utility's service territory,

---

[2] This agreement was the result of a settlement of several disputed matters between PG&E and the City, including the City's challenge of PG&E's implementation of the Municipal Public Lands Use Surcharge Act ("the Act") (Pub. Util. Code § 6350, et seq.). The Act requires PG&E and the other investor-owned energy utilities to collect "municipal surcharges" from customers that purchase their gas or electricity from third party energy service providers and to remit those funds to municipalities. The City's challenge of PG&E's implementation of the Act was previously raised with the Commission, which provided guidance as to the implementation of the Act in Decisions 03-10-040 (October 16, 2003) and 06-05-005 (May 11, 2006), but denied the City's requests for relief. Among other things, the settlement resolved the continuing dispute with the City concerning PG&E's implementation of the Act.

[3] The franchise agreements are memorialized in San Jose Ordinance Nos. 15879 and 15880, as amended by Ordinance Nos. 21676, 21677, 26913, 26914, 28179 and 28720, all of which are set forth in Attachment B.

increasingly means that some of these ratepayers would be subsidizing others but are not themselves benefiting from such increased taxes and fees.   It is not just or reasonable that the significantly higher levels derived from some entities only should be buried in basic rates applicable to all ratepayers of the utility.   Averaging such costs among all ratepayers creates inequities between classes of ratepayers.   It is appropriate and reasonable that these significantly higher costs should be identified and borne only by the ratepayers in the local governmental area that originated them.

(Id., 32 CPUC 2d at 69.)

Pursuant to D.89-05-063, the Commission has recently approved electric and gas franchise fee surcharges on PG&E's customers in the City of Bakersfield.  See PG&E's Advice Letter No. 2980-G/3380-E filed December 18, 2008, effective January 20, 2009 (authorizing PG&E to bill and collect a 1.0% franchise fee surcharge on electric and gas customers in the City of Bakersfield).  The Commission has also approved electric and gas franchise fee surcharges by other public utilities.  See Southern California Edison's Advice Letter No. 1881-E filed March 30, 2005, effective May 9, 2005 (authorizing SCE to bill and collect a 1.0% electric franchise fee surcharge on electric customers in the City of Santa Barbara); D.07-10-24 (2007 Cal. PUC LEXIS 560) (granting SoCalGas authorization to bill and collect a 1.0% gas franchise surcharge on gas customers in the City of Ventura).  In approving the franchise fee surcharge in D.07-10-24, the Commission recognized that although the benefits of the increased franchise fees are generally localized, the ratepayers of SoCalGas also benefit as the burden of the surcharge will be paid only by customers in the City of Ventura, and not other customers throughout the utility's service territory.  (Id., 2007 Cal. PUC LEXIS 560, *7)

In accordance with D.89-05-063 and Section 4.1 of the electric and gas franchise agreements with the City which provide for the surcharge, PG&E shall collect, with the Commission's approval, the additional three-tenths of one percent (0.30%) as a surcharge.  PG&E will bill and collect the surcharge revenues and remit the revenues directly to the City.  The percentage would be the same for all classes of electric and gas customers located in the City.

Based on the gross annual electric and gas receipts in the City during 2009, PG&E estimates that the electric and gas surcharge will result in an additional collection of approximately $2,700,000 annually, and represents an increase of $0.23 to a typical City residential customer's monthly electric bill and $0.12 to a typical City residential monthly gas bill.

PG&E shall implement the electric and gas franchise surcharge as soon as possible after Commission approval.   The City supports this advice filing.

No cost information is required for this advice filing.

**Protests**

Anyone wishing to protest this filing may do so by letter sent via U.S. mail, by facsimile or electronically, any of which must be received no later than **April 26, 2010**, which is 21 days after the date of this filing.  Protests should be mailed to:

> CPUC Energy Division
> Tariff Files, Room 4005
> DMS Branch
> 505 Van Ness Avenue
> San Francisco, California  94102
>
> Facsimile: (415) 703-2200
> E-mail: jnj@cpuc.ca.gov and mas@cpuc.ca.gov

Copies of protests also should be mailed to the attention of the Director, Energy Division, Room 4004, at the address shown above.

The protest also should be sent via U.S. mail (and by facsimile and electronically, if possible) to PG&E at the address shown below on the same date it is mailed or delivered to the Commission:

> Jane K. Yura
> Vice President, Regulations and Rates
> Pacific Gas and Electric Company
> 77 Beale Street, Mail Code B10B
> P.O. Box 770000
> San Francisco, California  94177
>
> Facsimile: (415) 973-6520
> E-mail: PGETariffs@pge.com

**Effective Date**

PG&E requests that this advice filing become effective on regular notice, **May 5, 2010**, which is 30 calendar days after the date of filing.

**Notice**

In accordance with General Order 96-B, Section IV, a copy of this advice letter is being sent electronically and via U.S. mail to parties shown on the attached list.  Address changes to the General Order 96-B service list and all electronic approvals should be directed to email PGETariffs@pge.com. Advice letter filings can also be accessed electronically at:  http://www.pge.com/tariffs.

*Jane Yura  OB*

Vice President, Regulation and Rates

cc:      Karin M. Marubito, Office of the San Jose City Attorney

Attachments:
Attachment A:          Representative PG&E Sample Bills
Attachment B:          City of San Jose's Gas and Electric Franchise Agreements

# CALIFORNIA PUBLIC UTILITIES COMMISSION

## ADVICE LETTER FILING SUMMARY
## ENERGY UTILITY

| MUST BE COMPLETED BY UTILITY (Attach additional pages as needed) |
|---|

Company name/CPUC Utility No. **Pacific Gas and Electric Company (ID U39 M)**

| Utility type: | Contact Person: Olivia Brown |
|---|---|
| ☒ ELC   ☒ GAS | Phone #: 415.973.9312 |
| ☐ PLC   ☐ HEAT   ☐ WATER | E-mail: oxb4@pge.com |

| EXPLANATION OF UTILITY TYPE | (Date Filed/ Received Stamp by CPUC) |
|---|---|
| ELC = Electric          GAS = Gas    ☐ <br> PLC = Pipeline          HEAT = Heat    WATER = Water | |

Advice Letter (AL) #: 3110-G/3651-E                                    **Tier:** 2

Subject of AL: 0.3% Franchise Surcharge for Gas and Electric Customers within the City of San Jose

Keywords (choose from CPUC listing): Compliance

AL filing type: ☐ Monthly ☐ Quarterly ☐ Annual ☒ One-Time ☐ Other _____

If AL filed in compliance with a Commission order, indicate relevant Decision/Resolution #: N/A

Does AL replace a withdrawn or rejected AL?  If so, identify the prior AL: No

Summarize differences between the AL and the prior withdrawn or rejected AL: N/A

Is AL requesting confidential treatment?  If so, what information is the utility seeking confidential treatment for: No

Confidential information will be made available to those who have executed a nondisclosure agreement: N/A

Name(s) and contact information of the person(s) who will provide the nondisclosure agreement and access to the confidential information: N/A

_____

Resolution Required? ☐ Yes   ☒No

Requested effective date: May 5, 2010                    No. of tariff sheets: N/A

Estimated system annual revenue effect (%):  N/A

Estimated system average rate effect (%): N/A

When rates are affected by AL, include attachment in AL showing average rate effects on customer classes (residential, small commercial, large C/I, agricultural, lighting). N/A

Tariff schedules affected: N/A

Service affected and changes proposed: N/A

Protests, dispositions,  and all other correspondence regarding this AL are due no later than 20 days after the date of this filing, unless otherwise authorized by the Commission, and shall be sent to:

| | |
|---|---|
| **CPUC, Energy Division** <br> **Tariff Files, Room 4005** <br> **DMS Branch** <br> **505 Van Ness Ave., San Francisco, CA 94102** <br> jnj@cpuc.ca.gov and **mas@cpuc.ca.gov** | **Pacific Gas and Electric Company** <br> **Attn: Jane K. Yura, Vice President, Regulation and Rates** <br> **77 Beale Street, Mail Code B10B** <br> **P.O. Box 770000** <br> **San Francisco, CA 94177** <br> **E-mail: PGETariffs@pge.com** |

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 8 of 115

# Advice 3110-G/3651-E

# Attachment A:
# Representative PG&E Sample Bills

 **Pacific Gas and Electric Company**   WE DELIVER ENERGY.™   *Energy Statement*

```
99901234567890100000059700000005970
```

| Account Number | Bill Date | Amount Due | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 1234567890-1 | 08/23/2010 | **$59.70** | 08/23/2010 | |

001:4.90.14462 1 AV 0.238

||||||||||||||||||||||||||||||||||||

JANE SAMPLE – G1/E1 – Residential Service
123 JAMESTOWN
SAN JOSE CA 99999-1000

PG&E
BOX 997300
SACRAMENTO CA
95899-7300

201.1205

*Please return this portion with your payment. Thank you.*

## ACCOUNT SUMMARY

**Telephone Assistance**
1-800-743-5000
Assistance is available by
telephone 24 hours per day,
7 days per week.

**Local Office Address**
123 MAIN STREET
SAN JOSE CA 99999

**Account Number**
1234567890-1

August 2010

| Service | Service Dates | Amount |
|---|---|---|
| Gas | 07/01/2010 To 08/01/2010 | $28.45 |
| Electric | 07/01/2010 To 08/01/2010 | 26.25 |
| | | |
| Energy Commission Tax | | 0.05 |
| Gas PPP Surcharge | | 2.04 |
| Utility Users' Tax | | 2.74 |
| San Jose Franchise Surcharge *see note* | | 0.17 |
| | | |
| TOTAL CURRENT CHARGES | | $59.70 |
| Previous Balance | | 65.00 |
| 06/15 Payment – Thank You | | 65.00- |

| **TOTAL AMOUNT DUE** | **$59.70** |
|---|---|
| **DUE DATE – 08/23/2010** | |

Information on the San Jose Franchise Surcharge is available by contacting the City of San Jose Customer Service at (408) 535-3500.

Form 01-6630
Advice 2626-E-B
Revised February 2005



 Recycled Paper
30% Post Consumer Waste

Page 1 of 4

Form 01-6630 (1/05)

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 10 of 115



**Pacific Gas and Electric Company**

**WE DELIVER ENERGY.**

JANE SAMPLE

123 JAMESTOWN
SAN JOSE CA 99999 - 1000

## GAS ACCOUNT DETAIL

Service ID# : 2468024680
Rate Schedule: G1 _ Residential Service
Billing Days:   xx days

| Serial | Meter # | Prior Meter Read | Current Meter Read | Difference | Multiplier | Usage |
|--------|---------|------------------|--------------------|------------|------------|-------|
| H | 1212A1 | 47 | 77 | 30 | 1.016900 | 31 Therms |

**Charges**

**07/18/2010 – 07/31/2010**

| | | |
|---|---|---|
| Gas Charges | | $12.07 |
| Baseline Quantity | 25.06000 Therms | |
| Baseline Usage | 13.15152 Therms @  $0.91778 | |
| **Net Charges** | | **$12.07** |

*PG&E's Gas Procurement Cost (Rate Schedule G-CP) is $0.5212 / therm*

**Taxes and Other**

| | | |
|---|---|---|
| Gas PPP Surcharge ($0.06535 / therm) | | $0.87 |
| Utility Users' Tax (5.000%) | | 0.60 |
| San Jose Franchise Surcharge | | 0.04 |

**Charges**

**08/01/2010 – 08/19/2010**

| | | |
|---|---|---|
| Gas Charges | | $16.38 |
| Baseline Quantity | 34.01000 Therms | |
| Baseline Usage | 17.84849 Therms @  $0.91778 | |
| **Net Charges** | | **$16.38** |

*PG&E's Gas Procurement Cost (Rate Schedule G-CP) is $0.5212 / therm*

**Taxes and Other**

| | | |
|---|---|---|
| Gas PPP Surcharge ($0.06535 / therm) | | $1.17 |
| Utility Users' Tax (5.000%) | | 0.82 |
| San Jose Franchise Surcharge | | 0.05 |

**TOTAL CHARGES**                                                            **$32.00**

| Usage Comparison | Days Billed | Therms Billed | Therms per Day |
|------------------|-------------|---------------|----------------|
| This Year | 33 | 31 | 0.9 |
| Last Year | N/A | N/A | N/A |

Recycled Paper
30% Post-Consumer Waste

1234567890-1
Page 3  of 4



**Pacific Gas and Electric Company** WE DELIVER ENERGY.™

JANE SAMPLE

## ELECTRIC ACCOUNT DETAIL

Service ID# : 1357913579
Rate Schedule: E1 TB Residential Service
Billing Days:  xx days

| Serial | Rotating Outage Blk | Meter # | Prior Meter Read | Current Meter Read | Difference | Meter Constant | Usage |
|--------|---------------------|---------|------------------|--------------------|-----------|----------------|-------|
| H | 13H | 63L788 | 58,145 | 58,366 | 221 | 1 | 221 Kwh |

### Charges

**07/18/2010 – 08/19/2010**

| | | | |
|---|---|---|---|
| Electric Charges | | | $26.25 |
| Baseline Quantity | 313.60000 | Kwh | |
| Baseline Usage | 221.00000 | Kwh @ $0.11877 | |
| Net Charges | | | $26.25 |

The net charge shown above include the following  component(s).  Please see definitions on Page 2 of the bill.

| | |
|---|---|
| Generation | $9.93 |
| Transmission | 2.17 |
| Distribution | 8.19 |
| Public Purpose Programs | 2.72 |
| Nuclear Decommissioning | 0.06 |
| DWR Bond Charge | 1.14 |
| Ongoing CTC | 1.23 |
| Energy Cost Recovery Amount | 0.81 |

### Taxes and Other

| | |
|---|---|
| Energy Commission Tax | $ 0.05 |
| Utility Users' Tax (5.000%) | 1.32 |
| San Jose Franchise Surcharge | 0.08 |

**TOTAL CHARGES** **$27.70**

| Usage Comparison | Days Billed | Kwh Billed | Kwh per Day |
|------------------|-------------|------------|-------------|
| This Year | 33 | 221 | 6.9 |
| Last Year | N/A | N/A | N/A |

Rotating outage blocks are subject to change without advance notice due to operational conditions.

Generation includes charges for the portion of your energy usage provided by the Department of Water Resources (DWR) and is being collected by PG&E as an agent for DWR.  DWR is collecting x.xxx cents per kWh from bundled customers for each kWh it provides plus the Power Charge Indifference Adjustment component of the Cost Responsibility Surcharge from direct access and transitional bundled customers.

The rates shown above are applicable to bundled service customers.  Direct Access and Community Choice Aggregation customers pay only a portion of these rates.  Please see the appropriate rate schedule for the applicable charges.

 

Recycled Paper
30% Post-Consumer Waste

Rev1 07 6832 576

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 12 of 115



## Pacific Gas and Electric Company

**WE DELIVER ENERGY.™**

**Energy Statement**

999012345678901000000493700004937

| Account Number | Bill Date | Amount Due | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 1234567890-1 | 07/30/2010 | $49.37 | 08/23/2010 | |

001:4.90.14462 1 AV 0.238

JANE SAMPLE – E1-DA-Residential-Continuous
123 JAMESTOWN
SAN JOSE CA 99999-1000

PG&E
BOX 997300
SACRAMENTO CA
95899-7300

200.0037

*Please return this portion with your payment. Thank you.*

---

**Telephone Assistance**

1-800-743-5000
Assistance is available by
telephone 24 hours per day,
7 days per week.

**Local Office Address**

123 MAIN STREET
SAN JOSE CA 99999

**Account Number**

1234567890-1

July 2010

### ACCOUNT SUMMARY

| Service | Service Dates | Amount |
|---|---|---|
| Electric | 07/01/2010 To 07/30/2010 | $46.89 |
| Utility Users' Tax | | 2.34 |
| San Jose Franchise Surcharge *see note* | | 0.14 |
| TOTAL CURRENT CHARGES | | $49.37 |
| Previous Balance | | 48.31 |
| 07/19 Payment – Thank You | | 48.31- |

| **TOTAL AMOUNT DUE** | **$49.37** |
|---|---|
| **DUE DATE – 08/23/2010** | |

Information on the San Jose Franchise Surcharge is available by contacting the City of San Jose Customer Service at (408) 535-3500.

Recycled Paper
30% Post-Consumer Waste

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 13 of 115



**Pacific Gas and Electric Company**     WE DELIVER ENERGY.™

JANE SAMPLE

123 JAMESTOWN
SAN JOSE 99999-10000

## ELECTRIC ACCOUNT DETAIL

Service ID#:  1357913579
Rate Schedule:  E1 TB Residential Service
Billing Days:   30 days

| Serial | Rotating Outage Blk | Meter # | Prior Meter Read | Current Meter Read | Difference | Meter Constant | Usage |
|--------|---------------------|---------|------------------|--------------------|------------|----------------|-------|
| M | 10 | 63L788 | 61,553 | 62,093 | 540 | 1 | 540 Kwh |

### Charges

**07/01/2010 – 07/30/2010**

| | | | |
|---|---|---|---|
| Electric Charges | | | $42.50 |
| Baseline Quantity | 246.00000 | Kwh | |
| Baseline Usage | 246.00000 | Kwh @ $0.05550 | |
| 101-130% of Baseline | 73.80000 | Kwh @ $0.06245 | |
| 131-200% of Baseline | 172.20000 | Kwh @ $0.10207 | |
| 201-300% of Baseline | 48.00000 | Kwh @ $0.13870 | |
| Over 300% of Baseline | 0.00000 | Kwh @ $0.15789 | |
| DA CRS | | | 4.30 |
| DA CRS Exemption | | | 0.24- |
| Franchise Fee Surcharge | | | 0.33 |
| Net Charges | | | $46.89 |

The net charge shown above include the following  component(s).  Please see
definitions on Page 2 of the bill.

| | |
|---|---|
| Transmission | $4.29 |
| Distribution | 31.91 |
| Public Purpose Programs | 6.15 |
| Nuclear Decommissioning | 0.15 |
| Ongoing CTC | 2.35 |
| Energy Cost Recovery Amount | 1.71 |
| Franchise Fee Surcharge | 0.33 |

### Taxes and Other

| | |
|---|---|
| Utility Users' Tax (5.000%) | 2.34 |
| San Jose Franchise Surcharge | 0.14 |

**TOTAL CHARGES**                                                    **$49.17**

| Usage Comparison | Days Billed | Kwh Billed | Kwh per Day |
|------------------|-------------|------------|-------------|
| This Year | 30 | 540 | 18.0 |
| Last Year | 30 | 540 | 18.0 |

Rotating outage blocks are subject to change without advance notice due to operational conditions.

Generation includes charges for the portion of your energy usage provided by the Department of Water Resources (DWR) and is being collected by PG&E as an agent for DWR.  DWR is collecting x.xxx cents per  kWh from bundled customers for each kWh it provides plus the Power Charge component of the Cost Responsibility Surcharge from direct access and transitional bundled service customers.

The rates shown above are applicable to bundled service customers.  Direct Access and Community Choice Aggregation customers pay only a portion of these rates.  Please see the appropriate rate schedule for the applicable charges.




Recycled Paper
30% Post Consumer Waste

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 14 of 115



**Pacific Gas and Electric Company**

**WE DELIVER ENERGY.™**

**Energy Statement**

999012345678901000000496300000004963

| Account Number | Bill Date | Amount Due | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 1234567890-1 | 07/30/2010 | **$49.63** | 08/23/2010 | |

001:4.90.14462 1 AV 0.238

JANE SAMPLE – E1 – Residential Service – DA – Non-Continuous
123 JAMESTOWN
SAN JOSE CA 99999-1000

PG&E
BOX 997300
SACRAMENTO CA
95899-7300

200.0037

*Please return this portion with your payment. Thank you.*

---

**Telephone Assistance**

1-800-743-5000
Assistance is available by
telephone 24 hours per day,
7 days per week.

**Local Office Address**

123 MAIN STREET
SAN JOSE CA 99999-1000

**Account Number**

1234567890-1

July 2010

**ACCOUNT SUMMARY**

| Service | Service Dates | Amount |
|---|---|---|
| Electric | 07/01/2010 To 07/30/2010 | $47.13 |
| Utility Users' Tax | | 2.36 |
| San Jose Franchise Surcharge *see note* | | .14 |
| TOTAL CURRENT CHARGES | | $49.63 |
| Previous Balance | | 48.29 |
| 07/13 Payment – Thank You | | 48.29- |

| | |
|---|---|
| **TOTAL AMOUNT DUE** | **$49.63** |
| **DUE DATE – 08/23/2010** | |

Information on the San Jose Franchise Surcharge is available by contacting the City of San Jose Customer Service at (408) 535-3500.

Recycled Paper
30% Post-Consumer Waste

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 15 of 115



**Pacific Gas and Electric Company**   WE DELIVER ENERGY.™

JANE SAMPLE

123 JAMESTOWN
SAN JOSE CA 99999 - 1000

## ELECTRIC ACCOUNT DETAIL

Service ID# :   1357913579
Rate Schedule: E1 TB Residential Service
Billing Days:   30 days

| Serial | Rotating Outage Blk | Meter # | Prior Meter Read | Current Meter Read | Difference | Meter Constant | Usage |
|--------|---------------------|---------|------------------|--------------------|------------|----------------|-------|
| M | 10 | 63L788 | 61,553 | 62,093 | 1,000 | 1 | 540 Kwh |

### Charges

07/01/2010 – 07/30/2010

| | | | |
|---|---|---|---|
| Electric Charges | | | $42.50 |
| Baseline Quantity | 246.00000 Kwh | | |
| Baseline Usage | 246.00000 Kwh @ $0.05550 | | |
| 101-130% of Baseline | 73.80000 Kwh @ $0.06245 | | |
| 131-200% of Baseline | 172.20000 Kwh @ $0.10207 | | |
| 201-300% of Baseline | 48.00000 Kwh @ $0.13870 | | |
| Over 300% of Baseline | 0.00000 Kwh @ $0.15789 | | |
| DA CRS | | 4.30 | |
| Franchise Fee Surcharge | | 0.33 | |
| Net Charges | | | $47.13 |

The net charge shown above include the following component(s). Please see
definitions on Page 2 of the bill.

| | |
|---|---|
| Transmission | $ 4.29 |
| Distribution | 31.91 |
| Public Purpose Programs | 6.15 |
| Nuclear Decommissioning | 0.15 |
| DWR Bond Charge | 2.57 |
| Power Charge Indifference Adj. | -2.33 |
| Ongoing CTC | 2.35 |
| Energy Cost Recovery Amount | 1.71 |
| Franchise Fee Surcharge | 0.33 |

### Taxes and Other

| | |
|---|---|
| Utility Users' Tax (5.000%) | $2.36 |
| San Jose Franchise Surcharge | .14 |

## TOTAL CHARGES        $49.63

| Usage Comparison | Days Billed | Kwh Billed | Kwh per Day |
|------------------|-------------|------------|-------------|
| This Year | 30 | 540 | 18.0 |
| Last Year | 30 | 540 | 18.0 |

Rotating outage blocks are subject to change without advance notice due to operational conditions.

Generation includes charges for the portion of your energy usage provided by the Department of Water Resources (DWR) and
is being collected by PG&E as an agent for DWR.  DWR is collecting x.xxx cents per kWh from bundled customers for each
kWh it provides plus the Cost Responsibility Surcharge from direct access and transitional bundled service customers.

The rates shown above are applicable to bundled service customers.  Direct Access and Community Choice Aggregation
customers pay only a portion of these rates.  Please see the appropriate rate schedule for the applicable charges.

    Recycled Paper
30% Post-Consumer Waste

1234567890-1
Page 3 of 3

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
16 of 115



**Pacific Gas and Electric Company**

WE DELIVER ENERGY.™

*Energy Statement*

999012345678901000007529300000075293

| Account Number | Bill Date | Amount Due | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 1234567890-1 | 07/30/2010 | **$752.93** | 08/23/2010 | |

001:4.90.14462 1 AV 0.238

JANE SAMPLE – GNR1/A1 Small Commercial
123 JAMESTOWN
SAN JOSE CA 99999-1000

PG&E
BOX 997300
SACRAMENTO CA
95899-7300

200.0485

*Please return this portion with your payment. Thank you.*

---

**Telephone Assistance**
1-800-743-5000
Assistance is available by
telephone 24 hours per day,
7 days per week.

**Local Office Address**
123 MAIN STREET
SAN JOSE CA 99999

**Account Number**
1234567890-1

July 2010

**ACCOUNT SUMMARY**

| Service | Service Dates | Amount |
|---|---|---|
| Gas | 07/01/2010 To 07/30/2010 | $586.31 |
| Electric | 07/01/2010 To 07/30/2010 | 111.49 |
| | | |
| Gas PPP Surcharge | | 17.98 |
| Energy Commission Tax | | 0.17 |
| Utility Users' Tax | | 34.89 |
| San Jose Franchise Surcharge *see note* | | 2.09 |
| | | |
| TOTAL CURRENT CHARGES | | $752.93 |
| Previous Balance | | 759.30 |
| 07/20 Payment – Thank You | | 759.30- |

| **TOTAL AMOUNT DUE** | **$752.93** |
|---|---|
| **DUE DATE – 08/23/2010** | |

Information on the San Jose Franchise Surcharge is available by contacting the City of San Jose
Customer Service at (408) 535-3500.

*Recycled Paper*
*30% Post Consumer Waste*

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 17 of 115



**Pacific Gas and Electric Company**

**WE DELIVER ENERGY.™**

JANE SAMPLE

123 JAMESTOWN
BAKERSFIELD 9999-1000

## GAS ACCOUNT DETAIL

Service ID# : 2468024680
Rate Schedule: GNR1 Gas Service to Small Commercial Customers
Billing Days: 30 days

| Serial | Meter # | Prior Meter Read | Current Meter Read | Difference | Multiplier | Usage |
|--------|---------|------------------|--------------------|-----------|-----------|-------|
| F | 1212A1 | 42,473 | 42,673 | 500 | 1.001000 | 500 Therms |

Charges

**07/01/2010 – 07/30/2010**

| | | |
|---|---|---|
| Gas Charges | $586.31 | |
| Net Charges | | $586.31 |

*PG&E's Gas Procurement Cost (Rate Schedule G-CP) is $0.86531/therm*

Taxes and Other

| | |
|---|---|
| Gas PPP Surcharge ($0.03595/therm) | $17.98 |
| Utility Users' Tax (5.000%) | 29.32 |
| San Jose Franchise Surcharge | 1.76 |

**TOTAL CHARGES**      **$635.37**

| Usage Comparison | Days Billed | Therms Billed | Therms per Day |
|------------------|-------------|---------------|----------------|
| This Year | 30 | 500 | 16.7 |
| Last Year | 30 | 500 | 16.7 |




Recycled Paper
30% Post Consumer Waste

1234567890-1
Page 3 of 4



**Pacific Gas and Electric Company**  WE DELIVER ENERGY.™

JANE SAMPLE

---

## ELECTRIC ACCOUNT DETAIL

Service ID# : 2468024680
Rate Schedule: A1 Small General Service
Billing Days: 30 days

| Serial | Rotating Outage Blk | Meter # | Prior Meter Read | Current Meter Read | Difference | Meter Constant | Usage |
|---|---|---|---|---|---|---|---|
| X | 50 | 2424A1 | 72,138 | 72,931 | 793 | 1 | 793 Kwh |

### Charges

**07/01/2010 – 07/30/2010**

| | | |
|---|---|---|
| Electric Charges | $111.49 | |
| Net Charges | | $111.49 |

The net charges shown above include the following component(s). Please see definitions on Page 2 of the bill.

| | |
|---|---|
| Generation | $49.62 |
| Transmission | 6.28 |
| Distribution | 35.93 |
| Public Purpose Programs | 9.68 |
| Nuclear Decommissioning | 0.21 |
| DWR Bond Charge | 3.78 |
| Ongoing CTC | 3.47 |
| Energy Cost Recovery Amount | 2.52 |

### Taxes and Other

| | |
|---|---|
| Energy Commission Tax | $0.17 |
| Utility Users' Tax (5.000%) | 5.57 |
| San Jose Franchise Surcharge | .33 |

← 

## TOTAL CHARGES                                           **$117.56**

| Usage Comparison | Days Billed | Kwh Billed | Kwh Per Day |
|---|---|---|---|
| This Year | 30 | 793 | 26.4 |
| Last Year | 30 | 588 | 19.6 |

Rotating outage blocks are subject to change without advance notice due to operational conditions.

Generation includes charges for the portion of your energy usage provided by the Department of Water Resources (DWR) and is being collected by PG&E as an agent for DWR. DWR is collecting x.xxx cents per kWh from bundled customers for each kWh it provides plus the Power Charge component of the Cost Responsibility Surcharge from direct access and transitional bundled service customers.

The rates shown above are applicable to bundled service customers. Direct access and Community Choice Aggregation customers pay only a portion of these rates. Please see the appropriate rate schedule for the applicable charges.




Recycled Paper
30% Post-Consumer Waste

1234567890-1
Page 3 of 4
form 01-8632 (r08)

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 19 of 115



**Pacific Gas and Electric Company** — WE DELIVER ENERGY.™ — *Energy Statement*

99901234567890100000096149000096149

| Account Number | Bill Date | Amount Due | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 1234567890-1 | 07/30/2010 | **$961.49** | 08/23/2010 | |

001:4.90.14462 1 AV 0.238

JANE SAMPLE – A10 Medium General Demand Metered Service
123 JAMESTOWN
SAN JOSE CA 99999-1000

PG&E
BOX 997300
SACRAMENTO CA
95899-7300

201.1205

*Please return this portion with your payment. Thank you.*

**Telephone Assistance**
1-800-743-5000
Assistance is available by
telephone 24 hours per day,
7 days per week.

**Local Office Address**
123 MAIN STREET
SAN JOSE CA 99999

**Account Number**
1234567890-1

July 2010

## ACCOUNT SUMMARY

| Service | Service Dates | Amount |
|---|---|---|
| Electric | 07/01/2010 To 07/30/2010 | $912.15 |
| Energy Commission Tax | | 0.99 |
| Utility Users' Tax | | 45.61 |
| San Jose Franchise Surcharge *see note* | | 2.74 |
| TOTAL CURRENT CHARGES | | $961.49 |
| Previous Balance | | 940.38 |
| 07/20 Payment – Thank You | | 940.38- |

| **TOTAL AMOUNT DUE** | **$961.49** |
|---|---|
| **DUE DATE – 08/23/2010** | |

Information on the San Jose Franchise Surcharge is available by contacting the City of San Jose Customer Service at (408) 535-3500.

Recycled Paper
*30% Post-Consumer Waste*

 **Pacific Gas and Electric Company** — WE DELIVER ENERGY.℠

**PG&E**

JANE SAMPLE

123 JAMESTOWN
SAN JOSE CA 99999-1000

## ELECTRIC ACCOUNT DETAIL

Service ID# :   1357913579
Rate Schedule:  A10S Medium General Demand-Metered Service
Billing Days:   30 days

| Serial | Rotating Outage Blk | Meter # | Prior Meter Read | Current Meter Read | Difference | Meter Constant | Usage |
|--------|---------------------|---------|------------------|--------------------|------------|----------------|-------|
| R | 50 | 1212A1 | 14,700 | 19,200 | 4,500 | 1.0000 | 4,500 Kwh |

### Charges

**07/01/2010 – 07/30/2010**

| | | |
|---|---|---|
| Electric Charges | $912.15 | |
| Net Charges | | $912.15 |

The net charge shown above include the following component(s). Please see definitions on Page 2 of the bill.

| | |
|---|---|
| Generation | $268.52 |
| Transmission | 202.48 |
| Distribution | 336.53 |
| Public Purpose Programs | 48.78 |
| Nuclear Decommissioning | 1.22 |
| DWR Bond Charge | 21.47 |
| Ongoing CTC | 18.86 |
| Energy Cost Recovery Amount | 14.31 |

### Taxes and Other

| | |
|---|---|
| Energy Commission Tax | $0.99 |
| Utility Users' Tax (5.000%) | 45.61 |
| San Jose Franchise Surcharge | 2.74 ← |

### Demand Detail

| | |
|---|---|
| Billing Demand Summer | 80 |

## TOTAL CHARGES                                                   **$961.84**

| Usage Comparison | Days Billed | Kwh Billed | Kwh per Day |
|------------------|-------------|------------|-------------|
| This Year | 30 | 4,500 | 150.0 |
| Last Year | 30 | 4,000 | 133.3 |

Rotating outage blocks are subject to change without advance notice due to operational conditions.

Generation includes charges for the portion of your energy usage provided by the Department of Water Resources (DWR) and is being collected by PG&E as an agent for DWR.  DWR is collecting x.xxx cents per kWh from bundled customers for each kWh it provides plus the Power Charge component of the Cost Responsibility Surcharge from direct access and transitional bundled service customers.

The rates shown above are applicable to bundled service customers.  Direct Access and Community Choice Aggregation customers pay only a portion of these rates.  Please see the appropriate rate schedule for the charges applicable to direct access.

   Recycled Paper
30% Post-Consumer Waste

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 21 of 115



## Pacific Gas and Electric Company
### WE DELIVER ENERGY.™
### Energy Statement

9990123456789010000996820000996820

| Account Number | Bill Date | Amount Due | Due Date | Amount Enclosed |
|---|---|---|---|---|
| 1234567890-1 | 07/30/2010 | **$9,968.20** | 08/23/2010 | |

001:4.90.14462 1 AV 0.238

JANE SAMPLE – E19 Med/Large General Demand Metered TOU Service
123 JAMESTOWN
SAN JOSE CA 99999-1000

PG&E
BOX 997300
SACRAMENTO CA
95899-7300

200.0037

*Please return this portion with your payment. Thank you.*

---

**Telephone Assistance**

1-800-743-5000
Assistance is available by
telephone 24 hours per day,
7 days per week.

**Local Office Address**

123 JAMESTOWN
SAN JOSE CA 99999-1000

**Account Number**

1234567890-1

July 2010

## ACCOUNT SUMMARY

| Service | Service Dates | Amount |
|---|---|---|
| Electric | 07/01/2010 To 07/30/2010 | $9,446.42 |
| Energy Commission Tax | | 21.12 |
| Utility Users' Tax | | 472.32 |
| San Jose Franchise Surcharge *see note* | | 28.34 |
| TOTAL CURRENT CHARGES | | $9,968.20 |
| Previous Balance | | 9,932.60 |
| 07/22 Payment – Thank You | | 9,932.60- |

| TOTAL AMOUNT DUE DUE DATE – 08/23/2010 | $9,968.20 |
|---|---|

Information on the San Jose Franchise Surcharge is available by contacting the City of San Jose Customer Service at (408) 535-3500.

Recycled Paper
50% Post Consumer Waste

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 22 of 115



**Pacific Gas and Electric Company** — WE DELIVER ENERGY.™

JANE SAMPLE
123 JAMESTOWN
SAN JOSE CA 9999-1000

## ELECTRIC ACCOUNT DETAIL

Service ID# : 2468024680
Rate Schedule: E19S Medium General Demand-Metered TOU Service
Billing Days:  30 days

| Serial | Rotating Outage Blk | Meter # | Prior Meter Read | Current Meter Read | Difference | Meter Constant | Usage |
|--------|--------|---------|------------|------------|------------|----------|-------|
| R | 14R | 1212A1 | 18,405 | 19,205 | 800 | 120 | 96,000 kWh |
| R | 14R | 1212A1 | 11,200 | 11,600 | 400 | 120 | 48,000 Reactive |

89.00 % Power Factor = -0.24 % Adjustment

### Charges

**07/01/2010 – 07/30/2010**

| | | |
|---|---|---|
| Electric Charges | $9,484.82 | |
| Power Factor Adjustment | 19.20- | |
| Net Charges | | $9,446.42 |

The net charges shown above include the following component(s). Please see definitions on Page 2 of the bill.

| | |
|---|---|
| Generation | $4,993.92 |
| Transmission | 551.06 |
| Distribution | 1,799.99 |
| Public Purpose Programs | 981.12 |
| Nuclear Decommissioning | 25.92 |
| DWR Bond Charge | 457.92 |
| Ongoing CTC | 331.20 |
| Energy Cost Recovery Amount | 305.28 |

### Taxes and Other

| | |
|---|---|
| Energy Commission Tax | $21.12 |
| Utility Users' Tax (5.000%) | 472.32 |
| San Jose Franchise Surcharge | 28.34 |

← 

### Time of Use Detail

| Season: Winter | Energy | |
|---|---|---|
| Partial Peak | 38,400 @ $0.08264 | |
| Off-Peak | 57,600 @ $0.07296 | |

| Season: Winter | Demand | |
|---|---|---|
| Partial-Peak | 209 @ $1.920000 | |
| Off-Peak | 223 @ $6.320000 | |

**TOTAL CHARGES**     **$9,968.20**

| Usage Comparison | Days Billed | Kwh Billed | Kwh Per Day |
|---|---|---|---|
| This Year | 30 | 96,000 | 3,200.0 |
| Last Year | 30 | 87,802 | 2,926.7 |

Rotating outage blocks are subject to change without advance notice due to operational conditions.

Generation includes charges for the portion of your energy usage provided by the Department of Water Resources (DWR) and is being collected by PG&E as an agent for DWR.  DWR is collecting x.xxx cents per kWh from bundled customers for each kWh it provides plus the Power Charge component of the Direct Access Cost Responsibility Surcharge from direct access customers.

The rates shown above are applicable to bundled service customers.  Direct Access and Community Choice Aggregation  customers pay only a portion of these rates.  Please see the appropriate rate schedule for the applicable charges.

  Recycled Paper
30% Post Consumer
Waste

1234567890-1
Page 3 of 3

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
23 of 115

# Advice 3110-G/3651-E

# Attachment B:
# City of San Jose's Gas and Electric Franchise Agreements

## <u>Gas Franchise</u>

Ordinance 15879 (adopted September 20, 1971)

Ordinance 21676 (adopted June 5, 1984)

Ordinance 26913 (adopted June 10, 2003)

Ordinance 28719 (adopted February 9, 2010)

PPP:lb-lc
7/23/71
Rev. 9/16/71

ORDINANCE NO. 15879

AN ORDINANCE OF THE CITY OF SAN JOSE GRANTING TO
PACIFIC GAS AND ELECTRIC COMPANY, ITS SUCCESSORS
AND ASSIGNS, THE FRANCHISE (1) TO USE, FOR CON-
DUCTING AND DISTRIBUTING GAS SUITED FOR LIGHTING
BUT FOR USE BY CONSUMERS FOR ANY AND ALL LAWFUL
PURPOSES OTHER THAN LIGHTING, ALL PIPES AND AP-
PURTENANCES WHICH ARE NOW OR MAY HEREAFTER BE LAW-
FULLY PLACED AND MAINTAINED IN THE STREETS WITHIN
THE CITY OF SAN JOSE UNDER SUCH FRANCHISE THAT
GRANTEE MAY HAVE UNDER AND PURSUANT TO SECTION 19
OF ARTICLE XI OF THE CONSTITUTION OF THE STATE OF
CALIFORNIA, AS SAID SECTION EXISTED PRIOR TO ITS
AMENDMENT ON OCTOBER 10, 1911, (2) TO CONSTRUCT,
MAINTAIN AND USE IN SAID STREETS ALL PIPES AND AP-
PURTENANCES WHENEVER AND WHEREVER SAID CONSTITU-
TIONAL FRANCHISE IS NOT NOW OR HEREAFTER AVAILABLE
THEREFOR, NECESSARY TO CONDUCT AND DISTRIBUTE GAS
SUITED FOR, AND FOR USE BY CONSUMERS FOR, ANY AND
ALL LAWFUL PURPOSES, AND (3) TO UTILIZE SAID PIPES
AND APPURTENANCES IN SAID STREETS FOR CONDUCTING
AND DISTRIBUTING FOR USE OUTSIDE THE BOUNDARIES OF
THE CITY FOR ANY AND ALL LAWFUL PURPOSES, AND PRO-
VIDING THE TERMS AND CONDITIONS OF THE FRANCHISE
SO GRANTED.

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

SECTION 1.  Definitions.  Wherever in this ordinance the words or

phrases hereinafter in this section defined are used, they shall have

the respective meanings assigned to them in the following definitions

(unless in a given instance the context wherein they are used shall

clearly import a different meaning):

(a)  The word "Grantee" shall mean Pacific Gas and Electric

Company, and its lawful successors or assigns.

(b)  The word "City" shall mean the City of San Jose, a mu-

nicipal corporation of the State of California, in its present incor-

porated form or in any later reorganized, consolidated, enlarged or re-

incorporated form.

(c)  The word "Engineer" shall mean such officer as may from

time to time be designated by the Council of the City of San Jose or

its successor, as the Engineer referred to in this ordinance; provided,

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page
26 of 115

-1-

that until otherwise provided by said Council or its successor, the word "Engineer" shall mean the head of the Public Works Department of the City of San Jose.

(d) The word "streets" shall mean the public streets, ways, alleys and places now or hereafter established within the City, including State highways and freeways now or hereafter established within the City; provided and excepting, however, that the word "streets" shall not be deemed to mean or include any parks, playgrounds, school property or other municipal or public property not constituting public thoroughfares.

(e) The word "gas" shall mean natural or artificial gas, or a mixture of both.

(f) The words "pipes and appurtenances" shall mean pipes, pipelines, mains, services, traps, vents, vaults, manholes, meters, gauges, regulators, valves, conduits, appliances, attachments, appurtenances and, without limitation to the foregoing, any other property located or to be located in, upon, along, across, under or over the streets of City, used or useful in transmitting and/or distributing gas for the purpose for which this franchise is granted.

(g) The words "construct, maintain and use" shall mean to construct, erect, install, operate, maintain, use, repair or replace.

(h) The phrase "constitutional franchise" shall mean such franchise or right, if any, as Grantee may have because of the acceptance by Grantee or its predecessor in estate of the offer contained in the provisions of Section 19 of Article XI of the Constitution of the State of California, as said Section existed prior to its amendment on October 10, 1911.

(i) The phrase "gross receipts", as used in this Section and in other parts of this ordinance, shall mean all gross operating revenues received or receivable by Grantee from the sale of gas to Grantee's customers with points of service within the corporate limits of the City (including, but not limited to, sales to military reservations with points

of service within the City's corporate limits) which are credited to Account Nos. 480, 481 and 482 of the current Uniform System of Accounts of the Federal Power Commission, as adopted by the California Public Utilities Commission, or similar superseding accounts, or which would be credited to such accounts or similar superseding accounts if Grantee kept its books in accordance with such accounts or similar superseding accounts.

SECTION 2.  Purpose.  Subject to each and all of the terms, conditions and limitations set forth in this ordinance, there is hereby granted to Grantee the franchise to do all of the following:

(a)  To use, for transmitting and distributing gas suited for lighting but for use by consumers for any and all lawful purposes other than lighting, all pipes and appurtenances which are now or may hereafter be lawfully placed and maintained in the streets within the City under the constitutional franchise of the Grantee;

(b)  To construct, maintain and use in said streets within the City all pipes and appurtenances whenever and wherever the constitutional franchise of Grantee is not now or hereafter available therefor, necessary to transmit and distribute gas suited for, and for use by consumers for, any and all lawful purposes; and

(c)  To utilize said pipes and appurtenances in said streets for transmitting gas for use outside the boundaries of City for any and all lawful purposes.

SECTION 3.  Term.  Subject to all terms, conditions and limitations contained in this ordinance, the franchise granted by this ordinance shall endure in full force and effect until the same shall, with the consent of the Public Utilities Commission of the State of California, be voluntarily surrendered or abandoned by Grantee, or until the State or any of its political subdivisions or agencies, or the City of San Jose or any municipal or public corporation, thereunto duly authorized by law shall purchase by voluntary agreement or shall condemn and take under the power of eminent domain, all property actually used and useful in the exercise of said franchise and situate in the territorial limits of the State, municipal or public corporation purchasing or condemning such

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 28 of 115

property, or until said franchise shall be forfeited for noncompliance with its terms or until said franchise is otherwise forfeited, terminated or abandoned pursuant to any of the provisions of this ordinance or pursuant to any applicable law.

SECTION 4. Consideration. The franchise, and all rights and privileges, granted by this ordinance to Grantee are granted upon the express condition that Grantee, in consideration thereof and as compensation for the use of the streets of the City as herein authorized and permitted, shall pay to the City, in lawful money of the United States, in the manner and on the conditions hereinafter set forth in Section 5, for each of the calendar years (or fractional calendar years) following the effective date of this ordinance, a sum of money equal to one percent (1%) of Grantee's gross receipts during each such calendar year (or fractional calendar year); provided and excepting, however, that the amount of said annual compensation, and/or the formula or measure or manner in which the amount shall be determined, may be changed or amended as hereinafter provided in this Section, to wit:

(a) If, as a result of negotiation or litigation, or both, between Grantee and any other city or cities of the State of California, regardless of whether such other city or cities is or are a general law or charter city or cities, including but not limited to negotiation or litigation, or both, under any hereafter adopted statute or constitutional amendment, or if by litigation, whether the City participates therein or not, which right of participation is hereby expressly reserved to the City, or if for any other reason, the Grantee shall make payment or payments to any other city for any of said calendar years (or fractional calendar years) in accordance with a formula (hereinafter referred to as a "second formula") which if applied to the City would provide payments to the City greater than provided for by the use of the formula hereinabove specified in the first paragraph of this Section 4, such

-4-

"second formula" shall prevail over the formula hereinabove specified in the first paragraph of this Section 4 for each of said years of the term of said franchise for or during which Grantee makes payments to any other city in accordance with said "second formula".

(b) In the event that the laws of the State of California, as they exist as of the date of adoption of this ordinance, should at any time ever be amended or changed to permit general law cities, in granting franchises of the kind herein being granted to Grantee, to require the Grantee of any such franchise to pay or give any consideration or compensation in accordance with a formula (hereinafter referred to as "third formula") which, if applied to the City of San Jose and the Grantee herein, would provide payments to the City greater than provided for by the use of the formula hereinabove specified in the first paragraph of this Section 4 or by the use of the abovementioned "second formula" if such "second formula" is the higher, than in such event City shall have the right, at any time thereafter, to require Grantee to thereafter make payments in accordance with such "third formula"; provided, however, that City shall not require Grantee to make any payments pursuant to the provisions of this subparagraph (b) during the first thirty (30) years of the franchise herein granted by City to Grantee.

(c) Within the last six (6) calendar months of the calendar year 1981, and thereafter within the last six (6) calendar months of each ten (10) calendar year period following the calendar year 1981, each of such six (6) month periods being hereinafter referred to as "six-month-notice period", either City or Grantee, or each of them, may serve written notice upon the other of its desire to change the amount or kind of consideration or compensation to be annually paid or given, after the expiration of such "six-month-notice period", by Grantee to City as consideration for said franchise and as compensation for the use by Grantee of the streets of the City as herein authorized and permitted, or of its

-5-

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 30 of 115

desire to change the manner, measure or formula pursuant to which such annual consideration and compensation shall thereafter be determined. Said notice shall specify the change or changes desired. Within ninety (90) days from and after the date of service of such notice, or at such other time or times as the parties may mutually agree upon, City and Grantee shall meet and confer and attempt in good faith to resolve the matters at issue by mutual agreement. No such agreement shall be effective unless it is in writing, and unless it is approved and signed by both City and Grantee. No such agreement shall be deemed approved by City unless it shall have been approved and authorized by written ordinance adopted by the governing body of the City. Unless otherwise provided in the agreement, any change or changes agreed upon in any such agreement shall be effective from and after the commencement of the calendar year immediately following the expiration of the "six-month-notice period".

In the event that City and Grantee should fail to arrive at any agreement with respect to the proposed change or changes within ninety (90) days from and after the service of the abovementioned notice, either party may thereafter serve upon the other a written notice of its intent to present the proposed change or changes to a board of arbitration for its consideration and decision. Unless otherwise agreed to by both parties, said notice must be served no later than the 30th day of June next following the expiration of the above-mentioned "six-month-notice period".

The board of arbitration shall consist of seven (7) members, two (2) to be selected by the City, and two (2) to be selected by the Grantee. The four (4) arbitrators selected by the parties shall select three (3) neutral arbitrators. Within thirty (30) days after service of said notice of intent to submit said matter to arbitration, each of

-6-

the parties, respectively, shall select its two (2) members of the
board, and within thirty (30) days after the four are selected, they
shall select the three (3) neutral arbitrators. The board of arbitra-
tion shall then consider the proposed change or changes, and, after
giving both parties a reasonable opportunity to be heard, shall determine
what change or changes, if any, are to be made. The change or changes,
if any, ordered by the board may differ from those requested or desired
by either of the parties. The determination shall be fair and reasonable
to both parties, and in arriving at it, the board shall consider the
nature and value of the rights and privileges granted by this ordinance
to the Grantee, the costs, expenses and damages, if any, which City has
or will incur or suffer because of the grant of said rights and privileges
to Grantee or because of Grantee's exercise of such rights and privileges,
the amount paid to comparable cities for similar franchise rights and any
and all other relevant factors. The board's determination shall be in
writing, shall be by the majority vote of its seven (7) members, and
shall be final and conclusive and binding upon both parties. The board
shall render its written decision on or before, and no later than, the
last day of the first twelve (12) calendar months immediately following
the expiration of the abovementioned "six-month-notice period". Any
change or changes made by the board shall be effective retroactively as
of the first day immediately following the end of the aforementioned
"six-month-notice period", and shall continue in effect until such time
as the consideration payable by Grantee to City is again changed pursuant
to any of the provisions of this Section 4.

If said board should fail to arrive at a determination within
the twelve (12) months immediately following the expiration of the above-
mentioned "six-month-notice period", said board, unless otherwise agreed
to by both parties, shall be deemed discharged, and a second board, no

-7-

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
32 of 115

members of which shall have been a member of the previous board, shall be established as follows:  City and Grantee shall each appoint two (2) new arbitrators; City and Grantee, or either of them, shall petition the Superior Court of the State of California in and for the County of Santa Clara to appoint three (3) neutral arbitrators and to order all seven of said arbitrators to consider the proposed change or changes, to give both parties a reasonable opportunity to be heard, and to arrive at a determination, within a reasonable time specified by the Court, as to what change or changes, if any, shall be made.  The determination shall be fair and reasonable to both parties, and in arriving at it the second board shall consider all matters and factors which the former board was required to consider.  The second board's determination shall be in writing, and must be by majority vote of all seven (7) members; and its determination shall be final and conclusive and binding upon both parties.  Any change or changes made or ordered by the board shall be effective retroactively as of the first day immediately following the end of the aforementioned "six-month-notice period" and shall continue in effect until such time as the consideration payable by Grantee to City is again changed pursuant to any of the provisions of this Section 4.

All costs and expenses of the boards of arbitration, and court costs in the event recourse is had to the Superior Court as aforesaid, shall be paid equally by City and Grantee.

In the event any person appointed to serve as an arbitrator on either of the abovementioned boards should die or fail or be unable to perform the duties of an arbitrator, a substitute shall be appointed to serve in his place and stead by the party or body which appointed his predecessor.

-8-

In the event that the arbitrators fail to comply with the order of the Court and to reach a decision by the majority vote of its seven (7) members within the period specified by the Court, or within three (3) years from and after the date of expiration of the above-mentioned "six-month-notice period", whichever is the shorter period of time, the party who proposed the change or changes shall thereafter have the right to terminate the rights, privileges and franchise herein granted by City to Grantee, and upon such termination, the rights, privileges and franchises of Grantee granted by this ordinance shall be at an end; provided, however, that such right of termination shall be deemed waived if not exercised within one hundred eighty (180) days immediately following the expiration of the time, specified by the Court, within which the board was required to reach a decision.

-9-

SECTION 5. Reports, Dates of Payment. Within three (3) months from and after the expiration of each calendar year, or fractional calendar year, following the effective date of this ordinance, Grantee shall file with the City Clerk of City the original, and with the Director of Finance of City a copy, and with the City Auditor of City another copy, of a duly verified statement showing in detail the gross receipts of Grantee during the preceding calendar year or fractional calendar year, and such other data or information as City may need to calculate or determine the amounts which Grantee is obligated to pay City pursuant to the provisions of Section 4. Said statement shall be in such form and detail as from time to time may be reasonably prescribed by City.

Within fifteen (15) days from and after the time for filing of each such statement, Grantee shall pay to City, at the office of City's Director of Finance, in lawful money of the United States, the sum of money hereinabove required to be paid by Grantee to City for the calendar year, or fractional calendar year, covered by the statement.

Any neglect, omission or refusal by Grantee to file such verified statement, or to pay said percentage at the time and in the manner specified shall be grounds for the declaration of a forfeiture of this franchise and of all rights and privileges of Grantee hereunder.

In the event Grantee fails to make the payments for this franchise on or before the dates due as hereinabove provided, Grantee shall pay as additional consideration both of the following amounts:

(a) A sum of money equal to two percent (2%) of the amount due. This amount is required in order to defray those additional expenses and costs incurred by City by reason of the delinquent payment, including, but not limited to, the cost of administering, accounting and collecting said delinquent payment and the cost to City of postponing services and projects necessitated by the delay in receiving revenue.

(b) A sum of money equal to one percent (1%) of the amount due per month as interest and for loss of use of the money due.

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 35 of 115

SECTION 6. Examination of Books, Accounts and Records. The City Auditor of City, or any certified public accountant or qualified person designated by City, at any reasonable times during business hours, may make examination or audit at Grantee's office or offices, of its books, accounts and records germane to and for the purpose of verifying the data set forth in the statement required by Section 5 hereof.

All books, accounts, and other records relating to the statement required by Section 5 hereof shall be kept within the City of San Jose, or the City of San Francisco, California, or in such other place within the territory served by Grantee as the reasonable convenience of Grantee may require.

In the event that it becomes necessary for said City Auditor, or any representative designated by City, to make such examination at any place other than within the County of Santa Clara or the City and County of San Francisco, then, in that event, all increased costs and expenses to City necessary or incident to such examination and resulting from such books and records not being available within said counties shall be paid to City by Grantee on demand.

Grantee shall file with the City's City Clerk, Director of Finance and City Auditor a copy of its annual report to the California Public Utilities Commission, or its successor in authority, as soon as practicable after the original of said report has been filed with said Commission or its successor in authority.

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 36 of 115

SECTION 7.  _Franchise Subordinate to Public Use of Streets_.  **The**
franchise herein granted to Grantee, and all rights and privileges
granted thereunder, are and shall be subordinate to the right of City,
and of the general public, to use and occupy, and to any occupancy by
them, of any street or streets for any municipal or public uses or
purposes; provided, however, that the words "municipal or public uses
or purposes" do not include the construction and operation by City of
facilities to provide and deliver electricity, gas or water to private
customers.

SECTION 8.  _Compliance With Laws_.  All work undertaken or performed,
and all pipes and appurtenances constructed, maintained and used, pur-
suant to the provisions of the franchise granted herein, including but
not limited to the practices of Grantee in its installation and removal
of Grantee's facilities in the streets of City, shall be done, under-
taken, performed and accomplished, and Grantee by acceptance of this
franchise agrees that it will do, undertake, perform and accomplish the
same, in accordance and compliance with applicable ordinances, rules and
regulations of City now or as hereafter adopted or prescribed, and with
applicable laws, rules, regulations and orders of the State of California,
the Public Utilities Commission of the State of California and of any
other governmental authority having jurisdiction in the premises, and,
also, so as to cause the least possible hindrance to the use of the
streets for the purpose of travel or any other public purpose.

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 37 of 115

SECTION 9.  City Reserved Powers.

(a)  City reserves the right for itself to lay, construct, erect, install, use, operate, repair, replace, remove, relocate, regrade or maintain below surface or above surface improvements of any type or description in, upon, along, across, under or over the streets of the City.  City further reserves the right to relocate, remove, vacate or replace the streets themselves.  If the exercise of the aforementioned reserve rights conflicts with any pipes or appurtenances of Grantee constructed, maintained and used pursuant to the provisions of the franchise granted hereby, whether previously constructed, maintained and used or not, or if a street or any part thereof is vacated and no easement is reserved to permit Grantee to retain its facilities therein, Grantee shall, and by acceptance of this franchise agrees to, without cost or expense to City, within a reasonable time after written notice from the City, or its authorized representative, and request so to do, begin the work of physical field construction, of changing the location of all facilities or equipment so conflicting, and also, unless otherwise authorized by the City, the work of removing its facilities from any street or part thereof which has been vacated and in which no easement is reserved to permit Grantee to retain its facilities therein, and, after such beginning, prosecute the work with due diligence to completion.  In the event Grantee shall fail to commence such work within such reasonable time after service of said notice upon Grantee, or shall fail after such beginning to prosecute the same with due diligence to completion, City may, if it should wish to so do, without limitation with respect to any other rights or remedies which it may have under the circumstances, cause the work required in said notice to be done and performed by City or its agents or contractors, and Grantee, in such event, shall pay, and by acceptance of this franchise      to pay, City the

-13-

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 38 of 115

costs thereof within ten (10) days after delivery to Grantee of an itemized bill therefor. It is understood and agreed that the cost of doing said work shall be considered to be the actual costs plus ten (10) percent thereof for overhead.

(b) Irrespective of any other provision of this ordinance, Grantee's right to construct, maintain and use, or remove pipes and appurtenances thereto shall be subject at all times to such right as the City may have, in the exercise of its police power, to require the removal or relocation, to either overhead or underground locations, of said pipes and appurtenances thereto at the sole cost and expense of Grantee.

(c) Nothing contained in this Section 9 shall require Grantee to remove or relocate its facilities so as to eliminate conflicts with facilities constructed and operated by City to provide and deliver electricity, gas or water to private customers.

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 39 of 115

SECTION 10. Hold Harmless. Grantee shall indemnify, save and hold harmless, and by acceptance of this franchise Grantee agrees to indemnify, save and hold harmless, the City, and all officers and employees of City, for, against and from all damages, judgments, decrees, costs and expenditures or loss which City, or any such officers or employees, may suffer, or which may be recovered from or be obtainable against City, or such officers or employees, for, or by reason of, or growing out of, or resulting from the exercise by Grantee of any or all of the rights or privileges granted by this franchise, or by reason of, or growing out of or resulting from any act or acts of Grantee or its servants or agents in exercising the franchise herein granted, or by reason of, or growing out of or resulting from the failure of Grantee to comply with the provisions of said franchise or to do anything required of it by said franchise; and Grantee shall defend, and by acceptance of said franchise agrees to defend, any suit that may be instituted against City, or any officer or employee thereof, by reason of or growing out of or resulting from the exercise by Grantee of any or all of the rights or privileges granted by said franchise, or by reason of any act or acts of Grantee, or its servants or agents, in exercising the franchise herein granted, or by reason, or growing out of or resulting from the failure of Grantee to comply with the provisions of said franchise or to do anything required of it by said franchise.

In the event that any person, firm or private or public corporation makes claim against City for any damages for or against or from which Grantee hereinabove agrees to indemnify City or save and hold City harmless, City shall give Grantee written notice of such claim within thirty (30) days from and after the date City receives said claim.

In the event that any person, firm or private or public corporation makes claim against any officer or employee of the City for any damages for or against or from which Grantee ..... .c ve agrees to indemnify said officer or employee or save and hold said officer or employee harmless, City or said employee shall give Grantee written notice of said claim within thirty (30) days from and after the date

said officer or employee receives said claim.

In the event City suffers any damage or loss for or against or from which Grantee hereinabove agrees to indemnify City or save and hold City harmless, City shall give Grantee written notice of such damage or loss within thirty (30) days from and after the expiration of a reasonable time, after incurring such damage or loss, within which it could determine whether the damage or loss was covered by the above indemnification and save and hold harmless provisions.

In the event any officer or employee of City suffers any damage or loss for or against or from which Grantee hereinabove agrees to indemnify said officer or employee or save and hold said officer or employee harmless, City or said employee shall give Grantee written notice of such damage or loss within thirty (30) days from and after the expiration of a reasonable time, after incurring such damage or loss, within which it could determine whether the damage or loss was covered by the above indemnification and save and hold harmless provisions.

SECTION 11. Repair Costs. Grantee shall pay, and by acceptance of this franchise agrees to pay, to City on demand the cost of all repairs to City property made necessary by any of the operations of Grantee under the franchise granted by this ordinance; provided, however, that, if and to the extent that such is authorized by ordinances, rules and regulations of the City as the same may now or hereafter exist, Grantee may make repairs to streets, sidewalks, curbs and gutters itself at its own cost in accordance with City ordinances, rules, regulations and specifications if the same can be so done without undue inconvenience of the City.

SECTION 12. Work Done By Grantee In Streets. Reference is hereby made to Section 8 of this ordinance. Subject to all laws, ordinances, rules, regulations and orders mentioned in said Section 8 and Grantee's

-16-

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 41 of 115

compliance therewith, and unless and until otherwise provided by said
laws, ordinances, rules, regulations and orders, or any amendments or
additions thereto which may hereafter be adopted, the following conditions
shall apply to all work done by Grantee in the streets of City pursuant
to the franchise herein granted to it, and Grantee, by acceptance of
this franchise, agrees to comply therewith, to wit:

(a) <u>Excavation Permits</u>. Grantee shall not make, and Grantee
by acceptance of this franchise agrees that it shall not make, any
opening or excavation in any street in the City, nor disturb the earth
beneath the surface of any such street, regardless of whether the surface
thereof is to be damaged or removed or not, unless (i) Grantee shall
have first applied for and obtained from the Engineer of City, in ac-
cordance with such applicable ordinances, rules or regulations of the
City as may be in force or effect at the time such application is
made, a permit for the work proposed to be done by Grantee, each such
permit to prescribe the location, place, time and manner at and in
which such work is to be done and such other conditions as the Engineer
may prescribe, (ii) Grantee deposits such sum of money, or provides City
with such surety bond, as may be required by any ordinance, rule or
regulation of the City at the time the above application is made, as a
guarantee and security to City that Grantee will reimburse City for any
and all costs or damages which City may incur or suffer by reason of,
in connection with or as a result of the doing of such work, and (iii)
Grantee does all said work in accordance with the conditions of the
abovementioned permit and all applicable laws, ordinances, rules and
regulations in effect at such time, and (iv) Grantee reimburses City for
all of its abovementioned costs and damages; provided and excepting, how-
ever, that in cases of emergency where the abovementioned work is urgently
and immediately necessary to protect the p̲͟b̲l̲i̲c̲ ̲s̲a̲f̲e̲t̲y̲, the above-
mentioned permit may be dispensed with.

-17-

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
42 of 115

(b) <u>Restoration of Streets by Grantee</u>. When any opening or excavation is made, or work done in, upon, along, across, under or over any street for any purpose whatever by Grantee, in connection with the exercise of any right or privilege granted by this franchise, any portion of said street affected or damaged thereby shall be restored by Grantee, and Grantee hereby agrees to restore the same, as promptly as practicable, to as useful, safe, durable and good condition as existed prior to the making of such opening or such excavation or the doing of such work, and the same shall be in conformity with the provisions of applicable ordinances, laws, rules and regulations of City adopted in the exercise of its police power in force and effect at the time of the performance of such work, and in accordance with applicable State laws, and shall be to the reasonable satisfaction of the Engineer. After the work of restoring such portion of said street has been completed as provided in this Section, Grantee shall preserve, and Grantee hereby agrees to pre-serve, such portion of said street so restored from deterioration re-sulting from it having been opened or excavated, ordinary wear, tear and use excepted.

(c) <u>Repair of Streets by Grantee</u>. If any portion of any street or City property shall be damaged by reason of, growing out of, or resulting from the exercise by Grantee of any or all of the rights or privileges granted by this ordinance, or by reason of any act or acts of Grantee, or its servants or agents, in the exercise of such rights or privileges, Grantee, at its own cost and expense, shall immediately repair such damage and restore said street or property to as useful, safe, durable and good condition as existed before such damage. Such work shall be done under the direction of the Engineer and to his reasonable satisfaction.

-18-

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 43 of 115

(d) Special Provisions Re Manholes, etc. All manholes, vaults, traps, catch basins, or other structures shall be so capped and covered as to be flush with the surface of the street, and shall not interfere in any way with the use of such street for the purpose of travel.

Grantee shall not lay, construct, erect or install in the streets of City any vent pipe from any vault, manhole or other structure of Grantee except in the manner and at the location or locations prescribed or approved by the Engineer.

(e) Notification of Abandonment or Removal of Facilities of Grantee. Upon abandonment or removal of any of the facilities or equipment of Grantee located above or below the surface of a street, Grantee shall notify the Engineer in writing of such abandonment or removal within not less than twenty (20) days thereafter.

(f) Restoration or Repair of Streets by City. Anything hereinabove in this Section 12 to the contrary notwithstanding, in the event during the term of this franchise City shall provide, by ordinance adopted in the exercise of its police power, that all work of restoring or repairing the portion of any street affected or damaged by any opening or excavation made or work done by Grantee in, upon, along, across, under or over said street, shall be done and performed by City and City shall have done and performed said work pursuant to the provisions of said ordinance, Grantee shall pay, and by the acceptance of this franchise Grantee agrees to pay City, the cost of performing such work. Said charges shall be paid by Grantee to City at the time and in the manner provided in said ordinance.

SECTION 13. No Recourse Against City for Damages Resulting From Public Work. If Grantee shall sustain any loss, injury or damage by reason of the doing by City of any public work, and if said work shall be done without negligence on the part of said City or any officer, board, commission or department thereof, then Grantee shall have no recourse

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 44 of 115

whatever against City and/or any officer, board, commission or department thereof on account of such loss, injury or damage.

SECTION 14. Enumeration of Specific Rights of City Not to Limit General Reservations. The enumeration herein of specific rights reserved to City shall not be taken as exclusive, or as limiting the general reservations herein made.

SECTION 15. No Transfer Without Consent. Grantee shall not sell, lease, transfer or assign the franchise or all or any of the rights or privileges granted thereby unless an ordinance of the City consenting to such sale, lease, transfer or assignment shall have been duly adopted and become effective. Any such sale, lease, transfer or assignment consented to by any such ordinance shall be subject to all terms, conditions and provisions of this ordinance and of such consenting ordinance. Any sale, lease, transfer or assignment made without said consent, or in violation or non-compliance with the terms, conditions or provisions of any ordinance granting consent, shall be null and void and of no force or effect. However, nothing contained in this Section 15 shall be construed to prevent Grantee from including said franchise in a mortgage or trust deed without such express consent.

SECTION 16. Franchise Granted Herein To Be In Lieu Of Other City Franchises. The grant of this franchise is made in lieu of all other City franchises owned or claimed by Grantee which may authorize it to use all or any of the streets of City for transmitting and distributing gas.

Grantee, by acceptance of this franchise, and as a condition precedent to the enjoyment of any rights and privileges hereunder, surrenders to City all City franchises in lieu of which this grant is made.

SECTION 17. Forfeiture of Franchise. This franchise is granted upon each and every condition herein contained, and shall at all times be strictly construed against Grantee. Noth... ... ... ... by the franchise granted hereby to Grantee unless it be granted in plain and unambiguous terms. The enumeration herein of specific rights reserved to

City shall not be taken as exclusive, or as limiting the general reservations herein made. Each of said conditions is a material and essential condition to the granting of the franchise. If Grantee shall fail, neglect or refuse to comply with any of the conditions of the franchise granted hereby, and shall not within ten (10) days after written demand for compliance begin the work of compliance, or after such beginning shall not prosecute the same with due diligence to completion, then City, by the City Council, in addition to all rights and remedies allowed by law, thereupon may terminate and declare forfeited the right, privilege and franchise granted in and by this ordinance, and all the rights, privileges and the franchise of Grantee granted hereby shall thereupon be at an end. Thereupon and immediately, Grantee shall be deemed to have surrendered the franchise and all rights and privileges connected therewith. No provision herein made for the purpose of securing the enforcement of the terms and conditions of the franchise granted herein shall be deemed an exclusive remedy or to afford the exclusive procedure for the enforcement of said terms and conditions, but the remedies and procedured outlined herein or provided, including forfeiture, shall be deemed to be cumulative.

SECTION 18. Acquisition and Evaluation. Nothing in this ordinance or in the franchise granted hereby shall be construed as in any way impairing or affecting City's right to acquire property of Grantee, either by purchase, or through the exercise of City's power of eminent domain or through voluntary agreement between City and Grantee; and nothing in this ordinance or in the franchise granted herein shall be construed to contract away or to modify or to abridge either for a term or in perpetuity the City's right of eminent domain in respect to any public utility.

Also, the franchise and all rights and privileges herein granted to Grantee shall never be given, and Grantee ap ___ ___ ___ of the franchise

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 46 of 115

agrees that such franchise, rights and privileges shall never be given, any value before any court or other public authority in any proceeding of any character in excess of the cost to the Grantee of the necessary publication and any other sum paid by it to the municipality at the time of the acquisition.

SECTION 19. <u>Franchise to be Non-Exclusive</u>. This franchise shall be non-exclusive, and neither the granting of this franchise nor any of the provisions contained herein shall prevent the City from granting any identical, similar or different franchise to any person other than Grantee for all or any areas of the City, or preclude at any time, City from constructing, maintaining and using pipes and appurtenances necessary or proper for transmitting and distributing gas to the public for any and all purposes in, along, across, upon, under or over any public streets and places in the City.

SECTION 20. <u>Succession to Rights, Powers and Duties</u>. Whenever in this ordinance any right or power is conferred or duty imposed upon the legislative body of City or any officer thereof, such right and power shall inure to and be exercised by, and such duty shall be imposed upon such body, board or officer of City as may by law hereafter succeed to their respective rights, powers and duties. All of the rights and powers conferred or duties imposed upon City in its present incorporated form shall inure to and be exercised by and be imposed upon City in any future reorganized, consolidated, enlarged or reincorporated form.

SECTION 21. <u>Publication Expenses</u>. Grantee of said franchise shall pay to City a sum of money sufficient to reimburse it for all publication expenses incurred by it in connection with the granting thereof; such payment to be made within thirty (30) days after City shall have furnished Grantee with a written statement of such expense.

-22-

SECTION 22. Giving of Notices. (a) Any written notice herein required to be given by City, or any of its officers or agents, to Grantee, shall be deemed to have been duly served if delivered in person to, or if sent by registered or certified mail to any of the following officers at the following addresses, or to such other officers and addresses as the Grantee may from time to time file with the City Clerk of City, to wit:

Division Manager
San Jose Division
Pacific Gas and Electric
 Company
San Jose, California 95114

Vice President and General Counsel
Pacific Gas and Electric Company
77 Beale Street
San Francisco, California 94106

(b) Any written notice herein required by Grantee to be given to City, or any of its officers or agents, shall be deemed to have been duly served if delivered in person to the City Clerk of City, or if sent by registered or certified mail to the City Clerk of City.

SECTION 23. Use of Singular and Plural. The use of the singular number herein shall include the plural, and the use of the plural number shall include the singular.

SECTION 24. Acceptance of Franchise. Within ten (10) days after the effective date of this ordinance, Grantee shall file with the City Clerk a written acceptance of the franchise hereby granted, which acceptance shall constitute a continuing agreement on the part of Grantee to comply with the terms and conditions hereof, and no rights are hereby conferred until the filing of such acceptance. If Grantee shall fail to file its said written acceptance with said City Clerk within said ten (10) day period, the offer of franchise contained in this ordinance shall be deemed revoked, and said franchise may not be thereafter accepted.

SECTION 25. This ordinance is adopted pursuant and subject to the provisions of the Charter of City, and in accordance with the provisions

-23-

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 48 of 115

of Article X, Chapter 1, of the San Jose Municipal Code. The provisions
of said Chapter 1 of Article X are hereby incorporated in this ordinance
to the same extent as though fully set forth herein.

PASSED FOR PUBLICATION this ____20th____ day of ____September____,
1971, by the following vote:

AYES: Councilmen – Colla, Garza, Goglio, Hayes, Hays, Naylor, Mineta.

NOES: Councilmen – None

ABSENT: Councilmen – None

NORMAN Y. MINETA

_____
Mayor

ATTEST: FRANCIS L. GREINER

By: Roy H. Hubbard, Deputy
_____
City Clerk

---

The attached is a full, true and correct
copy of

Ordinance No. _15879_
which became effective on
will become
_November 4, 1971_

ATTEST:

Francis L. Greiner, City Clerk
of the City of San Jose, Calif.

By: _Patricia Caldwell_ Deputy

Dated: _October 5, 1971_

Form No. 170-43

Void if detached

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 49 of 115



ORDINANCE NO. 21676

AN ORDINANCE OF THE COUNCIL OF THE CITY OF SAN JOSE
AMENDING SECTIONS ONE (1), FOUR (4), AND FIVE (5) OF
ORDINANCE NO. 15879 WHICH GRANTED PACIFIC GAS AND
ELECTRIC COMPANY AN INDETERMINATE FRANCHISE FOR THE
SALE OF GAS WITHIN THE CITY OF SAN JOSE; TO PROVIDE
FOR A PERIOD OF QUARTERLY PAYMENTS OF FRANCHISE FEES;
TO PROVIDE FOR A WAIVER OF CERTAIN NEGOTIATION AND
ARBITRATION OF FRANCHISE FEES WHICH, PURSUANT TO
ORDINANCE NO. 15879, WOULD OCCUR IN 1991 UNLESS WAIVED
HEREIN; AND REPEALING ORDINANCE NO. 21176.

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

SECTION 1. That Section One (1) of Ordinance No. 15879 is hereby
amended by adding thereto subsections (j), (k), (l), (m), (n), (o), (p),
(q), and (r), to be numbered and entitled and to read as follows:

SECTION 1. Definitions. Wherever in this ordinance the words
or phrases hereinafter in this section defined are used, they shall
have the respective meanings assigned to them in the following
definitions (unless in a given instance the context wherein they are
used shall clearly import a different meaning):

(a) The word "Grantee" shall mean Pacific Gas and Electric
Company and its lawful successors or assigns.

(b) The word "City" shall mean the City of San Jose, a
municipal corporation of the State of California, in its present
incorporated form or in any later reorganized, consolidated, enlarged
or reincorporated form.

(c) The word "Engineer" shall mean such officer as may from
time to time be designated by the Council of the City of San Jose or
its successor, as the Engineer referred to in this ordinance;
provided, that until otherwise provided by said Council or its
successor, the word "Engineer" shall mean the head of the Public
Works Department of the City of San Jose.

(d) The word "streets" shall mean the public streets, ways,
alleys and places now or hereafter established within the City,
including State highways and freeways now or hereafter established

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page
50 of 115

- 1 -

within the City; provided and excepting, however, that the word "streets" shall not be deemed to mean or include any parks, playgrounds, school property or other municipal or public property not constituting public thoroughfares.

(e) The word "gas" shall mean natural or artificial gas, or a mixture of both.

(f) The words "pipes and appurtenances" shall mean pipes, pipelines, mains, services, traps, vents, vaults, manholes, meters, gauges, regulators, valves, conduits, appliances, attachments, appurtenances, and, without limitation to the foregoing, any other property located in, upon, along, across, under or over the streets of City, used or useful in transmitting and/or distributing gas for the purpose for which this franchise is granted.

(g) The words "construct, maintain and use" shall mean to construct, erect, install, operate, maintain, use, repair or replace.

(h) The phrase "constitutional franchise" shall mean such franchise or right, if any, as Grantee may have because of the acceptance by Grantee or its predecessor in estate of the offer contained in the provisions of Section 19 of Article XI of the Constitution of the State of California, as said Section existed prior to its amendment on October 10, 1911.

(i) The phrase "gross receipts", as used in this Section and in other parts of this ordinance, shall mean all gross operating revenues received or receivable by Grantee from the sale of gas to Grantee's customers with points of service within the corporate limits of the City (including but not limited to, sales to military reservations with points of service within the City's corporate limits) which are credited to Account Nos. 480, 481 and 482 of the current Uniform System of Accounts of the Federal Power Commission, as adopted by the California Public Utilities Commission, or similar superseding accounts, or which would be credited to such accounts or similar superseding accounts if Grantee kept its books in acceptance with such accounts or similar superseding accounts.

(j) The phrase "Quarterly Payment Amount" shall mean a payment of one quarter of the previous calendar year's total franchise fee payments paid to City pursuant to the gas franchise granted to Grantee pursuant to Ordinance No. 15879, as amended. Grantee shall not be required to make a quarterly payment, or may pay a lesser Quarterly Payment Amount, if payment of the full Quarterly Payment Amount would result in a Cumulative Value equivalent (as defined herein) exceeding Three Million Four Hundred Thousand Dollars ($3,400,000) for both the gas franchise granted to Grantee pursuant to Ordinance No. 15879, as amended, and the electric franchise granted to Grantee pursuant to Ordinance No. 15880, as amended.

(k) The phrase "Quarterly Payment Dates" shall mean June 1, September 1, and December 1 of each year.

(1) The phrase "Quarterly Bond Yield" shall mean the yield on Domestic Municipal Bonds derived from the Bond Buyer's Index for Eleven General Obligation Bonds as published by the Bond Buyer founded in 1891 of One State Street Plaza, New York, New York, and as reported on the date that said index is published during the week following each of the dates of March 1, June 1, September 1, and December 1.

(m) The phrase "Annual Interest Rate" for each year that quarterly payments of franchise fees are made shall mean the average of the Quarterly Bond Yields during that year expressed as a decimal.

(n) The phrase "Annual Discount Factor" for each year that quarterly payments of franchise fees are made shall mean the figure of one plus the Annual Interest Rate, except that the Annual Discount Factor for 1983 shall be an amount equal to one plus three-quarters of the 1983 Annual Interest Rate.

(o) The phrase "Cumulative Discount Factor" for each year that the cumulative quarterly payments of franchise fees are made shall mean the product of the Annual Discount Factors from 1983 to that year inclusively.

(p) The phrase "Quarterly Value Factor" shall mean, in any year for which quarterly payments are made on June 1, September 1, or December 1, the product of the Annual Interest Rate and an amount

equal to .875 (10.5/12), .625 (7.5/12) or .375 (4.5/12) for the
quarterly payments made June 1, September 1 or December 1,
respectively.

(q)  The phrase "Quarterly Value" shall mean the value of any
Quarterly Payment Amount made in any year as expressed by: the
product of (1) the Quarterly Payment Amount, and (2) the Quarterly
Value Factor; as divided by (3) the Cumulative Discount Factor.

(r)  The phrase "Cumulative Value" shall mean the sum of the
Quarterly Values accumulated under this gas franchise plus the
Quarterly Values accumulated under the electric franchise granted
pursuant to Ordinance No. 15880, as amended.

SECTION 2.  That Section Four (4) of Ordinance No. 15879 is hereby
amended, to be numbered and entitled and to read as follows:

SECTION 4.  Consideration.  The franchise, and all rights and
privileges, granted by this ordinance to Grantee are granted upon the
express condition that Grantee, in consideration thereof and as
compensation for the use of the streets of the City as herein
authorized and permitted, shall pay to the City, in lawful money of
the United States, in the manner and on the conditions hereinafter
set forth in Section 5, for each of the calendar years (or fractional
calendar years) following the effective date of this ordinance, a sum
of money equal to two percent (2%) of Grantee's gross receipts during
each such calendar year (or fractional calendar year); provided and
excepting, however, that the amount of said annual compensation,
and/or the formula or measure or manner in which the amount shall be
determined, may be changed or amended as hereinafter provided in this
Section, to wit:

(a)  If, as a result of negotiation or litigation, or both,
between Grantee and any other city or cities of the State of
California, regardless of whether such other city or cities is or are
a general law or charter city or cities, including but not limited to
negotiation or litigation, or both, under any hereafter adopted
statute or constitutional amendment, or if by litigation, whether the
City participates therein or not, which right of participation is

hereby expressly reserved to the City, or if for any reason, the
Grantee shall make payment or payments to any other city for any of
said calendar years (or fractional calendar years) in accordance with
a formula (hereinafter referred to as a "second formula") which if
applied to the City would provide payments to the City greater than
provided for by the use of the formula hereinabove specified in the
first paragraph of this Section 4, such "second formula" shall
prevail over the formula hereinabove specified in the first paragraph
of this Section 4 for each of said years of the term of said
franchise for or during which Grantee makes payments to any other
city in accordance with said "second formula".

(b) In the event that the laws of the State of California, as
they existed as of September 20, 1971, should at any time ever be
amended or changed to permit general law cities, in granting
franchise of the kind herein being granted to Grantee, to require the
Grantee of any such franchise to pay or give any consideration or
compensation in accordance with a formula (hereinafter referred to as
"third formula") which, if applied to the City of San Jose and the
Grantee herein, would provide payments to the City greater than
provided for by the use of the formula hereinabove specified in the
first paragraph of this section 4 or by the use of the
above-mentioned "second formula" if such "second formula" is the
higher, then in such event City shall have the right, at any time
thereafter, to require Grantee to thereafter make payments in
accordance with such "third formula"; provided, however that City
shall not require Grantee to make any payments pursuant to the
provision of this subparagraph B during the first thirty (30) years
from September 20, 1971.

(c) Within the last six (6) calendar months of the calendar
year 2001, and thereafter within the last six (6) calendar months of
each ten (10) calendar year period following the calendar year 2001,
each of such six (6) month periods being hereinafter referred to as
"six-month-notice period," either City or Grantee, or each of them,

may serve written notice upon the other of its desire to change the amount or kind of consideration or compensation to be annually paid or given, after the expiration of such "six-month-notice period," by Grantee to City as consideration for said franchise and as compensation for the use by Grantee of the streets of the City as herein authorized and permitted, or of its desire to change the manner, measure or formula pursuant to which such annual consideration and compensation shall thereafter be determined. Said notice shall specify the change or changes desired. Within ninety (90) days from and after the date of service of such notice, or at such other time or times as the parties may mutually agree upon, City and Grantee shall meet and confer and attempt in good faith to resolve the matters at issue by mutual agreement. No such agreement shall be effective unless it is in writing, and unless it is approved and signed by both City and Grantee. No such agreement shall be deemed approved by City unless it shall have been approved and authorized by written ordinance adopted by the governing body of the City. Unless otherwise provided in the agreement, any change or changes agreed upon in any such agreement shall be effective from and after the commencement of the calendar year immediately following the expiration of the "six-month-notice period."

In the event that City and Grantee should fail to arrive at any agreement with respect to the proposed change or changes within ninety (90) days from and after the service of the above-mentioned notice, either party may thereafter serve upon the other a written notice of its intent to present the proposed change or changes to a Board of Arbitration for its consideration and decision. Unless otherwise agreed to by both parties, said notice must be served no later than the 30th day of June next following the expiration of the above-mentioned "six-month-notice period."

Unless otherwise agreed to by both parties in writing, the Board of Arbitration shall consist of seven (7) members, two (2) to be selected by the City, and two (2) to be selected by the Grantee.

The four (4) arbitrators selected by the parties shall select three (3) neutral arbitrators. Within thirty (30) days after service of said notice of intent to submit said matter to arbitration, or within such time as the parties may mutually agree upon in writing, each of the parties, respectively, shall select its two (2) members of the Board, and within thirty (30) days after the four (4) are selected, they shall select the three (3) neutral arbitrators. The Board of Arbitration shall then consider the proposed change or changes, and, after giving both parties a reasonable opportunity to be heard, shall determine what change or changes, if any, are to be made. The change or changes, if any, ordered by the Board, may differ from those requested or desired by either of the parties. The determination shall be fair and reasonable to both parties, and in arriving at it, the Board shall consider the nature and value of the rights and privileges granted by this ordinance to the Grantee, the costs, expenses and damages, if any, which City has, or will incur or suffer because of the grant of said rights and privileges to Grantee or because of Grantee's exercise of such rights and privileges, the amount to be paid to comparable cities for similar franchise rights and any and all other relevant factors. The Board's determination shall be in writing, shall be by the majority vote of its seven (7) members, and shall be final and conclusive and binding upon both parties. Unless otherwise agreed to by both parties in writing, the Board shall render its written decision on or before, and no later than, the last day of the first twelve (12) calendar months immediately following the expiration of the above-mentioned "six-month-notice period." Any change or changes made by the Board shall be effective retroactively as of the first day immediately following the end of the aforementioned "six-month-notice period," and shall continue in effect until such time as the consideration payable by Grantee to City is again changed pursuant to any of the provisions of this Section 4.

If said Board shall fail to arrive at a determination within the twelve (12) months immediately following the expiration of the above-mentioned "six-month-notice period," said Board, unless otherwise agreed to by both parties in writing, shall be deemed discharged, and, unless otherwise agreed to by both parties in writing, a second Board, no members of which shall have been a member of the previous Board, shall be established as follows: City and Grantee shall each appoint two (2) new arbitrators; City and Grantee, or either of them, shall petition the Superior Court of the State of California in and for the County of Santa Clara to appoint three (3) neutral arbitrators and to order all seven (7) of said arbitrators to consider the proposed change or changes, to give both parties a reasonable opportunity to be heard, and to arrive at a determination within a reasonable time specified by the Court, as to what change or changes, if any, shall be made. The determination shall be fair and reasonable to both parties, and in arriving at it, the second Board shall consider all matters and factors which the former Board was required to consider. The second Board's determination shall be in writing, and must be by majority vote of all seven (7) members; and its determination shall be final and conclusive and binding upon both parties. Any change or changes made or ordered by the Board shall be effective retroactively as of the first day immediately following the end of the aforementioned "six-month-notice period" and shall continue in effect until such time as the consideration payable by Grantee to City is again changed pursuant to any of the provisions of this Section 4.

Unless otherwise agreed to by both parties in writing, all costs and expenses of the Boards of Arbitration, and court costs in the event recourse is had to the Superior Court as aforesaid, shall be paid equally by City and Grantee.

In the event any person appointed to serve as an arbitrator on either of the above-mentioned Boards should die or fail or be unable to perform the duties of an arbitrator, a substitute shall be appointed to serve in his place and stead by the party or body which appointed his predecessor.

-8-

In the event that the arbitrators fail to comply with the order of the court and to reach a decision by the majority vote of its seven (7) members within the period specified by the court, or within three (3) years from and after the date of expiration of the above-mentioned "six-month-notice period," whichever is the shorter period of time, the party who proposed the change or changes shall thereafter have the right to terminate the rights, privileges and franchise granted by City to Grantee, and upon such termination, the rights, privileges and franchise of Grantee granted by this ordinance shall be at an end; provided, however, that such right of termination shall be deemed waived if not exercised within one hundred eighty (180) days immediately following the expiration of the time, specified by the court, within which the Board was required to reach a decision.

SECTION 3. That Section Five (5) of Ordinance No. 15879 is hereby amended, to be numbered and entitled and to read as follows:

SECTION 5. Reports, Dates of Payment. (a) On each Quarterly Payment Date Grantee shall pay to the City an amount equal to the Quarterly Payment Amount. Grantee shall make Quarterly Payments on each Quarterly Payment Date until such time as the Cumulative Value equals Three Million Four Hundred Thousand Dollars ($3,400,000).

(b) Within three (3) months from and after the expiration of each calendar year, or fractional calendar year, following the effective date of this ordinance, Grantee shall file with the City Clerk of City the original, and with the Director of Finance of City a copy, and with the City Auditor of City another copy, of a duly verified statement showing in detail the gross receipts of Grantee and, if Quarterly Payments are required to be made pursuant to the provisions herein contained, the Cumulative Value of said Quarterly Payments, during the preceding calendar year or fractional calendar year, and such other data or information as City may need to calculate or determine the amounts which Grantee is obligated to pay City pursuant to the provisions of Section 4. Said statement shall be in such form and details as from time to time may be reasonably prescribed by City.

(c) Within fifteen (15) days from and after the time for filing such statement, Grantee shall pay to City, at the office of City's Director of Finance, in lawful money of the United States, the sum of money hereinabove required to be paid by Grantee to City for the calendar year, or fractional calendar year, covered by the statement, minus the sum of the Quarterly Payment amounts if any are required to be made pursuant to the provisions herein contained, paid during the year.

(d) Any neglect, omission or refusal by Grantee to file such verified statement, or to pay said percentage at the time and in the manner specified shall be grounds for the declaration of a forfeiture of this franchise and of all rights and privileges of Grantee hereunder.

(e) In the event Grantee fails to make the payments for this franchise on or before the dates due as hereinabove provided, Grantee shall pay as additional consideration both of the following amounts:

(i) A sum of money equal to two percent (2%) of the amount due. This amount is required in order to defray those additional expenses and costs incurred by City by reason of the delinquent payment, including, but not limited to, the cost of administering, accounting and collecting said delinquent payment and the cost to City of postponing services and projects necessitated by the delay in receiving revenue.

(ii) A sum of money equal to one percent (1%) of the amount due per month as interest and for loss of use of the money due.

(f) At such time as the Cumulative Value of said Quarterly Payment equals the sum of Three Million Four Hundred Thousand Dollars ($3,400,000) as specified in subsection (a) hereinabove, Grantee shall no longer be required to make Quarterly Payments. At said time, Grantee shall be required to pay City the sum of money required to be paid as consideration for the rights, privileges, and franchise granted herein on or before the fifteenth (15th) day from and after the time for filing of the duly verified statement showing in detail the gross receipts of Grantee during the prior calendar year or fractional calendar year in accordance with the procedures of this Section 5(b-e).

SECTION 4. That Ordinance No. 21176, passed for publication of title on November 23, 1982, is hereby repealed.

SECTION 5. That this ordinance amending Ordinance No. 15879, is conditioned upon the filing by Grantee with the City Clerk of a written acceptance of this amendment to the franchise granted by Ordinance No. 15879, which said written acceptance shall be so filed within ten (10) days of the adoption date of this amending ordinance. If Grantee shall fail to so file its written acceptance with said City Clerk within said ten (10) day period, this amendment shall be deemed revoked and of no force and effect.

SECTION 6. That all other terms, conditions, and provisions of Ordinance No. 15879 not amended herein shall remain in full force and effect.

PASSED FOR PUBLICATION OF TITLE this __5th__ day of __June__, 1984, by the following vote:

AYES: ALVARADO, BEALL, ESTRUTH, FLETCHER, HAMMER, IANNI, LEWIS, RYDEN, SAUSEDO, WILLIAMS AND McENERY

NOES: NONE

ABSENT: NONE

THOMAS McENERY, Mayor

ATTEST:

HELEN E. JACKSON, City Clerk

ORDINANCE NO. 26913

## AN ORDINANCE OF THE CITY OF SAN JOSE AMENDING ORDINANCE NO. 15879 AS AMENDED BY ORDINANCE NO. 21676, WHICH GRANTED A FRANCHISE FOR THE SALE OF GAS WITHIN THE CITY OF SAN JOSE TO PACIFIC GAS & ELECTRIC COMPANY, TO ALLOW A CREDIT IN THE EVENT OF OVERPAYMENTS

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

SECTION 1. Section 5 of Ordinance No. 15879, as amended by Ordinance No. 21676, is amended to read as follows:

SECTION 5. Reports, Dates of Payment.

(a) On each Quarterly Payment Date Grantee shall pay to the City an amount equal to the Quarterly Payment Amount. Grantee shall make Quarterly Payments on each Quarterly Payment Date until such time as the Cumulative Value equals Three Million Four Hundred Thousand Dollars ($3,400,000).

(b) Within three (3) months from and after the expiration of each calendar year, or fractional calendar year, following the effective date of this Ordinance, Grantee shall file with the City Clerk of the City the original, and with the Director of Finance of City a copy, and with the City Auditor of City another copy, of a duly verified statement showing in detail the gross receipts of Grantee and, if Quarterly Payments are required to be made pursuant to the provisions herein contained, the Cumulative Value of said Quarterly Payments, during the preceding calendar year or fractional calendar year, and such other data or information as City may need to calculate or determine the amounts which Grantee is obligated to pay City pursuant to the provisions of Section 4. Said

statement shall be in such form and details as from time to time may be reasonably prescribed by City.

(c)     Within fifteen (15) days from and after the time for filing such statement, Grantee shall pay to City, at the office of City's Director of Finance, in lawful money of the United States, the sum of money hereinabove required to be paid by Grantee to City for the calendar year, or fractional calendar year, covered by the statement, minus the sum of the Quarterly Payment Amounts if any are required to be made pursuant to the provisions herein contained, paid during the year.  In the event the total Quarterly Payment Amounts exceed the total annual payment due to City, upon the prior written acknowledgement by the Director of Finance that an overpayment appears to have occurred, Grantee shall deduct from each of the next year's Quarterly Payment Amounts the overpayment in equal amounts, without interest.  The acknowledgement by the Director of Finance of an overpayment does not in anyway limit City's rights to seek payment in full from Grantee in the event City determines there was an underpayment of the annual payment due to City.

(d)     Any neglect, omission or refusal by Grantee to file such verified statement, or to pay said percentage at the time and in the manner specified shall be grounds for the declaration of a forfeiture of this franchise and of all rights and privileges of Grantee hereunder.

(e)     In the event Grantee fails to make the payments for this franchise on or before the dates due as hereinabove provided, Grantee shall pay as additional consideration both of the following amounts:

(i)     A sum of money equal to two percent (2%) of the amount due. This amount is required in order to defray those additional expenses and costs incurred by City by reason of the delinquent payment, including, but not limited to, the cost of administering, accounting and collecting said

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
62 of 115

delinquent payment and the cost to City of postponing services and projects necessitated by the delay in receiving revenue.

(ii)    A sum of money equal to one percent (1%) of the amount due per month as interest and for loss of use of the money due.

(f)    At such time as the Cumulative Value of said Quarterly Payment equals the sum of Three Million Four Hundred Thousand Dollars ($3,400,000) as specified in subsection (a) hereinabove, Grantee shall no longer be required to make Quarterly Payments. At said time, Grantee shall be required to pay City the sum of money required to be paid as consideration for the rights, privileges, and franchise granted herein on or before the fifteenth (15th) day from and after the time for filing of the duly verified statement showing in detail the gross receipts of Grantee during the prior calendar year or fractional calendar year in accordance with the procedures of this Section 5(b-e).

SECTION 2. This Ordinance amending Ordinance No. 15879, as amended by Ordinance No. 21676, is conditioned upon the filing by Grantee with the City Clerk of a written acceptance of this amendment to the franchise granted by Ordinance No. 15879, as amended by Ordinance No. 21676, which said written acceptance shall be so filed within ten (10) days of the adoption date of this amending Ordinance. If Grantee shall fail to so file its written acceptance with the City Clerk within said ten (10) day period, this amendment shall be deemed revoked and of no force and effect.

SECTION 3. All other terms, conditions, and provisions of Ordinance No. 15879, as amended by Ordinance No. 21676, not amended herein shall remain in full force and effect.

SECTION 4. This Ordinance shall be effective as of June 1, 2003, *nunc pro tunc*.

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
63 of 115

PASSED FOR PUBLICATION of title this 10th day of June, 2003, by the following vote:

AYES: CAMPOS, CHAVEZ, CHIRCO, CORTESE, DANDO, GREGORY, LeZOTTE, REED, WILLIAMS, YEAGER; GONZALES

NOES: NONE

ABSENT: NONE

DISQUALIFIED: NONE

RON GONZALES
Mayor

ATTEST:

PATRICIA L. O' HEARN
City Clerk

The foregoing instrument is a correct copy of the original on file in this office.
Attest:
PATRICIA L. O'HEARN
City Clerk
City Clerk of the city of San Jose.
County of Santa Clara, State of California.

By _____ , Deputy

## ORDINANCE NO. <u>28719</u>

**AN ORDINANCE OF THE CITY OF SAN JOSE AMENDING ORDINANCE NO. 15879 AS AMENDED BY ORDINANCE NO. 21676 AND ORDINANCE NO. 26913 WHICH GRANTED A FRANCHISE FOR THE TRANSMISSION AND DISTRIBUTION OF GAS WITHIN THE CITY OF SAN JOSE TO PACIFIC GAS AND ELECTRIC COMPANY TO ADD A FRANCHISE FEE SURCHARGE OF 0.3% RESULTING IN A TOTAL FRANCHISE FEE REMITTED TO THE CITY OF 2.3% OF GROSS RECEIPTS AND TO PROVIDE FOR THE WAIVER OF CERTAIN NEGOTIATION AND ARBITRATION RIGHTS UNDER THE FRANCHISE**

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

<u>SECTION 1.</u> Ordinance No. 15879, as amended by Ordinance No. 21676 and Ordinance No. 26913, is amended to add a new Section 4.1, to be numbered and entitled and to read as follows:

### SECTION 4.1 <u>Franchise Fee Surcharge.</u>

(a)        In addition to the annual compensation specified above in Section 4, and subject to the provisions set forth in Section 4(a)-(c), Grantee shall remit to the City during the term an additional sum of money equal to three tenths of one percent (0.3%) of the annual gross receipts of Grantee (the "Franchise Fee Surcharge") in consideration thereof and as compensation for the use of the streets of the City as herein authorized and permitted. Grantee shall remit to the City the Franchise Fee Surcharge, in lawful money of the United States, in the manner and on the conditions hereinafter set forth in Section 5, for each of the calendar years (or fractional calendar years) following the effective date of this Ordinance.

(b)        Prior to Grantee's remittance to City of the Franchise Fee Surcharge, Grantee shall receive approval from the California Public Utilities Commission

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 65 of 115

("Commission") to collect the Franchise Fee Surcharge in accordance with Commission Decision 89-05-063, *Guidelines for the Equitable Treatment of Revenue Producing Mechanisms Imposed by Local Government Entities on Public Utilities*, 32 CPUC 2d 60, May 26, 1989.

SECTION 2. Section 5 of Ordinance No. 15879, as amended by Ordinance No. 21676 and Ordinance No. 26913, is amended to read as follows:

SECTION 5. Reports, Dates of Payment.

(a) On each Quarterly Payment Date, Grantee shall pay to the City an amount equal to the Quarterly Payment Amount. Grantee shall make Quarterly Payments on each Quarterly Payment Date until such time as specified in Section 5(f), notwithstanding anything to the contrary specified above in Section 1(j) that Grantee shall not be required to make a quarterly payment, or may pay a lesser Quarterly Payment Amount, if payment of the full Quarterly Payment Amount would result in a Cumulative Value equivalent exceeding Three Million Four Hundred Thousand Dollars ($3,400,000).

(b) Within three (3) months from and after the expiration of each calendar year, or fractional calendar year, following the effective date of this Ordinance, Grantee shall file with the City Clerk of the City the original, and with the Director of Finance of City a copy, and with the City Auditor of City another copy, of a duly verified statement showing in detail the gross receipts of Grantee, and such other data or information as City may need to calculate or determine the amounts which Grantee is obligated to pay City pursuant to the provisions of Section 4. Said statement shall be in such form and details as from time to time may be reasonably prescribed by City.

(c)     Within fifteen (15) days from and after the time for filing such statement, Grantee shall pay to City, at the office of City's Director of Finance, in lawful money of the United States, the sum of money hereinabove required to be paid by Grantee to City for the calendar year, or fractional calendar year, covered by the statement, minus the sum of the Quarterly Payment Amounts paid during the year. In the event the total Quarterly Payment Amounts exceed the total annual payment due to City, upon the prior written acknowledgement by the Director of Finance that an overpayment appears to have occurred, Grantee shall deduct from each of the next year's Quarterly Payment Amounts the overpayment in equal amounts, without interest. The acknowledgement by the Director of Finance of an overpayment does not in any way limit City's rights to seek payment in full from Grantee in the event City determines there was an underpayment of the annual payment due to City.

(d)     Any neglect, omission or refusal by Grantee to file such verified statement, or to pay said percentage at the time and in the manner specified shall be grounds for the declaration of a forfeiture of this franchise and of all rights and privileges of Grantee hereunder.

(e)     In the event Grantee fails to make the payments for this franchise on or before the dates due as hereinabove provided, Grantee shall pay as additional consideration both of the following amounts:

(i)     A sum of money equal to two percent (2%) of the amount due. This amount is required in order to defray those additional expenses and costs incurred by City by reason of the delinquent payment, including, but not limited to, the cost of administering, accounting and collecting said delinquent payment and the cost to City of postponing services and projects necessitated by the delay in receiving revenue.

Case: 19-30088     Doc# 11845-5     Filed: 01/21/22     Entered: 01/21/22 11:41:05     Page
67 of 115

  (ii) A sum of money equal to one percent (1%) of the amount due per month as interest and for loss of use of the money due.

 (f) Grantee shall no longer be required to make Quarterly Payments if Grantee provides City with at least six (6) months' advance written notice of its intent to make annual payments instead as set forth below. The parties agree that such notice shall not be provided earlier than June 30, 2021. At said time, Grantee shall be required to pay City the sum of money required to be paid as consideration for the rights, privileges, and franchise granted herein on or before the fifteenth (15th) day from and after the time for filing of the duly verified statement showing in detail the gross receipts of Grantee during the prior calendar year or fractional calendar year in accordance with the procedures of this Section 5(b-e).

SECTION 3. If the Franchise Fee Surcharge is approved by the Commission, Grantee shall implement collection of the Franchise Fee Surcharge as soon as reasonably possible thereafter, but not later than 120 days following the Commission's approval. Grantee shall remit to the City the first Franchise Fee Surcharge payment on the first Quarterly Payment Date following the initial collection of the Franchise Fee Surcharge.

SECTION 4. The City and Grantee each expressly waives its rights under Section 4c of the franchise to provide the other with notice of its intent to change the amount or kind of consideration or compensation to be paid City or measure or formula to which the consideration and compensation is determined (for the franchise fee which is two percent (2%) of gross receipts and the Franchise Fee Surcharge which is three tenths of one percent (0.3%) of gross receipts) at any time before the last six (6) calendar months following calendar year 2021.

Case: 19-30088 Doc# 11845-5 Filed: 01/21/22 Entered: 01/21/22 11:41:05 Page 68 of 115

SECTION 5. This Ordinance amending Ordinance No. 15879, as amended by Ordinance No. 21676 and Ordinance No. 26913, is conditioned upon the filing by Grantee with the City Clerk of a written acceptance of this amendment to the franchise granted by Ordinance No. 15879, as amended by Ordinance No. 21676 and Ordinance No. 26913, which said written acceptance shall be so filed no later than ten (10) days of the adoption date of this amending Ordinance. If Grantee shall fail to so file its written acceptance with the City Clerk as specified in the preceding sentence, this amendment shall be deemed revoked and of no force and effect.

SECTION 6. All other terms, conditions, and provisions of Ordinance No. 15879, as amended by Ordinance No. 21676 and Ordinance No. 26913, not amended herein shall remain in full force and effect.

PASSED FOR PUBLICATION of title this 9th day of February, 2010, by the following vote:

AYES:            CAMPOS,  CHIRCO,  CHU,  CONSTANT,  HERRERA,
                 KALRA, LICCARDO, NGUYEN, OLIVERIO, PYLE; REED.

NOES:            NONE.

ABSENT:          NONE.

DISQUALIFIED:    NONE.

CHUCK REED
Mayor

ATTEST:

LEE PRICE, MMC
City Clerk

The foregoing instrument is
a correct copy of the original
on file in this office.
Attest:
    LEE PRICE
    City Clerk
    City of San Jose
County of Santa Clara, State of California
By _____ Deputy
Date  02/24/10

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
70 of 115

# Electric Franchise

Ordinance 15880 (adopted September 20, 1971)

Ordinance 21677 (adopted June 5, 1984)

Ordinance 26914 (adopted June 10, 2003)

Ordinance 28720 (adopted February 9, 2010)

ORDINANCE NO. 15130

AN ORDINANCE OF THE CITY OF SAN JOSE GRANTING TO
PACIFIC GAS AND ELECTRIC COMPANY, ITS SUCCESSORS
AND ASSIGNS, THE FRANCHISE (1) TO USE, FOR TRANS-
MITTING AND DISTRIBUTING ELECTRICITY SUITED FOR
LIGHTING BUT FOR USE BY CONSUMERS FOR ANY AND ALL
LAWFUL PURPOSES OTHER THAN LIGHTING, ALL POLES,
WIRES, CONDUITS AND APPURTENANCES WHICH ARE NOW OR
MAY HEREAFTER BE LAWFULLY PLACED AND MAINTAINED IN
THE STREETS WITHIN THE CITY OF SAN JOSE UNDER SUCH
FRANCHISE THAT GRANTEE MAY HAVE UNDER AND PURSUANT
TO SECTION 19 OF ARTICLE XI OF THE CONSTITUTION OF
THE STATE OF CALIFORNIA, AS SAID SECTION EXISTED
PRIOR TO ITS AMENDMENT ON OCTOBER 10, 1911, (2) TO
CONSTRUCT, MAINTAIN AND USE IN SAID STREETS ALL
POLES, WIRES, CONDUITS AND APPURTENANCES WHENEVER
AND WHEREVER SAID CONSTITUTIONAL FRANCHISE IS NOT
NOW OR HEREAFTER AVAILABLE THEREFOR, NECESSARY TO
TRANSMIT AND DISTRIBUTE ELECTRICITY SUITED FOR, AND
FOR USE BY CONSUMERS FOR, ANY AND ALL LAWFUL PUR-
POSES, AND (3) TO UTILIZE SAID POLES, WIRES, CON-
DUITS AND APPURTENANCES IN SAID STREETS FOR TRANS-
MITTING AND DISTRIBUTING ELECTRICITY FOR USE OUT-
SIDE THE BOUNDARIES OF THE CITY FOR ANY AND ALL
LAWFUL PURPOSES, AND PROVIDING THE TERMS AND CON-
DITIONS OF THE FRANCHISE SO GRANTED.


BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

SECTION 1.  Definitions.  Wherever in this ordinance the words or

phrases hereinafter in this section defined are used, they shall have

the respective meanings assigned to them in the following definitions

(unless in a given instance the context wherein they are used shall

clearly import a different meaning):

(a)  The word "Grantee" shall mean Pacific Gas and Electric

Company, and its lawful successors or assigns.

(b)  The word "City" shall mean the City of San Jose, a mu-

nicipal corporation of the State of California, in its present incor-

porated form or in any later reorganized, consolidated, enlarged or re-

incorporated form.

(c)  The word "Engineer" shall mean such officer as may from

time to time be designated by the Council of the City of San Jose or

its successor, as the Engineer referred to in this ordinance; provided,

-1-

that until otherwise provided by said Council or its successor, the word "Engineer" shall mean the head of the Public Works Department of the City of San Jose.

(d)  The word "streets" shall mean the public streets, ways, alleys and places now or hereafter established within the City, including State highways and freeways now or hereafter established within the City; providing and excepting, however, that the word "streets" shall not be deemed to mean or include any parks, playgrounds, school property or other municipal or public property not constituting public thoroughfares.

(e)  The words "poles, wires, conduits and appurtenances" shall mean poles, towers, supports, wires, conductors, cables, guys, stubs, platforms, crossarms, braces, transformers, insulators, conduits, ducts, vaults, manholes, meters, cut-outs, switches, communication circuits, appliances, attachments, appurtenances and, without limitation to the foregoing, any other property located or to be located in, upon, along, across, under or over the streets of City, used or useful in transmitting and/or distributing electricity for the purposes for which this franchise is granted.

(f)  The words "construct, maintain and use" shall mean to construct, erect, install, operate, maintain, use, repair or replace.

(g)  The phrase "constitutional franchise" shall mean such franchise or right, if any, as Grantee may have because of the acceptance by Grantee or its predecessor in estate of the offer contained in the provisions of Section 19 of Article XI of the Constitution of the State of California, as said Section existed prior to its amendment on October 10, 1911.

(h)  The phrase "gross receipts", as used in this Section and in other parts of this ordinance, shall mean all gross operating revenues received or receivable by Grantee from the sale of electricity to Grantee's customers with points of service within the corporate limits of the City (including, but not limited to, sales to military reservations with points of service within the City's corporate limits) which are credited to Account Nos. 440, 442, 444, 445 and 446 of the current Uniform System of Accounts of the Federal Power Commission, as adopted by

-2-

the California Public Utilities Commission, or similar superseding ac-
counts, or which would be credited to such accounts or similar superseding
ing accounts if Grantee kept its books in accordance with such accounts
or similar superseding accounts.

SECTION 2. Purpose. Subject to each and all of the terms, condi-
tions and limitations set forth in this ordinance, there is hereby
granted to Grantee the franchise to do all of the following:

(a) To use, for transmitting and distributing electricity
suited for lighting but for use by consumers for any and all lawful
purposes other than lighting, all poles, wires, conduits and appurte-
nances which are now or may hereafter be lawfully placed and maintained
in the streets within the City under the constitutional franchise of
the Grantee;

(b) To construct, maintain and use in said streets within
the City all poles, wires, conduits and appurtenances whenever and
wherever the constitutional franchise of Grantee is not now or hereafter
available therefor, necessary to transmit and distribute electricity
suited for, and for use by consumers for, any and all lawful purposes;
and

(c) To utilize said poles, wires, conduits and appurtenances
in said streets for transmitting electricity for use outside the bounda-
ries of City for any and all lawful purposes.

SECTION 3. Term. Subject to all terms, conditions and limitations
contained in this ordinance, the franchise granted by this ordinance shall
endure in full force and effect until the same shall, with the consent of
the Public Utilities Commission of the State of California, be voluntarily
surrendered or abandoned by Grantee, or until the State or any of its
political subdivisions or agencies, or the City of San Jose or any mu-
nicipal or public corporation, thereunto duly authorized by law shall
purchase by voluntary agreement or shall condemn and take under the power
of eminent domain, all property actually used and useful in the exercise
of said franchise and situate in the territorial limits of the State,
municipal or public corporation purchasing or condemning such property,
or until said franchise shall be forfeited for noncompliance with its

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
74 of 115

terms or until said franchise is otherwise forfeited, terminated or abandoned pursuant to any of the provisions of this ordinance or pursuant to any applicable law.

SECTION 4. Consideration. The franchise, and all rights and privileges, granted by this ordinance to Grantee are granted upon the express condition that Grantee, in consideration thereof and as compensation for the use of the streets of the City as herein authorized and permitted, shall pay to the City, in lawful money of the United States, in the manner and on the conditions hereinafter set forth in Section 5, for each of the calendar years (or fractional calendar years) following the effective date of this ordinance, a sum of money equal to one percent (1%) of Grantee's gross receipts during each such calendar year (or fractional calendar year); provided and excepting, however, that the amount of said annual compensation, and/or the formula or measure or manner in which the amount shall be determined, may be changed or amended as hereinafter provided in this Section, to wit:

(a) If, as a result of negotiation or litigation, or both, between Grantee and any other city or cities of the State of California, regardless of whether such other city or cities is or are a general law or charter city or cities, including but not limited to negotation or litigation, or both, under any hereafter adopted statute or constitutional amendment, or if by litigation, whether the City participates therein or not, which right of participation is hereby expressly reserved to the City, or if for any other reason, the Grantee shall make payment or payments to any other city for any of said calendar years (or fractional calendar years) in accordance with a formula (hereinafter referred to as a "second formula") which if applied to the City would provide payments to the City greater than provided for by the use of the formula hereinabove specified in the first paragraph of this Section 4, such "second formula" shall prevail over the fur ... ... specified in the first paragraph of this Section 4 for each of said years of the term of said franchise for or during which Grantee makes payments to any other city in accordance with said "second formula".

-4-

(b)  In the event that the laws of the State of California, as they exist as of the date of adoption of this ordinance, should at any time ever be amended or changed to permit general law cities, in granting franchises of the kind herein being granted to Grantee, to require the Grantee of any such franchise to pay or give any consideration or compensation in accordance with a formula (hereinafter referred to as "third formula") which, if applied to the City of San Jose and the Grantee herein, would provide payments to the City greater than provided for by the use of the formula hereinabove specified in the first paragraph of this Section 4 or by the use of the abovementioned "second formula" if such "second formula" is the higher, then in such event City shall have the right, at any time thereafter, to require Grantee to thereafter make payments in accordance with such "third formula"; provided, however, that City shall not require Grantee to make any payments pursuant to the provisions of this subparagraph (b) during the first thirty (30) years of the franchise herein granted by City to Grantee.

(c)  Within the last six (6) calendar months of the calendar year 1981, and thereafter within the last six (6) calendar months of each ten (10) calendar year period following the calendar year 1981, each of such six (6) month periods being hereinafter referred to as "six-month-notice period", either City or Grantee, or each of them, may serve written notice upon the other of its desire to change the amount or kind of consideration or compensation to be annually paid or given, after the expiration of such "six-month-notice period", by Grantee to City as consideration for said franchise and as compensation for the use by Grantee of the streets of the City as herein authorized and permitted, or of its desire to change the manner, measure or formula pursuant to which such annual consideration and compensation shall thereafter be determined. Said notice shall specify the change or changes desired.  Within ninety (90) days from and after the date of service . . . . . . a . . . tice, or at such other time or times as the parties may mutually agree upon, City and Grantee shall meet and confer and attempt in good faith to resolve the matters at issue by mutual agreement.  No such agreement shall be

-5-

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 76 of 115

effective unless it is in writing, and unless it is approved and signed by both City and Grantee. No such agreement shall be deemed approved by City unless it shall have been approved and authorized by written ordinance adopted by the governing body of the City. Unless otherwise provided in the agreement, any change or changes agreed upon in any such agreement shall be effective from and after the commencement of the calendar year immediately following the expiration of the "six-month-notice period".

In the event that City and Grantee should fail to arrive at any agreement with respect to the proposed change or changes within ninety (90) days from and after the service of the abovementioned notice, either party may thereafter serve upon the other a written notice of its intent to present the proposed change or changes to a board of arbitration for its consideration and decision. Unless otherwise agreed to by both parties, said notice must be served no later than the 30th day of June next following the expiration of the above-mentioned "six-month-notice period".

The board of arbitration shall consist of seven (7) members, two (2) to be selected by the City, and two (2) to be selected by the Grantee. The four (4) arbitrators selected by the parties shall select three (3) neutral arbitrators. Within thirty (30) days after service of said notice of intent to submit said matter to arbitration, each of the parties, respectively, shall select its two (2) members of the board, and within thirty (30) days after the four (4) are selected, they shall select the three (3) neutral arbitrators. The board of arbitration shall then consider the proposed change or changes, and, after giving both parties a reasonable opportunity to be heard, shall determine what change or changes, if any, are to be made. The change or changes, if any, ordered by the board may differ from those requested or desired by either of the parties. The determination shall be fair and reasonable to both parties, and in arriving at it, the board shall consider the nature and value of the rights and privileges granted by this ordinance to the Grantee, the costs, expenses and damages, if any, which City has

-6-

or will incur or suffer because of the grant of said rights and privileges to Grantee or because of Grantee's exercise of such rights and privileges, the amount paid to comparable cities for similar franchise rights and any and all other relevant factors. The board's determination shall be in writing, shall be by the majority vote of its seven (7) members, and shall be final and conclusive and binding upon both parties. The board shall render its written decision on or before, and no later than, the last day of the first twelve (12) calendar months immediately following the expiration of the abovementioned "six-month-notice period". Any change or changes made by the board shall be effective retroactively as of the first day immediately following the end of the aforementioned "six-month-notice period", and shall continue in effect until such time as the consideration payable by Grantee to City is again changed pursuant to any of the provisions of this Section 4.

If said board shall fail to arrive at a determination within the twelve (12) months immediately following the expiration of the abovementioned "six-month-notice period", said board, unless otherwise agreed to by both parties, shall be deemed discharged, and a second board, no members of which shall have been a member of the previous board, shall be established as follows: City and Grantee shall each appoint two (2) new arbitrators; City and Grantee, or either of them, shall petition the Superior Court of the State of California in and for the County of Santa Clara to appoint three (3) neutral arbitrators and to order all seven (7) of said arbitrators to consider the proposed change or changes, to give both parties a reasonable opportunity to be heard, and to arrive at a determination, within a reasonable time specified by the Court, as to what change or changes, if any, shall be made. The determination shall be fair and reasonable to both parties, and in arriving at it the second board shall consider all matters and factors which the former board was required to consider. The second board's determination shall be in writing, and must be by majority vote of all seven (7) members; and its determination shall be final and conclusive and binding upon both parties. Any change or changes made or ordered by the board shall be effective retroactively

-7-

as of the first day immediately following the end of the aforementioned "six-month-notice period" and shall continue in effect until such time as the consideration payable by Grantee to City is again changed pursuant to any of the provisions of this Section 4.

All costs and expenses of the boards of arbitration, and court costs in the event recourse is had to the Superior Court as aforesaid, shall be paid equally by City and Grantee.

In the event any person appointed to serve as an arbitrator on either of the abovementioned boards should die or fail or be unable to perform the duties of an arbitrator, a substitute shall be appointed to serve in his place and stead by the party or body which appointed his predecessor.

In the event that the arbitrators fail to comply with the order of the court and to reach a decision by the majority vote of its seven (7) members within the period specified by the court, or within three (3) years from and after the date of expiration of the abovementioned "six-month-notice period", whichever is the shorter period of time, the party who proposed the change or changes shall thereafter have the right to terminate the rights, privileges and franchise herein granted by City to Grantee, and upon such termination, the rights, privileges and franchises of Grantee granted by this ordinance shall be at an end; provided, however, that such right of termination shall be deemed waived if not exercised within one hundred eighty (180) days immediately following the expiration of the time, specified by the court, within which the board was required to reach a decision.

-8-

SECTION 5. Reports, Dates of Payment. Within three (3) months from and after the expiration of each calendar year, or fractional calendar year, following the effective date of this ordinance, Grantee shall file with the City Clerk of City the original, and with the Director of Finance of City a copy, and with the City Auditor of City another copy, of a duly verified statement showing in detail the gross receipts of Grantee during the preceding calendar year or fractional calendar year, and such other data or information as City may need to calculate or determine the amounts which Grantee is obligated to pay City pursuant to the provisions of Section 4. Said statement shall be in such form and detail as from time to time may be reasonably prescribed by City.

Within fifteen (15) days from and after the time for filing of each such statement, Grantee shall pay to City, at the office of City's Director of Finance, in lawful money of the United States, the sum of money hereinabove required to be paid by Grantee to City for the calendar year, or fractional calendar year, covered by the statement.

Any neglect, omission or refusal by Grantee to file such verified statement, or to pay said percentage at the time and in the manner specified shall be grounds for the declaration of a forfeiture of this franchise and of all rights and privileges of Grantee hereunder.

In the event Grantee fails to make the payments for this franchise on or before the dates due as hereinabove provided, Grantee shall pay as additional consideration both of the following amounts:

(a) A sum of money equal to two percent (2%) of the amount due. This amount is required in order to defray those additional expenses and costs incurred by City by reason of the delinquent payment, including, but not limited to, the cost of administering, accounting and collecting said delinquent payment and the cost to City of postponing services and projects necessitated by the delay in receiving revenue.

(b) A sum of money equal to one percent (1%) of the amount due per month as interest and for loss of use of the money due.

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 80 of 115

SECTION 6. _Examination of Books, Accounts and Records._ The City Auditor of City, or any certified public accountant or qualified person designated by City, at any reasonable times during business hours, may make examination or audit at Grantee's office or offices, of its books, accounts and records germane to and for the purpose of verifying the data set forth in the statement required by Section 5 hereof.

All books, accounts, and other records relating to the statement required by Section 5 hereof shall be kept within the City of San Jose, or the City of San Francisco, California, or in such other place within the territory served by Grantee as the reasonable convenience of Grantee may require.

In the event that it becomes necessary for said City Auditor, or any representative designated by City, to make such examination at any place other than within the County of Santa Clara or the City and County of San Francisco, then, in that event, all increased costs and expenses to City necessary or incident to such examination and resulting from such books and records not being available within said counties shall be paid to City by Grantee on demand.

Grantee shall file with the City's City Clerk, Director of Finance and City Auditor a copy of its annual report to the California Public Utilities Commission, or its successor in authority, as soon as practicable after the original of said report has been filed with said Commission or its successor in authority.

SECTION 7. _Franchise Subordinate to Public Use of Streets._ The franchise herein granted to Grantee, and all rights and privileges granted thereunder, are and shall be subordinate to the right of City, and of the general public, to use and occupy, and to any occupancy by them, of any street or streets for any municipal or public uses or purposes; provided, however, that the words "municipal or public uses or purposes" do not include the construction and operation by City of facilities to provide and deliver electricity, gas or water to private customers.

-10-

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 81 of 115

SECTION 8. _Compliance With Laws_. All work undertaken, or performed, and all poles, wires, conduits and appurtenances constructed, maintained and used, pursuant to the provisions of the franchise granted herein, including but not limited to the practices of Grantee in its installation and removal of Grantee's facilities in the streets of City, shall be done, undertaken, performed and accomplished, and Grantee by acceptance of this franchise agrees that it will do, undertake, perform and accomplish the same, in accordance and compliance with applicable ordinances, rules and regulations of City now or as hereafter adopted or prescribed, and with applicable laws, rules, regulations and orders of the State of California, the Public Utilities Commission of the State of California and of any other governmental authority having jurisdiction in the premises, and, also, so as to cause the least possible hindrance to the use of the streets for the purpose of travel or any other public purpose.

SECTION 9. _City Reserved Powers_.

(a) City reserves the right for itself to lay, construct, erect, install, use, operate, repair, replace, remove, relocate, regrade or maintain below surface or above surface improvements of any type or description in, upon, along, across, under or over the streets of the City. City further reserves the right to relocate, remove, vacate or replace the streets themselves. If the exercise of the aforementioned reserve rights conflicts with any poles, wires, conduits and appurtenances of Grantee constructed, maintained and used pursuant to the provisions of the franchise granted hereby, whether previously constructed, maintained and used or not, or if a street or any part thereof is vacated and no easement is reserved to permit Grantee to retain its facilities therein, Grantee shall, and by acceptance of this franchise agrees to, without cost or expense to City, within a reasonable time after written notice from the City, or its authorized representative, and request so to do, begin the work of physical field construction, of changing the location of all facilities or equipment so conflicting, and, unless otherwise authorized by the City, the work of removing its facilities from any street or part thereof which has been vacated and in which no easement is reserved to permit Grantee to retain its facilities therein, and, after such beginning, prosecute the work with due diligence to completion.

-11-

In the event Grantee shall fail to commence such work within such reasonable time after service of said notice upon Grantee, or shall fail after such beginning to prosecute the same with due diligence to completion, City may, if it should wish to so do, without limitation with respect to any other rights or remedies which it may have under the circumstances, cause the work required in said notice to be done and performed by City or its agents or contractors, and Grantee, in such event, shall pay, and by acceptance of this franchise agrees to pay, City the costs thereof within ten (10) days after delivery to Grantee of an itemized bill therefor. It is understood and agreed that the cost of doing said work shall be considered to be the actual costs plus ten percent (10%) thereof for overhead.

(b) Irrespective of any other provision of this ordinance, Grantee's right to construct, maintain and use, or remove poles, wires, conduits and appurtenances thereto shall be subject at all times to such right as the City may have, in the exercise of its police power, to require the removal or relocation, to either overhead or underground locations, of said poles, wires, conduits and appurtenances thereto at the sole cost and expense of Grantee.

(c) Nothing contained in this Section 9 shall require Grantee to remove or relocate its facilities so as to eliminate conflicts with facilities constructed and operated by City to provide and deliver electricity, gas or water to private customers.

SECTION 10. <u>Hold Harmless</u>. Grantee shall indemnify, save and hold harmless, and by acceptance of this franchise Grantee agrees to indemnify, save and hold harmless, the City, and all officers and employees of City, for, against and from all damages, judgments, decrees, costs and expenditures or loss which City, or any such officers or employees, may suffer, or which may be recovered from or be obtainable against City, or such officers or employees, for, or by reason of, or growing out of, or resulting from the exercise by Grantee of any or all of the rights or privileges granted by this franchise, or by reason of, or growing out of or resulting from any act or acts of Grantee or its servants or agents in exercising the franchise herein granted, or by reason of, or growing out of or resulting from the failure of Grantee

-12-

to comply with the provisions of said franchise or to do anything required of it by said franchise; and Grantee shall defend, and by acceptance of said franchise agrees to defend, any suit that may be instituted against City, or any officer or employee thereof, by reason of or growing out of or resulting from the exercise by Grantee of any or all of the rights or privileges granted by said franchise, or by reason of any act or acts of Grantee, or its servants or agents, in exercising the franchise herein granted, or by reason, or growing out of or resulting from the failure of Grantee to comply with the provisions of said franchise or to do anything required of it by said franchise.

In the event that any person, firm or private or public corporation makes claim against City for any damages for or against or from which Grantee hereinabove agrees to indemnify City or save and hold City harmless, City shall give Grantee written notice of such claim within thirty (30) days from and after the date City receives said claim.

In the event that any person, firm or private or public corporation makes claim against any officer or employee of the City for any damages for or against or from which Grantee hereinabove agrees to indemnify said officer or employee or save and hold said officer or employee harmless, City or said employee shall give Grantee written notice of said claim within thirty (30) days from and after the date said officer or employee receives said claim.

In the event City suffers any damage or loss for or against or from which Grantee hereinabove agrees to indemnify City or save and hold City harmless, City shall give Grantee written notice of such damage or loss within thirty (30) days from and after the expiration of a reasonable time, after incurring such damage or loss, within which it could determine whether the damage or loss was covered by the above indemnification and save and hold harmless provisions.

In the event any officer or employee of City suffers any damage or loss for or against or from which Grantee hereinabove agrees to

-13-

indemnify said officer or employee or save and hold said officer or employee harmless; City or said employee shall give Grantee written notice of such damage or loss within thirty (30) days from and after the expiration of a reasonable time, after incurring such damage or loss, within which it could determine whether the damage or loss was covered by the above indemnification and save and hold harmless provisions.

SECTION 11. Repair Costs. Grantee shall pay, and by acceptance of this franchise agrees to pay, to City on demand the cost of all repairs to City property made necessary by any of the operations of Grantee under the franchise granted by this ordinance; provided, however, that, if and to the extent that such is authorized by ordinances, rules and regulations of the City as the same may now or hereafter exist, Grantee may make repairs to streets, sidewalks, curbs and gutters itself at its own cost in accordance with City ordinances, rules, regulations and specifications if the same can be so done without undue inconvenience of the City.

SECTION 12. Work Done By Grantee In Streets. Reference is hereby made to Section 8 of this ordinance. Subject to all laws, ordinances, rules, regulations and orders mentioned in said Section 8 and Grantee's compliance therewith, and unless and until otherwise provided by said laws, ordinances, rules, regulations and orders, or any amendments or additions thereto which may hereafter be adopted, the following conditions shall apply to all work done by Grantee in the streets of City pursuant to the franchise herein granted to it, and Grantee, by acceptance of this franchise, agrees to comply therewith, to wit:

(a) Excavation Permits. Grantee shall not make, and Grantee by acceptance of this franchise agrees that it shall not make, any opening or excavation in any street in the City, nor disturb the earth beneath the surface of any such street, regardless of whether the surface

-14-

thereof is to be damaged or removed or not, unless (i) Grantee shall
have first applied for and obtained from the Engineer of City, in ac-
cordance with such applicable ordinances, rules or regulations of the
City as may be in force or effect at the time such application is made,
a permit for the work proposed to be done by Grantee, each such permit
to prescribe the location, place, time and manner at and in which such
work is to be done and such other conditions as the Engineer may prescribe,
(ii) Grantee deposits such sum of money, or provides City with such
surety bond, as may be required by any ordinance, rule or regulation of
the City at the time the above application is made, as a guarantee and
security to City that Grantee will reimburse City for any and all costs
or damages which City may incur or suffer by reason of, in connection
with or as a result of the doing of such work, and (iii) Grantee does
all said work in accordance with the conditions of the abovementioned
permit and all applicable laws, ordinances, rules and regulations in ef-
fect at such time, and (iv) Grantee reimburses City for all of its above-
mentioned costs and damages; provided and excepting, however, that in
cases of emergency where the abovementioned work is urgently and immedi-
ately necessary to protect the public safety, the abovementioned permit
may be dispensed with.

(b) _Restoration of Streets by Grantee_. When any opening or
excavation is made, or work done in, upon, along, across, under or over
any street for any purpose whatever by Grantee, in connection with the
exercise of any right or privilege granted by this franchise, any portion
of said street affected or damaged thereby shall be restored by Grantee,
and Grantee hereby agrees to restore the same, as promptly as practicable,
to as useful, safe, durable and good condition as existed prior to the
making of such opening or such excavation or the doing of such work, and
the same shall be in conformity with the provisions of applicable or-
dinances, laws, rules and regulations of City adopted in the exercise
of its police power in force and effect at the time of the performance
of such work, and in accordance with applicable State laws, and

-15-

shall be to the reasonable satisfaction of the Engineer. After the work of restoring such portion of said street has been completed as provided in this Section, Grantee shall preserve, and Grantee hereby agrees to preserve, such portion of said street so restored from deterioration resulting from it having been opened or excavated, ordinary wear, tear and use excepted.

(c) Repair of Streets by Grantee. If any portion of any street or City property shall be damaged by reason of, growing out of, or resulting from the exercise by Grantee of any or all of the rights or privileges granted by this ordinance, or by reason of any act or acts of Grantee, or its servants or agents, in the exercise of such rights or privileges, Grantee, at its own cost and expense, shall immediately repair such damage and restore said street or property to as useful, safe, durable and good condition as existed before such damage. Such work shall be done under the direction of the Engineer and to his reasonable satisfaction.

(d) Special Provisions Re Manholes, etc. All manholes, vaults, traps, catch basins, or other structures shall be so capped and covered as to be flush with the surface of the street, and shall not interfere in any way with the use of such street for the purpose of travel.

Grantee shall not lay, construct, erect or install in the streets of City any vent pipe from any vault, manhole or other structure of Grantee except in the manner and at the location or locations prescribed or approved by the Engineer.

(e) Notification of Abandonment or Removal of Facilities of Grantee. Upon abandonment or removal of any of the facilities or equipment of Grantee located above or below the surface of a street, Grantee shall notify the Engineer in writing of such abandonment or removal within not less than twenty (20) days thereafter.

-16-

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 87 of 115

(f) Restoration or Repair of Streets by City. Anything here-inabove in this Section 12 to the contrary notwithstanding, in the event during the term of this franchise City shall provide, by ordinance adopted in the exercise of its police power, that all work of restoring or repairing the portion of any street affected or damaged by any opening or excavation made or work done by Grantee in, upon, along, across, under or over said street, shall be done and performed by City and City shall have done and performed said work pursuant to the provisions of said ordinance, Grantee shall pay, and by the acceptance of this franchise Grantee agrees to pay City, the cost of performing such work. Said charges shall be paid by Grantee to City at the time and in the manner provided in said ordinance.

SECTION 13. No Recourse Against City for Damages Resulting From Public Work. If Grantee shall sustain any loss, injury or damage by reason of the doing by City of any public work, and if said work shall be done without negligence on the part of City and/or any officer, board, commission or department thereof, then Grantee shall have no recourse whatever against City and/or any officer, board, commission or department thereof on account of such loss, injury or damage.

SECTION 14. Enumeration of Specific Rights of City Not to Limit General Reservations. The enumeration herein of specific rights reserved to City shall not be taken as exclusive, or as limiting the general reservations herein made.

SECTION 15. No Transfer Without Consent. Grantee shall not sell, lease, transfer or assign the franchise or all or any of the rights or privileges granted thereby unless an ordinance of the City consenting to such sale, lease, transfer or assignment shall have been duly adopted and become effective. Any such sale, lease, transfer or assignment consented to by any such ordinance shall be subject to all terms, conditions and provisions of this ordinance and of such consenting ordinance. Any

-17-

sale, lease, transfer or assignment made without said consent, or in
violation or non-compliance with the terms, conditions or provisions
of any ordinance granting consent, shall be null and void and of no
force or effect.  However, nothing contained in this Section 15 shall
be construed to prevent Grantee from including said franchise in a mort-
gage or trust deed without such express consent.

SECTION 16.  Franchise Granted Herein To Be In Lieu Of Other City
Franchises.  The grant of this franchise is made in lieu of all other
City franchises owned or claimed by Grantee which may authorize it to
use all or any of the streets of City for transmitting and distributing
electricity.

Grantee, by acceptance of this franchise, and as a condition pre-
cedent to the enjoyment of any rights and privileges hereunder, sur-
renders to City all City franchises in lieu of which this grant is made.

SECTION 17.  Forfeiture of Franchise.  This franchise is granted
upon each and every condition herein contained, and shall at all times
be strictly construed against Grantee.  Nothing shall pass by the fran-
chise granted hereby to Grantee unless it be granted in plain and unam-
biguous terms.  The enumeration herein of specific rights reserved to
City shall not be taken as exclusive, or as limiting the general reser-
vations herein made.  Each of said conditions is a material and essential
condition to the granting of the franchise.  If Grantee shall fail, neg-
lect or refuse to comply with any of the conditions of the franchise
granted hereby, and shall not within ten (10) days after written demand
for compliance begin the work of compliance, or after such beginning
shall not prosecute the same with due diligence to completion, then
City, by the City Council, in addition to all rights and remedies allowed
by law, thereupon may terminate and declare forfeited the right, privilege
and franchise granted in and by this ordinance, and all the rights,

-18-

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
89 of 115

privileges and the franchise of Grantee granted hereby shall thereupon be at an end. Thereupon and immediately, Grantee shall be deemed to have surrendered the franchise and all rights and privileges connected therewith. No provision herein made for the purpose of securing the enforcement of the terms and conditions of the franchise granted herein shall be deemed an exclusive remedy or to afford the exclusive procedure for the enforcement of said terms and conditions, but the remedies and procedure outlined herein or provided, including forfeiture, shall be deemed to be cumulative.

SECTION 18. Acquisition and Evaluation. Nothing in this ordinance or in the franchise granted hereby shall be construed as in any way impairing or affecting City's right to acquire property of Grantee, either by purchase, or through the exercise of City's power of eminent domain or through voluntary agreement between City and Grantee; and nothing in this ordinance or in the franchise granted herein shall be construed to contract away or to modify or to abridge either for a term or in perpetuity the City's right of eminent domain in respect to any public utility.

Also, the franchise and all rights and privileges herein granted to Grantee shall never be given, and Grantee by acceptance of the franchise agrees that such franchise, rights and privileges shall never be given, any value before any court or other public authority in any proceeding of any character in excess of the cost to the Grantee of the necessary publication and any other sum paid by it to the municipality at the time of the acquisition.

SECTION 19. Franchise to be Non-Exclusive. This franchise shall be non-exclusive, and neither the granting of this franchise nor any of the provisions contained herein shall prevent the City from granting any identical, similar or different franchise to any person other than Grantee for all or any areas of the City, or prevent at any time, City from constructing, maintaining and using poles, wires, conduits and appurtenances necessary or proper for transmitting and distributing

-19-

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 90 of 115

electricity to the public for any and all purposes in, along, across, upon, under or over any public streets and places in the City.

SECTION 20. _Succession to Rights, Powers and Duties_. Whenever in this ordinance any right or power is conferred or duty imposed upon the legislative body of City or any officer thereof, such right and power shall inure to and be exercised by, and such duty shall be imposed upon such body, board or officer of City as may by law hereafter succeed to their respective rights, powers and duties. All of the rights and powers conferred or duties imposed upon City in its present incorporated form shall inure to and be exercised by and be imposed upon City in any future reorganized, consolidated, enlarged or reincorporated form.

SECTION 21. _Publication Expenses_. Grantee of said franchise shall pay to City a sum of money sufficient to reimburse it for all publication expenses incurred by it in connection with the granting thereof; such payment to be made within thirty (30) days after City shall have furnished Grantee with a written statement of such expense.

SECTION 22. _Giving of Notices_. (a) Any written notice herein required to be given by City, or any of its officers or agents, to Grantee, shall be deemed to have been duly served if delivered in person to, or if sent by registered or certified mail to any of the following officers at the following addresses, or to such other officers and addresses as the Grantee may from time to time file with the City Clerk of City, to wit:

| | |
|---|---|
| Division Manager | Vice President and General |
| San Jose Division | Counsel |
| Pacific Gas and Electric | Pacific Gas and Electric |
| Company | Company |
| 86 South Third Street | 77 Beale Street |
| San Jose, California 95114 | San Francisco, California 94106 |

(b) Any written notice herein required by Grantee to be given to City, or any of its officers or agents, shall be deemed to have been duly served if delivered in person to the City Clerk of City, or if sent by registered or certified mail to the City Clerk of City.

-20-

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 91 of 115

SECTION 23. Use of Singular and Plural. The use of the singular number herein shall include the plural, and the use of the plural number shall include the singular.

SECTION 24. Acceptance of Franchise. Within ten (10) days after the effective date of this ordinance, Grantee shall file with the City Clerk a written acceptance of the franchise hereby granted, which acceptance shall constitute a continuing agreement on the part of Grantee to comply with the terms and conditions hereof, and no rights are hereby conferred until the filing of such acceptance. If Grantee shall fail to file its said written acceptance with said City Clerk within said ten (10) day period, the offer of franchise contained in this ordinance shall be deemed revoked, and said franchise may not be thereafter accepted.

SECTION 25. This ordinance is adopted pursuant and subject to the provisions of the Charter of City, and in accordance with the provisions of Article X, Chapter 1, of the San Jose Municipal Code. The provisions of said Chapter 1 of Article X are hereby incorporated in this ordinance to the same extent as though fully set forth herein.

PASSED FOR PUBLICATION this ___20th___ day of ___September___, 1971, by the following vote:

AYES:      Councilmen - Colla, Garza, Goglio, Hayes, Hays, Naylor, Mineta.

NOES:      Councilmen - None

ABSENT:    Councilmen - None

NORMAN Y. MINETA

ATTEST:   FRANCIS L. GREINER

By: Roy H. Hubbard, Deputy
    City Clerk

The attached is a full, true and correct copy of

Ordinance No. _15880_
~~which became~~ *will become* effective on

_November 4, 1971_

ATTEST:

Francis L. Greiner, City Clerk
of the City of San Jose, Calif.

By: _Patricia Caldwell_ Deputy

Dated: _October 5, 1971_

Void if detached

374/87

ORDINANCE NO. 21677

AN ORDINANCE OF THE COUNCIL OF THE CITY OF SAN JOSE
AMENDING SECTIONS ONE (1), FOUR (4), AND FIVE (5) OF
ORDINANCE NO. 15880 WHICH GRANTED PACIFIC GAS AND
ELECTRIC COMPANY AN INDETERMINATE FRANCHISE FOR TRANS-
MITTING AND DISTRIBUTING ELECTRICITY WITHIN THE CITY
OF SAN JOSE; TO PROVIDE FOR A PERIOD OF QUARTERLY PAY-
MENTS OF FRANCHISE FEES; TO PROVIDE FOR A WAIVER OF
CERTAIN NEGOTIATION AND ARBITRATION OF FRANCHISE FEES
WHICH, PURSUANT TO ORDINANCE NO. 15880, WOULD OCCUR IN
1991 UNLESS WAIVED HEREIN; AND REPEALING ORDINANCE NO.
21177.

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

SECTION 1. That Section One (1) of Ordinance No. 15880 is hereby
amended by adding thereto subsections (i), (j), (k), (l), (m), (n), (o),
(p), and (q), to be numbered and entitled and to read as follows:

SECTION 1. Definitions. Wherever in this ordinance the words
or phrases hereinafter in this section defined are used, they shall
have the respective meanings assigned to them in the following
definitions (unless in a given instance the context wherein they are
used shall clearly import a different meaning):

(a) The word "Grantee" shall mean Pacific Gas and Electric
Company and its lawful successors or assigns.

(b) The word "City" shall mean the City of San Jose, a
municipal corporation of the State of California, in its present
incorporated form or in any later reorganized, consolidated, enlarged
or reincorporated form.

(c) The word "Engineer" shall mean such officer as may from
time to time be designated by the Council of the City of San Jose or
its successor, as the Engineer referred to in this ordinance;
provided, that until otherwise provided by said Council or its
successor, the word "Engineer" shall mean the head of the Public
Works Department of the City of San Jose.

(d) The word "streets" shall mean the public streets, ways,
alleys and places now or hereafter established within the City,

2333
Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page
93 of 115

ORDINANCE NO. 21677

AN ORDINANCE OF THE COUNCIL OF THE CITY OF SAN JOSE
AMENDING SECTIONS ONE (1), FOUR (4), AND FIVE (5) OF
ORDINANCE NO. 15880 WHICH GRANTED PACIFIC GAS AND
ELECTRIC COMPANY AN INDETERMINATE FRANCHISE FOR TRANS-
MITTING AND DISTRIBUTING ELECTRICITY WITHIN THE CITY
OF SAN JOSE; TO PROVIDE FOR A PERIOD OF QUARTERLY PAY-
MENTS OF FRANCHISE FEES; TO PROVIDE FOR A WAIVER OF
CERTAIN NEGOTIATION AND ARBITRATION OF FRANCHISE FEES
WHICH, PURSUANT TO ORDINANCE NO. 15880, WOULD OCCUR IN
1991 UNLESS WAIVED HEREIN; AND REPEALING ORDINANCE NO.
21177.

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

SECTION 1. That Section One (1) of Ordinance No. 15880 is hereby amended by adding thereto subsections (i), (j), (k), (l), (m), (n), (o), (p), and (q), to be numbered and entitled and to read as follows:

SECTION 1. Definitions. Wherever in this ordinance the words or phrases hereinafter in this section defined are used, they shall have the respective meanings assigned to them in the following definitions (unless in a given instance the context wherein they are used shall clearly import a different meaning):

(a) The word "Grantee" shall mean Pacific Gas and Electric Company and its lawful successors or assigns.

(b) The word "City" shall mean the City of San Jose, a municipal corporation of the State of California, in its present incorporated form or in any later reorganized, consolidated, enlarged or reincorporated form.

neer" shall mean such officer as may from

ed by the Council of the City of San Jose or

gineer referred to in this ordinance;

erwise provided by said Council or its

ineer" shall mean the head of the Public

City of San Jose.

ets" shall mean the public streets, ways,

hereafter established within the City,

VOID IF DETACHED

The attached is a full, true and correct copy of the original now on file in my office.

ATTEST:

Helen E. Jackson, City Clerk
of the City of San Jose, California

By: _Sharon K. Vardun_ Deputy

Dated: JUN 0 6 1984

Form No. 170.40

-1-

including State highways and freeways now or hereafter established within the City; provided and excepting, however, that the word "streets" shall not be deemed to mean or include any parks, playgrounds, school property or other municipal or public property not constituting public thoroughfares.

(e)  The words "poles, wires, conduits and appurtenances" shall mean poles, towers, supports, wires, conductors, cables, guys, stubs, platforms, crossarms, braces, transformers, insulators, conduits, ducts, vaults, manholes, meters, cut-outs, switches, communication circuits, appliances, attachments, appurtenances and, without limitation to the foregoing, any other property located or to be located in, upon, along, across, under or over the streets of City, used or useful in transmitting and/or distributing electricity for the purposes for which this franchise is granted.

(f)  The words "construct, maintain and use" shall mean to construct, erect, install, operate, maintain, use, repair or replace.

(g)  The phrase "constitutional franchise" shall mean such franchise or right, if any, as Grantee may have because of the acceptance by Grantee or its predecessor in estate of the offer contained in the provisions of Section 19 of Article XI of the Constitution of the State of California, as said Section existed prior to its amendment on October 10, 1911.

(h)  The phrase "gross receipts", as used in this Section and in other parts of this ordinance, shall mean all gross operating revenues received or receivable by Grantee from the sale of electricity to Grantee's customers with points of service within the corporate limits of the City (including but not limited to, sales to military reservations with points of service within the City's corporate limits) which are credited to Account Nos. 480, 481 and 482 of the current Uniform System of Accounts of the Federal Power Commission, as adopted by the California Public Utilities Commission, or similar superseding accounts, or which would be credited to such accounts or similar superseding accounts if Grantee kept its books in acceptance with such accounts or similar superseding accounts.

-2-

(i) The phrase "Quarterly Payment Amount" shall mean a payment of one quarter of the previous calendar year's total franchise fee payments paid to City pursuant to the electric franchise granted to Grantee pursuant to Ordinance No. 15880, as amended. Grantee shall not be required to make a quarterly payment, or may pay a lesser Quarterly Payment Amount, if payment of the full Quarterly Payment Amount would result in a Cumulative Value equivalent (as defined herein) exceeding Three Million Four Hundred Thousand Dollars ($3,400,000) for both the electric franchise granted to Grantee pursuant to Ordinance No. 15880, as amended, and the gas franchise granted to Grantee pursuant to Ordinance No. 15879, as amended.

(j) The phrase "Quarterly Payment Dates" shall mean June 1, September 1, and December 1 of each year.

(k) The phrase "Quarterly Bond Yield" shall mean the yield on Domestic Municipal Bonds derived from the Bond Buyer's Index for Eleven General Obligation Bonds as published by the Bond Buyer founded in 1891 of One State Street Plaza, New York, New York, and as reported on the date that said index is published during the week following each of the dates of March 1, June 1, September 1, and December 1.

(l) The phrase "Annual Interest Rate" for each year that quarterly payments of franchise fees are made shall mean the average of the Quarterly Bond Yields during that year expressed as a decimal.

(m) The phrase "Annual Discount Factor" for each year that quarterly payments of franchise fees are made shall mean the figure of one plus the Annual Interest Rate, except that the Annual Discount Factor for 1983 shall be an amount equal to one plus three-quarters of the 1983 Annual Interest Rate.

(n) The phrase "Cumulative Discount Factor" for each year that the cumulative quarterly payments of franchise fees are made shall mean the product of the Annual Discount Factors from 1983 to that year inclusively.

(o) The phrase "Quarterly Value Factor" shall mean, in any year for which quarterly payments are made on June 1, September 1, or December 1, the product of the Annual Interest Rate and an amount

-3-

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page
96 of 115

equal to .875 (10.5/12), .625 (7.5/12) or .375 (4.5/12) for the quarterly payments made June 1, September 1 or December 1, respectively.

(p) The phrase "Quarterly Value" shall mean the value of any Quarterly Payment Amount made in any year as expressed by: the product of (1) the Quarterly Payment Amount, and (2) the Quarterly Value Factor; as divided by (3) the Cumulative Discount Factor.

(q) The phrase "Cumulative Value" shall mean the sum of the Quarterly Values accumulated under this electric franchise plus the Quarterly Values accumulated under the gas franchise granted pursuant to Ordinance No. 15879, as amended.

SECTION 2. That Section Four (4) of Ordinance No. 15880 is hereby amended, to be numbered and entitled and to read as follows:

SECTION 4. Consideration. The franchise, and all rights and privileges, granted by this ordinance to Grantee are granted upon the express condition that Grantee, in consideration thereof and as compensation for the use of the streets of the City as herein authorized and permitted, shall pay to the City, in lawful money of the United States, in the manner and on the conditions hereinafter set forth in Section 5, for each of the calendar years (or fractional calendar years) following the effective date of this ordinance, a sum of money equal to two percent (2%) of Grantee's gross receipts during each such calendar year (or fractional calendar year); provided and excepting, however, that the amount of said annual compensation, and/or the formula or measure or manner in which the amount shall be determined, may be changed or amended as hereinafter provided in this Section, to wit:

(a) If, as a result of negotiation or litigation, or both, between Grantee and any other city or cities of the State of California, regardless of whether such other city or cities is or are a general law or charter city or cities, including but not limited to negotiation or litigation, or both, under any hereafter adopted statute or constitutional amendment, or if by litigation, whether the City participates therein or not, which right of participation is

Case: 19-30088 Doc# 11845-5 Filed: 01/21/22 Entered: 01/21/22 11:41:05 Page 97 of 115

hereby expressly reserved to the City, or if for any reason, the Grantee shall make payment or payments to any other city for any of said calendar years (or fractional calendar years) in accordance with a formula (hereinafter referred to as a "second formula") which if applied to the City would provide payments to the City greater than provided for by the use of the formula hereinabove specified in the first paragraph of this Section 4, such "second formula" shall prevail over the formula hereinabove specified in the first paragraph of this Section 4 for each of said years of the term of said franchise for or during which Grantee makes payments to any other city in accordance with said "second formula".

(b)  In the event that the laws of the State of California, as they existed as of September 20, 1971, should at any time ever be amended or changed to permit general law cities, in granting franchise of the kind herein being granted to Grantee, to require the Grantee of any such franchise to pay or give any consideration or compensation in accordance with a formula (hereinafter referred to as "third formula") which, if applied to the City of San Jose and the Grantee herein, would provide payments to the City greater than provided for by the use of the formula hereinabove specified in the firs paragraph of this section 4 or by the use of the above-mentioned "second formula" if such "second formula" is the higher, then in such event City shall have the right, at any time thereafter, to require Grantee to thereafter make payments in accordance with such "third formula"; provided, however that City shall not require Grantee to make any payments pursuant to the provision of this subparagraph B during the first thirty (30) years from September 20, 1971.

(c)  Within the last six (6) calendar months of the calendar year 2001, and thereafter within the last six (6) calendar months of each ten (10) calendar year period following the calendar year 2001, each of such six (6) month periods being hereinafter referred to as "six-month-notice period," either City or Grantee, or each of them, may serve written notice upon the other of its desire to change the amount or kind of consideration or compensation to be annually paid

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page
98 of 115

or given, after the expiration of such "six-month-notice period," by
Grantee to City as consideration for said franchise and as
compensation for the use by Grantee of the streets of the City as
herein authorized and permitted, or of its desire to change the
manner, measure or formula pursuant to which such annual
consideration and compensation shall thereafter be determined. Said
notice shall specify the change or changes desired. Within ninety
(90) days from and after the date of service of such notice, or at
such other time or times as the parties may mutually agree upon, City
and Grantee shall meet and confer and attempt in good faith to
resolve the matters at issue by mutual agreement. No such agreement
shall be effective unless it is in writing, and unless it is approved
and signed by both City and Grantee. No such agreement shall be
deemed approved by City unless it shall have been approved and
authorized by written ordinance adopted by the governing body of the
City. Unless otherwise provided in the agreement, any change or
changes agreed upon in any such agreement shall be effective from and
after the commencement of the calendar year immediately following the
expiration of the "six-month-notice period."

In the event that City and Grantee should fail to arrive at
any agreement with respect to the proposed change or changes within
ninety (90) days from and after the service of the above-mentioned
notice, either party may thereafter serve upon the other a written
notice of its intent to present the proposed change or changes to a
Board of Arbitration for its consideration and decision. Unless
otherwise agreed to by both parties, said notice must be served no
later than the 30th day of June next following the expiration of the
above-mentioned "six-month-notice period."

Unless otherwise agreed to by both parties in writing, the
Board of Arbitration shall consist of seven (7) members, two (2) to
be selected by the City, and two (2) to be selected by the Grantee.
The four (4) arbitrators selected by the parties shall select three
(3) neutral arbitrators. Within thirty (30) days after service of
said notice of intent to submit said matter to arbitration, or within

-6-

such time as the parties may mutually agree upon in writing, each of the parties, respectively, shall select its two (2) members of the Board, and within thirty (30) days after the four (4) are selected, they shall select the three (3) neutral arbitrators. The Board of Arbitration shall then consider the proposed change or changes, and, after giving both parties a reasonable opportunity to be heard, shall determine what change or changes, if any, are to be made. The change or changes, if any, ordered by the Board, may differ from those requested or desired by either of the parties. The determination shall be fair and reasonable to both parties, and in arriving at it, the Board shall consider the nature and value of the rights and privileges granted by this ordinance to the Grantee, the costs, expenses and damages, if any, which City has, or will incur or suffer because of the grant of said rights and privileges to Grantee or because of Grantee's exercise of such rights and privileges, the amount to be paid to comparable cities for similar franchise rights and any and all other relevant factors. The Board's determination shall be in writing, shall be by the majority vote of its seven (7) members, and shall be final and conclusive and binding upon both parties. Unless otherwise agreed to by both parties in writing, the Board shall render its written decision on or before, and no later than, the last day of the first twelve (12) calendar months immediately following the expiration of the above-mentioned "six-month-notice period." Any change or changes made by the Board shall be effective retroactively as of the first day immediately following the end of the aforementioned "six-month-notice period," and shall continue in effect until such time as the consideration payable by Grantee to City is again changed pursuant to any of the provisions of this Section 4.

If said Board shall fail to arrive at a determination within the twelve (12) months immediately following the expiration of the above-mentioned "six-month-notice period," said Board, unless otherwise agreed to by both parties in writing, shall be deemed discharged, and, unless otherwise agreed to by both parties in

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page 100 of 115

writing, a second Board, no members of which shall have been a member
of the previous Board, shall be established as follows:  City and
Grantee shall each appoint two (2) new arbitrators; City and Grantee,
or either of them, shall petition the Superior Court of the State of
California in and for the County of Santa Clara to appoint three (3)
neutral arbitrators and to order all seven (7) of said arbitrators to
consider the proposed change or changes, to give both parties a
reasonable opportunity to be heard, and to arrive at a determination
within a reasonable time specified by the Court, as to what change or
changes, if any, shall be made.  The determination shall be fair and
reasonable to both parties, and in arriving at it, the second Board
shall consider all matters and factors which the former Board was
required to consider.  The second Board's determination shall be in
writing, and must be by majority vote of all seven (7) members; and
its determination shall be final and conclusive and binding upon both
parties.  Any change or changes made or ordered by the Board shall be
effective retroactively as of the first day immediately following the
end of the aforementioned "six-month-notice period" and shall
continue in effect until such time as the consideration payable by
Grantee to City is again changed pursuant to any of the provisions of
this Section 4.

Unless otherwise agreed to by both parties in writing, all
costs and expenses of the Boards of Arbitration, and court costs in
the event recourse is had to the Superior Court as aforesaid, shall
be paid equally by City and Grantee.

In the event any person appointed to serve as an arbitrator
on either of the above-mentioned Boards should die or fail or be
unable to perform the duties of an arbitrator, a substitute shall be
appointed to serve in his place and stead by the party or body which
appointed his predecessor.

In the event that the arbitrators fail to comply with the
order of the court and to reach a decision by the majority vote of
its seven (7) members within the period specified by the court, or
within three (3) years from and after the date of expiration of the

-8-

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page
101 of 115

above-mentioned "six-month-notice period," whichever is the shorter period of time, the party who proposed the change or changes shall thereafter have the right to terminate the rights, privileges and franchise granted by City to Grantee, and upon such termination, the rights, privileges and franchise of Grantee granted by this ordinance shall be at an end; provided, however, that such right of termination shall be deemed waived if not exercised within one hundred eighty (180) days immediately following the expiration of the time, specified by the court, within which the Board was required to reach a decision.

SECTION 3. That Section Five (5) of Ordinance No. 15880 is hereby amended, to be numbered and entitled and to read as follows:

SECTION 5. Reports, Dates of Payment. (a) On each Quarterly Payment Date Grantee shall pay to the City an amount equal to the Quarterly Payment Amount. Grantee shall make Quarterly Payments on each Quarterly Payment Date until such time as the Cumulative Value equals Three Million Four Hundred Thousand Dollars ($3,400,000).

(b) Within three (3) months from and after the expiration of each calendar year, or fractional calendar year, following the effective date of this ordinance, Grantee shall file with the City Clerk of City the original, and with the Director of Finance of City a copy, and with the City Auditor of City another copy, of a duly verified statement showing in detail the gross receipts of Grantee and, if Quarterly Payments are required to be made pursuant to the provisions herein contained, the Cumulative Value of said Quarterly Payments, during the preceding calendar year or fractional calendar year, and such other data or information as City may need to calculate or determine the amounts which Grantee is obligated to pay City pursuant to the provisions of Section 4. Said statement shall be in such form and details as from time to time may be reasonably prescribed by City.

(c) Within fifteen (15) days from and after the time for filing such statement, Grantee shall pay to City, at the office of City's Director of Finance, in lawful money of the United States, the sum of

-9-

money hereinabove required to be paid by Grantee to City for the calendar year, or fractional calendar year, covered by the statement, minus the sum of the Quarterly Payment amounts if any are required to be made pursuant to the provisions herein contained, paid during the year.

(d) Any neglect, omission or refusal by Grantee to file such verified statement, or to pay said percentage at the time and in the manner specified shall be grounds for the declaration of a forfeiture of this franchise and of all rights and privileges of Grantee hereunder.

(e) In the event Grantee fails to make the payments for this franchise on or before the dates due as hereinabove provided, Grantee shall pay as additional consideration both of the following amounts:

(i) A sum of money equal to two percent (2%) of the amount due. This amount is required in order to defray those additional expenses and costs incurred by City by reason of the delinquent payment, including, but not limited to, the cost of administering, accounting and collecting said delinquent payment and the cost to City of postponing services and projects necessitated by the delay in receiving revenue.

(ii) A sum of money equal to one percent (1%) of the amount due per month as interest and for loss of use of the money due.

(f) At such time as the Cumulative Value of said Quarterly Payment equals the sum of Three Million Four Hundred Thousand Dollars ($3,400,000) as specified in subsection (a) hereinabove, Grantee shall no longer be required to make Quarterly Payments. At said time, Grantee shall be required to pay City the sum of money required to be paid as consideration for the rights, privileges, and franchise granted herein on or before the fifteenth (15th) day from and after the time for filing of the duly verified statement showing in detail the gross receipts of Grantee during the prior calendar year or fractional calendar year in accordance with the procedures of this Section 5(b-e).

-10-

SECTION 4. That Ordinance No. 21177, passed for publication of title on November 23, 1982, is hereby repealed.

SECTION 5. That this ordinance amending Ordinance No. 15880, is conditioned upon the filing by Grantee with the City Clerk of a written acceptance of this amendment to the franchise granted by Ordinance No. 15880, which said written acceptance shall be so filed within ten (10) days of the adoption date of this amending ordinance. If Grantee shall fail to so file its written acceptance with said City Clerk within said ten (10) day period, this amendment shall be deemed revoked and of no force and effect.

SECTION 6. That all other terms, conditions, and provisions of Ordinance No. 15880 not amended herein shall remain in full force and effect.

PASSED FOR PUBLICATION OF TITLE this 5th day of June, 1984, by the following vote:

AYES: ALVARADO, BEALL, ESTRUTH, FLETCHER, HAMMER, IANNI, LEWIS, RYDEN, SAUSEDO, WILLIAMS AND McENERY

NOES: NONE

ABSENT: NONE

_____
THOMAS McENERY,            Mayor

ATTEST:

_____
HELEN E. JACKSON,    City Clerk

2838a

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
104 of 115

ORDINANCE NO. 26914

**AN ORDINANCE OF THE CITY OF SAN JOSE AMENDING ORDINANCE NO. 15880 AS AMENDED BY ORDINANCE NO. 21677, WHICH GRANTED A FRANCHISE FOR THE TRANSMISSION AND DISTRIBUTION OF ELECTRICITY WITHIN THE CITY OF SAN JOSE TO PACIFIC GAS & ELECTRIC COMPANY, TO ALLOW A CREDIT IN THE EVENT OF OVERPAYMENTS**

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

SECTION 1. Section 5 of Ordinance No. 15880, as amended by Ordinance No. 21677, is amended to read as follows:

SECTION 5. Reports, Dates of Payment.

(a)     On each Quarterly Payment Date Grantee shall pay to the City an amount equal to the Quarterly Payment Amount.  Grantee shall make Quarterly Payments on each Quarterly Payment Date until such time as the Cumulative Value equals Three Million Four Hundred Thousand Dollars ($3,400,000).

(b)     Within three (3) months from and after the expiration of each calendar year, or fractional calendar year, following the effective date of this Ordinance, Grantee shall file with the City Clerk of the City the original, and with the Director of Finance of City a copy, and with the City Auditor of City another copy, of a duly verified statement showing in detail the gross receipts of Grantee and, if Quarterly Payments are required to be made pursuant to the provisions herein contained, the Cumulative Value of said Quarterly Payments, during the preceding calendar year or fractional calendar year, and such other data or information as City may need to calculate or determine the amounts which Grantee is obligated to pay City pursuant to the provisions of Section 4.  Said

Case: 19-30088     Doc# 11845-5     Filed: 01/21/22     Entered: 01/21/22 11:41:05     Page 105 of 115

statement shall be in such form and details as from time to time may be reasonably prescribed by City.

(c)     Within fifteen (15) days from and after the time for filing such statement, Grantee shall pay to City, at the office of City's Director of Finance, in lawful money of the United States, the sum of money hereinabove required to be paid by Grantee to City for the calendar year, or fractional calendar year, covered by the statement, minus the sum of the Quarterly Payment Amounts if any are required to be made pursuant to the provisions herein contained, paid during the year. In the event the total Quarterly Payment Amounts exceed the total annual payment due to City, upon the prior written acknowledgement by the Director of Finance that an overpayment appears to have occurred, Grantee shall deduct from each of the next year's Quarterly Payment Amounts the overpayment in equal amounts, without interest. The acknowledgement by the Director of Finance of an overpayment does not in anyway limit City's rights to seek payment in full from Grantee in the event City determines there was an underpayment of the annual payment due to City.

(d)     Any neglect, omission or refusal by Grantee to file such verified statement, or to pay said percentage at the time and in the manner specified shall be grounds for the declaration of a forfeiture of this franchise and of all rights and privileges of Grantee hereunder.

(e)     In the event Grantee fails to make the payments for this franchise on or before the dates due as hereinabove provided, Grantee shall pay as additional consideration both of the following amounts:

(i)     A sum of money equal to two percent (2%) of the amount due. This amount is required in order to defray those additional expenses and costs incurred by City by reason of the delinquent payment, including, but not limited to, the cost of administering, accounting and collecting said

Case: 19-30088   Doc# 11845-5   Filed: 01/21/22   Entered: 01/21/22 11:41:05   Page
106 of 115

delinquent payment and the cost to City of postponing services and projects necessitated by the delay in receiving revenue.

(ii)    A sum of money equal to one percent (1%) of the amount due per month as interest and for loss of use of the money due.

(f)    At such time as the Cumulative Value of said Quarterly Payment equals the sum of Three Million Four Hundred Thousand Dollars ($3,400,000) as specified in subsection (a) hereinabove, Grantee shall no longer be required to make Quarterly Payments. At said time, Grantee shall be required to pay City the sum of money required to be paid as consideration for the rights, privileges, and franchise granted herein on or before the fifteenth (15th) day from and after the time for filing of the duly verified statement showing in detail the gross receipts of Grantee during the prior calendar year or fractional calendar year in accordance with the procedures of this Section 5(b-e).

SECTION 2.  This Ordinance amending Ordinance No. 15880, as amended by Ordinance No. 21677, is conditioned upon the filing by Grantee with the City Clerk of a written acceptance of this amendment to the franchise granted by Ordinance No. 15880, as amended by Ordinance No. 21677, which said written acceptance shall be so filed within ten (10) days of the adoption date of this amending Ordinance. If Grantee shall fail to so file its written acceptance with the City Clerk within said ten (10) day period, this amendment shall be deemed revoked and of no force and effect.

SECTION 3.  All other terms, conditions, and provisions of Ordinance No. 15880, as amended by Ordinance No. 21677, not amended herein shall remain in full force and effect.

SECTION 4.  This Ordinance shall be effective as of June 1, 2003, *nunc pro tunc.*

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
107 of 115

PASSED FOR PUBLICATION of title this 10th day of June, 2003, by the following vote:

AYES: CAMPOS, CHAVEZ, CHIRCO, CORTESE, DANDO, GREGORY, LeZOTTE, REED, WILLIAMS, YEAGER; GONZALES

NOES: NONE

ABSENT: NONE

DISQUALIFIED: NONE

RON GONZALES
Mayor

ATTEST:

PATRICIA L. O' HEARN
City Clerk

The foregoing instrument is a correct copy of the original on file in this office.
Attest:
PATRICIA L. O'HEARN
City Clerk
City Clerk of the city of San Jose.
County of Santa Clara, State of California.

By _____ , Deputy

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 108 of 115

RD:KMM:ERD
1/22/2010

## ORDINANCE NO. <u>28720</u>

**AN ORDINANCE OF THE CITY OF SAN JOSE AMENDING ORDINANCE NO. 15880 AS AMENDED BY ORDINANCE NO. 21677 AND ORDINANCE NO. 26914 WHICH GRANTED A FRANCHISE FOR THE TRANSMISSION AND DISTRIBUTION OF ELECTRICITY WITHIN THE CITY OF SAN JOSE TO PACIFIC GAS AND ELECTRIC COMPANY TO ADD A FRANCHISE FEE SURCHARGE OF 0.3% RESULTING IN A TOTAL FRANCHISE FEE REMITTED TO THE CITY OF 2.3% OF GROSS RECEIPTS AND TO PROVIDE FOR THE WAIVER OF CERTAIN NEGOTIATION AND ARBITRATION RIGHTS UNDER THE FRANCHISE**

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

<u>SECTION 1.</u> Ordinance No. 15880, as amended by Ordinance No. 21677 and Ordinance No. 26914, is amended to add a new Section 4.1, to be numbered and entitled and to read as follows:

<u>SECTION 4.1 Franchise Fee Surcharge.</u>

(a)     In addition to the annual compensation specified above in Section 4, and subject to the provisions set forth in Section 4(a)-(c), Grantee shall remit to the City during the term an additional sum of money equal to three tenths of one percent (0.3%) of the annual gross receipts of Grantee (the "Franchise Fee Surcharge") in consideration thereof and as compensation for the use of the streets of the City as herein authorized and permitted. Grantee shall remit to the City the Franchise Fee Surcharge, in lawful money of the United States, in the manner and on the conditions hereinafter set forth in Section 5, for each of the calendar years (or fractional calendar years) following the effective date of this Ordinance.

(b)     Prior to Grantee's remittance to City of the Franchise Fee Surcharge, Grantee shall receive approval from the California Public Utilities Commission

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page
109 of 115

("Commission") to collect the Franchise Fee Surcharge in accordance with Commission Decision 89-05-063, *Guidelines for the Equitable Treatment of Revenue Producing Mechanisms Imposed by Local Government Entities on Public Utilities*, 32 CPUC 2d 60, May 26, 1989.

SECTION 2. Section 5 of Ordinance No. 15880, as amended by Ordinance No. 21677 and Ordinance No. 26914, is amended to read as follows:

SECTION 5. Reports, Dates of Payment.

(a) On each Quarterly Payment Date, Grantee shall pay to the City an amount equal to the Quarterly Payment Amount. Grantee shall make Quarterly Payments on each Quarterly Payment Date until such time as specified in Section 5(f), notwithstanding anything to the contrary specified above in Section 1(i) that Grantee shall not be required to make a quarterly payment, or may pay a lesser Quarterly Payment Amount, if payment of the full Quarterly Payment Amount would result in a Cumulative Value equivalent exceeding Three Million Four Hundred Thousand Dollars ($3,400,000).

(b) Within three (3) months from and after the expiration of each calendar year, or fractional calendar year, following the effective date of this Ordinance, Grantee shall file with the City Clerk of the City the original, and with the Director of Finance of City a copy, and with the City Auditor of City another copy, of a duly verified statement showing in detail the gross receipts of Grantee, and such other data or information as City may need to calculate or determine the amounts which Grantee is obligated to pay City pursuant to the provisions of Section 4. Said statement shall be in such form and details as from time to time may be reasonably prescribed by City.

(c)     Within fifteen (15) days from and after the time for filing such statement, Grantee shall pay to City, at the office of City's Director of Finance, in lawful money of the United States, the sum of money hereinabove required to be paid by Grantee to City for the calendar year, or fractional calendar year, covered by the statement, minus the sum of the Quarterly Payment Amounts paid during the year. In the event the total Quarterly Payment Amounts exceed the total annual payment due to City, upon the prior written acknowledgement by the Director of Finance that an overpayment appears to have occurred, Grantee shall deduct from each of the next year's Quarterly Payment Amounts the overpayment in equal amounts, without interest. The acknowledgement by the Director of Finance of an overpayment does not in any way limit City's rights to seek payment in full from Grantee in the event City determines there was an underpayment of the annual payment due to City.

(d)     Any neglect, omission or refusal by Grantee to file such verified statement, or to pay said percentage at the time and in the manner specified shall be grounds for the declaration of a forfeiture of this franchise and of all rights and privileges of Grantee hereunder.

(e)     In the event Grantee fails to make the payments for this franchise on or before the dates due as hereinabove provided, Grantee shall pay as additional consideration both of the following amounts:

(i)     A sum of money equal to two percent (2%) of the amount due. This amount is required in order to defray those additional expenses and costs incurred by City by reason of the delinquent payment, including, but not limited to, the cost of administering, accounting and collecting said delinquent payment and the cost to City of postponing services and projects necessitated by the delay in receiving revenue.

Case: 19-30088     Doc# 11845-5     Filed: 01/21/22     Entered: 01/21/22 11:41:05     Page
111 of 115

(ii)    A sum of money equal to one percent (1%) of the amount due per month as interest and for loss of use of the money due.

(f)    Grantee shall no longer be required to make Quarterly Payments if Grantee provides City with at least six (6) months' advance written notice of its intent to make annual payments instead as set forth below. The parties agree that such notice shall not be provided earlier than June 30, 2021. At said time, Grantee shall be required to pay City the sum of money required to be paid as consideration for the rights, privileges, and franchise granted herein on or before the fifteenth (15th) day from and after the time for filing of the duly verified statement showing in detail the gross receipts of Grantee during the prior calendar year or fractional calendar year in accordance with the procedures of this Section 5(b-e).

SECTION 3. If the Franchise Fee Surcharge is approved by the Commission, Grantee shall implement collection of the Franchise Fee Surcharge as soon as reasonably possible thereafter, but not later than 120 days following the Commission's approval. Grantee shall remit to the City the first Franchise Fee Surcharge payment on the first Quarterly Payment Date following the initial collection of the Franchise Fee Surcharge.

SECTION 4. The City and Grantee each expressly waives its rights under Section 4c of the franchise to provide the other with notice of its intent to change the amount or kind of consideration or compensation to be paid City or measure or formula to which the consideration and compensation is determined (for the franchise fee which is two percent (2%) of gross receipts and the Franchise Fee Surcharge which is three tenths of one percent (0.3%) of gross receipts) at any time before the last six (6) calendar months following calendar year 2021.

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 112 of 115

SECTION 5. This Ordinance amending Ordinance No. 15880, as amended by Ordinance No. 21677 and Ordinance No. 26914, is conditioned upon the filing by Grantee with the City Clerk of a written acceptance of this amendment to the franchise granted by Ordinance No. 15880, as amended by Ordinance No. 21677 and Ordinance No. 26914, which said written acceptance shall be so filed no later than ten (10) days of the adoption date of this amending Ordinance. If Grantee shall fail to so file its written acceptance with the City Clerk as specified in the preceding sentence, this amendment shall be deemed revoked and of no force and effect.

SECTION 6. All other terms, conditions, and provisions of Ordinance No. 15880, as amended by Ordinance No. 21677 and Ordinance No. 26914, not amended herein shall remain in full force and effect.

PASSED FOR PUBLICATION of title this 9th day of February, 2010, by the following vote:

AYES: CAMPOS, CHIRCO, CHU, CONSTANT, HERRERA, KALRA, LICCARDO, NGUYEN, OLIVERIO, PYLE; REED.

NOES: NONE.

ABSENT: NONE.

DISQUALIFIED: NONE.

CHUCK REED
Mayor

ATTEST:

LEE PRICE, MMC
City Clerk

The foregoing instrument is
a correct copy of the original
on file in this office.
Attest:
      LEE PRICE
      City Clerk
      City of San Jose
County of Santa Clara, State of California
By _____ Deputy
Date _____ 02/24/10

Case: 19-30088    Doc# 11845-5    Filed: 01/21/22    Entered: 01/21/22 11:41:05    Page 114 of 115

Aglet
Alcantar & Kahl
Ameresco
Anderson & Poole
Arizona Public Service Company
BART
BP Energy Company
Barkovich & Yap, Inc.
Bartle Wells Associates
Bloomberg New Energy Finance
Boston Properties
C & H Sugar Co.
CA Bldg Industry Association
CAISO
CLECA Law Office

CSC Energy Services
California Cotton Ginners & Growers Assn
California Energy Commission
California League of Food Processors
California Public Utilities Commission
Calpine
Cameron McKenna
Casner, Steve
Chamberlain, Eric
Chris, King
City of Glendale
City of Palo Alto
Clean Energy Fuels
Coast Economic Consulting
Commerce Energy
Commercial Energy

Consumer Federation of California
Crossborder Energy
Davis Wright Tremaine LLP

Day Carter Murphy
Defense Energy Support Center
Department of Water Resources
Department of the Army
Dept of General Services
Division of Business Advisory Services
Douglass & Liddell
Downey & Brand
Duke Energy
Dutcher, John
Economic Sciences Corporation
Ellison Schneider & Harris LLP
Foster Farms
G. A. Krause & Assoc.
GLJ Publications
Goodin, MacBride, Squeri, Schlotz & Ritchie
Green Power Institute
Hanna & Morton
International Power Technology
Intestate Gas Services, Inc.
Los Angeles Dept of Water & Power
Luce, Forward, Hamilton & Scripps LLP
MBMC, Inc.
MRW & Associates
Manatt Phelps Phillips
McKenzie & Associates
Merced Irrigation District
Mirant
Modesto Irrigation District
Morgan Stanley
Morrison & Foerster
NRG West

New United Motor Mfg., Inc.
Norris & Wong Associates
North Coast SolarResources

Occidental Energy Marketing, Inc.
OnGrid Solar
Praxair
R. W. Beck & Associates
RCS, Inc.
Recon Research
SCD Energy Solutions
SCE
SMUD
SPURR
Santa Fe Jets
Seattle City Light
Sempra Utilities
Sierra Pacific Power Company
Silicon Valley Power
Silo Energy LLC

Southern California Edison Company
Sunshine Design
Sutherland, Asbill & Brennan
Tabors Caramanis & Associates
Tecogen, Inc.
Tiger Natural Gas, Inc.
Tioga Energy
TransCanada
Turlock Irrigation District
U S Borax, Inc.
United Cogen
Utility Cost Management
Utility Specialists
Verizon
Wellhead Electric Company
Western Manufactured Housing Communities Association (WMA)

eMeter Corporation