1                                      **<u>Exhibit 1</u>**

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and between Pacific Gas and Electric Company ("PG&E"), a California corporation, and the City of San Jose (the "City"), a California charter city, (collectively, the "Parties").

## RECITALS

WHEREAS the Legislature enacted the Municipal Public Lands Use Surcharge Act ("the Act") (Pub. Util. Code § 6350, et seq.) to address certain shortfalls in municipalities' franchise fee collections, and thus "created a surcharge to be applied to natural gas and electricity transported over utility and nonutility transmission or distribution systems, or both, constructed under, along, across, or upon the public streets, ways, alleys, and places within a municipality . . .;"

WHEREAS the Act requires PG&E and the other investor-owned energy utilities in California to collect these "municipal surcharges" from customers that purchase their gas or electricity from third party energy service providers and to remit those funds to municipalities such as the City of San Jose;

WHEREAS the City challenged PG&E's implementation of the Act at the California Public Utilities Commission ("Commission"), which provided guidance as to the implementation of the Act in Decisions 03-10-040 (October 16, 2003) and 06-05-005 (May 11, 2006), but denied the City's requests for relief;

WHEREAS the City filed a complaint for damages and declaratory relief against PG&E in Santa Clara County Superior Court, entitled *City Attorney of the City of San Jose, et al. v. Pacific Gas & Electric Company*, Superior Court Case No. 1-05-CV 055100, (the "Complaint") on December 22, 2005, in which it alleged that PG&E had underpaid the City such municipal surcharges in past years and demanded that PG&E change the method by which it remits future municipal surcharge payments due to it;

WHEREAS the Superior Court entered judgment in favor of PG&E on March 28, 2007, dismissing each of the City's claims;

1

WHEREAS the City filed an appeal of the judgment to the California Court of Appeal, Sixth District (*City Attorney of the City of San Jose, et al. v. Pacific Gas & Electric Company,* Court of Appeal Case No. H031705) (the "Appeal"), which Appeal remains pending;

WHEREAS the electric and gas Franchise Agreements currently in effect between the Parties (memorialized in San Jose Ordinance Nos. 15879 and 15880, as amended by Ordinance Nos. 21676, 21677, 26913, and 26914) (collectively, "the Franchise Agreements") provide in Section 4(c) that, "within the last six (6) calendar months of the calendar year 2001, and thereafter within the last six (6) calendar months of each ten (10) calendar years period following the calendar year 2001," either Party "may serve written notice upon the other of its desire to change the amount or kind of consideration or compensation to be annually paid or given" for PG&E's use of the City's streets "or of its desire to change the manner, measure or formula pursuant to which such annual consideration shall thereafter be determined" (the "Franchise Fee Re-Opener");

WHEREAS the Franchise Agreements authorize either Party to trigger the Franchise Fee Re-Opener next "within the last six (6) calendar months . . . following the calendar year [2011]" ("the 2011 Franchise Fee Re-Opener") and then thereafter "within the last six (6) calendar months . . . following the calendar year [2021]" ("the 2021 Franchise Fee Re-Opener");

WHEREAS PG&E has for some number of years made the payments due to the City pursuant to the Franchise Agreements on a quarterly basis, rather than an annual basis, notwithstanding language in the Agreements permitting PG&E to make annual payments in certain circumstances; and PG&E had advised the City of its intent to cease this practice; and

WHEREAS PG&E conducted an audit of San Jose's municipal streetlight account, 1741372120-4, and found San Jose in arrears of $1,084,128.89, which amount San Jose disputed ("the Streetlights Dispute").

NOW, WHEREFORE, PG&E and the City seek to eliminate the substantial financial costs and extensive risks of potential liability associated with litigating the Complaint and Appeal, arbitrating the 2011 Franchise Fee Re-Opener, and addressing the Streetlights Dispute, including the costs and risks of either Party seeking to change the amount or kind of consideration provided

Case: 19-30088    Doc# 11846-1    Filed: 01/21/22    Entered: 01/21/22 11:43:06    Page 3 of 15

for in either of the Franchise Agreements, and/or the manner, measure or formula by which such consideration shall be determined;

ACCORDINGLY, subject to approval by the San Jose City Council and, where described, by the Commission, PG&E and the City hereby agree to the following compromise:

TERMS

### 1. Purpose of Settlement.

Each of the Parties herein represents that it voluntarily has entered into this Agreement and supports its implementation. The Parties hereby acknowledge that the valuable consideration that each is exchanging through this settlement and by way of this Agreement is solely for the purpose of purchasing peace and preventing further involvement in protracted, expensive litigation, including but not limited to litigation concerning the Complaint, the Appeal, the 2011 Franchise Fee Re-Opener, and the Streetlights Dispute. Based on this mutual understanding, the Parties agree that neither the payment of money nor the provision of any other consideration is or shall be considered to be an admission that any of the claims compromised or released by this Agreement is valid.

### 2. City Council Approval.

The City shall cause this Agreement, as well as any necessary and agreed-upon amendments to the Parties' Franchise Agreements, as provided herein (hereafter, "Franchise Amendments") to be submitted to the City Council for approval. Prior to PG&E's having to submit the Advice Letter described in Paragraph 3 to the Commission, PG&E and the City shall discuss and agree upon the Franchise Amendments, which Franchise Amendments shall reflect the franchise fee surcharges to which the Parties agree herein. Notwithstanding anything herein to the contrary, PG&E understands and agrees that no officer or employee of the City has authority to commit the City to this Agreement unless and until the City Council has approved this Agreement. Therefore, any obligations of either party hereunder are contingent upon such approval, and this Agreement shall not be effective unless and until such approval is obtained in accordance with the City's charter. In

3

the event that the City Council rejects any aspect of this Agreement, including but not limited to the Franchise Amendments, then the Parties herein commit to meet and if necessary return to mediation consistent with the procedures set forth in Paragraph 9(b) hereto.

3.    **California Public Utilities Commission Approval**.

(a)    Within ten (10) calendar days of the date on which the Franchise Amendments take effect, PG&E shall file an Advice Letter with the Commission to obtain approval of the 0.30% surcharges to which the Parties have herein agreed and which PG&E shall collect from its electric and gas customers within the geographic boundaries of San Jose, which Advice Letter shall state specifically that San Jose supports the request. This will have the effect of increasing San Jose's gas and electric franchise fee rate from 2.00% to 2.30% of PG&E's gross receipts for the sale of electricity and gas within the City of San Jose. The Advice Letter shall request Commission approval of the electric and gas franchise fee surcharges in accordance with D.89-05-063, Guidelines for Equitable Treatment of Revenue Producing Mechanisms Imposed by Local Governmental Entities on Public Utilities, 32 CPUC2d 60, May 26, 1989. The City shall fully cooperate with PG&E and the Commission as reasonably necessary in the discretion of the City Manager, such as by providing all reasonably necessary information, executing all reasonably necessary documents, and communicating as reasonably necessary with the Commission.

(b)    Notwithstanding anything herein to the contrary, the City understands and agrees that no officer or employee of PG&E, including PG&E's attorneys, has authority to commit PG&E to billing, collecting or remitting these surcharges unless and until the Commission has approved same. Therefore, any obligation of PG&E to bill, collect or remit these proposed surcharges is contingent upon such Commission approval, and this Agreement shall not be effective unless and until such approval is obtained in accordance with the Commission's rules. In the event that the Commission rejects the proposed surcharges as set forth in PG&E's Advice Letter, or the surcharges are otherwise precluded from being implemented or carried out, at any point after the effective date of this Agreement, then the Parties herein commit to meet and if necessary return to mediation consistent with the procedures set forth in Paragraph 9(b) hereto.

4

(c)    As set forth above, PG&E shall file an Advice Letter with the Commission, which Advice Letter the City has agreed to support, requesting approval to bill and collect from PG&E's customers within the City 0.30% (three tenths of one percent) electric and gas franchise fee surcharges, to satisfy PG&E's obligations pursuant to the Franchise Amendments. In the event that, after Commission approval, any third party challenges the herein-agreed franchise fee surcharge(s), then

> i. PG&E and the City herein agree to exercise reasonable efforts to support each other in defending any such dispute; and

> ii. If a court or other tribunal orders PG&E and/or the City to refund such surcharge monies, whichever Party actually possesses the monies at issue shall be responsible for the payment of any such refund. For example, if the refund sought is related to surcharge(s) already collected and remitted to the City, the City shall make said refund. If, on the other hand, the refund sought is related to surcharge(s) collected by PG&E but not yet remitted to the City, PG&E shall make said refund.

4.    **Effective Date**.

This Settlement Agreement shall become effective fourteen (14) calendar days after all of the following have occurred:

(a) This Agreement has been executed by both parties; and

(b) The City Council has formally approved this Agreement as described in Paragraph 2, above; and

(c) The City Council has formally approved the Franchise Amendments by enactment of one or more ordinances as described in Paragraph 2 above and such ordinance(s) has/have become effective in accordance with the City's charter; and

(d) The Commission has approved the proposed franchise fee surcharges as described in Paragraph 3, above.

This date hereafter is referred to as the Effective Date.

5

5. **Consideration**.

(a) Monetary Consideration: Within fourteen (14) calendar days of the Effective Date, PG&E shall:

1. Make payment to the City of $6,000,000.00 (six million dollars exactly), with payments to be made by wire transfer to accounts designated by the City, as follows:

i. $4,500,000.00 (four million, five hundred thousand dollars), representing 75% of the settlement fund to be placed in the City's General Fund; and

ii. $1,500,000.00 (one million, five hundred thousand dollars), representing 25% of the settlement fund, to be deposited into the City-Building Energy Projects Program (C-BEPP) fund, which monies shall be used to support renewable energy and energy efficiency projects implemented on City property in furtherance of the City's Green Vision goals. This contribution to the C-BEPP fund is intended to supplement, not supplant, regularly-funded PG&E initiatives and programs currently operating in San Jose.

2. PG&E agrees to issue a credit in the amount of $1,084,128.89, which it has contended in the Streetlights Dispute is owed by the City. By this Agreement, PG&E hereby fully releases and forever discharges the City from any and all liability for this amount.

(b) Franchise Fee Surcharges: As set forth above, PG&E agrees to collect and remit to the City, subject to City Council and Commission approval and the Franchise Amendments as set forth herein, an additional 0.30% (three tenths of one percent) electric and gas franchise fee surcharges. In the event that the Commission rejects the proposed surcharges as set forth in PG&E's Advice Letter, or the surcharges are otherwise precluded from being implemented or carried out by an order of the Commission or any court of competent jurisdiction, then the Parties herein commit to meet and if necessary return to mediation consistent with the procedures set forth in Paragraph 9(b) hereto.

(c) Additional Consideration: The City and PG&E each hereby agree that neither Party will trigger the 2011 Franchise Fee Re-Opener, expressly waiving any such rights provided for in the Franchise Agreements. Accordingly, both the City and PG&E agree that neither Party will provide

6

written notice of a desire to change any aspect of the consideration or manner, measure or formula pursuant to which the consideration is determined, at any time before the next such opportunity already provided for, specifically the 2021 Franchise Fee Re-Opener.

(d) PG&E agrees to continue making its payments to the City pursuant to the Franchise Agreements on a quarterly basis from the effective date of the Agreement and continuing for the "ten (10) year period following the calendar year [2011]," notwithstanding the language in the current Franchise Agreements permitting PG&E to make annual payments instead under specified circumstances.

6. **The City's Release of Claims.**

(a)  In consideration of the promises, conditions and covenants contained in this Agreement, the City does for itself, its officers, directors, agents, employees, attorneys, consultants, representatives, affiliates, predecessors, successors and assigns hereby release and forever discharge PG&E and its officers, directors, agents, employees, attorneys, consultants, representatives, parent corporation, subsidiaries, affiliates, predecessors, successors and assigns from any and all claims, demands, causes of action, obligations or liabilities of any nature whatsoever (including attorneys' fees and costs of suit), whether known or unknown, which, as of the date of this Agreement, it ever had or now has against PG&E relating to the Complaint or Appeal, including, without limiting the generality of the foregoing, all such claims, demands, causes of action, obligations or liabilities which in any way relate to or arise out of any action, omission, representation, or proceeding with respect to the matters which were raised or which could have been raised in the Complaint or Appeal.

(b)  The City expressly acknowledges it may have claims against PG&E, of which claim(s) it is currently unaware, and nevertheless agrees that this Agreement is intended to and does extend to any and all claims it may have against PG&E, whether known or unknown, that arise from the Complaint and the matters alleged therein. As a further inducement and consideration, and subject to the foregoing exception, the City expressly and specifically waives any rights or benefits available to it under California Civil Code section 1542, which provides:

7

Case: 19-30088    Doc# 11846-1    Filed: 01/21/22    Entered: 01/21/22 11:43:06    Page 8 of 15

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The City acknowledges it may have sustained damages, losses, costs or expenses that are currently unknown or unsuspected, and that such damages, losses, costs or expenses as may have been sustained may give rise to additional damages, losses, costs or expenses in the future. The City acknowledges, however, that this Agreement has been negotiated and agreed upon in light of this situation, and hereby expressly waives any and all rights which it may have under California Civil Code section 1542 or under any state or federal statute or common law principle of similar effect.

7. **PG&E's Release of Claims.**

(a) In consideration of the promises, conditions and covenants contained in this Agreement, PG&E does for itself, its officers, directors, agents, employees, attorneys, consultants, representatives, affiliates, predecessors, successors and assigns hereby release and forever discharge the City and its officers, directors, agents, employees, attorneys, consultants, representatives, parent corporation, subsidiaries, affiliates, predecessors, successors and assigns from any and all claims, demands, causes of action, obligations or liabilities of any nature whatsoever (including attorneys' fees and costs of suit), whether known or unknown, which, as of the date of this Agreement, it ever had or now has against the City relating to the Streetlights Dispute, as defined herein, including all such claims, demands, causes of action, obligations or liabilities which in any way relate to or arise out of said Streetlights Dispute.

(b) PG&E expressly acknowledges it may have claims against the City, of which claim(s) it is currently unaware, and nevertheless agrees that this Agreement is intended to and does extend to any and all claims it may have against the City, whether known or unknown, that arise from the

8

Streetlights Dispute, as defined herein. As a further inducement and consideration, and subject to the foregoing exception, PG&E expressly and specifically waives any rights or benefits available to it under California Civil Code section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

PG&E acknowledges it may have sustained damages, losses, costs or expenses that are currently unknown or unsuspected, and that such damages, losses, costs or expenses as may have been sustained may give rise to additional damages, losses, costs or expenses in the future. PG&E acknowledges, however, that this Agreement has been negotiated and agreed upon in light of this situation, and hereby expressly waives any and all rights which it may have under California Civil Code section 1542 or under any state or federal statute or common law principle of similar effect.

8. **Dismissal with Prejudice.**

The City hereby agrees it shall dismiss its Appeal with prejudice within five (5) business days of its receipt of the settlement monies described in Paragraph 5(a), above.

9. **Dispute Resolution.**

(a)     The Parties agree that they shall make good faith efforts to resolve any disputes, claims or causes of action in law or equity arising from or relating to this Agreement or its enforcement, performance, breach or interpretation ("Disputes"). In the event of any such Dispute, the Party raising the Dispute shall provide written notice to the other Party of the Dispute, such notice shall be provided pursuant to the notice provision below. Business representatives and attorneys for each of the Parties then shall meet and confer in person within twenty-one (21) days of notice of such Dispute in an effort informally to resolve such Dispute ("the Meet and Confer Session"). If the Parties cannot reach an informal resolution within 14 days of the Meet and Confer

9

Case: 19-30088    Doc# 11846-1    Filed: 01/21/22    Entered: 01/21/22 11:43:06    Page 10 of 15

Session, then the Parties hereby agree that they will seek to resolve the Dispute through mediation at the Judicial Arbitration and Mediation Service (JAMS) office in San Jose. The Parties agree that they shall complete a mediation sixty (60) days prior to filing any action in any court related to any Dispute, and that the completion of the mediation is a condition precedent to the right of the Parties to file such an action. In the event that the Parties are unable to otherwise agree on a mediator, the Parties will use a mediator whom JAMS appoints for them. If the mediation successfully resolves the Dispute, then all costs relating to the mediation services under this paragraph will be borne equally between the Parties to the mediation; if the mediation does not successfully resolve the Dispute, then the costs of mediation shall be recoverable by the prevailing Party in the subsequent litigation as set forth in the Attorneys Fees provision below. In the event good faith efforts at resolution are unsuccessful, the non-breaching Party shall be entitled to pursue all legal and equitable remedies legally available to it.

      (b)    Rejection of any part of this Agreement by the San Jose City Council or California Public Utilities Commission shall constitute a "Dispute" pursuant to Paragraph 9(a) above. In such event, all of the procedures set forth in Paragraph 9(a) shall apply; however, the attendees at the Meet and Confer Session and Mediation shall include a Vice President from PG&E, the San Jose City Manager or the San Jose Assistant City Manager, and the City Attorney of San Jose or his designee.

## 10.    Notices.

All notices required or permitted by this Agreement shall be given by the Parties in writing and will be given by (a) hand-delivery or U.S. Mail, and (b) electronic mail, and will be deemed effective on the date of actual receipt, when addressed to the following respective parties:

**For the City:**

Richard Doyle, City Attorney
Office of the San Jose City Attorney
200 East Santa Clara Street
San Jose, CA 95113-1905            **and**

10

Shannon Smyth-Mendoza
Senior Deputy City Attorney
Office of the San Jose City Attorney
200 East Santa Clara Street
San Jose, CA 95113-1905
Email: Shannon.Smyth-Mendoza@sanjoseca.gov

For PG&E:

Cecilia Guiman                                    and
Pacific Gas and Electric Company
Manager, Revenue and Statistics Dept
P.O. Box 7442
77 Beale Street, B14L, 1406
San Francisco, CA 94120
Email: CLGk@pge.com


Cliff Gleicher                                    and
Pacific Gas and Electric Company
Law Department
P.O. Box 7442
77 Beale Street, B30A, 3013
San Francisco, CA 94120
Email: CJGf@pge.com

                                                  and

Grant Guerra
Pacific Gas and Electric Company
Law Department
P.O. Box 7442
77 Beale Street, B31A, 3175
San Francisco, CA 94120
Email: GXGw@pge.com


11.    Enforcement Jurisdiction.

The Parties agree that the Santa Clara County Superior Court ("Court") shall have

jurisdiction to fully enforce all of the terms of the Settlement Agreement if necessary.

12.    Further Cooperation.

The Parties agree to cooperate with one another and to execute any further documents that

may be necessary or appropriate to effectuate this Agreement, City Council approval of this

Agreement, Commission approval of the .30% electricity and natural gas surcharges, and dismissal

of the Appeal.

11

Case: 19-30088    Doc# 11846-1    Filed: 01/21/22    Entered: 01/21/22 11:43:06    Page
12 of 15

13. **Entire Agreement.**

This Agreement constitutes the entire agreement, and reflects the entirety of the consideration to be exchanged, among the Parties and supersedes all prior understandings or agreements with respect to its subject matter. Each provision of this Agreement shall be interpreted in such a manner as to be valid and enforceable under applicable law, but if any provision hereof shall be or become prohibited or invalid under any applicable law, that provision shall be ineffective only to the extent of such prohibition or invalidity, without thereby invalidating the remainder of that provision or of any other provision hereof.

14. **Titles and Captions.**

All titles, captions, headings and similar items are provided for the purpose of reference and are not to affect the meaning of the contents or scope of this Agreement.

15. **Negotiated Settlement.**

The discussions that have produced this Settlement Agreement have been conducted with the explicit understanding that they are privileged under California Evidence Code Section 1152 and Federal Rule of Evidence 408, and that such discussions shall be without prejudice to the position of any party and may not be used in any manner in any proceeding or otherwise, except as may be necessary to enforce this Agreement or as otherwise required by law.

16. **Severability.**

If any part of this Agreement is held invalid, the remainder of this Agreement shall not be affected thereby and shall continue in full force and effect unless enforcement as so modified would be unreasonable or grossly inequitable under the circumstances or would frustrate the purposes hereof. To this end, provisions of this Agreement are severable.

17. **Authorization to Execute Agreement.**

(a) Each Party represents and warrants that it has given any and all notices, and obtained any and all consents, powers and authorities, necessary to permit it and the persons executing this Agreement for it, to enter into this Agreement, settle, compromise, and release the claims settled, compromised, and released herein, to do, undertake, or forebear from any act called for herein, and

12

to make this Agreement, and all the provisions hereof, fully binding on and enforceable against that Party, including, without limitation thereto, any necessary notice to or consent or approval from its shareholders, creditors, Board of Directors, partners, members, managers, officers, or any similar person, entity, group or body, except that the Parties acknowledge that City Council approval of this Agreement, and Commission approval of the proposed surcharges, must be obtained.

(b) Each Party represents and warrants that the person(s) executing this Agreement on its behalf has the authority to sign and, by signing, to bind that Party to the terms and conditions of this Agreement, subject to the subsequent approvals required under Paragraphs 2 and 3 of this Agreement.

18. **Waiver.**

A waiver of any provision of this Agreement shall not be effective unless such a waiver is made expressly in writing. An express waiver of any one breach shall not be deemed a waiver of any other breach of the same or any other provision of this Agreement.

19. **Construction.**

The Parties agree that each party and counsel for each party have reviewed and revised this Settlement Agreement and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in an interpretation of this Settlement Agreement or any amendment or exhibits thereto. Any rule of law, including but not limited to California Civil Code Section 1654, which could require interpretation of any ambiguities against the drafter is agreed to be inapplicable and is hereby waived.

20. **Choice of Law.**

This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California without resort to its conflict of laws provisions.

21. **Sole Agreement.**

This Agreement is intended by the Parties to be and is the sole, final and complete expression of their entire Agreement, and it supersedes any and all prior agreements, be they oral, written, express or implied.

13

## 22. Counterparts.

This Agreement may be executed in counterparts, which taken together, will constitute an original. Facsimiles of original pages shall be binding on the Parties to the Agreement. The Parties shall exchange original signed counterparts as soon as possible.

IN WITNESS WHEREOF this Agreement is executed and agreed to by the following, as of the last date set forth below.

Dated: January 28, 2010            THE CITY OF SAN JOSE

By: _____
RICHARD DOYLE,
CITY ATTORNEY
CITY OF SAN JOSE

Dated: January 28, 2010       By: _____
SHANNON SMYTH-MENDOZA
SR. DEPUTY CITY ATTORNEY
CITY OF SAN JOSE

Dated: January 26, 2010            PACIFIC GAS AND ELECTRIC COMPANY

By: _____
HYUN PARK
SENIOR VICE PRESIDENT AND GENERAL
COUNSEL, PG&E CORPORATION
(AUTHORIZED REPRESENTATIVE)

14