Michael St. James, CSB No. 95653
St. James Law, P.C.
22 Battery Street, Suite 810
San Francisco, California  94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Bankruptcy Counsel for Spiro Jannings

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

In re

PG&E CORPORATION

- and –

PACIFIC GAS & ELECTRIC COMPANY

Reorganized Debtors

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
■ Affects both Debtors
\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).

Case No. 19-30088
(jointly administered)

Chapter 11

DATE: March 2, 2022
TIME: 10:00 a.m.
JUDGE: Honorable Dennis Montali

**MOTION FOR RELIEF FROM ORDER**

**(Default Order; Dkt #11829; Sustaining Objection to Claim No. 58462; Dkt # 11388)**

TO: THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

COMES NOW Spiro Jannings ("Spiro"), and moves the Court for relief from its Order Disallowing and Expunging Claim No. 58462, filed October 17, 2019, of Spiro Jannings (the "Order" and the "Claim," respectively), and in support thereof respectfully presents as follows:

## I. SUMMARY

Spiro believes that he has a meritorious Claim against PG&E, but through the Order it has been summarily disallowed and expunged by default due to his failure timely to respond to PG&E's Objection. Spiro submits that his failure timely to respond was the result of "mistake, inadvertence, surprise, or excusable neglect." As a consequence, Spiro asks that the Court grant him relief from the Order and permit him to defend the validity of the Claim on the merits.

## II. RELEVANT FACTS

On August 24, 2017, Spiro Jannings ("Spiro") filed a lawsuit in the Santa Clara County Superior Court (the "State Lawsuit") asserting damages for wrongful termination against PG&E. Spiro asserted no federal claims for relief, and there was no apparent basis on which federal jurisdiction over the State Lawsuit could have been asserted. According to PG&E, "[t]he case was litigated for over a year, during which time the Parties exchanged documentary evidence" and Spiro was deposed. Objection, 9:20-22, Dkt #11388.

On January 29, 2019, PG&E filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Spiro recognized that the bankruptcy filing resulted in an automatic stay preventing further prosecution of the State Lawsuit. Spiro duly filed a timely Proof of Claim.

On June 20, 2020, the Court confirmed PG&E's Plan of Reorganization. Under PG&E's Plan, Spiro's claim was "unimpaired."

On October 8, 2021, PG&E filed an Objection to Spiro's claim (the "Objection"). The Objection asserted exclusively State law defenses and challenges. See generally, Objection; Dkt #11388. On October 23, 2021, Spiro's bankruptcy counsel approached PG&E to request additional time to respond to

the Objection and, more fundamentally, to request that PG&E agree that the Bankruptcy Court abstain from the dispute and remand it to the Superior Court. PG&E responded by agreeing to an extension of time, ultimately to January 2022, "while we discuss your request with the client." 11768-1, PACER p. 6. Spiro's counsel thanked PG&E for the extension, while noting "Obviously, I would prefer to resolve abstention without briefing it, but…" to which PG&E's counsel responded "Understood. Will be in touch…" Id, p. 5.

PG&E never responded to the abstention request, and Spiro's counsel failed to pursue the issue until December 6, 2021, when Spiro's counsel followed up on the abstention request. The following day, PG&E rejected that request, asserting that the resolution of Spiro's Claim was within the core jurisdiction of the Court.

On December 28, 2021, Spiro filed a Motion to Dismiss and Abstain; Dkt #11753 (the "Abstention Motion"). There being inadequate time to set the Abstention Motion for hearing on regular notice prior to the continued hearing on the Objection, Spiro requested that PG&E agree to reschedule the Objection hearing, which was declined. Spiro sought the same relief from the Court; Dkt #11768, but the Court, through a Docket Text Order dated December 31, 2021, declined.

Spiro requires approximately 75 days to prepare a substantive response to the Objection. Spiro's counsel deferred work on the substantive response pending a resolution of the venue to resole the dispute. The Docket Text Order required Spiro's substantive response to be filed by January 4, 2022, with the hearing remaining on January 18, 2022. Since Spiro could not prepare a substantive response within the few days available, he asked PG&E if it would consent to a further extension of time to prepare a response.

PG&E indicated that it would consider an extension of only a few days to file the response, and that it was unwilling to defer the hearing date of January 18, 2022. Dkt #11806. Spiro concluded that he could not file a viable substantive response to the Objection within the few days potentially available, and the Order by default ensued.

Spiro believes that PG&E would suffer no prejudice if relief from the Order was granted and it was required to address the Claim on the merits. Spiro is unaware of any deadline or other matter in the

case which turns on the resolution of the Claim. Spiro, on the other hand, will suffer total and complete prejudice – the expungement of his Claim – if relief from the Order is not granted.

The length of the delay is not material. Less than two weeks have elapsed between the entry of the Order and the filing of this Motion. Even viewed more broadly to encompass some or all of the time following the initial response date to the Objection, the delay amounts to only about three months. The delay will have had no known impact on PG&E or its reorganization.

There are a number of reasons for the delay. The best reason was to minimize the Claimant's litigation expense by addressing the venue for the dispute before preparing a response on the merits of the dispute was the best reason. Inattentiveness to the passage of time without a response to the abstention request was another, a failure expeditiously to file the Abstention Motion after the request was declined and a mistaken optimism about scheduling cooperation and flexibility were also reasons for the delay.

Finally, Spiro submits that his good faith in this matter cannot be questioned. His only objectives here have been to vindicate the merits of his Claim, and delay clearly does not advance those objectives. His counsel's effort to cause the dispute to be resolved in State Court and to defer incurring fees on the merits of the Claim until the venue was resolved certainly resulted in the current circumstances, but those objectives cannot call into question Spiro's good faith.

### III. ARGUMENT

#### A. Statutory Authority to Grant Relief

Rule 60(b) provides, in relevant part,

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; [or]
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024.

Rule 59(e) authorizes motions to alter or amend a judgment. Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023. A leading commentator explains:

Rule 59(e) covers a broad range of motions, and the only real limitation on the type of motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error . . . Rule 59(e) does, however, include motions for reconsideration. …

Since specific grounds for a motion to amend or alter are not listed in the Rule, the district court enjoys considerable discretion in granting or denying the motion.

Wright, Miller & Kane, 11 FEDERAL PRACTICE & PROCEDURE: CIVIL 2nd § 2810.1 at p. 121-124.

A motion under Rule 59 must be filed and served within 14 days after entry of the judgment or order. Bankruptcy Rule 9023. A motion under Rule 60 must be filed and served within a year after the entry of the Order. The Order was signed on January 13, 2022 and entered on January 14, 2022, so this Motion is timely.

### B. Decisional Law Construing "Excusable Neglect"

The Supreme Court discussed at some length the concept of "excusable neglect" in a bankruptcy context, explaining:

> the Rule grants a reprieve to out-of-time filings that were delayed by "neglect." The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or, closer to the point for our purposes, "to leave undone or unattended to *esp[ecially] through carelessness.*" Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness. Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry "their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Hence, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 388 (1993). The Supreme Court noted that the lenient standard of excusable neglect was particularly appropriate in Chapter 11, because it "provides for reorganization with the aim of rehabilitating the debtor and *avoiding forfeitures by creditors*." *Pioneer, supra,* 507 U.S. at 389 (emphasis supplied).

Although *Pioneer* addressed excusable neglect in a somewhat different context (Rule 9006), the Ninth Circuit, following a comment in *Pioneer*, held that the same standard applies to Rule 60(b)(1). *Briones v. Riviera Hotel Casino*, 116 F.3d 379, 381 (9th Cir. 1996) ("We now hold that the equitable test set out in *Pioneer* applies to Rule 60(b) as well.")

Relying on the Supreme Court's analysis, the Ninth Circuit fashioned an explicit four-part test for "excusable neglect." Recognizing that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," *Pioneer, supra,* 507 U.S. at 389; the Ninth Circuit held that the court must "analyze at least all four of the explicit *Pioneer-Briones* factors, namely: '(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.'" *Lemoge v. U.S.*, 587 F.3d 1188, 1194 (9th Cir. 2009). The Ninth Circuit went on to note the "Although prejudice to the movant is not an explicit *Pioneer-Briones* factor… [it can be] one of the "relevant circumstances" that should be considered when evaluating excusable neglect. *Lemoge, supra,* 587 F.3d. at 1195.

### C. Applying the Pioneer-Briones Factors

1. Prejudice

The first factor is the danger of prejudice to the opposing party. It does not appear that PG&E would suffer any prejudice if relief from the Order was granted and it was required to address the Claim on the merits. "Prejudice requires greater harm than simply that relief would delay resolution of the case." *Lemoge, supra,* 587 F.3d at 1196. Spiro, on the other hand, will suffer total and complete prejudice – the expungement of his Claim – if relief from the Order is not granted, a factor the Ninth Circuit considered potentially "one of the relevant circumstances" respecting excusable neglect. *Lemoge, supra,* 587 F.3d. at 1195.

2. <u>Length of the Delay and Impact on the Proceedings</u>

The length of the delay is not material. Less than two weeks elapsed between the entry of the Order and the filing of this Motion; about three months have elapsed since the initial response date to the Objection. The delay will have no known adverse impact on PG&E or its reorganization.

3. <u>Reason for the Delay</u>

There are a number of reasons for the delay. Attempting to minimize the Claimant's litigation expense by addressing the venue for the resolution of the dispute before the merits of the dispute was one reason. Inattentiveness to the passage of time without a response to the abstention request was another. A failure expeditiously to file the Abstention Motion after the request was declined and a mistaken optimism about scheduling flexibility were also reasons for the delay.

4. <u>Good Faith</u>

Spiro submits that his good faith cannot reasonably be questioned. His only objectives here have been to vindicate the merits of his Claim and to collect upon it, and delay clearly does not advance those objectives at all. His counsel's effort to cause the dispute to be resolved in State Court and to defer incurring fees on the merits of the Claim until the venue for dispute resolution was decided certainly resulted in the current circumstances, but those objectives cannot call into question Spiro's good faith.

## IV. CONCLUSION

Spiro submits that his failure timely to respond to the Objection to his Claim, leading to the entry of the Order by default, was the result of "mistake, inadvertence, surprise, or excusable neglect," warranting the granting of relief from the default Order. All of the *Pioneer-Briones* factors support granting relief from the Order.

The Court should vacate the Order and grant Spiro 75 days to respond to the Objection.

DATED: January 26, 2022

Respectfully submitted,

ST. JAMES LAW, P.C.

By: /s/ *Michael St. James* .
 Michael St. James
 Bankruptcy Counsel for Spiro Jannings