# EXHIBIT 1
# (Part 1 of 2)

B-57139

Agreement of Cotenancy

in the

Castle Rock Junction-Lakeville 230-kV

Transmission Line


among

Pacific Gas and Electric Company

State of California
Department of Water Resources

Northern California Power Agency

City of Santa Clara


June 1, 1984

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 2
of 73

# CONTENTS

|  |  | Page |
|---|---|---|
| Recitals | | 1 |
| 1.0 | Definitions . . . . . . . . . . . . . . . . | 2 |
| | 1.1 Addition and Betterment . . . . . . . . | 2 |
| | 1.2 Associated Facilities . . . . . . . . . | 2 |
| | 1.3 CEC . . . . . . . . . . . . . . . | 3 |
| | 1.4 CPUC . . . . . . . . . . . . . . . | 3 |
| | 1.5 Capital Replacement . . . . . . . . . | 3 |
| | 1.6 Coordinating Committee . . . . . . . | 3 |
| | 1.7 Cost . . . . . . . . . . . . . . . | 3 |
| | 1.8 Cotenant . . . . . . . . . . . . . | 5 |
| | 1.9 FERC . . . . . . . . . . . . . . . | 5 |
| | 1.10 Firm Transmission Entitlement . . . . . | 5 |
| | 1.11 Good Utility Practice . . . . . . . . | 5 |
| | 1.12 Interconnection Agreements . . . . . . | 6 |
| | 1.13 Lakeville - Sobrante 230-kv Line . . . | 7 |
| | 1.14 Land Rights . . . . . . . . . . . . | 7 |
| | 1.15 Line Circuit . . . . . . . . . . . . | 7 |
| | 1.16 Line Circuit No. 1 . . . . . . . . . | 7 |
| | 1.17 Line Circuit No. 2 . . . . . . . . . | 7 |
| | 1.18 New Line . . . . . . . . . . . . . | 8 |
| | 1.19 Operating Emergency . . . . . . . . . | 8 |

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 3 of 73

Table of Contents (continued)

1.20  Other Circuit . . . . . . . . . . . .  9

1.21  Other Circuit No. 1 . . . . . . . . .  9

1.22  Other Circuit No. 2 . . . . . . . . .  9

1.23  Ownership Interest . . . . . . . . .  9

1.24  Service Area . . . . . . . . . . . .  9

1.25  Sharing Agreement . . . . . . . . .  10

1.26  Willful Action . . . . . . . . . .  10

2.0  Ownership Interests . . . . . . . . . . .  10

2.1  Undivided Interests . . . . . . . . .  10

2.2  Initial Ownership Interests and
     Subsequent Adjustments  . . . . . . .  11

2.3  Waiver of Partition Rights  . . . . .  16

2.4  Transfer of Ownership Interests . . . .  16

2.5  Rights of Refusal . . . . . . . . . .  18

2.6  Abandonment . . . . . . . . . . . .  24

3.0  Land Rights . . . . . . . . . . . . . .  24

3.1  Land Rights Acquired by PGandE  . . . .  24

3.2  Creation and Acquisition of Land Rights  24

3.3  Release of Lien . . . . . . . . . .  26

4.0  Sharing Initial Construction Costs of the New
     Line and Associated Facilities . . . . . . .  27

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 4 of 73

# Table of Contents (continued)

Page

4.1   Initial Cost Estimate for the New Line        27

4.2   Cost-Sharing for the New Line . . . . .        27

4.3   Payment for the Associated Facilities .        28

4.4   Cost-Sharing for the Associated
      Facilities . . . . . . . . . . . . . .        28

4.5   Payments Made for the Associated
      Facilities . . . . . . . . . . . . . .        29

4.6   Preliminary Accounting . . . . . . . .        29

4.7   Adjustment of Capacity Rating and Final
      Accounting . . . . . . . . . . . . . .        29

4.8   Right to Review . . . . . . . . . . .        30

4.9   No Cost Guarantee . . . . . . . . . .        31

4.10  Expected Completion Date of
      Construction . . . . . . . . . . . . .        31

4.11  Consequences of Non-Timely Payments . .        31

4.12  Nature of Agreement . . . . . . . . .        32

5.0   Cotenants' Payments for Costs of Operation,
      Maintenance, Replacement, and Additions and
      Betterments . . . . . . . . . . . . . .        33

5.1   Annual Costs To Be Shared . . . . . .        33

5.2   Sharing of Costs of Operating
      Emergencies . . . . . . . . . . . . .        34

5.3   Sharing of Costs for Operation and
      Maintenance of the Line Circuits . . .        34

5.4   Sharing of Costs for Operation,
      Maintenance, and Replacement of
      Associated Facilities . . . . . . . .        34

-iii-

Table of Contents (continued)

Page

5.5    Sharing of Costs for Capital
       Replacements and Additions and
       Betterments to Maintain Capacity of
       the New Line . . . . . . . . . . . . . .    35

5.6    Sharing of Costs for Additions and
       Betterments to Upgrade Capacity of the
       New Line . . . . . . . . . . . . . . .    36

5.7    Adjustments to Annual Payment for
       Associated Facilities . . . . . . . .    36

5.8    Effective Date of Ownership Interest for
       Billing Purposes . . . . . . . . . .    37

6.0  Billing and Payment . . . . . . . . . . .    38

6.1    Billing for the Associated Facilities .    38

6.2    Billing for Operation and Maintenance
       of the Line Circuits . . . . . . . .    38

6.3    Billing for Capital Replacements,
       Additions and Betterments and Other
       Expenses Under This Agreement . . . . .    41

6.4    Payment of Bills . . . . . . . . . . .    43

6.5    Right to Review . . . . . . . . . . .    44

6.6    Applicable Interest Rate . . . . . . .    44

6.7    Billing Disputes . . . . . . . . . .    45

7.0  Right of Use . . . . . . . . . . . . . .    46

7.1    Commencement of Firm Transmission
       Service . . . . . . . . . . . . . . .    46

7.2    Rights Associated with Firm Transmission
       Entitlement . . . . . . . . . . . . .    46

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 6
of 73

Table of Contents (continued)

Page

7.3    Exchange of Firm Transmission
       Entitlement . . . . . . . . . . . . .    48

7.4    Adverse Rate Treatment  . . . . . . .    48

7.5    Designation of Firm Transmission
       Entitlement By Cotenants Other Than
       PGandE  . . . . . . . . . . . . . . .    49

7.6    Reimbursement of Costs for
       Redesignations Initiated By Cotenants
       Other Than PGandE . . . . . . . . . .    51

7.7    Right to Provide Transmission Service .  51

7.8    Reconnections and Redesignations
       Initiated By PGandE . . . . . . . . .    52

7.9    Reconnections Initiated by Cotenants
       Other Than PGandE Involving Circuits
       Operated by PGandE  . . . . . . . . .    62

7.10   Reconnections Initiated by Cotenants
       Other Than PGandE Involving Circuits
       Not Operated by PGandE  . . . . . . .    63

7.11   Reimbursement of Costs for Reconnections
       Initiated by Cotenants Other Than
       PGandE  . . . . . . . . . . . . . . .    63

7.12   Temporary Reconnections . . . . . . .    64

7.13   Interconnections With the Line
       Circuits  . . . . . . . . . . . . . .    68

7.14   Transmission Losses . . . . . . . . .    70

8.0  Curtailments . . . . . . . . . . . . . .   71

8.1    Curtailment Before Completion of
       Lakeville-Sobrante 230-kv Line  . . .    71

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 7
of 73

Table of Contents (continued)

Page

8.2   Outage of a Line Circuit or Other Circuit . . . . . . . . . . . . . .  71

8.3   System Curtailment . . . . . . . . .  75

9.0  PGandE As Operator . . . . . . . . . . . .  76

9.1   Rights and Duties of PGandE as Operator  76

9.2   Rights of Cotenants Other Than PGandE .  76

9.3   Operating Emergencies . . . . . . . .  77

10.0  Additions and Betterments . . . . . . . . .  77

10.1  PGandE's Right to Make Additions and Betterments to the New Line . . . . . .  77

10.2  Right of Cotenants Other Than PGandE To Participate . . . . . . . . . . . . .  78

10.3  Additions and Betterments of More Than 300 MW . . . . . . . . . . . . . . .  79

10.4  Right of First Refusal Regarding Additions and Betterments of More Than 300 MW . . . . . . . . . . . . .  79

11.0  Reconstruction . . . . . . . . . . . . . .  80

11.1  Conditions for Automatic Reconstruction  80

11.2  Conditions for Decision Before Reconstruction . . . . . . . . . . .  81

11.3  PGandE as the Selling Cotenant . . . .  82

11.4  Destruction of an Other Circuit . . . .  82

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 8 of 73

Table of Contents (continued)

12.0   Liability and Indemnity . . . . . . . . . . .   84

       12.1   Liability . . . . . . . . . . . . . .   84

       12.2   Responsibility of Cotentants Regarding
              Damage from Electrical Disturbances . .   85

       12.3   Indemnification From Claims by
              Persons or Entities . . . . . . . . . .   86

       12.4   Indemnification From Claims by
              Electric Customers . . . . . . . . . .   86

       12.5   Indemnification From Claims by
              Employees . . . . . . . . . . . . . . .   87

       12.6   Willful Action . . . . . . . . . . . .   88

13.0   Dispute Resolution and Default . . . . . . .   90

       13.1   Submittal of Dispute to Coordinating
              Committee . . . . . . . . . . . . . . .   90

       13.2   Arbitration . . . . . . . . . . . . .   91

       13.3   Default by PGandE . . . . . . . . . .   94

14.0   Term and Termination . . . . . . . . . . . .   95

       14.1   Term . . . . . . . . . . . . . . . . .   95

       14.2   Acceptance by FERC . . . . . . . . . .   96

       14.3   Termination by a Cotenant . . . . . .   97

       14.4   Decision By Cotenants to Continue
              Operation . . . . . . . . . . . . . .   97

       14.5   Termination by All Cotenants . . . . .   97

-vii-

# Table of Contents (continued)

Page

14.6   Continued Operation By Cotenants  . . .   98

14.7   Effect of Termination . . . . . . . . .   99

15.0   Coordinating Committee . . . . . . . . . . .   101

15.1   Structure . . . . . . . . . . . . .   101

15.2   Functions and Responsibilities  . . . .   101

15.3   Consequences of Non-Unanimous Decisions   106

15.4   Limitation of Decisions . . . . . . .   112

15.5   Committee Minutes . . . . . . . . . .   112

15.6   Limitation of Authority . . . . . . .   113

15.7   Change in Designated Representative  . .   113

15.8   Expenses of Representatives . . . . . .   113

16.0   General Provisions . . . . . . . . . . . .   114

16.1   Captions  . . . . . . . . . . . . .   114

16.2   Construction of Agreement . . . . . . .   114

16.3   Effect on Other Contracts . . . . . .   114

16.4   Regulatory Authority  . . . . . . . .   115

16.5   Governing Law . . . . . . . . . . . .   117

16.6   Judgments and Determinations  . . . . .   118

16.7   License to Install Facilities . . . . .   118

16.8   No Dedication of Facilities . . . . . .   119

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 10 of 73

Table Of Contents (continued)

Page

16.9    Notices . . . . . . . . . . . . . . . .    119

16.10   Audits and Review of Financial Records    121

16.11   Relationship of Parties . . . . . . . .    122

16.12   Taxes . . . . . . . . . . . . . . . . .    123

16.13   Uncontrollable Forces . . . . . . . . .    124

16.14   Waiver of Rights  . . . . . . . . . . .    125

16.15   Writings and Other Documents  . . . . .    126

16.16   Venue . . . . . . . . . . . . . . . . .    126

16.17   Proprietary Information . . . . . . . .    127

16.18   Execution . . . . . . . . . . . . . . .    128

16.19   No Precedent  . . . . . . . . . . . . .    128

16.20   Incorporation by Reference  . . . . . .    129


Appendix A   Location of New Line, Line Circuits, and
             Other Circuits

Appendix B   Preliminary Payment Schedule -- Castle Rock
             Junction-Lakeville Line

Appendix C   Annual Charge for the Associated Facilities

-ix-

Agreement of Cotenancy
in the
Castle Rock Junction-Lakeville 230-kV
Transmission Line

---

THIS AGREEMENT OF COTENANCY IN THE CASTLE ROCK
JUNCTION-LAKEVILLE 230-kV TRANSMISSION LINE is entered into
as of the 1st day of June, 1984, by and between Pacific Gas
and Electric Company (PGandE), the State of California
Department of Water Resources (CDWR), the Northern
California Power Agency (NCPA) and the City of Santa Clara
(Santa Clara), (Cotenant or Cotenants), and is as follows:

Recitals

PGandE is presently constructing on behalf of the Cotenants
a 230-kV double circuit transmission line (New Line) between
Castle Rock Junction and its Lakeville Substation in The
Geysers area.

PGandE has entered into separate Interconnection Agreements
with each of CDWR, NCPA, and Santa Clara which conferred
upon those Cotenants a right to participate in the ownership
of the New Line as tenants-in-common and such Cotenants have
exercised such rights.

The Cotenants have entered into the Sharing Agreement to allow the Cotenants other than PGandE to commence payment of their respective shares of the Cost of the New Line and to make contributions-in-aid-of-construction for the Associated Facilities in proportion to their Ownership Interests.

The Cotenants desire to set forth their rights and obligations as tenants-in-common of the New Line and for the use, operation and maintenance of the New Line, Associated Facilities, and Land Rights.

The Cotenants intend this Agreement to supercede the Sharing Agreement.

1.0    Definitions
       The following terms, when used in this Agreement with initial capitalization whether in the singular or plural, shall have the following meanings.

       1.1    Addition and Betterment - A capital improvement, the primary aim of which is to make the property affected more useful, more efficient, of greater durability or of greater capacity.

       1.2    Associated Facilities - Equipment and facilities that are not a part of the New Line as

-2-

such but which are installed in order to integrate it with PGandE's system.

1.3    CEC - California Energy Commission or its successor agency.

1.4    CPUC - California Public Utilities Commission or its successor agency.

1.5    Capital Replacement - A retirement unit that is substituted for another such retirement unit, as the term "retirement unit" is defined in the Federal Energy Regulatory Commission List of Retirement Units for Use in Connection with Uniform System of Accounts Prescribed for Public Utilities and Licenses, or its successor document.

1.6    Coordinating Committee - The Committee formed pursuant to Article 15.0.

1.7    Cost - The costs of the appropriate Cotenant associated with the Line Circuits and Associated Facilities including, but not limited to:  all capital expenditures, expenses of operation, maintenance, administrative and general expenses, taxes, an allocation of fixed charges on general

-3-

plant and common utility plant, labor and payroll taxes, materials and supplies, transportation, stores and tool expenses, supervision and overheads, depreciation, an allowance for workers' compensation, and public liability and property damage insurance, as determined by PGandE in accordance with the FERC Uniform System of Accounts as may be amended or superseded from time to time. The appropriate components of costs, as defined herein, shall be applied for the particular service or transaction performed. The factor for determining PGandE's cost of capital shall be equal to the rate of return on investment base as most recently allowed by the FERC. The factor for determining the cost of capital for a Cotenant other than PGandE shall be equal to the rate of interest payable by such Cotenant with respect to its most recent issue of debt securities having a maturity of no less than five (5) years, taking into consideration any original issue discount. No rate of return shall be included in any charge assessed on the portion of any facilities to the extent such facilities are financed by one or more contributions-in-aid-of-construction.

-4-

1.8    Cotenant - CDWR, NCPA, PGandE, Santa Clara and
any transferee that becomes a Cotenant under Section
2.4.3.


1.9    FERC - Federal Energy Regulatory Commission or
its successor agency.


1.10   Firm Transmission Entitlement - The firm
entitlement of a Cotenant to the use of transmission
capacity on a Line Circuit or Other Circuit or
combination thereof as provided in Section 7.1.


1.11   Good Utility Practice


        1.11.1 With respect to actions or inactions
        by any Cotenant other than CDWR, those
        practices, methods and equipment, including
        levels of reserves and provisions for
        contingencies, as modified from time to time,
        that are at least as good as those commonly
        used in the Service Area to operate, reliably
        and safely, electric power facilities to serve
        a utility's own customers dependably and
        economically, with due regard for the
        conservation of natural resources and the
        protection of the environment of the Service

-5-

Area; provided, that such practices, methods
and equipment are not unreasonably
restrictive.

1.11.2  With respect to action or inactions by
CDWR, the then current practices, methods and
equipment generally used by electric
utilities, which operate primarily in the
State of California, for the purpose of
providing economic, safe and reliable service
to their own customers, with due regard for
the conservation of natural resources and the
protection of the environment.

1.12    Interconnection Agreements - The Comprehensive
Agreement between the State of California Department
of Water Resources and PGandE executed April 22,
1982, the Interconnection Agreement between PGandE
and the City of Santa Clara effective October 27,
1983, the Interconnection Agreement between PGandE
and the Northern California Power Agency, City of
Alameda, City of Biggs, City of Gridley, City of
Healdsburg, City of Lodi, City of Lompoc, City of
Palo Alto, City of Roseville, City of Ukiah and
Plumas Sierra Rural Electric Cooperative effective
September 14, 1983, and any interconnection agreement

-6-

between PGandE and another entity that becomes a Cotenant, as such agreements may be amended from time to time.

1.13    Lakeville-Sobrante 230-kV Line - For purposes of Article 8.0, that 230-kV transmission line and associated facilities included in "Phase II Construction" as shown in Appendix A.

1.14    Land Rights - All rights, including easements, rights-of-way, or fee title in real property necessary for the construction, use, operation, and maintenance of the New Line, and the Associated Facilities.

1.15    Line Circuit - Either Line Circuit No. 1 or Line Circuit No. 2.

1.16    Line Circuit No. 1 - The three-phase, 230-kV circuit shown in Appendix A that, as of the initial operation date of the New Line, serves PGandE's Geysers Unit No. 14.

1.17    Line Circuit No. 2 - The three-phase, 230-kV circuit shown in Appendix A that, as of the initial operation date of the New Line, serves PGandE's Geysers Unit No. 9.

-7-

1.18  New  Line - The double-circuit, 230-kV
transmission line now being constructed between
PGandE's tower No. 0/1 at Castle Rock Junction in The
Geysers area and the circuit breaker structure at
Lakeville Substation shown in Appendix A.  The
facilities include tower No. 0/1 at Castle Rock
Junction, the overhead line with bundled 2300-kcm
aluminum conductors, the associated pipe-type
underground circuits with 3500-kcm aluminum cables,
all conductors, towers, related hardware and any
Capital Replacements and Additions and Betterments
thereto, but exclude the circuit breaker structure at
Lakeville Substation and any Land Rights.  The New
Line constitutes a portion of the Line Circuits, as
shown in Appendix A.

1.19  Operating Emergency - An unplanned event,
series of events, or circumstance, which requires the
taking of immediate action (i) to preserve, maintain,
or reestablish the safety, integrity, or operability
of the Line Circuits, Other Circuits, or Associated
Facilities or the facilities of any Cotenant
interconnected with the Line Circuits, Other
Circuits, or Associated Facilities; (ii) to protect
the health or safety of employees or the public; or
(iii) to prevent or minimize any significant adverse
environmental effects.

-8-

1.20    Other Circuit - Either Other Circuit No. 1 or Other Circuit No. 2, or any future 230-kV transmission circuit other than the Line Circuits, which circuit is operated by PGandE in The Geysers area and interconnects with PGandE's backbone transmission system.

1.21    Other Circuit No. 1 - The three-phase, 230-kV circuit shown in Appendix A that, as of the initial operation date of the New Line connects PGandE's Geysers Unit No. 5 with PGandE's Fulton Substation.

1.22    Other Circuit No. 2 - The three-phase, 230-kV circuit shown in Appendix A that, as of the initial operation date of the New Line, connects PGandE's Geysers Unit No. 17 with PGandE's Fulton Substation.

1.23    Ownership Interest - A Cotenant's ownership share in the New Line as provided and adjusted in Section 2.2.

1.24    Service Area - That area within the exterior geographic boundaries of the several areas electrically served at retail, now or in the future, by PGandE, and those areas in northern and central California adjacent thereto.

-9-

1.25   <u>Sharing Agreement</u> - The Agreement for Sharing of Costs for Construction of the Castle Rock Junction-Lakeville 230-kV Transmission Line and Associated Facilities, executed as of May 21, 1984 by PGandE, CDWR, NCPA and Santa Clara.

1.26   Willful Action - Willful action as defined in Section 12.6.

## 2.0   Ownership Interests

2.1   Undivided Interests. Each Cotenant owns an undivided interest in the New Line as a tenant-in-common as provided in this Article 2.0. Cotenants other than PGandE shall have no ownership in the Associated Facilities or the Land Rights; provided, however, that unless and until its Ownership Interest is terminated as provided in this Agreement each Cotenant shall have such rights to the benefit of the Land Rights and such rights to use the Associated Facilities as may be necessary to make use of its Firm Transmission Entitlement, pursuant to this Agreement.

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 21 of 73

2.2 _Initial Ownership Interests and Subsequent Adjustments_. The initial rating of the New Line is 1,206 MW with each Line Circuit rated at 603 MW. The initial Ownership Interest of each Cotenant is as follows, subject to adjustment as provided in this Section 2.2:

|  | Ownership Interests | |
| --- | --- | --- |
|  | (Megawatts) | (Percent) |
| CDWR- | 165.0 | 13.68 |
| NCPA- | 49.9 | 4.14 |
| PGandE- | 931.0 | 77.20 |
| Santa Clara- | 60.1 | 4.98 |
| Total | 1206.0 | 100.00 |

2.2.1 The Ownership Interests shall be determined as follows:

2.2.1.1 For PGandE, the Ownership Interest in megawatts is equivalent to the capacity rating of the New Line minus the sum of the Ownership Interests in megawatts of the Cotenants other than PGandE.

2.2.1.2 Ownership Interests in percent are determined for each Cotenant by the following equation:

-11-

$$\text{Ownership Interest in Percent} = \frac{100 \times \text{Ownership Interest in MW}}{\text{Capacity Rating of New Line}} \%$$

2.2.2   Ownership Interests shall be adjusted as provided in this Section 2.2.2. For purposes of payment under Article 5.0, adjustments of Ownership Interests shall be deemed to take effect on the first day of the calendar month in which the transaction or change specified in this Section 2.2.2 takes place.

2.2.2.1   Within sixty (60) calendar days of executing this Agreement, a Cotenant may terminate its participation if unsatisfied regarding the quality of PGandE's title to the Land Rights pursuant to Section 3.2. In that case, the Ownership Interest of the terminating Cotenant shall revert to PGandE, and PGandE's Ownership Interest in megawatts and percent shall increase accordingly. The Ownership Interests of the other Cotenants that remain parties to this Agreement shall not change under this Section 2.2.2.1.

-12-

2.2.2.2 After this Agreement is executed, any Cotenant may divest itself of part or all of its Ownership Interest upon satisfaction of the standards described in Section 2.4.3. The selling Cotenant thereby reduces or eliminates its Ownership Interest in megawatts and percent, and transfers a corresponding Ownership Interest to a new or existing Cotenant. The Ownership Interests of the Cotenants that do not participate in this transfer shall not change under this Section 2.2.2.2.

2.2.2.3 Following the first two (2) years of operation of the New Line and the monitoring thereof by PGandE as operator, the capacity rating of the New Line shall be adjusted pursuant to Section 4.7. At that time, PGandE's Ownership Interest in megawatts shall change in an amount equal to such adjustment in the capacity rating. The Ownership Interest in megawatts of the other Cotenants shall not be

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 24 of 73

changed. If the capacity rating of the New Line increases, PGandE's Ownership Interest in megawatts and in percent shall increase, and the other Cotenants' Ownership Interests in percent shall decrease. If the capacity rating of the New Line decreases, PGandE's Ownership Interest in megawatts and in percent shall decrease, and the other Cotenants' Ownership Interests in percent shall increase.

2.2.2.4   If Additions and Betterments that increase the capacity rating of the New Line are made pursuant to Article 10.0, the Ownership Interests of the Cotenants may change. For the Cotenants that participate in such Additions and Betterments, each of their Ownership Interests in megawatts shall increase to the extent of such participation; their Ownership Interests in percent may change accordingly on the basis of the new capacity rating of the New Line after

-14-

the Additions and Betterments become operational. For the Cotenants that do not so participate, each of their Ownership Interests in megawatts shall not be changed, while their Ownership Interests in percent shall decrease accordingly.

2.2.2.5 If a Cotenant elects to terminate its participation in this Agreement pursuant to Articles 11.0 and/or 14.0, the Ownership Interests in megawatts and in percent of the non-terminating Cotenants shall increase for those which elect to receive the Ownership Interest transferred by the terminating Cotenant. The Cotenants which receive no transferred Ownership Interest from the terminating Cotenant shall have no change in their Ownership Interests.

2.2.3 After notice to it of facts requiring a change in any Ownership Interest under this Section 2.2, PGandE shall calculate the adjusted Ownership Interests as necessary and notify the other Cotenants of the changes.

-15-

2.3    <u>Waiver of Partition Rights</u>.  The Cotenants
waive the right to partition the New Line.


2.4    <u>Transfer of Ownership Interests</u>.  Ownership
Interests shall be transferrable as follows:


    2.4.1    A Cotenant may mortgage or transfer
security interests in its Ownership Interest
without the consent of the other Cotenants and
without the lienholder becoming liable under
this Agreement.


    2.4.2    To the extent not prohibited or
restricted by law, including but not limited
to any prohibitions or restrictions contained
in any document conveying a real property
interest necessary to the construction or use
of the Line Circuits or Associated Facilities,
a Cotenant may, subject to Section 2.5, sell,
assign, or transfer its Ownership Interest or
the use of that interest, provided (i) the
transaction does not substantially impair the
non-transferring Cotenants' rights under this
Agreement; and (ii) the transferee agrees in
writing prior to or concurrently with its
agreement to such transaction that it shall

-16-

not use PGandE's transmission system other than the Line Circuits, Other Circuits, or Associated Facilities, as such use is authorized in this Agreement, except to the extent it is entitled to such use under a contract with PGandE or an enforceable judgment or order by a court, regulatory commission or other body of competent jurisdiction. The transferring Cotenant must notify any transferee that transmission service may not be available from PGandE beyond Lakeville or Fulton Substations, as applicable.

2.4.3 All sellers, assignors, or transferors, including those under foreclosure, shall remain liable under this Agreement except to the extent that: (i) the transfer is a complete divestiture in perpetuity of all of the rights and obligations associated with the Ownership Interest in megawatts that is being transferred; (ii) the transferee is a financially responsible entity in the judgment of the non-transferring Cotenants which judgment shall be reasonably exercised; and

-17-

(iii) the transferee assumes in writing all obligations associated with the Ownership Interest in megawatts that is being transferred. If all standards described in this Section 2.4.3 are met, such transferee shall be a Cotenant.

2.4.4 A Cotenant shall notify the members of the Coordinating Committee of the particulars of any agreement under Section 2.4.2, except agreements subject to Section 2.5, within fourteen (14) calendar days after entering into such agreement or, if CDWR is the transferring Cotenant, within fourteen (14) calendar days after approval of the Agreement by the California Department of General Services. Such Cotenant shall inform PGandE's operating center by telephone or otherwise of such agreement before it becomes effective. The procedure for notifying the Cotenants regarding agreements subject to Section 2.5 shall be in accordance with Section 2.5.6.

2.5 Rights of Refusal. To the extent not prohibited or restricted by law and to the extent the transaction is other than for services lasting no

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 29 of 73

more than one (1) year, including all renewals and extensions with respect to substantially similar services, and involves (i) solely transmission service, or (ii) transmission capacity in excess of that reasonably necessary to transmit any power that may be generated under the rights transferred as part of the transaction, then:

2.5.1   The entire transaction shall be subject to a first right of refusal by the non-transferring Cotenants to purchase or acquire the rights to be transferred at substantially the same price and under substantially the same terms or, at the election of the exercising Cotenant, under substantially more favorable terms, as those contained in a bona fide offer by another entity, including another Cotenant, which the transferring Cotenant proposes to accept. After submission of such bona fide offer to the non-transferring Cotenants for their review and until the procedures described in Section 2.5.6 are complete or until such submission is withdrawn prior to the exercise of any right of refusal under this Section 2.5, the transferring Cotenant shall have no

-19-

right to accept another offer with respect to the rights to be transferred. Said first right of refusal shall be exercisable in proportion to the Ownership Interests of the exercising Cotenants, in the ratio such Ownership Interests bear to the total Ownership Interests of all non-transferring Cotenants.

2.5.2 In the event that the transferor is a Cotenant other than PGandE and any Cotenant elects not to exercise its right of first refusal under Section 2.5.1, then PGandE shall have the right of refusal to purchase or acquire the rights which were the subject of such election.

2.5.3 In the event the transferor is PGandE and any Cotenant elects not to exercise its right of first refusal under Section 2.5.1, then the remaining non-transferring Cotenants shall have the right of refusal to purchase or acquire in proportion to the Ownership Interests of such Cotenants in the ratio such Ownership Interests bear to the total Ownership Interests of said remaining,

-20-

non-transferring Cotenant, or as otherwise agreed by the remaining non-transferring Cotenants, the rights which were the subject of such election.

2.5.4    In the event any Cotenant elects not to exercise its right of refusal under Section 2.5.2 or 2.5.3, then the remaining non-transferring Cotenants shall have the right of refusal to purchase or acquire in proportion to the Ownership Interests of such Cotenants in the ratio such Ownership Interests bear to the total Ownership Interests of said remaining, non-transferring Cotenants, or as otherwise agreed by the remaining non-transferring Cotenants, the rights which were the subject of such election.  If any Cotenant fails to exercise its right of refusal under this Section 2.5.4, then the remaining non-transferring Cotenants must mutually agree to purchase or acquire all of the rights which were the subject of such election or they shall be deemed to have waived all rights of refusal with respect to the transaction in question.

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 32 of 73

2.5.5   In exercising the rights of refusal described in this Section 2.5, each Cotenant agrees not to assert any preference which may otherwise be available to it over another Cotenant.

2.5.6   The transferring Cotenant shall provide written notice and deliver a complete copy of the agreement it proposes to enter into to each other Cotenant on the same working day ("Delivery Date").  Exercise of the rights described in this Section 2.5 shall be as follows:  No later than thirty (30) calendar days after the Delivery Date, or, if not a working day, no later than the first working day thereafter, each Cotenant shall meet with or otherwise communicate its decision pursuant to Section 2.5.1 to the other Cotenants, and shall confirm such decisions in writing to the other Cotenants thereafter.  No later than thirty-seven (37) calendar days after the Delivery Date, or, if not a working day, no later than the first working day thereafter, the Cotenants shall meet or otherwise communicate to the other Cotenants their decisions with regard to any

-22-

right of refusal described in Sections 2.5.2
and 2.5.3. Such decisions shall be confirmed
in writing to the other Cotenants thereafter.
No later than forty-four (44) calendar days
after the Delivery Date, or, if not a working
day, no later than the first working day
thereafter, the Cotenants shall meet or
otherwise communicate to the other Cotenants
their decisions with regard to any right of
refusal described in Section 2.5.4, or reach
the mutual agreement described in the second
sentence of Section 2.5.4, and meet or
otherwise communicate to the other Cotenants
their agreement. Such decisions or agreement
shall be confirmed in writing to the other
Cotenants thereafter. Failure by any Cotenant
to communicate any decision or agreement as
provided in this Section 2.5.6 shall be a
waiver of all rights of refusal held by such
Cotenant under this Section 2.5 with respect
to the rights to be transferred.

2.5.7  In exercising any right of refusal
described in this Section 2.5, the exercising
Cotenant must either exercise that right of
refusal with respect to all of the rights

-23-

available to it, or it shall be deemed to have waived all of its rights of refusal with respect to the transaction in question.

2.5.8 The transferring Cotenant shall deliver to the other Cotenants a copy of any agreement entered into by it which was subject to this Section 2.5.

2.6 Abandonment. No Cotenant shall be relieved of its obligations under this Agreement by abandoning its interest.

3.0 Land Rights

3.1 Land Rights Acquired By PGandE. PGandE has acquired Land Rights necessary for the Cotenants to make use of their Firm Transmission Entitlement as provided in Section 2.1.

3.2 Creation and Acquisition of Land Rights. PGandE's creation, acquisition, and agreement to give the other Cotenants the benefit of the Land Rights are without warranty or guarantee of any kind. Each other Cotenant shall satisfy itself in advance as to the quality of the title and its sole remedy, if

-24-

dissatisfied, is either to terminate its participation in this Agreement or to pursue changes to such title, provided, however, that PGandE shall exercise its best efforts to secure and maintain such Land Rights as may be necessary to enable PGandE, CDWR, NCPA, and Santa Clara to use their Firm Transmission Entitlements. PGandE has reviewed the easement documents and it is PGandE's good faith judgment that there are no restrictions which would prevent CDWR, NCPA or Santa Clara from receiving the benefits of the Land Rights as provided in Section 2.1, but that there may be restrictions with respect to transfers to some other entities of the right to receive the benefits of the Land Rights.

     3.2.1   The right of termination under this Section 3.2 is only held by CDWR, NCPA and Santa Clara, and will cease sixty (60) calendar days after the first execution of this Agreement by any such Cotenant, and if not exercised, that Cotenant shall be deemed satisfied as to such title.

     3.2.2   In the event of any termination under this Section 3.2, each Cotenant whose participation in this Agreement is terminated

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 36 of 73

shall, in consideration of the refund
described in Section 3.2.3, transfer the
interests and rights it holds in the New Line,
Associated Facilities and Land Rights to
PGandE immediately upon the effectiveness of
such termination. Such transfer shall not be
subject to Section 2.5.

3.2.3 In the event of any such termination,
PGandE shall refund to that Cotenant any
amounts theretofore received from the
terminating Cotenant with respect to the
Associated Facilities and the New Line, and
Ownership Interests as specified in Section
2.2 shall be adjusted as appropriate. Such
refund shall be made with interest calculated
as defined in Section 6.6 from the date each
payment was made under Section 4.2 to the date
the refund is made.

3.3     Release of Lien. PGandE shall use its best
efforts to obtain a release of any lien that might
have been created by its First and Refunding
Mortgage, dated December 1, 1920, as amended and
supplemented, with respect to the Ownership Interests
of any other Cotenant, if appropriate.

-26-

4.0   Sharing Initial Construction Costs of the
      New Line and Associated Facilities

4.1   Initial Cost Estimate for the New Line.
PGandE currently estimates that the initial
construction Cost of the New Line will be
approximately $45,500,000, excluding Costs of the
Land Rights and Associated Facilities. PGandE shall
revise this estimate from time to time as appears
appropriate.

4.2   Cost-Sharing for the New Line. Subject to
Sections 4.6 and 4.7, PGandE's share of the estimated
initial construction Cost of the New Line is 77.2
percent, and the other Cotenants' shares total 22.8
percent. Payments shall be made monthly according to
the schedule in Appendix B, with payments to cover
the expected expenditures to be incurred in the
pertinent month. Payments by check or wire transfer
shall be received by PGandE not later than the first
day of each month. If payments are not received in
time, the provisions of Sections 4.11 and 6.4 apply.
PGandE shall reconcile the payment schedule with the
actual expenditures as soon as practicable after the
receipt of such actual Cost information. PGandE
shall make appropriate revisions in the schedule of
payments so that the payment schedule will as much as

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
38 of 73

practicable reflect the actual amounts of money required by PGandE as such money is expended.

4.3   Payment for the Associated Facilities. Cotenants other than PGandE shall bear a share of construction Costs of the Associated Facilities, in proportion to their Ownership Interests, by making payments to PGandE as contributions-in-aid-of-construction, and shall have the right to use such Associated Facilities as provided in Section 2.1 without additional charge other than as provided in Section 5.4.

4.4   Cost-Sharing for the Associated Facilities. PGandE presently estimates that the initial construction Costs of the Associated Facilities will be approximately $2,381,700. PGandE shall revise this estimate from time to time as appears appropriate. Subject to Section 4.7, the Cotenants agree to share these Costs on the basis of the Cotenants' initial Ownership Interests as stated above in Section 2.2. Thus, the contributions of Cotenants other than PGandE were:

| | |
|---|---|
| CDWR- | $325,817 |
| Santa Clara- | 118,609 |
| NCPA- | 98,602 |

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 39 of 73

4.5     Payments Made for the Associated Facilities.
The contributions-in-aid-of-construction in the
amounts specified in Section 4.4 were paid to PGandE
on June 1, 1984.


4.6     Preliminary Accounting.     PGandE shall,
subsequent to completion of the New Line and
Associated Facilities, provide the other Cotenants a
preliminary accounting of the actual Costs thereof to
bring the payments in line with the initial Ownership
Interest defined in Section 2.2.  Statements shall be
submitted that specify any additional payment or
reimbursement necessary to achieve the appropriate
allocation of payments by Ownership Interest based on
the methodology used to prepare Appendix B.  Such
adjustments shall include interest as provided in
Section 6.6 from the date of the final payment under
Appendix B to the date of the adjustment statement.


4.7     Adjustment of Capacity Rating and Final
Accounting.  After monitoring the operation of the
New Line for two (2) years from its date of operation
and after the final accounting for the Costs of the
New Line and Associated Facilities, PGandE shall
revise the capacity rating of the New Line and will
provide a final adjustment of Costs of the New Line

-29-

and Associated Facilities based on the methodology
used to prepare Appendix B and on the revised New
Line capacity rating. Each Cotenants' Ownership
Interest shall be adjusted as provided in Section
2.2. Additional payments or reimbursements shall be
made with interest as provided in Section 6.6, from
the date of the adjustment statement in Section 4.6
to the date of the final adjustment statement
prepared pursuant to this Section 4.7. The
monitoring and rating of the New Line shall be done
in accordance with Good Utility Practice. PGandE, as
operator, has the sole right to establish the line
rating. The Cotenants other than PGandE shall have
the right to review the methodology and results of
the line rating process. The capacity rating of the
New Line after Additions and Betterments are made
under Article 10.0 shall be adjusted in accordance
with this Section 4.7.

4.8    <u>Right to Review</u>. Each Cotenant shall have the
right to review the documents supporting the Costs
billed in this Article 4.0, in accordance with
Section 16.10, up to one (1) calendar year after
receipt of the final accounting statement prepared
pursuant to Section 4.7.

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
41 of 73

4.9   No Cost Guarantee.  PGandE does not represent, agree, or guarantee that Costs of the New Line will not exceed its estimates by reason of price increases, human error, uncontrollable forces, or any other factor to which construction projects are subject.

4.10   Expected Completion Date of Construction. PGandE shall use its best efforts to continue constructing the New Line and Associated Facilities with a goal of completing them and putting them into full operation on or about March 1, 1985.

4.11   Consequences of Non-Timely Payments.  If any Cotenant other than PGandE does not make any payment referred to in this Article 4.0 in a timely manner in accordance with Section 4.2, such Cotenant shall pay PGandE 100 percent of its share of the amount described in this Section 4.11 rather than 50 percent thereof as otherwise provided.  Under existing tax law, all payments referred to in this Article 4.0 should be, in the opinion of all Cotenants, excludable from PGandE's gross income for federal, state, and/or local income tax purposes.  If this turns out not to be the case and any or all of these payments are included in PGandE's gross income for

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
42 of 73

federal, state, and/or local income tax purposes, the Cotenants other than PGandE agree to pay PGandE, in proportion to their Ownership Interests, 50 percent of the following amount: The amount that PGandE's tax liability increases as a result of including any or all of such payments (plus any payments to be made by the other Cotenants to PGandE under this Section 4.11) in PGandE's gross income for tax purposes for each year, over the tax liability PGandE would have incurred in the same year without including such payments in PGandE's gross income, such amount to be adjusted to reflect any credits, deductions or other tax benefits taken or to be taken by PGandE in previous, current and future tax years for the Ownership Interests for which such payments were made. If after the adjustment, the amount becomes a negative figure, PGandE shall pay 50 percent of that amount to the other Cotenants in proportion to the Ownership Interests of each of the other Cotenants. No Cotenant makes any representation with respect to these tax risks, with respect to which each Cotenant has consulted its own tax counsel.

4.12  Nature of Agreement. The Cotenants intend that this Agreement shall constitute a sharing arrangement among the Cotenants for the cooperative

-32-

funding and construction of a new 230-kV transmission line and Associated Facilities in The Geysers area of Northern California. The Cotenants do not intend this Agreement to create a partnership for tax purposes or otherwise. If, however, any tax authority characterizes this Agreement as creating a partnership, the Cotenants hereby affirm that it is their intention, beginning with the first taxable year of the purported partnership, not to have such entity taxed as a partnership under either (a) Subchapter K of Chapter 1 of the Internal Revenue Code of 1954, as amended from time to time, or (b) comparable partnership provisions of federal, state or local tax laws. The Cotenants agree to execute such documents as may be necessary for tax purposes to effectuate this intention.

5.0     **Cotenants' Payments for Costs of Operation, Maintenance, Replacement, and Additions and Betterments.**

5.1     <u>Annual Costs To Be Shared</u>. Except as provided in Section 7.13, the Cotenants shall share the Costs of operation and maintenance, Capital Replacements, and Additions and Betterments to the Line Circuits and Associated Facilities as provided in this Article 5.0.

-33-

5.2 <u>Sharing of Costs of Operating Emergencies</u>. The Cotenants shall share the Costs of Capital Replacements associated with eliminating any Operating Emergency in proportion to their Ownership Interests pursuant to Section 6.3.3.

5.3 <u>Sharing of Costs for Operation and Maintenance of the Line Circuits</u>. The Cotenants other than PGandE shall pay an annual charge, in proportion to their Ownership Interests, for the operation and maintenance of the Line Circuits and PGandE's maintenance of the rights-of-way of the Line Circuits, as provided in and billed by PGandE under Section 6.2. PGandE owns, operates and maintains other 230-kV collector and tap lines that are interconnected with the Line Circuits but separate from them. Such collector and tap lines are not included as part of the Line Circuits for the purposes of Cost sharing under this Section 5.3.

5.4 <u>Sharing of Costs for Operation, Maintenance and Replacement of Associated Facilities</u>. Cotenants other than PGandE shall pay an annual charge to cover the Costs of owning, operating, maintaining, and making Capital Replacements to the Associated Facilities, in accordance with Section 5.7 and

-34-

Appendix C. The system average rate listed in Appendix C may be adjusted not more than once in each calendar year. Billings and payments shall be in accordance with Section 6.1. PGandE may revise Appendix C subject to filing with FERC pursuant to Section 16.4.2 of this Agreement to the extent FERC has jurisdiction.

5.5     <u>Sharing of Costs for Capital Replacements and Additions and Betterments to Maintain Capacity of the New Line</u>. Except to the extent such Costs are paid by an entity other than a Cotenant, the Cotenants shall share, in proportion to their Ownership Interests as of the date the work commences, the Costs resulting from (i) Capital Replacements to the New Line or any portion thereof; and (ii) Additions and Betterments to the New Line or Associated Facilities that do not increase the rated capacity determined pursuant to Section 4.7. Except with respect to an Operating Emergency under Section 5.2, PGandE shall (i) provide an estimate of the Costs that are expected to be incurred and (ii) bill the other Cotenants for their share of such Costs pursuant to Section 6.3. Any payments by Cotenants other than PGandE under this Section 5.5 with respect to the Associated Facilities shall be contribu- tions-in-aid-of-construction.

-35-

5.6     Sharing of Costs for Additions and Betterments to Upgrade Capacity of the New Line.  The Costs of any Additions and Betterments to the New Line or Associated Facilities under Article 10.0 shall be shared by the Cotenants in proportion to their right to the benefits of such Additions and Betterments as provided in Article 10.0.  Billings and payments shall be in accordance with Section 6.3.  Any payments by Cotenants other than PGandE under this Section 5.6 with respect to the Associated Facilities shall be contributions-in-aid-of-construction.

5.7     Adjustments to Annual Payment for Associated Facilities.  With respect to the Associated Facilities, each Cotenant's initial capital payment, as a contribution-in-aid-of-construction and as adjusted pursuant to Section 4.7, is used as the basis for determining the billing amount for the annual charge described in Appendix C.  PGandE shall adjust each Cotenant's capital payment for purposes of determining such billing amount in such a manner as to relieve the transferring Cotenant of liability for the payment of such billing amount to the extent Ownership Interests are transferred pursuant to Section 2.4.3.  When such a transfer takes place and after the Coordinating Committee is appropriately

-36-

notified pursuant to Section 2.4.4, the transferor's capital payment shall be allocated for purposes of determining such billing amount between the transferor and the transferee in proportion to their Ownership Interests after the transfer. PGandE shall also adjust each Cotenant's capital payment for purposes of determining such billing amount when Additions and Betterments are made pursuant to Sections 5.5 or 5.6. Additional capital payments by the Cotenants for such Additions and Betterments to the Associated Facilities shall be added to the Cotenants' respective capital payments made to date. Both in the case of transfers and of Additions and Betterments, the new total of the capital payments shall be used as the basis for the calculation of the Cotenants' billing amount for the annual charge pursuant to Appendix C.

5.8    <u>Effective Date of Ownership Interest for Billing Purposes</u>. Each Cotenant's share of the Costs under Sections 5.1 through 5.4 shall be in accordance with its Ownership Interest in percent as of May 1 of the year for which such Costs are billed. No retroactive adjustments will be made to reflect any adjustment in Ownership Interests after May 1 of such year.

-37-

6.0    Billing and Payment

6.1    Billing for the Associated Facilities.  PGandE
shall bill the other Cotenants an annual charge for
the Associated Facilities pursuant to Section 5.4.
The first annual charge billing for each Cotenant
other than PGandE shall be prorated by days for the
period between and including November 4, 1984 and
December 31, 1984.  Each calendar year thereafter,
PGandE shall bill the other Cotenants for the annual
charge on or before the first calendar day in June,
in conjunction with the billing under Section 6.2,
and the Cotenants shall pay the annual charge on or
before the first calendar day in August.  The bill
for the last annual charge shall similarly be
prorated for the portion of the calendar year during
which the Agreement is in effect.

6.2    Billing for Operation and Maintenance of the
Line Circuits.  The Cotenants agree that, for the
purposes of this Agreement, $343,000 represents, as
of 1984, the basis for the calculation of annual
payments (the "BCAP") to PGandE by the Cotenants
other than PGandE for operation and maintenance of
the Line Circuits.  The Cotenants other than PGandE
shall each make an annual payment to PGandE that is

-38-

calculated by multiplying the BCAP by such Cotenant's Ownership Interest in percent. The Cotenants agree that the BCAP for years after 1984 shall be adjusted each year in accordance with the following published indices (or appropriate successor indices):

Index 1 = Average Hourly Earnings for Production or Non-Supervisory Workers in Electric, Gas and Sanitary Services (SIC 49) in the State of California during the appropriate year, as most recently published (Bureau of Labor Statistics, U.S. Department of Labor, "Employment, Hours and Earnings -- States and Areas").

Index 2 = Average value of the Producer Price Index for Industrial Commodities during the appropriate year, as most recently published (Bureau of Labor Statistics, U.S. Department of Labor, "Producer Prices and Price Indexes").

The basis for calculation of annual payments for operation and maintenance ("BCAP") shall be adjusted each year as follows:

$$BCAP_n = BCAP_{n-1} \left( 0.7 \; \frac{Index \; 1_{n-1}}{Index \; 1_{n-2}} \; + \; 0.3 \; \frac{Index \; 2_{n-1}}{Index \; 2_{n-2}} \right)$$

where n = year in which such payment occurs, and

$$BCAP_n = \$343,000 \text{ when } n = 1984.$$

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 50 of 73

PGandE does not warrant or represent that the BCAP, as escalated, will represent its actual Costs in any given year or years. The BCAP represents a settlement between the Cotenants, does not reflect PGandE current ratemaking policy, and shall not establish a precedent with respect to any future agreement. The BCAP shall be adjusted by PGandE after consultation with the other Cotenants to reflect PGandE's estimate of any additional or reduced Costs of maintenance and operation resulting from Additions and Betterments to the Line Circuits. Disputes with respect to such additional or reduced billing amounts resulting from any Additions and Betterments shall be resolved as provided in Articles 13.0 and 15.0. The first annual billing for each Cotenant other than PGandE shall be prorated by days for the period between and including November 4, 1984 and December 31, 1984. Each calendar year thereafter, PGandE shall bill the other Cotenants annually on or before the first calendar day in June and the Cotenants shall pay the annual charge on or before the first calendar day in August. The bill for the last annual charge shall similarly be prorated for the portion of the calendar year during which this Agreement is in effect.

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
51 of 73

6.3    <u>Billing for Capital Replacements, Additions</u>
<u>and Betterments and Other Expenses Under This</u>
<u>Agreement</u>.  PGandE shall bill the other Cotenants for
the estimated Costs associated with a given project
for Capital Replacements on the New Line, and for
Additions and Betterments to the New Line or
Associated Facilities pursuant to Sections 5.5 and
5.6.  PGandE shall also bill the other Cotenants for
other expenses payable pursuant to Article 7.0 of
this Agreement.  Such bills shall be based on
PGandE's best estimate of the Costs of performing the
work.  The bill shall include a credit for the
appropriate share of the estimated net salvage value
of any retirements of any facilities replaced.

6.3.1    For projects with a duration of less
than one month, the Cotenants shall make one
lump-sum payment.  PGandE shall provide an
estimate of Costs to the other Cotenants at
least thirty (30) calendar days before such
payment is due.

6.3.2    For projects with a duration of longer
than one month, PGandE shall prepare a monthly
payment schedule that reflects the estimated
construction or other Costs as they are

-41-

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
52 of 73

expected to be incurred. At least sixty (60) calendar days before the date on which the Cotenants other than PGandE shall be required to commence payment of any Costs, PGandE shall submit to the other Cotenants: (i) its estimate of all Costs which it will incur; and (ii) a payment schedule indicating the expected monthly Costs included in the estimate and each Cotenant's monthly share of such Costs.

6.3.3   PGandE shall bill the other Cotenants for the Costs of any Capital Replacements to the New Line required as a result of an Operating Emergency. If such Capital Replacements are to be commenced later than two (2) calendar months after the date the Operating Emergency began, the provisions of Section 6.3.2 shall apply. Otherwise, PGandE shall bill the other Cotenants for their proportional share of such Costs as soon as practicable after the work is completed.

6.3.4   The Cotenants shall pay each amount specified in the estimate described in Section 6.3.2 on or before the first of the month for which PGandE expects to pay each such amount.

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
53 of 73

6.3.5 Within a reasonable time after the completion of the project, PGandE shall provide the other Cotenants with the final accounting of the Costs of the project. As part of such final accounting, PGandE shall adjust the Cost estimate provided in Section 6.3.1 or 6.3.2 as necessary to reflect any difference between the estimated and actual Costs of such project. PGandE shall submit a final statement to the other Cotenants specifying the payment or refund required. All adjustments shall accrue an interest charge at the rate specified in Section 6.6 from the date the final estimated payment was due to the date the adjustment is paid.

6.3.6 PGandE may agree to conduct studies under Article 7.0 on a flat-fee basis.

6.4 **Payment of Bills**. Except as otherwise provided in this Agreement, all bills shall be due and payable within thirty (30) calendar days of receipt of the bill. If any Cotenant believes there are any errors in the determination of such Costs, such Cotenant shall pay the full amount of such Costs without offset or reduction. Bills that are not paid

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 54 of 73

in full by the due date shall thereafter accrue an interest charge from the date the payment is due until the date such payment is received. The interest charge shall be compounded monthly based on the unpaid amount of the bill at an interest rate equal to the applicable first of the month reference rate as specified in Section 6.6 plus two (2) percentage points per annum, or the maximum rate permitted by law, whichever is less.

6.5    Right to Review.  Up to one calendar year after receipt of the final accounting under Section 6.3.5, the Cotenants shall have the right pursuant to Section 16.10 to review the supporting documents upon which the Costs billed under Section 6.3 are determined.  Disputes under Articles 5.0 and 6.0 will be resolved pursuant to Articles 13.0 and 15.0.

6.6    Applicable Interest Rate.  Except as provided in Section 6.4, interest will be compounded monthly, at a rate equal to the applicable first of the month reference rate, or any successor comparable interest rate, of the San Francisco main branch of the Bank of America, N.T. and S.A., San Francisco, California, or the maximum rate allowed by law, whichever is less.

-44-

6.7    <u>Billing Disputes</u>.  Regardless of the existence of any dispute, all payments will be made in full pursuant to Section 6.4, until the dispute is resolved.

6.7.1   If any portion of a bill is disputed, the Cotenant billed shall advise PGandE, in writing, of the amount and basis for the contested portion.  PGandE and the Cotenant(s) disputing the bill shall meet within thirty (30) calendar days to review the supporting documents and attempt to agree on the adjustments that may be appropriate.  If agreement cannot be reached, the dispute shall be resolved pursuant to the procedures set forth in Article 13.0.

6.7.2   If the disputed amount is determined under this Agreement not to have been payable, it shall be refunded with interest, compounded monthly, at the reference rate described in Section 6.6 corresponding to the period from the date the payment was due to the date the refund is made, or at the maximum rate permitted by law during such period, whichever is less; provided, however, that if the

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 56 of 73

disputed amount is determined through arbitration to have been billed by PGandE in bad faith, it shall be refunded with interest, compounded monthly, at such reference rate plus two (2) percentage points per annum, or the maximum rate permitted by law, whichever is less.

7.0 <u>Right of Use</u>

7.1 <u>Commencement of Firm Transmission Entitlement</u>. Each Cotenant shall have, subject to curtailments as provided in Article 8.0, a Firm Transmission Entitlement equal to its Ownership Interest in megawatts. Transmission service rights and limitations over PGandE's system beyond Lakeville or Fulton substations, if any, shall be as provided in separate Interconnection Agreements between PGandE and the other Cotenants.

7.2 <u>Rights Associated With Firm Transmission Entitlement</u>. The Firm Transmission Entitlement, or portion thereof, of a Cotenant other than PGandE shall exist only on the specific Line Circuit or Other Circuit to which such Firm Transmission Entitlement, or portion thereof, is designated.

-46-

PGandE's Firm Transmission Entitlement shall consist
of that undesignated portion of the capacity rating
of the New Line and Line Circuits, as adjusted under
Section 4.7, and the portion of the capacity rating
of the New Line and Line Circuits designated under
Section 10.4.  Cotenants shall be entitled to use
their Firm Transmission Entitlement, or portion
thereof, on such Line Circuits or Other Circuits.  As
of the effective date of this Agreement with respect
to such Cotenant and except as provided in Section
7.4, no Cotenant shall be required to pay a
transmission charge for the use of its Firm
Transmission Entitlement over the Line Circuits or
Other Circuits up to its Ownership Interest in
megawatts.  No Firm Transmission Entitlement is
transferrable in whole or in part to any other Line
Circuit or Other Circuit unless a redesignation is
made to that Other Circuit or Line Circuit, as
provided in this Article 7.0.  Any transmission by a
Cotenant other than PGandE of energy or capacity over
the Line Circuits or Other Circuits that is not using
an equivalent portion of such Cotenant's Firm
Transmission Entitlement shall be provided under the
terms of such Cotenant's Interconnection Agreement or
any other applicable transmission agreement.  No
Cotenant shall have the right to use the unused Firm

-47-

Transmission Entitlement of another Cotenant without such other Cotenant's prior authorization through its operating center or otherwise.

7.3     Exchange of Firm Transmission Entitlement.  To the extent the Firm Transmission Entitlement of a Cotenant other than PGandE is designated to an Other Circuit or is designated from an Other Circuit to a Line Circuit, that Cotenant and PGandE shall, for operating purposes, exchange, without charge to each other, equivalent amounts of transmission capacity between such Other Circuit and the Line Circuits. That Cotenant shall continue to be financially responsible for its share of Costs of the Line Circuits and Associated Facilities, pursuant to Article 5.0, in accordance with its Ownership Interest.  Except as provided in Section 7.4, the Cotenant shall not be required to pay any of the Costs of the Other Circuits.  Except for exchanges pursuant to this Section 7.3, any transaction involving the transmission capacity so exchanged shall be subject to Section 2.5.

7.4     Adverse Rate Treatment.  Sections 7.2 and 7.3 assume that PGandE will not receive any adverse rate treatment as a result of such arrangements.  If

-48-

adverse treatment does occur, PGandE may charge any
disallowance or other resulting cost or loss to other
individual Cotenants (i) as appropriate to any
decision imposing such treatment or (ii) in
proportion to their Ownership Interests as
appropriate. PGandE may thereafter charge
compensatory rates taking into consideration such
other Cotenants' payments for operation and
maintenance. Any Cotenant charged a transmission
charge under this Section 7.4 with respect to the
right to use its Firm Transmission Entitlement over
an Other Circuit as provided in Section 7.3 may
charge PGandE an equal transmission charge for
PGandE's right to use any transmission capacity on
the New Line exchanged therefor.

7.5   <u>Designation of Firm Transmission Entitlement</u>
<u>By Cotenants Other Than PGandE</u>. The Cotenants other
than PGandE agree that the Firm Transmission
Entitlement of CDWR, NCPA, and Santa Clara shall be
designated initially to the following Line Circuits
or Other Circuits:  CDWR -- 55 MW on Other Circuit
No. 2 and 110 MW on Line Circuit No. 2; NCPA --
49.9 MW on Line Circuit No. 2; and Santa Clara --
60.1 MW on Line Circuit No. 2.  Such a Cotenant may
make a request to redesignate all or a part of its

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
60 of 73

Firm Transmission Entitlement from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit, or to designate any increased Firm Transmission Entitlement it may receive as a result of any Addition and Betterment under Section 10.2, by submitting its request in writing to PGandE. Such Cotenant may make such a redesignation or designation only to a given Line Circuit or Other Circuit which has, connected to it, a powerplant(s) owned or operated by such Cotenant; except that to the extent that such Cotenant's total Firm Transmission Entitlement exceeds the total generating capacity which such Cotenant has connected to the Line Circuits and Other Circuits, such Cotenant may make such a redesignation or designation to a given Line Circuit or Other Circuit in excess of the generating capacity of such powerplant(s) or to a Line Circuit or Other Circuit which does not have, connected to it, a powerplant owned or operated by such Cotenant. Such Cotenant shall not be entitled to any such redesignation until at least thirty (30) calendar days after such request. No Cotenant's Firm Transmission Entitlement may be redesignated in whole or in part at its request more often than twice during each calendar year unless mutually agreed by PGandE and the requesting Cotenant.

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 61 of 73

7.6    <u>Reimbursement Of Costs For Redesignations Initiated By Cotenants Other Than PGandE</u>. If PGandE determines that it is necessary to study the possible effects of a redesignation described in Section 7.5, the requesting Cotenant shall pay all Costs of such study pursuant to Section 6.3 and PGandE's decision on the redesignation shall be delayed until the study is completed. PGandE shall complete such study within 180 calendar days of its receipt of the written redesignation request. If PGandE determines that the redesignation should be approved, the requesting Cotenant shall pay the other Cotenants' resulting Costs, including but not limited to any Costs of additional reconnections to balance line loadings, but excluding the Cost of lost generation. If the Firm Transmission Entitlement is redesignated from a Line Circuit to an Other Circuit, then the provisions of Section 7.3 shall apply. If a reconnection is required as a result of the redesignation, the provisions of Section 7.8 shall apply. Billing and payment of any Costs shall be pursuant to Section 6.3.

7.7    <u>Right to Provide Transmission Service</u>. A Cotenant may use its Firm Transmission Entitlement to provide transmission service for others as provided

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 62 of 73

in Sections 2.4 and 2.5, subject to the provisions of this Agreement.

7.8     <u>Reconnections and Redesignations Initiated By PGandE</u>.  Except as provided in other agreements between a Cotenant and PGandE, PGandE, as operator, may change the point of connection of a Cotenant's powerplant and/or redesignate all or a part of a Cotenant's Firm Transmission Entitlement from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit in order best to provide for transmission of electric energy.  PGandE shall have the right to redesignate all or a portion of the Firm Transmission Entitlement of a Cotenant other than PGandE only when it determines that such action is required as a result of:  (i) the proposed new interconnection of a powerplant or unit to a Line Circuit or Other Circuit; (ii) the derating or retiring of an existing powerplant or unit connected to a Line Circuit or Other Circuit; or (iii) a request by a Cotenant other than PGandE to reconnect or redesignate under Sections 7.5, 7.9 or 7.10.

        7.8.1   PGandE shall notify the members of the Coordinating Committee of any proposed reconnections or redesignations in advance of

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 63 of 73

their implementation; provided that in the event of a reconnection or redesignation required for repair, Operating Emergency, or other compelling operating purposes, PGandE shall (i) take whatever action it deems prudent and necessary, subject to the provisions of this Agreement and in accordance with Good Utility Practice, to preserve or maintain the safety, integrity and operability of the transmission system in the Service Area, and (ii) restore the system to its original configuration as soon as practicable after the occurrence that precipitated the need for the change has terminated.

7.8.2 PGandE agrees to reasonably minimize interference with transmission from other Cotenants' powerplants when reconnections are being made pursuant to Sections 7.8 and 7.9. Except during an Operating Emergency, PGandE shall coordinate line outages for reconnections with the other Cotenants and shall notify their operators regarding the specific lines involved and the times they must be cleared.

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 64 of 73

7.8.3 Except as provided in Sections 7.6, 7.8.5, and 7.11, PGandE shall pay the full Cost of any reconnection under this Section 7.8, excluding the Cost of lost generation.

7.8.4 PGandE shall notify the members of the Coordinating Committee when it determines that the powerplant of a Cotenant other than PGandE is being studied for reconnection or redesignation and solicit their comments regarding the assumptions and parameters of its study of such reconnection or redesignation. Whenever PGandE proposes to reconnect any other Cotenant's powerplant or to redesignate such Cotenant's Firm Transmission Entitlement, it must submit its justification for the proposed reconnection/redesignation plan, together with a cost estimate for the proposed work, to the members of the Coordinating Committee for review. The study submitted shall contain: a drawing showing the proposed reconnections including the specific circuits involved; a physical description of the reconnections; and a tentative schedule for the reconnections. The Committee shall have thirty (30) calendar days to review the study.

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 65 of 73

7.8.4.1 When practicable; PGandE's submittal to the Coordinating Committee shall be made before such reconnection/redesignation plan is submitted to any regulatory body for approval and with sufficient time allowed for the additional review provided in Section 7.8.5.

7.8.4.2 The Coordinating Committee shall only have the right to review such justification with respect to a proposed plan in which a powerplant operated by a Cotenant other than PGandE will be reconnected, or the Firm Transmission Entitlement of a Cotenant other than PGandE will be redesignated, from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit. The Cotenants, whether through the Coordinating Committee or otherwise, shall only have the right to review any such studies that involve reconnecting powerplants or redesignating the Firm Transmission Entitlement of a Cotenant other than PGandE.

-55-

7.8.4.3   In the event that PGandE proposes to reconnect a powerplant that is connected to a Line Circuit or Other Circuit to which all or a portion of the Firm Transmission Entitlement of a Cotenant other than PGandE is designated, PGandE shall redesignate the associated Firm Transmission Entitlement when making such reconnection, provided that, if PGandE determines that sufficient firm transmission capability is available, the Cotenant to be reconnected shall have the right to redesignate the associated Firm Transmission Entitlement to a given Line Circuit or Other Circuit that has, connected to it, a powerplant owned or operated by such Cotenant, up to the generating capacity of such powerplant.

7.8.4.4   In the event that PGandE proposes to redesignate all or a portion of the Firm Transmission Entitlement of a Cotenant other than PGandE without making a concurrent

-56-

reconnection, PGandE may redesignate only up to the amount of the generating capacity of any powerplant owned or operated by such Cotenant that is connected to the Line Circuit or Other Circuit to which such redesignation is made. PGandE may redesignate such Firm Transmission Entitlement in excess of the generating capacity of such powerplant(s) only to the extent that such Cotenant's total Firm Transmission Entitlement exceeds the total generating capacity which such Cotenant has connected to the Line Circuits or Other Circuits.

7.8.4.5 If a Cotenant's Firm Transmission Entitlement is redesignated to an Other Circuit under this Section 7.8.4, the provisions of Section 7.3 shall apply.

7.8.5 When a Cotenant other than PGandE has a powerplant proposed for reconnection, or Firm Transmission Entitlement proposed for

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 68 of 73

redesignation, under Section 7.8.4, any Cotenant(s) affected by such a reconnection or redesignation shall have the right to object to the reconnection/redesignation plan. Such Cotenant(s) must formally present its (or their) objections in writing to the members of the Coordinating Committee before the end of the 30-day period specified in Section 7.8.4.

7.8.5.1 The objecting Cotenant(s) shall have ninety (90) calendar days from the date it (they) submits its (their) notice of objection to the Coordinating Committee to jointly prepare a study that supports one alternative plan which includes, but is not limited to, the allocation among the objecting Cotenant(s) of the increased or decreased Costs described in Section 7.8.5.4. Such an alternative plan may be a recommendation not to take any action.

7.8.5.2 The study for an alternative reconnection plan shall contain: a drawing showing the proposed

-58-

reconnections under the alternative plan, including the specific circuits involved; a physical description of the reconnections; a tentative schedule for the reconnections; and a cost estimate for the work. The study for an alternative redesignation plan shall contain a detailed description of the proposed redesignation and a tentative schedule therefor. The study shall also contain a comparison of the alternative plan with the plan proposed by PGandE. The objecting Cotenant(s) may, at its (their) option, request that PGandE conduct the study of the alternative plan at the expense of the objecting Cotenant(s).

7.8.5.3 The objecting Cotenant(s) shall present its (their) single study to the Coordinating Committee before the end of the 90-day period, or the PGandE reconnection/redesignation plan shall be implemented. When the study is presented, the Cotenants shall then

Case: 19-30088    Doc# 11889-1    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 70 of 73

have up to thirty (30) calendar days
to review the alternative plan and the
cost estimate.

7.8.5.4   If PGandE determines that
the alternative proposed by the
Cotenant(s) is feasible and consistent
with Good Utility Practice, PGandE
shall implement that alternative,
subject to the conditions set forth in
Section 7.8.6.   The Cotenant(s)
offering the alternative plan shall
pay any net increase in Costs
resulting from the fact that the
alternative is implemented rather than
PGandE's plan proposed under Section
7.8.4.   Such increased Costs shall
include, but not be limited to, the
Costs of transmission planning or
engineering studies conducted by
PGandE to support the alternative
before regulatory bodies, any Costs of
additional reconnections to balance
line loadings that would not have been
required under PGandE's plan, and any
increased transmission line losses

suffered by PGandE. Such increased
Costs shall exclude, however, the Cost
of lost generation. The Cotenants
offering the alternative plan shall
reach agreement with PGandE on any
sharing of Costs and the billing and
payment provisions no later than
thirty (30) calendar days before
payment is required to commence
pursuant to Section 6.3. If any
portion of a Cotenant's Firm
Transmission Entitlement is
redesignated to an Other Circuit under
this Section 7.8.5, the provisions of
Section 7.3 shall apply to such
portion. If PGandE determines that
the alternative plan is infeasible,
PGandE shall, after presenting
supporting material to the
Coordinating Committee, have the right
to implement its plan proposed under
Section 7.8.4.

7.8.6   The provisions of Section 7.8.5 shall
not apply if the California Energy Commission,
the California Public Utilities Commission, or

Case: 19-30088   Doc# 11889-1   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
72 of 73

any successor agency requires, through order, condition or other official action, that PGandE implement a specific reconnection plan.

7.8.7   Nothing in this Agreement shall compel any Cotenant to connect any of its facilities to any circuit that is not operated by PGandE.

7.9     <u>Reconnections Initiated by Cotenants Other Than PGandE Involving Circuits Operated By PGandE</u>. Except as provided in Section 7.12, if a Cotenant other than PGandE wishes to change its point of connection for one of its powerplants from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit, and PGandE and the Coordinating Committee determine that the change should be made, the Cotenant may request that PGandE do so at the Cotenant's expense subject to Section 7.11. Such Cotenant shall give adequate advance written notice to allow PGandE to study the effects of such proposed reconnection. PGandE shall complete such study within 180 calendar days after its receipt of written notice.

-62-