# EXHIBIT 1
# (Part 2 of 2)

7.10  Reconnections Initiated by Cotenants Other
Than PGandE Involving Circuits Not Operated By
PGandE.  Nothing in this Agreement will prevent a
Cotenant from changing the point of connection of one
of its powerplants to a circuit not operated by
PGandE or from such a circuit to a Line Circuit or
Other Circuit to the extent otherwise permitted by
this Agreement.  If a Cotenant requests a
reconnection to a Line Circuit or Other Circuit, such
reconnection cannot be made until PGandE, as
operator, approves it.  Such Cotenant shall give
adequate advance written notice to allow PGandE to
study the effects of such proposed reconnection.
PGandE shall complete such study within 180 calendar
days after its receipt of written notice.  The
Cotenant shall bear its own Costs of reconnecting
subject to Section 7.11.

7.11  Reimbursement Of Costs For Reconnections
Initiated By Cotenants Other Than PGandE.  Except as
provided in Section 7.12, the Cotenant making a
request to change its point of connection shall pay
the other Cotenants' resulting Costs, including but
not limited to pertinent transmission planning or
engineering studies required by PGandE, as operator,
and any Costs of additional reconnections pursuant to

-63-

Section 7.8 to balance line loadings, but excluding the Cost of lost generation. Such Cotenant shall continue to be responsible for its respective share of the Costs of the Line Circuits as provided in this Agreement, until such time as it is relieved of such obligation as provided in this Agreement, or as otherwise agreed among the Cotenants. If the point of connection is changed from a Line Circuit to an Other Circuit, then the provisions of Section 7.3 shall apply. Billing and payment of any Costs shall be pursuant to Section 6.3.

7.12 <u>Temporary Reconnections</u>. In the event that (i) a Cotenant is not using its full amount of Firm Transmission Entitlement designated to a Line Circuit or Other Circuit ("Second Circuit"), (ii) such Second Circuit is not curtailed pursuant to Article 8.0 of this Agreement, and (iii) the Cotenant owns or operates powerplants connected to a different Line Circuit or Other Circuit ("Initial Circuit"), such Cotenant may, to the extent consistent with Good Utility Practice, temporarily reconnect its powerplant from the Initial Circuit to the Second Circuit by notifying PGandE's operating center by telephone or otherwise, provided Sections 7.12.1 through 7.12.6 are each satisfied. Such Cotenant

-64-

shall as soon as practicable, terminate any temporary
reconnection and reconnect to the Initial Circuit at
such time as it coordinates necessary switching with
PGandE's operating center and when the occurrence
that precipitated the need for the temporary
reconnection has terminated, but in no event later
than 210 calendar days after the temporary
reconnection takes place, unless such period is
extended by the mutual agreement of such Cotenant and
PGandE. Nothing in this Section 7.12 shall relieve
such Cotenant of any obligation to pay PGandE
applicable charges for transmission service under any
agreement with PGandE.

      7.12.1 PGandE shall have sixty (60) days to
review the design of the equipment required
for such temporary reconnection, including but
not limited to any switches and protection
equipment, before it is installed and shall
have the right to test and retest such
equipment in advance of any such temporary
reconnection to ensure the continued
reliability and operability of PGandE's
system. When PGandE reviews such design or
tests such equipment, and if it determines
that the temporary reconnection and the

-65-

implementation of the temporary reconnection are consistent with Good Utility Practice and are as reliable as the connection that existed before the temporary reconnection is made, it shall approve such design or determine that such equipment has passed such test. If PGandE determines that such equipment or design is inadequate, the proposed temporary reconnection may not take place unless and until changes are made in such equipment or design by such Cotenant and PGandE determines that such changed equipment or design will prevent the proposed temporary reconnection from violating the standards contained in the previous sentence. PGandE makes no representation or warranty that any such equipment or design may be adequate. PGandE shall give adequate advance notice before testing such equipment and shall conduct the test at a mutually agreeable time.

7.12.2 Such Cotenant shall only use transmission capacity on the Second Circuit up to the sum of its Firm Transmission Entitlement designated to the Second Circuit and any transmission service purchased from a

-66-

Cotenant other than PGandE on the Second Circuit. PGandE's operating center, at its sole discretion, may approve the use by such Cotenant of additional transmission capacity from PGandE's Firm Transmission Entitlement on the Second Circuit, provided that such Cotenant shall reduce or cease, immediately upon PGandE's request through its operating center, such use of additional transmission capacity.

7.12.3 The temporary reconnection shall not impair the ability of any other Cotenant to use its Ownership Interest as provided in this Agreement.

7.12.4 No later than one (1) hour before the temporary reconnection is planned to take place, such Cotenant shall contact PGandE's operating center and obtain authorization to proceed on schedule. The temporary reconnection shall proceed consistent with Good Utility Practice and in accordance with the schedule authorized by PGandE's operating center.

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 6 of 71

7.12.5 Such Cotenant shall inform by telephone or otherwise the members of the Coordinating Committee of the temporary reconnection by the end of the next business day following PGandE's approval of the temporary reconnection.

7.12.6 The Cotenant making a request for a temporary reconnection or for PGandE's design approval or testing of any equipment under Section 7.12.1 shall pay the other Cotenants' resulting Costs, including but not limited to the Costs of pertinent engineering or planning studies conducted by PGandE to study the reconnection equipment, the Costs of any additional equipment required on PGandE's system or the system of another Cotenant and the Cost of lost generation. Billing and payment of any Costs shall be pursuant to Section 6.3.

7.13 <u>Interconnections With the Line Circuits</u>. Additional 230-kV collector and tap lines may be constructed by the Cotenants and interconnected with the Line Circuits after this Agreement becomes effective. In the event of such an interconnection

-68-

with the New Line by a Cotenant other than PGandE,
Sections 7.13.1 through 7.13.4 shall apply.
Interconnections by Cotenants other than PGandE with
any Other Circuit or any portion of the Line Circuits
other than the New Line shall be handled in
accordance with such Cotenant's respective
Interconnection Agreement.

> 7.13.1 If a Cotenant other than PGandE
> constructs a new 230-kV collector or tap line,
> such Cotenant must obtain approval by PGandE,
> as operator, before interconnecting with the
> New Line. Such Cotenant shall give PGandE
> adequate advance written notice of such
> proposed interconnection with the New Line.
> The advance notice shall provide adequate lead
> time necessary to accomplish the
> interconnection, including but not limited to,
> such time as may be necessary for: conducting
> studies and preparing the engineering design;
> review by regulatory agencies; obtaining
> required approvals, permits and licenses;
> construction; and establishing any contractual
> arrangements between the Cotenants and third
> parties that may be necessary.

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 8
of 71

7.13.2 Any Cotenant that proposes such construction shall notify the other Cotenants of its plans.

7.13.3 Facilities or control equipment at the proposed interconnection point shall be provided, operated, and maintained in a manner to ensure the safe and reliable operation of the New Line and in accordance with Good Utility Practice.

7.13.4 The Cotenant requesting the interconnection shall be responsible for PGandE's Costs of providing the required facilities, including but not limited to transmission planning studies or engineering designs that must be completed before PGandE can grant approval. Billing and payment of any Costs shall be pursuant to Section 6.3.

7.14 <u>Transmission Losses</u>. Transmission losses over the New Line, Line Circuits or Other Circuits shall be governed by each Cotenant's respective Interconnection Agreement with PGandE.

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 9 of 71

8.0   Curtailments

8.1   Curtailment   Before   Completion   of
Lakeville-Sobrante 230-kV Line.   A Cotenant's right
to use its Firm Transmission Entitlement is subject
to curtailment in accordance with Good Utility
Practice.   Prior to the completion and full operation
of the Lakeville-Sobrante 230-kV Line, the use by any
Cotenant other than PGandE of its Firm Transmission
Entitlement shall be curtailable as provided in such
Cotenant's Interconnection Agreement with PGandE.
PGandE shall use its best efforts to complete the
Lakeville-Sobrante 230-kV Line on or before
November 30, 1985.

8.2   Outage of a Line Circuit or Other Circuit.
After the completion and full operation of the
Lakeville-Sobrante 230-kV Line, in the event of an
outage or curtailment of the capability of a Line
Circuit or Other Circuit to transmit energy, Sections
8.2.1 through 8.2.3 shall apply.   For purposes of
this Section 8.2, all of the transmission capacity of
the Line Circuits and Other Circuits, except any Firm
Transmission Entitlement of a Cotenant other than
PGandE, shall be deemed to be the designated Firm
Transmission Entitlement of PGandE.

-71-

8.2.1   PGandE shall take any action pursuant to Section 9.3 as it deems appropriate.

8.2.2   Except as provided in Article 7.0, the Cotenant's rights to the use of its Firm Transmission Entitlement shall not be transferable to another Line Circuit or Other Circuit.  The right to use Firm Transmission Entitlement designated to the curtailed Line Circuit or Other Circuit shall only be available to another unit on the curtailed Line Circuit or Other Circuit as provided in Section 8.2.3.2.

8.2.3   The following steps shall be taken until such time that the curtailed Line Circuit or Other Circuit can be restored to full capacity:

> 8.2.3.1.  Transmission by a Cotenant over the curtailed circuit in excess of its Firm Transmission Entitlement designated to such curtailed circuit, including such Cotenant's non-firm transmission, shall be curtailed first;

-72-

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 11 of 71

8.2.3.2.  Thereafter, each Cotenant's right to use the Firm Transmission Entitlement (FTE) designated to the curtailed Line Circuit or Other Circuit shall be allocated on a pro-rata basis as determined by the following equation except as provided in Section 8.2.3.3:

$$A = \frac{B}{C} \times D$$

where,

A = A Cotenant's pro-rata allocation in megawatts of the then available transmission capacity on the curtailed Line Circuit or Other Circuit;

B = A Cotenant's FTE in megawatts designated to the curtailed Line Circuit or Other Circuit;

C = Sum total of each of the Cotenants' FTEs in megawatts designated to the curtailed Line Circuit or Other Circuit;

D = Then available transmission capacity in megawatts on the curtailed Line Circuit or Other Circuit.

8.2.3.3  If after applying Section 8.2.3.2, one or more Cotenants have scheduled less than their pro-rata

-73-

firm allocation (variable "A") as determined in Section 8.2.3.2, this excess allocation will be, subject to Section 8.2.3.4, reallocated among each of the remaining Cotenants which are able to use it by the following process:

$$E = A + \left(\frac{B}{F} \ X \ G\right)$$

where,

E = A remaining Cotenant's pro-rata allocation in megawatts of the then available transmission capacity on the curtailed Line Circuit or Other Circuit including the excess allocation not used by one or more of the other Cotenants.

A and B are as defined in Section 8.2.3.2.

F = Sum total of each of the remaining Cotenants' FTEs in megawatts designated to the curtailed Line Circuit or Other Circuit.

G = Excess allocation in megawatts to be reallocated to the remaining Cotenants on the curtailed Line Circuit or Other Circuit.

The above process for determining variable "E" will be repeated as necessary in order to maximize the use

-74-

of the transmission capacity of the curtailed Line Circuit or Other Circuit, provided that no Cotenant shall have the right to exceed its FTE as assigned to the curtailed Line Circuit or Other Circuit.

8.2.3.4 If a Cotenant was not scheduled to use its full pro-rata firm allocation (variable "A") as determined in Section 8.2.3.2 when the curtailment period began, such Cotenant may schedule generation with PGandE to use up to its full allocation on the curtailed Line Circuit or Other Circuit in accordance with the scheduling procedures under its respective Interconnection Agreement.

8.3 System Curtailment. The curtailment priorities established in the respective Interconnection Agreements between PGandE and the other Cotenants shall continue to apply in the event of an outage or curtailment of the capability to transmit energy on PGandE's system other than the

-75-

Line Circuits, Other Circuits and Associated
Facilities.

## 9.0    PGandE as Operator

9.1    Rights and Duties of PGandE As Operator.
PGandE, as operator, shall acquire Land Rights,
construct the New Line and Associated Facilities, and
manage, coordinate, operate, maintain, repair, make
replacements, inspect and have access to the Line
Circuits, and shall have all rights to do so, except
as expressly provided in this Agreement. All work
shall be done in conformance with Good Utility
Practice. PGandE does not assume any fiduciary
duties in its performance of this Agreement, and such
performance shall not be judged by fiduciary
standards.

9.2    Rights of Cotenants Other Than PGandE. The
Cotenants other than PGandE waive all right to enter
or to have anyone else enter or possess the New Line
on their behalf, unless PGandE materially defaults in
its obligations pursuant to Section 13.3, and agree
that they have no such rights with respect to the
Associated Facilities, the Line Circuits other than
the New Line, and the Other Circuits; provided, that

-76-

the Cotenants other than PGandE, or such Cotenants'
designated representative, shall have the right to
inspect the New Line at reasonable times (i) upon
prior notice to PGandE of no less than two (2)
business days, (ii) when accompanied by a
representative of PGandE, and (iii) only for the
purpose of exercising their rights under this
Agreement.

9.3    <u>Operating Emergencies</u>.  PGandE shall take
whatever action it determines necessary to eliminate
any Operating Emergency.  PGandE shall notify the
other Cotenants' operating centers as soon as the
extent of the trouble is ascertained and inform them
regarding the Operating Emergency and the corrective
actions taken and yet to be taken.


10.0    <u>Additions and Betterments</u>

10.1    <u>PGandE's Right to Make Additions and
Betterments to the New Line</u>.  PGandE shall have the
exclusive right to make at any time Additions and
Betterments to the New Line and/or Associated
Facilities in order to increase the capacity of the
New Line or Associated Facilities, but such Additions
and Betterments shall not interfere, other than

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
16 of 71

temporarily, with the rights of the other Cotenants
to the use of their Firm Transmission Entitlement.

10.2    Right of Cotenants Other Than PGandE to
Participate.  PGandE shall offer in writing to the
other Cotenants the right to participate in the first
300 MW of transmission capacity resulting from any
such Addition and Betterment in a combined amount up
to 35 percent of such Addition and Betterment, up to
a maximum combined amount of 105 MW.  Said Cotenants
shall have the right to participate in such combined
amount according to their respective Ownership
Interests in percent in the New Line, or in such
other proportion agreed to by said Cotenants, on the
same terms and conditions set forth in this
Agreement, and shall share the Costs of the Additions
and Betterments in proportion to their participation
throughout the period of construction.  The Cotenants
shall have ninety (90) calendar days from the date of
PGandE's written offer in which to exercise this
right and to notify PGandE in writing of their
decision.  In the event any of said Cotenants do not
wish to exercise this right, the remaining Cotenants,
other than PGandE, may share the capacity subject to
such unexercised right in proportion to their
Ownership Interests or as otherwise agreed among

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
17 of 71

them. The Cotenants exercising this right to
participate shall notify PGandE as to the amount of
additional capacity each Cotenant elects to
participate in. PGandE shall bill the participating
Cotenants for their proportional share of Costs in
accordance with Section 5.6.

10.3  Additions and Betterments of More Than 300 MW.
Any Additions and Betterments constructed by PGandE
resulting in increased capacity of the New Line or
Associated Facilities over and above 300 MW shall be,
at PGandE's option, for its sole use and benefit.
None of the rights of refusal under Section 2.5 shall
apply to transfers by PGandE of any transmission
capacity created in excess of the initial 300 MW of
Additions and Betterments to the New Line.

10.4  Right of First Refusal Regarding Additions and
Betterments of More Than 300 MW. Should the
completion of any Addition and Betterment under this
Article 10.0 result in an increase of more than
300 MW in the capacity rating of the New Line, as
such rating may be revised pursuant to Section 4.7,
PGandE shall, upon completion of such Additions and
Betterments, designate its Ownership Interest in
megawatts which is not subject to the right of first

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
18 of 71

refusal under Section 2.5 to specific Line Circuits or Other Circuits subject to redesignation by PGandE no more than twice during each calendar year. PGandE shall notify the members of the Coordinating Committee thirty (30) days in advance of any such designation or redesignation.

11.0   Reconstruction

11.1   Conditions for Automatic Reconstruction. During the term of this Agreement, the Cotenants agree to make the Capital Replacements necessary to reconstruct and repair the New Line and Associated Facilities and to share the Cost of such reconstruction or repair in proportion to their Ownership Interests (i) if with respect to an event occurring during the first ten (10) years after the effective date of this Agreement, the Cost of such reconstruction or repair does not exceed 60 percent of the then-current replacement Cost of the New Line and Associated Facilities, or (ii) if, with respect to an event occurring after such tenth year, the Cost of such reconstruction or repair does not exceed a certain percentage (variable "P") of the then-current replacement Cost of the New Line and Associated

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 19 of 71

Facilities.   Variable "P" shall be calculated as
follows:

$$P = 60 - [(3)(y-10)]$$

where   P =      percent of the then-current replacement
                 Cost of the New Line and Associated
                 Facilities;

        y =      the number of full years that have elapsed
                 from the effective date of this Agreement
                 to the date the damage took place.

The rights and obligations provided in this Section
11.1 shall be specifically enforceable.


11.2   <u>Conditions for Decision Before Reconstruction</u>.
If the Cost of reconstruction or repair would exceed
the applicable limit specified in Section 11.1, then
each Cotenant shall decide whether or not it desires
to repair or reconstruct the damaged facility.  Any
Cotenants desiring to repair or reconstruct such
facilities, shall have the right to do so.  In the
event that fewer than all Cotenants desire to repair
or reconstruct the destroyed or damaged facilities,
then any Cotenant that does not agree to repair or
reconstruct such facilities shall sell its interest
in the facilities to the Cotenant or Cotenants that
desire to reconstruct such facilities.  The
purchasing Cotenants shall purchase such interest in

-81-

proportion to their Ownership Interest for a price equal to the net salvage value of the selling Cotenant's Ownership Interest. The rights and obligations provided in this Section 11.2 shall be specifically enforceable.

11.3  PGandE as the Selling Cotenant.  In the event that PGandE is a selling Cotenant under Section 11.2, it shall permit the reconstructed New Line to be interconnected with its system for the remaining term of this Agreement and the purchasing Cotenant(s) shall assume PGandE's rights and obligations as operator under this Agreement. It is the responsibility of the purchasing Cotenant(s) to obtain any necessary Land Rights. PGandE shall cause the transfer of all Land Rights, licenses, permits, or other rights of approval necessary to use and operate the New Line, other than Land Rights associated with any facility other than the New Line, to the purchasing Cotenant(s) to the extent it has a right to do so.

11.4  Destruction of an Other Circuit.  In the event of the destruction of an Other Circuit to which all or a part of the Firm Transmission Entitlement of a Cotenant other than PGandE is designated, and PGandE

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 21 of 71

determines not to reconstruct, the Cotenants other
than PGandE, shall have the right to have PGandE, at
PGandE's expense, reconnect under Section 7.8 such
Contenant's powerplant(s) that is(are) connected to
such Other Circuit and meet(s) one of the following
characteristics:

(1)     if the combined generating capacity of such
        powerplant(s) is less than or equal to such
        Firm Transmission Entitlement, PGandE shall
        reconnect all such powerplant(s); or

(2)     if such Cotenant has only one such powerplant
        and if the generating capacity of such
        powerplant is greater than such Firm
        Transmission Entitlement, PGandE shall
        reconnect such powerplant; or

(3)     if such Contenant has more than one such
        powerplant, the combined generating capacity
        of which is greater than such Firm
        Transmission Entitlement, PGandE shall
        reconnect only that(those) powerplant(s) that
        has(have) a combined generating capacity which
        exceeds the Firm Transmission Entitlement
        designated to such Other Circuit by the least
        amount.

PGandE shall reconnect such qualifying powerplant(s) to one
of the Line Circuits or an Other Circuit that is owned and

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
22 of 71

operated by PGandE and still in operation. If the generating capacity of the reconnected powerplant(s) exceeds such Firm Transmission Entitlement, then such Cotenant shall only operate the reconnected powerplant(s) in excess of such Firm Transmission Entitlement to the extent it has an enforceable right to transmit such excess. PGandE shall also redesignate under Section 7.8 such Firm Transmission Entitlement to the Line Circuit or Other Circuit to which such powerplant(s) has(have) been reconnected pursuant to this Section 11.4.

12.0    Liability and Indemnity

12.1    Liability. Except (i) as otherwise provided in this Article 12.0, (ii) for any loss, damage, claim, cost, charge, or expense resulting from Willful Action, as defined in Section 12.6, and (iii) with respect to any contractual dispute subject to Article 13.0, no Cotenant, its directors or other governing body, officers or employees shall be liable to any other Cotenant for any loss, damage, claim, cost, charge, or expense of any kind or nature incurred by such other Cotenant (including direct, indirect or consequential loss, damage, claim, cost, charge, or expense, and whether or not resulting from the negligence of a Cotenant, its directors or other

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
23 of 71

governing body, officers, employees, or any person or entity whose negligence would be imputed to such Cotenant) from the performance or nonperformance of the obligations of a Cotenant under this Agreement (including the interruption or curtailment of any transmission of electric energy). Except (i) as otherwise provided in this Article 12.0, (ii) for any loss, damage, claim, cost, charge, or expense resulting from Willful Action, as defined in Section 12.6, and (iii) with respect to any contractual dispute subject to Article 13.0, each Cotenant releases the other Cotenants, their directors, or other governing body, officers, and employees from any such liability. With respect to any contractual dispute subject to Article 13.0, no Cotenant, its directors, or other governing body, officers or employees shall be liable to any other Cotenant for any indirect or consequential loss, damage, claim, cost, charge, or expense.

12.2 **Responsibility of Cotenants Regarding Damage From Electrical Disturbances**. Each Cotenant shall be responsible for protecting its facilities from possible damage by reason of electrical disturbances or faults caused by the operation, faulty operation, or nonoperation of any other Cotenant's facilities

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 24 of 71

located in Lake, Napa or Sonoma counties, and, except for damage resulting from Willful Action, such other Cotenant shall not be liable for any such damages so caused.

12.3    Indemnification From Claims By Persons or Entities.  Except as provided in Section 12.4 or 12.5, each Cotenant shall be responsible for, and shall indemnify, to the extent permitted by law, the other Cotenants, their directors or other governing body, officers and employees from and against any liability for death, injury, loss or damage suffered or incurred by a person or entity (other than a Cotenant, its directors or other governing body, officers and employees) to the extent such death, injury, loss or damage was proximately caused by such indemnifying Cotenant in the performance or non-performance of its obligations under this Agreement.

12.4    Indemnification From Claims By Electric Customers.  Except for liability resulting from Willful Action of another Cotenant, a Cotenant whose electric customer shall make a claim or bring an action for any death, injury, loss or damage arising out of electric service to such customer, which

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
25 of 71

death, injury, loss or damage is caused by a
Cotenant's performance or nonperformance of its
obligations under this Agreement, shall indemnify and
hold harmless, to the full extent permitted by law,
the other Cotenants, their directors or other
governing body, officers and employees from and
against any liability for such death, injury, loss or
damage. For the purpose of this Article 12.0, the
term "electric customer" shall mean an electric
customer, except an electric utility system to whom
power is delivered for resale. "Electric customer"
shall also mean a member, subsidiary or substantial
owner of a Cotenant.

12.5 <u>Indemnification From Claims By Employees</u>.
Except for liability resulting from Willful Action of
another Cotenant, a Cotenant whose employee shall
make a claim or bring an action against another
Cotenant for any death, injury, loss or damage
arising out of a Cotenant's performance or
nonperformance of its obligations under this
Agreement, shall indemnify and hold harmless, to the
full extent permitted by law, the other Cotenants,
their directors, officers and employees for such
death, injury, loss or damage.

-87-

12.6     Willful Action.  For the purpose of this
Article 12.0, Willful Action shall be defined as:

> 12.6.1 Action taken or not taken by a
> Cotenant at the direction of its directors or
> other governing body, officers or employees
> having management or administrative
> responsibility affecting its performance under
> this Agreement, which action is knowingly or
> intentionally taken or failed to be taken with
> conscious indifference to the consequences
> thereof or with intent that injury or damage
> would result or would probably result
> therefrom.

> 12.6.2 Action taken or not taken by a
> Cotenant at the direction of its directors or
> other governing body, officers or employees
> having management or administrative
> responsibility affecting its performance under
> this Agreement, which action has been
> determined by final arbitration award or final
> judgment or judicial decree to be a material
> default under this Agreement and which occurs
> or continues beyond the time specified in such
> arbitration award or judicial decree for

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
27 of 71

curing such default or, if no time to cure is
specified therein, occurs or continues
thereafter beyond a reasonable time to cure
such default.

12.6.3 Action taken or not taken by a
Cotenant at the direction of its directors or
other governing body, officers or employees
having management or administrative
responsibility affecting its performance under
this Agreement, which action is knowingly or
intentionally taken or failed to be taken with
the knowledge that such action taken or failed
to be taken is a material default under this
Agreement.

12.6.4 Willful Action does not include any
act or failure to act which is merely
involuntary, accidental or negligent.

12.6.5 The phrase "employees having
management or administrative responsibility,"
as used in this Article 12.0, means the
employees of a Cotenant who are responsible
for one or more of the executive functions of
planning, organizing, coordinating, directing,

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
28 of 71

controlling and supervising such Cotenant's performance under this Agreement with responsibility for results.

## 13.0   Dispute Resolution and Default

13.1   Submittal of Dispute to Coordinating Committee.  Except as provided in Section 15.3, prior to submitting such dispute to arbitration, any billing dispute which has not been resolved pursuant to the provisions of Section 6.7.1 and any other dispute arising under this Agreement must be submitted to the Coordinating Committee by a Cotenant involved in the dispute, through written notice stating the nature of the dispute.  The Coordinating Committee shall attempt to settle all disputes submitted to it as soon as possible, but in no case later than forty-five (45) calendar days after the dispute is submitted, unless an extension of time is agreed to by the Cotenants involved in the dispute. Such Cotenants shall prepare and submit offers of settlement for consideration by the Coordinating Committee.  No Cotenant shall commence arbitration of any dispute until after such 45-day period (as such period may be extended) has expired.  If the Coordinating Committee fails to resolve any billing

-90-

dispute under Section 6.7 within such 45-day period (as such period may be extended), and if the disputing Cotenant has not commenced arbitration under Section 13.2 within thirty (30) calendar days after the end of such period, the disputing Cotenant shall be deemed to have waived all claims with respect to such billing dispute.

13.2 **Arbitration.** Disputes arising under this Agreement that have not been resolved under Sections 13.1 or 15.2.3 shall be settled through binding arbitration as provided in this Section 13.2. The disputing Cotenant shall notify the other Cotenants in writing that it is commencing arbitration. The notice shall specify which Cotenants are to be parties to the arbitration. Any Cotenant not so specified may become a party to the arbitration by written notice to the other Cotenants within ten (10) calendar days after the notice of commencement of arbitration. Within thirty (30) calendar days after the notice of commencement of arbitration, each party to the arbitration shall prepare and provide to the other parties to the arbitration a single proposal to resolve the dispute. Any Cotenant that does not submit such a proposal in a timely manner shall have waived its right to participate in the arbitration

and shall be bound by the terms of the proposal accepted by the arbitrator's decision. The parties to the arbitration shall agree on a single arbitrator with an acceptable understanding of the utility industry. If such parties to the arbitration cannot agree on an arbitrator within fifteen (15) calendar days after the notice of commencement of arbitration under this Section 13.2, the arbitrator will be selected by the American Arbitration Association within thirty (30) calendar days after such notice of commencement of arbitration. Except as otherwise provided in this Agreement, any arbitration commenced pursuant to this Section 13.2 shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The provisions of California Code of Civil Procedures Section 1283.05 shall apply to the arbitration. Unless extended by agreement of the arbitrating Cotenants, discovery shall be completed and the hearing shall commence within thirty (30) calendar days after the Cotenants' proposals to resolve the dispute are available. Within sixty (60) calendar days after such proposals are available, unless the arbitrator requests and is granted an extension of time by the arbitrating Cotenants, the arbitrator will accept one of the proposals, and such Cotenants hereby agree to

-92-

be bound by that decision.  After the decision by the
arbitrator, such Cotenants shall immediately take
whatever action is required to comply with the
accepted proposal.  Any and all expenses associated
with the arbitration shall be borne by the
Cotenant(s) sponsoring the rejected proposal(s).  The
decision of the arbitrator may be enforced by any
court having jurisdiction over the Cotenant against
which the decision was rendered.

13.2.1  To the extent a dispute involves the
application of Good Utility Practice, the
arbitrator shall determine which Cotenant's
final proposal more reasonably represents Good
Utility Practice.  To the extent the dispute
does not involve Good Utility Practice, the
arbitrator shall determine which Cotenant's
final proposal more reasonably applies the
standards of this Agreement applicable to the
dispute, or, absent standards, which
Cotenant's final proposal was more reasonable.
The arbitrator shall specifically consider all
factors relevant to the reasonableness of the
Cotenants' final proposals, including, but not
limited to the facts known and the facts that
should have been known to each Cotenant at the

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
32 of 71

time of action or inaction giving rise to the dispute, the amount of time available in which to act, and other factors relevant under the circumstances. Nothing contained herein shall permit the arbitrator to waive or change any of the provisions of this Agreement, including this Section 13.2. The standards of this Section 13.2.1 shall not apply to any arbitration under Section 15.3.1.4.2.

13.3  Default By PGandE.  In the event any court, regulatory commission, or other body of competent jurisdiction determines, in a decision no longer subject to judicial review, that PGandE is in material default of its obligations under Article 9.0 in its capacity as operator of the New Line, and after failure by PGandE to cure that default within a reasonable period after receiving notice of that determination, any other Cotenant(s) so consenting may take possession of and operate the New Line for the use and benefit of the Cotenants.  In such event, such other Cotenant(s) shall assume PGandE's obligations as operator under Article 9.0 provided, however, that PGandE shall continue to be liable for its proportional share of operation, maintenance, and replacement expenses of the Line Circuits and

-94-

Associated Facilities and provided further, that
PGandE shall cause the transfer of all Land Rights,
licenses, permits or other rights of approval
necessary to use and operate the New Line, other than
Land Rights associated with any facility other than
the New Line, to the operating Cotenant(s) to the
extent it has the right to do so. In the event of
such an assumption of PGandE's obligations as
operator, (i) PGandE shall have the right to use its
Ownership Interest and its share of the Associated
Facilities under the terms of this Agreement which
apply to such use by Cotenants other than PGandE, and
(ii) the operating Cotenant(s) shall have the rights
and obligations of PGandE as operator under Articles
9.0 and 10.0.


14.0   Term and Termination


14.1   Term.  Except as provided in Section 14.2,
this Agreement shall, upon execution by PGandE and
any given other Cotenant, become effective as to such
Cotenant as of June 1, 1984.  This Agreement shall be
in effect for an initial term extending through
December 31, 2014.  Thereafter the Cotenancy
Agreement shall continue from year to year unless
terminated pursuant to this Article 14.0.

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
34 of 71

14.2    Acceptance by FERC.  Any provision of this
Agreement which is filed for approval by FERC shall
become effective on the date it is accepted by FERC
for filing or such earlier date on which it is
permitted to become effective by FERC; provided, that
such provisions are expressly conditioned upon FERC's
acceptance of all such provisions, without change or
condition, and shall not become effective unless so
accepted, unless otherwise agreed by the Cotenants;
provided further, that if upon filing, FERC enters
into a hearing to determine whether such provisions
are just and reasonable, such provisions shall not
become effective until the date when an order, no
longer subject to judicial review, is issued by FERC
determining such provisions to be just and reasonable
without changes or new conditions unacceptable to any
Cotenant; provided, further, that if FERC imposes
changes or new conditions unacceptable to any
Cotenant, the Cotenants will negotiate in good faith
to amend this Agreement to eliminate such
unacceptable changes or conditions; and provided
further that, to the extent allowed by law, nothing
in this Section 14.2 shall be construed as reducing
in any way the right of PGandE to receive from the
other Cotenants compensation for all Costs for which
any such provisions are intended to compensate
PGandE.

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page

14.3 **Termination By A Cotenant.** Any Cotenant may, by giving one (1) year advance written notice to the other Cotenants, terminate its participation in this Agreement effective no earlier than January 1, 2015.

14.4 **Decision by Cotenants to Continue Operation.** Should any Cotenant give notice of termination, the other Cotenants shall determine if one or more of the remaining Cotenants wish to keep operating the New Line and buy the interest of the terminating Cotenant.

14.5 **Termination By All Cotenants.** If the remaining Cotenants determine not to continue operating the New Line, this Agreement shall terminate on the date specified in the notice. PGandE, or its successor as operator of the New Line, shall remove the New Line, credit the net salvage value of the material, and distribute any net proceeds among the Cotenants in proportion to their Ownership Interests. If the removal is performed at a net loss, PGandE, or its successor as operator of the New Line, shall be reimbursed by the other Cotenants for their respective shares of such net loss in proportion to their Ownership Interests. Each Cotenant shall be liable for financial

-97-

obligations incurred by it prior to any termination of this Agreement.

14.6    Continued Operation By Cotenants.  If one or more Cotenants wish to continue operating the New Line, the Cotenant(s) wishing to purchase the interest(s) of the departing Cotenant(s) may do so effective as of the date the selling Cotenant terminates its participation in this Agreement.  If more than one Cotenant wish to purchase such interest(s), they may do so in proportion to their respective Ownership Interests or as otherwise agreed.  All interests available for purchase must be acquired by the purchaser(s).  The sale price will be the estimated net salvage value of the interests purchased.  The purchasing Cotenant(s) shall pay the departing Cotenant(s) their share of the sale price.  The departing Cotenant(s) shall transfer its (their) interest(s) to the purchasing Cotenant(s) and shall have no more interest in or liability under this Agreement, except with respect to financial obligations incurred prior to its effective date of termination.  The departing Cotenant(s) shall obtain and provide a full release of any encumbrance of its(their) Ownership Interest prior to such transfer.  The departing Cotenant shall be liable for all

financial obligations incurred by it prior to its effective date of termination. The Ownership Interests of the remaining Cotenant(s) shall be recalculated as appropriate, under Section 2.2. If PGandE is a departing Cotenant, the purchasing Cotenant(s) shall assume PGandE's obligations as operator under Article 9.0 and PGandE shall cause the transfer of all Land Rights, licenses, permits or other rights of approval necessary to use and operate the New Line, other than Land Rights associated with any facility other than the New Line, to the operating Cotenant(s) to the extent it has a right to do so.

14.7    Effect of Termination.  Upon termination of its participation in this Agreement by any Cotenant other than PGandE, PGandE and such other Cotenant shall make arrangements immediately to disconnect from the Line Circuits or Other Circuits any facilities associated with such Cotenant's use of its Firm Transmission Entitlement.  Such other Cotenant shall claim no further right to have such facilities connected to PGandE's electrical system by reason of this Agreement; provided, that such other Cotenant does not by this Agreement waive any rights it may have to seek an interconnection under any applicable

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
38 of 71

law or regulation; provided further, that such other
Cotenant does not by this Agreement waive any rights
it may have for transmission service in accordance
with the Stanislaus Commitments, its Interconnection
Agreement with PGandE, or any applicable laws
including the antitrust laws. For purposes of this
Agreement, the Stanislaus Commitments shall be that
statement of commitments by PGandE submitted to the
United States Department of Justice by PGandE on
April 30, 1976 and incorporated in PGandE's Diablo
Canyon license, as those commitments may be amended.
Such termination shall also automatically terminate
with respect to such other Cotenant any tariffs or
rate schedules which in whole or in part result from
or incorporate this Agreement and no regulatory
filings shall be required to effectuate such
termination. After such termination, all rights to
any regulated service under this Agreement or any
such tariff or rate schedule shall cease. Such
termination shall not affect rights and obligations
of a continuing nature or for payment of money for
transactions occurring prior to termination.

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
39 of 71

15.0    Coordinating Committee

15.1    Structure.  As a means of fostering effective
cooperation and interchange of information and of
providing consultation on a prompt and orderly basis
among the Cotenants in connection with various
administrative and technical matters which may arise
from time to time, the Cotenants establish the
Coordinating Committee described in this Article
15.0.  The Chairman for the Coordinating Committee
shall be the representative of PGandE, as operator,
and the Chairman shall be responsible for calling
meetings and establishing agendas, at the Chairman's
discretion, or upon the request of another Cotenant.
The Coordinating Committee shall consist of no more
than two representatives appointed by each Cotenant;
provided, however, that each Cotenant shall be
entitled to only one vote.  Within thirty (30) days
after the execution of this Cotenancy Agreement, each
Cotenant shall designate its representatives on the
Coordinating Committee, and notify the other
Cotenants thereof.

15.2    Functions and Responsibilities.  The
Coordinating Committee shall have functions and
responsibilities as follows:

15.2.1 Provide liaison between PGandE and the other Cotenants with respect to the progress, performance and completion of construction work, the performance of operation and maintenance, and the progress, performance and completion of Capital Replacements and Additions and Betterments and the financial and accounting aspects thereof;

15.2.2 Consider and attempt to resolve disputes arising under this Agreement before they are submitted to arbitration as provided in Article 13.0;

15.2.3 Review and, to the extent each Cotenant in its sole discretion agrees to a given action, approve, modify or otherwise act upon recommendations of PGandE and other actions proposed by other members of the Coordinating Committee regarding the matters described in Sections 15.2.3.1 through 15.2.3.4. If, within sixty (60) calendar days (or as otherwise agreed by the Cotenants) after the proposed action is submitted by any Cotenant to the Coordinating Committee for decision, the Coordinating Committee does not

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 41 of 71

reach such an unanimous agreement with respect to any such action, then the provisions of Section 15.3 shall apply. Unless an arbitration under Section 15.3.1.4.2 is commenced within thirty (30) calendar days after PGandE's determination under Sections 15.3.1.2 and 15.3.1.3 are communicated to the other Cotenants, PGandE may take whatever action with respect to the matters described in Sections 15.2.3.1 through 15.2.3.4 that it determines appropriate under this Agreement.

15.2.3.1 Requests by Cotenants other than PGandE for maintenance on the Line Circuits additional to that otherwise performed by PGandE;

15.2.3.2 Capital Replacements to the New Line as described in Section 5.5 except with respect to Operating Emergencies under Sections 9.3 and 5.2;

15.2.3.3 Additions and Betterments to the New Line and Associated Facilities that do not increase the capacity of

-103-

those facilities, as described in Section 5.5; and

15.2.3.4 Changes in points of connection of the powerplants, and redesignations in whole or in part of the Firm Transmission Entitlement, of any Cotenant other than PGandE, as described in Sections 7.5, 7.8, 7.9 and 7.10.

15.2.4 Provide a forum for the discussion of:

15.2.4.1 Planned outages of the Line Circuits and Associated Facilities for scheduled maintenance;

15.2.4.2 Operating Emergencies on the Line Circuits and Associated Facilities as provided in Section 9.3;

15.2.4.3 PGandE's methodology, assumptions and data for establishing the New Line rating, as described in Section 4.7;

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
43 of 71

15.2.4.4 PGandE's methodology for adjusting the annual payment for the operation and maintenance charge for the Line Circuits, as described in Section 6.2;

15.2.4.5 PGandE's methodology, assumptions and data for establishing the annual ownership charge related to the Associated Facilities, as described in Section 5.4;

15.2.4.6 Information regarding easements and rights-of-way related to the New Line and Associated Facilities;

15.2.4.7 Information regarding taxes with respect to the New Line and Associated Facilities;

15.2.4.8 Transfers of interests as provided in Section 2.4 and the exercise of rights of refusal as provided in Section 2.5; and

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 44 of 71

15.2.4.9 The need for, and
desirability of, replacing the New
Line or Associated Facilities in the
event of damage or destruction, as
provided in Article 11.0, and any
termination under Article 14.0.

15.3    Consequences of Non-Unanimous Decisions. If
the Coordinating Committee does not reach an
unanimous decision as described in Section 15.2.3 as
to any action with respect to any matter described in
Sections 15.2.3.1 through 15.2.3.4, then either
Section 15.3.1 (with respect to changes in PGandE's
activities) or Section 15.3.2 (with respect to
disputes regarding Costs) shall govern such action.

15.3.1 If (i) any Cotenant(s) other than
PGandE request(s) PGandE to alter any activity
to be engaged in or proposed by PGandE with
respect to any matter described in Sections
15.2.3.1 through 15.2.3.4, and PGandE does not
agree that such activity should be performed
as requested by such Cotenant(s), or (ii) any
Cotenant(s) other than PGandE request(s)
PGandE to engage in any activity with respect
to any matter described in Sections 15.2.3.1

-106-

through 15.2.3.4, and PGandE does not agree
that activity should be performed at all (the
"Activity"), then PGandE shall engage in the
Activity upon the satisfaction of the
requirements of this Section 15.3.1. Any
other dispute with respect to any matter
described in Section 15.2.3.1 through 15.2.3.4
shall be governed by Section 15.3.2. PGandE
shall not be required to engage in the
Activity unless and until each of the
requirements contained in Sections 15.3.1.1
through 15.3.1.3 is met.

> 15.3.1.1 The requesting Cotenant or
> Cotenants must pay to PGandE the full
> Cost of the Activity as provided in
> Section 6.3. Such payment shall only
> be refundable to the extent provided
> in Sections 6.3 and 15.3.1.4.

> 15.3.1.2 PGandE must determine that
> the Activity is feasible, consistent
> with Good Utility Practice, and does
> not (i) decrease the safety, integrity
> or operability of the Line Circuits,
> Associated Facilities or any portion

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
46 of 71

of the PGandE system or the system of
any Cotenant, or (ii) impair the
health or safety of employees or the
public.

15.3.1.3  PGandE must determine that
it has, or has available to it,
sufficient resources to engage in the
Activity without substantially
impairing or interfering with its
other activities.

15.3.1.4  All disputes with respect to
the Activity shall be settled through
arbitration under Section 13.2.  The
sole and exclusive remedies with
respect to the Activity that may be
obtained by the requesting Cotenant(s)
are described in Sections 15.3.1.4.1
and 15.3.1.4.2.

> 15.3.1.4.1  If it is
> determined through any such
> arbitration that the
> performance of the Activity
> would more closely represent

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
47 of 71

the standards described in
Section 13.2.1 than would
PGandE's decision not to
engage in the Activity, then
the sole and exclusive
remedy of the requesting
Cotenant(s) with respect to
that determination shall be
a partial refund or
reduction of the amounts
paid or to be paid by it
(them) under Section
15.3.1.1. In the event of
such a determination, the
Cotenants shall share the
Costs of the Activity
allowed by the arbitration
decision in proportion to
their Ownership Interests.

15.3.1.4.2 If it is deter-
mined through any such
arbitration that PGandE's
determinations under Sec-
tions 15.3.1.2 and 15.3.1.3
do not satisfy the require-

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
48 of 71

ments of Section 16.6, then the sole and exclusive remedy of the requesting Cotenant(s) with respect to that determination shall be to require PGandE prospectively to engage in the Activity as requested by the requesting Cotenant(s). In the event of such a determination, the requesting Cotenant(s) shall pay PGandE the full Cost of the activity as provided in Section 6.3.

15.3.1.4.3  All disputes under Section 15.3.1.4.1 and 15.3.1.4.2 with respect to a given Activity must be arbitrated simultaneously or shall be waived by the requesting Cotenant(s).

15.3.2  If any Cotenant(s) other than PGandE disputes any Cost of any action with respect

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 49 of 71

to any matter described in Sections 15.2.3.1 through 15.2.3.4 for which the Cotenants other than PGandE are billed by PGandE on an actual cost basis (the "Action"), then the sole and exclusive remedy which may be obtained by the disputing Cotenant(s) with respect to the Action is described in Section 15.3.2.1. All such disputes shall be settled through arbitration under Section 13.2.

15.3.2.1 If it is determined through any such arbitration that an alternative to the Action proposed by the disputing Cotenant(s), including but not limited to the alternative of no action, more closely represents the standards described in Section 13.2.1 and would result in lower Costs (the "Cost Savings") than does PGandE's performance of the Action, then the arbitrator may require PGandE to make a partial or full refund of any amounts paid to PGandE for the Action by the Cotenants other than PGandE. The arbitrator's decision may take into consideration the existence of

-111-

determinations made by the Committee for review and
comment by each representative on said Committee.

15.6    Limitation of Authority.  The Committee shall
have no authority to modify any of the terms,
covenants or conditions of the Interconnection
Agreements or of this Cotenancy Agreement.

15.7    Change in Designated Representative.  Each
Cotenant shall notify the others promptly of any
change in the designation of its representative on
the Committee.  A Cotenant may designate an alternate
to act as its representative on the Committee in the
absence of the regular member or to act on specified
occasions with respect to specified matters.  Any
alternate representative appearing at a Committee
meeting shall be deemed to have authority to act on
behalf of the Cotenant such alternate representative
represents unless the Committee chairman is furnished
with written notice to the contrary.

15.8    Expenses of Representatives.  Any expenses
incurred by any member of the Committee in connection
with such member's duties on such Committee shall be
paid and borne by the Cotenant whom such member
represents.

-113-

16.0   General Provisions

16.1   Captions.  All titles, subject headings, and similar references in this Agreement are provided for the purpose of reference and convenience only, and are not intended to affect in any way the meaning of the contents or scope of this Agreement.

16.2   Construction of Agreement.  Ambiguities in the wording of this Agreement shall not be construed for or against any Cotenant, but shall be construed in a manner which most accurately reflects the intent of the Cotenants.

16.3   Effect on Other Contracts.  This Agreement supersedes and terminates the Sharing Agreement with respect to the contractual relationship thereunder between PGandE and any other Cotenant which executes this Agreement.  The Cotenants agree that this Agreement implements and fully satisfies the following provisions of the Interconnection Agreements:  Section 6.14 of the DWR/PGandE Comprehensive Agreement, Section 6.2.8 of the NCPA/PGandE Interconnection Agreement, and Section 6.2.10 of the Santa Clara/PGandE Interconnection Agreement.  Except to the extent that this Agreement

-114-

specifically sets forth the rights and obligations of the Cotenants with respect to the Line Circuits, Other Circuits and Associated Facilities, nothing contained in this Agreement shall be construed as affecting or altering the rights or obligations of the Cotenants contained in the Interconnection Agreements.

**16.4** ==**Regulatory Authority**.==

16.4.1 To the extent that FERC has jurisdiction over any provision of this Agreement, the Cotenants shall take all reasonable action necessary to secure the approval by FERC without change of any such provision. When PGandE submits such provisions to FERC for approval, each other Cotenant shall by separate letter to FERC support without qualification such initial filing and the acceptance and approval by FERC of such provisions without change and shall state such Cotenant's concurrence with the termination procedures provided in Section 14.6 above.

16.4.2   The Cotenants agree that Sections 5.4,
5.7 and Appendix C of this Agreement may be
subject to regulation by FERC.   Sections
16.4.2.1 through 16.4.2.3 shall apply with
respect to any such regulation by FERC.   No
other provision of this Agreement shall be
construed as an undertaking by PGandE to
provide to any other Cotenant transmission or
any other service which service is subject to
the jurisdiction of FERC.   In the event any
provision of this Agreement other than
Sections 5.4, 5.7 and Appendix C is construed
by FERC as being subject to its jurisdiction,
the Cotenants shall meet to determine whether,
in each Cotenant's sole discretion, to make
amendments to this Agreement which would
preserve the benefits of this Agreement to
each Cotenant, but which would render the
Agreement as amended outside of the jurisdic-
tion of FERC except with respect to Sections
5.4, 5.7 and Appendix C.   If the Cotenants do
not so amend this Agreement, and if FERC
retains jurisdiction over any provision of
this Agreement, then Sections 16.4.2.1 and
16.4.2.2 shall apply with respect to each such
provision.

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
54 of 71

16.4.2.1 Nothing contained in this Agreement shall be construed as affecting in any way the right of PGandE to unilaterally make application to FERC for a change in rates under Section 205 of the Federal Power Act and pursuant to FERC's rules and regulations promulgated thereunder.

16.4.2.2 Any Cotenant may unilaterally apply to FERC for changes in rates or other terms and conditions of service, to the extent subject to the jurisdiction of FERC, under Section 206 of the Federal Power Act and pursuant to FERC's rules and regulations promulgated thereunder.

16.5 Governing Law. This Agreement shall be interpreted, governed by, and construed under the laws of the State of California or the laws of the United States, as applicable, as if executed and to be performed wholly within the State of California, excluding any choice of law rules which would direct the application of the substantive law of another jurisdiction.

-117-

16.6  Judgments and Determinations.  When the terms
of this Agreement provide for an action to be made or
the existence of a condition to be established based
on the judgment or a determination of any Cotenant,
such judgment shall be exercised and such
determination shall be made consistent with good
faith and fair dealing and in accordance with Good
Utility Practice, and shall be neither arbitrary nor
capricious.

16.7  License To Install Facilities.  Provided that
PGandE as operator or its successor as operator is
either the First Cotenant or the Second Cotenant,
each Cotenant ("First Cotenant"), upon request by any
other Cotenant ("Second Cotenant") and to the extent
that its rights permit, shall give to such Second
Cotenant a license or licenses to construct, install,
operate, maintain, inspect, test, read, check,
replace and repair, upon the property of the First
Cotenant other than the New Line, such facilities as
are necessary for the exercise of rights created by
this Agreement.  The license or licenses so given
shall be in form and of legal sufficiency acceptable
to the Second Cotenant, shall be and remain in effect
during the term of this Agreement, and shall expire
coincident therewith, or for such lesser period as

-118-

may be appropriate. The Second Cotenant shall have a reasonable time after the expiration of such license or licenses in which to remove the facilities so installed or constructed.

16.8 <u>No Dedication of Facilities</u>. Except as expressly provided in this Agreement, any undertaking by one Cotenant to any other Cotenant under any provision of this Agreement is rendered strictly as an accommodation and shall not constitute the dedication of the electric system or any portion thereof by the undertaking Cotenant to the public or to any other Cotenant or any person or entity which is not a Cotenant, and it is understood and agreed that any such undertaking under any provisions of or resulting from this Agreement by any Cotenant shall cease upon the termination of such Cotenant's obligations under this Agreement.

16.9 <u>Notices</u>.

16.9.1 Any notice, demand, information, report or item otherwise required, authorized or provided for in this Agreement, shall be deemed properly given if delivered personally or sent by United States Mail, postage prepaid, to the persons specified below:

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
57 of 71

16.9.1.1

To PGandE:

Vice President, Electric Operations
Pacific Gas and Electric Company
77 Beale Street
San Francisco, California  94106

and to

Chief Generation Planning Engineer
Pacific Gas and Electric Company
77 Beale Street
San Francisco, California  94106

16.9.1.2

To CDWR:

State of California
Department of Water Resources
C/O Chief - Energy Division
P.O. Box 388
Sacramento, California  95802

16.9.1.3

To NCPA:

General Manager
Northern California Power Agency
180 Cirby Way
Roseville, California  95678

16.9.1.4

To Santa Clara:

City Manager
City of Santa Clara
1500 Warburton Avenue
Santa Clara, California  95050

16.9.2  Any Cotenant may change designation of

the person who is to receive notices on its

behalf by giving the other Cotenants notice

-120-

thereof in the manner above provided in this
Section 16.9.

16.9.3  Any notice of a routine character in
connection with service under this Agreement
or in connection with operation of facilities
shall be given in such a manner as the
Cotenants may determine from time to time,
unless otherwise provided in this Agreement.

16.10  Audits and Review of Financial Records -
Except with respect to Costs billed under Section
6.2, each Cotenant shall have the right to review the
supporting documents upon which Costs billed have
been determined.  PGandE shall cooperate with the
Cotenant to facilitate the review of the supporting
documents.  Each Cotenant shall also have the right
to conduct an audit of the related financial records.
In the event of a proposed audit, the Cotenant(s)
calling for the audit shall coordinate with PGandE to
minimize inconvenience to PGandE, and shall use
its(their) best efforts to coordinate with the other
Cotenants to reduce the number of auditors and the
frequency and duration of such audits.  The Cotenants
may conduct one joint audit every year of the Costs
billed for each project under Section 6.3.  In

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
59 of 71

addition to such joint audits, any Cotenant(s) may
initiate independent audits or a review of supporting
documents, provided such Cotenant(s) reimburses
PGandE for its administrative Costs associated with
the independent audit or document review. The
Cotenants right to review or audit supporting
documents and financial records with respect to Costs
assessed pursuant to Articles 4.0 and 5.0 shall
terminate one year after PGandE provides the final
accounting for such Costs pursuant to Sections 4.7 or
6.3.5, as appropriate.

16.11  <u>Relationship</u> <u>of</u> <u>Parties</u> - The covenants,
obligations and liability of the Cotenants are
intended to be several and not joint or joint and
several, and nothing contained in this Agreement
shall ever be construed to create an association,
joint venture, trust or partnership, or to impose a
trust or partnership obligation on or with regard to
a Cotenant.  Each Cotenant shall be individually
responsible for its own obligations as provided in
this Agreement.  No Cotenant shall be under the
control of or shall be deemed to control any other
Cotenant.

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
60 of 71

16.12  <u>Taxes</u>.

16.12.1 The Cotenants shall use their best efforts to have any taxing authority imposing any taxes or assessments on property owned or used by the Cotenants in common, or any interests or rights therein, assess and levy such taxes or assessments directly against the respective Ownership Interests of each Cotenant.

16.12.2 All taxes or assessments that are ascribable to a Cotenant's Ownership Interest shall be the sole responsibility of the Cotenant to whose Ownership Interest said taxes or assessments are levied.

16.12.3 If any property taxes or other taxes or assessments are levied or assessed in a manner other than as specified in Sections 16.12.1 and 16.12.2 above, the Cotenants shall apportion such taxes and assessments and the payment thereof in accordance with the principles of Sections 16.12.1 and 16.12.2.

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
61 of 71

16.12.4 If a property or other tax is assessed or levied against PGandE for or ascribable to property owned by any other Cotenant, then PGandE shall notify such other Cotenant of such assessment or levy and thereafter such other Cotenant shall cooperate with PGandE in contesting such assessment or levy. If PGandE is required to pay such tax, then such other Cotenant shall reimburse PGandE for the amount of such assessment.

16.12.5 The provisions of this Section 16.12 shall not be construed so as to avoid the inclusion of taxes paid by PGandE as a Cost to PGandE under this Agreement. No Cotenant other than PGandE shall be responsible for any portion of real property taxes attributable to Land Rights, except as may be provided in its payments under Sections 6.1 or 6.2.

16.13 Uncontrollable Forces. No Cotenant shall be considered to be in default in the performance of any obligation under this Agreement (other than an obligation to make payment for bills rendered pursuant to this Agreement) when a failure of performance shall be the result of uncontrollable

-124-

forces. The term "uncontrollable forces" shall mean any cause or causes beyond the control of the Cotenant unable to perform such obligation, including, but not limited to, failure of or threat of failure of facilities, flood, earthquake, storm, drought, fire, pestilence, lightning and other natural catastrophes, epidemic, war, riot, civil disturbance or disobedience, sabotage, strike, lockout, labor disturbance, labor or material shortage, government priorities and restraint by court order or public authority and action or nonaction by, or inability to obtain the necessary authorizations or approvals from any governmental agency or authority, any of which by exercise of due diligence such Cotenant could not reasonably have been expected to avoid and which by exercise of due diligence it has been unable to overcome. Nothing contained in this Section 16.13 shall be construed as requiring a Cotenant to settle any strike, lockout or labor dispute in which it may be involved, or to accept any permit, certificate or other authorization which contains conditions which such Cotenant determines in its judgment are unduly burdensome.

16.14 <u>Waiver of Rights</u>. Any waiver at any time by any Cotenant of its rights with respect to a default

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 63 of 71

under this Agreement, or with respect to any other
matter arising in connection with this Agreement,
shall not constitute or be deemed a waiver with
respect to any subsequent default or other matter
arising in connection with this Agreement.  Any delay
short of the statutory period of limitations, in
asserting or enforcing any right, shall not
constitute or be deemed a waiver.

16.15  Writings and Other Documents.  Each Cotenant
agrees to execute any writing or other document
reasonably necessary to effectuate the provisions of
this Agreement with respect to the existence or
transfer of Ownership Interests.  Upon the execution
of this Agreement by PGandE and any other Cotenant,
PGandE agrees to prepare and deliver an instrument
that confirms such Cotenant's Ownership Interest and
to attach its as-built drawings of the New Line as
evidence of the type and location of the facilities
included in such Ownership Interest.

16.16  Venue.  The Cotenants agree that the order of
signing the Agreement shall not be taken into
consideration for purposes of determining venue.

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
64 of 71

16.17  <u>Proprietary Information</u>.  Except as provided in Section 16.17.4, nothing in this Agreement shall require any Cotenant to make its proprietary information available to another Cotenant.

16.17.1 A Cotenant shall notify the Coordinating Committee when information requested by the Cotenants is considered proprietary.

16.17.2 To the extent such Cotenant releases such proprietary information in any form, the Cotenants receiving such information agree to the extent permitted by law:  (1) to treat such information as confidential; (2) not to disclose any such information they receive to any third party; and (3) not to use such information for any purpose other than the performance of this Agreement.

16.17.3 The Cotenants shall disclose such proprietary information to their consultants only to the extent that such consultants agree to be bound to the terms of this Section 16.17.

16.17.4 The Cotenants, their personnel and consultants shall have the right to examine, in the disclosing Cotenant's offices only, documents that contain such proprietary information and were produced to satisfy the other Cotenants' information request, but shall not have the right to obtain or make copies of such documents.

16.18 **Execution**. This Agreement may be executed by counterpart. This Agreement is entered into as of the date first hereinabove written.

16.19 **No Precedent**. The Cotenants agree that this Agreement reflects a unique situation and that its provisions shall not constitute a precedent with respect to any other agreement to be entered into by any Cotenant.

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
66 of 71

16.20  <u>Incorporation by Reference</u>.  Appendices A, B, and C attached hereto and as may be modified from time to time by the Cotenants are incorporated by reference into this Agreement.

PACIFIC GAS AND ELECTRIC COMPANY

By:_____

Its:_____

Date:_____

NORTHERN CALIFORNIA POWER AGENCY

By:_____
              General Manager

Date:_____

STATE OF CALIFORNIA
DEPARTMENT OF WATER RESOURCES

APPROVED AS TO LEGAL
FORM AND SUFFICIENCY:

By: _~Susan~ ~M.~ ~Weber~_____
         Chief Counsel

By: _~David~ ~Kennedy~_____
              Director

Date: __4-12-9_____

| FORM | POLICY | BUDGET |
|------|--------|--------|

Department of General Services
APPROVED
MAY 10 1990
_~signature~_
By        ELIZABETH YOST
          Chief Deputy Director

16.20  Incorporation by Reference.  Appendices A, B, and C attached hereto and as may be modified from time to time by the Cotenants are incorporated by reference into this Agreement.


PACIFIC GAS AND ELECTRIC COMPANY

By: _G. A. Mancatis_

Its: _Executive Vice President_

Date: _March 11, 1985_


NORTHERN CALIFORNIA POWER AGENCY

By: _Paul E. Swift_
General Manager

Date: _3/18/85_


STATE OF CALIFORNIA
DEPARTMENT OF WATER RESOURCES


APPROVED AS TO LEGAL
FORM AND SUFFICIENCY:


By: _____
Chief Counsel


By: _____
Director

Date: _____


-129-

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 68 of 71

ATTEST:

_J. E. Boccignone_
                  City Clerk

CITY OF SANTA CLARA

By: _W. A. Gissler_
              Mayor

Date: _3 - 22 - 85_

APPROVED AS TO FORM:

_____
              City Attorney

By: _____
              City Manager

Date: _3 - 21 - 85_

# APPENDIX A

## LOCATION OF NEW LINE, LINE CIRCUITS, AND OTHER CIRCUITS



THE GEYSERS

NEW LINE
LINE CIRCUITS
OTHER CIRCUITS

PHASE II CONSTRUCTION

1. LAKEVILLE – IGNACIO JCT DCTL (Engr. Est. 3764)
2. IGNACIO – AMERICAN CANYON JCT BUNDLING (GM 1931302)
3. AMERICAN CANYON JCT – SOBRANTE DCTL (GM 61)
4. LAKEVILLE SUBSTATION MODIFICATION (GM 1925601)

NOT TO SCALE

Case: 19-30088    Doc# 11889-2    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
70 of 71

## PRELIMINARY PAYMENT SCHEDULE  CASTLE ROCK JUNCTION – LAKEVILLE LINE
### ($1000'S)

|  | MARCH | APRIL | MAY | JUNE | JULY | AUG | SEPT | OCT | NOV | DEC | JAN | FEB | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2**<br>TOTAL SPENT BY FIRST OF MONTH | 27320 | 32463 | 34840 | 36627 | 38412 | 39898 | 41383 | 42469 | 43554 | 44154 | 44754 | 45204 | 45454 |
| FINANCIAL PERCENT COMPLETE | .60 | .71 | .77 | .81 | .85 | .88 | .91 | .93 | .96 | .97 | .98 | .99 | |
| EST. EXPENDITURE FOR MONTH | 5143 | 2377 | 1787 | 4455 | 1200 | 1200 | 800 | 800 | 600 | 600 | 450 | 250 | |
| MONTHLY PAYMENTS | | | | | | | | | | | | | |
| PGandE | 5143 | 2377 | 1787 | -2670 | 286 | 285 | 286 | 285 | 0 | 0 | 0 | 0 | 35099 |
| DWR | 0 | 0 | 0 | 2673 | 720 | 720 | 480 | 480 | 360 | 360 | 270 | 150 | 6213 |
| CITY | 0 | 0 | 0 | 974 | 262 | 262 | 175 | 175 | 131 | 131 | 98 | 55 | 2263 |
| NCPA | 0 | 0 | 0 | 808 | 218 | 218 | 145 | 145 | 109 | 109 | 82 | 45 | 1879 |

-----------------------------------------------------------------------------------------

1) PGandE pays 77.20 percent of the costs.
The other Parties pay 22.80 percent of the costs in the following proportions:
DWR:    60.00 percent
CITY:   21.85 percent
NCPA:   18.15 percent

2) Estimated costs not including contingencies.

May 21, 1984

Case: 19-30088   Doc# 11889-2   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 71 of 71