# EXHIBIT 3
# (Part 1 of 2)



**Pacific Gas and
Electric Company ™**

**Joshua S Levenberg**

*Mailing Address*
P.O. Box 7442
San Francisco, CA 94120

*Street/Courier Address*
Law Department
77 Beale Street
San Francisco, CA 94105

(415) 973-5970
Fax: (415) 973-0516
E-mail: Joshua.Levenberg@pge.com

July 30, 2019

Ms. Kimberly D. Bose, Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426

**Re:     Type of Filing Code: 10
          Amendment of the Agreement of Cotenancy in the
          Castle Rock Junction-Lakeville 230-kV Transmission Line
          PG&E Rate Schedule FERC No. 139**

Dear Ms. Bose:

In accordance with Section 205(d) of the Federal Power Act, 16 U.S.C. § 824d(d), and Section 35.13(a)(2)(iii) of the Federal Energy Regulatory Commission's ("Commission" or "FERC") regulations, 18 C.F.R. § 35.13(a)(2)(iii), Pacific Gas and Electric Company ("PG&E") submits for filing and acceptance, revisions to the Agreement of Cotenancy ("Agreement") among PG&E, the State of California Department of Water Resources ("CDWR"), the Northern California Power Agency (NCPA") and the City of Santa Clara ("CSC") (collectively, "Parties" or "Cotenants"), in PG&E Rate Schedule FERC No. 139.

**BACKGROUND**

**The Parties**

PG&E is a corporation organized under California law, and is engaged, among other things, in generating, transmitting, and distributing electric power in northern and central California. CDWR is a state agency engaged in the protection, conservation, development and management of California's water supply, including operation of the State Water Resources Development System pursuant to the laws of the State.  NCPA is a public agency engaged in the generation and transmission of electric power and energy and was created by a joint powers agreement first dated July 19, 1968, and as amended and restated January 1, 2008, entered pursuant to Chapter 5, Division 7, Title 1 of the California Government Code commencing with Section 6500.  CSC, dba Silicon Valley Power ("SVP") is a municipal electric utility that generates, purchases, sells,

transmits and distributes electric power and energy to wholesale and retail customers within the City of Santa Clara, Santa Clara County, California and elsewhere.

**The Agreement**

On June 1, 1984, the Cotenants entered into the Agreement for the express purpose of constructing and co-owning a new 230-kV double circuit transmission line ("New Line") between Castle Rock Junction and the PG&E Lakeville Substation in The Geysers area. The initial term of the Agreement extended through December 31, 2014, and thereafter the Agreement continues from year to year unless terminated. By letter dated July 30, 2018, and pursuant to Section 14.3 of the Agreement, CDWR gave one (1) year advance notice of its desire to terminate CDWR's participation in the Agreement effective August 1, 2019.

PG&E, NCPA, and CSC acknowledge but have rejected CDWR's requested withdrawal pending receipt by PG&E, NCPA, and CSC of CDWR's payment of its proportional share of reasonable estimated future removal costs. PG&E interprets the Agreement to require CDWR, as a Cotenant that desires to depart, to make a financial contribution to the remaining Cotenants that reflects its proportional share of the reasonably anticipated removal costs of the New Line. NCPA and CSC agree with PG&E that the Agreement requires CDWR, as a Cotenant that desires to depart, to make a financial contribution to the remaining Cotenants that reflects its proportional share of the reasonably anticipated removal costs, but believes such removal costs should be calculated based only on those portions of the New Line that have not been turned over to the Operational Control of the California Independent System Operator Corporation ("CAISO"). CDWR disagrees. In an effort to resolve the dispute, the Parties met on multiple occasions and discussed the terms and obligations associated with CDWR's desire to withdraw from the Agreement. No consensus was reached.

Therefore, PG&E on behalf of itself, NCPA, and CSC, proposes to revise the Agreement to timely acknowledge CDWR's desire to withdraw and their position that CDWR is obligated to pay its reasonable share of removal costs before it may withdraw. PG&E has executed and NCPA and CSC are prepared to execute Amendment No. 1 to the Agreement of Cotenancy, which details the revisions to the Agreement to reflect the status of the Parties. The Amendment is attached for the Commission's ease of reference.

**DESCRIPTION OF FILING**

The Agreement has been revised by adding the following paragraph at the end of Section 14.3:

> By letter dated July 30, 2018, and pursuant to Section 14.3 of the Agreement, CDWR gave each of the Cotenants one (1) year advance notice of its desire to terminate CDWR's participation in the Agreement, with a requested August 1, 2019 effective date for such termination. PG&E, NCPA, and Santa Clara acknowledge CDWR's request to terminate its participation in the Agreement, but have rejected CDWR's requested withdrawal from the Agreement pending receipt of CDWR's payment of its proportional share of the reasonable estimated

Ms. Kimberly D. Bose
July 30, 2019
Page 3

> *removal costs to the remaining Cotenants prior to withdrawing from the*
> *Agreement. Upon receipt of CDWR's payment, PG&E, NCPA and Santa Clara,*
> *as the remaining Cotenants, agree to terminate CDWR's participation and to file*
> *an amended agreement among the remaining Cotenants pursuant to Section 14.2*
> *of the Agreement.*

**PROPOSED EFFECTIVE DATE**

PG&E requests that the Commission accept the revisions to the Agreement, effective July 31, 2019.

**ADDITIONAL CHANGES TO THE AGREEMENTS FOR ETARIFF COMPATIBILITY**

Because Rate Schedule No. 139 has not been filed electronically and existed only in paper format, PG&E needed to convert it into electronic documents suitable for filing under FERC's eTariff requirements. As a result of converting a paper tariff into an electronic tariff that comports with the electronic filing requirements of FERC's eTariff system, PG&E has altered certain formatting elements of the Agreement and its Supplements. These formatting changes do not impinge upon or change in any way the filed tariff's currently effective rates, terms and conditions. Most notably, PG&E has opted to change the granularity of the tariff document to a section-based format, and this option has altered the tariff's text flow and pagination. These conversion-generated changes are inventoried in Attachment A, Tariff Document Change Tables.

**Table 1** lists formatting and other ministerial changes that have been applied globally across the tariff documents. These general changes can include: deletion of tariff sheet headers and footers, font changes and consolidation, repagination and text flow, installation of new page numbering, conversion of word processing footnotes to in-line text, and tariff signature block changes to accommodate electronic submittal.

**Table 2** lists formatting and ministerial changes by specific document location (*e.g.*, by section, part, other document component, etc.). These changes can include: reformatting or removal of tariff document's table of contents, shortening section titles to comply with the character limitation of associated metadata fields, view of the filed aggregation of smaller document sections into larger eTariff "sections," and format conversion of graphics and spreadsheet table elements to word processing equivalents.

*Only those changes that are a result of conforming to eTariff are reflected in Attachment A,*
*Tariff Document Change Tables; the substantive changes to the Agreement that are the subject*
*of this filing can be found in the redlined version of the tariff which is a PDF attachment to this*
*filing.*

**CONCURRENCE**

NCPA and CSC have authorized PG&E to state that each concur with this filing, and are prepared to execute the attached Amendment No. 1 to the Agreement. However, neither Party was able to execute the Amendment by the date of this filing.

Ms. Kimberly D. Bose
July 30, 2019
Page 4

**REQUEST FOR WAIVERS**

PG&E respectfully requests that the Commission grant any waivers of the Commission's rules and regulations necessary for acceptance of this filing under the Federal Power Act.

Specifically, pursuant to Section 35.11 of the Commission's regulations, 18 C.F.R. § 35.11, PG&E requests a waiver of the notice requirements set forth in Section 35.3 of the Commission's regulations, 18 C.F.R. § 35.3, to allow the Agreement as amended to become effective on July 31, 2019. This effective date is requested so that the Agreement reflects the revision to Section 14.3 of the Agreement within the one-year notice period triggered by CDWR on August 1, 2018. The Commission's granting of these waivers will not harm or inconvenience any other customer.

**NO IMPROPER EXPENSES OR COSTS**

No expenses or costs associated with this filing have been alleged or judged, in any judicial or administrative proceeding, to be illegal, duplicative or unnecessary costs that are demonstrably the product of discriminatory employment practices.

**ENCLOSURES**

1. For reference only, Amendment No. 1 to the Agreement of Cotenancy

2. Certificate of Service;

3. Attachment A: eTariff Document Change Tables

4. eTariff Electronic Filing Package containing all required Tariff Record and Content Data, metadata and the following Filing Attachments in PDF for posting to eLibrary:

   a. Clean version of the revised Agreement of Cotenancy;

   b. Redline version of the revised Agreement of Cotenancy;

   c. Supporting documents required pursuant to Section 35.13 of the Commission's regulations.

**SERVICE**

Copies of this filing have been served upon DWR, NCPA, CSC, the CAISO, and the California Public Utilities Commission. In addition, copies of this filing are available for public inspection in a convenient form and place during normal business hours at PG&E's General Office, located at 77 Beale Street in San Francisco, California.

Ms. Kimberly D. Bose
July 30, 2019
Page 5

## CORRESPONDENCE

PG&E requests that all correspondence, pleadings, and other communications concerning this filing be served upon the following:

Joshua S Levenberg
Attorney
Pacific Gas and Electric Company
Law Department
Post Office Box 7442
San Francisco, California 94120
Joshua.Levenberg@pge.com


Joanne M. Myers
Manager
FERC Electric Proceedings Department
Pacific Gas and Electric Company
77 Beale Street, Room 2393, MC B23A
San Francisco, California 94105
Joanne.Myers@pge.com

and

Pacific Gas and Electric Company
Regulatory File Room, B30A
77 Beale Street, Room 3120
San Francisco, CA  94105
LawFercCases@pge.com

Ms. Kimberly D. Bose
July 30, 2019
Page 6

**CONCLUSION**

PG&E respectfully requests that the Commission accept this filing and make it effective as requested above.

Respectfully submitted,

  /s/ *Joshua S Levenberg*

  Joshua S Levenberg
  Attorney for
  PACIFIC GAS AND ELECTRIC COMPANY
  P.O. Box 7442
  San Francisco, California 94120-7442
  Telephone: (415) 973-5970

Attachments and Enclosures

Amendment No. 1
to the Agreement of Cotenancy
in the
Castle Rock Junction-Lakeville 230-kV
Transmission Line
Among
Pacific Gas and Electric Company
State of California
Department of Water Resources
Northern California Power Agency
City of Santa Clara

1.    This Amendment No. 1 ("Amendment") is made between THE NORTHERN CALIFORNIA POWER AGENCY ("NCPA"), THE CITY OF SANTA CLARA ("SANTA CLARA"), and PACIFIC GAS AND ELECTRIC COMPANY ("PG&E")(the "Cotenants" or, individually, a "Cotenant") to modify certain terms and provisions of the Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230-kV Transmission Line Among Pacific Gas and Electric Company, the State of California Department of Water Resources ("CDWR"), the Northern California Power Agency, and the City of Santa Clara ("Agreement"). The Agreement was filed on October 25, 1991, amended on April 17, 1992, and accepted on May 20, 1992 in Docket No. ER92-133-000 by the Federal Energy Regulatory Commission ("FERC") as Rate Schedule No. 139.

2.    <u>RECITALS</u>: This Amendment is made with reference to the following facts, among

others:

2.1    PG&E is a corporation organized under California law, and is engaged, among other things, in generating, transmitting, and distributing electric power in northern and central California; and

2.2    CDWR is a state agency engaged in the protection, conservation, development and management of California's water supply, including operation of the State Water Resources Development System pursuant to the laws of the State, and

2.3    NCPA is a public agency engaged in the generation and transmission of electric power and energy and was created by a joint powers agreement first dated July 19, 1968, and as amended and restated January 1, 2008, entered pursuant to Chapter 5, Division 7, Title 1 of the California Government Code commencing with Section 6500; and

2.4    Santa Clara dba Silicon Valley Power ("SVP") is a municipal electric utility that generates, purchases, sells, transmits and distributes electric power and energy to wholesale and retail customers within the City of Santa Clara, Santa Clara County, California and elsewhere; and

2.5    On June 1, 1984, the Cotenants entered into the Agreement for the express purpose of constructing and co-owning a new 230-kV double circuit transmission line ("New Line") between Castle Rock Junction and the PG&E Lakeville Substation in The Geysers area; and

2.6    The initial term of the Agreement extended through December 31, 2014, and from thereafter the Agreement continues from year to year unless terminated; and

2.7    By letter dated July 30, 2018, and pursuant to Section 14.3 of the Agreement, CDWR gave one (1) year advance notice of its desire to terminate CDWR's participation in the Agreement effective August 1, 2019.

3.    <u>AGREEMENT:</u> The Cotenants agree as follows:

3.1    Upon the filing of this Amendment, PG&E, NCPA, and Santa Clara acknowledge CDWR's request to terminate its participation in the Agreement, but reject CDWR's requested withdrawal from the Agreement pending receipt of CDWR's payment of its proportional share of the reasonable estimated removal costs to the remaining Cotenants prior to withdrawing from the Agreement. Upon receipt of CDWR's payment, PG&E, NCPA and Santa Clara, as the remaining Cotenants, agree to terminate CDWR's participation and to file an amended agreement among the remaining Cotenants pursuant to Section 14.2 of the Agreement.

4.     EFFECTIVE DATE:

   4.1     This Amendment shall become effective when fully executed by NCPA, Santa
           Clara, and PG&E.

   4.2     The effective date of the amended Agreement shall be 0000 hours of July 31,
           2019, or the date on which FERC accepts this Amendment for filing and permits
           it to be placed into effect without material change or material new condition
           unacceptable to any Party, whichever is later.

5.     AMENDMENTS:

   5.1     The Cotenants agree to amend the Agreement as follows:

       5.1.1    Section 14.3 of the Agreement has been revised to read as follows:

*Any Cotenant may, by giving one (1) year advance written notice to the other Cotenants,
terminate its participation in this Agreement effective no earlier than January 1, 2015.*

*By letter dated July 30, 2018, and pursuant to Section 14.3 of the Agreement, CDWR
gave each of the Cotenants one (1) year advance notice of its desire to terminate CDWR's
participation in the Agreement, with a requested August 1, 2019 effective date for such
termination.  PG&E, NCPA, and Santa Clara acknowledge CDWR's request to terminate its
participation in the Agreement, but have rejected CDWR's requested withdrawal from the
Agreement pending receipt of CDWR's payment of its proportional share of the reasonable
estimated removal costs to the remaining Cotenants prior to withdrawing from the
Agreement.  Upon receipt of CDWR's payment, PG&E, NCPA and Santa Clara, as the
remaining Cotenants, agree to terminate CDWR's participation and to file an amended
agreement among the remaining Cotenants pursuant to Section 14.2 of the Agreement.*

6.     EFFECT ON AGREEMENTS:  Except as specifically modified herein, no other
       provision in the Agreement is intended to be modified, and the Agreement, as amended,
       shall remain in full force and effect in its entirety. This Amendment shall not impact,
       prejudice, or waive any Party's rights or obligations under the Agreement for the period

either prior to the effective date of this Amendment or following the termination thereof, and no precedent for further amendments to the Agreement is hereby intended.

7. <u>COUNTERPARTS</u>:  This Amendment may be executed in counterparts, and each counterpart shall for all purposes be an original, and all such counterparts shall together constitute one and the same Amendment.

8.     <u>SIGNATURE CLAUSE:</u>  The signatories hereto represent that they have been

appropriately authorized to enter into this Amendment on behalf of their respective Party.

This Amendment to the Agreement is executed as of the ___29th___ day of, July, 2019.


| **Pacific Gas and Electric Company** | **Northern California Power Agency** |
|---|---|
| By: */s/ David Gabbard* | By: |
| Print: Dave Gabbard | Print: |
| Title: Sr. Director, Transmission Asset Management | Title: |
| Date: 7/29/2019 | Date: |


**City of Santa Clara dba Silicon Valley Power**

By: _____

Print: _____

Title: _____

Date: _____

## CERTIFICATE OF SERVICE

I hereby caused the foregoing document to be served upon the following, pursuant to 18 C.F.R. § 385.2010 of the Commission's Rules.

| NAME | ORGANIZATION / ADDRESS | E-MAIL ADDRESS |
|---|---|---|
| Masoud Shafa<br>Chief<br>Transmission Planning Branch | SWP Power and Risk Office<br>2135 Butano Drive<br>Sacramento, CA 95825 | Masoud.Shafa@water.ca.gov |
| Deanna Santana<br>City Manager | City of Santa Clara<br>1500 Warburton Avenue<br>Santa Clara, CA 95050 | DSantana@SantaClaraCA.gov |
| Manuel Pineda<br>Chief Electric Utility Officer | City of Santa Clara<br>1500 Warburton Avenue<br>Santa Clara, CA 95050 | mpineda@santaclaraca.gov |
| Randy Howard<br>General Manager | Northern California Power Agency<br>651 Commerce Drive<br>Roseville, CA 95678 | Randy.Howard@ncpa.com |
| Jane Luckhardt<br>General Counsel | Northern California Power Agency<br>651 Commerce Drive<br>Roseville, CA 95678 | Jane.Luckhardt@ncpa.com |
| Tony Zimmer<br>Assistant General Manager,<br>Power Management | Northern California Power Agency<br>651 Commerce Drive<br>Roseville, CA 95678 | Tony.Zimmer@ncpa.com |
| Anish Nand<br>Engineer | Northern California Power Agency<br>651 Commerce Drive<br>Roseville, CA 95678 | Anish.Nand@ncpa.com |
| Christine J. Hammond<br>Assistant General Counsel | California Public Utilities Commission<br>505 Van Ness Avenue<br>San Francisco, CA  94203 | christine.hammond@cpuc.ca.gov |
| Anthony Ivancovich<br>Deputy General Counsel | California Independent System Operator Corporation<br>250 Outcropping Way<br>Folsom, CA  95630 | aivancovich@caiso.com |

Dated at San Francisco, California, this 30th day of July, 2019.

> _/s/ Joanne M. Myers_
> Joanne M. Myers
> PACIFIC GAS AND ELECTRIC COMPANY
> 77 Beale Street, Room B23A, Room 2393
> San Francisco, CA 94105
> (415) 973-3397
> Joanne.Myers@pge.com

**ATTACHMENT A: ETARIFF DOCUMENT CHANGE TABLES**

Tariff Title: PG&E Rate Schedule FERC No. 139

**Table 1: Global/General Tariff Document Changes**

| Item | Description of Global Change |
|------|------------------------------|
| 1 | Order No. 614 designations have been removed. |
| 2 | Font, paragraph text flow, and pagination changed to accommodate section-based granularity. |
| 3 | Font, paragraph text flow, and pagination changed to accommodate eTariff software. |
| 4 | Some Section Numbers are no longer inline with text. |
| 5 | Stamps containing the date and pagination have been removed. |
| 6 | Footnotes have been updated so that they appear inline with text or are located close to the referenced language. |
| 7 | Headers and footers from original document have been removed. |

**Table 2: Specific Document Changes**

| Location | Description of Change |
|----------|------------------------|
| Table of Contents | Table of Contents has been removed. |
| Tariff Title Page | Section title shortened/truncated |
| Section 4 | Section title shortened/truncated |
| Section 5 | Section title shortened/truncated |
| Appendix B | Section title shortened/truncated |
| Supplement No. 1, Attachment 3b | Section title shortened to "Estimated Interest Calculations to 8-31-1991: DWR, CSC, NCPA" |
| Supplement No. 3, Attachment 5a | Section title shortened to "Estimated Interest Calculations to 8-31-1991: DWR Annual Chg" |

# Agreement of Cotenancy

# in the

# Castle Rock Junction-Lakeville 230-kV

# Transmission Line

# among

## Pacific Gas and Electric Company

## State of California Department of Water Resources

## Northern California Power Agency

## City of Santa Clara

## June 1, 1984

## PG&E Rate Schedule FERC No. 139

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

THIS AGREEMENT OF COTENANCY IN THE CASTLE ROCK JUNCTION-LAKEVILLE 230-kV TRANSMISSION LINE is entered into as of the 1st day of June, 1984, by and between Pacific Gas and Electric Company (PGandE), the State of California Department of Water Resources (CDWR), the Northern California Power Agency (NCPA) and the City of Santa Clara (Santa Clara), (Cotenant or Cotenants), and is as follows:

**Recitals**

PGandE is presently constructing on behalf of the Cotenants a 230-kV double circuit transmission line (New Line) between Castle Rock Junction and its Lakeville Substation in The Geysers area.

PGandE has entered into separate Interconnection Agreements with each of CDWR, NCPA, and Santa Clara which conferred upon those Cotenants a right to participate in the ownership of the New Line as tenants-in-common and such Cotenants have exercised such rights.

The Cotenants have entered into the Sharing Agreement to allow the Cotenants other than PGandE to commence payment of their respective shares of the Cost of the New Line and to make contributions-in-aid-of-construction for the Associated Facilities in proportion to their Ownership Interests.

The Cotenants desire to set forth their rights and obligations as tenants-in-common of the New Line and for the use, operation and maintenance of the New Line, Associated Facilities, and Land Rights.

The Cotenants intend this Agreement to supercede the Sharing Agreement.

**1.0    Definitions**

The following terms, when used in this Agreement with initial capitalization whether in the singular or plural, shall have the following meanings.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**1.1 Addition and Betterment**

A capital improvement, the primary aim of which is to make the property affected more useful, more efficient, of greater durability or of greater capacity.

**1.2 Associated Facilities**

Equipment and facilities that are not a part of the New Line as such but which are installed in order to integrate it with PGandE's system.

**1.3 CEC**

California Energy Commission or its successor agency.

**1.4 CPUC**

California Public Utilities Commission or its successor agency.

**1.5 Capital Replacement**

A retirement unit that is substituted for another such retirement unit, as the term "retirement unit" is defined in the Federal Energy Regulatory Commission List of Retirement Units for Use in Connection with Uniform System of Accounts Prescribed for Public Utilities and Licenses, or its successor document.

**1.6 Coordinating Committee**

The Committee formed pursuant to Article 15.0.

**1.7 Cost**

The costs of the appropriate Cotenant associated with the Line Circuits and Associated Facilities including, but not limited to: all capital expenditures, expenses of operation, maintenance, administrative and general expenses, taxes, an allocation of fixed charges on general plant and common utility plant, labor and payroll taxes, materials and supplies, transportation, stores and tool expenses, supervision and overheads, depreciation, an allowance for workers' compensation,

and public liability and property damage insurance, as determined by PGandE in accordance with the FERC Uniform System of Accounts as may be amended or superseded from time to time. The appropriate components of costs, as defined herein, shall be applied for the particular service or transaction performed. The factor for determining PGandE's cost of capital shall be equal to the rate of return on investment base as most recently allowed by the FERC. The factor for determining the cost of capital for a Cotenant other than PGandE shall be equal to the rate of interest payable by such Cotenant with respect to its most recent issue of debt securities having a maturity of no less than five (5) years, taking into consideration any original issue discount. No rate of return shall be included in any charge assessed on the portion of any facilities to the extent such facilities are financed by one or more contributions-in-aid-of-construction.

**1.8    Cotenant**

CDWR, NCPA, PGandE, Santa Clara and any transferee that becomes a Cotenant under Section 2.4.3.

**1.9    FERC**

Federal Energy Regulatory Commission or its successor agency.

**1.10    Firm Transmission Entitlement**

The firm entitlement of a Cotenant to the use of transmission capacity on a Line Circuit or Other Circuit or combination thereof as provided in Section 7.1.

**1.11    Good Utility Practice**

1.11.1  With respect to actions or inactions by any Cotenant other than CDWR, those practices, methods and equipment, including levels of reserves and provisions for contingencies, as modified from time to time, that are at least as good as those commonly used in the Service Area to operate, reliably and safely, electric power facilities to serve a utility's own customers dependably and

economically, with due regard for the conservation of natural resources and the protection of the environment of the Service Area; provided, that such practices, methods and equipment are not unreasonably restrictive.

1.11.2  With respect to action or inactions by CDWR, the then current practices, methods and equipment generally used by electric utilities, which operate primarily in the State of California, for the purpose of providing economic, safe and reliable service to their own customers, with due regard for the conservation of natural resources and the protection of the environment.

## 1.12    Interconnection Agreements

The Comprehensive Agreement between the State of California Department of Water Resources and PGandE executed April 22, 1982, the Interconnection Agreement between PGandE and the City of Santa Clara effective October 27, 1983, the Interconnection Agreement between PGandE and the Northern California Power Agency, City of Alameda, City of Biggs, City of Gridley, City of Healdsburg, City of Lodi, City of Lompoc, City of Palo Alto, City of Roseville, City of Ukiah and Plumas Sierra Rural Electric Cooperative effective September 14, 1983, and any interconnection agreement between PGandE and another entity that becomes a Cotenant, as such agreements may be amended from time to time.

## 1.13    Lakeville-Sobrante 230-kV Line

For purposes of Article 8.0, that 230-kV transmission line and associated facilities included in "Phase II Construction" as shown in Appendix A.

## 1.14    Land Rights

All rights, including easements, rights-of-way, or fee title in real property necessary for the construction, use, operation, and maintenance of the New Line, and the Associated Facilities.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**1.15   Line Circuit**

Either Line Circuit No. 1 or Line Circuit No. 2.

**1.16   Line Circuit No. 1**

The three-phase, 230-kV circuit shown in Appendix A that, as of the initial operation date of the New Line, serves PGandE's Geysers Unit No. 14.

**1.17   Line Circuit No. 2**

The three-phase, 230-kV circuit shown in Appendix A that, as of the initial operation date of the New Line, serves PGandE's Geysers Unit No. 9.

**1.18   New Line**

The double-circuit, 230-kv transmission line now being constructed between PGandE's tower No. 0/1 at Castle Rock Junction in The Geysers area and the circuit breaker structure at Lakeville Substation shown in Appendix A. The facilities include tower No. 0/1 at Castle Rock Junction, the overhead line with bundled 2300-kcm aluminum conductors, the associated pipe-type underground circuits with 3500-kcm aluminum cables, all conductors, towers, related hardware and any Capital Replacements and Additions and Betterments thereto, but exclude the circuit breaker structure at Lakeville Substation and any Land Rights. The New Line constitutes a portion of the Line Circuits, as shown in Appendix A.

**1.19   Operating Emergency**

An unplanned event, series of events, or circumstance, which requires the taking of immediate action (i) to preserve, maintain, or reestablish the safety, integrity, or operability of the Line Circuits, Other Circuits, or Associated Facilities or the facilities of any Cotenant interconnected with the Line Circuits, Other Circuits, or Associated Facilities; (ii) to protect the health or safety of employees or the public; or (iii) to prevent or minimize any significant adverse environmental effects.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**1.20    Other Circuit**

Either Other Circuit No. 1 or Other Circuit No. 2, or any future 230-kV
transmission circuit other than the Line Circuits, which circuit is operated by
PGandE in The Geysers area and interconnects with PGandE's backbone
transmission system.

**1.21    Other Circuit No. 1**

The three-phase, 230-kV circuit shown in Appendix A that, as of the initial
operation date of the New Line connects PGandE's Geysers Unit No. 5 with
PGandE's Fulton Substation.

**1.22    Other Circuit No. 2**

The three-phase, 230-kV circuit shown in Appendix A that, as of the initial
operation date of the New Line, connects PGandE's Geysers Unit No. 17 with
PGandE's Fulton Substation.

**1.23    Ownership Interest**

A Cotenant's ownership share in the New Line as provided and adjusted in
Section 2.2.

**1.24    Service Area**

That area within the exterior geographic boundaries of the several areas
electrically served at retail, now or in the future, by PGandE, and those areas in
northern and central California adjacent thereto.

**1.25    Sharing Agreement**

The Agreement for Sharing of Costs for Construction of the Castle Rock
Junction-Lakeville 230-kV Transmission Line and Associated Facilities, executed
as of May 21, 1984 by PGandE, CDWR, NCPA and Santa Clara.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**1.26    Willful Action**

Willful action as defined in Section 12.6.

**2.0    Ownership Interests**

**2.1    Undivided Interests**

Each Cotenant owns an undivided interest in the New Line as a tenant-in-common as provided in this Article 2.0. Cotenants other than PGandE shall have no ownership in the Associated Facilities or the Land Rights; provided, however, that unless and until its Ownership Interest is terminated as provided in this Agreement each Cotenant shall have such rights to the benefit of the Land Rights and such rights to use the Associated Facilities as may be necessary to make use of its Firm Transmission Entitlement, pursuant to this Agreement.

**2.2    Initial Ownership Interests and Subsequent Adjustments**

The initial rating of the New Line is 1,206 MW with each Line Circuit rated at 603 MW. The initial Ownership Interest of each Cotenant is as follows, subject to adjustment as provided in this Section 2.2:

|              | Ownership Interests | |
|--------------|-------------|-----------|
|              | (Megawatts) | (Percent) |
| CDWR-        | 165.0       | 13.68     |
| NCPA-        | 49.9        | 4.14      |
| PGandE-      | 931.0       | 77.20     |
| Santa Clara- | 60.1        | 4.98      |
| Total        | 1206.0      | 100.00    |

2.2.1    The Ownership Interests shall be determined as follows:

2.2.1.1        For PGandE, the Ownership Interest in megawatts is equivalent to the capacity rating of the New Line minus the

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

sum of the Ownership Interests in megawatts of the Cotenants other than PGandE.

2.2.1.2    Ownership Interests in percent are determined for each Cotenant by the following equation:

$$\text{Ownership Interest in Percent} \quad = \quad \frac{100 \times \text{Ownership Interest in MW}}{\text{Capacity Rating of New Line}} \quad \%$$

2.2.2    Ownership Interests shall be adjusted as provided in this Section 2.2.2. For purposes of payment under Article 5.0, adjustments of Ownership Interests shall be deemed to take effect on the first day of the calendar month in which the transaction or change specified in this Section 2.2.2 takes place.

2.2.2.1    Within sixty (60) calendar days of executing this Agreement, a Cotenant may terminate its participation if unsatisfied regarding the quality of PGandE's title to the Land Rights pursuant to Section 3.2. In that case, the Ownership Interest of the terminating Cotenant shall revert to PGandE, and PGandE's Ownership Interest in megawatts and percent shall increase accordingly. The Ownership Interests of the other Cotenants that remain parties to this Agreement shall not change under this Section 2.2.2.1.

2.2.2.2    After this Agreement is executed, any Cotenant may divest itself of part or all of its Ownership Interest upon satisfaction of the standards described in Section 2.4.3. The selling Cotenant thereby reduces or eliminates its Ownership Interest in megawatts and percent, and transfers a corresponding Ownership Interest to a new or existing Cotenant. The Ownership Interests of the Cotenants that do

**PACIFIC GAS AND ELECTRIC COMPANY**
Rate Schedule FERC No. 139

not participate in this transfer shall not change under this Section 2.2.2.2.

2.2.2.3    Following the first two (2) years of operation of the New Line and the monitoring thereof by PGandE as operator, the capacity rating of the New Line shall be adjusted pursuant to Section 4.7. At that time, PGandE's Ownership Interest in megawatts shall change in an amount equal to such adjustment in the capacity rating. The Ownership Interest in megawatts of the other Cotenants shall not be changed. If the capacity rating of the New Line increases, PGandE's Ownership Interest in megawatts and in percent shall increase, and the other Cotenants' Ownership Interests in percent shall decrease. If the capacity rating of the New Line decreases, PGandE's Ownership Interest in megawatts and in percent shall decrease, and the other Cotenants' Ownership Interests in percent shall increase.

2.2.2.4    If Additions and Betterments that increase the capacity rating of the New Line are made pursuant to Article 10.0, the Ownership Interests of the Cotenants may change. For the Cotenants that participate in such Additions and Betterments, each of their Ownership Interests in megawatts shall increase to the extent of such participation; their Ownership Interests in percent may change accordingly on the basis of the new capacity rating of the New Line after the Additions and Betterments become operational. For the Cotenants that do not so participate, each of their Ownership Interests in megawatts shall not be changed, while their Ownership Interests in percent shall decrease accordingly.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

2.2.2.5      If a Cotenant elects to terminate its participation in this Agreement pursuant to Articles 11.0 and/or 14.0, the Ownership Interests in megawatts and in percent of the non-terminating Cotenants shall increase for those which elect to receive the Ownership Interest transferred by the terminating Cotenant. The Cotenants which receive no transferred Ownership Interest from the terminating Cotenant shall have no change in their Ownership Interests.

2.2.3   After notice to it of facts requiring a change in any Ownership Interest under this Section 2.2, PGandE shall calculate the adjusted Ownership Interests as necessary and notify the other Cotenants of the changes.

### 2.3   Waiver of Partition Rights

The Cotenants waive the right to partition the New Line.

### 2.4   Transfer of Ownership Interests

Ownership Interests shall be transferrable as follows:

2.4.1   A Cotenant may mortgage or transfer security interests in its Ownership Interest without the consent of the other Cotenants and without the lienholder becoming liable under this Agreement.

2.4.2   To the extent not prohibited or restricted by law, including but not limited to any prohibitions or restrictions contained in any document conveying a real property interest necessary to the construction or use of the Line Circuits or Associated Facilities, a Cotenant may, subject to Section 2.5, sell, assign, or transfer its Ownership Interest or the use of that interest, provided (i) the transaction does not substantially impair the non-transferring Cotenants' rights under this Agreement; and (ii) the transferee agrees in writing prior to or concurrently with its agreement to such transaction that it shall not use PGandE's transmission system other than

the Line Circuits, Other Circuits, or Associated Facilities, as such use is authorized in this Agreement, except to the extent it is entitled to such use under a contract with PGandE or an enforceable judgment or order by a court, regulatory commission or other body of competent jurisdiction. The transferring Cotenant must notify any transferee that transmission service may not be available from PGandE beyond Lakeville or Fulton Substations, as applicable.

2.4.3     All sellers, assignors, or transferors, including those under foreclosure, shall remain liable under this Agreement except to the extent that: (i) the transfer is a complete divestiture in perpetuity of all of the rights and obligations associated with the Ownership Interest in megawatts that is being transferred; (ii) the transferee is a financially responsible entity in the judgment of the non-transferring Cotenants which judgment shall be reasonably exercised; and (iii) the transferee assumes in writing all obligations associated with the Ownership Interest in megawatts that is being transferred. If all standards described in this Section 2.4.3 are met, such transferee shall be a Cotenant.

2.4.4     A Cotenant shall notify the members of the Coordinating Committee of the particulars of any agreement under Section 2.4.2, except agreements subject to Section 2.5, within fourteen (14) calendar days after entering into such agreement or, if CDWR is the transferring Cotenant, within fourteen (14) calendar days after approval of the Agreement by the California Department of General Services. Such Cotenant shall inform PGandE's operating center by telephone or otherwise of such agreement before it becomes effective. The procedure for notifying the Cotenants regarding agreements subject to Section 2.5 shall be in accordance with Section 2.5.6.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**2.5    Rights of Refusal**

To the extent not prohibited or restricted by law and to the extent the transaction is other than for services lasting no more than one (1) year, including all renewals and extensions with respect to substantially similar services, and involves (i) solely transmission service, or (ii) transmission capacity in excess of that reasonably necessary to transmit any power that may be generated under the rights transferred as part of the transaction, then:

2.5.1    The entire transaction shall be subject to a first right of refusal by the non-transferring Cotenants to purchase or acquire the rights to be transferred at substantially the same price and under substantially the same terms or, at the election of the exercising Cotenant, under substantially more favorable terms, as those contained in a bona fide offer by another entity, including another Cotenant, which the transferring Cotenant proposes to accept. After submission of such bona fide offer to the non-transferring Cotenants for their review and until the procedures described in Section 2.5.6 are complete or until such submission is withdrawn prior to the exercise of any right of refusal under this Section 2.5, the transferring Cotenant shall have no right to accept another offer with respect to the rights to be transferred. Said first right of refusal shall be exercisable in proportion to the Ownership Interests of the exercising Cotenants, in the ratio such Ownership Interests bear to the total Ownership Interests of all non-transferring Cotenants.

2.5.2    In the event that the transferor is a Cotenant other than PGandE and any Cotenant elects not to exercise its right of first refusal under Section 2.5.1, then PGandE shall have the right of refusal to purchase or acquire the rights which were the subject of such election.

2.5.3    In the event the transferor is PGandE and any Cotenant elects not to exercise its right of first refusal under Section 2.5.1, then the remaining non-transferring Cotenants shall have the right of refusal to purchase or

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

acquire in proportion to the Ownership Interests of such Cotenants in the ratio such Ownership Interests bear to the total Ownership Interests of said remaining, non-transferring Cotenant, or as otherwise agreed by the remaining non-transferring Cotenants, the rights which were the subject of such election.

2.5.4    In the event any Cotenant elects not to exercise its right of refusal under Section 2.5.2 or 2.5.3, then the remaining non-transferring Cotenants shall have the right of refusal to purchase or acquire in proportion to the Ownership Interests of such Cotenants in the ratio such Ownership Interests bear to the total Ownership Interests of said remaining, non-transferring Cotenants, or as otherwise agreed by the remaining non-transferring Cotenants, the rights which were the subject of such election. If any Cotenant fails to exercise its right of refusal under this Section 2.5.4, then the remaining non-transferring Cotenants must mutually agree to purchase or acquire all of the rights which were the subject of such election or they shall be deemed to have waived all rights of refusal with respect to the transaction in question.

2.5.5    In exercising the rights of refusal described in this Section 2.5, each Cotenant agrees not to assert any preference which may otherwise be available to it over another Cotenant.

2.5.6    The transferring Cotenant shall provide written notice and deliver a complete copy of the agreement it proposes to enter into to each other Cotenant on the same working day ("Delivery Date"). Exercise of the rights described in this Section 2.5 shall be as follows: No later than thirty (30) calendar days after the Delivery Date, or, if not a working day, no later than the first working day thereafter, each Cotenant shall meet with or otherwise communicate its decision pursuant to Section 2.5.1 to the other Cotenants, and shall confirm such decisions in writing to the other Cotenants thereafter. No later than thirty-seven (37) calendar days after

the Delivery Date, or, if not a working day, no later than the first working day thereafter, the Cotenants shall meet or otherwise communicate to the other Cotenants their decisions with regard to any right of refusal described in Sections 2.5.2 and 2.5.3. Such decisions shall be confirmed in writing to the other Cotenants thereafter. No later than forty-four (44) calendar days after the Delivery Date, or, if not a working day, no later than the first working day thereafter, the Cotenants shall meet or otherwise communicate to the other Cotenants their decisions with regard to any right of refusal described in Section 2.5.4, or reach the mutual agreement described in the second sentence of Section 2.5.4, and meet or otherwise communicate to the other Cotenants their agreement. Such decisions or agreement shall be confirmed in writing to the other Cotenants thereafter. Failure by any Cotenant to communicate any decision or agreement as provided in this Section 2.5.6 shall be a waiver of all rights of refusal held by such Cotenant under this Section 2.5 with respect to the rights to be transferred.

2.5.7    In exercising any right of refusal described in this Section 2.5, the exercising Cotenant must either exercise that right of refusal with respect to all of the rights available to it, or it shall be deemed to have waived all of its rights of refusal with respect to the transaction in question.

2.5.8    The transferring Cotenant shall deliver to the other Cotenants a copy of any agreement entered into by it which was subject to this Section 2.5.

**2.6    Abandonment**

No Cotenant shall be relieved of its obligations under this Agreement by abandoning its interest.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**3.0     Land Rights**

**3.1     Land Rights Acquired by PGandE**

PGandE has acquired Land Rights necessary for the Cotenants to make use of their Firm Transmission Entitlement as provided in Section 2.1.

**3.2     Creation and Acquisition of Land Rights**

PGandE's creation, acquisition, and agreement to give the other Cotenants the benefit of the Land Rights are without warranty or guarantee of any kind. Each other Cotenant shall satisfy itself in advance as to the quality of the title and its sole remedy, if dissatisfied, is either to terminate its participation in this Agreement or to pursue changes to such title, provided, however, that PGandE shall exercise its best efforts to secure and maintain such Land Rights as may be necessary to enable PGandE, CDWR, NCPA, and Santa Clara to use their Firm Transmission Entitlements. PGandE has reviewed the easement documents and it is PGandE's good faith judgment that there are no restrictions which would prevent CDWR, NCPA or Santa Clara from receiving the benefits of the Land Rights as provided in Section 2.1, but that there may be restrictions with respect to transfers to some other entities of the right to receive the benefits of the Land Rights.

3.2.1     The right of termination under this Section 3.2 is only held by CDWR, NCPA and Santa Clara, and will cease sixty (60) calendar days after the first execution of this Agreement by any such Cotenant, and if not exercised, that Cotenant shall be deemed satisfied as to such title.

3.2.2     In the event of any termination under this Section 3.2, each Cotenant whose participation in this Agreement is terminated shall, in consideration of the refund described in Section 3.2.3, transfer the interests and rights it holds in the New Line, Associated Facilities and Land Rights to PGandE immediately upon the effectiveness of such termination. Such transfer shall not be subject to Section 2.5.

3.2.3  In the event of any such termination, PGandE shall refund to that Cotenant any amounts theretofore received from the terminating Cotenant with respect to the Associated Facilities and the New Line, and Ownership Interests as specified in Section 2.2 shall be adjusted as appropriate. Such refund shall be made with interest calculated as defined in Section 6.6 from the date each payment was made under Section 4.2 to the date the refund is made.

## 3.3    Release of Lien

PGandE shall use its best efforts to obtain a release of any lien that might have been created by its First and Refunding Mortgage, dated December 1, 1920, as amended and supplemented, with respect to the Ownership Interests of any other Cotenant, if appropriate.

## 4.0    Sharing Initial Construction Costs of the New Line and Associated Facilities

### 4.1    Initial Cost Estimate for the New Line

PGandE currently estimates that the initial construction Cost of the New Line will be approximately $45,500,000, excluding Costs of the Land Rights and Associated Facilities. PGandE shall revise this estimate from time to time as appears appropriate.

### 4.2    Cost-Sharing for the New Line

Subject to Sections 4.6 and 4.7, PGandE's share of the estimated initial construction Cost of the New Line is 77.2 percent, and the other Cotenants' shares total 22.8 percent. Payments shall be made monthly according to the schedule in Appendix B, with payments to cover the expected expenditures to be incurred in the pertinent month. Payments by check or wire transfer shall be received by PGandE not later than the first day of each month. If payments are not received in time, the provisions of Sections 4.11 and 6.4 apply. PGandE shall reconcile the payment schedule with the actual expenditures as soon as practicable after the

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

receipt of such actual Cost information. PGandE shall make appropriate revisions in the schedule of payments so that the payment schedule will as much as practicable reflect the actual amounts of money required by PGandE as such money is expended.

### 4.3    Payment for the Associated Facilities

Cotenants other than PGandE shall bear a share of construction Costs of the Associated Facilities, in proportion to their Ownership Interests, by making payments to PGandE as contributions-in-aid-of-construction, and shall have the right to use such Associated Facilities as provided in Section 2.1 without additional charge other than as provided in Section 5.4.

### 4.4    Cost-Sharing for the Associated Facilities

PGandE presently estimates that the initial construction Costs of the Associated Facilities will be approximately $2,381,700. PGandE shall revise this estimate from time to time as appears appropriate. Subject to Section 4.7, the Cotenants agree to share these Costs on the basis of the Cotenants' initial Ownership Interests as stated above in Section 2.2. Thus, the contributions of Cotenants other than PGandE were:

| | |
|---|---|
| CDWR- | $325,817 |
| Santa Clara- | 118,609 |
| NCPA- | 98,602 |

### 4.5    Payments Made for the Associated Facilities

The contributions-in-aid-of-construction in the amounts specified in Section 4.4 were paid to PGandE on June 1, 1984.

### 4.6    Preliminary Accounting

PGandE shall, subsequent to completion of the New Line and Associated Facilities, provide the other Cotenants a preliminary accounting of the actual

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

Costs thereof to bring the payments in line with the initial Ownership Interest defined in Section 2.2. Statements shall be submitted that specify any additional payment or reimbursement necessary to achieve the appropriate allocation of payments by Ownership Interest based on the methodology used to prepare Appendix B. Such adjustments shall include interest as provided in Section 6.6 from the date of the final payment under Appendix B to the date of the adjustment statement.

**4.7     Adjustment of Capacity Rating and Final Accounting**

After monitoring the operation of the New Line for two (2) years from its date of operation and after the final accounting for the Costs of the New Line and Associated Facilities, PGandE shall revise the capacity rating of the New Line and will provide a final adjustment of Costs of the New Line and Associated Facilities based on the methodology used to prepare Appendix B and on the revised New Line capacity rating. Each Cotenants' Ownership Interest shall be adjusted as provided in Section 2.2. Additional payments or reimbursements shall be made with interest as provided in Section 6.6, from the date of the adjustment statement in Section 4.6 to the date of the final adjustment statement prepared pursuant to this Section 4.7. The monitoring and rating of the New Line shall be done in accordance with Good Utility Practice. PGandE, as operator, has the sole right to establish the line rating. The Cotenants other than PGandE shall have the right to review the methodology and results of the line rating process. The capacity rating of the New Line after Additions and Betterments are made under Article 10.0 shall be adjusted in accordance with this Section 4.7.

**4.8     Right to Review**

Each Cotenant shall have the right to review the documents supporting the Costs billed in this Article 4.0, in accordance with Section 16.10, up to one (1) calendar year after receipt of the final accounting statement prepared pursuant to Section 4.7.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**4.9     No Cost Guarantee**

PGandE does not represent, agree, or guarantee that Costs of the New Line will not exceed its estimates by reason of price increases, human error, uncontrollable forces, or any other factor to which construction projects are subject.

**4.10     Expected Completion Date of Construction**

PGandE shall use its best efforts to continue constructing the New Line and Associated Facilities with a goal of completing them and putting them into full operation on or about March 1, 1985.

**4.11     Consequences of Non-Timely Payments**

If any Cotenant other than PGandE does not make any payment referred to in this Article 4.0 in a timely manner in accordance with Section 4.2, such Cotenant shall pay PGandE 100 percent of its share of the amount described in this Section 4.11 rather than 50 percent thereof as otherwise provided. Under existing tax law, all payments referred to in this Article 4.0 should be, in the opinion of all Cotenants, excludable from PGandE's gross income for federal, state, and/or local income tax purposes. If this turns out not to be the case and any or all of these payments are included in PGandE's gross income for federal, state, and/or local income tax purposes, the Cotenants other than PGandE agree to pay PGandE, in proportion to their Ownership Interests, 50 percent of the following amount: The amount that PGandE's tax liability increases as a result of including any or all of such payments (plus any payments to be made by the other Cotenants to PGandE under this Section 4.11) in PGandE's gross income for tax purposes for each year, over the tax liability PGandE would have incurred in the same year without including such payments in PGandE's gross income, such amount to be adjusted to reflect any credits, deductions or other tax benefits taken or to be taken by PGandE in previous, current and future tax years for the Ownership Interests for which such payments were made. If after the adjustment, the amount becomes a negative figure, PGandE shall pay 50 percent of that amount to the other Cotenants in

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

proportion to the Ownership Interests of each of the other Cotenants. No Cotenant makes any representation with respect to these tax risks, with respect to which each Cotenant has consulted its own tax counsel.

### 4.12  Nature of Agreement

The Cotenants intend that this Agreement shall constitute a sharing arrangement among the Cotenants for the cooperative funding and construction of a new 230-kV transmission line and Associated Facilities in The Geysers area of Northern California. The Cotenants do not intend this Agreement to create a partnership for tax purposes or otherwise. If, however, any tax authority characterizes this Agreement as creating a partnership, the Cotenants hereby affirm that it is their intention, beginning with the first taxable year of the purported partnership, not to have such entity taxed as a partnership under either (a) Subchapter K of Chapter 1 of the Internal Revenue Code of 1954, as amended from time to time, or (b) comparable partnership provisions of federal, state or local tax laws. The Cotenants agree to execute such documents as may be necessary for tax purposes to effectuate this intention.

### 5.0  Cotenants' Payments for Costs of Operation, Maintenance, Replacement, and Additions and Betterments

### 5.1  Annual Costs To Be Shared

Except as provided in Section 7.13, the Cotenants shall share the Costs of operation and maintenance, Capital Replacements, and Additions and Betterments to the Line-Circuits and Associated Facilities as provided in this Article 5.0.

### 5.2  Sharing of Costs of Operating Emergencies

The Cotenants shall share the Costs of Capital Replacements associated with eliminating any Operating Emergency in proportion to their Ownership Interests pursuant to Section 6.3.3.

**5.3     Sharing of Costs for Operation and Maintenance of the Line Circuits**

The Cotenants other than PGandE shall pay an annual charge, in proportion to their Ownership Interests, for the operation and maintenance of the Line Circuits and PGandE's maintenance of the rights-of-way of the Line Circuits, as provided in and billed by PGandE under Section 6.2. PGandE owns, operates and maintains other 230-kV collector and tap lines that are interconnected with the Line Circuits but separate from them. Such collector and tap lines are not included as part of the Line Circuits for the purposes of Cost sharing under this Section 5.3.

**5.4     Sharing of Costs for Operation, Maintenance and Replacement of Associated Facilities**

Cotenants other than PGandE shall pay an annual charge to cover the Costs of owning, operating, maintaining, and making Capital Replacements to the Associated Facilities, in accordance with Section 5.7 and Appendix C. The system average rate listed in Appendix C may be adjusted not more than once in each calendar year. Billings and payments shall be in accordance with Section 6.1. PGandE may revise Appendix C subject to filing with FERC pursuant to Section 16.4.2 of this Agreement to the extent FERC has jurisdiction.

**5.5     Sharing of Costs for Capital Replacements and Additions and Betterments to Maintain Capacity of the New Line**

Except to the extent such Costs are paid by an entity other than a Cotenant, the Cotenants shall share, in proportion to their Ownership Interests as of the date the work commences, the Costs resulting from (i) Capital Replacements to the New Line or any portion thereof; and (ii) Additions and Betterments to the New Line or Associated Facilities that do not increase the rated capacity determined pursuant to Section 4.7. Except with respect to an Operating Emergency under Section 5.2, PGandE shall (i) provide an estimate of the Costs that are expected to be incurred and (ii) bill the other Cotenants for their share of such Costs pursuant to Section 6.3. Any payments by Cotenants other than PGandE under this Section

5.5 with respect to the Associated Facilities shall be contributions-in-aid-of-construction.

**5.6    Sharing of Costs for Additions and Betterments to Upgrade Capacity of the New Line**

The Costs of any Additions and Betterments to the New Line or Associated Facilities under Article 10.0 shall be shared by the Cotenants in proportion to their right to the benefits of such Additions and Betterments as provided in Article 10.0. Billings and payments shall be in accordance with Section 6.3. Any payments by Cotenants other than PGandE under this Section 5.6 with respect to the Associated Facilities shall be contributions-in-aid-of-construction.

**5.7    Adjustments to Annual Payment for Associated Facilities**

With respect to the Associated Facilities, each Cotenant's initial capital payment, as a contribution-in-aid-of-construction and as adjusted pursuant to Section 4.7, is used as the basis for determining the billing amount for the annual charge described in Appendix C. PGandE shall adjust each Cotenant's capital payment for purposes of determining such billing amount in such a manner as to relieve the transferring Cotenant of liability for the payment of such billing amount to the extent Ownership Interests are transferred pursuant to Section 2.4.3. When such a transfer takes place and after the Coordinating Committee is appropriately notified pursuant to Section 2.4.4, the transferor's capital payment shall be allocated for purposes of determining such billing amount between the transferor and the transferee in proportion to their Ownership Interests after the transfer. PGandE shall also adjust each Cotenant's capital payment for purposes of determining such billing amount when Additions and Betterments are made pursuant to Sections 5.5 or 5.6. Additional capital payments by the Cotenants for such Additions and Betterments to the Associated Facilities shall be added to the Cotenants' respective capital payments made to date. Both in the case of transfers and of Additions and Betterments, the new total of the capital payments shall be

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

used as the basis for the calculation of the Cotenants' billing amount for the annual charge pursuant to Appendix C.

### 5.8 Effective Date of Ownership Interest for Billing Purposes

Each Cotenant's share of the Costs under Sections 5.1 through 5.4 shall be in accordance with its Ownership Interest in percent as of May 1 of the year for which such Costs are billed. No retroactive adjustments will be made to reflect any adjustment in Ownership Interests after May 1 of such year.

## 6.0 Billing and Payment

### 6.1 Billing for the Associated Facilities

PGandE shall bill the other Cotenants an annual charge for the Associated Facilities pursuant to Section 5.4. The first annual charge billing for each Cotenant other than PGandE shall be prorated by days for the period between and including November 4, 1984 and December 31, 1984. Each calendar year thereafter, PGandE shall bill the other Cotenants for the annual charge on or before the first calendar day in June, in conjunction with the billing under Section 6.2, and the Cotenants shall pay the annual charge on or before the first calendar day in August. The bill for the last annual charge shall similarly be prorated for the portion of the calendar year during which the Agreement is in effect.

### 6.2 Billing for Operation and Maintenance of the Line Circuits

The Cotenants agree that, for the purposes of this Agreement, $343,000 represents, as of 1984, the basis for the calculation of annual payments (the "BCAP") to PGandE by the Cotenants other than PGandE for operation and maintenance of the Line Circuits. The Cotenants other than PGandE shall each make an annual payment to PGandE that is calculated by multiplying the BCAP by such Cotenant's Ownership Interest in percent. The Cotenants agree that the BCAP for years after 1984 shall be adjusted each year in accordance with the following published indices (or appropriate successor indices):

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

Index 1 =     Average Hourly Earnings for Production or Non-Supervisory Workers in Electric, Gas and Sanitary Services (SIC 49) in the State of California during the appropriate year, as most recently published (Bureau of Labor Statistics, U.S. Department of Labor, "Employment, Hours and Earnings -- States and Areas").

Index 2 =     Average value of the Producer Price Index for Industrial Commodities during the appropriate year, as most recently published (Bureau of Labor Statistics, U.S. Department of Labor, "Producer Prices and Price Indexes").

The basis for calculation of annual payments for operation and maintenance ("BCAP") shall be adjusted each year as follows:

$$BCAP_n = BCAP_{n-1} \left( 0.7 \frac{Index\ 1_{n-1}}{Index\ 1_{n-2}} + 0.3 \frac{Index\ 2_{n-1}}{Index\ 2_{n-2}} \right)$$

where n =     year in which such payment occurs, and

$BCAP_n$ =     $343,000  when n = 1984

PGandE does not warrant or represent that the BCAP, as escalated, will represent its actual Costs in any given year or years. The BCAP represents a settlement between the Cotenants, does not reflect PGandE current ratemaking policy, and shall not establish a precedent with respect to any future agreement. The BCAP shall be adjusted by PGandE after consultation with the other Cotenants to reflect PGandE's estimate of any additional or reduced Costs of maintenance and operation resulting from Additions and Betterments to the Line Circuits. Disputes with respect to such additional or reduced billing amounts resulting from any Additions and Betterments shall be resolved as provided in Articles 13.0 and 15.0. The first annual billing for each Cotenant other than PGandE shall be prorated by days for the period between and including November 4, 1984 and December 31, 1984. Each calendar year thereafter, PGandE shall bill the other Cotenants

annually on or before the first calendar day in June and the Cotenants shall pay the annual charge on or before the first calendar day in August. The bill for the last annual charge shall similarly be prorated for the portion of the calendar year during which this Agreement is in effect.

### 6.3 Billing for Capital Replacements, Additions and Betterments and Other Expenses Under This Agreement

PGandE shall bill the other Cotenants for the estimated Costs associated with a given project for Capital Replacements on the New Line, and for Additions and Betterments to the New Line or Associated Facilities pursuant to Sections 5.5 and 5.6. PGandE shall also bill the other Cotenants for other expenses payable pursuant to Article 7.0 of this Agreement. Such bills shall be based on PGandE's best estimate of the Costs of performing the work. The bill shall include a credit for the appropriate share of the estimated net salvage value of any retirements of any facilities replaced.

6.3.1 For projects with a duration of less than one month, the Cotenants shall make one lump-sum payment. PGandE shall provide an estimate of Costs to the other Cotenants at least thirty (30) calendar days before such payment is due.

6.3.2 For projects with a duration of longer than one month, PGandE shall prepare a monthly payment schedule that reflects the estimated construction or other Costs as they are expected to be incurred. At least sixty (60) calendar days before the date on which the Cotenants other than PGandE shall be required to commence payment of any Costs, PGandE shall submit to the other Cotenants: (i) its estimate of all Costs which it will incur; and (ii) a payment schedule indicating the expected monthly Costs included in the estimate and each Cotenant's monthly share of such Costs.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

6.3.3 PGandE shall bill the other Cotenants for the Costs of any Capital Replacements to the New Line required as a result of an Operating Emergency. If such Capital Replacements are to be commenced later than two (2) calendar months after the date the Operating Emergency began, the provisions of Section 6.3.2 shall apply. Otherwise, PGandE shall bill the other Cotenants for their proportional share of such Costs as soon as practicable after the work is completed.

6.3.4 The Cotenants shall pay each amount specified in the estimate described in Section 6.3.2 on or before the first of the month for which PGandE expects to pay each such amount.

6.3.5 Within a reasonable time after the completion of the project, PGandE shall provide the other Cotenants with the final accounting of the Costs of the project. As part of such final accounting, PGandE shall adjust the Cost estimate provided in Section 6.3.1 or 6.3.2 as necessary to reflect any difference between the estimated and actual Costs of such project. PGandE shall submit a final statement to the other Cotenants specifying the payment or refund required. All adjustments shall accrue an interest charge at the rate specified in Section 6.6 from the date the final estimated payment was due to the date the adjustment is paid.

6.3.6 PGandE may agree to conduct studies under Article 7.0 on a flat-fee basis.

## 6.4    Payment of Bills

Except as otherwise provided in this Agreement, all bills shall be due and payable within thirty (30) calendar days of receipt of the bill. If any Cotenant believes there are any errors in the determination of such Costs, such Cotenant shall pay the full amount of such Costs without offset or reduction. Bills that are not paid in full by the due date shall thereafter accrue an interest charge from the date the payment is due until the date such payment is received. The interest charge shall be compounded monthly based on the unpaid amount of the bill at an interest rate

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

equal to the applicable first of the month reference rate as specified in Section 6.6
plus two (2) percentage points per annum, or the maximum rate permitted by law,
whichever is less.

### 6.5    Right to Review

Up to one calendar year after receipt of the final accounting under Section 6.3.5,
the Cotenants shall have the right pursuant to Section 16.10 to review the
supporting documents upon which the Costs billed under Section 6.3 are
determined. Disputes under Articles 5.0 and 6.0 will be resolved pursuant to
Articles 13.0 and 15.0.

### 6.6    Applicable Interest Rate

Except as provided in Section 6.4, interest will be compounded monthly, at a rate
equal to the applicable first of the month reference rate, or any successor
comparable interest rate, of the San Francisco main branch of the Bank of
America, N.T. and S.A., San Francisco, California, or the maximum rate allowed
by law, whichever is less.

### 6.7    Billing Disputes

Regardless of the existence of any dispute, all payments will be made in full
pursuant to Section 6.4, until the dispute is resolved.

6.7.1    If any portion of a bill is disputed, the Cotenant billed shall advise
PGandE, in writing, of the amount and basis for the contested portion.
PGandE and the Cotenant(s) disputing the bill shall meet within thirty (30)
calendar days to review the supporting documents and attempt to agree on
the adjustments that may be appropriate. If agreement cannot be reached,
the dispute shall be resolved pursuant to the procedures set forth in Article
13.0.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

6.7.2   If the disputed amount is determined under this Agreement not to have been payable, it shall be refunded with interest, compounded monthly, at the reference rate described in Section 6.6 corresponding to the period from the date the payment was due to the date the refund is made, or at the maximum rate permitted by law during such period, whichever is less; provided, however, that if the disputed amount is determined through arbitration to have been billed by PGandE in bad faith, it shall be refunded with interest, compounded monthly, at such reference rate plus two (2) percentage points per annum, or the maximum rate permitted by law, whichever is less.

## 7.0   Right of Use

### 7.1   Commencement of Firm Transmission Entitlement

Each Cotenant shall have, subject to curtailments as provided in Article 8.0, a Firm Transmission Entitlement equal to its Ownership Interest in megawatts. Transmission service rights and limitations over PGandE's system beyond Lakeville or Fulton substations, if any, shall be as provided in separate Interconnection Agreements between PGandE and the other Cotenants.

### 7.2   Rights Associated With Firm Transmission Entitlement

The Firm Transmission Entitlement, or portion thereof, of a Cotenant other than PGandE shall exist only on the specific Line Circuit or Other Circuit to which such Firm Transmission Entitlement, or portion thereof, is designated. PGandE's Firm Transmission Entitlement shall consist of that undesignated portion of the capacity rating of the New Line and Line Circuits, as adjusted under Section 4.7, and the portion of the capacity rating of the New Line and Line Circuits designated under Section 10.4. Cotenants shall be entitled to use their Firm Transmission Entitlement, or portion thereof, on such Line Circuits or Other Circuits. As of the effective date of this Agreement with respect to such Cotenant and except as provided in Section 7.4, no Cotenant shall be required to pay a

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

transmission charge for the use of its Firm Transmission Entitlement over the Line Circuits or Other Circuits up to its Ownership Interest in megawatts. No Firm Transmission Entitlement is transferrable in whole or in part to any other Line Circuit or Other Circuit unless a redesignation is made to that Other Circuit or Line Circuit, as provided in this Article 7.0. Any transmission by a Cotenant other than PGandE of energy or capacity over the Line Circuits or Other Circuits that is not using an equivalent portion of such Cotenant's Firm Transmission Entitlement shall be provided under the terms of such Cotenant's Interconnection Agreement or any other applicable transmission agreement. No Cotenant shall have the right to use the unused Firm Transmission Entitlement of another Cotenant without such other Cotenant's prior authorization through its operating center or otherwise.

### 7.3     Exchange of Firm Transmission Entitlement

To the extent the Firm Transmission Entitlement of a Cotenant other than PGandE is designated to an Other Circuit or is designated from an Other Circuit to a Line Circuit, that Cotenant and PGandE shall, for operating purposes, exchange, without charge to each other, equivalent amounts of transmission capacity between such Other Circuit and the Line Circuits. That Cotenant shall continue to be financially responsible for its share of Costs of the Line Circuits and Associated Facilities, pursuant to Article 5.0, in accordance with its Ownership Interest. Except as provided in Section 7.4, the Cotenant shall not be required to pay any of the Costs of the Other Circuits. Except for exchanges pursuant to this Section 7.3, any transaction involving the transmission capacity so exchanged shall be subject to Section 2.5.

### 7.4     Adverse Rate Treatment

Sections 7.2 and 7.3 assume that PGandE will not receive any adverse rate treatment as a result of such arrangements. If adverse treatment does occur, PGandE may charge any disallowance or other resulting cost or loss to other

**PACIFIC GAS AND ELECTRIC COMPANY**
Rate Schedule FERC No. 139

individual Cotenants (i) as appropriate to any decision imposing such treatment or (ii) in proportion to their Ownership Interests as appropriate. PGandE may thereafter charge compensatory rates taking into consideration such other Cotenants' payments for operation and maintenance. Any Cotenant charged a transmission charge under this Section 7.4 with respect to the right to use its Firm Transmission Entitlement over an Other Circuit as provided in Section 7.3 may charge PGandE an equal transmission charge for PGandE's right to use any transmission capacity on the New Line exchanged therefor.

**7.5    Designation of Firm Transmission Entitlement By Cotenants Other Than PGandE**

The Cotenants other than PGandE agree that the Firm Transmission Entitlement of CDWR, NCPA, and Santa Clara shall be designated initially to the following Line Circuits or Other Circuits: CDWR -- 55 MW on Other Circuit No. 2 and 110 MW on Line Circuit No. 2; NCPA -- 49.9 MW on Line Circuit No. 2; and Santa Clara -- 60.1 MW on Line Circuit No. 2. Such a Cotenant may make a request to redesignate all or a part of its Firm Transmission Entitlement from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit, or to designate any increased Firm Transmission Entitlement it may receive as a result of any Addition and Betterment under Section 10.2, by submitting its request in writing to PGandE. Such Cotenant may make such a redesignation or designation only to a given Line Circuit or Other Circuit which has, connected to it, a powerplant(s) owned or operated by such Cotenant; except that to the extent that such Cotenant's total Firm Transmission Entitlement exceeds the total generating capacity which such Cotenant has connected to the Line Circuits and Other Circuits, such Cotenant may make such a redesignation or designation to a given Line Circuit or Other Circuit in excess of the generating capacity of such powerplant(s) or to a Line Circuit or Other Circuit which does not have, connected to it, a powerplant owned or operated by such Cotenant. Such Cotenant shall not be entitled to any such redesignation until at least thirty (30) calendar days after such request. No Cotenant's Firm Transmission Entitlement may be redesignated in whole or in

**PACIFIC GAS AND ELECTRIC COMPANY**
Rate Schedule FERC No. 139

part at its request more often than twice during each calendar year unless mutually agreed by PGandE and the requesting Cotenant.

**7.6     Reimbursement Of Costs For Redesignations Initiated By Cotenants Other Than PGandE**

If PGandE determines that it is necessary to study the possible effects of a redesignation described in Section 7.5, the requesting Cotenant shall pay all Costs of such study pursuant to Section 6.3 and PGandE's decision on the redesignation shall be delayed until the study is completed. PGandE shall complete such study within 180 calendar days of its receipt of the written redesignation request. If PGandE determines that the redesignation should be approved, the requesting Cotenant shall pay the other Cotenants' resulting Costs, including but not limited to any Costs of additional reconnections to balance line loadings, but excluding the Cost of lost generation. If the Firm Transmission Entitlement is redesignated from a Line Circuit to an Other Circuit, then the provisions of Section 7.3 shall apply. If a reconnection is required as a result of the redesignation, the provisions of Section 7.8 shall apply. Billing and payment of any Costs shall be pursuant to Section 6.3.

**7.7     Right to Provide Transmission Service**

A Cotenant may use its Firm Transmission Entitlement to provide transmission service for others as provided in Sections 2.4 and 2.5, subject to the provisions of this Agreement.

**7.8     Reconnections and Redesignations Initiated By PGandE**

Except as provided in other agreements between a Cotenant and PGandE, PGandE, as operator, may change the point of connection of a Cotenant's powerplant and/or redesignate all or a part of a Cotenant's Firm Transmission Entitlement from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit in order best to provide for transmission of electric energy. PGandE shall have the right to redesignate all or a portion of the Firm Transmission

**PACIFIC GAS AND ELECTRIC COMPANY**
Rate Schedule FERC No. 139

Entitlement of a Cotenant other than PGandE only when it determines that such action is required as a result of: (i) the proposed new interconnection of a powerplant or unit to a Line Circuit or Other Circuit; (ii) the derating or retiring of an existing powerplant or unit connected to a Line Circuit or Other Circuit; or (iii) a request by a Cotenant other than PGandE to reconnect or redesignate under Sections 7.5, 7.9 or 7.10.

7.8.1   PGandE shall notify the members of the Coordinating Committee of any proposed reconnections or redesignations in advance of their implementation; provided that in the event of a reconnection or redesignation required for repair, Operating Emergency, or other compelling operating purposes, PGandE shall (i) take whatever action it deems prudent and necessary, subject to the provisions of this Agreement and in accordance with Good Utility Practice, to preserve or maintain the safety, integrity and operability of the transmission system in the Service Area, and (ii) restore the system to its original configuration as soon as practicable after the occurrence that precipitated the need for the change has terminated.

7.8.2   PGandE agrees to reasonably minimize interference with transmission from other Cotenants' powerplants when reconnections are being made pursuant to Sections 7.8 and 7.9. Except during an Operating Emergency, PGandE shall coordinate line outages for reconnections with the other Cotenants and shall notify their operators regarding the specific lines involved and the times they must be cleared.

7.8.3   Except as provided in Sections 7.6, 7.8.5, and 7.11, PGandE shall pay the full Cost of any reconnection under this Section 7.8, excluding the Cost of lost generation.

7.8.4   PGandE shall notify the members of the Coordinating Committee when it determines that the powerplant of a Cotenant other than PGandE is being

**PACIFIC GAS AND ELECTRIC COMPANY**
Rate Schedule FERC No. 139

studied for reconnection or redesignation and solicit their comments regarding the assumptions and parameters of its study of such reconnection or redesignation. Whenever PGandE proposes to reconnect any other Cotenant's powerplant or to redesignate such Cotenant's Firm Transmission Entitlement, it must submit its justification for the proposed reconnection/redesignation plan, together with a cost estimate for the proposed work, to the members of the Coordinating Committee for review. The study submitted shall contain: a drawing showing the proposed reconnections including the specific circuits involved; a physical description of the reconnections; and a tentative schedule for the reconnections. The Committee shall have thirty (30) calendar days to review the study.

7.8.4.1    When practicable; PGandE's submittal to the Coordinating Committee shall be made before such reconnection/redesignation plan is submitted to any regulatory body for approval and with sufficient time allowed for the additional review provided in Section 7.8.5.

7.8.4.2    The Coordinating Committee shall only have the right to review such justification with respect to a proposed plan in which a powerplant operated by a Cotenant other than PGandE will be reconnected, or the Firm Transmission Entitlement of a Cotenant other than PGandE will be redesignated, from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit. The Cotenants, whether through the Coordinating Committee or otherwise, shall only have the right to review any such studies that involve reconnecting powerplants or redesignating the Firm Transmission Entitlement of a Cotenant other than PGandE.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

7.8.4.3      In the event that PGandE proposes to reconnect a powerplant that is connected to a Line Circuit or Other Circuit to which all or a portion of the Firm Transmission Entitlement of a Cotenant other than PGandE is designated, PGandE shall redesignate the associated Firm Transmission Entitlement when making such reconnection, provided that, if PGandE determines that sufficient firm transmission capability is available, the Cotenant to be reconnected shall have the right to redesignate the associated Firm Transmission Entitlement to a given Line Circuit or Other Circuit that has, connected to it, a powerplant owned or operated by such Cotenant, up to the generating capacity of such powerplant.

7.8.4.4      In the event that PGandE proposes to redesignate all or a portion of the Firm Transmission Entitlement of a Cotenant other than PGandE without making a concurrent reconnection, PGandE may redesignate only up to the amount of the generating capacity of any powerplant owned or operated by such Cotenant that is connected to the Line Circuit or Other Circuit to which such redesignation is made. PGandE may redesignate such Firm Transmission Entitlement in excess of the generating capacity of such powerplant(s) only to the extent that such Cotenant's total Firm Transmission Entitlement exceeds the total generating capacity which such Cotenant has connected to the Line Circuits or Other Circuits.

7.8.4.5      If a Cotenant's Firm Transmission Entitlement is redesignated to an Other Circuit under this Section 7.8.4, the provisions of Section 7.3 shall apply.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

7.8.5    When a Cotenant other than PGandE has a powerplant proposed for reconnection, or Firm Transmission Entitlement proposed for redesignation, under Section 7.8.4, any Cotenant(s) affected by such a reconnection or redesignation shall have the right to object to the reconnection/redesignation plan. Such Cotenant(s) must formally present its (or their) objections in writing to the members of the Coordinating Committee before the end of the 30-day period specified in Section 7.8.4.

7.8.5.1    The objecting Cotenant(s) shall have ninety (90) calendar days from the date it (they) submits its (their) notice of objection to the Coordinating Committee to jointly prepare a study that supports one alternative plan which includes, but is not limited to, the allocation among the objecting Cotenant(s) of the increased or decreased Costs described in Section 7.8.5.4. Such an alternative plan may be a recommendation not to take any action.

7.8.5.2    The study for an alternative reconnection plan shall contain: a drawing showing the proposed reconnections under the alternative plan, including the specific circuits involved; a physical description of the reconnections; a tentative schedule for the reconnections; and a cost estimate for the work. The study for an alternative redesignation plan shall contain a detailed description of the proposed redesignation and a tentative schedule therefor. The study shall also contain a comparison of the alternative plan with the plan proposed by PGandE. The objecting Cotenant(s) may, at its (their) option, request that PGandE conduct the study of the alternative plan at the expense of the objecting Cotenant(s).

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

7.8.5.3     The objecting Cotenant(s) shall present its (their) single study to the Coordinating Committee before the end of the 90-day period, or the PGandE reconnection/redesignation plan shall be implemented. When the study is presented, the Cotenants shall then have up to thirty (30) calendar days to review the alternative plan and the cost estimate.

7.8.5.4     If PGandE determines that the alternative proposed by the Cotenant(s) is feasible and consistent with Good Utility Practice, PGandE shall implement that alternative, subject to the conditions set forth in Section 7.8.6. The Cotenant(s) offering the alternative plan shall pay any net increase in Costs resulting from the fact that the alternative is implemented rather than PGandE's plan proposed under Section 7.8.4. Such increased Costs shall include, but not be limited to, the Costs of transmission planning or engineering studies conducted by PGandE to support the alternative before regulatory bodies, any Costs of additional reconnections to balance line loadings that would not have been required under PGandE's plan, and any increased transmission line losses suffered by PGandE. Such increased Costs shall exclude, however, the Cost of lost generation. The Cotenants offering the alternative plan shall reach agreement with PGandE on any sharing of Costs and the billing and payment provisions no later than thirty (30) calendar days before payment is required to commence pursuant to Section 6.3. If any portion of a Cotenant's Firm Transmission Entitlement is redesignated to an Other Circuit under this Section 7.8.5, the provisions of Section 7.3 shall apply to such portion. If PGandE determines that the alternative plan is infeasible, PGandE

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

shall, after presenting supporting material to the Coordinating Committee, have the right to implement its plan proposed under Section 7.8.4.

7.8.6   The provisions of Section 7.8.5 shall not apply if the California Energy Commission, the California Public Utilities Commission, or any successor agency requires, through order, condition or other official action, that PGandE implement a specific reconnection plan.

7.8.7   Nothing in this Agreement shall compel any Cotenant to connect any of its facilities to any circuit that is not operated by PGandE.

**7.9   Reconnections Initiated by Cotenants Other Than PGandE Involving Circuits Operated By PGandE**

Except as provided in Section 7.12, if a Cotenant other than PGandE wishes to change its point of connection for one of its powerplants from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit, and PGandE and the Coordinating Committee determine that the change should be made, the Cotenant may request that PGandE do so at the Cotenant's expense subject to Section 7.11. Such Cotenant shall give adequate advance written notice to allow PGandE to study the effects of such proposed reconnection. PGandE shall complete such study within 180 calendar days after its receipt of written notice.

**7.10   Reconnections Initiated by Cotenants Other Than PGandE Involving Circuits Not Operated By PGandE**

Nothing in this Agreement will prevent a Cotenant from changing the point of connection of one of its powerplants to a circuit not operated by PGandE or from such a circuit to a Line Circuit or Other Circuit to the extent otherwise permitted by this Agreement. If a Cotenant requests a reconnection to a Line Circuit or Other Circuit, such reconnection cannot be made until PGandE, as operator, approves it. Such Cotenant shall give adequate advance written notice to allow PGandE to study the effects of such proposed reconnection. PGandE shall

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

complete such study within 180 calendar days after its receipt of written notice. The Cotenant shall bear its own Costs of reconnecting subject to Section 7.11.

**7.11    Reimbursement Of Costs For Reconnections Initiated By Cotenants Other Than PGandE**

Except as provided in Section 7.12, the Cotenant making a request to change its point of connection shall pay the other Cotenants' resulting Costs, including but not limited to pertinent transmission planning or engineering studies required by PGandE, as operator, and any Costs of additional reconnections pursuant to Section 7.8 to balance line loadings, but excluding the Cost of lost generation. Such Cotenant shall continue to be responsible for its respective share of the Costs of the Line Circuits as provided in this Agreement, until such time as it is relieved of such obligation as provided in this Agreement, or as otherwise agreed among the Cotenants. If the point of connection is changed from a Line Circuit to an Other Circuit, then the provisions of Section 7.3 shall apply. Billing and payment of any Costs shall be pursuant to Section 6.3.

**7.12    Temporary Reconnections**

In the event that (i) a Cotenant is not using its full amount of Firm Transmission Entitlement designated to a Line Circuit or Other Circuit ("Second Circuit"), (ii) such Second Circuit is not curtailed pursuant to Article 8.0 of this Agreement, and (iii) the Cotenant owns or operates powerplants connected to a different Line Circuit or Other Circuit ("Initial Circuit"), such Cotenant may, to the extent consistent with Good Utility Practice, temporarily reconnect its powerplant from the Initial Circuit to the Second Circuit by notifying PGandE's operating center by telephone or otherwise; provided Sections 7.12.1 through 7.12.6 are each satisfied. Such Cotenant shall as soon as practicable, terminate any temporary reconnection and reconnect to the Initial Circuit at such time as it coordinates necessary switching with PGandE's operating center and when the occurrence that precipitated the need for the temporary reconnection has terminated, but in no event later than 210 calendar days after the temporary reconnection takes place,

**PACIFIC GAS AND ELECTRIC COMPANY**
Rate Schedule FERC No. 139

unless such period is extended by the mutual agreement of such Cotenant and PGandE. Nothing in this Section 7.12 shall relieve such Cotenant of any obligation to pay PGandE applicable charges for transmission service under any agreement with PGandE.

7.12.1        PGandE shall have sixty (60) days to review the design of the equipment required for such temporary reconnection, including but not limited to any switches and protection equipment, before it is installed and shall have the right to test and retest such equipment in advance of any such temporary reconnection to ensure the continued reliability and operability of PGandE's system. When PGandE reviews such design or tests such equipment, and if it determines that the temporary reconnection and the implementation of the temporary reconnection are consistent with Good Utility Practice and are as reliable as the connection that existed before the temporary reconnection is made, it shall approve such design or determine that such equipment has passed such test. If PGandE determines that such equipment or design is inadequate, the proposed temporary reconnection may not take place unless and until changes are made in such equipment or design by such Cotenant and PGandE determines that such changed equipment or design will prevent the proposed temporary reconnection from violating the standards contained in the previous sentence. PGandE makes no representation or warranty that any such equipment or design may be adequate. PGandE shall give adequate advance notice before testing such equipment and shall conduct the test at a mutually agreeable time.

7.12.2        Such Cotenant shall only use transmission capacity on the Second Circuit up to the sum of its Firm Transmission Entitlement designated to the Second Circuit and any transmission service

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

purchased from a Cotenant other than PGandE on the Second
Circuit. PGandE's operating center, at its sole discretion, may
approve the use by such Cotenant of additional transmission
capacity from PGandE's Firm Transmission Entitlement on the
Second Circuit, provided that such Cotenant shall reduce or cease,
immediately upon PGandE's request through its operating center,
such use of additional transmission capacity.

7.12.3    The temporary reconnection shall not impair the ability of any
other Cotenant to use its Ownership Interest as provided in this
Agreement.

7.12.4    No later than one (1) hour before the temporary reconnection is
planned to take place, such Cotenant shall contact PGandE's
operating center and obtain authorization to proceed on schedule.
The temporary reconnection shall proceed consistent with Good
Utility Practice and in accordance with the schedule authorized by
PGandE's operating center.

7.12.5    Such Cotenant shall inform by telephone or otherwise the members
of the Coordinating Committee of the temporary reconnection by
the end of the next business day following PGandE's approval of
the temporary reconnection.

7.12.6    The Cotenant making a request for a temporary reconnection or for
PGandE's design approval or testing of any equipment under
Section 7.12.1 shall pay the other Cotenants' resulting Costs,
including but not limited to the Costs of pertinent engineering or
planning studies conducted by PGandE to study the reconnection
equipment, the Costs of any additional equipment required on
PGandE's system or the system of another Cotenant and the Cost

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

of lost generation. Billing and payment of any Costs shall be
pursuant to Section 6.3.

**7.13    Interconnections With the Line Circuits**

Additional 230-kV collector and tap lines may be constructed by the Cotenants
and interconnected with the Line Circuits after this Agreement becomes effective.
In the event of such an interconnection with the New Line by a Cotenant other
than PGandE, Sections 7.13.1 through 7.13.4 shall apply. Interconnections by
Cotenants other than PGandE with any Other Circuit or any portion of the Line
Circuits other than the New Line shall be handled in accordance with such
Cotenant's respective Interconnection Agreement.

7.13.1    If a Cotenant other than PGandE constructs a new 230-kV
collector or tap line, such Cotenant must obtain approval by
PGandE, as operator, before interconnecting with the New Line.
Such Cotenant shall give PGandE adequate advance written notice
of such proposed interconnection with the New Line. The advance
notice shall provide adequate lead time necessary to accomplish
the interconnection, including but not limited to, such time as may
be necessary for: conducting studies and preparing the engineering
design; review by regulatory agencies; obtaining required
approvals, permits and licenses; construction; and establishing any
contractual arrangements between the Cotenants and third parties
that may be necessary.

7.13.2    Any Cotenant that proposes such construction shall notify the other
Cotenants of its plans.

7.13.3    Facilities or control equipment at the proposed interconnection
point shall be provided, operated, and maintained in a manner to
ensure the safe and reliable operation of the New Line and in
accordance with Good Utility Practice.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

7.13.4    The Cotenant requesting the interconnection shall be responsible for PGandE's Costs of providing the required facilities, including but not limited to transmission planning studies or engineering designs that must be completed before PGandE can grant approval. Billing and payment of any Costs shall be pursuant to Section 6.3.

**7.14    Transmission Losses**

Transmission losses over the New Line, Line Circuits or Other Circuits shall be governed by each Cotenant's respective Interconnection Agreement with PGandE.

**8.0    Curtailments**

**8.1    Curtailment Before Completion of Lakeville-Sobrante 230-kV Line**

A Cotenant's right to use its Firm Transmission Entitlement is subject to curtailment in accordance with Good Utility Practice. Prior to the completion and full operation of the Lakeville-Sobrante 230-kV Line, the use by any Cotenant other than PGandE of its Firm Transmission Entitlement shall be curtailable as provided in such Cotenant's Interconnection Agreement with PGandE. PGandE shall use its best efforts to complete the Lakeville-Sobrante 230-kV Line on or before November 30, 1985.

**8.2    Outage of a Line Circuit or Other Circuit**

After the completion and full operation of the Lakeville-Sobrante 230-kV Line, in the event of an outage or curtailment of the capability of a Line Circuit or Other Circuit to transmit energy, Sections 8.2.1 through 8.2.3 shall apply. For purposes of this Section 8.2, all of the transmission capacity of the Line Circuits and Other Circuits, except any Firm Transmission Entitlement of a Cotenant other than PGandE, shall be deemed to be the designated Firm Transmission Entitlement of PGandE.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

8.2.1    PGandE shall take any action pursuant to Section 9.3 as it deems appropriate.

8.2.2    Except as provided in Article 7.0, the Cotenant's rights to the use of its Firm Transmission Entitlement shall not be transferable to another Line Circuit or Other Circuit. The right to use Firm Transmission Entitlement designated to the curtailed Line Circuit or Other Circuit shall only be available to another unit on the curtailed Line Circuit or Other Circuit as provided in Section 8.2.3.2.

8.2.3    The following steps shall be taken until such time that the curtailed Line Circuit or Other Circuit can be restored to full capacity:

8.2.3.1.    Transmission by a Cotenant over the curtailed circuit in excess of its Firm Transmission Entitlement designated to such curtailed circuit, including such Cotenant's non-firm transmission, shall be curtailed first;

8.2.3.2.    Thereafter, each Cotenant's right to use the Firm Transmission Entitlement (FTE) designated to the curtailed Line Circuit or Other Circuit shall be allocated on a pro-rata basis as determined by the following equation except as provided in Section 8.2.3.3:

$$A = B/C \times D$$

where,

A=    A Cotenant's pro-rata allocation in megawatts of the then available transmission capacity on the curtailed Line Circuit or Other Circuit;

B =    A Cotenant's FTE in megawatts designated to the curtailed Line Circuit or other Circuit;

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

C =     Sum total of each of the Cotenants' FTEs in megawatts designated to the curtailed Line Circuit or Other Circuit;

D =     Then available transmission capacity in megawatts on the curtailed Line Circuit or Other Circuit.

8.2.3.3     If after applying Section 8.2.3.2, one or more Cotenants have scheduled less than their pro-rata firm allocation (variable "A") as determined in Section 8.2.3.2, this excess allocation will be, subject to Section 8.2.3.4, reallocated among each of the remaining Cotenants which are able to use it by the following process:

$$E = A + (B/F \ x \ G)$$

where,

E =     A remaining Cotenant's pro-rata allocation in megawatts of the then available transmission capacity on the curtailed Line Circuit or Other Circuit including the excess allocation not used by one or more of the other Cotenants.

A and B are as defined in Section 8.2.3.2.

F =     Sum total of each of the remaining Cotenants' FTEs in megawatts designated to the curtailed Line Circuit or Other Circuit.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

G =     Excess allocation in megawatts to be reallocated to the remaining Cotenants on the curtailed Line Circuit or Other Circuit.

The above process for determining variable "E" will be repeated as necessary in order to maximize the use of the transmission capacity of the curtailed Line Circuit or Other Circuit, provided that no Cotenant shall have the right to exceed its FTE as assigned to the curtailed Line Circuit or Other Circuit.

8.2.3.4     If a Cotenant was not scheduled to use its full pro-rata firm allocation (variable "A") as determined in Section 8.2.3.2 when the curtailment period began, such Cotenant may schedule generation with PGandE to use up to its full allocation on the curtailed Line Circuit or Other Circuit in accordance with the scheduling procedures under its respective Interconnection Agreement.

**8.3     System Curtailment**

The curtailment priorities established in the respective Interconnection Agreements between PGandE and the other Cotenants shall continue to apply in the event of an outage or curtailment of the capability to transmit energy on PGandE's system other than the Line Circuits, Other Circuits and Associated Facilities.

**9.0     PGandE as Operator**

**9.1     Rights and Duties of PGandE As Operator**

PGandE, as operator, shall acquire Land Rights, construct the New Line and Associated Facilities, and manage, coordinate, operate, maintain, repair, make replacements, inspect and have access to the Line Circuits, and shall have all

rights to do so, except as expressly provided in this Agreement. All work shall be done in conformance with Good Utility Practice. PGandE does not assume any fiduciary duties in its performance of this Agreement, and such performance shall not be judged by fiduciary standards.

### 9.2 Rights of Cotenants Other Than PGandE

The Cotenants other than PGandE waive all right to enter or to have anyone else enter or possess the New Line on their behalf, unless PGandE materially defaults in its obligations pursuant to Section 13.3, and agree that they have no such rights with respect to the Associated Facilities, the Line Circuits other than the New Line, and the Other Circuits; provided, that the Cotenants other than PGandE, or such Cotenants' designated representative, shall have the right to inspect the New Line at reasonable times (i) upon prior notice to PGandE of no less than two (2) business days, (ii) when accompanied by a representative of PGandE, and (iii) only for the purpose of exercising their rights under this Agreement.

### 9.3 Operating Emergencies

PGandE shall take whatever action it determines necessary to eliminate any Operating Emergency. PGandE shall notify the other Cotenants' operating centers as soon as the extent of the trouble is ascertained and inform them regarding the Operating Emergency and the corrective actions taken and yet to be taken.

## 10.0 Additions and Betterments

### 10.1 PGandE's Right to Make Additions and Betterments to the New Line

PGandE shall have the exclusive right to make at any time Additions and Betterments to the New Line and/or Associated Facilities in order to increase the capacity of the New Line or Associated Facilities, but such Additions and Betterments shall not interfere, other than temporarily, with the rights of the other Cotenants to the use of their Firm Transmission Entitlement.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**10.2    Right of Cotenants Other Than PGandE to Participate**

PGandE shall offer in writing to the other Cotenants the right to participate in the first 300 MW of transmission capacity resulting from any such Addition and Betterment in a combined amount up to 35 percent of such Addition and Betterment, up to a maximum combined amount of 105 MW. Said Cotenants shall have the right to participate in such combined amount according to their respective Ownership Interests in percent in the New Line, or in such other proportion agreed to by said Cotenants, on the same terms and conditions set forth in this Agreement, and shall share the Costs of the Additions and Betterments in proportion to their participation throughout the period of construction. The Cotenants shall have ninety (90) calendar days from the date of PGandE's written offer in which to exercise this right and to notify PGandE in writing of their decision. In the event any of said Cotenants do not wish to exercise this right, the remaining Cotenants, other than PGandE, may share the capacity subject to such unexercised right in proportion to their Ownership Interests or as otherwise agreed among them. The Cotenants exercising this right to participate shall notify PGandE as to the amount of additional capacity each Cotenant elects to participate in. PGandE shall bill the participating Cotenants for their proportional share of Costs in accordance with Section 5.6.

**10.3    Additions and Betterments of More Than 300 MW**

Any Additions and Betterments constructed by PGandE resulting in increased capacity of the New Line or Associated Facilities over and above 300 MW shall be, at PGandE's option, for its sole use and benefit. None of the rights of refusal under Section 2.5 shall apply to transfers by PGandE of any transmission capacity created in excess of the initial 300 MW of Additions and Betterments to the New Line.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**10.4    Right of First Refusal Regarding Additions and Betterments of More Than 300 MW**

Should the completion of any Addition and Betterment under this Article 10.0 result in an increase of more than 300 MW in the capacity rating of the New Line, as such rating may be revised pursuant to Section 4.7, PGandE shall, upon completion of such Additions and Betterments, designate its Ownership Interest in megawatts which is not subject to the right of first refusal under Section 2.5 to specific Line Circuits or Other Circuits subject to redesignation by PGandE no more than twice during each calendar year. PGandE shall notify the members of the Coordinating Committee thirty (30) days in advance of any such designation or redesignation.

**11.0    Reconstruction**

**11.1    Conditions for Automatic Reconstruction**

During the term of this Agreement, the Cotenants agree to make the Capital Replacements necessary to reconstruct and repair the New Line and Associated Facilities and to share the Cost of such reconstruction or repair in proportion to their Ownership Interests (i) if with respect to an event occurring during the first ten (10) years after the effective date of this Agreement, the Cost of such reconstruction or repair does not exceed 60 percent of the then-current replacement Cost of the New Line and Associated Facilities, or (ii) if, with respect to an event occurring after such tenth year, the Cost of such reconstruction or repair does not exceed a certain percentage (variable "P") of the then-current replacement Cost of the New Line and Associated Facilities. Variable "P" shall be calculated as follows:

$$P = 60 - [(3)(y-10)]$$

where  $P =$  percent of the then-current replacement Cost of the New Line and Associated Facilities;

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

y =     the number of full years that have elapsed from the effective date
        of this Agreement to the date the damage took place.

The rights and obligations provided in this Section 11.1 shall be specifically
enforceable.

**11.2     Conditions for Decision Before Reconstruction**

If the Cost of reconstruction or repair would exceed the applicable limit specified
in Section 11.1, then each Cotenant shall decide whether or not it desires to repair
or reconstruct the damaged facility. Any Cotenants desiring to repair or
reconstruct such facilities, shall have the right to do so. In the event that fewer
than all Cotenants desire to repair or reconstruct the destroyed or damaged
facilities, then any Cotenant that does not agree to repair or reconstruct such
facilities shall sell its interest in the facilities to the Cotenant or Cotenants that
desire to reconstruct such facilities. The purchasing Cotenants shall purchase such
interest in proportion to their Ownership Interest for a price equal to the net
salvage value of the selling Cotenant's Ownership Interest. The rights and
obligations provided in this Section 11.2 shall be specifically enforceable.

**11.3     PGandE as the Selling Cotenant**

In the event that PGandE is a selling Cotenant under Section 11.2, it shall permit
the reconstructed New Line to be interconnected with its system for the remaining
term of this Agreement and the purchasing Cotenant(s) shall assume PGandE's
rights and obligations as operator under this Agreement. It is the responsibility of
the purchasing Cotenant(s) to obtain any necessary Land Rights. PGandE shall
cause the transfer of all Land Rights, licenses, permits, or other rights of approval
necessary to use and operate the New Line, other than Land Rights associated
with any facility other than the New Line, to the purchasing Cotenant(s) to the
extent it has a right to do so.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**11.4     Destruction of an Other Circuit**

In the event of the destruction of an Other Circuit to which all or a part of the Firm Transmission Entitlement of a Cotenant other than PGandE is designated, and PGandE determines not to reconstruct, the Cotenants other than PGandE, shall have the right to have PGandE, at PGandE's expense, reconnect under Section 7.8 such Cotenant's powerplant(s) that is(are) connected to such Other Circuit and meet(s) one of the following characteristics:

(1)     if the combined generating capacity of such powerplant(s) is less than or equal to such Firm Transmission Entitlement, PGandE shall reconnect all such powerplant(s); or

(2)     if such Cotenant has only one such powerplant and if the generating capacity of such powerplant is greater than such Firm Transmission Entitlement, PGandE shall reconnect such powerplant; or

(3)     if such Cotenant has more than one such powerplant, the combined generating capacity of which is greater than such Firm Transmission Entitlement, PGandE shall reconnect only that(those) powerplant(s) that has(have) a combined generating capacity which exceeds the Firm Transmission Entitlement designated to such Other Circuit by the least amount.

PGandE shall reconnect such qualifying powerplant(s) to one of the Line Circuits or an Other Circuit that is owned and operated by PGandE and still in operation. If the generating capacity of the reconnected powerplant(s) exceeds such Firm Transmission Entitlement, then such Cotenant shall only operate the reconnected powerplant(s) in excess of such Firm Transmission Entitlement to the extent it has an enforceable right to transmit such excess. PGandE shall also redesignate under Section 7.8 such Firm Transmission Entitlement to the Line Circuit or Other Circuit to which such powerplant(s) has(have) been reconnected pursuant to this Section 11.4.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

## 12.0   Liability and Indemnity

### 12.1   Liability

Except (i) as otherwise provided in this Article 12.0, (ii) for any loss, damage, claim, cost, charge, or expense resulting from Willful Action, as defined in Section 12.6, and (iii) with respect to any contractual dispute subject to Article 13.0, no Cotenant, its directors or other governing body, officers or employees shall be liable to any other Cotenant for any loss, damage, claim, cost, charge, or expense of any kind or nature incurred by such other Cotenant (including direct, indirect or consequential loss, damage, claim, cost, charge, or expense, and whether or not resulting from the negligence of a Cotenant, its directors or other governing body, officers, employees, or any person or entity whose negligence would be imputed to such Cotenant) from the performance or nonperformance of the obligations of a Cotenant under this Agreement (including the interruption or curtailment of any transmission of electric energy). Except (i) as otherwise provided in this Article 12.0, (ii) for any loss, damage, claim, cost, charge, or expense resulting from Willful Action, as defined in Section 12.6, and (iii) with respect to any contractual dispute subject to Article 13.0, each Cotenant releases the other Cotenants, their directors, or other governing body, officers, and employees from any such liability. With respect to any contractual dispute subject to Article 13.0, no Cotenant, its directors, or other governing body, officers or employees shall be liable to any other Cotenant for any indirect or consequential loss, damage, claim, cost, charge, or expense.

### 12.2   Responsibility of Cotenants Regarding Damage From Electrical Disturbances

Each Cotenant shall be responsible for protecting its facilities from possible damage by reason of electrical disturbances or faults caused by the operation, faulty operation, or nonoperation of any other Cotenant's facilities located in Lake, Napa or Sonoma counties, and, except for damage resulting from Willful Action, such other Cotenant shall not be liable for any such damages so caused.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**12.3     Indemnification From Claims By Persons or Entities**

Except as provided in Section 12.4 or 12.5, each Cotenant shall be responsible for, and shall indemnify, to the extent permitted by law, the other Cotenants, their directors or other governing body, officers and employees from and against any liability for death, injury, loss or damage suffered or incurred by a person or entity (other than a Cotenant, its directors or other governing body, officers and employees) to the extent such death, injury, loss or damage was proximately caused by such indemnifying Cotenant in the performance or non-performance of its obligations under this Agreement.

**12.4     Indemnification From Claims By Electric Customers**

Except for liability resulting from Willful Action of another Cotenant, a Cotenant whose electric customer shall make a claim or bring an action for any death, injury, loss or damage arising out of electric service to such customer, which death, injury, loss or damage is caused by a Cotenant's performance or nonperformance of its obligations under this Agreement, shall indemnify and hold harmless, to the full extent permitted by law, the other Cotenants, their directors or other governing body, officers and employees from and against any liability for such death, injury, loss or damage. For the purpose of this Article 12.0, the term "electric customer" shall mean an electric customer, except an electric utility system to whom power is delivered for resale. "Electric customer" shall also mean a member, subsidiary or substantial owner of a Cotenant.

**12.5     Indemnification From Claims By Employees**

Except for liability resulting from Willful Action of another Cotenant, a Cotenant whose employee shall make a claim or bring an action against another Cotenant for any death, injury, loss or damage arising out of a Cotenant's performance or nonperformance of its obligations under this Agreement, shall indemnify and hold harmless, to the full extent permitted by law, the other Cotenants, their directors, officers and employees for such death, injury, loss or damage.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**12.6    Willful Action**

For the purpose of this Article 12.0, Willful Action shall be defined as:

12.6.1      Action taken or not taken by a Cotenant at the direction of its directors or other governing body, officers or employees having management or administrative responsibility affecting its performance under this Agreement, which action is knowingly or intentionally taken or failed to be taken with conscious indifference to the consequences thereof or with intent that injury or damage would result or would probably result therefrom.

12.6.2      Action taken or not taken by a Cotenant at the direction of its directors or other governing body, officers or employees having management or administrative responsibility affecting its performance under this Agreement, which action has been determined by final arbitration award or final judgment or judicial decree to be a material default under this Agreement and which occurs or continues beyond the time specified in such arbitration award or judicial decree for curing such default or, if no time to cure is specified therein, occurs or continues thereafter beyond a reasonable time to cure such default.

12.6.3      Action taken or not taken by a Cotenant at the direction of its directors or other governing body, officers or employees having management or administrative responsibility affecting its performance under this Agreement, which action is knowingly or intentionally taken or failed to be taken with the knowledge that such action taken or failed to be taken is a material default under this Agreement.

12.6.4      Willful Action does not include any act or failure to act which is merely involuntary, accidental or negligent.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

12.6.5    The phrase "employees having management or administrative responsibility," as used in this Article 12.0, means the employees of a Cotenant who are responsible for one or more of the executive functions of planning, organizing, coordinating, directing, controlling and supervising such Cotenant's performance under this Agreement with responsibility for results.

## 13.0    Dispute Resolution and Default

### 13.1    Submittal of Dispute to Coordinating Committee

Except as provided in Section 15.3, prior to submitting such dispute to arbitration, any billing dispute which has not been resolved pursuant to the provisions of Section 6.7.1 and any other dispute arising under this Agreement must be submitted to the Coordinating Committee by a Cotenant involved in the dispute, through written notice stating the nature of the dispute. The Coordinating Committee shall attempt to settle all disputes submitted to it as soon as possible, but in no case later than forty-five (45) calendar days after the dispute is submitted, unless an extension of time is agreed to by the Cotenants involved in the dispute. Such Cotenants shall prepare and submit offers of settlement for consideration by the Coordinating Committee. No Cotenant shall commence arbitration of any dispute until after such 45-day period (as such period may be extended) has expired. If the Coordinating Committee fails to resolve any billing dispute under Section 6.7 within such 45-day period (as such period may be extended), and if the disputing Cotenant has not commenced arbitration under Section 13.2 within thirty (30) calendar days after the end of such period, the disputing Cotenant shall be deemed to have waived all claims with respect to such billing dispute.

### 13.2    Arbitration

Disputes arising under this Agreement that have not been resolved under Sections 13.1 or 15.2.3 shall be settled through binding arbitration as provided in this

Section 13.2. The disputing Cotenant shall notify the other Cotenants in writing that it is commencing arbitration. The notice shall specify which Cotenants are to be parties to the arbitration. Any Cotenant not so specified may become a party to the arbitration by written notice to the other Cotenants within ten (10) calendar days after the notice of commencement of arbitration. Within thirty (30) calendar days after the notice of commencement of arbitration, each party to the arbitration shall prepare and provide to the other parties to the arbitration a single proposal to resolve the dispute. Any Cotenant that does not submit such a proposal in a timely manner shall have waived its right to participate in the arbitration and shall be bound by the terms of the proposal accepted by the arbitrator's decision. The parties to the arbitration shall agree on a single arbitrator with an acceptable understanding of the utility industry. If such parties to the arbitration cannot agree on an arbitrator within fifteen (15) calendar days after the notice of commencement of arbitration under this Section 13.2, the arbitrator will be selected by the American Arbitration Association within thirty (30) calendar days after such notice of commencement of arbitration. Except as otherwise provided in this Agreement, any arbitration commenced pursuant to this Section 13.2 shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The provisions of California Code of Civil Procedures Section 1283.05 shall apply to the arbitration. Unless extended by agreement of the arbitrating Cotenants, discovery shall be completed and the hearing shall commence within thirty (30) calendar days after the Cotenants' proposals to resolve the dispute are available. Within sixty (60) calendar days after such proposals are available, unless the arbitrator requests and is granted an extension of time by the arbitrating Cotenants, the arbitrator will accept one of the proposals, and such Cotenants hereby agree to be bound by that decision. After the decision by the arbitrator, such Cotenants shall immediately take whatever action is required to comply with the accepted proposal. Any and all expenses associated with the arbitration shall be borne by the Cotenant(s) sponsoring the rejected proposal(s). The decision of the arbitrator may be enforced by any court having jurisdiction over the Cotenant against which the decision was rendered.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

13.2.1     To the extent a dispute involves the application of Good Utility Practice, the arbitrator shall determine which Cotenant's final proposal more reasonably represents Good Utility Practice. To the extent the dispute does not involve Good Utility Practice, the arbitrator shall determine which Cotenant's final proposal more reasonably applies the standards of this Agreement applicable to the dispute, or, absent standards, which Cotenant's final proposal was more reasonable. The arbitrator shall specifically consider all factors relevant to the reasonableness of the Cotenants' final proposals, including, but not limited to the facts known and the facts that should have been known to each Cotenant at the time of action or inaction giving rise to the dispute, the amount of time available in which to act, and other factors relevant under the circumstances. Nothing contained herein shall permit the arbitrator to waive or change any of the provisions of this Agreement, including this Section 13.2. The standards of this Section 13.2.1 shall not apply to any arbitration under Section 15.3.1.4.2.

## 13.3    Default By PGandE

In the event any court, regulatory commission, or other body of competent jurisdiction determines, in a decision no longer subject to judicial review, that PGandE is in material default of its obligations under Article 9.0 in its capacity as operator of the New Line, and after failure by PGandE to cure that default within a reasonable period after receiving notice of that determination, any other Cotenant(s) so consenting may take possession of and operate the New Line for the use and benefit of the Cotenants. In such event, such other Cotenant(s) shall assume PGandE's obligations as operator under Article 9.0 provided, however, that PGandE shall continue to be liable for its proportional share of operation, maintenance, and replacement expenses of the Line Circuits and Associated Facilities and provided further, that PGandE shall cause the transfer of all Land

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

Rights, licenses, permits or other rights of approval necessary to use and operate the New Line, other than Land Rights associated with any facility other than the New Line, to the operating Cotenant(s) to the extent it has the right to do so. In the event of such an assumption of PGandE's obligations as operator, (i) PGandE shall have the right to use its Ownership Interest and its share of the Associated Facilities under the terms of this Agreement which apply to such use by Cotenants other than PGandE, and (ii) the operating Cotenant(s) shall have the rights and obligations of PGandE as operator under Articles 9.0 and 10.0.

**14.0    Term and Termination**

**14.1    Term**

Except as provided in Section 14.2, this Agreement shall, upon execution by PGandE and any given other Cotenant, become effective as to such Cotenant as of June 1, 1984. This Agreement shall be in effect for an initial term extending through December 31, 2014. Thereafter the Cotenancy Agreement shall continue from year to year unless terminated pursuant to this Article 14.0.

**14.2    Acceptance by FERC**

Any provision of this Agreement which is filed for approval by FERC shall become effective on the date it is accepted by FERC for filing or such earlier date on which it is permitted to become effective by FERC; provided, that such provisions are expressly conditioned upon FERC's acceptance of all such provisions, without change or condition, and shall not become effective unless so accepted, unless otherwise agreed by the Cotenants; provided further, that if upon filing, FERC enters into a hearing to determine whether such provisions are just and reasonable, such provisions shall not become effective until the date when an order, no longer subject to judicial review, is issued by FERC determining such provisions to be just and reasonable without changes or new conditions unacceptable to any Cotenant; provided, further, that if FERC imposes changes or new conditions unacceptable to any Cotenant, the Cotenants will negotiate in

**PACIFIC GAS AND ELECTRIC COMPANY**
Rate Schedule FERC No. 139

good faith to amend this Agreement to eliminate such unacceptable changes or conditions; and provided further that, to the extent allowed by law, nothing in this Section 14.2 shall be construed as reducing in any way the right of PGandE to receive from the other Cotenants compensation for all Costs for which any such provisions are intended to compensate PGandE.

**14.3    Termination By A Cotenant**

Any Cotenant may, by giving one (1) year advance written notice to the other Cotenants, terminate its participation in this Agreement effective no earlier than January 1, 2015.

By letter dated July 30, 2018, and pursuant to Section 14.3 of the Agreement, CDWR gave each of the Cotenants one (1) year advance notice of its desire to terminate CDWR's participation in the Agreement, with a requested August 1, 2019 effective date for such termination.  PG&E, NCPA, and Santa Clara acknowledge CDWR's request to terminate its participation in the Agreement, but have rejected CDWR's requested withdrawal from the Agreement pending receipt of CDWR's payment of its proportional share of the reasonable estimated removal costs to the remaining Cotenants prior to withdrawing from the Agreement.  Upon receipt of CDWR's payment, PG&E, NCPA and Santa Clara, as the remaining Cotenants, agree to terminate CDWR's participation and to file an amended agreement among the remaining Cotenants pursuant to Section 14.2 of the Agreement.

**14.4    Decision by Cotenants to Continue Operation**

Should any Cotenant give notice of termination, the other Cotenants shall determine if one or more of the remaining Cotenants wish to keep operating the New Line and buy the interest of the terminating Cotenant.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**14.5    Termination By All Cotenants**

If the remaining Cotenants determine not to continue operating the New Line, this Agreement shall terminate on the date specified in the notice. PGandE, or its successor as operator of the New Line, shall remove the New Line, credit the net salvage value of the material, and distribute any net proceeds among the Cotenants in proportion to their Ownership Interests. If the removal is performed at a net loss, PGandE, or its successor as operator of the New Line, shall be reimbursed by the other Cotenants for their respective shares of such net loss in proportion to their Ownership Interests. Each Cotenant shall be liable for financial obligations incurred by it prior to any termination of this Agreement.

**14.6    Continued Operation By Cotenants**

If one or more Cotenants wish to continue operating the New Line, the Cotenant(s) wishing to purchase the interest(s) of the departing Cotenant(s) may do so effective as of the date the selling Cotenant terminates its participation in this Agreement. If more than one Cotenant wish to purchase such interest(s), they may do so in proportion to their respective Ownership Interests or as otherwise agreed. All interests available for purchase must be acquired by the purchaser(s). The sale price will be the estimated net salvage value of the interests purchased. The purchasing Cotenant(s) shall pay the departing Cotenant(s) their share of the sale price. The departing Cotenant(s) shall transfer its (their) interest(s) to the purchasing Cotenant(s) and shall have no more interest in or liability under this Agreement, except with respect to financial obligations incurred prior to its effective date of termination. The departing Cotenant(s) shall obtain and provide a full release of any encumbrance of its(their) Ownership Interest prior to such transfer. The departing Cotenant shall be liable for all financial obligations incurred by it prior to its effective date of termination. The Ownership Interests of the remaining Cotenant(s) shall be recalculated as appropriate, under Section 2.2. If PGandE is a departing Cotenant, the purchasing Cotenant(s) shall assume PGandE's obligations as operator under Article 9.0 and PGandE shall cause the

transfer of all Land Rights, licenses, permits or other rights of approval necessary to use and operate the New Line, other than Land Rights associated with any facility other than the New Line, to the operating Cotenant(s) to the extent it has a right to do so.

### 14.7    Effect of Termination

Upon termination of its participation in this Agreement by any Cotenant other than PGandE, PGandE and such other Cotenant shall make arrangements immediately to disconnect from the Line Circuits or Other Circuits any facilities associated with such Cotenant's use of its Firm Transmission Entitlement. Such other Cotenant shall claim no further right to have such facilities connected to PGandE's electrical system by reason of this Agreement; provided, that such other Cotenant does not by this Agreement waive any rights it may have to seek an interconnection under any applicable law or regulation; provided further, that such other Cotenant does not by this Agreement waive any rights it may have for transmission service in accordance with the Stanislaus Commitments, its Interconnection Agreement with PGandE, or any applicable laws including the antitrust laws. For purposes of this Agreement, the Stanislaus Commitments shall be that statement of commitments by PGandE submitted to the United States Department of Justice by PGandE on April 30, 1976 and incorporated in PGandE's Diablo Canyon license, as those commitments may be amended. Such termination shall also automatically terminate with respect to such other Cotenant any tariffs or rate schedules which in whole or in part result from or incorporate this Agreement and no regulatory filings shall be required to effectuate such termination. After such termination, all rights to any regulated service under this Agreement or any such tariff or rate schedule shall cease. Such termination shall not affect rights and obligations of a continuing nature or for payment of money for transactions occurring prior to termination.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**15.0     Coordinating Committee**

**15.1     Structure**

As a means of fostering effective cooperation and interchange of information and of providing consultation on a prompt and orderly basis among the Cotenants in connection with various administrative and technical matters which may arise from time to time, the Cotenants establish the Coordinating Committee described in this Article 15.0. The Chairman for the Coordinating Committee shall be the representative of PGandE, as operator, and the Chairman shall be responsible for calling meetings and establishing agendas, at the Chairman's discretion, or upon the request of another Cotenant. The Coordinating Committee shall consist of no more than two representatives appointed by each Cotenant; provided, however, that each Cotenant shall be entitled to only one vote. Within thirty (30) days after the execution of this Cotenancy Agreement, each Cotenant shall designate its representatives on the Coordinating Committee, and notify the other Cotenants thereof.

**15.2     Functions and Responsibilities**

The Coordinating Committee shall have functions and responsibilities as follows:

15.2.1     Provide liaison between PGandE and the other Cotenants with respect to the progress, performance and completion of construction work, the performance of operation and maintenance, and the progress, performance and completion of Capital Replacements and Additions and Betterments and the financial and accounting aspects thereof;

15.2.2     Consider and attempt to resolve disputes arising under this Agreement before they are submitted to arbitration as provided in Article 13.0;

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

15.2.3    Review and, to the extent each Cotenant in its sole discretion agrees to a given action, approve, modify or otherwise act upon recommendations of PGandE and other actions proposed by other members of the Coordinating Committee regarding the matters described in Sections 15.2.3.1 through 15.2.3.4. If, within sixty (60) calendar days (or as otherwise agreed by the Cotenants) after the proposed action is submitted by any Cotenant to the Coordinating Committee for decision, the Coordinating Committee does not reach such an unanimous agreement with respect to any such action, then the provisions of Section 15.3 shall apply. Unless an arbitration under Section 15.3.1.4.2 is commenced within thirty (30) calendar days after PGandE's determination under Sections 15.3.1.2 and 15.3.1.3 are communicated to the other Cotenants, PGandE may take whatever action with respect to the matters described in Sections 15.2.3.1 through 15.2.3.4 that it determines appropriate under this Agreement.

15.2.3.1    Requests by Cotenants other than PGandE for maintenance on the Line Circuits additional to that otherwise performed by PGandE;

15.2.3.2    Capital Replacements to the New Line as described in Section 5.5 except with respect to Operating Emergencies under Sections 9.3 and 5.2;

15.2.3.3    Additions and Betterments to the New Line and Associated Facilities that do not increase the capacity of those facilities, as described in Section 5.5; and

15.2.3.4    Changes in points of connection of the powerplants, and redesignations in whole or in part of the Firm Transmission

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

Entitlement, of any Cotenant other than PGandE, as described in Sections 7.5, 7.8, 7.9 and 7.10.

15.2.4     Provide a forum for the discussion of:

15.2.4.1     Planned outages of the Line Circuits and Associated Facilities for scheduled maintenance;

15.2.4.2     Operating Emergencies on the Line Circuits and Associated Facilities as provided in Section 9.3;

15.2.4.3     PGandE's methodology, assumptions and data for establishing the New Line rating, as described in Section 4.7;

15.2.4.4     PGandE's methodology for adjusting the annual payment for the operation and maintenance charge for the Line Circuits, as described in Section 6.2;

15.2.4.5     PGandE's methodology, assumptions and data for establishing the annual ownership charge related to the Associated Facilities, as described in Section 5.4;

15.2.4.6     Information regarding easements and rights-of-way related to the New Line and Associated Facilities;

15.2.4.7     Information regarding taxes with respect to the New Line and Associated Facilities;

15.2.4.8     Transfers of interests as provided in Section 2.4 and the exercise of rights of refusal as provided in Section 2.5; and

15.2.4.9     The need for, and desirability of, replacing the New Line or Associated Facilities in the event of damage or destruction,

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

as provided in Article 11.0, and any termination under Article 14.0.

**15.3    Consequences of Non-Unanimous Decisions**

If the Coordinating Committee does not reach an unanimous decision as described in Section 15.2.3 as to any action with respect to any matter described in Sections 15.2.3.1 through 15.2.3.4, then either Section 15.3.1 (with respect to changes in PGandE's activities) or Section 15.3.2 (with respect to disputes regarding Costs) shall govern such action.

15.3.1    If (i) any Cotenant(s) other than PGandE request(s) PGandE to alter any activity to be engaged in or proposed by PGandE with respect to any matter described in Sections 15.2.3.1 through 15.2.3.4, and PGandE does not agree that such activity should be performed as requested by such Cotenant(s), or (ii) any Cotenant(s) other than PGandE request(s) PGandE to engage in any activity with respect to any matter described in Sections 15.2.3.1 through 15.2.3.4, and PGandE does not agree that activity should be performed at all (the "Activity"), then PGandE shall engage in the Activity upon the satisfaction of the requirements of this Section 15.3.1. Any other dispute with respect to any matter described in Section 15.2.3.1 through 15.2.3.4 shall be governed by Section 15.3.2. PGandE shall not be required to engage in the Activity unless and until each of the requirements contained in Sections 15.3.1.1 through 15.3.1.3 is met.

15.3.1.1    The requesting Cotenant or Cotenants must pay to PGandE the full Cost of the Activity as provided in Section 6.3. Such payment shall only be refundable to the extent provided in Sections 6.3 and 15.3.1.4.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

15.3.1.2    PGandE must determine that the Activity is feasible, consistent with Good Utility Practice, and does not (i) decrease the safety, integrity or operability of the Line Circuits, Associated Facilities or any portion of the PGandE system or the system of any Cotenant, or (ii) impair the health or safety of employees or the public.

15.3.1.3    PGandE must determine that it has, or has available to it, sufficient resources to engage in the Activity without substantially impairing or interfering with its other activities.

15.3.1.4    All disputes with respect to the Activity shall be settled through arbitration under Section 13.2. The sole and exclusive remedies with respect to the Activity that may be obtained by the requesting Cotenant(s) are described in Sections 15.3.1.4.1 and 15.3.1.4.2.

15.3.1.4.1    If it is determined through any such arbitration that the performance of the Activity would more closely represent the standards described in Section 13.2.1 than would PGandE's decision not to engage in the Activity, then the sole and exclusive remedy of the requesting Cotenant(s) with respect to that determination shall be a partial refund or reduction of the amounts paid or to be paid by it (them) under Section 15.3.1.1. In the event of such a determination, the Cotenants shall share the Costs of the Activity allowed by the arbitration decision in proportion to their Ownership Interests.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

15.3.1.4.2    If it is determined through any such arbitration that PGandE's determinations under Sections 15.3.1.2 and 15.3.1.3 do not satisfy the requirements of Section 16.6, then the sole and exclusive remedy of the requesting Cotenant(s) with respect to that determination shall be to require PGandE prospectively to engage in the Activity as requested by the requesting Cotenant(s). In the event of such a determination, the requesting Cotenant(s) shall pay PGandE the full Cost of the activity as provided in Section 6.3.

15.3.1.4.3    All disputes under Section 15.3.1.4.1 and 15.3.1.4.2 with respect to a given Activity must be arbitrated simultaneously or shall be waived by the requesting Cotenant(s).

15.3.2    If any Cotenant(s) other than PGandE disputes any Cost of any action with respect to any matter described in Sections 15.2.3.1 through 15.2.3.4 for which the Cotenants other than PGandE are billed by PGandE on an actual cost basis (the "Action"), then the sole and exclusive remedy which may be obtained by the disputing Cotenant(s) with respect to the Action is described in Section 15.3.2.1. All such disputes shall be settled through arbitration under Section 13.2.

15.3.2.1    If it is determined through any such arbitration that an alternative to the Action proposed by the disputing Cotenant(s), including but not limited to the alternative of no action, more closely represents the standards described in Section 13.2.1 and would result in lower Costs (the "Cost Savings") than does PGandE's performance of the

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

Action, then the arbitrator may require PGandE to make a partial or full refund of any amounts paid to PGandE for the Action by the Cotenants other than PGandE. The arbitrator's decision may take into consideration the existence of any less expensive alternative to the Action proposed by the disputing Cotenant and the reasonableness and necessity of the Costs incurred by PGandE for the Action. Such refund shall not exceed the share of the Cost Savings corresponding to the Ownership Interest in percent of the Cotenants other than PGandE and shall be made to the Cotenants other than PGandE in proportion to their Ownership Interests.

**15.4    Limitation of Decisions**

Except as expressly provided in this Agreement, no Cotenant other than PGandE shall have any right to participate in any decision or action with respect to the operation and maintenance of, the making of Capital Replacements to, or the making of Additions and Betterments to the Line Circuits, Associated Facilities or Other Circuits.

**15.5    Committee Minutes**

A designated representative of the Committee shall prepare and distribute written minutes and records of all meetings and all actions, agreements or determinations made by the Committee for review and comment by each representative on said Committee.

**15.6    Limitation of Authority**

The Committee shall have no authority to modify any of the terms, covenants or conditions of the Interconnection Agreements or of this Cotenancy Agreement.

### 15.7 Change in Designated Representative

Each Cotenant shall notify the others promptly of any change in the designation of its representative on the Committee. A Cotenant may designate an alternate to act as its representative on the Committee in the absence of the regular member or to act on specified occasions with respect to specified matters. Any alternate representative appearing at a Committee meeting shall be deemed to have authority to act on behalf of the Cotenant such alternate representative represents unless the Committee chairman is furnished with written notice to the contrary.

### 15.8 Expenses of Representatives

Any expenses incurred by any member of the Committee in connection with such member's duties on such Committee shall be paid and borne by the Cotenant whom such member represents.

## 16.0 General Provisions

### 16.1 Captions

All titles, subject headings, and similar references in this Agreement are provided for the purpose of reference and convenience only, and are not intended to affect in any way the meaning of the contents or scope of this Agreement.

### 16.2 Construction of Agreement

Ambiguities in the wording of this Agreement shall not be construed for or against any Cotenant, but shall be construed in a manner which most accurately reflects the intent of the Cotenants.

### 16.3 Effect on Other Contracts

This Agreement supersedes and terminates the Sharing Agreement with respect to the contractual relationship thereunder between PGandE and any other Cotenant which executes this Agreement. The Cotenants agree that this Agreement

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

implements and fully satisfies the following provisions of the Interconnection Agreements: Section 6.14 of the DWR/PGandE Comprehensive Agreement, Section 6.2.8 of the NCPA/PGandE Interconnection Agreement, and Section 6.2.10 of the Santa Clara/PGandE Interconnection Agreement. Except to the extent that this Agreement specifically sets forth the rights and obligations of the Cotenants with respect to the Line Circuits, Other Circuits and Associated Facilities, nothing contained in this Agreement shall be construed as affecting or altering the rights or obligations of the Cotenants contained in the Interconnection Agreements.

**16.4    Regulatory Authority**

16.4.1    To the extent that FERC has jurisdiction over any provision of this Agreement, the Cotenants shall take all reasonable action necessary to secure the approval by FERC without change of any such provision. When PGandE submits such provisions to FERC for approval, each other Cotenant shall by separate letter to FERC support without qualification such initial filing and the acceptance and approval by FERC of such provisions without change and shall state such Cotenant's concurrence with the termination procedures provided in Section 14.6 above.

16.4.2    The Cotenants agree that Sections 5.4, 5.7 and Appendix C of this Agreement may be subject to regulation by FERC. Sections 16.4.2.1 through 16.4.2.3 shall apply with respect to any such regulation by FERC. No other provision of this Agreement shall be construed as an undertaking by PGandE to provide to any other Cotenant transmission or any other service which service is subject to the jurisdiction of FERC. In the event any provision of this Agreement other than Sections 5.4, 5.7 and Appendix C is construed by FERC as being subject to its jurisdiction, the Cotenants shall meet to determine whether, in each Cotenant's sole

discretion, to make amendments to this Agreement which would preserve the benefits of this Agreement to each Cotenant, but which would render the Agreement as amended outside of the jurisdiction of FERC except with respect to Sections 5.4, 5.7 and Appendix C. If the Cotenants do not so amend this Agreement, and if FERC retains jurisdiction over any provision of this Agreement, then Sections 16.4.2.1 and 16.4.2.2 shall apply with respect to each such provision.

16.4.2.1    Nothing contained in this Agreement shall be construed as affecting in any way the right of PGandE to unilaterally make application to FERC for a change in rates under Section 205 of the Federal Power Act and pursuant to FERC's rules and regulations promulgated thereunder.

16.4.2.2    Any Cotenant may unilaterally apply to FERC for changes in rates or other terms and conditions of service, to the extent subject to the jurisdiction of FERC, under Section 206 of the Federal Power Act and pursuant to FERC's rules and regulations promulgated thereunder.

## 16.5    Governing Law

This Agreement shall be interpreted, governed by, and construed under the laws of the State of California or the laws of the United States, as applicable, as if executed and to be performed wholly within the State of California, excluding any choice of law rules which would direct the application of the substantive law of another jurisdiction.

## 16.6    Judgments and Determinations

When the terms of this Agreement provide for an action to be made or the existence of a condition to be established based on the judgment or a

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

determination of any Cotenant, such judgment shall be exercised and such
determination shall be made consistent with good faith and fair dealing and in
accordance with Good Utility Practice, and shall be neither arbitrary nor
capricious.

### 16.7 License To Install Facilities

Provided that PGandE as operator or its successor as operator is either the First
Cotenant or the Second Cotenant, each Cotenant ("First Cotenant"), upon request
by any other Cotenant ("Second Cotenant") and to the extent that its rights permit,
shall give to such Second Cotenant a license or licenses to construct, install,
operate, maintain, inspect, test, read, check, replace and repair, upon the property
of the First Cotenant other than the New Line, such facilities as are necessary for
the exercise of rights created by this Agreement. The license or licenses so given
shall be in form and of legal sufficiency acceptable to the Second Cotenant, shall
be and remain in effect during the term of this Agreement, and shall expire
coincident therewith, or for such lesser period as may be appropriate. The Second
Cotenant shall have a reasonable time after the expiration of such license or
licenses in which to remove the facilities so installed or constructed.

### 16.8 No Dedication of Facilities

Except as expressly provided in this Agreement, any undertaking by one Cotenant
to any other Cotenant under any provision of this Agreement is rendered strictly
as an accommodation and shall not constitute the dedication of the electric system
or any portion thereof by the undertaking Cotenant to the public or to any other
Cotenant or any person or entity which is not a Cotenant, and it is understood and
agreed that any such undertaking under any provisions of or resulting from this
Agreement by any Cotenant shall cease upon the termination of such Cotenant's
obligations under this Agreement.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**16.9    Notices**

16.9.1        Any notice, demand, information, report or item otherwise required, authorized or provided for in this Agreement, shall be deemed properly given if delivered personally or sent by United States Mail, postage prepaid, to the persons specified below:

16.9.1.1

To PGandE:
Vice President, Electric Operations
Pacific Gas and Electric Company
77 Beale Street
San Francisco, California 94106

and to

Chief Generation Planning Engineer
Pacific Gas and Electric Company
77 Beale Street
San Francisco, California 94106

16.9.1.2

To CDWR:
State of California
Department of Water Resources
C/O Chief - Energy Division
P.O. Box 388
Sacramento, California 95802

16.9.1.3

To NCPA:
General Manager
Northern California Power Agency
180 Cirby Way
Roseville, California 95678

16.9.1.4

To Santa Clara:
City Manager
City of Santa Clara
1500 Warburton Avenue
Santa Clara, California 95050

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

16.9.2    Any Cotenant may change designation of the person who is to receive notices on its behalf by giving the other Cotenants notice thereof in the manner above provided in this Section 16.9.

16.9.3    Any notice of a routine character in connection with service under this Agreement or in connection with operation of facilities shall be given in such a manner as the Cotenants may determine from time to time, unless otherwise provided in this Agreement.

## 16.10  Audits and Review of Financial Records

Except with respect to Costs billed under Section 6.2, each Cotenant shall have the right to review the supporting documents upon which Costs billed have been determined. PGandE shall cooperate with the Cotenant to facilitate the review of the supporting documents. Each Cotenant shall also have the right to conduct an audit of the related financial records. In the event of a proposed audit, the Cotenant(s) calling for the audit shall coordinate with PGandE to minimize inconvenience to PGandE, and shall use its(their) best efforts to coordinate with the other Cotenants to reduce the number of auditors and the frequency and duration of such audits. The Cotenants may conduct one joint audit every year of the Costs billed for each project under Section 6.3. In addition to such joint audits, any Cotenant(s) may initiate independent audits or a review of supporting documents, provided such Cotenant(s) reimburses PGandE for its administrative Costs associated with the independent audit or document review. The Cotenants right to review or audit supporting documents and financial records with respect to Costs assessed pursuant to Articles 4.0 and 5.0 shall terminate one year after PGandE provides the final accounting for such Costs pursuant to Sections 4.7 or 6.3.5, as appropriate.

## 16.11  Relationship of Parties

The covenants, obligations and liability of the Cotenants are intended to be several and not joint or joint and several, and nothing contained in this Agreement

shall ever be construed to create an association, joint venture, trust or partnership, or to impose a trust or partnership obligation on or with regard to a Cotenant. Each Cotenant shall be individually responsible for its own obligations as provided in this Agreement. No Cotenant shall be under the control of or shall be deemed to control any other Cotenant.

### 16.12   Taxes

16.12.1      The Cotenants shall use their best efforts to have any taxing authority imposing any taxes or assessments on property owned or used by the Cotenants in common, or any interests or rights therein, assess and levy such taxes or assessments directly against the respective Ownership Interests of each Cotenant.

16.12.2      All taxes or assessments that are ascribable to a Cotenant's Ownership Interest shall be the sole responsibility of the Cotenant to whose Ownership Interest said taxes or assessments are levied.

16.12.3      If any property taxes or other taxes or assessments are levied or assessed in a manner other than as specified in Sections 16.12.1 and 16.12.2 above, the Cotenants shall apportion such taxes and assessments and the payment thereof in accordance with the principles of Sections 16.12.1 and 16.12.2.

16.12.4      If a property or other tax is assessed or levied against PGandE for or ascribable to property owned by any other Cotenant, then PGandE shall notify such other Cotenant of such assessment or levy and thereafter such other Cotenant shall cooperate with PGandE in contesting such assessment or levy. If PGandE is required to pay such tax, then such other Cotenant shall reimburse PGandE for the amount of such assessment.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

16.12.5    The provisions of this Section 16.12 shall not be construed so as to avoid the inclusion of taxes paid by PGandE as a Cost to PGandE under this Agreement. No Cotenant other than PGandE shall be responsible for any portion of real property taxes attributable to Land Rights, except as may be provided in its payments under Sections 6.1 or 6.2.

## 16.13  Uncontrollable Forces

No Cotenant shall be considered to be in default in the performance of any obligation under this Agreement (other than an obligation to make payment for bills rendered pursuant to this Agreement) when a failure of performance shall be the result of uncontrollable forces. The term "uncontrollable forces" shall mean any cause or causes beyond the control of the Cotenant unable to perform such obligation, including, but not limited to, failure of or threat of failure of facilities, flood, earthquake, storm, drought, fire, pestilence, lightning and other natural catastrophes, epidemic, war, riot, civil disturbance or disobedience, sabotage, strike, lockout, labor disturbance, labor or material shortage, government priorities and restraint by court order or public authority and action or nonaction by, or inability to obtain the necessary authorizations or approvals from any governmental agency or authority, any of which by exercise of due diligence such Cotenant could not reasonably have been expected to avoid and which by exercise of due diligence it has been unable to overcome. Nothing contained in this Section 16.13 shall be construed as requiring a Cotenant to settle any strike, lockout or labor dispute in which it may be involved, or to accept any permit, certificate or other authorization which contains conditions which such Cotenant determines in its judgment are unduly burdensome.

## 16.14  Waiver of Rights

Any waiver at any time by any Cotenant of its rights with respect to a default under this Agreement, or with respect to any other matter arising in connection

with this Agreement, shall not constitute or be deemed a waiver with respect to any subsequent default or other matter arising in connection with this Agreement. Any delay short of the statutory period of limitations, in asserting or enforcing any right, shall not constitute or be deemed a waiver.

### 16.15   Writings and Other Documents

Each Cotenant agrees to execute any writing or other document reasonably necessary to effectuate the provisions of this Agreement with respect to the existence or transfer of Ownership Interests. Upon the execution of this Agreement by PGandE and any other Cotenant, PGandE agrees to prepare and deliver an instrument that confirms such Cotenant's Ownership Interest and to attach its as-built drawings of the New Line as evidence of the type and location of the facilities included in such Ownership Interest.

### 16.16   Venue

The Cotenants agree that the order of signing the Agreement shall not be taken into consideration for purposes of determining venue.

### 16.17   Proprietary Information

Except as provided in Section 16.17.4, nothing in this Agreement shall require any Cotenant to make its proprietary information available to another Cotenant.

16.17.1    A Cotenant shall notify the Coordinating Committee when information requested by the Cotenants is considered proprietary.

16.17.2    To the extent such Cotenant releases such proprietary information in any form, the Cotenants receiving such information agree to the extent permitted by law: (1) to treat such information as confidential; (2) not to disclose any such information they receive to any third party; and (3) not to use such information for any purpose other than the performance of this Agreement.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

16.17.3     The Cotenants shall disclose such proprietary information to their consultants only to the extent that such consultants agree to be bound to the terms of this Section 16.17.

16.17.4     The Cotenants, their personnel and consultants shall have the right to examine, in the disclosing Cotenant's offices only, documents that contain such proprietary information and were produced to satisfy the other Cotenants' information request, but shall not have the right to obtain or make copies of such documents.

## 16.18   Execution

This Agreement may be executed by counterpart. This Agreement is entered into as of the date first hereinabove written.

## 16.19   No Precedent

The Cotenants agree that this Agreement reflects a unique situation and that its provisions shall not constitute a precedent with respect to any other agreement to be entered into by any Cotenant.

## 16.20   Incorporation by Reference

Appendices A, B, and C attached hereto and as may be modified from time to time by the Cotenants are incorporated by reference into this Agreement.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

PACIFIC GAS AND ELECTRIC COMPANY          NORTHERN CALIFORNIA POWER AGENCY


By: /s/ G. A. Maneatis                    By: /s/ Paul E. Cavote
                                                  General Manager

Its: Executive Vice President
Date: March 11, 1985                      Date: 3/18/85

                                          STATE OF CALIFORNIA
                                          DEPARTMENT OF WATER RESOURCES

APPROVED AS TO LEGAL
FORM AND SUFFICIENCY:
                                          By: /s/ David Kennedy
                                          Director

By: /s/ Susan N. Weber                    Date:4-17-89
Chief Counsel

                                          Department of General Services
                                          APPROVED



                                          May 10 1989

                                          By Elizabeth Yost
                                          Chief Deputy Director

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

CITY OF SANTA CLARA

ATTEST:

/s/ J. E. Boccignone
City Clerk

By: /s/ W. A. Gissler
Mayor

Date: 3-22-85

APPROVED AS TO FORM:

By: /s/ D. R. Von Raesfeld
City Manager

City Attorney

Date: 3-21-85

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

# APPENDIX A

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139



PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

Case: 19-30088    Doc# 11889-4    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
98 of 195

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

# APPENDIX B

## PRELIMINARY PAYMENT SCHEDULE CASTLE ROCK JUNCTION - LAKEVILLE LINE [1]

### ($ 1000'S)

| | MARCH | APRIL | MAY | JUNE | JULY | AUG | SEPT | OCT | NOV | DEC | JAN | FEB | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL SPENT BY FIRST OF MONTH [2] | 27320 | 32463 | 34840 | 36627 | 38412 | 39898 | 41383 | 42469 | 43554 | 44154 | 44754 | 45204 | 45454 |
| FINANCIAL PERCENT COMPLETE | .60 | .71 | .77 | .81 | .85 | .88 | .91 | .93 | .96 | .97 | .98 | .99 | |
| EST. EXPENDITURE FOR MONTH | 5143 | 2377 | 1787 | 4455 | 1200 | 1200 | 800 | 800 | 600 | 600 | 450 | 250 | |
| MONTHLY PAYMENTS | | | | | | | | | | | | | |
| PGandE | 5143 | 2377 | 1787 | -2670 | 286 | 285 | 286 | 285 | 0 | 0 | 0 | 0 | 35099 |
| DWR | 0 | 0 | 0 | 2673 | 720 | 720 | 480 | 480 | 360 | 360 | 270 | 150 | 6213 |
| CITY | 0 | 0 | 0 | 974 | 262 | 262 | 175 | 175 | 131 | 131 | 98 | 55 | 2263 |
| NCPA | 0 | 0 | 0 | 808 | 218 | 218 | 145 | 145 | 109 | 109 | 82 | 45 | 1879 |

[1] PGandE pays 77.20 percent of the costs. The other Parties pay 22.80 percent of the costs in the following proportions:
DWR: 60.00 percent
CITY: 21.85 percent
NCPA: 18.15 percent

[2] Estimated costs not including contingencies

May 21, 1984

Rate Schedule No. 91*
NCPA/CSC Cotenancy Agreement

## APPENDIX C

ANNUAL CHARGE FOR THE ASSOCIATED  FACILITIES

Cotenants other than PGandE shall pay PGandE an annual charge based on PGandE's system average rate for ownership of transmission facilities.  The system average rate is developed by dividing the total annual transmission system Costs by the total undepreciated historic investment in tangible transmission plant, yielding the annual average revenue required for each dollar of undepreciated investment.

Each Cotenant's payment for the annual system average charge shall be calculated as follows:

$$P = A \times C$$

where

P =   Annual payment

A =   Actual dollar amount of the Cotenant's total capital payments with respect to the Associated Facilities shall be its contribution-in-aid-ofconstruction for the Associated Facilities made and adjusted pursuant to Sections 4.4 and 4.7 of this Agreement and any payments made for Additions or Betterments as provided in Section 5.7.

C =   PGandE's system average rate for transmission facilities, which as of the effective date of this Agreement is 8.97%.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**Supplement No. 1 to**
**Rate Schedule FERC No. 139**

**Calculations of the Final Installation Cost**

Filed in

FERC Docket No. ER92-133-000

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**CALCULATION OF
THE FINAL INSTALLATION COSTS,
AND
CAPITAL AMOUNTS OWED BY PG&E BY THE OTHER COTENANTS**

Section 4.7 of the Cotenancy Agreement specifies that, after the final accounting for the costs of the Transmission Line and Associated Facilities is completed, additional payments or reimbursements shall be made.  Interest is to be applied to any such payment or reimbursement pursuant to Section 6.6 of the Cotenancy Agreement.

PG&E has completed the final accounting for the Transmission Line and Associated Facilities.  The preliminary construction cost estimates totalled $47,881,700 of which $45,500,000 was for the Transmission Line, and $2,381,700 was for the Associated Facilities.  The final construction costs totalled $50,533,569 of which $48,293,982 was for The Transmission Line and $2,239,587 was for the Associated Facilities (see Attachment 3a for further detail).  The remaining balance due PG&E for construction costs from the other Cotenants is calculated as follows:

| | |
|---|---|
| Total Final Costs: | $50,533,569 |
| PG&E's 77.2% Ownership Share: | -39,057,395 |
| Other Cotenants' 22.71% Ownership Share | $11,476,174 |
| Payments Received by PG&E from other Cotenant's towards ownership | -11,425,983 |
| Additional Capital Contribution due PG&E from other Cotenants | $     50,191 |

The remaining amount due to PG&E from the other three Cotenants of $50,191, does not include interest.  These costs are borne in proportion to the Cotenant's Ownership Interests and are explained in further detail in Attachments 3a and 3b.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

The Summary Workpapers in Attachment 3a include:

1) allocation, in direct proportion to Ownership Interest for each Cotenant, of the total final costs for the Transmission Line and the Associated Facilities; 2) payments previously received by PG&E towards these costs, including interest paid; 3) the remaining balance due PG&E from the other Cotenants, with the appropriate interest applied, assuming a repayment date after August 31, 1991; and 4) related workpapers.

Without interest, the amounts owed to PG&E by the other Cotenants are:

| NCPA | $ 8,516 |
| DWR | $32,135 |
| CSC | $ 9,540 |

Attachment 3b shows the interest calculations applied through August 31, 1991 to the amounts the other Cotenants owe PG&E resulting in a total principal and interest amount due of:

| NCPA | $15,004.09 |
| DWR | $56,618.72 |
| CSC | $16,808.25 |

Document Accession #: 20190730-5099    Filed Date: 07/30/2019

# Attachment 3a

# SUMMARY WORKPAPERS
# FINAL ACCOUNTING

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

ATTACHMENT

## COTENANTS COST SHARING
### FINAL ACCOUNTING

|  | DWR | CSC | NCPA | SUBTOTAL | PG&E CONTRIBUTION | TOTAL COST |
|---|---|---|---|---|---|---|
| **TOTAL COST SHARE | $6,887,725 | $2,506,465 | $2,081,983 | $11,476,174 | $39,057,395 | $50,533,569 |
| Ownership Interest | 13.63% | 4.96% | 4.12% | 22.71% | 77.29% | |
| | | | | | | |
| PAYMENTS RECEIVED | | | | | | |
| Jun-84 | 2,673,000 | 974,000 | 808,000 | 4,455,000 | | |
| *Jun-84 | 325,817 | 118,609 | 98,602 | 543,028 | | |
| Jul-84 | 720,000 | 262,000 | 218,000 | 12,000,000 | | |
| Aug-84 | 720,000 | 262,000 | 218,000 | 1,200,000 | | |
| Sep-84 | 480,000 | 175,000 | 145,000 | 800,000 | | |
| Oct-84 | 480,000 | 175,000 | 145,000 | 800,000 | | |
| Nov-84 | 480,000 | 131,000 | 109,000 | 600,000 | | |
| Dec-84 | 360,000 | 131,000 | 109,000 | 870,000 | | |
| Jan-85 | 150,000 | 98,000 | 82,000 | 330,000 | | |
| Feb-85 | 0 | 55,000 | 45,000 | 100,000 | | |
| Aug-85 | 331,883 | 120,817 | 100,483 | 553,138 | | |
| | | | | | | |
| TOTAL PAYMENTS RECEIVED | $6,870,700 | $2,502,426 | $2,078,040 | $11,451,166 | | |
| Minus interest portion added to | | | | | | |
| 7/22/85 PG&E billings to each Cotenant | $15,110 | $5,501 | $4,573 | $25,183 | | |
| ADJUSTED PAYMENTS RECEIVED | $6,855,590 | $2,496,925 | $2,073,467 | $11,425,983 | | |
| | | | | | | |
| Balance Due | $32,135.00 | $9,540.00 | $8,516.00 | $50,191.00 | | |
| Interest Amount Due Thru August 1991 | $24,482.72 | $7,268.25 | $6,488.09 | $38,239.06 | | |
| TOTAL AMOUNT DUE | $56,617.72 | $16,808.25 | $15,004.09 | $88,430.06 | | |

*Reflects payments for associated facilities (substation) D&C 1532886

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

JAN 90

FINAL CONSTRUCTION COST ACCOUNTING
.. OCT 87

| CAPITAL COST | GN 1925601 | ---------- | ---------- | TOTAL |
|---|---|---|---|---|
| **Direct** | | | | |
| Division | 54,655 | 0 | 0 | 54,655 |
| General Construction | 1,131,763 | 0 | 0 | 1,131,763 |
| General Office | 267,844 | 0 | 0 | 267,844 |
| Contract Work | 288,444 | 0 | 0 | 288,444 |
| Materials & Supplies | 1,639,447 | 0 | 0 | 1,639,447 |
| Employee Expense | 59,453 | 0 | 0 | 59,453 |
| Other | 42,594 | 0 | 0 | 42,594 |
| Sub Total | 3,484,200 | 0 | 0 | 3,484,200 |
| **Indirect** | | | | |
| Mileage & Equipment | 182,497 | 0 | 0 | 182,497 |
| Material & Supplies | 88,941 | 0 | 0 | 88,941 |
| GO Overhead | 513,527 | 0 | 0 | 513,527 |
| AFUDC | 1,015,898 | 0 | 0 | 1,015,898 |
| Other | 1,170,016 | 0 | 0 | 1,170,016 |
| Sub Total | 2,970,879 | 0 | 0 | 2,970,879 |
| TOTAL CAPITAL COST | 6,455,079 | 0 | 0 | 6,455,079 |
| REMOVAL | 45,198 | 0 | 0 | 45,198 |
| SALVAGE | -32,769 | 0 | 0 | -32,769 |
| M & O | 4,522 | 0 | 0 | 4,522 |
| OTHER | 8,932 | 0 | 0 | 8,932 |
| Sub Total | 25,883 | 0 | 0 | 25,883 |
| TOTAL CONSTRUCTION COST | 6,480,962 | 0 | 0 | 6,480,962 |

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

GM 1925601
Associated Facilities

|  | LABOR | MATERIAL | OTHER | TOTAL |
|---|---|---|---|---|
| PHASE 1 and 2 | $ 322,922 | $ 587,652 | $ 1,139,134 | $ 2,049,708 |
| MAINTENANCE | $ 1,011 | $ 537 | $ 1,366 | 2,914 |
| ENGINEERING | | | | |
| Phase 1 | --------- | --------- | $ 117,042 | 117,042 |
| Phase 2 | --------- | --------- | $ 69,923 | 69,923 |
| TOTAL.   .      . | $ 323,933 | $ 588,189 | $ 1,327,465 | $ 2,239,587 |

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

COTENANTS INVOICE SCHEDULE

01/90

| INV. # | DATE | C.D.W.R. | N.C.P.A. | C.S.C. | TOTAL |
|---|---|---|---|---|---|
| 1 | 5/84 | 325,817. | 98,602. | 18,609 | 543,028 |
| 1 | 5/84 | 2,673,000. | 808,000. | 974,000. | 4,455,000. |
| 2 | 6/84 | 720,000. | 218,000. | 262,000. | 1,200,000 |
| 3 | 7/84 | 720,000. | 218,000. | 262,000. | 1,200,000. |
| 4 | 8/84 | 480,000. | 145,000. | 175,000. | 800,000. |
| 5 | 9/84 | 480,000. | 145,000. | 175,000. | 800,000. |
| 6 | 10/84 | 360,000. | 109,000. | 131,000. | 600,000. |
| 7 | 11/84 | 360,000. | 109,000. | 131,000. | 600,000. |
| 8 | 12/84 | 270,000. | 82,000. | 98,000. | 450,000. |
| 9 | 1/85 | 150,000. | 45,000. | 55,000. | 250,000. |
| 10 | 7/85 | 316,772. | 95,865. | 115,316. | 527,953. |
| SUB TOTAL | | $6,855,590. | $2,073,467. | $2,496,925. | $11,425,982. |
| 10** | 7/85 | 15,110. | 4,573. | 5,500. | 25,183. |
| TOTAL | | $6,870,700. | $2,078,040. | $2,502,425. | $11,451,165. |

**Interest Income

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

## DISBURSEMENT OF COTENANTS PAYMENTS

01/90

| Date | JE # | FROM D&C 1532886 1532829 | TO GM 1925601 | Amount | Total |
|------|------|------|------|------|------|
| 06/84 | JE #91-1106 | : : | 543,028 | | $ 4,998,028 |
| : : | : : | : : | 3,723,231 | | |
| : : | : : | : : | 731,769 | | |
| 07/84 | 92-0023 | : : | 980,010 | | 1,200,000 |
| : : | : : | : : | 219,990 | | |
| 08/84 | 92-0002 | : : | 802,610 | | 982,000 |
| : : | : : | : : | 179,390 | | |
| 09/84 | 92-0017 | : : | 823,275 | | 1,018,000 |
| : : | : : | : : | 194,725 | | |
| 10/84 | 92-0027 | : : | 645,326 | | 800,000 |
| : : | : : | : : | 154,674 | | |
| 11/84 | 92-0029 | : : | 378,009 | | 469,000 |
| : : | : : | : : | 90,991 | | |
| 12/84 | 92-0029 | : : | 87,650 | | 109,000 |
| : : | : : | : : | 21,350 | | |
| 02/85 | 92-0015 | : : | 862,586 | | 1,072,000 |
| : : | : : | : : | 209,414 | | |
| 04/85 | 92-0031 | : : | 200,980 | | 250,000 |
| : : | : : | : : | 49,020 | | |
| 09/85 | 92-0011 | : : | 420,974 | | 527,954 |
| : : | : : | : : | 106,980 | | |

TOTAL CHARGES RECEIVED AND TRANSFERRED TO GM'S . . .$11,425,982    $11,425,982

09/85   JE #92-0011 INTEREST REC'D AND TRANSFERRED TO ACTIVITY *3969 ____ 25,183

TOTAL MONEY RECEIVED FROM COTENANTS THRU TO DATE   .      .     $11,451,165

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

FINAL CONSTRUCTION COST ACCOUNTING
.June 87     .April 87

| CAPITAL COST | GN 30 | GN 31 | ---------- | TOTAL |
|---|---|---|---|---|
| **Direct** | | | | |
| Division | 3,080 | 33,112 | 0 | 36,192 |
| . General Construction | 7,108,213 | 1,600,745 | 0 | 8,708,958 |
| . General Office | 573,746 | 467,929 | 0 | 1,041,675 |
| Contract Work | 2,818,632 | 969,604 | 0 | 3,788,236 |
| Materials & Supplies | 11,785,670 | 3,649,196 | 0 | 15,434,866 |
| Employee Expense | 327,211 | 110,469 | 0 | 437,680 |
| Other | 132,677 | 3,339 | 0 | 136,016 |
| Sub Total | 22,749,229 | 6,834,394 | 0 | 29,583,623 |
| **Indirect** | | | | |
| Mileage & Equipment | 3,335,051 | 328,778 | 0 | 3,663,829 |
| Material & Supplies | 125,890 | 58,050 | 0 | 183,940 |
| GO Overhead | 2,950,448 | 734,731 | 0 | 3,685,179 |
| AFUDC | 3,243,251 | 576,886 | 0 | 3,820,137 |
| Other | 5,320,363 | 1,371,570 | 0 | 6,691,933 |
| Sub Total | 14,975,003 | 3,070,015 | 0 | 18,045,018 |
| TOTAL CAPITAL COST | 37,724,232 | 9,904,409 | 0 | 47,628,641 |
| | | | | |
| REMOVAL | 87,877 | 0 | 0 | 87,877 |
| | 0 | | | |
| SALVAGE | -42,047 | 0 | 0 | -42,047 |
| | | | 0 | |
| M & O | 614,644 | 159 | 0 | 614,803 |
| OTHER | 3,494 | 1,214 | 0 | 4,708 |
| Sub Total | 663,968 | 1,373 | 0 | 665,341 |
| TOTAL CONSTRUCTION COST | 38,388,200 | 9,905,782 | 0 | 48,293,982 |

.1-4447 12-70

### INVOICE
## PACIFIC GAS AND ELECTRIC COMPANY

| | |
|---|---|
| California Department of Water Resources<br>P. O. Box 388<br>Sacramento, CA 95802<br>Attn. General Accounting | **OFFICE** San Francisco<br>**DIVISION** General Office<br>**DATE** July 22, 1985<br>**AMOUNT $** 331,882.94<br>**JOB NO.** UZB 1532829 |

**DETACH AND MAIL WITH PAYMENT**

**REFERENCE NO.** Contract No. B55027

| WORK DESCRIPTION AND DETAIL OF COSTS | QUANTITY | DETAIL AMOUNT | TOTAL AMOUNT |
|---|---|---|---|
| Preliminary Accounting | | | 8·29·85 |
| Statement for additional payment for actual costs of New Line. | | | $316,772.85 |
| Interest (February 1, 1985 - July 22, 1985) | | | 15,110.09 |
| TOTAL AMOUNT DUE | | | $331,882.94 |

pd. 8/29/85

**INVOICE**
**PACIFIC GAS AND ELECTRIC CO.**
MAY BE PAID AT ANY P.G. AND E. OFFICE OR AUTHORIZED PAY STATION

RECEIVED PAYMENT         DATE PAID

Case: 19-30088   Doc# 11889-4   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page
112 of 195

41-6447 12-70

**INVOICE**

## PACIFIC GAS AND ELECTRIC COMPANY

┌ ‎ ┐
Northern California Power Agency
180 Cirby Way
Roseville, CA  95678

└ ‎ ┘

**OFFICE** San Francisco

**DIVISION** General Office

**DATE** July 22, 1985

**AMOUNT** $100,438.26

**JOB NO.** UZB 1532829

**DETACH AND MAIL WITH PAYMENT**

**REFERENCE NO.**

| WORK DESCRIPTION AND DETAIL OF COSTS | QUANTITY | DETAIL AMOUNT | TOTAL AMOUNT |
|---|---|---|---|
| <u>Preliminary Accounting</u> | | | 8-22-85 |
| Statement for additional payment for actual costs of New Line. | | | $ 95,865.47 |
| Interest (February 1, 1985 - July 22, 1985) | | | 4,572.79 |
| TOTAL AMOUNT DUE | | | $100,438.26 |

pd.  8/22/85

**INVOICE**
**PACIFIC GAS AND ELECTRIC CO.**
MAY BE PAID AT ANY P G. AND E. OFFICE OR AUTHORIZED PAY STATION

**RECEIVED PAYMENT**          **DATE PAID**

Case: 19-30088    Doc# 11889-4    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page
113 of 195

INVOICE

## PACIFIC GAS AND ELECTRIC COMPANY

| | | |
|---|---|---|
| ⌐                  ¬ | **OFFICE** | San Francisco |
| City of Santa Clara | **DIVISION** | General Office |
| Electric Department | | |
| 1500 Warburton Avenue | **DATE** | July 22, 1985 |
| Santa Clara, CA  95050 | | |
| L                ⌐ | **AMOUNT $** | 120,816.58 |
| DETACH AND MAIL WITH PAYMENT | **JOB NO.** | UZB 1532829 |

REFERENCE NO.

| WORK DESCRIPTION AND DETAIL OF COSTS | QUANTITY | DETAIL AMOUNT | TOTAL AMOUNT |
|---|---|---|---|
| | | | 8-21-85 |
| <u>Preliminary Accounting</u> | | | |
| Statement for additional payment for actual costs of New Line. | | | $115,316.00 |
| Interest (February 1, 1985 - July 22, 1985) | | | 5,500.58 |
| TOTAL AMOUNT DUE | | | $120,816.58 |

✓fd. 8/21/85

INVOICE
**PACIFIC GAS AND ELECTRIC CO.**
MAY BE PAID AT ANY P. G. AND E. OFFICE OR AUTHORIZED PAY STATION

| | | RECEIVED PAYMENT | DATE PAID |
|---|---|---|---|
| PAID_____ 19___ CHECK NO_____ AMOUNT_____ | | FOR THE COMPANY | |

Case: 19-30088   Doc# 11889-4   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 114 of 195

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

# Attachment 3b

# ESTIMATED
# INTEREST CALCULATIONS
# THROUGH AUGUST 31, 1991
# FOR DWR, CSC, NCPA

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

ESTIMATE OF INTEREST DUE:

CITY OF SANTA CLARA
COST SHARING  FINAL ADJUSTMENT ACCOUNTING BALANCE DUE

| Month of Charge | A. Capital Contribution Due PG&E from CSC. Monthly Amt/$ | B=A+B.Prev Total Y-T-D Amount, $ | C Bank of America Prime Interest Rate (%) | D=(C/12)(B) Simple Interest | E=e^ Compounded Interest | F=F.Prev+A+D+E Cumulative Balance, $ |
|---|---|---|---|---|---|---|
| Jul-85 | 9,540 | 9,540.00 | 9.50 | 22.35 | 0.00 | 9,562.35 |
| Aug-85 | 0 | 9,540.00 | 9.50 | 75.53 | 0.18 | 9,638.05 |
| Sep-85 | 0 | 9,540.00 | 9.50 | 75.53 | 0.78 | 9,714.35 |
| Oct-85 | 0 | 9,540.00 | 9.50 | 75.53 | 1.38 | 9,791.26 |
| Nov-85 | 0 | 9,540.00 | 9.50 | 75.53 | 1.99 | 9,868.77 |
| Dec-85 | 0 | 9,540.00 | 9.50 | 75.53 | 2.60 | 9,946.90 |
| Jan-86 | 0 | 9,540.00 | 9.50 | 75.53 | 3.22 | 10,025.64 |
| Feb-86 | 0 | 9,540.00 | 9.50 | 75.53 | 3.84 | 10,105.01 |
| Mar-86 | 0 | 9,540.00 | 9.50 | 75.53 | 4.47 | 10,185.01 |
| Apr-86 | 0 | 9,540.00 | 9.00 | 71.55 | 4.84 | 10,261.40 |
| May-86 | 0 | 9,540.00 | 8.50 | 67.58 | 5.11 | 10,334.08 |
| Jun-86 | 0 | 9,540.00 | 8.50 | 67.58 | 5.62 | 10,407.28 |
| Jul-86 | 0 | 9,540.00 | 8.50 | 67.58 | 6.14 | 10,481.00 |
| Aug-86 | 0 | 9,540.00 | 8.00 | 63.60 | 6.27 | 10,550.88 |
| Sep-86 | 0 | 9,540.00 | 7.50 | 59.63 | 6.32 | 10,616.82 |
| Oct-86 | 0 | 9,540.00 | 7.50 | 59.63 | 6.73 | 10,683.17 |
| Nov-86 | 0 | 9,540.00 | 7.50 | 59.63 | 7.14 | 10,749.94 |
| Dec-86 | 0 | 9,540.00 | 7.50 | 59.63 | 7.56 | 10,817.13 |
| Jan-87 | 0 | 9,540.00 | 7.50 | 59.63 | 7.98 | 10,884.74 |
| Feb-87 | 0 | 9,540.00 | 7.50 | 59.63 | 8.40 | 10,952.77 |
| Mar-87 | 0 | 9,540.00 | 7.50 | 59.63 | 8.83 | 11,021.22 |
| Apr-87 | 0 | 9,540.00 | 7.50 | 59.63 | 9.26 | 11,090.10 |
| May-87 | 0 | 9,540.00 | 8.00 | 63.60 | 10.33 | 11,164.04 |
| Jun-87 | 0 | 9,540.00 | 8.25 | 65.59 | 11.17 | 11,240.79 |
| Jul-87 | 0 | 9,540.00 | 8.25 | 65.59 | 11.69 | 11,318.07 |
| Aug-87 | 0 | 9,540.00 | 8.25 | 65.59 | 12.22 | 11,395.88 |
| Sep-87 | 0 | 9,540.00 | 8.25 | 65.59 | 12.76 | 11,474.23 |
| Oct-87 | 0 | 9,540.00 | 8.75 | 69.56 | 14.10 | 11,557.90 |
| Nov-87 | 0 | 9,540.00 | 9.00 | 71.55 | 15.13 | 11,644.58 |
| Dec-87 | 0 | 9,540.00 | 8.75 | 69.56 | 15.35 | 11,729.49 |
| Jan-88 | 0 | 9,540.00 | 8.75 | 69.56 | 15.97 | 11,815.02 |
| Feb-88 | 0 | 9,540.00 | 8.75 | 69.56 | 16.59 | 11,901.17 |
| Mar-88 | 0 | 9,540.00 | 8.50 | 67.58 | 16.72 | 11,985.47 |
| Apr-88 | 0 | 9,540.00 | 8.50 | 67.58 | 17.32 | 12,070.36 |
| May-88 | 0 | 9,540.00 | 8.50 | 67.58 | 17.92 | 12,155.86 |
| Jun-88 | 0 | 9,540.00 | 9.00 | 71.55 | 19.62 | 12,247.03 |
| Jul-88 | 0 | 9,540.00 | 9.00 | 71.55 | 20.30 | 12,338.88 |
| Aug-88 | 0 | 9,540.00 | 9.50 | 75.53 | 22.16 | 12,436.57 |
| Sep-88 | 0 | 9,540.00 | 10.00 | 79.50 | 24.14 | 12,540.21 |
| Oct-88 | 0 | 9,540.00 | 10.00 | 79.50 | 25.00 | 12,644.71 |
| Nov-88 | 0 | 9,540.00 | 10.00 | 79.50 | 25.87 | 12,750.08 |
| Dec-88 | 0 | 9,540.00 | 10.50 | 83.48 | 28.09 | 12,861.64 |
| Jan-89 | 0 | 9,540.00 | 10.50 | 83.48 | 29.06 | 12,974.18 |
| Feb-89 | 0 | 9,540.00 | 10.50 | 83.48 | 30.05 | 13,087.71 |
| Mar-89 | 0 | 9,540.00 | 11.50 | 91.43 | 34.00 | 13,213.13 |
| Apr-89 | 0 | 9,540.00 | 11.50 | 91.43 | 35.20 | 13,339.76 |
| May-89 | 0 | 9,540.00 | 11.50 | 91.43 | 36.41 | 13,467.60 |
| Jun-89 | 0 | 9,540.00 | 11.50 | 91.43 | 37.64 | 13,596.66 |
| Jul-89 | 0 | 9,540.00 | 11.00 | 87.45 | 37.19 | 13,721.30 |
| Aug-89 | 0 | 9,540.00 | 10.50 | 83.48 | 36.59 | 13,841.36 |
| Sep-89 | 0 | 9,540.00 | 10.50 | 83.48 | 37.64 | 13,962.47 |
| Oct-89 | 0 | 9,540.00 | 10.50 | 83.48 | 38.70 | 14,084.64 |
| Nov-89 | 0 | 9,540.00 | 10.50 | 83.48 | 39.77 | 14,207.88 |
| Dec-89 | 0 | 9,540.00 | 10.50 | 83.48 | 40.84 | 14,332.20 |
| Jan-90 | 0 | 9,540.00 | 10.50 | 83.48 | 41.93 | 14,457.61 |
| Feb-90 | 0 | 9,540.00 | 10.00 | 79.50 | 40.98 | 14,578.09 |
| Mar-90 | 0 | 9,540.00 | 10.00 | 79.50 | 41.98 | 14,699.57 |
| Apr-90 | 0 | 9,540.00 | 10.00 | 79.50 | 43.00 | 14,822.07 |
| May-90 | 0 | 9,540.00 | 10.00 | 79.50 | 44.02 | 14,945.59 |

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

| | | | | | | |
|---|---|---|---|---|---|---|
| Jun-90 | 0 | 9,540.00 | 10.00 | 79.50 | 45.05 | 15,070.13 |
| Jul-90 | 0 | 9,540.00 | 10.00 | 79.50 | 46.08 | 15,195.72 |
| Aug-90 | 0 | 9,540.00 | 10.00 | 79.50 | 47.13 | 15,322.35 |
| Sep-90 | 0 | 9,540.00 | 10.00 | 79.50 | 48.19 | 15,450.03 |
| Oct-90 | 0 | 9,540.00 | 10.00 | 79.50 | 49.25 | 15,578.78 |
| Nov-90 | 0 | 9,540.00 | 10.00 | 79.50 | 50.32 | 15,708.61 |
| Dec-90 | 0 | 9,540.00 | 10.00 | 79.50 | 51.41 | 15,839.51 |
| Jan-91 | 0 | 9,540.00 | 10.00 | 79.50 | 52.50 | 15,971.51 |
| Feb-91 | 0 | 9,540.00 | 9.00 | 71.55 | 48.24 | 16,091.29 |
| Mar-91 | 0 | 9,540.00 | 8.75 | 69.56 | 47.77 | 16,208.63 |
| Apr-91 | 0 | 9,540.00 | 8.75 | 69.56 | 48.63 | 16,326.81 |
| May-91 | 0 | 9,540.00 | 8.75 | 69.56 | 49.49 | 16,445.86 |
| Jun-91 | 0 | 9,540.00 | 8.75 | 69.56 | 50.36 | 16,565.78 |
| Jul-91 | 0 | 9,540.00 | 8.75 | 69.56 | 51.23 | 16,686.57 |
| Aug-91 | 0 | 9,540.00 | 8.75 | 69.56 | 52.11 | 16,808.25 |
| TOTAL OF COLUMN: | | 9,540.00 | | 5,424.37 | 1,843.87 | **$16,808.25** |

*$E =(C/12)$ multiplied by the cumulative sum of all previous months' simple and compounded interest.

**The interest for July is calculated on a partial month pursuant to Section 4.7 of the Cotenancy Agreement which states that interest shall be calculated from the date of the preliminary adjustment statement to the date of the final adjustment statement. The date of the preliminary statement was July 22, 1985. Therefore, the formula for July interest is prorated as follows: (9,540 x 9.5% x 9/365 = 22.35).

(JMM:6/10/91)
CSC/CAPITAL.1

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

CITY OF SANTA CLARA
COST SHARING FINAL ADJUSTMENT ACCOUNTING BALANCE DUE

| A Month(s) of Charge | B=Initial Prin. Due + E,Prev Total Y-T-D Amount, $ | C=Total nos. months in A Month(s) Int at Rate in D | D Bank of America Prime Interest Rate (%) | E=Bx(1+D/12)^C Monthly Compounded Interest |
|---|---|---|---|---|
| 7/85-3/86 | 9,540 | 8.3 * | 9.50% | 10,185 |
| 4/86 | 10,185 | 1 | 9.00% | 10,262 |
| 5/86-7/86 | 10,262 | 3 | 8.50% | 10,481 |
| 8/86 | 10,481 | 1 | 8.00% | 10,551 |
| 9/86-4/87 | 10,551 | 8 | 7.50% | 11,090 |
| 5/87 | 11,090 | 1 | 8.00% | 11,164 |
| 6/87-9/87 | 11,164 | 4 | 8.25% | 11,475 |
| 10/87 | 11,475 | 1 | 8.75% | 11,558 |
| 11/87 | 11,558 | 1 | 9.00% | 11,645 |
| 12/87-2/88 | 11,645 | 3 | 8.75% | 11,901 |
| 3/88-5/88 | 11,901 | 3 | 8.50% | 12,156 |
| 6/88-7/88 | 12,156 | 2 | 9.00% | 12,339 |
| 8/88 | 12,339 | 1 | 9.50% | 12,437 |
| 9/88-11/88 | 12,437 | 3 | 10.00% | 12,750 |
| 12/88 | 12,750 | 1 | 10.50% | 12,862 |
| 1/89-2/89 | 12,862 | 2 | 10.50% | 13,088 |
| 3/89-6/89 | 13,088 | 4 | 11.50% | 13,597 |
| 7/89 | 13,597 | 1 | 11.00% | 13,722 |
| 8/89-1/90 | 13,722 | 6 | 10.50% | 14,458 |
| 2/90-1/91 | 14,458 | 12 | 10.00% | 15,972 |
| 2/91 | 15,972 | 1 | 9.00% | 16,092 |
| 3/91-8/91 | 16,092 | 6 | 8.75% | 16,809 |

**TOTAL**                                                                    $16,808.68

*The interest for July is calculated on a partial month pursuant to Section 4.7 of the Cotenancy Agreement which states that interest shall be calculated from the date of the preliminary adjustment statement to the date of the final adjustment statement. The date of the preliminary statement was July 22, 1985. Therefore, the formula for July 1985 - March 1986 interest is prorated as follows: (8 months + 9/365 days = 8.3 months of interest at 9.5%).

Case: 19-30088   Doc# 11889-4   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 118 of 195

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

ESTIMATE OF INTEREST DUE.

CALIFORNIA DEPARTMENT OF WATER RESOURCES
COST SHARING FINAL ADJUSTMENT ACCOUNTING BALANCE DUE
PG&E AFTER EXECUTION OF THE COTENANCY AGREEMENT

| Month of Charge | A Capital Contribution Due PG&E from DWR Monthly Amt/$ | B=A+B.Prev. Total Y-T-D Amount, $ | C Bank of America Prime Interest Rate (%) | D=(C/12)(B) Simple Interest | E=* Compounded Interest | F=F.Prev+A+D+E Cumulative Balance, $ |
|---|---|---|---|---|---|---|
| Jul-85 | 32,135 | 32,135.00 | 9.50 | 75.28 | 0.00 | 32,210.28 |
| Aug-85 | 0 | 32,135.00 | 9.50 | 254.40 | 0.60 | 32,465.27 |
| Sep-85 | 0 | 32,135.00 | 9.50 | 254.40 | 2.61 | 32,722.29 |
| Oct-85 | 0 | 32,135.00 | 9.50 | 254.40 | 4.65 | 32,981.34 |
| Nov-85 | 0 | 32,135.00 | 9.50 | 254.40 | 6.70 | 33,242.44 |
| Dec-85 | 0 | 32,135.00 | 9.50 | 254.40 | 8.77 | 33,505.61 |
| Jan-86 | 0 | 32,135.00 | 9.50 | 254.40 | 10.85 | 33,770.87 |
| Feb-86 | 0 | 32,135.00 | 9.50 | 254.40 | 12.95 | 34,038.22 |
| Mar-86 | 0 | 32,135.00 | 9.50 | 254.40 | 15.07 | 34,307.69 |
| Apr-86 | 0 | 32,135.00 | 9.00 | 241.01 | 16.30 | 34,565.00 |
| May-86 | 0 | 32,135.00 | 8.50 | 227.62 | 17.21 | 34,809.83 |
| Jun-86 | 0 | 32,135.00 | 8.50 | 227.62 | 18.95 | 35,056.40 |
| Jul-86 | 0 | 32,135.00 | 8.50 | 227.62 | 20.69 | 35,304.72 |
| Aug-86 | 0 | 32,135.00 | 8.00 | 214.23 | 21.13 | 35,540.08 |
| Sep-86 | 0 | 32,135.00 | 7.50 | 200.84 | 21.28 | 35,762.21 |
| Oct-86 | 0 | 32,135.00 | 7.50 | 200.84 | 22.67 | 35,985.72 |
| Nov-86 | 0 | 32,135.00 | 7.50 | 200.84 | 24.07 | 36,210.63 |
| Dec-86 | 0 | 32,135.00 | 7.50 | 200.84 | 25.47 | 36,436.95 |
| Jan-87 | 0 | 32,135.00 | 7.50 | 200.84 | 26.89 | 36,664.68 |
| Feb-87 | 0 | 32,135.00 | 7.50 | 200.84 | 28.31 | 36,893.83 |
| Mar-87 | 0 | 32,135.00 | 7.50 | 200.84 | 29.74 | 37,124.42 |
| Apr-87 | 0 | 32,135.00 | 7.50 | 200.84 | 31.18 | 37,356.45 |
| May-87 | 0 | 32,135.00 | 8.00 | 214.23 | 34.81 | 37,605.49 |
| Jun-87 | 0 | 32,135.00 | 8.25 | 220.93 | 37.61 | 37,864.03 |
| Jul-87 | 0 | 32,135.00 | 8.25 | 220.93 | 39.39 | 38,124.34 |
| Aug-87 | 0 | 32,135.00 | 8.25 | 220.93 | 41.18 | 38,386.45 |
| Sep-87 | 0 | 32,135.00 | 8.25 | 220.93 | 42.98 | 38,650.35 |
| Oct-87 | 0 | 32,135.00 | 8.75 | 234.32 | 47.51 | 38,932.18 |
| Nov-87 | 0 | 32,135.00 | 9.00 | 241.01 | 50.98 | 39,224.17 |
| Dec-87 | 0 | 32,135.00 | 8.75 | 234.32 | 51.69 | 39,510.18 |
| Jan-88 | 0 | 32,135.00 | 8.75 | 234.32 | 53.78 | 39,798.28 |
| Feb-88 | 0 | 32,135.00 | 8.75 | 234.32 | 55.88 | 40,088.47 |
| Mar-88 | 0 | 32,135.00 | 8.50 | 227.62 | 56.34 | 40,372.43 |
| Apr-88 | 0 | 32,135.00 | 8.50 | 227.62 | 58.35 | 40,658.40 |
| May-88 | 0 | 32,135.00 | 8.50 | 227.62 | 60.37 | 40,946.40 |
| Jun-88 | 0 | 32,135.00 | 9.00 | 241.01 | 66.09 | 41,253.50 |
| Jul-88 | 0 | 32,135.00 | 9.00 | 241.01 | 68.39 | 41,562.90 |
| Aug-88 | 0 | 32,135.00 | 9.50 | 254.40 | 74.64 | 41,891.94 |
| Sep-88 | 0 | 32,135.00 | 10.00 | 267.79 | 81.31 | 42,241.04 |
| Oct-88 | 0 | 32,135.00 | 10.00 | 267.79 | 84.22 | 42,593.05 |
| Nov-88 | 0 | 32,135.00 | 10.00 | 267.79 | 87.15 | 42,947.99 |
| Dec-88 | 0 | 32,135.00 | 10.50 | 281.18 | 94.61 | 43,323.78 |
| Jan-89 | 0 | 32,135.00 | 10.50 | 281.18 | 97.90 | 43,702.87 |
| Feb-89 | 0 | 32,135.00 | 10.50 | 281.18 | 101.22 | 44,085.27 |
| Mar-89 | 0 | 32,135.00 | 11.50 | 307.96 | 114.52 | 44,507.75 |
| Apr-89 | 0 | 32,135.00 | 11.50 | 307.96 | 118.57 | 44,934.28 |
| May-89 | 0 | 32,135.00 | 11.50 | 307.96 | 122.66 | 45,364.90 |
| Jun-89 | 0 | 32,135.00 | 11.50 | 307.96 | 126.79 | 45,799.65 |
| Jul-89 | 0 | 32,135.00 | 11.00 | 294.57 | 125.26 | 46,219.48 |
| Aug-89 | 0 | 32,135.00 | 10.50 | 281.18 | 123.24 | 46,623.90 |
| Sep-89 | 0 | 32,135.00 | 10.50 | 281.18 | 126.78 | 47,031.86 |
| Oct-89 | 0 | 32,135.00 | 10.50 | 281.18 | 130.35 | 47,443.39 |
| Nov-89 | 0 | 32,135.00 | 10.50 | 281.18 | 133.95 | 47,858.52 |
| Dec-89 | 0 | 32,135.00 | 10.50 | 281.18 | 137.58 | 48,277.28 |
| Jan-90 | 0 | 32,135.00 | 10.50 | 281.18 | 141.24 | 48,699.71 |
| Feb-90 | 0 | 32,135.00 | 10.00 | 267.79 | 138.04 | 49,105.54 |
| Mar-90 | 0 | 32,135.00 | 10.00 | 267.79 | 141.42 | 49,514.75 |
| Apr-90 | 0 | 32,135.00 | 10.00 | 267.79 | 144.83 | 49,927.37 |
| May-90 | 0 | 32,135.00 | 10.00 | 267.79 | 148.27 | 50,343.44 |

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

| | | | | | | |
|---|---|---|---|---|---|---|
| Jun-90 | 0 | 32,135.00 | 10.00 | 267.79 | 151.74 | 50,762.96 |
| Jul-90 | 0 | 32,135.00 | 10.00 | 267.79 | 155.23 | 51,185.99 |
| Aug-90 | 0 | 32,135.00 | 10.00 | 267.79 | 158.76 | 51,612.54 |
| Sep-90 | 0 | 32,135.00 | 10.00 | 267.79 | 162.31 | 52,042.64 |
| Oct-90 | 0 | 32,135.00 | 10.00 | 267.79 | 165.90 | 52,476.33 |
| Nov-90 | 0 | 32,135.00 | 10.00 | 267.79 | 169.51 | 52,913.63 |
| Dec-90 | 0 | 32,135.00 | 10.00 | 267.79 | 173.16 | 53,354.58 |
| Jan-91 | 0 | 32,135.00 | 10.00 | 267.79 | 176.83 | 53,799.20 |
| Feb-91 | 0 | 32,135.00 | 9.00 | 241.01 | 162.48 | 54,202.70 |
| Mar-91 | 0 | 32,135.00 | 8.75 | 234.32 | 160.91 | 54,597.93 |
| Apr-91 | 0 | 32,135.00 | 8.75 | 234.32 | 163.79 | 54,996.04 |
| May-91 | 0 | 32,135.00 | 8.75 | 234.32 | 166.70 | 55,397.05 |
| Jun-91 | 0 | 32,135.00 | 8.75 | 234.32 | 169.62 | 55,800.98 |
| Jul-91 | 0 | 32,135.00 | 8.75 | 234.32 | 172.56 | 56,207.87 |
| Aug-91 | 0 | 32,135.00 | 8.75 | 234.32 | 175.53 | 56,617.72 |
| TOTAL OF COLUMN: | | 32,135.00 | | 18,271.72 | 6,211.00 | $56,617.72 |

*E=(C/12) multiplied by the cumulative sum of all previous months simple and compounded interest.

**The interest for July is calculated on a partial month pursuant to Section 4.7 of the Cotenancy Agreement which states that interest shall be calculated from the date of the preliminary adjustment statement to the date of the final adjustment statement. The date of the preliminary statement was July 22, 1985. Therefore, the formula for July interest is prorated as follows: (32,135 x 9.5% x 9/365 = 75.28).

(JMM:6/10/91)
DWR/CAPITAL.1

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

## CALIFORNIA DEPARTMENT OF WATER RESOURCES
## COST SHARING  FINAL ADJUSTMENT ACCOUNTING BALANCE DUE

| A Month(s) of Charge | B=Initial Prin. Due + E,Prev Total Y-T-D Amount, $ | C=Total nos. months in A Month(s) Int at Rate in D | D Bank of America Prime Interest Rate (%) | E=Bx(1+D/12)^C Monthly Compounded Interest |
|---|---|---|---|---|
| 7/85-3/86 | 32,135 | 8.3 * | 9.50% | 34,309 |
| 4/86 | 34,309 | 1 | 9.00% | 34,566 |
| 5/86-7/86 | 34,566 | 3 | 8.50% | 35,306 |
| 8/86 | 35,306 | 1 | 8.00% | 35,541 |
| 9/86-4/87 | 35,541 | 8 | 7.50% | 37,357 |
| 5/87 | 37,357 | 1 | 8.00% | 37,606 |
| 6/87-9/87 | 37,606 | 4 | 8.25% | 38,651 |
| 10/87 | 38,651 | 1 | 8.75% | 38,933 |
| 11/87 | 38,933 | 1 | 9.00% | 39,225 |
| 12/87-2/88 | 39,225 | 3 | 8.75% | 40,090 |
| 3/88-5/88 | 40,090 | 3 | 8.50% | 40,947 |
| 6/88-7/88 | 40,947 | 2 | 9.00% | 41,564 |
| 8/88 | 41,564 | 1 | 9.50% | 41,893 |
| 9/88-11/88 | 41,893 | 3 | 10.00% | 42,949 |
| 12/88 | 42,949 | 1 | 10.50% | 43,325 |
| 1/89-2/89 | 43,325 | 2 | 10.50% | 44,086 |
| 3/89-6/89 | 44,086 | 4 | 11.50% | 45,801 |
| 7/89 | 45,801 | 1 | 11.00% | 46,221 |
| 8/89-1/90 | 46,221 | 6 | 10.50% | 48,701 |
| 2/90-1/91 | 48,701 | 12 | 10.00% | 53,801 |
| 2/91 | 53,801 | 1 | 9.00% | 54,204 |
| 3/91-8/91 | 54,204 | 6 | 8.75% | 56,619 |

**TOTAL**                                                                                     **$56,619.18**

*The interest for July is calculated on a partial month pursuant to Section 4.7 of the Cotenancy Agreement which states that interest shall be calculated from the date of the preliminary adjustment statement to the date of the final adjustment statement. The date of the preliminary statement was July 22, 1985. Therefore, the formula for July 1985 - March 1986 interest is prorated as follows: (8 months + 9/365 days = 8.3 months of interest at 9.5%).

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

ESTIMATE OF INTEREST DUE:

NORTHERN CALIFORNIA POWER AGENCY
COST SHARING FINAL ADJUSTMENT ACCOUNTING BALANCE DUE

| Month of Charge | A. Capital Contribution Due PG&E from NCPA Monthly Amt/$ | B=A+B_Prev Total Y-T-D Amount, $ | C Bank of America Prime Interest Rate (%) | D=(C/12)(B) Simple Interest | E=e* Compounded Interest | F=F_Prev+A+D+E Cumulative Balance, $ |
|---|---|---|---|---|---|---|
| Jul-85 | 8,516 | 8,516.00 | 9.50 | 19.95 | 0.00 | 8,535.95 |
| Aug-85 | 0 | 8,516.00 | 9.50 | 67.42 | 0.16 | 8,603.52 |
| Sep-85 | 0 | 8,516.00 | 9.50 | 67.42 | 0.69 | 8,671.64 |
| Oct-85 | 0 | 8,516.00 | 9.50 | 67.42 | 1.23 | 8,740.29 |
| Nov-85 | 0 | 8,516.00 | 9.50 | 67.42 | 1.78 | 8,809.48 |
| Dec-85 | 0 | 8,516.00 | 9.50 | 67.42 | 2.32 | 8,879.22 |
| Jan-86 | 0 | 8,516.00 | 9.50 | 67.42 | 2.88 | 8,949.52 |
| Feb-86 | 0 | 8,516.00 | 9.50 | 67.42 | 3.43 | 9,020.37 |
| Mar-86 | 0 | 8,516.00 | 9.50 | 67.42 | 3.99 | 9,091.78 |
| Apr-86 | 0 | 8,516.00 | 9.00 | 63.87 | 4.32 | 9,159.97 |
| May-86 | 0 | 8,516.00 | 8.50 | 60.32 | 4.56 | 9,224.85 |
| Jun-86 | 0 | 8,516.00 | 8.50 | 60.32 | 5.02 | 9,290.19 |
| Jul-86 | 0 | 8,516.00 | 8.50 | 60.32 | 5.48 | 9,356.00 |
| Aug-86 | 0 | 8,516.00 | 8.00 | 56.77 | 5.60 | 9,418.37 |
| Sep-86 | 0 | 8,516.00 | 7.50 | 53.23 | 5.64 | 9,477.24 |
| Oct-86 | 0 | 8,516.00 | 7.50 | 53.23 | 6.01 | 9,536.47 |
| Nov-86 | 0 | 8,516.00 | 7.50 | 53.23 | 6.38 | 9,596.07 |
| Dec-86 | 0 | 8,516.00 | 7.50 | 53.23 | 6.75 | 9,656.05 |
| Jan-87 | 0 | 8,516.00 | 7.50 | 53.23 | 7.13 | 9,716.40 |
| Feb-87 | 0 | 8,516.00 | 7.50 | 53.23 | 7.50 | 9,777.12 |
| Mar-87 | 0 | 8,516.00 | 7.50 | 53.23 | 7.88 | 9,838.23 |
| Apr-87 | 0 | 8,516.00 | 7.50 | 53.23 | 8.26 | 9,899.72 |
| May-87 | 0 | 8,516.00 | 8.00 | 56.77 | 9.22 | 9,965.72 |
| Jun-87 | 0 | 8,516.00 | 8.25 | 58.55 | 9.97 | 10,034.23 |
| Jul-87 | 0 | 8,516.00 | 8.25 | 58.55 | 10.44 | 10,103.22 |
| Aug-87 | 0 | 8,516.00 | 8.25 | 58.55 | 10.91 | 10,172.68 |
| Sep-87 | 0 | 8,516.00 | 8.25 | 58.55 | 11.39 | 10,242.61 |
| Oct-87 | 0 | 8,516.00 | 8.75 | 62.10 | 12.59 | 10,317.30 |
| Nov-87 | 0 | 8,516.00 | 9.00 | 63.87 | 13.51 | 10,394.68 |
| Dec-87 | 0 | 8,516.00 | 8.75 | 62.10 | 13.70 | 10,470.47 |
| Jan-88 | 0 | 8,516.00 | 8.75 | 62.10 | 14.25 | 10,546.82 |
| Feb-88 | 0 | 8,516.00 | 8.75 | 62.10 | 14.81 | 10,623.73 |
| Mar-88 | 0 | 8,516.00 | 8.50 | 60.32 | 14.93 | 10,698.98 |
| Apr-88 | 0 | 8,516.00 | 8.50 | 60.32 | 15.46 | 10,774.76 |
| May-88 | 0 | 8,516.00 | 8.50 | 60.32 | 16.00 | 10,851.08 |
| Jun-88 | 0 | 8,516.00 | 9.00 | 63.87 | 17.51 | 10,932.47 |
| Jul-88 | 0 | 8,516.00 | 9.00 | 63.87 | 18.12 | 11,014.46 |
| Aug-88 | 0 | 8,516.00 | 9.50 | 67.42 | 19.78 | 11,101.66 |
| Sep-88 | 0 | 8,516.00 | 10.00 | 70.97 | 21.55 | 11,194.17 |
| Oct-88 | 0 | 8,516.00 | 10.00 | 70.97 | 22.32 | 11,287.46 |
| Nov-88 | 0 | 8,516.00 | 10.00 | 70.97 | 23.10 | 11,381.52 |
| Dec-88 | 0 | 8,516.00 | 10.50 | 74.52 | 25.07 | 11,481.11 |
| Jan-89 | 0 | 8,516.00 | 10.50 | 74.52 | 25.94 | 11,581.57 |
| Feb-89 | 0 | 8,516.00 | 10.50 | 74.52 | 26.82 | 11,682.90 |
| Mar-89 | 0 | 8,516.00 | 11.50 | 81.61 | 30.35 | 11,794.87 |
| Apr-89 | 0 | 8,516.00 | 11.50 | 81.61 | 31.42 | 11,907.90 |
| May-89 | 0 | 8,516.00 | 11.50 | 81.61 | 32.51 | 12,022.02 |
| Jun-89 | 0 | 8,516.00 | 11.50 | 81.61 | 33.60 | 12,137.23 |
| Jul-89 | 0 | 8,516.00 | 11.00 | 78.06 | 33.19 | 12,248.49 |
| Aug-89 | 0 | 8,516.00 | 10.50 | 74.52 | 32.66 | 12,355.66 |
| Sep-89 | 0 | 8,516.00 | 10.50 | 74.52 | 33.60 | 12,463.77 |
| Oct-89 | 0 | 8,516.00 | 10.50 | 74.52 | 34.54 | 12,572.83 |
| Nov-89 | 0 | 8,516.00 | 10.50 | 74.52 | 35.50 | 12,682.84 |
| Dec-89 | 0 | 8,516.00 | 10.50 | 74.52 | 36.46 | 12,793.82 |
| Jan-90 | 0 | 8,516.00 | 10.50 | 74.52 | 37.43 | 12,905.76 |
| Feb-90 | 0 | 8,516.00 | 10.00 | 70.97 | 36.58 | 13,013.31 |
| Mar-90 | 0 | 8,516.00 | 10.00 | 70.97 | 37.48 | 13,121.76 |
| Apr-90 | 0 | 8,516.00 | 10.00 | 70.97 | 38.38 | 13,231.10 |
| May-90 | 0 | 8,516.00 | 10.00 | 70.97 | 39.29 | 13,341.36 |

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

| | | | | | | |
|---|---|---|---|---|---|---|
| Jun-90 | 0 | 8,516.00 | 10.00 | 70.97 | 40.21 | 13,452.54 |
| Jul-90 | 0 | 8,516.00 | 10.00 | 70.97 | 41.14 | 13,564.65 |
| Aug-90 | 0 | 8,516.00 | 10.00 | 70.97 | 42.07 | 13,677.68 |
| Sep-90 | 0 | 8,516.00 | 10.00 | 70.97 | 43.01 | 13,791.66 |
| Oct-90 | 0 | 8,516.00 | 10.00 | 70.97 | 43.96 | 13,906.60 |
| Nov-90 | 0 | 8,516.00 | 10.00 | 70.97 | 44.92 | 14,022.48 |
| Dec-90 | 0 | 8,516.00 | 10.00 | 70.97 | 45.89 | 14,139.34 |
| Jan-91 | 0 | 8,516.00 | 10.00 | 70.97 | 46.86 | 14,257.17 |
| Feb-91 | 0 | 8,516.00 | 9.00 | 63.87 | 43.06 | 14,364.09 |
| Mar-91 | 0 | 8,516.00 | 8.75 | 62.10 | 42.64 | 14,468.83 |
| Apr-91 | 0 | 8,516.00 | 8.75 | 62.10 | 43.41 | 14,574.33 |
| May-91 | 0 | 8,516.00 | 8.75 | 62.10 | 44.18 | 14,680.61 |
| Jun-91 | 0 | 8,516.00 | 8.75 | 62.10 | 44.95 | 14,787.65 |
| Jul-91 | 0 | 8,516.00 | 8.75 | 62.10 | 45.73 | 14,895.48 |
| Aug-91 | 0 | 8,516.00 | 8.75 | 62.10 | 46.52 | 15,004.09 |
| TOTAL OF COLUMN: | | 8,516.00 | | 4,842.13 | 1,645.96 | $15,004.09 |

*E=(C/12) multiplied by the cumulative sum of all previous months' simple and compounded interest.

**The interest for July is calculated on a partial month pursuant to Section 4.7 of the Cotenancy Agreement which states that interest shall be calculated from the date of the preliminary adjustment statement to the date of the final adjustment statement. The date of the preliminary statement was July 22, 1985. Therefore, the formula for July interest is prorated as follows: (8,516 x 9.5% x 9/365 = 19.95).

(JMM:6/10/91)
NCPA/CAPITAL.1

Case: 19-30088    Doc# 11889-4    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 123 of 195

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

## NORTHERN CALIFORNIA POWER AGENCY
### COST SHARING FINAL ADJUSTMENT ACCOUNTING BALANCE DUE

| A. Month(s) of Charge | B=Initial Prin. Due + E,Prev Total Y-T-D Amount, $ | C=Total nos. months in A Month(s) Int at Rate in D | D. Bank of America Prime Interest Rate (%) | E=(D/12)(B) Monthly Compounded Interest |
|---|---|---|---|---|
| 7/85-3/86 | 8,516 | 8.3 * | 9.50% | 9,092 |
| 4/86 | 9,092 | 1 | 9.00% | 9,160 |
| 5/86-7/86 | 9,160 | 3 | 8.50% | 9,356 |
| 8/86 | 9,356 | 1 | 8.00% | 9,419 |
| 9/86-4/87 | 9,419 | 8 | 7.50% | 9,900 |
| 5/87 | 9,900 | 1 | 8.00% | 9,966 |
| 6/87-9/87 | 9,966 | 4 | 8.25% | 10,243 |
| 10/87 | 10,243 | 1 | 8.75% | 10,318 |
| 11/87 | 10,318 | 1 | 9.00% | 10,395 |
| 12/87-2/88 | 10,395 | 3 | 8.75% | 10,624 |
| 3/88-5/88 | 10,624 | 3 | 8.50% | 10,851 |
| 6/88-7/88 | 10,851 | 2 | 9.00% | 11,015 |
| 8/88 | 11,015 | 1 | 9.50% | 11,102 |
| 9/88-11/88 | 11,102 | 3 | 10.00% | 11,382 |
| 12/88 | 11,382 | 1 | 10.50% | 11,481 |
| 1/89-2/89 | 11,481 | 2 | 10.50% | 11,683 |
| 3/89-6/89 | 11,683 | 4 | 11.50% | 12,138 |
| 7/89 | 12,138 | 1 | 11.00% | 12,249 |
| 8/89-1/90 | 12,249 | 6 | 10.50% | 12,906 |
| 2/90-1/91 | 12,906 | 12 | 10.00% | 14,258 |
| 2/91 | 14,258 | 1 | 9.00% | 14,364 |
| 3/91-8/91 | 14,364 | 6 | 8.75% | 15,004 |

TOTAL.                                                        $15,004.48

*The interest for July is calculated on a partial month pursuant to Section 4.7 of the Cotenancy Agreement which states that interest shall be calculated from the date of the preliminary adjustment statement to the date of the final adjustment statement. The date of the preliminary statement was July 22, 1985. Therefore, the formula for July 1985 - March 1986 interest is prorated as follows: (8 months + 9/365 days = 8.3 months of interest at 9.5%).

Case: 19-30088   Doc# 11889-4   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 124 of 195

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**Supplement No. 2 to**
**Rate Schedule FERC No. 139**

**Revisions to Ownership Interests**

Filed in

FERC Docket No. ER92-133-000

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

### REVISIONS TO OWNERSHIP INTERESTS

Section 2.2 of the Cotenancy Agreement expresses each Cotenant's Ownership Interest in the Transmission Line and Associated Facilities as a percentage of the total megawatt (MW) rating of the line.  Based on the Cotenants' share, in MW, of the Transmission Line, initially rated at 1,206 MW, the Ownership Interests are:

|  | Ownership Interests | |
|---|---|---|
|  | (Megawatts) | (Percent) |
| DWR | 165.0 | 13.68 |
| NCPA | 49.9 | 4.14 |
| PG&E | 931.0 | 77.20 |
| CSC | 60.1 | 4.98 |
| Total | 1,206.0 | 100.00 |

By letters dated June 19,  1987,  PG&E notified the Cotenants that the rating of the Transmission Line was revised to 1,211 MW.  Pursuant to Section 4.7 of the Cotenancy Agreement, PG&E recalculated the Cotenants' Ownership Interest as a percentage of the new Transmission Line rating as rerated in 1987.  The amended Cotenants' Ownership Interest using the revised Transmission Line MW Rating are:

|  | Ownership Interests | |
|---|---|---|
|  | (Megawatts) | (Percent) |
| DWR | 165.0 | 13.63 |
| NCPA | 49.9 | 4.12 |
| PG&E | 936.0 | 77.29 |
| CSC | 60.1 | 4.96 |
| Total | 1,211.0 | 100.00 |

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

# Supplement No. 3 to
# Rate Schedule FERC No. 139

## Calculations of the Revised Annual Charges

Filed in

FERC Docket No. ER92-133-000

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

## CALCULATION OF REVISED ANNUAL CHARGES

Cotenants other than PG&E are assessed an annual charge to reimburse PG&E for the costs of operating, maintaining, and making capital replacements to the Associated Facilities. The initial annual payment (Variable A below) is a product of Ownership Interest and the preliminary capital costs estimate of the Associated Facilities. Both the Ownership Interests and the capital cost have been adjusted pursuant to Sections 4.7 and 5.7 of the Cotenancy Agreement which state that when PG&E makes the adjustment to reflect the final accounting, the revised capital cost shall be used in determining the annual charges. The revised capital costs are used in all calculations of annual charges from January 1, 1987 forward.

Appendix C of the Cotenancy Agreement states that each Cotenant's payment for the annual charge shall be calculated as follows:

P =  A×C

where

P =  Annual payment

A =  Actual dollar amount of the Cotenant's total capital payments with respect to the Associated Facilities shall be its contribution-in-aid-of-construction for the Associated Facilities made and adjusted pursuant to Sections 4.4 and 4.7 of this Agreement and any payments made for Additions or Betterments as provided in Section 5.7.

C =  PG&E's system average rate for transmission facilities, which as of the effective date of this Agreement is 8.97%.

After the above formula was filed and accepted in FERC Docket No. ER86-364-000, both variable A and C were revised. Variable C was reduced from 8.97% to 8.41%, effective July 1, 1987, in PG&E's Tax Reform Act of 1986 filing (FERC Docket No. ER88-103-000). Variable A has been recalculated to reflect the revised capital costs, for each of the Cotenants, in

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

accordance Section 4.7 of the Cotenancy Agreement.  Both of these changes affect the Cotenant's annual charges.

**Revision of Installed Costs (Variable A)**

Variable A, as initially filed, was based on the initial cost estimate for the Transmission Line and the Associated Facilities.  The Associated Facilities were initially estimated to cost $2,381,700.  The Cotenants' shares of these construction costs were stated, in Section 4.4 of the Cotenancy Agreement to be:

A =  Initial cost estimate of                                             $2,381,700
     Associated Facilities
     (used as the basis for the
     annual charge 1984-1986)

| Cotenant | Capital Payments | |
|----------|------------------|---|
| DWR | 325,817 | (13.68% of A) |
| NCPA | 98,602 | (4.14% of A) |
| CSC | 118,609 | (4.98% of A) |
| PG&E | 1,838,672 | (77.20% of A) |
| Total | $2,381,700 | 100% |

PG&E has completed the final accounting for the Transmission Line and Associated Facilities and the revised installed cost for the Associated Facilities is $2,239,587.  Using the Ownership Interest percentages effective from the time of the Line Rerating onwards (calculated in Attachment 4 to this filing), the final installed costs for each Cotenant are as follows:

A =  Final accounting cost for                                           $2,239,587
     Associated Facilities
     (used as the basis for the
     annual charge 1987 forward)

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

| <u>Cotenant</u> | <u>Capital Payments*</u><br><u>as adjusted per final accounting</u> | |
|---|---|---|
| DWR | 305,256 | (13.63% of A) |
| NCPA | 92,271 | (4.12% of A) |
| CSC | 111,084 | (4.96% of A) |
| PG&E | <u>1,730,976</u> | <u>(77.29% of A)</u> |
| Total | $2,239,587 | 100% |

_____

\*      The estimated amounts used for capital payments 1984-1986 were reduced beginning January 1, 1987 per the final accounting actual numbers.

**Revised Annual Charges**

PG&E has recalculated the annual charges to NCPA and CSC for the Associated Facilities, incorporating:  a) the July 1, 1987 change in the cost of ownership charge; and b) the final accounting costs, as divided according to the revised Ownership Interests.  This calculation, with the amounts already paid and the remainder due, is shown for NCPA and CSC below:

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

| YEAR | (A) NCPA | (A) CSC | × | (C) | = | (P) NCPA | (P) CSC |
|------|----------|---------|---|-----|---|----------|---------|
| 1984 | 98,602 | 118,609 | | 8.97%* | | 1,402 | 1,686 |
| 1985 | 98,602 | 118,609 | | 8.97% | | 8,845 | 10,639 |
| 1986 | 98,602 | 118,609 | | 8.97% | | 8,845 | 10,639 |
| 1987 | 92,271 | 111,084 | | 8.97%** | | 8,016 | 9,651 |
| 1988 | 92,271 | 111,084 | | 8.41% | | 7,760 | 9,342 |
| 1989 | 92,271 | 111,084 | | 8.41% | | 7,760 | 9,342 |
| 1990 | 92,271 | 111,084 | | 8.41%*** | | 7,760 | 9,342 |

|  |  |  |
|--|--|--|
| Total Adjusted Annual Charges for 1984-1990: | $50,388 | $60,641 |
| Total Payments Received to Date: | 44,317 | 53,351 |
| Adjusted Balance Due: | $ 6,071 | $ 7,290 |

| 1991 | 92,271 | 111,084 | 8.41% | 7,760 | 9,342 |
|------|--------|---------|-------|-------|-------|

|  |  |  |
|--|--|--|
| Total Balance Due as of July 1, 1991: | $13,831 | $16,632 |

---

\*      1984 Annual Charge is prorated for the period between November 4, 1984-December 31, 1984 (58/366 days) pursuant to Section 6.1 of the Cotenancy Agreement.

\*\*      The calculation for the 1987 Annual Charge is based on PG&E's Rate Schedule FERC No. 97, FERC Docket No. ER88-103-000, effective July 1, 1987 which changed the rate from 8.97% to 8.41%. Therefore, an example of the formula used for the 1987 charge as prorated is: $(92,271 \times 8.97\% \times 181/365 + 92,271 \times 8.41\% \times 184/365 = 8,016)$.

\*\*\*      1990 Charges were not billed by PG&E to the Cotenants.

PG&E will bill NCPA and CSC for the additional amounts owed for these annual charges, which consist of the 1990 charge after adjustments are netted out and the annual charge for 1991, once the FERC has accepted this filing.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**Annual Charges for DWR**

Because DWR had not previously been a party to the Cotenancy Agreement, it has not been charged for the Associated Facilities annual charges. Annual charges for DWR incorporating: a) the July 1, 1987 change in the cost of ownership charge; and b) the final accounting costs, as divided according to the revised Ownership Interests, are shown below:

| YEAR | (A) | × | (C) | = | (P) |
|------|-----|---|-----|---|-----|
| 1984 | 325,817 | | 8.97%* | | 4,631 |
| 1985 | 325,817 | | 8.97% | | 29,226 |
| 1986 | 325,817 | | 8.97% | | 29,226 |
| 1987 | 305,256 | | 8.97%** | | 26,520 |
| 1988 | 305,256 | | 8.41% | | 25,672 |
| 1989 | 305,256 | | 8.41% | | 25,672 |
| 1990 | 305,256 | | 8.41% | | 25,672 |
| 1991 | 305,256 | | 8.41% | | 25,672 |

Total Adjusted Annual Charges due 1984-1991:  $192,291

———————

\*      1984 Annual Charge is prorated for the period between November 4, 1984-December 31, 1984 (58/366 days) pursuant to Section 6.1 of the Cotenancy Agreement.

\*\*     The calculation for the 1987 Annual Charge is based on PG&E's Rate Schedule FERC No. 97, FERC Docket No. ER88-103-000, effective July 1, 1987 which changed the rate from 8.97% to 8.41%. Therefore, the formula for the 1987 charge as prorated is: $(305,256 \times 8.97\% \times 181/365 + 305,256 \times 8.41\% \times 184/365 = 26,520)$.

The amounts owed PG&E by DWR including interest, for these annual charges, shall be netted against the transmission revenues received by PG&E from DWR for transmission services provided over the Transmission Line prior to DWR's execution of the Cotenancy Agreement. The interest calculations are shown on the worksheet attached hereto as Attachment 5a.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**Attachment 5a**

**ESTIMATED INTEREST CALCULATIONS
THROUGH AUGUST 31, 1991
ON DWR ANNUAL CHARGES DUE PG&E**

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

ESTIMATE OF INTEREST DUE.

### CALIFORNIA DEPARTMENT OF WATER RESOURCES
### ANNUAL CHARGE PAYMENTS DUE
### TO PG&E AFTER EXECUTION OF THE COTENANCY AGREEMENT

| Month of Charge | A Payments Due PG&E from DWR Annual Amount/8 | B=A+B,Prev Total Y-T-D Charges, $ | C Bank of America Prime Interest Rate (%) | D=(C/12)(B)- Simple Interest | E=* Compounded Interest | F=F,Prev+A+D=E Cumulative Balance, $ |
|---|---|---|---|---|---|---|
| Jul-85 | 33,857 | ** | 33,857.00 | 9.50 | 268.03 | 0.00 | 34,125.03 |
| Aug-85 | 0 | | 33,857.00 | 9.50 | 268.03 | 2.12 | 34,395.19 |
| Sep-85 | 0 | | 33,857.00 | 9.50 | 268.03 | 4.26 | 34,667.49 |
| Oct-85 | 0 | | 33,857.00 | 9.50 | 268.03 | 6.42 | 34,941.94 |
| Nov-85 | 0 | | 33,857.00 | 9.50 | 268.03 | 8.59 | 35,218.56 |
| Dec-85 | 0 | | 33,857.00 | 9.50 | 268.03 | 10.78 | 35,497.37 |
| Jan-86 | 0 | | 33,857.00 | 9.50 | 268.03 | 12.99 | 35,778.40 |
| Feb-86 | 0 | | 33,857.00 | 9.50 | 268.03 | 15.21 | 36,061.64 |
| Mar-86 | 0 | | 33,857.00 | 9.50 | 268.03 | 17.45 | 36,347.13 |
| Apr-86 | 0 | | 33,857.00 | 9.00 | 253.93 | 18.68 | 36,619.73 |
| May-86 | 0 | | 33,857.00 | 8.50 | 239.82 | 19.57 | 36,879.12 |
| Jun-86 | 0 | | 33,857.00 | 8.50 | 239.82 | 21.41 | 37,140.35 |
| Jul-86 | 29,226 | | 63,083.00 | 8.50 | 446.84 | 23.26 | 66,836.44 |
| Aug-86 | 0 | | 63,083.00 | 8.00 | 420.55 | 25.02 | 67,282.02 |
| Sep-86 | 0 | | 63,083.00 | 7.50 | 394.27 | 26.24 | 67,702.53 |
| Oct-86 | 0 | | 63,083.00 | 7.50 | 394.27 | 28.87 | 68,125.67 |
| Nov-86 | 0 | | 63,083.00 | 7.50 | 394.27 | 31.52 | 68,551.46 |
| Dec-86 | 0 | | 63,083.00 | 7.50 | 394.27 | 34.18 | 68,979.91 |
| Jan-87 | 0 | | 63,083.00 | 7.50 | 394.27 | 36.86 | 69,411.03 |
| Feb-87 | 0 | | 63,083.00 | 7.50 | 394.27 | 39.55 | 69,844.85 |
| Mar-87 | 0 | | 63,083.00 | 7.50 | 394.27 | 42.26 | 70,281.38 |
| Apr-87 | 0 | | 63,083.00 | 7.50 | 394.27 | 44.99 | 70,720.64 |
| May-87 | 0 | | 63,083.00 | 8.00 | 420.55 | 50.92 | 71,192.11 |
| Jun-87 | 0 | | 63,083.00 | 8.25 | 433.70 | 55.75 | 71,681.56 |
| Jul-87 | 26,520 | | 89,603.00 | 8.25 | 616.02 | 59.12 | 98,876.69 |
| Aug-87 | 0 | | 89,603.00 | 8.25 | 616.02 | 63.76 | 99,556.47 |
| Sep-87 | 0 | | 89,603.00 | 8.25 | 616.02 | 68.43 | 100,240.92 |
| Oct-87 | 0 | | 89,603.00 | 8.75 | 653.36 | 77.57 | 100,971.84 |
| Nov-87 | 0 | | 89,603.00 | 9.00 | 672.02 | 85.27 | 101,729.13 |
| Dec-87 | 0 | | 89,603.00 | 8.75 | 653.36 | 88.42 | 102,470.91 |
| Jan-88 | 0 | | 89,603.00 | 8.75 | 653.36 | 93.83 | 103,218.09 |
| Feb-88 | 0 | | 89,603.00 | 8.75 | 653.36 | 99.28 | 103,970.72 |
| Mar-88 | 0 | | 89,603.00 | 8.50 | 634.69 | 101.77 | 104,707.18 |
| Apr-88 | 0 | | 89,603.00 | 8.50 | 634.69 | 106.99 | 105,448.86 |
| May-88 | 0 | | 89,603.00 | 8.50 | 634.69 | 112.24 | 106,195.79 |
| Jun-88 | 0 | | 89,603.00 | 9.00 | 672.02 | 124.45 | 106,992.25 |
| Jul-88 | 25,672 | | 115,275.00 | 9.00 | 864.56 | 130.42 | 133,659.24 |
| Aug-88 | 0 | | 115,275.00 | 9.50 | 912.59 | 145.54 | 134,717.37 |
| Sep-88 | 0 | | 115,275.00 | 10.00 | 960.63 | 162.02 | 135,840.02 |
| Oct-88 | 0 | | 115,275.00 | 10.00 | 960.63 | 171.38 | 136,972.02 |
| Nov-88 | 0 | | 115,275.00 | 10.00 | 960.63 | 180.81 | 138,113.45 |
| Dec-88 | 0 | | 115,275.00 | 10.50 | 1008.66 | 199.84 | 139,321.94 |
| Jan-89 | 0 | | 115,275.00 | 10.50 | 1008.66 | 210.41 | 140,541.01 |
| Feb-89 | 0 | | 115,275.00 | 10.50 | 1008.66 | 221.08 | 141,770.74 |
| Mar-89 | 0 | | 115,275.00 | 11.50 | 1104.72 | 253.92 | 143,129.38 |
| Apr-89 | 0 | | 115,275.00 | 11.50 | 1104.72 | 266.94 | 144,501.04 |
| May-89 | 0 | | 115,275.00 | 11.50 | 1104.72 | 280.08 | 145,885.84 |
| Jun-89 | 0 | | 115,275.00 | 11.50 | 1104.72 | 293.35 | 147,283.91 |
| Jul-89 | 25,672 | | 140,947.00 | 11.00 | 1292.01 | 293.42 | 174,541.34 |
| Aug-89 | 0 | | 140,947.00 | 10.50 | 1233.29 | 293.95 | 176,068.58 |
| Sep-89 | 0 | | 140,947.00 | 10.50 | 1233.29 | 307.31 | 177,609.18 |
| Oct-89 | 0 | | 140,947.00 | 10.50 | 1233.29 | 320.79 | 179,163.26 |
| Nov-89 | 0 | | 140,947.00 | 10.50 | 1233.29 | 334.39 | 180,730.94 |
| Dec-89 | 0 | | 140,947.00 | 10.50 | 1233.29 | 348.11 | 182,312.33 |
| Jan-90 | 0 | | 140,947.00 | 10.50 | 1233.29 | 361.95 | 183,907.56 |
| Feb-90 | 0 | | 140,947.00 | 10.00 | 1174.56 | 358.00 | 185,440.13 |
| Mar-90 | 0 | | 140,947.00 | 10.00 | 1174.56 | 370.78 | 186,985.46 |
| Apr-90 | 0 | | 140,947.00 | 10.00 | 1174.56 | 383.65 | 188,543.67 |
| May-90 | 0 | | 140,947.00 | 10.00 | 1174.56 | 396.64 | 190,114.87 |

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

| | | | | | | |
|---|---|---|---|---|---|---|
| Jun-90 | 0 | 140,947.00 | 10.00 | 1174.56 | 409.73 | 191,699.16 |
| Jul-90 | 25,672 | 166,619.00 | 10.00 | 1388.49 | 422.93 | 219,182.59 |
| Aug-90 | 0 | 166,619.00 | 10.00 | 1388.49 | 438.03 | 221,009.11 |
| Sep-90 | 0 | 166,619.00 | 10.00 | 1388.49 | 453.25 | 222,850.85 |
| Oct-90 | 0 | 166,619.00 | 10.00 | 1388.49 | 468.60 | 224,707.94 |
| Nov-90 | 0 | 166,619.00 | 10.00 | 1388.49 | 484.07 | 226,580.51 |
| Dec-90 | 0 | 166,619.00 | 10.00 | 1388.49 | 499.68 | 228,468.68 |
| Jan-91 | 0 | 166,619.00 | 10.00 | 1388.49 | 515.41 | 230,372.59 |
| Feb-91 | 0 | 166,619.00 | 9.00 | 1249.64 | 478.15 | 232,100.38 |
| Mar-91 | 0 | 166,619.00 | 8.75 | 1214.93 | 477.47 | 233,792.78 |
| Apr-91 | 0 | 166,619.00 | 8.75 | 1214.93 | 489.81 | 235,497.52 |
| May-91 | 0 | 166,619.00 | 8.75 | 1214.93 | 502.24 | 237,214.69 |
| Jun-91 | 0 | 166,619.00 | 8.75 | 1214.93 | 514.76 | 238,944.38 |
| Jul-91 | 25,672 | 192,291.00 | 8.75 | 1402.12 | 527.37 | 266,545.87 |
| Aug-91 | 0 | 192,291.00 | 8.75 | 1402.12 | 541.44 | 268,489.44 |
| TOTAL OF COLUMN: | | 192,291.00 | | 61,032.71 | 15,165.73 | **$268,489.44** |

*E=(C/12) multiplied by the cumulative sum of all previous months' simple and compounded interest.

**This charge is the sum of the 1984 ($4,631) and 1985 charge ($29,226). These charges are combined to simplify the calculations because 1984 was a partial year

(JMM:6/10/91)
DWR/ANNUAL CHARGE.1

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

# Supplement No. 4 to
# Rate Schedule FERC No. 139

# Calculation of the

# Revised O&M Expenses (BCAP)

Filed in

FERC Docket No. ER92-133-000

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

## CALCULATION OF THE REVISED BCAP

PG&E performs routine maintenance services on the Transmission Line and the other Cotenants reimburse PG&E for their share of the Operation and Maintenance costs. For 1984, the initial year of the Transmission Lines' operation, the Cotenants agreed that the total operation and maintenance costs to be shared among all Cotenants was $343,000. This amount is the Basis for Calculation of Annual Payments (BCAP) for 1984. Using this amount as the basis, Section 6.2 of the Cotenancy Agreement provides a formula to calculate the amount of operation and maintenance cost to be shared in each future year. The formula is:

$$BCAP_n = BCAP_{n-1} \left( 0.7 \frac{Index\ 1_{n-1}}{Index\ 1_{n-2}} + 0.3 \frac{Index\ 2_{n-1}}{Index\ 2_{n-2}} \right)$$

where n = year in which such payment occurs, and

$BCAP_n$ = $343,000 when $n$ = 1984

where the indices are as follows:

Index 1 =   Average Hourly Earnings for Production or Non-Supervisory Workers in Electric, Gas and Sanitary Services (SIC 49) in the State of California during the appropriate year, as most recently published (Bureau of Labor Statistics, U.S. Department of Labor, "Employment, Hours and Earnings -- States and Areas").

Index 2 =   Average value of the Producer Price Index for Industrial Commodities during the appropriate year, as most recently published (Bureau of Labor Statistics, U.S. Department of Labor, "Producer Prices and Price Indexes"). The Parties have agreed the appropriate index for escalation of BCAP is the "PRODUCER PRICE INDEX for INDUSTRIAL COMMODITIES; ALL COMMODITIES, EXCLUDING FUEL".

Section 6.2 of the Cotenancy Agreement specifies that these indices be used, but contemplates that these indices may not be calculated in perpetuity and allows for the use of their

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

appropriate successor indices. For calculating the Cotenants' BCAP for the years 1984 - 1991, PG&E used Index 1 information obtained directly from the Bureau of Labor Statistics (BLS) database and Index 2 information obtained from PG&E's subscription access to Data Resources Incorporated (DRI) database. Index 1 information is no longer accessible in the published format that was available in 1984. Although the State of California still submits Index 1 statistics to the BLS, this information is not published by BLS on a regular basis. Rather, it is input in the BLS database.

## Calculation of BCAP, 1984 - 1991

Using the formulas discussed above, PG&E has calculated the BCAP for the years 1984 through 1991. These calculations are shown below:

$$BCAP_n = BCAP_{n-1}\left( 0.7\, \frac{Index\ 1_{n-1}}{Index\ 1_{n-2}} + 0.3\, \frac{Index\ 2_{n-1}}{Index\ 2_{n-2}} \right)$$

| $Year_n$ | Index 1 | Index 2 | $BCAP_n$ | | $BCAP_{n-1}$ | | Adjustment Factor |
|---|---|---|---|---|---|---|---|
| 1982 | 13.31 | 1.000 | | | | | |
| 1983 | 14.30 | 1,024 | | | | | |
| 1984 | 15.27 | 1.054 | $343,000 | | | | |
| 1985 | 15.73 | 1.068 | $362,301 | = | $343,000 | x | (0.74748 + 0.30879) |
| 1986 | 16.91 | 1.077 | $371,385 | = | $362,301 | x | (0.72109 + 0.30398) |
| 1987 | 16.46 | 1.106 | $391,825 | = | $371,385 | x | (0.75251 + 0.30253) |
| 1988 | 18.85 | 1.165 | $387,692 | = | $391,825 | x | (0.68137 + 0.30808) |
| 1989 | 18.85 | 1.215 | $433,301 | = | $387,692 | x | (0.80164 + 0.31600) |
| 1990 | 19.50 | 1.239 | $438,880 | = | $433,301 | x | (0.70000 + 0.31288) |
| 1991 | | | $452,075 | = | $438,880 | x | (0.72414 + 0.30593) |

The supporting documents for the indices used herein are included in this Attachment.

## Revised BCAP Billing for NCPA and CSC

The initial BCAP and the formula for calculating subsequent BCAP values was filed and accepted in FERC Docket No. ER86-364-000, but PG&E did not specifically request automatic adjustment clause treatment in that filing. Based upon the revised BCAP amounts, calculated above, and the revised Ownership Interests (calculated in Attachment 4 of this filing), PG&E has

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

calculated revised BCAP payments for NCPA and CSC, and has calculated BCAP payments for DWR, consistent with those for the other Cotenants.

The revised BCAP payments for NCPA and CSC are shown below, through 1991. These Cotenants have previously been billed for BCAP payments through 1990, but the prior bills did not rigorously apply the formulas specified in Section 6.2 of the Cotenancy Agreement. The amounts calculated in this Attachment reflect the correct application of the most current indices and the change in Ownership Interests that resulted from the re-rating of the Transmission Line. Calculated below are the amounts due to PG&E from NCPA and CSC for the BCAP through July of 1991:

| $Year_n$ | $BCAP_n$ | $BCAP_n \times \%$ ownership interest* $=$ | CSC (4.98%) (4.96%) | NCPA (4.14%) 1984-1986 (4.12%) 87 forward |
|---|---|---|---|---|
| 1984 | $343,000 | | $ 2,707 | $ 2,250 |
| 1985 | $362,301 | | $ 18,043 | $ 14,999 |
| 1986 | $371,385 | | $ 18,495 | $ 15,375 |
| 1987 | $391,825 | | $ 19,435 | $ 16,143 |
| 1988 | $387,692 | | $ 19,230 | $ 15,973 |
| 1989 | $433,301 | | $ 21,492 | $ 17,852 |
| 1990 | $438,880 | | $ 21,768 | $ 18,082 |
| | | | | |
| Total Adjusted Annual Charges due 1984-1990 | | | $121,170 | $100,674 |
| | | | | |
| Total Payments Received to Date: | | | $117,120 | $ 97,285 |
| | | | | |
| Adjusted Balance Due**: | | | $ 4,050 | $ 3,389 |
| | | | | |
| 1991 | $452,075 | | $ 22,423 | $ 18,625 |
| | | | | |
| Total Balance Due as of July 1, 1991: | | | $ 26,473 | $ 22,014 |

_____

\*     Percentage of the Cotenants' individual ownership interest share changed in 1987 due to the rerating of the capacity of the Transmission Line from 1,206 MW to 1,211 MW.

Case: 19-30088    Doc# 11889-4    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 139 of 195

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**\*\*** These amounts do not reflect a rate increase rather it is revisions to previous erroneously billed amounts. These balances are due because the amounts billed to the Cotenants did not reflect the correct application of the formula specified in Section 6.2 of the Cotenancy Agreement. In fact, the 1989 and 1990 billings did not reflect an application of the formula at all.

## BCAP Billing for DWR

The BCAP payments for DWR are shown below. The annual amounts shown below will be netted against the transmission service revenues received by PG&E from DWR for DWR's use of the Transmission Line prior to DWR's execution of the Cotenancy Agreement. Although not done in a timely manner, this netting shall include interest on both the BCAP payments and the transmission payments, pursuant to Section 10.3 of the Cost-Sharing Agreement. The interest calculations are shown on the worksheet attached hereto as Attachment 6a.

| $Year_n$ | $BCAP_n$ | $BCAP_n$ x % ownership interest* | = | DWR BCAP Charges (13.68%) 1984-1986 (13.63%) 1987 forward |
|---|---|---|---|---|
| 1984 | $343,000 | | | $ 7,436 |
| 1985 | $362,301 | | | $ 49,563 |
| 1986 | $371,385 | | | $ 50,805 |
| 1987 | $391,825 | | | $ 53,406 |
| 1988 | $387,692 | | | $ 52,842 |
| 1989 | $433,301 | | | $ 59,059 |
| 1990 | $438,880 | | | $ 59,819 |
| 1991 | $452,075 | | | $ 61,618 |
| Balance Due July 1, 1991: | | | | $394,548 |

\* Percentage of the Cotenants' individual ownership interest share changed in 1987 due to the rerating of the capacity of the Transmission Line from 1,206 MW to 1,211 MW.

# Agreement of Cotenancy

## in the

## Castle Rock Junction-Lakeville 230-kV

## Transmission Line

## among

## Pacific Gas and Electric Company

## State of California Department of Water Resources

## Northern California Power Agency

## City of Santa Clara

## June 1, 1984

## PG&E Rate Schedule FERC No. 139

THIS AGREEMENT OF COTENANCY IN THE CASTLE ROCK JUNCTION-
LAKEVILLE 230-kV TRANSMISSION LINE is entered into as of the 1st day of June, 1984, by
and between Pacific Gas and Electric Company (PGandE), the State of California Department of
Water Resources (CDWR), the Northern California Power Agency (NCPA) and the City of
Santa Clara (Santa Clara), (Cotenant or Cotenants), and is as follows:

**Recitals**

PGandE is presently constructing on behalf of the Cotenants a 230-kV double circuit
transmission line (New Line) between Castle Rock Junction and its Lakeville Substation in The
Geysers area.

PGandE has entered into separate Interconnection Agreements with each of CDWR,
NCPA, and Santa Clara which conferred upon those Cotenants a right to participate in the
ownership of the New Line as tenants-in-common and such Cotenants have exercised such
rights.

The Cotenants have entered into the Sharing Agreement to allow the Cotenants other than
PGandE to commence payment of their respective shares of the Cost of the New Line and to
make contributions-in-aid-of-construction for the Associated Facilities in proportion to their
Ownership Interests.

The Cotenants desire to set forth their rights and obligations as tenants-in-common of the
New Line and for the use, operation and maintenance of the New Line, Associated Facilities, and
Land Rights.

The Cotenants intend this Agreement to supercede the Sharing Agreement.

**1.0     Definitions**

The following terms, when used in this Agreement with initial capitalization whether in
the singular or plural, shall have the following meanings.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**1.1    Addition and Betterment**

A capital improvement, the primary aim of which is to make the property affected more useful, more efficient, of greater durability or of greater capacity.

**1.2    Associated Facilities**

Equipment and facilities that are not a part of the New Line as such but which are installed in order to integrate it with PGandE's system.

**1.3    CEC**

California Energy Commission or its successor agency.

**1.4    CPUC**

California Public Utilities Commission or its successor agency.

**1.5    Capital Replacement**

A retirement unit that is substituted for another such retirement unit, as the term "retirement unit" is defined in the Federal Energy Regulatory Commission List of Retirement Units for Use in Connection with Uniform System of Accounts Prescribed for Public Utilities and Licenses, or its successor document.

**1.6    Coordinating Committee**

The Committee formed pursuant to Article 15.0.

**1.7    Cost**

The costs of the appropriate Cotenant associated with the Line Circuits and Associated Facilities including, but not limited to: all capital expenditures, expenses of operation, maintenance, administrative and general expenses, taxes, an allocation of fixed charges on general plant and common utility plant, labor and payroll taxes, materials and supplies, transportation, stores and tool expenses, supervision and overheads, depreciation, an allowance for workers' compensation,

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

and public liability and property damage insurance, as determined by PGandE in accordance with the FERC Uniform System of Accounts as may be amended or superseded from time to time. The appropriate components of costs, as defined herein, shall be applied for the particular service or transaction performed. The factor for determining PGandE's cost of capital shall be equal to the rate of return on investment base as most recently allowed by the FERC. The factor for determining the cost of capital for a Cotenant other than PGandE shall be equal to the rate of interest payable by such Cotenant with respect to its most recent issue of debt securities having a maturity of no less than five (5) years, taking into consideration any original issue discount. No rate of return shall be included in any charge assessed on the portion of any facilities to the extent such facilities are financed by one or more contributions-in-aid-of-construction.

### 1.8    Cotenant

CDWR, NCPA, PGandE, Santa Clara and any transferee that becomes a Cotenant under Section 2.4.3.

### 1.9    FERC

Federal Energy Regulatory Commission or its successor agency.

### 1.10    Firm Transmission Entitlement

The firm entitlement of a Cotenant to the use of transmission capacity on a Line Circuit or Other Circuit or combination thereof as provided in Section 7.1.

### 1.11    Good Utility Practice

1.11.1  With respect to actions or inactions by any Cotenant other than CDWR, those practices, methods and equipment, including levels of reserves and provisions for contingencies, as modified from time to time, that are at least as good as those commonly used in the Service Area to operate, reliably and safely, electric power facilities to serve a utility's own customers dependably and

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

economically, with due regard for the conservation of natural resources and the protection of the environment of the Service Area; provided, that such practices, methods and equipment are not unreasonably restrictive.

1.11.2  With respect to action or inactions by CDWR, the then current practices, methods and equipment generally used by electric utilities, which operate primarily in the State of California, for the purpose of providing economic, safe and reliable service to their own customers, with due regard for the conservation of natural resources and the protection of the environment.

## 1.12    Interconnection Agreements

The Comprehensive Agreement between the State of California Department of Water Resources and PGandE executed April 22, 1982, the Interconnection Agreement between PGandE and the City of Santa Clara effective October 27, 1983, the Interconnection Agreement between PGandE and the Northern California Power Agency, City of Alameda, City of Biggs, City of Gridley, City of Healdsburg, City of Lodi, City of Lompoc, City of Palo Alto, City of Roseville, City of Ukiah and Plumas Sierra Rural Electric Cooperative effective September 14, 1983, and any interconnection agreement between PGandE and another entity that becomes a Cotenant, as such agreements may be amended from time to time.

## 1.13    Lakeville-Sobrante 230-kV Line

For purposes of Article 8.0, that 230-kV transmission line and associated facilities included in "Phase II Construction" as shown in Appendix A.

## 1.14    Land Rights

All rights, including easements, rights-of-way, or fee title in real property necessary for the construction, use, operation, and maintenance of the New Line, and the Associated Facilities.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**1.15   Line Circuit**

Either Line Circuit No. 1 or Line Circuit No. 2.

**1.16   Line Circuit No. 1**

The three-phase, 230-kV circuit shown in Appendix A that, as of the initial operation date of the New Line, serves PGandE's Geysers Unit No. 14.

**1.17   Line Circuit No. 2**

The three-phase, 230-kV circuit shown in Appendix A that, as of the initial operation date of the New Line, serves PGandE's Geysers Unit No. 9.

**1.18   New Line**

The double-circuit, 230-kv transmission line now being constructed between PGandE's tower No. 0/1 at Castle Rock Junction in The Geysers area and the circuit breaker structure at Lakeville Substation shown in Appendix A. The facilities include tower No. 0/1 at Castle Rock Junction, the overhead line with bundled 2300-kcm aluminum conductors, the associated pipe-type underground circuits with 3500-kcm aluminum cables, all conductors, towers, related hardware and any Capital Replacements and Additions and Betterments thereto, but exclude the circuit breaker structure at Lakeville Substation and any Land Rights. The New Line constitutes a portion of the Line Circuits, as shown in Appendix A.

**1.19   Operating Emergency**

An unplanned event, series of events, or circumstance, which requires the taking of immediate action (i) to preserve, maintain, or reestablish the safety, integrity, or operability of the Line Circuits, Other Circuits, or Associated Facilities or the facilities of any Cotenant interconnected with the Line Circuits, Other Circuits, or Associated Facilities; (ii) to protect the health or safety of employees or the public; or (iii) to prevent or minimize any significant adverse environmental effects.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**1.20  Other Circuit**

Either Other Circuit No. 1 or Other Circuit No. 2, or any future 230-kV
transmission circuit other than the Line Circuits, which circuit is operated by
PGandE in The Geysers area and interconnects with PGandE's backbone
transmission system.

**1.21  Other Circuit No. 1**

The three-phase, 230-kV circuit shown in Appendix A that, as of the initial
operation date of the New Line connects PGandE's Geysers Unit No. 5 with
PGandE's Fulton Substation.

**1.22  Other Circuit No. 2**

The three-phase, 230-kV circuit shown in Appendix A that, as of the initial
operation date of the New Line, connects PGandE's Geysers Unit No. 17 with
PGandE's Fulton Substation.

**1.23  Ownership Interest**

A Cotenant's ownership share in the New Line as provided and adjusted in
Section 2.2.

**1.24  Service Area**

That area within the exterior geographic boundaries of the several areas
electrically served at retail, now or in the future, by PGandE, and those areas in
northern and central California adjacent thereto.

**1.25  Sharing Agreement**

The Agreement for Sharing of Costs for Construction of the Castle Rock
Junction-Lakeville 230-kV Transmission Line and Associated Facilities, executed
as of May 21, 1984 by PGandE, CDWR, NCPA and Santa Clara.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**1.26    Willful Action**

Willful action as defined in Section 12.6.

**2.0    Ownership Interests**

**2.1    Undivided Interests**

Each Cotenant owns an undivided interest in the New Line as a tenant-in-common as provided in this Article 2.0. Cotenants other than PGandE shall have no ownership in the Associated Facilities or the Land Rights; provided, however, that unless and until its Ownership Interest is terminated as provided in this Agreement each Cotenant shall have such rights to the benefit of the Land Rights and such rights to use the Associated Facilities as may be necessary to make use of its Firm Transmission Entitlement, pursuant to this Agreement.

**2.2    Initial Ownership Interests and Subsequent Adjustments**

The initial rating of the New Line is 1,206 MW with each Line Circuit rated at 603 MW. The initial Ownership Interest of each Cotenant is as follows, subject to adjustment as provided in this Section 2.2:

|              | Ownership Interests | |
|--------------|--------------|------------|
|              | (Megawatts)  | (Percent)  |
| CDWR-        | 165.0        | 13.68      |
| NCPA-        | 49.9         | 4.14       |
| PGandE-      | 931.0        | 77.20      |
| Santa Clara- | 60.1         | 4.98       |
| Total        | 1206.0       | 100.00     |

2.2.1    The Ownership Interests shall be determined as follows:

2.2.1.1        For PGandE, the Ownership Interest in megawatts is equivalent to the capacity rating of the New Line minus the

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

sum of the Ownership Interests in megawatts of the Cotenants other than PGandE.

2.2.1.2      Ownership Interests in percent are determined for each Cotenant by the following equation:

$$\text{Ownership Interest in Percent} \; = \; \frac{100 \times \text{Ownership Interest in MW}}{\text{Capacity Rating of New Line}} \; \%$$

2.2.2    Ownership Interests shall be adjusted as provided in this Section 2.2.2. For purposes of payment under Article 5.0, adjustments of Ownership Interests shall be deemed to take effect on the first day of the calendar month in which the transaction or change specified in this Section 2.2.2 takes place.

2.2.2.1      Within sixty (60) calendar days of executing this Agreement, a Cotenant may terminate its participation if unsatisfied regarding the quality of PGandE's title to the Land Rights pursuant to Section 3.2. In that case, the Ownership Interest of the terminating Cotenant shall revert to PGandE, and PGandE's Ownership Interest in megawatts and percent shall increase accordingly. The Ownership Interests of the other Cotenants that remain parties to this Agreement shall not change under this Section 2.2.2.1.

2.2.2.2      After this Agreement is executed, any Cotenant may divest itself of part or all of its Ownership Interest upon satisfaction of the standards described in Section 2.4.3. The selling Cotenant thereby reduces or eliminates its Ownership Interest in megawatts and percent, and transfers a corresponding Ownership Interest to a new or existing Cotenant. The Ownership Interests of the Cotenants that do

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

not participate in this transfer shall not change under this Section 2.2.2.2.

2.2.2.3    Following the first two (2) years of operation of the New Line and the monitoring thereof by PGandE as operator, the capacity rating of the New Line shall be adjusted pursuant to Section 4.7. At that time, PGandE's Ownership Interest in megawatts shall change in an amount equal to such adjustment in the capacity rating. The Ownership Interest in megawatts of the other Cotenants shall not be changed. If the capacity rating of the New Line increases, PGandE's Ownership Interest in megawatts and in percent shall increase, and the other Cotenants' Ownership Interests in percent shall decrease. If the capacity rating of the New Line decreases, PGandE's Ownership Interest in megawatts and in percent shall decrease, and the other Cotenants' Ownership Interests in percent shall increase.

2.2.2.4    If Additions and Betterments that increase the capacity rating of the New Line are made pursuant to Article 10.0, the Ownership Interests of the Cotenants may change. For the Cotenants that participate in such Additions and Betterments, each of their Ownership Interests in megawatts shall increase to the extent of such participation; their Ownership Interests in percent may change accordingly on the basis of the new capacity rating of the New Line after the Additions and Betterments become operational. For the Cotenants that do not so participate, each of their Ownership Interests in megawatts shall not be changed, while their Ownership Interests in percent shall decrease accordingly.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

2.2.2.5    If a Cotenant elects to terminate its participation in this Agreement pursuant to Articles 11.0 and/or 14.0, the Ownership Interests in megawatts and in percent of the non-terminating Cotenants shall increase for those which elect to receive the Ownership Interest transferred by the terminating Cotenant. The Cotenants which receive no transferred Ownership Interest from the terminating Cotenant shall have no change in their Ownership Interests.

2.2.3    After notice to it of facts requiring a change in any Ownership Interest under this Section 2.2, PGandE shall calculate the adjusted Ownership Interests as necessary and notify the other Cotenants of the changes.

## 2.3    Waiver of Partition Rights

The Cotenants waive the right to partition the New Line.

## 2.4    Transfer of Ownership Interests

Ownership Interests shall be transferrable as follows:

2.4.1    A Cotenant may mortgage or transfer security interests in its Ownership Interest without the consent of the other Cotenants and without the lienholder becoming liable under this Agreement.

2.4.2    To the extent not prohibited or restricted by law, including but not limited to any prohibitions or restrictions contained in any document conveying a real property interest necessary to the construction or use of the Line Circuits or Associated Facilities, a Cotenant may, subject to Section 2.5, sell, assign, or transfer its Ownership Interest or the use of that interest, provided (i) the transaction does not substantially impair the non-transferring Cotenants' rights under this Agreement; and (ii) the transferee agrees in writing prior to or concurrently with its agreement to such transaction that it shall not use PGandE's transmission system other than

the Line Circuits, Other Circuits, or Associated Facilities, as such use is authorized in this Agreement, except to the extent it is entitled to such use under a contract with PGandE or an enforceable judgment or order by a court, regulatory commission or other body of competent jurisdiction. The transferring Cotenant must notify any transferee that transmission service may not be available from PGandE beyond Lakeville or Fulton Substations, as applicable.

2.4.3   All sellers, assignors, or transferors, including those under foreclosure, shall remain liable under this Agreement except to the extent that: (i) the transfer is a complete divestiture in perpetuity of all of the rights and obligations associated with the Ownership Interest in megawatts that is being transferred; (ii) the transferee is a financially responsible entity in the judgment of the non-transferring Cotenants which judgment shall be reasonably exercised; and (iii) the transferee assumes in writing all obligations associated with the Ownership Interest in megawatts that is being transferred. If all standards described in this Section 2.4.3 are met, such transferee shall be a Cotenant.

2.4.4   A Cotenant shall notify the members of the Coordinating Committee of the particulars of any agreement under Section 2.4.2, except agreements subject to Section 2.5, within fourteen (14) calendar days after entering into such agreement or, if CDWR is the transferring Cotenant, within fourteen (14) calendar days after approval of the Agreement by the California Department of General Services. Such Cotenant shall inform PGandE's operating center by telephone or otherwise of such agreement before it becomes effective. The procedure for notifying the Cotenants regarding agreements subject to Section 2.5 shall be in accordance with Section 2.5.6.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**2.5     Rights of Refusal**

To the extent not prohibited or restricted by law and to the extent the transaction is other than for services lasting no more than one (1) year, including all renewals and extensions with respect to substantially similar services, and involves (i) solely transmission service, or (ii) transmission capacity in excess of that reasonably necessary to transmit any power that may be generated under the rights transferred as part of the transaction, then:

2.5.1     The entire transaction shall be subject to a first right of refusal by the non-transferring Cotenants to purchase or acquire the rights to be transferred at substantially the same price and under substantially the same terms or, at the election of the exercising Cotenant, under substantially more favorable terms, as those contained in a bona fide offer by another entity, including another Cotenant, which the transferring Cotenant proposes to accept. After submission of such bona fide offer to the non-transferring Cotenants for their review and until the procedures described in Section 2.5.6 are complete or until such submission is withdrawn prior to the exercise of any right of refusal under this Section 2.5, the transferring Cotenant shall have no right to accept another offer with respect to the rights to be transferred. Said first right of refusal shall be exercisable in proportion to the Ownership Interests of the exercising Cotenants, in the ratio such Ownership Interests bear to the total Ownership Interests of all non-transferring Cotenants.

2.5.2     In the event that the transferor is a Cotenant other than PGandE and any Cotenant elects not to exercise its right of first refusal under Section 2.5.1, then PGandE shall have the right of refusal to purchase or acquire the rights which were the subject of such election.

2.5.3     In the event the transferor is PGandE and any Cotenant elects not to exercise its right of first refusal under Section 2.5.1, then the remaining non-transferring Cotenants shall have the right of refusal to purchase or

**PACIFIC GAS AND ELECTRIC COMPANY**
Rate Schedule FERC No. 139

acquire in proportion to the Ownership Interests of such Cotenants in the ratio such Ownership Interests bear to the total Ownership Interests of said remaining, non-transferring Cotenant, or as otherwise agreed by the remaining non-transferring Cotenants, the rights which were the subject of such election.

2.5.4   In the event any Cotenant elects not to exercise its right of refusal under Section 2.5.2 or 2.5.3, then the remaining non-transferring Cotenants shall have the right of refusal to purchase or acquire in proportion to the Ownership Interests of such Cotenants in the ratio such Ownership Interests bear to the total Ownership Interests of said remaining, non-transferring Cotenants, or as otherwise agreed by the remaining non-transferring Cotenants, the rights which were the subject of such election. If any Cotenant fails to exercise its right of refusal under this Section 2.5.4, then the remaining non-transferring Cotenants must mutually agree to purchase or acquire all of the rights which were the subject of such election or they shall be deemed to have waived all rights of refusal with respect to the transaction in question.

2.5.5   In exercising the rights of refusal described in this Section 2.5, each Cotenant agrees not to assert any preference which may otherwise be available to it over another Cotenant.

2.5.6   The transferring Cotenant shall provide written notice and deliver a complete copy of the agreement it proposes to enter into to each other Cotenant on the same working day ("Delivery Date"). Exercise of the rights described in this Section 2.5 shall be as follows: No later than thirty (30) calendar days after the Delivery Date, or, if not a working day, no later than the first working day thereafter, each Cotenant shall meet with or otherwise communicate its decision pursuant to Section 2.5.1 to the other Cotenants, and shall confirm such decisions in writing to the other Cotenants thereafter. No later than thirty-seven (37) calendar days after

the Delivery Date, or, if not a working day, no later than the first working day thereafter, the Cotenants shall meet or otherwise communicate to the other Cotenants their decisions with regard to any right of refusal described in Sections 2.5.2 and 2.5.3. Such decisions shall be confirmed in writing to the other Cotenants thereafter. No later than forty-four (44) calendar days after the Delivery Date, or, if not a working day, no later than the first working day thereafter, the Cotenants shall meet or otherwise communicate to the other Cotenants their decisions with regard to any right of refusal described in Section 2.5.4, or reach the mutual agreement described in the second sentence of Section 2.5.4, and meet or otherwise communicate to the other Cotenants their agreement. Such decisions or agreement shall be confirmed in writing to the other Cotenants thereafter. Failure by any Cotenant to communicate any decision or agreement as provided in this Section 2.5.6 shall be a waiver of all rights of refusal held by such Cotenant under this Section 2.5 with respect to the rights to be transferred.

2.5.7   In exercising any right of refusal described in this Section 2.5, the exercising Cotenant must either exercise that right of refusal with respect to all of the rights available to it, or it shall be deemed to have waived all of its rights of refusal with respect to the transaction in question.

2.5.8   The transferring Cotenant shall deliver to the other Cotenants a copy of any agreement entered into by it which was subject to this Section 2.5.

## 2.6   Abandonment

No Cotenant shall be relieved of its obligations under this Agreement by abandoning its interest.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**3.0** **Land Rights**

**3.1** **Land Rights Acquired by PGandE**

PGandE has acquired Land Rights necessary for the Cotenants to make use of their Firm Transmission Entitlement as provided in Section 2.1.

**3.2** **Creation and Acquisition of Land Rights**

PGandE's creation, acquisition, and agreement to give the other Cotenants the benefit of the Land Rights are without warranty or guarantee of any kind. Each other Cotenant shall satisfy itself in advance as to the quality of the title and its sole remedy, if dissatisfied, is either to terminate its participation in this Agreement or to pursue changes to such title, provided, however, that PGandE shall exercise its best efforts to secure and maintain such Land Rights as may be necessary to enable PGandE, CDWR, NCPA, and Santa Clara to use their Firm Transmission Entitlements. PGandE has reviewed the easement documents and it is PGandE's good faith judgment that there are no restrictions which would prevent CDWR, NCPA or Santa Clara from receiving the benefits of the Land Rights as provided in Section 2.1, but that there may be restrictions with respect to transfers to some other entities of the right to receive the benefits of the Land Rights.

3.2.1   The right of termination under this Section 3.2 is only held by CDWR, NCPA and Santa Clara, and will cease sixty (60) calendar days after the first execution of this Agreement by any such Cotenant, and if not exercised, that Cotenant shall be deemed satisfied as to such title.

3.2.2   In the event of any termination under this Section 3.2, each Cotenant whose participation in this Agreement is terminated shall, in consideration of the refund described in Section 3.2.3, transfer the interests and rights it holds in the New Line, Associated Facilities and Land Rights to PGandE immediately upon the effectiveness of such termination. Such transfer shall not be subject to Section 2.5.

3.2.3    In the event of any such termination, PGandE shall refund to that Cotenant any amounts theretofore received from the terminating Cotenant with respect to the Associated Facilities and the New Line, and Ownership Interests as specified in Section 2.2 shall be adjusted as appropriate. Such refund shall be made with interest calculated as defined in Section 6.6 from the date each payment was made under Section 4.2 to the date the refund is made.

### 3.3    Release of Lien

PGandE shall use its best efforts to obtain a release of any lien that might have been created by its First and Refunding Mortgage, dated December 1, 1920, as amended and supplemented, with respect to the Ownership Interests of any other Cotenant, if appropriate.

## 4.0    Sharing Initial Construction Costs of the New Line and Associated Facilities

### 4.1    Initial Cost Estimate for the New Line

PGandE currently estimates that the initial construction Cost of the New Line will be approximately $45,500,000, excluding Costs of the Land Rights and Associated Facilities. PGandE shall revise this estimate from time to time as appears appropriate.

### 4.2    Cost-Sharing for the New Line

Subject to Sections 4.6 and 4.7, PGandE's share of the estimated initial construction Cost of the New Line is 77.2 percent, and the other Cotenants' shares total 22.8 percent. Payments shall be made monthly according to the schedule in Appendix B, with payments to cover the expected expenditures to be incurred in the pertinent month. Payments by check or wire transfer shall be received by PGandE not later than the first day of each month. If payments are not received in time, the provisions of Sections 4.11 and 6.4 apply. PGandE shall reconcile the payment schedule with the actual expenditures as soon as practicable after the

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

receipt of such actual Cost information. PGandE shall make appropriate revisions in the schedule of payments so that the payment schedule will as much as practicable reflect the actual amounts of money required by PGandE as such money is expended.

**4.3     Payment for the Associated Facilities**

Cotenants other than PGandE shall bear a share of construction Costs of the Associated Facilities, in proportion to their Ownership Interests, by making payments to PGandE as contributions-in-aid-of-construction, and shall have the right to use such Associated Facilities as provided in Section 2.1 without additional charge other than as provided in Section 5.4.

**4.4     Cost-Sharing for the Associated Facilities**

PGandE presently estimates that the initial construction Costs of the Associated Facilities will be approximately $2,381,700. PGandE shall revise this estimate from time to time as appears appropriate. Subject to Section 4.7, the Cotenants agree to share these Costs on the basis of the Cotenants' initial Ownership Interests as stated above in Section 2.2. Thus, the contributions of Cotenants other than PGandE were:

| | |
|---|---|
| CDWR- | $325,817 |
| Santa Clara- | 118,609 |
| NCPA- | 98,602 |

**4.5     Payments Made for the Associated Facilities**

The contributions-in-aid-of-construction in the amounts specified in Section 4.4 were paid to PGandE on June 1, 1984.

**4.6     Preliminary Accounting**

PGandE shall, subsequent to completion of the New Line and Associated Facilities, provide the other Cotenants a preliminary accounting of the actual

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

Costs thereof to bring the payments in line with the initial Ownership Interest defined in Section 2.2. Statements shall be submitted that specify any additional payment or reimbursement necessary to achieve the appropriate allocation of payments by Ownership Interest based on the methodology used to prepare Appendix B. Such adjustments shall include interest as provided in Section 6.6 from the date of the final payment under Appendix B to the date of the adjustment statement.

**4.7     Adjustment of Capacity Rating and Final Accounting**

After monitoring the operation of the New Line for two (2) years from its date of operation and after the final accounting for the Costs of the New Line and Associated Facilities, PGandE shall revise the capacity rating of the New Line and will provide a final adjustment of Costs of the New Line and Associated Facilities based on the methodology used to prepare Appendix B and on the revised New Line capacity rating. Each Cotenants' Ownership Interest shall be adjusted as provided in Section 2.2. Additional payments or reimbursements shall be made with interest as provided in Section 6.6, from the date of the adjustment statement in Section 4.6 to the date of the final adjustment statement prepared pursuant to this Section 4.7. The monitoring and rating of the New Line shall be done in accordance with Good Utility Practice. PGandE, as operator, has the sole right to establish the line rating. The Cotenants other than PGandE shall have the right to review the methodology and results of the line rating process. The capacity rating of the New Line after Additions and Betterments are made under Article 10.0 shall be adjusted in accordance with this Section 4.7.

**4.8     Right to Review**

Each Cotenant shall have the right to review the documents supporting the Costs billed in this Article 4.0, in accordance with Section 16.10, up to one (1) calendar year after receipt of the final accounting statement prepared pursuant to Section 4.7.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**4.9    No Cost Guarantee**

PGandE does not represent, agree, or guarantee that Costs of the New Line will not exceed its estimates by reason of price increases, human error, uncontrollable forces, or any other factor to which construction projects are subject.

**4.10    Expected Completion Date of Construction**

PGandE shall use its best efforts to continue constructing the New Line and Associated Facilities with a goal of completing them and putting them into full operation on or about March 1, 1985.

**4.11    Consequences of Non-Timely Payments**

If any Cotenant other than PGandE does not make any payment referred to in this Article 4.0 in a timely manner in accordance with Section 4.2, such Cotenant shall pay PGandE 100 percent of its share of the amount described in this Section 4.11 rather than 50 percent thereof as otherwise provided. Under existing tax law, all payments referred to in this Article 4.0 should be, in the opinion of all Cotenants, excludable from PGandE's gross income for federal, state, and/or local income tax purposes. If this turns out not to be the case and any or all of these payments are included in PGandE's gross income for federal, state, and/or local income tax purposes, the Cotenants other than PGandE agree to pay PGandE, in proportion to their Ownership Interests, 50 percent of the following amount: The amount that PGandE's tax liability increases as a result of including any or all of such payments (plus any payments to be made by the other Cotenants to PGandE under this Section 4.11) in PGandE's gross income for tax purposes for each year, over the tax liability PGandE would have incurred in the same year without including such payments in PGandE's gross income, such amount to be adjusted to reflect any credits, deductions or other tax benefits taken or to be taken by PGandE in previous, current and future tax years for the Ownership Interests for which such payments were made. If after the adjustment, the amount becomes a negative figure, PGandE shall pay 50 percent of that amount to the other Cotenants in

proportion to the Ownership Interests of each of the other Cotenants. No Cotenant makes any representation with respect to these tax risks, with respect to which each Cotenant has consulted its own tax counsel.

### 4.12    Nature of Agreement

The Cotenants intend that this Agreement shall constitute a sharing arrangement among the Cotenants for the cooperative funding and construction of a new 230-kV transmission line and Associated Facilities in The Geysers area of Northern California. The Cotenants do not intend this Agreement to create a partnership for tax purposes or otherwise. If, however, any tax authority characterizes this Agreement as creating a partnership, the Cotenants hereby affirm that it is their intention, beginning with the first taxable year of the purported partnership, not to have such entity taxed as a partnership under either (a) Subchapter K of Chapter 1 of the Internal Revenue Code of 1954, as amended from time to time, or (b) comparable partnership provisions of federal, state or local tax laws. The Cotenants agree to execute such documents as may be necessary for tax purposes to effectuate this intention.

## 5.0    Cotenants' Payments for Costs of Operation, Maintenance, Replacement, and Additions and Betterments

### 5.1    Annual Costs To Be Shared

Except as provided in Section 7.13, the Cotenants shall share the Costs of operation and maintenance, Capital Replacements, and Additions and Betterments to the Line-Circuits and Associated Facilities as provided in this Article 5.0.

### 5.2    Sharing of Costs of Operating Emergencies

The Cotenants shall share the Costs of Capital Replacements associated with eliminating any Operating Emergency in proportion to their Ownership Interests pursuant to Section 6.3.3.

**5.3     Sharing of Costs for Operation and Maintenance of the Line Circuits**

The Cotenants other than PGandE shall pay an annual charge, in proportion to their Ownership Interests, for the operation and maintenance of the Line Circuits and PGandE's maintenance of the rights-of-way of the Line Circuits, as provided in and billed by PGandE under Section 6.2. PGandE owns, operates and maintains other 230-kV collector and tap lines that are interconnected with the Line Circuits but separate from them. Such collector and tap lines are not included as part of the Line Circuits for the purposes of Cost sharing under this Section 5.3.

**5.4     Sharing of Costs for Operation, Maintenance and Replacement of Associated Facilities**

Cotenants other than PGandE shall pay an annual charge to cover the Costs of owning, operating, maintaining, and making Capital Replacements to the Associated Facilities, in accordance with Section 5.7 and Appendix C. The system average rate listed in Appendix C may be adjusted not more than once in each calendar year. Billings and payments shall be in accordance with Section 6.1. PGandE may revise Appendix C subject to filing with FERC pursuant to Section 16.4.2 of this Agreement to the extent FERC has jurisdiction.

**5.5     Sharing of Costs for Capital Replacements and Additions and Betterments to Maintain Capacity of the New Line**

Except to the extent such Costs are paid by an entity other than a Cotenant, the Cotenants shall share, in proportion to their Ownership Interests as of the date the work commences, the Costs resulting from (i) Capital Replacements to the New Line or any portion thereof; and (ii) Additions and Betterments to the New Line or Associated Facilities that do not increase the rated capacity determined pursuant to Section 4.7. Except with respect to an Operating Emergency under Section 5.2, PGandE shall (i) provide an estimate of the Costs that are expected to be incurred and (ii) bill the other Cotenants for their share of such Costs pursuant to Section 6.3. Any payments by Cotenants other than PGandE under this Section

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

5.5 with respect to the Associated Facilities shall be contributions-in-aid-of-construction.

### 5.6 Sharing of Costs for Additions and Betterments to Upgrade Capacity of the New Line

The Costs of any Additions and Betterments to the New Line or Associated Facilities under Article 10.0 shall be shared by the Cotenants in proportion to their right to the benefits of such Additions and Betterments as provided in Article 10.0. Billings and payments shall be in accordance with Section 6.3. Any payments by Cotenants other than PGandE under this Section 5.6 with respect to the Associated Facilities shall be contributions-in-aid-of-construction.

### 5.7 Adjustments to Annual Payment for Associated Facilities

With respect to the Associated Facilities, each Cotenant's initial capital payment, as a contribution-in-aid-of-construction and as adjusted pursuant to Section 4.7, is used as the basis for determining the billing amount for the annual charge described in Appendix C. PGandE shall adjust each Cotenant's capital payment for purposes of determining such billing amount in such a manner as to relieve the transferring Cotenant of liability for the payment of such billing amount to the extent Ownership Interests are transferred pursuant to Section 2.4.3. When such a transfer takes place and after the Coordinating Committee is appropriately notified pursuant to Section 2.4.4, the transferor's capital payment shall be allocated for purposes of determining such billing amount between the transferor and the transferee in proportion to their Ownership Interests after the transfer. PGandE shall also adjust each Cotenant's capital payment for purposes of determining such billing amount when Additions and Betterments are made pursuant to Sections 5.5 or 5.6. Additional capital payments by the Cotenants for such Additions and Betterments to the Associated Facilities shall be added to the Cotenants' respective capital payments made to date. Both in the case of transfers and of Additions and Betterments, the new total of the capital payments shall be

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

used as the basis for the calculation of the Cotenants' billing amount for the annual charge pursuant to Appendix C.

### 5.8 Effective Date of Ownership Interest for Billing Purposes

Each Cotenant's share of the Costs under Sections 5.1 through 5.4 shall be in accordance with its Ownership Interest in percent as of May 1 of the year for which such Costs are billed. No retroactive adjustments will be made to reflect any adjustment in Ownership Interests after May 1 of such year.

## 6.0 Billing and Payment

### 6.1 Billing for the Associated Facilities

PGandE shall bill the other Cotenants an annual charge for the Associated Facilities pursuant to Section 5.4. The first annual charge billing for each Cotenant other than PGandE shall be prorated by days for the period between and including November 4, 1984 and December 31, 1984. Each calendar year thereafter, PGandE shall bill the other Cotenants for the annual charge on or before the first calendar day in June, in conjunction with the billing under Section 6.2, and the Cotenants shall pay the annual charge on or before the first calendar day in August. The bill for the last annual charge shall similarly be prorated for the portion of the calendar year during which the Agreement is in effect.

### 6.2 Billing for Operation and Maintenance of the Line Circuits

The Cotenants agree that, for the purposes of this Agreement, $343,000 represents, as of 1984, the basis for the calculation of annual payments (the "BCAP") to PGandE by the Cotenants other than PGandE for operation and maintenance of the Line Circuits. The Cotenants other than PGandE shall each make an annual payment to PGandE that is calculated by multiplying the BCAP by such Cotenant's Ownership Interest in percent. The Cotenants agree that the BCAP for years after 1984 shall be adjusted each year in accordance with the following published indices (or appropriate successor indices):

Index 1 =     Average Hourly Earnings for Production or Non-Supervisory Workers in Electric, Gas and Sanitary Services (SIC 49) in the State of California during the appropriate year, as most recently published (Bureau of Labor Statistics, U.S. Department of Labor, "Employment, Hours and Earnings -- States and Areas").

Index 2 =     Average value of the Producer Price Index for Industrial Commodities during the appropriate year, as most recently published (Bureau of Labor Statistics, U.S. Department of Labor, "Producer Prices and Price Indexes").

The basis for calculation of annual payments for operation and maintenance ("BCAP") shall be adjusted each year as follows:

$$BCAP_n = BCAP_{n-1} \left( 0.7 \; \frac{Index\ 1_{n-1}}{Index\ 1_{n-2}} + 0.3 \; \frac{Index\ 2_{n-1}}{Index\ 2_{n-2}} \right)$$

where n =     year in which such payment occurs, and

$BCAP_n$ =     $343,000  when n = 1984

PGandE does not warrant or represent that the BCAP, as escalated, will represent its actual Costs in any given year or years. The BCAP represents a settlement between the Cotenants, does not reflect PGandE current ratemaking policy, and shall not establish a precedent with respect to any future agreement. The BCAP shall be adjusted by PGandE after consultation with the other Cotenants to reflect PGandE's estimate of any additional or reduced Costs of maintenance and operation resulting from Additions and Betterments to the Line Circuits. Disputes with respect to such additional or reduced billing amounts resulting from any Additions and Betterments shall be resolved as provided in Articles 13.0 and 15.0. The first annual billing for each Cotenant other than PGandE shall be prorated by days for the period between and including November 4, 1984 and December 31, 1984. Each calendar year thereafter, PGandE shall bill the other Cotenants

annually on or before the first calendar day in June and the Cotenants shall pay the annual charge on or before the first calendar day in August. The bill for the last annual charge shall similarly be prorated for the portion of the calendar year during which this Agreement is in effect.

### 6.3    Billing for Capital Replacements, Additions and Betterments and Other Expenses Under This Agreement

PGandE shall bill the other Cotenants for the estimated Costs associated with a given project for Capital Replacements on the New Line, and for Additions and Betterments to the New Line or Associated Facilities pursuant to Sections 5.5 and 5.6. PGandE shall also bill the other Cotenants for other expenses payable pursuant to Article 7.0 of this Agreement. Such bills shall be based on PGandE's best estimate of the Costs of performing the work. The bill shall include a credit for the appropriate share of the estimated net salvage value of any retirements of any facilities replaced.

6.3.1    For projects with a duration of less than one month, the Cotenants shall make one lump-sum payment. PGandE shall provide an estimate of Costs to the other Cotenants at least thirty (30) calendar days before such payment is due.

6.3.2    For projects with a duration of longer than one month, PGandE shall prepare a monthly payment schedule that reflects the estimated construction or other Costs as they are expected to be incurred. At least sixty (60) calendar days before the date on which the Cotenants other than PGandE shall be required to commence payment of any Costs, PGandE shall submit to the other Cotenants: (i) its estimate of all Costs which it will incur; and (ii) a payment schedule indicating the expected monthly Costs included in the estimate and each Cotenant's monthly share of such Costs.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

6.3.3   PGandE shall bill the other Cotenants for the Costs of any Capital Replacements to the New Line required as a result of an Operating Emergency. If such Capital Replacements are to be commenced later than two (2) calendar months after the date the Operating Emergency began, the provisions of Section 6.3.2 shall apply. Otherwise, PGandE shall bill the other Cotenants for their proportional share of such Costs as soon as practicable after the work is completed.

6.3.4   The Cotenants shall pay each amount specified in the estimate described in Section 6.3.2 on or before the first of the month for which PGandE expects to pay each such amount.

6.3.5   Within a reasonable time after the completion of the project, PGandE shall provide the other Cotenants with the final accounting of the Costs of the project. As part of such final accounting, PGandE shall adjust the Cost estimate provided in Section 6.3.1 or 6.3.2 as necessary to reflect any difference between the estimated and actual Costs of such project. PGandE shall submit a final statement to the other Cotenants specifying the payment or refund required. All adjustments shall accrue an interest charge at the rate specified in Section 6.6 from the date the final estimated payment was due to the date the adjustment is paid.

6.3.6   PGandE may agree to conduct studies under Article 7.0 on a flat-fee basis.

**6.4   Payment of Bills**

Except as otherwise provided in this Agreement, all bills shall be due and payable within thirty (30) calendar days of receipt of the bill. If any Cotenant believes there are any errors in the determination of such Costs, such Cotenant shall pay the full amount of such Costs without offset or reduction. Bills that are not paid in full by the due date shall thereafter accrue an interest charge from the date the payment is due until the date such payment is received. The interest charge shall be compounded monthly based on the unpaid amount of the bill at an interest rate

equal to the applicable first of the month reference rate as specified in Section 6.6 plus two (2) percentage points per annum, or the maximum rate permitted by law, whichever is less.

**6.5     Right to Review**

Up to one calendar year after receipt of the final accounting under Section 6.3.5, the Cotenants shall have the right pursuant to Section 16.10 to review the supporting documents upon which the Costs billed under Section 6.3 are determined. Disputes under Articles 5.0 and 6.0 will be resolved pursuant to Articles 13.0 and 15.0.

**6.6     Applicable Interest Rate**

Except as provided in Section 6.4, interest will be compounded monthly, at a rate equal to the applicable first of the month reference rate, or any successor comparable interest rate, of the San Francisco main branch of the Bank of America, N.T. and S.A., San Francisco, California, or the maximum rate allowed by law, whichever is less.

**6.7     Billing Disputes**

Regardless of the existence of any dispute, all payments will be made in full pursuant to Section 6.4, until the dispute is resolved.

6.7.1    If any portion of a bill is disputed, the Cotenant billed shall advise PGandE, in writing, of the amount and basis for the contested portion. PGandE and the Cotenant(s) disputing the bill shall meet within thirty (30) calendar days to review the supporting documents and attempt to agree on the adjustments that may be appropriate. If agreement cannot be reached, the dispute shall be resolved pursuant to the procedures set forth in Article 13.0.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

6.7.2   If the disputed amount is determined under this Agreement not to have been payable, it shall be refunded with interest, compounded monthly, at the reference rate described in Section 6.6 corresponding to the period from the date the payment was due to the date the refund is made, or at the maximum rate permitted by law during such period, whichever is less; provided, however, that if the disputed amount is determined through arbitration to have been billed by PGandE in bad faith, it shall be refunded with interest, compounded monthly, at such reference rate plus two (2) percentage points per annum, or the maximum rate permitted by law, whichever is less.

## 7.0   Right of Use

### 7.1   Commencement of Firm Transmission Entitlement

Each Cotenant shall have, subject to curtailments as provided in Article 8.0, a Firm Transmission Entitlement equal to its Ownership Interest in megawatts. Transmission service rights and limitations over PGandE's system beyond Lakeville or Fulton substations, if any, shall be as provided in separate Interconnection Agreements between PGandE and the other Cotenants.

### 7.2   Rights Associated With Firm Transmission Entitlement

The Firm Transmission Entitlement, or portion thereof, of a Cotenant other than PGandE shall exist only on the specific Line Circuit or Other Circuit to which such Firm Transmission Entitlement, or portion thereof, is designated. PGandE's Firm Transmission Entitlement shall consist of that undesignated portion of the capacity rating of the New Line and Line Circuits, as adjusted under Section 4.7, and the portion of the capacity rating of the New Line and Line Circuits designated under Section 10.4. Cotenants shall be entitled to use their Firm Transmission Entitlement, or portion thereof, on such Line Circuits or Other Circuits. As of the effective date of this Agreement with respect to such Cotenant and except as provided in Section 7.4, no Cotenant shall be required to pay a

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

transmission charge for the use of its Firm Transmission Entitlement over the
Line Circuits or Other Circuits up to its Ownership Interest in megawatts. No
Firm Transmission Entitlement is transferrable in whole or in part to any other
Line Circuit or Other Circuit unless a redesignation is made to that Other Circuit
or Line Circuit, as provided in this Article 7.0. Any transmission by a Cotenant
other than PGandE of energy or capacity over the Line Circuits or Other Circuits
that is not using an equivalent portion of such Cotenant's Firm Transmission
Entitlement shall be provided under the terms of such Cotenant's Interconnection
Agreement or any other applicable transmission agreement. No Cotenant shall
have the right to use the unused Firm Transmission Entitlement of another
Cotenant without such other Cotenant's prior authorization through its operating
center or otherwise.

### 7.3     Exchange of Firm Transmission Entitlement

To the extent the Firm Transmission Entitlement of a Cotenant other than PGandE
is designated to an Other Circuit or is designated from an Other Circuit to a Line
Circuit, that Cotenant and PGandE shall, for operating purposes, exchange,
without charge to each other, equivalent amounts of transmission capacity
between such Other Circuit and the Line Circuits. That Cotenant shall continue to
be financially responsible for its share of Costs of the Line Circuits and
Associated Facilities, pursuant to Article 5.0, in accordance with its Ownership
Interest. Except as provided in Section 7.4, the Cotenant shall not be required to
pay any of the Costs of the Other Circuits. Except for exchanges pursuant to this
Section 7.3, any transaction involving the transmission capacity so exchanged
shall be subject to Section 2.5.

### 7.4     Adverse Rate Treatment

Sections 7.2 and 7.3 assume that PGandE will not receive any adverse rate
treatment as a result of such arrangements. If adverse treatment does occur,
PGandE may charge any disallowance or other resulting cost or loss to other

individual Cotenants (i) as appropriate to any decision imposing such treatment or (ii) in proportion to their Ownership Interests as appropriate. PGandE may thereafter charge compensatory rates taking into consideration such other Cotenants' payments for operation and maintenance. Any Cotenant charged a transmission charge under this Section 7.4 with respect to the right to use its Firm Transmission Entitlement over an Other Circuit as provided in Section 7.3 may charge PGandE an equal transmission charge for PGandE's right to use any transmission capacity on the New Line exchanged therefor.

**7.5      Designation of Firm Transmission Entitlement By Cotenants Other Than PGandE**

The Cotenants other than PGandE agree that the Firm Transmission Entitlement of CDWR, NCPA, and Santa Clara shall be designated initially to the following Line Circuits or Other Circuits: CDWR -- 55 MW on Other Circuit No. 2 and 110 MW on Line Circuit No. 2; NCPA -- 49.9 MW on Line Circuit No. 2; and Santa Clara -- 60.1 MW on Line Circuit No. 2. Such a Cotenant may make a request to redesignate all or a part of its Firm Transmission Entitlement from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit, or to designate any increased Firm Transmission Entitlement it may receive as a result of any Addition and Betterment under Section 10.2, by submitting its request in writing to PGandE. Such Cotenant may make such a redesignation or designation only to a given Line Circuit or Other Circuit which has, connected to it, a powerplant(s) owned or operated by such Cotenant; except that to the extent that such Cotenant's total Firm Transmission Entitlement exceeds the total generating capacity which such Cotenant has connected to the Line Circuits and Other Circuits, such Cotenant may make such a redesignation or designation to a given Line Circuit or Other Circuit in excess of the generating capacity of such powerplant(s) or to a Line Circuit or Other Circuit which does not have, connected to it, a powerplant owned or operated by such Cotenant. Such Cotenant shall not be entitled to any such redesignation until at least thirty (30) calendar days after such request. No Cotenant's Firm Transmission Entitlement may be redesignated in whole or in

part at its request more often than twice during each calendar year unless mutually agreed by PGandE and the requesting Cotenant.

**7.6    Reimbursement Of Costs For Redesignations Initiated By Cotenants Other Than PGandE**

If PGandE determines that it is necessary to study the possible effects of a redesignation described in Section 7.5, the requesting Cotenant shall pay all Costs of such study pursuant to Section 6.3 and PGandE's decision on the redesignation shall be delayed until the study is completed. PGandE shall complete such study within 180 calendar days of its receipt of the written redesignation request. If PGandE determines that the redesignation should be approved, the requesting Cotenant shall pay the other Cotenants' resulting Costs, including but not limited to any Costs of additional reconnections to balance line loadings, but excluding the Cost of lost generation. If the Firm Transmission Entitlement is redesignated from a Line Circuit to an Other Circuit, then the provisions of Section 7.3 shall apply. If a reconnection is required as a result of the redesignation, the provisions of Section 7.8 shall apply. Billing and payment of any Costs shall be pursuant to Section 6.3.

**7.7    Right to Provide Transmission Service**

A Cotenant may use its Firm Transmission Entitlement to provide transmission service for others as provided in Sections 2.4 and 2.5, subject to the provisions of this Agreement.

**7.8    Reconnections and Redesignations Initiated By PGandE**

Except as provided in other agreements between a Cotenant and PGandE, PGandE, as operator, may change the point of connection of a Cotenant's powerplant and/or redesignate all or a part of a Cotenant's Firm Transmission Entitlement from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit in order best to provide for transmission of electric energy. PGandE shall have the right to redesignate all or a portion of the Firm Transmission

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

Entitlement of a Cotenant other than PGandE only when it determines that such action is required as a result of: (i) the proposed new interconnection of a powerplant or unit to a Line Circuit or Other Circuit; (ii) the derating or retiring of an existing powerplant or unit connected to a Line Circuit or Other Circuit; or (iii) a request by a Cotenant other than PGandE to reconnect or redesignate under Sections 7.5, 7.9 or 7.10.

7.8.1   PGandE shall notify the members of the Coordinating Committee of any proposed reconnections or redesignations in advance of their implementation; provided that in the event of a reconnection or redesignation required for repair, Operating Emergency, or other compelling operating purposes, PGandE shall (i) take whatever action it deems prudent and necessary, subject to the provisions of this Agreement and in accordance with Good Utility Practice, to preserve or maintain the safety, integrity and operability of the transmission system in the Service Area, and (ii) restore the system to its original configuration as soon as practicable after the occurrence that precipitated the need for the change has terminated.

7.8.2   PGandE agrees to reasonably minimize interference with transmission from other Cotenants' powerplants when reconnections are being made pursuant to Sections 7.8 and 7.9. Except during an Operating Emergency, PGandE shall coordinate line outages for reconnections with the other Cotenants and shall notify their operators regarding the specific lines involved and the times they must be cleared.

7.8.3   Except as provided in Sections 7.6, 7.8.5, and 7.11, PGandE shall pay the full Cost of any reconnection under this Section 7.8, excluding the Cost of lost generation.

7.8.4   PGandE shall notify the members of the Coordinating Committee when it determines that the powerplant of a Cotenant other than PGandE is being

**PACIFIC GAS AND ELECTRIC COMPANY**
Rate Schedule FERC No. 139

studied for reconnection or redesignation and solicit their comments regarding the assumptions and parameters of its study of such reconnection or redesignation. Whenever PGandE proposes to reconnect any other Cotenant's powerplant or to redesignate such Cotenant's Firm Transmission Entitlement, it must submit its justification for the proposed reconnection/redesignation plan, together with a cost estimate for the proposed work, to the members of the Coordinating Committee for review. The study submitted shall contain: a drawing showing the proposed reconnections including the specific circuits involved; a physical description of the reconnections; and a tentative schedule for the reconnections. The Committee shall have thirty (30) calendar days to review the study.

7.8.4.1    When practicable; PGandE's submittal to the Coordinating Committee shall be made before such reconnection/redesignation plan is submitted to any regulatory body for approval and with sufficient time allowed for the additional review provided in Section 7.8.5.

7.8.4.2    The Coordinating Committee shall only have the right to review such justification with respect to a proposed plan in which a powerplant operated by a Cotenant other than PGandE will be reconnected, or the Firm Transmission Entitlement of a Cotenant other than PGandE will be redesignated, from one Line Circuit or Other Circuit to another Line Circuit or Other Circuit. The Cotenants, whether through the Coordinating Committee or otherwise, shall only have the right to review any such studies that involve reconnecting powerplants or redesignating the Firm Transmission Entitlement of a Cotenant other than PGandE.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

7.8.4.3     In the event that PGandE proposes to reconnect a powerplant that is connected to a Line Circuit or Other Circuit to which all or a portion of the Firm Transmission Entitlement of a Cotenant other than PGandE is designated, PGandE shall redesignate the associated Firm Transmission Entitlement when making such reconnection, provided that, if PGandE determines that sufficient firm transmission capability is available, the Cotenant to be reconnected shall have the right to redesignate the associated Firm Transmission Entitlement to a given Line Circuit or Other Circuit that has, connected to it, a powerplant owned or operated by such Cotenant, up to the generating capacity of such powerplant.

7.8.4.4     In the event that PGandE proposes to redesignate all or a portion of the Firm Transmission Entitlement of a Cotenant other than PGandE without making a concurrent reconnection, PGandE may redesignate only up to the amount of the generating capacity of any powerplant owned or operated by such Cotenant that is connected to the Line Circuit or Other Circuit to which such redesignation is made. PGandE may redesignate such Firm Transmission Entitlement in excess of the generating capacity of such powerplant(s) only to the extent that such Cotenant's total Firm Transmission Entitlement exceeds the total generating capacity which such Cotenant has connected to the Line Circuits or Other Circuits.

7.8.4.5     If a Cotenant's Firm Transmission Entitlement is redesignated to an Other Circuit under this Section 7.8.4, the provisions of Section 7.3 shall apply.

7.8.5    When a Cotenant other than PGandE has a powerplant proposed for reconnection, or Firm Transmission Entitlement proposed for redesignation, under Section 7.8.4, any Cotenant(s) affected by such a reconnection or redesignation shall have the right to object to the reconnection/redesignation plan. Such Cotenant(s) must formally present its (or their) objections in writing to the members of the Coordinating Committee before the end of the 30-day period specified in Section 7.8.4.

7.8.5.1    The objecting Cotenant(s) shall have ninety (90) calendar days from the date it (they) submits its (their) notice of objection to the Coordinating Committee to jointly prepare a study that supports one alternative plan which includes, but is not limited to, the allocation among the objecting Cotenant(s) of the increased or decreased Costs described in Section 7.8.5.4. Such an alternative plan may be a recommendation not to take any action.

7.8.5.2    The study for an alternative reconnection plan shall contain: a drawing showing the proposed reconnections under the alternative plan, including the specific circuits involved; a physical description of the reconnections; a tentative schedule for the reconnections; and a cost estimate for the work. The study for an alternative redesignation plan shall contain a detailed description of the proposed redesignation and a tentative schedule therefor. The study shall also contain a comparison of the alternative plan with the plan proposed by PGandE. The objecting Cotenant(s) may, at its (their) option, request that PGandE conduct the study of the alternative plan at the expense of the objecting Cotenant(s).

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

7.8.5.3     The objecting Cotenant(s) shall present its (their) single study to the Coordinating Committee before the end of the 90-day period, or the PGandE reconnection/redesignation plan shall be implemented. When the study is presented, the Cotenants shall then have up to thirty (30) calendar days to review the alternative plan and the cost estimate.

7.8.5.4     If PGandE determines that the alternative proposed by the Cotenant(s) is feasible and consistent with Good Utility Practice, PGandE shall implement that alternative, subject to the conditions set forth in Section 7.8.6. The Cotenant(s) offering the alternative plan shall pay any net increase in Costs resulting from the fact that the alternative is implemented rather than PGandE's plan proposed under Section 7.8.4. Such increased Costs shall include, but not be limited to, the Costs of transmission planning or engineering studies conducted by PGandE to support the alternative before regulatory bodies, any Costs of additional reconnections to balance line loadings that would not have been required under PGandE's plan, and any increased transmission line losses suffered by PGandE. Such increased Costs shall exclude, however, the Cost of lost generation. The Cotenants offering the alternative plan shall reach agreement with PGandE on any sharing of Costs and the billing and payment provisions no later than thirty (30) calendar days before payment is required to commence pursuant to Section 6.3. If any portion of a Cotenant's Firm Transmission Entitlement is redesignated to an Other Circuit under this Section 7.8.5, the provisions of Section 7.3 shall apply to such portion. If PGandE determines that the alternative plan is infeasible, PGandE

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

shall, after presenting supporting material to the
Coordinating Committee, have the right to implement its
plan proposed under Section 7.8.4.

7.8.6    The provisions of Section 7.8.5 shall not apply if the California Energy
Commission, the California Public Utilities Commission, or any successor
agency requires, through order, condition or other official action, that
PGandE implement a specific reconnection plan.

7.8.7    Nothing in this Agreement shall compel any Cotenant to connect any of its
facilities to any circuit that is not operated by PGandE.

**7.9    Reconnections Initiated by Cotenants Other Than PGandE Involving
Circuits Operated By PGandE**

Except as provided in Section 7.12, if a Cotenant other than PGandE wishes to
change its point of connection for one of its powerplants from one Line Circuit or
Other Circuit to another Line Circuit or Other Circuit, and PGandE and the
Coordinating Committee determine that the change should be made, the Cotenant
may request that PGandE do so at the Cotenant's expense subject to Section 7.11.
Such Cotenant shall give adequate advance written notice to allow PGandE to
study the effects of such proposed reconnection. PGandE shall complete such
study within 180 calendar days after its receipt of written notice.

**7.10   Reconnections Initiated by Cotenants Other Than PGandE Involving
Circuits Not Operated By PGandE**

Nothing in this Agreement will prevent a Cotenant from changing the point of
connection of one of its powerplants to a circuit not operated by PGandE or from
such a circuit to a Line Circuit or Other Circuit to the extent otherwise permitted
by this Agreement. If a Cotenant requests a reconnection to a Line Circuit or
Other Circuit, such reconnection cannot be made until PGandE, as operator,
approves it. Such Cotenant shall give adequate advance written notice to allow
PGandE to study the effects of such proposed reconnection. PGandE shall

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

complete such study within 180 calendar days after its receipt of written notice.
The Cotenant shall bear its own Costs of reconnecting subject to Section 7.11.

**7.11    Reimbursement Of Costs For Reconnections Initiated By Cotenants Other Than PGandE**

Except as provided in Section 7.12, the Cotenant making a request to change its point of connection shall pay the other Cotenants' resulting Costs, including but not limited to pertinent transmission planning or engineering studies required by PGandE, as operator, and any Costs of additional reconnections pursuant to Section 7.8 to balance line loadings, but excluding the Cost of lost generation. Such Cotenant shall continue to be responsible for its respective share of the Costs of the Line Circuits as provided in this Agreement, until such time as it is relieved of such obligation as provided in this Agreement, or as otherwise agreed among the Cotenants. If the point of connection is changed from a Line Circuit to an Other Circuit, then the provisions of Section 7.3 shall apply. Billing and payment of any Costs shall be pursuant to Section 6.3.

**7.12    Temporary Reconnections**

In the event that (i) a Cotenant is not using its full amount of Firm Transmission Entitlement designated to a Line Circuit or Other Circuit ("Second Circuit"), (ii) such Second Circuit is not curtailed pursuant to Article 8.0 of this Agreement, and (iii) the Cotenant owns or operates powerplants connected to a different Line Circuit or Other Circuit ("Initial Circuit"), such Cotenant may, to the extent consistent with Good Utility Practice, temporarily reconnect its powerplant from the Initial Circuit to the Second Circuit by notifying PGandE's operating center by telephone or otherwise; provided Sections 7.12.1 through 7.12.6 are each satisfied. Such Cotenant shall as soon as practicable, terminate any temporary reconnection and reconnect to the Initial Circuit at such time as it coordinates necessary switching with PGandE's operating center and when the occurrence that precipitated the need for the temporary reconnection has terminated, but in no event later than 210 calendar days after the temporary reconnection takes place,

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

unless such period is extended by the mutual agreement of such Cotenant and PGandE. Nothing in this Section 7.12 shall relieve such Cotenant of any obligation to pay PGandE applicable charges for transmission service under any agreement with PGandE.

7.12.1    PGandE shall have sixty (60) days to review the design of the equipment required for such temporary reconnection, including but not limited to any switches and protection equipment, before it is installed and shall have the right to test and retest such equipment in advance of any such temporary reconnection to ensure the continued reliability and operability of PGandE's system. When PGandE reviews such design or tests such equipment, and if it determines that the temporary reconnection and the implementation of the temporary reconnection are consistent with Good Utility Practice and are as reliable as the connection that existed before the temporary reconnection is made, it shall approve such design or determine that such equipment has passed such test. If PGandE determines that such equipment or design is inadequate, the proposed temporary reconnection may not take place unless and until changes are made in such equipment or design by such Cotenant and PGandE determines that such changed equipment or design will prevent the proposed temporary reconnection from violating the standards contained in the previous sentence. PGandE makes no representation or warranty that any such equipment or design may be adequate. PGandE shall give adequate advance notice before testing such equipment and shall conduct the test at a mutually agreeable time.

7.12.2    Such Cotenant shall only use transmission capacity on the Second Circuit up to the sum of its Firm Transmission Entitlement designated to the Second Circuit and any transmission service

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

purchased from a Cotenant other than PGandE on the Second Circuit. PGandE's operating center, at its sole discretion, may approve the use by such Cotenant of additional transmission capacity from PGandE's Firm Transmission Entitlement on the Second Circuit, provided that such Cotenant shall reduce or cease, immediately upon PGandE's request through its operating center, such use of additional transmission capacity.

7.12.3    The temporary reconnection shall not impair the ability of any other Cotenant to use its Ownership Interest as provided in this Agreement.

7.12.4    No later than one (1) hour before the temporary reconnection is planned to take place, such Cotenant shall contact PGandE's operating center and obtain authorization to proceed on schedule. The temporary reconnection shall proceed consistent with Good Utility Practice and in accordance with the schedule authorized by PGandE's operating center.

7.12.5    Such Cotenant shall inform by telephone or otherwise the members of the Coordinating Committee of the temporary reconnection by the end of the next business day following PGandE's approval of the temporary reconnection.

7.12.6    The Cotenant making a request for a temporary reconnection or for PGandE's design approval or testing of any equipment under Section 7.12.1 shall pay the other Cotenants' resulting Costs, including but not limited to the Costs of pertinent engineering or planning studies conducted by PGandE to study the reconnection equipment, the Costs of any additional equipment required on PGandE's system or the system of another Cotenant and the Cost

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

of lost generation. Billing and payment of any Costs shall be pursuant to Section 6.3.

**7.13    Interconnections With the Line Circuits**

Additional 230-kV collector and tap lines may be constructed by the Cotenants and interconnected with the Line Circuits after this Agreement becomes effective. In the event of such an interconnection with the New Line by a Cotenant other than PGandE, Sections 7.13.1 through 7.13.4 shall apply. Interconnections by Cotenants other than PGandE with any Other Circuit or any portion of the Line Circuits other than the New Line shall be handled in accordance with such Cotenant's respective Interconnection Agreement.

7.13.1    If a Cotenant other than PGandE constructs a new 230-kV collector or tap line, such Cotenant must obtain approval by PGandE, as operator, before interconnecting with the New Line. Such Cotenant shall give PGandE adequate advance written notice of such proposed interconnection with the New Line. The advance notice shall provide adequate lead time necessary to accomplish the interconnection, including but not limited to, such time as may be necessary for: conducting studies and preparing the engineering design; review by regulatory agencies; obtaining required approvals, permits and licenses; construction; and establishing any contractual arrangements between the Cotenants and third parties that may be necessary.

7.13.2    Any Cotenant that proposes such construction shall notify the other Cotenants of its plans.

7.13.3    Facilities or control equipment at the proposed interconnection point shall be provided, operated, and maintained in a manner to ensure the safe and reliable operation of the New Line and in accordance with Good Utility Practice.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

7.13.4    The Cotenant requesting the interconnection shall be responsible for PGandE's Costs of providing the required facilities, including but not limited to transmission planning studies or engineering designs that must be completed before PGandE can grant approval. Billing and payment of any Costs shall be pursuant to Section 6.3.

**7.14    Transmission Losses**

Transmission losses over the New Line, Line Circuits or Other Circuits shall be governed by each Cotenant's respective Interconnection Agreement with PGandE.

**8.0    Curtailments**

**8.1    Curtailment Before Completion of Lakeville-Sobrante 230-kV Line**

A Cotenant's right to use its Firm Transmission Entitlement is subject to curtailment in accordance with Good Utility Practice. Prior to the completion and full operation of the Lakeville-Sobrante 230-kV Line, the use by any Cotenant other than PGandE of its Firm Transmission Entitlement shall be curtailable as provided in such Cotenant's Interconnection Agreement with PGandE. PGandE shall use its best efforts to complete the Lakeville-Sobrante 230-kV Line on or before November 30, 1985.

**8.2    Outage of a Line Circuit or Other Circuit**

After the completion and full operation of the Lakeville-Sobrante 230-kV Line, in the event of an outage or curtailment of the capability of a Line Circuit or Other Circuit to transmit energy, Sections 8.2.1 through 8.2.3 shall apply. For purposes of this Section 8.2, all of the transmission capacity of the Line Circuits and Other Circuits, except any Firm Transmission Entitlement of a Cotenant other than PGandE, shall be deemed to be the designated Firm Transmission Entitlement of PGandE.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

8.2.1   PGandE shall take any action pursuant to Section 9.3 as it deems appropriate.

8.2.2   Except as provided in Article 7.0, the Cotenant's rights to the use of its Firm Transmission Entitlement shall not be transferable to another Line Circuit or Other Circuit. The right to use Firm Transmission Entitlement designated to the curtailed Line Circuit or Other Circuit shall only be available to another unit on the curtailed Line Circuit or Other Circuit as provided in Section 8.2.3.2.

8.2.3   The following steps shall be taken until such time that the curtailed Line Circuit or Other Circuit can be restored to full capacity:

8.2.3.1.   Transmission by a Cotenant over the curtailed circuit in excess of its Firm Transmission Entitlement designated to such curtailed circuit, including such Cotenant's non-firm transmission, shall be curtailed first;

8.2.3.2.   Thereafter, each Cotenant's right to use the Firm Transmission Entitlement (FTE) designated to the curtailed Line Circuit or Other Circuit shall be allocated on a pro-rata basis as determined by the following equation except as provided in Section 8.2.3.3:

$$A = B/C \times D$$

where,

A=   A Cotenant's pro-rata allocation in megawatts of the then available transmission capacity on the curtailed Line Circuit or Other Circuit;

B =   A Cotenant's FTE in megawatts designated to the curtailed Line Circuit or other Circuit;

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

C =    Sum total of each of the Cotenants' FTEs in megawatts designated to the curtailed Line Circuit or Other Circuit;

D =    Then available transmission capacity in megawatts on the curtailed Line Circuit or Other Circuit.

8.2.3.3    If after applying Section 8.2.3.2, one or more Cotenants have scheduled less than their pro-rata firm allocation (variable "A") as determined in Section 8.2.3.2, this excess allocation will be, subject to Section 8.2.3.4, reallocated among each of the remaining Cotenants which are able to use it by the following process:

$$E = A + (B/F \text{ x } G)$$

where,

E =    A remaining Cotenant's pro-rata allocation in megawatts of the then available transmission capacity on the curtailed Line Circuit or Other Circuit including the excess allocation not used by one or more of the other Cotenants.

A and B are as defined in Section 8.2.3.2.

F =    Sum total of each of the remaining Cotenants' FTEs in megawatts designated to the curtailed Line Circuit or Other Circuit.

G =    Excess allocation in megawatts to be reallocated to the remaining Cotenants on the curtailed Line Circuit or Other Circuit.

The above process for determining variable "E" will be repeated as necessary in order to maximize the use of the transmission capacity of the curtailed Line Circuit or Other Circuit, provided that no Cotenant shall have the right to exceed its FTE as assigned to the curtailed Line Circuit or Other Circuit.

8.2.3.4    If a Cotenant was not scheduled to use its full pro-rata firm allocation (variable "A") as determined in Section 8.2.3.2 when the curtailment period began, such Cotenant may schedule generation with PGandE to use up to its full allocation on the curtailed Line Circuit or Other Circuit in accordance with the scheduling procedures under its respective Interconnection Agreement.

## 8.3    System Curtailment

The curtailment priorities established in the respective Interconnection Agreements between PGandE and the other Cotenants shall continue to apply in the event of an outage or curtailment of the capability to transmit energy on PGandE's system other than the Line Circuits, Other Circuits and Associated Facilities.

## 9.0    PGandE as Operator

## 9.1    Rights and Duties of PGandE As Operator

PGandE, as operator, shall acquire Land Rights, construct the New Line and Associated Facilities, and manage, coordinate, operate, maintain, repair, make replacements, inspect and have access to the Line Circuits, and shall have all

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

rights to do so, except as expressly provided in this Agreement. All work shall be done in conformance with Good Utility Practice. PGandE does not assume any fiduciary duties in its performance of this Agreement, and such performance shall not be judged by fiduciary standards.

### 9.2    Rights of Cotenants Other Than PGandE

The Cotenants other than PGandE waive all right to enter or to have anyone else enter or possess the New Line on their behalf, unless PGandE materially defaults in its obligations pursuant to Section 13.3, and agree that they have no such rights with respect to the Associated Facilities, the Line Circuits other than the New Line, and the Other Circuits; provided, that the Cotenants other than PGandE, or such Cotenants' designated representative, shall have the right to inspect the New Line at reasonable times (i) upon prior notice to PGandE of no less than two (2) business days, (ii) when accompanied by a representative of PGandE, and (iii) only for the purpose of exercising their rights under this Agreement.

### 9.3    Operating Emergencies

PGandE shall take whatever action it determines necessary to eliminate any Operating Emergency. PGandE shall notify the other Cotenants' operating centers as soon as the extent of the trouble is ascertained and inform them regarding the Operating Emergency and the corrective actions taken and yet to be taken.

## 10.0    Additions and Betterments

### 10.1    PGandE's Right to Make Additions and Betterments to the New Line

PGandE shall have the exclusive right to make at any time Additions and Betterments to the New Line and/or Associated Facilities in order to increase the capacity of the New Line or Associated Facilities, but such Additions and Betterments shall not interfere, other than temporarily, with the rights of the other Cotenants to the use of their Firm Transmission Entitlement.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**10.2   Right of Cotenants Other Than PGandE to Participate**

PGandE shall offer in writing to the other Cotenants the right to participate in the first 300 MW of transmission capacity resulting from any such Addition and Betterment in a combined amount up to 35 percent of such Addition and Betterment, up to a maximum combined amount of 105 MW. Said Cotenants shall have the right to participate in such combined amount according to their respective Ownership Interests in percent in the New Line, or in such other proportion agreed to by said Cotenants, on the same terms and conditions set forth in this Agreement, and shall share the Costs of the Additions and Betterments in proportion to their participation throughout the period of construction. The Cotenants shall have ninety (90) calendar days from the date of PGandE's written offer in which to exercise this right and to notify PGandE in writing of their decision. In the event any of said Cotenants do not wish to exercise this right, the remaining Cotenants, other than PGandE, may share the capacity subject to such unexercised right in proportion to their Ownership Interests or as otherwise agreed among them. The Cotenants exercising this right to participate shall notify PGandE as to the amount of additional capacity each Cotenant elects to participate in. PGandE shall bill the participating Cotenants for their proportional share of Costs in accordance with Section 5.6.

**10.3   Additions and Betterments of More Than 300 MW**

Any Additions and Betterments constructed by PGandE resulting in increased capacity of the New Line or Associated Facilities over and above 300 MW shall be, at PGandE's option, for its sole use and benefit. None of the rights of refusal under Section 2.5 shall apply to transfers by PGandE of any transmission capacity created in excess of the initial 300 MW of Additions and Betterments to the New Line.

**10.4    Right of First Refusal Regarding Additions and Betterments of More Than 300 MW**

Should the completion of any Addition and Betterment under this Article 10.0 result in an increase of more than 300 MW in the capacity rating of the New Line, as such rating may be revised pursuant to Section 4.7, PGandE shall, upon completion of such Additions and Betterments, designate its Ownership Interest in megawatts which is not subject to the right of first refusal under Section 2.5 to specific Line Circuits or Other Circuits subject to redesignation by PGandE no more than twice during each calendar year. PGandE shall notify the members of the Coordinating Committee thirty (30) days in advance of any such designation or redesignation.

**11.0    Reconstruction**

**11.1    Conditions for Automatic Reconstruction**

During the term of this Agreement, the Cotenants agree to make the Capital Replacements necessary to reconstruct and repair the New Line and Associated Facilities and to share the Cost of such reconstruction or repair in proportion to their Ownership Interests (i) if with respect to an event occurring during the first ten (10) years after the effective date of this Agreement, the Cost of such reconstruction or repair does not exceed 60 percent of the then-current replacement Cost of the New Line and Associated Facilities, or (ii) if, with respect to an event occurring after such tenth year, the Cost of such reconstruction or repair does not exceed a certain percentage (variable "P") of the then-current replacement Cost of the New Line and Associated Facilities. Variable "P" shall be calculated as follows:

$$P = 60 - [(3)(y-10)]$$

where  P =    percent of the then-current replacement Cost of the New Line and Associated Facilities;

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

> y =    the number of full years that have elapsed from the effective date
> of this Agreement to the date the damage took place.

The rights and obligations provided in this Section 11.1 shall be specifically enforceable.

**11.2    Conditions for Decision Before Reconstruction**

If the Cost of reconstruction or repair would exceed the applicable limit specified in Section 11.1, then each Cotenant shall decide whether or not it desires to repair or reconstruct the damaged facility. Any Cotenants desiring to repair or reconstruct such facilities, shall have the right to do so. In the event that fewer than all Cotenants desire to repair or reconstruct the destroyed or damaged facilities, then any Cotenant that does not agree to repair or reconstruct such facilities shall sell its interest in the facilities to the Cotenant or Cotenants that desire to reconstruct such facilities. The purchasing Cotenants shall purchase such interest in proportion to their Ownership Interest for a price equal to the net salvage value of the selling Cotenant's Ownership Interest. The rights and obligations provided in this Section 11.2 shall be specifically enforceable.

**11.3    PGandE as the Selling Cotenant**

In the event that PGandE is a selling Cotenant under Section 11.2, it shall permit the reconstructed New Line to be interconnected with its system for the remaining term of this Agreement and the purchasing Cotenant(s) shall assume PGandE's rights and obligations as operator under this Agreement. It is the responsibility of the purchasing Cotenant(s) to obtain any necessary Land Rights. PGandE shall cause the transfer of all Land Rights, licenses, permits, or other rights of approval necessary to use and operate the New Line, other than Land Rights associated with any facility other than the New Line, to the purchasing Cotenant(s) to the extent it has a right to do so.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**11.4    Destruction of an Other Circuit**

In the event of the destruction of an Other Circuit to which all or a part of the Firm Transmission Entitlement of a Cotenant other than PGandE is designated, and PGandE determines not to reconstruct, the Cotenants other than PGandE, shall have the right to have PGandE, at PGandE's expense, reconnect under Section 7.8 such Cotenant's powerplant(s) that is(are) connected to such Other Circuit and meet(s) one of the following characteristics:

(1)    if the combined generating capacity of such powerplant(s) is less than or equal to such Firm Transmission Entitlement, PGandE shall reconnect all such powerplant(s); or

(2)    if such Cotenant has only one such powerplant and if the generating capacity of such powerplant is greater than such Firm Transmission Entitlement, PGandE shall reconnect such powerplant; or

(3)    if such Cotenant has more than one such powerplant, the combined generating capacity of which is greater than such Firm Transmission Entitlement, PGandE shall reconnect only that(those) powerplant(s) that has(have) a combined generating capacity which exceeds the Firm Transmission Entitlement designated to such Other Circuit by the least amount.

PGandE shall reconnect such qualifying powerplant(s) to one of the Line Circuits or an Other Circuit that is owned and operated by PGandE and still in operation. If the generating capacity of the reconnected powerplant(s) exceeds such Firm Transmission Entitlement, then such Cotenant shall only operate the reconnected powerplant(s) in excess of such Firm Transmission Entitlement to the extent it has an enforceable right to transmit such excess. PGandE shall also redesignate under Section 7.8 such Firm Transmission Entitlement to the Line Circuit or Other Circuit to which such powerplant(s) has(have) been reconnected pursuant to this Section 11.4.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

## 12.0    Liability and Indemnity

### 12.1    Liability

Except (i) as otherwise provided in this Article 12.0, (ii) for any loss, damage, claim, cost, charge, or expense resulting from Willful Action, as defined in Section 12.6, and (iii) with respect to any contractual dispute subject to Article 13.0, no Cotenant, its directors or other governing body, officers or employees shall be liable to any other Cotenant for any loss, damage, claim, cost, charge, or expense of any kind or nature incurred by such other Cotenant (including direct, indirect or consequential loss, damage, claim, cost, charge, or expense, and whether or not resulting from the negligence of a Cotenant, its directors or other governing body, officers, employees, or any person or entity whose negligence would be imputed to such Cotenant) from the performance or nonperformance of the obligations of a Cotenant under this Agreement (including the interruption or curtailment of any transmission of electric energy). Except (i) as otherwise provided in this Article 12.0, (ii) for any loss, damage, claim, cost, charge, or expense resulting from Willful Action, as defined in Section 12.6, and (iii) with respect to any contractual dispute subject to Article 13.0, each Cotenant releases the other Cotenants, their directors, or other governing body, officers, and employees from any such liability. With respect to any contractual dispute subject to Article 13.0, no Cotenant, its directors, or other governing body, officers or employees shall be liable to any other Cotenant for any indirect or consequential loss, damage, claim, cost, charge, or expense.

### 12.2    Responsibility of Cotenants Regarding Damage From Electrical Disturbances

Each Cotenant shall be responsible for protecting its facilities from possible damage by reason of electrical disturbances or faults caused by the operation, faulty operation, or nonoperation of any other Cotenant's facilities located in Lake, Napa or Sonoma counties, and, except for damage resulting from Willful Action, such other Cotenant shall not be liable for any such damages so caused.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**12.3     Indemnification From Claims By Persons or Entities**

Except as provided in Section 12.4 or 12.5, each Cotenant shall be responsible for, and shall indemnify, to the extent permitted by law, the other Cotenants, their directors or other governing body, officers and employees from and against any liability for death, injury, loss or damage suffered or incurred by a person or entity (other than a Cotenant, its directors or other governing body, officers and employees) to the extent such death, injury, loss or damage was proximately caused by such indemnifying Cotenant in the performance or non-performance of its obligations under this Agreement.

**12.4     Indemnification From Claims By Electric Customers**

Except for liability resulting from Willful Action of another Cotenant, a Cotenant whose electric customer shall make a claim or bring an action for any death, injury, loss or damage arising out of electric service to such customer, which death, injury, loss or damage is caused by a Cotenant's performance or nonperformance of its obligations under this Agreement, shall indemnify and hold harmless, to the full extent permitted by law, the other Cotenants, their directors or other governing body, officers and employees from and against any liability for such death, injury, loss or damage. For the purpose of this Article 12.0, the term "electric customer" shall mean an electric customer, except an electric utility system to whom power is delivered for resale. "Electric customer" shall also mean a member, subsidiary or substantial owner of a Cotenant.

**12.5     Indemnification From Claims By Employees**

Except for liability resulting from Willful Action of another Cotenant, a Cotenant whose employee shall make a claim or bring an action against another Cotenant for any death, injury, loss or damage arising out of a Cotenant's performance or nonperformance of its obligations under this Agreement, shall indemnify and hold harmless, to the full extent permitted by law, the other Cotenants, their directors, officers and employees for such death, injury, loss or damage.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

**12.6    Willful Action**

For the purpose of this Article 12.0, Willful Action shall be defined as:

12.6.1      Action taken or not taken by a Cotenant at the direction of its directors or other governing body, officers or employees having management or administrative responsibility affecting its performance under this Agreement, which action is knowingly or intentionally taken or failed to be taken with conscious indifference to the consequences thereof or with intent that injury or damage would result or would probably result therefrom.

12.6.2      Action taken or not taken by a Cotenant at the direction of its directors or other governing body, officers or employees having management or administrative responsibility affecting its performance under this Agreement, which action has been determined by final arbitration award or final judgment or judicial decree to be a material default under this Agreement and which occurs or continues beyond the time specified in such arbitration award or judicial decree for curing such default or, if no time to cure is specified therein, occurs or continues thereafter beyond a reasonable time to cure such default.

12.6.3      Action taken or not taken by a Cotenant at the direction of its directors or other governing body, officers or employees having management or administrative responsibility affecting its performance under this Agreement, which action is knowingly or intentionally taken or failed to be taken with the knowledge that such action taken or failed to be taken is a material default under this Agreement.

12.6.4      Willful Action does not include any act or failure to act which is merely involuntary, accidental or negligent.

PACIFIC GAS AND ELECTRIC COMPANY
Rate Schedule FERC No. 139

12.6.5    The phrase "employees having management or administrative responsibility," as used in this Article 12.0, means the employees of a Cotenant who are responsible for one or more of the executive functions of planning, organizing, coordinating, directing, controlling and supervising such Cotenant's performance under this Agreement with responsibility for results.

## 13.0    Dispute Resolution and Default

### 13.1    Submittal of Dispute to Coordinating Committee

Except as provided in Section 15.3, prior to submitting such dispute to arbitration, any billing dispute which has not been resolved pursuant to the provisions of Section 6.7.1 and any other dispute arising under this Agreement must be submitted to the Coordinating Committee by a Cotenant involved in the dispute, through written notice stating the nature of the dispute. The Coordinating Committee shall attempt to settle all disputes submitted to it as soon as possible, but in no case later than forty-five (45) calendar days after the dispute is submitted, unless an extension of time is agreed to by the Cotenants involved in the dispute. Such Cotenants shall prepare and submit offers of settlement for consideration by the Coordinating Committee. No Cotenant shall commence arbitration of any dispute until after such 45-day period (as such period may be extended) has expired. If the Coordinating Committee fails to resolve any billing dispute under Section 6.7 within such 45-day period (as such period may be extended), and if the disputing Cotenant has not commenced arbitration under Section 13.2 within thirty (30) calendar days after the end of such period, the disputing Cotenant shall be deemed to have waived all claims with respect to such billing dispute.

### 13.2    Arbitration

Disputes arising under this Agreement that have not been resolved under Sections 13.1 or 15.2.3 shall be settled through binding arbitration as provided in this