# EXHIBIT 4

Case: 19-30088    Doc# 11889-6    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 1 of 22

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

| | | | |
|---|---|---|---|
| Pacific Gas & Electric Company | ) | Docket No. | ER19-2496-000 |

LIMITED MOTION TO INTERVENE AND PROTEST OF
THE DEPARTMENT OF WATER RESOURCES
OF THE STATE OF CALIFORNIA

Pursuant to Rules 211, 212, and 214 of the Rules of Practice and Procedure of the Federal Energy Regulatory Commission ("FERC" or "Commission"), 18 C.F.R. § 385.211, 385.212, and 385.214 (2019), the California Department of Water Resources ("DWR") submits this motion to intervene for the limited purpose of contesting the impermissible filing of an unexecuted amendment and any assertion of Commission jurisdiction over extra-contractual claims for a termination payment now being advanced by Pacific Gas & Electric Company ("PG&E").[1]  The terms of the existing Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230 kilovolts ("kV") Transmission Line[2] provide a party the express right to terminate its participation in the 1984 Agreement, with one year's notice.[3]  By a letter dated July 30, 2018, DWR exercised its termination rights in strict accordance with these terms.[4]

---

[1] Filing of Amendment of the Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230-kV Transmission Line, PG&E Rate Schedule FERC No. 139 (July 30, 2019) ("2019 Amendment Filing").

[2] *See* Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230-KV Transmission Line, Docket No. ER92-133 (Oct 25, 1991) ("1984 Agreement").  The original agreement was executed in 1984 by PG&E, Northern California Power Agency ("NCPA"), and the City of Santa Clara, California ("Santa Clara").  DWR joined the Agreement as a cotenant in 1991, which precipitated the filing of the presently-governing Cotenancy Agreement in Docket No. ER92-133-000.

[3] 1984 Agreement, Section 14.3.

DWR's termination became effective August 1, 2019. Therefore, DWR has no further legal ownership interests in, or obligations from, the continuing operation of the Castle Rock Junction-Lakeville Line. As Section 14.6 of the 1984 Agreement provides, a terminating cotenant "shall have no more interest in or liability under this Agreement, except with respect to financial obligations incurred prior to its effective date of Termination."[5]

Despite the clear exercise of its termination right by DWR, on July 30, 2019, PG&E submitted in the above-captioned proceeding an unexecuted, and impermissible, amendment to the 1984 Agreement that it is attempting to force DWR to sign.[6] In its transmittal letter, PG&E asserts that it is "rejecting" DWR's termination.[7] The terms of its unexecuted amendment attempt to impose a "termination payment" obligation upon DWR in an agreement that is, for DWR, already terminated.[8] This is an improper attempt to deny a termination by contractual right and to strong-arm an exit payment. Both actions are in plain contravention of the 1984 Agreement. Moreover, to the extent that PG&E has any dispute with DWR's termination, its claims are purely a matter for an appropriate court of jurisdiction. Therefore, DWR respectively requests that the Commission explicitly reject the unexecuted 2019 Amendment and, with

---

[4]    *See*, Exhibit A, Notice of Termination for the Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230 kV Line (Letter of Michael A. Ramsey, Chief, Transmission Planning Branch, State Water Project Power and Risk Office, DWR to Messrs. Greg Lemler and Dave Gabbard, PG&E, Tony Zimmer, NCPA, and John Roukema, City of Santa Clara (July 30, 2018)).

[5]    1984 Agreement, Section 14.6.

[6]    2019 Amendment Filing, Amendment No. 1 to the Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230-kV Transmission Line Among Pacific Gas and Electric Company, State of California Department of Water Resources Northern California Power Agency City of Santa Clara ("2019 Amendment No. 1").

[7]    2019 Amendment Filing at 2.

[8]    2019 Amendment No. 1, Section 5.1 (amending Section 14.3 of the 1984 Agreement to add a termination payment obligation as a condition for DWR's termination of its cotenancy interests).

respect to any remaining dispute regarding DWR's termination of its interests in the 1984 Agreement, find that such matters are properly addressed in another forum.[9]

## I.    MOTION TO INTERVENE FOR LIMITED PURPOSE

DWR is an agency of the State of California, headquartered in Sacramento.  It is responsible for monitoring, conserving, and developing California's water resources, providing public safety, and preventing property damage related to water resources.  A primary responsibility of DWR is the construction, operation, and maintenance of the California State Water Project ("SWP").  The SWP is the largest state-owned, multipurpose water project in the United States.  The SWP consists of an integrated network of aqueducts, pumping facilities, reservoirs, and hydroelectric facilities that deliver an average of 3.3 million acre-feet of water per year to 29 public-agency water contractors throughout California.  Approximately 40% of the deliveries are used to irrigate approximately 750,000 acres of farmland and the remainder serves the water needs of almost 27 million Californians.  DWR is not a public utility under the Federal Power Act ("FPA"), its ownership or operation of transmission (in full or via cotenancy) is not subject to the Commission's jurisdiction, and it has been distinguished from other market participants due to its special responsibilities and functions.[10]

The 1984 Agreement is a facilities and use agreement among FERC-jurisdictional and non-jurisdictional entities.[11]  While PG&E's ownership of a portion of the transmission line

---

[9]    Should the Commission determine that it will not outright reject the 2019 Amendment Filing and retain jurisdiction over the merits in this proceeding, DWR reserves all rights with respect to further action in this docket, including the filing of additional pleadings as necessary and warranted to protest the substance of the proposed 2019 Amendment.

[10]    *Cal. Dep't of Water Res. v. FERC*, 341 F.3d 906, 910 (9th Cir. 2003), *reh'g en banc denied*, 361 F.3d 517 (9th Cir. 2004).

[11]    PG&E first filed an unexecuted Cotenancy Agreement with FERC in 1986.  Pacific Gas & Elec. Co., Docket No. ER86-364-000, Initial Rate Schedule No. 97 (filed Mar. 19, 1986).  When DWR

Case: 19-30088    Doc# 11889-6    Filed: 02/01/22    Entered: 02/01/22 17:00:49    Page 4 of 22

under the 1984 Agreement is related to its FERC-jurisdictional activities, DWR's participation in the Agreement and, now, the termination of its participation are not FERC-jurisdictional activities.[12]

DWR provided notice of termination in accordance with Section 14.3 of the 1984 Agreement on July 30, 2018.[13] DWR's notice of termination became effective on August 1, 2019. PG&E's filing attempts to unilaterally "reject" DWR's termination of its interests in the 1984 Agreement and to impose upon DWR an extra-contractual termination payment obligation. DWR seeks to intervene in this proceeding for the limited purpose of clarifying its status under the 1984 Agreement and to contest PG&E's impermissible amendment and otherwise improper attempt to invoke Commission jurisdiction over a purely contractual dispute. DWR has a unique and substantial interest in this proceeding, which cannot be adequately represented by any other

---

became a Cotenant and party to the Agreement in 1991, PG&E filed the amended Cotenancy Agreement to include DWR as a signatory and update the charges under the Agreement to reflect the additional Cotenant. Pacific Gas & Elec. Co., Docket No. ER92-133-000, Change to Rate Schedule FERC No. 97 (filed Mar. 19, 1986). This filing was accepted by unpublished letter order and redesignated as Rate Schedule FERC No. 139. Pacific Gas & Elec. Co., Docket No. ER92-133-000, unpub. letter order (May 12, 1992). In that filing, PG&E explained that the Cotenancy Agreement constituted a rate schedule detailing charges for owning, operating, maintaining and replacing transmission facilities which had been constructed by PG&E. As a public utility under the FPA, PG&E is required to file with FERC agreements that relate to the provision of jurisdictional transmission service. *See* 16 U.S.C. § 824d (2012). This filing requirement applies to the Cotenancy Agreement because PG&E's share of costs are integrated into rates charged by PG&E to customers for FERC-jurisdictional transmission service. To the extent that PG&E's ownership shares under the Cotenancy Agreement change over time, PG&E is obligated to inform the FERC of such changes.

[12] Within Section 16.4.2 of the 1984 Agreement, all parties recognized the limited scope of FERC-jurisdictional activities covered by the agreement terms. In particular, the cotenants agreed that the intent was for only Sections 5.4 and 5.7, and Appendix C to cover PG&E's FERC-jurisdictional activities. The matters addressed in this proceeding are solely relating to DWR's termination of its interest under Section 14.3 and have no relation to PG&E's provision of jurisdictional transmission service.

[13] *See* Exhibit A.

4

party. DWR, therefore, is an interested party in this proceeding whose intervention and participation is in the public interest.

## II.    COMMUNICATIONS

All communications, correspondence, and documents related to this proceeding should be directed to the following persons:

| | |
|---|---|
| *Joseph B. Nelson | *Robin Harrington |
| Suzanne Keppeler | California Department of Water Resources |
| Van Ness Feldman, LLP | 1416 9th Street |
| 1050 Thomas Jefferson Street, N.W | 11th Floor |
| Seventh Floor | Sacramento, CA  95814 |
| Washington, D.C. 20007 | Telephone: (916) 653-5577 |
| Telephone: (202) 298-1800 | robin.harrington@water.ca.gov |
| jbn@vnf.com | |
| skeppeler@vnf.com | |

*Designated for service of process

## III.    PROTEST

In the 2019 Amendment Filing, PG&E states that it is proposing to revise the 1984 Agreement to "reflect the status" of PG&E, Northern California Power Agency ("NCPA"), and City of Santa Clara, California ("Santa Clara") with the departure of DWR.[14] This disingenuous description fails to capture the nature of the material changes that PG&E proposes to the 1984 Agreement.  In fact, PG&E proposes to amend and ***add terms*** that would apply to DWR ***after*** the effective date of DWR's termination.  Acceptance of PG&E's 21019 Amendment Filing would nullify the existing termination provision by subjecting DWR, more than a full year after it provided its termination notice in accordance with the 1984 Agreement, to a new requirement for a lump sum payment for decommissioning costs of the facilities as a condition of accepting the

---

[14]    2019 Amendment Filing at 2.

5

termination.[15]  Moreover, the termination payment requirement is specific only to DWR and does not condition the future withdrawal or termination by any other cotenant in the same manner nor does it contemplate the addition of other cotenants.  PG&E requests that this provision take effect one day prior to the effective date of DWR's termination stating that the Commissions granting of waivers and allowing the 2019 to become effective the day before DWR's termination date would not harm or inconvenience any other customer.  DWR does not agree with the unexecuted filing with the Commission, and DWR strongly objects to the unilateral modification of termination rights and payment obligations under Section 14.3 being advanced in the 2019 Amendment.  These amendments would both harm and inconvenience DWR.

There is no legal basis for PG&E's attempt to unilaterally impose a termination payment. Moreover, should PG&E wish to pursue the termination payment claims it now advances, such matters should be presented to a court of competent jurisdiction—not the Commission.

**A.  DWR's Interests in the 1984 Agreement Terminated as of August 1, 2019.**

The existing 1984 Agreement clearly addresses termination of a cotenant's interests and the consequent succession of ownership interests.  First, under Section 14.3, cotenants are permitted to terminate their participation in the 1984 Agreement on one year's advance written notice to the other cotenants.[16]  Nothing within Section 14.3 or other portions of the 1984 Agreement contemplate, or permit, remaining cotenants to reject a requested withdrawal or

---

[15]     2019 Amendment No. 1, Section 5.1 (detailing the proposed amendment to Section 14.3).

[16]     1984 Agreement, Section 14.3.  This termination right could only be exercised *after* January 1, 2015.

termination.[17] Second, Section 14.6 provides for the transfer of the terminating cotenant's interests to the remaining parties and provides that the terminating cotenant "shall have no more interest in or liability under this Agreement, except with respect to financial obligations incurred prior to its effective date of Termination."[18] Thus, the remaining cotenants continue their ownership of the facilities, and receive the benefits under the 1984 Agreement, after the withdrawal of a cotenant. Based on the notice of termination sent by DWR on July 30, 2018, DWR's termination notice is already effective. DWR does not retain any ownership rights, or benefits, under the 1984 Agreement. DWR has no role or responsibility in any future decisions made by the remaining cotenants regarding operation of the facilities, much less a future decision on removal or replacement of transmission facilities. Correspondingly, per the terms of the 1984 Agreement, DWR will not be responsible for continuing obligations—including any obligations that may arise by virtue of a future decision by succeeding cotenants to decommission the facility.

There is no ambiguity within the 1984 Agreement as to the termination right, notice period, and process under Section 14.3 (which PG&E is now attempting to amend). Likewise, ownership succession upon a cotenant's termination is clearly addressed in Section 14.6. The

---

[17] PG&E claims that the Cotenants "acknowledge but have rejected CDWR's requested withdrawal pending receipt by PG&E, NCPA and Santa Clara of CDWR's payment of its proportional share of reasonable estimated future removal costs." 2019 Amendment Filing at 2. Likely recognizing the lack of any such authority, PG&E also includes, within 2019 Amendment No. 1, a similar expression that PG&E and the remaining cotenants ". . . reject CDWR's requested withdrawal from the Agreement pending receipt of CDWR's payment of its proportional share of the reasonable estimated removal costs to the remaining Cotenants prior to withdrawing from the Agreement. 2019 Amendment No. 1, Section 3.1 and Section 5.1. There is no provision in the 1984 Agreement that permits the Cotenants to reject a termination notice and the after-the-fact attempt to modify the agreement to recognize such an attempted rejection is equally improper.

[18] 1984 Agreement, Section 14.6. *See also*, 1984 Agreement, Section 2.1 ("unless and until its Ownership Interest is terminated as provided in this Agreement each Cotenant shall have such rights to the benefit of the Land Rights and such rights to use the Associated Facilities as may be necessary to make use of its Firm Transmission Entitlement, pursuant to this Agreement.").

1984 Agreement provisions implied by PG&E's filing do not exist. There is no right to "deny" a termination that has been properly noticed. There is no stated termination or withdrawal payment obligation. And, there is no requirement for the prior approval from the Commission of a non-jurisdictional cotenant's termination of its participation. DWR's termination of its ownership interests has been exercised in accordance with the terms of the 1984 Agreement. PG&E's attempt to adopt an amendment in order to disregard DWR's lawful termination of its contractual rights should be summarily rejected.

**B. The Castle Rock Junction-Lakeville Line Is Not Being Decommissioned.**

The 1984 Agreement separately and specifically addresses the process for determining whether to decommission of any of the transmission facilities. Specifically, at any time, the cotenants may jointly decide to terminate and decommission the transmission line.[19] The responsibility to authorize decommissioning is solely held by parties to the 1984 Agreement at the time of decommissioning review and decision.[20] Upon a decision to decommission, each cotenant is liable for financial obligations incurred by PG&E for the removal of the transmission line.[21]

Here, there was no decision by the cotenants to decommission the Castle Rock Junction-Lakeville Line prior to DWR's effective termination of its interest in the Agreement. To the contrary, PG&E (and the remaining cotenants) clearly plan to continue operating the transmission facilities. Unlike DWR, PG&E and the remaining cotenants will continue to receive benefits from the continued operation of these facilities, but have not assigned any value

---

[19]     1984 Agreement, Section 14.5.

[20]     *Id.* ("If the *remaining* Cotenants determine not to continue operating the New Line, this Agreement shall terminate on the date specified in the notice.") (emphasis added).

[21]     *Id.*

to recognize this consideration. Thus, PG&E has no legal basis to either conditionally reject DWR's termination of its cotenancy or to demand a lump-sum payment for a decommissioning that is not occurring.

> **C.** **The PG&E Filing Is an Impermissible Amendment to the Governing Terms of a Party's Previously Noticed Termination in Violation of Commission Precedent.**

PG&E's last-minute attempt to file an unexecuted amendment to the 1984 Agreement and impose a termination charge upon DWR violates Commission precedent. In particular, the Commission has routinely held that a utility may not impose a new termination charge or obligation in a contract after a party provides notice of termination.

For example, in *South Carolina Gas & Electric Company*, a utility attempted to revise a filed agreement to impose a new termination charge on a customer who had provided notice of termination.[22] The Commission summarily rejected the amendment and proposed termination charge. Specifically, the Commission found that, "consistent with Commission precedent," the utility could not impose the new termination charge because the customer "has already given notice under the pre-existing provision."[23]

Similarly, in *Public Service Company of New Hampshire*, a customer provided notice of termination under a filed agreement that authorized the customer to terminate the agreement upon two years' notice.[24] The utility submitted a petition for declaratory order asking the Commission to revise the termination provision and find that the two years' notice provision was unjust and unreasonable. The Commission rejected the petition, finding that a utility cannot

---

[22] 70 FERC ¶ 61,008, at pp. 61,019-20 (1995) ("*SCG&E*").

[23] *Id.* at p. 61,020 n.13 (citing *Pub. Serv. Co. of N.H.*, 31 FERC ¶ 61,267, at p. 61,547, *reh'g denied*, 32 FERC ¶ 61,251, at pp. 61,597-98, and *Philadelphia Elec. Co.*, 65 FERC ¶ 61,303, at pp. 62,397-98 (1993)).

[24] 31 FERC ¶ 61,267, at p. 61,547, *reh'g denied*, 32 FERC ¶ 61,251 (1985) ("*PSNH*").

revise termination rights after a customer provides notice of termination. Further, the Commission noted that, while it had the authority to revise filed agreements that it finds to be unjust and unreasonable, and to revise a termination provision *before* the customer provided notice of termination, "[i]t is another situation altogether, however, when a customer properly gives notice under a filed contract or service agreement . . . [a]t that point, the supplying utility may not begin imposing new conditions for the service it has already agreed to provide under the filed terms."[25] Simply, the Commission recognized that a party to an agreement has the "right to certainty regarding its obligations and options."[26]

Commission precedent, and the principles of fairness underlying that precedent, clearly preclude PG&E's unilateral filing of an unexecuted amendment seeking to "reject" and further condition DWR's termination of its interest in the 1984 Agreement. In accordance with Section 14.3 of the 1984 Agreement, DWR gave a proper, 12-month notice of termination of its interests and carried out its obligations under the agreement for the entirety of its notice period. After notice has been properly given, it is wholly improper for PG&E to file, at any time, much less one day prior to the effective date of termination, an unexecuted, unilateral amendment of the 1984 Agreement's termination provision that rejects DWR's termination unless a lump sum payment for hypothetical decommissioning costs is made. Having lawfully initiated and completed its termination notice period, DWR's termination cannot be usurped by this impermissible amendment.

---

[25] *PSNH*, 32 FERC ¶ 61,251 at p. 61,598.

[26] *Id.*

**D.** **The Appropriate Venue, if Any, for Interpreting the Terms of DWR's Termination Under the 1984 Agreement Is a Court of Proper Jurisdiction.**

**1.** **The Provisions for Termination of an Interest in the 1984 Agreement Are Clear and Require no Interpretation.**

In its filing, PG&E claims that it "interprets the Agreement to require CDWR, as a Cotenant that desires to depart, to make a financial contribution to the remaining Cotenants that reflects its proportional share of the reasonably anticipated removal costs of the New Line."[27] PG&E has not cited, and cannot cite, any provision of the 1984 Agreement that supports that interpretation.[28] As already addressed in Section III.A. of this protest, the provisions governing termination by a cotenant, successions of interest, and decommissioning of the facilities are clear on the face of the 1984 Agreement. No interpretation is necessary.[29] Rather, the language of the relevant provisions in the 1984 Agreement makes clear that the right to terminate under Section 14.3 is not conditioned upon a payment of potential, future removal costs.

**2.** **If the Commission Finds Ambiguity in These Terms, the Commission Should Not Exercise Primary Jurisdiction over the Dispute.**

Because the 1984 Agreement is clear on its face, no review or interpretation is necessary to permit DWR's withdrawal. However, should any question arise with respect to the proper interpretation and application of the governing termination provisions of the 1984 Agreement,

---

[27] 2019 Amendment Filing at 2.

[28] *See Bank of the West v. Superior Court*, 833 P.2d 545, 552 (Cal. 1992) ("The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. If contractual language is clear and explicit, it governs") (quotations omitted).

[29] *See, e.g.*, *Duquesne Light Co.*, 138 FERC ¶ 61,111, at P 25 (2012) (citing *Transmission Agency of N. Cal. v. FERC*, 628 F.3d 538, 547 (D.C. Cir. 2010) (when a contract is unambiguous, that language controls and the court "must give effect to the unambiguously expressed intent of the parties"); *Pac. Gas & Elec. Co.*, 107 FERC ¶ 61,154, at P 19, *reh'g denied*, 108 FERC ¶ 61,304 (2004) (stating "when the language of a contract is explicit and clear . . . then the court may ascertain the intent from its written terms and not go further") (citation omitted); *Mid-Continent Area Power Pool*, 92 FERC ¶ 61,229, at p. 61,755 (2000) (stating when a contract's terms are clear, it is to be construed according to its literal terms and extrinsic evidence cannot be used to alter or contradict the contract's express terms)).

the Commission should disclaim jurisdiction over such matters and reject the proposed revision to Section 14.3 in the unexecuted 2019 Amendment.

In cases of interpretation of Commission-jurisdictional contracts, the Commission has concurrent jurisdiction with the courts. The question of whether to exercise primary jurisdiction is a matter solely within the Commission's discretion. In determining whether to assert primary jurisdiction over disputes concerning jurisdictional contracts, the Commission considers three factors:

(1)  whether the Commission possesses some special expertise which makes the case peculiarly appropriate for the Commission decision;
(2)  whether there is a need for uniformity of interpretation of the type of question raised in the dispute; and
(3)  whether the case is important in relation to the regulatory responsibilities of the Commission[30] ("*Arkla* factors").

With respect to the first factor, the Commission generally is no more of an expert than a court in deciding non-technical contract questions. Interpretation of some types of contractual clauses may involve examination of technical issues which are within the Commission's special expertise. In cases where the outcome turns on interpretation of the parties' intentions and construction of the relevant clauses in the contract rather than any determination requiring the Commission's special expertise, FERC will decline to exercise its jurisdiction. The Commission has generally found that inquiring into the parties' intent and construing contract provisions is a matter of interpretation that is better left to a court. The Commission generally declines to exercise jurisdiction over disputes where the resolution turns on intent and does not involve technical, legal, or policy issues on which the Commission has expertise.[31] Further, because the

---

[30]    *Ark. La. Gas Co. v. Hall*, 7 FERC ¶ 61,175, at p. 61,322, *reh'g denied*, 8 FERC ¶ 61,031 (1979) ("*Arkla*").

[31]    *Doswell L.P. v. Va. Elec. & Power Co.*, 62 FERC ¶ 61,149, at p. 62,069 (1993) ("declining to exercise its concurrent jurisdiction to resolve the parties' dispute" and "leaving the task of

Commission does not have special expertise in the area of determining damages for claimed breaches of contract, it has generally left this issue to be decided in court.[32]

As applied to the 1984 Agreement, the termination provisions in Section 14.3 do not address technical or rate-related matters that are within the Commission's specialized expertise. The matters at issue here hinge upon the interpretation of the cotenants' intentions and construction of the relevant termination clauses in the 1984 Agreement. The Commission generally will decline to exercise its jurisdiction over these types of matters because they are better left to a court of competent jurisdiction familiar with applicable contract law. Given the purpose and scope of the termination language in Section 14.3 of the 1984 Agreement, the first *Arkla* factor is not met.[33]

Under the second factor, the Commission will review whether its responsibilities require a uniform interpretation of the contractual language at issue. The Commission's review will determine whether the interpretation of the contractual provisions depends on the intentions of the parties to a particular contract, and if the outcome of a Commission determination on the contract at issue would set a general policy regarding the interpretation of all similar clauses in other Commission-jurisdictional agreements. If the dispute is limited to the contract at issue, and no general policy will be set, the Commission will find that the contractual dispute likely will have little impact beyond the parties involved and the particular issue presented.[34]

---

determining the parties' intent under the Agreements to a forum with expertise dealing with the issues at bar—*i.e.*, to a court of competent jurisdiction familiar with contract law issues") (citation omitted).

[32] *S. Md. Elec. Coop. v. J.P. Morgan Ventures Energy Corp.*, 155 FERC ¶ 61,164, at P 20 (2016); *Sw. Power Pool, Inc.*, 150 FERC ¶ 61,091, at P 8 (2015).

[33] *Arkla*, 7 FERC ¶ 61,175 at p. 61,322.

[34] *See, e.g.*, *PPL Elec. Utils. Corp.*, 92 FERC ¶ 61,057, at p. 61,147 (2000) (finding there "does not appear to be a need for uniformity of interpretation of the type of question raised in this dispute,

Case: 19-30088   Doc# 11889-6   Filed: 02/01/22   Entered: 02/01/22 17:00:49   Page 14 of 22

As applied to the 1984 Agreement, the dispute at issue here clearly is limited to the contract at issue, and no general Commission policy will be set. Because the contractual dispute will have little impact beyond the parties involved and the particular issue presented, the second *Arkla* factor is not met.

Finally, under the third factor, the Commission will review its regulatory responsibilities with respect to the issue in dispute. If, for example, the parties are seeking a determination that a rate or term in the contract is unjust and unreasonable under the FPA, the Commission's regulatory responsibilities will be triggered. However, if the parties simply seek an interpretation of the meaning of a particular provision in a contract that does not involve policy questions, but rather what the two contracting parties intended at the time that they drafted their contract, the Commission generally will not exercise primary jurisdiction to review the issue.

Again, as applied to the 1984 Agreement, any claim that Section 14.3 gives rise to withdrawal or termination payments from DWR does not trigger any of the Commission's regulatory responsibilities. In particular, termination of a non-jurisdictional utility's ownership interest does not implicate a rate, term, or condition of a jurisdictional service under the FPA. Rather, the basis of PG&E's claim is that a payment obligation is implied under the termination provisions of the 1984 Agreement. Such an argument does not involve policy matters that fall under the Commission's regulatory responsibilities. Thus, the third *Arkla* factor also is not met.

---

since an interpretation of this contract by the [court], even if different from other courts' interpretations of similar contracts, will not impinge significantly on the operations of public utilities across the nation; and we are not, in fact, at this point aware of any contract disputes raising similar issues within [the RTO]." (citation omitted). *See also, BG Energy Merchants, LLC v. Crosstex LIG*, 136 FERC ¶ 61,098, at P 37 (2011) (finding no need for uniformity of interpretation when there is nothing to indicate that the interpretation of certain service agreements will affect anyone other than the parties to the agreements)).

As noted above, where the contract interpretation issue involves only a narrow, fact-specific question, the Commission will leave to the courts any inquiry into the parties' intent in construing any related contract provisions.  It is only when the three *Arkla* factors are satisfied that the Commission will assert primary jurisdiction and adjudicate the contractual interpretation dispute.  PG&E's claims against DWR for termination fees or decommissioning compensation do not raise any of the Commission's interests articulated in the *Arkla* three-factor test.  The Commission should reject Amendment No. 1 as an improper attempt to insert the Commission into a contractual dispute in contravention of *Arkla* and should also disclaim jurisdiction over any claims that PG&E may attempt to bring against DWR under Section 14.3 of the 1984 Agreement.

## IV.    CONCLUSION

In its filing, PG&E seeks to amend existing contractual provisions under which DWR had already provided notice of termination—with that termination becoming effective one day after the PG&E's filing.  Through their unexecuted, unilateral amendment, PG&E attempts to impose additional obligations for DWR to contribute to future decommissioning cost.  PG&E also proposes to prevent DWR's notice of termination from becoming effective unless a lump-sum payment of removal costs is made.  Effectively, PG&E is attempting to extract a backdoor exit fee from DWR.  Such obligations were not contemplated or included in the version of the 1984 Agreement under which DWR provided its notice of termination one year ago.

For all of the reasons stated above, DWR requests that the Commission accept its motion to intervene on a limited basis, reject PG&E's filing as an impermissible amendment, and, with respect to any remaining dispute regarding DWR's termination of its interests in the 1984 Agreement, find that such matters are properly addressed in another forum.

Respectfully submitted,

_____/s/ Suzanne Keppeler_____

Joseph B. Nelson
Suzanne Keppeler
Van Ness Feldman, LLP
1050 Thomas Jefferson Street, N.W
Seventh Floor
Washington, D.C. 20007

Robin Harrington
California Department of Water Resources
1416 9th Street, 11th Floor
Sacramento, CA 95814

*Counsel to the California Department of
Water Resources*

Dated: August 20, 2019

16

# Exhibit A

Notice of Termination for the Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230 kV Line

Letter of Michael A. Ramsey, Chief, Transmission Planning Branch, State Water Project Power and Risk Office, DWR to Messrs. Greg Lemler and  Dave Gabbard, PG&E, Tony Zimmer, NCPA, and John Roukema, City of Santa Clara

July 30, 2018

STATE OF CALIFORNIA -- CALIFORNIA NATURAL RESOURCES AGENCY                              EDMUND G. BROWN JR., *Governor*

## DEPARTMENT OF WATER RESOURCES
1416 NINTH STREET, P.O. BOX 942836
SACRAMENTO, CA 94236-0001
(916) 653-5791



July 30, 2018

Mr. Greg Lemler
Vice President, Electric Transmission Operations
Pacific Gas and Electric Company
245 Market Street, Office 1436
San Francisco, CA 94105

Mr. Dave Gabbard
Senior Director, Transmission Asset Management
Pacific Gas and Electric Company
245 Market Street, Office 936
San Francisco, CA 94105

Mr. Tony Zimmer
Assistant General Manager, Power Management
Northern California Power Agency
651 Commerce Drive
Roseville, CA 95678

Mr. John Roukema
Chief Electric Utility Officer
City of Santa Clara dba Silicon Valley Power
1500 Warburton Avenue
Santa Clara, CA 95050

Re: Notice of Termination for the Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230 kV Line

Dear Mr. Lemler, Mr. Gabbard, Mr. Zimmer, and Mr. Roukema:

Pursuant to Section 14.3 of the Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230 kV Transmission Line (Agreement), dated June 1, 1984, between the California Department of Water Resources (CDWR), Pacific Gas and Electric Company, the Northern California Power Agency and the City of Santa Clara dba Silicon Valley Power (collectively the "Cotenants"), CDWR hereby gives one (1) year advance written notice to the other Cotenants to terminate CDWR's participation in the Agreement effective August 1, 2019.

The Agreement specifies how the termination of one Co-Tenant's rights is handled. Your input is necessary to determine the next steps for closing out DWR's interest in the Agreement.

Greg Lemler, Dave Gabbard, Tony Zimmer, John Roukema
July 30, 2018
Page 2

Please contact me if you would like to meet to discuss this at (916) 574-0313 or email me at Mike.Ramsey@water.ca.gov.

Sincerely,

Michael A. Ramsey
Chief, Transmission Planning Branch
State Water Project Power and Risk Office

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to Rule 2010 of the Rules of Practice and Procedure of the Federal Energy

Regulatory Commission, I hereby certify that I have this day caused the foregoing document to

be served upon each person designated on the official service lists compiled by the Secretary in

this proceeding.

Dated at Washington, D.C. this 20 day of August, 2019.

<u>*/s/ Marco Bracamonte*</u>

Marco A. Bracamonte
Paralegal
Van Ness Feldman, LLP
1050 Thomas Jefferson St., N.W.
Seventh Floor
Washington, D.C.  20007-3877
(202) 298-1800

Document Content(s)

DWR_Protest.PDF....................................................1-20