**Exhibit 2**

**Transmission Service Agreement**

CASTLE ROCK – LAKEVILLE 230 kV TRANSMISSION LINE

TRANSMISSION SERVICE AGREEMENT

BETWEEN

NORTHERN CALIFORNIA POWER AGENCY AND

THE CITY OF SANTA CLARA

AND

DEPARTMENT OF WATER RESOURCES

OF THE STATE OF CALIFORNIA

THIS CASTLE ROCK JUNCTION – LAKEVILLE 230 kV TRANSMISSION LINE TRANSMISSION SERVICE AGREEMENT, herein referred to as the "Agreement" is entered into by and between the Northern California Power Agency (NCPA) and The City of Santa Clara (Santa Clara), and the Department of Water Resources of the State of California (DWR), herein referred to as "Party", or collectively referred to as "Parties".

RECITALS: DWR, NCPA and Santa Clara are parties to the "Agreement for Sharing of Costs for Construction of Castle Rock Junction – Lakeville 230 kV Transmission Line and Associated Facilities" between Pacific Gas and Electric Company (PG&E), DWR, NCPA and Santa Clara, which became effective May 25, 1984.

NCPA and Santa Clara are parties to the "Agreement of Cotenancy in the Castle Rock Junction – Lakeville 230 kV Transmission Line

////

////

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

1    Among PG&E, DWR, NCPA and Santa Clara" (Cotenancy Agreement);

2    which with exception as to DWR, became effective March, 1985.

3

4    DWR intends to sign the Cotenancy Agreement and to cause the

5    Cotenancy Agreement to become effective as to DWR on or about

6    March 1, 1989.

7

8    As a Cotenant in the Castle Rock Junction – Lakeville 230 kV

9    Transmission Line, DWR will have an ownership interest in that

10   line in the amount of 165 MW.

11

12   Because of a reduction in DWR's transmission needs in the Geysers

13   area, DWR can make available 55 MW of transmission service for the

14   life of the facility, another 55 MW through December 31, 1995 and

15   18 MW for an undetermined period.

16

17   DWR is willing to sell to NCPA and Santa Clara and NCPA and Santa

18   Clara· are willing to buy transmission service on that line under

19   the following terms and conditions:

20

21   **1.0   DEFINITIONS:**

22        **1.1** The following terms when used in this Agreement with

23            initial capitalization whether in the singular or plural,

24            shall have the following meaning.

25            **1.1.1   Long Term Transmission Service:**   The service being

26                provided under Section 3.1.

27   ////

COURT PAPER
TATE OF CALIFORNIA
TD. 113 (REV. 8-72)

5 34769

1    **1.1.2  Short Term Transmission Service:**  The service being
2            provided under Section 3.2.

3    **1.1.3  Additional Transmission Service:**  The service being
4            provided under Section 3.3.

5  **1.2** The definitions in Section 1 of the Cotenancy Agreement
6        "Definitions" are incorporated herein by reference and the
7        following    are    provided    here    for    convenience.
8        Clarifications to references are included in parenthesis
9        within the definitions.

10   **1.2.1  Addition and Betterment:** A capital improvement, the
11           primary aim of which is to make the property
12           affected more useful, more efficient, of greater
13           durability or of greater capacity.

14   **1.2.2  Associated Facilities:**  Equipment and facilities
15           that are not a part of the New Line as such but
16           which are installed in order to integrate it with
17           PG&E's system.

18   **1.2.3  Capital Replacement:**  A retirement unit that is
19           substituted for another such retirement unit, as the
20           term "retirement unit" is defined in the Federal
21           Energy Regulatory Commission List of Retirement
22           Units for Use in Connection with Uniform System of
23           Accounts  Prescribed  for  Public  Utilities  and
24           Licenses, or its successor document.

25   **1.2.4  Cotenant:**  DWR, NCPA, PG&E, Santa Clara and any
26           transferee that becomes a Cotenant under Section
27   ////

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

1        2.4.3 ("Transfer of Ownership Interest" of the
2        Cotenancy Agreement).

3    **1.2.5**  **FERC:**  Federal Energy Regulatory Commission or its
4        successor agency.

5    **1.2.6**  **Firm Transmission Entitlement:** The firm entitlement
6        of a Cotenant to the use of transmission capacity
7        on a Line Circuit or Other Circuit or combination
8        thereof as provided in Section 7.1 ("Commencement
9        of Firm Transmission Entitlement" of the Cotenancy
10       Agreement).

11   **1.2.7**  **Good Utility Practice:**

12       **1.2.7.1** With respect to actions or inactions by any
13           Cotenant other than DWR, those practices,
14           methods and equipment, including levels of
15           reserves and provisions for contingencies, as
16           modified from time to time, that are at least
17           as good as those commonly used in the Service
18           Area to operate, reliably and safely, electric
19           power facilities to serve a utility's own
20           customers dependably and economically with due
21           regard for the conservation of natural resources
22           and the protection of the environment of the
23           Service Area; provided, that such practices,
24           methods and equipment are not unreasonably
25           restrictive.

26   ////
27   ////

)URT PAPER
ATE OF CALIFORNIA
D. 113 (REV. 8-72)

34769

1.2.7.2 With respect to action or inaction by DWR, the then current practices, methods and equipment generally used by electric utilities, which operate primarily in the State of California, for the purpose of providing economic, safe and reliable service to their own customers, with due regard for the conservation of natural resources and the protection of the environment.

1.2.8 **Interconnection Agreements:** The Comprehensive Agreement Between the California Department of Water Resources and PG&E executed April 22, 1982, the Interconnection Agreement between PG&E and the City of Santa Clara effective October 27, 1983, the Interconnection Agreement Between PG&E and the Northern California Power Agency, City of Alameda, City of Biggs, City of Gridley, City of Healdsburg, City of Lodi, City of Lompoc, City of Palo Alto, City of Roseville, City of Ukiah and Plumas Sierra Rural Electric Cooperative effective September 14, 1983 and any interconnection agreement between PG&E and another entity that becomes a Cotenant, as such agreements may be amended from time to time.

1.2.9 **Land Rights:** All rights, including easements, right-of-ways, or fee title in real property necessary for the construction, use, operation, and maintenance of the New Line, and the Associated Facilities.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

1       **1.2.10 Line Circuit**: Either Line Circuit No. 1 or Line
2               Circuit No. 2.

3       **1.2.11 Line Circuit No. 1**: The three-phase, 230-kV circuit
4               shown in Appendix A (of the Cotenancy Agreement)
5               that, as of the initial operation date of the New
6               Line, serves PG&E's Geysers Unit No. 14.

7       **1.2.12 Line Circuit No. 2**: The three-phase, 230-kV circuit
8               shown in Appendix A (of the Cotenancy Agreement)
9               that, as of the initial operation date of the New
10              Line, serves PG&E's Geysers Unit No. 9.

11      **1.2.13 New Line**: The double-circuit, 230-kV transmission
12              line now being constructed between PG&E's tower No.
13              0/1 at Castle Rock Junction in The Geysers area and
14              the circuit breaker structure at Lakeville
15              Substation shown in Appendix A (of the Cotenancy
16              Agreement). The facilities include tower No. 0/1
17              at Castle Rock Junction, the overhead line with
18              bundled 2300-kcm aluminum conductors, the associated
19              pipe-type underground circuits with 3500-kcm
20              aluminum cables, all conductors, towers, related
21              hardware and any Capital Replacements and Additions
22              and Betterments thereto, but exclude the circuit
23              breaker structure at Lakeville Substation and any
24              Land Rights. The New Line constitutes a portion of
25              the Line Circuits, as shown in Appendix A.

26      **1.2.14 Other Circuit**: Either other Circuit No. 1 or Other
27              Circuit No. 2, or any future 230-kV circuit other

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

85 34769

1      than the Line Circuits, which circuit is Operated
2      by PG&E in The Geysers area and interconnects with
3      PG&E's backbone transmission system.

4      **1.2.15 Ownership Interest**: A Cotenant's ownership share
5      in the New Line as provided and adjusted in Section
6      2.2 ("Initial Ownership Interests and Subsequent
7      Adjustments" of the Cotenancy Agreement).

8      **1.2.16 Service Area**: That area within the exterior
9      geographic boundaries of the several areas
10     electrically served at retail, now or in the future,
11     by PG&E, and those areas in northern and central
12     California adjacent thereto.

13  **2.0  TERM**: This Agreement shall become effective when signed by
14     all Parties and approved by the Department of General
15     Services of the State of California; provided, that this
16     Agreement shall not become effective until the effective
17     date of the Cotenancy Agreement as to DWR; and provided
18     further that this Agreement is no longer subject to the
19     *30 day period expired* "Right of Refusal" pursuant to Section 2.5 of the Cotenancy
20  *6/14/89* Agreement. The term of this Agreement shall be March 1,
21     1989 through December 31, 2014, or the date that both NCPA
22     and Santa Clara are no longer Cotenants pursuant to the
23     Cotenancy Agreement, whichever is later.

24  **3.0  SERVICE**: Commencing upon the effective date of this
25     Agreement, DWR shall provide and NCPA and Santa Clara shall
26     take Long Term Transmission Service, Short Term
27  ////

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

85 34789

1    Transmission Service and Additional Transmission Service as
2    follows:

3    3.1 **Long Term Transmission Service**:  DWR shall provide NCPA and
4        Santa Clara with the right to use 55 MW of DWR's Firm
5        Transmission Entitlement (FTE) in the Castle Rock Junction
6        -Lakeville 230 kV line for the term of this Agreement and
7        initially the 55 MW shall be allocated: NCPA 24 MW and
8        Santa Clara 31 MW.

9    3.2 **Short Term Transmission Service**:  In addition to the FTE
10       provided in Section 3.1 DWR shall provide NCPA and Santa
11       Clara and NCPA and Santa Clara shall pay for the right to
12       use 55 MW of FTE in the Castle Rock Junction -Lakeville
13       230 kV transmission line for the term of this Agreement
14       and initially the 55 MW shall be allocated: NCPA 48.3 MW
15       and Santa Clara 6.7 MW.   The Short Term Transmission
16       Service may be terminated or reduced upon three years
17       written notice by DWR, or by NCPA and Santa Clara acting
18       jointly, provided such termination or reduction shall not
19       be effective prior to January 1, 1996.  The term "acting
20       jointly" as used in this Agreement requires that NCPA and
21       Santa Clara agreed on the action.  Prior to termination by
22       DWR, the Parties will meet to discuss potential short term
23       benefits from alternative arrangements, although no Party.
24       shall be required to enter into any such arrangement.

25   3.3 **Additional Transmission Service**:  Additional FTE may be
26       made available to NCPA and Santa Clara as determined solely
27       by DWR on a year to year basis, as follows:

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

34769

3.3.1 Within 30 days of the effective date of this Agreement, DWR shall notify NCPA and Santa Clara in writing as to the availability of Additional Transmission Service for the remainder of calendar year 1989. NCPA and Santa Clara acting jointly shall notify DWR in writing within 30 days of receipt of DWR's above notice as to the amount of Additional Transmission Service they will purchase and for what period.

3.3.2 By September 1 of each year, beginning in the year 1989, DWR shall notify NCPA and Santa Clara as to the availability of Additional Transmission Service for the following calendar year. Service for such following calendar year shall be provided only if, within 30 days of receipt of such notification, NCPA and Santa Clara, acting jointly, notify DWR in writing as to the amount of Additional Transmission Service they will purchase, the allocation between NCPA and Santa Clara, and the time period for such service.

3.4 The allocations for the services stated above in Sections 3.1, 3.2 and 3.3 may be changed by NCPA and Santa Clara, acting jointly, by sending written notice, signed by persons authorized to make reallocations, 30 days prior to the date of the requested reallocation. Any reallocation shall be effective upon approval by DWR, and such approval shall not be unreasonably withheld. Until further changed

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

pursuant to this Section 3.4, the allocation shall remain as initially provided or as subsequently last changed pursuant to this Section, whichever is applicable. At all times during the term of this Agreement NCPA and Santa Clara shall be jointly and severally liable for all payment obligations under this Agreement and take and pay for the services provided pursuant to Sections 3.1, 3.2 and 3.3.

3.5 DWR shall promptly act on behalf of, or assist NCPA and Santa Clara in redesignating DWR's FTE, as necessary pursuant to the Cotenancy Agreement, to allow NCPA and Santa Clara to use DWR's FTE to which NCPA and Santa Clara are entitled pursuant to this Agreement. However any inability to redesignate DWR's FTE or delay in redesignating DWR's FTE shall not relieve NCPA and Santa Clara of their payment obligations for service under Sections 3.1, 3.2 and 3.3.

3.6 Either NCPA or Santa Clara may schedule its share of NCPA Plant No. 1 or NCPA Plant No. 2 using either NCPA's or Santa Clara's unused FTE obtained pursuant to this Agreement or the Cotenancy Agreement.

3.7 Services provided hereunder shall be provided and used in accordance with Good Utility Practice.

4.0 **CHARGES AND REIMBURSEMENTS**: Charges and reimbursements for Long Term Transmission Service, Short Term Transmission Service and Additional Transmission Service shall be as follows:

////

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

34769

**4.1 <u>Charges And Reimbursements For Long Term Transmission Service</u>:**

    **4.1.1** NCPA shall pay DWR a one time payment of $1,614,545 for its allocated share of Long Term Transmission Service, in accordance with Section 9.1.1 of this Agreement.

    **4.1.2** Santa Clara shall pay DWR a one time payment of $2,085,455 for its allocated share of Long Term Transmission Service in accordance with Section 9.1.1 of this Agreement.

    **4.1.3** NCPA and Santa Clara shall each reimburse DWR based upon their respective shares for all costs incurred by DWR, as evidenced by bills received from PG&E under the Cotenancy Agreement, for operation and maintenance related to the 55 MW of Long Term Transmission Service being provided to NCPA and Santa Clara. These costs include but are not limited to the following sections of the Cotenancy Agreement **(i)** Section 5.2 "Sharing of Costs of Operating Emergencies", **(ii)** Section 5.3 "Sharing of Costs for Operation and Maintenance of the Line Circuits", **(iii)** Section 5.4 "Sharing of Costs for Operation, Maintenance and Replacement of Associated Facilities", and **(iv)** Section 5.5 "Sharing of Costs for Capital Replacements and Additions and Betterments to Maintain Capacity of the New Line".

////

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

**4.1.4** NCPA and Santa Clara shall also, for the life of the New Line, reimburse DWR, based upon their respective shares for any costs of reconstruction incurred as a result of Section 11.1 "Conditions for Automatic Reconstruction" of the Cotenancy Agreement associated with the FTE of Long Term Transmission Service being provided to NCPA and Santa Clara.

**4.1.5** If the cost of reconstruction or repair of the New Line would exceed the applicable limit specified in Section 11.1 "Condition for Automatic Reconstruction" of the Cotenancy Agreement, the Parties shall meet with the intent of amending this Agreement to reflect potential changes to the respective Parties' transmission requirements. If the Agreement cannot be amended to the mutual satisfaction of the Parties, the Parties shall proceed as follows:

**4.1.5.1** If DWR desires to reconstruct on the basis of 110 MW of Ownership Interest in the New Line, and NCPA and Santa Clara, acting jointly, desire to reconstruct on the basis of the 55 MW of Ownership Interest used for the Long Term Transmission Service purchased by NCPA and Santa Clara, then: **a)** DWR shall exercise its right under the Cotenancy Agreement for reconstruction of the New Line; and **b)** NCPA and Santa Clara shall

:OURT PAPER
:TATE OF CALIFORNIA
:TD 113 (REV. 8-72)

35 34769

reimburse DWR, on the basis of the 55 MW of Ownership Interest used for the Long Term Transmission Service purchased by NCPA and Santa Clara, for any cost of reconstruction of the New Line incurred by DWR as a result of DWR exercising its right pursuant to Section 11.2 "Conditions for Decisions Before Reconstruction" of the Cotenancy Agreement.

**4.1.5.2** If DWR, and NCPA and Santa Clara, acting jointly, do not desire to reconstruct DWR's Ownership Interest in the New Line, then: **(a)** DWR shall dispose of its Ownership Interest in the New Line pursuant to the Cotenany Agreement; **(b)** DWR shall reimburse NCPA and Santa Clara, on the basis of the 55 MW of Ownership Interest used for the Long Term Transmission Service purchased by NCPA and Santa Clara, for any net salvage value of the New Line received by DWR as a result of DWR not exercising its right to reconstruct pursuant to Section 11.2 "Conditions for Decision Before Reconstruction" of the Cotenancy Agreement; and **(c)** this agreement shall terminate, provided that obligations to pay incurred

////

13

| | | |
|---|---|---|
| 1 | | under this Agreement shall continue until |
| 2 | | fully satisfied. |
| 3 | **4.1.5.3** | If only DWR desires to reconstruct the New |
| 4 | | Line, then: **(a)** DWR, to the extent permitted |
| 5 | | by law, shall transfer to NCPA and Santa |
| 6 | | Clara title to the 55 MW of DWR's Ownership |
| 7 | | Interest used for the Long Term Transmission |
| 8 | | Service purchased by NCPA and Santa Clara; |
| 9 | | and **(b)** this Agreement shall terminate, |
| 10 | | provided that the obligations to pay |
| 11 | | incurred under this Agreement shall continue |
| 12 | | until fully satisfied. And, |
| 13 | **4.1.5.4** | If NCPA and Santa Clara, acting jointly, |
| 14 | | desire to reconstruct the New Line on the |
| 15 | | basis of the 55 MW of Ownership Interest |
| 16 | | used for the Long Term Transmission Service |
| 17 | | purchased by NCPA and Santa Clara, and DWR |
| 18 | | does not desire to reconstruct, thereafter |
| 19 | | being unable to provide Long Term |
| 20 | | Transmission Service pursuant to Section |
| 21 | | 3.1, then: **(a)** DWR, to the extent permitted |
| 22 | | by law, shall transfer to NCPA and Santa |
| 23 | | Clara title to 55 MW of DWR's Ownership |
| 24 | | Interest; and **(b)** this Agreement shall |
| 25 | | terminate, provided that obligations to pay |
| 26 | | incurred under this Agreement shall continue |
| 27 | | until fully satisfied. |

////

URT PAPER
ATE OF CALIFORNIA
D. 113 (REV. 8-72)

34769

Case: 19-30088   Doc# 11897-2   Filed: 02/02/22   Entered: 02/02/22 17:24:46   Page
15 of 33

**4.2 Charges And Reimbursements For Short Term Transmission Service:**

    **4.2.1** Each month, NCPA and Santa Clara shall, based upon their respective shares, pay DWR at a rate determined from the average of: **a)** DWR's estimated cost computed in dollars per kilowatt-month associated with the Short Term Transmission Service being provided to NCPA and Santa Clara as derived in Appendix A, "Derivation of DWR's Cost for Short Term Transmission Service" and **b)** with respect to NCPA, PG&E's rate for Generation-Tie Firm Transmission Service in effect on January 1 of that year under the NCPA-PG&E Interconnection Agreement and with respect to Santa Clara, PG&E's rate for Generation-Tie Firm Transmission Service in effect on January 1 of that year under the Santa Clara-PG&E Interconnection Agreement. If such average rate exceeds the PG&E rate for Generation-Tie Firm Transmission Service, then the respective PG&E rate shall be used. The above payments shall be made in accordance with Section 9.2.

    **4.2.2** By April 1 of each year, beginning in the year 1990, DWR shall determine the actual cost of Short Term Transmission Service for the previous year and submit an adjustment to NCPA and Santa Clara to reflect any differences between the estimated cost and actual cost.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

15

4.2.3 If rates under the NCPA-PG&E Interconnection Agreement or the Santa Clara-PG&E Interconnection Agreement are no longer in effect, the last applicable rate shall be used in the calculation set out in Section 4.2.1; unless otherwise agreed to by the affected Parties.

4.3 **Charges And Reimbursements For Additional Transmission Service**: Rates for Additional Transmission Service shall be the same as for Short Term Transmission Service and charges shall be based upon the amount of Additional Transmission Service taken pursuant to Section 3.3. Such charges shall be paid in accordance with Section 9.3.

5.0 **OTHER REIMBURSEMENTS**:

5.1 Based upon their share of transmission service NCPA and Santa Clara shall reimburse DWR, as evidenced by bills received from PG&E, for all costs incurred by DWR pursuant to Article 7.0 "Right to Use" of the Cotenancy Agreement which are associated with transmission service being provided to NCPA and Santa Clara, including but not limited to costs for redesignation of DWR's FTE or reconnections of NCPA and Santa Clara powerplants where such re-designations or reconnections are necessary for NCPA and Santa Clara to use DWR's FTE.

5.2 If NCPA and Santa Clara terminate or reduce their right to use Short Term Transmission Service pursuant to Section 3.2, they shall, based upon their share of transmission service, reimburse DWR for all costs incurred by DWR, as

URT PAPER
ATE OF CALIFORNIA
O. 113 (REV. 8-72)
J4789

1       evidenced by bills received from PG&E, for redesignation of

2       DWR's FTE or reconnections of DWR's powerplants where such

3       redesignations or reconnections are necessary for DWR to

4       use its FTE except where such redesignation or re-

5       connection was necessary regardless of this Agreement.

6 **5.3** NCPA and Santa Clara shall, based upon their respective

7       share of transmission service, reimburse DWR for any other

8       costs incurred by DWR, as evidenced by bills received from

9       PG&E pursuant to the Cotenancy Agreement, which are

10       associated with transmission service being provided to NCPA

11       and Santa Clara under this Agreement.

12 **6.0**   **LOSSES:**

13 **6.1** Transmission losses associated with NCPA's use of DWR's FTE

14       shall be governed by NCPA's Interconnection Agreement with

15       PG&E unless a filed change in loss factor is accepted by

16       FERC, then losses shall be governed by such duly filed loss

17       factor. If NCPA's losses are charged to DWR, then NCPA

18       shall reimburse DWR in kind for such transmission losses.

19 **6.2** Transmission losses associated with Santa Clara's use of

20       DWR's FTE shall be governed by Santa Clara's

21       Interconnection Agreement with PG&E unless a filed change

22       in loss factor is accepted by FERC, then losses shall be

23       governed by such duly filed loss factor. If Santa Clara's

24       losses are charged to DWR, then Santa Clara shall reimburse

25       DWR in kind for such transmission losses.

26 ////

27 ////

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-7
85 34769

1    7.0   CURTAILMENTS:

2          Curtailment of NCPA's use and Santa Clara's use of DWR's

3          FTE shall be in accordance with Section 8 "Curtailments" of

4          the Cotenancy Agreement.

5    8.0   ADDITIONS AND BETTERMENTS:

6          NCPA and Santa Clara shall have the option to obtain, DWR's

7          right to participate in the first 300 MW of transmission

8          capacity resulting from any Additions and Betterments

9          occurring pursuant to Section 10.0 "Additions and

10         Betterments" of the Cotenancy Agreement. If NCPA or Santa

11         Clara elects to exercise this option, NCPA or Santa Clara

12         or both, as appropriate, shall reimburse DWR in proportion

13         to their relative shares elected, at cost plus $150,000 and

14         shall reimburse DWR in kind for any increased losses which

15         DWR may incur due to the transmission upgrade.

16   9.0   BILLING AND PAYMENT:   Billing and payment for Long Term

17         Transmission Service, Short Term Transmission Service and

18       · Additional Transmission Service shall be made as follows:

19     9.1 Bills and Payments for Long-Term Transmission Service:

20         9.1.1  NCPA shall pay DWR $1,614,545 and Santa Clara shall

21                pay DWR $2,085,455 as provided in Section 4.1.1 and

22                4.1.2 of this Agreement, within thirty (30) days of

23                the effective date of this Agreement.

24         9.1.2  Each calendar year, DWR shall bill NCPA and Santa

25                Clara for their respective shares of annual charges

26                pursuant to Subsection 4.1.3 (ii) and (iii) of this

27                Agreement.  NCPA and Santa Clara shall pay for their

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

; 34769

respective share of the annual charges within 20
days from the receipt of such bill from DWR.

**9.1.3** For costs associated with Subsection 4.1.3 **(i)** and
**(iv)**, DWR shall bill NCPA and Santa Clara for NCPA's
and Santa Clara's share of those costs. NCPA and
Santa Clara shall pay for their respective share of
each bill within twenty (20) days from the receipt
of such bill from DWR.

**9.2** **Billings and Payments of Short-Term Transmission Service**:

**9.2.1** Each month DWR shall bill NCPA and Santa Clara
pursuant to section 4.2.1 of this agreement for
Short-Term Transmission Service on or before the
tenth (10) day of each month following the month of
service. NCPA and Santa Clara shall pay for their
respective share of each bill within twenty (20)
days from the receipt of such bill from DWR.

**9.2.2** By April 1 of each year DWR shall bill or credit
NCPA and Santa Clara as appropriate pursuant to
Section 4.2.2 of this Agreement for adjustments
between estimated cost and actual cost. NCPA and
Santa Clara shall pay DWR within twenty (20) days
of the receipt of such bill or DWR shall reimburse
NCPA and Santa Clara by April 15 of each year, as
appropriate.

////

////

////

1  **9.3** __Billings and Payments for Additional Transmission Service__:

2       Billing and payments for Additional Transmission Service

3       are the same as for Short Term Transmission Service and

4       shall be prorated appropriately.

5  **9.4** __Interest on Bills and Refunds__:

6       Except as otherwise provided in this Agreement, all

7       bills shall be due and payable within twenty (20)

8       calendar days of receipt of the bill.  Amounts which are

9       not paid on or before the due date shall thereafter

10       accrue interest at the rate of one percent (1%) per

11       month or the maximum rate permitted by law, whichever

12       is less, from the due date to the date payment is

13       received.  Such interest charge shall also apply to any

14       refund and any unpaid bill or portion thereof which is

15       disputed and thereafter determined to be proper.

16  **9.5** All bills to NCPA shall be sent to:

17       Northern California Power Agency
         180 Cirby Way
18       Roseville, CA  95678
         Attention:  Accounts Payable
19
     **9.6** All bills to Santa Clara shall be sent to:
20
         City of Santa Clara
21       Electric Department
         1500 Warburton Avenue
22       Santa Clara, CA  95050
         Attention:  Accounts Clerk
23
     **9.7** All payments to DWR shall be sent to:
24
         Department of Water Resources
25       P. O. Box 942836
         Sacramento, CA  94236-0001
26       Attention:  General Accounting Office
         (DWR No. E164202)
27  ////

OURT PAPER
ATE OF CALIFORNIA
ro. 113 (REV. 8-72)
5 34769

1   **10.0**   **LIABILITY:**

2    **10.1**  **Liability:**   Except **(i)** as otherwise provided in this

3            Section 10.0, and **(ii)** for any loss, damage, claim, cost,

4            charge, or expense resulting from Willful Action, as

5            defined in Section 10.6, no Party, its directors or other

6            governing body, officers or employees shall be liable to

7            any other Party or Parties for any loss, damage, claim,

8            cost, charge, or expense of any kind or nature incurred by

9            any other Party or Parties (including direct, indirect or

10           consequential loss, damage, claim, cost, charge, or

11           expense, and whether or not resulting from the negligence

12           of a Party, its directors or other governing body,

13           officers, employees, or any person or entity whose

14           negligence would be imputed to such Party) from the

15           performance or nonperformance of the obligations of a Party

16           under this Agreement (including the interruption or

17           curtailment of any transmission of electric energy).

18           Except **(i)** as otherwise provided in this Section 10.0, and

19           **(ii)** for any loss, damage, claim, cost, charge, or expense

20           resulting from Willful Action, as defined in Section 10.6,

21           each Party releases the other Parties, their directors, or

22           other governing body, officers, and employees from any such

23           liability.

24    **10.2**  **Responsibility of Parties Regarding Damage From Electrical**

25           **Disturbances:**   Each Party shall be responsible for

26           protecting its facilities from possible damage by reason

27           of electrical disturbances or faults caused by the

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

1  operation, faulty operation, or non-operation of any other
2  Party's facilities located in Lake, Napa or Sonoma
3  counties, and, except for damage resulting from Willful
4  Action, such other Party shall not be liable for any such
5  damages so caused.

6  **10.3** **Claims By Persons or Entities**: Except as provided in
7  Section 10.4 or 10.5, each Party shall be responsible to
8  the extent permitted by law, for liability for death,
9  injury, loss or damage suffered or incurred by a person or
10  entity (other than a Party, its directors or other
11  governing body, officers and employees) to the extent such
12  death, injury, loss or damage was proximately caused by
13  such Party in the performance or non-performance of its
14  obligations under this Agreement.

15  **10.4** **Claims By Electric Customers**: Except for liability
16  resulting from Willful Action of another Party, a Party
17  whose electric customer shall make a claim or bring an
18  action for any death, injury, loss or damage arising out
19  of electric service to such customer, which death, injury,
20  loss or damage is caused by a Party's performance or
21  nonperformance of its obligations under this Agreement,
22  shall indemnify and hold harmless, to the full extent
23  permitted by law, the other Parties, their directors or
24  other governing body, officers and employees from and
25  against any liability for such death, injury, loss or
26  damage. For the purpose of this Section 10.0, the term
27  "electric customer" shall mean an electric customer, except

)URT PAPER
ATE OF CALIFORNIA
D. 113 (REV. 8-72)

34769

1    an electric utility system to whom power is delivered for
2    resale.  "Electric customer" shall also mean a member,
3    subsidiary or substantial owner of a Party.

4    **10.5  Claims By Employees**:  Except for liability resulting from
5    Willful Action of another Party, a Party whose employee
6    shall make a claim or bring an action against another Party
7    for any death, injury, loss or damage arising out of a
8    Party's performance or nonperformance of its obligations
9    under this Agreement, shall indemnify and hold harmless,
10   to the full extent permitted by law, the other Parties,
11   their directors, officers and employees for such death,
12   injury, loss or damage.

13   **10.6  Willful Action**:  For the purpose of this Section 10.0,
14   Willful Action shall be defined as:

15   **10.6.1**    Action taken or not taken by a Party at the
16   direction of its directors or other governing body,
17   officers or employees having management or
18   administrative responsibility affecting its
19   performance under this Agreement, which action is
20   knowingly or intentionally taken or failed to be
21   taken with conscious indifference to the
22   consequences thereof or with intent that injury or
23   damage would result or would probably result
24   therefrom.

25   **10.6.2**    Action taken or not taken by a Party at the
26   direction of its directors or other governing body,
27   officers or employees having management or

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

23

administrative responsibility affecting its performance under this Agreement, which action has been determined by final arbitration award or final judgment or judicial decree to be a material default under this Agreement and which occurs or continues beyond the time specified in such arbitration award or judicial decree for curing such default or, if no time to cure is specified therein, occurs or continues thereafter beyond a reasonable time to cure such default.

10.6.3 Action taken or not taken by a Party at the direction of its directors or other governing body, officers or employees having management or administrative responsibility affecting its performance under this Agreement, which action is knowingly or intentionally taken or failed to be taken with the knowledge that such action taken or failed to be taken is a material default under this Agreement.

10.6.4 Willful Action does not include any act or failure to act which is merely involuntary, accidental or negligent.

10.6.5 The phrase "employees having management or administrative responsibility," as used in this Section 10.0, means the employees of a Party who are responsible for one or more executive functions of planning, organizing, coordinating, directing,

OURT PAPER
TATE OF CALIFORNIA
TO. 113 (REV. 8-72)

5 34769

1                    controlling and supervising such Party's performance
2                    under this Agreement with responsibility for
3                    results.

4    **11.0    UNCONTROLLABLE FORCES:**

5              No Party shall be considered to be in default in the
6         performance of any obligation under this Agreement (other
7         than an obligation to make payment for bills rendered
8         pursuant to this Agreement) when a failure of performance
9         shall be the result of uncontrollable forces.   The term
10        "uncontrollable forces" shall mean any cause or causes
11        beyond the control of the Party unable to perform such
12        obligation, including, but not limited to, failure of or
13        threat of failure of facilities, flood, earthquake, storm,
14        drought, fire, pestilence, lightning and other natural
15        catastrophes, epidemic, war, riot, civil disturbance or
16        disobedience, sabotage, strike, lockout, labor disturbance,
17        labor or material shortage, government priorities and
18        restraint by court order or public authority and action or
19        non-action by, or inability to obtain the necessary
20        authorizations or approvals from any governmental agency or
21        authority, any of which by exercise of due diligence such
22        Party could not reasonably have been expected to avoid and
23        which by exercise of due diligence it has been unable to
24        overcome.   Nothing contained in this Section 11.0 shall be
25        construed as requiring a Party to settle any strike,
26        lockout or labor dispute in which it may be involved, or to
27        accept any permit, certificate or other authorization which

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

1  contains conditions which such Party determines in its
2  judgment are unduly burdensome.

3  **12.0  ADMINISTRATION:** In order to exchange information and
4  determine procedure regarding activities required under
5  this Agreement, each Party shall within ten days following
6  execution of this Agreement, appoint an Authorized
7  Representative. The Authorized Representatives shall have
8  the following functions:

9  **12.1** Exchange information on and coordinate any proposed
10  reduction or termination of Short-Term Transmission Service
11  pursuant to Section 3.2.

12  **12.2** Exchange information on and coordinate any reallocation of
13  Long-Term Transmission Service, Short-Term Transmission
14  Service and Additional Transmission Service, pursuant to
15  Section 3.4.

16  **12.3** Prepare and coordinate notices to PG&E regarding
17  redesignations pursuant to Section 3.5.

18  **12.4** To prepare and recommend to the Parties, for approval,
19  amendments or supplemental agreements which may be
20  necessary for the implementation of this Agreement.

21  **12.5** To prepare and from time to time review Operating
22  Procedures to be followed by the Parties under this
23  Agreement. Such procedures shall be in general conformance
24  with Good Utility Practice.

25  **12.6** The Authorized Representatives shall have no authority to
26  modify, change, add or eliminate any terms or conditions of
27  this Agreement.

)URT PAPER
ATE OF CALIFORNIA
D. 113 (REV. 8-72)

34769

1    **12.7** Any action taken or determination made by the Authorized

2            Representatives shall be reduced to writing.

3    **12.8** Any Party may change designation of its Authorized

4            Representative by giving the other Parties written notice

5            in the manner provided in Section 13.

6    **13.0** **NOTICES:**

7    **13.1** Unless otherwise specified, any notice, demand,

8            information, report or item otherwise required, authorized

9            or provided for in this Agreement, shall be deemed properly

10           given if delivered personally or sent by United States

11           Mail, postage prepaid, to the persons specified below:

12   **To DWR:**

13          The State of California
              Department of Water Resources

14          c/o Chief of the Energy Division
              P. O. Box 942836

15          Sacramento, CA  94236-0001

16   **To NCPA:**

17          General Manager
              Northern California Power Agency

18          180 Cirby Way
              Roseville, CA  95678

19

20   **To Santa Clara:**

21          City Manager
              City of Santa Clara

22          1500 Warburton Avenue
              Santa Clara, CA  95050

23          Any Party may change designation of the person who is to

24          receive notices on its behalf by giving the other Parties

25          written notice thereof in the manner provided in this

26          Section 13.0.

27   / / / /

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

1  **13.2**  Any notice of a routine character in connection with
2        service under this Agreement or in connection with
3        operation of facilities shall be given in such a manner as
4        the Parties may determine from time to time, unless
5        otherwise provided in this Agreement.

6  ////
7  ////
8  ////
9  ////
10 ////
11 ////
12 ////
13 ////
14 ////
15 ////
16 ////
17 ////
18 ////
19 ////
20 ////
21 ////
22 ////
23 ////
24 ////
25 ////
26 ////
27 ////

1    **14.0    SIGNATURE CLAUSE:**

2           The signatories hereto represent that they have been

3           appropriately authorized to enter into this Agreement on

4           behalf of the Party for whom they sign.  This Agreement may

5           be signed by counter part.

6

7                        **NORTHERN CALIFORNIA POWER AGENCY**

8    ATTEST:

9    By: _____    By: _____
                                              General Manager
10

11   Date: _____

12

13                        **CITY OF SANTA CLARA**

14   ATTEST:

15
     By: _____    By: _____
16           City Clerk                      Mayor

17

18   Approved As To Form:           By: _____
                                              City Manager
19

20
     By: _____    Date: _____
21           City Attorney

22

23      DEPARTMENT OF WATER RESOURCES OF THE STATE OF CALIFORNIA

24   APPROVED AS TO LEGAL
     FORM AND SUFFICIENCY:
25

26   By: _____    By: _____
             Assistant Chief                Deputy Director
27          Counsel

                                    Date: _____

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

29

**14.0  SIGNATURE CLAUSE:**

The signatories hereto represent that they have been appropriately authorized to enter into this Agreement on behalf of the Party for whom they sign. This Agreement may be signed by counter part.

NORTHERN CALIFORNIA POWER AGENCY

ATTEST:

By: _____     By: _____
                                   General Manager

Date: _____

CITY OF SANTA CLARA

ATTEST:

By: _~~J.E. Boccignone~~_     By: _~~signature~~_
       City Clerk                   Mayor

Approved As To Form:          By: _~~Jennifer Sparacino~~_
                                   City Manager

By: _~~signature~~_           Date: _3-20-89_
Assistant City Attorney

DEPARTMENT OF WATER RESOURCES OF THE STATE OF CALIFORNIA

APPROVED AS TO LEGAL
FORM AND SUFFICIENCY:

By: _~~signature~~_           By: _~~Ronald E. Owen~~_
    Assistant Chief               Acting Deputy Director
    Counsel

                              Date: _4/12/89_

# APPENDIX A

## DERIVATION OF DWR'S UNIT COST ($/kW-mo) FOR
## SHORT TERM TRANSMISSION SERVICE

1. DWR shall estimate its annual cost associated with Short Term Transmission Service being provided to NCPA and Santa Clara as follows:

   A. The estimate of annual cost shall include: i) DWR's costs incurred as evidenced by bills received from PG&E pursuant to the following sections of the Cotenancy Agreement: Section 4.0 "Sharing Initial Construction Costs of the New Line and Associated Facilities", Section 5.2 "Sharing of Costs of Operating Emergencies", Section 5.3 "Sharing of Costs for Operation and Maintenance of the Line Circuits", Section 5.4 "Sharing of Costs for Operation, Maintenance and Replacement of Associated Facilities", Section 5.5 "Sharing of Costs for Capital Replacements and Additions and Betterments to Maintain Capacity of the New Line"; plus (ii) DWR's annual costs incurred pursuant to the following sections of the Cotenancy Agreement, Section 5.3 "Sharing of Costs for Operation and Maintenance of the Line Circuits" and Section 5.4 "Sharing of Costs for Operation, Maintenance and Replacement of Associated Facilities".

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
85 34769

1      B.    DWR shall capitalize the cost components in

2            paragraph A **(i)** through February 28, 1989. DWR

3            shall calculate the annual cost of amortizing the

4            capitalized cost from March 1, 1989 through

5            December 31, 2014, using the applicable first of

6            the month reference rate of the San Francisco main

7            branch of the Bank of America, N.T. and S.A., San

8            Francisco, California as of the date this agreement

9            becomes effective.

10     C.    By December 15 of each year, DWR will estimate the

11           cost components in paragraph A **(ii)** for the

12           following year.

13     D.    The estimated monthly cost for the following year

14           shall be the sum of the annual costs calculated

15           pursuant to paragraphs B and C above divided by 12.

16    ////

17    ////

18    ////

19    ////

20    ////

21    ////

22    ////

23    ////

24    ////

25    ////

26    ////

27    ////

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

34769