1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 5**

**FERC Order**

168 FERC ¶ 61,200
FEDERAL ENERGY REGULATORY COMMISSION
WASHINGTON, DC 20426

September 27, 2019

In Reply Refer To:
Pacific Gas and Electric
    Company
Docket No. ER19-2496-000

Pacific Gas and Electric Company
P.O. Box 7442
San Francisco, CA  94120

Attention:  Joshua S. Levenberg

Dear Mr. Levenberg:

On July 30, 2019, Pacific Gas and Electric Company (PG&E) filed, pursuant to section 205(d) of the Federal Power Act (FPA),[1] revisions to the Agreement of Cotenancy (Agreement) among PG&E, the State of California Department of Water Resources (CDWR), the Northern California Power Agency (NCPA), and the City of Santa Clara, California (Santa Clara) (collectively, Parties), designated as Rate Schedule No. 139.  As discussed below, we reject PG&E's proposed revisions to the Agreement.

PG&E explains that the Parties entered into the Agreement on June 1, 1984 for the purpose of constructing and co-owning a new 230-kV double circuit transmission line between Castle Rock Junction and the PG&E Lakeville Substation (New Line).  PG&E states that the initial term of the Agreement extended through December 31, 2014, and continued thereafter from year to year unless terminated.  PG&E states that, by letter dated July 30, 2018, and pursuant to section 14.3 of the Agreement, CDWR gave one year advance notice of its desire to terminate its participation in the Agreement, effective August 1, 2019.

---

[1] 16 U.S.C. 824d(d) (2018).

Document Accession #: 20190927-3068     Filed Date: 09/27/2019

PG&E, NCPA, and Santa Clara (together, the Remaining Cotenants) acknowledge but have rejected CDWR's requested withdrawal, according to PG&E, pending receipt of CDWR's payment of its proportional share of reasonable estimated future removal costs of the New Line. PG&E interprets the Agreement to require CDWR, as a Cotenant that desires to depart, to make such a payment. PG&E states that CDWR disagrees with this interpretation, and that, although the Parties have met on multiple occasions and discussed the terms and obligations of CDWR's desire to withdraw from the Agreement, the Parties have not reached consensus.

As a result of the disagreement among the Parties, PG&E, on behalf of the Remaining Cotenants, proposes in this proceeding to revise the Agreement to acknowledge CDWR's intention to withdraw from it and to state the Remaining Cotenants' position that CDWR is obligated to pay its reasonable share of removal costs before it may withdraw. Thus, PG&E proposes to add the following paragraph to section 14.3 of the Agreement:

> By letter dated July 30, 2018, and pursuant to Section 14.3 of the Agreement, CDWR gave each of the Cotenants one (1) year advance notice of its desire to terminate CDWR's participation in the Agreement, with a requested August 1, 2019 effective date for such termination. PG&E, NCPA, and Santa Clara acknowledge CDWR's request to terminate its participation in the Agreement, but have rejected CDWR's requested withdrawal from the Agreement pending receipt of CDWR's payment of its proportional share of the reasonable estimated removal costs to the remaining Cotenants prior to withdrawing from the Agreement. Upon receipt of CDWR's payment, PG&E, NCPA and Santa Clara, as the remaining Cotenants, agree to terminate CDWR's participation and to file an amended agreement among the remaining Cotenants pursuant to Section 14.2 of the Agreement.

PG&E states that NCPA and Santa Clara concur with this filing, and that both are prepared to execute the amended Agreement. PG&E requests waiver of the Commission's prior notice requirements to allow the revised Agreement to become effective July 31, 2019, so that the Agreement "reflects the revision to Section 14.3 of the Agreement within the one-year notice period triggered by CDWR on August 1, 2018."[2]

---

[2] PG&E Transmittal Letter at 4.

Case: 19-30088   Doc# 11897-5   Filed: 02/02/22   Entered: 02/02/22 17:24:46   Page 3 of 7

Notice of PG&E's filing was published in the *Federal Register*, 84 Fed. Reg. 38,249 (2019), with interventions and protests due on or before August 20, 2019. Santa Clara and NCPA filed a motion to intervene and comments in support of the filing. CDWR filed a limited motion to intervene and protest. The State Water Contractors filed an out-of-time motion to intervene. The Remaining Cotenants filed a joint answer to CDWR's limited motion to intervene and a motion for leave to answer and answer to CDWR's protest (Joint Answer).

Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2019), the timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding. Pursuant to Rule 214(d) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214(d) (2019), we grant State Water Contractors' late-filed motion to intervene given its interest in the proceeding, the early stage of the proceeding, and the absence of undue prejudice or delay.

Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2019), prohibits an answer to a protest or an answer unless otherwise ordered by the decisional authority. We will accept the Joint Answer because it has provided information that assisted us in our decision-making process.

CDWR protests the proposed revisions to the Agreement on four grounds. First, CDWR argues that its interest in the Agreement terminated as of August 1, 2019, because it provided the requisite notice of termination under section 14.3 of the Agreement. CDWR argues that nothing in that provision, or any other part of the Agreement, permits the Remaining Cotenants to reject a termination that is properly noticed. Additionally, CDWR contends that, due to its termination notice, it has no role or responsibility in any future decisions made by the Remaining Cotenants, including decommissioning the facility.

Second, CDWR disputes PG&E's claim that CDWR must pay decommissioning costs prior to withdrawing from the Agreement. CDWR notes that the Agreement establishes a separate process for determining whether to decommission any of the transmission facilities under the Agreement, and that the process has not been triggered because the Cotenants did not decide, and have not decided, to decommission the New Line prior to CDWR terminating its interest in the Agreement. Third, CDWR argues that the proposed revisions to the Agreement are an impermissible amendment to the terms of a previously noticed termination and that the amendments violate Commission precedent

Document Accession #: 20190927-3068     Filed Date: 09/27/2019

and the principles of fairness underlying that precedent.[3]   Fourth, CDWR claims that the appropriate venue, if any, for interpreting the terms of CWDR's termination under the Agreement is a court of proper jurisdiction, not the Commission.

In their Joint Answer, the Remaining Cotenants assert that sections 14.5 and 14.6 of the Agreement contemplate either (1) a payment to a departing Cotenant by the remaining Cotenants that are acquiring the departing Cotenant's share of the facilities, or (2) a payment by a departing Cotenant to the remaining Cotenants to cover its share of anticipated removal costs when the facilities are ultimately decommissioned.[4]   The Remaining Cotenants argue that until CDWR's financial obligation is paid to the other Cotenants, CDWR's termination and departure from the Agreement have not been perfected.  According to the Remaining Cotenants, the goal of revisions is not only to seek resolution of the dispute with CDWR, but to also provide clarity to the Remaining Cotenants regarding other potential future departures from the Agreement.  Consequently, the Remaining Cotenants also seek the Commission's assistance in determining the methodology that should be used to calculate the removal cost obligations for future departing Cotenants, and, once determined, to what facilities that methodology should be applied.[5]

We find that PG&E has not met its burden to establish that its proposed revision to the Agreement is just and reasonable, and we therefore reject it.  As discussed below, the proposed revision is either an improper imposition of a new obligation on CDWR without its consent, or an attempt to expressly codify a disputed obligation in the Agreement, notwithstanding that the Agreement already ensures that a departing party remains responsible for all financial obligations incurred while it was a party to the Agreement.  In either event – and we reach no conclusion as to the merits of the decommissioning dispute – PG&E has not adequately justified its proposed changes.

To the extent PG&E's proposed revision to section 14.3 is intended to impose a new condition on CDWR without its consent, we find that such a change is contrary to Commission precedent and therefore reject it.  Specifically, the Commission has rejected the application of revised or amended termination provisions to parties that have

---

[3] CDWR Limited Motion to Intervene and Protest at 9 (citing *South Carolina Gas & Elec. Co.*, 70 FERC ¶ 61,008 (1995) (*SCG&E*) and *Pub. Serv. Co. of New Hampshire*, 31 FERC ¶ 61,267, *reh'g denied*, 32 FERC ¶ 61,251 (1985) (*PSNH* Rehearing Order)).

[4] Joint Answer at 4-5.

[5] *Id.* at 6-7.

previously provided notice under pre-existing termination provisions.[6]  In this case, CDWR provided the requisite notice pursuant to existing section 14.3 of the Agreement, and the Remaining Cotenants cannot, after receipt of such notice, amend that section to impose new requirements on CDWR without its consent.

     To the extent the proposed revision only codifies an obligation allegedly incurred by CDWR pursuant to the Agreement, we find that such a revision is unnecessary.  In their answer, the Remaining Cotenants assert that the proposed revision does not "reflect any new contract language imposing new charges upon" CDWR.[7]  Rather, they contend, sections 14.5 (Termination By All Cotenants) and 14.6 (Continued Operation By Cotenants) of the Agreement establish that CDWR owes money to the Remaining Cotenants for removal costs because the net salvage value of the facilities at issue was calculated to be negative.[8]  While we do not here make any determination as to either the applicability of sections 14.5 and 14.6 to CDWR under these circumstances or the Remaining Cotenants' interpretation of those provisions, we note that both sections 14.5 and 14.6 specify that departing cotenants will be liable for financial obligations they incur while still a party to the Agreement.[9]  Thus, even assuming the Remaining Cotenants are correct that CDWR has a financial obligation – which we do not address here – the existing provisions of the Agreement that the Remaining Cotenants cite in support of their position expressly provide that a departing cotenant is responsible for financial obligations incurred while still a party to the Agreement.  Accordingly, to the extent that the proposed revision does not, in fact, reflect "any new contract language," we find that it is unnecessarily redundant of the Agreement's existing provisions, and that PG&E has not met its burden under FPA section 205.

     Because we are rejecting the filing, we decline to address CDWR's argument that the Commission should not assert primary jurisdiction over the Agreement or the

---

[6] *See, e.g.*, *SCG&E*, 70 FERC ¶ 61,008 at n.13 (rejecting application of additional termination charge to customer that had provided notice under pre-existing provision). *See also PSNH* Rehearing Order, 32 FERC ¶ 61,251 (explaining that when a customer properly gives notice under a filed contract, the supplying utility may not begin imposing new conditions for service).

[7] Remaining Cotenants Answer at 5.

[8] *Id.* at 5-6 & n.9.

[9] Section 14.5 provides that "[e]ach Cotenant shall be liable for financial obligations incurred by it prior to any termination of this Agreement."  Section 14.6 provides that "[t]he departing Cotenant(s) shall be liable for all financial obligations incurred by it prior to its effective date of termination."

Remaining Cotenants' request for assistance in determining the appropriate methodology to calculate reasonably anticipated removal costs a departing cotenant may owe, as well as to what facilities this methodology would apply.

    By direction of the Commission.


                              Nathaniel J. Davis, Sr.,
                              Deputy Secretary.