DOW W. PATTEN (135931)
Forthright Law, P.C.
50 California Street, Suite 1500
San Francisco, CA 94111-4612
Telephone (415) 228-6848
Facsimile (415) 228-6878

Attorneys for
ANGELA RAMIREZ

**UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF CALIFORNIA,**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re PG&E CORPORATION & PACIFIC GAS & ELECTRIC COMPANY,     Debtors | **Bankruptcy Case No. 19-30088-DM** |
| | Chapter 11 |
| | Lead Case, Jointly Administered |
| ANGELA RAMIREZ, Creditor and Moving Party v. PACIFIC GAS & ELECTRIC COMPANY Debtor & Responding Party | **DECLARATION OF DOW W. PATTEN IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY** |
| | Response Deadline: |
| | March 1, 2022, 4:00 p.m. (PT) |
| [ ] Affects PG&E Corporation | Hearing Information If Timely Response Made: |
| [x] Affects Pacific Gas and Electric Company | Date: March 15, 2022 |
| [] Affects both Debtors | Time: 10:00 a.m. (Pacific Time) |
| *All papers shall be filed in the Lead Case, | Place: (Tele/Videoconference Appearances Only) |
| No. 19-30088-DM, | |
| | Dept: Courtroom 17, 16th Floor 450 Golden Gate Avenue San Francisco, CA 94102 |

I, DOW W. PATTEN declare and state as follows:

1.      I have personal knowledge of the facts set forth herein; if called as a witness, I would testify competently thereto.

2.      I am counsel of record for Plaintiff, Angela Ramirez, and filed the First Amended Complaint, a true and correct copy of which is attached hereto as Exhibit"A" in Sacramento

Case: 19-30088    Doc# 11936-2    Filed: 02/16/22    Entered: 02/16/22 08:53:57    Page 1 of 21

Superior Court on May 23, 2019.

3.      That matter is an employment law case alleging violations of the California Equal Pay Act and the California Fair Employment and Housing Act, and seeks damages for only those actions occurring after the filing of the Chapter 11 Petition in this matter. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

DATED: February 16, 2022

/s/ Dow W. Patten
DOW W. PATTEN

EXHIBIT "A"

SMITH PATTEN
DOW W. PATTEN, ESQ. (SBN: 135931)
50 California St. Suite 1500
San Francisco, CA 94111
Telephone: (415) 402-0084
Facsimile: (415) 520-0104

Attorney for Plaintiff
ANGELA RAMIREZ

FILED/ENDORSED

MAY 2 3 2019

By: _____ R. San Miguel
Deputy Clerk

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| ANGELA RAMIREZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY;<br>and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 34-2019-00255681<br><br>**FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>(1) **VIOLATION OF THE CALIFORNIA EQUAL PAY ACT (Labor Code § 1197.5)**<br><br>(2) **RETALIATION**<br>    **(Cal. Gov. Code § 12900, *et seq.*)**<br><br>(3) **SEX/GENDER DISCRIMINATION**<br>    **(Cal. Gov. Code § 12900, *et seq.*)**<br><br>(4) **RACE DISCRIMINATION**<br>    **(Cal. Gov. Code § 12900, *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

BY FAX

Plaintiff ANGELA RAMIREZ ("Plaintiff" or "RAMIREZ") files this First Amended

Complaint for Damages and Injunctive Relief, and complains of the named Defendants, and each

of them, jointly and severally, and for causes of action, alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to Article VI, § 10 of the

Constitution of the State of California.

1

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

2. Venue is proper in the County of Sacramento in that Defendant is a corporation licensed to and doing in this County, part of the wrongs alleged herein occurred within this County, and Plaintiff is a resident of this County.

3. Plaintiff has been damaged in excess of the jurisdictional amount of this Court.

## INTRODUCTION

4. This action arises out of events during Plaintiff's employment with the PACIFIC GAS & ELECTRIC COMPANY ("PG&E").

## THE PARTIES

5. Plaintiff RAMIREZ is an Hispanic female, with over seventeen (17) years of experience in complex contract management.

6. Defendant PACIFIC GAS & ELECTRIC COMPANY ("PG&E") is a California Corporation, licensed to and doing business in the County of Sacramento, with field offices relevant to this lawsuit located in the in the County of Sacramento.

7. Plaintiff is ignorant of the true names and capacities of defendants sued herein as "DOES 1-10, inclusive," and Plaintiff therefore sues such defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences, acts, and omissions alleged herein and that Plaintiff's injuries as alleged herein were proximately caused by such aforementioned defendants.

## BACKGROUND FACTS

8. RAMIREZ is an Hispanic female with over 17 years of experience supporting and managing procurement, sourcing and contract management and supplier relationship management; managing complex large-scale development and construction projects simultaneously, ranging in size from a few thousand to multi-million-dollar contracts; these

2
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

contracts consisted of private, public works (Federal and State, local sectors) from point of inception through completion working with a multitude of contract types: GMP, Cost Plus, Lump Sum, T&M, and forms AIA, AGC for Development, Design-Build, New Construction, Tenant Improvement, Service and Maintenance projects.

9.      RAMIREZ has experience with purchase agreements for goods, materials, equipment and supplies, and has led the development of establishing new contract protocols, processes and control systems.

10.     RAMIREZ began working for PG&E on November 17, 2015, when she began as a Contract Specialist, Electric Transmission (ET) Contract Management (CM), Reporting to Bryan Imm, Supervisor.

11.     As part of the hiring process, Ms. Ramirez made very clear that her experience was in contract management, and she repeatedly requested training on the expectations of management, including working with contract planners to identify and correctly characterize the scope of work. Ms. Ramirez's male and Caucasian counterparts were permitted the type of training, including work site walk-throughs, which were specifically and repeatedly denied to Ms. Ramirez and other non-Caucasians and females in the group.

12.     Ms. Ramirez also suggested substantial improvements in the process, including referring specifically to the provisions of Master Services Agreements ("MSA"s) in processing work orders and change orders in order to reduce redundancy and discrepancies, and the creation of templates to reduce the number of discrepancies generated by the workflow.   At every turn, Ms. Ramirez's suggestions on process improvement were rebuffed and disregarded.

13.     During her first two years of employment RAMIREZ passed her probationary period and performed her job functions competently, consistently receiving positive feedback from her internal clients, and being the top producer in her group in terms of throughput.

14. Approximately six months after she started, Ms. Ramirez began to receive "feedback" from Mr. Imm that was troubling in a number of ways. First, the standards tools used to apprise Ms. Ramirez of her performance, given in one-on-one meetings, was changed in an ad hoc fashion, and was not communicated to Ms. Ramirez. For example, the reviews would contain new goals and areas that had not appeared in the prior meetings. This ad hoc changing of expectations without notice continued throughout her tenure in ET CM.

15. The constant evolution of the metrics used to judge Ms. Ramirez's performance demonstrate an attempt to fabricate performance issues rather than truly assess performance.

16. Ms. Ramirez's work was subjected to hyper-scrutiny that her male and Caucasian counterparts, hired after her, were not. Indeed, this evidence is very compelling, as the practice within the group is to recycle contract language from prior approved contracts, and when Ms. Ramirez utilized her male, Caucasian counterparts' contract language as a template, Imm found numerous alleged errors, ascribing them to Ramirez, when in fact, if they were errors they were errors he let the male Caucasian counterpart commit without comment.

17. Ms. Ramirez also began experiencing increasingly hostile and aggressive behavior in the workplace towards her and other minorities, which she began documenting, including an effort by individuals in management to create a false documentation of performance to justify discriminatory and retaliatory personnel decisions.

18. During this period, Imm fabricated performance issues in order to limit Ramirez's and other females and Hispanics' opportunities for advancement, and to make room on his team for his preferred male and Caucasian employees.

19. On December 6, 2017, Bryan Imm sent email requiring all team members to submit their 2017 end of year ("EOY") self-evaluations by December 13, 2017 for the ET CM leadership team to evaluate and adjust the performance ratings.

4
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

20. On January 24, 2018, RAMIREZ attended an "Initial Sourcing Meeting" for Contract Management Supervisor Bryn Imm, and Electric Operations Sourcing Portfolio Manager Richard Cordova and to discuss the impending Sourcing transition.

21. As the meeting concluded Richard Cordova invited members of the CM team out to lunch (in pairs of two) to get to know his new team members. RAMIREZ volunteered for the first meeting along with her female Hispanic counterpart, Angelica Gonzalez.

22. After Mr. Cordova confirmed the lunch with Ms. Gonzalez and RAMIREZ immediately following the team meeting, Kim Soto, Expert Contract Specialist made the comment "You get to take the Two Angels", a nickname neither Ms. Gonzalez or RAMIREZ had ever been referred to by anyone from CM prior to that meeting.

23. When Ms. Gonzalez and RAMIREZ expressed their surprise and displeasure at being given a nickname, Mrs. Soto explained the nickname was being used by CM leadership in their meetings.

24. On February 9, 2018, at 3:00pm, Bryan Imm, outside of the normal process, included Manager Dana Dupar (via telephone) in a meeting he ordered RAMIREZ to attend to give her her 2017 EOY Performance Evaluation review. At this meeting RAMIREZ voiced her objections to the final rating, because it included no specific instances of non-performance, no examples to support a "developing" rating. The Comments sections had been left blank by Mr. Imm. During the meeting, Mr. Dupar mistook Ms. Ramirez for another Latina employee during the review. Mr. Dupar agreed to a follow up meeting to discuss the issues raised by Ms. Ramirez, and set February 12, 2018 as the date for follow-up.

25. Upon information and belief neither Imm nor Dupar had any intention of doing so, as the reason for the low performance evaluation given to RAMIREZ was to justify the impending Sourcing transition.

Case: 19-30088    Doc# 11936-2    Filed: 02/16/22    Entered: 02/16/22 08:53:57    Page 8
of 21

26.     On February 12, 2018, RAMIREZ met with Mr. Dupar in the Rocklin office conference room   to discuss the issues Ms. Ramirez had raised on February 9, 2018. The result of the meeting was    that Mr. Dupar stated he would investigate issues Ms. Ramirez had raised and would schedule an additional follow up meeting to discuss action taken and resolution. That same day, Eric Back (Sr. Director, Electric Transmission) announced that Patrice Agostino - Martin would be serving as Interim Director of the Transmission Contract Operations organization, with Dana Dupar and all subordinates reporting up to Patrice Agostino – Martin.

27.     On March 13, 2018, in an "ETOS Meeting and Update" Bryan Imm and Richard Cordova notified  RAMIREZ and 3 others that they had been selected to move to Sourcing due to a  "Segregation of Duties Issue".

28.     When RAMIREZ  inquired for the reason for selecting her and her three co-workers,  Mr. Imm explained "The decision for the move for the four was  made by Leadership of CM and Sourcing and based on the best decisions needs for each department."

29.     Between March 2018 and November 2018 PG&E subjected RAMIREZ's work to unwarranted and excessive scrutiny that her non-Hispanc and male counterparts did not receive, causing her working conditions to become far more difficult for no legitimate business reason.

30.     Despite the unwarranted de-facto demotion, Plaintiff has received numerous emails during her time at PG&E for going above and beyond, including being awarded a $1,500.00 Reward and Recognition from Sourcing Supervisor Robin Kirkpatrick for a job well done upon the transition from CM to Sourcing.

31.     On January 29, 2019, PG&E Corporation ("PG&E Corp.") and its primary operating subsidiary, Pacific Gas and Electric Company, filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Northern District of California.

/ / /

Case: 19-30088    Doc# 11936-2    Filed: 02/16/22    Entered: 02/16/22 08:53:57    Page 9
of 21

## FACTS COMMON TO ALL CAUSES OF ACTION

32.     On March, 8, 2019 RAMIREZ received a copy of her performance and rewards statement, which is based off her 2018 performance evaluation and had a "reward conversation" conducted by her rotation Supervisor Janetta Tarter.

33.     In the performance evaluation for 2018, PG&E rated RAMIREZ as Goal: "target" and Competency: " Successful", which was an improvement from her 2017 performance evaluation.

34.     However, in the March 8, 2019 performance and rewards statement indicated that RAMIREZ's Compa-Ratio was rated as 92% up from 90%, which is 3% percentage points below her performance evaluation from last year, or 5% based on the 90% current ratio shown on the rewards statement.

35.     The low Compa-Ratio was despite the fact that RAMIREZ had performed very well in her new Sourcing Specialist position, and had received numerous positive feedback communications from colleagues.

36.     Throughout 2018 RAMIREZ was assigned Senior Level assignments, which comprised more then 50% of her work load; including processing a Contract the highest by dollar value and complexity amongst her Sourcing Specialist team members.

37.     The "Compa-Ratio" by PG&E definition correlates to a "Training/Entry Contributor 90% and below and "Emerging Contributor" 85% -- 95% level employee.

38.     When Ramirez questioned why she had been rated as entry/emerging level rating, and requested that her rating be increased to reflect her actual contribution, RAMIREZ's supervisor could provide no specific justification for the rating.

39.     RAMIREZ's supervisor stated that she was not familiar with the HR performance definitions, and did not calculate the contributor level ratio.

7
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

40. RAMIREZ's supervisor also stated that she did not know who performed the contributor level ratio calculation at PG&E, and stated that she would have to investigate and ask her counterpart to find out where that formula comes from and who inputs it.

41. PG&E guidance documents related to compensation state that the supervisor performs these actions with respect to the Compa-Ratio for their direct reports.

42. On March 19, 2019 RAMIREZ's Supervisor responded but did not address the issues RAMIREZ had raised with the rating, did not provide a justification for the rating, nor any procedure or resolution for resolving RAMIREZ's adjustment to the rating requested on March 8, 2019.

43. The low level performance rating negatively impacts RAMIREZ's salary, career progression, and ability to promote.

44. By all objective metrics, RAMIREZ should have been rated as a "Key Contributor", based on the quantity, the Senior Level type of work, and quality of her work product.

45. On March 8, 2019 RAMIREZ received her 2018 performance evaluation; however, the average base pay increase for Sourcing Specialist is 3%, but RAMIREZ only received a 1.5% increase.

46. RAMIREZ's non-Hispanic male counterpart, who transitioned to Sourcing after RAMIREZ, whose quantity and quality of work is similar to Plaintiffs did not receive this low performance rating, had a greater Compa-Ratio and base salary increase rewarded for the same time period.

47. On May 10, 2019, RAMIREZ was passed over for promotion in favor of her less-qualified male caucasian counterpart.

48. On May 10, 2019 PG&E Sourcing Operations Electric Transmission (ET) Portfolio Manager Richard Cordova sent out an all Sourcing Operations email announcement notifying all

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

sourcing operations team members of some internal promotions, including one for RAMIREZ's direct ET Sourcing Specialist team member, a caucasian male.

49.     The only other two ET team members that report directly to ET Supervisor Janetta Tarter are Plaintiff and one other Latina female, both of whom were passed over for the promotion.

50.     RAMIREZ was passed over for promotion even though her Supervisor told her in her first quarter "performance check-in conversation" that RAMIREZ was on the path to be promoted to Senior.

51.     Approximately one month after that first quarter "performance check-in conversation" Plaintiff's Supervisor called RAMIREZ to collect qualifying information about RAMIREZ's current job duties and additional details where RAMIEREZ was going above beyond in her role supporting the assigned Lines of Business because she had to build a business case for RAMIREZ's promotion to Senior.

52.     Defendant gave RAMIREZ no explanation either before or after the promotions were announced as to why she was passed over for promotion.

53.     The Senior vacancy that was filled in the May 10, 2019 promotion was not an open job posting available to all internal candidates, and was not subjected to a formal application process.

54.     Defendants made no effort to clearly state the requirements for Plaintiff to obtain promotion, other than ambiguous statements about taking on additional duties that Plaintiff was already performing.

55.     The tasks Plaintiff currently performs are nearly identical those performed Plaintiff's caucasian male team mate who was promoted on May 10, 2019.

9

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

56. Plaintiff has additional Senior-level tasks that her male caucasian counterpart has still not performed at all and Plaintiff performed some of the Senior-level tasks prior to her caucasian male counterpart performing such tasks.

57. Plaintiff even trained her caucasian male counterpart on several of the Senior-level tasks, and has been a regular resource and subject matter expert in sourcing operations functions and information to him prior to him being promoted.

58. RAMIREZ has been denied equal pay, has been discriminated against because of her race and gender.

59. RAMIREZ has also been retaliated against for filing hotline complaints alleging conduct unlawful under the FEHA, and for attempting to resolve race and gender disparities in the workplace.

60. On April 3, 2019 RAMIREZ filed a complaint with the Department of Fair Employment and Housing (DFEH) alleging retaliation, equal pay violations sex discrimination, and race discrimination, and the DFEH issued RAMIREZ a right-to-sue notice.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA EQUAL PAY ACT**
**(Cal. Lab. Code §1197.5)**
**(Alleged by Plaintiff against all Defendants)**

61. As a first, separate and distinct cause of action, Plaintiff complains of Defendants, and for a cause of action alleges:

62. Defendants have paid RAMIREZ substantially less than her male counterparts for substantially similar work.

63. In paying RAMIREZ less than her male counterparts for substantially similar work, Defendants violated California Labor Code Section employment on or about October 27. 2017.

64. Defendants have paid RAMIREZ less than her male counterparts for substantially similar work without a legitimate business reason; the disparity is not based on seniority.

10
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

65. Defendants have paid RAMIREZ less than her male counterparts for substantially similar work without a legitimate business reason; the disparity is not based on merit.

66. Defendants have paid RAMIREZ less than her male counterparts for substantially similar work without a legitimate business reason; the disparity is not based on a system that measures production.

67. Defendants have paid RAMIREZ less than her male counterparts for substantially similar work without a legitimate business reason; the disparity is not based on a "bona fide factor other than sex, race, or ethnicity."

68. As a proximate result of Defendant's wrongful acts, Plaintiff has suffered and continues to suffer substantial losses incurred in seeking substitute employment and in earnings, bonuses, seniority, leave accruals, retirement contributions and other employment benefits; and has suffered and continues to suffer emotional distress in an amount according to proof at the time of trial.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

## SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE FEHA
### (Alleged by Plaintiff against all Defendants)

69. As a second, separate and distinct cause of action, Plaintiff complains of Defendants, and for a cause of action alleges:

70. The factual allegations of Paragraphs 1 through 68 above, are re-alleged and incorporated herein by reference.

71. Jurisdiction is invoked pursuant to Cal. Gov. Code § 12965, as amended, seeking injunctive relief and damages for violations of the Plaintiff's employment rights as protected by the FEHA, Cal. Gov. Code § 12940, et seq., which prohibits retaliation against an employee for

11
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

making complaints and protesting or refusing to participate in discriminatory employment practices prohibited by the FEHA.

72.   Plaintiff is an employee of Defendants and is a person protected by the provisions of the FEHA as she engaged in the protected activity by complaining of discrimination.

73.   Defendants are employers, covered by and subject to the FEHA, as they are doing business in the State of California, County of Sacramento, and have at least five (5) employees.

74.   As alleged herein, Plaintiff engaged in protected activity, including making multiple complaints of unlawful activities as set forth above.

75.   Following Plaintiff's protected activity, she was subjected to a pattern of adverse employment actions, including unreasonably poor performance evaluations and disparity in pay, limiting Plaintiff's ability to promote and impacting her long-term career trajectory and benefits.

76.   At all relevant times, Defendants and its supervisors, agents, and/or officers, engaged in and/or ratified by their actions and/or inaction through their employees and/or supervisors, acts of retaliation against based upon Plaintiff's protected activities.

77.   In so doing the act and engaging in the activities alleged herein, Defendants, through their officers, employees, and agents, did intend to retaliate against Plaintiff for her exercise of rights under the FEHA and cause Plaintiff to suffer severe emotional and psychological distress, pain suffering, humiliation, loss of enjoyment of life, and loss of self-esteem.

78.   As a direct and proximate result of the willful, knowing, and intentional retaliation by Defendant, Plaintiff has suffered and continues to suffer the loss of earnings and related employment benefits, mental distress, anguish, and indignation. She is thereby entitled to general and compensatory damages in an amount to be proven at trial.

79.   Defendants, through its officers, managing agents, employees and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above.

12
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

80. As pleaded above, Plaintiff has duly exhausted her administrative remedies.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

### THIRD CAUSE OF ACTION
### SEX/GENDER DISCRIMINATION (DISPARATE TREATMENT)
### (Cal. Gov. Code § 12900, *et seq.*)
### (Alleged Against Defendant REGENTS and DOES 1-10)

81. As a third, separate and distinct cause of action, Plaintiff complains of Defendants, and for a cause of action, alleges:

82. The factual allegations of Paragraphs 1 through 81 above, are re-alleged and incorporated herein by reference.

83. The FEHA (Cal. Gov. Code § 12940(a)) provides that it is an unlawful employment practice for an employer, because of the sex of any person to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

84. Plaintiff is a member of a class protected by FEHA: she is female.

85. As demonstrated above, Plaintiff RAMIREZ performed the duties of her job competently, and at the time she suffered the adverse employment actions set forth above, was qualified and competent to perform the essential job functions of her position.

86. Defendants, through their agents and employees, engaged in a pattern and practice of unlawful sex/gender discrimination in violation of FEHA in connection with its disparate treatment of Plaintiff, and the terms and conditions of her employment, including paying Plaintiff less than her male counterparts for substantially similar work.

87. Defendants further engaged in a pattern and practice of unlawful sex/gender discrimination in violation of FEHA in connection with its disparate treatment of Plaintiff, and the terms and conditions of her employment, including promoting Plaintiff's less-qualified male counterpart without a competitive process.

13
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

88. At all relevant times, Defendants and their supervisors, agents, and/or officers, engaged in and/or ratified by their actions and/or inaction through their employees and/or supervisors, acts of discrimination against Plaintiff RAMIREZ based upon her protected class.

89. As a direct result of the acts and conduct of Defendants as alleged herein, Plaintiff RAMIREZ has suffered a loss of earnings and related employment benefits in an amount to be proven at trial herein.

90. As a direct and proximate result of the willful, knowing, and intentional discrimination against her, Plaintiff has suffered mental distress, anguish, and indignation. She is thereby entitled to general and compensatory damages in an amount to be proven at trial.

91. Defendants, through its officers, managing agents, employees and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above.

92. As pleaded above, Plaintiff has duly exhausted her administrative remedies, obtaining a Right to Sue.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

## FOURTH CAUSE OF ACTION
### RACE DISCRIMINATION
#### (Cal. Gov. Code § 12900, *et seq.*)
#### (Alleged Against All Defendants)

93. As a fourth, separate and distinct cause of action, Plaintiff complains of Defendants, and for a cause of action, alleges:

94. The factual allegations of Paragraphs 1 through 92 above, are re-alleged and incorporated herein by reference.

95. The FEHA (Cal. Gov. Code § 12940(a)) provides that it is an unlawful employment practice for an employer, because of the race of any person to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

14
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

96. Plaintiff is a member of a class protected by FEHA: she is Hispanic.

97. As demonstrated above, Plaintiff RAMIREZ performed the duties of her job competently, and at the time she suffered the adverse employment actions set forth above, was qualified and competent to perform the essential job functions of her position.

98. Defendants, through their agents and employees, engaged in a pattern and practice of unlawful race discrimination in violation of FEHA in connection with its disparate treatment of Plaintiff, and the terms and conditions of her employment, including paying Plaintiff less than her non-Hispanic counterparts for substantially similar work, and giving unsubstantiated lower performance evaluations based on race.

99. Defendants, through their agents and employees, engaged in a pattern and practice of unlawful race discrimination in violation of FEHA in connection with its disparate treatment of Plaintiff, and the terms and conditions of her employment, including promoting Plaintiff's less qualified Caucasian counterpart, without a competitive process.

100. At all relevant times, Defendants and their supervisors, agents, and/or officers, engaged in and/or ratified by their actions and/or inaction through their employees and/or supervisors, acts of discrimination against Plaintiff RAMIREZ based upon her protected class.

101. As a direct result of the acts and conduct of Defendants as alleged herein, Plaintiff RAMIREZ has suffered a loss of earnings and related employment benefits in an amount to be proven at trial herein.

102. As a direct and proximate result of the willful, knowing, and intentional discrimination against her, Plaintiff has suffered mental distress, anguish, and indignation. She is thereby entitled to general and compensatory damages in an amount to be proven at trial.

103. Defendants, through its officers, managing agents, employees and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above.

104.   As pleaded above, Plaintiff has duly exhausted her administrative remedies, obtaining a Right to Sue.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

## PUNITIVE DAMAGES

105.   The conduct of Defendants described hereinabove was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

106.   Defendants, through its officers, managing agents, employees and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above.  By reason thereof, Plaintiff is entitled to an award of punitive damages in an amount according to proof at the time of trial sufficient to punish Defendants and deter such wrongful conduct in the future.

107.   Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is thus entitled to recover nominal, actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial, in addition to any other remedies and damages allowable by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this Court;

2. For special damages in amounts according to proof;

3. For punitive damages against the individual Defendants, but not PG&E, in amounts according to proof;

4. For back pay and benefits;

5. For front pay and benefits;

16
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

6. For damages to future earning capacity;

7. For attorneys' fees as provided by law;

8. For interest as provided by law;

9. For costs of suit herein; and

10. For a mandatory injunction requiring Defendant PG&E to (a) institute, maintain and report to the Court effective measures to train and monitor PG&E employees in the mandates of the FEHA and the prohibitions on discrimination, and retaliation; and

11. Such other and further relief as the Court deems fair and just.

Dated: May 22, 2019                                    SMITH PATTEN

_____
DOW W. PATTEN
Attorney for Plaintiff
ANGELA RAMIREZ

**JURY DEMAND**

Plaintiff hereby demands trial by jury of all matters so triable.

Dated: May 22, 2019                                    SMITH PATTEN

_____
DOW W. PATTEN
Attorney for Plaintiff
ANGELA RAMIREZ

17
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## <u>VERIFICATION</u>

I, ANGELA RAMIREZ, am the named Plaintiff in this matter and I have read the foregoing First

Amended Complaint for Damages and Injunctive Relief. I verify under penalty of perjury of the

laws of the State of California that the foregoing allegations contained in the Complaint for

Damages and Injunctive Relief, are true and accurate to the best of my present knowledge,

except as to those allegations made upon information and belief and as to those allegations I

believe them to be true.

DATED: May _23_ 2019

*Angela Ann Ramirez*
ANGELA RAMIREZ

18
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF