KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

LITTLER MENDELSON P.C.
Elisa Nadeau (#199000)
(enadeau@littler.com)
50 West San Fernando Street, 7th Floor
San Jose, CA 95113
Tel: 408 961 7119
Fax: 408 516 8313

*Attorneys for the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' OPPOSITION TO MOTION FOR RELIEF FROM ORDER OF SPIRO JANNINGS**<br><br>**Related to Docket Nos.:** 11829 and 11871<br><br>**Hearing Information:**<br>Date: March 2, 2022<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors**" or "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), respectfully submit this opposition (the "**Opposition**") to the *Motion for Relief from Order* [Docket No. 11871] (the "**Motion**"), filed by Spiro Jannings ("**Jannings**") on January 26, 2022. By the Motion, Jannings seeks relief pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure (the "**Civil Rules**") (made applicable by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")), from the *Order Disallowing and Expunging Claim No. 58462, Filed October 17, 2019, of Spiro Jannings* [Docket No. 11829] (the "**Disallowance Order**") entered on January 14, 2022. The Disallowance Order disallowed and expunged proof of claim number 58462 (the "**Jannings Claim**"), filed by Jannings, pursuant to the *Reorganized Debtors' Objection to Claim (Claim No. 58462, Filed October 17, 2019, of Spiro Jannings)* [Docket No. 11388] (the "**Claim Objection**").[1] In support of this Opposition, the Reorganized Debtors submit the declaration of Jane Kim (the "**Kim Declaration**") and the declaration of Elisa Nadeau (the "**Nadeau Supplemental Declaration**"), each filed contemporaneously herewith, and the accompanying Memorandum of Points and Authorities.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Claim Objection.

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Jannings was terminated as an employee of PG&E in 2015, after he was reported for making a sexually violent threat against a female supervisor, and after PG&E investigated that report. Jannings admits in his own Superior Court complaint[2] that this report and ensuing investigation were the basis for his termination. The Jannings Claim, in the amount of $1 million, is based on an alleged breach of contract arising from Jannings' termination. PG&E objected to the Jannings Claim and raised three legal arguments in the Claim Objection upon which it should be disallowed as a matter of law: (1) as a Union employee covered by the CBA, Jannings' claims are preempted under section 301 of the Labor Management Relations Act, pursuant to which the Union commenced a grievance and ultimately agreed that Jannings' discipline had been issued for just cause; (2) Jannings failed to pursue his exclusive remedy of a Hybrid Section 301 claim within the six-month period provided under the LMRA, and therefore his claims are barred forever; and (3) the face of Jannings' complaint, which is the basis of his proof of claim, establishes good cause to terminate his employment.

To date, despite multiple filings before this Court, Jannings has failed to articulate, even on a summary basis, a single argument to counter PG&E's legal bases for disallowance of his claims, either before this Court or the Superior Court – that failure is fatal to any request for reconsideration he could make under Rule 59(e). Instead, Jannings' Motion continues a pattern that began in the Superior Court and led to his being sanctioned twice in that court – the use of legal strategies to delay. Those deliberate legal strategies – and not any neglect, excusable or otherwise – led directly to the Court appropriately entering the Disallowance Order disallowing the Jannings Claim, after Jannings not only failed to respond by the deadline, but also affirmatively declined to object to entry of the Disallowance Order when directly invited by the Court.

No Bankruptcy Rule (or Civil Rule) permits Jannings to set aside the Court's order, where Jannings' failure to file any response to the Claim Objection – which he had known to be pending for three months – was a decision made after his failed attempt to stay briefing on the Claim Objection

---

[2] Complaint by Spiro Jannings, filed August 24, 2017 in *Jannings v. Pacific Gas and Electric*, Santa Clara County Superior Court Case No. 17CV315033 (the "**State Court Action**").

through his late-filed abstention motion. Neither Rule 59(e) nor Rule 60(b) entitles Jannings to relief from the Disallowance Order, which is a final judgment that resolved, disallowed, and expunged the Jannings Claim on the merits, based on the factual evidence and legal arguments presented in the Claim Objection, after Jannings elected not to file a response or otherwise oppose entry of the Disallowance Order.

The absurd result that Jannings urges is this: In the face of a claim objection, a claimant may *choose* not to respond, allow the Court to enter an order sustaining the objection, and reserve for himself the ability to have the claim reinstated and even receive an additional 75 days after the reinstatement to conjure a rebuttal. This outcome is clearly prejudicial to the Reorganized Debtors, who are working diligently to reconcile and resolve tens of thousands of claims, and a complete waste of the Court's time. It should not be countenanced. Accordingly, the Court should deny Jannings' Motion.

## FACTUAL BACKGROUND

### A. The Claim Objection[3]

The Reorganized Debtors filed the Claim Objection on October 8, 2021. The Objection was supported by the declarations of Kathy Ledbetter [Docket No. 11389], James Leonard [Docket No. 11390], and Elisa Nadeau [Docket No. 11391] (together, the "**Declarations**"), and a Request for Judicial Notice [Docket No. 11392]. A Notice of Hearing with respect to the Objection [Docket No. 11393] stated in clear, bold type: "If there is no timely Response, the Bankruptcy Court may enter an order granting the Objection and disallowing and expunging the Proof of Claim by default without a hearing." The Objection, the Notice of Hearing, the Declarations, and the Request for Judicial Notice were served on Jannings, through his counsel in the State Court Action, as described in the *Certificate of Service of Sonia Akter*, filed on October 13, 2021 [Docket No. 11417].

Jannings' bankruptcy counsel first approached counsel for the Reorganized Debtors on October 23, 2021, three days before the initial response deadline on the Claim Objection, to request a continuance of the response deadline, explaining that he had recently been retained as bankruptcy counsel by Jannings. As a courtesy, the Reorganized Debtors agreed to continue the response deadline

---

[3] Rather than include a duplicative recitation of facts here, PG&E incorporates by reference the factual background in the Claim Objection and rely on the three supporting declarations and request for judicial notice that accompanied the Claim Objection in support of the arguments set forth herein.

and hearing date for three months. By agreement of the parties, the response deadline on the Claim Objection was continued to January 4, 2022, at 4:00 p.m., and the hearing was continued to January 18, 2022, at 10:00 a.m. [Docket No. 11488].

Counsel for Jannings also suggested that the Claim Objection was subject to mandatory abstention and requested that the Reorganized Debtors consider agreeing to abstention and to have the Jannings Claim resolved through the State Court Action. On December 7, 2021 – 28 days before Jannings' response to the Claim Objection was due – counsel for the Reorganized Debtors declined the request for abstention, on the basis that mandatory abstention is not appropriate here and that this Court was the appropriate forum to hear the Claim Objection.

Counsel for the Reorganized Debtors did not hear further from Jannings' counsel until December 28, 2021, when Jannings filed a *Motion to Dismiss and Abstain* [Docket No. 11753] (the "**Abstention Motion**"), which requests that the Court abstain from adjudicating the Jannings Claim but does not respond to any of the arguments raised in the Claim Objection. The Abstention Motion has not been set for hearing.

On December 30, 2021, Jannings filed the *Ex Parte Application to Enlarge Time* [Docket No. 11768] (the "**Motion to Extend Time**"), seeking to continue indefinitely and vacate the response deadline and hearing date with respect to the Claim Objection, on the basis that the Abstention Motion (which had not then, and still has not, been set for hearing) should be briefed and heard first. On December 31, 2021, the Reorganized Debtors opposed the Motion to Extend Time [Docket No. 11775] (the "**Opposition to Motion to Extend Time**"), arguing that it was inappropriate to permit Jannings to bypass his obligation to respond to the Claim Objection by virtue of an Abstention Motion and emergency request for continuance that were both filed during the week between Christmas and New Year's. That same day, the Court issued a docket text order denying the Motion to Extend Time for the reasons stated in the Opposition to Motion to Extend Time and keeping the hearing on the Objection on the January 18, 2022, calendar.[4]

---

[4] The Court's docket text order underscores how Jannings' defense of excusable neglect is baseless: "The Motion to Extend Time filed by Spiro Jennings [sic] (#11768) is DENIED for the reasons stated by Debtors (#11775). The Motion to Abstain that Mr. Jennings [sic] filed (#11753) was not even set for hearing; the Objection to his claim was filed nearly three months ago. The Objection will remain on the January 18, 2022, calendar unless Debtors agree to continue it." Dec. 31, 2021 Docket Text Order.

On December 31, 2021, following the Court's denial of the Motion to Extend Time, counsel for the Reorganized Debtors received an e-mail from bankruptcy counsel for Jannings, requesting an unspecified extension of the time for Jannings to respond to the Claim Objection. Within an hour, counsel for the Reorganized Debtors responded by asking how much time Jannings needed and telling him that while the Reorganized Debtors might be amenable to a short extension of the response deadline, they were unlikely to agree to further continue the hearing on the Claim Objection. That same day, Jannings' bankruptcy counsel stated that he would inquire with Jannings' employment counsel as to how much time was needed. Counsel for the Reorganized Debtors did not hear further from counsel for Jannings with respect to his request for an extension. *See* Docket No. 11806. The deadline to file a response or opposition to the Claim Objection passed on January 4, 2022, and Jannings did not file any response to the Claim Objection.

### B. Entry of the Disallowance Order

On January 11, 2022, seven days after the response deadline, having received no further communication from Jannings' counsel, the Reorganized Debtors filed the *Request for Order By Default as to Reorganized Debtors' Objection to Claim (Claim No. 58462, Filed October 17, 2019, of Spiro Jannings* [Docket No. 11806] (the "**Request for Order**"). The Request for Order included a declaration of counsel, which provided a detailed description of the events leading to Jannings' failure to respond to the Claim Objection, with correspondence between counsel for Jannings and counsel to the Reorganized Debtors attached as an exhibit. The Request for Order was served on Jannings' bankruptcy counsel by ECF and on his state court counsel by e-mail and first class mail. *See* Docket No. 11838.

On January 13, 2022, the Court's judicial assistant, Ankey Thomas, e-mailed counsel for Jannings, copying counsel for the Reorganized Debtors. Ms. Thomas wrote, regarding the Request for Order: "Judge Montali has been asked to sign the default order disallowing Mr. Spiro Jannings' claim and taking the matter off the January 18 calendar. Please advise if you have any objection." Only seven minutes later, counsel for Jannings responded: "Following the entry of a default Order, we intend to

move for relief under Rules 60 and 59."[5] The Disallowance Order was signed and filed by the Court that same day and entered on the docket in the Chapter 11 Cases the next day, January 14, 2022.

## ARGUMENT

Although Jannings cites three statutory bases for the relief he requests – Civil Rule 60(b)(1), Civil Rule 60(b)(6), and Civil Rule 59(e) – he dedicates his entire argument to Civil Rule 60(b)(1), focusing exclusively on "excusable neglect" as the reason he argues reconsideration is warranted here. *See generally* Mot. 5-7. Jannings bears the burden of presenting facts demonstrating excusable neglect. *See In re Contessa Liquidating Co.*, No. 2:11-bk-13454-PC, 2012 Bankr. LEXIS 2678, at *18 (Bankr. C.D. Cal. June 13, 2012) ("The burden of presenting facts demonstrating excusable neglect is on the movant.") (denying reconsideration motion); *see also In re Pac. Gas & Elec. Co.*, 311 B.R. at 89, 91 (creditor failed to discharge its burden of demonstrating "excusable neglect").[6] Jannings falls well short of even demonstrating neglect, let alone that such neglect was excusable.

### A. Jannings' Failure to File a Response to the Claim Objection Was A Deliberate Choice, Not Neglect

As a threshold matter, Jannings has failed to show that the reason he did not respond to the Claim Objection was *neglect*, as opposed to a deliberate litigation strategy. The latter is not excused by Civil Rule 60(b)(1): "Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret through subsequently-gained knowledge that corrects the erroneous legal advice of counsel." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006). "For purposes of [Civil Rule 60(b)(1)], parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel." *Id.*

The facts here demonstrate that the acts and omissions taken by Jannings following the Reorganized Debtors' objection to his claim were a deliberate litigation strategy, albeit ill-considered and ultimately unsuccessful. *See Belcastro v. Kelly*, No. NV-19-1008-LBKu, 2019 Bankr. LEXIS 3261, at *19 (B.A.P. 9th Cir. Oct. 15, 2019) (intentional failure to act is not neglect). Jannings, through his counsel, ***chose*** to file his Abstention Motion and Motion to Extend rather than prepare a response to the

---

[5] A copy of the e-mail exchange of January 13, 2022, between Ms. Thomas and counsel for Jannings is attached to the Kim Declaration as Exhibit A.

[6] Jannings similarly fails to carry his burden under Civil Rule 59(e). *See, e.g., 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *see also infra* at 9-10.

Claim Objection. The "neglect" that led to Jannings' counsel waiting until December 6 to follow up on his abstention request – whether or not excusable – still would have given Jannings twenty-eight days to prepare a timely response to the Claim Objection (or seek a continuance in connection with an abstention request) after PG&E's counsel responded the following day. That is, at that point, Jannings had more time to respond to the Claim Objection than he would have been entitled to under the Bankruptcy Rules and this Court's Local Bankruptcy Rules (which only require 16 days to respond to a claim objection). See Fed. R. Bankr. P. 3007(a)(1); L.B.R. 3007-1(c).

As for the "neglect" that led to the eleventh-hour filing of the Abstention Motion on December 28, the Court has already addressed the inexcusableness of that late filing in its December 30 denial of Jannings' Motion to Extend. In its opposition to the Motion to Extend, the Reorganized Debtors argued – and the Court, by its Docket Text Order, agreed – that:

> It is not reasonable for Jannings to have waited months while the Claim Objection is pending, only to demand an indefinite continuance of both the response deadline and hearing on the Claim Objection, on an emergency basis, during the week between Christmas and New Year's, when PG&E personnel and their attorneys are out of the office. Jannings could have brought his Abstention Motion or requested a continuance of the Claim Objection weeks ago,[7] rather than troubling the Court and PG&E with an "emergency" the day before New Year's Eve that is entirely of his own making.[8]

Docket No. 11775 at 2-3.

But even if the lateness of the Abstention Motion constituted "excusable neglect" – which it does not – any such neglect ends at the time of that filing. From that point on, Jannings' failures to oppose the Claim Objection are entirely intentional decisions. There is no doubt that Jannings and his counsel were aware of the deadline to respond to the Claim Objection; that is the reason for the last-minute Motion to Extend as well as his counsel's initial open-ended request for an extension on December 31. There is also no doubt that Jannings *elected* to allow the response deadline to pass without filing even a preliminary response to the Claim Objection. Jannings and his counsel admit as much. *See* Furstman

---

[7] Indeed, Jannings could have brought his Abstention Motion at any time in the past two years since he filed his proof of claim and submitted to the jurisdiction of the Bankruptcy Court.

[8] This delay is particularly unnecessary because the Abstention Motion is unsupported by any new evidence—it relies nearly entirely on the Claim Objection for its relevant facts.

Declaration at ¶ 8 ("I thought an appropriate amount of time to prepare a substantive response would be about 75 days, which was clearly beyond the amount of time to which PG&E would consent.").[9]

The January 13 e-mails between chambers and Jannings' counsel should completely foreclose any neglect argument by Jannings: even when explicitly invited by the Court to do so, his counsel declined to oppose the entry of the Disallowance Order. The fact that Jannings made "a litigation decision . . . that he now regrets" (*i.e.*, he directed his legal resources to the Abstention Motion and opted not to file any opposition to the Claim Objection) does not make Rule 60(b)(1) relief available to him. *Adams v. Ziebarth (In re Adams)*, No. CC-19-1030-TaLS, 2019 Bankr. LEXIS 3684, at *10 (B.A.P. 9th Cir. Nov. 26, 2019) (citing *Latshaw*, 452 F.3d at 1101).

### B. Even If Jannings' Failure to Respond Were Neglect, It Is Not Excusable

To determine whether a claimant demonstrates "excusable neglect," the Supreme Court instructs courts that Civil Rule 60(b)(1) relief is *only* appropriate after considering "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993); *In re Pac. Gas & Elec. Co.*, 311 B.R. 84, 89 (Bankr. N.D. Cal. 2004) (Montali, J.) (applying *Pioneer*). None of the four *Pioneer* factors support setting aside the Disallowance Order.

First, notwithstanding Jannings' proclamations to the contrary, reinstating the Jannings Claim would substantially prejudice the Reorganized Debtors. *See Contessa*, 2012 Bankr. LEXIS 2678, at *21 ("[T]he court must examine the adverse effect, if any, that granting [the] Motion will have on the debtor and the administration of the case."). The Reorganized Debtors are entitled to rely on the finality of this Court's existing orders, as they work to reconcile the tens of thousands of claims that were filed in these Chapter 11 Cases. *See id.* (untimely response to omnibus objection would be "prejudicial" and

---

[9] Jannings does not argue in the Motion that Mr. Furstman's health issues were responsible for any of his delays. Nevertheless, it is unfortunate that Jannings' counsel did not inform the Reorganized Debtors' counsel earlier of any related concerns. Had Jannings' counsel advised the Reorganized Debtors' counsel prior to the response deadline that he required additional time to prepare a response to the Claim Objection because of Mr. Furstman's medical issues – of which the Reorganized Debtors were unaware – PG&E of course would have been amenable to making reasonable accommodations.

"adversely affect [debtor]'s assessment of its liabilities under the confirmed [p]lan"); *In re Pac. Gas & Elec. Co.*, 331 B.R. at 918 (debtors are "entitled to finality").

Jannings implies (without support) that the Reorganized Debtors will not suffer prejudice because they have not addressed the Jannings Claim on the merits. *See* Mot. at 6. Jannings' argument that the Claim Objection and the Disallowance Order were not based on the merits is wrong. *See Nations First Capital, LLC v. Decembre (In re Nations First Capital, LLC)*, 2020 Bankr. LEXIS 1541, at *16 (9th Cir. B.A.P. June 5, 2020) (disallowance "***necessarily requires*** the court to evaluate the merits of a claim") (emphasis added); *see also In re PT-1 Communs., Inc.*, 412 B.R. 85, 91-96 (Bankr. E.D.N.Y. 2009).

Indeed, in the Claim Objection, the Reorganized Debtors set forth clear legal arguments as to why the Jannings Claim must be dismissed as a matter of law. Thus, the Court's Claim Objection and the Disallowance Order were **on the merits** – not by default – and Jannings' argument that he would suffer "total and complete" prejudice if the disallowance of the Jannings Claim were to stand, Mot. at 6, is therefore baseless. Further argument on the merits is not permitted under Civil Rule 60(b). *See Casey v. Albertson's Inc.*, 362 F.3d 1254, 1261 (9th Cir. 2004) ("As the merits of a case are not before the court on a Rule 60(b) motion, this claim fails as well.").[10]

Second, the length of delay here is substantial. Although Jannings filed the Motion twelve days after the entry of the Disallowance Order, that was already twenty-two days after the extended deadline to respond to the Claim Objection, and ninety-two days after the initial deadline to respond to the Claim Objection. Jannings now states that he requires an additional *seventy-five* days to prepare a response to a Claim Objection that has already been pending for over four months (and would result in a new hearing on the Claim Objection eight months after it was filed). This delay is unjustifiable and unreasonable.

Third, Jannings fails to articulate any legitimate reason to justify his failure to respond timely to the Claim Objection. "As the Court in *Pioneer* noted, the requirement that the neglect be 'excusable' is what 'will deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of

---

[10] Even if Jannings were entitled to argue the merits under Rule 59(e), he is not entitled to reconsideration, as discussed below. Moreover, his own employment counsel's admitted failure to date "to understand the legal arguments so as to frame an effective response," Furstman Decl. ¶ 8, cannot constitute "prejudice" that supports a finding of "excusable neglect."

winning a permissive reprieve.'" *Dobson v. California*, No. 2:15-cv-9648-ODW(JPR), 2016 U.S. Dist. LEXIS 101287, at *10-11 (C.D. Cal. Aug. 1, 2016) (citing *Pioneer*, 507 U.S. at 395). There is nothing excusable about Jannings' actions in this case, because, as discussed above, his failure to respond was an intentional – albeit misguided – choice. Granting his requested relief therefore would *encourage* parties to ignore the Court's deadlines. That is not the purpose of Civil Rule 60(b)(1). *Id.*

Finally, when viewed in the totality of the circumstances surrounding his claims against the Utility, Jannings' claim of excusable neglect lacks good faith. Jannings intentionally defaulted on the deadline, and then consented to entry of the Disallowance Order. Those acts are not indicative of simple good faith neglect.

In sum, Jannings cannot establish excusable neglect under the *Pioneer* test. The Court's orders should not be set aside so easily as to render Civil Rule 60(b) meaningless.

### C. Even Under Civil Rule 59(e), the Motion Fails

Nor can Jannings use Civil Rule 59(e) to attack the Claim Objection on the merits. As noted above, Jannings cites Civil Rule 59(e) in his Motion, but he does not make any argument specifically applying that Rule to the relief he seeks. Nevertheless, Jannings' Motion fails under Civil Rule 59(e): First and foremost, Jannings had abundant opportunity to contest the Claim Objection and deliberately refused to file a response. Second, Jannings failed to provide a single substantive argument on the merits to rebut the legal objections to the Jannings Claim raised in the Claim Objection.[11]

Jannings has never addressed PG&E's substantive objection on the merits – indeed, the Motion is devoid of any argument as to the validity of the Jannings Claim.[12] Instead, Jannings' employment counsel admits that "most of the Objection raises questions of labor law which arise when the aggrieved former employee was a member of a union. ***This is not an area of law with which I have any significant background or expertise***, and so it is my sense that ***I would require at least 60 days sufficiently to***

---

[11] Jannings has been aware of these same fatal legal defects for years; before Jannings engaged his current counsel in the State Court Action, in April 2018, counsel for the PG&E advised Jannings as to the fact that the LMRA preempted Jannings' claims and that his claims were barred because he had failed to bring a Hybrid Section 301 claim within the six-month deadline. Nadeau Supplemental Declaration Exhibit A.

[12] Mr. St. James' vague, unsubstantiated statement that "I understand and assume that Spiro has a meritorious defense to the Objection and that his underlying claims has merit," St. James Decl. ¶ 13, both carries no weight and is belied by his own employment co-counsel's remarkable admission that he does not "understand" the arguments raised by in the Claim Objection.

*understand the legal arguments so as to frame an effective response* . . . ." Furstman Decl. ¶ 8 (emphasis added).

Jannings' failure to raise a single argument to counter the Claim Objection is fatal to any request for reconsideration under Civil Rule 59(e). *See Siddiqui v. AG Commun. Sys. Corp.*, 233 F. App'x 610, 612 (9th Cir. 2007) (denying reconsideration outright when motion for summary judgment was unopposed); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (Civil Rule 59(e) motion "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."); *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (listing four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law).[13] His request for relief from the Disallowance Order should therefore be denied.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Reorganized Debtors respectfully request that the Court deny the Motion.

Dated: February 16, 2022

**KELLER BENVENUTTI KIM LLP**
**LITLER MENDELSON P.C.**

By: /s/ *Jane Kim*
      Jane Kim

*Attorneys for the Reorganized Debtors*

---

[13] Although the Motion does not include any specific arguments under Civil Rule 60(b)(6), that Rule also does not entitle Jannings to the relief he requests. Jannings' deliberate actions do not even constitute a cogent excuse, let alone the extraordinary circumstances required by that provision. *See Decembre v. Nations First Capital, LLC (In re Nations First Capital, LLC)*, 851 Fed. App'x 32, 34–35 (9th Cir. 2021) (Rule 60(b)(6) authorizes courts to set aside judgments for "any other reason that justifies relief," but only in rare circumstances where relief is necessary "'to prevent manifest injustice' and 'only where extraordinary circumstances prevented a party from taking timely action'") (collecting cases); *Native Energy Farms, LLC v. Native Energy Farms, LLC*, 745 F. App'x 272, 276 (9th Cir. 2018) (failure to distinguish between alternative requests for relief under Rule 60(b) clauses is fatal to Rule 60(b)(6) motion); *Smith v. Frank*, 1994 U.S. App. LEXIS 1937, at *8 (9th Cir. Nov. 3, 1993) (affirming denial of Civil Rule 60(b)(6) motion because "counsel's neglect does not qualify as a circumstance beyond [a party's] control"); *In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) ("A 'manifest injustice' is defined as 'an error in the trial court that is direct, obvious, and observable . . .'" while the term 'manifest error' is 'an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'").