Rob Bonta
Attorney General of California
Danette E. Valdez, SBN 141780
Annadel A. Almendras, SBN 192064
Supervising Deputy Attorneys General
State Bar No. 192064
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3367
Fax: (415) 703-5480
Danette.Valdez@doj.ca.gov
Annadel.Almendras@doj.ca.gov

PAUL J. PASCUZZI, SBN 148810
NICHOLAS L. KOHLMEYER, SBN 299087
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Fax: (916) 329-7435
ppascuzzi@ffwplaw.com
nkohlmeyer@ffwplaw.com

Attorneys for California Department of Water
Resources, by and through the State Water Project

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| In re: | Bankruptcy Case |
|---|---|
| **PG&E CORPORATION** | No. 19-30088(DM) |
| And | Chapter 11 |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) (Joint Administered) |
| Debtor. | **CALIFORNIA DEPARTMENT OF WATER RESOURCES' OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR ORDER MODIFYING PLAN INJUNCTION AND COMPELLING ARBITRATION** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | Date: March 2, 2022 Time: 10:00 a.m. Place: Courtroom 17 Judge: Dennis Montali |
| X Affects both Debtors | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

    I.    THE COURT SHOULD DENY ARBITRATION BECAUSE IT
          CONFLICTS WITH THE PLAN AND CONFIRMATION ORDER THAT
          EXPRESSLY RESERVE JURISDICTION FOR THE COURT TO
          DECIDE THE EXECUTORY CONTRACT, CURE DISPUTE AND
          CLAIMS ALLOWANCE ISSUES. .......................................................... 5

    II.   PG&E WAIVED THE ARBITRATION PROVISIONS IN THE
          AGREEMENT BY WAITING OVER THREE YEARS TO REQUEST IT,
          TAKING ACTIONS INCONSISTENT WITH AN UNDERSTANDING
          THAT ARBITRATION WAS AN AVAILABLE REMEDY, AND
          SPECIFICALLY PROVIDING THAT THIS COURT SHALL RESOLVE
          THESE ISSUES IN THE PLAN AND CONFIRMATION ORDER.................... 7

    III.  WHETHER DWR EFFECTIVELY TERMINATED FROM THE
          CASTLE ROCK AGREEMENT GOES TO THE CORE ISSUES THAT
          HAVE BEEN RESERVED FOR, AND SHOULD BE DECIDED BY,
          THE BANKRUPTCY COURT RATHER THAN BY ARBITRATION............ 10

    IV.  PG&E's REQUEST TO MODIFY THE PLAN INJUNCTION SHOULD
          BE DENIED FOR LACK OF GOOD CAUSE. .................................................. 14

CONCLUSION .................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adolph v. Coastal Auto Sales, Inc.*
184 Cal.App.4th 1443 (2010) ................................................. 9

*Augusta v. Keehn & Associates*
193 Cal.App.4th 331 (2011) ................................................. 9

*City of Santa Clara v. Watkins*
984 F.2d 1008 (9th Cir. 1993) ............................................. 12

*Crow Winthrop Operating P'ship v. Jamboree LLC (In re Crow Winthrop Operating P'ship)*
241 F.3d 1121 (9th Cir. 2001) ............................................. 12

*Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*
304 F.3d 753 (7th Cir. 2002) ............................................... 9

*Fisher v. A.G. Becker Paribas Inc.*
791 F.2d 691 (9th Cir. 1986) ............................................... 7

*In re Curtis*
40 B.R. 795 (Bankr. D. Utah 1984) ..................................... 14

*In re G.I. Indus., Inc.*
204 F.3d 1276 (9th Cir. 2000) ............................................ 10

*In re Thorpe Insulation Co.*
671 F.3d 1011 (9th Cir. 2012) .......................................... 5, 6

*Inc. v. Superior Court*
79 Cal.App.4th 553 (2000) .................................................. 8

*Jackson v. Donovan*
215 Cal.App.2d 685 (1963) ............................................... 12

*Kaneko Ford Design v. Citipark, Inc.*
202 Cal.App.3d 1220 (1988) ............................................... 9

*Martin v. Yasuda*
829 F.3d 1118 (9th Cir. 2016) ............................................. 7

*Platt Pacific, Inc. v. Andelson*
6 Cal. 4th 307 (1993) ......................................................... 8

ii

# TABLE OF AUTHORITIES
### (continued)

*S. Cal. Gas Co. v. City of Santa Ana*
    336 F.3d 885 (9th Cir. 2003)..................................................................... 13

*Shaw v. Regents of Univ. of Cal.*
    58 Cal. App. 4th 44 (1997) ...................................................................... 11

*Shivkov v. Artex Risk Sols., Inc.*
    974 F.3d 1051 (9th Cir. 2020)................................................................. 6, 7

*Sirius Computer Solutions, Inc. v. AASI Creditor Liquidating Trust*
    2011 U.S. Dist. LEXIS 96460 (S.D. Fla. 2011)...................................... 9

*St. Agnes Medical Center v. PacifiCare of California*
    31 Cal.4th 1187 (2003) ............................................................................ 8

*the West v. Superior Court*
    2 Cal. 4th 1254 (1992) ........................................................................... 11

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*
    871 F.3d 791 (9th Cir. 2017).................................................................. 12

*United States v. Park Place Assocs., Ltd.*
    563 F.3d 907 (9th Cir. 2009).................................................................... 7

*Wagner Construction Co.*, 41 Cal. 4th 19, 22-23 (2007)................................ 8

**STATUTES**

28 U.S.C.
    § 157(b)................................................................................................... 10
    § 157(b)(2) ............................................................................................... 6

Bankruptcy Code
    § 365........................................................................................................ 5
    § 365(b)(1) ............................................................................................... 5

Cal. Civ. Code
    § 1436..................................................................................................... 11
    § 1636................................................................................................. 11, 13
    § 1638................................................................................................. 11, 13
    § 1639..................................................................................................... 11
    § 1642..................................................................................................... 13
    § 1644..................................................................................................... 13
    § 1650..................................................................................................... 12

# TABLE OF AUTHORITIES
### (continued)

Page

**OTHER AUTHORITIES**

Confirmation Order
    Paragraphs 34 ........................................................................................................... 5
    Paragraphs 67(d) ..................................................................................................... 5

PG&E's Plan
    Paragraphs 34 § 8.2(c) ............................................................................................. 5

iv

The California Department of Water Resources ("DWR"), by and through the State Water Project, responds to the Reorganized Debtors' (Pacific Gas & Electric Company and PG&E Corporation, collectively referenced as "PG&E") Motion for an Order Modifying Plan Injunction and Compelling Arbitration ("PG&E Motion"),[1] and requests that it be denied for the reasons explained below. This opposition is supported by the Second Declaration of Ghassan AlQaser ("Second AlQaser Decl.").

## INTRODUCTION

The core dispute for the Court to determine is whether DWR's notice of termination was effective on August 1, 2019, after DWR gave one-year advance notice to PG&E and the other Remaining Cotenants[2] pursuant to the express terms of the Castle Rock co-tenancy agreement ("Castle Rock Agreement" or "the Agreement") entered into by the parties to construct and co-own a double circuit transmission line ("the Line"). If the answer to this question is yes, then DWR is entitled to the refund it seeks in its proof of claim. PG&E attempts to distract from this fundamental dispositive issue with broad and frequently inaccurate descriptions of the terms of the Agreement, most of which are simply irrelevant to the inquiry (as explained further below). However, the Court has jurisdiction to examine the Agreement itself to determine whether to allow or disallow DWR's proof of claim.

The language in Sections 14.3, 14.4 and 14.5 of the Agreement are key to the Court's analysis on the issue of whether DWR effectively terminated its participation in the Agreement. Section 14.3 defines how a party terminates its participation in the Agreement: giving the requisite one-year advance notice to the other parties to the Agreement. Any costs to remove the Line become relevant only if, after DWR gave its notice, the Remaining Cotenants had invoked Section 14.5

---

[1] DWR filed a motion on February 2, 2022, for an order determining that the Castle Rock Agreement with PG&E is not an executory contract that can be assumed because the Agreement terminated prior to Plan Confirmation and that DWR's claim No. 78104 should be paid. Dkt. No. 11887. The motion is currently set for hearing on March 2, 2022. Due to the overlap of issues and to avoid duplication of facts and arguments, DWR incorporates the arguments made in that motion and may cross-reference to facts and argument cited in its motion. References to DWR's motion will be cited as "DWR Motion" and will be to the docket page.

[2] The Remaining Cotenants are Northern California Power Agency ("NCPA") and the City of Santa Clara, doing business as Silicon Valley Power ("SVP").

1

prior to August 1, 2019 and decided to terminate their participation in the Agreement and discontinue operating the Line. PG&E has presented no evidence to show that the Remaining Cotenants had invoked Section 14.5 or have decided to discontinue operating the Line and remove it. Nor can they make such a showing because there are no plans to remove the Line, and removal of the Line is not viable due to its integration into the California grid for reliability and operational use. (See DWR Motion, Decl. of Ghassan AlQaser [AlQaser Decl.], ¶14.) Without a decision by PG&E and the Remaining Cotenants to terminate operating the Line pursuant to Section 14.5, there is no obligation on DWR to pay any removal costs. Therefore, PG&E's demand that DWR pay for speculative removal costs, for a removal that may never occur, before its termination can become effective is nothing more than a poorly guised attempt to extort over $5 million from DWR as a "termination charge" and thwart DWR's exercise of its termination rights under the Agreement. The Federal Energy Regulatory Commission (FERC) prohibits the imposition of a termination charge after a notice of termination has been given. (See PG&E Motion, Decl. of Joshua Levenberg ["Levenberg Decl."], Ex. 5, pp. 5-6, n.6.)

Whether DWR effectively terminated its participation in the Castle Rock Agreement is an issue the Court should decide because the issue falls squarely within the Court's jurisdiction over core issues, including determination of DWR's proof of claim, and the Executory Contract and Cure Dispute issues which were specifically reserved in the Plan and Confirmation Order for this Court to decide. DWR, as one of the California state agencies that filed objections related to the Executory Contract and Cure Dispute issues, negotiated with the Debtors for language in the Confirmation Order to preserve these issues for the bankruptcy court to resolve. Therefore, the Court should retain jurisdiction of them and deny PG&E's request to compel arbitration.

DWR disagrees with PG&E's characterization and interpretation of the Agreement's arbitration clause as a "blanket arbitration provision broadly covering all disputes arising under the [A]greement." (PG&E Motion, p. 6:7-8.) The arbitration provision, Section 13.2, is narrower than PG&E suggests. It applies to disputes that have not been resolved by the Coordinating Committee. (See DWR Motion, p. 21:10-20.) The Coordinating Committee, created under Section 15 of the Agreement, consists of a PG&E representative who will serve as the Chairman, and no more than

2

two representatives appointed by each Cotenant. The Committee serves as a liaison between PG&E and the other cotenants on various issues regarding the performance and operation of the Line, but its critical function central to this Motion is to consider and attempt to resolve disputes arising under the Agreement *before* they are submitted to arbitration pursuant to Section 13 of the Agreement. (See PG&E Motion, Levenberg Decl., Ex. 1, p, 113, Section 15.2.2.)  By requiring that the parties first submit disputes to the Coordinating Committee before arbitration and allowing the Committee up to 45 calendar days to settle the dispute before arbitration can begin, suggests that the dispute resolution procedures were intended to be used to resolve disputes promptly while cotenants were still parties to the Agreement, not years after a party has terminated from the Agreement. Because DWR had terminated its participation in the Agreement effective August 1, 2019, and was no longer a party to the Agreement, it did not participate in the Coordinating Committee meeting recently scheduled for January 14, 2022. (Second AlQaser Decl. ¶6.)

Nevertheless, to the extent the arbitration provisions in the Agreement apply to the parties' dispute, enforcement of the arbitrary provisions is not mandatory as PG&E erroneously contends in its motion. (See PG&E Motion, p. 8:3-5.) The Court must apply general state-law principles of contract interpretation to determine whether the parties agreed to arbitrate disputes like the dispute here. (See DWR motion, pp. 20:15-23.) The Court also has discretion to deny arbitration where it conflicts with the Bankruptcy Code, as it does here because the Court has jurisdiction over core issues. (*Id.*, p. 22:17-24.)

Even assuming that the Court determines that the arbitration provisions apply, DWR contends that PG&E and the Remaining Cotenants have waived their right to arbitration. DWR began discussions with PG&E and the Remaining Cotenants as early as 2014 about its intent to terminate the Agreement. (Second AlQaser Decl. ¶ 3.) The parties continued to have discussions up until DWR's termination became effective on August 1, 2019. (*Id.*)  Between 2014 and January 2022, long after DWR's effective termination, PG&E and the Remaining Cotenants never initiated the dispute resolution procedures specified in the Agreement. (*Id.*)

///

///

3

1    PG&E's actions have also been inconsistent with any understanding that the dispute
2    resolution procedures in the Agreement, including arbitration, applied to the dispute. For example,
3    instead of using the dispute resolution procedures available in the Agreement while DWR was still
4    a party, PG&E requested FERC authorization to revise the language in the Agreement to give itself
5    a litigation advantage. (See DWR Motion, AlQaser Decl., ¶8.) The added language would have
6    required that DWR pay for removal costs as a prerequisite for termination under the Agreement to
7    become effective - the very language that PG&E now argues should be read into the Agreement.
8    (PG&E Motion, Levenberg Decl., Ex. 5, p. 3.) PG&E also requested that the proposed revised
9    language become effective before August 1, 2019, the date when DWR's termination would
10   become effective. (*Id.*, p. 5.) FERC correctly denied PG&E's request, noting that imposing
11   termination charges after a notice of termination has been given is prohibited.  (*Id.*, pp. 5-6.)

12       Even after DWR filed its proof of claim on October 18, 2019, PG&E failed to invoke any
13   of the dispute resolution procedures. Not until now, after DWR agreed to participate in mediation
14   and give PG&E extensions of time to file its claim objections, including the most recent extension
15   until March 23, 2022, PG&E seeks to circumvent the whole bankruptcy claims resolution and
16   executory contract dispute process and force DWR into arbitration without its consent. These
17   actions are inconsistent with an understanding that the arbitration provisions in the Agreement are
18   binding on the parties. Courts in the Ninth Circuit have found waiver of arbitration on shorter delays
19   than the three-year plus delay involved in this case. DWR will be prejudiced if resolution of its
20   proof of claim is sent to arbitration because it has been waiting for a resolution for over three years,
21   incurring costs and attorneys' fees for the FERC, bankruptcy, and other proceedings and relied on
22   the specific provisions on the Plan and Confirmation Order as outlined in the DWR Motion. (*See*
23   DWR Motion at §1 Jurisdiction, pp. 7-8.)

24   ///
25   ///
26   ///
27   ///
28

4

I. **THE COURT SHOULD DENY ARBITRATION BECAUSE IT CONFLICTS WITH THE PLAN AND CONFIRMATION ORDER THAT EXPRESSLY RESERVE JURISDICTION FOR THE COURT TO DECIDE THE EXECUTORY CONTRACT, CURE DISPUTE AND CLAIMS ALLOWANCE ISSUES.**

PG&E argues that enforcement of the parties' arbitration agreement is mandatory as a matter of law and best serves the parties, including Non-Debtors. (PG&E Motion, p. 8:3-5.)[3] This argument ignores the applicable law and is contrary to Section 8.2(c) of the Plan and Paragraphs 34 and 67(d) of the Confirmation Order that specifically provide that this Court shall resolve Cure Disputes and any disputes over the assumption of Executory Contracts involving Governmental Parties, including DWR. (*See* DWR Motion, pp. 7-8.[4])

DWR's Motion lays out the issues before the Court that it can decide under its reserved jurisdiction. (DWR Motion, p. 8.) These issues, including those issues raised by PG&E and the Remaining Cotenants, are intertwined with the executory contract and cure dispute issues that PG&E's Plan and Confirmation Order say this Court shall decide. As noted above, PG&E admits that this is a core proceeding (PG&E Motion, p. 8:14-15.)

In core proceedings, the bankruptcy court has discretion to deny enforcement of an arbitration agreement, if arbitration would conflict with the underlying purposes of the Bankruptcy Code. *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1021 (9th Cir. 2012) (*See* DWR Motion, pp. 22-

---

[3] In its motion, DWR also disputes that the arbitration provisions contained in Section 13.0 of the Agreement apply to the dispute with PG&E and the Remaining Cotenants. DWR contends that the arbitration provisions were intended to apply to disputes while cotenants are still parties to the Agreement because of the requirement that disputes must first be submitted to the Coordinating Committee which must attempt to settle the dispute no later than 45 days after the dispute is submitted. (*See* DWR Motion, p. 21:7-22:1-2.) DWR incorporates those arguments here by reference.

[4] Confirmation Order para. 67(d) in pertinent part says, "**If any Governmental Party disputes (i) that any Potentially Assumed Contract/Lease is in fact an executory contract or unexpired lease** or (ii) any Cure Amount, such Governmental Party shall have no later than ninety (90) days after the Confirmation Date (or such later date as may be mutually agreed upon between the applicable Governmental Party and the Debtors or Reorganized Debtors) to file and serve an objection setting forth such dispute, and **any such dispute shall be resolved by the Bankruptcy Court.**" Confirmation Order para. 34 says, "**Pursuant to Section 8.2(c) of the Plan, in the event of an unresolved dispute regarding** (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, **or (iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be resolved by a Final Order of the Court**, which may be entered after the Effective Date." (emphasis added).

23). A conflict exists here because the Court specifically reserved jurisdiction to resolve Executory Contract and Cure Dispute issues in the Plan and Confirmation Order. Resolution of DWR's claim is also a core proceeding. *See In re Thorpe*, 671 F.3d at 1279-80 ("The filing of a proof of claim is the prototypical situation involving the 'allowance or disallowance of claims against the estate,' a core proceeding under 28 U.S.C, §157(b)(2)"). Therefore, whether DWR effectively terminated from the Agreement is an issue that must be decided to determine whether the Agreement terminated prior to Plan Confirmation and could not be assumed as to DWR, whether the refund that DWR seeks through its proof of claim is valid and whether the claimed amount is an Allowed Claim that should be paid under the Plan.

Retaining jurisdiction to resolve these core issues is consistent with the terms of the Plan and Confirmation Order, will promote the underlying purpose of centralization of the Debtors' legal obligations, and protect DWR from piecemeal litigation. The Court should use its retained jurisdiction and decide these issues which can be resolved as a matter of law by applying applicable contract interpretation rules.

PG&E relies on the Ninth Circuit's decision in *Shivkov v. Artex Risk Sols., Inc*., 974 F.3d 1051 (9th Cir. 2020) that recognizes a presumption in favor of the post-termination survival of arbitration provisions of an underlying agreement. (PG&E Motion, p. 18:12-21.) PG&E's reliance is misplaced for several critical reasons. First, there is a dispute between the parties whether there is a genuine survival clause contained in the Agreement. PG&E contends that the language in Section 14.7 of the Agreement that states that "termination shall not affect rights and obligations of a continuing nature or for payment of money for transactions occurring prior to termination" constitutes a survival clause. (*Id*., p. 19:12-16.) DWR disagrees with this strained reading of Section 14.7 because it does not mention arbitration. The language in Section 14.7 should be read in context with the rights and obligations relevant to that section, none of which relate to any arbitration rights. (See PG&E Motion, Levenberg Decl., Ex. 1 [Doc. 11897-1], pp. 110-111.) Also, Section 13.2, which specifically relates to arbitration, is silent on whether it survives termination. Second, even assuming that Section 14.7 is a survival clause, it is "negated by implication" because the requirement that (a) the cotenants first submit any dispute to the Coordinating Committee (made

6

up of representatives from each cotenant) and (b) there would be a prompt time limit for attempting to reach a resolution, suggests that arbitration was intended to resolve disputes while the cotenants were still parties to the Agreement. See *Shivkov*, 974 at 1060 (the presumption in favor of survival of arbitration provisions can only be negated "expressly or by clear implication [for] matters and disputes arising out of the relation governed by contract.")

Here, PG&E completely bypassed the dispute resolution procedures in the Agreement on July 30, 2019 – just two days before the effective date of DWR's termination – when it filed an application with FERC to amend the Agreement by adding language that would require DWR to pay a share of estimated removal costs as a prerequisite to termination. After FERC denied PG&E's application, PG&E relied on the dispute resolution procedures of its bankruptcy case to resolve the dispute. PG&E did not submit the dispute to the Coordinating Committee until January 14, 2022. (PG&E Motion, Levenberg Decl. ¶8.) PG&E's actions suggest its concession that the arbitration provisions of the Agreement do not survive termination. But even if PG&E's actions do not amount to such a concession, at a minimum its actions weigh in favor of DWR's argument below that PG&E waived any arbitration rights it had under the Agreement.

## II.   PG&E WAIVED THE ARBITRATION PROVISIONS IN THE AGREEMENT BY WAITING OVER THREE YEARS TO REQUEST IT, TAKING ACTIONS INCONSISTENT WITH AN UNDERSTANDING THAT ARBITRATION WAS AN AVAILABLE REMEDY, AND SPECIFICALLY PROVIDING THAT THIS COURT SHALL RESOLVE THESE ISSUES IN THE PLAN AND CONFIRMATION ORDER.

The question of whether a party waived its right to arbitration "is presumptively for a court and not an arbitrator to decide." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) (citation omitted). The Ninth Circuit's decision in *United States v. Park Place Assocs., Ltd*., 563 F.3d 907 (9th Cir. 2009), established the three-part test to determine whether a party has waived its right to arbitrate. Specifically, the party asserting waiver must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Park Place Assocs*., 563 F.3d at 921 (quoting *Fisher v. A.G. Becker Paribas Inc*., 791 F.2d 691, 694 (9th Cir. 1986)). "[I]n the absence

of legal excuse, a party's failure to timely demand arbitration results in a contractual forfeiture of the right to compel arbitration." *Platt Pacific, Inc. v. Andelson*, 6 Cal. 4th 307, 318-19 (1993).

The Court may consider a number of factors to determine whether waiver applies: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether litigation has been substantially invoked and the parties were well into preparation of a lawsuit; (3) whether a party either requested arbitration close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration) had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party. *Wagner Construction Co*., 41 Cal. 4th 19, 22-23 (2007). California applies the same multifactor test employed by nearly all federal courts for evaluating waiver claims. *St. Agnes Medical Center v. PacifiCare of California* 31 Cal.4th 1187, 1196 (2003).

As noted above, DWR started having discussions with PG&E and the Remaining Cotenants as early as 2014 about its intention to terminate its participation in the Agreement. (Second AlQaser Decl. ¶ 3). Approximately four years elapsed between these party discussions and when DWR gave its written notice of termination on July 30, 2018. During this time DWR was still a party to the Agreement and PG&E could have initiated the dispute resolution procedures before the Coordinating Committee prior to requesting arbitration. (See Levenberg Decl., Ex. 1, §§ 13.1, 13.2, pp. 101-103.) PG&E failed to do so. Instead, PG&E took intervening steps to bypass the dispute resolution procedures under the Agreement and went directly to FERC in a failed attempt to force DWR into a new contract by attempting to change the language in Section 14.3 to condition the effectiveness of DWR's termination on the payment of future removal costs. These actions are inconsistent with the right to arbitrate. Even after this lengthy delay, and after DWR's termination became effective on August 1, 2019, PG&E still failed to propose or attempt to initiate the dispute resolution procedures or seek arbitration. Courts have found waiver based on shorter delays. Indeed, other courts have found shorter delays to be unreasonable and justification for a waiver finding. *Guess?, Inc. v. Superior Court* ,79 Cal.App.4th 553, 556 (2000) (less than four months between

8

filing lawsuit and motion to compel arbitration); *Kaneko Ford Design v. Citipark, Inc.*, 202 Cal.App.3d 1220, 1228–1229 (1988) (five and one-half months between filing lawsuit and motion to compel arbitration); *Augusta v. Keehn & Associates*, 193 Cal.App.4th 331, 338-339 (2011) (six and one-half months between filing lawsuit and motion to compel arbitration); *Adolph v. Coastal Auto Sales, Inc*., 184 Cal.App.4th 1443, 1446, 1449, 1451-1452 (2010) (six months between filing lawsuit and demand for arbitration).

Now at the last minute, after three more years passed since DWR gave its written notice of termination and with only weeks left until PG&E's objections to DWR's proof of claim are due,[5] PG&E seeks to compel arbitration. This untimely request is an unwarranted effort to circumvent the Court's reserved jurisdiction in the Plan and Confirmation Order to adjudicate DWR's claim and determine the Cure Dispute amount. This late request prejudices DWR because it cooperated with PG&E throughout this process when it met with PG&E and the Remaining Cotenants to discuss DWR's intent to terminate its participation in the Agreement years before it gave its written termination notice, agreed to PG&E's request for extensions of time to object to its proof of claim, and participated in two mediation sessions pursuant to the ADR procedures established by the Court's ADR Order [Docket No. 9148]. All of these good faith efforts by DWR to resolve the dispute between the parties have led to DWR incurring legal costs, and substantial delay in resolution of its proof of claim for a refund of the operating and maintenance costs that it prepaid to PG&E.

Further, PG&E's confirmed Plan and Confirmation Order specifically provides that this Court shall decide these executory contract and claim resolution issues, as explained in the DWR Motion. This amounts to a waiver of the arbitration clauses in the terminated contract. *See Sirius Computer Solutions, Inc. v. AASI Creditor Liquidating Trust*, 2011 U.S. Dist. LEXIS 96460 (S.D. Fla. 2011) (holding that a party's contractual arbitration rights were superseded by the exclusive jurisdiction provisions of a confirmed plan.); *see also Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753 (7th Cir. 2002) (holding that a party's contractual right to arbitrate

---

[5] The current March 2022 deadline for PG&E to file any claims objections is an extension of the original deadline.

9

based on an arbitration provision was "superseded by the terms of the confirmed plan."). Based on these facts, the Court should deny PG&E's request for arbitration on the grounds that it has waived any arbitration rights it has under the Agreement.

**III. WHETHER DWR EFFECTIVELY TERMINATED FROM THE CASTLE ROCK AGREEMENT GOES TO THE CORE ISSUES THAT HAVE BEEN RESERVED FOR, AND SHOULD BE DECIDED BY, THE BANKRUPTCY COURT RATHER THAN BY ARBITRATION.**

DWR's proof of claim for a refund from PG&E based on its termination from the Castle Rock Agreement on August 1, 2019, is necessarily intertwined with core issues involving executory contracts, cure disputes, and the claims allowance process. (*See* DWR Motion, pp. 22-23.) Both the Plan and Confirmation Order specifically provide that the Court shall resolve disputes involving the assumption of contracts and the allowance of any Claims resulting therefrom. (DWR Motion, pp. 16-17.) When a proof of claim based on a contract is filed, it necessarily follows that the bankruptcy court has authority to examine "the contract itself and the circumstances surrounding its formation" to determine whether to allow or disallow the claim against the estate. *In re G.I. Indus., Inc.*, 204 F.3d 1276, 1280 (9th Cir. 2000).

Here, the key facts are undisputed. PG&E admits that this is a core proceeding pursuant to 28 U.S.C.S. §157(b). (PG&E Motion, p. 8:14-15.) PG&E also admits that DWR gave its one-year notice of termination pursuant to Section 14.3 of the Agreement on July 30, 2018, effective on August 1, 2019. (PG&E Motion, pp. 11:24-25; 12:1.) Although DWR complied with the terms of Section 14.3, DWR first learned that PG&E "rejected" DWR's notice of termination on July 30, 2019, when PG&E went directly to FERC to revise the Agreement, contending that DWR must pay "its proportional share of reasonable estimated costs associated with decommissioning and removal of the Line" before DWR's termination could become effective. (See PG&E Motion, p. 12:1-4; Second AlQaser Decl. ¶5.) The plain language of the Agreement, however, does not support PG&E's and the Remaining Cotenants' argument.[6]

///

---

[6] DWR contends that PG&E's request to FERC for approval to amend the language in the Agreement is itself a concession by PG&E and the Remaining Cotenants that the Agreement does not require payment of removal costs before termination can become effective.

When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. Cal. Civ. Code § 1639. The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity. Cal. Civ. Code § 1638. The language in Section 14.3 of the Agreement regarding termination is unambiguous. Once DWR gave its written notice of termination to PG&E and the Remaining Cotenants, this action triggered Section 14.4 of the Agreement. Section 14.4 states that once any Cotenant gives notice of termination, the other Cotenants "shall determine" if one or more of them wish to keep operating the Line and buy the interest of the terminating Cotenant. (See PG&E Motion, Levenberg Decl., Ex. 1, p. 108, Section 14.4.) Under Section 14.5 of the Agreement, it is *only if the other Cotenants decide not to continue operating the Line* that the obligation arises for a departing Cotenant to pay any proportional share of costs to decommission and remove the Line. (*Id*. pp. 108-109.) In other words, the decision to discontinue operating the Line and remove it is a condition precedent to any departing cotenants' obligation to pay removal costs. "A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Cal. Civ. Code § 1436.  Because the condition precedent here has not been performed (*i.e.*, a decision to discontinue operating the Line), PG&E and the Remaining Cotenants have no right to demand that DWR pay any future removal costs.

PG&E has offered no evidence to establish what determination the other Cotenants made under Section 14.4, but after three years, it can be assumed by their conduct that the Cotenants have decided to continue operating the Line. PG&E has not provided any evidence to the contrary. As stated in DWR's motion, removing the Line is not even a viable option due to its integration into the California grid for reliability and operational use. (DWR Motion, p. 12:22-25.)

Under California law, "[i]f contractual language is clear and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992) (citing Cal. Civ. Code §§ 1636, 1638); see also *Shaw v. Regents of Univ. of Cal*., 58 Cal. App. 4th 44, 54-55, 67 Cal. Rptr. 2d 850 (1997) ("Although the intent of the parties determines the meaning of the contract, the relevant intent is 'objective'—that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." (citations omitted)). The obligation to pay

11

removal costs is only mentioned in Section 14.5. No other section refers to or mentions removal costs. In sum, the language in Section 14.5 is unambiguous as to the events necessary to trigger its applicability, *i.e.*, a decision by all parties to terminate the Agreement and to discontinue operating the Line and remove it. That decision has not occurred, and therefore Section 14.5 does not apply and the analysis should end there. *See Crow Winthrop Operating P'ship v. Jamboree LLC (In re Crow Winthrop Operating P'ship)*, 241 F.3d 1121, 1124 (9th Cir. 2001) ("Under California law, if a contract's terms are unambiguous, a court may interpret the contract without recourse to extrinsic evidence." (citing *City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th Cir. 1993)).

PG&E attempts to distract the Court away from the clear and unambiguous language of the Agreement regarding the requisite procedure for a Cotenant to effectuate termination by citing to general language in Sections 14.5 and 14.6 that states that "[e]ach Cotenant shall be liable for financial obligations incurred by it prior to any termination of this Agreement." (PG&E Motion, p. 12: 14-21.) Again, Section 14.5 does not apply because the Remaining Cotenants have not decided to stop operating the Line. There is also no objective reason to believe that the parties intended "financial obligations" under Section 14.6 to include any obligation to pay removal costs if there was no decision to stop operating the Line and remove it. Certainly, both parties understood the meaning of removal costs and chose to specifically reference it only in Section 14.5. Had the parties intended for a departing Cotenant to pay for future removal costs even if the remaining Cotenants intended to continue operating the Line, they would have specifically referenced removal costs in both sections of the Agreement. The fact they did not do so is telling and makes logical sense, as removal costs could not be incurred without removing the Line. A more logical explanation for the meaning of the term "financial obligations" that can be incurred prior to termination is that the term refers to those ongoing costs for operation and maintenance.

Because only Section 14.5 specifically refers to "removal costs," it prevails over the more general provisions relating to "financial obligations." Cal. Civ. Code §1650 provides that specific provisions in an agreement prevail over general provisions that are inconsistent with it. *Jackson v. Donovan*, 215 Cal.App.2d 685, 691, 30 Cal. Rptr. 755 (1963). It is a "standard rule of contract interpretation" that "specific terms control over general ones." *See United States ex rel. Welch v.*

12

1  *My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 797 (9th Cir. 2017) (quoting *S. Cal. Gas Co.*
2  *v. City of Santa Ana*, 336 F.3d 885, 891 (9th Cir. 2003).)  Thus, removal costs can be incurred only
3  if all parties decide to terminate and discontinue operation of the Line pursuant to Section 14.5.

4        Finally, DWR's separate transmission services agreement with NCPA and SVP (which
5  PG&E, NCPA, and SVP have often referred to as "the Layoff Agreement") allowing NCPA and
6  SVP the right to use 55 MW of transmission service from the allocated share of DWR's ownership
7  interest is of no consequence to whether DWR effectively terminated the Castle Rock Agreement.
8  Therefore, the Court need not consider it to decide the core issues before it.

9        Nevertheless, PG&E's argument that DWR could not terminate the Castle Rock Agreement
10  because of the agreement with NCPA and SVP is absurd. The goal of contract interpretation is to
11  ascertain the parties' mutual intent at the time of contracting. Cal. Civ. Code, § 1636. The mutual
12  intent of the parties is determined by the words used in the agreement, which are to be understood
13  in their ordinary and popular sense. Cal. Civ. Code, § 1644.  A court must interpret a contract in a
14  manner that is reasonable and does not lead to an absurd result.  Cal. Civ. Code § 1638. Several
15  contracts relating to the same matters, between the same parties, and made as parts of substantially
16  one transaction, are to be taken together. Cal. Civ. Code § 1642.

17        NCPA and SVP are both parties to the Castle Rock Agreement. The Layoff Agreement
18  incorporates definitions from the Castle Rock Agreement. As parties to both Agreements, NCPA
19  and SVP were aware of the termination provisions in the Castle Rock Agreement, but they provided
20  no express restrictions in the Layoff Agreement relating to DWR's ability to terminate the Castle
21  Rock Agreement. Nor does the Layoff Agreement contain any express termination provisions. But
22  the Layoff Agreement does provide for redesignation of DWR's ownership interest under the Castle
23  Rock Agreement, if necessary, to allow NCPA and SVP to use it as provided for in the Layoff
24  Agreement. Section 3.5 of the Layoff Agreement states:

25      DWR shall promptly act on behalf of, or assist NCPA and Santa Clara in
    redesignating DWR's FTE [firm transmission entitlement], as necessary pursuant
26      to the Cotenancy Agreement, to allow NCPA and Santa Clara to use DWR's FTE
27      to which NCPA and Santa Clara are entitled pursuant to this Agreement….

28  ///

13

(PG&E Motion, Levenberg Decl., Ex. 2, p. 11.) This language allows DWR to act under the Castle Rock Agreement to redesignate DWR's ownership interest share of the Line so that NCPA and SVP can use it. Before DWR gave its written notice of termination, DWR promptly discussed with NCPA and SVP whether they were interested in acquiring DWR's interest under the Castle Agreement, but they had no interest. (Second AlQaser Decl. ¶4.) However, NCPA and SVP continue to use the capacity that DWR provided them under the Layoff Agreement without interruption. (*Id*.)

Under these facts, an interpretation that the Layoff Agreement precludes DWR from exercising its termination rights under the Castle Rock Agreement leads to an absurd result. Whether DWR effectively terminated its interest in the Castle Rock Agreement is a separate issue that can be determined without reference to the Layoff Agreement. To the extent that NCPA and SVP believe they may have any cognizable action against DWR, they should pursue it in state court rather than attempt to manipulate the bankruptcy court proceeding to seek relief through the Executory Contract and Cure Dispute and claims allowance process.

## IV. PG&E'S REQUEST TO MODIFY THE PLAN INJUNCTION SHOULD BE DENIED FOR LACK OF GOOD CAUSE.

In light of the Court's retained jurisdiction to decide executory contract, cure dispute and claims allowance issues, DWR contends that good cause does not exist to warrant modifying the plan injunction. PG&E completely ignores these core issues in dismissing the factors applicable in determining whether good cause exists as set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). Instead, PG&E contends that the inquiry ends with its claim that the FAA and the CAA mandate enforcement of the arbitration provision in the Castle Rock Agreement. (PG&E Motion, p. 20:12-14.) DWR disputes this contention because mandating arbitration does present a conflict with the Bankruptcy Code. Arbitration interferes with the Court's retained jurisdiction, as expressly reserved in the Plan and Confirmation Order, and as agreed to by PG&E. Good cause also is lacking because PG&E and the Remaining Cotenants have waived any arbitration rights they may have under the Agreement by waiting over three years to submit the dispute to the Coordinating Committee prior to seeking arbitration and by inserting provisions in the Plan and Confirmation

14

Order that specifically provide that this Court shall decide these issues. DWR has been prejudiced by this protracted delay and will be further prejudiced if modification of the plan injunction is allowed so that PG&E can renege on its agreement to reserve the Court's jurisdiction to decide the executory contract, cure dispute and claims allowance issues raised by DWR's proof of claim.

## CONCLUSION

For the foregoing reasons, PG&E's motion to compel arbitration and for a plan modification should be denied.

Dated:  February 16, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
DANETTE VALDEZ, SBN 141780
ANNADEL ALMENDRAS, SBN 192064
Supervising Deputy Attorneys General

By:  _/s/ Paul J. Pascuzzi_

PAUL J. PASCUZZI
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
Attorneys for California Department of
Water Resources, by and through the State
Water Project

SF2019200301
43085143.docx

15

**PROOF OF SERVICE**

I, Susan R. Darms, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 500 Capitol Mall, Suite 2250, Sacramento, CA 95814. On February 16, 2022, I served the within documents:

CALIFORNIA DEPARTMENT OF WATER RESOURCES' OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR ORDER MODIFYING PLAN INJUNCTION AND COMPELLING ARBITRATION

By Electronic Service only via CM/ECF.

_____
Susan R. Darms

16