Rob Bonta
Attorney General of California
Danette E. Valdez, SBN 141780
Annadel A. Almendras, SBN 192064
Supervising Deputy Attorneys General
State Bar No. 192064
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3367
Fax: (415) 703-5480
Danette.Valdez@doj.ca.gov
Annadel.Almendras@doj.ca.gov

PAUL J. PASCUZZI, SBN 148810
NICHOLAS L. KOHLMEYER, SBN 299087
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Fax: (916) 329-7435
ppascuzzi@ffwplaw.com
nkohlmeyer@ffwplaw.com

Attorneys for California Department of Water
Resources, by and through the State Water Project

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>And<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtor.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>x Affects both Debtors | Bankruptcy Case No. 19-30088(DM)<br><br>Chapter 11<br><br>(Lead Case)<br>(Joint Administered)<br><br>**CALIFORNIA DEPARTMENT OF WATER RESOURCES' REPLY TO THE REORGANIZED DEBTORS' PRELIMINARY OPPOSITION TO MOTION FOR ORDER DETERMINING THAT THE CASTLE ROCK AGREEMENT WITH PG&E CANNOT BE ASSUMED AND THAT THE DEPARTMENT OF WATER RESOURCES' CLAIM NO 78104 BE PAID**<br><br>Date: March 2, 2022<br>Time: 10:00 a.m.<br>Place: Courtroom 17<br>Judge: Dennis Montali |

The Department of Water Resources, by and through the State Water Project ("DWR"), hereby submits its Reply in support of its Motion for Order Determining that the Castle Rock Agreement ("Agreement") with PG&E Cannot Be Assumed and that DWR's Claim No. 78104 Be Paid ("Motion").

**INTRODUCTION**

The "Preliminary Opposition" filed by PG&E Corporation and Pacific Gas & Electric Company, the Reorganized Debtors (collectively, "PG&E"), is woefully inadequate because it fails to address: (1) the specific provisions in the Plan and Confirmation Order cited in DWR's Motion providing that this Court "shall" resolve executory contract, Cure Disputes, and related claims issues, and (2) the merits of the dispute arising out of DWR's proof of claim.[1] These core issues are essential to the Court's resolution of the Motion. PG&E compounds these deficiencies by misdirecting the analytical framework that the Court should apply in deciding these issues.

Contrary to PG&E's assertions, the gating issue is whether DWR terminated its participation in the Agreement because it determines whether the Agreement was an executory contract that could be assumed. Because the termination issue is intertwined with the executory contract and Cure Dispute issues, the Court must resolve them pursuant to the Plan and Confirmation Order. The Court need only consider the express language in sections 14.3, 14.4. and 14.5 of the Agreement to adjudicate this issue, including whether DWR is obligated to pay any future removal costs to terminate. Specifically, DWR properly terminated the Agreement under section 14.3 and it is not obligated to pay for future removal costs because PG&E and the Remaining Cotenants did not invoke section 14.5 (the only section referring to an obligation to pay removal costs) and decide to cease operating the Line and remove it. In fact, their conduct suggests they intend to continue operating the Line, and they continue to bill DWR for annual operating and maintenance costs (See Motion, Decl. of Ghassan AlQaser, ¶¶6-7; 13-4.)

///

---

[1] DWR objects to PG&E's willful failure to brief the merits of the dispute in their opposition to DWR's Motion without first obtaining court authority, and to its request to allow further briefing after a status conference. DWR contends that PG&E has waived its right to further briefing. See *Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197 n. 8 (N.D. Cal. 2013) (failure to respond to argument on merits viewed as grounds for concession of the argument).

1

The fact that Northern California Power Agency ("NCPA") and the City of Santa Clara, doing business as Silicon Valley Power ("SVP") (collectively, "Remaining Cotenants"), are also parties to the Agreement does not alter the analytical framework simply because they are non-Debtors. On the contrary, NCPA and SVP were some of the many interested parties who were actively involved in the negotiation of the language in the Plan and Confirmation Order. (See Dkt. 7231 and 7853). The City of Santa Clara is also currently relying on the same Plan and Confirmation Order provisions regarding how the Court should decide executory contract and Cure Dispute issues (paragraphs 32 through 35, 67 and 78 of the Confirmation Order) to resolve their own dispute with PG&E arising out of a separate, unrelated agreement they have with PG&E. (See Dkt. 10998 [Motion to Compel Assumption or Rejection of Executory Contract Concerning the Grizzly Development and Mokelumne Settlement Agreement at 18-19].)

The issues raised in DWR's Motion are properly before the Court for resolution, as intended and required by the Plan and Confirmation Order. Therefore, the Court should grant DWR's Motion.

## I. THE BANKRUPTCY COURT MUST DECIDE IF THE CASTLE ROCK AGREEMENT WAS TERMINATED, INCLUDING WHETHER DWR MUST PAY REMOVAL COSTS TO TERMINATE ITS PARTICIPATION IN THE AGREEMENT.

The Court (rather than an arbitrator) must determine both the termination and removal costs issues that are at the center of the dispute between PG&E and DWR. By way of example, if the Court decides in DWR's favor that it effectively terminated its participation in the Agreement, removal costs would not be an issue, and what then remains is resolving any dispute over DWR's proof of claim for overpayment to PG&E. The Court can efficiently decide these issues by applying basic contract interpretation principles to the Agreement without the need for arbitration. The claims resolution process is a core issue, and prompt payment as the Plan promised should remain with the Bankruptcy Court rather than be sent to arbitration. If, on the other hand, the Court decides that the Agreement was not effectively terminated, then what remains is a Cure Dispute over DWR's proof of claim and PG&E's argument about removal costs. In this situation, the Court must still decide the issues because the Plan and Confirmation Order specifically provide that the

2

Bankruptcy Court "shall" resolve Cure Disputes. (See Confirmation Order ¶¶34 and 67(d); Motion at 7:12-19.)

A bankruptcy court's legal conclusions are reviewed de novo, and its findings of fact for clear error. See *Allen v. US Bank, NA (In re Allen)*, 472 B.R. 559, 564 (9th Cir. BAP 2012) ("An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error.")

### A. PG&E Agrees that Whether DWR Is Obligated to Pay Removal Costs Must Be Decided as Part of the Determination Whether the Agreement Was Terminated and Thus Whether It Was an Executory Contract that Could Be Assumed or Rejected.

PG&E's position is that "the Cotenancy Agreement requires that CDWR pay the remaining parties its proportionate share of estimated costs, including those of operation, maintenance, and removal, **prior to terminating its participation in the agreement**." (PG&E Motion at 7:21-23 [emphasis added]; see also PG&E Motion at 17:16-19 ("PG&E's argument [is] that **CDWR cannot terminate its participation in the Cotenancy Agreement without first complying with its obligation under the Cotenancy Agreement to pay a pro rata share of estimated removal costs** to PG&E and remaining Cotenants." [emphasis added].) Thus, PG&E agrees with DWR that the issue of whether DWR is obligated to pay the removal costs must be decided as part of the determination of whether the Agreement was terminated prior to confirmation of the Plan, and thus could not have been assumed. Interestingly, PG&E fails to cite to any terms in the Agreement to support their position. Because no terms in the Agreement support PG&E's position, PG&E instead relies on "course of conduct," "guiding principles," and "principles of equity" in an attempt to add language that simply does not exist in the Agreement and to offer a strained reading of the Agreement that is unsupported by its plain language. (See PG&E Motion at 7: 20-8:1-2; 12:16-17.)[2]

///

---

[2] Courts are not called upon to improve agreements between parties that they themselves have been satisfied to enter into, or to rewrite contracts because they may operate harshly or inequitably. *Addiego v. Hill*, 48 Cal. Rptr. 240, 243, 238 Cal. App. 2d 842 (Cal. Ct. App. 1965).

3

## B. Bankruptcy Code Provisions Regarding Assumption of Executory Contracts Must Be Strictly Followed.

Strict adherence to the Code provisions governing assumption of contracts "might appear overly simplistic, [but] it is important in that it allows a debtor in possession the flexibility intended by the Bankruptcy Code in deciding whether or not to assume or reject contracts or leases." *Century Indem. Co. v. NGC Settlement Trust (In re National Gypsum Co.)*, 208 F.3d 498, 512 (5th Cir. 2000).

Courts have long held that assumption and rejection of executory contracts is important enough that the formal process of filing a motion with proper notice cannot be given short shrift. See *In re Tleel*, 876 F.2d 769, 771 (9th Cir. 1989) ("Section 365 and Bankruptcy Rules 6006(a) and 9014 require the debtor to file a formal motion to assume [an executory contract], providing reasonable notice and an opportunity for a hearing."); *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989) ("[Bankruptcy Rules 6006(a) and 9014] plainly specify that a debtor in possession must file a formal motion and provide reasonable notice and an opportunity for a hearing to the opposing party."); *Glimidakis v. Any Mt., Ltd.,* 2006 Bankr. LEXIS 4803, 19 (9th Cir. BAP 2006) ("Section 365 and Rules 6006 and 9014 require that a formal motion to assume or reject an executory contract or lease be filed with the court and served on the party to the lease, with an opportunity for the opposing party to respond."); see also, *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1076-79 (3d Cir. 1992) (noting the importance of the need for formal court approval to effect an assumption of an executory contract in accord with the terms of section 365) and *In re Dura Auto. Sys., LLC*, 628 B.R. 750, 754-57 (Bankr. Del. 2021) (no implied assumption of executory contracts).

If the Court agrees with DWR that its termination was effective on August 1, 2019, then the Agreement terminated based on its own terms and there was no executory contract that could be assumed at the time of confirmation.

An arbitrator should not decide core executory contract bankruptcy issues like the issues presented here, namely, whether the Castle Rock Agreement is an executory contract that was assumed because it was not terminated prior to confirmation or is not an executory contract because

4

it was terminated prior to confirmation. If the contract was not terminated, then this Court must decide the Cure Dispute over DWR's claim as provided in the Confirmation Order and Plan.

## II. PG&E IGNORES SPECIFIC CONFIRMATION ORDER AND PLAN LANGUAGE PROVIDING THAT THE BANKRUPTCY COURT SHALL RESOLVE EXECUTORY CONTRACT DISPUTES.

PG&E vaguely admits that the dispute with DWR involves "some estate issues," but their Opposition fails to address the specific Plan and Confirmation Order provisions cited in DWR's Motion providing that the Bankruptcy Court shall resolve the issues pertaining to executory contract, Cure Disputes, and allowance of Claims. (See DWR Motion at 6:16-26; 7:7-22; 16:8-15.) These provisions are binding on PG&E, NCPA and SVP, and they supersede the arbitration provisions in the Agreement.

In *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002), the debtor plaintiffs filed an adversary proceeding against the accounting firm, Ernst & Young, asserting various claims. After plan confirmation, Ernst & Young moved to dismiss or stay the proceeding pending arbitration pursuant to arbitration rights contained in the retainer agreement it had with the debtors. (*Id.*) However, under the terms of the plan and confirmation order, the bankruptcy court retained jurisdiction "for the adjudication of any pending adversary proceeding, or other controversy, or dispute." (*Id.*) The Court held that the arbitration rights were superseded by the terms of the confirmed plan. (*Id.* at 756.)

In *Sirius Computer Solutions, Inc. v. AASI Creditor Liquidating Trust*, 2011 U.S. Dist. LEXIS 96460 (S.D. Fla. 2011), the plaintiff AASI Creditor Liquidating Trust initiated an adversary proceeding against several defendants, including Sirius Computer Solutions, Inc., asserting causes of action related to a disastrous computer system installation that ultimately caused the financial collapse of AASI and its affiliates and necessitated their Chapter 11 bankruptcy filing. 2011 U.S. Dist. LEXIS 96460 *1. The operative plan provided that the bankruptcy court would retain exclusive jurisdiction over all matters, including to "determine all controversies and disputes arising under or in connection with the Plan . . . and to hear and determine . . . adversary proceedings. . . commenced after the Effective Date." (*Id.*) Sirius did not object to confirmation of the plan or the specific jurisdiction and venue provisions therein, but moved to dismiss the

5

adversary action based on certain venue and arbitration provisions in Sirius's pre-confirmation contract with the Debtors. (*Id.* at *6.) The bankruptcy court denied the motion, finding that the plan was a binding contract upon Sirius and therefore its venue and exclusive jurisdiction provisions superseded the arbitration provision in Sirius's pre-confirmation contract with the Debtors. (*Id.*)

Similar to PG&E, Sirius argued that the plan could not supersede its pre-confirmation arbitration rights, relying on the "liberal federal policy favoring arbitration agreements." 2011 U.S. Dist. LEXIS 96460 *11. The court stated:

> **This argument overlooks the underlying rationale behind the Federal Arbitration Act, which is that arbitration agreements should be enforced just like any other contract. The Federal Arbitration Act was enacted "to reverse the longstanding judicial hostility to arbitration agreements. . . and to place arbitration agreements upon the same footing as other contracts."**

(*Id.*, *11-12 [emphasis added].) The court held that, "recognizing a confirmed plan as a new and binding contract does not violate the 'liberal federal policy favoring arbitration agreements,' but instead accords with the underlying premise of that policy, which is the enforcement of contracts." (*Id.*, *12)

Therefore, even assuming the arbitration provisions in the Agreement applied to the dispute between PG&E and DWR (and DWR argues that they do not), the provisions have been superseded by the clear and unequivocal language in the Plan and Confirmation Order.

### III. THE CONFIRMED PLAN AND CONFIRMATION ORDER ARE BINDING ON THE DEBTORS AND ALL CREDITORS, INCLUDING NCPA AND SVP.

Confirmation of a chapter 11 plan binds the debtor, creditors, and equity security holders. 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind"); *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995).) Moreover, the confirmation order has res judicata effect on issues that were raised in conjunction with plan confirmation or could have been raised at that time. *Prudence Realization Corp. v. Ferris*, 323 U.S. 650, 654-55 (1944); *Katchen v. Landy*, 382 U.S. 323, 334 (1966). PG&E is bound by the provisions in the Plan and Confirmation Order language specifying that the executory contract and Cure Disputes "shall" be decided by the Bankruptcy Court. PG&E fails to address the specific provisions of the Plan and Confirmation Order relied upon in DWR's Motion.

6

Because of the binding effect of the Plan and Confirmation Order, the California State Agencies, including DWR, joined other entities in filing objections to the proposed language in the Plan and Confirmation Order (See Dkt. 7868), and worked with PG&E to reach acceptable language that provides that executory contract and Cure Disputes "shall" be decided by the Bankruptcy Court. Now PG&E wants to renege on the language and modify the Confirmation Order and Plan language to force DWR into arbitration without its consent. The Court should reject this effort.

The other cotenants, NCPA and SVP, are also bound by the provisions of the Plan and Confirmation Order. They filed objections to Plan confirmation, including to provisions relating to executory contracts. (Dkt. 7231 at 8-9). As noted above, in another matter before the Court, NCPA and SVP are relying on the same provisions in the Plan and Confirmation order to compel PG&E to accept or reject an executory contract. Thus, NCPA and SVP implicitly agreed that the Court "shall" decide the executory contract issues raised in DWR's Motion.

## IV. IN ANY EVENT, THE ARBITRATION CLAUSE IN THE AGREEMENT DOES NOT APPLY OR WAS WAIVED.

PG&E and the Remaining Cotenants are bound by the Plan and Confirmation Order under 11 U.S.C. §1141(a). Yet they insist that DWR is subject to arbitration. They cite to the arbitration provisions in the Agreement and the presumption in favor of arbitration in non-bankruptcy cases. (Opposition at 11, 14.) However, the arbitration provisions in the Agreement have been superseded by provisions in the Plan and Confirmation Order that provide that the Bankruptcy Court "shall" decide executory contract and Cure Dispute issues. (See Section II above.) The arbitration provisions have also been waived by PG&E's conduct that is inconsistent with their assertion that arbitration is a required means of dispute resolution. (See Motion, pp. 23-24.)

PG&E's contention that the question of arbitrability should be decided by the arbitrator is incorrect. The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. In evaluating whether the parties so intended to provide, courts apply ordinary state-law contract principles. *Wynn Resorts v. Atlantic-Pacific Capital, Inc.,* 497

7

Fed. Appx. 740, 741 (9th Cir. 2012). On this issue, the terms of the Plan and Confirmation Order prevail again because they superseded the arbitration provisions in the Agreement.

PG&E tries to minimize its July 30, 2019 filing at FERC, claiming that it lasted less than two months and DWR was not prejudiced from the proceedings. (Opposition at 14:3-6.) However, the importance of the FERC filing is that it evidences PG&E's actions that are inconsistent with an understanding that arbitration was a required means of dispute resolution. There can be no doubt that PG&E sought a resolution on the merits from FERC. PG&E's filing described the relief requested as follows:

> PG&E interprets the Agreement to require CDWR, as a Cotenant that desires to depart, to make a financial contribution to the remaining Cotenants that reflects its proportional share of the reasonably anticipated removal costs of the New Line. NCPA and CSC agree with PG&E. . . . CDWR disagrees. *In an effort to resolve the dispute, the Parties met on multiple occasions and discussed the terms and obligations associated with CDWR's desire to withdraw from the Agreement. No consensus was reached.*
>
> *Therefore, PG&E on behalf of itself, NCPA, and CSC, proposes to revise the Agreement to timely acknowledge CDWR's desire to withdraw and their position that CDWR is obligated to pay its reasonable share of removal costs before it may withdraw.*

(Motion, Decl. of Ghassan AlQaser, ¶8, Ex. 3 [Doc 11889-4] at 3 [emphasis added].)

Where an arbitration agreement does not specify a time within which arbitration must be demanded, a reasonable time is allowed, and what constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case. [citations omitted.] *Sawday v. Vista Irrigation Dist.*, 64 Cal. 2d 833, 836 (1966). Among the facts a court may consider is any prejudice the opposing party suffered because of the delay. [citation omitted.] *Spear v. California State Auto. Assn.*, 2 Cal. 4th 1035, 1043 (1992). Under the facts in the present dispute, because the Agreement does not specify a time within which to demand arbitration, a reasonable time is allowed but that time should not be more than the one-year period between the time DWR gave notice and when the termination became effective to avoid prejudice to DWR. PG&E initiated the dispute resolution proceedings with the Coordinating Committee in January 2022 - years after DWR gave its termination notice and years after the effective date of its termination. DWR's good faith, procedurally correct, termination pursuant to

8

the terms of the Agreement resulted in DWR not being able to receive the benefits of being a party to the Agreement, including availing itself of the dispute resolution procedures that have so recently been invoked. DWR could not participate in these post-termination contractual machinations without waiving its position that DWR's termination had become effective in 2019 and DWR was therefore no longer a party to the Agreement. DWR has been further prejudiced by the procedural uncertainty, the endless delays in resolving this dispute, and the lack of finality for DWR on its termination status. DWR also relied upon the language in the Plan and Confirmation Order that any executory contract and Cure Dispute "shall" be decided by the Bankruptcy Court.

Even assuming the arbitration provisions applied, the issue of whether PG&E waived these provisions by its conduct is for the Court to decide. The question whether a party waived its right to arbitrate on the basis of its litigation conduct is a question of arbitrability and is in the first category of gateway issues. *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016).

The Court also has discretion to deny enforcement of the arbitration provisions because there is a conflict with the underlying purposes of the Bankruptcy Code relating to executory contracts, Cure Disputes and the allowance or disallowance of claims that should be decided by the Bankruptcy Code. *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1021 (9th Cir. 2012).

## CONCLUSION

For the reasons stated above, DWR respectfully requests that the Court apply the clear language in the Confirmation Order and Plan to decide the executory contract and Cure Disputes raised in the DWR Motion in its favor and deny PG&E's request that the matter be sent to

//
//
//
//
//
//
//
//

9

arbitration. DWR further requests that the Court deny PG&E's request for a status conference and further briefing on the merits.

Dated: February 23, 2022

Respectfully submitted,

Rob Bonta
Attorney General of California
DANETTE VALDEZ, SBN 141780
ANNADEL ALMENDRAS, SBN 192064
Supervising Deputy Attorneys General

By: */s/ Paul J. Pascuzzi*

PAUL J. PASCUZZI
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
Attorneys for California Department of
Water Resources, by and through the State
Water Project

SF2019200301
43085143.docx

10

# PROOF OF SERVICE

I, Susan R. Darms, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 500 Capitol Mall, Suite 2250, Sacramento, CA 95814. On February 23, 2022, I served the within document:

**CALIFORNIA DEPARTMENT OF WATER RESOURCES' REPLY TO THE REORGANIZED DEBTORS' PRELIMINARY OPPOSITION TO MOTION FOR ORDER DETERMINING THAT THE CASTLE ROCK AGREEMENT WITH PG&E CANNOT BE ASSUMED AND THAT THE DEPARTMENT OF WATER RESOURCES' CLAIM NO 78104 BE PAID**

By Electronic Service only via CM/ECF.

_____
Susan R. Darms