**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:     (212) 310-8000
Fax:    (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>        - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                    **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**REPLY IN FURTHER SUPPORT OF MOTION OF THE REORGANIZED DEBTORS FOR ENTRY OF AN ORDER MODIFYING PLAN INJUNCTION AND COMPELLING ARBITRATION OF CLAIM OF CALIFORNIA DEPARTMENT OF WATER RESOURCES**<br><br>**[Related to Docket No. 11896]**<br><br>Hearing Date: March 2, 2022<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  **(Telephonic or Video Only)**<br>        United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, "**PG&E**," the "**Debtors**," or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Reply in further support of the *Motion of the Reorganized Debtors for Entry of an Order Modifying Plan Injunction and Compelling Arbitration of Claim of California Department of Water Resources* [Docket No. 11896], filed on February 2, 2022 (the "**Motion**")[1], and in response to the *California Department of Water Resources' Opposition to Reorganized Debtors' Motion for Order Modifying Plan Injunction and Compelling Arbitration* [Docket No. 11942] (the "**Opposition**" or "**CDWR Opp.**"). In support of this Reply and in further support of the Motion, the Reorganized Debtors submit the Supplemental Declaration of Joshua S Levenberg, filed concurrently herewith (the "**Supplemental Levenberg Declaration**").

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I. PRELIMINARY STATEMENT

The Reorganized Debtors demonstrate, in both the Motion and their preliminary opposition [Docket No. 11937] (the "**PG&E Preliminary Opposition**") to CDWR's *Motion for Order Determining that Castle Rock Agreement with PG&E Cannot Be Assumed and that the Resources' Claim No. 78104 Be Paid* [Docket No. 11887] (the "**CDWR Motion**"), that the dispute involving PG&E, CDWR, SVP, and NCPA clearly "arises under" the Cotenancy Agreement and therefore is subject to that agreement's arbitration provision, and that federal and state law mandate enforcement of the arbitration provision under these circumstances.

CDWR's Opposition fundamentally misconstrues the presumption that the Court must apply: the law imposes a presumption of arbitrability, ***with all doubts and ambiguities resolved in favor of arbitration***. Absent from the CDWR Opposition is any recognition that federal and state public policy favor arbitration and the enforcement of parties' agreements to arbitrate. Under Supreme Court and Ninth Circuit precedent, denial of arbitration is permitted <u>only</u> if arbitration would conflict

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

with congressional intent and the underlying purposes of the Bankruptcy Code. Here, in a post-confirmation contract dispute, there is simply no such conflict.

CDWR spends much of its Opposition repeatedly arguing that the Court should agree with its construction of the Cotenancy Agreement, on both the question of arbitrability and on the merits of the dispute. But the Court should do neither: first, because the Court should not negate the plain language of the contract to deny arbitration; and second, because, to the extent CDWR asserts there were a viable question as to whether the dispute is within the scope of the arbitration provision or whether the provision can be enforced against CDWR – and there is no such question here – the parties, including two non-debtor, non-moving parties, expressly agreed that those questions of arbitrability are for the arbitrator to decide, as are the merits of the dispute.

That a portion of the dispute is a core proceeding, or that the Court generally retained jurisdiction over such matters through the Plan and Confirmation Order, do not change the result. Nor do the many months that the parties, including CDWR, spent trying to reach a consensual resolution of their disputes – outside of the courts – mean that PG&E somehow waived its right to have the dispute resolved by arbitration. And the fact that denial of arbitration would <u>either</u> force two non-debtor, non-moving parties (SVP and NCPA) to submit to this Court's jurisdiction in this matter <u>or</u> require bifurcation of an intertwined matter that would result in piecemeal litigation and potentially inconsistent rulings despite the four parties' clear agreement to arbitrate this dispute is clearly good cause to enforce the arbitration provision here.[2]

## II.    ARGUMENT

The Reorganized Debtors already dispose of most of CDWR's arguments in PG&E's Preliminary Opposition. PG&E will not burden the Court by repeating its arguments from the Preliminary Opposition in detail here, but rather incorporate them by reference. In summary, however: <u>First</u>, California and federal law evince a strong public policy in favor of arbitration, and CDWR bears a heavy burden of establishing that the arbitration agreement is inapplicable. It fails

---

[2] If the Court nevertheless does not agree with the need to compel arbitration here, the Reorganized Debtors respectfully have requested, in the alternative, that the Court set a scheduling conference with respect to the substantive matters raised in the CDWR Motion.

to meet that burden because the dispute at hand "arises under" the Cotenancy Agreement and is therefore within the scope of the arbitration provision. Second, CDWR's purported termination does not exclude it from the reach of the arbitration provision. Third, PG&E did not waive arbitration, and in any case, waiver is a highly disfavored remedy generally and is particularly inapplicable here, where the AAA Rules are explicitly incorporated and adopted. Finally, those same AAA Rules require that, if there is a question about arbitrability, including the scope or enforceability of the arbitration provision, such questions must be submitted to the arbitrator. CDWR's arguments raised in its Opposition do not change the conclusion that the Court should enforce the arbitration agreement here.

### A. Arbitration of This Dispute Does Not Conflict with the Underlying Purposes of the Bankruptcy Code

CDWR acknowledges that the Court can only deny enforcement of the parties' arbitration agreement if arbitration would conflict with the underlying purposes of the Bankruptcy Code. But CDWR does not – because it cannot – articulate any reason that arbitration of this specific dispute, under these circumstances, would frustrate the purposes of the Bankruptcy Code, which is a required finding in this Circuit to avoid arbitration.

CDWR would have the Court establish a brightline rule that arbitration "conflicts with the Bankruptcy Code . . . because the Court has jurisdiction over core issues." CDWR Opp. at 3. But that is the opposite of the law in this Circuit: if the dispute were exclusively non-core, the Court would not have discretion to deny enforcement of arbitration. When the dispute involves a core matter, the Court may only decline to enforce the arbitration provision if it determines that arbitration *of that particular matter* would conflict with the primary purposes of the Bankruptcy Code. That is the Ninth Circuit's instructions in *Thorpe Insulation*, based on the Supreme Court's directive in *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987): "[E]ven in a core proceeding, the *McMahon* standard must be met – that is, a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision *only if* arbitration would conflict with the underlying purposes of the Bankruptcy Code." *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1021 (9th Cir. 2012) (emphasis added); *see also In re Banks*, 549 B.R. 257, 266

(Bankr. D. Or. 2016) (under *Thorpe*, the bankruptcy court's discretion not to enforce an arbitration provision "must be exercised **in the fact-dependent context of the particular matter** before the bankruptcy court") (citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (emphasis added); *New Cingular Servs. v. Burkhart (In re Wire Comm Wireless, Inc.)*, 2008 U.S. Dist. LEXIS 79273, at *9 (E.D. Cal. Sept. 16, 2008) ("[T]he bankruptcy judge here had to evaluate the nature of the underlying claims and their effect upon the bankruptcy proceedings before determining whether he had the discretion to deny arbitration.").

In *McMahon*, the Supreme Court held that the Federal Arbitration Act's mandate that courts must enforce agreements to arbitrate could only be "overridden by a contrary congressional command," and that such contrary congressional command could be determined by "an inherent conflict between arbitration and the statute's underlying purposes."  *McMahon*, 482 U.S. at 226-27. There is no such conflict here.

The fact that the Court generally retained jurisdiction over dozens of cure disputes and tens of thousands of claims – the vast majority of which were not subject to arbitration provisions – does not mean that the Court should not enforce a specific arbitration agreement or that the Court may not modify the Plan injunction or forbear from exercising jurisdiction on a specific issue.  Indeed, the Court has done exactly that in modifying the Plan Injunction with respect to numerous other disputes that were otherwise core matters and subject to the Court's retention of jurisdiction under the Plan. Unlike in *Thorpe Insulation*, in which the Ninth Circuit affirmed a finding that the dispute at issue – whether the debtor breached a settlement agreement by preparing for and proposing a section 524(g) plan of reorganization – was "inextricably intertwined with [the debtor's] bankruptcy," 671 F.3d at 1022, CDWR fails to identify any bankruptcy purpose **in these Chapter 11 Cases** with which arbitration of this matter would conflict.  The mere retention of the Court's jurisdiction generally over matters – either as a core proceeding or through a provision in the Plan – is not a primary purpose of the Bankruptcy Code that can override an arbitration agreement.

Notably, CDWR fails to cite any other bankruptcy case in this Circuit to support its argument that there is a conflict between the Bankruptcy Code and arbitration here.  That is because courts in this Circuit, applying *Thorpe*, have enforced arbitration provisions post-confirmation or post-

discharge – even with respect to core matters – because, as here, "[r]esolution of [those] claims will have no direct impact on performance of [the] Plan or estate administration in [the] bankruptcy case." *Banks*, 549 B.R. at 268; *see also Campos v. Bluestem Brands, Inc.*, No. 3:15-CV-00629-SI, 2016 U.S. Dist. LEXIS 7592, at *34-35 (D. Or. Jan. 22, 2016) ("Because the administration of [the debtor's] bankruptcy estate is now complete, the factors that might ordinarily weigh against arbitration are no longer present."). As in those cases, arbitration of the dispute at hand does not conflict with the Bankruptcy Code's underlying purposes because it "will not interfere with any protections that the Bankruptcy Code would otherwise afford [the Debtors or their creditors], nor will arbitration encourage subversion of the automatic stay's remedial scheme . . . ; arbitration will not prevent the coordinated resolution of [the Debtors'] rights or delay any plan of reorganization; and the bankruptcy court will not lose control over the timing of the reorganization." *Id.*[3] Accordingly, there is no reason for the Court to deny enforcement of the arbitration provision.

## B. The Parties Did Not Waive Their Right to Arbitration

Next, CDWR argues that PG&E waived its right to arbitration. As an initial matter, CDWR cites *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016), for the proposition that the question of waiver is presumptively not for an arbitrator to decide. CDWR Opp. at 7. But CDWR utterly disregards the fact that the Cotenancy Agreement expressly incorporates the AAA Rules, and those rules overcome that presumption by expressly delegating to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Rule 7 – Jurisdiction; *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061 (9th Cir. 2018 (sophisticated parties' incorporation of AAA Rules into arbitration agreement "clearly and unmistakably indicated their intent to submit arbitrability questions to an arbitrator").

In other words, the parties already agreed that all questions regarding the scope of the arbitration provision, as well as whether the arbitration provision may be enforced against CDWR,

---

[3] The only bankruptcy cases other than *Thorpe* cited by CDWR are outside the Ninth Circuit and fail entirely to discuss the Supreme Court's mandate in *McMahon* or any of its progeny. CDWR Opp. at 9 (citing S.D. Fla. and 7th Circuit decisions).

1  and whether the other parties have waived their right to arbitration, are to be submitted to the

2  arbitrator.

3       Moreover, there was no waiver here. "Because '[a]rbitration is strongly favored,' courts must

4  'closely scrutinize any claims of waiver.' A 'party seeking to establish waiver' bears a heavy burden

5  of proof." *Adolph v. Coastal Auto Sales, Inc.*, 184 Cal. App. 4th 1443, 1450 (Ct. App. 2010) (citing

6  *Keating v. Superior Court*, 31 Cal. 3d 584, 604-05 (1982). "There is no single test for waiver of the

7  right to compel arbitration, but waiver may be found where the party seeking arbitration has (1)

8  previously taken steps inconsistent with an intent to invoke arbitration, (2) unreasonably delayed in

9  seeking arbitration, or (3) acted in bad faith or with willful misconduct." *Augusta v. Keehn &*

10 *Assocs.*, 193 Cal. App. 4th 331, 337 (Ct. App. 2011) (citations omitted).

11      That the parties – CDWR, PG&E, NCPA, and SVP – engaged in nearly a year of negotiations

12 in a good-faith effort to resolve their disputes, beginning promptly after CDWR indicated that it

13 wished to withdraw from the Cotenancy Agreement, followed by an – initially joint – effort to amend

14 the Cotenancy Agreement before FERC, and later participated in consensual mediation, does not

15 reflect a desire to unreasonably delay or waive, or in any case amount to a waiver of, arbitration.[4]

16 During that time, CDWR actively engaged with PG&E and the remaining Cotenants regarding its

17 desired termination and the amount and mechanics for calculating "net salvage value" under the

18 Cotenancy Agreement. *See* Supplemental Levenberg Declaration ¶¶ 3-4.

19      None of the cases that CDWR cites stand for the proposition that the parties' non-judicial

20 efforts to reach a resolution without the need to arbitrate or litigate may constitute a waiver. Indeed,

21 all of the waiver cases cited by CDWR, CDWR Opp. at 8-9, make clear that waiver requires, at

22 minimum, initiation of and participation in **active litigation** over the **merits** of the claim at issue in

23 lieu of arbitration: each of these cases involved a party who had engaged actively in state court

24 litigation concerning the claims (two of them as *plaintiffs*), before belatedly invoking arbitration.

25 Here, by contrast, the first time that the parties are before a court on this dispute is the CDWR Motion,

26 ───────────────

27 [4] Moreover, CDWR's insinuation that PG&E might have unreasonably delayed resolution of the
   disputes is belied by the fact that it took CDWR more than six months to agree to participate in
   mediation after PG&E's original invitation and encouragement. Supplemental Levenberg Declaration

28 ¶ 5.

by which CDWR asks the Court determine the dispute instead of properly bringing the dispute to arbitration as all four parties agreed. The passage of time that CDWR claims constitutes waiver was spent by the parties making every effort to resolve the disputes *without* costly litigation – through direct negotiations, an attempted proceeding before FERC to amend the Cotenancy Agreement, and mediation.[5] These are not actions that constitute waiver.[6] On the contrary, these actions reflect a persistent, good-will effort by Reorganized Debtors to reach informal resolution of disputes prior to the need to invoke arbitration.

### C. Questions of Construction and Interpretation of the Cotenancy Agreement Are For the Arbitrator

CDWR spills much ink arguing that its proposed construction of the Cotenancy Agreement supports its position in the dispute. As discussed in PG&E's Preliminary Opposition, however, the Cotenancy Agreement requires both the merits of the dispute <u>and</u> the scope of arbitrability be determined by the arbitration panel. The parties explicitly agreed to arbitrate under the AAA Rules, which convey on the arbitrator all decision-making authority "with respect to the existence, scope, or validity of the arbitration agreement." *See* Cotenancy Agreement § 13.2; AAA Rule 7 – Jurisdiction; *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061 (9th Cir. 2018) (incorporation of the AAA Rules by sophisticated parties "clearly and unmistakably indicate[ ] their

---

[5] Even had there been a judicial proceeding, the Cotenancy Agreement incorporates the AAA Rules, which provide for non-waiver of arbitration even where there is a judicial proceeding relating to the same subject matter. AAA Rule 52 – Applications to Court and Exclusion of Liability. None of the cases CDWR cites involved such an agreement.

[6] Nor has the passage of time caused the kind of prejudice to CDWR that warrants a finding of waiver. The Reorganized Debtors paid the entire cost of the mediation and submit that CDWR's investment in an out-of-court mediation that could have resolved the entire dispute does not constitute the type of prejudice that is necessary to find that the Reorganized Debtors waived their right to arbitration, especially when weighed against the strong public policy in favor of arbitration. *See Adolph*, 184 Cal. App. 4th at 1451; *see also Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1203 (2003) ("Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses."). The pre-litigation efforts of the parties, for which CDWR lauds its own "good faith efforts" and "cooperation," would have been an efficient use of resources whether the issue was to be ultimately resolved in either arbitration or before this Court. CDWR offers no other support for its allegation that it has somehow been prejudiced, a showing that falls well short of its "heavy burden" to demonstrate that it has been prejudiced.

intent to submit arbitrability questions to an arbitrator"). As such, the Court should disregard CDWR's lengthy arguments concerning its interpretation of the Cotenancy Agreement.

### D. Cause Exists To Modify the Plan Injunction

Finally, CDWR fails to acknowledge that the rights of two non-debtor parties – NCPA and SVP – including under the Transmission Service Agreement (which CDWR calls the "Layoff Agreement"), a contract to which PG&E is not a party, are inextricably tied to the dispute forming the basis of CDWR's claim. As the Reorganized Debtors state in the Motion, the implication of NCPA's and SVP's rights constitute cause for the Court to modify the Plan Injunction and permit the entire dispute to be heard in a single forum – through the arbitration process to which all four parties previously agreed. The involvement of third parties that are neither debtors nor movants in this matter is, alone, cause to modify the Plan Injunction and enforce the arbitration provision. To do otherwise would prejudice those non-parties, by depriving them of their contractual right to arbitration and/or forcing the parties into multiple, piecemeal litigation in different forums and the concomitant risk of inconsistent rulings.

## III. CONCLUSION

WHEREFORE the Reorganized Debtors respectfully request entry of the Proposed Order granting (i) the relief requested in the Motion, and (ii) such other and further relief for the Reorganized Debtors as the Court may deem just and appropriate.

Dated: February 23, 2022

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

*/s/ Jane Kim*
Jane Kim

*Attorneys for Debtors and Reorganized Debtors*