Entered on Docket
March 16, 2022
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PG&E CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICE OF THE U.S. TRUSTEE / SF,<br><br>Defendant. | Case No. 20-cv-07865-HSG<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S RULING ON RSA NOTEHOLDERS' ADMINISTRATIVE CLAIMS**<br><br>Re: Dkt. No. 10 |

Before the Court is Appellants' (or "RSA Noteholders") appeal of the Bankruptcy Court's Memorandum Decision Disallowing Administrative Expense Claims issued on October 22, 2020 (the "Memorandum Decision") and other related orders entered on the same day.[1] *See* Dkt. Nos. 11 ("Appellants Br.") and 14 ("Reply Br."). PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (together, the "Debtors" or "Reorganized PG&E"), oppose the appeal. Dkt. No. 13 ("PG&E Br."). For the following reasons, the Court **AFFIRMS** the Bankruptcy Court's ruling.

## I. BACKGROUND

### A. PG&E's Bankruptcy and Chapter 11 Plan

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court

---

[1] Specifically, the appellants are Elliott Management Corporation, on behalf of itself and the following funds and accounts managed, advised, or sub-advised by it: Canyon Capital Advisors LLC, Citadel Advisors LLC, Davidson Kempner Capital Management LP, Farallon Capital Management, L.L.C., Sculptor Master Fund, Ltd., Sculptor Enhanced Master Fund, Ltd., Sculptor Credit Opportunities Master Fund, Ltd., Sculptor GC Opportunities Master Fund, Ltd., Sculptor SC II, LP; Värde Partners, Inc., on behalf of themselves, and/or certain funds and accounts managed, advised, or sub advised by them; and Pacific Investment Management Company LLC.

1  for the Northern District of California ("Bankruptcy Court").  Significantly, the Debtors needed to
2  propose a plan of reorganization that satisfied the requirements of A.B. 1054.  In light of the
3  "increased risk of catastrophic wildfires," A.B. 1054 created the "Go-Forward Wildfire Fund" as a
4  multi-billion dollar safety-net to compensate future victims of public utility fires by "reduc[ing]
5  the costs to ratepayers in addressing utility-caused catastrophic wildfires," supporting "the credit
6  worthiness of electrical corporations," like the Debtors, and providing "a mechanism to attract
7  capital for investment in safe, clean, and reliable power for California at a reasonable cost to
8  ratepayers."  A.B. 1054 § 1(a).

For the Debtors to qualify for the Go-Forward Wildfire Fund, however, A.B. 1054 required, among other things, the Debtors to obtain an order from the Bankruptcy Court confirming a plan of reorganization by June 30, 2020.  *See* A.B. 1054 § 16, ch. 3, 3292(b).  After more than sixteen months of negotiations among a variety of stakeholders, and following confirmation hearings that spanned several weeks, the Debtors' Plan of Reorganization dated June 19, 2020 ("Plan") was confirmed by the Bankruptcy Court on June 20, 2020 and became effective on July 1, 2020 ("Effective Date").[2]

### B.  RSA Noteholder Dispute

#### i.  The Backstop Commitment Letters

On December 12, 2019, the Debtors, together with the owners of certain funds and accounts managed by Abrams Capital Management, LP and Knighthead Capital Management, LLP (together, the "Shareholder Proponents," and collectively with the Debtors, the "Plan Proponents"), filed the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated December 12, 2019 (the "December 12 Plan").  *See* Dkt. No. 11 at A0082-A0176.  The December 12 Plan provided that, to help fund the Plan, Reorganized PG&E would issue new common stock ("Reorganized PG&E Common Stock").  *See id.*

In light of this contemplated stock issuance, the Debtors entered into the "Backstop

---

[2] Capitalized terms not otherwise defined in this order have the meanings ascribed to them in the Plan.  Citations to the appendix submitted by Appellants are indicated by A[●].  *See* Dkt. No. 11.

Commitment Letters," under which the parties committed, in exchange for certain fees and other consideration, to purchase up to $12 billion in Reorganized PG&E Common Stock to fund consummation of the Plan. *See id.* at A0566-A0739.

### ii. The Noteholder RSA

On January 22, 2020, the Debtors, the Shareholder Proponents, and the Consenting Noteholders, including the Appellants here, entered into the Restructuring Support Agreement (or "Noteholder RSA"). *See* Dkt. No. 11 at A0381-A0401. All parties to the Noteholder RSA agreed to support a single chapter 11 plan to be filed by the Debtors on the terms and conditions set forth in the Noteholder RSA. *See id.* at A0381. The Consenting Noteholders agreed, among other things, to withdraw the chapter 11 plan they had previously filed, support confirmation of the amended plan, and to not object to or take any action to interfere with the confirmation or implementation of the amended plan. *See id.* at A0384.

In exchange for the Consenting Noteholders' support, the Debtors committed to various obligations in the Noteholder RSA. Under one of those obligations, the Debtors agreed to "use their best efforts" to cause various Backstop Parties to transfer to Consenting Noteholders the Debtors' rights and obligations under the Backstop Commitment Letters up to a total of $2 billion of commitments.[3] *See id.* at A0388-A0389. The Debtors' "best efforts" obligations continued "for the duration of the Support Period." *See id.* at A0388. The "Support Period," in turn, is defined in the Noteholder RSA as the period running from the date of execution of the Noteholder

---

[3] Specifically, Section 3(a)(iv) of the Noteholder RSA provides that the Debtors shall:

> [U]se their best efforts, which shall not require the Debtors to pay any consideration, breach any obligations, or otherwise violate the terms of any Backstop Commitment Letter, to cause various Backstop Parties to transfer (whether by assignment, participation, or otherwise) to Consenting Noteholders that were parties to the AHC Commitment Letter and any Consenting Noteholders that were offered the opportunity to participate in any subsequent commitment in connection with the Alternative Plan, their rights (subject to Section 7 hereof) (including the right to receive fees thereunder) and obligations under applicable Backstop Commitment Letters relating to up to $2 billion of commitments.

Dkt. No. 11 at A0389.

RSA through the earlier of the effective date of the amended chapter 11 plan or termination of the Noteholder RSA. *See id.* at A0384. No party terminated the Noteholder RSA, so the Support Period remained in effect through the Plan Effective Date. *See* Appellants Br. at 9.

On January 31, 2020, the Debtors and the Shareholder Proponents filed an amended chapter 11 plan consistent with the Noteholder RSA. *See* Dkt. No. 11 at A0453. That plan was amended several times, including by the version filed on June 19, 2020, which became the Debtors' final Plan. *See id.* at A0988. On June 20, 2020, the Bankruptcy Court entered the Confirmation Order, and the Plan Effective Date occurred on July 1, 2020. *See id.* at A1095, A1279.

### iii. Alleged Breach of the Noteholder RSA and Bankruptcy Court Memorandum Decision

Appellants contend that the Debtors breached the "Best Efforts" provision of the Noteholder RSA. Specifically, Appellants allege that despite the Debtors' obligations to use their best efforts to cause the Backstop Parties to transfer or assign their rights to the RSA Noteholders, in actuality, "the Debtors did not make any effort" to do so. *See* Appellants Br. at 11. On that ground, one of the RSA Noteholders filed an application with the Bankruptcy Court in July 2020, seeking allowance and payment of an administrative expense claim under Section 503(b)(1) of the Bankruptcy Code for damages. *See* Dkt. No. 11 at A1285. Eleven other noteholders that were parties to the Noteholder RSA also joined the application. *See id.* at A1304, A1313.

The Bankruptcy Court issued an order (the "Scheduling Order") requiring Reorganized PG&E to file an opposition to the RSA Noteholders' application prior to any discovery. *See id.* at A1349-A1353. On October 22, 2020, the Bankruptcy Court issued the Memorandum Decision Disallowing Administrative Expense Claims. *See id.* at A1530-1540. The Bankruptcy Court noted in the Memorandum Decision that, through the Scheduling Order, it had "established a procedure to determine whether Reorganized PG&E could prevail on the face of [the Motion], as a matter of law" and that, accordingly, it treated the Initial Opposition "as the functional equivalent of a motion for a judgment on the pleadings, taking all facts as uncontested for these purposes." *See id.* at A1534. The Bankruptcy Court then "determine[d] as a matter of law that the

1  Reorganized Debtors are correct and their objections should be sustained." *Id.* Concurrently, the

2  Bankruptcy Court issued orders (the "Disallowance Orders") disallowing the RSA Noteholders'

3  claims for the reasons stated in the Memorandum Decision. *See id.* at A1541; A1542-1543;

4  A1544.

5  On November 4, 2020, the RSA Noteholders filed notices of appeal of the Memorandum

6  Decision and Disallowance Orders. *See id.* at A1545-1563; A1564- A1583; A1584-A1603. This

7  Court issued an order consolidating the appeals on February 5, 2021. *See* Dkt. No. 12.

## II.  LEGAL STANDARD

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. A district court reviews a bankruptcy court's decision by applying the same standard of review used by circuit courts when reviewing district court decisions. *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001).

## III.  DISCUSSION

### A.  Standard of Review

As a preliminary matter, the parties dispute the standard of review this Court should apply in reviewing the Bankruptcy Court's Memorandum Decision. Reorganized PG&E contends that the Court should review the Memorandum Decision for abuse of discretion. *See* PG&E Br. at 1-2. For support, it points to *In re Kittusamy, LLP*, which explained that "[a] bankruptcy court's order allowing or disallowing a proof of claim, including an administrative claim, is reviewed for abuse of discretion." No. 2:15-BK-13868-ABL, 2017 WL 957152, at *2 (B.A.P. 9th Cir. Mar. 10, 2017); *see* PG&E Br. at 1-2. Appellants disagree, arguing that the Bankruptcy Court's decision is not entitled to any deference because the proper standard is de novo review. Reply Br. at 4.

The Court agrees with Appellants. The correct standard is de novo review because the Bankruptcy Court made clear that the Memorandum Decision rested on a conclusion of law. Specifically, the Bankruptcy Court explained that the Memorandum Decision treated Reorganized PG&E's objection to the RSA Noteholders' administrative expense application as "the functional

1  equivalent of a motion for a judgment on the pleadings, taking all facts as uncontested for these
2  purposes," and ruled that the RSA Noteholders' administrative expense claims are "barred as a
3  matter of law." *See* Dkt. No. 11 at A1534; A1539.  And unlike *In re Kittusamy*, which involved
4  review of a bankruptcy court's ruling on the legal and factual merits of a claim, *see* 2017 WL
5  957152 at *3, the Bankruptcy Court did not permit discovery and engaged in no fact finding.  *See*
6  Dkt. No. 11 at A1534.

7  In short, the Memorandum Decision states a conclusion of law.  As such, it is subject to de
8  novo review on appeal.  *In re Harmon*, 250 F.3d at 1245; *Pub. Emps. Ret. Ass'n of New Mexico v.*
9  *PG&E Corp.*, No. 20-CV-04567, 2021 WL 3504155, at *2 (N.D. Cal. Aug. 10, 2021) ("The
10 district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of
11 law de novo.").

12  **B.  Administrative Expense Claims**

13  The Bankruptcy Court disallowed Appellants' claims for breach of the Noteholder RSA as
14 a matter of law because it determined that Appellants released those claims by agreeing to Section
15 10.9(b) of the Plan.  *See* Dkt. No. 11 at A1537-A1538.  Section 10.9 is one of the Plan's release
16 provisions, and it provides in relevant part that "the Released Parties, are deemed forever released
17 and discharged . . . by the Releasing Parties from any and all claims . . . based on or relating to, or
18 in any manner arising from, in whole or in part . . . the Noteholder RSA." *Id.* at A1071.  Based on
19 Section 10.9(b), the Bankruptcy Court held that Appellants are "bound by the releases they agreed
20 to, thus relieving the Reorganized Debtors of any exposure to claims by the RSA Noteholders for
21 breach of the Noteholder RSA and in particular the best efforts provisions." *See id.* at A1537-
22 A1538.

23  On appeal, Appellants renew their argument that their claims for breach of the Noteholder
24 RSA fall within certain carveouts listed in Section 10.9(b).  *See generally id.* at A1536-A1539.  At
25 the same time, Reorganized PG&E contends that the Bankruptcy Court erred in concluding that
26 the exculpation provision of Section 10.8 of the Plan does not immunize Reorganized PG&E from
27 Appellants' claims.  For the reasons explained below, the Court disagrees with both contentions
28 and affirms the Bankruptcy Court's decision.

### i. Enforcement of Plan Rights Exception

The release provision of Section 10.9(b) of the Plan contains a carveout that excludes from the release all "rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents."

> <u>Releases by Holders of Claims and Interests</u>. As of and subject to the occurrence of the Effective Date, ***except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents*** . . . and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, . . . the Backstop Commitment Letters, . . . [or] the Noteholder RSA.

*Id.* at A1071 (emphasis added).

The Bankruptcy Court found that this carveout does not preserve Appellants' claims for breach of the Noteholder RSA. *See id.* at A1538-A1539. It noted that under the Noteholder RSA, the Best Efforts Provision was a continuing obligation "running from the date of execution of the Noteholder RSA through the Effective Date of the Plan," which was July 1, 2020. *See id.* at A1538. Because the Debtors' obligations under the Best Efforts Provision ended on the Effective Date, the Bankruptcy Court reasoned that Appellants' claims for breach of the Best Efforts Provision "do not come within the phrase 'rights that remain in effect *from and after the Effective Date*.'" *Id.* (emphasis added).

On appeal, Appellants contend that the Bankruptcy Court's holding conflated the period for performance of the obligations under the Noteholder RSA with the period in which the parties to the Noteholder RSA could assert a claim for breach of the contract. Appellants Br. at 2.

The Court finds this distinction persuasive. Appellants' rights to receive the Debtors' "best efforts" ended on the Plan Effective Date, but their right assert a breach of contract claim for lack of performance had no such express time limit. Certainly, the Noteholder RSA did not set a deadline by which a party was required to assert a claim for breach of its provisions. *See* Dkt. No. 11 at A0381-A0401. Nor did the Plan itself set a deadline for filing administrative expense claims. *See generally id.* at A1030. And it is undisputed that Appellants asserted their

1  administrative expense claims well within any applicable statute of limitations.  *See* Cal. Civ.
2  Proc. Code § 337 (providing that a party may commence an action for breach of written contract
3  claim four years from the date of the breach or the end of the period for performance); *In re Death*
4  *Row Records Inc.*, No. 2:06-bk-11205, 2014 WL 2526963, at *16 (Bankr. C.D. Cal. May 9, 2014)
5  (finding that California's statute of limitations for breach of contract applied to claimant's
6  administrative expense application).  So because no applicable contractual provision set a time
7  limit on Appellants' right to assert a breach of contract claim for lack of performance, the Court
8  finds that the right to assert an administrative expense claim for breach of the Noteholder RSA's
9  Best Efforts Provision is a right that "remain[s] in effect from and after the Effective Date.'"  *Id.* at
10  A1071.

11  Reorganized PG&E does not appear to disagree.  It instead contends that the "Enforcement
12  of Plan Rights" carveout does not apply because the RSA Noteholders' rights to assert claims for
13  *breach of the Noteholder RSA* are not "rights . . . *to enforce the Plan or the Plan Documents*."
14  PG&E Br. at 5 (emphasis added).  In response, Appellants argue that by applying to the
15  Bankruptcy Court for allowance and payment of their administrative expense claims, they have
16  exercised a "right to enforce the Plan"—namely, the right to assert administrative expense claims
17  under Section 2.1. of the Plan, which preserves and provides for the treatment of administrative
18  expense claims.  Reply Br. at 9.

19  The Court agrees with Reorganized PG&E.  Appellants' claims for breach of the
20  Noteholder RSA do not seek to enforce a cause of action that arises out of the breach of a specific
21  provision of the Plan itself.  They instead seek to enforce a cause of action that arose out of the
22  alleged breach of the Noteholder RSA's Best Efforts Provision.  *See* Dkt. No. 11 at A0388-A0389.
23  In the Court's view, Appellants therefore seek to enforce the Noteholder RSA, not the Plan or a
24  Plan Document.

25  Appellants' argument that an attempt to assert any administrative expense claim is also one
26  to enforce the Plan itself requires reading the "Enforcement of Plan Rights" carveout at an
27  untenably high level of generality.  Such a reading would conflate the Noteholder RSA with the
28  Plan itself and would contradict the plain terms of the Plan, which separately defines "the Plan,"

"Plan Document, and "the Noteholder RSA." *See id.* at A1011, A1013.[4] Section 10.9(b) also separately identifies "the Noteholder RSA," "the Plan," and "Plan Documents," but does not call out the Noteholder RSA in the carveout preserving "rights . . . to enforce *the Plan* and *the Plan Documents*." *See id.* at A1071-1072 (emphasis added).[5] The logical inference is that the carveout preserving "rights . . . to enforce the Plan and the Plan Documents" does not also preserve rights to enforce the Noteholder RSA.

When it suits them, Appellants themselves recognize this distinction. As they explain elsewhere, "[t]he Noteholder RSA was an independent agreement between the RSA Noteholders and the Debtors for independent consideration . . . . *The RSA Noteholders' administrative expense claims are for damages arising from the Debtors' breach of the Noteholder RSA, not any other agreement or transaction*." Reply Br. at 17 (emphasis added). The Court agrees. Because Appellants' claims arise from the Debtors' alleged breach of the Noteholder RSA, and not the Plan, they are not based in rights to enforce the Plan or the Plan Documents. The Court accordingly affirms the Bankruptcy Court's conclusion that Section 10.9(b)'s "Enforcement of Plan Rights" carveout does not apply to the RSA Noteholders' claims.

### ii. Rights Otherwise Provided in the Plan

Section 10.9(b) also contains a second carveout preserving rights "otherwise provided in the Plan or in the Confirmation Order[.]"

> Releases by Holders of Claims and Interests. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents . . . ***and except as otherwise provided in the Plan or in the Confirmation Order***,

---

[4] *Compare* Dkt. No. 11 at A1013 (defining the Plan as "this chapter 11 plan, as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code" and defining Plan Document as "any of the documents, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date") *with id.* at A1011 (defining the Noteholder RSA as "that certain Restructuring Support Agreement, dated as of January 22, 2020, and as approved by the Order of the Bankruptcy Court dated February 5, 2020 [Docket No. 5637]").
[5] *See also id.* at A1072 ("the Released Parties, are deemed forever released and discharged . . . from any and all claims . . . in any manner arising from . . . *the Plan* and related agreements, instruments, and other documents (including *the Plan Documents* . . . . [and] *the Noteholder RSA* . . . )) (emphases added).

> the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, . . . the Backstop Commitment Letters, . . . [or] the Noteholder RSA.

Dkt. No. 11 at A1071 (emphasis added).

Appellants contend that this carveout preserves their claims for breach of the Noteholder RSA because Section 2.1 of the Plan "otherwise provided" for their right to assert an administrative expense claim. That section provides as follows:

> <u>Administrative Expense Claims</u>. In full and final satisfaction, settlement, release, and discharge of any Allowed Administrative Expense Claim against a Debtor . . . each holder of an Allowed Administrative Expense Claim shall receive . . . an amount in Cash equal to the Allowed amount of such Administrative Expense Claim; . . . . ***For the avoidance of doubt, no Administrative Expense Claims shall be discharged pursuant to the Plan***, other than Allowed Administrative Expense Claims that have been paid in Cash or otherwise satisfied in the ordinary course in an amount equal to the Allowed amount of such Claim on or prior to the Effective Date.

*See id.* at A1030 (emphasis added).

The Bankruptcy Court found Section 10.9(b)'s exception for rights "otherwise provided in the Plan" inapplicable. *See id.* at A1535. It first noted that Section 1.4 of the Plan defines an "Administrative Expense Claim" as "any cost or expense of administration of any of the Chapter 11 Cases arising on or before the Effective Date *that is allowable* under section 503(b) of the Bankruptcy Code[.]" *See id.* at A1535, A0994-A0995 (emphasis added). The Bankruptcy Court then explained that because it was "disallowing" Appellants' claims for breach of the Noteholder RSA as released by Section 10.9(b) of the Plan, they were not "allowable" claims as defined by Sections 1.4 and 2.1 of the Plan. *See id.* at A1535.

The Court affirms this conclusion for two reasons. First, the Court agrees that by agreeing to Section 10.9(b) of the Plan and Paragraph 56 of the Confirmation Order, Appellants voluntarily and consensually released the right to bring their claims for breach of the Noteholder RSA. The release provisions in Section 10.9(b) provide as follows:

> <u>Releases by Holders of Claims and Interests</u>. . . . . [*T*]*he Released Parties, are deemed forever released and discharged, to the*

> *maximum extent permitted by law* and unless barred by law, by the Releasing Parties *from any and all claims*, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, *and liabilities whatsoever* . . . *based on or relating to, or in any manner arising from, in whole or in part*, the Debtors, the Fires, the Chapter 11 Cases . . . the Backstop Commitment Letters . . . [and] *the Noteholder RSA[.]*

As the Bankruptcy Court noted, these release provisions are "far reaching" and "readily . . . encompass any alleged breach of the [Noteholder RSA] best efforts provision." *See id.* at A1537. Appellants are therefore "bound by the releases they agreed to, thus relieving the Reorganized Debtors of any exposure to claims by the RSA Noteholders for breach of the Noteholder RSA and in particular the best efforts provisions." *Id.* at A1537-38.

Second, the Court does not read Section 2.1 of the Plan to override the releases to which Appellants agreed. Section 2.1 states that "no Administrative Expense Claims shall be discharged pursuant to the Plan" but, as Judge Montali explained, that provision must be read together with Section 1.4 of the Plan, which defines an "Administrative Expense Claim" as "any cost or expense of administration of any of the Chapter 11 Cases arising on or before the Effective Date *that is allowable* under section 503(b) of the Bankruptcy Code[.]" *See id.* at A1535, A0994-A0995 (emphasis added). Put differently, Section 2.1 preserves administrative expense claims to the extent they are otherwise valid and allowable. Appellants' claims for breach of the Noteholder RSA are neither because they are expressly released by Section 10.9(b). The Court accordingly affirms the Bankruptcy Court's conclusion that Section 10.9(b)'s exception for rights "otherwise provided in the Plan" does not preserve Appellants' claims from release.

### iii. Exculpation

The Memorandum Decision also considered whether the exculpation provision of Section 10.8 of the Plan immunized the Debtors from Appellants' claims. Section 10.8 provides, in relevant part:

> Exculpation. . . . . *[N]o Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, . . . or liability for any claim* . . . in connection with or arising out of the administration of the Chapter 11 Cases; *the negotiation and pursuit of* the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, *the Noteholder RSA*, the Exit Financing Documents,

> the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, . . . ***or any agreement, transaction, or document related to any of the foregoing*** . . . .

Dkt. No. 11 at A1070 (emphasis added).

The Bankruptcy Court determined that Section 10.8 does not immunize Reorganized PG&E from Appellants' claims for breach of the Noteholder RSA because those claims did not arise from the "negotiation and pursuit . . . of the Noteholder RSA." *See id.* at A1535-A1536. This is because the "pursuit" of the Noteholder RSA ended when the Bankruptcy Court approved that agreement on February 5, 2020, but the Debtor's alleged breach of the Best Efforts Provision occurred afterwards.

On appeal, Reorganized PG&E contends that the Bankruptcy Court failed to address whether other categories in Section 10.8 provide immunity from Appellants' claims, such as the provisions for the negotiation and pursuit of the "Backstop Commitment Letters" and "Plan Funding," the "issuance of Securities" under the Plan, and "the administration of the Chapter 11 Cases." *See* PG&E Br. at 28.

But these arguments lack merit, and the Bankruptcy Court did not err in summarily rejecting them. "It is a standard rule of contract interpretation that specific terms control over general ones." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020). Here, the Bankruptcy Court properly concluded that the specific language in Section 10.8 addressing the Noteholder RSA provides that only claims arising out of "negotiation and pursuit" of that agreement are exculpated. *See* Dkt. No. 11 at A1535-A1536. In the Court's view, this language is unequivocal, and it controls over more general terms relating to documents and agreements that are extraneous to the Noteholder RSA. Thus, because the approval of the Noteholder RSA on February 5, 2020 left "nothing further to negotiate or pursue concerning that document," the Court affirms the Bankruptcy Court's conclusion that the exculpation provisions of Article 10.8 do not relieve Reorganized PG&E of its best efforts obligations under the Noteholder RSA. *Id.*

//

//

IV. **CONLCUSION**

For the reasons explained above, the Court **AFFIRMS** the Bankruptcy Court's ruling. The Clerk is directed to terminate this appeal and close the case.

**IT IS SO ORDERED.**

Dated: March 15, 2022

HAYWOOD S. GILLIAM, JR.
United States District Judge