1                 UNITED STATES BANKRUPTCY COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3                            -oOo-

4    In Re:                      ) Case No. 19-30088
                                 ) Chapter 11
5    PG&E CORPORATION AND PACIFIC   )
     GAS AND ELECTRIC COMPANY     ) San Francisco, California
6                                 ) Tuesday, March 29, 2022
             Reorganized Debtors.  ) 10:00 AM
7    _____  )
                                     REORGANIZED DEBTORS' SEVENTY-
8                                    SIXTH OMNIBUS OBJECTION TO
                                     CLAIMS (NO LIABILITY /
9                                    PASSTHROUGH CLAIMS)
                                     FILED BY PG&E CORPORATION
10                                   [10537]

11                                   CREDITOR TODD GREENBERG'S
                                     MOTION TO AMEND CLAIMS
12                                   NUMBERED 77335 AND 76018
                                     FILED BY TODD
13                                   GREENBERG [11992]

14                 TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE DENNIS MONTALI
15             UNITED STATES BANKRUPTCY JUDGE

16   APPEARANCES (All present by video or telephone):
     For the Reorganized          JENNIFER L. DODGE, ESQ.
17   Debtors:                     Law Offices of Jennifer L. Dodge
                                  Inc.
18                                2512 Artesia Boulevard
                                  Suite 300D
19                                Redondo Beach, CA 90278
                                  (310)372-3344
20
                                  THOMAS B. RUPP, ESQ.
21                                Keller Benvenutti Kim LLP
                                  650 California Street
22                                Suite 1900
                                  San Francisco, CA 94108
23                                (415)636-9015

24

25

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Todd Greenberg:          RICHARD A. LAPPING, ESQ.
                                  Trodella & Lapping LLP
 2                                540 Pacific Avenue
                                  San Francisco, CA 94133
 3                                (415)399-1015

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18   Court Recorder:             LORENA PARADA/ANKEY THOMAS
                                  United States Bankruptcy Court
19                                450 Golden Gate Avenue
                                  San Francisco, CA 94102
20

21   Transcriber:                RIVER WOLFE
                                  eScribers, LLC
22                                7227 N. 16th Street
                                  Suite #207
23                                Phoenix, AZ 85020
                                  (973)406-2250
24

     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, MARCH 29, 2022, 10:00 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session, the Honorable

5    Dennis Montali presiding.  Calling the matter PG&E Corporation.

6            I'll bring counsel in now, Your Honor.

7            THE COURT:  Okay.  Okay.  Good morning, Ms. Dodge, and

8    then Mr. Rupp.  You may make your appearances, please.

9            MS. DODGE:  Good morning, Your Honor.  Jennifer Dodge

10   on behalf of the reorganized debtors.

11           MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

12   Keller Benvenutti Kim on behalf of the reorganized debtors.

13           THE COURT:  And Mr. Lapping.

14           MR. LAPPING:  Good morning, Your Honor.  Richard

15   Lapping appearing on behalf of creditor Todd Greenberg.

16           THE COURT:  So Mr. Rupp and Ms. Dodge, are you going

17   to divide your time?  I mean, I didn't do a time allocation,

18   but what's your desire here?

19           MS. DODGE:  Your Honor, I will take the lead to the

20   extent that you would like to hear oral argument on this issue.

21           THE COURT:  Okay.  Well, and that's what I

22   anticipated, but Mr. Rupp indicated that he was going to

23   appear.  I didn't do a time allocation.  This is a very

24   discreet issue.

25           So Mr. Lapping, I'm going to let you make the first

(973 897-7300) | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    argument, and I'm not going to -- I'm not going to turn the

2    clock on yet.  Just be reasonable.

3            But here's my question.  Leaving aside the differences

4    of opinion about redline and Word and WordPerfect or whatever

5    form, these events occurred six years ago.  And I understand

6    Mr. Greenberg was representing himself early, but you've been

7    in his counsel for a long time.

8            Why did it take five and a half years or whatever to

9    add this -- both claims seem to be -- the biggest addition is

10   the lost rent.  Lost rent is lost rent.  Why was it something

11   that came up only in the context of this motion?

12           MR. LAPPING:  Well, Your Honor, I haven't been

13   involved since 2016.

14           THE COURT:  I know.  I know.  I'm acknowledging that.

15           MR. LAPPING:  Okay.

16           THE COURT:  But you have been involved for a while.

17           MR. LAPPING:  Right.  But the lost rent, I think, was

18   a component of the original claim.  I'm looking at the claim

19   for the property damage, and there is an item for lost rent.

20   And the whole purpose of the amendment, from our point of view,

21   is to basically describe the claim with greater particularity,

22   as set forth originally in the Sambo's Restaurants case.

23           And so we're updating it.  And these claims are kind

24   of befuddled, if you will.

25           THE COURT:  No, no.  Just wait.  Wait.  Slow down.

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  You're going too fast.  You're talking about -- let's start

2  with 77335.  That's the electrical interruption, right?

3          MR. LAPPING:  Yes.

4          THE COURT:  Okay.  So where is the lost rent in the

5  original claim?  And the current motion, if I read it

6  correctly, adds an 86,400-dollar item, which it looked to me

7  like a new claim -- not a new -- maybe not a new theory of

8  entitlement, but certainly a near measure of damage.

9          So I looked at -- I looked at the original one and

10  maybe -- oh, there it -- I beg your pardon.  Now I see it.

11  It's in a different section.  Oh.  Lost rent while waiting for

12  completion, 39,000.  So it's gone from 39 to 86,000.

13          Well, what's so magic?  Why was it necessary to -- and

14  why wasn't it in there to begin with?

15          MR. LAPPING:  Your Honor, I think we -- I sat with the

16  client, and we looked at the claim.  And my reaction was, it

17  needed to be clarified.  And he has a claim for the fact that

18  he couldn't rent the upper or lower unit -- I forget which --

19  during the period of time when it should have been under

20  repair.

21          And as I sit here now, we came up with a calculation

22  for it.  But the concept was there, and the passage of time, it

23  had just increased -- our view of it is the proof will show

24  that there's twenty-four months of lost rent, and that pencils

25  out to 86,000 dollars.

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  Okay.  So let's now switch to the other

2  claim, the claim for the damaged gas lines.  In that case there

3  is a -- the new claim has the lost rent -- just a minute.  Hold

4  on.  My phone is ringing.  I don't want to kill this phone

5  here.

6        That damaged gas line, claim number 76018, it looks

7  like an additional 165,000 dollars.  I don't recall what the

8  original amount was.  Maybe you do, but I just --

9        MR. LAPPING:  Your Honor, there's an exhibit to the

10  original proof of claim, and it's a summary of the damages.

11  And one of the items, again, is lost rent, waiting for

12  completion of construction, for thirteen months.  And on my

13  advice, I think, yeah, an additional nine months.

14        So what do we have in the current one?

15        THE COURT:  Well, the current one, I see -- because of

16  the voluminous paperwork, I just looked at a summary of the

17  claim, and the claim went up by -- if I grant your motion, the

18  claim is going up by, I think, a substantial sum.  And there

19  may be a couple of smaller components, but the lost rent seemed

20  to be the biggest one.

21        Okay.  Listen, you've answered my question.  Go ahead

22  and make whatever argument you wish to make.  And I do have the

23  background.

24        MR. LAPPING:  Well, yes, Your Honor.  I mean, I think

25  the idea is that I wanted to -- I wanted to get the claims

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  organized so that they were more intelligible.  And do we win

2  on every element of damages?  I don't know.  Maybe.  We

3  certainly have a more thorough explanation of what is in the

4  claim and what it's composed of.

5      And so I just believe that it was appropriate to amend

6  it.  And yeah, did I take a little longer than I should have?

7  Perhaps.  But if there is a need to continue this, we offered

8  to continue it for four weeks, based on counsel's indication

9  that they want to do discovery.  But again, they haven't done

10  any discovery so far, at least other than having a tree expert

11  drive by and look at this tree.

12      So I guess it seems to me that the amendments are

13  appropriate, and they'll help the Court and the parties

14  understand what the claims are, what they're based on, and that

15  could potentially lead to a resolution outside of Court.

16      THE COURT:  Well, we -- excuse me.  I'm sorry.  I

17  didn't know I'd be coughing here.  Obviously, I'm not

18  addressing any of the merits today.  And whether I grant this

19  motion or deny it, we're going to have an adjudication of your

20  client's rights and the debtors' defenses.  And that's the time

21  to get into the subject of what is the right amount.

22      So if the lost claimed is X versus two X, that's for a

23  proof of the matter because you are right, and I stand

24  corrected, the original claim on the electrical interruption

25  certainly did have a lost rent component.  It's not a new cause

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  of action.

2  One of the things that I wanted to focus on is whether

3  Mr. Greenberg is adding a new cause of action.  And it doesn't

4  strike me that he is, at least the way you explained it.  If

5  Mr. Dodge has a different take on that, I'll consider and

6  decide whether that's relevant.  I may not -- I don't believe

7  the debtor has ever raised any statute of limitations to

8  defenses here.  So I'm not going to revisit that question.

9  Okay.  Go ahead.  Do you want to add anything further?

10  And then you'll have a chance to respond to whatever Ms. Dodge

11  adds in her argument.

12  MR. LAPPING:  Well, yes, Your Honor.  I don't think

13  we're -- I think we tried not to add new causes of action.

14  We're operating with the same operative facts.  And normally, I

15  don't know what the practices in your court.  But in state

16  court and in other courts, federal courts, the proof comes in

17  and the parties can sometimes amend, based on what the evidence

18  is.

19  THE COURT:  Well, I mean, that's general basic

20  procedural law.  But when they're -- but again, what's

21  different here is we had a scheduling order, and sure, whether

22  it's state court or federal district court or the bankruptcy

23  court, generally, you have claims deadlines.  Here, we had a

24  claims deadline.  Your client filed proofs of claim by the

25  deadline.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    I think you've persuaded me that the amendments, if

2  permitted, are relating back to the nucleus of facts that were

3  embodied in the original proof of claim, and it's really just

4  an additional add-on of damage.  If the debtor has a different

5  take -- at least, it appears to me that the debtor hasn't

6  raised a statute of limitations defense.

7    However, what makes this case a little different is we

8  had an agreed scheduling order, and scheduling orders replace

9  traditional deadlines by scheduling deadlines, and that's where

10  we'll get into the redline versus no redline, her version of --

11  see, in the old days, you write it out and send it to somebody.

12  Remember, Mr. Lapping, when you and I were baby lawyers, we

13  would mail something to somebody, and a week later you got a

14  response back.  You didn't get a text back thirty seconds later

15  that gives opinion.  So --

16    MS. DODGE:  I did the same thing, too, Your Honor.  I

17  am --

18    THE COURT:  You're too young.

19    MS. DODGE:  No, I'm not.  I started practicing in '94,

20  so we did not -- I'm with you there.

21    THE COURT:  Well, Ms. Dodge, why don't you -- why

22  don't you respond?

23    I mean, this is not -- is there any theory under which

24  you believe that Mr. Greenberg is adding a new cause of action

25  in the traditional sense?  Forget the scheduling order for a

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    moment.  I don't think so.  I mean, that's certainly the big

2    component of the electric interruption claim is lost rent,

3    almost completely.  Maybe I missed one little thing, but it's

4    the main theory.

5              So you're not getting sandbagged by a new legal

6    theory, are you?

7              MS. DODGE:  No.  With the refrigerator claim, the main

8    component, as far as I saw it originally, was the replacement

9    of all of the wood laminate flooring that he claims the

10   refrigerator ruined.  And there was a little bit of lost rent.

11   And now that's been increased by -- I don't know how many

12   months that is.  And --

13             THE COURT:  Well, I do.  The original claim says

14   anticipated nine months and the current proposed motion is

15   twenty-four months.  I mean, the --

16             MS. DODGE:  Right.  Right.

17             THE COURT:  There is the difference.  It's gone

18   from --

19             MS. DODGE:  Yeah.

20             THE COURT:  -- from 39,000 to 86,000.

21             MS. DODGE:  Right.  So again, I'm not so concerned

22   about the -- well, I shouldn't say that -- about the increase

23   in the lost rent.  That component was there.  That's not a new

24   theory, so it's not something we can say, oh, we're surprised

25   that you're adding a new element of damage.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    What does concern me is not with the refrigerator

2  claim, but with the property damage claim under 76018, where I

3  don't think it necessarily would qualify as a new cause of

4  action, but it's a completely new theory of liability as to why

5  Mr. Greenberg believes that PG&E is liable for replacement of

6  his deck.  Originally, it was that ARB, a contractor of PG&E,

7  damaged his deck when they did the work by installing the gas

8  lines from the meter to the house.

9    Now, in this proposed amended -- in the motion to

10  amend, it states that the reason PG&E is liable for replacement

11  of the deck is because PG&E didn't replace the sidewalk

12  concrete in front of his house, and that was done subsequently.

13  And then there was a water pipe that was worked on by I don't

14  know who.  And in the process of working on that water pipe,

15  that was damaged.  And then somehow that caused damage to the

16  deck, and that PG&E -- if PG&E had replaced the sidewalk or the

17  concrete, then that never would have happened.

18    So that's a completely new theory that is raised now

19  for the first time and by this motion to amend.  I don't know

20  anything about the other parties involved.  And to the extent

21  to which the Town of Fairfax is responsible for the sidewalk or

22  the property owner -- and we didn't contract, as far as I

23  know -- and when I say "we", I mean PG&E -- did not contract

24  have any contract with regard to this water pipe and the

25  damage.  And if there was a water pipe damaged, of course, that

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  person could be responsible.  I don't even know who that is.

2  So that's fine.

3         THE COURT:  But doesn't that -- but Ms. Dodge, doesn't

4  that go to the merits of your defense?  In other words, if you

5  proved -- if you prove that your clients did the sidewalk,

6  period, and Mr. Lapping can't prove -- I mean, let's assume

7  burden, here -- can't prove that PG&E caused the water damage,

8  then they'll lose that portion of the claim.

9         THE COURT:  Well, my point is, there, is that that's a

10 completely new theory of liability from what was previously

11 asserted in the proof of claim.  And I don't understand -- it's

12 not like that work, as I understand it, happened yesterday, so

13 I don't understand why the claim was not amended until less

14 than a month ago.  And there's really no -- and Mr. Lapping has

15 already admitted that he could have amended these sooner.

16        And that's the issue, Your Honor.  I mean, I want to

17 know what claims we're facing and what PG&E needs to do

18 discovery on, in terms of when the claims are actually -- okay,

19 these are the claims that are going to trial, and these are the

20 claims -- and again, like you said, it could be part of proof.

21        But this is a new theory of liability because he

22 realizes now that he is not going to be able to pin liability

23 on ARB because of the fact that ARB, to my understanding,

24 didn't damage the property and didn't touch his deck.  So he

25 has got to come up with a new theory as to why the deck -- why

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  PG&E is responsible for the deck.  And it's this new convoluted

2  theory.

3       And there are new items of damage that he's added in,

4  which I don't even know what some of them are, like damage to a

5  French drain system.  He is claiming damages for the new water

6  pipe, a new barbecue, and damage to a --

7       THE COURT:  Yeah.

8       MS. DODGE:  -- Super Ladder (phonetic) and Christy box

9  (phonetic).  I don't even know what that is.  These are all new

10  items.

11       THE COURT:  Well, okay, but hold on.  The fact that

12  you don't know what it is doesn't mean you can't know, or

13  couldn't have known if there's time.  But let me go back for a

14  minute.  I'm looking at the amendment -- excuse me, the

15  attachment to the amendment, the proposed amendment, and that

16  does have Dennis Webb Construction estimate of 182,000 dollars.

17  That's the big ticket item, right, that's being added?

18       MR. LAPPING:  Your Honor, I think that was in there

19  earlier.  That's not new.

20       THE COURT:  Okay.  What are the -- then I'm having

21  trouble with the exhibits.  What's the new addition?  If Webb

22  was in there originally, then I'll take your word for it.

23  Well, if you know he went by --

24       MR. LAPPING:  We are trying to --

25       THE COURT:  -- almost 200 -- huh?  Pardon me.

PG&E Corporation and Pacific Gas and Electric Company

1          MR. LAPPING:  Your Honor, we are trying to clarify a

2     few things.  And I mean, if you look at our amended claim,

3     docket 11992, at page 77, it's all the way in the back.

4          THE COURT:  Yeah.  I'm telling you right now I haven't

5     printed it out yet.

6          MR. LAPPING:  Well, that's okay.

7          THE COURT:  It's an 80-page document.

8          MR. LAPPING:  I'll just make the point -- I'll just

9     make the point.  There's an invoice of an estimate to run the

10    new waterline under the deck, and that was also on page 117 of

11    120 of the old claim.

12          So we're not really adding that.  We're clarifying it

13    because the old claim wasn't really organized well, and it was

14    hard to follow.  And frankly, I don't even know where in that

15    claim there is any allegation that ARB was responsible for

16    damaging the deck.  It may be in there, but I missed it.

17          And so what we're trying to do is basically look at

18    what happened at this job site and what were the damages and

19    trying to cure defects in the original claim and to clarify

20    what our claim is now.

21          THE COURT:  Do you agree that at trial you're going to

22    have to prove that PG&E caused or is responsible for the deck

23    damage?

24          MR. LAPPING:  Yes.  It's a question of foreseeability,

25    and we'll put on evidence on that.

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  Well, or no.  Maybe it is, but maybe it's

2   a question of something else came along after PG&E was doing

3   what it was doing, and somebody else damaged the deck.  But if

4   that's the proof, then PG&E won't be stuck with that portion of

5   the claim, right.

6        In other words, if they damaged the gas lines, that's

7   one thing.  If they damaged the deck as a consequence, that

8   follows.  But if it's an intervening cause that is someone

9   else's responsibility, then you lose.  You've got to prove it.

10  You have the burden, agree?

11       MR. LAPPING:  I agree that I have the burden, Your

12  Honor.  No question about it.

13       THE COURT:  Yeah.  So --

14       MS. DODGE:  Your Honor, when you talk about the --

15       THE COURT:  Yeah.

16       MS. DODGE:  -- other parties, that's the other issue

17  is that there may be other parties that need to be added to

18  this.

19       And I want to go back to the fact you mentioned

20  before, that there is a scheduling order in place here that --

21  and I just want to disavow the notion that Mr. Lapping seems to

22  be putting forward that somehow we were tricking him or

23  something with switching words out.

24       The motion to amend deadline was one of the key issues

25  that we negotiated with regard to the scheduling order because

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    it was it was originally in there, we took it out, and Mr.

2    Lamping said, no, I want to leave it in because I'm considering

3    a motion to amend.

4         And so we first had said something like fourteen days.

5    Then we wanted to get a date certain in there.  And then given

6    the trial deadline that we were working under and the discovery

7    deadline of May 20th, we wanted to make sure that we would have

8    enough time.  That's why we had put the deadline in of March

9    15th.

10        And I just want to point out that once you have a

11   scheduling order, it can only be modified upon good cause

12   shown.  And our contention is that there is really no good

13   cause shown here.

14        I do also want to bring one other item to the Court's

15   attention that we just found out about yesterday.  I received a

16   call from an attorney who represents Teichert Pipelines, who is

17   one of the contractors that was involved in entrenching to

18   place the gas line from the street to the meter.  And

19   apparently, Mr. Greenberg has filed a separate action in Marin

20   County Superior Court, and he has filed that against Teichert

21   Pipelines, ARB, Bauman Landscape & Construction, and W.K.

22   McLellan.

23        And this was filed February 3rd.  And it sets forth,

24   essentially, the same causes of action that relate to the

25   property damage claims here for 76018 and 78381, which are the

PG&E Corporation and Pacific Gas and Electric Company

1  property damage claims and the tree damage claims. And the

2  complaint contains causes of action for negligence, trespass to

3  timber, with regard to the redwood trees, which is in claim

4  78381, trespass to timber as to a bay tree, and then a private

5  nuisance cause of action.

6  And as I said, we just learned about this yesterday.

7  So what I'd like to ask the Court for is maybe if we can

8  reconvene in a couple of weeks to determine how we want to

9  proceed with this. Because it may be it doesn't make sense to

10  have two parallel actions, one proceeding in bankruptcy court,

11  where these parties that are named in the state court action

12  may be necessary parties or that need to be brought -- and I

13  don't even know the water pipe contractor -- to have two

14  different adjudications in two different forums.

15  THE COURT: Mr. Lapping, is this news to you, or are

16  you familiar with this litigation that she described?

17  MR. LAPPING: I am familiar with it. I am not --

18  THE COURT: Okay.

19  MR. LAPPING: -- the counsel of record in that case.

20  THE COURT: Okay. Well, so Ms. Dodge, what you are

21  doing is saying, let's have a further timeout. I mean, that,

22  by definition, it's going to change the scheduling order, but

23  obviously it makes no sense to litigate twice what could be

24  litigated once. I don't know whether you would try to remove

25  those matters here or suggest that this matter be sent out. I

PG&E Corporation and Pacific Gas and Electric Company

1   don't know.  I mean, there ought to be some sensible way to do

2   it efficiently.

3           MS. DODGE:  Well, it does, Your Honor -- I'm sorry to

4   interrupt.

5           THE COURT:  No.

6           MS. DODGE:  The state court action does not address

7   the refrigerator claim.  So the refrigerator claim is not

8   affected by that state court action.  So regardless of what

9   decision is made with the property damage actions -- with the

10  gas line work and the tree issue -- the refrigerator claim is

11  before you, and that would --

12          THE COURT:  You can't get --

13          MS. DODGE:  -- need to be adjudicated.

14          THE COURT:  You can't get the tree guy for the

15  smelly --

16          MS. DODGE:  Yeah.  No, Your Honor --

17          THE COURT:  -- (indiscernible).

18          MS. DODGE:  -- you're stuck with the refrigerator

19  claim.

20          THE COURT:  Yeah.  Well, so.  But Ms. Dodge, it

21  probably makes no sense to bifurcate the disputes into three

22  parts, either.  I mean, maybe it does.  I don't know.

23          Well, so what would you suggest that I do today, then?

24  Just restate it, so we're clear.  Ms. Dodge, you're call.

25          MS. DODGE:  Right.  I would like -- as I said, I just

PG&E Corporation and Pacific Gas and Electric Company

1   learned about this yesterday.

2        THE COURT:  Right.

3        MS. DODGE:  I would like to maybe reconvene in a week

4   or so before Your Honor to have a chance to discuss with Mr.

5   Lapping and see what the best way is to proceed.

6        THE COURT:  Mr. Lapping, what do you think of that?

7        MR. LAPPING:  Well, Your Honor, I have to be open to

8   that.  I'm not sure that it needs -- I mean, I think you could

9   grant this motion today on a couple of different grounds.  And

10  when you look at the scheduling order and say, well, for good

11  cause -- the claims are bad condition.  They needed to get

12  spruced up so that they were more intelligible.

13       And that's a good reason to allow us to get around the

14  problem with the scheduling order.  That, and the fact that it

15  wasn't just a negotiation over the timing.  It was changing

16  from filed to hearing and then creating a situation where the

17  order couldn't possibly be complied with because of the timing.

18  That's a different -- that's a substantive change.

19       But I don't have a problem with delaying this, I

20  suppose, to allow PG&E to investigate whatever claim this is.

21  And --

22       THE COURT:  Well, I mean, obviously --

23       MR. LAPPING:  -- so you --

24       THE COURT:  -- if I had -- if I had announced at the

25  start of the hearing that I was granting your motion, I'm sure

PG&E Corporation and Pacific Gas and Electric Company

1   Ms. Dodge would still -- she might be mad at me, but she would

2   still say, we've got this other new development.  So --

3           MR. LAPPING:  Um-hum.

4           THE COURT:  But I have to go back and kind of gauge my

5   thinking about this.  What if there only had been refrigerator

6   claim?  Would I have punished Mr. Greenberg or his counsel by

7   saying you can't amend, when my instincts tell me amending to

8   increase a measure of damage that was already alleged and to be

9   getting up to speed is not really a new claim.  It's just an

10  additional fact.

11          And similarly, if we had gone to trial and you put on

12  your case and you said we have three years' worth of lost rent,

13  if Ms. Dodge says, wait a minute, you only plead one year, I

14  probably would have said, come on, we're figuring out what the

15  violation of rights were, and what the consequences are are

16  something a little different.

17          And I have to say that, given the Ninth Circuit's

18  repeated admonition about liberal claim amendments, I am not,

19  at this point in my career, interested in throwing a claimant

20  and his lawyer into the trash can because of a word processing

21  formatting error.  We all make those kinds of errors.

22          And again, I go back to the old days, when we didn't

23  have (audio interference) lines and margins and Microsoft Word

24  making things even more difficult.  Those things didn't happen.

25  You didn't have redlines.  You mailed your opponent a proposed

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1 amendment, and a week later, you got back no or yes.

2 So let's put it this way. Ms. Dodge, this is a direct

3 way of saying, I'm prepared to call a timeout while you and

4 your clients figure out what to do about this new development

5 and talk to Mr. Lapping. But I think, in fairness, I'm

6 persuaded that the claim should be amended as requested,

7 notwithstanding the scheduling order. Scheduling orders are

8 for the benefit of the parties and the court, but my scheduling

9 order is always subject to making sense and doing the right

10 thing, and that's what I think the law requires.

11 And so why don't we do this. I would say that my

12 inclination is that, without even getting down to the

13 formatting error, that this isn't bringing in a new theory that

14 maybe would create new defenses, at least said timing defenses.

15 I don't want to misstate my case. If Mr. Greenberg was adding

16 a theory that PG&E has an absolute defense to saying, we didn't

17 do it, then they're not going to lose that defense by granting

18 this motion because the granting of the motion just grants the

19 motion. It doesn't kill any defenses.

20 But I'm also going to be -- I'm also willing to call a

21 timeout for a couple of weeks. And if that means take the

22 trial off calendar, so be it, or not. And Ms. Dodge, perhaps

23 in a short continuance, you'll decide you want to go forward on

24 schedule or do something. I know you wanted me to grant more

25 time on this trial, and I'm inclined to do it, but not if it's

PG&E Corporation and Pacific Gas and Electric Company

1    just to measure three months' worth as one month.

2            If it is to measure the impact on the parties by this

3    new development, then obviously that's far more important.

4            So I don't want to mislead you.  Are you clear on what

5    my thinking is here?

6            MS. DODGE:  I believe so, Your Honor.  I understand

7    we'll just -- like you said, take a timeout to determine how we

8    want to proceed with regard to this pending state action.  And

9    like I said, though, that doesn't impact the refrigerator

10   claim.  And I know that --

11           THE COURT:  Well, no, and if you told me you think

12   it's more efficient to separate out the refrigerator claim, and

13   it makes sense to stay on the schedule for the trial of the

14   refrigerator claim, I guess we'll do it.  It seems like it

15   might be inefficient, but maybe that's the best result.

16           And if you think that, on further reflection, you're

17   better off litigating everything with Mr. Greenberg, at least

18   that can be done here, but you need some more time, I'm

19   amenable to that, too.  My schedule is not horribly difficult

20   these days.  So I'm not wedded to the trial date that we set.

21           Let me rephrase it where we are, so you take back to

22   your clients what did the crazy judge do?  The crazy judge

23   decided that I'm not going to decide on the merits here based

24   upon a formatting miscommunication between two experienced

25   counsel who probably do not make it their habit to play hide-

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  the-ball and send the guy a redline that doesn't have the real

2  redline.  And I'm satisfied that Mr. Lapping has persuaded me

3  that, in large measure for both claims, the amendments appear

4  appropriate.

5       So my tentative thinking is to grant the motion to

6  permit the amendment of the two claims that are the subject of

7  it, 76018 and 77335, as requested in the motion, to, for the

8  moment, keep the trial on schedule for our trial date but to

9  reconvene this hearing in a couple of weeks to let counsel on

10  both sides, but particularly the debtors' side, figure out what

11  they want to do based upon this new development that impacts

12  the gas line claim but not the refrigeration claim.

13       And if the best consensus is that the matter should be

14  bifurcated, I guess we'll stay on track for the refrigeration

15  claim.  If it should be continued together or something else

16  we'll vacate the trial scheduling order and -- dare I risk --

17  issue another trial scheduling order, with no more amendments

18  permitted, Mr. Lapping.

19       MR. LAPPING:  Okay.

20       THE COURT:  Now, we have a regular PG&E calendar

21  coming up, Mr. Rupp.  I believe it's on the 26, right?

22       You're muted.

23       MS. DODGE:  You're on mute.

24       MR. RUPP:  Your Honor, we have one before then on

25  April 12.

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Okay.  How about if we just put this over

2  to April 12th, Ms. Dodge, and you and Mr. Lapping and your

3  client figure out -- I mean, look, you're perfectly willing to

4  settle this case.  I know you've tried before.  But shall I ask

5  Mr. Rupp and the company to fire up one of their mediators to

6  try again?

7    MS. DODGE:  Yeah, we tried that, Your Honor, and we

8  couldn't even get a counter.  So the fact that we've not gotten

9  a counter and now the claims are increased by 240,00 dollars is

10 not a good sign.

11    THE COURT:  Well, okay.  Then --

12    MS. DODGE:  I wish.

13    THE COURT:  Let's put it -- well --

14    MR. LAPPING:  I'd like to say what the offer was, but

15 it now appears --

16    THE COURT:  No, no.  Don't.

17    MR. LAPPING:   Yeah.

18    THE COURT:  I don't want you to.  Mr. Rupp knows that

19 PG&E has a bunch of trained pit bulls locked up in the

20 mediation cage, and I let one of them out, maybe they'll get

21 this thing fixed.

22    But in the meantime, I'm doing this.  I'm making, on

23 the record, a tentative ruling, tentatively, that I'm going to

24 grant Mr. Greenberg's motion to amend both claims as requested.

25 But I'm going to make a final decision on that, on what we do

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net
of 36

PG&E Corporation and Pacific Gas and Electric Company

1 and what is the fate of these matters, at a hearing we'll set

2 for now on April 12th at 10 o'clock.

3 And Ms. Dodge, this is not an indirect way of saying I

4 want to revisit the question. I mean, you've made your point.

5 I've made my point. I'm going to let the claims get amended.

6 I'm just not going to just sign any orders or make any

7 definitive decisions until I hear back from you.

8 And you, counsel, are free to work something out on

9 your own and to avoid the hearing on April 12th. Ms. Parada

10 can easily accommodate you if there's an agreement to split the

11 things or reschedule or do something. We don't have to go

12 through the expense of your clients and all of us having a

13 fancy hearing. You can do it by conversations with Ms. Parada

14 if it works otherwise.

15 If not, I'll assume that on the 12th at 10 o'clock

16 calendar, we'll talk about what we're doing with the amended

17 claims. But --

18 MS. DODGE: Your Honor, I just want to make clear for

19 the record, that, as you said, we'll revisit this on April

20 12th, but if the claims are amended, that the debtors will be

21 allowed additional time for this new theory, in terms of the

22 claim regarding the deck.

23 THE COURT: Yes. Yes. Let's make that clear. Yes.

24 I still think, my own sense, it's probably not cost effective

25 to split out the refrigeration claim, but maybe it is. And if

PG&E Corporation and Pacific Gas and Electric Company

1   that's the desire of PG&E, perhaps we'll just have a trial on

2   refrigeration.  To use your term, I'm stuck with this rotten

3   food.  We'll get the animal feces that's in the other claim

4   until I get that one right.

5           But I'll consider your wishes and your desires for

6   moving the schedule for either both claims or the damaged gas

7   line after you've had a chance to reflect on it with your

8   client and assess what you wanted to do on this new

9   development.

10          And we won't talk about redlines.  And from now on in

11  this case, I want you all to do it all in handwritten form by

12  United States mail.

13          MR. LAPPING:  Okay.

14          THE COURT:  Okay.  Thank you all for you time.

15          MS. DODGE:  You know that they don't even teach kids

16  cursive in school anymore, I just found out.  Isn't that

17  strange?  I mean, do you remember learning cursive when we were

18  in elementary school?  They said that kids don't --

19          THE COURT:  Oh, yeah.

20          MS. DODGE:  -- even learn that anymore.  They don't

21  know how to write -- they don't know how to handwrite.  They

22  can print, but they can't --

23          THE COURT:  Well, I have some of the worst handwriting

24  in the world.  I took the Palmer Method in grammar school, and

25  I can find something that I signed when I was ten.  It's

PG&E Corporation and Pacific Gas and Electric Company

1    legible then.

2            MS. DODGE:  Not anymore.

3            MR. LAPPING:  Yeah, mine isn't either.  All right.

4    Thank you, Your Honor.

5            MS. DODGE:  All right.

6            THE COURT:  Thank you for your time, everyone.

7            MS. DODGE:  Thank you.

8            MR. LAPPING:  See you in a couple weeks.

9            THE COURT:  Everyone have a good day.

10            MR. LAPPING:  All right.

11            MR. RUPP:  Thank you, Your Honor.

12            THE COURT:  Thank you.  Bye.

13        (Whereupon these proceedings were concluded at 10:36 AM)

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                           I N D E X

2     RULINGS:                                    PAGE  LINE

3     Motion to amend claims 77335 and 76018        24    24

4     tentatively granted

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 19-30088    Doc# 12097    Filed: 03/31/22    Entered: 03/31/22 09:02:01    Page 28

(973) 406-2250 | operations@escribers.net | www.escribers.net

of 36

1               C E R T I F I C A T I O N

2

3     I, River Wolfe, certify that the foregoing transcript is a true

4     and accurate record of the proceedings.

5

6

7

8

9

10    _____

11    /s/ RIVER WOLFE

12

13    eScribers

14    7227 N. 16th Street, Suite #207

15    Phoenix, AZ 85020

16

17    Date:  March 30, 2022

18

19

20

21

22

23

24

25

**A**

**able (1)**
12:22
**absolute (1)**
21:16
**accommodate (1)**
25:10
**acknowledging (1)**
4:14
**action (13)**
8:1,3,13;9:24;11:4;
16:19,24;17:2,5,11;
18:6,8;22:8
**actions (2)**
17:10;18:9
**actually (1)**
12:18
**add (3)**
4:9;8:9,13
**added (3)**
13:3,17;15:17
**adding (5)**
8:3;9:24;10:25;
14:12;21:15
**addition (2)**
4:9;13:21
**additional (5)**
6:7,13;9:4;20:10;
25:21
**add-on (1)**
9:4
**address (1)**
18:6
**addressing (1)**
7:18
**adds (2)**
5:6;8:11
**adjudicated (1)**
18:13
**adjudication (1)**
7:19
**adjudications (1)**
17:14
**admitted (1)**
12:15
**admonition (1)**
20:18
**advice (1)**
6:13
**affected (1)**
18:8
**again (7)**
6:11;7:9;8:20;
10:21;12:20;20:22;
24:6
**against (1)**
16:20
**ago (2)**
4:5;12:14
**agree (3)**
14:21;15:10,11

**agreed (1)**
9:8
**agreement (1)**
25:10
**ahead (2)**
6:21;8:9
**allegation (1)**
14:15
**alleged (1)**
20:8
**allocation (2)**
3:17,23
**allow (2)**
19:13,20
**allowed (1)**
25:21
**almost (2)**
10:3;13:25
**along (1)**
15:2
**always (1)**
21:9
**amenable (1)**
22:19
**amend (8)**
7:5;8:17;11:10,19;
15:24;16:3;20:7;
24:24
**amended (8)**
11:9;12:13,15;14:2;
21:6;25:5,16,20
**amending (1)**
20:7
**amendment (6)**
4:20;13:14,15,15;
21:1;23:6
**amendments (5)**
7:12;9:1;20:18;
23:3,17
**amount (2)**
6:8;7:21
**animal (1)**
26:3
**announced (1)**
19:24
**answered (1)**
6:21
**anticipated (2)**
3:22;10:14
**anymore (3)**
26:16,20;27:2
**apparently (1)**
16:19
**appear (2)**
3:23;23:3
**appearances (1)**
3:8
**appearing (1)**
3:15
**appears (2)**
9:5;24:15
**appropriate (3)**
7:5,13;23:4

**April (5)**
23:25;24:2;25:2,9,
19
**ARB (5)**
11:6;12:23,23;
14:15;16:21
**argument (4)**
3:20;4:1;6:22;8:11
**around (1)**
19:13
**aside (1)**
4:3
**asserted (1)**
12:11
**assess (1)**
26:8
**assume (2)**
12:6;25:15
**attachment (1)**
13:15
**attention (1)**
16:15
**attorney (1)**
16:16
**audio (1)**
20:23
**avoid (1)**
25:9

**B**

**baby (1)**
9:12
**back (11)**
9:2,14,14;13:13;
14:3;15:19;20:4,22;
21:1;22:21;25:7
**background (1)**
6:23
**bad (1)**
19:11
**bankruptcy (2)**
8:22;17:10
**barbecue (1)**
13:6
**based (5)**
7:8,14;8:17;22:23;
23:11
**basic (1)**
8:19
**basically (2)**
4:21;14:17
**Bauman (1)**
16:21
**bay (1)**
17:4
**befuddled (1)**
4:24
**beg (1)**
5:10
**begin (1)**
5:14
**behalf (3)**

3:10,12,15
**believes (1)**
11:5
**benefit (1)**
21:8
**Benvenutti (1)**
3:12
**best (3)**
19:5;22:15;23:13
**better (1)**
22:17
**bifurcate (1)**
18:21
**bifurcated (1)**
23:14
**big (2)**
10:1;13:17
**biggest (2)**
4:9;6:20
**bit (1)**
10:10
**both (5)**
4:9;23:3,10;24:24;
26:6
**box (1)**
13:8
**bring (2)**
3:6;16:14
**bringing (1)**
21:13
**brought (1)**
17:12
**bulls (1)**
24:19
**bunch (1)**
24:19
**burden (3)**
12:7;15:10,11
**Bye (1)**
27:12

**C**

**cage (1)**
24:20
**calculation (1)**
5:21
**calendar (3)**
21:22;23:20;25:16
**CALIFORNIA (1)**
3:1
**Call (5)**
3:3;16:16;18:24;
21:3,20
**Calling (1)**
3:5
**came (3)**
4:11;5:21;15:2
**can (10)**
8:17;10:24;16:11;
17:7;20:20;22:18;
25:10,13;26:22,25
**career (1)**

20:19
**case (8)**
4:22;6:2;9:7;17:19;
20:12;21:15;24:4;
26:11
**cause (9)**
7:25;8:3;9:24;11:3;
15:8;16:11,13;17:5;
19:11
**caused (3)**
11:15;12:7;14:22
**causes (3)**
8:13;16:24;17:2
**certain (1)**
16:5
**certainly (4)**
5:8;7:3,25;10:1
**chance (2)**
8:10;19:4;26:7
**change (2)**
17:22;19:18
**changing (1)**
19:15
**Christy (1)**
13:8
**Circuit's (1)**
20:17
**claim (53)**
4:18,18,21;5:5,7,16,
17;6:2,2,3,6,10,17,17,
18;7:4,24;8:24;9:3;
10:2,7,13;11:2,2;12:8,
11,13;14:2,11,13,15,
19,20;15:5;17:3;18:7,
7,10,19;19:20;20:6,9,
18;21:6;22:10,12,14;
23:12,12,15;25:22,25;
26:3
**claimant (1)**
20:19
**claimed (1)**
7:22
**claiming (1)**
13:5
**claims (23)**
4:9,23;6:25;7:14;
8:23,24;10:9;12:17,
18,19,20;16:25;17:1,
1,19:11;23:3,6;24:9,
24;25:5,17,20;26:6
**clarified (1)**
5:17
**clarify (2)**
14:1,19
**clarifying (1)**
14:12
**clear (4)**
18:24;22:4;25:18,
23
**CLERK (1)**
3:4
**client (4)**
5:16;8:24;24:3;

Case: 19-30088    Doc# 12097    Filed: 03/31/22    Entered: 03/31/22 09:02:01    Page 30
of 36

26:8
**clients (4)**
12:5;21:4;22:22;
25:12
**client's (1)**
7:20
**clock (1)**
4:2
**coming (1)**
23:21
**company (1)**
24:5
**complaint (1)**
17:2
**completely (4)**
10:3;11:4,18;12:10
**completion (2)**
5:12;6:12
**complied (1)**
19:17
**component (5)**
4:18;7:25;10:2,8,23
**components (1)**
6:19
**composed (1)**
7:4
**concept (1)**
5:22
**concern (1)**
11:1
**concerned (1)**
10:21
**concluded (1)**
27:13
**concrete (2)**
11:12,17
**condition (1)**
19:11
**consensus (1)**
23:13
**consequence (1)**
15:7
**consequences (1)**
20:15
**consider (2)**
8:5;26:5
**considering (1)**
16:2
**construction (3)**
6:12;13:16;16:21
**contains (1)**
17:2
**contention (1)**
16:12
**context (1)**
4:11
**continuance (1)**
21:23
**continue (2)**
7:7,8
**continued (1)**
23:15
**contract (3)**

11:22,23,24
**contractor (2)**
11:6;17:13
**contractors (1)**
16:17
**conversations (1)**
25:13
**convoluted (1)**
13:1
**Corporation (1)**
3:5
**corrected (1)**
7:24
**correctly (1)**
5:6
**cost (1)**
25:24
**coughing (1)**
7:17
**counsel (7)**
3:6;4:7;17:19;20:6;
22:25;23:9;25:8
**counsel's (1)**
7:8
**counter (2)**
24:8,9
**County (1)**
16:20
**couple (6)**
6:19;17:8;19:9;
21:21;23:9;27:8
**course (1)**
11:25
**Court (72)**
3:3,4,7,13,16,21;
4:14,16,25;5:4;6:1,
15;7:13,15,16;8:15,
16,19,22,22,23;9:18,
21;10:13,17,20;12:3,
9;13:7,11,20,25;14:4,
7,21;15:1,13,15;
16:20;17:7,10,11,15,
18,20;18:5,6,8,12,14,
17,20;19:2,6,22,24;
20:4;21:8;22:11;
23:20;24:1,11,13,16,
18;25:23;26:14,19,
23;27:6,9,12
**courts (2)**
8:16,16
**Court's (1)**
16:14
**crazy (2)**
22:22,22
**create (1)**
21:14
**creating (1)**
19:16
**creditor (1)**
3:15
**cure (1)**
14:19
**current (4)**

5:5;6:14,15;10:14
**cursive (2)**
26:16,17

**D**

**damage (18)**
4:19;5:8;9:4;10:25;
11:2,15,25;12:7,24;
13:3,4,6;14:23;16:25;
17:1,1;18:9;20:8
**damaged (9)**
6:2,6;11:7,15,25;
15:3,6,7;26:6
**damages (4)**
6:10;7:2;13:5;
14:18
**damaging (1)**
14:16
**dare (1)**
23:16
**date (3)**
16:5;22:20;23:8
**day (1)**
27:9
**days (4)**
9:11;16:4;20:22;
22:20
**deadline (6)**
8:24,25;15:24;16:6,
7,8
**deadlines (3)**
8:23;9:9,9
**debtor (3)**
8:7;9:4,5
**debtors (3)**
3:10,12;25:20
**debtors' (2)**
7:20;23:10
**decide (3)**
8:6;21:23;22:23
**decided (1)**
22:23
**decision (2)**
18:9;24:25
**decisions (1)**
25:7
**deck (13)**
11:6,7,11,16;12:24,
25;13:1;14:10,16,22;
15:3,7;25:22
**defects (1)**
14:19
**defense (4)**
9:6;12:4;21:16,17
**defenses (5)**
7:20;8:8;21:14,14,
19
**definition (1)**
17:22
**definitive (1)**
25:7
**delaying (1)**

19:19
**Dennis (2)**
3:5;13:16
**deny (1)**
7:19
**describe (1)**
4:21
**described (1)**
17:16
**desire (2)**
3:18;26:1
**desires (1)**
26:5
**determine (2)**
17:8;22:7
**development (5)**
20:2;21:4;22:3;
23:11;26:9
**difference (1)**
10:17
**differences (1)**
4:3
**different (6)**
5:11;8:5,21;9:4,7;
17:14,14;19:9,18;
20:16
**difficult (2)**
20:24;22:19
**direct (1)**
21:2
**disavow (1)**
15:21
**discovery (4)**
7:9,10;12:18;16:6
**discreet (1)**
3:24
**discuss (1)**
19:4
**disputes (1)**
18:21
**district (1)**
8:22
**divide (1)**
3:17
**docket (1)**
14:3
**document (1)**
14:7
**Dodge (44)**
3:7,9,9,16,19;8:5,
10;9:16,19,21;10:7,
16,19,21;12:3;13:8;
15:14,16;17:20;18:3,
6,13,16,18,20,24,25;
19:3;20:1,13;21:2,22;
22:6;23:23;24:2,7,12;
25:3,18;26:15,20;
27:2,5,7
**dollars (4)**
5:25;6:7;13:16;
24:9
**done (3)**
7:9;11:12;22:18

**down (2)**
4:25;21:12
**drain (1)**
13:5
**drive (1)**
7:11
**during (1)**
5:19

**E**

**earlier (1)**
13:19
**early (1)**
4:6
**easily (1)**
25:10
**effective (1)**
25:24
**efficient (1)**
22:12
**efficiently (1)**
18:2
**either (3)**
18:22;26:6;27:3
**electric (1)**
10:2
**electrical (2)**
5:2;7:24
**element (2)**
7:2;10:25
**elementary (1)**
26:18
**else (3)**
15:2,3;23:15
**else's (1)**
15:9
**embodied (1)**
9:3
**enough (1)**
16:8
**entitlement (1)**
5:8
**entrenching (1)**
16:17
**error (2)**
20:21;21:13
**errors (1)**
20:21
**essentially (1)**
16:24
**estimate (2)**
13:16;14:9
**even (10)**
12:1;13:4,9;14:14;
17:13;20:24;21:12;
24:8;26:15,20
**events (1)**
4:5
**everyone (2)**
27:6,9
**evidence (2)**
8:17;14:25

Case: 19-30088   Doc# 12097   Filed: 03/31/22   Entered: 03/31/22 09:02:01   Page 31
of 36

**excuse (2)**
7:16;13:14
**exhibit (1)**
6:9
**exhibits (1)**
13:21
**expense (1)**
25:12
**experienced (1)**
22:24
**expert (1)**
7:10
**explained (1)**
8:4
**explanation (1)**
7:3
**extent (2)**
3:20;11:20

**F**

**facing (1)**
12:17
**fact (7)**
5:17;12:23;13:11;
15:19;19:14;20:10;
24:8
**facts (2)**
8:14;9:2
**Fairfax (1)**
11:21
**fairness (1)**
21:5
**familiar (2)**
17:16,17
**fancy (1)**
25:13
**far (4)**
7:10;10:8;11:22;
22:3
**fast (1)**
5:1
**fate (1)**
25:1
**February (1)**
16:23
**feces (1)**
26:3
**federal (2)**
8:16,22
**few (1)**
14:2
**figure (3)**
21:4;23:10;24:3
**figuring (1)**
20:14
**filed (5)**
8:24;16:19,20,23;
19:16
**final (1)**
24:25
**find (1)**
26:25

**fine (1)**
12:2
**fire (1)**
24:5
**first (3)**
3:25;11:19;16:4
**five (1)**
4:8
**fixed (1)**
24:21
**flooring (1)**
10:9
**focus (1)**
8:2
**follow (1)**
14:14
**follows (1)**
15:8
**food (1)**
26:3
**foreseeability (1)**
14:24
**forget (2)**
5:18;9:25
**form (2)**
4:5;26:11
**formatting (3)**
20:21;21:13;22:24
**forth (2)**
4:22;16:23
**forums (1)**
17:14
**forward (2)**
15:22;21:23
**found (2)**
16:15;26:16
**four (1)**
7:8
**fourteen (1)**
16:4
**FRANCISCO (1)**
3:1
**frankly (1)**
14:14
**free (1)**
25:8
**French (1)**
13:5
**front (1)**
11:12
**further (3)**
8:9;17:21;22:16

**G**

**gas (8)**
6:2,6;11:7;15:6;
16:18;18:10;23:12;
26:6
**gauge (1)**
20:4
**general (1)**
8:19

**generally (1)**
8:23
**given (2)**
16:5;20:17
**gives (1)**
9:15
**Good (10)**
3:7,9,11,14;16:11,
12;19:10,13;24:10;
27:9
**grammar (1)**
26:24
**grant (6)**
6:17;7:18;19:9;
21:24;23:5;24:24
**granting (3)**
19:25;21:17,18
**grants (1)**
21:18
**greater (1)**
4:21
**Greenberg (9)**
3:15;4:6;8:3;9:24;
11:5;16:19;20:6;
21:15;22:17
**Greenberg's (1)**
24:24
**grounds (1)**
19:9
**guess (3)**
7:12;22:14;23:14
**guy (2)**
18:14;23:1

**H**

**habit (1)**
22:25
**half (1)**
4:8
**handwrite (1)**
26:21
**handwriting (1)**
26:23
**handwritten (1)**
26:11
**happen (1)**
20:24
**happened (3)**
11:17;12:12;14:18
**hard (1)**
14:14
**hear (2)**
3:20;25:7
**hearing (6)**
19:16,25;23:9;25:1,
9,13
**help (1)**
7:13
**here's (1)**
4:3
**hide- (1)**
22:25

**himself (1)**
4:6
**Hold (2)**
6:3;13:11
**Honor (26)**
3:6,9,11,14,19;
4:12;5:15;6:9,24;
8:12;9:16;12:16;
13:18;14:1;15:12,14;
18:3,16;19:4,7;22:6;
23:24;24:7;25:18;
27:4,11
**Honorable (1)**
3:4
**horribly (1)**
22:19
**house (2)**
11:8,12
**huh (1)**
13:25

**I**

**idea (1)**
6:25
**impact (2)**
22:2,9
**impacts (1)**
23:11
**important (1)**
22:3
**inclination (1)**
21:12
**inclined (1)**
21:25
**increase (2)**
10:22;20:8
**increased (3)**
5:23;10:11;24:9
**indicated (1)**
3:22
**indication (1)**
7:8
**indirect (1)**
25:3
**indiscernible (1)**
18:17
**inefficient (1)**
22:15
**installing (1)**
11:7
**instincts (1)**
20:7
**intelligible (2)**
7:1;19:12
**interested (1)**
20:19
**interference (1)**
20:23
**interrupt (1)**
18:4
**interruption (3)**
5:2;7:24;10:2

**intervening (1)**
15:8
**into (4)**
7:21;9:10;18:21;
20:20
**investigate (1)**
19:20
**invoice (1)**
14:9
**involved (4)**
4:13,16;11:20;
16:17
**issue (6)**
3:20,24;12:16;
15:16;18:10;23:17
**issues (1)**
15:24
**item (4)**
4:19;5:6;13:17;
16:14
**items (3)**
6:11;13:3,10

**J**

**Jennifer (1)**
3:9
**job (1)**
14:18
**judge (2)**
22:22,22

**K**

**keep (1)**
23:8
**Keller (1)**
3:12
**key (1)**
15:24
**kids (2)**
26:15,18
**kill (2)**
6:4;21:19
**Kim (1)**
3:12
**kind (2)**
4:23;20:4
**kinds (1)**
20:21
**known (1)**
13:13
**knows (1)**
24:18

**L**

**Ladder (1)**
13:8
**laminate (1)**
10:9
**Lamping (1)**
16:2

Case: 19-30088    Doc# 12097    Filed: 03/31/22    Entered: 03/31/22 09:02:01    Page 32
of 36

**Landscape (1)**
16:21
**Lapping (42)**
3:13,14,15,25;4:12,
15,17;5:3,15;6:9,24;
8:12;9:12;12:6,14;
13:18,24;14:1,6,8,24;
15:11,21;17:15,17,19;
19:5,6,7,23;20:3;
21:5;23:2,18,19;24:2,
14,17;26:13;27:3,8,10
**large (1)**
23:3
**later (3)**
9:13,14;21:1
**law (2)**
8:20;21:10
**lawyer (1)**
20:20
**lawyers (1)**
9:12
**lead (2)**
3:19;7:15
**learn (1)**
26:20
**learned (2)**
17:6;19:1
**learning (1)**
26:17
**least (5)**
7:10;8:4;9:5;21:14;
22:17
**leave (1)**
16:2
**Leaving (1)**
4:3
**legal (1)**
10:5
**legible (1)**
27:1
**less (1)**
12:13
**liability (4)**
11:4;12:10,21,22
**liable (2)**
11:5,10
**liberal (1)**
20:18
**limitations (2)**
8:7;9:6
**line (5)**
6:6;16:18;18:10;
23:12;26:7
**lines (4)**
6:2;11:8;15:6;
20:23
**Listen (1)**
6:21
**litigate (1)**
17:23
**litigated (1)**
17:24
**litigating (1)**

22:17
**litigation (1)**
17:16
**little (5)**
7:6;9:7;10:3,10;
20:16
**locked (1)**
24:19
**long (1)**
4:7
**longer (1)**
7:6
**look (5)**
7:11;14:2,17;19:10;
24:3
**looked (5)**
5:6,9,9,16;6:16
**looking (2)**
4:18;13:14
**looks (1)**
6:6
**lose (3)**
12:8;15:9;21:17
**lost (17)**
4:10,10,10,17,19;
5:4,11,24;6:3,11,19;
7:22,25;10:2,10,23;
20:12
**lower (1)**
5:18

## M

**mad (1)**
20:1
**magic (1)**
5:13
**mail (2)**
9:13;26:12
**mailed (1)**
20:25
**main (2)**
10:4,7
**makes (4)**
9:7;17:23;18:21;
22:13
**making (3)**
20:24;21:9;24:22
**many (1)**
10:11
**MARCH (2)**
3:1;16:8
**margins (1)**
20:23
**Marin (1)**
16:19
**matter (4)**
3:5;7:23;17:25;
23:13
**matters (2)**
17:25;25:1
**may (8)**
3:8;6:19;8:6;14:16;

15:17;16:7;17:9,12
**maybe (14)**
5:7,10;6:8;7:2;
10:3;15:1,1;17:7;
18:22;19:3;21:14;
22:15;24:20;25:25
**McLellan (1)**
16:22
**mean (19)**
3:17;6:24;8:19;
9:23;10:1,15;11:23;
12:6,16;13:12;14:2;
17:21;18:1,22;19:8,
22;24:3;25:4;26:17
**means (1)**
21:21
**meantime (1)**
24:22
**measure (5)**
5:8;20:8;22:1,2;
23:3
**mediation (1)**
24:20
**mediators (1)**
24:5
**mentioned (1)**
15:19
**merits (3)**
7:18;12:4;22:23
**meter (2)**
11:8;16:18
**Method (1)**
26:24
**Microsoft (1)**
20:23
**might (2)**
20:1;22:15
**mine (1)**
27:3
**minute (3)**
6:3;13:14;20:13
**miscommunication (1)**
22:24
**mislead (1)**
22:4
**missed (2)**
10:3;14:16
**misstate (1)**
21:15
**modified (1)**
16:11
**moment (2)**
10:1;23:8
**Montali (1)**
3:5
**month (2)**
12:14;22:1
**months (6)**
5:24;6:12,13;10:12,
14,15
**months' (1)**
22:1
**more (9)**

15:17;16:7;17:9,12
**mediation** ...

7:1,3;19:12;20:24;
21:24;22:3,12,18;
23:17
**morning (4)**
3:7,9,11,14
**motion (17)**
4:11;5:5;6:17;7:19;
10:14;11:9,19;15:24;
16:3;19:9,25;21:18,
18,19;23:5,7;24:24
**moving (1)**
26:6
**mute (1)**
23:23
**muted (1)**
23:22

## N

**named (1)**
17:11
**near (1)**
5:8
**necessarily (1)**
11:3
**necessary (2)**
5:13;17:12
**need (5)**
7:7;15:17;17:12;
18:13;22:18
**needed (2)**
5:17;19:11
**needs (2)**
12:17;19:8
**negligence (1)**
17:2
**negotiated (1)**
15:25
**negotiation (1)**
19:15
**new (34)**
5:7,7,7;6:3;7:25;
8:3,13;9:24;10:5,23,
25;11:3,4,18;12:10,
21,25;13:1,3,5,6,9,19,
21;14:10;20:2,9;21:4,
13,14;22:3;23:11;
25:21;26:8
**news (1)**
17:15
**nine (2)**
6:13;10:14
**Ninth (1)**
20:17
**normally (1)**
8:14
**notion (1)**
15:21
**notwithstanding (1)**
21:7
**nucleus (1)**
9:2
**nuisance (1)**

17:5
**number (1)**
6:6

## O

**Obviously (4)**
7:17;17:23;19:22;
22:3
**occurred (1)**
4:5
**o'clock (2)**
25:2,15
**off (2)**
21:22;22:17
**offer (1)**
24:14
**offered (1)**
7:7
**old (4)**
9:11;14:11,13;
20:22
**once (2)**
16:10;17:24
**one (18)**
5:9;6:11,14,15,20;
8:2;10:3;15:7,24;
16:14,17;17:10;
20:13;22:1;23:24;
24:5,20;26:4
**only (4)**
4:11;16:11;20:5,13
**oOo- (1)**
3:2
**open (1)**
19:7
**operating (1)**
8:14
**operative (1)**
8:14
**opinion (2)**
4:4;9:15
**opponent (1)**
20:25
**oral (1)**
3:20
**order (15)**
3:3;8:21;9:8,25;
15:20,25;16:11;
17:22;19:10,14,17;
21:7,9;23:16,17
**orders (3)**
9:8;21:7;25:6
**organized (1)**
7:1;14:13
**original (9)**
4:18;5:5,9;6:8,10;
7:24;9:3;10:13;14:19
**originally (5)**
4:22;10:8;11:6;
13:22;16:1
**otherwise (1)**
25:14

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

Case: 19-30088    Doc# 12097    Filed: 03/31/22    Entered: 03/31/22 09:02:01    Page 33
of 36

**ought (1)**
18:1
**out (17)**
5:25;9:11;14:5;
15:23;16:1,10,15;
17:25;20:14;21:4;
22:12;23:10;24:3,20;
25:8,25;26:16
**outside (1)**
7:15
**over (2)**
19:15;24:1
**own (2)**
25:9,24
**owner (1)**
11:22

**P**

**page (2)**
14:3,10
**Palmer (1)**
26:24
**paperwork (1)**
6:16
**Parada (2)**
25:9,13
**parallel (1)**
17:10
**pardon (2)**
5:10;13:25
**part (1)**
12:20
**particularity (1)**
4:21
**particularly (1)**
23:10
**parties (9)**
7:13;8:17;11:20;
15:16,17;17:11,12;
21:8;22:2
**parts (1)**
18:22
**passage (1)**
5:22
**pencils (1)**
5:24
**pending (1)**
22:8
**perfectly (1)**
24:3
**Perhaps (3)**
7:7;21:22;26:1
**period (2)**
5:19;12:6
**permit (1)**
23:6
**permitted (2)**
9:2;23:18
**person (1)**
12:1
**persuaded (3)**
9:1;21:6;23:2

**PG&E (19)**
3:5;11:5,6,10,11,16,
16,23;12:7,17;13:1;
14:22;15:2,4;19:20;
21:16;23:20;24:19;
26:1
**phone (2)**
6:4,4
**phonetic (2)**
13:8,9
**pin (1)**
12:22
**pipe (6)**
11:13,14,24,25;
13:6;17:13
**Pipelines (2)**
16:16,21
**pit (1)**
24:19
**place (2)**
15:20;16:18
**play (1)**
22:25
**plead (1)**
20:13
**please (1)**
3:8
**point (8)**
4:20;12:9;14:8,9;
16:10;20:19;25:4,5
**portion (2)**
12:8;15:4
**possibly (1)**
19:17
**potentially (1)**
7:15
**practices (1)**
8:15
**practicing (1)**
9:19
**prepared (1)**
21:3
**presiding (1)**
3:5
**previously (1)**
12:10
**print (1)**
26:22
**printed (1)**
14:5
**private (1)**
17:4
**probably (4)**
18:21;20:14;22:25;
25:24
**problem (2)**
19:14,19
**procedural (1)**
8:20
**proceed (3)**
17:9;19:5;22:8
**proceeding (1)**
17:10

**proceedings (1)**
27:13
**process (1)**
11:14
**processing (1)**
20:20
**proof (8)**
5:23;6:10;7:23;
8:16;9:3;12:11,20;
15:4
**proofs (1)**
8:24
**property (7)**
4:19;11:2,22;12:24;
16:25;17:1;18:9
**proposed (4)**
10:14;11:9;13:15;
20:25
**prove (5)**
12:5,6,7;14:22;15:9
**proved (1)**
12:5
**punished (1)**
20:6
**purpose (1)**
4:20
**put (6)**
14:25;16:8;20:11;
21:2;24:1,13
**putting (1)**
15:22

**Q**

**qualify (1)**
11:3

**R**

**raised (3)**
8:7;9:6;11:18
**reaction (1)**
5:16
**read (1)**
5:5
**real (1)**
23:1
**realizes (1)**
12:22
**really (6)**
9:3;12:14;14:12,13;
16:12;20:9
**reason (2)**
11:10;19:13
**reasonable (1)**
4:2
**recall (1)**
6:7
**received (1)**
16:15
**reconvene (3)**
17:8;19:3;23:9
**record (3)**

17:19;24:23;25:19
**redline (5)**
4:4;9:10,10;23:1,2
**redlines (2)**
20:25;26:10
**redwood (1)**
17:3
**reflect (1)**
26:7
**reflection (1)**
22:16
**refrigeration (4)**
23:12,14;25:25;
26:2
**refrigerator (11)**
10:7,10;11:1;18:7,
7,10,18;20:5;22:9,12,
14
**regard (4)**
11:24;15:25;17:3;
22:8
**regarding (1)**
25:22
**regardless (1)**
18:8
**regular (1)**
23:20
**relate (1)**
16:24
**relating (1)**
9:2
**relevant (1)**
8:6
**Remember (2)**
9:12;26:17
**remove (1)**
17:24
**rent (17)**
4:10,10,10,17,19;
5:4,11,18,24;6:3,11,
19;7:25;10:2,10,23;
20:12
**reorganized (2)**
3:10,12
**repair (1)**
5:20
**repeated (1)**
20:18
**rephrase (1)**
22:21
**replace (2)**
9:8;11:11
**replaced (1)**
11:16
**replacement (3)**
10:8;11:5,10
**representing (1)**
4:6
**represents (1)**
16:16
**requested (3)**
21:6;23:7;24:24
**requires (1)**

17:19;24:23;25:19
**reschedule (1)**
25:11
**resolution (1)**
7:15
**respond (2)**
8:10;9:22
**response (1)**
9:14
**responsibility (1)**
15:9
**responsible (5)**
11:21;12:1;13:1;
14:15,22
**restate (1)**
18:24
**Restaurants (1)**
4:22
**result (1)**
22:15
**revisit (3)**
8:8;25:4,19
**Richard (1)**
3:14
**Right (18)**
4:17;5:2;7:21,23;
10:16,16,21;13:17;
14:4;15:5;18:25;19:2;
21:9;23:21;26:4;27:3,
5,10
**rights (2)**
7:20;20:15
**ringing (1)**
6:4
**risk (1)**
23:16
**rotten (1)**
26:2
**ruined (1)**
10:10
**ruling (1)**
24:23
**run (1)**
14:9
**Rupp (10)**
3:8,11,11,16,22;
23:21,24;24:5,18;
27:11

**S**

**Sambo's (1)**
4:22
**same (3)**
8:14;9:16;16:24
**SAN (1)**
3:1
**sandbagged (1)**
10:5
**sat (1)**
5:15
**satisfied (1)**
23:2

Case: 19-30088    Doc# 12097    Filed: 03/31/22    Entered: 03/31/22 09:02:01    Page 34
of 36

**saw (1)**
10:8
**saying (5)**
17:21;20:7;21:3,16;
25:3
**schedule (5)**
21:24;22:13,19;
23:8;26:6
**scheduling (16)**
8:21;9:8,8,9,25;
15:20,25;16:11;
17:22;19:10,14;21:7,
7,8;23:16,17
**school (3)**
26:16,18,24
**seconds (1)**
9:14
**section (1)**
5:11
**seem (1)**
4:9
**seemed (1)**
6:19
**seems (3)**
7:12;15:21;22:14
**send (2)**
9:11;23:1
**sense (7)**
9:25;17:9,23;18:21;
21:9;22:13;25:24
**sensible (1)**
18:1
**sent (1)**
17:25
**separate (2)**
16:19;22:12
**session (1)**
3:4
**set (3)**
4:22;22:20;25:1
**sets (1)**
16:23
**settle (1)**
24:4
**shall (1)**
24:4
**short (1)**
21:23
**show (1)**
5:23
**shown (2)**
16:12,13
**side (1)**
23:10
**sides (1)**
23:10
**sidewalk (4)**
11:11,16,21;12:5
**sign (2)**
24:10;25:6
**signed (1)**
26:25
**similarly (1)**

20:11
**sit (1)**
5:21
**site (1)**
14:18
**situation (1)**
19:16
**six (1)**
4:5
**Slow (1)**
4:25
**smaller (1)**
6:19
**smelly (1)**
18:15
**somebody (3)**
9:11,13;15:3
**somehow (2)**
11:15;15:22
**someone (1)**
15:8
**sometimes (1)**
8:17
**sooner (1)**
12:15
**sorry (2)**
7:16;18:3
**speed (1)**
20:9
**split (2)**
25:10,25
**spruced (1)**
19:12
**stand (1)**
7:23
**start (2)**
5:1;19:25
**started (1)**
9:19
**state (6)**
8:15,22;17:11;18:6,
8;22:8
**states (2)**
11:10;26:12
**statute (2)**
8:7;9:6
**stay (2)**
22:13;23:14
**still (3)**
20:1,2;25:24
**strange (1)**
26:17
**street (1)**
16:18
**strike (1)**
8:4
**stuck (3)**
15:4;18:18;26:2
**subject (3)**
7:21;21:9;23:6
**subsequently (1)**
11:12
**substantial (1)**

6:18
**substantive (1)**
19:18
**suggest (2)**
17:25;18:23
**sum (1)**
6:18
**summary (2)**
6:10,16
**Super (1)**
13:8
**Superior (1)**
16:20
**suppose (1)**
19:20
**sure (4)**
8:21;16:7;19:8,25
**surprised (1)**
10:24
**switch (1)**
6:1
**switching (1)**
15:23
**system (1)**
13:5

**T**

**talk (4)**
15:14;21:5;25:16;
26:10
**talking (1)**
5:1
**teach (1)**
26:15
**Teichert (2)**
16:16,20
**telling (1)**
14:4
**ten (1)**
26:25
**tentative (2)**
23:5;24:23
**tentatively (1)**
24:23
**term (1)**
26:2
**terms (2)**
12:18;25:21
**the-ball (1)**
23:1
**theory (14)**
5:7;9:23;10:4,6,24;
11:4,18;12:10,21,25;
13:2;21:13,16;25:21
**thinking (3)**
20:5;22:5;23:5
**thirteen (1)**
6:12
**thirty (1)**
9:14
**Thomas (1)**
3:11

**thorough (1)**
7:3
**though (1)**
22:9
**three (3)**
18:21;20:12;22:1
**throwing (1)**
20:19
**ticket (1)**
13:17
**timber (2)**
17:3,4
**timeout (4)**
17:21;21:3,21;22:7
**timing (3)**
19:15,17;21:14
**today (3)**
7:18;18:23;19:9
**Todd (1)**
3:15
**together (1)**
23:15
**told (1)**
22:11
**took (2)**
16:1;26:24
**touch (1)**
12:24
**Town (1)**
11:21
**track (1)**
23:14
**traditional (2)**
9:9,25
**trained (1)**
24:19
**trash (1)**
20:20
**tree (6)**
7:10,11;17:1,4;
18:10,14
**trees (1)**
17:3
**trespass (2)**
17:2,4
**trial (13)**
12:19;14:21;16:6;
20:11;21:22,25;
22:13,20;23:8,8,16,
17;26:1
**tricking (1)**
15:22
**tried (3)**
8:13;24:4,7
**trouble (1)**
13:21
**try (2)**
17:24;24:6
**trying (4)**
13:24;14:1,17,19
**TUESDAY (1)**
3:1
**turn (1)**

4:1
**twenty-four (2)**
5:24;10:15
**twice (1)**
17:23
**two (6)**
7:22;17:10,13,14;
22:24;23:6

**U**

**Um-hum (1)**
20:3
**under (5)**
5:19;9:23;11:2;
14:10;16:6
**unit (1)**
5:18
**United (1)**
26:12
**up (6)**
4:11;5:21;6:17,18;
12:25;19:12;20:9;
23:21;24:5,19
**updating (1)**
4:23
**upon (2)**
16:11;22:24;23:11
**upper (1)**
5:18
**use (1)**
26:2

**V**

**vacate (1)**
23:16
**version (1)**
9:10
**versus (2)**
7:22;9:10
**view (2)**
4:20;5:23
**violation (1)**
20:15
**voluminous (1)**
6:16

**W**

**Wait (3)**
4:25,25;20:13
**waiting (2)**
5:11;6:11
**water (7)**
11:13,14,24,25;
12:7;13:5;17:13
**waterline (1)**
14:10
**way (7)**
8:4;14:3;18:1;19:5;
21:2,3;25:3
**Webb (2)**

Case: 19-30088    Doc# 12097    Filed: 03/31/22    Entered: 03/31/22 09:02:01    Page 35
of 36

13:16,21

**wedded (1)**
22:20

**week (3)**
9:13;19:3;21:1

**weeks (5)**
7:8;17:8;21:21;
23:9;27:8

**what's (4)**
3:18;5:13;8:20;
13:21

**Whereupon (1)**
27:13

**whole (1)**
4:20

**willing (2)**
21:20;24:3

**win (1)**
7:1

**wish (2)**
6:22;24:12

**wishes (1)**
26:5

**without (1)**
21:12

**WK (1)**
16:21

**wood (1)**
10:9

**Word (4)**
4:4;13:22;20:20,23

**WordPerfect (1)**
4:4

**words (3)**
12:4;15:6,23

**work (4)**
11:7;12:12;18:10;
25:8

**worked (1)**
11:13

**working (2)**
11:14;16:6

**works (1)**
25:14

**world (1)**
26:24

**worst (1)**
26:23

**worth (2)**
20:12;22:1

**write (2)**
9:11;26:21

## Y

**year (1)**
20:13

**years (2)**
4:5,8

**years' (1)**
20:12

**yesterday (4)**
12:12;16:15;17:6;

19:1

**young (1)**
9:18

## 1

**10 (2)**
25:2,15

**10:36 (1)**
27:13

**117 (1)**
14:10

**11992 (1)**
14:3

**12 (1)**
23:25

**120 (1)**
14:11

**12th (5)**
24:2;25:2,9,15,20

**15th (1)**
16:9

**165,000 (1)**
6:7

**182,000 (1)**
13:16

## 2

**200 (1)**
13:25

**2016 (1)**
4:13

**2022 (1)**
3:1

**20th (1)**
16:7

**240,00 (1)**
24:9

**26 (1)**
23:21

**29 (1)**
3:1

## 3

**39 (1)**
5:12

**39,000 (2)**
5:12;10:20

**3rd (1)**
16:23

## 7

**76018 (4)**
6:6;11:2;16:25;
23:7

**77 (1)**
14:3

**77335 (2)**
5:2;23:7

**78381 (2)**

16:25;17:4

## 8

**80-page (1)**
14:7

**86,000 (3)**
5:12,25;10:20

**86,400-dollar (1)**
5:6

## 9

**94 (1)**
9:19

Case: 19-30088    Doc# 12097    Filed: 03/31/22    Entered: 03/31/22 09:02:01    Page 36
of 36