David P. Addington
298 Saint James Drive
Piedmont, CA 94611

(415) 606-6552
david@cachamp.com

In pro per

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>Affects Both Debtors | CASE NO. 219-30088 (DM)<br><br>**CREDITOR DAVID P. ADDINGTON'S OPPOSITION TO DEBTORS' OBJECTION TO CLAIM OF DAVID P. ADDINGTON (CLAIM NO. 3093)**<br><br>[Related to Docket No. 10673] |

Creditor David P. Addington, *in pro per*, respectfully submits this Opposition to the Debtors' Objection of his Creditors Claim (Docket No. 10673) in the above-captioned Case.

## I. INTRODUCTION

For nearly 5 years, PG&E has claimed that the Easement that governed our relationship could not be terminated. PG&E's obstinate and obstructive behavior evidenced their confidence that the Easement was perpetual. After having waited for 5 years for PG&E to explain why the plain language of the Easement was not valid, I now learn that their claim is totally baseless. PG&E has acted unreasonably in making and maintaining a position which upon examination has no merit. Doubtless, it is just in their nature.

In any event, PG&E's motion objecting to my claim ("Motion") does not meet the high threshold required here and should be denied. To prevail, PG&E must show that regardless of the

1
OPPOSITION TO DEBTORS' OBJECTION TO CREDITOR'S CLAIM

unreasonableness of PG&E's conduct, I am barred from terminating the Easement "as a matter of law." As I demonstrate below, the prohibition "as a matter of law" on the termination of easements that PG&E asserts does not exist. And at minimum, there are triable issues of fact about the unreasonableness of PG&E's conduct that preclude a determination as "a matter of law" that the Easement could not be terminated.

## II.  FACTUAL BACKGROUND

Two key facts are buried in PG&E's "Background" statement that warrant emphasis. First, the Easement specifies that the easement holder (here PG&E) breaches the Easement if it unreasonably interferes with the property owner's use of the easement area "for any and all purposes." Second, the Easement specifies termination of the Easement as a sole remedy for breach of the Easement.

PG&E "Background" statement also overlooks or omits a number of other key facts, including the limited effect of the Revised Work Acknowledgment (as that term is used in PG&E's Opening Brief) and PG&E's conduct separate from the remedial work it did at the Addington Property that constituted the underlying breach of the Easement.

I provide these additional these facts in this Section.

### A.  In Terminating the Easement, I Simply Exercised the Remedy Expressly Provided in the Easement.

As I explain below in Section II(A), the Easement is a contract and the rules of contract interpretation apply. Here, the two governing contractual provisions in the Easement are:

- The "Fourth" paragraph of the "express conditions and reservations" specifies: "Said party of the first part (Addington) hereby reserves the right to use said strip of land sixty feet in width for all purposes including that of mining and agriculture, and the said party of the second part (PG&E), in the enjoyment of the rights hereby granted, shall avoid so far as it reasonably can interfering with the use by the party of the first part of said strip of land for any and all purposes." [Joint Statement of Undisputed Facts, Docket #11736 ("J.S."), Exhibit A.][1]

---

[1] Two versions of the Easement are provided in the Joint Statement. Exhibit A is the recorded Easement, which is handwritten. It is my understanding the Easement is handwritten

- The Easement provides a single remedy for breach, immediately above the signature block, as follows: "Any violation of the conditions of this grant shall terminate and extinguish the easement hereby granted." [*Id.*]

As I demonstrate below, there at minimum is a triable issue of fact that PG&E unreasonably interfered with my peaceable use of the easement area. I thus could not barred "as a matter of law" from exercising the sole remedy of termination. To the contrary, the Easement terminated in accordance with its express terms and conditions.

**B.  The Alleged Release in the Revised Work Acknowledgment Was Limited to the Agreement for PG&E's Remedial Work at the Addington Property and in No Way Excuses PG&E's Other Conduct at the Property That Breached the Easement.**

The "release" that PG&E asserts and its unreasonable interference with my use of the easement area are apples-and-oranges. That release does not in any way excuse PG&E's unreasonable interference that resulted in termination of the Easement pursuant to its express terms.

The purported release related solely to work that PG&E did at my property. The scope of that work was "to recoat (PG&E's) electric transmission towers and conduct soil removal work." [J.S., Exhibit C.] In the "Revised Tower Maintenance and Work Acknowledgement" dated September 2, 2016, it was acknowledged that the work would include demolition of my existing play court and removal of a considerable amount of soil, as follows: "1. PLAY COURT DEMO AND OFF HAUL AS PER GJR DEVELOPMENT PROPOSAL" AND "2. 170 CU YARDS SOIL OVERHAUL AS PER GJR DEVELOPMENT PROPOSAL." [J.S., Exhibit D.] PG&E further agreed to "COMPLETE WORK AND PROVIDE A CHECK IN THE AMOUNT OF $36,790" [*Id.*] The payment of $36,790 was the amount GJR bid to complete the work after completion of items 1 and 2. PG&E was to do the work contemplated in items 1 and 2 of the

---

because when it was recorded in 1909, the County Recorders obviously did not have the capability to film or photocopy or scan documents for recording, and the Recording Clerks thus handwrote them into the Public Record. This recorded document nevertheless is the version that provides constructive notice and thus is the operative Easement document. Exhibit B apparently is the typed original that PG&E culled from its files. While this version is an interesting slice of history, the recorded Easement is the only version on which the parties may rely.

3

OPPOSITION TO DEBTORS' OBJECTION TO CREDITOR'S CLAIM

Case: 19-30088    Doc# 12101    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 3 of 14

GJR bid and provide me a check to cover the GJR bid for the remaining items. [Declaration of David Addington in Support of Opposition ("Addington Decl."), Page 3, lines 1-5.]

When PG&E announced it had completed its work, the site was a total disaster. GJR determined that PG&E had not completed item 2 of its bid. I requested and PG&E agreed to pay an additional $13,000, the bid estimate for item 2. [Addington Decl., Page 3, lines 17-18.] That agreement was affirmed in the "Tower Maintenance Work Acknowledgement Addendum" dated November 4, 2016, which contains the release upon which PG&E relies. [Addington Decl., Page 3, line 18.] That "Addendum" refers back to the "Revised Tower Maintenance and Work Acknowledgement" dated September 2, 2016, which the Addendum defined as the "Agreement." The release in the Addendum is limited to the following: "In exchange you agree that PG&E has completed the work described in the Agreement." Accordingly, my signature on the Addendum reflected my "full and final release of PG&E from obligations *arising under that Agreement.*" [J.S., Exhibit E (emphasis added).]

I don't dispute the release. But it related only to the work that PG&E had completed at my property. It did not relate to or restrict my prerogative to restore and relandscape my property to a condition that allows my wife, my children, and me to use and enjoy our property. It certainly did not give PG&E cart blanche to interfere with our use of easement area after PG&E completed its remedial work. But PG&E nevertheless exerted that interference, unreasonably.

C. **PG&E's Conduct After the Remedial Work was Completed Unreasonably Interfered with Our Use of the Easement Area and Thus Breached the Easement.**

PG&E completely and inexplicably blocked my attempts to relandscape and restore our property. After I had signed the Addendum, I again advised PG&E about my intended use of the easement area. Multiple email communications between PG&E and me ensued. [Joint Statement of Facts, ¶ 16.] These communications evidence my desire to understand what PG&E did to my property and, more importantly, why they did these things. These communications also show that PG&E has never provided any basis for the changes that they made to my yard but instead produced a specious report that made it impossible to restore my yard to its prior condition. [Addington Decl., Page 3, lines 21-23.]

At minimum, PG&E's blatant interference with my ability to relandscape and restore my property to a useable condition creates a triable issue of fact whether PG&E avoided "so far as it reasonably can interfering with (my use of the easement area) for any and all purposes," the seminal condition of the Easement. That triable issue precludes a determination "as a matter of law" regarding my resort to the sole remedy of termination provided in the Easement.[2]

### D. PG&E's Assertion That the Termination of Easement Was Unrecordable Is Belied by the Undisputed Fact That It Was Recorded.

Among its other assertions, PG&E makes the strange argument that the Termination of Easement "is not an instrument that could be recorded."[3] [Opening Brief, 14:24-25.] The Termination of Easement by its nature is a document affecting real property that the Alameda County Recorder in fact did record, on June 1, 2017 as Instrument Number 2017-119659. [J.S., Exhibit G.] PG&E does not and cannot dispute that fact. The recorded Termination of Easement led the title company to delete the Easement from its title report. [Addington Decl., Page 6, lines 1 to 10, comparing Exhibit N and Exhibit O.]

## III. LEGAL ARGUMENT

PG&E must meet a high threshold in its Motion. To prevail, PG&E must show that regardless of underlying circumstances or the unreasonableness of PG&E's conduct, I was precluded "as a matter of law" from exercising the sole remedy available to me under the Easement for PG&E's violation of the Easement's conditions, consisting of termination. PG&E does not and cannot meet that threshold.

---

[2] One of PG&E's fundamental premises is its bare assertion that it "stated the legal grounds" and "presented facts" to support its objection to my claim in the "Omnibus Objection", pursuant to which the burden supposedly "reverts" to me to prove my claim. [Opening Brief, 1:12-16.] This assertion is absurd. As PG&E acknowledges [Opening Brief, 8:5-7], this assertion is based solely on PG&E's self-serving observation that my claim is not shown in its "books and records." But as I establish in my Declaration, PG&E's records are replete with documentary evidence, including correspondence and reports, that substantiate my claim. A negative does not prove a negative. The mere fact that PG&E might have "books and records" that for whatever reason do not reflect my claim does not contradict the reality that PG&E does in fact does have multiple records of my claim.

[3] PG&E mischaracterizes the Termination of Easement as a "Termination Notice" in its Opening Brief. Irrespective of how PG&E might attempt to repackage it, the recorded document was a straightforward Termination of Easement, not some other form of "notice."

Case: 19-30088    Doc# 12101    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 5 of 14

A. **The Easement Is a Contract Governed by the Rules of Contract Interpretation and I Was Entitled to Exercise My Contractual Right to Terminate the Easement Following PG&E's Breach of the Easement.**

The grant of an easement is interpreted in accordance with the rules of contract interpretation. (Cal. Civil Code § 1066; Cal. Civil Code § 1040 ("(a) voluntary transfer is an executed contract, subject to all rules of law concerning contracts in general except that a consideration is not necessary to its validity"); *Continental Baking Company v. Katz*, 68 Cal.2d 512, 521 (1968); *see also Laux v. Freed*, 53 Cal.2d 521, 522 (1960)("the rules applicable to the construction of deeds generally apply with full force and effect to instruments conveying easements or other rights or privileged"); *Machado v. Southern Pacific Transportation Co.* ("*Machado*"), 233 Cal.App.3d 347, 352 (1991)(specifying the rules for the interpretation of grants in real property).)

The rules of contract interpretation thus govern the interpretation of the Easement, including:

- The interpretation of easements is a question of law. (*Machado, id.*)
- The intention in an easement is ascertained from the writing alone. (Cal. Civil Code § 1639; see also *Machado, supra* ("(t)he cardinal requirement in the construction of deeds and other contracts is that the intention of the parties as gathered from the four corners of the instrument must govern").)
- Easements are interpreted to give effect to the mutual intentions of the parties so far as ascertainable from the easements. (Cal. Civil Code § 1636.)

Here the Court does not need to look any farther than the four corners of the Easement to deny PG&E's Motion.

1. The Easement is a contract and its interpretation is governed by the rules of contract interpretation.
2. The easement holder breaches the Easement's "conditions" if it unreasonably interferes with the property owner's use of the easement area "for any and all purposes."

6

OPPOSITION TO DEBTORS' OBJECTION TO CREDITOR'S CLAIM

Case: 19-30088    Doc# 12101    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 6 of 14

3. The Easement provides a single remedy for breach of the Easement's conditions: Any breach "shall terminate and extinguish the easement hereby granted."

4. When PG&E unreasonably interfered with our use of the easement area, the Easement terminated by its own terms.

This essential and inescapable interpretation of the Easement precludes a determination that I was prevented "as a matter of law" from terminating it. At minimum, PG&E's interference with my use of the easement area after PG&E finished its remedial work and left the property raises a triable issue of fact about whether that interference was unreasonable such that the Easement terminated in accordance with its express terms.

### B. The Burden of Proof Regarding Forfeitures Does Not Establish "As a Matter of Law" That the Easement Did Not Terminate After PG&E Breached Its Express Conditions.

PG&E devotes a significant portion of the "Argument" in its Opening Brief to a review of the burden of proof concerning "forfeiture," in Sections IV(A)(1) and § IV(A)(3). Those two Sections are hand-in-glove and I address both of them here.

The burden of proof for forfeitures does not establish "as a matter of law" that I was not entitled to exercise my sole remedy under the Easement by terminating the Easement. To the contrary, forfeiture is allowed when consistent with the terms of an underlying contract and warranted by the underlying circumstances. As I demonstrated above, the express terms of the Easement afforded me the right to terminate the Easement when PG&E breached it by unreasonably interfering with our use of the easement area. I was not precluded "as a matter of law" from exercising that contractual right.

This Court has found that the California law regarding the burden of proof in forfeitures does not necessarily bar the forfeiture of a contractual right. In *In re Read-Rite*, 2006 WL 1214839 (N.C.Cal. 2006), this Court had determined that Appellant's license under an agreement regarding use of patented technologies was invalid. Appellant argued that this outcome violated the California law disfavoring forfeitures. The District Court disagreed and affirmed. The Court held, at page five:

7

OPPOSITION TO DEBTORS' OBJECTION TO CREDITOR'S CLAIM

> As for Appellant's argument that California law of contract interpretation mandates construing the Cross-Licensing Agreement in such a way as to avoid causing one of the parties to suffer a forfeiture, the Court agrees with the reasoning of the Bankruptcy Court, which found that the law against forfeiture was inapplicable to the facts of this case, and that even if it was implicated, forfeiture law did not mandate a finding that Holdings qualified as an operating subsidiary. [Citation omitted.]
>
> The Court affirms these findings of the Bankruptcy Court. The Court finds that the law of forfeiture does not apply to save a party from suffering a loss of rights where the only reasonable interpretation of a contract dictates that result. [Citations and internal quotations omitted.] Because the Court does not find that there is any other reasonable construction of the 1994 Agreement except for the one detailed above, the law against forfeitures is not implicated. Even if forfeiture law is applicable, that law does not operate to allow a court to rewrite the contract or adopt an unnatural construction of its terms. [Citations omitted.] Accordingly, Appellant's arguments on this point are rejected and the Bankruptcy Court's findings are affirmed.

The decisions the District Court cited included *Troughton v. Eakle*, 58 Cal.App. 161 (1922), in which the owner of real property terminated a contract for the sale of the property and kept the buyer's money that already had been tendered to her. The buyers asserted they did not breach the purchase contract and sued to recover their money. The trial court entered judgment for the buyers. The appellate court reversed. The court acknowledged the burden of proof disfavoring forfeitures but found it does not preclude a forfeiture when the conditions of a contract have been breached. The appellate court wrote, at page 173:

> It is true that the law looks with disfavor upon forfeitures and has declared that "a condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created" (section 1442, Civ. Code), but this does not mean that the courts may make for the parties a different contract from what they have agreed upon or resort to a strained and unnatural construction to defeat or nullify their clearly expressed purpose or intention.

Similarly, in *De Angeles v. Cotta*, 62 Cal.App. 691 (1923), a property owner terminated a lease on the grounds that the lessees' assignment of the lease was a breach. The trial court ruled in favor of the lessees. The appellate court reversed. The court also acknowledged the burden of proof disfavoring forfeitures—quoting Cal. Civil Code Section 1442—but found, at page 695: "This does not mean that courts must resort to scholastic subtleties to save tenants from the consequences of their deliberate breach of their covenants."

Case: 19-30088    Doc# 12101    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 8 of 14

Statutory law affirms the remedy of termination when an easement holder oversteps its rights under the easement. California Civil Code Section 811(3) specifies that an easement is "extinguished" when the easement holder performs "any act upon either tenement…which is incompatible with its nature or exercise."[4]

These authorities (and common sense) preclude a finding that I could not "as a matter of law" terminate the Easement after PG&E unreasonably interfered with our use of the easement area. Irrespective of any presumption against forfeiture, California law does not dictate a blanket prohibition against forfeitures. As confirmed in the above decisions and statute, a party to a contract is entitled to exercise his remedies under the contract, including termination, despite the presumption. That's exactly what happened here when the Easement terminated following PG&E's unreasonable interference.[5]

### C. The Purported Release Is Immaterial to My Exercise of My Rights Under the Easement After PG&E Completed the Remedial Work at Our Property.

As I explained in the above Factual Background section, PG&E's assertion of the "Revised Work Acknowledgment" as a "release" is a subterfuge. The release related solely to PG&E's completion of the remedial work that PG&E performed at our property and my acceptance of PG&E's payment as compensation for the unfinished landscaping work. The release did not give PG&E license to subsequently interfere unreasonably with our peaceable use and enjoyment of the easement area, and did not excuse PG&E's breach of the Easement that precipitated the termination.

---

[4] In Section 811, easements are encompassed within the term "servitude" and the easement holder is "the owner of the servitude."

[5] The very authority that PG&E's cites in its Opening Brief supports my right to terminate the Easement. PG&E quotes the rule that an easement may be extinguished if the easement holder's conduct constitutes "a permanent interference or an act of a nature such that, thereafter, exercise of the easement cannot be made without severe burden upon the servient tenement." [Opening Brief, 11:4-5, quoting Buechner v. Jonas, 228 Cal.App.2d 127, 132.] Here, PG&E's "permanent interference" with our use of the easement area is a "severe burden" on our property that entitled us to terminate the Easement. While it is unnecessary to reach this issue in deciding the narrow question presented in PG&E's Motion—whether "as a matter of law" I was precluded from terminating the Easement—I am certain that the facts justify termination even under the rule that PG&E cites.

### E. PG&E Does Not Provide Any Authority Establishing That I Must Resort to Legal Action to Terminate the Easement in Accordance With My Contractual Rights Under the Easement, and In Any Event Such a Requirement Would Not "As a Matter of Law" Prohibit the Easement's Termination.

PG&E asserts in Section IV(A)(4) of its Opening Brief that I must obtain a court judgment to terminate the Easement. PG&E is wrong.

California law does not require me to hire an attorney, file a lawsuit, and spend a lot of money on attorney fees and costs as a prerequisite to exercising my contractual remedy upon PG&E's breach of the Easement. If PG&E contests the termination of the Easement pursuant to that remedy it has the prerogative to challenge the termination in a quiet title action, but the onus to bring the action is not on me.

In that regard, PG&E's argument is irrelevant and an unnecessary diversion. PG&E and I are now before the Court on the issue of the whether the Easement is terminated. Whether the court action was instigated by PG&E or me is immaterial. A requirement that a party must resort to court action to establish her or his legal rights does not translate into a determination "as a matter of law" that the party cannot establish those rights, which after all is the only issue presently before this Court regarding the Easement's termination.

Nevertheless, the authorities that PG&E cites in its Opening Brief do not support the conclusion that I had to file suit as a prerequisite to terminating the Easement.

The first three decisions cited in Section IV(A)(4) of PG&E's Opening Brief all concerned abandonment of easements, which is not a factor here. *People v. Ocean Shore Railroad, Inc.*, 32 Cal.2d 406 (1948) concerned the just compensation due in a condemnation action against a railroad company. The railroad asserted title in the condemned land by prescription. The Court held that the railroad had not established fee title pursuant to adverse possession and to the extent it had a prescriptive easement, that easement was extinguished by abandonment, which is decided as a question of fact. (*Id.* at 415-418.) *Johnson v. Ocean Shore Railroad Co.*, 16 Cal.App.3d 429 (1971) also concerned the determination of whether the railroad company's interest in the subject property was a fee or only an easement. The Court decided that the interest was an easement that had been abandoned. The issue in *Flanagan v. San Marcos Silk Co.*, 106 Cal.App.2d 458 (1951)

was the sufficiency of evidence to support the trial court's decision that the subject easement had been abandoned. The Appellate Court affirmed.

None of these decisions involved a contractual grant of an easement and the breach of its terms, which is the situation here. The termination of the Easement pursuant to the express remedy specified in the Easement does not in any way involve an abandonment. Regardless of the rules concerning abandonment, they do not apply in this matter.

PG&E then cites *City of Santa Monica v. Jones*, 104 Cal.App.2d 463 (1951) in an attempt to analogize our situation to "the enforcement of a power of termination through a fee simple subject to condition subsequent, where 'the owner of a right of entry for breach of condition has a privilege and a power, but not a right; for by a right, in the strict sense, is meant a claim which may be enforced by legal machinery of some sort, and until an election to forfeit for breach, there is no such right in the one for whose benefit the condition exists.'" [Opening Brief, 13:3-8.] While this exercise might make an interest law school exam question, it has no significance here. The termination of the Easement does not involve a termination of a "fee simple" that is "subject to condition subsequent" nor does it concern a "right of entry."[6]

As the Court explained in *Concord & Bay Point Land Co. v. City of Concord*, 229 Cal. App. 3d 289, 300 (1991)—which I summarize in the next Section—powers of termination and rights of reentry do not apply to easements. "(T)he easement does not 'revert' on failure of a condition, it is simply extinguished." (*Id.*) And in any event, even as to powers of termination, California law does not require a court action as a prerequisite to the exercise of them. To the contrary, Civil Code section 885.050 provides that a power of termination may be exercised "by notice or by civil action."

PG&E devotes the rest of Section IV(A)(4) in its Opening Brief to rehashing its prior assertions about the burden of proof. As I explained above, the burden regarding forfeitures does

---

[6] *City of Santa Monica (id.)*, was a condemnation case in which the Court held that a right of entry in an ancient deed did not provide basis for the claimants to share in the condemnation award as a fee simple owner of the condemned property, a far cry from the situation here.

11

OPPOSITION TO DEBTORS' OBJECTION TO CREDITOR'S CLAIM

not preclude me "as a matter of law" from exercising my right to terminate the Easement in accordance with its express terms.

### F. PG&E's Reliance on the Marketable Record Title Act Is Mystifying. The Powers of Termination That the Act Eliminated Do Not Include the Remedy of Termination in Easements.

The Marketable Record Title Act ("MRTA") is irrelevant here. The very statutes that PG&E cites in its Opening Brief establish that the MRTA does not apply. PG&E cites California Civil Code Section 885.030, which provides that a "power of termination" as defined in the MRTA expires thirty years after the respective deadlines specified in the statute. PG&E also cites Section 885.010, which defines the term "power of termination" as used in the MRTA and limits it to "fee simple estate(s) in real property." It is axiomatic that an easement is not a fee simple estate. The expiration of powers of termination specified in the MRTA do not apply to the Easement here.

It bears repeating the provision of Section 885.010 upon which PG&E relies. Section 885.010 (a)(1) specifies:

> "Power of termination" means the power to terminate *a fee simple estate in real property* to enforce a restriction in the form of a condition subsequent to which the fee simple estate is subject, whether the power is characterized in the instrument that creates or evidences it as a power of termination, right of entry or reentry, right of possession or repossession, reserved power of revocation, or otherwise, and includes a possibility of reverter that is deemed to be and is enforceable as a power of termination pursuant to Section 885.020. (Emphasis added.)

Again, an easement is not a "fee simple estate in real property" and the "power of termination" does not apply to easements. The California Supreme Court explained the difference between easements and fee simple estates in *Kazi v. State Farm Fire & Casualty. Co.*, 24 Cal.4th 871, 880–81 (2001), as follows:

> It is especially important to distinguish an easement right from fee simple property ownership. Fee simple title provides an owner "the right to the surface and to everything permanently situated beneath or above it." By contrast, an appurtenant easement is a burden on land that creates a right-of-way or the right to use the land only. It represents a limited privilege to use the land of another for the benefit of the easement holder's land, but does not create an interest in the land itself. (Internal citations omitted.)

12
OPPOSITION TO DEBTORS' OBJECTION TO CREDITOR'S CLAIM

Thus, in *Concord & Bay Point Land Co. v. City of Concord*, 229 Cal. App. 3d 289 (1991)—which ironically PG&E cites in its Opening Brief [13:20-21]—the Court distinguished between a fee simple subject to a "power of termination" and an easement. The underlying issue was whether the conveyance in 1911 to a railroad company was a fee simple estate or an easement. The Court concluded that the railroad company's interest in the property was a fee simple estate: "This deed conveys an estate of inheritance in the land itself, unrestricted except for a future condition, upon the failure of which the property conveyed reverts to the grantor." [*Id.* at 295.] The Court then explained: "This is a fee simple subject to a condition subsequent; the reversionary interest held by the grantor is a power of termination. The language is not apt for conveyance of a mere easement. First, the deed clearly grants an estate in land; an easement is an interest in the land of another rather than an estate in land." [*Id.* (internal citations omitted).] The Court further clarified that the power of termination for fee simple estates does not apply to easements: "(T)he grant of an easement leaves the grantor with her full estate, impaired only by the encumbrance. There is no power of termination or right of reentry involved, and the easement does not 'revert' on failure of a condition, it is simply extinguished." (*Id.* at 300.)

Because the expirations of powers of termination in the MRTA apply only the fee simple estates, and easements are not fee simple estates, the MRTA has does not apply to my right to terminate the Easement in accordance with the contractual remedy in the Easement.

G. **PG&E's Assertion That the Termination of Easement is not Recordable is a Red Herring. The Termination of Easement in Fact was Recorded, and Irrespective of Recordability, That Factor Does Not Prohibit "As a Matter of Law" the Termination of the Easement in Accordance With Its Contractual Terms.**

PG&E's assertion in Section IV(C) of its Opening Brief that the Termination of Easement is not a recordable document is another immaterial diversion. As exemplified by the County Recorder's recordation of the Termination of Easement, the recordation of documents terminating easements are routine. In that regard, the Termination of Easement affects title to real property and thus is recordable under Government Code Section 27280. California law expressly acknowledges the recordability of documents terminating interests in real property—here the

13
OPPOSITION TO DEBTORS' OBJECTION TO CREDITOR'S CLAIM

Easement—in Government Code Section 27288.1, which specifies the requirements for a "document" that "terminates any interest, right, or encumbrance."

The proof is in the pudding—the Alameda County Recorder accepted the Termination of Easement for recording and recorded it. [J.S., Exhibit G.] The title company accepted the recorded Termination of Easement as basis to omit the Easement in its title report. [Addington Decl., Page 6, lines 1-10, comparing Exhibit N and Exhibit O.] But regardless of the technical requirements for recordation of the Termination of Easement, its recordability is immaterial to the sole issue before the Court, namely whether "as a matter of law" I was barred from terminating the Easement in accordance with its contractual conditions and remedy.

## IV. CONCLUSION

For the foregoing reasons, I respectfully request that the Court deny PG&E's Motion.

DATED: March 31, 2022

By: _____
DAVID P. ADDINGTON
In Pro Per