# EXHIBIT
# M

# Site Plan: Addington, LLC
# Transmission Facilities

## APN: 051-4813-017

**Street Address:**
298 Saint James Drive
Piedmont CA 94611

## Legend

— Approx. boundary of PTO
— Transmission Line

- Moraga – Oakland #1 115 kv
- Moraga – Oakland #2 115 kv
- Moraga – Oakland #3 115 kv
- Moraga – Oakland #4 115 kv







| REV | DATE | DESCRIPTION | DRAWN | CHECK | APPROVED |
|---|---|---|---|---|---|
| A | 2/27/2021 | ISSUED FOR ADDINGTON LLC PTO | RO | RO | BB |

ADDINGTON LLC

SITE PLAN

ZGLOBAL

PRELIMINARY, NOT FOR CONSTRUCTION



PG&E OAKLAND "X" SUBSTATION

ADDINGTON LLC
TRANSMISSION FACILITIES

PG&E MORAGA SUBSTATION

BREAKER

122 — MORAGA – OAKLAND #1 115kV
132 — MORAGA – OAKLAND #2 115kV

4/30/40607960

T-30

62'    88'    3/0 CU

612 — BREAKER
623

112 — MORAGA – OAKLAND #3 115kV
142 — MORAGA – OAKLAND #4 115kV

4/32/40687327

T-32

71'    40'

632 — BREAKER
645

ZGLOBAL

REV  A  DATE 07/02/2021  DESCRIPTION ISSUED FOR ADDINGTON LLC PTD  DRAWN RG  CHECK RG  APPROVED BB

PRELIMINARY- NOT FOR CONSTRUCTION

ADDINGTON LLC
Simplified One-Line Diagram
ZGLOBAL

# David P. Addington Transmission Owner Tariff

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 4 of 24

# Table of Contents

**Section**  **Page**

1. Preamble ........................................................................................................
   1.1   Transmission Access for Participating TOs ....................................................
   1.2   Transmission Access for Wheeling Customers .................................................
   1.3   Transmission Access for End-Users...............................................................
2. Effective Date ...............................................................................................
   2.1   Termination .................................................................................................
3. TO Definitions ..............................................................................................
4. Eligibility ......................................................................................................
5. Access Charges and Transmission Rates.........................................................
   5.1   Low Voltage Access Charge ........................................................................
   5.2   Wheeling Access Charge .............................................................................
   5.3   Transmission Revenue Requirement ............................................................
   5.4   Transmission System Rights.........................................................................
   5.5   Transmission Revenue Balancing Account Adjustment ...............................
6. Ancillary Services – Applicability and Charges...............................................
7. Billing and Payment.......................................................................................
8. Obligation to Interconnect or Construct Transmission Expansions and Facility
   Upgrades.........................................................................................................
   8.1   Participating TO Obligation to Interconnect ...............................................
   8.2   Participating TO Obligation to Construct Transmission Expansions or Facility Upgrades ..
         22
   8.3   Request for FERC Deference Regarding Need Determination .......................
9. Expansion Process ........................................................................................
   9.1   Determination of Facilities..........................................................................
   9.2   Obligation to Build.......................................................................................
   9.3   Provisions Relating To Transmission Construction On the Systems Of
         Other TOs...................................................................................................
10. Interconnection Process................................................................................
   10.1  Applicability ..............................................................................................
   10.2  Applications................................................................................................
   10.3  Interconnection Application ........................................................................
   10.4  Review of Completed Interconnection Application ......................................
   10.5  Notice of Need for Interconnection Study ...................................................
   10.6  Impact Study Cost Reimbursement and Agreement......................................
   10.7  Interconnection Study Procedures................................................................
   10.8  Notice of Need for Facilities Study ............................................................
   10.9  Facilities Study Procedures ........................................................................

Case: 19-30088   Doc# 12101-4   Filed: 04/01/22   Entered: 04/04/22 08:55:58   Page 5
of 24

|       | 10.10 | Partial Interim Service ................................................................................................................ |
|       | 10.11 | Expedited Interconnection Procedures........................................................................................ |
| 11.   |       | Uncontrollable Forces and Indemnification................................................................................ |
|       | 11.1  | Procedures to Follow of Uncontrollable Force Occurs............................................................... |
|       | 11.2  | Indemnification ........................................................................................................................... |
| 12.   |       | Regulatory Filings....................................................................................................................... |
|       | 12.1  | Open Access ................................................................................................................................ |
| 13.   |       | Creditworthiness.......................................................................................................................... |
|       | 13.1  | UDCs, MSSs, and Scheduling Coordinators Using the Participating TO's Low Voltage Transmission Facilities ................................................................................................ |
|       | 13.2  | End-Users.................................................................................................................................... |
| 14.   |       | Disputes ....................................................................................................................................... |
| 15.   |       | [Reserved].................................................................................................................................... |
| 16.   |       | Miscellaneous.............................................................................................................................. |
|       | 16.1  | Notices ........................................................................................................................................ |
|       | 16.2  | Waiver......................................................................................................................................... |
|       | 16.3  | Confidentiality............................................................................................................................ |
|       | 16.4  | TO Tariff Supersedes Existing Tariffs........................................................................................ |
|       | 16.5  | Titles ........................................................................................................................................... |
|       | 16.6  | Severability................................................................................................................................. |
|       | 16.7  | Preservation of Obligations ........................................................................................................ |
|       | 16.8  | Governing Law ........................................................................................................................... |
|       | 16.9  | Appendices Incorporated ............................................................................................................ |
|       | 16.10 | Conflict With CAISO Tariff........................................................................................................ |
|       | 16.11 | Conflicting Operating Instructions.............................................................................................. |

Appendix I
Appendix II

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 6 of 24

1. **Preamble.** The Participating TO's revenue requirements and applicable rates and charges for transmission access over the CAISO Controlled Grid and the terms and conditions for transmission expansion and interconnection are set forth in this TO Tariff and the CAISO Tariff. For purposes of this TO Tariff and the CAISO Tariff, David P. Addington (Addington) is a Non- Load-Serving Participating TO with no End-Use Customers.

    1.1 **Transmission Access for Participating TOs.** Participating TOs are able to participate in the CAISO and utilize the entire CAISO Controlled Grid to serve their End-Use Customers. The applicable High Voltage Access Charges and Transition Charges shall be paid by Participating TOs to the CAISO pursuant to the CAISO Tariff. If a Participating TO utilizes the Low Voltage Transmission Facilities of another Participating TO, the Participating TO shall also pay the Low Voltage Access Charge of the other Participating TO.

    1.2 **Transmission Access for Wheeling Customers.** Wheeling allows Scheduling Coordinators to deliver Energy through or out of the CAISO Controlled Grid to serve a load located outside the transmission or Distribution System of a Participating TO. Wheeling Access Charges shall be paid by Scheduling Coordinators to the CAISO pursuant to the CAISO Tariff.

    1.3 **Transmission Access for End-Users.** End-Users receive transmission service over the CAISO Controlled Grid through the Participating TO to whose transmission or distribution facilities the End-User is directly connected. Any charges to End-Users for access to the CAISO Controlled Grid shall be paid to the applicable Participating TO to whose transmission or distribution facilities the End-User is directly connected.

2. **Effective Date.** This TO Tariff is effective on the date on which the Project is placed under the Operational Control of the CAISO and shall continue to be effective, as amended from time to time, so long as Addington is a party to the Transmission Control Agreement.

    2.1 **Termination.** This TO Tariff may be terminated by Addington upon such advance notice and with such authorization as FERC may require.

3. **TO Definitions.** Capitalized terms used in this TO Tariff shall have the meanings set out below unless otherwise stated or the context otherwise requires. Capitalized terms used in this TO Tariff and not defined below shall have the meanings set out in the CAISO Tariff as it may be amended from time to time.

    3.1 **Addington.** David P. Addington, the Participating TO under this TO Tariff.

    3.2 **Base Transmission Revenue Requirement.** The Transmission Revenue Requirement which does not reflect amounts for the TRBAA.

    3.3 **Completed Application Date.** The date on which a party submits an Interconnection Application that satisfies the requirements of a Completed Interconnection Application.

Case: 19-30088   Doc# 12101-4   Filed: 04/01/22   Entered: 04/04/22 08:55:58   Page 7 of 24

**3.4 Completed Interconnection Application.** An Interconnection Application that satisfies all of the information and other requirements of this TO Tariff and, if applicable, the information requirements as specified by the CAISO and posted on the CAISO Home Page.

**3.5 Direct Assignment Facilities.** Facilities or portions of facilities that are owned by the Participating TO necessary to physically and electrically interconnect a particular party requesting interconnection under this TO Tariff to the CAISO Controlled Grid at the point of interconnection. Direct Assignment Facilities shall be specified in the Interconnection Agreement that governs Interconnection Service to such party and shall be subject to FERC approval.

**3.6 Expedited Interconnection Agreement.** A contract between a party which has submitted a Request for Expedited Interconnection Procedures and the Participating TO under which the Participating TO agrees to process, on an expedited basis, the Completed Interconnection Application of such party and which sets forth the terms, conditions, and cost responsibilities for such Interconnection.

**3.7 High Voltage Utility-Specific Rate.** The Participating TO's High Voltage Transmission Revenue Requirement divided by the Participating TO's forecast of its Gross Load.

**3.8 High Voltage Wheeling Access Charge.** The Wheeling Access Charge assessed by the ISO associated with the recovery of the Participating TO's High Voltage Transmission Revenue Requirement in accordance with Section 26.1 of the ISO Tariff.

**3.9 Interconnection Application.** An application that requests Interconnection to the CAISO Controlled Grid.

**3.10 Low Voltage Transmission Revenue Requirement**. The portion of the Participating TO's TRR associated with and allocable to the Participating TO's Low Voltage Transmission Facilities and Converted Rights associated with Low Voltage Transmission Facilities.

**3.11 Project.** The transmission assets owned by Addington, consisting of (1) two transmission towers; and (2) portions of four 115 kV circuits, consisting of twelve 115 kV lines.

**3.12 Regional Transmission Organization (RTO).** A voluntary organization approved by FERC and composed of transmission owners, transmission users, and other entities, organized to efficiently coordinate the planning, expansion, and use of transmission on a regional and inter-regional basis.

**3.13 Regulatory Authority.** In the case of Addington, the FERC.

**3.14 Request for Expedited Interconnection Procedures.** A written request by

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 8 of 24

which an applicant for Interconnection can request expedited processing of its Interconnection Application.

**3.15 TO Tariff.** This Transmission Owner Tariff, as it may be amended or superseded.

**3.16 Transition Charge.** A component of the Access Charge determined by the CAISO and assessed by the Participating TO along with the High Voltage Access Charge in accordance with Section 5.7 of Appendix F, Schedule 3 of the CAISO Tariff.

**3.17 Transmission Revenue Balancing Account Adjustment (TRBAA).** A mechanism established by the Participating TO which will ensure that all Transmission Revenue Credits and other credits specified in Sections 6 and 8 of Appendix F, Schedule 3 of the CAISO Tariff, flow through to CAISO Tariff and TO Tariff transmission customers.

**3.18 Transmission System Rights (TSRs)**. TSRs represent Addington's exclusive transmission entitlement on the Project. Addington, as the holder of the TSRs, is entitled to all associated rights as are available under the CAISO Tariff and Protocols.

4. **Eligibility**. Transmission service over a Participating TO's system shall be provided only to Eligible Customers.

5. **Access Charges and Transmission Rates**. The applicable Access Charges are provided in the CAISO Tariff.

   **5.1 Low Voltage Access Charge**. The Low Voltage Access Charge shall be determined in accordance with the CAISO Tariff. As Addington is a Non-Load-Serving Participating TO, the CAISO shall charge for and collect the Low Voltage Access Charge on Addington's behalf pursuant to Section 26.1 and Appendix F, Schedule 3, Section 13 of the CAISO Tariff from the Participating TO to whose facilities Addington's Low Voltage Transmission Facilities are directly connected. The rate for Addington's Low Voltage Access Charge shall be Addington's Low Voltage Transmission Revenue Requirement divided by the forecasted Gross Load of the Participating TO that is the Low Voltage Access Charge customer. The Low Voltage Access Charge customer shall pay the CAISO a Low Voltage Access Charge equal to the product of the Addington's Low Voltage Access Charge rate and the actual Gross Load of the Participating TO that is the Low Voltage Access Charge customer.

   **5.2 Wheeling Access Charge**. The Wheeling Access Charge shall be determined in accordance with the CAISO Tariff. The Wheeling Access Charge assessed by the CAISO consists of a High Voltage Wheeling Access Charge and, if applicable, a Low Voltage Wheeling Access Charge. The High Voltage Wheeling Access Charge is set forth in the CAISO Tariff.

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 9 of 24

**5.3   Transmission Revenue Requirement**.  As set forth in the CAISO Tariff, the Transmission Revenue Requirement for each Participating TO is used to develop  the Access Charges set forth in the CAISO Tariff and is used by the CAISO to calculate  the disbursement of Wheeling revenues among Participating TOs.  Wheeling revenues are disbursed by the CAISO to Participating TOs pursuant to Section 26.1.4.3 of the CAISO Tariff.  The Transmission Revenue Requirement, High  Voltage Transmission Revenue Requirement, and Low Voltage Transmission  Revenue Requirement for the Participating TO are set forth in Appendix I.

**5.4   Transmission System Rights.**  Addington owns the TSRs with respect to the Project.

**5.5   Transmission Revenue Balancing Account Adjustment**.  The Participating TO  shall maintain a Transmission Revenue Balancing Account with an annual TRBAA that will  ensure that all Transmission Revenue Credits and adjustments for any over- or  under-recovery of its annual Transmission Revenue Requirement, if any,  specified in Sections 6, 8 and 13 of Appendix F, Schedule 3 of the CAISO Tariff,  flow through to transmission customers.  The TRBAA used to calculate the High  Voltage Revenue Requirement shall include other adjustments specified in  Appendix F, Schedule 3, Sections 6, 8 and 13 of the CAISO Tariff.

The TRBAA shall be equal to:  $TRBAA = Cr + Cf + I$

> Where:

> $Cr$ = The principal balance in the TRBA recorded in FERC Account No. 254 as of September 30 of the year prior to commencement of the January billing cycle. This balance represents the  unamortized balance in the TRBA from the previous period and the difference in the amount of revenues or expenditures from Transmission Revenue Credits  and any over- or under-recovery of its annual Transmission Revenue Requirement and  the amount of such revenues or expenditures that has been refunded to or
collected from customers through operation of the TRBAA;

> $Cf$ = The forecast of Transmission Revenue Credits, if any, for the following calendar year;

> $I$ = The interest balance for the TRBA, which shall be calculated using the interest rate pursuant to Section 35.19(a) of FERC's regulations under the Federal Power  Act (18 CFR Section 35.19(a)). Interest shall be calculated based on the average  TRBA principal balance each month, compounded quarterly; and

The Addington TRBAA, calculated in accordance with the CAISO Tariff and approved by the FERC, is stated in Appendix I.

**6.  Ancillary Services – Applicability and Charges**. Ancillary Services are needed to

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 10 of 24

maintain reliability within the CAISO Controlled Grid. If any Ancillary Services are required, Addington will not provide such services directly to the transmission customer and the transmission customer will be required to meet any such requirement in accordance with the CAISO Tariff.

7. **Billing and Payment**.

   **7.1** The CAISO, in accordance with the CAISO Tariff, shall pay the Participating TO, among other things, all applicable Access Charge revenues and Wheeling revenues in connection with the Project.

   **7.2** Users of Addington's High and Low Voltage Transmission Facilities and Entitlements placed under the CAISO's Operational Control shall pay to the CAISO all applicable charges in accordance with the CAISO Tariff.

8. **Obligation to Interconnect or Construct Transmission Expansions and Facility Upgrades**

   **8.1** **Participating TO Obligation to Interconnect**. The Participating TO shall, at the request of a third party, interconnect its system to the wholesale generation or Load of such third party, or modify an existing wholesale Interconnection, subject to the CAISO Tariff. Interconnections under this TO Tariff shall be available to entities eligible to request Interconnection consistent with the provisions of Section 210(a) of the FPA and CAISO Tariff Section 24. The procedures for Interconnection of wholesale generation to the CAISO Controlled Grid shall be governed by CAISO Tariff Section 25.

   **8.2** **Participating TO Obligation to Construct Transmission Expansions or Facility Upgrades**. The Participating TO shall be obligated, under the CAISO Tariff and this TO Tariff, to: (1) perform Interconnection Studies; and (2) build transmission additions and facility upgrades.

   **8.3** **Request for FERC Deference Regarding Need Determination**. It is intended that FERC grant substantial deference to the factual determinations of the CAISO (including the CAISO's ADR Procedures), the CPUC, WECC, or RTO coordinated planning processes as to the need for or construction of a facility, the need for full cost recovery, and the allocation of costs.

   **8.4** **Obligation to Build.**

      **8.4.1** **Due Diligence to Construct**. The Participating TO shall use due diligence to construct, within a reasonable time, additions or upgrades to its transmission system that it is obligated to construct pursuant to the CAISO Tariff and this TO Tariff.

      The Participating TO's obligation to build will be subject to: (i) its ability, after making a good faith effort, to obtain the necessary approvals and property rights under applicable federal, state, and local laws; (ii) the

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 11 of 24

presence of a cost recovery mechanism with cost responsibility assigned in accordance with the CAISO Tariff. The Participating TO will not construct or expand its existing or planned transmission system, if doing so would impair system reliability as determined through systems analysis based on the Applicable Reliability Criteria.

**8.4.2 Delay in Construction or Expansion**. If any event occurs that will materially affect the time for completion of new facilities, or the ability to complete them, the Participating TO shall promptly notify the CAISO.

In such circumstances, the Participating TO shall, within thirty days of notifying the CAISO of such delays, convene a technical meeting with the CAISO to discuss the circumstances which have arisen and evaluate any options available. The Participating TO also shall make available to the CAISO studies and work papers related to the cause and extent of the delay and the Participating TO's ability to complete the new facilities, including all information that is in the possession of the Participating TO about the circumstances which have arisen, any options available, and any information reasonably needed to evaluate the alternatives.

**8.4.2.1 Alternatives to the Original Facility Additions**. If the review process determines that one or more alternatives exist to the originally planned construction project, the Participating TO shall present such alternatives for consideration to the CAISO. If upon review of any alternatives, the CAISO wishes to evaluate or to proceed with one of the alternative additions or upgrades, the CAISO may request that the Participating TO prepare revised studies pursuant to the CAISO Tariff or this TO Tariff. If the Participating TO concludes that no reasonable alternative exists to the originally planned addition or upgrade and the CAISO disagrees, the dispute shall be resolved pursuant to the CAISO ADR Procedure.

**8.4.2.2 Refund Obligation for Unfinished Facility Additions**. If the Participating TO and the CAISO mutually agree that no other reasonable alternatives exist, the obligation to construct the requested additions or upgrades shall terminate and any deposit not yet applied toward the expended project costs shall be returned with interest pursuant to FERC Regulation 35.19(a)(2)(iii). However, the Participating TO shall be entitled to recover all costs prudently incurred by the Participating TO through the time the construction was suspended.

**8.5 Provisions Relating To Transmission Construction On the Systems Of Other TOs**.

**8.5.1 Responsibility for Third Party Additions**. A Participating TO shall not be responsible for making arrangements for any engineering,

Case: 19-30088   Doc# 12101-4   Filed: 04/01/22   Entered: 04/04/22 08:55:58   Page 12 of 24

permitting, and construction of transmission or distribution facilities on the system(s) of any other entity or for obtaining any regulatory approval for such facilities. The Participating TO will undertake reasonable efforts through the coordinated planning process to assist in making such arrangements, including, without limitation, providing any information or data required by such other electric system pursuant to Good Utility Practice.

**8.5.2 Coordination of Third-Party System Additions.** Where transmission additions or upgrades being built pursuant to the CAISO Tariff require additions or upgrades on other systems, the Participating TO shall coordinate construction on its own system with the construction required by others. The Participating TO, after consultation with the CAISO and the relevant third parties, may defer construction if the new transmission facilities on another system cannot be completed in a timely manner. The Participating TO shall notify the CAISO in writing of the basis for any decision to defer construction and the specific problems which must be resolved before it will initiate or resume construction of the new facilities. Within forty Business Days of receiving written notification by the Participating TO of its intent to defer construction pursuant to this section, the CAISO may challenge the decision in accordance with the CAISO ADR Procedure.

## 9. Interconnection Process

**9.1  Applicability.** All requests for Interconnection directly to the CAISO Controlled Grid from parties eligible to request such Interconnection consistent with Section 210(a) of the FPA shall be processed pursuant to the provisions of CAISO Tariff Section 25. All requests for Interconnection of wholesale generation directly to the CAISO Controlled Grid shall be processed pursuant to the provisions CAISO Tariff Section 24. Where the procedures in this TO Tariff conflict with the CAISO Tariff, the provisions in the CAISO Tariff will apply.

## 10. Uncontrollable Forces and Indemnification

**10.1 Procedures to Follow of Uncontrollable Force Occurs.** In the event of the occurrence of an Uncontrollable Force which prevents a Party from performing any of its obligations under this TO Tariff, such Party shall (i) immediately notify the other Parties in writing of the occurrence of such Uncontrollable Force, (ii) not be entitled to suspend performance in any greater or longer duration that is required by the Uncontrollable Force, (iii) use its best efforts to mitigate the effects of such Uncontrollable Force, remedy its inability to perform, and resume full performance hereunder, (iv) keep the other Parties apprised of such efforts on a continual basis and (v) provide written notice of the resumption of performance hereunder. Notwithstanding any of the foregoing, the settlement of any strike, lockout, or labor dispute constituting an Uncontrollable Force shall be within the sole discretion of the Party to this TO Tariff involved in such strike, lockout, or labor dispute, and the requirement that

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 13 of 24

a Party must use its best efforts to remedy the cause of the Uncontrollable Force and mitigate its effects and resume full performance hereunder shall not apply to strikes, lockouts, or labor disputes. No Party will be considered in default as to any obligation under this TO Tariff if prevented from fulfilling the obligation due to the occurrence of an Uncontrollable Force.

**10.2 Indemnification.** A Market Participant shall at all times indemnify, defend, and save the Participating TO harmless from any and all damages, losses, claims, (including claims and actions relating to injury or to death of any person or damage to property), demands, suits, recoveries, costs and expenses, court costs, attorney fees, and all other obligations by or to third parties, arising out of or resulting from the Participating TO's performance of its obligations under this TO Tariff on behalf of a Market Participant, except in cases of negligence or intentional wrongdoing by the Participating TO.

## 11. Regulatory Filings.
Nothing contained herein shall be construed as affecting, in any way, the right of any electric utility (as defined by the Federal Power Act), Participating TO furnishing services in accordance with this TO Tariff, or any tariff and rate schedule which results from or incorporates this TO Tariff, unilaterally to make application to FERC as it deems necessary and appropriate to recover its Transmission Revenue Requirements, or for a change in its rates, including changes in rate methodology, or for a change in designation of transmission facilities to be placed under the CAISO's control, in each case under Section 205 of the FPA and pursuant to the FERC's Rules and Regulations promulgated thereunder. Nothing contained herein shall be construed as affecting in any way the ability of any Eligible Customer receiving services in accordance with this TO Tariff to exercise its rights under the Federal Power Act and pursuant to the FERC's rules and regulations promulgated thereunder.

**11.1 Open Access.** For purposes of the Stranded Cost Recovery available under Order Nos. 888 and 888-A, this Tariff, combined with the CAISO Tariff and wholesale distribution access tariff, if any, shall be considered an open access tariff under FERC Order Nos. 888 and 888-A.

## 12. Creditworthiness.

**12.1 UDCs, MSSs, and Scheduling Coordinators Using the Participating TO's Low Voltage Transmission Facilities.** For the purpose of determining the ability of a UDC, MSS, and Scheduling Coordinator to meet its obligations related to service using the Participating TO's Low Voltage Transmission Facilities hereunder where the Participating TO is collecting the Low Voltage Access Charge directly from each UDC, MSS and Scheduling Coordinator, the Participating TO may require reasonable credit review procedures for the UDC, MSS, or Scheduling Coordinator. This review shall be made in accordance with standard commercial practices. In addition, the Participating TO may require the UDC, MSS, or Scheduling Coordinator to provide and maintain in effect during the term of the service, an unconditional and irrevocable letter of credit as security to meet its responsibilities and obligations under this TO Tariff, or an alternative form of security proposed by the UDC, MSS, or Scheduling Coordinator and acceptable to

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 14 of 24

the Participating TO, and consistent with commercial practices established by the Uniform Commercial Code, that protect the Participating TO against the risk of non-payment.

**12.2 End-Users.** Creditworthiness rules applicable to End-Users shall be pursuant to the then-current rules of the applicable Local Regulatory Authority.

**13. Disputes.** Except as limited below or as otherwise limited by law, the CAISO ADR Procedures shall apply to all disputes between parties which arise under this TO Tariff or under or in respect of the proposed terms and conditions of a Facilities Study Agreement, Interconnection Study Agreement or Expedited Service Agreement. The CAISO ADR Procedures set forth in Section 13 of the CAISO Tariff shall not apply to disputes as to whether rates and charges set forth in this TO Tariff (other than charges for studies) are just and reasonable under the FPA.

**14. [Reserved]**

**15. Miscellaneous.**

**15.1 Notices.** Any notice, demand, or request in accordance with this TO Tariff, unless otherwise provided in this TO Tariff, shall be in writing and shall be deemed properly served, given, or made: (i) upon delivery if delivered in person, (ii) five days after deposit in the mail if sent by first class United States mail, postage prepaid, (iii) upon receipt of confirmation by return electronic facsimile if sent by facsimile, or (iv) upon Party at the address set forth in Appendix V. Any Party may at any time, by notice to the other Parties, change the designation or address of the person specified in Appendix V to receive notice on its behalf. Any notice of a routine character in connection with service under this TO Tariff or in connection with operation of facilities shall be given in such a manner as the Parties may determine from time to time, unless otherwise provided in this TO Tariff.

**15.2 Waiver.** Any waiver at any time by any Party of its rights with respect to any default under this TO Tariff, or with respect to any other matter arising in connection with this TO Tariff, shall not constitute or be deemed a waiver with respect to any subsequent default or other matter arising in connection with this TO Tariff. Any delay short of the statutory period of limitations in asserting or enforcing any right shall not constitute or be deemed a waiver.

**15.3 Confidentiality.**

**15.3.1 Maintaining Confidentiality If Not for Public Disclosure.** The Participating TO shall maintain the confidentiality of all of the documents, data, and information provided to it by any other Party that such Party may designate as confidential, provided, however, that the information will not be held confidential by the receiving Party if (1) the designating Party is required to provide such information for public disclosure pursuant to this TO Tariff or applicable regulatory

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 15 of 24

requirements, or (2) the information becomes available to the public on a non-confidential basis (other than from the receiving Party).

**15.3.2 Disclosure of Confidential Information.** Notwithstanding anything in this Section 16.3.2 to the contrary, if any Party is required by applicable laws or regulations, or in the course of administrative or judicial proceedings, to disclose information that is otherwise required to be maintained in confidence pursuant to this Section 16.3.2, the Party may disclose such information; provided, however, that as soon as such Party learns of the disclosure requirement and prior to making such disclosure, such Party shall notify the affected Party or Parties of the requirement and the terms thereof. The affected Party or Parties may, at their sole discretion and own costs, direct any challenge to or defense against the disclosure requirement and the disclosing Party shall cooperate with such affected Party or Parties to the maximum extent practicable to minimize the disclosure of the information consistent with applicable law. The disclosing Party shall cooperate with the affected Parties to obtain proprietary or confidential treatment of confidential information by the person to whom such information is disclosed prior to any such disclosure.

**15.4 TO Tariff Supersedes Existing Tariffs.** This TO Tariff, together with the CAISO Tariff and wholesale distribution access tariff, if any, supersedes any pre-existing open access transmission tariff of the Participating TO.

**15.5 Titles.** The captions and headings in this TO Tariff are inserted solely to facilitate reference and shall have no bearing upon the interpretation of any of the rates, terms, and conditions of this TO Tariff.

**15.6 Severability.** If any term, covenant, or condition of this TO Tariff or the application or effect of any such term, covenant, or condition is held invalid as to any person, entity, or circumstance, or is determined to be unjust, unreasonable, unlawful, imprudent, or otherwise not in the public interest, by any court or government agency of competent jurisdiction, then such term, covenant, or condition shall remain in force and effect to the maximum extent permitted by law, and all other terms, covenants, and conditions of this TO Tariff and their application shall not be affected thereby but shall remain in force and effect. The Parties shall be relieved of their obligations only to the extent necessary to eliminate such regulatory or other determination, unless a court or governmental agency of competent jurisdiction holds that such provisions are not severable from all other provisions of this TO Tariff.

**15.7 Preservation of Obligations.** Upon termination of this TO Tariff, all unsatisfied obligations of each Party shall be preserved until satisfied.

**15.8 Governing Law.** This TO Tariff shall be interpreted, governed by, and construed under the laws of the State of California, without regard to the principles of conflict of laws thereof, or the laws of the United States, as

Case: 19-30088   Doc# 12101-4   Filed: 04/01/22   Entered: 04/04/22 08:55:58   Page 16 of 24

applicable, as if executed and to be performed wholly within the State of California.

15.9  **Appendices Incorporated.** The several appendices to this TO Tariff, as may be revised from time to time, are attached to this TO Tariff and are incorporated by reference as if fully set forth herein.

15.10  **Conflict With CAISO Tariff.** If a Market Participant identifies a conflict between the TO Tariff and the CAISO Tariff, the provisions of the CAISO Tariff shall apply.

15.11  **Conflicting Operating Instructions.** In the event a Market Participant receives conflicting operating instructions from the CAISO and one or more Participating TO(s), if human safety would not knowingly be jeopardized nor electric facilities subject to damage, the Market Participant shall adhere to CAISO Tariff Section 4.2 and follow the CAISO's instructions.

**APPENDIX I**
**Transmission Revenue Requirement and TRBAA**

1. The Transmission Revenue Requirement shall be $XXX which is composed of a Base Transmission Revenue Requirement of $YYY and a TRBAA of positive $ZZZ.

2. The High Voltage Transmission Revenue Requirement shall be $AAA, which is composed of a Base Transmission Revenue Requirement for the High Voltage Transmission Facilities of $BBB and a High Voltage TRBAA of positive $CCC.

3. The Low Voltage Transmission Revenue Requirement shall be $RRR, which is composed of a Base Transmission Revenue Requirement for the Low Voltage Transmission Facilities of $SSS and a Low Voltage TRBAA of negative $TTT.

4. The TRBAA will be recalculated annually consistent with the CAISO Tariff, approved by the FERC, and provided to the CAISO.

Case: 19-30088    Doc# 12101-4    Filed: 04/01/22    Entered: 04/04/22 08:55:58    Page 18 of 24

## APPENDIX II
## NOTICES

**Designated Representative:**

David P. Addington
298 Saint James Drive
Piedmont, CA 94611

**Alternate Representative:**

David P. Addington
298 Saint James Drive
Piedmont CA 94611

July 15, 2021

Ms. Deborah Le Vine
Director, Infrastructure Contracts and Management
California Independent System Operator
250 Outcropping Way
Folsom, CA 95630

## Re: Application of David P. Addington for Participating Transmission Owner Status

Dear Ms. Le Vine:

Pursuant to CAISO Tariff Section 4.3 and Transmission Control Agreement (TCA) Section 2.2.1, I, David P. Addington (Addington), an individual, hereby submit my Application to become a PTO in accordance with Section 4.3 of the CAISO Tariff.

Addington seeks to become a PTO with regard to its acquisition of certain 115 kV transmission assets, already under CAISO operational control, from Pacific Gas and Electric Company (PG&E). The acquisition was implemented as of June 1, 2017 in accord with the termination of easement recorded that day.

The acquisition of these assets by Addington will only result in a change in ownership of these assets, and there are no material changes anticipated with respect to how such facilities are operated. Addington respectfully requests that this application for PTO status be considered and approved by CAISO promptly, as these assets are being used to serve load in the CAISO area but may no longer be under CAISO jurisdiction pending such approval.

Addington notes that it plans to file with the Federal Energy Regulatory Commission (FERC) its Transmission Owner Tariff (TO Tariff) and Transmission Revenue Requirement (TRR) pursuant to Section 205 of the Federal Power Act (FPA).

Addington will provide additional information if deemed necessary by CAISO to process this Application. Addington is pleased to be taking this step towards becoming a PTO, and we look forward to working with the California ISO and the Participating Transmission Owners to complete that process.

Sincerely,

David P. Addington

# DAVID P. ADDINGTON APPLICATION FOR PARTICIPATING TRANSMISSION OWNER STATUS

## I. Description of transmission lines and associated facilitates

The subject assets included in this Application consist of the following, located on the property identified with the Alameda County, California parcel number APN 051-4813-017 (the Site):

- Two transmission lattice towers; and
- Portions of the Oakland-Moraga Lines 1-4 on each tower that are located within the said property boundaries.

The street address is 298 Saint James Drive, Piedmont CA 94611. Additional information about the towers is provided in Attachment 1, and a Single Line Diagram and Site Plan are provided in Attachments 2 and 3, respectively.

These assets were acquired pursuant to a termination of easement for the Site recorded on June 1, 2017. A copy of the termination is shown in Attachment 4.

## II. Document setting out Entitlements:

N/A – There are no Entitlements.

## III. Statement of Encumbrances, documents creating Encumbrances, & dispatch protocols:

N/A – There are no Encumbrances or associated dispatch protocols.

## IV. Statement of intent to place all transmission lines, associated facilities, entitlements under CAISO operational control:

The subject transmission line segments and associated facilities are already under CAISO Operational Control, and Addington is submitting this Application to continue that status. (As noted above, there are no entitlements.)

## V. Local Reliability Criteria (part of Applicable Reliability Criteria):

Addington is not subject to any specific Local Reliability Criteria. Addington's Applicable Reliability Criteria, per the CAISO Tariff, will be the Reliability Standards and reliability criteria established by NERC and WECC.

## VI. Description of current maintenance practices:

Addington intends to follow the established PG&E maintenance practices and will seek an agreement with PG&E or other qualified and licensed electrical contractor(s) to continue current maintenance practices, consistent with Prudent Utility Practice and applicable guidelines.

## VII. List of waivers requested under TCA Section 5.1.6:

No waivers are requested.

## VIII. Applicant's proposed Transmission Owner Tariff:

A draft of Addington's Transmission Owner Tariff (TO Tariff) is in Attachment 5. Addington will file the final version of its TO Tariff with the Federal Energy Regulatory Commission (FERC) under applicable FERC rules and procedures. Addington will consider comments provided during the CAISO comment period and reserves the right to make changes or corrections prior to filing.

Addington notes that the terms and conditions for interconnection to and expansion of its facilities will be pursuant to CAISO Tariff Sections 24 and 25.

## IX. Notice that the applicant will be filing its TRR at FERC, and such TRR will be included in the CAISO's Access Charge when it has been accepted by the CAISO and FERC:

Addington will file its proposed Transmission Revenue Requirement (TRR) with the Federal Energy Regulatory Commission (FERC) under applicable FERC rules and procedures. Addington will consider comments provided during the CAISO comment period and reserves the right to make changes or corrections prior to filing. Addington understands that its TRR will be included in the CAISO's Access Charge if the CAISO accepts the application and when the TRR has been accepted by FERC.

## X. Address and contact names for notices under TCA Section 26.1:

David P. Addington
298 Saint James Drive
Piedmont CA 94611
800-975-0421/415-606-6552

## XI. Other information reasonably required by CAISO:

Addington will provide other information as reasonably required by the CAISO.

## XII. Details of intent to establish settlement account:

Addington will establish a settlement account as required under the CAISO tariff.

## XIII. MWh demand per month for the test period (1 year):

Addington will serve no demand (load) directly.

## XIV. Instructions on how to implement Encumbrances and Entitlements, if available:

N/A – There are no Encumbrances or Entitlements.