James P. Frantz, Esq., SBN 87492
jpf@frantzlawgroup.com
Philip C. Aman, Esq., SBN 137831
pca@frantzlawgroup.com
William P. Harris III, Esq., SBN 123575
wharris@frantzlawgroup.com
M. Regina Bagdasarian, Esq., SBN 296219
regina@frantzlawgroup.com
George T. Stiefel III, Esq., SBN 297611
gstiefel@frantzlawgroup.com
FRANTZ LAW GROUP, APLC
71 Stevenson Building, Suite 400
San Francisco, CA 94105
Tel: (415) 282-2928
Fax: (619) 525-7672

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT CALIFORNIA OF SAN FRANCISCO DIVISON

In re:
PG&E CORPORATION
-and-
PACIFIC GAS AND ELECTRIC COMPANY,
☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
■ Affects both Debtors

Case No.: 19-30088 (DM)

Chapter 11
(lead case)
(jointly administered)

**MOTION TO ALLOW/DEEM TIMELY LATE FILING OF PROOF OF CLAIM BY KAVEH GHAEMIAN, MARY GHAEMIAN, AND KASPIAN GHAEMIAN, MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF REGINA BAGDASARIAN IN SUPPORT**

**Date**: TBD
**Time**: TBD
**Place**: United States Bankruptcy Court
Courtroom 16, 17th Floor
San Francisco, CA 94102

///

TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Frantz Law Group, APLC represents thousands of victims of the Fires started by PG&E in 2017 (generally referred to as the "North Bay Fires"), 2018 ("Camp Fire") and 2019 ("Kincade Fire"). Frantz Law Group, APLC respectfully files this motion on behalf of Kaveh Ghaemian, Mary Ghaemian, and Kaspian Ghaemian to deem timely late filing of proofs of claims ("Motion").

## I. SUMMARY OF ARGUMENT

A proof of claim may be deemed timely upon a showing of excusable neglect and lack of prejudice. In this case, due to a variety of stressors arising from the Camp Fire, the impact of the Dixie Fire, as well as a misunderstanding as to the legitimacy of his claims, Movants were unable to timely file their proof of claim. Because there is no danger of prejudice to the Debtors as Debtors' estates are solvent, and all creditors stand to be paid, the Motion should be granted to allow these survivors to have their claim deemed timely. This Court must determine whether to grant the Motion.

## II. FACTUAL BACKGROUND

Movants, Kaveh Ghaemian (hereinafter, "Kaveh" or "Movant(s)"), Mary Ghaemian (hereinafter, "Mary" or "Movant(s)"), Kaspian Ghaemian (hereinafter, "Kaspian" or "Movant(s)") (collectively referred to as "The Ghaemian Family"), are a family who lost their home due to the Camp Fire.

The Ghaemian home contained irreplaceable, priceless items that can never be forgotten. From stashed cash to baby photos and family bibles, their house was filled with their collectibles and loved items, as well as things they have worked hard for. Each family member had a different story for what happened to them the day of the fire, but they all had one thing in common: their lives will never be the same after the fire on November 8th.

Kaveh was at work when he received a frantic call from his wife, begging him to come home to help try to gather as much belongings as possible and help her and her son evacuate. Kaveh, being miles away, quickly jumped in his car to try to get to their home. No matter what route Kaveh tried to take, he was denied by law enforcement who closed off roads. Due to the fire, Kaveh had to live in his car for more than 3 days. Luckily, he was able to live at his friend's house in Chico for a few months. Not only was he homeless for a few days, but he had to deal with the emotional trauma of knowing his house and belongings were burned and he did not know the well-being of his only two family members. After spending a few months in a few different motel rooms in the bad part of town, Kaveh ended up having to get an apartment and live on his own for 7 months. The 7 months apart made the 4 days apart feel like nothing. The family went from having vast resources, a 5-bedroom home with all their loved items in a community of people whom they've known for over 20 years to a small apartment, living paycheck to paycheck. The financial stress along with the emotion anguish of living apart from his family kept Kaveh preoccupied which is primarily the reason he did not pursue a claim sooner.

Mary was attending to her special needs students when she first learned of the fire. Mary was in a state of shock regarding the fire, but she quickly kicked into gear and raced home to get her son, dogs, and whatever else she could in the few minutes she was able to be home. On the Saturday following the fire, Mary learned her house was gone. She had no one there besides her pets. She sat alone in agony knowing the home she loved and lived in for most of her life was gone. Since the fire Mary has been preoccupied with trying to create a home in a space she is truly unhappy in. She is unable to work at her previous job nor live in the same neighborhood she used to. She is unhappy where she is and deals with constant heartaches thinking about the life she used to have. As such, Mary was preoccupied with emotional anguish and could not pursue a claim sooner.

Kaspian was only 19 years old, in college, when his life flipped upside down. Kaspian couldn't just leave his house and hope for the best. Instead, Kaspian stayed to fight the fire. He stayed to try to protect his home, where he grew up, where all the items he possessed are.

Kaspian raked bushes away from his house, turned on the sprinklers, watered down the bushes, essentially doing everything he can before he physically couldn't anymore. Once the winds started to pick up, he knew to save his and his dogs life, he needed to get out of there. After the fire Kaspian has been dealing with emotional pain of losing everyone he was close to since they all moved away, and struggling financially since he was unable to find a job. All of the tools he bought from his job prior to the fire were lost in the fire.

The Ghaemian family has been struggling to try to get their life back to normal after the fire that tore their life apart. The family lives paycheck to paycheck in a totally new town, away from all their hometown friends and neighbors they lived near for years prior to the fire. The family constantly must deal with the aftermath of the fire and is struggling to return to a sense of normalcy. Due to the immense pressure on the Movants with their relocation, their financial difficulties, and their misunderstanding as to the legitimacy of their claims, the Movants did not pursue a claim. The Movants were so preoccupied with getting their life back together they did not even realize they could file a claim. After realizing they are never going to recover after their fire experience, they decided to seek legal help.

After the Movants retained Frantz Law Group on September 20, 2021, they realized their damages may be compensable and they should file a proof of claim for their losses. After extensive conversations with the movants, it became clear they did not file a claim because they did not understand the legitimacy of their claims, and they sympathized with those who lost family members in the fire, elderly people who got serious health issues because of the fire, and other physical injuries. Moreover, the claimants did not realize there was a deadline to file a claim, due to their unfamiliarity with the process of claims. However, he has since realized that his claims are just as legitimate and desires to file a claim for the Camp Fire damages, he has suffered.

Accordingly, FLG filed a claim on behalf of Movants. A true and correct copy of the Subject Proof of Claim is attached to the Declaration as Exhibit "1."

Thus, FLG now brings Motion to have the Subject Proof of Claim deemed timely.

## II. LEGAL ARGUMENT

In Chapter 11 proceedings, bankruptcy courts have broad discretion to accept late filings, including proofs of claim, where tardiness is the consequence of "excusable neglect." Fed. R. Bank. Pro. 9006(b)(1). This standard is "flexible," and permits the Court to allow "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993). Where the party's delay is caused by overwhelming personal distress, a late filing may be allowed on grounds of excusable neglect. See e.g., In re Nw. Territorial Mint, LLC, No. AP 16 1217-CMA, 2018 WL 6187762, at *5 (B.A.P. 9th Cir. Nov. 27, 2018) ("Excusable neglect can include sudden death, disability or illness of counsel, a close family member of counsel, or . . . the party."); In re Schultz, 254 B.R. 149, 154 (B.A.P. 6th Cir. 2000) (same); TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 699 (9th Cir. 2001) (excusable neglect where party was experiencing extreme personal difficulties and was "distraught") (overruled on other grounds); Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 824 (9th Cir. 1996) (holding that "compelling circumstances" in one's personal life may constitute excusable neglect).

The test for excusable neglect is "at bottom an equitable [inquiry]." Pioneer Inv. Servs. Co., 507 U.S. at 395. Courts in the Ninth Circuit generally examine four (4) factors in their analysis: (i) the danger of prejudice to the non-movant, (ii) the length of delay and its potential impact on the judicial proceedings, (iii) the reason for the delay, and (iv) whether the movant acted in good faith. See id. Each of these four factors weighs heavily in favor of the Ghaemian family. Accordingly, their late proof of claims should be deemed timely.

In our present case, there will be no prejudice to PG&E by the Ghaemian's claim. The value of the Ghaemian family's claims is marginal relative to the Debtors' estates and the allowance of those claims will not disrupt the reorganization or distribution process. Debtors' estates are solvent, and all creditors stand to be paid. See, e.g., In re Best Payphones, Inc., 523 B.R. 54, 75-6 (Bankr. S.D.N.Y. 2015) and In re Sheehan Mem'l Hosp., 507 B.R. 802, 803

(Bankr. W.D.N.Y. 2014) (where the chapter 11 estate is solvent, "the proper remedy for a late filing is not the expungement of a claim, but its allowance as a tardily filed claim only.).

Second, despite the late filing, the Ghaemian family's claim will have essentially zero impact on the judicial proceedings and will not change PG&E's reorganization process. There are tens of thousands of similarly situated claimants as the Ghaemian family's and their claims will be placed among them, resulting in no noticeable impact upon the distribution process. See e.g., In re Dix, 95 B.R. 134, 138 (B.A.P. 9th Cir. 1988) (allowing proof of claim filed two-years late because "there is no indication [of] a negative impact on efficient court administration"); In re Earth Rock, Inc., 153 B.R. at 63 (finding excusable neglect where eight-month delay would not impact reorganization proceedings).

Third, the factual circumstances in the Ghaemian family's claim warrant excusable neglect. The Ghaemian family loved their home, everything they had worked hard to obtain, anything that was a family gift, and all the memories shared there was gone in the matter of minutes. For the first time ever, the family worried about their financial security; they had to live apart, living paycheck to paycheck. The family was overcome by their own emotional distress, displacement, and the trauma caused by the fire. After realizing the financial toll, the fire has taken on the family the Ghaemian family contacted Frantz Law Group, APLC to evaluate their claim. During the normal course of due diligence, Frantz Law Group, APLC inquired about possible damages from the 2018 Camp Fire.

Movants also struggle from post-traumatic stress disorder as a result of the fire. Post-traumatic stress disorder symptoms may start within one month of a traumatic event, but sometimes symptoms may not appear until years after the event.[1] These symptoms cause

---

[1] Post-traumatic stress disorder (PTSD) - Symptoms and causes, Mayo Clinic (July 6, 2018), www.mayoclinic.org/diseases-conditions/post-traumatic-stress-disorder/symptoms-causes/syc-20355967.

significant problems in social or work situations and in relationships. [2] They can also interfere with a person's ability to go about their normal daily tasks. [3]

PTSD symptoms can vary in intensity over time. Someone may have more PTSD symptoms when they are generally stressed, or when they come across reminders of a traumatic event they experienced.[4] In terms of wildfire victims, many feel stress, anxiety, and panic when they smell even the slightest smoke, because it triggers a traumatic memory of their experience. Some even wake up multiple times at night to make sure there is not a fire nearby.

Another common symptom of PTSD is avoiding things that remind someone of the event.[5] For wildfire victims, this can include putting off filing a lawsuit to try to move on from the traumatic event. Unfortunately, for these types of wildfire victims, years later, they come to the realization that it is not possible to simply start over after the fire. A lot of wildfire victims have lost their homes, everything they own, their jobs, and their community. With a limited or no income at all, most wildfire victims are unable to rebuild and move on as they were trying to do.

It was not until the Ghaemian family sought the advice of counsel regarding their 2018 Camp Fire damages did they appreciate the viability of their claims related to their 2017 Tubbs Fire damages. As a result, due to excusable unawareness, the Ghaemian family did not timely file a proof of claim for their 2018 damages until after the bar date. See ("Saleem Decl.") See e.g., Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 824 (9th Cir. 1996) ("compelling circumstances" in one's personal life may constitute excusable neglect).

Ultimately, the Ghaemian family's claim was made in good faith. Overwhelmed by staggering economic losses and trying to manage the logistical challenges of recovering from the fire, the Ghaemian family was not represented by counsel until after the bar date and did not have

---

[2] *Ibid.*
[3] *Ibid.*
[4] *Ibid.*
[5] About Face booklet (va.gov)

the time or opportunity to comprehend filing a claim in the bankruptcy for their loss. Had they been informed or aware of the bar date, they would have timely filed a proof of claim.

**III. CONCLUSION**

For the foregoing reasons, this Motion should be granted, and Kaveh Ghaemian's, Mary Ghaemian's, and Kaspian Ghaemian's claim should be deemed timely.

Dated: March 15, 2022

By: /s/ James P. Frantz
**FRANTZ LAW GROUP, APLC**
James P. Frantz, Esq., SBN. 87492
jpf@frantzlawgroup.com
M. Regina Bagdasarian, Esq., SBN. 296219
regina@frantzlawgroup.com
George T. Stiefel III, Esq., SBN. 297611
gstiefel@frantzlawgroup.com
71 Stevenson Building, Suite 400
San Francisco, CA 94105
T: (415) 282-2928
F: (619) 525-7672

# Declaration of Regina Bagdasarian

I, Regina Bagdasarian, declare as follows:

1. I am an individual over 18 years of age and competent to make this Declaration.
2. If called upon to testify, I could and would competently testify as to the facts set forth in this Declaration. The facts set forth below are true based on my personal knowledge or through information obtained my staff.
3. I am an attorney of the law firm Frantz Law Group, APLC and I make this declaration in support of the Motion to Allow/Deem Timely Late Filing of Proof of Claim.
4. Creditor Kaveh Ghaemian, Mary Ghaemian, and Kaspian Ghaemian are survivors of the Camp Fire that occurred in 2018.
5. Kaveh Ghaemian, Mary Ghaemian, and Kaspian Ghaemian lived at 5061 Foster Rd. Paradise, CA 95969.
6. As a result of the Camp Fire, the Ghaemian Family fled from their home in the and suffered severe emotional distress as a result of their evacuation. Their home was completely destroyed by the Camp Fire.
8. On September 20, 2021, the Ghaemian Family retained Frantz Law Group, APLC.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 15, 2022.

/s/ _____
Regina Bagdasarian

EXHIBIT 1 - PAGE 10

# EXHIBIT 1

EXHIBIT 1 - PAGE 11

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

In re:
PG&E CORPORATION,
- and -
PACIFIC GAS AND ELECTRIC COMPANY,
    Debtors.

Bankruptcy Case
No. 19-30088 (DM)

Chapter 11
(Lead Case)
(Jointly Administered)

# Proof of Claim (Fire Claim Related)

Read the instructions before filing this claim form. This form is for tort claimants who have a claim against the Debtors (i.e. PG&E Corporation and Pacific Gas and Electric Company) that arose prior to the Debtors filing for bankruptcy (i.e. prior to January 29, 2019) and that arose from, or relates to, a fire.

Do not use this form for non-fire claims. Non-fire tort claimants should use Form 410.

Do NOT file a fraudulent claim. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Please type or print in the spaces below. Do NOT use red ink or pencil.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Kaveh Ghaemian
Name of the current creditor (the person or entity to be paid for this claim)

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Are you filing this claim on behalf of your family?**
☐ No
☑ Yes

A family is a group of two or more people related by birth, marriage, domestic partnership, or adoption and residing together. All such people are considered as members of one family.

If you checked "Yes", please provide the full name of each family member that you are filing on behalf of:
- Mary Ghaemian
- Kaspian Ghaemian

**4. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Name: Kaveh Ghaemian
Attorney Name (if applicable): James P. Frantz
Attorney Bar Number (if applicable): 87492
Street Address: 402 West Broadway Suite 860
City: San Diego
State: CA
Zip Code: 92101
Phone Number: 530 423-6774
Email Address: wildfires@frantzlawgroup.com

Where should payments to the creditor be sent? (if different)
Name: _____
Attorney Name (if applicable): _____
Attorney Bar Number (if applicable): _____
Street Address: _____
City: _____
State: _____
Zip Code: _____
Phone Number: _____
Email Address: _____

**5. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____
Filed on ___ / ___ / ____ MM / DD / YYYY

**6. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

## Part 2: Give Information About the Claim as of the Date this Claim Form is Filed

**7. What fire is the basis of your claim?**

Check all that apply.

- [✓] Camp Fire (2018)
- [ ] North Bay Fires (2017)
- [ ] Ghost Ship Fire (2016)
- [ ] Butte Fire (2015)
- [ ] Other (please provide date and brief description of fire: _____)

**8. What are the loss location(s) where you and/or your family suffered harm? (e.g. home or business address, place of injury, place from which you were evacuated, if different.?**

Location(s): 5061 Foster Rd. Paradise, CA 95969

**9. How were you and/or your family harmed?**

Check all that apply

- [✓] Property Damage (homes, structures, personal property, land, trees, landscaping, and all other property damage)
  - [✓] Owner [ ] Renter [ ] Occupant [ ] Other (Please specify): _____
- [✓] Personal Injury
- [ ] Wrongful Death (if checked, please provide the name of the deceased) _____
- [ ] Business Loss/Interruption
- [✓] Lost wages and earning capacity
- [✓] Loss of community and essential services
- [ ] Agricultural loss
- [✓] Other (Please specify): Any and all other damages recoverable under California law.

**10. What damages are you and/or your family claiming/seeking?**

Check all that apply

- [✓] Economic damages (including replacement cost of damaged property, diminution in value, loss of use, lost inventory, lost profits, and other economic damage)
- [✓] Non-economic damages (including loss of society and support, loss of consortium, pain and suffering, emotional distress, annoyance and discomfort, and other non-economic damage)
- [✓] Punitive, exemplary, and statutory damages
- [✓] Attorney's fees and litigation costs
- [✓] Interest
- [✓] Any and all other damages recoverable under California law
- [ ] Other (Please specify): _____

**11. How much is the claim?**

- [ ] $_____ (optional)
- [✓] Unknown / To be determined at a later date

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date __03/15.22__ (mm/dd/yyyy)

_____
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | James P | | Frantz |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Frantz Law Group, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 402 W Broadway Ste 860 | | |
| | Number  Street | | |
| | San Diego | CA | 92101 |
| | City | State | ZIP Code |
| Contact phone | 8557355945 | Email | wildfires@frantzlawgroup.com |

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2022, a copy of the following was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ *[signature]*
Regina Bagdasarian