1  ROB BONTA
   Attorney General of California
2  DANETTE E. VALDEZ, SBN 141780
   ANNADEL A. ALMENDRAS, SBN 192064
3  Supervising Deputy Attorneys General
   State Bar No. 192064
4  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102-7004
5  Telephone: (415) 510-3367
   Fax: (415) 703-5480
6  Danette.Valdez@doj.ca.gov
   Annadel.Almendras@doj.ca.gov
7
   PAUL J. PASCUZZI, SBN 148810
8  NICHOLAS L. KOHLMEYER, SBN 299087
   FELDERSTEIN FITZGERALD
9  WILLOUGHBY PASCUZZI & RIOS LLP
   500 Capitol Mall, Suite 2250
10 Sacramento, CA 95814
   Telephone: (916) 329-7400
11 Fax: (916) 329-7435
   ppascuzzi@ffwplaw.com
12 nkohlmeyer@ffwplaw.com

13 Attorneys for California Department of Water
   Resources, by and through the State Water Project

IN THE UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>And<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtor.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>x Affects both Debtors | Bankruptcy Case No. 19-30088(DM)<br><br>Chapter 11<br><br>(Lead Case)<br>(Joint Administered)<br><br>**CALIFORNIA DEPARTMENT OF WATER RESOURCES' REPLY TO PG&E'S MEMORANDUM REGARDING DEPARTMENT OF WATER RESOURCES' CLAIM NO. 78104 AND FURTHER BRIEFING OF ISSUES; REQUEST FOR ORDER STAYING ARBITRATION**<br><br>Date: N/A<br>Time: N/A<br>Place: Courtroom 17<br>Judge: Dennis Montali |

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | Introduction | | 1 |
| | A. | PG&E's Unilateral Attempt to Dismiss CDWR's Motion | 1 |
| | B. | CDWR Is Not Liable For Removal Costs | 3 |
| II. | Relevant Procedural History | | 3 |
| III. | Jurisdiction | | 5 |
| IV. | Response to PG&E Memorandum | | 5 |
| | A. | This Contested Matter was Initiated by PG&E as an Objection and Counterclaim to CDWR's Proof of Claim and Involves a Core Proceeding that This Court Has Jurisdiction to Adjudicate. | 5 |
| | B. | FRCP RULE 41(a)(2) Prevents PG&E From Unilaterally Dismissing This Contested Matter Without a Court Order. | 6 |
| | C. | Even Assuming PG&E Filed a Motion to Voluntarily Dismiss This Contested Matter, the Motion Should be Denied Because CDWR Will be Prejudiced. | 7 |
| V. | The Court Should Enforce its Prior Orders and Rulings in the Memorandum Decision and Stay the AAA Arbitration. | | 9 |
| VI. | Response to the Court's Request for Briefing | | 10 |
| | A. | The Court Should Find that CDWR does not Owe Any Estimated Future Removal Costs to PG&E and the Remaining Cotenants. | 10 |
| | | 1. The Language in the Agreement Is Clear, Explicit and Unambiguous. | 10 |
| | | 2. PG&E's Interpretation Is Not Supported by the Language in the Agreement. | 12 |
| Conclusion | | | 15 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Addiego v. Hill*
  238 Cal. App. 2d 842 (1965)..................................................................................... 14

*Bank of the West v. Superior Court*
  2 Cal. 4th 1254 (1992) ............................................................................................. 10

*Bernard v. State Farm Mut. Auto. Ins. Co.*
  158 Cal. App. 4th 304 (2007).................................................................................... 12

*Brosio v. Deutsche Bank Nat'l Trust Co.* (*In re Brosio*)
  505 B.R. 903 (9th Cir. BAP 2014)............................................................................... 5

*Cent. Mont. Rail v. BNSF Ry. Co.*
  422 F. App'x 636 (9th Cir. 2011) ................................................................................ 7

*Crow Winthrop Operating P'ship v. Jamboree LLC (In re Crow Winthrop
  Operating P'ship)*
  241 F.3d 1121 (9th Cir. 2001).................................................................................... 10

*Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins.
  Exchange*
  229 Cal. App. 4th 549 (2014).................................................................................... 13

*Dore v. Arnold Worldwide, Inc.*
  39 Cal. 4th 384 (2006) ............................................................................................. 12

*General Ins. Co. v. Truck Ins. Exch.*
  242 Cal.App.2d 419 (1966)....................................................................................... 13

*Hamilton v. Firestone Tire & Rubber Co.*
  679 F.2d 143 (9th Cir. 1982)................................................................................... 7, 8

*Hyde & Drath v. Baker*
  24 F.3d 1162 (9th Cir. 1994)....................................................................................... 7

*Kashmiri v. Regents of University of California*
  156 Cal. App. 4th 809 (2007).................................................................................... 13

*Kern Oil & Refining Co. v. Tenneco Oil Co.*
  792 F.2d 1380 (9th Cir. 1986)..................................................................................... 7

*Koch v. Hankins*
  8 F.3d 650 (9th Cir. 1993)........................................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Lounge-A-Round v. GCM Mills, Inc.*
  109 Cal. App. 3d 190 (1980) ............................................................................... 8

*Lundell v. Anchor Constr. Specialists, Inc.*
  223 F.3d 1035 (9th Cir. 2000) ............................................................................ 5

*Resource Funding, Inc. v. Pacific Continental Bank (In re Wash. Coast I, LLC)*
  485 B.R. 393 (9th Cir. BAP 2012) ...................................................................... 6

*Shaw v. Regents of Univ. of Cal.*
  58 Cal. App. 4th 44 (1997) ................................................................................ 10

*Towers, Perrin, Forster & Crosby, Inc. v. Brown*
  732 F.2d 345 (3d Cir. 1984) ............................................................................... 8

*Westlands Water Dist. v. U.S.*
  100 F.3d 94 (9th Cir, 1996) ............................................................................ 7, 9

**STATUTES**

28 U.S.C.
  § 157 .................................................................................................................. 4
  § 157(b)(1) ......................................................................................................... 6
  § 157(b)(2)(B) ................................................................................................ 5, 6
  § 157(b)(2)(C) ................................................................................................ 2, 6
  § 157(C) ............................................................................................................. 5
  § 158 .................................................................................................................. 6
  § 1334 ................................................................................................................ 5

California Civil Code
  § 1436 .............................................................................................................. 11
  § 1638 .............................................................................................................. 10
  § 1650 .............................................................................................................. 13

**COURT RULES**

Bankruptcy Rule
  7041 ................................................................................................................... 6
  9002(1) ............................................................................................................... 7
  9014 ............................................................................................................... 5, 6
  9014(c) ............................................................................................................... 6

Federal Rule of Civil Procedure 41(a)(2) ................................................................ *passim*

The California Department of Water Resources ("CDWR") hereby responds to the Memorandum of the Reorganized Debtors, PG&E Corporation and Pacific Gas & Electric Company (collectively "PG&E") Regarding Claim of CDWR ("PG&E Memo") and submits its briefing on the issues requested by the Court in its March 8, 2022, Memorandum Decision Regarding Dispute Between Debtors and CDWR ("Memorandum Decision"). CDWR also requests that the Court enforce its Memorandum Decision by issuing an order immediately staying the arbitration proceeding initiated by the demand for arbitration that Silicon Valley Power ("SVP") and Northern California Power Agency ("NCPA") filed, and which PG&E joined, on March 30, 2022, until the Court rules on the remaining issues in this dispute.

## I. INTRODUCTION

This brief is divided in two sections: (1) CDWR's Reply to PG&E's Memo as to why the Court should not allow PG&E to circumvent this Court's ruling in its Memorandum Decision, which denied PG&E's request for arbitration and stated that the Court will decide the issue of whether CDWR owes any estimated future removal costs, and why PG&E's unilateral attempt to dismiss this contested proceeding without a court order violates Federal Rule of Civil Procedure 41(a)(2); and (2) CDWR's briefing on the issues in the Court's Memorandum Decision.

### A. PG&E's Unilateral Attempt to Dismiss CDWR's Motion

PG&E blatantly disregarded the Court's Memorandum Decision and refused, for the second time, to brief the merits of the dispute between PG&E and CDWR. PG&E attempts to excuse its non-compliance with the Court's Memorandum Decision based on its last minute decision to not contest CDWR's termination, pay CDWR's claim, and assume the Agreement without CDWR as a Cotenant. (PG&E Memo at 1:6-7.) As a result, PG&E now erroneously asserts that no further intervention of the Court is required, presumably no longer intending to participate in this proceeding. (See PG&E Memo at 1:6-7.)

PG&E's recent decision to change course on two of the issues in dispute does not resolve the most important issue which the Court set for briefing: whether DWR is obligated to pay any estimated future removal costs after termination from the Agreement. PG&E makes no attempt to hide its agenda. PG&E admits that it intends to litigate the issue whether CDWR owes any future

1

| | |
|---|---|
| 1 | removal costs in arbitration. (PG&E Memo at 2:22-25; 3:22-23; 4: 1-2.) PG&E joined the demand |
| 2 | for arbitration recently filed by NCPA and SVP on March 30, 2022, which they are urging must go |
| 3 | forward despite the Court's Memorandum Decision and Order Denying Motion to Intervene by |
| 4 | SVP and NCPA. (Decl. of Danette E. Valdez ("Valdez Decl."), Ex. 1 [Demand for Arbitration] at |
| 5 | 2:1-15; 8:12-24; Ex. 2 [Notice of Commencement of Arbitration]; Ex. 3 [PG&E joinder]; Ex. 4 |
| 6 | [AAA initiation letter]; Ex. 5 [AGO 4/5/22 letter to AAA], Ex. 6 [SVP/NCPA 4/6/22 email to |
| 7 | AAA].) Thus, there is no doubt that the motivation underlying PG&E's last minute decision to pay |
| 8 | CDWR's claim and assume the Agreement without CDWR as a Cotenant is to circumvent the |
| 9 | Court's order denying its request for arbitration. Likewise, SVP and NCPA's demand for arbitration |
| 10 | before the Court can decide the issue is a collateral attack on the Court's March 21 Order Denying |
| 11 | Intervention by SVP and NCPA. |

Despite PG&E's claims to the contrary (PG&E Memorandum at 3:18-23), the issue whether CDWR owes any share of the estimated future removal costs remains a core proceeding in a contested matter before the Court because PG&E effectively raised it as an objection and a counterclaim in response to CDWR's proof of claim. (See Transcript of Proceedings, March 2, 2022 at 51:11-13; 53:9-15.) Counterclaims brought by the estate against persons filing claims against the estate are core proceedings under 28 U.S.C. 157(b)(2)(C).

Rule 41(a)(2) of the Federal Rules of Civil Procedure prevents PG&E, after CDWR opposed its objection and counterclaim, from dismissing this contested matter without a court order. Even assuming PG&E had filed a proper dismissal motion, it should be denied because CDWR would be prejudiced. A dismissal would deny CDWR the conclusive effect of this Court's order denying arbitration and deciding it would rule on the removal costs dispute. Because PG&E's unilateral attempt to dismiss the dispute does not comply with Rule 41 and is a blatant attempt to circumvent the Court's Memorandum Decision, CDWR requests that the Court issue an order immediately staying the arbitration proceeding initiated by the SVP/NCPA/PG&E demand for arbitration until the Court decides the remaining issues in this dispute.

The Court concluded in the Memorandum Decision that it will decide whether CDWR owes any estimated future removal costs. Because the Court continues to have jurisdiction over this

contested proceeding, it should exercise its discretion to deny PG&E's unilateral dismissal and proceed to adjudicate the defined issues based on the undisputed facts in the record, basic contract interpretation rules, and this supplemental brief. PG&E has now had two opportunities to brief the merits of the dispute for the Court (in opposition to CDWR's Motion and in response to the Court's March 8 order), yet it has refused to do so. PG&E's deliberate defiance of the Court's orders should not prejudice CDWR's efforts to have the issue relating to removal costs decided by the Court.

### B. CDWR Is Not Liable For Removal Costs

The language in the Agreement is clear and unambiguous. When the language is reviewed and the basic contract interpretation rules are applied, it is undisputed that CDWR effectively terminated its participation in the Agreement by giving the required one year advance written notice pursuant to Section 14.3. CDWR is not obligated to pay any estimated future removal costs under Section 14.5 because that section contains a condition precedent for it to apply – PG&E and the Remaining Cotenants[1] had to make a decision to stop operating the transmission line –and that condition was not satisfied. Because PG&E and the Remaining Cotenants never decided to stop operating the line, and in fact continue to operate it, no obligation arose that requires CDWR to pay any future removal costs. PG&E and the Remaining Cotenants are unable to establish that the language in the Agreement is susceptible to any other interpretation.

## II. RELEVANT PROCEDURAL HISTORY

CDWR filed its Motion for Order Determining that the Agreement with PG&E Cannot Be Assumed and that CDWR's Claim No. 78104 be Paid on February 1, 2022 ("CDWR's Motion"). (Dkt. 11887.) PG&E also filed its own motion ("PG&E's Motion") on February 2, 2022, seeking an order modifying the Plan Injunction and compelling arbitration of CDWR's proof of claim. (Dkt. 11896.)

PG&E Opposed CDWR's Motion on February 16, 2022 (Dkt. 11937), contending that the parties' dispute regarding CDWR's proof of claim was subject to the arbitration provisions set forth in the Agreement. (*Id*. at 2.) In the alternative, PG&E requested that if the Court determined that the dispute should not be sent to arbitration, a status conference should be scheduled to establish a

---
[1] The Remaining Cotenants are NCPA and SVP.

3

schedule for briefing the merits. (*Id.*) CDWR responded to PG&E's Motion on February 16, 2022. (Dkt. 11942.)

The Court heard both motions on March 2, 2022. The Court issued its Memorandum Decision on March 8, 2022, denying PG&E's Motion and granting CDWR's Motion. The Court recognized that there are no material facts in dispute as to whether CDWR could be required to pay anything after it gave its notice of termination. (Memorandum Decision at 6:19-26.) This remaining issue can be decided by interpreting the Agreement.

As noted above, rather than briefing the issues defined by the Court, PG&E filed a four-page memorandum advising the Court that it would pay CDWR's proof of claim plus post-petition interest and "would not contest that CDWR terminated its participation in the Agreement, *with all rights reserved as to PG&E's claim that CDWR has an outstanding obligation, not extinguished by its termination of the Agreement, to pay its pro rata share associated with the costs of removing the [transmission line].*" (PG&E Memorandum at 2:20-25) (emphasis added.) No briefing on the merits was included in PG&E's Memorandum.

Subsequently, NCPA and SVP initiated an arbitration proceeding with the American Arbitration Association ("AAA") seeking to have an arbitrator decide whether CDWR is liable for removal costs, to which PG&E joined. (See Valdez Decl. Ex. 1 and 3.) CDWR sent a letter to AAA objecting to the arbitration of issues pending before the Court after this Court ruled that it would decide those issues and set a briefing schedule. (*Id.*, Ex. 5.) PG&E responded that it had "no response" to CDWR's letter beyond what was stated in its joinder. (*Id.*, Ex. 8.) AAA responded that "absent party agreement or a court order staying the arbitration, this matter will proceed forward. Questions regarding jurisdiction or arbitrability may be presented to the arbitrator after they are appointed." (*Id.*, Ex. 9.) NCPA, SVP and PG&E's attempt to circumvent this Court's Memorandum Decision necessitate this Court enforcing its prior orders denying PG&E's motion to refer the matter to arbitration and denying NCPA and SVP's motion to intervene.

### III. JURISDICTION

This Court has jurisdiction over CDWR's Motion pursuant to Section 11.1 of the Plan, paragraphs 32 through 35, 67 and 78 of the Confirmation Order, 28 U.S.C. sections 157 and 1334.

4

The Confirmation Order specifically reserved jurisdiction for this Court under Paragraph 34 to resolve any Cure Disputes, and under Paragraph 67 to resolve any disputes over the assumption of executory contracts involving Government Parties, including CDWR. This Court had jurisdiction to hear PG&E's Motion, which it denied in its Memorandum Decision.

The Court continues to retain jurisdiction over this contested proceeding pursuant to Section 11.1(a), (b), (d), (j), (p), and (t) of the Plan, and 28 U.S.C. sections 157(b)(2)(B) and (C) and 1334 because PG&E has not complied with Federal Rule of Civil Procedure 41(a)(2), which requires a court order before a matter can be voluntarily dismissed.

"[I]t is well recognized that a bankruptcy court has the power to interpret and enforce its own orders." *Wilshire Courtyard v. Cal. Franchise Tax Bd.*, 729 F.3d 1279, 1289 (9th Cir. 2013); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (finding that a bankruptcy court "plainly had jurisdiction to interpret and enforce its own orders.")

### IV.  RESPONSE TO PG&E MEMORANDUM

#### A.  THIS CONTESTED MATTER WAS INITIATED BY PG&E AS AN OBJECTION AND COUNTERCLAIM TO CDWR'S PROOF OF CLAIM AND INVOLVES A CORE PROCEEDING THAT THIS COURT HAS JURISDICTION TO ADJUDICATE

The filing of a proof of claim is analogous to filing a complaint in the bankruptcy case, and a claim objection by the debtor is analogous to an answer. *Brosio v. Deutsche Bank Nat'l Trust Co.* (*In re Brosio*), 505 B.R. 903, 912 (9th Cir. BAP 2014) (citations omitted). The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). An objection to a claim is also a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B).

CDWR filed its proof of claim (No. 78104) seeking a refund of its prepaid operating and maintenance expenses based on its termination from the Agreement effective August 1, 2019. PG&E objected to paying the proof of claim, asserting that CDWR could not terminate its participation in the Agreement without first complying with its obligation under the Agreement to pay a pro rata share of estimated removal costs to PG&E and the Remaining Cotenants. (See PG&E

5

Motion at 7:21-21; 17:16-19.) PG&E's objection to CDWR's claim raised defenses that are analogous to a counterclaim.[2] A counterclaim is a core proceeding under 28 U.S.C. §157(b)(2)(C).

A bankruptcy court may enter appropriate orders and judgments in core proceedings pursuant to 28 U.S.C. § 157(b)(1), subject to review under 28 U.S.C. § 158. *Resource Funding, Inc. v. Pacific Continental Bank (In re Wash. Coast I, LLC)*, 485 B.R. 393, 408 (9th Cir. BAP 2012). Because PG&E objected to CDWR's proof of claim, asserting a counterclaim that seeks recovery of alleged estimated future removal costs owed by CDWR, it created a contested matter that requires the Court to adjudicate PG&E's counterclaim as part of determining the executory contract issues, the Cure Dispute, and whether to allow or disallow CDWR's proof of claim.

**B. FRCP RULE 41(a)(2) PREVENTS PG&E FROM UNILATERALLY DISMISSING THIS CONTESTED MATTER WITHOUT A COURT ORDER**

Rule 9014 of the Federal Rules of Bankruptcy governs contested matters. Rule 9014(c) makes Bankruptcy Rule 7041 applicable to a contested matter. Bankruptcy Rule 7041 incorporates Federal Rule of Civil Procedure 41 governing dismissals, thus making it applicable to contested matters.

Under Rule 41(a)(2) of the Federal Rules of Civil Procedure, when an answer to an "action" has been filed, a dismissal at the request of the party initiating the "action" may be made only on order of the court and "upon such terms and conditions as the court deems proper." Bankruptcy Rule 9002(1) defines an "action," as used in the Federal Rules of Civil Procedure, to include contested matters. Because PG&E's objection and counterclaim initiated the contested matter and CDWR responded to such objection and counterclaim in its opposition to PG&E's Motion (Dkt. 11942) and in its own Motion (Dkt. 11887), Federal Rule of Civil Procedure 41(a)(2) applies and precludes PG&E from unilaterally dismissing its claims objection and counterclaim in this contested matter (that is already at the disposition stage) without an order from the Court.

---

[2] PG&E did not file formal written objections to CDWR's claim, but noted that an objection would be insufficient to resolve the dispute, recognizing that its defenses to the claim were akin to a counterclaim. (See PG&E Motion at 21:24-28; 22:1.) PG&E's counsel admitted that PG&E's objections are tantamount to a counterclaim. (Transcript of Proceedings, March 2, 2022 at 51:11-14.) Subsequently, counsel for PG&E also requested that CDWR agree that the PG&E Motion had met the March 23 claim objection deadline as to CDWR's claim, to which CDWR agreed. *See* Valdez Decl. Ex 7.

6

### C. EVEN ASSUMING PG&E FILED A MOTION TO VOLUNTARILY DISMISS THIS CONTESTED MATTER, THE MOTION SHOULD BE DENIED BECAUSE CDWR WILL BE PREJUDICED

PG&E has not filed a motion seeking an order from this Court granting dismissal. Therefore, PG&E's objection and counterclaim is still before the Court, and it can decide the issues it set for briefing. Even assuming that PG&E had filed a motion, or in the event that the Court may nevertheless construe PG&E's Memorandum as a motion to voluntarily dismiss this contested matter, the motion should be denied.

The bankruptcy court has discretion in deciding whether to grant a voluntary dismissal under Federal Civil Procedure Rule 41(a)(2). *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982). The Court "must consider whether the defendant will suffer some plain legal prejudice as a result of the dismissal." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994), as amended (July 25, 1994) (citing *Hamilton*, 679 F.2d at 145). Plain legal prejudice requires "prejudice to some legal interest, some legal claim, some legal argument." *Westlands Water Dist. v. U.S.*, 100 F.3d 94, 97 (9th Cir, 1996). Such prejudice typically requires that the dismissal affect the defendant's rights and defenses available in future litigation, such as "the loss of a federal forum, or the right to a jury trial, or a statute-of-limitations defense." *Id*. (citations omitted). When determining prejudice, a district court may also consider such factors as the stage of litigation and the moving party's delay in requesting voluntary dismissal, as well as indications of forum shopping. See *Cent. Mont. Rail v. BNSF Ry. Co.*, 422 F. App'x 636, 638 (9th Cir. 2011) (citing *Westlands Water Dist.*, 100 F.3d at 96; *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1389-90 (9th Cir. 1986).

CDWR will be prejudiced if dismissal is allowed because it will nullify the Court's order against PG&E that denied arbitration. PG&E's attempt to voluntarily dismiss this contested matter so that the issues defined by the Court for adjudication can be decided in arbitration is a classic example of forum shopping that should preclude dismissal. See *Kern Oil*, 792 F.2d at 1389 (affirming the district court's finding that the plaintiff's repeated requests for dismissal were made for the purpose of avoiding the assigned judge after an adverse ruling in favor of another specific judge).

Although the Ninth Circuit recognizes that loss of a federal forum is a factor to be considered in determining whether legal prejudice exists, it has held that "plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal." *Hamilton*, 679 F.2d at 145. The prejudice that CDWR will incur, however, is more than an inconvenience because it will deny CDWR the finality and res judicata effect of the Court's ruling denying arbitration. Courts have recognized that an order denying arbitration is a final ruling entitled to preclusive effect in subsequent proceedings. (*Lounge-A-Round v. GCM Mills, Inc.* 109 Cal. App. 3d 190, 198–199 (1980); *Towers, Perrin, Forster & Crosby, Inc. v. Brown* 732 F.2d 345, 348 (3d Cir. 1984) [court predicted that the California Supreme Court would hold that an order denying arbitration was a final order and that res judicata applied].) In addition, CDWR will lose the retained jurisdiction of the bankruptcy court to determine executory contract and Cure Disputes that it fought to include in the Plan and Confirmation Order.

PG&E's attempt to voluntarily dismiss this contested proceeding is also too late because it is already on track for a dispositive ruling. The parties briefed the issues, and a hearing was held. The Court denied PG&E's Motion, granted CDWR's Motion, and ordered the parties to brief the relevant issues so that it could adjudicate them. PG&E cannot prevent a dispositive ruling by attempting to dismiss the proceeding or refusing to brief the issues.

Even assuming PG&E was able to overcome these deficiencies, and the Court was inclined to grant dismissal, the Court should condition dismissal on the following: (1) require PG&E to pay CDWR's proof of claim no later than April 30, 2022, with post-petition interest; (2) issue a finding that CDWR terminated its participation from the Castle Rock Agreement effective August 1, 2019, and the issue is not subject to re-litigation in any other forum by PG&E [or any of the other cotenants to the Castle Rock Agreement]; (3) issue a finding that PG&E assumes the Castle Rock Agreement without CDWR as a Cotenant to the Agreement, and (4) order PG&E to reimburse CDWR for its costs and attorneys' fees incurred relating to its preparation of CDWR's Motion, opposing PG&E's Motion, appearing at the March 2 hearing, and briefing this Memorandum. As a condition of dismissal under Fed. R. Civ. P. 41(a)(2), attorneys' fees or costs for work is recoverable

8

if the work performed would not be useful in continuing litigation between the parties. *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993) (citations omitted); see also *Westlands*, 100 F.3d at 97 ("[I]f the district court decides it should condition dismissal on the payment of costs and attorney fees, the defendants should only be awarded attorney fees for work which cannot be used in any future litigation of these claims.") (citations omitted) (emphasis added). Given that PG&E for the most part refused to brief the merits of the dispute, the costs and attorneys' fees that CDWR incurred relate to whether arbitration should be granted. Such work is of no use in an actual arbitration proceeding and therefore CDWR is entitled to reimbursement for these expenses. A court always retains jurisdiction to enter its own orders.

## V. THE COURT SHOULD ENFORCE ITS PRIOR ORDERS AND RULINGS IN THE MEMORANDUM DECISION AND STAY THE AAA ARBITRATION

As explained above, NCPA, SVP and PG&E have taken steps notwithstanding this Court's prior rulings denying arbitration to have an arbitrator at AAA decide whether CDWR is liable for the removal costs. This blatant violation of the Court's orders should not be allowed. As indicated by the correspondence from AAA, a court order is needed to stay that proceeding while this Court decides the removal costs issues. CDWR requests that the Court issue such an order in accordance with its Memorandum Decision holding that it would decide the removal costs issue and if necessary would decide if arbitration is appropriate at a later date on other issues. Memorandum Decision at 7 ("If the outcome is as DWR hopes, the matter is over, subject only to the possibility of appellate review. If the outcome favors Debtors, the question of liquidation of the amount of damages to be paid by DWR may be more appropriately determined through arbitration.") (emphasis in original).

CDWR has provided this Court's Memorandum Decision to AAA, yet it still indicates it will proceed with the arbitration absent a court order staying the arbitration. Thus, in order to enforce this Court's prior rulings, CDWR requests an additional order to stay the AAA proceeding pending this Court's ruling on the removal costs issues.

## VI. RESPONSE TO THE COURT'S REQUEST FOR BRIEFING

### A. THE COURT SHOULD FIND THAT CDWR DOES NOT OWE ANY ESTIMATED FUTURE REMOVAL COSTS TO PG&E AND THE REMAINING COTENANTS

As the Court recognized in its Memorandum Decision, there are no material facts in dispute regarding whether CDWR should or should not be ordered to pay its share of the estimated future removal costs. (Memorandum Decision at 7:6-8.). The Court also correctly articulated the key sections of the Agreement that are at the center of the parties' dispute. CDWR relies upon Section 14.5 that insulates it from any obligation to pay any portion of estimated future removal costs because the Remaining Cotenants continue to operate the line. (*Id* at 8-10.) PG&E relies on Section 14.7 to hold CDWR responsible for its share of the costs of termination in the future. (*Id* at 11-12.) Therefore, the dispute can be resolved by applying contract interpretation rules to the clear and explicit language in the Agreement.

#### 1. The Language in the Agreement Is Clear, Explicit and Unambiguous.

Under California law, "[i]f contractual language is clear and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992) (citing Cal. Civ. Code §§ 1636, 1638); see also *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54-55 (1997) ("Although the intent of the parties determines the meaning of the contract, the relevant intent is 'objective' – that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." (citations omitted)). If a contract's terms are unambiguous, a court may interpret the contract without recourse to extrinsic evidence. *Crow Winthrop Operating P'ship v. Jamboree LLC (In re Crow Winthrop Operating P'ship)*, 241 F.3d 1121, 1124 (9th Cir. 2001).

The language of the Agreement is clear and explicit. Section 14 of the Agreement governs termination and sets forth the process that applies in the event that any Cotenant gives notice of termination. Section 14.4 states that "[s]hould any Cotenant give notice of termination, the other Cotenants [PG&E, NCPA and SVP] *shall determine* if one or more of the [R]emaining Cotenants wish to keep operating the New Line and buy the interest of the terminating Cotenant." (emphasis added). If the Remaining Cotenants decided to not continue operating the Line, Section 14.5 of the Agreement would apply. Section 14.5, which is the only section that refers to removal costs, states:

10

> *If the remaining Cotenants determine not to continue operating the New Line*, this Agreement shall terminate on the date specified in the notice. [PG&E], or its successor as operator of the New Line, shall remove the New Line, credit the net salvage value of the material, and distribute any net proceeds among the Cotenants in proportion to their Ownership Interests. If the removal is performed at a net loss, [PG&E], or its successor as operator of the New Line, shall be reimbursed by the other Cotenants for their respective shares of such net loss in proportion to their Ownership Interests. Each Cotenant shall be liable for financial obligations incurred by it prior to any termination of this Agreement.

(emphasis added.)

Had PG&E and the Remaining Cotenants decided not to continue operating the Line, the Agreement would terminate in its entirety on the date specified in the notice, and PG&E would be required to remove the Line, credit the net salvage value of the material and distribute any net proceeds among the Cotenants in proportion to their Ownership Interests. If removal was performed at a net loss, PG&E would be reimbursed by the Cotenants for their respective shares of such net loss in proportion to their ownership interests. (See CDWR Motion, Decl. of Ghassan AlQaser ["AlQaser Decl."], ¶13.)[3] It is undisputed that no decision to stop operating the line was made. It is also unlikely that the line will ever be removed because removal of the line is not a viable option due to its integration into the California grid for reliability and operational use. (AlQaser Decl., ¶14.)

The language in Section 14.5 is unequivocally clear that any obligation to pay removal costs only arises if there is a decision to stop operating the transmission line, and this language is not susceptible to an interpretation that would require payment of removal costs if no decision has been made to stop operating the line. A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed. Cal. Civ. Code §1436. Because the condition precedent here was not satisfied, Section 14.5 does not apply.

---

[3] PG&E interprets "net salvage value" as the after-tax value of the assets after subtracting removal costs, after they are taken out of service, disassembled and sold. Given the age and condition of the facilities, PG&E calculates that the removal costs would actually exceed the resale value of the facilities. Therefore, PG&E estimates that there is no salvage value associated with the Line. (AlQaser Decl. ¶13.)

11

## 2. PG&E's Interpretation Is Not Supported by the Language in the Agreement.

An ambiguity arises when the language is reasonably susceptible to more than one application to material facts. *Bernard v. State Farm Mut. Auto. Ins. Co.*, 158 Cal. App. 4th 304, 309-310 (2007). If the language is not reasonably susceptible to the interpretation offered by the plaintiff, the case is over. *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 393 (2006). PG&E has not shown that any ambiguity exists or that the language in the Agreement supports its position.

PG&E's primary argument is that if CDWR wishes to terminate its participation in the Agreement, it *must* sell its ownership interest in exchange for the net salvage value of the transmission lines. A calculation of the current value of that interest – measured by the estimated net salvage value – is negative because it will cost more money to remove the transmission line when they are ultimately decommissioned. As a result, PG&E contends that rather than relinquishing its ownership interest to the remaining parties, the Agreement requires that CDWR pay the Remaining Cotenants its proportionate share of estimated costs, including those of operation, maintenance, *and removal*, prior to terminating its participation in the Agreement. (PG&E Motion at 7:14-24) (emphasis added). The Agreement is not reasonably susceptible to this interpretation. First, there is no language in the Agreement that states the departing Cotenant <u>must</u> sell its interest. On the contrary, Section 14.6 states that the Cotenants wishing to purchase the interest(s) of the departing cotenant(s) <u>may</u> do so effective as of the date the selling Cotenant terminates its participation in the Agreement. Because none of the Remaining Cotenants elected to acquire CDWR's interest, CDWR's share effectively reverts back to PG&E because PG&E's interest is no longer calculated by subtracting CDWR's interest. (See AlQaser Decl. ¶13; Agreement, §§2.2.1.1, 2.2.2.) Second, there is no language in Section 14.6 or elsewhere in the Agreement that requires a departing Cotenant to pay any removal costs upon termination except for Section 14.5, which does not apply to the parties' dispute because there has been no decision to stop operating the transmission line.

Further, PG&E contends that because the net salvage value of DWR's interest was negative, DWR had an obligation to pay the Remaining Cotenants the estimated future removal costs and

12

this was a "financial obligation" that was incurred prior to its effective date of termination within the meaning of Section 14.6. (PG&E Motion at 11:14-22.) There are two flaws with PG&E's argument. First, there is no language in Section 14.6 that supports this view. "The court's function is to determine what, in terms and substance, is contained in the contract, not to insert what has been omitted. [Courts] do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange*, 229 Cal. App. 4th 549, 569 (2014) (quoting *Vons Companies, Inc. v. United States Fire Ins. Co.*, 78 Cal. App. 4th 52, 58-59.) Second, because there has been no decision to remove the transmission line, removal costs cannot be a "financial obligation" that was "incurred prior to the effective date of the termination." More importantly, because only Section 14.5 specifically refers to "removal costs," it prevails over the more general provisions relating to "financial obligations." "Under well-established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision." *Kashmiri v. Regents of University of California*, 156 Cal. App. 4th 809, 834 (2007). "[A] specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates." *General Ins. Co. v. Truck Ins. Exch.* 242 Cal.App.2d 419, 426 (1966). See also Cal. Civ Code §1650 (specific provisions in an agreement prevail over general provisions that are inconsistent with it). Therefore, even assuming arguably that the terms "financial obligations" are broad enough to encompass removal costs, the more specific provision contained in Section 14.5 would prevail.

  PG&E recognizes that its arguments are not supported by the language in the Agreement by contending that "contrary to the terms of the [A]greement and '*principles of equity*' – which requires each party to bear the costs associated with the lines in proportion to its ownership share in them – CDWR would unfairly avoid and shift its share of the costs of the lines onto the remaining parties, PG&E, NCPA and SVP." (PG&E Motion at 7:24-25; 8:1-2) (emphasis added). This argument attempts to lump in removal costs among the other costs the parties agreed to share.

13

However, the terms of the Agreement required DWR and the other Cotenants to share the initial costs of construction of the Line and associated facilities and pay annual charges for the associated facilities and the operation and maintenance of the Line in proportion to their ownership interests. (AlQaser Decl. Decl., ¶5, Ex. 1, Sections 5.0, 6.0, pp. 33-45.) The term "cost," defined in Section 1.7, does not mention "removal costs." Applying a meaning of "costs" that excludes removal costs is consistent with the parties' intent to share in the "construction and maintenance costs" of the transmission line and the associated facilities. It is also consistent with Section 14.5, which provides that any obligation to pay for removal costs arises only arises if there is a decision to stop operating the line.

Additionally, PG&E implicitly acknowledged that the existing language in the Agreement does not support its position when it filed at FERC to amend the language in the Agreement to require the payment of removal costs as a condition to the effectiveness of CDWR's termination. (AlQaser Decl., ¶14, Ex. 5.) Although FERC reached no conclusion as to the merits of the dispute, it held that PG&E did not adequately justify its proposed changes. (*Id*., ¶11, Ex. 5, ¶12, p. 4.)

Finally, as to PG&E's "principles of equity" argument, courts are not called upon to improve agreements between parties that they themselves have been satisfied to enter into, or to rewrite contracts because they may operate harshly or inequitably. *Addiego v. Hill*, 238 Cal. App. 2d 842 (1965). For these reasons, none of the arguments offered by PG&E are relevant to the interpretation of Section 14.5 or 14.7, and CDWR's interpretation should prevail.

//
//
//
//
//
//
//
//
//

14

Case: 19-30088    Doc# 12129    Filed: 04/08/22    Entered: 04/08/22 15:07:56    Page 18 of 20

## CONCLUSION

For the reasons stated above, CDWR respectfully requests the Court find that CDWR does not owe PG&E or the other Cotenants any proportional share of the estimated future removal costs of the transmission line, and that the Court issue an order immediately staying the arbitration proceedings initiated by the Demand for Arbitration filed by SVP and NCPA, and which PG&E joined, on March 30, 2022, pending this Court's decision as previously ordered in the Memorandum Decision.

Dated: April 8, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
DANETTE E. VALDEZ, SBN 141780
ANNADEL A. ALMENDRAS, SBN 192064
Supervising Deputy Attorneys General

By: /s/ Paul J. Pascuzzi
PAUL J. PASCUZZI
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
Attorneys for California Department of Water Resources, by and through the State Water Project

# PROOF OF SERVICE

I, Susan R. Darms, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 500 Capitol Mall, Suite 2250, Sacramento, CA 95814. On April 8, 2022, I served the within documents:

**CALIFORNIA DEPARTMENT OF WATER RESOURCES' REPLY TO PG&E'S MEMORANDUM REGARDING DEPARTMENT OF WATER RESOURCES' CLAIM NO. 78104 AND FURTHER BRIEFING OF ISSUES; REQUEST FOR ORDER STAYING ARBITRATION**

By Electronic Service only via CM/ECF.

                                                       */s/ Susan R. Darms*
                                                       Susan R. Darms

SF2019200301
43164062.docx