# **EXHIBIT D**

### **(Information Request Response)**





990407901156394

INFORMATION REQUEST FORM

1. Contact Information

   The section below has fields relating to your contact information (name, address, email, etc.). If any part of that information is incorrect, please provide correct details below. The Reorganized Debtors will use this contact information for any further communications and correspondence regarding your proof of claim(s).

   Please reflect any updates below:

   Address: Shahmirza, Amir
   c/o Mellen Law Firm
   1050 Marina Village Parkway, Suite 102
   Alameda CA 94501

   Change to:
   c/o Lawrence A. Jacobson
   Cohen and Jacobson, LLP
   66 Bovet Road, Suite 285
   San Mateo, CA 94402
   Office: 650-261-6280
   Cell: 650-642-4906
   laj@cohenandjacobson.com

   Phone:
   Email:

2. Claim-Related Information

   The section below relates to information relevant to your filed proof of claim(s). You must provide the following information:

   (a) incident date (if applicable);

   > Continuing trespass by maintenance of powerlines over Claimant's property

   (b) a description of the general nature of the claim (e.g., contract, personal injury, cessation of service, etc.);

   > PG&E installed and maintained powerlines across Claimant's property without any legal right to do so and thereafter lowered the height at which the powerlines cross Claimant's property thereby diminishing the value and utility. As a consequence of those acts by PG&E, Claimant has been and remains unable to utilize the property to its highest and best use. As a corollary, PG&E has interfered with Claimant's use and enjoyment of the Property and with Claimant's prospective economic advantage. Claimant seeks money damages and/or injunctive relief requiring the relocation of the offending power lines.

   (c) a statement of, and supporting documents indicating, the underlying basis for the claim;

   > Claimant attaches a Report of Land Surveyor dated August 11, 2018, and all conveyance documents referenced in that report (Exhibit A) as well as a recorded Survey dated November 28, 2018 (Exhibit B). The Report of Land Survey explains the historical extinguishment of any easements claimed by PG&E (that were to be relocated to other property) with the conveyance to Claimant and predecessors free and clear of any grant or restoration of easement rights to PG&E. The response by PG&E by letter dated October 10, 2018, by Scott Brady (Exhibit C), references prior claims of easement but fails to address the extinguishment described in the Report of Land Survey. See also Real Estate Summary Map dated January 15, 2018, (Exhibit D),an aerial photo of the Property with annotated tabs that reflect items that affect, or may affect, the Property (prepared by Land Surveyor described above)

(d) a statement of the liquidated amount allegedly owing on the Claim, including documentation as available;

> The amount of damages has not yet been liquidated to a sum certain. The amount indicated in the Claim reflected an estimate by counsel who filed the Claim as a sum that would be sufficient to fully compensate Claimant. Alternatively, Claimant seeks removal of the power lines or restoration to the height maintained at the date of Claimant's acquisition of the Property.
>
> In response to an inquiry from PG&E's counsel with respect to Claimant's intended use of the Property absent the intruding power lines, Claimant attaches a schematic drawing of a building contemplated by Claimant. (Exhibit E)

(e) any additional information you believe is necessary or appropriate to allow the Reorganized Debtors to evaluate the claim.

> Claimant also invites PG&E and its attorneys and other advisors to meet with Claimant and counsel on-site at the Property for visualization of the land, its configuration, and the location and impact of the power lines.

Please note that providing a response to this letter does not mean that your claim will be allowed. PG&E will review the information you provide and reserves all its rights with respect thereto. If you have any questions about your proof of claim, you should consult an attorney.

☑ I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. I UNDERSTAND THAT A PERSON WHO FILES A FRAUDULENT CLAIM COULD BE FINED UP TO $500,000, IMPRISONED FOR UP TO 5 YEARS, OR BOTH. 18 U.S.C. §§ 152, 157, AND 3571.

_____
Signature

If you have questions about this notice, please contact the Debtors' Claims and Noticing Agent, Prime Clerk LLC, at 844-339-4217 (toll-free), +1 929-333-8977(international), or by email at pgeinfo@primeclerk.com.

# EXHIBIT A



-Civil Engineering - Surveying & Mapping
- Site Development Planning
- Environmental Services
- LEED AP  -SWPPP Certified

*Professional Land Services*
*LAND DEVELOPMENT SPECIALISTS*

*Serving the Community and the Bay Area*

August 11, 2018

To: Mr. Amir Shahmirza
10 Rollins Road, Suite 217
Millbrae, CA 94030

## RE: LAND SURVEYOR'S REPORT ON TITLE FOR KOMIR, INC. LOCATED AT 800 WALNUT STREET, SAN BRUNO, CA (APN: 020-155-030)

### BACKGROUND

In San Mateo County the initial construction for the Bayshore Freeway began in late 1924 to relieve congestion on El Camino Real and was completed in October of 1928. Most of the land acquired for the initial construction was owned by the City and County of San Francisco, and the remainder of land was owned by the State of California, other local governmental entities and a few private land holdings. The laws for the acquisition of lands for public use by the State of California and administered through the Department of Transportation **provided for no third party interest (easements, leases, permits, etc.) in the lands to be acquired for the initial construction of the Bayshore Freeway.**

Post WWII, 1946 San Bruno and San Mateo County experienced tremendous growth in population and housing. During the War, war-related industries like ship making and steel building came to the County, bringing jobs and more people. Also, in the post-war period, commercial aviation grew, and the expansion San Francisco Airport brought jobs and commercial and private transportation that required expansion of the existing Bayshore Freeway. Basically the plans for the Bayshore Freeway reconstruction is to convert the existing freeway to ten lanes.

Since the majority of lands for the freeway reconstruction are owned by the City and County of San Francisco referred to as "City" passed **Ordinance No. 3975** in August 1946 to provide for land conveyance to the State of California for the expansion of the existing freeway. What is very important, is that Ordinance No. 3975 mentioned that all existing utilities lying within the freeway reconstruction area would be either relocated or extinguished. Ordinance No. 3975 specifically mentions the **relocation of existing Pacific, Gas & Electric (PG&E) utilities and facilities; and to provide funding for the purchase of property for the necessary easements or the purchase of property acquired in fee for the relocation of their utilities.**

August 11, 2018

## RE: LAND SURVEYOR'S REPORT ON TITLE FOR KOMIR, INC. LOCATED AT 800 WALNUT STREET, SAN BRUNO, CA (APN: 020-155-030)

### BACKGROUND-Continued

In consonance with Ordinance No. 3975 the land for the freeway reconstruction was conveyed by the "City" to the State of California by Joint Deed filed in Vol. 2562, Page 404 in the Official Records of San Mateo County on April 6, 1954. The Joint Deed contained a legal description described those lands for the reconstruction area and also contained descriptions for existing easements and those relocated within the area described in the legal description of the Joint Deed.

At the conclusion of the reconstruction for the Bayshore Freeway project, the State of California through the Department of Transportation conducted analysis of those lands not required for future highway projects that were termed "excess properties". These properties were sold to private and public entities and were conveyed by **"Director's Deed"** through the Director of Transportation. **The "Director's Deed" contained a legal description for the conveyance parcel and only mention those easements and agreements to other entities that affected the conveyance parcel.**

In other words, the **"Director's Deed"** was to provide a number of guarantees from the seller to the buyer providing some of the same conditions of a **Warranty Deed,** such as a full description of the property and asserts that the seller (State of California) owns and can transfer full and clear title of the property. A **Warranty Deed** also certifies that the property is free of any easements, liens, or other encumbrances on the ownership, where a **"Director's Deed" certifies the easements, agreements, or other encumbrances are those only described in the "Director's Deed".**

### FINDINGS

1. The referenced Komir, Inc. property is the successor of the lands conveyed by "Director's Deed" to Neil & Melanie Hildebrand as described in Document No. 87101925 filed in the Official Records of San Mateo County on June 30, 1987. The Director's Deed to Hildebrand has a full description of the property and the easements that affect the Hildebrand property. Also recorded with the Director's Deed to Hildebrand is a Department of Transportation Plat that delineates the property boundaries together with the easements that affect the Hildebrand and Komir, Inc. property. **The only PG&E easement mentioned in the Director's Deed is an easement for landscaping purposes**.

2. The investigations concerning title for the referenced Komir, Inc. property involved the review of 12 official documents consisting of vesting deeds, easement deeds and recorded maps.

2

## RE: LAND SURVEYOR'S REPORT ON TITLE FOR KOMIR, INC. LOCATED AT 800 WALNUT STREET, SAN BRUNO, CA (APN: 020-155-030)

2. Continued                                                                                                     1

From these investigations, it was determined that in 1923, the Mills Estate, Inc. conveyed to PG&E easements for steel towers and electric transmission lines that are located approximately in the area of the Hildebrand property. These easements are described in documents filed on Book 68, Page 208 on March 3, 1923, and Book 87, Page 328 on September 12, 1923 in the Official Records of San Mateo County.

Subsequently, in 1925, the lands of Mills Estate, Inc. was purchased by the City & County of San Francisco for the expansion of Mills Field (San Francisco Airport) and the impending construction of the Bayshore Freeway by the State of California.

However, as previously mentioned in the narrative for Background, the City and County of San Francisco conveyed property for the Bayshore Freeway expansion in 1954 to the State of California by Joint Deed filed in Vol. 2562, Page 404 on April 6, 1954. The Joint Deed involved the area where the Hildebrand (Komir Inc.) property now exists, and did not mention the easements from the Mills Estate, Inc. to PG&E for steel towers and overhead electric transmission lines. **This is because Ordinance No. 3975 mentioned that all existing utilities lying within the freeway reconstruction area would be either relocated or extinguished, and specifically referenced the relocation of these PG&E easements and utilities.**

3. When the City and County of San Francisco passed **Ordinance No. 3975** in August 1946, it commissioned the Engineering Bureau of San Francisco Public Utilities Commission in July 1947 to conduct a field survey and file a Record of Survey Map of the Property owned by the City & County of San Francisco. Sheet 1 shows the entire area of the City & County of San Francisco and the area of the Hildebrand parcel (Vol. 2, LLS, Pg. 39). Also, sheet 7 of this survey delineates in more detail where the Hildebrand parcel that is located within the property of the City and County of San Francisco. These maps show no PG&E easements for overhead power lines in the area of the Hildebrand parcel; however sheet 7 shows a 140-foot wide PG&E easement on the adjacent parcel lying in Section 27 that existed at the time of the 1947 Record of Survey.

4. A Record of Survey of the Bayshore Freeway (HWY 101) involving the area around the San Francisco International Airport was filed in Book 22, Page 29 of LLS Maps on June 13, 2001 in the Official Records of San Mateo County. Sheet 2 of this survey delineates property lines of the Hildebrand parcel lying westerly HWY 101 and shows no PG&E easement for overhead power transmission lines.

August 11, 2018

## RE: LAND SURVEYOR'S REPORT ON TITLE FOR KOMIR, INC. LOCATED AT 800 WALNUT STREET, SAN BRUNO, CA (APN: 020-155-030)

### CONCLUSION

Based on the narrative contained in the Background and Findings of this Report on Title for Kormir, Inc., the only easements, encumbrances and non-documented structures (operated by other public entities) are those delineated on the Real Estate Summary Map of the Lands of Komir, Inc. attached hereto.

### NOTE

A folder containing a listing and reproduction of all documents and maps utilized in the analysis for this Report on Title is submitted with this **LAND SURVEYOR'S REPORT ON TITLE FOR KOMIR, INC.**

Prepared by:

*Michael S. Mahoney*

*Michael S. Mahoney, P.L.S # LS5577*

# DOCUMENT LISTING

(WITH NOTATIONS)

August 11, 2018

## RE: LAND SURVEYOR'S REPORT ON TITLE FOR KOMIR, INC. LOCATED AT 800 WALNUT STREET, SAN BRUNO, CA (APN: 020-155-030)

### DOCUMENTS USED FOR ANALYSIS

1.  Conveyance - Director's Deed - to Neil & Melanie Hildebrand from the State of California Doc. No. 87101925 O.R. June 30, 1987.
    Note: The Director's Deed describes the land conveyed to Hildebrand and describes the easements that affect the property; also, with the filed with the Director's Deed is a plat that delineates the easements that affect the Hildebrand property

2.  Conveyance-Grant Deed- to KOMIR, INC. from Neil & Melanie Hildebrand Doc. No. 2000-160010 O.R. December 18, 2000.
    Note: Komir, Inc. is the successor of the all the land conveyed by the State of California to Hildebrand.

3.  Conveyance-Joint Deed- to State of California from City & County of San Francisco Book 2562, Page 404 O.R. April 6, 1954.
    Note: Joint Deed contains Ordinance No. 3975 approved August 13, 1946

4.  Conveyance- Director's Deed- Grant of Easement to PG&E from State of California Doc. No. 88171343 O.R. December 16, 1988.
    Note: This Grant of Easement by the State of California to PG&E is mentioned in the conveyance to Hildebrand (Doc. No. 87101925) and conveyed again after the conveyance to Hildebrand in 1987.

5.  Conveyance-Agreement to PG&E from Mills Estate, Inc.
    Book 68, Page 208 O.R. March 3, 1923.
    Note: This agreement for electrical facilities affects a portion of the Hildebrand (Komir, Inc.) Parcel, but its exact location cannot be accurately plotted. However, all facilities & utilities in this area were relocated per Ordinance No. 3975.

6.  Conveyance-Agreement to PG&E from Mills Estate, Inc.
    Book 87, Page 328 O.R. September 3, 1923.
    Note: This agreement for electrical facilities affects a portion of the Hildebrand (Komir, Inc.) Parcel, but its exact location cannot be accurately plotted. However, all facilities & utilities in this area were relocated per Ordinance No. 3975.

7.  Conveyance-Grant of Right of Way to Sierra & San Francisco Power Company from D. O. Mills, Book 177, Page 395 O.R. March 21, 1910.
    Note: This Right of Way for electrical transmission lines does not affect the Hildebrand (Komir, Inc.) Parcel, but its approximate location lies 30'+/- easterly of the Hildebrand (Komir, Inc.) Parcel in the existing Bayshore Freeway. However, all facilities & utilities in this area were relocated per Ordinance No. 3975.

1

# DOCUMENT LISTING

## (WITH NOTATIONS)
### Continued

**RE: LAND SURVEYOR'S REPORT ON TITLE FOR KOMIR, INC. LOCATED AT 800 WALNUT STREET, SAN BRUNO, CA (APN: 020-155-030)**

## DOCUMENTS USED FOR ANALYSIS – Continued

8. Conveyance-Grant of Right of Way to PG&E & San Francisco Power Company from D. O. Mills, Book 64, Page 406 O.R. March 5, 1923.
   Note: This Right of Way for electrical transmission lines does not affect the Hildebrand (Komir, Inc.) Parcel, but its approximate location lies in Section 27 northerly of the Hildebrand (Komir, Inc.) Parcel and lies in a portion the existing Bayshore Freeway in Section 34 . However, all facilities & utilities in this area were relocated per Ordinance No. 3975.

9. Record of Survey Map-Property of City & County of San Francisco-July 1947
   Vol. 2, LLS Maps, Pages 39 & 45 O.R. March 23, 1948
   Note: Delineates the property owned by the City & County of San Francisco in the area of the Hildebrand (Komir, Inc.) Parcel. Shows PG&E easement in Section 27, but no PG&E easement in Section 34 in the area on the Hildebrand (Komir, Inc.) Parcel.

10. Record of Survey Map- Bayshore Freeway (HWY 101)-San Bruno Ave. access to San Francisco International Airport.
    Vol. 22, LLS Maps, Pages 28 & 29 O.R. June 13, 2001
    Note: Delineates the Bayshore Freeway (HWY 101) in the area of the Hildebrand (Komir, Inc.) Parcel. Page 29 (sheet 2 of 5) delineates the Hildebrand (Komir, Inc.) Parcel in Section 34 with no PG&E easement affecting the Hildebrand Parcel.

11. Record of Survey Map- Bayshore Freeway (HWY 101)-San Bruno Ave. access to San Francisco International Airport.
    Vol. 17, LLS Maps, Page 5 O.R. January 17, 1997
    Note: Delineates the Bayshore Freeway (HWY 101) in the area of the Hildebrand (Komir, Inc.) Parcel in Section 34 with no PG&E easement affecting the Hildebrand Parcel.

12. CALTRANS Right of Way Record Map-R-35.2 HWY-101
    Note: This maps shows the State of California ownership, the Bayshore Freeway (HWY 101) as it exists today. The crosshatched areas as shown the map are those parcels of excess lands sold to private and/or public entities that were conveyed by Director's Deed as annotated on the Right of Way Record. Also, on the Right of Way Map the excess lands (crosshatched area) only shows those easements that affects the them. Also, the CALTRANS Right of Way Record Map shows prior easements within the constructed area that were relocated in consonance with Ordinance No. 3975.

2

# EXHIBIT 1

**87101925**

Return to:
mr. neil F. Hildebrand Jr.
100 Skyline Plaza
Daly City, Ca. 94015

| RF | 7 |
| CD | |
| LN | |
| MF | 1 |
| AF | 5 |
| BR | 13 |

RECORDED AT REQUEST OF

**FOUNDERS TITLE COMPANY**

Jun 30  11 01 AM '87

WARREN SLOCUM RECORDER
San Mateo County
Redwood City, CA

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Documentary Stamp Tax: $72.05

| DISTRICT | COUNTY | ROUTE | POST MILE | NUMBER |
|---|---|---|---|---|
| 4 | SM | 101 | 20.6 | DD-038103-01-01 |

## DIRECTOR'S DEED
JUN 1987 15

The STATE OF CALIFORNIA, acting by and through its Director of Transportation, does hereby grant to

NIEL F. HILDEBRAND JR. and MELANIE Y. HILDEBRAND, as community property

all that real property **XXXXX** partly in the City of San Bruno and all of the

County of __San Mateo__ , State of California, described as

### PARCEL 038103-01-01:

COMMENCING at the northeasterly terminus of the course
described as "N. 84°25'53" E., 0.81 of a foot" in that
0.377-acre parcel of land conveyed to the City of San Bruno
by Director's Deed No. DD-038619-01-01, recorded April 20,
1977 in Volume 7448 at page 455, Official Records of
San Mateo County; said terminus being a`io on the San Bruno
City Limits Line; thence al ng the easterly prolongation of
said course N. 84°25'53" E., 114.19 feet; thence
N. 47°43'02" E., 36.80 feet; thence N. 30°41'14" E.,
9.30 feet; thence S. 54°44'20" E., 122.08 feet; thence from a
tangent that bears S. 2°45'48" E., along a curve to the
right with a radius of 499.96 feet, through an angle of
30°28'30", an arc length of 265.92 feet; thence
S. 27°42'42" W., 308.26 feet to the southeasterly line of
that certain parcel of land, described as PARCEL II, conveyed
to City and County of San Francisco, a municipal corporation,
by Director's Deed No. 2293-DD, recorded October 28, 1953,

MAIL TAX
STATEMENTS TO
Mr. Niel F. Hildebrand Jr
100 Skyline Plaza
Daly City, CA 94015
FORM RW 02-18 (REV 8-82)

DOCUMENTARY TRANSFER TAX $ 72.05
X COMPUTED ON FULL VALUE OF PROPERTY CONVEYED, OR
COMPUTED ON FULL VALUE LESS LIENS & ENCUMBRANCES
REMAINING THEREON AS TIME OF SALE

CITY OF San Bruno  [ ] Unincorporated

Documentary Transfer Tax
• • • PAID • • •
San Mateo County
Rec'd By /s/
Deputy Recorder

87101925

92-01-010-30

in Volume 2467, at page 463, Official Records of San Mateo County; thence along last said line and the general westerly line of last said Parcel II (2293-DD) S. 24°50'32" W., 101.57 feet, N. 4°38'43" W., 190.93 feet, N. 85°21'17" E., 15.33 feet and N. 10°51'17" E., 129.71 feet to said San Bruno City Limits Line; thence along last said line N. 4°38'43" W., 330.46 feet to the point of commencement.

CONTAINING 2.214 acres, more or less.

There shall be no abutter's rights of access appurtenant to the above-described real property in and to the adjacent State freeway.

(a) Subject to AN EASEMENT, granted or to be granted to the City of San Bruno, for the maintenance of the existing 24-inch diameter sewer line, said easement described as follows:

COMMENCING at the northwesterly corner of that 2.214-acre parcel of land described above; thence along the northerly line of said 2.214-acre parcel N. 84°25'53" E., 10.00 feet to a line parallel with and 10.00 feet easterly, at right angles, from said San Bruno City Limits Line; thence along said parallel line S. 4°38'43" E., 542.34 feet to the southeasterly line of said 2.214-acre parcel; thence along last said line S. 27°42'42" W., 18.69 feet to said San Bruno City Limits Line; thence along last said line N. 4°38'43" W., 557.97 feet to the point of commencement.

CONTAINING 0.126 of an acre, more or less.

(b) Subject to AN EASEMENT, granted or to be granted to Pacific Gas and Electric Company, a California corporation, for the right to landscape and access and in connection therewith to plant, grow and care for shrubs and trees, not to exceed fifteen (15) feet in height, within the following described parcel of land:

COMMENCING at the northwesterly corner of that 2.214-acre parcel of land described above; thence along the northerly line of said 2.214-acre parcel, N. 84°25'53" E., 114.19 feet; thence S. 17°58'05" W., 88.46 feet; thence S. 85°13'30" W., 80.16 feet to the westerly line of said 2.214-acre parcel; thence along last said line N. 4°38'43" W., 80.00 feet to the point of commencement.

CONTAINING 0.180 of an acre, more or less.

(c) Subject to AN EASEMENT, granted or to be granted to the PACIFIC BELL, a corporation, for the right from time to time to construct, place, inspect, maintain and replace communication facilities, consisting of aerial and underground wires, cables and other electrical conductors with associated poles, crossarms, anchors, guys, fixtures, conduits, manholes, marker posts and other appurtenances, together with a right of way therefor and the right of ingress thereto and egress therefrom, across, upon, in and under, the following described parcel of land:

A strip of land, 10.00 feet wide, bounded on the east by the easterly line of that 2.214-acre parcel described above and bounded on the west by the westerly line of said 2.214-acre parcel, lying 5.00 feet on each side of the following described center line:

COMMENCING at a point on the westerly line of that 2.214-acre parcel described above, distant thereon S. 4°38'43" E., 75.00 feet from the northwesterly corner of said 2.214-acre parcel; thence N. 85°13'30" E., 240.67 feet to the easterly line of said 2.214-acre parcel.

CONTAINING 0.055 of an acre, more or less.

Grantor further grants to grantee the right of ingress to and egress from said strip over and across said lands by means of roads and lanes thereon, if such there be, otherwise by such route or routes as shall occasion the least practicable damage and inconvenience to grantor, provided that such right of ingress and egress shall not extend to any portion of said lands which is isolated from said strip by any public road or highway, now crossing or hereafter crossing said lands.

Grantor shall have the right to use said strip for purposes not inconsistent with grantee's full enjoyment of the rights hereby granted, provided that grantor shall not erect or construct any building or other structure, or drill or operate any well, within said strip.

Grantee shall have the further right to install, maintain and use gates in all fences which now cross or shall hereafter cross said strip.

Grantee shall also have the right to mark the location of said strip by suitable markers, but said markers when set in the ground shall be placed in fences or other location

87101925

which will not interfere with any reasonable use grantor shall make of said strip.

Grantee shall indemnify grantor against any loss and damage which shall be caused by the exercise of said ingress and egress, or by any wrongful or negligent act or omission of grantee or its agents or employees in the course of their employment.

The provisions hereof shall inure to the benefit of and bind the successors and assigns of the respective parties hereto.

The bearings and distances used in the above descriptions are on the California Coordinate System, Zone 3. Multiply the above distances by 1.0000790 to obtain ground level distances.

APN 092-020-100 Ptn. JPN 92-01-010-30 Ptn.

Subject to special assessments if any, restrictions, reservations, and easements of record.

This conveyance is executed pursuant to the authority vested in the Director of Transportation by law and, in particular, by the Streets and Highways Code.

WITNESS my hand and the seal of the Department of Transportation of the State of California, this _____ day of _____ June _____ 19 87.

STATE OF CALIFORNIA
DEPARTMENT OF TRANSPORTATION

APPROVED AS TO FORM AND PROCEDURE

ATTORNEY
DEPARTMENT OF TRANSPORTATION

LEO J. TROMBATORE
Director of Transportation

By _____

HARRY L. KAGAN

Attorney in Fact

STATE OF CALIFORNIA }
COUNTY OF SACRAMENTO } ss

On this 25th day of June in the year 1987 before me AGNES M. BOJOROUES a Notary Public in and for the State of California, residing therein, duly commissioned and sworn, personally appeared HARRY L. KAGAN personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument as the Attorney in Fact of LEO J. TROMBATORE Director of Transportation of the State of California, and that he (she) subscribed the name of LEO J. TROMBATORE as Director of Transportation, and his (her) own name as Attorney in Fact, and that the State of California executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
AGNES M. BOJOROUES
NOTARY PUBLIC – CALIFORNIA
SACRAMENTO COUNTY
My comm. expires JUN 21, 1988

_____

THIS IS TO CERTIFY That the California Transportation Commission has authorized the Director of Transportation to execute the foregoing deed at its meeting regularly called and held on the 25th

day of June 1987 in

the City of Sacramento

Dated this _____ day of June 1987

_____
ROBERT I. REMEN
Chief Deputy Director

87101925



DD-038103-01-01

STATE OF CALIFORNIA
BUSINESS AND TRANSPORTATION AGE
DEPARTMENT OF TRANSPORTAT
DISTRICT 04

DIRECTOR'S DEE
DD-038103-01-

| DRAWN BY | CL | | DATE | I- |
| CHECKED BY | | | SCALE | Sh |
| CO. | RTE. | P.M. | DR. NO. | |
| SM | 101 | 20.6 | | |



# EXHIBIT 2

Recording Requested by:
Commonwealth Land Title Company

WHEN RECORDED MAIL TO:
KOMIR, INC.

10 ROLLINS ROAD
SUITE 217
MILLBRAE, CA 94030

**DOC # 2000-160010**
12/18/2000 01:24P DE Fee:13.00
Page 1 of 3
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder
Recorded By KOMIR INC

THIS SPACE FOR RECORDER'S USE ONLY:

# GRANT DEED

APN: 020-155-030
JPN: 092-001-010-32A
TITLE NO.: 79530297
ESCROW NO: 79530297

The undersigned Grantor(s) declare(s) that the DOCUMENTARY TRANSFER
TAX IS: $ 0          County  $ _____    City ____

X  Computed on the consideration or value of property conveyed; OR
__ Computed on the consideration or value less or encumbrances
    remaining at time of sale.
DEED ONLY TO CORRECT LEGAL-NO CONSIDERATION

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged.

NIEL F. HILDEBRAND JR. & MELANIE M. HILDEBRAND, HUSBAND AND WIFE, AS COMMUNITY PROPERTY

hereby GRANT(S) to

KOMIR, INC.

all the real property situated in the City of San Bruno, County of San Mateo, State of California, described as:

SEE ATTACHED EXHIBIT "A"

DEED ONLY BEING RECORDED TO CORRECT LEGAL DISCRIPTION OF THE GRANT DEED RECORDER JULY 5,
2000 SERIS NO. 200081861

Dated: December 15, 2000

STATE OF CALIFORNIA                    )ss
COUNTY OF _____ SAN MATEO _____

On DEC. 18, 2000 before me, KRISTIN A SMITH

personally appeared NIEL F. HILDEBRAND JR.
AND MELANIE M. HILDEBRAND
personally known to me or proved to me on this basis of
satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

MAIL TAX
STATEMENTS TO:    KOMIR, INC.. SAME AS ABOVE

NIEL F. HILDEBRAND JR.

MELANIE M. HILDEBRAND

KRISTIN A. SMITH
COMM. # 1162316
NOTARY PUBLIC-CALIFORNIA
SAN MATEO COUNTY
COMM. EXP. MAY 3, 2002
(This area for official notarial seal)


# EXHIBIT "A"

Parcel One:

Commencing at the Northeasterly terminus of the course described as "North 84° 25' 53" East, 0.81 of a foot" in that 0.377 acre parcel of land conveyed to the City of San Bruno by Director's Deed No. DD-038619-01, recorded April 20. 1977 in Volume 7448 at page 455, Official Records of San Mateo County; said terminus being also on the San Bruno City Limits Line; thence along the Easterly prolongation of said course North 84° 25' 53" East, 114.19 feet; thence North 47° 43' 02" East, 36.80 feet; thence North 30° 41' 14" East, 9.30 feet; thence South 54° 44' 20" East, 122.08 feet; thence from a tangent that bears South 2° 45' 48" East, along a curve to the right with a radius of 499.96 feet, through an angle of 30° 28' 30", an arc length of 265.92 feet; thence South 27° 42' 42" West, 308.26 feet to the Southeasterly line of that certain parcel of land described as Parcel II, conveyed to City and County of San Francisco, a municipal corporation, by Director's Deed No. 2293-DD, recorded October 28, 1953, in Volume 2487, at page 143, Official Records of San Mateo County; thence along last said line and the general Westerly line of last said Parcel II (2293-DD) South 24° 50' 32" West, 101.57 feet, North 4° 38' 43" West, 190.93 feet, North 85° 21' 17" East, 15.33 feet and North 10° 51' 17" East, 129.71 feet to said San Bruno City Limits Line; thence along last said line North 4° 38' 43" West, 330.46 feet to the point of beginning.

Parcel Two:

Those certain rights as granted in that certain deed executed by State of California to Niel F. Hildebrand Jr. and Melanie M. Hildebrand, as community property, dated June 25, 1987 and recorded June 30, 1987, as Document No. 87101925, more particularly described as follows:

"Grantor further grants to grantee the right of ingress to and egress from said strip over and across said lands by means of roads and lanes thereon, if such there be, otherwise by such route or routes as shall occasion the least practicable damage and inconvenience to grantor, provided that such right of ingress and egress shall not extend to any portion of said lands which is isolated from said strip by any public road or highway, now crossing or hereafter crossing said lands.

Grantor shall have the right to use said strip for purposes not inconsistent with grantee's full enjoyment of the rights hereby granted, provided that grantor shall not erect or construct any building or other structure, or drill or operate any well, within said strip.

Grantee shall have the further right to install, maintain and use gates in all fences which now cross or shall hereafter cross said strip.

Grantee shall also have the right to mark the location of said strip by suitable markers, but said markers when set in the ground shall be placed in fences or other location which will not interfere with any reasonable use grantor shall make of said strip.

(legal description continued)

Grantee shall indemnify grantor against any loss and damage which shall be caused by the exercise of said ingress and egress, or by any wrongful or negligent act or omission of grantee or its agents or employees in the course of their employment.

The provisions hereof shall inure to the benefit of and bind the successors and assigns of the respective parties hereto."

APN: 020-155-030
JPN: 092-001-010-32A


2000-150010
12/18/2020 at 24P
DE Page 3 of 3

# EXHIBIT 3

VOL **2562** PAGE **404**

4

No. 2293

IV-SM-68-F
Sta. 296 to 454

ORIGINAL

### JOINT DEED

CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation,
hereinafter referred to as "CITY," pursuant to Ordinance No.
3975, Bill No. 4215, Series of 1939, approved August 13, 1946,
hereby GRANTS to the STATE OF CALIFORNIA, acting for this purpose
through the DIRECTOR OF PUBLIC WORKS, hereinafter referred to as
"STATE" all that real property in the County of San Mateo, State
of California, described as:

#### Parcel 1

A portion of the S.W. 1/4 of the S.W. 1/4 of Section 27, the
S.E. 1/4 of the S.E. 1/4 of Section 28, and the N. 1/2 of Section
34 in T. 3 S., R. 5 W., M.D.B. & M.; also the S.W. 1/4 of the S.W.
1/4 of Section 2, Section 3, and the N. 1/2 of Section 11 in T.
4 S., R. 5 W., M.D.B. & M., said portion being described as follows:

COMMENCING at a point on the north line of said S.E. 1/4 of
the S.E. 1/4 of Section 28, distant thereon S. 89°57'53" W., 18.87
feet from the east line of said Section 28, and also distant
S. 89°57'53" W., 115.45 feet from Engineer's Station "P" 296+18.53
on the centerline of the Department of Public Works' survey between
Colma Creek in South San Francisco and Broadway in Burlingame,
Road IV-SM-68-SSF,F, which said point of commencement is on a line
parallel with and 115.00 feet westerly, at right angles, from said
centerline; thence, from a tangent that bears S. 5°02'45.5" E.,
along said parallel line on a curve to the left with a radius of
5115 feet, through an angle of 10°04'14.5", a distance of 899.05
feet to the first of a series of State Highway Commission monuments
(hereinafter referred to as C.H.C.Mon.) which are concrete monu-
ments 6"x6"x3'6" having the letter "C" impressed in one face and
having a 3/16"x6" copper wire in the center of the top, and
S. 15°07' E., 1292.69 feet; thence, tangent to the last mentioned
course along a curve to the right with a radius of 500 feet,
through an angle of 41°35'40", a distance of 362.98 feet to a
C.H.C.Mon.; thence, S. 26°28'40" W., 308.29 feet to a point on
the easterly city limit line of the City of San Bruno, distant
thereon S. 5°52'45" E., 2.53 feet from the northeasterly corner of
Lot 19 in Block 32, as said lot and block are shown on the map
entitled, "Amended Plan of the Belle Air Park," filed June 24, 1907
in Book 5 of Maps, at page 10, San Mateo County Records; thence,
along said city limit line S. 5°52'45" E., 204.94 feet to Engineer's
Station "S," 22+82.96 of said survey; thence, continuing along
said city limit line S. 5°52'45" E., 138.39 feet to a point distant
thereon N. 5°52'45" W., 4.09 feet from the southeasterly corner
of Lot 5 in Block 31, of said Belle Air Park; thence, leaving said
city limit line S. 51°12'30" E., 557.25 feet to a C.H.C.Mon.;
thence tangent to the last mentioned course along a curve to the
right with a radius of 300 feet, through an angle of 36°05'30",
a distance of 188.98 feet to a point marked by a C.H.C.Mon. distant
S. 74°53' W., 115.00 feet from Engineer's Station "P" 333+08.35

-1-



on the centerline of said survey; thence, along a line parallel
with and 115.00 feet westerly from said centerline S. 15°07' E.,
4561.48 feet to a C.H.CMon., and tangent to the last mentioned
course along a curve to the left with a radius of 4115 feet,
through an angle of 6°05', a distance of 436.91 feet to a point
marked by a C.H.C.Mon. distant S. 68°48' W., 115.00 feet from
Engineer's Station "P" 382+94.53 on the centerline of said survey;
thence leaving said parallel line S. 21°12' E., 567.21 feet to a
C.H.C.Mon.; thence, tangent to the last mentioned course along a
curve to the right with a radius of 200 feet, through an angle of
41°47'37" W, a distance of 145.69 feet to a point of reverse curva-
ture marked by a C.H.C.Mon.; thence, from a tangent that bears
S. 20°35'37" W., along a curve to the left with a radius of 324
feet, through an angle of 28°01'28" a distance of 158.47 feet to
a point on the property line common to the lands now or formerly of
the City and County of San Francisco and of Adeline M. Howard et
al, said point being distant along said common property line
N. 89°58'15" E., 617.47 feet from a concrete monument with brass
plate marked ME/11-6; thence, continuing along said curve to the
left with a radius of 324 feet, through an angle of 32°47'39", a
distance of 185.45 feet to a point of compound curvature marked
by a C.H.C.Mon.; thence, from a tangent that bears S. 40°13'30" E.,
along a curve to the left with a radius of 574 feet, through an
angle of 21°41', a distance of 217.23 feet to a C.H.C.Mon.; thence,
S. 61°54'30" E., 380.70 feet to a C.H.C.Mon; thence, tangent to
the last mentioned course along a curve to the right with a radius
of 439 feet, through an angle of 12°53'46", a distance of 98.81
feet to a C.H.C.Mon.; thence, S. 49°00'44" E., 385.06 feet to a
point marked by a C.H.C.Mon. distant S. 40°59'16" W., 115.00 feet
from Engineer's Station "P" 402+36.18 on the centerline of said
survey; thence, along a line parallel with and 115.00 feet westerly,
at right angles from said centerline, from a tangent that bears
S. 49°00'44" E., along a curve to the left with a radius of 4115
feet, through an angle of 1°40'46", a distance of 120.62 feet to
a C.H.C.Mon. and S. 50°41'30" E., 499.20 feet to the property line
common to the lands now or formerly of Adeline M. Howard et al
and of Robert L. Coleman, Jr. et al; thence, continuing along said
parallel line S. 50°41'30" E., 2070.13 feet to a point on the
property line common to the lands now or formerly of Robert L.
Coleman, Jr. et al and of Adeline M. Howard et al, distant along
the last mentioned common property line N. 54°06'30" E., 359.34 feet
from a concrete monument; thence, continuing along said parallel
line S. 50°41'30" E., 1702.60 feet to the property line common
to the lands now or formerly of Adeline M. Howard et al and of
Jesse Moore Hunt Co.; thence, continuing along said parallel line
S. 50°41'30" E., 873.67 feet to a point marked by a C.H.C.Mon.,
distant S. 39°18'30" W., 115.00 feet from Engineer's Station "P"
448+99.03 on the centerline of said survey; thence, leaving said
parallel line from a tangent that bears S. 50°41'30" E., along
a curve to the right with a radius of 150 feet, through an angle
of 79°39'15", a distance of 208.53 feet to a C.H.C.Mon.; thence,
S. 28°57'45" W., 257.73 feet to a C.H.C.Mon.; thence, tangent to
the last mentioned course along a curve to the left with a radius of
250 feet, through an angle of 19°35'15", a distance of 85.47 feet
to a C.H.C.Mon.; thence, S. 9°22'30" W., 163.86 feet to a C.H.C.
Mon.; thence, tangent to the last mentioned course along a curve
to the right with a radius of 25 feet, through an angle of
134°39'15", a distance of 58.75 feet to a point of cusp marked by
a C.H.C.Mon. on the northeasterly line of that certain 60 foot
strip of land deeded by Jesse Moore Hunt Co. to Bayside Co., for
road purposes only, recorded December 21, 1943 in Volume 1097 at
page 172, Official Records of San Mateo County; thence, along the
northeasterly line of said 60 foot strip S. 35°58'15" E., 66.05
feet to a point on the northwesterly line of Millbrae Avenue,

-2-

said point being distant N. 35°58'15" W., 24.76 feet from Engineer's
Station "M" 18+38.40 of said survey; thence, along said line of
Millbrae Avenue N. 54°01'45" E., 792.92 feet to Engineer's Station
"P" 454+41.41 on the centerline of said survey; thence, continuing
along said line of Millbrae Avenue N. 54°01'45" E., 423.62 feet
to a concrete monument on the property line common to the lands
now or formerly of Henry Weiss and of Mills Estate Inc.; thence,
continuing along said line of Millbrae Avenue N. 54°01'45" E., 241.86
feet; thence, N. 35°58'15" W., 25.24 feet to a point marked by a
C.H.C.Mon., distant N. 35°58'15" W., 50.00 feet from Engineer's
Station "W" 3+80.00 of said survey; thence, along a line parallel
with and 50.00 feet northwesterly, at right angles, from the "M"
line of said survey S. 54°01'45" W., 553.21 feet to a line parallel
with and 115.00 feet northeasterly at right angles, from the "P"
centerline of said survey; thence, along the last mentioned parallel
line N. 50°41'30" W., 5091.96 feet to a point marked by a C.H.C.Mon.,
distant N. 39°18'30" E., 115.00 feet from Engineer's Station "P"
403+53.43 on the centerline of said survey; thence, from a tangent
that bears N. 50°41'30" W., along a curve to the right with a radius
of 1739 feet, through an angle of 15°10'30", a distance of 460.58
feet to a point of compound curvature marked by a C.H.C.Mon.;
thence, from a tangent that bears N. 35°31' W., along a curve to
the right, with a radius of 226 feet, through an angle of 82°06',
a distance of 323.84 feet to a point of compound curvature marked
by a C.H.C.Mon.; thence, from a tangent that bears N. 46°35' E.,
along a curve to the right with a radius of 1126 feet, through an
angle of N°40'17", a distance of 91.80 feet to a point on the
property line common to the lands now or formerly of Adeline M.
Howard et al and of the City and County of San Francisco, said
point being distant along said common property line S. 89°58'15" W.,
514.64 feet from a 6" x 6" post scribed M85; thence, continuing
along said curve to the right with a radius of 1126 feet, from a
tangent that bears N. 51°15'17" E., through an angle of 21°28'13",
a distance of 421.91 feet to a point marked by a C.H.C.Mon., distant
S. 17°16'30" E., 143.00 feet from Engineer's Station "Axis"
64+68.57 of said survey; thence N. 17°16'30" W., 286.00 feet to a
C.H.C.Mon. on a line parallel with and 143.00 feet northerly, at
right angles, from said "Axis" line; thence, along said parallel
line S. 72°43'30" W., 129.63 feet to a C.H.C.Mon.; thence, tangent
to the last mentioned course along a curve to the right with a
radius of 426 feet, through an angle of 18°47', a distance of 139.66
feet to a C.H.C.Mon.; thence, N. 88°29'30" W., 458.05 feet to a
C.H.C.Mon.; thence, tangent to the last mentioned course along a
curve to the right with a radius of 449 feet, through an angle of
58°33'54", a distance of 458.95 feet to a point of compound curva-
ture marked by a C.H.C.Mon.; thence, from a tangent that bears
N. 29°55'36" W., along a curve to the right, with a radius of 2439
feet, through an angle of 11°50'52", a distance of 504.34 feet
to a point of compound curvature marked by a C.H.C.Mon., distant
N. 71°55'16" E., 115.00 feet from Engineer's Station "P" 380+76.63
on the centerline of said survey, last said point of compound
curvature is on a line parallel with and 115.00 feet easterly,
at right angles, from said centerline; thence, along said parallel
line from a tangent that bears N. 18°04'24" W., along a curve
to the right with a radius of 3885 feet, through an angle of
2°57'44", a distance of 200.86 feet to a C.H.C.Mon. and N.15°07'W.,
4633.23 feet to a point marked by a C.H.C.Mon., distant
N. 74°53' E., 115.00 feet from Engineer's Station "P" 332+36.60 on
the centerline of said survey; thence, from a tangent that bears
N. 15°07' W., along a curve to the right, with a radius of 450
feet, through an angle of 45°20'30", a distance of 356.11 feet
to a C.H.C.Mon.; thence, N. 30°13'30" E., 558.29 feet to a
C.H.C.Mon.; thence, tangent to the last mentioned course along a
curve to the right with a radius of 250 feet, through an angle
of 35°26'45", a distance of 154.66 feet to a C.H.C.Mon. on a

-3-

Case: 19-30088   Doc# 12131-4   Filed: 04/08/22   Entered: 04/08/22 15:55:54   Page
26 of 92

line parallel with and 52.00 feet southeasterly, at right angles,
from the "S" line of said survey; thence, along said parallel
line N. 65°40'15" E., 169.95 feet to a point marked by a C.H.C.
Mon., distant S. 24°19'45" E., 52.00 feet from Engineer's Station
"S" 7487.56 of said survey; thence, N. 24°19'45" W., 104.00 feet
to a C.H.C.Mon.; thence, S. 65°40'15" W., 161.31 feet to a C.H.C.
Mon.; thence tangent to the last mentioned course along a curve
to the right with a radius of 250 feet, through an angle of
39°23'45", a distance of 171.90 feet to a C.H.C.Mon.; thence,
N. 74°56' W., 397.39 feet to a C.H.C.Mon.; thence, tangent to
the last mentioned course along a curve to the right with a
radius of 300 feet, through an angle of 59°49', a distance of
313.20 feet to a point marked by a C.H.C.Mon., distant N.74°53' E.,
115.00 feet from Engineer's Station "F" 318461.33 on the centerline
of said survey; thence, along a line parallel with and 115.00 feet
easterly, at right angles, from said centerline N. 15°07' W.,
860.64 feet to the south city limit line of the City of South San
Francisco and distant thereon N. 89°57'53" E., 339.83 feet from a
concrete monument at the northeasterly corner of the City of San
Bruno marked ME/11-12; thence continuing along said parallel line
N. 15°07' W., 513.41 feet to a C.H.C.Mon.; thence, tangent to the
last mentioned course along a curve to the right with a radius of
4885 feet, through an angle of 9°50'02.8", a distance of 838.45
feet to the north line of said S.W. ¼ of the S.W. ¼ of Section
27; thence, along said north line and along the north line of
said S.E. ¼ of the S.E. ¼ of Section 28, S. 89°57'53" W.,
230.92 feet to the point of commencement.

CONTAINING 116.352 acres, more or less.

This conveyance of Parcel 1 is made for the purposes of a
freeway and the grantor hereby releases and relinquishes to the
grantee any and all abutter's rights, including access rights,
appurtenant to grantor's remaining property, in and to said
freeway. Excepting and reserving, however, unto grantor, its
successors or assigns, the right of access to the freeway over
and across the courses described above as "N. 35°58'15" W.,
25.24 feet," "N. 17°16'30" W., 286.00 feet" and "N. 24°19'45" W.,
104.00 feet."

Grantor also reserves the right to install, remove and maintain
utility facilities within the two-7'x6' reinforced concrete tunnels
located under said freeway at Engineer's Stations "F" 362436 and
"F" 406+75 on the centerline of said Department of Public Works'
survey.

IN CONSIDERATION for the above described Parcel 1 and for

other good and valuable considerations STATE hereby GRANTS to

CITY all that real property in the County of San Mateo, State

of California, described as:

Parcel 2

All that certain 10.90 acre tract of land described in the
deed from Jonathan M. Peel, et al, to the State of California
recorded January 23, 1942 in Volume 993, page 487, Official
Records of San Mateo County.

STATE does further REMISE, RELEASE and QUITCLAIM unto

CITY all that real property in the County of San Mateo, State of

California, described as follows:

-4-

## Parcel 3

**FIRST**

That portion of the 125 foot strip of land described in the deed from Mills Estate Incorporated, a corporation, to the State of California, recorded August 8, 1925 in Volume 180, page 149, Official Records of San Mateo County, that lies southeasterly of the northeasterly extension of the southeasterly line of San Bruno Avenue.

CONTAINING 18.15 acres, more or less.

**SECOND**

That certain 125 foot strip of land described in the deed from Bayside Company, a corporation, to the State of California, recorded August 3, 1925 in Volume 181, page 159, Official Records of San Mateo County.

**THIRD**

That certain 125 foot strip of land described in the deed from Robert L. Coleman, Jr., et al, to the State of California, recorded December 24, 1926 in Volume 273, page 339, Official Records of San Mateo County.

CONTAINING 1.0 acre, more or less.

**FOURTH**

That portion of the 125 foot strip of land described in the deed from Mills Estate Incorporated, a corporation, to the State of California, recorded August 8, 1925 in Volume 177, page 307, Official Records of San Mateo County, that lies northwesterly of the northeasterly extension of the northwesterly line of Millbrae Avenue.

CONTAINING 2.07 acres, more or less.

AND BE IT FURTHER KNOWN:

FIRST, the Director of Public Works has heretofore found and determined and does hereby find and determine, that the said lands were acquired for State highway purposes and will, because of realignment, no longer be necessary for highway uses or purposes;

SECOND, that this conveyance is executed pursuant to the authority vested in the Director of Public Works by law and, in particular, by the Streets and Highways Code.

-5-

IN WITNESS WHEREOF the parties hereto have executed this
conveyance in duplicate this *19th* day of *December*, 195 3.

CITY AND COUNTY OF SAN FRANCISCO,
a municipal corporation.

By _____
Acting Mayor

By _____
Clerk of the Board of Supervisors

APPROVED:

_____
Director of Property

APPROVED:

_____
Manager and Chief Engineer
Hetch Hetchy Water Supply
Power and Engineering Bureau

FORM APPROVED:

_____
City Attorney
Thomas M. O'Connor



VOL.2562 PAGE 410

State of California
Department of Public Works

FRANK B. DURKEE
Director of Public Works

By _____

RUSSELL S. MUNRO
Deputy Director of Public Works

RECOMMENDED FOR APPROVAL

_____
Metropolitan District
Right of Way Agent

_____
Assistant State Highway Engineer

_____
Deputy State Highway Engineer

_____
Assistant Chief Right of Way Agent

Approved as to form and procedure

_____
Attorney

STATE OF CALIFORNIA }
COUNTY OF SACRAMENTO } ss.

On this ____ day of ____ FEB 25 1954 ____, in the year 19____, before me, ____ ALPHA W. CATCHING, a Notary Public in and for the County of Sacramento, State of California, residing therein, duly commissioned and sworn, personally appeared RUSSELL S. MUNRO, known to me to be the Director of the Department of Public Works of the State of California, described in and that executed the within instrument, and also known to me to be the person who executed the same on behalf of the State of California therein named and he acknowledged to me that the State of California executed the same.

In WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said county and State aforesaid, the day and year in this certificate first above written.

_____
Notary Public in and for the County of Sacramento
State of California

ALPHA W. CATCHING
Notary Public in and for the County of
Sacramento, State of California
My Commission expires April 30, 1957

Case: 19-30088   Doc# 12131-4   Filed: 04/08/22   Entered: 04/08/22 15:55:54   Page 30 of 92

# RESOLUTION

..

RESOLVED by the California Highway Commission that it having approved the manner and terms and conditions of the transaction, the execution by the Director of Public Works on behalf of the State of California of a deed conveying to the City and County of San Francisco those portions of the Bayshore Highway included within the expanded San Francisco Airport of 1947, is hereby authorized and approved.

THIS IS TO CERTIFY that the foregoing is a true and correct copy of the original resolution passed by the California Highway Commission at its meeting regularly called and held on the __17th__ day of __February__, 19__54__, in the City of __Sacramento__, a majority of the members of said Commission being present and voting therefor.

Dated this __19th__ day of __February__ 19 5___

D. H. COOK
ASSISTANT SECRETARY OF THE
CALIFORNIA HIGHWAY COMMISSION

VOL. 2562 PAGE 412



STATE OF CALIFORNIA
City and County of San Francisco } ss

CLERK'S CERTIFICATE

I, _____ John R. McGrath _____ , Clerk of the Board of Supervisors, of the City and County of San Francisco, do hereby certify that the

annexed _____ Ordinance No. 3975 (Series of 1919) _____ ,

is a full, true and correct copy of the original thereof on file in this office.
IN WITNESS WHEREOF, I have hereunto set my hand, and affixed the official

seal of the City and County this 17th day of November , 19 52

_____
Clerk of the Board of Supervisors, City and County of San Francisco

by _____

THE RECORDER PTG. & PUB. CO.

STATE OF CALIFORNIA }
CITY AND COUNTY OF SAN FRANCISCO } ss

On the 17th day of December , in the year One Thousand
Nine Hundred Fifty three, before me, MARTIN MONGAN, County Clerk of
the City and County of San Francisco, and ex officio Clerk of the
Superior Court of the State of California, in and for the City and
County of San Francisco, personally appeared BYRON ARNOLD, Acting
Mayor of the City and County of San Francisco, a municipal
corporation, and JOHN R. McGRATH, Clerk of the Board of Supervisors
of the City and County of San Francisco, known to me to be the Acting
Mayor and the Clerk of the Board of Supervisors of the municipal
corporation described in and who executed the within instrument
and also known to me to be the persons who executed it on behalf
of the municipal corporation therein named, and they and each of
them acknowledged to me that such municipal corporation executed
the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed
my official seal at my office in the City and County of San Francisco,
State of California, the day and year in this certificate first
above written.

Martin Mongan

County Clerk of the City and
County of San Francisco, State of
California, and ex officio Clerk
of the Superior Court of the State
of California, in and for the
City and County of San Francisco.



VOL 2562 PAGE 414

DISTRICT IV

DIVISION OF HIGHWAYS

Mar 2 8 14 AM '54

DIVISION OF HIGHWAYS

Dec 31 9 31 AM '53

DISTRICT IV

2-25-54

DOCUMENT
RECEIVED

1954 JAN 20 AM 10 23

47559AL

APR 6 – 1954

VOL 2562 PAGE 404
47559AL

RECORDED AT REQUEST OF
CALIFORNIA PACIFIC TITLE INSURANCE CO.

APR 6 10 29 AM 1954

OFFICIAL RECORDS
SAN MATEO COUNTY
RECORDER

629

# EXHIBIT 4

This Easement was
granted by the State of the th
#22 State Deeded the Property to
Hildebrand on June 30, 198-



RECORDING REQUESTED BY
State of California

WHEN RECORDED RETURN TO
D-partment of Transportation
P. O. Box 7791 — Reserve 4 a : :
San Francisco, California 94120

ATTN: R/W EXCESS LANDS

SR3771343

RECORDED AT REQUEST OF

Dec 16 12 48 PM '88

VACHU S SLO IN RECORDER
SAN MATEO COUNTY
1441260 RECORDER

3 pp

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Documentary Stamp Tax: $0.00

**DIRECTOR'S DEED**

NOV 1988 03

| HGWLY | COUNTY | ROUTE | POST MILE | NUMBER |
|---|---|---|---|---|
| 4 | SM | 101 | 20.6 | DB-38103-1 |

The STATE OF CALIFORNIA, acting by and through its Director of Transportation, does hereby grant to

PACIFIC GAS AND ELECTRIC COMPANY, a California corporation, AN

EASEMENT for the purposes described herein, upon, over and across

partly

all that real property the ___ City of San Bruno and all in the

County of ___ San Mateo ___, State of California, described as

AN EASEMENT (1) with the right to landscape within and
in connection therewith to plant, grow and care for shrubs
and trees, not to exceed fifteen (15) feet in height,
together with (2) the right to use for ingress thereto and
egress therefrom, and as an appurtenance to the parcel of
land described in the deed from State of California to
Pacific Gas and Electric Company dated April 3, 1986, and
recorded on April 18, 1986, as Recorder's Serial Number
86041007, Official Records of San Mateo County, described as
follows:

COMMENCING at the northeasterly corner of the 0.377-
acre parcel of land conveyed to City of San Bruno by
Director's Deed recorded April 20, 1977 in Volume 7448 at
page 455, Official Records of San Mateo County; thence along
the easterly line of said parcel S. 05°34'07" E.,
111.50 feet to the southwesterly with the length of 0.21 of a foot
described in said deed; thence along said course and the
easterly prolongation thereof N. 84°25'53" E., 115.00 feet;
thence S. 17°58'05" W., 38.46 feet; thence S. 85°13'30" W.,

MAIL TAX
STATEMENTS TO:
Pacific Gas and Electric Co.
77 Beale Street
San Francisco, CA 94106
Form No. Ch-10 (Rev. 8-82)

DOCUMENTARY TRANSFER TAX $ ___ 0.00
☒ COMPUTED ON FULL VALUE OF PROPERTY CONVEYED, OR
☐ COMPUTED ON FULL VALUE LESS LIENS & ENCUMBRANCES
REMAINING THEREON AT THE TIME OF SALE.

Signature ___

CITY OF San Bruno ☐ Unincorporated

983713343

Over The State did not own the property at the time of grant this easement deed; therefore this easement is monitored in the Deed to Hildebrand w
close this easement deed is unclear.
June 30, 1987

80.16 feet to the easterly boundary line of that certain map entitled "Amended Plan of Belle Air Park, San Bruno Station, San Mateo County, California," filed in the Office of the County Recorder of San Mateo County on June 24, 1907, in Book 5 of Maps at page 10; thence along last said line N. 04°38'43" W., 24.52 feet to the southerly line of said 0.377 acre parcel; thence along last said line S. 85°21'17" W., 24.92 feet to the westerly line of that 0.096 acre easement described in said deed; thence along last said line N. 05°34'07" W., 166.57 feet to the northerly line of said parcel; thence along said northerly line, N. 64°25'53" E., 25.63 feet to the point of commencement.

    CONTAINING 12,026 square feet, more or less.

    There shall be no abutter's rights of access appurtenant to the above-described real property in and to the adjacent State Freeway.

    The bearings and distances used in the above description are on the California Coordinate System, Zone 3. Multiply the above distances by 1.0000790 to obtain ground level distances.

    Grantor, its successors or assigns, shall have the right to use said parcel for purposes not inconsistent with grantee's full enjoyment of the rights hereby granted, provided that grantor, its successors or assigns, shall not erect or construct any building or other structure, or drill or operate any well, within said parcel.

    Grantee shall have the further right to install, maintain and use gates in all fences which now cross or shall hereafter cross said parcel.

    The provisions hereof shall inure to the benefit of and bind the successors and assigns of the respective parties hereto.

Subject to special easements if any, restrictions, reservations, and easements of record.

This conveyance is executed pursuant to the authority vested in the Director of Transportation by law and, in particular, by the Streets and Highways Code.

WITNESS my hand and the seal of the Department of Transportation of the State of California, this _____ day of _____ 19__.

STATE OF CALIFORNIA
DEPARTMENT OF TRANSPORTATION

ROBERT K. BEST
Director of Transportation

By _____

EUGENE C. BURLESON
Assistant to the ___

STATE OF CALIFORNIA }
COUNTY OF SACRAMENTO } ss

On this _____ day of _____ in the year 1985 before me AGNES M. BOJORQUES a Notary Public in and for the State of California, residing therein, duly commissioned and sworn, personally appeared _____ EUGENE C. BURLESON _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this instrument as the Attorney in Fact of _____ ROBERT K. BEST _____ Director of Transportation of the State of California, and that he (she) subscribed the name of _____ ROBERT K. BEST _____ as Director of Transportation, and his (her) own name as Attorney, in Fact, and that the State of California executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
AGNES M. BOJORQUES
Notary Public—California
SACRAMENTO COUNTY
My Comm. Exp. June 21, 1988

_____
(Notary)

THIS IS TO CERTIFY That the California Transportation Commission has authorized the Director of Transportation to execute the foregoing deed at its meeting regularly called and was held on the 18th day of November, 1984, in the City of Sacramento.

Dated this 23rd day of November, 1984.

_____
ROBERT I. DAMEN
Chief Deputy Director
CALIFORNIA TRANSPORTATION COMMISSION

3

# EXHIBIT 5

THIS INDENTURE AND AGREEMENT made and
entered into this ____ day of February, 1923, by and
between MILLS ESTATE INCORPORATED, a corporation duly
organized and existing under and by virtue of the laws
of the State of California, hereinafter called "Estate
Company", and PACIFIC GAS AND ELECTRIC COMPANY, a cor-
poration duly organized and existing under and by
virtue of the laws of the State of California, herein-
after called "Electric Company", WITNESSETH that

WHEREAS said Estate Company is the
owner and in possession of that certain tract of land
(hereinafter referred to as said tract of land) lying
and being situate in the County of San Mateo, State
of California, more particularly described as follows,
to-wit:

All that certain portion of Swamp
and Overflowed Lands Survey No. 54 granted
by the State of California to D. O. Mills
by grant dated March 1, 1862, and recorded
in the office of the County Recorder of
San Mateo County, California, June 2, 1862
in Book 1 of patents, Page 62, and more
particularly described as follows:

Beginning at the point where the line
between Townships 3 and 4 South intersects the
East line of the Buri Buri Rancho, thence East
35.64 chains to the ¼ section corner on line
between sections 3 and 34, thence East 20 chains,
thence South 40 chains, thence West 20 chains
to the center of section 3, thence west 4.0 chains
to the eastern boundary of the Buri Buri Rancho,
thence along said boundary North 16½ degrees
east 3.97 chains, North 5½ degrees West 4 chains,
North 60 degrees West 8 chains, North 20½ degrees
East 5.5 chains, North 1 degree West 5 chains,
North 26½ degrees West 15 chains, North 27 degrees
East 4.5 chains, North 14½ degrees West 21.9 chains
to the point of beginning containing 149.18 acres
of land more or less.

And also, adjoining the foregoing on the
north, that certain portion of Swamp and Overflowed
Lands Survey No. 57 conveyed by John A. Stanley
and John R. Wise, as executors of the will of
Charles M. Hitchcock, deceased, to D. O. Mills by
deed dated October 6, 1886, and recorded in the

-1-

office of the County Recorder of San Mateo County,
California, October 15, 1886, in Book 40 of Deeds,
Page 552 and more particularly described as follows:

Beginning at a stake on line between Townships 3 and 4 South, Range 5 West, M. D. M., 14.56
chains east from the corner to sections 3, 4, 33 and
34 and at the intersection of line of the Buri Buri
Rancho, thence on line of said Rancho North 14 degrees 30 minutes West 6.50 chains, North 9 degrees
30 minutes West 15.60 chains, thence East 79.57
chains to the shore of San Francisco Bay, thence
along said shore South 4 degrees East 41.25 chains
to a stake, thence West 40 chains, thence North 20
chains to Township line, thence West 45.64 chains
to the point of beginning containing 255.50 acres
of land more or less.

And also, adjoining the last mentioned foregoing tract on the north, that certain portion
of Swamp and Overflowed Lands Survey #7 granted by
the State of California to Stephen S. Tilton and conveyed through chain of title to D. O. Mills by deed
dated January 5, 1898, and recorded in the office
of the County Recorder of San Mateo County, California, January 10, 1898 in Book 76 of Deeds, page
573 records of said County and more particularly
described as follows:

Beginning at a point on the east boundary
of the Buri Buri Rancho 20 chains North and 8.4
chains East of the corner to sections 33, 34, 3 and
4 on the south boundary of Township 3 South, Range
5 West, M. D. M., thence East 51.50 chains to a
post, thence North 20 chains to a post for a ¼
section corner in the center of section 34, thence
North 20 chains to a post, thence East 32.30 chains
to the shore of the Bay of San Francisco and meander
post; thence along the shore North 61 degrees West
15 chains to mouth of Slough, North 10 degrees East
8.80 chains, thence West on line between sections
27 and 34, 35.0 chains to a ¼ section post, 55.95
chains to a post at the intersection of the east
boundary of the Buri Buri Rancho, thence along said
Rancho line South 24 3/4 degrees West 2.42 chains,
South 12¼ degrees East 16.0 chains, South 56 degrees West 9.50 chains, South 2 5/4 degrees West
9.50 chains, South 32 degrees East 26.0 chains,
South 9¼ degrees East 5.60 chains to the point
of beginning, containing 269.85 acres of land,
more or less; excepting and excluding therefrom
that certain tract of land conveyed by D. O. Mills
to the West Shore Realty Company by deed dated
March 26, 1906 and recorded in the office of the
County Recorder of San Mateo County, California,
June 4, 1906 in Volume 129 of Deeds, Page 164
records of said County; and

Case: 19-30088   Doc# 12131-4   Filed: 04/08/22   Entered: 04/08/22 15:55:54   Page
41 of 92

WHEREAS D. O. Mills, predecessor in
estate of said Estate Company in said tract of land,
by indenture bearing date October 15, 1901 (recorded
in Book 96 of Deeds, at page 6; in the County Recorder's
office of said San Mateo County) conveyed to the Standard
Electric Company, a corporation, its successors and
assigns, a right of way across said tract of land for the
construction, maintenance and operation thereon by said
last named company of electric light, heat and power lines,
consisting of two parallel lines of poles, with wires,
crossarms, insulators, and incidental fixtures and ap-
pliances, which said right of way lies equally on each
side of that certain line which was in said indenture de-
scribed as follows, to-wit:

Beginning at a stake marked T. S. M.1
standing on Section line dividing lands of the
first party from lands of H. H. Taylor in
Section three (3) Township four (4) south range
five (5) west, said stake being east distant
five hundred and thirty three and sixty hun-
dredths (538.60) feet from the easterly line
of the present right of way of the Southern
Pacific Railroad, running thence north thirty
four degrees twenty six minutes (34 degrees 26
minutes) west three hundred and twenty one and
seventy one hundredths (321.70) feet to angle
and stake marked M.2, thence north twenty one
degrees, forty one minutes (21 degrees 41 min-
utes) west thirty nine hundredand fifty six
and twenty five hundredths (3956.25) feet to
angle at stake marked M.3 standing in a fence
in section thirty four (34) township three (3)
south range five (5) west, Mount Diablo Base
and Meridian, said stake standing east distant
eleven hundred and eighty five and seventy
hundredths (1185.70) feet from the easterly
line of the present right of way of the
Southern Pacific Railroad, thence north seven
degrees forty minutes (7 degrees 40 minutes)
west four thousand and two and eighty eight
hundredths (4002.88) feet to angle at stake
marked M 4 B standing twenty three (23) feet
east of a granite monument, said monument
standing sixty seven and ten hundredths (67.10)
feet east of corner to sections 33 1 27 and

-3-

marking the boundary line between sections
twenty-seven (27) and thirty-four (34) and
lands of the first party, and lands of the
South San Francisco Land and Improvement
Company; and

WHEREAS said Standard Electric Company
thereafter constructed said two pole lines on said right
of way; and

WHEREAS title to said right of way, to-
gether with said two electric light, heat and power lines
thereon, was thereafter conveyed and transferred by mesne
conveyances to said Electric Company, and said Electric
Company is now the owner and in possession thereof; and

WHEREAS said Electric Company desires and
proposes to dismantle and remove said two pole lines from

← Remove 2 ply

said right of way, and to construct and use instead thereof

*one Line* → one line of steel towers, together with wires, crossarms and
*of Steel* incidental fixtures and appliances, and thereafter to main-
*Tower* tain and operate such tower line in the place and stead of
said two pole lines; and

WHEREAS in order properly to construct, main-
tain and operate such tower line in the place and stead of
said two pole lines said Electric Company desires to acquire
from said Estate Company a right of way as hereinafter de-

57.5' ← scribed fifty-seven and one-half feet in width lying along-
side and southwesterly of, and contiguous to, the existing
electric tower line right of way of the Sierra and San Fran-
cisco Power Company; and

WHEREAS said Estate Company proposes to grant
said right of way for such tower line to said Electric Company
for the purposes above mentioned, provided that said Electric Com-

-4-

4

pany shall construct said tower line and remove said two
pole lines within five (5) years from date hereof.

NOW, THEREFORE, in consideration of the
premises and the payment to it of the sum of One (1) Dollar,
the receipt whereof is hereby acknowledged, said Estate
Company does hereby grant unto said Electric Company, its
successors and assigns, an easement and right of way for
the purposes hereinafter stated, in, on, across and along
that certain fifty-seven and one-half foot strip of said
tract of land which is more particularly described and
bounded as follows, to-wit:

> By a line commencing at a point in
> the southerly boundary line of said tract of
> land from which a point marking the inter-
> section of said boundary line with the north-
> easterly boundary line of the right of way of
> the Southern Pacific Railroad Company (which
> said point marking said intersection is marked
> by an 8" x 8" post which purports to identify
> same) bears north 89 degrees 50½ minutes west
> 403.5 feet distant, and running thence north
> 54 degrees 01½ minutes west 520.7 feet; thence
> north 31 degrees 16 minutes west 2966.5 feet;
> thence north 5 degrees 42 minutes west 4004.5
> feet; to a point in the northerly boundary line
> of said tract of land; thence along said last
> mentioned boundary line south 89 degrees 50½
> minutes east 59.9 feet; thence south 5 degrees
> 42 minutes east 3990.3 feet; thence south 31
> degrees 16 minutes east 2952.7 feet; thence
> south 54 degrees 01½ minutes east 565.4 feet
> to a point in said first mentioned boundary
> line; thence along said last mentioned boundary
> line north 89 degrees 50½ minutes west 89.5
> feet, more or less, to the point of commencement.

Said fifty-seven and one-half foot right of
way thus granted to said Electric Company is for the use
of said Electric Company, its successors and assigns,
in the construction, reconstruction, maintenance and opera-
tion thereon by said Electric Company, its successors and
assigns, of electric light, heat and power lines, consist-
ing of one (1) line of steel towers and suspended upon and
supported by such towers, all wires which said Electric Com-

-5-

Case: 19-30088    Doc# 12131-4    Filed: 04/08/22    Entered: 04/08/22 15:55:54    Page 44 of 92

pany may from time to time deem to be reasonably required for the transmission and distribution of electricity, and telephone and telegraph wires for the private use of said Electric Company, and also all necessary and proper crossarms, braces, connections, fastenings, and other appliances and fixtures for use in connection with said towers and wires.

Said Estate Company, for the consideration aforesaid, does further grant unto said Electric Company, its successors and assigns, the right, easement or servitude of using said fifty-seven and one-half foot strip of land as a right of way for any and all purposes connected with the erection, construction, reconstruction, replacement, repair, maintenance and use, for the purposes aforesaid, of such towers, wires and appurtenant structures; and also the right of ingress to, and egress from, said strip of land by a practicable route or routes across said tract of land.

In exercising the right of ingress and egress hereby granted, the Electric Company shall, whenever practicable, use existing roads or lanes, and shall repair any damage which may and compensate be caused by its use thereof.

Said Electric Company will pay to said Estate Company all damages of every kind and nature which may be caused to or suffered by said Estate Company, and to any or all of its property of every kind, except said strip of land herein described, by reason of the erection and maintenance of said transmission lines and appurtenances, or any part thereof, or by reason of the electric current conducted thereby, which said damages the Electric Company, by the acceptance of this grant of right of way hereby promises and agrees to pay. The benefit of this undertaking by the Electric Company shall be limited to said Estate Company only, and shall not inure to its successors or assigns.

The Electric Company, in the exercise and enjoyment of the rights hereby granted, shall avoid un-

Case: 19-30088    Doc# 12131-4    Filed: 04/08/22    Entered: 04/08/22 15:55:54    Page 45 of 92

reasonable interference with such use by the Estate Company
and its successors in estate of the aforesaid strip of land
for mining, oil, and agricultural purposes as is not incon-
sistent with the Electric Company's full enjoyment of the
rights hereby granted.

The Electric Company agrees that the respective
towers to be constructed on said right of way shall be of
standard design, and the foundation of each of said towers
shall not exceed in area twenty-five (25) feet square, and
said towers shall be placed as nearly as practicable opposite
the existing towers now maintained by the Sierra and San Fran-
cisco Power Company on its said right of way, and that all
transmission wires to be suspended on Electric Company's said
towers shall be maintained at least thirty feet, and all tele-
phone and telegraph wires at least twenty-five feet, above the
average natural surface of the ground at the lowest part of
such respective wires.

The Electric Company, upon notice and request there-
for from said Estate Company, agrees to raise the wires that
may be suspended and maintained upon said towers so as not to
obstruct or interfere with the use of any railway or trams
operated by electric trolley, or other means, or roadway that
may be constructed across said right of way.

Said Electric Company agrees, and this in-
denture is made and accepted upon the condition, that it
will within five (5) years from date hereof construct said
electric light, heat and power lines consisting of one
line of steel towers and wires, as aforesaid, on the right
of way hereby granted, and within said time remove all
poles, wires and other fixtures now comprising said two
pole transmission lines.

-7-

granted; provided, however, that all trees which the Electric Company is hereby authorized to cut or remove, if valuable for either timber or wood, shall continue to be the property of the Estate Company, but all tops, lops, brush and refuse wood and timber shall be burned or removed by the Electric Company.

The Estate Company and its successors in estate shall not erect or construct, or permit to be erected or constructed, any building, improvement or structure on said right of way which may interfere with the full enjoyment by the Electric Company of the rights hereby granted.

IN WITNESS WHEREOF the Estate Company has signed these presents the day and year first above written.

MILLS ESTATE INCORPORATED,

By _A. B. Sang_
Its President

and by _M. A. Stenefich_
Its Secretary

Signed in the Presence
of

_(signature)_

_(signature)_

-9-

FILED FOR RECORD AT REQUEST OF

FEB B-1973 22 min past 3

Micro County Records

Deputy

PACIFIC GAS AND ELECTRIC
COMPANY, A corporation

February 14, 1923.

DIRECTORS' MEETING

STATE OF CALIFORNIA }
City and County of San Francisco } ss.

On this 23rd day of February in the year One Thousand Nine Hundred and twenty three
before me, FLORA HALL, a Notary Public in and for the City and County of San Francisco, State of California, residing therein,

duly commissioned and sworn, personally appeared A. B. Dewes
M.R. Koefick

known to me to be the President & Secretary respectively
of the corporation described in and that executed the within instrument, and also known
to me to be the persons who executed it on behalf of the corporation therein named, and
they acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at
my office in the City and County of San Francisco, the day and year in this certificate
first above written.

Flora Hall
Notary Public in and for the City and County of San Francisco, State of California

# EXHIBIT 6

DWG.# 24877
202957

CM-O-515498

2303-05-1161

For Portion Quitclaimed Sec 203-164

THIS INDENTURE AND AGREEMENT made and entered

into this 4th day of September 1923, by and between

MILLS ESTATE INCORPORATED, a corporation duly organized

and existing under and by virtue of the laws of the State

of California, hereinafter called "Estate Company", and

PACIFIC GAS AND ELECTRIC COMPANY, a corporation duly

organized and existing under and by virtue of the laws of

the State of California, hereinafter called "Electric

Company", WITNESSETH that

WHEREAS said Estate Company is the owner

and in possession of the following described tract of

land (hereinafter referred to as said tract of land) lying

and being situate in the County of San Mateo, State of Cali-

ornia, described as follows, to-wit:

All that certain portion of Swamp
and Overflowed Lands Survey No. 54 granted
by the State of California to D. O. Mills
by grant dated March 1, 1862, and recorded
in the office of the County Recorder of
San Mateo County, California, June 2, 1862
in Book 1 of Patents, Page 62, and more
particularly described as follows:

Beginning at the point where the
line between Townships 3 and 4 South inter-
sects the East line of the Buri Buri Rancho,
thence East 25.64 chains to the ¼ section
corner on line between sections 3 and 34,
thence East 20 chains, thence South 40 chains,
thence West 20 chains to the center of Section
3, thence West 4.9 chains to the eastern
boundary of the Buri Buri Rancho, thence along
said boundary North 16½ degrees East 2.87
chains, North 52½ degrees West 4 chains, North
80 degrees West 8 chains, North 33½ degrees
East 5.5 chains, North 1 degree West 5 chains,
North 56½ degrees West 15 chains, North 27
degrees East 4.5 chains, North 14½ degrees
West 11.9 chains to the point of beginning
containing 149.18 acres of land more or less.

And also, adjoining the foregoing
on the North, that certain portion of Swamp
and Overflowed Lands Survey No. 57 conveyed

- 1 -



Q 169-97

by John A. Stanley and John H. Wise, as
executors of the will of Charles M. Hitch-
cock, deceased, to D. O. Mills by deed dated
October 8, 1886, and recorded in the office
of the County Recorder of San Mateo County,
California, October 15, 1886, in Book 40 of
Deeds, Page 332 and more particularly described
as follows:

Beginning at a stake on line between
Townships 3 and 4 South, Range 5 West, M.D.M.,
14.36 chains East from the corner to Sections
3, 4, 33 and 34 and at the intersection of
line of the Buri Buri Rancho, thence on line
of said Rancho North 14 degrees 30 minutes
West 16.60 chains, North 9 degrees 30 minutes
West 13.80 chains, thence East 79.57 chains
to the shore of San Francisco Bay, thence
along said shore South 4 degrees East 41.23
chains to a stake, thence West 40 chains,
thence North 20 chains to Township line, thence
West 45.64 chains to the point of beginning
containing 235.60 acres of land more or less.

And also, adjoining the last mentioned
foregoing tract on the North, that certain por-
tion of Swamp and Overflowed Lands Survey #7
granted by the State of California to Stephen S.
Tilton and conveyed through chain of title to D.
O. Mills by deed dated January 3, 1898, and re-
corded in the office of the County Recorder of
San Mateo County, California, January 10, 1898
in Book 76 of Deeds, page 573 records of said
county and more particularly described as follows:

Beginning at a point on the East
boundary of the Buri Buri Rancho 20 chains North
and 8.4 chains East of the corner to Sections
33, 34, 3 and 4 on the South boundary of Township
3 South, Range 5 West, M.D.M., thence East 31.60
chains to a post, thence North 20 chains to a
post for a ¼ section corner in the center of
section 34, thence North 20 chains to a post,
thence East 33.30 chains to the shore of the Bay
of San Francisco and meander post, thence along
the shore North 41 degrees West 15 chains to
mouth of Slough, North 10 degrees East 8.80
chains, thence West on line between sections 27
and 34, 25.0 chains to a ¼ section post, 63.93
chains to a post at the intersection of the East
boundary of the Buri Buri Rancho, thence along
said Rancho line South 24 3/4 degrees West 2.42
chains, South 12¼ degrees East 16.0 chains,
South 58 degrees West 9.50 chains, South 9 3/4
degrees West 9.50 chains, South 32 degrees East
26.0 chains, South 9½ degrees East 5.80 chains
to the point of beginning, containing 289.83
acres of land, more or less; excepting and ex-
cluding therefrom that certain tract of land

-- 2 --

conveyed by D. O. Mills to the West Shore
Realty Company by deed dated March 26, 1906
and recorded in the office of the County
Recorder of San Mateo County, California,
June 4, 1906 in Volume 129 of Deeds, Page
164 records of said County; and

WHEREAS said Estate Company by indenture dated
February 14, 1923 (recorded in Volume 64 of Official Records — 103-35D
of San Mateo County records, at page 406) conveyed to said
Electric Company a certain right of way for the construc-
tion, maintenance and operation of electric light, heat and
power lines, consisting of towers, crossarms, wires, in-
sulators and incidental fixtures, across a portion of said
tract of land; and

WHEREAS said Electric Company desires to acquire
from said Estate Company an additional right of way which
is hereafter described across said tract of land;

NOW, THEREFORE, in consideration of the premises
and the payment to it of the sum of One (1) Dollar, the
receipt whereof is hereby acknowledged, said Estate Company
does hereby grant unto said Electric Company, its successors
and assigns, an easement and right of way for the purposes
hereinafter stated, in, on, across and along that certain
strip of said tract of land which is more particularly des-
cribed and bounded as follows, to-wit:

By a line commencing at a point in the
Northerly boundary line of said tract of land
from which the Northwest corner of Section 34,
Township 3 South, Range 5 West, M.D. & M., (said
corner being marked by a granite monument which
purports to identify the same) bears North 89
degrees 51½ minutes West 237.6 feet distant and
running thence along said Northerly boundary line
South 89 degrees 51½ minutes East 55.4 feet;
thence parallel with and fifty-five feet Easterly
from the Easterly boundary line of that certain
right of way granted by Mills Estate Incorporated,

- 3 -

to the Pacific Gas and Electric Company by
Indenture and Agreement dated February 14, 1923
and recorded in Volume 68 of Official Records 203-33C
at page 206, San Mateo County Records, South 6
degrees 42 minutes East 2405.3 feet; thence
South 5 degrees 07½ minutes West 670.7 feet;
thence South 6 degrees 42 minutes East 81.5
feet; thence South 83 degrees 18 minutes West
57.5 feet to a point from which an 8"x8" post
marking the intersection of the Southerly bound-
ary line of said tract of land with the North-
easterly boundary line of the right of way of the
Southern Pacific Railroad Company bears South 14
degrees 20¼ minutes East 4946.4 feet distant;
thence North 6 degrees 42 minutes West 2.1 feet;
thence North 5 degrees 07¾ minutes East 682.9
feet; thence coinciding with the Easterly bound-
ary line of said last mentioned grant of right
of way, North 6 degrees 42 minutes West 2479.4
feet, more or less, to the point of commencement.

8/19

Said right of way thus granted to said Electric

Company is for the use of said Electric Company, its succes-

sors and assigns, for the construction, reconstruction, main-

tenance and operation thereon by said Electric Company, its

successors and assigns, of electric light, heat and power

lines, consisting of one line of steel towers and, suspended

upon and supported by such towers, all wires which said

Electric Company may from time to time deem to be reasonably

required for the transmission and distribution of electricity,

and telephone and telegraph wires for the private use of said

Electric Company, and also all necessary and proper crossarms,

braces, connections, fastenings and other appliances and

fixtures for use in connection with said towers and wires.

Said Estate Company, for the consideration afore-

said, does further grant unto said Electric Company, its

successors and assigns, the right, easement or servitude

of using said strip of land as a right of way for any and

all purposes connected with the erection, construction, re-

-- 4 --

4

Case: 19-30088    Doc# 12131-4    Filed: 04/08/22    Entered: 04/08/22 15:55:54    Page:
53 of 92

construction, replacement, repair, maintenance and use for the purposes aforesaid of such towers, wires and appurtenant structures, and also the right of ingress to and egress from said strip of land by a practicable route or routes across said tract of land.

In exercising the right of ingress and egress hereby granted, the Electric Company shall, whenever practicable, use existing roads or lanes, and shall repair and compensate any damage which may be caused by its use thereof.

Said Electric Company will pay to said Estate Company all damages of every kind and nature which may be caused to or suffered by said Estate Company, and to any or all of its property of every kind, except said strip of land herein described, by reason of the erection and maintenance of said transmission lines and appurtenances, or any part thereof, or by reason of the electric current conducted thereby, which said damages the Electric Company, by the acceptance of this grant of right of way hereby promises and agrees to pay. The benefit of this undertaking by the Electric Company shall be limited to said Estate Company only, and shall not inure to its successors or assigns.

The Electric Company, in the exercise and enjoyment of the rights hereby granted, shall avoid unreasonable interference with such use by the Estate Company and its successors in estate of the aforesaid strip of land for mining, oil, and agricultural purposes as is not inconsistent with the Electric Company's full enjoyment of the rights hereby granted.

The Electric Company agrees that the respective

- 5 -

Case: 19-30088   Doc# 12131-4   Filed: 04/08/22   Entered: 04/08/22 15:55:54   Page 54 of 92

towers to be constructed on said right of way shall be of standard design, and the foundation of each of said towers shall not exceed in area twenty-five (25) feet square, and said towers shall be placed as nearly as practicable opposite the existing towers now maintained by the Sierra and San Francisco Power Company on its said right of way, and that all transmission wires to be suspended on Electric Company's said towers shall be maintained at least thirty feet, and all telephone and telegraph wires at least twenty-five feet, above the average natural surface of the ground at the lowest part of such respective wires.

The Electric Company, upon notice and request therefor from said Estate Company, agrees to raise the wires that may be suspended and maintained upon said towers so as not to obstruct or interfere with the use of any railway or trams operated by electric trolley, or other means, or roadway that may be constructed across said right of way.

If said Electric Company shall cease to use said transmission lines on said right of way for the purposes, or in the manner herein specified, for a period of one year after the original construction thereof, it shall upon notice of one month in writing given it by said Estate Company, remove said transmission lines and appurtenances from said right of way, and the right hereby conveyed shall at once terminate and be of no further effect; and if said Electric Company shall neglect for the period of two months after receipt of such notice to remove such transmission lines, and all appurtenances thereunto belonging, said Estate Company shall

- 6 -

have the right to remove same and the cost of such removal shall be borne and paid by said Electric Company.

Said Electric Company agrees that upon request therefor by said Estate Company it will furnish, sell and deliver to said Estate Company, its successors and assigns, at the then prevailing rates, as fixed by the Railroad Commission of the State of California, and subject to the Electric Company's then prevailing rules and regulations, such electric power and energy as said Estate Company may desire for use on any of its land in said county lying on the east side of the existing state highway known as the Peninsula Great Highway or El Camino Real.

This grant and all its terms, covenants and conditions, except as herein otherwise stated, shall apply to, bind and benefit the parties hereto, their respective successors and assigns.

The Electric Company shall have the right to erect, maintain and use gates in all fences which now cross or hereafter shall cross said strip of land, and to cut and clear away trees and brush whenever, in its judgment, the cutting and clearingaway of the same shall be necessary for the convenient and safe exercise of the rights granted; provided, however, that all trees which the Electric Company is hereby authorized to cut or remove, if valuable for either timber or wood, shall continue to be the property of the Estate Company, but all tops, lops, brush and refuse wood and timber shall be burned or removed by the Electric Company.

The Estate Company and its successors in estate

- 7 -

7

shall not erect or construct, or permit to be erected or
constructed, any building, improvement or structure on said
right of way which may interfere with the full enjoyment
by the Electric Company of the rights hereby granted.

IN WITNESS WHEREOF the Estate Company has signed
these presents the day and year first above written.

MILLS ESTATE INCORPORATED,

BY _A. B. Davis_
        Its President

And By _M. P. Tenefick_
        Its Secretary

Signed in the Presence

of

_A. D. Venson_

Approved as to Form:

_Duncan Mc. Leod_
Attorney.

STATE OF CALIFORNIA
City and County of San Francisco  } ss.

On this......14th..........day of..September....in the year One Thousand Nine Hundred and..twenty three..
before me, FLORA HALL, a Notary Public in and for the City and County of San Francisco, State of California, residing therein,

duly commissioned and sworn, personally appeared ...A. B. Davis...

..and..... m R Ofenefick...............

known to me to be the..President...and Secretary respectively...
of the corporation described in and that executed the within instrument, and also known
to me to be the persons. who executed it on behalf of the corporation therein named, and
..they..... acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at
my office in the City and County of San Francisco, the day and year in this certificate
first above written.

_Flora Hall_
Notary Public in and for the City and County of San Francisco, State of California

APPROVED _A. H. Comfort_
NOA. LAND DEPT.
CORRECT AS TO



L.0017A

RIGHT OF WAY GRANT

from

MILLS ESTATE INCORPORATED,
a corporation

Compared
to Book
Page

PACIFIC GAS AND ELECTRIC COMPANY;
a corporation

_Sept. d __, 1923.

FILED FOR RECORD AT REQUEST OF
American Railway Exp Co
SEP 12 1923 at 50 min. past 1
o'clock, C. M, in Vol. 87 of
OFFICIAL RECORDS page 322-9
San Mateo County Records.

T. C. Kirk
Recorder.

By Cedora H. Clayton
Deputy Recorder.

$X 00

36

Scale 1 inch = 84.62 feet





## Legend

▨ Parcel One - Property In Question, Fee

▦ Parcel Two - Easement

☐ Item No. 5 - Easement for Poles & Wires
In 11/13/1901 Bk96 Pg6 of Deeds
The exact location of the easement
cannot be determined and is not plottable

☐ Item No. 6 - Easement for Electric
Transmission Lines
In 03/21/1910 Bk177 Pg395 of Deeds
The exact location of the easement
cannot be determined and is not plottable

☐ Item No. 7 - Easement for Power Lines
In 03/05/1923 Bk64 Pg406 of Official Records
The exact location of the easement
cannot be determined and is not plottable

▨ Item No. 8 - Easement for Electrical Facilities
In 03/03/1923 Bk68 Pg208 of Official Records
Affects said portion as described in the document

▨ Item No. 10 - Easement for Steel Towers & Wires
In 09/12/1923 Bk87 Pg328 of Official Records
Affects said portion as described in the document

☐ Item No. 12 - Easement for Surface Drainage & other
In 09/06/1930 Bk495 Pg166 of Official Records
The exact location of the easement
cannot be determined and is not plottable

☐ Item No. 13 - Easement for Drainage & other
In 10/06/1932 Bk578 Pg88 of Official Records
The exact location of the easement
cannot be determined and is not plottable

**Chicago Title Company**
675 N First Street, Suite 400
San Jose, CA 95112

| Title Order No. : FWTO-3771800128, Preliminary Report dated March 1, 2018 | Drawing Date : 06/21/2019 - FNFI |
| Reference : | Assessor's Parcel No. : 020-155-030 |
| Property : 809 Walnut Street, San Bruno, CA | Data : |

This material is being furnished as a courtesy only by the ... and other fees, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

# EXHIBIT 7

203-21"A"

Also see 203-351"

2304-05-0076

This Grant of Right of Way made this 7th day of December, 1909, by and between D. O. Mills, of the City of New York, State of New York, hereinafter called first party, and Sierra and San Francisco Power Company, a corporation organized and existing under the laws of the State of California, having its principal place of business at Millbrae, in the County of San Mateo, State of California, hereinafter called second party,

Witnesseth:

That the first party, for and in consideration of the sum of Ten Dollars ($10.00), gold coin of the United States of America, to him in hand paid by the second party, the receipt of which is hereby acknowledged, does hereby grant unto the second party, and to its successors and assigns forever, the right to erect, maintain and operate two electric transmission lines upon, over and along two certain strips of land sixty feet in width, in the County of San Mateo, State of California, each of which strips, except as hereinafter described, lies parallel with and adjacent to the northeasterly line of the right of way granted by the first party to Standard Electric Company of California by deed dated the 16th day of October, 1901, and recorded on the 13th day of November, 1901, in the office of the County Recorder of the County of San Mateo, State of California, in Book 96 of Deeds, at page 6 thereof, and of each of which strips respectively the center line is described as follows:

1. Beginning at a point on the boundary line between the land of D. O. Mills, known as "Millbrae Farm", and the land of Ansel M. Easton, known as "Blackhawk Ranch", in the southwest quarter of Section Twelve (12) Township Four (4) South, Range Five (5) West, Mount Diablo Base and Meridian, distant nine hundred and ninety-five (995) feet measured northeasterly along said boundary line from the northeasterly line of the right of way of the South

1.

Case: 19-30088   Doc# 12131-4   Filed: 04/08/22   Entered: 04/08/22 15:55:54   Page 61 of 92

ern Pacific Railroad Company (and fifty-six and two tenths (56.2)
feet northeasterly along the said boundary line from the center
line of the right of way of Standard Electric Company of Califor-
nia); thence parallel with the said Standard Electric Company's
right of way north fifty-seven degrees, three minutes (57° 3')
west forty-nine hundred and three (4903) feet, more or less, to a
point on the northwesterly boundary line of the said land of
D. O. Mills distant nine hundred and forty-nine (949) feet meas-
ured northeasterly along the said boundary line from the north-
easterly line of the right of way of the Southern Pacific Rail-
road Company (and sixty (60) feet northeasterly along the said
boundary from the center line of the right of way of Standard
Electric Company of California); all as shown and delineated up-
on Map No. 1 hereto attached and hereby made a part hereof.

_B._  Beginning at a point on the boundary line between the
land of D. O. Mills at San Bruno and the land of H. H. Taylor and
near the center line of Section Three (3) Township Four (4) South,
Range Five (5) West, Mount Diablo Base and Meridian, distant six
hundred and two (602) feet, more or less, due east of the north-
easterly line of the right of way of the Southern Pacific Railroad
Company (and sixty-seven and seven tenths (67.7) feet due east
of the center line of the right of way of Standard Electric Com-
pany of California); thence parallel with the right of way of
said Standard Electric Company of California north thirty-four
degrees, thirteen minutes (34° 13') west three hundred and fifty-
three feet, more or less; thence parallel with the right of way
of said Standard Electric Company of California north twenty-one
degrees, twenty-eight minutes (21° 28') west thirty-nine hundred
and forty-six (3946) feet, more or less; thence diverging from
the right of way of said Standard Electric Company of California
north six degrees, fifty-five minutes (6° 55') west thirty-nine

2.

hundred and eighty-three (3983) feet, more or less, to a point on
the north boundary of the said land of D.O. Mills distant thirty and
two tenths (30.2) feet due east from the northwest corner of said
land and one hundred and eighty-four and two tenths (184.2) feet
due east of the corner of Sections 27, 28, 33 and 34; all as shown
and delineated upon Map No.2 hereto attached and made a part hereof.

It is mutually agreed between the parties hereto that this
grant of right of way is made and accepted upon the following
terms and conditions:

That the second party shall use the right of way hereby grant-
ed only for the purposes and in the manner herein stated.

That the towers of one of said transmission lines shall center
upon a line parallel with and distant 12 1/2 feet southwesterly from
the center line of the sixty foot strips above described, and the
towers of the other transmission line shall center upon a line par-
allel with and distant 17 1/2 feet northeasterly from the center
line of the sixty foot strips above described; that said towers
shall be of standard design and self-supporting; that the foundation
and base of each of said towers shall not exceed in area twenty (20)
feet square, provided that the foundation and base of said towers
at the two angles of the lines may where proper construction may re-
quire be twenty-five (25) foot square; that no part of said trans-
mission lines, excepting the towers themselves, shall be at a height
less than twenty-five (25) feet above the average natural surface of
the ground; that along each transmission line the said towers shall
be set as nearly as practicable at a uniform distance of eight hun-
dred (800) feet apart, provided that no tower shall be erected with-
in seventy-five (75) feet of the northerly and southerly boundary
lines of the two strips described in this right of way; and that
the towers of one transmission line shall be set as nearly as
practicable opposite to the towers of the other transmission
line in respect to a common point on, and at right angles with
the said center line of the said right of way; and that upon

3.

each of said towers there shall be suspended and maintained all necessary conductors and non-conductors of electricity, together with all the necessary appliances, insulators, connections and fastenings for the safe and efficient transmission of electric current for any and all purposes for which such current is now or may be hereafter used.

That the second party will, upon notice and request therefor from the first party, raise the wires that may be suspended and maintained upon said towers so as not to obstruct or interfere with the use of any railway or tramn operated by electric trolley or other means or roadway that may be constructed across or beneath said line.

That the second party will pay to the first party all damages of every kind and nature which may be caused to or suffered by the first party, and to any or all of his property of every kind, except to the strips of land herein described, by reason of the erection and maintenance of said transmission lines and appurtenances, or any part thereof, or by reason of the electric current conducted thereby, which said damages the second party, by the acceptance of this grant of right of way hereby promises and agrees to pay.

That the second party shall have the right to enter upon the said sixty foot strips of land along which said transmission lines run for the purposes of erection and maintaining said transmission lines and their appurtenances and of making all necessary repairs to or renewals of the same, provided that the second party shall indemnify and forever save harmless the first party from all damages of every kind and nature which may be caused to or suffered by him by reason of such entry, including all loss and damage that may be sustained or suffered by him by reason of or on account of

4.

injuries that may be done to or suffered by the agents, servants
or employees of the second party by or from cattle or other live
stock, or by or from any other cause whatsoever, while such agents,
servants or employees are upon the lands and premises of the first
party pursuant to this grant of right of way.

That if the second party ceases to use said transmission
lines, or either of them, for the purposes or in the manner here-
in specified, for a period of one year, it shall, upon notice of
one month in writing given by the first party, remove said trans-
mission lines and appurtenances from said right of way, and the
right hereby conveyed shall at once terminate and be of no fur-
ther effect; and if the second party shall neglect, for the per-
iod of two months after receipt of such notice, to remove said
transmission lines, and all appurtenances thereunto belonging,
then the first party shall have the right to remove the same, and
the cost of such removal shall be borne and paid by the second
party.

That the second party shall furnish to the first party,
without unnecessary delay, a map of the location of the towers to
be erected hereunder, which map shall be filed in the office of
the County Recorder of the County of San Mateo, State of Califor-
nia, and a copy of which said map shall be herewith attached and
made a part of this grant; that pending the preparation of said
map, the second party shall have the right to proceed with the lo-
cation and erection of the first line of towers herein specified.

That upon request of the first party, the second party will
furnish, sell and deliver to the first party, at the price here-
inafter named, for use on the lands now owned by the first party
in the County of San Mateo, State of California, such electric
power and energy as the first party may desire for such use on
such lands; that the first party will pay to the second party

5.

one and one-half cents per kilowatt hour on the basis of a guaranteed load factor of not less than fifty per cent, provided that the power and energy to be delivered to the first party at the above price shall be delivered and measured at the voltage of the transmission lines, and that the first party shall furnish all the necessary switches and other appurtenances for receiving and measuring such delivered power and energy.

That this grant and all of its terms, covenants and conditions shall apply to, bind and benefit the first party, his heirs, legal representatives and assigns, and the second party, its successors and assigns.

In Witness Whereof, the first party has hereunto set his hand in triplicate, and the second party, by resolution of its Board of Directors, has caused this instrument to be signed in triplicate in its corporate name and under its corporate seal by its President and Secretary, the day and year first above written.

Witness to signature of
D.O.Mills at his request:

Witness to the signature
of Chas. H. Belick at his request

Witness to H.F.Jackson
Signature, W.L.McKinley

Sierra & San Francisco Power Co.

Acting Vice President.

Vice Secretary.

## State of California,

County of San Francisco

205-217

On this ___8th___ day of ___December___ A. D. 1909,
before me, ___O. A. Eggers___
a Notary Public in and for said ___City and___ County, residing therein,
duly commissioned and sworn, personally appeared ___H. H. Taylor___
known to me to be the same person whose name is subscribed to the within instrument, as
a witness thereto, who, being by me duly sworn, deposed and said, that he resides in the
___City and___ County of ___San Francisco___ State of ___California___
that he was present and saw ___D. O. Mills___, personally
known to him to be the same person described in, whose name is subscribed to and who
executed the said Instrument as a party thereto, sign the same; and that he the affiant,
then and there subscribed his name to said Instrument as a witness.

**In Witness Whereof,** I have hereunto set my hand and
affixed my Official Seal, at my office in the ___City and___
County of ___San Francisco___, the day and year
in this Certificate first above written.

___O. A. Eggers___
**Notary Public.**
In and for the City and County of
San Francisco, State of California.

Crocker's Blank No 102 N.—ACKNOWLEDGMENT—WITNESS.    [149.]    H. S. CROCKER Co., San Francisco and Sacramento, Cal.

STATE OF CALIFORNIA,
CITY AND COUNTY OF SAN FRANCISCO.  } ss.

On this ___11___ day of ___December___, in the year nineteen hundred and nine,
before me, R. B. TREAT, a Notary Public in and for the said City and County of San Francisco, State of California,
residing therein, duly commissioned and sworn, personally appeared ___Charles N. Black___
and ___H. H. Fricken___
known to me to be the ___Acting Vice President___
and ___Assistant Secretary___ respectively
of ___Associated Oil San Francisco Power Co.___
the corporation that executed the within and annexed instrument, and also known to me
to be the persons who executed said instrument on behalf of the corporation therein
named, and acknowledged to me that such corporation executed the same.

In Witness Whereof, I have hereunto set my hand and affixed my official seal
the day and year in this certificate first above written.

___R. B. Treat___
Notary Public in and for the City and County of San Francisco, State of California

CROCKER BUILDING

1062

7



3064

203-21/4.

Grant of Right of Way.

D. O. Mills

to

Sierra and San Francisco
Power Company, a Corpor-
ation.

December 7th, 1908.

JOHN FLOURNOY,
Attorney at Law,
San Francisco, Cal.

# Poor Quality Original

The following page was scanned from a poor quality original.

The legibility of the resulting image may limited.

9



MAP Nº 1, being a part of
Grant of Right of Way dated
December 1909 D.O.Mills to
Sierra and San Francisco
Power Company.

# Poor Quality Original

The following page was scanned from a poor quality original.

The legibility of the resulting image may limited.



MAP Nº 2, being a part of Grant of Right of Way, dated 7th December 1889, D.O. Mills to Sierra and San Francisco River Company.

Case: 19-30088   Doc# 12131-4   Filed: 04/08/22   Entered: 04/08/22 15:55:54   Page 72 of 92

# EXHIBIT 8

[illegible]

My commission expires [illegible]

RECORDED at request of California Pacific Title Insurance Company [illegible] at 20 min. past 4 o'clock, P.M. San Mateo County Records. [illegible] Deputy Recorder. [illegible] Compared by R

RIGHT OF WAY

MILLS ESTATE INCORPORATED

to

PACIFIC GAS AND ELECTRIC COMPANY

THIS INDENTURE AND AGREEMENT made and entered into this [illegible] day of [illegible] [illegible], by and between MILLS ESTATE INCORPORATED, a corporation duly organized and existing under and by virtue of the laws of the State of California, hereinafter called "Estate Company", and PACIFIC GAS AND ELECTRIC COMPANY, a corporation duly organized and existing under and by virtue of the laws of the State of California, hereinafter called "Electric Company", WITNESSETH that:

WHEREAS said Estate Company is the owner and in possession of that certain tract of land (hereinafter referred to as said [illegible]) lying and being situate in the County of San Mateo, State of California, more particularly described as follows, to-wit:

All that certain portion of [illegible] Lease [illegible] No. [illegible] granted by the State of California to [illegible] and recorded in the office of the County Recorder of [illegible] California, June [illegible] [illegible] particularly described as follows:

[illegible]

And also, [illegible]

[illegible]

And also, [illegible]

[illegible]

Case: 19-30088 Doc# 12131-4 Filed: 04/08/22 Entered: 04/08/22 15:55:54 Page 74 of 92

Case: 19-30088   Doc# 12131-4   Filed: 04/08/22   Entered: 04/08/22 15:58:54   Page
75 of 92

that certain fifty-seven and one-half feet strip of said tract of land more particularly described and bounded as follows, to-wit:

By a line commencing at a point in the southerly line of said tract of land from which a point marking the intersection of said line with the northeasterly boundary line of the Southern Pacific Railroad Company's land... bears... by an 0° 0' 0" post... 500 minutes west 80.3 feet... 34 degrees... minutes east... minutes west 568.5 feet, thence south... feet to a point in the... along said line... 50.9 feet; thence... 21 degrees 10 minutes east... feet; thence... west 568.5 feet to a point in said first additional... boundary line north 80 degrees 00 minutes east 80.0 feet, more or less, to the point of commencement.

Said fifty-seven and one-half feet right of way also granted to said Electric Company is for the use of said Electric Company, its successors and assigns, in the construction, reconstruction, maintenance and operation thereof, by said Electric Company, its successors and assigns, of electric light, heat and power lines, consisting of one (1) line of steel towers and, supported upon and supported by said towers, all wires which said Electric Company may from time to time deem to be reasonably required for the transmission and distribution of electricity, and telephone and telegraph wires for the private use of said Electric Company, and also all insulators and other apparatus, poles, crossarms, fixtures, and other appliances and fixtures for use in connection with said towers and wires.

Said Electric Company, for the consideration aforesaid, does further grant unto said Electric Company, its successors and assigns, the right, easement or servitude of using said fifty-seven and one-half feet strip of land as a right of way for any and all purposes connected with the erection, construction, reconstruction, replacement, repair, maintenance and use, for the purposes aforesaid, of such towers, wires and appurtenant structures; and also the right of ingress to, and egress from, said strip of land by a practicable route or routes across said tract of land.

In exercising the right of ingress and egress hereby granted, the Electric Company shall, whenever practicable, use existing roads or lands, and shall repair and compensate any damage which may be caused by its use thereof.

Said Electric Company will pay to said Estate Company all damage of every kind and nature which may be caused by or suffered by said Estate Company, and to any or all of its property of every kind, except said strip of land herein described, by reason of the erection and maintenance of said transmission lines and appurtenances, or any part thereof, or by reason of the electric current conducted thereby, which said damages the Electric Company, by the acceptance of this grant of right of way hereby promises and agrees to pay. The benefit of this undertaking by the Electric Company shall be limited to said Estate Company only, and shall not inure to its successors or assigns.

The Electric Company, in the exercise and enjoyment of the rights hereby granted, shall avoid unreasonable interference with such use by the Estate Company and its successors in estate of the aforesaid strip of land for mining, oil, and agricultural purposes or as is not inconsistent with the Electric Company's full enjoyment of the rights hereby granted.

The Electric Company agrees that the respective teams to be constructed in said right of way shall be of standard design, and the foundation of each of said towers shall be... and in area twenty-five... feet square, the said towers shall be spaced at...

Case 19-30088   Doc# 12131-4   Filed 04/08/22   Entered 04/08/22 15:55:54   Page 76 of 92

A.S.D
M.R.K.



telephone and telegraph wires at least twenty-five feet, above the average natural surface of the ground at the lowest part of such respective wires.

The Electric Company, upon notice and request therefor from said Estate Company, agrees to raise the wires that may be suspended and maintained upon said towers so as not to ......... or interfere with the use of any railway or tram operated by electric trolley, or other wises, or roadway that may be constructed across said right of way.

Said Electric Company agrees, and this indenture is made and accepted upon the condition, that it will within five (5) years from date hereof construct said electric line, and its power lines consisting of one line of steel towers and wires, as aforesaid, on the right of way hereby granted, and within said time remove all poles, wires and other fixtures now comprising said two pole transmission lines.

If said Electric Company shall cease to use said transmission lines on said right of way for the purposes, or in the manner herein specified, for a period of one year after the original construction thereof, it shall upon notice of one month in writing given it by said Estate Company, remove said transmission lines and appurtenances from said right of way, and the right hereby conveyed shall at once terminate and be of no further effect; and if said Electric Company shall neglect for the period of two months after receipt of such notice to remove such transmission lines, and all appurtenances thereunto belonging, said Estate Company shall have the right to remove same and the cost of such removal shall be borne and paid by said Electric Company.

Said Electric Company agrees that upon request therefor by said Estate Company it will furnish, sell and deliver to said Estate Company, its successors and assigns, at the then prevailing rates, as fixed by the Railroad Commission of the State of California, and subject to the Electric Company's then prevailing rules and regulations, such electric power was enough as said Estate Company may desire for use on any of its land in said county lying on the west side of the existing state highway known as the Peninsula Great Highway or El Camino Real.

This grant and all its terms, covenants and conditions, except as herein otherwise stated, shall apply to, bind and benefit the parties hereto, their respective successors and assigns,

The Electric Company shall have the right to erect, maintain and use gates in all fences which are needed or shall hereafter erect said strip of land, and to cut and clear away trees and brush whenever, in its judgment, the cutting and clearing away of the same shall be necessary for the convenient and safe exercise of the rights hereby granted; provided, however, that all trees which the Electric Company is hereby authorized to cut or remove, if valuable for either timber or wood, shall continue to be the property of the Estate Company, but all tops, lops, brush and refuse wood and timber shall be burned or removed by the Electric Company.

The Estate Company and its successors in estate shall not erect or construct, or permit to be erected or constructed, any building, improvement or structure on said right of way which may interfere with the full enjoyment by the Electric Company the ......... granted.

IN WITNESS WHEREOF the Estate Company has signed these presents the day and year first there written.

............ ESTATE INCORPORATED,

By A. B. Davis   Its President

and by M. A. .........

Approved as to form

    Duncan A McLeod

STATE OF CALIFORNIA

City and County of San Francisco )SS .

        On this 23rd day of February in the year One ████████ ████ █████ ███
twenty three before me, FLORA HALL, a Notary Public in and for the ███ ████ ██████████
San Francisco, State of California, residing therein, duly ████████████████████
appeared A. B. Davis and M. H Essefict known to me to be the Pre█████ ███ ██████████
respectively of the corporation described in and that ██████ ██ ███████████████
also known to me to be the persons who executed it on behalf of the corporation therein
named, and they acknowledged to me that said corporation executed the same.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal
at my office in the City and County of San Francisco, the day and year in this certificate
first above written.

    ((SEAL))           Flora Hall

                Notary Public in and for the City and County of San Francisco,
                State of California

    RECORDED at request of American Railway Co Mar 5 1925 at 30 min. past 11 o'clock,
A.M. San Mateo County Records. 7. C. Rice, Recorder.  22123  Compared by ██

---

MILLS ESTATE INCORPORATED      DEED  810 ██████████ S. S. T. S.

    to                    Stamp Cancelled.

PACIFIC GAS AND ELECTRIC COMPANY

    THIS INDENTURE AND AGREEMENT made and entered into this 14 day of February,
1925, by and between MILLS ESTATE INCORPORATED, a corporation duly organized and existing
under and by virtue of the laws of the State of California, hereinafter called
"Grantor", and PACIFIC GAS AND ELECTRIC COMPANY, a corporation duly organized
and existing under and by virtue of the laws of the State of California, hereinafter called
"Grantee", WITNESSETH that

    WHEREAS said Grantor is the owner and in possession of that certain tract of land
(hereinafter referred to as said tract of land) lying and being situate in the County
of San Mateo, State of California, more particularly described as follows, to-wit:

        That certain portion of Rancho and Overflowed Lands Survey
        ██ granted by the State of California in track █. System and
        approved by Land J. System to D. O. Mills by deed dated May 13
        1925, and recorded in the office of the County Recorder of San Mateo County
        California, June 1, 19██ in Book 3 of Deeds ███ ████ ███████
        said County, more particularly described as follows

        Beginning at Station No. 22 of the S. E. Survey of the Rancho ████████,
        thence along the █████████ boundary of the Rancho North ██ degrees West 14
        ██████ ██████████████████████████████████████████████████
        ██████████████████████████████████████████████████████ East
        ██████████████████████████████████████████████████████████
        Bay of San Francisco, thence South ██ degrees East 1,500 chains, thence to the
        point of beginning containing 130.06 acres of land more or less.

        And also, ████████ the above the that certain portion of Rancho and
        Overflowed Lands Survey ██ conveyed by Thomas Taylor to D. O. Mills by deed dated
        May 20th, 19██, recorded ██████ in the office of the County Recorder of San Mateo
        County, California, on ███████, 19██, in Book 3 of Deeds, page 384, records of said
        County said Survey ██ ██████ being granted by the State of California to Edward
        ██████ September ██, ██████████████████████

        Beginning at Station No. ██ S. E. Survey of Short Said Rancho,
        thence along boundary of Rancho North ██ degrees East ██ chains, to a lane
        thence along the line of the lands of D. O. Mills and ████████ thence running
        ██████████ of land more or less ████████████████████████

# EXHIBIT B

**RECORD OF SURVEY NO.** 3259



# EXHIBIT C



**Pacific Gas and Electric Company**

Scott Brady
Land Agent

408.282.7543 (Office)
Scott.Brady@pge.com

Land Management

111 Almaden Boulevard
Room 814
San Jose, CA 95113

October 10, 2018

Mr. Amir Shahmirza
KOMIR, Inc.
10 Rollins Road, Suite 217
Millbrae, CA 94030

Subject:     800 Walnut Street, San Bruno, CA – Assessor's Parcel Number (APN) 020-155-030
             PG&E Electric Transmission Easements

Dear Mr. Shahmirza:

PG&E has completed its review of the Land Survey Report that you submitted on August 28, 2018 and the appurtenant information provided by your e-mail, dated Sep 24, 2018. PG&E's findings and its position regarding the PG&E easements located within your property and as stated in PG&E's June 5, 2018 letter and its e-mail dated July 2, 2018, is unchanged.

As stated in PG&E's previous correspondence, PG&E maintains and operates electric transmission tower line facilities within your property (APN 020-155-030), namely the Martin-San Francisco Airport 115kV, San Mateo-Martin #6 115kV, Martin-Millbrae #1 115kV, East Grand-San Mateo 115kV, San Mateo-Martin #3 115kV and San Mateo-Martin #4 115kV facilities. These facilities were initially installed near the time its easements were acquired in 1910 and 1923 and have been in operation continuously. The above referenced facilities, from PG&E's Southerly Terminal, located immediately north of your property and towards the south, are covered by the following grants of easements.

PG&E Land Document (LD) #2304-05-0076, recorded November 21, 1910 in Vol. 177, Pg. 393; LD #2304-05-0096, recorded March 3, 1923 in Vol. 68, Pg. 208; and LD #2303-05-1151, recorded September 12, 1923 in Vol. 87, Pg. 328; and LD #2303-05-1152, recorded March 3, 1923 in Vol. 64, Pg. 406: at the San Mateo County Recorder's Office. Copies of these documents were previously provided.

PG&E has no quitclaims on file affecting the aforesaid easements within your property. PG&E would not quitclaim these land rights while the easements are being occupied by the above referenced PG&E facilities.

Sincerely,

Scott Brady
Land Agent

cc (electronically):     File

# EXHIBIT D



SCALE: 1" = 40'
JANUARY 2018





PREPARED BY:

MICHAEL S. MAHONEY, PLS

NO. 5077
Exp. 10/31/19

**Map labels:**

HWY 101

I-380 RAMP

STATE OF CALIFORNIA

SAN BRUNO CREEK FLOOD CONTROL NORTH CHANNEL(N2)

PROPOSED ACCESS (N1)

PUMP STATION (N3)

SAN BRUNO AVE.

PG&E EASEMENT FOR LANDSCAPE AND ACCESS PER 87101925 O.R.

10' PACBELL COMMUNICATIONS EASEMENT WITH ACCESS RIGHTS, PER 87101925 O.R.

10' CITY OF SAN BRUNO SEWER EASEMENT 24" RCP SANITARY SEWER PER 87101925 O.R.

OVERHEAD POWER LINES (N4)

ACCESS ROAD (N1)

WALNUT ST. (50.00' WIDE)

"BELLE AIRE PARK" 5 MAPS 10 BLOCK 33    APN 020-155-010

"BELLE AIRE PARK" 5 MAPS 10 BLOCK 32    APN 020-156-010

PORTION OF LOT 22

PORTION OF LOT 33    LOT 33  LOT 34  LOT 35  LOT 36  LOT 37  LOT 38

LOT 1  LOT 2  LOT 3  LOT 4  LOT 5  LOT 6  LOT 7  LOT 8  LOT 9

PORTION OF LOT 10 APN 020-161-001 PORTION OF LOT 11

PORTION OF LOT 13 APN 020-161-001 PORTION OF LOT 14

PORTION OF LOT 15 APN 020-161-001 PORTION OF LOT 16

PORTION OF LOT 18 APN 020-161-100 PORTION OF LOT 17

PORTION OF LOT 19 APN 020-161-130 PORTION OF LOT 20

PORTION OF LOT 22 APN 020-161-100 PORTION OF LOT 21

DRIVEWAY IN CONCRETE SIDEWALK

PORTION OF LOT 23 APN: 020-161-110

7TH AVENUE (60.00' WIDE)

**LEGEND**

— KOMIR INC. OWNERSHIP BOUNDARY OF EASEMENT AS NOTED
— ADJOINING PROPERTY LINES
— ORIGINAL LOT LINES PER SUBDIVISION

**NOTES**

(N1) ONSITE ACCESS ROAD CONNECTS WALNUT STREET RIGHT-OF-WAY WITH LANDS OF THE STATE OF CALIFORNIA. THE PROPOSED ACCESS ACROSS THE LANDS OF THE STATE OF CALIFORNIA WOULD CONNECT THE LAND LOCKED PORTION OF THE KOMIR, INC. PROPERTY WITH THE EXISTING ACCESS ROAD AND THE CITY RIGHT OF WAY ON 7TH AVENUE AT THE EXISTING CONCRETE DRIVEWAY.

(N2) NO RECORD DOCUMENTATION FOUND FOR THE RIGHT-OF-WAY FOR THE SAN BRUNO FLOOD CONTROL NORTH CHANNEL.

(N3) NO RECORD DOCUMENTATION FOUND FOR THE LANDS COMPRISING OF THE EXISTING PUMP STATION.

(N4) NO RECORD DOCUMENTATION FOR THE EXISTING OVERHEAD POWER LINES LYING 11± EASTERLY OF THE WESTERLY PROPERTY LINE OF KOMIR, INC.

**NOTES (CONT.)**

(N5) DEED FROM THE STATE OF CALIFORNIA TO NEIL & MELANIE HILDEBRAND PROVIDES ACCESS FROM THE GRANTOR (STATE OF CALIFORNINA) WHO OWNS THE ADJACENT LANDS TO THE GRANTEE (NEIL & MELANIE HILDEBRAND).

(N6) THE FLOOD CONTROL CHANNEL AND PUMP HOUSE (ITEMS 1 & 2) ARE MAINTAINED BY THE CITY OF SAN BRUNO THROUGH AN AGREEMENT WITH COUNTY OF SAN MATEO FLOOD CONTROL DEPARTMENT.

| | | | | |
|---|---|---|---|---|
| JOB#: 2018.1001 | *Professional Land Services* LAND DEVELOPMENT SPECIALISTS (650) 244-9667 jjgmahoney@gle-corp.com 901 Sneath Ln, Suite 117 San Bruno, CA 94066 | DESIGNED: JKD | PREPARED FOR: **ASI CONSULTING ENGINEERS** 10 ROLLINS ROAD, #217 MILLBRAE, CA 94030 | TITLE: REAL ESTATE SUMMARY MAP WITH AERIAL 0 WALNUT STREET SAN BRUNO, CA 94066 |
| DATE : 01/15/18 | | DRAWN: JKD | | |
| 100% SUBMITTAL | | APPROV'D: MSM | | SHEET 1 OF 1 |

NO.    REVISIONS    DATE

Plotted on: 02/02/18 @ 04:47:54 PM

F:\ANR CALTRANS 5 B\Realestate summary map dwg\2-04:47:54 PM

Case: 19-30088    Doc# 12131-4    Filed: 04/08/22    Entered: 04/08/22 15:55:54    Page 84 of 92

# EXHIBIT E

# COMMERCIAL BUILDING AT
# 800 WALNUT ST., SAN BRUNO CA





CONSULTING ENGINEERS

815 S. THIRD AVE, STE 7
SAN MATEO, CA, 94401
TEL. # (650) 444-5204
EMAIL: ASICIVIL@GMAIL.COM

THE DRAWINGS ON THIS SHEET, SPECIFICATION,
IDEAS, DESIGNS, AND ARRANGEMENTS
REPRESENTED THEREBY ARE AND SHALL BE THE
PROPERTY OF ASI CONSULTING ENGINEERS AND
NO PART OF THEREOF SHALL BE COPIED
DISCLOSED TO OTHERS OR USED IN CONNECTION
WITH ANY WORK OR PROJECT WITHOUT THE
WRITTEN CONSENT OF ASI CONSULTING ENGINEERS.
VISUAL CONTACT WITH THESE PLANS CONSTITUTE
CONCLUSIVE EVIDENCE OR ACCEPTANCE

BY

COMMERCIAL
BUILDING

800 WALNUT STREET
SAN BRUNO, CA 94066

# A0

DRAWN
AS
CHECKED
AS
DATE

SCALE
AS SHOWN
JOB #



ASI

CONSULTING ENGINEERS

815 S. THIRD AVE, STE 7
SAN MATEO, CA, 94401
TEL # (650) 444-3374
EMAIL: ASI7HOME@AOL.COM

THE DRAWINGS ON THIS SHEET, SPECIFICATION,
IDEAS, DESIGNS, AND ARRANGEMENTS
REPRESENTED THEREBY ARE AND SHALL BE THE
PROPERTY OF ASI CONSULTING ENGINEERS AND
NO PART OF THEREOF SHALL BE COPIED
DISCLOSED TO OTHERS OR USED IN CONNECTION
WITH ANY WORK OR PROJECT WITHOUT THE
WRITTEN CONSENT OF ASI CONSULTING ENGINEERS.
VISUAL CONTACT WITH THESE PLANS CONSTITUTE
CONCLUSIVE EVIDENCE OR ACCEPTANCE

| | BY |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**COMMERCIAL
BUILDING**

800 WALNUT STREET
SAN BRUNO, CA 94066

# A1

FIRST FLOOR PLAN

| DRAWN |
|---|
| AS |
| CHECKED |
| AS |
| DATE |
| SCALE |
| AS SHOWN |
| JOB # |



**FIRST FLOOR PLAN**
SCALE 3/32" = 1'-0"



ASI
CONSULTING ENGINEERS

819 E. THIRD AVE, STE F
SAN MATEO, CA, 94401
TEL # (650) 444-5374
EMAIL ASETKOM@AOL.COM

THE DRAWINGS ON THIS SHEET, SPECIFICATION,
IDEAS, DESIGNS, AND ARRANGEMENTS
REPRESENTED THEREBY ARE AND SHALL BE THE
PROPERTY OF ASI CONSULTING ENGINEERS AND
NO PART OF THEREOF SHALL BE COPIED
DISCLOSED TO OTHERS OR USED IN CONNECTION
WITH ANY WORK OR PROJECT WITHOUT THE
WRITTEN CONSENT OF ASI CONSULTING ENGINEERS.
VISUAL CONTACT WITH THESE PLANS CONSTITUTE
CONCLUSIVE EVIDENCE OR ACCEPTANCE

| | BY |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**COMMERCIAL BUILDING**

800 WALNUT STREET
SAN BRUNO, CA 94066

# A2

SECOND FLOOR PLAN



**SECOND FLOOR PLAN**
SCALE 3/32" = 1'-0"







A S I

CONSULTING ENGINEERS

819 S. THIRD AVE, STE F
SAN MATEO, CA. 94401
TEL. # (650) 444-5374
EMAIL. ASITEAM@GMAIL.COM

THE DRAWINGS ON THIS SHEET, SPECIFICATION,
IDEAS, DESIGNS, AND ARRANGEMENTS
REPRESENTED THEREBY ARE AND SHALL BE THE
PROPERTY OF ASI CONSULTING ENGINEERS AND
NO PART OF THEREOF SHALL BE COPIED,
DISCLOSED TO OTHERS OR USED IN CONNECTION
WITH ANY WORK OR PROJECT WITHOUT THE
WRITTEN CONSENT OF ASI CONSULTING ENGINEERS.
VISUAL CONTACT WITH THESE PLANS CONSTITUTE
CONCLUSIVE EVIDENCE OR ACCEPTANCE

| | BY |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**COMMERCIAL
BUILDING**

800 WALNUT STREET
SAN BRUNO, CA 94066

# A3

THIRD FLOOR PLAN

| DRAWN |
|---|
| AS |
| CHECKED |
| AS |
| DATE |
| SCALE |
| AS SHOWN |
| JOB # |

**THIRD FLOOR PLAN**
SCALE 3/32" = 1'-0"



CONSULTING ENGINEERS

819 S. THIRD AVE, STE F
SAN MATEO, CA, 94401
TEL. # (650) 444-5374
EMAIL: ASET43@GMAIL.COM

THE DRAWINGS ON THIS SHEET, SPECIFICATION,
IDEAS, DESIGNS, AND ARRANGEMENTS
REPRESENTED THEREBY ARE AND SHALL BE THE
PROPERTY OF ASI CONSULTING ENGINEERS AND
NO PART OF THEREOF SHALL BE COPIED
DISCLOSED TO OTHERS OR USED IN CONNECTION
WITH ANY WORK OR PROJECT WITHOUT THE
WRITTEN CONSENT OF ASI CONSULTING ENGINEERS.
VISUAL CONTACT WITH THESE PLANS CONSTITUTE
CONCLUSIVE EVIDENCE OR ACCEPTANCE

| | BY |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**COMMERCIAL BUILDING**

800 WALNUT STREET
SAN BRUNO, CA 94066

# A4

SECTIONS

| | |
|---|---|
| DRAWN | AS |
| CHECKED | AS |
| DATE | |
| SCALE | AS SHOWN |
| JOB # | |








990407901156394

<u>INFORMATION REQUEST FORM</u>

1. Contact Information

The section below has fields relating to your contact information (name, address, email, etc.). If any part of that information is incorrect, please provide correct details below. The Reorganized Debtors will use this contact information for any further communications and correspondence regarding your proof of claim(s).

Please reflect any updates below:

Address: Shahmirza, Amir
c/o Mellen Law Firm
1050 Marina Village Parkway, Suite 102
Alameda CA 94501

Phone:
Email:

Change to:
c/o Lawrence A. Jacobson
Cohen and Jacobson, LLP
66 Bovet Road, Suite 285
San Mateo, CA 94402
Office: 650-261-6280
Cell: 650-642-4906
laj@cohenandjacobson.com

2. Claim-Related Information

The section below relates to information relevant to your filed proof of claim(s). You must provide the following information:

(a) incident date (if applicable);

> Continuing trespass by maintenance of powerlines over Claimant's property

(b) a description of the general nature of the claim (e.g., contract, personal injury, cessation of service, etc.);

> PG&E installed and maintained powerlines across Claimant's property without any legal right to do so and thereafter lowered the height at which the powerlines cross Claimant's property thereby diminishing the value and utility. As a consequence of those acts by PG&E, Claimant has been and remains unable to utilize the property to its highest and best use. As a corollary, PG&E has interfered with Claimant's use and enjoyment of the Property and with Claimant's prospective economic advantage. Claimant seeks money damages and/or injunctive relief requiring the relocation of the offending power lines.

(c) a statement of, and supporting documents indicating, the underlying basis for the claim;

> Claimant attaches a Report of Land Surveyor dated August 11, 2018, and all conveyance documents referenced in that report (Exhibit A) as well as a recorded Survey dated November 28, 2018 (Exhibit B). The Report of Land Survey explains the historical extinguishment of any easements claimed by PG&E (that were to be relocated to other property) with the conveyance to Claimant and predecessors free and clear of any grant or restoration of easement rights to PG&E. The response by PG&E by letter dated October 10, 2018, by Scott Brady (Exhibit C), references prior claims of easement but fails to address the extinguishment described in the Report of Land Survey. See also Real Estate Summary Map dated January 15, 2018, (Exhibit D),an aerial photo of the Property with annotated tabs that reflect items that affect, or may affect, the Property (prepared by Land Surveyor described above).

(d) a statement of the liquidated amount allegedly owing on the Claim, including documentation as available;

The amount of damages has not yet been liquidated to a sum certain. The amount indicated in the Claim reflected an estimate by counsel who filed the Claim as a sum that would be sufficient to fully compensate Claimant. Alternatively, Claimant seeks removal of the power lines or restoration to the height maintained at the date of Claimant's acquisition of the Property.

In response to an inquiry from PG&E's counsel with respect to Claimant's intended use of the Property absent the intruding power lines, Claimant attaches a schematic drawing of a building contemplated by Claimant. (Exhibit E)

(e) any additional information you believe is necessary or appropriate to allow the Reorganized Debtors to evaluate the claim.

Claimant also invites PG&E and its attorneys and other advisors to meet with Claimant and counsel on-site at the Property for visualization of the land, its configuration, and the location and impact of the power lines.

Please note that providing a response to this letter does not mean that your claim will be allowed. PG&E will review the information you provide and reserves all its rights with respect thereto. If you have any questions about your proof of claim, you should consult an attorney.

☑ I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. I UNDERSTAND THAT A PERSON WHO FILES A FRAUDULENT CLAIM COULD BE FINED UP TO $500,000, IMPRISONED FOR UP TO 5 YEARS, OR BOTH. 18 U.S.C. §§ 152, 157, AND 3571.

_____
Signature

If you have questions about this notice, please contact the Debtors' Claims and Noticing Agent, Prime Clerk LLC, at 844-339-4217 (toll-free), +1 929-333-8977(international), or by email at pgeinfo@primeclerk.com.