

**Attachments:** Exhibit 1 Feb. 2016 North Bay Outage Calendar.pdf; Exhibit 2 PG&E Email re 31 Bolinas Road.pdf; Exhibit 3 Veteran Power 2.15 Daily Report Jesus M. 15-3302.pdf; Exhibit 4 Veteran Power Change Order PM31164908 COR #1.pdf

**From:** Richard Lapping <rich@trodellalapping.com>
**Sent:** Wednesday, April 20, 2022 2:00 PM
**To:** Lorena Parada <Lorena_Parada@canb.uscourts.gov>
**Cc:** Jennifer Dodge <jdodgelaw@jenniferdodgelaw.com>; Thomas Rupp <trupp@kbkllp.com>
**Subject:** PG&E - Todd Greenberg Claim No. 77335

**CAUTION - EXTERNAL:**

Re: PG&E – Todd Greenberg

Ms. Parada,

    Please advise Judge Montali that Todd Greenberg requests a telephonic conference to resolve the following discovery dispute with PG&E.

    Claimant Todd Greenberg sent a document request to PG&E in connection with his claim arising from a power outage or surge following an outage that occurred sometime between February 14 and February 19, 2016, while Mr. Greenberg was away on a family trip to Hawaii. (A copy of the Request and PG&E response are at Dkt. # 10996-2, p. 14 of 30.) Mr. Greenberg believes that work conducted by PG&E at the property of his immediate neighbor, 31 Bolinas Road, during this time period resulted in "electrical power fluctuations—outages followed by surges—[that] caused the starter relay in the refrigerator and freezer to fail, as diagnosed by the Appliance Repair Doctor of Alameda, California." (Greenberg brief, Dkt. 11387, p. 2.)

    Further, from the brief, "At the time of the incident, PG&E had for months had an open permit and experienced difficulties and delays on the installation of a three-phase power upgrade next door, at 31 Bolinas Road, and along Bolinas Road, for a newly built/being built restaurant location, which is a mixed use, commercial/residential complex that underwent an extensive renovation. This work was not completed until March 16 or 17, 2016. At the time, Greenberg was told by PG&E crew members that the upgrade of the power to three-phase power was the cause of one of the many power outages, fluctuations, and related surges, including when a nearby pole transformer blew." (Id.)

    "Greenberg was also informed by the Town Manager of the difficulties PG&E encountered while endeavoring to provide the three-phase power next door at 31 Bolinas. These difficulties included needing to have traffic control and shutting down parts of the street, blowing of pole transformers, subsequently necessary replacements of many power

provision components, many uncontemplated delays, and disruptions related to the age of the existing power provision equipment." (Id.)

As part of his document request, Mr. Greenberg requested a copy of PG&E's file maintained to respond to his claim. Specifically, he made the following request:
> "Any and all DOCUMENTS that are part of or comprise the complete files of PG&E related to this Claim No. 77335 and its predecessor claim, PG&E Claim #A16108833 47 Bolinas Rd, Fairfax, California."

(Dkt. # 10996-2, p. 14 of 30.) PG&E responded:

> "PG&E objects to this Request on the basis that it calls for information and DOCUMENTS protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving this objection, and based upon its understanding of this Request, PG&E responds as follows: A diligent search and reasonable inquiry has been made in an effort to comply with this Request and no DOCUMENTS responsive to this Request ever existed in the possession, custody or control of PG&E that are not otherwise privileged."

(Id.)

Counsel spoke to Jennifer Dodge when we first received this response, and she indicated that the privilege invoked was the work product doctrine, that PG&E's claim files are prepared in anticipation of litigation, and that PG&E never produced such files, and would not do so here. She reiterated that point at the December 21, 2021 hearing: "[T]he claims department works at the direction of the legal department. Those claims are privileged work product." (Transcript, dkt #11739, p. 42.)

PG&E has claimed in one of its briefs: "Documents produced by PG&E in response to Greenberg's discovery requests demonstrate that no electrical work was scheduled or performed by PG&E on this circuit between February 14 and 21, 2016." (Dkt. #10995, p. 5, citing as evidence the chart attached here as Exhibit 1.)

Mr. Greenberg made numerous inquiries to the Town of Fairfax and ultimately learned that the PG&E permit for the work next door at 31 Bolinas Road had expired in 2015 and been renewed. Included in the documents obtained from the Town is the email attached as Exhibit 2, from David Brown of PG&E to Mark Lockaby of the Town of Fairfax and Brad Schwan, the owner of 31 Bolinas Road, stating, among other things:

> "Brad, I know I gave you the impression that we would have the new service hotted up this week. However scheduling restraints <u>due to the outage</u> has pushed this activity out to March 16."

(Exhibit 2, emphasis added.) What outage, and the date thereof, is not clear. This email was not produced by PG&E.

Also in the documents that Town of Fairfax provided to Mr. Greenberg was a reference to work done by PG&E subcontractor, Veteran Power. Mr. Greenberg subpoenaed records from Veteran Power and obtained records showing that Veteran Power personnel, working on behalf of PG&E, were performing extensive work on the neighbor's project during the exact week that the outage/surge occurred. (See Exhibit 3, work report for February 15, 2016.) There can be no doubt that Veteran Power did this work on behalf of PG&E. (Exhibit 4, Change Order for February 15, 2016.) As Exhibit 4 also shows, the Veteran Power crew encountered difficulties "[d]ue to the existing utilities found while potholing at the original locations . . . ." (Id.)

Mr. Greenberg has made other inquiries of PG&E personnel and learned that PG&E's records of unscheduled outages were generally incomplete and became more so as time passed. <u>It is highly probable that PG&E's claim file, which was commenced when Mr. Greenberg first lodged his complaint in early 2016, contains contemporaneous references to whatever information was known to PG&E at the time that may not be reflected in other records.</u> Accordingly, we renewed our request to Ms. Dodge and by way of meeting and conferring, included a draft of this email. Ms. Dodge responded by letter but continues to resist producing the file.

Mr. Greenberg has substantial need for any contemporaneous records regarding outages that may exist in the files of PG&E that relate to his claim. He cannot obtain such records by any other means. There is no other source.

The general rules applicable to the work product privilege have been laid out by the Ninth Circuit:

> [Rule 26(b)(3)](#) is titled "Trial Preparation: Materials" and extends protection to "documents and tangible things" prepared "by or for" a party or its representative ("including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent") "in anticipation of litigation or for trial." [Fed. R. Civ. P. 26(b)(3)(A)](#). A party may still obtain discovery of trial preparation materials under [Rule 26(b)(3)](#) if they are otherwise discoverable and the party shows that it has a "substantial need" for the materials and "cannot, without undue hardship, obtain their substantial equivalent by other means." [Fed. R. Civ. P. 26(b)(3)(A)](#). To the extent that a court orders discovery of trial preparation materials under the rule, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." [Fed. R. Civ. P. 26(b)(3)(B)](#).

*Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 (9th Cir. 2014).

In *Rackers v. Siegfried*, 54 F.R.D. 24 (W.D. Missouri, 1971), the trial court permitted plaintiff to obtain defendant's insurance investigator's measurements of skid marks at an accident scene. The court found substantial need: "If one party were to have knowledge of the precise measurements and the other party were to be without such knowledge, a distinct trial advantage would accrue to the former party." 54 F.R.D. at 26. Further, the alternative sources were inadequate. Even though plaintiff was present at the scene, "plaintiff's observations after an accident in which his infant child was involved could in no way approximate the precision of the measurements made by an insurance adjuster . . . ." Id. A police report was conceded to be inaccurate.

In *Savoy v. Richard A. Carrier Trucking*, 176 F.R.D. 10 (D. Mass.1997), the plaintiff obtained contemporaneous witness statements over the work product objection by the defendant where a trucker's logbook had gone missing. The court observed: "Such statements are unique in that they provide an immediate impression of the facts. [Citation omitted.] <u>A lapse of time itself may make it impossible to obtain the substantial equivalent of the material sought</u>." 176 F.R.D. at 14, emphasis added.

It is important to note that Mr. Greenberg is not seeking documents that contain the mental impressions of any attorney or other representative, only the other documents in the claims file. Mr. Greenberg has substantial need for contemporary evidence available to PG&E in 2016 when the claim file was created. Alternative sources are not available due to the lapse of time.

Richard Lapping
415-200-9407



TRODELLA & LAPPING LLP
540 Pacific Ave • San Francisco, CA 94133
Direct: 415.399.1015 • Mobile: 415.200.9407 • rich@trodellalapping.com

www.trodellalapping.com

**This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.