**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:   (212)   310-8000
Fax:   (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for the Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>   **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**<br><br>Hearing Date: May 24, 2022<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **(Telephonic or Video Only)**<br>     United States Bankruptcy Court<br>     Courtroom 17, 16th Floor<br>     San Francisco, CA 94102<br><br>**Objection Deadline:**<br>**May 17, 2022, 4:00 pm (Pacific Time)** |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), in accordance with Section 7.1 of the Plan,[1] sections 105(a) and 1142 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"): (i) further extending the deadline established under the Plan for the Reorganized Debtors to object to Claims by an additional one hundred eighty (180) days, through and including December 19, 2022, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof; and (ii) granting related relief. In support of the Motion, the Reorganized Debtors submit the Declaration of Robb McWilliams, filed concurrently herewith.

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together which any exhibits or schedules thereto, the "**Plan**").

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

The Reorganized Debtors and their professionals have worked diligently to reconcile and resolve Claims during the nearly two years since the Effective Date and the six months since the filing of the Third Extension Motion (as defined below).

Since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved over 14,800 of the approximately 15,200 General Claims[2] (which exclude Securities Claims,[3] Fire Victim Claims, and Subrogation Wildfire Claims) that were scheduled or filed against the Debtors, representing approximately $58.1 billion in the aggregate of the approximately $60.1 billion—or approximately 97% of the total dollar amount and in number—of General Claims filed in these Chapter 11 Cases.

Also, as detailed in the *Second Status Report Regarding Securities Claims Reconciliation and Resolution Process* [Dkt No. 12114] (the "**Second Securities Claims Status Report**"), the Reorganized Debtors have utilized the Securities Claims Procedures (as defined below) to make significant progress in addressing Securities Claims filed against the Debtors, including by expunging (through objection or withdrawal), reducing, or otherwise consensually resolving through settlement over 2,800 of those Securities Claims to date, representing over $1.2 billion in face amount of Securities Claims. Since the Second Securities Claims Status Report was filed, there have been an additional 102 Securities Claims resolved, and one omnibus objection filed (seeking to expunge 82 Securities Claims).

The Reorganized Debtors respectfully request that they be permitted to continue their substantial efforts to reconcile and resolve Claims through the claims reconciliation process, and that the deadline to object to Claims as established by the Third Extension Order (as defined below),

---

[2] As used herein, "**General Claims**" means Claims scheduled by or filed against the Debtors that are not Securities Claims, Fire Victim Claims, or Subrogation Wildfire Claims. These General Claims include, but are not limited to, trade claims, customer claims, employment claims, regulatory claims, real property claims, and tort and other litigation claims that are unrelated to the Fires.

[3] "**Securities Claims**" means rescission or damages claims filed in the Chapter 11 Cases by claimants who have asserted that they purchased or acquired certain of the Debtors' publicly held debt and equity securities during the period from April 29, 2015 through November 15, 2018, inclusive.

currently set as June 21, 2022 (the "**Current Objection Deadline**"), be extended an additional one hundred eighty (180) days, through and including December 19, 2022, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof.

The relief sought in this Motion is particularly warranted for three reasons: <u>First</u>, the Debtors and their professionals have made good use of each prior extension, as demonstrated by the substantial progess made in resolving a large number of claims.

<u>Second</u>, at the beginning of 2022, the Reorganized Debtors commenced making settlement offers and resolving certain Securities Claims by settlement under the Securities Claims Procedures (as defined below). Although the Reorganized Debtors have made significant progress addressing the Securities Claims, the offer and settlement process will almost certainly continue past June 2022, especially given that the collection of trading information from certain claimants continues notwithstanding the extensive efforts of the Reorganized Debtors to facilitate that collection.

<u>Third</u>, in March 2022, the Fire Victim Trustee and Reorganized Debtors independently determined that 172 claims, which were each filed on the customized Fire Victim Proof of Claim Form (as defined in the Bar Date Order) (plus 18 duplicate or amended claims) and had been preliminarily identified as Fire Victim Claims, did not arise from one of the specific Fires defined in Section 1.86 of the Plan. As such, those Claims do not constitute Fire Victim Claims, as defined in Section 1.79 of the Plan, but rather are General Claims against the Debtors (the "**Recategorized Claims**"). The Reorganized Debtors have begun to reconcile, object to, and otherwise resolve the Recategorized Claims, and that process will require additional time beyond the Third Extension Period (as defined below).

The Reorganized Debtors submit that the relief sought in this Motion will benefit all parties in interest because, among other reasons, it will provide the Reorganized Debtors with additional time to attempt to resolve the Remaining Claims[4] consensually, without burdening the Court with

---

[4] "**Remaining Claims**" means the General Claims and Securities Claims filed in these Chapter 11 cases excluding (i) those Claims to which the Reorganized Debtors have objected (or to which the Reorganized Debtors expect to object prior to June 21, 2022) and (ii) those Claims for which the automatic stay has been lifted or the Plan Injuction modified (or as to which the Reorganized Debtors expect the Plan Injunction to be modified prior to June 21, 2022).

avoidable litigation or imposing avoidable litigation-related costs and expenses on the parties. Absent the relief requested, the Reorganized Debtors may be compelled to object to the Remaining Claims to avoid a windfall to some Claimants from the "deemed allowance" of non-meritorious Claims under the Plan.

## II. JURISDICTION

This Court has jurisdiction to consider these issues pursuant to 28 U.S.C. sections 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. section 157(b). Venue is proper before the Court pursuant to 28 U.S.C. sections 1408 and 1409.

## III. BACKGROUND

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. Prior to the Effective Date, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806] (the "**Bar Date Order**"). The Bar Date Order set October 21, 2019 (the "**Bar Date**") as the deadline to file proofs of claim (each, a "**Proof of Claim**") for prepetition claims (as defined in section 101(5) of the Bankruptcy Code), including all claims of Fire Claimants, Wildfire Subrogation Claimants, Governmental Units, customers, secured claims and priority claims against either of the Debtors. The Bar Date was later extended to December 31, 2019, solely with respect to unfiled, non-governmental Fire Claims [Docket No. 4672]; and

separately to April 16, 2020, solely with respect to persons or entities that purchased or acquired certain of the Debtors' publicly held debt and equity securities within the limited period from April 29, 2015 through November 15, 2018, inclusive, and that may have Securities Claims based on those purchases against the Debtors [Docket No. 5943].

On June 20, 2020, this Court entered the Order confirming the Plan [Docket No. 8053] (the "**Confirmation Order**"). The Plan became effective on July 1, 2020 [Docket No. 8252] (the "**Effective Date**"). Pursuant to Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order), the Reorganized Debtors may object to Claims until the later of (i) one-hundred and eighty (180) days after the Effective Date (*i.e.*, December 28, 2020) and (ii) such later date as may be fixed by the Bankruptcy Court for cause shown. Plan § 7.1.

On June 30, 2020, the Court entered the *Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections* [Docket No. 8228] (the "**General Claims Omnibus Objection Procedures Order**," and each objection filed pursuant thereto or pursuant to the Securities Claims Procedures (as defined below), an "**Omnibus Objection**"). The General Claims Omnibus Objection Procedures Order permits the Reorganized Debtors to file objections to General Claims on an omnibus basis.

On September 25, 2020, the Court entered the *Order Approving ADR and Related Procedures for Resolving General Claims* [Docket No. 9148] (the "**General Claims ADR Procedures Order**"). The General Claims ADR Procedures Order approved "**General Claims Procedures**" (as defined therein) that allow: (i) General Claimants (*i.e.*, holders of Claims other than Fire Victim Claims, Subrogation Wildfire Claims, or Securities Claims) to submit, by mail or via a secure online portal, information necessary to allow the Reorganized Debtors to evaluate their Claims and develop settlement proposals for General Claimants; and (ii) the parties to exchange settlement offers or engage in standard or abbreviated forms of mediation to resolve General Claims. The General Claims Procedures were designed to work together with the procedures set forth in the General Claims Omnibus Objection Procedures Order to form a comprehensive and efficient pre-litigation approach to resolve General Claims.

On October 27, 2020, the Reorganized Debtors filed the *Motion for Entry of an Order Extending Deadline for the Reorganized Debtors to Object to Claims* [Docket No. 9355] (the "**Initial Extension Motion**"), which the Court granted with certain limited modifications in the *Order Extending Deadline for the Reorganized Debtors to Object to Claims* [Docket No. 9563] (the "**Initial Extension Order**"). The Initial Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by one hundred eighty (180) days, through and including June 26, 2021 (the "**Initial Extension Period**"), except for the United States Claims, for which the objection deadline was extended to March 31, 2021.[5]

On January 25, 2021, the Court entered the *Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Docket No. 10015] (the "**Securities Procedures Order**"). The Securities Claims Procedures Order approved procedures (the "**Securities Claims Procedures**") aimed at facilitating the resolution of Securities Claims.

On March 17, 2021, the Reorganized Debtors filed the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 10408] (the "**Second Extension Motion**"), which the Court granted on April 5, 2021, with certain limited modifications, in the *Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 10494] (the "**Second Extension Order**"). The Second Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by an additional one hundred eighty (180) days, through and including December 23, 2021 (the "**Second Extension Period**"), except that the deadline for the Reorganized Debtors to object to the CAL FIRE Claims[6] was extended through and including September 30, 2021,

---

[5] As used here, "United States Claims" means Class 4B Utility General Unsecured Claims of the United States that are identified by claim number and amount in Docket No. 9718 as required by the Initial Extension Order. The Reorganized Debtors and the United States have entered into a stipulation to extend the deadline for the Reorganized Debtors to object to the remaining United States Claims to June 21, 2022. For the avoidance of doubt, the relief requested herein does not apply to the existing deadline for the Reorganized Debtors to object to the remaining United States Claims.

[6] As used here, "CAL FIRE Claims" means Class 4B Utility General Unsecured Claims of the California Department of Forestry and Fire Protection enumerated in the *Limited Objection of California Department of Forestry and Fire Protection to Motion for Entry of an Order Further Extending*

without prejudice to the right of the Reorganized Debtors to move for further extensions of all such dates.

On October 19, 2021, the Reorganized Debtors filed the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 11450] (the "**Third Extension Motion**"), which the Court granted on November 4, 2021, with certain limited modifications, in the *Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 11533] (the "**Third Extension Order**"). The Third Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by an additional one hundred eighty (180) days, through and including June 21, 2022 (the "**Third Extension Period**").

IV. **THE REORGANIZED DEBTORS' CLAIMS RECONCILIATION PROCESS**

The Debtors began the process of gathering and consolidating information relating to their liabilities when preparing their schedules and statements of financial affairs, long before any Proofs of Claim were filed in these Chapter 11 Cases. As indicated in the Initial Extension Motion, more than 22,440 Proofs of Claim had been scheduled or filed against the Debtors, asserting over $68.4 billion in the aggregate (not including Claims listed in the Debtors' schedules as contingent, unliquidated, and/or disputed).[7] The reconciliation, resolution, and distributions of the Claims have required extensive efforts by the Reorganized Debtors' team of advisors, attorneys, and personnel.

Since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved approximately 17,700 Claims asserting approximately $59.3 billion in Claims. This represents approximately 87% of the total dollar amount of Claims asserted in these Chapter 11 Cases (including Securities Claims, but excluding Fire Victim Claims and Subrogation Wildfire Claims). Included in these statistics are

---

*Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 10480]. The Reorganized Debtors have resolved all of the CAL FIRE Claims.

[7] During the Third Extension Period, the Reorganized Debtors received approximately 600 additional untimely Claims asserting approximately $30 million in aggregate claims. These figures and the others discussed in this Part IV exclude approximately 86,500 Fire Victim Claims and Subrogation Wildfire Claims, which will be resolved by the Fire Victim Trust and the Subrogation Wildfire Trust, respectively, in accordance with the Plan.

approximately 1,300 Claims expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved during the Third Extension Period, asserted for approximately $2.6 billion in the aggregate.

Distributions on Claims. Since the Effective Date, the Reorganized Debtors have processed over 80 rounds of distributions and made distributions on approximately 6,000 Claims, totaling approximately $24.5 billion. In addition, the Reorganized Debtors made cash transfers to the Fire Victim Trust of more than $6.7 billion and to the Subrogation Wildfire Trust of approximately $11 billion.

Omnibus Objections. As of the date hereof, the Reorganized Debtors have filed 136 Omnibus Objections, including 115 with respect to General Claims and 21 with respect to Securities Claims. Ten of these Omnibus Objections were filed during the Third Extension Period. Through the Plan and prosecution of the Omnibus Objections, approximately 11,200 Claims—approximately 9,300 General Claims and approximately 1,900 Securities Claims—have been modified, withdrawn, disallowed and/or expunged, reducing the amounts asserted against the Debtors by approximately $31.9 billion. In addition, approximately 210 additional Claims (both General Claims and Securities Claims) are currently subject to pending Omnibus Objections, which seek to further reduce the asserted Claims pool by approximately $760 million.

### A. The General Claims

Settled Claims. The Debtors and Reorganized Debtors have undertaken extensive efforts to resolve certain General Claims through negotiated settlements, including through the General Claims Procedures further described below. These negotiation efforts have yielded the settlement of approximately 2,300 General Claims, totaling nearly $4.9 billion in asserted claim amounts (plus unliquidated amounts), both within and separate from the General Claims Procedures discussed below. Approximately 60 of those General Claims have been settled during the Third Extension Period. The Reorganized Debtors also have extended settlement offers to resolve approximately ten General Claims, which, if accepted, will reduce the unresolved asserted Claims pool by approximately $4.2 million. Further, the Reorganized Debtors are awaiting final documentation of settlements with respect to approximately 50 General Claims.

General Claims Procedures. The Reorganized Debtors resolved a subset of the settled General Claims described above through the General Claims Procedures. The Reorganized Debtors have sent formal information requests to the holders of over 410 General Claims, have initiated settlement offer exchanges on approximately 135 General Claims, and have noticed approximately 70 Abbreviated Mediations and approximately 50 Standard Mediations (each as defined in the General Claims ADR Procedures Order).[8] The General Claims Procedures have resulted in the resolution of approximately 130 General Claims by settlement, totaling approximately $161 million in asserted value (plus unliquidated amounts).[9] The Reorganized Debtors are hopeful that they will be able to resolve consensually a substantial number of the approximately 160 General Claims that remain subject to the General Claims Procedures, including the 49 Recategorized Claims that remain after the 115th Omnibus Claims Objection.

Claims Litigated Outside of Bankruptcy Court. Approximately 45 General Claims are being litigated in non-bankruptcy fora, pursuant to orders of the Court modifying the automatic stay or Plan Injunction. Pursuant to the Third Extension Order, such Claims are deemed to have been objected to for purposes of the Plan's definition of "Allowed." Plan, Section 1.7(f). Further, the Reorganized Debtors anticipate stipulating to similar modifications of the Plan Injunction with respect to approximately 20 additional General Claims.

Recategorized Claims. The Recategorized Claims were filed on Fire Victim Proof of Claim Forms and/or asserted fire-related damage. As such, these Claims were preliminarily identified as Fire Victim Claims, to be administered, processed, settled, disallowed, resolved, liquidated, satisfied, and/or paid in accordance with the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures. However, based on a further review of the Recategorized Claims and other information provided by the claimants, as well as the Reorganized Debtors' books and records, the Recategorized Claims recently were determined by the Fire Victim Trustee and independently by the

---

[8] The categories referenced in this sentence are not mutually exclusive; for example, the Reorganized Debtors may have sent an information request, initiated settlement offer exchanges, and noticed a mediation on the same General Claim.

[9] This figure does not include approximately 47 Claims that began in the General Claims Procedures but were ultimately settled outside of the General Claims Procedures.

Case: 19-30088    Doc# 12229    Filed: 04/26/22    Entered: 04/26/22 15:59:21    Page 10 of 17

Reorganized Debtors not to have arisen from one of the specific Fires defined in Section 1.86 of the Plan, and thus not to constitute Fire Victim Claims, as defined in Section 1.79 of the Plan. Instead, the Recategorized Claims are general unsecured claims against the Reorganized Debtors, subject to all of the Reorganized Debtors' legal and equitable rights with respect to such claims. One hundred and thirteen of the Recategorized Claims were addressed in the *Reorganized Debtors' One Hundred Fifteenth Omnibus Objection to Claims (No Liability Recategorized Claims)* [Dkt No. 12173], filed on April 18, 2022 (the "**115th Omnibus Claims Objection**").

### B. The Securities Claims[10]

Securities Claims Procedures. The Second Securities Claims Status Report details the extensive work done by the Reorganized Debtors and their professionals to reconcile and continue resolving the Securities Claims filed against the Reorganized Debtors. The Securities Procedures Order authorized the Reorganized Debtors to, among other things, request the trading information necessary to assess the viability and calculate the potential amount of allowed Claims under the federal securities laws for each Securities Claim.

Information Gathering. Since the entry of the Securities Claims Procedures Order, the Reorganized Debtors and their advisors have continued to work to: (i) collect outstanding trading data from Securities Claimants; (ii) process, analyze, and verify the information submitted; and (iii) coordinate with Securities Claimants to rectify any further outstanding issues. While the majority of Securities Claimants have complied with the Reorganized Debtors' information requests and are working with Kroll to provide data and resolve outstanding data-related issues, a substantial number of claimants have not responded at all.

As explained in the Second Securities Claims Status Report, one of the most significant recurring deficiencies is the failure of certain claimants to provide post-class period trading data, or confirmation that no purchases or sales occurred during the applicable post-class period. In addition, new Securities Claims continue to be filed, primarily including claims filed by or on behalf of individual Securities Claimants whose claims were initially included as part of certain "bulk" claims

---

[10] Capitalized terms used but not defined in this Section IV.B shall have the meaning ascribed to them in the Second Securities Claims Status Report.

filed by securities class action service providers (one of which has since discontinued its involvement with this matter). Although the Reorganized Debtors are continuing to review and analyze these recently filed Securities Claims, it is clear that many of them were filed without the necessary trading information and/or proof of authorization (*i.e.*, evidence indicating that the filer was authorized to file the proof of claim on behalf of the Securities Claimant). Moreover, some of these claims allege transactions in entirely new securities that were not listed in the originally filed "bulk" claims. The Reorganized Debtors are attempting to reconcile these newly filed Securities Claims, and reserve all rights to object to them, including on the basis that they are untimely and/or that the original "bulk" claims were improperly filed.

While, as discussed below, the Reorganized Debtors have begun to issue offers to settle certain Securities Claims, the absence of complete trading information is one important factor limiting the ability of the Reorganized Debtors to issue settlement offers to certain claimants or groups of claimants represented by the same counsel. The Reorganized Debtors continue to work to obtain complete trading data in order to facilitate the settlement process.

Omnibus Objections. At the time the Second Securities Claims Status Report was filed, the Reorganized Debtors had filed 20 omnibus objections to Securities Claims on various grounds. As of the date of this filing, the Court has addressed all of those omnibus objections, resulting in the disallowance and expungement of 1,754 Securities Claims,[11] of which 806 had not asserted specific damage amounts on the face of the proofs of claim, and 948 had asserted a total of $944 million in damages on the face of the proofs of claim. In addition, since the Second Securities Claims Status Report was filed, there have been an additional 65 new Securities Claims filed, 102 Securities Claims resolved, and one Omnibus Objection filed (addressing 82 Securities Claims), which is pending before the Court.

Settlement Offers. The Reorganized Debtors began making settlement offers earlier this year pursuant to the Securities Claims Procedures. The Securities Claimants were notified that they could

---

[11] Since the filing of the Second Securities Claims Status Report, the order was vacated for 31 claims originally expunged through the Reorganized Debtors' Eleventh and Thirteenth Securities Claims Omnibus Objections [Docket No. 12126].

view and accept or reject the settlement offers through an online portal established by the Reorganized Debtors and their advisors (the "**Settlement Portal**"). To date, the Reorganized Debtors have made offers to approximately 1,400 Securities Claimants.

The response to these settlement offers has been very positive. At the time of the filing of this Motion, more than 950 Securities claimants have agreed with the Reorganized Debtors to settle their Securities Claims. Moreover, approximately 90% of Securities Claimants that have taken the time to review the offers on the Settlement Portal have ultimately agreed to settlement terms with the Reorganized Debtors. Approximately 4% of the Securities Claimants receiving offers have rejected the offers outright.

In the coming months, the Reorganized Debtors intend to continue working diligently to collect the necessary trading information required to address additional Securities Claims in the settlement process. The Reorganized Debtors also intend to continue making settlement offers and to work to increase participation from those claimants who have received settlement offers, but have not yet viewed those offers through the Settlement Portal or otherwise responded. Further, the Reorganized Debtors will continue to identify Securities Claims that should be disallowed and expunged through the Securities Omnibus Objection Procedures.

V. **BASIS FOR RELIEF REQUESTED**

    A. <u>**The Court Has the Authority to Extend the Current Objection Deadline**</u>

The Court has the express authority to extend the Current Objection Deadline, and cause exists for it to do so. Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order) provides that the Current Objection Deadline may be extended by the Court for cause shown. Plan § 7.1. This provision anticipates and provides the necessary authority for the Motion.

Even in the absence of express authority, Bankruptcy Rule 9006(b) provides in relevant part that "when an act is required or allowed to be done at or within a specified period . . . by order of [the] court, the court for cause shown may at any time in its discretion . . . order the period enlarged . . . ." Fed. R. Bankr. P. 9006(b). The Plan and Confirmation Order provide that the Court retains jurisdiction over "all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code."

Confirmation Order ¶ 78; Plan § 11.1. Finally, the Plan also provides that the Court retains jurisdiction for, *inter alia*, the following purposes:

> (d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims; …[and]
>
> (k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation[.]

Plan § 11.1(d) and (k). These provisions underscore the Court's authority to extend the Current Objection Deadline.

Indeed, the Plan's express authority to extend the Current Objection Deadline is consistent with the Court's general authority under sections 105(a) and 1142(b) of the Bankruptcy Code to issue orders necessary for the consummation of the Plan or to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); 11 U.S.C. § 1142(b) ("The court may direct the debtor . . . to perform any other act . . . that is necessary for the consummation of the plan."); *see also Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."); *Nobel Grp., Inc. v. Bank (In re Nobel Grp., Inc.)*, 529 B.R. 284, 290-91 (Bankr. N.D. Cal. 2015) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004) ("Post-confirmation jurisdiction is assumed by statute and rule: 11 U.S.C. § 1142(b) authorizes the bankruptcy court to 'direct' the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan."). These provisions also grant the Court ample authority to deem as "objected to" any Claims that are being litigated in a non-bankruptcy forum pursuant to an order of this Court modifying the automatic stay or the Plan Injunction.

Finally, the Court has the inherent power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis*

*v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This request to further extend the Current Objection Deadline is in line with relief granted in chapter 11 cases of similar size. *See, e.g.*, *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008), Docket Nos. 58842, 54122, 50165, 41286 (extending claims objection deadline four times, for a total of six years); *In re Motors Liquidation Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009), Docket Nos. 10938, 11546, 12092, 12364, 12499, 12610 (extending claims objection deadline six times, for a total of nearly three years); *In re MF Global Holdings Ltd., et al.,* Case No. 11-15059 (Bankr. S.D.N.Y. Oct. 31, 2011), Docket Nos. 2290, 2247, 2200, 2160, 2102, 2028, 1869 (extending claims objection deadline seven times, for a total of two and a half years).

### B. Good Cause Exists to Extend the Current Objection Deadline

The Reorganized Debtors have acted diligently to review the immense number of Claims asserted in these Chapter 11 Cases. To date, the Reorganized Debtors have resolved approximately 17,700 Claims with asserted amounts of $59.3 billion in the aggregate, representing approximately 87% of the aggregate dollar amount of Claims asserted in these Chapter 11 Cases. As discussed above, the Remaining Claims are largely comprised of the Securities Claims, with respect to which the Reorganized Debtors have made significant progress and have been actively engaged in settlement efforts that have resulted in the consensual resolution of over 950 Securities Claims. The Reorganized Debtors also have brought 21 omnibus objections with respect to the Securities Claims, which have resolved approximately 1,800 Securities Claims representing over $900 million in face value. The Reorganized Debtors believe that the requested extension of 180 days is required and reasonable in light of the circumstances, but additional time may be necessary to resolve certain Claims.

Extension of the Current Objection Deadline will benefit the estates as a whole, including creditors and other parties in interest. It will enable the Reorganized Debtors to continue to engage in meaningful negotiations to resolve Claims consensually, minimizing the need to file and litigate objections. Resolving a Claim without a formal objection benefits both the holder of the Claim and the Reorganized Debtors' other stakeholders by avoiding the burden and expense of litigation. Further, if the Current Objection Deadline is not extended, the Reorganized Debtors will be

compelled to divert their resources to supplement any pending objections to the Remaining Claims and file new objections to those Remaining Claims for which no objection has been filed. If the requested relief were not granted, the Reorganized Debtors would be forced to either (a) forego filing meritorious objections, thus creating a windfall for some holders of the Remaining Claims, *or* (b) file a plethora of rushed, expansive prophylactic objections to meet the Current Objection Deadline and preserve the Reorganized Debtors' rights, which would be inefficient and impose substantial burdens on the Court and the Reorganized Debtors and significant inconvenience and litigation expense on holders of the Remaining Claims. Neither of these alternatives would be in the best interests of the Reorganized Debtors' stakeholders, notably including the Fire Victims Trust—which holds a significant stake in the Reorganized Debtors' equity—and the holders of Fire Victim Claims who are that Trust's beneficiaries.

Extending the Current Objection Deadline will not prejudice holders of the Remaining Claims for the reasons stated above, and because such an extension is contemplated by the Plan and is reasonable under the circumstances. Moreover, whether or not the Current Objection Deadline is extended, holders of the Remaining Claims will have a full and fair opportunity to be heard if and when an objection is litigated.

For these reasons, the Reorganized Debtors submit that extending the Current Objection Deadline through and including December 19, 2022, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof, is appropriate under the circumstances.

## VI. NOTICE

Notice of this Motion will be provided to: (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002.

The Reorganized Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other Court.

WHEREFORE the Reorganized Debtors respectfully request entry of the Proposed Order granting (i) the relief requested herein, and (ii) such other and further relief for the Reorganized Debtors as the Court may deem just and appropriate.

Dated: April 26, 2022

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

*/s/ Jane Kim*
Jane Kim

*Attorneys for the Debtors and Reorganized Debtors*