**WEIL, GOTSHAL & MANGES LLP**
Richard K. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
New York, NY 10153-0119
Tel:    (212) 310-8000
Fax:   (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF ROBB MCWILLIAMS IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**<br><br>Hearing Date: May 24, 2022<br>Time: 10:00 a.m. (Pacific Time)<br>Place:  **(Telephonic or Video Only)**<br>  United States Bankruptcy Court<br>  Courtroom 17, 16th Floor<br>  San Francisco, CA 94102<br><br>**Objection Deadline:**<br>**May 17, 2022, 4:00 pm (Pacific Time)** |

I, Robb C. McWilliams, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Managing Director at the firm of AlixPartners, LLP ("**AlixPartners**"), which is an affiliate of both AlixPartners, LLC and AP Services, LLC, ("**APS**"), which provided interim management services to Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors**," or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). I submit this Declaration in support of the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* (the "**Motion**"),[1] filed contemporaneously herewith.

2. In my current position, I am responsible for overseeing the Bankruptcy Case Management component of AlixPartners' assignment to assist the Reorganized Debtors with various matters related to these Chapter 11 Cases. My area of responsibility includes the effort by AlixPartners, in coordination with the Reorganized Debtors, to review and assess the validity of all claims asserted against the Debtors, other than (a) Fire Claims and Subrogation Wildfire Claims and (b) providing limited support with respect to Securities Claims. I am generally familiar with the Reorganized Debtors' day-to-day operations, financing arrangements, business affairs, and books and records. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, the knowledge of other AlixPartners professionals working under and alongside me on this matter, my discussions with the Reorganized Debtors' personnel, the Reorganized Debtors' various other advisors and counsel, and my review of relevant documents and information prepared by the Reorganized Debtors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this declaration on behalf of the Reorganized Debtors.

3. The AlixPartners team under my supervision has been actively involved in the claims review and reconciliation process since shortly after the filing of these Chapter 11 Cases. AlixPartners initially assisted the Debtors in the preparation of their bankruptcy schedules based on the Debtors' books and records. AlixPartners has coordinated with the Debtors in reconciling and reviewing filed

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

Case: 19-30088    Doc# 12230    Filed: 04/26/22    Entered: 04/26/22 16:05:15    Page 2 of 8

proofs of claim with claims reflected in the Debtors' schedules and books and records. AlixPartners has developed and maintains a claims reconciliation database and various data management applications that are used by the Reorganized Debtors and AlixPartners to validate claims as well as identify claims that are invalid in whole or in part, and the appropriate grounds for objection to such claims. AlixPartners is now supporting, and will continue to support, the efforts of the Reorganized Debtors and their counsel to resolve disputed claims, including by formal objections as necessary.

4. AlixPartners personnel also conferred with personnel at Kroll, the Reorganized Debtors' claims servicing agent and the Reorganized Debtors' various other advisors and counsel, with respect to the information concerning the Securities Claims in this Declaration.

5. The Debtors began the process of gathering and consolidating information relating to their liabilities when preparing their schedules and statements of financial affairs, long before any Proofs of Claim were filed in these Chapter 11 Cases. As indicated in the Initial Extension Motion, more than 22,440 Proofs of Claim had been scheduled or filed against the Debtors, asserting over $68.4 billion in the aggregate (not including Claims listed in the Debtors' schedules as contingent, unliquidated, and/or disputed).[2] The reconciliation, resolution, and distributions of the Claims have required extensive efforts by the Reorganized Debtors' team of advisors, attorneys, and personnel.

6. Since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved approximately 17,700 Claims asserting approximately $59.3 billion in Claims. This represents approximately 87% of the total dollar amount of Claims asserted in these Chapter 11 Cases (including Securities Claims, but excluding Fire Victim Claims and Subrogation Wildfire Claims). Included in these statistics are approximately 1,300 Claims expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved during the Third Extension Period, asserted for approximately $2.6 billion in the aggregate.

---

[2] During the Third Extension Period, the Reorganized Debtors received approximately 600 additional untimely Claims asserting approximately $30 million in aggregate claims. These figures and the others discussed in this Part IV exclude approximately 86,500 Fire Victim Claims and Subrogation Wildfire Claims, which will be resolved by the Fire Victim Trust and the Subrogation Wildfire Trust, respectively, in accordance with the Plan.

7. <u>Distributions on Claims</u>. Since the Effective Date, the Reorganized Debtors have processed over 80 rounds of distributions and made distributions on approximately 6,000 Claims, totaling approximately $24.5 billion. In addition, the Reorganized Debtors made cash transfers to the Fire Victim Trust of more than $6.7 billion and to the Subrogation Wildfire Trust of approximately $11 billion.

8. <u>Omnibus Objections</u>. As of the date hereof, the Reorganized Debtors have filed 136 Omnibus Objections, including 115 with respect to General Claims and 21 with respect to Securities Claims. Ten of these Omnibus Objections were filed during the Third Extension Period. Through the Plan and prosecution of the Omnibus Objections, approximately 11,200 Claims—approximately 9,300 General Claims and approximately 1,900 Securities Claims—have been modified, withdrawn, disallowed and/or expunged, reducing the amounts asserted against the Debtors by approximately $31.9 billion. In addition, approximately 210 additional Claims (both General Claims and Securities Claims) are currently subject to pending Omnibus Objections, which seek to further reduce the asserted Claims pool by approximately $760 million.

**A. The General Claims**

9. <u>Settled Claims</u>. The Debtors and Reorganized Debtors have undertaken extensive efforts to resolve certain General Claims through negotiated settlements, including through the General Claims Procedures further described below. These negotiation efforts have yielded the settlement of approximately 2,300 General Claims, totaling nearly $4.9 billion in asserted claim amounts (plus unliquidated amounts), both within and separate from the General Claims Procedures discussed below. Approximately 60 of those General Claims have been settled during the Third Extension Period. The Reorganized Debtors also have extended settlement offers to resolve approximately ten General Claims, which, if accepted, will reduce the unresolved asserted Claims pool by approximately $4.2 million. Further, the Reorganized Debtors are awaiting final documentation of settlements with respect to approximately 50 General Claims.

10. <u>General Claims Procedures</u>. The Reorganized Debtors resolved a subset of the settled General Claims described above through the General Claims Procedures. The Reorganized Debtors have sent formal information requests to the holders of over 410 General Claims, have initiated

settlement offer exchanges on approximately 135 General Claims, and have noticed approximately 70 Abbreviated Mediations and approximately 50 Standard Mediations (each as defined in the General Claims ADR Procedures Order).[3] The General Claims Procedures have resulted in the resolution of approximately 130 General Claims by settlement, totaling approximately $161 million in asserted value (plus unliquidated amounts).[4] The Reorganized Debtors are hopeful that they will be able to resolve consensually a substantial number of the approximately 160 General Claims that remain subject to the General Claims Procedures, including the 49 Recategorized Claims that remain after the 115th Omnibus Claims Objection.

11. <u>Claims Litigated Outside of Bankruptcy Court</u>. Approximately 45 General Claims are being litigated in non-bankruptcy fora, pursuant to orders of the Court modifying the automatic stay or Plan Injunction. Pursuant to the Third Extension Order, such Claims are deemed to have been objected to for purposes of the Plan's definition of "Allowed." Plan, Section 1.7(f). Further, the Reorganized Debtors anticipate stipulating to similar modifications of the Plan Injunction with respect to approximately 20 additional General Claims.

12. <u>Recategorized Claims</u>. The Recategorized Claims were filed on Fire Victim Proof of Claim Forms and/or asserted fire-related damage. As such, these Claims were preliminarily identified as Fire Victim Claims, to be administered, processed, settled, disallowed, resolved, liquidated, satisfied, and/or paid in accordance with the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures. However, based on a further review of the Recategorized Claims and other information provided by the claimants, as well as the Reorganized Debtors' books and records, the Recategorized Claims recently were determined by the Fire Victim Trustee and independently by the Reorganized Debtors not to have arisen from one of the specific Fires defined in Section 1.86 of the Plan, and thus not to constitute Fire Victim Claims, as defined in Section 1.79 of the Plan. Instead, the Recategorized Claims are general unsecured claims against the Reorganized Debtors, subject to all of the Reorganized

---

[3] The categories referenced in this sentence are not mutually exclusive; for example, the Reorganized Debtors may have sent an information request, initiated settlement offer exchanges, and noticed a mediation on the same General Claim.

[4] This figure does not include approximately 47 Claims that began in the General Claims Procedures but were ultimately settled outside of the General Claims Procedures.

Debtors' legal and equitable rights with respect to such claims. One hundred and thirteen of the Recategorized Claims were addressed in the *Reorganized Debtors' One Hundred Fifteenth Omnibus Objection to Claims (No Liability Recategorized Claims)* [Dkt No. 12173], filed on April 18, 2022 (the "**115th Omnibus Claims Objection**").

B. **The Securities Claims**[5]

13. Securities Claims Procedures. The Second Securities Claims Status Report details the extensive work done by the Reorganized Debtors and their professionals to reconcile and continue resolving the Securities Claims filed against the Reorganized Debtors. The Securities Procedures Order authorized the Reorganized Debtors to, among other things, request the trading information necessary to assess the viability and calculate the potential amount of allowed Claims under the federal securities laws for each Securities Claim.

14. Information Gathering. Since the entry of the Securities Claims Procedures Order, the Reorganized Debtors and their advisors have continued to work to: (i) collect outstanding trading data from Securities Claimants; (ii) process, analyze, and verify the information submitted; and (iii) coordinate with Securities Claimants to rectify any further outstanding issues. While the majority of Securities Claimants have complied with the Reorganized Debtors' information requests and are working with Kroll to provide data and resolve outstanding data-related issues, a substantial number of claimants have not responded at all.

15. While, as discussed below, the Reorganized Debtors have begun to issue offers to settle certain Securities Claims, the absence of complete trading information is one important factor limiting the ability of the Reorganized Debtors to issue settlement offers to certain claimants or groups of claimants represented by the same counsel. The Reorganized Debtors continue to work to obtain complete trading data in order to facilitate the settlement process.

16. Omnibus Objections. At the time the Second Securities Claims Status Report was filed, the Reorganized Debtors had filed 20 omnibus objections to Securities Claims on various grounds. As of the date of this filing, the Court has addressed all of those omnibus objections, resulting in the

---

[5] Capitalized terms used but not defined in this Section IV.B shall have the meaning ascribed to them in the Second Securities Claims Status Report.

disallowance and expungement of 1,754 Securities Claims,[6] of which 806 had not asserted specific damage amounts on the face of the proofs of claim, and 948 had asserted approximately $944 million in damages on the face of the proofs of claim. In addition, since the Second Securities Claims Status Report was filed, there have been an additional 65 new Securities Claims filed, 102 Securities Claims resolved, and one Omnibus Objection filed (addressing 82 Securities Claims), which is pending before the Court.

17. Settlement Offers. The Reorganized Debtors began making settlement offers earlier this year pursuant to the Securities Claims Procedures. The Securities Claimants were notified that they could view and accept or reject the settlement offers through an online portal established by the Reorganized Debtors and their advisors (the "**Settlement Portal**"). To date, the Reorganized Debtors have made offers to approximately 1,400 Securities Claimants.

18. The response to these settlement offers has been very positive. At the time of the filing of this Motion, more than 950 Securities claimants have agreed with the Reorganized Debtors to settle their Securities Claims. Moreover, approximately 90% of Securities Claimants that have taken the time to review the offers on the Settlement Portal have ultimately agreed to settlement terms with the Reorganized Debtors. Approximately 4% of the Securities Claimants receiving offers have rejected the offers outright.

19. In the coming months, the Reorganized Debtors intend to continue working diligently to collect the necessary trading information required to address additional Securities Claims in the settlement process. The Reorganized Debtors also intend to continue making settlement offers and to work to increase participation from those claimants who have received settlement offers, but have not yet viewed those offers through the Settlement Portal or otherwise responded. Further, the Reorganized Debtors will continue to identify Securities Claims that should be disallowed and expunged through the Securities Omnibus Objection Procedures.

//

//

---

[6] Since the filing of the Second Securities Claims Status Report, the order was vacated for 31 claims originally expunged through the Reorganized Debtors' Eleventh and Thirteenth Securities Claims Omnibus Objections [Docket No. 12126].

I declare under penalty of perjury, as set forth in 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed this twenty-sixth day of April, 2022, in Dallas, Texas.

                                           */s/ Robb McWilliams*
                                           Robb McWilliams