| | |
|---|---|
| KELLER BENVENUTTI KIM LLP<br>Jane Kim (#298192)<br>(jkim@kbkllp.com)<br>David A. Taylor (#247433)<br>(dtaylor@kbkllp.com)<br>Thomas B. Rupp (#278041)<br>(trupp@kbkllp.com)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Tel: 415 496 6723<br>Fax: 650 636 9251<br><br>*Attorneys for Debtors and Reorganized Debtors* | |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' REPLY BRIEF IN SUPPORT OF OBJECTION TO CLAIM OF DAVID P. ADDINGTON (CLAIM NO. 3093)**<br><br>[Relates to Docket No. 10673] |

PG&E Corporation and Pacific Gas and Electric Company ("**PG&E**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this reply brief in support of the Reorganized Debtors' objection to the claim of David P. Addington (Claim No. 3093) (the "**Addington Claim**") through the *Reorganized Debtors' Seventy-Ninth Omnibus Objection to Claims (Books and Records Claims)* (the "**Omnibus Objection**") [Docket No. 10673], and in response to *Creditor David P. Addington's Opposition to Debtors' Objection to Claim of David P. Addington (Claim No. 3093)* (the "**Opposition**").

This reply brief is presented in further support of the *Reorganized Debtors' Opening Brief in Support of Objection to Claim of David P. Addington (Claim No. 3093)* [Docket No. 11767] filed on December 29, 2021 (the "**Opening Brief**"), and is supported by the *Parties' Joint Statement of Undisputed Facts Regarding Reorganized Debtors' Seventy-Ninth Omnibus Objection to Claims – Claim of David Addington (Claim No. 3093)* [Docket No. 11736] (the "**Joint Statement**" or "**J.S.**")[1] filed on December 21, 2021. Concurrently with this reply brief, the Reorganized Debtors are filing the *Reorganized Debtors' Motion to Strike and Evidentiary Objections to Additional Documents Filed by David P. Addington* (the "**Motion to Strike**").

### I. PRELIMINARY STATEMENT

The parties and the Court agreed that the Court need only answer one question to dispose of the Addington Claim: As of the Petition Date, did PG&E hold title to its Easement over the Addington Property? If the answer is yes, Mr. Addington cannot assert his proof of claim alleging that PG&E must pay a purported "High Voltage Energy Access Charge." To aid the Court in this decision, at the Court's direction, the parties conferred and submitted a joint statement of undisputed facts with respect to this question.

As discussed in detail in the Opening Brief, the Reorganized Debtors submit that Mr. Addington's Termination Notice, by itself, could not terminate PG&E's rights to the Easement. His pre-

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Opening Brief or the Joint Statement.

1

petition efforts were therefore insufficient as a matter of law to extinguish the easement.[2] Mr. Addington asserted in the Addington Claim and his previous filings that the opposite is true, and that his Termination Notice was entirely legally sufficient to extinguish PG&E's title to the easement.

But having agreed to the Court's instructions as to the scope of dispositive legal issues to be briefed in this matter within the confines of the undisputed facts set forth in the Joint Statement, Mr. Addington now disregards the Court's directives and uses the Opposition to introduce new facts and try to change the question at issue. In his Opposition, Mr. Addington argues that the validity of the Termination Notice depends on the facts and circumstances surrounding his issuance of the Termination Notice—facts and circumstances that were not included in the Joint Statement and which the Reorganized Debtors dispute. In essence, Mr. Addington implicitly concedes that the Easement could not have been extinguished absent (i) PG&E's consent or (ii) a determination by a court of competent jurisdiction, and he now argues that there are "triable issues of fact" for this Court to determine that he had the right to terminate the Easement. (Opp'n 2, 3, 5.).

Mr. Addington's new request—that the Court weigh the facts surrounding the condition of the Addington Property and PG&E's 2016 work and impose its judicial imprimatur to extinguish an easement retroactively to July 2017, five years ago—is unfounded by any legal principle and is beyond the scope of any claim before the Court. Furthermore, it is entirely inconsistent with the fundamental basis of the Addington Claim: Mr. Addington cannot charge PG&E the "High Voltage Energy Access Charge" dating from 2017 when Mr. Addington is asking the Court in 2022 to extinguish PG&E's title to the Easement. If this Court were to entertain Mr. Addington's request, the Reorganized Debtors should have the full opportunity to contest Mr. Addington's factual claims and submit their own evidence to refute Mr. Addington's allegations, to be heard at an evidentiary hearing. However, the Reorganized

---

[2] The Opposition repeatedly misstates this argument, characterizing PG&E's position to be that Mr. Addington was barred "as a matter of law" from ever terminating the Easement. PG&E has never argued that termination of the Easement was a completely unavailable remedy to Mr. Addington. The courts were always open to him to seek redress for any alleged violations of the Easement by PG&E. As is clear from the Joint Statement and Mr. Addington's Additional Facts (defined below), such efforts would have been unsuccessful, which is why Mr. Addington now relies entirely on the Termination Notice to argue that PG&E must bear the burden of proving it has not harmed Mr. Addington in its use of the Easement.

Debtors submit that even that should not be necessary here, as neither the facts in the Joint Statement nor Mr. Addington's impermissibly introduced additional facts justify termination of the Easement.

## II. ADDINGTON'S NOTICE OF TERMINATION CANNOT TERMINATE PG&E'S RIGHTS TO THE EASEMENT

### A. Addington Bears the Ultimate Burden of Proof as to All Aspects of His Claim

The Opposition mentions the "high threshold" PG&E must meet to defeat the Addington Claim. (Opp'n 1, 5, 7.) This is backwards. It is Mr. Addington who is seeking millions of dollars from PG&E's bankruptcy estate, and therefore it is his burden to prove every element of the Addington Claim.

The Reorganized Debtors having supported their objection to the Addington Claim by the facts and law set forth in the Omnibus Objection, Opening Brief, Joint Statement, and other filings in this matter, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996). If the objecting party produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant—Mr. Addington—to prove the validity of the claim by a preponderance of the evidence. *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting *Consol. Pioneer*, 178 B.R. at 226). The ultimate burden of persuasion remains at all times upon the claimant. *Id.* (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)). Even outside of the bankruptcy context, a quiet title claimant has the burden of proof to show every element of the right claimed. *See Collins v. Cty. of Monterey*, No. 19-cv-01214-NC, 2021 U.S. Dist. LEXIS 77733, at *14 (N.D. Cal. Apr. 21, 2021); *City of Santa Maria v. Adam*, 211 Cal. App. 4th 266, 298 (2012).

## III. THE TERMINATION NOTICE BY ITSELF WAS INSUFFICIENT AS A MATTER OF LAW TO EXTINGUISH PG&E'S EASEMENT

For the Addington Claim to have any merit, Mr. Addington must prove that his Termination Notice was effective to extinguish PG&E's legal title to the Easement over PG&E's objection and without its consent, even though he never sought to vindicate his claimed right to terminate before any

3

court of competent jurisdiction.

The termination clause of the Easement reads: "Any violation of the conditions of this grant shall terminate and extinguish the easement hereby granted." The Court identified the critical defect in Mr. Addington's claim nearly a year ago at the June 30, 2021 status conference on the Addington Claim:

> THE COURT: What if you [Addington] breached the agreement? So I mean, it is unilateral; it's unclear who can terminate and under what circumstances. And what if one side determines -- who makes the determination that there's been a violation? In fact, it almost self -- it self-destructs if there's a violation, but who determines whether there's a violation? So what if you determine that there was a violation but the company says no, there wasn't a violation?
>
> June 30, 2021 Hr'g Tr. 31:6-13.

Mr. Addington does not dispute PG&E's title to the Easement prior to the Termination Notice. (J.S. ¶¶ 3-7.) PG&E's use of the Easement—from the time before Mr. Addington purchased the Property to the present day—is also undisputed. (J.S. ¶ 21.) If the facts surrounding PG&E's usage of the Easement give rise to an action for its termination, it is incumbent upon Mr. Addington to bring such an action, as he is the one seeking to extinguish PG&E's title to the Easement. *See, e.g., Reichardt v. Hoffman*, 52 Cal. App. 4th 754, 768 (1997) (party seeking extinguishment of an easement must provide evidence of burden on servient tenement).

Addington argues, with no support, that "[i]f PG&E contests the termination of the Easement pursuant to that remedy it has the prerogative to challenge the termination in a quiet title action, but the onus to bring the action is not on me." (Opp'n 10.) There is no legal basis for Mr. Addington to place himself in this privileged position.

The case law and statutory authority cited by the Reorganized Debtors in the Opening Brief make clear that it is the <u>courts</u> that must determine whether to grant or deny a forfeiture of an easement—and Mr. Addington does not cite law to the contrary. Forfeitures "are not favored **by the courts**, and are never enforced if they are couched in ambiguous terms." *Sanders v. E. Bay Mun. Util. Dist.*, 16 Cal. App. 4th 125, 130 (1993) (citation omitted) (emphasis added). Civil Code section 1442 states: "A condition involving a forfeiture must be strictly ***interpreted*** against the party for whose benefit it is created." *Id.* (citing Cal. Civil Code § 1442) (emphasis added). "[A] ***court*** has a duty to construe a

4

contract to avoid a forfeiture, if at all possible." *Maples v. Solarwinds, Inc.*, 50 F. Supp. 3d 1221, 1228 (N.D. Cal. 2014) (emphasis added). "A covenant the breach of which may result in a forfeiture will be ***construed*** strictly against the person relying upon the breach." *Salton Cmty. Servs. Dist. v. Southard*, 256 Cal. App. 2d 526, 535 (1967) (emphasis added).

Contrary to Mr. Addington's assertions, the language of the termination clause does not grant him the sole power and authority to terminate the Easement. The Easement, granted to PG&E's predecessor in 1908, does not provide for it to effectively be un-granted at the discretion of the grantor or its successor. What Mr. Addington seeks here is a shortcut, the equivalent of a party alleging a breach of contract walking into its counterparty's bank to withdraw its deposits as damages. Absent its consent, PG&E cannot be deprived of its rights to the Easement without due process of law.

The condition that Mr. Addington alleges PG&E breached does not give Mr. Addington the right to terminate the easement without a judicial determination: "and the said party of the second part [PG&E], in the enjoyment of the rights hereby granted, shall avoid so far as it reasonably can interfering with the use by the party of the first part [Addington] of said strip of land for any and all purposes." The Grant provides that PG&E has the right to "erect and maintain two lines of steel towers . . . for the purpose of suspending and stringing wires thereon and supported thereby for the transmission and distribution of electricity . . ." Coupled with the right to "erect and maintain" the towers are PG&E's so-called "secondary rights" to the Easement. An easement based on a grant gives the easement holder those interests expressed in the grant and those necessarily incident thereto, including the right to do such things on the property as are necessary for the full enjoyment of the easement itself. *See Dolnikov v. Ekizian*, 222 Cal. App. 4th 419, 428 (2013) (quoting *Norris v. State of California ex rel. Dept. Pub. Wks.*, 261 Cal. App. 2d 41, 46-47 (1968) and *Pasadena v. California-Michigan etc. Co.*, 17 Cal.2d 576, 579 (1941)).

The question of whether PG&E, in the exercise of *its rights* to maintain its towers on the Addington Property, has avoided interfering with Mr. Addington's rights under the Easement "so far as it reasonably can" requires a judicial determination, *see Dolnikov v. Ekizian*, 222 Cal. App. 4th at 430 (reasonableness depends on the facts and circumstances of each case), and should therefore be strictly

5

construed against Addington if he is relying on its breach to claim a forfeiture of the Easement. Neither this language nor the termination clause grant Addington the power to unilaterally terminate PG&E's rights to the Easement without a court finding.

### IV. THE STIPULATED FACTS IN THE JOINT STATEMENT DO NOT JUSTIFY TERMINATION OF THE EASEMENT

At the November 9, 2021 status conference, the Court directed the parties to prepare a statement of agreed facts, which would serve as the record for the Court's decision on whether PG&E's Easement was terminated. Based on the discussion at the status conference, the Court found – and the parties agreed – that the facts necessary to decide the issue before the Court were short, undisputed, and straightforward:

> THE COURT: I'll have enough faith in the system that what I just summarized will be what you'll draft, and it won't be twenty more pages of history that Mr. Rupp feels – excuse me, that Mr. Addington feels that he wants to respond to.
> So Mr. Rupp, try your hand at the first draft at a brief statement of agreed facts and see if Mr. Addington will agree. If Mr. Addington disagrees, I guess I will – certainly will give him an opportunity to make his own statement of facts.
> ***The one thing I don't want to do is turn what really ought to be teed up as a legal argument into a disputed factual issue that requires a different set.*** So that we all – there ought to be a way to just -- to briefly and clearly for the purposes of appeal.
> I know the facts. I just gave them to you. I look forward to the legal briefs. But I -- again, as a trial judge, I have to make sure that there's a record that's clear that goes to the appellate court if there's a review.

Nov. 9, 2021 Hr'g Tr. 22:17-23:9 (emphasis added). Counsel for PG&E worked cooperatively with Mr. Addington to develop the Joint Statement such that it would be acceptable to both parties and in line with the Court's guidance that an evidentiary hearing was not necessary to decide the dispositive issue. The parties exchanged a number of draft statements of facts over the span of several weeks—right up to the Christmas holiday—and ultimately were successful in reaching consensus on and finalizing the Joint Statement without the need for further intervention by the Court.

The Joint Statement covers the history of the Grant and the Easement, PG&E's use of the Easement, the work done on the Addington Property to maintain the towers in 2016, and the documentation of the agreements between Mr. Addington and PG&E regarding this work, including the release by Mr. Addington of PG&E for the work that was done on the Addington Property. This is the

6

factual record the parties agreed encompassed all facts necessary for the Court to decide the legal issues regarding whether the Easement had been terminated. The Joint Statement does not present any facts evidencing a violation of the terms of the Grant giving rise to cause for termination of the Easement— nor does Mr. Addington cite to any such facts. It does not state any facts—and Mr. Addington does not point to any facts in the Joint Statement—evidencing any permanent damage to the Addington Property that would be inconsistent with PG&E's use of the Easement that would justify the extinguishment of the Easement. Nor does it state any facts—and Mr. Addington does not point to any facts in the Joint Statement—evidencing PG&E's "performance of an act . . . which is incompatible with [the Easement's] nature or exercise," as Mr. Addington must prove. *See* Cal. Civil Code § 811(3). Indeed, the Opposition does not cite a single fact **in the Joint Statement** as evidence that PG&E has unreasonably interfered with Mr. Addington's use of the Easement.

*Instead*, the Opposition attempts to raise new facts outside the Joint Statement to contend that PG&E unreasonably interfered with Mr. Addington's use of the Easement *after* PG&E completed its tower restoration work and was released by Mr. Addington in exchange for a settlement payment. (Opp'n 4.) This alleged post-work "interference" is not described in the Joint Statement co-signed by Mr. Addington. Had Mr. Addington wished to include these facts in the Joint Statement, it would have been incumbent on him to propose their inclusion to PG&E so that the parties could attempt to comply with the Court's directive of one agreed factual record necessary to consider the legal question before the Court.

Accordingly, even if the Court were to consider Addington's new position—that the Court must consider the facts surrounding the Termination Notice to determine whether the Termination Notice was valid—it cannot find for Mr. Addington on the factual record properly before it, which was agreed to and jointly submitted by the parties.

V. **ADDINGTON'S ADDITIONAL FACTUAL SUBMISSIONS DO NOT JUSTIFY TERMINATION OF THE EASEMENT**

Unable to use the facts presented in the Joint Statement at the instruction of the Court to support his Opposition, Mr. Addington submitted – without leave of the Court – a *Declaration in Support of*

7

*Creditor David P. Addington's Opposition to Debtors' Objection to Claim of David P. Addington (Claim No. 3093)* [Docket No. 12102] (the "**Addington Declaration**"). The Addington Declaration references fifteen exhibits, marked A-O. [Docket No. 10201][3] (the exhibits, together with the Addington Declaration, the "**Additional Facts**").

Viewed in light of the Court's clear directions at the November 9, 2021 status conference, if Mr. Addington believed that the Additional Facts were needed for this Court to resolve the issue of whether he terminated the Easement, it was incumbent upon him to ensure that those facts were incorporated into the Joint Statement that the Court directed should be the limit of the factual record before it. If the parties were unable to come to an agreement on what was to be included in the Joint Statement, they would have needed to return to the Court for guidance on a new briefing schedule with disputed facts or the setting of an evidentiary hearing. But Mr. Addington *did* sign off on the Joint Statement. *See* Nov. 9, 2021 Hr'g Tr. 23:1-7.[4] It is entirely inappropriate, and prejudicial to PG&E, for PG&E to comply with the directives of the Court in preparing and relying on a joint statement of undisputed facts to support the briefing on this issue, only to then be forced to respond to a new declaration filed by Mr. Addington attaching many pages of exhibits. Mr. Addington's new contentions that there are "triable issues of fact" with respect to the validity of the Easement entirely contradict his previous position, as well as the Court's finding and the parties' concurrence that the question before the Court could be decided on undisputed facts.[5] To the contrary, the Additional Facts are disputed and outside of the scope of the Court's instructions.

---

[3] Although these exhibits are attached to the Opposition, the Reorganized Debtors believe this may have been due to a clerical error in docketing Mr. Addington's filings submitted through the pro se filing portal on the Court's website.

[4] The Court: "The one thing I don't want to do is turn what really ought to be teed up as a legal argument into a disputed factual issue that requires a different set . . . . I know the facts. I just gave them to you. I look forward to the legal briefs."

[5] *Cf.*, the status conference statement filed by Mr. Addington the day before the November 9, 2021 status conference: "Mr. Addington did not 'attempt' to terminate the subject easement – he did in fact terminate it. As of the scheduled hearing date of November 9, 2021, there has been no easement encumbering 298 Saint James for 1,622 days." [Docket No. 11551]. *See also* Mr. Addington's June 15, 2017 e-mail to a PG&E representative (Add'l Facts, Ex. K, p.7): "In the case at hand, the easement's documentation plainly empowers the Grantor to unilateral termination."

8

But even if the Court were to consider the Additional Facts at this time, it would not find cause for the termination of the Easement there. At the outset, the photographs Mr. Addington includes in Exhibit A show that he completed the landscaping of his yard in the fall of 2017. It is therefore unclear what exactly he was ultimately prevented by PG&E from accomplishing with respect to the landscaping of his yard. The Addington Declaration is rifled with conclusory statements and argument, the thrust of which is that PG&E unreasonably interfered with Mr. Addington's use of the Addington Property in 2017 through the seven alleged facts bullet-pointed in Section V. These alleged "facts" fail to demonstrate cause to terminate the Easement necessary to meet Mr. Addington's burden. In connection with those alleged facts, Mr. Addington attaches a number of increasingly confrontational e-mails (not included in the Joint Statement) from him, along with PG&E's responses, regarding the condition of his yard and his improperly affixing his own security lights to PG&E's towers. As it is undisputed that PG&E owns the towers themselves, Mr. Addington's assertion that PG&E's removal of his lights from the towers was an unreasonable act by PG&E has no legal or logical foundation. That PG&E's report (Add'l Facts, Ex. H, p. 7) stated that an engineered solution should be obtained for any ground disturbance near the tower legs—in other words, that the earthwork requested by Mr. Addington, abutting a high-voltage transmission tower in a hilly section of Piedmont, should be done with the oversight and expertise of a professional—does not mean that PG&E unreasonably violated the Easement by barring Mr. Addington from altering the landscape of his yard.

Finally, Mr. Addington offers reports by a title company as evidence of the Easement's termination – but the title company does not have the right or authority to determine whether an easement has been terminated any more than Mr. Addington does. In any event, the preliminary title report from 2018 attached as Exhibit O lists "any easements or servitudes appearing in the public records" as an exception to coverage.

The easement grants PG&E the express right to "erect and maintain" two lines of steel towers for supporting wires for the transmission and distribution of electricity. "[T]he servient owner may use his property in any manner not inconsistent with the easement so long as it does not *unreasonably impede* the dominant tenant in his rights." *Dolnikov v. Ekizian*, 222 Cal. App. 4th at 429-30 (quoting *City of Los*

9

*Angeles v. Howard*, 244 Cal. App. 2d 538, 543 (1966)) (italics added in *Dolnikov*). "Actions that make it more difficult to use an easement, that interfere with the ability to maintain and repair improvements built for its enjoyment, or that increase the risks attendant on exercise of rights created by the easement are prohibited . . . ***unless justified by needs of the servient estate***." *Dolnikov v. Ekizian*, 222 Cal. App. 4th at 429-30 (quoting Restatement (Third) of Property, Servitudes, § 4.9, cmt. c., p. 583) (italics added in *Dolnikov*, bold italics added). As the holder of a tower easement, PG&E has the express right to maintain the tower structures in a manner that is not unreasonably impeded by Mr. Addington's residual use of the easement area. For these reasons, Mr. Addington's disagreements with PG&E regarding PG&E's rights to operate and maintain its towers, including his desires to modify the ground level surrounding those towers, do not give Mr. Addington cause to terminate the Easement.

To the extent the Court determines that it should consider the Additional Facts and that they support Mr. Addington's Claim, the Reorganized Debtors request the right to supplement the record and introduce facts to contest Mr. Addington's Additional Facts.

## VI. <u>RESERVATION OF RIGHTS</u>

The Omnibus Objection reserved all of the Reorganized Debtors' rights to object to the Addington Claim on any basis whatsoever.[6] The Reorganized Debtors reaffirm these rights as to the Addington Claim and any other claim filed by Mr. Addington. The Reorganized Debtors further reserve all counterclaims, rights, and defenses arising out of, relating to, or in connection with the Addington Claim.

---

[6] "The Reorganized Debtors hereby reserve the right to object, as applicable, in the future to any of the Proofs of Claim listed in this Objection on any ground, and to amend, modify, or supplement this Objection to the extent an objection to a claim is not granted, and to file other objections to any proofs of claims filed in these cases, including, without limitation, objections as to the amounts asserted therein, or any other claims (filed or not) against the Debtors, regardless of whether such claims are subject to this Objection. A separate notice and hearing will be scheduled for any such objections. Should the grounds of objection specified herein be overruled, wholly or in part, the Reorganized Debtors reserve the right to object to the No Legal Liability Claims on any other grounds that the Reorganized Debtors may discover or deem appropriate." (Omnibus Objection at 7.)

10

WHEREFORE, the Reorganized Debtors respectfully request entry of an order (i) sustaining the Omnibus Objection with respect to the Addington Claim, (ii) disallowing and expunging the Addington Claim in its entirety, and (iii) granting such other and further relief as the Court may deem just and appropriate.

Dated: May 3, 2022

**KELLER BENVENUTTI KIM LLP**

By: /s/ Thomas B. Rupp
       Thomas B. Rupp

*Attorneys for Debtors and Reorganized Debtors*

11