# EXHIBIT B

**(Memorandum Decision dated March 8, 2022)**

Signed and Filed: March 8, 2022



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

```
             UNITED STATES BANKRUPTCY COURT

             NORTHERN DISTRICT OF CALIFORNIA

In re:                          ) Bankruptcy Case
                                ) No. 19-30088-DM
PG&E CORPORATION,               )
                                ) Chapter 11
       - and -                  )
                                ) Jointly Administered
PACIFIC GAS AND ELECTRIC COMPANY,)
                                )
       Reorganized Debtors.     )
                                )
☐ Affects PG&E Corporation      )
☐ Affects Pacific Gas and       )
    Electric Company            )
☒ Affects both Debtors          )
                                )
* All papers shall be filed in  )
the Lead Case, No. 19-30088 (DM).)
                                )
_____)
```

**MEMORANDUM DECISION REGARDING DISPUTE BETWEEN DEBTORS AND THE CALIFORNIA DEPARTMENT OF WATER RESOURCES**

On March 2, 2022, the court heard oral argument regarding *California Department of Water Resources' Motion for Order Determining that The Castle Rock Agreement with PG&E Cannot be Assumed and that The Department of Water Resources' Claim No. 78104 be Paid* (the "DWR Motion") (Dkt. 11887) and the *Motion of*

*the Reorganized Debtors for Entry of an Order Modifying Plan Injunction and Compelling Arbitration of Claim of California Department of Water Resources* (the "Debtors' Motion") (Dkt. 11896), together with the accompanying memoranda, declarations and other filings.

Having considered the matters fully, the court concludes that the DWR Motion should be GRANTED and the Debtors' Motion should be DENIED.

Long before these bankruptcy cases were filed, the dispute between these opposing parties was identified and framed, and either side could have initiated the arbitration procedures of the 1984 Cotenancy Agreement ("Agreement"). Neither did. Even after the petitions were filed on January 29, 2019, that procedure was available, either by DWR, perhaps after first seeking relief from stay, or by Debtors. Again, neither pursued that procedure.

All that changed when the Debtors' Plan of Reorganization (the "Plan") was negotiated, filed, considered and confirmed. As pointed out by DWR, specific provisions were inserted into the Plan and the Order Confirming the Plan (the "OCP") to deal with and reserve for later resolution very numerous open issues relating to executory contracts between Debtors and many governmental agencies, including DWR.

Among the most relevant of them are:

34. <u>Determination of Cure Disputes.</u>
a. Pursuant to Section 8.2(c) of the Plan, **in the event of an unresolved dispute regarding** (i) any Cure Amount, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the

-2-

Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or **(iii) any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be resolved by a Final Order of the Court,** which may be entered after the Effective Date. (emphasis added).

67. <u>Governmental Performance Obligations.</u>
d. Notwithstanding anything in this Confirmation Order, the Plan, or the Plan Documents, the listing of a matter as an "executory contract" or an "unexpired lease" in the Debtors' schedules or Plan Documents (a "Potentially Assumed Contract/Lease") is without prejudice to any contention by any Governmental Unit that the matter is not in fact an executory contract or unexpired lease as set forth in section 365 of the Bankruptcy Code. With respect to any Cure Amount for a Potentially Assumed Contract/Lease for which the United States or any department, agency, or instrumentality of the State of California (collectively, the "Governmental Parties") is listed as the Non-Debtor Counterparty, all parties reserve all rights to dispute such Cure Amount. **If any Governmental Party disputes (i) that any Potentially Assumed Contract/Lease is in fact an executory contract or unexpired lease** or (ii) any Cure Amount, such Governmental Party shall have no later than ninety (90) days after the Confirmation Date (or such later date as may be mutually agreed upon between the applicable Governmental Party and the Debtors or Reorganized Debtors) to file and serve an objection setting forth such dispute, and **any such dispute shall be resolved by the Bankruptcy Court.** (Emphasis added).

DWR is adamant that after it gave its notice of termination of its participation in the Agreement on June 30, 2018, effective one year later, there was nothing left for it to do or for Debtors to assume. All that remains is for Debtors to pay a refund of $101,026.75, now reflected in Proof of Claim No. 78104 that is presumptively allowed and has not been the subject of an objection.

-3-

Debtors take a contrary view, reflected as early as when the court was considering confirmation of the Plan. Debtors filed their *Schedule of Executory Contracts and Unexpired Leases to be Assumed Pursuant to the Plan and Proposed Cure Amounts* attached to the Plan Supplement as Exhibit B ("Cure Notice") (Dkt. 7037).

That lengthy schedule included the Agreement. Thus, even to the present date, Debtors maintain that the Agreement was subject to assumption because it was not rejected, and the resolution of the remaining dispute that is the subject of the present motions is part and parcel of the entire bundle of rights and obligations of the parties that must be resolved through arbitration.

Given the very specific attention given to matters that plainly include the present dispute, the court is satisfied that the Plan and the OCP reserving jurisdiction in this court to resolve them prevail over those relied on by Debtors to require the court to order arbitration.

In *In re Thorpe Insulation Co.,* 671 F.3d 1011 (9th Cir. 2012), the court established the principles that guide bankruptcy courts in dealing with arbitration provisions versus bankruptcy alternatives. Those principles convince this court to exercise its discretion not to order arbitration at present.

*Thorpe* involved a very complex reorganization of an asbestos mass torts case and the implementation of 11 U.S.C. § 524(g). It was a dispute of massive proportions and was obviously quite critical to the outcome of the bankruptcy as a whole.

In contrast, Debtors would not have been in bankruptcy at all but for the tragic wildfires of 2015, 2017 and 2018, none of which have anything to do with the present dispute. It is easy to assume that had those fires not occurred, no bankruptcy court would have been called upon to deal with the present dispute with DWR.

The determination of whether the Agreement is an executory contract that may be assumed, and if so under what circumstances and leading to what consequences, is clearly a core matter for determination unless the arbitration option is more appropriate. The core question is not a dispositive factor, but one that should be considered. *Thorpe* taught that"[i]n core proceedings, by contrast, the bankruptcy court at least when it sees a conflict with bankruptcy law, has discretion to deny enforcement of an arbitration agreement." *Thorpe* 671 F.3d at 1021 (citations omitted).

The Ninth Circuit agreed with other circuit courts that permit bankruptcy court discretion to decline enforcement or otherwise applicable arbitration provisions "only if arbitration would conflict the underlying purposes of the Bankruptcy Code." *Id.* (citations omitted). Had either party initiated arbitration after DWR gave its notice of termination in 2018 but before the bankruptcy, there is no doubt that such course would have to be followed. Even if either party had sought to do so after bankruptcy, but before consideration of the Plan, the same result appears likely.

Regardless of what could have happened, Debtors chose to reserve the disposition of this dispute as a post-Confirmation

-5-

matter as indicated above. While this court is not unmindful of the tremendous complexity of the reorganization effort, and even the complexities encountered apart from the wildfire problems, Debtors still made an election of how best to proceed. They could have excluded the Agreement from the list of matters to be disposed of later but did not. Thus, the deferral of resolving the issue through the plan mechanisms was a conscious choice.

*Thorpe* stated:

> "Arbitration of a creditor's claim against a debtor, even if conducted expeditiously, prevents the coordinated resolution of debtor-creditor rights and can delay the confirmation of a plan of reorganization."

*Id.* at 1023.

There was no delay in consideration of the Plan and its subsequent confirmation and implementation. The court cannot ignore that conscious choice of the Debtors to proceed under the procedures and reservations they established and which DWR and other governmental agencies responded by their reservation of rights as noted.

Even though this issue is presented to the court nearly two years after the Plan was confirmed, there is still a risk that an outcome achieved via arbitration, at least on the issues of whether the Agreement was to the reserved assumption provisions of the Plan at all, and whether DWR could be required to pay anything after it gave its notice of termination, would conflict with those policies articulated by *Thorpe* and memorialized in the Plan and the OCP.

Under the circumstances presented, and consistent with the admonitions of *Thorpe*, the court prefers to exercise its

discretion and keep that dispute here.  If the outcome is as DWR hopes, the matter is over, subject only to the possibility of appellate review.  If the outcome favors Debtors, the question of liquidation of the <u>amount</u> of damages to be paid by DWR <u>may</u> be more appropriately determined through arbitration.

There are no material facts in dispute regarding whether DWR should or should not be ordered to pay its share of the net loss upon termination of the Agreement.  DWR looks to Section 14.5 of the Agreement to insulate it from such a charge because the other parties continued to operate under it.  Debtors rely on Section 14.7 to hold DWR responsible for its share for termination in the future.

Collateral to that, and of relatively minor importance, is whether Claim No. 78104 should be paid.  So far Debtors have not asserted any substantive objection to it, but maintain that if they prevail on the termination issue that would represent little more than a minor offset in DWR's favor.

It is now time to put this dispute to rest.  Debtors have until March 25, 2022, to file a memorandum, not to exceed twenty pages and limited to this discrete issue described above, in support of their position.  DWR has until April 8, 2022, to file a reply memorandum, not to exceed twenty pages and similarly limited.  After that the matter will stand submitted unless the court decides to consider oral argument.

If the decision is that DWR prevails, then that should be the end of it, subject only to Debtors paying Claim No. 78104.  If Debtors prevail on that discrete issue, the court will revisit the question of the amount DWR's future liability upon

termination should be determined through arbitration or via a damages trial in this court.

The court is concurrently issuing orders consistent with this Memorandum Decision.

**\*\*END OF MEMORANDUM DECISION\*\***

-8-