1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                  -oOo-

4   In Re:                      ) Case No. 19-30088
                                ) Chapter 11
5   PG&E AND PACIFIC GAS AND     )
    ELECTRIC COMPANY,            ) San Francisco, California
6                               ) Tuesday, May 10, 2022
                    Debtors.    ) 10:00 AM
7   _____  )
                                  REORGANIZED DEBTORS' SEVENTY-
8                                 NINTH OMNIBUS OBJECTION TO
                                  CLAIMS (BOOKS AND RECORDS
9                                 CLAIMS) (CLAIM OF DAVID
                                  ADDINGTON, CLAIM NO. 3093)
10                                FILED BY PG&E CORPORATION
                                  [10673]
11
                                  PRE-TRIAL CONFERENCE RE
12                                REORGANIZED DEBTORS'
                                  OBJECTION TO PROOF OF CLAIM
13                                NO. 58562 FILED BY FULCRUM
                                  CREDIT PARTNERS LLC AS
14                                TRANSFEREE OF TUSCAN RIDGE
                                  ASSOCIATES, LLC FILED BY PG&E
15                                CORPORATION [11288]
                                  (CONTINUED TO 5/17/22)
16
                                  PRE-TRIAL CONFERENCE RE
17                                MOTION FOR RELIEF FROM STAY
                                  FILED BY FULCRUM CREDIT
18                                PARTNERS LLC [11066]
                                  PRINTED (CONTINUED TO
19                                5/17/22)

20
                    TRANSCRIPT OF PROCEEDINGS
21          BEFORE THE HONORABLE DENNIS MONTALI
                UNITED STATES BANKRUPTCY JUDGE
22

23

24

25

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

1

APPEARANCES (All present by video or telephone):

2

For the Reorganized          THOMAS B. RUPP, ESQ.
3   Debtors:                     Keller Benvenutti Kim LLP
                                 650 California Street, Suite 1900
4                                San Francisco, CA 94108
                                 (415)364-6798
5

Also Present:                David Preston Addington,
6                                Claimant

7

8

9

10

11

12

13

14

15

16

17

18   Court Recorder:              LORENA PARADA/ANKEY THOMAS
                                 United States Bankruptcy Court
19                               450 Golden Gate Avenue
                                 San Francisco, CA 94102
20

21   Transcriber:                 SHARONA SHAPIRO
                                 eScribers, LLC
22                               7227 N. 16th Street
                                 Suite #207
23                               Phoenix, AZ 85020
                                 (973)406-2250
24

Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, MAY 10, 2022, 10:00 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session, the Honorable

5    Dennis Montali presiding.  Calling the matter of PG&E

6    Corporation.

7            I'll bring in Mr. Addington.

8            THE COURT:  All right. Good morning, Mr. Addington.

9            MR. ADDINGTON:  Good morning.

10           THE COURT:  And Mr. Rupp appearing.

11           Mr. Addington, can you state your appearance, please?

12           MR. ADDINGTON:  Yes.  One moment, if you would, Your

13   Honor.  I'm going to see if I can get my video camera to work.

14           THE COURT:  Okay.  Mr. Rupp, while he is doing that,

15   you can state your appearance, please.

16           MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

17   Keller Benvenutti Kim, on behalf of the reorganized debtors.

18           THE COURT:  So I assume you've got the watch today,

19   right?  Mr. Rupp, you're going to make the argument?

20           MR. RUPP:  Yeah.

21           THE COURT:  Okay.

22           MR. RUPP:  Yes, sir.

23           THE COURT:  Okay.  Let's see if Mr. Addington is going

24   to join us here.

25           MR. ADDINGTON:  Well, I can hear you, Your Honor.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1    THE COURT:  Right.  Well, you're welcome -- I mean,

2  you don't need to have the camera on.  I'm happy to see you,

3  and I'd like to -- and greet you personally.  But if, for some

4  reason, the camera is a problem, you can make your argument

5  without it.

6    MR. ADDINGTON:  Well, I'm happy to do so.  I'm

7  apologetic that it is not working properly, but I guess I --

8  I'd like to blame staff, but --

9    THE COURT:  Well, you've got one of your kids.  Bring

10  one of your kids, and they can always --

11    MR. ADDINGTON:  I know.  I wanted to get them to do

12  that before they left for school.

13    Anyway, I'm not sure if it is going to work.  As long

14  as you can hear me, I can assure you, I'm dressed appropriately

15  and ready to make my argument.

16    THE COURT:  I'm not worried about your dress, and

17  you're free to begin.  And let me know what portion of your

18  twenty minutes do you want to reserve?

19    MR. ADDINGTON:  Well, I think I would like to reserve

20  ten minutes --

21    THE COURT:  Okay.

22    MR. ADDINGTON:  -- for my response.  So --

23    THE COURT:  Okay.  So go ahead and begin then, please.

24    MR. ADDINGTON:  I'd like to just make clear that I'm a

25  creditor in the PG&E bankruptcy case, as you know.  And really

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1    that's all I'm asking of this Court is to ask the debtor to pay

2    me what it's owed -- what I'm owed for that now 1,804 days that

3    it has been on my property after the termination of the

4    easement.

5          The debtor has, from the beginning, held that the

6    easement cannot be terminated as a matter of law.  Prior to

7    this hearing and this motion, the folks from PG&E have actually

8    provided me a couple of other sets of documents purporting to

9    put forth the position that the easement is not terminatable as

10   a matter of.

11         THE COURT:  Well, are those documents in the record?

12         MR. ADDINGTON:  No, sir.  Those were before the

13   bankruptcy case even occurred.

14         THE COURT:  Well, I understand that, but for me to

15   consider them, they must be in the record before the Court.

16         MR. ADDINGTON:  No.  Yes, sir; I understand that.  I

17   mention it only because I think -- not that it is relevant to

18   the matter being heard today, but relevant to, sort of, I

19   guess, my negative attitude toward this process and relevant to

20   what I believe will be the next phases in the hearing.

21         THE COURT:  So that's one of the questions I put to

22   you.  Let's take best case, worst case.  Best case, I grant

23   your motion.

24         MR. ADDINGTON:  Well, sir, I don't have a motion.

25         THE COURT:  Well, okay, I overrule the objection.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1      MR. ADDINGTON:  Yes, sir.

2      THE COURT:  Under bankruptcy law, a claim filed is
3  deemed allowed unless it's objected to.  The company has
4  objected to it, so it's at issue.

5      MR. ADDINGTON:  Yes, sir.

6      THE COURT:  If I were to overrule the objection, the
7  claim would be deemed allowed.  So what do you think happens
8  next if your claim is no longer the subject of an objection?
9  Leave aside the fact that, if I rule in your favor, PG&E has a
10  right to appeal.  That's not what we're talking about.  So
11  imagine that at the end of the hearing I say Mr. Addington is
12  correct, PG&E is wrong; the objection to his claim is
13  overruled.  What is the next step you believe occurs in support
14  of your claim, or you know, in --

15      MR. ADDINGTON:  Your Honor, I would think it would be
16  an evidentiary hearing where we would discuss two things, one,
17  which I believe would be Mr. Rupp's desire to hear evidence
18  regarding the actual termination and whether or not PG&E's
19  conduct rose to the level that would trigger such termination.
20  That would be an evidentiary matter.  And then secondly, what
21  do they owe me?

22      THE COURT:  What that sounds like is that the claim
23  isn't deemed allowed; it's still objected to.

24      MR. ADDINGTON:  Well, I mean, I'm assuming once --
25  again, I don't want to put words in Mr. Rupp's mouth, but given

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1    the fact that PG&E has, for five years, claimed it can't be

2    done as a matter of law, and there's certainly no matter of

3    law, will they then agree and go forth without any further

4    objection?  I doubt it.  I wish they would.  And for my

5    purposes, I'd like an evidentiary hearing to get to what

6    information is necessary to determine what might be owed for

7    these --

8            THE COURT:  So what would happen -- okay, now, let's

9    assume that we're at that evidentiary hearing.

10           MR. ADDINGTON:  Yes, sir.

11           THE COURT:  And you what are you going to present?

12   You have the burden of proof, so what are you going to prove?

13           MR. ADDINGTON:  Well, sir, what I'm going to prove, as

14   an evidentiary hearing, I assume I would have some opportunity

15   to ask the debtor some questions.

16           THE COURT:  What would you ask the debtor?

17           MR. ADDINGTON:  I would ask the debtor how much power

18   have they put through my property for these 1,804 days.

19           THE COURT:  Yeah.  And suppose they say four million

20   dollars' worth?

21           MR. ADDINGTON:  Then.  Then I would go and look at

22   both the law and other circumstances where someone has had a

23   trespass on someone's property and made four million dollars.

24   And from that I would determine here's what my claim reasonably

25   is.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1      THE COURT:  Well, what if I determine that your claim

2  reasonably is 25,000 dollars?

3      MR. ADDINGTON:  Well, sir, that's your prerogative,

4  and I'd say thank you very much.

5      THE COURT:  No, Mr. Addington, it's not a question of

6  prerogative.  It's a question of what is the evidence.  So

7  let's frame the question differently.  What if I determine that

8  the lease -- excuse me -- the easement has not been terminated,

9  then what happens next, in your mind?

10      MR. ADDINGTON:  I think if the easement has not been

11  terminated, then I guess I would ask the Court for an

12  evidentiary hearing to show that PG&E has acted in such a way

13  that the easement should be terminated.

14      THE COURT:  Well, is it all or nothing?  Your position

15  is it's all or nothing, right?  In other words, you believe

16  that, based upon your reading of the 1909 (phonetic)document,

17  that you had the right to do it, and therefore, what follows

18  follows.  And whether it's four million dollars or forty

19  million, it's not forty thousand, and you believe that you have

20  the right to take over the transmission of power?

21      MR. ADDINGTON:  Yes, sir.  And reading the easement

22  document, it appears there is one remedy for the default of the

23  debtor, PG&E.  If they refuse to act reasonably regarding this

24  easement, the easement itself says here's what happens.

25      THE COURT:  So what did they do that was -- what did

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1  PG&E do that was unreasonable?

2          MR. ADDINGTON:  Well, sir, I think that's the -- I'd

3  be happy to answer.  It's going to take way more than my twenty

4  minutes.

5          THE COURT:  But I need a summary, though.  That's my

6  point.  My point is that one of the mysteries about this case

7  is whether it really is all or nothing.  And let's just

8  assume -- and you've demonstrated tremendous effort and energy

9  and capability and research, and I compliment you on all of

10  that.  But it --

11          MR. ADDINGTON:  Thank you very much.

12          THE COURT:  It still comes back to, kind of, is it

13  really all or nothing?  Is it really Mr. Addington can either

14  have four million dollars or nothing?  And what if I determine,

15  for example, that the easement isn't affected, but maybe PG&E

16  should have fixed your yard and flattened your property?  In

17  other words, what if I determine that maybe PG&E acted

18  unreasonably, but the consequences aren't to lose a multi-

19  million-dollar power transmission capability, or to forfeit it

20  to you, but to compensate you, in some modest amount, money

21  that's commensurate with what you suffered from.  I mean, isn't

22  that another alternative?

23          MR. ADDINGTON:  Yes, sir.  And as you well know, I'm

24  not an attorney, and so I --

25          THE COURT:  I actually didn't know that. I don't know

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1    whether you're an attorney or not, but --

2            MR. ADDINGTON:  Oh, well, no, sir, I'm not an

3    attorney.  I dropped out after the first year.

4            THE COURT:  Okay.

5            MR. ADDINGTON:  And this is the first time I've made a

6    presentation in a courtroom --

7            THE COURT:  Okay.

8            MR. ADDINGTON:  -- of any sort.  So my understanding

9    is that that the Court has the ability to rule inequity, which

10   might be some sort of summary.  But I haven't researched it; I

11   don't know what would happen, sir.

12           THE COURT:  But what if I told you that, based upon

13   the evidence, maybe you've got a persuasive case for some

14   compensation that you're entitled to, but it isn't all or

15   nothing; it's 25,000 dollars, or 50,000 dollars, or 5,000

16   dollars, or something else, because maybe, even though you

17   signed the release, and one phase of the work was done, and you

18   believe that PG&E didn't honor its obligation, they take a

19   contrary view.  That's a fair thing to have a debate about.

20           But we're back to the point about, well, even if PG&E

21   acted unreasonably, is there a four-million-dollar consequence

22   of that?  And you seem to be conceding almost -- almost, in

23   your comments, that maybe there is another alternative, and

24   that is some kind of economic compensation to you, if the

25   evidence shows that they were at fault and you were not.

PG&E and Pacific Gas And Electric Company

1    MR. ADDINGTON:  Your Honor, I don't know what the law

2  allows, but in reading the easement, my remedy is termination

3  of the easement.  And if PG&E were allowed back on my property,

4  for any reason at any time, I would be very upset.  I don't

5  want them here.  They've made themselves completely unwelcome

6  by their actions, and the termination of the easement is the

7  remedy, when they act unreasonably regarding one of its

8  grantors.

9    THE COURT:  Again, we're back -- Mr. Addington, I'm

10  not trying to trap you here.

11    MR. ADDINGTON:  Yes, sir.

12    THE COURT:  Now you're back to the all or nothing.

13  And so is a court to say, well, maybe PG&E should have come out

14  with tractors and flattened the property, or maybe restored it

15  for different uses, but since they didn't, therefore they

16  should pay four million dollars?  That's a question that's --

17  you know, it's not easy to answer.

18    MR. ADDINGTON:  Your Honor?

19    THE COURT:  Why don't you go ahead and make whatever

20  further argument you want.

21    MR. ADDINGTON:  Yes, sir.  First, I can understand why

22  the Court would be hesitant to provide such a draconian -- or

23  to enforce such a draconian outcome, given the evidence thus

24  far in front of it.  But I have not made a case for what

25  behavior has resulted in the termination.  I've only made an

PG&E and Pacific Gas And Electric Company

1   argument that the debtor -- there is no matter of law which

2   precludes the termination of the easement.  That's the only

3   evidence I've made.

4          Within their motion to try to prove, as a matter of

5   law, that these easement cannot be terminated, they continually

6   referenced the fact that I had not provided evidence as to why

7   the termination occurred, and that's why I gave you the

8   declaration.  I don't think it is necessary for the ruling

9   today.  I don't think their comments were necessary for the

10  ruling today, but I felt they had to be addressed.  I'd be

11  happy to put on for you evidence as to why I believe their

12  actions resulted in -- reasonably resulted in the termination.

13  But having --

14         THE COURT:  Mr. Addington, I'll go back to the

15  question.

16         MR. ADDINGTON:  Yes, sir.

17         THE COURT:  What will that evidence be?  You have to

18  at least be able to tell me -- well, we're going around in

19  circles here.  Because first you say that, if you have your

20  easement -- if the easement is terminated, you want an

21  evidentiary hearing, but even if the easement hasn't been

22  terminated, there should be an evidentiary hearing.  So my

23  question is, well, what are we going to do at this evidentiary

24  hearing?  What would you bring to evidence -- what evidence

25  would you present to establish your entitlement to some

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1    compensation or some outcome?

2         MR. ADDINGTON:  Well, as I understand it, sir, I think

3    you're asking me two questions.  One, what evidence would I

4    bring to the Court that the termination of the easement was the

5    right outcome, and secondly, what evidence would I bring as to

6    what compensation should therefore be due?  Those are --

7         THE COURT:  To me, that's one question, not two.  But

8    I'll break it into parts.

9         MR. ADDINGTON:  Yes.

10        THE COURT:  So if the answer is they didn't do

11   anything wrong, to the first question, then the answer to the

12   second question is zero.

13        MR. ADDINGTON:  That's correct.

14        THE COURT:  So it really is one question, or two,

15   depending upon the answer to the first question.  But all

16   right.  Suppose I say, okay, they did something wrong.  So

17   that's question one.

18        MR. ADDINGTON:  No, who --

19        THE COURT:  Question two is, what is your damage?  And

20   if you're going to tell me, well, of course, my damage is

21   multi-millions of dollars, then the question is, well, how did

22   you get there?  How does that happen?

23        MR. ADDINGTON:  Well, sir, I'm not sitting here before

24   you today to make any claim.  I've made a guess as to what that

25   might be, but if PG&E has used my property, in trespass, for

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1  five years, claiming the entire time that the easement cannot

2  be terminated as a matter of law, when it clearly can, then I'd

3  put to the Court they owe me something for that trespass.

4       THE COURT:  Well, what if I said it can be terminated

5  as a matter of law, under certain facts, but it hasn't yet been

6  terminated.  Therefore, then what happens?

7       MR. ADDINGTON:  Well, I mean, you're asking me to make

8  a number of assumptions as to what I'm missing in terms of

9  getting it terminated.  And I'd continue to make sure the

10 termination was effective.

11      THE COURT:  Okay.  I'm going to let Mr. Rupp have his

12 twenty minutes, Mr. Addington.  And you listen to what he says,

13 because I'm going to ask Mr. Rupp the same question, and then

14 and then I'll let you finish the ten minutes that I reserved to

15 you for you to respond to his response.  That's very typical of

16 the way we do it.  So you've made your presentation -- first of

17 all, I have read all the briefs, and I probably will read them

18 again, and you've said what you said.

19      Mr. Rupp, why don't you take it from there?  You have

20 twenty minutes.

21      MR. RUPP:  Thank you, Your Honor.  Good morning.

22 Thomas Rupp, of Keller Benvenutti Kim, for the reorganized

23 debtors.

24      As the Court has said in prior status conferences, and

25 as we've said in our papers, there is the one immediate and

PG&E and Pacific Gas And Electric Company

1    essential question that needs to be answered before we go any

2    further here.  And that is, did PG&E have an easement over Mr.

3    Addington's property as of the petition date?

4         Mr. Addington believes he terminated the easement by

5    giving notice to PG&E and then recording the notice of

6    termination with the Alameda County recorder.  Our position is

7    that these actions alone were not sufficient to extinguish

8    PG&E's title.

9         If we were to follow Mr. Addington's position, and the

10   Court were to find that he is correct and the easement is

11   terminated, according to Mr. Addington's prior demands, either

12   PG&E would have to remove its property from Mr. Addington's

13   residence, from his grounds, and either find some alternative

14   way of operating its grid, either Mr. Addington's neighbors or

15   otherwise.

16        THE COURT:  And how many decades would it take to get

17   PG&E to get permission to move power towers in Piedmont,

18   California?  You'd be retired by then.

19        MR. RUPP:  Well, you know, that goes to the heart of

20   this.  That goes to the situation we're dealing with.  Either

21   that outcome, or as Mr. Addington has also indicated, PG&E

22   could convey its title to its electrical equipment, and then we

23   would have a grid where PG&E operates a power line, except for

24   the brief span of two towers on Mr. Addington's property, or

25   Mr. Addington operates his own, sort of, power company for a

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1  hundred feet, and then the electricity continues down on PG&E's

2  lines.  And so I think it's important to kind of keep that in

3  mind of what the stakes are here if the Court were to find that

4  the easement were validly terminated.

5          I think it's important to revisit the language here.

6  The termination clause of the easement reads:  "Any violation

7  of the conditions of this grant shall terminate and extinguish

8  the easement hereby granted."

9          And as this Court observed, back nearly a year ago,

10  who makes this decision?  In whose hands is this?  Who executes

11  this?  If it were, as Mr. Addington believes, that it were in

12  his mind to decide whether the conditions had been violated and

13  termination was proper, and he could affect it by himself, we

14  do not believe this language supports that.

15          We think, if that were intended to be the case, when

16  the original grantor and grantee were working out the grant,

17  they could have specified that.  They could have drafted

18  language to say, you know, in the sole opinion of the grantor

19  or its successors, it may terminate, et cetera, et cetera.

20          But that's not what it says.  And if we read more into

21  the terms of the easement, we find that there's the section Mr.

22  Addington refers to about -- let me make sure I have it -- "and

23  if said party of the second part, in this case, PG&E, in the

24  enjoyment of the rights hereby granted, shall avoid, so far as

25  it reasonably can, interfering with the use by the party of the

PG&E and Pacific Gas And Electric Company

1  first part, in this case Mr. Addington, said strip of land for

2  any and all purposes".  And as this Court knows, that "so far

3  as it reasonably can" language is up to a finder of fact to

4  decide what is reasonable.

5  And that's before we look back and say, well, what are

6  PG&E's rights to this easement?  "PG&E has the right to erect

7  and maintain two lines of field towers for the purpose of

8  suspending and stringing wires thereon, supported thereby for

9  the transmission and distribution of electricity."

10  So were Mr. Addington to seek to have this easement

11  terminated, were he to have done so at the time he claims that

12  he terminated the easement, it would have been incumbent on him

13  to seek that relief through a court of competent jurisdiction,

14  because the language of the easement itself does not grant Mr.

15  Addington this power, in of himself, to effectuate the

16  termination.

17  What we have is a problem.  We have the balancing of

18  rights.  We have the balancing of PG&E's rights to operate its

19  power lines, and maintain them, and do everything necessary to

20  keep them in good working order.  And we have Mr. Addington's

21  rights, which are the residual rights to enjoy his property.

22  And that's where the easement leaves us.  And that's what the

23  case law supports is that a finder of fact has to look at the

24  facts, look at the situation on the ground and say what is

25  happening here.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1    And furthermore, what we also have is the -- pardon

2    me -- we have the law regarding conditions involving a

3    forfeiture, where, you know, taken from California Civil Code

4    Section 1442, and the cases interpreting it, including some

5    concerning easements, a condition involving a forfeiture must

6    be strictly interpreted against the party for whose benefit it

7    is created.

8    In this case, the forfeiture would benefit the grantor

9    and its successors, such as Mr. Addington, in this instance.

10   So in considering these facts and considering the law, any

11   court to rule on this, and to rule on this issue, would have to

12   strictly interpret the condition against Mr. Addington.  And it

13   would have to look at PG&E's rights and what PG&E has done, and

14   compare it to what Mr. Addington claims he is being denied from

15   enjoying on his property, and make that determination.

16   THE COURT:  Okay.  So what happens if I agree with you

17   that, say, there's never been a termination, what's next?

18   MR. RUPP:  What's next is I believe that's the end of

19   it.  I believe the Court can enter an order making that finding

20   and disallowing Mr. Addington's claim in its entirety.  I

21   believe that that's the end of it.

22   THE COURT:  He has no recourse after that?  Well,

23   okay, let's try a different question.  What were his rights

24   back in -- I forgot the actual date.  Instead of recording the

25   termination, would he have a right to have gone to court and

PG&E and Pacific Gas And Electric Company

1   sue, at least in the alternative, for either a right to

2   terminate or a right for damages?

3           MR. RUPP:  I believe so.

4           THE COURT:  And --

5           MR. RUPP:  I believe --

6           THE COURT:  And he doesn't have that right anymore?

7           MR. RUPP:  Well, what we're dealing with here, Your

8   Honor, is his bankruptcy claim.  I don't think he has that

9   right retroactively.  I think, for the purposes of what we're

10  dealing with, is his claim, which is outlined as saying Mr.

11  Addington terminated the easement, that is a fact.  And since

12  that date in 2017, he believes that he's entitled to charge

13  PG&E for the power it has transmitted.

14          THE COURT:  Okay.  But let's break that down.  So

15  let's say I agree with you and say that there was no

16  termination in 2017.  We know there was a bankruptcy in 2019.

17  And since then, Mr. Addington has been precluded from filing a

18  suit in court, at least to recover damages, but he's been

19  allowed to file a claim.

20          Couldn't he amend his claim to prove damages and

21  have -- as he said, have an evidentiary hearing on whether he

22  has suffered damages of some amount?  Using my hypothetical,

23  what if it's some modest amount, does he have -- do you believe

24  he's precluded from doing that now?

25          MR. RUPP:  Your Honor, theoretically, anyone can file

PG&E and Pacific Gas And Electric Company

1    an amended claim at any time.  However, I think that, given the

2    way this has transpired, and given the way that Mr. Addington

3    has always held his position to be based on this termination of

4    easement, and that he's entitled to millions of dollars from

5    PG&E, that -- we have dealt over the last year with a very

6    different situation then if Mr. Addington had asserted a claim

7    that was more a breach-of-contract claim or a tort claim

8    entitled to a modest amount of damages.  This would have all

9    transpired very differently.  So I would argue that PG&E would

10   be prejudiced were Mr. Addington to amend his claim.

11           THE COURT:  Why would it have transpired differently

12   if he had said, you violated the easement, I'm entitled to the

13   reasonable cost of the value, and as the time goes on, you

14   continue to transmit power, therefore, the claim continues to

15   go up, but in the alternative, I'm entitled to my damages,

16   whatever it is.

17           I mean, are you really saying that that I can say you

18   get one shot; you drew a line in the sand that said, damn it, I

19   terminated that easement, therefore the clock is running at

20   gazillions of dollars a year because of power, period.  Or

21   alternatively, if I say PG&E was in the wrong, but the

22   consequences are not as drastic as Mr. Addington would have,

23   and maybe PG&E should pay some reasonable cost to restore the

24   condition that he believes was not restored.  I mean, it almost

25   turns to this dispute between the company and Mr. Addington has

PG&E and Pacific Gas And Electric Company

1    nothing to do with the easement.  It has to do with the land

2    that PG&E left not completely restored to Mr. Addington's

3    satisfaction.

4          MR. RUPP:  Well, Your Honor, again, I would point back

5    to the release that was in the joint statement of facts

6    where --

7          THE COURT:  No, I understand that, but he concedes

8    that.  He concedes that.  He said the problem happened after

9    that.  The easement wasn't terminated until after that, right?

10         MR. RUPP:  Correct.  It was --

11         THE COURT:  So they --

12         MR. RUPP:  -- terminated a month later.

13         THE COURT:  They came in, they said, you got this, we

14   did this, we did that, there was an exchange of money to Mr.

15   Addington, he wasn't satisfied, PG&E paid him another 13,000

16   dollars and got him to sign a release.  Then after that, the

17   easement got recorded and Mr. Addington took the position he

18   took.

19         But he -- I believe, and Mr. Addington can tell me if

20   I'm wrong -- I believe he wouldn't have had a basis to record

21   that easement if PG&E had finished what he believes it had

22   committed to do.  And to this day, he believes that PG&E didn't

23   finish what it committed to do, and Mr. Addington believes the

24   consequences are as we've discussed.

25         But to me, there's another alternative; it's for the

PG&E and Pacific Gas And Electric Company

1   trier of fact to determine who was right:  was PG&E right or

2   Addington right?  If PG&E was right, nothing else had to

3   happen, we're done.  If Mr. Addington was right, PG&E should

4   have finished the work, and therefore it's some measurable

5   amount of money that -- easily fixed.  Again, I'm not making

6   light of PG&E's money, but it's a heck of a lot easier to write

7   a check for 40,000 dollars than to replace two giant towers in

8   Piedmont, California.

9           So I guess I want you to -- if you really believe that

10  there is no in between, and there's no day in court on the

11  question of what is the actual damages that he suffered, then

12  say it.  I find it, frankly, surprising that that's your view.

13  But if that's your view, then tell me.

14          MR. RUPP:  Your Honor, again, I appreciate what the

15  Court is trying to do here; I really do.  I can only defend

16  against or object to the claim as it's presented to me and to

17  this case.  And what the claim I had was regarding the

18  termination of an easement.  In the proof of claim itself

19  there's no factual background, and it's been drawn out of Mr.

20  Addington, you know, with --

21      (Recorded message playing in background.)

22          THE COURT:  I'm sorry.  I can't turn that phone off.

23  It'll stop in just a minute.

24          MR. ADDINGTON:  That's okay.

25          THE COURT:  That phone always rings when I'm on a Zoom

PG&E and Pacific Gas And Electric Company

1    call.  Okay.  Go ahead.

2         MR. RUPP:  Sure.  I think it's a matter of if Mr.

3    Addington is amending his claim and is willing to amend it to I

4    have not terminated -- amend it to say he has not terminated

5    the easement, he is not entitled to these royalties or access

6    charges, and instead, this is just a construction dispute,

7    essentially, or a dispute over what PG&E is or is not allowing

8    Mr. Addington to do with his grounds, we'll have to look at

9    that claim and assess it.  But right now, I just don't have it

10   in front of me.  I can't really consider that claim --

11        THE COURT:  What's crazy about -- well, not crazy

12   about -- that's the wrong word.  But what's remarkable about

13   your statement is you know as much as I know, and Mr. Addington

14   has repeatedly stated the situation that he's unhappy with.

15   And so to say that you don't know is really not -- it can't be

16   right, because even though you and I weren't there -- this is

17   Mr. Addington's home; he was there -- some PG&E people were

18   there.  They saw what happened.  They saw what the condition of

19   the land beneath the towers was when the PG&E -- the last PG&E

20   truck left.  Somebody knew the condition.  And somebody on your

21   side could have said I think we've got to fix that some more,

22   or could have said, no, that we're done, we've done all we're

23   supposed to do.

24        And Mr. Addington could have said that's not good

25   enough; I think the following should be done.  But so then Mr.

PG&E and Pacific Gas And Electric Company

1    Addington resorted to a remedy that he thought was appropriate,

2    and he recorded something that maybe he had no ability -- no

3    legal ability to do.  But here we are fighting over something

4    that's almost bizarre to think about it, in this day and age,

5    to start to think about what one individual, in one single

6    family residence, does if there are two giant towers crossing

7    his property that transfer electricity, in the millions of

8    dollars of value per year, and therefore the consequences are

9    all or nothing.  It just -- it doesn't make sense.

10           And yet PG&E is in bankruptcy, and we have liberal

11   rules of pleading, and it's hard for me to imagine that, if I

12   say there is no claim for a termination of easement, but there

13   is an entitlement to prove up damages, that I could say to Mr.

14   Addington, I'll give you a date for you to prove what actual

15   damages you suffered, and if they are so severe that the

16   consequences may be the termination was proper, or no, that

17   termination was not necessary, you could have been compensated

18   for X dollars, there's a simple solution.  This is a solution

19   that's waiting for somebody to just apply it to make it work.

20           So you don't have to answer my point, Mr. Rupp.  You

21   made your position clear.  And I guess if I agree with you as

22   to the outcome, I can say to Mr. Addington, your claim for four

23   million dollars is disallowed, because you didn't terminate,

24   but you can assert damages, if you have a basis to do so, and

25   PG&E will have an opportunity to oppose it.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1        Anyway, go ahead.  I'm using up the last of your time,

2   so use a couple more minutes.

3        MR. RUPP:  That's okay, Your Honor.  I appreciate the

4   Court's comments, and I appreciate the search for a reasonable

5   solution here, because we agree it -- we are in a strange

6   position.  And as we spoke at the beginning of my presentation,

7   what are the outcomes if the easement is terminated?  It's not

8   in anyone's best interest.

9        So I'm here, first and foremost, and our briefing was

10  here, first and foremost, to defend PG&E's easement and defend

11  its title to the easement.  And at the time, based on Mr.

12  Addington's current claim, we believe that that disposes of the

13  claim, since it's based on the easement.

14        If, as you noted, the liberal Ninth Circuit rules

15  regarding amendment of a claim, if the claim is amended such

16  that it's a more garden variety construction type claim, and we

17  can approach it that way, in that fashion, then without saying

18  we'll agree to Mr. Addington amending the claim -- I'll have to

19  speak with my client about that -- but that does change the

20  complexion of the issue.

21        As you didn't want to belittle PG&E's money and paying

22  for claims -- we've paid for many claims in this case -- but

23  that easement is really what is sacred to us.  And so that's

24  why we have to bring such a vigorous defense on it.

25        THE COURT:  Okay.  Mr. Addington, now you've got ten

PG&E and Pacific Gas And Electric Company

1    minutes, and so focus, if you will, on the question of what do

2    you realistically think you can do and will do, your options,

3    if I declare that, as a matter of law, you have not terminated

4    the easement, and therefore here we are.  What do you think you

5    want to do and could do next?

6          MR. ADDINGTON:  Well, sir, first, I think I have to

7    address Mr. Rupp's position that the termination of the

8    easement would mean I'm going to take down the towers and cause

9    a blackout in, you know --

10         THE COURT:  No, no, you don't have to answer that.

11   You don't have to answer that.  What are you going to --

12         MR. ADDINGTON:  May I --

13         THE COURT:  His point is, you couldn't terminate the

14   easement -- you haven't -- you haven't terminated the easement.

15         MR. ADDINGTON:  Sir, I think, to make that ruling,

16   without hearing any evidence as to what transpired, would be

17   premature.  The hearing today is:  is this termination barred

18   as a matter of law?  And I think you can rule easily it is not

19   barred as a matter of law, which is what PG&E's position has

20   been these last five years.

21         And this is what goes to the heart of the matter.

22   Their position regarding matter of law is unreasonable.  Their

23   actions on my property were unreasonable.  For you to rule

24   that, okay, you're going to make them be reasonable, it may

25   require an act of God.  They don't act reasonably, and that's

PG&E and Pacific Gas And Electric Company

1    the problem.  So --

2            THE COURT:  Okay.  Mr. Addington, I'm going to

3    interrupt you again.  Let's go back to the day after you signed

4    the release --

5            MR. ADDINGTON:  Yes, Your Honor.

6            THE COURT:  -- and the day before you recorded the

7    easement, okay?  So we're back at that point in time.  And of

8    the three of us, you were the only one that was really there.

9    So you're there, and you've just signed the release for the

10   forty-some-odd thousand, whatever the document was.

11           MR. ADDINGTON:  Yes, sir.

12           THE COURT:  What was the situation on the ground then

13   that you believe PG&E should have taken care of and fixed?

14           MR. ADDINGTON:  No, sir.  There was no situation on

15   the ground that I wanted PG&E to fix.  I was going to fix it.

16   I can fix it.  I can fix it quicker.  And --

17           THE COURT:  Okay.  What was the situation you want to

18   be fixed, regardless of who fixes it?

19           MR. ADDINGTON:  I wanted my yard to be leveled so I

20   could put in sod and a sprinkler system.

21           THE COURT:  Okay.  And you haven't done it to this

22   day, is that right?

23           MR. ADDINGTON:  No, sir.  The yard is contoured with

24   such angles, such steep angles, recontoured by PG&E, that it

25   will not hold sod.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1    THE COURT:  Okay.  So we're back to there.  You're

2    standing on the ground.  The yard isn't leveled.  You believe

3    PG&E had a responsibility to level it.  It didn't.  You would

4    go level it yourself.  What would you do to level it, and what

5    would it take?

6    MR. ADDINGTON:  Well, sir, that was the question I put

7    to PG&E.  I'd like --

8    THE COURT:  No, I'm putting it to you now.

9    MR. ADDINGTON:  Yes, sir.  I understand.  So what it

10   would take, according to PG&E, is an engineered report, even to

11   return my yard to its prior condition.

12   THE COURT:  What would it take, according to Mr.

13   Addington?

14   MR. ADDINGTON:  Oh, in terms of costs?

15   THE COURT:  Yes.

16   MR. ADDINGTON:  I don't know, 100,000 dollars, maybe.

17   THE COURT:  Okay.  So we're back -- now let's change

18   the stick with the hypothetical.  The hypothetical is I'm there

19   with you.

20   MR. ADDINGTON:  Yes, sir.

21   THE COURT:  And I'm standing there on your property on

22   St. James Drive.  And I look at those towers and I say, wow,

23   look at that.  And I look at this yard that isn't leveled.  And

24   I say to you, what do you want?  And you say, I want it fixed.

25   And I say, okay, how are you going to fix it?  And you say,

PG&E and Pacific Gas And Electric Company

1    well, I'm going to hire a third-party contractor to come in and

2    do it, and it's going to cost me 100,000 dollars.  And I'd say,

3    okay, then do it, and sue PG&E for 100,000 dollars.

4         But instead, I wasn't there, and you decided I'm going

5    to go terminate the easement.  And so now we're here in 2022,

6    and I'm saying, why is terminating an easement the proper

7    remedy for something that could have been fixed for 100,000

8    dollars?

9         MR. ADDINGTON:  Because it couldn't have been fixed

10   for 100,000 dollars.

11        THE COURT:  You just said it would have been.

12        MR. ADDINGTON:  No, sir, with PG&E's acquiescence.

13        THE COURT:  Well, no, I'm talking about you're in

14   court.  You're in superior court in Alameda County, and the

15   judge says, PG&E, you should have leveled the property; I find

16   from the evidence that Mr. Addington is entitled to 100,000

17   dollars, and Mr. Addington, go level the property; here is your

18   100,000 dollars.  Why wouldn't that -- what's wrong with that

19   outcome?

20        MR. ADDINGTON:  Because PG&E, after doing the work,

21   and before termination of the easement, produced a report

22   saying that the new contours were sacrosanct and would require

23   an engineer report, with their approval, even to return the

24   yard to his prior condition, even though PG&E did not have an

25   engineered report in order to change the levels of the yard.

PG&E and Pacific Gas And Electric Company

1    THE COURT:  But you just told me that you believe in

2   2017 you could have, for 100,000 dollars, put the property in a

3   position for you and your family to enjoy it the way you expect

4   it and were entitled to, correct?

5    MR. ADDINGTON:  Yes.

6    THE COURT:  That's what you said?

7    MR. ADDINGTON:  Yes, sir.  But I was told by PG&E I

8   could not --

9    THE COURT:  No, don't say that again.  Don't say that

10  again.  What I'm trying to tell you is, if we had not -- there

11  had not been a bankruptcy, and we'd been at the Superior Court,

12  and I was a Superior Court judge, and I'd say, well, okay, Mr.

13  Addington, you believe you can put the property in proper

14  position for 100,000 dollars.  And then I'd say to PG&E, well,

15  what's your position?  And then I'd make a ruling.

16    And if I had then determined that PG&E was at fault,

17  legally at fault, I'd say, PG&E, you will have to pay Mr.

18  Addington 100,000 dollars in damages, period, end of story.  Or

19  I would have said, Mr. Addington, you are wrong, PG&E is

20  correct, you can do whatever you want with your property, but

21  you can't make PG&E pay for it.  And --

22    MR. ADDINGTON:  Sir?

23    THE COURT:  Or you can't do something that infringes

24  upon PG&E's rights as an easement holder.  But here we are,

25  four years later -- five years later, arguing about millions of

PG&E and Pacific Gas And Electric Company

1  dollars that have no -- don't appear to have any relationship

2  to the harm that you believe PG&E should pay for.

3          MR. ADDINGTON:  Sir, my claim in bankruptcy court is

4  subject to a standard of reasonableness.  I don't care what I'm

5  paid.  What I care about is I have to have PG&E out of my yard.

6  I'm happy to give the tower and the lines to CASIO for their

7  administration.

8          THE COURT:  Mr. Addington, we're wasting our time.

9  You bought --

10          MR. ADDINGTON:  I'm sorry.

11          THE COURT:  You bought the property in 2016, as I

12  recall --

13          MR. ADDINGTON:  Yes, sir.

14          THE COURT:  -- with those two towers on the lands.

15          MR. ADDINGTON:  I love the towers.  Yes, sir.

16          THE COURT:  And that is something that you have to

17  accept the consequences.  It's a beautiful -- I happen to know

18  the area.  I don't know your lot, but I used to -- my family

19  lived in Piedmont in the past.  I've been past that many times,

20  and it's a beautiful property.  But it has two towers on it, so

21  that's a tradeoff.  And --

22          MR. ADDINGTON:  Sir, I love the towers.  I would

23  never -- even if PG&E took down its lines, I would like to keep

24  the towers.

25          THE COURT:  So the point is that you cannot make PG&E

PG&E and Pacific Gas And Electric Company

1   go away unless somehow the easement is terminated.  And so my

2   point is that that's on your wish list, but it simply stays on

3   your wish list.  I can't make PG&E go away in the way you would

4   like them to.

5        And the question is whether PG&E has legal

6   responsibility that can translate to dollars to make you whole,

7   versus it doesn't have any legal responsibility, and you'll

8   have to decide what you want to do one way or the other.

9        So let me put this to bed for now.  I am not prepared

10  to say -- or I am prepared -- excuse me; I'll state that in a

11  positive sense.  I agree with Mr. Rupp and PG&E, the easement

12  has not been terminated.  Under the law cited by Mr. Rupp, the

13  combination of the forfeiture plus a reasonable reading of the

14  documents, I don't know what the situation -- never mind what

15  the situation was, we were presented with two versions of

16  something that was recorded before any of us were around.  And

17  that's what you're staking your case on.  And I do not believe,

18  as a matter of law, that you have effectively terminated the

19  easement.

20       I'm prepared, however, to give you an opportunity to

21  at least articulate something that is a measure of damages that

22  you believe you're entitled to, based upon what you think PG&E

23  should have done since it last terminated its contractual

24  relationship with you.  In other words, go back to my

25  hypothetical, or not so hypothetical, my -- go back to the day

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1    you signed the release, and they paid you the last installment

2    of the money that they paid you, and on that date and time, and

3    since then, is there something that PG&E is responsible for

4    that it has not compensated you for?

5         If you can demonstrate that there is something, again,

6    using the hypothetical that you put, the 100,000.  I'm not

7    trapping you -- I'm not locking you into 100,000, but it's the

8    concept.  If they could have paid you 100,000 dollars to

9    satisfy you then, maybe they could pay you some different

10   amount now to compensate you for the running of time.  Or maybe

11   it's a lesser amount.

12        And I'm going to give you -- I'm going to issue an

13   order that determines that your claim for the multi-million

14   dollars is disallowed because there has not been an effective

15   termination of an easement.  But under what we'll call the

16   liberal rules of pleading, you can amend your claim to set

17   forth a theory by which you believe PG&E does have an

18   obligation to compensate you for something that makes you whole

19   and expresses that claim in a dollar amount.  I'm going to then

20   give PG&E an opportunity to respond, and if necessary, we'll

21   have an evidentiary hearing.

22        There's another alternative, and that is to explore a

23   consensual resolution.  Mr. Rupp has known me in this position

24   for a couple of years, and there have been a number of cases

25   where claimants have asserted amounts of money they believe

PG&E and Pacific Gas And Electric Company

1    they're entitled to, and PG&E and those claimants have come to

2    a consensual resolution, in other words, an out-of-court

3    settlement.  And if you are inclined and PG&E is inclined to

4    reach an out-of-court settlement that's expressed in dollars,

5    that's the best result, from my point of view.  If you are

6    unable to reach that point, then my job is to make a ruling on

7    the facts.

8         So, Mr. Addington, what I'm going to give you is I'm

9    going to give you a deadline to amend your claim -- amend the

10   claim to assert money damages.  And I'm going to give Mr. Rupp

11   an opportunity to respond to that amended claim.  And I'm going

12   to give both sides an opportunity to settle this case on their

13   own, either with a court mediator, or if not, through a

14   traditional hearing to discuss what is Mr. Addington's damages

15   and has he proved PG&E's liability for it, and PG&E's defenses.

16        So what's going to happen then, Mr. Addington, I'm

17   going to issue an order -- I'll issue it.  And the order is

18   going to be a little bit boilerplate.  It's going to say, for

19   the reasons stated on the record -- and I'm referring to

20   today's hearing -- I'm going to say something in words like,

21   Mr. Addington's attempt to terminate the easement in 2017 was

22   ineffective.  The easement has not been terminated.  The claim

23   is disallowed as filed.  However, Mr. Addington has blank

24   days -- and I'm probably going to put in 60 days -- to amend

25   the claim.

PG&E and Pacific Gas And Electric Company

1      Then Mr. Addington will have that running of time.

2  The time will start from the time of my order.  Everything keys

3  on an order, not what I'm saying today.  So if you don't like

4  my result, and you wish to take an appeal, you're entitled to

5  do that.  If you accept that result, that'll start the clock

6  running, and you'll have sixty days to amend the claim.  And

7  you'd simply amend the document you filed that says I'm

8  amending my claim to say, based upon the events of 2017,

9  whatever it was, I'm entitled -- I claim X dollars.

10      And PG&E will have thirty days to respond.  I'm just

11  making up my rules here.  Thirty days -- sixty days to amend

12  claim, thirty days for PG&E to respond.  And I'm going to have

13  a continued hearing in about four months from now.  So I'm

14  inviting you, Mr. --

15      MR. RUPP:  Your Honor?

16      THE COURT:  I'm inviting you, Mr. Addington, to --

17  just a second -- you, Mr. Addington, to amend the claim, and

18  for PG&E and you to discuss trying to get it resolved, and a

19  further hearing out in about four months, if there's no

20  resolution.

21      Yes, sir.  Mr. Rupp?

22      MR. RUPP:  Your Honor, can I just ask the Court that

23  that period for PG&E's response be sixty days instead of

24  thirty?

25      THE COURT:  That's all right, yep.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E and Pacific Gas And Electric Company

1       MR. RUPP:  And is the response to be in the form of an

2    objection to the claim?

3       THE COURT:  Yeah, I think so.

4       MR. RUPP:  Starting fresh?

5       THE COURT:  I mean, procedurally, that's what we have

6    to do.  And, PG&E has all the defenses.  I mean, whatever

7    defense you have.  I'm not asking you to give up anything

8    either.  We're breaking this into parts.  Mr. Addington --

9       MR. RUPP:  Okay.

10       THE COURT:  Mr. Addington would have preferred to have

11   a determination in his favor that the termination of the

12   easement was effective, than to prove up his claims, and I'm

13   disagreeing with him and saying the termination was not

14   effective.

15       And I'm generally accepting the arguments you've made

16   in your papers, Mr. Rupp:  forfeiture, unilateral conduct,

17   interpretation of the document, not reasonable, construing it

18   more narrowly against the person who is asserting the right.

19   And that that will be a court order.

20       And Mr. Addington, then again, assuming I sign the

21   order, let's say, next week, May 13th, and you'll have sixty

22   days from May 13th to amend your claim.  If you don't amend

23   your claim, you're out.  If you do amend your claim, I'm not

24   telling you how much it should be or how it should be worded.

25   You might consider consulting counsel to help you, but that's

PG&E and Pacific Gas And Electric Company

1    your choice.

2          But the point is, it will be a dollar claim for what

3    you claim that PG&E is entitled because of its conduct previous

4    to now, previous to the bankruptcy.  And then PG&E has sixty

5    days to respond.  So that takes us out about four months.  I'll

6    have a hearing in about five months.

7          And again, the best result, from my point of view, is

8    that you see if there can be a consensual resolution.  The

9    company, Mr. Rupp, and other lawyers in his firm know about

10   panels of mediators, people who are available to assist the

11   parties to reach a resolution.  I can't remember whether you

12   tried that once before or not.

13         MR. RUPP:  We did, Your Honor.

14         THE COURT:  You did, that's right.  But you might want

15   to try it again.  But if you don't, you don't.  There's no

16   penalty.  I'm not going to punish anyone if there isn't another

17   attempt.  But I believe it's worth an effort, now that we've

18   framed the issues a little more narrowly.

19         So Mr. Addington, under these circumstances, I'm not

20   ordering people to go try to compromise things, but I'm urging

21   you to be open minded about it.  And I'm expecting Mr. Rupp and

22   the company to do likewise.  And they have in other cases, so I

23   would assume they would be willing to do it here.

24         But my job will be to make the ruling on the amount of

25   your claim, if you assert it.  If you don't -- I'll repeat, if

PG&E and Pacific Gas And Electric Company

1   you don't assert it by the deadline, you're out of luck, unless

2   you appeal my order. And if you do assert it, then we start

3   over, and PG&E responds, and then we'll have an evidentiary

4   hearing where you can prove, to my satisfaction, your

5   entitlement to an amount of money that you will also have to

6   establish.

7            Mr. Addington, are you clear on the ruling and where

8   we're headed?

9            MR. ADDINGTON: My understanding is the ruling is, as

10  a matter of law, my termination is being disallowed --

11           THE COURT: Yes, sir.

12           MR. ADDINGTON: -- regardless of the circumstance.

13           THE COURT: Yes, sir.

14           MR. ADDINGTON: Okay.

15           THE COURT: Yes, sir.

16           MR. ADDINGTON: I understand.

17           THE COURT: But I'll repeat again, I'm not declaring

18  that you're not entitled to something.

19           MR. ADDINGTON: Yes, sir.

20           THE COURT: I'm saying you need to show me why you're

21  entitled to it, and PG&E has to accept the outcome, if that's

22  my ruling. They have a right to say no, you aren't entitled to

23  it.

24           MR. ADDINGTON: But this easement is perpetual?

25           THE COURT: So what I'm going to do, I'm not going to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E And Pacific Gas And Electric Company

1    set another hearing date.  When I issue an order -- and I'm

2    going to prepare the order.  Mr. Addington, you'll get it in

3    the mail in order that says, for the following reasons -- and

4    again, I'm going to be lawyer-like; it's not going to have a

5    great deal of detail.  This colloquy we've had on our record,

6    plus the briefs on file, are such that if there is an appeal of

7    my decision, my decision is subject to being reviewed as to

8    what my reasons are.

9         So for the reasons I have summarized, your assertion

10   of termination is, in effect, rejected.  And therefore, my

11   ruling, at the moment, is there has not been a termination of

12   the PG&E easement on your property.  And if my decision is

13   reversed on appeal, then the consequences are what they are.

14   If my decision is not appealed, or is affirmed on appeal,

15   either way, then I intend to act on my follow-up instructions,

16   consistent with what I just said, which I'll repeat in the

17   order.

18        Mr. Addington has a deadline -- and I'll put it in

19   there, but it's going to be roughly sixty days from the time I

20   sign the order -- to amend, sixty days for PG&E to respond, and

21   a hearing date that will be reflected in the order.

22        Thank you for your time, gentlemen.  I appreciate the

23   time and effort.  And I will -- how can I say this?  Mr.

24   Addington, I hope we don't meet again.  I hope that there is a

25   consensual resolution.  But if there is not, then I will see

PG&E And Pacific Gas And Electric Company

1   you at some future date when I have to deal with this again.

2   And with that, I'm going to conclude the hearing.  Thank you

3   all for your time.

4           MR. RUPP:  Thank you, Your Honor.

5           MR. ADDINGTON:  Thank you.

6       (Whereupon these proceedings were concluded at 10:58 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1

2                       I N D E X

3

4   RULINGS:                                    PAGE  LINE

5   There has not been a termination of the PG&E     39      9

6   easement on Mr. Addington's property

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1

2                    C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *Sharona Shapiro*

8

9    _____

10   /s/ SHARONA SHAPIRO, CET-492

11

12   eScribers

13   7227 N. 16th Street, Suite #207

14   Phoenix, AZ 85020

15

16   Date:  May 11, 2022

17

18

19

20

21

22

23

24

25

## A

**ability (3)**
10:9;24:2,3
**able (1)**
12:18
**accept (3)**
31:17;35:5;38:21
**accepting (1)**
36:15
**access (1)**
23:5
**according (3)**
15:11;28:10,12
**acquiescence (1)**
29:12
**act (5)**
8:23;11:7;26:25,25;
39:15
**acted (2)**
8:12;9:17;10:21
**actions (4)**
11:6;12:12;15:7;
26:23
**actual (4)**
6:18;18:24;22:11;
24:14
**actually (2)**
5:7;9:25
**Addington (137)**
3:7,8,9,11,12,23,25;
4:6,11,19,22,24;5:12,
16,24;6:1,5,11,15,24;
7:10,13,17,21;8:3,5,10,
21;9:2,11,13,23;10:2,5,
8;11:1,9,11,18,21;
12:14,16;13:2,9,13,18,
23;14:7,12,15:4,21,25;
16:11,22;17:1,10,15;
18:9,12,14;19:11,17;
20:2,6,10,22,25;21:15,
17,19,23;22:2,3,20,24;
23:3,8,13,24;24:1,14,
22;25:18,25;26:6,12,
15;27:2,5,11,14,19,23;
28:6,9,13,14,16,20;
29:9,12,16,17,20;30:5,
7,13,18,19,22;31:3,8,
10,13,15,22;34:8,16,
23;35:1,16,17;36:8,10,
20;37:19;38:7,9,12,14,
16,19,24;39:2,18,24;
40:5
**Addington's (13)**
15:3,9,11,12,14,24;
17:20;18:20;21:2;
23:17;25:12;34:14,21
**address (1)**
26:7
**addressed (1)**
12:10
**administration (1)**

31:7
**affect (1)**
16:13
**affected (1)**
9:15
**affirmed (1)**
39:14
**again (17)**
6:25;11:9;14:18;
21:4;22:5,14;27:3;
30:9,10;33:5;36:20;
37:7,15;38:17;39:4,24;
40:1
**against (4)**
18:6,12;22:16;36:18
**age (1)**
24:4
**ago (1)**
16:9
**agree (7)**
7:3;18:16;19:15;
24:21;25:5,18;32:11
**ahead (4)**
4:23;11:19;23:1;
25:1
**Alameda (2)**
15:6;29:14
**allowed (5)**
6:3,7,23;11:3;19:19
**allowing (1)**
23:7
**allows (1)**
11:2
**almost (4)**
10:22,22;20:24;24:4
**alone (1)**
15:7
**alternative (7)**
9:22;10:23;15:13;
19:1;20:15;21:25;
33:22
**alternatively (1)**
20:21
**always (3)**
4:10;20:3;22:25
**amend (16)**
19:20;20:10;23:3,4;
33:16;34:9,9,24;35:6,7,
11,17;36:22,22,23;
39:20
**amended (3)**
20:1;25:15;34:11
**amending (3)**
23:3;25:18;35:8
**amendment (1)**
25:15
**amount (10)**
9:20;19:22,23;20:8;
22:5;33:10,11,19;
37:24;38:5
**amounts (1)**
33:25
**angles (2)**

27:24,24
**answered (1)**
15:1
**anymore (1)**
19:6
**apologetic (1)**
4:7
**appeal (6)**
6:10;35:4;38:2;39:6,
13,14
**appealed (1)**
39:14
**appear (1)**
31:1
**appearance (2)**
3:11,15
**appearing (1)**
3:10
**appears (1)**
8:22
**apply (1)**
24:19
**appreciate (4)**
22:14;25:3,4;39:22
**approach (1)**
25:17
**appropriate (1)**
24:1
**appropriately (1)**
4:14
**approval (1)**
29:23
**area (1)**
31:18
**argue (1)**
20:9
**arguing (1)**
30:25
**argument (5)**
3:19;4:4,15;11:20;
12:1
**arguments (1)**
36:15
**around (2)**
12:18;32:16
**articulate (1)**
32:21
**aside (1)**
6:9
**assert (5)**
24:24;34:10;37:25;
38:1,2
**asserted (2)**
20:6;33:25
**asserting (1)**
36:18
**assertion (1)**
39:9
**assess (1)**
23:9
**assist (1)**
37:10
**assume (5)**

3:18;7:9,14;9:8;
37:23
**assuming (2)**
6:24;36:20
**assumptions (1)**
14:8
**assure (1)**
4:14
**attempt (2)**
34:21;37:17
**attitude (1)**
5:19
**attorney (3)**
9:24;10:1,3
**available (1)**
37:10
**avoid (1)**
16:24
**away (2)**
32:1,3

## B

**back (16)**
9:12;10:20;11:3,9,
12;12:14;16:9;17:5;
18:24;21:4;27:3,7;
28:1,17;32:24,25
**background (2)**
22:19,21
**balancing (2)**
17:17,18
**bankruptcy (9)**
4:25;5:13;6:2;19:8,
16;24:10;30:11;31:3;
37:4
**barred (2)**
26:17,19
**based (7)**
8:16;10:12;20:3;
25:11,13;32:22;35:8
**basis (2)**
21:20;24:24
**beautiful (2)**
31:17,20
**bed (1)**
32:9
**begin (2)**
4:17,23
**beginning (2)**
5:5;25:6
**behalf (1)**
3:17
**behavior (1)**
11:25
**believes (7)**
15:4;16:11;19:12;
20:24;21:21,22,23
**belittle (1)**
25:21
**beneath (1)**
23:19
**benefit (2)**

18:6,8
**Benvenutti (2)**
3:17;14:22
**best (5)**
5:22,22;25:8;34:5;
37:7
**bit (1)**
34:18
**bizarre (1)**
24:4
**blackout (1)**
26:9
**blame (1)**
4:8
**blank (1)**
34:23
**boilerplate (1)**
34:18
**both (2)**
7:22;34:12
**bought (2)**
31:9,11
**breach-of-contract (1)**
20:7
**break (2)**
13:8;19:14
**breaking (1)**
36:8
**brief (1)**
15:24
**briefing (1)**
25:9
**briefs (2)**
14:17;39:6
**bring (6)**
3:7;4:9;12:24;13:4,
5;25:24
**burden (1)**
7:12

## C

**CALIFORNIA (4)**
3:1;15:18;18:3;22:8
**Call (3)**
3:3;23:1;33:15
**Calling (1)**
3:5
**came (1)**
21:13
**camera (1)**
3:13;4:2,4
**can (35)**
3:11,13,15,25;4:4,10,
14,14;9:13;11:21;14:2,
4;16:25;17:3;18:19;
19:25;20:17;21:19;
22:15;24:22,24;25:17;
26:2,18;27:16,16;
30:13,20;32:6;33:5,16;
35:22;37:8;38:4;39:23
**capability (2)**
9:9,19

Min-U-Script®

Case: 19-30088     Doc# 12359     Filed: 05/11/22     Entered: 05/11/22 09:45:39     Page 43
of 50

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(1) ability - capability

care (3)
27:13;31:4,5
case (17)
4:25;5:13,22,22,22;
9:6;10:13;11:24;16:15,
23;17:1,23;18:8;22:17;
25:22;32:17;34:12
cases (3)
18:4;33:24;37:22
CASIO (1)
31:6
cause (1)
26:8
certain (1)
14:5
certainly (1)
7:2
cetera (2)
16:19,19
change (3)
25:19;28:17;29:25
charge (1)
19:12
charges (1)
23:6
check (1)
22:7
choice (1)
37:1
circles (1)
12:19
Circuit (1)
25:14
circumstance (1)
38:12
circumstances (2)
7:22;37:19
cited (1)
32:12
Civil (1)
18:3
claim (55)
6:2,7,8,12,14,22;
7:24;8:1;13:24;18:20;
19:8,10,19,20;20:1,6,7,
7,10,14;22:16,17,18;
23:3,9,10;24:12,22;
25:12,13,15,15,16,18;
31:3;33:13,16,19;34:9,
10,11,22,25;35:6,8,9,
12,17;36:2,22,23,23;
37:2,3,25
claimants (2)
33:25;34:1
claimed (1)
7:1
claiming (1)
14:1
claims (5)
17:11;18:14;25:22,
22;36:12
clause (1)
16:6

clear (3)
4:24;24:21;38:7
clearly (1)
14:2
CLERK (1)
3:4
client (1)
25:19
clock (1)
20:19;35:5
Code (1)
18:3
colloquy (1)
39:5
combination (1)
32:13
commensurate (1)
9:21
comments (3)
10:23;12:9;25:4
committed (2)
21:22,23
company (5)
6:3;15:25;20:25;
37:9,22
compare (1)
18:14
compensate (3)
9:20;33:10,18
compensated (2)
24:17;33:4
compensation (4)
10:14,24;13:1,6
competent (1)
17:13
completely (2)
11:5;21:2
complexion (1)
25:20
compliment (1)
9:9
compromise (1)
37:20
concedes (2)
21:7,8
conceding (1)
10:22
concept (1)
33:8
concerning (1)
18:5
conclude (1)
40:2
concluded (1)
40:6
condition (7)
18:5,12;20:24;23:18,
20;28:11;29:24
conditions (3)
16:7,12;18:2
conduct (3)
6:19;36:16;37:3
conferences (1)

14:24
consensual (4)
33:23;34:2;37:8;
39:25
consequence (1)
10:21
consequences (7)
9:18;20:22;21:24;
24:8,16;31:17;39:13
consider (3)
5:15;23:10;36:25
considering (2)
18:10,10
consistent (1)
39:16
construction (2)
23:6;25:16
construing (1)
36:17
consulting (1)
36:25
continually (1)
12:5
continue (2)
14:9;20:14
continued (1)
35:13
continues (2)
16:1;20:14
contoured (1)
27:23
contours (1)
29:22
contractor (1)
29:1
contractual (1)
32:23
contrary (1)
10:19
convey (1)
15:22
Corporation (1)
3:6
cost (3)
20:13,23;29:2
costs (1)
28:14
counsel (1)
36:25
County (2)
15:6;29:14
couple (3)
5:8;25:2;33:24
course (1)
13:20
Court (123)
3:3,4,8,10,14,18,21,
23;4:1,9,16,21,23;5:1,
11,14,15,21,25;6:2,6,
22;7:8,11,16,19;8:1,5,
11,14,25;9:5,12,25;
10:4,7,9,12;11:9,12,13,
19,22;12:14,17;13:4,7,

10,14,19;14:3,4,11,24;
15:10,16;16:3,9;17:2,
13;18:11,16,19,22,25;
19:4,6,14,18;20:11;
21:7,11,13;22:10,15,
22,25;23:11;25:25;
26:10,13;27:2,6,12,17,
21;28:1,8,12,15,17,21;
29:11,13,14,14;30:1,6,
9,11,12,23;31:3,8,11,
14,16,25;34:13;35:16,
22,25;36:3,5,10,19;
37:14;38:11,13,15,17,
20,25
courtroom (1)
10:6
Court's (1)
25:4
crazy (2)
23:11,11
created (1)
18:7
creditor (1)
4:25
crossing (1)
24:6
current (1)
25:12

D

damage (2)
13:19,20
damages (14)
19:2,18,20,22;20:8,
15;22:11;24:13,15,24;
30:18;32:21;34:10,14
damn (1)
20:18
date (8)
15:3;18:24;19:12;
24:14;33:2;39:1,21;
40:1
day (7)
21:22;22:10;24:4;
27:3,6,22;32:25
days (14)
5:2;7:18;34:24,24;
35:6,10,11,11,12,23;
36:22;37:5;39:19,20
deadline (3)
34:9;38:1;39:18
deal (2)
39:5;40:1
dealing (3)
15:20;19:7,10
dealt (1)
20:5
debate (1)
10:19
debtor (7)
5:1,5;7:15,16,17;
8:23;12:1

10,14,19;14:3,4,11,24;

debtors (2)
3:17;14:23
decades (1)
15:16
decide (3)
16:12;17:4;32:8
decided (1)
29:4
decision (5)
16:10;39:7,7,12,14
declaration (1)
12:8
declare (1)
26:3
declaring (1)
38:17
deemed (3)
6:3,7,23
default (1)
8:22
defend (3)
22:15;25:10,10
defense (2)
25:24;36:7
defenses (2)
34:15;36:6
demands (1)
15:11
demonstrate (1)
33:5
demonstrated (1)
9:8
denied (1)
18:14
Dennis (1)
3:5
depending (1)
13:15
desire (1)
6:17
detail (1)
39:5
determination (2)
18:15;36:11
determine (7)
7:6,24;8:1,7;9:14,17;
22:1
determined (1)
30:16
determines (1)
33:13
different (4)
11:15;18:23;20:6;
33:9
differently (3)
8:7;20:9,11
disagreeing (1)
36:13
disallowed (4)
24:23;33:14;34:23;
38:10
disallowing (1)
18:20

Case: 19-30088    Doc# 12359    Filed: 05/11/22    Entered: 05/11/22 09:45:39    Page 44
of 50

**discuss (3)**
6:16;34:14;35:18
**discussed (1)**
21:24
**disposes (1)**
25:12
**dispute (3)**
20:25;23:6,7
**distribution (1)**
17:9
**document (4)**
8:22;27:10;35:7;
36:17
**documents (3)**
5:8,11;32:14
**dollar (2)**
33:19;37:2
**dollars (32)**
7:23;8:2,18;9:14;
10:15,15,16;11:16;
13:21;20:4,20;21:16;
22:7;24:8,18,23;28:16;
29:2,3,8,10,17,18;30:2,
14,18;31:1;32:6;33:8,
14;34:4;35:9
**dollars' (1)**
7:20
**done (10)**
7:2;10:17;17:11;
18:13;22:3;23:22,22,
25;27:21;32:23
**doubt (1)**
7:4
**down (4)**
16:1;19:14;26:8;
31:23
**draconian (2)**
11:22,23
**drafted (1)**
16:17
**drastic (1)**
20:22
**drawn (1)**
22:19
**dress (1)**
4:16
**dressed (1)**
4:14
**drew (1)**
20:18
**Drive (1)**
28:22
**dropped (1)**
10:3
**due (1)**
13:6

**E**

**easement (66)**
5:4,6,9;8:8,10,13,21,
24,24;9:15;11:2,3,6;
12:2,5,20,20,21;13:4;
14:1;15:2,4,10;16:4,6,
8,21;17:6,10,12,14,22;
19:11;20:4,12,19;21:1,
9,17,21;22:18;23:5;
24:12;25:7,10,11,13,
23;26:4,8,14,14;27:7;
29:5,6,21;30:24;32:1,
11,19;33:15;34:21,22;
36:12;38:24;39:12
**easements (1)**
18:5
**easier (1)**
22:6
**easily (2)**
22:5;26:18
**easy (1)**
11:17
**economic (1)**
10:24
**effect (1)**
39:10
**effective (4)**
14:10;33:14;36:12,
14
**effectively (1)**
32:18
**effectuate (1)**
17:15
**effort (3)**
9:8;37:17;39:23
**either (9)**
9:13;15:11,13,14,20;
19:1;34:13;36:8;39:15
**electrical (1)**
15:22
**electricity (3)**
16:1;17:9;24:7
**else (2)**
10:16;22:2
**end (4)**
6:11;18:18,21;30:18
**energy (1)**
9:8
**enforce (1)**
11:23
**engineer (1)**
29:23
**engineered (2)**
28:10;29:25
**enjoy (2)**
17:21;30:3
**enjoying (1)**
18:15
**enjoyment (1)**
16:24
**enough (1)**
23:25
**enter (1)**
18:19
**entire (1)**
14:1
**entirety (1)**
18:20

**entitled (17)**
10:14;19:12;20:4,8,
12,15;23:5;29:16;30:4;
32:22;34:1;35:4,9;
37:3;38:18,21,22
**entitlement (1)**
12:25;24:13;38:5
**equipment (1)**
15:22
**erect (1)**
17:6
**essential (1)**
15:1
**essentially (1)**
23:7
**establish (2)**
12:25;38:6
**et (2)**
16:19,19
**even (9)**
5:13;10:16,20;12:21;
23:16;28:10;29:23,24;
31:23
**events (1)**
35:8
**evidence (15)**
6:17;8:6;10:13,25;
11:23;12:3,6,11,17,24,
24;13:3,5;26:16;29:16
**evidentiary (12)**
6:16,20;7:5,9,14;
8:12;12:21,22,23;
19:21;33:21;38:3
**example (1)**
9:15
**except (1)**
15:23
**exchange (1)**
21:14
**excuse (2)**
8:8;32:10
**executes (1)**
16:10
**expect (1)**
30:3
**expecting (1)**
37:21
**explore (1)**
33:22
**expressed (1)**
34:4
**expresses (1)**
33:19
**extinguish (2)**
15:7;16:7

**F**

**fact (7)**
6:9;7:1;12:6;17:3,
23;19:11;22:1
**facts (5)**
14:5;17:24;18:10;

21:5;34:7
**factual (1)**
22:19
**fair (1)**
10:19
**family (3)**
24:6;30:3;31:18
**far (3)**
11:24;16:24;17:2
**fashion (1)**
25:17
**fault (3)**
10:25;30:16,17
**favor (2)**
6:9;36:11
**feet (1)**
16:1
**felt (1)**
12:10
**field (1)**
17:7
**fighting (1)**
24:3
**file (3)**
19:19,25;39:6
**filed (3)**
6:2;34:23;35:7
**filing (1)**
19:17
**find (6)**
15:10,13;16:3,21;
22:12;29:15
**finder (2)**
17:3,23
**finding (1)**
18:19
**finish (2)**
14:14;21:23
**finished (2)**
21:21;22:4
**firm (1)**
37:9
**first (11)**
10:3,5;11:21;12:19;
13:11,15;14:16;17:1;
25:9,10;26:6
**five (5)**
7:1;14:1;26:20;
30:25;37:6
**fix (6)**
23:21;27:15,15,16,
16;28:25
**fixed (7)**
9:16;22:5;27:13,18;
28:24;29:7,9
**fixes (1)**
27:18
**flattened (2)**
9:16;11:14
**focus (1)**
26:1
**folks (1)**
5:7

**follow (1)**
15:9
**following (2)**
23:25;39:3
**follows (2)**
8:17,18
**follow-up (1)**
39:15
**foremost (1)**
25:9,10
**forfeit (1)**
9:19
**forfeiture (5)**
18:3,5,8;32:13;36:16
**forgot (1)**
18:24
**form (1)**
36:1
**forth (3)**
5:9;7:3;33:17
**forty (2)**
8:18,19
**forty-some-odd (1)**
27:10
**four (10)**
7:19,23;8:18;9:14;
11:16;24:22;30:25;
35:13,19;37:5
**four-million-dollar (1)**
10:21
**frame (1)**
8:7
**framed (1)**
37:18
**FRANCISCO (1)**
3:1
**frankly (1)**
22:12
**free (1)**
4:17
**fresh (1)**
36:4
**front (2)**
11:24;23:10
**further (4)**
7:3;11:20;15:2;
35:19
**furthermore (1)**
18:1
**future (1)**
40:1

**G**

**garden (1)**
25:16
**gave (1)**
12:7
**gazillions (1)**
20:20
**generally (1)**
36:15
**gentlemen (1)**

Case: 19-30088    Doc# 12359    Filed: 05/11/22    Entered: 05/11/22 09:45:39    Page 45
of 50

39:22
**giant (2)**
22:7;24:6
**given (4)**
6:25;11:23;20:1,2
**giving (1)**
15:5
**God (1)**
26:25
**goes (4)**
15:19,20;20:13;
26:21
**Good (6)**
3:8,9,16;14:21;
17:20;23:24
**grant (4)**
5:22;16:7,16;17:14
**granted (2)**
16:8,24
**grantee (1)**
16:16
**grantor (3)**
16:16,18;18:8
**grantors (1)**
11:8
**great (1)**
39:5
**greet (1)**
4:3
**grid (2)**
15:14,23
**ground (4)**
17:24;27:12,15;28:2
**grounds (2)**
15:13;23:8
**guess (6)**
4:7;5:19;8:11;13:24;
22:9;24:21

**H**

**hands (1)**
16:10
**happen (6)**
7:8;10:11;13:22;
22:3;31:17;34:16
**happened (2)**
21:8;23:18
**happening (1)**
17:25
**happens (5)**
6:7;8:9,24;14:6;
18:16
**happy (5)**
4:2;6,9:3;12:11;31:6
**hard (1)**
24:11
**harm (1)**
31:2
**headed (1)**
38:8
**hear (3)**
3:25;4:14;6:17

**heard (1)**
5:18
**hearing (24)**
5:7,20;6:11,16;7:5,9,
14;8:12;12:21,22,24;
19:21;26:16,17;33:21;
34:14,20;35:13,19;
37:6;38:4;39:1,21;40:2
**heart (2)**
15:19;26:21
**heck (1)**
22:6
**held (2)**
5:5;20:3
**help (1)**
36:25
**hereby (2)**
16:8,24
**here's (2)**
7:24;8:24
**hesitant (1)**
11:22
**himself (2)**
16:13;17:15
**hire (1)**
29:1
**hold (1)**
27:25
**holder (1)**
30:24
**home (1)**
23:17
**Honor (18)**
3:13,16,25;6:15;
10:18;11:1,18;14:21;
19:8,25;21:4;22:14;
25:3;27:5;35:15,22;
37:13;40:4
**Honorable (1)**
3:4
**hope (2)**
39:24,24
**hundred (1)**
16:1
**hypothetical (6)**
19:22;28:18,18;
32:25,25;33:6

**I**

**imagine (2)**
6:11;24:11
**immediate (1)**
14:25
**important (2)**
16:2,5
**inclined (2)**
34:3,3
**including (1)**
18:4
**incumbent (1)**
17:12
**indicated (1)**

15:21
**individual (1)**
24:5
**ineffective (1)**
34:22
**inequity (1)**
10:9
**information (1)**
7:6
**infringes (1)**
30:23
**installment (1)**
33:1
**instance (1)**
18:9
**Instead (4)**
18:24;23:6;29:4;
35:23
**instructions (1)**
39:15
**intend (1)**
39:15
**intended (1)**
16:15
**interest (1)**
25:8
**interfering (1)**
16:25
**interpret (1)**
18:12
**interpretation (1)**
36:17
**interpreted (1)**
18:6
**interpreting (1)**
18:4
**interrupt (1)**
27:3
**into (4)**
13:8;16:20;33:7;
36:8
**inviting (2)**
35:14,16
**involving (2)**
18:2,5
**issue (7)**
6:4;18:11;25:20;
33:12;34:17,17;39:1
**issues (1)**
37:18

**J**

**James (1)**
28:22
**job (2)**
34:6;37:24
**join (1)**
3:24
**joint (1)**
21:5
**judge (2)**
29:15;30:12

**jurisdiction (1)**
17:13

**K**

**keep (3)**
16:2;17:20;31:23
**Keller (2)**
3:17;14:22
**keys (1)**
35:2
**kids (2)**
4:9,10
**Kim (2)**
3:17;14:22
**kind (3)**
9:12;10:24;16:2
**knew (1)**
23:20
**known (1)**
33:23
**knows (1)**
17:2

**L**

**land (3)**
17:1;21:1;23:19
**lands (1)**
31:14
**language (5)**
16:5,14,18;17:3,14
**last (6)**
20:5;23:19;25:1;
26:20;32:23;33:1
**later (3)**
21:12;30:25,25
**law (20)**
5:6;6:2;7:2,3,22;
11:1;12:1,5;14:2,5;
17:23;18:2,10;26:3,18,
19,22;32:12,18;38:10
**lawyer-like (1)**
39:4
**lawyers (1)**
37:9
**lease (1)**
8:8
**least (4)**
12:18;19:1,18;32:21
**Leave (1)**
6:9
**leaves (1)**
17:22
**left (3)**
4:12;21:2;23:20
**legal (3)**
24:3;32:5,7
**legally (1)**
30:17
**lesser (1)**
33:11
**level (5)**

6:19;28:3,4,4;29:17
**leveled (4)**
27:19;28:2,23;29:15
**levels (1)**
29:25
**liability (1)**
34:15
**liberal (3)**
24:10;25:14;33:16
**light (1)**
22:6
**likewise (1)**
37:22
**line (2)**
15:23;20:18
**lines (5)**
16:2;17:7,19;31:6,23
**list (2)**
32:2,3
**listen (1)**
14:12
**little (2)**
34:18;37:18
**lived (1)**
31:19
**locking (1)**
33:7
**long (1)**
4:13
**longer (1)**
6:8
**look (9)**
7:21;17:5,23,24;
18:13;23:8;28:22,23,
23
**lose (1)**
9:18
**lot (2)**
22:6;31:18
**love (2)**
31:15,22
**luck (1)**
38:1

**M**

**mail (1)**
39:3
**maintain (2)**
17:7,19
**makes (2)**
16:10;33:18
**making (2)**
18:19;22:5;35:11
**many (3)**
15:16;25:22;31:19
**matter (19)**
3:5;5:6,10,18;6:20;
7:2,2;12:1,4;14:2,5;
23:2;26:3,18,19,21,22;
32:18;38:10
**MAY (7)**
3:1;16:19;24:16;

Case: 19-30088   Doc# 12359   Filed: 05/11/22   Entered: 05/11/22 09:45:39   Page 46
of 50

26:12,24;36:21,22
**maybe (12)**
  9:15,17;10:13,16,23;
  11:13,14;20:23;24:2;
  28:16;33:9,10
**mean (9)**
  4:1;6:24;9:21;14:7;
  20:17,24;26:8;36:5,6
**measurable (1)**
  22:4
**measure (1)**
  32:21
**mediator (1)**
  34:13
**mediators (1)**
  37:10
**meet (1)**
  39:24
**mention (1)**
  5:17
**message (1)**
  22:21
**might (5)**
  7:6;10:10;13:25;
  36:25;37:14
**million (7)**
  7:19,23;8:18,19;
  9:14;11:16;24:23
**million-dollar (1)**
  9:19
**millions (3)**
  20:4;24:7;30:25
**mind (5)**
  8:9;16:3,12;32:14
**minded (1)**
  37:21
**minute (1)**
  22:23
**minutes (8)**
  4:18,20;9:4;14:12,
  14,20;25:2;26:1
**missing (1)**
  14:8
**modest (3)**
  9:20;19:23;20:8
**moment (2)**
  3:12;39:11
**money (9)**
  9:20;21:14;22:5,6;
  25:21;33:2,25;34:10;
  38:5
**Montali (1)**
  3:5
**month (1)**
  21:12
**months (4)**
  35:13,19;37:5,6
**more (8)**
  9:3;16:20;20:7;
  23:21;25:2,16;36:18;
  37:18
**morning (4)**
  3:8,9,16;14:21

**motion (4)**
  5:7,23,24;12:4
**mouth (1)**
  6:25
**move (1)**
  15:17
**much (5)**
  7:17;8:4;9:11;23:13;
  36:24
**multi- (1)**
  9:18
**multi-million (1)**
  33:13
**multi-millions (1)**
  13:21
**must (2)**
  5:15;18:5
**mysteries (1)**
  9:6

## N

**narrowly (1)**
  36:18;37:18
**nearly (1)**
  16:9
**necessary (6)**
  7:6;12:8,9;17:19;
  24:17;33:20
**need (3)**
  4:2;9:5;38:20
**needs (1)**
  15:1
**negative (1)**
  5:19
**neighbors (1)**
  15:14
**new (1)**
  29:22
**next (8)**
  5:20;6:8,13;8:9;
  18:17,18;26:5;36:21
**Ninth (1)**
  25:14
**noted (1)**
  25:14
**notice (1)**
  15:5,5
**number (2)**
  14:8;33:24

## O

**object (1)**
  22:16
**objected (3)**
  6:3,4,23
**objection (6)**
  5:25;6:6,8,12;7:4;
  36:2
**obligation (2)**
  10:18;33:18
**observed (1)**

16:9
**occurred (2)**
  5:13;12:7
**occurs (1)**
  6:13
**off (1)**
  22:22
**once (2)**
  6:24;37:12
**One (19)**
  3:12;4:9,10;5:21;
  6:16;8:22;9:6;10:17;
  11:7;13:3,7,14,17;
  14:25;20:18;24:5,5;
  27:8;32:8
**only (5)**
  5:17;11:25;12:2;
  22:15;27:8
**oOo- (1)**
  3:2
**open (1)**
  37:21
**operate (1)**
  17:18
**operates (2)**
  15:23,25
**operating (1)**
  15:14
**opinion (1)**
  16:18
**opportunity (6)**
  7:14;24:25;32:20;
  33:20;34:11,12
**oppose (1)**
  24:25
**options (1)**
  26:2
**order (18)**
  3:3;17:20;18:19;
  29:25;33:13;34:17,17;
  35:2,3;36:19,21;38:2;
  39:1,2,3,17,20,21
**ordering (1)**
  37:20
**original (1)**
  16:16
**otherwise (1)**
  15:15
**out (9)**
  10:3;11:13;16:16;
  22:19;31:5;35:19;
  36:23;37:5;38:1
**outcome (7)**
  11:23;13:1,5;15:21;
  24:22;29:19;38:21
**outcomes (1)**
  25:7
**outlined (1)**
  19:10
**out-of-court (2)**
  34:2,4
**over (6)**
  8:20;15:2;20:5;23:7;

24:3;38:3
**overrule (2)**
  5:25;6:6
**overruled (1)**
  6:13
**owe (2)**
  6:21;14:3
**owed (3)**
  5:2,2;7:6
**own (2)**
  15:25;34:13

## P

**paid (6)**
  21:15;25:22;31:5;
  33:1,2,8
**panels (1)**
  37:10
**papers (2)**
  14:25;36:16
**pardon (1)**
  18:1
**part (2)**
  16:23;17:1
**parties (1)**
  37:11
**parts (2)**
  13:8;36:8
**party (3)**
  16:23,25;18:6
**past (2)**
  31:19,19
**pay (7)**
  5:1;11:16;20:23;
  30:17,21;31:2;33:9
**paying (1)**
  25:21
**penalty (1)**
  37:16
**people (3)**
  23:17;37:10,20
**per (1)**
  24:8
**period (3)**
  20:20;30:18;35:23
**permission (1)**
  15:17
**perpetual (1)**
  38:24
**person (1)**
  36:18
**personally (1)**
  4:3
**persuasive (1)**
  10:13
**petition (1)**
  15:3
**PG&E (82)**
  3:5;4:25;5:7;6:9,12;
  7:1;8:12,23;9:1,15,17;
  10:18,20;11:3,13;
  13:25;15:2,5,12,17,21,

23;16:23;17:6;18:13;
  19:13;20:5,9,21,23;
  21:2,15,21,22;22:1,2,3;
  23:7,17,19,19;24:10,
  25;27:13,15,24;28:3,7,
  10;29:3,15,20,24;30:7,
  14,16,17,19,21;31:2,5,
  23,25;32:3,5,11,22;
  33:3,17,20;34:1,3;
  35:10,12,18;36:6;37:3,
  4;38:3,21;39:12,20
**PG&E's (15)**
  6:18;15:8;16:1;17:6,
  18;18:13;22:6;25:10,
  21;26:19;29:12;30:24;
  34:15,15;35:23
**phase (1)**
  10:17
**phases (1)**
  5:20
**phone (2)**
  22:22,25
**phoneticdocument (1)**
  8:16
**Piedmont (3)**
  15:17;22:8;31:19
**playing (1)**
  22:21
**pleading (2)**
  24:11;33:16
**please (3)**
  3:11,15;4:23
**plus (2)**
  32:13;39:6
**point (13)**
  9:6,6;10:20;21:4;
  24:20;26:13;27:7;
  31:25;32:2;34:5,6;
  37:2,7
**portion (1)**
  4:17
**position (15)**
  5:9;8:14;15:6,9;
  20:3;21:17;24:21;25:6;
  26:7,19,22;30:3,14,15;
  33:23
**positive (1)**
  32:11
**power (11)**
  7:17;8:20;9:19;
  15:17,23,25;17:15,19;
  19:13;20:14,20
**precluded (2)**
  19:17,24
**precludes (1)**
  12:2
**preferred (1)**
  36:10
**prejudiced (1)**
  20:10
**premature (1)**
  26:17
**prepare (1)**

Case: 19-30088    Doc# 12359    Filed: 05/11/22    Entered: 05/11/22 09:45:39    Page 47
of 50

39:2
**prepared (3)**
32:9,10,20
**prerogative (1)**
8:3,6
**present (2)**
7:11;12:25
**presentation (3)**
10:6;14:16;25:6
**presented (2)**
22:16;32:15
**presiding (1)**
3:5
**previous (2)**
37:3,4
**Prior (5)**
5:6;14:24;15:11;
28:11;29:24
**probably (2)**
14:17;34:24
**problem (4)**
4:4;17:17;21:8;27:1
**procedurally (1)**
36:5
**proceedings (1)**
40:6
**process (1)**
5:19
**produced (1)**
29:21
**proof (2)**
7:12;22:18
**proper (4)**
16:13;24:16;29:6;
30:13
**properly (1)**
4:7
**property (23)**
5:3;7:18,23;9:16;
11:3,14;13:25;15:3,12,
24;17:21;18:15;24:7;
26:23;28:21;29:15,17;
30:2,13,20;31:11,20;
39:12
**prove (8)**
7:12,13;12:4;19:20;
24:13,14;36:12;38:4
**proved (1)**
34:15
**provide (1)**
11:22
**provided (2)**
5:8;12:6
**punish (1)**
37:16
**purporting (1)**
5:8
**purpose (1)**
17:7
**purposes (3)**
7:5;17:2;19:9
**put (14)**
5:9,21;6:25;7:18;

12:11;14:3;27:20;28:6;
30:2,13;32:9;33:6;
34:24;39:18
**putting (1)**
28:8

## Q

**quicker (1)**
27:16

## R

**reach (3)**
34:4,6;37:11
**read (3)**
14:17,17;16:20
**reading (4)**
8:16,21;11:2;32:13
**reads (1)**
16:6
**ready (1)**
4:15
**realistically (1)**
26:2
**really (12)**
4:25;9:7,13,13;
13:14;20:17;22:9,15;
23:10,15;25:23;27:8
**reason (2)**
4:4;11:4
**reasonable (7)**
17:4;20:13,23;25:4;
26:24;32:13;36:17
**reasonableness (1)**
31:4
**reasonably (7)**
7:24;8:2,23;12:12;
16:25;17:3;26:25
**reasons (4)**
34:19;39:3,8,9
**recall (1)**
31:12
**recontoured (1)**
27:24
**record (5)**
5:11,15;21:20;34:19;
39:5
**recorded (5)**
21:17;22:21;24:2;
27:6;32:16
**recorder (1)**
15:6
**recording (2)**
15:5;18:24
**recourse (1)**
18:22
**recover (1)**
19:18
**referenced (1)**
12:6
**referring (1)**
34:19

**refers (1)**
16:22
**reflected (1)**
39:21
**refuse (1)**
8:23
**regarding (7)**
6:18;8:23;11:7;18:2;
22:17;25:15;26:22
**regardless (2)**
27:18;38:12
**rejected (1)**
39:10
**relationship (2)**
31:1;32:24
**release (6)**
10:17;21:5,16;27:4,
9;33:1
**relevant (3)**
5:17,18,19
**relief (1)**
17:13
**remarkable (1)**
23:12
**remedy (5)**
8:22;11:2,7;24:1;
29:7
**remember (1)**
37:11
**remove (1)**
15:12
**reorganized (2)**
3:17;14:22
**repeat (3)**
37:25;38:17;39:16
**repeatedly (1)**
23:14
**replace (1)**
22:7
**report (4)**
28:10;29:21,23,25
**require (2)**
26:25;29:22
**research (1)**
9:9
**researched (1)**
10:10
**reserve (2)**
4:18,19
**reserved (1)**
14:14
**residence (2)**
15:13;24:6
**residual (1)**
17:21
**resolution (6)**
33:23;34:2;35:20;
37:8,11;39:25
**resolved (1)**
35:18
**resorted (1)**
24:1
**respond (7)**

14:15;33:20;34:11;
35:10,12;37:5;39:20
**responds (1)**
38:3
**response (4)**
4:22;14:15;35:23;
36:1
**responsibility (3)**
28:3;32:6,7
**responsible (1)**
33:3
**restore (1)**
20:23
**restored (3)**
11:14;20:24;21:2
**result (4)**
34:5;35:4,5;37:7
**resulted (3)**
11:25;12:12,12
**retired (1)**
15:18
**retroactively (1)**
19:9
**return (2)**
28:11;29:23
**reversed (1)**
39:13
**reviewed (1)**
39:7
**revisit (1)**
16:5
**right (28)**
3:8,19;4:1;6:10;8:15,
17,20;13:5,16;17:6;
18:25;19:1,2,6,9;21:9;
22:1,1,2,2,3;23:9,16;
27:22;35:25;36:18;
37:14;38:22
**rights (9)**
16:24;17:6,18,18,21,
21;18:13,23;30:24
**rings (1)**
22:25
**rose (1)**
6:19
**roughly (1)**
39:19
**royalties (1)**
23:5
**rule (6)**
6:9;10:9;18:11,11;
26:18,23
**rules (4)**
24:11;25:14;33:16;
35:11
**ruling (10)**
12:8,10;26:15;30:15;
34:6;37:24;38:7,9,22;
39:11
**running (4)**
20:19;33:10;35:1,6
**Rupp (40)**
3:10,14,16,16,19,20,

22;14:11,13,19,21,22;
15:19;18:18;19:3,5,7,
25;21:4,10,12;22:14;
23:2;24:20;25:3;32:11,
12;33:23;34:10;35:15,
21,22;36:1,4,9,16;37:9,
13,21;40:4
**Rupp's (3)**
6:17;25;26:7

## S

**sacred (1)**
25:23
**sacrosanct (1)**
29:22
**same (1)**
14:13
**SAN (1)**
3:1
**sand (1)**
20:18
**satisfaction (2)**
21:3;38:4
**satisfied (1)**
21:15
**satisfy (1)**
33:9
**saw (1)**
23:18,18
**saying (8)**
19:10;20:17;25:17;
29:6,22;35:3;36:13;
38:20
**school (1)**
4:12
**search (1)**
25:4
**second (3)**
13:12;16:23;35:17
**secondly (2)**
6:20;13:5
**section (2)**
16:21;18:4
**seek (2)**
17:10,13
**seem (1)**
10:22
**sense (2)**
24:9;32:11
**session (1)**
3:4
**set (2)**
33:16;39:1
**sets (1)**
5:8
**settle (1)**
34:12
**settlement (2)**
34:3,4
**severe (1)**
24:15
**shall (2)**

Case: 19-30088    Doc# 12359    Filed: 05/11/22    Entered: 05/11/22 09:45:39    Page 48 of 50

16:7,24
**shot (1)**
  20:18
**show (2)**
  8:12;38:20
**shows (1)**
  10:25
**side (1)**
  23:21
**sides (1)**
  34:12
**sign (3)**
  21:16;36:20;39:20
**signed (4)**
  10:17;27:3,9;33:1
**simple (1)**
  24:18
**simply (2)**
  32:2;35:7
**single (1)**
  24:5
**sitting (1)**
  13:23
**situation (9)**
  15:20;17:24;20:6;
  23:14;27:12,14,17;
  32:14,15
**sixty (7)**
  35:6,11,23;36:21;
  37:4;39:19,20
**sod (2)**
  27:20,25
**sole (1)**
  16:18
**solution (3)**
  24:18,18;25:5
**Somebody (3)**
  23:20,20;24:19
**somehow (1)**
  32:1
**someone (1)**
  7:22
**someone's (1)**
  7:23
**sorry (2)**
  22:22;31:10
**sort (4)**
  5:18;10:8,10;15:25
**sounds (1)**
  6:22
**span (1)**
  15:24
**speak (1)**
  25:19
**specified (1)**
  16:17
**spoke (1)**
  25:6
**sprinkler (1)**
  27:20
**St (1)**
  28:22
**staff (1)**

4:8
**stakes (1)**
  16:3
**staking (1)**
  32:17
**standard (1)**
  31:4
**standing (2)**
  28:2,21
**start (4)**
  24:5;35:2,5;38:2
**Starting (1)**
  36:4
**state (3)**
  3:11,15;32:10
**stated (2)**
  23:14;34:19
**statement (1)**
  21:5;23:13
**status (1)**
  14:24
**stays (1)**
  32:2
**steep (1)**
  27:24
**step (1)**
  6:13
**stick (1)**
  28:18
**still (2)**
  6:23;9:12
**stop (1)**
  22:23
**story (1)**
  30:18
**strange (1)**
  25:5
**strictly (2)**
  18:6,12
**stringing (1)**
  17:8
**strip (1)**
  17:1
**subject (3)**
  6:8;31:4;39:7
**successors (2)**
  16:19;18:9
**sue (2)**
  19:1;29:3
**suffered (4)**
  9:21;19:22;22:11;
  24:15
**sufficient (1)**
  15:7
**suit (1)**
  19:18
**summarized (1)**
  39:9
**summary (2)**
  9:5;10:10
**superior (3)**
  29:14;30:11,12
**support (1)**

6:13
**supported (1)**
  17:8
**supports (2)**
  16:14;17:23
**suppose (2)**
  7:19;13:16
**supposed (1)**
  23:23
**sure (4)**
  4:13;14:9;16:22;
  23:2
**surprising (1)**
  22:12
**suspending (1)**
  17:8
**system (1)**
  27:20

# T

**talking (2)**
  6:10;29:13
**telling (1)**
  36:24
**ten (3)**
  4:20;14:14;25:25
**terminatable (1)**
  5:9
**terminate (7)**
  16:7,19;19:2;24:23;
  26:13;29:5;34:21
**terminated (30)**
  5:6;8:8,11,13;12:5,
  20,22;14:2,4,6,9;15:4,
  11;16:4;17:11,12;
  19:11;20:19;21:9,12;
  23:4,4;25:7;26:3,14;
  32:1,12,18,23;34:22
**terminating (1)**
  29:6
**termination (32)**
  5:3;6:18,19;11:2,6,
  25;12:2,7,12;13:4;
  14:10;15:6;16:6,13;
  17:16;18:17,25;19:16;
  20:3;22:18;24:12,16,
  17;26:7,17;29:21;
  33:15;36:11,13;38:10;
  39:10,11
**terms (3)**
  14:8;16:21;28:14
**that'll (1)**
  35:5
**theoretically (1)**
  19:25
**theory (1)**
  33:17
**thereby (1)**
  17:8
**therefore (10)**
  8:17;11:15;13:6;
  14:6;20:14,19;22:4;

24:8;26:4;39:10
**thereon (1)**
  17:8
**third-party (1)**
  29:1
**thirty (4)**
  35:10,11,12,24
**Thomas (2)**
  3:16;14:22
**though (4)**
  9:5;10:16;23:16;
  29:24
**thought (1)**
  24:1
**thousand (2)**
  8:19;27:10
**three (1)**
  27:8
**thus (1)**
  11:23
**times (1)**
  31:19
**title (3)**
  15:8,22;25:11
**today (7)**
  3:18;5:18;12:9,10;
  13:24;26:17;35:3
**today's (1)**
  34:20
**told (3)**
  10:12;30:1,7
**took (3)**
  21:17,18;31:23
**tort (1)**
  20:7
**toward (1)**
  5:19
**tower (1)**
  31:6
**towers (13)**
  15:17,24;17:7;22:7;
  23:19;24:6;26:8;28:22;
  31:14,15,20,22,24
**tractors (1)**
  11:14
**tradeoff (1)**
  31:21
**traditional (1)**
  34:14
**transfer (1)**
  24:7
**translate (1)**
  32:6
**transmission (3)**
  8:20;9:19;17:9
**transmit (1)**
  20:14
**transmitted (1)**
  19:13
**transpired (4)**
  20:2,9,11;26:16
**trap (1)**
  11:10

**trapping (1)**
  33:7
**tremendous (1)**
  9:8
**trespass (3)**
  7:23;13:25;14:3
**tried (1)**
  37:12
**trier (1)**
  22:1
**trigger (1)**
  6:19
**truck (1)**
  23:20
**try (4)**
  12:4;18:23;37:15,20
**trying (4)**
  11:10;22:15;30:10;
  35:18
**TUESDAY (1)**
  3:1
**turn (1)**
  22:22
**turns (1)**
  20:25
**twenty (4)**
  4:18;9:3;14:12,20
**two (12)**
  6:16;13:3,7,14,19;
  15:24;17:7;22:7;24:6;
  31:14,20;32:15
**type (1)**
  25:16
**typical (1)**
  14:15

# U

**unable (1)**
  34:6
**Under (5)**
  6:2;14:5;32:12;
  33:15;37:19
**unhappy (1)**
  23:14
**unilateral (1)**
  36:16
**unless (3)**
  6:3;32:1;38:1
**unreasonable (3)**
  9:1;26:22,23
**unreasonably (3)**
  9:18;10:21;11:7
**unwelcome (1)**
  11:5
**up (7)**
  17:3;20:15;24:13;
  25:1;35:11;36:7,12
**upon (6)**
  8:16;10:12;13:15;
  30:24;32:22;35:8
**upset (1)**
  11:4

Case: 19-30088   Doc# 12359   Filed: 05/11/22   Entered: 05/11/22 09:45:39   Page 49
of 50

**urging (1)**
37:20
**use (2)**
16:25;25:2
**used (2)**
13:25;31:18
**uses (1)**
11:15
**Using (3)**
19:22;25:1;33:6

## V

**validly (1)**
16:4
**value (2)**
20:13;24:8
**variety (1)**
25:16
**versions (1)**
32:15
**versus (1)**
32:7
**video (1)**
3:13
**view (5)**
10:19;22:12,13;34:5;
37:7
**vigorous (1)**
25:24
**violated (2)**
16:12;20:12
**violation (1)**
16:6

## W

**waiting (1)**
24:19
**wasting (1)**
31:8
**watch (1)**
3:18
**way (11)**
8:12;9:3;14:16;
15:14;20:2,2;25:17;
30:3;32:3,8;39:15
**week (1)**
36:21
**welcome (1)**
4:1
**weren't (1)**
23:16
**what's (7)**
18:17,18;23:11,12;
29:18;30:15;34:16
**Whereupon (1)**
40:6
**whole (2)**
32:6;33:18
**whose (2)**
16:10;18:6
**willing (2)**

23:3;37:23
**wires (1)**
17:8
**wish (4)**
7:4;32:2,3;35:4
**Within (1)**
12:4
**without (4)**
4:5;7:3;25:17;26:16
**word (1)**
23:12
**worded (1)**
36:24
**words (6)**
6:25;8:15;9:17;
32:24;34:2,20
**work (6)**
3:13;4:13;10:17;
22:4;24:19;29:20
**working (3)**
4:7;16:16;17:20
**worried (1)**
4:16
**worst (1)**
5:22
**worth (2)**
7:20;37:17
**wow (1)**
28:22
**write (1)**
22:6
**wrong (8)**
6:12;13:11,16;20:21;
21:20;23:12;29:18;
30:19

## Y

**yard (9)**
9:16;27:19,23;28:2,
11,23;29:24,25;31:5
**year (5)**
10:3;16:9;20:5,20;
24:8
**years (6)**
7:1;14:1;26:20;
30:25,25;33:24
**yep (1)**
35:25

## Z

**zero (1)**
13:12
**Zoom (1)**
22:25

## 1

**1,804 (2)**
5:2;7:18
**10 (1)**
3:1

**10:00 (1)**
3:1
**10:58 (1)**
40:6
**100,000 (13)**
28:16;29:2,3,7,10,16,
18;30:2,14,18;33:6,7,8
**13,000 (1)**
21:15
**13th (2)**
36:21,22
**1442 (1)**
18:4
**1909 (1)**
8:16

## 2

**2016 (1)**
31:11
**2017 (5)**
19:12,16;30:2;34:21;
35:8
**2019 (1)**
19:16
**2022 (2)**
3:1;29:5
**25,000 (2)**
8:2;10:15

## 4

**40,000 (1)**
22:7

## 5

**5,000 (1)**
10:15
**50,000 (1)**
10:15

## 6

**60 (1)**
34:24

Case: 19-30088    Doc# 12359    Filed: 05/11/22    Entered: 05/11/22 09:45:39    Page 50
of 50