

FILED

MAY 23 2022

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Pro Se Claimant and*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

*Party to California Public Utilities Commission Proceeding A.20-06-011 which is the Application of Pacific Gas and Electric Company for Approval of Regionalization Proposal*

*Party to California Public Utilities Commission Proceeding R.18-10-007 which is the Order Instituting Rulemaking to Implement Electric Utility Wildfire Mitigation Plans Pursuant to Senate Bill 901*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION,

-and-

PACIFIC GAS AND ELECTRIC
COMPANY,

Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☑ Affects both Debtors

\* *All papers shall be filed in the lead case, No. 19-30088 (DM)*

Bankr. Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administrated)

**MOTION OF WILLIAM B. ABRAMS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ADMINISTRATION OF THE FIRE VICTM TRUST**

**Response Deadline:**

June 15, 2022 (Pacific Time)

**Hearing If Order Granted:**

Date: June 27, 2022
Time: 10:00 a.m. (Pacific Time)

Place: Via Zoom

1

# PRELIMINARY STATEMENT

William B. Abrams ("**Abrams**") as a Pro Se Claimant, hereby submits this Motion (the "**Motion**") pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Bankruptcy Rule 2004-1(a), seeking entry of an order authorizing discovery and associated hearing of The Fire Victim Trust (the "**Trust**" and "**FVT**") , from The Honorable John K. Trotter (Ret.), in his capacity as the Trustee (the "**Trustee**") or his designee(s) so that victims can accurately evaluate the management, administration and associated oversight of the Fire Victim Trust in accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement (the "**Trust Agreement**"), and the Fire Victim Claims Resolution Procedures (the "**CRP**"). Abrams requests that the Court enter an order (*see* **Exhibit A** (proposed order)) authorizing service of the discovery requests in the form attached hereto as **Exhibit B** on The PG&E Fire Victim Trust and Trustee. In support of this Motion, Abrams relies on the *Declaration of William B. Abrams in Support of the Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings regarding the Administration of the Fire Victim Trust* (the "**Abrams Declaration**") filed contemporaneously herewith, and respectfully states as follows:

# JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2004-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), Paragraph 18 and Paragraph 78 of the Confirmation Order, Section 6.7 and Section 11.1 of the Plan, and Section 1.6 and Section 8.20 of the Fire Victim Trust Agreement. Under Section 11.1(u) of the Plan, the Court retained jurisdiction "[t]o hear and determine disputes arising in connection with or related to the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated herein, or any agreement, instrument, or other document governing or relating to any of the foregoing," "[t]o take any action and issue such orders as may be necessary to construe, enforce, implement, execute,

Case: 19-30088    Doc# 12440    Filed: 05/23/22    Entered: 05/23/22 10:18:48    Page 2 of 26

and consummate the Plan or to maintain the integrity of the Plan following consummation," "[t]o hear and determine any rights, claims, or Causes of Action held by or accruing to ... the Fire Victim Trust pursuant to the Bankruptcy Code or any federal or state statute or legal theory," and "[t]o hear and determine any dispute involving the Wildfire Trusts, including but not limited to the interpretation of the Wildfire Trust Agreements." Plan at § 11.1(i), (k), (t) & (u).[1]

Section 1.6 of the Fire Victim Trust Agreement provides that the "Bankruptcy Court shall have exclusive jurisdiction with respect to any action relating to or arising out of the [Fire Victim] Trust." Section 8.20 of the Fire Victim Trust Agreement provides that the "provisions of the Trust Documents shall be enforced by the [Bankruptcy Court]." This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **BACKGROUND**

1.      On January 29, 2019 (the "**Petition Date**"), PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). On February 12, 2019, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the United States Trustee appointed an Official Committee of Tort Claimants (the "**TCC**"). Pursuant to the Confirmation Order entered by this Court on June 20, 2020, PG&E's Plan was approved and confirmed under section 1129 of the Bankruptcy Code.

---

[1] Under Section 11.1 of the Plan, the Court also retained "jurisdiction ... of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes: ... (c) [t]o ensure that distributions to holders of Allowed Claims are accomplished as provided herein; (d) [t]o consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims; ... (m) [t]o determine such other matters and for such other purposes as may be provided in the Confirmation Order; ... (p) [t]o hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; ... (r) [t]o determine any other matters or adjudicate any disputes that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any document related to the foregoing ... (v) [t]o hear any other matter not inconsistent with the Bankruptcy Code."

2.      On July 1, 2020 the PG&E Fire Victim Trust Agreement (the "**Trust Agreement**") was effective and implements certain of the terms of the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020.  The FVT Agreement Section 5.8(b) states "*The Trustee may retain and **reasonably compensate** the Trust Professionals, the cost of which shall be paid as a Trust Expense, subject to the terms of this Trust Agreement, including the Budget.*  The Fire Victim Trust Agreement Section 6.2 states "*The members of the TOC shall serve in a fiduciary capacity representing current holders of Fire Victim Claims in the administration of the Trust. **The TOC shall not have any fiduciary duties or responsibilities to any party other than holders of Fire Victim Claims**, provided that the TOC shall be entitled to the protections and limitations of duties provided for herein even with respect to the holders of Fire Victim Claims.*"  Subsequently, on June 29, 2020 Attorneys for the Trustee and the Trust Claims Administrator filed the "*Notice of Appointment of Fire Victim Trust Oversight Committee in Accordance with Confirmation Order [Dkt. No. 8053] Filed by Fire Victim Trustee*" [Dkt. 8195]. (emphasis added)

3.      On April 29, 2021 and in accordance with Section 2.2(c)(i) of the PG&E Fire Victim Trust Agreement, The Honorable John K. Trotter (Ret.) in his capacity as the Fire Victim Trustee (the "**Trustee**"), filed an annual report (the "**2020 Annual Report**") audited by the Trust Accountants along with an opinion of the Trust Accountants as to the fairness in all material respects of the special-purpose financial statements contained in the Annual Report (the "**Opinion**") [Dkt. 10601]. This 2020 annual report did not provide an expense breakdown that would allow a PG&E Fire Victim any reasonable basis to evaluate expenses associated with the administration, management and oversight of the FVT in accordance with Section 5.8(a) or Section 5.8(b) of the Trust Agreement. There was no quantitative expense breakdown or related qualitative information regarding Trust lobbying activities, public relations activities, payments to Trust Oversight Committee members among other details that would allow for any reasonable review of Trust activities on behalf of PG&E Fire Victims.

4.      On September 23, 2021, I sent a letter via email to the Trustee and PG&E Fire Victim Trust Counsel providing the "*Complaint and Request for Investigation of Violations of the Political Reform Act*" filed by the International Brotherhood of Electrical Workers Local 1245 naming Patrick McCallum, McCallum Group as the spokesperson and Mr. Frank Pitre, Cotchett, Pitre and McCarthy, LLP as a "responsible officer" of the Up From the Ashes Coalition ("**UFTA**").  This complaint stated

in part that "*Although Mr. McCallum's personal experience during the fires deserves sympathy, it does not give him license to help Mr. Pitre and UFTA's other backers deceive the people of California and violate the law. And yet, from its inception Mr. McCallum's lobbying campaign on behalf of UFTA has included explicit efforts to misinform the public about the nature of UFTA ... The public has a right to determine if UFTA is nothing more than a means for a group of trial lawyers to profit off of the tragic fires, one part of a public misinformation campaign conducted while hiding their identities behind UFTA.*"

5.       On February 1, 2022, The Trust through Zumado Public Relations issued a press release titled "*PG&E Fire Victim Trust Increases Fire Victim Distributions.*" Within this press release it stated "*Cash on hand to the PG&E Fire Victim Trust has improved by two recent developments,*" said Justice Trotter. "*First, in January, PG&E paid the final installment on a deferred payment agreement which resulted in the Trust receiving approximately $592 million in additional funding. Second, the Fire Victim Trust recently closed on an initial round of monetization of the PG&E Stock that was issued to the Trust in July 2020.*"[2] Within this press release it did not describe the Fire Victim Trust shortfall or any description indicating why Fire Victim Trust traded the stock far below the target price to realize the Trust identified $13.5B valuation. Instead this press release indicated only positive implications from this trade by stating "*Those fire victims who previously received a distribution from the Trust will receive a supplemental payment. The increased distribution payment means that all fire victims will receive 45% of the value of their approved claims, up from the prior 30%.*"

6.       Press reports indicated that On April 12, 2022 Mr. McCallum who "*founded a victims' advocacy group called Up from the Ashes ... made an initial pitch to Newsom's staff Tuesday at the Capitol.*"[3] This "initial pitch" by Mr. McCallum on behalf of the Trust was described based "*on the idea of a $1.5B loan to ensure survivors are fully compensated.*"[4] There was no FVT communication around this effort to inform victims about the proposed financial terms associated with the $1.5B loan or any justification of this loan as a prudent financing vehicle to address the apparent FVT shortfall. The manner in which Mr. McCallum was referred by the Trust Oversight Committee (TOC) and

---

[2] See Business Wire Press Release, "PG&E Fire Victim Trust Increases Fire Victim Distributions", February 1, 2022, https://www.businesswire.com/news/home/20220201005595/en/PGE-Fire-Victim-Trust-Increases-Fire-Victim-Distributions
[3] See The Sacramento Bee, "PG&E Wildfire Victim Trust Lobbies Newsom, California lawmakers for $1.5 billion state loan", Updated April 19, 2022
[4] See Cal Matters, "Yet another Set Back for PG&E wildfire victims", April 22, 2022

Case: 19-30088    Doc# 12440    Filed: 05/23/22    Entered: 05/23/22 10:18:48    Page 5 of 26

selected by the Trust was also not described within the 2021 Annual Report or other official FVT communications. This provides no basis for victims to evaluate the degree to which this or other lobbying expenses were "reasonable" according to Section 5.8(b) of the plan.

7.      On April 20, 2022 and through the direction of the FVT, Zumado Public Relations issued a press release stating *"Today, Justice John K. Trotter (Ret.), Trustee of the PG&E Fire Victim Trust, announced that the Trust and lobbyist Patrick McCallum have agreed to part ways, effective immediately, in light of certain recent publicly disclosed developments... we had hoped that Patrick would be able to guide us through the State of California administration, given his extensive lobbying experience. Unfortunately, we were unaware of the regrettable circumstances that have come to light in recent days, which have necessitated our actions today."*[5] The manner in which Mr. McCallum was referred by the TOC and selected by the Trust was not mentioned within this press release or any other communications to victims. The expenses associated with Zumado Public Relations and the lobbying expenses through Up From the Ashes Coalition, The McCallum Group, Patrick McCallum or others were not disclosed within the 2020 or the 2021 Annual Reports. This provides victims with no basis to evaluate whether or not Mr. McCallum or Zumado Public Relations were contracted and paid in accordance with Section 5.8(a) and Section 5.8(b) of the Fire Victim Trust Agreement.

8.      On April 29, 2022 the Honorable John K. Trotter (Ret.) in his capacity as the Fire Victim Trustee (the "**Trustee**"), caused to file the *"Notice of Filing of Annual Report of Fire Victim Trust and Claims Report of Fire Victim Trust Pursuant to Fire Victim Trust Agreement"* (the "**2021 Annual Report**") [Dkt. 12287]. This annual report provided within the "Supplemental Information" Section the following 7-line items breaking down the $93,329,126 in annual operating expenses:

- Claims processor fees and expenses - $62,918,772
- Claims administration fees and expenses - $12,118,867
- Legal fees and expenses - $9,817,800
- Financial professional fees and expenses - $4,963,759
- Trustee Fees and Expenses - $1,500,000
- Insurance, evidence preservation, and other expenses - $1,227,079
- Consultant fees and expenses - $782,849

---

[5] See Business Wire Press Release, "Fire Victim Trust Statement", April 20, 2022, https://www.businesswire.com/news/home/20220420006198/en/Fire-Victim-Trust-Statement

Case: 19-30088    Doc# 12440    Filed: 05/23/22    Entered: 05/23/22 10:18:48    Page 6 of 26

This annual report provided no expense definition or relevant description of lobbying activities, public relations, regulatory representation or other detail that would allow for a reasonable review of Trust expenses. Moreover, the court should consider that the Fire Victim Trust Agreement specifies that the auditor must provide an opinion "*as to the fairness in all material respects of the special-purpose financial statement.*"[6] Without the Fire Victim Trust providing details regarding their lobbying, public relations, regulatory engagement and other activities, it would be impossible for any auditor to ensure "*fairness in all material respects*" relative to the financial statements. It certainly would provide no basis for evaluating whether any of these professionals were "reasonably" compensated according to Section 5.8(b) of the Trust Agreement.

9.     On May 8, 2022, I sent a letter via email to the Trustee and PG&E Fire Victim Trustee Counsel stating in part "*This is why the recent annual report submitted by the Trust [Dkt. 12287] is so concerning to me and other victims. Instead of using this as a tool to provide transparency regarding FVT costs and to restore confidence in the Trust administration, it provides an insufficient 7-line financial statement with zero detail that would allow a victim to understand how the Trust is being managed on their behalf... Despite these issues, it seems that the Trust is looking to provide less transparency leaving victims with little information to understand how the Trust operates on their behalf. **I know it is not your intent** but please consider how the recent annual report only serves to hide important details from victims and undermines well overdue Trust administration transparency. Here are a couple examples of trust annual reports that demonstrate the type of detail that should be put forward to victims within this case:*

http://abblummustrust.org/assets/documents/ABB-Lummus-Trust-Annual-Report-and-Financial-Statements_2020_service-copy.pdf

https://www.presidio.gov/presidio-trust/planning-internal/Shared%20Documents/Annual%20Reports/EXD-700-FY2021PerfAccRpt.pdf

*Note that the first document (Asbestos PI Trust Annual Report) identifies the expenses for the Trust Advisory Committee ("TAC") and other Trust contractors. This is the type of detail that should be within the FVT annual report but has been withheld from view. I urge the Trust to revise and reissue the annual report with this type of detail so that victims can regain confidence in how the funds that they rely upon to rebuild their homes and their lives are being managed and administered. I would welcome an opportunity to discuss these issues with you and/or members of the TOC directly to provide added background and collaborate on remedies. My only interest through this email and through my other related engagements is to provide support for your efforts on behalf of victims. Thank you for your consideration of these critical matters.*"

---

[6] See PG&E Fire Victim Trust Agreement, Section 2.2(c)(i), pg. 12, July 1, 2020

10.     Prior to and subsequent to this email correspondence urging more transparency and more information regarding the activities and expenditures of the PG&E Fire Victim Trust, I sent other correspondence and met by phone and video conference with Trustee and Trustee counsel urging the same.  During this same time-period, I have requested and have been denied meetings with the Trust Oversight Committee to remedy these oversight issues in good faith.  **Throughout these exchanges, I have expressed my deep respect and gratitude for all of the hard work of the Honorable John K. Trotter (Ret.) in his capacity as Trustee and that of other Trust representatives on behalf of victims in this case.  It is specifically because I appreciate the importance of their work on behalf of PG&E victims and know first-hand about the continued suffering of victims waiting on just settlements that I am compelled to file this motion and propose the following remedies:**

## RELIEF REQUESTED

By this Motion, Abrams requests entry of an order, pursuant to Bankruptcy Rule 2004:

1.  authorizing Abrams and other PG&E victims with claims to serve discovery in the form attached hereto as **Exhibit B** on the Fire Victim Trust (the "**Requests**") through June 17, 2022 and ensure that these requests are posted to the Fire Victim Trust portal for review by PG&E victims holding claims;

2.  authorizing the Trustee or designee(s) to respond to victim discovery requests within ten (10) days of receipt of the Requests and, the Fire Victim Trust shall be directed to either (i) produce, on a rolling basis, all non-privileged documents and written responses to the Requests, or (ii) file all objections and/or responses to the Requests with this Court.

3.  authorizing Abrams and other PG&E victims with claims to hold a hearing on Tuesday June 27, 2022 via zoom so that victims may ask questions and get answers from the Trustee or his designee(s) regarding expenses and associated activities of the management, administration and oversight of the Fire Victim Trust.  All submitted questions shall be posted to the Fire Victim Trust portal and must be submitted to the Trustee by June 17, 2022.

Case: 19-30088    Doc# 12440    Filed: 05/23/22    Entered: 05/23/22 10:18:48    Page 8 of 26

The form and function of the relief requested including **Exhibit B** information requests, definitions and instructions mirror and are of like manner and wording as those within the "*Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery From Adventist Health System/West and Adventist Health Feather River and Service of a Subpoena on Factory Mutual Insurance Company*" [Dkt. 11556] filed by Brown Rudnick, LLP on behalf of the Fire Victim Trustee. **This was done with an abundance of caution to ensure consistency with similar requests submitted to this Court and to ensure I was following the proper procedure given the prior instructions of the Court for Pro Se claimants.**

## BASIS FOR RELIEF REQUESTED

Bankruptcy Rule 2004(a) states that on "***motion of any party*** in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The scope of an examination sought under Rule 2004(b) may relate to "***the acts, conduct***, or property or to the liabilities and financial condition of the debtor, or to **any matter which may affect the administration of the debtor's estate**, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added).

The granting of a motion under Rule 2004 is within the "ultimate discretion" of the Court. *In re Art & Architecture Books of 21st Century*, No. 2:13-BK-14135, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (quoting *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292-93 (Bankr. D. Ariz. 2002)). Bankruptcy Rule 2004 allows considerable leeway for all manner of so-called "fishing expedition[s]" if there is a reasonable nexus to the debtor and the administration of the debtor's case. *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018) (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011)). Any third party who has a relationship with the debtor may be made subject to a Rule 2004 investigation. *Mastro*, 585 B.R. at 597 (citing *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)).

Here, Abrams seeks discovery from The Fire Victim Trust to obtain complete disclosures of expenses and related "acts" on behalf of PG&E Victims. Abrams seeks this discovery to ensure transparency and accountability of the PG&E Fire Victim Trust related to the trust shortfall, lobbying activities as well as public relations and regulatory acts on behalf of PG&E Fire Victims. This will also provide PG&E Victims with the information necessary to evaluate the degree to which the Trust

has acted prudently and reasonably with respect to their court approved settlement funds. Specifically, this will allow victims the ability to evaluate whether or not Trust expenses and related activities should be "reasonably" compensated in accordance of Section 3.8(b) of the Trust Agreement. Additionally, in light of the IBEW filed complaints against Up From the Ashes and the subsequent rehiring of Mr. McCallum after more recent allegations, it is only reasonable and prudent to review these Trust lobbying activities and other contracted activities in accordance with Section 5.8(a) of the Trust Agreement.

The Trustee asserted through the *"Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery from Adventist Health System/West and Adventist Health Feather River and Service of a Subpoena on Factory Mutual Insurance Company"* that the Court should rely upon the prior ruling for PWC that *"there is no benefit to any party to withhold information... Adventist is not excused from producing data based on its own determination that the Fire Victim Trust does not need it. See In re PG&E Corp., Bankr. Case No. 19 30088, Order Compelling PriceWaterhouseCoopers LLP's Compliance with Rule 2004 Subpoena In Relation To The General Rate Case Documents [Docket No. 11145] (". . . the Court is not persuaded by the 'you won't find anything so I don't have to give it to you' position being asserted.")* [Dkt. 11556]. If this criteria for discovery and financial transparency is good enough for the PG&E Fire Victim Trust to assert, this motion should also be supported by the Trustee given that the vast majority of victims were not afforded judicial review. It is also important to note that within the Court's *"Order on Fire Victim Trustee's Rule 2004 Motion"* it stated *"Were Adventist not one of the few claimants who have the fallback option for judicial review after the Fire Victim Trustee has finished his work, the outcome here might be different and granting the 2004 Motion might be an appropriate tool to draw from the toolbox now and put to work... While the CRP does not incorporate Rule 2004, it does not exclude use of that rule either."* [Dkt. 11652].

The information and documents requested through this discovery process should be readily available by the Trustee and following existing Trust processes for communicating with victims through the "Documents" section of the FVT Portal. Therefore, the requested relief is expected to be cost neutral for the Trustee to administer and is of critical importance to ensure Trust transparency in accordance with Bankruptcy Rule 2004 and the Fire Victim Trust Agreement.

Case: 19-30088    Doc# 12440    Filed: 05/23/22    Entered: 05/23/22 10:18:48    Page 10 of 26

## **NO PRIOR REQUEST FOR RELIEF**

No previous motion for the relief sought herein has been made to this Court under Bankruptcy Rule 2004.

## **CONCLUSION**

The basis for relief requested within this Motion is the same basis as has been asserted and supported by the Trustee. Prior orders from the Court have made it clear that Bankruptcy Rule 2004 should apply as an appropriate tool and put to work particularly for those parties without judicial review. Therefore, Abrams respectfully requests this Court take notice of the Motion and enter an order in substantially the form as **Exhibit A**, granting the relief requested herein, and such other and further relief as may be just.

Dated: May 23, 2022

Respectfully submitted,

*/s/ William B. Abrams*

William B. Abrams

Pro Se Claimant

**EXHIBIT A**

PROPOSED ORDER

William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Pro Se Claimant and*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

*Party to California Public Utilities Commission Proceeding A.20-06-011 which is the Application of Pacific Gas and Electric Company for Approval of Regionalization Proposal*

*Party to California Public Utilities Commission Proceeding R.18-10-007 which is the Order Instituting Rulemaking to Implement Electric Utility Wildfire Mitigation Plans Pursuant to Senate Bill 901*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| In re:<br><br>PG&E CORPORATION,<br><br>    -and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>           Debtors.<br><br>  ☐ Affects PG&E Corporation<br>  ☐ Affects Pacific Gas and Electric Company<br>  ☑ Affects both Debtors<br><br>\* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administrated)<br><br><br>**ORDER GRANTING MOTION OF WILLIAM B. ABRAMS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY FROM THE FIRE VICTIM TRUST AND A HEARING TO PROVIDE DISCLOSURES REGARDING EXPENDITURES AND RELATED ACTS OF THE FIRE VICTIM TRUST** |

Upon the Motion, dated May 20, 2022 (the "**Motion**"),[7] of William B. Abrams ("**Abrams**"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 2004-1(a), for entry of an order authorizing discovery from the PG&E Fire Victim Trust and Honorable John K. Trotter (Ret.), in his capacity as the Fire Victim Trustee (the "**Trustee**") and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California, Paragraph 18 and Paragraph 78 of the Confirmation Order, Section 6.7 and Section 11.1 of the Plan; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion; the Court having reviewed the proposed form of discovery attached to the Motion as **Exhibit B**; this Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted therein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERD THAT**:

1.      The Motion is granted as provided herein.

2.      PG&E Fire Victims are authorized to serve discovery in the form attached to the Motion as **Exhibit B** on the PG&E Fire Victim Trust and the Trustee.

3.      Abrams and the Trustee shall set a hearing on or about June 27, 2022 so that PG&E Victims may ask questions and get answers from the Trustee or his designee(s) regarding expenses and associated actions of the management, administration and oversight of the Fire Victim Trust. All submitted questions shall be posted to the Fire Victim Trust portal and must be submitted to the Trustee by June 17, 2022.

4.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

5.      This Order is without prejudice to PG&E Fire Victim's right to file further motions seeking additional documents pursuant to Bankruptcy Rule 2004 or any other applicable law.

** END OF ORDER **

---

[7] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

14

# **EXHIBIT B**

FORM OF DISCOVERY REQUESTS

William B. Abrams
end2endconsulting@gmail.com
1519 Branch Owl Place
Santa Rosa, CA, 95409
Tel: 707 397 5727

*Pro Se Claimant and*

*Party to California Public Utilities Commission Proceeding I.15-08-019 to Determine whether Pacific Gas and Electric Company and PG&E's Corporation's Organizational Culture and Governance Prioritizes Safety*

*Party to California Public Utilities Commission Proceeding A.20-06-011 which is the Application of Pacific Gas and Electric Company for Approval of Regionalization Proposal*

*Party to California Public Utilities Commission Proceeding R.18-10-007 which is the Order Instituting Rulemaking to Implement Electric Utility Wildfire Mitigation Plans Pursuant to Senate Bill 901*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    -and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>             Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>\* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administrated)<br><br><br>**WILLIAM B. ABRAMS FIRST SET OF REQUESTS FOR INFORMATION, FIRST SET OF INTERROGATORIES, AND FIRST SET OF DOCUMENT REQUESTS TO THE PG&E FIRE VICTIM TRUST** |

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure (the "Civil Rules"), Rules 2004, 9014, 7026, 7033, 7034 and 7036 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), William B. Abrams, pro se Claimant, ("Abrams"), submits the following requests for information (the "Requests for Information"), interrogatories (the "Interrogatories"), and requests for production of documents (the "Requests for Production"). Please, post all responses to the Requests for Information and Requests for Production to the Fire Victim Trust Portal for all victims to be able to view and analyze, within ten (10) days of the service of the Requests for Information. Abrams further requests that the Fire Victim Trust and the Trustee and/or designee(s) respond to the Interrogatories in accordance with Civil Rules 33 and 36.

## DEFINITIONS

The term "Trust Acts" or "Trust Actions" shall mean any actions the PG&E Fire Victim Trust, or those of its Trustee, agents, contractors, employees, attorneys, officers, directors, representatives, or Trust Oversight Committee Members.

The term "Trust Oversight Committee" ("**TOC**") shall mean any current or past member jointly or severally who served on the PG&E Fire Victim Trust Oversight Committee.

The term "Trust Lobbyist" shall mean any agent, contractor, employee, attorney, officer, director, representative or TOC member that acted in an official or unofficial capacity representing the interests of Trustee, Trust Administrator, PG&E Fire Victim Trust and/or Trust Oversight Committee member(s) to any and all government agencies including Local, State or Federal staff, employees, elected officials, regulators or others employed by or on behalf of government agencies.

The term "Claim" shall mean any PG&E victim claim administered or reviewed through the PG&E Fire Victim Trust.

The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of California.

The term "Chapter 11 Cases" shall mean the chapter 11 cases commenced by PG&E Corporation and Pacific Gas and Electric Company in the Bankruptcy Court, Case No. 19-30088.

The term "Chapter 11 Plan" shall mean the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] confirmed by order of the Bankruptcy Court in the Chapter 11 Cases.

The term "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other forms of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

The term "concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

The term "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

The term "Fire Victim Trust" shall have the same meaning as that term is used in the Chapter 11 Plan.

The term "Fires" shall have the same meaning as that term is used in the Chapter 11 Plan related to the PG&E wildfires in 2015, 2017, 2018.

The term "Fire Victim Trust Agreement" shall have the same meaning as that term is used in the Chapter 11 Plan.

The term "Fire Victim Claims Resolution Procedures" ("**CRP**") shall have the same meaning as that term is used in the Chapter 11 Plan and in the PG&E Fire Victim Trust Agreement.

The term "Trust Expenses" shall have the same meaning as that term used in the PG&E Fire Victim Trust Agreement include fees and expenses incurred in pursuing the Trust Assets, administering the Trust, managing the Trust Assets, and making distributions in accordance with the Trust Documents, the Plan and the Confirmation Order.

The term "Special Master" shall have the same meaning as that term used in the Chapter 11 Plan and in the PG&E Fire Victim Trust Agreement.

The term "Claims Administrator" shall have the same meaning as that term used in the Chapter 11 Plan and in the PG&E Fire Victim Trust Agreement.

The term "Claims Processor" shall have the same meaning as that term used in the Chapter 11 Plan and in the PG&E Fire Victim Trust Agreement.

The term "Trustee Designee" shall mean any individual employed by or contracted with the PG&E Fire Victim Trust that the Trustee assigns to a task.

The term "Trust Representative" shall be any individual that was employed or contracted with the PG&E Fire Victim Trust including but not limited to the Trustee, Claims Administrator, Claims Processors and members of the Trust Oversight Committee (TOC) that represented the interests of the PG&E Fire Victim Trust in an official or unofficial capacity to any party or individual.

The term "Investment Guidelines" shall have the same meaning as that term used in the Chapter 11 Plan and in Exhibit 6 of the PG&E Fire Victim Trust Agreement.

The term "Sell-Down Plan" shall have the same meaning as that term used in the Chapter 11 Plan and PG&E Fire Victim Trust Agreement and involves liquidating some or all of the stock.

The term "Investment Advisor" shall have the same meaning as that term used in the Chapter 11 Plan and PG&E Fire Victim Trust Agreement. This includes individual(s) that have assessed the levels of investment risks and advised the Trust or Trustee in making investment decisions.

The term "Trust Disbursing Agent" shall have the same meaning as that term used in the Chapter 11 Plan and PG&E Fire Victim Trust Agreement.

The term "Proof of Claim" shall mean the Proof of Claim (Fire Claim Related) filed by any PG&E Fire Victim in the Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company.


Global Policy.


The terms "You" or "Your" and variants thereof mean Trustee or Trustee Designee(s).


## INSTRUCTIONS

These instructions are consistent in form and wording as the "*Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery From Adventist Health System/West and Adventist Health Feather River and Service of a Subpoena on Factory Mutual Insurance Company*" [Dkt. 11556] filed by Brown Rudnick, LLP on behalf of the Fire Victim Trustee. **This was done with an abundance of caution to ensure consistency with similar requests submitted to this Court on behalf of the Trustee and to ensure the process was within the scope of existing FVT processes.** The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Information, Interrogatories, and Requests for Production, the following Instructions shall be followed:

1.    All responses shall comply with the requirements of the Civil Rules and the Bankruptcy Rules.

2. Unless otherwise stated in a specific Request for Information, Interrogatory, or Request for Production herein, the relevant time period shall be the period from the date of the Chapter 11 Plan Confirmation to the present.

3. These Requests for Information, Interrogatories and Requests for Production shall be deemed continuing in nature. In the event you become aware of additional information related to Requests for Information, Interrogatories or Requests for Production, those should be promptly produced.

4. Produce all documents and all other materials in Your actual or constructive possession, custody, or control including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

5. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

6. Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

7. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

8. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

9. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

   a) Identify the type, title and subject matter of the Document;

b) State the place, date, and manner of preparation of the Document;

c) Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

d) Identify the legal privilege(s) and the factual basis for the claim.

10.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 9 above must be provided.

11.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

12.     If You object to any of these Requests for Information, Interrogatories, or Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Information, Interrogatory, or Request for Production, You shall respond to any other portions of such Request for Information, Interrogatory, or Request for Production as to which there is no objection and state with specificity the grounds of the objection.

13.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Information, Interrogatories, or Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Information, Interrogatories, or Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Information, Interrogatory, or Request for Production, so state in Your response to that Request for Information, Interrogatory, or Request for Production.

14.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

15.     If You deny knowledge or information sufficient to answer an Interrogatory (or any part thereof), provide the name and address of each person known or believed to have such knowledge. Identify each person who assisted or participated in preparing and/or supplying any of the information given in answer to these Interrogatories.

///

# **MANNER OF PRODUCTION**

1.	Document Production and Storage: All Documents produced by the Fire Victim Trust and/or the Trustee shall be made available to all PG&E victims by posting to the Fire Victim Trust Portal within the "Documents" section of that site. These shall be uploaded to the portal in searchable PDFA format or single-page 300 dpi-resolution group IV TIF format ("tiff"), along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

2.	Electronic Documents and Display: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow email correspondence to Abrams and appropriate posting to the Fire Victim Trust Portal, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

3.	Emails and Attachments, and Other Email Account-Related Documents: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft ExchangeTM, Lotus NotesTM, or Novell GroupwiseTM shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by PG&E Fire Victims and accessible from the PG&E Fire Victim Trust Portal.

4.	Documents and Data Created or Stored in or by Structured Electronic Databases, Spreadsheets and Non-Standard File Types: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the PG&E Fire Victims to reasonably manage and import those Documents from the Fire Victim Trust Portal into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field-level schemas include:

    a)	XML format file(s);

    b)	Microsoft SQL database(s);

    c)	Access database(s); and/or

Case: 19-30088    Doc# 12440    Filed: 05/23/22    Entered: 05/23/22 10:18:48    Page 22 of 26

d) fixed or variable length ASCII delimited files.

5. <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be made available on the PG&E Fire Victim Portal and produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

6. <u>"Other" Electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be uploaded to the Fire Victim Trust Portal and produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

7. <u>Paper Documents</u>: Documents originally created or stored on paper shall be produced in tiff format and uploaded to the Fire Victim Trust Portal. Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## REQUESTS FOR INFORMATION AND INTERROGATORIES

1. If you contend that the expenses associated with the hiring and managing of lobbyists on behalf of the Fire Victim Trust were reasonable and prudent, please provide a breakdown of those expenses by lobbyist and explain the factual basis for that contention.

RESPONSE:

2. If you contend that the lobbying activities on behalf of the Fire Victim Trust were reasonable, prudent and in keeping with the obligations under Trust Agreement Section 5.8, please provide a list of the bills and legislative hearings where the Trustee and/or his designated lobbyists gave testimony or engaged in efforts to further the interests of PG&E Victims. Specifically, please indicate which of these activities or others furthered the efforts of the Trustee to make victims whole and to fund the Trust to the agreed $13.5 Billion level

RESPONSE:

3. If you contend that the expenses associated with the regulatory engagement on behalf of the PG&E Fire Victim Trust at the California Public Utilities Commission was reasonable, prudent and in keeping with the obligations under Trust Agreement Section 5.8, please provide a breakdown of motions or comments filed within those proceedings. Additionally, provide a breakdown of expenses by commission proceeding and explain the factual basis for that contention.

23

RESPONSE:

4.    If you contend that the expenses associated with public relations activities on behalf of the Fire Victim Trust were reasonable, prudent and in keeping with the obligations under Trust Agreement Section 5.8, please provide a breakdown of those expenses by PR firm (Zumado Public Relations, etc.) and by activity (press releases, press conferences, etc.).

RESPONSE:

5.    If you contend that the expenses associated with public relations activities on behalf of PG&E Fire Victims and the Fire Victim Trust were reasonable, prudent and in keeping with the obligations under Trust Agreement Section 5.8, please provide a list of those activities where the primary target audience was not victims.  What public relations activities were designed to garner support from stakeholders other than victims to fully fund the Fire Victim Trust and/or other activities to encourage stakeholder support?

RESPONSE:

6.    If you contend that the contracts awarded to members of Trust Oversight Committee (TOC) were reasonable, prudent and in keeping with the obligations under Trust Agreement Section 5.8, please provide a breakdown of those expenses by contract, explain the contract award process and explain the factual basis for that contention.

RESPONSE:

7.    If you contend that the selection of the Trust Oversight Committee (TOC) was reasonable, prudent and in keeping with the Section 6.2 of the PG&E Fire Victim Trust Agreement please provide a description of that vetting process and explain the factual basis for that contention.

RESPONSE:

8.    If you contend that the 7-lines of expense detail provided within the 2021 Annual Report will allow for a reasonable and prudent financial review from PG&E Fire Victims, please explain the factual basis for that contention.

RESPONSE:

9.    If you contend that the expenses associated with the administration of the Fire Victim Trust was reasonable and prudent, please explain the factual basis for that contention.  Additionally, please provide a breakdown by function and/or department of those expenses and activities.

RESPONSE:

10.    If you contend that the expenses associated with the "Special Master" were reasonable and prudent, please provide a breakdown of those expenses by activity and explain the factual basis for that contention.

RESPONSE:

24

11.    If you contend that the expenses associated with the "Claims Processor" were reasonable and prudent, please provide a breakdown of those expenses by activity and explain the factual basis for that contention.

RESPONSE

12.    If you contend that the expenses associated with the "Investment Advisor" were reasonable and prudent, please provide a breakdown of those expenses by activity and explain the factual basis for that contention.

RESPONSE:

13.    If you contend that the expenses associated with the "Trust Disbursing Agent" were reasonable and prudent, please provide a breakdown of those expenses by activity and explain the factual basis for that contention.

RESPONSE:


**REQUESTS FOR PRODUCTION**

1.    All documents that support or refute Your responses to the foregoing Requests for Information and Interrogatories.

RESPONSE:

2.    All contracts and agreements produced and/or executed by Trust Representatives on behalf of the Trust that supported lobbying activities on behalf of the PG&E Fire Victim Trust.

RESPONSE:

3.    All contracts and agreements produced and/or executed by Trust Representatives that supported public relations activities on behalf of the PG&E Fire Victim Trust.

RESPONSE:

4.    All contracts and agreements produced and/or executed by the Trust Representatives that supported regulatory activities on behalf of the PG&E Fire Victim Trust.

RESPONSE:

5.    All contracts and agreements produced and/or executed by Trust Representatives that supported financial advisory/consulting activities on behalf of the PG&E Fire Victim Trust.

RESPONSE:

6.    All contracts and agreements produced and/or executed by Trust Representatives that supported claims administration activities on behalf of the PG&E Fire Victim Trust.

RESPONSE:

Case: 19-30088    Doc# 12440    Filed: 05/23/22    Entered: 05/23/22 10:18:48    Page 25 of 26

7. All contracts and agreements produced and/or executed by Trust Representatives that supported the activities of the "Trust Disbursement Agent" on behalf of the PG&E Fire Victim Trust.

RESPONSE:

8. All contracts and agreements produced and/or executed by Trust Representatives that were with any members of Trust Oversight Committee or with their associated firms and organizations.

RESPONSE:

9. All contracts and agreements produced and/or executed by Trust Representatives with Pacific Gas and Electric Company or investors in Pacific Gas and Electric Company.

RESPONSE:

Submitted by,

*/s/ William B. Abrams*

William B. Abrams
Pro Se Claimant