1       UNITED STATES BANKRUPTCY COURT

2       NORTHERN DISTRICT OF CALIFORNIA

3                  -oOo-

4    In Re:                        ) Case No. 19-30088
                                   ) Chapter 11
5    PG&E CORPORATION AND PACIFIC  )
     GAS AND ELECTRIC COMPANY,     ) San Francisco, California
6                                  ) Tuesday, June 7, 2022
              Reorganized Debtors. ) 10:00 AM
7    _____ )
                                     REORGANIZED DEBTORS'
8                                    FIFTEENTH SECURITIES CLAIMS
                                     OMNIBUS OBJECTION (SECURITIES
9                                    ACQUIRED OUTSIDE SUBJECT
                                     PERIOD) FILED BY PG&E
10                                   CORPORATION [11343]

11                                   PRE-TRIAL CONFERENCE RE
                                     OBJECTIONS TO CLAIMS OF TODD
12                                   GREENBERG, FORTIETH OMNIBUS
                                     OBJECTION TO CLAIMS (DKT NO.
13                                   9455), AND ONE HUNDRED TENTH
                                     OMNIBUS OBJECTION TO CLAIM
14                                   (DKT NO. 11420)

15                                   MOTION OF WILLIAM B. ABRAMS
                                     PURSUANT TO FEDERAL RULE OF
16                                   BANKRUPTCY PROCEDURE 2004 FOR
                                     ENTRY OF AN ORDER AUTHORIZING
17                                   DISCOVERY AND HEARINGS
                                     REGARDING THE ADMINISTRATION
18                                   OF THE FIRE VICTIM TRUST
                                     FILED BY WILLIAM ABRAMS
19                                   [12440]

20              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DENNIS MONTALI
21            UNITED STATES BANKRUPTCY JUDGE

22   APPEARANCES (All present by video or telephone):
     For the Reorganized          DAVID HILL, ESQ.
23   Debtors:                     Weil, Gotshal & Manges LLP
                                  767 Fifth Avenue
24                                New York, NY 10153
                                  (212)310-8000

25

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1   For the Reorganized        JENNIFER L. DODGE, ESQ.
     Debtors:                   Law Offices of Jennifer L. Dodge
 2                              Inc.
                                2512 Artesia Boulevard
 3                              Suite 300D
                                Redondo Beach, CA 90278
 4                              (310)372-3344

 5                              THOMAS B. RUPP, ESQ.
                                Keller Benvenutti Kim LLP
 6                              650 California Street
                                Suite 1900
 7                              San Francisco, CA 94108
                                (415)636-9015
 8
     For Todd Greenberg:        RICHARD A. LAPPING, ESQ.
 9                              Trodella & Lapping LLP
                                540 Pacific Avenue
10                              San Francisco, CA 94133
                                (415)399-1015
11
     For John Trotter (Ret.)    DAVID J. MOLTON, ESQ.
12   for Fire Victim Trust:     Brown Rudnick LLP
                                Seven Times Square
13                              New York, NY 10036
                                (212) 209-4800
14
     Also Present:              William B. Abrams
15                              Movant and Individual Claimant

16                              Richard Lane
                                Individual Claimant
17

18   Court Recorder:            LORENA PARADA
                                United States Bankruptcy Court
19                              450 Golden Gate Avenue
                                San Francisco, CA 94102
20

21   Transcriber:              HANA COPPERMAN
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (973)406-2250
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

eScribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   SAN FRANCISCO, CALIFORNIA, TUESDAY, JUNE 7, 2022, 10:00 AM

2                              -oOo-

3      (Call to order of the Court.)

4          THE CLERK:  Calling the matter of PG&E Corporation.

5   And I will bring in Mr. Hill now.

6          MR. HILL:  Good morning, Your Honor.

7          THE COURT:  Mr. Hill, you're appearing for whom?

8          MR. HILL:  Good morning, Your Honor.  David Hill,

9   Weil, Gotshal & Manges, on behalf of the reorganized debtors.

10         THE COURT:  Okay.  So Mr. Hill, do we –

11         Ms. Parada, has Mr. Oliveros or Ms. Oliveros shown up

12  in the courtroom?

13         THE CLERK:  I do not see Mr. or Mrs. Oliveros in the

14  attend --

15         THE COURT:  All right.

16         THE CLERK:  -- waiting room.

17         THE COURT:  Mr. or Mrs. Oliveros, this is the time

18  we've set for hearing on the objection to your claim that Mr.

19  Hill is prosecuting for the company.  If you wish to be heard,

20  and you want to make comments to the Court, you need to raise

21  your hand on the screen, and we'll bring you into the virtual

22  courtroom.

23         Mr. Hill, while we're waiting to see if they're there,

24  have you heard recently from Mr. or Mrs. Oliveros?

25         MR. HILL:  Your Honor, we haven't; though we did send

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  last Thursday by mail and overnight FedEx hearing instructions

2  on how to dial in to this hearing, as well as the notice and a

3  copy of -- our courtesy copy as well as our reply. According

4  to the FedEx tracking information, it was delivered on

5  Saturday. We have not heard from them.

6  THE COURT: Ms. Parada, I don't see – oh, I do see a

7  hand up for Mr. Serepian (phonetic), but I believe he's

8  appearing on Mr. Abrams' matter.

9  THE CLERK: That's correct, Your Honor.

10  THE COURT: So Mr. Serepian, please put your hand down

11  unless you expect to be heard on the Oliveros matter. We'll

12  call you in a moment.

13  Okay. Mr. Hill, I've reviewed the papers, and you've

14  made a persuasive argument that Mr. and Mrs. Oliveros simply

15  don't have a basis for asserting a claim based upon the

16  category of claimants who have allegedly been defrauded during

17  the approximately three years prior to the bankruptcy. And

18  their claim, as you've established, is an equity interest that

19  goes back decades, and they have not shown any indications to

20  the contrary. So I'm prepared to sustain the debtors'

21  objection and disallow. Actually, it's disallowing the claim,

22  because it's based upon a proof of interest and not an

23  actionable claim. Is that consistent with your understanding?

24  MR. HILL: Yes, Your Honor. I don't think I'll object

25  to your sustaining or expunging.

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT: Okay. Then go ahead and please serve Mr.

2   and Mrs. Oliveros with a form of the order that sustains the

3   objection and disallows it as a claim.

4    MR. HILL: We will do so, Your Honor. Thank you.

5    THE COURT: Okay. Thank you very much.

6    We're now going to take the Greenberg matter. And

7   then for those of you waiting in the court, we'll conclude with

8   Mr. Abrams' matter, but not until we deal with another matter

9   first.

10    Ms. Dodge, would you check in, and turn on your camera

11   and your mic, and make your appearance?

12    And Mr. Rupp.

13    MR. RUPP: Good morning, Your Honor. Thomas Rupp of

14   Keller Benvenutti Kim for the reorganized debtors.

15    MS. DODGE: Good morning, Your Honor. Jennifer Dodge

16   on behalf of the reorganized debtors.

17    THE COURT: Well, I was going to ask you if you knew

18   where Mr. Lapping was, but now I see him.

19    MR. LAPPING: Good morning, Your Honor. Richard

20   Lapping on behalf of Todd Greenberg.

21    THE COURT: So we had set this pre-trial, essentially,

22   some time ago, and things have happened; obviously, as you

23   know, a lot. So if you simply assure me that your clients will

24   be prepped by each of you respectively before our trial at the

25   end of the month, so they'll know how to check in on video and

PG&E Corporation and Pacific Gas and Electric Company

1    check the connections and the sound. And unless there's

2    anything else, I don't need to deal with anything today.

3         Do either of you have anything we need to touch base

4    on?

5         MR. LAPPING: Yes.

6         THE COURT: Okay.

7         MR. LAPPING: Yes, Your Honor. And I will observe

8    that I did read your order very carefully, and so my client,

9    when he's testifying, will be downstairs in a conference room

10   by himself with no papers. And I think that's the rule, and

11   that works fine for us.

12         THE COURT: No. No. Hold on. He can have papers

13   that are exhibits. I mean, if he needs to refer to something,

14   if you're questioning him about something that's been marked

15   for exhibit, there's certainly no reason why he can't have

16   that.

17         MR. LAPPING: Okay. All right. Well, thank you, Your

18   Honor. Thanks for the clarification. It's my first time doing

19   one of these Zoom trials.

20         And also I talked to Ms. Dodge earlier this morning,

21   and I've had some stuff come up. And our pre-trial submissions

22   are supposed to be on Monday, June 13th, and she has agreed

23   with my proposal to have them due on Thursday, June 16th.

24   That's still more than a week before the trial.

25         THE COURT: Okay. No problem.

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MR. LAPPING:  Okay.

2      THE COURT:  No problem.  I mean, I'll read them before

3  the trial.  I promise.

4      THE COURT:  Okay.

5      MS. DODGE:  I have a couple.  Just two matters, Your

6  Honor.  One is that I'm not aware that Mr. Lapping has filed

7  the amended claims yet that were supposed to be filed pursuant

8  to the stipulation and order that was entered.

9      THE COURT:  You'll have to refresh me on that.  Mr.

10  Lapping, did you?

11      MR. LAPPING:  Your Honor, yeah.  I'm just behind on a

12  number of things, and so I will get them officially filed.  One

13  was granted and goes in, and the other one was done by

14  stipulation.  And Mr. Rupp sent me a nice detailed set of

15  instructions on how to do it, but I just haven't gotten it done

16  yet.  But I will do that this week.

17      THE COURT:  Okay.  But unless something else happens,

18  when we go to trial on I think it's the 27th, right?

19      MR. LAPPING:  Yes, Your Honor.

20      MS. DODGE:  Correct.

21      THE COURT:  It's a one-day trial, and it's only on Mr.

22  Greenberg's claim based upon the loss of power to his

23  refrigerator and all the things that followed from that, right?

24      MR. LAPPING:  Correct.

25      THE COURT:  And I have to make my usual plea to see if

PG&E Corporation and Pacific Gas and Electric Company

1    there's any interest in trying to get this case settled before

2    it goes to trial, but I'm sure you've considered that, and

3    maybe your clients will consider it again as June 27th looms.

4            Mr. Rupp, do you have anything to add?

5            MR. RUPP:  No, Your Honor.

6            THE COURT:  Okay.  Well, if you're able to settle, I

7    won't miss you on the 27th.  If you don't settle, I will look

8    forward to seeing you both and your clients, and we'll have the

9    trial.

10           UNIDENTIFIED SPEAKER:  Great.  Thank you very much,

11   Your Honor.

12           MS. DODGE: All right.  Thank you, Your Honor.

13           THE COURT:  Thank you.  Now, Ms. Parado, for the

14   matter involving Mr. Abrams, please bring Mr. Abrams into the

15   room and whoever has indicated as the counsel who's going to

16   appear for the trustee, and then I'm going to make up a brief

17   statement, and then we'll deal with other people who may want

18   to come in.  I see Mr. Molton has his hand up.

19           All right.  For the claimants, fire victims, and

20   others who have been following this, some people have filed,

21   essentially, a joinder to the request that Mr. Abrams filed,

22   and I'm not ignoring those requests.  We put a couple of them

23   on the docket as requested.  May not have gotten to all of

24   them.  But I want to make sure all of you understand.  I'm sure

25   Mr. Molton understands, and I hope Mr. Abrams understands.

PG&E Corporation and Pacific Gas and Electric Company

1          Mr. Abrams filed his papers on May 23rd, and he took

2    it upon himself when he filed those papers to set a possible

3    hearing on June 27th and response deadlines and what have you.

4    But I preempted him -- not to take away his rights to be heard

5    but to address the question of how I'm going to manage this

6    case.  And that's why, on May 23rd, I also issued the order

7    setting the preliminary hearing, and that is the hearing we're

8    having today.  And I specifically asked that the Fire Victim

9    trustee not file anything before the hearing, because I wanted

10   to -- because of the, sort of, the sweeping nature of Mr.

11   Abrams' request, I didn't want to have a volume of papers to

12   have to deal with on an expedited basis.  I was more

13   comfortable with giving the fire trustee and whatever counsel

14   who chose to come forth to speak for the trustee to give me a

15   heads up as to how the trustee, their client, wishes to proceed

16   with what Mr. Abrams has asked for.

17          And so for the benefit of everyone in the audience who

18   wanted to be heard today, I don't mean to be rude.  I may allow

19   brief appearances.  But there's nothing for me to decide today.

20   And for you to argue -- those of you that support Mr. Abrams

21   and believe that the fire trustee should be called upon to

22   produce information or provide documents or do whatever, that

23   those are noted, but I'm simply not going to act on them.  I'm

24   not going to grant them or deny them.

25          So that's just a brief statement.  Again, it's not

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   that I don't care about your interests.  It's that I care about

2   the process.  And I mean no criticism of Mr. Abrams for the

3   manner in which he set forth his position.  He did it quite

4   admirably.  But I need to have the fire trustee be heard on the

5   procedure first.

6          So with that, Mr. Molton, if you would state your name

7   for the record, which I know anyway, and then, in response to

8   my order, tell me how you intend to proceed in response to Mr.

9   Abrams' requests.

10          MR. MOLTON:  Thank you, Judge.  Your Honor, can you

11  hear me?  That's the first question I ask on all these Zoom.

12          THE COURT:  Yes, I can.

13          MR. MOLTON:  Thanks.

14          THE COURT:  Can you hear me?

15          MR. MOLTON:  Loud and clear, Your Honor.  David Molton

16  of Brown Rudnick, as you know, Your Honor, for the Fire Victim

17  Trust and the Honorable John Trotter, retired in his capacity

18  as Fire Victim trustee.

19          Your Honor, I would agree with you that Mr. Abrams'

20  package was expansive, clearly.  And I read Your Honor's order

21  and Your Honor's directive this morning that Your Honor does

22  not want us getting into merits or discussion of merits today.

23  So put it this way.  Over the past week, Your Honor, the Fire

24  Victim Trust held a number of meet and confers -- three meet

25  and confers, I believe -- Mr. Abrams will tell me if I'm

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   wrong -- with Mr. Abrams in an attempt to seek if we can avoid

2   having Your Honor deal with this issue and receive a package of

3   papers and hear argument.

4          Our view on this, as usual, Your Honor, and of course

5   is going to be informed by our constitutional documents, which

6   is the plan, the confirmation order, and the trust agreement

7   that was approved by Your Honor two years ago almost.

8          In any event, Your Honor, to the extent, and because

9   we're not able to resolve this, my suggestion, Judge, is that

10  we have two weeks to put in a response.  That would be the

11  21st.  Needless to say, Mr. Abrams should have time to reply,

12  if Your Honor so consents.  And then we put this on for hearing

13  some time, I would say, Judge, after the 4th of July holiday.

14         It's our hope, Your Honor -- we have forward-looking

15  disclosures that go out on a daily basis on our website and

16  intermittently on the website and otherwise (sic).  And I just

17  urge Mr. Abrams and everybody else interested to watch and pay

18  attention and see if their issues aren't necessarily answered

19  or in some way ameliorated.

20         THE COURT:  Wait.  Just expand on that.  I mean, I

21  don't monitor the trustee's website.  What is it that he or

22  others might be seeing posted?

23         MR. MOLTON:  Judge, we have -- at firevictimtrust.com

24  I think it is -- we have a website that we provide to the

25  public.  It's forward facing and public facing, and in it every

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   month we give updates as to the claims administration, and

2   claims administration, as Your Honor knows, is what this trust

3   is about; what it should be about, and what it is about.  And

4   we give updated information as to the amount of determination

5   notices that are given, as to the total amount of value in

6   those determination notices, the total preliminary and pro rate

7   of payments, et cetera, et cetera, et cetera.

8           We also intermittently post on that website -- and I

9   would urge everybody who's listening -- in connection with the

10  annual report that was filed in late April, Your Honor, we did

11  post a notice to fire victims that explains a little bit about

12  that annual report, and that is on our website, as well as

13  giving fire victims information as to whatever monetization of

14  the illiquid assets that were given as consideration to the

15  Fire Victim Trust that have occurred, as well as, Your Honor,

16  other information such as what the pro rata payment percentage

17  is.  And this year it was increased, Your Honor, from thirty to

18  forty-five percent.

19          I do want to say, Judge, we are really proud that at

20  the present time we have a number of determinations of 29,000,

21  almost 30,000, claims determined, and the number of claimants

22  associated with those claims is about 43,000 -- that's about

23  sixty-six percent of our pool -- for a total amount of

24  determination in the range of 9.53 billion dollars.  Of course,

25  Your Honor, how that gets paid is dependent on the payment

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    percentage.

2          THE COURT:  Let me interrupt you, though.  Those are

3    helpful, but they aren't the things that Mr. Abrams focused on.

4    If you zero in on his papers, and one page of paper from the

5    trustee, page 22 of 25 in document 12287, it's the seven lines

6    of supplementary schedules of operating expenses.  And I think

7    Mr. Abrams has asked for details on that.  And of course, he's

8    asked for information about the state of the lobbying efforts.

9    And that's, of course, not an accounting issue.

10          And so you've got to -- again, I'm not asking you to

11   roll over if you think he's off base, but it certainly has to

12   be on your to-do list in terms of your response.  I don't need

13   a response in two weeks that tells me the kind of stuff you

14   just told me, because that's already there public.  But I have

15   to say, Mr. Abrams makes a point that there's substantial

16   numbers in those seven lines, and there's not a whole lot of

17   detail.

18          MR. MOLTON:  Judge, you know, again, Your Honor, our

19   view is informed by the trust documents.  We'll deal with that.

20   I do want to say that some of the information that Mr. Abrams

21   seeks as to what the trust is doing on those other issues is

22   the subject of public disclosure.  And needless to say, there

23   may be further status reports that go into that.

24          I do want to say, Your Honor, that we have, as Your

25   Honor knows, a trust advisory committee that is responsible for

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the administration of the estate or oversight of the

2    administration of the estate, that has the ability to meet and

3    confer with the trustee, that has consent rights over budget.

4    And to a large extent, what Mr. Abrams is looking for, Your

5    Honor, has to do with those issues of trust administration.

6         The trust agreement, Your Honor, Section 2.2(g)

7    basically provides our operating mandate, which is the trustee

8    shall provide information on the trust website as he deems

9    prudent in his or her sole discretion.  The trustee has no

10   obligation to provide, and beneficial owners have no right to

11   receive, information regarding the operation of the trust

12   except as provided in Section 2.2(c) above.

13        And as Your Honor knows, Section 2.2(c) requires us to

14   file the annual report.  We filed that.  It contains a special

15   purpose statement submitted by independent auditing firm BDO

16   that contains an opinion as to fairness in all material

17   respects of the special purpose financial statement.

18        We believe, Your Honor, that to the extent that Mr.

19   Abrams is seeking really justification, explanation of strategy

20   and tactics and the trust's activities in that regard, it's

21   beyond the scope of the trust agreements.

22        We do have, as I mentioned, Your Honor, a TOC, which

23   under 6.1 of our trust agreement represents the interests of

24   all holders of their fire victim claims in the administration

25   of the trust.  Section 6.2 invites upon them a fiduciary duty

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   in representing those interests in the administration of the

2   trust.  Again, there's all sorts of confer and consent rights

3   that they have in connection therewith, and much of what Mr.

4   Abrams deals with really revolves around that.

5          I do know, Judge, Mr. Abrams is no stranger to this

6   Court.  He's no stranger to the trust.  We deal with him.  I've

7   dealt with Mr. Abrams with an open line on a monthly basis

8   almost since you first saw me, Your Honor.  And I know he's

9   been in front of Your Honor at least twenty-seven times on

10  objections or motions.  I do want to know --

11         THE COURT:  Who's counting, right?

12         MR. MOLTON:  Who's counting?

13         THE COURT:  I haven't been counting.

14         MR. MOLTON:  One of the things I do want to note,

15  because it's important in light of what Your Honor said and the

16  issue Your Honor raised.  Since, Your Honor, the effective date

17  of the plan and the creation of the trust two years ago, this

18  is the fifth time Mr. Abrams was in front of you.  The four

19  times before, Judge, had to do with his efforts to reconstitute

20  or replace the TOC.

21         THE COURT:  But that's history.

22         MR. MOLTON:  Yeah.  But I'm saying, Judge, what we're

23  looking at here is an effort, having not necessarily been

24  successful in that, an effort on his part to actually place

25  himself almost as a TOC member in terms of supervision or

PG&E Corporation and Pacific Gas and Electric Company

1    oversight of the trust in his --

2           THE COURT:  Mr. Molton, if this were a garden variety

3    simple Chapter 7, and a trustee was filing in an interim

4    report, would a creditor have the right to ask for more detail

5    on a line item that is in millions of dollars?  Wouldn't a

6    creditor have a right to ask for a little more detail?

7           MR. MOLTON:  Yes.  I

8           THE COURT:  Within reason.  Within reason.

9           MR. MOLTON:  Of course, Your Honor.  But I don't think

10   that's what Mr. Abrams requests.  Or if you actually look at

11   them, as I mentioned before, he's asking not only for those

12   line items, but he's going behind a justification, explanation.

13   And then he's asking for something that's -- from my

14   perspective, doing this, Your Honor, for a living as part of my

15   practice -- something remarkable, the actual posting of all of

16   the trust's contracts, which, again, is something that is

17   beyond what Your Honor said.

18           So we're looking forward to -- we're going to continue

19   to talk to Mr. Abrams, Your Honor.  It may be that we'll be

20   able to, if Your Honor accepts the schedule I proposed,

21   perhaps, as Your Honor said, with respect to the last matter

22   that was in front of you, maybe we won't appear.  My hope is

23   we'll be able to resolve this.  But notwithstanding that,

24   Judge, Mr. Abrams is one of 70,000 claimants that we have to

25   deal with.  And clearly the requests that he made are not

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   limited to what you've indicated.

2           THE COURT:  Okay.  So again, Mr. Molton, to interrupt

3   you for a minute, and then I want to --

4           MR. MOLTON:  Yes.

5           THE COURT:  -- let Mr. Abrams speak.  Your response

6   will flesh out why you think, as a matter of law, Mr. Abrams

7   shouldn't have as much as he seeks.  And again, I'm asking you,

8   don't go back and say the same thing over that everybody knows

9   about it, and it isn't what he's complaining about.

10          MR. MOLTON:  Right.

11          THE COURT:  I don't think Mr. Abrams is asking for the

12  detail of any particular claimant or any particular

13  determination.  What I glean is he, perhaps, broadly, painting

14  with a broad brush -- I'm using my metaphors here -- he's

15  asking for more information about these items, plus this

16  lobbying activity, which perhaps is a bit to the extraneous,

17  but it's still a question that he is asking.

18          So if you're telling me that you'll be in a position

19  to respond to the legal argument, in other words, why he

20  shouldn't be allowed to do this, I mean, I understand that

21  perhaps the notion of a very, very broad request for

22  production, as broad as you might ever see in any kind of

23  litigation, that's the kind of thing that people meet and

24  confer and narrow.  And similarly turning the trustee loose in

25  a town hall meeting in front of any creditor who wants to ask

PG&E Corporation and Pacific Gas and Electric Company

1   him, I'm not sure I'm prepared for that either.

2          But that being said, I don't want to mislead you.  I'm

3   not going to rule out, perhaps, the possibility that the

4   trustee is going to have to sit and be asked questions by Mr.

5   Abrams or otherwise.  But I'll defer to that, and I'll wait and

6   see what kind of a response you file.

7          And again, having said that I didn't want you to

8   address the merits, I have to be faithful to my commitment here

9   and say you don't have to right now.  And if you can do it all

10  in two weeks, that's fine.  I'll come back to you in a minute.

11         Mr. Abrams, nice to see you again.  I didn't count

12  your number of visits to the court.  I haven't seen you in a

13  long time, so welcome back.  Are you agreeable to what Mr.

14  Molton suggested, a procedure?

15         MR. ABRAMS:  Thank you, Your Honor.  Good to see you.

16  No, I'm not in agreement with Mr. Molton's revised dates or his

17  approach.  And one of the things that leads me to that is that

18  these recent meetings were not the first that I've met with

19  trustee counsel.  And I met with trustee counsel prior to

20  filing the motion, looking for them to willingly provide these

21  remedies and things like it and provide information to victims.

22  And at every turn, that information was not provided.  So

23  that's what prompted that.  So to put this off further, I

24  think, is a delay that we really can't afford.  Given the

25  amount of information in the claims processing, the lobbying

(973) 406-2250 | operations@escribers.net | www.escribers.net

1          PG&E Corporation and Pacific Gas and Electric Company activities are still ongoing on those issues.

2          THE COURT: Well, Mr. Abrams, why don't you narrow the

3 request then? In other words, you have such a broad request.

4 I mean, you want this extremely broad. I don't even know how

5 you, as one person, could possibly process it all. So why not

6 narrow your request? If you want to know specifically about

7 the lobbying, maybe Mr. Molton will accommodate you. Maybe he

8 won't.

9          But the thing that I had trouble with -- not that you

10 didn't. You did your homework. And like a good lawyer, you

11 cited something that I've used. And you cited that what the

12 trustee did to get information from the Adventist claimants.

13 And then I compliment you on being focused on that. But your

14 request is so broad, I don't know how anybody could make any

15 kind of a meaningful response, or how you, frankly, could

16 digest what a broad response would involve. And it's not

17 probative of what seems to be on your mind that you want

18 answers to. And I'm not going to preside over the world's most

19 extensive discovery request just to accommodate your curiosity

20 here.

21          So tell me what you - I mean, I'm not going to have

22 the hearing on the merits on the timetable you asked for,

23 because it's not fair to the trustee. And frankly, it's not

24 fair to you to be able to observe it all.

25          MR. ABRAMS: Yeah. And to, sort of, find common

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  ground on that timeline, Your Honor, I would say that there are

2  documents that are readily available by the trust and the

3  trustee.  I don't see any reason, as an example, why they

4  wouldn't just publish the contract with the lobbyist.  So why

5  should that --

6       THE COURT:  But Mr. Abrams, what does it solve?  What

7  is the purpose of doing so?

8       MR. ABRAMS:  You know, my read, Your Honor, of what is

9  required is that we need to evaluate the acts and conduct,

10  right?  And so this is not just the quantitative information.

11  This is the qualitative information about what the lobbyist has

12  been doing.  I have been engaged in some of these activities

13  and seen firsthand some of the activities and where and how

14  they've engaged and not engaged.

15       THE COURT:  But what is the role of the Court?  If I

16  order Mr. Molton or the trustee to provide contracts that have

17  existed between the trust and lobbyist, where does that get me?

18  What does it do to advance the cause of the administration of

19  the trust and frankly, to pay the fire victims?

20       MR. ABRAMS:  Sure.  So --

21       THE COURT:  Is there some law violated?

22       MR. ABRAMS:  Yeah.  So at least, you know, my read of

23  the trust agreement is that those expenses must be reasonable

24  and done in good faith.  And given what's transpired around

25  some of these different areas, I think it's right to question

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    those things.  And the amount of information that's been

2    provided would provide no basis for evaluating whether

3    something -- whether these acts have been reasonable or whether

4    these acts have been done in good faith.  And, you know,

5    therefore, we need that information to assess.  You know, I

6    certainly am not going to guess with zero information about,

7    you know, how this, you know, transpired other than my

8    firsthand experiences.  But I think that that's important to

9    come across.

10    And I would say that, you know, the reason why I cited

11    how PwC and Adventist have been treated by the Court is

12    because, you know, certainly, you know, the trust has asked for

13    a number of different documents from PwC, and in response to

14    that, there was no limitation put on them that this is not

15    acceptable.  In fact, if anything, it talks about how you can't

16    just say that this is a fishing expedition.  It provides broad

17    leeway in terms of --

18                THE COURT:  But Mr. Abrams.

19                MR. ABRAMS:  And what I --

20                THE COURT:  Mr. Abrams.  Let's not lose sight of the

21    fact that Adventist is a major creditor claimant, and the

22    trustee has to make sure its claims are proper.  And PwC is a

23    potential target of claims against it, and the trustee has to

24    determine whether there is a basis to assert claims against it.

25                You're in neither category.  You are a fire victim

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    claimant, whose, as far as I know, your claim is not in

2    dispute.  And I'm not aware of any dispute involving your

3    claim.  You simply want to know the details.  Who were you

4    paying the lobbyists for and why?  Well, that's one of those

5    things like why should I even inquire?  If the trustee had the

6    authority to hire the lobbyist, and the lobbyist was paid an

7    amount of money that the oversight committee has signed off on,

8    then, frankly, your inquiry is more of a nuisance than anything

9    else.  It not probative.

10           Now, if it turns out the trustee has been siphoning

11   seven figures to an offshore trust, which I doubt that's been

12   the case, I suspect that you have every right to inquire.  As

13   do I.  But that's not what we're talking about.  You simply

14   seem to have taken issue with and focusing specifically on this

15   issue of the lobbyist.  And I don't know what I'm supposed to

16   do about it.

17           MR. ABRAMS:  So Your Honor --

18           THE COURT:  -- do about it?

19           MR. ABRAMS:  So Your Honor, what I – I wouldn't say

20   that my -- what I put forward is broad or narrow.  I've just

21   put forward a process that has been used by the Court and by

22   the trust in the past to make sure it was manageable.  And I am

23   not putting bounds on this.  This is not for Will Abrams.  This

24   is for victims to be able to --

25           THE COURT:  Okay.  Okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. ABRAMS:  -- get answers.

2          THE COURT:  I'll accept that, Mr. Abrams.  I'll accept

3   that.  So let's assume that in your mind lobbyist A was paid

4   more than he should have been paid.  And for some other reason

5   lobbyist A has been terminated now, and the trust is employing

6   lobbyist B.  Well, what would you have me do about whatever was

7   paid to lobbyist A?

8          MR. ABRAMS:  So it's less about the number for me,

9   Your Honor.  If you're asking my opinion, again, this is not

10  about what I want.  But if that were to come back, I would say

11  it's a question of what the acts were of that lobbyist, because

12  what I have observed is that the lobbyists are trying to walk a

13  very fine tightrope in the way that they're lobbying on behalf

14  of victims.  They are both trying to get to our 13.5 billion,

15  but they're only trying to do that in a way to make sure that

16  light isn't shined upon other activities.

17         THE COURT:  Well, again, Mr. Abrams, that's your

18  theory, and I don't know if you're wrong or right.  But again,

19  what is the Court supposed to do if you don't agree with what

20  the trustee has done or what his chosen lobbyist has or hasn't

21  done?

22         MR. ABRAMS:  It - it --

23         THE COURT:  What's the -- what does -- therefore what,

24  from the bankruptcy court's point of view?

25         MR. ABRAMS:  So I think therefore what depends on the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    action.  So if in that report their actions are not in line

2    with what they should be lobbying form --

3           THE COURT:  Who makes that --

4           MR. ABRAMS:  And I think that there's --

5           THE COURT:  Who makes the decision of what they should

6    be lobbying for?  Isn't that the trustee's responsibility,

7    to --

8           MR. ABRAMS:  Yes.

9           THE COURT:  -- to hire a lobbyists?  First of all, we

10   can debate whether he should even hire a lobbyist.  But if he

11   has the right to hire lobbyists, and he hires lobbyists, then

12   how am I to second guess on what he chose to have that lobbyist

13   do?  He had the authority to hire the lobbyist.

14          Again if he hired the lobbyist to shelter money in a

15   Swiss bank account, that's an easy one.  If he hires a lobbyist

16   to go influence a legislative change, how can I second guess

17   him on that?

18          MR. ABRAMS:  Look, I think we're all, sort of,

19   guessing at what this is, which is the problem.  I think, you

20   know, look, they have fiduciary responsibilities.  You would

21   have to look at whether those fiduciary responsibilities --

22          THE COURT:  Who has?  The lobbyist has fiduciary

23   responsibilities?

24          MR. ABRAMS:  The lobbyist and the trust has --

25          THE COURT:  Why does the lobbyist have?  Why does the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    lobbyist have a fiduciary duty?

2        MR. ABRAMS:  The trust has fiduciary responsibilities

3    to victims.  If the lobbyist is acting on behalf of the trust,

4    then they should be also held to some of those standards.  If

5    they are acting in interests that are not in line with victims,

6    then that's a problem.  There are, you know, part of this is,

7    you know, it does say that these expenses need to be

8    reasonable.  It does need --

9        THE COURT:  Well, I don't know - you keep saying that.

10       MR. ABRAMS:  -- say that they're in good faith.

11       THE COURT:  Sorry.  You keep saying that.

12       MR. ABRAMS:  If it's not in good faith --

13       THE COURT:  Mr. Abrams, you keep saying that.  But how

14   am I, ultimately, if I'm supposed to make the call here, how do

15   I make a judgment call on whether Justice Trotter should have

16   hired Mr. A to go visit the legislature to get more money for

17   the Fire Victim Trust rather than do something else that the

18   lobbyist and the trustee thought was consistent with the goals

19   of the trust, but perhaps a different methodology.  I don't

20   have the skills or the knowledge, and I doubt that you do, to

21   know the right -- and there's no right or wrong, perhaps, as

22   long as it's lawful and permissible and approved by the

23   advisory committee.

24       MR. ABRAMS:  So Your Honor, I know bad faith when I

25   see it, and that's why these provisions are there.  I'm sure

PG&E Corporation and Pacific Gas and Electric Company

1   that if it's a question people, and it seems like that that is

2   done in bad faith, I'm sure I would make a case to Your Honor

3   that such and such actions were in bad faith.  And if others

4   felt that they weren't in bad faith, I'm sure they would argue

5   that point as well.  I'm not -- again, this is all guessing

6   based on what might be in that contract, without that contract,

7   without this information.

8            And again, this is sort of going well beyond.  I'm

9   setting a process.  So that's what I'm doing.  So it isn't for

10  any particular piece of information.  I want this open to

11  victims to be able to get the information that they want.

12           I have received -- I know Mr. Molton has received lots

13  of questions from victims about how the trust has been

14  administered, why these claims are processed and not those

15  claims.  How is this 1.5-billion-dollar loan that they're

16  seeking going to address the shortfall?  Lots of questions.

17           THE COURT:  But you --

18           MR. ABRAMS:  What happened.

19           THE COURT:  Mr. Abrams, in the last thirty seconds you

20  covered a very wide range.  You've gone from the lobbyists to

21  the 1.5 billion loan that doesn't exist to any particular

22  claimants' determination.  Those are three completely different

23  inquiries, and that's what makes your request difficult to

24  manage, because you've asked for so much that I can't imagine

25  anybody could possibly make an intelligent and focused response

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    to proper questions.

2            MR. ABRAMS:  So we're – so this is -- so I'm trying.

3    So help me understand the process, Your Honor, because what

4    I've seen in the past is first this is approved, as an example,

5    with PwC.  If PwC objects to discovery that's been issued, they

6    object, and they say, I don't think I should provide that

7    discovery.  But the process was set up first.  And it sounds

8    like we're having a discussion about what's many steps beyond

9    here, about when the request comes in, is it reasonable and

10   should be part of the discovery process?  And certainly I think

11   that the trustee should have the right to object to an inquiry

12   about a particular matter.  But we're not there yet.  And I

13   don't think the Court should presuppose that that question is

14   going to be out of bounds.

15            I would also say, you know, Mr. Molton, you know,

16   cited the fact that I've been in the court and had twenty-seven

17   objections.  And I just want to respond briefly, Your Honor.

18   If you go back and look at those objections that are filed with

19   the Court and look at the state that we're currently in, I

20   would say that those objections are very well-founded, Your

21   Honor.  So it's not as if those objections were off base or

22   somehow inconsistent with what the Court's processes and

23   procedures were.  And if anything, Your Honor, those objections

24   in the past should only substantiate my filing this motion now

25   and what this needs to be going forward.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Mr. Abrams, I didn't count, and I didn't

2  criticize you for filing the motion.  So you can make your

3  statement.  And I'll note it, but I you're talking to the wrong

4  person.  I haven't gone back and complained about what has

5  happened in the past.

6      MR. ABRAMS:  Right.  Mr. Molton brought it up, so I

7  felt compelled to respond, Your Honor.

8      THE COURT:  Yes.  Okay.  That's fair enough.  And I

9  understand your point, and I accept your suggestion that we

10  ought to let the trustee and his counsel respond to the

11  process.

12      But you said that you didn't approve of Mr. Molton's

13  suggestion of two weeks to respond.  What do you want me to

14  order to do?

15      MR. ABRAMS:  What I would like?  Again, I'm trying to

16  find middle ground.  I want to be able to work with the

17  trustee.

18      THE COURT:  Okay.  So what do you want me to do?  When

19  do you want the response?  He offered two weeks.  Not two

20  months or two years.

21      MR. ABRAMS:  So what I would say, Your Honor, is to

22  grant that two weeks.  I would ask that the trustee put on the

23  website the relevant contracts that are for the regulatory

24  engagements, that are for their lobbying engagements.  All of

25  the activities where there isn't any proprietary information or

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    things that are going to affect how they manage our stock

2    should be readily available.  It shouldn't be something that's

3    hidden from victims.  You know, this is why it's a trust, Your

4    Honor.  They should be able to readily produce those documents.

5    And quite frankly, Your Honor, their unwillingness to produce

6    very basic things like that only leads me and others to

7    question more what's in that contract that they are so

8    unwilling to produce it.

9        And again, it's you know, I think this is very

10   important.  So I would just ask, Your Honor, that, you know,

11   again, I've been asking well before I filed the motion that if

12   we provide this extension of two weeks, that the trust puts

13   documents that they have readily available on the website, that

14   it has that information, unless it has proprietary information

15   and unless it affects their dealings with the stock.

16        THE COURT:  Okay.  And so suppose something is filed

17   in two weeks.  Are you prepared to respond in some similar

18   fashion?

19        MR. ABRAMS:  Well, with my, you know, my deep bench

20   here of staff, I will do my best, Your Honor, as I tried to do

21   in the past.

22        THE COURT:  Mr. Abrams, just tell me how much time you

23   would like to anticipate.  You have a much better sense than I

24   do of what you're likely to get.  And maybe you won't get

25   anywhere near what you expect, but maybe you will, so if I'm

PG&E Corporation and Pacific Gas and Electric Company

1   going to take Mr. Molton's offer to respond -- notice, I didn't

2   order and I'm not going to order him what to put out.

3          I said respond, and he might respond with 5,000

4   documents on the website, or he might respond with a fifteen-

5   page brief saying under the law here's why I don't have to

6   produce any of this.  And that's something he will have to

7   decide with his client.  I'm not going to order it in advance.

8          And I'm trying to go back.  And again, I accept your

9   suggestion that we have to let the system play out.  And I

10  stand reminded of that, so that's what I'm going to do.  But in

11  fairness to him, if he's committing to a two-week response, you

12  have to have some time to respond, but some reasonable time.

13         And I haven't been guilty of refusing further

14  extensions when they're asked for by either side.  What if I

15  say you'll have two weeks to respond after that, unless you ask

16  for more time, and if the trustee's counsel agrees to more time

17  from that then you'll get it.  I won't stand in your way.  That

18  work, or do you want more time to begin with?

19         MR. ABRAMS:  Yeah, quite honestly --

20         THE COURT:  You want three -- you want four weeks?

21  You want four weeks to respond?

22         MR. ABRAMS:  No, to me, Your Honor, really time's of

23  the essence on a lot of these matters.

24         THE COURT:  Oh, you've missed --

25         MR. ABRAMS:  -- for less time.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  Mr. Abrams, you say time is the essence,

2   and I agree with you for people that are trying to get paid.

3   They'd like to get paid sooner rather than later.  But I don't

4   sense that anything that we're talking about is going to put

5   one dollar in one fire victim's pocket sooner.  I believe it's

6   going to provide information if you have -- if you're right,

7   but I don't know how any particular claimant is going to get

8   one penny sooner rather than later.

9        In fact, it might be the reverse because of the burden

10  on at least some portions of the trustee's staff to deal with

11  this request rather than something else.  But I'll assume that

12  there are professionals dealing with lots of things.  But how

13  do you think getting this information will speed up the payment

14  process for the fire claimants?

15       MR. ABRAMS:  I hope, Your Honor, that this will

16  provide a change in course.  I hope, Your Honor, that what

17  this --

18       THE COURT:  Well, wait.  Say that again.

19       MR. ABRAMS:  I hope, Your Honor, that this will

20  provide a change in course to how the trust has been acting,

21  and the way that they've been prioritizing certain things.  And

22  I hope that this will put money in victims' pockets sooner.

23       THE COURT:  Do you have any reason to believe to

24  support a notion that somehow the trustee is slowing down the

25  payment process?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. ABRAMS:  Yes, Your Honor.  I think that partly

2    what I've been trying to get across to the trust is the fact

3    that their engagement in how they're doing PR, how they're

4    engaging in the regulatory space, how they're engaging in

5    lobbying efforts to try to fund, which the trustee has stated

6    is part of the reason for some of the delays is to try to fund

7    the trust -- has been hampered, has been impeded.  And I

8    think --

9    THE COURT:  Well, a lot of time (indiscernible) is

10   from my role in this case to have nothing to do with funding

11   the trust other than the payments that were made.  In other

12   words, the plan that I approved, the debtor has paid everything

13   in that it was supposed to put in.  Now, you can take issue,

14   and I don't disagree with the disappointment that may follow

15   from the stock value, but the company put in everything it was

16   supposed to put in.

17   So if there are others, and I suspect the trustee is

18   one of them, that thought there was an opportunity to get some

19   more value either from expediting third-party claims or

20   prevailing upon the legislative bodies or other sources to put

21   in more money, those are fine and those are good goals.  But I

22   don't know how the claims administration is improved by the

23   kinds of things you want the trustee to do now.  To me, it's

24   just completely disconnected there.

25   MR. ABRAMS:  I'm just trying to again read from the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    little information that's been provided by the trustee.  The

2    trustee recently stated that if the trust was funded, and we

3    understood what that amount was, that all victims would be paid

4    by the end of the year.

5            THE COURT:  But Mr. Abrams --

6            MR. ABRAMS:  And Mr. Molton can correct me if I'm

7    wrong but --

8            THE COURT:  Mr. Abrams, that -- Mr. Abrams, that has

9    to do with efforts, as I understand it -- again, I don't look

10   at the website.  I read what's filed and not a whole lot else.

11   And I don't know what the trustee or other parties are doing to

12   try to supplement the fund from sources that weren't

13   contemplated by the plan.

14          I'll repeat again from my point of view the plan I

15   confirmed had money, cash, value in stock, and third-party

16   claims against vendors and others.  Those were the three

17   categories of things.

18          MR. ABRAMS:  Right.

19          THE COURT:  I don't believe I'm overlooking any big

20   category.  And if Justice Trotter or other parties said let's

21   go get some more money by legislative means, and let's

22   facilitate something else, that's a good result for fire

23   claimants.  But it's not something that I know what I'm

24   supposed to do.

25          Why don't you tell me that I should tell the trustee

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    to go buy a lottery ticket because, if he wins the winning

2    lottery ticket, he might get a lot more money for the claimants

3    too.  That's ridiculous, of course.  But I can't second guess

4    what the trustee believes is the right way to persuade the

5    legislature to put -- to facilitate more cash coming in sooner

6    rather than later.

7         MR. ABRAMS:  But the trust agreement says that

8    whatever those expense -- this is our money, the trust's money

9    being spent on these activities.  And it says that those

10   expenses need to be reasonable and need to be in good faith.

11   And I have --

12        THE COURT:  But sorry, you keep --

13        MR. ABRAMS:  Your Honor, if I can.

14        THE COURT:  -- repeating that.  You keep repeating

15   that, and all I'm asking you again to say is how does that

16   speed up the recovery for a claimant?

17        MR. ABRAMS:  Because I believe, Your Honor, that if a

18   expense activity related to those things was shown to be not

19   reasonable that the trust would change course and start doing

20   reasonable things to get to our 13.5 billion, and to pay

21   victims sooner.  So I think it is important that we point out

22   what is reasonable and what is not associated with their

23   actions.

24        And as I said, Your Honor, and I'm trying not to argue

25   my case now -- I have first-hand experience in some of these

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   matters and some of their engagements in terms of lobbying, in

2   terms of regulatory. And I think that I have a case to be

3   made. But it's important that the money that they spend on

4   activities to go fund our trust is reasonable.

5          It shouldn't be a go spend our money on -- and I don't

6   think -- and I hope that this isn't what is shown. But I  hope

7   that they are being spent on reasonable things, and it isn't

8   just a wait, here's a great contract for these group of

9   attorneys to go off and make money for the next six months.

10  And I hope that's not the case, Your Honor.

11         I hope when they produce the contracts associated with

12  these engagements that it'll be very clear that these actions

13  are reasonable. But I think that's an important question to

14  ask, particularly because of the recent things that have

15  occurred around lobbying activities because of how they are

16  seeking this 1.5 billion loan without any terms being

17  disclosed.

18         It's important to ask. It's important to ask are

19  these actions reasonable. And if they're not, the trust should

20  change course.

21         THE COURT: Okay. Mr. Molton, I'm not sure how I'm

22  supposed to deal with what Mr. Abrams is trying to accomplish

23  here, but let's stick with your response. And I presume your

24  response will deal with what you think is appropriate, or you

25  and the trustee think is an appropriate way for me to deal with

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    this request.  I'll start with where I -- I'll repeat what I

2    began with.

3           Mr. Abrams made a request.  I had some problems with

4    the breadth of it, but not the concept of it.  And now we seem

5    to be bogged down on where it gets, and where I kept hearing

6    him say again it seems to come back to his view that there

7    should be a different effort at the lobbying level or a

8    different way to help get some more money in.  And that to me

9    is a slightly different inquiry, but are you prepared to deal

10   with those and all of that in the next couple of weeks as

11   you've proposed?

12          MR. MOLTON:  Judge, yes.  We'd like two weeks to

13   respond.  And Mr. Abrams can have what other -- whatever other

14   time he needs to reply and put this on for a convenient date.

15   Needless to say, Judge, we're listening very carefully to this.

16   We've listened very carefully to Mr. Abrams.

17          You heard me say earlier that we're guided by our

18   constitutional documents, which will guide our response, which

19   Your Honor will have in two weeks.

20          THE COURT:  Right.

21          MR. MOLTON:  So that's how I'd tee it up, Your Honor.

22          THE COURT:  Okay.  All right.  Here's what I'm going

23   to do.  I said at the start I would see if anyone wishes to be

24   heard, but I'm not going to turn this into another argument.

25   So I'll just say in advance to anyone else who wants to be

PG&E Corporation and Pacific Gas and Electric Company

1    heard you can do a me too, you can say something briefly, but

2    I'm not going to start all over again with the whole argument.

3         Mr. Abrams said it well.  Mr. Molton in my mind has

4    said it well from his point of view.  So I'm going to take

5    today is June 7th.  Two weeks from today is by my count June

6    21.

7         And I'm going to say, Mr. Abrams -- I'm going to give

8    you four weeks to respond after that.  And if you respond

9    earlier, that's fine.  I'm not going to set a hearing at this

10   point.  I'm going to look at that June 21st filing by the

11   trustee, and I'll look at what you file, Mr. Abrams, whether it

12   be four weeks or less than four weeks.

13        And I'll repeat -- and I'll repeat to Mr. Molton.  If

14   after this tiering either side needs more time, I'll be

15   accommodating.  Again, I'm not making light of the two-and-a-

16   half years or, for the 2015 fire victims, seven victims since

17   some victims haven't been paid.  And that's tragic and

18   horrible.

19        And Mr. Abrams, I know the year you suffered your

20   loss, and I know what happened in 2018.  And those are all

21   facts that simply are there and haunt all of us.  But I'm not

22   going to shortchange the process here for either side.  And if

23   the trustee needs more time, he can have it.  And if you need

24   more time, Mr. Abrams, you'll have it.

25        When both sides have submitted their papers, I will

PG&E Corporation and Pacific Gas and Electric Company

1  review them.  And I'll make a decision whether to set a

2  hearing, whether to issue a ruling, what to do.  I'm simply not

3  going to lock myself into that at this point.

4        So Mr. Abrams, for some reason you have your hand up,

5  but I've been talking to you, so did you -- do you know why

6  your hand is up?

7        MR. ABRAMS:  Sorry, Your Honor.  I forgot to hit the

8  button.  But --

9        THE COURT:  Okay.  There is Mr. Lane has his hand up.

10  Ms. Parada, would you bring Mr. Lane in please?

11        Mr. Lane, if you're -- well, you're not coming in yet,

12  I guess.  Okay, Mr. Lane, if you'd turn on your camera and your

13  microphone and state your name, I'll let you make a brief

14  statement.  Mr. Lane, are you there?

15        MR. LANE:  Now, I'm there.

16        THE COURT:  All right, just state your name, sir.

17        MR. LANE:  Okay, Richard Lane.  I'm a Tubbs fire

18  survivor and a claimant in the Fire Victims Trust.  I want to

19  thank you, Justice Montali, and you, Mr. Molton for taking your

20  time and listening to Will's motion.  I am number 1B on the

21  agenda.  I posted that I support Will's request for the

22  hearing.

23        And it's very easy to get lost in the weeds on

24  everything that fire victims are looking for.  I myself have a

25  list of seven things that are weed-like.  Why don't we know

PG&E Corporation and Pacific Gas and Electric Company

1  this?  Why don't we get that information.

2       I work a lot with the fire victims in Facebook

3  managing social media of the information that's presented by

4  the trust and spread amongst the fire victims.  The group that

5  I belong to has over 5,000 members of 70,000 claimants.

6       The thing that I hear the most is transparency.  Why

7  don't we know this, how do we get this, how come we can't get

8  this information?  And that is the core, and the crux of Will's

9  motion is we need more information.  The greatest fear amongst

10 the claimants in the Fire Victim Trust is that this will drag

11 on.

12      And so when you've got -- when you started discussing,

13 Your Honor, with Will, it was like how do you feel about Mr.

14 Molton's time line for response.  And Will said I don't like

15 it.  It's too long.  And I will tell you on behalf of the

16 claimants in the trust anything that slows this process down

17 just elongates the pain and suffering of this process.  So --

18      THE COURT:  Okay, Mr. Lane, I got the message.  And I

19 told you I'd have a brief statement, and you support Mr.

20 Abrams.  And your filing supports his position.  And so noted,

21 but you don't get to add seven more things that you haven't put

22 in anything already in the papers.

23      So if Mr. Abrams has his way and gets a portion of

24 what he's looking for, then hopefully you too will be a

25 beneficiary.  But for that I'm not going to take any further

PG&E Corporation and Pacific Gas and Electric Company

1    argument at this point.

2         MR. LANE:  No, I was just bringing up the time line.

3    That's all.  The sooner the better.

4         THE COURT:  I appreciate your participation.

5         Does anyone else in the court wish to be heard this

6    morning?  Raise your hand.  All right, I don't see any hands

7    up.

8         Mr. Molton, Mr. Abrams, thank you for your argument.

9    I will look forward to the trustee's filing in two weeks.

10        Mr. Molton, I don't know if you're going to file a 25-

11   page brief or a 2,500-page document.  But be ready if I need

12   you to provide hard copies to the courtroom deputy.  I'll wait

13   and see what you do when you file.  Don't send stuff to me.

14   And one thing I absolutely don't need is copies of the very

15   same things I already have like the trust documents.  So be

16   efficient about that.

17        If there is an end -- let me add further, you and your

18   client will decide whether you're going to take Mr. Abrams'

19   request and post things on the fire victims website.  If you do

20   that, then do it.  And just tell me that you've done it.  In

21   other words, a simple addendum to your brief that says the

22   following documents have been posted on the website per Mr.

23   Abrams' request.

24        Now, if the answer is none, I haven't posted any, then

25   you better explain why.  If you post some, just have a list.

PG&E Corporation and Pacific Gas and Electric Company

1   And I'll look at them like anybody else if I need to.  Okay?

2          MR. MOLTON:  Appreciate it, Judge.

3          THE COURT:  Okay.

4          MR. MOLTON:  Good seeing you again.

5          THE COURT:  I'm sorry.  Did you say anything else, Mr.

6   Molton?

7          MR. MOLTON:  I just said it's good to see you again.

8          THE COURT:  Okay, thank you.

9          Okay, Mr. Abrams, I appreciate your participation and

10  again, I'll repeat.  I'm not counting, and the matter stands

11  submitted.  Well, submitted pending the submissions along the

12  time line that I discussed.

13         Thank you for your time.  Have a good day, gentlemen.

14         MR. ABRAMS:  Thank you, Judge.

15         THE COURT:  Court's adjourned.

16     (Whereupon these proceedings were concluded at 10:58 AM)

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                          I N D E X

2    RULINGS:                                    PAGE LINE

3    Fifteenth Securities Claims Omnibus           4      20

4    Objection is Sustained

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 42
(973) 406-2250 | operations@escribers.net | www.escribers.net
of 52

1          C E R T I F I C A T I O N

2

3    I, Hana Copperman, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    *Hana Copperman*

7

8    _____

9    /s/ HANA COPPERMAN, CET-487

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  June 8, 2022

16

17

18

19

20

21

22

23

24

25

Case: 19-30088   Doc# 12495   Filed: 06/08/22   Entered: 06/08/22 10:00:18   Page 43

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**ability (1)**
14:2
**able (9)**
8:6;11:9;16:20,23;
19:24;22:24;26:11;
28:16;29:4
**above (1)**
14:12
**Abrams (99)**
8:14,14,21,25;9:1,16,
20;10:2,25;11:1,11,17;
13:3,7,15,20;14:4,19;
15:4,5,7,18;16:10,19,
24;17:5,6,11;18:5,11,
15;19:2,25;20:6,8,20,
22;21:18,19,20;22:17,
19,23;23:1,2,8,17,22,
25;24:4,8,18,24;25:2,
10,12,13,24;26:18,19;
27:2;28:1,6,15,21;
29:19,22;30:19,22,25;
31:1,15,19;32:1,25;
33:5,6,8,8,18;34:7,13,
17;35:22;36:3,13,16;
37:3,7,11,19,24;38:4,7;
39:20,23;40:8;41:9,14
**Abrams' (7)**
4:8;5:8;9:11;10:9,
19;40:18,23
**absolutely (1)**
40:14
**accept (4)**
23:2,2;28:9;30:8
**acceptable (1)**
21:15
**accepts (1)**
16:20
**accommodate (2)**
19:7,19
**accommodating (1)**
37:15
**accomplish (1)**
35:22
**According (1)**
4:3
**account (1)**
24:15
**accounting (1)**
13:9
**across (2)**
21:9;32:2
**act (1)**
9:23
**acting (3)**
25:3,5;31:20
**action (1)**
24:1
**actionable (1)**
4:23
**actions (5)**

24:1;26:3;34:23;
35:12,19
**activities (9)**
14:20;19:1;20:12,13;
23:16;28:25;34:9;35:4,
15
**activity (2)**
17:16;34:18
**acts (4)**
20:9;21:3,4;23:11
**actual (1)**
16:15
**Actually (3)**
4:21;15:24;16:10
**add (3)**
8:4;39:21;40:17
**addendum (1)**
40:21
**address (3)**
9:5;18:8;26:16
**adjourned (1)**
41:15
**administered (1)**
26:14
**administration (9)**
12:1,2;14:1,2,5,24;
15:1;20:18;32:22
**admirably (1)**
10:4
**advance (3)**
20:18;30:7;36:25
**Adventist (3)**
19:12;21:11,21
**advisory (2)**
13:25;25:23
**affect (1)**
29:1
**affects (1)**
29:15
**afford (1)**
18:24
**again (31)**
8:3;9:25;13:10,18;
15:2;16:16;17:2,7;
18:7,11;23:9,17,18;
24:14;26:5,8;28:15;
29:9,11;30:8;31:18;
32:25;33:9,14;34:15;
36:6;37:2,15;41:4,7,10
**against (2)**
21:23,24;33:16
**agenda (1)**
38:21
**ago (3)**
5:22;11:7;15:17
**agree (3)**
10:19;23:19;31:2
**agreeable (1)**
18:13
**agreed (1)**
6:22
**agreement (6)**
11:6;14:6,23;18:16;

20:23;34:7
**agreements (1)**
14:21
**agrees (1)**
30:16
**ahead (1)**
5:1
**allegedly (1)**
4:16
**allow (1)**
9:18
**allowed (1)**
17:20
**almost (4)**
11:7;12:21;15:8,25
**along (1)**
41:11
**ameliorated (1)**
11:19
**amended (1)**
7:7
**amongst (2)**
39:4,9
**amount (7)**
12:4,5,23;18:25;
21:1;22:7;33:3
**annual (1)**
12:10,12;14:14
**answered (1)**
11:18
**anticipate (1)**
29:23
**appear (2)**
8:16;16:22
**appearance (1)**
5:11
**appearances (1)**
9:19
**appearing (2)**
3:7;4:8
**appreciate (3)**
40:4;41:2,9
**approach (1)**
18:17
**appropriate (2)**
35:24,25
**approve (1)**
28:12
**approved (4)**
11:7;25:22;27:4;
32:12
**approximately (1)**
4:17
**April (1)**
12:10
**areas (1)**
20:25
**argue (3)**
9:20;26:4;34:24
**argument (7)**
4:14;11:3;17:19;
36:24;37:2;40:1,8
**around (3)**

15:4;20:24;35:15
**assert (1)**
21:24
**asserting (1)**
4:15
**assess (1)**
21:5
**assets (1)**
12:14
**associated (3)**
12:22;34:22;35:11
**assume (2)**
23:3;31:11
**assure (1)**
5:23
**attempt (1)**
11:1
**attend (1)**
3:14
**attention (1)**
11:18
**attorneys (1)**
35:9
**audience (1)**
9:17
**auditing (1)**
14:15
**authority (2)**
22:6;24:13
**available (3)**
20:2;29:2,13
**avoid (1)**
11:1
**aware (2)**
7:6;22:2
**away (1)**
9:4

## B

**back (9)**
4:19;17:8;18:10,13;
23:10;27:18;28:4;30:8;
36:6
**bad (4)**
25:24;26:2,3,4
**bank (1)**
24:15
**bankruptcy (2)**
4:17;23:24
**base (3)**
6:3;13:11;27:21
**based (4)**
4:15,22;7:22;26:6
**basic (1)**
29:6
**basically (1)**
14:7
**basis (6)**
4:15;9:12;11:15;
15:7;21:2,24
**BDO (1)**
14:15

**began (1)**
36:2
**begin (1)**
30:18
**behalf (6)**
3:9;5:16,20;23:13;
25:3;39:15
**behind (2)**
7:11;16:12
**believes (1)**
34:4
**belong (1)**
39:5
**bench (1)**
29:19
**beneficial (1)**
14:10
**beneficiary (1)**
39:25
**benefit (1)**
9:17
**Benvenutti (1)**
5:14
**best (1)**
29:20
**better (3)**
29:23;40:3,25
**beyond (4)**
14:21;16:17;26:8;
27:8
**big (1)**
33:19
**billion (5)**
12:24;23:14;26:21;
34:20;35:16
**bit (2)**
12:11;17:16
**bodies (1)**
32:20
**bogged (1)**
36:5
**both (3)**
8:8;23:14;37:25
**bounds (1)**
22:23;27:14
**breadth (1)**
36:4
**brief (8)**
8:16;9:19,25;30:5;
38:13;39:19;40:11,21
**briefly (2)**
27:17;37:1
**bring (4)**
3:5,21;8:14;38:10
**bringing (1)**
40:2
**broad (9)**
17:14,21,22;19:3,4,
14,16;21:16;22:20
**broadly (1)**
17:13
**brought (1)**
28:6

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 44
of 52

**Brown (1)**
10:16
**brush (1)**
17:14
**budget (1)**
14:3
**burden (1)**
31:9
**button (1)**
38:8
**buy (1)**
34:1

# C

**CALIFORNIA (1)**
3:1
**Call (3)**
3:3;4:12;25:14,15
**called (1)**
9:21
**Calling (1)**
3:4
**camera (2)**
5:10;38:12
**can (16)**
6:12;10:10,12,14;
11:1;18:9;24:10,16;
28:2;32:13;33:6;34:13;
36:13;37:1,1,23
**capacity (1)**
10:17
**care (2)**
10:1,1
**carefully (3)**
6:8;36:15,16
**case (8)**
8:1;9:6;22:12;26:2;
32:10;34:25;35:2,10
**cash (2)**
33:15;34:5
**categories (1)**
33:17
**category (3)**
4:16;21:25;33:20
**cause (1)**
20:18
**certain (1)**
31:21
**certainly (5)**
6:15;13:11;21:6,12;
27:10
**cetera (3)**
12:7,7,7
**change (7)**
24:16;31:16,20;
34:19;35:20
**Chapter (1)**
16:3
**check (3)**
5:10,25;6:1
**chose (2)**
9:14;24:12

**chosen (1)**
23:20
**cited (4)**
19:11,11;21:10;
27:16
**claim (7)**
3:18;4:15,18,21,23;
5:3;7:22;22:1,3
**claimant (6)**
17:12;21:21;22:1;
31:7;34:16;38:18
**claimants (11)**
4:16;8:19;12:21;
16:24;19:12;31:14;
33:23;34:2;39:5,10,16
**claimants' (1)**
26:22
**claims (15)**
7:7;12:1,2,21,22;
14:24;18:25;21:22,23,
24;26:14,15;32:19,22;
33:16
**clarification (1)**
6:18
**clear (2)**
10:15;35:12
**clearly (2)**
10:20;16:25
**CLERK (4)**
3:4,13,16;4:9
**client (4)**
6:8;9:15;30:7;40:18
**clients (3)**
5:23;8:3,8
**comfortable (1)**
9:13
**coming (2)**
34:5;38:11
**comments (1)**
3:20
**commitment (1)**
18:8
**committee (3)**
13:25;22:7;25:23
**committing (1)**
30:11
**common (1)**
19:25
**company (2)**
3:19;32:15
**compelled (1)**
28:7
**complained (1)**
28:4
**complaining (1)**
17:9
**completely (2)**
26:22;32:24
**compliment (1)**
19:13
**concept (1)**
36:4
**conclude (1)**

5:7
**concluded (1)**
41:16
**conduct (1)**
20:9
**confer (3)**
14:3;15:2;17:24
**conference (1)**
6:9
**confers (2)**
10:24,25
**confirmation (1)**
11:6
**confirmed (1)**
33:15
**connection (2)**
12:9;15:3
**connections (1)**
6:1
**consent (2)**
14:3;15:2
**consents (1)**
11:12
**consider (1)**
8:3
**consideration (1)**
12:14
**considered (1)**
8:2
**consistent (2)**
4:23;25:18
**constitutional (2)**
11:5;36:18
**contains (2)**
14:14,16
**contemplated (1)**
33:13
**continue (1)**
16:18
**contract (5)**
20:4;26:6,6;29:7;
35:8
**contracts (4)**
16:16;20:16;28:23;
35:11
**contrary (1)**
4:20
**convenient (1)**
36:14
**copies (2)**
40:12,14
**copy (2)**
4:3,3
**core (1)**
39:8
**Corporation (1)**
3:4
**counsel (6)**
8:15;9:13;18:19,19;
28:10;30:16
**count (3)**
18:11;28:1;37:5
**counting (4)**

15:11,12,13;41:10
**couple (3)**
7:5;8:22;36:10
**course (10)**
11:4;12:24;13:7,9;
16:9;31:16,20;34:3,19;
35:20
**Court (94)**
3:3,7,10,15,17,20;
4:6,10;5:1,5,7,17,21;
6:6,12,25;7:2,4,9,17,
21,25;8:6,13;10:12,14;
11:20;13:2;15:6,11,13,
21;16:2,8;17:2,5,11;
18:12;19:2;20:6,15,15,
21,21;11,18,20;22:18,
21,25;23:2,17,19,23;
24:3,5,9,22,25;25:9,11,
13;26:17,19;27:13,16,
19;28:1,8,18;29:16,22;
30:20,24;31:1,18,23;
32:9;33:5,8,19;34:12,
14;35:21;36:20,22;
38:9,16;39:18;40:4,5;
41:3,5,8,15
**courtesy (1)**
4:3
**courtroom (3)**
3:12,22;40:12
**court's (3)**
23:24;27:22;41:15
**covered (1)**
26:20
**creation (1)**
15:17
**creditor (4)**
16:4,6;17:25;21:21
**criticism (1)**
10:2
**criticize (1)**
28:2
**crux (1)**
39:8
**curiosity (1)**
19:19
**currently (1)**
27:19

# D

**daily (1)**
11:15
**date (2)**
15:16;36:14
**dates (1)**
18:16
**David (2)**
3:8;10:15
**day (1)**
41:13
**deadlines (1)**
9:3
**deal (13)**

5:8;6:2;8:17;9:12;
11:2;13:19;15:6;16:25;
31:10;35:22,24,25;
36:9
**dealing (1)**
31:12
**dealings (1)**
29:15
**deals (1)**
15:4
**dealt (1)**
15:7
**debate (1)**
24:10
**debtor (1)**
32:12
**debtors (3)**
3:9;5:14,16
**debtors' (1)**
4:20
**decades (1)**
4:19
**decide (2)**
9:19;30:7;40:18
**decision (2)**
24:5;38:1
**deems (1)**
14:8
**deep (1)**
29:19
**defer (1)**
18:5
**defrauded (1)**
4:16
**delay (1)**
18:24
**delays (1)**
32:6
**delivered (1)**
4:4
**deny (1)**
9:24
**dependent (1)**
12:25
**depends (1)**
23:25
**deputy (1)**
40:12
**detail (4)**
13:17;16:4,6;17:12
**detailed (1)**
7:14
**details (2)**
13:7;22:3
**determination (5)**
12:4,6,24;17:13;
26:22
**determinations (1)**
12:20
**determine (1)**
21:24
**determined (1)**
12:21

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 45
of 52

**dial (1)**
4:2
**different (7)**
20:25;21:13;25:19;
26:22;36:7,8,9
**difficult (1)**
26:23
**digest (1)**
19:16
**directive (1)**
10:21
**disagree (1)**
32:14
**disallow (1)**
4:21
**disallowing (1)**
4:21
**disallows (1)**
5:3
**disappointment (1)**
32:14
**disclosed (1)**
35:17
**disclosure (1)**
13:22
**disclosures (1)**
11:15
**disconnected (1)**
32:24
**discovery (4)**
19:19;27:5,7,10
**discretion (1)**
14:9
**discussed (1)**
41:12
**discussing (1)**
39:12
**discussion (2)**
10:22;27:8
**dispute (2)**
22:2,2
**docket (1)**
8:23
**document (2)**
13:5;40:11
**documents (11)**
9:22;11:5;13:19;
20:2;21:13;29:4,13;
30:4;36:18;40:15,22
**Dodge (7)**
5:10,15,15;6:20;7:5,
20;8:12
**dollar (1)**
31:5
**dollars (2)**
12:24;16:5
**done (8)**
7:13,15;20:24;21:4;
23:20,21;26:2;40:20
**doubt (2)**
22:11;25:20
**down (4)**
4:10;31:24;36:5;

39:16
**downstairs (1)**
6:9
**drag (1)**
39:10
**due (1)**
6:23
**during (1)**
4:16
**duty (2)**
14:25;25:1

**E**

**earlier (3)**
6:20;36:17;37:9
**easy (2)**
24:15;38:23
**effective (1)**
15:16
**efficient (1)**
40:16
**effort (3)**
15:23,24;36:7
**efforts (4)**
13:8;15:19;32:5;
33:9
**either (6)**
6:3;18:1;30:14;
32:19;37:14,22
**elongates (1)**
39:17
**else (12)**
6:2;7:17;11:17;22:9;
25:17;31:11;33:10,22;
36:25;40:5;41:1,5
**employing (1)**
23:5
**end (3)**
5:25;33:4;40:17
**engaged (3)**
20:12,14,14
**engagement (1)**
32:3
**engagements (4)**
28:24,24;35:1,12
**engaging (2)**
32:4,4
**enough (1)**
28:8
**entered (1)**
7:8
**equity (1)**
4:18
**essence (2)**
30:23;31:1
**essentially (1)**
5:21;8:21
**established (1)**
4:18
**estate (2)**
14:1,2
**et (3)**

12:7,7,7
**evaluate (1)**
20:9
**evaluating (1)**
21:2
**even (3)**
19:4;22:5;24:10
**event (1)**
11:8
**everybody (3)**
11:17;12:9;17:8
**everyone (1)**
9:17
**example (2)**
20:3;27:4
**except (1)**
14:12
**exhibit (1)**
6:15
**exhibits (1)**
6:13
**exist (1)**
26:21
**existed (1)**
20:17
**expand (1)**
11:20
**expansive (1)**
10:20
**expect (2)**
4:11;29:25
**expedited (1)**
9:12
**expediting (1)**
32:19
**expedition (1)**
21:16
**expense (2)**
34:8,18
**expenses (4)**
13:6;20:23;25:7;
34:10
**experience (1)**
34:25
**experiences (1)**
21:8
**explain (1)**
40:25
**explains (1)**
12:11
**explanation (2)**
14:19;16:12
**expunging (1)**
4:25
**extension (1)**
29:12
**extensions (1)**
30:14
**extensive (1)**
19:19
**extent (3)**
11:8;14:4,18
**extraneous (1)**

17:16
**extremely (1)**
19:4

**F**

**Facebook (1)**
39:2
**facilitate (2)**
33:22;34:5
**facing (2)**
11:25,25
**fact (5)**
21:15,21;27:16;31:9;
32:2
**facts (1)**
37:21
**fair (3)**
19:23,24;28:8
**fairness (2)**
14:16;30:11
**faith (9)**
20:24;21:4;25:10,12,
24;26:2,3,4;34:10
**faithful (1)**
18:8
**far (1)**
22:1
**fashion (1)**
29:18
**fear (1)**
39:9
**FedEx (2)**
4:1,4
**feel (1)**
39:13
**felt (2)**
26:4;28:7
**fiduciary (6)**
14:25;24:20,21,22;
25:1,2
**fifteen- (1)**
30:4
**fifth (1)**
15:18
**figures (1)**
22:11
**file (6)**
9:9;14:14;18:6;
37:11;40:10,13
**filed (13)**
7:6,7,12;8:20,21;9:1,
2;12:10;14:14;27:18;
29:11,16;33:10
**filing (7)**
16:3;18:20;27:24;
28:2;37:10;39:20;40:9
**financial (1)**
14:17
**find (2)**
19:25;28:16
**fine (5)**
6:11;18:10;23:13;

32:21;37:9
**fire (26)**
8:19;9:8,13,21;10:4,
16,18,23;12:11,13,15;
14:24;20:19;21:25;
25:17;31:5,14;33:22;
37:16;38:17,18,24;
39:2,4,10;40:19
**firevictimtrustcom (1)**
11:23
**firm (1)**
14:15
**first (9)**
5:9;6:18;10:5,11;
15:8;18:18;24:9;27:4,7
**firsthand (1)**
20:13;21:8
**first-hand (1)**
34:25
**fishing (1)**
21:16
**flesh (1)**
17:6
**focused (3)**
13:3;19:13;26:25
**focusing (1)**
22:14
**follow (1)**
32:14
**followed (1)**
7:23
**following (2)**
8:20;40:22
**forgot (1)**
38:7
**form (2)**
5:2;24:2
**forth (2)**
9:14;10:3
**forty-five (1)**
12:18
**forward (7)**
8:8;11:25;16:18;
22:20,21;27:25;40:9
**forward-looking (1)**
11:14
**four (6)**
15:18;30:20,21;37:8,
12,12
**FRANCISCO (1)**
3:1
**frankly (5)**
19:15,23;20:19;22:8;
29:5
**front (4)**
15:9;18;16:22;17:25
**fund (4)**
32:5,6;33:12;35:4
**funded (1)**
33:2
**funding (1)**
32:10
**further (5)**

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 46
of 52

13:23;18:23;30:13;
39:25;40:17

**G**

**garden (1)**
16:2
**gentlemen (1)**
41:13
**gets (3)**
12:25;36:5;39:23
**given (4)**
12:5,14;18:24;20:24
**giving (2)**
9:13;12:13
**glean (1)**
17:13
**goals (2)**
25:18;32:21
**goes (3)**
4:19;7:13;8:2
**Good (17)**
3:6,8;5:13,15,19;
18:15;19:10;20:24;
21:4;25:10,12;32:21;
33:22;34:10;41:4,7,13
**Gotshal (1)**
3:9
**grant (2)**
9:24;28:22
**granted (1)**
7:13
**Great (2)**
8:10;35:8
**greatest (1)**
39:9
**Greenberg (2)**
5:6,20
**Greenberg's (1)**
7:22
**ground (2)**
20:1;28:16
**group (2)**
35:8;39:4
**guess (5)**
21:6;24:12,16;34:3;
38:12
**guessing (2)**
24:19;26:5
**guide (1)**
36:18
**guided (1)**
36:17
**guilty (1)**
30:13

**H**

**half (1)**
37:16
**hall (1)**
17:25
**hampered (1)**

32:7
**hand (8)**
3:21;4:7,10;8:18;
38:4,6,9;40:6
**hands (1)**
40:6
**happened (4)**
5:22;26:18;28:5;
37:20
**happens (1)**
7:17
**hard (1)**
40:12
**haunt (1)**
37:21
**heads (1)**
9:15
**hear (4)**
10:11,14;11:3;39:6
**heard (11)**
3:19,24;4:5,11;9:4,
18;10:4;36:17,24;37:1;
40:5
**hearing (13)**
3:18;4:1,2;9:3,7,7,9;
11:12;19:22;36:5;37:9;
38:2,22
**held (2)**
10:24;25:4
**help (2)**
27:3;36:8
**helpful (1)**
13:3
**here's (3)**
30:5;35:8;36:22
**hidden (1)**
29:3
**Hill (12)**
3:5,6,7,8,8,10,19,23,
25;4:13,24;5:4
**himself (3)**
6:10;9:2;15:25
**hire (5)**
22:6;24:9,10,11,13
**hired (2)**
24:14;25:16
**hires (2)**
24:11,15
**history (1)**
15:21
**hit (1)**
38:7
**Hold (1)**
6:12
**holders (1)**
14:24
**holiday (1)**
11:13
**homework (1)**
19:10
**honestly (1)**
30:19
**Honor (84)**

3:6,8,25;4:9,24;5:4,
13,15,19;6:7,18;7:6,11,
19;8:5,11,12;10:10,15,
16,19,21,23;11:2,4,7,8,
12,14;12:2,10,15,17,
25;13:18,24,25;14:5,6,
13,18,22;15:8,9,15,16,
16;16:9,14,17,19,20,
21;18:15;20:1,8;22:17,
19;23:9;25:24;26:2;
27:3,17,21,23;28:7,21;
29:4,5,10,20;30:22;
31:15,16,19;32:1;
34:13,17,24;35:10;
36:19,21;38:7;39:13
**Honorable (1)**
10:17
**Honor's (2)**
10:20,21
**hope (11)**
8:25;11:14;16:22;
31:15,16,19,22;35:6,6,
10,11
**hopefully (1)**
39:24
**horrible (1)**
37:18

**I**

**ignoring (1)**
8:22
**illiquid (1)**
12:14
**imagine (1)**
26:24
**impeded (1)**
32:7
**important (8)**
15:15;21:8;29:10;
34:21;35:3,13,18,18
**improved (1)**
32:22
**inconsistent (1)**
27:22
**increased (1)**
12:17
**independent (1)**
14:15
**indicated (2)**
8:15;17:1
**indications (1)**
4:19
**indiscernible (1)**
32:9
**influence (1)**
24:16
**information (32)**
4:4;9:22;12:4,13,16;
13:8,20;14:8,11;17:15;
18:21,22,25;19:12;
20:10,11;21:1,5,6;26:7,
10,11;28:25;29:14,14;

31:6,13;33:1;39:1,3,8,9
**informed (2)**
11:5;13:19
**inquire (2)**
22:5,12
**inquiries (1)**
26:23
**inquiry (3)**
22:8;27:11;36:9
**instructions (2)**
4:1;7:15
**intelligent (1)**
26:25
**intend (1)**
10:8
**interest (3)**
4:18,22;8:1
**interested (1)**
11:17
**interests (4)**
10:1;14:23;15:1;
25:5
**interim (1)**
16:3
**intermittently (2)**
11:16;12:8
**interrupt (2)**
13:2;17:2
**into (6)**
3:21;8:14;10:22;
13:23;36:24;38:3
**invites (1)**
14:25
**involve (1)**
19:16
**involving (2)**
8:14;22:2
**issue (7)**
11:2;13:9;15:16;
22:14,15;32:13;38:2
**issued (2)**
9:6;27:5
**issues (4)**
11:18;13:21;14:5;
19:1
**item (1)**
16:5
**items (2)**
16:12;17:15

**J**

**Jennifer (1)**
5:15
**John (1)**
10:17
**joinder (1)**
8:21
**Judge (14)**
10:10;11:9,13,23;
12:19;13:18;15:5,19,
22;16:24;36:12,15;
41:2,14

31:6,13;33:1;39:1,3,8,9
**judgment (1)**
25:15
**July (1)**
11:13
**JUNE (8)**
3:1;6:22,23;8:3;9:3;
37:5,5,10
**Justice (1)**
25:15;33:20;38:19
**justification (2)**
14:19;16:12

**K**

**keep (5)**
25:9,11,13;34:12,14
**Keller (1)**
5:14
**kept (1)**
36:5
**Kim (1)**
5:14
**kind (5)**
13:13;17:22,23;18:6;
19:15
**kinds (1)**
32:23
**knew (1)**
5:17
**knowledge (1)**
25:20
**knows (4)**
12:2;13:25;14:13;
17:8

**L**

**Lane (10)**
38:9,10,11,12,14,15,
17,17;39:18;40:2
**Lapping (12)**
5:18,19,20;6:5,7,17;
7:1,6,10,11,19,24
**large (1)**
14:4
**last (3)**
4:1;16:21;26:19
**late (1)**
12:10
**later (3)**
31:3,8;34:6
**law (3)**
17:6;20:21;30:5
**lawful (1)**
25:22
**lawyer (1)**
19:10
**leads (2)**
18:17;29:6
**least (3)**
15:9;20:22;31:10
**leeway (1)**
21:17

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 47 of 52

**legal (1)**
17:19
**legislative (3)**
24:16;32:20;33:21
**legislature (2)**
25:16;34:5
**less (3)**
23:8;30:25;37:12
**level (1)**
36:7
**light (3)**
15:15;23:16;37:15
**likely (1)**
29:24
**limitation (1)**
21:14
**limited (1)**
17:1
**line (8)**
15:7;16:5,12;24:1;
25:5;39:14;40:2;41:12
**lines (2)**
13:5,16
**list (3)**
13:12;38:25;40:25
**listened (1)**
36:16
**listening (3)**
12:9;36:15;38:20
**litigation (1)**
17:23
**little (3)**
12:11;16:6;33:1
**living (1)**
16:14
**loan (3)**
26:15,21;35:16
**lobbying (12)**
13:8;17:16;18:25;
19:7;23:13;24:2,6;
28:24;32:5;35:1,15;
36:7
**lobbyist (23)**
20:4,11,17;22:6,6,
15;23:3,5,6,7,11,20;
24:10,12,13,14,15,22,
24,25;25:1,3,18
**lobbyists (6)**
22:4;23:12;24:9,11,
11;26:20
**lock (1)**
38:3
**long (3)**
18:13;25:22;39:15
**look (12)**
8:7;16:10;24:18,20,
21;27:18,19;33:9;
37:10,11;40:9;41:1
**looking (6)**
14:4;15:23;16:18;
18:20;38:24;39:24
**looms (1)**
8:3

**loose (1)**
17:24
**lose (1)**
21:20
**loss (2)**
7:22;37:20
**lost (1)**
38:23
**lot (7)**
5:23;13:16;30:23;
32:9;33:10;34:2;39:2
**lots (3)**
26:12,16;31:12
**lottery (1)**
34:1,2
**Loud (1)**
10:15

**M**

**mail (1)**
4:1
**major (1)**
21:21
**makes (4)**
13:15;24:3,5;26:23
**making (1)**
37:15
**manage (3)**
9:5;26:24;29:1
**manageable (1)**
22:22
**managing (1)**
39:3
**mandate (1)**
14:7
**Manges (1)**
3:9
**manner (1)**
10:3
**many (1)**
27:8
**marked (1)**
6:14
**material (1)**
14:16
**matter (11)**
3:4;4:8,11;5:6,8,8;
8:14;16:21;17:6;27:12;
41:10
**matters (3)**
7:5;30:23;35:1
**may (8)**
8:17,23;9:1,6,18;
13:23;16:19;32:14
**maybe (6)**
8:3;16:22;19:7,7;
29:24,25
**mean (8)**
6:13;7:2;9:18;10:2;
11:20;17:20;19:4,21
**meaningful (1)**
19:15

**means (1)**
33:21
**media (1)**
39:3
**meet (4)**
10:24,24;14:2;17:23
**meeting (1)**
17:25
**meetings (1)**
18:18
**member (1)**
15:25
**members (1)**
39:5
**mentioned (2)**
14:22;16:11
**merits (4)**
10:22,22;18:8;19:22
**message (1)**
39:18
**met (2)**
18:18,19
**metaphors (1)**
17:14
**methodology (1)**
25:19
**mic (1)**
5:11
**microphone (1)**
38:13
**middle (1)**
28:16
**might (7)**
11:22;17:22;26:6;
30:3,4;31:9;34:2
**millions (1)**
16:5
**mind (3)**
19:17;23:3;37:3
**minute (2)**
17:3;18:10
**mislead (1)**
18:2
**miss (1)**
8:7
**missed (1)**
30:24
**Molton (37)**
8:18,25;10:6,10,13,
15,15;11:23;13:18;
15:12,14,22;16:2,7,9;
17:2,4,10;18:14;19:7;
20:16;26:12;27:15;
28:6;33:6;35:21;36:12,
21;37:3,13;38:19;40:8,
10;41:2,4,6,7
**Molton's (4)**
18:16;28:12;30:1;
39:14
**moment (1)**
4:12
**Monday (1)**
6:22

**monetization (1)**
12:13
**money (14)**
22:7;24:14;25:16;
31:22;32:21;33:15,21;
34:2,8,8;35:3,5,9;36:8
**monitor (1)**
11:21
**Montali (1)**
38:19
**month (2)**
5:25;12:1
**monthly (1)**
15:7
**months (2)**
28:20;35:9
**more (23)**
6:24;9:12;16:4,6;
17:15;22:8;23:4;25:16;
29:7;30:16,16,18;
32:19,21;33:21;34:2,5;
36:8;37:14,23,24;39:9,
21
**morning (8)**
3:6,8;5:13,15,19;
6:20;10:21;40:6
**most (2)**
19:18;39:6
**motion (6)**
18:20;27:24;28:2;
29:11;38:20;39:9
**motions (1)**
15:10
**Mrs (5)**
3:13,17,24;4:14;5:2
**much (7)**
5:5;8:10;15:3;17:7;
26:24;29:22,23
**must (1)**
20:23
**myself (2)**
38:3,24

**N**

**name (3)**
10:6;38:13,16
**narrow (4)**
17:24;19:2,6;22:20
**nature (1)**
9:10
**near (1)**
29:25
**necessarily (2)**
11:18;15:23
**need (16)**
3:20;6:2,3;10:4;
13:12;20:9;21:5;25:7,
8;34:10,10;37:23;39:9;
40:11,14;41:1
**Needless (3)**
11:11;13:22;36:15
**needs (5)**

**monetization (1)** — 6:13;27:25;36:14;
37:14,23
**neither (1)**
21:25
**next (2)**
35:9;36:10
**nice (2)**
7:14;18:11
**none (1)**
40:24
**note (2)**
15:14;28:3
**noted (1)**
9:23;39:20
**notice (3)**
4:2;12:11;30:1
**notices (2)**
12:5,6
**notion (2)**
17:21;31:24
**notwithstanding (1)**
16:23
**nuisance (1)**
22:8
**number (8)**
7:12;10:24;12:20,21;
18:12;21:13;23:8;
38:20
**numbers (1)**
13:16

**O**

**object (3)**
4:24;27:6,11
**objection (3)**
3:18;4:21;5:3
**objections (6)**
15:10;27:17,18,20,
21,23
**objects (1)**
27:5
**obligation (1)**
14:10
**observe (2)**
6:7;19:24
**observed (1)**
23:12
**obviously (1)**
5:22
**occurred (2)**
12:15;35:15
**off (5)**
13:11;18:23;22:7;
27:21;35:9
**offer (1)**
30:1
**offered (1)**
28:19
**officially (1)**
7:12
**offshore (1)**
22:11

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 48
of 52

**Oliveros (8)**
3:11,11,13,17,24;
4:11,14;5:2
**one (16)**
6:19;7:6,12,13;13:4;
15:14;16:24;18:17;
19:5;22:4;24:15;31:5,
5,8;32:18;40:14
**one-day (1)**
7:21
**ongoing (1)**
19:1
**only (5)**
7:21;16:11;23:15;
27:24;29:6
**oOo- (1)**
3:2
**open (2)**
15:7;26:10
**operating (2)**
13:6;14:7
**operation (1)**
14:11
**opinion (2)**
14:16;23:9
**opportunity (1)**
32:18
**order (13)**
3:3;5:2;6:8;7:8;9:6;
10:8,20;11:6;20:16;
28:14;30:2,2,7
**others (6)**
8:20;11:22;26:3;
29:6;32:17;33:16
**otherwise (2)**
11:16;18:5
**ought (1)**
28:10
**out (8)**
11:15;17:6;18:3;
22:10;27:14;30:2,9;
34:21
**Over (7)**
10:23;13:11;14:3;
17:8;19:18;37:2;39:5
**overlooking (1)**
33:19
**overnight (1)**
4:1
**oversight (3)**
14:1;16:1;22:7
**owners (1)**
14:10

**P**

**package (2)**
10:20;11:2
**page (4)**
13:4,5;30:5;40:11
**paid (10)**
12:25;22:6;23:3,4,7;
31:2,3;32:12;33:3;

37:17
**pain (1)**
39:17
**painting (1)**
17:13
**paper (1)**
13:4
**papers (10)**
4:13;6:10,12;9:1,2,
11;11:3;13:4;37:25;
39:22
**Parada (3)**
3:11;4:6;38:10
**Parado (1)**
8:13
**part (5)**
15:24;16:14;25:6;
27:10;32:6
**participation (2)**
40:4;41:9
**particular (6)**
17:12,12;26:10,21;
27:12;31:7
**particularly (1)**
35:14
**parties (2)**
33:11,20
**partly (1)**
32:1
**past (6)**
10:23;22:22;27:4,24;
28:5;29:21
**pay (3)**
11:17;20:19;34:20
**paying (1)**
22:4
**payment (4)**
12:16,25;31:13,25
**payments (2)**
12:7;32:11
**pending (1)**
41:11
**penny (1)**
31:8
**people (5)**
8:17,20;17:23;26:1;
31:2
**per (1)**
40:22
**percent (2)**
12:18,23
**percentage (2)**
12:16;13:1
**perhaps (7)**
16:21;17:13,16,21;
18:3;25:19,21
**permissible (1)**
25:22
**person (2)**
19:5;28:4
**perspective (1)**
16:14
**persuade (1)**

34:4
**persuasive (1)**
4:14
**PG&E (1)**
3:4
**phonetic (1)**
4:7
**piece (1)**
26:10
**place (1)**
15:24
**plan (5)**
11:6;15:17;32:12;
33:13,14
**play (1)**
30:9
**plea (1)**
7:25
**please (4)**
4:10;5:1;8:14;38:10
**plus (1)**
17:15
**pocket (1)**
31:5
**pockets (1)**
31:22
**point (10)**
13:15;23:24;26:5;
28:9;33:14;34:21;37:4,
10;38:3;40:1
**pool (1)**
12:23
**portion (1)**
39:23
**portions (1)**
31:10
**position (3)**
10:3;17:18;39:20
**possibility (1)**
18:3
**possible (1)**
9:2
**possibly (2)**
19:5;26:25
**post (4)**
12:8,11;40:19,25
**posted (4)**
11:22;38:21;40:22,
24
**posting (1)**
16:15
**potential (1)**
21:23
**power (1)**
7:22
**PR (1)**
32:3
**practice (1)**
16:15
**preempted (1)**
9:4
**preliminary (2)**
9:7;12:6

**prepared (4)**
4:20;18:1;29:17;
36:9
**prepped (1)**
5:24
**present (1)**
12:20
**presented (1)**
39:3
**preside (1)**
19:18
**presume (1)**
35:23
**presuppose (1)**
27:13
**pre-trial (2)**
5:21;6:21
**prevailing (1)**
32:20
**prior (2)**
4:17;18:19
**prioritizing (1)**
31:21
**pro (2)**
12:6,16
**probative (2)**
19:17;22:9
**problem (4)**
6:25;7:2;24:19;25:6
**problems (1)**
36:3
**procedure (2)**
10:5;18:14
**procedures (1)**
27:23
**proceed (2)**
9:15;10:8
**proceedings (1)**
41:16
**process (13)**
10:2;19:5;22:21;
26:9;27:3,7,10;28:11;
31:14,25;37:22;39:16,
17
**processed (1)**
26:14
**processes (1)**
27:22
**processing (1)**
18:25
**produce (6)**
9:22;29:4,5,8;30:6;
35:11
**production (1)**
17:22
**professionals (1)**
31:12
**promise (1)**
7:3
**prompted (1)**
18:23
**proof (1)**
4:22

**proper (2)**
21:22;27:1
**proposal (1)**
6:23
**proposed (2)**
16:20;36:11
**proprietary (2)**
28:25;29:14
**prosecuting (1)**
3:19
**proud (1)**
12:19
**provide (14)**
9:22;11:24;14:8,10;
18:20,21;20:16;21:2;
27:6;29:12;31:6,16,20;
40:12
**provided (4)**
14:12;18:22;21:2;
33:1
**provides (2)**
14:7;21:16
**provisions (1)**
25:25
**prudent (1)**
14:9
**public (4)**
11:25,25;13:14,22
**publish (1)**
20:4
**purpose (3)**
14:15,17;20:7
**pursuant (1)**
7:7
**put (20)**
4:10;8:22;10:23;
11:10,12;18:23;21:14;
22:20,21;28:22;30:2;
31:4,22;32:13,15,16,
20;34:5;36:14;39:21
**puts (1)**
29:12
**putting (1)**
22:23
**PwC (5)**
21:11,13,22;27:5,5

**Q**

**qualitative (1)**
20:11
**quantitative (1)**
20:10
**quite (3)**
10:3;29:5;30:19

**R**

**raise (2)**
3:20;40:6
**raised (1)**
15:16
**range (2)**

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 49
of 52

12:24;26:20
**rata (1)**
12:16
**rate (1)**
12:6
**rather (5)**
25:17;31:3,8,11;34:6
**read (7)**
6:8;7:2;10:20;20:8,
22;32:25;33:10
**readily (4)**
20:2;29:2,4,13
**ready (1)**
40:11
**really (5)**
12:19;14:19;15:4;
18:24;30:22
**reason (9)**
6:15;16:8,8;20:3;
21:10;23:4;31:23;32:6;
38:4
**reasonable (13)**
20:23;21:3;25:8;
27:9;30:12;34:10,19,
20,22;35:4,7,13,19
**receive (2)**
11:2;14:11
**received (2)**
26:12,12
**recent (2)**
18:18;35:14
**recently (2)**
3:24;33:2
**reconstitute (1)**
15:19
**record (1)**
10:7
**recovery (1)**
34:16
**refer (1)**
6:13
**refresh (1)**
7:9
**refrigerator (1)**
7:23
**refusing (1)**
30:13
**regard (1)**
14:20
**regarding (1)**
14:11
**regulatory (3)**
28:23;32:4;35:2
**related (1)**
34:18
**relevant (1)**
28:23
**remarkable (1)**
16:15
**remedies (1)**
18:21
**reminded (1)**
30:10

**reorganized (3)**
3:9;5:14,16
**repeat (5)**
33:14;36:1;37:13,13;
41:10
**repeating (2)**
34:14,14
**replace (1)**
15:20
**reply (3)**
4:3;11:11;36:14
**report (5)**
12:10,12;14:14;16:4;
24:1
**reports (1)**
13:23
**representing (1)**
15:1
**represents (1)**
14:23
**request (16)**
8:21;9:11;17:21;
19:3,3,6,14,19;26:23;
27:9;31:11;36:1,3;
38:21;40:19,23
**requested (1)**
8:23
**requests (4)**
8:22;10:9;16:10,25
**required (1)**
20:9
**requires (1)**
14:13
**resolve (2)**
11:9;16:23
**respect (1)**
16:21
**respectively (1)**
5:24
**respects (1)**
14:17
**respond (16)**
17:19;27:17;28:7,10,
13;29:17;30:1,3,4,12,
15,21;36:13;37:8,8
**response (18)**
9:3;10:7,8;11:10;
13:12,13;17:5;18:6;
19:15,16;21:13;26:25;
28:19;30:11;35:23,24;
36:18;39:14
**responsibilities (4)**
24:20,21,23;25:2
**responsibility (1)**
24:6
**responsible (1)**
13:25
**result (1)**
33:22
**retired (1)**
10:17
**reverse (1)**
31:9

**review (1)**
38:1
**reviewed (1)**
4:13
**revised (1)**
18:16
**revolves (1)**
15:4
**Richard (2)**
5:19;38:17
**ridiculous (1)**
34:3
**right (28)**
3:15;6:17;7:18,23;
8:12,19;14:10;15:11;
16:4,6;17:10;18:9;
20:10,25;22:12;23:18;
24:11;25:21,21;27:11;
28:6;31:6;33:18;34:4;
36:20,22;38:16;40:6
**rights (3)**
9:4;14:3;15:2
**role (2)**
20:15;32:10
**roll (1)**
13:11
**room (3)**
3:16;6:9;8:15
**rude (1)**
9:18
**Rudnick (1)**
10:16
**rule (2)**
6:10;18:3
**ruling (1)**
38:2
**Rupp (6)**
5:12,13,13;7:14;8:4,
5

**S**

**same (2)**
17:8;40:15
**SAN (1)**
3:1
**Saturday (1)**
4:5
**saw (1)**
15:8
**saying (5)**
15:22;25:9,11,13;
30:5
**schedule (1)**
16:20
**schedules (1)**
13:6
**scope (1)**
14:21
**screen (1)**
3:21
**second (3)**
24:12,16;34:3

**seconds (1)**
26:19
**Section (4)**
14:6,12,13,25
**seeing (3)**
8:8;11:22;41:4
**seek (1)**
11:1
**seeking (3)**
14:19;26:16;35:16
**seeks (2)**
13:21;17:7
**seem (2)**
22:14;36:4
**seems (3)**
19:17;26:1;36:6
**send (2)**
3:25;40:13
**sense (2)**
29:23;31:4
**sent (1)**
7:14
**Serepian (2)**
4:7,10
**serve (1)**
5:1
**set (8)**
3:18;5:21;7:14;9:2;
10:3;27:7;37:9;38:1
**setting (2)**
9:7;26:9
**settle (2)**
8:6,7
**settled (1)**
8:1
**seven (6)**
13:5,16;22:11;37:16;
38:25;39:21
**shall (1)**
14:8
**shelter (1)**
24:14
**shined (1)**
23:16
**shortchange (1)**
37:22
**shortfall (1)**
26:16
**shown (4)**
3:11;4:19;34:18;
35:6
**sic (1)**
11:16
**side (3)**
30:14;37:14,22
**sides (1)**
37:25
**sight (1)**
21:20
**signed (1)**
22:7
**similar (1)**
29:17

**similarly (1)**
17:24
**simple (2)**
16:3;40:21
**simply (7)**
4:14;5:23;9:23;22:3,
13;37:21;38:2
**siphoning (1)**
22:10
**sit (1)**
18:4
**six (1)**
35:9
**sixty-six (1)**
12:23
**skills (1)**
25:20
**slightly (1)**
36:9
**slowing (1)**
31:24
**slows (1)**
39:16
**social (1)**
39:3
**sole (1)**
14:9
**solve (1)**
20:6
**somehow (2)**
27:22;31:24
**sooner (7)**
31:3,5,8,22;34:5,21;
40:3
**Sorry (4)**
25:11;34:12;38:7;
41:5
**sort (4)**
9:10;19:25;24:18;
26:8
**sorts (1)**
15:2
**sound (1)**
6:1
**sounds (1)**
27:7
**sources (2)**
32:20;33:12
**space (1)**
32:4
**speak (2)**
9:14;17:5
**SPEAKER (1)**
8:10
**special (2)**
14:14,17
**specifically (3)**
9:8;19:6;22:14
**speed (2)**
31:13;34:16
**spend (2)**
35:3,5
**spent (2)**

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(7) rata - spent

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 50
of 52

34:9;35:7
**spread (1)**
39:4
**staff (2)**
29:20;31:10
**stand (2)**
30:10,17
**standards (1)**
25:4
**stands (1)**
41:10
**start (4)**
34:19;36:1,23;37:2
**started (1)**
39:12
**state (5)**
10:6;13:8;27:19;
38:13,16
**stated (2)**
32:5;33:2
**statement (7)**
8:17;9:25;14:15,17;
28:3;38:14;39:19
**status (1)**
13:23
**steps (1)**
27:8
**stick (1)**
35:23
**still (3)**
6:24;17:17;19:1
**stipulation (2)**
7:8,14
**stock (4)**
29:1,15;32:15;33:15
**stranger (2)**
15:5,6
**strategy (1)**
14:19
**stuff (3)**
6:21;13:13;40:13
**subject (1)**
13:22
**submissions (2)**
6:21;41:11
**submitted (4)**
14:15;37:25;41:11,
11
**substantial (1)**
13:15
**substantiate (1)**
27:24
**successful (1)**
15:24
**suffered (1)**
37:19
**suffering (1)**
39:17
**suggested (1)**
18:14
**suggestion (4)**
11:9;28:9,13;30:9
**supervision (1)**

15:25
**supplement (1)**
33:12
**supplementary (1)**
13:6
**support (4)**
9:20;31:24;38:21;
39:19
**supports (1)**
39:20
**suppose (1)**
29:16
**supposed (9)**
6:22;7:7;22:15;
23:19;25:14;32:13,16;
33:24;35:22
**sure (12)**
8:2,24,24;18:1;
20:20;21:22;22:22;
23:15;25:25;26:2,4;
35:21
**survivor (1)**
38:18
**suspect (2)**
22:12;32:17
**sustain (1)**
4:20
**sustaining (1)**
4:25
**sustains (1)**
5:2
**sweeping (1)**
9:10
**Swiss (1)**
24:15
**system (1)**
30:9

**T**

**tactics (1)**
14:20
**talk (1)**
16:19
**talked (1)**
6:20
**talking (4)**
22:13;28:3;31:4;
38:5
**talks (1)**
21:15
**target (1)**
21:23
**tee (1)**
36:21
**telling (1)**
17:18
**tells (1)**
13:13
**terminated (1)**
23:5
**terms (6)**
13:12;15:25;21:17;

35:1,2,16
**testifying (1)**
6:9
**Thanks (2)**
6:18;10:13
**theory (1)**
23:18
**therefore (3)**
21:5;23:23,25
**therewith (1)**
15:3
**third-party (2)**
32:19;33:15
**thirty (2)**
12:17;26:19
**Thomas (1)**
5:13
**though (2)**
3:25;13:2
**thought (2)**
25:18;32:18
**three (5)**
4:17;10:24;26:22;
30:20;33:16
**Thursday (2)**
4:1;6:23
**ticket (2)**
34:1,2
**tiering (1)**
37:14
**tightrope (1)**
23:13
**timeline (1)**
20:1
**times (2)**
15:9,19
**time's (1)**
30:22
**timetable (1)**
19:22
**TOC (3)**
14:22;15:20,25
**today (7)**
6:2;9:8,18,19;10:22;
37:5,5
**Todd (1)**
5:20
**to-do (1)**
13:12
**told (2)**
13:14;39:19
**took (1)**
9:1
**total (3)**
12:5,6,23
**touch (1)**
6:3
**town (1)**
17:25
**tracking (1)**
4:4
**tragic (1)**
37:17

**transparency (1)**
39:6
**transpired (2)**
20:24;21:7
**treated (1)**
21:11
**trial (7)**
5:24;6:24;7:3,18,21;
8:2,9
**trials (1)**
6:19
**tried (1)**
29:20
**Trotter (3)**
10:17;25:15;33:20
**trouble (1)**
19:9
**Trust (49)**
10:17,24;11:6;12:2,
15;13:19,21,25;14:5,6,
8,11,21,23,25;15:2,6,
17;16:1;20:2,17,19,23;
21:12;22:11,22;23:5;
24:24;25:2,3,17,19;
26:13;29:3,12;31:20;
32:2,7,11;33:2;34:7,
19;35:4,19;38:18;39:4,
10,16;40:15
**trustee (43)**
8:16;9:9,13,14,15,
21;10:4,18;13:5;14:3,
7,9;16:3;17:24;18:4,
19,19;19:12,23;20:3,
16;21:22,23;22:5,10;
23:20;25:18;27:11;
28:10,17,21;31:24;
32:5,17,23;33:1,2,11,
25;34:4;35:25;37:11,
23
**trustee's (5)**
11:21;24:6;30:16;
31:10;40:9
**trust's (3)**
14:20;16:16;34:8
**try (3)**
32:5,6;33:12
**trying (12)**
8:1;23:12,14,15;
27:2;28:15;30:8;31:2;
32:2,25;34:24;35:22
**Tubbs (1)**
38:17
**TUESDAY (1)**
3:1
**turn (4)**
5:10;18:22;36:24;
38:12
**turning (1)**
17:24
**turns (1)**
22:10
**twenty-seven (2)**
15:9;27:16

**two (18)**
7:5;11:7,10;13:13;
15:17;18:10;28:13,19,
19,20,22;29:12,17;
30:15;36:12,19;37:5;
40:9
**two-and-a- (1)**
37:15
**two-week (1)**
30:11

**U**

**ultimately (1)**
25:14
**under (2)**
14:23;30:5
**understands (2)**
8:25,25
**understood (1)**
33:3
**UNIDENTIFIED (1)**
8:10
**unless (6)**
4:11;6:1;7:17;29:14,
15;30:15
**unwilling (1)**
29:8
**unwillingness (1)**
29:5
**up (16)**
3:11;4:7;6:21;8:16,
18;9:15;27:7;28:6;
31:13;34:16;36:21;
38:4,6,9;40:2,7
**updated (1)**
12:4
**updates (1)**
12:1
**upon (8)**
4:15,22;7:22;9:2,21;
14:25;23:16;32:20
**urge (2)**
11:17;12:9
**used (2)**
19:11;22:21
**using (1)**
17:14
**usual (2)**
7:25;11:4

**V**

**value (4)**
12:5;32:15,19;33:15
**variety (1)**
16:2
**vendors (1)**
33:16
**Victim (9)**
9:8;10:16,18,24;
12:15;14:24;21:25;
25:17;39:10

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 51
of 52

**victims (22)**
8:19;12:11,13;18:21;
20:19;22:24;23:14;
25:3,5;26:11,13;29:3;
33:3;34:21;37:16,16,
17;38:18,24;39:2,4;
40:19
**victims' (1)**
31:22
**victim's (1)**
31:5
**video (1)**
5:25
**view (6)**
11:4;13:19;23:24;
33:14;36:6;37:4
**violated (1)**
20:21
**virtual (1)**
3:21
**visit (1)**
25:16
**visits (1)**
18:12
**volume (1)**
9:11

**W**

**Wait (5)**
11:20;18:5;31:18;
35:8;40:12
**waiting (3)**
3:16,23;5:7
**walk (1)**
23:12
**wants (2)**
17:25;36:25
**watch (1)**
11:17
**way (10)**
10:23;11:19;23:13,
15;30:17;31:21;34:4;
35:25;36:8;39:23
**website (13)**
11:15,16,21,24;12:8,
12;14:8;28:23;29:13;
30:4;33:10;40:19,22
**weed-like (1)**
38:25
**weeds (1)**
38:23
**week (3)**
6:24;7:16;10:23
**weeks (19)**
11:10;13:13;18:10;
28:13,19,22;29:12,17;
30:15,20,21;36:10,12,
19;37:5,8,12,12;40:9
**Weil (1)**
3:9
**welcome (1)**
18:13

**well-founded (1)**
27:20
**weren't (2)**
26:4;33:12
**what's (5)**
20:24;23:23;27:8;
29:7;33:10
**Whereupon (1)**
41:16
**whole (3)**
13:16;33:10;37:2
**who's (4)**
8:15;12:9;15:11,12
**whose (1)**
22:1
**wide (1)**
26:20
**willingly (1)**
18:20
**Will's (3)**
38:20,21;39:8
**winning (1)**
34:1
**wins (1)**
34:1
**wish (2)**
3:19;40:5
**wishes (2)**
9:15;36:23
**Within (2)**
16:8,8
**without (3)**
26:6,7;35:16
**words (4)**
17:19;19:3;32:12;
40:21
**work (3)**
28:16;30:18;39:2
**works (1)**
6:11
**world's (1)**
19:18
**wrong (5)**
11:1;23:18;25:21;
28:3;33:7

**Y**

**year (3)**
12:17;33:4;37:19
**years (5)**
4:17;11:7;15:17;
28:20;37:16

**Z**

**zero (2)**
13:4;21:6
**Zoom (2)**
6:19;10:11

**1**

**1.5 (2)**
26:21;35:16
**1.5-billion-dollar (1)**
26:15
**10:58 (1)**
41:16
**12287 (1)**
13:5
**13.5 (2)**
23:14;34:20
**13th (1)**
6:22
**16th (1)**
6:23
**1B (1)**
38:20

**2**

**2,500-page (1)**
40:11
**2.2c (2)**
14:12,13
**2.2g (1)**
14:6
**2015 (1)**
37:16
**2018 (1)**
37:20
**2022 (1)**
3:1
**21 (1)**
37:6
**21st (2)**
11:11;37:10
**22 (1)**
13:5
**23rd (2)**
9:1,6
**25 (1)**
13:5
**25- (1)**
40:10
**27th (4)**
7:18;8:3,7;9:3
**29,000 (1)**
12:20

**3**

**30,000 (1)**
12:21

**4**

**43,000 (1)**
12:22
**4th (1)**
11:13

**5**

**5,000 (2)**

30:3;39:5

**6**

**6.1 (1)**
14:23
**6.2 (1)**
14:25

**7**

**7 (2)**
3:1;16:3
**70,000 (2)**
16:24;39:5
**7th (1)**
37:5

**9**

**9.53 (1)**
12:24

Case: 19-30088    Doc# 12495    Filed: 06/08/22    Entered: 06/08/22 10:00:18    Page 52
of 52