*Erica A'Marie Gelsey*

590 Farrington Hwy Unit 524 Box 482 Kapolei, HI 96707 | 808-546-9511 |
dregelsey@outlook.com

RE: Case #19-30088-DM/ Docket# 12440

CAUTION – EXTERNAL:

Please Post to the Courtroom Docket

June 12, 2022



Courtroom 17
450 Golden Gate Avenue
Mail Box 36099
San Francisco, CA 94102

**Dear Judge Montali:**

I am a fire victim of the 2017 Tubbs Wildfire. I currently have two claims with the Fire Victim Trust for personal and business locations in Fountaingrove, California.

I've contemplated the back and forth dialogue between the news outlets and Judge Trotter of the Fire Victim Trust. I decided the only way for you, and the court to know the truth about how the Fire Victim Trust is handling victims and their claims is to hear it as direct testimony from a fire victim. If given the opportunity I would like my letter to be read in court so that the Fire Victim Trust can hear it. I am demanding transparency, disclosure and accountability from Judge Trotter and the Fire Victim Trust.

My attorney originally filed a lawsuit against PG&E in 2018 for my claims. Post bankruptcy the Fire Victim Trust started processing my claim in November 2020, as an "emergency need claim" as of the writing of this letter, almost 2 years later, I still have NO claim determination. In November 2021, my attorney literally begged for my pro rata payment and instead received a payment of $22,500 from 'a made up amount just to get me a check". From which I was loaned $3,300 because I have no determination on my claim.

The Fire Victim Trust gave my claim to Brown Greer, an attorney firm the Fire Victim Trust has contracted with for over $30 million (at last check on the contract details) to process claims. Briefly, I can describe my own first hand experience with MY claim and interaction with Brown Greer, a negative and dehumanizing experience. I know that Brown Greer had my claim from November 2020 thru March 2022.

1. Each and every photo submitted with my claim was back traced thru google photo tracing. I was then accused of using "internet photos" and that my claim was fraudulent for doing so, and at risk of being denied.
2. Each and every page of my insurance claim was reviewed in forensic audit level detail, counter checked with delivery -tracing information, photos, payments, packing slips, amounts paid, amounts not covered by insurance, events in my claim and my life were calendared, scrutinized and compared in virulent and what felt like abusive detail. I had already been raked over the coals by my insurance company. Subjected to unprecedented scrutiny by FEMA, and now I had to go back and compare my claim to city calendars and news articles, creating timelines for Brown Greer. This was unwelcome and unwarranted. I found myself triggered physically and emotionally going thru my experience all over again.
3. Each and every page of my FEMA claim was reviewed in detail, counter checked with the events in my claim and my life, scrutinized and compared in virulent and abusive detail.
4. Each and every corresponding email from Brown Greer began with, "We believe we have identified fraud in your claim…." The emails were informal. We received no formal deficiency notices from Brown Greer, only intimidating emails that made me feel like my claim was on the verge of being flat out denied and each one accused me of being a fraud. With claims processors being located in Virginia, they had no idea the catastrophic conditions we were subjected to, no idea that the circumstances we were put thru were never fluid, and no care that 5 years ago this was MY money taken, and lost from MY own pocket. Our neighborhood was decimated, and yet every single fine detail of my claim was being scrutinized by an attorney group located on the east coast. Why was this group filled with nothing but disdain and suspicion for California fire victims? Who gave them that directive I wonder? Who directed them to treat victims this way? It could only be Judge Trotter.
5. Had I no witnesses to my escape from the fire, I believe the firm Brown and Greer would have denied my claim right away. I believe that this is the directive given to Brown Greer, not to approve claims, but to identify deficiencies that result in flat out denial.
6. The current status of my claim is that it is now with the Fire Victim Trust, and they are asking the same questions all over again. After all this time, I was finally issued a deficiency notice, for something the Fire Victim Trust knows I can't provide. Record and billing from medical treatment obtained from a Kaiser physician at the VA Medical Center

2

for burns. All hospitals were evacuated for several weeks so they know this information does not exist. Yet they have asked several times. We are now trying to get a statement from Kaiser that will pertain to all victims treated at evacuation centers by evacuated medical personnel to finally put this insidious request to rest.

7. The Fire Victim Trust now seems to have taken on the task to find ways to deny my claim. Repeating everything that Brown Greer has done, does not bode well for the bottomline when you are repeating the same tasks you hired another firm to do, just because they couldn't accomplish what the Fire Victim Trust directed them to do, which is eliminate my claim. How many other claims are being subjected to the same scrutiny?
8. Inquiries into your claim status or to ask questions is not allowed. The Fire Victim Trust doesn't speak the victim language, has zero sense of urgency, 'emergency' by definition to the Fire Victim Trust is almost 2 years processing time and counting, as exampled by my claim. The Fire Victim Trust will not return your attorney's calls. Email responses are single shutdown lines such as, "It's under review." Calls to your claims person or Judge Trotter? Forget it. This trust doesn't return calls.
9. I have significant personal injuries from the fire. I have been made to answer- stupid, yes, stupid nit-picking questions by a claims adjuster in Virginia making $1200 an hour. That's more money than I have had for food in the past 6 months.
10. How many millions has the Fire Victim Trust paid to Brown Greer for the purpose of finding reasons to deny a valid claim? That's millions not going to fire victims in need. The amount of time spent on my claim has left me angry and disgusted with this trust.

Transparency- I don't need transparency, I CAN tell you the cost of resources it takes to back trace the hundreds of photos submitted within each of the thousands of claims, and

I CAN tell you the cost of resources to nit pick over insurance and FEMA reporting, to back trace and to redo the work of thousands of people done 5 years ago by insurance companies and FEMA government employees, it takes $149 million, exactly as reported on the Fire Victim Trust April 30, 2022 financial statements. That's where all the fire victim money is going.

Will this court allow the Fire Victim Trust to erase another $200-$300 million from the trust to continue to harass fire victims this way? To allow claims adjusters to perform forensic auditing of each and every claim (except those claims represented by a TOC attorney of course, they've been paid-read on- it gets worse), Or will you order the Fire Victim Trust to follow the simplified process detailed in the Disclosure Documents and Fire Victim Claims expedited processing procedures? Because that's not what has been happening. They are not following that at all.

It took a significant amount of my time over 2 years ago to read over 300 pages of the voting documents before I voted on this trust. I've read the claims procedures and how this trust was to be executed. Victims are afraid to complain, they fear retaliation from the trust.

Judge Trotter either hasn't read these disclosures or was intent on not following them from the start. Fire victims are not treated equal, with dignity, and respect as stipulated in the plan. In fact, Judge Trotter has made a point to pay victims represented by Trust Oversight Committee attorneys first, most receiving a full 45% as of February 2022, and without any claim determination made on any of these claims. See Exhibit A, my letter to the US Justice Trust Oversight which details these matters of conflict of interest. It is very clear that clients of Trust Oversight Committee attorneys were given priority and processed based on Judge Trotters relationships with these attorneys from when they worked at JAMS together for over a decade. My mistake was not being represented by one of his buddy attorneys on the Trust Oversight Committee. I mean I may not have had a determination by now, but I wouldn't care, I'd been paid my full 45% already, based on a number chatted by and between attorney buddies on the Trust Oversight Committee. These attorneys and victims have been paid so fast they don't have determinations and they were never subjected to the 30% medical lien victims face now.

Now lets move on to the trust shortfalls - In PG&E's Disclosure Statement 40662-04, Page 28 of 176, Cash Payments After Effective Date (Exhibit B), states very clearly that in the event of a trust shortfall, "PG&E has agreed to provide a letter of credit for any remaining amounts to be paid to the Fire Victim Trust on January 15, 2022...." So why is the Fire Victim Trust involved in spending Fire Victim Money on lobbyist they did not properly vet? Lobbying for loans thru the State of California, when clearly PG&E has already stipulated to providing a fix to this problem?

The hiring of lobbyists violates the Disclosure Statement as it put the trust at risk to lawsuits, by employing a sexual predator. Why is it this lobbyist wasn't subjected to the Brown Greer probe like what the fire victims are receiving trying to get a claim determination? Judge Trotter happily rights checks in the millions to buddies, yet had Judge Trotter properly vetted this individual he would not have been hired. We would not now have to worry about whether or not he sexually harassed someone on the way to lobbying others in government on the trusts behalf? Someone who could now sue the trust. Only Fire Victims are to benefit from the proceeds of the Fire Victim Trust. So far only Fire Victims are the ones not benefiting from the Fire Victim Trust.

Fire victims have been powerless to be given the simple dignity of being believed in their claims by the Fire Victim Trust. The ash on the ground just isn't enough proof. Having insurance claims and FEMA claims isn't enough. Losing your own money and suffering isn't enough. You have to be homeless, you have to be sick, you have to die, before you get paid. There has been zero communication between fire victims and the Fire Victim Trust for over a year, May 11, 2021 to be exact. Posted on Youtube. There is no disclosure, transparency or communication, there is

4

defensiveness, grand standing and victim shaming by Judge Trotter. Shame on victims for demanding payment to cover a trailer home about to be repossessed. How dare you ask the trust to pay you $2000 to cover that expense!! Shame on victims for going to the news outlets when the Fire Victim Trust does not return ANYONE's calls. The only time Judge Trotter communicates is to respond to complaints and attacks on his salary to the press.

A great example, recently the Fire Victim Trust did not give any warning to fire victims of a blanket medical lien on all payments after February 2022, until a month after the fact, and only because victims spoke to the news outlets, to wit he posted a letter over a month later. In due legal process a lien notice would have been given so that it may be legally challenged. As is the case with this blanket lien, most subjected to the lien deduction did not even have any medical claims and were shocked by the deduction.

Enclosed are my photos. This is my PTSD Fire Dermatitis. Any fire, whether from a fireplace or smoke, high winds or Fire alerts causes me to break out in a painful, blistering bleeding rash all over my body. I don't sleep and I cough all night. I have chronic sinusitis that advances to pneumonia 3-4 times per year. I was exposed for hours to smoke and 80 mph embers burning my skin and path to escape traumatized me. I had to leave California, the state I love, my family and friends, clients because I would die if I stayed in California. I am only one of thousands of victims running out of time.

I appreciate your consideration in taking the time to read my testimony. I hope that your order favors the fire victims. I request that you also order the Fire Victim Trust to follow the simplified claims processing procedures and stop harassing victims, subjecting them to extraordinary auditing processes that are taking years and costing millions, like my claim. This, among other issues must be corrected to allow fire victims to move on and heal from their own tragedies caused by a criminal corporation. We didn't need a criminal Fire Victim Trust in addition to what we have been thru, enough is enough.

Sincerely,

*Erica Gelsey*
Erica Gelsey
Tubbs Fire Victim

Exhibits and Photographs

5

EXHIBIT A
Letter to US Justice Trust Oversight
(Excludes attachments)

6

Erica A'Marie Gelsey
590 Farrington Hwy
Unit 524 Box 482
Kapolei, HI 96707
808-546-9511
dregelsey@outlook.com

May 30, 2022

TIFFANY CARROLL
ACTING UNITED STATES TRUSTEE (REGION 15)
880 FRONT STREET THIRD FLOOR, SUITE 3230
SAN DIEGO, CA 92101
Phone: 619-557-5013 619-557-5013 Fax: 619-557-5339 619-557-5339

ABRAM FEUERSTEIN, ASSISTANT U.S. TRUSTEE
880 FRONT STREET THIRD FLOOR, SUITE 3230
SAN DIEGO, CA 92101
Phone: 619-557-5013 619-557-5013 Fax: 619-557-5339 619-557-5339

RAMONA D. ELLIOTT, ACTING DIRECTOR
441 G STREET, NW, SUITE 6150
WASHINGTON, DC 20530
Phone: 202-307-1391 202-307-1391 Fax: 202-307-0672 202-307-0672

**Investigation Request**
**United States Trustee Program**
**PG&E Fire Victim Trust**
**PG&E Bankruptcy Case No. 19-30088 (DM)**

Ladies and Gentlemen,

The purpose of this letter is to request that the United States Trustee Program investigate the administration and management of the PG&E Wildfire Victims Trust in accordance with 28 U.S.C. § 586 and 11 U.S.C. § 101, et seq. Investigation is thereby requested by forensic audit.

Please be advised that I am not an attorney. I am a PG&E Fire Victim of all the fires listed in the PG&E Fire Victim Trust (Fire Victim Trust). I have submitted claims for both personal and business for the 2017 Northern California Fires.

By submitting this Request for the United States Trustee Program to investigate, I hope to compel you to move forward based on the information contained herein and other testimony I can provide as a fire victim.

My request is based on stipulations filed with the US Bankruptcy Court Case No. 19-30088 (DM), and information I have collected because of conversations with other fire victims. Based on a review of this information I assert the following:

1. Several stipulations have been filed by William B. Abrams concerning the enforcement of disclosure requirements of the PG&E Fire Victim Trust. Mr. Abrams gave the court evidence of self-dealing and TOC conflict of interest. See Attached Exhibit A.

2. Conflict of interest by members of the oversight committee requires further investigation. Based on an informal polling by myself on Facebook, as a member of the community *Wildfire Victims Settlement Discussion Group* it is evident that fire victims represented by firms serving on the TOC have been give unprecedented bias. Not only in terms of shortened claims processing timelines, but these clients have also been issued multiple tier payments *WITHOUT* a claim determination. This violates the Fire Victim Claims Resolution Procedures filed with the US Bankruptcy Court Case No. 19-30088. See Attachment Exhibit B.

   ***Steven J. Skikos, Esq. Skikos, Crawford, Skikos & Joseph, LLP*** *have an extensive history with Judge Trotter, Trustee at JAMS (a mediation and arbitration group located in California), Skikos clients have benefited from multiple payments without claims determinations and rapid claims determination turnaround.*
   - *Cheryn Tibbitts has stated that she is represented by Skikos, has received multiple payments without a claim determination.*
   - *Rosie Smith has stated that she is represented by Skikos, has received multiple payments without a claim determination.*
   - *Pam Beauchamp has stated she is represented by Skikos, has received multiple payments without a claim determination. She notified the group she finally received her claim determination yesterday, April 18, 2022.*
   - *Valerie Drouillard has stated she is represented by Skikos, has received multiple payments without a claim determination.*
   - *Kathy Tucker Demaree has stated that she is represented by Skikos has received multiple payments without a claim determination and was told by her attorney not to claim payments on taxes until they received their determination.*

   ***Gerald Singleton, Esq. Singleton Law Firm*** *also have an extensive history with Judge Trotter, Trustee at JAMS, Singleton Law Firm clients have benefited from multiple payments without claims determinations and rapid claims determination turnaround.*
   - *Joyce Piercy has stated that she is represented by Singleton, has received multiple payments without a claim determination.*

- *Ziggy Daniels has stated that she is represented by Singleton, has received multiple payments without a claim determination, and was told by Singleton that he would not receive a 1099 for these payments until he had a claim determination.*
- *Delsin Wood has stated that he is represented by Singleton, has received multiple payments without a claim determination, and was told by Singleton that he would not receive a 1099 for these payments until he had a claim determination.*
- *Roxanne Renee Maxfield Stated that she is represented by Singleton, has received multiple payments without a claim determination.*
- *Rosie Smith has stated that she is represented by Singleton, has received multiple payments without a claim determination.*

*Et. Al The Facebook Wildfire Victims Settlement Discussion Group is limited access to fire victims with active claims with the Fire Victim Trust. As of this writing there are over 5,400 subscribers to this channel on Facebook. My poll netted a response from over 1,200 participants of which 93% are represented by attorney firms on the TOC. Only 2% had received claim determinations. None had received claim determinations prior to payments, and only one received a claim determination during the poll.*

**It only takes one incident of conflict of interest for there to be a conflict of interest.**

3. There is no communication or disclosure by and between the Fire Victim Trust and the fire victims. The benefactors of the trust. The last status updates directed to the fire victim audience was made via video, posted on YOUTUBE, 11 months ago on May 17, 2021. Almost a year ago as of the date of this letter. Not every fire victim would see this video, because a lot of fire victims are still homeless, living in tents without the benefit of WIFI. There is a very serious DISCLOSURE PROBLEM. THERE IS ABSOLUTELY NOT COMMUNICATION WITH THE FIRE VICTIMS TRUST TO VICTIMS.

4. The accounting of the Fire Victim Trust has been under scrutiny for over a year now with many televised news accounts of Fire Victim Trust mishandling of the Fire Victim Trust. This includes the fact that Trotter, the Trustee and Co-Trustee were receiving pay on a per hour basis, when it was stipulated, they would be paid by flat sum per month. This was later corrected from $1500 per hour to a flat $125,000 per month as reported by media outlets.

There is also a stipulation filed by an independent accountant who identified a $12 million dollar discrepancy in the latest financial statement of the Fire Victim Trust, see Exhibit C. This stipulation was all but swept under the rug and ignored.

5. The Fire Victim Trust has hired an attorney firm Brown Greer PLC to process claims. The Fire Victim Trust has never published the scope of work and guidelines provided to Brown Greer PLC as the manner to which they will follow to process fire victim claims.

*I will attest to my personal experience with Brown Greer PLC thus far.*

*I am represented by Arsen Sarapinian, Arsen Sarapinian Attorney, who does not serve on the TOC. I submitted both a personal and business claim because of losses, emotional and physical injury during and after the 2017 Tubbs Fire. Due to the complexity of my claims, it seems that my claim was transferred to Brown Greer PLC for processing.*

- *All correspondence by and between the Brown Greer firm and my attorney has been by informal emails. No communication, no deficiency notices, no determination notices have been issued. My claims have been under review since November 2020. In August 2021, my attorney requested my claim be expedited due to my medical condition because of the fires.*
- *EVERY SINGLE EMAIL FROM BROWN AND GREER attempts to paint some sort of picture of FRAUD. This has been the case for many claims filing stipulations with the court. Brown and Greer PLC processes each claim like an insurance audit. Each photo I submitted with my claim was back searched thru Google photos. Each request has included what I define as 'nit picking' questions such as from page 114 of your insurance policy paperwork…. That I have had to go thru repeatedly. To learn that individuals from other TOC law firms have received multiple payments without so much as an email from a claim's person infuriated me.*
- *Brown Greer PLC has asked for multiple data, multiple times. It is a witch hunt whereby I am being held to a different standard of review then those represented by TOC law firms. The Fire Victim Trust will not publish what that review is, because they never published the scope of services being performed by Brown Greer PLC.*
- *When I complained, Brown Greer PLC issued a check to my attorney based on a number thrown out in the wind. $75,000 emotional distress was listed, with a check being issued for $22,500 on November 12, 2021. My attorney deposited the check but did not allow me to access the funds since there was no claim determination, he is holding onto the funds. See Exhibit D.*

### I considered this payment as hush money.

Based on the review of my case alone, at over a year in Brown Greer's claim review process, I am losing hope that I will ever see a claims determination. Brown Greer's vigilance to find fraud in numbers that represent money **taken out of my pocket** during and after the fires is clear. Their treatment of victims by making threatening statements such as "We believe we

have found fraud." "Your client may not be entitled to a claim due to fraud" and other such statements are preposterous as I meet all the requirements of the Fire Victim Trust claims approval process. But what of the Brown Greer PLC unwritten claims process? The Fire Victim Trust states nothing about the 'use of internet photos' being a violation of the trust claims process, yet multiple people, including businesses have had their claims flat out denied for use of internet photos? What else are you supposed to use when we have submitted our photos to social media, news media, newspapers, and/or our photos and phones were burned during the fires? I had to submit more photos, badly damaged photos, written witness testimony to prove this happened to me. All the while not knowing that other victims were being paid multiple times because their attorneys serve on the TOC.

There has been no help for fire victims in this bad deal we have been handed. Even our state senators have attempted to have the Attorney General, buddy of Newsom, investigate and he refused.

So, I place our fate, as one victim in your hands. As I live off advances and deal with a PTSD Fire Rash that is chicken pox all over my body, disables me. I am bullied and treated with no dignity by Brown Greer PLC. None of us as victims know what the Fire Victims Trust is doing, as we never have updates.

I could write over 50,000 names here of adults and children, most still living in poverty, homeless, including myself, begging for an advance from our attorneys. Begging for some word from the Fire Victim Trust, whose trustees had made more in a short eight months, than I will ever see from my claim.

Feel free to use my name. As for the others listed herein, they were informed during the poll that I would be writing you and the individuals listed agreed to help and have their names posted.

Based on the cursory information I have provided; I believe that you have a judicial responsibility to the thousands of fire victims to investigate the PG&E Fire Victim Trust.

**Very truly yours,**

**Erica A'Marie Gelsey**

**Exhibits Attached**

# Exhibit A
Stipulations by William B. Abrams

# Exhibit B
Fire Victims Claims Resolution Procedures

# Exhibit C
Stipulation Independent Audit Discrepancies

# Exhibit D

My Hush Money-Not received by me.

EXHIBIT B
Excerpt PG&E Disclosure Statement

7

 
| | |
|---|---|
|14| may range from months and perhaps years. In addition to a delay in distributions, failure to meet this legislative deadline could provide significant risks for holders of Fire Victim Claims that may arise as a result of any wildfires during the 2020/2021 fire seasons.|
|15| |
|16| Amount: The Plan provides for $13.5 billion in nominal value to be distributed to the Fire Victim Trust. In the event that the Plan is not approved, it is not known how much would be set aside or available for Fire Victim Claims|
|17| |
|18| ***Significant Claims Asserted Against the Fire Victim Trust.*** A number of governmental entities, including FEMA and Cal OES as described above, have filed claims against the Debtors for large or unliquidated amounts that, if Allowed, would be payable from the Fire Victim Trust (the "**Government Claims**"), including the Federal Agency Fire Claims and the State Agency Fire Claims. The asserted Government Claims are in the approximate total amount of $7.7 billion. Similarly, certain businesses have filed claims against the Debtors for large or unliquidated amounts that, if Allowed, would be payable from the Fire Victim Trust (the "**Business Claims**"). For example, Adventist Health System/West and Feather River Hospital have filed claims seeking over $1 billion.|
|19| |
|20| |
|21| |
|22| |
|23| As noted above, the Plan Proponents have reached tentative agreements in principle to settle the Federal Agency Fire Claims and the State Agency Fire Claims that are channeled to the Fire Victim Trust under the Plan, however, to the extent the agreements are not finalized, and the Government Claims and the Business Claims become Allowed Fire Victim Claims, the payments to other holders of Fire Victim Claims could be substantially reduced.|
|24| |
|25| |
|26| |
|27| ***Potential Change in Value of Common Stock of Reorganized PG&E Corp.*** As set forth above, the Fire Victim Trust will be funded with approximately $6.75 billion in common stock of Reorganized PG&E Corp. valued in accordance with the terms of the Tort Claimants RSA. The market|
|28| |

Case: 19-30088   Doc# 6353   Filed: 03/17/20   Entered: 03/17/20 19:04:57   Page 30 of 176

---

40662-04                                                                                                          28

| | |
|---|---|
|1| value of that common stock may fluctuate due to a variety of factors, including, but not limited to: (i) the risk of additional wildfires, (ii) general market and economic conditions and (iii) actual or anticipated changes in operating results. These factors could cause the market value of common stock in Reorganized PG&E Corp. to increase or decrease, and those changes in price could have a substantial effect (both positively or negatively) on the assets of the Fire Victim Trust. As set forth more fully in Section III.A above, the Plan contemplates the Debtors participating in the Go-Forward Wildfire Fund created pursuant to AB 1054, which may reduce Reorganized PG&E's liabilities for future wildfires occurring after July 12, 2019. While there are no limitations on the Fire Victim Trust selling its stock under the applicable corporate documents, the ability of the Fire Victim Trust to do so may be limited by applicable securities laws or contractual provisions, such as those that may be found in a registration rights agreement. If the Fire Victims Trust is considered an "affiliate" of Reorganized PG&E or the common stock is deemed to be "restricted" within the meaning of applicable securities laws, then sales of common stock by the Fire Victim Trust must be registered for resale under applicable securities or sold in accordance with certain time, volume and manner of sale limitations. Furthermore, the Fire Victim Trust may take steps to mitigate its exposure to fluctuations in the market price of Reorganized PG&E Corp. common stock. However, there is no assurance that the Fire Victim Trust will be able to enter into arrangements that fully protect the value of the common stock consideration it is to receive under the Plan.|
|2| |
|3| |
|4| |
|5| |
|6| |
|7| |
|8| |
|9| |
|10| |
|11| |
|12| ***Administrative Expense Claims and Non-Fire Claims.*** It is not possible to fully quantify the aggregate amount of Administrative Expenses payable by the Debtors, such as any claims arising from the Kincade Fire, Public Safety Power Shutoffs, as well as certain General Unsecured Claims and subordinated claims either related to securities fraud claims or otherwise. To the extent these claims are not paid or reserved for on the Effective Date, they could negatively affect the value of the Reorganized PG&E Corp. common stock held by the Fire Victim Trust, which could reduce the amount of Cash ultimately available to distribute to the holders of Fire Victim Claims.|
|13| |
|14| |
|15| |
|16| ***Cash Payments after Effective Date.*** Under a Tax Benefits Payment Agreement[7] contemplated by the Plan, the Reorganized Debtors have agreed to pay the Fire Victim Trust $650 million on or about January 15, 2021 and another $700 million on or about January 15, 2022, subject to acceleration in certain circumstances. These payments relate to certain tax benefits that the Reorganized Debtors would have otherwise received for net operating losses, deductions arising from the payment of Fire Victim Claims and otherwise. To the extent there is a shortfall, Reorganized PG&E has agreed to provide a letter of credit for any remaining amounts to be paid to the Fire Victim Trust on January 15, 2022. To the extent that the aggregate amount of these payments does not equal $1.35 billion, Reorganized PG&E has agreed to a stipulated judgment for any difference. In the event there is a change in control of the Reorganized PG&E or the Reorganized Utility obtains financing of the tax benefits, the full $1.35 billion will be due and payable to the Fire Victim Trust. While there are protections that have been negotiated for Reorganized PG&E's failure to make such payments, there is risk of non-payment either by way of future wildfires or general underlying credit risks.|
|17| |
|18| |
|19| |
|20| |
|21| |
|22| |
|23| |
|24| 2.     **Subrogation Wildfire Claims.** On the Effective Date, the Subrogation Wildfire Trust will be established to administer, process, settle, resolve, liquidate, satisfy and pay all Subrogation|





**USPS PRIORITY MAIL FLAT RATE ENVELOPE**
TRACKED • INSURED
ONE RATE • ANY WEIGHT

EP14F May 2020
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

**RECEIVED**
JUN 15 2022
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
**See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**PRIORITY MAIL 3-DAY™**

US POSTAGE PAID
06/13/2022

ERICA GELSEY
5190 FARRINGTON HWY
UNIT 524
KAPOLEI, HI 96707-2034

JUDGE MONTALI
FEDERAL BANKRUPTCY COURTROOM 17
450 GOLDEN GATE AVE
MAIL BOX 36099
SAN FRANCISCO CA 94102-3651

USPS TRACKING #

9405 5036 9930 0271 4243 37

Electronic Rate Approved #038555749

