1  BROWN RUDNICK LLP
   David J. Molton (SBN 262075)
2  (DMolton@brownrudnick.com)
   Eric R. Goodman (admitted pro hac vice)
3  (EGoodman@brownrudnick.com)
   Seven Times Square
4  New York, New York 10036
   Telephone:    (212) 209-4800
5  Facsimile:    (212) 209-4801

6  BROWN RUDNICK LLP
   Joel S. Miliband (SBN 077438)
7  (JMiliband@brownrudnick.com)
   2211 Michelson Drive, Seventh Floor
8  Irvine, California 92612
   Telephone:    (949) 752-7100
9  Facsimile:    (949) 252-1514

10 *Attorneys for Fire Victim Trustee*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION** <br><br>         -and- <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br>         **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ■ Affects both Debtors <br><br> *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br> Lead Case, Jointly Administered <br><br> **NOTICE OF FILING OF LETTER TO FIRE VICTIMS ON BEHALF OF THE FIRE VICTIM TRUST** |

TO FIRE VICTIMS AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE that The Honorable John K. Trotter (Ret.) in his capacity as the Fire Victim Trustee, has filed a letter to Fire Victims (the "**Trustee Letter**"), which is attached hereto as Exhibit A. The Trustee Letter also will be posted on the Fire Victim Trust Website at www.firevictimtrust.com.

DATED: June 21, 2022                    BROWN RUDNICK LLP

By: /s/ Eric R. Goodman
Eric R. Goodman (admitted pro hac vice)
(EGoodman@brownrudnick.com)
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:    (212) 209-4800
Facsimile:    (212) 209-4801

and

Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone:    (949) 752-7100
Facsimile:    (949) 252-1514

*Attorneys for Fire Victim Trustee*

EXHIBIT "A"



June 21, 2022

Dear Fire Victims:

As we approach the two-year anniversary of the creation of the Fire Victim Trust, I would like to share with you some history regarding its creation, its development, and a brief explanation of its status today.

The Trust was created after PG&E caused several fires, which damaged thousands of homes and devastated the lives of thousands of Californians. In order to resolve the potential costs of that damage, PG&E declared bankruptcy.

The Bankruptcy Court, faced with claims from not only fire victims but also from the insurers of those individuals along with claims from the federal and state entities that incurred costs fighting those fires and supplying financial aid to the victims, created two trusts. In one was channeled all of the insurance companies' claims, and in the other all of the fire victims' claims, including the federal and state agency claims. The insurance trust received $11 billion in cash to satisfy its claim of having paid $16 billion to its insureds and for maintaining an additional $4 billion in reserve. The Fire Victim Trust was funded with an oft-stated value of $13.5 billion, to be half in cash and half in new company PG&E common stock. The Plan was submitted to you for a vote and was approved by more than 85% of those who voted. PG&E emerged from bankruptcy on July 1, 2020. The $6.75 billion in cash was paid. With respect to the stock consideration, 478 million shares of PG&E stock were delivered to the Fire Victim Trust in accordance with an agreed-to formula under the Plan. At the time of that delivery, the stock was trading at approximately $9 per share. That price created a shortfall of approximately $2.4 billion less than expected, and it has lingered between $10 and $12 and closed at $9.78 as of Friday, June 17, 2022.

The Trust is a legal entity controlled by its constitutional documents, the Bankruptcy Plan, Confirmation Order, and the Trust Agreement. Section 1.2 of the Trust Agreement enumerates the Trust's purposes:

1. To assume liability for certain claims;
2. To evaluate and pay those claims on a *pro rata* basis;
3. To prosecute all assigned rights and causes of action given to the Trust; and
4. To preserve, hold, manage, monetize, and maximize the Trust's assets for use in paying the claims enumerated above.

It also provides, under Section 2.2 (General Administration), specifically subsection Section 2.2(g), the following:

> The Trustee shall publish information on the Trust Website as he deems prudent in his sole discretion. The Trustee has no obligation to provide, and Beneficial Owners have no right to receive, information regarding the operation of the trust except as provided in Section 2.2(c) above [The Annual Report].

In keeping with the Trust's directions, I will provide an update and practicable review of our activities for each of its stated purposes.

1. **To evaluate and pay claims on a *pro rata* basis**

When PG&E emerged from bankruptcy and the Trust was created, my Claims Administrator and I were its only employees. Together we began to create a system designed to allow 70,000 fire victims to make claims. It took time to build a comprehensive technical infrastructure capable of receiving, reviewing, and valuing the 250,000 unique claims asserted by those fire victims. To date, among others, we have received over 19,000 personal injury claims, over 400 death claims, in excess of 100,000 emotional distress claims, over 20,000 claims for loss of income, and over 38,000 real and personal property claims, which include the value of loss of vegetation and the cost of tree replacement.

We immediately hired the claims processing firm BrownGreer, who over time has dedicated more than 500 employees to the task of receiving, reviewing, and valuing these claims. We first had to create the electronic form to be used by all victims for their submissions. We began accepting claim forms in mid-August 2020. However, the vast majority of claims were not submitted or received until late 2020 and early 2021. In March 2021, we established values regarding the damage claims, *i.e.*, the reasonable cost of rebuilding in different areas, the range of values of lost trees, the appropriate considerations in determining the value of an emotional distress claim. We further determined to value each claim individually rather than having a schedule of values. We began to issue Determination Notices, which informed the Claimants what the value of their claims were. Because of the uncertainty regarding the number and value of outstanding claims and the unknown value of the stock, our economic advisors recommended an initial *pro rata* payment of 30% of the value determined. In the fifteen months since March 2021, we have issued approximately 30,000 Determination Notices on claim forms comprised of over 150,000 individual claims. The aggregate awards to victims total almost $10 billion. Since we now know more about the potential value of outstanding claims, our economists' expectations have allowed us to increase the *pro rata* percentage to 45%, which means that we have now authorized payments to victims totaling $4.5 billion.

Additionally, early on we recognized there were many victims in dire circumstances who needed relief more quickly than the claims process could provide. We then created the Preliminary Payment program. It requires a victim to merely identify themselves as a victim and prove that they have an eligible claim pending. The payment acted as an advance on their ultimate award. To date, 34,000 victims have received almost $900 million in advanced payments.

As of this writing, we have issued Determination Notices on nearly 70% of all claim forms. Each claim has been touched, and a portion of the remaining claims need additional information and proof.

2. **To prosecute all assigned rights and causes of action given to the Trust**

In addition to cash and stock, the Trust was also given the rights PG&E had to prosecute certain lawsuits in order to increase the corpus available to pay claims. Suits against entities who had

contracted with PG&E to perform vegetation management have been filed regarding different Fires. Those cases have now been consolidated into a master case that is actively proceeding. The lawyers prosecuting those cases on behalf of the Trust were retained pursuant to an open and public request for proposal and interview process. They will be paid only from any recovery they achieve for the Trust, so no Trust money is used to pursue these claims.

Other potential claims against large institutional third parties were assigned but with little information regarding their viability. Two law firms were hired, again after a request for proposal process, to explore and discover the potential of each and to estimate the potential cost of litigation to the Trust. They have concluded their review and have provided the Trust with legal advice as to the prosecution of claims. Any further public disclosure may be harmful to the Trust, in that it may provide information to potential defendants.

A third lawsuit against the former PG&E directors and officers is also being prosecuted. The case is hotly contested with much discovery and motion practice by the defense. The potential recovery against the defendants is limited to PG&E's available insurance policy limits.

### 3. To preserve, hold, manage, monetize, and maximize the Trust's assets

With regard to monetization, the Trust has hired Morgan Stanley to handle its cash assets with investments in Trust-required governmental instruments. We also have employed Morgan Stanley to handle two separate sales of stock, one in January 2022 of 40 million shares and another in April 2022 of 60 million shares, for a net recovery of $1.2 billion. The Trust still owns 377 million shares of PG&E stock, and we confer regularly with our financial advisors as to its status.

When the Trust was created and vested with the shares of PG&E, the stock was valued at approximately $9. While the Trust was mandated to monetize (sell) the stock, there was no provision protecting the Trust from the imposition of a capital gain tax on any profit above that $9 price. The U.S. and California capital gains tax rate are combined in excess of 40%. The Trust's lawyers, Brown Rudnick, worked tirelessly to solve this dilemma. After a detailed and technical IRS process, the Trust was able to benefit from a private letter ruling from the IRS that effectively removed all capital gain tax issues. This enhanced the Trust's assets by avoiding a tax on the prior sales that would have cost in excess of $100 million in taxes.

Brown Rudnick also was charged with the responsibility of representing the Trust in a case where certain claimants challenged the insurance deduction provision in the Trust Agreement. The claimants sought the right to abandon all reasonable efforts to recover from their insurance carriers and, instead, recover funds from the Trust that would otherwise be paid to other fire victims. The potential harm to fire victims and the workings of the Trust was readily apparent. Brown Rudnick prevailed both at the trial court level and more recently was victorious on appeal before the Ninth Circuit. If lost, the case would have dramatically changed the operation of the Trust and adversely affected the claims process.

We also are trying to maximize our Trust assets by engaging with the State of California for some type of loan, or other instrument, which allows us to complete and increase our *pro rata* payments without having to sell more shares into a down market. I think it is not appropriate to go into more

detail at this time since we have only started our discussion. We have hired a lobbyist to assist us in these discussions.

### Transition Announcement

Finally, it has been my honor and privilege to serve as the Trustee of the Fire Victim Trust since its formation on July 1, 2020. When I came out of retirement to accept this position, I promised my family I would serve for only two years. Since that time has come, I therefore will be resigning as Trustee at the close of business on June 30, 2022. Notice of my resignation was provided to the Trust Oversight Committee on March 29, 2022, in accordance with Section 5.2(b) of the Trust Agreement, and will be filed with the Bankruptcy Court in the coming days.

Throughout these past two years, we have devoted our fulltime attention to addressing the financial and other hardships of thousands of deserving fire victims. As stated above, progress has been made, but there is still more to be done. An excellent administrative team is in place, and during the past several months we have been working on a smooth transition. Claims processing will proceed without interruption and fire victims and their counsel can count on the transition being seamless.

Effective July 1, 2022, Ms. Cathy Yanni will become the new Trustee. Ms. Yanni will succeed me as Trustee in accordance with the terms of Section 5.2(d) of the Trust Agreement. In her previous role as Claims Administrator, Ms. Yanni assisted with Trust administration and directly oversaw fire victim claims resolution, including design and implementation of the claims resolution process, from establishing eligibility requirements and claims review procedures to ensuring that funds are distributed in a fair and equitable manner. She also served Fire Victims as the Administrator of the Wildfire Assistance Program. Previous to her work on behalf of Fire Victims, Ms. Yanni settled tens of thousands of cases, facilitated distribution of billions of dollars in settlement funds to Claimants, and oversaw multiple claims resolution processes. There is no one better positioned than Ms. Yanni to complete the Trustee's mandate and serve your interests. You may find more information on Ms. Yanni at the Fire Victim Trust's Website.

Finally, thank you for the opportunity to serve as the Trustee of the Fire Victim Trust these past two years. It has been a great honor and, as I now prepare to turn the page to my retirement, I wish you all the very best.

Very truly yours,

Justice John K. Trotter (Ret.), Trustee