1          UNITED STATES BANKRUPTCY COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4   In Re:                    ) Case No. 19-30088
                              ) Chapter 11
5   PG&E CORPORATION AND PACIFIC )
    GAS AND ELECTRIC COMPANY   ) San Francisco, California
6                              ) Friday, July 8, 2022
                     Debtor.   ) 10:15 AM
7   _____ )
                                  ORAL RULING ON OBJECTIONS TO
8                                 CLAIMS OF TODD GREENBERG
                                  [9455]
9
                    TRANSCRIPT OF PROCEEDINGS
10         BEFORE THE HONORABLE DENNIS MONTALI
               UNITED STATES BANKRUPTCY JUDGE
11
    APPEARANCES (All present by video or telephone):
12  For the Debtor:           JENNIFER L. DODGE, ESQ.
                              Law Offices of Jennifer L. Dodge
13                            Inc.
                              2512 Artesia Boulevard, Suite 300D
14                            Redondo Beach, CA 90278
                              (310)372-3344
15
    For Todd Greenberg:       RICHARD A. LAPPING, ESQ.
16                            Trodella & Lapping LLP
                              540 Pacific Avenue
17                            San Francisco, CA 94133
                              (415)399-1015
18
    Court Recorder:           LORENA PARADA/ANKEY THOMAS
19                            United States Bankruptcy Court
                              450 Golden Gate Avenue
20                            San Francisco, CA 94102
21  Transcriber:              RIVER WOLFE
                              eScribers, LLC
22                            7227 N. 16th Street
                              Suite #207
23                            Phoenix, AZ 85020
                              (973)406-2250
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, FRIDAY, JULY 8, 2022, 10:15 AM

2                                -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session, the Honorable

5    Dennis Montali presiding.  Calling the matter of PG&E

6    Corporation.  I'll bring Counsel in now, Your Honor.

7            THE COURT:  All right.  Good morning.  May I have

8    appearances, please?  Ms. Dodge.

9            MS. DODGE:  Yes.  Jennifer Dodge on behalf of

10   reorganized debtor, Pacific Gas and Electric Company.

11           THE COURT:  Mr. Lapping.

12           MR. LAPPING:  Good morning, Your Honor.  Richard

13   Lapping on behalf of Todd Greenberg.

14           THE COURT:  Okay.  One second here.  I don't see Mr.

15   Greenberg's name on the list, unless he's the phone call.

16           MR. LAPPING:  He's the phone call.

17           THE COURT:  Okay.  All right.  All right.  So I called

18   you today for this hearing to give an oral ruling on the matter

19   that was tried last week.  So I'm going to just make some

20   statements that are obvious and not controversial, but I'm

21   going to make it for the record and to establish the context.

22           So there was a trial on June 27th on PG&E's objection

23   to Mr. Greenberg's claim, claim number 77335, that was amended

24   subsequently to claim number 108542.  And in the amended

25   amount, that was a claim for $123,456.74.  And of course, it

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   pertains to Mr. Greenberg's dispute with PG&E over the loss of

2   power at his home in Fairfax, and it has nothing to do with

3   other claims objections that are against PG&E and that are

4   being dealt with elsewhere.

5           So I've stated the trial was on June 27th after the

6   matter was submitted.  I decided to make an oral ruling under

7   the provisions of Federal Rule of Bankruptcy Procedure

8   7052(a)(1) following a bench trial.  An oral ruling that

9   contains findings and conclusions is permissible.  And in my

10  narrative that follows, the statement and the recitals will, in

11  fact, be the findings and conclusions on the record.  I don't

12  intend to do any separate statement of findings or conclusions

13  because that is not required under the rule.

14          And what I'm going to explain in a moment, and explain

15  in my reasoning, I've come to the conclusion that PG&E's

16  objection should be sustained, and Mr. Greenberg's claim, as

17  amended, should be disallowed in its entirety.  I'll explain

18  myself hopefully fully.  Many of the facts, of course, are not

19  contested, but I'm restating some of them for context and

20  completion of the record.

21          Mr. Greenberg and his family owned property in

22  Fairfax, California at 47 Bolinas.  In relevance to that

23  property, there are two units, the lower of which is where Mr.

24  Greenberg previously resided and where the incident that is the

25  subject of this trial occurred.  Next door to his home or his

PG&E Corporation and Pacific Gas and Electric Company
place at 47 Bolinas is 31 Bolinas, which is a real property
owned by someone else and who has various business tenants.
And what's, of course, the relevance, you all know this, that
beginning at least in December of 2015 -- and perhaps earlier;
it's not important -- PG&E began significant electrical upgrade
and other kind of related work at 31 Bolinas, and to reconnect
the needs of the -- excuse me, the electrical needs of the
parties at that location. And they were not -- PG&E was not
engaged in any activity at 47 Bolinas.

Mr. Greenberg and the subject of his damage claim is
what was then a twelve-year-old refrigerator that failed during
a window of time between February 14th and February 22nd, 2016.
There is no dispute the immediate cause of the failure was the
burnout or the failure of a compressor starter assembly that
Mr. Greenberg believes was caused by PG&E or its contractor on
the job at 31 Bolinas of Veterans Power and that that caused
the compressor to fail, and that led to the damages that I will
refer to.

Mr. Greenberg promptly after that, I believe it was
February 25th, engaged a company called the refrigerator doctor
or the Appliance Repair Doctor, excuse me, who repaired the
compressor for a charge of $288.51 that was paid to the Repair
Doctor by Mr. Greenberg's home warranty provider. And the
refrigerator since then, presumably, has been operating, or if
it hasn't been, it's not relevant.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    I'm going to come back in a few moments to the

2  components that I've considered.  And let me say, as I stated

3  at the outset, I've concluded that PG&E is not culpable and the

4  claim needs to be disallowed.  But if for some reason my

5  decision is reversed if there is an appeal, I think it's useful

6  to find and to state at least my interpretation of the facts

7  and the findings and what amounts to what might have been a

8  damage claim, were I to determine otherwise and hold PG&E

9  culpable.

10    So the key issue obviously is did PG&E or its

11  contractor cause the failure of the compressor in such a way

12  that it's liable, and the conclusion that I reached, or excuse

13  me, the finding that I reached and therefore the legal

14  conclusion is no.  No, it did not.

15    First of all, during the critical period, the eight

16  days in February of 2016 that I mentioned, there was simply no

17  outage at all at the location, outage in the sense of power

18  going out the way we all understand it, if there is a blackout

19  or the power goes out in the neighborhood or at a location, and

20  there was none.

21    And so whether the fact that there was some outage

22  some weeks later in connection with work at 31 Bolinas is

23  ultimately, in my opinion, no relevance.  The problems at 31

24  Bolinas included anticipated outages, but none prior to

25  February of 2016.  And in fact, later in March and finally in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   April, there was scheduled outages or interruption to power

2   that did not affect Mr. Greenberg or his refrigerator.

3          So the question comes down to whether there were

4   something short of an outage, a fluctuation or something in the

5   delivery of power that would have caused the damage that Mr.

6   Greenberg reported and experienced.  Again, I don't deny that

7   he experienced the problem.  It only turns on causation here,

8   in my opinion.

9          So that in turn then leads me to decide whether PG&E

10  or through its agent Veterans Power was culpable in some way.

11  I spent time -- although it hasn't been a long time since we

12  had the trial, I nevertheless went through Exhibits I through O

13  and S through EE, and I find no specific evidence or indication

14  to support the conclusion that PG&E or Veterans Power caused

15  any such fluctuations.

16         What I find perhaps most convincing, in addition to

17  reviewing the absence of proof in those exhibits, is the

18  testimony of Dustin Dear and his explanation of the situation

19  with fuses and the three-line phasing that was part of the work

20  being done at 31 Bolinas.  There was indeed some reference

21  communicated to PG&E from Veterans Power -- or it's not

22  relevant who communicated.  There was a colloquy at some point

23  that Mr. Dear described on March 16th, 2016, having to do with

24  fuse situation.

25         But it was not established from the evidence that that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   problem, first of all, that it caused any disruption or

2   interruption or fluctuation in those eight days in February

3   that I described.  And in fact, I find and come to the factual

4   determination that, based upon the presence of what Mr. Dear

5   described as the loop and the explanation of the redundancy of

6   looping in the circuitry, even a fuse failure wouldn't have

7   caused an interruption or distortion in the power because of

8   the way of the so-called loop system.

9        So I'm convinced that that leads me to the conclusion

10  that there is simply nothing to support the finding that Mr.

11  Greenberg and his counsel would have me made, the no-proof of

12  the cause.  So that leads me to the conclusion that PG&E cannot

13  be liable because the notion that -- the burden is on Mr.

14  Greenberg to show that, but he has not shown that --

15  notwithstanding his experience and the fact that the

16  refrigerator failed during those eight days that I describe --

17  that PG&E or neither PG&E or Veterans Power were acting below

18  the applicable standard of care as established either by the

19  electrical tariffs 14 or 2.  14's a little clearer, but even 2

20  used a similar phrase.

21       So it's the question there is no culpability if there

22  absent a failure to exercise reasonable diligence.  So the

23  phrase exercised reasonable diligence I'm persuaded that it

24  happens but it doesn't happen from the events establishing that

25  either PG&E or Veterans Power failed to exercise reasonable

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    diligence.

2          Much was been made -- Mr. Lapping made an appealing

3    argument -- was not persuasive because of what I'm about to

4    say -- an appealing argument equating the situation that, well,

5    if a vehicle hits a pole, there is a vibration.  Well, a

6    vehicle didn't hit the pole.  This work was underground, so

7    there was no pole to hit by any vehicle.  And we're back to the

8    question of what was taking place underground.  And I simply

9    don't accept the metaphor of a shaking of the pole.

10         And therefore, because of that premise, I reject the

11   notion that -- again, not criticizing Mr. Lapping, but his

12   argument is not persuasive.  This is not where the doctrine of

13   res ipsa loquitur applies.  Res ipsa loquitur we all learned in

14   law school, but transfer that to simple terms, it's not a

15   strict liability standard.  If there were a strict liability of

16   standard, perhaps Mr. Greenberg will prevail.  There is not.

17   There is the standard of exercise reasonable diligence.

18         So that leads me to the conclusion that Mr. Greenberg

19   is not entitled to recover damages of any amount based upon the

20   situation, even though we all know that for some reason the

21   refrigerator failed and there were damages.  I therefore will

22   issue an order that says for the reason stated the claim is

23   disallowed.

24         Now I stated, and I will summarize briefly, my review

25   of the evidence in any event because I believe it's perfectly

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    proper for me to make -- I won't call them alternative rulings,

2    but just underlying facts.  If there is an appeal, and the

3    court determines that there has been a misapplication of the

4    standard, at least the record should reflect the following,

5    that I find from the evidence -- I told you, I acknowledged

6    that Mr. Greenberg experienced a loss because of the power

7    outage.  He did not suffer a loss because of the amount charged

8    by the Appliance Doctor because that was paid by someone else,

9    not Mr. Greenberg.

10         Mr. Greenberg did suffer damage to his food and other

11   things in the refrigerator.  The figure was $918.98.  It's not

12   disputed.  He incurred an expense of 225 dollars for cleanup

13   for stuff that came out of the refrigerator.  Not disputed.  He

14   experienced at least the potential for damage to a carpet in

15   the kitchen that, as far as the evidence has established, it

16   has not yet been repaired, but the claim that he is asserting

17   is nominal, 168 dollars, and I take that as a component of a

18   damage if there were any.

19         The harder issue is what to do about the damage to the

20   flooring.  The estimates vary based upon the method of

21   assessment and certainly the timing.  Over the period of time

22   leading up to the trial, Mr. Greenberg had different opinions

23   as to what was his measure of damage to the flooring in his

24   apartment.  But I'm satisfied that the more persuasive

25   conclusion is based upon not what's called the line of sight

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   theory that he relied on, namely rooms outside of the kitchen,

2   but rather in more of the immediate area of the kitchen, and

3   determined that the damage that is compensable, if there is

4   liability, is limited to the kitchen.

5        And I add further that that's partly by the fact that

6   there is separation from the kitchen and the other rooms.

7   There's a slight level difference.  There's a physical

8   separation.  And the fact that the flooring may have a similar

9   appearance isn't dispositive.

10       It is also a fact that the flooring in the evidence

11  presented shows what I would expect in a long-used apartment,

12  wear and tear and other things.  And as much as I'm sorry that

13  Mr. Greenberg suffered the loss, he doesn't get a free flooring

14  in his entire apartment at PG&E's expense.  So I find from the

15  evidence that the only compensable damage, if there is

16  liability, would be limited to the immediate area of the

17  kitchen flooring.

18       And that takes me to Exhibit LL, which I find

19  dispositive.  So in reviewing Exhibit LL, the immediate

20  flooring in the kitchen is 325 square feet.  Based upon the

21  carpet company's estimate as set forth in Exhibit LL, I

22  estimate that one-half of the 1,600 dollars attributed would be

23  attributable to things such as the pull-up and the disposal and

24  the molding and what have you.

25       I take the four items that LL receives, flooring,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    removal, subfloor, and molding, and half of each would be 800

2    plus 400 plus 750 plus 300.  I take those four figures and take

3    the estimated 4,300 dollars for the 325 square feet, those

4    figures total 6,550 dollars, as of February 2016.  There is no

5    exact guidance in my mind, but I believe it would be

6    appropriate, based upon that evidence, to determine that those

7    are finite, calculable numbers, and it would not be unfair if

8    Mr. Greenberg were to have an allowed claim to apply a seven-

9    percent accrual on that amount up to the date of PG&E's

10   bankruptcy, which of course was January 29th, 2019.

11           So my math is not precise to the penny, but if I take

12   seven percent for three years, and it's just under three years

13   from the time of the damage to the time of the bankruptcy, I

14   would then add a twenty-one percent factor.

15           Let me going back.  I may have confused issues.  One

16   second.

17           Excuse me.  So if I take the -- if I take the 6,550

18   dollars that I explained was the basis for the determination

19   for the damages in the kitchen related to the flooring, and I

20   go back and add the damaged food, the damaged carpet, the

21   cleanup and what have you, that leads to a total of $7,861.98.

22   If I attribute a seven-percent accrual pre-petition, I would

23   then add roughly twenty-one percent.  So I didn't do the math,

24   but you can take $7,861.98 plus twenty-one percent to the

25   petition date.  Once the petition date occurred, the post-

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    petition interest accrues at the federal rate, and if that line

2    were to be allowed, that would be the amount of his damage

3    claim.

4            I will not -- I will not provide or determine that Mr.

5    Greenberg has any compensable damage for his own time.  I

6    excluded that on the motion in limine, but I just repeated

7    myself.  There is no indication that there has been a basis to

8    determine liability at PG&E, and similarly, the so-called lost

9    rental.

10           First of all, Mr. Greenberg remained in the unit for

11   quite some time.  Secondly, and more importantly, it's pure

12   speculation that the wear and tear and the minimal amount of

13   damage evident in the flooring in those 325 square feet was the

14   deterrent for any prospective tenants.  Mr. Greenberg did not

15   establish that any prospective tenant declined to rent the

16   property, rent that unit, because of the condition of the

17   flooring.  In fact, it's almost inconceivable for me to imagine

18   in an old apartment with its own wear and tear that somebody in

19   need of housing would turn it down because of a few little

20   spaces in the laminate.

21           But in any event, I'm reaching the conclusion that Mr.

22   Greenberg is not entitled to any lost rental damage for the

23   same reason that I said and also his own time.  In his proposed

24   Exhibit QQ, he determined and wished to have an increase in the

25   amount of damage based upon the later City Carpets estimate.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    That was excluded as not being timely, and in any event, even

2    if it were timely, it would not support any further calculation

3    of the damage.

4          So I said, to repeat myself, I'm making the summary of

5    findings that I just gave in the damage calculation in the

6    event that for some reason my decision on the legal liability

7    is set aside.

8          And therefore the claim, for the reasons that I

9    stated, must be disallowed.  I will ask Ms. Dodge to submit a

10   standard, simple form of order that recites that for the

11   reasons stated on the record, meaning the record at this

12   hearing today, that Mr. Greenberg's claim number 108 --

13   well, make it be complete -- 77335 as amended by 108542 is

14   disallowed in its entirety.

15         MS. DODGE:  Thank you.

16         THE COURT:  Well, anyone have any questions?  That's

17   my ruling, and that's where I'm going to close the matter,

18   unless either counsel wish to be heard.

19         Mr. Lapping.

20         MR. LAPPING:  No.  Thank you, Your Honor.  I think

21   it's very clear.  Thank you.

22         THE COURT:  Okay.  Ms. Dodge?

23         MR. LAPPING:  Thank you, Your Honor.  We will get that

24   order submitted as you requested.

25         THE COURT:  All right.  Thank you.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Thank you both for your participation and your time.

2 As I say, you both were very professional and very orderly and

3 very well prepared.  And I compliment you on your service.  And

4 I would say, if your clients are listening, that you both

5 performed admirably and capably and well.  The fact that one

6 side wins and one sided loses is no reflection on the quality

7 of the lawyering.  And again, it's no reflection or disapproval

8 of Mr. Greenberg or his position.  It's just the way I come out

9 with the evidence.

10    All right.  Thank you.  I'm not going to shut the

11 hearing down.  I'm going to conclude this matter, and we're

12 going to go to our 10:30 calendar.

13    MS. DODGE:  Okay.  Thank you, Your Honor.

14    MR. LAPPING:  Okay.  Thank you, Your Honor.

15    (Whereupon these proceedings were concluded at 10:38 AM)

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                           I N D E X

2    RULINGS:                                      PAGE  LINE

3    Claim 77335 as amended by 108542 is            13    10

4    disallowed in its entirety

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1           C E R T I F I C A T I O N

2

3    I, River Wolfe, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ RIVER WOLFE, CDLT-265

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  July 11, 2022

16

17

18

19

20

21

22

23

24

25



## $

**$123,456.74 (1)**
2:25
**$288.51 (1)**
4:22
**$7,861.98 (2)**
11:21,24
**$918.98 (1)**
9:11

## A

**absence (1)**
6:17
**absent (1)**
7:22
**accept (1)**
8:9
**accrual (2)**
11:9,22
**accrues (1)**
12:1
**acknowledged (1)**
9:5
**acting (1)**
7:17
**activity (1)**
4:9
**add (3)**
10:5;11:14,20,23
**addition (1)**
6:16
**admirably (1)**
14:5
**affect (1)**
6:2
**Again (3)**
6:6;8:11;14:7
**against (1)**
3:3
**agent (1)**
6:10
**allowed (2)**
11:8;12:2
**almost (1)**
12:17
**alternative (1)**
9:1
**although (1)**
6:11
**amended (4)**
2:23,24;3:17;13:13
**amount (7)**
2:25;8:19;9:7;11:9;
12:2,12,25
**amounts (1)**
5:7
**anticipated (1)**
5:24
**apartment (4)**
9:24;10:11,14;12:18

**appeal (2)**
5:5;9:2
**appealing (2)**
8:2,4
**appearance (1)**
10:9
**appearances (1)**
2:8
**Appliance (2)**
4:21;9:8
**applicable (1)**
7:18
**applies (1)**
8:13
**apply (1)**
11:8
**appropriate (1)**
11:6
**April (1)**
6:1
**area (2)**
10:2,16
**argument (3)**
8:3,4,12
**aside (1)**
13:7
**assembly (1)**
4:14
**asserting (1)**
9:16
**assessment (1)**
9:21
**attributable (1)**
10:23
**attribute (1)**
11:22
**attributed (1)**
10:22

## B

**back (4)**
5:1;8:7;11:15,20
**Bankruptcy (3)**
3:7;11:10,13
**based (7)**
7:4;8:19;9:20,25;
10:20;11:6;12:25
**basis (2)**
11:18;12:7
**began (1)**
4:5
**beginning (1)**
4:4
**behalf (2)**
2:9,13
**believes (1)**
4:15
**below (1)**
7:17
**bench (1)**
3:8
**blackout (1)**

5:18
**Bolinas (9)**
3:22;4:1,1,6,9,16;
5:22,24;6:20
**both (3)**
14:1,2,4
**briefly (1)**
8:24
**bring (1)**
2:6
**burden (1)**
7:13
**burnout (1)**
4:14
**business (1)**
4:2

## C

**calculable (1)**
11:7
**calculation (2)**
13:2,5
**calendar (1)**
14:12
**CALIFORNIA (2)**
2:1;3:22
**Call (4)**
2:3,15,16;9:1
**called (3)**
2:17;4:20;9:25
**Calling (1)**
2:5
**came (1)**
9:13
**can (1)**
11:24
**capably (1)**
14:5
**care (1)**
7:18
**carpet (3)**
9:14;10:21;11:20
**Carpets (1)**
12:25
**causation (1)**
6:7
**cause (3)**
4:13;5:11;7:12
**caused (6)**
4:15,16;6:5,14;7:1,7
**certainly (1)**
9:21
**charge (1)**
4:22
**charged (1)**
9:7
**circuitry (1)**
7:6
**City (1)**
12:25
**claim (14)**
2:23,23,24,25;3:16;

4:10;5:4,8;8:22;9:16;
11:8;12:3;13:8,12
**claims (1)**
3:3
**cleanup (2)**
9:12;11:21
**clear (1)**
13:21
**clearer (1)**
7:19
**CLERK (1)**
2:4
**clients (1)**
14:4
**close (1)**
13:17
**colloquy (1)**
6:22
**communicated (2)**
6:21,22
**Company (2)**
2:10;4:20
**company's (1)**
10:21
**compensable (3)**
10:3,15;12:5
**complete (1)**
13:13
**completion (1)**
3:20
**compliment (1)**
14:3
**component (1)**
9:17
**components (1)**
5:2
**compressor (4)**
4:14,17,22;5:11
**conclude (1)**
14:11
**concluded (2)**
5:3;14:15
**conclusion (9)**
3:15;5:12,14;6:14;
7:9,12;8:18;9:25;12:21
**conclusions (3)**
3:9,11,12
**condition (1)**
12:16
**confused (1)**
11:15
**connection (1)**
5:22
**considered (1)**
5:2
**contains (1)**
3:9
**contested (1)**
3:19
**context (2)**
2:21;3:19
**contractor (2)**
4:15;5:11

**controversial (1)**
2:20
**convinced (1)**
7:9
**convincing (1)**
6:16
**Corporation (1)**
2:6
**Counsel (3)**
2:6;7:11;13:18
**course (4)**
2:25;3:18;4:3;11:10
**Court (10)**
2:3,4,7,11,14,17;9:3;
13:16,22,25
**critical (1)**
5:15
**criticizing (1)**
8:11
**culpability (1)**
7:21
**culpable (3)**
5:3,9;6:10

## D

**damage (18)**
4:10;5:8;6:5;9:10,14,
18,19,23;10:3,15;
11:13;12:2,5,13,22,25;
13:3,5
**damaged (2)**
11:20,20
**damages (4)**
4:17;8:19,21;11:19
**date (3)**
11:9,25,25
**days (3)**
5:16;7:2,16
**dealt (1)**
3:4
**Dear (3)**
6:18,23;7:4
**debtor (1)**
2:10
**December (1)**
4:4
**decide (1)**
6:9
**decided (1)**
3:6
**decision (2)**
5:5;13:6
**declined (1)**
12:15
**delivery (1)**
6:5
**Dennis (1)**
2:5
**deny (1)**
6:6
**describe (1)**
7:16

Case: 19-30088    Doc# 12601    Filed: 07/11/22    Entered: 07/11/22 06:33:20    Page 17
of 21

described (3)
    6:23;7:3,5
determination (2)
    7:4;11:18
determine (4)
    5:8;11:6;12:4,8
determined (2)
    10:3;12:24
determines (1)
    9:3
deterrent (1)
    12:14
difference (1)
    10:7
different (1)
    9:22
diligence (4)
    7:22,23;8:1,17
disallowed (5)
    3:17;5:4;8:23;13:9,
    14
disapproval (1)
    14:7
disposal (1)
    10:23
dispositive (2)
    10:9,19
dispute (2)
    3:1;4:13
disputed (2)
    9:12,13
disruption (1)
    7:1
distortion (1)
    7:7
doctor (4)
    4:20,21,23;9:8
doctrine (1)
    8:12
Dodge (7)
    2:8,9,9;13:9,15,22;
    14:13
dollars (6)
    9:12,17;10:22;11:3,
    4,18
done (1)
    6:20
door (1)
    3:25
down (3)
    6:3;12:19;14:11
during (3)
    4:11;5:15;7:16
Dustin (1)
    6:18

E

earlier (1)
    4:4
EE (1)
    6:13
eight (3)

5:15;7:2,16
either (3)
    7:18,25;13:18
Electric (1)
    2:10
electrical (3)
    4:5,7;7:19
else (2)
    4:2;9:8
elsewhere (1)
    3:4
engaged (2)
    4:9,20
entire (1)
    10:14
entirety (2)
    3:17;13:14
entitled (2)
    8:19;12:22
equating (1)
    8:4
establish (2)
    2:21;12:15
established (3)
    6:25;7:18;9:15
establishing (1)
    7:24
estimate (3)
    10:21,22;12:25
estimated (1)
    11:3
estimates (1)
    9:20
even (4)
    7:6,19;8:20;13:1
event (4)
    8:25;12:21;13:1,6
events (1)
    7:24
evidence (9)
    6:13,25;8:25;9:5,15;
    10:10,15;11:6;14:9
evident (1)
    12:13
exact (1)
    11:5
excluded (2)
    12:6;13:1
excuse (4)
    4:7,21;5:12;11:17
exercise (3)
    7:22,25;8:17
exercised (1)
    7:23
Exhibit (4)
    10:18,19,21;12:24
Exhibits (2)
    6:12,17
expect (1)
    10:11
expense (2)
    9:12;10:14
experience (1)

7:15
experienced (4)
    6:6,7;9:6,14
explain (3)
    3:14,14,17
explained (1)
    11:18
explanation (2)
    6:18;7:5

F

fact (10)
    3:11;5:21,25;7:3,15;
    10:5,8,10;12:17;14:5
factor (1)
    11:14
facts (3)
    3:18;5:6;9:2
factual (1)
    7:3
fail (1)
    4:17
failed (4)
    4:11;7:16,25;8:21
failure (5)
    4:13,14;5:11;7:6,22
Fairfax (2)
    3:2,22
family (1)
    3:21
far (1)
    9:15
February (7)
    4:12,12,20;5:16,25;
    7:2;11:4
Federal (2)
    3:7;12:1
feet (3)
    10:20;11:3;12:13
few (3)
    5:1;12:19
figure (1)
    9:11
figures (2)
    11:2,4
finally (1)
    5:25
find (7)
    5:6;6:13,16;7:3;9:5;
    10:14,18
finding (2)
    5:13;7:10
findings (5)
    3:9,11,12;5:7;13:5
finite (1)
    11:7
First (3)
    5:15;7:1;12:10
flooring (11)
    9:20,23;10:8,10,13,
    17,20,25;11:19;12:13,
    17

fluctuation (2)
    6:4;7:2
fluctuations (1)
    6:15
following (2)
    3:8;9:4
follows (1)
    3:10
food (2)
    9:10;11:20
form (1)
    13:10
forth (1)
    10:21
four (2)
    10:25;11:2
FRANCISCO (1)
    2:1
free (1)
    10:13
FRIDAY (1)
    2:1
fully (1)
    3:18
further (2)
    10:5;13:2
fuse (2)
    6:24;7:6
fuses (1)
    6:19

G

Gas (1)
    2:10
gave (1)
    13:5
goes (1)
    5:19
Good (2)
    2:7,12
Greenberg (23)
    2:13;3:21,24;4:10,
    15,19;6:2,6;7:11,14;
    8:16,18;9:6,9,10,22;
    10:13;11:8;12:5,10,14,
    22;14:8
Greenberg's (6)
    2:15,23;3:1,16;4:23;
    13:12
guidance (1)
    11:5

H

half (1)
    11:1
happen (1)
    7:24
happens (1)
    7:24
harder (1)
    9:19

heard (1)
    13:18
hearing (3)
    2:18;13:12;14:11
hit (2)
    8:6,7
hits (1)
    8:5
hold (1)
    5:8
home (3)
    3:2,25;4:23
Honor (6)
    2:6,12;13:20,23;
    14:13,14
Honorable (1)
    2:4
hopefully (1)
    3:18
housing (1)
    12:19

I

imagine (1)
    12:17
immediate (4)
    4:13;10:2,16,19
important (1)
    4:5
importantly (1)
    12:11
incident (1)
    3:24
included (1)
    5:24
inconceivable (1)
    12:17
increase (1)
    12:24
incurred (1)
    9:12
indeed (1)
    6:20
indication (2)
    6:13;12:7
intend (1)
    3:12
interest (1)
    12:1
interpretation (1)
    5:6
interruption (3)
    6:1;7:2,7
ipsa (2)
    8:13,13
issue (3)
    5:10;8:22;9:19
issues (1)
    11:15
items (1)
    10:25

Case: 19-30088    Doc# 12601    Filed: 07/11/22    Entered: 07/11/22 06:33:20    Page 18
of 21

## J

**January (1)**
11:10
**Jennifer (1)**
2:9
**job (1)**
4:16
**JULY (1)**
2:1
**June (2)**
2:22;3:5

## K

**key (1)**
5:10
**kind (1)**
4:6
**kitchen (8)**
9:15;10:1,2,4,6,17,
20;11:19

## L

**laminate (1)**
12:20
**Lapping (10)**
2:11,12,13,16;8:2,
11;13:19,20,23;14:14
**last (1)**
2:19
**later (3)**
5:22,25;12:25
**law (1)**
8:14
**lawyering (1)**
14:7
**leading (1)**
9:22
**leads (5)**
6:9;7:9,12;8:18;
11:21
**learned (1)**
8:13
**least (4)**
4:4;5:6;9:4,14
**led (1)**
4:17
**legal (2)**
5:13;13:6
**level (1)**
10:7
**liability (6)**
8:15,15;10:4,16;
12:8;13:6
**liable (2)**
5:12;7:13
**limine (1)**
12:6
**limited (2)**
10:4,16

**line (2)**
9:25;12:1
**list (1)**
2:15
**listening (1)**
14:4
**little (2)**
7:19;12:19
**LL (4)**
10:18,19,21,25
**location (2)**
4:8;5:17,19
**long (1)**
6:11
**long-used (1)**
10:11
**loop (2)**
7:5,8
**looping (1)**
7:6
**loquitur (2)**
8:13,13
**loses (1)**
14:6
**loss (4)**
3:1;9:6,7;10:13
**lost (2)**
12:8,22
**lower (1)**
3:23

## M

**making (1)**
13:4
**Many (1)**
3:18
**March (2)**
5:25;6:23
**math (2)**
11:11,23
**matter (5)**
2:5,18;3:6;13:17;
14:11
**May (3)**
2:7;10:8;11:15
**meaning (1)**
13:11
**measure (1)**
9:23
**mentioned (1)**
5:16
**metaphor (1)**
8:9
**method (1)**
9:20
**might (1)**
5:7
**mind (1)**
11:5
**minimal (1)**
12:12
**misapplication (1)**

9:3
**molding (2)**
10:24;11:1
**moment (1)**
3:14
**moments (1)**
5:1
**Montali (1)**
2:5
**more (3)**
9:24;10:2;12:11
**morning (2)**
2:7,12
**most (1)**
6:16
**motion (1)**
12:6
**Much (2)**
8:2;10:12
**must (1)**
13:9
**myself (3)**
3:18;12:7;13:4

## N

**name (1)**
2:15
**namely (1)**
10:1
**narrative (1)**
3:10
**need (1)**
12:19
**needs (3)**
4:7,7;5:4
**neighborhood (1)**
5:19
**neither (1)**
7:17
**nevertheless (1)**
6:12
**Next (1)**
3:25
**nominal (1)**
9:17
**none (2)**
5:20,24
**no-proof (1)**
7:11
**notion (2)**
7:13;8:11
**notwithstanding (1)**
7:15
**number (3)**
2:23,24;13:12
**numbers (1)**
11:7

## O

**objection (2)**
2:22;3:16

**objections (1)**
3:3
**obvious (1)**
2:20
**obviously (1)**
5:10
**occurred (2)**
3:25;11:25
**old (1)**
12:18
**Once (1)**
11:25
**One (4)**
2:14;11:15;14:5,6
**one-half (1)**
10:22
**only (2)**
6:7;10:15
**oOo- (1)**
2:2
**operating (1)**
4:24
**opinion (2)**
5:23;6:8
**opinions (1)**
9:22
**oral (3)**
2:18;3:6,8
**order (4)**
2:3;8:22;13:10,24
**orderly (1)**
14:2
**otherwise (1)**
5:8
**out (4)**
5:18,19;9:13;14:8
**outage (5)**
5:17,17,21;6:4;9:7
**outages (2)**
5:24;6:1
**outset (1)**
5:3
**outside (1)**
10:1
**over (2)**
3:1;9:21
**own (3)**
12:5,18,23
**owned (2)**
3:21;4:2

## P

**Pacific (1)**
2:10
**paid (2)**
4:22;9:8
**part (1)**
6:19
**participation (1)**
14:1
**parties (1)**
4:8

**partly (1)**
10:5
**penny (1)**
11:11
**percent (5)**
11:9,12,14,23,24
**perfectly (1)**
8:25
**performed (1)**
14:5
**perhaps (3)**
4:4;6:16;8:16
**period (2)**
5:15;9:21
**permissible (1)**
3:9
**persuaded (1)**
7:23
**persuasive (3)**
8:3,12;9:24
**pertains (1)**
3:1
**petition (1)**
11:25,25;12:1
**PG&E (17)**
2:5;3:1,3;4:5,8,15;
5:3,8,10;6:9,14,21;
7:12,17,17,25;12:8
**PG&E's (4)**
2:22;3:15;10:14;
11:9
**phasing (1)**
6:19
**phone (2)**
2:15,16
**phrase (2)**
7:20,23
**physical (1)**
10:7
**place (2)**
4:1;8:8
**please (1)**
2:8
**plus (4)**
11:2,2,2,24
**point (1)**
6:22
**pole (4)**
8:5,6,7,9
**position (1)**
14:8
**post- (1)**
11:25
**potential (1)**
9:14
**power (13)**
3:2;4:16;5:17,19;6:1,
5,10,14,21;7:7,17,25;
9:6
**precise (1)**
11:11
**premise (1)**
8:10

Case: 19-30088    Doc# 12601    Filed: 07/11/22    Entered: 07/11/22 06:33:20    Page 19
of 21

**prepared (1)**
14:3
**pre-petition (1)**
11:22
**presence (1)**
7:4
**presented (1)**
10:11
**presiding (1)**
2:5
**presumably (1)**
4:24
**prevail (1)**
8:16
**previously (1)**
3:24
**prior (1)**
5:24
**problem (2)**
6:7;7:1
**problems (1)**
5:23
**Procedure (1)**
3:7
**proceedings (1)**
14:15
**professional (1)**
14:2
**promptly (1)**
4:19
**proof (1)**
6:17
**proper (1)**
9:1
**property (4)**
3:21,23;4:1;12:16
**proposed (1)**
12:23
**prospective (2)**
12:14,15
**provide (1)**
12:4
**provider (1)**
4:23
**provisions (1)**
3:7
**pull-up (1)**
10:23
**pure (1)**
12:11

**Q**

**QQ (1)**
12:24
**quality (1)**
14:6
**quite (1)**
12:11

**R**

**rate (1)**

12:1
**rather (1)**
10:2
**reached (2)**
5:12,13
**reaching (1)**
12:21
**real (1)**
4:1
**reason (5)**
5:4;8:20,22;12:23;
13:6
**reasonable (4)**
7:22,23,25;8:17
**reasoning (1)**
3:15
**reasons (2)**
13:8,11
**receives (1)**
10:25
**recitals (1)**
3:10
**recites (1)**
13:10
**reconnect (1)**
4:6
**record (6)**
2:21;3:11,20;9:4;
13:11,11
**recover (1)**
8:19
**redundancy (1)**
7:5
**refer (1)**
4:18
**reference (1)**
6:20
**reflect (1)**
9:4
**reflection (2)**
14:6,7
**refrigerator (8)**
4:11,20,24;6:2;7:16;
8:21;9:11,13
**reject (1)**
8:10
**related (2)**
4:6;11:19
**relevance (3)**
3:22;4:3;5:23
**relevant (2)**
4:25;6:22
**relied (1)**
10:1
**remained (1)**
12:10
**removal (1)**
11:1
**rent (2)**
12:15,16
**rental (2)**
12:9,22
**reorganized (1)**

2:10
**Repair (2)**
4:21,22
**repaired (2)**
4:21;9:16
**repeat (1)**
13:4
**repeated (1)**
12:6
**reported (1)**
6:6
**requested (1)**
13:24
**required (1)**
3:13
**Res (2)**
8:13,13
**resided (1)**
3:24
**restating (1)**
3:19
**reversed (1)**
5:5
**review (1)**
8:24
**reviewing (2)**
6:17;10:19
**Richard (1)**
2:12
**right (5)**
2:7,17,17;13:25;
14:10
**rooms (2)**
10:1,6
**roughly (1)**
11:23
**Rule (2)**
3:7,13
**ruling (4)**
2:18;3:6,8;13:17
**rulings (1)**
9:1

**S**

**same (1)**
12:23
**SAN (1)**
2:1
**satisfied (1)**
9:24
**scheduled (1)**
6:1
**school (1)**
8:14
**second (2)**
2:14;11:16
**Secondly (1)**
12:11
**sense (1)**
5:17
**separate (1)**
3:12

**separation (2)**
10:6,8
**service (1)**
14:3
**session (1)**
2:4
**set (2)**
10:21;13:7
**seven (1)**
11:12
**seven- (1)**
11:8
**seven-percent (1)**
11:22
**shaking (1)**
8:9
**short (1)**
6:4
**show (1)**
7:14
**shown (1)**
7:14
**shows (1)**
10:11
**shut (1)**
14:10
**side (1)**
14:6
**sided (1)**
14:6
**sight (1)**
9:25
**significant (1)**
4:5
**similar (2)**
7:20;10:8
**similarly (1)**
12:8
**simple (2)**
8:14;13:10
**simply (3)**
5:16;7:10;8:8
**situation (4)**
6:18,24;8:4,20
**slight (1)**
10:7
**so-called (2)**
7:8;12:8
**somebody (1)**
12:18
**someone (2)**
4:2;9:8
**sorry (1)**
10:12
**spaces (1)**
12:20
**specific (1)**
6:13
**speculation (1)**
12:12
**spent (1)**
6:11
**square (3)**

10:20;11:3;12:13
**standard (6)**
7:18;8:15,16,17;9:4;
13:10
**starter (1)**
4:14
**state (1)**
5:6
**stated (6)**
3:5;5:2;8:22,24;13:9,
11
**statement (2)**
3:10,12
**statements (1)**
2:20
**strict (2)**
8:15,15
**stuff (1)**
9:13
**subfloor (1)**
11:1
**subject (2)**
3:25;4:10
**submit (1)**
13:9
**submitted (2)**
3:6;13:24
**subsequently (1)**
2:24
**suffer (2)**
9:7,10
**suffered (1)**
10:13
**summarize (1)**
8:24
**summary (1)**
13:4
**support (3)**
6:14;7:10;13:2
**sustained (1)**
3:16
**system (1)**
7:8

**T**

**tariffs (1)**
7:19
**tear (3)**
10:12;12:12,18
**tenant (1)**
12:15
**tenants (2)**
4:2;12:14
**terms (1)**
8:14
**testimony (1)**
6:18
**theory (1)**
10:1
**therefore (4)**
5:13;8:10,21;13:8
**though (1)**

Case: 19-30088    Doc# 12601    Filed: 07/11/22    Entered: 07/11/22 06:33:20    Page 20
of 21

8:20

**three (2)**
11:12,12

**three-line (1)**
6:19

**timely (2)**
13:1,2

**timing (1)**
9:21

**today (2)**
2:18;13:12

**Todd (1)**
2:13

**told (1)**
9:5

**total (2)**
11:4,21

**transfer (1)**
8:14

**trial (6)**
2:22;3:5,8,25;6:12;
9:22

**tried (1)**
2:19

**turn (2)**
6:9;12:19

**turns (1)**
6:7

**twelve-year-old (1)**
4:11

**twenty-one (3)**
11:14,23,24

**two (1)**
3:23

## U

**ultimately (1)**
5:23

**under (3)**
3:6,13;11:12

**underground (2)**
8:6,8

**underlying (1)**
9:2

**unfair (1)**
11:7

**unit (2)**
12:10,16

**units (1)**
3:23

**unless (2)**
2:15;13:18

**up (2)**
9:22;11:9

**upgrade (1)**
4:5

**upon (7)**
7:4;8:19;9:20,25;
10:20;11:6;12:25

**used (1)**
7:20

**useful (1)**

5:5

## V

**various (1)**
4:2

**vary (1)**
9:20

**vehicle (3)**
8:5,6,7

**Veterans (6)**
4:16;6:10,14,21;
7:17,25

**vibration (1)**
8:5

## W

**warranty (1)**
4:23

**way (5)**
5:11,18;6:10;7:8;
14:8

**wear (3)**
10:12;12:12,18

**week (1)**
2:19

**weeks (1)**
5:22

**what's (2)**
4:3;9:25

**Whereupon (1)**
14:15

**window (1)**
4:12

**wins (1)**
14:6

**wish (1)**
13:18

**wished (1)**
12:24

**work (4)**
4:6;5:22;6:19;8:6

## Y

**years (2)**
11:12,12

## 1

**1,600 (1)**
10:22

**10:30 (1)**
14:12

**10:38 (1)**
14:15

**108 (1)**
13:12

**108542 (2)**
2:24;13:13

**14 (1)**
7:19

**14's (1)**
7:19

**14th (1)**
4:12

**168 (1)**
9:17

**16th (1)**
6:23

## 2

**2 (2)**
7:19,19

**2015 (1)**
4:4

**2016 (5)**
4:12;5:16,25;6:23;
11:4

**2019 (1)**
11:10

**2022 (1)**
2:1

**225 (1)**
9:12

**22nd (1)**
4:12

**25th (1)**
4:20

**27th (2)**
2:22;3:5

**29th (1)**
11:10

## 3

**300 (1)**
11:2

**31 (6)**
4:1,6,16;5:22,23;
6:20

**325 (3)**
10:20;11:3;12:13

## 4

**4,300 (1)**
11:3

**400 (1)**
11:2

**47 (3)**
3:22;4:1,9

## 6

**6,550 (2)**
11:4,17

## 7

**7052a1 (1)**
3:8

**750 (1)**
11:2

**77335 (2)**
2:23;13:13

## 8

**8 (1)**
2:1

**800 (1)**
11:1

Case: 19-30088    Doc# 12601    Filed: 07/11/22    Entered: 07/11/22 06:33:20    Page 21
of 21