Case 4:20-cv-04570-HSG   Document 36   Filed 08/29/22   Page 1 of 55

**Entered on Docket**
**August 30, 2022**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE PG&E CORPORATION; PACIFIC GAS & ELECTRIC COMPANY, *Debtors*, | No. 21-16043 D.C. No. 4:20-cv-04570-HSG |
| AD HOC COMMITTEE OF HOLDERS OF TRADE CLAIMS, *Appellant*, v. PACIFIC GAS AND ELECTRIC COMPANY, *Appellee.* | OPINION |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted December 6, 2021
San Francisco, California

Filed August 29, 2022

2      IN RE PG&E CORP.

Before:  Carlos F. Lucero,[*] Sandra S. Ikuta, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Lucero;
Dissent by Judge Ikuta

**SUMMARY**[**]

**Bankruptcy**

  The panel reversed the district court's order, which affirmed the bankruptcy court's ruling that in the chapter 11 proceeding of solvent debtor Pacific Gas and Electric Co., unsecured creditors whose claims were designated as unimpaired were limited to recovery of postpetition interest at the federal judgment rate, rather than the higher rates required by their contracts with PG&E and by California law governing contractual obligations not paid.

  The chapter 11 plan classified the claims of these creditors, known as the Ad Hoc Committee of Holders of Trade Claims, as general unsecured claims and provided that the creditors would be paid the full principal amount of their claims plus postpetition interest at the federal judgment rate of 2.59 percent under 28 U.S.C. § 1961(a).  The plan classified the creditors' claims as unimpaired, meaning that they were deemed to automatically accept the plan and had

<hr>

[*] The Honorable Carlos F. Lucero, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

no power to vote against it or argue that their treatment was not "fair and equitable" under 11 U.S.C. § 1129(b)(1) (providing that when a class of impaired creditors votes against a plan, the bankruptcy court may confirm the plan only if it is fair and equitable with respect to that class). Because the claims were designated as unimpaired, under 11 U.S.C. § 1124, the creditors' "legal, equitable, and contractual rights" were required to be "unaltered" by the reorganization plan.

Joining other circuits, the panel held that under the "solvent-debtor exception," the creditors possessed an equitable right to receive postpetition interest at the contractual or default state rate, subject to any other equitable considerations, before PG&E collected surplus value from the bankruptcy estate. The solvent-debtor exception is a common-law exception to the Bankruptcy Act's prohibition on the collection of postpetition interest as part of a creditor's claim.

The panel disagreed with the bankruptcy court's conclusion that *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002), was controlling because it established a broad rule that all unsecured claims in a solvent-debtor bankruptcy are entitled only to postpetition interest at the federal judgment rate, regardless of impairment status. The panel concluded that *Cardelucci* merely interpreted 11 U.S.C. § 726(a)(5), which requires that creditors of a solvent debtor receive postpetition interest at "the legal rate." Section 726(a)(5), however, applies only to impaired chapter 11 claims, and the panel concluded that *Cardelucci* therefore did not address what rate of postpetition interest must be paid on the Ad Hoc Committee's unimpaired claims.

The panel also disagreed with the bankruptcy court's alternative holding that the Bankruptcy Code limited the Ad Hoc Committee to postpetition interest at the federal judgment rate.   The panel held that passage of the Bankruptcy Code did not abrogate the solvent-debtor exception.   Rather, the Code's text, history, and structure compelled the conclusion that creditors like the Ad Hoc Committee continue to possess an equitable right to bargained-for postpetition interest when a debtor is solvent. 11 U.S.C. § 502(b)(2) prohibits the inclusion of "unmatured interest" as part of an allowed claim, codifying the longstanding rule that interest as part of a claim stops accruing once a bankruptcy petition is filed.   That bar is subject to a statutory exception under § 726(a)(5).   The panel held, however, that § 726(a)(5) applies only to impaired creditors and therefore did not unambiguously abrogate the equitable solvent-debtor exception.   The panel concluded that the statutory history of § 1124 and the Bankruptcy Code's structure also supported its conclusion that the solvent-debtor exception survived.

The panel concluded that under the solvent-debtor exception, the creditors had an equitable right to receive postpetition interest pursuant to their contracts.   However, PG&E's plan did not compensate the creditors accordingly, but rather provided for interest at the lower federal judgment rate.   The panel reversed and remanded to the bankruptcy court to weigh the equities and determine what rate of interest the creditors were entitled to.

Dissenting, Judge Ikuta wrote that the text of the Bankruptcy Code is clear that unsecured creditors holding unimpaired claims in bankruptcy under 11 U.S.C. § 1124(b) are not entitled to postpetition interest on their claims when the debtor is solvent.   Judge Ikuta wrote that the majority

erroneously held that pre-Code practice is binding unless the Code clearly abrogates it.  Rather, the Supreme Court has directed the courts to take the exact opposite approach: so long as the Code is clear, the courts do not refer to pre-Code practice.  Judge Ikuta wrote that Congress chose not to make an exception entitling unimpaired creditors to postpetition interest at the contract or state default rates, and the statutory language provided no basis for the majority's theory that a creditor's "claim," which may not include postpetition interest, is nevertheless deemed "impaired" if the debtor turns out to be solvent and the creditor does not obtain postpetition interest at the end of the bankruptcy case.

## COUNSEL

Matthew D. McGill (argued) and David W. Casazza, Gibson Dunn & Crutcher LLP, Washington, D.C.; David M. Feldman and Matthew K. Kelsey, Gibson Dunn & Crutcher LLP, New York, New York; for Appellant.

Theodore E. Tsekerides (argued), Jessica Liou, and Matthew Goren, Weil Gotshal & Manges LLP, New York, New York; Jane Kim and Thomas B. Rupp, Keller Benvenutti Kim, San Francisco, California; for Appellee.

Sabin Willett and Andrew J. Gallo, Morgan Lewis & Bockius LLP, Boston, Massachusetts; Nakisha Duncan, Morgan Lewis & Bockius LLP, Houston, Texas; Renee M. Dailey, Akin Gump Strauss Hauer & Feld LLP, West Hartford, Connecticut; for Amici Curiae Ultra Noteholders.

## OPINION

LUCERO, Circuit Judge:

This case involves an oddity in bankruptcy law: a solvent bankrupt. Specifically, it involves Pacific Gas & Electric Company ("PG&E"), which sought chapter 11 protection in a bid to proactively address massive potential liabilities related to a series of wildfires in Northern California. But PG&E was, and has remained, solvent. Its assets at the time of the bankruptcy filing exceeded its known liabilities by nearly $20 billion. As a result, several creditors—including plaintiffs, the Ad Hoc Committee of Holders of Trade Claims—claimed PG&E must pay postpetition interest at the rates required by their contracts in order for their claims to be "unimpaired" by the reorganization plan. *See* 11 U.S.C. § 1124(1). In other words, plaintiffs argued PG&E had to honor its contractual obligations before its shareholders reaped a surplus from the bankruptcy estate. The bankruptcy court and the district court disagreed. They concluded that *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002), and the text of the Bankruptcy Code limited plaintiffs to recovery of postpetition interest at the much lower federal judgment rate. We have jurisdiction under 28 U.S.C. § 158(d)(1) and **REVERSE**.

## I

PG&E filed for chapter 11 bankruptcy in January 2019. The company initiated the proceedings in response to catastrophic wildfires that occurred in Northern California during the preceding years. Following the fires, PG&E faced tens of billions of dollars in potential liabilities to fire victims, in addition to the tens of billions of dollars the company owed pursuant to its outstanding contractual

commitments.[1]   However, the company was solvent at the time of filing:  it reported $71.4 billion in assets compared to $51.7 billion in known liabilities.   PG&E nonetheless insisted bankruptcy was necessary to resolve its wildfire liabilities and ensure the liquidity needed to sustain operations.  The company has never contested its ability to pay non-wildfire creditors in full.

After PG&E filed for bankruptcy, California enacted Assembly Bill 1054 ("A.B. 1054").  *See* Act of July 12, 2019, ch. 79, 2019 Cal. Stat. 1888 (codified in scattered sections of Cal. Pub. Util. Code).  The act created a multi-billion-dollar safety net to compensate future victims of utility fires. Cal. Pub. Util. Code §§ 3284, 3288.  For PG&E to participate in the fund, A.B. 1054 required that the bankruptcy court confirm its reorganization plan by June 30, 2020.  *Id.* § 3292(b).

PG&E's proposed chapter 11 plan ("the plan") classified plaintiffs' non-wildfire-related claims as general unsecured claims.  The plan provided that plaintiffs would be paid the full principal amount of these claims.  It further stipulated that plaintiffs would receive postpetition interest at the federal judgment rate of 2.59 percent, *see* 28 U.S.C. § 1961(a), accruing from the date of PG&E's bankruptcy filing through the date of distribution.  However, this interest rate was significantly lower than plaintiffs were entitled to under state law for contractual obligations not paid.  Some of plaintiffs' contracts with PG&E contained bargained-for interest rates on unpaid obligations, while California law sets

---

[1] In a declaration accompanying the bankruptcy filing, a PG&E executive estimated that the company's wildfire-related liabilities "could exceed $30 billion, without taking into account potential punitive damages, fines and penalties or damages with respect to 'future claims.'"

a default interest rate of ten percent.  *See* Cal. Civ. Code § 3289(b).  Plaintiffs claim that, by paying them the lower federal judgment rate, PG&E's plan denied them roughly $200 million they would have received pursuant to interest rates in their contracts or, in the absence of such terms, the California default rate.

Notwithstanding the difference in interest payments, PG&E's plan classified plaintiffs' claims as "unimpaired," a statutory term used to denote which bankruptcy creditors are entitled to vote on a reorganization plan.  *See* 11 U.S.C. § 1124.  As supposedly unimpaired creditors, plaintiffs were deemed to automatically accept the plan and therefore had no power to vote.  *See* 11 U.S.C. § 1126(f).  Conversely, all classes of impaired claims were entitled to vote and could assert other statutory protections under the Bankruptcy Code if they voted against the plan.  *See* 11 U.S.C. §§ 1129(a)(7), 1129(b)(1).

Plaintiffs and other unsecured creditors objected to the amount of postpetition interest provided under the plan. They argued that, because PG&E was solvent, they must receive interest at the contractual or default state law rates to be considered unimpaired.   In a ruling prior to plan confirmation, the bankruptcy court disagreed.  That court concluded it was bound by *Cardelucci*, which it read as establishing a broad rule that all unsecured creditors of a solvent-debtor, regardless of impairment status, are entitled only to postpetition interest at the federal judgment rate. The bankruptcy court alternatively ruled that, even if *Cardelucci* did not control, PG&E would prevail because the Bankruptcy Code limits unsecured creditors of a solvent debtor to interest at the federal judgment rate, and therefore plaintiffs' claims were not actually impaired.   The

bankruptcy court confirmed PG&E's plan on June 20, 2020, thus satisfying the deadline set by A.B. 1054.

Plaintiffs appealed the bankruptcy court's confirmation order, which incorporated the postpetition interest order, to the district court.   That court affirmed, adopting the bankruptcy court's reasoning that *Cardelucci* controlled the postpetition interest dispute.  Plaintiffs appeal that ruling to us.

## II

We review de novo a district court's decision on appeal from a bankruptcy court, applying the same standard of review to the bankruptcy court's decision as did the district court.   *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015).   The bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed de novo.   *In re Smith*, 828 F.3d 1094, 1096 (9th Cir. 2016).

## III

The question we must answer is this:  what rate of postpetition interest must a solvent debtor pay creditors whose claims are designated as unimpaired pursuant to § 1124(1) of the Bankruptcy Code?[2]  No circuit court has addressed this issue, and bankruptcy courts have reached different conclusions.  *Compare In re Ultra Petroleum Corp.*, 624 B.R. 178, 203–04 (Bankr. S.D. Texas 2020) (unimpaired creditors must receive postpetition interest at

---

[2] PG&E has said at previous stages of this litigation that, should plaintiffs prevail in the postpetition interest dispute, it would amend the plan to pay plaintiffs the amount of postpetition interest they are entitled to under the Code as unimpaired creditors.

the contract rate), *with In re Energy Future Holdings Corp.*, 540 B.R. 109, 124 (Bankr. D. Del. 2015) (unimpaired creditors are entitled to interest "under equitable principles" at a rate "the Court deems appropriate"), *and In re The Hertz Corp.*, 637 B.R. 781, 800–01 (Bankr. D. Del. 2021) (unimpaired creditors need only receive interest at the federal judgment rate).

Plaintiffs contend that the bankruptcy and district courts in this case erred in holding that, as unimpaired creditors, they were only entitled to postpetition interest at the federal judgment rate of 2.59 percent. We agree that these rulings were in error. Under the long-standing "solvent-debtor exception," plaintiffs possess an equitable right to receive postpetition interest at the contractual or default state law rate, subject to any other equitable considerations, before PG&E collects surplus value from the bankruptcy estate. *Cardelucci*, which interpreted a statutory provision inapplicable to unimpaired creditors, does not hold otherwise. Moreover, we disagree with PG&E's assertion that this solvent-debtor exception was abrogated by passage of the Bankruptcy Code. To the contrary, the Code required PG&E's plan to leave "unaltered" all of plaintiffs' "legal, equitable, and contractual rights," § 1124(1)—including their equitable right to receive the bargained-for postpetition interest under the solvent-debtor exception. PG&E's plan failed to compensate plaintiffs accordingly.

## A

Statutory analysis of the Bankruptcy Code is a "holistic endeavor." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). Our analysis in this case requires reference to various statutory and historic sources. We begin by summarizing (1) the common-

law solvent-debtor exception, and (2) key provisions of the Bankruptcy Code.

## 1

Although the concept of a solvent bankrupt may seem contradictory, the scenario occurred frequently enough for the common law to develop a special rule for such cases. That rule, in short, is that a solvent debtor must generally pay postpetition interest accruing during bankruptcy at the contractual or state law rates before collecting surplus value from the bankruptcy estate.

The default rule in bankruptcy law is that interest ceases to accrue on a claim once a debtor has filed for bankruptcy. *See Sexton v. Dreyfus*, 219 U.S. 339, 344 (1911); 11 U.S.C. § 502(b)(2). This rule is one of necessity: in most chapter 11 cases, the debtor cannot pay all its creditors, and therefore payment of interest accruing after filing would diminish the value of the estate and result in disparate treatment of creditors. *See Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 163–64 (1946). But such concerns do not exist when a bankrupt has sufficient funds to pay all outstanding debts. *See Johnson v. Norris*, 190 F. 459, 462 (5th Cir. 1911) (emphasizing that the default rule halting accrual of interest during bankruptcy "was not intended to be applied to a solvent estate").

Accordingly, eighteenth century English courts developed the solvent-debtor exception, which required bankrupts to pay interest that accrued during bankruptcy before retaining value from an estate. *See, e.g.*, Bromley v. Goodere (1743) 26 Eng. Rep. 49, 51–52; 1 Atkyns 75, 79–81. American courts imported this doctrine and applied it under the Bankruptcy Act of 1898—the predecessor of the current Bankruptcy Code. *See, e.g.*, *City of New York v.*

*Saper*, 336 U.S. 328, 330 n.7 (1949) (recognizing the solvent-debtor exception); *In re Beverly Hills Bancorp*, 752 F.2d 1334, 1339 (9th Cir. 1984) (same). The Supreme Court emphasized that "in the rare instances where the assets ultimately prove[] sufficient for the purpose, . . . creditors [are] entitled to interest accruing after adjudication." *Am. Iron & Steel Mfg. Co. v. Seaboard Air Line Ry.*, 233 U.S. 261, 266–67 (1914) ("*American Iron*").

The solvent-debtor exception was not codified, instead existing as a common-law exception to the Bankruptcy Act's prohibition on the collection of postpetition interest as part of a creditor's claim. *See* Bankruptcy Act of 1898, ch. 541, § 63, 30 Stat. 544, 562–63 (repealed) (stating that an allowed claim excludes "costs incurred and interests accrued after the filing of the petition"). Courts interpreted the exception as flowing from the purpose of bankruptcy law to ensure an equitable distribution of assets. *See Johnson*, 190 F. at 466; *Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*, 679 F.2d 264, 269 (1st Cir. 1982) ("*Debentureholders*") (calling the exception "fair and equitable"). The common-law absolute priority rule requires that a creditor be "made whole" before junior interests— including equity holders—take from the bankruptcy estate. *Consol. Rock Prods. Co. v. Du Bois*, 312 U.S. 510, 520–21 (1941); *see also Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 444 (1999). Without a solvent-debtor exception, a solvent bankrupt could reap a windfall at their creditors' expense, pocketing "money which the debtor had promised to pay promptly to the creditor." *Debentureholders*, 679 F.2d at 269.

In *American Iron*, for example, the Supreme Court awarded interest that accrued during a period of receiver administration at the Virginia statutory rate. 233 U.S. at 264,

267.  The Court explained that the general bar on payment of interest on debts in a receivership did not mean the claims "had lost their interest-bearing quality." *Id.* at 266.  Rather, it was "a necessary and enforced rule" to retain equitable distribution between creditors. *Id.*  But the need for such a rule disappeared when "the estate proved sufficient to discharge the claims in full." *Id.*  Similarly, multiple circuit courts hearing cases under the Bankruptcy Act concluded that, in a solvent-debtor bankruptcy, "the task for the bankruptcy court is simply to enforce creditors' rights according to the tenor of the contracts that created those rights." *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986); *see also Debentureholders*, 679 F.2d at 270 (reversing plan confirmation where a solvent debtor did not pay creditors their "contractual right" to interest); *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959) (concluding that equity required the debtor to pay interest on creditors' claims at the "expressly-bargained-for" rate).[3]

In short, the solvent-debtor exception was well-established under the Bankruptcy Act.  Under this exception, creditors of a solvent debtor were entitled to be made whole, including receiving postpetition interest pursuant to their

---

[3] PG&E contends that early American cases recognizing the solvent-debtor exception, including *Johnson*, did not specify that postpetition interest should be paid at contractual or default state law rates.  But it is unclear what other rates those courts could have contemplated.  The statute setting a uniform federal judgment rate of interest, 28 U.S.C. § 1961, was not established until 1948.  *See* Pub. L. 80-773, 62 Stat. 869, 957–58 (1948).  Accordingly, a creditor's entitlement to postpetition interest accruing on debt would have naturally been understood to arise from state law, either pursuant to the parties' contracts or the applicable default state rate.  *See American Iron*, 233 U.S. at 266–67 (awarding the state law default rate in a solvent-debtor receivership case).

contractual or state law default rates, before surplus value was returned to the bankrupt. *See Chicago, Milwaukee*, 791 F.2d at 529; *Debentureholders*, 679 F.2d. at 270; *Ruskin*, 269 F.2d at 832; Chaim J. Fortgang & Lawrence P. King, *The 1978 Bankruptcy Code: Some Wrong Policy Decisions*, 56 N.Y.U. L. Rev. 1148, 1164 (1981) (describing the "well-established" pre-Bankruptcy Code principle that, when a debtor is solvent, "all claims are to be paid the full amount of their principal plus interest, both prepetition and postpetition at the contractual rate").

**2**

With this history in mind, we turn to the modern Bankruptcy Code ("the Code"). Congress passed the Code in 1978, replacing the prior statutory regime under the Bankruptcy Act. *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549. "[W]hile pre-Code practice informs our understanding of the language of the Code, it cannot overcome that language." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 10 (2000) (cleaned up).

This case revolves around the Code's concept of impairment. Section 1124(1) of the Code provides that a claim is impaired unless the bankruptcy plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." We have said that Congress "defined impairment in the broadest possible terms" and "any alteration" of a creditor's legal, equitable, and contractual rights by a debtor's plan constitutes impairment. *In re L&J Anaheim Assocs.*, 995 F.2d 940, 942 (9th Cir. 1993) (cleaned up). A debtor, as part of a proposed plan, must specify which classes of claims are unimpaired. § 1123(a)(2).

Impaired creditors receive several protections during plan confirmation that are not afforded to unimpaired creditors. First, only impaired claim holders may vote on whether to confirm a plan. *See* § 1126(a). Conversely, unimpaired claimants are presumed to accept a plan. § 1126(f). Each class of impaired claims must vote to accept a plan for a consensual confirmation to occur. § 1129(a)(8).

Moreover, an impaired creditor who votes against a plan must receive value "not less than . . . such holder would so receive or retain if the debtor were liquidated under chapter 7" of the Code. § 1129(a)(7)(A)(ii). This provision, known as the best-interests-of-creditors test ("best-interests test"), incorporates by reference 11 U.S.C. § 726, which establishes the priority of distributions in chapter 7 liquidations. Section 726(a)(5) requires that creditors of a solvent debtor receive postpetition interest at "the legal rate"—a term we have said refers to the federal judgment rate established by 28 U.S.C. § 1961(a). *See Cardelucci*, 285 F.3d at 1234. Thus, pursuant to the best-interests test, a dissenting, *impaired* creditor of a solvent, chapter 11 debtor must receive postpetition interest on their claim at the federal judgment rate.

Conversely, no Code provision applies § 726(a)(5) to *unimpaired* chapter 11 claims. To the contrary, the Code expressly limits the application of § 726(a)(5) to chapter 7 liquidations. *See* 11 U.S.C. § 103(b) (stating that subchapter II of chapter 7, which includes § 726, applies only to chapter 7 cases). Section 726(a)(5) applies to chapter 11 cases solely through the best-interests test, § 1129(a)(7), which is inapplicable to unimpaired creditors. *See Energy Future Holdings*, 540 B.R. at 123; 7 Collier on Bankruptcy ¶ 1129.02[7][a] (16th ed. 2021) (noting the best-interests test applies "only to creditors . . . who are members of impaired

classes"). No provision of the Code specifies the rate of postpetition interest a creditor must receive from a solvent debtor to be unimpaired. *See Ultra Petroleum*, 624 B.R. at 202. In fact, the Code is silent as to whether such creditors are entitled to any postpetition interest at all. *Id.*

Finally, when a class of impaired creditors votes against a plan, the bankruptcy court may only confirm the plan if it is "fair and equitable" with respect to that class. § 1129(b)(1). Some courts have held a solvent debtor may be required to pay contractual or default interest, over and above the required federal judgment rate, to objecting, impaired creditors in order to satisfy this "fair and equitable" requirement and secure court approval of a reorganization plan. *See, e.g.*, *In re Dow Corning Corp.*, 456 F.3d 668, 680 (6th Cir. 2006); *In re Mullins*, 633 B.R. 1, 20 (Bankr. D. Mass 2021).

In this case, PG&E's confirmed plan provided for postpetition interest on plaintiffs' claims at the federal judgment rate—the same rate plaintiffs would be entitled to as impaired creditors. However, because plaintiffs were designated as unimpaired, they could not (1) vote on the reorganization plan or (2) argue that their treatment was not "fair and equitable" under § 1129(b)(1).

## B

Turning to the decisions below, we first address whether *Cardelucci* controls this case. PG&E argues—and the bankruptcy and district courts held—that *Cardelucci* established a broad rule that all unsecured claims in a solvent-debtor bankruptcy are entitled only to postpetition interest at the federal judgment rate, regardless of impairment status. But *Cardelucci* merely held that the phrase "interest at the legal rate" in § 726(a)(5) refers to the

federal judgment rate as defined by 28 U.S.C. § 1961(a). *Cardelucci*, 285 F.3d at 1234.   As explained above, § 726(a)(5) only applies to *impaired* chapter 11 claims via the best-interests test.   *See* 11 U.S.C. § 103(b); *Ultra Petroleum*, 624 B.R. at 202; *Energy Future Holdings*, 540 B.R. at 123–24.   *Cardelucci* therefore does not tell us what rate of postpetition interest must be paid on plaintiffs' *unimpaired* claims.

*Cardelucci* involved a debtor who filed for bankruptcy after a state court entered a civil judgment in favor of the creditors.   285 F.3d at 1233.   The parties agreed that the creditors were owed postpetition interest under § 726(a)(5), but they disagreed as to whether that provision required that interest be paid at the federal judgment or state law default rate.   *Id.*   This court opened its inquiry by explaining that the case involved "an award of postpetition interest *pursuant to 11 U.S.C. § 726(a)(5),*" and presented "the narrow but important issue of whether *such* post-petition interest is to be calculated using the federal judgment interest rate."   *Id.* (emphasis added).   We held that principles of statutory interpretation, among other reasons, compelled the conclusion that Congress intended "interest at the legal rate" in § 726(a)(5) to refer to the federal judgment rate.   *Id.* at 1234–35 ("Congress' choice of the phrase 'interest at the legal rate' suggests that it intended for bankruptcy courts to apply one uniform rate defined by federal statute.").

The bankruptcy and district courts in this case held that *Cardelucci* established a broad rule that all unsecured creditors of a solvent debtor are entitled to postpetition interest at the federal judgment rate.   Indeed, *Cardelucci* did not expressly limit its holding to impaired claims; it did not refer to impairment status at all.   *See id.* at 1234 ("Where a debtor in bankruptcy is solvent, *an unsecured creditor* is

entitled to 'payment of interest at the legal rate from the date of the filing of the petition' prior to any distribution of remaining assets to the debtor." (quoting § 726(a)(5)) (emphasis added).   PG&E thus contends *Cardelucci*'s holding extends to cases involving unimpaired claims.

This argument fails for a simple reason: *Cardelucci* interpreted language from a specific statutory provision— § 726(a)(5)—that does not apply to unimpaired claims. Rather, as discussed above, § 726(a)(5) only applies to chapter 11 cases through the best-interests test, § 1129(a)(7), which itself only applies to impaired creditors.  *See* § 103(b); *Ultra Petroleum*, 624 B.R. at 202; *Energy Future Holdings*, 540 B.R. at 123–24; 7 Collier on Bankruptcy ¶ 1129.02[7][a].  Though our opinion in *Cardelucci* did not say so, the creditors in that case were impaired.  Indeed, the creditors in *Cardelucci* had to be impaired for § 726(a)(5) to apply in the first place.  Moreover, the parties in *Cardelucci* agreed that the amount of interest owed hinged solely on the interpretation of § 726(a)(5).  *See Cardelucci*, 285 F.3d at 1233.  Thus, the fact that *Cardelucci* did not reference the creditors' impaired status—or limit the scope of its holding to impaired claims—is not surprising.  But *Cardelucci* provides no textual basis for applying § 726(a)(5) to unimpaired claims, nor could it for the reasons explained above.

We therefore decline to read *Cardelucci* as establishing the broad rule that PG&E advocates.  *Cardelucci* merely held that the phrase "interest at the legal rate" in § 726(a)(5) refers to the federal judgment rate.  *See, e.g.*, *Mullins*, 633 B.R. at 22 (citing *Cardelucci* for this proposition); *Ultra Petroleum*, 624 B.R. at 203 (same).  But this holding does not answer what rate of interest is required where § 726(a)(5) does not apply—including for unimpaired claims.  The

bankruptcy and district courts erred in concluding that *Cardelucci* settles the issue before us.

### C

The bankruptcy court alternatively held that even if *Cardelucci* does not limit plaintiffs to postpetition interest at the federal judgment rate, the Bankruptcy Code does. In essence, that court read several Code provisions as establishing a uniform postpetition interest rate for all unsecured claims in a solvent-debtor case. Because plaintiffs, in the bankruptcy court's view, received everything the Code entitled them to—that is, the full amount of their claims plus interest at the federal judgment rate—their "legal, equitable, and contractual rights" were not impaired under § 1124(1). *See In re Ultra Petroleum Corp.*, 943 F.3d 758, 763 (5th Cir. 2019) (holding impairment does not occur when the Code limits a creditor's rights); *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 204 (3d Cir. 2003) (same).

Analyzing this aspect of the bankruptcy court's holding requires us to first address an antecedent question: did the Bankruptcy Code displace the historic solvent-debtor exception? As discussed above, this equitable rule—widely recognized and applied under the Bankruptcy Act, even though it was not explicitly codified therein—entitled creditors to postpetition interest at the contract or default state law rate before a solvent debtor received surplus value from an estate. *See supra*, section III.A.1. We conclude passage of the Code did not abrogate the solvent-debtor exception, any more than passage of the Bankruptcy Act did so. The bankruptcy court thus erred in holding that the Code limits plaintiffs to recovery of postpetition interest at the federal judgment rate.

**1**

The Supreme Court has made clear that it "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) (quotation omitted); *see also Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."). Thus, while "[t]he Bankruptcy Code can of course override by implication," any such implication must be "unambiguous." *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 546 (1994).[4]

In this case, the parties agree that courts recognized a common-law, solvent-debtor exception under the Bankruptcy Act. And contrary to arguments made by PG&E and in the Dissent, we discern from the contemporary Code no "clear indication" that Congress meant to severely limit the scope of the solvent-debtor exception. *Cohen*, 523 U.S. at 221. Rather, the Code's text, history, and structure compel the opposite conclusion: that creditors like plaintiffs

---

[4] The Dissent correctly recognizes the Supreme Court's admonition that pre-Code practice cannot abrogate the Code's plain text. *See* Dissent at 36–37. But for the reasons discussed below, we cannot say the Code's text is clear that the equitable solvent-debtor exception does not apply to creditors who are designated as unimpaired. *See infra* at 21–23. And pre-Code practice remains relevant to the construction of provisions that are "subject to interpretation" or contain ambiguities. *Hartford Underwriters*, 530 U.S. at 10 (quotations omitted). Moreover, as we explain, the Dissent's reading of the Code cannot be squared with Congress' subsequent action to amend the Code after its passage. *See infra* at 24–25, 28.

continue to possess an "equitable right" to bargained-for postpetition interest when a debtor is solvent.  § 1124(1).

PG&E argues—and the bankruptcy court agreed—that the combination of §§ 502(b)(2) and 726(a)(5) reflects Congressional intent to establish a uniform rate of postpetition interest for all unsecured claims when a debtor is solvent.  Section 502(b)(2) prohibits the inclusion of "unmatured interest" as part of an allowed claim, codifying the long-standing rule that interest as part of a claim stops accruing once a bankruptcy petition is filed.  *See Sexton*, 219 U.S. at 344.  PG&E notes that § 502(b)(2)'s bar on postpetition interest is subject to only two statutory exceptions, including § 726(a)'s liquidation waterfall, which applies to impaired chapter 11 creditors through the best-interests test, § 1129(a)(7).[5]  To the extent that courts allowed for recovery of contractual postpetition interest under the Bankruptcy Act, PG&E asserts these Code provisions indicate Congress' intent to depart from this practice and ensure all unsecured creditors of a solvent debtor receive the same rate of interest.  The Dissent goes even farther, concluding that § 502(b)(2), alongside other Code provisions, mandates that creditors who are paid their allowed claims in full are not entitled to any postpetition interest, even when a debtor is solvent.

We are not persuaded.  No Code provisions—alone or together—unambiguously displace the long-established solvent-debtor exception or preclude supposedly unimpaired creditors from asserting an equitable right to contractual postpetition interest.  Notably, § 502(b)(2)'s prohibition on the collection of "unmatured interest" as part of a claim

---

[5] The second exception, which applies to oversecured creditors and is located at 11 U.S.C. § 506(b), is not relevant to this dispute.

effectively restates its predecessor provision, § 63 of the Bankruptcy Act. Bankruptcy Act of 1898, ch. 541, § 63, 30 Stat. 544, 562–63 (repealed) (excluding from recovery "costs incurred and interest accrued after the filing of the petition"). The Senate Report accompanying the passage of the Bankruptcy Code emphasized that § 502(b) simply restated "principles of [then] present law." S. Rep. No. 95-989, at 63 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5849. The mere recodification of § 63—under which the equitable solvent-debtor exception was widely applied, *see, e.g.*, *Saper*, 336 U.S. at 330 n.7—fails to reflect any Congressional instruction to limit a solvent debtor's obligation to pay interest on claims against it.

Moreover, § 502(b)(2) simply excludes postpetition interest from "the amount of" a creditor's allowed claim. But "there is a significant distinction between whether postpetition interest can be *part of* an allowed claim and whether there are circumstances under which the debtor may be required to pay postpetition interest *on* an allowed claim." *Mullins*, 633 B.R. at 15 (emphasis added); *see also Ultra Petroleum*, 624 B.R. at 195 (explaining that while "interest as part of a claim ceases to accrue upon the filing of a bankruptcy petition . . . in some circumstances, creditors may demand post-petition interest on their claims"); *Energy Future Holdings*, 540 B.R. at 111 (same). The text of § 502(b)(2) is entirely consistent with the conclusion that, in some instances, a creditor must receive postpetition interest *on* their allowed claim to be considered unimpaired.[6]

---

[6] The Dissent claims there is "no basis" for distinguishing between interest payments made *on* as opposed to *part of* an allowed claim. Dissent at 39. Yet it is the Dissent that ignores both the text of § 502(b)(2) and the weight of authority acknowledging this difference.

Indeed, PG&E concedes that plaintiffs are entitled to some interest on their allowed claims in this case.  Thus, PG&E's own argument forecloses the notion that § 502(b)(2) alone limits unimpaired creditors' ability to collect postpetition interest.

PG&E also points to § 726(a)(5).  But that provision does not unambiguously abrogate the equitable solvent-debtor exception because, as explained above, it only applies to *impaired* chapter 11 creditors via the best-interests test, § 1129(a)(7).  *See Ultra Petroleum*, 624 B.R. at 202; *Energy Future Holdings*, 540 B.R. at 123; 7 Collier on Bankruptcy ¶ 1129.02[7][a].  If Congress meant to limit all unsecured, chapter 11 creditors to interest at the federal judgment rate, it could have done so directly.  Instead, the Code only applies § 726(a)(5)'s limited grant of interest "at the legal rate" to impaired creditors, who (unlike unimpaired creditors) also receive other protections under the Code, including the right to vote on a plan, § 1126(a), and the right to invoke § 1129(b)(1)'s "fair and equitable" requirement.  This scheme does not reflect a "clear" requirement to fully depart from the solvent-debtor exception's equitable rule that creditors are entitled to postpetition interest pursuant to their contracts.  *Cohen*, 523 U.S. at 221.[7]

---

*See Ultra Petroleum*, 624 B.R. at 195; *Mullins*, 633 B.R. at 15; *Energy Future Holdings*, 540 B.R. at 111.

[7] Seeking to overcome the lack of any statute applying § 726(a)(5) to unimpaired creditors, PG&E next argues that payment of postpetition interest in bankruptcy is analogous to payment of interest on a judgment in federal court.  It is true that *Cardelucci* made such a comparison, albeit in dicta.  *See Cardelucci*, 285 F.3d at 1235.  PG&E reasons that Congress, by applying § 726(a)(5) to unsecured creditors via the best-interests test, confirmed that all awards of postpetition interest to such

The statutory history of § 1124 also supports our conclusion that the equitable solvent-debtor exception survives today. As noted above, no Code provision explicitly entitles a supposedly unimpaired creditor to *any* postpetition interest. *See Ultra Petroleum*, 624 B.R. at 202. However, Congress has foreclosed the possibility that creditors designated as unimpaired need not receive postpetition interest, despite this statutory vacuum. In 1994, Congress repealed a Code provision that stated that a creditor was unimpaired if it was paid the "the allowed amount of [its] claim." *See* § 1124(3) (repealed); Bankruptcy Reform Act of 1994, Pub. L. 103-394, § 213, 108 Stat. 4106, 4126. At least one court strictly interpreted § 1124(3), holding that a creditor may be classified as

---

creditors, regardless of impairment status, are akin to awards of post-judgment interest given at the federal judgment rate.

We are not convinced. Once again, PG&E cannot overcome the fatal flaw in its argument: no statute applies § 726(a)(5) and its limited award of postpetition interest "at the legal rate" to unimpaired claims. Thus, there is no "clear indication" that Congress meant to modify the solvent-debtor exception to limit unimpaired creditors to interest at this amount. *Cohen*, 523 U.S. at 221.

Moreover, we disagree with PG&E that the historic cases discussing the solvent-debtor exception treated awards of postpetition interest as akin to post-judgment interest. PG&E points to passing language from *Johnson*, a Fifth Circuit case, noting that another court had compared allowed bankruptcy claims to judgments. *See Johnson*, 190 F. at 465 (citing *In re John Osborn's Sons & Co.*, 177 F. 184 (2d Cir. 1910)). But PG&E directs us to no other historic case that made such a comparison. To the contrary, cases applying the solvent-debtor exception under the Bankruptcy Act repeatedly emphasized that the equitable purpose of the exception was to require debtors to honor their "expressly-bargained-for" contracts, lest they realize a windfall. *Ruskin*, 269 F.2d at 832; *see also, e.g.*, *Chicago, Milwaukee*, 791 F.2d at 528; *Debentureholders*, 679 F.2d at 270.

unimpaired if it was paid the full principal of its claim without any postpetition interest. *See In re New Valley Corp.*, 168 B.R. 73, 79–80 (Bankr. D.N.J. 1994). The House Reporter explained that the repeal of § 1124(3) was meant to preclude *New Valley*'s "unfair result" from occurring again. H.R. Rep. No. 103-835, § 214 at 48 (1994). These actions by Congress confirm that creditors of a solvent debtor who are designated as unimpaired *must* receive postpetition interest on their claim—notwithstanding § 502(b)(2), or the fact that no Code provision expressly entitles such creditors to unaccrued interest.

In addition to Congressional action, the solvent-debtor exception fits comfortably within the text of the Code—specifically, its requirement that a debtor's plan leave unaltered a creditor's "legal, *equitable*, and contractual rights." § 1124(1) (emphasis added); *see Law v. Siegel*, 571 U.S. 415, 421 (2014) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." (quotation omitted)). While, as discussed, no Code provision legally entitles supposedly unimpaired creditors to postpetition interest, pre-Code practice conclusively establishes creditors' equitable entitlement to contractual postpetition interest when a debtor is solvent, subject to any other countervailing equities. *See supra*, section III.A.1. Absent this equitable right, creditors whose claims were paid in full and designated as unimpaired would not be entitled to any postpetition interest—the exact result Congress sought to preclude by repealing § 1124(3). *See Energy Future Holdings*, 540 B.R. at 123 (explaining that unimpaired creditors' equitable right to interest "resolves a conflict between" § 502(b)(2) and the repeal of § 1124(3)).

Case: 19-30088   Doc# 12894   Filed: 08/30/22   Entered: 08/30/22 14:54:08   Page 25 of 55

Finally, our conclusion that the equitable solvent-debtor exception survives is supported by the Code's structure.  The Code offers procedural and substantive protections for creditors who are impaired by a plan:  including the right to vote on a plan, § 1126(a), and the ability for a dissenting, impaired class to invoke § 1129(b)(1)'s requirement that a plan be "fair and equitable" to be confirmed.  By "defin[ing] impairment in the broadest possible terms," *L&J Anaheim*, 995 F.2d at 942 (quotation omitted), Congress ensured that creditors whose rights were altered in any way by a plan could avail themselves of these protections.  *See PPI Enters.*, 324 F.3d at 203 ("The Bankruptcy Code creates a presumption of impairment so as to enable a creditor to vote on acceptance of the plan." (quotation omitted)).

But PG&E wants to have its cake and eat it too:  it seeks to pay plaintiffs the same, reduced interest rate as impaired creditors, while depriving them of the statutory protections that impaired creditors enjoy.  *See Energy Future Holdings*, 540 B.R. at 123 (equitable principles require that unimpaired creditors not be treated inferior to impaired creditors); *Ultra Petroleum*, 624 B.R. at 203 (same).[8]  We decline to adopt a reading of the Code that permits PG&E to end-run these statutory rights while reaping a windfall of hundreds of millions of dollars.  Such an outcome is contrary to both a plain text reading of the Code and equitable principles that persist under the modern bankruptcy regime.  *See Dow*

---

[8] Plaintiffs note that some courts (including one circuit court) have held that, in a solvent-debtor scenario, a "fair and equitable" plan under § 1129(b)(1) may require paying unsecured creditors interest at the contractual rate before the debtor can receive surplus value.  *See Dow Corning*, 456 F.3d at 677–78; *Mullins*, 633 B.R. at 20.  We express no opinion on this issue, but merely point out that PG&E's designation of plaintiffs as unimpaired precluded them from potentially making this argument to the bankruptcy court.

*Corning*, 456 F.3d at 671 ("[S]olvent-debtor cases present a situation where all parties ought to be granted the benefit of their bargains, unless the equities compel a contrary result."). Rather, a more sensible reading of the Code gives solvent debtors a choice: compensate creditors in full pursuant to the solvent-debtor exception or designate them as impaired claimants entitled to the full scope of the Code's substantive and procedural protections.

In sum, we agree with plaintiffs that the Code lacks any "clear indication," *Cohen*, 523 U.S. at 221, that Congress meant to displace the historic solvent-debtor exception. *See Ultra Petroleum*, 624 B.R. at 198–200 (holding the same). In so holding, we join multiple sibling circuits in recognizing that the equitable solvent-debtor exception—and its core principle that creditors should be made whole when the bankruptcy estate is sufficient—persists under the Code. *See Dow Corning*, 456 F.3d at 680 ("We conclude, like the other courts to have considered this issue, that there is a presumption that [contract or state law] default interest should be paid to unsecured claim holders in a solvent debtor case."); *Ultra Petroleum*, 943 F.3d at 765 ("As other circuits have recognized, absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights." (quotation omitted)); *Gencarelli v. UPS Cap. Bus. Credit*, 501 F.3d 1, 7 (1st Cir. 2007) ("This is a solvent debtor case and, as such, the equities strongly favor holding the debtor to his contractual obligations . . . ."). Accordingly, under the Code, unsecured creditors of a solvent debtor retain an equitable right to postpetition interest pursuant to their contracts, subject to any other equities in a given case. A failure to compensate creditors according to this equitable right as part of a bankruptcy plan results in impairment. *See* § 1124(1).

**2**

The Dissent adopts a radically different approach. It concludes that the Code's text clearly establishes that unsecured creditors are not entitled to *any* postpetition interest from a solvent debtor if they are paid their allowed claims in full. It is telling that not even PG&E advocates this position, instead conceding that the Code entitles plaintiffs, at minimum, to postpetition interest on their claims at the federal judgment rate. Likewise, post-*New Valley* courts all agree that a solvent debtor must pay creditors *some* postpetition interest to classify their claims as unimpaired. *See Ultra Petroleum*, 624 B.R. at 203–04; *Energy Future Holdings*, 540 B.R. at 124; *The Hertz Corp.*, 637 B.R. at 800–01.

This unanimity is not surprising. The Dissent's reading of the Code cannot be squared with Congress' repeal of § 1124(3) following the *New Valley* decision. As explained, Congress eliminated this provision expressly to prevent *New Valley*'s "unfair result," which allowed solvent debtors to designate creditors as unimpaired simply because their allowed claims were paid in full. H.R. Rep. No. 103-835, § 214 at 48. To adopt the Dissent's reasoning would effectively nullify the 1994 amendment and allow solvent debtors to replicate "exactly the same result that led Congress to delete section 1124(3)" in the first place. *Energy Future Holdings*, 540 B.R. at 123; *see also PPI Enters.*, 324 F.3d at 203 (adopting bankruptcy court's holding that, after the repeal of § 1124(3), unimpaired creditors must receive interest from a solvent debtor). We have no grounds for ignoring Congress' clear instruction on this matter.

The Dissent nonetheless insists that Congress' repeal of § 1124(3) does not support our holding. In essence, it

concludes that because Congress left various other provisions of the Code intact—and because these provisions, in the Dissent's view, clearly dictate that unsecured creditors paid their claims in full are unimpaired—the plaintiffs' claims remain governed by the "general rule disallowing postpetition interest." *See* Dissent at 43, 50 (quotation omitted). But that "general rule disallowing postpetition interest" derives from a provision—§ 502(b)(2)—that cannot carry the weight the Dissent ascribes to it. *See supra* at 21–23. We find it implausible that Congress meant to abrogate the equitable solvent-debtor exception by recodifying § 63 of the Bankruptcy Act, under which that exception was widely applied. Moreover, the fact that the best-interests test created by § 1129(a)(7) only applies to impaired creditors is hardly grounds for concluding that creditors designated as unimpaired need not receive any interest at all when a debtor is solvent, for the reasons explained above. *See supra* at 23–27.

More broadly, the Dissent's framing of the issue—that is, "whether unsecured creditors holding unimpaired claims . . . are entitled to postpetition interest," Dissent at 34— elides the antecedent question of what constitutes unimpairment in the first place. As discussed, the Code "creates a presumption of impairment," *PPI Enters.*, 324 F.3d at 203, by requiring that a debtor's plan "leave[] unaltered" an unimpaired creditor's "legal, *equitable*, and contractual rights," § 1124(1) (emphasis added). *See also L&J Anaheim*, 995 F.2d at 942 (emphasizing that Congress "define[d] impairment in the broadest possible terms" (citation omitted)). We clarify today that, pursuant to the solvent-debtor exception, unsecured creditors possess an "equitable right" to postpetition interest when a debtor is

solvent.  § 1124(1).[9]  A failure to provide for postpetition interest according to this equitable right as part of a bankruptcy plan results in impairment.  No Code provision

---

[9] The Dissent would hold that the "equitable rights" referred to by § 1124(1) encompass only a single right:  the "right to an equitable remedy for breach of performance," which is part of a claim pursuant to 11 U.S.C. § 101(5).  Dissent at 40, 51–52.  But this novel reading relies on the faulty premise that the "equitable rights" contemplated by § 1124(1) encompass only those rights that are part of an allowed claim.  Numerous courts have rejected this logic, holding that a claim may entitle its holder to postpetition interest as an equitable right when a debtor is solvent, even though such a right is not part of the claim itself.  *See, e.g.*, *Ultra Petroleum*, 624 B.R. at 203–04, *Energy Future Holdings*, 540 B.R. at 124, *supra* at 51–52.  That § 101(5) indisputably confers a statutory right to an equitable remedy *as part of a claim* is hardly grounds for construing § 1124(1)'s reference to equitable rights in the narrow fashion advocated by the Dissent.  This is especially true, given that the Dissent's construction would conflict with the ample textual, historical, and structural evidence we survey above supporting the solvent-debtor exception's survival under the Code.  *See supra* at 20–27.

Moreover, we do not hold (as the Dissent asserts) that claims "retroactively" become impaired when a creditor of a solvent debtor is denied postpetition interest.  Dissent at 53.  Impairment is a concept rooted in § 1124, "the plain language of [which] says that a creditor's claim is 'impaired' unless its rights are left 'unaltered' *by the Plan*."  *L&J Anaheim*, 995 F.2d at 943 (emphasis added); *see also PPI Enters.*, 324 F.3d at 204 ("Impairment results from what the *plan* does . . . ." (quotation omitted) (emphasis in original)).  Our holding "recognizes that the equitable prong of § 1124 applies differently when the debtor is solvent"—as PG&E undisputedly is in this case—by entitling claim holders to postpetition interest as an equitable right.  *Ultra Petroleum*, 624 B.R. at 203.  A failure by a bankruptcy plan to leave this equitable right unaltered results in impairment from the outset, unless and until a plan is amended accordingly.

dictates otherwise, and no other result coheres the Code with Congress' repeal of § 1124(3).[10]

**3**

Having concluded that the equitable solvent-debtor exception survives under the Code, we now address whether the bankruptcy court erred in holding that PG&E's plan provided plaintiffs with all the Code entitled them to as unimpaired creditors. We have little trouble concluding it did.

Once again, because PG&E designated the plaintiffs' claims as unimpaired, plaintiffs' "legal, equitable, and contractual rights" must be "unaltered" by the reorganization plan. § 1124(1). Prior to PG&E's bankruptcy filing, plaintiffs possessed a contractual right to interest on debts not paid—either at rates stipulated by their contracts or the California default rate of ten percent. *See* Cal. Civ. Code § 3289(b). But this contractual right, as applied to postpetition debts, was superseded by the Code—specifically, by § 502(b)(2)'s prohibition on the inclusion of "unmatured interest" as part of a claim. *See Ultra Petroleum*, 943 F.3d at 763.[11] As a result, plaintiffs' claims

---

[10] Although we rely on the text, history, and structure of the Code to reach today's result, even the Dissent's authorities acknowledge that pre-Code practice is relevant in interpreting sections of the Code that are otherwise incoherent or inconsistent. *See, e.g.*, *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41 (1989).

[11] As our sibling circuits have held, an alteration of pre-bankruptcy rights that occurs by operation of the Code does not result in impairment. *Ultra Petroleum*, 943 F.3d at 763 ("The plain text of § 1124(1) requires that 'the plan' do the altering."); *PPI Enters.*, 324 F.3d at 204 ("[W]e must examine whether the plan itself is a source of limitation on a creditor's legal, equitable, or contractual rights."); *see also In re Sylmar*

do not include any contractual right to postpetition interest. Moreover, plaintiffs did not have a legal right to interest on their claims, as no provision of the Code expressly provides for postpetition interest for unimpaired creditors. *Energy Future Holdings*, 540 B.R. at 123–24.

Because PG&E was solvent, however, plaintiffs' claims *did* entail an equitable right to receive postpetition interest under the solvent-debtor exception. *See Ultra Petroleum*, 624 B.R. at 203–04; *Dow Corning*, 456 F.3d at 678 (emphasizing that "equitable considerations operate differently when the debtor is solvent"). This equitable right entitled plaintiffs to recovery of interest pursuant to their contracts, subject to any countervailing equities, before PG&E's shareholders received surplus value. However, PG&E's plan did not compensate plaintiffs accordingly. Rather, the plan provided for postpetition interest at the much lower federal judgment rate of 2.59 percent. Thus, PG&E's plan—and not the Code—altered plaintiffs' equitable right to postpetition interest under the solvent-debtor exception. *Ultra Petroleum*, 624 B.R. at 203–04; *Energy Future Holdings*, 540 B.R. at 123–24. The bankruptcy court erred in holding that plaintiffs received all that the Code entitled them to.

**D**

All that remains is to determine how much postpetition interest plaintiffs, as unimpaired creditors, are entitled to in this case. We reiterate that creditors of a solvent debtor—

---

*Plaza, L.P.*, 314 F.3d 1070, 1075 (9th Cir. 2002) ("In enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy rights." (quotation omitted)).

including plaintiffs in this case—enjoy an equitable right to contractual or state law default postpetition interest before allocation of surplus value from a bankruptcy estate. *See, e.g.*, *Dow Corning*, 456 F.3d at 679–80 (noting that the solvent-debtor exception entails "a presumption that [contractual or state law] default interest should be paid to unsecured claim holders"). However, we are cognizant of the Supreme Court's admonition that "exceptions to the denial of postpetition interest are not rigid," and that "the touchstone of each decision on allowance of interest in bankruptcy has been a balance of equities between creditor and creditor or between creditors and the debtor." *Ron Pair*, 489 U.S. at 248 (cleaned up). Accordingly, we remand to the bankruptcy court to weigh the equities and determine what rate of interest plaintiffs are entitled to in this instance.

We join our sibling circuits, however, in emphasizing that the solvent-debtor exception, though equitable in nature, does not give bankruptcy judges "free-floating discretion to redistribute rights in accordance with [their] personal views of justice and fairness." *Dow Corning*, 456 F.3d at 679 (quoting *Chicago, Milwaukee*, 791 F.2d at 528). Rather, "absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights." *Ultra Petroleum*, 943 F.3d at 765 (quotation omitted). We are confident that in most solvent-debtor cases involving unimpaired creditors, the equitable role of the bankruptcy court will be "simply to enforce creditors' rights according to the tenor of the contracts that created those rights." *Chicago, Milwaukee*, 791 F.2d at 528. However, we acknowledge the possibility that cases could arise where payment of contractual or default interest could impair the ability of other similarly situated creditors to be paid in full, or where other "compelling equitable considerations" could counsel in

favor of payment of postpetition interest at a different rate. *Dow Corning*, 456 F.3d at 679; *Ultra Petroleum*, 943 F.3d at 765.

We see no sign of any "compelling equitable considerations" in this case that would defeat the presumption that plaintiffs are entitled to contractual or default postpetition interest. However, we acknowledge that the record before us is limited.[12] We therefore remand to the bankruptcy court, which is most familiar with the facts of the case and the financial conditions of the parties.

## IV

For the reasons stated, we **REVERSE** the district court's opinion affirming the bankruptcy court's postpetition interest ruling. We **REMAND** to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

---

IKUTA, Circuit Judge, dissenting:

This case raises the question whether unsecured creditors holding unimpaired claims in bankruptcy under 11 U.S.C. § 1124(b) are entitled to post-petition interest on their claims when the debtor is solvent. The text of the Code provides a clear answer: No. In order to reach the opposite result, the majority erroneously holds that pre-Code practice is binding unless the text of the Code clearly abrogates it. Maj. at 20–

---

[12] The record fails to disclose, for example, the extent of PG&E's solvency post-bankruptcy, or the precise amount of postpetition interest that would be owed to plaintiffs were the contract or default state law rates enforced.

20, 27. But the Supreme Court has directed us to take the exact opposite approach: so long as the Code is clear, we do not refer to pre-Code practice. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Here, the text of the Code is clear and does not authorize an award of post-petition interest to unimpaired creditors. I therefore dissent.

I

The debtor in this case is Pacific Gas & Electric Company (PG&E), a California-based utility company. Between 2015 and 2018, California suffered a series of catastrophic wildfires. PG&E faced over $30 billion in potential liability related to those wildfires, excluding punitive damages and civil penalties. Unrelated to the wildfires, PG&E also owed billions of dollars to traditional creditors. Although PG&E was solvent at the time it filed its petition in bankruptcy (its assets exceeded known liabilities by approximately $20 billion), PG&E concluded that it lacked the resources to resolve wildfire claims that had been asserted against it (as well as future wildfire claims related to the fires between 2015 and 2018) while also continuing to provide electric and gas services, invest in wildfire-related safety practices, and service the billions of dollars in traditional debt obligations. Accordingly, on January 29, 2019, PG&E filed for Chapter 11 bankruptcy, which would allow PG&E to continue its operations while also resolving all wildfire claims. In September 2019, PG&E filed its proposed bankruptcy plan.

The appellants here are unsecured trade creditors in PG&E's bankruptcy proceedings who formed the Ad Hoc Committee of Holders of Trade Claims ("Trade Committee"). In the Chapter 11 proceedings, PG&E proposed a plan that would give the members of the Trade Committee the full cash value of their allowed claims as of

the date the petition was filed.  Under 11 U.S.C. § 1124, these claims were not "impaired."  The plan also provided that the members of the Trade Committee would receive interest on their claims at the federal judgment rate accruing from the petition date through the date of distribution.

Rather than argue that the plan should designate their claims as "impaired," the members of the Trade Committee argued that because PG&E was a solvent debtor, and the proposed plan treated their claims as unimpaired, they were entitled to post-petition interest on their claims at the rate provided for by contract or applicable state law.  The bankruptcy court rejected this argument, concluding that, under *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002), unimpaired creditors in a solvent-debtor case are entitled to post-petition interest only at the federal judgment rate.  The district court affirmed.

On appeal, the Trade Committee members assert that they are entitled to post-petition interest at the contract or state default rates.  According to the Trade Committee, this result is compelled by the solvent-debtor exception which had been adopted and applied by bankruptcy courts before the Code was enacted.  The Trade Committee asserts that we must interpret the Code in light of this pre-Code practice, and the majority adopts this reasoning.

II

A

In order to address the Trade Committee's argument, it is crucial to understand the Supreme Court's framework for interpreting the Code.  According to the Supreme Court, in interpreting the Code, as with any other congressional enactment, "we begin with the understanding that Congress

'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).  Therefore, "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (cleaned up).  "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *Ron Pair*, 489 U.S. at 240–41.

Because the statutory text takes precedence, practices adopted by bankruptcy courts before the Code was enacted play a limited role.  Indeed, the Court has recognized that Congress's intent in enacting the Code was to "codify creditors' rights *more clearly than the case law.*" *Id*. at 248 (emphasis original) (cleaned up).  Therefore, "[w]here the meaning of the Bankruptcy Code's text is itself clear . . . its operation is unimpeded by contrary . . . prior practice." *Hartford*, 530 U.S. at 10 (citation omitted); *see also Ron Pair*, 489 U.S. at 241 (holding that where Congress expresses its intent "with sufficient precision," then "reference to legislative history and to pre-Code practice is hardly necessary").  The Supreme Court has relied on pre-Code practice merely to clarify ambiguities in the text of the Code, or to "fill in the details of a pre-Code concept that the Code had adopted without elaboration." *Hartford*, 530 U.S. at 11.  In other words, pre-Code practice is "a tool of construction, not an extratextual supplement," *id.* at 10, and "there are limits to what may constitute an appropriate case" for employing that tool of construction, *Ron Pair*, 489 U.S. at 245.

B

It is important to understand how this interpretative framework works with the Code's statutory scheme. "A business may file for bankruptcy under either Chapter 7 or Chapter 11" of the Code. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978 (2017). "In Chapter 7, a trustee liquidates the debtor's assets and distributes them to creditors." *Id.* (citing 11 U.S.C. § 701 *et seq.*). "In Chapter 11, debtor and creditors try to negotiate a plan that will govern the distribution of valuable assets from the debtor's estate and often keep the business operating as a going concern." *Id.*

In a case filed under chapter 11 of the Code, the debtor-in-possession or trustee proposes a plan of reorganization, which designates "classes of claims" and interests. The Code defines the term "claim" as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5). A claim is allowed in bankruptcy proceedings if the creditor files a proof of claim, and there is no objection. *Id.* § 502(a). If an objection is made, the bankruptcy court (after notice and a hearing) will allow the claim in the amount determined by the court subject to several exceptions. *Id.* § 502(b).

A key exception here is for "unmatured interest." *Id.* Section 502(b)(2) establishes that "creditors are not entitled to include un-matured or post-petition interest as part of their claims in the bankruptcy proceeding and cannot collect such interest from the bankruptcy estate." *In re Pardee*, 193 F.3d 1083, 1085 n.3 (9th Cir. 1999). In light of § 502(b)(2), there is no dispute that an allowed claim stops accruing interest as of the date the debtor files a petition in bankruptcy. *See In re Weiss*, 251 B.R. 453, 463 (Bankr. E.D. Pa. 2000). All

other circuits are in accord.[1] Because § 502(b)(2) establishes "the general rule disallowing postpetition interest," *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 373 (1988), it "does not simply prohibit certain creditors from filing a proof of claim for post-petition interest; it prohibits those creditors from collecting the interest from the bankruptcy estate." *Victor*, 121 F.3d at 1387. There is no basis for the majority's interpretation of § 502(b)(2) as prohibiting interest *as part of* an allowed claim but not prohibiting interest *on* a claim once it is allowed. Maj. at 22–23.

Once the allowed claims have been identified, the trustee must specify which classes of claims are impaired and which are unimpaired. *See* 11 U.S.C. § 1123(a)(2), (3). An allowed claim is unimpaired if it "leaves unaltered the legal,

---

[1] *See Gencarelli v. UPS Cap. Bus. Credit*, 501 F.3d 1, 6 n.2 (1st Cir. 2007) (noting that § 502(b)(2) is an "explicit statutory provision" that bars post-petition interest); *SummitBridge Nat'l Invs. III, LLC v. Faison*, 915 F.3d 288, 295 (4th Cir. 2019) (describing § 502(b)(2) as a "general rule against allowance" of post-petition interest); *Matter of Johnson*, 146 F.3d 252, 260 (5th Cir. 1998) ("Post-petition interest is disallowed against the bankruptcy estate under section 502." (citation omitted)); *In re Kentucky Lumber Co.*, 860 F.2d 674, 676 (6th Cir. 1988) (citing § 502(b)(2) to explain the "general rule of actions in bankruptcy [] that unsecured creditors are not entitled to postpetition interest upon their allowable claims"); *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 155 (7th Cir. 1993) ("[C]reditors cannot recover post-petition interest on their claims. This rule has been written into the Bankruptcy Code at 11 U.S.C. § 502(b)(2)."); *Bursch v. Beardsley & Piper, a Div. of Pettibone Corp.*, 971 F.2d 108, 114 (8th Cir. 1992) ("In general, under section 502(b), a creditor is not entitled to postpetition prejudgment interest because such interest is unmatured at the time of filing."); *United States v. Victor*, 121 F.3d 1383, 1387 (10th Cir. 1997) ("Section 502(b) does not simply prohibit certain creditors from filing a proof of claim for post-petition interest; it prohibits those creditors from collecting the interest from the bankruptcy estate.").

equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest."[2]  *Id.* § 1124(1).  Reading this definition together with § 502(b)(2) and § 101(5) (defining a "claim" as a "right to payment" or a "right to an equitable remedy for breach of performance," *id.* § 101(5)), a claim is unimpaired so long as the proposed plan gives the creditor the same legal or contractual right to payment, or right to an equitable remedy, that the creditor had as of the date the petition was filed.  Such a claim would include any interest that had matured by the time the petition was filed.  *See id.* § 1124(1).  The statutory language provides no basis for the majority's theory that a creditor's "claim," which may not include post-petition interest, *see* § 502(b), is nevertheless deemed "impaired" if the debtor turns out to be solvent and the creditor does not obtain post-petition interest at the end of the bankruptcy case.  Maj. at 29–30 & n.9.

Because creditors with unimpaired claims are set to receive full payment of those claims under the plan, they are conclusively presumed to have accepted the plan.  *See id.* § 1126(f).  By contrast, creditors with impaired claims are entitled to vote on whether to accept or reject a plan, *see id.* § 1126(a), and the plan cannot be confirmed by consent unless each class of claims has accepted the plan, *see id.* § 1129(a)(8).  If all classes of impaired claims do not accept the plan, the bankruptcy court can still approve the plan "provided the plan is fair and equitable and does not unfairly discriminate against any impaired claims, and the plan meets all the statutory requirements of § 1129(a)."  *In re Barakat,*

---

[2] A claim may be unimpaired even if the holder of the claim is deprived of a contractual or legal right to demand accelerated payment under certain circumstances.  11 U.S.C. § 1124(2).

99 F.3d 1520, 1524 (9th Cir. 1996) (internal citation omitted).

Although a claim stops accruing interest at the time the petition in bankruptcy is filed, § 502(b)(2), the members of the Trade Committee argue that they are nevertheless entitled to post-petition interest under the solvent debtor exception applied in pre-Code practice. Before the Code was enacted, bankruptcy proceedings were governed by the Bankruptcy Act of 1898 ("the Bankruptcy Act"). Like § 502(b)(2) of the modern Code, § 63 of the Bankruptcy Act prohibited an award of post-petition interest to creditors. *See* Bankruptcy Act of 1898, ch. 541, § 63, 30 Stat. 544, 562–63 (repealed) (excluding "costs incurred and interests accrued after the filing of the petition" from allowed claims). However, courts recognized equitable exceptions to § 63 of the Bankruptcy Act. *See Ron Pair*, 489 U.S. at 246. One of those equitable exceptions, known as the solvent-debtor exception, "allowed postpetition interest when the debtor ultimately proved to be solvent." *Id.*

In enacting the Code, Congress implicitly incorporated this solvent debtor exception in certain circumstances, and therefore identified exceptions to § 502(b)(2)'s "general rule disallowing postpetition interest." *Timbers of Inwood Forest*, 484 U.S. at 373. For example, although an allowed claim in a Chapter 7 case does not include post-petition interest, *see* 11 U.S.C. § 502(b), the holder of such a claim may nevertheless receive post-petition interest as part of the distribution of property of the estate after higher priority distributions have been made, *see id.* § 726(a)(5) (providing that the fifth priority of property distribution is "in payment of interest at the legal rate from the date of the filing of the petition" on an allowed claim.). The Code also implicitly incorporated the solvent debtor exception in the "best

interest of creditors" tests set forth in § 1129(a)(7)(a)(ii).[3] This section provides that, to confirm a proposed plan, creditors with unsecured *impaired* claims must accept the plan or receive property of a value "as of the effective date of the plan, that is not less than . . . such holder would so receive or retain if the debtor were liquidated under chapter 7" of the Code. *Id.* 1129(a)(7). This means that a Chapter 11 plan cannot be confirmed unless each objecting, unsecured creditor holding impaired claims receives the same post-petition interest as that creditor would have received under § 726(a)(5) if the debtor's estate had been liquidated. *See In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002) (citing 11 U.S.C. § 726(a)(5)). This section applies only to unsecured creditors holding impaired claims.[4] 11 U.S.C. § 1129(a)(7).

As these provisions demonstrate, "Congress knew how to draft the kind of statutory language that petitioner seeks to read into [the Code]." *State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 137 S. Ct. 436, 444 (2016); *see* 11 U.S.C.

---

[3] The best interest of creditors test is also available in a Chapter 12 or Chapter 13 bankruptcy, *see* 11 U.S.C. § 1225(a)(4) and § 1325(a)(4).

[4] Congress specified other circumstances where post-petition interest was allowed. Congress permitted an award of contract-rate interest for creditors holding secured claims, up to the amount of the creditor's collateral. *See* 11 U.S.C. § 506(b). Undersecured creditors are not entitled to post-petition interest. *Timbers of Inwood Forest*, 484 U.S. at 373. In a Chapter 13 bankruptcy, Congress also allowed for post-petition interest on nondischargeable debts "to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims," 11 U.S.C. § 1322(b)(10). Nondischargeable debts are specified in 11 U.S.C. § 523 and include tax debts, *id.* § 523(a)(1), debts for money procured through fraud, *id.* § 523(a)(2), and restitution payments under Title 18, *id.* § 523(a)(13).

§§ 506(b), 726(a)(5), 1127(a)(7), 1322(b)(10).  But despite incorporating exceptions to the general rule disallowing post-petition interest into these specific sections, Congress chose not to make a similar exception authorizing an award of post-petition interest to unsecured creditors holding unimpaired claims, regardless of whether the debtor ends up solvent.  As a general rule, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."  *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (citation omitted).  This canon of construction has even greater weight in the bankruptcy context, where the Supreme Court has warned us not "to inquire beyond the plain language of the statute," *Ron Pair*, 489 U.S. at 241, where Congress's "statutory scheme is coherent and consistent," *id.* at 240.  Accordingly, we should conclude that unsecured creditors holding unimpaired claims are governed by "the general rule disallowing postpetition interest," even in a solvent debtor case.  *Timbers of Inwood Forest*, 484 U.S. at 373.

Therefore, because the members of the Trade Committee hold unsecured claims classified as unimpaired, I would hold that they are not entitled to post-petition interest, despite PG&E's solvency.

### III

Notwithstanding the absence of any provision entitling an unimpaired creditor to post-petition interest, as the majority itself recognizes, *see* Maj. at 24, the majority nevertheless decides that unimpaired creditors are entitled to post-petition interest—even though Congress chose not to make an exception for such creditors.  All of the majority's justifications for this addition are flawed.

A

The majority's central rationale is that unimpaired creditors are entitled to the post-petition interest they would have received under pre-Code practice because Congress did not expressly abrogate such practice. Maj. at 21–22. The majority's argument proceeds in several steps. First, it claims (contrary to the Supreme Court's direction) that there is a presumption that the Code incorporates pre-Code practice unless the Code contains a clear indication that Congress intended to abrogate that practice. *See* Maj. at 20–23 (citing *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998)). Under pre-Code practice, courts awarded post-petition interest to unimpaired creditors, even though § 63 of the Bankruptcy Act precluded the accrual of interest on a claim once the petition in bankruptcy has been filed. Because Congress did not expressly state that bankruptcy courts must stop awarding post-petition interest to unimpaired creditors, and § 502(b)(2) is just a recodification of § 63, the majority infers that courts can continue to award post-petititon interest to unimpaired creditors notwithstanding § 502(b)(2). Maj. at 20–27.

This reasoning fails because the majority's underlying principle—that pre-Code practice applies unless Congress clearly abrogated it—is wrong. As explained above, courts must start with the language of the Code and rely on pre-Code practice only as "a tool of construction, not an extratextual supplement," *Hartford*, 530 U.S. at 10. "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute," including by looking to pre-Code practice. *Ron Pair*, 489 U.S. at 240–41. Moreover, because "the [pre-Code] exceptions to the denial of postpetition interest are not rigid doctrinal categories" but are instead

"flexible guidelines" that were "developed by the courts in the exercise of their equitable powers," there is "no reason to think that Congress, in enacting a contrary standard, would have felt the need expressly to repudiate it." *Id.* at 248 (cleaned up).

The majority bases its erroneous rule of interpretation on statements taken out of context from Supreme Court decisions. In its central statement of this "rule," the majority cites *Cohen v de la Cruz* for the proposition that the Supreme Court "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." Maj. at 20 (citing 523 U.S. at 221). But in context, *Cohen* faithfully followed the Supreme Court's textualist approach to the Code. *Cohen* construed 11 U.S.C. § 523(a)(2)(A), which makes nondischargeable "any debt . . . for money . . . to the extent obtained by . . . actual fraud." 523 U.S. at 214–15. *Cohen* held that the statutory language encompassed an award against the debtor of treble damages, attorneys' fees, and costs due to the debtor's fraudulent conduct. *Id.* at 219. In so holding, *Cohen* first performed a thorough textual analysis, *see id.* at 217–21, and concluded that, "[w]hen construed in the context of the statute as a whole . . . § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud," *id.* at 220–21. Only after an in-depth analysis of the statutory text did the Court turn to pre-Code practice for confirmation of its interpretation, stating that "[t]he history of the fraud exception *reinforces* our reading of § 523(a)(2)(A)." *Id.* at 221 (emphasis added). Because the statutory language in § 523(a)(2)(A) was substantially the same as the language in the Bankruptcy Act, the Court stated that it would not "read the Bankruptcy Code to erode past

bankruptcy practice absent a clear indication that Congress intended such a departure, and the change to the language of § 523(a)(2)(A) in 1984 in no way signals an intention to narrow the established scope of the fraud exception along the lines suggested by petitioner." *Id.* at 220–21 (cleaned up). In other words, the Court confirmed its interpretation of statutory language by reference to pre-Code interpretation of substantially the same statutory language. This by no means gives courts carte blanche to give creditors rights unsupported by (and inconsistent with) the Code.[5]

Once the majority's erroneous approach is eliminated, there is no support for the majority's conclusion. The majority's boon to unimpaired creditors neither interprets an ambiguous phrase nor "fill[s] in the details of a pre-Code concept that the Code had adopted without elaboration," *Hartford*, 530 U.S. at 11. Instead, the majority overrides the scheme set forth in the Code, which does *not* allow for an award of post-petition interest to unimpaired creditors but rather adopted a different scheme that incorporated the solvent debtor exception in limited circumstances, *see* 11 U.S.C. §§ 506(b), 726(a), 1129(a)(7)(A)(ii), 1322(b)(10). In short, the majority is using pre-Code practice as an "extratextual supplement" in violation of Supreme Court directions, *Hartford*, 530 U.S. at 10, and therefore exceeds

---

[5] The majority's reliance on *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494 (1986), and *BFP v. Resolution Trust Corporation*, 511 U.S. 531 (1994), is equally flawed. *BFP* relied on pre-Code practice merely to clarify the meaning of an ambiguous phrase, *see* 511 U.S. at 543, 546–47, and *Midlantic* relied on pre-Code practice to "fill in the details" of the "codification of trustee's abandonment power" that "the Code had adopted without elaboration," *Hartford*, 530 U.S. at 11.

the "limits to what may constitute an appropriate case" for relying on pre-Code practice, *Ron Pair*, 489 U.S. at 245.

Contrary to the majority, its ruling is not supported by our sister circuits. Maj. at 27. None of the cases the majority cites awarded post-petition interest to *unimpaired* creditors pursuant to the solvent-debtor exception. For example, the Sixth Circuit held that *impaired* creditors in a solvent debtor case are generally entitled to post-petition interest at the contract rate pursuant to 11 U.S.C. § 1129(b). *See In re Dow Corning Corp.*, 456 F.3d 668, 677–80 (6th Cir. 2006). The Sixth Circuit did not address unimpaired claims. The First Circuit held that a creditor could be entitled to bargained-for prepayment penalties because the debtor was solvent, *see Gencarelli v. UPS Cap. Bus. Credit*, 501 F.3d 1, 6 (1st Cir. 2007), but did not address post-petition interest, let alone whether such interest applies to unimpaired claims in a solvent debtor case. To the contrary, the First Circuit noted that cases addressing post-petition interest were "inapposite" because, unlike the prepayment penalties at issue in the case, post-petition interest is barred by "an explicit statutory provision." *Id.* at 6 n.2 (citing 11 U.S.C. § 502(b)(2)). Finally, although the Fifth Circuit stated in dicta that it discerned "no reason why the solvent-debtor exception could not apply" to unimpaired claims, *In re Ultra Petroleum Corp.*, 943 F.3d 758, 765 (5th Cir. 2019), this dicta lacks persuasive force, since the Fifth Circuit relied on *In re Dow*, which did not address unimpaired claims, *see* 456 F.3d at 677–80, and *In re Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986), which

was decided pursuant to the Bankruptcy Act, not the Code, *see id.* at 525–26.[6]

B

The majority also attempts to justify its decision that unimpaired creditors are entitled to post-petition interest based on legislative history. Even though "no Code provision legally entitles unimpaired creditors to postpetition interest," Maj. at 25, the majority claims that "Congress has foreclosed the possibility that unimpaired creditors need not receive postpetition interest." Maj. at 24.

This bold statement is based on a 1994 amendment to the Code, deleting § 1124(3), which had stated that a claim was unimpaired if the proposed plan in a Chapter 11 bankruptcy provided the holder of such a claim "cash equal to . . . the allowed amount of such claim." 11 U.S.C. § 1124(3) (1993). A report of the House Judiciary Committee indicated that this amendment was intended to overrule a bankruptcy court decision, *In re New Valley Corp.*, 168 B.R. 73, 79 (1994), which ruled that unimpaired creditors were not entitled to post-petition interest when the debtor was solvent. In reaching this conclusion, *In re New Valley Corp.* relied on several sections of the Code, including § 1129(a)(7)(A) (applying the "best interest of creditors" test to impaired claims), § 502(b)(2) (providing that an allowed claim does not include unmatured interest); and § 1124(3) (providing that a claim that is paid in full is not impaired). *Id.* The report of the House Judiciary Committee explained that its

---

[6] Another case relied on by the majority, *Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*, 679 F.2d 264, 265 (1st Cir. 1982), was also decided pursuant to the Bankruptcy Act, not the Code, *see id.*

deletion of § 1124(3) would establish that creditors who are paid in full could still be "impaired," and therefore entitled to post-petition interest under § 1129(a)(7) in a solvent debtor case.  H.R. Rep. No. 103-835, § 214 at 48 (1994).[7] But according to the report, the deletion of § 1124(3) would not affect § 1129(a)(7) of the Code, "which excluded from application of the best interests of creditors test classes that are unimpaired under section 1124."  *Id.*   The 1994 amendments did not delete or amend § 1129(a)(7)(a) or § 502(b)(2) in any relevant way, nor amend the Code to establish that an unimpaired creditor was entitled to post-petition interest.

The deletion of § 1124(3) and the House Judiciary Committee report provide no support for the majority's attempt to benefit unimpaired creditors.  First, any reliance on legislative history is unwarranted where, as here, the Code's language is unambiguous.[8]  *See Toibb v. Radloff,*

---

[7] Specifically, according to the report, with this deletion "if a plan proposed to pay a class of claims in cash in the full allowed amount of the claims, the class would be impaired, entitling creditors to vote for or against the plan of reorganization," which would protect dissenting creditors by requiring compliance with the "best interests of creditors" test under § 1129(a)(7) of the Bankruptcy Code.  H.R. Rep. No. 103-835, § 214 at 48.

[8] The majority confuses legislative history with legislation by referring to statements in this House Judiciary Committee report as "Congress' clear instruction on this matter," Maj. at 28, and as Congress's "express[]" statement that it intended to prevent the "unfair result" in *New Valley*.  Maj. at 28.  But "the best evidence" of Congress's instruction on a matter "is the statutory text adopted by both Houses of Congress and submitted to the President." *W. Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98–99 (1991).  "[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms," and "reference to legislative history and to pre-Code

501 U.S. 157, 162 (1991). Second, even if the report merited consideration, it provides no support for the majority's rule that unimpaired creditors are entitled to post-petition interest. As indicated above, the report stated that the deletion of § 1124(3) was intended to expand the definition of impaired claims, so more creditors would be deemed to be holding impaired claims, and thus be entitled to post-petition interest under one of the established "best interests of creditors" tests. *See* H.R. Rep. No. 103-835, § 214 at 48. But the report also makes clear that unimpaired creditors would still be deprived of post-petition interest. *See id.* Therefore, the report would not help creditors with unimpaired claims, because such claims (which cannot include postpetition interest, *see* § 502(b)) are not automatically transformed into impaired claims merely because a court determines that the creditor is entitled to post-petition interest in addition to the claim. *See infra* at Section III.C. Finally, the report fails on its own terms, because it does not accurately describe the effect of the deletion of § 1124(3). Although Congress eliminated the section defining a claim as unimpaired if the creditor obtains the full amount of the claim, this deletion did not provide any guidance for differentiating impaired from unimpaired claims, expressly state that claims such as the ones held by members of the Trade Committee should be classified as impaired, or alter the Code's "general rule disallowing postpetition interest." *Timbers of Inwood Forest*, 484 U.S. at 373.

---

practice is hardly necessary." *Ron Pair Enterprises, Inc.*, 489 U.S. at 241.

C

The majority makes the related contention that § 1124(1), which states that a claim is impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest," requires holding that an unsecured claim must be classified as impaired in a solvent debtor case unless the creditor obtains post-petition interest. The majority reasons that the term "equitable . . . rights" in § 1124(1) includes the right to post-petition interest under the solvent debtor exception, and "[a] failure to provide for postpetition interest according to this equitable right as part of a bankruptcy plan results in impairment." Maj. at 30.

This argument fails for multiple reasons.[9]  First, § 1124(1) explains when a "class of claims or interests" is impaired.  Because a claim cannot include post-petition interest, *see* § 502(b)(2), the failure of a plan to provide for payment of post-petition interest cannot impair the claim itself.  The majority argues that even if a claim does not include post-petition interest, a claim can *entitle* its holder to such interest.  Maj. at 29–30 n.9.  But this ignores the language of § 1124(1), which explains only when a *claim* is impaired.  The statute does not describe when a *holder's* equitable rights are impaired, nor is there any basis for concluding that a holder's loss of some equitable right under pre-Code practice would impair the holder's *claim*.  Moreover, because the Code establishes that an allowed claim does *not* include post-petition interest, *see* § 502(b)(2), it is not plausible to read § 1124(1), as the majority does, as

---

[9] As a threshold matter, the argument fails because the members of the Trade Committee did not distinctly argue to the bankruptcy court that their claims were impaired, and such an argument is therefore forfeited.

contemplating that a claim *must* include post-petition interest (when the debtor is solvent), or it would be impaired.

Second, the majority misinterprets the term "equitable . . . rights" in § 1124(1). By its terms, § 1124(1) focuses on the creditor's claim, and the scope of the rights included in that claim. Congress defined "claim" broadly to include any "right to payment" and any "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." § 101(5).[10] Therefore, a creditor's claim includes equitable rights such as restitution, quantum meruit, or other equitable remedy to which the creditor has a right at the time of filing.[11] If the plan fails to provide for payment of any of these rights, then under § 1124(1), that claim is impaired. This is the only plausible reading of the term "equitable rights" in § 1124(1), because it gives effect to the statute's purpose of explaining when a claim is impaired due to the failure to pay the full amount of the allowed claim as of the date of the petition in bankruptcy. By contrast, interpreting the term "equitable rights" in § 1124(1) as authorizing a bankruptcy court to provide creditors with an equitable benefit beyond the amount of the allowed claim makes no sense, because a court's failure to provide such a

---

[10] Indeed, in enacting § 101(5), Congress intended to "adopt the broadest available definition of 'claim,'" including any "enforceable obligation," be it legal or equitable. *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991); *see also In re Davis*, 778 F.3d 809, 813 (9th Cir. 2015) (explaining that the language of § 101(5) "permits the broadest possible relief in the bankruptcy court") (quoting H.R. Rep. 95-595, 309 (1978)).

[11] The majority argues that reading § 1124(1) as referring only to equitable rights that are part of the allowed claim is "novel" and based on a "faulty premise." Maj. at 29–30 n.9. To the contrary, it is based on the plain language of § 1124(1), and the definition of "claim" in § 101(5).

benefit could not "impair" the allowed claim itself. Moreover, interpreting § 1124(1) as authorizing courts to provide creditors with extra-textual equitable benefits would be contrary to the Supreme Court's rulings that bankruptcy courts may not use equitable powers to provide benefits not permitted by the Code. *See Law v. Siegel*, 571 U.S. 415, 421–22 (2014) (holding that a bankruptcy court cannot make additional funds available to defray administrative expenses by imposing an "equitable surcharge" on a debtor's homestead exemption). "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Id.* at 421 (citations omitted).

Finally, the majority's holding that a "failure to provide for postpetition interest according to this equitable right as part of a bankruptcy plan results in impairment," Maj. at 30, means that an unimpaired claim automatically and retroactively becomes an impaired claim if the creditor is not awarded postpetition interest in a solvent debtor case. But such an unprecedented backwards-looking impact has no basis in the Code. "[T]he amount and priority of an unsecured creditor's claim is fixed on the date of the filing of the petition." *In re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir. 1993). Obligations accruing *after* the petition is filed are not part of a claim, and so a debtor's failure to fulfill those obligations does not result in impairment. Even where post-petition interest is available, it is inherently an obligation that accrues *after* the petition for bankruptcy is filed. *See In re Pardee*, 193 F.3d at 1085 n.3; *see also Bursch v. Beardsley & Piper, a Div. of Pettibone Corp.*, 971 F.2d 108, 114 (8th Cir. 1992) (explaining that post-petition interest "is unmatured at the time of filing"). Indeed, as § 726(a)(5) indicates, the solvency of the debtor may be unknown until the property of the estate is being

distributed.[12]   Therefore, regardless whether a creditor is entitled to post-petition interest *in addition to* the amount of its claim under a solvent debtor exception, a creditor's failure to obtain post-petition interest does not affect a claim's designation as impaired or unimpaired, nor does it retroactively make an unimpaired claim "impaired."

D

Finally, the majority makes the policy argument that prohibiting unimpaired claimants from receiving post-petition interest (or limiting their post-petition interest to the same rate as impaired creditors) is inconsistent with "the Code's structure," Maj. at 26, because unimpaired creditors should not be treated worse than impaired creditors.  But "the pros and cons of [treating different classes of creditors differently] are for the consideration of Congress, not the courts."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012).  "[I]t is not for the courts to alter the balance struck by the statute," *Siegel*, 571 U.S. at 427, especially after Congress "worked on the formulation of the Code for nearly a decade," *Ron Pair*, 489 U.S. at 240,

---

[12] The solvency of a debtor may not be known at the time the petition is filed.  *See, e.g.*, *In re Kentucky Lumber Co.*, 860 F.2d 674, 675 (6th Cir. 1988) (describing a debtor that was "clearly perceived as insolvent on the date of confirmation of the plan" but "subsequently achieved a large and unexpected structured settlement" rendering the debtor solvent).  Accordingly, the majority's statement that "[a] failure by a bankruptcy plan to leave this equitable right unaltered results in impairment *from the outset*, unless and until a plan is amended accordingly," Maj. at 29–30 n.9 (emphasis added), indicates that either *every* plan must include the statement that all unimpaired creditors are entitled to post-petition interest if the debtor turns out solvent, or that by force of law, the failure to distribute post-petition interest at the end of the bankruptcy case causes a nunc pro tunc transformation of a claim to the status of impairment "from the outset."

and "standardize[d] an expansive (and sometimes unruly) area of law," *RadLAX*, 566 U.S. at 649.  Rather, "the sole function of the courts is to enforce [the Code's plain language] according to its terms," *Ron Pair*, 489 U.S. at 241 (citation omitted), even if that "may produce inequitable results for trustees and creditors," *Siegel*, 571 U.S. at 426.  Moreover, even if policy considerations were relevant, Congress could have chosen to give impaired creditors greater protections than unimpaired creditors, because impaired creditors (such as classes of wildfire victims here) may not receive payment of their claims in full.  Thus, "depriving [unimpaired creditors] of the statutory protections that impaired creditors enjoy" does not "end-run th[e] statutory rights" of unimpaired creditors.  Maj. at 26.  To the contrary, it enforces the Code's express terms, and it is the majority that allows unimpaired creditors to end-run Congress's prohibition on post-petition interest.

\* \* \*

Because I would follow the Supreme Court's direction, and leave it to Congress to decide whether creditors holding claims that are fully paid under a plan of reorganization are entitled to post-petition interest when the debtor is solvent, I respectfully dissent.