William B. Abrams
end2endconsulting@gmail.com
2041 Stagecoach Rd.
Santa Rosa, CA, 95404
Tel: 707 397 5727

*Pro Se Fire Victim Claimant and Party to related proceedings before the California Public Utilities Commission and the California Office of Energy Infrastructure Safety*

FILED
SEP -1 2022
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>            Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administrated)<br><br>**MOTION OF WILLIAM B. ABRAMS FOR RECONSIDERATION AND RELATED RELIEF FROM THE ORDER GRANTING MOTION OF THE FIRE VICTIM TRUSTEE TO FILE REDACTED VERSIONS OF CERTAIN RETENTION AGREEMENTS UNTIL LITIGATION RELATED TO SUCH RETENTION AGREEMENTS IS FINALLY RESOLVED AND PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)**<br><br>Related To:<br>Dkt. 12884<br><br>**Response Deadline:**<br>September 13, 2022 (Pacific Time)<br><br>**Hearing If Order Granted:**<br>September 27, 2022 (Pacific Time) or as determined by the Court |

1

# PRELIMINARY STATEMENT

William B. Abrams ("**Abrams**"), as a pro se fire victim claimant in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") files this motion (the "**Motion**" or "**Motion for Reconsideration**") in response to the "*Order Granting Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved*" (the "**Order**") [Dkt. 12884]. The "*Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved*" (the "**Trustee Motion**") [Dkt. 12871] evades and substantively modifies the prior "*Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust*" (the "**Order Authorizing Discovery**") [Dkt. 12683] without any discernible legal authority. Indeed, the Trustee Motion does not cite any legal authority for a modification of the prior order and does not request such a modification from the Court. The conflicts between these two Court orders will be detailed within the subsequent section of this Motion.

Moreover, the Court should be aware that the Fire Victim Trustee (the "**Trustee**"), after submitting redacted agreements to the point of being unintelligible, chose to unduly short-circuit the efforts of myself and other victims to timely file a response. Please, consider the email exchange between myself and Trustee Counsel on the date that the Trustee Motion was filed with the Court (**Exhibit A**). Within this exchange, I stated that "*upon first glance, there is no indication within your motion regarding the response deadline. Please, let me know if I missed that and/or what that date is so I know if/how best to respond.*" Mr. Cicero, Trustee counsel responded to this basic request by stating "*we are not able to provide you with legal advice with respect to a response to the Motion, should you choose to file one.*" I am unsure how indicating a "response deadline" constitutes "legal advice." However, following this reply Mr. Cicero did proceed to misdirect me with legal advice regarding the differences between the documents sent to me and the documents filed with the Court stating that "*we've provided you with courtesy copies of the proposed redacted versions of the documents, all which are not public until Judge Montali makes a determination.*" After spending time comparing the documents and realizing the agreements posted to the docket were the same as those provided to me, I asked for clarification and was told "*I was under this misapprehension that*

*they were filed with slip covers.*" As the Court is aware, I am not an attorney but it certainly appears as though the Trustee tried to take advantage of my lack of legal training by (1) not grounding their motion to any legal authority to modify the prior order (2) undermining victim due process rights and (3) acting in a contradictory manner to the prior Court orders that identified specific and limited parameters for any and all redactions.

Abrams appreciates that the Court after significant analysis granted modest relief and limited discovery. However, this Order Authorizing Discovery and the limited relief it provides are being undermined by the actions of the Trustee. More importantly the Trustee Motion and the associated "*Redacted Documents to Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved*" (the "**Agreements**" or "**Redacted Agreements**") [Dkt. 12874] filed by the Fire Victim Trustee (the "**Trustee**") are completely insufficient and unresponsive to the Court's Order Authorizing Discovery. The heavily redacted agreements do not address any of the valid concerns and discovery requests expressed within the "**Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Administration of the Fire Victim Trust**" [Dkt. 12440] and leaves victims with more questions and no answers regarding the financial incentives of core parties and the associated costs to PG&E Fire Victims relative to these derivative cases.

## ARGUMENT

### I. Agreement Redactions: Basis for Analysis

Within the "*Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust*" [Dkt. 12683] the Court specified two distinct categories of permitted redactions which are (1) "to protect the interests of the Trust" and (2) those that "would likely aid potential defendants if disclosed." However, it is clear from what little has been disclosed through these Agreements that these redactions go well beyond the two Court permitted categories. Moreover, in the case where information within these two categories is conflicting for any particular redaction, protecting "the interests of the Trust" should supersede the latter category as the interests of the Trust beneficiaries (victim claimants) should be paramount for the Trustee and the Court.

Prioritizing "the interests of the Trust" is particularly important in deciding which information to make available to victims given the earlier representations of this litigation by Frank Pitre, Trust Oversight Committee member and lead counsel for these derivative cases. Mr. Pitre stated that these actions are "*not intended to make up for any shortfalls in the compensation fund.*"[1] As stated earlier, the extent to which the attorney financial benefits through this litigation may adversely affect the degree to which victims will be "made whole" through the remaining value of the Fire Victim Trust is unknowable due to the redactions within these documents. Certainly, it is important for victims to understand how these fees and costs overlap and/or are in addition to attorney inverse condemnation claims provided out of the Fire Victim Trust. **These issues effect the bottom line dollars that will end up in the pockets of Fire Victims and there is no valid reason why these fees and costs should be withheld.** These redactions certainly do not "protect the interests of the Trust" assuming that the Trust is designed for the benefit of the victims as beneficiaries.

These redactions appear to be strategically placed by the Trustee for the sole purpose of hiding any relevant information that would allow victims to ascertain the following key questions:

1. What are the costs that will likely be incurred by the Trust through this litigation and what is the potential that these actions will reduce the dollars available for victims?
2. What are the incentive structures established through these agreements and are those incentive structures adverse to the interests of PG&E victims?
3. Who benefits from these derivative claims and to what extent do these retention agreements create conflicts of interest among certain parties to the detriment of PG&E victims?

The answers to these questions are critical for victims and the Court to understand the degree to which the "acts" and "conduct" of the Trustee(s) and/or their designees may have undermined the interests of the very victims they are paid to represent. Indeed, the Court Order Authorizing Discovery supported the type of transparency that might allow for an understanding of these questions. However, this Court ordered relief has been undone by the subsequent Trustee Motion and should be remedied through an order approving this Motion for Reconsideration.

---

[1] See Courthouse News "Fire Victim Trust Sues Former PG&E Executives and Directors", February 24, 2021, https://www.courthousenews.com/fire-victim-trust-sues-former-pge-executives-and-directors/

## II. Timing of Agreement Amendments

The Court and victims should be significantly concerned regarding the timetable laid out by the Trustee describing when and how the Agreements were amended. Within the Trustee Motion on page 9-10 it stated the following:

*"To memorialize an additional litigation strategy decision, the parties to the Amended BMC Retention Agreements entered into an updated engagement letter dated **July 1, 2022** (the **"Second Amended BMC Retention Agreement**, and together with the Original BMC Retention Agreement and the Amended BMC Retention Agreement, the **"BMC Retention Agreements"**) that terminated one of the five Amended BMC Retention Agreements and superseded its terms"* (emphasis added).

Within the Agreements filed by the Trustee, the Court will see that all of the substantive July 1 amendments to these documents are redacted in full.[2] **This might lead the Court or victims to reasonably inquire whether or not the close timing of these amendments less than one week after the Trustee's objection to the Motion for Trust Discovery was filed and designed to evade the forthcoming Discovery Order.** Is this designed to hide "bad faith" action of the Trustee or is it a coincidence? Only through the Court's reconsideration of the Order related to these areas of concern would the Court or victims be able to draw conclusions. However, the Court should consider that there were no other amendments to these agreements since they were originally executed over a year and a half ago.

## III. Agreement Redactions: Who Represents the Interests of the Victims?

There is absolutely no reasonable rationale for why the name(s) of the "Authorized Agent(s)", "representatives" and those who are "required for approval" should be withheld and redacted from the stated beneficiaries of this Trust (victims).[3] It is apparent from the agreement that these individuals and/or organizations have broad authority to approve or deny any course of action set by

---

[2] See *"Redacted Documents to Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved"*, pg. 59 [Dkt. 12874]
[3] See *"Redacted Documents to Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved"*, pg. 9, 13-18, 20, 25-29, [Dkt. 12874]

or through the Agreements. The degree to which the Debtor and/or other parties with potential adverse interests to victims are directing this litigation should be made clear as soon as possible by the Trustee. There is no apparent reason for redacting the names and organizations of these individuals unless this is an effort to protect the parties who are adversely affecting the value of the Fire Victim Trust.

### IV. Undermining Due Process Rights of Victims

The Trustee incorrectly states that *"On June 7, 2022, the parties presented arguments to the Court on the Discovery Motion."*[4] In point of fact, this directly contradicts Mr. Molton's statement on June 7, 2022 on behalf of the Trustee that *"Clearly, and I read your honor's order and your honor's directive this morning that your honor does not want us getting into merits or discussion of merits today."* The Trustee is well aware that myself or other victims were never afforded an opportunity to argue our case on the merits and that a hearing on the motion was never granted by the Court. **This slight-of-hand by the Trustee to claim that myself and other victims were permitted time to argue the Motion for Trust Discovery on the merits should not be tolerated by the Court as it clearly undermines the due process rights of victims.** Indeed, no other party represented by competent attorneys would permit such a blatant circumnavigation of their rights and remedies to seek just outcomes related to these critical matters.

### V. Clearly Not a "Competitive, Open and Public Request for Proposal"

Within the Trustee Motion it is stated that "BusinessWire" was apparently the sole communication vehicle for soliciting the request for proposals ("RFPs") to enter into a retention agreement that would provide very lucrative litigation engagements for the law firms and attorneys selected.[5] **This is clearly not "competitive", "open" or "public" in any way that is meaningful. This effort was clearly done in a manner to prevent competition and to provide an "open and public" façade for those willing to be duped.** Any simple search on BusinessWire will reveal that this is not a place to find RFPs and not anything close to a job search engine for attorneys looking to engage in this type of litigation. Any corporation or rationally minded individual seeking a

---

[4] See *"Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved"*, pg. 7 [Dkt. 12871]
[5] See *"Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved"*, pg. 8 [Dkt. 12871]

"competitive" process would at a minimum send the RFP to the leading law firms, including those outside this case, that specialize in this type of litigation. The selection of the firms as well as the resulting retention agreements should have been informed by multiple and competing proposals. **Victims to whatever extent they are indeed the beneficiaries of the Trust were certainly done a disservice by the Trustee through this process whether or not the design of these agreements was meant for their benefit or loss.** Of course, the degree to which this was done in "bad faith", in violation of the Trust Agreement and adverse to the interests of victims will not be understood without proper discovery and disclosures. The Trustee should be required by the Court to make a showing as to why they believe this errant RFP process was done in "good faith" and in accordance with the Trust Agreement and applicable laws.

## **RELIEF REQUESTED**

Abrams seeks modifications to the "*Order Granting Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved*" [Dkt. 12884]. The Court was not aware of the manner in which the Trustee responded to the Order Authorizing Discovery which deliberately or not undermined the due process rights of victims. The misrepresentations and apparent grasping at legal loopholes by the Trustee to avoid discovery and disclosures should not stand. Furthermore, Abrams is sure that the Court was unaware of the new evidence described within this motion that demonstrates the extent to which the Order approving the redacted agreements conflicts with the prior Order Authorizing Discovery. This Motion for Reconsideration was put forward in good faith to provide the Court with this "new evidence" and to "prevent manifest injustice" pursuant to Federal Rule of Civil Procedure Rule 59(e).[6] Abrams and those viewing the Trustee responses with clear eyes see that while the Trustee continues to make proclamations that she will "operate with even greater transparency," the actions of the Trustee are in direct contradiction to these value statements.[7] Given the new evidence and context provided within this motion, Abrams respectfully requests the following relief:

---

[6] Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023; In re Conex Holdings, LLC, 524 B.R. 55, 58 (Bankr. D. Del. 2015).
[7] See "A Letter from the Trustee to the Fire Victim Trust" on the homepage of the Fire Victim Trust Portal (no date on the letter is provided), https://www.firevictimtrust.com/Home.aspx

7

1) **Hearing Request** – The Trustee should demonstrate to the Court how the Trustee Motion is responsive to the Discovery Order Authorizing Discovery and not undermining the rights and remedies of victim beneficiaries. The Trustee should also explain the extent to which the litigation associated with these derivative cases is to the benefit or detriment of victim claimants that are reliant upon the Trust to rebuild their homes and their lives. **Moreover, it is important that Abrams and other victims are afforded an opportunity to argue their case prior to any subsequent order to ensure due process rights are protected and the Court is able to receive meaningful context related to these critical issues.**

2) **Disclose Names of Individuals Representing the Trust – The names of the "authorized agent(s)", "representatives" and those who are "required for approval" should be immediately disclosed by the Trustee.** To whatever extent the Trustee feels that disclosing these names would "aid potential defendants" that concern should not be prioritized over the "interests of the Trust" given the Order Authorizing Discovery. This is particularly important given prior statements that this litigation has no beneficial value to the Trust and victim beneficiaries.

3) **Request for Proposals** – There is certainly good cause to seek additional discovery to understand why the RFPs were not managed in a manner beneficial to victims. Reasonable inquiry might demonstrate that these RFPs were used to secure lucrative agreements for certain parties and that these agreements may have incentive provisions adverse to the interests of victims. **The Trustee should be required to produce and make public these RFPs and explain why they did not pursue a competitive, open and public process in the best interests of victims.**

4) **Net Benefit or Loss to the Value of Fire Victim Trust** – In light of Mr. Pitre's statements and those of other Trust Oversight Committee (the "**TOC**") members indicating that it was not the intent of the litigation strategy to address the Trust shortfall, the Trustee should be required to provide an estimate regarding the projected net benefit or loss to victim beneficiaries from these derivative cases. This is particularly important

8

given that some if not all of the costs from this litigation will be paid out of the Fire Victim Trust. Moreover, the Trustee should be required to disclose the extent to which we have members of the TOC engaged in dual roles where (1) lead attorneys within these cases are charging and decreasing the amount of funds available for victims while (2) simultaneously serving within an oversight capacity where their fiduciary role is to increase the amount for victims. Will the Trustee explain how this dual role does not constitute a conflict of interest on its face?

5) **Amendments to Retention Agreements** – There is good cause to inquire why the retention agreements were modified after the Motion for Discovery when they had not been amended at any other time since the agreements were originally executed. The vague characterization of these July 1, 2022 changes *"to memorialize an additional litigation strategy decision"* should be explained in greater detail given the coincidental timing of this "memorialization" coinciding with the discovery requests related to these very same agreements.

6) **Response Deadlines** – As a point of order and given that Trustee counsel has demonstrated an unwillingness to be forthcoming regarding response deadlines, it would be appropriate for the Court to require the Trustee to indicate a response deadline. This would support a level of process and procedural transparency so victims and their attorneys might be given proper notice for when responses are due. Recently, the Trustee and the Debtor have continued with this tactic by filing joint motions to delay and evade discovery and transparency for victims and to move the Court to quickly approved these motions without parties being afforded time to respond.

///

9

Case: 19-30088    Doc# 12916    Filed: 09/01/22    Entered: 09/01/22 11:14:29    Page 9 of 17

## BASIS FOR RELIEF REQUESTED

Federal Rule of Civil Procedure 59(e), incorporated by Bankruptcy Rule 9023, allows a party to seek reconsideration where: (1) there has been an intervening change in the controlling law; (2) **new evidence has become available**; or (3) there is a need to **prevent manifest injustice or to correct a clear error of fact** or law. Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023; In re Conex Holdings, LLC, 524 B.R. 55, 58 (Bankr. D. Del. 2015) (emphasis added).

Bankruptcy Rule 2004(a) states that on "*motion of any party* in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The scope of an examination sought under Rule 2004(b) may relate to "*the acts, conduct*, or property or to the liabilities and financial condition of the debtor, or to **any matter which may affect the administration of the debtor's estate**, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added).

The granting of a motion under Rule 2004 is within the "ultimate discretion" of the Court. *In re Art & Architecture Books of 21st Century*, No. 2:13-BK-14135, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (quoting *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292-93 (Bankr. D. Ariz. 2002)). Bankruptcy Rule 2004 allows considerable leeway for all manner of so-called "fishing expedition[s]" if there is a reasonable nexus to the debtor and the administration of the debtor's case. *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018) (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011)). Any third party who has a relationship with the debtor may be made subject to a Rule 2004 investigation. *Mastro*, 585 B.R. at 597 (citing *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)).

Here, Abrams seeks modifications to the "*Order Granting Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved*" [Dkt. 12884] and related relief pursuant to Federal Rule of Civil Procedure 59(e). **Given the new evidence, these modifications are required to "correct a clear error of fact" and are prudent remedies to "prevent manifest injustice."**

///

# CONCLUSION

The efforts of the Trustee to short-circuit the due process rights of victims combined with the clear "errors of fact" represented within the Trustee Motion should be seen as more than sufficient "new evidence" for the Court to order these modifications to the Order and prevent "manifest injustice" pursuant to Federal Rule of Civil Procedure 59(e). I am also aware that the Court through the Order Authorizing Discovery has taken away my "multi-page discovery request" and replaced it with "the court's own direction."[8] I certainly trust and respect the Court's deliberative process and rulings on these matters. However, this Court order should not be used and abused by the Trustee to undermine my due process rights and those of other victims. More importantly, the Trustee and the Debtor with their vast legal resources should not be permitted to drown out the voices of victims by preventing replies to motion and blocking hearings where their voices could and should be heard.

There is clear evidence that conflicts of interest exist among many parties central to this case. The degree to which these conflicts have undermined just outcomes is unknown. However, victims certainly have more than enough "good cause" and the Court has more than enough authority to approve a more fulsome discovery process based upon the new evidence provided within this Motion for Reconsideration. I would further ask the Court to consider this new evidence within the context of issues previously brought before this Court that include the following facts: (1) There are core parties representing victim as fiduciaries getting "loans" and "litigation financing" from PG&E investors with adverse interests to those of victims.[9] (2) There are "neutrals" that have been integral to this case that are anything but "neutral" through their JAMS shareholder status and other undisclosed relationships with core parties.[10] (3) There are Trust Oversight Committee members with interests adverse to those of victims through these litigation agreements.[11] (4) There is an Official Fire Claimant Professional that has pleaded guilty to fraud charges and was forced to

---

[8] See "*Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust*", page 9 [Dkt. 12683]
[9] See KQED, "Attorney for PG&E Fire Victims Funded by Wall Street Firms He's Negotiating Against", April 25, 2020, and "Sharks are Circling Again: with Wildfires come Lawyers and Previous Survivors have a Warning", September 8, 2021
[10] See "Tom Girardi's Epic Corruption Exposes the Secretive World of Private Judges, LA Times, August 4, 2022
[11] See Courthouse News "Fire Victim Trust Sues Former PG&E Executives and Directors", February 24, 2021, https://www.courthousenews.com/fire-victim-trust-sues-former-pge-executives-and-directors/

11

distance himself from this case.[12] (5) There is a Trust lobbyist who resigned due to alleged conflicts and/or a sexual harassment scandal.[13] Yes, there is more. All of this has come to light without disclosures and without discovery orders. Is it unreasonable to request and receive broad discovery to ascertain the degree to which these issues and others have infected this case outside the view of the Court? What more shall victims find out if reasonable discovery is approved through this Motion for Reconsideration? **If this Motion is denied what other efforts will be pursued by the Trustee and the Debtor to squash discovery and disclosures pursued by other parties?**

As the Court is aware, there are additional motions that have been put forward by the Trustee and the Debtor to evade and delay discovery and disclosures. Once again, these motions have been fast-tracked for approval by the Court without affording less-resourced victims or other parties the opportunity to reply. The Court should ensure that these new motions are not veiled attempts to twist the well-intentioned Court Order Authorizing Discovery. I agree with the Court's statements that I am not an "ombudsman" and I am not some "would be inspector general."[14] However, I am a victim of the PG&E fires and a claimant with rights and remedies that are afforded to me under the law and I will continue to exercise these rights despite the efforts of the Trustee and other core parties to undermine the type of discovery and disclosures that would allow sunlight to shine upon their acts and conduct. **I still remain hopeful that this sunlight will shine upon "good faith" actions and will allow victims to rally behind the Trustee's efforts. However, hope and turning away from the sunlight is not a strategy and not a remedy that the Court should rely upon.** I will continue to urge the Court to lean in and ask parties to provide meaningful discovery and full disclosures. However, in the end, *"the Bankruptcy Court shall have exclusive jurisdiction with respect to any action relating to or arising out of the Trust"* and I will respect those decisions.[15]

Moreover, I will follow the Court processes and procedures to the best of my ability as a pro se claimant and I will always be respectful of the Court and the individuals that are involved on all

---

[12] See Department of Justice, Southern District of California, "San Diego Attorney Admits to Conspiring to Commit $500,000 of Tax Fraud with Former Chabad of Poway Rabbi Goldstein," April 13, 2022, https://www.justice.gov/usao-sdca/pr/san-diego-attorney-admits-conspiring-commit-500000-tax-fraud-former-chabad-poway-rabbi

[13] See The Press Democrat, "Patrick McCallum Out as Fire Victim Trust Lobbyist Amid Sonoma State Harassment Scandal", April 20, 2022, https://www.pressdemocrat.com/article/news/patrick-mccallum-out-as-fire-victim-trust-lobbyist-amid-sonoma-state-harass/

[14] See *"Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust"*, page 8 [Dkt. 12683]

[15] See Fire Victim Trust Agreement, Section 1.6, page 6

sides of this case. I also appreciate that there are many honest attorneys and other stakeholders within this case that are trying to do right by their clients under the weight of these conflicts and confidentiality protocols. While I do not represent other victims, I certainly know that my views and arguments are representative of the feelings of many victims and other stakeholders that surround this case. Victims are mothers, fathers, children, friends and neighbors waiting on the Trust to make good on the "made whole" advertised promises and the $13.5B pot at the end of the rainbow that was painted by many core parties. These are the same core parties that now coalesce and conceal to protect their financial rewards facilitated by undisclosed agreements executed or enabled by the Trustee. Respectfully, I ask the Court to approve this Motion for Reconsideration so all parties including victims are able to implement remedies to ensure the type of just outcomes that the Court has worked so diligently to achieve prior to plan confirmation.

Dated: September 1, 2022

Respectfully submitted,

William B. Abrams
Pro Se Claimant

**From:** end2endconsulting@gmail.com 
**Subject:** Re: FVT - Redaction Motion
**Date:** August 24, 2022 at 7:25 PM
**To:** Cicero, Gerard T.
**Cc:** Molton, David J.

Thanks for the confusion. Mistakes happen, no worries. I'm still hopeful that folks will come around to a collaborative approach to seek solutions to these issues on behalf of victims rather than the knee jerk defensive and adversarial approach that seems like the Trustee and TOC would prefer. You'd be hard pressed to find someone more amenable to finding common ground yet parties still seem unwilling to sit down and discuss. It is very disheartening but I remain hopeful. Have a goodnight.

> On Aug 24, 2022, at 5:34 PM, Cicero, Gerard T. < > wrote:
>
> These are the same documents, I was under this misapprehension that they were filed with slip covers.
>
>> On Aug 24, 2022, at 8:31 PM. end2endconsulting@gmail.com wrote:
>>
>> **CAUTION: External E-mail. Use caution accessing links or attachments.**
>>
>> Please, advise whether or not these are the same redacted versions of the documents that were just published and publicly available on the docket. Correct me if I am wrong but motions are typically filed with a response deadline and as a courtesy these deadlines are usually communicated to parties associated with the motion.
>>
>>> On Aug 24, 2022, at 5:14 PM, Cicero, Gerard T. < > wrote:
>>>
>>> Will,
>>>
>>> We are not able to provide you with legal advice with respect to a response to the Motion, should you choose to file one.
>>>
>>> Please be advised that the Motion was filed pursuant to Section 107(b) of the Bankruptcy Code, the "Procedures for Filing Redacted or Sealed Confidential or Highly Sensitive Documents" adopted by Judge Montali in his Practices and Procedures, and past practice before Judge Montali in this case.
>>>
>>> Please be further advised that we've provided you with courtesy copies of the proposed redacted versions of the documents, all which are not public until Judge Montali makes a determination on whether the redactions are or are not appropriate or requires us to publish the full documents.
>>>
>>> **brown**rudnick
>>>
>>> **Gerard T. Cicero**
>>>
>>> Brown Rudnick LLP
>>> Seven Times Square
>>> New York, NY 10036

Please consider the environment before printing this e-mail

**From:** Will Abrams <end2endconsulting@gmail.com>
**Sent:** Wednesday, August 24, 2022 7:29 PM
**To:** Cicero, Gerard T. <██████████>
**Cc:** Molton, David J. <██████████>
**Subject:** Re: FVT - Redaction Motion

CAUTION: **External E-mail. Use caution accessing links or attachments.**

Thanks Gerard. Upon first glance, there is no indication within your motion regarding the response deadline. Please, let me know if I missed that and/or what that date is so I know if/how best to respond.

Thanks again,

Will

> On Aug 24, 2022, at 4:03 PM, Cicero, Gerard T. <██████████> wrote:
>
> Will:
>
> Thank you for meeting with us yesterday, attached is our contemporaneously filed Motion to redact certain portions of Engagement Letters related to the Trust's Litigation of Assigned Causes of Action.
>
> Thank you,
> Gerard
>
> <image001.jpg>
>
> **Gerard T. Cicero**
>
> Brown Rudnick LLP
> Seven Times Square
> New York, NY 10036
> ██████████
>
> Please consider the environment before printing this e-mail

*******************************************************************************
The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.
To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.
*******************************************************************************

&lt;Motion Of The FV Trustee To File Redacted Versions Of Certain Retention Agreements.pdf&gt;&lt;Redacted Documents to Motion of FV Trustee To File Redacted Versions.pdf&gt;

*******************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

*******************************************************************************


*******************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

*******************************************************************************