1  BROWN RUDNICK LLP
   David J. Molton (SBN 262075)
2  (DMolton@brownrudnick.com)
   Eric R. Goodman (admitted pro hac vice)
3  (EGoodman@brownrudnick.com)
   Seven Times Square
4  New York, New York 10036
   Telephone:    (212) 209-4800
5  Facsimile:    (212) 209-4801

6  BROWN RUDNICK LLP
   Joel S. Miliband (SBN 077438)
7  (JMiliband@brownrudnick.com)
   2211 Michelson Drive, Seventh Floor
8  Irvine, California 92612
   Telephone:    (949) 752-7100
9  Facsimile:    (949) 252-1514

10 *Attorneys for Fire Victim Trustee*

11

12          **UNITED STATES DISTRICT COURT FOR THE**

13          **NORTHERN DISTRICT OF CALIFORNIA**

14

15 | **In re:** | Bankruptcy Case No. 3:19-bk-030088 DM |

16 **PG&E CORPORATION,** | Chapter 11

17          -and- | (Lead Case)

18 **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered)

19

20          **Debtors.** | **FIRE VICTIM TRUSTEE'S RESPONSES IN CONNECTION WITH THE COURT'S AUGUST 2, 2022 DISCOVERY ORDER**

21 ☐ **Affects PG&E Corporation** | [No Hearing Requested]

22 ☐ **Affects Pacific Gas and Electric Company**

23 ☒ **Affects both Debtors**

24 *All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

FIRE VICTIM TRUSTEE'S RESPONSES TO COURT-DIRECTED DISCOVERY
REGARDING ADMINISTRATION OF THE FIRE VICTIM TRUST .................................2

A. Questions regarding Lobbying Activities .................................................................2

    1.     Explain why the Trustee did not use the "request for proposal" procedure for lobbying advisors as utilized in the selection of professionals to prosecute the assigned claims. 2

    2.     Identify the firm retained by the Trustee for lobbying activities for fiscal year 2022 and explain how that firm was selected, whether there was any competitive open and public request for proposal or similar procedure implemented..............................................3

    3.     Identify any firm or person retained for lobbying activities for fiscal year 2021, even though the Trust had reported that it incurred no such lobbying expenses during that year. Explain how that firm or person was selected, whether there was any competitive open and public request for proposal or similar procedure implemented. ...........................4

    4.     Provide a list of bills or legislative hearings where the Trustee's designated lobbyist gave testimony or engaged in efforts to further the interest of PG&E fire victims, specifically explaining how those activities furthered the efforts on behalf of those victims.
            4

B. Questions regarding Selection of Professionals ....................................................6

    1.     Identify the particulars of the "open and public 'request for proposal' interview process" described in the Objection, including when and to who it was promulgated, what responses were received and from whom; and the name of each counsel or firm selected by the Trustee and subsequently retained. ...........................................................................6

    2.     For every such counsel so retained, post a copy of the retention agreement pertaining to that counsel. ...................................................................................................8

    3.     Identify specifically any such contracts awarded to any member of the TOC.........9

C. Questions regarding Status of Assigned Claims ...................................................10

    1.     Identify any Assigned Claim that has been finally resolved by judgment, arbitration, mediation or otherwise. Name the party, a brief summary of the outcome, the gross amount realized, the cost in attorneys' fees and expenses of the effort, and the net result of the benefit to the Trust. .........................................................................................10

    2.     For any such completed matter, the Trustee should post on the FVT website any agreement, order, or other document memorializing the outcome. If the Trustee believes any provision must or should be kept confidential, he should file a request with the court to permit the filing of a redacted version of such a document and the court will review the unredacted version in camera and issue an appropriate order...........................................11

1

2

# **TABLE OF AUTHORITIES**

3
                                                                              **Page(s)**

4

**Authorities**

5

Cal. Const. Article IV, § 10(b)(2) .................................................................................... 5

6

Joint Rules of the Senate and Assembly § 51(b)(3) ........................................................ 5
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRE VICTIM TRUSTEE'S RESPONSES TO COURT-DIRECTED DISCOVERY REGARDING ADMINISTRATION OF THE FIRE VICTIM TRUST**

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the PG&E Fire Victim Trust (the "**Trust**" or the "**Fire Victim Trust**," and its beneficiaries, the "**Fire Victims**"), hereby submits the following responses to the discovery directed by the Court's *Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust* [Docket No. 12682] (the "**Discovery Order**").

A. QUESTIONS REGARDING LOBBYING ACTIVITIES

> **1. Explain why the Trustee did not use the "request for proposal" procedure for lobbying advisors as utilized in the selection of professionals to prosecute the assigned claims.**

The Trustee has the authority under the Trust Agreement to retain such professionals and advisors as he or she determines advisable.[1] There is no requirement that the Trustee use the "request for proposal" procedure. In seeking relief for Fire Victims through any legislative initiative from the State of California, Trustee Justice John Trotter (Ret.) faced time constraints that rendered the Trustee's use of the "request for proposal" process for lobbying activities inadvisable due to the risk of delay. Justice Trotter understood there was a limited window of time to approach the California legislators and/or the Governor's office with respect to the Fire Victim Trust's needs and to have some form of relief incorporated into the State Budget.[2] Given this urgency, Justice Trotter retained experienced professionals based upon the authority granted under the Trust Agreement. Justice Trotter focused on the selection of lobbyists who were experienced and qualified.

/ / /

---

[1] *See* Trust Agreement § 2.1(e)(xiii) (Trustee has the power to "retain such employees, consultants, advisors, independent contractors, experts, and agents and engage in such legal, financial, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the business of the Trust requires"); Trust Agreement § 2.1(e)(xvii) (Trustee has the power to "enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement").

[2] Public records show that Governor Newsom proposed the 2022-2023 State Budget as of January 10, 2022 and it was thereafter negotiated and finally signed into law on June 30, 2022.

**2.** **Identify the firm retained by the Trustee for lobbying activities for fiscal year 2022 and explain how that firm was selected, whether there was any competitive open and public request for proposal or similar procedure implemented.**

In March 2022, Patrick McCallum, a career lobbyist, was recommended to Justice Trotter by certain members of the Trust Oversight Committee. Patrick McCallum is a fire victim himself and has been a California lobbyist for four decades. Mr. McCallum's qualifications included being an "expert on utility, wildfire, labor, financial, and higher education issues in California" and he noted that he was "awarded the Public Service Annual Award by the CA County Supervisors for [his] work on Wildfire and Utility reform." *See* LinkedIn profile: https://www.linkedin.com/in/patrick-mccallum-707a498. Mr. McCallum was retained effective March 15, 2022, to assist in the Trust's lobbying efforts.

Given Mr. McCallum's experience, record, and terms, a negotiated cap on the period of his services, and the small window of time to seek relief in the current State Budget, Justice Trotter hired Mr. McCallum. Justice Trotter reasonably believed and determined that this decision was well within his authority under the provisions of the Trust Agreement. *See* Trust Agreement §§ 2.1(e)(xiii), (xvii).

For reasons unrelated to his work with the Fire Victim Trust, Mr. McCallum was terminated by the Fire Victim Trust effective April 20, 2022. Despite the termination of Mr. McCallum, Justice Trotter nevertheless wished to continue seeking relief for the Fire Victims in the on-going State Budget process.

On May 1, 2022, the Fire Victim Trust retained Ms. Darby Kernan of Sacramento-based Mosaic Solutions and Advocacy ("**Mosaic**"). Ms. Kernan and the Mosaic team were selected after reasonable due diligence. Justice Trotter considered such factors as Ms. Kernan's direct lobbying experience with the California State Association of Counties ("**CSAC**") on California Assembly Bill 1054 (Holden) (Chapter 79, Statutes of 2019) ("**AB 1054**")[3] where she led the effort to pass AB 1054 on behalf of CSAC. AB 1054, signed by the Governor on July 12, 2019, was created to address issues relating to utility-caused wildfires and it established, among other things, the California

---

[3] Full text of AB 1054 available at:
https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB1054

Wildfire Safety Advisory Board to provide wildfire safety recommendations to the relevant government divisions and the Wildfire Fund to pay certain eligible claims. *See* AB 1054 §§ 4, 5, 16. The Consumer Attorneys Association of California provided a strong recommendation for Ms. Kernan as a lobbyist. Furthermore, each member of the Mosaic team had substantial experience working in and with California State and local governments. The Mosaic team is located in close proximity to the wildfire locations which enables them to appreciate and convey to governmental officials the magnitude of the devastation to the Fire Victims for whom governmental relief is so important. Justice Trotter's diligence revealed that the Mosaic team's relationships within the Legislature and Administration of California were highly respected and valued. Given the experience, reputation and proven record of Ms. Kernan and the Mosaic team, the financial terms of her retention, Mosaic's established relationships with California State legislators, and the small window of time to seek relief in the State Budget negotiations, Justice Trotter made the retention in accordance with the terms of his authority under the Trust Agreement.

   **3. Identify any firm or person retained for lobbying activities for fiscal year 2021, even though the Trust had reported that it incurred no such lobbying expenses during that year. Explain how that firm or person was selected, whether there was any competitive open and public request for proposal or similar procedure implemented.**

  No firms or persons were retained by Justice Trotter or the Fire Victim Trust for lobbying activities for fiscal year 2021, nor were any lobbying activities undertaken on behalf of the Fire Victim Trust in fiscal year 2021.

   **4. Provide a list of bills or legislative hearings where the Trustee's designated lobbyist gave testimony or engaged in efforts to further the interest of PG&E fire victims, specifically explaining how those activities furthered the efforts on behalf of those victims.**

  Mr. McCallum's activities were focused on efforts to communicate with California legislators and the Governor's office about the potential to aid Fire Victims by incorporating in the 2022-2023 State Budget a $1.5 billion loan to the Fire Victim Trust. This proposed loan was structured to allow flexibility with respect to the timing and manner of monetizing the Fire Victim Trust's PG&E stock. There were numerous phone calls and meetings between Mr. McCallum and various California representatives.

Since its retention on May 1, 2022, Mosaic spent its initial months meeting with State legislators and the Governor's key staff regarding a potential $1.5 billion loan to the Fire Victim Trust. By educating key members of the State Legislature and the Administration regarding the benefits and the potential mechanics of the loan, Mosaic was trying to secure the loan for the financial benefit of Fire Victims.

The Mosaic team has also worked to advise the Trust on the following proposed legislation:

1. California Senate Bill 884 ("**SB 884**") introduced by Senator McGuire on January 26, 2022, which proposed a program for undergrounding electrical lines;[4]

2. California Senate Bill 1246 ("**SB 1246**"), introduced by Senator Stern which proposed to allow a taxpayer to exclude settlement amounts from gross income under the Personal Income Tax and Corporation Tax Law and authorize the refund of overpayments from prior tax years;[5]

3. California Assembly Bill 1249 ("**AB 1249**") introduced by Assembly Member Gallagher which proposed to exclude settlement payments made in connection with the fires from taxable income.[6]

The Legislature adjourned on August 31, 2022, and the Governor has until September 30, 2022 to act on all legislation. *See* Joint Rules of the Senate and Assembly § 51(b)(3); Cal. Const. Art. IV, § 10(b)(2).

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4] *See* SB 884 § 2; full text of SB 884 available at:
https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202120220SB884

[5] *See* SB 1246 §§ 2-4; full text of SB 1246 available at:
https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202120220SB1246

[6] *See* AB 1249 §§ 2-3; full text of AB 1249 available at:
https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202120220AB1249

B.     <u>QUESTIONS REGARDING SELECTION OF PROFESSIONALS</u>

    **1.**     **Identify the particulars of the "open and public 'request for proposal' interview process" described in the Objection, including when and to who it was promulgated, what responses were received and from whom; and the name of each counsel or firm selected by the Trustee and subsequently retained.**

On September 18, 2020, the Trust issued the following press release (which was also posted to its website) to advertise that the Trust was requesting proposals for legal services in connection with its assigned claims:

**PG&E Fire Victim Trust Requesting Proposals for Legal Services in Connection with Assigned Claims**

The Fire Victim Trust is requesting proposals from experienced legal practitioners to provide legal services to the Trust in connection with the Trust's analysis and pursuit of certain claims and causes of action formerly held by PG&E, now assigned to the Trust, relating to certain Northern California wildfires of 2017 and 2018. The claims and causes of action include those against former directors and officers of PG&E and those against contractors and consultants of PG&E. Copies of the Requests for Proposals may be obtained by sending an email requesting them to FVT-RFP@brownrudnick.com. The deadline for delivery of responses is the close of business on October 6, 2020.

The RFPs were made available upon request. As of October 6, 2020, a total of 12 law firms had requested and were provided with copies of the RFPs. There were two separate RFPs, each focused on different subsets of the Trust's assigned claims. The first was an RFP focused on potential claims against certain former officers and directors of PG&E for breach of fiduciary duty, corporate waste and other duty claims formerly held by PG&E (the "**D&O Claims**"). The second was an RFP focused on claims against third-party contractors who were engaged by PG&E and who may be liable to PG&E for wildfire related damages (the "**Third Party Claims**"). Each of the two RFPs provided bidders with information on the scope of legal services requested, the required contents for any proposal, the Trust's procedure and criteria for evaluating proposals, and requirements and procedures regarding conflicts of interest.

/ / /

/ / /

/ / /

/ / /

By the October 6, 2020 deadline, the Trust had received four proposals[7] from law firms (or consortiums of law firms) to represent the Trust in connection with some or all of the assigned claims, and one information request, as follows:

- On October 6, 2020, the Trust received a proposal from a consortium of law firms consisting of Cotchett, Pitre & McCarthy LLP; Corey, Luzaich, De Ghetaldi & Riddle LLP; Dreyer Babich Buccola Wood Campora LLP; Walkup, Melodia, Kelly & Schoenberger; and Bottini & Bottini Inc., to represent the Trust in connection with the D&O Claims.
- On October 6, 2020, the Trust received a proposal from a consortium of law firms consisting of Cotchett, Pitre & McCarthy LLP; Corey Luzaich, de Ghetaldi & Riddle, LLP; Dreyer, Babich, Buccola, Wood Campora LLP; and Walkup, Melodia, Kelly & Schoenberger, to represent the Trust in litigation relating to vegetation management contractors.
- On October 6, 2020, the Trust received a proposal from Andrews & Thornton to represent the Trust in connection with all of the Third Party Claims. After submission of this proposal but before the Justice Trotter made selection decisions, Greenberg Gross LLP was added to this proposal based on its credentials and expertise.
- On October 6, 2020, the Trust received a proposal from Gilbert LLP to act as special insurance counsel in connection with the D&O Claims and the Third Party Claims.

A consortium consisting of the following firms (the "**D&O Firms**") was selected and retained by Justice Trotter on October 13, 2020 in connection with the D&O Claims:

- Cotchett, Pitre & McCarthy, LLP
- Corey, Luzaich, de Ghetaldi & Riddle, LLP
- Walkup, Melodia, Kelly & Schoenberger
- Dreyer, Babich, Buccola, Wood & Campora, LLP
- Bottini & Bottini, Inc.

A consortium consisting of the following firms (the "**BMC Firms**") was selected and retained by Justice Trotter on December 18, 2020, in connection with the Third Party Claims against business management consultants:

- Andrews & Thornton, a Law Corporation
- Greenberg Gross LLP

---

[7] In addition to the proposals, on October 5, 2020, the Trust received an information request from a consortium of law firms consisting of Berman Tabacco and Schubert Jonckheer & Kolbe LLP, indicating interest in responding to the RFP pertaining to the D&O Claims and requesting additional information, which the Trust provided.

A consortium consisting of the following firms (the "**VM Firms**") was selected and retained by Justice Trotter on January 27, 2021, in connection with the specific subset of Third Party Claims against vegetation management contractors:

- Cotchett, Pitre & McCarthy, LLP
- Corey, Luzaich, de Ghetaldi & Riddle, LLP
- Walkup, Melodia, Kelly & Schoenberger
- Dreyer, Babich, Buccola, Wood & Campora, LLP
- Andrews & Thornton, a Law Corporation
- Greenberg Gross LLP

Gilbert LLP was selected and subsequently retained by Justice Trotter as special insurance counsel on March 11, 2021.

> **2.** **For every such counsel so retained, post a copy of the retention agreement pertaining to that counsel.**

Contemporaneously with this response, the Trust is filing with the Court and posting to the FVT website the following retention agreements, redacted in accordance with the Court's order entered on August 29, 2022:[8]

<u>D&O Firms' Engagement Letter</u>.

- Retention agreement, effective October 13, 2020, between the Trust and the D&O Firms, attached hereto as **Exhibit A**.

<u>VM Firms' Engagement Letter</u>.

- Retention agreement, effective January 27, 2021, between the Trust and the VM Firms, attached hereto as **Exhibit B**.

<u>BMC Firms' Engagement Letters</u>.

- Retention agreement, effective December 18, 2020, between the Trust and the BMC Firms, attached hereto as **Exhibit C**.

---

[8] *See Order Granting Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved* [Dkt. No. 12884], available at https://restructuring.ra.kroll.com/pge/Home-DocketInfo .

- Five retention agreements, effective January 1, 2022, between the Trust and the BMC Firms, that collectively terminated the above-referenced December 18, 2020, retention agreement and superseded its terms to memorialize certain subsequent litigation strategy decisions, attached hereto as **Exhibits D, E, F, G, and H**.

- Retention agreement, effective July 1, 2022, between the Trust and the BMC Firms, that amended one of the five above-referenced January 1, 2022 retention agreements to memorialize an additional litigation strategy decision, attached hereto as **Exhibit I**.

Gilbert LLP's Engagement Letters.

- Retention agreement, effective March 11, 2021, confirming the Trust's retention of Gilbert LLP as special insurance counsel in connection with the specific subset of Third Party Claims relating to potential claims against vegetation management contractors, attached hereto as **Exhibit J**.

- Retention agreement, effective March 11, 2021, confirming the Trust's retention of Gilbert LLP as special insurance counsel in connection with the specific subset of Third Party Claims relating to potential claims against business management consultants, attached hereto as **Exhibit K**.

3. **Identify specifically any such contracts awarded to any member of the TOC.**

As detailed above, Justice Trotter selected Walkup, Melodia, Kelly & Schoenberger as part of the coalition of D&O Firms and as part of the coalition of VM Firms. Michael A. Kelly, a partner at Walkup, Melodia, Kelly & Schoenberger, serves as counsel to the Trust in connection with those representations. Mr. Kelly is a member of the TOC. Khaldoun A. Baghdadi, a partner at Walkup, Melodia, Kelly & Schoenberger, also serves as counsel to the Trust in connection with those representations. Mr. Baghdadi serves as the TOC Liaison with the Trust.

Justice Trotter selected Corey, Luzaich, de Ghetaldi & Riddle, LLP as part of the coalition of D&O Firms and as part of the coalition of VM Firms. Amanda L. Riddle, a partner at Corey,

1    Luzaich, de Ghetaldi & Riddle, LLP, serves as counsel to the Trust in connection with those
2    representations. Ms. Riddle is a member of the TOC.

3        Justice Trotter selected Cotchett, Pitre & McCarthy, LLP as part of the coalition of D&O
4    Firms and as part of the coalition of VM Firms. Frank M. Pitre, a partner Cotchett, Pitre & McCarty,
5    LLP, serves as counsel to the Trust in connection with those representations. Mr. Pitre is a member
6    of the TOC.

7    C.    QUESTIONS REGARDING STATUS OF ASSIGNED CLAIMS

8        **1.    Identify any Assigned Claim that has been finally resolved by judgment,
         arbitration, mediation or otherwise. Name the party, a brief summary of the
9        outcome, the gross amount realized, the cost in attorneys' fees and expenses of
         the effort, and the net result of the benefit to the Trust.**
10

11        Although no Assigned Claim has been finally resolved, the Trustee has entered into a
12    settlement agreement in connection with the D&O Claims. On November 18, 2021, the Fire Victim
13    Trust filed a second amended complaint in the Superior Court of California, San Francisco County,
14    captioned *Trotter v. Williams, et al.* (Lead Case No. CGC-17-562591) (the "**D&O Action**"),
15    alleging two causes of action, both for breach of fiduciary duty, in connection with the 2017 North
16    Bay Fires and the 2018 Camp Fire against certain former directors and officers of PG&E.[9] The Fire
17    Victim Trust, the D&O Defendants, and PG&E have agreed to settle the D&O Action (the "**D&O
18    Action Settlement**"). In accordance with the Court's order entered and dated on August 31, 2022,
19    the Fire Victim Trust shall disclose and post the D&O Action Settlement on October 3, 2022.[10]
20    / / /

21

22   [9] Defendants Lewis Chew, Fred J. Fowler, Maryellen C. Herringer, Richard C. Kelly, Roger H.
23   Kimmel, Richard A. Meserve, Forrest E. Miller, Eric D. Mullins, Rosendo G. Parra, Barbara L.
     Rambo, Anne Shen Smith, and Barry Lawson Williams (collectively, the "**Director Defendants**");
24   Defendants Kevin Dasso, Anthony F. Earley, Jr., Patrick M. Hogan, Christopher P. Johns, Julie M.
     Kane, Gregg L. Lemler, Steve E. Malnight, Dinyar B. Mistry, Jason P. Wells, and Geisha J.
25   Williams (collectively, the "**Officer Defendants**" and together with the Director Defendants, the
     "**D&O Defendants**").

26   [10] *See Order Granting Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to
27   Extend, in Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing
     Discovery Regarding Administration of the Fire Victim Trust* [Dkt. No. 12898], available at
28   https://restructuring.ra.kroll.com/pge/Home-DocketInfo .

1

      **2.**     **For any such completed matter, the Trustee should post on the FVT website any agreement, order, or other document memorializing the outcome. If the Trustee believes any provision must or should be kept confidential, he should file a request with the court to permit the filing of a redacted version of such a document and the court will review the unredacted version in camera and issue an appropriate order.**

2

3

4

5        No Assigned Claim has been finally resolved. However, in accordance with the Court's

6 order entered and dated on August 31, 2022, the Fire Victim Trust shall disclose and post the D&O

7 Action Settlement on October 3, 2022.[11]

8 DATED: September 6, 2022

                                 BROWN RUDNICK LLP

9

10                                  /s/ *Eric R. Goodman*

11                                  Eric R. Goodman (admitted *pro hac vice*)
                                  David J. Molton (SBN 262075)

12                                  Joel S. Miliband (SBN 77438)

13                                  *Attorneys for the Fire Victim Trustee*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   [11] *See* note 11 *supra*.

**EXHIBIT A**

October 13, 2020

Hon. John K. Trotter (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:    Representation of PG&E Fire Victim Trust in Litigation of Certain Assigned Claims

Dear Judge Trotter:

This letter of engagement ("**Engagement Letter**") is to confirm the retention of the Firms (as defined below) by the PG&E Fire Victim Trust (the "**Trust**") as of the date set forth above.

The Firms consist of the following five law firms: (1) Cotchett, Pitre & McCarthy LLP, (2) Walkup, Melodia, Kelly & Schoenberger, (3) Dreyer Babich Buccola Wood Campora, LLP, (4) Corey, Luzaich, De Ghetaldi & Riddle LLP, and (5) Bottini & Bottini Inc. (each a "**Firm**" and collectively, the "**Firms**").

## SCOPE OF REPRESENTATION

The Firms will represent the Trust in connection with the legal services described in the first paragraph of the Contingent Fee Agreement attached as Exhibit A hereto (the "**Representation**"). The Firms agree to keep the Trust reasonably informed as to progress and of the services being performed in furtherance of the Representation. The Firms also agree to provide either written or oral explanations of work performed if requested to do so by the Trust.

## DETERMINATION OF FEE

Calculation of any fees and expenses incurred in connection with the Representation ("**Payment**") shall be determined in accordance with the Contingent Fee Agreement attached as Exhibit A hereto. Any Payment made by the Trust shall be paid to Cotchett, Pitre & McCarthy LLP as agent for the Firms (the "**Agent**"). The extent to which any Firm will share in such Payment is subject to separate agreement by and between the Firms.

## CONFIDENTIAL INFORMATION

The Firms recognize that certain of their partners, associates and staff members may be provided with confidential and proprietary information belonging to the Trust ("**Confidential Information**"). None of the Firms will disclose to any third parties any Confidential Information obtained in the course of the Representation unless the Trust consents to such disclosure. Confidential Information will not include: (i) information made public other than as a result of breach of this Engagement Letter; (ii) information any or all of the Firms acquire from a third party with no known obligations of confidence regarding the information; or (iii) information already known to any or all of the Firms prior to disclosure by the Trust. If any or all of the Firms receive

a request for disclosure of Confidential Information or are otherwise required by law to disclose any Confidential Information, the Firms will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Trust. The Firms also agree to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality. For clarity, any and all Confidential Information known by any Firm individually shall be conclusively deemed to be known individually and collectively by each and all of the Firms.

## RECORDS

All materials prepared by the Firms for the Trust in connection with the Representation shall be the property of the Trust.

## COOPERATION

The Trust agrees that its authorized representatives will be reasonably available to confer with the Firms upon request, will provide Firms with such documents and information as the Trust may possess relating to the Representation, will disclose all facts and circumstances of which the Trust is are aware that may bear upon the Firms' handling of the Representation, and will otherwise assist the Firms' efforts as reasonably requested.

## DISPUTE RESOLUTION

Notwithstanding anything to the contrary in this Engagement Letter, the parties hereto agree that any disputes that arise under this Engagement Letter shall, in the first instance, be sought to be resolved by an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process, and any party that is dissatisfied with the final outcome of the ADR process may then seek relief in the judicial system. This Engagement Letter shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

## TERMINATION

The Trust has the right to terminate this engagement at any time upon delivery of written notice (including by email) to the Agent. In the event of termination by the Trust, the Firms shall provide cooperation in any transition, including return of materials provided to the Firms by the Trust and providing copies of any work product created under this Engagement Letter or in connection with the Representation. The Firms also have the right, subject to certain responsibilities under applicable ethical rules, to terminate this engagement by giving the Trust written notice (including by email) if the Trust fails to cooperate with the Firms or if the Firms determine that continuing to represent the Trust would be unethical, impractical or improper.

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 16 of 149

## INDEMNIFICATION

The Firms acknowledge that the operation of the Trust is governed by a Trust Agreement which provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firms acknowledge and agree that, except as to Trust's indemnity obligations arising out of or related to the Trust's fraud or intentional misconduct, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ███████████ ███████████████████████████████████████████████████████

## AGREEMENT APPLICABLE UNTIL CHANGED IN WRITING

The scope of this engagement may be modified by the Trust at any time and from time to time by advance written notice (including by email) to the Agent. If the scope of engagement is modified, this Engagement Letter will apply to any additional matters the Firms agree to undertake upon the Trust's behalf unless the parties hereto enter into an express written agreement reflecting an alternate arrangement.

## EFFECTIVENESS

This Engagement Letter shall not become effective until it has been executed and delivered by all the parties hereto.

## COUNTERPART SIGNATURES

This Engagement Letter may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all of which together shall constitute and be deemed one and the same agreement.

*(Signature page follows)*

3

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____
**COTCHETT, PITRE & McCARTHY, LLP**

_____
**WALKUP, MELODIA, KELLY & SCHOENBERGER**

_____
**DREYER, BABICH, BUCCOLA, WOOD & CAMPORA LLP**

_____
**COREY, LUZAICH, de GHETALDII & RIDDLE, LLP**

_____
**BOTTINI & BOTTINI, INC.**

ACCEPTED AND AGREED

_____
**PG&E FIRE VICTIM TRUST**

*[Signature page to Engagement Letter]*

## **EXHIBIT A**

Contingent Fee Agreement

# CONTINGENT FEE AGREEMENT

      IN CONSIDERATION of the legal services to be rendered by the Law Offices Of: **COTCHETT, PITRE & McCARTHY, LLP; WALKUP, MELODIA, KELLY & SCHOENBERGER; DREYER, BABICH, BUCCOLA, WOOD & CAMPORA,LLP; COREY,LUZAICH, de GHETALDII & RIDDLE, LLP; and BOTTINI & BOTTINI, INC.** (hereafter "ATTORNEYS") and the advancement by them of all costs necessary to the prosecution of all claims against those Officers and Directors of the Pacific Gas & Electric Company and the PG&E Corporation (hereafter "PG&E") responsible for injury, harm and damages to PG&E (the Parent & Subsidiary entities), whose claims have been assigned to the Trustee of The  PG&E Fire Victim Trust and arose from more than twenty (20) separate Wildfires that occurred in 2017 and 2018 in Northern California; the  undersigned Trustee of the PG&E Fire Victim Trust (hereafter "CLIENT") , employs said ATTORNEYS to commence and prosecute said claims.

*JT*
**INITIALS**

## ATTORNEYS' FEES

      CLIENT agrees to pay Attorneys' Fees on the following basis. ███████

████████████████████████████████████████████████

*JT*

1.    ███████████████

*JT*

2.    "Net amount recovered" is that sum received from the responsible parties after deduction of all costs.

*JT*

3.    In no event will CLIENT incur an obligation for Attorneys' Fees and Costs beyond that sum received from the "Net Amount Recovered", if any.

*JT*

Exhibit A **-** 1

4. Associate counsel may be employed at the discretion and expense of the attorneys but these associate counsel fees shall not be an additional expense to the CLIENT and shall be deducted from the fees paid to the ATTORNEYS.

*JT*

## ATTORNEYS' COSTS

ATTORNEYS will advance costs as in their judgment are necessary for the prosecution of these claims, and these costs advanced shall be returned out of the recovery in the case. These costs advanced may include, without limitation, travel expenses, photocopying charges and long distance telephone expenses. The ATTORNEYS may in their discretion employ outside investigators and other experts whose fees shall be charged as advanced costs.

*JT*

## ATTORNEYS' LIEN AND SPECIAL POWER

Said ATTORNEYS are hereby granted a lien upon any recovery for all sums of money advanced by them for attorneys' fees and costs. The ATTORNEYS are granted the CLIENT'S special power of attorney to endorse all documents in CLIENT'S name which are necessary to finalize or complete the settlement, including the endorsement of a check and/or draft. ATTORNEYS do not have the authority to decide whether to settle or compromise CLIENT'S claims without the express authorization of CLIENT. It is agreed that the ATTORNEYS may retain fees and costs out of the amount finally collected by settlement or judgment.

*JT*

## REPRESENTATIONS

It is acknowledged that ATTORNEYS have made no representation whatsoever regarding the successful termination of said claim.

*JT*

## INSURANCE COVERAGE

ATTORNEYS maintain errors & omissions insurance applicable to the legal services to be rendered.

*JT*

Exhibit A - 2

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 21

DATED at ___San Francisco___, California, this __16th__ day of October, 2020.

*(A duplicate copy of this contract has been provided to me.)*

_____
**TRUSTEE OF THE PG&E FIRE VICTIM TRUST**

**PG&E FIRE VICTIM TRUST**

_____
**Frank M. Pitre**
*for* **COTCHETT, PITRE & McCARTHY, LLP**

_____
**WALKUP, MELODIA, KELLY & SCHOENBERGER**

_____
**DREYER, BABICH, BUCCOLA, WOOD & CAMPORA, LLP**

_____
**COREY, LUZAICH, de GHETALDII & RIDDLE, LLP**

_____
**BOTTINI & BOTTINI, INC.**

*[Signature Page to Contingent Fee Agreement]*

**EXHIBIT B**

**PG&E Fire Victim Trust**
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
www.firevictimtrust.com

January 27, 2021

Hon. John K. Trotter (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:     Representation of PG&E Fire Victim Trust in Litigation of Claims Against Certain Third-Party Vegetation Management Contractors

Dear Judge Trotter:

This letter of engagement ("**Engagement Letter**") is to confirm the retention of the Firms (as defined below) by the PG&E Fire Victim Trust (the "**Trust**") as of the date set forth above.

The Firms consist of the following six law firms: (1) Cotchett, Pitre & McCarthy LLP; (2) Walkup, Melodia, Kelly & Schoenberger; (3) Dreyer Babich Buccola Wood Campora, LLP; (4) Corey, Luzaich, De Ghetaldi & Riddle LLP; (5) Andrews & Thornton, a Law Corporation; and (6) Greenberg Gross LLP (each a "**Firm**" and collectively, the "**Firms**").

1. **Scope of Representation; Communications with the Trust.**





(b)    The Firms agree to keep the trustee of the Trust (the "**Trustee**") and the Trust's consultant, ███████████ (the "**Authorized Agent**"), reasonably informed as to the progress ████████████████████████████ The Firms also agree to provide either written or oral explanations of work performed if requested to do so by the Trustee or the Authorized Agent.

(c)    Prior to commencing any court proceeding as contemplated by the Representation, the Firms will provide the Trustee and the Authorized Agent with a draft complaint. The Firms shall not file or serve any initiating complaint, or make any demand for payment from a prospective defendant without the prior written approval of the Trustee or the Authorized Agent.

(d)    The Firms shall not retain or otherwise engage the services of any electronic discovery platforms, databases, consultants, or other similar vendors and service providers ("**Discovery Services**") without the prior written consent of the Trustee or the Authorized Agent

████████████████████████████████████████

(e)    The Firms shall not retain or employ any third-party investigators or other experts ("**Experts**") without the prior written consent of the Trustee or the Authorized Agent ,

████████████████████████████████████████

(f)    The Firms shall not retain or employ any third-party bankruptcy or insurance counsel ("**Special Counsel**") without the prior written consent of the Trustee or the Authorized Agent,

████████████████████████████████████████

2



## 2. Relationship of the Firms.

(a)     The Trust acknowledges that the Firms, pursuant to separate agreement by and between the Firms, have determined to organize themselves into the following consortiums:

(i)     The "**Walkup Consortium**" consists of Cotchett, Pitre & McCarthy LLP; Walkup, Melodia, Kelly & Schoenberger; Dreyer Babich Buccola Wood Campora, LLP; and Corey, Luzaich, De Ghetaldi & Riddle LLP.

(ii)    The "**Andrews Consortium**" consists of Andrews & Thornton, a Law Corporation; and Greenberg Gross LLP.

(b)     Notwithstanding anything to the contrary herein, the Firms shall represent the Trust collectively without regard to their affiliation with either of the Walkup Consortium or the Andrews Consortium. The extent to which work performed in furtherance of the Representation hereunder is allocated to any of the Firms or either of the above mentioned consortiums shall be governed by separate agreement by and between the Firms, which agreement shall have no impact or effect on the terms set forth in this Engagement Letter. The parties hereto agree that the Trust shall incur no loss in connection with the separate agreement by and between the Firms, and the Trust shall be entitled to recover any costs or expenses incurred by the Trust with respect thereto.



3



4

**4. Confidential Information.**

The Firms recognize that certain of their partners, associates and staff members may be provided with confidential and proprietary information belonging to the Trust ("**Confidential Information**"). None of the Firms will disclose to any third parties any Confidential Information obtained in the course of the Representation unless the Trust consents to such disclosure. Confidential Information will not include: (i) information made public other than as a result of breach of this Engagement Letter; (ii) information any or all of the Firms acquire from a third party with no known obligations of confidence regarding the information; or (iii) information already known to any or all of the Firms prior to disclosure by the Trust. If any or all of the Firms receive a request for disclosure of Confidential Information or are otherwise required by law to disclose any Confidential Information, the Firms will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Trust. The Firms also agree to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality. For clarity, any and all Confidential Information known by any Firm individually shall be conclusively deemed to be known individually and collectively by each and all of the Firms.

**5. Records.**

All materials prepared by the Firms for the Trust in connection with the Representation shall be the property of the Trust.

**6. Cooperation.**

The Trust agrees that its authorized representatives will (i) be reasonably available to confer with the Firms upon request, (ii) provide the Firms with such documents and information as the Trust may possess relating to the Representation, (iii) disclose all facts and circumstances of which the Trust is are aware that may bear upon the Firms' handling of the Representation, and (iv) otherwise assist the Firms' efforts as reasonably requested to do so by the Trustee or the Authorized Agent.

**7. Dispute Resolution; Governing Law.**

(a)     Notwithstanding anything to the contrary in this Engagement Letter, the parties hereto agree that any disputes between them in connection with this Engagement Letter shall, in the first instance, be sought to be resolved by an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process, and any party

5

that is dissatisfied with the final outcome of the ADR process set forth in this paragraph shall be entitled to commence an arbitration proceeding in accordance with Section 7(b) of this Engagement Letter.

(b)     The parties further agree that any dispute that is not resolved by the ADR process shall be submitted to binding arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules. Such claims shall be heard by a panel of three arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association. The arbitration panel shall have the power to rule upon its own jurisdiction and authority. The place of arbitration shall be San Francisco, California, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction. The parties shall bear their own legal fees and costs in connection with any arbitration proceedings brought pursuant to this Section 7. The award of the arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party to an arbitration proceeding nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to this Engagement Letter. The parties to this Engagement Letter acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate claims against each other in the judicial system, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration in accordance with the foregoing.

(c)     This Engagement Letter shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

## 8. Termination.

The Trust has the right to terminate this engagement at any time upon delivery of written notice (including by email) to the Receivers. In the event of termination by the Trust, the Firms shall provide cooperation in any transition, including return of materials provided to the Firms by the Trust and providing copies of any work product created under this Engagement Letter or in connection with the Representation. The Firms also have the right, subject to certain responsibilities under applicable ethical rules, to terminate this engagement by giving the Trust written notice if the Trust fails to cooperate with the Firms or if the Firms determine that continuing to represent the Trust would be unethical, impractical or improper.

## 9. Indemnification.

The Firms acknowledge that the operation of the Trust is governed by a Trust Agreement which provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firms acknowledge and agree that, except as to the Trust's indemnity obligations arising out of or related to the Trust's fraud or intentional misconduct, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████

## 10. Agreement Applicable Until Changed in Writing.

The scope of this engagement may be modified by the Trust in writing at any time and from time to time by advance written notice to the Receivers. If the scope of engagement is modified, this Engagement Letter will apply to any additional matters the Firms agree to undertake upon the Trust's behalf unless the parties hereto enter into an express written agreement reflecting an alternate arrangement.

## 11. Notices.

Any notice given pursuant to this Engagement Letter shall be sent by FedEx or other commercial courier and electronically (by email) as follows:

**For the Walkup Consortium, to:**

Michael A. Kelly
Khaldoun Baghdadi
Walkup, Melodia, Kelly & Schoenberger
650 California Street, 26th Floor
San Francisco, CA 94108
Email: mkelly@walkuplawoffice.com

**For the Andrews Consortium, to:**

Anne Andrews
Sean Higgins
Andrews & Thornton, a Law Corporation
4701 Von Karman Ave, Suite 300
Newport Beach, CA 92660

Email: aa@andrewsthornton.com
Email: shiggins@andrewsthornton.com

**For the Trust, to:**

Hon. John K. Trotter (Ret.), Trustee
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

With copies to:



David J. Molton
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Email: dmolton@brownrudnick.com

## 12.  Effectiveness.

This Engagement Letter shall not become effective until it has been executed and delivered by all the parties hereto.

## 13.  Counterpart Signatures.

This Engagement Letter may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all of which together shall constitute and be deemed one and the same agreement.

## 14.  Headings.

The headings contained in this Engagement Letter are for reference purposes only and shall not in any way affect the meaning or interpretation of this Engagement Letter.

*(Signature page follows)*

8

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____
**COTCHETT, PITRE & McCARTHY, LLP**

_____
**COREY, LUZAICH, de GHETALDI & RIDDLE, LLP**

_____
**WALKUP, MELODIA, KELLY & SCHOENBERGER**

_____
**DREYER, BABICH, BUCCOLA, WOOD & CAMPORA, LLP**

_____
**GREENBERG GROSS LLP**

_____
**ANDREWS & THORNTON, A LAW CORPORATION**


ACCEPTED AND AGREED

_____
**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____
**COTCHETT, PITRE & McCARTHY, LLP**

_____
**COREY, LUZAICH, de GHETALDI & RIDDLE, LLP**

_____
**WALKUP, MELODIA, KELLY & SCHOENBERGER**

_____
**DREYER, BABICH, BUCCOLA, WOOD & CAMPORA, LLP**

_____
**GREENBERG GROSS LLP**

_____
**ANDREWS & THORNTON, A LAW CORPORATION**

ACCEPTED AND AGREED

_____
**PG&E FIRE VICTIM TRUST**

_[Signature Page to Engagement Letter]_

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____
**COTCHETT, PITRE & McCARTHY, LLP**

_____
**COREY, LUZAICH, de GHETALDI & RIDDLE, LLP**

_____
**WALKUP, MELODIA, KELLY & SCHOENBERGER**

_____
**DREYER, BABICH, BUCCOLA, WOOD & CAMPORA, LLP**

_____
**GREENBERG GROSS LLP**

_____
**ANDREWS & THORNTON, A LAW CORPORATION**

ACCEPTED AND AGREED

_____
**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

| | |
|---|---|
| **COTCHETT, PITRE & McCARTHY, LLP** | **COREY, LUZAICH, de GHETALDI & RIDDLE, LLP** |
| **WALKUP, MELODIA, KELLY & SCHOENBERGER** | **DREYER, BABICH, BUCCOLA, WOOD & CAMPORA, LLP** |
| **GREENBERG GROSS LLP** | **ANDREWS & THORNTON, A LAW CORPORATION** |

ACCEPTED AND AGREED

**PG&E FIRE VICTIM TRUST**

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____  _____
**COTCHETT, PITRE & McCARTHY,** **COREY, LUZAICH, de GHETALDI**
**LLP**  **& RIDDLE, LLP**


_____  _____
**WALKUP, MELODIA, KELLY &** **DREYER, BABICH, BUCCOLA, WOOD**
**SCHOENBERGER**  **& CAMPORA, LLP**


_____  _____
**GREENBERG GROSS LLP**  **ANDREWS & THORNTON, A LAW**
   **CORPORATION**


ACCEPTED AND AGREED


_____
**PG&E FIRE VICTIM TRUST**


*[Signature Page to Engagement Letter]*



1

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 38



2





















**EXHIBIT C**

December 18, 2020

Hon. John K. Trotter, Jr. (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:     Representation of PG&E Fire Victim Trust in Litigation of Certain Assigned Claims

Dear Justice Trotter:

This letter of engagement ("**Engagement Letter**") is to confirm the retention of Andrews & Thornton, Attorneys at Law, A Law Corporation and Greenberg Gross LLP (each a "**Firm**" and collectively, the "**Firms**") by the PG&E Fire Victim Trust (the "**Trust**"). As set forth below, the Firms shall be compensated for services ████████

1. **DEFINITIONS.** As used herein, the following terms shall have the meanings set forth below:

(a)     "**Authorized Agent**" shall mean a person designated by the Trustee, in writing, as specifically authorized to act for the Trust in regard to the Representation and whose authorization has not been terminated by the Trustee. This Engagement Letter constitutes the designation of ████████ as an Authorized Agent of the Trust.

(b)     "**BMC Claims**" shall mean any Claims pursued against business management consultants by the Firms pursuant to the Representation, including, without limitation, potential claims against the following entities and/or affiliated entities: Accenture LLP; McKinsey & Company Inc.; KPMG; Oliver Wyman, Inc.; and PricewaterhouseCoopers.

(c)     "**Claims**" shall mean the "Assigned Rights and Causes of Action," as defined in PG&E's, Joint Chapter 11 Plan of Reorganization dated June 19, 2020, net of all costs of litigation other than attorneys' fees (whether incurred pursuant to an hourly, contingency fee or other arrangement).

████████████████████████████████████████

(e)     "**Confidential Information**" shall have the meaning ascribed thereto in paragraph 5.

████████████████████████████████████████

(g)     "**Federal Settlement Amount**" shall mean USD $117,000,000.

(h)     "**Firms' Agent**" shall mean Andrews & Thornton, Attorneys at Law, A Law Corporation, unless both Firms jointly notify the Trust in writing of the appointment of a different Firms' Agent.

████████████████████████████████████████



(m) **"PG&E"** means PG&E Corporation and Pacific Gas and Electric Company.

(n) **"Proceeds"** shall mean the total amount of any award, settlement, compromise or judgment that is actually paid to or for the benefit of the Trust in respect of Claims.

(p) **"Representation"** shall mean the legal representation by the Firms of the Trust with respect to BMC Claims litigation to be initiated by the Trust against certain business management consultants potentially responsible for injury, harm and damages to PG&E. For the sake of clarity, the Representation does not include the legal representation by the Firms of the Trust with respect to claims against businesses principally engaged in vegetation management consulting.

(s) **"Trustee"** shall mean the trustee of the Trust.

2

2. **REQUIRED APPROVALS; COMMUNICATIONS WITH TRUST.**



3



    (c)       The fees set forth in this Engagement Letter are not set by law, but have been negotiated between attorney and client.



4

**4. PAYMENT TO FIRMS' AGENT.**

Any amounts due from the Trust to the Firms pursuant to this Engagement Letter will be made to the Firms' Agent and the Trust shall have no obligation to make any payment hereunder to any other person, law firm or other third-party entity. The extent to which the Firms will share in such payment is subject to separate agreement by and between the Firms which shall have no impact on the Trust's payment obligations hereunder, regardless of any dispute between the Firms or their respective legal professionals or any contrary demand made by any person for payment.

**5. CONFIDENTIAL INFORMATION.**

The Firms recognize that certain of their partners, associates and staff members may be provided with confidential and proprietary information belonging to the Trust ("**Confidential Information**"). None of the Firms will disclose to any third parties any Confidential Information obtained in the course of the Representation unless the Trust consents to such disclosure. Confidential Information will not include: (i) information made public other than as a result of breach of this Engagement Letter; (ii) information any or all of the Firms acquire from a third party with no known obligations of confidence regarding the information; or (iii) information already known to any or all of the Firms prior to disclosure by the Trust. If any or all of the Firms receive a request for disclosure of Confidential Information or are otherwise required by law to disclose any Confidential Information, the Firms will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Trust. The Firms also agree to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality. For clarity, any and all Confidential Information known by any Firm individually shall be conclusively deemed to be known by each and all of the Firms.

**6. RECORDS.**

All materials prepared by the Firms for the Trust in connection with the Representation shall be the property of the Trust.

**7. COOPERATION.**

The Trust agrees that its authorized representatives will be (i) reasonably available to confer with the Firms upon request, (ii) provide the Firms with access to such documents and information as the Trust may possess relating to the Representation, (iii) disclose all facts and circumstances of which the Trust is are aware that may bear upon the Firms' handling of the Representation, and (iv) otherwise assist the Firms' efforts as reasonably requested to do so by the Trustee or an Authorized Agent.

5

## 8. DISPUTE RESOLUTION.

The parties hereto agree that any dispute that arises under this Engagement Letter

whether based on facts and circumstances existing at the time of termination or arising thereafter shall, in the first instance, be sought to be resolved by an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process.

The parties further agree that any dispute that is not resolved by the ADR process shall be submitted to binding arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules. Such claims shall be heard by a panel of three arbitrators, to be chosen as follows: within 15 days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association. The arbitration panel shall have the power to rule upon its own jurisdiction and authority. The place of arbitration shall be San Francisco, California, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction. The parties shall bear their own legal fees and costs in connection with any arbitration proceedings brought pursuant to this Section 10. The award of the arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party to an arbitration proceeding nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to this Engagement Letter. The parties to this Engagement Letter acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate certain claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration in accordance with the foregoing.

This Engagement Letter shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

## 9. TERMINATION.

The Trust has the right to terminate this engagement at any time upon delivery of written notice to the Firms' Agent. In the event of termination by the Trust, the Firms shall provide cooperation in any transition, including return of materials provided to the Firms by the Trust and providing copies of any work product created under this Engagement Letter or in connection with the Representation. The Firms also have the right, subject to certain responsibilities under applicable ethical rules, to terminate this engagement by giving the Trust written notice if the Trust fails to cooperate with the Firms or if the Firms determine that continuing to represent the Trust would be unethical, impractical or improper.

6

## 10. **INDEMNIFICATION.**

The Firms acknowledge that the operation of the Trust is governed by a Trust Agreement, which provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firms acknowledge and agree that, except as to Trust's indemnity obligations arising out of or related to the Trust's willful misconduct, bad faith or fraud as finally judicially determined by a court of competent jurisdiction, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ▮▮▮▮▮▮▮▮▮▮▮

## 11. **AGREEMENT APPLICABLE UNTIL CHANGED IN WRITING.**

The scope of this engagement may be modified by the Trust at any time and from time to time by advance written notice to the Firms' Agent at its offices at 4701 Von Karman Avenue, Newport Beach, California 92660, or via email to aa@andrewsthornton.com. If the scope of engagement is modified, this Engagement Letter will apply to any additional matters the Firms agree to undertake upon the Trust's behalf unless the parties hereto enter into an express written agreement reflecting an alternate arrangement.

## 12. **NOTICES.**

Any notice given pursuant to this Engagement Letter shall be sent by FedEx or other commercial courier and electronically (by email) as follows:

### **For the Firms, to:**

Anne Andrews
Andrews & Thornton, LLC
4701 Von Karman Avenue,
Newport Beach, California 92660
Email: aa@andrewsthornton.com

With copies to:

Alan A. Greenberg
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Email: agreenberg@ggtriallaw.com

7

**For the Trustee, to:**

Hon. John K. Trotter (Ret.), Trustee
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

With copies to:



David Molton, Esq.
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Email: dmolton@brownrudnick.com

## 13. **EFFECTIVENESS**.

This Engagement Letter shall not become effective until it has been executed and delivered by all the parties hereto.

## 14. **COUNTERPART SIGNATURES**.

This Engagement Letter may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all of which together shall constitute and be deemed one and the same agreement.

## 15. **HEADINGS**.

The headings contained in this Engagement Letter are for reference purposes only and shall not in any way affect the meaning or interpretation of this Engagement Letter.

*(Signature page follows)*

8

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____

**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**


_____

**GREENBERG GROSS LLP**


ACCEPTED AND AGREED


_____

**PG&E FIRE VICTIM TRUST**


All invoices to be sent to:

PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
accounting@firevictimtrust.com


*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION

GREENBERG GROSS LLP

By: Alan A. Greenberg
Managing Partner

ACCEPTED AND AGREED

PG&E FIRE VICTIM TRUST

All invoices to be sent to:

PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
accounting@firevictimtrust.com

*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____

**ANDREWS & THORNTON, LLC**

_____

**GREENBERG GROSS LLP**

ACCEPTED AND AGREED

_____

**PG&E FIRE VICTIM TRUST**

All invoices to be sent to:

PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
accounting@firevictimtrust.com

*[Signature Page to Engagement Letter]*

**EXHIBIT D**

January 1, 2022

Hon. John K. Trotter, Jr. (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:   Representation of PG&E Fire Victim Trust in Litigation of Claims Against Oliver Wyman

Dear Justice Trotter:

This letter of engagement ("**Engagement Letter**") is to confirm the retention of Andrews & Thornton, Attorneys at Law, A Law Corporation and Greenberg Gross LLP (each a "**Firm**" and collectively, the "**Firms**") by the PG&E Fire Victim Trust (the "**Trust**") in connection with the Oliver Wyman Claims, defined below.  This Engagement Letter shall be effective as of January 1, 2022 (the "**Effective Date**").  As set forth below, the Firms shall be compensated for their services ██████████ ████████████████████

1.  **DEFINITIONS.**  As used herein, the following terms shall have the meanings set forth below:

(a)   "**Authorized Agent**" shall mean a person designated by the Trustee, in writing, as specifically authorized to act for the Trust in regard to the Representation and whose authorization has not been terminated by the Trustee.  This Engagement Letter constitutes the designation of ███████████ as an Authorized Agent of the Trust.



(c)   "**Claims**" shall mean the "Assigned Rights and Causes of Action," as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.

██████          ███████████████████████████████

(e)   "**Federal Settlement**" shall mean the USD $117,000,000 to be paid, pursuant to that certain April 21, 2020 settlement agreement, to the United States Department of Justice from recoveries on the "Assignment Rights and Causes of Action" as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.

(f)   "**Firms' Agents**" shall mean Anne Andrews for Andrews & Thornton, Attorneys at Law, A Law Corporation and Alan A. Greenberg for Greenberg Gross LLP, unless a Firm notifies the Trust in writing of the appointment of a different Firm's Agent.

(g)   "**Judgment**" shall mean a final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, resolving one or more of the Oliver Wyman Claims.

(i)      "**New Engagement Letters**" shall mean, collectively, those certain engagement letters between the Firms and the Trust effective as of January 1, 2022, consisting of (i) this Engagement Letter, (ii) that certain engagement letter with respect to claims against PricewaterhouseCoopers LLP and/or its affiliates, (iii) that certain engagement letter with respect to claims against McKinsey & Company Inc. and/or its affiliates, (iv) that certain engagement letter with respect to claims against Accenture LLP and/or its affiliates, and (v) that certain engagement letter with respect to claims against KPMG LLP and/or its affiliates.

(j)      "**Oliver Wyman**" shall mean Oliver Wyman, Inc. and/or its affiliates.

(k)      "**Oliver Wyman Claims**" shall mean any Claims pursued by the Trust against Oliver Wyman.

(l)      "**Outstanding Costs and Expenses**" means all costs and expenses (including, without limitation, Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, ███████████████ and General Costs) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

(m)      "**Outstanding Fixed Indemnity Sums**" means, █████████████████ the total sum of any amounts, costs, fees, or judgments, determined, by fully executed settlement agreement, final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

(n)      "**PG&E**" means PG&E Corporation and/or Pacific Gas and Electric Company, including reorganized PG&E Corporation and/or reorganized Pacific Gas and Electric Company.

(o)      "**Prior Engagement Letter**" shall mean that certain December 18, 2020 engagement letter between the Firms and the Trust with respect to claims pursued against business management consultants.

(p)      "**Proceeds**" shall mean a dollar amount that is actually paid to the Trust pursuant to any Settlement or Judgment with respect to the Oliver Wyman Claims, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

(r)      "**Representation**" shall mean the legal representation by the Firms of the Trust with respect to the Oliver Wyman Claims.  For the sake of clarity, the Representation does not include the legal representation by the Firms of the Trust with respect to (i) claims against any business management consulting firms other than Oliver Wyman, (ii) claims against any entities principally engaged in vegetation management consulting, or (iii) any other claims.

2

(s)     "**Settlement**" shall mean a fully executed settlement agreement between the Trust and Oliver Wyman with respect to the Oliver Wyman Claims.

(t)     "**Trustee**" shall mean the trustee of the Trust.

(u)     "**Unresolved Indemnity Claims**" means, ████████████████████ any disputed, undetermined, unliquidated, or pending claims for indemnities, contributions, liens, recoupments, setoffs, offsets, or any similar or related theory, whether or not based on contract, asserted or assertable by Oliver Wyman (including by any of Oliver Wyman's insurers or any payor of Proceeds) or PG&E against the Trust in connection with the Oliver Wyman Claims. For the avoidance of doubt, indemnity claims will be deemed resolved if, at the time a Settlement is executed, or funds are collected pursuant to a Judgment, such Settlement or Judgment conclusively resolves all indemnity claims that have been or may be asserted by Oliver Wyman (including by any of Oliver Wyman's insurers or any payor of Proceeds) or PG&E.

(v)     "**Unresolved Indemnity Sums**" means, ████████████████ the estimated total sum of any potential amounts, costs, fees, or judgments, potentially due and owing under any Unresolved Indemnity Claims, as reasonably determined by the Trust.

2.   **REQUIRED APPROVALS; COMMUNICATIONS WITH TRUST; COSTS.**

(a)     The Trust understands that the Firms are not presently recommending the pursuit of any Oliver Wyman Claims, but the Trust wishes the Firms to consider any new information that might come to their attention, and, if the Firms ultimately recommend the pursuit of any Oliver Wyman Claims and if the Trust approves it, then the Firms will pursue the Oliver Wyman Claims under the terms of this Engagement Letter.

(c)     The Firms shall not commence negotiations with Oliver Wyman, make any demand for payment from Oliver Wyman, or enter into any settlements in connection with the Oliver Wyman Claims without the prior written approval of the Trustee or the Authorized Agent. All such decisions to commence negotiations, demand payments, or enter into settlements (including the timing of any of the foregoing actions) are expressly and completely in the Trustee's sole discretion; in making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations.

3

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 60

(d)      The Firms agree to keep the Trust, the Trustee, and the Authorized Agent reasonably informed on a timely basis as to the progress and cost of the services being performed in furtherance of the Representation and shall, upon request, provide written or oral responses to inquiries of the Trust, the Trustee, or the Authorized Agent regarding the Representation. The Firms agree to participate in a telephone conference with the Authorized Agent and the Trust on the first Friday of each month. The Firms shall, by the close of business on the day prior to such monthly telephone conference, provide to the Authorized Agent and the Trust a written report with respect to the progress of the Representation and the activities conducted in the month preceding such telephone conference. Additionally, the Firms agree to comply with further reasonable reporting requirements that may be developed by the Trustee or the Authorized Agent.

(e)      The Firms shall not retain or engage the services of any court reporters ("**Court Reporters**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Court Reporters ("**Court Reporter Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Court Reporters or seek reimbursement for any Court Reporter Costs except as approved by the Trustee as provided in this <u>Section 2(e)</u>.

(f)      The Firms shall not retain or engage the services of any electronic discovery platforms, data storage, databases, consultants, or other similar vendors and service providers ("**Discovery Services**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Discovery Services ("**Discovery Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Discovery Services or seek reimbursement for any Discovery Costs except as approved by the Trustee as provided in this <u>Section 2(f)</u>.

(g)      The Firms shall not retain or engage any third-party investigators or other experts ("**Experts**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Experts ("**Expert Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Experts or seek reimbursement for costs incurred in connection with the retention or engagement of any Experts except as approved by the Trustee as provided in this <u>Section 2(g)</u>.

(h)      The Firms shall not retain or engage any mediators, neutrals, or any other dispute resolution professionals ("**Mediators**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Mediators ("**Mediator Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Mediators or seek reimbursement for costs incurred in connection with the retention or engagement of any Mediators except as approved by the Trustee as provided in this <u>Section 2(h)</u>.



4

(j)    Prior to engaging any Court Reporters, Discovery Services, Experts, Mediators, or ███████████ in connection with the Representation, the Firms shall provide to the Trustee or the Authorized Agent in writing the proposed service provider's curriculum vitae (as applicable), the proposed hourly rate (or other fee arrangement), and a projected budget for the engagement including an estimate of the total number of hours projected to be expended by such professional or service provider.  The Trustee shall have sole and absolute authority over the approval and selection of any Court Reporters, Discovery Services, Experts, Mediators, and ███████████.  In making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations.



(m)    For clarity, none of the Trustee, the Claims Administrator of the Trust, or any of their employees, officers, directors, agents, consultants, lawyers, advisors, or professionals, shall be personally liable, whether under this Engagement Letter or based on any theory of law or equity, to the Firms or to any party claiming on behalf of or through the Firms for any of the Firms' fees or expenses.

5

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 62



6



     (e)     The fees set forth in this Engagement Letter are not set by law but have been negotiated between attorney and client.



7



**4. PAYMENT TO FIRMS.**



(b) The Trustee may dispute any invoice, statement of fees, request for reimbursement, or other request for costs, expenses, and/or fees submitted by the Firms. The Trustee or the Authorized Agent shall notify the Firms' Agents of any such dispute along with a reasonably detailed description of the dispute ("**Notice of Dispute**"). Upon the Firms' receipt of a Notice of Dispute, the Trust and the Firms shall seek to resolve any such dispute expeditiously and in good faith for forty-five (45) days ("**Initial Resolution Period**"). If the Trust and the Firms have not resolved the dispute by the end of the Initial Resolution Period, then the Trust and the Firms shall resolve the dispute in accordance with the dispute resolution provisions set forth in Section 8 below. The parties hereto shall continue performing their respective obligations under this Engagement Letter during any such dispute, subject to the terms of this Engagement Letter.

**5. CONFIDENTIAL INFORMATION.**

The Firms recognize that certain of their partners, associates, and staff members may be provided with confidential and proprietary information belonging to the Trust ("**Confidential Information**"). The Firms shall not disclose to any third parties any Confidential Information obtained in the course of the Representation unless the Trust consents to such disclosure. Confidential Information will not include: (i) information made public other than as a result of breach of this Engagement Letter; (ii) information either or both of the Firms acquire from a third party with no known obligations of confidence regarding the information; or (iii) information already known to either or both of the Firms prior to disclosure by the Trust. If either or both of the Firms receive a request for disclosure of Confidential Information or are otherwise required by law to disclose any Confidential Information, the Firms will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Trust. The Firms also agree to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality.

**6. RECORDS.**

All materials prepared by the Firms for the Trust in connection with the Representation shall be the property of the Trust.

**7. COOPERATION.**

The Trust agrees that its authorized representatives will (i) be reasonably available to confer with the Firms upon request; (ii) provide the Firms with access to such documents and

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 65 of 149

information as the Trust may possess relating to the Representation; (iii) disclose all facts and circumstances of which the Trust is are aware that may bear upon the Firms' handling of the Representation; and (iv) otherwise assist the Firms' efforts as reasonably requested to do so by the Trustee or the Authorized Agent.

## 8. DISPUTE RESOLUTION.

The parties hereto agree that any dispute that arises under this Engagement Letter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ whether based on facts and circumstances existing at the time of termination or arising thereafter shall, in the first instance, be sought to be resolved by an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process.

The parties further agree that any dispute that is not resolved by the ADR process shall be submitted to binding arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules. Such claims shall be heard by a panel of three arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association. The arbitration panel shall have the power to rule upon its own jurisdiction and authority. The place of arbitration shall be San Francisco, California, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction. The parties shall bear their own legal fees and costs in connection with any arbitration proceedings brought pursuant to this Section 8. The award of the arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party to an arbitration proceeding nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to this Engagement Letter. The parties to this Engagement Letter acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate certain claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration in accordance with the foregoing.

This Engagement Letter shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

## 9. TERMINATION.

Notwithstanding anything to the contrary herein, the Trust has the right to terminate this engagement at any time, for any reason or for no reason, effective upon delivery of written notice to the Firms' Agents. In the event of termination by the Trust, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation. The Firms also have the right, subject to certain responsibilities under applicable ethical rules, to terminate this engagement by giving the Trust fifteen (15) days advance written notice if the Trust fails to cooperate with the Firms or if the Firms

9

determine that continuing to represent the Trust would be unethical, impractical, or improper. In the event the Firms exercise such right of termination, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation.

10. **INDEMNIFICATION.**

The Firms acknowledge that the operation of the Trust is governed by a Trust Agreement, which provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firms acknowledge and agree that, except as to Trust's indemnity obligations arising out of or related to the Trust's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████

11. **AGREEMENT APPLICABLE UNTIL CHANGED IN WRITING.**

The scope of this Representation may be modified by the Trust at any time and from time to time by advance written notice to the Firms' Agents at their offices at Andrews & Thornton, LLC, 4701 Von Karman Avenue, Newport Beach, California 92660 and Greenberg Gross LLP, 650 Town Center Drive, Suite 1700, Costa Mesa, California 92626, or via email to aa@andrewsthornton.com and agreenberg@ggtriallaw.com. If the scope of this Representation is modified, this Engagement Letter will apply to such additional matters the Firms agree to undertake upon the Trust's behalf unless the parties hereto enter into an express written agreement reflecting an alternate arrangement.

12. **ENTIRE AGREEMENT.**

Effective as of January 1, 2022, this Engagement Letter contains the entire understanding between the Firms and the Trust relating to the services to be rendered by the Firms in connection with the Representation. Effective upon the execution of the New Engagement Letters, except as provided in Sections 5 [confidential information], 6 [records], 8 [dispute resolution], 10 [indemnification], and 12 [notices] of the Prior Engagement Letter, which Sections shall remain in effect, the Prior Engagement Letter shall terminate in all respects as of December 31, 2021 with respect to the services to be rendered by the Firms in connection with the Representation and the obligations of the Trust thereunder, and the provisions of this Engagement Letter shall govern exclusively the matters set forth herein; ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████

13. **NOTICES.**

Any notice given pursuant to this Engagement Letter shall be sent (i) by FedEx or other commercial courier or (ii) electronically (by email) as follows:

(a)      If to the Firms:

10

Anne Andrews
Andrews & Thornton, LLC
4701 Von Karman Avenue,
Newport Beach, California 92660
Email: aa@andrewsthornton.com

With copies to:

Alan A. Greenberg
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Email: agreenberg@ggtriallaw.com

(b)    If to the Trust or the Trustee:

Hon. John K. Trotter (Ret.), Trustee
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

With copies to:



David Molton, Esq.
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Email: dmolton@brownrudnick.com

## 14. EFFECTIVENESS.

This Engagement Letter shall not become effective until it has been executed and delivered by all the parties hereto.

## 15. COUNTERPART SIGNATURES.

This Engagement Letter may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all of which together shall constitute and be deemed one and the same instrument.

## 16. HEADINGS.

The headings contained in this Engagement Letter are for reference purposes only and shall not in any way affect the meaning or interpretation of this Engagement Letter.

*(Signature page follows)*

11

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 68 of 149

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____

**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**

_____

**GREENBERG GROSS LLP**

ACCEPTED AND AGREED

_____

**PG&E FIRE VICTIM TRUST**

_[Signature Page to Engagement Letter]_

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____
**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**

_____
**GREENBERG GROSS LLP**

ACCEPTED AND AGREED

_____
**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____

**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**


_____

**GREENBERG GROSS LLP**


ACCEPTED AND AGREED

_____

**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**EXHIBIT E**

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 72
of 149

January 1, 2022

Hon. John K. Trotter, Jr. (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:   Representation of PG&E Fire Victim Trust in Litigation of Claims Against McKinsey

Dear Justice Trotter:

      This letter of engagement ("**Engagement Letter**") is to confirm the retention of Andrews & Thornton, Attorneys at Law, A Law Corporation and Greenberg Gross LLP (each a "**Firm**" and collectively, the "**Firms**") by the PG&E Fire Victim Trust (the "**Trust**") in connection with the McKinsey Claims, defined below. This Engagement Letter shall be effective as of January 1, 2022 (the "**Effective Date**"). As set forth below, the Firms shall be compensated for their services ████████████ ████.

1.  **DEFINITIONS.** As used herein, the following terms shall have the meanings set forth below:

      (a)    "**Authorized Agent**" shall mean a person designated by the Trustee, in writing, as specifically authorized to act for the Trust in regard to the Representation and whose authorization has not been terminated by the Trustee. This Engagement Letter constitutes the designation of ███████████ as an Authorized Agent of the Trust.



      (c)    "**Claims**" shall mean the "Assigned Rights and Causes of Action," as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.



      (e)    "**Federal Settlement**" shall mean the USD $117,000,000 to be paid, pursuant to that certain April 21, 2020 settlement agreement, to the United States Department of Justice from recoveries on the "Assignment Rights and Causes of Action" as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.

      (f)    "**Firms' Agents**" shall mean Anne Andrews for Andrews & Thornton, Attorneys at Law, A Law Corporation and Alan A. Greenberg for Greenberg Gross LLP, unless a Firm notifies the Trust in writing of the appointment of a different Firm's Agent.

      (g)    "**Judgment**" shall mean a final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, resolving one or more of the McKinsey Claims.

      (h)    "**McKinsey**" shall mean McKinsey & Company Inc. and/or its affiliates.

(i)     "**McKinsey Claims**" shall mean any Claims pursued by the Trust against McKinsey.

███████████████████████████████████████████████████████████████████

(k)     "**New Engagement Letters**" shall mean, collectively, those certain engagement letters between the Firms and the Trust effective as of January 1, 2022, consisting of (i) this Engagement Letter, (ii) that certain engagement letter with respect to claims against PricewaterhouseCoopers LLP and/or its affiliates, (iii) that certain engagement letter with respect to claims against Accenture LLP and/or its affiliates, (iv) that certain engagement letter with respect to claims against KPMG LLP and/or its affiliates, and (v) that certain engagement letter with respect to claims against Oliver Wyman, Inc. and/or its affiliates.

(l)     "**Outstanding Costs and Expenses**" means all costs and expenses (including, without limitation, Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, ███████████████████ and General Costs) ███████████████████████████████████

(m)     "**Outstanding Fixed Indemnity Sums**" means, ██████████████████ the total sum of any amounts, costs, fees, or judgments, determined, by fully executed settlement agreement, final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, ████████████████████████████████████████████

(n)     "**PG&E**" means PG&E Corporation and/or Pacific Gas and Electric Company, including reorganized PG&E Corporation and/or reorganized Pacific Gas and Electric Company.

(o)     "**Prior Engagement Letter**" shall mean that certain December 18, 2020 engagement letter between the Firms and the Trust with respect to claims pursued against business management consultants.

(p)     "**Proceeds**" shall mean a dollar amount that is actually paid to the Trust pursuant to any Settlement or Judgment with respect to the McKinsey Claims, ███████████████████████████████████████████████████████████████████████

(r)     "**Representation**" shall mean the legal representation by the Firms of the Trust with respect to the McKinsey Claims. For the sake of clarity, the Representation does not include the legal representation by the Firms of the Trust with respect to (i) claims against any business

2

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 74

management consulting firms other than McKinsey, (ii) claims against any entities principally engaged in vegetation management consulting, or (iii) any other claims.

(s)   "**Settlement**" shall mean a fully executed settlement agreement between the Trust and McKinsey with respect to the McKinsey Claims.

(t)   "**Trustee**" shall mean the trustee of the Trust.

(u)   "**Unresolved Indemnity Claims**" means, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ any disputed, undetermined, unliquidated, or pending claims for indemnities, contributions, liens, recoupments, setoffs, offsets, or any similar or related theory, whether or not based on contract, asserted or assertable by McKinsey (including by any of McKinsey's insurers or any payor of Proceeds) or PG&E against the Trust in connection with the McKinsey Claims. For the avoidance of doubt, indemnity claims will be deemed resolved if, at the time a Settlement is executed, or funds are collected pursuant to a Judgment, such Settlement or Judgment conclusively resolves all indemnity claims that have been or may be asserted by McKinsey (including by any of McKinsey's insurers or any payor of Proceeds) or PG&E.

(v)   "**Unresolved Indemnity Sums**" means, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the estimated total sum of any potential amounts, costs, fees, or judgments, potentially due and owing under any Unresolved Indemnity Claims, as reasonably determined by the Trust.

2.   **REQUIRED APPROVALS; COMMUNICATIONS WITH TRUST; COSTS.**



(c)   The Firms agree to keep the Trust, the Trustee, and the Authorized Agent reasonably informed on a timely basis as to the progress and cost of the services being performed in furtherance of the Representation and shall, upon request, provide written or oral responses to inquiries of the Trust, the Trustee, or the Authorized Agent regarding the Representation. The Firms agree to participate in a telephone conference with the Authorized Agent and the Trust on the first Friday of each month. The Firms shall, by the close of business on the day prior to such

3

monthly telephone conference, provide to the Authorized Agent and the Trust a written report with respect to the progress of the Representation and the activities conducted in the month preceding such telephone conference. Additionally, the Firms agree to comply with further reasonable reporting requirements that may be developed by the Trustee or the Authorized Agent.

(d)     The Firms shall not retain or engage the services of any court reporters ("**Court Reporters**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Court Reporters ("**Court Reporter Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Court Reporters or seek reimbursement for any Court Reporter Costs except as approved by the Trustee as provided in this Section 2(d).

(e)     The Firms shall not retain or engage the services of any electronic discovery platforms, data storage, databases, consultants, or other similar vendors and service providers ("**Discovery Services**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Discovery Services ("**Discovery Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Discovery Services or seek reimbursement for any Discovery Costs except as approved by the Trustee as provided in this Section 2(e).

(f)     The Firms shall not retain or engage any third-party investigators or other experts ("**Experts**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Experts ("**Expert Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Experts or seek reimbursement for costs incurred in connection with the retention or engagement of any Experts except as approved by the Trustee as provided in this Section 2(f).

(g)     The Firms shall not retain or engage any mediators, neutrals, or any other dispute resolution professionals ("**Mediators**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Mediators ("**Mediator Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Mediators or seek reimbursement for costs incurred in connection with the retention or engagement of any Mediators except as approved by the Trustee as provided in this Section 2(g).



(i)     Prior to engaging any Court Reporters, Discovery Services, Experts, Mediators, or ███████ in connection with the Representation, the Firms shall provide to the Trustee or the Authorized Agent in writing the proposed service provider's curriculum vitae (as applicable), the proposed hourly rate (or other fee arrangement), and a projected budget for the engagement including an estimate of the total number of hours projected to be expended by such professional or service provider. The Trustee shall have sole and absolute authority over the approval and

4

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 76

selection of any Court Reporters, Discovery Services, Experts, Mediators, and  In making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations.

(l)  For clarity, none of the Trustee, the Claims Administrator of the Trust, or any of their employees, officers, directors, agents, consultants, lawyers, advisors, or professionals, shall be personally liable, whether under this Engagement Letter or based on any theory of law or equity, to the Firms or to any party claiming on behalf of or through the Firms for any of the Firms' fees or expenses.



5



6

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 78



       (e)     The fees set forth in this Engagement Letter are not set by law but have been negotiated between attorney and client.

       (f)     The Firms shall prepare a statement of fees setting forth the amount of any Contingency



7



**4. PAYMENT TO FIRMS.**

      (b)     The Trustee may dispute any invoice, statement of fees, request for reimbursement, or other request for costs, expenses, and/or fees submitted by the Firms. The Trustee or the Authorized Agent shall notify the Firms' Agents of any such dispute along with a reasonably detailed description of the dispute ("**Notice of Dispute**"). Upon the Firms' receipt of a Notice of Dispute, the Trust and the Firms shall seek to resolve any such dispute expeditiously and in good faith for forty-five (45) days ("**Initial Resolution Period**"). If the Trust and the Firms have not resolved the dispute by the end of the Initial Resolution Period, then the Trust and the Firms shall resolve the dispute in accordance with the dispute resolution provisions set forth in Section 8 below. The parties hereto shall continue performing their respective obligations under this Engagement Letter during any such dispute, subject to the terms of this Engagement Letter.

**5. CONFIDENTIAL INFORMATION.**

      The Firms recognize that certain of their partners, associates, and staff members may be provided with confidential and proprietary information belonging to the Trust ("**Confidential Information**"). The Firms shall not disclose to any third parties any Confidential Information obtained in the course of the Representation unless the Trust consents to such disclosure. Confidential Information will not include: (i) information made public other than as a result of breach of this Engagement Letter; (ii) information either or both of the Firms acquire from a third party with no known obligations of confidence regarding the information; or (iii) information already known to either or both of the Firms prior to disclosure by the Trust. If either or both of the Firms receive a request for disclosure of Confidential Information or are otherwise required by law to disclose any Confidential Information, the Firms will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Trust. The Firms also agree to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality.

**6. RECORDS.**

      All materials prepared by the Firms for the Trust in connection with the Representation shall be the property of the Trust.

**7. COOPERATION.**

      The Trust agrees that its authorized representatives will (i) be reasonably available to confer with the Firms upon request; (ii) provide the Firms with access to such documents and information as the Trust may possess relating to the Representation; (iii) disclose all facts and circumstances of which the Trust is aware that may bear upon the Firms' handling of the Representation; and (iv) otherwise assist the Firms' efforts as reasonably requested to do so by the Trustee or the Authorized Agent.

8

8. **DISPUTE RESOLUTION.**

The parties hereto agree that any dispute that arises under this Engagement Letter ███████████████████████████████████████████████████ whether based on facts and circumstances existing at the time of termination or arising thereafter shall, in the first instance, be sought to be resolved by an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process.

The parties further agree that any dispute that is not resolved by the ADR process shall be submitted to binding arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules. Such claims shall be heard by a panel of three arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association. The arbitration panel shall have the power to rule upon its own jurisdiction and authority. The place of arbitration shall be San Francisco, California, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction. The parties shall bear their own legal fees and costs in connection with any arbitration proceedings brought pursuant to this Section 8. The award of the arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party to an arbitration proceeding nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to this Engagement Letter. The parties to this Engagement Letter acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate certain claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration in accordance with the foregoing.

This Engagement Letter shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

9. **TERMINATION.**

Notwithstanding anything to the contrary herein, the Trust has the right to terminate this engagement at any time, for any reason or for no reason, effective upon delivery of written notice to the Firms' Agents. In the event of termination by the Trust, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation. The Firms also have the right, subject to certain responsibilities under applicable ethical rules, to terminate this engagement by giving the Trust fifteen (15) days advance written notice if the Trust fails to cooperate with the Firms or if the Firms determine that continuing to represent the Trust would be unethical, impractical, or improper. In the event the Firms exercise such right of termination, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation.

9

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 81

## 10. INDEMNIFICATION.

The Firms acknowledge that the operation of the Trust is governed by a Trust Agreement, which provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firms acknowledge and agree that, except as to Trust's indemnity obligations arising out of or related to the Trust's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ███████████████████████████████ ████████████████████████████████████████████████

## 11. AGREEMENT APPLICABLE UNTIL CHANGED IN WRITING.

The scope of this Representation may be modified by the Trust at any time and from time to time by advance written notice to the Firms' Agents at their offices at Andrews & Thornton, LLC, 4701 Von Karman Avenue, Newport Beach, California 92660 and Greenberg Gross LLP, 650 Town Center Drive, Suite 1700, Costa Mesa, California 92626, or via email to aa@andrewsthornton.com and agreenberg@ggtriallaw.com. If the scope of this Representation is modified, this Engagement Letter will apply to such additional matters the Firms agree to undertake upon the Trust's behalf unless the parties hereto enter into an express written agreement reflecting an alternate arrangement.

## 12. ENTIRE AGREEMENT.

Effective as of January 1, 2022, this Engagement Letter contains the entire understanding between the Firms and the Trust relating to the services to be rendered by the Firms in connection with the Representation. Effective upon the execution of the New Engagement Letters, except as provided in Sections 5 [confidential information], 6 [records], 8 [dispute resolution], 10 [indemnification], and 12 [notices] of the Prior Engagement Letter, which Sections shall remain in effect, the Prior Engagement Letter shall terminate in all respects as of December 31, 2021 with respect to the services to be rendered by the Firms in connection with the Representation and the obligations of the Trust thereunder, and the provisions of this Engagement Letter shall govern exclusively the matters set forth herein; ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████

## 13. NOTICES.

Any notice given pursuant to this Engagement Letter shall be sent (i) by FedEx or other commercial courier or (ii) electronically (by email) as follows:

(a)     If to the Firms:

Anne Andrews
Andrews & Thornton, LLC
4701 Von Karman Avenue,
Newport Beach, California 92660
Email: aa@andrewsthornton.com

10

With copies to:

Alan A. Greenberg
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Email: agreenberg@ggtriallaw.com

(b)    If to the Trust or the Trustee**:**

Hon. John K. Trotter (Ret.), Trustee
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

With copies to:



David Molton, Esq.
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Email: dmolton@brownrudnick.com

**14.**  **EFFECTIVENESS.**

This Engagement Letter shall not become effective until it has been executed and delivered by all the parties hereto.

**15.**  **COUNTERPART SIGNATURES.**

This Engagement Letter may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all of which together shall constitute and be deemed one and the same instrument.

**16.**  **HEADINGS.**

The headings contained in this Engagement Letter are for reference purposes only and shall not in any way affect the meaning or interpretation of this Engagement Letter.

*(Signature page follows)*

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 83

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____

**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**


_____

**GREENBERG GROSS LLP**


ACCEPTED AND AGREED


_____

**PG&E FIRE VICTIM TRUST**


*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION

GREENBERG GROSS LLP

ACCEPTED AND AGREED

PG&E FIRE VICTIM TRUST

*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____
**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**


_____
**GREENBERG GROSS LLP**


ACCEPTED AND AGREED

_____
**PG&E FIRE VICTIM TRUST**


*[Signature Page to Engagement Letter]*

**EXHIBIT F**

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 87
of 149

January 1, 2022

Hon. John K. Trotter, Jr. (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re: Representation of PG&E Fire Victim Trust in Litigation of Claims Against KPMG

Dear Justice Trotter:

     This letter of engagement ("**Engagement Letter**") is to confirm the retention of Andrews & Thornton, Attorneys at Law, A Law Corporation and Greenberg Gross LLP (each a "**Firm**" and collectively, the "**Firms**") by the PG&E Fire Victim Trust (the "**Trust**") in connection with the KPMG Claims, defined below. This Engagement Letter shall be effective as of January 1, 2022 (the "**Effective Date**"). As set forth below, the Firms shall be compensated for their services █████████████ ████

1. **DEFINITIONS.** As used herein, the following terms shall have the meanings set forth below:

     (a)    "**Authorized Agent**" shall mean a person designated by the Trustee, in writing, as specifically authorized to act for the Trust in regard to the Representation and whose authorization has not been terminated by the Trustee. This Engagement Letter constitutes the designation of ████████████ as an Authorized Agent of the Trust.



     (c)    "**Claims**" shall mean the "Assigned Rights and Causes of Action," as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.



     (e)    "**Federal Settlement**" shall mean the USD $117,000,000 to be paid, pursuant to that certain April 21, 2020 settlement agreement, to the United States Department of Justice from recoveries on the "Assignment Rights and Causes of Action" as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.

     (f)    "**Firms' Agents**" shall mean Anne Andrews for Andrews & Thornton, Attorneys at Law, A Law Corporation and Alan A. Greenberg for Greenberg Gross LLP, unless a Firm notifies the Trust in writing of the appointment of a different Firm's Agent.

     (g)    "**Judgment**" shall mean a final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, resolving one or more of the KPMG Claims.

     (h)    "**KPMG**" shall mean KPMG LLP and/or its affiliates.

     (i)    "**KPMG Claims**" shall mean any Claims pursued by the Trust against KPMG.

(k)  "**New Engagement Letters**" shall mean, collectively, those certain engagement letters between the Firms and the Trust effective as of January 1, 2022, consisting of (i) this Engagement Letter, (ii) that certain engagement letter with respect to claims against PricewaterhouseCoopers LLP and/or its affiliates, (iii) that certain engagement letter with respect to claims against McKinsey & Company Inc. and/or its affiliates, (iv) that certain engagement letter with respect to claims against Accenture LLP and/or its affiliates, and (v) that certain engagement letter with respect to claims against Oliver Wyman, Inc. and/or its affiliates.

(l)  "**Outstanding Costs and Expenses**" means all costs and expenses (including, without limitation, Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, ███████████████ Costs, and General Costs) ███████████████████

(m)  "**Outstanding Fixed Indemnity Sums**" means, ██████████████████ the total sum of any amounts, costs, fees, or judgments, determined, by fully executed settlement agreement, final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, ███████████████████

(n)  "**PG&E**" means PG&E Corporation and/or Pacific Gas and Electric Company, including reorganized PG&E Corporation and/or reorganized Pacific Gas and Electric Company.

(o)  "**Prior Engagement Letter**" shall mean that certain December 18, 2020 engagement letter between the Firms and the Trust with respect to claims pursued against business management consultants.

(p)  "**Proceeds**" shall mean a dollar amount that is actually paid to the Trust pursuant to any Settlement or Judgment with respect to the KPMG Claims, ████████████████

(r)  "**Representation**" shall mean the legal representation by the Firms of the Trust with respect to the KPMG Claims. For the sake of clarity, the Representation does not include the legal representation by the Firms of the Trust with respect to (i) claims against any business management consulting firms other than KPMG, (ii) claims against any entities principally engaged in vegetation management consulting, or (iii) any other claims.

2

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 89 of 149

(s)     "**Settlement**" shall mean a fully executed settlement agreement between the Trust and KPMG with respect to the KPMG Claims.

(t)     "**Trustee**" shall mean the trustee of the Trust.

(u)     "**Unresolved Indemnity Claims**" means, ███████████████████ any disputed, undetermined, unliquidated, or pending claims for indemnities, contributions, liens, recoupments, setoffs, offsets, or any similar or related theory, whether or not based on contract, asserted or assertable by KPMG (including by any of KPMG's insurers or any payor of Proceeds) or PG&E against the Trust in connection with the KPMG Claims.  For the avoidance of doubt, indemnity claims will be deemed resolved if, at the time a Settlement is executed, or funds are collected pursuant to a Judgment, such Settlement or Judgment conclusively resolves all indemnity claims that have been or may be asserted by KPMG (including by any of KPMG's insurers or any payor of Proceeds) or PG&E.

(v)     "**Unresolved Indemnity Sums**" means, ███████████████ the estimated total sum of any potential amounts, costs, fees, or judgments, potentially due and owing under any Unresolved Indemnity Claims, as reasonably determined by the Trust.

2.  **REQUIRED APPROVALS; COMMUNICATIONS WITH TRUST; COSTS.**

(a)     The Trust understands that the Firms are not presently recommending the pursuit of any KPMG Claims, but the Trust wishes the Firms to consider any new information that might come to their attention, and, if the Firms ultimately recommend the pursuit of any KPMG Claims and if the Trust approves it, then the Firms will pursue the KPMG Claims under the terms of this Engagement Letter. ███████████████████████████████████████████████████

(b)     Prior to commencing any court proceeding as contemplated by the Representation, the Firms will provide the Trust and the Authorized Agent with a draft complaint.  The Firms shall not file or serve any initiating complaint or enforce any judgment in connection with the KPMG Claims without the prior written approval of the Trustee or the Authorized Agent.  All such decisions to file or serve complaints or enforce any judgments (including the timing of any of the foregoing actions) are expressly and completely in the Trustee's sole discretion; in making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations. ███████████████████████████████████████████████

(c)     The Firms shall not commence negotiations with KPMG, make any demand for payment from KPMG, or enter into any settlements in connection with the KPMG Claims without the prior written approval of the Trustee or the Authorized Agent.  All such decisions to commence negotiations, demand payments, or enter into settlements (including the timing of any of the foregoing actions) are expressly and completely in the Trustee's sole discretion; in making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations.

(d)     The Firms agree to keep the Trust, the Trustee, and the Authorized Agent reasonably informed on a timely basis as to the progress and cost of the services being performed in furtherance of the Representation and shall, upon request, provide written or oral responses to inquiries of the Trust, the Trustee, or the Authorized Agent regarding the Representation. The Firms agree to participate in a telephone conference with the Authorized Agent and the Trust on the first Friday of each month. The Firms shall, by the close of business on the day prior to such monthly telephone conference, provide to the Authorized Agent and the Trust a written report with respect to the progress of the Representation and the activities conducted in the month preceding such telephone conference. Additionally, the Firms agree to comply with further reasonable reporting requirements that may be developed by the Trustee or the Authorized Agent.

(e)     The Firms shall not retain or engage the services of any court reporters ("**Court Reporters**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Court Reporters ("**Court Reporter Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Court Reporters or seek reimbursement for any Court Reporter Costs except as approved by the Trustee as provided in this <u>Section 2(e)</u>.

(f)     The Firms shall not retain or engage the services of any electronic discovery platforms, data storage, databases, consultants, or other similar vendors and service providers ("**Discovery Services**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Discovery Services ("**Discovery Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Discovery Services or seek reimbursement for any Discovery Costs except as approved by the Trustee as provided in this <u>Section 2(f)</u>.

(g)     The Firms shall not retain or engage any third-party investigators or other experts ("**Experts**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Experts ("**Expert Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Experts or seek reimbursement for costs incurred in connection with the retention or engagement of any Experts except as approved by the Trustee as provided in this <u>Section 2(g)</u>.

(h)     The Firms shall not retain or engage any mediators, neutrals, or any other dispute resolution professionals ("**Mediators**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Mediators ("**Mediator Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Mediators or seek reimbursement for costs incurred in connection with the retention or engagement of any Mediators except as approved by the Trustee as provided in this <u>Section 2(h)</u>.



4

(j)    Prior to engaging any Court Reporters, Discovery Services, Experts, Mediators, or ███████████ in connection with the Representation, the Firms shall provide to the Trustee or the Authorized Agent in writing the proposed service provider's curriculum vitae (as applicable), the proposed hourly rate (or other fee arrangement), and a projected budget for the engagement including an estimate of the total number of hours projected to be expended by such professional or service provider.  The Trustee shall have sole and absolute authority over the approval and selection of any Court Reporters, Discovery Services, Experts, Mediators, and ██████████.  In making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations.



(m)    For clarity, none of the Trustee, the Claims Administrator of the Trust, or any of their employees, officers, directors, agents, consultants, lawyers, advisors, or professionals, shall be personally liable, whether under this Engagement Letter or based on any theory of law or equity, to the Firms or to any party claiming on behalf of or through the Firms for any of the Firms' fees or expenses.

5



6



(e)     The fees set forth in this Engagement Letter are not set by law but have been negotiated between attorney and client.



7



**4. PAYMENT TO FIRMS.**



(b)     The Trustee may dispute any invoice, statement of fees, request for reimbursement, or other request for costs, expenses, and/or fees submitted by the Firms. The Trustee or the Authorized Agent shall notify the Firms' Agents of any such dispute along with a reasonably detailed description of the dispute ("**Notice of Dispute**"). Upon the Firms' receipt of a Notice of Dispute, the Trust and the Firms shall seek to resolve any such dispute expeditiously and in good faith for forty-five (45) days ("**Initial Resolution Period**"). If the Trust and the Firms have not resolved the dispute by the end of the Initial Resolution Period, then the Trust and the Firms shall resolve the dispute in accordance with the dispute resolution provisions set forth in Section 8 below. The parties hereto shall continue performing their respective obligations under this Engagement Letter during any such dispute, subject to the terms of this Engagement Letter.

**5. CONFIDENTIAL INFORMATION.**

The Firms recognize that certain of their partners, associates, and staff members may be provided with confidential and proprietary information belonging to the Trust ("**Confidential Information**"). The Firms shall not disclose to any third parties any Confidential Information obtained in the course of the Representation unless the Trust consents to such disclosure. Confidential Information will not include: (i) information made public other than as a result of breach of this Engagement Letter; (ii) information either or both of the Firms acquire from a third party with no known obligations of confidence regarding the information; or (iii) information already known to either or both of the Firms prior to disclosure by the Trust. If either or both of the Firms receive a request for disclosure of Confidential Information or are otherwise required by law to disclose any Confidential Information, the Firms will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Trust. The Firms also agree to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality.

**6. RECORDS.**

All materials prepared by the Firms for the Trust in connection with the Representation shall be the property of the Trust.

**7. COOPERATION.**

The Trust agrees that its authorized representatives will (i) be reasonably available to confer with the Firms upon request; (ii) provide the Firms with access to such documents and

8

information as the Trust may possess relating to the Representation; (iii) disclose all facts and circumstances of which the Trust is are aware that may bear upon the Firms' handling of the Representation; and (iv) otherwise assist the Firms' efforts as reasonably requested to do so by the Trustee or the Authorized Agent.

8. **DISPUTE RESOLUTION.**

The parties hereto agree that any dispute that arises under this Engagement Letter ███████████████████████████████████████████████████████ whether based on facts and circumstances existing at the time of termination or arising thereafter shall, in the first instance, be sought to be resolved by an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process.

The parties further agree that any dispute that is not resolved by the ADR process shall be submitted to binding arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules. Such claims shall be heard by a panel of three arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association. The arbitration panel shall have the power to rule upon its own jurisdiction and authority. The place of arbitration shall be San Francisco, California, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction. The parties shall bear their own legal fees and costs in connection with any arbitration proceedings brought pursuant to this Section 8. The award of the arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party to an arbitration proceeding nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to this Engagement Letter. The parties to this Engagement Letter acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate certain claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration in accordance with the foregoing.

This Engagement Letter shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

9. **TERMINATION.**

Notwithstanding anything to the contrary herein, the Trust has the right to terminate this engagement at any time, for any reason or for no reason, effective upon delivery of written notice to the Firms' Agents. In the event of termination by the Trust, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation. The Firms also have the right, subject to certain responsibilities under applicable ethical rules, to terminate this engagement by giving the Trust fifteen (15) days advance written notice if the Trust fails to cooperate with the Firms or if the Firms

9

determine that continuing to represent the Trust would be unethical, impractical, or improper. In the event the Firms exercise such right of termination, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation.

10. **INDEMNIFICATION.**

The Firms acknowledge that the operation of the Trust is governed by a Trust Agreement, which provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firms acknowledge and agree that, except as to Trust's indemnity obligations arising out of or related to the Trust's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ███████████████████████████
████████████████████████████████████████████████████████

11. **AGREEMENT APPLICABLE UNTIL CHANGED IN WRITING.**

The scope of this Representation may be modified by the Trust at any time and from time to time by advance written notice to the Firms' Agents at their offices at Andrews & Thornton, LLC, 4701 Von Karman Avenue, Newport Beach, California 92660 and Greenberg Gross LLP, 650 Town Center Drive, Suite 1700, Costa Mesa, California 92626, or via email to aa@andrewsthornton.com and agreenberg@ggtriallaw.com. If the scope of this Representation is modified, this Engagement Letter will apply to such additional matters the Firms agree to undertake upon the Trust's behalf unless the parties hereto enter into an express written agreement reflecting an alternate arrangement.

12. **ENTIRE AGREEMENT.**

Effective as of January 1, 2022, this Engagement Letter contains the entire understanding between the Firms and the Trust relating to the services to be rendered by the Firms in connection with the Representation. Effective upon the execution of the New Engagement Letters, except as provided in Sections 5 [confidential information], 6 [records], 8 [dispute resolution], 10 [indemnification], and 12 [notices] of the Prior Engagement Letter, which Sections shall remain in effect, the Prior Engagement Letter shall terminate in all respects as of December 31, 2021 with respect to the services to be rendered by the Firms in connection with the Representation and the obligations of the Trust thereunder, and the provisions of this Engagement Letter shall govern exclusively the matters set forth herein; ███████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████

13. **NOTICES.**

Any notice given pursuant to this Engagement Letter shall be sent (i) by FedEx or other commercial courier or (ii) electronically (by email) as follows:

    (a)    If to the Firms:

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 97 of 149

Anne Andrews
Andrews & Thornton, LLC
4701 Von Karman Avenue,
Newport Beach, California 92660
Email: aa@andrewsthornton.com

With copies to:

Alan A. Greenberg
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Email: agreenberg@ggtriallaw.com

(b)     If to the Trust or the Trustee**:**

Hon. John K. Trotter (Ret.), Trustee
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

With copies to:



David Molton, Esq.
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Email: dmolton@brownrudnick.com

## 14. <u>EFFECTIVENESS</u>.

This Engagement Letter shall not become effective until it has been executed and delivered by all the parties hereto.

## 15. <u>COUNTERPART SIGNATURES</u>.

This Engagement Letter may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all of which together shall constitute and be deemed one and the same instrument.

## 16. <u>HEADINGS</u>.

The headings contained in this Engagement Letter are for reference purposes only and shall not in any way affect the meaning or interpretation of this Engagement Letter.

*(Signature page follows)*

11

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____
**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**


_____
**GREENBERG GROSS LLP**


ACCEPTED AND AGREED


_____
**PG&E FIRE VICTIM TRUST**


*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____

**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**

**GREENBERG GROSS LLP**

ACCEPTED AND AGREED

_____

**PG&E FIRE VICTIM TRUST**

_[Signature Page to Engagement Letter]_

      **IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____

**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**

_____

**GREENBERG GROSS LLP**

ACCEPTED AND AGREED

_____

**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**EXHIBIT G**

January 1, 2022

Hon. John K. Trotter, Jr. (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:     Representation of PG&E Fire Victim Trust in Litigation of Claims Against PwC

Dear Justice Trotter:

This letter of engagement ("**Engagement Letter**") is to confirm the retention of Andrews & Thornton, Attorneys at Law, A Law Corporation and Greenberg Gross LLP (each a "**Firm**" and collectively, the "**Firms**") by the PG&E Fire Victim Trust (the "**Trust**") in connection with the PwC Claims, defined below.  This Engagement Letter shall be effective as of January 1, 2022 (the "**Effective Date**").  As set forth below, the Firms shall be compensated for their services ███████████████████ ███████████████████████████████████████████████████████████

1.  **DEFINITIONS.**  As used herein, the following terms shall have the meanings set forth below:

    (a)     "**Authorized Agent**" shall mean a person designated by the Trustee, in writing, as specifically authorized to act for the Trust in regard to the Representation and whose authorization has not been terminated by the Trustee.  This Engagement Letter constitutes the designation of ███████████ as an Authorized Agent of the Trust.



    (c)     "**Claims**" shall mean the "Assigned Rights and Causes of Action," as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.



    (e)     "**Federal Settlement**" shall mean the USD $117,000,000 to be paid, pursuant to that certain April 21, 2020 settlement agreement, to the United States Department of Justice from recoveries on the "Assignment Rights and Causes of Action" as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.

    (f)     "**Firms' Agents**" shall mean Anne Andrews for Andrews & Thornton, Attorneys at Law, A Law Corporation and Alan A. Greenberg for Greenberg Gross LLP, unless a Firm notifies the Trust in writing of the appointment of a different Firm's Agent.

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 103

[REDACTED]

(i) "**Judgment**" shall mean a final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, resolving one or more of the PwC Claims.

[REDACTED]

(k) "**New Engagement Letters**" shall mean, collectively, those certain engagement letters between the Firms and the Trust effective as of January 1, 2022, consisting of (i) this Engagement Letter, (ii) that certain engagement letter with respect to claims against McKinsey & Company Inc. and/or its affiliates, (iii) that certain engagement letter with respect to claims against Accenture LLP and/or its affiliates, (iv) that certain engagement letter with respect to claims against KPMG LLP and/or its affiliates, and (v) that certain engagement letter with respect to claims against Oliver Wyman, Inc. and/or its affiliates.

(l) "**Outstanding Costs and Expenses**" means all costs and expenses (including, without limitation, Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, [REDACTED] and General Costs)

[REDACTED]

(m) "**Outstanding Fixed Indemnity Sums**" means, [REDACTED] the total sum of any amounts, costs, fees, or judgments, determined, by fully executed settlement agreement, final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, [REDACTED]

[REDACTED]

(n) "**PG&E**" means PG&E Corporation and/or Pacific Gas and Electric Company, including reorganized PG&E Corporation and/or reorganized Pacific Gas and Electric Company.

(o) "**Prior Engagement Letter**" shall mean that certain December 18, 2020 engagement letter between the Firms and the Trust with respect to claims pursued against business management consultants.

2

(p)     "**Proceeds**" shall mean a dollar amount that is actually paid to the Trust pursuant to any Settlement or Judgment with respect to the PwC Claims, 

(q)     "**PwC**" shall mean PricewaterhouseCoopers LLP and/or its affiliates.

(r)     "**PwC Claims**" shall mean any Claims pursued by the Trust against PwC.

(t)     "**Representation**" shall mean the legal representation by the Firms of the Trust with respect to the PwC Claims.  For the sake of clarity, the Representation does not include the legal representation by the Firms of the Trust with respect to (i) claims against any business management consulting firms other than PwC, (ii) claims against any entities principally engaged in vegetation management consulting, or (iii) any other claims.

(u)     "**Settlement**" shall mean a fully executed settlement agreement between the Trust and PwC with respect to the PwC Claims.

(v)     "**Trustee**" shall mean the trustee of the Trust.

(w)     "**Unresolved Indemnity Claims**" means, ▮▮▮▮▮▮▮▮▮▮▮▮▮ any disputed, undetermined, unliquidated, or pending claims for indemnities, contributions, liens, recoupments, setoffs, offsets, or any similar or related theory, whether or not based on contract, asserted or assertable by PwC (including by any of PwC's insurers or any payor of Proceeds) or PG&E against the Trust in connection with the PwC Claims.  For the avoidance of doubt, indemnity claims will be deemed resolved if, at the time a Settlement is executed, or funds are collected pursuant to a Judgment, such Settlement or Judgment conclusively resolves all indemnity claims that have been or may be asserted by PwC (including by any of PwC's insurers or any payor of Proceeds) or PG&E.

(x)     "**Unresolved Indemnity Sums**" means, ▮▮▮▮▮▮▮▮▮▮▮▮ the estimated total sum of any potential amounts, costs, fees, or judgments, potentially due and owing under any Unresolved Indemnity Claims, as reasonably determined by the Trust.

2.  **REQUIRED APPROVALS; COMMUNICATIONS WITH TRUST; COSTS.**



3

[redacted]

(c)      The Firms agree to keep the Trust, the Trustee, and the Authorized Agent reasonably informed on a timely basis as to the progress and cost of the services being performed in furtherance of the Representation and shall, upon request, provide written or oral responses to inquiries of the Trust, the Trustee, or the Authorized Agent regarding the Representation. The Firms agree to participate in a telephone conference with the Authorized Agent and the Trust on the first Friday of each month. The Firms shall, by the close of business on the day prior to such monthly telephone conference, provide to the Authorized Agent and the Trust a written report with respect to the progress of the Representation and the activities conducted in the month preceding such telephone conference. Additionally, the Firms agree to comply with further reasonable reporting requirements that may be developed by the Trustee or the Authorized Agent.

(d)      The Firms shall not retain or engage the services of any court reporters ("**Court Reporters**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Court Reporters ("**Court Reporter Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Court Reporters or seek reimbursement for any Court Reporter Costs except as approved by the Trustee as provided in this Section 2(d).

(e)      The Firms shall not retain or engage the services of any electronic discovery platforms, data storage, databases, consultants, or other similar vendors and service providers ("**Discovery Services**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Discovery Services ("**Discovery Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Discovery Services or seek reimbursement for any Discovery Costs except as approved by the Trustee as provided in this Section 2(e).

(f)      The Firms shall not retain or engage any third-party investigators or other experts ("**Experts**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Experts ("**Expert Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Experts or seek reimbursement for costs incurred in connection with the retention or engagement of any Experts except as approved by the Trustee as provided in this Section 2(f).

(g)      The Firms shall not retain or engage any mediators, neutrals, or any other dispute resolution professionals ("**Mediators**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Mediators ("**Mediator Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Mediators or seek reimbursement for costs incurred in connection with the

retention or engagement of any Mediators except as approved by the Trustee as provided in this Section 2(g).



    (i)        Prior to engaging any Court Reporters, Discovery Services, Experts, Mediators, or ████████ in connection with the Representation, the Firms shall provide to the Trustee or the Authorized Agent in writing the proposed service provider's curriculum vitae (as applicable), the proposed hourly rate (or other fee arrangement), and a projected budget for the engagement including an estimate of the total number of hours projected to be expended by such professional or service provider.  The Trustee shall have sole and absolute authority over the approval and selection of any Court Reporters, Discovery Services, Experts, Mediators, and █████████.  In making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations.

    (l)        For clarity, none of the Trustee, the Claims Administrator of the Trust, or any of their employees, officers, directors, agents, consultants, lawyers, advisors, or professionals, shall be personally liable, whether under this Engagement Letter or based on any theory of law or equity, to the Firms or to any party claiming on behalf of or through the Firms for any of the Firms' fees or expenses.

5



6



     (f)    The fees set forth in this Engagement Letter are not set by law but have been negotiated between attorney and client.



Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 109



4. **PAYMENT TO FIRMS.**

(b)    The Trustee may dispute any invoice, statement of fees, request for reimbursement, or other request for costs, expenses, and/or fees submitted by the Firms.  The Trustee or the Authorized Agent shall notify the Firms' Agents of any such dispute along with a reasonably detailed description of the dispute ("**Notice of Dispute**").  Upon the Firms' receipt of a Notice of Dispute, the Trust and the Firms shall seek to resolve any such dispute expeditiously and in good faith for forty-five (45) days ("**Initial Resolution Period**").  If the Trust and the Firms have not resolved the dispute by the end of the Initial Resolution Period, then the Trust and the Firms shall resolve the dispute in accordance with the dispute resolution provisions set forth in Section 8 below. The parties hereto shall continue performing their respective obligations under this Engagement Letter during any such dispute, subject to the terms of this Engagement Letter.

8

5. **CONFIDENTIAL INFORMATION.**

The Firms recognize that certain of their partners, associates, and staff members may be provided with confidential and proprietary information belonging to the Trust ("**Confidential Information**"). The Firms shall not disclose to any third parties any Confidential Information obtained in the course of the Representation unless the Trust consents to such disclosure. Confidential Information will not include: (i) information made public other than as a result of breach of this Engagement Letter; (ii) information either or both of the Firms acquire from a third party with no known obligations of confidence regarding the information; or (iii) information already known to either or both of the Firms prior to disclosure by the Trust. If either or both of the Firms receive a request for disclosure of Confidential Information or are otherwise required by law to disclose any Confidential Information, the Firms will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Trust. The Firms also agree to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality.

6. **RECORDS.**

All materials prepared by the Firms for the Trust in connection with the Representation shall be the property of the Trust.

7. **COOPERATION.**

The Trust agrees that its authorized representatives will (i) be reasonably available to confer with the Firms upon request; (ii) provide the Firms with access to such documents and information as the Trust may possess relating to the Representation; (iii) disclose all facts and circumstances of which the Trust is aware that may bear upon the Firms' handling of the Representation; and (iv) otherwise assist the Firms' efforts as reasonably requested to do so by the Trustee or the Authorized Agent.

8. **DISPUTE RESOLUTION.**

The parties hereto agree that any dispute that arises under this Engagement Letter ██████████████████████████████████████████████████ whether based on facts and circumstances existing at the time of termination or arising thereafter shall, in the first instance, be sought to be resolved by an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process.

The parties further agree that any dispute that is not resolved by the ADR process shall be submitted to binding arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules. Such claims shall be heard by a panel of three arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association. The arbitration panel shall have the power to rule upon its own jurisdiction and authority. The place of arbitration shall be San Francisco, California, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction. The parties shall bear their own legal fees and costs in connection with any arbitration proceedings brought pursuant to this Section 8. The award of the arbitrators

9

shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party to an arbitration proceeding nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to this Engagement Letter. The parties to this Engagement Letter acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate certain claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration in accordance with the foregoing.

This Engagement Letter shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

9. <u>**TERMINATION.**</u>

Notwithstanding anything to the contrary herein, the Trust has the right to terminate this engagement at any time, for any reason or for no reason, effective upon delivery of written notice to the Firms' Agents. In the event of termination by the Trust, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation. The Firms also have the right, subject to certain responsibilities under applicable ethical rules, to terminate this engagement by giving the Trust fifteen (15) days advance written notice if the Trust fails to cooperate with the Firms or if the Firms determine that continuing to represent the Trust would be unethical, impractical, or improper. In the event the Firms exercise such right of termination, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation.

10. <u>**INDEMNIFICATION.**</u>

The Firms acknowledge that the operation of the Trust is governed by a Trust Agreement, which provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firms acknowledge and agree that, except as to Trust's indemnity obligations arising out of or related to the Trust's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ████████████████████████████████████ ███████████████████████████████████████████████████████████

11. <u>**AGREEMENT APPLICABLE UNTIL CHANGED IN WRITING.**</u>

The scope of this Representation may be modified by the Trust at any time and from time to time by advance written notice to the Firms' Agents at their offices at Andrews & Thornton, LLC, 4701 Von Karman Avenue, Newport Beach, California 92660 and Greenberg Gross LLP, 650 Town Center Drive, Suite 1700, Costa Mesa, California 92626, or via email to aa@andrewsthornton.com and agreenberg@ggtriallaw.com. If the scope of this Representation is modified, this Engagement Letter will apply to such additional matters the Firms agree to undertake

upon the Trust's behalf unless the parties hereto enter into an express written agreement reflecting an alternate arrangement.

**12. ENTIRE AGREEMENT.**

Effective as of January 1, 2022, this Engagement Letter contains the entire understanding between the Firms and the Trust relating to the services to be rendered by the Firms in connection with the Representation. Effective upon the execution of the New Engagement Letters, except as provided in Sections 5 [confidential information], 6 [records], 8 [dispute resolution], 10 [indemnification], and 12 [notices] of the Prior Engagement Letter, which Sections shall remain in effect, the Prior Engagement Letter shall terminate in all respects as of December 31, 2021 with respect to the services to be rendered by the Firms in connection with the Representation and the obligations of the Trust thereunder, and the provisions of this Engagement Letter shall govern exclusively the matters set forth herein; ███████████████████████████████████████████████████████████████████████████████████████████████ on or prior to December 31, 2021 in accordance with the terms of the Prior Engagement Letter.

**13. NOTICES.**

Any notice given pursuant to this Engagement Letter shall be sent (i) by FedEx or other commercial courier or (ii) electronically (by email) as follows:

(a)    If to the Firms:

Anne Andrews
Andrews & Thornton, LLC
4701 Von Karman Avenue,
Newport Beach, California 92660
Email: aa@andrewsthornton.com

With copies to:

Alan A. Greenberg
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Email: agreenberg@ggtriallaw.com

(b)    If to the Trust or the Trustee:

Hon. John K. Trotter (Ret.), Trustee
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

With copies to:

11



David Molton, Esq.
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Email: dmolton@brownrudnick.com

**14.** **EFFECTIVENESS.**

     This Engagement Letter shall not become effective until it has been executed and delivered by all the parties hereto.

**15.** **COUNTERPART SIGNATURES.**

     This Engagement Letter may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all of which together shall constitute and be deemed one and the same instrument.

**16.** **HEADINGS.**

     The headings contained in this Engagement Letter are for reference purposes only and shall not in any way affect the meaning or interpretation of this Engagement Letter.

*(Signature page follows)*

IN WITNESS WHEREOF the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____

**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**

_____

**GREENBERG GROSS LLP**

ACCEPTED AND AGREED

_____

**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

ANDREWS & THORNTON, ATTORNEYS AT
LAW, A LAW CORPORATION

GREENBERG GROSS LLP

ACCEPTED AND AGREED

**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____
**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**

_____
**GREENBERG GROSS LLP**

ACCEPTED AND AGREED

_____
**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**EXHIBIT H**

January 1, 2022

Hon. John K. Trotter, Jr. (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:     Representation of PG&E Fire Victim Trust in Litigation of Claims Against Accenture

Dear Justice Trotter:

    This letter of engagement ("**Engagement Letter**") is to confirm the retention of Andrews & Thornton, Attorneys at Law, A Law Corporation and Greenberg Gross LLP (each a "**Firm**" and collectively, the "**Firms**") by the PG&E Fire Victim Trust (the "**Trust**") in connection with the Accenture Claims, defined below.  This Engagement Letter shall be effective as of January 1, 2022 (the "**Effective Date**").  As set forth below, the Firms shall be compensated for their services ███████████████ ████████

    1.  **DEFINITIONS.**  As used herein, the following terms shall have the meanings set forth below:

        (a)    "**Accenture**" shall mean Accenture LLP and/or its affiliates.

        (b)    "**Accenture Claims**" shall mean any Claims pursued by the Trust against Accenture.

        (c)    "**Authorized Agent**" shall mean a person designated by the Trustee, in writing, as specifically authorized to act for the Trust in regard to the Representation and whose authorization has not been terminated by the Trustee.  This Engagement Letter constitutes the designation of ████████████ as an Authorized Agent of the Trust.



        (e)    "**Claims**" shall mean the "Assigned Rights and Causes of Action," as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.

        ██    ████████████████████████████████████████

        (g)    "**Federal Settlement**" shall mean the USD $117,000,000 to be paid, pursuant to that certain April 21, 2020 settlement agreement, to the United States Department of Justice from recoveries on the "Assignment Rights and Causes of Action" as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.

        (h)    "**Firms' Agents**" shall mean Anne Andrews for Andrews & Thornton, Attorneys at Law, A Law Corporation and Alan A. Greenberg for Greenberg Gross LLP, unless a Firm notifies the Trust in writing of the appointment of a different Firm's Agent.

(i) "**Judgment**" shall mean a final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, resolving one or more of the Accenture Claims.

██████████████████████████████████████████████████████████████

(k) "**New Engagement Letters**" shall mean, collectively, those certain engagement letters between the Firms and the Trust effective as of January 1, 2022, consisting of (i) this Engagement Letter, (ii) that certain engagement letter with respect to claims against PricewaterhouseCoopers LLP and/or its affiliates, (iii) that certain engagement letter with respect to claims against McKinsey & Company Inc. and/or its affiliates, (iv) that certain engagement letter with respect to claims against KPMG LLP and/or its affiliates, and (v) that certain engagement letter with respect to claims against Oliver Wyman, Inc. and/or its affiliates.

(l) "**Outstanding Costs and Expenses**" means all costs and expenses (including, without limitation, Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, Special Counsel Costs, and General Costs) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

(m) "**Outstanding Fixed Indemnity Sums**" means, █████████████████ the total sum of any amounts, costs, fees, or judgments, determined, by fully executed settlement agreement, final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, █████████████████████████████████████████████████████████████████████████████████████████████████████

(n) "**PG&E**" means PG&E Corporation and/or Pacific Gas and Electric Company, including reorganized PG&E Corporation and/or reorganized Pacific Gas and Electric Company.

(o) "**Prior Engagement Letter**" shall mean that certain December 18, 2020 engagement letter between the Firms and the Trust with respect to claims pursued against business management consultants.

(p) "**Proceeds**" shall mean a dollar amount that is actually paid to the Trust pursuant to any Settlement or Judgment with respect to the Accenture Claims, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

(r) "**Representation**" shall mean the legal representation by the Firms of the Trust with respect to the Accenture Claims. For the sake of clarity, the Representation does not include

2

the legal representation by the Firms of the Trust with respect to (i) claims against any business management consulting firms other than Accenture, (ii) claims against any entities principally engaged in vegetation management consulting, or (iii) any other claims.

(s)    "**Settlement**" shall mean a fully executed settlement agreement between the Trust and Accenture with respect to the Accenture Claims.

(t)    "**Trustee**" shall mean the trustee of the Trust.

(u)    "**Unresolved Indemnity Claims**" means, █████████████████████ any disputed, undetermined, unliquidated, or pending claims for indemnities, contributions, liens, recoupments, setoffs, offsets, or any similar or related theory, whether or not based on contract, asserted or assertable by Accenture (including by any of Accenture's insurers or any payor of Proceeds) or PG&E against the Trust in connection with the Accenture Claims.  For the avoidance of doubt, indemnity claims will be deemed resolved if, at the time a Settlement is executed, or funds are collected pursuant to a Judgment, such Settlement or Judgment conclusively resolves all indemnity claims that have been or may be asserted by Accenture (including by any of Accenture's insurers or any payor of Proceeds) or PG&E.

(v)    "**Unresolved Indemnity Sums**" means, ████████████████ the estimated total sum of any potential amounts, costs, fees, or judgments, potentially due and owing under any Unresolved Indemnity Claims, as reasonably determined by the Trust.

2.  **REQUIRED APPROVALS; COMMUNICATIONS WITH TRUST; COSTS.**

(a)    The Trust understands that the Firms are not presently recommending the pursuit of any Accenture Claims, but the Trust wishes the Firms to consider any new information that might come to their attention, and, if the Firms ultimately recommend the pursuit of any Accenture Claims and if the Trust approves it, then the Firms will pursue the Accenture Claims under the terms of this Engagement Letter. ███████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

(b)    Prior to commencing any court proceeding as contemplated by the Representation, the Firms will provide the Trust and the Authorized Agent with a draft complaint.  The Firms shall not file or serve any initiating complaint or enforce any judgment in connection with the Accenture Claims without the prior written approval of the Trustee or the Authorized Agent.  All such decisions to file or serve complaints or enforce any judgments (including the timing of any of the foregoing actions) are expressly and completely in the Trustee's sole discretion; in making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations. ███████████

████████████████████████████████████████

(c)    The Firms shall not commence negotiations with Accenture, make any demand for payment from Accenture, or enter into any settlements in connection with the Accenture Claims without the prior written approval of the Trustee or the Authorized Agent.  All such decisions to commence negotiations, demand payments, or enter into settlements (including the timing of any of the foregoing actions) are expressly and completely in the Trustee's sole discretion; in making

3

such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations.

(d)     The Firms agree to keep the Trust, the Trustee, and the Authorized Agent reasonably informed on a timely basis as to the progress and cost of the services being performed in furtherance of the Representation and shall, upon request, provide written or oral responses to inquiries of the Trust, the Trustee, or the Authorized Agent regarding the Representation. The Firms agree to participate in a telephone conference with the Authorized Agent and the Trust on the first Friday of each month. The Firms shall, by the close of business on the day prior to such monthly telephone conference, provide to the Authorized Agent and the Trust a written report with respect to the progress of the Representation and the activities conducted in the month preceding such telephone conference. Additionally, the Firms agree to comply with further reasonable reporting requirements that may be developed by the Trustee or the Authorized Agent.

(e)     The Firms shall not retain or engage the services of any court reporters ("**Court Reporters**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Court Reporters ("**Court Reporter Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Court Reporters or seek reimbursement for any Court Reporter Costs except as approved by the Trustee as provided in this Section 2(e).

(f)     The Firms shall not retain or engage the services of any electronic discovery platforms, data storage, databases, consultants, or other similar vendors and service providers ("**Discovery Services**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Discovery Services ("**Discovery Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Discovery Services or seek reimbursement for any Discovery Costs except as approved by the Trustee as provided in this Section 2(f).

(g)     The Firms shall not retain or engage any third-party investigators or other experts ("**Experts**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Experts ("**Expert Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Experts or seek reimbursement for costs incurred in connection with the retention or engagement of any Experts except as approved by the Trustee as provided in this Section 2(g).

(h)     The Firms shall not retain or engage any mediators, neutrals, or any other dispute resolution professionals ("**Mediators**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Mediators ("**Mediator Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Mediators or seek reimbursement for costs incurred in connection with the retention or engagement of any Mediators except as approved by the Trustee as provided in this Section 2(h).

4



(j)      Prior to engaging any Court Reporters, Discovery Services, Experts, Mediators, or ███████████ in connection with the Representation, the Firms shall provide to the Trustee or the Authorized Agent in writing the proposed service provider's curriculum vitae (as applicable), the proposed hourly rate (or other fee arrangement), and a projected budget for the engagement including an estimate of the total number of hours projected to be expended by such professional or service provider. The Trustee shall have sole and absolute authority over the approval and selection of any Court Reporters, Discovery Services, Experts, Mediators, and ███████████. In making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations.

(m)      For clarity, none of the Trustee, the Claims Administrator of the Trust, or any of their employees, officers, directors, agents, consultants, lawyers, advisors, or professionals, shall be personally liable, whether under this Engagement Letter or based on any theory of law or equity, to the Firms or to any party claiming on behalf of or through the Firms for any of the Firms' fees or expenses.



6



  (e) The fees set forth in this Engagement Letter are not set by law but have been negotiated between attorney and client.



7



**4. PAYMENT TO FIRMS.**



(b)     The Trustee may dispute any invoice, statement of fees, request for reimbursement, or other request for costs, expenses, and/or fees submitted by the Firms.  The Trustee or the Authorized Agent shall notify the Firms' Agents of any such dispute along with a reasonably detailed description of the dispute ("**Notice of Dispute**").  Upon the Firms' receipt of a Notice of Dispute, the Trust and the Firms shall seek to resolve any such dispute expeditiously and in good faith for forty-five (45) days ("**Initial Resolution Period**").  If the Trust and the Firms have not resolved the dispute by the end of the Initial Resolution Period, then the Trust and the Firms shall resolve the dispute in accordance with the dispute resolution provisions set forth in Section 8 below. The parties hereto shall continue performing their respective obligations under this Engagement Letter during any such dispute, subject to the terms of this Engagement Letter.

**5. CONFIDENTIAL INFORMATION.**

The Firms recognize that certain of their partners, associates, and staff members may be provided with confidential and proprietary information belonging to the Trust ("**Confidential Information**").  The Firms shall not disclose to any third parties any Confidential Information obtained in the course of the Representation unless the Trust consents to such disclosure. Confidential Information will not include: (i) information made public other than as a result of breach of this Engagement Letter; (ii) information either or both of the Firms acquire from a third party with no known obligations of confidence regarding the information; or (iii) information already known to either or both of the Firms prior to disclosure by the Trust.  If either or both of the Firms receive a request for disclosure of Confidential Information or are otherwise required by law to disclose any Confidential Information, the Firms will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Trust.  The Firms also agree to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality.

**6. RECORDS.**

All materials prepared by the Firms for the Trust in connection with the Representation shall be the property of the Trust.

8

7. **COOPERATION.**

   The Trust agrees that its authorized representatives will (i) be reasonably available to confer with the Firms upon request; (ii) provide the Firms with access to such documents and information as the Trust may possess relating to the Representation; (iii) disclose all facts and circumstances of which the Trust is are aware that may bear upon the Firms' handling of the Representation; and (iv) otherwise assist the Firms' efforts as reasonably requested to do so by the Trustee or the Authorized Agent.

8. **DISPUTE RESOLUTION.**

   The parties hereto agree that any dispute that arises under this Engagement Letter including but not limited to all claims ████████████████████████████████████████ whether based on facts and circumstances existing at the time of termination or arising thereafter shall, in the first instance, be sought to be resolved by an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process.

   The parties further agree that any dispute that is not resolved by the ADR process shall be submitted to binding arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules. Such claims shall be heard by a panel of three arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association. The arbitration panel shall have the power to rule upon its own jurisdiction and authority. The place of arbitration shall be San Francisco, California, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction. The parties shall bear their own legal fees and costs in connection with any arbitration proceedings brought pursuant to this <u>Section 8</u>. The award of the arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party to an arbitration proceeding nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to this Engagement Letter. The parties to this Engagement Letter acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate certain claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration in accordance with the foregoing.

   This Engagement Letter shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

9. **TERMINATION.**

   Notwithstanding anything to the contrary herein, the Trust has the right to terminate this engagement at any time, for any reason or for no reason, effective upon delivery of written notice to the Firms' Agents. In the event of termination by the Trust, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and

9

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 127

providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation. The Firms also have the right, subject to certain responsibilities under applicable ethical rules, to terminate this engagement by giving the Trust fifteen (15) days advance written notice if the Trust fails to cooperate with the Firms or if the Firms determine that continuing to represent the Trust would be unethical, impractical, or improper. In the event the Firms exercise such right of termination, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation.

10. **INDEMNIFICATION.**

The Firms acknowledge that the operation of the Trust is governed by a Trust Agreement, which provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firms acknowledge and agree that, except as to Trust's indemnity obligations arising out of or related to the Trust's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

11. **AGREEMENT APPLICABLE UNTIL CHANGED IN WRITING.**

The scope of this Representation may be modified by the Trust at any time and from time to time by advance written notice to the Firms' Agents at their offices at Andrews & Thornton, LLC, 4701 Von Karman Avenue, Newport Beach, California 92660 and Greenberg Gross LLP, 650 Town Center Drive, Suite 1700, Costa Mesa, California 92626, or via email to aa@andrewsthornton.com and agreenberg@ggtriallaw.com. If the scope of this Representation is modified, this Engagement Letter will apply to such additional matters the Firms agree to undertake upon the Trust's behalf unless the parties hereto enter into an express written agreement reflecting an alternate arrangement.

12. **ENTIRE AGREEMENT.**

Effective as of January 1, 2022, this Engagement Letter contains the entire understanding between the Firms and the Trust relating to the services to be rendered by the Firms in connection with the Representation. Effective upon the execution of the New Engagement Letters, except as provided in Sections 5 [confidential information], 6 [records], 8 [dispute resolution], 10 [indemnification], and 12 [notices] of the Prior Engagement Letter, which Sections shall remain in effect, the Prior Engagement Letter shall terminate in all respects as of December 31, 2021 with respect to the services to be rendered by the Firms in connection with the Representation and the obligations of the Trust thereunder, and the provisions of this Engagement Letter shall govern exclusively the matters set forth herein; ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

10

13. **NOTICES.**

Any notice given pursuant to this Engagement Letter shall be sent (i) by FedEx or other commercial courier or (ii) electronically (by email) as follows:

(a)     If to the Firms:

Anne Andrews
Andrews & Thornton, LLC
4701 Von Karman Avenue,
Newport Beach, California 92660
Email: aa@andrewsthornton.com

With copies to:

Alan A. Greenberg
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Email: agreenberg@ggtriallaw.com

(b)     If to the Trust or the Trustee:

Hon. John K. Trotter (Ret.), Trustee
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

With copies to:



David Molton, Esq.
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Email: dmolton@brownrudnick.com

14. **EFFECTIVENESS.**

This Engagement Letter shall not become effective until it has been executed and delivered by all the parties hereto.

15. **COUNTERPART SIGNATURES.**

This Engagement Letter may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all of which together shall constitute and be deemed one and the same instrument.

11

16. **<u>HEADINGS</u>.**

The headings contained in this Engagement Letter are for reference purposes only and shall not in any way affect the meaning or interpretation of this Engagement Letter.

*(Signature page follows)*

IN WITNESS WHEREOF the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____

ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION

_____

GREENBERG GROSS LLP

ACCEPTED AND AGREED

_____

PG&E FIRE VICTIM TRUST

*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

ANDREWS & THORNTON, ATTORNEYS AT
LAW, A LAW CORPORATION

_____

**GREENBERG GROSS LLP**

ACCEPTED AND AGREED

_____

**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

_____
**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**

_____
**GREENBERG GROSS LLP**

ACCEPTED AND AGREED

_____
**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

**EXHIBIT I**

# FIRST AMENDMENT
## TO
## ENGAGEMENT LETTER

THIS FIRST AMENDMENT TO ENGAGEMENT LETTER (this "**Amendment**") is made and entered into as of July 1, 2022, by and among the PG&E Fire Victim Trust (the "**Trust**"), Andrews & Thornton, A Law Corporation and Greenberg Gross LLP (each a "**Firm**" and collectively, the "**Firms**"). Capitalized terms used by not defined herein shall have the meanings ascribed to them in the Engagement Letter (as defined below).

WHEREAS, the Trust and the Firms entered into that certain Engagement Letter, dated as of January 1, 2022 (the "**Engagement Letter**"), whereby the Trust and the Firms set forth their agreements with respect to certain legal services to be provided by the Firms to the Trust in connection with the Trust's claims against PricewaterhouseCoopers LLP and/or its affiliates; and

WHEREAS, the Trust and the Firms desire to amend the Engagement Letter as set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual covenants and agreements set forth in the Engagement Letter, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Trust and the Firms agree as follows:

1. The text of Section 1(h) is hereby amended and restated in its entirety as follows:



2. The text of Section 3(a) is hereby amended and restated in its entirety as follows:

3. The text of Section 3(b) is hereby amended by deleting the first sentence of Section 3(b) and inserting the following in its stead:

4. The text of Section 3(g) is hereby amended by deleting the first sentence of Section 3(g) and inserting the following in its stead:

Case: 19-30088   Doc# 12931   Filed: 09/06/22   Entered: 09/06/22 15:36:37   Page 135

5. The Engagement Letter, as amended herein, is ratified and confirmed.

6. All other terms and conditions of the Engagement Letter remain unchanged and in full force and effect.

7. This Amendment may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[Signature page follows]*

Case: 19-30088    Doc# 12931    Filed: 09/06/22    Entered: 09/06/22 15:36:37    Page 136

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to become effective as of the date first set forth above.

_____

**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**

_____

**GREENBERG GROSS LLP**

**PG&E FIRE VICTIM TRUST**

_____

Cathy Yanni, Trustee of the PG&E Fire Victim Trust

[Signature Page to First Amendment to Engagement Letter]

**EXHIBIT J**



700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
O 202.772.2200
F 202.772.3333

GilbertLegal.com

**Kami E. Quinn**
202.772.2336
quinnk@gilbertlegal.com

March 11, 2021

**VIA ELECTRONIC MAIL**

Hon. John K. Trotter (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

RE:     Engagement of Gilbert LLP

Dear Judge Trotter:

We are pleased that the PG&E Fire Victim Trust (the "Trust") has retained Gilbert LLP (the "Firm") to provide legal services to the Trust. This letter (the "Letter Agreement") is to confirm the Trust's retention of the Firm as of the date first set forth above, our agreement as to the scope and nature of the legal services to be provided, as well as the basis on which our fees and related expenses will be calculated.

**Scope of Representation**

As the Trust is aware, pursuant to the Debtors' Chapter 11 Plan of Reorganization (the "Plan"), and related agreements, the Debtors (as defined in the Plan) transferred, among other assets, the Assigned Rights and Causes of Action (as defined in the Plan) to the Trust. Included in the Assigned Rights and Causes of Action are claims against certain third-party contractors engaged by Debtors to provide vegetation management services, and whose conduct in connection therewith caused or contributed to certain damages incurred by Debtor (the "Vegetation Management Claims").

The Firm shall undertake to advise and represent the Trust in connection with pursuing and maximizing insurance coverage for the Vegetation Management Claims. The scope of the retention in this matter includes representation in any adversarial proceeding, such as litigation or arbitration, if necessary. The scope of the retention may be modified by the Trust at any time and from time to time by advance written notice.

It is understood that the Firm does not guarantee a particular result in this matter, and that it is impossible to predict either the outcome of this matter or the time it will take to complete the matter. The Firm will work in a diligent and professional manner to complete the matter promptly and efficiently. The Firm agrees to provide written or oral explanations of work if requested to do so by the Trust, and the Firm also agrees to keep the Trust reasonably informed as to the progress and cost of the services being performed.



I will be primarily responsible for the work done on behalf of the Trust, and will be assisted by Daniel I. Wolf. Other Firm personnel may also work on this matter and other attorneys subsequently may assume primary responsibility.

**Ownership and Use of Materials**

All materials prepared by the Firm in connection with this engagement (other than the Firm's own files, as described below) shall be owned by the Trust. We reserve the right to retain copies of our work product, with suitable protection of confidential information.

**Relationship with Other Clients**

The Firm represents, and will continue to represent, numerous corporations, trusts, not-for-profit organizations, and individuals in insurance coverage and other matters, including litigation and bankruptcy. The Firm and/or its members represent or have represented policyholders and other entities/individuals in numerous contexts, including the application of insurance policies to securities claims, fraud claims, mass tort claims, and other types of claims. The Firm has also represented class action plaintiffs and defendants in insurance matters and other types of litigation.

**Conflicts of Interest**

The Firm represents many other individuals and entities. In order for the Firm to make its legal services generally available, it is necessary that we seek the Trust's consent to our representation of other clients, both current and future. Because many of our clients interact with other clients in many different respects, we often are in a position to undertake new matters like this one only because another client has agreed to an advance waiver. **The waivers that we seek, however, do not allow us to assert claims or to file litigation against the Trust while you are a client of the Firm (except possibly where the Trust is a member of a class or large group), and even after the conclusion of our representation, would not permit us to be adverse to you on a substantially related matter.** It is agreed that all aspects of this Letter Agreement, including without limitation the waivers and consent reflected herein, will apply to any future engagements by the Trust of the Firm.

Subject to the limitation that we will not assert a claim or file litigation against the Trust while the Trust is a client of the Firm, the Trust consents to our representation of other clients who have business, financial, legal, litigation, competitive, or other interests directly or indirectly adverse to the Trust, so long as the matter in which we represent them is not the matter in which we represent the Trust or substantially related to it and we conclude that we are able to do so consistent with our obligations under applicable ethical rules. This would permit us, for example, to represent an opposing party in an unrelated matter, to defend another client in a claim or suit brought against it, or to provide advice adverse to the Trust's interests, but only on a substantially unrelated matter. We are not currently aware of any conflicts or other reasons that would prevent the Firm from representing the Trust in this matter and we will promptly advise you if we become so aware subsequent to the date of this Letter Agreement.



The Firm and its attorneys will maintain in strict confidence all confidences and secrets of all of their present and former clients, including the Trust. The Trust agrees that it will not have any right of access to confidences and secrets of other clients of the Firm.

**<u>Costs, Expenses, and Attorney's Fees</u>**

Gilbert LLP shall receive fees for its professional services in connection with its representation of the Trust based on the hourly billing rates charged for each attorney or other professional who works on the matter. Our billing rates range from $300 to $1,700 per hour for attorneys and from $195 to $330 per hour for legal assistants. My billing rate will be $1,100 per hour. We may involve other attorneys in this representation, as needed, including Daniel I. Wolf, whose hourly rate is $700. The Firm's rates are subject to adjustment annually.

In addition to the professional fees set forth above, certain costs and expenses incurred by us on your behalf will be billed to you in your regular statement. The Firm does not bill clients for overhead, telephone, facsimile or routine copying charges. The Trust shall pay all other expenses and disbursements incurred in connection with Gilbert LLP's representation of the Trust. These costs include, but are not limited to, major photocopying charges, courier and overnight delivery charges, travel expenses (including mileage, parking, airfare, lodging, meals, and ground transportation), costs incurred in computerized research and litigation support systems, filing fees, witness fees, and the costs of any third parties to the extent such costs are paid initially by the Firm. Services by third parties may include consulting or testifying experts, investigators, providers of computerized litigation support, video tape services, and court reporters. Although the Firm may assume responsibility for retaining the appropriate service providers, the Trust will be responsible for paying all fees and expenses directly to such service providers.

Invoices for legal services, including fees, costs, and expenses, will be billed on a monthly basis. The Firm shall deliver all such invoices via email to accounting@firevictimtrust.com, with copies to pkellywemed@gmail.com, bkelly@brownrudnick.com, and stoomey@brownrudnick.com. Each invoice is due and payable upon receipt and will be considered delinquent if the Firm does not receive full payment within thirty (30) days of the invoice date. We reserve the right to postpone or defer providing additional services or to discontinue our representation if billed amounts are not paid when due. You are encouraged to discuss promptly any questions or concerns you may have about invoices with the Firm's accounting department or with the partner in charge of the representation.

For clarity, none of the Trustee, the Claims Administrator, or any of their employees, officers, directors, agents, consultants, lawyers, advisors or professionals shall be personally liable, whether under this Letter Agreement or based on any theory of law or equity, to the Firm or to any party claiming on behalf of the Firm for any of Firm's fees or expenses. For services rendered, the Firm shall look only to the corpus of the Trust as a Trust expense.

**<u>Indemnification</u>**

The Firm acknowledges that the Trust Agreement provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firm acknowledges



and agrees that, except as to Trust's indemnity obligations arising out of or related to the Trust's fraud or intentional misconduct, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ████████████████████████████████████████████████████████████████████████████

## Confidential Information

The Firm recognizes that certain of its partners, associates, staff members and other employees may be provided with confidential and proprietary information ("Confidential Information"). The Firm will not disclose to any third parties any Confidential Information obtained in the course of providing services unless the Trust consents to such disclosure. Confidential Information will not include information that (i) is or becomes publicly available other than as a result of a breach of this agreement by the Firm, (ii) the Firm acquires from a third party who owes no known obligations of confidence regarding this information, or (iii) was already known to the Firm at the time it received it from the Trust, as showing by the Firm's prior written records. If the Firm receives a request for disclosure of any Confidential Information, the Firm will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Client. The Firm agrees to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality.

## Termination

The Trust may terminate this Letter Agreement at any time with prior written notice, provided that the Firm is paid all fees due through the date of termination. In the event of termination of our representation, (a) the Firm shall provide cooperation in any transition, including return of materials provided to the Firm by the Trust, and (b) the Firm will provide to the Trust copies of any work product (other than the Firm's own files) created under this Letter Agreement upon full payment of invoices. Our own files pertaining to the matter will be retained for five (5) years. The Firm's files may include, among other things, firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and a copy of internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers on the matters.

## Dispute Resolution

Notwithstanding anything to the contrary in this Letter Agreement, the parties hereto agree that any disputes that arise under this Letter Agreement shall, in the first instance, be resolved by an alternative dispute resolution ("ADR") process mutually agreeable to the parties to this Letter Agreement as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process, and any party that is dissatisfied with the final outcome of the ADR process may then seek relief in the judicial system. This Engagement Letter shall be governed by the laws of the District

Hon. John K. Trotter (Ret.)
March 11, 2021
Page 5



of Columbia, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

Please indicate the Trust's agreement to the above by signing in the space provided below and returning an executed copy to me.

We are pleased to have this opportunity to represent the Trust, and we look forward to working with you on this matter.

Sincerely,

Kami E. Quinn
Partner

Agreed to and Accepted by:

_____     March 11, 2021
Hon. John K. Trotter (Ret.), as Trustee of the     _____
PG&E Fire Victim Trust and not individually          Date

**EXHIBIT K**



700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
O 202.772.2200
F 202.772.3333
GilbertLegal.com

**Kami E. Quinn**
202.772.2336
quinnk@gilbertlegal.com

March 11, 2021

**VIA ELECTRONIC MAIL**

Hon. John K. Trotter (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

RE:     Engagement of Gilbert LLP

Dear Judge Trotter:

We are pleased that the PG&E Fire Victim Trust (the "Trust") has retained Gilbert LLP (the "Firm") to provide legal services to the Trust. This letter (the "Letter Agreement") is to confirm the Trust's retention of the Firm as of the date first set forth above, our agreement as to the scope and nature of the legal services to be provided, as well as the basis on which our fees and related expenses will be calculated.

**Scope of Representation**

As the Trust is aware, pursuant to the Debtors' Chapter 11 Plan of Reorganization (the "Plan"), and related agreements, the Debtors (as defined in the Plan) transferred, among other assets, the Assigned Rights and Causes of Action (as defined in the Plan) to the Trust. Included in the Assigned Rights and Causes of Action are claims against certain third-party business management consultants engaged by Debtors to provide consulting services, and whose conduct in connection therewith caused or contributed to certain damages incurred by Debtor (the "Business Management Consultant Claims").

The Firm shall undertake to advise and represent the Trust in connection with pursuing and maximizing insurance coverage for the Business Management Consultant Claims. The scope of the retention in this matter includes representation in any adversarial proceeding, such as litigation or arbitration, if necessary. The scope of the retention may be modified by the Trust at any time and from time to time by advance written notice.

It is understood that the Firm does not guarantee a particular result in this matter, and that it is impossible to predict either the outcome of this matter or the time it will take to complete the matter. The Firm will work in a diligent and professional manner to complete the matter promptly and efficiently. The Firm agrees to provide written or oral explanations of work if requested to do so by the Trust, and the Firm also agrees to keep the Trust reasonably informed as to the progress and cost of the services being performed.

Hon. John K. Trotter (Ret.)
March 11, 2021
Page 2



I will be primarily responsible for the work done on behalf of the Trust, and will be assisted by Daniel I. Wolf. Other Firm personnel may also work on this matter and other attorneys subsequently may assume primary responsibility.

**Ownership and Use of Materials**

All materials prepared by the Firm in connection with this engagement (other than the Firm's own files, as described below) shall be owned by the Trust. We reserve the right to retain copies of our work product, with suitable protection of confidential information.

**Relationship with Other Clients**

The Firm represents, and will continue to represent, numerous corporations, trusts, not-for-profit organizations, and individuals in insurance coverage and other matters, including litigation and bankruptcy. The Firm and/or its members represent or have represented policyholders and other entities/individuals in numerous contexts, including the application of insurance policies to securities claims, fraud claims, mass tort claims, and other types of claims. The Firm has also represented class action plaintiffs and defendants in insurance matters and other types of litigation.

**Conflicts of Interest**

The Firm represents many other individuals and entities. In order for the Firm to make its legal services generally available, it is necessary that we seek the Trust's consent to our representation of other clients, both current and future. Because many of our clients interact with other clients in many different respects, we often are in a position to undertake new matters like this one only because another client has agreed to an advance waiver. **The waivers that we seek, however, do not allow us to assert claims or to file litigation against the Trust while you are a client of the Firm (except possibly where the Trust is a member of a class or large group), and even after the conclusion of our representation, would not permit us to be adverse to you on a substantially related matter.** It is agreed that all aspects of this Letter Agreement, including without limitation the waivers and consent reflected herein, will apply to any future engagements by the Trust of the Firm.

Subject to the limitation that we will not assert a claim or file litigation against the Trust while the Trust is a client of the Firm, the Trust consents to our representation of other clients who have business, financial, legal, litigation, competitive, or other interests directly or indirectly adverse to the Trust, so long as the matter in which we represent them is not the matter in which we represent the Trust or substantially related to it and we conclude that we are able to do so consistent with our obligations under applicable ethical rules. This would permit us, for example, to represent an opposing party in an unrelated matter, to defend another client in a claim or suit brought against it, or to provide advice adverse to the Trust's interests, but only on a substantially unrelated matter. We are not currently aware of any conflicts or other reasons that would prevent the Firm from representing the Trust in this matter and we will promptly advise you if we become so aware subsequent to the date of this Letter Agreement.



The Firm and its attorneys will maintain in strict confidence all confidences and secrets of all of their present and former clients, including the Trust. The Trust agrees that it will not have any right of access to confidences and secrets of other clients of the Firm.

**<u>Costs, Expenses, and Attorney's Fees</u>**

Gilbert LLP shall receive fees for its professional services in connection with its representation of the Trust based on the hourly billing rates charged for each attorney or other professional who works on the matter. Our billing rates range from $300 to $1,700 per hour for attorneys and from $195 to $330 per hour for legal assistants. My billing rate will be $1,100 per hour. We may involve other attorneys in this representation, as needed, including Daniel I. Wolf, whose hourly rate is $700. The Firm's rates are subject to adjustment annually.

In addition to the professional fees set forth above, certain costs and expenses incurred by us on your behalf will be billed to you in your regular statement. The Firm does not bill clients for overhead, telephone, facsimile or routine copying charges. The Trust shall pay all other expenses and disbursements incurred in connection with Gilbert LLP's representation of the Trust. These costs include, but are not limited to, major photocopying charges, courier and overnight delivery charges, travel expenses (including mileage, parking, airfare, lodging, meals, and ground transportation), costs incurred in computerized research and litigation support systems, filing fees, witness fees, and the costs of any third parties to the extent such costs are paid initially by the Firm. Services by third parties may include consulting or testifying experts, investigators, providers of computerized litigation support, video tape services, and court reporters. Although the Firm may assume responsibility for retaining the appropriate service providers, the Trust will be responsible for paying all fees and expenses directly to such service providers.

Invoices for legal services, including fees, costs, and expenses, will be billed on a monthly basis. The Firm shall deliver all such invoices via email to accounting@firevictimtrust.com, with copies to pkellywemed@gmail.com, bkelly@brownrudnick.com, and stoomey@brownrudnick.com. Each invoice is due and payable upon receipt and will be considered delinquent if the Firm does not receive full payment within thirty (30) days of the invoice date. We reserve the right to postpone or defer providing additional services or to discontinue our representation if billed amounts are not paid when due. You are encouraged to discuss promptly any questions or concerns you may have about invoices with the Firm's accounting department or with the partner in charge of the representation.

For clarity, none of the Trustee, the Claims Administrator, or any of their employees, officers, directors, agents, consultants, lawyers, advisors or professionals shall be personally liable, whether under this Letter Agreement or based on any theory of law or equity, to the Firm or to any party claiming on behalf of the Firm for any of Firm's fees or expenses. For services rendered, the Firm shall look only to the corpus of the Trust as a Trust expense.

**<u>Indemnification</u>**

The Firm acknowledges that the Trust Agreement provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firm acknowledges



and agrees that, except as to Trust's indemnity obligations arising out of or related to the Trust's fraud or intentional misconduct, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, ███████████████████████████████████

**Confidential Information**

The Firm recognizes that certain of its partners, associates, staff members and other employees may be provided with confidential and proprietary information ("Confidential Information"). The Firm will not disclose to any third parties any Confidential Information obtained in the course of providing services unless the Trust consents to such disclosure. Confidential Information will not include information that (i) is or becomes publicly available other than as a result of a breach of this agreement by the Firm, (ii) the Firm acquires from a third party who owes no known obligations of confidence regarding this information, or (iii) was already known to the Firm at the time it received it from the Trust, as showing by the Firm's prior written records. If the Firm receives a request for disclosure of any Confidential Information, the Firm will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Client. The Firm agrees to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality.

**Termination**

The Trust may terminate this Letter Agreement at any time with prior written notice, provided that the Firm is paid all fees due through the date of termination. In the event of termination of our representation, (a) the Firm shall provide cooperation in any transition, including return of materials provided to the Firm by the Trust, and (b) the Firm will provide to the Trust copies of any work product (other than the Firm's own files) created under this Letter Agreement upon full payment of invoices. Our own files pertaining to the matter will be retained for five (5) years. The Firm's files may include, among other things, firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and a copy of internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers on the matters.

**Dispute Resolution**

Notwithstanding anything to the contrary in this Letter Agreement, the parties hereto agree that any disputes that arise under this Letter Agreement shall, in the first instance, be resolved by an alternative dispute resolution ("ADR") process mutually agreeable to the parties to this Letter Agreement as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process, and any party that is dissatisfied with the final outcome of the ADR process may then seek relief in the judicial system. This Engagement Letter shall be governed by the laws of the District

Hon. John K. Trotter (Ret.)
March 11, 2021
Page 5



of Columbia, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

Please indicate the Trust's agreement to the above by signing in the space provided below and returning an executed copy to me.

We are pleased to have this opportunity to represent the Trust, and we look forward to working with you on this matter.

Sincerely,

Kami E. Quinn
Partner

Agreed to and Accepted by:

_____      _March 11, 2021_____
Hon. John K. Trotter (Ret.), as Trustee of the         Date
PG&E Fire Victim Trust and not individually