1  KELLER BENVENUTTI KIM LLP
   Jane Kim (#298192)
2  (jkim@kbkllp.com)
   David A. Taylor (#247433)
3  (dtaylor@kbkllp.com)
   Thomas B. Rupp (#278041)
4  (trupp@kbkllp.com)
   650 California Street, Suite 1900
5  San Francisco, CA 94108
   Tel: 415 496 6723
6  Fax: 650 636 9251

7  *Attorneys for Debtors and Reorganized Debtors*

8              **UNITED STATES BANKRUPTCY COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
9               **SAN FRANCISCO DIVISION**

10

11                                          Bankruptcy Case No. 19-30088 (DM)

12 **In re:**                              Chapter 11

13 **PG&E CORPORATION,**                   (Lead Case) (Jointly Administered)

14        **- and -**                      **REORGANIZED DEBTORS' OBJECTION TO**
                                           **AMENDED PROOF OF CLAIM NO. 108715**
15 **PACIFIC GAS AND ELECTRIC**            **FILED BY DAVID P. ADDINGTON**
   **COMPANY,**
16                                         **Response Deadline: TBD**

17                   **Debtors.**
                                           **Status Conference:**
18 ☐ Affects PG&E Corporation              Date:   September 13, 2022
   ☐ Affects Pacific Gas and Electric Company  Time:   10:00 a.m. (Pacific Time)
19 ☒ Affects both Debtors                  Place:  (Zoom videoconference only)
                                                   United States Bankruptcy Court
20                                                 Courtroom 17, 16th Floor
   *All papers shall be filed in the Lead Case,*  San Francisco, CA 94102
21 *No. 19-30088 (DM).*

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     STATUS CONFERENCE ............................................................................................ 3

III.    JURISDICTION ........................................................................................................... 3

IV.     BACKGROUND ........................................................................................................... 4

        A.      Bankruptcy Background ................................................................................... 4

        B.      PG&E Easement and Towers on Addington Property ...................................... 4

        C.      The Original Claim .......................................................................................... 6

        D.      The May 10 Hearing and May 16 Order .......................................................... 6

        E.      The Amended Proof of Claim ......................................................................... 8

V.      ARGUMENT ................................................................................................................ 8

        A.      Mr. Addington Bears the Burden of Proof....................................................... 9

        B.      The Amended Proof of Claim Must Be Dismissed to the Extent It Seeks
                Damages that Were Released in the Addendum ............................................... 9

        C.      PG&E Must Protect its Own Rights Under the Easement ............................... 10

        D.      The Amended Proof of Claim Does Not State a Cause of Action Under
                Applicable Law ............................................................................................. 11

        E.      The Evidence in the Record Already Offered by Mr. Addington Demonstrates
                that PG&E Did Cooperate with Mr. Addington ............................................. 11

        F.      The Enumerated Damages in the Amended Proof of Claim Do Not Add Up ............... 12

        G.      The Amended Proof of Claim is Asserted Against the Wrong Debtor........................ 13

VI.     LOCAL RULE 3007-1(b)............................................................................................ 14

VII.    RESERVATION OF RIGHTS ..................................................................................... 14

VIII.   NOTICE...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222 (B.A.P. 9th Cir. 1995)..................................................................................................9

*Dolnikov v. Ekizian*, 222 Cal. App. 4th 419 (2013).....................................................................11

*In re Fidelity Holding Co.*, 837 F.2d 696 (5th Cir. 1988)............................................................10

*Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035 (9th Cir. 2000)..............................10

*Spencer v. Pugh (In re Pugh)*, 157 B.R. 898 (B.A.P. 9th Cir. 1993)..........................................10

*Wright v. Holm (In re Holm)*, 931 F.2d 620 (9th Cir. 1991) ...................................................9, 10

**Statutes**

11 U.S.C. § 1107..........................................................................................................................4

11 U.S.C. § 1108..........................................................................................................................4

11 U.S.C. § 502.........................................................................................................................4, 9

28 U.S.C. § 1334..........................................................................................................................3

28 U.S.C. § 1408..........................................................................................................................3

28 U.S.C. § 1409..........................................................................................................................4

28 U.S.C. § 157............................................................................................................................3

**TO: (A) THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) THE AFFECTED CLAIMANT; AND (D) OTHER PARTIES ENTITLED TO NOTICE:**

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, "**PG&E**" or the "**Debtors**," or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") file this objection (the "**Objection**") to amended Proof of Claim No. 108715 (the "**Amended Proof of Claim**") filed by David P. Addington ("**Mr. Addington**"), and further state the following:

## I. PRELIMINARY STATEMENT

This Court has already found that PG&E's recorded easement on Mr. Addington's property—which grants PG&E, among other things, the right to erect and maintain two steel towers that support PG&E's electrical transmission equipment—is valid and was not terminated by Mr. Addington. This Court also found that, on November 4, 2016, Mr. Addington signed a release with respect to soil removal work that PG&E had done around PG&E's towers on Mr. Addington's property. As a result of those and other findings, the Court disallowed Mr. Addington's original proof of claim. However, based on Mr. Addington's allegations that PG&E owed an obligation to level his yard, and his representations at a hearing held on May 10, 2022 (the "**May 10 Hearing**"), that such leveling would have cost "$100,000 dollars, maybe," the Court permitted Mr. Addington to amend his proof of claim "to state a claim for damages stemming from damage that occurred ***after the date of payment following Mr. Addington's signed release of claims arising from Debtors' revised work agreement.***" *Order Sustaining Debtors' Objection and Granting David Addington Leave to Amend Proof of Claim #3093* [Docket No. 12392] on May 16, 2022 (the "**May 16 Order**") (emphasis added).

Mr. Addington's Amended Proof of Claim goes far beyond what the Court contemplated at the May 10 Hearing. First, Mr. Addington continues to complain about the work that was done under the "revised work agreement," which Mr. Addington alleges resulted in the yard not having been leveled—and which work was the subject of the above-mentioned signed release. Mr. Addington bases his Amended Proof of Claim on PG&E's alleged refusal to permit Mr. Addington to remove more soil from the property, bringing claims for the diminishment in value of his property by 10-20%,

"deprivation of the use and enjoyment of the backyard," "stress and emotional distress," and legal fees and personal time. The Amended Proof of Claim asserts a claim for $990,702—nearly ten times the original estimate Mr. Addington gave to the Court at the May 10 Hearing. Moreover, correspondence with PG&E that Mr. Addington himself offered into the record in connection with his original proof of claim directly contradicts his claims against PG&E, by showing the efforts by PG&E employees to work with Mr. Addington to address his concerns. Instead of working with PG&E to reach a safe and responsible engineered solution for his landscaping concerns, Mr. Addington instead purported to terminate PG&E's easement and demand the removal of PG&E's towers and electrical equipment from his property.

At the same time, the Amended Proof of Claim is much *less* than what the Court directed at the May 10 Hearing. The Amended Proof of Claim does not articulate any theory of liability as to PG&E, let alone assert facts sufficient to make any such theory plausible. While a proof of claim need not be held to the same standard as a complaint in civil litigation, PG&E objects to the adequacy of the Amended Proof of Claim. If Mr. Addington cannot cogently state the grounds for PG&E's liability and the facts he believes support these grounds, then PG&E is placed at a decisive disadvantage in having to respond to vague and speculative allegations. While Mr. Addington may argue that he will need discovery from PG&E to develop his claims, his prior filings show that he was actively communicating with PG&E during the time in question, and the Court should not sanction a fishing expedition at the outset if Mr. Addington is incapable or unwilling of plainly stating his claims against PG&E.

What is *not* relevant to this Objection are the statements in the Amended Proof of Claim regarding the work done by PG&E or its contractors prior to the November 2016 release. In particular, Mr. Addington agreed that PG&E had done the work that it agreed to do with respect to the soil removal, and then *released* PG&E. The soil removal project was undertaken at Mr. Addington's request and with his cooperation. PG&E agreed that it or its contractor would perform soil removal and demolition and removal of the play court, and it would also pay Mr. Addington an agreed-upon amount for Mr. Addington to work with his own landscaping contractor and complete the lawn to his satisfaction. Upon the completion of that work – which resulted in the grading of which Mr.

Addington now complains – Mr. Addington released PG&E of all obligations with respect to that work.

Finally, while PG&E denies any wrongdoing and disputes that there are any grounds for liability, PG&E's door remains open to Mr. Addington with respect to any conversations about the condition of the property and construction in the area of the towers, including consideration of any safe, responsible, engineered solution to landscaping around PG&E's towers.

## II.    STATUS CONFERENCE

The parties understand that the September 13, 2022 hearing on the Objection will go forward as a status conference.  For the purposes of this status conference, PG&E makes the following proposals:

- That the Court set October 4, 2022, as a deadline for Mr. Addington to respond to this Objection, and that in such response, that Mr. Addington be required to set forth detailed factual allegations and a cogent theory of liability as to PG&E, so that PG&E may have the opportunity to prepare an effective defense to Mr. Addington's claims.

- That the Court set a further status conference on October 11, 2022, at 10:00 a.m. for trial-setting and other scheduling matters.

- If the parties instead decide to pursue mediation or other settlement negotiations, they will notify the Court in a timely fashion.

## III.    JURISDICTION

This Court has jurisdiction over this Objection under 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**").  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested are section 502 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Bankruptcy Local Rules for the Northern District of California (the "**Local Rules**").

## IV.    BACKGROUND

### A.    Bankruptcy Background

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code.  Prior to the Effective Date (as defined below), the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner was appointed in either of the Chapter 11 Cases.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263].

By Order dated June 20, 2020 [Docket No. 8053], the Bankruptcy Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be further modified, amended or supplemented from time to time, and together with any exhibits or schedules thereto, the "**Plan**").  The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**").  [*See* Docket No. 8252].

### B.    PG&E Easement and Towers on Addington Property

Background regarding PG&E's easement over Mr. Addington's property, the towers and equipment located thereon, and Mr. Addington's failed attempt to terminate the easement are described in detail in the *Parties' Joint Statement of Undisputed Facts Regarding Reorganized Debtors' Seventy-Ninth Omnibus Objection to Claims – Claim of David Addington (Claim No. 3093)* [Docket No. 11736] (the "**Joint Statement**" or "**J.S.**")[1], which is incorporated herein by reference.  The portions immediately relevant to the Amended Proof of Claim are restated in this Section IV.B for the Court's convenience.

In 2016, at Mr. Addington's request, PG&E removed paint and re-coated the lattice steel towers on the Addington Property.  (J.S. ¶ 9.)  As part of that work, PG&E determined that it was necessary to

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Joint Statement.

remove soil from Mr. Addington's property.  (J.S. ¶ 9.)  PG&E and Mr. Addington entered into a Tower Maintenance Work Soil Restoration Agreement dated September 2, 2016 (the **Restoration Agreement**"), which described certain work associated with the removal and replacement of soil from the area impacted by PG&E's tower coating project.  (J.S. ¶ 9.)  A copy of the Restoration Agreement is attached as Exhibit C to the Joint Statement.  (J.S. ¶ 9, Ex. C.)

PG&E and Mr. Addington also entered into a Revised Tower Maintenance Work Acknowledgement dated September 2, 2016 (the **"Revised Work Acknowledgement"**), which provided that PG&E would (i) demolish and offhaul a play court and (ii) offhaul 170 cubic yards of soil from the Addington Property.  (J.S. ¶ 10.)  A copy of the Revised Work Acknowledgement is attached as Exhibit D to the Joint Statement.  (J.S. ¶ 10, Ex. D.)

The Revised Work Acknowledgement provided that PG&E would pay Mr. Addington $36,790 in consideration for the work done on the Addington Property.  (J.S. ¶ 11, Ex. D.)  This amount was based on a bid that Mr. Addington had obtained from his own contractor, GJR Development.  (J.S. ¶ 11.)  PG&E subsequently paid Mr. Addington the $36,790 owing under the Revised Work Acknowledgement.  (J.S. ¶ 11.)

After PG&E and its subcontractors had completed its re-coating and restoration work on the Addington Property, a dispute arose based on Mr. Addington's contention that PG&E did not perform all the work it had agreed to perform.  (J.S. ¶ 12.)  To resolve this dispute, PG&E and Mr. Addington entered into a Tower Maintenance Work Acknowledgement Addendum dated November 4, 2016 (the **"Addendum"**).  (J.S. ¶ 12, Ex. E.)  A copy of the Addendum is attached as Exhibit E to the Joint Statement.  (J.S. ¶ 12, Ex. E.)

Under this Addendum, PG&E agreed to pay Mr. Addington an additional $13,000 in consideration for Mr. Addington's agreement that PG&E has performed the work described in the Revised Work Acknowledgement.  (J.S. ¶ 13, Ex. E.)  The Addendum states as follows:

> PG&E agrees to pay you $13,000.00 as additional consideration, bringing the total consideration under the Agreement [the Revised Work Acknowledgement] amount to $49,790.00.  In exchange you agree that PG&E has completed the work described in the Agreement.  ***Please provide your signature below to indicate your agreement that your acceptance of this revised total consideration amount will constitute a full and final release of PG&E from obligations arising under that Agreement***.

(J.S. ¶ 13, Ex. E.) (emphasis added). Mr. Addington countersigned the Addendum, and PG&E paid the additional $13,000 to Mr. Addington. (J.S. ¶ 14, Ex. E.) Mr. Addington executed an Acknowledgment of Payment on November 14, 2016 (the "**Acknowledgement of Payment**"), acknowledging receipt of $49,790 from PG&E. (J.S. ¶ 14, Ex. F.) A copy of the Acknowledgement of Payment is attached as Exhibit F to the Joint Statement. (J.S. ¶ 14, Ex. F.)

### C.     The Original Claim

On May 23, 2019, Mr. Addington filed a proof of claim [Claim No. 3093] (the "**Original Claim**") in the Chapter 11 Cases, in which Mr. Addington asserted a $3,548,941.93 prepetition claim for a "High Voltage Utility-Specific Access Charge." In the Original Claim, Mr. Addington contended that, upon his purported termination of the easement in 2017, he became entitled to charge PG&E for the electricity being transmitted through its tower lines over the Addington Property.

On May 20, 2021, PG&E filed the *Reorganized Debtors' Seventy-Ninth Omnibus Objection to Claims (Books and Records Claims)* [Docket No. 10673] (the "**Original Objection**"), which objected to the Claim on the basis that, according to PG&E's books and records, the Original Claim did not assert a claim for which the Debtors had any liability.

On June 30, 2021, the Bankruptcy Court held a preliminary hearing with respect to the Original Objection to the Original Claim. At the end of that hearing, counsel for PG&E advised the Bankruptcy Court that PG&E would consider mediating the Original Claim, and the Bankruptcy Court continued the hearing pending such a determination. On July 8, 2021, PG&E informed the Bankruptcy Court by notice that it intended to attempt to mediate the Original Claim [Docket No. 10896]. On August 25, 2021, PG&E and Mr. Addington participated in a mediation in front of E. Alexandra DeLateur. The mediation did not result in a settlement.

On November 9, 2021, the parties appeared before the Court for a second status conference to discuss a briefing schedule on the Original Claim.

### D.     The May 10 Hearing and May 16 Order

After agreeing to the Joint Statement and providing briefing on the issue of whether Mr. Addington's purported termination of PG&E's easement was valid, the parties appeared before the Court for an evidentiary hearing on the Original Claim at the May 10 Hearing.

The Court asked Mr. Addington about the types of damages he may have incurred, separate from and following Mr. Addington's signing of the release in favor of PG&E. The following exchange ensued:

> THE COURT: What was the situation on the ground then that you believe PG&E should have taken care of and fixed?
> MR. ADDINGTON: No, sir. There was no situation on the ground that I wanted PG&E to fix. I was going to fix it.
> I can fix it. I can fix it quicker. And --
> THE COURT: Okay. What was the situation you want to be fixed, regardless of who fixes it?
> MR. ADDINGTON: I wanted my yard to be leveled so I could put in sod and a sprinkler system.
> . . .
> THE COURT: What would it take, according to Mr. Addington?
> MR. ADDINGTON: Oh, in terms of costs?
> THE COURT: Yes.
> MR. ADDINGTON: I don't know, 100,000 dollars, maybe.

May 10 Hr'g Tr. 27:12-20; 28:12-16.

At the end of the parties' presentations and arguments, the Court ruled that Mr. Addington's attempted termination of PG&E's easement was ineffective. The Court then told Mr. Addington that it would permit Mr. Addington to amend his proof of claim in the following limited manner:

> I'm prepared, however, to give you an opportunity to at least articulate something that is a measure of damages that you believe you're entitled to, based upon what you think PG&E should have done since it last terminated its contractual relationship with you. In other words, go back to my hypothetical, or not so hypothetical, my -- go back to the day you signed the release, and they paid you the last installment of the money that they paid you, and on that date and time, and *since then, is there something that PG&E is responsible for that it has not compensated you for?*

May 10 Hr'g Tr. 32:20-33:4 (emphasis added).

On May 16, 2022, the Court entered the *Order Sustaining Debtors' Objection and Granting David Addington Leave to Amend Proof of Claim #3093* [Docket No. 12392], which (i) disallowed Mr. Addington's Proof of Claim No. 3093, (ii) provided a schedule for Mr. Addington to file an amended proof of claim and for the Reorganized Debtors to file an objection to such amended claim, and (iii) set a hearing on the matter for September 13, 2022. In particular, the May 16 Order provided that "Mr. Addington may amend his Proof of Claim on or before July 11, 2022 to state a claim for damages stemming from damage that occurred *after the date of payment following Mr. Addington's signed release of claims arising from Debtors' revised work agreement.*" May 16 Order at ¶ 2 (emphasis added).

### E. The Amended Proof of Claim

On July 5, 2022, Mr. Addington, now through his new counsel, filed the Amended Proof of Claim. As discussed in more detail below, the Amended Proof of Claim identifies the following categories of estimated damages, asserting a total claim amount of $990,702:

- Diminution in value of the property.
- Deprivation of Mr. Addington's family's enjoyment of its yard.
- Mr. Addington's stress in dealing with the issue.
- $52,200 in legal fees.
- Mr. Addington's estimated time and labor for working on the dispute with PG&E.

The Amended Proof of Claim is thin on facts and fails to articulate any legal theory as to how PG&E owes any liability to Mr. Addington. As best as PG&E can determine, Mr. Addington's theory of liability stems from PG&E's work performed under the revised work agreement—with respect to which Mr. Addington signed a release in November 2016—and the following sentence:

> The Debtors have stated that no soil within a 13-foot radius of its towers' legs can be moved without their agreement and approved engineering plan, effectively foreclosing landscaping by Mr. Addington, because the Debtors have refused to provide any engineering standard or to share the Debtors' engineering plans or other documents.

Amended Proof of Claim at 8. Mr. Addington does not articulate a specific cause of action, *e.g.*, negligence, trespass, conversion, breach of contract, and therefore leaves PG&E in a position of having to defend against Mr. Addington's brief, vague, speculative assertions. It is unclear what wrongdoing Mr. Addington is accusing PG&E of having committed, and therefore what Mr. Addington must prove to establish liability.

Although Mr. Addington communicated with PG&E representatives on numerous occasions in 2016 and 2017 and as such, would be in possession of plenty of correspondence with PG&E, his Amended Proof of Claim does not cite a specific "refusal" on PG&E's part. In fact, the correspondence previously submitted by Mr. Addington himself shows that PG&E representatives *did* provide certain reports and were cooperative and professional with Mr. Addington.

### V. ARGUMENT

The Reorganized Debtors seek disallowance of the Amended Proof of Claim under section 502(b)(1) of the Bankruptcy Code, because Mr. Addington cannot prove the claims therein by a

1  preponderance of the evidence.

2      **A.    Mr. Addington Bears the Burden of Proof**

3          A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."  11 U.S.C.

4  § 502(a).  Section 502(b)(1) of the Bankruptcy Code, however, provides in relevant part that a claim

5  may not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under

6  any agreement or applicable law."  11 U.S.C. § 502(b)(1).  Once the objector raises "facts tending to

7  defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves,"

8  *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), quoting 3 L. King, Collier on

9  Bankruptcy § 502.02 at 502-22 (15th ed. 1991), then "the burden reverts to the claimant to prove the

10  validity of the claim by a preponderance of the evidence," *Ashford v. Consolidated Pioneer Mortgage*

11  *(In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re*

12  *Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992), *aff'd without opinion*, 91 F.3d 151 (9th Cir.

13  1996).  "[T]he ultimate burden of persuasion is always on the claimant."  *Holm*, 931 F.2d at 623

14  (quoting King, Collier on Bankruptcy); *see also Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d

15  1035, 1039 (9th Cir. 2000); *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993); *In*

16  *re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988).

17      **B.    The Amended Proof of Claim Must Be Dismissed to the Extent It**

18          **Seeks Damages that Were Released in the Addendum**

19          In the first instance, it appears that the Amended Proof of Claim seeks damages relating to Mr.

20  Addington's desire to level his property as a result of the work that was done under the Revised Work

21  Acknowledgement—in other words, the work with respect to which, in the Addendum, Mr. Addington

22  expressly gave "a full and final release of PG&E from obligations arising under that Agreement."  (J.S.

23  ¶ 13, Ex. E.)  Each of the categories of damages specified by Mr. Addington (as discussed in more detail

24  below) relate to his inability to level his property following the Revised Work Acknowledgement and

25  the Addendum.  These claims were released and are barred by the Addendum, and are outside of the

26  scope of what the Court permitted Mr. Addington to include in the Amended Proof of Claim:

27          [G]o back to the day you signed the release, and they paid you the last installment of the
          money that they paid you, and on that date and time, and **since then, is there something**
28          **that PG&E is responsible for that it has not compensated you for?**

May 10 Hr'g Tr. 32:20-33:4 (emphasis added).

The Amended Proof of Claim complains that the work that PG&E performed under the Revised Work Acknowledgement—and therefore covered by the release contained in the Addendum—resulted in steep grades to the property, for which Mr. Addington now seeks nearly $1 million in damages. Such claims should be disallowed as a matter of law pursuant to the Addendum.

### C.    PG&E Must Protect its Own Rights Under the Easement

Even if the Addendum did not bar the Amended Proof of Claim, PG&E does not owe Mr. Addington a duty to remove any further soil from the ground supporting the steel towers. To the contrary, the easement grants PG&E the express right to "erect and maintain" two lines of steel towers for supporting wires for the transmission and distribution of electricity. Coupled with the right to "erect and maintain" the towers are PG&E's so-called "secondary rights" to the easement. An easement based on a grant gives the easement holder those interests expressed in the grant and those necessarily incident thereto, including the right to do such things on the property as are necessary for the full enjoyment of the easement itself. *See Dolnikov v. Ekizian*, 222 Cal. App. 4th 419, 428 (2013) (quoting *Norris v. State of California ex rel. Dept. Pub. Wks.*, 261 Cal. App. 2d 41, 46-47 (1968) and *Pasadena v. California-Michigan etc. Co.*, 17 Cal.2d 576, 579 (1941)). "[T]he servient owner may use his property in any manner not inconsistent with the easement so long as it does not *unreasonably impede* the dominant tenant in his rights." *Dolnikov v. Ekizian*, 222 Cal. App. 4th at 429-30 (quoting *City of Los Angeles v. Howard*, 244 Cal. App. 2d 538, 543 (1966)) (italics added in *Dolnikov*). "Actions that make it more difficult to use an easement, that interfere with the ability to maintain and repair improvements built for its enjoyment, or that increase the risks attendant on exercise of rights created by the easement are prohibited . . . ***unless justified by needs of the servient estate***." *Dolnikov v. Ekizian*, 222 Cal. App. 4th at 429-30 (quoting Restatement (Third) of Property, Servitudes, § 4.9, cmt. c., p. 583) (italics added in *Dolnikov*, bold italics added). As the holder of a tower easement, PG&E has the express right to maintain the tower structures in a manner that is not unreasonably impeded by Mr. Addington's residual use of the easement area. Mr. Addington may have disagreements with PG&E regarding PG&E's rights to operate and maintain its towers, including his desires to modify the ground level surrounding those towers, but PG&E does not need to cede any of its rights to Mr. Addington, especially given the

important public safety implications.[2]  PG&E expects to be able to prove that any restrictions PG&E may have placed on work on the ground around the towers were justified by the purpose of the easement.

**D.      The Amended Proof of Claim Does Not State a Cause of Action**

**Under Applicable Law**

Without the Amended Proof of Claim asserting a claim for relief under federal or state law, PG&E is placed at a disadvantage.  Although FRBP 7012 is not incorporated into contested matters under FRBP 9014, a motion to dismiss or motion for a more definite statement would be appropriate here.  Both parties and the Court would clearly benefit if Mr. Addington were required to set forth his theory of liability with more precision, either through a further amended claim, or through a response filed to this Objection.  Indeed, the Court directed that Mr. Addington articulate a theory of liability at the May 10 Hearing:

> And I'm going to give you -- I'm going to issue an order that determines that your claim for the multi-million dollars is disallowed because there has not been an effective termination of an easement. But under what we'll call the liberal rules of pleading, you can amend your claim ***to set forth a theory by which you believe PG&E does have an obligation to compensate you*** for something that makes you whole and expresses that claim in a dollar amount.

May 10 Hr'g Tr. 33:12-19 (emphasis added).  The Amended Proof of Claim fails to do what the Court requested.

**E.      The Evidence in the Record Already Offered by Mr. Addington**

**Demonstrates that PG&E Did Cooperate with Mr. Addington**

In litigating the Original Claim, Mr. Addington contended, as he does in the Amended Proof of Claim, that "PG&E completely and inexplicably blocked my attempts to relandscape" and argued (without elaboration or other evidence) that the landscaping report PG&E provided was "specious." *See Opposition to Debtors' Objection to Claim of David P. Addington (Claim No. 3093)* [Docket No. 12101].  He did not provide evidence to support these contentions despite having the opportunity to do so, and the Bankruptcy Court disallowed the Original Claim.  Mr. Addington acknowledges that

---

[2] The California Department of Forestry and Fire Protection ("**CalFIRE**") has included the Addington Property in a "Very High Fire Hazard Severity Zone." *See* Map for the City of Piedmont at https://osfm.fire.ca.gov/divisions/community-wildfire-preparedness-and-mitigation/wildland-hazards-building-codes/fire-hazard-severity-zones-maps/.

he received an engineering report prepared by ASEC Inc., at PG&E's request, dated March 3, 2017. *See Declaration in Support of Creditor David P. Addington's Opposition to Debtors' Objection to Claim of David P. Addington (Claim No. 3093)* [Docket No. 12102] (the "**Addington Declaration**") (referencing fifteen exhibits, marked A-O at Docket No. 10201); *See* Docket No. 12101-3 at 1-8. Furthermore, PG&E provided Mr. Addington with a report by its contractor Arcadis, dated November 28, 2016, that detailed the soil restoration work Arcadis performed at the Addington Property between October 25 and November 3, 2016. *Id.*; *See* Docket No. 12101-2 at 16-17. Mr. Addington also included numerous e-mails between him and PG&E personnel between November 2016 and June 2017. *Id.* If PG&E ever refused to work with Mr. Addington in his desire to obtain a safe, professionally engineered landscaping solution for his property, Mr. Addington does not cite to such an instance. Instead, the correspondence submitted by Mr. Addington himself shows that PG&E representatives provided the reports he requested and were cooperative and professional with Mr. Addington. In fact, it was Mr. Addington who declined to work with PG&E and instead recorded the Termination Notice, which this Court ultimately found was not effective.

**F.      The Enumerated Damages in the Amended Proof of Claim Do Not Add Up**

The Amended Proof of Claim asserts five species of damages, which the Amended Proof of Claim asserts totals the precise sum of $990,702. Again, *none* of these items relate to any damage allegedly done to the property by PG&E *after* Mr. Addington signed the release contained in the Addendum.

- A diminution in value of the property by 10-20%, or $400,000-$800,000 of an estimated value of $4 million.[3] With such a large range for what is by far the largest element of alleged damages, it's difficult to understand how the total of the Amended Proof of Claim is a specific number and not a range or approximation. Neither the Amended Proof of Claim nor any of Mr. Addington's prior filings or statements in this Court indicate any effort to sell the property.

---

[3] Public records information listed on several widely-used real estate websites indicates the property was purchased in November 2015 for $1,669,000, which would be a 140% increase in seven years.

1     •   Deprivation of the Mr. Addington family's enjoyment of its yard at $100 per diem.

2     •   Mr. Addington's stress in dealing with the issue at $50 per diem, presumably for the

3         same number of days as the above.

4     •   $52,200 in legal fees. Leaving aside that the Amended Proof of Claim does not cite to a

5         statute or agreement that provides for payment of attorney fees (and without any such

6         statute or agreement, each party must bear its own fees and costs), PG&E has never

7         communicated with Mr. Addington through an attorney in this matter until he retained

8         Mr. Oliner in the summer of 2022, nor has Mr. Addington ever been represented by an

9         attorney in court or on his papers, so PG&E has no understanding as to how such a

10        substantial amount of fees were incurred.

11     •   Mr. Addington's estimated time and labor for working on the dispute with PG&E

12         (presumably separate from his per diem damages for stress and his legal fees) at $75 per

13         hour for approximately 500 hours, which amounts to approximately $37,500.

14     The Amended Proof of Claim does not indicate the time period for which Mr. Addington

15 calculates the various per diem categories of damages. If the diminution in value is taken at the low

16 end of $400,000, then the rest of the damages indicate a per diem period of approximately 109 months.

17 Taken at the high end of $800,000, the per diem period is closer approximately 22 months. Neither of

18 these would appear to be the correct period for calculating these per diem amounts, and the

19 Reorganized Debtors object to all of the categories of damages on the basis that they appear to be

20 invalid and are not grounded in any obligation PG&E owed to Mr. Addington.

21     **G.**     **The Amended Proof of Claim is Asserted Against the Wrong Debtor**

22     The Amended Proof of Claim selected PG&E Corp. as the Debtor liable for Mr. Addington's

23 claim. The subject easement is owned by the Utility, and the relevant agreements Mr. Addington

24 entered into were with the Utility. The Original Claim was filed against PG&E Corp. but was

25 reassigned to the Utility by the *Order Granting Debtors' First Omnibus Report and Objection to*

26 *Claims Asserted Pursuant to 11 U.S.C. § 503(b)(9)* [Dkt. 3564, Ex. A at 1]. The Reorganized Debtors

27 object to the Amended Proof of Claim on the grounds that it was asserted against the wrong debtor.

28

1

## VI.     LOCAL RULE 3007-1(b)

2        Bankruptcy Local Rule 3007-1(b) states that "[w]here a factual dispute is involved, the initial

3    hearing on an objection shall be deemed a status conference at which the Court will not receive

4    evidence." As discussed above, the Reorganized Debtors believe that the claims asserted in the

5    Amended Proof of Claim are barred as a matter of law by the release contained in the Addendum.

6    However, to the extent the Court finds that they are not, the Reorganized Debtors believe that a status

7    conference and further briefing, beginning with a more definite statement of his claim by Mr.

8    Addington, will be necessary prior to any further proceedings. In the Amended Proof of Claim, Mr.

9    Addington indicates that he intends to take discovery from the Reorganized Debtors. It is premature to

10   discuss discovery without Mr. Addington first providing some clarity as to the alleged basis of

11   PG&E's liability, as the scope of discovery should be reasonably tailored to identify evidence that may

12   be relevant to the alleged duty Mr. Addington asserts PG&E owed to him and breached. Given the

13   incompleteness and ambiguity of the claim as currently presented, it is unlikely the parties will be able

14   to work together to develop an agreed-upon scope of discovery. The Reorganized Debtors likewise

15   would need to take discovery from Mr. Addington and any other connected third parties. The

16   Reorganized Debtors submit that, following the more definite statement requested of Mr. Addington, it

17   may be possible for the allegations in the Amended Proof of Claim to be resolved in a dispositive

18   motion.

19

## VII.     RESERVATION OF RIGHTS

20       The Reorganized Debtors hereby reserve the right to object, as applicable, in the future to the

21   Amended Proof of Claim on any ground, and to amend, modify, or supplement this Objection to the

22   extent the Objection is not granted. A separate notice and hearing will be scheduled for any such

23   further objections. Should the grounds of objection specified herein be overruled, wholly or in part,

24   the Reorganized Debtors reserve the right to object to the Amended Proof of Claim on any other

25   grounds that the Reorganized Debtors may discover or deem appropriate. The Reorganized Debtors

26   also reserve the right to assert any counterclaims or affirmative defenses (including, without limitation,

27   mitigation of damages, waiver, equitable estoppel, unclean hands, election of remedies, and laches),

28

1   whether in connection with this Objection or in an adversary proceeding or other litigation, which

2   counterclaims and defenses are expressly reserved.

3   **VIII.    NOTICE**

4         Notice of this Objection will be provided to (i) counsel for Mr. Addington, as identified in the

5   Amended Proof of Claim; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara,

6   Esq. and Timothy Laffredi, Esq.); (iii) all counsel and parties receiving electronic notice through the

7   Court's electronic case filing system; and (iv) those persons who have formally appeared in these

8   Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors

9   respectfully submit that no further notice is required.

10         WHEREFORE the Debtors respectfully request entry of an order granting the relief requested

11   herein and such other and further relief as the Court may deem just and appropriate.

12

13   Dated: September 12, 2022                   **KELLER BENVENUTTI KIM LLP**

14

                                       By:      */s/ Thomas B. Rupp*

15                                              Thomas B. Rupp

16                                         *Attorneys for Debtors and Reorganized Debtors*

17

18

19

20

21

22

23

24

25

26

27

28