1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                      -oOo-

4    In Re:                        ) Case No. 19-30088
                                   ) Chapter 11
5    PG&E CORPORATION AND PACIFIC  )
     GAS AND ELECTRIC COMPANY,     ) San Francisco, California
6                                  ) Tuesday, September 13, 2022
                         Debtors.  ) 10:00 AM
7    _____ )
                                     REORGANIZED DEBTORS' SEVENTY-
8                                    NINE OMNIBUS OBJECTION TO
                                     CLAIMS (BOOKS AND RECORDS
9                                    CLAIMS) FILED BY PG&E
                                     CORPORATION [10673]
10
                                     MOTION OF WILLIAM B. ABRAMS
11                                   PURSUANT TO FEDERAL RULE OF
                                     BANKRUPTCY FOR 2004
12                                   EXAMINATION FOR ENTRY OF AN
                                     ORDER AUTHORIZING DISCOVERY
13                                   AND HEARINGS REGARDING THE
                                     ACTS AND CONDUCT OF JAMS
14                                   NEUTRALS GIVEN NEW EVIDENCE.
                                     FILED BY WILLIAM ABRAMS
15                                   [12766]

16              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE DENNIS MONTALI
17            UNITED STATES BANKRUPTCY JUDGE

18   APPEARANCES (All present by video or telephone):
     For the Reorganized          THOMAS B. RUPP, ESQ.
19   Debtors:                     Keller Benvenutti Kim LLP
                                  650 California Street
20                                Suite 1900
                                  San Francisco, CA 94018
21                                (415)469-6723

22   For David P. Addington:      RON OLINER, ESQ.
                                  Duane Morris LLP
23                                1 Market Spear Tower
                                  Suite 2200
24                                San Francisco, CA 94105
                                  (415)957-3000

25

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
1   For Fire Victim Trust and   DAVID J. MOLTON, ESQ.
    Cathy Yanni, in her         Brown Rudnick LLP
2   capacity as the Trustee of  7 Times Square
    the Fire Victim Trust:      New York, NY 10036
3                               (212)209-4800

4   For Fire Claimants Majesti  MATTHEW P. FRENCH, ESQ.
    Mai Bagorio, etc.:          Baum Hedlund Aristei & Goldman PC
5                               10940 Wilshire Boulevard
                                Suite 1600
6                               Los Angeles, CA 90024
                                (310)207-3233
7   Also Appearing:             William B. Abrams, Movant

8

9

10

11

12

13

14

15

16

17

18  Court Recorder:             LORENA PARADA/ANKEY THOMAS
                                United States Bankruptcy Court
19                              450 Golden Gate Avenue
                                San Francisco, CA 94102
20

21  Transcriber:                ELLEN S. KOLMAN
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (973)406-2250
24

    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, SEPTEMBER 13, 2022,

2                              10:00 AM

3                               -oOo-

4        (Call to order of the Court.)

5            THE CLERK:  Court is now in session.  The Honorable

6    Dennis Montali presiding.

7            Calling the matter of PG&E Corporation.  And I will

8    bring in counsel now, Your Honor.

9            THE COURT:  Morning, Mr. Oliner.  Nice to see you.

10   Can you state your appearance, please?

11           MR. OLINER:  Good morning, Your Honor.  Ron Oliner,

12   Dwayne Morris, counsel to Mr. Addington.

13           THE COURT:  Mr. Rupp?

14           MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

15   Keller, Benvenutti Kim on behalf of the reorganized debtors.

16           THE COURT:  So Mr. Rupp, I got fooled into letting you

17   file something at the last minute, but I did read what you

18   filed last evening.

19           Mr. Oliner, what's your response there?  What's your

20   pleasure that -- what we do next?

21           MR. OLINER:  Well, I'm not -- I don't have a lot of

22   pleasure after receiving after hours eighteen pages.  What I

23   would like to do is to push things out.  And let me explain

24   why, I guess compelled or wouldn't agree to just kicking this

25   entire hearing out after I received late, I guess just before

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Labor Day, a request to push out the dates on your calendar.  I

2    may go a little long here so you can just give me the hook if

3    you need to, Your Honor.

4            I got retained in June and contacted Mr. Rupp in early

5    June, long before the new deadline to file the amended claim

6    was filed and tried to see if we could resolve it in a

7    mediation.  I also requested that the debtor turn over their

8    files on the Addington property in Piedmont because of their

9    position that in order to fix the property, we needed to

10   proceed by a PG&E-approved engineering plan.

11           Mr. Rupp has been polite and professional throughout,

12   but came back to me after I requested it again to say that PG&E

13   wouldn't give us their files on our property until we had a

14   contested matter.

15           So I dutifully -- we dutifully filed an amended claim

16   on time, a little early, and sent it to Mr. Rupp who

17   acknowledged receiving it, and then tried to get this thing

18   back into a mediation, because this needs to be solved and it

19   doesn't need to be litigated.

20           After that, some exchanges, although I couldn't get

21   much information, Mr. Rupp's -- the debtors' position was they

22   still wouldn't give us our files until we had a contested

23   matter.  And we don't have a contested matter until they file

24   an objection.

25           And then, as I say, late a week or so ago, I think it

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  was on September 1st, two weeks ago, I got an urgent request to

2  kick out this thing. And so I said, all right. As a

3  professional courtesy, file your objection later if you need

4  to, but I wanted this date on as a holding date. And now I

5  read, and I got it after hours as Your Honor did. I know

6  you're an avid reader of everything that's filed, and I did my

7  best to read it this morning, a filing, which is really in the

8  nature of let's go, let's go. You now -- having shifted the

9  burden, it's now incumbent on you, Mr. Addington, to further

10  explain, et cetera, et cetera.

11      I invoked the rules in any contested matter. And now,

12  since PG&E will not cooperate or give us access to their files

13  on our property, the Rules 9014, the rules to treat this as a

14  contested matter, and if I can't get Mr. Rupp's client to give

15  us their files, I need to engage in discovery.

16      It's sad that we're here, but they won't mediate.

17  They won't give us their files. And now I see a pleading which

18  says we're going to jam you up and you Mr. Oliner, and get to

19  file some supplemental thing in two more weeks time. I'm out

20  of town in the next two weeks, so that doesn't work for me.

21  But that's where we are.

22      I would like this in summation to be put out. I need

23  to engage in discovery because I don't think Mr. Rupp's client

24  is going to cooperate with us in any way, shape, or form. I'm

25  not prepared to set a date to try this. I've tried innumerable

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    claim objections, but this is nowhere near that because of

2    where we are and the way PG&E has treated us.  Thank you, Your

3    Honor.

4            THE COURT:  Mr. Rupp, what's your pleasure?

5            MR. RUPP:  Thank you, Your Honor.

6            I just, again, want to back up from the perspective of

7    the debtors.  This goes back to the hearing on May 10th, where

8    Your Honor allowed Mr. Addington to file an amended claim.  And

9    at the hearing when prompted, Mr. Addington estimated his claim

10   to be about 100,000 dollars.  And again, we don't have to hold

11   him to it.  Your Honor certainly said you would not be holding

12   him to it, but the claim we received was an order of magnitude

13   larger and none of it had to do, really, with -- seemed to have

14   to do with fixing Mr. Addington's property.

15           So from PG&E's perspective and from the perspective, I

16   would say, of anyone trying to settle this, which I am also of

17   that persuasion, I would also like to see this settled, it just

18   seems like we've been moving backwards on this.  And the proof

19   of claim that we have just doesn't give us a whole lot, and it

20   doesn't give us a whole lot from what Mr. Addington had tried

21   to present back in the spring.

22           And it's not that we're philosophically opposed to --

23   against discovery or in favor of jamming anybody, it's just

24   that we want to be on a level playing field here where we know

25   where Mr. Addington wants to prove and what the theory is about

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    liability so that we can prepare for discovery, we can

2    determine what, or discuss with Mr. Oliner what the scope of

3    discovery is reasonable and, if possible, take our own

4    discovery from Mr. Addington.

5            And I do want to --

6            THE COURT:  And that's all fine, but why not share the

7    file then?  I mean, Mr. Addington was a tenacious advocate, but

8    Mr. Oliner's presence as an experienced practitioner seems to

9    me a good result from your point of view, and not to take it --

10   not to criticize Mr. Addington, I don't criticize him.  But

11   here we have an experienced lawyer on the other side who says,

12   I'd like to see the file.  What's wrong with that?

13           MR. RUPP:  Well, Your Honor, I -- the file is --

14           THE COURT:  I've made a ruling that there was no

15   termination of the easement, and I've made a ruling that there

16   was a settlement in whatever year it was in a certain amount,

17   and after Mr. Addington was paid a certain amount so.  Mr.

18   Oliner can't dig himself out of those two positions unless

19   there's some revisiting.

20           So whether he has a right to assert a claim for

21   100,000 or 900,000, if he has a right to assert a claim, it

22   seems to me that you start with show me your file.  And if

23   there's something in the file that might have been different if

24   there hadn't been these prior rulings, then so be it.  But you

25   won those rounds, right?  And no one's going back, no one's

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  asking me to set aside the ruling that I made.  So I guess I'm

2  having trouble understanding why it's constructive to say we're

3  happy to mediate, but we won't show our file to the other side.

4  So you got to get me past that one first.

5          MR. RUPP:  Your Honor, I guess the way I can get past

6  that is just saying that we're entitled to a little bit more as

7  far as what the theory of liability is here.

8          THE COURT:  Well, but you made a comment in your paper

9  that, I guess, technically I agree with that Rule 12(b) doesn't

10  apply.  But Rule 56 applies, and you could file a motion for

11  summary judgment.

12          If you believe that the amended proof of claim doesn't

13  state a claim, file a summary judgment.  Summary judgment is

14  proper on a claim objection.  And if you did that and you said

15  there's no liability, blah, blah, blah, Mr. Oliner would say

16  well, I got to get some more facts, give me your file.  So

17  you'd show him your file.  And then he would, perhaps, oppose

18  the motion for summary judgment, and maybe he'd lose or maybe

19  he'd win.  But the point is the issue would be framed.

20          So you say that we shouldn't give him the file because

21  we want something in return, what do you want in return?

22          MR. RUPP:  I guess, Your Honor, we're -- what we're

23  looking for is the theory of liability here and the specific

24  facts.

25          THE COURT:  But Mr. Rupp, if there's no theory

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    articulated, make a motion for judgment. In other words, if

2    12(b)(6) isn't available, which is what you would do in a

3    traditional adversary proceeding, you'd say there's no state of

4    claim -- doesn't state a claim under 12(b)(6). And of course,

5    as you know, and most lawyers know, half the 12(b)(6) motions

6    end up being treated like summary judgment motions anyway

7    because people bring in facts.

8         So one of the facts you would bring in is Mr.

9    Addington settled this case back in 20-whatever-it-was, and got

10   paid 50,000 bucks. So therefore, he can't complain about what

11   happened in the past.

12        So all -- and all we're doing now is trying to see has

13   he made a case for any additional damages after that

14   settlement, which was what the underpinning of my ruling was.

15   And if he -- your argument is he hasn't proven it, then you're

16   going to get a summary judgment.

17        Anyway -- well, okay. So Mr. Rupp, I won't pin you

18   down any further. Procedurally, what do you want me to do

19   today, because Mr. Oliner wants more time. And I -- this case

20   has taken quite a while, but what would you like me to do?

21        MR. RUPP: Your Honor, again, we -- we're happy to

22   give more time. We're happy to put this out. We don't --

23   setting a trial today or any fixed discovery deadlines is, I

24   would say, premature, and I think Mr. Olinger would agree.

25   But --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Well, there wasn't -- there was a prior

2  mediation that was unsuccessful.  Are you willing to try again?

3  As you know, your firm coordinates a whole panel of other

4  counsel and people available to mediate.  If the parties get

5  together and pick someone from that panel and try to resolve

6  it, fine.  That would seem to be constructive.

7      One of the things that I would wonder is the mediator

8  might say, well, what are the damage claims?  But anyway, do

9  you want to explore that?

10      MR. RUPP:  Your Honor?

11      THE COURT:  Are you prepared to commit and go to that

12  level on the mediation?

13      MR. RUPP:  I'm sorry, Your Honor.  I didn't quite

14  catch that.  What -- what level on the mediation?

15      THE COURT:  No, I said I -- are you -- is the company

16  willing to do for this case what it's done for many others?

17  Again, you've been on the principal lawyer role in many that

18  have gone to mediation.  I can think of over the past couple of

19  years, all the ones that have gone to third-party mediators.

20      And Mr. Oliner, I don't know if you're aware of this,

21  but the company has paid for a mediators from --

22      MR. OLINER:  I am.

23      THE COURT:  -- that it maintains, this is not related

24  to the fire claims, and it's -- but it's ad hoc and it -- some

25  have been successful and some have not.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    And Mr. Rupp, I would assume the company would still

2 be willing to undermine that -- support that effort, right?.

3    MR. RUPP:  You're -- that's right, Your Honor.  I

4 mean, we've enjoyed a lot of success with mediation in other

5 claims.  Right now, I'm not sure if mediation would be a good

6 route at this time based on what's been filed so far.  I mean,

7 we --

8    THE COURT:  Because the mediator would say why haven't

9 you given them your file?

10    MR. RUPP:  Well, we filed a claim objection, Your

11 Honor.  And just the way the scheduling came out, Mr. Oliner

12 did want to have this hearing today.  But we do think we --

13 that Mr. Oliner should have to respond to our objection at some

14 point before we can proceed.  If --

15    THE COURT:  Mr. Rupp, that's not a good enough answer.

16 Because the Addington claim was tossed, because it was four

17 million dollars, because Mr. Addington believed that the

18 easement had been terminated.  And I said, no, I'm sorry, Mr.

19 Addington, that it hasn't been terminated.  But if you had

20 damages that didn't get dealt with because they are post-

21 settlement, prove your claim.  And whether Mr. Addington could

22 have filed a claim for 5 dollars or 100,000, he filed a claim

23 for just under a million.  And you believe that that claim

24 is -- can't even -- you can't even put your arms around it.

25 But that's the claim he filed.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    And so to tell him to amend the claim, that you won't

2    give them access to the file voluntarily is -- it's silly.

3    So I could just say, well, let's go to trial, put on

4    your case.  And Mr. Oliner would probably ask for discovery and

5    you would have to provide.

6    So all I'm getting at is, why don't you just say

7    you'll make the file available and take up with your client

8    whether they agree again to support, perhaps, a new mediator on

9    the scene under the same procedure that has worked before, and

10   we'd take another look at it in thirty days or forty-five days?

11   Maybe there'll be progress.  Maybe there won't.  But I can't --

12   look, I can't tell Mr. Oliner the other side says you don't

13   have a case, but we'll have a trial, well, you have to prove

14   your case.  When he says but I can't prove my case because I

15   can't get access to the files that I'm entitled to under formal

16   discovery.  That's not efficient.

17   MR. OLINER:  I don't -- I just want to add that we

18   previously indicated in writing our willingness, in fact, I

19   suggested it, to go to mediation.  We will maintain that

20   position provided we receive PG&E's files.

21   I've conferred with my client about that.  If there's

22   something there which increasingly feels like there might be

23   that's useful to us to prosecute the claim, then why -- maybe

24   that's the reticence.  But just give us our stuff, because it's

25   far easier for us to see what there is and to go and mediate

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    this in good faith.

2         And Mr. Addington is a lot of things.  He is

3    tenacious, and he also listens to me.  And so I think -- I'm

4    confident that we -- I'm sure we should take a shot at

5    resolving it before I engage in defending SJ and converting it

6    to a long, drawn-out discovery process.

7         PG&E can try to steamroll us.  And they've got the

8    assets, but that's not practical or efficient.

9         THE COURT:  But Mr. Oliner, I have to say --

10        MR. OLINER:  So let's get this to mediation.

11        THE COURT:  Mr. Oliner, I have to say this, though

12   lest I -- lest you make -- think I'm putting Mr. Rupp on the

13   defensive completely.  One of the things that struck me as

14   strange is well, why does Mr. Addington need discovery?  Mr.

15   Addington settled the case four years ago, and claims to have

16   suffered damages since then and he has to prove it.

17        So what will he find in PG&E's files that proves his

18   damages?  Now, come on, one of his damages is his attorneys'

19   fees.  You won't find that in PG&E's file.  Another one is his

20   own time, won't find that in there.  Another one is the loss of

21   value in his property, won't find that in there.  So I'm not

22   sure what in a practical sense you're going to do if you accept

23   that there is a rule in this case that he settled --  he

24   settled four years ago.

25        MR. OLINER:  I'm aware.  I don't know what's in the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   file. I know this, that my client has been warned repeatedly

2   that he has no authority without their approved engineering

3   plan to fix the gradient in his backyard. I don't know what's

4   in the file and Mr. Rupp won't tell me because his client won't

5   let him tell me. So I'm not -- it's not a fishing expedition

6   so much as my trying to get my arms around what my -- what I've

7   got in PG&E's files.

8           Mr. Addington can't landscape or fix this gradient

9   without figuring out what's -- what PG&E requires. What do

10  they know?

11          And another further sideshow is a month or so ago, Mr.

12  Addington received an urgent demand for access to his property

13  by PG&E's vendors. Must absolutely happen tomorrow, which was

14  a Sunday, no alternative date. So I contacted Mr. Rupp, and

15  suddenly that urgent need for PG&E to get on the property went

16  away. I don't know what's going on. I just want to see the

17  file, turn over the file, which shouldn't have anything sexy or

18  exciting in it, at least per Mr. Rupp's implication. We will

19  go to mediation and I will drag Mr. Addington there in good

20  faith to try to solve his claim. That's the way we (audio

21  interference).

22          THE COURT: It seems to me that there's a

23  miscommunication here. Mr. Addington may want to make some

24  corrections on his property, and PG&E may have the right to

25  insist that any such corrections be consistent with its needs,

PG&E Corporation and Pacific Gas and Electric Company

1   but that has nothing to do with this proof of claim.

2          In other words, he might want to build a, you know, a

3   tower there as his choice, and maybe he can do it and maybe he

4   can't.  But that has to do with the nature of the relationship

5   and the easement.  It has nothing to do with his proof of claim

6   in the bankruptcy case.

7          So I think -- I find this to be a confusion between

8   what Mr. Addington may want to do versus what is the basis for

9   him to have a provable claim against PG&E for any damages that

10  he's suffered from.  See the difference?

11         MR. OLINER:  I do, and you may be right, and I'm not

12  going to suggest that you're wrong at the moment.  But --

13         THE COURT:  Well, but the point it is if there were no

14  bankruptcy, if there were no dispute here, and Mr. Addington

15  wanted to do something with his property, whether it's rebuild

16  the tennis court or put in a pool or something, whether he

17  could do it or not is -- has nothing to do with the bankruptcy.

18  It has to do with the nature of the relationship between the

19  two tenements, the dominant tenement, PG&E, and the servient

20  one, Addington here.  And that's a matter of law and has

21  nothing to do with proofs of claim.

22         So I think what I'm trying to avoid here is getting

23  into a fight on a contested matter of a claim objection with

24  what Mr. Addington would like to do, even if it's at his

25  expense.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    All he's entitled to do in this bankruptcy case is to

2    prove up money damages that PG&E owes him for the situation

3    that persists after and since his settlement with them.

4    MR. OLINER: Well, I -- your points are again well

5    taken. I don't know what's in the file. It should be very --

6    this is not rocket science. Give us the file. What

7    engineering studies have you done? I'm focusing post-agreement

8    for those purposes. I just got to have the file, and I want to

9    go to mediation, and I will drag Mr. Addington there. I know

10   he's willing to do so.

11   THE COURT: You said that -- you said that before, and

12   I accept that. But that's not the point. I mean, I --

13   MR. OLINER: Well --

14   THE COURT: Listen, the mediation will be a complete

15   failure if Mr. Addington says here I am, I want ten -- a

16   million dollars, and Mr. Rupp's client says we're ready --

17   prepared to pay you 10,000 dollars. I mean, that's not going

18   to be successful, you know that. So --

19   MR. OLINER: I know that very, very well.

20   THE COURT: Mr. Rupp, it seems to me that -- again,

21   I -- maybe I'm conflating issues and maybe you don't agree with

22   the way I have -- or maybe I should say maybe you are

23   conflating them and I'm separating. But don't you agree that

24   to the extent that Mr. Addington wants to prove his damage

25   claim in this bankruptcy, he does have the right to a certain

of 72

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    kind of discovery as a general matter, right?

2            MR. RUPP:  Your Honor, yes.  Ultimately, if we --

3    we're not expecting anyone to put a trial on without taking the

4    discovery they're entitled to.

5            Again, not to sound like a broken record, but we did

6    state in our claim objection that PG&E has provided an

7    engineering report to Mr. Addington, and it provided the report

8    from the contractor that did the work.  But I think more

9    importantly is -- if there's some discovery to be done, I've

10   been to enough hearings before Your Honor and viewed enough

11   hearings before Your Honor that discovery disputes are not Your

12   Honor's pleasure, and you expect competent counsel to work

13   these issues out.

14           So you know what the -- what keeps troubling me is

15   that we keep using the phrase the file.  And you know, it's --

16   but I understand that's a good enough term for right now.  But,

17   perhaps, Mr. Oliner and I can meet and confer and come to some

18   kind of agreement on what exactly Mr. Addington is looking for

19   and what should be turned over.

20           MR. OLINER:  I'm sure --

21           THE COURT:  But if Mr. Addington wants to do something

22   with his property, is it your view that PG&E doesn't have to

23   provide him whatever it would insist upon be done no matter

24   what?  Again, even if there were no bankruptcy?

25           In other words, if there were no bankruptcy and Mr.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  Addington calls up PG&E and says I want to install a swimming

2  pool on my lot, and PG&E may have a way, under the easement

3  rules, to prohibit him from, or limit his ability to do that.

4  Is that what we're talking about?  Is this a question of a

5  dispute over what Mr. Addington may want to do wholly apart

6  from whether he has a proof of claim for damages?

7       MR. RUPP:  You know, again, Your Honor, I think we're

8  getting a little over our -- over our skis here.  I'm not

9  exactly sure what Mr. Addington wants to do to the property.

10 I'm not a civil engineer.  And we don't -- I don't think we

11 have anyone on this call to know what's safe.

12      What I do know is that these towers are important to

13 PG&E and PG&E has an easement for them and that comes first,

14 that those towers need to remain upright and remain in good

15 condition and Mr. Addington's desires for his lawn comes

16 second.

17      THE COURT:  No, that's true.  Again, I don't think

18 there's any -- that's not the issue and that's my point,

19 though.

20      The only relevance, it seems to me, to any of this, is

21 what -- does Mr. Addington have to prove his claim?  And if Mr.

22 Addington threw in the towel and withdrew his proof of claim,

23 that would be the end of this Court and your personal and maybe

24 Mr. Oliner's involvement.  But the next day, if Mr. Addington

25 wanted to do something on the property, he'd have to -- he'd

PG&E Corporation and Pacific Gas and Electric Company

1  have to comply with whatever rules pertain to the servient

2  tenants' rights under the easement. So -- and that's what I'm

3  trying to make sure we don't lose focus on. And I'm asking Mr.

4  Oliner to focus on it too.

5          What Mr. Addington wants to happen on his property is

6  not the same as what Mr. Addington is entitled to as

7  compensation for a damage claim that he is asserting against

8  PG&E. At least I don't think there -- they overlap. I think

9  they are two separate issues.

10          I'll tell you what, I will just remind you again, Mr.

11  Rupp, you're correct; I hate discovery disputes. I don't know

12  of a single federal judge who loves -- likes them, but I will

13  put this over one more time, a month or so, and expect as a

14  consensual matter that there'll be an exchange of information.

15          If Mr. Oliner is frustrated and believes that he

16  should be getting more than you're willing to make available to

17  him, then I guess that will require a more formal motion,

18  because if he wants stuff that is irrelevant to the proof of

19  claim dispute, and he's not going to get it.

20          But the fact of the matter is, I don't have much

21  choice but to set in motion the claims resolution.

22          So there's a claim for just under a million dollars

23  that's a hundred percent contested. And Mr. Oliner and his

24  client have the burden of proof, and they have to be put to

25  that proof. But traditional discovery rules say they can have

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  some access to the evidence before they are required to do it.

2  And PG&E in turn, can file a motion for summary

3  judgment to say on this record, there is no liability for the

4  following reasons, A, B, C.  And if PG&E wins that argument,

5  they'll be done with this dispute and -- but in the meantime

6  Mr. Addington and his counsel should at least have access to

7  the information, whatever information is that's relevant to

8  resolving that dispute.  And if it's more than that that he

9  wants because of his own desires to do something on the

10  property, because it is his property, no question about that,

11  then to the extent that PG&E's willing to cooperate and do so

12  provide it consensually, it may facilitate a consensual

13  resolution through a mediation process.

14  So I will assume that PG&E, if it wants to, will make

15  one of the panel mediators available at its expense the way

16  it's done otherwise.  And Mr. Addington and his counsel can

17  take advantage of that process.  But alternatively, if

18  there's --- if the discovery or the informal discovery becomes

19  unworkable, then I think the burden will be on Mr. Oliner to

20  initiate some formal discovery.

21  And I'll just put this over -- Mr. Oliner, you say

22  you're going to be away for two weeks?

23  MR. OLINER:  I'm going to be in New York, and Eugene,

24  Oregon for a football game in the next two weeks.

25  THE COURT:  You might consider going to South Bend,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  Indiana and watch Notre Dame beat Cal next Saturday.  In the

2  meantime --

3          MR. OLINER:  Does Notre Dame --

4          MR. RUPP:  Your Honor --

5          MR. OLINER:  -- have a football team?

6          THE COURT:  Huh?  What, Mr. Rupp?

7          MR. RUPP:  Your Honor, you've been hard enough on me

8  already today.  I think that was undeserved.

9          THE COURT:  I get it.

10          MR. OLINER:  Your Honor, the -- that's terrific.  I

11  think your comments are guiding us.  Mr. Rupp and I have a good

12  rapport.  I'm a little mad at his client, but that's just how I

13  am.

14          I will proceed in good faith in the effort to get what

15  we've called the file, and Mr. Rupp correctly calls it his

16  stuff that's relevant to the claim and try to resolve it that

17  way.

18          I don't intend to proceed with formal discovery before

19  this to-be-set-next hearing.  But if we can't get what we need

20  and we're still fighting about basics there, that's what I'm

21  going to be talking about at the next hearing.

22          THE COURT:  Yeah, but the point is, if you're going to

23  be out of town for a good part of two weeks, then I want you to

24  be productively back on duty here to deal with these matters --

25          MR. OLINER:  Yes.

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  -- and so I don't want to have a hearing

2     two days after your schedule lets you back.

3          So Ms. Parada, what are our -- what's our PG&E date

4     out about a month?  Mr. Rupp probably knows the dates, but I

5     don't know.

6          MR. RUPP:  I believe it's the 11th, Your Honor.

7          THE CLERK:  Yes.  That's the only date available in

8     October.

9          THE COURT:  What's the next one after that?

10         THE CLERK:  That would be sometime in November.

11    November 2nd, 15th, and 30th.

12         THE COURT:  Mr. Oliner, November --

13         MR. OLINER:  November 2 is fine, Your Honor.  I'm

14    already in court on the 11th in another case.  So November 2

15    would be terrific.  And that's plenty of time for Mr. Rupp and

16    I to try to get -- be on the same page.

17         THE COURT:  Okay.  But gentlemen, on November 2nd, if

18    there hasn't been a resolution or either a resolution as to the

19    procedure, like scheduling a mediation or scheduling some

20    discovery, I'm going to set a schedule for either trial on the

21    contested claim or any motion that Mr. Rupp or either side

22    wants to make that might be dispositive.

23         And we won't call it a 12(b)(6) motion, because it

24    isn't.  It could be a summary judgment motion.  But I'll wish

25    you good luck in trying to make some progress.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    So I'm continuing the Addington claim objection to

2    November 2nd at 10 o'clock and I'm not going to fix any

3    deadlines.  I'll assume that you'll file some sort of a joint

4    status conference before that, but I'm not going to fix

5    anything that's required.  Okay?

6    MR. RUPP:  We will.

7    MR. OLINER:  Thank you very much for your time today,

8    Your Honor.

9    MR. RUPP:  Thank you, Your Honor.

10    THE COURT:  Thank you, Mr. Oliner.

11    MR. RUPP:  Before we quit, I did want to repay the

12    compliment from Mr. Oliner earlier and thank him for agreeing

13    to the extension and for his professionalism.

14    THE COURT:  Yeah.  Okay, great.  And are you staying

15    on for the next matter, Mr. Rupp, or is that someone else?

16    MR. RUPP:  I will retire to the gallery, Your Honor,

17    but --

18    THE COURT:  Okay.

19    MR. RUPP:  -- some of my co-counsel may be listening

20    in as well and may wish to be heard.

21    THE COURT:  Okay.  Thank you very much.

22    MR. RUPP:  Thank you.

23    THE COURT:  We'll proceed with Mr. Abrams' matter.

24    All right.  Good morning, Mr. Abrams.  Please state

25    your appearance, please.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. ABRAMS:  Good morning, Your Honor.  Will Abrams.

2          THE COURT:  Ms. Parada, who is appearing for the Fire

3    Trustee today?

4          THE CLERK:  Mr. Molton is joining now, Your Honor.  He

5    raised a hand.

6          THE COURT:  Okay.  Is Mr. -- Ms. Parada, is there

7    anyone else who has asked to be heard on this matter today?

8          THE CLERK:  Mr. Matthew French has raised a hand.

9    Would you like me to bring him in, Your Honor?

10          THE COURT:  I'm sorry.  What's the person's name?

11          THE CLERK:  Matthew French.

12          THE COURT:  Yes.  Okay.

13          All right.  Mr. Molton, would you state your

14    appearance, please?  Mr. Molton, are you there?  I can't hear

15    you.  Nope, still can't hear you.

16          Mr. French, do you wish to be heard?

17          MR. FRENCH:  Sure, Your Honor.  Matthew French for

18    creditors Majesti Mai Bagorio, et al.  I joined Mr. Abrams'

19    motion.

20          THE COURT:  Oh, okay.  Thank you, Mr. French.

21          Mr. Molton, until I can hear you, I can't do much.

22          Ms. Parada, you can't hear him, can you?

23          THE CLERK:  I cannot, Your Honor.

24          THE COURT:  Mr. Molton, I -- you got a -- you've got

25    some sort of a muting thing on your microphone.  You want to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1     log out and come back in again?  All right.  Go ahead and do

2     that.  We'll just wait.

3         (Pause.)

4             MR. MOLTON:  Can you hear me now, Your Honor?

5             THE COURT:  There you go.  Good morning, Mr. Molton.

6             MR. MOLTON:  I'm so sorry, Judge.  I had to get off of

7     another machine and onto my Apple.  So I don't want to give

8     them a another thumbs up, but they always seem to work.

9             THE COURT:  Okay.  Just state your appearance for the

10    record.

11            MR. MOLTON:  Your Honor, David Molton, Brown Rudnick

12    LLP, for the Fire Victim Trust and the Fire Victim Trustee

13    Cathy Yanni, in that capacity.

14            THE COURT:  So when Mr. Abrams filed this motion, his

15    prior motion that was directed more specifically to Justice

16    Trotter and the Fire Trust, I set a preliminary hearing and

17    didn't ask for a response from you.  When I looked at this

18    motion, which we'll call his JAMS motion, for lack of a better

19    term, it was much broader in scope, and I frankly wasn't quite

20    clear whether and who would be respondents on the motion.  So

21    I, simply adopted the same procedure to kind of let's find out

22    if people want to be heard on this.

23            Well, I did expect the Fire Trustee as their counsel

24    now has appeared, and I -- and to some extent, that's what I

25    wanted too.  And now I've come to realize that it's not even

of 72
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   clear who might be respondents on this motion.

2           And I don't want to turn this into a debate with Mr.

3   Abrams, and I want to say that one of the things that I need to

4   do is to figure out who are the likely respondents on this

5   motion and what did they want to say.

6           So Mr. Molton, what I'd like to ask you if you have

7   any indication or clue other than your client, Ms. Yanni -- and

8   I don't know whether you're going to be acting on behalf of

9   Justice Trotter also -- but are you aware of people or parties

10  other than you and your client who are going to want to be

11  opposing this or heard on this motion?

12          MR. MOLTON:  Judge, I had some remarks, and I was

13  going to go into that very point because, as Your Honor knows

14  from reading Mr. Abrams' motion, most of it is directed to

15  matters that preceded the Trust or other cases that have

16  nothing to do with the Trust.

17          He mentions a lot of names in there, Your Honor,

18  including in addition to former trustee and former Justice

19  Trotter and Cathy Yanni, our present trustee, he mentions Mr.

20  Skikos, a member of the TOC.  He mentions Judge Newsome, who is

21  a court-appointed mediator in this case.  Jay Gandhi, another

22  mediator in this case.  Both of their mediations that Mr.

23  Abrams referred to, of course, concern issues that preceded the

24  Trust.

25          He mentions a number of people that I don't know of,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    but arguably, according to Mr. Abrams, are JAMS panelists:

2    retired Judge Carvill, retired Judge Gallagher, Ms. Gillette,

3    retired Judge Kawaichi, Judge Pichon, Viggo Boserup who is the

4    appeals officer for -- in our appeals regime under our claims

5    procedure, and JAMS in full.

6         And one of the things, Your Honor, I was going to ask

7    is it's our feeling, Your Honor, that based on the fact that we

8    don't believe there's any good cause to proceed for various

9    reasons, including the fact that all we have are allegations

10   and innuendo based on newspaper articles and whatnot, and I can

11   go into some remarks on that as well.  But at the very least,

12   Your Honor, notice and opportunity to be heard should be given

13   to anyone impacted by Mr. Abrams' request for discovery.

14        Mr. Abrams, as Your Honor would know in his papers,

15   even defines this request as a very broad request.  And if Your

16   Honor looks at his proposed discovery, which includes lots of

17   interrogatories and document requests that go well beyond the

18   people I represent or the entities I represent, I think it only

19   fair, Your Honor, that this Court give those folks notice and

20   opportunity.

21        I do note, Your Honor, that in doing what you did,

22   which is exactly what you did the prior time, you asked for us

23   to come forward, meaning the Trust, and be prepared to indicate

24   how and when it, us, the Trust intends to respond or otherwise

25   deal with the motion.  And for folks who may be mentioned in

PG&E Corporation and Pacific Gas and Electric Company

1  Mr. Abrams' pleadings, we're reading Your Honor's directive, I

2  don't think that gave them clear indication that they were

3  expected either to be here today or to have anything on the

4  record.  Indeed, Your Honor in Your Honor's order, asks us not

5  to file anything, which we didn't.

6  So my view, Judge, is that at the very least, clearly

7  that those folk who are mentioned or impacted by Mr. Abrams'

8  requests be given an opportunity to come in.

9  I don't know, Judge, and I can't tell you right now

10  whether they will or won't, but certainly they weren't expected

11  to, based on the pleadings to date, and they should be given

12  that opportunity.  So I hope that answers your question.

13  THE COURT:  Well, no, it does.  Can you clarify

14  whether you speak today for Justice Trotter also or --

15  MR. MOLTON:  No, Judge.  I -- one of the things that I

16  wanted to say in my opening remark is I'm here for the Fire

17  Victim Trustee, Cathy Yanni in her capacity as such, as well as

18  for the Fire Victim Trust.

19  THE COURT:  Right.

20  MR. MOLTON:  The allegations that have been made

21  against Justice Trotter, which were derived, I understand, from

22  a Los Angeles Times article, concern events and issues that

23  precede the Trust.  So at the present time, I am not here for

24  him with respect to those issues.

25  THE COURT:  Okay.  But I'm not surprised at your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    response, but at least that focuses the question at the minimum

2    Justice Trotter, personally, or in his former capacity, may be

3    considered a respondent, and he hasn't been noticed.  And Ms.

4    Yanni, of course, in her capacity as the current trustee and

5    her counsel on that trust are.  And it seems to me that all the

6    other people that you've identified -- and I believe there's at

7    least one other person you didn't mention who was a former

8    judge who was actually appointed, I believe that's Judge

9    James --

10         MR. MOLTON:  Yes, I forgot Judge James.

11         THE COURT:  -- I actually issued an order during the

12   case to authorize her role, as I did with Judge Newsom.  But

13   whether either of those or any other person should even be a

14   respondent is one of the uncertainties in my mind about this

15   motion.  And I, as I say, I didn't insist that they be

16   respond -- served or response, and I didn't know whether they

17   would respond or not.  And my instincts told me maybe someone

18   would be responding by saying, I oppose this.

19         When I saw Mr. French's name, I didn't recognize his

20   name, and I thought, well, there is at least one lawyer who

21   might be here for one of the respondents.  Obviously, Mr.

22   French, who stated his appearance, is not in that camp.  He's

23   in the roll call in the Abrams' camp, I'm sure.  And Mr.

24   French, I'll give you a chance to speak in a moment.

25         I'm just saying that unlike the original, what I'll

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    call the original Abrams' discovery motion, where there was a

2    very clear focus on who the respondent would be, I nevertheless

3    saw fit to depart from the normal process in Rule 2004.

4           I mean, 2004 is, to the extent that they -- that rule

5    is available and we don't have to go there again, I've made a

6    decision previously about that.  And there's a whole -- there's

7    a whole body of practice in our court in this district on how

8    2004 requests are processed.  But there's never been a case of

9    this nature where Mr. Abrams in his role as -- whatever his

10   role is, is bringing something that is broader than in my

11   experience, has ever been dealt with before.

12          So -- but Mr. Molton, before I conclude my comments to

13   you, I still believe it's appropriate for you to file a formal

14   response, and I want to move this more quickly than I, perhaps,

15   did in the other time -- the other motion.  So make me a

16   proposal.  I assume you can respond within a reasonably short

17   period of time.

18          MR. MOLTON:  Judge, I was ready for that, Your Honor,

19   and I've got a date to suggest.  And that date, Your Honor, is

20   October 3rd.  And that's a date also, as Your Honor may recall,

21   that is the disclosure date of the director and officer --

22          THE COURT:  Right.

23          MR. MOLTON:  -- settlement agreement that was the

24   subject of the joint motion by PG&E and the Fire Victim Trust.

25          THE COURT:  Well, yes.  And you did say that's coming.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    And so that's still on track.  And just as an aside, is that

2    going to be noticed out, or is it going to be on a scream or

3    die?  What will be the mechanism to bring that before the

4    Court?

5              MR. MOLTON:  Judge, I'm going to have to look at Your

6    Honor's order today for that application.  I think we -- I

7    think that the -- that is the date by which the settlement will

8    be disclosed.  And I think PG&E -- and I don't know if they're

9    in the room or listening, but I think that they need to be

10   moving the Court with respect to certain aspects of that

11   settlement agreement or issues related to.  And --

12             THE COURT:  And I'm assuming --

13             MR. MOLTON:  Yes.

14             THE COURT:  -- yes, Mr. Molton, I'm assuming that that

15   it's a complex settlement that involves the district court

16   litigation, the state court litigation by the trustee, the

17   class plaintiffs, the debtor, the Fire Trustee, and lots of

18   other folks.  And I don't -- and Mr. Abrams or any other party

19   in the case, whether a fire claimant or a nonfire claimant,

20   might want to be heard.  I don't think that the approval and

21   the consummation of that settlement should be at all involved

22   with the current discovery requests that are done here.  And

23   just a coincidence that you're proposing a date that coincides

24   with --

25             MR. MOLTON:  Yes.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  -- that date.  But beyond that's the

2  only --

3    MR. MOLTON:  There's no interconnection.  And I'm not

4  asking you to make any, Your Honor.

5    THE COURT:  Okay.

6    MR. MOLTON:  We're just using that as a useful date

7  for getting a response in here, allowing, as I suggested, after

8  proper notice, other interested parties should they want to, to

9  file a response as well as on a very -- on a separate matter,

10  wholly independent of this, there will be other activity as

11  well.

12    THE COURT:  Mr. Abrams, I'm inclined to give the Fire

13  Trustee, Mr. Molton, for his client, the Trust and the current

14  trustee, a date of October 3rd to respond.  And as to all these

15  other people, from Justice Trotter to JAMS as an institution,

16  to the individuals, there's nothing procedurally on the line.

17    You haven't even demonstrated any kind of formal

18  notice to those parties.  And I'm not inclined to do anything

19  except decide on your motion and the trustee's response what to

20  do next.

21    Now, what to do next might be a reply from you.  It

22  might be a hearing.  It might be an order to give notice to

23  others.  I simply want to see what happens on October 3rd, and

24  that's what I'm inclined to do, and I'll give you a chance to

25  respond.  But my inclination is to let Mr. Molton have a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    response date.  Whether it should have been a little later or a

2    little earlier, it's not a big deal, it's not very long from

3    now, and take the matter under advisement and decide what to do

4    then.  So go ahead and respond if you wish to.

5         MR. ABRAMS:  Thank you, Your Honor.

6         Certainly, I agree with what Your Honor stated and

7    what Mr. Molton reiterated that getting this done sooner rather

8    than later is very important, certainly very important to

9    victims.  And I just wanted to make sure that the Court

10   understood that I did follow as best as I could, the procedures

11   and noticed everyone on the service list who was --

12        THE COURT:  Did you serve any of them?  Did you serve

13   any of them by original service?

14        MR. ABRAMS:  I served all of them via email.

15        THE COURT:  I asked you if you served any of them by

16   original service.  I guess the answer is no.

17        MR. ABRAMS:  The answer is no, Your Honor, and I  --

18   and look, Your Honor knows that I am not a practicing attorney,

19   and I'm following the procedures as best I can.  If the Court

20   is correcting me, I stand corrected and I will certainly

21   provide written notice via certified mail to whomever I should

22   be providing that to.

23        I think it is a correct point that because of the

24   pattern associated with JAMS and Justice Trotter that's been

25   demonstrated, of course the parties who are associated with

PG&E Corporation and Pacific Gas and Electric Company

1   that are broader than they might have been.  But that is not a

2   function of me putting forward a motion.  That's a function of

3   the pattern that's been demonstrated that is before the Court.

4             THE COURT:  Mr. Abrams?

5             MR. ABRAMS:  For me as a messenger --

6             THE COURT:  Mr. Abrams?  Mr. Abrams, excuse me.  What

7   you call a pattern that has been demonstrated, I call a

8   newspaper report with no foundation.  So you may assume that

9   all those other judges, and that JAMS itself as an entity and

10  Justice Trotter and Ms. Yanni have all done bad things, but I

11  make no determination and no pattern has been established

12  except your reporting of what the LA Times reported about a

13  major catastrophe and scandal in another unrelated bankruptcy.

14            MR. ABRAMS:  Understood, Your Honor.  And look --

15            THE COURT:  It's that simple.

16            MR. ABRAMS:  And look, Your Honor, and I made it very

17  clear in my motion that I am not accusing anyone of a crime.

18  But the basis here, as I read it, is good cause.  And I'm

19  certainly not reliant upon any outside reporting.  I'm

20  demonstrating a pattern that says, yes, there's good cause.

21            Your Honor, if this was -- in a lot of ways, the way

22  that I see the role of the trustee is for providing security

23  for the Trust, making sure that the Trust has integrity.

24            And so if there was an example of a bank that -- that

25  somebody had security over that bank, and it turned out that

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  some other parties were taking money from that bank, and then

2  there was a pattern of money being taken out of banks, and then

3  we're in charge of -- and then is in charge of a new bank for

4  13.5 billion dollars, and all the money isn't there, there

5  would, of course, be good cause for asking questions about are

6  they taking prudent steps for security of that bank?

7       And so similarly, I certainly feel that there is good

8  cause in this case to be asking is the current and past trustee

9  and JAMS in general providing security for the Trust, or have

10  they been operating in ways that are not in good faith?  And I

11  think that that's just good cause.

12       I'm not -- again, I am not accusing anyone of a crime.

13  I'm not reliant on the press.  I am providing information to

14  the Court that wasn't before the Court before to demonstrate

15  good cause for reasonable discovery.

16       THE COURT:  Okay.  Thank you.

17       Mr. French, do you wish to be heard?

18       MR. FRENCH:  Morning, Your Honor.

19       Fundamentally, I agree with Mr. Abrams as to good

20  cause.  I think that this reported pattern of behavior is

21  sufficient.

22       THE COURT:  But what you see as a pattern of behavior?

23       MR. FRENCH:  Well --

24       THE COURT:  Let's assume the Girardi case is a major

25  disaster for lots of people in the Girardi world.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MR. FRENCH:  Certainly.

2      THE COURT:  So where is there a pattern beyond that?

3      MR. FRENCH:  Well, the article does not implicate

4  Justice Trotter to be clear and neither am I.  But it does

5  indicate that he was trustee of two different bankruptcy trusts

6  from which Mr. Girardi misappropriated funds.  And to my mind

7  that is sufficient good cause to just make sure that we don't

8  have any of the same issues here.

9      THE COURT:  Okay.

10      MR. FRENCH:  I agree with Your Honor that the breadth

11  of the motion is perhaps not as narrow as is necessary to

12  answer that question.  To my mind, though, in terms of notice,

13  which I agree there's a problem with notice, is that the first

14  step would be the Trust sort of making an accounting for who

15  has a contractual relationship with the Trust that's related to

16  JAMS or what contracts exist between the Trust and JAMS, and

17  that that would be a starting point, in which case the notice

18  could be issued and we could sort of set the parameters for,

19  perhaps, different categories of people as to what would be

20  discoverable or not.

21      THE COURT:  Well, I can ask Mr. Molton if there is any

22  contract between the Trust and JAMS, and he probably could

23  answer that in one syllable, yes or no, probably.  And I'm not

24  going to ask him that now unless he wants to volunteer it.  But

25  I mean, the pattern, what if he says no, first of all, and

PG&E Corporation and Pacific Gas and Electric Company

1    let's assume that Mr. Molton isn't going to make it up, isn't

2    that the end of the inquiry?  I mean, what's the next step if

3    on a final formal basis I ask Mr. Molton does the Trust have a

4    contract with JAMS and he says no.  Then what?  What's the next

5    question?

6            MR. FRENCH:  Disclosure of prior relationships among

7    Trust employees with JAMS.

8            THE COURT:  I mean, like what, for example?  Somebody

9    that's a data processor who used to work as a clerk at JAMS?  I

10   mean, if you want me to know if there's any member of the --

11   well, first of all, there is only one trustee.  The fact that

12   Ms. Yanni may have done work through JAMS sometime in the past,

13   I don't know what the relationship of any JAMS entity is.  I'm

14   assuming, but I don't know this personally, that they're

15   independent contractors.  I mean, it's my experience with real

16   estate brokers and, perhaps, I think mediators elsewhere, I

17   believe generally they are independent contractors.

18           So if I'm an independent contractor, or if you, Mr.

19   French, are -- if you go do a gig through JAMS and you're an

20   independent contractor, does that mean, therefore, JAMS is

21   implicated in any mischief that you might be involved with?

22   Again, I'm going to assume the answer is, of course, it

23   doesn't.  The question is what to do about it in the context of

24   a 2004 exam.

25           I'll accept Mr. Abrams' goal here is to -- and you're

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    sharing this notion of good cause.  I'm still going to do it in

2    little steps.

3          Mr. Abrams, I'm not directing, in fact, I do not

4    expect you to go out and serve a bunch of entities or former

5    judges or retired judges or anyone else with something in the

6    next couple weeks.  I'm going to let Mr. Molton file a response

7    by the date he said, and then I'm going to decide what to do.

8    And I may decide that, perhaps, Justice Trotter should be

9    expected to respond as the former trustee.  But that doesn't

10   mean that I'm going to say, therefore, JAMS as an entity --

11   again, what does it mean to say JAMS as a corporate entity if

12   some other person or retired judge or a lawyer has had a

13   relationship with JAMS?  Does that implicate JAMS or not?

14         This is Mr. Abrams trying to protect his interest as a

15   claimant in this bankruptcy case.  It is not the chief justice

16   of the California Supreme Court deciding that the legislature

17   ought to fix the world of private judging.  It is deciding

18   whether the interests of the Fire Victims Trust, which is the

19   goal of this proceeding, are in any kind of jeopardy or need to

20   be dug into more thoroughly than has happened so far.

21         And I'm not prepared at this point to make a decision

22   on it, but I'm just raising the question is that -- well, let

23   me say this.

24         Mr. Molton, I believe it would be appropriate when you

25   file your response to at least answer that question through Ms.

(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corporation and Pacific Gas and Electric Company

1    Yanni, and I do think it's appropriate for you at least to, in

2    your written response, to indicate -- well, I'm going to

3    assume -- I assume that your response will not be on behalf of

4    Justice Trotter personally or as a former trustee, and that

5    until he's directed to respond -- and I won't expect him to --

6    but the fact is, I might give you a heads-up.  I might be

7    inclined to ask Justice Trotter or direct Justice Trotter to

8    respond that I think it is only Justice Trotter because he is

9    the only prior trustee in this trust.  We have a prior trustee

10   and an existing trustee, and the existing trustee is

11   represented in her capacity as trustee through counsel.

12            And I would say, Mr. Molton, if Justice Trotter or any

13   counsel for him were inclined to file a response by the same

14   deadline, that might be constructive, but I'm not going to

15   order it at this point.  I'll just leave it as an open

16   question.

17            So I'm going to expect a response by the Fire Victim

18   Trustee through Mr. Molton by October 3rd, and the matter is

19   going to stand submitted at that point.  If I want further

20   briefing from Mr. Abrams or from anyone else, I will so advise

21   the parties after I've considered the response.

22            Any questions, Mr. Abrams?

23            MR. ABRAMS:  Yes, Your Honor.  I did have one

24   question.

25            I had three other points of order that I was hoping to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   bring before the Court.  The first just a clarification, Your

2   Honor.  What is clear is that these representatives of JAMS are

3   also shareholders.

4          THE COURT:  No, it's not clear.  That's not clear to

5   me.  If it's clear to you, provide some competent evidence that

6   it's true.

7          MR. ABRAMS:  So the competent evidence is that from

8   Justice Trotter's own mouth, he said he's still a shareholder

9   in JAMS.

10         THE COURT:  Okay.  That's one person.

11         MR. ABRAMS:  But again, it's --

12         THE COURT:  Mr. Abrams, that's one person.  You

13  haven't named anyone else who's a shareholder.

14         MR. ABRAMS:  Absolutely.  Which is why I think it's

15  good cause and certainly appropriate to ask if Justice Trotter

16  is a shareholder, wouldn't the chairman of the board, Mr. --

17  who's now the appeals coordinator, also be a shareholder?

18         THE COURT:  Okay.  That's a fair question.

19         MR. ABRAMS:  Who's the others?  And so it's just good

20  cause to ask the question.  If it turns out and they say, no,

21  we're not shareholders, then I agree with Your Honor.  If they

22  say we are shareholders, then of course, the question is to

23  what degree are they acting as shareholders to try to increase

24  the corporation's assets, and to what degree are they acting on

25  behalf of victims and other parties that they represent within

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   the case?

2          THE COURT:  Mr. Abrams, that's a fair point, and I

3   believe if Mr. Trot -- Justice Trotter has -- and I think you

4   have quoted as his saying, he is a shareholder, and at that

5   point, I'll take that as in the record somewhere, and I've

6   already asked that Justice Trotter be prepared to respond, if

7   he is so inclined, and if not, I may choose to direct that he

8   do so.  I'm not going to require that of anyone else at this

9   point.

10          MR. ABRAMS:  I --

11          THE COURT:  Again, I'm -- Mr. Abrams, so you

12  understand, to me, it's fair game perhaps to ask of conduct of

13  the trustee when he was the trustee and therefore prior --

14  therefore, he, as the prior trustee -- all these other people,

15  I have no evidence at this point about it, and I'm not going to

16  turn this into an evidentiary point at this point.

17          What's the second question you -- you had three points

18  of order.

19          MR. ABRAMS:  Sure.  The second point, Your Honor, is

20  that I appreciate that we're trying to put this, perhaps, on a

21  faster track to get things filed, but I just wanted to

22  understand because what's been happening recently regarding the

23  motions for discovery is that there's been a very fast

24  expectation from the trustee that their motions to be quickly

25  decided upon and then fast tracked, and then when a motion is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   put forward on discovery for me, that that is then provided a

2   very long time, and it seems that, perhaps, that's an effort of

3   the trustee, and perhaps, now the debtor to be able to push

4   this off as long as possible so that none of this information

5   comes out and impacts the case.

6           So I just ask in future -- maybe some of this is

7   because I'm unaware as a pro se claimant, but that they put --

8   that the trustee puts a response deadline so that myself or

9   other victims or other parties that would want to respond and

10  weigh in to provide the Court with more context have the

11  opportunity to do so.  So that's my --

12          THE COURT:  Mr. Abrams, I'm the one that makes the

13  rules on these deadlines.  I gave you an opportunity to respond

14  to your first motion.  I did not -- and to the extent that you

15  are upset that I didn't give you a response on the motions to

16  seal, that was my decision.  It was not the trustee's secret

17  plan to cut you off, or the debtor's.

18          I know you believe, perhaps, the right to respond is a

19  denial of due process.  I don't believe that's true.  Lots of

20  courts around this land don't even give moving parties time to

21  respond.  Our district generally does, but there is no

22  Constitutional right to a hearing or to even a response at this

23  point.  So to the extent that you feel wronged that certain

24  things like decisions on sealing were decided quickly, blame

25  me.  Don't blame Mr. Molton or the trustee, and if I believe

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    it's necessary to give you an opportunity to respond to what

2    Mr. Molton files, I will do so, and if I disagree, then you can

3    blame me if I don't give you that opportunity.

4          MR. ABRAMS:  I appreciate it, Your Honor.  It's not

5    about blame.  I just wanted to make that point, but I

6    appreciate Your Honor's context, and I certainly appreciate

7    that and will follow it.

8          THE COURT:  Mr. Abrams --

9          MR. ABRAMS:  I just --

10         THE COURT:  Mr. Abrams, you're very verbose and

11   prolix, and you articulate and express yourself extremely well,

12   and as the old saying, if you can't say it in your opening

13   brief, you don't say it.  So your briefs are thorough, and it

14   doesn't follow that you therefore must therefore reply to

15   everything.  One of the things that drives me crazy about

16   lawyers is they say the same thing in their reply that they

17   said in their opening brief.  If you did that, I'd run out of

18   paper.

19         MR. ABRAMS:  Understood.  And that's not my goal, and

20   believe me, as individual, I certainly want to cut down on my

21   workload, not add to it, but again, it's just in contrast to

22   the larger length of time that's given, but I understood.  I

23   take Your Honor's point.

24         I did have, again, two other just minor points that I

25   wanted to make sure I brought up.  One, Your Honor, is that I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    just want to make clear because what's been happening is with

2    the last preliminary hearing was that there was a preliminary

3    hearing where it was stated that I do not have the opportunity

4    to argue my case in the preliminary hearing, which I

5    understand, but then after the preliminary hearing, it was

6    stated by both Mr. Molton and within the Court order that I was

7    given the opportunity to argue my case, which I wasn't, and I

8    just want to make sure that I understand -- and this is for my

9    own understanding, Your Honor, that I understand that this is a

10   preliminary hearing, not to argue my case and that Your Honor

11   will decide if I'm given an opportunity to argue my case, but I

12   just don't want to have it be the case where I'm given a

13   preliminary hearing where I can't argue my case, and then later

14   parties are able to state, well, I had my preliminary hearing,

15   and I was able to argue fully my case, which is -- which isn't

16   (indiscernible)--

17          THE COURT:  We're getting hung up on labels.  You made

18   a motion.  I chose to have a preliminary hearing.  I could have

19   simply directed Mr. Molton to respond and then decide it.  I

20   chose because of the history, frankly, the history of your

21   earlier motion, but now with the incredible breadth of this

22   motion, I didn't want to have JAMS or Judges X, Y, and Z and

23   all the other people you named feel that they had to do

24   something under a procedure that is almost unprecedented.  You

25   have decided to file a thing called your 2004 motion and name

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    all these people who have nothing to do with the Court in a

2    technical sense, in a sense of active parties and didn't even

3    serve them correctly.

4         So I was not about to start to put out rules that

5    says, Judge So and So, whether it be Judge Newsome or Judge

6    James or Judge -- any one of the other people that Mr. Molton

7    named have to respond because I don't know that they have to

8    respond.  So I made the rules because of the unusual procedure

9    that you took.  And Mr. Abrams, that goes to the very heart of

10   it, whether there's even proper to be using Rule 2004 in this

11   context the way you have tried -- wished to do it on what we'll

12   call the JAMS motion, much different, in my opinion, from the

13   prior motion that was focused and directed or at least in the

14   way that I dealt with it with the fire trustee.  So --

15        MR. ABRAMS:  I'm just -- Your Honor, I just --

16        THE COURT:  I will leave it with that.  Go ahead with

17   your final point.  You had one more point.

18        MR. ABRAMS:  Thank you, Your Honor.  I just, the last

19   point, Your Honor, is that I want to make sure that it is --

20   and that I'm following this correctly, is that there was a

21   protective order that was modified by the trustee, and that's

22   docket 8662, and within that, they really have, in addition to

23   their exculpations and other protections that they negotiated,

24   have a protective order to make sure that any discovery that

25   comes out cannot be used, and I certainly would look for a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   modification to that.

2          Certainly, I've stated and I believe and I hope that

3   there's nothing here that reveals bad-faith actions, but if

4   there are things that come out that do reveal bad-faith

5   actions, I don't want to have a prior negotiated protective

6   order precluding remedies that the Court may want to take or

7   other courts may want to take, and so I would just ask that the

8   Court consider a modification to that order and to whatever

9   degree I need to research that and figure out how to do it, I

10  will, but I just wanted to bring that point up as well.

11         THE COURT:  Mr. Abrams, as you know, there are, what,

12  13,000 items on this docket and counting, and I don't remember

13  docket number 8662, but if it was a protective order that was

14  entered some time in the past, I'm not about to do anything

15  about that order until the proponents of that order and people

16  impacted by that order are given an opportunity to be heard on

17  the subject of it.

18         So the answer is if there's a protective order in

19  place, it's in place, and if somebody believes there should be

20  some relief from it, they should -- they need to make a proper

21  motion and deal with it.  Again, I don't even want to go there

22  today because that raises all sorts of post-confirmation

23  jurisdiction.  I have no clue of the merits of what you refer

24  to.  I made a note in my pad here that it's 8662, but that's

25  all I know about it, and it's not an action item today.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    We're back to the point when I get Mr. Molton's

2    filing, I will review it and decide what to do next.  If I

3    decide to give you some relief as requested, perhaps, the next

4    step will be, well, what happens after that?  If I don't give

5    you the relief you want, then it may be academic at least,

6    unless my decision is vacated at some point going forward.  So

7    it's just premature for me even to speculate.  You've made

8    it -- you've preserved it.  You've preserved your position on

9    it, and it's noted.

10    MR. ABRAMS:  And Your Honor, last point -- and I

11    promise it's my last point.  Just the one thing I also did just

12    want to state that's clear is that the individuals that I --

13    that are contracted with or employed by JAMS are holding very

14    central roles within this case, and so I'm not going beyond the

15    case when I'm listing those individuals.  Unfortunately,

16    there's a long list of those peoples, all from JAMS.  That

17    isn't my doing.  That is just a fact associated with this case,

18    and my purpose of providing a context of the prior case with

19    Ms. Yanni and where Mr. Skikos was involved was to be able to

20    demonstrate when one corporation has an inordinate role behind

21    closed doors with confidentiality agreements.  And as we've

22    seen in the Girardi case, unfortunately that creates an

23    environment where bad things can happen.

24    And so it was to provide that context and to really

25    try to list those things, and within the redacted agreements

of 72
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  that were filed with the Court, I should also note that

2  completely redacted from that are who's doing the mediation.

3  So we don't even know even beyond this if there are other

4  mediators that are core to this case who are from JAMS, Inc. --

5      THE COURT:  Wait.  What are you referring to?  What

6  mediator is being -- I mean, what document redacts out who was

7  a mediator?

8      MR. ABRAMS:  So in the derivative cases, Your Honor,

9  where they provided the agreements around the derivative cases,

10  there's a section called --

11      THE COURT:  You mean, in the retention agreements.

12      MR. ABRAMS:  In the retention agreements.  I'm sorry,

13  Your Honor, yes.  There is a whole section about mediation, and

14  all of that is redacted.  Only the title of that section is

15  kept in.  So again, I don't know what's behind the black marks.

16  I don't -- and again, it's just demonstrating that JAMS, Inc.,

17  has had an inordinate role within this case, and given the

18  patterns that were identified within my motion --

19      THE COURT:  But how do you know --

20      MR. ABRAMS:  -- that's what I'm relying on.

21      THE COURT:  How do you know that JAMS, Inc., is in the

22  redacted language?

23      MR. ABRAMS:  Like I said, Your Honor, I don't know,

24  but we know that JAMS, Inc., is covering I think it was close

25  to twenty-five other key points within this case, and so --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  But your pending --

2          MR. ABRAMS:  -- it's not out of the ordinary --

3          THE COURT:  Mr. Abrams?

4          MR. ABRAMS:  Yeah.

5          THE COURT:  First of all, I reviewed the unredacted

6   documents.  So you can, again, blame it on me because I did, I

7   reviewed every word of every redacted document, and I made a

8   decision that they would stay redacted, and so that's one

9   thing.

10         Secondly, you paint with a very broad brush, and I am

11  not prepared on your say-so to paint or taint -- paint or

12  taint, pick your word, JAMS or anyone else with the sins of Mr.

13  Girardi and what has come out in that case.  Simply not --

14  we're not going there, and that is -- I agree with you if

15  somehow this Fire Victim Trust, or through any of its

16  representatives, has been tainted by misconduct, then there are

17  consequences, perhaps.  I agree with you.  But I'm not about to

18  say, Mr. Girardi and all of his failures, his personal,

19  disastrous occasion for so many people, is not going to be

20  imported and infused into this case because somehow Justice

21  Trotter, who was selected in this case was also involved in

22  some matter that involved Mr. Girardi, that the LA Times wants

23  to make -- draw inferences about.  I am not drawing inferences

24  about it.

25         MR. ABRAMS:  I'm not drawing inferences either --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Okay.  Well you're --

2    MR. ABRAMS:  I'm just --

3    THE COURT:  You're painting a picture that I haven't

4  painted, but I'm going to leave it at that.  You've made your

5  comments and I've noted it and I will do this in the steps that

6  I agreed to with you and assured you that I'm going to go

7  there.

8    Mr. French, did you have a final comment?

9    MR. FRENCH:  I just wanted to clarify my position.  So

10  my thought was that the names, aside from Justice Trotter's, in

11  the motion were examples of some of the issues with JAMS.  I

12  was not imagining necessarily doing some investigation on each

13  of those individuals.  My thought was to have the Trust report

14  back what its relationships are with JAMS or people who have

15  these relationships with JAMS.  So just so that we understand

16  where those connections are, so that then, if there's a need

17  for further analysis based upon that, that we have the

18  information necessary to go forward.

19    THE COURT:  Mr. --

20    MR. FRENCH:  Just understanding those relationships

21  is --

22    THE COURT:  Okay.  Mr. Molton, to the extent that

23  you're able and in a position to clarify the trust's role, that

24  would be helpful.  I'll just leave it to you to make what you

25  believe is an appropriate disclosure.  At this point, I'm not

PG&E Corporation and Pacific Gas and Electric Company

1    going to order it.  Justice Trotter has been quoted as saying

2    he is or was a shareholder.  To the extent that he is or was,

3    it might be helpful, and if Ms. Yanni, I know had some prior,

4    if not current, affiliation with JAMS, but she can certainly

5    make a disclosure and should make a disclosure in this context

6    for her as the Fire Victim Trustee, but I'll leave it at that

7    at this point.

8        MR. MOLTON:  Judge, instead of speaking off the cuff,

9    what I'd like to do is save those for our response so we're

10   completely accurate, but if I might, I'd like to just say a few

11   things in closing, if I might, Your Honor?

12       THE COURT:  Yes, sir.  Yes, sir.

13       MR. MOLTON:  I want to reiterate because I think it's

14   important because a lot of things have been said that aren't

15   based on evidence or proof or even credible allegations.

16   There's not a single allegation in the papers submitted that

17   anything wrong has actually occurred at the Trust or in

18   connection with the Trust.

19       THE COURT:  Right.

20       MR. MOLTON:  As Your Honor knows, every April, we file

21   an audited financial statement with an opinion from an auditor,

22   BDO, once a year, which sets forth the trust finances and

23   claims history for that year.

24       Number 2, what we have here -- one example, and we'll

25   deal with this more -- Mr. Abrams likes to take what he reads

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    in the newspaper and put it in a fashion that can be used here.

2    He cites the LA Times, and he basically misquotes that article

3    in his pleading, page 2 of 39 at 12766, he says that discovery

4    request should be expanded "to ensure that the multifaceted

5    victimization of injured people referred to by the chief

6    justice" -- and I'm going to butcher her name.  So I'm not

7    going to say it, but her name is there -- "regarding the

8    influence of JAMS has not undermined the well-intentioned

9    efforts of this court to ensure fair and just outcomes."  The

10   actual quote, Your Honor, the actual quote from that paper was

11   from the chief judge in the article cited by Mr. Abrams has

12   nothing to do with JAMS or anyone involved with the Fire Victim

13   Trust.  It says, the chief justice lamented the multifaceted

14   victimization of injured people in the Girardi case.  So that's

15   what we're dealing with here, Judge.  We're dealing with all of

16   these innuendos, and arguably, misstatements.

17          Number two, Judge -- so there's no evidence or

18   allegation of wrongdoing at the Trust.  Number two -- and you

19   know, we'll deal with this in our response, but I think it's a

20   good example, Mr. Abrams cites to Mr. Boserup, who is the

21   appeals officer, what does an appeal officer do?  Well, if you

22   read our constitutional documents, the appeal officer reviews

23   and assigns an appeal to either a complex or noncomplex panel.

24   That's it.  Not involved in claims administration.  Then,

25   there's a random of neutrals, of a neutral, as a result of that

PG&E Corporation and Pacific Gas and Electric Company

1  categorization either to the complex or noncomplex panel.  And

2  many of what Mr. Abrams refers to as the panel of neutrals

3  refers to appeals.

4      I want to give Your Honor -- because we're very proud

5  of the work we do, and will put it in our pleading -- Judge,

6  we've had 36,000 submitted claims questionnaires to date.

7  36,000.  We've had -- eighty percent of those have had

8  determination notices.  I know that Justice Trotter, when he

9  was trustee, and Ms. Yanni now, is fully engaged in pushing

10  that number up by year-end as well.  It's important to note

11  that of that eighty percent of the 36,000, less than two-thirds

12  of a percent -- I'm going to say that again.  Two-thirds of a

13  percent or .67 percent have invoked an appeal.  99.33 percent

14  of all determinations notices have been resolved without

15  appeal.  That means -- and I'm going to cut more to the

16  chase -- that's 155 appeals, Judge, that have gone to the JAMS

17  neutrals in any event.  So that's a little bit of what we're

18  having to deal with in terms of broad allegations that have

19  nothing to do with the facts.

20      Judge, with respect to the protective order, I agree.

21  I don't know what Mr. Abrams is referring to.  We'll take a

22  look at it.  The low number of it suggests to me that it might

23  even precede the existence of the Trust, the low docket entry

24  number, but we'll take a look at it.  And again, I want to

25  reiterate, Your Honor, that we're looking forward to

(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corporation and Pacific Gas and Electric Company

1   responding, and we'll respond in-kind and address the issues

2   that Your Honor suggested we do so.

3                THE COURT:  Okay.

4                MR. ABRAMS:  Your Honor, there was a few allegations

5   there that I just would like to be able to have respond to that

6   Mr. Molton put forward.

7                THE COURT:  Go ahead.

8                MR. ABRAMS:  So first of all, Mr. Molton's

9   characterization that there was an audit done so that's all the

10  financial reporting we need to do, I think is very

11  disingenuous.  The fact of the matter is that my prior motion

12  stated that it is very important for victims to understand the

13  costs that are being incurred by the Trust, the financial

14  incentive structures, all of which were redacted.  I'm not

15  blaming anyone, but then to say, look, you know, we've fully

16  disclosed all the financial information that we need to, I

17  think is inappropriate.

18               The second point, Your Honor, is that Mr. Molton

19  listed a number of different folks that he feels should have

20  nothing to do with this, including the appeals officer and the

21  people that are sitting on this complex or simple panel for

22  appeals.  Every single one of them comes from JAMS, Inc.

23               THE COURT:  How do you know that?  How do you know

24  that?

25               MR. ABRAMS:  Because I looked at --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  How do you know that?  First of all, what
2     does come from mean?
3          MR. ABRAMS:  That they are employed by or contracted
4     with JAMS, Inc. --
5          THE COURT:  Okay.
6          MR. ABRAMS:  -- all of them.
7          THE COURT:  Contracted with is not the same as comes
8     from, but okay.  Let's suppose --
9          MR. ABRAMS:  I --
10         THE COURT:  -- appeal -- let's suppose Appeal Officer
11    X also has done work as a JAMS neutral, therefore, what?  What
12    does that have to do with financial incentives?  If the
13    litigants have availed themselves to the appeal and the appeal
14    was assigned to retired Judge X, and retired Judge X decides
15    the merits of the appeal, what's the prob -- what's wrong with
16    that?
17         MR. ABRAMS:  So Your Honor --
18         THE COURT:  The fact that that person used to -- has
19    also a relationship with JAMS, therefore, what?
20         MR. ABRAMS:  Those are great questions, Your Honor,
21    and that's why there's good cause for discovery.  If Your
22    Honor, all these people are all shareholders and they are all
23    employees of JAMS working in their capacity as employees of
24    JAMS, then of course they have the goal as a shareholder to
25    increase return for the corporation.  Those interests may be

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    very adverse to the interest of victims within this case and

2    the equitable patterns associated with the trustee --

3             THE COURT:  What if --

4             MR. ABRAMS:  -- neutral position of them, and so all

5    of that is relevant with the proper discovery, but just saying,

6    look, we're not going to provide any of that information and we

7    want you just to assume that none of them are shareholders when

8    Justice Trotter stated specifically that he was, I don't think

9    is a prudent path either.

10            THE COURT:  Okay.

11            MR. ABRAMS:  And the last -- and also, Your Honor, the

12   point of this as well is every victim is subjected to this

13   process to put money in their pocket to rebuild their house, to

14   get compensation for their lives, and I know Your Honor knows

15   that, but this is essential to the dollars that are in victims'

16   pockets, and there are very few victims, as the Court knows and

17   as Mr. Molton knows, that were provided judicial review.  So

18   even if they proved it --

19            THE COURT:  Mr. Abrams --

20            MR. ABRAMS:  -- that --

21            THE COURT:  -- I don't want to revisit that because

22   they all were given a chance, and five of them chose to.  It

23   wasn't something arbitrary.  It wasn't the luck of the draw.

24   Those five people came -- they squawked, and they were heard.

25   So what's the -- therefore, what?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. ABRAMS:  Your Honor, I --

2          THE COURT:  What do you want me to do about that?

3          MR. ABRAMS:  Well, one of the remedies that I think

4    should be considered by the Court -- and I'll save this for my

5    reply -- is that given all these things that the Trust isn't

6    going to be forthcoming and fully disclose what all these

7    financial incentives are for these people in these appeals

8    process, then victims should have a judicial review process, so

9    that if they have perceived injustices with their settlement,

10   that they can also come to the Court, and say, look, Your

11   Honor, this was unjustly settled.  I deserve a million dollars.

12   These appeals coordinators only provided 500,000 dollars, and

13   here's that justification, but to fact --

14         THE COURT:  Wait a minute --

15         MR. ABRAMS:  -- to have this unequal system --

16         THE COURT:  -- Mr. Abrams --

17         MR. ABRAMS:  -- where these appeals -- yes, Your

18   Honor?

19         THE COURT:  Mr. Abrams, the appeals coordinator sent

20   the matter to an appeal.  The appeals coordinator from what I'm

21   told didn't make the decision.  So if --

22         MR. ABRAMS:  But --

23         THE COURT:  -- the appeal coordinator says here, your

24   appeal is going over to so and so --

25         MR. ABRAMS:  But it's the same -- but again, Your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Honor, to whatever extent this is the same corporation and that

2    these neutrals have conflicting duties to JAMS, Inc., that are

3    interfering with their neutral capacity and/or might be

4    favoring certain attorneys who are going to give them future

5    work in future cases where they could hire JAMS and other

6    attorneys who are less prominent, that they don't care whether

7    they're going to -- that won't have the ability to rehire JAMS

8    in a future case, all of these are biases that should be

9    understood.

10        The degree to which one particular neutral has acted

11    on those biases is a different story, and they may or may not

12    have acted on those biases, but until we know that information,

13    we can't come to a conclusion on these matters.  Again, if

14    they're not going to be forthcoming with this information,

15    then, yes.  I do feel that opening up judicial review is really

16    important to do.  I hope it -- I hope that we are given

17    information that shows that these neutrals are indeed neutral.

18        THE COURT:  Okay.  Your petition is noted.

19        MR. MOLTON:  May I --

20        THE COURT:  No --

21        MR. MOLTON:  Your Honor --

22        THE COURT:  I'm going to -- that's enough.  I'm going

23    around in circles here.  I'm going to stick with the schedule

24    that we have.  I'll wait to hear from Mr. Molton, and Mr.

25    French and Mr. Abrams, you'll be -- you'll hear my decision at

PG&E Corporation and Pacific Gas and Electric Company

1  that point, and as I say, it might very well invite a reply or

2  further information.  I'm going to wait and see what the

3  trustee provides for all of us.  So with that, I'm going to

4  include the hearing, and thank you all for your time.

5          IN UNISON:  Thank you, Your Honor.

6          THE COURT:  And I'm going to -- Ms. Parada, I'm going

7  to turn off my camera, but not log off because after all the

8  attendees exit, I want to talk to you and the rest of the staff

9  on to.  Thank you all for your time.

10          THE CLERK:  Yes, Your Honor.

11          MR. ABRAMS:  Thank you, Judge.

12      (Whereupon these proceedings were concluded at 11:29 AM)

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

C E R T I F I C A T I O N

I, Ellen S. Kolman, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

/s/ ELLEN S. KOLMAN, CET-568

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date:  September 14, 2022

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**ability (2)**
18:3;58:7
**able (6)**
42:3;44:14,15;47:19;
50:23;54:5
**Abrams (82)**
23:24;24:1,1;25:14;
26:3,23;27:1,14;30:9;
31:18;32:12;33:5,14,
17;34:4,5,6,6,14,16;
35:19;38:3,14;39:20,
22,23;40:7,11,12,14,
19;41:2,10,11,19;
42:12;43:4,8,9,10,19;
45:9,15,18;46:11;
47:10;48:8,12,20,23;
49:2,3,4,25;50:2;
51:25;52:11,20;53:2,
21;54:4,8,25;55:3,6,9,
17,20;56:4,11,19,20;
57:1,3,15,16,17,19,22,
25;58:25;59:11
**Abrams' (9)**
23:23;24:18;26:14;
27:13;28:1,7;29:23;
30:1;37:25
**absolutely (2)**
14:13;40:14
**academic (1)**
47:5
**accept (3)**
13:22;16:12;37:25
**access (6)**
5:12;12:2,15;14:12;
20:1,6
**according (1)**
27:1
**accounting (1)**
36:14
**accurate (1)**
51:10
**accusing (2)**
34:17;35:12
**acknowledged (1)**
4:17
**acted (2)**
58:10,12
**acting (3)**
26:8;40:23,24
**action (1)**
46:25
**actions (2)**
46:3,5
**active (1)**
45:2
**activity (1)**
32:10
**actual (2)**
52:10,10
**actually (3)**

29:8,11;51:17
**ad (1)**
10:24
**add (2)**
12:17;43:21
**Addington (44)**
3:12;4:8;5:9;6:8,9,
20,25;7:4,7,10,17;9:9;
11:16,17,19,21;13:2,
14,15;14:8,12,19,23;
15:8,14,20,24;16:9,15,
24;17:7,18,21;18:1,5,9,
21,22,24;19:5,6;20:6,
16;23:1
**Addington's (2)**
6:14;18:15
**addition (2)**
26:18;45:22
**additional (1)**
9:13
**address (1)**
54:1
**administration (1)**
52:24
**adopted (1)**
25:21
**advantage (1)**
20:17
**adversary (1)**
9:3
**adverse (1)**
56:1
**advise (1)**
39:20
**advisement (1)**
33:3
**advocate (1)**
7:7
**affiliation (1)**
51:4
**again (31)**
4:12;6:6,10;9:21;
10:2,17;12:8;16:4,20;
17:5,24;18:7,17;19:10;
25:1;30:5;35:12;37:22;
38:11;40:11;41:11;
43:21,24;46:21;48:15,
16;49:6;53:12,24;
57:25;58:13
**against (4)**
6:23;15:9;19:7;
28:21
**ago (5)**
4:25;5:1;13:15,24;
14:11
**agree (14)**
3:24;8:9;9:24;12:8;
16:21,23;33:6;35:19;
36:10,13;40:21;49:14,
17;53:20
**agreed (1)**
50:6
**agreeing (1)**

23:12
**agreement (3)**
17:18;30:23;31:11
**agreements (5)**
47:21,25;48:9,11,12
**ahead (4)**
25:1;33:4;45:16;
54:7
**al (1)**
24:18
**allegation (2)**
51:16;52:18
**allegations (5)**
27:9;28:20;51:15;
53:18;54:4
**allowed (1)**
6:8
**allowing (1)**
32:7
**almost (1)**
44:24
**alternative (1)**
14:14
**alternatively (1)**
20:17
**although (1)**
4:20
**always (1)**
25:8
**amend (1)**
12:1
**amended (4)**
4:5,15;6:8;8:12
**among (1)**
37:6
**amount (2)**
7:16,17
**analysis (1)**
50:17
**and/or (1)**
58:3
**Angeles (1)**
28:22
**apart (1)**
18:5
**appeal (13)**
52:21,22,23;53:13,
15;55:10,10,13,13,15;
57:20,23,24
**appeals (13)**
27:4,4;40:17;52:21;
53:3,16;54:20,22;57:7,
12,17,19,20
**appearance (5)**
3:10;23:25;24:14;
25:9;29:22
**appeared (1)**
25:24
**appearing (1)**
24:2
**Apple (1)**
25:7
**application (1)**

31:6
**applies (1)**
8:10
**apply (1)**
8:10
**appointed (1)**
29:8
**appreciate (4)**
41:20;43:4,6,6
**appropriate (5)**
30:13;38:24;39:1;
40:15;50:25
**approval (1)**
31:20
**approved (1)**
14:2
**April (1)**
51:20
**arbitrary (1)**
56:23
**arguably (2)**
27:1;52:16
**argue (6)**
44:4,7,10,11,13,15
**argument (2)**
9:15;20:4
**arms (2)**
11:24;14:6
**around (5)**
11:24;14:6;42:20;
48:9;58:23
**article (4)**
28:22;36:3;52:2,11
**articles (1)**
27:10
**articulate (1)**
43:11
**articulated (1)**
9:1
**aside (3)**
8:1;31:1;50:10
**aspects (1)**
31:10
**assert (2)**
7:20,21
**asserting (1)**
19:7
**assets (2)**
13:8;40:24
**assigned (1)**
55:14
**assigns (1)**
52:23
**associated (4)**
33:24,25;47:17;56:2
**assume (7)**
11:1;20:14;23:3;
30:16;34:8;35:24;37:1,
22;39:3,3;56:7
**assuming (3)**
31:12,14;37:14
**assured (1)**
50:6

31:6
**attendees (1)**
59:8
**attorney (1)**
33:18
**attorneys (2)**
58:4,6
**attorneys' (1)**
13:18
**audio (1)**
14:20
**audit (1)**
54:9
**audited (1)**
51:21
**auditor (1)**
51:21
**authority (1)**
14:2
**authorize (1)**
29:12
**available (7)**
9:2;10:4;12:7;19:16;
20:15;22:7;30:5
**availed (1)**
55:13
**avid (1)**
5:6
**avoid (1)**
15:22
**aware (3)**
10:20;13:25;26:9
**away (2)**
14:16;20:22

## B

**back (12)**
4:12,18;6:6,7,21;
7:25;9:9;21:24;22:2;
25:1;47:1;50:14
**backwards (1)**
6:18
**backyard (1)**
14:3
**bad (2)**
34:10;47:23
**bad-faith (2)**
46:3,4
**Bagorio (1)**
24:18
**bank (5)**
34:24,25;35:1,3,6
**bankruptcy (10)**
15:6,14,17;16:1,25;
17:24,25;34:13;36:5;
38:15
**banks (1)**
35:2
**based (6)**
11:6;27:7,10;28:11;
50:17;51:15
**basically (1)**
52:2

Case: 19-30088    Doc# 12954    Filed: 09/14/22    Entered: 09/14/22 11:09:32    Page 61
of 72

**basics (1)**
21:20
**basis (3)**
15:8;34:18;37:3
**BDO (1)**
51:22
**beat (1)**
21:1
**becomes (1)**
20:18
**behalf (4)**
3:15;26:8;39:3;
40:25
**behavior (2)**
35:20,22
**behind (2)**
47:20;48:15
**believes (2)**
19:15;46:19
**Bend (1)**
20:25
**Benvenutti (1)**
3:15
**best (3)**
5:7;33:10,19
**better (1)**
25:18
**beyond (5)**
27:17;32:1;36:2;
47:14;48:3
**biases (3)**
58:8,11,12
**big (1)**
33:2
**billion (1)**
35:4
**bit (2)**
8:6;53:17
**black (1)**
48:15
**blah (3)**
8:15,15,15
**blame (5)**
42:24,25;43:3,5;49:6
**blaming (1)**
54:15
**board (1)**
40:16
**body (1)**
30:7
**Boserup (2)**
27:3;52:20
**Both (2)**
26:22;44:6
**breadth (2)**
36:10;44:21
**brief (2)**
43:13,17
**briefing (1)**
39:20
**briefs (1)**
43:13
**bring (7)**

3:8;9:7,8;24:9;31:3;
40:1;46:10
**bringing (1)**
30:10
**broad (3)**
27:15;49:10;53:18
**broader (3)**
25:19;30:10;34:1
**broken (1)**
17:5
**brokers (1)**
37:16
**brought (1)**
43:25
**Brown (1)**
25:11
**brush (1)**
49:10
**bucks (1)**
9:10
**build (1)**
15:2
**bunch (1)**
38:4
**burden (3)**
5:9;19:24;20:19
**butcher (1)**
52:6

**C**

**Cal (1)**
21:1
**calendar (1)**
4:1
**CALIFORNIA (2)**
3:1;38:16
**Call (9)**
3:4;18:11;22:23;
25:18;29:23;30:1;34:7,
7;45:12
**called (3)**
21:15;44:25;48:10
**Calling (1)**
3:7
**calls (2)**
18:1;21:15
**came (3)**
4:12;11:11;56:24
**camera (1)**
59:7
**camp (2)**
29:22,23
**Can (27)**
3:10;4:2;7:1,1;8:5;
10:18;11:14;13:7;15:3;
17:17;19:25;20:2,16;
24:21,22;25:4;27:10;
28:13;30:16;33:19;
36:21;43:2;47:23;49:6;
51:4;52:1;57:10
**capacity (7)**
25:13;28:17;29:2,4;

39:11;55:23;58:3
**care (1)**
58:6
**Carvill (1)**
27:2
**case (45)**
9:9,13,19;10:16;
12:4,13,14,14;13:15,
23;15:6;16:1;22:14;
26:21,22;29:12;30:8;
31:19;35:8,24;36:17;
38:15;41:1;42:5;44:4,
7,10,11,12,13,15;
47:14,15,17,18,22;
48:4,17,25;49:13,20,
21;52:14;56:1;58:8
**cases (4)**
26:15;48:8,9;58:5
**catastrophe (1)**
34:13
**catch (1)**
10:14
**categories (1)**
36:19
**categorization (1)**
53:1
**Cathy (3)**
25:13;26:19;28:17
**cause (13)**
27:8;34:18,20;35:5,
8,11,15,20;36:7;38:1;
40:15,20;55:21
**central (1)**
47:14
**certain (6)**
7:16,17;16:25;31:10;
42:23;58:4
**certainly (14)**
6:11;28:10;33:6,8,
20;34:19;35:7;36:1;
40:15;43:6,20;45:25;
46:2;51:4
**certified (1)**
33:21
**cetera (2)**
5:10,10
**chairman (1)**
40:16
**chance (3)**
29:24;32:24;56:22
**characterization (1)**
54:9
**charge (2)**
35:3,3
**chase (1)**
53:16
**chief (4)**
38:15;52:5,11,13
**choice (2)**
15:3;19:21
**choose (1)**
41:7
**chose (3)**

44:18,20;56:22
**circles (1)**
58:23
**cited (1)**
52:11
**cites (2)**
52:2,20
**civil (1)**
18:10
**claim (40)**
4:5,15;6:1,8,9,12,19;
7:20,21;8:12,13,14;9:4,
4;11:10,16,21,22,22,
23,25;12:1,23;14:20;
15:1,5,9,21,23;16:25;
17:6;18:6,21,22;19:7,
19,22;21:16;22:21;
23:1
**claimant (4)**
31:19,19;38:15;42:7
**claims (9)**
10:8,24;11:5;13:15;
19:21;27:4;51:23;
52:24;53:6
**clarification (1)**
40:1
**clarify (3)**
28:13;50:9,23
**class (1)**
31:17
**clear (12)**
25:20;26:1;28:2;
30:2;34:17;36:4;40:2,
4,4,5;44:1;47:12
**clearly (1)**
28:6
**CLERK (9)**
3:5;22:7,10;24:4,8,
11,23;37:9;59:10
**client (12)**
5:14,23;12:7,21;
14:1,4;16:16;19:24;
21:12;26:7,10;32:13
**close (1)**
48:24
**closed (1)**
47:21
**closing (1)**
51:11
**clue (2)**
26:7;46:23
**co-counsel (1)**
23:19
**coincidence (1)**
31:23
**coincides (1)**
31:23
**coming (1)**
30:25
**comment (2)**
8:8;50:8
**comments (3)**
21:11;30:12;50:5

**commit (1)**
10:11
**company (3)**
10:15,21;11:1
**compelled (1)**
3:24
**compensation (2)**
19:7;56:14
**competent (3)**
17:12;40:5,7
**complain (1)**
9:10
**complete (1)**
16:14
**completely (3)**
13:13;48:2;51:10
**complex (4)**
31:15;52:23;53:1;
54:21
**compliment (1)**
23:12
**comply (1)**
19:1
**concern (2)**
26:23;28:22
**conclude (1)**
30:12
**concluded (1)**
59:12
**conclusion (1)**
58:13
**condition (1)**
18:15
**conduct (1)**
41:12
**confer (1)**
17:17
**conference (1)**
23:4
**conferred (1)**
12:21
**confident (1)**
13:4
**confidentiality (1)**
47:21
**conflating (2)**
16:21,23
**conflicting (1)**
58:2
**confusion (1)**
15:7
**connection (1)**
51:18
**connections (1)**
50:16
**consensual (2)**
19:14;20:12
**consensually (1)**
20:12
**consequences (1)**
49:17
**consider (2)**
20:25;46:8

**considered (3)**
29:3;39:21;57:4
**consistent (1)**
14:25
**Constitutional (2)**
42:22;52:22
**constructive (3)**
8:2;10:6;39:14
**consummation (1)**
31:21
**contacted (2)**
4:4;14:14
**contested (8)**
4:14,22,23;5:11,14;
15:23;19:23;22:21
**context (7)**
37:23;42:10;43:6;
45:11;47:18,24;51:5
**continuing (1)**
23:1
**contract (2)**
36:22;37:4
**contracted (3)**
47:13;55:3,7
**contractor (3)**
17:8;37:18,20
**contractors (2)**
37:15,17
**contracts (1)**
36:16
**contractual (1)**
36:15
**contrast (1)**
43:21
**converting (1)**
13:5
**cooperate (3)**
5:12,24;20:11
**coordinates (1)**
10:3
**coordinator (4)**
40:17;57:19,20,23
**coordinators (1)**
57:12
**core (1)**
48:4
**corporate (1)**
38:11
**Corporation (4)**
3:7;47:20;55:25;
58:1
**corporation's (1)**
40:24
**corrected (1)**
33:20
**correcting (1)**
33:20
**corrections (2)**
14:24,25
**correctly (3)**
21:15;45:3,20
**costs (1)**
54:13

**counsel (10)**
3:8,12;10:4;17:12;
20:6,16;25:23;29:5;
39:11,13
**counting (1)**
46:12
**couple (2)**
10:18;38:6
**course (8)**
9:4;26:23;29:4;
33:25;35:5;37:22;
40:22;55:24
**Court (142)**
3:4,5,9,13,16;6:4;
7:6,14;8:8,25;10:1,11,
15,23;11:8,15;13:9,11;
14:22;15:13,16;16:11,
14,20;17:21;18:17,23;
20:25;21:6,9,22;22:1,9,
12,14,17;23:10,14,18,
21,23;24:2,6,10,12,20,
24;25:5,9,14;27:19;
28:13,19,25;29:11;
30:7,22,25;31:4,10,12,
14,15,16;32:1,5,12;
33:9,12,15,19;34:3,4,6,
15;35:14,14,16,22,24;
36:2,9,21;37:8;38:16;
40:1,4,10,12,18;41:2,
11;42:10,12;43:8,10;
44:6,17;45:1,16;46:6,8,
11;48:1,5,11,19,21;
49:1,3,5;50:1,3,19,22;
51:12,19;52:9;54:3,7,
23;55:1,5,7,10,18;56:3,
10,16,19,21;57:2,4,10,
14,16,19,23;58:18,20,
22;59:6
**court-appointed (1)**
26:21
**courtesy (1)**
5:3
**courts (2)**
42:20;46:7
**covering (1)**
48:24
**crazy (1)**
43:15
**creates (1)**
47:22
**credible (1)**
51:15
**creditors (1)**
24:18
**crime (2)**
34:17;35:12
**criticize (2)**
7:10,10
**cuff (1)**
51:8
**current (5)**
29:4;31:22;32:13;
35:8;51:4

**cut (3)**
42:17;43:20;53:15

**D**

**damage (3)**
10:8;16:24;19:7
**damages (8)**
9:13;11:20;13:16,18,
18;15:9;16:2;18:6
**Dame (2)**
21:1,3
**data (1)**
37:9
**date (19)**
5:4,4,25;14:14;22:3,
7;28:11;30:19,19,20,
21;31:7,23;32:1,6,14;
33:1;38:7;53:6
**dates (2)**
4:1;22:4
**David (1)**
25:11
**Day (2)**
4:1;18:24
**days (3)**
12:10,10;22:2
**deadline (1)**
4:5;39:14;42:8
**deadlines (3)**
9:23;23:3;42:13
**deal (7)**
21:24;27:25;33:2;
46:21;51:25;52:19;
53:18
**dealing (2)**
52:15,15
**dealt (3)**
11:20;30:11;45:14
**debate (1)**
26:2
**debtor (3)**
4:7;31:17;42:3
**debtors (2)**
3:15;6:7
**debtors' (1)**
4:21
**debtor's (1)**
42:17
**decide (8)**
32:19;33:3;38:7,8;
44:11,19;47:2,3
**decided (3)**
41:25;42:24;44:25
**decides (1)**
55:14
**deciding (2)**
38:16,17
**decision (7)**
30:6;38:21;42:16;
47:6;49:8;57:21;58:25
**decisions (1)**
42:24

**defending (1)**
13:5
**defensive (1)**
13:13
**defines (1)**
27:15
**degree (4)**
40:23,24;46:9;58:10
**demand (1)**
14:12
**demonstrate (2)**
35:14;47:20
**demonstrated (4)**
32:17;33:25;34:3,7
**demonstrating (2)**
34:20;48:16
**denial (1)**
42:19
**Dennis (1)**
3:6
**depart (1)**
30:3
**derivative (2)**
48:8,9
**derived (1)**
28:21
**deserve (1)**
57:11
**desires (2)**
18:15;20:9
**determination (2)**
34:11;53:8
**determinations (1)**
53:14
**determine (1)**
7:2
**die (1)**
31:3
**difference (1)**
15:10
**different (6)**
7:23;36:5,19;45:12;
54:19;58:11
**dig (1)**
7:18
**direct (2)**
39:7;41:7
**directed (5)**
25:15;26:14;39:5;
44:19;45:13
**directing (1)**
38:3
**directive (1)**
28:1
**director (1)**
30:21
**disagree (1)**
43:2
**disaster (1)**
35:25
**disastrous (1)**
49:19
**disclose (1)**

**57:6**
**disclosed (2)**
31:8;54:16
**disclosure (5)**
30:21;37:6;50:25;
51:5,5
**discoverable (1)**
36:20
**discovery (33)**
5:15,23;6:23;7:1,3,4;
9:23;12:4,16;13:6,14;
17:1,4,9,11;19:11,25;
20:18,18,20;21:18;
22:20;27:13,16;30:1;
31:22;35:15;41:23;
42:1;45:24;52:3;55:21;
56:5
**discuss (1)**
7:2
**disingenuous (1)**
54:11
**dispositive (1)**
22:22
**dispute (5)**
15:14;18:5;19:19;
20:5,8
**disputes (2)**
17:11;19:11
**district (3)**
30:7;31:15;42:21
**docket (4)**
45:22;46:12,13;
53:23
**document (3)**
27:17;48:6;49:7
**documents (2)**
49:6;52:22
**dollars (10)**
6:10;11:17,22;16:16,
17;19:22;35:4;56:15;
57:11,12
**dominant (1)**
15:19
**done (12)**
10:16;16:7;17:9,23;
20:5,16;31:22;33:7;
34:10;37:12;54:9;
55:11
**doors (1)**
47:21
**down (2)**
9:18;43:20
**drag (2)**
14:19;16:9
**draw (2)**
49:23;56:23
**drawing (2)**
49:23,25
**drawn-out (1)**
13:6
**drives (1)**
43:15
**due (1)**

Min-U-Script®

Case: 19-30088    Doc# 12954    Filed: 09/14/22    Entered: 09/14/22 11:09:32    Page 63
of 72

eScribers, LLC
www.escribers.net

(3) considered - due

42:19

**dug (1)**
38:20

**during (1)**
29:11

**duties (1)**
58:2

**dutifully (2)**
4:15,15

**duty (1)**
21:24

**Dwayne (1)**
3:12

**E**

**earlier (3)**
23:12;33:2;44:21

**early (2)**
4:4,16

**easement (6)**
7:15;11:18;15:5;
18:2,13;19:2

**easier (1)**
12:25

**efficient (2)**
12:16;13:8

**effort (3)**
11:2;21:14;42:2

**efforts (1)**
52:9

**eighteen (1)**
3:22

**eighty (2)**
53:7,11

**either (9)**
22:18,20,21;28:3;
29:13;49:25;52:23;
53:1;56:9

**else (7)**
23:15;24:7;38:5;
39:20;40:13;41:8;
49:12

**elsewhere (1)**
37:16

**email (1)**
33:14

**employed (2)**
47:13;55:3

**employees (3)**
57:55:23,23

**end (3)**
9:6;18:23;37:2

**engage (3)**
5:15,23;13:5

**engaged (1)**
53:9

**engineer (1)**
18:10

**engineering (4)**
4:10;14:2;16:7;17:7

**enjoyed (1)**
11:4

**enough (6)**
11:15;17:10,10,16;
21:7;58:22

**ensure (2)**
52:4,9

**entered (1)**
46:14

**entire (1)**
3:25

**entities (2)**
27:18;38:4

**entitled (5)**
8:6;12:15;16:1;17:4;
19:6

**entity (4)**
34:9;37:13;38:10,11

**entry (1)**
53:23

**environment (1)**
47:23

**equitable (1)**
56:2

**essential (1)**
56:15

**established (1)**
34:11

**estate (1)**
37:16

**estimated (1)**
6:9

**et (3)**
5:5,10,10;24:18

**Eugene (1)**
20:23

**even (19)**
11:24,24;15:24;
17:24;25:25;27:15;
29:13;32:17;42:20,22;
45:2,10;46:21;47:7;
48:3,3;51:15;53:23;
56:18

**evening (1)**
3:18

**event (1)**
53:17

**events (1)**
28:22

**everyone (1)**
33:11

**evidence (6)**
20:1;40:5,7;41:15;
51:15;52:17

**evidentiary (1)**
41:16

**exactly (3)**
17:18;18:9;27:22

**exam (1)**
37:24

**example (4)**
34:24;37:8;51:24;
52:20

**examples (1)**
50:11

**except (2)**
32:19;34:12

**exchange (1)**
19:14

**exchanges (1)**
4:20

**exciting (1)**
14:18

**exculpations (1)**
45:23

**excuse (1)**
34:6

**exist (1)**
36:16

**existence (1)**
53:23

**existing (2)**
39:10,10

**exit (1)**
59:8

**expanded (1)**
52:4

**expect (6)**
17:12;19:13;25:23;
38:4;39:5,17

**expectation (1)**
41:24

**expected (3)**
28:3,10;38:9

**expecting (1)**
17:3

**expedition (1)**
14:5

**expense (2)**
15:25;20:15

**experience (2)**
30:11;37:15

**experienced (2)**
7:8,11

**explain (2)**
3:23;5:10

**explore (1)**
10:9

**express (1)**
43:11

**extension (1)**
23:13

**extent (9)**
16:24;20:11;25:24;
30:4;42:14,23;50:22;
51:2;58:1

**extremely (1)**
43:11

**F**

**facilitate (1)**
20:12

**fact (11)**
12:18;19:20;27:7,9;
37:11;38:3;39:6;47:17;
54:11;55:18;57:13

**facts (5)**

8:16,24;9:7,8;53:19

**failure (1)**
16:15

**failures (1)**
49:18

**fair (5)**
27:19;40:18;41:2,12;
52:9

**faith (4)**
13:1;14:20;21:14;
35:10

**far (4)**
8:7;11:6;12:25;
38:20

**fashion (1)**
52:1

**fast (2)**
41:23,25

**faster (1)**
41:21

**favor (1)**
6:23

**favoring (1)**
58:4

**federal (1)**
19:12

**feel (4)**
35:7;42:23;44:23;
58:15

**feeling (1)**
27:7

**feels (2)**
12:22;54:19

**fees (1)**
13:19

**few (3)**
51:10;54:4;56:16

**field (1)**
6:24

**fight (1)**
15:23

**fighting (1)**
21:20

**figure (2)**
26:4;46:9

**figuring (1)**
14:9

**file (40)**
3:17;4:5,23;5:3,19;
6:8;7:7,12,13,22,23;
8:3,10,13,16,17,20;
11:9;12:2,7;13:19;
14:1,4,17,17;16:5,6,8;
17:15;20:2;21:15;23:3;
28:5;30:13;32:9;38:6,
25;39:13;44:25;51:20

**filed (12)**
3:18;4:6,15;5:6;11:6,
10,22,22,25;25:14;
41:21;48:1

**files (11)**
4:8,13,22;5:12,15,
17;12:15,20;13:17;

14:7;43:2

**filing (2)**
5:7;47:2

**final (3)**
37:3;45:17;50:8

**finances (1)**
51:22

**financial (6)**
51:21;54:10,13,16;
55:12;57:7

**find (6)**
13:17,19,20,21;15:7;
25:21

**fine (3)**
7:6;10:6;22:13

**fire (18)**
10:24;24:2;25:12,12,
16,23;28:16,18;30:24;
31:17,19;32:12;38:18;
39:17;45:14;49:15;
51:6;52:12

**firm (1)**
10:3

**first (10)**
8:4;18:13;36:13,25;
37:11;40:1;42:14;49:5;
54:8;55:1

**fishing (1)**
14:5

**fit (1)**
30:3

**five (2)**
56:22,24

**fix (6)**
4:9;14:3,8;23:2,4;
38:17

**fixed (1)**
9:23

**fixing (1)**
6:14

**focus (3)**
19:3,4;30:2

**focused (1)**
45:13

**focuses (1)**
29:1

**focusing (1)**
16:7

**folk (1)**
28:7

**folks (4)**
27:19,25;31:18;
54:19

**follow (3)**
33:10;43:7,14

**following (3)**
20:4;33:19;45:20

**fooled (1)**
3:16

**football (2)**
20:24;21:5

**forgot (1)**
29:10

**form (1)**
5:24
**formal (7)**
12:15;19:17;20:20;
21:18;30:13;32:17;
37:3
**former (7)**
26:18,18;29:2,7;
38:4,9;39:4
**forth (1)**
51:22
**forthcoming (2)**
57:6;58:14
**forty-five (1)**
12:10
**forward (7)**
27:23;34:2;42:1;
47:6;50:18;53:25;54:6
**foundation (1)**
34:8
**four (3)**
11:16;13:15,24
**framed (1)**
8:19
**FRANCISCO (1)**
3:1
**frankly (2)**
25:19;44:20
**French (20)**
24:8,11,16,17,17,20;
29:22,24;35:17,18,23;
36:1,3,10;37:6,19;50:8,
9,20;58:25
**French's (1)**
29:19
**frustrated (1)**
19:15
**full (1)**
27:5
**fully (4)**
44:15;53:9;54:15;
57:6
**function (2)**
34:2,2
**Fundamentally (1)**
35:19
**funds (1)**
36:6
**further (6)**
5:9;9:18;14:11;
39:19;50:17;59:2
**future (4)**
42:6;58:4,5,8

**G**

**Gallagher (1)**
27:2
**gallery (1)**
23:16
**game (2)**
20:24;41:12
**Gandhi (1)**

26:21
**gave (2)**
28:2;42:13
**general (2)**
17:1;35:9
**generally (2)**
37:17;42:21
**gentlemen (1)**
22:17
**gig (1)**
37:19
**Gillette (1)**
27:2
**Girardi (8)**
35:24,25;36:6;47:22;
49:13,18,22;52:14
**given (13)**
11:9;27:12;28:8,11;
43:22;44:7,11,12;
46:16;48:17;56:22;
57:5;58:16
**goal (4)**
37:25;38:19;43:19;
55:24
**goes (2)**
6:7;45:9
**Good (31)**
3:11,14;7:9;11:5,15;
13:1;14:19;17:16;
18:14;21:11,14,23;
22:25;23:24;24:1;25:5;
27:8;34:18,20;35:5,7,
10,11,15,19;36:7;38:1;
40:15,19;52:20;55:21
**gradient (2)**
14:3,8
**great (2)**
23:14;55:20
**guess (8)**
3:24,25;8:1,5,9,22;
19:17;33:16
**guiding (1)**
21:11

**H**

**half (1)**
9:5
**hand (2)**
24:5,8
**happen (3)**
14:13;19:5;47:23
**happened (2)**
9:11;38:20
**happening (2)**
41:22;44:1
**happens (2)**
32:23;47:4
**happy (3)**
8:3;9:21,22
**hard (1)**
21:7
**hate (1)**

19:11
**heads-up (1)**
39:6
**hear (7)**
24:14,15,21,22;25:4;
58:24,25
**heard (10)**
23:20;24:7,16;25:22;
26:11;27:12;31:20;
35:17;46:16;56:24
**hearing (19)**
3:25;6:7;9;11:12;
21:19,21;22:1;25:16;
32:22;42:22;44:2,3,4,5,
10,13,14,18;59:4
**hearings (2)**
17:10,11
**heart (1)**
45:9
**helpful (2)**
50:24;51:3
**here's (1)**
57:13
**himself (1)**
7:18
**hire (1)**
58:5
**history (3)**
44:20,20;51:23
**hoc (1)**
10:24
**hold (1)**
6:10
**holding (3)**
5:4;6:11;47:13
**Honor (94)**
3:8,11,14;4:3;5:5;
6:3,5,8,11;7:13;8:5,22;
9:21;10:10,13;11:3,11;
17:2,10,11;18:7;21:4,7,
10;22:6,13;23:8,9,16;
24:1,4,9,17,23;25:4,11;
26:13,17;27:6,7,12,14,
16,19,21;28:4,30:18,
19,20;32:4;33:5,6,17,
18;34:14,16,21;35:18;
36:10;39:23;40:2,21;
45:15,18,19;47:10;
48:8,13,23;51:11,20;
52:10;53:4,25;54:2,4,
18;55:17,20,22;56:11,
14;57:1,11,18;58:1,21;
59:5,10
**Honorable (1)**
3:5
**Honor's (6)**
17:12;28:1,4;31:6;
43:6,23
**hook (1)**
4:2
**hope (4)**
28:12;46:2;58:16,16

hoping (1)
39:25
**hours (2)**
3:22;5:5
**house (1)**
56:13
**Huh (1)**
21:6
**hundred (1)**
19:23
**hung (1)**
44:17

**I**

**identified (2)**
29:6;48:18
**imagining (1)**
50:12
**impacted (3)**
27:13;28:7;46:16
**impacts (1)**
42:5
**implicate (2)**
36:3;38:13
**implicated (1)**
37:21
**implication (1)**
14:18
**important (7)**
18:12;33:8,8;51:14;
53:10;54:12;58:16
**importantly (1)**
17:9
**imported (1)**
49:20
**inappropriate (1)**
54:17
**Inc (7)**
48:4,16,21,24;54:22;
55:4;58:2
**incentive (1)**
54:14
**incentives (2)**
55:12;57:7
**inclination (1)**
32:25
**inclined (6)**
32:12,18,24;39:7,13;
41:7
**include (1)**
59:4
**includes (1)**
27:16
**including (3)**
26:18;27:9;54:20
**increase (2)**
40:23;55:25
**increasingly (1)**
12:22
**incredible (1)**
44:21
**incumbent (1)**

5:9
**incurred (1)**
54:13
**Indeed (2)**
28:4;58:17
**independent (5)**
32:10;37:15,17,18,
20
**Indiana (1)**
21:1
**indicate (3)**
27:23;36:5;39:2
**indicated (1)**
12:18
**indication (2)**
26:7;28:2
**indiscernible- (1)**
44:16
**individual (1)**
43:20
**individuals (4)**
32:16;47:12,15;
50:13
**inferences (3)**
49:23,23,25
**influence (1)**
52:8
**informal (1)**
20:18
**information (13)**
4:21;19:14;20:7,7;
35:13;42:4;50:18;
54:16;56:6;58:12,14,
17;59:2
**infused (1)**
49:20
**initiate (1)**
20:20
**injured (2)**
52:5,14
**injustices (1)**
57:9
**in-kind (1)**
54:1
**innuendo (1)**
27:10
**innuendos (1)**
52:16
**innumerable (1)**
5:25
**inordinate (2)**
47:20;48:17
**inquiry (1)**
37:2
**insist (3)**
14:25;17:23;29:15
**install (1)**
18:1
**instead (1)**
51:8
**instincts (1)**
29:17
**institution (1)**

Case: 19-30088    Doc# 12954    Filed: 09/14/22    Entered: 09/14/22 11:09:32    Page 65
of 72

32:15
**integrity (1)**
  34:23
**intend (1)**
  21:18
**intends (1)**
  27:24
**interconnection (1)**
  32:3
**interest (2)**
  38:14;56:1
**interested (1)**
  32:8
**interests (2)**
  38:18;55:25
**interference (1)**
  14:21
**interfering (1)**
  58:3
**interrogatories (1)**
  27:17
**into (9)**
  3:16;4:18;15:23;
  26:2;13;27:11;38:20;
  41:16;49:20
**investigation (1)**
  50:12
**invite (1)**
  59:1
**invoked (2)**
  5:11;53:13
**involved (7)**
  31:21;37:21;47:19;
  49:21;22;52:12,24
**involvement (1)**
  18:24
**involves (1)**
  31:15
**irrelevant (1)**
  19:18
**issue (2)**
  8:19;18:18
**issued (2)**
  29:11;36:18
**issues (10)**
  16:21;17:13;19:9;
  26:23;28:22,24;31:11;
  36:8;50:11;54:1
**item (1)**
  46:25
**items (1)**
  46:12

**J**

**jam (1)**
  5:18
**James (3)**
  29:9,10;45:6
**jamming (1)**
  6:23
**JAMS (48)**
  25:18;27:1,5;32:15;

33:24;34:9;35:9;36:16,
16,22;37:4,7,9,12,13,
19,20;38:10,11,13,13;
40:2,9;44:22;45:12;
47:13,16;48:4,16,21,
24;49:12;50:11,14,15;
51:4;52:8,12;53:16;
54:22;55:4,11,19,23,
24;58:2,5,7
**Jay (1)**
  26:21
**jeopardy (1)**
  38:19
**joined (1)**
  24:18
**joining (1)**
  24:4
**joint (2)**
  23:3;30:24
**judge (32)**
  19:12;25:6;26:12,20;
  27:2,2,3,3;28:6,9,15;
  29:8,8,10,12;30:18;
  31:5;38:12;45:5,5,5,6;
  51:8;52:11,15,17;53:5,
  16,20;55:14,14;59:11
**judges (4)**
  34:9;38:5,5;44:22
**judging (1)**
  38:17
**judgment (9)**
  8:11,13,13,18;9:1,6,
  16;20:3;22:24
**judicial (1)**
  56:17;57:8;58:15
**June (2)**
  4:4,5
**jurisdiction (1)**
  46:23
**Justice (28)**
  25:15;26:9,18;28:14,
  21;29:2;32:15;33:24;
  34:10;36:4;38:8,15;
  39:4,7,7,8,12;40:8,15;
  41:3,6;49:20;50:10;
  51:1;52:6,13;53:8;56:8
**justification (1)**
  57:13

**K**

**Kawaichi (1)**
  27:3
**keep (5)**
  17:15
**keeps (1)**
  17:14
**Keller (1)**
  3:15
**kept (1)**
  48:15
**key (1)**
  48:25

**kick (1)**
  5:2
**kicking (1)**
  3:24
**Kim (1)**
  3:15
**kind (5)**
  17:1,18;25:21;32:17;
  38:19
**knows (7)**
  22:4;26:13;33:18;
  51:20;56:14,16,17

**L**

**LA (3)**
  34:12;49:22;52:2
**labels (1)**
  44:17
**Labor (1)**
  4:1
**lack (1)**
  25:18
**lamented (1)**
  52:13
**land (1)**
  42:20
**landscape (1)**
  14:8
**language (1)**
  48:22
**larger (2)**
  6:13;43:22
**last (7)**
  3:17,18;44:2;45:18;
  47:10,11;56:11
**late (2)**
  3:25;4:25
**later (4)**
  5:3;33:1,8;44:13
**law (1)**
  15:20
**lawn (1)**
  18:15
**lawyer (4)**
  7:11;10:17;29:20;
  38:12
**lawyers (2)**
  9:5;43:16
**least (12)**
  14:18;19:8;20:6;
  27:11;28:6;29:1,7,20;
  38:25;39:1;45:13;47:5
**leave (5)**
  39:15;45:16;50:4,24;
  51:6
**legislature (1)**
  38:16
**length (1)**
  43:22
**less (2)**
  53:11;58:6
**lest (2)**

13:12,12
**lets (1)**
  22:2
**letting (1)**
  3:16
**level (3)**
  6:24;10:12,14
**liability (5)**
  7:1;8:7,15,23;20:3
**likely (1)**
  26:4
**likes (2)**
  19:12;51:25
**limit (1)**
  18:3
**line (1)**
  32:16
**list (3)**
  33:11;47:16,25
**listed (1)**
  54:19
**Listen (1)**
  16:14
**listening (2)**
  23:19;31:9
**listens (1)**
  13:3
**listing (1)**
  47:15
**litigants (1)**
  55:13
**litigated (1)**
  4:19
**litigation (2)**
  31:16,16
**little (9)**
  4:2,16;8:6;18:8;
  21:12;33:1,2;38:2;
  53:17
**lives (1)**
  56:14
**LLP (1)**
  25:12
**log (2)**
  25:1;59:7
**long (7)**
  4:2,5;13:6;33:2;42:2,
  4;47:16
**look (12)**
  12:10,12;31:5;33:18;
  34:14,16;45:25;53:22,
  24;54:15;56:6;57:10
**looked (2)**
  25:17;54:25
**looking (3)**
  8:23;17:18;53:25
**looks (1)**
  27:16
**Los (1)**
  28:22
**lose (2)**
  8:18;19:3
**loss (1)**

13:20
**lot (9)**
  3:21;6:19,20;11:4;
  13:2;18:2;26:17;34:21;
  51:14
**lots (4)**
  27:16;31:17;35:25;
  42:19
**loves (1)**
  19:12
**low (2)**
  53:22,23
**luck (2)**
  22:25;56:23

**M**

**machine (1)**
  25:7
**mad (1)**
  21:12
**magnitude (1)**
  6:12
**Mai (1)**
  24:18
**mail (1)**
  33:21
**maintain (1)**
  12:19
**maintains (1)**
  10:23
**Majesti (1)**
  24:18
**major (2)**
  34:13;35:24
**makes (1)**
  42:12
**making (2)**
  34:23;36:14
**many (4)**
  10:16,17;49:19;53:2
**marks (1)**
  48:15
**matter (21)**
  3:7;4:14,23,23;5:11,
  14;15:20,23;17:1,23;
  19:14,20;23:15,23;
  24:7;32:9;33:3;39:18;
  49:22;54:11;57:20
**matters (3)**
  21:24;26:15;58:13
**Matthew (3)**
  24:8,11,17
**may (25)**
  4:2;6:7;14:23,24;
  15:8,11;18:2,5;20:12;
  23:19,20;27:25;29:2;
  30:20;34:8;37:12;38:8;
  41:7;46:6,7;47:5;
  55:25;58:11,11,19
**maybe (14)**
  8:18,18;12:11,11,23;
  15:3,3;16:21,21,22,22;

Case: 19-30088   Doc# 12954   Filed: 09/14/22   Entered: 09/14/22 11:09:32   Page 66
of 72

18:23;29:17;42:6
**mean (17)**
7:7;11:4,6;16:12,17;
30:4;36:25;37:2,8,10,
15,20;38:10,11;48:6,
11;55:2
**meaning (1)**
27:23
**means (1)**
53:15
**meantime (1)**
20:5;21:2
**mechanism (1)**
31:3
**mediate (4)**
5:16;8:3;10:4;12:25
**mediation (17)**
4:7,18;10:2,12,14,
18;11:4,5;12:19;13:10;
14:19;16:9,14;20:13;
22:19;48:2,13
**mediations (1)**
26:22
**mediator (7)**
10:7;11:8;12:8;
26:21,22;48:6,7
**mediators (5)**
10:19,21;20:15;
37:16;48:4
**meet (1)**
17:17
**member (2)**
26:20;37:10
**mention (1)**
29:7
**mentioned (2)**
27:25;28:7
**mentions (4)**
26:17,19,20,25
**merits (2)**
46:23;55:15
**messenger (1)**
34:5
**microphone (1)**
24:25
**might (23)**
7:23;10:8;12:22;
15:2;20:25;22:22;26:1;
29:21;31:20;32:21,22,
22;34:1;37:21;39:6,6,
14;51:3,10,11;53:22;
58:3;59:1
**million (5)**
11:17,23;16:16;
19:22;57:11
**mind (3)**
29:14;36:6,12
**minimum (1)**
29:1
**minor (1)**
43:24
**minute (2)**
3:17;57:14

**misappropriated (1)**
36:6
**mischief (1)**
37:21
**miscommunication (1)**
14:23
**misconduct (1)**
49:16
**misquotes (1)**
52:2
**misstatements (1)**
52:16
**modification (2)**
46:1,8
**modified (1)**
45:21
**Molton (49)**
24:4,13,14,21,24;
25:4,5,6,11,11;26:6,12;
28:15;20:29:10;30:12,
18,23;31:5,13,14,25;
32:3,6,13,25;33:7;
36:21;37:1,3;38:6,24;
39:12,18;42:25;43:2;
44:6,19;45:6;50:22;
51:8,13,20;54:6,18;
56:17;58:19,21,24
**Molton's (2)**
47:1;54:8
**moment (2)**
15:12;29:24
**money (5)**
16:2;35:1,2,4;56:13
**Montali (1)**
3:6
**month (3)**
14:11;19:13;22:4
**more (17)**
5:19;8:6,16;9:19,22;
17:8;19:13,16,17;20:8;
25:15;30:14;38:20;
42:10;45:17;51:25;
53:15
**Morning (8)**
3:9,11,14;5:7;23:24;
24:1;25:5;35:18
**Morris (1)**
3:12
**most (2)**
9:5;26:14
**motion (40)**
8:10,18;9:1;19:17,
21;20:2;22:21,23,24;
24:19;25:14,15,18,18,
20;26:1,5,11,14;27:25;
29:15;30:1,15,24;
32:19;34:2,17;36:11;
41:25;42:14;44:18,21,
22,25;45:13;46:21;
48:18;50:11;54:11
**motions (5)**
9:5,6;41:23,24;42:15
**mouth (1)**

40:8
**move (1)**
30:14
**moving (3)**
6:18;31:10;42:20
**much (8)**
4:21;14:6;19:20;
23:7,21;24:21;25:19;
45:12
**multifaceted (2)**
52:4,13
**Must (2)**
14:13;43:14
**muting (1)**
24:25
**myself (1)**
42:8

## N

**name (6)**
24:10;29:19,20;
44:25;52:6,7
**named (3)**
40:13;44:23;45:7
**names (2)**
26:17;50:10
**narrow (1)**
36:11
**nature (4)**
5:8;15:4,18;30:9
**near (1)**
6:1
**necessarily (1)**
50:12
**necessary (3)**
36:11;43:1;50:18
**need (17)**
4:3,19;5:3,15,22;
13:14;14:15;18:14;
21:19;26:3;31:9;38:19;
46:9,20;50:16;54:10,
16
**needed (1)**
4:9
**needs (2)**
4:18;14:25
**negotiated (2)**
45:23;46:5
**neither (1)**
36:4
**neutral (6)**
52:25;55:11;56:4;
58:3,10,17
**neutrals (5)**
52:25;53:2,17;58:2,
17
**nevertheless (1)**
30:2
**new (4)**
4:5;12:8;20:23;35:3
**Newsom (1)**
29:12

**Newsome (2)**
26:20;45:5
**newspaper (3)**
27:10;34:8;52:1
**next (15)**
3:20;5:20;18:24;
20:24;21:1,21;22:9;
23:15;32:20,21;37:2,4;
38:6;47:2,3
**Nice (1)**
3:9
**noncomplex (2)**
52:23;53:1
**none (3)**
6:13;42:4;56:7
**nonfire (1)**
31:19
**Nope (1)**
24:15
**normal (1)**
30:3
**note (4)**
27:21;46:24;48:1;
53:10
**noted (3)**
47:9;50:5;58:18
**notice (9)**
27:12,19;32:8,18,22;
33:21;36:12,13,17
**noticed (3)**
29:3;31:2;33:11
**notices (1)**
53:8,14
**notion (1)**
38:1
**Notre (2)**
21:1,3
**November (7)**
22:10,11,12,13,14,
17;23:2
**nowhere (1)**
6:1
**number (9)**
26:25;46:13;51:24;
52:17,18;53:10,22,24;
54:19

## O

**objection (8)**
4:24;5:3;8:14;11:10,
13;15:23;17:6;23:1
**objections (1)**
6:1
**Obviously (1)**
29:21
**occasion (1)**
49:19
**occurred (1)**
51:17
**o'clock (1)**
23:2
**October (5)**

22:8;30:20;32:14,23;
39:18
**off (6)**
25:6;42:4,17;51:8;
59:7,7
**officer (7)**
27:4;30:21;52:21,21,
22;54:20;55:10
**old (1)**
43:12
**Oliner (42)**
3:9,11,11,19,21;
5:18;7:2,18;8:15;9:19;
10:20,22;11:11,13;
12:4,12,17;13:9,10,11,
25;15:11;16:4,13,19;
17:17,20;19:4,15,23;
20:19,21,23;21:3,5,10,
25;22:12,13;23:7,10,12
**Oliner's (2)**
7:8;18:24
**Olinger (1)**
9:24
**once (1)**
51:22
**one (35)**
8:4;9:8;10:7;13:13,
18,19,20;15:20;19:13;
20:15;22:9;26:3;27:6;
28:15;29:7,14,20,21;
36:23;37:11;39:23;
40:10,12;42:12;43:15,
25;45:6,17;47:11,20;
49:8;51:24;54:22;57:3;
58:10
**ones (1)**
10:19
**one's (2)**
7:25,25
**only (9)**
18:20;22:7;27:18;
32:2;37:11;39:8,9;
48:14;57:12
**onto (1)**
25:7
**oOo- (1)**
3:3
**open (1)**
39:15
**opening (4)**
28:16;43:12,17;
58:15
**operating (1)**
35:10
**opinion (2)**
45:12;51:21
**opportunity (12)**
27:12,20;28:8,12;
42:11,13;43:1,3;44:3,7,
11;46:16
**oppose (2)**
8:17;29:18
**opposed (1)**

Case: 19-30088    Doc# 12954    Filed: 09/14/22    Entered: 09/14/22 11:09:32    Page 67
of 72

6:22
**opposing (1)**
26:11
**order (22)**
3:4;4:9;6:12;28:4;
29:11;31:6;32:22;
39:15,25;41:18;44:6;
45:21,24;46:6,8,13,15,
15,16,18;51:1;53:20
**ordinary (1)**
49:2
**Oregon (1)**
20:24
**original (4)**
29:25;30:1;33:13,16
**others (3)**
10:16;32:23;40:19
**otherwise (2)**
20:16;27:24
**ought (1)**
38:17
**out (30)**
3:23,25;4:1;5:2,19,
22;7:18;9:22;11:11;
14:9;17:13;21:23;22:4;
25:1,21;26:4;31:2;
34:25;35:2;38:4;40:20;
42:5;43:17;45:4,25;
46:4,9;48:6;49:2,13
**outcomes (1)**
52:9
**outside (1)**
34:19
**over (11)**
4:7;10:18;14:17;
17:19;18:5,8,8;19:13;
20:21;34:25;57:24
**overlap (1)**
19:8
**owes (1)**
16:2
**own (5)**
7:3;13:20;20:9;40:8;
44:9

**P**

**pad (1)**
46:24
**page (2)**
22:16;52:3
**pages (1)**
3:22
**paid (3)**
7:17;9:10;10:21
**paint (3)**
49:10,11,11
**painted (1)**
50:4
**painting (1)**
50:3
**panel (7)**
10:3,5;20:15;52:23;
53:1,2;54:21
**panelists (1)**
27:1
**paper (3)**
8:8;43:18;52:10
**papers (2)**
27:14;51:16
**Parada (5)**
22:3;24:2,6,22;59:6
**parameters (1)**
36:18
**part (1)**
21:23
**particular (1)**
58:10
**parties (12)**
10:4;26:9;32:8,18;
33:25;35:1;39:21;
40:25;42:9,20;44:14;
45:2
**party (1)**
31:18
**past (7)**
8:4,5;9:11;10:18;
35:8;37:12;46:14
**path (1)**
56:9
**pattern (10)**
33:24;34:3,7,11,20;
35:2,20,22;36:2,25
**patterns (2)**
48:18;56:2
**Pause (1)**
25:3
**pay (1)**
16:17
**pending (1)**
49:1
**people (23)**
9:7;10:4;25:22;26:9,
25;27:18;29:6;32:15;
35:25;36:19;41:14;
44:23;45:1,6;46:15;
49:19;50:14;52:5,14;
54:21;55:22;56:24;
57:7
**peoples (1)**
47:16
**per (1)**
14:18
**perceived (1)**
57:9
**percent (7)**
19:23;53:7,11,12,13,
13,13
**perhaps (5)**
8:17;12:8;17:17;
30:14;36:11,19;37:16;
38:8;41:12,20;42:2,3,
18;47:3;49:17
**period (1)**
30:17
**persists (1)**
16:3
**person (6)**
29:7,13;38:12;40:10,
12;55:18
**personal (2)**
18:23;49:18
**personally (3)**
29:2;37:14;39:4
**person's (1)**
24:10
**perspective (3)**
6:6,15,15
**persuasion (1)**
6:17
**pertain (1)**
19:1
**petition (1)**
58:18
**PG&E (24)**
3:7;4:12;5:12;6:2;
13:7;14:9,15,24;15:9,
19;16:2;17:6,22;18:1,
2,13,13;19:8;20:2,4,14;
22:3;30:24;31:8
**PG&E-approved (1)**
4:10
**PG&E's (7)**
6:15;12:20;13:17,19;
14:7,13;20:11
**philosophically (1)**
6:22
**phrase (1)**
17:15
**Pichon (1)**
27:3
**pick (2)**
10:5;49:12
**picture (1)**
50:3
**Piedmont (1)**
4:8
**pin (1)**
9:17
**place (2)**
46:19,19
**plaintiffs (1)**
31:17
**plan (3)**
4:10;14:3;42:17
**playing (1)**
6:24
**pleading (3)**
5:17;52:3;53:5
**pleadings (2)**
28:1,11
**please (4)**
3:10;23:24,25;24:14
**pleasure (4)**
3:20,22;6:4;17:12
**plenty (1)**
22:15
**pocket (1)**
56:13
**pockets (1)**
56:16
**point (36)**
7:9;8:19;11:14;
15:13;16:12;18:18;
21:22;26:13;33:23;
36:17;38:21;39:15,19;
41:2,5,9,15,16,16,19;
42:23;43:5,23;45:17,
17,19;46:10;47:1,6,10,
11;50:25;51:7;54:18;
56:12;59:1
**points (5)**
16:4;39:25;41:17;
43:24;48:25
**polite (1)**
4:11
**pool (2)**
15:16;18:2
**position (7)**
4:9,21;12:20;47:8;
50:9,23;56:4
**positions (1)**
7:18
**possible (2)**
7:3;42:4
**post- (1)**
11:20
**post-agreement (1)**
16:7
**post-confirmation (1)**
46:22
**practical (2)**
13:8,22
**practice (1)**
30:7
**practicing (1)**
33:18
**practitioner (1)**
7:8
**precede (2)**
28:23;53:23
**preceded (2)**
26:15,23
**precluding (1)**
46:6
**preliminary (9)**
25:16;44:2,2,4,5,10,
13,14,18
**premature (2)**
9:24;47:7
**prepare (1)**
7:1
**prepared (7)**
5:25;10:11;16:17;
27:23;38:21;41:6;
49:11
**presence (1)**
7:8
**present (3)**
6:21;26:19;28:23
**preserved (2)**
47:8,8
**presiding (1)**
3:6
**press (1)**
35:13
**previously (2)**
12:18;30:6
**principal (1)**
10:17
**prior (14)**
7:24;10:1;25:15;
27:22;37:6;39:9,9;
41:13,14;45:13;46:5;
47:18;51:3;54:11
**private (1)**
38:17
**pro (1)**
42:7
**prob (1)**
55:15
**probably (4)**
12:4;22:4;36:22,23
**problem (1)**
36:13
**Procedurally (2)**
9:18;32:16
**procedure (6)**
12:9;22:19;25:21;
27:5;44:24;45:8
**procedures (2)**
33:10,19
**proceed (6)**
4:10;11:14;21:14,18;
23:23;27:8
**proceeding (2)**
9:3;38:19
**proceedings (1)**
59:12
**process (8)**
13:6;20:13,17;30:3;
42:19;56:13;57:8,8
**processed (1)**
30:8
**processor (1)**
37:9
**productively (1)**
21:24
**professional (2)**
4:11;5:3
**professionalism (1)**
23:13
**progress (2)**
12:11;22:25
**prohibit (1)**
18:3
**prolix (1)**
43:11
**prominent (1)**
58:6
**promise (1)**
47:11
**prompted (1)**
6:9
**proof (10)**

Min-U-Script®

Case: 19-30088    Doc# 12954    Filed: 09/14/22    Entered: 09/14/22 11:09:32    Page 68
of 72

eScribers, LLC
www.escribers.net

(8) opposing - proof

6:18;8:12;15:1,5;
18:6,22;19:18,24,25;
51:15
**proofs (1)**
15:21
**proper (5)**
8:14;32:8;45:10;
46:20;56:5
**property (16)**
4:8,9,13;5:13;6:14;
13:21;14:12,15,24;
15:15;17:22;18:9,25;
19:5;20:10,10
**proponents (1)**
46:15
**proposal (1)**
30:16
**proposed (1)**
27:16
**proposing (1)**
31:23
**prosecute (1)**
12:23
**protect (1)**
38:14
**protections (1)**
45:23
**protective (6)**
45:21,24;46:5,13,18;
53:20
**proud (1)**
53:4
**provable (1)**
15:9
**prove (8)**
6:25;11:21;12:13,14;
13:16;16:2,24;18:21
**proved (1)**
56:18
**proven (1)**
9:15
**proves (1)**
13:17
**provide (8)**
12:5;17:23;20:12;
33:21;40:5;42:10;
47:24;56:6
**provided (7)**
12:20;17:6,7;42:1;
48:9;56:17;57:12
**provides (1)**
59:3
**providing (5)**
33:22;34:22;35:9,13;
47:18
**prudent (2)**
35:6;56:9
**purpose (1)**
47:18
**purposes (1)**
16:8
**push (3)**
3:23;4:1;42:3

**pushing (1)**
53:9
**put (17)**
5:22;9:22;11:24;
12:3;15:16;17:3;19:13,
24;20:21;41:20;42:1,7;
45:4;52:1;53:5;54:6;
56:13
**puts (1)**
42:8
**putting (2)**
13:12;34:2

## Q

**questionnaires (1)**
53:6
**quickly (1)**
30:14;41:24;42:24
**quit (1)**
23:11
**quite (3)**
9:20;10:13;25:19
**quote (2)**
52:10,10
**quoted (2)**
41:4;51:1

## R

**raised (2)**
24:5,8
**raises (1)**
46:22
**raising (1)**
38:22
**random (1)**
52:25
**rapport (1)**
21:12
**rather (1)**
33:7
**read (5)**
3:17;5:5,7;34:18;
52:22
**reader (1)**
5:6
**reading (2)**
26:14;28:1
**reads (1)**
51:25
**ready (2)**
16:16;30:18
**real (1)**
37:15
**realize (1)**
25:25
**really (5)**
5:7;6:13;45:22;
47:24;58:15
**reasonable (2)**
7:3;35:15
**reasonably (1)**

30:16
**reasons (2)**
20:4;27:9
**rebuild (2)**
15:15;56:13
**recall (1)**
30:20
**receive (1)**
12:20
**received (3)**
3:25;6:12;14:12
**receiving (2)**
3:22;4:17
**recently (1)**
41:22
**recognize (1)**
29:19
**record (5)**
17:5;20:3;25:10;
28:4;41:5
**redacted (7)**
47:25;48:2,14,22;
49:7,8;54:14
**redacts (1)**
48:6
**refer (1)**
46:23
**referred (2)**
26:23;52:5
**referring (2)**
48:5;53:21
**refers (2)**
53:2,3
**regarding (2)**
41:22;52:7
**regime (1)**
27:4
**rehire (1)**
58:7
**reiterate (2)**
51:13;53:25
**reiterated (1)**
33:7
**related (3)**
10:23;31:11;36:15
**relationship (6)**
15:4,18;36:15;37:13;
38:13;55:19
**relationships (4)**
37:6;50:14,15,20
**relevance (1)**
18:20
**relevant (3)**
20:7;21:16;56:5
**reliant (2)**
34:19;35:13
**relief (3)**
46:20;47:3,5
**relying (1)**
48:20
**remain (2)**
18:14,14
**remark (1)**

28:16
**remarks (2)**
26:12;27:11
**remedies (2)**
46:6;57:3
**remember (1)**
46:12
**remind (1)**
19:10
**reorganized (1)**
3:15
**repay (1)**
23:11
**repeatedly (1)**
14:1
**reply (5)**
32:21;43:14,16;57:5;
59:1
**report (4)**
17:7,7;34:8;50:13
**reported (2)**
34:12;35:20
**reporting (3)**
34:12,19;54:10
**represent (3)**
27:18,18;40:25
**representatives (2)**
40:2;49:16
**represented (1)**
39:11
**request (6)**
4:1;5:1;27:13,15,15;
52:4
**requested (3)**
4:7,12;47:3
**requests (4)**
27:17;28:8;30:8;
31:22
**require (1)**
19:17;41:8
**required (2)**
20:1;23:5
**requires (1)**
14:9
**research (1)**
46:9
**resolution (4)**
19:21;20:13;22:18,
18
**resolve (3)**
4:6;10:5;21:16
**resolved (1)**
53:14
**resolving (2)**
13:5;20:8
**respect (3)**
28:24;31:10;53:20
**respond (22)**
11:13;27:24;29:16,
17;30:16;32:14,25;
33:4;38:9;39:5,8;41:6;
42:9,13,18,21;43:1;
44:19;45:7,8;54:1,5

**respondent (2)**
29:3,14;30:2
**respondents (4)**
25:20;26:1,4;29:21
**responding (2)**
29:18;54:1
**response (21)**
3:19;25:17;29:1,16;
30:14;32:7,9,19;33:1;
38:6;25;39:2,3,13,17,
21;42:8,15,22;51:9;
52:19
**rest (1)**
59:8
**result (2)**
7:9;52:25
**retained (1)**
4:4
**retention (2)**
48:11,12
**reticence (1)**
12:24
**retire (1)**
23:16
**retired (7)**
27:2,2,3;38:5,12;
55:14,14
**return (3)**
8:21,21;55:25
**reveal (1)**
46:4
**reveals (1)**
46:3
**review (4)**
47:2;56:17;57:8;
58:15
**reviewed (2)**
49:5,7
**reviews (1)**
52:22
**revisit (1)**
56:21
**revisiting (1)**
7:19
**right (21)**
5:2;7:20,21,25;11:2,
3,5;14:24;15:11;16:25;
17:1,16;23:24;24:13;
25:1;28:9,19;30:22;
42:18,22;51:19
**rights (1)**
19:2
**rocket (1)**
16:6
**role (8)**
10:17;29:12;30:9,10;
34:22;47:20;48:17;
50:23
**roles (1)**
47:14
**roll (1)**
29:23
**Ron (1)**

Case: 19-30088    Doc# 12954    Filed: 09/14/22    Entered: 09/14/22 11:09:32    Page 69
of 72

3:11
**room (1)**
31:9
**rounds (1)**
7:25
**route (1)**
11:6
**Rudnick (1)**
25:11
**Rule (6)**
8:9,10;13:23;30:3,4;
45:10
**rules (9)**
5:11,13,13;18:3;
19:1,25;42:13;45:4,8
**ruling (4)**
7:14,15;8:1;9:14
**rulings (1)**
7:24
**run (1)**
43:17
**Rupp (44)**
3:13,14,14,16;4:4,11,
16;6:4,5;7:13;8:5,22,
25;9:17,21;10:10,13;
11:1,3,10,15;13:12;
14:4,14;16:20;17:2;
18:7;19:11;21:4,6,7,11,
15;22:4,6,15,21;23:6,9,
11,15,16,19,22
**Rupp's (5)**
4:21;5:14,23;14:18;
16:16

## S

**sad (1)**
5:16
**safe (1)**
18:11
**same (10)**
12:9;19:6;22:16;
25:21;36:8;39:13;
43:16;55:7;57:25;58:1
**SAN (1)**
3:1
**Saturday (1)**
21:1
**save (2)**
51:9;57:4
**saw (2)**
29:19;30:3
**saying (7)**
8:6;29:18,25;41:4;
43:12;51:1;56:5
**say-so (1)**
49:11
**scandal (1)**
34:13
**scene (1)**
12:9
**schedule (3)**
22:2,20;58:23

**scheduling (3)**
11:11;22:19,19
**science (1)**
16:6
**scope (2)**
7:2;25:19
**scream (1)**
31:2
**se (1)**
42:7
**seal (1)**
42:16
**sealing (1)**
42:24
**second (4)**
18:16;41:17,19;
54:18
**Secondly (1)**
49:10
**secret (1)**
42:16
**section (3)**
48:10,13,14
**security (3)**
34:22,25;35:6,9
**seem (2)**
10:6;25:8
**seemed (1)**
6:13
**seems (8)**
6:18;7:8,22;14:22;
16:20;18:20;29:5;42:2
**selected (1)**
49:21
**sense (3)**
13:22;45:2,2
**sent (2)**
4:16;57:19
**separate (2)**
19:9;32:9
**separating (1)**
16:23
**SEPTEMBER (2)**
3:1;5:1
**serve (4)**
33:12,12;38:4;45:3
**served (3)**
29:16;33:14,15
**service (3)**
33:11,13,16
**servient (2)**
15:19;19:1
**session (1)**
3:5
**set (6)**
5:25;8:1;19:21;
22:20;25:16;36:18
**sets (1)**
51:22
**setting (1)**
9:23
**settle (1)**
6:16

**settled (6)**
6:17;9:9;13:15,23,
24;57:11
**settlement (10)**
7:16;9:14;11:21;
16:3;30:23;31:7,11,15,
21;57:9
**sexy (1)**
14:17
**shape (1)**
5:24
**share (1)**
7:6
**shareholder (7)**
40:8,13,16,17;41:4;
51:2;55:24
**shareholders (6)**
40:3,21,22,23;55:22;
56:7
**sharing (1)**
38:1
**shifted (1)**
5:8
**short (1)**
30:16
**shot (1)**
13:4
**show (3)**
7:22;8:3,17
**shows (1)**
58:17
**side (4)**
7:11;8:3;12:12;
22:21
**sideshow (1)**
14:11
**silly (1)**
12:2
**similarly (1)**
35:7
**simple (2)**
34:15;54:21
**simply (4)**
25:21;32:23;44:19;
49:13
**single (3)**
19:12;51:16;54:22
**sins (1)**
49:12
**sitting (1)**
54:21
**situation (1)**
16:2
**SJ (1)**
13:5
**Skikos (2)**
26:20;47:19
**skis (1)**
18:8
**solve (1)**
14:20
**solved (1)**
4:18

**somebody (3)**
34:25;37:8;46:19
**somehow (2)**
49:15,20
**someone (3)**
10:5;23:15;29:17
**sometime (2)**
22:10;37:12
**somewhere (1)**
41:5
**sooner (1)**
33:7
**sorry (5)**
10:13;11:18;24:10;
25:6;48:12
**sort (4)**
23:3;24:25;36:14,18
**sorts (1)**
46:22
**sound (1)**
17:5
**South (1)**
20:25
**speak (2)**
28:14;29:24
**speaking (1)**
51:8
**specific (1)**
8:23
**specifically (2)**
25:15;56:8
**speculate (1)**
47:7
**spring (1)**
6:21
**squawked (1)**
56:24
**staff (1)**
59:8
**stand (2)**
33:20;39:19
**start (2)**
7:22;45:4
**starting (1)**
36:17
**state (11)**
3:10;8:13;9:3,4;
17:6;23:24;24:13;25:9;
31:16;44:14;47:12
**stated (7)**
29:22;33:6;44:3,6;
46:2;54:12;56:8
**statement (1)**
51:21
**status (1)**
23:4
**stay (1)**
49:8
**staying (1)**
23:14
**steamroll (1)**
13:7
**step (3)**

**somebody (3)**
36:14;37:2;47:4
**steps (3)**
35:6;38:2;50:5
**stick (1)**
58:23
**still (8)**
4:22;11:1;21:20;
24:15;30:13;31:1;38:1;
40:8
**story (1)**
58:11
**strange (1)**
13:14
**struck (1)**
13:13
**structures (1)**
54:14
**studies (1)**
16:7
**stuff (3)**
12:24;19:18;21:16
**subject (2)**
30:24;46:17
**subjected (1)**
56:12
**submitted (2)**
39:19;51:16;53:6
**success (1)**
11:4
**successful (2)**
10:25;16:18
**suddenly (1)**
14:15
**suffered (2)**
13:16;15:10
**sufficient (2)**
35:21;36:7
**suggest (2)**
15:12;30:19
**suggested (3)**
12:19;32:7;54:2
**suggests (1)**
53:22
**summary (8)**
8:11,13,13,18;9:6,
16;20:2;22:24
**summation (1)**
5:22
**Sunday (1)**
14:14
**supplemental (1)**
5:19
**support (2)**
11:2;12:8
**suppose (2)**
55:8,10
**Supreme (1)**
38:16
**sure (16)**
11:5;13:4,22;17:20;
18:9;19:3;24:17;29:23;
33:9;34:23;36:7;41:19;
43:25;44:8;45:19,24

Min-U-Script®

eScribers, LLC
www.escribers.net

(10) room - sure

Case: 19-30088   Doc# 12954   Filed: 09/14/22   Entered: 09/14/22 11:09:32   Page 70
of 72

**surprised (1)**
28:25
**swimming (1)**
18:1
**syllable (1)**
36:23
**system (1)**
57:15

**T**

**taint (2)**
49:11,12
**tainted (1)**
49:16
**talk (1)**
59:8
**talking (2)**
18:4;21:21
**team (1)**
21:5
**technical (1)**
45:2
**technically (1)**
8:9
**ten (1)**
16:15
**tenacious (2)**
7:7;13:3
**tenants' (1)**
19:2
**tenement (1)**
15:19
**tenements (1)**
15:19
**tennis (1)**
15:16
**term (2)**
17:16;25:19
**terminated (2)**
11:18,19
**termination (1)**
7:15
**terms (2)**
36:12;53:18
**terrific (2)**
21:10;22:15
**theory (4)**
6:25;8:7,23,25
**therefore (10)**
9:10;37:20;38:10;
41:13,14;43:14,14;
55:11,19;56:25
**there'll (2)**
12:11;19:14
**third-party (1)**
10:19
**thirty (1)**
12:10
**Thomas (1)**
3:14
**thorough (1)**
43:13

**thoroughly (1)**
38:20
**though (3)**
13:11;18:19;36:12
**thought (3)**
29:20;50:10,13
**three (2)**
39:25;41:17
**threw (1)**
18:22
**throughout (1)**
4:11
**thumbs (1)**
25:8
**Times (4)**
28:22;34:12;49:22;
52:2
**title (1)**
48:14
**to-be-set-next (1)**
21:19
**TOC (1)**
26:20
**today (12)**
9:19;23;11:12;21:8;
23:7;24:3,7;28:3,14;
31:6;46:22,25
**together (1)**
10:5
**told (2)**
29:17;57:21
**tomorrow (1)**
14:13
**took (1)**
45:9
**tossed (1)**
11:16
**towel (1)**
18:22
**tower (1)**
15:3
**towers (2)**
18:12,14
**town (2)**
5:20;21:23
**track (2)**
31:1;41:21
**tracked (1)**
41:25
**traditional (2)**
9:3;19:25
**treat (1)**
5:13
**treated (2)**
6:2;9:6
**trial (5)**
9:23;12:3,13;17:3;
22:20
**tried (5)**
4:6,17;5:25;6:20;
45:11
**Trot (1)**
41:3

**Trotter (23)**
25:16;26:9,19;28:14,
21;29:2;32:15;33:24;
34:10;36:4;38:8;39:4,
7,7,8,12;40:15;41:3,6;
49:21;51:1;53:8;56:8
**Trotter's (2)**
40:8;50:10
**trouble (1)**
8:2
**troubling (1)**
17:14
**true (2)**
18:17;40:6;42:19
**Trust (33)**
25:12,16;26:15,16,
24;27:23,24;28:18,23;
29:5;30:24;32:13;
34:23,23;35:9;36:14,
15,16,22;37:3,7;38:18;
39:9;49:15;50:13;
51:17,18,22;52:13,18;
53:23;54:13;57:5
**Trustee (36)**
24:3;25:12,23;26:18,
19;28:17;29:4;31:16,
17;32:13,14;34:22;
35:8;36:5;37:11;38:9;
39:4,9,9,10,10,11,18;
41:13,13,14,24;42:3,8,
25;45:14,21;51:6;53:9;
56:2;59:3
**trustee's (2)**
32:19;42:16
**trusts (1)**
36:5
**trust's (1)**
50:23
**try (9)**
5:25;10:2,5;13:7;
14:20;21:16;22:16;
40:23;47:25
**trying (8)**
6:16;9:12;14:6;
15:22;19:3;22:25;
38:14;41:20
**TUESDAY (1)**
3:1
**turn (6)**
4:7;14:17;20:2;26:2;
41:16;59:7
**turned (2)**
17:19;34:25
**turns (1)**
40:20
**twenty-five (1)**
48:25
**two (14)**
5:1,19,20;7:18;
15:19;19:9;20:22,24;
21:23;22:2;36:5;43:24;
52:17,18
**two-thirds (2)**

53:11,12

**U**

**Ultimately (1)**
17:2
**unaware (1)**
42:7
**uncertainties (1)**
29:14
**under (10)**
9:4;11:23;12:9,15;
18:2;19:2,22;27:4;
33:3;44:24
**undermine (1)**
11:2
**undermined (1)**
52:8
**underpinning (1)**
9:14
**understood (5)**
33:10;34:14;43:19,
22;58:9
**undeserved (1)**
21:8
**unequal (1)**
57:15
**Unfortunately (2)**
47:15,22
**UNISON (1)**
59:5
**unjustly (1)**
57:11
**unless (3)**
7:18;36:24;47:6
**unlike (1)**
29:25
**unprecedented (1)**
44:24
**unredacted (1)**
49:5
**unrelated (1)**
34:13
**unsuccessful (1)**
10:2
**unusual (1)**
45:8
**unworkable (1)**
20:19
**up (13)**
5:18;6:6;9:6;12:7;
16:2;18:1;25:8;37:1;
43:25;44:17;46:10;
51:10;58:15
**upon (4)**
17:23;34:19;41:25;
50:17
**upright (1)**
18:14
**upset (1)**
42:15
**urgent (3)**
5:1;14:12,15

**used (4)**
37:9;45:25;52:1;
55:18
**useful (2)**
12:23;32:6
**using (2)**
17:15;32:6;45:10

**V**

**vacated (1)**
47:6
**value (1)**
13:21
**various (1)**
27:8
**vendors (1)**
14:13
**verbose (1)**
43:10
**versus (1)**
15:8
**via (2)**
33:14,21
**Victim (10)**
25:12,12;28:17,18;
30:24;39:17;49:15;
51:6;52:12;56:12
**victimization (2)**
52:5,14
**victims (8)**
33:9;38:18;40:25;
42:9;54:12;56:1,16;
57:8
**victims' (1)**
56:15
**view (3)**
7:9;17:22;28:6
**viewed (1)**
17:10
**Viggo (1)**
27:3
**voluntarily (1)**
12:2
**volunteer (1)**
36:24

**W**

**wait (5)**
25:2;48:5;57:14;
58:24;59:2
**wants (12)**
6:25;9:19;16:24;
17:21;18:9;19:5,18;
20:9,14;22:22;36:24;
49:22
**warned (1)**
14:1
**watch (1)**
21:1
**way (12)**
5:24;6:2;8:5;11:11;

14:20;16:22;18:2;
20:15;21:17;34:21;
45:11,14
**ways (2)**
34:21;35:10
**week (1)**
4:25
**weeks (7)**
5:1,19,20;20:22,24;
21:23;38:6
**weigh (1)**
42:10
**well-intentioned (1)**
52:8
**weren't (1)**
28:10
**whatnot (1)**
27:10
**What's (23)**
3:19,19;6:4;7:12;
11:6;13:25;14:3,9,16;
16:5;18:11;22:3,9;
24:10;37:2,4;41:17,22;
44:1;48:15;55:15,15;
56:25
**Whereupon (1)**
59:12
**whole (6)**
6:19,20;10:3;30:6,7;
48:13
**wholly (2)**
18:5;32:10
**whomever (1)**
33:21
**who's (4)**
40:13,17,19;48:2
**willing (6)**
10:2,16;11:2;16:10;
19:16;20:11
**willingness (1)**
12:18
**win (1)**
8:19
**wins (1)**
20:4
**wish (5)**
22:24;23:20;24:16;
33:4;35:17
**wished (1)**
45:11
**withdrew (1)**
18:22
**within (10)**
30:16;40:25;44:6;
45:22;47:14,25;48:17,
18,25;56:1
**without (4)**
14:2,9;17:3;53:14
**won (1)**
7:25
**wonder (1)**
10:7
**word (2)**

49:7,12
**words (3)**
9:1;15:2;17:25
**work (9)**
5:20;17:8,12;25:8;
37:9,12;53:5;55:11;
58:5
**worked (1)**
12:9
**working (1)**
55:23
**workload (1)**
43:21
**world (2)**
35:25;38:17
**writing (1)**
12:18
**written (2)**
33:21;39:2
**wrong (4)**
7:12;15:12;51:17;
55:15
**wrongdoing (1)**
52:18
**wronged (1)**
42:23

**Y**

**Yanni (11)**
25:13;26:7,19;28:17;
29:4;34:10;37:12;39:1;
47:19;51:3;53:9
**year (3)**
7:16;51:22,23
**year-end (1)**
53:10
**years (3)**
10:19;13:15,24
**York (1)**
20:23

**1**

**10 (1)**
23:2
**10,000 (1)**
16:17
**100,000 (3)**
6:10;7:21;11:22
**10th (1)**
6:7
**11:29 (1)**
59:12
**11th (2)**
22:6,14
**12766 (1)**
52:3
**12b (1)**
8:9
**12b6 (4)**
9:2,4,5;22:23
**13 (1)**

3:1
**13,000 (1)**
46:12
**13.5 (1)**
35:4
**155 (1)**
53:16
**15th (1)**
22:11
**1st (1)**
5:1

**2**

**2 (4)**
22:13,14;51:24;52:3
**2004 (6)**
30:3,4,8;37:24;
44:25;45:10
**2022 (1)**
3:1
**20-whatever-it-was (1)**
9:9
**2nd (3)**
22:11,17;23:2

**3**

**30th (1)**
22:11
**36,000 (3)**
53:6,7,11
**39 (1)**
52:3
**3rd (4)**
30:20;32:14,23;
39:18

**5**

**5 (1)**
11:22
**50,000 (1)**
9:10
**500,000 (1)**
57:12
**56 (1)**
8:10

**6**

**67 (1)**
53:13

**8**

**8662 (3)**
45:22;46:13,24

**9**

**900,000 (1)**
7:21

**9014 (1)**
5:13
**99.33 (1)**
53:13

Min-U-Script®

eScribers, LLC
www.escribers.net

Case: 19-30088    Doc# 12954    Filed: 09/14/22    Entered: 09/14/22 11:09:32