1  William B. Abrams
   end2endconsulting@gmail.com
2  2041 Stagecoach Rd.
   Santa Rosa, CA, 95404
3  Tel: 707 397 5727

4

FILED *gp*

SEP 22 2022

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

5  *Pro Se Fire Victim Claimant and Party to related proceedings before the California Public Utilities*
6  *Commission and the California Office of Energy Infrastructure Safety*

7

8

9           **UNITED STATES BANKRUPTCY COURT**
10          **NORTHERN DISTRICT OF CALIFORNIA**
              **SAN FRANCISCO DIVISION**
11

12

13  In re:                                    Bankr. Case No. 19-30088 (DM)
                                              Chapter 11
14  PG&E CORPORATION,                         (Lead Case)
                                              (Jointly Administrated)
15
        -and-
16                                            **MOTION OF WILLIAM B. ABRAMS**
17  PACIFIC GAS AND ELECTRIC                  **PURSUANT TO FEDERAL RULE OF**
    COMPANY,                                  **BANKRUPTCY PROCEDURE 2004**
18                    Debtors.                **FOR ENTRY OF AN ORDER**
                                              **AUTHORIZING DISCOVERY AND**
19                                            **HEARINGS REGARDING DEBTORS**
                                              **ACTS, CONDUCT AND**
20   ☐ Affects PG&E Corporation              **AGREEMENTS THAT MAY**
                                              **OBSTRUCT OR LIMIT THE JUST**
21   ☐ Affects Pacific Gas and Electric Company **AND FAIR MANAGEMENT OF THE**
     ☑ Affects both Debtors                  **FIRE VICTIM TRUST**
22

23  * *All papers shall be filed in the lead case,*  **Response Deadline:**
    *No. 19-30088 (DM)*
24                                            October 3, 2022 (Pacific Time)

25                                            **Hearing If Order Granted:**

26                                            October 11, 2022 (Pacific Time) or as
                                              determined by the Court
27

28

## PRELIMINARY STATEMENT

William B. Abrams ("**Abrams**") as a Pro Se Claimant, hereby submits this Motion (the "**Motion**" or "**Motion for Debtor Discovery**") pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Bankruptcy Rule 2004-1(a), seeking entry of an order authorizing discovery and associated hearings regarding any and all acts, conduct and associated agreements with PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**" or "**Debtor**") that may have unduly influenced, directed, obstructed or otherwise interfered with the actions of the Fire Victim Trust (the "**Trust**" or "**FVT**") and other parties with fiduciary obligations to victims. There is evidence that the Debtor and/or their designee(s) have interfered with the Trustee's ability to monetize stock and otherwise deliver on the FVT "made whole" commitment to PG&E victims.

The Debtors have involved themselves in delaying and/or blocking reasonable discovery into the Trust through the "*Joint Ex Parte Motion to File Redacted Version of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, In Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust*" [Dkt. 12889]. Why have the Debtors involved themselves in these Trust discovery issues? Ms. Amanda Riddle (Corey, Luzaich, de Ghetaldi and Riddle) has indicated that the Debtors "*seem to feel that they have some say over the information that's provided by the Trust to claimants*" and has identified a pattern where the Debtors "*poked around in victims' social media, financial history, and personal relationships*" (*see* **Exhibit C** (Riddle Email)). **Ms. Riddle of course has every right to challenge the validity of this correspondence and while this communication certainly does not provide definitive proof, this very disturbing statement from a member of the Trust Oversight Committee (the "TOC") along with the pattern of inaction described within this Motion is certainly enough "good cause" pursuant to Bankruptcy Rule 2004 for victims to engage in good-faith discovery to understand the degree to which the Debtors are interfering with the Trust, the Trustee's acts and victim's "made whole" settlement agreement.** The manner in which the Debtors have had "some say" and "poked around" seems to be substantiated by the lack of engagement by the Trustee and other parties representing the interests of victims within initiatives that might remedy the FVT shortfall and/or further the prudent administration of the FVT.

Abrams requests that the Court enter an order (*see* **Exhibit A** (proposed order)) authorizing service of discovery requests in the form attached hereto as **Exhibit B** on the Debtors. In support of

this Motion, Abrams relies on the *"Declaration of William B. Abrams in Support of the Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding Debtors Acts, Conduct and Agreements that may obstruct or limit the Just and Fair Management of the Fire Victim Trust"* (the **"Abrams Declaration"**) filed contemporaneously herewith, and respectfully states as follows:

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), Rule 2004-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the **"Bankruptcy Local Rules"**), Paragraph 18 and Paragraph 78 of the Confirmation Order, Section 6.7 and Section 11.1 of the Plan, and Section 1.6 and Section 8.20 of the Fire Victim Trust Agreement. Under Section 11.1(u) of the Plan, the Court retained jurisdiction "[t]o hear and determine disputes arising in connection with or related to the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated herein, or any agreement, instrument, or other document governing or relating to any of the foregoing," "[t]o take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation," "[t]o hear and determine any rights, claims, or Causes of Action held by or accruing to ... the Fire Victim Trust **pursuant to the Bankruptcy Code or any federal or state statute or legal theory,**" and "[t]o hear and determine any dispute involving the Wildfire Trusts, including but not limited to the interpretation of the Wildfire Trust Agreements." Plan at § 11.1(i), (k), (t) & (u).[1]

---

[1] Under Section 11.1 of the Plan, the Court also retained "jurisdiction ... of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes: ... (c) [t]o ensure that distributions to holders of Allowed Claims are accomplished as provided herein; (d) [t]o consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims; ... (m) [t]o determine such other matters and for such other purposes as may be provided in the Confirmation Order; ... (p) [t]o hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; ... (r) [t]o determine any other

Section 1.6 of the Fire Victim Trust Agreement provides that the "Bankruptcy Court shall have **exclusive jurisdiction** with respect to any action relating to or arising out of the [Fire Victim] Trust." Section 8.20 of the Fire Victim Trust Agreement provides that the "provisions of the Trust Documents shall be enforced by the [Bankruptcy Court]." This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. (emphasis added)

## **BACKGROUND**

1.      On January 29, 2019 (the "**Petition Date**"), PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). On February 12, 2019, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the United States Trustee appointed an Official Committee of Tort Claimants (the "**TCC**"). Pursuant to the Confirmation Order entered by this Court on June 20, 2020, PG&E's Plan was approved and confirmed under section 1129 of the Bankruptcy Code.

2.      On July 1, 2020 the PG&E Fire Victim Trust Agreement was effective and implements certain of the terms of the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020. The FVT Agreement Section 5.8(b) states "*The Trustee may retain and **reasonably compensate** the Trust Professionals, the cost of which shall be paid as a Trust Expense, subject to the terms of this Trust Agreement, including the Budget.* The Fire Victim Trust Agreement Section 6.2 states "*The members of the TOC shall serve in a fiduciary capacity representing current holders of Fire Victim Claims in the administration of the Trust. **The TOC shall not have any fiduciary duties or responsibilities to any party other than holders of Fire Victim Claims**, provided that the TOC shall be entitled to the protections and limitations of duties provided for herein even with respect to the holders of Fire Victim Claims.*" Subsequently, on June 29, 2020 Attorneys for the Trustee and the Trust Claims Administrator filed the "*Notice of Appointment of Fire*

Statement, the Confirmation Order, the Plan Supplement, or any document related to the foregoing ... (v) [t]o hear any other matter not inconsistent with the Bankruptcy Code."

*Victim Trust Oversight Committee in Accordance with Confirmation Order [Dkt. No. 8053] Filed by Fire Victim Trustee*" [Dkt. 8195]. (emphasis added)

3.     On May 23, 2022, Abrams filed and served the "*Motion of William B. Abrams Pursuant to Federal Rules of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Administration of The Fire Victim Trust*" [Dkt. 12440] (the "**Motion for Trust Discovery**").  This motion requested the Court's approval for discovery procedures (hearings and interrogatories) for victims given certain actions and conduct of Justice Trotter in his capacity as Trustee as well as the actions and conduct of his designees.  This call for transparency and accountability was joined by the Butte County Board of Supervisors [Dkt. 12609], the Sonoma County Board of Supervisors [Dkt. 12670] and other PG&E wildfire survivors.

4.     On June 7, 2022, there was a prehearing in which the merits of the case were not argued and that point was reiterated by Mr. Molton stating "*Clearly, and I read your honor's order and your honor's directive this morning that your honor does not want us getting into merits or discussion of merits today.*"  However, it was also stated by the Court that "*I don't want to mislead you, I'm not going to rule out that perhaps the possibility that the trustee is going to have to sit and be asked questions by Mr. Abrams.*" [Dkt. 12495].

5.     On June 21, 2022, the Trustee filed the "*OBJECTION OF FIRE VICTIM TRUSTEE TO MOTION OF WILLIAM B. ABRAMS PURSUANT TO FED. R. BANKR. 2004 FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ADMINISTRATION OF THE FIRE VICTIM TRUST*" [Dkt. 12527].  Within this objection, the Trustee cited Delaware Trust Law as well as exculpations and other protections negotiated prior to plan confirmation as justification for why the Trustee should not have to provide discovery pursuant to Bankruptcy Rule 2004.  In closing the Objection stated "*The Fire Victim Trustee respectfully requests that the Court sustain this Objection, deny the Motion in its entirety and grant such other and further relief as may be just.*"  Additionally, within this Objection the Trustee announced the "***imminent retirement of Justice John J. Trotter (Ret.) and the transition to Ms. Cathy Yanni as Trustee** in accordance with the succession provisions of the Trust Agreement.*" (emphasis added)

6.     On July 6, 2022, Abrams filed in accordance with the Court's order the "*William B. Abrams Reply to the Objection of the Fire Victim Trustee Pursuant to Fed. R. Bankr. 2004 for Entry*

*of an Order Authorizing Discovery and Hearings Regarding the Administration of the Fire Victim Trust*" [Dkt. 12593]. Within this Reply Abrams stated that "*these "additional disclosures" don't seem to be intended by the Trustee to address the issues raised within the Motion for Trust Discovery. However, this information does lead to more questions and not less that are deserving of discovery pursuant to Bankruptcy Rule 2004*" and concluded that "*it is clear that these fact patterns and the manner in which the Trustee provided notice of his resignation provide more than sufficient "good cause" to seek discovery to ascertain the degree to which the Trustee and others employed by the Fire Victim Trust have engaged in reasonable "conduct" and "good faith" acts in keeping with both the Fire Victim Trust Agreement and applicable law.*"

7.     On August 2, 2022, the Court issued the "*Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust*" (the "**Discovery Order**") [Dkt. 12682]. Within this order, the Court exercised and reiterated its authority related to Article 1.6 of the Trust agreement stating that "*this Court shall have exclusive jurisdiction with respect to any action relating to or arising out of the Trust...*" This Order approved very limited discovery and placed this Motion and related discovery in the hands of the Court. The order continued by stating that "*what is preserved for examination pursuant to this order are the following three discrete areas identified by Mr. Abrams as the trust oversight and litigation activities; lobbyist activities; and administration and litigation expenses.*" Also, within this order the Court made clear that "***More specifically, Federal Rule of Bankruptcy Procedure 2004 remains available as a vehicle for that exchange of information.***" (emphasis added)

8.     On August 18, 2022, Abrams filed the "*Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New Evidence*" [Dkt. 12766]. Within this Motion, Abrams points out clear biases, prejudices and potential conflicts of interests among many JAMS neutrals associated with this case. Furthermore, Abrams states that "*it is clear that these relationships are substantial and Justice Trotter's statement to victims that "I didn't know all of them [victim attorneys] but I knew some of them*" certainly is insufficient disclosure to ascertain the degree to which certain parties may have been collaborating with JAMS Neutrals to advance their

collective financial interests at the expense of PG&E Fire Victims."[2] This Motion prompted the August 23, 2022 "Order Setting Preliminary Hearing" [Dkt. 12802] which stated "the court wishes to hear from the Fire Victim Trust (the "Trust"), at a preliminary status conference before it directs the Trust to file any substantive response to the Motion and before it directs responses to discovery requested by Mr. Abrams.

9.     On August 24, 2022 and in response to the Discovery Order, the Trustee filed the *"Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved"* [Dkt. 12871] and the *"Redacted Documents to the Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved"* [Dkt. 12874]. This motion provided no response deadline and was approved by the Court only three business days later on August 29, 2022 through the *"Order Granting Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved"* [Dkt. 12884].

10.     On August 29, 2022, The Debtor and the Trustee jointly filed the *"Joint Ex Parte Motion to File Redacted Version of the Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, In Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust"* [Dkt. 12889]. This motion was approved by the Court only two days later on August 31, 2022, through the *"Order Granting Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, In Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust"* [Dkt. 12898] along with the approval of the redacted agreements through the *"Order Granting Joint Ex Parte Motion to File Redacted Version of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, in part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust"* [Dkt. 12899].

---

[2] See *"Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New Evidence"* [Dkt. 12766], pg. 15 and the *"Notice of Filing of Transcript of Status of Status of Trust Distribution Video Presentation by Justice John Trotter (Ret.), Trustee of the PG&E Fire Victim Trust"*, May 17, 2021 [Dkt. 10654]

11. On September 1, 2022 and in response to these Court Orders approving the Trustee and Debtor motions and redacted documents [Dkt. 1288, 1289], Abrams filed the *"Motion of William B. Abrams for Reconsideration and Related Relief from the Order Granting Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements until Litigation Related to such Retention Agreements is Finally Resolved and Pursuant to Federal Rule of Civil Procedure 59(e)"* [Dkt. 12916]. Within this motion Abrams stated that the recent motions from the Trustee *"deliberately or not undermined the due process rights of victims"* and were in direct contradiction with the prior Discovery Order. This motion also requested six specific remedies including (1) hearings so victims could argue their case (2) **disclosures of the names of parties or individuals representing the Trust** including those required to approval or review of Trust actions (3) Requests for Proposals (RFPs) referenced within these redacted agreements (4) **disclosures related to the net benefit or loss to the value of the Fire Victim Trust** (5) amendments to the retention agreements and (6) an order to ensure response deadlines would be stated with future Trustee motions so the due process rights of victims would not be undermined.

12. On September 6, 2022, the Trustee filed the *"Fire Victim Trustee's Responses in Connection with the Court's August 2, 2022 Discovery Order"* [Dkt. 12931]. Within this response the Trustee attempted to correct or otherwise redevelop their prior representations of "open," "public" and "competitive" processes. It is also clear within this Response that paid lobbyists did not publicly support or oppose any piece of legislation or provide related testimony on behalf of the Trust or Victim beneficiaries.

13. On September 6, 2022, the Court issued the *"Order on Motion for Reconsideration"* [Dkt. 12929]. This order required the Trustee to respond by September 16, 2022 but limited the required response to only address the name of the "Authorized Agent" and *"why she [Trustee] considers it necessary to redact the name and other identifying information about the FVT's "Authorized Agent."* **This Order did not approve the identification by the Trustee of other names (organizations and individuals) required for approvals or review of communications regarding acts and conduct of the Trustee and her designee(s).**

14. On September 13, 2022 a preliminary hearing was held regarding the *"Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New*

*Evidence*" [Dkt. 12766] where the merits of the motion were not argued. The associated Docket Text Order stated that "*the FVT shall file a response to the motion by 10/2/22. The matter will then stand submitted.*"

15. On September 16, 2022, and in response to the Court "Order on Motion for Reconsideration," [Dkt. 12929] the Trustee filed the "*Fire Victim Trustee's Disclosures Directed by September 6, 2022 Order on Motion for Reconsideration.*" Within this response the Trustee identified the "*Authorized Agent.*" **However, the Trustee was again unresponsive to the Court Order** and never stated why she considered "*it necessary to redact the name*" of the Authorized Agent in the earlier "*Redacted Documents to the Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved*" [Dkt. 12874].

## ARGUMENT

### I. Debtors Undisclosed Contractual Provisions Preventing Trust Transparency

Abrams commends and greatly appreciates Ms. Fournier for making an email correspondence public that describes the views and perspectives of Ms. Amanda Riddle, TOC Member (*see* **Exhibit C (Riddle Email)**). Without this limited disclosure, victims would have little insight into TOC Member views regarding undisclosed terms keeping the Trustee, Ms. Riddle and others from acting on behalf of victims. Given this email disclosure, it is very clear that certain provisions are preventing Ms. Riddle and other TOC members from fully exercising their oversight responsibilities in the best interests of victims. Throughout this case, there have been confidentiality protocols, nondisclosure provisions and other terms within agreements to ensure that the names of actors and actions of parties directing and/or influencing the management, administration and oversight of the Fire Victim Trust are hidden from victims. Certainly, the role of the Debtors through the administration and oversight of the Trust is unknown to victims and while publicly the Debtors have washed their hands of the Fire Victim Trust and their responsibilities to victims, there is reason to believe that they are still engaged in activities that may undermine trust administration and the realized value of the Trust for victims. Yes, there is undeniably "good cause" for reasonable discovery pursuant to Bankruptcy Rule 2004 to ascertain the degree to which the Debtors may be meddling with the FVT. This evidence of "good cause" was very clearly articulated and reinforced

by Ms. Amanda Riddle, TOC Member through this letter sent to her client and made public through social media (*see* **Exhibit C** (Riddle Email)):

> "*I am on the Trust Oversight Committee and one of the lead attorneys with Northern California Fire Victims. If you have specific questions about how the Trust is run, please let me know. But no, my firm (Corey, Luzaich, de Ghetaldi & Riddle) will not be filing a joinder... As for your last statement, I can explain that: PG&E filed a declaration in support of the FVT Redacted Documents on the Bankruptcy website, Doc #12890, Declaration of Robin J. Reilly in Support of Joint Ex Parte Motion to File Redacted Version of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, In Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust... What's frustrating about this is PG&E has effectively wiped their hands of fire survivors' needs by claiming bankruptcy and not offering to make the Trust whole but seem to feel that they have some say over the information that's provided by the Trust to claimants... in past cases where we litigated directly against PG&E, they poked around in victims' social media, financial history, and personal relationships and nitpicked at their claims and alleged that i.e. their family relationships were not strong to begin with so the fire did not cause the claimed rift or they are not as injured as they claim because they recently were on vacation. This adds insult to injury.*" (emphasis added)

**On what legal basis are the Debtors asserting this "***say over the information that's provided by the Trust to claimants?***"** What confidentiality protocols or agreement terms are preventing the TOC members from providing proper oversight and/or informing victims about concerns regarding these contractual terms? To what degree are these Debtor tactics of "[poking] around in victims' social media, financial history, and personal relationships..." still being employed by the Debtors in this case? What role are the Debtors playing in how the Trust is being managed and administered? Are the Debtors preventing Trust transparency and proper disclosures relative to the Trust's derivative claims, regulatory activities, lobbying activities and other activities that may be working in favor or against the interests of victims? After the Debtors (1) misrepresented the value of their stock (14x multiplier, NENI, etc.) (2) misrepresented how backstop agreements would be leveraged (3) carefully manipulated registration rights agreement terms to undermine victim interests

and (4) worked to undermine critical disclosures to victims to inform their vote (5) etc. etc. now the Debtors are meddling with our Trust?

Ms. Riddle, through this email correspondence, states that she is not going to address "*Will Abrams and law firms who are ill-informed.*" However, the degree to which Abrams, law firms and victims as a whole are "ill informed" is directly due to the lack of disclosures and communications from Ms. Riddle, other TOC members and the Trustee. The fact of the matter is that the TOC has not informed victims and has not instructed the Trustee to inform victims regarding the Debtors actions relative to their apparent interference with Trust transparency. Abrams certainly commends Ms. Riddle for informing one of her clients regarding these valid concerns but this is a poor substitute for the type of disclosures and transparency that victims deserve. Indeed, it could reasonably be argued that it is the obligation of Ms. Riddle and other TOC members to inform victims. It seems clear that (1) the TOC and the Trustee are shirking their duties and obligations to inform victims and/or (2) the Debtors are exercising undisclosed rights to block victim transparency and/or (3) other yet unidentified parties are undermining the interests of victims and blocking Trust communications. The degree to which one or all three of these reasons are keeping critical information away from victims is unknown. However, there is certainly "good cause" for reasonable discovery to ascertain the degree to which confidentiality protocols, nondisclosure terms and/or other provisions outside the view of victims are hiding Debtor-favorable terms that contradict or otherwise undermine victims' rights to fair, just and transparent Trust processes. **As the Court is aware, transparency begets accountability and if the Debtors are exercising undisclosed rights and remedies to keep information from victims, this must be discovered and expeditiously addressed by the Court, the Trustee and any other parties who care about justice for victims.** Victims as the stated beneficiaries, certainly deserve the type of accountability that is well overdue regarding how this Trust has been managed and administered on their behalf.

## II. Debtors Apparent Interference in Regulatory Engagement Favorable to the FVT

There is evidence that the Debtors have exercised confidential provisions to prevent and/or otherwise curtail the actions of the Trustee, TOC, Fire Claimant Professionals and other core parties from actively engaging in victim-beneficial regulatory proceedings. The degree to which the Debtors are preventing these parties from freely engaging on behalf of victims is core to advancing just outcomes. The counterbalance to the interests of utilities and institutional utility investors within

California Public Utilities Commission ("**CPUC**" or "**Commission**") proceedings and elsewhere remains those parties representing the public and victim interests. The degree to which the Debtors have leveraged settlement agreements, confidentiality protocols, nondisclosure terms and other undisclosed terms associated with this case to limit the ability of core parties to engage within regulatory proceedings on behalf of victims and the public must be understood. **This Court must not let the Debtors leverage bankruptcy processes and procedures to distort and obscure regulatory proceedings that might otherwise protect the interests of victims and the public.** The extent to which the Debtors have leveraged bankruptcy-related agreements to shut out, obstruct or curtail the voices of local governments (Sonoma County, Butte County, Napa County, Town of Paradise, etc.) and other core parties (TOC Members, Fire Claimant Professionals, Trustee, etc.) should be disclosed and should be discoverable pursuant to Bankruptcy Rule 2004.

As an example of these apparent restrictions the Debtors have placed upon core parties, consider the engagement within the Debtor's "*Application of Pacific Gas and Electric Company for Recovery of Recorded Expenditures Related to Wildfire Mitigation, Catastrophic Events, and Other Recorded Costs*" [A.21-09-008].[3] None of the core parties representing the interests of victims that you might expect to engage filed motions for party status or otherwise engaged within this proceeding. Due to this lack of engagement, Abrams filed the "*Statement of Related Case Before the California Public Utilities Commission Regarding Debtor Cost Recovery Application A.21-09-008 Pursuant to Public Utilities Code Section 451 and 451.1*" on August 4, 2022 [Dkt. 12685]. Within this statement and through other email communications with core parties, Abrams urged the Fire Victim Trustee, Fire Claimant Professionals, TOC Members and other parties to engage within CPUC proceedings on behalf of PG&E victims (*see* **Exhibit E** (Abrams Email Correspondence)). Seemingly contrary to the interests of victims, the Fire Victim Trust's highly compensated attorneys (Brown Rudnick LLP, Morgan, Lewis and Bockius LLP, etc.) continued to be diverted, tasked and paid to "monitor" regulatory and legislative proceedings instead of pursuing more active paths to advocate for victim interests. Indeed, to date none of the core parties representing the interests of victims within this case or the Trustee have actively engaged within this proceeding. The obvious

---

[3] See "APPLICATION OF PACIFIC GAS AND ELECTRIC COMPANY (U 39 M) FOR RECOVERY OF RECORDED EXPENDITURES RELATED TO WILDFIRE MITIGATION, CATASTROPHIC EVENTS, AND OTHER RECORDED COSTS", September 16, 2021
https://docs.cpuc.ca.gov/SearchRes.aspx?DocFormat=ALL&DocID=407966952

1  position that the Trustee, TOC Members and other core parties representing victims could and should
2  take is to support reasonable cost recovery of wildfire related expenditures of the Debtors, if and only
3  if victims are "made whole" through the Fire Victim Trust.

4      Abrams, has not sought compensation through this CPUC proceeding but as a category one
5  intervenor has engaged in good-faith negotiations with the Debtors and filed a brief urging the
6  Commission to consider the interests of PG&E victims (*see* **Exhibit D** (Abrams CPUC Brief)).
7  Specifically, Abrams has argued that (1) the Debtor's cost recovery related to the wildfires between
8  2015 and 2020 should only be deemed "just and reasonable" pursuant to Public Utilities Code
9  Section 451 and 451.1 if the regulatory approval and subsequent recovery of costs are contingent
10 upon the full cost recovery of PG&E victims and (2) that an approval of this application without these
11 conditions would inherently and unjustly force victim ratepayers to fund the cost recovery of the
12 corporation that burned down their homes and their communities before they are "made whole"
13 through the Fire Victim Trust. **That said, it is not Abrams' expectation that the Trustee will take**
14 **the same positions. However, what is clear is that the Trustee has not taken ANY public**
15 **position.** This lack of engagement by the Trustee is in stark contrast to the many victims that
16 provided written public comments within this proceeding urging Judge Nojan and Commissioners to
17 consider their lack of cost recovery through the FVT within the context of this proceeding (*see*
18 **Exhibit F** (Public and Victim Comments)). Why has the Trustee expended valuable Trust resources
19 to "monitor" proceedings without taking ANY position within ANY proceeding? How have the
20 Debtors exercised undisclosed contractual provisions to limit the actions of the Trustee and others?
21 What we do know is that the attempts of Jerry Bloom, Counsel for the Tort Claimant Committee
22 ("TCC") to advocate for victim interests were undermined by the Debtors at the CPUC and
23 memorialized within his declaration that stated "*I intended to cross examine Mr. Wells on these*
24 *subjects but the Debtors took the position that the existence of the RSA precluded the TCC from cross*
25 *examining Debtors' witnesses before the CPUC*"[4] [Dkt. 7331]. Although this statement was made
prior to plan confirmation, it is unclear if the Debtors still assert these RSA protections or those
within other agreements to ensure that the Trustee, TOC Members and others are unable to advocate
for remedies to the Trust shortfall or otherwise advance the interests of Trust beneficiaries.

---

[4] See "*Jerry R. Bloom in Support of Objection of the Official Committee of Tort Claimants to Confirmation of Debtors'
and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Date March 16, 2020*" May 15, 2020, [Dkt.
7331], pg. 4

Of course, the Court does not have jurisdiction and should not take a position within these regulatory proceedings. However, the degree to which the Debtors and/or other parties before this Court have leveraged agreements associated with this case (Case#19-30088-DM) to limit the ability of the Trustee, TOC members or other parties to prudently work to fully fund the Trust and efficiently process claims certainly falls to this Court to consider pursuant to Bankruptcy Rule 2004. This is particularly critical given that Section 1.6 of the Fire Victim Trust Agreement states that the "*Bankruptcy Court shall have **exclusive jurisdiction** with respect to any action relating to or arising out of the [Fire Victim] Trust*" and Section 8.20 of the Fire Victim Trust Agreement provides that the "*provisions of the Trust Documents shall be enforced by the* [Bankruptcy Court]." (emphasis added)

### III. Other Debtor Acts that Interfere with Fire Victim Trust Activities

The Trustee's August 24, 2022 "*Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved*" [Dkt. 12871] and associated "*Redacted Documents to the Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved*" [Dkt. 12874] provide victims with more concern and "good cause" for discovery regarding the acts and conduct of the Debtors. These concerns were certainly heightened by the "*Fire Victim Trustee's Responses in Connection with the Court's August 2, 2022 Discovery Order*" [Dkt. 12931] which appeared to be an attempt to correct prior false statements by the Trustee regarding the "open," "public" and "competitive" selection processes.

More pointedly, Ms. Riddle, TOC Member responded to the "*Joint Ex Parte Motion to File Redacted Version of the Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, In Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust*" [Dkt. 12889] by stating that "*what's frustrating about this is PG&E has effectively wiped their hands of fire survivors' needs by claiming bankruptcy and not offering to make the Trust whole but **seem to feel that they have some say over the information that's provided by the Trust to claimants.**" Now, Ms. Riddle, other TOC members and/or the Trustee may have executed agreements that prevent them from disclosing the manner in which the Debtors have exerted "*some say over the information that's provided by the Trust to claimants.*" **However, Abrams is not bound by these agreements and therefore is able and compelled to file this Motion to seek the type of just outcomes that core parties seem prevented**

14

**from pursuing on behalf of victims.** The Court should consider the following additional areas of concern that provide even more "good cause" for discovery pursuant to Bankruptcy Rule 2004:

1. **Lobbyist and Litigation Activities** – The Trustee has made it clear within the "*Fire Victim Trustee's Responses in Connection with the Court's August 2, 2022 Discovery Order*" [Dkt. 12931] that they have not provided any testimony and did not publicly engage to support or oppose any piece of legislation that might benefit victims. Instead, the Trustee states that lobbyists "*made numerous phone calls*" held "*meetings*" and spent time "*educating key members of the State Legislature and the Administration.*" This is in stark contrast to the engagement of many victims that provided in person and written testimony in hearings and publicly engaged to advocate for victim interests. Additionally, the names of the individuals and parties required to approve or otherwise influence Trust actions relative to derivative claims have been redacted. Where within the redacted portions of the agreements or elsewhere will we find stipulations that require the Debtors to authorize Trustee legislative or litigation related efforts? What or who prevented the Trustee from publicly advocating for victim interests within legislative processes that might be viewed by the Debtor as detrimental to their interests? Do these terms make the actions of the Trustee impotent or otherwise blunt their effect with regards to addressing the FVT shortfall? The degree to which the Debtors have exercised undisclosed agreement provisions that limit the Trustee from publicly criticizing the Debtors or otherwise engaging in public efforts to the benefit of victims is also unknown without reasonable discovery pursuant to Bankruptcy Rule 2004.

2. **Inverse Condemnation Claims and Trust Costs** – The November 27, 2019 "*Memorandum Decision on Inverse Condemnation*" [Dkt. 4895] and the subsequent December 3, 2019 "*Order on Applicability of Inverse Condemnation; Rule 54(b) Certification*" [Dkt. 4949] make it clear that the Debtors are responsible for these attorney claims. However, what is unclear and not disclosed is the degree to which the Debtors are driving these claims to be compensated through the Fire Victim Trust. These claims are potentially billions of dollars and victims deserve to understand the degree to which the Debtors have exercised undisclosed provisions to drive claims against the Fire Victim Trust to avoid their broader corporate liability. The Debtors seem to have staked out an indefensible position asserting that they (1) want absolution from their obligations to the Trust and victims while (2) obstructing and interfering with transparency relative to costs

passed on by the Debtors to the FVT. Core parties to this case should be reminded that the overinflated stock-value-fabrication was put forward by the Debtors and followed no reasonable stock valuation methodology. The attorney inducements that may have swayed certain core parties to accept the Debtor's fanciful valuation is still unknown and is not a focus of this Motion.

3. **Public Relations and Trustee Communications** – Ms. Riddle makes it clear that the Debtors have exercised undisclosed provisions to "*have some say over the information that's provided by the Trust to claimants.*" This is preventing the Trustee and TOC Members from taking good-faith actions to further the Trustee's stated goal "*to operate with even greater transparency.*" The pattern of PR announcements provided by Zumado Public Relations and paid for by the FVT also makes it clear that any criticism of the Debtors or announcement of actions that might impugn or undermine the Debtors in any way is out-of-bounds.[5] Imagining that this pattern was not induced by the Debtors inserting themselves as reviewers and approvers of these communications falls somewhere between completely implausible and strains credulity. As the Court is aware, victims are reliant upon the Trust to rebuild their homes, pay medical bills and put food on the table. Any efforts of the Debtors to limit transparency of the Trust is absolutely unconscionable and certainly not in keeping with their "New PG&E" mantra or the Trustee's "more transparency" commitments. These communication limitations undermine each and every action on behalf of the Trust and victims to fully fund the Fire Victim Trust and ensure expedient settlements. The Debtors are certainly reassured that by keeping victims "ill informed," they are sufficiently able to limit public outcry and support for Trust remedies that would allow the Trust to fulfill its' "made whole" commitments. Thus, every provision, term and/or stipulation exercised or not within any and all agreements that allow the Debtors to limit the communications of the Trustee and other parties representing victim interests must be disclosed pursuant to Bankruptcy Rule 2004.

---

[5] See Business Wire, Fire Victim Trust Press Releases,
https://www.businesswire.com/portal/site/home/search/?searchType=news&searchTerm=Fire%20Victim%20Trust&searchPage=1

## RELIEF REQUESTED

By this Motion, Abrams requests entry of an order, pursuant to Bankruptcy Rule 2004:

1. authorizing Abrams and other PG&E victims with claims to serve discovery in the form attached hereto as **Exhibit B** on PG&E Corporation and Pacific Gas and Electric Company (the "**Debtor**" or "**Debtors**") and ensure that these requests are posted to the Fire Victim Trust portal for review by PG&E victims holding claims;

2. authorizing Debtors within ten (10) days of receipt of the Requests to either (i) produce, on a rolling basis, all non-privileged documents and written responses to the Requests, or (ii) file all objections and/or responses to the Requests with this Court.

3. authorizing Abrams and other PG&E victims with claims to hold a hearing on Tuesday October 11, 2022 via zoom so that victims may ask questions and get answers from the Debtors regarding their acts, conduct and related contractual terms that may have limited and/or otherwise affected communications to victims and/or undermined the value of the Fire Victim Trust.

The form and function of the relief requested including **Exhibit B** information requests, definitions and instructions mirror and are of like manner and wording as those within the "*Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery From Adventist Health System/West and Adventist Health Feather River and Service of a Subpoena on Factory Mutual Insurance Company*" [Dkt. 11556] filed by Brown Rudnick, LLP on behalf of the Fire Victim Trustee. This was done with an abundance of caution to ensure consistency with similar requests submitted to this Court and to ensure Abrams was following the proper procedure given the prior instructions of the Court for Pro Se claimants.

///

## BASIS FOR RELIEF REQUESTED

Bankruptcy Rule 2004(a) states that on "*motion of any party in interest, the court may order the examination of any entity.*" Fed. R. Bankr. P. 2004(a). The scope of an examination sought under Rule 2004(b) may relate to "*the acts, conduct*, or property or to the liabilities and financial condition of the debtor, or to **any matter which may affect the administration of the debtor's estate**, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added).

The granting of a motion under Rule 2004 is within the "ultimate discretion" of the Court. *In re Art & Architecture Books of 21st Century*, No. 2:13-BK-14135, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (quoting *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292-93 (Bankr. D. Ariz. 2002)). **Bankruptcy Rule 2004 allows considerable leeway for all manner of so-called "fishing expedition[s]" if there is a reasonable nexus to the debtor and the administration of the debtor's case.** *In re Mastro*, 585 B.R. 587, 597 (B.A.P. 9th Cir. 2018) (quoting *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011)). Any third party who has a relationship with the debtor may be made subject to a Rule 2004 investigation. *Mastro*, 585 B.R. at 597 (citing *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990)) (emphasis added).

Here, Abrams seeks discovery from the Debtors jointly and severally to obtain complete disclosures of any and all provisions that limit, curtail or may otherwise affect the communications of the Trustee, Tort Claimant Committee, Trust Oversight Committee, Fire Claimant Professionals or other core parties representing the interests of victims within this case and in particular those parties that have fiduciary obligations to victims. Any terms or provisions that require communications from other parties to be reviewed and/or approved by the Debtors and/or the Debtor's designee(s) must be produced to ensure just outcomes for PG&E Victims within this case.

Furthermore, Abrams relies upon the August 2, 2022 Court "*Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust*" (the "**Discovery Order**") [Dkt. 12682]. Within this order, the Court exercised and reiterated its authority related to Article 1.6 of the Trust agreement stating that "*this Court shall have exclusive jurisdiction with respect to any action relating to or arising out of the Trust...*" The order concluded by stating that "*More specifically, Federal Rule of Bankruptcy Procedure 2004 remains available as a vehicle for that exchange of information.*"

## CONCLUSION

If "sunlight is the best disinfectant" then victims certainly have "good cause" for reasonable discovery given the evidence presented within this Motion that victims have been kept in the dark by undisclosed terms governing the management of their Trust. **The Court understands that "information is power" and the extent to which the Debtors have kept critical information out of the hands of victims will only serve to disempower victims and undermine the value and integrity of the Trust. If the Debtors have good cause for keeping the terms secret, that prevent victims from gaining access to information critical to the just administration and management of the Fire Victim Trust, let them state and defend those terms.**

How have the Debtors exercised contractual provisions to limit the ability of the Trustee, TOC, local governments and other professionals to take actions on behalf victims? How have undisclosed terms limited the options of the Trustee to advance the interests of the Trust within the California Public Utilities Commission? How have undisclosed terms limited the ability of the Trustee to further legislation, provide testimony and pursue other remedies to fully fund the Fire Victim Trust? What undisclosed contractual provisions driven by the Debtors limit Trustee actions relative to the pursuit of derivative claims and other litigation? Did undisclosed provisions limit the ability of TOC members, Fire Claimant Professionals and others to advocate for victims within district court proceedings where restitution hearings might have provided additional remedies and relief for victims? Have settlement terms driven by the Debtors through this case limited the ability of local governments and others from representing their constituents at the CPUC and elsewhere? **Certainly, the lack of public engagement by the Trustee, TOC members, Fire Claimant Professionals and others points to an inexplicable pattern of poor representation of victims if it isn't due to undisclosed contractual terms that limit their engagement.**

Myself and other victims have urged the Trustee, TOC members and other parties to publicly engage on our behalf at the California Public Utilities Commission, at our State Capital and elsewhere. Despite these efforts, there has been NO discernable public-facing action. The Court should consider the correspondence that Abrams sent to the Trustee and TOC members urging and pleading with them to actively and publicly engage on behalf of victims (*see* **Exhibit E** (Abrams Email Correspondence)). All of these calls-to-action fell on seemingly deaf ears and/or mistakenly relied on voices that were silenced by undisclosed terms. While victims testified in support of

19

legislation, filed motions, demanded restitution hearings and otherwise advocated for the interests of their fellow PG&E wildfire survivors, the attorneys paid to represent victim interests were largely silent (*see* **Exhibit F** (Public and Victim Comments)). Did Debtor-driven terms keep the advocacy efforts of the Trustee and others behind closed doors and out of public view rendering them ineffectual? The Trustee referenced unsuccessful efforts to secure a $1.5B loan to fund the FVT shortfall and has discussed efforts to motivate the Debtors to support remedies to fully fund the Trust. Why have these efforts failed? Without additional disclosures, it is reasonable for the Court and victims to conclude that these efforts have failed because more public actions were never pursued. Unless the Trustee and TOC members have completely abdicated their responsibilities, it is also reasonable to assume that the Debtors have limited public-facing actions on behalf of the Trust that might negatively impact their own regulatory, legislative or public relations initiatives.

In the end, Abrams hopes that only "reasonable" and "good-faith" acts are revealed through this discovery so that victims have a renewed faith in the Trust. However, if "bad-faith" acts and inaction has been driven by undisclosed terms, those roadblocks to Trust integrity must be remedied. It is with this solution-orientation that Abrams puts forward this motion in good-faith and respectfully requests that the Court approve the type of discovery that will allow sunlight to shine on these undisclosed terms and their effects which limit, impede and undermine the just administration, management and oversight of the Fire Victim Trust.

Executed on September 22, 2022, at Santa Rosa, CA.

Respectfully submitted,

William B. Abrams
Pro Se Claimant

20

**EXHIBIT A**

PROPOSED ORDER

///

21

William B. Abrams
end2endconsulting@gmail.com
2041 Stagecoach Rd.
Santa Rosa, CA, 95404
Tel: 707 397 5727

*Pro Se Fire Victim Claimant and Party to related proceedings before the California Public Utilities Commission and the California Office of Energy Infrastructure Safety*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION,

    -and-

PACIFIC GAS AND ELECTRIC
COMPANY,

                 Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☑ Affects both Debtors

* All papers shall be filed in the lead case,
No. 19-30088 (DM)

Bankr. Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administrated)

**ORDER GRANTING MOTION OF WILLIAM B. ABRAMS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING DEBTORS ACTS, CONDUCT AND AGREEMENTS THAT MAY OBSTRUCT OR LIMIT THE JUST AND FAIR MANAGEMENT OF THE FIRE VICTIM TRUST**

Upon the Motion, dated September 22, 2022 (the "**Motion**"),[6] of William B. Abrams ("**Abrams**"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 2004-1(a), for entry of an order authorizing discovery from PG&E Corporation and Pacific Gas and Electric Company (the "**Debtor**" or "**Debtors**").

This Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California, Paragraph 18 and Paragraph 78 of the Confirmation Order, Section 6.7 and Section 11.1 of the Plan; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion; the Court having reviewed the proposed form of discovery attached to the Motion as **Exhibit B;** this Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted therein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERD THAT**:

1.     The Motion is granted as provided herein.

2.     Abrams and other PG&E Fire Victims are authorized to serve discovery in the form attached to the Motion as **Exhibit B** on the Debtors.

3.     Abrams and the Debtors shall set a hearing on or about October 11, 2022 so that PG&E Victims may ask questions and get answers from the Debtors regarding their acts, conduct and associated contractual terms that may have interfered or otherwise curtailed the (1) communications and public engagement of Trust representatives (2) communications and public engagement of parties representing victim interests.  Furthermore, victims may ask questions and get answers from the Debtors regarding the acts, conduct and associated contractual terms that may reasonably be perceived as undermining the value of the Fire Victim Trust.  PG&E victims must submit questions to be answered Debtors no later than October 7, 2022 and be posted to the Fire Victim Trust Portal.

4.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

5.     This Order is without prejudice to PG&E Fire Victim's right to file further motions seeking additional documents pursuant to Bankruptcy Rule 2004 or any other applicable law.

** END OF ORDER **

---

[6] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

# EXHIBIT B

## FORM OF DISCOVERY REQUESTS

///

1 William B. Abrams
  end2endconsulting@gmail.com
2 2041 Stagecoach Rd.
  Santa Rosa, CA, 95404
3 Tel: 707 397 5727
4
5
6 *Pro Se Fire Victim Claimant and Party to related proceedings before the California Public Utilities*
  *Commission and the California Office of Energy Infrastructure Safety*
7
8
9
10 **UNITED STATES BANKRUPTCY COURT**
11 **NORTHERN DISTRICT OF CALIFORNIA**
   **SAN FRANCISCO DIVISION**
12

13 In re:                                    Bankr. Case No. 19-30088 (DM)
14                                           Chapter 11
                                            (Lead Case)
15 PG&E CORPORATION,                         (Jointly Administered)
16        -and-
17
18 PACIFIC GAS AND ELECTRIC                  **WILLIAM B. ABRAMS FIRST SET OF**
   COMPANY,                                  **REQUESTS FOR INFORMATION,**
                                            **FIRST SET OF INTERROGATORIES,**
19                  Debtors.                 **AND FIRST SET OF DOCUMENT**
                                            **REQUESTS TO THE DEBTORS**
20 ☐ Affects PG&E Corporation
21 ☐ Affects Pacific Gas and Electric Company
22 ☑ Affects both Debtors
23
   *  All papers shall be filed in the lead case,*
24 *No. 19-30088 (DM)*
25
26
27
28

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure (the "Civil Rules"), Rules 2004, 9014, 7026, 7033, 7034 and 7036 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), William B. Abrams, pro se Claimant, ("Abrams"), submits the following requests for information (the "Requests for Information"), interrogatories (the "Interrogatories"), and requests for production of documents (the "Requests for Production"). Please, post all responses to the Requests for Information and Requests for Production to the Fire Victim Trust Portal for all victims to be able to view and analyze, within ten (5) days of the service of the Requests for Information. Abrams further requests that PG&E Corporation and Pacific Gas and Electric Company jointly or severally respond to the Interrogatories in accordance with Civil Rules 33 and 36.

## DEFINITIONS

The term "Debtor" or "Debtors" shall mean PG&E Corporation and Pacific Gas and Electric Company jointly and severally.

The term "Debtor Acts" or "Debtor Actions" shall mean any actions of PG&E Corporation, Pacific Gas and Electric Company or any actions which were directed by them to any designees, employees, contractors, attorneys, investors, advisors or consultants whether through written or oral direction.

The term "PG&E Investor" shall mean any shareholder, bondholder or other financial investor that has a financial stake in the Debtors' corporation or associated disposition of the Debtors' assets and/or liabilities.

The term "Former Trustee" shall mean the Honorable John K. Trotter (Ret.) and as otherwise defined within the Chapter 11 Plan and in the PG&E Fire Victim Trust Agreement.

The term "Current Trustee" shall mean Cathy Yanni and as otherwise defined within the Chapter 11 Plan and in the PG&E Fire Victim Trust Agreement.

The term "JAMS Neutral" shall mean any and all individuals current or past and associated with JAMS Inc. that were hired or have otherwise engaged in any way within this case affecting victim interests within this case jointly or severally. This includes but is not limited to the Former Trustee, Current Trustee, Claims Administrators, Fire Victim Settlement Mediator, Joint Local Governments Mediator, Appeals Coordinator, Special Master and any individual serving on the Panel of Mediators.

The term "Tort Claimant Committee" ("TCC") shall mean any current or past members or members' attorneys jointly or severally who served on the Fire Victim Tort Claimant Committee.

The term "Tort Claimant Committee Counsel" ("TCC Counsel") shall mean BakerHostetler LLP serving in the capacity of attorney for the Tort Claimant Committee jointly or severally.

The term "Fire Claimant Professional" shall mean any current or past attorney that has engaged as an official Fire Claimant Professional within this case.

The term "Trust Oversight Committee" ("TOC") shall mean any current or past member jointly or severally who served on the PG&E Fire Victim Trust Oversight Committee.

The term "Trust Lobbyist" shall mean any agent, contractor, employee, attorney, officer, director, representative or TOC member that acted in an official or unofficial capacity representing the interests of Trustee, Trust Administrator, the PG&E Fire Victim Trust and/or Trust Oversight Committee member(s) to any and all government agencies including Local, State or Federal staff, employees, elected officials, regulators or others employed by or on behalf of government agencies.

The term "Claim" shall mean any PG&E victim claim administered or reviewed through the PG&E Fire Victim Trust.

The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of California.

The term "Chapter 11 Cases" or the "PG&E Bankruptcy Case" shall mean the chapter 11 cases commenced by PG&E Corporation and Pacific Gas and Electric Company in the Bankruptcy Court, Case No. 19-30088.

The term "Chapter 11 Plan" shall mean the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 [Docket No. 8048] confirmed by order of the Bankruptcy Court in the Chapter 11 Cases.

The term "Communications" shall mean all inquiries, discussions, conversations, notes, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other forms of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

The term "concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

The term "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of

categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

The term "Fire Victim Trust" shall have the same meaning as that term is used in the Chapter 11 Plan.

The term "Fires" shall have the same meaning as that term is used in the Chapter 11 Plan related to the PG&E wildfires in 2015, 2017, 2018.

The term "Fire Victim Trust Agreement" shall have the same meaning as that term is used in the Chapter 11 Plan.

The term "Fire Victim Claims Resolution Procedures" ("**CRP**") shall have the same meaning as that term is used in the Chapter 11 Plan and in the PG&E Fire Victim Trust Agreement.

The term "Trust Expenses" shall have the same meaning as that term used in the PG&E Fire Victim Trust Agreement include fees and expenses incurred in pursuing the Trust Assets, administering the Trust, managing the Trust Assets, and making distributions in accordance with the Trust Documents, the Plan and the Confirmation Order.

The term "Inverse Condemnation Claims" shall have the same meaning as the term used in the *Memorandum Decision on Inverse Condemnation*" [Dkt. 4895] and the subsequent December 3, 2019 "*Order on Applicability of Inverse Condemnation; Rule 54(b) Certification*" [Dkt. 4949]

The term "TCC Expenses" shall include fees and expenses incurred by or for the Fire Victim Tort Claimant Committee or their members jointly or severally in their capacity as Tort Claimant Committee Members.

The term "TOC Expenses" shall include fees and expenses incurred by or for the Fire Victim Trust Oversight Committee or their members jointly or severally in their capacity as Trust Oversight Committee Members.

The term "Claims Administrator" shall have the same meaning as that term used in the Chapter 11 Plan and in the PG&E Fire Victim Trust Agreement.

The term "Claims Processor" shall have the same meaning as that term used in the Chapter 11 Plan and in the PG&E Fire Victim Trust Agreement.

The term "Trustee Designee" shall mean any employee, contractor or any other assigned individual acting conducting themselves jointly or severally on behalf of the Trustee.

The term "TOC Designee" shall mean any employee, contractor or any other assigned individual acting or conducting themselves on behalf of the Trust Oversight Committee or Trust Oversight Committee Member jointly or severally.

The term "Trust Representative" shall be any individual that was employed or contracted with the PG&E Fire Victim Trust including but not limited to the Trustee, Claims Administrator, Claims

28

Processors and members of the Trust Oversight Committee (TOC) that represented the interests of the PG&E Fire Victim Trust in an official or unofficial capacity to any party or individual.

The term "Investment Guidelines" shall have the same meaning as that term used in the Chapter 11 Plan and in Exhibit 6 of the PG&E Fire Victim Trust Agreement.

The term "Sell-Down Plan" shall have the same meaning as that term used in the Chapter 11 Plan and PG&E Fire Victim Trust Agreement and involves liquidating some or all of the stock.

The term "Investment Advisor" shall have the same meaning as that term used in the Chapter 11 Plan and PG&E Fire Victim Trust Agreement. This includes individual(s) that have assessed the levels of investment risks and advised the Trust or Trustee in making investment decisions.

The term "Trust Disbursing Agent" shall have the same meaning as that term used in the Chapter 11 Plan and PG&E Fire Victim Trust Agreement.

The term "Proof of Claim" shall mean the Proof of Claim (Fire Claim Related) filed by any PG&E Fire Victim in the Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company.

Global Policy.

The terms "You" or "Your" and variants thereof mean the Debtors or Debtors' Designee(s).

### INSTRUCTIONS

These instructions are consistent in form and wording as the *"Motion of the Fire Victim Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery From Adventist Health System/West and Adventist Health Feather River and Service of a Subpoena on Factory Mutual Insurance Company"* [Dkt. 11556] filed by Brown Rudnick, LLP on behalf of the Fire Victim Trustee. **This was done with an abundance of caution to ensure consistency with similar requests submitted to this Court on behalf of the Trustee and to ensure the process was within the scope of existing FVT processes.** The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Information, Interrogatories, and Requests for Production, the following Instructions shall be followed:

1.      All responses shall comply with the requirements of the Civil Rules and the Bankruptcy Rules.

2.      Unless otherwise stated in a specific Request for Information, Interrogatory, or Request for Production herein, the relevant time period shall be the period from January 29, 2019 which is the date the Debtors filed the "Voluntary Petition for Non-Individuals Filing for Bankruptcy" [Dkt. 1] to the present.

3.      These Requests for Information, Interrogatories and Requests for Production shall be deemed continuing in nature. In the event you become aware of additional information related to Requests for Information, Interrogatories or Requests for Production, those should be promptly produced.

4. Produce all documents and all other materials in Your actual or constructive possession, custody, or control including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

5. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

6. Documents not otherwise responsive to these Requests for Production should be produced: (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

7. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

8. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

9. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

    a) Identify the type, title and subject matter of the Document;

    b) State the place, date, and manner of preparation of the Document;

    c) Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

    d) Identify the legal privilege(s) and the factual basis for the claim.

10.     Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 9 above must be provided.

11.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

12.     If You object to any of these Requests for Information, Interrogatories, or Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Information, Interrogatory, or Request for Production, You shall respond to any other portions of such Request for Information, Interrogatory, or Request for Production as to which there is no objection and state with specificity the grounds of the objection.

13.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Information, Interrogatories, or Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Information, Interrogatories, or Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Information, Interrogatory, or Request for Production, so state in Your response to that Request for Information, Interrogatory, or Request for Production.

14.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

15.     If You deny knowledge or information sufficient to answer an Interrogatory (or any part thereof), provide the name and address of each person known or believed to have such knowledge. Identify each person who assisted or participated in preparing and/or supplying any of the information given in answer to these Interrogatories.

///

# **MANNER OF PRODUCTION**

1.    <u>Document Production and Storage</u>: All Documents produced by or received by You shall be made available to all PG&E victims by posting to the Fire Victim Trust Portal within the "Documents" section of that site. These shall be uploaded to the portal in searchable PDFA format or single-page 300 dpi-resolution group IV TIF format ("tiff"), along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

2.    <u>Electronic Documents and Display</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow email correspondence to Abrams and appropriate posting to the Fire Victim Trust Portal, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

3.    <u>Emails and Attachments, and Other Email Account-Related Documents</u>: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft ExchangeTM, Lotus NotesTM, or Novell GroupwiseTM shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by PG&E Fire Victims and accessible from the PG&E Fire Victim Trust Portal.

4.    <u>Documents and Data Created or Stored in or by Structured Electronic Databases, Spreadsheets and Non-Standard File Types</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the PG&E Fire Victims to reasonably manage and import those Documents from the Fire Victim Trust Portal into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field-level schemas include:

a) XML format file(s);

b) Microsoft SQL database(s);

c) Access database(s); and/or

d) fixed or variable length ASCII delimited files.

5. <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be made available on the PG&E Fire Victim Portal and produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

6. <u>"Other" Electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be uploaded to the Fire Victim Trust Portal and produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

7. <u>Paper Documents</u>: Documents originally created or stored on paper shall be produced in tiff format and uploaded to the Fire Victim Trust Portal. Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

8. <u>Document Redactions</u>: Consistent with the "Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust" [Dkt. 12682] if a Debtors believe *"any provision must or should be kept confidential, he should file a request with the court to permit the filing of a redacted version of such a document and the court will review the unredacted version in camera and issue an appropriate order."* Any and all redactions should be described and justified when documents are posted to the Fire Victim Trust Portal in such a manner as to make the redaction(s) reasonably accessible, and comprehendible by PG&E Fire Victims.

///

# REQUESTS FOR INFORMATION AND INTERROGATORIES

**A. Questions Regarding Communications**

1.  Describe the contractual terms, provisions and agreements to which you are a party that might be considered as limiting or otherwise affecting the communications of the Trustee, TOC Members, TCC, TCC Counsel, Fire Claimant Professionals or others representing the interests of victims within the PG&E Bankruptcy Case relative to the value, administration, management or oversight of the FVT. Indicate the date of these associated agreements and the date of any amendments to these agreements.

    RESPONSE:

2.  Describe any communications You have had with the Trustee, TOC Members, TCC, TCC Counsel, Fire Claimant Professionals or others that represent the interests of victims that may reasonably be construed as affecting the manner in which victims were communicated to by these parties relative to the value, administration, management or oversight of the FVT.

    RESPONSE:

3.  Describe and disclose any agreements whether written or oral between You and the Trustee, TOC Members, TCC, TCC Counsel, Fire Claimant Professionals or others with fiduciary obligations to victims jointly or severally that may be reasonably viewed as containing financial incentives adverse to the interests of victims. This should include any financial incentives that might reasonably be construed as limiting the degree to which the financial benefits of the stated "$13.5B FVT" are realized. Similarly, describe and disclose any agreement whether written or oral of which You are aware between PG&E investors and these same parties. This response should include any financial incentives provided to these parties, their counsel and witnesses. If financial relationships(s) are indicated, describe the nature of those financial relationships (client, customer, contractor, partner, etc.), the structure of those relationships (shareholder, loan holder, debtor, creditor, etc.) and the manner in which those financial relationships may be likely to affect the fiduciary duties of these parties and/or which might reasonably create an appearance of partiality or bias.

    RESPONSE:

4.  Do You agree with Ms. Riddle's statement that *"PG&E has effectively wiped their hands of fire survivors' needs by claiming bankruptcy and not offering to make the Trust whole?"* Please, describe how you see Your role as it relates to the Fire Victim Trust. Since plan confirmation, why have You not worked with the Trustee, TOC members and others to make the Trust whole beyond Your contractually obligated cash payments? How can you simultaneously state that you have completed Your obligations to the Trust while at the same time affecting the manner in which Trust representatives communicate with victims and fulfill their obligations to fully fund the Trust?

    RESPONSE:

5.   Do you agree with Ms. Riddle's statement that You *"poked around in victims' social media, financial history, and personal relationships and nitpicked at their claims?"* If so, is this a pattern that stopped prior to this PG&E Bankruptcy Case and the formation of the FVT? If you disagree with Ms. Riddle's characterization, please describe the manner in which you have engaged within the FVT claims administration process and the degree to which You have scrutinized individual Fire Victim claims resolution.

     RESPONSE:

6.   On what legal basis are You asserting a *"say over the information that's provided by the Trust to claimants?"* What contractual provisions are You reliant upon to justify Your involvement in communication from the Trustee, TOC members or other parties representing the interests of victims? How have you exercised these terms within this PG&E Bankruptcy Case?

     RESPONSE:

7.   What acts have You engaged in and what contractual terms have You exercised that might be reasonably viewed as limiting the degree to which the Trustee, TOC members or others representing victims are able to describe Your inaccurate valuation of the FVT stock? What efforts have you made to support the full funding of the Trust given that victims have relied upon Your inflated stock valuation?

     RESPONSE:

8.   What acts have You engaged in and/or contractual terms have You exercised that might reasonably be viewed as limiting disclosures to victims around the registration rights agreement that govern the stock rules associated with the FVT?

     RESPONSE:

## B. Questions Regarding Regulatory Proceedings

1.   What terms have you negotiated within this PG&E Bankruptcy Case, through settlement agreements, confidentiality protocols, nondisclosure agreements and/or other agreements, that might reasonably be construed as affecting the manner in which the Trustee, TOC members or other parties representing the interests of victims are able to engage in regulatory proceedings on behalf of the Trust or victims? If terms limit the type of disclosures You are able to provide relative to these agreements describe those terms and the degree to which those terms are able to be vacated or waived upon mutual consent by the parties within these agreements.

     RESPONSE:

2.   What terms have You negotiated within this PG&E Bankruptcy Case, through settlement agreements, confidentiality protocols, nondisclosure agreements and/or other agreements, that might reasonably be construed as affecting the manner in which local governments, local government agencies and nonprofit organizations are able to engage in regulatory

proceedings on behalf of the Trust or victims? If terms limit the type of disclosures You are able to provide relative to these agreements describe those terms and the degree to which those terms are able to be vacated or waived upon mutual consent by the parties within these agreements.

RESPONSE:

3. Jerry Bloom, TCC Counsel has asserted that *"Debtors took the position that the existence of the RSA precluded the TCC from cross examining Debtors' witnesses before the CPUC"*[7] [Dkt. 7331]. Do You contend that these RSA provisions still limit the degree to which TCC Counsel or other parties representing the interests of victims may represent victim interests within regulatory proceedings? Which RSA provisions limit the acts and conduct of the Trustee, TOC members and others representing the interests of victims within regulatory proceedings?

RESPONSE:

4. How have You exercised contractual provisions associated with this PG&E Bankruptcy Case to limit the actions of the Trustee, local governments and other parties representing the interests of victims relative to their engagement within California Public Utilities Commission proceedings? If terms limit the type of disclosures You are able to provide relative to these agreements describe those terms and the degree to which those terms are able to be vacated or waived upon mutual consent by the parties within these agreements.

RESPONSE:

## C. Other Acts, Conduct and Terms Obstructing the Fire Victim Trust

1. What terms have You negotiated within this PG&E Bankruptcy Case, through settlement agreements, confidentiality protocols, nondisclosure agreements and/or other agreements, that might reasonably be construed as preventing or limiting the acts and conduct of The Trustee, TOC or others from representing the interests of victims to engage in legislative or derivative case related litigation efforts on behalf of the Trust or victims? If terms limit the type of disclosures You are able to provide relative to these agreements describe those terms and the degree to which those terms are able to be vacated or waived upon mutual consent by the parties within these agreements.

RESPONSE:

2. How have the You exercised contractual provisions associated within this PG&E Bankruptcy Case to limit the actions of the Trustee, local governments and other parties representing the interests of victims relative to their engagement within legislative actions or through derivative case litigation that might support the funding of the FVT or otherwise further the interests of victims? If terms limit the type of disclosures You are able to provide relative to these agreements describe those terms and the degree to which

---

[7] See *"Jerry R. Bloom in Support of Objection of the Official Committee of Tort Claimants to Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Date March 16, 2020"* May 15, 2020, [Dkt. 7331], pg. 4

those terms are able to be vacated or waived upon mutual consent by the parties within these agreements.

RESPONSE:

3. How have You affected or otherwise curtailed the ability of the Trustee and/or other parties representing the interests of victims from engaging in legislative and public relations activities through contract provisions associated with this PG&E Bankruptcy Case that might reasonably be construed as limiting their ability to fund the FVT to the $13.5B valuation You provided? If terms limit the type of disclosures You are able to provide relative to these agreements describe those terms and the degree to which those terms are able to be vacated or waived upon mutual consent by the parties within these agreements.

RESPONSE:

4. What terms have You negotiated within this PG&E Bankruptcy Case, through settlement agreements, confidentiality protocols, nondisclosure agreements and/or other agreements, that might reasonably be construed as ensuring that attorney claims for inverse condemnation are taken out of the FVT? If terms limit the type of disclosures You are able to provide relative to these agreements describe those terms and the degree to which those terms are able to be vacated or waived upon mutual consent by the parties within these agreements.

RESPONSE:

5. What contractual provisions have You exercised that might reasonably be construed as ensuring that attorney inverse condemnation claims are taken from the FVT rather than directly from You? If terms limit the type of disclosures You are able to provide relative to these agreements describe those terms and the degree to which those terms are able to be vacated or waived upon mutual consent by the parties within these agreements.

RESPONSE:

6. What acts and conduct have You engaged to limit information provided from the Trustee or other parties representing the interests of victims regarding the amounts or processes associated with inverse condemnation claims?

RESPONSE

7. Are You aware of the inverse condemnation claims filed against You as the Debtor and/or the Fire Victim Trust? If so, please provide the total amount and number of claims filed to date.

RESPONSE:

## REQUESTS FOR PRODUCTION

1. All documents that support or refute Your responses to the foregoing Requests for Information and Interrogatories.

   RESPONSE:

2. All contracts and agreements produced and/or executed by You and/or on your behalf with any party within the PG&E Bankruptcy Case that may reasonably be construed as affecting or otherwise limiting the acts and conduct of the FVT Trustee or other parties representing the interests of victims including but not limited to those agreements affecting inverse condemnation claims, public relations activities, communications to victims, legislative engagement, lobbyist actions and/or regulatory engagement.

   RESPONSE:

3. All communications and correspondence by You and/or on Your behalf with any party within the PG&E Bankruptcy Case that may reasonably be construed as directing, influencing or limiting the acts and conduct of the FVT Trustee or other parties representing the interests of victims related to attorney inverse condemnation claims, FVT public relation activities, communications to victims, legislative engagement, lobbyist actions and/or regulatory engagement.

   RESPONSE:

**\*NOTE REITERATED FROM ABOVE:** Consistent with the "Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust" [Dkt. 12682] if the Debtors believe *"any provision must or should be kept confidential, he should file a request with the court to permit the filing of a redacted version of such a document and the court will review the unredacted version in camera and issue an appropriate order."* Any and all redactions should be described and justified when documents are posted to the Fire Victim Trust Portal in such a manner as to make the redaction(s) reasonably accessible, and comprehendible by PG&E Fire Victims.

Dated: September 22, 2022

Submitted by,

William B. Abrams
Pro Se Claimant

# EXHIBIT C: RIDDLE EMAIL



On Sep 9, 2022, at 12:36 AM, Lora Fournier <███████████████> wrote:

> CAUTION: *** External Email ***

Thank you! Thank you so much for that information it is very helpful I can rest a little easier now.

On Tue, Sep 6, 2022, 3:33 PM Amanda Riddle ██████████████ wrote:

> Lora,
>
> I am on the Trust Oversight Committee and one of the lead attorneys with the Northern California Fire Victims. If you have specific questions about how the Trust is run, please let me know. But no, my firm (Corey, Luzaich, de Ghetaldi & Riddle) will not be filing a joinder. Will Abrams' claims continue to be unfounded and do nothing other than waste the Trust's time and the victims' money because the attorneys being paid to respond to his serial motions are being paid out of the $13.5B. Also, I had never heard of Baum Hedlund until last week. They were not involved in the settlement discussions during the bankruptcy nor were they involved in the development of the Trust process. They are also not involved in the oversight of the Trust. If they have concerns about transparency it is likely because they are not well informed enough about the process.
>
> As for your last statement, I can explain that: "PG&E filed a declaration in support of the FVT Redacted Documents on the Bankruptcy website, Doc #12890, "Declaration of Robin J. Reilly in Support of Joint Ex Parte Motion to File Redacted Version of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, in Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust (RE: related document(s)12889 Motion to File Redacted Document). Filed by Debtor PG&E Corporation {https://restructuring.ra.kroll.com/pge/Home-DownloadPDF?id1=MTM0NDAzOA==&id2=-1}
>
> What's frustrating about this is PG&E has effectively wiped their hands of fire survivors' needs by claiming bankruptcy and not offering to make the Trust whole but seem to feel that they have some say over the information that's provided by the Trust to claimants."

PG&E filed bankruptcy. Part of the bankruptcy reorganization plan required a settlement with the fire victims. One of the deal points of that settlement was that PG&E put the money/stock into a Trust and then have nothing to do with how those funds were distributed. This is because in past cases where we litigated directly against PG&E, they poked around in victims' social media, financial history, and personal relationships and nitpicked at their claims and alleged that i.e. their family relationships were not strong to begin with so the fire did not cause the claimed rift or they are not as injured as they claim because they recently went on vacation. This adds insult to injury. So, the Trust was set up and PG&E was pushed out of the picture to prevent that from happening here.

As part of the settlement, PG&E assigned to the Trust the right to sue PG&E's former officers and directors and vegetation and business contractors. These claims potentially bring hundreds of millions of dollars more into the Trust on top of the cash and stock received. The Trust had to hire attorneys to litigate those cases. One of the firms hired in the officers and directors case and the vegetation contractor case was mine. This was because we, along with other firms hired, have the most experience suing PG&E and can litigate the cases faster and cheaper that someone doing so for the first time. As the document you linked to states, a settlement has been reached in the officers and directors case but that settlement is not yet final. The settlement contains highly sensitive information that can impact PG&E's stock price, which in turn can impact the fire victims. So, all sides decided it is better to keep those terms confidential until the settlement is ready for approval and made public by Judge Montali. Judge Montali agreed with this plan.

Happy to answer any other questions you have but please understand that the more time we spend dealing with Will Abrams and law firms who are ill informed, the less time we have to spend on getting all fire victims paid, which is our main priority.

Thank you,

Amanda L. Riddle, Esq.

**Northern California Fire Lawyers**

Corey, Luzaich, de Ghetaldi & Riddle LLP

700 El Camino Real

Millbrae, CA 94030

(650) 871-5666 (Phone)

(650) 871-4144 (Fax)

alr@coreylaw.com

The information contained in this email message is legally privileged and confidential information intended solely for the use of the individual or organization to whom it is addressed. DO NOT copy, modify, distribute, or take any action in reliance on this email message if you are not the intended recipient. Any dissemination or use of this email message or disclosure of its contents to a third party by anyone other than the intended recipient is strictly prohibited. If you have received this email message in error, please notify the sender and delete the entire message, including any attachments, from your system.

**From:** Matthew Luzaich ███████████████████████
**Sent:** Tuesday, September 6, 2022 2:49 PM
**To:** Amanda Riddle ███████████████
**Cc:** █████████████████
**Subject:** Fwd: Automatic reply: NorCal Fire Lawyers

CAUTION: *** External Email ***

**From:** Lora Fournier <███████████████
**Sent:** Sunday, September 4, 2022 6:45:53 PM
**To:** Matthew Luzaich <███████████████
**Subject:** Re: Automatic reply: NorCal Fire Lawyers

I imagine you've seen this press release from Baum Hedlund, who represents about 100 ███████ ██████ asking for more transparency from the FVT and JAMS Neutrals on behalf of Baum's

clients.

Wildfire Attorneys Call for More Transparency for Fire Victim Trust Claimants https://www.baumhedlundlaw.com/blog/2022/september/ca-wildfire-attorneys-call-for-more-transparency/?fbclid=IwAR0LC9yJWg-dXrJOjJYQfeN3G7AdhamZCMMeGSQAG-rqtW6rJeJqAnx15i8

Baum Hedlund has also filed a Joinder, Doc #12877 on the Bankruptcy Docket, "Joinder Joinder By Baum Hedlund Aristei Goldman Camp Fire Victim Clients In Motion Of William B. Abrams Pursuant To Federal Rule Of Bankruptcy Procedure 2004 For Entry Of An Order Authorizing Discovery And Hearings Regarding The Acts And Conduct Of Jams Neutrals Given New Evidence (Doc. No. 12766) (RE: related document(s)12766 Motion for Examination). Filed by Creditor Majesti Mai Bagorio, etc." {https://restructuring.ra.kroll.com/pge/Home-DownloadPDF?id1=MTM0MzkwMg==&id2=-1}

Would it be possible for {Northern Valley Fire lawyers} to also file a joinder on the Motion? You and I have discussed the difficulty of getting useful information from the Trust and this may well be the way to get clarity. I mean, we can't get a community meeting even though Cathy Yanni said that's what she planned to do. It's now two months since her posting on the FVT website.

And finally, PG&E filed a declaration in support of the FVT Redacted Documents on the Bankruptcy website, Doc #12890, "Declaration of Robin J. Reilly in Support of Joint Ex Parte Motion to File Redacted Version of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, in Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust (RE: related document(s)12889 Motion to File Redacted Document). Filed by Debtor PG&E Corporation {https://restructuring.ra.kroll.com/pge/Home-DownloadPDF?id1=MTM0NDAzOA==&id2=-1}

What's frustrating about this is PG&E has effectively wiped their hands of fire survivors' needs by claiming bankruptcy and not offering to make the Trust whole but seem to feel that they have some say over the information that's provided by the Trust to claimants.

So, let me know what you think about the above, especially the Joinder idea. Fire Survivors need all the help we can get.

On Thu, Aug 25, 2022, 11:04 PM Matthew Luzaich <███████████████████> wrote:

Dear client,

I am out of the office and will return on September 1st. Please call ███████████ for assistance or email contact@norcalfirelawyers.com.

Thanks,

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.



**Lora Fay Fournier**
September 13 at 3:58 AM · 🌐

···

Received this email from my lawyers when I sent an email asking If they were joining in the suit

Lora,

I am on the Trust Oversight Committee and one of the lead attorneys with the Northern California Fire Victims. If you have specific questions about how the Trust is run, please let me know. But no, my firm (Corey, Luzaich, de Ghetaldi & Riddle) will not be filing a joinder. Will Abrams' claims continue to be unfounded and do nothing other than waste the Trust's time and

involved in the oversight of the Trust. If they have concerns about transparency it is likely because they are not well informed enough about the process.

As for your last statement, I can explain that: "PG&E filed a declaration in support of the FVT Redacted Documents on the Bankruptcy website, Doc #12890, 'Declaration of Robin J. Reilly in Support of Joint Ex Parte Motion to File Redacted Version of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to

över are information that is provided by the Trust to claimants."

PG&E filed bankruptcy. Part of the bankruptcy reorganization plan required a settlement with the fire victims. One of the deal points of that settlement was that PG&E put the money/stock into a Trust and then have nothing to do with how those funds were distributed. This is because in past cases where we litigated directly against PG&E, they poked around in victims' social media

are not as injured as they claim because they recently went on vacation. This adds insult to injury. So, the Trust was set up and PG&E was pushed out of the picture to prevent that from happening here.

As part of the settlement, PG&E assigned to the Trust the right to sue PG&E's former officers and directors and vegetation and business contractors. These claims potentially bring hundreds

experience suing PG&E and can litigate the cases faster and cheaper that someone doing so for the first time. As the document you linked to states, a settlement has been reached in the officers and directors case but that settlement is not yet final. The settlement contains highly sensitive information that can impact PG&E's stock price, which in turn can impact the fire victims. So, all sides decided it is better to keep those terms confidential until the settlement is

Lora,

I am on the Trust Oversight Committee and one of the lead attorneys with the Northern California Fire Victims. If you have specific questions about how the Trust is run, please let me know. But no, my firm (Corey, Luzaich, de Ghetaldi & Riddle) will not be filing a joinder. Will Abrams' claims continue to be unfounded and do nothing other than waste the Trust's time and the victims' money because the attorneys being paid to respond to his serial motions are being paid out of the $13.5B. Also, I had never heard of Baum Hedlund until last week. They were not involved in the settlement discussions during the bankruptcy nor were they involved in the development of the Trust process. They are also not involved in the oversight of the Trust. If they have concerns

involved in the oversight of the Trust. If they have concerns about transparency it is likely because they are not well informed enough about the process.

As for your last statement, I can explain that: "PG&E filed a declaration in support of the FVT Redacted Documents on the Bankruptcy website, Doc #12890, "Declaration of Robin J. Reilly in Support of Joint Ex Parte Motion to File Redacted Version of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, in Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust (RE: related document(s)12889 Motion to File Redacted Document). Filed by Debtor PG&E Corporation (https://restructuring.ra. kroll.com/pge/Home-DownloadPDF? id1=MTM0NDAzOA==&id2=-1)

What's frustrating about this is PG&E has effectively wiped their hands of fire survivors' needs by claiming bankruptcy and not offering to make the Trust whole but seem to feel that they have some say over the information that's provided by the

over the information that's provided by the
Trust to claimants."

PG&E filed bankruptcy. Part of
the bankruptcy reorganization
plan required a settlement with
the fire victims. One of the deal
points of that settlement was that
PG&E put the money/stock into a
Trust and then have nothing to do
with how those funds were
distributed. This is because in
past cases where we litigated
directly against PG&E, they poked
around in victims' social media,
financial history, and personal
relationships and nitpicked at
their claims and alleged that i.e.
their family relationships were not
strong to begin with so the fire did
not cause the claimed rift or they
are not as injured as they claim
because they recently went on
vacation. This adds insult to
injury. So, the Trust was set up
and PG&E was pushed out of the
picture to prevent that from

are not as injured as they claim
because they recently went on
vacation. This adds insult to
injury. So, the Trust was set up
and PG&E was pushed out of the
picture to prevent that from
happening here.

As part of the settlement, PG&E
assigned to the Trust the right to
sue PG&E's former officers and
directors and vegetation and
business contractors. These
claims potentially bring hundreds
of millions of dollars more into
the Trust on top of the cash and
stock received. The Trust had to
hire attorneys to litigate those
cases. One of the firms hired in
the officers and directors case
and the vegetation contractor
case was mine. This was
because we, along with other
firms hired, have the most
experience suing PG&E and can
litigate the cases faster and

experience suing PG&E and can litigate the cases faster and cheaper that someone doing so for the first time. As the document you linked to states, a settlement has been reached in the officers and directors case but that settlement is not yet final. The settlement contains highly sensitive information that can impact PG&E's stock price, which in turn can impact the fire victims. So, all sides decided it is better to keep those terms confidential until the settlement is ready for approval and made public by Judge Montali. Judge Montali agreed with this plan.

Happy to answer any other questions you have but please understand that the more time we spend dealing with Will Abrams and law firms who are ill informed, the less time we have to spend on getting all fire victims paid, which is our main priority.

that settlement is not yet final. The settlement contains highly sensitive information that can impact PG&E's stock price, which in turn can impact the fire victims. So, all sides decided it is better to keep those terms confidential until the settlement is ready for approval and made public by Judge Montali. Judge Montali agreed with this plan.

Happy to answer any other questions you have but please understand that the more time we spend dealing with Will Abrams and law firms who are ill informed, the less time we have to spend on getting all fire victims paid, which is our main priority.

Thank you,



# BEFORE THE PUBLIC UTILITIES COMMISSION
# OF THE STATE OF CALIFORNIA

**FILED**

09/16/22
04:59 PM
A2109008

Application of Pacific Gas and Electric
Company for Recovery of Recorded
Expenditures Related to Wildfire Mitigation,
Catastrophic Events, and Other Recorded Costs.

(U39M)

Application 21-09-008
(Filed September 16, 2021)

## WILLIAM B. ABRAMS OPENING BRIEF ON APPLICATION OF PACIFIC GAS AND ELECTRIC COMPANY FOR RECOVERY OF RECORDED EXPENDITURES RELATED TO WILDFIRE MITIGATION, CATASTROPHIC EVENTS AND OTHER RECORDED COSTS

William B. Abrams
California Resident
2041 Stagecoach Rd.
Santa Rosa, CA, 95404
(707) 397-5727
Email: end2endconsulting@gmail.com

September 16, 2022

Case: 19-30088   Doc# 12995   Filed: 09/22/22   Entered: 09/22/22 14:57:34   Page 48
of 101

# BEFORE THE PUBLIC UTILITIES COMMISSION
## OF THE STATE OF CALIFORNIA

| | |
|---|---|
| Application of Pacific Gas and Electric Company for Recovery of Recorded Expenditures Related to Wildfire Mitigation, Catastrophic Events, and Other Recorded Costs. | Application 21-09-008 (Filed September 16, 2021) |

(U39M)

## WILLIAM B. ABRAMS OPENING BRIEF ON APPLICATION OF PACIFIC GAS AND ELECTRIC COMPANY FOR RECOVERY OF RECORDED EXPENDITURES RELATED TO WILDFIRE MITIGATION, CATASTROPHIC EVENTS AND OTHER RECORDED COSTS

Pursuant to the Assigned Commissioner's November 18, 2021 Scoping Memo and subsequent extension to file opening briefs by September 16, 2022, William B. Abrams respectfully submits this opening brief on the "Application of Pacific Gas and Electric Company for Recovery of Recorded Expenditures Related to Wildfire Mitigation, Catastrophic Events, and Other Recorded Costs." William B. Abrams received party status via email ruling on November 18, 2021 and does not intend to seek intervenor compensation for engagement within this proceeding despite my substantial contribution. The Commission should note that counsel for the Fire Victim Trustee has not actively engaged within this proceeding despite their extensive compensation from the Fire Victim Trust for "monitoring" this and other proceedings.

Case: 19-30088   Doc# 12995   Filed: 09/22/22   Entered: 09/22/22 14:57:34   Page 49 of 101

# I. Introduction and Position Summary

There are over 70,000 victims of the PG&E wildfires counting on the Fire Victim Trust ("**FVT**") to rebuild their infrastructure (homes, communities, etc.) and compensate them for their losses (injuries, deaths, etc.) related to fires caused by Pacific Gas and Electric Company ("**PG&E**"). The reason why victims from the Butte Fire in 2015 through the Camp Fire in 2018 still suffer and wait is because the FVT was unjustly sold to victims as a $13.5B settlement based upon an over-inflated and fanciful stock valuation (14x multiplier, NENI, etc.) provided by PG&E. This stock misrepresentation and related injustices were compounded by PG&E's successful efforts to unduly influence certain victim attorneys core to the PG&E Bankruptcy Case (Case#19-30088-DM).

PG&E and their investors have in part promoted this stock-infused settlement to ensure victims would support this type cost recovery that might increase the value of the Fire Victim Trust. However, victims whom have lived experiences and witnessed the horrors of PG&E wildfires also know that approving unreasonable expenditures only serves to support misaligned incentive structures that put our communities and our families at greater risk of future catastrophic utility-caused wildfires. The California Public Utilities Commission (the "**Commission**" or "**CPUC**") must not ignore the facts presented by Cal Fire, the State Auditors, Independent Auditors and many others that have demonstrated that PG&E's activities are unreasonable related to this cost recovery application. If the Commission looks the other way and ignores the facts surrounding this application, more communities and more families will suffer at the hands of PG&E. Indeed, if the Commission rubber stamps this application, it will only serve to reinforce the executive and shareholder expectations that PG&E cost recovery applications will be approved by the CPUC regardless of their unlawful acts, misguided mitigation activities and gross negligence. We must also keep in mind that many victims are suffering and living hand-to-mouth while they await their "made whole" settlements. Asking these

Case: 19-30088    Doc# 12995    Filed: 09/22/22    Entered: 09/22/22 14:57:34    Page 50 of 101

same victims to make the false choice of supporting this application to advance their personal recovery or holding PG&E accountable for unreasonable expenditures is an unbearable position that must be alleviated by the Commission's thoughtful consideration of these issues.

Also, the Commission should consider that the agreements surrounding the FVT seem largely designed to silence the voices of certain parties representing the interests of victims (FVT Trustee, Fire Claimant Professionals, Trust Oversight Committee Members, etc.) that might otherwise speak out and advocate within this proceeding and others before the Commission. Indeed, PG&E has successfully secured confidentiality protocols, settlement agreements and other nondisclosure terms through the US Bankruptcy Court (Case#19-30088-DM), beyond the view of victims and the public, so we are unable to ascertain who is left to advocate for public and victim interests within this proceeding. The important voices of The Utility Reform Network ("**TURN**") and the Public Advocates Office at the California Public Utilities Commission ("**Cal Advocates**") are left to represent the public interests with few resources and without the aid of PG&E victim advocates that might otherwise be inclined to support their efforts.

Unfortunately, the context described above puts the Commission in a difficult position to balance (1) the interests of victims and other shareholders counting on the approval of the cost recovery application and (2) the interests of the public and ratepayers who understand that the unreasonable recovery and mitigation activities of PG&E related to these fires should not be rewarded with a blanket approval. Furthermore, it is absolutely clear that approving this application for PG&E cost recovery before victims receive their cost recover through the Fire Victim Trust would be manifestly unjust as defined by Public Utilities Code Section 451 and Section 451.1 which states the following:

> *"All charges demanded or received by any public utility, or by any two or more public utilities, for any product or commodity furnished or to be furnished or any service rendered or to be rendered shall be **just and reasonable. Every unjust or unreasonable charge demanded or received for such product or commodity or service is unlawful**... the commission may allow cost recovery **if the costs and expenses are just and reasonable**, after consideration of the conduct of the utility. In evaluating the reasonableness of the costs and*

4

*expenses, the commission shall consider the conduct of the electrical corporation and relevant information submitted into the commission record."* (emphasis added)

Given the role of the Commission to look at this cost recovery application through the lens of PUC Section 451 and 451.1 and the regulatory necessity to balance the interests of shareholders, ratepayers, victims and the public, I urge the Commission to approve the cost application of PG&E based upon the following two important conditions:

**Condition #1** – PG&E's cost recovery related to the wildfires between 2015 and 2020 should be deemed "just and reasonable" pursuant to Public Utilities Code Section 451 and 451.1 **only if** the regulatory approval and subsequent recovery of costs is contingent upon the full cost recovery of PG&E victims through the Fire Victim Trust. This is particularly important given that victims have relied upon the representations of PG&E regarding the valuation of PG&E stock. Also, PG&E is currently engaged in activities to delay and prevent reasonable discovery within the PG&E Bankruptcy Case that would allow victims to understand the degree to which PG&E and their investors are preventing the Trustee, the Trust Oversight Committee ("**TOC**") and other parties from advocating for victim interests within this Commission proceeding.[1]

**Condition #2** - Reasonable costs associated with this PG&E application should be approved **contingent upon the full cost recovery of victims** through the PG&E Fire Victim Trust. Conversely, any PG&E cost recovery approved through this application would be unreasonable, unjust and unlawful pursuant to PUC Section 451.1 if it is provided before the full cost recovery of PG&E victims. Approval of this application without these conditions would inherently and unjustly force victim ratepayers and their neighbors to fund the cost recovery of the corporation that burned down their homes and their communities before they are provided their "made whole" cost recovery through the Fire Victim Trust.

## II. Background and Context

During the evidentiary hearings that occurred on July 26, 2022, Ms. Christine Cowsert, Senior Vice President on behalf of PG&E stated that "*I think if an activity is reasonable, the costs associated with the activity are also, should also be considered*

---

[1] See Case# 19-30088-DM, August 29, 2022, "*Joint Ex Parte Motion to File Redacted Version of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend In Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust*" [Dkt. 12889], https://restructuring.ra.kroll.com/pge/Home-DownloadPDF?id1=MTM0NDAzNw==&id2=-1

5

*reasonable.*"[2] Following this statement, I asked Ms. Cowsert the following question which I believe is the key question for the Commission to consider when identifying which costs, if any, should be approved through this cost recovery application:

> *"So, if the auditors are finding that activities were unreasonable, wouldn't then...*
> *the cost recovery be unreasonable?"*

The Commission should consider that there is no read of the Electric System Safety Report from the California State Auditor, the Root Cause Analysis from Envista or the series of Cal Fire reports over the 2015 to 2020 time-period that would lead to a conclusion that the majority of the recovery and mitigation related activities represented within the PG&E application are reasonable. Moreover, the statements from various county district attorneys, judges and others during this same time-period certainly make it clear that nobody with clear eyes could reasonably view the recovery and mitigation activities of PG&E as positive steps forward to provide safe and reliable service.

The Commission should also consider the following exchange during the evidentiary hearing held on July 26, 2022 and the related testimony of Christine Cowsert, PG&E Senior Vice President as the primary sponsor of this cost recovery application:[3]

> **ABRAMS:** *"Ms. Cowsert, as I mentioned, I'm one of approximately 70,000 wildfire survivors or PG&E victims that are still waiting for cost recovery as far back as the 2015 Butte Fire. And this is largely because of a valuation that PG&E put forward. Ms. Cowsert, do you believe that awarding cost recovery to PG&E before the victims of these fires is just?"*
> **COWSERT:** *"That's a difficult question to answer. I believe that cost recovery for the investments that PG&E has made is a necessary aspect..."*
> **ABRAMS:** *"I'll ask this Ms. Cowsert. I'm not sure that the "just" portion of my question was answered. Ms. Cowsert, do you believe that it would be proper for the Commission to decide that cost recovery would only be just in accordance with Section 451 only at the point that victims of your fires are able to recover their costs? Is that not a reasonable approach, in other words, to make it contingent, PG&E's cost recovery contingent upon the cost recovery of your victims? Would that not be a reasonable approach?*
> **COWSERT:** *"I don't know."*

---

[2] See A.21-09-008, "Reporters Transcript Virtual Hearing" Volume 2,
[3] See Hearing Transcript, July 26, 2022, California Public Utilities Commission A.21-09-008, (pg. 101, 103-105), https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M496/K395/496395973.PDF

6

## III. Summary and Conclusion

It is important for Commission to consider that what Ms. Cowsert may see as "necessary" for PG&E or their shareholders is not the standard for review of this application pursuant to PUC Section 451. Moreover, her "*I don't know*" statement should be seen as an honest and straight forward response by a senior executive who clearly realizes that providing PG&E cost recovery before their victims is indefensible. Any attempt by PG&E to prioritize their cost recovery over their victims would only serve to undermine their own efforts to turn the page and could reasonably be perceived as an attempt to put a "New PG&E" face on old, divisive and unjust tactics.

Despite this moral paradigm, I am confident that PG&E will now attempt to argue that these issues of victim cost recovery and PG&E cost recovery are separate issues and should not to be jointly considered by the Commission. However, this line of reasoning would contradict their prior statements and actions demonstrating that these issues are inextricably linked. Indeed, Jason Wells, former CFO stated that the deal struck between PG&E and victim attorneys through the establishment of the Fire Victim Trust, "tethers' victims financial futures" to PG&E.[4] It is simply irrational and unjust to take the position that victims should be "tethered" to the stock performance but not "tethered" to PG&E related cost recovery. Tethering and untethering victims based upon the whims and financial conveniences of PG&E through this cost recovery application should not be tolerated by the Commission.

Moreover, it is clear that PG&E continues to engage in activities to undermine the Fire Victim Trust and the "made whole" promises provided to victims. Recently, PG&E has hired additional legal counsel that specializes in discovery defense and has engaged with the Trustee to delay and undermine transparency. However, these efforts by PG&E to block discovery, prevent disclosures and undermine the efforts of victim advocates is not a new corporate tactic. The Commission should consider the efforts of Jerry Bloom, Counsel for the Tort Claimant Committee ("**TCC**") that were thwarted by PG&E and memorialized within his declaration that stated "*I intended to cross examine Mr. Wells on these subjects but the Debtors* [PG&E] *took the*

---

[4] See I.19-09-016 Evidentiary Hearing, February 8, 2020, "Reporter's Transcript" filed March 6, 2020, pg. 594, https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M328/K691/328691064.PDF

*position that the existence of the RSA precluded the TCC from cross examining Debtors'
witnesses before the CPUC.*"[5] It is unclear if PG&E still asserts these RSA protections or those
within other agreements to ensure that victims remain underrepresented within this and other
proceedings before the Commission.

My purpose for highlighting these issues should not be construed by the Commission as
an attempt to relitigate the PG&E Bankruptcy Case. However, it should be clear to the
Commission that PG&E's consistent pattern of taking advantage of victims to advance their own
financial interests is a continuing unjust tactic despite their "New PG&E" mantra. I urge the
California Public Utilities Commission to err on the side of justice especially given the fact that
Public Utilities Code Section 451 requires cost recovery to be just and reasonable. This would
also provide some consistency with the tenants of the Commission's own Environmental and
Social Justice (ESJ) Action Plan. In conclusion, the CPUC should only approve reasonable cost
recovery of expenditures related to this application if contingent upon PG&E ensuring the full
and expedient cost recovery of their victims. Any other path approved by the Commission might
reasonably be construed by victim ratepayers as manifestly unjust and only serve to reward
PG&E institutional investors for unreasonable wildfire related expenditures. I appreciate the
Commission's consideration of these proposed remedies that balance victim and public interests
with the cost recovery interests of PG&E and their investors.

Dated:

September 16, 2022

Respectfully submitted,

  /s/  William B. Abrams
California Resident
2041 Stagecoach Rd.
Santa Rosa, CA, 95404
Tel: (707) 397-5727
E-mail: end2endconsulting@gmail.com

---

[5] See *"Jerry R. Bloom in Support of Objection of the Official Committee of Tort Claimants to Confirmation of
Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Date March 16, 2020"* May 15,
2020, [Dkt. 7331], pg. 4

Case: 19-30088   Doc# 12995   Filed: 09/22/22   Entered: 09/22/22 14:57:34   Page 55
of 101

From: **Will Abrams** end2endconsulting@gmail.com
Subject: Re: Victim Cost Recovery and Related Case
Date: August 4, 2022 at 4:29 PM
To: Cicero, Gerard ██████████████████████████ , David J. Molton ███████████
Cc: William D. Kissinger ████████████████

Thanks Gerard. I am confident that if the Trustee along with some of the Fire Claimant Professionals, TOC members and others representing victim interests became parties to this proceeding and filed briefs to call attention to these related issues of cost recovery that it would really drive some support from the CPUC, PG&E, Governor's Office and others to remedy the Trust shortfall. Of course, these individual efforts and briefs would be even more effective if they involved collaboration, coordination and direct requests to victims for their support. Anything the Trustee could do to help facilitate that type of dialogue would be much appreciated.

On Aug 4, 2022, at 1:32 PM, Cicero, Gerard T. <████████████████ wrote:

Thank you, Will. Confirming receipt on our end, and we appreciate you sending it directly to us.

<image001.jpg>

**Gerard T. Cicero**

██████████████
██████████████
██████████████

www.brownrudnick.com

Please consider the environment before printing this e-mail

**From:** Will Abrams <end2endconsulting@gmail.com>
**Sent:** Thursday, August 4, 2022 3:11 PM
**To:** William D. Kissinger <████████████████ ; Cicero, Gerard T. <███████████████ Molton, David J. <
**Subject:** Victim Cost Recovery and Related Case

**CAUTION: External E-mail. Use caution accessing links or attachments.**

David, Gerard and Bill -

I will be sending this out to the service list shortly but wanted to send this to you directly regarding a related case at the CPUC. I am hopeful that the Trustee will engage within this case to advance the interests of victims in an effort to remedy the $13.5B shortfall. This effort to make PG&E cost recovery contingent upon the cost recovery of victims has merit both from a CPUC PUC 451 standpoint as well as from the standpoint of Trustee's efforts to fully fund the Fire Victim Trust. I hope that you

the standpoint of Trustee's efforts to fully fund the Fire Victim Trust. I hope that you see this as supportive of your efforts.

Also, I am hoping that despite our differences on other matters that we can meet regarding this related case and work collaboratively in the best interests of PG&E victims. As you know, I have background regarding other related matters at the CPUC and I certainly know you and your team have a wide breadth of expertise and resources that could be applied to this case.

Thank you for your continued consideration.

Sincerely,

Will

<u>Statement of Related Case Before the California Public Utilities Commission Regarding Debtor Cost Recovery Application A.21-09-008 Pursuant to Public Utilities Code Section 451 and 451.1 Filed by Interested Party William B. Abrams</u>

*************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary herewhich sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

*************************************************************************



**From:** William Abrams ███████████
**Subject:** Thanks and Meeting Request
**Date:** July 27, 2022 at 2:27 PM
**To:** cathy████████████████iamsadr.com
**Cc:** David J. Molton ███████████     Cicero, Gerard T. ███████████

Ms. Yanni –

I just wanted to send a note to you directly to thank you for the recent letter posted to the Fire Victim Trust portal. I am glad to see that you have expressed a renewed commitment to increase transparency and hope that this means that you will support the Motion for Trust Discovery and the types of disclosures and other remedies myself and others have advocated for within this case.

After reading this letter, I reviewed your website and was heartened to read the article you wrote for Law.com and posted entitled "Ethical Challenges of Aggregate Settlement Agreements":

https://static1.squarespace.com/static/50a2ebfde4b0540b9f67148d/t/546a89dbe4b0fe11a01afb63/1416268251178/Yanni_Aggregate_S ettlement_Agreements_Law_2014-07-10.pdf

This very thoughtful piece outlines the types of remedies that should be enforced by you as the Trustee and which are echoed across my recent motions. Those parties connected to the Trust and that serve or have served in fiduciary roles on behalf of victims certainly should provide the type of written informed consent you describe along with the associated disclosures. I am confident that if we follow the types of remedies you outline within this piece and collaboratively facilitate Trust discovery pursuant to Bankruptcy Rule 2004 that victims will regain confidence in the Trust and we will be able to achieve just settlements. I welcome dialogue with you around these issues. Just this morning the attached obituary was sent to me about one of my neighbors who suffered since the PG&E Tubbs Fire and sadly passed away:

https://www.legacy.com/us/obituaries/pressdemocrat/name/michael-owen-obituary?id=35945272

There are countless victims like this that are suffering and sadly dying while they await just settlements from the Trust based upon the "made whole" doctrine and other commitments espoused by our attorneys representing our interests within this case. I agree with much of your writing and feel that the only way we will be able to make good on these commitments and sentiment is to work collaboratively and transparently towards our common goals. In an effort to support our goals to fully fund the Trust, myself and other wildfire survivors continue to reach out to elected officials, legislators, regulators and others to seek remedies to the $13.5B shortfall. There will be some information coming out in the next few days regarding these efforts and I certainly would appreciate a meeting with you to discuss how we can work together towards these mutual goals on behalf of victims. It is my continued hope that you will be willing to meet with me in good faith to remedy these critical issues on behalf of PG&E victims. I am thankful and appreciative of your work and hope that my efforts are viewed by you as they are intended to further justice and fair settlements within this case.

Please, feel free to reach out to me at your convenience to meet and confer or just to engage in open dialogue around these critical issues.

Sincerely,

Will Abrams
(707) 397-5727



Thanks David.

> On Jun 26, 2022, at 6:13 PM, Molton, David J. <D███████████████ wrote:
>
> Will: Thanks. We will revert tomorrow.
>
> Best,
>
> David J. Molton
> Brown Rudnick LLP
> ███████████████

> On Jun 26, 2022, at 8:50 PM, William Abrams ███████████████ wrote:

---

**CAUTION: External E-mail. Use caution accessing links or attachments.**

---

David and Gerard -

I hope you are having a good weekend. I'm just checking in regarding this information that I passed along and wanted to understand the degree to which you felt it was relevant as the Trustee looks for remedies to the $13.5B. Do you feel that this is only applicable to the cash disbursements from PG&E or that this letter of credit could be sought for the entire $13.5B. Given that this valuation was provided by PG&E and unchallenged by the TCC, some victims might logically read the intent of this provision within the disclosure statement that these assurances were related to the total 13.5B valuation. Please, let me know.

Thanks,

Will

> On Jun 24, 2022, at 12:15 AM, William Abrams ███████████████ wrote:
>
> ## David and Gerard -
>
> As you requested, I wanted to provide you with the following reference in the victim disclosure statement approved by the debtor (pg. 28, lines 19-20):
>
> *"To the extent there is a shortfall, Reorganized PG&E has agreed to provide a letter of credit for any remaining amounts to be paid to the Fire Victim Trust on January 15, 2022."*
>
> If the Trustee has not already done so, I would recommend pressing PG&E to make good on this to provide a **letter of credit for any shortfall of the total $13.5B.** Please, let me know your thoughts on the applicability of this as I know that many victims relied upon this statement as an assurance regarding the $13.5B.

Thanks,

Will

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**From: Will Abrams** end2endconsulting@gmail.com
**Subject:** Meeting Request: Motion for Victim Restitution: Case#14-0175 WHA
**Date:** January 4, 2022 at 11:22 AM
**To:** Molton, David J. ███████████████ William D. Kissinger ███████ morganlewis.com, Gerard T. Cicero
███████████ Amy Bach ███████████ uphelp.org, Steven Skikos ███skikos.com,
SSieger-G███ ███brownrudnick.com, fpitre███████, mkelly███████ scampora███████████
ecabraser███████ Amanda Riddle ███████ robins███████ geraldsingletonlaw

Justice Trotter, Counsel to the Fire Victim Trust and Members of the Trust Oversight Committee -

I have upcoming meetings regarding this motion with various stakeholders to help support restitution for victims given these PG&E probation violations. Of course, I would appreciate the Fire Victim Trust's support of these efforts. Given that the hearing is set for Monday January 10th, time is of the essence to advance the interests of PG&E victims in this case.

It is clear that the probation violations of PG&E (Kincade Fire, Zogg Fire, Dixie Fire, etc.) have caused harms to victims that were not contemplated by the bankruptcy settlement yet substantially limit our ability to monetize the stock and recover costs associated with the administration of the FVT. Therefore, it is clear that seeking restitution for victims within this court and in keeping with 18 US Code Section 3663 and 3664 is a prudent approach. Your active support would be greatly appreciated. As a Pro Se Amicus Petitioner, I am doing my best to advocate for victim interests but recognize that many of you have the legal expertise that would help support our mutual goals on behalf of victims.

Please, reach out to me directly to schedule a discussion on these critical issues and in support of PG&E victims.

Respectfully,

Will Abrams
(707) 397-5727

Begin forwarded message:

**From:** Will Abrams <end2endconsulting@gmail.com>
**Subject: Motion for Victim Restitution: Case#14-0175 WHA**
**Date:** January 4, 2022 at 10:51:10 AM PST
**To:** ehairston@orrick.com, wbrown@paulweiss.com, ashearer@clarencedyer.com, benjamin.w.snyder@lw.com, bhauck@jenner.com, christopher.carlberg@usdoj.gov, scott.ballenger@lw.com, jonathan.ellis@lw.com, kdyer@clarencedyer.com, korsini@cravath.com, margaret.tough@lw.com, RMehrberg@jenner.com, RSchar@jenner.com, sjaffer@clarencedyer.com, james.tansey@hoganlovells.com, mshepard@kslaw.com, jeffrey.b.schenk@usdoj.gov, ahuang@oaklandcityattorney.com, brett.morris@doj.ca.gov, daisy.liu@caloes.ca.gov, hallie.hoffman@usdoj.gov, hartley.west@dechert.com, Noah.Stern@usdoj.gov, CaseView.ECF@usdoj.gov, philip.guentert@usdoj.gov, philip.kopczynski@usdoj.gov, sgeis@earthjustice.org

To the Service List of Case Number CR 14-0175 WHA:

As a PG&E wildfire survivor, ratepayer and California resident, I filed the attached motion as a Pro Se Amicus Petitioner. Please, see the attached "**WILLIAM B. ABRAMS MOTION FOR LEAVE TO FILE MOTION FOR VICTIM RESTITUTION AS A CONDITION OF PROBATION FOR PACIFIC GAS AND ELECTRIC CORPORATION**" [Dkt. 1551] along with the attached "**MOTION FOR VICTIM RESTITUTION AS A CONDITION OF PROBATION FOR PACIFIC GAS AND ELECTRIC CORPORATION**" (Exhibit A) and associated declaration (Exhibit B) in PDF format.

These documents were filed according to the Court's Pro Se procedures and posted to the docket today January 4, 2021. Please, let me know if you have any difficulties opening the attached documents or have questions about the relief requested for victims and as a result of the harms caused by the PG&E probation violations.

Respectfully submitted,

William B. Abrams
Pro Se Amicus Petitioner
(707) 397-5727



**From:** **Will Abrams** end2endconsulting@gmail.com
**Subject:** Other Trust Implications
**Date:** September 5, 2021 at 5:53 PM
**To:** Molton, David J. , Gerard T. Cicero ████████████, William D. Kissinger



David, Gerard and Bill -

I hope your long weekend is going well. I just wanted to drop you a note as I have been getting increasing amount of concern from victims coming my way regarding the Trust and Trust Administration due to a reaction from certain attorneys to the letter from the Trustee on 9/1. I really do appreciate the letter as it is bringing about some increasing disclosures and assistance that will be helpful. I have already received some letters which should help to provide positive examples for other attorneys. However, others instead of providing disclosures seem to be choosing to provide pointed statements about the trust administration to divert attention from these financial conflicts which led to these issues which is not helpful. Victims are increasingly taking these cues and just want to make sure that the Trustee was tracking on this as I don't want things bubbling up in a direction that will not be helpful for victims and the Trustee's efforts on our behalf. I continue to believe that transparency is the key to making victims and others feel more comfortable with how the Trust administration is progressing and to get our Trust funded to the $13.5B level which was the expectation set by these attorneys.

I do hope that the victim attorneys closest to these matters will engage in the meeting that I have suggested to remedy these issues and/or at least air any differing perspectives to further collaborative solutions. That said, I really want to ensure that the sunlight provides a positive roadmap to support the trust administration.

I am happy to provide more background to whatever extent that would be helpful.

Thanks,

Will



**From:** **Will Abrams** end2endconsulting@gmail.com
**Subject:** 8-K Education Needed
**Date:** July 9, 2021 at 12:03 PM
**To:** Molton, David J. ████████████ Cicero, Gerard T. ████████████

David and Gerard -

For what it is worth, I think there really needs to be some education around the implications of this to victims. The risks/benefits could be sent to victims in a one-page document so they understand the implications. Of course, I believe these tax implications should have been worked out prior to the Trust Agreement being executed and prior to the victim vote but given the current state, I think understanding these implications are really an imperative for victims. I understand that the Trust has taken the position that the tax savings/benefits outweigh the risks of holding the stock through wildfire season given my reading between the lines of the 8-K as a non-CFA but it would be great for the Trust and Trustee to share the work of their financial analysts that led to this direction.

https://d18rn0p25nwr6d.cloudfront.net/CIK-0001004980/eb5041d3-6e83-4239-b06a-73db5caa5989.pdf

I hope this perspective is helpful.

Thanks,

Will



David and Gerard -

I hope you both had a great 4th of July weekend. I am just following up to see if we are able to identify a time slot that would work for Justice Trotter to meet on the issues we discussed on our last call. Please, let me know as it would be great to get this on the calendar at his convenience.

Thanks,

Will

On Jul 2, 2021, at 5:49 AM, Cicero, Gerard T. < ███████████ > wrote:

Good morning Will,

I am following-up on an agenda for this afternoon's call. I've conferred with David, ideally, the goal of the call is to identify items that you want to raise with Justice Trotter on a future call (to be set up for next week or thereafter.

- We should discuss the recent email from Judge Montali's chambers' re-motion practice;
- We'd ask that you assist us identifying the few or half a dozen concerns you have that you would like to discuss with Judge Montali:
  - Potential conflicts of interest
  - Actions or inactions by the Trust in connection with PG&E/CPUC
  - Timeliness of Payments, Equity and Judicial Review
  - Other.

If we could cover the item or two that it would be helpful for Bill Kissinger (CPUC related) to be on for first, that would be helpful and then we can allow him to drop.

Thank you,
Gerard

<image001.jpg>

**Gerard T. Cicero**

Brown Rudnick LLP
Seven Times Square
███████████

Please consider the environment before printing this e-mail

********************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

********************************************************************



David and Gerard -

I hope you both had a good week. I very much appreciated our dialogue last week regarding Trust reporting and financial accountability. At the end of our discussion, you had indicated that you get back to me regarding the Trustee's willingness to provide additional reporting detail and transparency regarding the expenses and associated activities of the Fire Victim Trust. Please, let me know if you have come to any decisions around these issues. I appreciate your consideration of my proposed remedies.

Thanks,

Will

> On May 8, 2022, at 6:30 PM, William Abrams <willabrams@gmail.com> wrote:

Justice Trotter and Fire Victim Trust Counsel -

As you know, I have appreciated your work on behalf of victims despite the ill-formed structure of the Fire Victim Trust. Trust managers and administrators are in the unenviable position to make the best out of a poorly designed Trust. Unfortunately and despite these efforts, the designed dysfunction of the Fire Victim Trust continues to further the interests of the Debtor and their investors over the interests of victims. In an effort to remedy these issues and support your work on behalf of victims, I have sought to shed light on the financial conflicts that led to these injustices. In prior discussions, I have appealed to you directly for support but instead of intervening on behalf of victims, Trust representatives have chosen to defer these responsibilities to other parties and sought advise and direction from the Trust Oversight Committee (TOC).

As evidenced by recent lobbying and other activities directed by the TOC, it should be clear that a complete overhaul of the Trust Oversight Committee is needed but to date the Trustee has not taken any of these types of actions that would restore a sense of fairness and justice for victims. Indeed, recent Trust hiring practices and ill-positioned PR announcements have only served to provide cover for certain TOC members as opposed to providing a balanced view that would give victims a full picture of Trust shortfalls. I have supported efforts through the California Legislature, district courts and elsewhere that would serve to remedy the $13.5B promise to victims and to hold PG&E to account for their over-inflated stock valuation. However, some of these efforts and those initiated by the Trustee have been undermined by certain parties who claim to represent the interests of victims but have instead concerned themselves with working to make sure light does not shine on how they worked to structure the Trust in a manner contrary to the interests of victims.

This is why the recent annual report submitted by the Trust [Dkt. 12287] is so concerning to me and other victims. Instead of using this as a tool to provide transparency regarding FVT costs and to restore confidence in the Trust administration, it provides an insufficient 7-line financial statement with zero detail that would allow a victim to understand how the Trust is being managed on their behalf. Despite my expressed concerns many months ago regarding TOC recommended lobbyists and other matters, this $1.5B loan has been sought without any disclosed terms. I should hope that you are aware of the connections between these lobbying efforts and certain financial ties from interested parties with adverse interests to those of victims in this case. Despite these issues, it seems that the Trust is looking to provide less transparency leaving victims with little information to understand how the Trust operates on their behalf. I know it is not your intent but please consider how the recent annual report only serves to hide important details from victims and undermines well overdue Trust administration transparency. Here are a couple examples of trust annual reports that demonstrate the type of detail that should be put forward to victims within this case:

http://abblummustrust.org/assets/documents/ABB-Lummus-Trust-Annual-Report-and-Financial-Statements_2020_service-copy.pdf

https://www.presidio.gov/presidio-trust/planning-internal/Shared%20Documents/Annual%20Reports/EXD-700-FY2021PerfAccRpt.pdf

Note that the first document (Asbestos PI Trust Annual Report) identifies the expenses for the Trust Advisory Committee ("TAC") and other Trust contractors. This is the type of detail that should be within the FVT annual report but has been withheld from view. I urge the Trust to revise and reissue the annual report with this type of detail so that victims can regain confidence in how the funds that they rely upon to rebuild their homes and their lives are being managed and administered. I would welcome an opportunity to discuss these issues with you and/or members of the TOC directly to provide added background and collaborate on remedies. My only interest through this email and through my other related engagements is to provide support for your efforts on behalf of victims. Thank you for your consideration of these critical matters.

Respectfully submitted,

Will Abrams
(707) 397-5727

**From:** **Will Abrams** end2endconsulting@gmail.com
**Subject:** FVT Next Steps given J. Alsup's Comments
**Date:** January 23, 2022 at 1:48 PM
**To:** Molton, David J. ███████████████ Gerard T. Cicero ████████████████ William D. Kissinger
william.kissinger ███████████ jtrotter ████

Justice Trotter, David, Gerard and Bill -

Although my motion for victim restitution was denied, I was glad to hear the statements from Judge Alsup regarding the ongoing harms to victims while calling the Trust a "bad deal" and highlighting some of the trust's administrative challenges. This was followed up with his "final comments" calling out how victims have been continually harmed by PG&E due to these probation violations and their ongoing criminal recidivism. All of these comments on behalf of victims are very helpful which I have highlighting as calls-for-action including actions in support of the FVT.

Following these comments, I have been engaging with some legislators at the state and federal-level to help support interventions to ensure what was sold to victims as $13.5B is realized. I have been advocating for a state or corporate stock buy-back and other creative solutions to get this done on behalf of victims. While myself and other victims are advocating in a very public way for these types of remedies, I continue to be concerned about the relative silence of the Fire Victim Trust, TOC and the Trustee on these very important matters.

In a continuing effort to encourage FVT representatives to engage in a public way to highlight the plight of victims waiting for their just settlements, I would suggest that we work collaboratively around these issues. Here are some suggestions as to how we can work to move the ball forward in a mutual way on behalf of victims:

- **Public Hearing** - There are a number of state legislators that would be in support of our efforts on behalf of the constituents within their districts. I am sure if we held a public hearing in Sacramento around these issues it would help put pressure on remedies especially given that will expect the stock price to drop as soon as the FVT announces the intention to sell stock.
- **Joint Press Release** - There are a number of victim/public advocacy organizations that would join us in calling for support for the Fire Victim Trust. I work with many of these organizations through my engagement with the CPUC and within other areas. If we put together a general statement that highlighted the concerns of the FVT and called for remedies, I am sure we could have a broad coalition of support.
- **PG&E Engagement** - I am confident that PG&E would like to support remedies for the Fire Victim Trust if we provide them with ways to make this a win-win. There are ways that PG&E could engage that would be very beneficial to their interests in demonstrating a commitment to a changed corporate culture while supporting our interests in more expedited ways to make victims whole and public interests in promoting safe and reliable utility services.

Of course, I would much prefer that we were collaborating on all these fronts alongside other stakeholders as I think that type of collaboration is in the best interests of victims. Please, let me know if you are open to pursuing these remedies. I would be happy to facilitate, coordinate and drive these initiatives and/or just play a supportive role while the FVT leads on any of these initiatives. Thank you for your continued efforts on behalf of victims.

Thanks again,

Will Abrams
(707) 397-5727

From: **Will Abrams** end2endconsulting@gmail.com 📎
Subject: Meeting Request: Motion for Victim Restitution: Case#14-0175 WHA
Date: January 4, 2022 at 11:22 AM
To: Molton, David J. ████████ William D. Kissinger ████████ Gerard T. Cicero
████ Amy Bach ████ Steven Skikos
████ ████ fritze mkelly scampora ████
SSieger-Grimm ████ robins geraldsingletonlaw ████
ecabraser Amanda Riddle ████

Justice Trotter, Counsel to the Fire Victim Trust and Members of the Trust Oversight Committee -

I have upcoming meetings regarding this motion with various stakeholders to help support restitution for victims given these PG&E probation violations. Of course, I would appreciate the Fire Victim Trust's support of these efforts. Given that the hearing is set for Monday January 10th, time is of the essence to advance the interests of PG&E victims in this case.

It is clear that the probation violations of PG&E (Kincade Fire, Zogg Fire, Dixie Fire, etc.) have caused harms to victims that were not contemplated by the bankruptcy settlement yet substantially limit our ability to monetize the stock and recover costs associated with the administration of the FVT. Therefore, it is clear that seeking restitution for victims within this court and in keeping with 18 US Code Section 3663 and 3664 is a prudent approach. Your active support would be greatly appreciated. As a Pro Se Amicus Petitioner, I am doing my best to advocate for victim interests but recognize that many of you have the legal expertise that would help support our mutual goals on behalf of victims.

Please, reach out to me directly to schedule a discussion on these critical issues and in support of PG&E victims.

Respectfully,

Will Abrams
(707) 397-5727

> Begin forwarded message:
>
> **From:** Will Abrams <end2endconsulting@gmail.com>
> **Subject: Motion for Victim Restitution: Case#14-0175 WHA**
> **Date:** January 4, 2022 at 10:51:10 AM PST
> **To:** ehairston@orrick.com, wbrown@paulweiss.com, ashearer@clarencedyer.com, benjamin.w.snyder@lw.com, bhauck@jenner.com, christopher.carlberg@usdoj.gov, scott.ballenger@lw.com, jonathan.ellis@lw.com, kdyer@clarencedyer.com, korsini@cravath.com, margaret.tough@lw.com, RMehrberg@jenner.com, RSchar@jenner.com, sjaffer@clarencedyer.com, james.tansey@hoganlovells.com, mshepard@kslaw.com, jeffrey.b.schenk@usdoj.gov, ahuang@oaklandcityattorney.org, brett.morris@doj.ca.gov, daisy.liu@caloes.ca.gov, hallie.hoffman@usdoj.gov, hartley.west@dechert.com, Noah.Stern@usdoj.gov, CaseView.ECF@usdoj.gov, philip.guentert@usdoj.gov, philip.kopczynski@usdoj.gov, sgeis@earthjustice.org
>
> To the Service List of Case Number CR 14-0175 WHA:
>
> As a PG&E wildfire survivor, ratepayer and California resident, I filed the attached motion as a Pro Se Amicus Petitioner. Please, see the attached "**WILLIAM B. ABRAMS MOTION FOR LEAVE TO FILE MOTION FOR VICTIM RESTITUTION AS A CONDITION OF PROBATION FOR PACIFIC GAS AND ELECTRIC CORPORATION**" [Dkt. 1551] along with the attached "**MOTION FOR VICTIM RESTITUTION AS A CONDITION OF PROBATION FOR PACIFIC GAS AND ELECTRIC CORPORATION**" (Exhibit A) and associated declaration (Exhibit B) in PDF format.
>
> These documents were filed according to the Court's Pro Se procedures and posted to the docket today January 4, 2021. Please, let me know if you have any difficulties opening the attached documents or have questions about the relief requested for victims and as a result of the harms caused by the PG&E probation violations.
>
> Respectfully submitted,
>
> William B. Abrams
> Pro Se Amicus Petitioner
> (707) 397-5727


PDF



**From:** Will Abrams end2endconsulting@gmail.com
**Subject:** Re: Motion for Just Victim Settlements
**Date:** December 6, 2021 at 9:24 AM
**To:** Cicero, Gerard T. ██████████
**Cc:** Molton, David J. ███████████    William D. Kissinger ████████████

Thank you!

On Dec 6, 2021, at 9:23 AM, Cicero, Gerard T. < ██████████████ > wrote:

Will,

We are in receipt of your papers and will be discussing them internally.

<image001.jpg>

**Gerard T. Cicero**

Brown Rudnick LLP



Please consider the environment before printing this e-mail

**From:** Will Abrams <end2endconsulting@gmail.com>
**Sent:** Monday, December 6, 2021 12:09 PM
**To:** Molton, David J. ██████████████████ Cicero, Gerard T. < ████████████ >; William D. Kissinger < ████████ >
**Subject:** Motion for Just Victim Settlements

---

| CAUTION: External E-mail. Use caution accessing links or attachments. |
| --- |

---

David, Gerard and Bill -

I just thought I would follow up to see if you would be open to chat here over the next couple of days. I think we have a window of opportunity here to advance victim interests and hoping we can talk about this. I think we could file and potentially promote a "condition of probation" that includes how PG&E will support fully funding the fire victim trust. This would be a motion within Alsup's court along the lines of "Motion to Support Just Settlements for PG&E Victims as a Condition of Probation". This would include a list of all of the actions that we would look for from PG&E to ensure the trust is fully funded. Of course, I would also be looking at those items that would push PG&E to become a safe utility but I think the Trust focusing on supporting just settlements would be a good path.

Please, let me know if you are open to discuss how to frame this effort.

Thanks!

Thanks,

Will

> On Dec 3, 2021, at 11:30 AM, Will Abrams
> <end2endconsulting@gmail.com> wrote:
>
> David, Gerard and Bill -
>
> I hope you all had a great Thanksgiving. I wanted to forward you the attached motions and associated brief that I filed in Judge Alsup's Court to "Strengthen the Conditions of Probation" for PG&E. Please, let me know if you have any questions about these documents or my associated recommendations.
>
> I am doing my best as a Pro Se Petitioner to advance the interests of victims to be justly treated while supporting PG&E to become a safe utility so more victims are not before our courts. That said, I certainly appreciate your expertise around these issues and would welcome guidance and support from you and Justice Trotter in these matters of mutual concern.
>
> Sincerely,
>
> Will Abrams
> (707) 397-5727
>
>
> Begin forwarded message:
>
> **From:** Will Abrams <end2endconsulting@gmail.com>
> **Subject: Motion for Leave to Strengthen Probation Conditions: Case# CR 14-0175 WHA**
> **Date:** December 3, 2021 at 11:13:51 AM PST
> **To:** ehairston@orrick.com, wbrown@paulweiss.com, ashearer@clarencedyer.com, benjamin.w.snyder@lw.com, bhauck@jenner.com, christopher.carlberg@usdoj.gov, scott.ballenger@lw.com, jonathan.ellis@lw.com, kdyer@clarencedyer.com, korsini@cravath.com, margaret.tough@lw.com, RMehrberg@jenner.com, RSchar@jenner.com, sjaffer@clarencedyer.com, james.tansey@hoganlovells.com, mshepard@kslaw.com, jeffrey.b.schenk@usdoj.gov, ahuang@oaklandcityattorney.org, brett.morris@doj.ca.gov, daisy.liu@caloes.ca.gov, hallie.hoffman@usdoj.gov, hartley.west@dechert.com, Noah.Stern@usdoj.gov, CaseView.ECF@usdoj.gov, philip.guentert@usdoj.gov, philip.kopczynski@usdoj.gov, sgeis@earthjustice.org

To the Service List of Case Number CR 14-0175 WHA:
As a PG&E wildfire survivor, ratepayer and California resident, I
filed the attached motion and associated brief as a Pro Se Amicus
Petitioner. Please, see the attached "*William B. Abrams Motion for
Leave to File Motion to Request Hearing to Strengthen the
Conditions of Probation for Pacific Gas and Electric
Corporation*" [Dkt. 1527] along with the attached "*Motion to
Request Hearing to Strengthen the Conditions of Probation for
Pacific Gas and Electric Corporation*" (Exhibit A) and associated
declaration (Exhibit B) in PDF format. Additionally, please find
the attached "*Amicus Brief to Strengthen the Conditions of
Probation for Pacific Gas and Electric Corporation*" [Dkt. 1521].
These documents were filed according to the Court's Pro Se
procedures on November 17, 2021 and November 29, 2021.
Please, let me know if you have any difficulties opening the
attached documents or have questions about the substance of the
motions and associated brief.

Respectfully submitted,

William B. Abrams
Pro Se Amicus Petitioner
(707) 397-5727

&lt;Abrams Motion Leave 11.29.21 CR14-0175.pdf&gt;
&lt;Abrams Motion Leave CR14-0175 11.11.2021.pdf&gt;

*****************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law,
and is intended only for the use of the individual or entity named above. If the recipient of this message is not the
above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this
communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick
LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately
without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General
Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this
and other communications between us, please see our privacy statement and summary here which sets out details
of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate
interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it
outside the European Economic Area.

*****************************************************************

**From:** **Will Abrams** end2endconsulting@gmail.com
**Subject:** Dixie Fire Implications/Restitution Hearing
**Date:** January 5, 2022 at 3:11 PM
**To:** Molton, David J.  Gerard T. Cicero █████████████ William D. Kissinger
william.kissinger██████████ Susan Sieger-Grimm █████████



David, Gerard, Bill and Susan -

After our discussion this morning, I had another thought in terms of a tactic the Fire Victim Trust could take to advance the interests of victims in this case. It seems clear to me from a read of 18 U.S. Code § 3664 and readings around the applicability of that law that a "restitution hearing" is required when requested by victims to assess and "calculate" damages and harms from the probation violations.

At a minimum, I would think that the FVT could put forward a motion for the restitution hearing. This would at least give the Fire Victim Trust and other victim advocates more time to develop their arguments and to justify restitution on behalf of victims. This time period might also elicit support from other stakeholders Justice Trotter is reliant upon such as from legislators, Governor's Office and even perhaps PG&E to support restitution.

Missing this opportunity and just hoping that some other stakeholder will willingly come to rescue the shortfall of the FVT is just not prudent. Moreover, relying on the stock to hold its head up after the FVT announces they are selling is also not a great approach in my view. I know Justice Trotter advocates for remedies and that other stakeholders "talk" about their support for victims. However, I feel that unless we frame the issues in a public and transparent way that actions will not follow those commitments.

Please, let me know if there is anything I can do to support your ongoing deliberations around these issues. I am having some conversations with other stakeholders and we might be able to triangulate with some of this if the FVT would be willing to engage in those types of joint discussions.

Thanks,

Will Abrams
(707) 397-5727



David, Gerard and Bill -

I very much appreciated the discussion on Wednesday. Also, please pass along my appreciation to Justice Trotter for the letter he sent out yesterday. His effort to highlight these issues and the difficult position of victims regarding the monetization of the Trust is key to making victims whole. I did want to point out that his reference to the WSJ article quote is really only a small piece of what has transpired. There is much more in the public record regarding the implications of the undisclosed financing that led to those negotiations and the push for a "yes" vote before the registration rights agreement was signed. It is my hope that the many honest attorneys in this case working diligently on behalf of victims will come forward despite the non-disclosure terms that were designed to silence their voices.

I had hoped that this could be an open dialogue among interested parties to address and remedy these conflicts of interest. If there is not a willingness among these parties (TOC, TCC, Fire Claimant Professionals) to discuss these issues, I would welcome the opportunity to share that context with you and Judge Trotter at your earliest convenience. There is other facts beyond those that I shared in our earlier meeting and my motions that are key to understanding these issues. Of course, I had hoped to leverage these points in my arguments before Judge Montali but he appears unwilling or unable to grant me a hearing. As you know, I am doing my best as a non-attorney to navigate these difficult waters and make sure that the right parties are engaged and aware of the facts that led to Trust impediments. In this way, I hope that I can step away and let the experienced leaders like Justice Trotter and the Attorney General remedy these issues. As more facts come out, I would really appreciate direction regarding who is in the best position to address these issues. It is only because other parties who are aware of the conflicts of interest within the case are under non-disclosure agreements, that I feel compelled to engage. Thank you very much for your continued work on behalf of victims in this case.

Thanks Again,

Will

> On Aug 27, 2021, at 3:22 PM, end2endconsulting@gmail.com wrote:
>
> Thanks Gerard. Any status of the meeting schedule after your conversation with Judge Trotter? Please, let me know as I plan my next steps.
>
> Thanks Again,
>
> Will
>
>> On Aug 26, 2021, at 8:37 AM, Cicero, Gerard T. <GCicero@brownrudnick.com> wrote:
>>
>> Thanks again Will for your email. We will be raising this with the judge today and will follow up.
>>
>> <image001.jpg>
>>
>> **Gerard T. Cicero**

www.brownrudnick.com

Please consider the environment before printing this e-mail

**From:** Will Abrams <end2endconsulting@gmail.com>
**Sent:** Wednesday, August 25, 2021 4:59 PM
**To:** Molton, David J. ███████████████████; Cicero, Gerard T.
<████████████████████>
**Cc:** William D. Kissinger <████████████████████>
**Subject:** Disclosure Letters and Follow Up

CAUTION: External E-mail. Use caution accessing links or attachments.

David and Gerard -

I know you were unable to meet with me last week but still hoping we can touch base when you have a few minutes. Since we last spoke, I sent letters to the members of the committees (TOC, TCC, Fire Claimant Professionals) asking that they disclose ties to PG&E investors according to the California Bar's Rules of Professional Conduct given that they represent all victims and have fiduciary duty to victims like me (see wording below). I asked that they respond within 2 weeks. Since, these letters were sent, I have received an indication that some attorneys would like to meet and look for remedies. As Trustee counsel, you are in a unique position to help facilitate this discussion with the interested parties. I am really open to honest dialogue on how to respond and really respect the position of all parties in this case. Please, let me know as I am really looking to resolve these issues in a timely manner as they are central to how we will be able to move forward. Of course, I would welcome your expert advice and guidance on how best to facilitate the discussions and remedy these issues.

Thanks,

Will Abrams
(707) 397-5727

**Sample text from letters...**

As a member of the Victim Trust Oversight Committee and/or Official Member of the Tort Claimant Committee and/or Official Consenting Fire Claimant Professional in the Pacific Gas and Electric Corporation ("**PG&E**") US Bankruptcy Proceeding (Case#19-30088-DM), you and your firm represent victims of the PG&E fires including myself. Through your engagement, you have represented all victims in negotiations, settlements and/or to ensure just claims resolution. Throughout this case, many victims have been increasingly concerned that a growing number of actions taken by certain victim attorneys in this case have been in conflict with their interests and more closely aligned with the interests of certain PG&E investors. These actions include but are not limited to the following:

· Turning away from an all-cash proposal for victims' claims resolution and instead initiating and negotiating a risky stock-inclusive settlement designed to delay just settlements;

- Withholding the status of the registration rights agreement and other key pieces of information that should have been included within voting information and written disclosures prior to the victim vote on the plan;

- Over-valuing the victim stock and dismissing rational financial valuation formulas in an effort to misinform victims;

- Undermining California AB1054 and other legislation to trade away safety and financial security for victims in order to enable future litigation favorable to victim attorneys through "shadow lobbying" efforts;

- Leveraging the victim stock to shield institutional investors from increasing wildfire liabilities;

- And establishing a trust administration framework to slow the monetization of the victim stock and to slow the claims administration process.

Due to these and other material issues regarding the representation of victims in this case, I am requesting that you provide written disclosures according to the California Bar Associations Rules of Professional Conduct which state the following:

> **Rule 1.7(b):** *A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, **or by the lawyer's own interests.***

Additionally, because there was a widely reported cash offer from PG&E bondholders with terms and conditions of the offer undisclosed to victims, I am now asking that you and your firm disclose any written offers by any party intending to settle with victim claimants that you received during the course of the case. This requested disclosure is in accordance with the California Bar Associations Rules of Professional Conduct which state the following:

> **Rule 1.4.1(a):** *A lawyer shall promptly communicate to the lawyer's client:*
> *(2) all amounts, terms, and conditions of any written offer of settlement made to the client in all other matters.*

> **Rule 1.8.6:** *A lawyer shall not enter into an agreement for, charge, or accept compensation for representing a client from one other than the client unless:*

> **(a)** *there is no interference with the lawyer's independent professional judgment or with the lawyer-client relationship;*

> **(c)** *the lawyer obtains the client's informed written consent*

Please, ensure that these disclosures include any and all financing received by you or your firm from any investor with interest in Pacific Gas and Electric Corporation directly or indirectly through lines of credit, litigation financing, personal or professional loans or in any other manner. This should include disclosing the terms of that financing so that victims can reasonably assess the degree to which financing terms are in conflict with the interests of victims. Please, consider the following partial list of institutional investors in PG&E with adverse interests in the case that should be included within your disclosures:

*The Royal Bank of Canada, Jones Day, Centerbridge Partners LP, Knighthead Capital*

Management LLC, Apollo Management Holdings LP, Elliott Management Corporation, Abrams Capital Management LP, Variable Insurance Products Fund IV, GoldenTree Asset Management LP, Appaloosa LP, Soros Fund Management LLC, D. E. Shaw Investment Management, L.L.C., D.E. Shaw and Co., Baupost Limited Partnership, Baupost Group LLC, HB Institutional Partnership, Riva Capital Partners V, LP, Whitecrest Partners, LP, HBK Master Fund L.P., MeadowFin, L.L.C., Paulson & Co. Inc., Redwood Drawdown Master Fund II, L.P., Redwood Master Fund, Ltd., MFN Partners, LP, Anchorage Capital Master Offshore, Ltd., Attestor Value Master Fund LP, Monarch Alternative Capital LP, Steelmill Master Fund LP, Silver Point Capital, L.P., Stonehill Capital Management, LLC, First Pacific Advisors, LP, Redwood IV Finance 1, LLC, TAO Finance 1, LLC, York Capital Management Global Advisors, LLC, Blackstone Alternative Investment Funds plc, Blackstone Alternative Multi Strategy Sub Fund IV, LLC, Caspian Focused Opportunities Fund, L.P., Caspian HLSC1, LLC, Caspian SC Holdings, L.P., Caspian Select Credit Master Fund, Ltd., Caspian Solitude Master Fund, L.P., Super Caspian Cayman Fund Limited, Steadfast Capital, L.P., American Steadfast, L.P., Steadfast International Master Fund Ltd., ValueAct Capital Management, L.P., BlueMountain Summit Trading L.P., Brigade Capital Management, LP, Columbus Hill Capital Management, L.P. 683 Capital Partners, LP, Bain Capital Distressed and Special Situations 2016 (A), L.P., Bain Capital Distressed and Special Situations 2016 (B Master), L.P., Bain Capital Distressed and Special Situations 2016 (F), L.P., Bain Capital Distressed and Special Situations 2016 (EU Master), L.P., Bain Capital Distressed and Special Situations 2019 (B Master), L.P., Empyrean Investments, LLC, Blackbird Bay I LLC, Blackbird Bay II LLC, Governors Lane Master Fund LP, Owl Creek I, L.P., Owl Creek II, L.P., Owl Creek Overseas Master Fund, Ltd., Owl Creek SRI Master Fund, Ltd., Owl Creek Credit Opportunities Master Fund, L.P., AG Super Fund Master, L.P., AG Cataloochee, L.P., AG MM, L.P., AG Corporate Credit Opportunities Fund, L.P., Newtyn Partners, LP, Newtyn TE Partners, LP, Serengeti Asset Management, LP, Nut Tree Master Fund, LP, KLS Diversified Asset Management LLC, Glendon Capital Management L.P., Rubric Capital Management LP, Latigo Partners, LP, 2014 Alan Shamah Discretionary Trust, AE 2015 Grantor CLAT, DG Value Partners II Master Fund, LP, DG Value Partners, LP, Titan Equity Group, LLC, CSS, LLC, Incline Global Management LLC, Lightstone Parent LLC, Route One Investment Company, L.P., Whitefort Capital Master Fund, LP, Zoe Partners, LP, Jefferies LLC, The Vanguard Group, Inc., Fidelity Management and Research Company, Third Point LLC, Capital Research and Management Company, BlackRock Fund Advisors, Zimmer Partners LP, MFS Investment Management, T. Rowe Price Associates, Inc., Sixth Street Advisers LLC, SSgA Funds Management, Inc., Cyrus Capital Partners LP, Pacific Investment Management Company

I appreciate your attention to this critical matter. Please, provide a written response within two weeks and feel free to reach out to me directly if you have questions or need any clarifications regarding this request. It is my sincere hope that attorneys in this case will disclose any and all financial conflicts in a forthright manner and with an understanding that these disclosures are not just required by law but are also critically important to the integrity of the judicial processes within this case designed to ensure fairness and equitable treatment under the law.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.



# California Public Utilities Commission Proceeding
# Public Comments

| | |
|---|---|
| **Proceeding Number:** | A2109008 |
| **Filed Date:** | 16-SEP-21 |
| **Status:** | Active |
| **Filer Name List:** | Pacific Gas and Electric Company |
| **Description:** | Application of Pacific Gas and Electric Company for Recovery of Recorded Expenditures Related to Wildfire Mitigation, Catastrophic Events, and Other Recorded Costs. (U39M) |
| **Assignment List:** | ALJ: Amin Nojan (Assigned Sep 24, 2021) COMMISSIONER: Alice Reynolds (Assigned May 10, 2022) |

**Total Comments:** 70

---

**Cheryl Maynard**          **Paradise , CA**    **95969**

This needs to stop! PG&E is nothing more than a KILLING MACHINE backed by the state of California! In 2014, the CEOs of PG&E emailed back and forth regarding the corroded "C"rings that caused the Campfire. They're greed is beyond comprehension. They must sit in their boardroom and plan how many deaths they can get away with per fire!! More than 85 people were killed in Paradise, California. And yet PG&E is allowed to continue burning down California! Loss of property and lives and the way of life have been destroyed throughout the state!

PG&E executives and top directors are disgustingly overpaid. All PG&E fire survivors should be exempt for life from utility bills. Some survivors are still living in third world conditions. This is ridiculous. Where is PG&E? They threw some small change in a settlement fund and washed their hands of their responsibilities. Filing bankruptcy was an easy way out for them!

They can lower the wages of their top employees instead of raising the rates on the people's lives that they have destroyed. ABSOLUTELY NO ON A RATE RAISE TO A COMPANY THAT'S IRRESPONSIBLE!        SAFETY BEFORE GREED!

Sep 20, 2022 9:42 am

---



**Ann & Chris Suboreau**                  Santa Rosa, CA      95402

Hello. My family and I are survivors of the 2017 Tubbs Fire, in which most of our entire neighborhood of Coffey Park was incinerated and some of our neighbors were lost. We personally lost everything we owned.

We are supposed to receive compensation from PG&E in the form of payment from the Fire Victims Trust to help us recover from the losses we sustained. We are told, however, that due to the way that deal was set up, we may never receive the full amount we were awarded.

We feel strongly that PG&E is not entitled to continue to raise rates for their customers, us included, to pay for either the 20+ years of deferred maintenance that has resulted in their equipment causing massive wildfires year upon year, or to pay for the fund they are now required to maintain to compensate the victims of those ongoing fires. Enough is enough.

Thank you for your time and consideration.

Aug 07, 2022 4:19 pm

---

**Jim Brown**                      Oroville, CA      95965

So PGE is requesting yet another rate hike to pay off various debts and legal fees? Well isn't that "grand" (like my monthly energy bill)! I've got a better idea?how about keeping PGE's dividends suspended so they can use the earnings to pay their deficits instead of raising rates ... AGAIN. If they had put their dividend payments (~$9 billion) back into infrastructure between 2005 and 2017, there's a good chance many of their neglectful fires would have been prevented. As a Camp Fire survivor, I implore you to stop supporting the PGE Wall Street cash cow with our hard earned money.

Aug 07, 2022 11:07 am

---

**Alison Lane**                      Santa Rosa , CA      95403

It is extremely frustrating to see PG&E asking for rate hikes when many of the survivors of a fire caused by their negligence, are still suffering and waiting for compensation.  It's insulting for them to ask all of us to pay for their lack of responsibility.

Aug 05, 2022 10:27 am

---

**Monica Brinkman**                      Magalia, CA      95954

PG&E should not be charging fire survivors for their failure and liability. They aren't even honoring the entire claims of the survivors. We've paid enough. They already hiked their prices to cover this. Do not allow such atrocities to happen. How about making the fire survivors whole first. You do not give money to those who were negligent out of greed.

Aug 05, 2022 3:43 am



**Kevin Poe**         **Paradise, CA**    **95969**

PGE is literally kicking the masses out of CA!! Stop them, hold them accountable for the thousands of lives they have ruined and the thousands more they have yet to ruin. Fire victims aren't made whole out of no fault of their own but PGE wants to be made whole over their negligence? No!

Aug 04, 2022 5:14 pm

---

**Sasha Poe**         **Paradise, CA**    **95969**

This is infuriating! We are PGE fire victims and HAVEN'T been made whole!! PGE thinks they have the right to rape and pillage CA for their negligence again. PGE is turning CA into a third world corrupt autocracy.

Aug 04, 2022 5:06 pm

---

**Karla Swanson**         **Loomis, CA**    **95650**

I am writing to urge you to deny PG&E's request for a rate hike. It is no coincidence that these hikes are coming right after the rulings on their culpability for starting recent fires. They have to pay out on claims so they are raising their rates. How is that allowed?? Also, consumers are facing many financial challenges right now, inflation, high auto gas rates, etc. raising rates would cause a hardship for most of us. Additionally, many people are still working from home so we have to run the AC during the day when we used to be at work and not have to keep the home temperature tolerable during normal work hours. We have no choice in who our energy provider is, we are forced to use PG&E so we cannot simply stop being their customer. Who is there to protect the public from this?

Jun 21, 2022 10:21 am

---

**Jonathon Lee**         **Fresno, CA**    **93704**

Rather than an increase PGE should be forbidden from recording a profit until all deferred maintenance and wildfire mitigation is caught up. rate payers have already paid PGE more than costs for decades and PGE has pocketed that money instead of keep their systems maintained. If they can't maintain the system when they already charge one of the highest amounts per kwh in the country they should be dismantled and replaced with something like the TVA.

Mar 01, 2022 12:33 pm

---

**Cynthia Franks**         **Richmond, CA**    **94803**

I am opposed to this rate increase. PG&E needs to stop increasing rates to cover for their mismanagement of resources. Rate payers should not have to pay for $1.6 billion in costs PG&E claims it has lost, especially after already having undergone bankruptcy proceedings to bail out their last failures.

Jan 08, 2022 12:14 pm


**David Wood**            **Quincy, CA    95971**

I am opposed to the requested rate increase. The wildfires are due to poor planning, management and operation by PG&E, and the costs should be borne by PG&E shareholders, not customers. In the longer term, after PG&E compensates wildfire victims, PG&E should no longer be run as a profit-making enterprise, but for public service, and rates should be based on actual cost of operations, not on a guarantee of profits to shareholders.

Dec 19, 2021 6:03 pm

---

**No. I am not in agreement with your application to B**      **Santa Rosa , CA    95403**

No. I am not in agreement with your application to raise rates. It is not our fault for your miss management of lines and equipment. This burden is yours and your failure not the customers ?.no not agreed with your application to increase. No more every month is a new application for a raises make it stop. Please

Nov 13, 2021 1:51 pm

---

**John Campbell**          **BENICIA, CA    94510**

Application Denied!

The California Wildfires were caused by the non-planning, non-execution, and/or mismanagement of programs, processes, procedures and non-performance of obligated duties required of PG&E over the past 60+ years. PG&E should pay for disregarding and neglecting the health and safety of the citizens of the State of California and the environmental health of the State's wildlife and natural resources. The wildfires were not due to any fault of PG&E's customers. Rather, they were the direct result of inaction and negligence by PG&E's Board of Directors and management.

PG&E's rates should not be raised, but lowered as punishment, the result being regarded as punitive damages owed and payable to their customers.

If the shareholders have a problem with that, they can take it up with PG&E's Board of Directors. Let PG&E pay for their own misdeeds.

Nov 11, 2021 8:30 pm



**ROBERT ENSTEN**            **Windsor, CA**    **95492**

Another PG&E bill containing another request for a rate increase. This time PG&E is asking for an increase of 4.9% to their electric rates to recover $1.6 billion in costs recorded during the period 2015 through 2020. Allegedly, these costs include wildfire mitigation and vegetation management which have been included in previous price increases over the past 20 years. It also includes PSPS planning, a normal and nominal cost of doing business which should be covered by existing income. These are costs already on the books. How many months or years will it take to zero out these debits? Will the rate increase be automatically rescinded when the debits are paid off? Has PG&E asked the US Bureau of Land Management or US Forest Service for any financial aid since the much of PG&E's lines run through their lands? I know it is easiest to ask the CPUC to grant a rate increase, but for so many of us retired folks living on fixed incomes, we can no longer afford the constant increase in our utilities. And it is not just PG&E. It won't be long before we either have to do without utilities somehow, or sell our homes in California an move elsewhere.

Nov 09, 2021 3:42 pm

**Ananda de Silva**            **Concord, CA**    **94518**

As mentioned by many others here, along with every PG&E bill there is a notice about requests to increase rates. We are retired people living on fixed social security payments among others. We cannot afford these increases.
The latest notice says the request is for vegetation management, PSPS, PG&E's response to Covid -19 Pandemic etc. I like to ask you how these should get passed on to us. Majority of the transmission lines are on Federal land and PG&E should ask the Federal Government for funds for that. As for Covid-19 issues, why should the consumers pay for this? Isn't PG&E a business entity that can apply for Federal aid in this? It seems like PG&E is taking the easy way out by passing on these costs to us-the consumers rather than dealing with the government. While all this goes on, the executives at PG&E are being paid high salaries and bonuses that are not effected by Covid or any thing else. Is the consumer the only party who has to pay for all this? How is it that PSPS needs more funding? Shutting off power saves PG&E as they do not provide anything when they do that. So, why charge us extra while not providing power. Is the CPUC working hand-in-glove with PG&E to swindle the consumers?

Nov 08, 2021 8:27 pm



**Cathy Dowing**                    Sanger, CA    93657

Every time I receive a PG&E bill it has a request for an increase in rates. I can think of one time in 2021 when there wasn't one in with the statement. We live on a fixed income and it doesn't go up enough to keep up with increases in our PG&E bill and everything that keeps going up. Like food, fuel, insurance and taxes. We do our best to keep lights off and use the least amount of electricity possible. But it's not enough. Maybe PG&E should try to live like the rest of us. Take care of business and live within their means. They should have been cleaning up around their transmission lines long ago. It's also time for them to be a non profit.

Nov 08, 2021 6:45 pm

---

**Harriet Stevens**                    Rio Dell, CA    95562

PG&E doesn't seem to be able to do anything without asking for more money. No. No. And no. Enough is enough. Any and all expenses from their irresponsibility and negligence is a debt they incurred and therefore should be required to pay without receiving a single cent from customers. And having just received a letter from PG&E dated 10/29/21 that Medical Baseline charges will begin increasing doesn't improve my opinion of them. If they can't manage the business of providing utilities to the public without this kind of mismanagement and customer gouging, then someone else needs to take over.

Nov 08, 2021 3:52 pm

---

**joyce fong**                    sacramento, CA    95822

oppose proposed increase.

Nov 06, 2021 12:35 pm

---

**HOWARD Fong**                    Sacramento, CA    95831

increase opposed

Nov 06, 2021 12:34 pm

---

**Joyce Fong**                    Sacramento, CA    95831

oppose increase

Nov 06, 2021 12:33 pm



**Roger Magyar**                    **Pacific Grove, CA    93950**

re 2021 Wildfire Mitigation and Catastrophic Events Application A.21-09-008

Today I received my PG&E bill, and in it is notice of this application for a rate increase. I accept that there is a need "to recover costs" for years 2015 to 2020. I am registering this complaint that the PG&E notice does not mention HOW LONG the requested increase would remain in effect. If PG&E wants to recover money already spent, at some point in the future a rate increase will have provided sufficient funds to have achieved that objective. Then the rate should decrease. I recommend that you approve PG&E's request for an increase with the condition that the increase will be reduced by 10% because the **?%$!! company did not have the common sense to inform consumers how long the proposed increase would be levied. If the company objects, cut the increase by 50% and allow it to be collected for only seven months.

Nov 03, 2021 2:16 pm

**Barry Susman**                    **Mountain View, CA    94043**

I am against any rate increase. PG&E for decades did not maintain the forest or their equipment. I see no reason why current customers should pay for their negligence. Let the executives pay for it. Make them return 30 years worth of bonuses.

Nov 01, 2021 9:49 pm

**Lance Nolen**                    **Eureka, CA    95503**

Dear CPUC,

Please reject PG&E's proposed rate increases for A.21-09-008. This is about a 5% increase in residential electricity rates. This is simply unaffordable for the vast majority of Californians households during a continued economic downturn for the pandemic.

Also, this application is to handle wildfire mitigation costs, but PG&E is to blame for its mismanagement of wildfire mitigation activities. PG&E only should pay for these costs and not consumers. PG&E can generate money to pay for these costs without raising prices, but cutting pay for CEOs and executives and getting rid of profits.

Regards,
L. Nolen

Oct 31, 2021 11:58 am

**Steven Guiney**                    **Ben Lomond, CA    95005**

Broadly, PG&E shareholders, not PG&E customers, should shoulder the burden of wildfire mitigation costs.

Oct 30, 2021 1:42 pm



**A Cartmell**     Bakersfield, CA     93309

This is not the time for any rate increase what so ever as millions of ordinary Californians try to recover from the economic setbacks from the pandemic.
I strongly oppose any rate increase.

Oct 29, 2021 10:23 am

---

**William Cahill**     Clayton, CA     94517

This application is one of many asking for unwarranted rate increases. This company is a utility that spends millions on marketing (outrageous and they should be barred from any and all marketing). This is a company that enriches the top executives for failure. Yes, the executives are complete failures and should be fired, if not jailed. Please break up this monopoly so consumers are not at their continual mercy. Over the past 3-4 months, I have seen 3-4 rate increase requests. CPUC, please tell us the rates of other nearby states. Oh, that's right, Californians pay some of the highest rates in the US. Incredible and unacceptable. The CPUC needs to say no to anymore increases.

Oct 28, 2021 12:07 pm

---

**Jane Snook**     Los Gatos, CA     95033

I oppose. I do not believe PG&E should be granted rate hikes.

Oct 26, 2021 2:02 pm

---

**Peter Martin**     Santa Rosa, CA     95409

I am very much opposed to the proposed rate increase by PG&E. PG&E has continually turned down offers and opportunities to divest themselves of distribution infrastructure to local agencies over the past few years. The divestiture and sale of these assets could ultimately yield additional capital revenues that would likely offset the need for this increase and could be reinvested in other infrastructure.

PG&E now is proposing to now address long-overdue capital improvements for the same distribution assets they have refused to divest themselves of. PG&E has continually shown they are too large and have been slow to address the known issues related to wildfire over the past decade. Other large energy utilities in our state like SDG&E and SCE have made significant strides on wildfire mitigation measures while PG&E has continued to receive similar revenue with much less progress to show compared to their counterparts. It is shameful, and they have shown that they are not committed to making meaningful progress. Why should the public trust that that will change now?

Oct 26, 2021 11:36 am



**Shirley Carson**        San Rafael, CA    94903

I object and ask CPUC to not authorize yet again another requested increase to our bills without improvement to services or evident accountability of PGE to voluntarily mitigate damage and deaths caused by their negligence. I am appalled at the service and cost of PGE. Many seniors are getting priced out of California with rate increases. And in order to pay our PGE bill, we have to lower our thermostats to a very cold, unhealthy level. Some of us cannot afford to install generators due to cost or location to compensate for the many Public Safety Shutdowns. By authorizing an increase, you are enabling PGE to continue bad behavior and not take responsibility for their lack of action.

Oct 25, 2021 10:52 am

**Karen Wedge**        GRASS VALLEY, CA    95949

I object strongly and ask the CPUC to deny yet another rate increase from P.G. & E! Are you kidding me?! This is the third notice for rate increases they have submitted in the last couple months! One of which was for 18% alone! This is ridiculous and frankly comical! Here's an idea why don't they take some of the billions of dollars they make and update the equipment so we don't have nearly as many fires. Frankly most are caused by their faulty equipment. This needs to stop. Make them accountable and stop rewarding them for their negligence!

Oct 23, 2021 4:23 pm

**JEAN THOMAS**        FRESNO, CA    93722

I do not feel PG&E should raise rates to pay for their accidents- each time PG&E has to pay out of their pockets they in turn pass a rate increase on to the public, this is unfair to all consumers who are struggling as it is to keep the lights. I am sure they can find enough monies between their shareholders and the CEO to cover their costs for years to come, all they need to do is not take a pay raise. Let them figure it, DO NOT ALLOW THEM TO RASIE CONSUMER RATES AGAIN...

Oct 21, 2021 4:49 pm

**Jaima Roberts**        Kensington, CA    94708

I am appalled that the CPUC is considering giving PG&E yet another rate increase. Using wildfire mitigation and catastrophic events as a reason is insulting to all the ratepayers who will then be paying for PG&E's complete lack of responsibility for the wildfires they were responsible for starting. They admitted to YEARS of deferred maintenance on their equipment. Now they want their customers to pay!! If they have enough money to lavish their Executives with outrageous salaries and bonuses and their shareholders with huge profits, they can pay for the cost of doing the mitigation and maintenance that should have been done years ago!!

Oct 18, 2021 4:05 pm



**Machell Petersen**  Dixon, CA  95620

PG&E is a for profit company that is political and it continues to show. PG&E doesn't maintain quality equipment as Californians have seen over the years, their faulty equipment caused many fires that has effective many, many, many California residents. PG&E's mistakes should not be passed along to the consumers. Instead of raising prices that California consumer cannot afford, they should redirect their focus on things that truly matter instead of lining their pockets and their political gains. Too many have already suffered enough thanks to faulty PG&E and their political followers. Maybe instraD of paying off politicians and their spouses maybe PG&E could of used that money to repair their equipment! While many are not back in their houses that were lost during the fires caused by PG&E and winter is coming PG&E has the guts to ask for rate increases, what a shame! They have increased their prices enough! No on increasing prices!

Oct 17, 2021 2:05 pm

**Donna ODell**  Red Bluff, CA  96080

I do not believe PG&E deserves to be awarded the right to raise rates when customers are struggling to make ends meet. especially since the company has raked in huge profits and decided to give themselves more money instead of fixing infrastructure problems and replacing outdated equipment. When the CEO and stockholders rake in millions of dollars compared to families that have to survive on fixed low incomes. It becomes down right hurtful when families have to go without necessities to pay their PG&E bill.
This is not the time to raise rates.

Oct 17, 2021 10:36 am

**David Ostrander**  Gilroy, CA  95020

I recommend CPUC deny PGE's request for a rate increase for it's 2021 Wildfire Mitigation application. I am against customers supplying the funding for mitigation services. If PGE needs additional funding they should seek it from their investors and shareholders. When are we going to see CPUC take a firm stand and hold PGE accountable for it's poor financial and organizational management.

Oct 16, 2021 10:19 am

**Judy B**  Pleasant Hill, CA  94523

Decline current and future requests for rate increases. If they have money for campaign donations; $208,400 for Governor Newsom's 2018 run for governor, to 8 out of 10 California legislature members, $4.4 million in 2019 PG&E has money to operate their company without customer rate hikes. You, PUC, should make this a standard stipulation in your decision making.

Oct 15, 2021 12:18 pm



**Jim Rodgers**  Sonora , CA  95370

You can't be serious. PG&E can't keep the power in the won't, and WON'T keep it in in the summer.
Example: here in Tuolumne County, just for the week of 10/10-10/16/21, we've already had THREE (3) power outages of "unknown cause", not to mention the two major COUNTYWIDE outages earlier this summer, that they've STILL not released the case of.

If you keep buttering their bread for them, then perhaps it's time to defund/dismantle/ 'reimagine' YOUR place in California.
STOP ENABLING THIS INEPT CORPORATION !

Oct 15, 2021 9:01 am

**Mary Ernesto**  Clovis, CA  93619

Currently I have to set my thermostat at wildly uncomfortable temperatures in order to afford my PG&E bill.  So I can expect it to go even higher??  My family members in several other states pay nothing close to what we pay in California.  Please do not allow this rate increase.

Oct 13, 2021 8:02 pm

**Ed Dennis**  Rancho Tehama, CA  96021

Please do not allow this mismanaged corporation to raise their rates again. PG&E customers should not have to pay for their irresponsible behavior. It has already been shown that their shoddily maintained equipment was responsible for the ensuing fires. Do NOT reward them with a rate increase.

Oct 13, 2021 12:21 pm

**Susan Holland**  San Rafael, CA  94903

I stand with all the others who have had enough of PG&E. They have repeatedly come to you for increases ( the two latest ones at $240 million and $1.6 BILLION) and you continually award them what they ask for the sake of profit over customer safety. If you are the "parent" who oversees this "badly misbehaving child", you have become an enabler. Please stop the insanity and deny these requests.

Oct 09, 2021 4:16 pm



**Kristine Childres**  Sonora, CA  95370

I am writing this letter in the hopes that you will listen to what I have to say about PG& G. I have had enough of what they have done. Now they come to you, CPUC, again with their hands out. I can only speak to what I know. Count how many PSPS we have had in the last three years alone. Because of that everyone I know has had to go and get generators as our electricity is not dependable. Sounds like a third world country, doesn't it? The price for a whole house generator is between$2,300-$11,000 before you have an electrician do the instillation. The next level is $1900-$4,000 and a portable is $400. -$1,000. If you can not afford a generator your food will go bad, you will be freezing in the winter and sick in the heat, just to name a few problems.

My husband and I took out a loan for over $25,000 dollars to put in Solar. We are still paying on it. We did this as we could not afford the monthly amounts that PG &E already charged.

Now, we pay the transmission fees to put our extra electricity out on the grid. As we only use 5% of what is generated PG & E is getting 95% to sell to other customers. They are making a profit from our solar so why would we want to pay them more?

They have been totally irresponsible with the profits they have made over the years. They have given money to their stock holders instead of making necessary repairs to their whole system. In the Paradise fires the equipment was almost 100 years old. Every responsible corporation or company knows they must put a percentage aside for maintenance every year. It is evident, PG & E has not done this. It has happened not just because of nature but because they were not prepared nor invested in having new equipment nor keeping what they already have maintained properly.

I ask you not to allow them an increase on those of us who put in solar which was encouraged not only by PG &E but also our state government.

Oct 09, 2021 9:09 am

---

**ERIC WONG**  SAN FRANCISCO, CA  94112

Please deny this application to increase rates, or amend it to exclude residential accounts. Their rates have already been climbing steadily over the years, and this is just excessive.
Thank you.

Oct 04, 2021 7:36 pm

---

**gina moreland**  Kensington, CA  94707

Deny this increase. Funds will just go to investors/stockholders. Instead, tell PG&E to cut its dividends and use the funds to invest in infrastructure and mitigations to prevent power outages, accidents, and PG&E-caused wildfires. The PUC operates like a blank check approving rate increase after rate increase without holding PG&E accountable for delivering measurable outcomes against the ongoing utility failures impacting us consumers. Do your job!

Oct 04, 2021 10:09 am



**Terry Adams**                    La Honda, CA      94020

I reported a 10' long broken tree limb touching two legs of the 12KV line in the woods in front of our house during the outage in La Honda last week . I showed it to the PG&E tree crew, their supervisor, and phoned it in, but 5 hours later I had to call 911 to get the fire department to finally get PG&E to respond and remove the limb.   Helicopters fly over this woods every outage but it is obvious they can't see these hazards through the high tree canopy - what s waste of $$! Also, at least 4 different PG&E trucks drove past the site at the speed limit during the outage but they hadn't a clue where their most vulnerable lines are.  PG&E needs a review of management practices from top to bottom. They need people on the ground who are able to make decisions.

Oct 02, 2021 9:01 pm

**Chris Tsuji**                    San Jose, CA      95123

What is this?  This is the fourth request for rate increases since June 1, 2021.
Why???  So far, the increase is $7.6 billion.  What is PG&E doing with the money that they already have?
Reject this request.  Let the company use the money that the already have and spend it on this and other projects.

Oct 02, 2021 8:43 pm

**Nathaniel Leake**                    La Honda, CA      94020

Considering the five (six??) outages last month, ranging from 11 hours minimum to 3 days maximum, PG&E has definitely made some poor decisions with their recent "upgrades". I understand they need to pay their crews who go out to inspect the lines to bring the power back on each time, but this additional expense is on them, not us.

Oct 02, 2021 1:36 pm



**Eva Knodt**                    La Honda, CA    94020

I urge the CPUC to vote against the rate increase requested by PGE to recover their costs from fire hazard mitigation from customers who have seen a dramatic drop in service reliability. Instead, increase the oversight to hold the company accountable for false promises and missed milestones in implementing their wildfire risk mitigation plan. My husband and I are retired and live on fixed income. We live in the San Mateo County hills 20 minutes from Silicon Valley yet have the power and water infrastructure of a third world country. We are supposed to buy electric cars and stop using backup fuels such as propane and wood heating, yet those backup energy sources provide vital protection of basic needs for cooking and heating when there is no power. The hills have been crawling with tree service contractors who come through the same areas again and again without doing any substantial work to create defensible space around the naked power lines. The work has been spotty and entirely cosmetic. They admit that the trees too close to the power lines or overhanging the lines cannot be trimmed safely, so they move on. We had to call 911 repeatedly over the past year (the last time just three days ago) to prevent a fire in front of our house from fallen branches overlooked by the manual inspection. We are unable to open and track a ticket with the company. There is no follow up on trouble reports. The company does not communicate with customers except repeating the same broken record that the misery we endure several times a week due to unpredictable outages are for our own safety. The level of stress added to our lives due to the utter randomness of these outages is hard to bear. There is zero indication (based on past observation) that a rate increase will lead to better more reliable service. Paying more for a dramatic reduction in service to allow the company to keep their shareholders happy is unfair and inequitable and will hurt the most vulnerable populations disproportionally.

Oct 01, 2021 10:38 am

**Jennifer Sexton**                  La Honda, CA    94020

Please deny the increase proposed by PG&E. With all the outages between Aug 27 - Sept 30 it has put a huge strain on our community. They need to be held accountable and not pass on the expense of their mistakes to their customers.

Oct 01, 2021 9:48 am



**Grant Kern**            La Honda, CA     94020

PG&E's fast trip fiasco is just another example of pge again placing the liability onto their customers. With absolutely no notice we have had our power turned off for more than 80 hours over the last 5 weeks. PG&E's fast trip has brought 3rd world power reliability to the rural areas of the San Mateo County Coast. Will pge reimburse home owners for their loss in property values, food, revenue for businesses and medication as a result of their negligence?.. Of course not! It seems shareholder interests are held at a higher concern than their customers. CPUC should hold this company accountable for their decades of criminal acts and lack of proper maintenance. Please stop this abuse of power and vote no on this rate hike. Placing the burden on their customers to pay for their incompetence and mismanagement is an insult; which speaks to their inability to take ownership in the results of their actions!

Sep 30, 2021 5:14 pm

**Miriam Anne Frank**            La Honda, CA     94020

I do not agree with PG&E being allowed a rate increase at this time, given our communities' experience with the ongoing issues of their inability to couple safe with reliable power.

Sep 30, 2021 12:25 pm



**Mr. Austin**                    **La Honda, CA    94020**

PG&E is both criminally inept and criminally negligent. It has caused human deaths, massive property loss, and massive environmental destruction. Customers in our area experience frequent power outages lasting hours or days, which in turn cause telephone and internet outages, further loss of property, and frequent business interruptions which are very expensive. Given those egregious costs customers in our area should not be expected to pay PG&E's criminal mismanagement.

Here is a partial list of our outages since August 27th:

Fri, Aug 27, 4:19PM PG&E Alert: Outage including addr#___ affecting 1899 customers Expect restored Aug 27@9:15PM More info when available. To stop outage alerts reply STOP

Sat, Aug 28, 3:07 PM PG&E: Pwr restored in your area @3:00pm Aug 28 Still w/o pwr goto pge.com/outage Survey? http://gsys.io/ffwly To stop reply STOP

Sun, Sep 12, 8:39 AM PG&E Alert: Outage including addr#___ affecting 1902 customers Expect restored Sep 12@11:00PM More info when available. To stop outage alerts reply STOP

Sat, Sep 18, 11:25 AM PG&E Alert: Crew onsite Preliminary outage cause: . Expect restored Sep 18@7:00pm. We'll provide more info when available To stop reply STOP No PG&E SMS text record for restoral of power for this event.

Sun, Sep 19, 3:46 PM PG&E: Pwr restored in your area @3:39pm Sep 19 Still w/o pwr goto pge.com/outage Survey? http://gsys.io/flpw5 To stop reply STOP

Thu, Sep 23, 3:45 PM PG&E Alert: Outage including addr#___ affecting 355 customers Expect restored Sep 23@11:30PM More info when available. To stop outage alerts reply STOP
   7:57 PM PG&E: Pwr restored in your area @7:39pm Sep 23 Still w/o pwr goto pge. com/outage Survey? http://gsys.io/fmtw2 To stop reply STOP

Sun, 9-26, 8:30 PM PG&E Alert: Outage including addr#___ affecting 2984 customers Expect restored Sep 27@4:15AM More info when available. To stop outage alerts reply STOP
   7:25 PM PG&E: Pwr restored in your area @7:03pm Sep 27 Still w/o pwr goto pge. com/outage Survey? http://gsys.io/fnxzh To stop reply STOP

Tue, 9-28, 11:43 AM PG&E Alert: Outage including addr#___ affecting 2 customers Expect restored Sep 28@7:30PM More info when available. To stop outage alerts reply STOP
   3:16 PM PG&E: Pwr restored in your area @3:08pm Sep 28 Still w/o pwr goto pge. com/outage Survey? http://gsys.io/fo8et To stop reply STOP

Thu, 9-30, 7:29 PM PG&E Alert: Outage including addr#___ affecting 355 customers



Expect restored Sep 30@2:15PM More info when available. To stop outage alerts reply STOP
    11:16 AM PG&E: Pwr restored in your area @11:07am Sep 30 Still w/o pwr goto pge. com/outage Survey? http://gsys.io/fopcd To stop reply STOP

Sep 30, 2021 12:07 pm

**Cynthia Smith**                    **La Honda, CA    94020**

Deny this increase. PGE is not managing the resources it has effectively. Tree trimming in my neighborhood includes trimming the same trees over and over again, while completely ignoring a dead tree hanging over a line. PGE has not used the funds it already has for under grounding lines. The new fast trip system has resulted in PGE delivering power only about 50% of the time  resulting in reduced earnings, higher expenses for backup power and food gone bad. Why should I pay more for reduced service? Why is PGE spending so many resources inspecting lines several times a month after an outage, rather than insulating or underground lines in the areas that trip every other day? Any additional funding should come from the shareholders or reduced salaries for executives, not the users who are getting less all time. Why isn't the delivery charge on my bill reduced when PGE does not deliver power during a billing period? Instead of a rate increase, the PUC should be holding PGE accountable for a minimum electric delivery service level--or maximum downtime allowed. PGE is a monopoly so we have no where else to go for electricity except costly generators burning fossil fuel. Solar is not an option, but if I could I would drop PGE in a heartbeat. The net effect of PGE delivery problems is the the rich who can afford to go off grid will, leaving the poor and middle class to support PGE infrastructure. VOTE no on this, and instead put in place metrics for PGE performance.

Sep 30, 2021 11:42 am

**Marcelo Rizzo**                    **Seaside, CA    93955**

Deny this increase as it is written. The costs of wildfire mitigation should not be incurred by all the ratepayers in the state. I certainly did not get a say to approve construction in the affected areas. Only the communities that were affected should bear the increase. After all, we already funding or have funded with our taxes to fight the fires and other emergency support for the victims. If people "choose" to rebuild in the affected areas, they should be charged higher rates.

Sep 29, 2021 9:06 pm

**Doug McKenzie**                    **Berkeley, CA    94708**

Deny this increase. It is the height of irony to request a rate increase that includes "the planning and execution" of PSPS outages. Yes the planning and execution of PSPS outages needs tremendous improvement, but ratepayers should not pay for years of criminal negligence of transmission line maintenance which led to deadly wildfires which led to the PSPS outages.

Sep 28, 2021 3:50 pm



**Mary Bradford**         **KENSINGTON, CA   94707**

It is outrageous that they intend to pass this on to the taxpayers. I urge you to vote no on this request.

Sep 28, 2021 12:14 pm

---

**Al Sandine**         **Kensington, CA   94707**

I'm tired of having to pay for PG&E's mistakes and negligence. Granting their latest rate increase request can only encourage continued irresponsibility on the part of this corporate behemoth. We count on you to deny this latest assault on PG&E ratepayers.

Sep 28, 2021 11:54 am

---

**Michael Rehmus**         **Vallejo, CA   94591**

They more deserve to be punished for their bad behavior than rewarded for that behavior.
Deny them this outrage.

Sep 28, 2021 8:49 am

---

**Janis Lang**         **Anderson, CA   96007**

I have seen these requests every months for years. They have been rewarded for their bad behavior one too many times. They have NO RIGHT to request increases to offset the judgements against. PG&E has in their neglect has killed people and destroy ed property. They have no right to ask their customers for anything. They need to take their punishment. Do not reward their good behavior. They have not complied with the judgement for the Carr fire by continuing to neglect their responsibilities. So no and I would like to see an addendum added that they are not to be allowed to make monetary requests for 5 years.

Sep 28, 2021 7:34 am

---

**Tom Patten**         **Martinez, CA   94553**

I am opposed to this rate increase. PG&E can not be trusted to use ratepayer funds to effectively make safety improvements or reduce fire risk in my opinion. They collected money for tree trimming but reportedly just did the easy work and failed to address high risk foliage problems. Please hold PG&E shareholders and executives accountable for the system they arguably haven't managed well.

Sep 28, 2021 7:30 am



**Karen Lorimer**                                    **Sebastopol, CA     95472**

I do not support PG&E's Wildfire Mitigation Plan as it currently stands, and urge CPUC not to approve it, and to require PG&E to develop a plan that puts the needs of its customers ahead of its shareholders and executives' compensation.Their negligence has killed dozens of people and destroyed thousands of homes. There needs to be substantive improvements to infrastructure. Their current plan is not adequate, and yet we are being asked to pay higher rates for inadequate measures that do not address fundamental structural problems with PG&E's power grid, but will surely increase PG&E's profits and enrich their executives. PG&E must develop a plan to deal with every inch of their power distribution grid to insure that it can never cause any more catastrophic wildfires for which PG&E bears ultimate responsibility. And full paying customers should not have to loose power frequently or at all because PG&E was negligent and did not appropriate funds appropriately! Time to change course in favor of "the people" rather than their profits. CA needs a reputable power company that is accountable and considers the good of the people! PG&E has chosen greed and negligence for decades. While their infastructure that is supposed to provide safe, reliable electricity to millions of people continues to fall apart resulting in increasingly frequent power outages and massive wildfires they keep enriching themselves at our expense; doubling salaries, bonuses, and golden parachutes. When it comes to vegetation management they only do the bare minimum. They commit safety violations in the name of money and shut off our power under the guise of fire safety when their selfish decisions is exactly what led to their equipment posing such a serious fire danger in the first place such as continuing to run dangerous high voltage lines through transmission towers that were supposed to be decommissioned over ten years ago, using equipment well past their max life expectancy, ignoring maintenance reports, and firing employees who bring up serious safety concerns all to put even more money in their pockets. The vast majority of people who run PG&E don't even live in California and therefore are not effected by the frequent, long lasting power outages and destructive wildfires. If you pass PG&E's Wildfire Mitigation Plan as is then none of this will change. In fact, it will only get worse. There will be even more frequent and extended power outages, more smoke-filled days, and more wildfires that endanger entire communities. By approving their Wildfire Mitigation Plan as is you send a clear message that the millions of people who rely on safe, reliable electricity don't matter. You send a clear message that the few getting even richer is more important than the millions being safe. You send a clear message that increasing our rates 18% while PG&E doubles their executives salaries is perfectly acceptable. You send a clear message that PG&E's dangerous decisions are the right thing to do. You send a clear message that there is nothing wrong with raising our rates while providing increasingly unreliable, dangerous service in exchange. You send a clear message that we don't matter, that our lives aren't important, our health isn't important, our children aren't important, and all that matters is making an already powerful, wealthy company even more powerful and wealthy at our expense. You must consider PG&E's glaring incompetence and change course and not accept their plan and instead support the people whose lives are affected and who pay for reliable, safe utilities.

Sep 26, 2021 10:38 pm


**Libby Flower**                    **Freestone, CA    95472**

Do not pass the fire mitigation plan. PGE needs to bury their lines and pay for it
themselves.  They need not pay their administrators huge salaries for their
incompetence. Their liability should not fall back on the shoulders of the ratepayers that
they are holding captive through their monopolizing what should be public utilities.  They
are guilty of many anti-trust law violations in addition to their incompetent operations
leading to the wildfires.
Bury the lines!!! Stop turning the power off every time there us a gust of wind!

Sep 25, 2021 12:38 pm

**Dana Smith**                    **Auburn, CA    95602**

I oppose the Wildfire Mitigation Plan and also oppose the company's request to increase
rates. I do not understand why this company is allowed to operate and do business given
its blatant history of criminality and abject negligence. Since San Bruno of 2010 - the
company has not shown any improvement in handling operations. It remains a clear and
present danger to Californians. Over and over and over, we observe the destruction of
entire communities, homes, property, land and the stunning loss of lives. The company
has made very little progress on goals set in 2018 to mitigate wildfires following the tragic
Camp Fire. Very soon, it will be evident that PG&E was responsible for the massive Dixie
Fire which continues to burn since igniting on July 13, 2021. This company needs to be
dissolved. PG&E works to amass as much profit as possible, as evidenced by its failure
to operate effectively for years! PG&E does not work for the public. Therefore, PG&E is
not viable as a legitimate "public utility" company in California.

Sep 24, 2021 2:25 pm

**Christina Keyes**                    **Bodega Bay, CA    94923**

Please do not allow PGE to continue sidestepping the real problems. They need to Make
the necessary equipment upgrades and work to underground the wires. Please vote no
on this subpar plan!

Sep 24, 2021 8:01 am



**Marci Camacho**  OCCIDENTAL, CA  95465

I do not support PG&E's Wildfire Mitigation Plan as it currently stands, and urge CPUC not to approve it, and to require PG&E to develop a plan that puts the needs of its customers ahead of its shareholders and executives' compensation. PG&E's greed and negligence resulted in the destruction of lives and property in the Tubbs Fire of 2017 and the 2018 Camp Fire. PGE's negligence has killed dozens of people and destroyed thousands of homes. Without substantive improvements to infrastructure, including burying power lines in all areas where they are vulnerable to trees and foliage and other hazards, and improvements to their maintenance routines, PG&E's power lines will start more wildfires and destroy more private homes. Their current plan is not adequate, and yet we are being asked to pay higher rates that will not be spent to address fundamental structural problems with PG&E's power grid, but will surely increase PG&E's profits and enrich their executives.

In Occidental, CA the power lines travel thru wooded areas and the PGE tree maintenance crews do trim the trees or even take a tree down. However, they leave all the wood, trimmed branches on the side of the road which poses a new fire hazard as these materials dry out.

PGE is NOT repairing an issue at the local substation, (El Molino ? Russian River area), which has caused unplanned power outages 5 time in the last 6 weeks which last from 12 to 36 hours each. A neighbor was told on the phone that to expect these types of outages for the next 2 years. My guess is that it will take that long for PGE to repair this issue. On the outage map it shows the same number of homes and the same shape for each of these outages that I was able to see, which reinforces the thought that there is an issue at the local substation. The same PGE rep told the neighbor to buy a generator. A realistic and sensible plan to address these issues and old infrastructure needs to be thoughtfully prepared. Don't pass PG&E's Wildfire Mitigation Plan as is. Instead, insist that PG&E make some genuine changes.

Sep 23, 2021 12:12 pm

**Kelly Bates**  Occidental, CA  95465

We in Occidental implore you to not pass this legislation as is. We have suffered four power outages in the past five weeks, each lasting 12-24 hours. The most recent occurred on Saturday, Sept 18, a day on which our town received a quarter inch of rain, making it essentially impossible for a wildfire to burn. The "fast trip" mechanism is simply not practical as it is programmed without the possibility of human oversight on a day like last Saturday. PG&E's power lines run through our thickly wooded forests, meaning that the potential for "foreign objects" to fall on lines will result in our community living without power way too often. Either outside management of this greedy organization needs to occur (conservatorship) or northern California needs to find an alternative means of providing power to its paying customers. Thank you.

Sep 23, 2021 9:33 am



**Heidi Freestone**   Sebastopol, CA   95472

Please do not approve this mitigation plan as it stands. The ratepayers should not carry the financial responsibility for PG&E's mismanagement and lack of appropriate maintenance and improvement of the electricity delivery system. Other states have much more extreme weather and their electricity stays on, because they have built a more resilient delivery system. If PG&E cannot provide safe, reliable electricity another provider should be found.
Thank you

Sep 23, 2021 7:15 am

**Dorena Rode**   Occidental , CA   95465

Do not pass the Pge fire fire mitigation plan. It needs to be changed. We experience power outages for no reason other than the lines and equipment need to be upgraded. When the power goes out it takes a full day to get it back on as Pge has to manually visually inspect every line.

We had three outages like this in September and neighboring areas I having the power go down twice a week. This needs to be fixed.

Sep 23, 2021 6:56 am

**Michael Greenberg**   Occidental, CA   95465

I do not support PG&E's Wildfire Mitigation Plan as it currently stands, and urge CPUC not to approve it, and to require PG&E to develop a plan that puts the needs of its customers ahead of its shareholders and executives' compensation. PG&E's greed and negligence resulted in the total destruction of my property in the Tubbs Fire of 2017. Their negligence has killed dozens of people and destroyed thousands of homes. Without substantive improvements to infrastructure, including burying power lines in all areas where they are vulnerable to trees and foliage and other hazards, and improvements to their maintenance routines, PG&E's power lines will start more wildfires and destroy more private homes. Their current plan is not adequate, and yet we are being asked to pay higher rates for an anemic set of measures that do not address fundamental structural problems with PG&E's power grid, but will surely increase PG&E's profits and enrich their executives. There are still power lines in my neighborhood of Occidental, CA that have power lines covered by branches, that are perilously close to old, tall trees likely to drop heavy branches in inclement weather, and yet PG&E tree maintenance crews have done nothing to address these vulnerabilities. PG&E must develop a plan to deal with *every* inch of their power distribution grid to insure that it can never cause another catastrophic event such as the Tubbs, Camp and numerous other wildfires for which PG&E bears ultimate responsibility.

Sep 23, 2021 6:07 am



**Heather Kraus**                                    Occidental , CA    95465

PG&E has chosen greed and negligence for decades. While their infastructure that is supposed to provide safe, reliable electricity to millions of people continues to fall apart resulting in increasingly frequent power outages and massive wildfires they keep enriching themselves at our expense; doubling salaries, bonuses, and golden parachutes. When it comes to vegetation management they only do the bare minimum. They commit safety violations in the name of money and shut off our power under the guise of fire safety when their selfish decisions is exactly what led to their equipment posing such a serious fire danger in the first place such as continuing to run dangerous high voltage lines through transmission towers that were supposed to be decomissioned over ten years ago, using equipment well past their max life expectancy, ignoring maintenance reports, and firing employees who bring up serious safety concerns all to put even more money in their pockets.

The vast majority of people who run PG&E don't even live in California and therefore are not effected by the frequent, long lasting power outages and destructive wildfires. If you pass PG&E's Wildfire Mitigation Plan as is then none of this will change. In fact, it will only get worse. There will be even more frequent and extended power outages, more smoke-filled days, and more wildfires that endanger entire communities.

By approving their Wildfire Mitigation Plan as is you send a clear message that the millions of people who rely on safe, reliable electricity don't matter. You send a clear message that the few getting even richer is more important than the millions being safe. You send a clear message that increasing our rates 18% while PG&E doubles their executives salaries is perfectly acceptable. You send a clear message that PG&E's dangerous decisions are the right thing to do. You send a clear message that there is nothing wrong with raising our rates while providing increasingly unreliable, dangerous service in exchange. You send a clear message that we don't matter, that our lives aren't important, our health isn't important, our children aren't important, and all that matters is making an already powerful, wealthy company even more powerful and wealthy at our expense.

A regulatory agency is not supposed to allow a monopoly to get away with crushing the little people, let alone approve it. Put the people of California first for once. Send a clear message that we do matter, that our children matter, that our lives are more important than the almighty dollar. Don't pass PG&E's Wildfire Mitigation Plan as is. Instead, insist that PG&E make some genuine changes. Insist that this plan actually mitigate fire danger and does so without bankrupting us or forcing us to live with an unnacceptable, dangerous amount of power outages. Insist that PG&E actually do their jobs correctly for once before doubling their salaries. Insist that human lives are put before money.

Sep 23, 2021 3:22 am



**D Pow**                                    **Sausalito, CA    94966**

Felonious PGE is not deserving of any additional rate increases.

According to Google Finance, PGE's parent company had a 120% INCREASE in net income from 2020 to 2021. Even if PG&E shovels its undeserved profits into its NYSE parent company, PCG, rather than putting it into line maintenance and other items PGE should be funding as a PUBLIC company, PCG's desire to bump its stock price doesn't justify PGE's rate increase.

Felonious PGE's filing is short on details and long on speculation, providing neither an independent accounting of supposed cost increases justifying another bankrupting rate increase, nor an accounting of how PGE spent or squandered money earmarked for line maintenance and other necessaries. Rather than providing details, PGE asks ratepayers to pay through the nose for its continuing failures.

If the CPUC approves this consumer fleecing, consumers should protest en masse: cutting off their power for a week to protest PGE's repeated transmission fee gouging, and requesting the rubber-stamping CPUC be replaced.

Sep 18, 2021 1:56 am