**Exhibit A**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

WEIL:\98835202\1\67615.0015

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made and entered into by and between Associated Electric & Gas Insurance Services Limited ("AEGIS"), Swiss Re Corporate Solutions America Insurance Corporation ("SRCSAIC), f/k/a North American Specialty Insurance Company, Great Lakes Insurance SE ("Great Lakes"), Endurance Risk Solutions Assurance Co. ("Endurance"), Berkley Insurance Company ("Berkley"), Allianz Global Risks US Insurance Company ("Allianz"), Continental Casualty Company ("CNA"), Twin City Fire Insurance Company ("Twin City"), Argonaut Insurance Company ("Argonaut"), and Energy Insurance Mutual Limited ("EIM") (collectively, the "Insurers"); and PG&E Corporation and Pacific Gas and Electric Company (collectively, "PG&E"); and Lewis Chew, Kevin Dasso, Anthony F. Earley, Jr., Fred J. Fowler, Maryellen C. Herringer, Patrick M. Hogan, Christopher P. Johns, Julie M. Kane, Richard C. Kelly, Roger H. Kimmel, Steve E. Malnight, Richard A. Meserve, Forrest E. Miller, Dinyar B. Mistry, Eric D. Mullins, Gregg L. Lemler, Rosendo G. Parra, Barbara L. Rambo, Anne Shen Smith, Nickolas Stavropoulos, David Thomason, Jason P. Wells, Barry Lawson Williams, and Geisha J. Williams (collectively, "Individual Insureds," and together with PG&E, the "Insureds"). The Insurers, PG&E, and the Individual Insureds are referred to herein collectively as the "Parties" and individually as "Party."

By the terms of this Agreement, the Parties agree as follows:

## RECITALS

WHEREAS, AEGIS issued a Directors and Officers Liability Insurance policy to PG&E, numbered DP5008417P (the "2017 Primary Policy"), with a policy period of May 20, 2017 to May 20, 2018 (the "2017 Policy Period"), and an aggregate limit of liability of $35 million, subject to a $5 million self-insured retention;

WHEREAS, EIM, SRCSAIC, Great Lakes, Endurance, Berkley, and Allianz, issued to PG&E for the 2017 Policy Period the following directors and officers liability policies in excess of the 2017 Primary Policy (these policies are sometimes collectively referred to herein as the "2017 Excess Policies," and collectively with the 2017 Primary Policy, the "2017 Policies," and these Insurers, together with AEGIS, in their capacity as insurers issuing the 2017 Policies, are collectively referred to as the "2017 Insurers"):

   a. EIM issued the first layer excess policy, numbered 293716-17DO, with an aggregate limit of liability of $25 million (the "2017 EIM Excess Policy");

   b. SRCSAIC issued the second layer excess policy, numbered DOE 1000005 04, with an aggregate limit of liability of $15 million (the "2017 SRCSAIC Excess Policy");

   c. Great Lakes issued the third layer excess policy, numbered B0509FINMW1700720, with an aggregate limit of liability of $15 million (the "2017 Great Lakes Excess Policy");

d. Endurance issued the fourth layer excess policy, numbered DOX10003965504, with an aggregate limit of liability of $25 million (the "2017 Endurance Excess Policy");

e. Berkley issued the fifth layer excess policy, numbered BPRO8026578, with an aggregate limit of liability of $15 million (the "2017 Berkley Excess Policy"); and

f. Allianz issued the seventh layer excess policy, numbered DOX 2009141, with an aggregate limit of liability of $25 million (the "2017 Allianz Excess Policy").

WHEREAS, four insurers have separately agreed to settle (in that capacity, the "2017 Other Settling Insurers") under similar terms to those in this Agreement ("2017 Other Settling Insurers' Agreement"), with respect to the following excess directors and officers liability policies for the 2017 Policy Period (the "2017 Other Settling Insurers' Policies"), under which each 2017 Other Settling Insurer would pay its full limit of liability:

a. American International Reinsurance Company, Ltd. ("AIRC") issued the sixth layer excess policy, numbered 17735565, with an aggregate limit of liability of $15 million;

b. Liberty Insurance Underwriters, Inc. ("Liberty") issued the eighth layer excess policy, numbered DONYABBATV002, with an aggregate limit of liability of $10 million;

c. Starr Indemnity & Liability Company ("Starr") issued the ninth layer excess policy, numbered 1000058800171, with an aggregate limit of liability of $10 million; and

d. U.S. Specialty Insurance Company ("USIC") issued the tenth layer excess policy, numbered 24-MGU-17-A40722, with an aggregate limit of liability of $10 million.

WHEREAS, AEGIS issued a Directors and Officers Liability Insurance policy to PG&E, numbered DP5008418P (the "2018 Primary Policy"), with a policy period of May 20, 2018 to May 20, 2020, as extended by Endorsement No. 42 (the "2018 Policy Period"), and an aggregate limit of liability of $25 million, subject to a $10 million self-insured retention;

WHEREAS, Berkley, EIM, SRCSAIC, Great Lakes, Endurance, CNA, Allianz, Twin City, and Argonaut issued to PG&E for the 2018 Policy Period the following directors and officers liability policies in excess of the 2018 Primary Policy, (these policies are sometimes collectively referred to herein as the "2018 Excess Policies," and collectively with the 2018 Primary Policy, the "2018 Policies," and these Insurers, together with AEGIS, in their capacity as insurers issuing the 2018 Policies, are collectively referred to as the "2018 Insurers"):

a. Berkley issued the first layer excess policy, numbered BPRO8032243, with an aggregate limit of liability of $10 million (the "2018 Berkley Excess Policy");

- 2 -

b.  EIM issued the second layer excess policy, numbered 294001-18DO, with an aggregate limit of liability of $25 million (the "2018 EIM Excess Policy");

c.  SRCSAIC issued the third layer excess policy, numbered DOE 1000005 05, with an aggregate limit of liability of $15 million (the "2018 SRCSAIC Excess Policy");

d.  Great Lakes issued the fourth layer excess policy, numbered B0509FINMW1800309, with an aggregate limit of liability of $15 million (the "2018 Great Lakes Excess Policy");

e.  Endurance issued the fifth layer excess policy, numbered DOX10003965505, with an aggregate limit of liability of $15 million (the "2018 Endurance Excess Policy");

f.  CNA issued the sixth layer excess policy, numbered 651998866, with an aggregate limit of liability of $15 million (the "2018 CNA Excess Policy");

g.  Allianz issued the seventh layer excess policy, numbered USF00087118, with an aggregate limit of liability of $15 million (the "2018 Allianz Excess Policy");

h.  Twin City issued the ninth layer excess policy, numbered 57 DA 0329569-18, with an aggregate limit of liability of $15 million (the "2018 Twin City Policy"); and

i.  Argonaut issued the tenth layer excess policy, numbered MLX 4209092-0, with an aggregate limit of liability of $10 million (the "2018 Argonaut Excess Policy").

WHEREAS, four insurers have declined to participate in this Agreement with respect to the following excess directors and officers liability policies (in that capacity, the "Non-Settling Insurers") under which PG&E is an "Insured Organization" and the Individual Insureds are "Insured Persons," or the equivalent, which were in effect for the policy period of May 20, 2018 to May 20, 2020, as extended by endorsement (the "Non-Settling Insurers' Policies"):

a.  Lloyd's Syndicate Barbican D&O US Consortium 2018 9679 BAR 1955 ("Barbican") issued the eighth layer excess policy, numbered B0509FINMW1800858, with an aggregate limit of liability of $15 million;

b.  Starr issued the eleventh layer excess policy, numbered 1000058800181, with an aggregate limit of liability of $10 million;

c.  Allianz issued the twelfth layer excess policy, numbered USF00112918, with an aggregate limit of liability of $5 million; and

d.  Houston Casualty Company ("HCC") issued the thirteenth layer excess policy, numbered 24-MG-18-A13813, with an aggregate limit of liability of $10 million.

WHEREAS, PG&E and/or the Individual Insureds sought coverage under the 2017 Policies and/or the 2018 Policies (collectively, the "Policies") for certain lawsuits and other proceedings identified on Exhibit A hereto (the "Noticed Matters");

WHEREAS, the Noticed Matters include lawsuits against certain of the Individual Insureds alleging violations of certain federal securities laws that, by virtue of consolidation or otherwise, are now asserted in a single securities class action, *In re PG&E Corporation Securities Litigation*, Case No. 3:18-cv-03509-EJD (N.D. Cal.) (the "Securities Class Action");

WHEREAS, the Noticed Matters include the bankruptcy proceeding entitled *In re PG&E Corporation*, United States Bankruptcy Court for the Northern District of California, San Francisco Division, Case No. 19-30088 (DM) (the "Bankruptcy Proceeding") and proofs of claim filed by shareholders of PG&E in the Bankruptcy Proceeding based upon alleged false and misleading statements with respect to PG&E securities (the "Proofs of Claim");

WHEREAS, derivative and direct actions were brought by certain plaintiffs against certain of PG&E's officers and directors, including certain of the Individual Insureds;

WHEREAS, pursuant to PG&E's Plan of Reorganization, PG&E assigned to the Fire Victim Trust "any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the Fires that the Debtors may have against . . . former directors and officers of the Debtors solely to the extent of any directors and officers' Side B Insurance Coverage" and the Fire Victim Trust pursued certain of those claims which, by virtue of consolidation or otherwise, now consist of the following matter: *Justice John Trotter (Ret.) Trustee of the Fire Victim Trust v. Williams, et al.*, Lead Case No. CGC-17-562591) (consolidated with Case Nos. CGC-17-562553 and CGC-18-572326), Cal. Super. Ct., S.F. Cty. (the "FVT Action");

WHEREAS, the plaintiff in the FVT Action alleges, among other things, that certain Individual Insureds breached their fiduciary duties;

WHEREAS, PG&E incurred Defense Costs (as that term is defined in the 2017 Primary Policy and the 2018 Primary Policy) in funding the defense of the Noticed Matters and seeks reimbursement for those Defense Costs from the Insurers;

WHEREAS, PG&E has indemnified and continues to indemnify the Individual Insureds with respect to all Defense Costs incurred in the Noticed Matters;

WHEREAS, PG&E initiated an arbitration against the 2017 Insurers, the 2018 Insurers, and the Non-Settling Insurers entitled *PG&E Corporation et al. v. Associated Electric & Gas Insurance Services Limited, et al.*, CPR File No. G-20-56-S (the "Current Arbitration"), in which PG&E seeks insurance coverage for Defense Costs and indemnity in connection with the Noticed Matters;

WHEREAS, PG&E and EIM have agreed that either can initiate a separate arbitration regarding insurance coverage under the 2017 EIM Excess Policy and the 2018 EIM Excess Policy for Defense Costs and indemnity in connection with the Noticed Matters (the "Potential, Future Arbitration," and, collectively, with the Current Arbitration, the "Arbitrations");

- 4 -

WHEREAS, after mediation before Robert A. Meyer, PG&E and the pertinent Individual Insureds reached settlement agreements in principle with the plaintiffs in the Securities Class Action and Proofs of Claim (the "Securities Class Action Settlement") and the FVT Action (the "FVT Action Settlement," and collectively with the Securities Class Action Settlement, the "Settlements") that, if certain conditions are met, would resolve the Proofs of Claim, Securities Class Action, and the FVT Action, with the exception of claimants who opt out;

WHEREAS, the Parties now wish to settle and finally terminate all insurance claims and controversies between or among them arising out of, connected with, or otherwise related to (1) the Noticed Matters, (2) Defense Costs incurred in connection with the Noticed Matters, (3) all rights and obligations of the Insureds and the Insurers under the Policies with respect to the Noticed Matters, (4) the Policies, and (5) the Arbitrations (as between the Parties), subject to the terms and conditions of this Agreement as set forth more fully herein, reserving all other rights; and

WHEREFORE, the Parties hereby agree to the terms of this Agreement, as follows:

## TERMS OF THE AGREEMENT

1. RECITALS

The recitals set forth herein are incorporated into and acknowledged as an integral part of this Agreement.

2. PAYMENT

a.　　In consideration of the releases and agreements described below, and other valuable consideration, the sufficiency of which is acknowledged, the sums set forth below (collectively, the "Insurance Payment") shall be paid severally by the Insurers to PG&E by wire transfer into accounts to be specified by PG&E, with a total of $117 million to be paid into one account and the balance of the Insurance Payment to be paid into one or more additional accounts, in accordance with the following Payment Schedule, within 30 days of the Effective Date as provided in Paragraph 11 herein, provided that upon execution of this Agreement by all Parties, PG&E provides written wire transfer instructions on its letterhead and a Form W9 with respect to the payee(s) of the Insurance Payment.

**Payment Schedule**

| Insurer | Policy | Amount |
|---------|--------|--------|
| AEGIS | 2017 Primary Policy | $35 million |
| EIM | 2017 EIM Excess Policy | $25 million |
| SRCSAIC | 2017 SRCSAIC Excess Policy | $15 million |

- 5 -

| Insurer | Policy | Amount |
|---|---|---|
| Great Lakes | 2017 Great Lakes Excess Policy | $15 million |
| Endurance | 2017 Endurance Excess Policy | $25 million |
| Berkley | 2017 Berkley Excess Policy | $15 million |
| Allianz | 2017 Allianz Excess Policy | $25 million |
| AEGIS | 2018 Primary Policy | $11.25 million |
| Berkley | 2018 Berkley Excess Policy | $4.5 million |
| EIM | 2018 EIM Excess Policy | $11.25 million |
| SRCSAIC | 2018 SRCSAIC Excess Policy | $6.75 million |
| Great Lakes | 2018 Great Lakes Excess Policy | $6.75 million |
| Endurance | 2018 Endurance Excess Policy | $6.75 million |
| CNA | 2018 CNA Excess Policy | $6.75 million |
| Allianz | 2018 Allianz Excess Policy | $6.75 million |
| Twin City | 2018 Twin City Policy | $6.75 million |
| Argonaut | 2018 Argonaut Excess Policy | $4.5 million |

b.      Provided, however, that if the Insureds agree to accept payment from a Non-Settling Insurer, then the payments owed by the 2018 Insurers under this Agreement under their respective 2018 Policies will be reduced to the lowest percentage of policy limits that any Non-Settling Insurer is paying under its Non-Settling Insurers' Policy (the "Reduced Payment"), in which case the Payment Schedule amounts as to the 2018 Insurers shall automatically be amended to the Reduced Amount and, if the original payment amount was made, then PG&E will pay to each 2018 Insurer the difference between said amount and the amount of the Reduced Payment.  This provision will not apply if the Insureds agree to voluntarily accept payment from a Non-Settling Insurer: (i) in satisfaction of an Arbitration Award in the Current Arbitration for an amount that implicates less than the entire limits of liability of the 2018 Policies, or (ii) an Arbitration Award in the Current Arbitration is issued on the cross-motions submitted to the arbitration panel on October 7, 2021 in favor of the Insureds.  For avoidance of doubt, nothing in

- 6 -

this subparagraph is intended to affect the payments that the 2017 Insurers agreed to make under the 2017 Policies.

c.     The Insurers understand and agree that, in reliance on, and consistent with, their promise to pay the Insurance Payment under the Policies, the Insureds will use reasonable efforts to complete settlements of the Securities Class Action, Proofs of Claim, and the FVT Action, so long as those terms are reasonably consistent with the binding term sheet executed by the FVT on May 22, 2022 and the draft term sheet supplied by defendants to the putative class representative in the securities case on June 15, 2022. This Agreement is binding upon the occurrence of the Effective Date, regardless of whether the Settlements become final.

3.     <u>MUTUAL RELEASES</u>

a.     Effective upon payment by the Insurers pursuant to Paragraph 2.a., and for other valuable consideration, the sufficiency of which is acknowledged, the Insureds, on behalf of themselves and all of their respective current, past, and future parents, subsidiaries, and affiliates, and all of their respective current, past, and future officers, directors, shareholders, employees, attorneys, agents, representatives, and contractors, spouses, immediate family members, heirs, executors, administrators, estates, trustees, receivers, and any trust of which any Individual Insured or any spouse or family member thereof serves as settlor, beneficiary, or trustee, and all of their respective predecessors, successors, and assigns (the "Insureds' Related Parties"), do hereby fully, completely, and forever release, acquit, remise, and discharge the 2017 Insurers and all of their respective current, past, and future parents, subsidiaries, and affiliates, and all of their respective current, past, and future officers, directors, shareholders, employees, attorneys, agents, representatives, insurers, reinsurers and contractors, and all of their respective predecessors, successors, and assigns (the "2017 Insurers' Related Parties"), from any and all claims, disputes, controversies, fees, costs and demands under the 2017 Policies (excepting any claims for breach of this Agreement), including but not limited to any extra-contractual or claims of bad faith, based upon, arising out of or relating to any, some, and/or all of the following: (1) Noticed Matters, (2) Defense Costs incurred in connection with the Noticed Matters, (3) the acts, failures to act, omissions, misrepresentations, statements, misstatements, facts, events, or occurrences alleged or which could have been alleged in the Noticed Matters; (4) wildfires that occurred on or before May 20, 2020 (subparts (1) through (4) above are collectively referred to as the "Released Matters"); and (5) the 2017 Policies, including without limitation any allegation that any Insurer breached any obligation under the 2017 Policies.

b.     Upon payment by the Insurers pursuant to Paragraph 2.a. and for other valuable consideration, the sufficiency of which is acknowledged, the Insureds and the Insureds' Related Parties do hereby fully, completely, and forever release, acquit, remise, and discharge the 2018 Insurers and all of the 2018 Insurers' respective current, past, and future parents, subsidiaries, and affiliates, and all of their respective current, past, and future officers, directors, shareholders, employees, attorneys, agents, representatives, insurers, reinsurers and contractors, and all of their respective predecessors, successors, and assigns (the "2018 Insurers' Related Parties"), from any and all claims, disputes, controversies, fees, costs and demands under the 2018 Policies (excepting any claims for breach of this Agreement), including but not limited to any extra-contractual claims or claims of bad faith, based upon, arising out of or relating to any, some,

- 7 -

and/or all of the following: (1) the Released Matters; and (2) the 2018 Policies, including without limitation any allegation that the 2018 Insurers breached any obligation under the 2018 Policies.

c.      The releases in subparagraphs 3.a. and 3.e., except for the releases in subparagraphs 3.a.(5) and 3.b.(2) above and 3.e.(2) below, also apply to any Side A-only director and officer liability policy issued by AEGIS that insures the Individual Insureds and was in effect during the 2017 Policy Period or the 2018 Policy Period (such Side A-only policies to include AEGIS Policy No. DX5748101P).

d.      For avoidance of doubt, the releases in subparagraphs (a) and (b) above and (e) below do not apply to PG&E's captive Side A-only policy, Energy Insurance Services, Inc. Policy No. P034-190331, the Non-Settling Insurers' Policies, the 2017 Other Settling Insurers' Policies, including, for avoidance of doubt, Allianz under Policy No. USF00112918, and any other Side A-only policy.

e.      Upon payment by the Insurers pursuant to Paragraph 2.a. and for other valuable consideration, the sufficiency of which is acknowledged, the 2017 Insurers, on behalf of themselves and all of the 2017 Insurers' Related Parties and the 2018 Insurers, on behalf of themselves and all of the 2018 Insurers' Related Parties, do hereby fully, completely, and forever release, acquit, remise, and discharge the Insureds and the Insureds' Related Parties from any and all claims, disputes, controversies, fees, costs and demands under the 2017 Policies and the 2018 Policies (excepting any claims for breach of this Agreement) including but not limited to any extra-contractual or claims of bad faith, based upon, arising out of or relating to any, some, and/or all of the following: (1) the Released Matters; (2) the Policies, including without limitation any allegation that any Insured breached any obligation under the Policies; and (3) based upon, arising out of or relating to any rights to recoup the payments made pursuant to this Agreement, other than with respect to Section 2(b) of this Agreement.

f.      The Parties recognize and execute this Agreement knowing that they may discover facts and circumstances that relate to the subject of this Agreement and that, if known, might have affected their willingness to enter into this Agreement. Despite this, the Parties agree that this Agreement applies with equal force to any claims based on such unknown circumstances or facts and specifically waive the provisions of California Civil Code section 1542, which provides:

> **"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

This Agreement is additionally intended to waive any rights substantially similar in effect to the above-cited provision.

g.      The Parties acknowledge that they may discover facts in addition to or different from those now known or believed to be true by them with respect to the released claims in Paragraph 3, but it is the intention of the Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all of the released claims known

or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

h.      The Parties understand, acknowledge, and agree that the releases given by PG&E and its parents, subsidiaries, and affiliates shall not apply to any claim the Insurers may have under any (re)insurance policy issued to them by any (re)insurer that is an Insurer hereunder or any parent, subsidiary or affiliate of any such Insurer.

4.    NO ADMISSIONS

a.      The Parties agree and acknowledge that this Agreement is entered into for the sole purpose of resolving contested claims and disputes, and avoiding the substantial costs, expenses, and uncertainties associated with such disputes.

b.      Notwithstanding anything contained herein, this Agreement and compliance with this Agreement shall not be construed as an admission by any Party of any liability whatsoever, including whether there is any merit to the claims asserted: (1) in the Noticed Matters, (2) for Defense Costs (as that term is used in the Policies) incurred in connection with the Noticed Matters, (3) in the Arbitrations, or (4) with respect to any rights and obligations of the Insureds and the Insurers under the Policies with respect to the Noticed Matters, or any violation of the rights of any Party or violation of any order, law, statute, duty, or contract whatsoever.

c.      It is also expressly agreed and acknowledged that neither the negotiation, nor execution, nor performance of any of the terms of this Agreement shall constitute or be construed as an admission by any Party of any liability, insurance coverage, lack of insurance coverage, or any fact or indication that any of the claims or charges made by any of the Parties against each other has any merit or lacks any merit.  Without limitation of the foregoing, any characterization of the allegations in the Noticed Matters, or the Current Arbitration in this Agreement or the Settlement shall not be binding on the Parties and shall not be admissible with respect to any other claim under any other insurance policy or agreement.  The Parties will not make any representation, statement, or proffer of evidence or argument, to any court, tribunal, or third party intentionally suggesting that this Agreement constitutes any such admission.

d.      Nothing herein is intended to, or shall, affect the claims for insurance coverage by PG&E and the Individual Insureds under the Non-Settling Insurers' Policies.

e.      Nothing herein shall be deemed in any way to impair, restrict, enlarge, or otherwise alter the rights of PG&E or any Individual Insured or their successors or representatives arising under any indemnification right or contract vis-à-vis each other.

5.    NO ASSIGNMENT OF RELEASED CLAIMS

Except as set forth in the Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020 in the Bankruptcy Proceeding (Dkt. # 8053), the Parties represent and warrant that there has been, and will be, no assignment or other transfer of any interest in any claim which they may have against their respective releasees.  If, contrary to this representation and warranty, any Party assigns or has assigned such rights to any

- 9 -

other person or entity, that Party shall defend, indemnify and hold harmless any other Party with respect to any claim or action brought by any assignee of any interest assigned contrary to this representation and warranty.

6.  <u>NOTICE</u>

Notice shall be given by electronic mail to each Party as follows:

**For PG&E:**

A. Anna Capelle
Managing Counsel, Litigation & Commercial Contracts
Pacific Gas and Electric Company Law Department
AECh@pge.com

With a copy to:

David B. Goodwin
Jeffrey M. Davidson
Covington & Burling LLP
dgoodwin@cov.com
jdavidson@cov.com

**For the Individual Insureds:**

Jonathan Youngwood
jyoungwood@stblaw.com
Stephen Blake
sblake@stblaw.com
SIMPSON THACHER & BARTLETT LLP

and

Steven Scholes
sscholes@mwe.com
MCDERMOTT WILL & EMERY LLP

With a copy to:

Robin Cohen
rcohen@cohenziffer.com
Adam Ziffer
aziffer@cohenziffer.com
COHEN ZIFFER FRENCHMAN & MCKENNA LLP

- 10 -

**For AEGIS:**

       Timothy Vazquez
       Senior Litigation Counsel
       TimothyVazquez@aegislimited.com

       With a copy to:

       Dan A. Bailey
       dbaily@baileycav.com
       Michael R. Goodstein
       mgoodstein@baileycav.com
       BAILEY CAVALIERI LLC

**For EIM:**

       Ann Joslin
       ajoslin@eimltd.com

       With a copy to:

       Ronald L. Ohren
       Ronald.Ohren@bakermckenzie.com
       BAKER MCKENZIE

**For Berkley:**

       Michelle Klein
       mklein@berkleypro.com

       With a copy to:

       Kimberly M. Melvin
       kmelvin@wiley.law
       John E. Howell
       jhowell@wiley.law
       WILEY REIN LLP

**For SRCSAIC:**

       Diana M. Karnes
       Diana_Karnes@swissre.com

- 11 -

With a copy to:

Ralph A. Guirgis
ralph.guirgis@clydeco.us
Sean R. Simpson
sean.simpson@clydeco.us
CLYDE & CO US LLP


**For Endurance:**

Jennifer L. Odrobina
jodrobina@sompo-intl.com

With a copy to:

Mary Jo Barry
mbarry@kdvlaw.com
KAUFMAN DOLOWICH VOLUCK LLP

**For Great Lakes:**

Saba Rehman
srehman@munichre.com

With a copy to:

David J. Hensler
david.hensler@hoganlovells.com
Douglas S. Crosno
douglas.crosno@hoganlovells.com
HOGAN LOVELLS

**For Allianz:**

Angela R. Sivilli, JD RPLU
angela.sivilli@agcs.allianz.com

With a copy to:

Suzanne C. Midlige
smidlige@cmg.com
COUGHLIN, MIDLIGE& GARLAND LLP

**For CNA:**

- 12 -

Phillip E. Wilson, Jr.
Phillip.Wilson@cna.com

With a copy to:

David F. Cutter
dcutter@batescarey.com
BATES CAREY LLP


**For Twin City:**

Jessica Standish
Jessica.Mitchell2@thehartford.com

With a copy to:

Robert A. Benjamin
rbenjamin@kbrlaw.com
KAUFMAN BORGEEST & RYAN LLP

**For Argonaut:**

Jason Ellis
jason.ellis@argogroupus.com

With a copy to:

E. Joseph O'Neil
eoneil@peabodyarnold.com
Michael Duffy
MDuffy@peabodyarnold.com
PEABODY & ARNOLD LLP


7.  <u>THE ARBITRATION</u>

The Parties will inform the arbitrators in the Current Arbitration of this Agreement and the Insurers affected by it and will request that the arbitrators stay proceedings involving the Insurers in the Current Arbitration until the Effective Date set forth in Paragraph 11 and dismiss with prejudice the claims by PG&E and the Individual Insureds against the Insurers, and the claims by the Insurers against PG&E and the Individual Insureds, once the Effective Date occurs, with PG&E and the Insurers each bearing its own fees as costs as to the proceedings between them. If, however, the Settlement does not become final and the Effective Date therefore does not occur, then (a) the Parties will instruct the arbitrators to recommence the Current Arbitration as between the Parties, (b) either PG&E or EIM can pursue the Potential, Future Arbitration, and (c) the Parties to such Arbitrations reserve all rights with respect to such Arbitrations. Nothing

- 13 -

herein is intended to affect the claims in the Current Arbitration by PG&E and the Individual Insureds against the Non-Settling Insurers (including, for avoidance of doubt, Allianz in its capacity as the insurer issuing Policy No. USF00112918), and such claims may proceed notwithstanding the stay and/or dismissal of proceedings as between the Parties set forth above. Subject to Paragraph 12, this Agreement, following the Effective Date, will bind the Parties regardless of whether the Current Arbitration between PG&E and the Non-Settling Insurers proceeds, and regardless of the outcome of that Current Arbitration.

8. <u>JOINT DRAFTING</u>

The language of this Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly for or against any Party, notwithstanding any rule of law that otherwise might apply. This Agreement shall be deemed to have been drafted by all Parties to this Agreement, and no Party or any attorney for any Party shall urge otherwise.

9. <u>ENTIRE AGREEMENT</u>

This Agreement constitutes the entire agreement between the Parties, and supersedes any and all prior or contemporaneous agreements, promises, representations, or understandings, written or oral, between them relating to the subject matter of this Agreement; provided, however, that the Parties will use reasonable efforts to carry out the terms of this Agreement in conjunction with the 2017 Other Settling Insurers' Agreement, and nothing in this Agreement shall affect any of the Parties' rights and duties under any policies other than the Policies. Each Party represents that it has not relied on any representation not included in this Agreement, and that no other agreements, promises, representations, or understandings shall be binding upon the Parties with respect to this subject matter unless contained in this Agreement.

10. <u>ACKNOWLEDGMENT OF LEGAL ADVICE</u>

The Parties agree and acknowledge that each of them enters this Agreement upon the independent legal advice of his, her, or its attorney, and that each of them has read, fully understands, and voluntarily accepts the terms and provisions of this Agreement.

11. <u>EFFECTIVE DATE</u>

This Agreement is subject to and contingent upon approval by the Bankruptcy Court in the Bankruptcy Proceeding and the Effective Date is the date of such approval.

12. <u>RESTORATION OF RIGHTS</u>

Notwithstanding anything in this Agreement to the contrary, in the event that the Effective Date does not occur, this Agreement shall become void *ab initio*, the Parties, as between one another, shall be restored to all rights, obligations, and terms and conditions of the Policies that any of them had prior to executing this Agreement. If the Effective Date does occur, but Bankruptcy Court approval for this Agreement is reversed in whole and the reversal order becomes final, (a) this Agreement, including all releases contained herein, shall become void *ab initio*, and the Parties, as between one another, shall be restored to all rights and

- 14 -

obligations, which any of them had prior to executing this Agreement, and (b) PG&E shall direct the Plaintiffs in the respective matters, or any other party in possession or control of such funds, to return any Insurance Payment to the Insurers that made such payment within 30 days of the date that the reversal order becomes final. If the Plaintiffs or any other party in possession or control of such funds have not returned any portion of the Insurance Payment (the "Unpaid Balance") to the Insurers within 30 days after the reversal order becomes final, then PG&E will pay the Unpaid Balance to the Insurers within 15 days after the Insurers notify PG&E that there is an Unpaid Balance. Upon those Insurers' receipt of the returned Insurance Payment so returned, PG&E shall (i) be discharged of any obligation to return the Insurance Payment, and (ii) if PG&E returned the proceeds itself, shall succeed to any right of the Insurers to the return of those proceeds from the respective Plaintiffs or any other party that was in possession or control of such proceeds.

In the event that this Agreement becomes void, the Parties agree not to offer into evidence or refer to this Agreement, including all of its terms, as well as any facts or circumstances surrounding the drafting or negotiations of this Agreement, in connection with any court proceeding, litigation, arbitration, or dispute.

## 13. HEADINGS

The Parties understand, agree, and acknowledge that all headings in this Agreement are for convenience of reference only and do not create any separate rights in and of themselves.

## 14. DISPUTE RESOLUTION

Should any of the Parties have a dispute, claim, or controversy arising out of or relating to the Agreement, or the breach, termination, enforcement, construction, interpretation, or validity thereof, the Parties will attempt to resolve such dispute in a non-binding mediation before a mediator mutually agreed to by the Parties within forty-five calendar days after any Party notifies the other(s), in writing, of its intent to seek mediation. If the Parties are unable to agree to a mediator within ten calendar days of a demand for mediation, JAMS shall appoint the mediator under the procedure in Rule 5 of the JAMS International Mediation Rules. If the dispute is not resolved by mediation, then the Parties shall submit the matter to binding arbitration before the arbitration panel in the Current Arbitration. A Party's request to commence mediation of a dispute under this paragraph shall toll and otherwise prevent the assertion of the running of any statute of limitations or other time-based defense that might be asserted by any Party in connection with that dispute.

## 15. CONSTRUCTION

Where appropriate to give meaning to a provision of this Agreement, each defined term stated in a singular form shall include plural form, and each defined term stated in a plural form shall include the singular form. Drafts of this Agreement are not admissible to interpret the terms of this Agreement or to prove the intent of any Party in connection with it. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

- 15 -

16. <u>INDEMNIFICATION</u>

a. Consistent with the Parties' intent that each Insurer's maximum liability under the Policies shall be limited to its several share of the Insurance Payment, PG&E agrees to indemnify each Insurer from any and all additional amounts that any of the Insurers is finally adjudicated to be liable for under a Policy that was released in Paragraph 3 above (collectively, the "Indemnified Claims"), including all amounts incurred by each Insurer in defense of any matter contemplated by this Section 16, or any settlement of an Indemnified Claim to which PG&E has consented, as well as any potential dispute concerning an Unpaid Balance (pursuant to Section 12.b.). For avoidance of doubt, indemnification does not extend to a claim for breach of this Agreement or to any claims between the Insurers and any reinsurers of the Policies.

b. If any claim that could become subject to the indemnity provision of Paragraph 16.a is asserted against an Insurer, then the Insurer shall (1) promptly forward to PG&E any demand, notice, summons, or other process received by it or its representatives, (2) keep PG&E apprised of the status of such claim, (3) notify PG&E of any proposed settlement offer in connection with any such claim, and (4) provide PG&E with the opportunity to participate fully in the defense of any such claim and in settlement negotiations. For the avoidance of doubt, PG&E shall have the right to settle such claim at any time, subject to the consent of the Insurer named in such claim, such consent not to be unreasonably withheld. Nothing in this paragraph shall constitute a waiver of the attorney-client privilege of the Insurer and/or PG&E in connection with such claim.

c. The Insurer shall not settle, admit liability for, or compromise any claim subject to the indemnity provision of Paragraph 16.a of this Agreement without the express written consent of PG&E, which consent shall not be unreasonably withheld.

d. In the event of an Indemnified Claim, PG&E shall indemnify by timely payment of the full amount of any judgment or any settlement entered into with the written consent of PG&E to the Insurer upon written request from the Insurer. Where a claim subject to this indemnity provision presents both matters that are covered by the provision and matters that are not, PG&E's obligations shall apply only to those parts of the claim that are solely covered by this provision.

e. With respect to any Indemnified Claim, the Insurer and PG&E agree to consult and act in good faith with respect to each other's legitimate rights and interests in responding to, defending, and resolving such matters. The Insurer shall select counsel to represent it with respect to any such claim, subject to PG&E's approval, which shall not be unreasonably withheld. PG&E shall pay reasonable defense costs and expenses of counsel retained to defend any Indemnified Claim with the following exceptions: PG&E's obligation to defend under this paragraph shall be limited to the payment of reasonable attorneys' fees and other expenses necessary to the Insurer's defense, incurred after written notice is given to PG&E, and PG&E's obligation to pay fees to defense counsel shall be limited to the rates which are actually paid by the Insurer to attorneys performing similar work in the ordinary course of business in the defense of similar actions in the community where the claim is being defended. PG&E shall not be required to pay as defense costs or to indemnify the Insurer for the salaries, benefits, expenses or other compensation that are paid by the Insurer to its officers, directors, in-house counsel or

- 16 -

other employees involved in assisting in the defense of any claims subject to this indemnity agreement, or unallocated expenses such as general overhead, administrative or internal expenses incurred by the Insurers in connection with such claims.

f.      Provided, however, the aggregate amount of payments that PG&E must make to an Insurer for an Indemnified Claim shall not exceed that Insurer's several share of the Insurance Payment, exclusive of amounts incurred by each Insurer in defense of any matter contemplated by this Section 16.

17. <u>MISCELLANEOUS</u>

a.      This Agreement shall be admissible for purposes of obtaining Bankruptcy Court approval, in connection with the resolution of the Noticed Matters, and to enforce its terms.  It shall not be admissible in any other proceeding.

b.      This Agreement shall inure to the benefit of, and be binding upon, each of the Parties and their respective parents, subsidiaries, affiliates, predecessors, successors and assigns, and the agents and other authorized representatives, beneficiaries, trustees, shareholders, officers, directors, employees, insurers, heirs, executors, trustees, partners, and joint venturers of any of the foregoing.

c.      All Parties represent and warrant that they have full power and authority to sign and deliver this Agreement and to perform any obligations hereunder, and that they have full power and authority to release and forever discharge the claims being released by them under this Agreement.

d.      Each of the Parties agrees to execute such further papers and documents, and to do such further acts or things as the other Party may reasonably request, as shall be reasonably necessary or proper in order to secure final approval of the Settlement and otherwise fulfill the terms and conditions of this Agreement or effectuate its purposes.  The Parties also agree to undertake reasonable efforts to cooperate in seeking approval of this Agreement from the Bankruptcy Court and in any appeals therefrom.  The Parties further agree that they will not act in any manner to impede the execution of this Agreement by, or reasonable performance of, any other Party.  The Insurers will use their best efforts to cooperate with and assist PG&E and the Individual Insureds in connection with the motion for Bankruptcy Court approval and any appeals therefrom including, if appropriate, the filing of pleadings or a joinder in support of the motion.

e.      This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties or their successors-in-interest.

f.      No delay or failure by either Party to exercise its rights under this Agreement shall be construed to be a waiver thereof, unless memorialized by written instrument signed by both Parties.  The agreed waiver of any covenant, condition, or agreement to be performed under this Agreement shall not be construed to be a continuing waiver of the same covenant, condition or agreement or the waiver of a different covenant, condition or agreement.  Furthermore, the agreed waiver of any breach of this Agreement shall not be considered to be the agreed waiver of a different or subsequent such breach.

- 17 -

g. The Parties agree that this Agreement may be executed in one or more original, photocopied, facsimile, or .pdf counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

WHEREFORE, the undersigned have executed this Agreement on the dates indicated below:

**Associated Electric & Gas Insurance Services Limited**

Signed: _____

Name: _Timothy Vazquez_

Title: _Senior Litigation Counsel_

Date: _7-6-22_

**Berkley Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Energy Insurance Mutual Limited**

Signed: _____

Name: _____

Title: _____

Date: _____

**Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company**

Signed: _____

Name: Diana M. Karnes

Title: Vice President

Date: _____

- 18 -

g. The Parties agree that this Agreement may be executed in one or more original, photocopied, facsimile, or .pdf counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

WHEREFORE, the undersigned have executed this Agreement on the dates indicated below:

**Associated Electric & Gas Insurance Services Limited**

Signed: _____

Name: _____

Title: _____

Date: _____

**Berkley Insurance Company**

Signed: *Michelle Klein*

Name: *Michelle Klein*

Title: *SVP - Chief Claims Officer*

Date: *July 6, 2022*

**Energy Insurance Mutual Limited**

Signed: _____

Name: _____

Title: _____

Date: _____

**Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company**

Signed: _____

Name: Diana M. Karnes

Title: Vice President

Date: _____

- 18 -

g.     The Parties agree that this Agreement may be executed in one or more original, photocopied, facsimile, or .pdf counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

WHEREFORE, the undersigned have executed this Agreement on the dates indicated below:

**Associated Electric & Gas Insurance Services Limited**

Signed:     _____

Name:  _____

Title:   _____

Date:  _____

**Berkley Insurance Company**

Signed:     _____

Name:  _____

Title:   _____

Date:  _____

**Energy Insurance Mutual Limited**

Signed:  _____

Name:    Ronald L. Ohren/Baker McKenzie LLP

Title:    Attorney for Energy Insurance Mutual

Date:    7/5/2020

**Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company**

Signed:     _____

Name:  Diana M. Karnes

Title:   Vice President

Date:  _____

- 18 -

g.     The Parties agree that this Agreement may be executed in one or more original, photocopied, facsimile, or .pdf counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

WHEREFORE, the undersigned have executed this Agreement on the dates indicated below:

**Associated Electric & Gas Insurance Services Limited**

Signed:     _____

Name:  _____

Title:   _____

Date: _____

**Berkley Insurance Company**

Signed:     _____

Name:  _____

Title:   _____

Date: _____

**Energy Insurance Mutual Limited**

Signed:     _____

Name:  _____

Title:   _____

Date: _____

**Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company**

Signed:     *Diana Karnes* _____

Name:  Diana M. Karnes

Title:   Vice President

Date: July 6, 2022 _____

- 18 -

**Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company**

Signed: _Steven l White_

Name: Steven White

Title: Vice President

Date: July 6, 2022

**Endurance Risk Solutions Assurance Co.**

Signed: _____

Name: _____

Title: _____

Date: _____

**Great Lakes Insurance SE**

Signed: _____

Name: _____

Title: _____

Date: _____

**Allianz Global Risks US Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Twin City Fire Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

- 19 -

**Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company**

Signed: _____

Name: Steven White

Title: Vice President

Date: _____

**Endurance Risk Solutions Assurance Co.**

Signed: _Jennifer L. Odrobina_

Name: _Jennifer L. Odrobina_

Title: _VP Technical Specialist_

Date: _07/06/2022_

**Great Lakes Insurance SE**

Signed: _____

Name: _____

Title: _____

Date: _____

**Allianz Global Risks US Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Twin City Fire Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

- 19 -

**Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company**

Signed: _____

Name:  Steven White

Title:   Vice President

Date: _____

**Endurance Risk Solutions Assurance Co.**

Signed: _____

Name: _____

Title: _____

Date: _____

**Great Lakes Insurance SE**

Signed:    Srehman    *SREHMAN* _____

Name:   Saba Rehman _____

Title:   Senior Claims Specialist _____

Date:  6th July 2022 _____

**Allianz Global Risks US Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Twin City Fire Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

- 19 -

**Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company**

Signed: _____

Name: Steven White

Title: Vice President

Date: _____

**Endurance Risk Solutions Assurance Co.**

Signed: _____

Name: _____

Title: _____

Date: _____

**Great Lakes Insurance SE**

Signed: _____

Name: _____

Title: _____

Date: _____

**Allianz Global Risks US Insurance Company**

Signed: *Angela R. Sivilli*

Name: ANGELA R. SIVILLI

Title: CHIEF CLAIMS OFFICE

Date: 6 July, 2022

**Twin City Fire Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

- 19 -

**Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company**

Signed: _____

Name: Steven White

Title: Vice President

Date: _____

**Endurance Risk Solutions Assurance Co.**

Signed: _____

Name: _____

Title: _____

Date: _____

**Great Lakes Insurance SE**

Signed: _____

Name: _____

Title: _____

Date: _____

**Allianz Global Risks US Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Twin City Fire Insurance Company**

Signed: *Lauren Levy*

Name: Lauren Levy

Title: Claims Technical Officer

Date: 7-6-22

- 19 -

**Continental Casualty Company**

Signed: _Phillip E. Wilson Jr._

Name: _Phillip E. Wilson Jr._

Title: _AVP, Claim Technical Officer_

Date: _July 6, 2022_

**Argonaut Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**PG&E Corporation**

Signed: _____

Name: _____

Title: _____

Date: _____

**Pacific Gas and Electric Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Lewis Chew**

Signed: _____

Date: _____

- 20 -

**Kevin Dasso**

Signed: _____

Date: _____

**Anthony F. Earley, Jr.**

Signed: *Anthony F Earley Jr*

Date: *July 14, 2022*

**Fred J. Fowler**

Signed: _____

Date: _____

**Maryellen C. Herringer**

Signed: _____

Date: _____

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

**Continental Casualty Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Argonaut Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**PG&E Corporation**

Signed: _____

Name: _____

Title: _____

Date: _____

**Pacific Gas and Electric Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Lewis Chew**

DocuSigned by:

*Lewis Chew*

Signed: _____
5B6E5B260C80493...

Date: _____

**Kevin Dasso**

Signed: _____

Date: _____

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _____

Date: _____

**Maryellen C. Herringer**

Signed: _____

Date: _____

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _Christopher P Johns_

Date: _7/14/2022_

**Julie M. Kane**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

- 23 -

**Kevin Dasso**

Signed: _Kevin J. Dasso_

Date: _7/12/22_

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _____

Date: _____

**Maryellen C. Herringer**

Signed: _____

Date: _____

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

Case: 19-30088    Doc# 13016-1    Filed: 09/29/22    Entered: 09/29/22 16:46:13    Page 32 of 54

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _Dinyar B. Mistry_

Date: _7/14/2022_

**Eric D. Mullins**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

Case: 19-30088    Doc# 13016-1    Filed: 09/29/22    Entered: 09/29/22 16:46:13    Page 33 of 54

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____ 7-10-22 _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

- 22 -

Signed: _____

Date: _____

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _Jad Q. Fowler_____

Date: _7/8/2022_____

**Maryellen C. Herringer**

Signed: _____

Date: _____

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

**Kevin Dasso**

Signed: _____

Date: _____

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _____

Date: _____

**Maryellen C. Herringer**

Signed: 

Date: _____

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

- 21 -

**Kevin Dasso**

Signed: _____

Date: _____

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _____

Date: _____

**Maryellen C. Herringer**

Signed: _____

Date: _____

**Patrick M. Hogan**

Signed: _____

DocuSigned by:

*Patrick M. Hogan*

8E78DC241291486...

Date: _____
7/18/2022 | 1:12:53 PM PDT

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

- 21 -

**Kevin Dasso**

Signed: _____

Date: _____

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _____

Date: _____

**Maryellen C. Herringer**

Signed: _____

Date: _____

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _Julie M Kane_

Date: _7/14/22_

**Roger H. Kimmel**

Signed: _____

Date: _____

- 21 -

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: Roger H Kimmel

Date: July 7, 2022

- 21 -

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____ _~~signature~~_____

Date: _____7/17/22_____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

- 22 -

**Steve E. Malnight**

Signed: _____

Date: _7/15/22_____

**Richard A. Meserve**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

- 22 -

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _~~Richard Meserve~~_____

Date: _July 7, 2022_____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

- 22 -

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _Forrest E. Miller_

Date: _7/8/2022_

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

- 22 -

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _Barbara L. Rambo_

Date: _7/8/22_

- 22 -

**Continental Casualty Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Argonaut Insurance Company**

Signed: _Patrick McGinley_____

Name: _____Patrick McGinley_____

Title: _____Vice President Claims_____

Date: _____July 8, 2022_____

**PG&E Corporation**

Signed: _____

Name: _____JOHN R. Simon_____

Title: _____EVP, General Counsel_____

Date: _____July 13, 2022_____

**Pacific Gas and Electric Company**

Signed: _____

Name: _____Brian M. Wong_____

Title: _____Vice President, General Counsel and Corporate Secretary_____

Date: _____July 12, 2022_____

**Lewis Chew**

Signed: _____

Date: _____

- 20 -

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

**Jason P. Wells**

Signed: _____

Date: _____

**Barry Lawson Williams**

Signed: _____

Date: _____

**Geisha J. Williams**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

- 23 -

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _Ro Parra_____
DocuSigned by:
AFE5D902FEDF4F6...

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

- 22 -

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

**Jason P. Wells**

Signed: _____

Date: _____

**Barry Lawson Williams**

Signed: _____

Date: _____

**Geisha J. Williams**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

☐

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

☐

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _Nicholas Stavropoulos_

Date: _JULY 14, 2022_

**Jason P. Wells**

Signed: _____

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

**Jason P. Wells**

Signed: _Jason P. Wells_____

Date: _7/14/22_____

**Barry Lawson Williams**

Signed: _____

Date: _____

**Geisha J. Williams**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

**David Thomason**

Signed: _____

Date: _____

- 23 -

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

**Jason P. Wells**

Signed: _____

Date: _____

**Barry Lawson Williams**

Signed: _____

Date: _____

**Geisha J. Williams**

Signed: _GJ Williams_____

Date: _July 18, 2022_____

**Richard C. Kelly**

Signed: _____

Date: _____

**David Thomason**

Signed: _____

Date: _____

- 23 -

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

**Jason P. Wells**

Signed: _____

Date: _____

**Barry Lawson Williams**

Signed: _____

Date: _____

**Geisha J. Williams**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

- 23 -

**EXHIBIT A**

1. <u>In re PG&E Corporation Securities Litigation</u>, Case No. 3:18-cv-03509, United States District Court, Northern District of California;

2. <u>York County on behalf of the County of York Retirement Fund, et al. v. Barbara L. Rambo, et al.</u>, Case No. 3:19-cv-00994, United States District Court, Northern District of California;

3. <u>Fireman's Retirement System of St. Louis v. Geisha J. Williams, et al.</u>, Case No. CGC-17-562591, Superior Court of California, San Francisco County;

4. <u>Jeffrey Lentine v. Geisha J. Williams, et al.</u>, Case No. CGC-17-562553, Superior Court of California, San Francisco County;

5. <u>City of Warren Police and Fire Retirement System v. Lewis Chew , et al.</u>, Case No. CGC-18-570820, Superior Court of California, San Francisco County;

6. <u>In re California North Bay Fire Derivative Litigation</u>, Case No. CGC-17-562591, Superior Court of California, San Francisco County;

7. <u>David C. Weston v. PG&E Corporation, et al.</u>, Case No. 3:18-cv-03509, United States District Court, Northern District of California;

8. <u>Jon Paul Moretti v. PG&E Corporation, et al.</u>, Case No. 3:18-cv-03545, United States District Court, Northern District of California;

9. <u>Oklahoma Firefighters Pension and Retirement System v. Lewis Chew, et al.</u>, Case No. 3:18-cv-04698, United States District Court, Northern District of California;

10. <u>Ron Williams v. Anthony F. Earley, Jr., et al.</u>, Case No. 3:18-cv-07128, United States District Court, Northern District of California;

11. <u>Rick Bowlinger v. Lewis Chew, et al.</u>, Case No. CGC-18-572326, Superior Court of the State of California, San Francisco County;

12. <u>Bob Hagberg v. Lewis Chew, et al.</u>, Case No. CGC-19-573190, Superior Court of the State of California, San Francisco County;

13. <u>Charles Blackburn v. Richard Meserve, et al.</u>, Case No. 3:19-cv-00501, United States District Court, Northern District of California;

14. <u>Vataj v. Johnson</u>, Case No. 4:19-cv-06996, United States District Court, Northern District of California;

15. <u>Justice John Trotter (Ret.), Trustee of the PG&E Fire Victim Trust v. Lewis Chew, et al.,</u> Case No. CGC-18-572326, Superior Court of the State of California for the County of San Francisco;

16. <u>In re PG&E Corporation,</u> Case No. 19-30088 (DM), United States Bankruptcy Court, Northern District of California and all proofs of claim filed by shareholders of PG&E in this proceeding.