**Exhibit B**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

WEIL:\98835202\1\67615.0015

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made and entered into by and between American International Reinsurance Company, Ltd. ("AIRC"), Liberty Insurance Underwriters, Inc. ("Liberty"), Starr Indemnity & Liability Company ("Starr"), and U.S. Specialty Insurance Company ("USIC"), on the one hand; and PG&E Corporation and Pacific Gas and Electric Company (collectively, "PG&E"), and Lewis Chew, Kevin Dasso, Anthony F. Earley, Jr., Fred J. Fowler, Maryellen C. Herringer, Patrick M. Hogan, Christopher P. Johns, Julie M. Kane, Richard C. Kelly, Roger H. Kimmel, Gregg L. Lemler, Steve E. Malnight, Richard A. Meserve, Forrest E. Miller, Dinyar B. Mistry, Eric D. Mullins, Rosendo G. Parra, Barbara L. Rambo, Anne Shen Smith, Nickolas Stavropoulos, David Thomason, Jason P. Wells, Barry Lawson Williams, and Geisha J. Williams (collectively, "Individual Insureds," and together with PG&E, the "Insureds"), on the other hand. AIRC, Liberty, Starr, USIC, PG&E, and the Individual Insureds are referred to herein collectively as the "Parties" and individually as "Party."

By the terms of this Agreement, the Parties agree as follows:

## RECITALS

WHEREAS, AIRC, Liberty, Starr, and USIC issued to PG&E for the policy period of May 20, 2017 to May 20, 2018 (the "2017 Policy Period") the following excess follow-form directors and officers liability policies (these policies are sometimes collectively referred to herein as the "2017 Policies," and these insurers, in their capacity as insurers issuing the 2017 Policies, are collectively referred to as the "2017 Insurers"):

   a. AIRC issued the sixth layer excess policy, numbered 17735565, with an aggregate limit of liability of $15 million (the "2017 AIRC Excess Policy");

   b. Liberty issued the eighth layer excess policy, numbered DONYABBATV002, with an aggregate limit of liability of $10 million (the "2017 Liberty Excess Policy");

   c. Starr issued the ninth layer excess policy, numbered 1000058800171, with an aggregate limit of liability of $10 million (the "2017 Starr Excess Policy"); and

   d. USIC issued the tenth layer excess policy, numbered 24-MGU-17-A40722, with an aggregate limit of liability of $10 million (the "2017 USIC Excess Policy").

WHEREAS, certain other insurers that issued director and officer liability insurance policies to PG&E (in that capacity, the "Other Settling Insurers," together with the 2017 Insurers, the "Insurers") have separately agreed to settle under similar terms to those in this Agreement ("Other Settling Insurers' Agreement") with respect to the following primary and excess directors and officers liability policies issued to PG&E for the 2017 Policy Period:

   a. Associated Electric & Gas Insurance Services Limited ("AEGIS") issued a primary directors and officers liability insurance policy to PG&E, numbered

DP5008417P (the "2017 Primary Policy"), with an aggregate limit of liability of $35 million, subject to a $5 million self-insured retention;

b. Energy Insurance Mutual Limited issued the first layer excess policy, numbered 293716-17DO, with an aggregate limit of liability of $25 million;

c. Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company issued the second layer excess policy, numbered DOE 1000005 04, with an aggregate limit of liability of $15 million;

d. Great Lakes Insurance SE issued the third layer excess policy, numbered B0509FINMW1700720, with an aggregate limit of liability of $15 million;

e. Endurance Risk Solutions Assurance Co. issued the fourth layer excess policy, numbered DOX10003965504, with an aggregate limit of liability of $25 million;

f. Berkley Insurance Company issued the fifth layer excess policy, numbered BPRO8026578, with an aggregate limit of liability of $15 million, and

g. Allianz Global Risks US Insurance Company issued the seventh layer excess policy for the 2017 Policy Period, numbered DOX 2009141, with an aggregate limit of liability of $25 million.

WHEREAS, PG&E and/or the Individual Insureds sought coverage under the 2017 Policies for certain lawsuits and other proceedings involving the Insureds' alleged failures and/or misrepresentations in connection with certain California wildfires, identified on Exhibit A hereto (the "Noticed Matters");

WHEREAS, the Noticed Matters include lawsuits against certain of the Individual Insureds alleging violations of certain federal securities laws that, by virtue of consolidation or otherwise, are now asserted in a single securities class action, *In re PG&E Corporation Securities Litigation*, Case No. 5:18-cv-03509-EJD (N.D. Cal.) (the "Securities Class Action");

WHEREAS, the Noticed Matters include proofs of claim filed by shareholders of PG&E in the bankruptcy proceeding entitled *In re PG&E Corporation*, United States Bankruptcy Court for the Northern District of California, San Francisco Division, Case No. 19-30088 (DM) (the "Bankruptcy Proceeding"), based upon alleged false and misleading statements with respect to PG&E securities (the "Proofs of Claim");

WHEREAS, shareholder derivative and direct actions were brought by certain plaintiffs against certain of PG&E's officers and directors, including certain of the Individual Insureds;

WHEREAS, pursuant to PG&E's Plan of Reorganization, PG&E assigned to the Fire Victim Trust "any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the Fires that the Debtors may have against . . . former directors and officers of the Debtors solely to the extent of any directors and officers' Side B Insurance Coverage," and the Fire Victim Trust pursued certain of those claims which, by virtue of consolidation or otherwise, now consist of the following matter: *Justice John Trotter (Ret.)*

- 2 -

*Trustee of the Fire Victim Trust v. Williams, et al.*, Lead Case No. CGC-17-562591 (consolidated with Case Nos. CGC-17-562553 and CGC-18-572326), Cal. Super. Ct., S.F. Cty. (the "FVT Action");

WHEREAS, the plaintiff in the FVT Action alleges, among other things, that certain Individual Insureds breached their fiduciary duties;

WHEREAS, PG&E incurred fees it contends constitute Defense Costs (as that term is defined in the 2017 Primary Policy) (hereinafter referred to as "Defense Costs") in funding the defense of the Noticed Matters and seeks reimbursement for those Defense Costs from the Insurers;

WHEREAS, PG&E has indemnified and continues to indemnify the Individual Insureds with respect to all Defense Costs incurred in the Noticed Matters;

WHEREAS, PG&E initiated an arbitration against the Insurers and the director and officer liability insurers issuing policies in effect from May 20, 2018 to May 20, 2020, entitled *PG&E Corporation et al. v. Associated Electric & Gas Insurance Services Limited, et al.*, CPR File No. G-20-56-S (the "Current Arbitration"), in which PG&E seeks insurance coverage for Defense Costs and indemnity in connection with the Noticed Matters;

WHEREAS, PG&E dismissed Liberty and AIRC from the Current Arbitration without prejudice, subject to an agreement whereby PG&E, Liberty, and/or AIRC can resolve any disputes concerning insurance coverage under the Liberty and/or AIRC Policies for the Noticed Matters separately before the panel presiding over the Current Arbitration ("Potential Future Arbitration," collectively with the Current Arbitration, the "Arbitrations");

WHEREAS, after mediation before Robert A. Meyer, PG&E and the pertinent Individual Insureds reached a settlement in principle with the plaintiffs in the Securities Class Action and with respect to certain of the Proofs of Claim for a payment of $300,000,000 (the "Securities Class Action Settlement"), and have executed a settlement agreement with the plaintiff in the FVT Action to settle the FVT Action for a payment of $117,000,000 (the "FVT Action Settlement," attached hereto as Exhibit B, and collectively with the Securities Class Action Settlement, the "Underlying Settlements"), which, if certain conditions are met, would resolve certain of the Proofs of Claim, Securities Class Action, and the FVT Action, with the exception of claimants who opt out;

WHEREAS, the Parties now wish to settle and finally terminate all insurance claims and controversies between or among them arising out of, connected with, or otherwise related to the 2017 Policies: (1) the Noticed Matters, (2) Defense Costs incurred in connection with the Noticed Matters, (3) all rights and obligations of the Insureds and the 2017 Insurers under the 2017 Policies with respect to the Noticed Matters, (4) the 2017 Policies, and (5) the Arbitration (as between the Parties), subject to the terms and conditions of this Agreement as set forth more fully herein, reserving all other rights; and

WHEREFORE, the Parties hereby agree to the terms of this Agreement, as follows:

- 3 -

## TERMS OF THE AGREEMENT

### 1. RECITALS

The recitals set forth herein are incorporated into and acknowledged as an integral part of this Agreement.

### 2. PAYMENT

a. In consideration of the releases and agreements described below, and other valuable consideration, the sufficiency of which is acknowledged, the sums set forth below (collectively, the "Insurance Payment") shall be paid severally by the 2017 Insurers to PG&E by wire transfer into accounts to be specified by PG&E, or by check and sent to an address and payee designated by PG&E, in accordance with the following Payment Schedule, within 30 days of the Effective Date as provided in Paragraph 11 herein, provided that upon execution of this Agreement by all Parties PG&E provides: (1) written wire transfer instructions on its letterhead and a Form W9 with respect to the payee(s) of the Insurance Payment and (2) provides to USIC a completed "Wire Transfer/ACH Credit Authorization Form."

**Payment Schedule**

| Insurer | Policy | Amount |
|---------|--------|--------|
| AIRC | 2017 AIRC Excess Policy | $15 million |
| Liberty | 2017 Liberty Excess Policy | $10 million |
| Starr | 2017 Starr Excess Policy | $10 million |
| USIC | 2017 USIC Excess Policy | $10 million |

b. The 2017 Insurers understand and agree that, in reliance on, and consistent with, their promise to pay the Insurance Payment under the Policies, the Insureds will not make or agree to any material modifications to the FVT Action Settlement (which Settlement is not subject to court approval); and that the Securities Class Action Settlement will provide (1) for payment into escrow no sooner than preliminary approval of the Securities Class Action Settlement by the District Court; and (2) that amounts will be maintained in the escrow account as provided for in that Settlement sufficient, when aggregated with amounts held in trust under the FVT Action Settlement, to repay the 2017 Insurers if repayment is required pursuant to the terms of this Agreement. This Agreement is binding, and the Insurance Payment shall be made, only upon the occurrence of the Effective Date, as defined in Paragraph 11, and subject to the terms of Paragraph 12.

### 3. MUTUAL RELEASES

- 4 -

a. Effective upon payment by the 2017 Insurers pursuant to Paragraph 2.a., and for other valuable consideration, the sufficiency of which is acknowledged, the Insureds, on behalf of themselves and all of their respective current, past, and future parents, subsidiaries, and affiliates, and all of their respective current, past, and future officers, directors, shareholders, employees, attorneys, agents, representatives, and contractors, spouses, immediate family members, heirs, executors, administrators, estates, trustees, receivers, and any trust of which any Individual Insured or any spouse or family member thereof serves as settlor, beneficiary, or trustee, and all of their respective predecessors, successors, and assigns (the "Insureds' Related Parties"), do hereby fully, completely, and forever release, acquit, remise, and discharge the 2017 Insurers and all of their respective current, past, and future parents, subsidiaries, and affiliates, and all of their respective current, past, and future officers, directors, shareholders, employees, attorneys, agents, representatives, insurers, reinsurers and contractors, and all of their respective predecessors, successors, and assigns (the "2017 Insurers' Related Parties"), from any and all claims, disputes, controversies, fees, costs and demands under the 2017 Policies (excepting any claims for breach of this Agreement), including but not limited to any extra-contractual or claims of bad faith, based upon, arising out of or relating to any, some, and/or all of the following: (1) the Noticed Matters, (2) Defense Costs incurred in connection with the Noticed Matters, (3) the acts, failures to act, omissions, misrepresentations, statements, misstatements, facts, events, or occurrences alleged or which could have been alleged in the Noticed Matters; (4) wildfires discussed in the Noticed Matters that occurred on or before May 20, 2018; and (5) the 2017 Policies, including without limitation any allegation that any Insurer breached any obligation under the 2017 Policies (subparts (1) through (5) above are collectively referred to as the "Released Matters").

b. Effective upon payment by the Insurers pursuant to Paragraph 2.a. and for other valuable consideration, the sufficiency of which is acknowledged, the 2017 Insurers, on behalf of themselves and all of the 2017 Insurers' Related Parties, do hereby fully, completely, and forever release, acquit, remise, and discharge the Insureds and the Insureds' Related Parties from any and all claims, disputes, controversies, fees, costs and demands under the 2017 Policies (excepting any claims for breach of this Agreement) including but not limited to any extra-contractual or claims of bad faith, based upon, arising out of or relating to any, some, and/or all of the following: (1) the Released Matters; (2) the 2017 Policies, including without limitation any allegation that any Insured breached any obligation under the 2017 Policies; and (3) based upon, arising out of or relating to any rights to recoup the payments made pursuant to this Agreement.

c. For avoidance of doubt, the releases in subparagraphs (a) and (b) above are limited to the director and officer liability insurance policies identified in the first recital of this Agreement and do not include any other insurance policy.

d. The Parties recognize and execute this Agreement knowing that they may discover facts and circumstances that relate to the subject of this Agreement and that, if known, might have affected their willingness to enter into this Agreement. Despite this, the Parties agree that this Agreement applies with equal force to any claims based on such unknown circumstances or facts and specifically waive the provisions of California Civil Code section 1542, which provides:

- 5 -

> **"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

This Agreement is additionally intended to waive any rights substantially similar in effect to the above-cited provision.

     e.     The Parties acknowledge that they may discover facts in addition to or different from those now known or believed to be true by them with respect to the Released Matters in Paragraph 3, but it is the intention of the Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all of the Released Matters, known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

     f.     The Parties understand, acknowledge, and agree that the releases given by the 2017 Insurers to the Insureds and the Insureds' Related Parties shall not apply to any claim the 2017 Insurers may have under any (re)insurance policy issued to them by any (re)insurer that is an Insurer hereunder or any parent, subsidiary or affiliate of any such Insurer.

4. <u>NO ADMISSIONS</u>

     a.     The Parties agree and acknowledge that this Agreement is entered into for the sole purpose of resolving contested claims and disputes, and avoiding the substantial costs, expenses, and uncertainties associated with such disputes.

     b.     Notwithstanding anything contained herein, this Agreement and compliance with this Agreement shall not be construed as an admission by any Party of any liability whatsoever, including whether there is any merit to the claims asserted: (1) in the Noticed Matters, (2) by the Insureds for Defense Costs (as that term is used in the 2017 Policies) incurred in connection with the Noticed Matters, (3) in the Arbitrations, or (4) with respect to any rights and obligations of the Insureds and the 2017 Insurers under the Policies with respect to the Noticed Matters, or any violation of the rights of any Party or violation of any order, law, statute, duty, or contract whatsoever.

     c.     It is also expressly agreed and acknowledged that neither the negotiation, nor execution, nor performance of any of the terms of this Agreement shall constitute or be construed as an admission by any Party of any liability, insurance coverage, lack of insurance coverage, or any fact or indication that any of the claims or charges made by any of the Parties against each other has any merit or lacks any merit. Without limitation of the foregoing, any characterization of the allegations in the Noticed Matters or the Current Arbitration in this Agreement or the Underlying Settlements shall not be binding on the Parties and shall not be admissible with respect to any other claim under any other insurance policy or agreement. The Parties will not make any representation, statement, or proffer of evidence or argument, to any court, tribunal, or third party, intentionally suggesting that this Agreement constitutes any such admission.

- 6 -

d.      Nothing herein is intended to, or shall, affect the claims for insurance coverage by PG&E and the Individual Insureds under any insurance policies other than the 2017 Policies.

e.      Nothing herein shall be deemed in any way to impair, restrict, enlarge, or otherwise alter the rights of PG&E or any Individual Insured or their successors or representatives arising under any indemnification right or contract vis-à-vis each other.

5.  NO ASSIGNMENT OF RELEASED CLAIMS

Except as set forth in the Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020 in the Bankruptcy Proceeding (Dkt. # 8053), the Parties represent and warrant that there has been, and will be, no assignment or other transfer of any interest in any claim which they may have against their respective releasees. If, contrary to this representation and warranty, any Party assigns or has assigned such rights to any other person or entity, that Party shall defend, indemnify, and hold harmless any other Party with respect to any claim or action brought by any assignee of any interest assigned contrary to this representation and warranty.

6.  NOTICE

Notice shall be given by electronic mail to each Party as follows:

**For PG&E:**

A. Anna Capelle
Managing Counsel, Litigation & Commercial Contracts
Pacific Gas and Electric Company Law Department
AECh@pge.com

With a copy to:

David B. Goodwin
Jeffrey M. Davidson
Covington & Burling LLP
dgoodwin@cov.com
jdavidson@cov.com

**For the Individual Insureds:**

Jonathan Youngwood
jyoungwood@stblaw.com
Stephen Blake
sblake@stblaw.com
SIMPSON THACHER & BARTLETT LLP

and

- 7 -

Steven Scholes
sscholes@mwe.com
MCDERMOTT WILL & EMERY LLP

With a copy to:

Robin Cohen
rcohen@cohenziffer.com
Adam Ziffer
aziffer@cohenziffer.com
COHEN ZIFFER FRENCHMAN & MCKENNA LLP

**For Starr:**

Claudia Oliveri
claudia.oliveri@starrcompanies.com

With a copy to:

Kevin F. Kieffer
kevin.kieffer@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP

**For USIC:**

Chris Tortorella
ctortorella@tmhcc.com

With a copy to:

Meredith E. Werner
meredith.werner@clydeco.us
CLYDE & CO. LLP

**For Liberty:**

Arlene Levitin
Arlene.Levitin@ironshore.com

With a copy to:

Ronald P. Schiller
rps@hangley.com
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

- 8 -

**For AIRC:**

>Jaime D. Acker
>Jaime_acker@aig.com

>With a copy to:

>Michael J. Hartley
>mhartley@bautelaw.com
>BAUTE CROCHETIERE HARTLEY & VELKEI LLP

### 7. THE ARBITRATION

The Parties will inform the arbitrators in the Current Arbitration of this Agreement and the Insurers affected by it, and will request that the arbitrators stay proceedings involving the Insurers in the Current Arbitration until the Effective Date set forth in Paragraph 11 and dismiss with prejudice the claims by PG&E and the Individual Insureds against the 2017 Insurers, and the claims by the 2017 Insurers against PG&E and the Individual Insureds, once the Effective Date occurs, with PG&E and each 2017 Insurer bearing its own fees and costs as to the proceedings between them. If, however, this Agreement does not become final and the Effective Date therefore does not occur, then (a) the Parties will instruct the arbitrators to recommence the Current Arbitration as between the Parties (to the extent they are currently parties to the Current Arbitration), and (b) either PG&E or Liberty and/or AIRC can pursue the Potential Future Arbitration, with (c) the Parties to such Arbitrations reserving all rights with respect to such Arbitrations. Nothing herein is intended to affect the claims in the Current Arbitration by PG&E and the Individual Insureds with respect to any insurance policy at issue in the Current Arbitration other than the 2017 Policies, and such claims may proceed notwithstanding the stay and/or dismissal of proceedings as between the Parties set forth above. Subject to Paragraph 12, this Agreement, following the Effective Date, will bind the Parties regardless of whether the Current Arbitration proceeds against other parties, and regardless of the outcome of that Current Arbitration.

### 8. JOINT DRAFTING

The language of this Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly for or against any Party, notwithstanding any rule of law that otherwise might apply. This Agreement shall be deemed to have been drafted by all Parties to this Agreement, and no Party or any attorney for any Party shall urge otherwise.

### 9. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the Parties, and supersedes any and all prior or contemporaneous agreements, promises, representations, or understandings, written or oral, between them relating to the subject matter of this Agreement; provided, however, that PG&E will use reasonable efforts to carry out the terms of this Agreement in conjunction with the Other Settling Insurers' Agreement, the 2017 Insurers will use reasonable

- 9 -

efforts to cooperate with PG&E in carrying out the terms of this Agreement, and nothing in this Agreement shall affect any of the Parties' rights and duties under any policies other than the 2017 Policies. Each Party represents that it has not relied on any representation not included in this Agreement, and that no other agreement(s), promise(s), representation(s), or understanding(s) shall be binding upon the Parties with respect to this subject matter unless contained in this Agreement.

## 10. ACKNOWLEDGMENT OF LEGAL ADVICE

The Parties agree and acknowledge that each of them enters this Agreement upon the independent legal advice of his, her, or its attorney, and that each of them has read, fully understands, and voluntarily accepts the terms and provisions of this Agreement.

## 11. EFFECTIVE DATE

This Agreement is subject to and contingent upon approval by the Bankruptcy Court in the Bankruptcy Proceeding. The Effective Date shall be the date on which the Bankruptcy Court in the Bankruptcy Proceeding approves this Agreement.

## 12. RESTORATION OF RIGHTS

Notwithstanding anything in this Agreement to the contrary, in the event that the Effective Date does not occur, this Agreement shall become void *ab initio*, and the Parties, as between one another, shall be restored to all rights, obligations, and terms and conditions of the 2017 Policies that any of them had prior to executing this Agreement. If the Effective Date does occur, but Bankruptcy Court approval for this Agreement is reversed in whole and the reversal order becomes final, then (a) this Agreement, including all releases contained herein, shall become void *ab initio*, and the Parties, as between one another, shall be restored to all rights and obligations, which any of them had prior to executing this Agreement, and (b) PG&E shall direct the plaintiffs in the respective matters, or any other party in possession or control of such funds, to return any Insurance Payment to the 2017 Insurers that made such payment within 30 days of the date that the reversal order becomes final. If the plaintiffs or any other party in possession or control of such funds has not returned any portion of the Insurance Payment (the "Unpaid Balance") to the 2017 Insurers within 30 days after the reversal order becomes final, then PG&E will pay the Unpaid Balance to the 2017 Insurers within 15 days after the 2017 Insurers notify PG&E that there is an Unpaid Balance. Upon those 2017 Insurers' receipt of the returned Insurance Payment, (i) PG&E shall be discharged of any obligation to return the Insurance Payment, and (ii) if PG&E returned the proceeds itself, PG&E shall succeed to any right of the 2017 Insurers to the return of those proceeds from the respective plaintiffs or any other party that was in possession or control of such proceeds.

If the Insureds do not ultimately incur in the aggregate Defense Costs and amounts to fund settlements or judgments in connection with the FVT Action and the Securities Class Action in excess of $272 million, then the Insureds shall return to the 2017 Insurers, in accordance with each of the 2017 Insurers' policies' respective limits of liability and attachment points, any increment not so incurred up to and including $45 million; provided, however, that in the event the Insureds are so required to refund monies, their rights under the 2017 Policies will

- 10 -

be reinstated to the extent of the amounts refunded and the releases herein will not apply to any such rights.

In the event that this Agreement becomes void, the Parties agree not to offer into evidence or refer to this Agreement, including any of its terms, as well as any facts or circumstances surrounding the drafting or negotiations of this Agreement, in connection with any court proceeding, litigation, arbitration, or dispute.

## 13. HEADINGS

The Parties understand, agree, and acknowledge that all headings in this Agreement are for convenience of reference only and do not create any separate rights in and of themselves.

## 14. DISPUTE RESOLUTION

Should any of the Parties have a dispute, claim, or controversy arising out of or relating to the Agreement, or the breach, termination, enforcement, construction, interpretation, or validity thereof, the Parties will attempt to resolve such dispute in a non-binding mediation before a mediator mutually agreed to by the Parties within forty-five calendar days after any Party notifies the other(s), in writing, of its intent to seek mediation. If the Parties are unable to agree to a mediator within ten calendar days of a demand for mediation, JAMS shall appoint the mediator under the procedure in Rule 5 of the JAMS International Mediation Rules. If the dispute is not resolved by mediation, then the Parties shall submit the matter to binding arbitration before the arbitration panel in the Current Arbitration. A Party's request to commence mediation of a dispute under this paragraph shall toll and otherwise prevent the assertion of the running of any statute of limitations or other time-based defense that might be asserted by any Party in connection with that dispute.

## 15. CONSTRUCTION

Where appropriate to give meaning to a provision of this Agreement, each defined term stated in a singular form shall include the plural form, and each defined term stated in a plural form shall include the singular form. Drafts of this Agreement are not admissible to interpret the terms of this Agreement or to prove the intent of any Party in connection with it. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

## 16. INDEMNIFICATION

a.      Consistent with the Parties' intent that each 2017 Insurer's maximum liability under the 2017 Policies shall be limited to its several share of the Insurance Payment, PG&E agrees to indemnify each 2017 Insurer from any and all additional amounts that any of the 2017 Insurers is finally adjudicated to be liable for under any of the 2017 Policies released in Paragraph 3 above (collectively, the "Indemnified Claims"), including all amounts incurred by each 2017 Insurer in defense of any matter contemplated by this Section 16, or any settlement of an Indemnified Claim to which PG&E has consented as well as any potential dispute concerning an Unpaid Balance (pursuant to Paragraph 12). For avoidance of doubt, indemnification does

- 11 -

not extend to a claim for breach of this Agreement or to any claims between the 2017 Insurers and any reinsurers of the Policies.

      b.     If any claim that could become subject to the indemnity provision of Paragraph 16.a is asserted against a 2017 Insurer, then that 2017 Insurer shall (1) promptly forward to PG&E any demand, notice, summons, or other process received by it or its representatives, (2) keep PG&E apprised of the status of such claim, (3) notify PG&E of any proposed settlement offer in connection with any such claim, and (4) provide PG&E with the opportunity to participate fully in the defense of any such claim and in settlement negotiations. For the avoidance of doubt, PG&E shall have the right to settle such claim at any time, subject to the consent of the 2017 Insurer named in such claim, such consent not to be unreasonably withheld. Nothing in this paragraph shall constitute a waiver of the attorney-client privilege of the 2017 Insurer and/or PG&E in connection with such claim.

      c.     Such 2017 Insurer shall not settle, admit liability for, or compromise any claim subject to the indemnity provision of Paragraph 16.a of this Agreement without the express written consent of PG&E, which consent shall not be unreasonably withheld.

      d.     In the event of an Indemnified Claim involving a 2017 Insurer, PG&E shall indemnify by timely payment of the full amount of any judgment or any settlement entered into with the written consent of PG&E to the 2017 Insurer upon written request from such 2017 Insurer. Where a claim subject to this indemnity provision presents both matters that are covered by the provision and matters that are not, PG&E's obligations shall apply only to those parts of the claim that are solely covered by this provision.

      e.     With respect to any Indemnified Claim involving a 2017 Insurer, the 2017 Insurer and PG&E agree to consult and act in good faith with respect to each other's legitimate rights and interests in responding to, defending, and resolving such matters. The 2017 Insurer shall select counsel to represent it with respect to any such claim, subject to PG&E's approval, which shall not be unreasonably withheld. PG&E shall pay reasonable defense costs and expenses of counsel retained to defend any Indemnified Claim with the following exceptions: PG&E's obligation to defend under this paragraph shall be limited to the payment of reasonable attorneys' fees and other expenses necessary to the 2017 Insurer's defense, incurred after written notice is given to PG&E, and PG&E's obligation to pay fees to defense counsel shall be limited to the rates which are actually paid by such 2017 Insurer to attorneys performing similar work in the ordinary course of business in the defense of similar actions in the community where the claim is being defended. PG&E shall not be required to pay as defense costs or to indemnify the 2017 Insurer for the salaries, benefits, expenses, or other compensation that are paid by the 2017 Insurer to its officers, directors, in-house counsel or other employees involved in assisting in the defense of any claims subject to this indemnity agreement, or unallocated expenses such as general overhead, administrative, or internal expenses incurred by the 2017 Insurers in connection with such claims.

      f.     Provided, however, the aggregate amount of payments that PG&E must make to a 2017 Insurer for an Indemnified Claim shall not exceed that 2017 Insurer's several share of the Insurance Payment, exclusive of amounts incurred by each 2017 Insurer in defense of any matter contemplated by this Section 16.

- 12 -

17. MISCELLANEOUS

a. This Agreement shall be admissible for purposes of obtaining Bankruptcy Court approval, in connection with the resolution of the Noticed Matters, and to enforce its terms. It shall not be admissible in any other proceeding.

b. This Agreement shall inure to the benefit of, and be binding upon, each of the Parties and their respective parents, subsidiaries, affiliates, predecessors, successors and assigns, and the agents and other authorized representatives, beneficiaries, trustees, shareholders, officers, directors, employees, insurers, heirs, executors, trustees, partners, and joint venturers of any of the foregoing.

c. All Parties represent and warrant that they have full power and authority to sign and deliver this Agreement and to perform any obligations hereunder, and that they have full power and authority to release and forever discharge the claims being released by them under this Agreement.

d. Each of the Parties agrees to execute such further papers and documents, and to do such further acts or things as the other Party may reasonably request, as shall be reasonably necessary or proper in order to secure final approval of the Agreement and otherwise fulfill the terms and conditions of this Agreement or effectuate its purposes. The Parties also agree to undertake reasonable efforts to cooperate in seeking approval of this Agreement from the Bankruptcy Court and in any appeals therefrom. The Parties further agree that they will not act in any manner to impede the execution of this Agreement by, or reasonable performance of, any other Party. The Insurers will use their best efforts to cooperate with and assist PG&E and the Individual Insureds in connection with the motion for Bankruptcy Court approval and any appeals therefrom including, if appropriate, the filing of pleadings or a joinder in support of the motion.

e. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties or their respective successors-in-interest.

f. No delay or failure by either Party to exercise its rights under this Agreement shall be construed to be a waiver thereof, unless memorialized by written instrument signed by both Parties. The agreed waiver of any covenant, condition, or agreement to be performed under this Agreement shall not be construed to be a continuing waiver of the same covenant, condition or agreement or the waiver of a different covenant, condition, or agreement. Furthermore, the agreed waiver of any breach of this Agreement shall not be considered to be the agreed waiver of a different or subsequent such breach.

g. The Parties agree that this Agreement may be executed in one or more original, photocopied, facsimile, or .pdf counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

WHEREFORE, the undersigned have executed this Agreement on the dates indicated below:

- 13 -

**PG&E Corporation**

Signed: E-SIGNED by John Simon on 2022-08-03 20:43:42 GMT

Name: John Simon

Title: EVP, General Counsel & Chief Ethics & Compliance Officer

Date: August 3, 2022

**Pacific Gas and Electric Company**

Signed: E-SIGNED by Brian Wong on 2022-08-04 04:41:41 GMT

Name: Brian Wong

Title: Vice President, General Counsel and Corporate Secretary

Date: August 04, 2022

**Lewis Chew**

Signed: _____

Date: _____

**Kevin Dasso**

Signed: _____

Date: _____

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _____

Date: _____

**Maryellen C. Herringer**

Signed: _____

Date: _____

- 15 -

**PG&E Corporation**

Signed: _____

Name: _____

Title: _____

Date: _____

**Pacific Gas and Electric Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Lewis Chew**

Signed: _____

Date: _____

**Kevin Dasso**

Signed: *Kevin J. Dasso*

Date: *August 7, 2022*

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _____

Date: _____

**Maryellen C. Herringer**

Signed: _____

Date: _____

- 15 -

**PG&E Corporation**

Signed _____

Name _____

Title _____

Date _____

**Pacific Gas and Electric Company**

Signed _____

Name _____

Title _____

Date _____

**Lewis Chew**

Signed _____

Date _____

**Kevin Dasso**

Signed _____

Date _____

Anthony F. Earley, Jr.

Signed *Anthony F. Earley Jr.*

Date __8/6/22__

**Fred J. Fowler**

Signed _____

Date _____

**Maryellen C. Herringer**

Signed _____

Date _____

- 15 -

**Forrest E. Miller**

Signed: _Forrest E. Miller_

Date: _8-1-22_

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

- 17 -

**PG&E Corporation**

Signed: _____

Name: _____

Title: _____

Date: _____

**Pacific Gas and Electric Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Lewis Chew**

Signed: _____

Date: _____

**Kevin Dasso**

Signed: _____

Date: _____

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _Fred J. Fowler_

Date: _8/1/2022_

**Maryellen C. Herringer**

Signed: _____

Date: _____

- 15 -

DocuSign Envelope ID: 571F6B3E-017C-4D73-9B71-D7EB2ABAC9AE

**Patrick M. Hogan**

Signed: _Patrick M. Hogan_ _____

Date: August 4, 2022 _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

**Starr Indemnity & Liability Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**U.S. Specialty Insurance Company**

Signed: _Chris Tortorella_

Name: _Chris Tortorella_

Title: _Authorized Representative_

Date: _8/2/22_

**American International Reinsurance Company, Ltd.**

Signed: _____

Name: _____

Title: _____

Date: _____

**Liberty Insurance Underwriters, Inc.**

Signed: _____

Name: _____

Title: _____

Date: _____

- 14 -

**Starr Indemnity & Liability Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**U.S. Specialty Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**American International Reinsurance Company, Ltd.**

Signed: _____

Name: _____

Title: _____

Date: _____

**Liberty Insurance Underwriters, Inc.**

Signed: _____

Name: Arlene Levitin

Title: Claims Officer, LIUI/Ironshore

Date: 7/29/2022

- 14 -

DocuSign Envelope ID: A83DE8FC-2839-42EE-99FE-CD7E15479B07

**Starr Indemnity & Liability Company**

Signed: _Steve Blakey_

Name: _Steve Blakey_

Title: _President_

Date: _August 4, 2022_

**U.S. Specialty Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**American International Reinsurance Company, Ltd.**

Signed: _____

Name: _____

Title: _____

Date: _____

**Liberty Insurance Underwriters, Inc.**

Signed: _____

Name: _____

Title: _____

Date: _____

- 14 -

**Starr Indemnity & Liability Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**U.S. Specialty Insurance Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**American International Reinsurance Company, Ltd.**

Signed: Kimberly Huebner   Digitally signed by Kimberly Huebner
                           Date: 2022.08.03 12:16:24 -04'00'

Name: Kimberly J. Huebner

Title: Vice President - Technical Claims, D&O Public

Date: August 3, 2022

**Liberty Insurance Underwriters, Inc.**

Signed: _____

Name: _____

Title: _____

Date: _____

- 14 -

DocuSign Envelope ID: 9FC8DBAC-E330-47CA-BEA0-074DD6F73BBC

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

*Christopher P. Johns*
DocuSigned by:
0606261A4227402...

Date: August 8, 2022

**Julie M. Kane**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

- 16 -

DocuSign Envelope ID: 680894FF-077C-4151-9019-B12832A6DAA9

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: Aug. 5, 2022 _____

**Richard C. Kelly**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

- 16 -

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _Roger H Kimmel_

Date: _August 5, 2022_

**Gregg L. Lemler**

Signed: _____

Date: _____

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

- 16 -

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: 8/5/2022 _____

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

- 16 -

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Steve E. Malnight**

Signed: _[signature]_____

Date: ____8/5/22_____

**Richard A. Meserve**

Signed: _____

Date: _____

- 16 -

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _Dinyar B Mistry_

Date: _8/3/2022_

**Eric D. Mullins**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

- 17 -

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____ 8 - 1 - 22 _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: *Nicholas Stavropoulos*

Date: August 3, 2022

- 17 -

Sent from my iPhone

**David Thomason**

Signed: _David Thomason_ ____

Date: _____

**Jason P. Wells**

Signed:  _____

Date: _____

**Barry Lawson Williams**

Signed:  _____

Date: _____

**Geisha J. Williams**

Signed:  _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed:  DocuSigned by:
*Barbara L. Rambo*
—9FE16D41314A49BC...

Date: _____

**Anne Shen Smith**

Signed: _____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

- 17 -

**Forrest E. Miller**

Signed: _____

Date: _____

**Dinyar B. Mistry**

Signed: _____

Date: _____

**Eric D. Mullins**

Signed: _____

Date: _____

**Rosendo G. Parra**

Signed: _____

Date: _____

**Barbara L. Rambo**

Signed: _____

Date: _____

**Anne Shen Smith**

Signed: _Anne Shen Smith_____

Date: _____

**Nickolas Stavropoulos**

Signed: _____

Date: _____

**David Thomason**

Signed: _____

Date: _____

**Jason P. Wells**

Signed: _Jason P. Wells_ _____

Date: 08/05/22 _____

**Barry Lawson Williams**

Signed: _____

Date: _____

**Geisha J. Williams**

Signed: _____

Date: _____

**David Thomason**

Signed: _____

Date: _____

**Jason P. Wells**

Signed: _____

Date: _____

**Barry Lawson Williams**

Signed: _____

Date: _____

**Geisha J. Williams**

Signed: _____

Date: _____ 8/5/2022 _____

- 18 -

**David Thomason**

Signed: _____

Date: _____

**Jason P. Wells**

Signed: _____

Date: _____

**Barry Lawson Williams**

Signed: Barry Lawson Williams

Date: 8 | 1 | 2022

**Geisha J. Williams**

Signed: _____

**PG&E Corporation**

Signed: _____

Name: _____

Title: _____

Date: _____

**Pacific Gas and Electric Company**

Signed: _____

Name: _____

Title: _____

Date: _____

**Lewis Chew**

Signed: _Lewis Chew_____

Date: _____

**Kevin Dasso**

Signed: _____

Date: _____

**Anthony F. Earley, Jr.**

Signed: _____

Date: _____

**Fred J. Fowler**

Signed: _____

Date: _____

**Maryellen C. Herringer**

Signed: _____

Date: _____

- 15 -

**PG&E Corporation**

Signed:     _____

Name:     _____

Title:     _____

Date: _____

**Pacific Gas and Electric Company**

Signed:     _____

Name:     _____

Title:     _____

Date: _____

**Lewis Chew**

Signed:     _____

Date: _____

**Kevin Dasso**

Signed:     _____

Date: _____

**Anthony F. Earley, Jr.**

Signed:     _____

Date: _____

**Fred J. Fowler**

Signed:     _____

Date: _____

**Maryellen C. Herringer**

Signed:     

Date: _____

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: *Richard C. kelly*

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: _____

Date: _____

- 16 -

**Patrick M. Hogan**

Signed: _____

Date: _____

**Christopher P. Johns**

Signed: _____

Date: _____

**Julie M. Kane**

Signed: _____

Date: _____

**Richard C. Kelly**

Signed: _____

Date: _____

**Roger H. Kimmel**

Signed: _____

Date: _____

**Gregg L. Lemler**

Signed: _____

Date: _____

**Steve E. Malnight**

Signed: _____

Date: _____

**Richard A. Meserve**

Signed: DocuSigned by: *Richard Meserve* _____
       8D833EDBF85E47E...

Date: _____

**EXHIBIT A**

1. In re PG&E Corporation Securities Litigation, Case No. 5:18-cv-03509, United States District Court, Northern District of California;

2. York County on behalf of the County of York Retirement Fund, et al. v. Barbara L. Rambo, et al., Case No. 3:19-cv-00994, United States District Court, Northern District of California;

3. Fireman's Retirement System of St. Louis v. Geisha J. Williams, et al., Case No. CGC-17-562591, Superior Court of California, San Francisco County;

4. Jeffrey Lentine v. Geisha J. Williams, et al., Case No. CGC-17-562553, Superior Court of California, San Francisco County;

5. City of Warren Police and Fire Retirement System v. Lewis Chew, et al., Case No. CGC-18-570820, Superior Court of California, San Francisco County;

6. In re California North Bay Fire Derivative Litigation, Case No. CGC-17-562591, Superior Court of California, San Francisco County;

7. David C. Weston v. PG&E Corporation, et al., Case No. 3:18-cv-03509, United States District Court, Northern District of California;

8. Jon Paul Moretti v. PG&E Corporation, et al., Case No. 3:18-cv-03545, United States District Court, Northern District of California;

9. Oklahoma Firefighters Pension and Retirement System v. Lewis Chew, et al., Case No. 3:18-cv-04698, United States District Court, Northern District of California;

10. Ron Williams v. Anthony F. Earley, Jr., et al., Case No. 3:18-cv-07128, United States District Court, Northern District of California;

11. Rick Bowlinger v. Lewis Chew, et al., Case No. CGC-18-572326, Superior Court of the State of California, San Francisco County;

12. Bob Hagberg v. Lewis Chew, et al., Case No. CGC-19-573190, Superior Court of the State of California, San Francisco County;

13. Charles Blackburn v. Richard Meserve, et al., Case No. 3:19-cv-00501, United States District Court, Northern District of California;

14. Vataj v. Johnson, Case No. 4:19-cv-06996, United States District Court, Northern District of California;

- 19 -

15. Justice John Trotter (Ret.), Trustee of the PG&E Fire Victim Trust v. Lewis Chew, et al., Case No. CGC-18-572326, Superior Court of the State of California for the County of San Francisco;

16. In re PG&E Corporation, Case No. 19-30088 (DM), United States Bankruptcy Court, Northern District of California and all proofs of claim filed by shareholders of PG&E in this proceeding.

- 20 -

# EXHIBIT B

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into by and among (1) Plaintiff Cathy Yanni ("Plaintiff"), solely in her capacity as the Trustee of, and acting on behalf of, the PG&E Fire Victim Trust (the "FVT"), assignee of certain claims from non-parties PG&E Corporation and Pacific Gas and Electric Company (together, "PG&E" or "Debtors"); (2) Defendants Lewis Chew, Fred J. Fowler, Maryellen C. Herringer, Richard C. Kelly, Roger H. Kimmel, Richard A. Meserve, Forrest E. Miller, Eric D. Mullins, Rosendo G. Parra, Barbara L. Rambo, Anne Shen Smith, and Barry Lawson Williams (collectively, the "Director Defendants"); (3) Defendants Kevin Dasso, Anthony F. Earley, Jr., Patrick M. Hogan, Christopher P. Johns, Julie M. Kane, Gregg L. Lemler, Steve E. Malnight, Dinyar B. Mistry, Jason P. Wells, and Geisha J. Williams (collectively, the "Officer Defendants" and together with the Director Defendants, the "Defendants"); and (4) PG&E. Plaintiff, Director Defendants, Officer Defendants, and PG&E are referred to herein collectively as the "Parties" and individually as a "Party."

## Recitals

A.      On January 29, 2019, PG&E filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Proceeding"), Hon. Dennis Montali presiding (the "Bankruptcy Court").

B.      On June 20, 2020, the Bankruptcy Court entered the Confirmation Order confirming PG&E's Plan of Reorganization (the "Plan"), and the Plan became effective on July 1, 2020.

C.      The FVT was established by the Plan to, among other purposes, administer, process, settle, resolve, satisfy, and pay certain claims arising out of the 2015 Butte Fire, the 2017 North Bay Fires, and the 2018 Camp Fire, and prosecute or settle the Assigned Rights and Causes of Action (as defined in Section 1.8 of the Plan).

D.      As part of the Assigned Rights and Causes of Action, the Plan provided for PG&E's assignment to the FVT of "any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the Fires that the Debtors may have against . . . former directors and officers of the Debtors solely to the extent of any directors and officers' Side B Insurance Coverage."

E.      On February 24, 2021, Plaintiff Justice John Trotter (Ret.) filed a first amended complaint against the Officer Defendants and Director Defendants in the Superior Court of California, San Francisco County, captioned *Trotter v. Williams, et al.* (Lead Case No. CGC-17-562591) (the "Action"), for breaches of fiduciary duty, with one count relating to the 2017 North Bay Fires and one count relating to the 2018 Camp Fire.

F.      The Parties have agreed to fully and finally settle and compromise all disputes that exist or may exist between them related to the Action and thereby dispose of all claims that have been or could have been raised on the terms and conditions set forth herein.

G.     PG&E and Defendants have executed an agreement with certain of their D&O Insurance Carriers (defined below) providing, upon Bankruptcy Court approval, for those D&O Insurance Carriers to pay amounts on behalf of the Defendants that are sufficient to fund the Settlement Amount (defined below).  In PG&E's motion to the Bankruptcy Court seeking approval of PG&E's agreements with certain of its D&O Insurance Carriers, PG&E will inform the Bankruptcy Court that, subject to the terms of this Agreement, $117 million of the money received from the D&O Insurance Carriers will be used to fund the Settlement Amount.

**Agreement**

In consideration of the mutual promises, covenants, and agreements set forth herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, and subject to the terms and conditions set forth below, the Parties desire to, and hereby do, resolve their differences related to the Action and agree as follows:

1.     **Settlement Amount**.

a.     In consideration of the agreements and obligations contained in this Agreement, including the complete settlement of all disputes that exist or may exist between the Parties related to the Action, and the complete release of the dispute and claims as set forth in Paragraph 4 below, the Defendants and PG&E will cause to be paid the total lump sum of $117,000,000 in cash (the "Settlement Amount") to the Trust Account (defined below) within thirty (30) days of the Effective Date (defined below), with the Settlement Amount and any earnings thereon to be paid to the FVT subject to the terms herein.

b.     The Parties agree that the payment will be made solely from proceeds from Side B Insurance Coverage, as defined in the Plan, and that the Director Defendants, the Officer Defendants, and PG&E shall not under any circumstance be obligated to pay or have liability for the Settlement Amount.

c.     "Trust Account" means the separate interest-bearing account at a national banking institution to be identified by the FVT, established by the FVT to hold the Settlement Amount in trust, and subject to the jurisdiction of the Bankruptcy Court, until the Settlement Amount is released in accordance with the terms of this Agreement.

d.     The Settlement Amount shall remain in the Trust Account and shall be held in trust, and cannot be disbursed, comingled with other funds, distributed, or otherwise altered by or at the direction of any Party, until either of the following occurs:

i.     In the event that the Bankruptcy Court's order approving the settlements by and between PG&E and certain of its D&O Insurance Carriers, as defined below (the "Insurance Order") becomes a Final Order (as defined in Paragraph 4.a) (the "Insurance Final Order"), the FVT shall have authority to disburse the Settlement Amount and all earnings thereon from the Trust Account to the FVT.

ii.     In the event that the Insurance Order is reversed on appeal and that reversal order becomes a Final Order, the FVT shall cause the Settlement Amount, and all

earnings thereon, to be returned from the Trust Account to the D&O Insurance Carriers, within thirty (30) days from the date the reversal order becomes a Final Order.

2. **Effective Date**. The Effective Date of this Agreement shall be the date on which all of the following conditions have been satisfied:

a. Full execution of this Agreement by the Parties.

b. The Bankruptcy Court has issued the Insurance Order.

c. Dismissal of *Hagberg v. Chew* (Case No. CGC-19-573190) (Superior Court of California, San Francisco) (the "Derivative Action").

d. An order from the Bankruptcy Court approving the proposed class settlement of all securities claims that could have been asserted or have been asserted against the Debtors or any of the named defendants in the action entitled, *In re PG&E Corporation Securities Litigation* (Case No. 3:18-cv-03509-EJD) (N.D. Cal.) (the "Securities Action"), including all securities claims asserted against PG&E in the Bankruptcy Proceeding; provided, however, that in the event that PG&E and the defendants in the Securities Action fail to (i) execute a written stipulation for the proposed class action settlement (the "Securities Settlement Agreement") within forty-five (45) days of the execution of this Agreement, or (ii) file a motion within twenty-one (21) days of the execution of the Securities Settlement Agreement to obtain Bankruptcy Court approval of the Securities Settlement Agreement, this condition (d) shall cease to be a condition.

3. **Bankruptcy Court Approvals**.

a. The Parties will use their reasonable best efforts to obtain entry of any court orders necessary to satisfy the conditions to the Effective Date above. Any motion(s) to obtain any necessary court orders pursuant to this Agreement shall be filed within twenty-one (21) days of the execution of the Securities Settlement Agreement, or sixty-six (66) days of the execution of the Agreement in this Action, whichever is earlier.

b. PG&E agrees to use reasonable best efforts to obtain a Bankruptcy Court order approving the Securities Settlement Agreement within sixty (60) days of the filing of the Securities Settlement Agreement approval motion.

4. **Releases By The FVT**.

a. Defined Terms[1]

i. The term "Person" or "Persons" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, trustee, beneficiary, unincorporated association, government or any political

---

[1] Defined terms in this and all other Paragraphs shall have the same meaning throughout the Agreement regardless of where they are defined.

subdivision or agency thereof, and any business or legal entity, and their spouses, heirs, predecessors, successors, representatives, or assignees.

ii. The term "FVT Released Claims" means any and all claims, including both known claims and Unknown Claims (defined below), held at any point from the beginning of time to the Effective Date of the Agreement, arising out of, relating to, or in connection with (i) the rights, claims, and causes of action that PG&E assigned to the FVT under the Plan which have been or could have been asserted by any FVT's Releasing Person (defined below) against any FVT Released Person (defined below), including but not limited to the facts, transactions, acts, occurrences, statements, representations, and/or omissions that were or could have been asserted in the Action; and/or (ii) any claims related to the pursuit and/or defense of the Action, including but not limited to claims for malicious prosecution, litigation sanctions, breach or violation of the Plan, or breach of PG&E's assignment of claims or the implied covenant of good faith and fair dealing in connection therewith. Notwithstanding anything herein to the contrary, the FVT Released Claims shall not include: (i) securities claims asserted in the Securities Action and/or held by beneficiaries of the FVT that are based on the purchase or acquisition of PG&E securities from April 29, 2015 through November 15, 2018, both dates inclusive; and (ii) any and all rights, claims, causes of action, and/or defenses that were assigned to the FVT against vendors, suppliers, third party contractors and consultants, and their insurers, pursuant to Sections 1.8 and 6.8(f) of the Plan and Section 18(g) of the Confirmation Order.

iii. The term "FVT Released Persons" means each and all of: (i) the Director Defendants and their Related Persons; (ii) the Officer Defendants and their Related Persons; (iii) PG&E and its Related Persons; and (iv) the D&O Insurance Carriers (defined below) and their Related Persons.

iv. The term "FVT's Releasing Persons" means the FVT, Plaintiff, and each and all of their Related Persons.

v. The term "Related Persons" means each of a Person's beneficiaries, immediate family members and current, former, or future parents, subsidiaries, associates, affiliates, partners, joint venturers, officers, directors, principals, shareholders, members, agents, representatives, employees, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, trustees, engineers, insurers, co-insurers, reinsurers, heirs, assigns, executors, general or limited partners or partnerships, personal or legal representatives, estates, administrators, predecessors, successors, and advisors acting on behalf of that Person.

vi. The term "D&O Insurance Carriers" means Associated Electric & Gas Insurance Services Limited, Swiss Re Corporate Solutions America Insurance Corporation, f/k/a North American Specialty Insurance Company, Energy Insurance Services, Inc., Great Lakes Insurance SE, Endurance Risk Solutions Assurance Co., Berkley Insurance Company, Allianz Global Risks US Insurance Company, Starr Indemnity & Liability Company, U.S. Specialty Insurance Company, Houston Casualty Company, Lloyd's Syndicate Barbican D&O US Consortium 2018 9679 BAR 1955,

Lloyd's Syndicate 033HIS, Lloyd's Syndicate 1221NAV, Lloyd's Syndicate 1919CVS, Lloyd's Syndicate 1967WRB, Continental Casualty Company, Twin City Fire Insurance Company, Argonaut Insurance Company, American International Reinsurance Company, Ltd., Liberty Insurance Underwriters, Inc., Energy Insurance Mutual Limited, and ACE American Insurance Company.

vii.     The term "Unknown Claims" means any and all claims assigned by PG&E to the FVT which were alleged or could have been alleged against the Defendants in the Action by the FVT and any and all claims that could have been alleged against PG&E related to the Action, including claims which the FVT's Releasing Persons do not know or suspect to exist in their favor at the time of the release of the FVT Released Persons, including claims which, if known by the FVT's Releasing Persons might have affected Plaintiff's decision to settle, to settle on the terms of the settlement, and to release the FVT Released Persons.

viii.     The term "Final Order" means an order when (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in all respects and the prescribed time, if any, for commencing any further appeal has expired.

b.     <u>Release Of The Director Defendants, The Officer Defendants, PG&E, And The D&O Insurance Carriers</u>

i.     Effective upon the FVT's receipt of the Settlement Amount from the Trust Account, the FVT's Releasing Persons will, and hereby do, release the Director Defendants and their Related Persons, the Officer Defendants and their Related Persons, PG&E and its Related Persons, and the D&O Insurance Carriers and their Related Persons[2] from any and all FVT Released Claims, subject to Paragraph 4.a.ii of this Agreement. For the avoidance of doubt, and consistent with Paragraph 4.a.ii of this Agreement, nothing herein shall be construed to provide for the release, by the FVT's Releasing Persons, of such vendors, suppliers, third party contractors and consultants, and their insurers, against which the FVT has asserted or may assert any of the Assigned Rights and Causes of Action.

ii.     Notwithstanding anything herein to the contrary, nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms as set forth in this Agreement.

iii.     Notwithstanding anything herein to the contrary, nothing herein shall be deemed in any way to impair, enlarge, restrict, or otherwise alter the rights of PG&E or any Director Defendants or Officer Defendants or their successors or

---

[2] The release of the D&O Insurance Carriers and their Related Persons applies to the Side A-B-C D&O policies in effect from May 20, 2017-May 20, 2018 and from May 20, 2018-May 20, 2020, and not to any other PG&E insurance policies.

representatives arising under any indemnification right or contract or any policy or contract of insurance.

    c.    <u>No Assignment Of Released Claims</u>

    i.    The FVT represents and warrants that there has been, and will be, no assignment or other transfer of any interest in any claim which it may have against the FVT Released Persons.  If, contrary to this representation and warranty, the FVT assigns or has assigned such rights to any other person or entity, the FVT shall defend, indemnify and hold harmless any other Party with respect to any claim or action brought by any assignee of any interest assigned contrary to this representation and warranty.

    d.    <u>Claims for Contribution Or Indemnity</u>

    i.    The Parties acknowledge that the FVT is the assignee of certain PG&E claims and that any claims assigned to the FVT may be subject to defenses or cross-claims which may be asserted against PG&E or the Defendants, specifically including, but not limited to comparative fault, indemnification, and/or contribution.  The Parties agree that such claims, if proven, would reduce the amount of any award to the FVT by the amount of the judgment on a claim, if any, allocated to PG&E and/or the Defendants.  For the avoidance of doubt, this provision does not relate to any claims made by third parties against PG&E for affirmative relief and/or damages that are unrelated to the Assigned Rights and Causes of Action.

**5.**    **<u>Release By Defendants And PG&E</u>.**

    a.    The term "Defendants' Releasing Persons" means the Defendants and each and all of their Related Persons.

    b.    The term "PG&E's Releasing Persons" means PG&E and each and all of its Related Persons.

    c.    Effective upon the FVT's receipt of the Settlement Amount from the Trust Account, the Defendants' Releasing Persons and PG&E's Releasing Persons will, and hereby do, release, discharge, and extinguish any and all claims related to the Action against the FVT and its Related Persons (the "D&O/PG&E Released Claims").  For the avoidance of doubt, nothing herein releases claims by PG&E and/or the Defendants against the D&O Insurance Carriers in their capacities as such.

**6.**    **<u>Release By Defendants Of PG&E</u>**.  Upon the FVT's receipt of the Settlement Amount from the Trust Account, the Defendants' Releasing Persons will, and hereby do, release, discharge, and extinguish any and all claims regarding the FVT Released Claims, other than the Defendants' claims for fees and expenses in connection with the Action, against PG&E and its Related Persons (the "D&O Released Claims").  For the avoidance of doubt, this release is not intended to and will not supersede any other indemnification rights or agreements, or limit any other present or future claims by Defendants for indemnification by PG&E.

7. **Waiver Of California Civil Code Section 1542**.

      a.    The term "Releasing Persons" means, collectively, FVT's Releasing Persons, Defendants' Releasing Persons, and PG&E's Releasing Persons.

      b.    With respect to any and all FVT Released Claims, D&O/PG&E Released Claims, and D&O Released Claims (collectively, the "Released Claims"), the Parties agree that, upon the FVT's receipt of the Settlement Amount from the Trust Account, the Releasing Persons shall expressly waive the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

      c.    The Releasing Persons acknowledge that they may discover facts in addition to or different from those now known or believed to be true by them with respect to the Released Claims, but it is the intention of the Parties to completely, fully, finally, and forever compromise, settle, release, discharge, and extinguish any and all of the Released Claims known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

8. **Dismissal With Prejudice**.

      a.    The Parties shall inform the Court presiding over the Action of this Agreement and shall use best efforts to have the Court stay the Action until the earlier of when the Action is dismissed pursuant to Paragraph 8.b or a Restoration of Rights occurs pursuant to Paragraph 10. In any event, no Party will take any steps to prosecute or defend the Action prior to a Restoration of Rights pursuant to Paragraph 10.

      b.    The Plaintiff shall dismiss the Action with prejudice and without costs within three (3) days of receiving the Settlement Amount from the Trust Account. The Parties agree to cooperate in obtaining such dismissal of the Action, and any remaining related derivative actions that have not already been dismissed, including the Derivative Action.

9. **Duty Of Cooperation**. The Parties shall at all times fully cooperate with each other and shall cause their respective agents and attorneys to cooperate in a prompt and timely manner in connection with the performance of all obligations under this Agreement, including specifically the Parties' efforts to obtain the Insurance Final Order. This Agreement shall be subject to disclosure for the purpose of obtaining the Insurance Final Order and to the arbitration panel presiding over the arbitration between PG&E and the D&O Insurance Carriers. The Parties shall execute and deliver such additional documents or certificates, and take such further action as may be necessary or otherwise reasonably requested of them to fully perform the provisions of this Agreement or implement the provisions of this Agreement fully and effectively.

10. **Restoration Of Rights**.

a. Notwithstanding anything in this Agreement to the contrary, in the event that (i) the Effective Date does not occur within seven (7) months of the execution of this Agreement and the FVT does not provide notice to PG&E and the Defendants extending that deadline, or (ii) the Insurance Order is reversed, in whole or in part, and the reversal order becomes a Final Order and thus the Insurance Order does not become a Final Order, this Agreement, including all releases contained herein, shall become void *ab initio*, and the Parties, as between one another, shall be restored to all rights and obligations which any of them had prior to executing this Agreement.

b. Pursuant to Paragraph 1.d.ii above, in the event that this Agreement becomes void, the FVT agrees that the FVT shall cause the Settlement Amount, and all earnings thereon, to be returned from the Trust Account to the D&O Insurance Carriers as specified by PG&E, within thirty (30) days from the date the reversal order becomes a Final Order.

c. In the event that this Agreement becomes void, the Parties agree that this Agreement, including all of its terms, as well as any facts or circumstances surrounding the drafting or negotiations of this Agreement, shall not be used in connection with any court proceeding, litigation, dispute or otherwise.

11. **No Admissions Of Wrongdoing Or Liability**. Notwithstanding anything contained herein, this Agreement and compliance with this Agreement shall not be construed as an admission by any Party of any liability whatsoever, any merit in the claims asserted in the Action, or any violation of the rights of any Party or violation of any order, law, statute, duty, or contract whatsoever. It is also expressly agreed and acknowledged that neither the negotiation, execution, nor performance of any of the terms of this Agreement shall constitute or be construed as an admission by any Party of any liability, insurance coverage, lack of insurance coverage, or any fact or indication that any of the claims or charges made by any of the Parties against each other has any merit or lacks any merit. The Parties hereto agree that they shall not make any representation, statement, or proffer of evidence or argument, to any court, tribunal, or third party intentionally suggesting that this Agreement constitutes any such admission.

12. **Notice**. Notice shall be given by electronic mail to each Party as follows:

**For the FVT and Plaintiff:**

Frank M. Pitre
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
fpitre@cpmlegal.com
(650) 697-6000

**For the Director Defendants:**

Stephen P. Blake
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
sblake@stblaw.com
(650) 251-5000

**For the Officer Defendants:**

Steven Scholes
MCDERMOTT, WILL & EMERY LLP
44 West Lake Street
Chicago, IL 60606
sscholes@mwe.com
(312) 984-7762

**For PG&E:**

James E. Brandt
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
james.brandt@lw.com
(212) 906-1278

**13.** __Joint Drafting__.  The language of this Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly for or against any Party.  This Agreement shall be deemed to have been drafted by all Parties to this Agreement, and no Party or any attorney for any Party shall urge otherwise.

**14.** __Acknowledgement Of Legal Advice__.  The Parties agree and acknowledge that each of them enters this Agreement upon the independent legal advice of his, her, or its attorney, and that each of them has read, fully understands, and voluntarily accepts the terms and provisions of this Agreement.

**15.** __Headings__.  The Parties understand, agree, and acknowledge that all headings in this Agreement are for convenience of reference only and do not create any separate rights in and of themselves.

**16.** __Costs And Attorneys' Fees__.  The Parties shall each be responsible for their own attorneys' fees, costs, and expenses incurred by them in connection with the Action, including the preparation, negotiation, and drafting of this Agreement.  Each of the FVT and Defendants waives any and all claims against any other Party and the FVT waives any and all claims against PG&E, for the recovery of the same.  For the avoidance of doubt, nothing in this Agreement is intended to or shall foreclose the Defendants from seeking payment from PG&E for their fees

and costs incurred defending the Action or PG&E from seeking reimbursement from its D&O Insurance Carriers for any such fees and costs.

17. **Inurement**. The Parties agree that this Agreement shall inure to the benefit of, and be binding upon, each of the Parties and their respective parents, subsidiaries, affiliates, predecessors, successors and assigns, and the agents and other authorized representatives, beneficiaries, trustees, shareholders, officers, directors, employees, insurers, heirs, executors, trustees, partners, and joint venturers of any of the foregoing.

18. **Amendment**. No amendment, modification, or addition to this Agreement shall be valid unless it is in a writing executed by the Parties.

19. **Governing Law**. This Agreement shall be governed by the laws of the State of California, without regard to any principles of conflicts of laws.

20. **No Waiver**. No delay or failure by any Party to exercise its rights under this Agreement shall be construed to be a waiver thereof, unless memorialized by written instrument signed by the Parties. The agreed waiver of any covenant, condition, or agreement to be performed under this Agreement shall not be construed to be a continuing waiver of the same covenant, condition or agreement or the waiver of a different covenant, condition or agreement. Furthermore, the agreed waiver of any breach of this Agreement shall not be considered to be the agreed waiver of a different or subsequent such breach.

21. **Integration**. This Agreement constitutes the entire agreement between the Parties, and supersedes any and all prior or contemporaneous agreements, promises, representations, or understandings, written or oral, between them relating to the subject matter of this Agreement, including the Term Sheet dated May 25, 2022. Each Party represents that it has not relied on any representation not included in this Agreement, and that there are no other agreements, promises, representations, or understandings that shall be binding upon the Parties with respect to this subject matter unless contained in this Agreement. The Releasing Persons expressly agree this Agreement will remain valid and effective even if the facts they now believe to be true turn out to be false or different than what they now believe, and expressly assume the risk of any such difference.

22. **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same Agreement. For purposes of execution, facsimile signatures and signature pages sent through electronic mail shall be considered effective and binding.

23. **Authority**. Any individual signing this Agreement on behalf of any Party represents and warrants that he or she has full authority to do so.

24. **Dispute Resolution**. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, shall be resolved by confidential binding arbitration by Robert A. Meyer, and shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures in place at the time any arbitration demand is filed.

**AGREED TO AND ACCEPTED:**

DATED: _July 25_, 2022

COTCHETT, PITRE & McCARTHY, LLP
Frank M. Pitre
Mark C. Molumphy

_____
Frank M. Pitre

_Counsel for Plaintiff Justice John Trotter (Ret.), Trustee of the PG&E Fire Victim Trust_

DATED: _____, 2022

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood
Stephen P. Blake

_____
Stephen P. Blake

_Attorneys for Director Defendants Lewis Chew, Fred J. Fowler, Maryellen C. Herringer, Richard C. Kelly, Roger H. Kimmel, Richard A. Meserve, Forrest E. Miller, Eric D. Mullins, Rosendo G. Parra, Barbara L. Rambo, Anne Shen Smith, and Barry Lawson Williams_

DATED: _____, 2022

MCDERMOTT, WILL & EMERY LLP
Steven Scholes
Jason Strabo
Paul M.G. Helms

_____
Steven Scholes

_Attorneys for Officer Defendants Kevin Dasso, Anthony F. Earley, Jr., Patrick M. Hogan, Christopher P. Johns, Gregg L. Lemler, Steve E. Malnight, and Geisha J. Williams_

**AGREED TO AND ACCEPTED:**

DATED: _____, 2022

COTCHETT, PITRE & McCARTHY, LLP
Frank M. Pitre
Mark C. Molumphy

_____
Frank M. Pitre

*Counsel for Plaintiff Justice John Trotter (Ret.),*
*Trustee of the PG&E Fire Victim Trust*

DATED: 7/25/, 2022

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood
Stephen P. Blake

_____
Stephen P. Blake

*Attorneys for Director Defendants Lewis*
*Chew, Fred J. Fowler, Maryellen C.*
*Herringer, Richard C. Kelly, Roger H.*
*Kimmel, Richard A. Meserve, Forrest E.*
*Miller, Eric D. Mullins, Rosendo G. Parra,*
*Barbara L. Rambo, Anne Shen Smith, and*
*Barry Lawson Williams*

DATED: _____, 2022

MCDERMOTT, WILL & EMERY LLP
Steven Scholes
Jason Strabo
Paul M.G. Helms

_____
Steven Scholes

*Attorneys for Officer Defendants Kevin Dasso,*
*Anthony F. Earley, Jr., Patrick M. Hogan,*
*Christopher P. Johns, Gregg L. Lemler, Steve*
*E. Malnight, and Geisha J. Williams*

**AGREED TO AND ACCEPTED:**

DATED: _____, 2022      COTCHETT, PITRE & McCARTHY, LLP
Frank M. Pitre
Mark C. Molumphy

_____
Frank M. Pitre

*Counsel for Plaintiff Justice John Trotter (Ret.), Trustee of the PG&E Fire Victim Trust*

DATED: _____, 2022      SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood
Stephen P. Blake

_____
Stephen P. Blake

*Attorneys for Director Defendants Lewis Chew, Fred J. Fowler, Maryellen C. Herringer, Richard C. Kelly, Roger H. Kimmel, Richard A. Meserve, Forrest E. Miller, Eric D. Mullins, Rosendo G. Parra, Barbara L. Rambo, Anne Shen Smith, and Barry Lawson Williams*

DATED: __July 26___, 2022      MCDERMOTT, WILL & EMERY LLP
Steven Scholes
Jason Strabo
Paul M.G. Helms

_____
Steven Scholes

*Attorneys for Officer Defendants Kevin Dasso, Anthony F. Earley, Jr., Patrick M. Hogan, Christopher P. Johns, Gregg L. Lemler, Steve E. Malnight, and Geisha J. Williams*

DATED: _____July 25___, 2022       LATHAM & WATKINS LLP
James E. Brandt
Michael J. Reiss

_____
James E. Brandt

*Counsel for Non-Parties PG&E Corporation
and Pacific Gas and Electric Company*