| | |
|---|---|
| 1 | WEIL, GOTSHAL & MANGES LLP |
| 2 | Richard W. Slack (*pro hac vice*)<br>(richard.slack@weil.com) |
| 3 | Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com) |
| 4 | Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com) |
| 5 | 767 Fifth Avenue<br>New York, NY 10153-0119 |
| 6 | Tel: 212 310 8000 |
| 7 | Fax: 212 310 8007 |
| 8 | KELLER BENVENUTTI KIM LLP |
| 9 | Jane Kim (#298192)<br>(jkim@kbkllp.com) |
| 10 | David A. Taylor (#247433)<br>(dtaylor@kbkllp.com) |
| 11 | Thomas B. Rupp (#278041)<br>(trupp@kbkllp.com) |
| 12 | 650 California Street, Suite 1900<br>San Francisco, CA 94108 |
| 13 | Tel: (415) 496-6723<br>Fax: (415) 636-9251 |

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DECLARATION OF DAVID B. GOODWIN IN SUPPORT OF REORGANIZED DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING SETTLEMENTS RESOLVING DISPUTES WITH CERTAIN INSURERS, AND (II) GRANTING RELATED RELIEF**<br><br>Date: October 27, 2022<br>Time: 11:00 am (Pacific Time)<br>Place: (Tele/Videoconference Only)<br>      United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102 |

I, David B. Goodwin, declare as follows:

1. I am a partner of Covington & Burling LLP and counsel for Pacific Gas and Electric Company (the "**Utility**") and PG&E Corporation ("**PG&E**" and, together with the Utility, the "**Debtors**" or "**Reorganized Debtors**," as applicable).

2. I am authorized to submit this Declaration on behalf of the Reorganized Debtors in connection with the Reorganized Debtors' motion seeking approval of two settlement agreements with PG&E's directors and officers liability insurers (the "**9019 Motion**"). The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or information provided to me by other members of my team working under my supervision and direction. If called upon to do so, I would testify competently to the truth of the facts set forth in this Declaration.

3. I have reviewed and am familiar with PG&E's 2017 and 2018 directors and officers liability insurance policies (the "**D&O Policies**"), which are the subject of the 9019 Motion. Each of the D&O Policies is written on a "claim first made" basis and, generally speaking, covers: (i) PG&E's former directors and officers, for any non-indemnifiable losses incurred in their capacity as officers or directors of PG&E (the "**Side A Coverage**"); (ii) PG&E, for any losses arising from the indemnification obligations it owes to the directors and officers for claims against them (the "**Side B Coverage**"); and (iii) PG&E, for any losses it incurs as a result of securities claims made directly against PG&E (sometimes referred to as entity liability coverage) (the "**Side C Coverage**").

4. The shared coverage available under each year of the D&O Policies is subject to an *aggregate* limit of liability of a total of $200 million for each D&O Policy year, such that when proceeds are paid out under any of Side A, Side B, or Side C, the total remaining shared coverage available under that year of D&O Policies is reduced by the amount of that payment. Thus, any payment made under any of the Side A, Side B, or Side C Coverages reduces the coverage that is available under all sides of the respective D&O Policy year from which those proceeds are drawn. In total, the two years of D&O Policies with Side A, Side B, and Side C Coverage provide for an

2

Case: 19-30088    Doc# 13018    Filed: 09/29/22    Entered: 09/29/22 16:48:30    Page 2 of 5

aggregate of $400 million in total limits of liability.

5. PG&E has taken the position that the D&O Policies cover the following claims: (1) securities claims brought in the action entitled *In re PG&E Corp. Securities Litigation*, No. 5:18-cv-03509-EJD (N.D. Cal.) (the "**Securities Litigation**") as well as securities proofs of claim filed in the Chapter 11 Cases against the Debtors (the "**Securities Claims**"); and (2) claims for reimbursement to the Debtors for amounts paid pursuant to their indemnification obligations to their former directors and officers in connection with certain claims (the "**FVT Claims**") assigned by the Debtors under the Plan to the PG&E Fire Victim Trust (the "**FVT**") related to the 2017 North Bay Fires or the 2018 Camp Fire (the "**D&O Action**").

6. PG&E submitted timely claims under the D&O Policies to cover defense costs and potential liabilities arising from the allegations in the Securities Litigation and the Securities Claims, all of which are based on alleged misstatements and omissions made in connection with the events allegedly leading to the 2017 North Bay Fires or the 2018 Camp Fire. The insurers issuing the D&O Policies to PG&E (collectively, the "**D&O Insurers**") were also given timely notice of the FVT Claims.

7. The D&O Insurers have taken the position that the claims arising out of the 2017 North Bay Fires and the claims arising out of the 2018 Camp Fire share a "common nexus," such that all of the claims fall exclusively within PG&E's 2017 tower of D&O Policies (the "**2017 Tower**") and do not trigger the additional $200 million in D&O coverage provided by PG&E's 2018 tower of D&O Policies (the "**2018 Tower**"). PG&E disagrees with the D&O Insurers' position and, pursuant to the mandatory dispute resolution procedures set forth in the primary D&O Policy in the 2017 Tower and the 2018 Tower, commenced a confidential arbitration, *PG&E Corporation et al. v. Associated Electric & Gas Insurance Services Limited, et al.*, CPR File No. G-20-56-S (the "**Arbitration**"), to seek a ruling (among other things) that the claims arising out of the 2018 Camp Fire are covered by PG&E's 2018 Tower.

8. To that end, the parties to the Arbitration briefed at length the issues described in the preceding paragraph. The arbitration panel held a hearing in October 2021 and took the matter under submission. However, before the arbitration panel issued its award, the arbitration panel stayed the

3

proceedings while settlement negotiations took place and continued the stay pending approval of the settlements with the D&O Insurers described below (the "**Insurance Settlements**").

9. The D&O Insurers participating in the Insurance Settlements (the "**Settling Insurers**") have agreed to pay an aggregate of $272 million under the D&O Policies ($200 million under the 2017 Tower and $72 million under the 2018 Tower) to resolve the claims in the Arbitration concerning those D&O Policies. Certain D&O Insurers have declined to settle claims under four of the D&O Policies in the 2018 Tower, with total limits of liability of $40 million, and the Arbitration will continue with respect to those policies.

10. As part of the consideration provided to the Settling Insurers for the Insurance Settlements, the Reorganized Debtors and the individual insureds agreed to release the Settling Insurers from all further claims under the 2017 Tower and under the D&O Policies in the 2018 Tower that are the subject of the Insurance Settlements, and to request dismissal of the Arbitration against the Settling Insurers with respect to the D&O Policies that are the subject of an Insurance Settlements. The Insurance Settlements thus provide the Reorganized Debtors with certainty of a minimum amount of insurance proceeds available to settle the Securities Litigation, the Securities Claims and the FVT Claims.

11. The Insurance Settlements were the product of good faith, arm's length negotiations, and I believe the Insurance Settlements represent a reasonable compromise and will facilitate the settlement of the D&O Action, which is conditioned on the approval by this Court of the Insurance Settlements. I actively participated in the negotiations with the Settling Insurers that led to the Insurance Settlements. The Insurance Settlements were negotiated at arm's length with the help of an experienced mediator, Robert Meyer from JAMS. While the mediation process is by its nature confidential, the parties and the mediator engaged in numerous meetings, phone calls and emails over several months. The parties exchanged numerous proposals and drafts and ultimately agreed on a settlement that was a compromise from each party's original position.

4

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief and that this declaration is executed this 29th day of September 2022 in San Francisco, California.

/s/ *David B. Goodwin*
David B. Goodwin