Steven J. Skikos (SBN 148110)
Gregory T. Skikos (SBN 176531)
**SKIKOS CRAWFORD SKIKOS & JOSEPH LLP**
One Sansome Street, Suite 2830
San Francisco, CA 94104
Telephone: 415-546-7300
Facsimile: 415-546-7301
sskikos@skikos.com
gskikos@skikos.com

Tarik Naber (SBN 255665)
**SKIKOS CRAWFORD SKIKOS & JOSEPH LLP**
701A Fourth Street #209
Santa Rosa, CA 95404
Telephone: 707-757-7610
Facsimile: 415-546-7301
tnaber@skikos.com

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION**<br><br>    -and-<br><br>    vs.<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>          **Debtors**.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE** |

PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 1 of 17

**Partial Response of Steven J. Skikos, Esq. to William B. Abrams' Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New Evidence**

This Brief responds to a portion of the filing by William B. Abrams ("Abrams") entitled, *Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New Evidence* (Doc. No. 12766) ("Abrams Brief"). Abrams seeks to open discovery against the Fire Victim Trust ("FVT")[1] and JAMS Neutrals based upon what Abrams describes as a "pattern of mismanagement."[2] In support, the Abrams Brief makes several references to my law firm and my role in the Pelvic Mesh Multi-District Litigations in West Virginia ("Pelvic Mesh MDL").[3] The destructive representations contained in these two pages (pages 10 and 11) are demonstrably false, and their fallacy is easily verifiable.[4] The Abrams Brief contains representations that I personally held litigation leadership positions I never held,[5] was the subject of motions I was never a party to and that had nothing to do with me, and was named in lawsuits in which I was never named or involved with in any way.[6] The Abrams Brief also wrongly packs into these two pages strings of inflammatory phrases from pleadings and articles that were *not* directed at me or my firm. Yet, Abrams misrepresents them as if they were findings of fact; indeed, evidence of a "pattern" that gives rise to the need to open discovery against the FVT.[7] Lawyer or not, no one should file a

---

[1] See generally Doc. No. 12766, Mot. of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New Evidence, In Re: PG&E Corporation and PG&E Co., No. 19-30088 (Bankr. N.D. Cal. Aug. 18, 2022); See also, Doc. No. 12766 at 10:3-5("However, there is more evidence as well as a pattern of mismanagement and related influence of JAMS neutrals which should prompt supplemental discovery within this case.").
[2] Id. at 10:3-5.
[3] Id. at 10:7 and 11:5-6 (The Pelvic Mesh MDLs included Boston Scientific, Ethicon, American Medical Systems, Bard, Cook, Neomedic, and Coloplast).
[4] Id. at 10:1-11:9.
[5] Id. at 10:7-8 ("Skikos, Crawford, Skikos & Joseph were lead Plaintiffs' Counsel.").
[6] Id. at 10:7-11:2 ("Skikos, Crawford, Skikos & Joseph were lead Plaintiffs' Counsel. Within this case it was found that costs were rarely disclosed. Another party to this case, Stephen A. Sheller, stated that "it must be readily evident to any reasonable fact-finder that the FCC 's Petition is nothing more than a "smoking gun" admission by its authors and by its supporting proponents, that the FCC has been, unfortunately, hijacked by a small band of profiteers, outrageously demanding unsupervised use of the Common Benefit Fund as their personal ATM…women who received approximately $8B in settlements filing suit against their attorneys for improperly enriching themselves with excessive fees").
[7] Id. at 11:2-4 ("It is exactly this type of litigation that we should look to avoid in this case through a fulsome discovery process pursuant to Bankruptcy Rule 2004.").

2.

PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 2 of 17

pleading in federal court with so many scandalous misrepresentations – a pleading that came completely out of the blue. Adding to that, Abrams incessantly publishes his briefs to the media, governmental agencies, lawyers, and fire victims requesting public support for his positions. Some people are misled by Abrams and now wrongly believe that my law firm, which represents thousands of fire victims in the FVT, was sued in another major case for misconduct and for charging excessive fees and was additionally discovered to mismanage the Pelvic Mesh MDL with the FVT's current Trustee. As demonstrated below, none of this is true. Yet, Abrams continues to encourage fire victims and government officials to rely upon his legal opinions and act in support of his conclusions – which, very unfortunately, requires that I provide the actual record.

A.  **The Pelvic Mesh Multi-District Litigation (MDL)**

The Abrams Brief misrepresents to this Court that my firm was "lead Plaintiffs' Counsel"[8] in the Pelvic Mesh MDLs, including the *Ethicon, Inc. Pelvic Repair System Products Liability Litigation* (the "Pelvic Mesh MDL"). The main pleading referenced several times in the Abrams Brief in support of his motion was filed by the Sheller Firm (the "Sheller Pleading"). [9] The Sheller Pleading supposedly exposes a "pattern of mismanagement"[10] while I acted as lead counsel and a member of the MDL Pelvic Mesh Fee and Cost Committee ("FCC").[11] Abrams claims that this pattern of mismanagement, which was supposedly in concert with the current Trustee of the FVT, was sufficiently egregious to give rise to this Court granting open discovery on the FVT.[12] I was not lead Plaintiffs' Counsel in the Pelvic Mesh MDLs.[13] I was not on the FCC in the Pelvic Mesh

---

[8] Id. at 10:7-8 ("Skikos, Crawford, Skikos & Joseph were lead Plaintiffs' Counsel.").

[9] See Doc. No. 7483, MDL Plaintiffs' Counsel Sheller P.C.'s Response In Opposition to the Common Benefit Fee And Cost Committee's (FCC's) Petition For an Award of Common Benefit Attorneys' Fees and Expenses In Re: Ethicon, Inc, Pelvic Repair System Products Liability Litigation at 2, No. 2:12-md-02327 (S.D.W. Va. Jan. 8, 2019) (Attached to the Declaration of Steve Skikos as Exhibit A is a true and correct full copy of this filing—the "Sheller Pleading".).

[10] See Doc. No. 12766, supra note 1 at 10:3-5 ("However, there is more evidence as well as a pattern of mismanagement and related influence of JAMS neutrals which should prompt supplemental discovery within this case.").

[11] See Doc. No. 12766, supra note 1 at 10:7-8 ("Skikos, Crawford, Skikos & Joseph were lead Plaintiffs' Counsel.").

[12] See Doc. No. 12766, supra note 1 at 10:3-5 ("However, there is more evidence as well as a pattern of mismanagement and related influence of JAMS neutrals which should prompt supplemental discovery within this case.").

[13] See Pretrial Order No. 211, Order Establishing Criteria for Applications to MDL 2327 Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit and Appointment of Common Benefit Fee and Cost Committee, In Re: Ethicon, Inc, Pelvic Repair System Products Liability Litigation at 3-4, No. 2:12-md-02327 (S.D.W. Va. Jan. 15, 2016) (Attached to the Declaration of Steve Skikos as Exhibit B is a true and correct full copy of the Common Benefit Order Appointing the Fee Committee in the Pelvic Mesh Cases. As set forth in this Common Benefit Order, the identities of the Fee Committee Members in the Pelvic Mesh cases are

*(Footnote continued)*

3.

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 3 of 17

MDLs.[14] I was not appointed in any capacity to any of the Pelvic Mesh MDLs.[15]

The Sheller Pleading, which I had never seen before the Abrams Brief, was a response to issues related to common benefit fees and costs in the Pelvic Mesh MDLs.[16] The contributors to the Abrams Brief make it look like my firm was a party to the Sheller Pleading and the subject of Sheller's inflammatory accusations.[17] The Abrams Brief refers to Sheller as "another party" after specifically identifying my firm in the same paragraph as the "lead counsel" against whom Sheller's motion was brought.[18] This is false. My firm was not a party to the motion, and, in fact, my firm was not an applicant or a recipient of any common benefit fees or costs in that case.[19] I had no role whatsoever in the common benefit process in the Pelvic Mesh MDLs.[20] Yet, the Abrams Brief, thus far without consequence, makes material misrepresentations to this Court: (1) that my firm was "*lead Plaintiffs' Counsel;*" (2) that I was a party to a motion brought against "*the Fee and Cost Committee;*" (3) that I was involved in those capacities in misusing and mismanaging common benefit funds with the current Trustee; and (4) that our mutual non-disclosure of MDL costs gives rise to the need for further discovery against the FVT.[21] These claims are patently false on every level. The specific citations in the Abrams Brief from the Sheller Pleading have absolutely nothing to do with me, my firm, or any member of the FVT:[22]

---

posted on the public docket available to anyone. Skikos, Crawford is not listed as our firm did not apply for or receive any common benefit fees or costs in this case.).
[14] Id.
[15] Id.
[16] Doc. No. 7483, supra note 9.
[17] Doc. 12766, supra note 1 at 10:7 and 11:5-6.
[18] Id. at 10:7-19 ("Another party to this case Stephen A. Sheller").
[19] See Pretrial Order No. 211, supra note 13 at 3-4 (Partners or employees from Skikos, Crawford, members of the TOC, any current or former employees of the FVT, and the current and former Trustee, were not listed in this order as applicants or recipients of any common benefit fees or costs in this case.).
[20] Declaration of Steven Skikos at 3:14-20.
[21] Doc. 12766, supra note 1 at 10:7 and 11:5-6.
[22] Doc. No. 7483, supra note 9 at 2.

4.

PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM R. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13038    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 4 of 17

> "leadership [firms]" an astonishing **sixty-eight (68) times – a statistical occurrence of nearly one hundred eighty-four percent (184%)**.
>
> The so-called "leadership [firms]" are nothing more than the *alter egos* of the same firms piloting the FCC, and or those firms that have held administrative positions in the MDL.
>
> Based upon the empirical fact that the term "leadership [firms]" appears roughly **one hundred eighty-four percent (184%)** of the time over the length of the FCC's brief's pages, it must be readily evident to any reasonable fact-finder that the FCC's Petition is nothing more than a "smoking gun" admission by its authors and by its supporting proponents, that the FCC has been, unfortunately, hijacked by a small band of profiteers, outrageously demanding unsupervised use of the Common Benefit Fund as their personal ATM.

The contributors to the Abrams Brief cut and pasted inflammatory phrases like "smoking gun," "unsupervised use of the Common Benefit Fund," "hijacked by a small band of profiteers," "outrageous," and "personal ATM" into the paragraph about my law firm and the current trustee of the FVT as if these phrases from the Sheller Pleading were directed at, and determined by the Court, to apply to my law firm and the FVT.[23] To the contrary, these phrases were flung by Sheller into this document filed in the Pelvic Mesh MDL and were directed at the Pelvic Mesh FCC.[24] It is obvious to anyone who can read that I was not a member of the Pelvic Mesh FCC[25] and that these claims were not directed at me or my firm in any way, shape, or form. In fact, my firm is nowhere mentioned in the Pleadings or in any of the Common Benefit Orders.[26]

The Abrams Brief refers to the allegations in the Sheller Pleading and an article as findings.[27] The Sheller Pleading and the article are not court orders. They are not even declarations. Neither contain admissible evidence, findings of fact, or conclusions of law. The Sheller Pleading is an

---

[23] Doc. 12766, supra note 1 at 10:15-18 ("Stephen A. Sheller, stated that 'it must be readily evident to any reasonable fact-finder that the FCC's Petition is nothing more than a "smoking gun" admission by its authors and by its supporting proponents, that the FCC has been, unfortunately, hijacked by a small band of profiteers, outrageously demanding unsupervised use of the Common Benefit Fund as their personal ATM.'").

[24] Doc. No. 7483, supra note 9.

[25] See Pretrial Order No. 211, supra note 13 at 3-4 (Skikos, Crawford was not listed in this order as applicants or recipients of any common benefit fees or costs in this case.).

[26] Pretrial Order No. 211, supra note 13; Doc. No. 7483 supra note 9.

[27] Doc. 12766, supra note 1 at 10:7-10 (Abrams states, "Within this case it was **found** that. . ." and goes on to quote Elizabeth Chamblee Burch & Margaret S. Williams, Perceptions of Justice in Multidistrict Litigation: Voices from the Crowd, Cornell L. Rev., forthcoming (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3900527#).

5.

PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13050    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 5 of 17

advocacy statement made by one law firm objecting to paying common benefit to other lawyers – not me - in another federal case. The claims made by Sheller in the Sheller Pleading were made in a dispute over which I was never involved; a dispute that was being litigated three thousand miles away without my knowledge or participation.[28] The FCC's opposition to the Sheller Pleading is readily available and is provided.[29] It is obvious from even a basic review of the Pelvic Mesh common benefit court filings from three years ago that the accusations set forth by the Sheller Pleading have absolutely nothing to do with my law firm or me. In the three years since they were filed, the entire court record in the Pelvic Mesh MDLs, which contains over 35,000 filings, is destitute of any connection between that pleading and my law firm.

The Sheller Pleading further does not mention anyone who currently works or worked for the FVT.[30] Hon. Joseph Goodwin, in his capacity as the Judge overseeing all the Pelvic Mesh MDLs, overruled the objections brought forth against the FCC's fee and cost motion as either untimely or without merit.[31] In Judge Goodwin's 28-page order, neither my firm, nor anyone from the FVT, including the current trustee, is mentioned.[32] Yet, the Abrams Brief employs carefully selected inflammatory phrases that appear designed to anger the fire victim community, and turn individuals against the FVT.

Whomever contributed to the research and drafting of the falsifications in the Abrams Brief and the subsequent publications of this pleading to our Northern California communities knows what they were doing. Like the Sheller Pleading filed against the Pelvic Mesh FCC, Abrams' latest pleading is now part of the public record being widely circulated to the outside world. Even though

---

[28] Declaration of Steven Skikos at 3:14-20.

[29] See generally Doc. No. 7496, Common Benefit Fee and Cost Committee's Reply to Sheller, P.C.'s Resp. to its Pet. for an Award of Common Benefit Attorney's Fees and Expenses, In Re: Ethicon, Inc, Pelvic Repair System Products Liability Litigation, No. 2:12-md-02327 (S.D.W. Va. Jan. 24, 2019) (Attached to the Declaration of Steve Skikos as Exhibit C, is a true and correct full copy of this filing—the "Sheller FCC Response".).

[30] Doc. No. 7483, supra note 9.

[31] See generally Doc. No. 7758, Pretrial Order No. 201 Memorandum Opinion and Order, In Re: Boston Scientific Corp., Pelvic Repair System Products Liability Litigation, No. 2:12-md-02326 (S.D.W. Va. Jan. 30, 2019); See also Pretrial Order No. 327 Memorandum Opinion and Order, In Re: Ethicon, Inc., Pelvic Repair System Products Liability Litigation, No. 2:12-md-02327 (S.D.W. Va. Jan. 30, 2019) ((These identical Petitions were filed in each of the individual MDLs assigned to Hon. Joseph R. Goodwin: 2:10-md-2187, 2:12-md-2325, 2:12-md-2326, 2:12-md-2327, 2:12-md-2387, 2:13-md-2440, and 2:14-md-2511)(Attached to the Declaration of Steve Skikos as Exhibit D (In Re: Boston Scientific) and Exhibit E (In Re: Ethicon) are true and correct full copies of these filings)).

[32] Id.

6.

PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 6 of 17

the connection between the Sheller Pleading and my law firm is a total fabrication, those two pages of the Abrams Brief can be malevolently used to injure my firm, my firm's clients, the FVT, the current trustee, and unfortunately, the interests of all FVT claimants. Consider the level of malice it took to (1) search for and locate a three-year-old pleading full of unsubstantiated hyperbole that is directed at other law firms in an unrelated dispute three thousand miles away,[33] (2) knowingly misrepresent to this Court that my firm was a party to that dispute – it was not; (3) concoct claims of supposed mismanagement of settlement funds in another important case and flat out lie that these claims were directed at me; (4) claim that there were inflammatory allegations of misconduct against my firm – when the very documents he cites do not even mention my firm or me; (5) represent to the fire victim community, the media, and my firm's clients that my law firm held supposedly suspicious and tainted positions it never held; and (6) lead this Court, the media, and the fire victim community to believe that unsubstantiated accusations against other law firms were findings against my law firm.

The Abrams Brief continues with even more untruths. Consider next the further accusation against my firm that, "This Pelvic Mesh Litigation recently ended with a group of women who received approximately $8B in settlements filing suit against their attorneys for improperly enriching themselves with excessive fees."[34] To ensure maximum damage by the statement, the Abrams Brief follows that claim in the same paragraph with two references to me personally, implying that my firm was subject to charges of enriching itself with excessive fees and engaged in that litigation.[35] This is a total fabrication. It never happened. The reference to the New York Times article from June of 2019 cited in Footnote 7 of the Abrams Brief has nothing to the do with my law firm or my firm's cases.[36] This has to do with an unrelated fee dispute involving other lawyers from Texas and

---

[33] See generally Doc. No. 7483, supra note 9 (The Sheller Pleading was filed in January of 2019, over three and ½ years ago).
[34] Doc. No. 12766, supra note 1 at 10:23-11:2 (footnote 7, citing Matthew Goldstein, Women Who Sued Makers of Pelvic Mesh Are Suing Their Own Lawyers, Too, N.Y. Times, June 14, 2019, available at https://www.nytimes.com/2019/06/14/business/pelvic-mesh-surgery-litigation.html).
[35] Doc. No. 12766, supra note 1 at 11:5-6.
[36] Doc. No. 12766, supra note 1 at 10:23-11:2 (footnote 7, citing Matthew Goldstein).

7.

PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 7 of 17

New Jersey.[37] That case was dismissed by the Third Circuit, and, as is clear from the written dismissal, which anyone can read, my firm was never mentioned.[38] Again, it would take minutes to verify these facts.

**B.   Administration of the Pelvic Mesh MDL and the Fire Victim Trust**

The Abrams Brief also claims that in my phantom role as lead counsel in the Pelvic Mesh MDL, I somehow maneuvered one of the more experienced and respected federal judges in the country to "appoint over 40 private entities to help them: special masters, claim administrators, escrow agents, external review specialists, and lien-resolution groups. But costs were rarely disclosed."[39] Once again, this is a complete fabrication. As noted above, I was not lead Plaintiff's Counsel in that case nor was I appointed in any capacity in the Pelvic Mesh MDL.[40] I was not involved in the MDL Court's supposedly inappropriate selection of these "40 private entities" and there has never been a claim that my firm was involved in some cost disclosure issue in that case.[41] In fact, the Ethicon MDL was closed in 2021 without a single court filing containing any allegations against my firm or anyone associated with the FVT.

---

[37] See Gore v. Nagel, 858 Fed. Appx. 44, 2021 U.S. App. LEXIS 15908, 2021 WL 2156923 (Attached to the Declaration of Steve Skikos as Exhibit F); summarized in Bill Wichert, 3rd Circ. Says NJ Cap Doesn't Block Mesh Case Fees In Texas, Law 360, May 27, 2021 ((Attached to the Declaration of Steve Skikos as Exhibit G) ("The Third Circuit on Thursday declined to revive class claims that lawyers ran afoul of a New Jersey rule capping contingent fees by taking allegedly excessive cuts of settlement awards in Texas pelvic mesh litigation against Johnson & Johnson and its Ethicon unit, saying the provision didn't apply to the attorney fees."))

[38] Id.

[39] See Doc. No. 12766, supra note 1 at 10:20-21 ((quoting Burch & Williams, supra note 27) (I have never been to West Virginia. I have not personally appeared before Judge Goodwin.)).

[40] Declaration of Steven Skikos at 3:8-13 (With respect to the Pelvic Mesh MDLs, Judge Goodwin was given an almost impossible task as there were seven corporate defendants, over one hundred thousand cases, and hundreds of law firms involved. The litigation began in 2010 and liability, causation and damages were ferociously contested. Multiple cases were tried; some won and some lost. Over 100,000 cases were resolved on behalf of the women whose lives were affected by the defective products at issue in the Pelvic Mesh Litigation for over $8 billion. Unlike this case, which presents with a single claims administration process, there were probably more than one hundred firms that settled their inventory of cases separately. The administration of what was ultimately over 100,000 individual settlements was a gigantic task. Judge Goodwin issued orders appointing other special masters beginning in 2014. Although I was NOT a member of the MDL leadership, it is does not surprise me that the MDL court appointed dozens of settlement administrators given the length and complexity of that case. QSF administration, special needs trust, government benefit and lien resolution programs alone had to be overwhelming work.).

[41] Declaration of Steven Skikos at 3:21-23. (My experience in that case was the opposite of what was implied in the Abrams Brief. It took years of work to successfully resolve the cases of my own clients. I personally spent months over the course of two years flying all over this country to put together a separate settlement with different defendants. I did so successfully to the benefit of my firm's clients without incident, controversy, or any claim against me or my firm.).

8.

PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 8 of 17

Yet, the Abrams Brief places my name in the same sentence as Cathy Yanni to imply a conspiracy to avoid cost disclosure in the Pelvic Mesh MDL by leadership and JAMS which justifies discovery against the FVT in this case.[42] In fact, the Abrams Brief precedes this false accusation regarding the Pelvic Mesh MDL with the basis for his motion, this "***pattern of mismanagement** and related influence of JAMS neutrals which should prompt supplemental discovery within this case.*"[43] As for the current Trustee, one of the most destructive misstatements made in the Abrams Brief was to take one interview quote from an unidentified participant in a review article packed with inflammatory accusations and represent that it was specifically and appropriately directed at the current Trustee of the FVT.[44] Abrams writes, "*Indeed, one of the participants reflected on the manner in which the **funds were managed and overseen by Ms. Yanni and** stated, 'The system is bought and sold, victims are revictimized, it's a shame on all those puppets who profit from these harmed ladies.'*"[45] Cathy Yanni **did not manage or oversee** the Pelvic Mesh MDL's administration of funds or the retention of other claims administrators. Abrams concocted this connection. The above opinions were supposedly given by one unidentified plaintiff (out of over 100,000 plaintiffs involved in the Pelvic Mesh MDL) cited in an article. The footnote to that citation, Footnote 445, only identifies Participant 47. It does not identify Cathy Yanni.[46] Cathy Yanni was not involved in any way in the MDL Court's selection of other private entities to oversee hundreds of firms' settlements or any claim that she mismanaged funds in the cases in which Judge Goodwin appointed her. Moreover, a special master does not have the power to manage and oversee MDL appointments or to stray beyond the duties set forth in their specific individual appointment order.[47]

---

[42] Doc. No. 12766, supra note 1 at 10:7.
[43] Doc. No. 12766, supra note 1 at 10:3-5.
[44] Doc. No. 12766, supra note 1 at 10:8-18 (quoting Burch & Williams, supra note 27).
[45] Doc. No. 12766, supra note 1 at 10:20-21 (quoting Burch & Williams, supra note 27) (emphasis added).
[46] Doc. No. 12766, supra note 1 at 10:20-21((quoting Burch & Williams, supra note 27) (footnote 445 states, "Participate 47". Cathy Yanni is not mentioned in footnote 445. Cathy Yanni is mentioned elsewhere in the articles as, apparently, the only special master appointed in the Pelvic Mesh MDL who disclosed her costs, specifically in footnote 441)).
[47] See Pretrial Order No. 236, Order Appointing Cathy Yanni as Special Master for Private Settlement Agreements Between Ethicon and Certain Plaintiffs' Counsel, In Re: Ethicon, Inc, Pelvic Repair System Products Liability Litigation, No. 2:12-md-02327 (S.D.W. Va. Aug. 26, 2016) (Attached to the Declaration of Steve Skikos as Exhibit H is a true and correct full copy of this filing. The MDL Court appointed Cathy Yanni to conduct the allocation work in certain private settlements and she worked alone. She was first appointed by Judge Goodwin in 2016 by agreement of another plaintiff's counsel and Johnson & Johnson. Furthermore, Cathy Yanni's specific cost schedule was reviewed, approved as reasonable, and disclosed in the Court Order by Judge Goodwin. This is precisely what happened when my

*(Footnote continued)*

9.

PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 9 of 17

In fact, the Court record in the Pelvic Mesh MDL has no claim that Ms. Yanni mismanaged anything—the Abrams Brief is destitute of a single finding of fact or conclusion of law by the Court that relates in any way to the current Trustee. There is no evidence provided to this Court.[48] Instead, the Abrams Brief just throws dirt and a lot of it. The contributors to the Abrams Brief take inflammatory snippets from one *unidentified participant interview* in an article like, "bought and sold," "shame," "**victims are revictimized,**" and "puppets who profit from these harmed ladies," and directly misconnect them to the current Trustee in order to mislead the fire victim community to believe these were "found" specific to her.[49] Abrams then widely publishes his legal opinions regarding these supposed findings. He continues to advise fire victims that the Fire Victim Trust is culpable of this supposed "pattern of mismanagement", and then seeks support from the fire victim community to act in this Court and in the media.

The frivolous technique of stringing together inflammatory nonsense as demonstrated fact and legal opinion is frustrating to have to unravel. At the last hearing, Abrams stated, "That is just a fact associated with this case, and my purpose of providing a context of the prior case with Ms. Yanni and where Mr. Skikos was involved was to be able to demonstrate when one corporation has an inordinate role behind closed doors with confidentiality agreements. And as we've seen in the Girardi case, unfortunately that creates an environment where bad things can happen."[50] Abrams apparently now qualifies himself as an expert in the management and administration of federal MDL's. He evaluated the complexities of the Pelvic Mesh MDLs by misrepresenting the facts and jumping a mountain of inferential steps. He concluded that this Court must open discovery against the FVT ("this case") based upon "context" of the work of that "prior case" where "bad things

---

firm's cases later settled); See Also Pretrial Order No. 253, Order Appointing Cathy Yanni as Special Master for Private Settlement Agreements Between Ethicon and Certain Plaintiffs' Counsel, In Re: Ethicon, Inc, Pelvic Repair System Products Liability Litigation, No. 2:12-md-02327 (S.D.W. Va. Mar. 29, 2017)(Judge Goodwin appointed Cathy Yanni in my individual cases in 2017) (Attached to the Declaration of Steve Skikos as Exhibit I is a true and correct full copy of this filing. With respect to my firm's cases, Judge Goodwin reviewed and publicly approved as reasonable her cost schedule and she successfully performed her obligations consistent with that order).

[48] Abrams *supposedly* took the time to look through thousands of documents in the Pelvic Mesh MDLs and found the Sheller pleading – but he couldn't find one court filing in that MDL that actually criticizes my firm.

[49] Doc. No. 12766, supra note 1 at 10:20-21 (quoting Burch & Williams, supra note 27).

[50] See Transcript of Proceedings Before The Honorable Dennis Montali United States Bankruptcy Judge, In Re: PG&E Corporation and PG&E Co. at 47:17-23, No. 19-30088 (Bankr. N.D. Cal.) (Sep. 13, 2020).

10.

PARTIAL RESPONSE OF STEVEN J. SKIKOS TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 10 of 17

happen" just like the "Girardi case". This Court and countless fire victims are asked to rely upon his opinions to further disrupt the work of this Trust based upon what Abrams "demonstrated" happened before Judge Goodwin. Yet, Abrams has presented no foundational evidence of his skill, qualifications, or experience in evaluating complex federal mass tort cases and multi-district litigations. He makes conclusions without foundational facts. Abrams' techniques may work in other forums, but there is no place for contrived controversy in this Court.

The Abrams Brief's incongruous references to the Pelvic Mesh MDL undermine the experience and credibility of both the current and former Trustee in the administration of this case and the continued evaluation of almost 70,000 claims.[51] Their prior experience in both fire related cases and mass tort cases has proven critical to the successful review and evaluation of the claims in this case.[52] Likewise, the experiences of the attorneys representing fire victims in fire related cases,

---

[51] See Doc. No. 5724, Dec. of Cathy Yanni in Support of the Application of the Official Committee of Tort Claimants Pursuant to § 1103 And Fed. R. Bankr. P.2014 And 5002 To Retain and Employ Cathy Yanni as Claims Administrator Nunc Pro Tunc to January 13, 2020 Through The Effective Date Of The Resolution Trust Agreement, In Re: PG&E Corporation and PG&E Co. at 3:2-4:9 & 5:3-11, No. 19-30088 (Bankr. N.D. Cal. Feb. 11, 2020) ("In addition to my work as the Administrator of the Wildfire Assistance Program, I have settled tens of thousands of cases and facilitated distribution of billions of dollars in settlement funds to claimants. I have overseen claims reconciliation processes and worked with multiple claims management firms, including BrownGreer PLC, one of the professionals in the Cases. I have been a Court Appointed Special Master and/or Mediator in numerous cases involving wildfires, mass torts, and class actions. In addition to being appointed as an appeal panelist in the Takata Airbag Tort Compensation Trust Fund established in the TK Holdings Inc. bankruptcy case, I have been appointed as an Administrator, Special Master, or Mediator in thousands of other cases, including: [goes on to list 15 cases]"; Cathy Yanni then discloses her work with members of the TOC, "My search revealed that I previously served as a neutral in cases involving parties who were represented by attorneys who are representing certain fire victims and committee members. The attorneys are Steven Skikos, Gregory Skikos and Matthew Skikos from the firm Skikos Crawford Skikos & Joseph, LLP, Anne Andrews from the firm Andrews & Thornton, Khaldoun Baghdadi and Michael Kelly from the firm of Walkup, Melodia, Kelly & Schoenberger, Mary Alexander from the firm Mary Alexander & Associates, P.C., Frank Pitre from the firm Cotchett, Pitre & McCarthy, Elizabeth Cabraser from the firm Lieff, Cabraser, Heimann & Bernstein LLP, and Thomas Brandi from the Brandi Law Firm. I also served as a neutral in a matter involving AIG Europe Limited. The mediations are closed and did not involve the Debtors.").; See also Doc. No. 5727, Dec. of Hon. John K. Trotter (Ret.) in Support of the Application of the Official Committee of Tort Claimants Pursuant to § 1103 And Fed. R. Bankr. P.2014 And 5002 To Retain and Employ Hon. John K. Trotter (Ret.) as Trustee Nunc Pro Tunc to January 13, 2020 Through The Effective Date Of The Resolution Trust Agreement, In Re: PG&E Corporation and PG&E Co. at 2:18-25 & 5:3-11, No. 19-30088 (Bankr. N.D. Cal. Feb. 11, 2020) ("I am a former judge, having retired from the California Court of Appeal in 1987. Upon retiring from the bench in 1987, I joined JAMS, and have gained a reputation as one of the nation's leading experts in ADR. I have served as a Special Master in several Multi District Litigation Pharmaceutical matters, including, Zyprexa I, Zyprexa II, Baycol, Rezulin, Vioxx, the Toyota Sudden Acceleration case, and other complex cases in both Federal and State court, supervising the claims and payment to thousands of plaintiffs in each litigation. I also formulated a resolution program for the 2007 San Diego fire cases and supervised the resolution of all the victims' claims.; Judge Trotter then discloses his work with members of the TOC, "My search revealed that in the past two years I served as a neutral in a pharmaceutical multi district litigation involving parties who were represented by attorneys who are representing certain fire victims and committee members. The lead attorney was Steven Skikos from the firm Skikos Crawford Skikos & Joseph, LLP. The mediations are closed and did not involve the Debtors.").

[52] Id.

11.

PARTIAL RESPONSE OF STEVEN J. SKIKOS TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 11 of 17

mass disaster cases and other bankruptcy cases have contributed to the successful resolution of tens of thousands of claims in this case. That attorney experience is part of the qualifications necessary to adequately represent individuals in this case.

As a member of Tort Oversight Committee ("TOC"), I perform significant work to benefit all fire victim claimants.[53] For example, my efforts along with the efforts of the FVT, the claims administrator, and the TOC have allowed for the successful matching, production, and review of fire claims along with the relevant subrogation files. This process started in December of 2018 and has been ongoing for over three and one-half years. In my role as co-liaison for the North Bay Fires JCCP, work on the Tort Claimants Committee ("TCC"), and work on the TOC, one of my jobs has been to work with the FVT to connect the insurance subrogation data and 53,000 claim files to the actual FVT claims data, for all claimants. These efforts, which involved the review of almost 43 million pages of subrogation records and hundreds of thousands of pieces of data, have served to ensure that all claims are reviewed and resolved in compliance with the principles of the Claims Resolution Procedures.[54] My work with the claims data also allowed me to supervise the joint uploading of 30,000 bankruptcy Proof of Claims coordinated between BrownGreer and Prime Clerk in just a few weeks, to correctly predict the number of fire victim claimants despite criticism by the shareholders, to successfully move this Court to change the bar date to include thousands of more fire victims in 2019.[55] These are just some of the few projects I have worked on to benefit the entire

---

[53] The work on the TOC is uncompensated.

[54] Declaration of Steven Skikos at 3:26-4:9 (Prior to PG&E filing bankruptcy, the fire cases were coordinated in a state court proceeding, JCCP No. 4955. In December 2018, Case Management Order 5 was entered by that court, which I negotiated. CMO 5 confirmed that parties for the individual plaintiffs, defendants, and subrogation plaintiffs would agree to the collection and production of all CMO compliance information and subrogation claim files. BrownGreer was chosen to collect and organize case-specific information in a central repository. Specifically, CMO 5 spoke to the requirements by all parties in the cooperation of exchange of information to be able to match filed fire claims against actual insurance claims paid. This work has been ongoing for over three years.)

[55] See Transcript of Proceedings Before the Honorable Dennis Montali United States Bankruptcy Judge at 174:14-15, In Re: PG&E Corporation and PG&E Co., No. 19-30088 (Bankr. N.D. Cal.) (June 26, 2019); See also Lauren Hepler and Peter Eavis, Battle for PG&E Hinges on Rival Plans and Uncertain Costs, N.Y. Times, Oct 7, 2019, available at https://www.nytimes.com/2019/10/07/business/energy-environment/pge-bankruptcy.html ("Along with the jockeying over control, lawyers for wildfire victims are pushing back against a court-imposed deadline of Oct. 21 for wildfire victims to file damage claims against PG&E. While about 30,000 claims have already been filed, the lawyers have warned that up to 70,000 people — many still struggling to find stable housing or cope with trauma — may be left behind."); See also Transcript of Proceedings Before The Honorable Dennis Montali United States Bankruptcy Judge at 59:25-61:4, In Re: PG&E Corporation and PG&E Co., No. 19-30088 (Bankr. N.D. Cal.) (February 11, 2020) ("Forty percent participation was the amount that Mr. Orsini announced forty to fifty on the day of the bar date… The TCC, along with the fire victims in two months went from 30,000 people to 80,000 people now in December 31st, and how did

*(Footnote continued)*

12.

PARTIAL RESPONSE OF STEVEN J. SKIKOS TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 15036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 12 of 17

fire victim community. The allegations contained in the Abrams Brief are truly remarkable given the role of my firm in this Bankruptcy. On June 5, 2020, I gave one of three closing arguments in this case on behalf of members of the TCC and in the introduction stated:

> Second, with respect to the concerns raised by Mr. Abrams, Ms. Wallace, Ms. Sedwick -- and I listened carefully yesterday, and **I've been in front of this Court nine times, and in nine times that we've been talking together, we've talked about one basic issues, *which is the meaningful inclusion of the fire victims in the process*.** And whether it's the fire victim database or the notice program or the bar date or the voting, it's -- ***our discussions have always been about including the fire victims in the process, informing them, and empowering them to make meaningful decisions.*** They can be trusted with information.[56]

Anyone who reviews the Bankruptcy Court transcripts, the full closing argument, and any of the pleadings my firm filed in this case, would understand my firm's commitment to the fire victim community. Abrams also knows this and specifically stated in his closing papers, "I greatly appreciate the Skikos Law Firm for rightly calling out these injustices and they should be commended for their advocacy and this truthful representation to their clients."[57] Abrams also knows that, when I agree with him, I have taken positions in this Court consistent with his.[58] For example, on February 11, 2020, I agreed with Abrams in Court on the voting program.[59] I also made it clear that I encourage participation by the fire victim community: "First, I'd like to thank Mr. Abrams and the fire victims for presenting and being vigilant and asking questions and demanding answers."[60] Considering legitimate questions that benefit the fire victim community is in the best interest of this Court and the parties. However, considering scandalous and unfounded attacks detracts from all our

---

that happen? Because the TCC worked to inform and empower using their independent judgment, the fire victim community, and it wasn't us. It wasn't the bankruptcy court, although you did extend the bar date, thank you, and it wasn't Mr. Kasolas, although he did a fantastic job . . .. It was the fire victim community that went out and mobilized, and they said we refuse to let our brothers and sisters not be a part of this bankruptcy. And remember, there were thousands of fire victims who were not going to file proofs of claims. . .").

[56] See Transcript of Proceedings Before The Honorable Dennis Montali United States Bankruptcy Judge at 44:3-13, In Re: PG&E Corporation and PG&E Co., No. 19-30088 (Bankr. N.D. Cal.) (June 5, 2020).

[57] See Doc. No. 7230, William B Abrams Obj. to Debtors Plan of Reorganization Pursuant to 11.U.S.C. §§ 1129(A) [Dkt.6320], In Re: PG&E Corporation and PG&E Co. at 3:18-20, No. 19-30088 (Bankr. N.D. Cal. Aug. 18, 2022).

[58] See Transcript of Proceedings Before The Honorable Dennis Montali United States Bankruptcy Judge, In Re: PG&E Corporation and PG&E Co.at 59: 10-60:2 and at 62:6-63:1, No. 19-30088 (Bankr. N.D. Cal.) (Feb. 11, 2020).

[59] Id.

[60] Id.

13.

PARTIAL RESPONSE OF STEVEN J. SKIKOS TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 13 of 17

efforts to work with fire victim community in reaching a productive resolution.[61]  In just two pages, Abrams weaponized an inflammatory hit piece to slander my firm and the FVT to the fire victims, the media, governmental entities, and Wall Street interests[62] which damages the ability of the FVT to complete its essential missions of fair and efficient claims resolution.[63]

C.     Conclusion

My firm has had to divert significant attention to this matter to defend against fraudulent accusations relating to the Pelvic Mesh MDL – claims which were never made against me or my firm in any court, anywhere, ever.  As much as I do not want to believe it, the series of misstatements contained in the Abrams Brief and subsequent mass publication to the outside world were not a mistake or a misunderstanding.  There is no reasonable misread of the documents Abrams attached to his pleading that would allow anyone to conclude that I was lead counsel in the Pelvic Mesh MDLs before Judge Goodwin or a party to some one-off inflammatory pleading that never

---

[61] Federal Rule of Bankruptcy Procedure 7012 applies the Federal Rule of Civil Procedure 12(b) – (i) to adversary proceedings in bankruptcy proceedings. Rule 12(f) applies where the pleadings contain scandalous, impertinent, or irrelevant matters that would cause a reasonable person to alter their opinion of the parties named in the pleading and material is either 1) false; or 2) potentially false and irrelevant or included within a bankruptcy filing for an improper end. See generally USCS Fed Rules Civ Proc R 12(f); See also In re Associated Community Services, Inc. 547 B.R. 236 (Bankr. E.D. Mich. 2016); See also Hildebrandt v. Veneman 233 F.R.D. 183 (D.D.C. 2005) (finding counsel's assertion that the opposing counsel is trying to kill him so outrageous, without support, and scandalous that it rises to a level of offensiveness that merits this matter being stricken from the record by the Court, sua sponte, under Rule 12(f)); See also Pigford v. Veneman 225 F.R.D. 54 (D.D.C. 2005) (holding counsel's repeated use of the Court's docket as a forum for "what are, in essence, press releases" that unnecessarily and improperly cast a derogatory light on opposing counsel, detract from the dignity of the Court, and negatively reflect on opposing counsel's truthfulness and integrity so scandalous and unprofessional as to warrant the Court to strike the matters from the record sua sponte); See also Federal Nat. Mortg. Ass'n v. Cobb 738 F.Supp. 1220 (N.D. Ind. 1990) (concluding, sua sponte, that allegations in defendant's cross complaint directed at individuals and entities not named a party to the action were so irrelevant and distracting from the issue at hand that they should be stricken from the record).

[62] The FVT is the largest shareholder in one of the largest public utilities in America.  Every pleading, every public statement, and every distraction is watched carefully by hedge funds and by many other interested groups and governmental entities.  The financial analysts employed by the FVT, the Trustee and the TOC must proceed extremely carefully when it comes to the management of the largest remaining asset of the Trust.  It is in everyone's interest (fire victims, Northern California communities, government entities, rate payers, investors, and the company itself) for the FVT to successfully convert the stock into cash and be out of PG&E.  Suffice it to say that unfounded venomous attacks on the FVT, like what Mr. Abrams filed with respect to the Pelvic Mesh MDL, seriously harm the FVT in its efforts to complete this mission. The consequences of these malicious attacks therefore have a negative impact on the fire victim community.

[63] Additionally, the timing of this Abrams Brief corresponds with the successful efforts of the current trustee to travel to meet with government agencies, local communities, and fire victims; See Rick Silva, New fire victims trust administrator comes to Paradise: Cathy Yanni meets with residents, government officials after touring Paradise, Chico Enterprise Record, Aug. 12, 2022, available at https://www.chicoer.com/2022/08/12/new-fire-victims-trust-administrator-comes-to-paradise/.

14.

PARTIAL RESPONSE OF STEVEN J. SKIKOS TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 14 of 17

mentioned me. The identity of the members of the FCC, to whom the motion was directed, are written in the Court Orders. The parties to the Pelvic Mesh New Jersey lawsuit are in the New York Times article and in the Order dismissing the case. I am in none of them.

Abrams supposedly took the time to review the docket to confirm the truth of these allegations he made against the Trustee and me. There were over 35,000 documents filed in the various Pelvic Mesh MDLs. Abrams must have carefully reviewed this gigantic docket to have found the Sheller Pleading – a pleading brimming with inflammatory phrases almost perfectly crafted for scandalous sensationalism. Let us presume Abrams did carefully review the docket and was acting alone – to locate the Sheller Pleading needle in the many Pelvic Mesh MDLs haystacks would have taken months. Still, based upon his review of the Pelvic Mesh docket, Abrams came to his own legal opinions and conclusions. Abrams provided legal advice to the fire victim community to join his position and he feverishly disseminated his opinions to support groups, the media, and government officials. Abrams presented these opinions knowing, from his review of the Pelvic Mesh MDL documents, that I was not lead counsel, not on the FCC, not a party to any dispute with Sheller and had nothing to do with that dispute, was not sued, and had no claims against me for mismanagement, etc. The other alternative is that Abrams was misled about the Pelvic Mesh litigation by some lawyer(s) with an insidious agenda;[64] lawyers who informed Abrams (1) to not believe the actual language of the pleadings but to imply from my firm's absence that these documents actually were directed at me; (2) to not give me any advanced notice these fabricated allegations were going to be filed in this Court; and (3) to ignore the fact that Abrams had a good enough relationship with me that he asked me to help him with issues on his personal claim – which I of course did – as part of my uncompensated work on the TOC. The prospect of lawyer(s) covertly aiding and facilitating a non-lawyer to file a frivolous pleading in federal court knowing that the

---

[64] See Bluestein v. State Bar 13 Cal.3d 162, 173 (1974) (Under California Rules of Professional Conduct ("CA RPC") Rule 5.5, a lawyer admitted to practice law in California shall not knowingly assist any person in the unauthorized practice of law in that jurisdiction. This rule encompasses both direct and indirect assistance in the unauthorized practice of law. Applicable case law goes on to define the practice of law to include **legal advice and counsel, and the preparation of legal instruments** and contracts by which legal rights are secured.); See also In re Wells (Cal. Bar Ct., Dec. 5, 2005) (Specifically, the practice of law encompasses a wide range of activities such as **the preparation of pleadings** and other papers on behalf of clients and in general **all advice to clients and all action taken** for the in matters connected with the law).

15.

PARTIAL RESPONSE OF STEVEN J. SKIKOS TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088   Doc# 13036   Filed: 10/03/22   Entered: 10/03/22 14:04:45   Page 15 of 17

non-lawyer would widely disseminate the slanderous material outside this Court is highly disturbing.[65]  Either way, the continued risk of unnecessary damage being caused to my firm and my firm's clients in Abrams' mass publication of this inflammatory libel calls for a remedy.  To be clear, however, I am NOT looking for sanctions against Abrams – that does not benefit anyone.  Instead, we are approaching the four- and five-year anniversaries of the Camp and North Bay PG&E fires.  Like Mr. Abrams, I'm from Santa Rosa.  I have family and friends who lost their homes in the PG&E fires – including employees of my firm.  Every effort must be focused on the successful resolution of the remaining claims and the disposition of the stock.  These processes must continue unabated by the malevolence demonstrated in this attack on my firm and unnecessary distraction.[66]  That is the remedy that best helps the almost 70,000 other people, who have been through enough already, get compensated for their losses.

Dated:  October 3, 2022                           Respectfully submitted,


By:   /s/ Steven J. Skikos
      Steven J. Skikos
      **SKIKOS CRAWFORD SKIKOS & JOSEPH LLP**
      One Sansome Street, Suite 2830
      San Francisco, CA  94104
      Telephone:  415-546-7300
      Facsimile:  414-546-7301
      sskikos@skikos.com

---

[65] Under CA RPC 3.3, a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. Moreover, a lawyer may not offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence, and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures. Likewise, under CA RPC 3.1 a lawyer shall not bring an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the purposes of harassing or maliciously injuring any person. Moreover, even if the lawyer in question did not themselves make false statements or bring actions for the purpose of harassing or maliciously injuring any person, CA RPC 8.4 states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation **OR to induce another to do so.**

[66] Unfortunately, the prospect of a retaliatory rampage is high.

16.

PARTIAL RESPONSE OF STEVEN J. SKIKOS TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 16 of 17

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on October 3, 2022, a copy of the foregoing PARTIAL RESPONSE OF |
| 3 | STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION OF WILLIAM B. ABRAMS |
| 4 | PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF AN |
| 5 | ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND |
| 6 | CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE was filed via the Court's CM/ECF |
| 7 | electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing |
| 8 | system to all parties indicated on the electronic filing receipt. Parties may access this filing through |
| 9 | the Court's system. |

*/s/ Steven J. Skikos*
Steven J. Skikos

17.

PARTIAL RESPONSE OF STEVEN J. SKIKOS, ESQ. TO WILLIAM B. ABRAMS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCT OF JAMS NEUTRALS GIVEN NEW EVIDENCE

Case: 19-30088    Doc# 13036    Filed: 10/03/22    Entered: 10/03/22 14:04:45    Page 17 of 17