# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

_____

**IN RE: AMERICAN MEDICAL SYSTEMS, INC., MDL No. 2325 PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION**

_____

**IN RE: BOSTON SCIENTIFIC, PELVIC MDL No. 2326 REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION**

_____

**IN RE: ETHICON, INC., PELVIC REPAIR MDL No. 2327 SYSTEM PRODUCTS LIABILITY LITIGATION**

_____

**IN RE: COLOPLAST PELVIC REPAIR SYSTEM MDL No. 2387 PRODUCTS LIABILITY LITIGATION**

_____

**IN RE: COOK MEDICAL, INC, PELVIC REPAIR MDL No. 2440 SYSTEM PRODUCTS LIABILITY LITIGATION**

_____

**IN RE NEOMEDIC PELVIC REPAIR SYSTEM MDL No. 2511 PRODUCT LIABILITY LITIGATION**

_____

**THIS DOCUMENT RELATES TO ALL CASES**

_____

**COMMON BENEFIT FEE AND COST COMMITTEE'S PETITION FOR AN AWARD OF COMMON BENEFIT ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM IN SUPPORT**


### MDL PLAINTIFFS' COUNSEL SHELLER P.C.'S RESPONSE IN OPPOSITION TO THE COMMON BENEFIT FEE AND COST COMMITTEE'S (FCC'S) PETITION FOR AN AWARD OF COMMON BENEFIT ATTORNEYS' FEES AND EXPENSES

The Plaintiffs' law firm of Sheller, P.C. (hereafter "Sheller"), both in its capacity of

representing certain MDL Claimants and as having a pecuniary interest in any cases subsumed

by the above-captioned MDLs, hereby submits its opposition to the Common Benefit Fee and

Cost Committee's (hereafter "FCC") Petition for an Award of Common Benefit Attorneys' Fees

and Expenses [Doc. No 180], as filed by the FCC on November 12, 2018.

## I. REFERENCING THE "LEADERSHIP FIRMS" SIXTY-EIGHT (68) TIMES IN A THIRTY-SEVEN (37) PAGE BRIEF, THE FCC'S PETITION IS A "SMOKING GUN" ADMISSION BY THE SO-CALLED "LEADERSHIP FIRMS," WHO ARE THE *ALTER EGOS* OF THE FCC'S MEMBERSHIP, THAT THEY SEEK TO RAID THE COMMON BENEFIT FUND, CONFISCATING DISPROPORTIONATE PROCEEDS FOR THEMSELVES.

When examining the pelvic mesh MDLs before this Court, it is unquestionable that the Common Benefit Fee and Cost Committee (the "FCC") is disproportionately composed of members from the identical eight (8) firms who served on the various Plaintiffs' Steering Committees (hereafter "PSCs"), served as Lead Counsel or Liaison Counsel, and or held other positions of influence, and whose mismanagement resulted in these MDL's ineffectual trials and the lack of a global settlement on behalf of the *en masse* Claimants.

A simple word search conducted of the FCC's brief immediately reveals that in a **thirty-seven (37)** page brief, the FCC, in unequivocal reference to its own members, uses the term "leadership [firms]" an astonishing **sixty-eight (68) times – a statistical occurrence of nearly one hundred eighty-four percent (184%)**.

The so-called "leadership [firms]" are nothing more than the *alter egos* of the same firms piloting the FCC, and or those firms that have held administrative positions in the MDL.

Based upon the empirical fact that the term "leadership [firms]" appears roughly **one hundred eighty-four percent (184%)** of the time over the length of the FCC's brief's pages, it must be readily evident to any reasonable fact-finder that the FCC's Petition is nothing more than a "smoking gun" admission by its authors and by its supporting proponents, that the FCC has been, unfortunately, hijacked by a small band of profiteers, outrageously demanding unsupervised use of the Common Benefit Fund as their personal ATM.

Once again, those endorsing the FCC's brief are the *alter egos* of the FCC's members, as well as the *identical minority of law firms* who stand to award themselves a disproportionate, windfall payday - which they failed to earn by their substandard efforts in this litigation.

Referring to themselves *ad nauseam,* like great, unsung heroes (yet with no real victory to speak of), it is no coincidence that these so-called "leadership [firms]" have awarded themselves the vast majority of the Common Benefit Fund's proceeds. Unsurprisingly, the FCC's eight (8) constituent firms have flagrantly discounted and dismissed the work performed by many others who comprise the remaining eighty-six (86) Plaintiffs' firms; other firms that regularly secured jury trial judgments in state courts for their clients, winning individual plaintiff's judgments that far eclipsed the FCC's meager, yet audaciously touted, "multi-claimant" settlements.

The purpose of an MDL common benefit fund is not to compensate particular plaintiffs' firms, nor certain plaintiffs' attorneys, for their court-appointed administrative or managerial positions.  Rather, the fund's existence is soundly based on the equitable principle of the "Common Benefit Doctrine," which only allows for compensation in strict proportion to attorneys' respective contributions to the litigation.  *See In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 647 (E.D. La. 2010) ("The theoretical bases for the application of this concept to MDLs are the same as for class actions, namely equity and her blood brother, *quantum meruit*."; "Thus, MDL courts have consistently cited the common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who **render legal services** beneficial to all MDL plaintiffs." *Id*.) [emphasis added]

Hence, and as an extreme example, if a firm or attorney who is appointed to a "leadership" committee (or similar administrative position in an MDL), has secured zero dollars ($0.00) in trial judgments and or settlements, and has also failed to contribute to the discovery process, that same firm should receive zero dollars ($0.00) in compensation from the Common Benefit Fund.  Any other outcome would deprive the fund of its purely equitable nature, which demands that the fund's proceeds be <u>proportionately distributed</u> based on the positive results secured by any, all, or some of the litigating Plaintiffs' firms. *See*, *e.g*. *Central R.R.& Banking v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164, 166-67 (1939); *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970); *Boeing*, 444 U.S. 472; and *Blum v. Stenson*, 465 U.S. 886, 900 (1984).

## II.   PLAINTIFFS' FIRMS NOT BELONGING TO THE FCC, NOR POSSESSING OTHER *ALTER EGO* POSITIONS OF "LEADERSHIP", ENTERED INTO LEGALLY ENFORCEABLE CONTRACTS WITH MEMBER FIRMS OF THE FCC AND ITS *ALTER* EGO "LEADERSHIP[FIRMS]", AND RETAIN ALL THEIR APPELLATE RIGHTS IN SUCH A DISPUTE.

By virtue of the oral agreements, and or of the written, memorialized communications with member firms of the FCC and its *alter ego* "leadership firms," other Plaintiffs' firms participating in these MDLs entered into legally enforceable contracts with the FCC and its *alter ego* "leadership [firms]", in order to be properly compensated for their state court work – the <u>true</u> unrecognized triumphs of these MDLs, which substantially improved the recovery for the remaining Claimants.

Irrespective of any of the pre-trial orders ("PTOs") entered in these MDLs, which sought to impose compulsory waivers of Plaintiffs' firms' appellate rights to contest subsequent court-approved fee determinations, contracts between the FCC firms/the "leadership [firms]" and the other non-FCC/non-"leadership" Plaintiffs' firms are distinctly exempt from the MDLs'

jurisdiction, and are subject to all remedies available at law or in equity that would otherwise

attach to any contractual dispute, including, not limited to, the right to exhaustion of all appeals.

In addition to any applicable principles of contract law, the FCC firms' and their *alter ego*

"leadership [firms']" failures to perform under said contracts are subject to the doctrine of

promissory estoppel, as well as all other feasible theories upon which recovery may be based.

III.   **THE PROPOSED FIVE PERCENT (5%) COMMON BENEFIT FUND FEE PERCENTAGE IS TOO HIGH BASED ON THE SIZE OF THIS "SUPER-MEGA-FUND," AS IT HAS BEEN DESIGNATED BY THE FCC, PER THE GROSS RECOVERY OF ONE BILLION DOLLARS ($1,000,000,000.00) AND THE LARGE NUMBER OF FILED CASES.**

The bedrock mathematical principle underpinning a court's award of a common benefit

fee percentage, is that the percentage should exist in an inverse relationship to the gross dollar

amount of the MDL's total recovery or global settlement (which the "leadership [firms]" did not

secure).  In cases involving a small settlement, for example, the fee may be as high as twelve

percent (12%), whereas in a larger case it may range, on average, from three to five percent (3%

to 5%).

As the FCC takes considerable length to point out, the pelvic mesh MDLs before the

Court fall into the "white whale" category of MDL litigation.  To borrow the FCC's language

(which the FCC itself borrowed), the gross recovery amount available for distribution in the

instant Common Benefit Fund of these pelvic mesh MDLs is most properly classified as a

"super-mega-fund," otherwise known as a common benefit fund whose assets are at least one

billion dollars ($1,000,000,000.00).  *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2017 WL

3033134, *27 (W.D. La. 2017)

Because the common benefit fund in this "unprecedented" MDL exceeded the FCC's wildest expectations (*See* E.C.F. No. 180, pp. 1, 18, 24), it should also be met with an appropriate fee award, consistent with the governing mathematical principle of <u>inverse relationship</u>, of **no more than two and one-half percent (2 ½%)** of the gross plaintiffs' counsels' fees – or half of the outrageous five percent (5%) sought by the FCC and its *alter ego* "leadership [firms]."

IV. <u>**SHELLER, P.C. AND ALL OTHER PLAINTIFFS' COUNSEL RETAIN THEIR RIGHTS TO WITHHOLD THEIR COUNSEL FEES FROM STATE COURT JUDGMENTS SUBJECT TO ANY PELVIC MESH MDL WHERE THESE PLAINTIFFS' FIRMS DID NOT EXECUTE EITHER AN "AGREED TO" ORDER, NOR A COURT-PROVIDED PARTICIPATION AGREEMENT, PURSUANT TO THE COURT'S PRE-TRIAL ORDERS (PTOs) IN ANY OF THE MDLs.**</u>

Due to the FCC firms', and or their alter ego "leadership [firms']" "lack of transparency, failure to comply with the underlying agreement for recognition of common benefit work, self-dealing, and disparate treatment between FCC member and non-member firms" (*see* E.C.F. No. 184, p. 5), Sheller, P.C., as well as all of the other remaining Plaintiffs' firms in these MDLs, retain their possessory rights to withhold any attorneys' fees secured in any litigated proceedings to date, in any jurisdiction, to the extent that said Plaintiff's firms did not execute either an "Agreed To Order" in any of the above-captioned MDLs, and or did not execute the Court's proposed "Participation Agreements," appended to either the "Agreed To Orders," or any of the other "PTOs" entered in these MDLs.

6

**V.** **ASSUMING, *ARGUENDO*, THE COURT WERE TO APROVE AN UNREASONABLE FIVE PERCENT (5%) FEE, OR ANY FEE ABOVE TWO AND ONE-HALF PERCENT (2 ½%) TO THE COMMON BENEFIT FUND, THE PERCENTAGE SHOULD BE APPORTIONED BETWEEN ATTORNEYS' FEES, AND COSTS AND EXPENSES.**

If the Court were, for some reason, to make an award of five percent (5%) or, for that matter, any percentage in excess of the highly reasonable two and one-half percent (2 ½%) instantly sought, then the percentage fee should be apportioned into two "addends," the sum of which is equal to the total court-awarded fee percentage.  That is, only a certain part of the total percentage should be apportioned for actual attorneys' fees, and the remainder of the percentage fee amount apportioned to costs and expenses.  *See*, *for instance*, *In re: All Individual Kugel Mesh Cases*, No. PC-2008-9999, 2009 WL 3328368 (R.I. Super., Aug. 11, 2009) (apportioning a twelve percent (12%) fee award into two separate percentage fee component amounts: eight percent (8%) for attorney's fees and four percent (4%) for costs and expenses).

Respectfully Submitted,

**SHELLER, P.C.**

By:  /s/ Stephen A. Sheller___
Stephen A. Sheller
Kimberly Aponte Borden
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
(215) 790-7300 (Tel.)
(215) 546-0942 (Fax)
sasheller@sheller.com
*Counsel for Plaintiffs*

Dated: January 18, 2019

7

## CERTIFICATE OF SERVICE

I, Stephen A. Sheller, hereby certify that I served the foregoing Response in Opposition to the Common Benefit Fee and Cost Committee's (FCC's) Petition for an Award of Common Benefit Attorneys' Fees and Expenses upon all counsel of record via the Court's electronic filing system.

Dated: <u>January 18, 2019</u>                                              /s/ Stephen A. Sheller____
                                                                          STEPHEN A. SHELLER