Raymond A. Cardozo (SBN 173263)
rcardozo@reedsmith.com
Christopher O. Rivas (SBN 238765)
crivas@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: 415 543 8700
Facsimile: 415 391 8269

Specially Appearing Attorneys for Honorable
John K. Trotter (Ret.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>And<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors,<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas & Electric Company<br>☐ Affects bothDebtors<br><br>*All papers shall be filed in the lead case, No. 219-3008 (DM) | Bankr. Case No. 19-3008 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**RESPONSE OF FORMER TRUSTEE JOHN K. TROTTER TO MOTION OF WILLIAM B. ABRAMS PURSUANT TO FEDERAL RULE OF BANKUPTCY PROCEDURE 2004 FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY AND HEARINGS REGARDING THE ACTS AND CONDUCTS OF JAMS NEUTRALS GIVEN NEW EVIDENCE**<br><br>[RELATES TO DOCKET NO. 12766]<br><br>HEARING TO BE DETERMINED BY COURT |

Pursuant to the Court's invitation at the September 13, 2022 hearing, non-party John K. Trotter, the retired former Trustee of the Fire Victims Trust ("Justice Trotter"), submits this response to the *Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New Evidence* [Docket No. 12766] ("Abrams Motion II").

# I. INTRODUCTION

This Court's Order on Motion of William B. Abrams (Dkt. 12682, "Discovery Order") granted the motion in part, denied it in part and provided for focused and *relevant* discovery.

Nevertheless, based on purported "new evidence provided through *LA Times* reporting," Mr. Abrams has now moved for, in his own words, "an order authorizing broad discovery and associated hearings." The Abrams Motion II supposedly provides "sufficient 'good cause' for broad discovery to understand the degree to which the Fire Victim's settlement and associated Fire Victim Trust Agreement" "were unduly influenced and potentially undermined by the role of JAMS in coordination with core parties within this case." According to Mr. Abrams, his purported "new evidence" justifies expanding discovery far beyond what the Court ordered in its Discovery Order.

At the September 13, 2022 hearing, this Court accurately described the so-called "new evidence" as a "newspaper report with no foundation." (9/13/2022 Hg Tr. 34) Such inadmissible hearsay involving matters unrelated to this proceeding has zero relevance and sheds no light on whether the role of JAMS unduly influenced or potentially undermined the Fire Victim's settlement and associated Trust. The *LA Times* reporting thus provides no cause at all, much less good cause, to permit the massive expansion of discovery that Mr. Abrams seeks.

Because Mr. Abrams' baseless innuendo is not just irresponsible, but harmful to the interests of justice, Justice Trotter submits this response to set the record straight on assertions that Mr. Abrams has made relating to Justice Trotter and his relationship with JAMS. Justice Trotter leaves the balance of the response to the Trust and current Trustee.

## II. ABRAMS' "MOTION" VIOLATES RULE 11 AND SHOULD BE DENIED

The Court correctly recognized that the malfeasance of attorney Thomas Girardi that was described in the *LA Times* articles is irrelevant here.[1] Although it may be unnecessary to respond to

---

[1] "Secondly, you paint with a very broad brush, and I am not prepared on your say-so to paint or taint -- paint or taint, pick your word, JAMS or anyone else with the sins of Mr. Girardi and what has come out in that case. Simply not -- we're not going there, and that is -- I agree with you if somehow this Fire Victim Trust, or through any of its representatives, has been tainted by misconduct, then there are consequences, perhaps. I agree with you. But I'm not about to say, Mr. Girardi and all of his failures, his personal, disastrous occasion for so many people, is not going to be imported and infused into this case because somehow Justice Trotter, who was selected in this case was also

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the inaccuracies in those articles as they relate to Justice Trotter, Justice Trotter elects to clarify certain facts, given the irresponsible fashion in which Mr. Abrams has not only further publicized inaccurate reporting, but also misstated even the inaccurate articles themselves.[2] Attached as Exhibit 1 is the statement that Justice Trotter published in response to the *LA Times* reporting. While Mr. Abrams included the unfounded assertions in the *LA Times* articles, and misstated even those, he did not include any part of Justice Trotter's response. As that response makes clear, there are four key points that *LA Times* failed to accurately report:

- All of Thomas Girardi's misconduct involved his mismanagement of funds in his own clients' trust accounts. Justice Trotter had no oversight or involvement in a private attorney's management of his clients' trust accounts.

- Justice Trotter's role in the matters reported in the *LA Times* article was the standard special master role of overseeing the process of reviewing claimants' documentation of injury and making an "allocation"—a determination of the value of the claim. After the Special Master makes such allocations, the amount allocated is deposited into the trust account of the plaintiff's attorney, and that attorney is then supposed to deduct her/his fees, case specific costs or other obligations, and then distribute the net payment to the plaintiff. Those attorneys had fiduciary obligations to their own clients to perform those deductions and distributions properly, and Justice Trotter had no oversight role in the attorneys' performance of their fiduciary duties to their clients.

- With regard to the *Rezulin* settlement, Justice Trotter was appointed with oversight of all aspects of the settlement process and review of the allocation process. The judge that approved the settlement also appointed a bank vice president "to implement the distribution of the settlement funds as directed by the Special Master." Thus, Justice Trotter resolved the claims, and the bank paid them. Justice Trotter had no oversight of any disbursement activity. The *LA Times* failed to report this important fact or mention the appointment of a bank official to oversee disbursement.

- It appears Girardi may have misused the reputation of the jurists involved in his cases to mislead his clients about what those jurists had ruled. Justice Trotter was not privy to any such misrepresentations. This is a problem that a malevolent attorney can cause with either a public or private judge. If such an attorney falsely tells his client "the judge approved this," the judge is not privy to that attorney's conversation with his client and has no ability to correct it.

---

involved in some matter that involved Mr. Girardi, that the *LA Times* wants to make -- draw inferences about. I am not drawing inferences about it." (9/13/2022 Hrg Tr. at 49.)

[2] Mr. Molton provided a good example at the September 13, 2022 hearing: Whereas the *LA Times* article stated that California's Chief Justice had lamented the multifaceted victimization of injured people in the Girardi case, Mr. Abrams misstated the Chief Justice as having lamented the "influence of JAMS" in that victimization. (9/13/2022 Hrg. Tr. at 52.)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case: 19-30088    Doc# 13039    Filed: 10/03/22    Entered: 10/03/22 16:23:39    Page 3 of 10

Mr. Abrams also makes inaccurate statements about Justice Trotter's relationship with JAMS, so Justice Trotter provides the correct facts. Justice Trotter retired from JAMS in 2016, i.e. he stopped taking new cases at that time. He continued to work on cases he had undertaken before he announced his retirement, to finish those cases. Justice Trotter elected to come out of retirement to accept the position of Trustee of the Fire Victim's Trust, but promised his family he would serve as Trustee for two years. See Dkt 12528, p. 7. In April 2020, Justice Trotter resigned from JAMS Panel participation and from JAMS ownership. He was appointed as Trustee of the Fire Victim's Trust. On March 29, 2022, consistent with his earlier promise to his family, Justice Trotter gave 90 days notice to the Trust Oversight Committee of his intent to retire as Trustee. See Exhibit 2.

As a former owner of JAMS, Justice Trotter participated, until his April 2020 resignation, in a profit-sharing agreement among JAMS owners under which he received net deferred income for the period that he was a member of JAMS. These payouts were on a delayed basis that distributed earnings four years after the year in which the income was generated. Thus, Justice Trotter received net deferred income, in 2022, but it was based on income JAMS earned in 2018.

Because none of what Abrams states in his motion is admissible in a court of law, and most of it is false and unsupported by any evidence, his motion violates Rule 11 of the Federal Rules of Civil Procedure. That is reason alone to deny his motion in its entirety.

### III. ABRAMS' SMEAR CAMPAIGN HARMS THE INTERESTS OF JUSTICE

The settlement and Fire Victims' Trust are the product of tireless work from countless persons and entities. The settlement has provided and will continue to provide a massive amount of compensation to the injured, along with peace, finality and repose. The latter non-monetary benefits enable the injured to move on from traumatic experiences. "[T]here is an overriding public interest in settling and quieting litigation." *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). "It is well recognized that settlement agreements are judicially favored as a matter of sound public policy." *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir.1979).

Mr. Abrams has been critical of compensation going to professionals involved in this litigation, complaining that such compensation should go to the victims. But the reality of our legal

system is that compensation of professionals is an inherent part of the resolution of tort claims. Private judicial services help the process by enabling courts with congested dockets to avail themselves of experienced former jurists and by giving parties access to highly skilled former jurists to facilitate resolution of complex matters that otherwise could be tied up in litigation for decades.

By contrast, Mr. Abrams' unfounded smear campaign is harmful and contrary to public policy. His evidence-free spree, of course, inflicts reputational harm on the persons who Mr. Abrams unfairly has smeared, like Justice Trotter. Our law recognizes that a false smear campaign is both wrongful and causes irreparable reputational harm. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) ("False statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas, and they cause damage to an individual's reputation that cannot easily be repaired by counterspeech, however persuasive or effective.").

Mr. Abrams' baseless claims also harm the parties and public by undermining confidence in the administration of justice. He falsely suggests, *without evidence*, that there are grounds to question the propriety and fairness of the settlement and its administration. Such evidence-free assertions improperly *unsettle* the beliefs of settling parties and the public and thereby threaten the salutary benefits of *settlement* and finality. (*Cf. Sherman v. United States*, 356 U.S. 369, 380 (1958) (Frankfurter, J., concurring) ("Public confidence in the fair and honorable administration of justice, upon which ultimately depends the rule of law, is the transcending value at stake."); *United States v. Salas*, 602 F.2d 215, 217 (9th Cir. 1979) ("Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice."); *United States v. Montecalvo*, 533 F.2d 1110, 1112 (9th Cir. 1976) ("The appearance of fairness is as important as fairness-in-fact in maintaining confidence in the administration of justice in the minds of the public.").

Justice Trotter's distinguished career as a lawyer and appellate justice then alternative dispute resolution provider stands out for his vast contributions in allowing countless injured persons to receive compensation, litigation peace and repose. This has enabled the injured to move on to healing and to enjoying the fruits of their recovery, has enabled the defendants to obtain repose and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

move on to other productive activities, and has enabled the courts to move on to address the myriad other disputes in which they also have a duty to dispense justice. As Justice Trotter looks back during his retirement on his remarkable career in the law, he, of course, is not happy to have Mr. Abrams' smear campaign tarnish his reputation and legacy. But more than his interest in his own reputation and legacy, Justice Trotter is concerned that Mr. Abrams' campaign may be upsetting to injured persons who already have endured the traumatic experience of catastrophic fire loss, and may deprive them of the peace, repose and healing that a settlement can help deliver. Justice Trotter is further concerned that Mr. Abrams' campaign may tarnish the excellent work of so many people that have contributed to the settlement and its administration in this case, and in other cases.

## IV. CONCLUSION

This Court ruled in its Discovery Order on the appropriate scope of discovery. Mr. Abrams then followed with another "motion" that was no more than a Rule 11 deficient smear campaign. This Court correctly recognized at the September 13, 2022 hearing that Mr. Abrams' "motion" is not based on any evidence and has nothing to do with the issues relevant to this proceeding. The Court should deny Mr. Abrams' latest "motion" in its entirety.

DATED: October 3, 2022

REED SMITH LLP

By: _____
Raymond A. Cardozo

By: _____/s/ Christopher O. Rivas_____
Christopher O. Rivas

Specially Appearing Attorneys for
Honorable John K. Trotter (Ret.)

# EXHIBIT 1

# Justice John K. Trotter's Response to Recent Los Angeles Times Articles

Recent articles in the Los Angeles Times criticized the role of Private Judging (Special Masters, Arbitrators and Mediators) and suggested it was somehow related to disgraced lawyer Tom Girardi misappropriation of funds. I was one of the Judges referenced in the article and while I cannot speak on behalf of others, I would like to provide important facts on the cases in which I was involved in order to set the record straight and clearly explain the role of a Special Master.

- In 2005 I was appointed Special Master on a case involving the drug Rezulin "with oversight of all aspects of the settlement process and review of the allocation process." At the same time and in the same order the Judge also appointed a Vice President of the Bank "to implement the distribution of the settlement funds as directed by the Special Master." The clear purpose of the two appointments was that I resolve the claims and the bank pay them. The article failed to include this important fact and wrongly asserted that I had responsibility for the distribution of funds when I in fact had no access to the bank account.
- The article also incorrectly stated that I was paid for the Rezulin work when in fact the payment went to JAMS. It omitted to say that those services lasted two years, involved the evaluation of over 4,000 claims and the apportionment of $66 million dollars in which JAMS staff and facility were used for the many hearings over that two-year period.
- Beyond mistakenly suggesting that the distribution of money was under the auspices or control of the Special Master, the article also failed to capture universal aspects of tort settlements:
    - that an "allocation" either in the form of a Jury Award or Settlement or determination of value by a Settlement Master is a gross sum paid to the plaintiff attorney and deposited into their trust account; and
    - That the attorney then deducts his/her fees, case specific costs, and in most personal injury cases, lien obligations, that net payment is the "distribution".

It appears all of Mr. Girardi's alleged misconduct occurred after money had been placed in his trust account. Neither the Trial Judge nor Settlement Master were intended to be monitors of an attorney's trust account. It should be noted that in a recent plane crash case (that was not tried by a Private Judge, but by a Federal Judge) allegations against Mr. Girardi were that after the settlement funds were deposited in his trust account, he inappropriately used them for his own purposes.

My criticism of the LA Times should not in any way be taken as support for Mr. Girardi's reported actions. I am terribly saddened by his alleged conduct and the stain it leaves on our profession. But it is critical that one man's illegal acts not tarnish the reputation of Alternative Dispute Resolution which provides a great service to the Courts, legal community and the public. The people who work in Alternative Dispute Resolution as Special Masters, Arbitrators and Mediators are essential in today's legal world and they do not deserve the derision shown by the Los Angeles Times misinformed articles.

**Justice John K. Trotter (Ret.)**

Justice John K. Trotter is a former Presiding Justice of the Fourth District Court of Appeal, a past president of the Orange County Bar Association, past president of the American Board of Trial

# EXHIBIT 2



March 29, 2022

Dear Members of the Trust Oversight Committee,

It has been my honor and privilege to serve as the Trustee of the PG&E Fire Victim Trust since its formation on July 1, 2020. Like you, I have devoted the past two years addressing the financial hardship of tens of thousands of deserving fire victims. While together we have made great progress in compensating them for their tragic losses, there is still more to be done. Unfortunately, I will not be part of that effort. I have decided after careful consideration that the time has come for me to hand over the reins to a successor Trustee. I will be resigning as Trustee, effective as of June 30, 2022. I thank you for your generous contribution of time, effort and most of all, your wise counsel.

I know that each of you will continue the good work of bringing relief to the fire victims. I also know you will provide the same guidance and support for my successor Trustee to the best of your ability. During this next 90 days, I will continue my full commitment to the Trust and to the fire victims. I will be proactive to ensure a smooth transition.

I wish you all the best in your continuing roles.

With appreciation,

Justice John K. Trotter (Ret.)