1                  UNITED STATES BANKRUPTCY COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                         -oOo-

4   In Re:                    ) Case No. 19-30088
                             ) Chapter 11

5   PG&E CORPORATION AND PACIFIC    )
   GAS AND ELECTRIC COMPANY,      ) San Francisco, California

6                           ) Tuesday, October 11, 2022
          Reorganized Debtors. ) 10:00 AM

7   _____ )
                             REORGANIZED DEBTORS'

8                             OBJECTION TO PROOF OF CLAIM
                             NO. 2090 FILED BY AMIR

9                             SHAHMIRZA FILED BY PG&E
                             CORPORATION [12130]

10

11                  TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE DENNIS MONTALI

12             UNITED STATES BANKRUPTCY JUDGE

13   APPEARANCES (All present by video or telephone):
   For the Reorganized       THOMAS B. RUPP, ESQ.

14   Debtors:               Keller Benvenutti Kim LLP
                        650 California Street

15                       Suite 1900
                        San Francisco, CA 94108

16                       (415)469-6723

                       STEVEN A. LAMB, ESQ.

17                       Rovens Lamb LLP
                       2601 Airport Drive

18                       Suite 370
                       Torrance, CA 90505

19                       (310)536-7830

20   For Amir Shahmirza:      LAWRENCE A. JACOBSON, ESQ.
                       Cohen and Jacobson, LLP

21                       66 Bovet Road
                       Suite 285

22                       San Mateo, CA 94402
                       (650)261-6280

23

24

25

Case: 19-30088   Doc# 13063   Filed: 10/12/22   Entered: 10/12/22 13:14:54   Page 1
of 33

eScribers
(973)406-2250 | operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    Court Recorder:                    LORENA PARADA/ANKEY THOMAS
                                         United States Bankruptcy Court
19                                       450 Golden Gate Avenue
                                         San Francisco, CA 94102
20

21    Transcriber:                       RIVER WOLFE
                                         eScribers, LLC
22                                       7227 N. 16th Street
                                         Suite #207
23                                       Phoenix, AZ 85020
                                         (973)406-2250
24

      Proceedings recorded by electronic sound recording;
25    transcript provided by transcription service.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   SAN FRANCISCO, CALIFORNIA, TUESDAY, OCTOBER 11, 2022, 10:00 AM

2                              -oOo-

3       (Call to order of the Court.)

4           THE CLERK:  Court is now in session, the Honorable

5   Dennis Montali presiding.  Calling the matter of PG&E

6   Corporation.

7           THE COURT:  Good morning.  Who's appearing for PG&E

8   today, please?

9           MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

10  Keller Benvenutti Kim for the reorganized debtors.

11          THE COURT:  And appearing for the claimant?

12          MR. JACOBSON:  Lawrence Jacobson.  Good morning, Your

13  Honor.

14          THE COURT:  Good morning, Mr. Jacobson.

15          MR. RUPP:  Your Honor, I think we have one more --

16          MR. LAMB:  Good morning --

17          MR. RUPP:  -- appearance for PG&E.

18          MR. LAMB:  Good morning, Your Honor.  This is Steven

19  Lamb on behalf of PG&E also.

20          THE COURT:  All right.  So Mr. Jacobson, I just didn't

21  see your name on the call.  I saw some unidentified guest.

22          MR. JACOBSON:  Judge, I tried to log on through the

23  computer, and I think I was following instructions correctly

24  and it kept telling me my credentials were not correct.

25          THE COURT:  Yeah.  I had some problems today, too, so

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  maybe it was AT&T's fault.

2       Well, look, there are a bunch of things that are
3  confusing about the way the papers are submitted because Mr.
4  Jacobson, this is a claim objection, and you're asking for
5  relief from stay and abstention.  And there are no motions for
6  either.

7       Mr. Rupp or Mr. Lamb, I'm confused from your point of
8  view because you say I could dispose of this because there are
9  no facts in dispute, but then you say some limited discovery is
10 necessary.

11      So let me just clarify a couple of things, and then
12 I'll hear from both sides.  From my reviewing of the papers, it
13 doesn't seem to be an issue as to the lines that go across the
14 property and whether the lines -- towers on the power lines,
15 but rather whether PG&E violated the claimant's rights --
16 whomever the claimant is -- the claimant's rights by lowering
17 the level of the power lines at some point later on.  And I
18 don't see any discussion in the papers about that.

19      So I'm kind of confused about where we go from here.
20 Why don't I let you start, Mr. Jacobson?  You are the claimant.
21 So what's your position today, and what do you think I ought to
22 do?  And --

23      MR. JACOBSON:  Thank you.

24      THE COURT:  -- don't tell me you think I ought to -- I
25 ought to abstain or grant relief from stay because you haven't

PG&E Corporation and Pacific Gas and Electric Company

1    asked for either one of those properly.

2            MR. JACOBSON:  Well, thank you.  Well, let me start

3    with the bigger picture and then come to that last point.

4            There was an event in 2018 that related to the

5    lowering of the lines, as you articulated.  There had been

6    smaller-based towers on the adjacent properties at either end

7    that were at a height.  And in 2018, with no communication, no

8    permission, no granted authority, PG&E installed massively

9    larger towers and bigger lines and lowered them across the

10   property, affecting the use and the value.

11           The claimant's state court counsel promptly filed a

12   complaint based upon the set of facts that was known at that

13   point from his pleading perspective.  That circumstance caused

14   the claimant to procure the record of survey by which the

15   surveyor, who is an expert, examined the entire chain of title

16   and concluded that there are no easement rights of record at

17   all, not just at a height, but at all.

18           So that then raises the current issue, are there any

19   easement rights at all, are there easement rights under some

20   legal theory at a particular higher height, and whether there

21   is some form of prescriptive use entitlement, as PG&E seems to

22   argue.

23           And it's also confusing from a timing standpoint

24   because the complaint was filed in 2018.  PG&E demurred to that

25   complaint in early 2019 and then after the filing of the

PG&E Corporation and Pacific Gas and Electric Company

1    petition, gave notice to the state court and parties about the

2    filing and then took the additional act of withdrawing the

3    hearing on the demurrer.

4          THE COURT:  Yeah, but that's all procedural history

5    that's of no particular relevance today.  I mean, your --

6          MR. JACOBSON:  Well, I (indiscernible) --

7          THE COURT:  as to -- well, your recital as to what

8    happened in 2018 obviously is critical, but well, I mean, we're

9    back to my point.  Today, I have to decide whether to act on a

10   claim objection -- well, let's clarify one thing.

11         Your surveyor says there were no easements of records,

12   and yet the plat map that's in the record shows two recorded

13   easements in 1923.  No one has presented me with those actual

14   easements, but do you think those don't exist, Mr. Jacobson?

15         MR. JACOBSON:  Yes, I do think that.

16         THE COURT:  They don't exist?

17         MR. JACOBSON:  (Indiscernible) yeah.

18         THE COURT:  Where did they go?  Where did they go?

19   Are they still of record?

20         MR. JACOBSON:  Well, there are at least two issues

21   about that.  One is the surveyor, Mahoney (phonetic), indicates

22   that they are in the approximate area of this property, but

23   it's an area of fill, it's an area of change, and his statement

24   is that you can't locate wherever that easement would be, other

25   than that the City of San Francisco, I think in 2000 or so, did

PG&E Corporation and Pacific Gas and Electric Company

1   its record of survey that shows the transmission lines on an

2   adjacent property.  So the first point is, whatever those

3   easements were back then, they can't be identified as to a

4   location.

5          And then if you read Mahoney's report, that August

6   11th report that is pages 4 through 8 of that compendium, he

7   explains that there was a history of conveyances between the

8   City of San Francisco and the State of California, and that the

9   easements were extinguished or relocated by reason of the

10  conveyances and the ordinance and that the deed from the

11  claimant's predecessor -- the deed to the claimant's

12  predecessor was a director's deed.

13         And a director's deed, by definition, describes what

14  is and isn't being conveyed and what rights exist or interests

15  have been asserted against the property.  And the director's

16  deed by which the claimant's predecessor and the claimant took

17  title have no easements, not the 1923 ones or any other ones,

18  except for a sliver up at the end for landscaping of something

19  that's now paved.  So (indiscernible) --

20         THE COURT:  But your client doesn't dispute -- wait,

21  he doesn't dispute that the lines crossed the property when he

22  bought the property, did he?

23         MR. JACOBSON:  That's correct.

24         THE COURT:  And if you and I were out there at the

25  corner of 101 and 2380 (phonetic), I bet we'd see those lines.

PG&E Corporation and Pacific Gas and Electric Company

1    So --

2            MR. JACOBSON:  We sure would.

3            THE COURT:  -- are you saying that the lines should be

4    removed or that your client should be provided damages if the

5    lines were improperly lowered or both?

6            MR. JACOBSON:  Both.  Well, or any alternative.  They

7    can move them, or they can compensate for them.  They shouldn't

8    be there.  And the surveyor will testify that --

9            THE COURT:  But Mr. Davidson (sic), he bought the

10   property with them there over the property.  Right.  You just

11   have --

12           MR. JACOBSON:  Well --

13           THE COURT:  -- stated that point, didn't you?

14           MR. JACOBSON:  -- but that goes back to what is the

15   effect of that?  If they had no entitlement to be there in the

16   first place, what is the legal fact, the fact that they were

17   there when he bought it.  And then they (indiscernible) --

18           THE COURT:  Well, what if they were there -- well,

19   you're back to prescriptive easement, that they may have been

20   there for sixty years, whether or not there was an easement of

21   record.

22           MR. JACOBSON:  And then it gets you to the -- so what

23   is the easement, where is it located, and is it for the lines

24   that were maintained at the height that existed in your sixty-

25   year (indiscernible) --

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  I understand.  I understand the height

2    issue.  To me, it's a more -- it's a very discreet question of

3    the height issue.  But last question for you, and then I want

4    to hear from Mr. Lamb or Mr. Rupp.

5          There's a lot of paper being spent on who the claimant

6    is.  Why isn't your corporate client substituted in as the

7    claimant here?  Do I suspect that maybe he doesn't want to pay

8    the State Board of Equalization to reinstate a license?  I

9    mean, what is the big issue here of who the claimant is?

10          MR. JACOBSON:  If that's a question to me --

11          THE COURT:  Yeah, it is to you because --

12          MR. JACOBSON:  Oh, yeah --

13          THE COURT:  -- one argument would be you don't have

14    a -- your individual client doesn't have a claim.

15          MR. JACOBSON:  Well, he's here as the agent of the

16    entity that is disclosed in the --

17          THE COURT:  But I know that.  I know he's an agent,

18    but that doesn't make him the claimant.  So why is there an

19    argument about who the claimant is?

20          MR. JACOBSON:  I would be pleased to file an amended

21    claim only in the name of the corporation.  And there's no

22    suspension issue.  There's no franchise tax board issue.

23          THE COURT:  Okay.  Well, then why didn't you?

24          MR. JACOBSON:  It just (indiscernible) caught up in

25    this objection, and that's one of the things I'd like to be

PG&E Corporation and Pacific Gas and Electric Company

1    allowed to do.

2            THE COURT:  Okay.  But again, there's nothing in the

3    papers that say that.

4            All right.  Mr. Lamb or Mr. Rupp, what do you think I

5    should do today?

6            MR. LAMB:  This is Steve Lamb, Your Honor.  Thank you

7    for your time.

8            And I think that the Court is absolutely correct

9    regarding the party.  We've addressed that.  I don't think we

10   need to address that any further.

11           I would just point out that we had a claim, and then

12   we asked for an information request.  And in docket number

13   12131-4, there's a response, and it's Mahoney's report, not the

14   survey, but the report.  And in that report, he refers to this

15   ordinance 3975 that Mr. Jacobson has referred to.  And

16   according to that report, it lists a series of easements.  And

17   as the Court noted, it identifies a plat map that clearly

18   reflects those easements.

19           And Mahoney's position in response to the report is,

20   well, those easements have been relocated or extinguished, and

21   he relies on 3975.  We got a copy of that in the information

22   request response.  It did not include a legible copy of 3975.

23   So we obtained it, and in response, we filed our objection.

24   And the objection lists that, together with my declaration,

25   which provides a legible copy and clearly states that that's

PG&E Corporation and Pacific Gas and Electric Company

1  not what the ordinance says, that they weren't relocated or

2  extinguished in any way.

3  So from our position, what happens now is Mr. Mahoney

4  submits a subsequent declaration which says, well, I've looked

5  at this record of survey again, and it doesn't show any

6  easements.  He doesn't really address ordinance 3975.  He

7  doesn't address the initial statement of claim.  He just

8  changes positions.  And we believe that they're judicially

9  estopped from that and so have already submitted this position

10  and haven't really responded, Your Honor.

11  So that's what we're faced with, in addition to the

12  fact that all this record of survey discussion is largely

13  irrelevant because it doesn't have any legal impact.  Is there

14  an easement, and Mahoney's clearly identified them.  He's

15  attached them.  They're part of the record.  His position is

16  they've been relocated or extinguished.

17  When I pointed out that that's, in fact, not the case,

18  they really don't address that.  They just change position and

19  say, well, we've taken another look, and there's no easement.

20  And that doesn't really address it, Your Honor.

21  THE COURT:  Okay.  Okay.  But what about the lowering?

22  Lowering is not a --

23  MR. LAMB:  Well, the lowering --

24  THE COURT:  -- a relocation.

25  MR. LAMB:  Sure.  The lowering issue occurred quite

PG&E Corporation and Pacific Gas and Electric Company

1   some time earlier, and what happened in that regard was they

2   tried to say that it was too low.  And we said, no, actually,

3   there's a general order that says it is the appropriate height.

4   So they really haven't addressed that.  Now, they changed

5   position to say, well, they should have been there in the first

6   place.

7       What they started with saying was they were there, and

8   they were too low.  We responded and said they're not too low.

9   And then they said, well, they're not there in the first place.

10  And then they said, well, I think they're there, but there's

11  this 3975 ordinance, so they've been relocated or and

12  extinguished.

13      So we provided them a copy of that.  We showed that's

14  not the case.  And now they came back with another declaration

15  that says, well, we've looked again, and they're not there.

16      THE COURT:  Okay.  Why don't you make a motion for

17  summary judgment?  I mean, if you're confident that you can

18  prove the case with competent evidence, we can take -- we can

19  do --

20      MR. LAMB:  Yeah.

21      THE COURT:  -- a motion for summary judgment on claim.

22  I mean, Mr. Lamb --

23      MR. LAMB:  Well, Your Honor, we have --

24      THE COURT:  -- I don't know if you're -- well, wait a

25  minute.

PG&E Corporation and Pacific Gas and Electric Company

1      MR. LAMB:  -- we have to -- we have to --

2      THE COURT:  I don't know if you're familiar with the

3  procedures on the claim objection, but we have in dispute under

4  the local rules whether I can dispose of it on a matter of law.

5  And to me, there's enough to be concerned about that I could

6  say, well, if you're right, make a motion for summary judgment.

7  And if you do, then you can deal with -- and let's assume that

8  we're not going to get bogged down on who the actual claimant

9  is.

10      MR. LAMB:  Sure.

11      THE COURT:  It's either the corporation or its owner.

12  And if you're right, you'll win.  And if you're wrong, then

13  it'll either have to be resolved in a traditional fact dispute

14  case, either by this Court or maybe it would be appropriate to

15  send it back to state court.

16      But I mean, is there any reason why you couldn't put

17  it together as a motion for summary judgment?

18      MR. LAMB:  Well, absolutely not.  But my

19  understanding --

20      THE COURT:  Okay.

21      MR. LAMB:  -- Your Honor -- I think that that could be

22  done, and I am not a bankruptcy counsel, so I rely on Mr. Rupp.

23  But frankly, my understanding is that what happens here is once

24  you do the objection, the burden shifts, and they have to

25  present something.  And they didn't present anything.  They

PG&E Corporation and Pacific Gas and Electric Company

1 really didn't.

2 THE COURT: Well --

3 MR. LAMB: They didn't really respond.

4 THE COURT: Okay. But if I tell him -- but leave

5 aside burden of proof because if Mr. Jacobson says we're

6 ready and we're prepared to prove our case at a trial because

7 there are facts in dispute, then your response to that is there

8 are no material facts in dispute. I can win by summary

9 judgment.

10 I don't want to waste everybody's time, yours and mine

11 included, on a motion for summary judgment that was doomed to

12 fail because there are material facts in dispute. But based

13 upon your recitation and your --

14 MR. LAMB: Okay.

15 THE COURT: -- and I didn't take the time to parse out

16 Mr. Mahoney's statement or -- I mean, I started with where the

17 hell is the easement? Mr. Rupp is familiar with the fact that

18 I have another matter pending in our court involving a great,

19 big, powerful, high power line across somebody's home. And

20 we're going to perhaps go to trial on that subject.

21 And so I'm familiar with the doctrine, but I am used

22 to looking at the easements. And if I had a declaration that

23 says, here's the easement and it hasn't been reconveyed, then

24 it'll be up to Mr. Jacobson to rebut that.

25 Anyway. Well, Mr. Lamb, leave aside the question of

PG&E Corporation and Pacific Gas and Electric Company

1    whether you should make that motion.  What do you think I

2    should do today?

3            MR. LAMB:  Well, our position is you should sustain

4    the objection because they haven't met their burden and it

5    hasn't been shifted, and I don't think it's appropriate to

6    simply submit another declaration which is inconsistent with

7    the prior one without addressing it.  I don't think that that's

8    consistent with the Plice v. Crone (phonetic) case that we

9    cited.

10           But I do understand your argument regarding summary

11   judgment.  I think it's a question, though, of whether or not

12   procedurally we've gotten to the point where we need to do

13   that.  And I don't think we can.

14           THE COURT:  Okay.  Okay.  Mr. Jacobson.

15           MR. JACOBSON:  Yeah.  Judge, I would just comment,

16   generally and preliminarily, that that was not an accurate

17   assessment of Mr. Mahony's position or the positions of the

18   claimant.  There has never been a change in position.  He's

19   been perfectly consistent.  He expressed the same conclusion

20   he's expressing now in his report of August 11 of 2018.

21           It's a five-page analysis of the San Francisco

22   ordinance, the chain of title, all the ten or twelve documents

23   involved in that process, and it supports his conclusion that

24   is stated in his declaration at paragraphs 13, 14, 15, and 16

25   of PG&E does not hold any easements of record or traceable

PG&E Corporation and Pacific Gas and Electric Company

1   through recorded documents for transmission across the power

2   line -- across the property --

3           THE COURT:  That does sound like a legal conclusion.

4   That does sound like a legal --

5           MR. JACOBSON:  Well --

6           THE COURT:  -- conclusion by a surveyor.  I mean,

7   surveyors aren't --

8           MR. JACOBSON:  Well, he's a --

9           THE COURT:  -- qualified to give legal conclusions,

10  are they?

11          MR. JACOBSON:  He has an expertise in analyzing these

12  documents from a surveyor's perspective as to where are the

13  boundaries and what are the interests of record on it.  So it

14  is consistent with his expertise.  And the process with the

15  record of survey is that it's prepared by the surveyor and then

16  presented to the county (audio interference) --

17      (Off the record due to technical issues.)

18          THE COURT:  So somehow the recording stopped while you

19  were talking.

20          Well, I mean, I think it's a stretch to have a

21  surveyor, as qualified as he may be, to opine on the ultimate

22  question that there is no easement of record -- I mean, no

23  enforceable easement, when that's a leap.  But if I set --

24          MR. JACOBSON:  Well, the one thing --

25          THE COURT:  -- this for trial -- if I set this for

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    trial --

2            MR. JACOBSON:  One thing that --

3            THE COURT:  -- would he be -- wait, if I set this --

4            MR. JACOBSON:  Sorry.

5            THE COURT:  -- for trial, would he be your witness?

6            MR. JACOBSON:  He will be a witness --

7            THE COURT:  He would be your --

8            MR. JACOBSON:  -- yes.

9            THE COURT:  Would he be your expert witness on the

10   subject?

11           MR. JACOBSON:  Yes.

12           THE COURT:  Well, okay.

13           MR. JACOBSON:  He will take you through the entire

14   process of what surveying involves, what they do to identify,

15   and how it's reviewed and approved by the county.

16           But I want to say one thing I think is really

17   important and missing here is all of the information in front

18   of you has come from the claimant.  In terms of where the hell

19   is the easement, PG&E has never produced anything that shows

20   any easement located where these power lines are.

21           And they have got no diagrams.  They've got no maps.

22   They've got no records of survey.  All they do is look at

23   something from 1923 with no history, no analysis, and say you

24   should grant summary judgment at this status conference.  It is

25   complicated --

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Well, I understand, but then I'll put the

2    question to you.  What if I told you to make a motion for

3    summary judgment?  You believe you could make one?  In other

4    words, you believe that, with no material facts in dispute, you

5    can make a prima facie case and carry a burden that you have --

6    and leaving aside perhaps the measure of damages.

7    But your position seems to be that your client --

8    again, we'll leave aside which client -- one of your clients --

9    your client owns the property, and if you are standing on that

10   property, you'd see towers and powerlines across the property.

11   And your view is they don't belong there, and you're entitled

12   to damages.  And you can make the case?  No material facts in

13   dispute, you believe?

14   MR. JACOBSON:  Correct.  On that legal issue, I agree,

15   I can make a motion for summary judgment.  I do want -- the

16   reason I was giving you the state court history is because that

17   complaint was filed since 2018.  There's been a --

18   THE COURT:  No, I know.

19   MR. JACOBSON:  -- continuing trespass, an additional

20   trespass, and the procedure in state court, if it were to go

21   forward there, is that the plaintiff, the claimant, files an

22   amended complaint to deal with the demurrer issues.  Then the

23   case goes to trial on the amended complaint.  So --

24   THE COURT:  No, I know that.  There's nothing

25   really -- that's the same as federal practice.  I mean, if it

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  had been a 12(b)(6) motion and withdrawn or amended complaint,

2  it's the same.  I know that.

3          But my point is that it hasn't happened.  We know

4  why -- I mean, I don't know why they actually withdrew the

5  demurrer, but it was a bankruptcy that stayed the action.  And

6  nobody in three years sought relief from stay.  And so here we

7  are.

8          And to me, procedurally, it's perfectly proper for

9  your client to file a claim and for the debtor to object to the

10  claim.  And as a matter of discretion whether I ship it back to

11  state court or not is a different question.

12          MR. JACOBSON:  One procedural --

13          THE COURT:  Well, I --

14          MR. JACOBSON:  -- issue here is that the state court

15  counsel who filed the proof of claim became physically --

16          THE COURT:  No, I understand.

17          MR. JACOBSON:  -- (indiscernible) practice.

18          THE COURT:  You made that point, but that's not a

19  procedural issue.  That's a personal issue.

20          But Mr. Jacobson, your client has a very capable

21  lawyer representing him this morning, known to me as very

22  capable lawyer.  And so Mr. Capable Lawyer, you believe you can

23  make the summary judgment?  I think that's what I should tell

24  you to do.  I mean, Mr. Lamb thinks that I should put the

25  burden on you, and I guess maybe that's true.

PG&E Corporation and Pacific Gas and Electric Company

1    And so I guess my question is, well, why don't you

2    just do that?  And I mean, I realize I'm not trying to put your

3    client to an unnecessary effort or expense, but the fact of the

4    matter is, if you can do it, you'll get it from me very

5    quickly, and we don't have to worry about the poor judge that

6    was the subject of a portion of your argument who is going to

7    have to deal with it if I send it back to her.

8    So what's your response on that invitation?

9    MR. JACOBSON:  To accept it.

10   THE COURT:  Okay.

11   MR. JACOBSON:  The preferred alternative would be to

12   go back to state court, amend the complaint, and finish it

13   where it started.  But if the bankruptcy process puts this

14   issue in the bankruptcy court on the legal issue first, I'm

15   prepared to make that motion.

16   THE COURT:  Mr. Jacobson, again, I have already

17   complimented you about your skills, but you've had three years

18   to file a motion for relief from stay, and you didn't.  And you

19   made a very passionate argument in writing and orally and

20   tucked away at the end is I should get relief from stay.  And

21   you know that's not the way to do it procedurally.

22   So the point is, if you're confident that you can show

23   as a fact matter that the law is in your favor and there is

24   some sort of trespass then -- maybe at this Court or maybe it

25   should be sent out for measuring the damages, I don't know.

PG&E Corporation and Pacific Gas and Electric Company

1    I'm not going to decide that because Mr. Lamb thinks he can

2    beat you on the papers.  You think you can beat him on the

3    papers.

4           So I'm going to -- unless Mr. Lamb or Mr. Rupp have a

5    contrary view, I'm going to say, okay, let's have a motion from

6    the claimant.  First of all, you and counsel see if you can

7    meet and confer on the subject of can we agree on who the

8    claimant is.  And if there's no agreement between the two of

9    you, then the motion (indiscernible) should say who the

10   claimant is and why the claimant is entitled to it.

11          I'm not going to get bogged down on whether the

12   corporate entity -- sorry, I forgot the name, but you know who

13   I'm talking about -- whether it should have filed the proof of

14   claim.  I'll accept that the debtor was on notice as to an

15   assertion of rights by somebody affiliated with the property

16   that is the subject of this discussion.

17          When can you file your motion?

18          MR. JACOBSON:  I am going to be away the first half of

19   November.

20          THE COURT:  Okay.

21          MR. JACOBSON:  Say the first week of -- end of the

22   first week of December.

23          THE COURT:  Okay.  Mr. Lamb, any reason why we

24   shouldn't go that way?

25          MR. LAMB:  Well, Your Honor, we've already addressed

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the procedural aspect of the objection, but if we're going to

2    proceed to an evidentiary finding under summary adjudication or

3    summary judgment, then I don't see any reason to delay it.  I

4    mean, whenever they want to set it that's at the Court's

5    convenience.

6         I would just suggest that perhaps counsel can propose

7    a briefing schedule, and I can confer with Mr. Rupp if that's

8    what we're going to do, if that's what the Court's going to do,

9    and then we should address it there.  That would be my

10   proposal.

11        THE COURT:  Well, remember, again, we're back to

12   bankruptcy procedure.  This extended discussion proves that it

13   would be improper for me to make a ruling in favor of PG&E on

14   this record even though you're confident, Mr. Lamb, that

15   perhaps I could.  And I don't feel that it would be faithful to

16   our procedure when it's clear that there are no facts in

17   dispute and therefore it's clear as a matter of law that you

18   should win.  For example, here, Mr. Jacobson believes it's well

19   established that there are facts that are not in dispute that

20   are in his favor.

21        So the correct thing to do, and it's what we would do

22   even if there had been no state court suit, I would have said,

23   okay, let's set it for a trial or summary judgment.  And Mr.

24   Jacobson knows the procedure.  And if I had decided to send

25   this thing back to state court, presumably the same process

              PG&E Corporation and Pacific Gas and Electric Company

1    would happen.

2            Mr. Lamb, you made a reference to a case called -- you

3    said Crone (phonetic).  I wasn't familiar with the case.  And

4    it doesn't matter what it says.  The point is, for the reasons

5    I've stated, I can't make a ruling in your favor today.

6            And Mr. Jacobson is confident that he can establish as

7    a matter of law that his client's rights need to be vindicated

8    and quantified.  And all you have to do is show that he doesn't

9    have any rights to quantify and that the law would come out in

10   favor of your side and no matter who his claimant is and no

11   matter what their version of the facts are.

12           And I'm going to accommodate people's personal

13   schedules, particularly when the matter is complicated like

14   this.  So I'm going to let Mr. Jacobson file a motion for

15   summary judgment.  And our rules have a normal procedure.  Mr.

16   Rupp's quite familiar with the routines of where we set things

17   on the PG&E calendar.

18           So what I think I'll do is I will give Mr. Jacobson a

19   deadline to file his motion for summary judgment on the -- and

20   I guess it's a partial summary judgment -- I'm entitled to

21   damages to be determined for the following reasons, A, B, C.

22   Your response would be, you're not entitled to any damages,

23   therefore your claim should be disallowed, period.

24           And if I tell Mr. Jacobson I'll give you till December

25   8th to file the motion, then we'll just set it on the regular

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    calendar for PG&E. I think, Mr. Rupp, you're with me. That

2    would be in early January, right? Whatever our first January

3    calendar date would be the normal way to set a motion that was

4    filed on around December 8th; isn't that correct?

5    MR. RUPP: Yes, Your Honor, that would be early

6    January. I don't want to speak for either Mr. Jacobson or Mr.

7    Lamb, who'll be endeavoring to do all this. But it raises the

8    issue of subsequent briefing coming up right around and through

9    the holidays. But I think whatever date the Court wants to

10    set, and if the parties come together and want to agree to make

11    changes to those dates, the Court's always been very receptive

12    to that.

13    THE COURT: And I'll do that -- I'll continue to be

14    that way. Mr. Jacobson's a veteran of my procedure, and he

15    knows that too. And Mr. Jacobson, I'll let you meet and confer

16    with Mr. Lamb to talk about an agreed schedule.

17    But why don't we -- why don't we do the following. I

18    will say that I'd like to have the procedural schedule resolved

19    by the two counsel, and the tentative process will be a motion

20    for summary judgment for the claimant to be filed no later than

21    December 8th.

22    Ms. Parada, what is our next PG&E calendar after

23    December 8th? Just call that status conference. It's about

24    the 11th, isn't it? No? Hmm?

25    THE CLERK: One moment, Your Honor. We have December

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  13th.

2          THE COURT:  Okay.  So Mr. Jacobson and Mr. Lamb, I

3  think I'm about to lose my connection here.  I'm going to --

4  I'm going to -- I'm going to just pencil in or put on the

5  calendar a continued status conference on this claim objection

6  for December 13th, but my hope is that I never have to do that.

7  And it's there in case thing gets off track.

8          But on the assumption that a motion is filed by

9  December 8th, then Mr. Jacobson and Mr. Lamb can work out a

10  mutually convenient schedule to accommodate their personal

11  needs, their holiday schedules, and everything else.  And it'll

12  be on our routine and regular law and motion calendar.

13          The December 13th date is just a safety valve in case

14  this procedural scheduling doesn't work and there's any

15  disagreement and we're just there.  But if we get a motion on

16  file on and an agreed briefing schedule between counsel, we'll

17  just cancel that December 13th date.  Okay.  Everybody clear?

18          MR. JACOBSON:  Yes, Your Honor.

19          MR. LAMB:  Clear, Your Honor.

20          MR. JACOBSON:  This is Jacobson.  We've made mutual

21  accommodations on timing, and I would be confident that we can

22  make those arrangements.

23          THE COURT:  Yeah, that's good.  Sounds good to me.

24          Okay.  Mr. Lamb, thank you for your time.  I'll look

25  forward --

PG&E Corporation and Pacific Gas and Electric Company

1           MR. LAMB:  Thank you, Your Honor.

2           THE COURT:  -- to hearing from you, and I will

3   conclude the matter.

4           I'm going to conclude the hearing and -- I can talk to

5   my staff.  Thank you.  Thank you for your time, all counsel.

6           MR. JACOBSON:  Thank you.

7           MR. LAMB:  Thank you, Your Honor.

8      (Whereupon these proceedings were concluded at 10:33 AM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T I O N

 2

 3   I, River Wolfe, certify that the foregoing transcript is a true

 4   and accurate record of the proceedings.

 5

 6

 7

 8   _____

 9   /s/ RIVER WOLFE, CDLT-265

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  October 12, 2022

16

17

18

19

20

21

22

23

24

25
```

of 33
(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**absolutely (2)**
10:8;13:18
**abstain (1)**
4:25
**abstention (1)**
4:5
**accept (1)**
20:9;21:14
**accommodate (2)**
23:12;25:10
**accommodations (1)**
25:21
**according (1)**
10:16
**accurate (1)**
15:16
**across (6)**
4:13;5:9;14:19;16:1,
2;18:10
**act (2)**
6:2,9
**action (1)**
19:5
**actual (2)**
6:13;13:8
**actually (2)**
12:2;19:4
**addition (1)**
11:11
**additional (2)**
6:2;18:19
**address (6)**
10:10;11:6,7,18,20;
22:9
**addressed (3)**
10:9;12:4;21:25
**addressing (1)**
15:7
**adjacent (2)**
5:6;7:2
**adjudication (1)**
22:2
**affecting (1)**
5:10
**affiliated (1)**
21:15
**again (6)**
10:2;11:5;12:15;
18:8;20:16;22:11
**against (1)**
7:15
**agent (2)**
9:15,17
**agree (3)**
18:14;21:7;24:10
**agreed (2)**
24:16;25:16
**agreement (1)**
21:8
**allowed (1)**

10:1
**alternative (2)**
8:6;20:11
**always (1)**
24:11
**amend (1)**
20:12
**amended (4)**
9:20;18:22,23;19:1
**analysis (2)**
15:21;17:23
**analyzing (1)**
16:11
**appearance (1)**
3:17
**appearing (2)**
3:7,11
**appropriate (3)**
12:3;13:14;15:5
**approved (1)**
17:15
**approximate (1)**
6:22
**area (3)**
6:22,23,23
**argue (1)**
5:22
**argument (5)**
9:13,19;15:10;20:6,
19
**around (2)**
24:4,8
**arrangements (1)**
25:22
**articulated (1)**
5:5
**aside (4)**
14:5,25;18:6,8
**aspect (1)**
22:1
**asserted (1)**
7:15
**assertion (1)**
21:15
**assessment (1)**
15:17
**assume (1)**
13:7
**assumption (1)**
25:8
**AT&T's (1)**
4:1
**attached (1)**
11:15
**audio (1)**
16:16
**August (2)**
7:5;15:20
**authority (1)**
5:8
**away (2)**
20:20;21:18

## B

**back (11)**
6:9;7:3;8:14,19;
12:14;13:15;19:10;
20:7,12;22:11,25
**bankruptcy (5)**
13:22;19:5;20:13,14;
22:12
**based (2)**
5:12;14:12
**beat (2)**
21:2,2
**became (1)**
19:15
**behalf (1)**
3:19
**believes (1)**
22:18
**belong (1)**
18:11
**Benvenutti (1)**
3:10
**bet (1)**
7:25
**big (2)**
9:9;14:19
**bigger (2)**
5:3,9
**Board (1)**
9:8,22
**bogged (2)**
13:8;21:11
**both (3)**
4:12;8:5,6
**bought (3)**
7:22;8:9,17
**boundaries (1)**
16:13
**briefing (3)**
22:7;24:8;25:16
**bunch (1)**
4:2
**burden (5)**
13:24;14:5;15:4;
18:5;19:25

## C

**calendar (3)**
23:17;24:1,3,22;
25:5,12
**CALIFORNIA (2)**
3:1;7:8
**Call (3)**
3:3,21;24:23
**called (1)**
23:2
**Calling (1)**
3:5
**came (1)**
12:14

**can (26)**
8:7,7;12:17,18,18;
13:4,7;14:8;15:13;
18:5,12,15;19:22;20:4,
22;21:1,2,6,7,17;22:6,
7;23:6;25:9,21;26:4
**cancel (1)**
25:17
**capable (3)**
19:20,22,22
**carry (1)**
18:5
**case (13)**
11:17;12:14,18;
13:14;14:6;15:8;18:5,
12,23;23:2,3;25:7,13
**caught (1)**
9:24
**caused (1)**
5:13
**chain (2)**
5:15;15:22
**change (3)**
6:23;11:18;15:18
**changed (1)**
12:4
**changes (2)**
11:8;24:11
**circumstance (1)**
5:13
**cited (1)**
15:9
**City (2)**
6:25;7:8
**claim (14)**
4:4;6:10;9:14,21;
10:11;11:7;12:21;13:3;
19:9,10,15;21:14;
23:23;25:5
**claimant (20)**
3:11;4:16,20;5:14;
7:16;9:5,7,9,18,19;
13:8;15:18;17:18;
18:21;21:6,8,10,10;
23:10;24:20
**claimant's (6)**
4:15,16;5:11;7:11,
11,16
**clarify (2)**
4:11;6:10
**clear (4)**
22:16,17;25:17,19
**clearly (3)**
10:17,25;11:14
**CLERK (2)**
3:4;24:25
**client (10)**
7:20;8:4;9:6,14;18:7,
8,9;19:9,20;20:3
**clients (1)**
18:8
**client's (1)**
23:7

**coming (1)**
24:8
**comment (1)**
15:15
**communication (1)**
5:7
**compendium (1)**
7:6
**compensate (1)**
8:7
**competent (1)**
12:18
**complaint (8)**
5:12,24,25;18:17,22,
23;19:1;20:12
**complicated (2)**
17:25;23:13
**complimented (1)**
20:17
**computer (1)**
3:23
**concerned (1)**
13:5
**conclude (2)**
26:3,4
**concluded (2)**
5:16;26:8
**conclusion (2)**
15:19,23;16:3,6
**conclusions (1)**
16:9
**confer (3)**
21:7;22:7;24:15
**conference (3)**
17:24;24:23;25:5
**confident (5)**
12:17;20:22;22:14;
23:6;25:21
**confused (2)**
4:7,19
**confusing (2)**
4:3;5:23
**connection (1)**
25:3
**consistent (3)**
15:8,19;16:14
**continue (1)**
24:13
**continued (1)**
25:5
**continuing (1)**
18:19
**contrary (1)**
21:5
**convenience (1)**
22:5
**convenient (1)**
25:10
**conveyances (2)**
7:7,10
**conveyed (1)**
7:14
**copy (4)**

Case: 19-30088    Doc# 13063    Filed: 10/12/22    Entered: 10/12/22 13:14:54    Page 28
of 33

10:21,22,25;12:13
**corner (1)**
7:25
**corporate (2)**
9:6;21:12
**Corporation (3)**
3:6;9:21;13:11
**correctly (1)**
3:23
**counsel (8)**
5:11;13:22;19:15;
21:6;22:6;24:19;25:16;
26:5
**county (2)**
16:16;17:15
**couple (1)**
4:11
**Court (78)**
3:3,4,7,11,14,20,25;
4:24;5:11;6:1,4,7,16,
18;7:20,24;8:3,9,13,18;
9:1,11,13,17,23;10:2,8,
17;11:21,24;12:16,21,
24;13:2,11,14,15,20;
14:2,4,15,18;15:14;
16:3,6,9,18,25;17:3,5,
7,9,12;18:1,16,18,20,
24;19:11,13,14,16,18;
20:10,12,14,16,24;
21:20,23;22:11,22,25;
24:9,13;25:2,23;26:2
**Court's (3)**
22:4,8;24:11
**credentials (1)**
3:24
**critical (1)**
6:8
**Crone (2)**
15:8;23:3
**crossed (1)**
7:21
**current (1)**
5:18

**D**

**damages (6)**
8:4;18:6,12;20:25;
23:21,22
**date (4)**
24:3,9;25:13,17
**dates (1)**
24:11
**Davidson (1)**
8:9
**deadline (1)**
23:19
**deal (3)**
13:7;18:22;20:7
**debtor (2)**
19:9;21:14
**debtors (1)**
3:10

**December (10)**
21:22;23:24;24:4,21,
23,25;25:6,9,13,17
**decide (2)**
6:9;21:1
**decided (1)**
22:24
**declaration (6)**
10:24;11:4;12:14;
14:22;15:6,24
**deed (5)**
7:10,11,12,13,16
**definition (1)**
7:13
**delay (1)**
22:3
**demurred (1)**
5:24
**demurrer (3)**
6:3;18:22;19:5
**Dennis (1)**
3:5
**describes (1)**
7:13
**determined (1)**
23:21
**diagrams (1)**
17:21
**different (1)**
19:11
**director's (3)**
7:12,13,15
**disagreement (1)**
25:15
**disallowed (1)**
23:23
**disclosed (1)**
9:16
**discovery (1)**
4:9
**discreet (1)**
9:2
**discretion (1)**
19:10
**discussion (4)**
4:18;11:12;21:16;
22:12
**dispose (2)**
4:8;13:4
**dispute (12)**
4:9;7:20,21;13:3,13;
14:7,8,12;18:4,13;
22:17,19
**docket (1)**
10:12
**doctrine (1)**
14:21
**documents (3)**
15:22;16:1,12
**done (1)**
13:22
**doomed (1)**
14:11

**down (2)**
13:8;21:11
**due (1)**
16:17

**E**

**earlier (1)**
12:1
**early (3)**
5:25;24:2,5
**easement (15)**
5:16,19,19;6:24;
8:19,20,23;11:14,19;
14:17,23;16:22,23;
17:19,20
**easements (12)**
6:11,13,14;7:3,9,17;
10:16,18,20;11:6;
14:22;15:25
**effect (1)**
8:15
**effort (1)**
20:3
**either (7)**
4:6;5:1,6;13:11,13,
14;24:6
**else (1)**
25:11
**end (4)**
5:6;7:18;20:20;
21:21
**endeavoring (1)**
24:7
**enforceable (1)**
16:23
**enough (1)**
13:5
**entire (2)**
5:15;17:13
**entitled (4)**
18:11;21:10;23:20,
22
**entitlement (2)**
5:21;8:15
**entity (2)**
9:16;21:12
**Equalization (1)**
9:8
**establish (1)**
23:6
**established (1)**
22:19
**estopped (1)**
11:9
**even (2)**
22:14,22
**event (1)**
5:4
**Everybody (1)**
25:17
**everybody's (1)**
14:10

**evidence (1)**
12:18
**evidentiary (1)**
22:2
**examined (1)**
5:15
**example (1)**
22:18
**except (1)**
7:18
**exist (3)**
6:14,16;7:14
**existed (1)**
8:24
**expense (1)**
20:3
**expert (2)**
5:15;17:9
**expertise (2)**
16:11,14
**explains (1)**
7:7
**expressed (1)**
15:19
**expressing (1)**
15:20
**extended (1)**
22:12
**extinguished (5)**
7:9;10:20;11:2,16;
12:12

**F**

**faced (1)**
11:11
**facie (1)**
18:5
**fact (8)**
8:16,16;11:12,17;
13:13;14:17;20:3,23
**facts (10)**
4:9;5:12;14:7,8,12;
18:4,12;22:16,19;
23:11
**fail (1)**
14:12
**faithful (1)**
22:15
**familiar (5)**
13:2;14:17,21;23:3,
16
**fault (1)**
4:1
**favor (5)**
20:23;22:13,20;23:5,
10
**federal (1)**
18:25
**feel (1)**
22:15
**file (8)**
9:20;19:9;20:18;

21:17;23:14,19,25;
25:16
**filed (9)**
5:11,24;10:23;18:17;
19:15;21:13;24:4,20;
25:8
**files (1)**
18:21
**filing (2)**
5:25;6:2
**fill (1)**
6:23
**finding (1)**
22:2
**finish (1)**
20:12
**first (10)**
7:2;8:16;12:5,9;
20:14;21:6,18,21,22;
24:2
**five-page (1)**
15:21
**following (3)**
3:23;23:21;24:17
**forgot (1)**
21:12
**form (1)**
5:21
**forward (2)**
18:21;25:25
**franchise (1)**
9:22
**FRANCISCO (4)**
3:1;6:25;7:8;15:21
**frankly (1)**
13:23
**front (1)**
17:17
**further (1)**
10:10

**G**

**gave (1)**
6:1
**general (1)**
12:3
**generally (1)**
15:16
**gets (2)**
8:22;25:7
**giving (1)**
18:16
**goes (2)**
8:14;18:23
**Good (5)**
3:7,9,12,14,16,18;
25:23,23
**grant (2)**
4:25;17:24
**granted (1)**
5:8
**great (1)**

Case: 19-30088    Doc# 13063    Filed: 10/12/22    Entered: 10/12/22 13:14:54    Page 29
of 33

14:18
**guess (3)**
19:25;20:1;23:20
**guest (1)**
3:21

## H

**half (1)**
21:18
**happen (1)**
23:1
**happened (3)**
6:8;12:1;19:3
**happens (2)**
11:3;13:23
**hear (2)**
4:12;9:4
**hearing (3)**
6:3;26:2,4
**height (7)**
5:7,17,20;8:24;9:1,3;
12:3
**hell (2)**
14:17;17:18
**here's (1)**
14:23
**high (1)**
14:19
**higher (1)**
5:20
**history (4)**
6:4;7:7;17:23;18:16
**Hmm (1)**
24:24
**hold (1)**
15:25
**holiday (1)**
25:11
**holidays (1)**
24:9
**home (1)**
14:19
**Honor (16)**
3:9,13,15,18;10:6;
11:10,20;12:23;13:21;
21:25;24:5,25;25:18,
19;26:1,7
**Honorable (1)**
3:4
**hope (1)**
25:6

## I

**identified (2)**
7:3;11:14
**identifies (1)**
10:17
**identify (1)**
17:14
**impact (1)**
11:13

**important (1)**
17:17
**improper (1)**
22:13
**improperly (1)**
8:5
**include (1)**
10:22
**included (1)**
14:11
**inconsistent (1)**
15:6
**indicates (1)**
6:21
**indiscernible (8)**
6:6,17;7:19;8:17,25;
9:24;19:17;21:9
**individual (1)**
9:14
**information (3)**
10:12,21;17:17
**initial (1)**
11:7
**installed (1)**
5:8
**instructions (1)**
3:23
**interests (2)**
7:14;16:13
**interference (1)**
16:16
**invitation (1)**
20:8
**involved (1)**
15:23
**involves (1)**
17:14
**involving (1)**
14:18
**irrelevant (1)**
11:13
**issue (15)**
4:13;5:18;9:2,3,9,22,
22;11:25;18:14;19:14,
19,19;20:14,14;24:8
**issues (3)**
6:20;16:17;18:22

## J

**Jacobson (65)**
3:12,12,14,20,22;4:4,
20,23;5:2;6:6,14,15,17,
20;7:23;8:2,6,12,14,22;
9:10,12,15,20,24;
10:15;14:5,24;15:14,
15;16:5,8,11,24;17:2,4,
6,8,11,13;18:14,19;
19:12,14,17,20;20:9,
11,16;21:18,21;22:18,
24;23:6,14,18,24;24:6,
15;25:2,9,18,20,20;
26:6

**Jacobson's (1)**
24:14
**January (3)**
24:2,2,6
**Judge (3)**
3:22;15:15;20:5
**judgment (17)**
12:17,21;13:6,17;
14:9,11;15:11;17:24;
18:3,15;19:23;22:3,23;
23:15,19,20;24:20
**judicially (1)**
11:8

## K

**Keller (1)**
3:10
**kept (1)**
3:24
**Kim (1)**
3:10
**kind (1)**
4:19
**known (2)**
5:12;19:21
**knows (2)**
22:24;24:15

## L

**LAMB (36)**
3:16,18,19;4:7;9:4;
10:4,6,6;11:23,25;
12:20,22,23;13:1,10,
18,21;14:3,14,25;15:3;
19:24;21:1,4,23,25;
22:14;23:2;24:7,16;
25:2,9,19,24;26:1,7
**landscaping (1)**
7:18
**largely (1)**
11:12
**larger (1)**
5:9
**last (2)**
5:3;9:3
**later (2)**
4:17;24:20
**law (6)**
13:4;20:23;22:17;
23:7,9;25:12
**Lawrence (1)**
3:12
**lawyer (3)**
19:21,22,22
**leap (1)**
16:23
**least (1)**
6:20
**leave (3)**
14:4,25;18:8
**leaving (1)**

18:6
**legal (8)**
5:20;8:16;11:13;
16:3,4,9;18:14;20:14
**legible (2)**
10:22,25
**level (1)**
4:17
**license (1)**
9:8
**limited (1)**
4:9
**line (2)**
14:19;16:2
**lines (13)**
4:13,14,14,17;5:5,9;
7:1,21,25;8:3,5,23;
17:20
**lists (2)**
10:16,24
**local (1)**
13:4
**locate (1)**
6:24
**located (2)**
8:23;17:20
**location (1)**
7:4
**log (1)**
3:22
**look (4)**
4:2;11:19;17:22;
25:24
**looked (2)**
11:4;12:15
**looking (1)**
14:22
**lose (1)**
25:3
**lot (1)**
9:5
**low (3)**
12:2,8,8
**lowered (2)**
5:9;8:5
**lowering (6)**
4:16;5:5;11:21,22,
23,25

## M

**Mahoney (2)**
6:21;11:3
**Mahoney's (5)**
7:5;10:13,19;11:14;
14:16
**Mahony's (1)**
15:17
**maintained (1)**
8:24
**map (2)**
6:12;10:17
**maps (1)**

17:21
**massively (1)**
5:8
**material (4)**
14:8,12;18:4,12
**matter (3)**
3:5;13:4;14:18;
19:10;20:4,23;22:17;
23:4,7,10,11,13;26:3
**may (2)**
8:19;16:21
**maybe (6)**
4:1;9:7;13:14;19:25;
20:24,24
**mean (15)**
6:5,8;9:9;12:17,22;
13:16;14:16;16:6,20,
22;18:25;19:4,24;20:2;
22:4
**measure (1)**
18:6
**measuring (1)**
20:25
**meet (2)**
21:7;24:15
**met (1)**
15:4
**mine (1)**
14:10
**minute (1)**
12:25
**missing (1)**
17:17
**moment (1)**
24:25
**Montali (1)**
3:5
**more (2)**
3:15;9:2
**morning (7)**
3:7,9,12,14,16,18;
19:21
**motion (22)**
12:16,21;13:6,17;
14:11;15:1;18:2,15;
19:1;20:15,18;21:5,9,
17;23:14,19,25;24:3,
19;25:8,12,15
**motions (1)**
4:5
**move (1)**
8:7
**mutual (1)**
25:20
**mutually (1)**
25:10

## N

**name (3)**
3:21;9:21;21:12
**necessary (1)**
4:10

Case: 19-30088    Doc# 13063    Filed: 10/12/22    Entered: 10/12/22 13:14:54    Page 30
of 33

need (3)
  10:10;15:12;23:7
needs (1)
  25:11
next (1)
  24:22
nobody (1)
  19:6
normal (2)
  23:15;24:3
noted (1)
  10:17
notice (2)
  6:1;21:14
November (1)
  21:19
number (1)
  10:12

**O**

object (1)
  19:9
objection (10)
  4:4;6:10;9:25;10:23,
  24;13:3,24;15:4;22:1;
  25:5
obtained (1)
  10:23
obviously (1)
  6:8
occurred (1)
  11:25
OCTOBER (1)
  3:1
Off (2)
  16:17;25:7
once (1)
  13:23
one (15)
  3:15;5:1;6:10,13,21;
  9:13,25;15:7;16:24;
  17:2,16;18:3,8;19:12;
  24:25
ones (2)
  7:17,17
only (1)
  9:21
oOo- (1)
  3:2
opine (1)
  16:21
orally (1)
  20:19
order (2)
  3:3;12:3
ordinance (6)
  7:10;10:15;11:1,6;
  12:11;15:22
ought (3)
  4:21,24,25
out (7)
  7:24;10:11;11:17;

14:15;20:25;23:9;25:9
over (1)
  8:10
owner (1)
  13:11
owns (1)
  18:9

**P**

pages (1)
  7:6
paper (1)
  9:5
papers (6)
  4:3,12,18;10:3;21:2,
  3
Parada (1)
  24:22
paragraphs (1)
  15:24
parse (1)
  14:15
part (1)
  11:15
partial (1)
  23:20
particular (2)
  5:20;6:5
particularly (1)
  23:13
parties (2)
  6:1;24:10
party (1)
  10:9
passionate (1)
  20:19
paved (1)
  7:19
pay (1)
  9:7
pencil (1)
  25:4
pending (1)
  14:18
people's (1)
  23:12
perfectly (2)
  15:19;19:8
perhaps (4)
  14:20;18:6;22:6,15
period (1)
  23:23
permission (1)
  5:8
personal (3)
  19:19;23:12;25:10
perspective (2)
  5:13;16:12
petition (1)
  6:1
PG&E (14)
  3:5,7,17,19;4:15;5:8,

21,24;15:25;17:19;
22:13;23:17;24:1,22
phonetic (4)
  6:21;7:25;15:8;23:3
physically (1)
  19:15
picture (1)
  5:3
place (3)
  8:16;12:6,9
plaintiff (1)
  18:21
plat (2)
  6:12;10:17
pleading (1)
  5:13
please (1)
  3:8
pleased (1)
  9:20
Plice (1)
  15:8
point (13)
  4:7,17;5:3,13;6:9;
  7:2;8:13;10:11;15:12;
  19:3,18;20:22;23:4
pointed (1)
  11:17
poor (1)
  20:5
portion (1)
  20:6
position (11)
  4:21;10:19;11:3,9,
  15,18;12:5;15:3,17,18;
  18:7
positions (2)
  11:8;15:17
power (5)
  4:14,17;14:19;16:1;
  17:20
powerful (1)
  14:19
powerlines (1)
  18:10
practice (2)
  18:25;19:17
predecessor (3)
  7:11,12,16
preferred (1)
  20:11
preliminarily (1)
  15:16
prepared (3)
  14:6;16:15;20:15
prescriptive (2)
  5:21;8:19
present (2)
  13:25,25
presented (2)
  6:13;16:16
presiding (1)
  3:5

presumably (1)
  22:25
prima (1)
  18:5
prior (1)
  15:7
problems (1)
  3:25
procedural (6)
  6:4;19:12,19;22:1;
  24:18;25:14
procedurally (3)
  15:12;19:8;20:21
procedure (6)
  18:20;22:12,16,24;
  23:15;24:14
procedures (1)
  13:3
proceed (1)
  22:2
proceedings (1)
  26:8
process (6)
  15:23;16:14;17:14;
  20:13;22:25;24:19
procure (1)
  5:14
produced (1)
  17:19
promptly (1)
  5:11
proof (3)
  14:5;19:15;21:13
proper (1)
  19:8
properly (1)
  5:1
properties (1)
  5:6
property (14)
  4:14;5:10;6:22;7:2,
  15,21,22;8:10,10;16:2;
  18:9,10,10;21:15
proposal (1)
  22:10
propose (1)
  22:6
prove (2)
  12:18;14:6
proves (1)
  22:12
provided (2)
  8:4;12:13
provides (1)
  10:25
put (5)
  13:16;18:1;19:24;
  20:2;25:4
puts (1)
  20:13

**Q**

qualified (2)
  16:9,21
quantified (1)
  23:8
quantify (1)
  23:9
quickly (1)
  20:5
quite (2)
  11:25;23:16

**R**

raises (2)
  5:18;24:7
rather (1)
  4:15
read (1)
  7:5
ready (1)
  14:6
realize (1)
  20:2
really (9)
  11:6,10,18,20;12:4;
  14:1,3;17:16;18:25
reason (5)
  7:9;13:16;18:16;
  21:23;22:3
reasons (2)
  23:4,21
rebut (1)
  14:24
receptive (1)
  24:11
recital (1)
  6:7
recitation (1)
  14:13
reconveyed (1)
  14:23
record (15)
  5:14,16;6:12,19;7:1;
  8:21;11:5,12,15;15:25;
  16:13,15,17,22;22:14
recorded (2)
  6:12;16:1
recording (1)
  16:18
records (2)
  6:11;17:22
reference (1)
  23:2
referred (1)
  10:15
refers (1)
  10:14
reflects (1)
  10:18
regard (1)
  12:1
regarding (2)
  10:9;15:10

Min-U-Script®

Case: 19-30088    Doc# 13063    Filed: 10/12/22    Entered: 10/12/22 13:14:54    Page 31
of 33

eScribers, LLC
www.escribers.net

(4) need - regarding

regular (2)
23:25;25:12
reinstate (1)
9:8
related (1)
5:4
relevance (1)
6:5
relief (5)
4:5,25;19:6;20:18,20
relies (1)
10:21
relocated (5)
7:9;10:20;11:1,16;
12:11
relocation (1)
11:24
rely (1)
13:22
remember (1)
22:11
removed (1)
8:4
reorganized (1)
3:10
report (8)
7:5,6;10:13,14,14,16,
19;15:20
representing (1)
19:21
request (2)
10:12,22
resolved (2)
13:13;24:18
respond (1)
14:3
responded (2)
11:10;12:8
response (7)
10:13,19,22,23;14:7;
20:8;23:22
reviewed (1)
17:15
reviewing (1)
4:12
right (7)
3:20;8:10;10:4;13:6,
12;24:2,8
rights (9)
4:15,16;5:16,19,19;
7:14;21:15;23:7,9
routine (1)
25:12
routines (1)
23:16
rules (2)
13:4;23:15
ruling (2)
22:13;23:5
RUPP (13)
3:9,9,15,17;4:7;9:4;
10:4;13:22;14:17;21:4;
22:7;24:1,5

Rupp's (1)
23:16

**S**

safety (1)
25:13
same (4)
15:19;18:25;19:2;
22:25
SAN (4)
3:1;6:25;7:8;15:21
saw (1)
3:21
saying (2)
8:3;12:7
schedule (5)
22:7;24:16,18;25:10,
16
schedules (2)
23:13;25:11
scheduling (1)
25:14
seem (1)
4:13
seems (2)
5:21;18:7
send (3)
13:15;20:7;22:24
sent (1)
20:25
series (1)
10:16
session (1)
3:4
set (10)
5:12;16:23,25;17:3;
22:4,23;23:16,25;24:3,
10
shifted (1)
15:5
shifts (1)
13:24
ship (1)
19:10
show (3)
11:5;20:22;23:8
showed (1)
12:13
shows (3)
6:12;7:1;17:19
sic (1)
8:9
side (1)
23:10
sides (1)
4:12
simply (1)
15:6
sixty (1)
8:20
sixty- (1)
8:24

skills (1)
20:17
sliver (1)
7:18
smaller-based (1)
5:6
somebody (1)
21:15
somebody's (1)
14:19
somehow (1)
16:18
Sorry (2)
17:4;21:12
sort (1)
20:24
sought (1)
19:6
sound (2)
16:3,4
Sounds (1)
25:23
speak (1)
24:6
spent (1)
9:5
staff (1)
26:5
standing (1)
18:9
standpoint (1)
5:23
start (2)
4:20;5:2
started (3)
12:7;14:16;20:13
state (12)
5:11;6:1;7:8;9:8;
13:15;18:16,20;19:11,
14;20:12;22:22,25
stated (3)
8:13;15:24;23:5
statement (3)
6:23;11:7;14:16
states (1)
10:25
status (3)
17:24;24:23;25:5
stay (5)
4:5,25;19:6;20:18,20
stayed (1)
19:5
Steve (1)
10:6
Steven (1)
3:18
still (1)
6:19
stopped (1)
16:18
stretch (1)
16:20
subject (5)

14:20;17:10;20:6;
21:7,16
submit (1)
15:6
submits (1)
11:4
submitted (2)
4:3;11:9
subsequent (2)
11:4;24:8
substituted (1)
9:6
suggest (1)
22:6
suit (1)
22:22
summary (18)
12:17,21;13:6,17;
14:8,11;15:10;17:24;
18:3,15;19:23;22:2,3,
23;23:15,19,20;24:20
supports (1)
15:23
sure (3)
8:2;11:25;13:10
survey (7)
5:14;7:1;10:14;11:5,
12;16:15;17:22
surveying (1)
17:14
surveyor (7)
5:15;6:11,21;8:8;
16:6,15,21
surveyors (1)
16:7
surveyor's (1)
16:12
suspect (1)
9:7
suspension (1)
9:22
sustain (1)
15:3

**T**

talk (2)
24:16;26:4
talking (2)
16:19;21:13
tax (1)
9:22
technical (1)
16:17
telling (1)
3:24
ten (1)
15:22
tentative (1)
24:19
terms (1)
17:18
testify (1)

8:8
theory (1)
5:20
therefore (2)
22:17;23:23
Thomas (1)
3:9
though (2)
15:11;22:14
three (2)
19:6;20:17
till (1)
23:24
timing (2)
5:23;25:21
title (3)
5:15;7:17;15:22
today (8)
3:8,25;4:21;6:5,9;
10:5;15:2;23:5
together (3)
10:24;13:17;24:10
told (1)
18:2
took (2)
6:2;7:16
towers (4)
4:14;5:6,9;18:10
traceable (1)
15:25
track (1)
25:7
traditional (1)
13:13
transmission (2)
7:1;16:1
trespass (3)
18:19,20;20:24
trial (7)
14:6,20;16:25;17:1,
5;18:23;22:23
tried (2)
3:22;12:2
true (1)
19:25
trying (1)
20:2
tucked (1)
20:20
TUESDAY (1)
3:1
twelve (1)
15:22
two (4)
6:12,20;21:8;24:19

**U**

ultimate (1)
16:21
under (3)
5:19;13:3;22:2
unidentified (1)

(5) regular - unidentified

Case: 19-30088    Doc# 13063    Filed: 10/12/22    Entered: 10/12/22 13:14:54    Page 32
of 33

3:21
**unless (1)**
21:4
**unnecessary (1)**
20:3
**up (4)**
7:18;9:24;14:24;
24:8
**upon (2)**
5:12;14:13
**use (2)**
5:10,21
**used (1)**
14:21

## V

**value (1)**
5:10
**valve (1)**
25:13
**version (1)**
23:11
**veteran (1)**
24:14
**view (3)**
4:8;18:11;21:5
**vindicated (1)**
23:7
**violated (1)**
4:15

## W

**wait (3)**
7:20;12:24;17:3
**wants (1)**
24:9
**waste (1)**
14:10
**way (6)**
4:3;11:2;20:21;
21:24;24:3,14
**week (2)**
21:21,22
**weren't (1)**
11:1
**what's (2)**
4:21;20:8
**whenever (1)**
22:4
**Whereupon (1)**
26:8
**wherever (1)**
6:24
**who'll (1)**
24:7
**whomever (1)**
4:16
**Who's (1)**
3:7
**win (3)**
13:12;14:8;22:18

**withdrawing (1)**
6:2
**withdrawn (1)**
19:1
**withdrew (1)**
19:4
**without (1)**
15:7
**witness (3)**
17:5,6,9
**words (1)**
18:4
**work (2)**
25:9,14
**worry (1)**
20:5
**writing (1)**
20:19
**wrong (1)**
13:12

## Y

**year (1)**
8:25
**years (3)**
8:20;19:6;20:17

## 1

**10:33 (1)**
26:8
**101 (1)**
7:25
**11 (2)**
3:1;15:20
**11th (2)**
7:6;24:24
**12131-4 (1)**
10:13
**12b6 (1)**
19:1
**13 (1)**
15:24
**13th (4)**
25:1,6,13,17
**14 (1)**
15:24
**15 (1)**
15:24
**16 (1)**
15:24
**1923 (3)**
6:13;7:17;17:23

## 2

**2000 (1)**
6:25
**2018 (6)**
5:4,7,24;6:8;15:20;
18:17
**2019 (1)**

5:25
**2022 (1)**
3:1
**2380 (1)**
7:25

## 3

**3975 (5)**
10:15,21,22;11:6;
12:11

## 4

**4 (1)**
7:6

## 8

**8 (1)**
7:6
**8th (5)**
23:25;24:4,21,23;
25:9

Min-U-Script®