**LEVIN LAW GROUP PLC**
EMILY S. LEVIN (SBN 232366)
emily@levinlawgroupplc.com
2615 Forest Avenue, Suite 120
Chico, California 95928
Telephone: 530-353-1679
Facsimile: 877-310-0160

Attorneys for Justine Larsen-Bernedo

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>And<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>X – Affects Both Debtors | CASE NO. 19-30088-DM<br><br>**MOTION PURSUANT TO FED. R. BANKR. 9006(b)(1) TO DEEM JUSTINE LARSEN-BERNEDO'S CLAIM TIMELY FILED**<br><br>Date: November 15, 2022<br>Time: 10:00 a.m.<br>Place: Via Telephonically<br>      450 Golden Gate Avenue<br>      Courtroom 17<br>      San Francisco, CA 94102<br>Judge: Hon. Dennis Montali<br><br>Objection Deadline: October 25, 2022 |

LEVIN LAW GROUP PLC

Pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure, Justine Larsen-Bernedo ("Ms. Larsen") moves for an order expanding time to file a Proof of Claim, and allow, Claim Number 109629, that was filed on October 10, 2022 and submitted with this motion as "Exhibit A", to be considered timely.

## I. SUMMARY OF ARGUMENT

Under the flexible standard for excusable neglect, Ms. Larsen's claim should be allowed.

The circumstances surrounding this case constitute excusable neglect pursuant to the standards set forth in *Services v. Brunswick Associated Ltd. Partnership*, 507 U.S. 380 (1993). Allowing this case to proceed does not present any prejudice to the Debtors, nor does it delay the attendant judicial proceedings. This motion is made in good faith and to deny this claim would result in injustice to the Claimant. This motion is based upon the points and authorities set forth herein and concurrently.

## II. PROCEDURAL BACKGROUND

On January 29, 2019, the Debtors, PG&E Corporation and Pacific Gas and Electric Company ("Debtors") filed a voluntary Chapter 11 Petition. See Dkt. 1. On July 2, 2019, the Court entered an order establishing October 21, 2019 ("the Bar Date") as the deadline for Fire Victim claimants to file proofs of claim in this bankruptcy. See Dkt. 2806. That deadline was extended to December 31, 2019 ("the "Extended Bar date."). See Dkt. 4872.

## III. FACTUAL BACKGROUND

At the time of the 2018 Camp Fire, Ms. Larsen was employed as a physical therapist at Adventist Heather Feather River View where she had been serving members of the Paradise community for over 10 years. On the day of the Camp Fire, she was seeing patients at the Adventist Heath Feather River Outpatient Rehabilitation Office located at 6238 Clark Road in Paradise. Unaware that the town of Paradise was under evacuation orders, she heeded her supervisor's instruction to travel further into the heart of the fire to attend to patients at the Adventist Health Feather River Inpatient Hospital located at 5974 Pentz Road in Paradise. With a one-year-old and four year old at home, she set off to the hospital with her breast pump intending to spend the day at

2
**MOTION TO ENLARGE TIME TO FILE PROOF OF CLAIM**

the Pentz facility to facilitate what she mistakenly understood to be the prophylactic relocation of patients, only to realize the extent of the emergency. As all hospital transport had been deployed, Ms. Larsen took it upon herself to evacuate in her own vehicle two elderly patients, one who had a catheter and required oxygen, though no tanks were available, and one who had been scheduled for surgery that morning. Her evacuation experience was harrowing (See Ms. Larsen's statement attached at Exh. B).

Ms. Larsen was so relieved and overwhelmed to be able to return to her husband and young children that evening at their home in Chico. Many of her patients lost their homes and their livelihoods; many died shortly after the fire. Relative to other Camp Fire victims, Ms. Larsen felt lucky and almost guilty if she filed a claim with the FVT as, in her mind, she didn't want to "take away from" others who weren't as lucky. She therefore put on a stiff upper lip and jumped right back into her role as a medical professional servicing her now ravaged community. Eventually the deadline to file a Proof of Claim passed, however the psychological and emotional damage continued to compound. Ms. Larsen didn't realize what extensive and long-lasting damage the Camp Fire had wreaked on her emotional state until after the deadline to file a proof of claim had passed, at which point she resigned herself to the conclusion that any claims she had were barred.

Almost 3 years later, the Larsen family was again traumatized by another fire caused by PG&E – the Dixie Fire. While Ms. Larsen and her immediate family did not evacuate as a result of that fire and did not sustain any property damage caused directly by the fire, the Dixie Fire reignited the fears and emotions that the Camp Fire had incited. The Dixie Firm essentially destroyed the topography and natural beauty of the area surrounding the cabin – so while the fire didn't destroy the cabin itself, it did destroy the whole point of travelling to that area and spending time with her young family there. The structure did sustain some structural damage, but due to efforts to fireproof it, and not from the fire itself. Also, her father-in-law owned a neighboring cabin and he had to evacuate, which certainly compounded the emotional stress inflicted by the incident.

Ms. Larsen contacted Levin Law Group PLC on October 7, 2022 in connection with potential representation in her claims against PG&E resulting from the 2021 Dixie Fire. Attorney

3

**MOTION TO ENLARGE TIME TO FILE PROOF OF CLAIM**

Emily Levin advised her that, while the upset and feeling of loss was real, as a matter of law, her case was relatively weak. Ms. Levin, however, was so moved by how heroic and harrowing her experience was with respect to the Camp Fire was, that she thought it a worthwhile endeavor to file a proof of claim on Ms. Larsen's behalf and make an overture to the Court to allow her claim to proceed.

## IV. ARGUMENT

The time in which to make claims in a Chapter 11 Bankruptcy may be extended by motion based on excusable neglect. Federal Rules of Bankruptcy Procedure, Rule 9006(b)(1) provides:

> (b) Enlargement.
>
> (1) In general. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. Fed R. Bank. Proc. 9006(b)(1).
> Emphasis supplied.

Determination of excusable neglect has been interpreted by the United States Supreme Court as an equitable consideration.

> "We conclude the determination at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . .the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

*Pioneer Inv. Servs v. Brunswick Assoc. Ltd.P'ship*, 507 U.S. 380, 395 (1993).

4
**MOTION TO ENLARGE TIME TO FILE PROOF OF CLAIM**

Here, there is no danger of prejudice to the Debtors. Where the claim does not disrupt the distribution process, no prejudice will result. *In re Sacred Heart Hosp.*, 186 B.R. 891, 897. ("Exactly how the debtor's assets are distributed is ultimately of little consequence to the debtor, so long as the claim is not filed so late as to disrupt the distribution process.") The Trust would likely offer Ms. Larsen a Tier 2 zone of danger emotional distress award in the amount of $50,000 – an insignificant sum not only in light of the Trust's resources but also when considering, a matter of equity, the sacrifices Ms. Larsen made on behalf of herself, her family and her community.

### V. CONCLUSION

For all of the above reasons, the motion should be granted, and Justin Larsen's proof of claim should be deemed timely and her emotional distress claim allowed to proceed.

DATED: October 14, 2022.                    LEVIN LAW GROUP PLC

By: /s/ Emily S. Levin
EMILY S. LEVIN
Attorneys Justine Larsen Bernedo

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

In re:
 PG&E CORPORATION,
 - and -
 PACIFIC GAS AND ELECTRIC COMPANY,
  Debtors.

Bankruptcy Case No. 19-30088 (DM)

Chapter 11
(Lead Case)
(Jointly Administered)

# Proof of Claim (Fire Claim Related)

Read the instructions before filing this claim form. This form is for tort claimants who have a claim against the Debtors (i.e. PG&E Corporation and Pacific Gas and Electric Company) that arose prior to the Debtors filing for bankruptcy (i.e. prior to January 29, 2019) and that arose from, or relates to, a fire.

**Do not use this form for non-fire claims. Non-fire tort claimants should use Form 410.**

Do NOT file a fraudulent claim. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Please type or print in the spaces below. Do NOT use red ink or pencil.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Justine Larsen-Bernedo
Name of the current creditor (the person or entity to be paid for this claim)

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Are you filing this claim on behalf of your family?**
☑ No
☐ Yes

A family is a group of two or more people related by birth, marriage, domestic partnership, or adoption and residing together. All such people are considered as members of one family.

If you checked "Yes", please provide the full name of each family member that you are filing on behalf of:

**4. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Name: Levin Law Group PLC
Attorney Name (if applicable): Emily S. Levin
Attorney Bar Number (if applicable): 232366
Street Address: 2615 Forest Avenue, Suite 120
City: Chico
State: CA
Zip Code: 95928
Phone Number: 530-353-5752
Email Address: swhall@levinlawgroupplc.com

Where should payments to the creditor be sent? (if different)
Name: Levin Law Group PLC
Attorney Name (if applicable): Emily S. Levin
Attorney Bar Number (if applicable): 232366
Street Address: 2615 Forest Ave., Suite 120
City: Chico
State: United States
Zip Code: 95928
Phone Number: 530-353-5752
Email Address: swhall@levinlawgroupplc.com

**5. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on ___/___/_____ (MM/DD/YYYY)

**6. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date this Claim Form is Filed |
|---|---|

| 7. | What fire is the basis of your claim?<br><br>Check all that apply. | ☑ Camp Fire (2018)<br>☐ North Bay Fires (2017)<br>☐ Ghost Ship Fire (2016)<br>☐ Butte Fire (2015)<br>☐ Other (please provide date and brief description of fire: _____ |
|---|---|---|
| 8. | What are the loss location(s) where you and/or your family suffered harm? (e.g. home or business address, place of injury, place from which you were evacuated, if different.?) | Location(s): 6238 Clark Rd. Paradise, CA<br>5974 Pentz Rd. Paradise, CA |
| 9. | How were you and/or your family harmed?<br><br>Check all that apply | ☑ Property Damage (homes, structures, personal property, land, trees, landscaping, and all other property damage)<br>   ☑ Owner ☐ Renter ☐ Occupant ☐ Other (Please specify): _____<br>☐ Personal Injury<br>☐ Wrongful Death (if checked, please provide the name of the deceased) _____<br>☐ Business Loss/Interruption<br>☑ Lost wages and earning capacity<br>☑ Loss of community and essential services<br>☐ Agricultural loss<br>☐ Other (Please specify): _____ |
| 10. | What damages are you and/or your family claiming/seeking?<br><br>Check all that apply | ☑ Economic damages (including replacement cost of damaged property, diminution in value, loss of use, lost inventory, lost profits, and other economic damage)<br>☑ Non-economic damages (including loss of society and support, loss of consortium, pain and suffering, emotional distress, annoyance and discomfort, and other non-economic damage)<br>☑ Punitive, exemplary, and statutory damages<br>☑ Attorney's fees and litigation costs<br>☑ Interest<br>☑ Any and all other damages recoverable under California law<br>☐ Other (Please specify): _____ |
| 11. | How much is the claim? | ☐ $_____ (optional)<br>☑ Unknown / To be determined at a later date |

| Part 3: | Sign Below |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☒ I am the creditor's attorney or authorized agent.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *EMily S. Levin*
EMily S. Levin (Oct 10, 2022 14:22 PDT)

**Email:** swhall@levinlawgroupplc.com

Signature

**Print the name of the person who is completing and signing this claim:**

Name: **Emily S. Levin**
First name / Middle name / Last name

Title: Attorney

Company: Levin Law Group PLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 2615 Forest Avenue, Suite 120
Number / Street
Chico / CA / 95928
City / State / ZIP Code

Contact phone: 530-353-5752
Email: swhall@levinlawgroupplc.com

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☐ I have supporting documentation.
  (attach below)

☒ I do not have supporting documentation.

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION** When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim (Fire Claim Related)

United States Bankruptcy Court

You may have a claim against the Debtors for monetary loss, personal injury (including death), or other asserted damages arising out of or related to a fire. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the chapter 11 process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date this claim form is filed.**
- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.
- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.
- **You may but are not required to attach supporting documents to this form.**
  Supporting documents will be gathered, maintained, and provided at a later date as instructed by the Court. If you do attach documents, you should attach redacted documents as supporting documentation will be made publicly available and will not be kept confidential. *See* the definition of *redaction* of information below.
- **Do not attach original documents because attachments may be destroyed after scanning.**
- **Question 3.** Members of a family may but are not required to file a proof of claim as a family but may, if they choose, submit individual claim forms for each family member that has a claim against the debtors.
- **Question 9.** If you suffered property damage, then provide the street address of each real property parcel where you suffered property damage. If you were personally evacuated as the result of a fire, then provide the address or intersection closest to where you encountered the fire and began evacuation. If you suffered property damage and were evacuated from a different location, include both. If you were a renter, provide the address of your residence.
- **Question 10.** This question requests general statements of underlying facts relating to harm and is not intended to be exhaustive or preclusive.
- **Question 11.** You are not required to include a claim amount with your proof of claim. Providing a claim amount at this time is optional.

### Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form together with the original. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at
https://restructuring.primeclerk.com/pge.

Case: 19-30088    Doc# 13080    Filed: 10/14/22    Entered: 10/14/22 16:30:15    Page 11 of 20

Proof of Claim Instructions (Fire Related)                                                                                          Page 1

## Understand the terms used in this form

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. In this instance, PG&E Corporation and Pacific Gas & Electric Company.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Proof of claim:** A form that shows the creditor has a claim against the debtors on or before the date of the bankruptcy filing (in these cases, January 29, 2019). The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery**:
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your Proof of Claim if you wish to receive a date-stamped copy.**

**Do not file these instructions with your form**

# Electronic Proof of Claim_JFSPR27402[[CSLT#4025#CF]]

Final Audit Report 2022-10-10

| | |
|---|---|
| Created: | 2022-10-10 |
| By: | Kroll (efiling@ra.kroll.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAIEBjvgDZVYhtQynf91cnZnz4tg4-LPST |

## "Electronic Proof of Claim_JFSPR27402[[CSLT#4025#CF]]" History

- Web Form created by Kroll (efiling@ra.kroll.com)
  2022-10-10 - 9:12:31 PM GMT

- Web Form filled in by EMily S. Levin (swhall@levinlawgroupplc.com)
  2022-10-10 - 9:22:50 PM GMT- IP address: 98.51.8.251

- (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/105.0.0.0 Safari/537.36)
  2022-10-10 - 9:22:51 PM GMT- IP address: 98.51.8.251

- Agreement completed.
  2022-10-10 - 9:22:51 PM GMT

**KROLL** Powered by Adobe Acrobat Sign

# EXHIBIT B

# Timeline for November 8th

**7:15 am:** arrived to 6238 Clark Road, Paradise CA 95969 Adventist Heath Feather River Outpatient Rehabilitation office *I was an employed as a Physical Therapist for Adventist Health Feather River. At the time of the fire I had worked in Paradise for over 10 years. I worked specifically at the Clark Road outpatient site and the Pentz road inpatient site during my career.

**8:15 am:** asked by my supervisor to cancel the remaining patient appointments for the day and to go to the hospital to help with the hospital evacuation. I was unaware of any other evacuation orders at that time, and later learned that the whole town had been was issued an evacuation warning around this time. I was under the impression that I was helping to evacuate the hospital under an abundance of caution (as this had been done several years earlier in 2008). I took my breast pump, and lunch thinking I would be there for most of the day and have time to eat and pump.

**8:30 am**: arrived to the Adventist Health Feather River Inpatient hospital at 5974 Pentz Road Paradise CA 95969. At this time it was very smoky, and seemed extremely foggy with ash, once I got inside the hospital I realized the extent of the situation. I heard someone yelling "The fire is here, it is right outside, the hospital is going to catch fire." There I helped load patients into wheel chairs, beds and moved patient's in gurneys to the ER. I was asked to help move medical equipment and assist with the evacuation process. While in the ER we were told that we were out of ambulance vehicles and still had several patients that needed to be transported. I got my keys through my kids car seats in the back and had to physically assist my two patient's into my vehicle. One was an older male from our definitive care unit, with a catheter/walker and who also required oxygen but we did not have a portable tank for him. And one older female who had been NPO and scheduled for surgery that morning. I also helped load up several other patients who required transfer assistance into other vehicles. At that time things were black and I could see the fire and flames everywhere and it was becoming difficult to breath.

**9:30 am:** Attempted exit at Peach Lane at the hospital – to turn left on Pentz Road. Prior to making it to Pearson road a sheriff stopped my car. I was the first car stopped in a line of traffic and told to turn around. They wouldn't let anymore cars down that way – and I was forced to go back on Pentz Road towards the hospital and towards Billie Road. My vehicle was stuck in gridlock on Pentz Road for about 1 to 2 hours. The fire was so close that my car was hot, even to the touch and we had the air condition on at maximum. I had ice left over from my morning coffee and a day old La croix that both patient's drank within our first 30 minutes in the car. There were cars trying to pass, trying to go around – some cars were driving over fire. I was afraid to do much because I knew if my car caught fire, or something happened, that my patients wouldn't make it. One couldn't ambulate without a walker and was very elderly with a catheter bag. My car got hit a few times due to sheer panic from other drivers on the road trying to escape. As we inched forward, we continued to hear "BOOM, BOOM, BOOM." I saw the tops of trees on fire cracking and breaking off starting new fires on the ground. By the time we got closer to Billie Road the mobile home park on my left was already engulfed and everything was burning. I had many patient's that had lived there. Everything was pitch black, dark as night, but there was red/orange fire everywhere and things were extremely windy.

Cell service was patchy and I couldn't make calls out. My husband called and tried to keep me calm – but I told him I loved him, and that there was fire everywhere and we were stuck." In that moment all I could think about were my babies, my little babies. What I wouldn't give for one more day of snuggles, cries and those trying days as a parent. I regretted rejoicing in my quiet coffee time earlier that morning and prayed to see their faces and feel their kisses just one more time. I thought of my husband, my

parents and sister, my nieces - all my family memories flooding in. And then I was thinking, "this is it. This is how we are going to die, we are going to burn."

**Roughly 11:30 am:** We reached the corner of Billie Road and Pentz Road. We stopped at the quickie mart as the fire was too intense to go down Billie Road. There was fire moving across the roads and all the trees and shrubs lining the road were on fire. A fire engine arrived and hosed down our cars. The fire was so hot, and there was hot ash falling on our vehicles. They were hosing down our cars to prevent them catching fire. I had to get out of my vehicle multiple times at this site to get water for my patient's (from the quickie mart) and I was also trying to get oxygen for my patient and talking with other emergency personal. No one had oxygen and my throat burned because it was very difficult to be outside, running around and talking due to the thick ash and heat. Most of the sheriffs and firefighters were overwhelmed by the situation, I found out their communication was limited due to the fire destroying towers and they were unaware of what to do next. They told me at this point that all the roads leading out were shut due to burnt vehicles in the way. At one point a sherriff said I could go down Billie, they thought the roads had cleared. I attempted to go down Billie Road an hour after being there with my patient's, but found after about a half of a mile there was significant traffic again and severe fire moving back and forth along the road ahead. Four cars ahead I found an ICU nurse and asked for some help with my DCU patient, but he had a dying hospice patient in his car – he was putting out fire around his car tires. I had stepped back and a fire tornado went in front of me and covered some of the cars and road ahead of me. It was too hot to go that way and I couldn't see my co-worker anymore. I saw a bear run back towards the quickie mart and I decided to turn my car around and go back to the corner of Billie and Pentz where the firefighters were. I felt immense pressure having the patients in my car. Multiple times during that day, my decisions were made based on what was best for them, not me. I knew that I couldn't go in certain situations, or get out of my car and run, as they couldn't run, or even walk without assistance. I knew if something happened to my car and we had to get out and run or move to a different area that my critical patient would die. It was also a very difficult time, and I was very emotional as the reality of the situation set in and I feared for my own life. I knew that I couldn't show all the feelings I was experiencing because it would panic the patients – and one was already short of breath.

Once we made it back to the quickie mart and I got more water for my patients – I found a physical therapy co-worker, I crawled into my co-workers car and sobbed for five minutes uncontrollably. It was a horrible feeling to feel like I couldn't cry with the patient's in my car, but the truth was this: I was scared, scared for my life, scared for theirs, scared for all my patients that I was supposed to treat that day. I have worked in Paradise for over 10 years - many of my patients have become my friends, I know their story, I know they live alone, that they have hearing aids, that they are wheelchair bound, that they can't drive, that they don't have a phone. I know all these things and I started to become haunted by the thoughts that continued to pour in as I looked around and house after house was on fire. I knew that many were not okay – we were not okay.

**About 2:30 pm to 3 pm:** I was escorted to K-mart by a sherriff. On that drive we had to navigate through downed power lines, and at that time almost every house/structure we passed had burned to the ground with only chimneys remaining. There were several cars burned, trailers left in the middle of the road burnt, I wondered if people were in them. After I witnessed the fire tornado I knew that many people did not make it out. We made it to the K-mart parking lot at the corner Clark and Wagstaff and we encountered more people and cars. People crying, people with their pets or who had run out of gas. Everyone searching for help. Only a few of us had patients. It was at this time that we had more black

sky, and more loud booms. The fire was burning all around us and we could see other building and trees around on fire. I was in the k-mart parking lot for another 2 hours until me and one other vehicle who also had acute care patients were escorted down the Skyway to Chico. Even going down the skyway we encountered emergency personal also traveling up on the same road, We had to quickly change lanes in order to avoid a collision. I was then instructed to bring my patients to Enloe Hospital, where they were triaged by their care team. I made it to the Enloe Conference room where I was met by other employees and staff and reported my name and the two patient's that had been escorted to safety to our hospital staff who was accounting for all the acute care patients. There in the conference room my co-worker who I saw on Billie (where we were separated by the fire tornado) – he found me and hugged me with tears in his eyes and and said, "I thought we lost you, I looked back and couldn't see you and all I could see was the fire." I cried immediately, because for the first time I could let out all the fear and emotion that I had been trying to bottle up and the reality set in. I had survived, I had survived and I knew in that moment that many others had not.

I made it home about 6 to 6:30 pm to my family where I immediate became ill and started to panic. I tried to convince my husband to evacuate our house in Chico because I was so afraid. I could not sleep and all I could smell was smoke everywhere. I loaded our car and took video of everything. My parents arrived and my sister and tried to calm me as I was at that time and became irrational due to my fear. My husband agreed to stay up and all night and said he would continue to monitor the situation and we would leave as needed. I eventually fell asleep. I woke up and wen to work the next day.

Since the fire I am still overwhelmed by emotion. I still cry – everywhere I look I am reminded of this horrific tragedy. Every time I close my eyes I am haunted by a call to my husband when I thought I was going to die. Everyone in this community is affected in some way. Our jobs, our houses, our livelihoods our future and it just doesn't end.

## My Story:

How do you try to put into words everything you have lost? You almost become numb when you try – because then you have to face and admit the harsh reality that everything is different. There is life pre-Camp Fire, and post-Camp Fire. I didn't lose my home, but I lost so much about my life, and the way that it was. The reality of the situation is that what I experienced in the Camp Fire has affected me tremendously.

For the first year I had frequent nightmares about fire and being trapped. I had difficulty sleeping for several weeks. Anytime my body feels too hot from fire, I panic. Initially I would revert to the extreme fear I felt on that day, now it is uncomfortable and I have to calm myself even when I am roasting marshmallows with the kids or if we are burning brush at our house. Although it's been 4 years, I still cannot be around open fire the same way that I could pre-Camp Fire.

I have noticed the loss of a lot of little things. It has been a ripple effect that just hasn't ended, and you didn't even know existed. As much as I try to move on, and face those fears, I have had continued nightmares with the most recent Bear fire and Dixie Fire. These most recent fires have caused many emotions to flood back – and at this point when I have had more time to process all that I have lost, it has been difficult to control the emotions. The stress that is caused by these experiences have a significant effect on my anxiety and quality of life. During the Dixie fire I was camping with family, and could barely sleep as I was nervous about the winds, I had our car all packed up just in case, and every time I saw a helicopter or fire engine, I went back into my Camp Fire experience. When we drove home through Berry Creek on Monday of Labor Day 2020 (the day before it burned) everything felt eerie and I could barely function the day we got home. The day when everything in Berry Creek burned, and Chico

was pitch black and ash was falling, I actually had to leave work because I was so sick to my stomach and anxious as the day seemed too familiar. There was hot ash and dark skies and the smell of smoke everywhere.

The most recent Dixie fire also caused many of these same feelings of stress, difficulty working and extreme fear. We have property in Lake Almanor and it was absolutely devasting to see the destruction. With both the Bear fire and Dixie fire, I have realized that there are severe emotions and stressors that occur based on what I went through on November 8th in the Camp Fire. Because of the Dixie fire, we had loss of use of our cabin for 3 months, damage to our cabin siding caused by structure protection and had total loss of the beautiful scenic forest surrounding Prattville that will never return in our lifetime. Although I didn't seek any resources after my initial experience in the Camp Fire, it has become evident that these reoccurring fires cause significant emotional stress, and that the Camp Fire itself has changed my life significantly and how I function and operate.

When the Camp Fire occurred in 2018 I had worked for Feather River Hospital for 10 years as a physical therapist. I worked both at the hospital and at our outpatient site. I also worked at various skilled nursing facilities and did a lot of community outreach at the local senior living centers and for hospital/town events. In fact, my husband's first home was in Paradise, we lived there while we were engaged and worked hard to fix it up and make it our own. We sold it several years before the Camp Fire, but it hurt tremendously to later see it burnt to the ground. We had both of our children at the birthday place in Paradise. Many of our physicians were part of the Adventist Health team. I guess my point in all of this - is that although I no longer lived in Paradise when the Camp Fire occurred, I worked in Paradise for over a decade, and a huge part of my life WAS Paradise. My co-workers were all like family, and many had been employed there for over 20 to 30 years. One of my mentors was a like a second dad and even called my sister and I his work daughters (my sister was also a physical therapist at the hospital). Many of us were related in our department and at the hospital, so when I say it had a family feel, I mean it.

Many of my patient's had also become friends. They sewed things for my wedding day, made me blankets and toys for my babies, and I supported them through life's changes and challenges as much as they supported me. Some of my patient's I had worked with, were those who had passed away from in the Camp Fire, that has also been hard. I am in a unique line of work where you get to know people well, and often work with them for years and years. Paradise held a huge place in my heart and a portion of my heart has remained broken since the Camp Fire.

Right after the fire, my life was utter chaos. My brother-in-law and sister in law had lost their home in Butte Creek Canyon. My mother-in-law, and father-in-law stayed through the Camp Fire to save their home – a harrowing story of their own. We did not see them for over 18 days and couldn't reach them for several days which was very stressful. They were number 500 and something on the Sherriff's welfare check list. After I experienced my own evacuation from Paradise, I kept telling my husband, "They can't survive this fire they have to come down to Chico" – I couldn't explain to anyone who hadn't been in the Camp Fire in Paradise, how horrible and bad it was. Words cannot describe what I experienced that day. I have never seen or known fire to do what it did, and I hope to God I am never in a situation like I was on November 8th ever again.

Most of the hospital was destroyed during the Camp Fire. I have a picture that haunts me of our physical therapy desk/office burning, the old walkers and parallel bars melted to the floor of the building (which I saw at the day of Remembrance held on the hospital campus almost a year later). Although our outpatient building on Clark Road didn't burn, the company chose to close our outpatient rehabilitation services at that location as the population in the town vanished in that one day.

Every day after the fire I went into our Chico physical therapy office to call patient's make sure they were safe and treat those that could make it to any appointments. Most of the people we were treating were emotional wrecks, and dealing with the total destruction of their lives and everything they once knew. I continued to work every day, not knowing if I would still have a job in the coming weeks. It took the hospital over seven weeks to decide how to keep/let go of employees. Ultimately, I was one of six physical therapists who got to keep a job (out of about 35 rehab employees). Although I was thankful to have a job, it was absolutely devastating. My sister lost her job, my mentor therapist who had been employed by the hospital for 35 years lost his job and it was hard to be happy when everyone else I loved and cared about was hurting so intensely. Since the fire my job has been extremely unstable. Our staff has reduced to just three physical therapists at this time.

The hospital has not demonstrated or vocalized rebuilding in the area, and since the Camp Fire they have continued to close multiple departments over the last four years. We are one of the last departments to remain open in Chico, and the truth is that we may be closing in the next few months. My job has been significantly more stressful since the fire, as there has been no stability and direction from the company and continued budget cuts/changes threatening our employment due to the "unknown" since the Camp Fire. These were stressors that never existed pre-Camp Fire and over the last four years have gotten significantly worse. Some might say why don't you quit, but it is difficult to quit the one remaining piece of your life that you had before the fire. There also are significantly less local hospital based physical therapy jobs after losing Adventist Health Feather River Hospital. Also, I feel like if I quit, I am quitting on my patients who continue to come and work with me and support Adventist health in the hopes that they rebuild a hospital. For many of my patient's I am a constant for them, a connection to their "pre-fire life," so that weighs on my heart heavily.

What I lost may not be tangible to some, but I lost a huge part of my life and my identity. And as more time goes on, and I have more experiences from these awful fires, I realize no matter how hard I try none of what I had before the Camp Fire can be replaced.

In the days following the Camp Fire, I had to function. Like a well-oiled machine, I showed up to work at 7 am and often stayed at the clinic until 6 pm. We were doing everything we could to help patients and staff. I looked around at those who had lost everything, EVERYTHING in less than 24 hours and a part of me felt so lucky to be alive. I felt lucky to have my home, I felt lucky that I was able to come home to my **husband and my small children.** Because during that day, I sent an email to my husband when the power was out and people couldn't make calls, that told him how much I loved him, and our babies because I thought I would die and would never see them again. Once I made it home, I felt like God had given me the biggest gift, my life. In all honesty I just tried to stay in motion. I tried to stay busy at work, and busy at home because I knew if I didn't stay in motion I would have been engulfed with emotion, to the point I could not operate as a mother and a wife. I went to counseling after the fire, and I found it helpful to be able to talk to someone else who wasn't related to me, and hadn't experienced loss from the Camp Fire – but I don't think at the time I was able to process what I lost and how my life and profession would be affected. I was really just trying to deal with coping in the day to day.

Grief is difficult. It manifests itself in many ways, at various times, and often when we least expect it. Right after the Camp Fire it felt that if you didn't live in Paradise, then you couldn't complain. If you didn't lose your house, you couldn't complain, if you still had a job, you couldn't complain. You were the lucky one. I think it took me a while, years in fact, to process just how much I lost. Many of my patients, friends and family members lost their homes, their livelihoods and I had patients lose their lives during and some shortly after the Camp Fire. I felt guilty to file a claim when so many had lost everything. In my mind I didn't want to take away from anyone who wasn't as lucky. I figured I could best help those who

had lost everything by working and serving what was left of the Paradise community as best I could. Ultimately time went on, and I had thought any chance to file a claim had passed. It wasn't until more recently with both the Bear Fire and Dixie Fire that I realized the psychological and emotional damage that has continued to compound from my Camp Fire experience. I didn't realize how much I had suffered and continue to suffer until after the deadline to file a proof of claim had passed. The Camp Fire caused significant emotional distress that has had continued and lasting affects on my life.

I relive the fire almost every day, people want to tell their story, and people often want to hear yours. In general people come from a good place, but it is difficult to comprehend the magnitude of the situation, and what I am still living. I still cry whenever I drive to Paradise (if I go any further than lower skyway), because it brings back so much of everything. When I drive by the hospital, or where I was stuck on Billie Road my heart races and I can envision those memories from November 8th with perfect clarity. That is the spot when I thought I was going to die, when I sent a last ditch email to my husband. What a horrible feeling, it makes me sick to my stomach and sad when I remember just how scared I was. I what I went through and continue to endure. Anytime a fire alarm in a building goes off that includes the flashing lights I go into the same panic, I have often found myself crying as it brings back the familiarity of the evacuating the hospital. It's those things that hit you, that I never experienced before the Camp Fire.

    We have also lost our hospital medical community. Our health insurance is out of network for Oroville and Enloe, and we must go to Marysville (Rideout Hospital) or UC Davis for any surgical and most specialty care or we are subject to huge medical bills. We lost many of our hospital doctors, surgeons, same day surgery center, specialists. I have had fewer professional growth opportunities, previously I served on many hospital committees, including the Joint Replacement Center of Excellence committee as a physical therapist, and on the stroke team committee. I often provided in-services on wellness, and balance at the senior living communities, and for our elderly Adventist Health volunteers/ Many of those outreach programs and our volunteer program have also closed since the Camp Fire. I continue to lose friends who have had to make the tough decision to move out of the area to find work and housing. Most of these things didn't just happen at once, it is the ripple effect from the Camp Fire.