| | |
|---|---|
| BROWN RUDNICK LLP<br>David J. Molton (SBN 262075)<br>(DMolton@brownrudnick.com)<br>Eric R. Goodman (admitted pro hac vice)<br>(EGoodman@brownrudnick.com)<br>Seven Times Square<br>New York, New York 10036<br>Telephone: (212) 209-4800<br>Facsimile: (212) 209-4801<br><br>BROWN RUDNICK LLP<br>Joel S. Miliband (SBN 077438)<br>(JMiliband@brownrudnick.com)<br>2211 Michelson Drive, Seventh Floor<br>Irvine, California 92612<br>Telephone: (949) 752-7100<br>Facsimile: (949) 252-1514<br><br>*Counsel for Fire Victim Trustee* | |

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**FIRE VICTIM TRUSTEE'S OBJECTION TO LETTER REQUEST OF WILLIAM S. FRISBEE TO DEEM LATE PROOF OF CLAIM TIMELY FOR THE PURPOSE OF ADMINISTRATION BY THE FIRE VICTIM TRUST**<br><br>[Relates to Docket Number 13033]<br><br>Hearing Date: November 30, 2022<br>Hearing Time: 10:00 a.m.<br>Place: Hearing will be conducted telephonically or by video |

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust, by and through her undersigned counsel, hereby submits this Objection to the letter filed on behalf of William S. Frisbee on October 3, 2022 [Dkt. 13033] (the "**Frisbee Letter**"). In support of this Objection, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

The Fire Victim Trust understands that the Fires caused by PG&E in 2015, 2017 and 2108 made it hard for survivors to undertake many everyday tasks due displacement, trauma and other factors. The Trust has been as understanding and flexible as possible with respect to late claims and, when motions have been filed to consider late filed claims "timely" for the purpose of allowing those claims to be administered by the Trust, the Fire Victim Trustee has authorized many stipulations with the Debtors to have the Court enter orders deeming these claims timely and has not opposed many other late claim motions. Nevertheless, the Trustee must balance a desire to ensure as many Fire Victims as possible are compensated injuries arising from the Fires against the fact that tens of thousands of Fire Victims – many of whom suffered horrific losses – were able to timely file proofs of claim in these cases. The Trustee also recognizes there is a fundamental difference between claimants who file motions to have long-filed late proofs of claims deemed timely after receiving notice from the Trust of this necessity and those who file motions shortly after late proofs of claim are filed.

Of the 1,015 late claim motions filed since the December 31, 2019 extended bar date for non-governmental Fire Claimants, 921 (more than 90 %) have been filed in the last six months. One hundred fifty-five (155) of those late claim motions were filed in August alone, prompting the Trustee to state in several filings with this Court that she would have to discontinue the Trust's liberal non-opposition policy with respect to late claim motions filed after September 30, 2022. The Trust's policy of non-opposition was not a guarantee that every late claim motion would be unopposed, but rather a preference for non-opposition before October 1 and for stricter review thereafter.

/ / /

/ / /

1

Unfortunately, this statement was interpreted by some as a guarantee that late claim motions filed prior to October 1, 2022 would not be opposed by the Trust,[1] prompting a mind-boggling **672** late claim motions to be filed on September 30, 2022 alone. To put these numbers in perspective, in 2020, which included the months immediately after both the extended bar date and the effective date of the Trust (both events that could be expected to prompt the filing of late claim motions), the total number of late claim motions filed alleging Fire Victim Claims was **55**. In 2021, the total number was only **22**. The Trust had no reason to anticipate or prepare for the recent flood of new claims, most of which (including Mr. Frisbee's proof of claim) were only recently filed. All of these new, unanticipated claims will need to be reviewed, evaluated and determined before the Trust can make final payments to any of the nearly 70,000 claimants who have at least begun claims questionnaires with the Trust.

## RELEVANT BACKGROUND

1. On January 29, 2019, PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Reorganized Debtors filed the Chapter 11 Cases to address the billions of dollars of damage and loss relating to the devastating 2015, 2017 and 2018 California fires and to provide compensation to wildfire victims.

2. On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors. On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**TCC**").

3. On March 14, 2019, the Debtors filed their schedules of assets and liabilities. By Order dated July 1, 2019, the Court established October 21, 2019 (the "**Bar Date**") as the last date to file proofs of claim in the Chapter 11 Cases [Docket No. 2806] (the "**Bar Date Order**"). By Order dated November 11, 2019, the Court extended the Bar Date to December 31, 2019 (the

---

[1] The Trust has been advised of several social media posts encouraging people to file late claims by stating that the Trust was paying tens of thousands of dollars for certain claims that did not require any economic damages.

"**Extended Bar Date**") for unfiled, non-governmental Fire Claimants [Docket No. 4672] (the "**Extended Fire Victims Bar Date Order**")

4. The Extended Fire Victims Bar Date Order was entered in response to a motion filed by the TCC. The TCC argued that the Bar Date "should be extended for the fire victims on the ground that evidence filed herewith establishes that a large number of victims are not filing claims in these chapter 11 cases because they are impaired from filing. Their impairments include emotional distress, suffering from trauma caused by the wildfire that destroyed everything they own, confusion caused by the trauma, a lack of awareness of the fire claims bar date, and a belief that a claimant needs to be insured to file a claim." [Docket No. 4293 at 5:2-8]. The Court has already considered and addressed the adequacy of notice to Fire Victims. As a result of the Court's careful consideration of this issue and the thoughtful manner in which the Debtors redoubled their efforts to reach additional Fire Victims, many thousands of claimants, some of whom suffered unfathomable losses, were able to file their claims in a timely manner.

## **OBJECTION**

5. While courts have decided that there is no harm to *the debtor* in allowing late claims to be considered when a solvent debtor is paying all claims in full in a bankruptcy case, in this case Fire Victim Claims will likely not be paid in full because there is not enough money in the Trust to pay in full the Fire Victim Claims already channeled to the Trust. All Fire Victim Claims that have been determined by the Trust so far have taken into consideration the number of Claims that were left to be paid *as of the date those determinations were made*. If number of Claims channeled to the Trust continue to increase, the Trust may not be able to increase the pro rata percentage beyond the current 45%, making it objectively detrimental to tens of thousands of claimants who filed their claims before December 31, 2019, and who submitted their Claims Questionnaires to the Trust by February 26, 2020, to continue to allow late claims into the Trust. Every late claim accepted by the Trust – even those that are ultimately deemed non-compensable – takes time and money from claimants who have met all deadlines and are waiting for their final payments.

6. As the Supreme Court has recognized, Bankruptcy Rule 9006(b)(1) permits court bankruptcy courts to accept proofs of claim filed after the bar date where appropriate in cases of

3

excusable neglect due to inadvertence, mistake, carelessness or circumstances beyond the claimant's control. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). As the dissent in *Pioneer* recognized, "the statute does not *require* the court to forgive every omission caused by excusable neglect, but states that the court "*may*" grant relief "in its discretion." *Id.*, 507 U.S. at 399, 113 S. Ct. at 1500 (emphasis in original).

7. The threshold determination to be made under Bankruptcy Rule 9006(b)(1) is whether Mr. Frisbee's failure to file his proof of claim in this case resulted from excusable neglect. Notably, in *Pioneer*, counsel had filed the claimant's proof of claim a mere 20 days late and the Supreme Court found that the bar date notice in that case contained a "dramatic ambiguity." By contrast, the notice of the Extended Bar Date was the second notice provided to potential Fire Victims and it was carefully crafted to inform that group of the deadline to file any claims arising from a Fire, yet Mr. Frisbee's proof of claim was filed 1,005 days after the Extended Bar Date.

8. As this Court has recognized, claimants who file late proofs of claim bear "the burden of presenting facts demonstrating excusable neglect." *In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 89 (2004) (citing *Key Bar Invs., Inc. v. Cahn* (*In re Cahn*), 188 B.R. 627 (9th Cir. BAP 1995)).

9. The Frisbee Letter does not state any reason why Mr. Frisbee did not file a proof of claim before the Extended Bar Date other than that "[h]e did not feel that the property damages warranted the time and aggravation of suing PGE and when they declared bankruptcy he gave up on the idea of being compensated by PGE completely . . .". Rather than stating that Mr. Frisbee did not know about the deadline to file a proof of claim in these cases, the Frisbee Letter states that Mr. Frisbee made a conscious decision not to file a timely proof of claim.

10. In *Pioneer* the Supreme Court applied the majority of what was then the Ninth Circuit test for determining whether a failure to timely file a proof of claim was due to excusable neglect: (1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; and (4) whether the creditor acted in good faith. *Id.*, 507 U.S. at 395, 113 S. Ct. at 1498.

4

11. The first consideration in determining whether a late claim filing was the result of "excusable neglect" under *Pioneer* is the danger of prejudice to the debtor. This factor is irrelevant in the present case. While it is true that the relief requested in the Motion will not prejudice the *Debtors*, which have already satisfied their funding obligations to the Trust under the Plan, it most certainly prejudices tens of thousands of claimants who timely filed proofs of claim in these cases.

12. The Supreme Court recognized that "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* The Frisbee Letter does not address the prejudice to Fire Victims who timely filed their proofs of claim, much less establish a lack of prejudice. Equity does not support the filing of a late claim due to a change of heart, where a claimant acknowledges that he chose not to file a claim before the bar date.

13. The second consideration under Pioneer is the length of delay and its potential impact on judicial proceedings. Mr. Frisbee's 's proof of claim was filed more than two years—1,005 days—after the Extended Bar Date. As noted above, the Trust has a limited fund from which to pay all Fire Victim Claims. As such, the Trust cannot finally determine how much it can pay on account of any Fire Victim Claim until it adjudicates every Fire Victim Claim. The continued addition of claims to the Fire Victim Trust prevents the Trust from allocating its limited funds and further extends the time that claimants who timely filed their Fire Victim Claims must wait for final payments, thus delaying the administration of Fire Victim Claims and prejudicing those who hold timely filed Fire Victim Claims with delay.

14. Moreover, the addition of claims such as Movant's increases the number of claimants among which the limited funds of the Trust must be divided. In addition, each late claim motion must be reviewed and considered by the Trust, which incurs professional fees. Each late claim motion reduces the funds available to distribute to Fire Victims. The extreme length of Mr. Frisbee's delay weighs heavily against deeming Mr. Frisbee's request.

15. The third *Pioneer* factor, whether the delay was beyond the late claimant's control, also weighs against granting the relief requested in the Frisbee Letter. As explained above, Mr. Frisbee did not give any reason for his delay that could establish excusable neglect. Rather, the

5

Frisbee Letter states that Mr. Frisbee knowingly decided not to file a proof of claim earlier and seems to have been convinced by a well-meaning friend to file a proof of claim for claims he had not considered earlier. Nevertheless, this is not a sufficient excuse for neglecting to file a proof of claim by the deadline tens of thousands of other claimants were able to meet.

16. While the Trustee does not believe that Mr. Frisbee lacks the good faith that comprises the final consideration listed by the *Pioneer* court, it is clear from the Frisbee Letter that Mr. Frisbee was not prevented from filing a timely claim by any circumstances, but rather chose not to do so.

17. In addition, as is evidenced by overwhelming number of late claim motions filed within the last month alone, allowing Mr. Frisbee's claim to be deemed timely filed would encourage other latecomers to file similar motions. Such a result would be grossly inequitable to those holding timely filed Fire Victim Claims.

18. For the foregoing reasons, Mr. Frisbee fails to meet the standard for establishing "excusable neglect" in filing a proof of claim 1,005 days after the Extended Bar Date. The relief requested in the Frisbee Letter should be denied.

## CONCLUSION

The Trustee respectfully requests that this Court deny relief requested in the Frisbee Letter and grant such other and further relief as may be just.

*[remainder of page intentionally blank]*

| | |
|---|---|
| DATED: Ocotber 17, 2022 | BROWN RUDNICK LLP |

By: */s/Eric R. Goodman*
Eric R. Goodman (admitted pro hac vice)
(EGoodman@brownrudnick.com)
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

and

Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

*Counsel for Fire Victim Trustee*

7