**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:  (212) 310-8000
Fax:  (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for the Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**<br><br>Hearing Date: November 15, 2022<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **(Telephonic or Video Only)**<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Objection Deadline:**<br>**November 8, 2022, 4:00 pm (Pacific Time)** |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), in accordance with Section 7.1 of the Plan,[1] sections 105(a) and 1142 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"): (i) further extending the deadline established under the Plan for the Reorganized Debtors to object to Claims by an additional two hundred seventy (270) days, through and including September 15, 2023, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof; and (ii) granting related relief. In support of the Motion, the Reorganized Debtors submit the Declaration of Robb McWilliams, filed concurrently herewith.

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (as it may be amended, modified, or supplemented and together which any exhibits or schedules thereto, the "**Plan**").

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

The Reorganized Debtors and their professionals continue to work diligently to reconcile and resolve the Claims filed in these Chapter 11 Cases.

During the two years since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved over 15,000 of the approximately 15,200 General Claims[2] (which exclude Securities Claims,[3] Fire Victim Claims, and Subrogation Wildfire Claims) that were scheduled or filed against the Debtors, representing approximately $59.1 billion in the aggregate of the approximately $60.1 billion—or approximately 98% of the total dollar amount and 99% in number—of General Claims filed in these Chapter 11 Cases.

The Reorganized Debtors have also utilized the Securities Claims Procedures (as defined below) to make significant progress in addressing Securities Claims filed against the Debtors, including by expunging (through objection or withdrawal), reducing, or otherwise consensually resolving through settlement over 3,000 Securities Claims filed to date, representing over $1.2 billion in face amount of Securities Claims. In total, the Reorganized Debtors have reconciled and resolved approximately 18,100 General Claims and Securities Claims, asserting approximately $60.4 billion—or approximately 88% of the total dollar amount of the General Claims and Securities Claims asserted in these Chapter 11 Cases.

The Reorganized Debtors respectfully request that they be permitted to continue their substantial efforts to reconcile and resolve Claims through the claims reconciliation process, and that the deadline to object to Claims as established by the Fourth Extension Order (as defined below), currently set as December 19, 2022 (the "**Current Objection Deadline**"), be extended an additional

---

[2] As used herein, "**General Claims**" means Claims scheduled by or filed against the Debtors that are not Securities Claims, Fire Victim Claims, or Subrogation Wildfire Claims. These General Claims include, but are not limited to, trade claims, customer claims, employment claims, regulatory claims, real property claims, and tort and other litigation claims that are unrelated to the Fires.

[3] "**Securities Claims**" means rescission or damages claims filed in the Chapter 11 Cases by claimants who have asserted that they purchased or acquired certain of the Debtors' publicly held debt and equity securities during the period from April 29, 2015 through November 15, 2018, inclusive.

two hundred seventy (270) days, through and including September 15, 2023, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof.

The relief sought in this Motion is particularly warranted because the Debtors and their professionals have made good use of prior extensions,[4] as demonstrated by the substantial progress made in resolving the vast majority of General Claims and Securities Claims. As an illustration, in the Fourth Extension Motion (as defined below), the Reorganized Debtors described 190 Recategorized Claims (which include 18 duplicate or amending claims) that had been filed on Fire Victim Proof of Claim Forms but were determined, in March 2022, not to constitute Fire Victim Claims. Of those 190 Recategorized Claims, all but 11 of the Claims have been expunged, reduced through settlement, reconciled and allowed, or otherwise resolved.

As a result of these efforts, the Reorganized Debtors have greatly reduced the number of Remaining Claims[5] that have not been resolved—particularly relative to the tens of thousands of Claims that were filed against the Debtors. The Remaining Claims will require additional time beyond the Current Objection Deadline to allow the Reorganized Debtors to reconcile and either resolve consensually, object to, or seek to litigate the Remaining Claims outside of the Bankruptcy Court.

The Reorganized Debtors submit that the relief sought in this Motion will benefit all parties in interest because, among other reasons, it will provide the Reorganized Debtors with additional time to attempt to resolve the Remaining Claims consensually, without burdening the Court with avoidable litigation or imposing avoidable litigation-related costs and expenses on the parties.

---

[4] The previous extensions sought by the Reorganized Debtors were each 180 days; the Reorganized Debtors seek an extension of 270 days in this Motion to save administrative expenses and the Reorganized Debtors' and judicial resources, and respectfully submit that the extension is justified by the considerable work that the Reorganized Debtors have performed and continue to perform in resolving the tens of thousands of Claims filed in these Chapter 11 Cases.

[5] "**Remaining Claims**" means the General Claims and Securities Claims filed in these Chapter 11 cases, excluding (i) those Claims to which the Reorganized Debtors have objected (or to which the Reorganized Debtors expect to object prior to the Current Objection Deadline), (ii) those Claims for which the automatic stay has been lifted or the Plan Injunction modified (or as to which the Reorganized Debtors expect the Plan Injunction to be modified prior to Current Objection Deadline), and (iii) those Claims which the Reorganized Debtors have settled or otherwise resolved on a final basis.

Absent the relief requested, the Reorganized Debtors may be compelled to object to the Remaining Claims to avoid a windfall to some Claimants from the "deemed allowance" of non-meritorious Claims under the Plan.

## II. JURISDICTION

This Court has jurisdiction to consider these issues pursuant to 28 U.S.C. sections 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. section 157(b). Venue is proper before the Court pursuant to 28 U.S.C. sections 1408 and 1409.

## III. BACKGROUND

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. Prior to the Effective Date, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806] (the "**Bar Date Order**"). The Bar Date Order set October 21, 2019 (the "**Bar Date**") as the deadline to file proofs of claim (each, a "**Proof of Claim**") for prepetition claims (as defined in section 101(5) of the Bankruptcy Code), including all claims of Fire Claimants, Wildfire Subrogation Claimants, Governmental Units, customers, secured claims and priority claims against either of the Debtors. The Bar Date was later extended to December 31, 2019, solely with respect to unfiled, non-governmental Fire Claims [Docket No. 4672]; and separately to April 16, 2020, solely with respect to persons or entities that purchased or acquired

certain of the Debtors' publicly held debt and equity securities within the limited period from April 29, 2015 through November 15, 2018, inclusive, and that may have Securities Claims based on those purchases against the Debtors [Docket No. 5943].

On June 20, 2020, this Court entered the Order confirming the Plan [Docket No. 8053] (the "**Confirmation Order**"). The Plan became effective on July 1, 2020 [Docket No. 8252] (the "**Effective Date**"). Pursuant to Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order), the Reorganized Debtors may object to Claims until the later of (i) one-hundred and eighty (180) days after the Effective Date (*i.e.*, December 28, 2020) and (ii) such later date as may be fixed by the Bankruptcy Court for cause shown. Plan § 7.1.

On June 30, 2020, the Court entered the *Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections* [Docket No. 8228] (the "**General Claims Omnibus Objection Procedures Order**," and each objection filed pursuant thereto or pursuant to the Securities Claims Procedures (as defined below), an "**Omnibus Objection**"). The General Claims Omnibus Objection Procedures Order permits the Reorganized Debtors to file objections to General Claims on an omnibus basis.

On September 25, 2020, the Court entered the *Order Approving ADR and Related Procedures for Resolving General Claims* [Docket No. 9148] (the "**General Claims ADR Procedures Order**"). The General Claims ADR Procedures Order approved "**General Claims Procedures**" (as defined therein) that allow: (i) General Claimants (*i.e.*, holders of Claims other than Fire Victim Claims, Subrogation Wildfire Claims, or Securities Claims) to submit, by mail or via a secure online portal, information necessary to allow the Reorganized Debtors to evaluate their Claims and develop settlement proposals for General Claimants; and (ii) the parties to exchange settlement offers or engage in standard or abbreviated forms of mediation to resolve General Claims. The General Claims Procedures were designed to work together with the procedures set forth in the General Claims Omnibus Objection Procedures Order to form a comprehensive and efficient pre-litigation approach to resolve General Claims.

On October 27, 2020, the Reorganized Debtors filed the *Motion for Entry of an Order Extending Deadline for the Reorganized Debtors to Object to Claims* [Docket No. 9355] (the "**Initial**

Extension Motion"), which the Court granted with certain limited modifications in the *Order Extending Deadline for the Reorganized Debtors to Object to Claims* [Docket No. 9563] (the "**Initial Extension Order**"). The Initial Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by one hundred eighty (180) days, through and including June 26, 2021 (the "**Initial Extension Period**"), except for the United States Claims, for which the objection deadline was extended to March 31, 2021.[6]

On January 25, 2021, the Court entered the *Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Docket No. 10015] (the "**Securities Procedures Order**"). The Securities Claims Procedures Order approved procedures (the "**Securities Claims Procedures**") aimed at facilitating the resolution of Securities Claims.

On March 17, 2021, the Reorganized Debtors filed the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 10408] (the "**Second Extension Motion**"), which the Court granted on April 5, 2021, with certain limited modifications, in the *Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 10494] (the "**Second Extension Order**"). The Second Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by an additional one hundred eighty (180) days, through and including December 23, 2021 (the "**Second Extension Period**"), except that the deadline for the Reorganized Debtors to object to the CAL FIRE Claims[7] was extended through and including September 30, 2021,

---

[6] As used here, "United States Claims" means Class 4B Utility General Unsecured Claims of the United States that are identified by claim number and amount in Docket No. 9718 as required by the Initial Extension Order. The Reorganized Debtors and the United States have entered into a stipulation to extend the deadline for the Reorganized Debtors to object to the remaining United States Claims to December 19, 2022. For the avoidance of doubt, the relief requested herein does not apply to the existing deadline for the Reorganized Debtors to object to the remaining United States Claims.

[7] As used here, "CAL FIRE Claims" means Class 4B Utility General Unsecured Claims of the California Department of Forestry and Fire Protection enumerated in the *Limited Objection of California Department of Forestry and Fire Protection to Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 10480]. The Reorganized Debtors have resolved all of the CAL FIRE Claims.

without prejudice to the right of the Reorganized Debtors to move for further extensions of all such dates.

On October 19, 2021, the Reorganized Debtors filed the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 11450] (the "**Third Extension Motion**"), which the Court granted on November 4, 2021, with certain limited modifications, in the *Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 11533] (the "**Third Extension Order**"). The Third Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by an additional one hundred eighty (180) days, through and including June 21, 2022 (the "**Third Extension Period**").

On April 26, 2022, the Reorganized Debtors filed the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 12229] (the "**Fourth Extension Motion**"), which the Court granted on May 19, 2022, in the *Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 12432] (the "**Fourth Extension Order**"). The Fourth Extension Order extended the Reorganized Debtors' deadline under Section 7.1 of the Plan to object to Claims by an additional one hundred eighty (180) days, through and including December 19, 2022 (the "**Fourth Extension Period**").

### IV. THE REORGANIZED DEBTORS' CLAIMS RECONCILIATION PROCESS

The Debtors began the process of gathering and consolidating information relating to their liabilities when preparing their schedules and statements of financial affairs, long before any Proofs of Claim were filed in these Chapter 11 Cases. As indicated in the Initial Extension Motion, more than 22,440 Proofs of Claim had been scheduled or filed against the Debtors, asserting over $68.4 billion in the aggregate (not including Claims listed in the Debtors' schedules as contingent,

unliquidated, and/or disputed).[8]  The reconciliation, resolution, and distributions of the Claims have required extensive efforts by the Reorganized Debtors' team of advisors, attorneys, and personnel.

Since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved approximately 18,100 Claims asserting approximately $60.4 billion in Claims.  This represents approximately 88% of the total dollar amount of Claims asserted in these Chapter 11 Cases (including Securities Claims, but excluding Fire Victim Claims and Subrogation Wildfire Claims).  Included in these statistics are approximately 360 Claims expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved during the Fourth Extension Period, asserted for approximately $1.1 billion in the aggregate.

Distributions on Claims.  Since the Effective Date, the Reorganized Debtors have processed more than 100 rounds of distributions and made distributions on approximately 6,200 Claims, totaling approximately $24.6 billion.  In addition, the Reorganized Debtors made cash transfers to the Fire Victim Trust of more than $6.7 billion and to the Subrogation Wildfire Trust of approximately $11 billion.

Omnibus Objections.  As of the date hereof, the Reorganized Debtors have filed 139 Omnibus Objections, including 118 with respect to General Claims and 21 with respect to Securities Claims. Three of these Omnibus Objections were filed during the Fourth Extension Period.  Through the Plan and prosecution of the Omnibus Objections, approximately 11,500 Claims—approximately 9,500 General Claims and approximately 2,000 Securities Claims—have been modified, withdrawn, disallowed and/or expunged, reducing the amounts asserted against the Debtors by approximately

---

[8] Since the First Extension Motion, the Reorganized Debtors received approximately 1,400 additional untimely Claims asserting approximately $476 million in aggregate claims. Additionally, as discussed in the Fourth Extension Motion, the Reorganized Debtors received 190 claims (including 18 duplicative or amended claims) representing approximately $9.9 million in asserted value back from the Fire Victim Trust identified as non-Fire Claims as defined in Section 1.79 of the Plan. Together, bringing the total number of Proofs of Claim filed or scheduled against the Debtors to more than 24,000 in count, asserting approximately $68.9 billion in aggregate claims. These figures and the others discussed in this Part IV exclude approximately 87,600 Fire Victim Claims and Subrogation Wildfire Claims, which will be resolved by the Fire Victim Trust and the Subrogation Wildfire Trust, respectively, in accordance with the Plan.

$32.8 billion. In addition, 7 General Claims are currently subject to pending Omnibus Objections, which seek to further reduce the asserted Claims pool by approximately $22 million.

### A. The General Claims

<u>Settled Claims</u>. The Debtors and Reorganized Debtors have undertaken extensive efforts to resolve certain General Claims through negotiated settlements, including through the General Claims Procedures further described below. These negotiation efforts have yielded the settlement of approximately 2,300 General Claims, totaling over $5.1 billion in asserted claim amounts (plus unliquidated amounts), both within and separate from the General Claims Procedures discussed below. Approximately 60 of those General Claims have been settled during the Fourth Extension Period. The Reorganized Debtors also have extended settlement offers to resolve seven General Claims, which, if accepted, will reduce the unresolved asserted Claims pool by approximately $81.4 million. Further, the Reorganized Debtors are awaiting final documentation of settlements with respect to approximately 10 General Claims.

<u>General Claims Procedures</u>. The Reorganized Debtors resolved a subset of the settled General Claims described above through the General Claims Procedures. The Reorganized Debtors have sent formal information requests to the holders of approximately 420 General Claims, have initiated settlement offer exchanges on approximately 150 General Claims, and have noticed over 90 Abbreviated Mediations and over 70 Standard Mediations (each as defined in the General Claims ADR Procedures Order).[9] The General Claims Procedures have resulted in the resolution of approximately 150 General Claims by settlement, totaling approximately $210 million in asserted value (plus unliquidated amounts).[10] The Reorganized Debtors are hopeful that they will be able to resolve consensually a substantial number of the approximately 110 General Claims that remain subject to the General Claims Procedures.

---

[9] The categories referenced in this sentence are not mutually exclusive; for example, the Reorganized Debtors may have sent an information request, initiated settlement offer exchanges, and noticed a mediation on the same General Claim.

[10] This figure does not include 64 Claims that began in the General Claims Procedures but were ultimately settled outside of the General Claims Procedures.

Claims Litigated Outside of Bankruptcy Court. 45 General Claims are being litigated in non-bankruptcy fora, pursuant to orders of the Court modifying the automatic stay or Plan Injunction. Pursuant to the Third and Fourth Extension Orders, such Claims are deemed to have been objected to for purposes of the Plan's definition of "Allowed." Plan, Section 1.7(f). Further, the Reorganized Debtors anticipate stipulating to similar modifications of the Plan Injunction with respect to 3 additional General Claims.

Recategorized Claims. The Reorganized Debtors described in the Fourth Extension Motion 190 Recategorized Claims (as such term is defined in the Fourth Extension Motion, including 18 duplicate or amending Claims), which had been filed on Fire Victim Proof of Claim Forms and/or asserted fire-related damage and had been preliminarily identified as Fire Victim Claims, but which the Fire Victim Trustee and, independently, the Reorganized Debtors determined in March 2022 did not constitute Fire Victim Claims. Of those 190 Recategorized Claims, all but 11 of the Claims have been expunged, reduced through settlement, reconciled and allowed, or otherwise resolved.

B. **The Securities Claims**

Securities Claims Procedures. The Fourth Extension Motion discusses the extensive work done by the Reorganized Debtors and their professionals to reconcile and continue resolving the Securities Claims filed against the Reorganized Debtors. The Securities Procedures Order authorized the Reorganized Debtors to, among other things, request the trading information necessary to assess the viability and calculate the potential amount of allowed Claims under the federal securities laws for each Securities Claim. As detailed in the Fourth Extension Motion, the Reorganized Debtors expended considerable effort to collect trading information from claimants.

Omnibus Objections. The Reorganized Debtors have filed 21 omnibus objections to Securities Claims on various grounds. As of the date of this filing, the Court has addressed all of those omnibus objections, resulting in the disallowance and expungement of 2,066 Securities

Claims,[11] of which 969 had not asserted specific damage amounts on the face of the proofs of claim, and 1,097 had asserted a total of $999.7 million in damages on the face of the proofs of claim.

<u>Settlement Offers</u>.  The Reorganized Debtors began making settlement offers earlier this year pursuant to the Securities Claims Procedures, and they continued to do so during the Fourth Extension Period until the process was paused after the Reorganized Debtors began discussions regarding a more global resolution of the Securities Claims.  By that time, the Reorganized Debtors had made offers to approximately 1,400 Securities Claimants.

The settlement process under the Securities Claims Procedures continues to be effective in resolving Securities Claims, and the response to the settlement offers was very positive.  At the time of the filing of this Motion, more than 1,020 Securities claimants have agreed with the Reorganized Debtors to settle their Securities Claims.  Moreover, approximately 90% of Securities Claimants that have taken the time to review the offers on the Settlement Portal have ultimately agreed to settlement terms with the Reorganized Debtors.

Although the Securities Claims Procedures process has been effective in resolving Securities Claims, thousands of Securities Claims remain unresolved.  As the Court is aware, earlier this year, the Reorganized Debtors began significant and extensive efforts to negotiate a global settlement, which would include settlements of certain litigation brought by the PG&E Fire Victim Trust (the "**FVT**") against certain former directors and officers of PG&E (the "**D&O Defendants**"), certain disputes with PG&E's D&O insurers, and the securities claims brought in a separate litigation by certain securities plaintiffs and the Securities Claims.

The Reorganized Debtors engaged in active negotiations in connection with a potential global settlement with the help of an experienced mediator.  Although the Reorganized Debtors have not yet reached a global securities settlement, the Reorganized Debtors filed, on September 29, 2022, a motion pursuant to Bankruptcy Rule 9019 to approve a settlement of the disputes with certain of PG&E's D&O insurance carriers (the "**D&O Insurance Settlement**"), which settlement is integral

---

[11] Since the filing of the Second Securities Claims Status Report, the order was vacated for 31 claims originally expunged through the Reorganized Debtors' Eleventh and Thirteenth Securities Claims Omnibus Objections [Docket No. 12126].

to, and the approval of which by the Court is a condition of, a separate settlement of the FVT litigation against the D&O Defendants [Docket No. 13015]. As set forth in that motion, which was granted by the Court on October 25, 2022 [Docket No. 13120], the Reorganized Debtors believe the approval of the D&O Insurance Settlement will also help facilitate a potential settlement of the Securities Claims by providing certainty regarding the availability of insurance proceeds to cover at least a meaningful portion of a potential settlement of those claims. The Reorganized Debtors remain hopeful that the Securities Claims can be resolved without the need to litigate the claims on an individual-claim basis, whether through the current process described above or otherwise. Alternatively, the Debtors will aggressively pursue further individual settlements pursuant to the Securities Claims Procedures. The extension of the deadline for the Reorganized Debtors to object to Claims is thus necessary and appropriate to allow the Reorganized Debtors the opportunity to resolve the Securities Claims, either through further global settlement negotiations or pursuant to the Securities Claims Procedures.

## V. BASIS FOR RELIEF REQUESTED

### A. The Court Has the Authority to Extend the Current Objection Deadline

The Court has the express authority to extend the Current Objection Deadline, and cause exists for it to do so. Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order) provides that the Current Objection Deadline may be extended by the Court for cause shown. Plan § 7.1. This provision anticipates and provides the necessary authority for the Motion.

Even in the absence of express authority, Bankruptcy Rule 9006(b) provides in relevant part that "when an act is required or allowed to be done at or within a specified period . . . by order of [the] court, the court for cause shown may at any time in its discretion . . . order the period enlarged . . . ." Fed. R. Bankr. P. 9006(b). The Plan and Confirmation Order provide that the Court retains jurisdiction over "all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code." Confirmation Order ¶ 78; Plan § 11.1. Finally, the Plan also provides that the Court retains jurisdiction for, *inter alia*, the following purposes:

> (d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims; …[and]
>
> (k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation[.]

Plan § 11.1(d) and (k). These provisions underscore the Court's authority to extend the Current Objection Deadline.

Indeed, the Plan's express authority to extend the Current Objection Deadline is consistent with the Court's general authority under sections 105(a) and 1142(b) of the Bankruptcy Code to issue orders necessary for the consummation of the Plan or to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); 11 U.S.C. § 1142(b) ("The court may direct the debtor . . . to perform any other act . . . that is necessary for the consummation of the plan."); *see also Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."); *Nobel Grp., Inc. v. Bank (In re Nobel Grp., Inc.)*, 529 B.R. 284, 290-91 (Bankr. N.D. Cal. 2015) (quoting *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004) ("Post-confirmation jurisdiction is assumed by statute and rule: 11 U.S.C. § 1142(b) authorizes the bankruptcy court to 'direct' the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan.")). These provisions also grant the Court ample authority to deem as "objected to" any Claims that are being litigated in a non-bankruptcy forum pursuant to an order of this Court modifying the automatic stay or the Plan Injunction.

Finally, the Court has the inherent power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This request to further extend the Current Objection Deadline is in line with relief granted in chapter 11 cases of similar size. *See, e.g., In re Lehman*

*Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008), Docket Nos. 58842, 54122, 50165, 41286 (extending claims objection deadline four times, for a total of six years); *In re Motors Liquidation Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009), Docket Nos. 10938, 11546, 12092, 12364, 12499, 12610 (extending claims objection deadline six times, for a total of nearly three years); *In re MF Global Holdings Ltd., et al.,* Case No. 11-15059 (Bankr. S.D.N.Y. Oct. 31, 2011), Docket Nos. 2290, 2247, 2200, 2160, 2102, 2028, 1869 (extending claims objection deadline seven times, for a total of two and a half years).

### B. Good Cause Exists to Extend the Current Objection Deadline

The Reorganized Debtors have acted diligently to review and resolve the immense number of Claims asserted in these Chapter 11 Cases. To date, the Reorganized Debtors have resolved approximately 18,100 Claims with asserted amounts of $60.4 billion in the aggregate, representing approximately 88% of the aggregate dollar amount of Claims asserted in these Chapter 11 Cases. The Reorganized Debtors believe that the requested extension of 270 days is required and reasonable in light of the circumstances, but additional time may be necessary to resolve certain Claims.

Extension of the Current Objection Deadline will benefit the estates as a whole, including creditors and other parties in interest. It will enable the Reorganized Debtors to continue to engage in meaningful negotiations to resolve Claims consensually, minimizing the need to file and litigate objections. Resolving a Claim without a formal objection benefits both the holder of the Claim and the Reorganized Debtors' other stakeholders by avoiding the burden and expense of litigation. Further, if the Current Objection Deadline is not extended, the Reorganized Debtors will be compelled to divert their resources to supplement any pending objections to the Remaining Claims and file new objections to those Remaining Claims for which no objection has been filed. If the requested relief were not granted, the Reorganized Debtors would be forced to either (a) forego filing meritorious objections, thus creating a windfall for some holders of the Remaining Claims, *or* (b) file a plethora of rushed, expansive prophylactic objections to meet the Current Objection Deadline and preserve the Reorganized Debtors' rights, which would be inefficient and impose substantial burdens on the Court and the Reorganized Debtors and significant inconvenience and litigation expense on holders of the Remaining Claims. Neither of these alternatives would be in the best interests of the

Reorganized Debtors' stakeholders, notably including the Fire Victims Trust—which holds a significant stake in the Reorganized Debtors' equity—and the holders of Fire Victim Claims who are that Trust's beneficiaries.

Extending the Current Objection Deadline will not prejudice holders of the Remaining Claims for the reasons stated above, and because such an extension is contemplated by the Plan and is reasonable under the circumstances. Moreover, whether or not the Current Objection Deadline is extended, holders of the Remaining Claims will have a full and fair opportunity to be heard if and when an objection is litigated.

For these reasons, the Reorganized Debtors submit that extending the Current Objection Deadline through and including September 15, 2023, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof, is appropriate under the circumstances.

## VI.  NOTICE

Notice of this Motion will be provided to: (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other Court.

WHEREFORE the Reorganized Debtors respectfully request entry of the Proposed Order granting (i) the relief requested herein, and (ii) such other and further relief for the Reorganized Debtors as the Court may deem just and appropriate.

Dated: October 25, 2022                **WEIL, GOTSHAL & MANGES LLP**
                                       **KELLER BENVENUTTI KIM LLP**

                                       */s/ Jane Kim*
                                       Jane Kim

                                       *Attorneys for the Debtors and Reorganized Debtors*