**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:    (212) 310-8000
Fax:   (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for the Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

**In re:**

**PG&E CORPORATION,**

- and -

**PACIFIC GAS AND ELECTRIC COMPANY,**

                              **Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

*\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).*

Case Nos. 19-30088 (DM) (Lead Case)
(Jointly Administered)

**DECLARATION OF ROBB MCWILLIAMS IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**

Hearing Date: November 15, 2022
Time: 10:00 a.m. (Pacific Time)
Place: **(Telephonic or Video Only)**
        United States Bankruptcy Court
        Courtroom 17, 16th Floor
        San Francisco, CA 94102

**Objection Deadline:**
**November 8, 2022, 4:00 pm (Pacific Time)**

I, Robb C. McWilliams, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.  I am a Managing Director at the firm of AlixPartners, LLP ("**AlixPartners**"), which is an affiliate of both AlixPartners, LLC and AP Services, LLC, which provided interim management services to Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors,**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). I submit this Declaration in support of the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* (the "**Motion**"),[1] filed contemporaneously herewith.

2.  In my current position, I am responsible for overseeing the Bankruptcy Case Management component of AlixPartners' assignment to assist the Reorganized Debtors with various matters related to these Chapter 11 Cases. My area of responsibility includes the effort by AlixPartners, in coordination with the Reorganized Debtors, to review and assess the validity of all claims asserted against the Debtors, other than (a) Fire Claims and Subrogation Wildfire Claims and (b) providing limited support with respect to Securities Claims. I am generally familiar with the Reorganized Debtors' day-to-day operations, financing arrangements, business affairs, and books and records. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, the knowledge of other AlixPartners professionals working under and alongside me on this matter, my discussions with the Reorganized Debtors' personnel, the Reorganized Debtors' various other advisors and counsel, and my review of relevant documents and information prepared by the Reorganized Debtors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this declaration on behalf of the Reorganized Debtors.

3.  The AlixPartners team under my supervision has been actively involved in the claims review and reconciliation process since shortly after the filing of these Chapter 11 Cases. AlixPartners initially assisted the Debtors in the preparation of their bankruptcy schedules based on the Debtors' books and records. AlixPartners has coordinated with the Debtors in reconciling and reviewing filed

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

proofs of claim with claims reflected in the Debtors' schedules and books and records. AlixPartners has developed and maintains a claims reconciliation database and various data management applications that are used by the Reorganized Debtors and AlixPartners to validate claims as well as identify claims that are invalid in whole or in part, and the appropriate grounds for objection to such claims. AlixPartners is now supporting, and will continue to support, the efforts of the Reorganized Debtors and their counsel to resolve disputed claims, including by formal objections as necessary.

4.    AlixPartners personnel also conferred with personnel at Kroll, the Reorganized Debtors' claims servicing agent and the Reorganized Debtors' various other advisors and counsel, with respect to the information concerning the Securities Claims in this Declaration.

5.    The Debtors began the process of gathering and consolidating information relating to their liabilities when preparing their schedules and statements of financial affairs, long before any Proofs of Claim were filed in these Chapter 11 Cases. As indicated in the Initial Extension Motion, more than 22,440 Proofs of Claim had been scheduled or filed against the Debtors, asserting over $68.4 billion in the aggregate (not including Claims listed in the Debtors' schedules as contingent, unliquidated, and/or disputed).[2] The reconciliation, resolution, and distributions of the Claims have required extensive efforts by the Reorganized Debtors' team of advisors, attorneys, and personnel.

6.    Since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved approximately 18,100 Claims asserting approximately $60.4 billion in Claims. This represents approximately 88% of the total dollar amount of Claims asserted in these Chapter 11 Cases (including Securities Claims, but excluding Fire Victim Claims and Subrogation Wildfire Claims). Included in these statistics are

---

[2] Since the First Extension Motion, the Reorganized Debtors received approximately 1,400 additional untimely Claims asserting approximately $476 million in aggregate claims. Additionally, as discussed in the Fourth Extension Motion, the Reorganized Debtors received 190 claims (including 18 duplicative or amended claims) representing approximately $9.9 million in asserted value back from the Fire Victim Trust identified as non-Fire Claims as defined in Section 1.79 of the Plan. Together, bringing the total number of Proofs of Claim filed or scheduled against the Debtors to more than 24,000 in count, asserting approximately $68.9 billion in aggregate claims. These figures and the others discussed in this Part IV exclude approximately 87,600 Fire Victim Claims and Subrogation Wildfire Claims, which will be resolved by the Fire Victim Trust and the Subrogation Wildfire Trust, respectively, in accordance with the Plan.

approximately 360 Claims expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved during the Fourth Extension Period, asserted for approximately $1.1 billion in the aggregate.

7. _Distributions on Claims_. Since the Effective Date, the Reorganized Debtors have processed more than 100 rounds of distributions and made distributions on approximately 6,200 Claims, totaling approximately $24.6 billion. In addition, the Reorganized Debtors made cash transfers to the Fire Victim Trust of more than $6.7 billion and to the Subrogation Wildfire Trust of approximately $11 billion.

8. _Omnibus Objections_. As of the date hereof, the Reorganized Debtors have filed 139 Omnibus Objections, including 118 with respect to General Claims and 21 with respect to Securities Claims. Three of these Omnibus Objections were filed during the Fourth Extension Period. Through the Plan and prosecution of the Omnibus Objections, approximately 11,500 Claims—approximately 9,500 General Claims and approximately 2,000 Securities Claims—have been modified, withdrawn, disallowed and/or expunged, reducing the amounts asserted against the Debtors by approximately $32.8 billion. In addition, 7 General Claims are currently subject to pending Omnibus Objections, which seek to further reduce the asserted Claims pool by approximately $22 million.

**A.     The General Claims**

9. _Settled Claims_. The Debtors and Reorganized Debtors have undertaken extensive efforts to resolve certain General Claims through negotiated settlements, including through the General Claims Procedures further described below. These negotiation efforts have yielded the settlement of approximately 2,300 General Claims, totaling over $5.1 billion in asserted claim amounts (plus unliquidated amounts), both within and separate from the General Claims Procedures discussed below. Approximately 60 of those General Claims have been settled during the Fourth Extension Period. The Reorganized Debtors also have extended settlement offers to resolve seven General Claims, which, if accepted, will reduce the unresolved asserted Claims pool by approximately $81.4 million. Further, the Reorganized Debtors are awaiting final documentation of settlements with respect to approximately 10 General Claims.

10.     <u>General Claims Procedures</u>.  The Reorganized Debtors resolved a subset of the settled General Claims described above through the General Claims Procedures.  The Reorganized Debtors have sent formal information requests to the holders of approximately 420 General Claims, have initiated settlement offer exchanges on approximately 150 General Claims, and have noticed over 90 Abbreviated Mediations and over 70 Standard Mediations (each as defined in the General Claims ADR Procedures Order).[3]  The General Claims Procedures have resulted in the resolution of approximately 150 General Claims by settlement, totaling approximately $210 million in asserted value (plus unliquidated amounts).[4]  The Reorganized Debtors are hopeful that they will be able to resolve consensually a substantial number of the approximately 110 General Claims that remain subject to the General Claims Procedures.

11.     <u>Claims Litigated Outside of Bankruptcy Court</u>.  45 General Claims are being litigated in non-bankruptcy fora, pursuant to orders of the Court modifying the automatic stay or Plan Injunction.  Pursuant to the Third and Fourth Extension Orders, such Claims are deemed to have been objected to for purposes of the Plan's definition of "Allowed."  Plan, Section 1.7(f).  Further, the Reorganized Debtors anticipate stipulating to similar modifications of the Plan Injunction with respect to 3 additional General Claims.

12.     <u>Recategorized Claims</u>.  The Reorganized Debtors described in the Fourth Extension Motion 190 Recategorized Claims (as such term is defined in the Fourth Extension Motion, including 18 duplicate or amending Claims), which had been filed on Fire Victim Proof of Claim Forms and/or asserted fire-related damage and had been preliminarily identified as Fire Victim Claims, but which the Fire Victim Trustee and, independently, the Reorganized Debtors determined in March 2022 did not constitute Fire Victim Claims.  Of those 190 Recategorized Claims, all but 11 of the Claims have been expunged, reduced through settlement, reconciled and allowed, or otherwise resolved.

---

[3] The categories referenced in this sentence are not mutually exclusive; for example, the Reorganized Debtors may have sent an information request, initiated settlement offer exchanges, and noticed a mediation on the same General Claim.

[4] This figure does not include 64 Claims that began in the General Claims Procedures but were ultimately settled outside of the General Claims Procedures.

1

**B.    The Securities Claims**

2      13.    <u>Securities Claims Procedures</u>.   The Fourth Extension Motion discusses the extensive

3  work done by the Reorganized Debtors and their professionals to reconcile and continue resolving the

4  Securities Claims filed against the Reorganized Debtors.  The Securities Procedures Order authorized

5  the Reorganized Debtors to, among other things, request the trading information necessary to assess

6  the viability and calculate the potential amount of allowed Claims under the federal securities laws for

7  each Securities Claim.   As detailed in the Fourth Extension Motion, the Reorganized Debtors

8  expended considerable effort to collect trading information from claimants.

9      14.    <u>Omnibus Objections</u>. The Reorganized Debtors have filed 21 omnibus objections to

10  Securities Claims on various grounds.  As of the date of this filing, the Court has addressed all of those

11  omnibus objections, resulting in the disallowance and expungement of 2,066 Securities Claims,[5] of

12  which 969 had not asserted specific damage amounts on the face of the proofs of claim, and 1,097 had

13  asserted a total of $999.7 million in damages on the face of the proofs of claim.

14      <u>Settlement Offers</u>.  The Reorganized Debtors began making settlement offers earlier this year

15  pursuant to the Securities Claims Procedures, and they continued to do so during the Fourth

16  Extension Period until the process was paused after the Reorganized Debtors began discussions

17  regarding a more global resolution of the Securities Claims.  By that time, the Reorganized Debtors

18  had made offers to approximately 1,400 Securities Claimants.

19      15.    The settlement process under the Securities Claims Procedures continues to be effective

20  in resolving Securities Claims, and the response to the settlement offers was very positive.  At the time

21  of the filing of this Motion, more than 1,020 Securities claimants have agreed with the Reorganized

22  Debtors to settle their Securities Claims.  Moreover, approximately 90% of Securities Claimants that

23  have taken the time to review the offers on the Settlement Portal have ultimately agreed to settlement

24  terms with the Reorganized Debtors.

25

26

---

27  [5] Since the filing of the Second Securities Claims Status Report, the order was vacated for 31 claims
originally expunged through the Reorganized Debtors' Eleventh and Thirteenth Securities Claims
28  Omnibus Objections [Docket No. 12126].

16.     Although the Securities Claims Procedures process has been effective in resolving Securities Claims, thousands of Securities Claims remain unresolved.  As the Court is aware, earlier this year, the Reorganized Debtors began significant and extensive efforts to negotiate a global settlement, which would include settlements of certain litigation brought by the FVT against the D&O Defendants, certain disputes with PG&E's D&O insurers, and the securities claims brought in a separate litigation by certain securities plaintiffs and the Securities Claims.

17.     The Reorganized Debtors engaged in active negotiations in connection with a potential global settlement with the help of an experienced mediator.  Although the Reorganized Debtors have not yet reached a global securities settlement, the Reorganized Debtors filed, on September 29, 2022, a motion pursuant to Bankruptcy Rule 9019 to approve the D&O Insurance Settlement, which settlement is integral to, and the approval of which by the Court is a condition of, a separate settlement of the FVT litigation against the D&O Defendants [Docket No. 13015].  As set forth in that motion, which was granted by the Court on October 25, 2022 [Docket No. 13120], the Reorganized Debtors believe the approval of the D&O Insurance Settlement will also help facilitate a potential settlement of the Securities Claims by providing certainty regarding the availability of insurance proceeds to cover at least a meaningful portion of a potential settlement of those claims.  The Reorganized Debtors remain hopeful that the Securities Claims can be resolved without the need to litigate the claims on an individual-claim basis, whether through the current process described above or otherwise.  Alternatively, the Debtors will aggressively pursue further individual settlements pursuant to the Securities Claims Procedures.  The extension of the deadline for the Reorganized Debtors to object to Claims is thus necessary and appropriate to allow the Reorganized Debtors the opportunity to resolve the Securities Claims, either through further global settlement negotiations or pursuant to the Securities Claims Procedures.

///
///
///
///

1       I declare under penalty of perjury, as set forth in 28 U.S.C. § 1746, that the foregoing is true

2 and correct to the best of my knowledge, information, and belief.  Executed this twenty-fifth day of

3 October, 2022, in Dallas, Texas.

4                                    */s/ Robb McWilliams*

                                   Robb McWilliams

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28