BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Eric R. Goodman (admitted pro hac vice)
(EGoodman@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

*Attorneys for Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF CATHY YANNI IN RESPONSE TO THE COURT'S DIRECTIVES IN THE MEMORANDUM DECISION REGARDING WILLIAM B. ABRAMS' REQUESTS FOR DISCOVERY UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**<br><br>[Relates to Docket Numbers 12766, 13035 and 13105] |

I, Cathy Yanni, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I became Successor Trustee of the PG&E Fire Victim Trust ("**Trustee**") on July 1, 2022, pursuant to Section 5.2(d) of the Fire Victim Trust Agreement [Docket No. 8750-1]. I am duly authorized to make this Declaration (the "**Declaration**") on behalf of the PG&E Fire Victim Trust (the "**Trust**," and its beneficiaries, the "**Fire Victims**"). Unless otherwise stated in this Declaration, I have knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.

2. I am an attorney at law licensed to practice law in the state of California. Since 1998 I have been a neutral with JAMS, which specializes in the resolution of claims and legal disputes by providing efficient, cost-effective and impartial ways of overcoming barriers at any stage of conflict. I have extensive experience resolving mass tort claims, and have acted as a special master, mediator and administrator in multiple cases involving tens of thousands of claims, including claims for personal injury, property damage and business loss.

3. Prior to becoming Trustee, I served as the Court-appointed Claims Administrator for the Trust under the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] and, prior to that, pursuant to this Court's *Order Granting Application of The Official Committee of Tort Claimants Pursuant to 11 U.S.C. Sections 1103 and 363 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Cathy Yanni as Claims Administrator Nunc Pro Tunc to January 13, 2020* dated April 14, 2020 [Docket No. 6759]. Before serving as the Claims Administrator, I served as the Court-appointed Administrator of the Wildfire Assistance Program pursuant to this Court's *Supplemental Order (A) Approving Appointment of Administrator and Establishing Guidelines for the Wildfire Assistance Program and (B) Granting Related Relief* dated June 5, 2019 [Docket No. 2409].

4. I submit this Declaration in further support of the *Objection of the Fire Victim Trustee to Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct Oof JAMS Neutrals Given New Evidence* [Docket No. 13035] (the "**Objection**"), and in response to the

Court's directives in the *Memorandum Decision Regarding William B. Abrams' Requests for Discovery Under Federal Rule of Bankruptcy Procedure 2004* [Docket No. 13105] (the "**Memorandum Decision**").

5. I am generally knowledgeable and familiar with the day-to-day operations of the Trust, including all filings in these chapter 11 cases on behalf of the Trust during my tenure as Trustee.

**I.  ATTESTATION TO THE TRUTHFULNESS OF FACTS IN THE OBJECTION ATTRIBUTABLE TO DECLARANT**

6. In accordance with the directives of the Memorandum Decision, I hereby attest to the truthfulness of the facts attributed to me in the Objection.

**II.  DISCLOSURES DIRECTED BY MEMORANDUM DECISION**

WHAT PRECAUTIONS DID JUSTICE TROTTER TAKE, OR AFTER YOU BECAME TRUSTEE, THAT YOU TOOK IN THE PG&E CASE TO ENSURE THAT MONEY BELONGING TO THE FVT WAS NOT DIVERTED OR OTHERWISE MISUSED?

7. In accordance with the Trust Agreement, the Trust prepares special purpose financial statements which are subject to annual audit by BDO USA, LLP (the "**Auditor**"), a nationally recognized certified public accounting firm with a recognized practice in the area of settlement fund trusts such as the Trust. The Auditor issues an audit report with respect to the special purpose financial statements each year, consistent with the requirements of the Trust Agreement.

8. The Trust complies with all documentation requests made by the Auditor. The Trust makes available to the Auditor all Trust accounting records and supporting documents. In addition, as required by the Trust Agreement, the audited financial statements are filed with this Court on or before April 30 of the year following the close of the prior calendar year and are then posted on the Trust's public-facing website at www.firevictimtrust.com.

9. The Auditor's reports for the fiscal years ending December 31, 2020 and December 31, 2021 contain the following "clean opinion" language:

> *In our opinion, the accompanying special-purpose financial statements present fairly, in all material respects, the net claimants' equity of the Trust as of December 31, 2021 and 2020, and the results of its changes in net claimants' equity*

*and its cash flows for the year ended December 31, 2021, and for the period from July 1, 2020 (inception) through December 31, 2020, in accordance with the basis of accounting described in Note 2 to the special-purpose financial statements.*

10. The Auditor's report for the fiscal years ending December 31, 2020 and December 31, 2021 also contains the following standard language regarding the basis for the issuance of their opinion:

> *We conducted our audits in accordance with auditing standards generally accepted in the United States of America (GAAS). Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Special-Purpose Financial Statements section of our report. We are required to be independent of the Trust and to meet our other ethical responsibilities, in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.*

11. The Trust's financial statements are based on internal controls and accounting procedures that segregate accounting and cash disbursement duties related to Trust funds. All financial transactions of the Trust are subject to review by multiple parties in accordance with appropriate accounting practices which are designed to safeguard funds from diversion or misuse.

12. The Trust's cash and investment assets are held under an Institutional Cash Advisory Program at Morgan Stanley Wealth Management, a division of Morgan Stanley Smith Barney LLC, subject to written investment guidelines which are set forth in Exhibit 6 to the Trust Agreement. Morgan Stanley provides monthly reporting of cash transactions and cash and investments in U.S. Treasury bills and notes to the Trustee and to Jorstad, Incorporated (the "**CPA**").

13. Since its formation, the Trust has retained the CPA to perform budgeting, bookkeeping, and financial statement preparation for the Trust. Each year the CPA confers with the Trustee and appropriate Trust professionals to prepare a budget (the "**Budget**") for Trust administration expenses, which was done for (i) the Trust's first short period of July 1, 2020 through December 31, 2020, (ii) calendar year 2021 and (iii) calendar year 2022. These three Budgets were

submitted to the Trust Oversight Committee (the "**TOC**") for approval in accordance with the Trust Agreement; all Budgets were approved by the TOC.

14. In addition to preparing the Budgets, the CPA reviews all incoming invoices for accuracy and consistency with the Trust's engagement letters with service providers and vendors. The CPA obtains payment approvals from the Trustee and/or the Claims Administrator, as appropriate to the nature of the invoice.

15. The CPA and his staff then process all vendor invoices for ACH payment. The CPA does not have signatory authorization or access to funds in the Trust's accounts. Invoices that have been processed by the CPA for payment are then forwarded to Trustee and/or Claims Administrator for funds transfer authorization.

16. The CPA creates monthly financial statements of cash expenses of the month comparing actual expenses to budgeted expenses and these statements are provided to the Trustee monthly. Each actual invoice item is accounted for against an approved budgeted expense category. There are no "general expense" categories in the Trust's accounting records. That is, the Trust does not maintain accounting records in which any expense item could be "masked as general expenses."

17. A quarterly and year-to-date financial reporting package, including actual expenses to budgeted expense is presented to the TOC at the Trustee's quarterly meetings.

18. To date, the Trust's expenses have been consistently under budget on an overall basis.

19. The Trust is also required to report monthly financial information to PG&E, as grantor of the Trust under the terms of the Trust Agreement. (The Trust's income and expenses are reported on the Federal and California income tax returns of PG&E, consistent with the grantor trust tax rules.)

### HOW DOES THE FVT SAFEGUARD AGAINST IRREGULAR ACCOUNTING OR MISUSE OF FUNDS MASKED AS GENERAL EXPENSES?

20. As noted above at paragraphs 7 through 19, the Trust is subject to audit by BDO and has in place financial controls with respect to accounting, cash disbursements and financial reporting that are designed to safeguard against irregular accounting or misuse of funds.

21.     As noted above at paragraph 16, the Trust's accounting records do not contain a "general expense" category.  Rather, each actual invoice item is accounted for against an approved budgeted expense category.  Accordingly, the Trust does not maintain accounting records in which any expense item could be "masked as general expenses."

I declare under penalty of perjury, as set forth in 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 26th day of October, 2022, in San Francisco, California.

By: _____
Cathy Yanni, in her capacity as
Trustee of the PG&E Fire Victim Trust