1 | BROWN RUDNICK LLP
David J. Molton (SBN 262075)
2 | (DMolton@brownrudnick.com)
Eric R. Goodman (admitted pro hac vice)
3 | (EGoodman@brownrudnick.com)
Seven Times Square
4 | New York, New York 10036
Telephone: (212) 209-4800
5 | Facsimile: (212) 209-4801

6 | BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
7 | (JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
8 | Irvine, California 92612
Telephone: (949) 752-7100
9 | Facsimile: (949) 252-1514

10 | *Attorneys for the Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**FIRE VICTIM TRUSTEE'S OBJECTION TO LETTER REQUEST OF ALEXANDRA DOUGHERTY TO DEEM LATE PROOF OF CLAIM TIMELY FOR THE PURPOSE OF ADMINISTRATION BY THE FIRE VICTIM TRUST**<br><br>[Relates to Docket Number 13109]<br><br>Hearing Date: November 30, 2022<br>Hearing Time: 10:00 a.m.<br>Place: Hearing will be conducted telephonically or by video |

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust, by and through her undersigned counsel, hereby submits this Objection to the letter filed by Alexandra Dougherty on October 19, 2022 [Dkt. 13109] (the "**Dougherty Letter**"). In support of this Objection, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

The Fire Victim Trust understands that the Fires caused by PG&E in 2015, 2017 and 2108 made it hard for survivors to undertake many everyday tasks due displacement, trauma and other factors. The Trust has been extremely accommodating with respect to late claims and has made every effort to allow as many Fire Victims as possible to present their claims to the Trust for consideration. When motions have been filed requesting that late filed claims be deemed "timely" in order to be administered by the Trust, the Trustee and her predecessor have authorized more than one hundred stipulations with the Debtors to have the Court enter orders deeming such claims timely[1] and have chosen not to oppose hundreds of additional late claim motions filed prior to September 30, 2022. Nevertheless, the Trustee must balance a desire to ensure as many Fire Victims as possible are compensated injuries arising from the Fires against the fact that tens of thousands of Fire Victims – many of whom suffered horrific losses – were able to timely file proofs of claim in these cases. The Trustee also acknowledges the fundamental difference between claimants who file motions to have long-filed late proofs of claims deemed timely after receiving notice from the Trust that such action is necessary and those who file motions shortly after late proofs of claim are filed.

Of the more than 1,000 late claim motions filed since the December 31, 2019 extended bar date for non-governmental Fire Claimants, ***more than ninety percent*** have been filed in the last six months. One hundred fifty-five (155) of those late claim motions were filed in August alone, prompting the Trustee to state in several filings with this Court that she would have to discontinue the Trust's liberal non-opposition policy with respect to late claim motions filed after September

---

[1] The Trust has agreed to 130 separate stipulations, and, prior to the Trust's inception, the Official Committee of Tort Claimants agreed to 14 such stipulations.

1

30, 2022. The Trust's policy of non-opposition was not a guarantee that every late claim motion would be unopposed, but rather a preference for non-opposition before October 1 and for stricter review thereafter.

Unfortunately, this statement was interpreted by some as a guarantee that late claim motions filed prior to October 1, 2022 would not be opposed by the Trust,[2] prompting an astounding **672** late claim motions to be filed on September 30, 2022 alone. To put these numbers in perspective, in 2020, which included the months immediately after both the extended bar date and the effective date of the Trust (both events that could be expected to prompt the filing of late claim motions), the total number of late claim motions filed alleging Fire Victim Claims was **55**. In 2021, the total number was only **22**. The Trust had no reason to anticipate or prepare for the recent flood of new claims, most of which (like Ms. Dougherty's October 8, 2022 proof of claim) were only recently filed. All of these new, unanticipated claims must be reviewed, evaluated and determined before the Trust can make final payments to any of the tens of thousands of Fire Victims who have complied with all of the Trust deadlines and who must wait to learn how much of their approved claims can be paid.

## RELEVANT BACKGROUND

1. On January 29, 2019, PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Reorganized Debtors filed the Chapter 11 Cases to address the billions of dollars of damage and loss relating to the devastating 2015, 2017 and 2018 California fires and to provide compensation to wildfire victims.

/ / /

/ / /

---

[2] The Trust has been advised of several social media posts encouraging people to file late claims by stating that the Trust was paying "significant amounts" for certain claims that did not require any economic damages, such as a posting on nextdoor.com [https://nextdoor.com/city/santa-rosa--ca/] informing Tubbs evacuees that "the Fire Victims Trust is compensating claimants for emotional distress for having to evacuate from our homes during the 2017 fires."

2.      On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors. On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**TCC**").

3.      On March 14, 2019, the Debtors filed their schedules of assets and liabilities. By Order dated July 1, 2019, the Court established October 21, 2019 (the "**Bar Date**") as the last date to file proofs of claim in the Chapter 11 Cases [Docket No. 2806] (the "**Bar Date Order**"). By Order dated November 11, 2019, the Court extended the Bar Date to December 31, 2019 (the "**Extended Bar Date**") for unfiled, non-governmental Fire Claimants [Docket No. 4672] (the "**Extended Fire Victims Bar Date Order**")

4.      The Extended Fire Victims Bar Date Order was entered in response to a motion filed by the TCC. The TCC argued that the Bar Date "should be extended for the fire victims on the ground that evidence filed herewith establishes that a large number of victims are not filing claims in these chapter 11 cases because they are impaired from filing. Their impairments include emotional distress, suffering from trauma caused by the wildfire that destroyed everything they own, confusion caused by the trauma, a lack of awareness of the fire claims bar date, and a belief that a claimant needs to be insured to file a claim." [Docket No. 4293 at 5:2-8]. The Court has already considered and addressed the adequacy of notice to Fire Victims. As a result of the Court's careful consideration of this issue and the thoughtful manner in which the Debtors redoubled their efforts to reach additional Fire Victims, many thousands of claimants, some of whom suffered unfathomable losses, were able to file their claims in a timely manner.

## **OBJECTION**

5.      While courts have decided that there is no harm to *the debtor* in allowing late claims to be considered when a solvent debtor is paying all claims in full in a bankruptcy case, in this case Fire Victim Claims will likely not be paid in full because there is not enough money in the Trust to pay in full the Fire Victim Claims already channeled to the Trust. All Fire Victim Claims that have been determined by the Trust so far have taken into consideration the number of Claims that were left to be paid *as of the date those determinations were made*. If number of Claims channeled to the Trust continue to increase, the Trust may not be able to increase the pro rata percentage beyond

the current 45%, making it objectively detrimental to tens of thousands of claimants who filed their claims before December 31, 2019, and who submitted their Claims Questionnaires to the Trust by February 26, 2020, to continue to allow late claims into the Trust. Every late claim accepted by the Trust – even those that are ultimately deemed non-compensable – takes time and money from claimants who have met all deadlines and are waiting for their final payments.

6. As the Supreme Court has recognized, Bankruptcy Rule 9006(b)(1) permits court bankruptcy courts to accept proofs of claim filed after the bar date where appropriate in cases of excusable neglect due to inadvertence, mistake, carelessness or circumstances beyond the claimant's control. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). As the dissent in *Pioneer* recognized, however, "the statute does not *require* the court to forgive every omission caused by excusable neglect, but states that the court "*may*" grant relief "in its discretion." *Id.*, 507 U.S. at 399, 113 S. Ct. at 1500 (emphasis in original).

7. The threshold determination to be made under Bankruptcy Rule 9006(b)(1) is whether Ms. Dougherty's failure to file her proof of claim in this case resulted from excusable neglect. Notably, in *Pioneer*, counsel had filed the claimant's proof of claim a mere 20 days late and the Supreme Court found that the bar date notice in that case contained a "dramatic ambiguity." By contrast, the notice of the Extended Bar Date was the second notice provided to potential Fire Victims and it was carefully crafted to inform that group of the deadline to file any claims arising from a Fire, yet Ms. Dougherty did not file her claim until 1,012 days after the Extended Bar Date.

8. As this Court has recognized, claimants who file late proofs of claim bear "the burden of presenting facts demonstrating excusable neglect." *In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 89 (2004) (citing *Key Bar Invs., Inc. v. Cahn* (*In re Cahn*), 188 B.R. 627 (9th Cir. BAP 1995)).

9. The Dougherty Letter provides no explanation for why she filed her claim 1,012 days after the Extended Bar Date other than that she didn't know it was possible to obtain compensation from PG&E for her emotional distress claims until recently.

/ / /

4

10. In *Pioneer* the Supreme Court applied the majority of what was then the Ninth Circuit test for determining whether a failure to timely file a proof of claim was due to excusable neglect: (1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; and (4) whether the creditor acted in good faith. *Id.,* 507 U.S. at 395, 113 S. Ct. at 1498.

11. The first consideration in determining whether a late claim filing was the result of "excusable neglect" under *Pioneer* is the danger of prejudice to the debtor. This factor is irrelevant in the present case. While it is true that the relief requested in the Dougherty Letter will not prejudice the *Debtors*, which have already satisfied their funding obligations to the Trust under the Plan, it most certainly prejudices tens of thousands of claimants who timely filed proofs of claim in these cases.

12. The Supreme Court recognized that "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* The Dougherty Letter does not address the prejudice to Fire Victims who timely filed their proofs of claim, much less establish a lack of prejudice. Equity does not support the filing of a late claim simply because a claimant was unaware that her particular claims might be compensable, especially when thousands of other claimants with similar claims were able to file timely proofs of claim.

13. The second consideration under Pioneer is the length of delay and its potential impact on judicial proceedings. Ms. Dougherty filed her proof of claim 1,012 days after the Extended Bar Date – more than three years after others with similar claims filed proofs of claim. As noted above, the Trust has a limited fund from which to pay all Fire Victim Claims. As such, the Trust cannot finally determine how much it can pay on account of any Fire Victim Claim until it adjudicates every Fire Victim Claim. The continued addition of claims to the Fire Victim Trust prevents the Trust from allocating its limited funds and further extends the time that claimants who timely filed their Fire Victim Claims must wait for final payments, thus delaying the administration of Fire Victim Claims and prejudicing those who hold timely filed Fire Victim Claims with delay.

///

14. The addition of claims such as Ms. Dougherty's increases the number of claimants among which the limited funds of the Trust must be divided. Each late claim motion also must be reviewed and considered by the Trust, which incurs professional fees. Each late claim motion reduces the funds available to distribute to Fire Victims. The extreme length of Ms. Dougherty's delay weighs heavily against granting her request.

15. The third *Pioneer* factor, whether the delay was beyond the late claimant's control, also weighs against granting the relief requested in the Dougherty Letter. As explained above, Ms. Dougherty did not give any reason for her delay that could establish excusable neglect. Rather, the Dougherty Letter states that she was unaware that her claim could be compensable. This is not a sufficient excuse for neglecting to file a proof of claim by the deadline tens of thousands of other claimants were able to meet.

16. While the Trustee does not believe that Ms. Dougherty lacks the good faith that comprises the final consideration listed by the *Pioneer* court, it is clear from the Dougherty Letter that Ms. Dougherty was not prevented from filing a timely claim by any circumstances.

17. In addition, as is evidenced by overwhelming number of late claim motions filed within the last month alone, allowing Ms. Dougherty's claim to be deemed timely filed would encourage other latecomers to file similar motions. Such a result would be grossly inequitable to those holding timely filed Fire Victim Claims.

18. For the foregoing reasons, Ms. Dougherty fails to meet the standard for establishing "excusable neglect" for filing a proof of claim 1,012 days after the Extended Bar Date. The relief requested in the Dougherty Letter should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

The Trustee respectfully requests that this Court deny the relief requested in the Dougherty Letter and grant such other and further relief as may be just.

DATED: November 1, 2022

BROWN RUDNICK LLP

By: */s/ David J. Molton*
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

and

Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

*Attorneys for the Fire Victim Trustee*