ROLNICK KRAMER SADIGHI LLP
Lawrence M. Rolnick *(pro hac vice)*
lrolnick@rksllp.com
Marc B. Kramer *(pro hac vice)*
mkramer@rksllp.com
Michael J. Hampson *(pro hac vice)*
mhampson@rksllp.com
Richard A. Bodnar *(pro hac vice)*
rbodnar@rksllp.com
Frank T.M. Catalina (*pro hac vice*)
fcatalina@rksllp.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

ST. JAMES LAW, P.C.
Michael St. James, CSB No. 95653
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

*Attorneys for the Kingstown Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>Chapter 11<br><br>**THE KINGSTOWN CLAIMANTS' OBJECTION TO REORGANIZED DEBTORS' FIFTH EXTENSION MOTION**<br><br>**Hearing Information:**<br>Date:     November 15, 2022<br>Time:     10:00 a.m. (Pacific Time)<br>Place:    (Telephone or Video Only)<br>       United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102<br><br>Objection Deadline:<br>November 8, 2022, 4:00 p.m. (Pacific Time) |

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................. 5

    I.   Commencement of the Case and the First 7023 Motion ....................................... 5

    II.  The Court Orders Implementation of the Securities Claimant ADR Procedures ................ 6

    III. Securities Claimants Continue to Await Settlement or Mediation Offers ........................ 8

    IV. Reorganized Debtors Reveal that They Have Been Disregarding the ADR Procedures

         Order and Instead Trying to Broker a Deal with a Nonexistent Class as an End-Run

         Around Represented Individual Claimants .......................................................... 11

ARGUMENT ..................................................................................................... 12

    I.   Reorganized Debtors Have Not Demonstrated Good Cause for the Court to Grant the Fifth

         Extension ................................................................................................. 12

    II.  The Court Should Order Reorganized Debtors to Promptly Comply With the ADR

         Procedures Order ....................................................................................... 17

CONCLUSION ................................................................................................... 20

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Castanares v. Deutsche Lufthansa AG*,
Case No. CV 20-4261-MWF, 2021 WL 811455 (C.D. Cal. Jan. 26, 2021)............................ 19

*Davis v. Wakelee*,
156 U.S. 680 (1895)................................................................................... 17

*Dutra v. BFI Waste System of North America, Inc.*,
No. 12-cv-3338 NC, 2013 WL 2950662 (N.D. Cal. June 14, 2013) ........................ 19

*In re GGW Brands, LLC*,
2013 WL 6906375 (Bankr. C.D. Cal. Nov. 15, 2013) ...................................... 18

*Katchen v. Landy*,
382 U.S. 323 (1966)................................................................................... 18

*New Hampshire v. Maine*,
532 U.S. 742 (2001)................................................................................... 17

*Taggart v. Lorenzen*,
139 S. Ct. 1795 (2019)............................................................................... 18

**Rules**

Fed. R. Bankr. P. 9006............................................................................... 12

Fed. R. Civ. P. 23 ...................................................................................... 7

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

KingfishersLP, Kingstown Partners II L.P., and Kingstown Partners Master Ltd. (collectively, the "**Kingstown Claimants**") hereby submit this objection (the "**Objection**") to PG&E Corporation's and Pacific Gas and Electricity Company's (collectively, the "**Debtors**," or, as reorganized pursuant to the Plan, the "**Reorganized Debtors**") Motion For Entry of an Order Further Extending Deadline to the Reorganized Debtors to Object to Claims and For Related Relief (the "**Fifth Extension Motion**") [Dkt. No. 13122] as it pertains to the Securities Claims. The Kingstown Claimants further respectfully request that the Court compel Reorganized Debtors to finally make settlement offers, or offers to mediate, to them in conformity with this Court's Order Approving Securities ADR and Related Procedures For Resolving Subordinated Securities Claims (the "**ADR Procedures Order**") [Dkt. No. 10015] and the numerous representations and assurances Reorganized Debtors have previously given this Court. Contemporaneously herewith, the Kingstown Claimants submit the Declaration of Richard A. Bodnar, dated November 8, 2022 in support of this limited Objection ("**Bodnar Decl.**"). The Kingstown Claimants are represented by counsel who represent many other individual claimants – including pension funds, endowments, trusts, and retirement accounts – whose estimated losses total ***more than $2.5 billion***, many of whom are expected to file a joinder to this Objection.

## INTRODUCTION

Reorganized Debtors previously and repeatedly insisted that investors damaged by PG&E's securities fraud should not have their claims resolved through a securities class action led by the Public Employees Retirement Association of New Mexico ("**PERA**"), but instead should file their own proofs of claim and follow proposed individualized ADR procedures to resolve them. In reliance on that position, this Court twice denied PERA's request to certify a class and entered an order compelling the ADR procedures proposed by Reorganized Debtors. This Court's stated rationale for that order was its finding that investors had already waited "a very long time" to be compensated and that compliance with the ADR Procedures Order would "assur[e] some claimants will have an opportunity to recover some of their losses quickly and inexpensively." In reliance on Reorganized Debtors' position, and this Court's two orders denying class recognition, hundreds

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

(if not thousands) of claimants representing billions of dollars in claims retained their own counsel and filed individual proofs of claim. However, Reorganized Debtors inexplicably never came forward with offers – in some cases for more than two years – contrary to their repeated assurances that offers were imminent.

In what can only be described as a stunning and prejudicial reversal of position, Reorganized Debtors now take the position that they need a fifth extension of time – not to comply with this Court's ADR Procedures Order and to finally make offers to the hundreds of claimants who retained counsel and filed their own proofs of claim, but to strike a deal with ***the very class plaintiff it successfully convinced this Court could not and should not represent the securities claimants***. It is difficult to imagine a situation that cries out more for judicial estoppel. Reorganized Debtors previously told this Court – on two separate occasions – that PERA was conflicted, a class was not necessary, and that PERA should not be allowed to represent "[h]undreds if not thousands" of individual claimants who had already filed proofs of claim, retained their own counsel, and were entitled to exercise their own judgment to resolve their claims. Reorganized Debtors represented to the Court:

> This is not a punitive [sic] class action where you have absent shareholders. This is a situation very different, and it's a bankruptcy situation where people have actually filed proofs of claim. Hundreds if not thousands of them have filed these proofs of claim with their own counsel.

> And the idea that we are going to displace the judgment of individuals who have taken the time to file proofs of claim on their claims – they've said I have a claim, I was injured. ***The idea that we are going to displace their counsel and them and their judgment for PERA's judgment is just not appropriate***. Those people very well may have different views of their claims, the strengths. They may have different desires in terms of, you know, whether they want to settle now, whether they want to fight it out.

This Court relied on these representations and denied PERA's request to be appointed as a class representative in this Chapter 11 case. Instead, the Court entered the ADR Procedures Order sought by Reorganized Debtors. In doing so, the Court noted that injured investors had already suffered significant delays on the path to seeking reimbursement for their losses caused by PG&E, and that the ADR Procedures promised a just, speedy, and efficient resolution of their claims:

> [T]he acts complained of by some of the securities claimants happened almost five years ago. The bankruptcy was filed nearly two years ago. Thus, there are prospective claimants, both large and small, who didn't trade their claims and who have waited a very long time. The ADR procedures suggested by the reorganized debtors have the appeal of assuring some claimants will have an opportunity to recover some of their losses quickly and inexpensively.

The ADR Procedures implemented by the Court were designed to facilitate the prompt resolution Reorganized Debtors advocated. Under those procedures, Reorganized Debtors were permitted to file omnibus objections to dispose of invalid claims, to make settlement offers to individual claimants, and to require individual claimants to mediate.

Once the procedures were implemented, however, Reorganized Debtors disregarded both the letter and spirit of the ADR Procedures Order. Although hundreds of claimants were represented by counsel, it appears Reorganized Debtors extended settlement offers primarily (if not solely) to unrepresented claimants. For those claimants like the Kingstown Claimants, who are represented by counsel, Reorganized Debtors refused to extend settlement offers or engage in negotiations, despite those claimants' desire to do so and frequent communications to Reorganized Debtors requesting that they comply with this Court's ADR procedures.

The reason for Reorganized Debtors' manufactured and unexplained delay is now apparent. Rather than comply with the Court-ordered ADR procedures, Reorganized Debtors have used the time to pursue unauthorized settlement discussions with the disapproved class representative, PERA. And rather than effectuate the prompt and efficient resolution of already filed claims promised by the ADR procedures, the new class resolution would create years of additional delay because it would entail lengthy additional negotiations, class action notice procedures, class certification, new claims submissions, and an ensuing claims administration process.

This Court should not countenance such bait-and-switch tactics. Reorganized Debtors' unauthorized abandonment of the Court-ordered ADR procedures in pursuit of a disapproved class settlement with PERA will cause significant prejudice to individual claimants. "Hundreds if not thousands" of individual claimants have retained counsel and expended substantial time and

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1
2
3
4
5
6

resources complying with the ADR Procedures Order. They have opposed omnibus objections filed by Debtors and complied with Reorganized Debtors' arduous and sometimes painstaking additional information requests. If the Court were now to grant Reorganized Debtors additional time – not to comply with the Court-ordered ADR procedures but to instead negotiate with PERA to obtain a class-wide resolution of the securities claims – these individual claimants will be further prejudiced.

7
8
9
10
11
12
13
14
15

There is no reason to believe – as Reorganized Debtors argued – that PERA can do a better job negotiating the claims of class members than they can do themselves. Accordingly, there are serious reasons to doubt PERA's adequacy to act as a class representative for proofs of claim that have already been filed. However, even assuming PERA can negotiate better than the claimants themselves, notice of the settlement will have to be published and the settlement will have to be approved, first by this Court and then by the District Court, before the claims administration process can even begin. Thus, even though the Kingstown Claimants filed proofs of claim in 2020, they will have to start that process all over again sometime in 2023 (or later) pursuant to a class settlement claims administration process, which itself could take several years.

16
17
18
19
20
21
22

Moreover, if such a prolonged and extended new procedure is imposed, and the claimants believe the settlement negotiated for them by PERA is inadequate, they will be required to spend more time and money to opt out of the class before they can pursue resolution of their individual claims. The amount of time between now and any opt-out date far in the future could be put to better use simply resolving the filed claims. Indeed, counsel for Kingstown Claimants have been retained by over six hundred claimants who, similar to the Kingstown Claimants, are waiting to individually negotiate their billions of dollars of claims under existing procedures.

23
24
25
26
27

The Court should put an end to Reorganized Debtors' prejudicial new tactic and deny the Fifth Extension Motion – at least insofar as Reorganized Debtors seek to use the extension to pursue its ill-conceived "class negotiation" with PERA. Instead, the Court should order Reorganized Debtors to promptly make individual settlement or mediation offers in compliance with this Court's ADR Procedures Order.

28

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

## BACKGROUND

### I.    Commencement of the Case and the First 7023 Motion

Debtors commenced these Chapter 11 cases on January 29, 2019, seeking relief pursuant to Chapter 11 of the Bankruptcy Code [Dkt. No. 1].  On July 1, 2019, the Court entered an Order [Dkt. No. 2806] (the "**Bar Date Order**") setting a bar date of October 21, 2019 (the "**Bar Date**") for filing proofs of claim for all prepetition claims.  On December 9, 2019, PERA and others filed a Motion to Apply Bankruptcy Rule 7023 to Class Proofs of Claim [Dkt. No. 5042] (the "**First 7023 Motion**").  PERA and others had previously commenced class action lawsuits, which were consolidated (the "**Consolidated Class Action**"), asserting claims against Debtors under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "**Exchange Act**") on behalf of putative classes of plaintiffs") on behalf of a putative class of securities claimants consisting of "all persons and entities that purchased or otherwise acquired PG&E publicly traded securities during the period from April 29, 2015 through June 8, 2018, inclusive," (the "**Putative Class**"). (Bodnar Decl., Ex. 7.)

The First 7023 Motion sought permission to file a class proof of claim on behalf of the Putative Class, among other reasons, because securities claimants who fit within the definition of the Putative Class purportedly failed to receive proper notice of the Bar Date [Dkt. No. 5042 § I.C.2].  In its February 24, 2020, memorandum decision, this Court found that, while Debtors had failed to provide the required notice, given an impending plan confirmation deadline, "granting the [First 7023 Motion] may result in more chaos than certainty," [Dkt. No. 5887 at 4] and on February 27, 2020, it denied the motion [Dkt. No. 5943].  To remedy the lack of notice, the Court set April 16, 2020 (the "**Extended Securities Bar Date**"), as the deadline for securities claimants to file individual proofs of claim, subject to an approved form (the "**Rescission or Damage Proof of Claim Form**").  The Recission or Damage Proof of Claim Form authorized investors that "purchased or acquired [PG&E]'s publicly traded debt and/or equity securities . . . from April 29, 2015 through November 15, 2018" to submit an individualized claim.  (*See, e.g.*, Bodnar Decl., Exs. 1-3 at 1.)

On April 9, 2020, in reliance upon and in accordance with the Court's Orders, and prior to the Extended Securities Bar Date, each of the Kingstown Claimants filed a Recission or Damage Proof of Claim Form.  (*Id.*, Exs. 1-3.)

## II.    The Court Orders Implementation of the Securities Claimant ADR Procedures

On June 20, 2020, the Court entered an Order confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 (as amended and/or modified, the "**Plan**") [Dkt. Nos. 8048, 8053].  The Plan designated three classes of subordinated securities claims: Class 9A – HoldCo Subordinated Debt Claims; Class 10A-II – HoldCo Recission or Damages Claims; and Class 10B – Utility Subordinated Debt Claims (collectively, the "**Securities Claims**")[1] [Dkt. No. 8048 §§ 4.12, 4.14, 4.32].  Pursuant to the Plan, Class 9A and Class 10B Securities Claims were unimpaired as claimants in each class would receive cash in an amount equal to their allowed claims.  (*Id.* §§ 4.12, 4.32.)  Equity-based Securities Claims (Class 10A-II) were impaired, and those claimants would receive shares of New HoldCo common stock according to a formula contained in the Plan based on the amount of a claimant's allowed claim. (*Id.* §§ 1.109, 4.14.)

On September 1, 2020, Reorganized Debtors filed a Motion to Approve Securities ADR and Related Procedures For Resolving Subordinated Securities Claims (the "**ADR Procedures Motion**") [Dkt. No. 8964].  Among other things, Reorganized Debtors' ADR Procedures Motion sought entry of an order that would establish efficient procedures for resolving the Securities Claims by requiring Securities Claimants to submit information regarding their securities trading (the "**Trading Data**") to Reorganized Debtors, who would then exchange settlement offers with the claimants and/or enter into mandatory non-binding mediation with them.  (*Id.* at 2.) Reorganized Debtors represented to the Court in the ADR Procedures Motion that the "the Securities ADR Procedures are designed to *facilitate prompt settlements with individual claimants* as opposed to resolution of these claims on the merits."  (*Id.* at 3-4 (emphasis added).)

[1] Those parties with Securities Claims are referred to herein as "**Securities Claimants**."

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

PERA opposed implementation of these procedures as an alternative to a class vehicle. On September 28, 2020, PERA again sought to introduce a class action procedure to resolve the Securities Claims, filing a Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class (the "**Second 7023 Motion**") [Dkt. No. 9152]. PERA argued that a class mechanism was "the only way that final resolution of all claims can be negotiated on a fair and collective basis," and sough to certify a mandatory class under either FRCP 23(b)(1)(A) or 23(b)(1)(B). (*Id.* at 2, § II.B.)

Reorganized Debtors vigorously opposed PERA's motion. On November 18, 2020, the Court held a hearing to consider both the ADR Procedures Motion and the Second 7023 Motion [Dkt. No. 9582]. At that hearing, Reorganized Debtors stridently advocated that the proposed ADR Procedures were the most efficient means for promptly and expeditiously resolving the Securities Claims. Reorganized Debtors explained that they would seek trading information from the Securities Claimants "promptly after approval, and we should be able to have that information within forty-five to sixty days[.]" (Bodnar Decl., Ex. 8 at 6:20-21.) Reorganized Debtors told this Court: "within literally a couple of months, the debtors can have ***settlement offers out to most claimants***." (*Id.* at 7:3-4 (emphasis added); *see also id.* at 9:7-9 ("And so Your Honor, literally within a couple of months, we expect the settlement process to begin, and to be fruitful.").)

Reorganized Debtors represented to this Court that there was no need for a class procedure given the number of individual proofs of claim that had been filed and the time that Securities Claimants had already taken to retain counsel and file their claims:

> This is not a punitive [sic] class action where you have absent shareholders. This is a situation very different, and it's a bankruptcy situation where people have actually filed proofs of claim. Hundreds if not thousands of them have filed these proofs of claim with their own counsel.
>
> And the idea that we are going to displace the judgment of individuals who have taken the time to file proofs of claim on their claims – they've said I have a claim, I was injured. ***The idea that we are going to displace their counsel and them and their judgment for PERA's judgment is just not appropriate***. Those people very well may have different views of their claims, the strengths. They may have different desires in terms of, you know, whether they want to settle now, whether they want to fight it out.

(*Id.* at 44:9-23 (emphasis added).)

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

On December 4, 2020, the Court issued an oral ruling granting the ADR Procedures Motion and denying the Second 7023 Motion [Dkt. No. 9752]. In approving the ADR Procedures, the Court expressly pointed to the anticipated promptness and efficiency of the ADR Procedures in resolving claims as a basis for its decision. As the Court noted:

> [T]he acts complained of by some of the securities claimants happened almost five years ago. The bankruptcy was filed nearly two years ago. Thus, there are prospective claimants, both large and small, who didn't trade their claims and who have waited a very long time. The ADR procedures suggested by the reorganized debtors have the appeal of assuring some claimants will have an opportunity to recover some of their losses quickly and inexpensively.

(Bodnar Decl., Ex. 9 at 6:21-7:4.) The Court further "reject[ed] [PERA]'s arguments that somehow the reorganized debtors will pickoff unrepresentative [sic] parties, like shooting fish in a barrel." (*Id.* at 7:11-13.)

On January 25, 2021, the Court entered the ADR Procedures Order [Dkt. No. 10015]. The ADR Procedures Order incorporated, as attachments, (1) Securities Claim Information Procedures (the "**Claim Information Procedures**") regarding the submission of trading data to the Reorganized Debtors by Securities Claimants, and (2) Securities ADR Procedures (the "**Securities Claims Procedures**") "for facilitating the potential settlement of Subordinated Securities Claims, including, without limitation, (i) procedures to allow the Reorganized Debtors and the Subordinated Securities Claimants to exchange settlement offers, and (ii) procedures for both standard and abbreviated mandatory non-binding mediation of Subordinated Securities Claims …" [*Id.* at 1]. The Claim Information Procedures note that "[f]ollowing the timely return of a Trading Information Request Form," the Reorganized Debtors could "(i) make a settlement offer to a Subordinated Securities Claimant; (ii) designate the Subordinated Securities Claim(s) for mandatory mediation; or (iii) both" [Dkt. No. 10015-1 at 4].

### III. Securities Claimants Continue to Await Settlement or Mediation Offers

Reorganized Debtors did not send the Kingstown Claimants a settlement offer "within a couple of months," as they had represented to the Court they would. Eventually, on September 30, 2021, Reorganized Debtors filed a Status Report Regarding Securities Claims and Resolution

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Process (the "**September 2021 Status Report**"), to purportedly update the Court as to the status of the process of attempting to settle the Securities Claims as contemplated by the ADR Procedures Order [Dkt. No. 11362]. The September 2021 Status Report reported that "[t]he Reorganized Debtors have made significant progress through diligent efforts to obtain the trading information required to address the Securities Claims . . . ." It further reported that "[d]epending on the timing of obtaining the outstanding trading information, the Reorganized Debtors currently expect to be in a position *by year end* [i.e., by the end of 2021] to begin making settlement offers to certain Securities Claimants, and thereafter, if necessary, instituting mediation procedures to resolve Securities Claims consistent with the Securities Claims Procedures." (*Id.* at 5-6 (emphasis added).)

After more than a month passed with no contact from Reorganized Debtors, on November 10, 2021, counsel for the Kingstown Claimants ("**Claimants' Counsel**") sent a letter to counsel for Reorganized Debtors ("**Debtors' Counsel**"), informing them that Claimants' Counsel had been retained by the Kingstown Claimants and numerous other claimants set forth in an attachment to the letter, on an individual basis, "to pursue their individual Securities Claims." (Bodnar Decl., Ex. 4.) The letter informed Debtors' Counsel that the claimants represented by Claimants' Counsel asserted claims for damages "substantially in excess of $1 billion" and requested that Debtors' Counsel direct any communications relating to these claims to Claimants' Counsel. (*Id.*)

On December 28, 2021, Claimants' Counsel spoke with Debtors' Counsel regarding the claims of Securities Claimants represented by Claimants' Counsel, including the Kingstown Claimants. (*Id.*, ¶ 9, Ex. 6.) During that conversation, Debtors' Counsel told Claimants' Counsel that it was desirous of "opening a line of communication" with Claimants' Counsel, and indicated that initial settlement offers to Securities Claimants would commence in the "near term." (*Id.*, Ex. 6.)

After almost two months, with no offers to resolve or mediate claims from Reorganized Debtors, Claimants' Counsel sent a follow-up letter to Debtors' Counsel on February 14, 2022. The letter supplemented the list of Securities Claimants represented by Claimants' Counsel and

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

informed Debtors' Counsel that Claimants' Counsel now represented individual Securities Claimants with claims for damages in excess of $2 billion. (*Id.*, Ex. 5.) Claimant's Counsel expressed its eagerness to engage in the ADR procedures authorized by the Court.

On February 28, 2022, Claimants' Counsel again emailed Debtors' Counsel, this time recounting their December 28, 2021 conversation and requesting that Debtors' Counsel "please advise as to the status and the cause for the hold-up in presenting PG&E's initial offers." (*Id.*, Ex. 6.) On March 8, 2022, Debtors' Counsel responded to Claimants' Counsel's email, representing that Debtors had made settlement offers "to more than one thousand claimants" and had "agree[d] to many hundreds of settlements." (*Id.*) Debtors' Counsel further represented that Debtors were "not able to act with respect to the thousands of [Securities Claimants] simultaneously." (*Id.*) Debtors' Counsel also attached to the email an exhibit purporting to identify deficiencies in Trading Data submitted by certain Securities Claimants represented by Claimants' Counsel and wrote "it would be helpful in moving the process forward if you could work with your clients to provide all necessary information . . . ." (*Id.*) The list of purported deficiencies did not include the Kingstown Claimants, whose claims and relevant Trading Data were fully submitted by April 9, 2020. (*Id.* ¶ 13.) Since receipt of this email, and in reliance upon it, Claimants' Counsel has diligently worked to cure purported deficiencies, including by collecting and submitting virtually all of the of the Trading Data requested by Reorganized Debtors. (*Id.* ¶ 14.)

On April 5, 2022, Reorganized Debtors filed a Second Status Report Regarding Securities Claims Reconciliation and Resolution Process (the "**April 2022 Status Report**"), to purportedly update the Court as to the status of the process of attempts to settle the Securities Claims as contemplated by the Securities Claims Procedures Order [Dkt. No. 12114]. The April 2022 Status Report reported generally that Reorganized Debtors continued to collect Trading Data from the Securities Claimants to correct for deficiencies and that "[t]he Reorganized Debtors began making settlement offers earlier this year pursuant to the Securities Claims Procedures." (*Id.* at 4.) Without revealing the amount of the claims involved, Reorganized Debtors also reported having "made offers to approximately 1,400 Securities Claimants" and that "[m]ore than 900 claimants

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

have agreed with the Reorganized Debtors to settle their claims." (*Id.* at 4.) The April 2022 Status Report represented to the Court that "[t]he Reorganized Debtors also intend to continue making settlement offers …." (*Id.*)

On April 26, 2022, Reorganized Debtors filed their fourth motion to extend the deadline to object to claims (the "**Fourth Extension Motion**") [Dkt. No. 12229], having previously successfully moved for an extension of the claims objection deadline on October 27, 2020 (the "**Initial Extension Motion**") [Dkt. No. 9355], March 17, 2021 (the "**Second Extension Motion**") [Dkt. No. 10408], and October 19, 2021 (the "**Third Extension Motion**") [Dkt. No. 11450]. The Fourth Extension Motion reported that the Court had addressed twenty omnibus objections to the Securities Claims filed by Reorganized Debtors, disallowing or expunging 1,754 Securities Claims with a face damages amount of $944 million [Dkt. No. 12229 at 10]. Again without revealing the amount of the claims involved, the Fourth Extension Motion reported that Reorganized Debtors had made more than 1,400 settlement offers resulting in more than 950 settlements with Securities Claimants. (*Id.* at 11.) The Fourth Extension Motion, which sought an extension of 180 days for the claims objection deadline, further represented to the Court that "*[i]n the coming months, the Reorganized Debtors* intend to continue working diligently to collect the necessary trading information . . . [and] *also intend to continue making settlement offers* . . . ." (*Id.* (emphasis added).) In the ensuing six months, Reorganized Debtors did not make an offer to resolve or mediate to either the Kingstown Claimants or any other claimant represented by Claimants' Counsel.

## IV. Reorganized Debtors Reveal that They Have Been Disregarding the ADR Procedures Order and Instead Trying to Broker a Deal with a Nonexistent Class as an End-Run Around Represented Individual Claimants

On October 25, 2022, Reorganized Debtors filed the Fifth Extension Motion, this time seeking a 270-day extension of the claims objection deadline [Dkt. No 13122 at 1-2]. Reorganized Debtors revealed for the first time in this filing that, contrary to their representations in the Fourth Extension Motion, after the Court granted that motion, the Court-ordered ADR Procedures "w[ere] paused after the Reorganized Debtors began discussions regarding a more global resolution of the

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Securities Claims." (*Id.* at 10.) The "more global resolution" is apparently an attempted class settlement of the filed proofs of claim with the disapproved class representative, PERA. Contrary to their prior representations to this Court, Reorganized Debtors reported that they have been attempting "to negotiate a global settlement" and are thus seeking an extraordinary 270-day extension "to allow the Reorganized Debtors the opportunity to resolve the Securities Claims," "hopeful that the Securities Claims can be resolved without the need to litigate the claims on an individual-claim basis . . . ." (*Id.* at 10-11.)

In the more than two-and-one-half years since the Kingstown Claimants submitted their proofs of claim and Trading Data, Reorganized Debtors have not made one settlement offer to, or invitation to mediate with, the Kingstown Claimants. Nor have they contacted Claimants' Counsel in any capacity about engaging in the ADR Procedures with respect to the Kingstown Claims. (Bodnar Decl. ¶ 15.) The Kingstown Claimants are hardly alone in this regard. None of the Securities Claimants represented by Claimants' Counsel have received settlement offers or invitations to mediate. (*Id.* ¶ 16.) No fewer than 279 of these Securities Claimants fully submitted all requested Trading Data more than one year ago. (*Id.* ¶ 14.)

## **ARGUMENT**

### **I.    Reorganized Debtors Have Not Demonstrated Good Cause for the Court to Grant the Fifth Extension**

Reorganized Debtors have failed to demonstrate good cause for the Court to grant the requested 270-day Fifth Extension because they have (i) failed to reasonably and diligently comply with this Court's ADR Procedures Order; (ii) unilaterally "paused" compliance with that order, thereby delaying the prompt and efficient resolution of the Securities Claims; (iii) repeatedly assured this Court that they were in compliance with its ADR Procedures Order without disclosing they had secretly decided to abandon it; and (iv) used the time provided by previous extensions to pursue a class-action procedure that Reorganized Debtors themselves opposed and of which this Court repeatedly disapproved.

Federal Rule of Bankruptcy Procedure 9006(b)(1), and the Plan, allow the Court to extend the deadline to object to claims "for cause shown." Rather than demonstrating cause, however,

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

the Fifth Extension Motion reveals that Reorganized Debtors find themselves in a predicament arising from their own inequitable conduct. Their unilateral decision to "pause" the ADR Procedures – with no notice and without obtaining permission from this Court – and to seek a "global resolution" with PERA contrary to their repeated representations to the Court, have resulted in an enormous loss of time and promises further substantial delay. Over the past two years, Reorganized Debtors could easily have either resolved the Kingstown Claimants' claims or mediated them. Instead, Reorganized Debtors ask the Kingstown Claimants and their counsel to wait an additional 270 days while they try to negotiate with PERA, followed by whatever time is thereafter required to provide notice of a class settlement, seek approval, and then ultimately opt out. This is the very antithesis of the speedy and efficient resolution process Reorganized Debtors proposed, and this Court adopted, in denying the First and Second 7023 Motions and entering the ADR Procedures Order. This unwarranted expenditure of more time and money will prejudice the thousands of Securities Claimants who have relied upon implementation of the ADR Procedures by retaining counsel, filing claims, opposing omnibus objections, and submitting Trading Data. In these circumstances, Reorganized Debtors have failed to establish a legally adequate ground for the requested relief. This Court should not grant Reorganized Debtors another nine months to pursue a class procedure that this Court twice disapproved at the behest of Reorganized Debtors.

The Kingstown Claimants' predicament demonstrates how Reorganized Debtors have failed to effectively use the nearly two years since the entry of the ADR Procedures Order to resolve or mediate Securities Claims. The three Kingstown Claimants submitted proofs of claim and Trading Data supporting their claims against Reorganized Debtors for aggregate damages of more than $19 million more than thirty months ago, on April 9, 2020. (Bodnar Decl. ¶ 2; Exs. 1-3.) Consistent with the representations Reorganized Debtors made to the Court in seeking entry of the ADR Procedures Order, nothing prevented Reorganized Debtors from immediately making settlement offers, or mediation offers, to the Kingstown Claimants within "a couple of months," as Reorganized Debtors had all necessary Trading Data from the Kingstown Claimants. (*See* Bodnar Decl., Ex. 8 at 7:3-4 ("within literally a couple of months, the debtors can have settlement

offers out **to most claimants**.") (emphasis added); *see also id.* at 9:7-9 ("And so Your Honor, literally within a couple of months, we expect the settlement process to begin, and to be fruitful.").) Nonetheless, and without explanation or excuse, Reorganized Debtors have taken no action with regard to the Kingstown Claimants' claims, including nearly one year after Claimants' Counsel contacted Debtors' Counsel in an attempt to move the ADR Procedures along for the Securities Claimants represented by Claimants' Counsel. (*Id.* ¶ 8.)

Making matters worse, the Kingstown Claimants' experience appears to be universal among those Securities Claimants who have retained counsel – as many have done in reliance upon the implementation of the ADR Procedures at the request of Reorganized Debtors. Reorganized Debtors have not made a settlement or mediation offer to *any* of the approximately 698 Securities Claimants – representing more than $2.5 billion in aggregate damages – represented by Claimants' Counsel. (*Id.* ¶¶ 7, 16.) Numerous other Securities Claimants with significant claims, and who are represented by counsel, have, like the Kingstown Claimants, not received offers from Reorganized Debtors. (*Id.* ¶¶ 17-18.)

Reorganized Debtors have improperly elected not to engage with individual claimants represented by counsel and instead reengage with "class" counsel. Negotiating solely with PERA – and refusing to negotiate with Claimants' Counsel – directly contradicts the arguments made by Debtors' Counsel to this Court in favor of implementing the ADR Procedures:

> This is not a punitive [sic] class action where you have absent shareholders. This is a situation very different, and it's a bankruptcy situation where people have actually filed proofs of claim. Hundreds if not thousands of them have filed these proofs of claim with their own counsel.
>
> And the idea that we are going to displace the judgment of individuals who have taken the time to file proofs of claim on their claims – they've said I have a claim, I was injured. ***The idea that we are going to displace their counsel and them and their judgment for PERA's judgment is just not appropriate.*** Those people very well may have different views of their claims, the strengths. They may have different desires in terms of, you know, whether they want to settle now, whether they want to fight it out.

(*Id.*, Ex. 8 at 44:9-23 (emphasis added).) Reorganized Debtors' unliteral decision to negotiate

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

settlement exclusively with PERA is, thus, nothing short of bizarre.

Indeed, Reorganized Debtors subsequently told this Court that it was not only inappropriate to have PERA act on behalf of the Securities Claims, but that it had disabling conflicts of interest justifying this Court's repeated refusal to allow them to attempt to do so:

> ***This Court has now twice held that PERA is not a class representative for claimants who have filed securities claims in these Chapter 11 Cases.*** Moreover, the Court has found that securities claimants are more than able to address their own claims in the Chapter 11 cases. ***The Court also recognized the unresolved issues surrounding PERA's numerous conflicts in attempting to represent Claimants in these Chapter 11 Cases*** at the same time it seeks to act as class counsel in a separate District Court Action

[Dkt. No. 10668 at 9] (internal citations omitted) (emphasis added).

It now appears clear that for much of the time since the Court entered the ADR Procedures Order, Reorganized Debtors have intentionally delayed resolution of Securities Claims for those represented by counsel while picking off the "low hanging fruit" of claimants with smaller claims who, it appears, were largely not represented. Since mid-November of last year, Reorganized Debtors have filed only three omnibus objections, each simply moving to disallow duplicate claims [Dkt. Nos. 11743, 11930, 12149]. While Reorganized Debtors represent they have made more than 1,400 settlement offers, resulting in "more than 1,020" settlements, it appears these were likely unrepresented parties with *de minimis* damages claims.[2] Thus, although the Court "reject[ed] the opposition's arguments that somehow the reorganized debtors will pickoff unrepresentative [sic] parties, like shooting fish in a barrel," it appears that is precisely how Reorganized Debtors have spent their time since the entry of the ADR Procedures Order. (Bodnar Decl., Ex. 9 at 7:11-13.) Reorganized Debtors now choose to negotiate with PERA precisely because it can purport to represent those who have already retained counsel of their choice and

---

[2] While Reorganized Debtors claim to have agreed to settlements with "more than 1,020 Securities [C]laimants," they have chosen not to disclose the aggregate value of the claims they have settled [Dkt. No. 13122 at 10]. Based on a review of publicly available information obtained from the claims register, Claimants' Counsel estimates Reorganized Debtors have settled Securities Claims with an aggregate face value of only approximately $5 million. (Bodnar Decl. ¶ 19.) Reorganized Debtors should disclose to the Court the total value of claims it has settled so that the Court can better understand how and to what extent Reorganized Debtors have implemented the ADR Procedures prior to asking for this fifth extension.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

filed their own claims. It is difficult to fathom what good can be achieved through a "global" resolution with PERA when the remaining Securities Claimants are largely represented by counsel and counsel stands ready to resolve the claims.

Further, Securities Claimants only just learned that, despite Reorganized Debtors' representations in the Fourth Extension Motion that they would continue making settlement offers in accordance with the ADR Procedures, Reorganized Debtors unilaterally "paused" that process and have made ***no settlement offers at all*** in the approximately six months since they filed the Fourth Extension Motion [*see* Dkt. No. 12229 at 10]. Instead, Reorganized Debtors chose to spend the last six months negotiating with PERA, a party they previously argued is conflicted and "is not a class representative for claimants who have filed securities claims in the Chapter 11 Cases" [Dkt. No. 10668 at 9]. Now they seek another nine months to pursue the same ill-conceived strategy. The Fifth Extension Motion contains no discussion as to why the ADR Procedures are no longer a prompt and efficient mechanism for resolving claims, why it was appropriate to unilaterally halt the ADR Procedures to negotiate solely with PERA after representing to the Court it would be inappropriate to do so, or why Reorganized Debtors could not make settlement offers to any of the thousands of Securities Claimants who have retained counsel, complied with the ADR Procedures, and repeatedly reached out to Reorganized Debtors' counsel to resolve their claims.

In short, after successfully and repeatedly convincing this Court to reject the class mechanism to resolve Securities Claims and to instead institute the ADR Procedures, Reorganized Debtors seek a nine-month extension of the claims objection deadline to pursue an end-run around those procedures following nearly two years of delay. The goal will be to reach a class-action settlement, which will itself require even more delay to notice, approve, and implement.[3] This

---

[3] The United States District Court hearing the Consolidated Class Action, in entering a stay in that case, agreed that the most efficient course would be to resolve the Securities Claims in the Bankruptcy first. Judge Davila noted that staying the Consolidated Class Action would "promote judicial efficiency and economy," and that "Lead Plaintiff and the non-debtor Defendants expect that the ongoing bankruptcy claim process will affect, among other things, the size and potential damage claims of the putative classes in this action." (Bodnar Decl., Ex. 10 at 2.) The Court ordered that "[t]he parties may file a motion to reopen the case *upon resolution of the bankruptcy proceedings*, if appropriate." (*Id.*, Ex. 11 at 2 (emphasis added).)

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

conduct flies in the face of the representations Reorganized Debtors have made to this Court and the Securities Claimants, and is inequitable to the Securities Claimants who have relied on those representations, at great expense, for nearly three years. Reorganized Debtors should use any extension granted by the Court to make settlement offers to the Kingstown Claimants and the thousands of other Securities Claimants who long-ago submitted their Trading Data and have been awaiting offers or invitations to mediate. There is little doubt the vast majority of Securities Claims could be promptly resolved if Reorganized Debtors simply complied with the ADR Procedures Order. Accordingly, the Court should deny the Fifth Extension Motion and direct Reorganized Debtors instead to timely comply with the ADR Procedures Order.

## II. The Court Should Order Reorganized Debtors to Promptly Comply With the ADR Procedures Order

In the nearly two years that have passed since this Court entered the ADR Procedures Order to facilitate prompt resolution of Securities Claims, Reorganized Debtors have resolved only small claims presumably asserted by unrepresented parties, and have paused all further settlement offers to negotiate exclusively with PERA. The resulting situation is contrary to all of Reorganized Debtors' prior representations to the Court and assurances to the Kingstown Claimants, along with thousands of other Securities Claimants, that have been waiting for Reorganized Debtors to comply with the ADR Procedures Order that they convinced the Court to adopt. Two years after Reorganized Debtors moved to put the ADR Procedures in place, it is time for the Court to order Reorganized Debtors to comply with those procedures.

Reorganized Debtors should be judicially estopped from abandoning the ADR Procedures to pursue a "global" resolution with PERA. "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). As discussed above, Reorganized Debtors repeatedly took the position before this Court that class action procedures were inappropriate, and that the most efficient way forward was to resolve individual proofs of

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

claim. In reliance on that position, this Court disapproved the class action procedure and extended the bar date for filing proofs of claim. Hundreds, if not thousands, of Securities Claimants then filed proofs of claim and retained counsel of their choice. Reorganized Debtors took the position that the ADR Procedures should be implemented rather than a class claims resolution process. Reorganized Debtors' sudden reversal of their position should be rejected.

In addition, Reorganized Debtors have consistently argued, and the Court has consistently recognized, that the ADR Procedures (if followed) best fulfill the goals of prompt and efficient resolution of the Securities Claims. It is well-settled that "'a chief purpose of the bankruptcy laws' [is] 'to secure a prompt and effectual' resolution of bankruptcy cases 'within a limited period.'" *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803 (2019) (quoting *Katchen v. Landy*, 382 U.S. 323, 328 (1966)); *see also In re GGW Brands, LLC*, 2013 WL 6906375, at *26 (Bankr. C.D. Cal. Nov. 15, 2013) ("It is well recognized that prompt administration of a bankruptcy estate is a 'chief purpose of the bankruptcy laws.'") (quoting *Katchen*, 382 U.S. at 328)). In their ADR Procedures Motion, Reorganized Debtors represented to the Court that "the Securities ADR Procedures are designed to facilitate prompt settlements with individual claimants as opposed to resolution of these claims on the merits" [Dkt. No. 8964 at 3-4]. At argument, Debtors' Counsel represented that if the Court implemented the ADR Procedures, Reorganized Debtors would have settlement offers out to "most claimants" "within literally a couple of months." (Bodnar Decl., Ex. 8 at 7:3-4.) The Court noted, in disapproving the class procedure and granting the ADR Procedures Motion, that "the acts complained of by some of the securities claimants happened almost five years ago. The bankruptcy was filed nearly two years ago. Thus, there are prospective claimants, both large and small, who didn't trade their claims and who have waited a very long time." (*Id.*, Ex. 9 at 6:21-7:1.) Nearly *two more years* have passed since the Court's decision, and the Kingstown Claimants, who filed their proofs of claim and submitted their Trading Data in April 2020, still await Reorganized Debtors' action on their claims. In sum, the promptness with which the ADR Procedures could – and as Reorganized Debtors represented, would – be carried out was foundational to the Court's selection of the ADR Procedures over the class mechanism as a means to resolve the Securities

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Claims.

Both the Court and the Securities Claimants have relied upon the positions taken by Reorganized Debtors in 2020. It would be prejudicial to now revert to a class action procedure that will further delay resolution. Indeed, Reorganized Debtors seek nine months to continue class settlement negotiations. Once a settlement is reached, notice will have to be sent out, objectors will have to be heard, a fairness hearing will have to be scheduled, and then Kingstown Claimants will have to either opt out (and be returned to the same position they have been in for more than two years), or re-submit their claims to a class claims administrator and await payment through that process. Such additional delay serves no purpose and is contrary to the just, speedy, and efficient resolution of claims. Accordingly, the Court should enforce the ADR Procedures Order by ordering Reorganized Debtors to promptly carry out the procedures it put in place.

Per the "Next Steps" section of the Claim Information Procedures, Reorganized Debtors, after receiving complete trading data, may "(i) make a settlement offer to a Subordinated Securities Claimant; (ii) designate the Subordinated Securities Claim(s) for mandatory mediation; or (iii) both" [Dkt. No. 10015-1 at 4]. Although this Court did not expressly provide a time within which Reorganized Debtors must make an offer of settlement or mediation after receiving a Securities Claimant's Trading Data, a "reasonable time" was implied. *See, e.g.*, *Castanares v. Deutsche Lufthansa AG*, Case No. CV 20-4261-MWF, 2021 WL 811455, at * (C.D. Cal. Jan. 26, 2021) ("Where a contract lacks 'an express payment deadline, a reasonable time for payment is implied.'") (quoting *Dutra v. BFI Waste Sys. of N. Am., Inc.*, No. 12-cv-3338 NC, 2013 WL 2950662, at *4 (N.D. Cal. June 14, 2013)). The Kingstown Claimants respectfully request that this Court make clear that its ADR Procedures Order required Reorganized Debtors to implement it within a reasonable time. To suggest that it did not contain such an implied term would mean Reorganized Debtors could delay for years (as they have done here), unilaterally "pause" the process for indefinite periods of delay (as they have done here), or abandon the process altogether in favor of a class resolution this Court has twice disapproved. Without reasonable diligence, the underlying purpose of the Court's entry of the order – to promptly and efficiently administer the

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Securities Claims – will be irremediably compromised. Indeed, it is apparently the lack of such an express term that has allowed Reorganized Debtors to drag their feet and ignore the Kingstown Claimants, and thousands of other Securities Claimants, for the last two years contrary to Reorganized Debtors' representations to the Court.

Without an order requiring Reorganized Debtors to comply with the ADR Procedures Order with reasonably prompt diligence – or even a mandatory timeframe – the Kingstown Claimants' claims, as well as those of thousands of additional Securities Claimants, will continue to languish with no clear path to prompt and efficient resolution. The Securities Claimants are represented by counsel of their choice, have supplied Reorganized Debtors with the information requested, and stand ready to negotiate or mediate a prompt resolution of their claims. Given Reorganized Debtors' actions leading up to the Fifth Extension Motion, there is every reason to believe that these claims will remain unaddressed for the next 270 days – or more – if the Court simply allows Reorganized Debtors to continue delaying this process without a reasonable timetable in place. Accordingly, the Court should order Reorganized Debtors to promptly comply with the ADR Procedures Order by making offers of settlement or mediation to Securities Claimants within a reasonable time (such as thirty days) after receiving a Securities Claimant's requested Trading Data.

## <u>CONCLUSION</u>

For the foregoing reasons, the Kingstown Claimants respectfully request that the Court deny the Fifth Extension Motion, as it pertains to the Securities Claimants, and order Reorganized Debtors to comply with the Securities Claim Procedures Order by making offers of settlement or mediation to Securities Claimants within a reasonable time after receiving a Securities Claimant's requested Trading Data.

Dated: November 8, 2022        ROLNICK KRAMER SADIGHI LLP

                By:   */s/ Richard A. Bodnar*

                *Attorneys for the Kingstown Claimants*