1  BROWN RUDNICK LLP
   David J. Molton (SBN 262075)
2  (DMolton@brownrudnick.com)
   Seven Times Square
3  New York, New York 10036
   Telephone:     (212) 209-4800
4  Facsimile:     (212) 209-4801

5  BROWN RUDNICK LLP
   Joel S. Miliband (SBN 077438)
6  (JMiliband@brownrudnick.com)
   2211 Michelson Drive, Seventh Floor
7  Irvine, California 92612
   Telephone:     (949) 752-7100
8  Facsimile:     (949) 252-1514

9  *Attorneys for the Fire Victim Trustee*

10

11                 **UNITED STATES BANKRUPTCY COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
12                      **SAN FRANCISCO DIVISION**

13  In re:                                  | Case No. 19-30088 (DM)

14  **PG&E CORPORATION,**                    | Chapter 11
                                            | (Lead Case)
15         **- and –**                       | (Jointly Administered)

16  **PACIFIC GAS AND ELECTRIC**             | **FIRE VICTIM TRUSTEE'S OBJECTION**
    **COMPANY,**                             | **TO MOTION TO ALLOW/DEEM TIMELY**
17  **Debtors.**                             | **LATE FILING OF PROOF OF CLAIM BY**
                                            | **DAVIN AND DEBBIE ABRAHAMIAN;**
18                                           | **MEMORANDUM OF POINTS AND**
                                            | **AUTHORITIES; DECLARATION OF**
19  ☐ Affects PG&E Corporation              | **CASEY A. GEE IN SUPPORT THEREOF**
20  ☐ Affects Pacific Gas and Electric Company
    ☑ Affects both Debtors                  | [Relates to Docket Number 13249]
21
                                            | Hearing Date:      December 13, 2022
22                                           | Hearing Time:      10:00 a.m.
    *All papers shall be filed in the Lead Case,*  | Place: Hearing will be conducted telephonically or
23  *No. 19-30088 (DM).*                     |           by video

24

25

26

27

28

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust, by and through her undersigned counsel, hereby submits this Objection to the *Motion to Allow/Deem Timely Late Filing of Proof of Claim by Davin and Debbie Abrahamian; Memorandum of Points and Authorities; Declaration* of *Casey A. Gee in Support Thereof* [Docket No. 13249] (the "**Motion**") filed on behalf of Davin and Debbie Abrahamian ("**Movants**") on November 14, 2022. In support of this Objection, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

The Fire Victim Trust understands that the Fires caused by PG&E in 2015, 2017 and 2108 made it hard for survivors to undertake many everyday tasks due displacement, trauma and other factors. The Trust has been extremely accommodating with respect to late claims and has made every effort to allow as many Fire Victims as possible to present their claims to the Trust for consideration. When motions have been filed requesting that late filed claims be deemed "timely" in order to be administered by the Trust, the Trustee and her predecessor have authorized more than one hundred stipulations with the Debtors to have the Court enter orders deeming such claims timely[1] and have chosen not to oppose hundreds of additional late claim motions filed prior to September 30, 2022. Nevertheless, the Trustee must balance the Trust's efforts to address as many Fire Victim Claims as possible against the fact that **82,692** Fire Victims – many of whom suffered horrific losses – were able to file timely proofs of claim and are prejudiced by the acceptance of late claims. All of those Fire Victims remain in the Trust today, waiting to learn how much of their claims can be paid. Also waiting within the Trust are Fire Victims who mailed their proofs of claim to the Debtors' claims agent in New York prior to the Tuesday, December 31, 2019 deadline but whose proofs of claim were not received by the claims agent until the end of that week due to the holidays. Like Movants, those claimants had to file late claim motions to have their days-late proofs of claim deemed timely. However, there is a fundamental difference between claimants who file motions to have long-filed late proofs of claims deemed timely after receiving notice from

---

[1] The Trust has agreed to 130 separate stipulations, and, prior to the Trust's inception, the Official Committee of Tort Claimants agreed to 14 such stipulations.

Case: 19-30088    Doc# 13281    Filed: 11/23/22    Entered: 11/23/22 10:17:22    Page 2 of 12

the Trust that such action is necessary and those who have made no attempt to engage with the Trust before filing late claim motions for years-late proofs of claim.

Of the more than 1,000 late claim motions filed since the December 31, 2019 extended bar date for non-governmental Fire Claimants, more than ninety percent (90%) have been filed in the last six months. One hundred fifty-five (155) of those late claim motions were filed in August alone, prompting the Trustee to state in several filings with this Court that she would have to discontinue the Trust's liberal non-opposition policy with respect to late claim motions filed after September 30, 2022. The Trust's policy of non-opposition was never a guarantee that every late claim motion would be unopposed, and the Trustee's statements regarding the need to reconsider that policy were intended to clarify this and to alert claimants and counsel to the Trust's transition to stricter review of late claim motions.

Unfortunately, it appears that the Trustee's statements were interpreted by some as a guarantee that late claim motions filed prior to October 1, 2022 would not be opposed by the Trust,[2] prompting an astounding **672** late claim motions to be filed on September 30, 2022 alone. To put these numbers in perspective, in 2020, which included the months immediately after both the extended bar date and the effective date of the Trust (both events that could be expected to prompt the filing of late claim motions), the total number of late claim motions filed alleging Fire Victim Claims was **55**. In 2021, the total number was only **22**. The Trust had no reason to anticipate or prepare for the recent flood of late claim motions, most of which (including the Motion) concerned just-filed proofs of claim.[3] All of these new, unanticipated claims must be

---

[2] The Trust has been advised of several social media posts encouraging people to file late claims by stating that the Trust was paying "significant amounts" for certain claims that did not require any economic damages, such as a posting on nextdoor.com [https://nextdoor.com/city/santa-rosa--ca/] informing Tubbs evacuees that "the Fire Victims Trust is compensating claimants for emotional distress for having to evacuate from our homes during the 2017 fires."

[3] While extremely concerned by the volume of claims included in the September 30 late claim filings, the Trustee and Claims Administrator concluded that those requests to deem late claims timely could not be subjected to increased scrutiny because September 30 was widely interpreted by both claimants and counsel as the "deadline" for late claim motions and the Trust could not differentiate the September 30 filings from earlier late claim motions that had been unopposed
(footnote continued)

2

reviewed, evaluated and determined before the Trust can make final payments to any of the tens of thousands of Fire Victims who have complied with all of the Trust deadlines and who must wait to learn how much of their approved claims can be paid. The economic prejudice to the Trust's beneficiaries of allowing more late claims into the Trust is manifold, as an increasing number of claims leads to increased administrative expenses and unanticipated adjustments to the Trust's economic modeling and payments.

## RELEVANT BACKGROUND

1. On January 29, 2019, PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Reorganized Debtors filed the Chapter 11 Cases to address the billions of dollars of damage and loss relating to the devastating 2015, 2017 and 2018 California fires and to provide compensation to wildfire victims.

2. On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors. On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**TCC**").

3. On March 14, 2019, the Debtors filed their schedules of assets and liabilities. By Order dated July 1, 2019, the Court established October 21, 2019 (the "**Bar Date**") as the last date to file proofs of claim in the Chapter 11 Cases [Docket No. 2806] (the "**Bar Date Order**"). By Order dated November 11, 2019, the Court extended the Bar Date to December 31, 2019 (the "**Extended Bar Date**") for unfiled, non-governmental Fire Claimants [Docket No. 4672] (the "**Extended Fire Victims Bar Date Order**")

4. The Extended Fire Victims Bar Date Order was entered in response to a motion filed by the TCC. The TCC argued that the Bar Date "should be extended for the fire victims on the ground that evidence filed herewith establishes that a large number of victims are not filing claims

---

other than based on the volume of claims included.

in these chapter 11 cases because they are impaired from filing. Their impairments include emotional distress, suffering from trauma caused by the wildfire that destroyed everything they own, confusion caused by the trauma, a lack of awareness of the fire claims bar date, and a belief that a claimant needs to be insured to file a claim." [Docket No. 4293 at 5:2-8]. In considering the TCC motion and approving the resulting stipulation between the TCC and the Debtors, this Court has already considered and addressed the adequacy of notice to Fire Victims. Movants' allegation that "in this case, there was no widely distributed notice to residents impacted by the subject fires" is contrary to the facts well-known by this Court. The Debtors provided a well-publicized notice of the Extended Bar Date – the **second notice** provided to Fire Victims of the claims bar date – and coordinated with TCC for the appointment of a Claims Representative who designed and implemented with his team an expansive outreach effort designed to identify, locate, and assist Fire Victims who were eligible to file claims but failed to do so by the original bar date. As a result of the Court's careful consideration of this issue and the thoughtful manner in which the Debtors redoubled their efforts to reach additional Fire Victims, more than 82,000 claimants,[4] some of whom suffered unfathomable losses, filed their claims in a timely manner.

## OBJECTION

### Equity Does not Favor Movants

5.      As Movants acknowledge, The Supreme Court has opined that "that the determination [of whether to allow a late-filed claim to be deemed timely] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 123 L. Ed. 2d 74 (1993). The interests the Court is being asked to balance here is not those of Movants versus those of the Debtors as framed in the Motion, but those of Movants versus those of more than 82,000 Fire Victims who filed proofs of claim by the Extended Bar Date despite often

---

[4] The Motion repeats a misstatement from other recently filed late claim motions, alleging that "nearly 38,000 fire victims filed timely claims." As noted above, there were **82,692** proofs of claim that were filed by the Extended Bar Date, channeled to the Trust and remain in the Trust awaiting the final calculation of how much of their determined claims can be paid by the Trust.

seemingly insurmountable odds.  All of those Fire Victims must wait until **all** claims – including those that Movants are asking to be deemed timely now – have been determined before they will find out how much of their claims can be paid.  It would be grossly inequitable to allow Movants' late claims to dilute and delay the payment of timely filed claims held by Fire Victims who have engaged with the Trust from its inception.

6.      Movants claim that their late filings were justified because the Debtors and the Trust did not inform Movants that they could receive compensation for their particular claims, but nothing in the Bankruptcy Code or Bankruptcy Rules requires a debtor to determine the validity of all possible claims prior to the claims bar date.  The compensability of any Fire Victim Claim is a matter for the Trust – which did not exist prior to the Effective Date, much less prior to the Extended Bar Date – to determine *after* reviewing all supporting documentation rather than before a claim is even filed.  That Movants claim to have only recently heard through social media posts and other forms of "word of mouth" that claims like theirs have been compensated does not justify an almost 3-year delay in filing proofs of claim.

7.      Although Section 502(a) of the Bankruptcy Code provides that a filed proof of claim "is deemed allowed, unless a party in interest . . . objects," subsection (b)(9) of the Section 502 states in relevant part that a claim may not be allowed if "proof of such claim is not timely filed." 11 U.S.C. § 502(b)(1).

8.      The Motion relies primarily upon the Supreme Court opinion in *Pioneer*.  Notably, in *Pioneer*, counsel had filed the claimant's proof of claim only 20 after the bar date in that case and the Supreme Court found that the bar date notice in that case contained a "dramatic ambiguity" regarding the bar date.  By contrast, Movants' proof of claim was filed **1,030 days after the Extended Bar Date**, on October 26, 2022.  As noted above, the notice of the Extended Bar Date was the **second** notice provided to potential Fire Victims and it was carefully crafted to inform that group of the deadline to file any claims arising from a Fire.  Contrary to Movants' allegations in the Motion, neither the Debtors nor the Trust had a responsibility to determine whether Movants' alleged claims were compensable or to inform Movants (or any other potential claimant) whether their alleged claims were compensable.

9.      It is particularly important in this case to recognize the impact of late claims on *Fire Victims*.  While courts have decided that there is no harm to *a debtor* in allowing late claims to be considered when a solvent debtor is paying all claims in full in a bankruptcy case, those are not the circumstances for Fire Victim Claims in this case. Here, all Fire Victim Claims are channeled to the Trust, which was funded with limited assets under the Plan.  All Fire Victim Claims that have been determined by the Trust so far have taken into consideration the expected number of Fire Victim Claims that were left to be paid *as of the date those determinations were made*.  If the number of Fire Victim Claims channeled to the Trust continues to increase, the Trust may not be able to increase the pro rata percentage beyond the current forty-five percent (45%).[5]  This factor alone makes allowing late claims like those filed by Movants into the Trust objectively detrimental to the tens of thousands of claimants who filed their claims before the Extended Bar Date, and who submitted their Claims Questionnaires to the Trust by the February 26, 2020 deadline set by the Trust.  Every late claim accepted by the Trust – even those that are ultimately deemed non-compensable – takes time and money from Fire Victims who have met all deadlines and are waiting for their final payments.

10.      The Supreme Court has recognized that Bankruptcy Rule 9006(b)(1) permits bankruptcy courts to accept proofs of claim filed after the bar date *where appropriate* in cases of excusable neglect due to inadvertence, mistake, carelessness or circumstances beyond the claimant's control.  *Pioneer*, 507 U.S. at 388, 113 S. Ct. at 1495.  As the dissent in *Pioneer* recognized, however, "the statute does not *require* the court to forgive every omission caused by excusable neglect, but states that the court "*may*" grant relief "in its discretion." *Id.*, 507 U.S. at 399, 113 S. Ct. at 1500 (emphasis in original).

/ / /

---

[5] Contrary to Movants' assertion in the Motion, "the additional 55%" of all claim awards that have be paid a pro rata share of 45% of such claim awards has *not* been set aside by the Trust because the Trust does not have sufficient funds to pay Fire Victims 100% of their claims.  In other words, any claim awards paid to late claimants such as Movants comes from funds that would otherwise be paid to timely claimants who are waiting to learn what percentage of their claims will be paid.

6

11.     The threshold determination to be made under Bankruptcy Rule 9006(b)(1) is whether Movants' failures to file their proofs of claim in this case resulted from excusable neglect. Movants have not provided any facts that would support a finding of "excusable neglect." Rather than "setting forth brief statements of their particular circumstances" as required by the Court's August 28, 2022 *Order Consolidating Motions to File Late Claims* [Docket No. 12875], Exhibit 1 to the Motion repeats exactly the same boiler plate language for the Movants as can be found in other late claim motions.

12.     As this Court has recognized, claimants who file late proofs of claim bear "the burden of presenting facts demonstrating excusable neglect." *In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 89 (2004) (citing *Key Bar Invs., Inc. v. Cahn* (*In re Cahn*), 188 B.R. 627 (9th Cir. BAP 1995)). The use of boiler plate language in place of particular circumstances and claiming that Movants should have been specifically informed whether their particular claims were compensable does not meet this burden.

13.     The Motion states that Movants did not file proofs of claim before the Extended Bar Date because they were unaware that their claims were compensable. However, in discussing the "excusable neglect" standard of Bankruptcy Rule 9006(b)(1), the Supreme Court referred to the interpretation of Rule 6(b) of the Federal Rules of Civil Procedure and acknowledged that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392, 113 S. Ct. at 1496. Ignorance is not a sufficient excuse and equity cannot favor a claimant who pleads ignorance over tens of thousands who followed the rules.

14.     The Motion does not assert that Movants were unable to file timely claims due to circumstances beyond their control or otherwise establish excusable neglect for waiting nearly three years after the Extended Bar Date to file proofs of claim. Rather, it asserts that the Debtors (and the Trust, which did not exist prior to July 1, 2020, more than six months after the Extended Bar Date) made "little to no substantial effort . . . to alert prospective claimants of their right or entitlement to file a claim." Movants cite *In re ZiLOG, Inc.*, 450 F.3d 996 (9th Cir. 2006), to support the allegation that the Debtors should have informed every potential claimant, known or

7

unknown, whether he or she had a compensable claim. However, *ZiLOG* involved a Debtor that sent its employees confusing instructions regarding the filing of proofs of claim, which the Court of Appeals found likely to cause the claimants in that case to believe that they did not have to file proofs of claim in their employer's bankruptcy case. Here, the Debtors made no such statements. Rather, the Debtors, the TCC, the court-appointed Claims Representative and Prime Clerk made a concerted effort to inform Fire Victims of the deadline to file a proof of claim for any claims arising from the enumerated Fires. As noted in the *Second and Final Report of Court Appointed Claims Representative* [Dkt. 5432], their effort to identify, locate and assist "fire victims who were eligible to file claims but failed to do so by the original bar date" resulted in an additional **9,265** proofs of claim being timely filed after the original claims bar date. *Dkt. 5432* at page 4.

## Application of Pioneer Factors

15.     In *Pioneer* the Supreme Court applied the majority of what was then the Ninth Circuit test for determining whether a failure to timely file a proof of claim was due to excusable neglect: (1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; and (4) whether the creditor acted in good faith. *Id.,* 507 U.S. at 395, 113 S. Ct. at 1498.

### Deeming Movants' Late Claims "Timely" Will Prejudice Other Fire Victims

16.     The first consideration in determining whether a late claim filing was the result of "excusable neglect" under *Pioneer* is the danger of prejudice to the debtor. This factor is irrelevant in the present case. While it is true that the relief requested in the Motion will not prejudice the *Debtors*, which have already satisfied their funding obligations to the Trust under the Plan, it most certainly prejudices tens of thousands of claimants who timely filed proofs of claim arising from Fires in these cases.

17.     As noted above, the *Pioneer* Court noted that "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* Equity does not support the filing of a late claim because claimants have just realized that others are being paid by the Trust for similar claims. This Court already considered and confirmed the

adequacy of the notice of the Extended Bar Date and thousands of Camp Fire victims with similar claims filed timely claims. For these reasons, the first factor does not support allowing Movants' late claims.

**The Length of Movants' Delay is Extreme and Negatively Impacts Trust Administration**

18. The second consideration under *Pioneer* is the length of delay and its potential impact on judicial proceedings. Movants filed their proofs of claim **1,030 days after the Extended Bar Date** yet claim that their nearly three-year delays were "reasonable" because they received misinformation about their claims around the time of the Extended Bar Date, before the Trust existed. As noted above, the Trust has a limited fund from which to pay all Fire Victim Claims. As such, the Trust cannot finally determine how much it can pay on account of any Fire Victim Claim until it adjudicates every Fire Victim Claim.

19. The continued addition of claims to the Fire Victim Trust prevents the Trust from allocating its limited funds and further extends the time that claimants who timely filed their Fire Victim Claims must wait for final payments, thus delaying the administration of Fire Victim Claims and prejudicing those who hold timely filed Fire Victim Claims with delay.

20. Moreover, the addition of claims such as Movants' increases the number of claimants among which the limited funds of the Trust must be divided. Further, each late claim motion must be reviewed and considered by the Trust, which incurs professional fees. Each late claim motion reduces the funds available to distribute to Fire Victims. The extreme length of Movants' delay and the impact of a nearly three-year delay on the final payment of timely filed Fire Victim Claims weighs heavily against deeming Movants' claims timely.

**Timely Filing Proofs of Claim was not Beyond Movants' Control**

21. The third *Pioneer* factor, whether the delay was beyond the late claimant's control, also weighs against granting the relief requested in the Motions. As explained above, the Motion does not provide any basis for a finding of excusable neglect. The Motion states that Movants did not know they had compensable claims. But the very case cited by Movants' counsel in support of deeming their extremely late claims "timely" acknowledges that ignorance is not a sufficient excuse. *See Pioneer*, 507 U.S. at 392, 113 S. Ct. at 1496.

9

22.     Although the Trust does not minimize Movants' claims in any way, tens of thousands of other claimants with emotional distress claims and other similar claims arising from the Camp Fire were able file timely proofs of claim.  This Court determined that notice to all potential Fire Victims was sufficient in connection with both bar orders. There is no evidence that Movants made any effort to reach out to the Trust in the two and a half years it has existed.  The third *Pioneer* factor therefore must also be decided in favor of the Trust and the Fire Victims who have made the effort to engage with the Trust.

## **Even Without Bad Faith, Equity Does Not Favor Movants Over Other Fire Victims**

23.     While the Trustee does not believe that Movants lack the good faith that comprises the final consideration listed by the *Pioneer* court, it is clear from the Motion that Movants were not prevented from filing timely claims by any circumstances.  None of Movants' neighbors who filed timely proof claims knew whether the Trust would compensate them for every claim they asserted against PG&E, yet they filed their claims before the Extended Bar Date rather than waiting to hear what others had received from the Trust.  Many filed without the benefit of counsel to guide them through the process.  The Motion fails to state any facts that justify Movants' nearly three-year delay in filing their proof of claim.

24.     In addition, as is evidenced by overwhelming number of late claim motions filed within the last month alone, allowing Movants' proof of claim to be deemed timely filed without extenuating circumstances would encourage other latecomers to file similar motions.  The Trustee provided notice that the Trust would begin strictly reviewing all late claim motions filed after September 30, 2022.  The September 30 "deadline" was widely disseminated by social media and other "word of mouth" sources that Movants claim gave them notice their claims were compensable.   Deeming late claims timely absent extenuating circumstances – rather than the boiler plate reasons given for Movants' delay – after such notice would be grossly inequitable to those holding timely filed Fire Victim Claims.

/ / /

/ / /

/ / /

Case: 19-30088    Doc# 13281    Filed: 11/23/22    Entered: 11/23/22 10:17:22    Page 11 of 12

25.     For the foregoing reasons, Movants fail to meet their burden for establishing "excusable neglect" for filing their proofs of claim 1,030 days after the Extended Bar Date. Movants' proof of claim **109640** should not be deemed timely for the purpose of administration by the Trust.

## **CONCLUSION**

The Trustee respectfully requests that this Court deny the relief requested in the Motion and grant the Trust such other and further relief as may be just.

DATED:  November 23, 2022          BROWN RUDNICK LLP

By:   */s/ David J. Molton*
        David J. Molton (SBN 262075)
        (DMolton@brownrudnick.com)
        Seven Times Square
        New York, New York 10036

        And

        Joel S. Miliband (SBN 077438)
        (JMiliband@brownrudnick.com)
        2211 Michelson Drive, Seventh Floor
        Irvine, California 92612

        *Attorneys for Fire Victim Trustee*

11