Debra Grassgreen and Karl Knight
c/o Pachulski, Stang, Ziehl & Jones LLP
One Sansome Street, Suite 3430
San Francisco, CA 94104
E-mail: dgrassgreen@pszjlaw.com

Eric and Julie Carlson
Calistoga, CA

*Individual Fire Victims*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Case No. 19-30088<br><br>Chapter 11<br><br>Jointly Administered<br><br>**RESPONSE OF INDIVIDUAL FIRE VICTIMS TO MOTION OF WILLIAM B. ABRAMS PURSUANT TO BANKRUPTCY RULE 5004 AND 28 U.S.C. SECTION 144 AND 455 AND BANKR. LOCAL RULE 3-14 FOR ENTRY OF AN ORDER AUTHORIZING THE RECUSAL OF THE HONORABLE DENNIS MONTALI**<br><br>[Relates to Docket Number 13260] |

Debra Grassgreen and Karl Knight (the "Knight Family"), and Eric and Julie Carlson (the "Carlson Family" and, together with the Knight Family, the "Claimants"), individual fire victims, hereby respond to the *Motion of William B. Abrams Pursuant to Bankruptcy Rule 5004 and 28 U.S.C. Section 144 and 455 and Bankr. Local Rule 3-14 for Entry of an Order Authorizing the Recusal of the Honorable Dennis Montali* (the "Motion") [Dkt. No. 13260]. On November 29, 2022, in advance of the response deadline to the Motion, the Court issued a memorandum indicating its intention to deny the Motion with a written decision to follow. Nonetheless, Claimants file this

response so that the facts set forth herein are in the record and so that the Court may take into account the facts in this response in connection with its written decision on the Motion. In support hereof, the Claimants respectfully represent as follows:

Through the Motion, Mr. Abrams seeks recusal of this Court based on what Abrams asserts are this Court's "personal biases and prejudices." The Motion is based on two assumptions. First, Mr. Abrams asserts that there is a *personal* relationship between Judge Montali and the Claimants. Second, Mr. Abrams asserts that as result of the asserted personal relationship, the Claimants received preferential treatment in these bankruptcy cases. Both of these premises are false.

**<u>There Is No "Personal" Relationship Between Judge Montali and the Claimants</u>**

Ms. Grassgreen and Mr. Carlson have no *personal* relationship with Judge Montali. Ms. Grassgreen is a restructuring attorney based in San Francisco. Mr. Carlson was formerly a restructuring investment banker based in San Francisco. Like many other professionals, including dozens who were involved in this case, Ms. Grassgreen has occasionally appeared before Judge Montali on behalf of her clients in wholly unrelated matters. These appearances include only handful of cases before Judge Montali over the past twenty-two years since Ms. Grassgreen relocated to the Bay Area. Similarly, Mr. Carlson was involved in only a handful of cases before Judge Montali over the course of his more than twenty-five-year career as a restructuring professional. Mr. Abrams does not cite any authority for the proposition that bankruptcy judges should recuse themselves from matters that involve attorneys who have appeared before them in other cases or matters. Any such rule would render the judicial system unworkable.

Similarly, the fact that Ms. Grassgreen or Mr. Carlson attended the same professional events that Judge Montali attended does not create a personal relationship. Mr. Abrams "evidence" of a personal relationship is the fact that, *over seventeen years ago*, Mr. Carlson and Ms. Grassgreen were on a host committee for a members' social event hosted by the American Bankruptcy Institute. The host committee included four other professionals who also have appeared in cases before Judge Montali and was sponsored by thirteen other legal and accounting firms. The notice attached to the Motion indicates that 100 bay area professionals attended, *including* Judge Montali. This does not establish a personal relationship. Nor does the fact that during the past two decades, Ms.

Grassgreen participated on education panels, committees, and programs for professional organizations with Judge Montali. In this district, and around the country, attorneys and judges work side by side in professional organizations and bench-and-bar committees.

While Judge Montali knows Ms. Grassgreen professionally because she has appeared in cases before him (just as he knows scores of other attorneys that appear before him), that does not mean they have a personal relationship that would require the Court's recusal. And from the discussion on the record during these cases, it was clear that Judge Montali did not recall Mr. Carlson having appeared before him as he confused him for an attorney. *See* Transcript of Hearing (June 24, 2020).

## **Judge Montali Did Not Provide Preferential Treatment**

Mr. Abrams asserts that the Motion contains ***evidence*** that:

> "Karl Knight and Debra Grassgreen (husband and wife) (the "**Knight Family**") as well as Eric and Julie Carlson (husband and wife) (the "**Carlson Family**") had and hold relationships with Hon. Judge Montali, hosted honorary events for Judge Montali, were given exclusive access to certain undisclosed documents and were granted other advantages that allowed them to secure judicial review rights and remedies through the Court. Importantly, no other victims were given these financial and judicial advantages other than these claimants with ties to Judge Montali."

Motion at 3. The Motion contains no such evidence because none exists. Mr. Abrams's statement that the Claimants were inappropriately provided "financial and judicial advantages" is simply false.

Ms. Grassgreen is a restructuring attorney who has a national practice that includes some of the most sophisticated and complex bankruptcies across the country. Similarly, Mr. Carlson is a former investment banker who formally had a national practice that included some of the most sophisticated and complex bankruptcies across the country. Ms. Grassgreen and Mr. Carlson, on behalf of their families, were able to use their decades of restructuring experience to monitor, protect, and enforce their rights openly, publicly, and with notice in accordance with applicable law just as any other creditor could on their own behalf or through counsel if he or she did not have the necessary legal and financial expertise.

The Claimants were careful in monitoring this bankruptcy case and advocating for their legal rights. As set forth below, the Claimants' objections to the proposed claims resolution procedures (the "CRP") were asserted consistently through the Debtors' bankruptcy cases, both formally and informally:

- 03/05/20: Eric Carlson reaches out to counsel to the Tort Claimants Committee, and raises concerns about the review process in the CRP in an attempt to resolve his objections to the Plan consensually and without the need for a formal objection. His objections were disregarded. *See* Exhs. to ECF Nos. 8074, 8079.

- 03/06/20: The Carlson Family formally objects to the Debtors' Disclosure Statement based on, among other things, the review process in the CRP. ECF No. 6176.

- 03/09/20: The Debtors reply to the Carlson Family's objection to the Disclosure Statement. ECF No. 6221.

- 03/10/20: Eric Carlson appears at the Disclosure Statement Hearing. The Carlson's objection is overruled. The Court holds that adequacy of the claims resolution procedures are confirmation issues (and should be addressed at the confirmation hearing) and the disclosure regarding the CRP is adequate since Mr. Carlson was able to identify the issues (i.e., there is sufficient information for creditors to decide whether to support or reject the CRP as part of the plan). Transcript of Hearing at 86-90 (March 10, 2010).

- 05/05/20: Certain Business Claimants file a comprehensive objection to confirmation of the plan based on, among other things, the lack of judicial review in the CRP. ECF No. 7072.

- 05/15/20: A hearing is held on the Business Claimants' objection to the lack of judicial review in the CRP. That hearing takes place prior to the deadline for all other parties to object to the confirmation of the Plan. During that hearing, the Court engaged in a discussion on the record with counsel for Comcast about whether the Court could provide the right of judicial review only to those parties that objected to the lack of judicial review. *See* Transcript of Hearing at 20-21(May 15, 2020), ECF No 7416. Significantly, when Judge Montali engaged in this discussion on the record, he could not have known which fire victims (other than the Business Claimants) would be impacted by a ruling along those lines because the general confirmation objection deadline had not yet passed.

- 05/15/20: After hearing the statements on the record at the hearing on the Business Claimants' objection to the lack of judicial review in the CRP, the Claimants conclude that there is a reasonable likelihood the Court will determine that any parties that do not object to the lack of judicial review will be deemed to have consented to that provision in the CRP. Accordingly, later in the day, after the conclusion of the hearing, the Claimants each filed an objection to Confirmation of the Plan. ECF Nos. 7363, 7366.

- 05/26/20: The Court issues its written ruling on the Business Claimants' objection to the lack of judicial review in the CRP and finds that. "[t]he order confirming the Plan should

- include specific language assuring this preserved right of Objectors to seek judicial de novo review after they have exhausted their remedies under the CRP. The Court expects counsel for the Debtors, the TCC, the Trustee and the Objectors to make an effort to agree on appropriate language." ECF No. 7597. The Court's written ruling is consistent with the Court's comments at the May 15th hearing.

- Following the Court's May 26th ruling, the Claimants reach out to the Debtors and the Tort Claimants Committee to request copies of the revised plan documents that will implement the Court's May 26th ruling and include the right of judicial review in the CRP. The draft CRP was provided to Claimants so that the Claimants and the TCC could "agree on appropriate language" to implement the Court's ruling as the Court directed.

- 06/22/20: Claimants do not agree with the manner in which the Court's ruling is reflected in the modified CRP inasmuch as the objectionable provisions were designed to effectively negate the right to judicial review that the Court previously upheld. As a result, Claimants filed an objection to the certain offending provisions in the revised CRP. ECF No. 8074.

Notwithstanding Mr. Abrams's unsupported innuendo, the facts set forth above establish that the Claimants did not receive any special advantage *based on their identity*. Instead, the Claimants were extremely diligent in monitoring the case, reviewing the filings, attending hearings, and timely asserting objections to the Plan. As a result, the Claimants preserved their legal right to judicial review just as the Business Claimants did.

Significantly, neither the Business Claimants nor the Claimants ever suggested or proposed that the right to judicial review be limited in any way or that the failure of a fire victim to object to the lack of judicial review be deemed consent by that fire victim to that provision in the CRP. The Claimants believed that the right to judicial review should have been included in the CRP. **The position that no judicial review should be granted was asserted and argued by the Tort Claimants Committee, the official fiduciary for all fire victims.** ECF No. 7159 at 10. The fact that only a few claimants filed formal objections to the lack of judicial review is not a result of any Claimants' special access as Mr. Abrams infers. It is more likely a result of the fact that the TCC and the attorneys representing the vast majority of fire victims negotiated and supported a CRP that lacked judicial review. In fact, the thirteen law firms representing the vast majority of fire victims in these cases each signed a restructuring support agreement where the law firms agreed not to object to Confirmation of the Plan, which included the CRP and its provisions that stripped away the right of

judicial review. It is unclear why Mr. Abrams did not timely object to the lack of judicial review in the CRP as was done by the Business Claimants and the Claimants. Mr. Abrams has been actively participating in this case and the lack of judicial review was fully briefed by the Business Claimants in advance of the deadline to object to confirmation of the Plan.

## **DISCUSSION**

A United States judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). While the goal of section 455(a) is "to avoid even the appearance of partiality,'" Liljeberg v. Health Servs. Acq. Corp., 486 U.S. 847, 860 (1988) (quoting lower court, 796 F.2d 796, 802 (5th Cir. 1986)), the standard for recusal must be narrowly construed so that recusal does not become "'mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.'" United States v. Holland, 519 F.3d 909, 912 (9th Cir. 2008) (quoting United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993)). A court considering a disqualification request under section 455(a) must ask "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." Holland, 519 F.3d at 913. The reasonable person is not "'hypersensitive or unduly suspicious,' but rather is a 'well-informed, thoughtful observer.'" Id. (quoting In re Mason, 916 F.2d 384, 385 (7th Cir. 1990)). If the reasonable person would not find a basis for partiality, a judge has an obligation to participate in the cases to which that judge is assigned. Id. at 912. Here, Mr. Abrams provides nothing more than unsubstantiated suggestions of personal bias based on false assumptions and innuendo. No reasonable person with knowledge of all the facts would conclude that Judge Montali was not impartial.

## CONCLUSION

Mr. Abrams has failed to show the Claimants have a personal relationship with Judge Montali that would require recusal of the Court or disclosure by the Claimants or the Court. Recusal cannot be based on Ms. Grassgreen's and Mr. Carlson's professional capacities in which they have appeared before Judge Montali in other cases or participated in educational events along with other professionals and judges in the restructuring community. In sum, Ms. Grassgreen's and Mr. Carlson's roles before Judge Montali are no different than any other professional that appears before Judge Montali or any other court. Accordingly, the Motion should be denied.

Respectfully,

Dated: November 30, 2022

By: *(signed)* Debra Grassgreen

By: *(signed)* Karl Knight

By: _____
Eric Carlson

By: _____
Julie Carlson

**CONCLUSION**

Mr. Abrams has failed to show the Claimants have a personal relationship with Judge Montali that would require recusal of the Court or disclosure by the Claimants or the Court. Recusal cannot be based on Ms. Grassgreen's and Mr. Carlson's professional capacities in which they have appeared before Judge Montali in other cases or participated in educational events along with other professionals and judges in the restructuring community. In sum, Ms. Grassgreen's and Mr. Carlson's roles before Judge Montali are no different than any other professional that appears before Judge Montali or any other court. Accordingly, the Motion should be denied.

Respectfully,

Dated: November 30, 2022

By: _____
Debra Grassgreen

By: _____
Karl Knight

By: */s/ Eric Carlson*
Eric Carlson

By: */s/ Julie Carlson*
Julie Carlson