KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

LITTLER MENDELSON, LLC
Elisa Nadeau (#199000)
(enadeau@littler.com)
50 West San Fernando St., 7th Floor
San Jose, CA 95113
Tel.: 408 998 4150
Fax: 408 288 5686

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' OBJECTION TO CLAIM NO. 2441 FILED BY DON WORRELL**<br><br>**Response Deadline: January 11, 2023, 4:00 p.m. (Pacific Time)**<br><br>**Hearing Information If Timely Response Made:**<br>Date: January 25, 2023<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

TO: (A) THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) THE AFFECTED CLAIMANT[S]; AND (D) OTHER PARTIES ENTITLED TO NOTICE:

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") file this objection (the "**Objection**") to Proof of Claim No. 2441 (the "**Proof of Claim**") filed by Don Worrell, and in support thereof, state the following:

## I. JURISDICTION

This Court has jurisdiction over this Objection under 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are section 502 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II. BANKRUPTCY CASE BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. Prior to the Effective Date (as defined below), the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner was appointed in either of the Chapter 11 Cases. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263].

By Order dated June 20, 2020 [Docket No. 8053], the Bankruptcy Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be further modified, amended or supplemented from time to time, and together with any exhibits or scheduled thereto, the "**Plan**"). The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**"). *See* Docket No. 8252.

### III. FACTUAL BACKGROUND

The Proof of Claim, filed on April 17, 2019 against the Debtors,[1] contains no substantive description of the claim but asserts $4,893,392 in damages. The Reorganized Debtors understand the claim to allege harassment and discrimination by Mr. Worrell's former supervisor, Dan Rizzo, as well as wrongful termination, retaliation, and defamation arising from Mr. Worrell's December 2018 termination from his employment as a supervisor of electrical work crews after a complaint and investigation revealed Mr. Worrell's pattern of inappropriate comments toward female subordinates. A copy of the proof of claim is attached hereto as Exhibit A; *see also*, RJN, Exs. A, B.

Mr. Worrell's claims will fail as a matter of law because the complaints against Mr. Worrell were a legitimate, nondiscriminatory reason for his termination which he cannot show to be pretextual, and there is no record of Mr. Worrell making any complaints prior to investigation of his own wrongful conduct. Mr. Worrell's uncorroborated accusations against his supervisor Dan Rizzo (which Mr. Worrell first voiced months after his termination) fail to lend any support to his claims, as Mr. Rizzo was not involved in the decision to terminate Mr. Worrell, did not oversee the investigation against Mr. Worrell, and, indeed, had left PG&E's employment for another job almost two months before Mr. Worrell was separated.

Mr. Worrell worked as a Distribution Supervisor-Electric from March 1, 2014 until his termination by the Utility in December 2018. Declaration of Heather Free (Free Decl.), ¶ 3. Mr.

---

[1] Mr. Worrell's complaint with the Department of Fair Employment and Housing ("**DFEH Complaint**") alleges that his employer was the Utility and does not refer to PG&E Corp. The Proof of Claim, however, names both the Utility and PG&E Corp. Given that the Proof of Claim arises out of Mr. Worrell's employment, we assume Claimant's use of the corporate name is a drafting error and that Claimant means only to assert claims against the Utility. To be sure, nothing in the Proof of Claim or the DFEH Complaint provides any basis for claims against PG&E Corp. Still, as a precaution, PG&E Corp. separately objects to the Worrell Claim on the ground that it never employed Mr. Worrell and as a result has no liability for what he alleges in the Proof of Claim.

3

Worrell was responsible for overseeing crews of employees who performed electric maintenance and construction activities. Declaration of Scott Rose (Rose Decl.), ¶ 3. Mr. Worrell interacted daily with several female subordinates in carrying out his job duties. *Id*. at ¶ 4. On July 23, 2018, one of these subordinates (an Operating Clerk who will be referred to as "Jane Doe" for the purposes of this Objection) confided to a supervisor, Jay West, that Mr. Worrell made inappropriate comments to her. These included that Mr. Worrell told Ms. Doe that he would not be shocked if she asked him to have sex with her, and that he would say yes. Declaration of Diana Holbak (Holbak Decl.), ¶ 2, Ex. A, pp. 6-7. Mr. West reported this information to Human Resources and his supervisor, Dan Rizzo, that day, and emailed a summary of Ms. Doe's complaint. Rose Decl., ¶ 4, Ex. A. Mr. Rizzo forwarded the email to the team's HR Business Partner ("**HRBP**"), Heather Free, and another HRBP who was responsible for conducting workplace investigations, Diana Holbak, as well as Mr. Rizzo's own supervisor, Scott Rose. *Id*. Ms. Holbak conducted the investigation, not Mr. Rizzo, and kept Mr. Rose apprised of her progress. Rose Decl., ¶ 5, Holbak Decl., ¶¶ 3-5. Ms. Holbak's investigation concluded that Mr. Worrell had made the statements and others like it to other women in the office. Holbak Decl., ¶ 4. After Mr. Worrell learned of Ms. Doe's complaint, he made a complaint against Ms. Doe, which was investigated and found to be unsubstantiated. *Id*., ¶ 6, Ex. B. In his complaint against Ms. Doe, Mr. Worrell made no mention of the comments Mr. Worrell began attributing to Mr. Rizzo after Mr. Worrell's termination (*e.g.*, that Mr. Worrell was a "dinosaur" and an "old man"). *Id*. Moreover, in his complaint, Mr. Worrell indicated that he had confided in Mr. Rizzo that Mr. Worrell would be filing a complaint for harassment *against Ms. Doe*. *Id*.

Due to Mr. Worrell's serious violations of the Utility's policies and based upon the investigation report, Mr. Rose (Mr. Worrell's skip-level supervisor), working with Human Resources, made the decision to terminate Mr. Worrell's employment on or about October 18, 2018. Rose Decl., ¶ 9; Free Decl., ¶ 5. An important motivation was to protect PG&E employees from Mr. Worrell's conduct in the future. Rose Decl., ¶ 7; Free Decl., ¶ 5. Meanwhile, Mr. Rizzo had already given notice of his resignation, and his last day was October 18, 2018. Free Decl., ¶ 4; Rose Decl., ¶ 3. Mr. Rose met with Mr. Worrell on December 14, 2018, to advise him of the termination decision. Mr. Rose observed that Mr. Worrell was polite and did not seem surprised. Rose Decl., ¶ 9. At that meeting,

4

Mr. Worrell told Mr. Rose that he planned to sue the Utility and "[t]hat's not a threat, just letting you know. I would be a fool not to, as I was going to retire in 4 years." *Id.*, ¶ 10. Mr. Worrell was not eligible for rehire. Free Decl., ¶ 7.

After filing the Proof of Claim on April 17, 2019, Mr. Worrell proceeded to dual-file a complaint with the Equal Employment Opportunity Commission (EEOC) and the Department of Fair Housing and Employment (DFEH), EEOC Case # 480-2019-01932 on July 2, 2019. RJN Ex. A. The narrative in Mr. Worrell's EEOC complaint stated in full:

> From about 8/3/18 and continuing through about 12/14/18, I believe I was discriminated against due to my age (60) when I was falsely accused of sexual harassment, suspended and eventually discharged from my job, in violation of the Age Discrimination in Employment Act of 1967, as amended.

*Id.* There was still no mention of harassment against Mr. Worrell, or any allegations regarding his supervisor Mr. Rizzo.

The same day, the DFEH issued Mr. Worrell a right-to-sue letter, notifying him that he had one year to file a lawsuit under the Fair Employment and Housing Act ("**FEHA**"), which would be tolled pending the EEOC's investigation. RJN Ex. B. On July 22, 2019, the EEOC issued a Right-to-Sue letter stating in relevant part "the EEOC is unable to conclude that the information obtained establishes violations of the statutes" and notifying Mr. Worrell that he had 90 days to file his lawsuit under Title VII. RJN Ex. C.

Mr. Worrell amended his DFEH complaint on December 13, 2019 (approximately one year after his termination), claiming for the first time that Mr. Rizzo had made numerous age-related comments to Mr. Worrell, including calling him a "dinosaur," "old man," and "caveman" "on a regular basis". RJN Ex. D. Mr. Rose, who made the decision to terminate Mr. Worrell's employment, had never heard Mr. Rizzo use the word "dinosaur" and cannot recall any complaints by Mr. Worrell about Mr. Rizzo. Rose Decl., ¶ 11.

### IV. THE OBJECTION AND REQUEST FOR RELIEF

The Reorganized Debtors object to the Proof of Claim pursuant to section 502(b)(1) of the Bankruptcy Code because it fails as a matter of law: Mr. Worrell was terminated when a PG&E investigator determined that Mr. Worrell had a pattern of making inappropriate sexual comments to

5

female employees, who were in subordinate positions, though they did not report directly to him. Rose Decl., ¶ 7; Holbak Decl., ¶ 4, Ex. A. The Utility appropriately terminated Mr. Worrell for a lawful, nondiscriminatory reason (the sexual comments); Mr. Worrell never complained previously about Mr. Rizzo; the Utility's decision makers were unaware of any prior complaints about Mr. Rizzo; and there is no corroborating evidence that Mr. Worrell was harassed or defamed after his termination.

A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code, however, provides in relevant part that a claim may not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Once the objector raises "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), quoting 3 L. King, *Collier on Bankruptcy* § 502.02 at 502-22 (15th ed. 1991), then "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence," *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)* 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996). "[T]he ultimate burden of persuasion is always on the claimant." *Holm*, 931 F.2d at 623 (quoting King, *Collier on Bankruptcy*); *see also Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000), *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (BAP 9th Cir. 1993); *In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988).

### A. Mr. Worrell Cannot Establish Wrongful Termination.

Mr. Worrell's claim that he was wrongfully terminated cannot succeed because there are no facts suggesting discriminatory animus, and he was terminated for making sexually harassing comments to female subordinates. To establish a *prima facie* case of discrimination under FEHA, a plaintiff must present evidence that: (1) he was a member of a protected class; (2) he was performing competently in the position held; (3) he suffered an adverse employment action, such as a termination or demotion; and (4) the specific facts of his case suggest discriminatory animus. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 356 (2000). Here, the operative facts do not suggest discriminatory animus because, even if the trier of fact believed Mr. Worrell's uncorroborated allegation (which was not

6

included in his EEOC complaint and only surfaced one year after his termination) that Mr. Rizzo made age-based comments to Mr. Worrell, it was not Mr. Rizzo who decided to terminate his employment—and those who did make the decision were not aware of the alleged comments. Rose Decl., ¶ 11; Free Decl., ¶ 6.

An employee's subjective belief is irrelevant to whether he was actually discriminated against on the basis of a protected classification. *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1733 (1994) (affirming summary judgment where plaintiff's assertion that other employee was less well qualified, and thus should have been chosen for reduction in force, was based on opinion, not evidence); *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) (holding that testimony that supervisor treated employee with condescension and coldness compared to white coworkers provided only naked speculation concerning the motive for the adverse employment decision); *see also Sangster v. Paetkau*, 68 Cal. App. 4th 151, 162-63 (1998) ("[E]vidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of fact."); *Sinai Mem'l Chapel v. Dudler*, 231 Cal. App. 3d 190, 196-97 (1991) (an issue of fact "is not raised by cryptic, broadly phrased, and conclusory assertions, or mere possibilities").

Even if Mr. Worrell could make a *prima facie* case—which he cannot—the Utility had a legitimate, non-discriminatory reason for the termination—Ms. Holbak's findings, upon her independent investigation, that Mr. Worrell made sexually harassing comments to Ms. Doe—thus shifting the burden back to Mr. Worrell to demonstrate pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Guz*, 24 Cal. 4th at 356.

An employee does not meet his burden to rebut an employer's non-discriminatory basis for its employment decision merely by showing "that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Arteaga v. Brinks, Inc.*, 163 Cal. App. 4th 327, 343 (2008). FEHA "does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Id*. at 344. Mr. Worrell "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the Utility's] proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them

7

"unworthy of credence.'" *Hersant v. Dep't of Social Svcs.*, 57 Cal. App. 4th 997, 1005 (1997); *King v. United Parcel Svc.*, 152 Cal. App. 4th 426, 433 (2007) (whether plaintiff actually did commit a policy violation "does not matter . . . as long as [the employer] honestly believed she did").

Mr. Worrell's argument that Mr. Rizzo retaliated against him for complaints against Mr. Rizzo will fail as a matter of law. First, Mr. Worrell never made these complaints until a year after his termination, despite making a complaint against Ms. Doe and lodging a first DFEH complaint that made no mention of it. Rose Decl., ¶¶ 9, 11; Holbak Decl., ¶ 6, Ex. B; RJN, Ex. D. Second, Mr. Rizzo was not involved in supervising the so-called "shoddy investigation" and resigned his position at PG&E effective October 18, 2022, and therefore also did not participate in the termination decision. Rose Decl., ¶ 6; Free Decl., ¶ 5; Holbak Decl., ¶¶ 2 - 6. Thus, Mr. Worrell will be unable to prevail on his wrongful termination claim.

### B. Mr. Worrell Cannot Prevail on His Retaliation Claim.

Mr. Worrell will also be unable to succeed on his retaliation claim because he did not engage in protected conduct, and he did not do so *before* his termination. Retaliation under FEHA requires proof that: (1) he engaged in a "protected activity"; (2) the company subjected him to an adverse employment action; and (3) a causal link existed between the protected activity and the company's action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005); *Patten v. Grant Joint Union High School Dist.*, 134 Cal. App. 4th 1378 (2005). The same burden-shifting framework applicable to FEHA discrimination claims applies to Plaintiff's retaliation claims. *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 138 (2007). Here, the Utility has no record of Mr. Worrell *ever* complaining about Mr. Rizzo's alleged comments. Rose Decl., ¶ 11; Free Decl., ¶ 6. This complaint first surfaced one year after the termination. Moreover, as explained above, Mr. Rose had no information that Mr. Worrell had complained. It could be expected that Mr. Worrell might direct such a claim to Mr. Rose, as Mr. Rizzo's supervisor. Not only did Mr. Worrell never complain to Mr. Rose, but Mr. Rose received no complaints about Mr. Rizzo, period. Rose Decl., ¶ 11. In addition, PG&E did take seriously, and did investigate, Mr. Worrell's complaint against Ms. Doe, and found it to be unsubstantiated. Holbak Decl., ¶ 6, Ex. B. Mr. Worrell made up his mind to sue PG&E one year before he came up with the story about Mr. Rizzo—he told Mr. Rose as much in Mr. Worrell's

8

Case: 19-30088    Doc# 13308    Filed: 12/02/22    Entered: 12/02/22 16:24:32    Page 8 of 11

termination meeting. Rose Decl., ¶ 10. Thus, Mr. Worrell will be unsuccessful in his retaliation claim as a matter of law.

### C. Mr. Worrell Cannot Surpass the High Hurdle to Establish Harassment.

Given that Mr. Worrell never complained about Mr. Rizzo and Mr. Rizzo was not observed by others to be unprofessional during that time, Mr. Worrell will also fail as a matter of law to meet the very high bar to establish that he was harassed by Mr. Rizzo. A claim for harassment arises from a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Kelly-Zurian v. Wohl Shoe Co.,* 22 Cal. App. 4th 397, 409 (1994) (internal quotation marks omitted). Key considerations include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Miller v. Dep't of Corrs.,* 36 Cal. 4th 446, 462 (2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Allegations of harassing conduct that is "occasional, isolated, sporadic, or trivial" do not suffice. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 610 (1989) (affirming demurrer of FEHA harassment claim). "[R]ather, the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Id.*; *accord Etter v. Veriflo Corp.*, 67 Cal. App. 4th 457, 466 (1998) (offensive racial remarks made to a stock room worker every day for six weeks was not severe or pervasive conduct as a matter of law).

Here, the allegations and evidence would fall short of the standard even if they were true. Specifically, Mr. Worrell asserts that Mr. Rizzo called him "dinosaur," "old man," and "cave man," and made comments about older workers earning too much money. These allegations are insufficient as a matter of law to show harassment. *See, e.g.*, *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 145 (2006) (three occasions of "rude, inappropriate and offensive behavior" including calling the plaintiff an "aging nun" over a five-week period did not constitute actionable harassment as a matter of law because it was not severe or pervasive); *Mallard v. J & J Snack Food Corp. of California*, 2002 WL 31372047, at *8 (Cal. Ct. App. Oct. 22, 2002) ("laughter, rolled eyes, sarcastic tone, and an unhelpful response to plaintiff's request for assistance with a subordinate's work-related problem—

9

all of these alleged acts may well have been offensive to plaintiff, but they do not amount to discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment") (internal quotation marks omitted). Thus, Mr. Worrell's harassment claim will also be unsuccessful.

### D. Mr. Worrell Cannot Establish Defamation or Blacklisting.

Mr. Worrell's claims for defamation and blacklisting will fare no better. A defamation claim requires a plaintiff to specifically allege: (1) intentional publication; (2) of a false statement of fact; (3) that is unprivileged; and (4) has a natural tendency to injure or cause special damage. *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). Truth is an absolute defense: "In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose." *Id*. at 646. Blacklisting requires the employer to actively prevent the former employee from getting work from other employers through misrepresentation (*i.e.*, knowingly false statements). Mr. Worrell appears to base these claims on PG&E's refusal to rehire him and its refusal to allow him to work on PG&E projects based on PG&E's honest conclusion that he violated its policies. Free Decl., ¶¶ 5, 6. PG&E has documented evidence that Mr. Worrell was properly terminated for making inappropriate sexual comments, and there is no proof that PG&E did not or does not honestly believe the comments were made and justified his termination; Mr. Worrell cannot prevail on these claims. *Id*. Furthermore, PG&E has a policy requiring former employees to use a third-party vendor to verify employment dates, and the vendor does not provide additional information. Free Decl., ¶ 8.

### C. Failure to Provide Supporting Documentation

The Reorganized Debtors object to the Proof of Claim to the extent that Mr. Worrell has failed to provide sufficient supporting documentation for it, including, without limitation, a scheduled detail of any expenses, costs, taxes and additional alleged damages included in the amount claimed. Given that Mr. Worrell told Mr. Rose that he planned to retire in four years, Mr. Worrell's claim of over $4M is especially frivolous.

### V. RESERVATION OF RIGHTS

The Reorganized Debtors hereby reserve the right to object, as applicable, in the future to the

Proof of Claim on any ground, and to amend, modify, or supplement this Objection to the extent the Objection is not granted. A separate notice and hearing will be scheduled for any such further objections. Should the grounds of objection specified herein be overruled, wholly or in part, the Reorganized Debtors reserve the right to object to the Proof of Claim on any other grounds that the Reorganized Debtors may discover or deem appropriate. The Reorganized Debtors also reserve the right to assert any counterclaims or affirmative defenses (including, without limitation, mitigation of damages, waiver, equitable estoppel, unclean hands, election of remedies, and laches), whether in connection with this Objection or in an adversary proceeding or other litigation, which counterclaims and defenses are expressly reserved.

## VI. NOTICE

Notice of this Objection will be provided to (i) counsel for Mr. Worrell, as identified in the Proof of Claim; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required.

WHEREFORE the Reorganized Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Reorganized Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: December 2, 2022

**KELLER BENVENUTTI KIM LLP**
**LITTLER MENDELSON, LLC**

By: */s/ Elisa Nadeau*
    Elisa Nadeau

*Attorneys for Debtors and Reorganized Debtors*