KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

LITTLER MENDELSON, LLC
Elisa Nadeau (#199000)
(enadeau@littler.com)
50 West San Fernando St., 7th Floor
San Jose, CA 95113
Tel.: 408 998 4150
Fax: 408 288 5686

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF SCOTT ROSE IN SUPPORT OF REORGANIZED DEBTORS' OBJECTION TO CLAIM NO. 2441 FILED BY DON WORRELL**<br><br>**Response Deadline: January 11, 2023, 4:00 p.m. (Pacific Time)**<br><br>**Hearing Information If Timely Response Made:**<br>Date: January 25, 2023<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

# DECLARATION OF SCOTT ROSE

I, Scott Rose, hereby declare and state:

1. I am a Senior Director, Electric Distribution Operations Central Valley Region for Pacific Gas and Electric Company ("**PG&E**"). I make this declaration based on my personal knowledge and, if called to testify, I could and would testify to the matters stated herein.

2. From around 2017 to 2019, I was the Director, Electric Field Operations, South Coast & South Valley Area.

3. During the relevant time period, including July 1, 2018 through the end of 2018, I was the skip-level supervisor of Don Worrell. Mr. Worrell was a Distribution Supervisor – Electric in the Los Padres area, responsible for overseeing crews of employees who performed electric maintenance and construction activities. Until sometime around mid-October 2018, Mr. Worrell was directly supervised by my subordinate, Dan Rizzo. Mr. Rizzo resigned his employment and left for a position with another employer in October 2018. From October 18, 2018 until his termination, I supervised Mr. Worrell.

4. In connection with his duties, Mr. Worrell interacted daily with several female subordinates holding clerical positions. On July 23, 2018, I learned that one of these subordinates, an Operating Clerk who I will call Jane Doe for the purposes of this declaration, made a complaint about Mr. Worrell to Jay West, another supervisor who also reported to me. Mr. Rizzo forwarded to me, Diana Holbak (PG&E's workplace investigator), and Heather Free (our team's then-Human Resources Business Partner) an email from Mr. West that summarized Ms. Doe's complaint. Mr. Rizzo's email to me indicated he would work with Ms. Holbak on next steps. A true and correct copy of Mr. Rizzo's email with the email forwarded from Mr. West is attached hereto as **Exhibit A**. Ms. Doe was identified as "HH EE" meaning, "hiring hall employee" or "EE" meaning, "employee" in Exhibit A.

5. Ms. Holbak proceeded to investigate Ms. Doe's complaint. Ms. Holbak conducted the investigation, not Mr. Rizzo. Ms. Holbak provided updates to me and to HR regarding her progress.

6. On or about October 18, 2018, I met with Ms. Holbak and Ms. Free to discuss the findings and decide how to proceed. Mr. Rizzo was not present at this meeting, as he was already

1 | departing or had already departed the Company. Ms. Holbak's findings substantiated Ms. Doe's
2 | claims.

3 | 7. Given Ms. Holbak's findings, Ms. Free and I agreed that Mr. Worrell's employment should be terminated, as Mr. Worrell was found to have committed serious violations of PG&E's policies, and it was important to protect Ms. Doe and other female subordinates and coworkers from any further inappropriate behavior by Mr. Worrell. We sought approval for the termination from Human Resources and from managers in my supervisory chain.

8. In the meantime, on October 22, 2018, I met with Mr. Worrell to notify him that he was being placed on a paid leave of absence and that the investigation substantiated the allegations of inappropriate behavior and comments made against him. I provided Mr. Worrell with a letter summarizing the investigation's findings. A true and correct copy of the letter I provided is attached hereto as **Exhibit B**. Mr. Worrell was polite and cooperative during the meeting.

9. Once the necessary approvals were obtained, I again met with Mr. Worrell to terminate his employment on December 14, 2018. Mr. Worrell was again cordial and polite. I believed he was not surprised about his separation. I provided Mr. Worrell with a termination letter, a true and correct copy of which is attached hereto as **Exhibit C**.

10. Upon his departure on that day, December 14, 2018, Mr. Worrell told me, "PG&E is making a mistake, and I will be seeking legal action." He added, "That's not a threat, just letting you know. I would be a fool not to, as I was going to retire in 4 years."

11. In my experience supervising Mr. Rizzo, Mr. Rizzo behaved very professionally. I do not believe Mr. Rizzo would have made age-related comments, and I do not recall hearing any. I did not hear or otherwise learn that Mr. Rizzo had used the terms "old man," "dinosaur," or "cave man" to refer to employees. As far as I am aware, Mr. Worrell never made a complaint about Mr. Rizzo, nor did Mr. Worrell ever tell me that Mr. Rizzo used the words "dinosaur," "cave man," or "old man" to refer to Mr. Worrell.

//
//

3

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of December, 2022, at Bakersfield, California.

/s/ *Scott Rose*
Scott Rose