# EXHIBIT A

| Case Title   Inappropriate Behavior and or Comments | Case No.   18 1636 |
|---|---|
| **Investigator Name**: Diana Holbak | **Job Title**: HR Consultant, Sr. |

By my signature below, I certify that I investigated a concern raised by Jay West on behalf of [Redacted] regarding inappropriate comments of a sexual nature on July 23, 2018. In connection with the investigation, I interviewed the subject and witnesses identified in my report. For each interview, I adhered to the following interview practices:

1. Prior to beginning an interview, I advised the witness;
    a. I am a PG&E employee acting as a neutral fact finder to determine whether a violation of PG&E's Code of Conduct has occurred.
    b. PG&E's Code of Conduct requires employees to cooperate in investigations, which includes honestly answering questions relevant to an investigation.
    c. While the Company cannot require the participant to keep information discussed in this interview confidential, given the sensitive nature of the issues, and consistent with the value PG&E places on professional and respectful treatment of each other, the Company asks that the participant refrains from repeating information discussed in this interview.
    d. PG&E has a strict policy against retaliation. The participant must not retaliate against anyone because of his or her involvement in this investigation. Likewise, if the participant feels that s/he has been retaliated against because of his/her participation in this investigation, please call me at (925) 476-2615 or contact Compliance and Ethics at 1-888-231-2310
2. In interviewing witnesses, I practiced 3 way-communication. To ensure that I understood and received the key messages communicated to me via a face to face or telephonic meeting with each witness, I engaged in three-way communication:
    a. I listened to what the witness said ('the key messages");
    b. I acknowledged and repeated back the key messages stated by the witness;
    c. I asked the witness to confirm my acknowledgement of his/her key messages
3. I am familiar with, and followed, to the extent applicable, the EEOC's guidelines for conducting workplace investigations (No 915.002), including guidance regarding fact-finding questions and credibility determinations.
4. For witnesses who were members of a bargaining unit at the time of the interview, and may potentially be subject to discipline regarding the matters discussed in the interview, I advised those employees of their right to have a Union representative present during the interview. If the employee wanted Union representation, representation was provided or, as appropriate, I obtained a signed Shop Steward Waiver.
5. I notified all witnesses that PG&E does not authorize audio or video recording of the interview.

| Signature *Diana O. Holbak* | Date 08/30/2018 |
|---|---|

# INVESTIGATION REPORT REGARDING COMPLAINT FILED BY Redacted ON JULY 27, 2018

I, Diana Holbak, investigated a complaint brought by Redacted regarding inappropriate comments of a sexual nature on July 27, 2018. Based on the intake information received from the Complainant, I focused my investigation on the following issue(s):

1. Did Don Worrell make inappropriate comments of a sexual nature in violation of PG&E's Employee Code of Conduct, Standard for a Harassment and Discrimination and Retaliation-Free Workplace?
2. Did Worrell tell [Redacted] a story with an inappropriate reference to his not being easily shocked in violation of PG&E's Employee Code of Conduct, Standard for a Harassment and Discrimination and Retaliation-Free Workplace?
3. Did Worrell comment to [Redacted] with a comparison about her appearance in violation of PG&E's Employee Code of Conduct, Standard for a Harassment and Discrimination and Retaliation-Free Workplace?
4. Did Worrell tell [Redacted] his observations of her appearance in violation of PG&E's Employee Code of Conduct, Standard for a Harassment and Discrimination and Retaliation-Free Workplace?

## I. Witnesses Interviewed

| Redacted | Complainant, Hiring Hall Operating Clerk | 07/27/2018 |
|---|---|---|
| *Don Worrell, Jr. | Subject, Supervisor | 08/03/2018 |
| *Jay West | Witness, Supervisor | 08/07/2018 |
| *Matt Jones | Witness, Supervisor | 08/22/2018 |
| Redacted | Witness, Operating Clerk | 08/23/2018 |
| Redacted | Witness, Operating Clerk | 10/26/2018 |
| Redacted | Witness, Retired Clerk | 10/29/2018 |

*Indicates interview held by phone.

**Indicates interviews conducted by another HR or Line of Business (LoB) representative. I confirmed that those representatives adhered to the interview practices outlined on page one of this report.

All parties interviewed in connection with <sup>Redacted</sup> complaint with the exception of <sup>Redacted</sup> are based in the 275 Higuera Street office located in San Luis Obispo, California.

## II. General Background

I, Diana Holbak, received this concern from superintendent, Dan Rizzo via email on July 23, 2018. Rizzo received the concern from a member of his staff supervisor, Jay West. Attached to the email from Rizzo to me (Holbak) was a write-up from West who received after speaking with his employee, Redacted on July 23, 2018. In the write-up <sup>Redacted</sup> alleges during the week of July 4, 2018 Worrell made comments to her that included references of a sexual nature and references to <sup>Redacted</sup> physical appearance. <sup>Redacted</sup> stated there were no witnesses to the conversation with Worrell that occurred in her office in San Luis Obispo the week of July 4th. <sup>Redacted</sup> stated she was hesitant to bring this complaint forward because Worrell is "old school" and did not want this concern to interfere with her ability to gain regular status employment with the company. Worrell is a supervisor and has thirty-one years with the company and has completed the following trainings: "Sexual Harassment Prevention-WBT" on February 1, 2017, "2018 Code of Conduct Training" on 03/31/2018 and "2018 Compliance & Ethics Annual Training" on 05/09/2018.

## III. Work Background

<sup>Redacted</sup> began her temporary position of operating clerk through the hiring hall on February 12, 2018, headquartered in San Luis Obispo, California and reports to Jay West. The hiring hall functions similar to that of a staffing agency in that individuals perform work for the company on a short-term basis but are not considered regular employees.

## IV. Applicable Policies

Applicable PG&E policies include Code of Conduct sections housed in document number CDT-1001M:

"**Section 3**: Our Ethical Commitments"
- o "Additional Responsibilities for PG&E Leaders" page 16

"**Section 5**: Building Trust with Each Other"

- "Harassment-Free Workplace" page 33

Document number CDT-1002S: Standard for a Harassment, Discrimination and Retaliation-Free Workplace

V.  **Investigation of Allegations**

   A.  **Evidence Regarding Conversation about Not Being Easily Shocked and Invitation of Sexual Nature**

$^{Redacted}$ alleges Worrell told her about a conversation with a former female co-worker. The former co-worker told Worrell he does not get shocked easily and, "If I said hey Don [Worrell] do you want to fuck right now?" Worrell told $^{Redacted}$ he replied to the former co-worker as, "No that wasn't surprising". Worrell then said to $^{Redacted}$, "Redacted ], if you had asked me that, I would say yes." Worrell did not recall having a conversation with $^{Redacted}$ the week of July 4, 2018 although he admits he speaks with $^{Redacted}$ daily. Worrell said he did not recall the story about an employee being shocked easily or sharing it with $^{Redacted}$. Worrell then said to the investigator, "but for the record, I don't get shocked easily." Worrell complimented $^{Redacted}$ work ethic. Worrell described her as "very smart" and that "the company should hire her." Worrell also had no recollection of telling $^{Redacted}$ that another employee asked him if he wanted to "f-ck" right now. Worrell denied saying, "$^{Redacted}$ if you had asked me that, I would say yes."

Witness Matt Jones, a peer supervisor to Worrell, did not recall Worrell telling a story about not being easily surprised with the word "f-ck." However, Jones has heard Worrell use the word "f-ck," but not about the actual act, only as profanity. Jones described Worrell as, "very direct and sometimes a little bit crude." Jones stated that he felt some of Worrell comments were unprofessional or "not right." Jones stated that over a year ago another employee, Redacted , told him that she did not want to be around Worrell and that Worrell had asked her out. $^{Redacted}$ stated the incident with Worrell occurred "2-3 years ago" and reported it to former superintendent, Mark Frauenheim, adding "I believe Mark talked with [Worrell] and then I kept my distance from [Worrell]."

Witness Redacted remembered Redacted telling her about Worrell's comment in July 2018. Redacted told her she was very uncomfortable. Redacted stated another clerk, who sits in the nearby work area, Redacted, also told Redacted about a comment made by Worrell stating, "He told Redacted something along the same lines as Redacted, but said sex stuff instead of the word f-ck. He said something like, "You can tell me anything, nothing shocks me even if it's this..." Redacted did not provide details, but stated that Worrell's comment was of a sexual nature. Redacted described Worrell as having a reputation for being inappropriate and weird with both sexes. Witness Redacted stated shortly after meeting Worrell he told her, "I want you to feel really comfortable with me; if you want to talk about your sexual life I can be the person to talk to" which Redacted states she notified Worrell that she would not speak with him about that. Redacted stated she raised her concern to a local supervisor but the response was "That's just his personality" and "he could see Don saying that". Redacted did not provide the name of the supervisor.

### B. Evidence Regarding Worrell Telling Redacted She Looked Good and It was Like Seeing an Angel

Redacted alleges Worrell told her, "Redacted you look good today it's like seeing an angel." Worrell admitted he has commented to Redacted about her physical appearance. On about Monday, July 30, 2018, he admitted that "Redacted was walking up the stairs and I said, 'For a second there I thought heaven was missing an angel because you look like an angel.'" Worrell stated that Redacted said "Ohhh Don" and then she walked off to talk to a co-worker. Worrell stated he compliments employees all the time and often uses the word "angel." Worrell stated in his sixty-years he has directed the word angel "10,000 times in my life."

Matt Jones said that Worrell has complimented Redacted and Redacted as "You look nice today" adding "it didn't seem odd." Redacted stated she has heard Worrell use the term "Angel." He said things like, "Did I just call heaven because you sound like an angel." Redacted confirmed that Worrell comments about how she looks. The comments vary from "You look very nice today" to something more descriptive. Redacted was hesitant to detail Worrell's comments because she found them "embarrassing." She did note that about a year ago Worrell made a comment about her chest and she found the comment to be "just inappropriate." Redacted stated, "I have let him [Worrell] know, I have set him straight, that if

what you're talking with me about is race, politics, sexual orientation I don't want to talk about that." [Redacted] described topics where Worrell would make inappropriate comments as ranging from "The #Metoo movement" and "race… transgender and the bathrooms things like that." [Redacted] added, "he [Worrell] seemed to want to engage in conversation about that but I didn't find it appropriate. It's just kind of creepy … it's just weird." Witness [Redacted] stated Worrell has made comments about her appearance that have caused her to feel uncomfortable such as "that's a really sexy dress" and that Worrell has commented on her nails stating, "That's really sexy I like my women with white tips".

### C. Evidence Regarding Worrell Telling [Redacted] "It All Looks Pretty Good"

[Redacted] alleges Worrell told her, "Why? Do you think you're fat because from where I'm standing it all looks pretty good." Worrell denied telling [Redacted] "Why? Do you think you're fat because from where I'm standing it all looks pretty good" and added, "I do recall offering her [Redacted] peanuts, I went and got four bags of them."

Investigative Finding:

1) Worrell denied telling [Redacted] a story involving a former female co-worker asking him if he wanted to "f-ck" and then stating that he would say yes if [Redacted] asked him. However, he did acknowledge to the investigator "for the record" that he did not shock easily. His acknowledgement tends to discredit his denial of the rest of the statement. Several employees stated that Worrell was often crude and inappropriate around the workplace. In addition, [Redacted] corroborated [Redacted] story by stating that [Redacted] had also told her about the comment and that another female employee reported Worrell making similar comments to her. Although Matt Jones did not provide specific examples, he explained that he has heard Worrell make comments that he found unprofessional and that other women told him they were uncomfortable being around Worrell. Based on Worrell's suggestive admission "for the record" that he is not easily shocked during the investigation, the contemporaneous disclosure by [Redacted] to [Redacted] of Worrell's comments, and the report of similar comments by Worrell in the workplace, I find [Redacted] report of Worrell's comments more credible than Worrell's denial.

As a Hiring hall employee seeking permanent employment with PG&E, <sup>Redacted</sup> also has little incentive to lie during the investigation.

2) The evidence is undisputed that Worrell complimented <sup>Redacted</sup> appearance and called her an angel. Worrell admitted that he has used the word "angel" toward <sup>Redacted</sup> and others "10,000 times in my life." <sup>Redacted</sup> stated that Worrell has also used the word "angel" to her and other employees. Witnesses, <sup>Redacted</sup> and Redacted reported similar behavior purported by <sup>Redacted</sup> such as feeling uncomfortable by comments made of Worrell in the past.

3) Worrell denied telling <sup>Redacted</sup>, "Why? Do you think you're fat because from where I'm standing it all looks pretty good." However, Worrell did recall offering <sup>Redacted</sup> food and he confirmed he has commented to <sup>Redacted</sup> about her physical appearance. Based on his own admission that he commented on <sup>Redacted</sup> physical appearance, I find <sup>Redacted</sup> statement regarding Worrell's comments about her appearance more credible than Worrell's denial.

## VI. Conclusion

Redacted alleged that Don Worrell made sexual comments and engaged in inappropriate comments and behavior towards her on more than one occasion. Worrell admitted calling <sup>Redacted</sup> an "angel" and commenting on her physical appearance and those allegations are SUBSTANTIATED. Although Worrell denied making comments of a sexual and inappropriate nature, witness interviews corroborate <sup>Redacted</sup> account and the allegation is SUBSTANTIATED. Witnesses, <sup>Redacted</sup> and Redacted, support <sup>Redacted</sup> claims but are outside the past twelve months.

Diana Holbak
November 27, 2018