Jacob M. Faircloth, Esq. (SB No. 305390)
Bluestone Faircloth & Olson, LLP
1825 Fourth Street
Santa Rosa, CA 95404
Telephone: (707) 526-4250
Facsimile: (707) 526-0347
Email: jacob@bfolegal.com

Attorneys for Movants/Claimants of Dan Crowley and Associates and Law Office of Robert M. Bone–See Exhibit 1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re<br><br>PG&E CORPORATION,<br><br>    and<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>    Debtors.<br>——————————————————/<br>Affects:<br>☐ PG&E Corporation<br>☐ Pacific Gas & Electric Company<br>☒ Both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088-DM<br>——————————————————/ | Case No. 19-30088-DM<br><br>Chapter 11<br><br>(Lead Case–Jointly Administered)<br><br>**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF**<br><br>Hearing:    Only if Requested<br>Location:   Via Zoom or Telephone |

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF**

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 1 of 20

# TABLE OF CONTENTS

| SECTION NO. | PAGE NO. |
|---|---|
| I. Introduction | 1 |
| II. Summary of Argument | 1 |
| III. Factual Background | 2 |
|     A. Pertinent Bankruptcy Background | 2 |
|     B. Claimant's Claims Arising From North Bay Fires | 3 |
| IV. Legal Argument | 4 |
|     A. Factors 2 and 4: Fault of Delay Does Not Rest With the Claimants, and Claimants Acted in Good Faith | 5 |
|     B. Factor 1: There is No Prejudice to the Debtor, nor is There Substantial Prejudice to FVT | 6 |
|     C. Factor 3: Length of Delay: The FVT Should Have Anticipated Late Claims "Snowballing" | 9 |
|     D. The FVT Has Already Permitted Over 870 Late Claims (Most in August and September Alone) | 11 |
| V. Conclusion | 11 |
| Declaration of Robert M. Bone | 13 |
| Certificate of Service | 17 |

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page i

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 2 of 20

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE NO.**

*Pioneer Inventory Services v. Brunswick Associates Limited Partnership,*
507 U.S. 380, 389 (1993) .................................... 4

*Corning v. Corning ( In re ZiLOG, Inc.),* 450 F. 3d 996 (9th Cir. 2006)....... 4

*ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)* 450 F 3d. 996, 1003-1007
(9th Cir. 2006) ............................................. 5, 9

*Matter of Kmart Corp.* (7th Cir. 2004) 381 F3d 709, 715 ................ 5

*In re Premier Membership Services, LLC,* 276 B.R. 709 (Bankr.S.D.FL 2002)    6

*In re Eagle Bus Mfg., Inc.,* 62 F.3d 730 (5th Cir. 1995) .................. 6, 7

*In re Pappalardo,* 210 B.R. 634 (Bankr.S.D.Fla. 1997) .................. 7

*In re Keene Corp.,* 188 B.R. 903, 910 (Bankr.S.D.N.Y. 1995) ............. 7, 8

**STATUTES**

Federal Rule of Bankruptcy Procedure 3003(c)(3) ....................... 4

Federal Rule of Bankruptcy Procedure 9006(b)(1) ....................... 4

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page ii

Case: 19-30088   Doc# 13318   Filed: 12/06/22   Entered: 12/06/22 09:44:54   Page 3 of 20

# I.
# Introduction

Movants/Claimants, in relation to Dan Crowley and Associates and Law Office of Robert M. Bone and more fully set forth in Exhibit 1–attached hereto–file this Consolidated Motion to deem timely late filed proof of claims.

This Motion is brought pursuant to the Court's 8/24/22 Order Consolidating Motions to File Late Claims (the "Order") and the Court's 9/28/2022 Revised Order Consolidating Motions to File Late Claims (the "Revised Order").

***Pursuant to the Order and Revised Order and in accordance with the procedures set forth therein, the Fire Victim Trust ("FVT") must either (a) file any opposition it has to any specific Claimants set forth herein, within 14 days, or (b) submit a proposed Order disposing of the Consolidated Motion and Claimants for which the FVT has no opposition to permitting their claims as timely.***

The FVT has advised the Court and the public that it has a non-opposition policy with respect to late claim motions filed until and including September 30, 2022, and that it intends to more heavily scrutinize late claim motions for those motions filed after that date.

# II.
# Summary of Argument

A proof of claim may be deemed timely upon a showing of excusable neglect and lack of prejudice. In this case, due to a variety of stressors and personal factors arising from the 2017 fires ("North Bay Fires"), Claimants were unable to timely file their proofs of claims. Because there is no danger of prejudice to the Debtors, as Debtors' estates are solvent, and the Trust appears to be solvent (with only *de minimis* diminution in its value), the Motion should be granted to allow the Claimants to have their respective claims deemed timely.

Per the Court's Order, a brief statement for particular circumstances for each Claimant is set forth in Exhibit 1, attached hereto.

//

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 1

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 4 of 20

## III.
## Factual Background

**A.      Pertinent Bankruptcy Background.**

On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company ("Debtors" or "PG&E") commenced the above-captioned voluntary Chapter 11 cases ("Chapter 11 Cases"). PG&E's Chapter 11 filings were necessitated by a confluence of factors resulting from catastrophic fires that occurred in Northern California prior to the Petition Date, and PG&E's potential liabilities arising therefrom.

The deadline for filing proofs of claim with respect to any prepetition claim including, but not limited to, all claims of Fire Claimants, Wildfire Subrogation Claimants, Governmental Units and Customers, and all secured and priority claims against the Debtors was October 21, 2019, at 5:00 p.m. ("General Bar Date").

The deadline for filing claims was extended to December 31, 2019 ("Extended Bar Date"), solely for the benefit of any non-governmental Fire Claimants who did not file proofs of claim by the General Bar Date. [See Docket No. 4672]

On January 31, 2020, as Docket No. 5590, Debtors filed an Amended Chapter 11 Plan Debtor's and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated January 31, 2020.

On February 7, 2020, as Docket No. 5700, Debtors filed a Disclosure Statement for the Amended Plan.

On February 19, 2020, as Docket No. 5835, Debtors filed their Motion for Entry of an Order (I) Approving Form and Manner of Notice of Hearing on Proposed Disclosure Statement; (II) Establishing and Approving Plan Solicitation and Voting Procedures; (III) Approving Forms of Ballots, Solicitation Packages, and Related Notices; and (IV) Granting Related Relief ("Solicitation Procedures Motion").

On March 17, 2020, the Solicitations Procedures Motion was Approved.

After filing multiple iterations of the Plan, on June 19, 2020, as Docket No. 8048, Debtors filed an Amended Joint Chapter 11 Plan of Reorganization dated June 19, 2020

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF
CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND
DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF - Page 2

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 5 of 20

(the "Final Plan").

One June 20, 2020, post-voting and hotly contested confirmation hearings, the Bankruptcy Court entered an order confirming the Final Plan. [Docket No. 8053]

Prior to December 31, 2019, over 82,000 fire victims filed timely claims. Since December 31, 2019, thousands of late claims have been submitted. Also since December 31, 2019, nearly 1,000 late claims of fire victims have been permitted as timely by the Court through Stipulations and Orders. Until very recently, the FVT did not oppose these motions or claims. It's clear by the volume of late claims that many families and individuals impacted by the North Bay Fires were unaware that they had any remedies, claims for relief, or causes of actions.

**B.      Claimants' Claims Arising from the North Bay Fires.**

Per the Court's Order, a brief statement for particular circumstances for each Claimant is set forth in Exhibit 1, attached hereto.

With that said, the Claimants largely find themselves in very similar situations. All of the Claimants are survivors of the North Bay Fires which occurred in 2017. All of the Claimants have valid claims for damages arising from the North Bay Fires, including nuisance and emotional distress–due to proximity of the zone of danger to the North Bay Fires. Most, if not all, evacuated from the fires, with their homes covered in soot and ash.

Due to substantial trauma, relocation, and the immense pressure resulting from the foregoing, the Claimants did not become aware of the relevant bar dates in time to timely file the claim. Most were not even aware of their right to file claims or the existence of the FVT. It was not until after the Extended Bar Date and Claims Questionnaire Deadline (and very recently) that the Claimants realized their damages may be compensable and that they should file a proof of claim for their losses.

Here, in particular, none of the Claimants had knowledge of their entitlement to file a claim within the Extended Bar Date or of the existence of the FVT. Had they known, they would have timely submitted claims. Outside of "word of mouth" from

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF
CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND
DECLARATION OF ROBERT M. BONE  IN SUPPORT THEREOF - Page 3

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 6 of 20

other fire victim claimants, no such notice or alert was provided, and many such parties had no good way of knowing that their claims were actionable or existed, nor did they have knowledge of the claims process.

Based on the foregoing, the Claimants bring this Consolidated Motion to timely permit filing of their claims.

## IV.
## Legal Argument

In a Chapter 11 case, the time to file a proof of claim may be extended under certain Circumstances. Federal Rule of Bankruptcy Procedure ("FRBP") 3003(c)(3); FRBP 9006(b)(1). The bankruptcy court has "broad equitable powers" in a Chapter 11 case with respect to the timing requirements for proofs of claim *Pioneer Inventory Services v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 389 (1993). Moreover, Rule 9006(b)(1) allows "late filings caused by inadvertence, mistake, or carelessness, not just those caused by intervening circumstances beyond a party's control." *Id*, at 381. Even a creditor that did in fact receive notice may file a proof of claim notwithstanding the expiration of a claims bar date in a Chapter 11 case upon a showing of "excusable neglect." *Id.*, at 394-95 ("Had respondents here been prevented from complying with the bar date by an act of God or some other circumstance beyond their control, the Bankruptcy Court plainly would have been permitted to find 'excusable neglect' [under FRBP 9006].").

In considering whether a creditor's failure was the product of "excusable neglect," the Court should take account of the following: all relevant circumstances surrounding the party's omission, including (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delayed, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.*, at 395; See also *Corning v. Corning (In re Zilog, Inc.),* 450 F.3d 996 (9th Cir. 2006)(noting *Pioneer's* non-exhaustive list of relevant factors).

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 4

1     Significantly, a late-filed proof of claim is allowable where a creditor had actual notice of the bankruptcy, but, due to some external reason, failed to file a proof of claim or did not realize that she or he had to prior to the bar date.  See, e.g., *ZiLOG, Inc. V. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1003-1007 (9th Cir. 2006) (applying the *Pioneer* factors).  Notably in this case, there was no widely distributed notice to all residents impacted by the subject fires.  In which case, the Claimants had no actual notice-discussed more fully hereinbelow.  This is relevant because without knowledge of the bankruptcy case, the parties could not file claims and were not alerted that their claims were actionable–which goes to many of the primary *Pioneer* factors.

    Here, all four *Pioneer* factors–as well as the fifth engrafted onto the *Pioneer* analysis by some courts–weigh in favor of the Claimants.

**A.     Factors 2 and 4: Fault of Delay Does Not Rest With the Claimants, And Claimants Acted in Good Faith.**

    Of the four factors above, fault in the delay is preeminent. *Matter of Kmart Corp.* (7th Cir. 2004) 381 F3d 709, 715.  And, importantly, a late-filed proof of claim is even allowable where a creditor had actual notice of the bankruptcy, but, due to some external reason, failed to file a proof of claim or did not realize that she or he had to file prior to the bar date.  See, e.g., *ZiLOG, Inc. V. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1003-1007 (9th Cir. 2006) (applying the *Pioneer* factors).

    Here, the delay in filing the late claims is reasonable and the extent of the delay was not within the control of the Claimants.  This considers that very shortly after becoming aware of the damages that arose from the North Bay fires might be compensable, the Claimants obtained counsel and filed proofs of claims–after having learned from family and friends (namely, other claimants) that their claims might be compensable–See Declaration of Bob Bone, filed herewith, and Exhibit 1.

    The Ninth Circuit, relying on the *Pioneer* factors, held that a bankruptcy court abused its discretion in declining to excuse various women's failure to timely file proofs of claims (with respect to retention bonuses), where debtor's general counsel's email was

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 5

Case: 19-30088   Doc# 13318   Filed: 12/06/22   Entered: 12/06/22 09:44:54   Page 8 of 20

not calculated to inform employees that they needed to file their wage claims against the debtor in bankruptcy court. *In re ZiLOG, Inc.*, *supra*, at 1003. Compare this to the present Claimants, who received absolutely no notice whatsoever of their potential entitlement to file claims. This lack of substantive notice squarely places many individuals and families without any knowledge of their remedies–including the Claimants. This is not a critique, but it is a relevant reality.

Notably in the PG&E cases, there was no widely distributed notice to all residents which were impacted by the subject fires–despite other efforts to notice claimants and potential claimants.

Moreover, the following other facts and details are relevant: (1) COVID was breaking out on the eve of expiry of the claims deadline [See Paragraph 5 of Declaration of Robert M. Bone–filed herewith]; (2) emotional distress claims remain dormant, particularly for children; (3) health issues associated with the wildfires may not arise for years later or claimants may not connect their health issues to the particular wildfires in question; and (4) the Claimants were completely and totally unaware of their claims and the claims process [See Paragraphs 2-4 of Declaration of Robert M. Bone–filed herewith]; and (5) very shortly after discovering their claims, the Claimants filed this Consolidated Motion, and they did so in the manner prescribed by the Court's Orders.

Section C hereinbelow, further delves into the foregoing issues of "fault of delay" and Claimants' "good faith," as it relates to "length of delay". Based on the foregoing, the Claimants believe these two factors weigh heavily in support of granting the Motion.

**B.  Factor 1: There is No Prejudice to the Debtor, Nor Is There Substantial Prejudice to FVT.**

First, there is no danger of prejudice to the Debtors in this case–which the FVT has conceded in various objections it has made to similar motions. Thus, the first *Pioneer* factor weighs in favor of the Claimants. *Pioneer* requires prejudice "to the debtor," not prejudice to other creditors. *In re Premier Membership Services, LLC*, 276 B.R. 709 (Bankr.S.D. FL 2002). Most courts that have addressed the issue of prejudice

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 6

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 9 of 20

conclude that the only relevant inquiry is whether the debtor, not other creditors, would be prejudiced as the result of permitting a late claim. Accordingly, in a liquidating plan there is very little danger of prejudice. See, e.g., In re *Eagle Bus Mfg., Inc.*, 62 F.3d 730 (5th Cir.1995); *In re Pappalardo*, 210 B.R. 634 (Bankr.S.D.Fla.1997).

In *Pappalardo*, a case in which the movant's $4 million claim was nearly equal to all of the other $4.7 million in unsecured claims combined, the Court noted "[t]he only prejudice that may exist is to the unsecured creditors. However, the effect of a late filed known claim on unsecured creditors is not a relevant inquiry under *Pioneer*." *Pappalardo*, 210 B.R. at 645 (emphasis in original). Obviously, every late claim, if ultimately allowed, will dilute the recovery to other creditors. If such circumstances were to be recognized as constituting prejudice which could prevent enlargement of time, then it would be virtually impossible to ever grant relief to extend the time to file proofs of claim–which is not the case and would strip the court of its discretion and any valuing in weighing the *Pioneer* factors.

Despite the foregoing, the Claimants note that the FVT has objected to other late claims motions filed in October and November, asserting that the Trust is being substantially diluted. On the issue of prejudice to the estate (or, here, the Trust), the FVT has stated in such objections–without providing any substantive numbers or data whatsoever–that "[i]f number of Claims channeled to the Trust continue to increase, the Trust may not be able to increase the pro rata percentage beyond the current 45%, making it objectively detrimental to tens of thousands of claimants who filed their claims before December 31, 2019…"

Should the Court analyze prejudice to the FVT (as opposed to the Debtors) and wish to determine the extent, if any, that other unsecured creditors will be impacted by these late claims, the Claimants argue that the FVT's position is (a) without any factual basis, and (b) the extent of the purported prejudice is vastly overstated and, therefore, this factor also tips in favor of the Claimants.

In particularly, any prospect of prejudice beyond solvency is unlikely, given that

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF
CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND
DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF - Page 7

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 10 of 20

(a) all distributions have not yet been made; and (b) the aggregate value of the Claimants' claims relative to the value of the FVT is low. On this issue, some Courts, for example, have looked at prejudice through the eyes of the "estate" or creditors. See, e.g., *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995). In so doing, those courts have looked at the size of the late claim in relation to the estate, as a consideration in determining prejudice. This analysis also tips in favor of the Claimants.

Here, if the court were to entertain the FVT's dilution argument, this would suggest that the Trust's value is only in the tens of millions–which is simply not the case. The number of late claims subject to late claim motions that the FVT has objected to (including this one) is no more than 175 claims. Assuming all of these claims are allowed and receive determination notices, the total value of the initial 45% pro rata share would likely not exceed $15-18 million–which is incomprehensibly small in comparison to both the original size of the Trust and the present value of the Trust.

In fact, the Trust's current value likely exceeds $4.7 billion, given that it holds over 265 million shares of PG&E stock, in addition to whatever other cash/funds it has on hand–which is likely close to $1 billion. With $PCG trading around $15.70/share, the stock value alone exceeds $4.1 billion. Adding in cash on hand and the Trust has a value likely exceeding $5 billion.

Moreover, and to provide relevant and important context: this estimated $15-18 million sum reflects approximately **0.13%** of the Trust's original total $13.5 billion value, and approximately **0.36%** of the current value of the Trust (estimated to be over $5 billion). Of course, such figures weigh heavily in favor of admitting the claims and in evaluating prejudice of unsecured creditors. No doubt there *may* be very minor dilution (which should otherwise have been anticipated, given the larger context and total number of individuals impacted by the fires), but such dilution is *di minimis*, as opposed to completely eroding, as counsel for the FVT has stated in its various objection papers to other late claims motions. Counsel for the FVT's statements should be alarming to the Court, but not for the reasons counsel for the FVT states.

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 8

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 11 of 20

In light of the foregoing, given the lack of prejudice to the Debtor and *di minimis* dilution to the Trust, this *Piorneer* factor ways heavily in favor of granting the Motion.

C.   **Factor 3: Length of Delay: The FVT Should Have Anticipated Late Claims "Snowballing".**

The Ninth Circuit, relying on the *Pioneer* factors, held that a bankruptcy court abused its discretion in declining to excuse various women's failure to timely file proofs of claims (with respect to retention bonuses), where debtor's general counsel's email was not calculated to inform employees that they needed to file their wage claims against the debtor in bankruptcy court.  *In re ZiLOG, Inc.*, *supra*, at 1003.  This is relevant here, because the FVT has put forth an interesting argument in some of the objections it has filed: the FVT asserts that the Court "has already considered and addressed the adequacy of notice to Fire Victims," in an effort to foreclose on discussion relating to the same. Surely, however, the Court can look at whether the Claimants (a) actually had notice, or were aware of their claims in time to timely submit them, and (b) whether that notice was adequate, under the present circumstances, for consideration of the Motion/Claims–all of which relates to length of delay.

To further delve into this topic and show that the FVT should have anticipated late claims motions–given the circumstances–the Claimants put forth the following counterpoints:

First, the Court points out in its Revised Order that "[s]ome parties have filed new proofs of claim but have not yet made motions to allow such claims."  In fact, there are likely thousands of untimely proofs of claims that have been filed, but for which no motions have been brought.  As the Court pointed out, "the FVT will have to file appropriate objections to the claims to overcome the presumption of allowability."  The FVT gets weekly (if not daily) updates concerning the proofs of claims filed in the case. Approximately 16,935 proofs of claims have been filed since January 1, 2020.[1]  On that

---

[1] This estimate was arrived at by looking at the first Proof of Claim Number issued for January 2020 (92702) and the last Proof of Claim Number issued through October 21,

basis alone, the FVT is aware of a substantial quantity of claims in existence with untimely claims–many of which likely did not receive sufficient notice. And, the number of claims brought in this Motion is a small fraction of that total.

Second, the logical (and anticipated) reason that late claims motions "snowballed" is threefold: (a) Many timely claims for non-economic damages finally started to receive their pro rata distributions, resulting in fire victims receiving funds and advising family, friends, and neighbors of the same; (b) individuals that had untimely claims accepted (which largely started in early 2022) also began notifying families, friends, and neighbors of the same; and (c) the community came out of the COVID lock downs, which had largely consumed the country for nearly two years. Prior to these occurrences, there was little reason or basis for the Claimants to discover their claims and/or the claims process, in which case the length of delay is reasonable and valid–and should have been anticipated.

Essentially, what occurred is that handful of motions were filed and it started to grow from there, which is both reasonable and foreseeable. And, it appears to be tapering, which is also anticipated, and cuts against the notion that this will never end. All snowballs stop. Word spread organically as families and individuals impacted by the fires became aware of that they had remedies and claims—having no prior knowledge of the same.

The FVT states in various objections that it has filed that the Court "has already considered and addressed the adequacy of notice to Fire Victims. As a result of the Court's careful consideration of this issue and the thoughtful manner in which the Debtors redoubled their efforts to reach additional Fire Victims, and many thousands of claimants, some of whom suffered unfathomable losses, were able to file their claims in a timely manner." However, this argument does three things: (1) it conveniently strips away and ignores the Court's broad discretion to permit late filing of claims; (2) it

---

2022 (109637).

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 10

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 13 of 20

conveniently dismisses the specific and shared circumstances that hundreds of families and individuals found themselves in, after having suffered from the subject fires; and (3) it ignores that, despite the Court's and PG&E's efforts, hundreds of families and individuals still did not receive any substantive notice–which should have been anticipated. The FVT's arguments fundamentally fail to address the heart of the issues at hand, which is that despite the efforts to notice all victims, hundreds of victims still likely remained unaware of the case, their damages, and the claims process. All of which is relevant to the Motions and provides context with respect to the length of delay.

Based on the foregoing, and under the circumstances, the length of delay and "snowballing" of late claims is reasonable and tips in favor of granting the Motion.

D. **The FVT Has Already Permitted Over 870 Late Claims (Most in August and September Alone).**

Finally, the FVT has been routinely permitting late proofs of claims to be allowed, where such tardiness is excusable under the *Pioneer* factors and foregoing arguments. Only until very recently did the FVT begin to no longer sign-off on and object to such tardy claims. In which case, the Claimants contend that good cause exists and the Motion should be granted, given that good cause has existed for over 870 similarly situated claims (which includes over 1,500 individual claimants). Or, in the alternative, that the FVT should be estopped from wholly opposing all such claims, where the *Pioneer* factors are clearly met and the FVT has fundamentally failed to show substantial prejudice to the Debtor (or the Trust).

V.
**Conclusion**

Based upon the foregoing, the Claimants hereby request that the Court grant this Consolidated Motion and deem timely the Subject Proofs of Claims.

WHEREFORE, the Claimants pray for an order:

1. Granting the Motion in its entirety;

2. Finding that the Subject Proofs of Claims filed by the Claimants are to be allowed as having been timely filed; and

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 11

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 14 of 20

3. Granting such other or further relief as the Court deems just and proper.

DATED: December 6, 2022    BLUESTONE FAIRCLOTH & OLSON, LLP

By /S/ Jacob M. Faircloth
    Jacob M. Faircloth
    ATTORNEY FOR THE CLAIMANTS

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 12

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 15 of 20

## DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF

I, Robert M. Bone, declare as follows:

1. I am over eighteen (18) years old and am competent to testify as to the matters set forth hereinbelow, from my personal knowledge–except as to those matters set forth upon information and belief.

2. I am the sole owner of the Law Office of Robert M. Bone and am an attorney licensed to practice in the State of California. If called upon as a witness, I could and would competently testify as to the facts set forth in this Declaration, which are made based upon my personal knowledge or information collected by my staff from the Claimants that my firm and co-counsel represent. Such representation is set forth more fully in Exhibit 1, attached hereto, with further brief explanations received from each Claimant that my firm represents. My office is also working with and associated on behalf of claimants in the California North Bay Fire cases with Daniel Crowley and Associates.

3. I have reviewed the foregoing Motion to Allow/Deem Timely Late Filing of Claimants Proofs of Claims, and Memorandum of Points and Authorities in Support Thereof (the "Motion") and the attached Exhibit 1. To the best of my information and knowledge, the factual allegations in the Motion are true and correct–as to the Claimants my firm represents. For the reasons summarized in the Motion, I believe that it is appropriate to permit late filing of the various claims of the Claimants that my firm represents.

4. In anticipation of the FVT objecting to this Motion, I believe it is important for the Court and parties to look at the larger context, regarding both (1) claimants and their joint situation, and (2) the number of late claims compared to timely claims.

5. I've reviewed some of the FVT's objections to similar motions. The FVT does not seem to appreciate the situation that many fire victims find themselves in or why many were not in a position to file timely claims. This is not a criticism of the FVT, but I

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 13

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 16 of 20

do think it is important to express why this Motion is reasonable and why granting it is equitable. Having spoken and worked with hundreds of claimants, it is not difficult to see how many were not aware of the PG&E case and claims process or their damages for evacuating (and from the soot and ash and smoke). Most, if not all, of the Claimants have been subjected to numerous wildfires and numerous evacuations since 2017. The trauma has built up. And, the experiences from dealing with these wildfires and evacuations have stacked and blended together. Many families and claimants–especially the elderly (for which there are many) and children–can barely remember which fire was caused by what, which evacuation was when, the extent of any smoke/soot/ash damage, and so on (at least without being asked to sit down and specifically try and remember–as we do with them during the claims questionnaire process). By now, evacuating due to the threat of wildfires has almost become a part of their lives. This does not mean their trauma is lessened, but it does give context and reason as to why hundreds of families and individuals did not know that they had recoveries and actionable damages stemming from the 2017 North Bay Fires. They've suffered damages, mental anguish, nuisance, and the like, from many wildfires–damages for many of which are not actionable whatsoever, because of natural causes. Here, however, their damages are actionable, and they only recently became aware of this information.

6. Based on my review of the FVT's objections, Counsel for the FVT seems to believe that the Claimants incomprehensibly substantial time to file claims and there's no good reason they could not have filed their claims, but, given the larger context, it's actually quite easy to see why many families with young children and elderly individuals might not have been able to (and didn't). There are two primary reasons for this, which I've discussed below:

a. First, very little happened from December 2019 (the extended bar date) through early 2022 that would have given Claimants information on their damages or for filing claims. It would seem that those left in the dark would continue to be left in the dark unless something happened to alert them, but nothing in the interim did happen, and
**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF
CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND
DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 14

there's good reason for it: COVID. The majority of this time the entire community was in a pandemic and in lockdowns and dealing with COVID restrictions. This was especially difficult for families with children and elderly individuals.

      b.     Second, it's reasonable that a small percentage of claimants would have slipped through the cracks and have late claims. The inquiry should be looking at the quantity of such late claims vs. the total number of timely claims. In that larger context, the number of late claims is quite small and reasonable. Counsel for the FVT, on the other hand, simply looks at there being "hundreds" (without context) and would suggest it's unreasonable per se. However, the reason that the number 'substantially' increased at this point in time is also reasonable and articulative: Many nuisance and emotional distress claims began to be determined, resulting in many families advising their neighbors, families, and friends that they, too, likely have claims from the 2017 fires. These efforts should be applauded, not denigrated, and it was also foreseeable, given the added context.

      7.     Additionally, our firms have inquired with the Claimants listed in Exhibit 1 with respect to their claims to determine whether: (1) they were aware of the FVT's existence within approximately 1-2 months of filing their claims, or (2) if they were aware of the existence of the FVT, whether they understood that damages for nuisance and/or emotional distress may be compensable through the FVT. Upon information and belief–based on such inquiries–I understand that all of the Claimants listed in Exhibit 1 either: (1) were not aware of the existence of the FVT until within approximately 1-2 months of filing their subject claims, or (2) to the extent that they were aware of the existence of the FVT, they did not know that damages (theirs included) for emotional distress and/or nuisance might be compensable from the FVT. All of the Claimants were unable to file timely claims due to circumstances beyond their control, since they had no knowledge of the claims process and the FVT–or even that the Debtors might have been liable for any damages they suffered. The reasons I've discussed in detail above give credence to this position.

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 15

Case: 19-30088   Doc# 13318   Filed: 12/06/22   Entered: 12/06/22 09:44:54   Page 18 of 20

8. Moreover, I have met with and spoken to hundreds of claimants. From our conversations and discussions, I believe that the following other facts and details are relevant: (1) COVID was breaking out on the eve of expiry of the claims deadline; (2) emotional distress claims remain dormant, particularly for children; (3) health issues associated with the wildfires may not arise for years later or claimants may not connect their health issues to the particular wildfires in question; (4) all of the Claimants were completely and totally unaware of their claims and that their claims were actionable; (5) very shortly after discovering their claims, the Claimants brought this Consolidated Motion, and they did so in the manner prescribed by the Court's Orders; and (6) most, if not all, of the Claimants have suffered from numerous wildfires and numerous evacuations, many of which are not actionable against any one party and blend together over time–meaning without direct notice from the Debtors or FVT, they would have little knowledge of their claims being actionable.

9. Here, in particular, none of the Claimants had knowledge of their entitlement to file a claim within the Extended Bar Date, nor were they aware of the existence of the FVT–or that their particular damages from the 2017 North Bay Fires were even actionable. Had they known, they would have timely submitted claims. Outside of "word of mouth" from other fire victim claimants, no such notice or alert was provided, and many such parties had no good way of knowing about their claims and the claims process. The FVT has stated–in various objections to similar motions–that this is irrelevant. However, I believe this provides important clarity and context as to why the Claimants did not file their claims until very recently.

I declare under penalty of perjury, under the laws of the United States and of the State of California, that the foregoing is true and correct. Executed at Santa Rosa, CA, on December 6, 2022.

By: <u>/S/ Robert M. Bone</u>
      Robert M. Bone

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 16

Case: 19-30088　Doc# 13318　Filed: 12/06/22　Entered: 12/06/22 09:44:54　Page 19 of 20

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation fo the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's filing system or by contacting counsel of record.

DATED: December 6, 2022                BLUESTONE FAIRCLOTH & OLSON, LLP

By ___*/S/ Jacob M. Faircloth*___
Jacob M. Faircloth
ATTORNEY FOR THE CLAIMANTS

**CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** - Page 17

Case: 19-30088    Doc# 13318    Filed: 12/06/22    Entered: 12/06/22 09:44:54    Page 20 of 20