Robert W. Thompson, Esq. (SBN: 250038)
Casey A. Gee, Esq. (SBN: 284830)
TLO LAW, P.C.
700 Airport Blvd., Suite 160
Burlingame, CA 94010
Telephone: (650) 513-6111
Facsimile: (650) 513-6071
E-mail: bobby@tlopc.com; casey@tlopc.com

*Attorneys for Movants*
*Davin and Debbie Abrahamian*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: <br><br> **PG&E CORPORATION,** <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> Debtors. <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | **Case No. 19-30088 (DM)** <br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **REPLY IN SUPPORT OF MOTION TO ALLOW/DEEM TIMELY LATE FILING OF PROOF OF CLAIM BY DAVIN AND DEBBIE ABRAHAMIAN; DECLARATION OF CASEY A. GEE** <br><br> **Date:** December 13, 2022 <br> **Time:** 10 a.m. <br> **Location:** Via Zoom or Telephone <br> U.S. Bankruptcy Court <br> Courtroom 17 <br> 450 Golden Gate Ave., 16th Fl. <br> San Francisco, CA <br> **Judge:** Hon. Dennis Montali |

# I.

## PROCEDURAL BACKGROUND

On November 14, 2022, Davin Abrahamian and Debbie Abrahamian ("Movants") filed a motion seeking an order to allow and deem timely their Proof of Claim (No. 109640) timely. *See* Dkt. No. 13249. On November 23, 2022, the Fire Victim Trustee ("FVT") filed an Objection to Movants' Motion. *See* Dkt. No. 13281.

# II.

## LEGAL ARGUMENT

Contrary to FVT's Opposition, Movants' reasons and circumstances for filing their claim after the bar date was significantly more than just ignorance of the deadline or their claims. Movants clearly stated that in addition to not knowing of the bar date, the substantial trauma from evacuating, relocating, and continuing to seek treatment for Mr. Abrahamian's serious medical conditions caused them to be unaware of their ability to make a claim. *See* Dkt. No. 13249 at 9. Because the Court only wanted a brief statement of Movants' particular circumstances, Movants did not go into the specific, private details of the medical conditions and treatments. In an effort to provide further information and confirmation that these circumstances were far from "boilerplate," however, Movants will provide additional details for the Court's consideration.

Approximately one year before the Camp Fire, Mr. Abbrahiam became very sick and collapsed. Gee Decl., ¶ 3. Within a month, he had lost 55 pounds. *Id.* He obtained treatment from three medical specialists in Paradise, but continued to have serious health issues up to and after the Camp Fire. *Id.* Of the three specialists who had been treating Mr. Abrahamian, two moved due to the Camp Fire. *Id.* Not only did Mr. Abrahamian lose two of his doctors after the fire, but finding alternative providers to continue his treatment was further complicated by the Paradise healthcare system being closed and/or disrupted by the fire. *Id.* Mr. Abrahamian's one remaining specialist, Lionel S. Foster, M.D., will confirm that while being under his care since 2017, Mr. Abrahamian has required five medically necessary outpatient procedures and at least one surgical operation. *Id.*

After the fire, without access to adequate medical attention and while displaced in a hotel,

- 1 -
MOTION TO ALLOW/DEEM TIMELY LATE FILING OF PROOF OF CLAIM

Mr. Abrahamian became so sick he was unable to get out of bed.  Gee Decl., ¶ 4.  Mrs. Abrahamian did her best to care for Mr. Abrahamian by herself while they searched for professional medical treatment and attempted to rebuild their lives.  *Id.*  Any remaining time and energy went to trying to return to their home, which required substantial work to become habitable again including replacing the well, buying a generator due to having no power, and removing the ash and soot from their home and personal property.  *Id.*  Movants' property had hundreds of bushes and trees that were damaged and destroyed in the fire.  *Id.*  Over 150 damaged trees had to be removed including damaged trees that posed a risk of falling on their home.  *Id.*  Movants attempted to save approximately 35-40 trees, but these trees are now showing signs of dying.  *Id.*

      This is not a case, as FVT suggests, where Movants were "waiting to hear what others had received from the Trust" or had social media posts encourage them to file late claims to obtain "'signficant amounts' for certain claims that did not require any economic damages."  *See* Dkt. No. 13281 at 3 fn 2, and 11.  Since the fire, Movants have been dealing with serious medical issues in addition to the trauma of evacuating, relocating, and rebuilding their lives.  As soon as they learned that they could pursue claims against PG&E, they filed a proof of claim.

## III.

## CONCLUSION

      For the reasons set forth above, Movants respectfully request that this Court enter an Order pursuant to Bankruptcy Rule 9006(b)(1) granting Movants' Motion.

DATE:  December 6, 2022           Respectfully submitted,

                                    TLO LAW, P.C.

                                    By:   /s/ Casey A. Gee
                                          ROBERT W. THOMPSON
                                          CASEY A. GEE
                                          Attorneys for Movants
                                          Davin Abrahamian and Debbie Abrahamian

# DECLARATION OF CASEY A. GEE

I, Casey A. Gee, declare as follows:

1. I am over eighteen (18) years old and am competent to testify as to the matters set forth hereinbelow, from my personal knowledge-except as to those matters set forth upon information and belief. If called upon as a witness, I could and would competently testify as to the facts set forth in this Declaration.

2. I am an attorney with TLO Law, PC and am an attorney licensed to practice law in the State of California. I am also an attorney for the Movants Davin and Debbie Abrahamian.

3. Approximately one year before the Camp Fire, Mr. Abbrahiam became very sick and collapsed. Within a month, he had lost 55 pounds. He continued to have serious health issues up to and after the Camp Fire. Of the three specialists who had been treating Mr. Abrahamian, two moved due to the Camp Fire and he had difficulty finding alternative providers to continue his treatment because the Paradise healthcare system was closed or disrupted by the fire. Lionel S. Foster, M.D. drafted a letter confirming that Mr. Abrahamian has required five medically necessary outpatient procedures and at least one surgical operation.

4. After the fire, Mr. Abrahamian became so sick he was unable to get out of bed. Mrs. Abrahamian cared for him while they sought professional medical treatment and attempted to rebuild their lives. Making their home habitable again required replacing the well, buying a generator, and removing the ash and soot. Movants' property had hundreds of bushes and trees that were damaged and destroyed in the fire. Over 150 damaged trees had to be removed including damaged trees that posed a risk of falling on their home. Movants attempted to save approximately 35-40 trees, but these trees are now showing signs of dying.

I declare under penalty of perjury under the laws of the United States and of the State of California, that the foregoing is true and correct. Executed on December 6, 2022.

By:    /s/ Casey A. Gee
        CASEY A. GEE

# CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's filing system.

Executed this 6th day of December 2022.

By :     /s/ Casey A. Gee
           CASEY A. GEE