**LAW OFFICE OF PAUL M. JAMOND**
PAUL M. JAMOND  (Bar No. 61613)
718 Orchard Street
Santa Rosa, California  95404
Telephone:  (707) 526-4550
Email: jamond@pacbell.net

Attorneys for Movants/Claimants of Law Offices of
Michael S. Henderson - see Exhibit 1

<br>

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | CASE NO.:  19-30088-DM |
| PG&E CORPORATION, | Chapter 11 |
| And | (Lead Case - Jointly Administered) |
| PACIFIC GAS AND ELECTRIC COMPANY | **CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF MICHAEL S. HENDERSON IN SUPPORT THEREOF** |
| Debtors. | |
| _____/ | |
| Affects: | Hearing:   Only if Requested |
| ☐      PG&E Corporation | Location.:  Via ZOOM or Telephone |
| ☐      Pacific Gas & Electric Company | |
| X      Both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088-DM | |
| _____/ | |

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

# TABLE OF CONTENTS

**SECTION NO.**                                                                  **PAGE NO.**

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      Pertinent Bankruptcy Background . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      Claimants' Claims Arising From North Bay Fires . . . . . . . . . . . . . . . . . 3

        C.      Claimants Late Claims Are The Result Of Excusable Neglect . . . . . . . . . . 4

        D.      No Prejudice Will Result From Allowing Claimants' Late Claims . . . . . . . . 6

IV.     Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Factors 2 and 4: Fault of Delay Does Not Rest With the
                Claimants, and Claimants Acted in Good Faith . . . . . . . . . . . . . . . . . . 8

        B.      Factor 1: There is No Prejudice to the Debtor, nor is There
                Substantial Prejudice to FVT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      Factor 3: Length of Delay: The FVT Should Have Anticipated
                Late Claims "Snowballing". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        D.      The FVT Has Already Permitted Over 870 Late Claims
                (Most in August and September Alone). . . . . . . . . . . . . . . . . . . . . . . 14

V.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Declaration of Michael S. Henderson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**CASES**                                                                **PAGE NO.**

*Pioneer Inventory Services v. Brunswick Associates Limited Partnership*
507 U.S. 380,389 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 9, 10, 12, 14, 15

*Corning v. Corning ( In re ZiLOG, Inc.)* 450 F. 3d 996 (9th Cir. 2006). . . . . . . . . . . . . . . . . . 7

*ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)* 450 F 3d. 996, 1003-1007
(9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 12

*Matter of Kmart Corp.* (7th Cir. 2004) 381 F3d 709, 715 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Premier Membership Services, LLC*, 276 B.R. 709 (Bankr.S.D.FL 2002) . . . . . . . . . . . 9

*In re Eagle Bus Mfg., Inc.*, 62 F.3d 730 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Pappalardo*, 210 B.R. 634 (Bankr.S.D.Fla. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Keene Corp.*, 188 B.R. 903, 910 (Bankr.S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATUTES

Federal Rule of Bankruptcy Procedure 3003(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rule of Bankruptcy Procedure 9006(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

# I.

## Introduction

Movants/Claimants, in relation to Law Offices of Michael S. Henderson and more fully set forth in Exhibit 1–attached hereto–file this Consolidated Motion to deem timely late filed proof of claims.

This Motion is brought pursuant to the Court's 8/24/22 Order Consolidating Motions to File Late Claims (the "Order") and the Court's 9/28/2022 Revised Order Consolidating Motions to File Late Claims (the "Revised Order").

**Pursuant to the Order and Revised Order and in accordance with the procedures set forth therein, the Fire Victim Trust ("FVT") must either (a) file any opposition it has to any specific Claimants set forth herein, within 14 days, or (b) submit a proposed Order disposing of the Consolidated Motion and Claimants for which the FVT has no opposition to permitting their claims as timely**.

The FVT has advised the Court and the public that it has a non-opposition policy with respect to late claim motions filed until and including September 30, 2022, and that it intends to more heavily scrutinize late claim motions for those motions filed after that date.

# II.

## Summary of Argument

A proof of claim may be deemed timely upon a showing of excusable neglect and lack of prejudice. In this case, due to a variety of stressors and personal factors arising from the 2017 fires ("North Bay Fires"), Claimants were unable to timely file their proofs of claims. Because there is no danger of prejudice to the Debtors, as Debtors' estates are solvent, and the Trust

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

appears to be solvent (with only *de minimis* diminution in its value), the Motion should be granted to allow the Claimants to have their respective claims deemed timely.

Per the Court's Order, a brief statement for particular circumstances for each Claimant is set forth in Exhibit 1, attached hereto.

## III.

### Factual Background

**A.** **Pertinent Bankruptcy Background**

On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company ("Debtors" or "PG&E") commenced the above-captioned voluntary Chapter 11 cases ("Chapter 11 Cases"). PG&E's Chapter 11 filings were necessitated by a confluence of factors resulting from catastrophic fires that occurred in Northern California prior to the Petition Date, and PG&E's potential liabilities arising therefrom.

The deadline for filing proofs of claim with respect to any prepetition claim including, but not limited to, all claims of Fire Claimants, Wildfire Subrogation Claimants, Governmental Units and Customers, and all secured and priority claims against the Debtors was October 21, 2019, at 5:00 p.m. ("General Bar Date").

The deadline for filing claims was extended to December 31, 2019 ("Extended Bar Date"), solely for the benefit of any non-governmental Fire Claimants who did not file proofs of claim by the General Bar Date. [See Docket No. 4672]

On January 31, 2020, as Docket No. 5590, Debtors filed an Amended Chapter 11 Plan Debtor's and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated January 31, 2020.

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

On February 7, 2020, as Docket No. 5700, Debtors filed a Disclosure Statement for the Amended Plan.

On February 19, 2020, as Docket No. 5835, Debtors filed their Motion for Entry of an Order (I) Approving Form and Manner of Notice of Hearing on Proposed Disclosure Statement; (II) Establishing and Approving Plan Solicitation and Voting Procedures; (III) Approving Forms of Ballots, Solicitation Packages, and Related Notices; and (IV) Granting Related Relief ("Solicitation Procedures Motion").

On March 17, 2020, the Solicitations Procedures Motion was Approved.

After filing multiple iterations of the Plan, on June 19, 2020, as Docket No. 8048, Debtors filed an Amended Joint Chapter 11 Plan of Reorganization dated June 19, 2020 (the "Final Plan").

On June 20, 2020, post-voting and hotly contested confirmation hearings, the Bankruptcy Court entered an order confirming the Final Plan. [Docket No. 8053]

Prior to December 31, 2019, over 82,000 fire victims filed timely claims. Since December 31, 2019, thousands of late claims have been submitted. Also since December 31, 2019, nearly 1,000 late claims of fire victims have been permitted as timely by the Court through Stipulations and Orders. Until very recently, the FVT did not oppose these motions or claims. It's clear by the volume of late claims that many families and individuals impacted by the North Bay Fires were unaware that they had any remedies, claims for relief, or causes of actions.

**B.** **Claimants' Claims Arising from the North Bay Fires**

Per the Court's Order, a brief statement for particular circumstances for each Claimant is set forth in Exhibit 1, attached hereto.

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

Claimants largely find themselves in very similar situations. All of the Claimants are survivors of the North Bay Fires which occurred in 2017. All of the Claimants have valid claims for damages arising from the North Bay Fires, including nuisance and emotional distress–due to proximity of the zone of danger to the North Bay Fires. All evacuated from the fires, with their homes covered in soot and ash.

**C.     Claimants Late Claims Are The Result Of Excusable Neglect**

Due to substantial trauma, relocation, and the immense pressure resulting from the foregoing, as well as the repeated fires and evacuations that swept through the North Bay in 2018, 2019 and 2020, the Claimants did not become aware of the relevant bar dates, or the fact that they had potentially compensable claims due to evacuation alone, in time to timely file the claim. Claimants were not even aware of their right to file claims for evacuation damages until after the Extended Bar Date and Claims Questionnaire Deadline.

Here, in particular, none of the Claimants had knowledge of their entitlement to file a claim for evacuation damages within the Extended Bar Date. Claimants only learned of these facts very recently (in November 2022) and realized their damages may be compensable and that they should file a proof of claim for their losses. Had they known, they would have timely submitted claims. Outside of "word of mouth" from other fire victim claimants, no such notice or alert was provided.

Indeed, the notices presented by PG&E, news media, local attorneys, and television and radio advertising all directly stated and/or implied that individuals could only bring a claim in the bankruptcy proceedings if they had sustained property damage or physical injury due to the fire. For example, PG&E issued multiple press releases stating that claims could be filed in the bankruptcy proceeding by "any person or entity [who] believes money is owed to them by

4

PG&E for loss or injury resulting from the Northern California fires that arose before PG&E filed for Chapter 11 on January 29, 2019." (See e.g., 12/30/19 Press Release https://investor.pgecorp.com/news-events/press-releases/press-release-details/2019/Tomorrow-Deadline-for-Filing-Fire-Claims-in-PGE-Chapter-11-Cases-is-500-pm-Pacific-Time/default.aspx). These statements did not state that compensation for emotional distress caused by the evacuation of people's homes, unattended by any physical injury or property loss, could be claimed from PG&E in the bankruptcy proceeding. As laypersons, Claimants had no reason to know of such a potential claim, and none of the information put forth by PG&E and others could reasonably be expected to inform Claimants of their right to bring such a claim.

Further, multiple fires occurred in 2018, 2019 and 2020 which caused repeated evacuations and major devastation across Sonoma, Napa and Mendocino Counties. These repeated, traumatic events contributed to Claimants' confusion and significantly limited their ability to discover novel and unknown legal rights to make a claim against PG&E.

Finally, the COVID-19 pandemic, while occurring after the deadline to file a claim against PG&E, occurred just a few weeks after that deadline. Unprecedented shelter-in-place orders, closure of schools and job sights, shifting medical news and precautions, and the fear caused by these events understandably prevented any meaningful chance for Claimants to discover their legal rights against PG&E until well after the deadline had passed.

In short, Claimants had no good way of knowing that their claims existed or were actionable prior to the Extended Bar Date and Claims Questionnaire Deadline, nor did they have knowledge of the claims process. None of the Claimants had been aware of their right to bring a claim for emotional distress caused by evacuation until these claims began to surface in late 2022

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

and news spread through the community. This lack of knowledge, and the concomitant failure to file a claim sooner, is patently excusable neglect.

**D.    No Prejudice Will Result From Allowing Claimants' Late Claims**

There is no danger of prejudice to the Debtors or the FVT. Debtors' estates are solvent, and all creditors in these cases stand to be paid their pro rata shares. In fact, it is Claimants' understanding that the number of claims submitted is less than the amount anticipated at the onset of the bankruptcy. Further, claims are still being administered by the FVT. As set forth below, little if any impact will be created on the FVT or its intended payouts by allowing Claimants' late claims.

The Trustee's prior opposition to similar late claims incorrectly attempts to argue unfair prejudice to *other creditors* - not a factor the law places into considered on this motion. The number of creditors does not create prejudice to PG&E or the successful management of the trust. Rather, all creditors should have their legitimate claims addressed in these bankruptcy proceedings.

Based on the foregoing, the Claimants bring this Consolidated Motion to timely permit filing of their claims.

**IV.**

**Legal Argument**

In a Chapter 11 case, the time to file a proof of claim may be extended under certain circumstances. Federal Rule of Bankruptcy Procedure ("FRBP") 3003(c)(3); FRBP 9006(b)(1). The bankruptcy court has "broad equitable powers" in a Chapter 11 case with respect to the timing requirements for proofs of claim. *Pioneer Inventory Services v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 389 (1993). Moreover, Rule 9006(b)(1) allows "late filings

6

caused by inadvertence, mistake, or carelessness, not just those caused by intervening circumstances beyond a party's control." *Id,* at 381. Even a creditor that did in fact receive notice may file a proof of claim notwithstanding the expiration of a claims bar date in a Chapter 11 case upon a showing of "excusable neglect." *Id.*, at 394-95 ("Had respondents here been prevented from complying with the bar date by an act of God or some other circumstance beyond their control, the Bankruptcy Court plainly would have been permitted to find 'excusable neglect' [under FRBP 9006].").

In considering whether a creditor's failure was the product of "excusable neglect," the Court should take account of the following: all relevant circumstances surrounding the party's omission, including (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delayed, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.,* at 395; See also *Corning v. Corning (In re Zilog, Inc.)*, 450 F.3d 996 (9th Cir. 2006)(noting *Pioneer's* non-exhaustive list of relevant factors).

Significantly, a late-filed proof of claim is allowable where a creditor had actual notice of the bankruptcy, but, due to some external reason, failed to file a proof of claim or did not realize that she or he had to prior to the bar date. See, e.g., *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1003-1007 (9th Cir. 2006) (applying the *Pioneer* factors). Notably in this case, there was no widely distributed notice to all residents impacted by the subject fires. In which case, the Claimants had no actual notice-discussed more fully hereinbelow. This is relevant because without knowledge of the bankruptcy case, the parties could not file claims and were not alerted that their claims were actionable–which goes to many of the primary *Pioneer* factors.

Here, all four *Pioneer* factors–as well as the fifth engrafted onto the *Pioneer* analysis by some courts–weigh in favor of the Claimants.

### A. Factors 2 and 4: Fault of Delay Does Not Rest With the Claimants, And Claimants Acted in Good Faith

Of the four factors above, fault in the delay is preeminent. *Matter of Kmart Corp.* (7th Cir. 2004) 381 F3d 709, 715. And, importantly, a late-filed proof of claim is even allowable where a creditor had actual notice of the bankruptcy, but, due to some external reason, failed to file a proof of claim or did not realize that she or he had to file prior to the bar date. See, e.g., *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1003-1007 (9th Cir. 2006) (applying the *Pioneer* factors).

Here, the delay in filing the late claims is reasonable and the extent of the delay was not within the control of the Claimants. This considers that very shortly after becoming aware of the damages that arose from the North Bay fires might be compensable, the Claimants obtained counsel and filed proofs of claims–after having learned from family and friends (namely, other claimants) that their claims might be compensable–See Declaration of Michael S. Henderson, filed herewith, and Exhibit 1.

The Ninth Circuit, relying on the *Pioneer* factors, held that a bankruptcy court abused its discretion in declining to excuse various women's failure to timely file proofs of claims (with respect to retention bonuses), where debtor's general counsel's email was not calculated to inform employees that they needed to file their wage claims against the debtor in bankruptcy court. *In re ZiLOG, Inc., supra*, at 1003. Compare this to the present Claimants, who received absolutely no notice whatsoever of their potential entitlement to file claims. This lack of substantive notice squarely places many individuals and families without any knowledge of their remedies–including the Claimants. This is not a critique, but it is a relevant reality.

8

Notably in the PG&E cases, there was no widely distributed notice to all residents which were impacted by the subject fires due to evacuation, but who did not suffer property damage or physical injury–despite other efforts to notice claimants and potential claimants.

Moreover, the following other facts and details are relevant: (1) COVID was breaking out on the eve of expiry of the claims deadline; (2) emotional distress claims remain dormant, particularly for children (of note, 34 of Claimants on this motion are or were minors at the time of the 2017 North Bay Fires); (3) health issues associated with the wildfires may not arise for years later or claimants may not connect their health issues to the particular wildfires in question; and (4) the Claimants were completely and totally unaware of their claims and the claims process; and (5) very shortly after discovering their claims, the Claimants filed this Consolidated Motion, and they did so in the manner prescribed by the Court's Orders.

Section C hereinbelow, further delves into the foregoing issues of "fault of delay" and Claimants' "good faith," as it relates to "length of delay". Based on the foregoing, the Claimants believe these two factors weigh heavily in support of granting the Motion.


**B.      Factor 1: There is No Prejudice to the Debtor, Nor Is There Substantial Prejudice to FVT**

First, there is no danger of prejudice to the Debtors in this case–which the FVT has conceded in various objections it has made to similar motions. Thus, the first *Pioneer* factor weighs in favor of the Claimants. *Pioneer* requires prejudice "to the debtor," not prejudice to other creditors. *In re Premier Membership Services, LLC*, 276 B.R. 709 (Bankr.S.D. FL 2002). Most courts that have addressed the issue of prejudice conclude that the only relevant inquiry is whether the debtor, not other creditors, would be prejudiced as the result of permitting a late claim. Accordingly, in a liquidating plan there is very little danger of prejudice. See, e.g., *In re*

*Eagle Bus Mfg., Inc.*, 62 F.3d 730 (5th Cir.1995); *In re Pappalardo*, 210 B.R. 634

(Bankr.S.D.Fla.1997).

In *Pappalardo*, a case in which the movant's $4 million claim was nearly equal to all of

the other $4.7 million in unsecured claims combined, the Court noted "[t]he only prejudice that

may exist is to the unsecured creditors. However, the effect of a late filed known claim on

unsecured creditors is not a relevant inquiry under *Pioneer*." *Pappalardo*, 210 B.R. at 645

(emphasis in original). Obviously, every late claim, if ultimately allowed, will dilute the recovery

to other creditors. If such circumstances were to be recognized as constituting prejudice which

could prevent enlargement of time, then it would be virtually impossible to ever grant relief to

extend the time to file proofs of claim–which is not the case and would strip the court of its

discretion and any valuing in weighing the *Pioneer* factors.

Despite the foregoing, the Claimants note that the FVT has objected to other late claims

motions filed in October and November, asserting that the Trust is being substantially diluted.

On the issue of prejudice to the estate (or, here, the Trust), the FVT has stated in such objections–

without providing any substantive numbers or data whatsoever–that "[i]f number of Claims

channeled to the Trust continue to increase, the Trust may not be able to increase the pro rata

percentage beyond the current 45%, making it objectively detrimental to tens of thousands of

claimants who filed their claims before December 31, 2019…"

Should the Court analyze prejudice to the FVT (as opposed to the Debtors) and wish to

determine the extent, if any, that other unsecured creditors will be impacted by these late claims,

the Claimants argue that the FVT's position is (a) without any factual basis, and (b) the extent of

the purported prejudice is vastly overstated and, therefore, this factor also tips in favor of the

Claimants.

In particularly, any prospect of prejudice beyond solvency is unlikely, given that (a) all distributions have not yet been made; and (b) the aggregate value of the Claimants' claims relative to the value of the FVT is low. On this issue, some Courts, for example, have looked at prejudice through the eyes of the "estate" or creditors. See, e.g., *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995). In so doing, those courts have looked at the size of the late claim in relation to the estate, as a consideration in determining prejudice. This analysis also tips in favor of the Claimants.

Here, if the court were to entertain the FVT's dilution argument, this would suggest that the Trust's value is only in the tens of millions–which is simply not the case. The number of late claims subject to late claim motions that the FVT has objected to (including this one) is no more than 175 claims. Assuming all of these claims are allowed and receive determination notices, the total value of the initial 45% pro rata share would likely not exceed $15-18 million–which is incomprehensibly small in comparison to both the original size of the Trust and the present value of the Trust.

In fact, the Trust's current value likely exceeds $4.7 billion, given that it holds over 265 million shares of PG&E stock, in addition to whatever other cash/funds it has on hand–which is likely close to $1 billion. With $PCG trading around $15.70/share, the stock value alone exceeds $4.1 billion. Adding in cash on hand, the Trust has a value likely exceeding $5 billion.

Moreover, and to provide relevant and important context: this estimated $15-18 million sum reflects approximately *0.13%* of the Trust's original total $13.5 billion value, and approximately *0.36%* of the current value of the Trust (estimated to be over $5 billion). Of course, such figures weigh heavily in favor of admitting the claims and in evaluating prejudice of unsecured creditors. No doubt there may be very minor dilution (which should otherwise have

been anticipated, given the larger context and total number of individuals impacted by the fires), but such dilution is *de minimis*, as opposed to completely eroding, as counsel for the FVT has stated in its various objection papers to other late claims motions. Counsel for the FVT's statements should be alarming to the Court, but not for the reasons counsel for the FVT states.

In light of the foregoing, given the lack of prejudice to the Debtor and *de minimis* dilution to the Trust, this *Pioneer* factor ways heavily in favor of granting the Motion.

## C. Factor 3: Length of Delay: The FVT Should Have Anticipated Late Claims "Snowballing"

The Ninth Circuit, relying on the *Pioneer* factors, held that a bankruptcy court abused its discretion in declining to excuse various women's failure to timely file proofs of claims (with respect to retention bonuses), where debtor's general counsel's email was not calculated to inform employees that they needed to file their wage claims against the debtor in bankruptcy court. *In re ZiLOG, Inc., supra*, at 1003. This is relevant here, because the FVT has put forth an interesting argument in some of the objections it has filed: the FVT asserts that the Court "has already considered and addressed the adequacy of notice to Fire Victims," in an effort to foreclose on discussion relating to the same. Surely, however, the Court can look at whether the Claimants (a) actually had notice, or were aware of their claims in time to timely submit them, and (b) whether that notice was adequate, under the present circumstances, for consideration of the Motion/Claims–all of which relates to length of delay.

To further delve into this topic and show that the FVT should have anticipated late claims motions–given the circumstances–the Claimants put forth the following counterpoints:

First, the Court points out in its Revised Order that "[s]ome parties have filed new proofs of claim but have not yet made motions to allow such claims." In fact, there are likely thousands of untimely proofs of claims that have been filed, but for which no motions have been brought.

As the Court pointed out, "the FVT will have to file appropriate objections to the claims to overcome the presumption of allowability." The FVT gets weekly (if not daily) updates concerning the proofs of claims filed in the case. Approximately 16,935 proofs of claims have been filed since January 1, 2020.[1] On that basis alone, the FVT is aware of a substantial quantity of claims in existence with untimely claims–many of which likely did not receive sufficient notice. And, the number of claims brought in this Motion is a small fraction of that total.

Second, the logical (and anticipated) reason that late claims motions "snowballed" is threefold: (a) Many timely claims for non-economic damages finally started to receive their pro rata distributions, resulting in fire victims receiving funds and advising family, friends, and neighbors of the same; (b) individuals that had untimely claims accepted (which largely started in early 2022) also began notifying families, friends, and neighbors of the same; and (c) the community came out of the COVID lockdowns, which had largely consumed the country for nearly two years. Prior to these occurrences, there was little reason or basis for the Claimants to discover their claims and/or the claims process, in which case the length of delay is reasonable and valid–and should have been anticipated.

Essentially, what occurred is that a handful of motions were filed and it started to grow from there, which is both reasonable and foreseeable. And it appears to be tapering, which is also anticipated, and cuts against the notion that this will never end. All snowballs stop. Word spread organically as families and individuals impacted by the fires became aware that they had remedies and claims—having no prior knowledge of the same.

The FVT states in various objections that it has filed that the Court "has already considered and addressed the adequacy of notice to Fire Victims. As a result of the Court's

---

[1]This estimate was arrived at by looking at the first Proof of Claim Number issued for January 2020 (92702) and the last Proof of Claim Number issued through October 21, 2022 (109637)

careful consideration of this issue and the thoughtful manner in which the Debtors redoubled their efforts to reach additional Fire Victims, and many thousands of claimants, some of whom suffered unfathomable losses, were able to file their claims in a timely manner." However, this argument does three things: (1) it conveniently strips away and ignores the Court's broad discretion to permit late filing of claims; (2) it conveniently dismisses the specific and shared circumstances that hundreds of families and individuals found themselves in, after having suffered from the subject fires; and (3) it ignores that, despite the Court's and PG&E's efforts, hundreds of families and individuals still did not receive any substantive notice–which should have been anticipated. The FVT's arguments fundamentally fail to address the heart of the issues at hand, which is that despite the efforts to notice all victims, hundreds of victims still likely remained unaware of the case, their damages, and the claims process. All of which is relevant to the Motions and provides context with respect to the length of delay.

Based on the foregoing, and under the circumstances, the length of delay and "snowballing" of late claims is reasonable and tips in favor of granting the Motion.

**D.      The FVT Has Already Permitted Over 870 Late Claims (Most in August and September Alone)**

Finally, the FVT has been routinely permitting late proofs of claims to be allowed, where such tardiness is excusable under the *Pioneer* factors and foregoing arguments. Only until very recently did the FVT begin to no longer sign-off on and object to such tardy claims. In which case, the Claimants contend that good cause exists and the Motion should be granted, given that good cause has existed for over 870 similarly situated claims (which includes over 1,500 individual claimants). Or, in the alternative, that the FVT should be estopped from wholly opposing all such claims, where the *Pioneer* factors are clearly met and the FVT has fundamentally failed to show substantial prejudice to the Debtor (or the Trust).

**Conclusion**

Based upon the foregoing, the Claimants hereby request that the Court grant this Consolidated Motion and deem timely the Subject Proofs of Claims.

WHEREFORE, the Claimants pray for an order:

1.     Granting the Motion in its entirety;

2.     Finding that the Subject Proofs of Claims filed by the Claimants are to be allowed as having been timely filed; and

3.     Granting such other or further relief as the Court deems just and proper.

Dated: 12/8/22                                     LAW OFFICES OF PAUL M. JAMOND

By _____*/s/ Paul M. Jamond*_____
                    Paul M. Jamond
                    Attorney for the Claimants

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

## DECLARATION OF MICHAEL S. HENDERSON IN SUPPORT THEREOF

I, Michael S. Henderson, declare as follows:

1.      I am over eighteen (18) years old and am competent to testify as to the matters set forth hereinbelow, from my personal knowledge–except as to those matters set forth upon information and belief.

2.      I am the sole owner of the Law Offices of Michael S. Henderson and am an attorney licensed to practice in the State of California.  If called upon as a witness, I could and would competently testify as to the facts set forth in this Declaration, which are made based upon my personal knowledge or information collected by my staff from the Claimants that my firm represents.  Such representation is set forth more fully in Exhibit 1, attached hereto, with further brief explanations received from each Claimant that my firm represents.

3.      I have reviewed the foregoing Motion to Allow/Deem Timely Late Filing of Claimants Proofs of Claims, and Memorandum of Points and Authorities in Support Thereof (the "Motion") and the attached Exhibit 1.  To the best of my information and knowledge, the factual allegations in the Motion are true and correct as to the Claimants my firm represents. For the reasons summarized in the Motion, I believe that it is appropriate to permit late filing of the various claims of the Claimants that my firm represents.

4.      In anticipation of the FVT objecting to this Motion, I believe it is important for the Court and parties to look at the larger context, regarding both (1) claimants and their joint situation, and (2) the number of late claims compared to timely claims.

5.      I've reviewed some of the FVT's objections to similar motions.  Based on my review of the FVT's objections, Counsel for the FVT seems to believe that the Claimants had substantial time to file claims and that there's no good reason they could not have filed their

claims by at least September 30, 2022. However, this ignores the reality that neither PG&E nor the FVT engaged in sufficient efforts to notify people in Claimants position (with no loss of property or physical harm) of the right to seek compensation, and ignores the larger context of events in which Claimants were forced to live since the 2017 North Bay Fires. These facts, set forth in greater detail below, demonstrate it is quite understandable and excusable that why many families with young children and elderly individuals did not learn until recently of there right to present a claim.

6.      Most, if not all, of the Claimants have been subjected to numerous wildfires and numerous evacuations since 2017.  Claimants were subjected to significant personal trauma from the large scale fires that devastated the North Bay in 2017. Further fires occurred in 2018, 2019 and 2020 which caused repeated evacuations and major devastation across Sonoma, Napa and Mendocino Counties. These repeated, traumatic events, contributed to Claimants confusion and significantly limited their ability to discover novel and unknown legal rights to make a claim against PG&E for purely evacuation damages. These experiences from dealing with these wildfires and evacuations have stacked and blended together.  Many families and claimants– especially the elderly (for which there are many) and children (34 in this present motion are or were children during the 2017 North Bay Fires), can barely remember which fire was caused by what, which evacuation was when, the extent of any smoke/soot/ash damage, resulting school closures, and power outages for days. By now, evacuating due to the threat of wildfires has almost become a part of their lives. This does not mean their trauma is lessened, but it does give context and reason as to why hundreds of families and individuals did not know that they had recoveries and actionable damages stemming from the 2017 North Bay Fires.

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

7. This is especially true for Claimants, who had to evacuate, but did not suffer the loss of their home or any physical injury to their bodies. They simply did not know that they had compensable claims which could be presented to PG&E. They all have expressed surprise and ultimately anger that they were not given notice of their legal right to present such claims. They all have stated that they were either directly told or lead to believe that only people who lost their homes, their lives, or were physically harmed, could bring a legal claim against PG&E.

8. While initial efforts were made to apprise people of their right to file a claim against PG&E, these efforts were nearly exclusively aimed at people with property loss or physical injury. Information disseminated by PG&E, news media, local attorneys, television and radio advertising, all directly stated or implied that people could only bring a claim if they had sustained property damage or physical injury due to the fire. For example, PG&E issued multiple press releases stating that claims could be filed in the bankruptcy proceeding by "any person or entity [who] believes money is owed to them by PG&E for loss or injury resulting from the Northern California fires that arose before PG&E filed for Chapter 11 on January 29, 2019." (See e.g., 12/30/19 Press Release https://investor.pgecorp.com/news-events/press-releases/press-release-details/2019/Tomorrow-Deadline-for-Filing-Fire-Claims-in-PGE-Chapter-11-Cases-is-500-pm-Pacific-Time/default.aspx). Claimants are not legally trained or educated. As laypersons, these statements did not reasonably inform them that compensation for emotional distress caused by the evacuation of their homes, unattended by any physical injury or property loss, could be claimed from PG&E in the bankruptcy proceeding. Nothing was done after December 2019 (the extended bar date) which was reasonably calculated to inform Claimants or others in their position of this right. Claimants did not in fact learn of this right until late November 2022.

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

9. Claimants have all suffered emotional trauma, mental anguish, and in some cases lasting psychological injury, from the many wildfires which they have had to endure–damages for many of which are not actionable whatsoever, because of natural causes. Here, however, their damages are actionable, and they only recently became aware of this information in November 2022. Claimants then sought out my office for legal advise on presenting claims.

10. The majority of the time from December 2019 (the extended bar date) through early 2022, the entire community was in a pandemic. The COVID-19 pandemic, while occurring after the deadline to file a claim against PG&E, occurred just a few weeks after the deadline. Shelter in place orders, closures of schools and job sites, shifting medical news and precautions, and the fear caused by these events, understandably prevented any meaningful chance for Claimants to discover their legal rights against PG&E until well after the deadline had passed. This was especially difficult for families with children and elderly individuals.

11. In short, none of the Claimants has been aware of their right to bring a claim for emotional distress caused by evacuation until news of these claims began to surface in late 2022 and spread through the community. This lack of knowledge, and the concomitant failure to file a claim sooner, is patently excusable neglect.

12. My law office has inquired with the Claimants listed in Exhibit 1 with respect to their claims to determine whether: (1) they were aware of the FVT's existence within approximately 1-2 months of filing their claims, or (2) if they were aware of the existence of the FVT, whether they understood that damages for nuisance and/or emotional distress may be compensable through the FVT. Upon information and belief–based on such inquiries–I understand that all of the Claimants listed in Exhibit 1 either: (1) were not aware of the existence of the FVT until within approximately 1 month of filing their subject claims, or (2) to the extent

that they were aware of the existence of the FVT, they did not know that damages (theirs included) for emotional distress and/or nuisance might be compensable from the FVT. All of the Claimants were unable to file timely claims due to circumstances beyond their control, since they had no knowledge of the claims process and the FVT, or even that the Debtors might have been liable for any damages they suffered. The facts set forth above give credence to this position.

13. Based on my interactions with Claimants, I believe that the following other facts and details are relevant: (1) COVID was breaking out on the eve of expiry of the claims deadline; (2) emotional distress claims remain dormant, particularly for children; (3) health issues associated with the wildfires may not arise for years later or claimants may not connect their health issues to the particular wildfires in question; (4) all of the Claimants were completely and totally unaware of their claims and that their claims were actionable; (5) very shortly after discovering their claims, the Claimants brought this Consolidated Motion, and they did so in the manner prescribed by the Court's Orders; and (6) most, if not all, of the Claimants have suffered from numerous wildfires and numerous evacuations, many of which are not actionable against any one party and blend together over time–meaning without direct notice from the Debtors or FVT, they would have little knowledge of their claims being actionable.

14. Here, in particular, none of the Claimants had knowledge of their entitlement to file a claim within the Extended Bar Date, nor were they aware of the existence of the FVT–or that their particular damages from the 2017 North Bay Fires were even actionable. Had they known, they would have timely submitted claims. Outside of "word of mouth" from other fire victim claimants, no such notice or alert was provided, and many such parties had no good way of knowing about their claims and the claims process. The FVT has stated–in various objections

to similar motions–that this is irrelevant.  However, I believe this provides important clarity and context as to why the Claimants did not file their claims until very recently.

I declare under penalty of perjury, under the laws of the United States and of the State of California, that the foregoing is true and correct. Executed at Santa Rosa, CA, on December 8, 2022.

By:  ___/s/ Michael S. Henderson___
Michael S. Henderson

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's filing system or by contacting counsel of record.

Dated: 12/9/22                              LAW OFFICES OF PAUL M. JAMOND

By _____/s/ Paul M. Jamond_____
                                            Paul M. Jamond
                                            Attorney for the Claimants

CONSOLIDATED MOTION TO ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS

# EXHIBIT 1: CLAIMANTS

(1) **Kelly Back, Laura Thibodeau-Back, Rylie Back, and L.B., a minor (parent, Kelly Back)**
**Claim No. 109804; Claim filed 11/30/2022**

Kelly Back and Laura Thibodeau-Back are spouses. They, along with their adult child Rylie Back and minor child L.B., resided at the real property located at 5701 Evening Way, Santa Rosa, CA 95409. The Back family owned and occupied this property during the North Bay Fires.

The Back family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

In addition, Laura Thibodeau-Back sustained a broken arm while loading her family's belongings to evacuate. Rylie Back sustained significant anxiety which required visits with a therapist and their minor child L.B. sustained significant fear which affected his daily living activities.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Back family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(2) **Ralph Barnes and Darryn Chandler**
**Claim No. 109785; Claim filed 12/01/2022**

Ralph Barnes and Darryn Chandler are spouses. They resided at the real property located at 5693 Evening Way, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

The Barnes/Chandler family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Barnes/Chandler family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be

compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(3)     **Rebecca Black**
        **Claim No. 109805; Claim filed 11/30/2022**

Rebecca Black resided at the real property located at 547 Mission Boulevard, Santa Rosa, CA 95409.  Ms. Black owned and occupied the property during the North Bay Fires.

Ms. Black's personal property and residence was damaged from smoke, soot and ash from the North Bay Fires.  During the fires, she was required to evacuate her home.  As a result of her displacement, she suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), Ms. Black was not aware that her damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning she suffered damages and also learning that her damages might be compensable, she reached out to counsel and filed her claim. She learned of this through family/friends and was not previously aware of the FVT or PG&E bankruptcy case.

(4)     **John Brodey and Cristine Marcus**
        **Claim No. 109793; Claim filed 12/01/2022**

John Brodey and Cristine Marcus are spouses.  They resided at the real property located at 6454 Timber Springs Drive, Santa Rosa, CA 95409.  The family owned and occupied the property during the North Bay Fires.

The Brodey/Marcus family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home.  As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Brodey/Marcus family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(5)　　**Matthew G. Burtch and Mineko Burtch**
　　　　**Claim No. 109814; Claim filed 11/30/2022**

　　　　Matthew G. Burtch and his mother Mineko Burtch resided at the real property located at 269 Hermosa Circle, Santa Rosa, CA 95409.  The family owned and occupied the property during the North Bay Fires.

　　　　 The Burtch family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

　　　　Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Burtch family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(6)　　**Linda Citti, Luca Citti, Daniele Citti and Isabella Citti**
　　　　**Claim No. 109784; Claim filed 12/01/2022**

　　　　Linda Citti and Luca Citti are spouses.  They, along with their adult children Daniele and Isabella Citti, resided at the real property located at 5708 Evening Way, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

　　　　 The Citti family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home.  As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

　　　　Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Citti family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(7)　　**David Clawson and Tristan Clawson**
　　　　**Claim No. 109800; Claim filed 12/01/2022**

　　　　David Clawson and his minor child T.C. resided at the real property located at 154 Greene Street, Kenwood, CA 95452.  The family rented and occupied the property during the North Bay Fires.

The Clawson family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Clawson family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(8)     **Mary Coscia, Anthony Coscia, I.C., a minor (parent, Mary Coscia), and E.C., a minor (parent, Mary Coscia)**
        **Claim No. 109811; Claim filed 11/30/2022**

Mary Coscia and Anthony Coscia are spouses. They, along with their minor children I.C. and E.C., resided at the real property located at 1420 Parsons Drive, Santa Rosa, CA 95404. The family owned and occupied the property during the North Bay Fires.

The Coscia family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Coscia family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(9)     **Amanda Cream**
        **Claim No. 109790; Claim filed 12/01/2022**

Amanda Cream resided at the real property located at 2116 Wedgewood Way, Santa Rosa, CA 95404. Ms. Cream owned and occupied the property during the North Bay Fires.

Ms. Cream lost her entire home and all the contents held within, including the surrounding landscaping, fencing, garage and a motorcycle. During the fires, she was required to evacuate her home. As a result of her displacement, she suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), Ms. Cream was not aware that her damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline

expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(10)     **Susan Davis and Clifford Davis**
         **Claim No. 109786; Claim filed 12/01/2022**

Susan Davis and Clifford Davis are spouses.  They resided at the real property located at 5705 Evening Way, Santa Rosa, CA 95409.  The family owned and occupied the property during the North Bay Fires.

The Davis family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home.  As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Davis family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(11)     **Dante Digiacomo and Gina Digiacomo**
         **Claim No. 109824; Claim filed 12/05/2022**

Dante Digiacomo and Gina Digiacomo are spouses. They resided at the real property located at 5691 Queen Anne Drive, Santa Rosa, CA 95409.  The family owned and occupied the property during the North Bay Fires.

The Digiacomo family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home.  As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Digiacomo family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(12)     **Michele Donnelly and Keith Williams**
         **Claim No. 109795; Claim filed 12/02/2022**

Michele Donnelly and Keith Williams are spouses.  They resided at the real property located at 1522 Hallmark Court, Santa Rosa, CA 95403.  The family owned and occupied the property during the North Bay Fires.

The Donnelly/Williams family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home.  As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Donnelly/Williams family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(13)     **Patricia Donnelly**
         **Claim No. 109812; Claim filed 11/30/2022**

Patricia Donnelly resided at the real property located at 8890 Oak Trail Drive, Santa Rosa, CA 95409.  Ms. Donnelly owned and occupied the property during the North Bay Fires.

Ms. Donnelly's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, she was required to evacuate her home.  As a result of her displacement, she suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), Ms. Donnelly was not aware that her damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(14)     **Alexis Wright**
         **Claim No. 109819; Claim filed 12/03/2022**

Alexis Wright, along with her fiancee Jacob Dorosz (see below) resided at the real property located at 222 Hoff Road, Kenwood, CA 95409.  Ms. Wright rented and occupied the property during the North Bay Fires.

Ms. Wright's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, she was required to evacuate her home.  As a result of

her displacement, she suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), Ms. Wright was not aware that her damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of her own. In or around November 2022, shortly after learning she suffered damages and also learning that her damages might be compensable, she reached out to counsel and filed her claim. She learned of this through family/friends and was not previously aware of the FVT or PG&E bankruptcy case.

(15)    **Jacob Dorosz**
        **Claim No. 109820; Claim filed 12/03/2022**

Jacob Dorosz, along with his fiancee Alexis Wright (see above) resided at the real property located at 222 Hoff Road, Kenwood, CA 95409. Mr. Dorosz rented and occupied the property during the North Bay Fires.

Mr. Dorosz's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, he was required to evacuate his home. As a result of his displacement, he suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), Mr. Dorosz was not aware that his damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of his own. In or around December 2022, shortly after learning he suffered damages and also learning that his damages might be compensable, he reached out to counsel and filed his claim. He learned of this through family/friends and was not previously aware of the FVT or PG&E bankruptcy case.

(16)    **Tara Duenas, Tracy Duenas, Dallas Duenas, Dylan Duenas and D.D., a minor**
        **(parent, Tara Duenas)**
        **Claim No. 109813; Claim filed 11/30/2022**

Tara Duenas and Tracy Duenas are spouses. They, along with their adult children Dallas Duenas, Dylan Duenas and their minor child D.D., resided at the real property located at 5907 Sailing Hawk Place, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

The Duenas family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Duenas family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire

deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(17)     **Kila Gomer, Ryan Gomer and W.G., a minor (parent, Kila Gomer)**
         **Claim No. 109797; Claim filed 12/02/2022**

Kila Gomer and Ryan Gomer are spouses. They, along with their minor child W.G., resided at the real property located at 1639 Clover Lane, Santa Rosa, CA 95401.  The family rented and occupied the property during the North Bay Fires.

The Gomer family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Gomer family were not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(18)     **Jill Gromm, Daniel Gromm, Trenton Gromm and M.G., a minor (parent, Jill**
         **Gromm)**
         **Claim No. 109796; Claim filed 12/03/2022**

Jill Gromm and Daniel Gromm are spouses. They, along with their adult child Trenton Gromm and minor child M.G., resided at the real property located at 919 Pinot Noir Way, Windsor, CA 95492.  The family owned and occupied the property during the North Bay Fires.

The Groom family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Gromm family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around December 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(19) **Lisa Hartley**
**Claim No. 109802; Claim filed 12/01/2022**

Lisa Hartley resided at 84 Fairway Drive, Santa Rosa, CA 95409, at the time of the North Bay Fires. Ms. Hartley owned and occupied the property during the North Bay Fires.

Ms. Hartley's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, she was required to evacuate her home. As a result of her displacement, she suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), Ms. Hartley was not aware that her damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of her own. In or around November 2022, shortly after learning she suffered damages and also learning that her damages might be compensable, she reached out to counsel and filed her claim. She learned of this through family/friends and was not previously aware of the FVT or PG&E bankruptcy case.

(20) **Marcus Hartley, P.H., a minor (parent, Marcus Hartley), and A.H., a minor (parent, Marcus Hartley)**
**Claim No. 109801; Claim filed 12/01/2022**

Marcus Hartley, along with his minor children P.H. and A.H., resided at the real property located at 6653 Montecito Boulevard, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

The Hartley family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Hartley family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(21) **Ron Kamler, Sheree Kamler, Tyler Cato and B.K., a minor (parent, Ron Kamler)**
**Claim No. 109810; Claim filed 11/30/2022**

Ron Kamler and Sheree Kamler are spouses. They, along with their adult child Tyler Cato and minor child B.K., resided at the real property located at 5733 Evening Way, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

The Kamler family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Kamler family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(22) **Tracy Kline, Sean Baron, C.B., a minor (parent, Tracy Kline) and P.B., a minor (parent, Tracy Kline)**
**Claim No. 109782; Claim filed 11/30/2022**

Tracy Kline and Sean Baron are spouses. They, along with their minor children C.B. and P.B., resided at the real property located at 2023 Siesta Lane, Santa Rosa, CA 95404. The family owned and occupied the property during the North Bay Fires.

The Kline/Baron family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Kline/Baron family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(23) **Art Kononuk and Soleil Kononuk**
**Claim No. 109788; Claim filed 11/30/2022**

Art Kononuk and Soleil Kononuk are spouses. They resided at the real property located at 4440 La Paz Lane, Santa Rosa, CA 95404. The family owned and occupied the property during the North Bay Fires.

The Kononuk family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Kononuk family was not aware that their damages/

injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(24)     **Kevin Landrus and Yanisa Landrus**
         **Claim No. 109809; Claim filed 11/30/2022**

Kevin Landrus and Yanisa Landrus are spouses. They resided at the real property located at 1540 Manzanita Avenue, Santa Rosa, CA 95404.  The family owned and occupied the property during the North Bay Fires.

The Landrus family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Landrus family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(25)     **Matthew Lightner, Deja Lightner, Jonae Arias and S.L., a minor (parent, Matthew Lightner)**
         **Claim No. 109807; Claim filed 11/30/2022**

Matthew Lightner and Deja Lightner are spouses. They, along with their adult child Jonae Arias and minor child S.L., resided at the real property located at 5915 Sailing Hawk Place, Santa Rosa, CA 95409.  The family owned and occupied the property during the North Bay Fires.

The Lightner family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Lightner family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(26)  **Greg Newton, Amy Newton, G.N., a minor (parent, Greg Newton), E.N., a minor**
      **(parent, Greg Newton) and A.N., a minor (parent, Greg Newton)**
      **Claim No. 109826; Claim filed 12/05/2022**

Greg Newton and Amy Newton are spouses. They, along with their minor children G.N., E.N., and A.N., resided at the real property located at 1404 Owl Point, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

The Newton family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Newton family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around December 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(27)  **Nicole Poole, Joseph Poole, L.P., a minor (parent, Nicole Poole) and K.P., a minor**
      **(parent, Nicole Poole)**
      **Claim No. 109798; Claim filed 12/02/2022**

Nicole Poole and Joseph Poole are spouses. They, along with their minor children L.P. and K.P., resided at the real property located at 2012 Waltzer Road, Santa Rosa, CA 95403. The family owned and occupied the property during the North Bay Fires.

The Poole family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Poole family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(28)     **Deva Proto and Mark Proto**
         **Claim No. 109799; Claim filed 12/02/2022**

Deva Proto and Mark Proto are spouses. They resided at the real property located at 2341 Pinercrest Drive, Santa Rosa, CA 95403.  The family owned and occupied the property during the North Bay Fires.

The Proto family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home.  As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Port family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(29)     **Malcolm Robertson, Julia Robertson, F.R., a minor (parent, Malcolm Robertson)**
         **and C.R., a minor (parent, Malcolm Robertson)**
         **Claim No. 109787; Claim filed 11/30/2022**

Malcolm Robertson and Julia Robertson are spouses. They, along with their minor children F.R. and C.R., resided at the real property located at 5732 Evening Way, Santa Rosa, CA 95409.  The family owned and occupied the property during the North Bay Fires.

The Robertson family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Robertson family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(30)     **Margaret Russell and Blaine Russell**
         **Claim No. 109822; Claim filed 12/02/2022**

Margaret Russell and Blaine Russell are spouses. They resided at the real property located at 2315 Claiborne Circle, Santa Rosa, CA 95403.  The family owned and occupied the property during the North Bay Fires.

The Russell family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Russell family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(31) **Steve Schofield and Shelly Schofield**
**Claim No. 109834; Claim filed 12/01/2022**

Steve Schofield and Shelly Schofield are spouses. They resided at the real property located at 5697 Evening Way, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

The Schofield family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Schofield family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(32) **Loren Soukup, Jared Soukup, B.S., a minor (parent, Loren Soukup) and C.S., a**
**minor (parent, Loren Soukup)**
**Claim No. 109821; Claim filed 12/03/2022**

Loren Soukup and Jared Soukup are spouses. They, along with their minor children B.S. and C.S., resided at the real property located at 1533 Barn Owl Place, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

The Soukup family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Soukup family was not aware that their damages/

injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around December 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(33)    **Gregory Tomko and Patricia Tomko**
        **Claim No. 109789; Claim filed 12/01/2022**

Gregory Tomko and Patricia Tomko are spouses. They resided at the real property located at 432 Hillsdale Drive, Santa Rosa, CA 95409.  The family owned and occupied the property during the North Bay Fires.

The Tomko family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Tomko family was not aware that their damages/ injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own.  In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(34)    **Jennifer Tusa**
        **Claim No. 109794; Claim filed 12/01/2022**

Jennifer Tusa resided at the real property located at 2133 Stonefield Lane, Santa Rosa, CA 95403.  Ms. Tusa owned and occupied the property during the North Bay Fires.

Ms. Tusa's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires.  During the fires, she was required to evacuate her home.  As a result of her displacement, she suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), Ms. Tusa was not aware that her damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of her own.  In or around November 2022, shortly after learning she suffered damages and also learning that her damages might be compensable, she reached out to counsel and filed her claim. She learned of this through family/friends and was not previously aware of the FVT or PG&E bankruptcy case.

(35)  **Jenifer Week, Ben Week, Suzanne Week, J.W., a minor (parent, Jenifer Week) and K.W., a minor (parent, Jenifer Week)**
**Claim No. 109808; Claim filed 11/30/2022**

Jenifer Week and Ben Week are spouses. They, along with their adult child Suzanne Week and minor children J.W. and K.W., resided at the real property located at 5712 Evening Way, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

The Week family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Week family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around November 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(36)  **Constance Weichel**
**Claim No. 109806; Claim filed 11/30/2022**

Constance Weichel resided at the real property located at 1945 Pines Road #21, Santa Rosa, CA 95403. Ms. Weichel owned and occupied the property during the North Bay Fires.

Ms. Weichel's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, she was required to evacuate her home. As a result of her displacement, she suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), Ms. Weichel was not aware that her damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of her own. In or around November 2022, shortly after learning she suffered damages and also learning that her damages might be compensable, she reached out to counsel and filed her claim. She learned of this through family/friends and was not previously aware of the FVT or PG&E bankruptcy case.

(37)  **Laureen Barnes, Steve Tuor, Tanner Seaton, Evan Seaton and Skylar Tuor**
**Claim No. _____; Claim filed 12/07/2022 [Claim No. not entered on date of filing]**

Laureen Barnes and Steve Tuor are spouses. They, along with their adult children Tanner Seaton, Evan Seaton and Skylar Tuor, resided at the real property located at 3904 Rock Springs



Drive, Santa Rosa, CA 95405. The family owned and occupied the property during the North Bay Fires.

The Barnes/Tuor family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Barnes/Tuor family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around December 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(38) **Rubi Cordova, Cody Cordova, Gregg Cordova, Marcus Cordova and B.C., a minor (parent, Rubi Cordova)**
<span style="color:red">**Claim No. _____; Claim filed 12/07/2022 [Claim No. not entered on date of filing]**</span>

Rubi Cordova and Cody Cordova are spouses. They, along with their adult children Gregg Cordova and Marcus Cordova and their minor child B.C., resided at the real property located at 1212 A Hidden Creek Place, Santa Rosa, CA 95409. The family owned and occupied the property during the North Bay Fires.

The Cordova family's personal property and residence were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Cordova family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around December 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.

(39) **Diana Kline and Earl James Kelly Kline**
<span style="color:red">**Claim No. _____; Claim filed 12/07/2022 [Claim No. not entered on date of filing]**</span>

Diana Kline and Earl James Kelly Kline are spouses. They resided at the real property located at 1121 Lanewood Way, Santa Rosa, CA 95404 and owned the business at the real property located at 4774 Sonoma Highway, Santa Rosa, CA 95409. The family owned and occupied these properties during the North Bay Fires.

The Kline family's personal property and residence/business were damaged from smoke, soot and ash from the North Bay Fires. During the fires, they were required to evacuate their home and business. As a result of their displacement, they suffered substantial personal damages, nuisance and emotional distress due to the proximity of the zone of danger.

Due to substantial trauma relating to the fires (and other issues discussed in the Declaration of Michael S. Henderson), the Kline family was not aware that their damages/injuries might be compensable prior to the Extended Bar Date and Claims Questionnaire deadline expiring through no fault of their own. In or around December 2022, shortly after learning they suffered damages and also learning that their damages might be compensable, they reached out to counsel and filed their claim. They learned of this through family/friends and were not previously aware of the FVT or PG&E bankruptcy case.