CRAIG A. BURNETT, ESQ. ID. #118907
LAW OFFICE OF CRAIG A. BURNETT
3558 ROUND BARN BLVD., SUITE 200
SANTA ROSA, CALIFORNIA 95403
Telephone: (707) 523-3328

Email: cburnett@nomoredebt.com

Attorney for Claimants

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re:<br><br>PG&E CORPORATION,<br><br>  and<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>                   Debtors.<br>_____<br>Affects:<br><br>☐  PG&E Corporation<br>☐  Pacific Gas & Electric Company<br>■  Both Debtors<br>_____ | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>REPLY OF CLAIMANTS TO OBJECTION OF FIRE VICTIM TRUSTEE TO CONSOLIDATED MOTION TO ALLOW/ DEEM TIMELY LATE FILING OF CLAIMANTS; CERTIFICATE OF SERVICE<br><br>[Relates to Docket Number 13161]<br><br>Hearing Date:   December 13, 2022<br>Hearing Time:   10:00 a.m.<br>Place:              Hearing will be conducted telephonically or by video |

CLAIMANTS/MOVANTS Alan Biggi, et. al., (hereinafter "Movants"), reply to the objection of Cathy Yanni, in her capacity as the Trustee (the "Trustee") of the Fire Victim Trust ("FVT"), as follows:

**I. PROCEDURAL BACKGROUND**

On November 7, 2022, Movants filed this Motion seeking an order to allow and deem timely their Proofs of Claim timely [Dkt.# 13161]. On November 15, 2022, the Trustee filed an Objection to Movants' Motion [Dkt.# 13254]. The Trustee originally noticed a hearing on the Motion for December 13, 2022 [Dkt.# 13255], then re-noticed the hearing for November 30, 2022 [Dkt.# 13256]. Upon request by counsel for Movants, the Trustee agreed to conduct the hearing on the originally scheduled date. On November 21, 2022, Movants' counsel filed an Amended Notice of Hearing [Dkt.# 13272], setting the matter for hearing on December 13, 2022, at 10:00 a.m. in this Court.

## II. SUMMARY OF ARGUMENT

A proof of claim may be deemed timely upon a showing of excusable neglect and lack of prejudice. Here, owing to a variety of circumstances arising from the fires of 2017 (the "North Bay Fires"), Movants were unable to file their proofs of claim timely. But since there is no danger of prejudice to the Debtors, as Debtors' estates are solvent, and the Trust appearing to be solvent with only marginal diminution in its value, the Motion should be granted to allow the Movants to have their respective claims deemed timely.

The Trustee has advised the Court and the public that it had a policy not to oppose motion to allow late claims filed until and including September 30, 2022, and that it intends to more heavily scrutinize late claim motions filed after that date. This statement became a *de facto* "deadline" for the Trustee's non-opposition policy, as the Trustee herself has essentially admitted as 672 such motions were filed on September 30th alone. It appears that the Trustee has drawn a line in the sand, relegating those motions filed after September 30 a different status, not because of the validity of these claims, but for the mere fact that they were filed after the "deadline." The Trustee should have anticipated the reaction the imposition of her deadline has caused. It is both reasonable and foreseeable, especially during the historic COVID pandemic, that an upsurge in late filed claims could be expected. And while, obviously, there must be closure, the Trustee's heavy handed September 30th deadline appears to Movants as an arbitrary approach.

Such an arbitrary deadline prejudices Movants who, through no fault of their own, only recently became aware of the possibility that their claims may be allowed, and whose claims are no less valid than those victims whose claims have already been deemed allowed.

Moreover, cause exists to allow Movants' motion. Movants did not initially understand that, unless their own properties were actually burned, they themselves may also have a claim. While their homes may not have burned down, Movants still suffered losses. They were displaced by the North Bay Fires, as they were required to evacuate, and they suffered substantial personal damages, property damages, nuisance, and emotional distress all due to proximity of the zone of fire danger, among many other things.

## III. ARGUMENT

It is recognized in a Chapter 11 case, the time to file a proof of claim may be extended under certain Circumstances. Federal Rule of Bankruptcy Procedure ("FRBP") 3003(c)(3); FRBP 9006(b)(1). The bankruptcy court has "broad equitable powers" in a Chapter 11 case with respect to the timing requirements

for proofs of claim *Pioneer Inventory Services v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 389 (1993). Moreover, Rule 9006(b)(1) allows "late filings caused by inadvertence, mistake, or carelessness, not just those caused by intervening circumstances beyond a party's control." *Id*, at 381. Even a creditor that did in fact receive notice may file a proof of claim notwithstanding the expiration of a claims bar date in a Chapter 11 case upon a showing of "excusable neglect." *Id.*, at 394-95 ("Had respondents here been prevented from complying with the bar date by an act of God or some other circumstance beyond their control, the Bankruptcy Court plainly would have been permitted to find 'excusable neglect' [under FRBP 9006].").

As stated in Movants' motion, when considering whether a creditor's failure was the product of "excusable neglect," in what are referred to as the *Pioneer* factors, the Court should take into account all relevant circumstances surrounding the party's omission, including the following: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.*, at 395; See also *Corning v. Corning (In re Zilog, Inc.),* 450 F.3d 996 (9th Cir. 2006) noting *Pioneer's* non-exhaustive list of relevant factors. Significantly, a late-filed proof of claim is allowable where a creditor had actual notice of the bankruptcy, but, due to some external reason, failed to file a proof of claim or did not realize that they had prior to the bar date.

It is important to note that in this case, there was no widely distributed notice to all residents impacted by the North Bay Fires. In fact, Movants had no actual notice at all. The relevance is that without knowledge of the bankruptcy case, Movants could not file claims and were not made aware that their claims were even actionable, which speaks directly to the heart of the *Pioneer* factors.

### *Pioneer* Factors

**A. Factor 1: No prejudice to the Debtor, nor substantial prejudice to the Fire Victim Trust**

First and foremost, there is no danger of prejudice to the Debtors in this case, which the FVT has already conceded in various objections it has made to similar motions. Thus, the first *Pioneer* factor weighs in favor of the Movants. *Pioneer* requires prejudice "to the debtor," **not** prejudice to other creditors. *In re Premier Membership Services, LLC*, 276 B.R. 709 (Bankr.S.D. FL 2002). Most courts that have addressed the issue of prejudice conclude that the only relevant inquiry is whether the debtor, not other creditors, would

be prejudiced as the result of permitting a late claim. Accordingly, in a liquidating plan there is very little danger of prejudice. See, e.g., In re *Eagle Bus Mfg., Inc.*, 62 F.3d 730 (5th Cir.1995); *In re Pappalardo*, 210 B.R. 634 (Bankr.S.D.Fla.1997). In *Pappalardo*, a case in which the creditor's $4 million claim was nearly equal to all of the other $4.7 million in unsecured claims combined, the Court noted "[t]he only prejudice that may exist is to the unsecured creditors. However, the effect of a late filed known claim on unsecured creditors is not a relevant inquiry under *Pioneer*." *Pappalardo*, 210 B.R. at 645. Obviously, every late claim, if ultimately allowed, will dilute the recovery to other creditors. If such circumstances were to be recognized as constituting prejudice which could prevent enlargement of time, then it would be virtually impossible to ever grant relief to extend time to file proofs of claim, which here is not the case, and would undermine the Court's discretion on any ultimate determination in considering the *Pioneer* factors.

Despite this, Movants recognize that the FVT has objected to other late claim motions also filed in October and November, asserting that granting these motions substantially dilutes the Trust. On the issue of prejudice to the estate–or here, to the Trust–the Trustee states in her objection, without providing any substantive numbers or data whatsoever, that "[i]f the number of Claims channeled to the Trust continue to increase, the Trust may not be able to increase the pro rata percentage beyond the current 45%. This factor alone makes allowing late claims like those filed by Movants into the Trust objectively detrimental to the tens of thousands of claimants who filed their claims before the Extended Bar Date." [Dkt.# 13254, pg. 7 of 15, lines 13-15].

Should the Court choose to analyze prejudice to the FVT (as opposed to the Debtors) and to determine the extent, if any, that other unsecured creditors will be impacted by these late claims, Movants argue that the FVT's position is: 1) without any factual basis; and, 2) the extent of the purported prejudice is extremely overstated, making this factor also point in favor of Movants. In particular, any prospect of prejudice beyond solvency is unlikely, given that all distributions have not yet been made; and the aggregate value of the Movants' claims relative to the value of the FVT is quite low. On this issue, some courts for example, have looked at prejudice through the eyes of the "estate" or creditors. See, e.g., *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995). In so doing, those courts have looked at the size of the late claim in relation to the estate, as a consideration in determining prejudice. This analysis also favors Movants. If this Court were to entertain the FVT's dilution argument, it would suggest that the Trust's value is only in

the tens of millions–which is simply not the case. The number of late claims subject to late claim motions that the FVT has objected to, including this one, is no more than 175 claims. Assuming all of these claims are allowed and receive determination notices, the total value of the initial 45% pro rata share would likely not exceed $15-18 million, an infinitely small number as compared to both the original size and present value of the Trust.

In fact, the Trust's current value likely exceeds $4.7 billion, given that it holds over 265 million shares of PG&E stock, in addition to whatever other cash/funds it has on hand–which is likely close to $1 billion. With PG&E shares trading around $15.50/share, the stock value alone exceeds $4.1 billion. Adding in cash on hand, the Trust has a value likely exceeding $5 billion.

Moreover, and to provide relevant and important context: this estimated $15-18 million sum reflects a mere *0.13%* of the Trust's original total $13.5 billion value, and approximately *0.36%* of the current value of the Trust (estimated to be over $5 billion). Of course, such figures weigh heavily in favor of admitting the claims while still evaluating any prejudice to other unsecured creditors. No doubt there *may* be a very minor dilution which should otherwise have been anticipated, given the larger context and total number of individuals impacted by the fires, but such dilution is slight at best as opposed to completely eroding the Trust, as the Trustee has stated in her objection. The Trustee's statements should be alarming to the Court, but not for the reasons she avers. In light of the foregoing, given the lack of prejudice to the Debtor and the minuscule dilution to the Trust, this *Pioneer* factor weighs heavily in favor of granting the Motion.

**B. Factors 2 and 4: Length of delay is not the fault of Claimants, who have acted in Good Faith.**

Of the four factors above, critical is who is to blame for the delay. *Matter of Kmart Corp.* (7th Cir. 2004) 381 F3d 709, 715. Significantly, a late-filed proof of claim is even allowable where a creditor had actual notice of the bankruptcy, but, due to some external reason, failed to file a proof of claim or did not realize that she or he had to file prior to the bar date. See, e.g., *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1003-1007 (9th Cir. 2006) (applying the *Pioneer* factors).

Here, the delay in filing the late claims is reasonable and the length of the delay was not within the control of the Movants, as evidenced by the fact that very shortly after becoming aware of the damages that arose from the North Bay fires might be compensable, Movants promptly obtained counsel and filed proofs of claim, only after having learned from other claimants that their claims might also be compensable.

Notably in the North Bay Fire cases, there was no widely distributed notice to all residents impacted by the subject fires–despite other efforts to notice claimants and potential claimants.

Moreover, significant other facts and details are relevant here, including: 1) COVID had just broken out on the eve of the initial claims deadline; 2) emotional distress claims yet remain dormant, particularly for children; 3) health issues associated with the wildfires may not arise for years to come or claimants may not connect their health issues to the particular wildfires in question; 4) Movants were wholly unaware of their potential claims and the claims process; and 5) very shortly after learning of their claims, Movants filed this Consolidated Motion, doing so in the manner prescribed by this Court's Orders. This addresses "fault of delay" and Movants' "good faith," as it relates to "length of delay." Based on the foregoing, Movants assert that these two factors weigh heavily in favor of granting their Motion.

**C. Factor 3: Length of delay. The FVT should have anticipated the volume of late filed claims.**

In her objection, the Trustee argues that Movants waited between 1,031 and 1,039 days after the Extended Bar Date to file their proofs of claim, and that such time was not reasonable. The Ninth Circuit, relying on the *Pioneer* factors, held that a bankruptcy court abused its discretion in declining to excuse various women's failure to timely file proofs of claims (with respect to retention bonuses), where debtor's general counsel's email was not calculated to inform employees that they needed to file their wage claims against the debtor in bankruptcy court. *In re ZiLOG, Inc.*, *supra*, at 1003. This is relevant because the Trustee has submitted a peculiar argument in her objection: the FVT asserts that "[t]his Court already considered and confirmed the adequacy of the notice of the Extended Bar Date and thousands of *Camp Fire victims* with similar claims filed timely claims (emphasis added). [Dkt.# 13254, pg. 9 of 15, line 28-pg. 10 of 15, line 2], in an effort to shut down any discussion on length of delay. Camp Fire victims? Movants fail to understand how any determination by this Court on the adequacy of notice in the horrendous and devastating Camp Fire in Paradise, California of 2018 in any way relates to the North Bay Fires from a year earlier. Moreover, the Court *can* look at whether Movants (a) actually had notice, or were aware of their claims in time to timely submit them, and (b) whether that notice was adequate, under the present circumstances, for consideration of the Motion/Claims–all of which speaks to length of delay.

Under the circumstances, to demonstrate that the FVT should have anticipated the substantial increase in the filing of late claims motions, Movants submit the following: First, the Court notes in its

Revised Order that "[s]ome parties have filed new proofs of claim but have not yet made motions to allow such claims." In fact, there are likely thousands of untimely proofs of claims that have been filed, but for which no motions have been brought. As the Court observed, "the FVT will have to file appropriate objections to the claims to overcome the presumption of allowability." The FVT receives weekly, if not daily, updates concerning the proofs of claim filed in this case. Over 16,900 proofs of claim have been filed since January 1, 2020. On that basis alone, the number of claims brought in this Motion is only a minute fraction of the total. Second, there are three logical, and what should have been easily anticipated, reasons for the recent substantial increase in the filing of late claims motions: 1) the holders of timely filed claims for non-economic damages finally started receiving their pro rata distributions, who then started informing family, friends, and neighbors of this occurrence; 2) individuals who had untimely claims accepted (which started mostly in early 2022) also began notifying families, friends, and neighbors of same; and 3) the lifting of COVID restrictions, which consumed the entire country for nearly two years. Prior to these events, there was little reason or basis for Movants to realize that they held claims, and the process to assert them. Given the foregoing, the length of delay is reasonable and valid, and should have been anticipated.

What essentially happened in this case was that a handful of motions were filed and it began to accelerate from there. This is both reasonable and foreseeable. Plus, these motions appear to be tapering off, which is also both reasonable and foreseeable. Word has spread organically as families and individuals impacted by the fires became aware of the fact that they had remedies and could also file claims, not having understood this before.

The Trustee states in her objection that the Court "has already considered and addressed the adequacy of notice to Fire Victims.... As a result of the Court's careful consideration of this issue and the thoughtful manner in which the Debtors redoubled their efforts to reach additional Fire Victims, and many thousands of claimants, some of whom suffered unfathomable losses, were able to file their claims in a timely manner." [Dkt.# 13254, pg. 4, lines 5-14]. However, this argument is specious in three ways: 1) it conveniently removes and ignores the Court's broad discretion to permit the late filing of claims; 2) it conveniently dismisses the specific and shared circumstances that hundreds of families and individuals found themselves in, after having suffered from the subject fires; and 3) it ignores the fact that, despite the Court's and PG&E's efforts, hundreds of families and individuals still did not receive any substantive notice, which

should have been anticipated. The Trustee's arguments fundamentally fail to address the heart of the issues at hand, which is that despite the efforts–or rather as a result of the inadequacy of those efforts–to notice all victims, hundreds of victims still likely remained unaware of the case, their damages, and the claims process, all of which are relevant to the Motions and which provide context with respect to the length of delay.

**D. The FVT has already allowed over 870 late claims, most of which were filed in August and September 2022 alone.**

Finally, the FVT has been routinely allowing late filed proofs of claim, where such tardiness is excusable both under the *Pioneer* factors and under circumstances no different than Movants.' Only until very recently did the FVT arbitrarily reverse its position and does no longer sign-off on the allowance of such tardy claims. Movants submit that the same good cause exists that existed for over 870 similarly situated and allowed claimants, and that their Motion should be granted. Or, in the alternative, that the Trustee should be estopped from wholly opposing all such claims, where the *Pioneer* factors are clearly met and where the Trustee has fundamentally failed to show substantial prejudice to the Debtor or to the Trust.

### IV. CONCLUSION

For all of the foregoing, Movants respectfully request that this Court enter an Order pursuant to Bankruptcy Rule 9006(b)(1) granting their Motion.

Date: 12/10/2022 */s/ Craig A. Burnett*
Craig A. Burnett, Attorney for Movants

### CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's filing system or by contacting counsel of record.

Date: December 10, 2022 LAW OFFICE OF CRAIG A. BURNETT

By */s/ Craig A. Burnett*
Craig A. Burnett
Attorney for Movants/Claimants