KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Dara L. Silveira (#274923)
(dsilveira@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| **- and -** | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **REPLY IN SUPPORT OF REORGANIZED DEBTORS' ONE HUNDRED EIGHTEENTH OMNIBUS OBJECTION TO CLAIMS (CHARMBURY CLAIMS)** |
| **Debtors.** | |
| ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors | **[Related to Docket No. 13117]** |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: December 20, 2022 <br> Time: 10:00 a.m. (Pacific Time) <br> Place: (Tele/Videoconference Appearances Only) <br> United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 |

PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, "**PG&E**" or the "**Debtors**," or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this reply (the "**Reply**") in support of the One Hundred Eighteenth Omnibus Objection [Docket No. 13117] (the "**Objection**")[1] to Claim Nos. 60152 and 65553 (each, a "**Claim**," and, together, the "**Charmbury Claims**"), both filed by Karyn Charmbury ("**Claimant**"). Claimant responded to the Objection on November 18, 2022 [Docket No. 13268] (the "**Response**"). In support of this Reply, the Reorganized Debtors submit the Declarations of Stacy Campos (the "**Campos Supp. Decl.**") and Herb Baer (the "**Baer Decl.**"), filed concurrently herewith.

## I.    PRELIMINARY STATEMENT

PG&E's Objection explained why the Charmbury Claims fail to state a claim for constructive discharge: they do not allege, much less establish, that Claimant's working conditions at PG&E were such that a reasonable employee would have resigned rather than continuing working under them. Objection at 5. The Response fails to address these arguments, and thus concedes them.

Instead, the Response argues that Claimant accepted a PG&E settlement offer pursuant to the Bankruptcy Court's *Order Approving ADR and Related Procedures for Resolving General Claims* [Docket No. 9148] (the "**ADR Procedures**"). PG&E did attempt to consensually resolve the Charmbury Claims via the ADR Procedures. But while the parties agreed in principle to a settlement amount—$22,000, or $11,000 for each Claim—Claimant thereafter failed to provide essential information that PG&E repeatedly requested, so no settlement agreement was ever drafted or executed. Nonetheless, Claimant now contends not only that the parties' unrealized settlement should be enforced, but also that PG&E's broad offer noticing procedures somehow mandate that the settlement amount be *doubled*, to $44,000. The Court should disregard this baseless argument and expunge the Charmbury Claims.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Objection.

## II. ADDITIONAL PROCEDURAL BACKGROUND

Prior to filing the Objection, the Reorganized Debtors attempted to settle with Claimant via the Offer Procedures component of the ADR Procedures. As part of that process, Claimant submitted forms indicating her acceptance of the Reorganized Debtors' offer to settle the Charmbury Claims for $22,000, or $11,000 per Claim. *See Declaration of Claimant Karyn Charmbury's Counsel in Support of Opposition and Response to Reorganized Debtors' One Hundred Eighteenth Omnibus Objection to Claims (Charmbury Claims)* [Docket No. 13269] (the "**Ullrich Decl.**") Exs. S-T. However, the parties never finalized a settlement, because Claimant never provided information necessary to document it. On October 6, 2021, Stacy Campos, PG&E's Managing Counsel for Employment, Labor and Workers' Compensation, notified Claimant's counsel that, as required by the IRS, the parties needed to agree to an allocation of the $22,000 settlement amount among attorneys' fees, wages, and emotional distress. *Id*. Ex. X. Claimant's counsel never responded to Ms. Campos' inquiry; accordingly, as Claimant seems to acknowledge, no settlement agreement was (or could be) drafted, circulated, or executed. *See Supplemental Declaration of Claimant Karyn Charmbury's Counsel in Support of Opposition and Response to Reorganized Debtors' One Hundred Eighteenth Omnibus Objection to Claims (Charmbury Claims)* [Docket No. 13330] (the "**Ullrich Supp. Decl.**") at 3 (acknowledging that Claimant did not receive a settlement agreement from PG&E) and Ex. AC (email from PG&E referring to a settlement agreement to be processed).

The Reorganized Debtors renewed their settlement efforts in May 2022, when another PG&E employment attorney, Phil Simpkins, emailed Claimant's counsel with proposed allocation of the $22,000 as Ms. Campos was on medical leave. Campos Supp. Decl. Ex. A. Mr. Simpkins wrote that once an allocation was agreed upon, he would "get the completed settlement agreement over to you asap." *Id*. Despite additional email follow-up from Mr. Simpkins, however, Claimant's counsel never provided the required information. Ullrich Supp. Decl. Exs. AD, AE. On July 26, 2022, Ms. Campos again contacted Claimant's counsel regarding allocation of the $22,000. *Id*. Ex. AF. Citing PG&E's prior efforts to obtain the information, she wrote, "Based on your failure to respond, we will be withdrawing our settlement offer and requesting the bankruptcy court dismiss the two claims. Should you wish to avoid dismissal of the claims, please contact me no later than close of business on

Monday, August 1, 2022 via email." *Id.* Claimant's counsel did not respond. *Id.* at 4-5. The Reorganized Debtors filed the Objection nearly three months later, on October 24, 2022, still having received no response.

## III. LEGAL ARGUMENT

### A. Claimant Has Failed to Meet Her Burden of Proof

The Objection seeks disallowance of the Charmbury Claims under section 502(b)(1) of the Bankruptcy Code because Claimant cannot prove the claims therein by a preponderance of the evidence. Through the Objection and the declaration of Stacy Campos in support thereof [Dkt. No. 13118], the Reorganized Debtors shifted the burden of proof on the merits of each Claim back to Claimant. *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173-74 (3d Cir. 1992), *aff'd without opinion* 91 F.3d 151 (9th Cir. 1996). "[T]he ultimate burden of persuasion is always on the claimant." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) (quoting King, Collier on Bankruptcy); *see also Lundell v. Anchor Constr. Specialists, Inc*., 223 F.3d 1035, 1039 (9th Cir. 2000); *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993); *In re Fidelity Holding Co*., 837 F.2d 696, 698 (5th Cir. 1988).

Claimant has not met this burden. In fact, the Response fails to respond in any way to the Reorganized Debtors' legal argument rebutting her constructive discharge allegations. *See* Objection at 5-6. Because the Response does not contest the factual or legal grounds upon which the Reorganized Debtors objected to the Charmbury Claims or provide any defenses thereto, it should be overruled at the Hearing, and the Charmbury Claims should be disallowed and expunged.

### B. No Settlement Contract Was Formed

Instead of addressing the substance of the Objection—that the Charmbury Claims should be disallowed and expunged because they do not state a claim for constructive discharge—the Response asserts that "debtors are contractually obligated to pay claimant $44,000." Response at 2. In other words, having neglected for months to facilitate finalization of a settlement, Claimant argues not only that a settlement payment is due, but also that the amount is *double* what the parties had discussed. Claimant is wrong on both points.

### 1. There Was No Contract to Settle for $22,000

On June 23, 2021, Claimant submitted forms indicating her acceptance of the Reorganized Debtors' offer to settle the Charmbury Claims for $22,000, or $11,000 per Claim. Ullrich Decl. Exs. S-T. However, the settlement was never finalized: no settlement agreement was drafted or signed, because Claimant repeatedly ignored the Reorganized Debtors' requests that she provide information that was a prerequisite to finalizing the settlement—namely, an agreement regarding allocation of the $22,000 settlement amount for IRS reporting purposes. Because the settlement included gross wages, PG&E was required by law to withhold for payroll-related taxes, and PG&E could not calculate the amount it would be required to withhold unless and until it knew how the settlement would be allocated among wages, damages, and attorneys' fees. Campos Supp. Decl. ¶ 4. Claimant passed on multiple opportunities to provide PG&E with the requested information over the course of many months: from October 6, 2021, when PG&E first emailed Claimant's counsel regarding the allocation requirement, to May 2022, when PG&E again emailed Claimant's counsel asking about the "breakdown of the $22,000 settlement" and explaining that this information would allow PG&E to "get the completed settlement agreement over to you asap," to July 26, 2022, when PG&E asked for the information yet again and laid out a response deadline of August 1, 2022, after which it would object to the Claims. Ullrich Decl. Ex. X; Ullrich Supp. Decl. Ex. AF. Claimant's counsel never provided the information, and at no point during that period did Claimant contend that there was already a binding settlement agreement.[2]

### 2. Claimant's Argument that She Is Entitled to $44,000 Is Baseless

As a courtesy, Kroll Restructuring Administration LLC ("**Kroll**"), the Reorganized Debtors' claims and noticing agent, mailed two sets of PG&E's settlement offers (of $11,000 for each Claim) to Claimant's counsel—one set to his firm's mailing address and one to its street address—and also sent

---

[2] The Reorganized Debtors were willing to settle with Claimant for $22,000 in June 2021 to avoid expending resources objecting to the Charmbury Claims. While the Reorganized Debtors remain open to resolving the Charmbury Claims consensually, any revised settlement offer now would need to be discounted to reflect legal fees and other costs that the Reorganized Debtors have had to expend since June 2021 with respect to the Charmbury Claims as a result of Claimant's earlier failure to cooperate and finalize the settlement agreement.

two sets by email.[3]  Inexplicably, the Response seizes on this fact to argue that Claimant is entitled to *two* settlements, for a recovery of $44,000.

Claimant had no reason to believe that the Reorganized Debtors intended to offer her $44,000 rather than $22,000.  She filed only two proofs of claim, Nos. 60152 and 65553.  Each Offer Notice that she received was for $11,000, listed one of those two claim numbers, and stated on its face, "THIS OFFER NOTICE CONCERNS THE PROOF OF CLAIM YOU FILED IN THE PG&E BANKRUPTCY."  *See* Ullrich Decl. Exs. P-R.  Each Offer Response that Claimant returned to PG&E, likewise, evidenced clearly that it related to one of those two Claims.  *See Id*. Exs. S-T.  And the numerous communications from PG&E to Claimant's counsel referencing a settlement amount said $22,000, and never $44,000.  *See, e.g.*, Ullrich Decl. Ex. X, Campos Supp. Decl. Ex. A.

Claimant's argument that she is entitled to $44,000 reflects either brazen opportunism or real confusion.  Either way, given that PG&E did not intend to settle for $44,000 and Claimant could not reasonably have believed that it did, there was no meeting of the minds and therefore no settlement at that amount.  *See* Cal. Civ. Code §§ 1550, 1580 ("Consent is not mutual, unless the parties all agree upon the same thing in the same sense."); *see also In re First Capital Life Insurance Company*, 34 Cal. App. 4th 1283, 1288 (1995) (no enforceable contract because "although Omnicor accepted the offer in the manner invited, given the knowledge Omnicor possessed it could not reasonably have believed First Capital intended an offer").

## IV.    LOCAL RULE 3007-1(b)

Bankruptcy Local Rule 3007-1(b) states that "[w]here a factual dispute is involved, the initial hearing on an objection shall be deemed a status conference at which the Court will not receive evidence."  The Reorganized Debtors submit that the allegations in the Charmbury Claims can be

---

[3] Claimant's counsel listed two different mailing addresses on both of the Charmbury Claims: his law firm's mailing address, and its street address.  See Claim Nos. 60152 and 65553.  As has been its practice throughout these Chapter 11 Cases, Kroll sent copies of the ADR Settlement Offer to both addresses listed as well as by email.  *Id*. at ¶¶ 3-4.  This practice is aimed at giving claimants the maximum possible notice of settlement offers and other important documents.  *Id*. at ¶ 3.  The multiple copies, of course, in no way indicated the existence of multiple offers on the same proof of claim; no other claimants in these Chapter 11 Cases have made that interpretation.  *Id*. at ¶ 5.

resolved as a matter of law at the hearing on the Objection. However, should the Court request additional briefing or determine that factual disputes are present, the Reorganized Debtors will seek a schedule for limited discovery as well as for summary judgment briefing and argument.

**V.      CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in the Omnibus Objection and its supporting documents, the Reorganized Debtors respectfully request that the Court overrule the Response, sustain the Objection, and disallow and expunge the Charmbury Claims.

Dated: December 13, 2022

**KELLER BENVENUTTI KIM LLP**

By: _/s/ Dara L. Silveira_
       Dara L. Silveira

*Attorneys for Debtors and Reorganized Debtors*