BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:    (212) 209-4800
Facsimile:    (212) 209-4801

BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone:    (949) 752-7100
Facsimile:    (949) 252-1514

*Attorneys for the Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**FIRE VICTIM TRUSTEE'S OBJECTION TO LETTER REQUEST OF PATRICK CORY SMITHSON TO DEEM LATE PROOF OF CLAIM TIMELY FOR THE PURPOSE OF ADMINISTRATION BY THE FIRE VICTIM TRUST**<br><br>[Relates to Docket Number 13317]<br><br>Hearing Date:    January 10, 2023<br>Hearing Time:    10:00 a.m.<br>Place: Hearing will be conducted telephonically or by video |

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust ("**Trust**"), by and through her undersigned counsel, hereby submits this objection to the letter request of Patrick Cory Smithson ("**Movant**") on December 2, 2022 [Dkt. 13317] (the "**Smithson Letter**"). In support of this Objection, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

The Fire Victim Trust understands that the Fires caused by PG&E in 2015, 2017 and 2108 made it hard for survivors to undertake many everyday tasks due displacement, trauma and other factors. The Trust has been extremely accommodating with respect to late claims and has made every effort to allow as many Fire Victims as possible to present their claims to the Trust for consideration. Nevertheless, the Trustee must balance a desire to ensure as many Fire Victims as possible are compensated injuries arising from the Fires against the fact that **82,692** Fire Victims, many of whom suffered horrific losses, were able to timely file proofs of claim in these cases. The Trustee also is mindful of the fundamental difference between claimants who file motions to have long-filed late proofs of claims deemed timely after receiving notice from the Trust that such action is necessary and those who file motions shortly after years-late proofs of claim are filed (or, as in this case, file a proof of claim after submitting a letter request).

In an effort to quell the rising tide of late claim motions being filed in this case, the former Trustee decided to stop stipulating to the relief requested in late claim motions in mid-May of this year. While that decision initially seemed to slow the number of motions being filed, once it became clear that late claim motions were still being granted, the number of such motions being filed began to increase again. Since the former Trustee stopped stipulating to the relief requested in late claim motions, motions and letters have been filed requesting that the Court deem well over 1,000 proofs of claim "timely" for the purpose of administration by the Trust. The majority of these letters and motions have not presented unique circumstances but instead have duplicate previously filed late claim letters and motions. One hundred fifty-five (155) late claim motions were filed in August alone, prompting the Trustee to state in several filings with this Court that the Trust would have to discontinue its liberal non-opposition policy with respect to late claim motions filed after September 30, 2022. The deadline reflected the recognition that the assets available to the Trust to

1

pay claims (including the PG&E stock held by the Trust) do not account for the extreme increase in the number of new proofs of claim being filed in the last six months.

Unfortunately, the Trustee's statement regarding the change in policy prompted an astounding 672 late claim motions to be filed on September 30, 2022 alone. To put these numbers in perspective, in 2020, which included the months immediately after both the extended bar date and the effective date of the Trust (both events that could be expected to prompt the filing of late claim motions), the total number of late claim motions filed alleging Fire Victim Claims was 55. In 2021, the total number was only 22. The Trust had no reason to expect the magnitude of the late claim motions and letters filed in the last six months based on historical data. These late claim filings have covered *more than thirteen times the number of late proofs of claim addressed by late claim motions filed in the previous two years combined*. Most of these late proofs of claim (including Movants' December 3, 2022 proof of claim) were only recently filed. It is especially important that the Court recognize that *__none__ of these thousands of late-filed proofs of claim were considered when the amount of the Aggregate Fire Victim Consideration[1] was determined and agreed to* by the Official Committee of Tort Claimants (the "**TCC**") and counsel representing holders of Fire Victim Claims. Movant and all other late claimants are requesting that the Court allow them to share in a limited fund that was expected to fully compensate only those claimants who filed timely proofs of claim. In addition, all of these new, unanticipated claims must be reviewed, evaluated and determined before the Trust can make final payments to any of the tens of thousands of Fire Victims who have complied with all of the Trust deadlines and who must wait until all approved claims are determined to learn how much of their approved claims can be paid.

As of December 12, 2022, the Trust had awarded determination notices for 90% of all claim questionnaires that have been submitted to the Trust. The awards associated with those determination notices total $14.04 billion. Until all claims are determined, all determinations are

---

[1] Capitalized terms used but not defined herein have the meanings ascribed such terms in the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020 (the "**Plan**").

accepted and all of the Trust's PG&E Stock is fully monetized, the Trust is unable to predict with certainty the amount of funds available to pay Fire Victim Claims.

## RELEVANT BACKGROUND

1. On January 29, 2019, PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Reorganized Debtors filed the Chapter 11 Cases to address the billions of dollars of damage and loss relating to the devastating 2015, 2017 and 2018 California fires and to provide compensation to wildfire victims.

2. On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors. On February 15, 2019, the U.S. Trustee appointed the TCC.

3. On March 14, 2019, the Debtors filed their schedules of assets and liabilities. By Order dated July 1, 2019, the Court established October 21, 2019 (the "**Bar Date**") as the last date to file proofs of claim in the Chapter 11 Cases [Docket No. 2806] (the "**Bar Date Order**"). By Order dated November 11, 2019, the Court extended the Bar Date to December 31, 2019 (the "**Extended Bar Date**") for unfiled, non-governmental Fire Claimants [Docket No. 4672] (the "**Extended Fire Victims Bar Date Order**")

4. The Extended Fire Victims Bar Date Order was entered in response to a motion filed by the TCC. The TCC argued that the Bar Date "should be extended for the fire victims on the ground that evidence filed herewith establishes that a large number of victims are not filing claims in these chapter 11 cases because they are impaired from filing. Their impairments include emotional distress, suffering from trauma caused by the wildfire that destroyed everything they own, confusion caused by the trauma, a lack of awareness of the fire claims bar date, and a belief that a claimant needs to be insured to file a claim." [Docket No. 4293 at 5:2-8]. The Court has already considered and addressed the adequacy of notice to Fire Victims. As a result of the Court's careful consideration of this issue and the thoughtful manner in which the Debtors redoubled their efforts to reach additional Fire Victims, which included the appointment of a Claims

3

Representative who designed and implemented with his team an expansive outreach effort designed to identify, locate, and assist Fire Victims who were eligible to file claims but failed to do so by the original bar date, many thousands of claimants, some of whom suffered unfathomable losses, were able to file their claims in a timely manner.

**OBJECTION**

5.      As an initial matter, the relief Movant seems to seek is not available. His letter begins, "I would like to add myself to an existing late claim." Without more information, the Trustee interpreted this statement as a request to amend the proof of claim filed by Dale Smithson on behalf of certain members of the Smithson Household residing at 6293 Melita Road, the same address listed by Movant. The claims encompassed by the Dale Smithson proof of claim have already been determined and the determination has been accepted by the named members of the Smithson Household. It is too late for Movant to be added to that proof of claim.

6.      As Movant has filed a separate proof of claim himself, the Trustee is responding to the Smithson Letter as a request to have Movant's proof of claim deemed timely for the purpose of administration by the Trust. For the reasons that follow, the Trustee respectfully requests that the Court deny this relief.

7.      While courts have decided that there is no harm to *the debtor* in allowing late claims to be considered when a solvent debtor is paying all claims in full in a bankruptcy case, in this case the Debtors are not paying any additional consideration to the Trust no matter how many late claims are added. Pursuant to Section 6.8(b) of the Plan and Paragraph 18(e)(iii) of the Confirmation Order, the Trustee has stepped into the Debtors' shoes with respect to Fire Victim Claims. The relevant inquiry in a request to deem a late Fire Victim Claim timely is how the requested relief will affect the *Trust* rather than the Debtors.

8.      All Fire Victim Claims that have been determined by the Trust so far have taken into consideration the number of Claims that were left to be paid *as of the date those determinations were made*. Unexpected late claims, unknown to the Trust, were not considered. The ever-increasing number of claimants seeking to have Fire Victim Claims channeled to the Trust calls into question whether the Trust will be able to increase the pro rata percentage beyond the current

4

45%, making it objectively detrimental to tens of thousands of claimants who filed their claims before December 31, 2019, and who submitted their Claims Questionnaires to the Trust by February 26, 2020, to continue to allow late claims into the Trust. Every late claim channeled to the Trust – even those that are ultimately deemed ineligible – takes time and money from claimants who have met all deadlines and are waiting for their final payments.

9. As the Supreme Court has recognized, Bankruptcy Rule 9006(b)(1) permits court bankruptcy courts to accept proofs of claim filed after the bar date where appropriate in cases of excusable neglect due to inadvertence, mistake, carelessness or circumstances beyond the claimant's control. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). As the dissent in *Pioneer* recognized, however, "the statute does not *require* the court to forgive every omission caused by excusable neglect, but states that the court "*may*" grant relief "in its discretion." *Id.*, 507 U.S. at 399, 113 S. Ct. at 1500 (emphasis in original).

10. The threshold determination to be made under Bankruptcy Rule 9006(b)(1) is whether Movant's failure to file his proof of claim in this case resulted from excusable neglect. Notably, in *Pioneer*, counsel had filed the claimant's proof of claim a mere 20 days late and the Supreme Court found that the bar date notice in that case contained a "dramatic ambiguity." By contrast, the notice of the Extended Bar Date was the ***second*** notice provided to Fire Victims and included coordinated on-the-ground efforts to inform Fire Victims of the deadline to file ***any*** claims arising from a Fire and assist in the process of filing proofs of claim. Yet Movant's proof of claim was not filed until 1,068 days (nearly three years) after the Extended Bar Date.

11. As this Court has recognized, claimants who file late proofs of claim bear "the burden of presenting facts demonstrating excusable neglect." *In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 89 (2004) (citing *Key Bar Invs., Inc. v. Cahn* (*In re Cahn*), 188 B.R. 627 (9th Cir. BAP 1995)).

12. In *Pioneer* the Supreme Court applied the majority of what was then the Ninth Circuit test for determining whether a failure to timely file a proof of claim was due to excusable neglect: (1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its

5

impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; and (4) whether the creditor acted in good faith. *Id.*, 507 U.S. at 395, 113 S. Ct. at 1498.

13. The first consideration in determining whether a late claim filing was the result of "excusable neglect" under *Pioneer* is the danger of prejudice to the debtor. This factor is irrelevant in the present case with respect to the Debtors because the Trust has stepped into the Debtors' shoes with respect to Fire Victim Claims. While it is true that the relief requested in the Smithson Letter will not prejudice the *Debtors*, which have already satisfied their funding obligations to the Trust under the Plan, it clearly prejudices the Trust and its beneficiaries. As noted above, the Trustee is now the representative of each of the Debtors' estates with respect Fire Victim Claims and as such is vested with the authority and power to, among other powers, "administer, object to or settle Fire Victim Claims."

14. The Supreme Court recognized that "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* The Smithson Letter does not address the prejudice to Fire Victims who timely filed their proofs of claim, much less establish a lack of prejudice. Equity does not support the late filing of a proof of claim simply because a claimant is unaware that his particular claims might be compensable, especially when thousands of other claimants with similar claims were able to file timely proofs of claim.

15. The second consideration under Pioneer is the length of delay and its potential impact on judicial proceedings. Movant's proof of claim was filed 1,068 days after the Extended Bar Date – three years after others with similar claims filed proofs of claim. As noted above, the Trust has a limited fund from which to pay all Fire Victim Claims. As such, the Trust cannot finally determine how much it can pay on account of any Fire Victim Claim until it adjudicates every Fire Victim Claim. The continued addition of claims to the Trust prevents the Trust from allocating its limited funds and further extends the time that claimants who timely filed their Fire Victim Claims must wait for final payments, thus delaying the administration and final payment of

6

Fire Victim Claims and prejudicing those who hold timely filed Fire Victim Claims with delay and a reduction in the amount of their final compensation.

16. The addition of claims such as Movant's also increases the number of claimants among which the limited funds of the Trust must be divided. Each late claim motion also must be reviewed and considered by the Trust, which incurs professional fees. Each late claim motion reduces the funds available to distribute to Fire Victims even if it is ultimately denied. The extreme length of Movant's delay and the lack of any explanation for that delay weighs heavily against granting this request.

17. The third *Pioneer* factor, whether the delay was beyond the late claimant's control, also weighs against granting the relief requested by Movant. The Smithson Letter provides no explanation for why Movant's proof of claim was filed nearly three years after the Extended Bar Date. Nothing in the Smithson Letter provides a basis for finding that Movant was unable to file a proof of claim before the Extended Bar Date for any reason beyond his control.

18. While the Trustee does not believe that Movant lacks the good faith that comprises the final consideration listed by the *Pioneer* court, it is clear from the Smithson Letter that Movant was not somehow prevented from filing a timely claim.

19. In addition, as is evidenced by overwhelming number of late claim motions filed within the last week alone, allowing Movant's claim to be deemed timely filed at this stage would encourage other latecomers to file similar motions. Such a result would be grossly inequitable to those holding timely filed Fire Victim Claims, who are waiting for closure that cannot come until the Trust is able to administer the last Fire Victim Claim.

20. Movant therefore fails to meet the standard for establishing "excusable neglect" for filing a proof of claim nearly three years after the Extended Bar Date. The relief requested in the Smithson Letter should be denied.

/ / /

/ / /

/ / /

/ / /

7

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that this Court deny the relief requested in the Smithson Letter and grant such other and further relief as may be just.

DATED: December 14, 2022  BROWN RUDNICK LLP

By: */s/ David J. Molton*
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

and

Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

*Attorneys for the Fire Victim Trustee*

8