**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER (I) APPROVING SETTLEMENT WITH SANTA CLARA DBA SILICON VALLEY POWER AND (II) GRANTING RELATED RELIEF**<br><br>Date: January 10, 2023<br>Time: 10:00 am (Pacific Time)<br>Place: (Tele/Videoconference Only)<br>      United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102<br>Judge: Hon. Dennis Montali<br><br>**Objection Deadline: January 3, 2023, 4:00 pm (PT)** |

PG&E Corporation ("**PG&E**") and Pacific Gas and Electric Company (the "**Utility**" and together with PG&E, the "**Debtors**" or "**Reorganized Debtors**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (i) approving the settlement agreement, entered into by and among the Reorganized Debtors and the City of Santa Clara DBA Silicon Valley Power ("**SVP**" and, together with the Reorganized Debtors, the "**Parties**"), a copy of which is attached hereto as **Exhibit 1** (the "**Settlement Agreement**"), and (ii) granting related relief.

Pursuant to the Settlement Agreement, the Parties have agreed to resolve any and all disputes relating to the Grizzly Powerhouse Development ("**Grizzly**"), including those arising out of or relating to (a) the *Objection to Cure Amount and Request for Adequate Assurance of Future Performance by Counterparty City of Santa Clara DBA Silicon Valley Power* [Docket No. 7208] (the "**Initial Cure Objection**"), (b) the *Supplemental Objection to Cure Amount and Request for Adequate Assurance of Future Performance by Counterparty City of Santa Clara dba Silicon Valley Power* [Docket No. 7691] (the "**Supplemental Cure Objection**" and, together with the Initial Cure Objection, the "**Cure Dispute**"), and (c) the *City of Santa Clara dba Silicon Valley Power's Motion to Compel Assumption or Rejection of Executory Contract Concerning the Grizzly Development and Mokelumne Settlement Agreement* [Docket No. 10998] (the "**Motion to Compel**").

In support of the Motion, the Reorganized Debtors submit the Declaration of Seth Perez (the "**Perez Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit 2** (the "**Proposed Order**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. By Order dated June 20, 2020 [Docket No. 8053] (the "**Confirmation Order**"), the Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Docket No. 8048] (as may be further modified, amended or supplemented from time to time, and together with any exhibits or scheduled thereto, the "**Plan**"). The Plan became effective on July 1, 2020 (the "**Effective Date**"). *See* Docket No. 8252.

Prior to the Petition Date, SVP and PG&E entered into the *Grizzly Development and Mokelumne Settlement Agreement* (the "**GDMSA**"), which governs, among other things, the Parties' respective rights and obligations with respect to delivery of electric power generated by Grizzly, a hydroelectric project located in Plumas County, California, which generates electric power using water released from Lower Bucks Lake, and which is part of the Bucks Creek Project. Grizzly includes, but is not limited to, the Grizzly hydroelectric powerhouse, the powerhouse's electric switchyard, and an approximately 4-mile long 115 kV generation tie-line. Grizzly is owned by the City of Santa Clara, and the Reorganized Debtors serve as the operation manager of Grizzly pursuant to the *Grizzly Operations and Maintenance Agreement, dated June 5, 2002* (the "**Grizzly O&M Agreement**"). As a result of the Camp Fire, Grizzly was disconnected from PG&E's transmission system (the "**Grid**") and delivery of electric power generated by Grizzly was interrupted.

On October 18, 2019, SVP filed proofs of claim numbers 60676 and 64691. On April 30, 2020, SVP amended proof of claim number 60676 with proof of claim number 103617, and amended proof of claim number 64691 with proof of claim no. 103649 (proofs of claim numbers 60676, 64691, 103617,

and 103649, collectively, the "**Fire Claims**"). Pursuant to the Fire Claims, SVP alleges that it has suffered damages to Grizzly due to the de-energization of PG&E's Caribou-Palermo transmission line, which de-energization, SVP's asserts, was caused by the 2018 Camp Fire. As a result, SVP asserts that it is entitled to damages and other losses under the GDSMA ranging between $24 million - $60 million.

On May 1, 2020, the Debtors filed *PG&E's Schedule of Executory Contracts to Be Assumed and Proposed Cure Amounts* [Docket No. 7037] (the "**Schedule of Assumed Contracts**"), which included the GDMSA as an assumed contract with a proposed cure amount of $0 (the "**Proposed Cure Amount**"). On May 15, 2020, SVP filed the Initial Cure Objection, which among other things, disputed the Proposed Cure Amount.

On May 22, 2020, the Debtors filed the *Notice of Filing of Supplement to Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [Docket No. 7503], which, among other things, amended the Schedule of Assumed Contracts to remove the GDMSA as an agreement that had expired, terminated, or had otherwise been determined by the Debtors to be non-executory. On June 1, 2020, SVP filed the Supplemental Cure Objection, which supplemented the Initial Cure Objection and disputed the removal of the GDMSA from the Schedule of Assumed Contracts.

On July 30, 2021, SVP filed the Motion to Compel requesting that the Court enter an order compelling the Reorganized Debtors to assume or reject the GDMSA. The hearing on the Motion to Compel has been adjourned several times by agreement of the Parties.

Pursuant to a stipulation, dated November 1, 2021 [Docket No.11508] (the "**Mediation Stipulation**"), the Parties agreed to participate in mediation before former Chief Bankruptcy Judge, the Hon. Randall Newsome, regarding the Motion to Compel and any other disputes between the Parties. The Mediation Stipulation was approved by order of the Court dated November 4, 2021 [Docket No. 11538]. Thereafter, the Parties participated in formal mediation sessions on November 30, 2021, December 13, 2021, and February 17, 2022 and informally worked with the mediator on various settlement issues.

Following several months of mediation, including formal and informal sessions and communications between the parties and the mediator, the Reorganized Debtors and SVP entered into the Settlement Agreement, pursuant to which the Parties agreed to resolve any and all disputes relating to

Grizzly, including those arising out of or relating to the Cure Dispute and the Motion to Compel. The Settlement Agreement does not impact SVP's Fire Claims in any way and, SVP may continue to pursue those claims against the Fire Victim Trust in accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures.

## III. THE SETTLEMENT AGREEMENT

The principal terms of the Settlement Agreement are summarized below, but this summary is subject to the Settlement Agreement itself which is set forth as Exhibit A hereto:

| | |
|---|---|
| **Assumption of the Amended GDMSA** | The Parties have agreed to amend the GDMSA, substantially in the form attached as Exhibit A to the Settlement Agreement (the "**Amended GDMSA**"), to among other things, incorporate a new point of connection to connect Grizzly to the Grid. The Amended GDMSA will provide, among other things that: (i) resource adequacy ("**RA**") is a product of Grizzly and the owner of Grizzly receives this product; and (ii) Maintenance Power (as defined in the GDMSA) is not a product of Grizzly and the Reorganized Debtors are unable to provide RA in connection with Maintenance Power. The Amended GDMSA will be deemed assumed by the Reorganized Debtors pursuant to, and in accordance with, the Plan.<br><br>The Reorganized Debtors will submit the Amended GDMSA to the Federal Energy Regulatory Commission ("**FERC**") and each Party has agreed to use commercially reasonable efforts to satisfy any and all FERC requests related thereto, including, but not limited to, modification of the Amended GDMSA. SVP has agreed to support the submission of the Amended GDMSA to FERC and promptly respond to any and all requests that the Reorganized Debtors reasonably determine to be appropriate or helpful in connection thereto. |
| **Settlement Amount** | The Reorganized Debtors will pay SVP the amount of $2,000,000 (the "**Settlement Amount**") within thirty (30) days of the Settlement Effective Date (as defined below). For the avoidance of doubt, no pre- or postpetition interest will be payable by the Reorganized Debtors to SVP with respect to the Settlement Amount nor will any other amounts be payable by the Reorganized Debtors to SVP under the Settlement Agreement. |
| **Re-connection of Grizzly to the Grid** | The Reorganized Debtors will bear the cost of re-connecting Grizzly to the Grid (the "**New Interconnection Point**") with "delay" damages to SVP if: (i) the Reorganized Debtors do not use commercially reasonable efforts to complete the project; (ii) a material cause of any delay is not outside of the Reorganized Debtors' control; (iii) a material cause of any delay is not a result of any conduct or action of SVP or its agents; and (iv) the New Interconnection Point and the Grizzly Tap Line Repair (as defined in the Settlement Agreement) by the Reorganized Debtors is not completed by October 31, 2023 (with $600,000.00 per month of delay damages, which amounts shall not be payable in cash but rather added to the Cost of Plant calculation under the GDMSA). |

| | |
|---|---|
| **Grizzly Ownership and Costs of Tap Line Repair** | SVP retains ownership of the transmission line and the other facilities necessary for interconnection with the Grid as described under and defined in Section 1.1.33(f) of the GDMSA (the "**Grizzly Tap Line**"). The Reorganized Debtors will be the project manager for the repair of the Grizzly Tap Line (the "**Grizzly Tap Line Repair**").<br><br>SVP will bear the first $13,000,000 (the "**Initial SVP Tap Line Repair Contribution**") of the fees, costs, and expenses of the Grizzly Tap Line Repair (after any available insurance proceeds are applied) with any fees, costs, and expenses in excess of the Initial SVP Tap Line Repair Contribution to be shared: (i) 30% by SVP and (i) 70% by the Reorganized Debtors with the Reorganized Debtors' total contribution to the fees, costs, and expense for the Grizzly Tap Line Repair to be capped at $7,500,000.00. For the avoidance of doubt, the Reorganized Debtors total contribution and liability for the Grizzly Tap Line Repair shall not exceed $7,500,000.00 and SVP shall solely be responsible for any and all additional fees, costs, and expenses of the Grizzly Tap Line Repair. |
| **Amendment of the Grizzly O&M Agreement** | The Parties have agreed to certain amendments to the Grizzly O&M Agreement to reflect the terms of the Settlement. |
| **Mutual Releases** | The Parties, on behalf of themselves and certain affiliates, agents, and representatives, have agreed to mutually release any and all claim arising out of or relating to Grizzly that the Parties may have asserted prior to the date of the Settlement Agreement, including, without limitation, any claims arising under or relating to the GDMSA, any and all agreements related to, referenced, or incorporated in the GDMSA, the Grizzly Tap Line, the Motion to Compel, the Cure Dispute, and any fires that occurred before the Settlement Effective Date.<br><br>The release provided under the Settlement Agreement exclude and will not affect (i) any obligation or right to payment provided under the Settlement Agreement, (ii) the obligation of SVP to maintain insurance under the GDMSA (as amended by this settlement to allow for self-insurance on a go forward basis) with respect to any matter except the damage to the Grizzly Tap Line as a result of the Dixie Fire (which is being resolved by the Settlement Agreement), and (iii) SVP's Fire Claims and any rights and remedies against the Fire Victim Trust. For the avoidance of doubt, this release is not intended to and does not prevent or hinder in any way SVP's right to continue to fully pursue the Fire Claims against the Fire Victim Trust, subject to and in accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures. SVP shall have no recourse against the Debtors, the Reorganized Debtors, or their respective assets and properties with respect to the Fire Claims. |
| **Withdrawal of the Cure Dispute and Motion to Compel** | SVP agrees to withdraw the Cure Dispute and Motion to Compel with prejudice. |
| **Settlement Effective Date** | The Settlement Agreement will become effective upon the Bankruptcy Court's entry of a Final Order approving the Settlement Agreement under Bankruptcy Rule 9019. |

> The Settlement Agreement defines a Final Order as an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure has been or may be filed with respect to such order or judgment. The susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code shall not render a Final Order not a Final Order.

## IV. BASIS FOR RELIEF REQUESTED

### A. The Settlement Agreement is in the Best Interests of the Debtors' Estates and Should be Approved Pursuant to Bankruptcy Rule 9019

The Settlement Agreement is in the best interests of the Debtors' estates and all stakeholders. Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a). This rule empowers Bankruptcy Courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group*, *Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Compromises and settlements are normal and welcomed occurrences in chapter 11 because they allow a debtor and its creditors to avoid the financial and other burdens associated with litigation over contentious issues and expedite the administration of the bankruptcy estate. *See Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). The decision to approve a particular compromise lies within the sound discretion of the Court. *Id.*

The standard for approval of settlements under Bankruptcy Rule 9019 is deferential to the debtor's judgment and merely requires a court to ensure the settlement does not fall below the lowest point in the range of reasonableness in terms of benefits to the estate. *See City Sanitation v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (*citing In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim;" rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness'") (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) ("It has been held that the court's proper role is 'to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'") (quoting *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 496–97).

Courts in the Ninth Circuit consider four factors in determining whether a settlement should be approved: "(1) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (2) the difficulties, if any, to be encountered in the matter of collecting any litigated judgment; (3) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and the proper deference to their reasonable views." *In re A&C Props.*, 784 F.2d at 1380. It is not necessary that the conclusions reached in the consideration of each of the above factors support the settlement, but taken as a whole, the conclusions must favor the approval of the settlement. *See In re Pac. Gas & Elec. Co.*, 304 B.R. at 417 (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

Each of the factors that courts consider in connection with a request to approve a settlement under Bankruptcy Rule 9019 weigh heavily in favor of approving the Settlement Agreement, as set forth below.

### 1. The Probability of Success in Litigation

While the Reorganized Debtors are confident in their legal positions and believe the probability of success was high, the absence of a settlement would have required extensive litigation of various disputes between and among the Parties where the outcome was uncertain. Indeed, the Settlement also resolves potential disputes concerning the impact of the Dixie fire – disputes not currently encompassed in the motions before the Court. In addition, the Settlement Agreement also preserves and enhances a business relationship by and among the Reorganized Debtors and SVP and resolves various business-centric

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

disputes. Moreover, the Settlement Agreement avoids the cost, time, and expense of litigating disputes at issue.

### 2. Potential Difficulties in Collecting Any Judgment

This factor is not relevant because the collectability of a future judgment is not in question. *See In re Nutraquest, Inc.*, 434 F.3d 639, 646 (3d Cir. 2006) ("The parties agree that the second factor (ease of collection) is not relevant here, so we only discuss three of the four *Martin* factors.").

### 3. The Complexity and Expense of Any Litigation

Compromises are favored precisely to "minimize litigation and expedite the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Multiple courts within the Ninth Circuit have found that expensive, contentious litigation weighs in favor of compromise, even after trial has commenced. *See In re Am. Bldg. Storage, LLC*, 2007 WL 7532281, at *6 (B.A.P. 9th Cir. Apr. 2, 2007) ("Likewise, the factor of 'complexity' and 'expense' of litigation weighs in favor of the settlement. The record shows that the litigation was highly contentious, and the second phase of the trial had not even been set yet."); *In re Waksberg*, 2014 WL 5285648, at *10 (B.A.P. 9th Cir. Oct. 15, 2014) (finding that this factor favored settlement when there "already had been very time consuming and extremely costly" litigation and would require further expense and time to resolve).

The Settlement Agreement will similarly serve to reduce litigation, minimize expense, and expedite the administration of the estate. The Settlement Agreement puts an end to what has already been protracted disputes and negotiations involving highly complex contracts and legal issues arising under both State and Federal law. This factor thus favors approval of the Settlement Agreement.

### 4. The Interests of Creditors

As the Plan results in the payment in full and unimpairment of all general unsecured creditors, the Settlement Agreement has no impact on other creditors, which weighs in favor of approval. *See In re Pac. Gas and Elec. Co.*, 304 B.R. at 417 (holding the fourth *A & C Properties* factor favored approval of settlement where objecting creditors were paid in full).

**B. The Settlement Agreement is a Sound Exercise of the Debtors' Business Judgment and Should be Approved**

In the Reorganized Debtors' business judgment, the Settlement Agreement is fair, reasonable, and

equitable, and in the Reorganized Debtors' best interests. The Settlement Agreement should thus be approved. The Settlement Agreement resolves the Cure Dispute, the Motion to Compel, and all other disputes between the Parties relating to Grizzly and the assumption of the GDMSA, and is the result of months of mediation and arms-length, good faith negotiations between the Parties. Compromises are favored precisely to "minimize litigation and expedite the administration of a bankruptcy estate." *In re Martin*, 91 F.3d at 393. The Settlement Agreement accomplishes both of those goals, specifically, the Settlement Agreement resolves upwards of $60 million in claims asserted by SVP against the Debtors' estates as part of the Cure Dispute and the Motion to Compel, and avoids the additional costs and expense of protracted and uncertain litigation between the Parties relating to the assumption and rejection of the GDMSA and related cure amounts and issues. The Settlement Agreement further resolves any disputes between the Parties regarding the allocation of costs for the reconnection of Grizzly to the Grid and resolves other operational disputes, which will allow the Parties to continue their commercial relationship going forward.

The operational and regulatory processes required to run Grizzly safely and effectively are complex and must be adaptable to ongoing regulatory changes, and the exhaustive efforts of the Parties to comprehensively analyze those processes and ultimately reach a compromise that ensures continuous regulatory compliance should not go to waste.

A reconnected Grizzly will contribute power to the Grid, which will increase the total electricity available to the Grid, making it more diversified and reliable overall. Thus, approval of the Settlement Agreement will benefit the Reorganized Debtors, the Debtors' estates and creditors. Additionally, as set forth above, the Settlement Agreement has no effect on SVP's Fire Claims, which were permanently channeled to the Fire Victim Trust on the Plan Effective Date and SVP may continue to pursue those claims against the Fire Victim Trust, subject to and in accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures.

The Reorganized Debtors have concluded, in their business judgment, that it would be more cost efficient to resolve the Grizzly related disputes with SVP consensually than to engage in further litigation. The Parties participated in multiple mediation sessions before Judge Newsome and spent several months discussing and negotiating various settlement terms and structures to resolve the disputes relating to

Grizzly, and having considered the other resolution options. Furthermore, the terms of the Settlement Agreement are fair and reasonable. Accordingly, the Settlement Agreement is in the best interest of the Reorganized Debtors, the Debtors' estates, creditors, and other parties in interest, and should be approved.

## V. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) SVP; (iii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit no further notice is required.

No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other court.

WHEREFORE the Reorganized Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Reorganized Debtors' business judgment, appropriate under Bankruptcy Rule 9019, and in the best interests of the Debtors' estates, creditors, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: December 16, 2022

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

By: */s/ Richard W. Slack*
      Richard W. Slack

*Attorneys for Debtors and Reorganized Debtors*