1    BROWN RUDNICK LLP
     David J. Molton (SBN 262075)
2    (DMolton@brownrudnick.com)
     Seven Times Square
3    New York, New York 10036
     Telephone:     (212) 209-4800
4    Facsimile:      (212) 209-4801

5    BROWN RUDNICK LLP
     Joel S. Miliband (SBN 077438)
6    (JMiliband@brownrudnick.com)
     2211 Michelson Drive, Seventh Floor
7    Irvine, California 92612
     Telephone:     (949) 752-7100
8    Facsimile:      (949) 252-1514

9    *Attorneys for the Fire Victim Trustee*

10

11               **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12                   **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 13   In re: | Case No. 19-30088 (DM) |
| 14   **PG&E CORPORATION,** | Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| 15          **- and –** | |
| 16   **PACIFIC GAS AND ELECTRIC** | **FIRE VICTIM TRUSTEE'S OBJECTION TO CONSOLIDATED MOTION TO** |
| 17   **COMPANY,**<br>   **Debtors.** | **ALLOW/DEEM TIMELY LATE FILING OF CLAIMANTS, AND MEMORANDUM OF POINTS AND AUTHORITIES AND** |
| 18 | **DECLARATION OF ROBERT M. BONE IN SUPPORT THEREOF** |
| 19   ☐ Affects PG&E Corporation | |
| 20   ☐ Affects Pacific Gas and Electric Company<br>   ☑ Affects both Debtors | [Relates to Docket Number 13318] |
| 21 | |
| 22 | Hearing Date:     January 10, 2023<br>Hearing Time:     10:00 a.m. |
| 23   *\* All papers shall be filed in the Lead Case,*<br>   *No. 19-30088 (DM).* | Place: Hearing will be conducted telephonically or<br>         by video |

24

25

26

27

28

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust, by and through her undersigned counsel, hereby submits this Objection to the *Motion to Allow/Deem Timely Late Filing of Claimants, Memorandum of Points and Authorities and Declaration* of *Robert M. Bone in Support Thereof* [Docket No. 13318] (the "**Motion**") filed on December 6, 2022 on behalf of the one hundred ten (110) claimants ("**Movants**") listed on Exhibit 1 hereto.   In support of this Objection, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

The Fire Victim Trust understands that the Fires caused by PG&E in 2015, 2017 and 2108 made it hard for survivors to undertake many everyday tasks due displacement, trauma and other factors.  The Trust has been extremely accommodating with respect to late claims and has made every effort to allow as many Fire Victims as possible to present their claims to the Trust for consideration.  Nevertheless, the Trustee must balance the Trust's efforts to address as many Fire Victim Claims as possible against the fact that **82,692** Fire Victims – many of whom suffered horrific losses – were able to file timely proofs of claim and are prejudiced by the acceptance of late claims. All of those Fire Victims remain in the Trust today, waiting to learn how much of their claims can be paid.  Also waiting within the Trust are Fire Victims who mailed their proofs of claim to the Debtors' claims agent in New York prior to the Tuesday, December 31, 2019 deadline but whose proofs of claim were not received by the claims agent until the end of that week due to the holidays.  Like Movants, those claimants had to file late claim motions to have their days-late proofs of claim deemed timely.  However, there is a fundamental difference between claimants who file motions to have long-filed late proofs of claims deemed timely after receiving notice from the Trust that such action is necessary and those who have made no attempt to engage with the Trust before filing late claim motions for years-late proofs of claim.

In an effort to quell the rising tide of late claim motions being filed in this case, the former Trustee stopped stipulating to the relief requested in late claim motions in mid-May of this year. While that decision initially seemed to slow the number of motions being filed, once it became clear that late claim motions were still being granted, the number of such motions being filed began to increase again.  Since the former Trustee stopped stipulating to the relief requested in late claim

Case: 19-30088    Doc# 13372    Filed: 12/19/22    Entered: 12/19/22 16:24:21    Page 2 of 21

motions, motions and letters have been filed requesting that the Court deem well over 1,000 proofs of claim "timely" for the purpose of administration by the Trust. The majority of these letters and motions have not presented unique circumstances but instead have duplicate previously filed late claim letters and motions. One hundred fifty-five (155) late claim motions were filed in August alone, prompting the Trustee to state in several filings with this Court that the Trust would have to discontinue its liberal non-opposition policy with respect to late claim motions filed after September 30, 2022. The deadline reflected the recognition that the assets available to the Trust to pay claims (including the PG&E stock held by the Trust) do not account for the extreme increase in the number of new proofs of claim being filed in the last six months.

Unfortunately, the Trustee's statement regarding the change in policy prompted an astounding 672 late claim motions to be filed on September 30, 2022 alone.[1] To put these numbers in perspective, in 2020, which included the months immediately after both the extended bar date and the effective date of the Trust (both events that could be expected to prompt the filing of late claim motions), the total number of late claim motions filed alleging Fire Victim Claims was 55. In 2021, the total number was only 22. Based on historical data, the Trust had no reason to expect the magnitude of the late claim motions and letters filed in the last six months based on historical data. These late claim filings have covered ***more than thirteen times the number of late proofs of claim addressed by late claim motions filed in the previous two years combined***. Most of these late proofs of claim (including Movants' proofs of claim, all of which were filed in October 2022 or later) were only recently filed. It is especially important that the Court recognize that ***none of these thousands of late-filed proofs of claim were considered when the amount of the Aggregate Fire Victim Consideration[2] was determined and agreed to*** by the Official Committee of Tort Claimants

---

[1] Although the Motion argues that the Court should disregard the Trustee's decision to strictly review late claim motions after September 30, counsel for Movants, who filed motions consolidating 671 of the late claim motions filed on September 30, clearly expected that late claims would no longer be unopposed thereafter.

[2] Capitalized terms used but not defined herein have the meanings ascribed such terms in the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020 (the "**Plan**").

(the "**TCC**") and counsel representing holders of Fire Victim Claims. Movant and all other late claimants are requesting that the Court allow them to share in a limited fund that was expected to fully compensate only those claimants who filed timely proofs of claim. In addition, all of these new, unanticipated claims must be reviewed, evaluated and determined before the Trust can make final payments to any of the tens of thousands of Fire Victims who have complied with all of the Trust deadlines and who must wait until all approved claims are determined to learn how much of their approved claims can be paid.

As of December 12, 2022, the Trust had awarded determination notices for **90% of all claim questionnaires** that have been submitted to the Trust. The awards associated with those determination notices total **$14.04 billion**. Until all claims are determined, all determinations are accepted and all of the Trust's PG&E Stock is fully monetized, the Trust is unable to predict with certainty the amount of funds available to pay Fire Victim Claims. The economic prejudice to the Trust's beneficiaries of allowing more late claims into the Trust is manifold, as an increasing number of claims leads to increased administrative expenses and unanticipated adjustments to the Trust's economic modeling and payments. Further, as more fully explained below, all late claims serve to delay final payment to Fire Victims who filed timely proofs of claim. Based on the Trust's records, that delay is significantly compounded when claims are added to the Trust by motions consolidating numerous late claims.

## RELEVANT BACKGROUND

1. On January 29, 2019, PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Reorganized Debtors filed the Chapter 11 Cases to address the billions of dollars of damage and loss relating to the devastating 2015, 2017 and 2018 California fires and to provide compensation to wildfire victims.

2. On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors. On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**TCC**").

3.      On March 14, 2019, the Debtors filed their schedules of assets and liabilities. By Order dated July 1, 2019, the Court established October 21, 2019 (the "**Bar Date**") as the last date to file proofs of claim in the Chapter 11 Cases [Docket No. 2806] (the "**Bar Date Order**"). By Order dated November 11, 2019, the Court extended the Bar Date to December 31, 2019 (the "**Extended Bar Date**") for unfiled, non-governmental Fire Claimants [Docket No. 4672] (the "**Extended Fire Victims Bar Date Order**")

4.      The Extended Fire Victims Bar Date Order was entered in response to a motion filed by the TCC.  The TCC argued that the Bar Date "should be extended for the fire victims on the ground that evidence filed herewith establishes that a large number of victims are not filing claims in these chapter 11 cases because they are impaired from filing. Their impairments include emotional distress, suffering from trauma caused by the wildfire that destroyed everything they own, confusion caused by the trauma, a lack of awareness of the fire claims bar date, and a belief that a claimant needs to be insured to file a claim." [Docket No. 4293 at 5:2-8].  In considering the TCC motion and approving the resulting stipulation between the TCC and the Debtors, this Court has already considered and addressed the adequacy of notice to Fire Victims.  Movants' allegation that "in this case, there was no widely distributed notice to residents impacted by the subject fires" is contrary to the facts well-known by this Court.  The Debtors provided a well-publicized notice of the Extended Bar Date – the *second notice* provided to Fire Victims of the claims bar date – and coordinated with TCC for the appointment of a Claims Representative who designed and implemented with his team an expansive outreach effort designed to identify, locate, and assist Fire Victims who were eligible to file claims but failed to do so by the original bar date. As a result of the Court's careful consideration of this issue and the thoughtful manner in which the Debtors redoubled their efforts to reach additional Fire Victims, more than 82,000 claimants, some of whom suffered unfathomable losses, filed their claims in a timely manner.

## OBJECTION

5.      Movants assert that their delays in filing their proofs of claim – between 1,006 and 1,069 days after the Extended Bar Date – were "reasonable" because they only recently learned that their claims were compensable.  Yet there are more than 1,700 Fire Victims who filed claims for

injuries similar to those asserted by Movants – emotional distress claims that were not associated with a submitted property claim – before the Extended Bar Date, without waiting to see if they would receive compensation for those claims.  Importantly, this figure does not include claimants (for example, children) whose claims were submitted on the same proof of claim as another claimant who asserted property-related claims (such as a parent). Clearly, Movants' claim that they "received absolutely no notice whatsoever of their entitlement to file claim" is overstated at best. Even before the second bar date notice specifically targeted at Fire Victims, this Court approved a notice of the original bar date for Fire-related claims that stated, "[i]f you believe you have a claim against either of the Debtors for personal injury or wrongful death, property damage, or other loss resulting from or in any way relating to the Northern California Fires, you or your authorized agent or attorney MUST file a Proof of Claim for your Fire Claim prior to the Bar Date in accordance with the instructions in this notice." [Docket No. 2806 Exhibit B-2]. Contrary to Movants' assertions, Debtors are not required to inform potential claimants of what claims they may have or whether such claims will ultimately be compensable.  Such a process would be untenable, as it would necessarily place claims administration ahead of the filing of proofs of claim.  As explained in the following paragraphs, Movants' delay in filing their proofs of claim is not a result of excusable neglect and their proofs of claim should not be deemed timely filed for the purpose of administration by the Trust.

**Equity Does not Favor Movants**

6.      As Movants acknowledge, The Supreme Court has opined that "that the determination [of whether to allow a late-filed claim to be deemed timely] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 123 L. Ed. 2d 74 (1993). The interests the Court is being asked to balance here is not those of Movants versus those of the Debtors as framed in the Motion, but those of Movants versus those of more than 82,000 Fire Victims who filed proofs of claim by the Extended Bar Date despite often seemingly insurmountable odds.  All of those timely Fire Victims must wait until ***all*** claims – including those that Movants are asking to be deemed timely now – have been determined before

they will find out how much of their claims can be paid. It would be grossly inequitable to allow Movants' late claims to dilute and delay the payment of timely filed claims held by Fire Victims who have engaged with the Trust from its inception.

7. The Motion relies primarily upon the Supreme Court opinion in *Pioneer*. Notably, in *Pioneer*, counsel had filed the claimant's proof of claim only 20 after the bar date in that case and the Supreme Court found that the bar date notice in that case contained a "dramatic ambiguity" regarding the bar date. By contrast, Movants' proofs of claim were filed **at least 1,006 days after the Extended Bar Date**, with the last of the consolidated proofs of claim being filed on December 4, 2022. As noted above, the notice of the Extended Bar Date was the *second* notice provided to potential Fire Victims and it was carefully crafted to inform that group of the deadline to file any claims arising from a Fire. Contrary to Movants' allegations in the Motion, neither the Debtors nor the Trust had a responsibility to determine whether Movants' alleged claims were compensable or to inform Movants (or any other potential claimant) whether their alleged claims were compensable.

8. While courts have decided that there is no harm to *the debtor* in allowing late claims to be considered when a solvent debtor is paying all claims in full in a bankruptcy case, in this case the Debtors are not paying any additional consideration to the Trust no matter how many late claims are added. Pursuant to Section 6.8(b) of the Plan and Paragraph 18(e)(iii) of the Confirmation Order, the Trustee has stepped into the Debtors' shoes with respect to Fire Victim Claims. The relevant inquiry in a request to deem a late Fire Victim Claim timely is how the requested relief will affect the Trust rather than the Debtors, and specifically the effect on the Trust's beneficiaries, the Fire Victims. Here, all Fire Victim Claims are channeled to the Trust, which was funded with limited assets under the Plan. All Fire Victim Claims that have been determined by the Trust so far have taken into consideration the expected number of Fire Victim Claims *that were left to be paid as of the date those determinations were made*. Every late claim accepted by the Trust – even those that are ultimately deemed non-compensable – takes time and money from Fire Victims who have met all deadlines and are waiting for their final payments.

/ / /

9.      The Supreme Court has recognized that Bankruptcy Rule 9006(b)(1) permits bankruptcy courts to accept proofs of claim filed after the bar date *where appropriate* in cases of excusable neglect due to inadvertence, mistake, carelessness or circumstances beyond the claimant's control.  *Pioneer*, 507 U.S. at 388, 113 S. Ct. at 1495.  As the dissent in *Pioneer* recognized, however, "the statute does not *require* the court to forgive every omission caused by excusable neglect, but states that the court "*may*" grant relief "in its discretion." *Id.*, 507 U.S. at 399, 113 S. Ct. at 1500 (emphasis in original).

10.      The threshold determination to be made under Bankruptcy Rule 9006(b)(1) is whether Movants' failures to file their proofs of claim in this case resulted from excusable neglect.  Movants have not provided any facts that would support a finding of "excusable neglect."  Rather than "setting forth brief statements of their particular circumstances" as required by the Court's August 28, 2022 *Order Consolidating Motions to File Late Claims* [Docket No. 12875], Exhibit 1 to the Motion repeats the same boiler plate language for each of the Movants as has been used by Movants' counsel in hundreds of earlier late claim motions.

11.      As this Court has recognized, claimants who file late proofs of claim bear "the burden of presenting facts demonstrating excusable neglect." *In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 89 (2004) (citing *Key Bar Invs., Inc. v. Cahn* (*In re Cahn*), 188 B.R. 627 (9th Cir. BAP 1995)).  The use of boiler plate language in place of particular circumstances and claiming that Movants should have been specifically informed whether their particular claims were compensable does not meet this burden.

12.      The Motion states that Movants did not file proofs of claim before the Extended Bar Date because they were unaware that their claims were compensable.  However, in discussing the "excusable neglect" standard of Bankruptcy Rule 9006(b)(1), the Supreme Court referred to the interpretation of Rule 6(b) of the Federal Rules of Civil Procedure and acknowledged that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392, 113 S. Ct. at 1496.  Ignorance is not a sufficient excuse and equity cannot favor a claimant who pleads ignorance over tens of thousands who followed the rules.

13.     The Motion does not assert that Movants were unable to file timely claims due to circumstances beyond their control or otherwise establish excusable neglect for waiting nearly three years after the Extended Bar Date to file proofs of claim. Rather, it asserts that the Debtors (and the Trust, which did not exist prior to July 1, 2020, more than six months after the Extended Bar Date) made "little to no substantial effort . . . to alert prospective claimants of their right or entitlement to file a claim." Movants cite *In re ZiLOG, Inc.*, 450 F.3d 996 (9th Cir. 2006), to support the allegation that the Debtors should have informed every potential claimant, known or unknown, whether he or she had a compensable claim. However, *ZiLOG* involved a Debtor that sent its employees confusing instructions regarding the filing of proofs of claim, which the Court of Appeals found likely to cause the claimants in that case to believe that they did not have to file proofs of claim in their employer's bankruptcy case. Here, the Debtors made no such statements. Rather, the Debtors, the TCC, the court-appointed Claims Representative and Prime Clerk made a concerted effort to inform Fire Victims of the deadline to file a proof of claim for any claims arising from the enumerated Fires. As noted in the *Second and Final Report of Court Appointed Claims Representative* [Dkt. 5432], their effort to identify, locate and assist "fire victims who were eligible to file claims but failed to do so by the original bar date" resulted in an additional **9,265** proofs of claim being timely filed after the original claims bar date. *Dkt. 5432* at page 4.

## Application of Pioneer Factors

14.     In *Pioneer* the Supreme Court applied the majority of what was then the Ninth Circuit test for determining whether a failure to timely file a proof of claim was due to excusable neglect: (1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; and (4) whether the creditor acted in good faith. *Id.,* 507 U.S. at 395, 113 S. Ct. at 1498.

## Deeming Movants' Late Claims "Timely" Will Prejudice Other Fire Victims

15.     The first consideration in determining whether a late claim filing was the result of "excusable neglect" under *Pioneer* is the danger of prejudice to the debtor. This factor is irrelevant in the present case because the Trust has taken the place of the Debtors with respect to Fire Victim

Claims. While it is true that the relief requested in the Motion will not prejudice the *Debtors*, which have already satisfied their funding obligations to the Trust under the Plan, it most certainly prejudices the Trust and its beneficiaries tens of thousands of claimants who timely filed proofs of claim arising from Fires in these cases.

16. As noted above, the *Pioneer* Court noted that "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* Equity does not support the filing of a late claim because claimants have just realized that others are being paid by the Trust for similar claims. This Court already considered and confirmed the adequacy of the notice of the Extended Bar Date and thousands of Fire Victims with similar claims filed timely claims. For these reasons, the first factor does not support allowing Movants' late claims.

**The Length of Movants' Delay is Extreme and Negatively Impacts Trust Administration**

17. The second consideration under *Pioneer* is the length of delay and its potential impact on judicial proceedings. Movants filed their proofs of claim a minimum of **1,006 days after the Extended Bar Date** yet claim that their nearly three-year delays were "reasonable." As noted above, the Trust has a limited fund from which to pay all Fire Victim Claims. As such, the Trust cannot finally determine how much it can pay on account of any Fire Victim Claim until it adjudicates every Fire Victim Claim.

18. The continued addition of claims to the Fire Victim Trust prevents the Trust from allocating its limited funds and further extends the time that claimants who timely filed their Fire Victim Claims must wait for final payments, thus delaying the administration of Fire Victim Claims and prejudicing those who hold timely filed Fire Victim Claims with delay.

19. If allowed in the Trust, each of the Movants must file a claims questionnaire before the Trust can even begin to administer their claims. Movants' counsel has still not submitted claims questionnaires for the majority of the claims included in their September consolidated late claim motions. Based on this pace, it is likely that the Trust would not be able to begin to administer Movants' claims for at least several months. As noted in a recent letter to this Court from a Fire Victim, these delays "are holding up the rest of us!" [Dkt. No. 13365]. The extreme

9

1   length of Movants' delay and the impact of a nearly three-year delay on the final payment of timely

2   filed Fire Victim Claims weighs heavily against deeming Movants' claims timely.

3   **Timely Filing Proofs of Claim was not Beyond Movants' Control**

4   20.     The third *Pioneer* factor, whether the delay was beyond the late claimant's control,

5   also weighs against granting the relief requested in the Motions.  As explained above, the Motion

6   does not provide any basis for a finding of excusable neglect.  The boiler plate statements used to

7   describe Movants' circumstances failure to explain what prevented Movants from filing proofs of

8   claim earlier.  While the Motion states that Movants did not know they had compensable claims,

9   the very case cited by Movants' counsel in support of deeming their extremely late claims "timely"

10  acknowledges that ignorance is not a sufficient excuse.  *See Pioneer*, 507 U.S. at 392, 113 S. Ct. at

11  1496.

12  21.     Although the Trust does not minimize Movants' claims in any way, tens of

13  thousands of other claimants with emotional distress claims and other similar claims arising from

14  the North Bay Fires were able file timely proofs of claim.  This Court determined that notice to all

15  potential Fire Victims was sufficient in connection with both bar orders. There is no evidence that

16  Movants made any effort to reach out to the Trust in the two and a half years it has existed.  The

17  third *Pioneer* factor therefore must also be decided in favor of the Trust and the Fire Victims who

18  have made the effort to engage with the Trust.

19  **Even Without Bad Faith, Equity Does Not Favor Movants Over Other Fire Victims**

20  22.     While the Trustee does not believe that Movants lack the good faith that comprises

21  the final consideration listed by the *Pioneer* court, it is clear from the Motion that Movants were

22  not prevented from filing timely claims by any circumstances.  None of Movants' neighbors who

23  filed timely proof claims knew whether the Trust would compensate them for every claim they

24  asserted against PG&E, yet they filed their claims before the Extended Bar Date rather than waiting

25  to hear what others had received from the Trust.  Many filed without the benefit of counsel to guide

26  them through the process.  The Motion fails to state any facts that justify Movants' nearly three-

27  year delay in filing their proof of claim.

28  / / /

23.     In addition, as is evidenced by overwhelming number of late claim motions filed within the two weeks alone, allowing Movants' proof of claim to be deemed timely filed without extenuating circumstances would encourage other latecomers to file similar motions.  The Trustee provided notice that the Trust would begin strictly reviewing all late claim motions filed after September 30, 2022.  The September 30 "deadline" was widely disseminated by social media and other "word of mouth" sources that Movants claim gave them notice their claims were compensable.    Deeming late claims timely absent extenuating circumstances after such notice would be grossly inequitable to those holding timely filed Fire Victim Claims.

24.     For the foregoing reasons, Movants fail to meet their burden for establishing "excusable neglect" for filing their proofs of claim nearly three years after the Extended Bar Date. Movants' proofs of claim listed on Exhibit 1 hereto should not be deemed timely for the purpose of administration by the Trust.

### **<u>CONCLUSION</u>**

The Trustee respectfully requests that this Court deny the relief requested in the Motion and grant the Trust such other and further relief as may be just.

DATED:  December 19, 2022              BROWN RUDNICK LLP

By:   /s/ *DAVID J. MOLTON*
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036

And

Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612

*Attorneys for Fire Victim Trustee*

11

1

**EXHIBIT 1**

2

List Of Movants' Proofs Of Claim

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | CLAIMANT(S) | POC NUMBER(S) | POC FILING DATE |
|---|---|---|---|
| 1. | Keith Mason Crownover<br>Lori Ann Crownover | 109585 | 10/02/2022 |
| 2. | Barbara O'Connor<br>Gary Parsons | 109584 | 10/02/2022 |
| 3. | Kenneth Paul Tinkham<br>Renee Marie Tinkham<br>Mason Parker Tinkham<br>Hayden Thomas Tinkham | 109583 | 10/2/2022 |
| 4. | Banyan Parker<br>Garrett Parker<br>Zakary Parker<br>Deklin Parker | 109582 | 10/2/2022 |
| 5. | Robert Burns<br>Penny Burns | 109581 | 10/2/2022 |
| 6. | Ernest Carter, Jr.<br>Kathleen Ann Carter | 109671 | 11/11/2022 |
| 7. | Nancy Ramos<br>Luis Ramos<br>Olivia Ramires<br>Santino Ramos | 109670 | 11/11/2022 |
| 8. | Sue Thurston<br>Zack Thurston<br>Samantha Thurston | 109673 | 11/11/2022 |
| 9. | Shelly Schubert<br>Landon Schubert<br>Carley Schubert | 109672 | 11/11/2022 |
| 10. | Steven Salfi<br>Carmen Salfi<br>Paytin Salfi<br>Cambryel Salfi<br>Isabella Salfi<br>Mary Salfi | 109674 | 11/11/2022 |
| 11. | Randy James Dodson<br>Cari Dodson | 109675 | 11/11/2022 |
| 12. | Loyde Johnson<br>Sherry Johnson | 109677 | 11/16/2022 |
| 13. | Kristine Burns-Stirnaman<br>Emilie Stirnaman | 109680 | 11/11/2022 |

13

| | CLAIMANT(S) | POC NUMBER(S) | POC FILING DATE |
|---|---|---|---|
| 14. | Donald Mills<br>Mary Miller<br>James Mills<br>Helen Mills | 109679 | 11/16/2022 |
| 15. | Leah Fowler | 109683<br>10971 (duplicative) | 11/16/2022 |
| 16. | Kinsey Hudson<br>Kamdyn Coggins<br>Klayton Coggins | 109678 | 11/16/2022 |
| 17. | Tiffany Johnson<br>Haily Johnson<br>Sara Johnson<br>Anthony Johnson<br>Tatiana Johnson<br>Cloey Johnson | 109681 | 11/16/2022 |
| 18. | Scott Booth<br>Catherine Booth | 109686 | 11/16/2022 |
| 19. | Janet Boyd<br>Gerald Boyd | 109682 | 11/16/2022 |
| 20. | Mark Tannehill<br>Lupe Tannehill | 109685 | 11/16/2022 |
| 21. | Julie Bertoli<br>Jeff Bertoli | 109699 | 11/16/2022 |
| 22. | Cheryl Diehm | 109697 | 11/16/2022 |
| 23. | Clarence Younger | 109687 | 11/16/2022 |
| 24. | Laura Graber<br>Charlie Graber | 109689 | 11/16/2022 |
| 25. | Desa Juarez<br>Casi Juarez | 109691<br>109701 (duplicative) | 11/16/2022 |
| 26. | Grace Martin<br>Natalie Martin<br>Nick Martin<br>Joey Martin | 109690 | 11/16/2022 |
| 27. | Karl Nonamaker | 109693 | 11/16/2022 |
| 28. | Richard J. Seitz<br>Gay A. Seitz<br>Caylie R. Seitz<br>Calan I. Seitz | 109692 | 11/16/2022 |

14

| | CLAIMANT(S) | POC NUMBER(S) | POC FILING DATE |
|---|---|---|---|
| 29. | Beth Streets<br>Kenneth Streets | 109694 | 11/16/2022 |
| 30. | Debbie Ausiello<br>Armand Ausiello | 109688 | 11/16/2022 |
| 31. | Thuan Lee | 109698 | 11/16/2022 |
| 32. | Judith A. Schapansky<br>Andrew A. Weinberg | 109696 | 11/16/2022 |
| 33. | Thomas Parker<br>Shirley Parker | 109695 | 11/16/2022 |
| 34. | Jason VanAlen | 109702 | 11/19/2022 |
| 35. | Jayne Ring Slayton<br>Timothy Dean Slayton | 109703 | 11/19/2022 |
| 36. | Taylor Bathke<br>Victoria I. Nelson<br>Troy Tomas Bathke | 109829 | 11/19/2022 |
| 37. | Arnold Fred Stellema<br>Nannette Lynn Meyers<br>Alexander James Stellema<br>Elizabeth Anne Stellema<br>Victoria Lynn Stellema | 109716 | 11/19/2022 |
| 38. | Mary Keith Roberts | 109742 | 11/19/2022 |
| 39. | Angela Haseltine | 109705 | 11/19/2022 |
| 40. | Rebecca Sanchez<br>Pedro Espana<br>Alexjandro Espana<br>Eric Espana<br>Adeline Ramirez<br>Nathaniel Ramirez | 109721 | 11/19/2022 |
| 41. | Edeltraud Petermann | 109724 | 11/19/2022 |
| 42. | Jill Christensen | 109709 | 11/19/2022 |
| 43. | Holly Rose Ortega<br>Christopher Ortega<br>Rebecca Lynn Nielson | 109720 | 11/19/2022 |
| 44. | Katrina Lidholm<br>Melia Vielma<br>Victor Rodriguez | 109717 | 11/19/2022 |

| | CLAIMANT(S) | POC NUMBER(S) | POC FILING DATE |
|---|---|---|---|
| 45. | Bere Ramos<br>Olivia Ramirez<br>Santino Ramos<br>Katia Ramos<br>Luis Ramos<br>Nancy Ramos | 109707 | 11/19/2022 |
| 46. | Janet Stapleton | 109710 | 11/19/2022 |
| 47. | Bridget D. Newcomb | 109636 | 10/05/2022 |
| 48. | Melanie Martinez | 109578 | 10/02/2022 |
| 49. | Allen James Moore<br>Donna Marie Moore | 109718 | 11/19/2022 |
| 50. | Ykeallo Hezchias<br>Tebletz Bein<br>Sawait Seyoum<br>Dawit Seyoum<br>Sahyim Seyoum<br>Mia Seyoum<br>Simona Seyoum | 109722<br>109769 (duplicative) | 11/19/2022 |
| 51. | Kelly Johnson<br>Anna Fox<br>Tyler Fox | 109743 | 11/19/2022 |
| 52. | Molly McGuire-Nunn<br>Jacob Nunn<br>Dylan Nunn<br>Graysen Reno-Nunn | 109760 | 11/19/2022 |
| 53. | Raves Faull<br>Rene Faull | 109714 | 11/19/2022 |
| 54. | Babak Sariaslani<br>Malisa Evets<br>Roya Sariaslani<br>Harlow Sariaslani<br>Fatemeh Sariaslani<br>Ghazal Sariaslani<br>Dan Snyder<br>Brayan Gomez | 109713 | 11/19/2022 |
| 55. | Cheyne Thompson<br>Casey Thompson<br>Celeste Thompson | 109726 | 11/19/2022 |
| 56. | Carol Faull | 109728 | 11/19/2022 |

| | CLAIMANT(S) | POC NUMBER(S) | POC FILING DATE |
|---|---|---|---|
| 57. | Daniel Macler<br>Melissa Locks<br>Mason Locks<br>Mia Locks | 109725 | 11/19/2022 |
| 58. | Suzie Schlick | 109729 | 11/19/2022 |
| 59. | Sydnie Brewer<br>Jeremy Brewer | 109731 | 11/19/2022 |
| 60. | Tom Kille<br>Erma Kille | 109730 | 11/19/2022 |
| 61. | Oliva Edwards<br>Colette Edwards | 109727 | 11/19/2022 |
| 62. | Barry Miller<br>Amy Miller<br>Laine Miller<br>Sidney Miller | 109745 | 11/19/2022 |
| 63. | Sharon Justin<br>Doreen Burwell | 109747 | 11/19/2022 |
| 64. | Helena Torre-Minto | 109830 | 11/19/2022 |
| 65. | Jeffrey Alan Hendrix<br>Angela Lynn Hendrix<br>Alex Mason Hendrix<br>Max Miranda Hendrix | 109761 | 11/19/2022 |
| 66. | Sean Hubert<br>Jennifer Hubert<br>Ryan Hubert<br>Colin Hubert | 109753 | 11/19/2022 |
| 67. | Clarissa Harris<br>Travis Harris<br>Julia Harris | 109831 | 11/19/2022 |
| 68. | Eric Sumner<br>Nikki Crocker<br>Sierra Sumner<br>Treston Sumner | 109758 | 11/19/2022 |
| 69. | Diane K. Cox | 109755 | 11/19/2022 |
| 70. | Timothy Keehn<br>Aida Herresa-Keehn | 109732 | 11/19/2022 |
| 71. | Heather Jackson<br>Jacob Jackson<br>Steven Gomez | 109704 | 11/19/2022 |

17

| | CLAIMANT(S) | POC NUMBER(S) | POC FILING DATE |
|---|---|---|---|
| 72. | Kelsey Fox | 109735 | 11/19/2022 |
| 73. | Janet Bell Hall<br>Jannay Avelar<br>Janson Alex Avelar | 109741<br>109734 (duplicative) | 11/19/2022 |
| 74. | Denise Pena<br>Emilio Pena<br>Miranda Rose Pena<br>Mario Carlo Refugio Pena | 109737 | 11/19/2022 |
| 75. | Noemi Enriquez<br>Monique Urbie<br>Angel Uribe<br>Nevaeh Moreno | 109736 | 11/19/2022 |
| 76. | Daren Babcock | 109706 | 11/16/2022 |
| 77. | Alan Keith<br>Amanda Rose Keith<br>Thomas James Keith<br>Zakery Alan Keith | 109748 | 11/19/2022 |
| 78. | John Dolan<br>Esther Dolan | 109738 | 11/19/2022 |
| 79. | William Zeeb<br>Jolen Kalani Ann Spears<br>Michael Anthony Tattner | 109740 | 11/19/2022 |
| 80. | Danny Fish<br>Debbie Fish | 109708 | 11/20/2022 |
| 81. | Daphne Peterson<br>Donald Peterson<br>James Peterson | 109750 | 11/20/2022 |
| 82. | Brandon M. Ingersoll<br>Kristen Ingersoll<br>Carter Ingersoll<br>Mason Ingersoll<br>Evan Ingersoll | 109759 | 11/20/2022 |
| 83. | Cynthia Clark Springer<br>Donald Springer | 109767 | 11/20/2022 |
| 84. | Richard Lombardo<br>April Lombardo<br>Crosby Lombardo | 109766 | 11/20/2022 |
| 85. | Paul Kay Lindauer | 109751 | 11/20/2022 |

18

| | CLAIMANT(S) | POC NUMBER(S) | POC FILING DATE |
|---|---|---|---|
| 86. | Silvia Y. Barreto Castanon<br>Francisco Saul Flores Munguia<br>Jorge A. Barreto<br>Sophia A. Flores | 109770 | 11/20/2022 |
| 87. | Mary McConnell | 109771 | 11/20/2022 |
| 88. | Carrie Smyth<br>Laird Doherty | 109772 | 11/20/2022 |
| 89. | Deanna Holzapfel<br>Gavid Holzapfel<br>Noelle Holzapfel<br>Asher Holzapfel | 109832 | 11/20/2022 |
| 90. | William Haga, II<br>Margaret Haga | 109764 | 11/20/2022 |
| 91. | Ann Hudson<br>Geoffrey Hudson<br>Cole Hudson<br>Lauren Hudson | 109752 | 11/20/2022 |
| 92. | Heidi Lynne Adler | 109756 | 11/20/2022 |
| 93. | Trevor Larsen | 109757 | 11/20/2022 |
| 94. | Tina Wells | 109763 | 11/20/2022 |
| 95. | Elizabeth Alice Weeks<br>Gordon Douglas Wilder | 109762 | 11/20/2022 |
| 96. | Michael Pina | 109749 | 11/20/2022 |
| 97. | Patrick Clifton McGee | 109746 | 11/20/2022 |
| 98. | Nicholas Joseph Kersmarki<br>Lindsay Virginia Kersmarki<br>Abigail James Kersmarki<br>Micah Starke Kersmarki | 109715 | 11/20/2022 |
| 99. | Becky Thomas | 109723 | 11/20/2022 |
| 100. | Nisa Falk<br>Brian Falk<br>Gage Falk<br>Milani Falk<br>Damon Falk<br>Kyra Devries | 109775 | 11/21/2022 |

19

| | CLAIMANT(S) | POC NUMBER(S) | POC FILING DATE |
|---|---|---|---|
| 101. | John Fruiht<br>Jessica Fruiht<br>Brad Fruiht<br>Briane Fruiht | 109774 | 11/21/2022 |
| 102. | Louis D. Lopez<br>Chantal Hernandez<br>Davian Lopez | 109780 | 11/23/2022 |
| 103. | Laura Fry<br>Tim Fry<br>Alexander Fry<br>Caroline Fry<br>Felicity Fry | 109779 | 11/23/2022 |
| 104. | Michael Resch<br>Darcy Resch<br>Charlotte Maley<br>Amadea Resch<br>Mikaela Resch<br>Atticus Resch | 109778 | 11/23/2022 |
| 105. | Norma Douglas | 109777 | 11/23/2022 |
| 106. | Valerie Henry<br>Angelo Santoni<br>Henry Santoni<br>Benjamin Santoni<br>Roberta Pugh<br>Sara Santoni | 109803 | 11/30/2022 |
| 107. | Charlene Nicholson | 109783 | 12/01/2022 |
| 108. | Richard J. McChinak, III<br>Halie Matlock<br>Jeff Magee<br>Jack Boynton | 109791 | 12/01/2022 |
| 109. | Melanie Luce<br>Eric Luce<br>Eric Anthony Luce<br>Travis Luce | 109818 | 12/02/2022 |
| 110. | Jennifer Rose West<br>Jason Wade West<br>Mason Michael West<br>Avery Rose West | 109815 | 12/04/2022 |

20