Isaac M. Pachulski (CA Bar No. 62337)
Debra I. Grassgreen (CA Bar No. 169978)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
Email: dgrassgreen@pszjlaw.com

Eric Seiler (admitted pro hac vice)
Jason C. Rubinstein (admitted pro hac vice)
Michael S. Palmieri (admitted pro hac vice)
FRIEDMAN KAPLAN SEILER AND ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1103
Facsimile: (212) 373-7903
Email: eseiler@fklaw.com

*Attorneys for Securities Claimant*
*Baupost Group Securities, L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>Affects:<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects Both Debtors<br><br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Chapter 11<br><br>Case No. 19-30088 (DM)<br><br>(Jointly Administered)<br><br>**MOTION FOR ORDER DEEMING BAUPOST GROUP SECURITIES, L.L.C.'S SUPPLEMENT TO ITS PROOFS OF RESCISSION OR DAMAGE CLAIMS TIMELY**<br><br>Date: January 25, 2022<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Baupost Group Securities, L.L.C. ("**Baupost**"), on behalf of itself and as trading nominee for certain funds managed by The Baupost Group, L.L.C. that are the beneficial owners of certain of Debtors' equity securities at issue herein, submits this motion (the "**Motion**") for an order substantially in the form attached as **Exhibit A** hereto that approves, as timely, the supplement to Baupost's Proofs

of Rescission or Damage Claims, initially filed on April 15, 2020 as Claim Nos. 100269 and 100309. The supplement to the claims are being filed contemporaneously with the filing of this Motion and include an addendum setting forth additional evidentiary support substantially in the form attached as **Exhibit B** hereto (the "**POC Supplement**" or "**POC Suppl.**"). In support of the Motion, which Baupost is filing out of an abundance of caution, Baupost respectfully states as follows:

## I.

## INTRODUCTION

Baupost is a holder of substantial Rescission or Damage Claims in Class 10A-II under Debtors' confirmed chapter 11 plan, having purchased (net of sales) over 18 million shares of PG&E Corporation common stock during the Relevant Period (as defined below). In accordance with the Court's prior orders establishing procedures for the liquidation of securities claims in Debtors' cases, Baupost timely filed its Proofs of Rescission or Damage Claims in the form prescribed by the Court. In an addendum to those timely-filed claims, Baupost incorporated the allegations set forth in that certain Third Amended Consolidated Class Action Complaint, which (as described below) alleged securities laws violations on behalf of the members of a putative class who acquired PG&E securities during the Relevant Period at prices that were artificially inflated because of Debtors' material misstatements and non-disclosures concerning their safety practices, and who later suffered significant losses when the value of those securities fell as the falsity of Debtors' earlier misstatements came to light and/or the undisclosed and under-disclosed risks regarding Debtors' grossly deficient safety practices materialized in the forms of the 2017 North Bay Fires and the 2018 Camp Fire. Baupost's claims are *prima facie* valid in the amount asserted as a matter of law.

As set forth more specifically herein and in the POC Supplement, Baupost now seeks an order that the amended claims, incorporating the POC Supplement to describe its existing claims with greater particularity and highlighting additional material misstatements and non-disclosures made by Debtors during the Relevant Period (as defined herein), including those that are related to the 2018 Camp Fire, are deemed timely-filed claims. Although the POC Supplement does not assert any new claims or change the amount of Baupost's timely-filed claims, Baupost files this Motion out of an abundance of caution, to foreclose any argument by Debtors that the POC Supplement is untimely.

Prior to filing this Motion, Baupost asked the Debtors to stipulate to the relief requested herein and the Debtors declined to do so. As discussed below, the Ninth Circuit liberally allows post-bar date amendments to proofs of claim for the purpose of describing existing claims in greater detail, which is the purpose of the POC Supplement. For the reasons discussed herein, the Motion should be approved and the POC Supplement authorized as a timely supplement to Baupost's timely-filed proofs of claim.

## II.

## BACKGROUND

### A. Procedural Background

On January 29, 2019, each of the above-captioned debtors (the "**Debtors**") filed a voluntary chapter 11 petition. On July 1, 2019, the Court entered an order establishing October 21, 2019 (the "**Original Bar Date**") as the deadline for filing proofs of claim.[1] On February 27, 2020, the Court extended the Original Bar Date until April 16, 2020 (the "**Extended Securities Claims Bar Date**"), solely with respect to those persons or entities that purchased or acquired Debtors' publicly traded debt and/or equity securities during the period from April 29, 2015 through November 15, 2018, and who may have claims under the securities laws against Debtors for rescission or damages.[2]

In connection with setting the Extended Securities Claims Bar Date, the Court further ordered that any holders of Rescission or Damage Claims shall be required to use a certain customized proof of claim form that was approved by the Court (the "**Rescission or Damage Claim Proof of Claim Form**").[3]

### B. Factual Background

On April 15, 2020, Baupost filed two completed and duly executed Rescission or Damage Claim Proof of Claim Forms (the "**2020 POC Forms**") together with an addendum (the "**2020 POC Addendum**" and, together with the 2020 POC Forms, the "**2020 POCs**") against each Debtor. As described in the 2020 POCs, Baupost asserts claims in an amount to be determined under the

---

[1] Dkt. No. 2806.

[2] Dkt. No. 5943.

[3] *Id.*

Securities Exchange Act of 1934 against PG&E Corporation ("**PCG**") and Pacific Gas and Electric Co. ("**Utility**", and, together with PCG, "**PG&E**") for losses in the value of PCG common stock that it acquired during the Relevant Period. Baupost incurred these losses because it purchased PCG common stock at prices that were artificially inflated by Debtors' misleading statements regarding their safety practices, but the share price later plummeted when the falsity of Debtors' earlier representations about their safety practices came to light. The 2020 POC Addendum specifically incorporates the factual and legal allegations asserted in the Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Law filed in *In re PG&E Corp. Securities Litigation*, No. 3:18-cv-03509-EJD (N.D. Cal.) (the "**TAC**") that, between April 29, 2015 and November 15, 2018 (the "**Relevant Period**"), Debtors made various materially false statements that "misled investors about PG&E's wildfire safety practices, including [its] representations of achieving full legal compliance and investing in safety, notwithstanding the Company's numerous and widespread violations of powerline safety regulations" and, thereby, artificially inflated the value of Debtors' securities during the Relevant Period. TAC ¶¶ 1, 321.[4] Specifically, the TAC alleges that:

> Investors and analysts were focused on the Company's compliance with wildfire-related safety regulations during the [Relevant] Period. With an eye towards artificially inflating its share price, PG&E responded to this interest with false and misleading reassurances that PG&E was in compliance with safety regulations. PG&E also significantly raised its quarterly dividend during the Class Period, repeatedly touting that such a move was based, in part, on its success in ensuring safety.

*Id*. ¶ 188. The TAC enumerates 19 misstatements by Debtors concerning their safety practices, *id*. ¶¶ 194-316, and describes a pattern of serial misrepresentations and misleadingly incomplete disclosures whereby "[e]ven as the truth began to emerge about PG&E's insufficient safety practices" because of reports finding Debtors responsible for catastrophic wildfires, "PG&E continued to falsely insist on its compliance" and "doubled down on misinformation in order to build up the public perception of its safety and compliance" and to "conceal[] the true extent to which [Debtors] w[ere] exposed to massive liability for causing further wildfires, thereby significantly inflating [PCG's] share price." *Id*. ¶¶ 5-6, 31. The TAC further alleges that the October 2017 North Bay Fires and the

---

[4] "PG&E" is defined in the TAC to mean both Debtors—*i.e.*, PG&E Corporation ("**PCG**") and Pacific Gas and Electric Company (the "**Utility**"). TAC at 1.

November 2018 Camp Fire occurred during the Relevant Period and that these fires "incited a series of investigations, which . . . revealed PG&E's gross deficiencies in the area of safety compliance," contrary to its "public statements that it complied with California and federal safety regulations." *Id.* ¶ 2. The TAC identifies nine partial corrective disclosures that dissipated a portion of the artificial inflation in the market price of Debtors' securities and alleges that, after each of these partial corrective disclosures, PCG's share price fell. *Id.* ¶¶ 328-389.

"As a result of [these] wrongful acts and omissions" by Debtors, the TAC alleges that there was a "precipitous decline in the market value of" Debtors' securities when "the truth started to emerge"—including "the truth regarding PG&E's responsibility for the Camp Fire"—which caused Baupost (including certain funds it manages) and other holders of Debtors' securities to "suffer[] significant losses and damages." *See id.* ¶¶ 321, 364, 390. Accordingly, the TAC asserts that Debtors violated Section 10(b) of the Exchange Act and Rule 10b-5 by, among other things "disseminat[ing] or approv[ing] the false statements [alleged], which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *Id.* ¶¶ 471-480. The TAC also asserts causes of action against PCG for (i) "controlling person" liability under Section 20(a) of the Exchange Act as a result of "participat[ing] in the unlawful conduct alleged which artificially inflated the market price of PG&E securities," *id.* ¶¶ 481-486, and (ii) liability under Section 10(b) and Rule 10b-5 as the "alter ago" of the Utility, *id.* ¶¶ 492-495.

Baupost's securities fraud claims against PG&E are subject to the "Securities ADR Procedures" ordered by the Bankruptcy Court, which include settlement and mediation procedures. Baupost and Debtors have engaged in discussions concerning the TAC and 2020 POCs in accordance with the Securities ADR Procedures. Mediation has not yet commenced and Debtors have not objected to the 2020 POCs.

C. **The POC Supplement**

Paragraph 3 of the 2020 POC Addendum provides:

> Claimant reserves the right to amend, modify, and/or supplement this Proof of Claim at any time, including after any bar date, in any manner, and/or to file additional proofs of claim for any additional claims that

> may be based on the same or additional documents or grounds of liability, or based on additional facts learned following further investigation.

Baupost has in fact continued to investigate the factual and legal bases of the claims it asserted in the 2020 POC Addendum and the TAC. Based on that investigation, which remains ongoing, Baupost seeks an order that the filing of the POC Supplement to elaborate on its allegations in the 2020 POC Addendum and the TAC concerning Debtors' pattern of misstatements and incomplete disclosures about their safety practices, including specifically with respect to the 2018 Camp Fire is timely. *See* POC Suppl. ¶¶ 3-6. The 2020 POC Addendum and the TAC contain extensive factual allegations that Debtors' inspection, safety, and maintenance failures, particularly with respect to high-voltage transmission lines and towers, caused the Camp Fire. *See generally* TAC ¶¶ 33-38, 130-76, 190-93. Indeed, Debtors acknowledged to the Court that the TAC "includes claims concerning equipment management and other issues connected with the 2018 Camp Fire." Reorganized Debtors' Motion for Entry of an Order (I) Approving Settlements Resolving Disputes with Certain Insurers, and (II) Granting Related Relief (Dkt. No. 13015) (the "**Insurance Settlement Motion**"), at 9 (citing TAC ¶¶ 33-38).

The POC Supplement details seven additional misstatements made by Debtors—all of which occurred during the Relevant Period—in which Debtors made public materially false statements concerning their safety practices and their investment in their electrical transmission and distribution system, including but not limited to the inspection, maintenance, hardening, and replacement of high-voltage transmission lines and other equipment in their electrical infrastructure, as well as their compliance with regulatory requirements concerning the safe operation of their electrical transmission and distribution system. POC Suppl. ¶¶ 18-25. As with the misstatements pleaded in the TAC, these additional "materially false and misleading statements assuring investors of the Company's compliance with California safety regulations" concealed "the true risks leading to the Camp Fire," including that Debtors were "not sufficiently prioritizing safety." TAC ¶¶ 37-38. The POC Supplement also incorporates findings by the Butte County District Attorney in *The Camp Fire Public Report: A Summary of the Camp Fire Investigation* (the "**Butte Report**")—which was released after the Extended Securities Claims Bar Date—and details Debtors' failures to properly inspect, maintain,

and replace equipment on their high-voltage transmission lines and explains how Debtors' inadequate safety practices with respect to their electrical transmission and distribution system caused the Camp Fire. POC Suppl. ¶¶ 11-14.

Notably, the POC Supplement does not change the amount sought by the 2020 POCs, nor does it assert any new causes of action against Debtors.[5]

### III.

### ARGUMENT

**A. Baupost Timely Filed Proofs of Claim that Establish the *Prima Facie* Validity and Amount of Its Securities Claims**

Proofs of claim that are "executed and filed in accordance with" the Federal Rules of Bankruptcy Procedure "constitute prima facie evidence of the validity and amount of the claim" and will be "deemed allowed" unless a party in interest objects.[6] A properly filed proof of claim constitutes "evidence as to its validity and amount" that is "strong enough to carry over a mere formal objection without more."[7] Only if the objector produces some evidence that is of probative value at least as weighty as that supplied by the proof of claim will the burden shift to the claimant to establish a valid claim by a preponderance of the evidence.[8]

As discussed above, the Court established procedures, including a special bar date and claim form, for the liquidation of securities claims in Debtors' cases. In accordance with the Court's prior orders, Baupost timely filed its Rescission or Damage Claim Proofs of Claim in the form prescribed by the Court and, in an addendum, incorporated the allegations made in the TAC. Thus, Baupost already holds claims that are *prima facie* valid in the amount asserted as a matter of law.

As the POC Supplement merely describes with greater particularity claims that are already afforded evidentiary effect, it should be permitted without further order of the Court. Even if the Court's approval is required, however, the POC Supplement should be deemed timely under the Ninth

---

[5] As set forth in Section IV of the POC Supplement, Baupost reserves the right to modify the amount of its claims as well as to assert additional causes of action at such time as may be appropriate. POC Suppl. ¶¶ 39-41.

[6] FED. R. BANKR. P. 3001(f); *see* 11 U.S.C. § 502(a) (claim deemed allowed absent objection).

[7] *See Lundell v. Anchor Constr. Spec., Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)).

[8] *Holm*, 931 F.2d at 623.

Circuit's liberal policy in favor of allowing amendments to timely-filed proofs of claim, as discussed below.

B.  **The POC Supplement Should Be Allowed Under The Ninth Circuit's Liberal Policy Permitting Amendments to Proofs Of Claim**

The Court of Appeals for the Ninth Circuit has adopted "a long established liberal policy that permits amendments to a proof of claim."[9] The Ninth Circuit has held that, "[i]n the absence of prejudice to an opposing party, the bankruptcy courts, as courts of equity, should freely allow amendments to proofs of claim that relate back to the filing date of the [original] claim when the purpose is . . . to describe the claim with greater particularity."[10]

*Roberts Farms* is often cited as the leading Ninth Circuit decision on amendments to timely-filed proofs of claim.[11] In that case, a law firm filed a timely proof of claim in the debtor's chapter 11 case for unpaid legal fees arising from services provided to the debtor prepetition.[12] The debtor subsequently confirmed a plan of reorganization and the reorganized debtor then (twenty months after the proof of claim was filed) filed an objection to the law firm's proof of claim, in which it alleged that the claim was barred by the statutes of limitations and laches.[13] In response, the law firm sought to amend the claim to describe the claim as an "open account," which, pursuant to California law, was subject to a longer statute of limitations, and to attach supporting documentation.[14] The law firm did not seek to increase the amount of the claim. The bankruptcy court allowed the law firm to file the amended claim and ultimately allowed the claim, upon finding that the claim was not time-barred because the claim was based on an open book account.[15] The bankruptcy court's ruling was affirmed on appeal to the Bankruptcy Appellate Panel.

---

[9] *Roberts Farms Inc. v. Bultman (In re Roberts Farms Inc.)*, 980 F.2d 1248, 1251 (9th Cir. 1992) (hereafter, "**Roberts Farms**").

[10] *Sambo's Rests., Inc. v. Wheeler (In re Sambo's Rests., Inc.)*, 754 F.2d 811, 816-17 (9th Cir. 1985).

[11] *See, e.g., Rose v. Med Equity, LLC (In re Med Equity, LLC)*, 2022 Bankr. LEXIS 1924, *16 (9th Cir. BAP July 13, 2022); *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 102 (9th Cir. BAP 2006); *In re Edwards Theatres Circuit, Inc.*, 281 B.R. 675, 681 (Bankr. C.D. Cal. 2002).

[12] *Roberts Farms*, 980 F.2d at 1250.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 1251.

On further appeal to the Ninth Circuit, the court affirmed:

> We have a long established liberal policy that permits amendments to a proof of claim. The crucial inquiry is whether the opposing party would be unduly prejudiced by the amendment. . . . "[I]n determining prejudicial effect [we] look to such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change of the debtor's position."[16]

The Ninth Circuit held that the debtor was not prejudiced by the amendment. First, it rejected the debtor's argument that the amendment was a bad faith attempt to avoid the statute of limitations, because the amended claim "in no way asserted a different claim but was rather a clarification of the earlier claim."[17] The Ninth Circuit also rejected the debtor's argument that the law firm unreasonably delayed in amending its proof of claim, which the debtor alleged caused it prejudice because it had already completed discovery and preparation for the hearing on its objection. The Ninth Circuit stated: "[The debtor] itself was guilty of extreme delay by not objecting to [the law firm]'s original proof of claim for almost two years."[18] In finding a lack of material prejudice to the debtor, the Ninth Circuit also explained:

> In addition, the bankruptcy court's decision to permit the amendment did not impact other claimants. [The debtor]'s reorganization plan was confirmed over a month before [it] objected to [the creditor]'s claim. The reorganization plan called for fixed percentage payments on allowed claims, including [the creditor]'s claim. The amended proof of claim did not alter the amount of [the creditor]'s claim, and therefore it had no effect on recovery by other claimants.
>
> Finally, [the debtor] argues that it made business decisions in connection with its disclosure statement and its reorganization plan based on the original proof of claim. [The debtor]'s bald assertion that it made decisions in the [*sic*] reliance on the original claim and that it was harmed thereby is insufficient evidence of reliance and resulting prejudice.[19]

---

[16] *Id.* at 1251-52.

[17] *Id.* at 1252.

[18] *Id.*

[19] *Id.*

Numerous courts have followed *Roberts Farms* in rejecting prejudice arguments where the debtor should have generally been aware of the existence of the claims asserted in an amendment, even where the amount of the claim is increased, to the potential detriment of other creditors.[20]

Here, Debtors would not be "unduly prejudiced" by allowing the POC Supplement.[21] Baupost timely filed claims in the amount asserted that are *prima facie* valid as a matter of law and that provide proper notice to Debtors of Baupost's claims. The POC Supplement merely describes the allegations underlying those claims with greater particularity, based upon Debtors' own material misstatements, which have been reported publicly. Debtors are clearly aware of those misstatements, and they can claim no surprise or prejudice as a result. The POC Supplement does not add new liabilities or causes of action, let alone time-barred claims. Moreover, the parties have engaged only in preliminary discussions with respect to the Baupost's claims under the Court-approved ADR process for securities claims. Thus, the POC Supplement will not interfere with or otherwise impose any inefficiencies on that process. And, as in *Roberts Farms*, Debtors have not objected to the 2020 POCs even though they were filed over two years ago.

### C. The POC Supplement and the 2020 POCs Share a Common Core of Operative Facts

Although *Roberts Farms* defined the standard for courts in the Ninth Circuit to apply when considering amendments to proofs of claim, some courts have sought guidance from the "relation back" standard that is generally applicable to amendments to pleadings under Federal Rule of Civil Procedure 15(c). Under that standard, "[a] new claim must be based upon a common core of operative

---

[20] *See, e.g.*, *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 102-03 (B.A.P. 9th Cir. 2006) ("Nothing in JSJF's papers suggests any worsening of its position, or bad faith or unreasonable delay on the part of Wall Street, nor are there any such findings. The equities of the situation favor Wall Street – JSJF's own plan of reorganization, schedules, and disclosure statement included Wall Street's claim for lease damages, and JSJF knew that Wall Street intended to assert its rights . . . ."); *see also Green v. Brotman Med. Ctr., Inc. (In re Brotman Med. Ctr., Inc.)*, 2012 Bankr. LEXIS 665 (B.A.P. 9th Cir. Jan. 31, 2012) (rejecting argument of prejudice to estate due to some creditors potentially having to disgorge prior payments if claimant's claim were allowed in sufficiently large amount; prior distributions were made at a time the trust was aware of claimant's claim but nonetheless proceeded with the prior distributions and the claim "was no surprise to Debtor or the Trust"); *In re Roby*, 2008 Bankr. LEXIS 1721, at *4 (Bankr. N.D. Cal. June 9, 2008) ("The mere fact that the dividends of other creditors will be reduced to their proper size is not prejudice. Prejudice requires more than simply having to litigate the merits of, or to pay, a claim; there must be some legal detriment to the party opposing.").

Moreover, as summarized above, *Roberts Farms* involved a claim that was amended following the confirmation of a plan. Courts in the Ninth Circuit have continued to apply the Ninth Circuit's "liberal" standard even following confirmation. *See, e.g.*, *Brotman Med. Ctr., Inc.*, 2012 Bankr. LEXIS 665 (permitting amended claim filed six weeks after plan confirmation and creation of trust).

[21] *Roberts Farms*, 980 F.2d at 1251-52.

facts. It is the operative facts that control the question of relation back, not the theory of liability applied to those facts."[22]

In determining whether an amended claim relates back to the original, the court must determine "whether the claim to be added will likely be proved by the same kind of evidence offered in support of the original pleading."[23] In short, "there must be facts alleged in the [o]riginal [c]laims that would reasonably alert [the debtor] to the possibility of [the] assertion of new theories based upon those facts to support the Amended Claims, whether or not those facts or events were foreseeable."[24]

Here, the POC Supplement does not add any additional claims or causes of action. Instead, it describes in further detail the same misconduct, during the same time period that is described in the 2020 POCs. The common core of operative facts—*i.e.*, PG&E's material misstatements with respect to its safety practices—overlap completely and the claims asserted will be proved by exactly the same kind of evidence offered in support of the 2020 POCs.[25]

In particular, the POC Supplement elaborates on the 2020 POCs' and the TAC's allegations concerning PG&E's misstatements relating to its alleged "leadership and commitment on safety"[26] and its alleged "improvements . . . in safety and reliability."[27]

---

[22] *In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 88 (Bankr. N.D. Cal. 2004) (new claims based entirely on evidence that fell outside the core of operative facts supporting the claimant's original claims did not relate back); *see also In re Jackson*, 541 B.R. 887, 891 (B.A.P. 9th Cir. 2015) (permitting claim amendment and holding: "It has long been established in the Ninth Circuit that an amendment to a timely proof of claim 'relates back' to a timely filed claim when the original claim provided 'fair notice of the conduct, transaction, or occurrence that forms the basis of the claim asserted in the amendment.'") (citation omitted); *In re Circle K Corp.*, 165 B.R. 649, 652 (Bankr. D. Ariz. 1994) (Rule 15(c) provides "useful analogy" for proof of claim amendments).

[23] *In re Pacific Gas & Elec. Co.*, 311 B.R. at 88 (citing *Percy v. San Francisco General Hospital*, 841 F.2d 975, 978 (9th Cir.1988)).

[24] *Id.* at 88-89; *see also In re Med Equity, LLC*, BAP No. CC-22-1247-GFS (B.A.P. 9th Cir. July 13, 2022) (finding no prejudice from amendment to describe claim as derivative in nature, because debtor was aware of the operative facts giving rise to the claim).

[25] *See, e.g.*, *In re Avista Corp. Sec. Litig.*, 2006 WL 8429610, at *5 (E.D. Wash. June 2, 2006) (amendment "detailing new instances of Avista's alleged involvement in high-risk energy trading activities" related back to an original pleading alleging more broadly that the defendants "made a number of representations that Avista was ending its high-risk activities."); *In re Digital Microwave Corp. Sec. Litig.*, 1992 WL 465486, at *2-3 (N.D. Cal. Oct. 19, 1992) (new allegations that defendants engaged in a "host of improper revenue recognition practices and improper sales transactions" related back to allegations in original complaint that defendants engaged in a "broad scheme" relating to the issuance of "false financial statements" because they merely "elaborate[d] upon plaintiffs' original claims and d[id] not constitute an entirely new legal theory based upon a different set of facts").

[26] *TAC* ¶ 233.

[27] *Id.* ¶ 237.

- The 2020 POCs and the TAC contain numerous allegations regarding PG&E's recklessly deficient maintenance of the Caribou-Palermo line, which was responsible for the Camp Fire. The TAC describes the collapse of five towers on the line and the line's "dangerously deteriorated" infrastructure, and alleges that these conditions suggested "a strong, undisclosed risk that corrosion, metal fatigue, or other age-related factors would fail to support transmission line cables and cause wildfires."[28] Similarly, the POC Supplement sets forth detailed factual allegations—including based on the findings of the Butte Report—concerning "Debtors' failures to properly inspect, maintain, and replace equipment on their high-voltage transmission lines" including the Caribou-Palermo line, and "how Debtors' inadequate safety practices with respect to electrical transmission and distribution system caused the Camp Fire."[29] As in the TAC, the POC Supplement describes deterioration and corrosion of the infrastructure on the Caribou-Palermo line that contributed to the risk that the equipment would fail and cause a wildfire.[30]

- Further, the TAC describes a series of misrepresentations by Debtors concerning the frequency and adequacy of their inspections and patrols of powerlines.[31] Indeed, Debtors acknowledged to the Court that the TAC "includes claims concerning equipment management and other issues connected with the 2018 Camp Fire." Insurance Settlement Motion at 9 (citing TAC ¶¶ 33-38). Similarly, the POC Supplement highlights additional misstatements by Debtors concerning their safety practices, particularly related to the Camp Fire, including by describing PG&E's misrepresentations about the frequency of its inspection of power lines in high-fire areas,[32] its misrepresentations about infrastructure investment and replacement,[33] and

---

[28] *Id.* ¶¶ 131-32.

[29] *See, e.g.*, POC Suppl. ¶¶ 12-15.

[30] *Id.* ¶¶ 13(b)-(h), 14(e).

[31] *See* TAC ¶¶ 197, 211, 258, 264.

[32] *See, e.g.*, POC Suppl. ¶¶ 21-22, 24, 25, 29-30.

[33] *Id.* ¶¶ 18-19, 23-24, 27.

its false statements that PG&E "maintain[s] safe and reliable operation of [its] transmission system" with knowledge that the opposite was true.[34]

Separately, the POC Supplement's elaboration on the allegations in the 2020 POCs and the TAC has no prejudicial effect on Debtors because, at all times, Debtors had fair notice of their own misconduct. Accordingly, as the POC Supplement and the 2020 POCs share a common core of operative facts, and because Debtors were already on notice regarding their own actions and misconduct, the POC Supplement satisfies the relation-back doctrine as well.

## IV.

## CONCLUSION

For the reasons set forth herein, Baupost respectfully requests that the Court enter an order (a) deeming the POC Supplement a timely-filed amendment to the 2020 POCs, and (b) granting such other and further relief as it deems necessary and appropriate.

Dated: December 28, 2022

PACHULSKI STANG ZIEHL & JONES LLP

By  *s/ Debra I. Grassgreen*
Isaac M. Pachulski
Debra I. Grassgreen

- and –

Eric Seiler (admitted pro hac vice)
Jason C. Rubinstein (admitted pro hac vice)
Michael S. Palmieri (admitted pro hac vice)
FRIEDMAN KAPLAN SEILER & ADELMAN LLP

*Attorneys for Securities Claimant Baupost Group Securities, L.L.C.*

---

[34] *Id.* ¶¶ 24, 31, 33-38.