Donald W. Ullrich, Jr. (Calif. State Bar No.118701)
Ullrich Law Firm
3100 Zinfandel Drive, Suite 265
Rancho Cordova, California 95670
Telephone: (916) 942-9385
Facsimile: (916) 942-9520
Cell Phone: (916) 425-1061
E-mail: ullrichlawfirm@att.net;
donaldullrich@att.net

*Attorneys for Complainant*
Karyn Charmbury

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Reorganized Debtors. | Bankruptcy Case No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered<br><br>FURTHER RESPONSE BY CLAIMANT KARYN CHARMBURY TO REORGANIZED DEBTORS' ONE HUNDRED EIGHTEENTH OMNIBUS OBJECTION TO CLAIMS (CHARMBURY CLAIMS); with proof of service attached<br><br>*{reference Court's Order dated December 14, 2022, DOC 13356}*<br><br>Date: January 10, 2023<br>Time: 10:00 AM<br>Via Video/Teleconference<br>www.canb.uscourts.gov/calendars |

    Claimant Karyn Charmbury by and through counsel, Donald W. Ullrich, Jr., herewith further responds[1] to reorganized debtors' one hundred eighteenth omnibus objection to claims (Charmbury

---

[1] Claimant's earlier responses can be found at DOCs 13268, 13269, 13269-1, 13330, and 13330-1. They are incorporated herein.

1

claims) as follows:

I. STATEMENT OF SETTLEMENT DISCUSSIONS

Counsel for debtors and claimant have met and conferred with respect to settling the Charmbury claims (sic).[2] Claimant made an offer of $44,000.00. Reorganized debtors countered at $22,000.00. Claimant offered to split the difference. Reorganized debtors rejected the offer. Claimant then said it was willing to settle at $30,000.00, which was counsel's settlement authority at the time. Reorganized debtors rejected the offer. Reorganized debtor then took the position that since claimant took too long to accept the $22,000.00, the revised settlement offer was now $13,500.00. Claimant rejected the offer. That was the settlement situation at the time of the court's order (DOC 13356). Since that time, reorganized debtors and claimant continued efforts at settlement. Reorganized debtor came up to $15,000.00. Claimant came down to $25,000.00. Reorganized debtors then came up to $17,000.00 and said that amount was their final offer. Claimant then countered at $22,000.00. Reorganized debtors refused to increase their settlement offer from $17,000.00. Claimant then offered $20,000.00 (said offer was made in the afternoon of January 5, 2023 and rejected in the evening of January 5, 2023). Therefore, claimant has attempted to settle matters with the reorganized debtors in good faith and has acted in a reasonable manner. It appears the rationale for reorganized debtors' settlement position is that claimant's claim lacks any merit. Claimant is unaware of any facts in support of such a conclusion at present time.

II. STATEMENT OF CLAIM

Claimant is a female. She began full time employment with Pacific Gas and Electric Company ("defendant") on or around December 1, 2008. At all times in question until March 9, 2018, claimant was fully employed by defendant. Claimant quit the employ of defendant and went to

---

[2] There is only one claim arising out of claimant's allegations of constructive wrongful discharge as an employee of Pacific Gas and Electric Company. Claimant submitted a claim followed by an amended claim. Prime Clerk for reasons unknown to claimant turned the one claim into multiple claims, first four, then two.

work full-time for Sacramento Municipal Utility District ("SMUD") and has been working for SMUD at all times in question since then as a full-time employee and continues to do so. Claimant alleges she was constructively discharged by defendant because of intolerable work conditions resulting from her female gender (sex discrimination by disparate treatment), her pregnancy, and in retaliation for her complaints about such work conditions to defendant's "HR" department and because of her relationship with a fellow worker who had taken legal action against defendant for his wrongful termination.

Claimant filed complaints with the California Department of Fair Employment & Housing, DFEH Matter Number 778850-273543, and with the Equal Employment Opportunity Commission, EEOC Number 37A-2017-01999-C on or around April 10, 2017, concerning the intolerable work conditions created by one or more managers over her employed by defendant within the department she worked at. Claimant was not represented by counsel in these administrative actions. The California Department of Fair Employment & Housing issued claimant a right to sue letter dated April 10, 2018. Claimant had one year to file suit per said letter. Defendant filed for bankruptcy on January 29, 2019.

Claimant's initial job with defendant was as a utility worker. She then apprenticed as an electrician. She began work as a journeymen electrician in or around July 2012. She began work in the department where her problems started in or around September 2014 as an electrical inspector. The department, noted above, was called by the defendant "Department of Substation Inspections" (hereafter the "department"). The department was headed by a Mike Novello at all times in question. She worked in this department until she quit to work for SMUD. It was Mike Novello and the management team under him who created these intolerable work condition, to wit: Brandon Champion, Scott Hayes, and his successor Eric Harris.

Out of 75 inspectors employed by defendant during her time at the department only 4 were

3

women. During the entire time she was in this department not one of these women employees was promoted or put into any form of supervisorial position. Claimant characterized the attitude of the small number of men running the department as a "good ol' boys club" who intentionally created a discriminatory atmosphere within the department where women were not allowed to advance or be put in any supervisorial positions. These men were the said Brendon Champion, Scott Hayes, Eric Harris, and Mike Novello. Mr. Champion and Mr. Novello had close relatives, Mr. Champion, a brother, Mr. Novello, an uncle, who also worked in the department while claimant worked there.

Claimant eventually became pregnant by a fellow employee working in the same department as her, her now husband, to wit: Mark Makowiecki. Said individuals, all in a managerial capacity, used Claimant's pregnancy, before she eventually took maternity leave, as a pretext to remove her from one job to another job (although the commute and the previous job were not burdensome to claimant) done for the sole purpose to get her out of the way. Moreover, she was intentionally given jobs that knowingly interfered with her breast feeding after she returned from maternity leave.

Claimant made one or more complaints to the "HR" department of the defendant about how she was being treated in her department by these said individuals. Because of these complaints, the head of the department, to wit: Mike Novello, and his management underlings, to wit: Brandon Champion, Scott Hayes, and Eric Harris, retaliated against her by adverse job postings and poor performance evaluations. Claimant was also retaliated against by adverse job postings and poor performance evaluations by said individuals because of her relationship with Mr. Makowiecki who himself had become embroiled in a long running wrongful termination dispute with the defendant, which dispute continued while claimant continued to work for defendant. Mr. Makowiecki was terminated for cause by defendant on August 7, 2015, at the behest of Mike Novello.

Claimant first met Mr. Makowiecki in or around August 2014 and became romantically involved with him in or around September 2014. Claimant began living with Mr. Makowiecki in or around

4

January 2015. At all times in question while the aforementioned transactions and occurrences took place, claimant and Mr. Makowiecki were employed in the department.

Claimant asserts that had she not been constructively discharged she would have been fully employed by the defendant until she reached 55 years, the usual, customary, or ordinary age of retirement with defendant. On March 9, 2018, the date of her constructive discharge, claimant was 34 years.

III. STATEMENT OF LAW: CONSTRUCTIVE DISCHARGE

A. CONSTRUCTIVE DISCHARGE. Constructive discharge occurs when an employer's conduct effectively forces an employee to resign. Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1244, 32 Cal. Rptr. 2d 223 (1994). While the employee may quit his employment with the employer, the employment relationship is actually severed involuntarily by the employer's acts (or failure to act), against the employee's will. Id. at 1244-1245; Thompson v. Tracor Flight Systems, Inc., 86 Cal. App. 4th 1156, 1166, 104 Cal. Rptr. 2d 95, 102 (2001). As a result, the constructive discharge is legally regarded as a firing by the employer, rather than a voluntary resignation or retirement by the employee. Mullins v. Rockwell Int'l Corp., 15 Cal. 4th 731, 737, 63 Cal. Rptr. 2d 636 (1997); Thompson, supra, 86 Cal. App. 4th at 1166, 104 Cal. Rptr. 2d at 102.

A retirement can also constitute a constructive discharge. Where an employer made the plaintiff's working conditions so intolerable that "her pre-existing medical condition worsened to the point where she was no longer able to function in her duties and needed to remove herself from her job," then her disability retirement was considered a constructive discharge. Colores v. Board of Trustees of Calif. State Univ., 105 Cal. App. 4th 1293, 1318, 130 Cal. Rptr. 2d 347, 366 (2003).

A constructive discharge alone is not a wrongful discharge. The employee must also provide that the discharge constituted either a breach of an express or implied employment contract, or a violation of a statutory requirement or public policy. Turner, supra, 7 Cal. 4th at 1251-1252, 32 Cal.

Rptr. 2d at 231; Colores, supra, 105 Cal. App. 4th at 1306, 130 Cal.Rptr.2s at 357.

The test is whether an employee can prove "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated ... that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." Turner, supra, 7 Cal. 4th at 1251-1252, 32 Cal. Rptr. 2d at 230-231; Garamendi v. Golden Eagle Ins. Co., 128 Cal. App. 4th 452, 471- 472, 27 Cal. Rptr. 3d 239, 254 (2005).

An employee's subjective reaction is irrelevant. Turner, supra, 7 Cal. 4th at 1247, 32 Cal. Rptr. 2d at 227-228.

Although a single incident or isolated acts are normally not enough, a single incident may constitute "aggravated" misconduct by the employer, e.g., a crime of violence against the employee, or a directive to the employee to commit a crime. Turner, supra, 7 Cal. 4th at 1247-1248, 32 Cal. Rptr. 2d at 228, fn. 3.

A lengthy discussion of employer conduct found to constitute constructive discharge is found in Steele v. Youthful Offender Parole Bd. 162 Cal. App. 4th 1241, 1258 (2008) (emphasizing that even though none of the acts alone would suffice, totality of circumstances did).

In order to establish a constructive wrongful discharge, an employee must prove, by a preponderance of the evidence, that (1) the employer either intentionally created or knowingly permitted working conditions; (2) were so intolerable or aggravated at the time of the employee's resignation; (3) a reasonable employer would realize; and (4) a reasonable person in the employee's position would have felt compelled to resign. Turner, supra, 7 Cal. 4th at 1251, 32 Cal. Rptr. 2d at 230; Garamendi v. Golden Eagle Ins. Co., 128 Cal. App. 4th 452, 471- 472, 27 Cal. Rptr. 3d 239, 254 (2005). The requisite knowledge or intent must exist on the part of either the employer or those persons who effectively represent the employer, such as its officers, directors, managing agents, or supervisory employees. Turner, supra, 7 Cal. 4th at 1249, 32 Cal. Rptr. 2d at 229.

The employee must notify someone in a position of authority of the intolerable conditions in order to establish the claim. Turner, supra, 7 Cal. 4th at 1250, 32 Cal. Rptr. 2d at 230. An employer's timely and appropriate response may show that the employer did not knowingly permit the conditions to exist. Casenas v. Fujisawa USA, Inc., 58 Cal. App. 4th 101, 118, 67 Cal. Rptr. 2d 827, 838 (1997).

B. CAUSATION AND DAMAGES. In tort actions generally, a plaintiff may obtain compensation for all harm proximately caused by the defendant's wrongful conduct [Civ. Code § 3333]. Thus, general damages for pain, suffering, and emotional distress may be recovered [see, e.g., Phillips v. Gemini Moving Specialists 63 Cal. App. 4th 563, 577, 74 Cal. Rptr. 2d 29 (1998)].

The plaintiff can obtain damages for lost wages and benefits, including health insurance and life insurance, which should be calculated at the replacement cost for plaintiff, not at the cost to the employer [Wise v. Southern Pac. Co. 1 Cal. 3d 600, 608, 83 Cal Rptr. 202, 463 P.2d 426 (1970)]. In most cases, the trier of fact must determine the period of time that plaintiff would have worked for defendant, and then calculate the monetary value of all the compensation that plaintiff would have received during that time, subtracting any amounts obtained or obtainable through reasonable efforts at mitigation [Smith v. Brown-Forman Distillers Corp. (1987) 196 Cal. App. 3d 503, 518, 241 Cal. Rptr. 916 (1987)]. If the plaintiff would have received raises absent defendant's tortious conduct, damages should include amounts representing the raises [see Smith v. Brown-Forman Distillers Corp., supra, pp. 518–519 (upholding award of compensatory damages that may have included increases and benefits that might have been received)]. Although these damages may to some degree be speculative, by analogy to the employment discrimination context it can be argued that "unrealistic exactitude" is not required, and that any uncertainties in the calculation of damages should be resolved against an employer who has wrongfully terminated an employee [cf. Holloway & Leech, Employment Termination: Rights and Remedies, Ch. 11, pp. 402–403 (BNA 1985)].

Compensation for wages and benefits from the date of judgment forward are referred to as "front pay." Front pay based on future earnings is available to a plaintiff in a wrongful discharge action [see Petermann v. International Brotherhood of Teamsters 214 Cal. App. 2d 155, 159, 29 Cal. Rptr. 399 (1963)].

In general, that portion of a compensatory damages award that represents future wages and benefits must be reduced "to a present lump sum which, when invested to yield the highest rate of return consistent with reasonable security, will pay the equivalent of lost future benefits at the times, in the amounts and for the period such future benefits would have been received" [see Canavin v. Pacific Southwest Airlines 148 Cal. App. 3d 512, 521, 196 Cal. Rptr. 82 (1983), citing BAJI No. 14.70 (now see CACI 3904)]. Competent evidence on any or all of the following factors should be considered by the trier of fact: (1) the amount the plaintiff would have earned during each period of lost compensation; (2) the discount rate that properly produces a present lump sum, which by way of safe investments might yield the appropriate future sums; and (3) the effects of inflation [cf. Jones & Laughlin Steel Corp. v. Pfeifer 462 U.S. 523, 537–538, 103 S. Ct. 2541, 76 L. Ed. 2d 768 (1983) (ascertaining future damages of injured worker under Longshoremen's and Harbor Workers Compensation Act); United States v. English 521 F.2d 63, 75 (9th Cir. 1975) (wrongful death action under Federal Tort Claims Act); Rodriguez v. McDonnell Douglas Corp. 87 Cal. App. 3d 626, 662, 151 Cal. Rptr. 399 (1978) (personal injury action by employee against contractors and subcontractors)].

C. PREJUDGMENT INTEREST. Prejudgment interest is an element of compensatory damages that provides plaintiff with "the accretion of wealth which money or particular property could have produced during a period of loss" [Berns v. Pan American World Airways, Inc. 667 F.2d 826, 829–830 (9th Cir. 1982); In re Pago Pago Aircrash of Jan. 30, 1974 (C.D. Cal. 1981) 525 F. Supp. 1007, 1013(C.D. Cal. 1981); Greater Westchester Homeowners Asso. v. Los Angeles

26 Cal. 3d 86, 102–103, 160 Cal. Rptr. 733, 603 P.2d 1329 (1979), cert. denied, 449 U.S. 820].
Prejudgment interest can be awarded in a tort case pursuant to three separate statutes, depending on the facts of the case [see Civ. Code § 3287(a), Civ. Code § 3288, and Civ. Code § 3291.

Prejudgment interest also may be obtained in a wrongful discharge case sounding in tort under Civ. Code § 3288, which permits interest to be awarded at the discretion of the trier of fact in any case of a breach of a noncontractual obligation or in any case of malice, fraud, or oppression [Civ. Code § 3288; Harsany v. Cessna Aircraft Co. 148 Cal. App. 3d 1139, 1142, 196 Cal. Rptr. 374 (1983)]. Prejudgment interest under Civ. Code § 3288 does not apply to the portion of the judgment representing emotional distress damages [Berns v. Pan American World Airways, Inc. 667 F.2d 826, 830 (9th Cir. 1982); Greater Westchester Homeowners Asso. v. Los Angeles 26 Cal. 3d 86, 103, 160 Cal. Rptr. 733, 603 P.2d 1329 (1979), cert. denied, 449 U.S. 820].

D.  PUNITIVE DAMAGES.  An employer will be liable for punitive damages based on the wrongful conduct of an employee if the employer [Civ. Code § 3294(b)]:

•Had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others,

•Authorized or ratified the wrongful conduct of the employee, or

•Was personally guilty of oppression, fraud, or malice [see Scott v. Phoenix Sch., Inc. 175 Cal. App. 4th 702, 717, 96 Cal. Rptr. 3d 159 (2009) (wrongful termination, without more, will not sustain finding of malice or oppression)].

To subject a corporate employer to liability for punitive damages, the advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation [Civ. Code § 3294(b)]. In this context, a "managing agent" is a corporate employee who exercises substantial independent authority and judgment in making decisions that ultimately determine corporate policy; the mere

9

power to hire and fire employees is not sufficient to establish such authority [White v. Ultramar, Inc. 21 Cal. 4th 563, 567, 573–577, 88 Cal. Rptr. 2d 19, 981 P.2d 944 (1999) (determination of managing-agent status is factual determination that must be made on case-by-case basis); see Roby v. McKesson Corp. 47 Cal. 4th 686, 714–715, 101 Cal. Rptr. 3d 773, 219 P.3d 749 (2009) (supervisor in charge of four of corporation's 20,000 employees did not have kind of discretionary authority over formal corporate policies affecting substantial portion of corporation that would justify awarding punitive damages against corporation for that supervisor's conduct)].

Punitive damages may be obtained in a wrongful discharge action that sounds in tort, that is, an action based on violation of public policy [see Tameny v. Atlantic Richfield Co. 27 Cal. 3d 167, 176–178, 164 Cal. Rptr. 839, 610 P.2d 1330 (1980)]. For example, an employee who sued for tortious "constructive discharge" after he resigned following his refusal to participate in illegal activities was awarded punitive damages on the ground that the employer consciously disregarded his rights by willfully failing to ensure that employees were informed of the law relevant to their duties or to ensure that employees would not be required to participate in illegal conduct [Smith v. Brown-Forman Distillers Corp. 196 Cal. App. 3d 503, 516, 241 Cal. Rptr. 916 (1987)].

E. STATUTE OF LIMITATIONS. The two-year limitations period of Code Civ. Proc. § 335.1 for personal-injury claims applies to actions for wrongful termination in violation of public policy [see Mathieu v. Norrell Corp. 115 Cal. App. 4th 1174, 1189 n.14, 10 Cal. Rptr. 3d 52 (2004) (effective January 1, 2003, two-year limitations period under Code Civ. Proc. § 335.1 replaced one-year period of former Code Civ. Proc. § 340(3)); see also Barton v. New United Motor Manufacturing, Inc. 43 Cal. App. 4th 1200, 1205–1209, 51 Cal. Rptr. 2d 328 (1996) (actions for wrongful termination in violation of public policy are tort actions subject to limitations period applicable to personal-injury claims)].

In Romano v. Rockwell Internat., Inc. 14 Cal. 4th 479, 490–493, 501, 59 Cal. Rptr. 2d 20, 926 P. 2d 1114 (1996), the California Supreme Court held that the statute of limitations for wrongful termination begins to run at the time of termination for purposes of causes of action (1) for breach of an implied contract not to terminate except for good cause, (2) for discharge in violation of the Fair Employment and Housing Act, and (3) for discharge in violation of public policy.

When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action [Code Civ. Proc. § 356]. This provision means, in general, that the running of a period of limitation is suspended during any period in which the plaintiff is legally restrained from taking action to protect his or her interests [see Eistrat v. Cekada 50 Cal. 2d 289, 291–292, 324 P.2d 881 (1958)]. For example, it applies when the plaintiff is legally prevented from taking action to protect his or her rights or when the commencement of an action must await the deliberations and decision of an administrative agency [Hoover v. Galbraith 7 Cal. 3d 519, 526, 102 Cal. Rptr. 733, 498 P.2d 981 (1972)], or in this case, a bankruptcy court because of the automatic stay. Upon the reorganized debtors filing for bankruptcy on January 29, 2019, this tolled the running of the statute of limitations with respect to claimant's constructive discharge claim against same. Accordingly, the 2-year statute of limitations has not run.

IV. ANTICIPATED DISCOVERY

A. Special Interrogatories

B. Request for Admissions

C. Request for Production of Documents

   1. Performance or evaluation reports of claimant while an employee working in the department headed by Mr. Novello.

2. Performance or evaluation reports of all other personnel in the department while headed by Mr. Novello to compare male employee reports to female employee reports.

3. Any discrimination claimants made to defendant by any employees in the department while headed by Mr. Novello.

4. Any reports of retaliation made by to defendant by any employees in the department while headed by Mr. Novello.

5. Any interactions by defendant with the California Department of Fair Housing and Employment and/or the Equal Employment Opportunity Commission concerning any employee of the department while headed by Mr. Novello.

6. Any lawsuits against defendant brought by any employee of the department while headed by Mr. Novello.

7. The defendant's employee written policies and/or guidelines, rules and regulations, while Mr. Novello headed the department.

D. Service of subpoenas duces tecum on the California Department of Fair Employment & Housing and the Equal Employment Opportunity Commission with respect to claimant's administrative records.

E. DEPOSITIONS

1. Brandon Champion

2. Scott Hayes

3. Eric Harris

4. Mike Novello

5. Mark Mackowiecki

6. Amanda Clark

7. Greg Tellez

8. Brother of Brendon Champion (name currently unknown)

9. Aaron Dickson

10. Person most knowledgeable of the defendant's Compliance and Ethics Department (commonly known to complainant as "HR" or Human Resources) as per the department's interaction(s) with complainant

11. Expert witness to render an opinion as to the employee compensation package of claimant, comparing the compensation package of defendant to the compensation package of claimant's current employer as it pertain or would have pertained to claimant

Claimant is not intending the above to be an exhaustive list of her intended discovery efforts; rather, the above is her good faith estimate as to the sort of discovery she needs to pursue.

Claimant reserves rights to undertake such discovery as may be needed to obtain relevant evidence and evidence calculated to lead to the discovery of admissible evidence, to include without limitation, the deposition of other witnesses, including expert witnesses, as they become known to her through discovery for purposes of corroboration and/or impeachment.

RESPECTFULLY SUBMITTED,

Dated: January 5, 2023        ULLRICH LAW FIRM

By _____*Donald W. Ullrich, Jr.*_____
　　DONALD W. ULLRICH, JR.
　　Attorney for Plaintiffs

# CERTIFICATE OF SERVICE

My name is Donald W. Ullrich, Jr. My business address is 3100 Zinfandel Drive, Suite 265, City of Rancho Cordova, Sacramento County, California 95670-6391. I am over the age of 18 years and not a party to the within action.

On January 5, 2023, I served a true and correct copy of the attached document via electronic email upon the following named individuals, their respective email addresses stated. After sending said emails, thereafter I received no electronic notification of a failed or undeliverable electronic transmission:

Jane Kim jkim@kbkllp.com

David A. Taylor dtaylor@kbkllp.com

Dara L. Silveira dsilveira@kbkllp.com

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:

*Donald W. Ullrich, Jr.*

Donald W. Ullrich, Jr.