SPIRO JANNINGS
1304 Shortridge Ave. Unit C
San Jose, CA 95116
408-292-0646
Spiro@redlineracingcams.com

CREDITOR/CLAIMANT, *In Propria Persona*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No.: **19-30088 (DM)** |
| PG&E CORPORATION, | Chapter 11 |
| - and - | (Lead Case) (Jointly Administered) |
| PACIFIC GAS AND ELECTIC COMPANY, | **CLAIMANT`S OMNIBUS MOTION FOR RELIEF FROM FINAL ORDER, MOTION FOR RELIEF FROM STAY, AND RESPONSE TO REORGANIZED DEBTOR'S OBJECTION TO CLAIM NO. 58462, FILED OCTOBER 17, 2019** |
| Debtors. | |
| Affects both Debtors | Response Deadline: February 1, 2023, 4:00 PM, Pacific |
| * *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Hearing Information (Upon a Timely Response): Date: TBD Time: TBD Place: Tele/Video-conference Only United States Bankruptcy Court Courtroom 17, 16th Floor San Francisco, CA 94102 |

TO: The **Honorable Dennis Montali**, United States Bankruptcy Judge ("the **Court**"):

SPIRO JANNINGS, *pro se* ("**Jannings**" or "**Creditor**" or "**Claimant**"), hereby:

(**1**) pursuant to Fed. R. Bankr. P. **9024** and F. R. Civ. P. **60(b)(1)/(3)**, files an amended motion (the "**Motion**") to VACATE the Court's January 13, 2022 Order (Dkt. 11829) (the "**Order**"), Disallowing and Expunging Creditor's October 17, 2019 Claim, No. 58462 (the "**Claim**"), against Pacific Gas and Electric Company ("**PG&E**" or "**Debtor**") in the above styled Chapter 11 case ("**Ch-11**"), and render moot the Court's decision (Dkt. 12009) (the "**Decision**") denying Claimant's January 26, 2022 Motion under Rule 60(b)(1) (Dkt. 11871) ("**to Abstain**"); and

(**2**) pursuant to Fed. R. Bankr. P. **4001** and **9014**, contemporaneously files a Motion For Relief From Stay of Debtor's Ch-11 (the "**Relief**"), to return the Claim to state court jurisdiction; and

(**3**) Responds (the "**Response**") to Debtor's October 8, 2021 Objection (Dkt. 11388) (the "**Objection**") to the Claim, to clarify, correct and refute PG&E's erroneous averments and willful omission of facts used to mislead the Court; and present new facts, and give cause, to set aside the injustice befalling of incompetent counsel, and grant relief; and in support so states:

I.     SUMMARY IN SUPPORT OF RULE 60(b)(1)/(3) RELIEF

This omnibus filing addresses what was negligently omitted by Jannings` prior counsel: a *Response* to the Objection; which should never have failed to be timely filed in refuting the willful omission of facts, erroneous conclusions, and embellished conjecture a PG&E officer of the court tactfully used to [misrepresent] evidence, mislead and subvert the Court's integrity.

However, the core issue is the [default] Order, which didn't address the Objection since Claimant's counsel neglected to respond. Jannings was denied the opportunity to avoid the default, because all proceedings in this Court were withheld from him until April 14, 2022; as a result, he's been denied due process, and his well settled right to amend his complaint/Claim.

## II. AUTHORITY

RULE 60. Relief from Judgment, provides in part:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;

    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (6) any other reason that justifies relief.

(c) Timing and Effect of the Motion.

    (1) Timing. A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

The Court's hearing on PG&E's request for Default (Dkt. 11806), and its signed Order granting same, was January 13, 2022; and rendered January 14, 2022.

The instant Motion to vacate under Rule 60(b)(1) and (3) is timely, per Fed. R. Bankr. P. 9006(a) and Rule 60(c)(1).[1] Rule 60(b)(6) has no specified limit, and enjoys the Court's discretion for "any other relief," when no relief under Rule 60(b)(1)—(5) applies. Recently, SCOTUS codified "mistake" in Rule 60(b)(1) to include errors of the court.[2]

A Rule 60(b) motion "is intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or **an attorney in the litigation has acted without authority**; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000). (**Emphasized**.)

---

[1] Jannings sought new counsel in March 2022, directly after this Court's 03/14/22 Decision; and ultimately, fully retained Mark S. Bostick (CSB: 111241) to move forward. Mr. Bostick failed to perform as agreed and fecklessly dragged Jannings along; representation ended 01/12/23. Accordingly, "a reasonable time" would have facilitated much less than the full year Claimant required, but not for the late failures to perform as promised by counsel.

[2] The U.S. Supreme Court in *Kemp v. United States*, No. 21-5726 (June 13, 2022), held that: "The term 'mistake' in Rule 60(b)(1) includes a judge's errors of law," to remove the more limited interpretation of a mistake being that made only by a party (attorney).

3

## III. CLAIMANT WAS WITHOUT KNOWLEDGE

Mr. Scott Furstman (CSB: 76476) ("**Furstman**"), for whatever reason, withheld the status of the case from Jannings, and failed to return calls, texts or emails, despite repeated requests, even allowing for Furstman's known health issues. Given the complex history a layperson perceives a Bankruptcy case of PG&E's scale would command, Jannings construed the lack of notice meant PG&E was embroiled in deferments. Jannings knew nothing of hearings, filings, motions, deadlines and the like; and was not made aware of <u>anything</u> regarding his Claim, until April 14, 2022; long *after* the Court's final disposition of 03/14/22.

Mr. Michael St. James (CSB: 95653) ("**St. James**"), was hired by Furstman as their bankruptcy counsel, but St. James too, failed to engage Furstman for otherwise obvious, relevant information Furstman indeed did possess to prepare a proper response to the Objection, which, *inter alia*, included (1) considerable discovery Jannings acquired *pro se*, (2) affidavits from his hiring superintendent, and (3) a complete first amended complaint with exhibits. For whatever reason, Furstman offered nothing to St. James, and St. James failed to ask Furstman.

Jannings` January 26, 2022 motion to Abstain sought relief under Rule 60(b)(1) for "excusable neglect." By their own Declarations (Dkts. 11871-1 and -2), Furstman and St. James, each fell on their swords to ask the Court for "excusable" mercy that was factually [inexcusable], which the Court justly denied. Jannings could never expect either Furstman or St. James, for who each left him in the dark about the proceedings, to bifurcate their culpability from him in the eyes of the Court's as long as they represented him. They don't.

## IV. CLAIMANT'S ATTORNEYS ACTED WITHOUT AUTHORITY

Attorney/client communication is *sacrosanct*. Counsel's repeated withholding case status while choosing a strategy of inaction and deferment, denied Jannings the right to concur or find new counsel, but in all events, it was negligent conduct perpetrated without Jannings` authority.

4

## V. BACKGROUND IN SUPPORT OF RULE 60(b)(1)/(3) RELIEF

On October 8, 2022, PG&E filed their 12-page Objection to Jannings October 17, 2019 Proof Of Claim, replete with three declarations and the entire 132 page PG&E/Union Labor Agreement, Local Union No. 1245, as "Exhibit A"; and PG&E's Review Committee Grievance Number 23334, as "Exhibit B". PG&E's Investigation Report of Jannings alleged infractions for cause of termination was shown as "Exhibit A", to the Declaration of PG&E's James Leonard.

On December 28, 2022, Jannings filed a Motion to Dismiss PG&E's Objection and Abstain, rather than address the merits or lack thereof to the Objection. This followed a failed second attempt to get an enlargement of time after one continuance was agreed by PG&E. Unfortunately, the Motion to Abstain was never set for hearing or noticed.

On January 11, 2022, PG&E, by and through counsel, Ms. Jane Kim (CSB: 298192), moved for an Order By Default (Dkt. 11806), seeking to fast track a quick disposition in PG&E's favor, based solely on the technical failings of Jannings to respond to the Objection, without addressing any of the Objection's allegations and assertions.

The Court's Order of January 13, 2022, Disallowing and Expunging Claim No. 58462, Filed October 17, 2019 by Jannings (Dkt. 11829), is thorough and unambiguous, and covered all the requisite law and authority the Court is fully vested to enjoy.

However, the Court illuminated its ruling to look beyond the technical deficiencies of Jannings` failure to respond, as moved by PG&E's default motion, and found merits in the otherwise dormant Objection: "[t]his Court having determined that the legal and factual bases set forth in the Objection establish just cause for the relief sought;[]". (*Id.* at p.2:18–20.)

Clearly, the Court considered arguments in the Objection to determine its ruling for a default motion that was otherwise limited solely to Claimant's response failings; Claimant would be prejudiced if his Motion could not rely on the Objection for relief under Rule 60(b).

On January 26, 2022, Jannings filed the Motion for Relief (Dkt. 11871) seeking to vacate the Order pursuant to Fed. R. Civ. P. 60(b) or 59(e), citing Fed. R. Bankr. P. 9023 and 9024, which the Court disregarded under Rule 59, and focused on Rule 60(b)(1).

The relief Jannings sought compounded an already abrasive procedural atmosphere by asking for 75 days more to formulate a response to the Objection, supported by declarations of Furstman and St. James, respectively, falling on their swords, and citing the "mistake, inadvertence, surprise, or excusable neglect," elements of Rule 60(b)(1) as a plausible refuge.

On March 14, 2022, the Court [justly] DENIED Jannings` Motion, setting forth its reasoning with considerable patience and detail in applying the Ninth Circuit's non-exclusive four-factor framework to determine whether missing a [filing deadline] constitutes "excusable" neglect. Predictably, it did not. The Court goes to careful lengths to illustrate the repeated opportunities that Jannings` counsel had to cure their delinquency and proffer even a "bare bones" opposition, which the Court characterized as an "unfortunate result of willfulness, not neglect." While expressing sympathy for counsel's difficult illness, the Court did not find that was a cause of the delay. The Court closes with:

> While the deliberate delays of Jannings' counsel are not excusable, those acts appear only to be misguided and not in bad faith. Every decision by counsel appears to have been made in an effort to garner the best outcome for Jannings. It is unfortunate those efforts were ill-considered.
> No other reason justifies relief here. No argument supporting the basis of Jannings' Proof of Claim has been made in any court, and the extended opportunity to do so has long since passed.

This last point, respectfully, is not accurate. PG&E's Ch-11 and COVID have tolled any reasonable definition of a protracted litigation, and no "extended opportunity" has existed under those protections. The measure of "reasonable" time for a Proof of Claim to be shown relies on the well settled liberal right to amend a complaint pursuant to discovery and evidence that would indeed provide that very argument the Court concludes has not been made "in any court."

## VI. ARGUMENT IN SUPPORT OF RULE 60(b)(1) and (3) or (6) RELIEF

Rule 60(b)(1): The Court erred in dismissing the Claim, because it was denied accurate facts of the record by PG&E's misrepresentations, willful omissions and erroneous conclusions, enumerated in detail (*infra*), but summarized here, and fully exhibited in Jannings Amended Complaint and accompanying Exhibits attached thereto, collectively **EXHIBIT "X"**:[3]

1. No one heard Jannings make the alleged comments to Mr. Pierce;
2. Pierce did not convey the alleged comments to Supervisor, Ms. Weeck for 8 days;
3. PG&E did not learn of the alleged comments, except through Ms. Weeck, not Pierce;
4. Pierce's personnel file shows him being disciplined for falsifying company records;
5. Jannings personnel file shows he's never been disciplined for anything;
6. The truck and cell phone GPS tracking records indicate Jannings was 1.5 to 3.0 miles away from time and place Pierce alleged Jannings heard him make the sexual threats;
7. Pierce excused waiting for a week to notify Ms. Weeck because she was on vacation between July 16 and July 23, 2015; which is a lie;
8. Weeck stated in an 07.27/15 police report she was "out of town" prior to July 23, in support of Pierce's averment he couldn't get a hold of her between July 16 and 23, 2015; and that turns out to be a lie;
9. Jannings was "working" overtime directly for and at the personal request of Weeck on July 17 and 18, 2015, who was not on "vacation" as alleged by Pierce;
10. PG&E never held an arbitration hearing before firing Jannings, as required;
11. The unemployment appeals Court held an evidentiary hearing on the merits of PG&E's denial of Jannings` unemployment insurance, and found that Jannings did not commit the acts alleged by Pierce, and neither Pierce nor Weeck showed up to testify; and neither have ever given any sworn testimony or signed any affidavits or declarations. Ex. X (Ex. "O")
12. Section 301 of the LMRA does not apply to "unlawful" discharge, especially for retaliatory reasons where fraud is conspired to facilitate.

---

[3] All Exhibits are referenced from within **Exhibit "X"** by parenthesis: "Ex. X (Ex. O)"

Rule 60(b)(3): The Court was prejudiced by Debtor's Objection, with its erroneous averments and subsequent irrelevant exhibits, meant to mislead and prejudice the Court. While the bar for "fraud" is high, "misrepresentation," "misleading," "omission of exculpatory facts" are all considered an assail upon "the judicial machinery itself," that can jade the trier of fact's objectivity, and interfere with the impartial functions of the court.

> In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."[4]

Claimant's Response to the Objection at **VII** (*infra*) enumerates each of PG&E's embellished, misrepresented or omitted facts averred, to clearly show in the face of no counterbalanced voice, that subtle liberties of bias and prose are repeatedly taken to prejudice the Court. The Court cited PG&E's Objection in its Order (*Ibid.* at p.2:18–20.). The Response to Objection should receive the Court's review in full measure to affirm this is a case for a jury, not a "default."

Rule 60(b)(6): Claimant was without knowledge of any of events going on in [his] case, because Furstman withheld all facts, and avoided responding to repeated inquiries by Jannings to check the status of the case. Despite repeated requests, Mr. Furstman remained silent; and no one knew that any proceedings were ongoing; which created an "extraordinary circumstance" whereby Jannings` was blinded, and the attorney acted without Jannings` authority.[5] Claimant claims Rule 60(b)(6) is applicable here, should the Court find that neither Rule 60(b)(1) or (3) applicable. should not be penalized.

---

[4] https://definitions.uslegal.com/f/fraud-on-the-court/

[5] A Rule 60(b) motion "is intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or **an attorney in the litigation has acted without authority**; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000).

## VII. RESPONSES TO THE OBJECTION

**1.** Objection (p.4:11–16): *"Mr. Jannings` union grieved his termination, and the grievance proceeded through Step 4 'Review Committee,' upon which the Union and the Utility agreed the discipline was issued for just cause, and the case was closed without adjustment on November 16, 2016. Nadeau Decl., ¶ 2, Ex. A, 141:3-25; 145:15-18; Ex. 14 to Jannings Dep.; Ledbetter Decl., ¶ 5, Ex. B. The Review Committee letter ended the grievance procedure, and thus the grievance did not proceed to Step 5, Arbitration. Ledbetter Decl., ¶ 5."*[6]

(a) The Union did NOT agree to any aspect of the Utility's Review Committee findings. This is an erroneous averment without any support. PG&E's March 17, 2016 "Referral to Pre-Review Committee" of Grievance **#23334** (attached),[7] states in its section entitled:

**POSITION OF THE PARTIES**:

The Company opined that there is no question that the Grievant made highly inappropriate and threatening remarks to a PG&E Supervisor about his own supervisor. While there is concern as to why the remarks were not reported for several days, that person has publicly acknowledged he made a mistake. This admission adds to his credibility. In fact, there is also additional witness statements that support the facts of this case. The Company noted that the prior cases noted in the LIC are clear that threatening a supervisor could be a dischargeable offense. Finally, in accordance with our standards and policies, PG&E will in no way tolerate this behavior. Given all of the above, the termination is appropriate and for just cause.

The Union maintained that this is a case of an employee versus another supervisor's testimony and that the Company cannot prove these statements occurred. Given the lack of facts and the lack of credibility of the witnesses in

---

[6] Defendant's Objection, p.4: 11-16.
[7] There were TWO Referrals to Pre-Review: identically "stamp signed" for the Union, and **back**-dated to **03/17/16**: #23181 & 23334 (attached).

9

this case, the Grievant should not have been terminated. **The Union opined that the Grievant should be returned to his position immediately.**

(b)  In the final 11/16/16 disposition of the Review Committee #23334, which closed the review of upholding the termination of Jannings, concluded the LMRA at Step 4, and denied Jannings Step 5, arbitration, the Union's contravening position is depicted in the section entitled: **Discussion**:

The Union argued two points: 1) The male Supervisor who heard these comments did not act on the comments immediately and waited 6 days before telling the female Supervisor of Grievant' s threats. The Union opined this was "shop talk" and had these been credible threats, he would have reported them immediately. 2. The Union argued the GPS records did not indicate that Grievant was in the yard later in the day when the male Supervisor said the conversation took place. **The Union argued for a reduction in the penalty.**

The Company acknowledged the male Supervisor did not report the incident as quickly as he should have, but that does not negate the fact that the conversation took place. Even the Grievant admitted the conversation took place but denies making the vulgar comments. Further, in the interest of protecting his job, Grievant had a motive to lie but he could not provide a motive as to why the male Supervisor or any of his co-workers would fabricate these stories against him. Finally, GPS is only triggered for Locate and Mark employees when they are entering information into the computer. Therefore, when Grievant was in the yard speaking to the male Supervisor, GPS was not tracking him because he was not inputting data into the computer.

Nowhere in 03/17/16 Referral to Pre-Review Committee #23334 document (a), *supra,* is there any capitulation, agreement, or acquiescing of the Union to accept PG&E's investigative findings and termination of Jannings.

Nowhere in the 11/16/16 Review Committee #23334 disposition (b), *supra*, is there any capitulation, agreement, or acquiescing of the Union to accept PG&E's investigative findings

and termination of Jannings. The Review Committee convicted Jannings *not based on proof*, but rather, his inability to explain why the male Supervisor, Pierce, would fabricate such a story. <u>PG&E and Leonard ignored Pierce's prior reprimand for falsifying records</u>.

  (c)  PG&E's declaration by counsel, **Ms. Nadeau**, and her attached Exhibit "A" of Jannings` deposition excerpts, **conveniently omit** sworn testimony that prior to Pierce's 07/23/15 allegation, Weeck harassed Jannings with a Written Reminder on 05/07/15 for trivial work infractions, only after Jannings filed a grievance against her on 03/27/15 for changing time cards to deny him justified pay upgrades; an offense which Weeck could be terminated.[8] Ms. Nadeau's deposition record incorporates **Ex. 19**, a copy of the 02/23/16 CA. Unemployment Insurance Appeals Board hearing before the Honorable Robert Lofgren, Administrative Law Judge, and found following an evidentiary hearing that Jannings **did not commit the offense PG&E terminated him for**.[9] It **was not appealed**. By selective **omission**, Nadeau misrepresents evidence to the Court of FACTS in the record that contradict [her] conclusions.

  (d)  **The Ledbetter Decl.**, ¶ 5, Ex. B., is **erroneous**, in both fact, and as a sworn affirmation. The "**Letter**" (No. 23334) shows no such affirmation the Union agreed or acquiesced to anything. The Union disagreed with The Review Committee's findings and felt Jannings should receive a reduction in penalty because the GPS records did not support Jannings being at the place and time alleged. Ms. Landoli, and Ms. Stice's signatures represent PG&E, the Review Committee; yet Ledbetter attest falsely.[10]

---

[8] Jannings` 03/27/15 Grievance #23090 against Weeck, serves as a strong motive for Pierce to fabricate a lie to save his office-mate Weeck.

[9] Amended Complaint EX. "O", "Court's Findings Of Fact" (p.2, ¶ 6): "The claimant did not … make the profane statement[]." (Attached.)

[10] Ex. "A" of Decl. p.7; Locate and Mark ticket locations show Jannings 1.5 to 3.13 miles away from yard; and no access card swipes on 07/15/15.

(e) **The Leonard Decl**. (p.2, ¶ 4) avers his investigation "yielded the **evidence** and conclusions," and cites the following elements, which are discussed separately (*infra*):

1. * Mr. Jannings had previously used inappropriate language regarding [Ms. Weeck], such as calling her a bitch and yelling obscenities at her;

2. * Mr. Pierce, who hardly knew Mr. Jannings, had no reason to lie and, further, told [Ms. Weeck] about the threat because he genuinely feared for her safety;

3. * Other employees observed Mr. Jannings speaking with Mr. Pierce and Mr. Jannings made a statement "They are treating you surveyors like shit" and recalled that Mr. Jannings was "an angry guy" who had been "upset and aggressive" in previous encounters with them; and

4. * [Ms. Weeck] also feared for her own safety and accordingly filed a police report to document the incident.

Element **(1)**: William "Bill" Pierce is the ONLY source to the allegation Jannings called Weeck a "bitch." Except for Weeck stating she heard from "other employees" that Jannings called her a bitch, nowhere else is there any objective first person corroboration by anyone of these allegations; all hearsay. **Jannings denied all under oath**.[11]

Element **(2)**: This observation also comes solely from Pierce, and is generated only when trying to explain to investigator Leonard why [he] waited EIGHT (8) days to bring Jannings` alleged threat about Weeck to [her] and PG&E's attention; which any reasonable person would find contradicts the stated urgency and aggravation.

---

[11] Jannings` 01/08/19 Deposition, p.120:19–25, p.121:1–2 and p.122:13–20. No witness against Jannings has appeared under oath.

12

**Element (3):** Jannings was never asked by Leonard if he made the comment: "They are treating you surveyors like shit," or not. Even IF such a comment was made; and even IF two strangers from Pierce's crew characterized him as "an angry guy," who seemed "upset and aggressive," neither adds veracity to Pierce's allegations to support the far greater threat Pierce alleges that Jannings made. In fact, both workers who made these comments only observed Jannings speaking with Pierce, but **didn't remember which day it was**, and **didn't remember if it was morning or afternoon**; neither of them heard the conversation, and neither worker stated Pierce said anything or responded to Jannings in any way that was out of the ordinary during or after Pierce's conversation with Jannings.[12]

**Element (4):** Weeck only feared for her safety AFTER July 23, 2015, when purportedly told by Pierce of the threatening comments Jannings was alleged to have made. Weeck was NOT in fear of her safety when calling Jannings on July 16, 2015 to ask him to work overtime on July 17, 2015, which he did. The same two days that she was supposedly "out of town" and couldn't answer the phone when Pierce stated he tried to call her.

James Leonard's declaration contains nothing factual to support Jannings made the threats, other than a self serving conclusory opinion extrapolated from a hearsay witness who's own delayed actions contradict logic if such a dire and imminent threat to Ms. Weeck truly existed. Leonard's investigation ignores his own data that the GPS records show Jannings was miles away at the purported time and date, because the conversation happened two days earlier, on July 13, 2015; not July 15, 2015 as alleged. Making his July 23, 2015 report of the allegation, even more dubious. A bigger question: is **why did Leonard ignore Pierce's employee file showing he'd**

---

[12] Ex. "A" of Decl. p.13:2–16, Chris Plummer could not recall "specific date" or if it was "morning or afternoon." Joseph Gonzalez stated he too "could not recall specific date," and "may have been morning or afternoon."

**been previously reprimanded for falsifying company records**; while **Jannings never had a blemish** prior to March 27, 2015.

**2.** Objection (p.4:20–24): "*The case was litigated for over a year, during which time the Parties exchanged documentary evidence, Mr. Jannings was sanctioned twice by the court in the total amount of $8,160.90, which he still has not paid, and Mr. Jannings was deposed. Nadeau Decl., ¶ 2, Ex. A, 207:9-19, ¶ 6. The Utility was poised to file a summary judgment motion when the case was stayed due to PG&E's bankruptcy proceedings. Nadeau Decl., ¶ 3.*"[13]

    (a)    Jannings was forced to self represent following the incapacitation of his filing attorney until hiring new counsel. A *pro se* litigant's communications with Defense counsel during this one year interim hardly constitutes "litigating for over a year" in the light Ms. Nadeau implies as being of a frivolous nature requiring the Federal Court to put out of its misery.

    (b)    A *pro se* litigant being sanctioned for "procedural errors" under California Rules of Court, rule 3.1345; California Codes of Civil Procedure 2031.310(b)(l), 2031.310(b)(2) and 2016.040. California Codes of Civil Procedure 2031.310(h), 2023.010(h), 2023.010(i), when 2023.020 mandates sanctions to leave the Court with no other option are ***not*** indicative – as Ms. Nadeau's Objection suggests by innuendo – that the merits of Jannings` complaint is frivolous or without merit.

    (c)    The Objection proffers an unsupported fact through a suggestion by innuendo that PG&E was about to move for summary judgment of dismissal, and would have, but for the intervention of PG&E's bankruptcy proceedings, as if that would have assured a "just" outcome in their favor she now proffers the Federal Court to embrace (which it

---

[13] Defendant's Objection, p.4: 20-24.

did); but that same Ch-11 denied Jannings the opportunity to amend his complaint to reflect the specific facts and breadth of his unlawful termination by PG&E.

3. Objection (p.9:11–23): *"Even if they were not pre-empted, Mr. Jannings cannot possibly win on his breach of contract claims because his theory (that the Utility could not fire him on the basis of uncorroborated hearsay) is legally incorrect. Mr. Jannings **admitted** in his deposition testimony that the Utility believed Mr. Pierce's statement that Mr. Jannings made the sexual threat against his supervisor. Nadeau Decl., ¶ 2, Ex. A, 143:1-23, 143:15-23, 148:3-25. Mr. Jannings' theory is based on his belief that the Utility was not able to base the termination on Mr. Pierce's testimony in the absence of a corroborating witness. Id. at 143:1-7 ("I don't know how they could make that just cause, you know on hearsay. Just no corroboration of anybody. It's the famous old he said, she said. No one heard me say anything to Bill. No one even saw me with Bill. They recollect they saw me talking to him, which I admit to on Monday.") Mr. Jannings is incorrect, because the Utility does not have to prove that Mr. Jannings made the threat, but only that the Utility honestly believed he did so after an appropriate investigation. "Good cause" means "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual."*[14]

    (a) Ms. Nadeau misleads the court by implying Jannings "admitted" some legal conclusion of what PG&E "believed," when he only confirmed a fact of record (p.143:21–23): PG&E chose to believe Bill Pierce, because it served their purposes to say and act as if they believed Bill Pierce. This in no way is an admission by Jannings of

---

[14] Cause for termination may properly be determined on summary judgment. *Fowler v. Varian Assoc., Inc.*, 196 Cal. App. 3d 34, 42-43 (1987).

any wrong doing, as Nadeau implies, then embellishes by elevating her closing on this point characterization from "believed" to "*honestly believed.*"

(b) *Fowler v. Varian Assoc., Inc.*, exemplifies exactly what Jannings was denied: "good faith" and "fair and honest reasons," which was not used by PG&E in the face of a preordained conclusion on Jannings` fate.

**4**. Objection (p.11:9–12): "*The Reorganized Debtors object to Mr. Jannings' Claim pursuant to section 502(b)(1) of the Bankruptcy Code because it fails as a matter of law on two grounds: first, Mr. Jannings' claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA") and second, Mr. Jannings has already admitted facts in his deposition defeating all of his causes of action in the civil complaint as a matter of law. Claimant has additionally failed to provide adequate (or even any) supporting documentation in support of his claim or how he derived the $1,000,000 amount demanded.*"[15]

(a) The Objection's argument Jannings` case "fails as a matter of law" is conveniently premature because it is based solely on a complaint that is not relevant to the facts attained in discovery and require amending. Ms. Nadeau's claim Jannings` unlawful termination and the "review committee's findings" is only subject to a timely filed LMRA Section 301 is erroneous. This case was viable and in **discovery** up until PG&E fled to Ch-11, and if the LMRA was a defense, PG&E would have already dismissed this case in state court. The amended complaint makes clear the CBA and the LMRA are not applicable limitations to this case being litigated in state court.[16]

**5**. Objection (p.9:13–27): "*Mr. Jannings admitted in his deposition testimony that the Utility believed Mr. Pierce's statement that Mr. Jannings made the sexual threat against his*

---

[15] Defendant's Objection, p.9: 13-20.
[16] https://casetext.com/case/ortiz-v-permanente-med-grp

*supervisor. Nadeau Decl., ¶ 2, Ex. A, 143:1-23, 143:15-23, 148:3-25. Mr. Jannings' theory is based on his belief that the Utility was not able to base the termination on Mr. Pierce's testimony in the absence of a corroborating witness. Id. at 143:1-7 ('I don't know how they could make that just cause, you know on hearsay. Just no corroboration of anybody. It's the famous old he said, she said. No one heard me say anything to Bill. No one even saw me with Bill. They recollect they saw me talking to him, which I admit to on Monday.')"* [17] *Mr. Jannings is incorrect, because the Utility does not have to prove that Mr. Jannings made the threat, but only that the Utility honestly believed he did so after an appropriate investigation. "Good cause" means "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual."* [18] *Cotran v. Rollins Hudig Hall Int'l, Inc., 17 Cal. 4th 93, 108 (1998). "The proper inquiry for the [fact-finder] . . . is not 'Did the employee in fact commit the act leading to dismissal?' It is **'Was the factual basis on which the employer concluded a dischargeable act had been committed reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual?'"** Id. at 107 (emphasis added). A finding of employee misconduct on the job is good cause for termination. However, the employer need not prove that the alleged misconduct actually occurred. "Good cause" exists so long as the employer reasonably believed the alleged misconduct took place and acted fairly.*[19]

---

[17] An admitted "conversation" that witnesses did not hear nor see having any residual consequences from Pierce (i.e, expressed shock, body language, specific comments recited about Jannings` comments, etc.), does not self indict into the fabricated sexual threats Pierce alleges.

[18] **Fair and honest reasons, regulated in good faith** is not what PG&E used for terminating Jannings, as the amended complaint sets forth. Cause for termination may properly be determined on summary judgment. *Fowler v. Varian Assoc., Inc.*, 196 Cal. App. 3d 34, 42-43 (1987).

[19] Under the amended complaint, the exhibits and facts enumerated dispel any reasonable interpretation that PG&E "acted fairly."

17

1     (a)     Jannings admitted nothing. The Objection cites her Decl. Ex. A, 143:1-23 and *implies* the "admission" (p.143:21-23) for his conclusion in law (he would not be expected to determine) is significant; it is not. This is conclusory and **misleading**; averred in presumption the Court would not read the referenced transcript.

    (b)     The Objection cites Jannings` deposition at p.148:3-25 to overreach for a conclusion of law Jannings could not support with his admission PG&E "believed" Pierce over him. The question is meant to infer this is something more than an observation of facts in the record of PG&E's investigation. It's not. Arguing this as Jannings` self admission of guilt is disingenuous and deceptive, which relies on the Court failing to review the actual exhibits cited.

## VIII. PG&E MISDIRECTED AND DECEIVED THE COURT

PG&E's 10/08/21 "Objection" to the Claim is rife with conclusory and irrelevant arguments; but worse, it completely obviates facts known to PG&E. Ms. Nadeau goes out of her way to desperately argue the case with an exhibit transcript excerpt in her Declaration. While she has legal right to conjure up all the allegations she wants in an argument, she doesn't have the right to her own interpretation of the facts; especially when she omits key facts, and uses the excerpts of Jannings` deposition of truthful responses against him.

PG&E's Objection relies solely on Spiro's original Superior Court Complaint for all the conclusions the Objection extrapolates from. However, Spiro's case was always destined to be amended; from day one. Spiro is entitled to amend the complaint. Once amended, the wrongful allegations of unlawful termination born of retaliation set aside all arguments that PG&E proffer as just grounds for the Court to consider this case frivolous. PG&E's internal, multi-department conspiracy to cover up the unlawful conduct of Spiro's female supervisor, Bobbi Weeck, who changed the time cards, and then denied Spiro a pay upgrade for work he did, was all retaliation.

Mr. Jannings` Claim, was always intended to be amended, and deserves to be amended, to comport with the evidence attained on discovery, and guarantee basic rights he is due which justice requires; and denying that due process is a miscarriage of justice; particularly when the Debtor is not prejudiced, and attained a default dismissal of the Claim from bad faith.

**WHEREFORE**, for the reasons set forth herein, Claimant respectfully asks this Honorable Court, to: (1) set aside and vacate its January 13, 2022 Order, and declare the Court's March 14, 2022 "moot," and (2) Deny PG&E's October 08, 2022 Objection to Claimant's Claim; and (3) Grant Relief from automatic stay enjoyed by PG&E's Ch-11 filing, directly the Claim be returned to Santa Clara County Superior Court Jurisdiction; (4) award attorney fees as applicable in an amount yet to be determined, and (5) grant any and all other relief the Court deems just and proper.

Date: January 13, 2023      **SPIRO JANNINGS, *Claimant***

        */s/ Spiro Jannings* .
        SPIRO JANNINGS
        *Pro Se*