ROLNICK KRAMER SADIGHI LLP
Lawrence M. Rolnick *(pro hac vice)*
lrolnick@rksllp.com
Marc B. Kramer *(pro hac vice)*
mkramer@rksllp.com
Michael J. Hampson *(pro hac vice)*
mhampson@rksllp.com
Richard A. Bodnar *(pro hac vice)*
rbodnar@rksllp.com
Frank T.M. Catalina (*pro hac vice*)
fcatalina@rksllp.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

ST. JAMES LAW, P.C.
Michael St. James, CSB No. 95653
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

*Attorneys for the RKS Claimants*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>            Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>Chapter 11<br><br>**THE RKS CLAIMANTS' MOTION TO ENFORCE THE ADR PROCEDURES ORDER AND ESTABLISH A MARCH 20, 2023 DEADLINE TO OBJECT TO THE RKS CLAIMANTS' CLAIMS**<br><br>**Hearing Information:**<br>Date:       March 7, 2023<br>Time:      10:00 a.m. (Pacific Time)<br>Place:     (Telephone or Video Only)<br>          United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 94102<br><br>Objection Deadline:<br>February 21, 2023, 4:00 p.m. (Pacific Time) |

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 3

    I.   Implementation of the ADR Procedures............................................................ 3

    II.  Reorganized Debtors Persuade RKS Claimants to Withdraw Objection to Fifth Extension in Exchange For Good Faith Mediation, But then Mediate in Bad Faith ........................... 7

ARGUMENT ................................................................................................................ 10

    I.   The Court Should Enforce the ADR Procedures Order and Establish a March 20, 2023 Deadline For Reorganized Debtors to Object to the RKS Claimants' Claims ................. 10

        a.    The ADR Procedures Order Establishes a Sixty-Day Deadline From a Failed Mediation to Object to the Claims Being Mediated ........................................... 11

        b.    Reorganized Debtors Violated the ADR Procedures Order By Mediating in Bad Faith ............................................................................................................. 11

        c.    A March 20, 2023 Objection Deadline is Equitable and Necessary ..................... 13

CONCLUSION............................................................................................................. 15

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

# TABLE OF AUTHORITIES

Page

**Statutes**

11 U.S.C. § 105(a) ................................................................................................................ 10

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The RKS Claimants[1] hereby submit this Motion to Enforce the Order Approving Securities ADR and Related Procedures For Resolving Subordinated Securities Claims (the "**ADR Procedures Order**") [Dkt. No. 10015] and to enter an order establishing March 20, 2023 as the deadline for Reorganized Debtors to object to the RKS Claimants' claims. Contemporaneously herewith, the RKS Claimants submit the Declaration of Richard A. Bodnar, dated February 3, 2023 in support of this limited Objection ("Bodnar Decl.").

## INTRODUCTION

The RKS Claimants are 699 individual Securities Claimants with aggregate damages of more than $2.7 billion. They have complied with the procedures implemented by the Court—requested and advocated by the Reorganized Debtors[2]—to have their claims resolved. They retained independent counsel of their choice and submitted proofs of claims in this bankruptcy proceeding to have their claims resolved. Despite representations to this Court that they would move expeditiously to implement the ADR procedures to resolve claims, Reorganized Debtors ignored the RKS Claimants for years and instead picked off a small number of small claims – the "low hanging fruit," as the Court recently observed. When Reorganized Debtors' filed their fifth motion to extend the objection deadline, several of the RKS Claimants objected. To resolve that objection, Reorganized Debtors offered to engage in prompt mediation in exchange for dropping their objection. However, in the ensuing mediation Reorganized Debtors mediated in bad faith and simply used the mediation process to avoid the merits of the RKS Claimants' objection and to continue stubbornly down the path of an attempted 7023-equivalent class resolution process that has been twice rejected by this Court.

We respectfully request that the Court no longer allow Reorganized Debtors to continue sidestepping the RKS Claimants' claims. The ADR Procedures require that Reorganized Debtors object to claims (assuming they wish to do so) within sixty days of a failed mediation, as was acknowledged by Reorganized Debtors' counsel at the recent hearing on their motion to extend

---

[1] The RKS Claimants are set forth on Schedule 1 attached hereto.
[2] "Reorganized Debtors" are PG&E Corporation and Pacific Gas & Electric Company, as reorganized pursuant to the Plan (defined below).

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

the objection deadline. Consistent with that timetable, we respectfully request that the Court set a March 20, 2023 objection deadline as to the RKS Claimants' claims – which is sixty days from the parties' recent brief, and utterly failed, mediation. In addition, the ADR Procedures Order provides that the Court may grant a "just and appropriate" remedy for a party's refusal to mediate in good faith. Given Reorganized Debtor's refusal to mediate in good faith, and their years of intentional delay and avoidance, ordering the claims allowance process to go forward as to the RKS Claimants without further delay constitutes such a remedy.

Establishing a March 20, 2023 objection deadline for the RKS Claimants' claims is not only fair and reasonable, but is necessary to resolve within a reasonable timeframe claims that have lied dormant for years with no forward progress. The RKS Claimants' claims are no closer to resolution now than they were when this bankruptcy action was filed in 2019. The RKS Claimants are being forced to bear significant credit and market risk while their claims remain unresolved – unlike those creditors whose claims have been paid pursuant to the Plan. Reorganized Debtors have the RKS Claimants' trading data and have had ample time to review and evaluate their claims. Given that the one-day mediation was hopelessly unproductive, the only way to bring the claims to a resolution – which will benefit both Reorganized Debtors and the RKS Claimants – is to proceed with the claims allowance process mandated by bankruptcy law.

Finally, it is necessary to enforce the ADR Procedures Order and establish a March 20, 2023 objection deadline to prevent Reorganized Debtors from further delaying resolution of the RKS Claimants' claims. Reorganized Debtor has informed the Court it is in advanced negotiations with class counsel to attempt a class resolution of the claims. To that end, Reorganized Debtors are likely to seek approval of a class settlement in the near term – despite having twice successfully prevented use of the class device in the bankruptcy and inducing the RKS Claimants to file individual claims and retain counsel. As Reorganized Debtors' counsel previously represented to the Court:

> The idea that we are going to displace their counsel and them and their judgment for PERA's judgment is just not appropriate. Those people very well may have different views of their claims, the

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

strengths.  They may have different desires in terms of, you know, whether they want to settle now, whether they want to fight it out.

The RKS Claimants have retained counsel, filed claims, submitted their trading data, and attempted to mediate in good faith.  They are ready to resolve their claims through the claims allowance procedures available to them under bankruptcy law.  We respectfully request that the Court establish an expeditious, efficient and clear path forward for resolution of their claims by enforcing the ADR Procedures Order and designating March 20, 2023 as the deadline to object to the RKS Claimants' claims, without regard to Reorganized Debtors' attempts to reach a separate settlement with class counsel.

## BACKGROUND

### I.    Implementation of the ADR Procedures

Debtors commenced these Chapter 11 cases on January 29, 2019, seeking relief pursuant to Chapter 11 of the Bankruptcy Code [Dkt. No. 1].  On July 1, 2019, the Court entered an Order [Dkt. No. 2806] (the "**Bar Date Order**") setting a bar date of October 21, 2019 (the "**Bar Date**") for filing proofs of claim for all prepetition claims.

On December 9, 2019, the Public Employees Retirement Association of New Mexico ("**PERA**") and others filed a Motion to Apply Bankruptcy Rule 7023 to Class Proofs of Claim [Dkt. No. 5042] (the "**First 7023 Motion**").  PERA and others had previously commenced class action lawsuits, which were consolidated (the "**Consolidated Class Action**"), asserting claims against Debtors and non-Debtor directors and officers (the "**Directors and Officers**") of the Debtors under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "**Exchange Act**") on behalf of a putative class of securities claimants consisting of "all persons and entities that purchased or otherwise acquired PG&E publicly traded securities during the period from April 29, 2015 through November 15, 2018, inclusive," (the "**Putative Class**"). (Declaration of Richard A. Bodnar ("**Bodnar Decl.**"), Ex. 1.)  The Putative Class proposed to cover all purchasers of PG&E securities who had filed proofs of claim as well as any others who had missed the Bar Date.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

On February 27, 2020, the Court denied the First 7023 Motion [Dkt. No. 5943], having explained in a memorandum decision that "granting the [First 7023 Motion] may result in more chaos than certainty," [Dkt. No. 5887 at 4]. To allow any claimant who had failed to file claims before the Bar Date, the Court set April 16, 2020 (the "**Extended Securities Bar Date**"), as the deadline for securities claimants to file individual proofs of claim, subject to an approved form (the "**Rescission or Damage Proof of Claim Form**"). As a result of the Extended Bar Date, all purchasers of PG&E securities were given an additional opportunity to retain counsel and file their proofs of claim.

On June 20, 2020, the Court entered an Order confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 (as amended and/or modified, the "**Plan**") [Dkt. Nos. 8048, 8053]. The Plan designated three classes of subordinated securities claims: Class 9A – HoldCo Subordinated Debt Claims; Class 10A-II – HoldCo Recission or Damages Claims; and Class 10B – Utility Subordinated Debt Claims (collectively, the "**Securities Claims**")[3] [Dkt. No. 8048 §§ 4.12, 4.14, 4.32]. Pursuant to the Plan, Class 9A and Class 10B Securities Claims were unimpaired as claimants in each class would receive cash in an amount equal to their allowed claims. (*Id.* §§ 4.12, 4.32.) Equity-based Securities Claims (Class 10A-II) were impaired, and those claimants would receive shares of New HoldCo common stock according to a formula contained in the Plan based on the amount of a claimant's allowed claim and the date on which they purchased the security. (*Id.* §§ 1.109, 4.14.)

On September 1, 2020, Reorganized Debtors filed a Motion to Approve Securities ADR and Related Procedures For Resolving Subordinated Securities Claims (the "**ADR Procedures Motion**") [Dkt. No. 8964]. Among other things, Reorganized Debtors' ADR Procedures Motion sought entry of an order that would establish expedient and efficient procedures for resolving the Securities Claims by requiring Securities Claimants to submit information regarding their securities trading (the "**Trading Data**") to Reorganized Debtors, who would then exchange settlement offers with the claimants and/or enter into mandatory non-binding mediation with them.

---

[3] Those parties with Securities Claims are referred to herein as "**Securities Claimants**."

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1  (*Id.* at 2.)  Reorganized Debtors represented to the Court in the ADR Procedures Motion that the

2  "the Securities ADR Procedures are designed to ***facilitate prompt settlements with individual***

3  ***claimants*** as opposed to resolution of these claims on the merits."  (*Id.* at 3-4 (emphasis added).).

4  PERA opposed implementation of the ADR procedures and, on September 28, 2020, again

5  sought to introduce a class action procedure to resolve the Securities Claims, filing a Motion to

6  Apply Bankruptcy Rule 7023 and Certify a Limited Class (the "**Second 7023 Motion**") [Dkt. No.

7  9152].  PERA argued that a class mechanism was "the only way that final resolution of all claims

8  can be negotiated on a fair and collective basis," and sought to certify a mandatory class under

9  either FRCP 23 (b)(1)(A) or 23(b)(1)(B).  (*Id.* at 2, § II.B.)

10  Reorganized Debtors vigorously opposed PERA's motion.  On November 18, 2020, the

11  Court held a hearing to consider both the ADR Procedures Motion and the Second 7023 Motion

12  [Dkt. No. 9582].  At that hearing, Reorganized Debtors represented that, under the proposed ADR

13  Procedures, they would seek trading information from the Securities Claimants "promptly after

14  approval, and we should be able to have that information within forty-five to sixty days[.]"

15  (Bodnar Decl., Ex. 2 at 6:20-21.)  Reorganized Debtors told this Court:  "within literally a couple

16  of months, the debtors can have ***settlement offers out to most claimants***."  (*Id.* at 7:3-4 (emphasis

17  added); *see also id.* at 9:7-9 ("And so Your Honor, literally within a couple of months, we expect

18  the settlement process to begin, and to be fruitful.").)

19  Reorganized Debtors represented to this Court that there was no need for a class procedure

20  because putative "class members" had already filed individual proofs of claim and had already

21  retained counsel to file them:

22
23  > This is not a [putative] class action where you have absent shareholders.  This is a situation very different, and it's a bankruptcy situation where people have actually filed proofs of claim. Hundreds if not thousands of them have filed these proofs of claim
24  > with their own counsel.

25  > And the idea that we are going to displace the judgment of individuals who have taken the time to file proofs of claim on their claims – they've said I have a claim, I was injured.  The idea that we are going to displace their counsel and them and their judgment for PERA's judgment is just not appropriate.  Those people very well may have different views of their claims, the strengths.  They may
26
27

28

1                 have different desires in terms of, you know, whether they want to settle now, whether they want to fight it out.

2 (*Id.* at 44:9-23.)

3          On December 4, 2020, and in reliance on the positions taken by Reorganized Debtors, the

4 Court issued an oral ruling granting the ADR Procedures Motion and denying the Second 7023

5 Motion [Dkt. No. 9752]. In approving the ADR Procedures, the Court expressly pointed to the

6 anticipated promptness and efficiency of the ADR Procedures in resolving claims as a basis for its

7 decision. As the Court noted:

8

9            [T]he acts complained of by some of the securities claimants happened almost five years ago. The bankruptcy was filed nearly two years ago. Thus, there are prospective claimants, both large and small, who didn't trade their claims and who have waited a very long time. The ADR procedures suggested by the reorganized debtors have the appeal of assuring some claimants will have an opportunity to recover some of their losses quickly and inexpensively.

10

11

12 (Bodnar Decl., Ex. 3 at 6:21-7:4.)

13

14          On January 25, 2021, the Court entered the ADR Procedures Order [Dkt. No. 10015]. The

15 ADR Procedures Order incorporated, as attachments, (1) Securities Claim Information Procedures

16 (the "**Claim Information Procedures**") regarding the submission of trading data to the

17 Reorganized Debtors by Securities Claimants, and (2) Securities ADR Procedures (the "**ADR**

18 **Procedures**") "for facilitating the potential settlement of Subordinated Securities Claims,

19 including, without limitation, (i) procedures to allow the Reorganized Debtors and the

20 Subordinated Securities Claimants to exchange settlement offers, and (ii) procedures for both

21 standard and abbreviated mandatory non-binding mediation of Subordinated Securities Claims …"

22 [*Id.* at 1].

23          The ADR Procedures require both Reorganized Debtors and Securities Claimants to

24 "negotiate in good faith in an attempt to reach an agreement for the settlement of the Subordinated

25 Securities Claims" in connection with a mediation thereunder. [Dkt. No. 10015-1 § IV.B]. They

26 further provide for the Court to "grant such other or further remedy deemed just and appropriate

27 under the circumstances," if the Court finds that Reorganized Debtors "fail[ed] to comply with the

28 [ADR] Procedures, ***negotiate in good faith***, or cooperate as may be necessary to effectuate the

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

[ADR] Procedures. [Dkt. No. 10015-1 § IV.E]. They also provide that:

> In the event these Securities ADR Procedures have been invoked as to a Subordinated Securities Claim but have not resolved the Subordinated Securities Claim, the deadline to object to the Subordinated Securities Claim under Section 7.1 of the Plan shall be automatically extended until sixty (60) days after the termination of the Securities ADR Procedures. For the avoidance of doubt, this provision in no way shortens the deadline to object to the Subordinated Securities Claims under Section 7.1 of the Plan.

[Dkt. No. 10015-1 § III.C (emphasis added)].

### II. Reorganized Debtors Persuade RKS Claimants to Withdraw Objection to Fifth Extension in Exchange For Good Faith Mediation, But then Mediate in Bad Faith

Despite that ADR Procedures and their representations to this Court, Reorganized Debtors did not offer to settle, or mediate, with any of the RKS Claimants until they were forced to.[4] On October 25, 2022, Reorganized Debtors filed their Fifth Extension Motion, seeking a 270-day extension of the claims objection deadline [Dkt. No 13122 at 1-2]. Reorganized Debtors revealed for the first time in this filing that, contrary to their representations in their fourth motion seeking an extension, the Court-ordered ADR Procedures "w[ere] paused after the Reorganized Debtors began discussions regarding a more global resolution of the Securities Claims." (*Id.* at 10.) The "more global resolution" is a contemplated class settlement of the filed proofs of claim with the disapproved class representative, PERA. Contrary to their prior representations to this Court, Reorganized Debtors reported that they have been attempting "to negotiate a global settlement" and were thus seeking an extraordinary 270-day extension "to allow the Reorganized Debtors the opportunity to resolve the Securities Claims," "hopeful that the Securities Claims can be resolved without the need to litigate the claims on an individual-claim basis . . . ." (*Id.* at 10-11.)

Certain of the RKS Claimants (the "**Kingstown Claimants**") objected to the Fifth Extension Motion (the "**Fifth Extension Objection**"), and they were joined by 63 additional RKS Claimants [Dkt. Nos. 13163, 13166-97, 13199-207, 13209-30]. As outlined in the Fifth Extension Objection and accompanying papers, counsel for the RKS Claimants made numerous attempts to

---

[4] The RKS Claimants are comprised of 699 individual claimants with more than $2.7 billion in aggregate damages.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

engage in settlement discussions with Reorganized Debtors in the intervening time between entry of the ADR Procedures Order and the Fifth Extension Motion. [Dkt. No. 13163 at 9-11]. The Kingstown Claimants argued in the Fifth Extension Objection that the Reorganized Debtors failed to demonstrate cause for a further extension of the claims objection deadline because:

> [T]hey have (i) failed to reasonably and diligently comply with this Court's ADR Procedures Order; (ii) unilaterally "paused" compliance with that order, thereby delaying the prompt and efficient resolution of the Securities Claims; (iii) repeatedly assured this Court that they were in compliance with its ADR Procedures Order without disclosing they had secretly decided to abandon it; and (iv) used the time provided by previous extensions to pursue a class-action procedure that Reorganized Debtors themselves opposed and of which this Court repeatedly disapproved.

*Id.* at 12. The Kingstown Claimants further argued that the Court should order Reorganized Debtors to promptly comply with the ADR Procedures Order, both because "Reorganized Debtors should be judicially estopped from abandoning the ADR Procedures to pursue a 'global' resolution with PERA" and in order to fulfill one of the Bankruptcy Code's primary purposes – the prompt and efficient resolution of claims. *Id.* at 17-18. Several other significant Securities Claimants unaffiliated with the RKS Claimants, including the California State Teachers Retirement System [Dkt. No. 13198], State of Oregon [Dkt. No. 13208], Vanguard-affiliated claimants [Dkt. No. 13244], Dimensional-affilated claimants [Dkt No. 13243], Lord Abbett-affiliated claimants [Dkt. No. 13242], and Chevron-affiliated claimants [Dkt. No. 13165] (collectively, the "**Additional Objectors**") filed objections and/or joinders also objecting to the Fifth Extension Motion.

Prior to the hearing date on the Fifth Extension Motion, the Reorganized Debtors offered to mediate promptly with the RKS Claimants if they agreed to withdraw their objection. (Bodnar Decl. ¶ 4.) Accordingly, RKS Claimants withdrew their objections and scheduled a prompt mediation with Reorganized Debtors. *Id.* ¶ 5. The Additional Objectors, however, did not reach agreement with Reorganized Debtors to withdraw their objections, and the Court held a hearing on the Fifth Extension Motion on November 30, 2022 (the "**Fifth Extension Hearing**").

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

At the Fifth Extension Hearing, the Court noted to Reorganized Debtors' counsel that "[y]ou've confirmed my instincts. My instincts were … the first two years under the claim, or a year and a half under the procedure, you were picking off the low hanging fruit." (Ex. 4 at 43:6-11). The Court also noted surprise that, nearly two years after entry of the ADR Procedures Order, significant claimants who had complied with the procedures had not received offers. (*See id.* at 51:19-22 ("That's why I was surprised to have this happen. I thought things were under control and I thought – I was quite surprised when this opposition surfaced.")).

The Court also discussed the mechanics of the ADR Procedures with counsel for Reorganized Debtors and the Additional Objectors. Counsel for Reorganized Debtors confirmed to the Court that "there are in fact a deadlines [sic] get triggered by the conclusion of the two processes, the offer process and the mediation process, then for the debtors to file objection. So the [ADR Procedures] actually deal specifically with deadlines once the procedures have been put in place and started." (*Id.* at 55:25-56:4). When asked "what is the deadline when the mediation has ended unsuccessfully," counsel for Reorganized Debtors responded, "I think it's sixty days, Your Honor," consistent with Section III.C of the ADR Procedures. (*Id.* at 56:6-13). On December 15, 2022, the Court entered an Order extending the deadline for Reorganized Debtors "to object to Claims under Section 7.1 of the Plan" 180 days to June 20, 2023, and requiring Reorganized Debtors to make settlement offers to the Additional Objectors no later than February 28, 2023. [Dkt. No. 13363].

The RKS Claimants and Reorganized Debtors attended a mediation of the RKS Claimants' claims on January 19, 2023. While the RKS Claimants are precluded from discussing the specifics of the mediation due to the mediation privilege and the ADR Procedures Order, they believe that Reorganized Debtors mediated in bad faith, rendering the mediation's failure a pre-ordained certainty. (Bodnar Decl. ¶ 7.)

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

## ARGUMENT

**I. The Court Should Enforce the ADR Procedures Order and Establish a March 20, 2023 Deadline For Reorganized Debtors to Object to the RKS Claimants' Claims**

The Court should enforce the ADR Procedures Order and, in furtherance of equity and efficiency, should establish a March 20, 2023 deadline for Reorganized Debtors to object to the RKS Claimants' claims. Pursuant to 11 U.S.C. § 105(a) "[t]he [C]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and may, on its own accord, "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules." The ADR Procedures Order provides that "[t]his Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order" [Dkt. No. 10015 at 5].

The RKS Claimants are entitled to an expeditious and efficient resolution of their claims. After waiting years before any effort was made at all, they have exhausted the options available to them under the ADR Procedures and are no closer to resolving their claims now than they were when the ADR Procedures Order was entered two years ago. Indeed, the RKS Claimants are in a far worse position now than they were two years ago, as they have retained independent counsel of their choice and expended resources attempting to comply with the ADR Procedures, only to learn nearly two years into that process that Reorganized Debtors are attempting to strike a deal using a class procedure that has been twice rejected by this Court. Although Reorganized Debtors appear to be highly motivated to negotiate with class counsel, they have demonstrated that they have no intention of negotiating or mediating in good faith with the RKS Claimants. Reorganized Debtors' current course promises only further delay, as it will inevitably seek additional extensions over the months, and perhaps years, during which they attempt to obtain approval to resolve the claims filed against PG&E through a class settlement (leaving aside the time it may take to pay any such claims, in whatever form payment will issue). While there are many meritorious reasons to oppose any such effort, the path forward for the RKS Claimants is clear. The Court should not allow Reorganized Debtors to continue sidestepping the RKS Claimants' claims, but should instead order them to proceed through the claims allowance process in accordance with the ADR

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1  Procedures Order.  Had PG&E complied with the procedures from day one, rather than engaged

2  in a strategy of delay and then cessation in its entirety, this motion could have been avoided.

3       **a.  The ADR Procedures Order Establishes a Sixty-Day Deadline From a Failed Mediation to Object to the Claims Being Mediated**

4

5  The ADR Procedures provide for a deadline of sixty days from the failure of a mediation

6  for Reorganized Debtors to object to claims that were the subject of the failed mediation,.  Counsel

7  for Reorganized Debtors acknowledged as much at the Fifth Extension Hearing.  Section III.C of

8  the ADR Procedures provides:

9       In the event these Securities ADR Procedures have been invoked as
        to a Subordinated Securities Claim but have not resolved the
10      Subordinated Securities Claim, the deadline to object to the
        Subordinated Securities Claim under Section 7.1 of the Plan shall be
11      automatically extended until sixty (60) days after the termination of
        the Securities ADR Procedures.  For the avoidance of doubt, this
12      provision in no way shortens the deadline to object to the
        Subordinated Securities Claims under Section 7.1 of the Plan.

13  [Dkt. No. 10015-1 § III.C].  As counsel for Reorganized Debtors acknowledged at the Fifth

14  Extension Hearing, this deadline runs from "the conclusion of the … mediation process[.]"

15  (Bodnar Decl., Ex. 4 at 55:25-56:2).  In response to the Court's asking "what is that deadline when

16  the mediation has ended unsuccessfully," counsel for Reorganized Debtors answered "I think it is

17  sixty days, Your Honor."  *Id.* at 56:6-8.

18       Here, the situation is the one posited by this Court.  The mediation between the RKS

19  Claimants and Reorganized Debtors "ended unsuccessfully."  The Court should, therefore, enforce

20  the plain language of the ADR Procedures Order and establish a March 20, 2023 deadline – sixty

21  days from the failed mediation – for Reorganized Debtors to object to the RKS Claimants' claims.[5]

22       **b.  Reorganized Debtors Violated the ADR Procedures Order By Mediating in Bad Faith**

23

24  In order to induce the Kingstown Claimants – and joining RKS Claimants – to withdraw

25  their Fifth Extension Objection, Reorganized Debtors offered to mediate promptly with the RKS

26  ───────────────

27  [5] To the extent an ambiguity can possibly be read into the meaning of Section III.C of the ADR
    Procedures, it was and should be resolved by Reorganized Debtors' counsel's representation to
    the Court that Reorganized Debtors have sixty days from a failed mediation to object to claims
28  that were the subject of that mediation.

Claimants. Having agreed to do so, the Reorganized Debtors were obligated to mediate with the RKS Claimants in good faith. RKS Claimants believe they did the opposite. While the RKS Claimants cannot disclose any communications that took place during the brief mediation, the mediation was an utter failure that failed to even qualify as a good faith mediation.

The ADR Procedures requires that "[t]he Subordinated Securities Claimants and the Reorganized Debtors shall negotiate in good faith in an attempt to reach agreement for the settlement of the Subordinated Securities Claims." [Dkt. No. 10015-1 § IV.B]. They further provide that, "[i]f a Subordinate Securities Claimant of the Reorganized Debtors fail to comply with the Securities ADR Procedures, *negotiate in good faith*, or cooperate as may be necessary to effectuate the Securities ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the [ADR] Procedures Order …." (*Id.* § IV.E). Upon such a finding, the Court may "grant such … further remedy as deemed just and appropriate under the circumstances …." (*Id.*) Parties are severely constrained in seeking a determination of bad faith mediation, however, as the ADR Procedures require strict confidentiality, and prevent the mediator from disclosing his views to the Court "unless so-ordered by the Bankruptcy Court, or another court of competent jurisdiction on its own motion, and neither the Reorganized Debtors nor the Subordinated Securities Claimant may seek or request such an order." (*Id.*)

Given the constraints imposed by the ADR Procedures Order, the RKS Claimants do not in this motion seek an order requiring the mediator to provide a report to the Court, as such a report can only be made on the Court's own motion. Nonetheless, the RKS Claimants report their view that Reorganized Debtors' participation in the brief mediation was undertaken in bad faith, and solely to clear an obstacle to obtaining the Fifth Objection Deadline Extension and attempting to strike a deal with class counsel to resolve pending litigation against non-Debtors. (Bodnar Decl. ¶ 7). Regardless of whether the Reorganized Debtors acted in bad faith, it is abundantly clear that mediation has been unsuccessful and Reorganized Debtors should now be forced to move forward with the claims resolution process by objecting to the RKS Claimants' claims. The Court has the ability to fashion a "just and appropriate" remedy for Reorganized Debtors' failure to mediate in

good faith. Forcing Reorganized Debtors to finally confront the substance of those claims, after years of delay culminating in a brief, bad-faith mediation, is an entirely appropriate, and lenient, remedy. It is also the only one consistent with a just, expedient and efficient resolution of their claims.

### c. A March 20, 2023 Objection Deadline is Equitable and Necessary

The Court should order Reorganized Debtors to object to the RKS Claimants' claims no later than March 20, 2023 because, given the extended and unnecessary delay in addressing the RKS Claimants' claims and the failure of the ADR Procedures, such a deadline is both equitable and necessary. As an initial matter, the equities favor imposing this reasonable time constraint on Reorganized Debtors because the RKS Claimants' claims have been sitting idle for years, and will otherwise continue to do so. As the Court explained in approving the ADR Procedures, "the acts complained of by some of the securities claimants happened almost five years ago. The bankruptcy was filed nearly two years ago. Thus, there are prospective claimants, both large and small, who didn't trade their claims and who have waited a very long time." (Bodnar Decl., Ex 3 at 6:21-7:1.) Two *more* years have passed since the Court made this observation, and the RKS Claimants are no closer to resolving their claims (indeed, the earliest misrepresentations in this matter occurred almost eight years ago, and damages began to occur to shareholders nearly six years ago). As this purgatory stretches on, the RKS Claimants – whose damages exceed $2.7 billion in the aggregate – are being forced to bear both credit and market risks, unlike other creditors who have already been paid under the Plan. It is plainly unfair to further deny the RKS Claimants any avenue to resolve their claims for an indeterminate period of months or years.

To the contrary, Reorganized Debtors will not be prejudiced by the RKS Claimants' having their day in court. Reorganized Debtors have the RKS Claimants' trading data and have had ample opportunity to evaluate their claims. After several years of delay, they chose not to engage the RKS Claimants in good faith in mediation. Having received all necessary information, and having chosen not to pursue a negotiated resolution, it is in the interests of all parties involved – including Reorganized Debtors themselves– to fully and finally resolve the RKS Claimants' claims on the

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1  merits.

2  Finally, it is necessary to put the RKS Claimants' claims on a path to resolution in the near

3  term. Reorganized Debtors have informed the Court that they intentionally paused the attempted

4  resolution of filed claims in order to advance an ill-conceived settlement with a class this Court

5  has twice rejected. They are now moving forward with reckless haste to put the finishing touches

6  on such a settlement and scuttle or further seriously delay the claims administration process

7  carefully put in place by this Court. The RKS Claimants anticipate Reorganized Debtors will seek

8  to even further delay their obligations to object to claims as they attempt to seek approval of their

9  class settlement arrangement over the coming months, and perhaps years. But as Reorganized

10 Debtors have previously represented to the Court, the RKS Claimants are not represented by PERA

11 or its counsel, and the RKS Claimants must be provided the opportunity to pursue their own claims

12 as they see fit:

13      This is not a punitive [sic] class action where you have absent
         shareholders. This is a situation very different, and it's a bankruptcy
14      situation where people have actually filed proofs of claim.
         Hundreds if not thousands of them have filed these proofs of claim
15      with their own counsel.

16      And the idea that we are going to displace the judgment of
         individuals who have taken the time to file proofs of claim on their
17      claims – they've said I have a claim, I was injured. The idea that we
         are going to displace their counsel and them and their judgment for
18      PERA's judgment is just not appropriate. Those people very well
         may have different views of their claims, the strengths. They may
19      have different desires in terms of, you know, whether they want to
         settle now, whether they want to fight it out.

20 (Bodnar Decl., Ex. 2 at 44:9-23.)

21      The RKS Claimants have diligently pursued their claims through every avenue available

22 to them. With mediation having failed due to Reorganized Debtors' bad faith, the RKS Claimants

23 must now be given their day in court, regardless of any discussions Reorganized Debtors may be

24 having with class counsel. The Court should order a March 20, 2023 objection deadline as to the

25 RKS Claimants in order to clearly provide a path forward – and to confirm that path will not

26 include indefinite delay as to those parties who are not represented in the class negotiations, and

27 who choose not to settle on the terms agreed upon by class counsel and counsel for Reorganized

28

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Debtors. There is simply no justification for allowing Reorganized Debtors to delay the resolution of these claims any further. Establishing a March 20, 2023 date to object to the RKS Claimants' claims will clarify that the claims will be resolved in an efficient and expeditious manner, and allow the parties to proceed accordingly.

## CONCLUSION

For the foregoing reasons, the RKS Claimants respectfully request that the Court enforce the ADR Procedures Order and order Reorganized Debtors to object to, or allow, the RKS Claimants' claims no later than March 20, 2023.

Dated: February 6, 2023                           ROLNICK KRAMER SADIGHI LLP

By:    /s/ Richard A. Bodnar

*Attorneys for the RKS Claimants*

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020