1   BROWN RUDNICK LLP
    David J. Molton (SBN 262075)
2   (DMolton@brownrudnick.com)
    Seven Times Square
3   New York, New York 10036
    Telephone:      (212) 209-4800
4   Facsimile:      (212) 209-4801

5   BROWN RUDNICK LLP
    Joel S. Miliband (SBN 077438)
6   (JMiliband@brownrudnick.com)
    2211 Michelson Drive, Seventh Floor
7   Irvine, California 92612
    Telephone:      (949) 752-7100
8   Facsimile:      (949) 252-1514

9   *Attorneys for Fire Victim Trustee*

10              UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA
11                 SAN FRANCISCO DIVISION

12

13  In re:                                    Case No. 19-30088 (DM)

14  **PG&E CORPORATION,**                     Chapter 11
                                              (Lead Case)
15            - and –                         (Jointly Administered)

16  **PACIFIC GAS AND ELECTRIC COMPANY,**     **FIRE VICTIM TRUST'S**
    **Debtors.**                              **NOTICE OF FINAL**
17                                            **RESOLUTION OF**
                                              **ASSIGNED CLAIMS**
18  ☐ Affects PG&E Corporation
    ☐ Affects Pacific Gas and Electric Company [Relates to Docket Numbers 12682 and
19  ☑ Affects both Debtors                    12884]

20
    * All papers shall be filed in the Lead Case,
21  No. 19-30088 (DM).

22

23

24

25

26

27

28

TO FIRE VICTIMS AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE that the Fire Victim Trust (the "**Trust**") has settled potential claims (the "**Assigned Claims**") against McKinsey & Company, Inc. United States ("**McKinsey**") that the Trust held as part of the Assigned Rights and Causes of Action transferred to the Trust pursuant to the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020* [Dkt. No. 8048]. A complete copy of the settlement and release agreement dated February 7, 2023 (the "**Settlement Agreement**") is attached hereto as **Exhibit 1** and will be posted on the Fire Victim Trust Website at www.firevictimtrust.com.

The Settlement Agreement provides, inter alia, for McKinsey to remit to the Trust the total lump sum of twenty-five million dollars ($25,000,000.00) (the "**Settlement Amount**") and for mutual releases to be executed by the Trust and McKinsey.

PLEASE TAKE FURTHER NOTICE that an unredacted[1] copy of the engagement letter (the "**McKinsey Claims Engagement Letter**") effective January 1, 2022, between the Trust and Andrews & Thornton, Attorneys at Law, A Law Corporation and Greenberg Gross LLP (together, "**Litigation Counsel**") in connection with the Assigned Claims is attached hereto as **Exhibit 2** and will be posted on the Fire Victim Trust Website at www.firevictimtrust.com. Pursuant to the McKinsey Claims Engagement Letter, Litigation Counsel shall be entitled to attorneys' fees in the form of a contingency fee equal to 20% of the Net Proceeds[2]. The Trust is currently performing an accounting to determine its costs, expenses, and attorneys' fees incurred in connection with the Assigned Claims. The Trust will file a supplemental notice disclosing the amounts of such costs, expenses, and attorneys' fees and disclosing the net benefit received by the Trust as a result of the Settlement Agreement.

/ / /

---

[1] The contact address for the Authorized Agent, which is a personal address, has been redacted from the McKinsey Claims Engagement Letter in accordance with the *Order Granting Ex Parte Motion Of The Fire Victim Trustee To Redact Personal Address From Engagement Letter To Be Filed With Court* [Dkt. No. 12980]. No other terms or provisions in the McKinsey Claims Engagement Letter are redacted.

[2] As defined in the McKinsey Claims Engagement Letter.

2

DATED: February 10, 2023                    BROWN RUDNICK LLP


By: */s/David J. Molton*
    David J. Molton (SBN 262075)
    (DMolton@brownrudnick.com)
    Seven Times Square
    New York, New York 10036
    Telephone:    (212) 209-4800
    Facsimile:    (212) 209-4801

    and

    Joel S. Miliband (SBN 077438)
    (JMiliband@brownrudnick.com)
    2211 Michelson Drive
    Seventh Floor
    Irvine, California 92612
    Telephone:    (949) 752-7100
    Facsimile:    (949) 252-1514

    *Attorneys for Fire Victim Trustee*

1

## **EXHIBIT 1**

2                                    SETTLEMENT AGREEMENT

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into by and among Cathy Yanni (the "Trustee"), in her capacity as the Trustee of, and acting on behalf of, the PG&E Fire Victim Trust (the "FVT"); and McKinsey & Company, Inc. United States ("McKinsey"). The Trustee and McKinsey are referred to herein collectively as the "Parties."

## Recitals

A.       On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company (together, "PG&E" or "Debtors") filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Proceeding"), Hon. Dennis Montali presiding (the "Bankruptcy Court").

B.       On June 20, 2020, the Bankruptcy Court entered the Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 (such plan of reorganization, the "Plan"), and the Plan became effective on July 1, 2020.

C.       The FVT was established by the Plan to, among other things, administer, process, settle, resolve, satisfy, and pay certain claims arising out of the 2015 Butte Fire, the 2017 North Bay Fires, and the 2018 Camp Fire, and prosecute or settle the Assigned Rights and Causes of Action (as defined in section 1.8 of the Plan).

D.       As part of the Assigned Rights and Causes of Action, the Plan provided for PG&E's assignment to the FVT of "any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the Fires that the Debtors may have against . . . consultants."

E.       The Parties mediated before the Hon. Jay C. Gandhi (Ret.), including two in-person sessions on September 9, 2022 and December 7, 2022.

F.       The FVT conducted extensive research and investigation of the facts and law prior to these mediations to assess the strengths and weaknesses of potential claims against McKinsey. In conducting this analysis, the FVT had access to and considered, among other things, (1) the work of the Butte County District Attorney's office, which took testimony from nearly 100 witnesses, reviewed approximately 1,600 exhibits, and gathered extensive other documentary evidence, (2) evidence available from PG&E's federal probation proceedings about the Butte Fire, the North Bay Fires, and the Camp Fire, (3) evidence available from PG&E regulatory proceedings, including regulatory investigations relating to the Butte Fire, the North Bay Fires, and the Camp Fire, (4) evidence available from CAL FIRE and other investigators relating to the Butte Fire, the North Bay Fires, and the Camp Fire, (5) documentary and testimonial evidence obtained from PG&E in connection with pre-bankruptcy litigation relating to the Butte Fire, the North Bay Fires, and the Camp Fire, (6) evidence obtained from PG&E during the bankruptcy proceedings, and (7) materials obtained by the FVT or its predecessor via discovery in the bankruptcy proceedings, including from and about vendors and consultants of PG&E.

G.       After evaluating the evidence, the FVT found no evidence of a causal connection between McKinsey's work and the Butte Fire or North Bay Fires. The FVT determined that it

might possess potential claims against McKinsey arising from the Camp Fire based on McKinsey's contracts with PG&E and work pursuant to those contracts via the Assigned Rights and Causes of Action from PG&E to the FVT, but that McKinsey possesses numerous factual and legal defenses to any such claims.

H.      The Parties recognize that litigation over the Assigned Rights and Causes of Action could take several years to resolve, excluding appeals and the potential for retrials. The Parties further agree that, in the event litigation proceeded beyond a motion to dismiss/demurrer, fees and costs for discovery and trial likely would exceed tens of millions of dollars for each side, excluding appeals and the potential for retrials. Litigation would mean potentially no recovery for fire victims and a diminution of the corpus of the Trust by funding Litigation, and any recovery would be delayed by years and diminished by significant fees and costs.

I.      McKinsey disputes and denies that it has any responsibility or liability for the Assigned Rights and Causes of Action, and more broadly rejects any allegation that it is responsible for the fires at issue.

J.      The FVT recognizes McKinsey for its swift and good faith resolution of this matter, which will avoid the significant time and costs of protracted litigation for all concerned, including the fire victims and their families.

K.      In light of the likely substantial costs and uncertainties of litigation, and the foregoing recitals, which form a material part of this Agreement, the Parties have agreed to fully and finally settle and resolve all disputes that exist or may exist between them related to the Assigned Rights and Causes of Action, the Fires (as defined in section 1.86 of the Plan), and any Fire Claims (as defined in section 1.78 of the Plan), and thereby dispose of all claims that have been or could have been raised on the terms and conditions set forth herein.

## Agreement

In consideration of the mutual compromises, covenants, and agreements set forth herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, and subject to the terms and conditions set forth below, the Parties desire to, and hereby do, resolve their differences related to the Assigned Rights and Causes of Action and agree as follows:

### 1.      Settlement Amount

In consideration of the agreements and obligations contained in this Agreement, including the complete settlement of all disputes that exist or may exist between the Parties related to the Assigned Rights and Causes of Action, the Fires, and any Fire Claims, and the full and complete mutual release of the dispute and any and all Released FVT Claims and Released McKinsey Claims as set forth in Paragraph 3 below, McKinsey will cause to be paid the total lump sum of twenty-five million dollars ($25,000,000.00) (the "Settlement Amount") within sixty (60) days of the Effective Date (defined below), with the Settlement Amount to be paid to the FVT subject to the terms herein.

Case: 19-30088    Doc# 13502    Filed: 02/10/23    Entered: 02/10/23 13:22:52    Page 6

## 2. Effective Date

The Effective Date of this Agreement shall be the date on which full execution of this Agreement by the Parties occurs.

## 3. Release of Claims

"Released FVT Claims" means any and all rights, claims, causes of action, or theories of recovery held at any point from the beginning of time to the Effective Date of the Agreement which have been or could have been alleged or asserted by any FVT Releasing Party (defined below) against any McKinsey Released Party (defined below), including, but not limited to, both known claims and Unknown FVT Claims (defined below), claims related to the Assigned Rights and Causes of Action, the Fires, and any Fire Claim, including but not limited to any such claim based on contract, law or equity, including indemnity or contribution, and any and all other rights, claims, causes of action, or theories of recovery PG&E assigned to the FVT under the Plan or that the FVT or the Trustee has or may have against any McKinsey Released Party.

"Released McKinsey Claims" means any and all rights, claims, causes of action, or theories of recovery held at any point from the beginning of time to the Effective Date of the Agreement which have been or could have been alleged or asserted by any McKinsey Releasing Party (defined below) against any FVT Released Party (defined below), including, but not limited to, both known claims and Unknown McKinsey Claims (defined below), claims related to the Assigned Rights and Causes of Action, the Fires, and any Fire Claim, including but not limited to any such claim based on contract, law or equity, including indemnity or contribution, and any and all other rights, claims, causes of action, or theories of recovery of McKinsey that McKinsey has or may have against the FVT or the Trustee under the Plan.

    a.    "FVT Releasing Party" means: the FVT, the Trustee, and any other person or entity purporting to act on behalf of the FVT or the Trustee.

    b.    "McKinsey Releasing Party" means: McKinsey and any of its current, former, and future parents, subsidiaries, predecessors, successors, affiliated companies, and corporations, and any person or entity purporting to act on behalf of McKinsey.

    c.    "McKinsey Released Party" means: McKinsey and any of its current, former, and future parents, subsidiaries, predecessors, successors, affiliated companies, and corporations, and any of its current, former, and future officers, directors, managers, employees, associates, consultants, general or limited partners, principals, shareholders, insurers, co-insurers, and reinsurers – in their capacity as liability insurers of McKinsey & Company, Inc. United States – attorneys, advisors, representatives, agents, or assigns.

    d.    "FVT Released Party" means: the FVT, the Trustee, and their counsel of record.

e.  "Unknown FVT Claims" means any and all claims related to the Assigned Rights and Causes of Action, Fires, and any Fire Claim, including but not limited to any such claim based on contract, law or equity, including indemnity or contribution, and any and all other rights, claims, causes of action, or theories of recovery assigned by PG&E to the FVT, or that the FVT or the Trustee has or may have against any McKinsey Released Party, which were alleged or could have been alleged against McKinsey or any McKinsey Released Party by the FVT, including, but not limited to, claims which the FVT Releasing Party does not know or suspect to exist in its favor at the time of the release of the McKinsey Released Party, including, but not limited to, claims which, if known by the FVT Releasing Party, might have affected the FVT and the Trustee's decision to settle, to settle on the terms of the Agreement, and to release the McKinsey Released Party, as well as claims addressed in Section 5 of this Agreement.

f.  "Unknown McKinsey Claims" means any and all claims related to the Assigned Rights and Causes of Action, Fires, and any Fire Claim, including but not limited to any such claim based on contract, law or equity, including indemnity or contribution, and any and all other rights, claims, causes of action, or theory of recovery of McKinsey that McKinsey has or may have against the FVT or the Trustee under the Plan and any and all other rights, claims, causes of action, or theories of recovery which were alleged or could have been alleged against the FVT or any FVT Released Party by McKinsey, including, but not limited to, claims which the McKinsey Releasing Party does not know or suspect to exist in its favor at the time of the release of the FVT Released Party, including, but not limited to, claims which, if known by the McKinsey Releasing Party, might have affected McKinsey's decision to settle, to settle on the terms of the Agreement, and to release the FVT Released Party, as well as claims addressed in Section 5 of this Agreement.

g.  Under no circumstances will the FVT, the Trustee, or any FVT Releasing Party be permitted to seek, recover, recoup, assess, claim, or receive—directly or indirectly—any distribution or payment of additional monies or relief from McKinsey or any McKinsey Released Party for Released FVT Claims. Among other things, the Settlement Amount shall fully satisfy any and all claims by or on behalf of each FVT Releasing Party for fees, costs, and expenses of any kind that an FVT Releasing Party has asserted or could have asserted against any McKinsey Released Party, including, but not limited to, fees, costs, and expenses arising out of or related to the Assigned Rights and Causes of Action, the mediations, the negotiation and execution of a term sheet, the negotiation and

4

execution of the Agreement, and any steps needed to execute and implement the Agreement (subject to reasonable fees and expenses recoverable consistent with the indemnity granted to the FVT and the Trustee by McKinsey under this Agreement pursuant to Section 7).

h.  Under no circumstances will McKinsey or any McKinsey Releasing Party be permitted to seek additional monies or relief from the FVT or the Trustee or any FVT Released Party for Released McKinsey Claims. For the avoidance of doubt, nothing in this Agreement shall prohibit McKinsey from taking actions contemplated under Section 7 herein, *provided however*, that under no circumstances will McKinsey or any McKinsey Releasing Party be permitted to, directly or indirectly, seek, recover, recoup, assess, claim, or receive any distribution or payment from the FVT or the Trustee on account of the Released McKinsey Claims, including for attorneys' fees and litigation costs associated with the Released McKinsey Claims.

i.  Under no circumstances will the FVT, the Trustee, or any other FVT Releasing Party allege, pursue relief, or assert liability against any other person or entity on the theory that such person or entity aided and abetted, conspired with, is jointly and severally liable under any other legal or equitable theory with, or otherwise can be held financially responsible for any conduct by McKinsey or any McKinsey Released Party; the FVT and the Trustee, on behalf of themselves and any FVT Releasing Party, hereby disclaim and release any such potential right. In the event a person or entity attempts to assert or asserts cross-claims or otherwise seeks to join or joins McKinsey or any other McKinsey Released Party in litigation or other proceedings instituted by any FVT Releasing Party, the FVT and Trustee shall expressly disclaim in a binding stipulation that the FVT and Trustee do not seek relief against any such person or entity to the extent McKinsey or any McKinsey Released Party could or otherwise would be liable but for this Agreement.

### 4.  No Assignment of Released Claims

The FVT and the Trustee represent and warrant that there has been, and will be, no assignment or other transfer of any interest in any Released FVT Claims which they may have against any McKinsey Released Party. If, contrary to this representation and warranty, the FVT and the Trustee assign or have assigned such rights to any other person or entity, or lack the authority to grant a full and final release of the Released FVT Claims, the FVT and the Trustee will defend, indemnify, and hold harmless any McKinsey Released Party with respect to any action or claim brought by any assignee of any interest assigned contrary to this representation and warranty or based on any right that the FVT and the Trustee represented and warranted that they had the authority to fully and finally release.

Case: 19-30088    Doc# 13502    Filed: 02/10/23    Entered: 02/10/23 13:22:52    Page 9

McKinsey represents and warrants that there has been, and will be, no assignment or other transfer of any interest in any Released McKinsey Claims which it may have against any FVT Released Party. If, contrary to this representation and warranty, McKinsey assigns or has assigned such rights to any other person or entity, or lacks the authority to grant a full and final release of the Released McKinsey Claims, McKinsey will defend, indemnify, and hold harmless any FVT Released Party with respect to any action or claim brought by any assignee of any interest assigned contrary to this representation and warranty or based on any right that McKinsey represented and warranted that it had the authority to fully and finally release. For the avoidance of doubt, McKinsey's rights to pursue claims (whether by Proof of Claim or otherwise) against PG&E for recovery against PG&E are preserved. The foregoing proviso and preservation of rights shall in no way limit the releases and protective provisions contained in this Agreement.

5. **Waiver of California Civil Code Section 1542**

   a. With respect to the Released FVT Claims, the Parties agree that, upon the FVT's receipt of the Settlement Amount, the FVT Releasing Party shall waive the provisions, rights, and benefits of California Civil Code section 1542 (or any analogue of or counterpart to section 1542 under any state or federal law);

   b. With respect to the Released McKinsey Claims, the Parties agree that, upon the FVT's receipt of the Settlement Amount, the McKinsey Releasing Party shall waive the provisions, rights, and benefits of California Civil Code section 1542 (or any analogue of or counterpart to section 1542 under any state or federal law);

   c. California Civil Code section 1542 reads as follows:

   **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

   d. Each FVT Releasing Party acknowledges that it may discover facts in addition to or different from those now known or believed to be true by them with respect to the Released FVT Claims, but it is the intention of the Parties to completely, fully, finally, and forever compromise, settle, release, and extinguish any and all of the Released FVT Claims known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

e.      Each McKinsey Releasing Party acknowledges that it may discover facts in addition to or different from those now known or believed to be true by them with respect to the Released McKinsey Claims, but it is the intention of the Parties to completely, fully, finally, and forever compromise, settle, release, and extinguish any and all of the Released McKinsey Claims known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

## 6.      Disclosure/Confidentiality

a.      The Parties agree that this Agreement is inadmissible (other than to enforce its terms notwithstanding any provisions of California Evidence Code §§ 1152, 1154, which may be enforced by a motion under California Code of Civil Procedure § 664.6 or by any other procedure permitted by law in the applicable state or federal court) under California and federal law as part of an offer to compromise.

b.      This Agreement and its terms shall remain confidential until disclosed to the public. In the event the FVT determines it is in the best interest of its beneficiaries, the FVT may seek to maintain the fact and/or terms of this Agreement as confidential consistent with the Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust (Docket No. 12682) (the "Disclosure Order"). During the period when the Agreement or certain terms are confidential, the Parties can disclose the Agreement and such terms, in confidence, to their accountants, lawyers, or insurers, to regulators, to PG&E, or in accordance with a court order.

c.      McKinsey shall have consent rights, not to be unreasonably withheld, over the content of all public communications by the FVT and the Trustee regarding this settlement and Agreement, except that the FVT and the Trustee shall disclose this Agreement and terms and conditions thereof in the manner required by and consistent with the Disclosure Order, understanding that such disclosure will be modeled after the last such submission and must comply with the Disclosure Order. The FVT, the Trustee, or any other Releasing Party and their counsel shall not disparage McKinsey.

## 7.      Indemnification in the event of litigation between FVT and PG&E

In the event McKinsey's pursuit of claims (whether by Proof of Claim or otherwise) against PG&E results in court proceedings relating to this Agreement (including the claims settled hereby) in which the FVT is named as a party, interested party, or the subject of a motion or other request for relief, then McKinsey will indemnify FVT for reasonable attorney's fees, costs, or other expenses (collectively, "Court Costs") incurred in connection with participating in such court proceedings subject to a cap of $175,000.00. The FVT shall notify McKinsey prior to incurring any such Court Costs.

### 8. **Duty of Cooperation**

The Parties shall at all times fully cooperate with each other and shall cause their respective agents and attorneys to cooperate in a prompt and timely manner in connection with the performance of all obligations under this Agreement.

### 9. **Restoration of Rights**

In the event that this Agreement becomes void, the Parties agree that this Agreement, including all of its terms, as well as any facts and circumstances surrounding the drafting or negotiations of this Agreement, shall not be used in connection with any court proceeding, litigation, dispute, or otherwise.

### 10. **No Admissions of Wrongdoing or Liability**

Notwithstanding anything contained herein, this Agreement shall not be construed as an admission by McKinsey or any other McKinsey Released Party of any liability whatsoever or any violation of any order, law, statute, duty, or contract whatsoever. It is also expressly agreed and acknowledged that neither the negotiation, execution, nor performance of any of the terms of this Agreement shall constitute or be construed as an admission by McKinsey or any other McKinsey Released Party of any liability or any fact or indication that any of the claims or charges alleged against McKinsey has any merit. The FVT has not determined that McKinsey or any other McKinsey Released Party engaged in any improper conduct in connection with any work for PG&E or any California wildfire, including but not limited to the Camp Fire, and McKinsey disputes and denies any wrongdoing whatsoever. The FVT and Trustee agree that neither they nor their representative(s) shall make any representation, statement, or proffer of evidence or argument to any court, tribunal, or third party intentionally suggesting that this settlement and Agreement constitute any such admission.

### 11. **Joint Drafting**

The language of this Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly for or against any Party. In the event of a dispute about the interpretation of this Agreement, it shall be deemed to have been drafted by all Parties to this Agreement with the benefit of advice from independent counsel, and no Party or attorney for any Party shall urge otherwise, such as by arguing for an interpretation of an allegedly ambiguous term under the doctrine of *contra proferentem*.

### 12. **Acknowledgement of Legal Advice**

The Parties agree, acknowledge, represent, and warrant that each of them enters into this Agreement upon the independent legal advice of his, her, or its attorneys, and that each of them has read, fully understands, and voluntarily accepts the terms and provisions of this Agreement.

13. **Headings**

The Parties understand, agree, and acknowledge that all headings in this Agreement are for convenience of reference only and do not create any separate legal rights in and of themselves.

14. **Costs and Attorneys' Fees**

Except as provided in Section 7, (a) the Parties shall each be responsible for their own attorneys' fees, costs, and expenses incurred by them in connection with the mediations and settlement, including the preparation, negotiation, drafting, execution, and implementation of this Agreement, and (b) each of the FVT, the Trustee, and McKinsey waives any and all claims against any other Party.

15. **Inurement**

The Parties agree that this Agreement shall inure to the benefit of, and be binding upon, each of the Parties and their respective parents, subsidiaries, affiliates, predecessors, successors and assigns, and the agents and other authorized representatives, beneficiaries, trustees, shareholders, officers, directors, employees, insurers, heirs, executors, partners, and joint venturers of any of the foregoing.

16. **Amendment**

No amendment, modification, or addition to this Agreement shall be valid unless it is in a writing executed by the Parties.

17. **Governing Law**

This Agreement shall be governed by and construed under the laws of the State of California, without regard to any principles of conflicts of laws.

18. **No Waiver**

No delay or failure by any Party to exercise its rights under this Agreement shall be construed to be a waiver thereof, unless memorialized by written instrument signed by the Parties. The agreed waiver of any covenant, condition, or agreement to be performed under this Agreement shall not be construed to be a continuing waiver of the same covenant, condition, or agreement, or the waiver of a different covenant, condition, or agreement. Furthermore, the agreed waiver of any breach of this Agreement shall not be considered to be the agreed waiver of a different or subsequent breach.

19.   **Integration**

This Agreement constitutes the entire agreement between the Parties, and supersedes any and all prior or contemporaneous agreements, promises, representations, or understandings, written or oral, between them relating to the subject matter of this Agreement. Each Party represents that it has not relied on any representation not included in this Agreement, and that there are no other agreements, promises, representations, warranties, or understandings that shall be binding upon the Parties with respect to this subject matter unless contained in this Agreement. Each FVT Releasing Party and each McKinsey Releasing Party expressly agrees that this Agreement will remain valid and effective even if the facts they now believe to be true are later discovered to be false or different than what they now believe, and expressly assume the risk of any such difference.

20.   **Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same Agreement. For purposes of execution, facsimile signatures and signature pages sent through electronic mail shall be considered effective and binding.

21.   **Authority**

Any individual signing this Agreement on behalf of any Party represents and warrants that he or she has full authority to do so.

22.   **Dispute Resolution**

Any dispute, claim, or controversy arising out of our relating to this settlement and Agreement or the breach, termination, enforcement, interpretation, or validity thereof, shall be resolved by confidential mediation before the Hon. Jay C. Gandhi (Ret.). In the event the Parties cannot resolve any such dispute via mediation, the Parties agree to submit the matter to binding confidential arbitration before the Hon. Jay C. Gandhi (Ret.) to be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures in place at the time any such arbitration is demanded.

### EXECUTION

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the dates listed below.

Dated: February 7, 2023            By: _____

Viggo Boserup, Trust Representative,
PG&E Fire Victim Trust

10

*Execution Version*

Dated: February 7, 2023          By: _____
                                      Jonathan Slonim
                                      Stephanie Weathers-Lowin
                                      McKinsey & Company, Inc. United
                                      States

**APPROVED AS TO FORM AND AGREED AS TO SECTIONS 6, 8, 10, 11, 12, 14, 17, 18, 19, 20, 21, 22.**

Dated: February 7, 2023          By: _____
                                      Alan A. Greenberg
                                      Wayne Gross
                                      Greenberg Gross LLP
                                      Counsel for Cathy Yanni, Trustee of the
                                      PG&E Fire Victim Trust

Dated: February 7, 2023          By: _____
                                      Douglas A. Axel
                                      Sean A. Commons
                                      Celia H. Spalding
                                      Sidley Austin LLP
                                      Counsel for McKinsey & Company, Inc.
                                      United States

11

Dated: February 7, 2023                    By: _____
                                               Jonathan Slonim
                                               Stephanie Weathers-Lowin
                                               McKinsey & Company, Inc. United
                                               States

**APPROVED AS TO FORM AND AGREED AS TO SECTIONS 6, 8, 10, 11, 12, 14, 17, 18, 19, 20, 21, 22.**

Dated: February 7, 2023                    By: _____
                                               Alan A. Greenberg
                                               Wayne Gross
                                               Greenberg Gross LLP
                                               Counsel for Cathy Yanni, Trustee of the
                                               PG&E Fire Victim Trust

Dated: February 7, 2023                    By: _____
                                               Douglas A. Axel
                                               Sean A. Commons
                                               Celia H. Spalding
                                               Sidley Austin LLP
                                               Counsel for McKinsey & Company, Inc.
                                               United States

11

1

## **<u>EXHIBIT 2</u>**

2            MCKINSEY CLAIMS ENGAGEMENT LETTER

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

January 1, 2022

Hon. John K. Trotter, Jr. (Ret.)
Trustee of the PG&E Fire Victim Trust
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:  Representation of PG&E Fire Victim Trust in Litigation of Claims Against McKinsey

Dear Justice Trotter:

This letter of engagement ("**Engagement Letter**") is to confirm the retention of Andrews & Thornton, Attorneys at Law, A Law Corporation and Greenberg Gross LLP (each a "**Firm**" and collectively, the "**Firms**") by the PG&E Fire Victim Trust (the "**Trust**") in connection with the McKinsey Claims, defined below.  This Engagement Letter shall be effective as of January 1, 2022 (the "**Effective Date**").  As set forth below, the Firms shall be compensated for their services pursuant to a contingency fee arrangement.

1.  **DEFINITIONS.**  As used herein, the following terms shall have the meanings set forth below:

(a)  "**Authorized Agent**" shall mean a person designated by the Trustee, in writing, as specifically authorized to act for the Trust in regard to the Representation and whose authorization has not been terminated by the Trustee.  This Engagement Letter constitutes the designation of Patrick Kelly as an Authorized Agent of the Trust.

(b)  "**Calculation Date**" shall mean (a) such date, if any, on which a Receipt of Proceeds Date occurs, and/or (b) such date, if any, on which the Trust determines that some or all of any previously estimated Unresolved Indemnity Sums are no longer Unresolved Indemnity Sums and will not become Outstanding Fixed Indemnity Sums.  For the avoidance of doubt, there may be more than one Calculation Date.

(c)  "**Claims**" shall mean the "Assigned Rights and Causes of Action," as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.

(d)  "**Contingency Fee**" shall have the meaning ascribed thereto in Section 3(a).

(e)  "**Federal Settlement**" shall mean the USD $117,000,000 to be paid, pursuant to that certain April 21, 2020 settlement agreement, to the United States Department of Justice from recoveries on the "Assignment Rights and Causes of Action" as defined in PG&E's Joint Chapter 11 Plan of Reorganization dated June 19, 2020.

(f)  "**Firms' Agents**" shall mean Anne Andrews for Andrews & Thornton, Attorneys at Law, A Law Corporation and Alan A. Greenberg for Greenberg Gross LLP, unless a Firm notifies the Trust in writing of the appointment of a different Firm's Agent.

(g)  "**Judgment**" shall mean a final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, resolving one or more of the McKinsey Claims.

(h)  "**McKinsey**" shall mean McKinsey & Company Inc. and/or its affiliates.

(i) "**McKinsey Claims**" shall mean any Claims pursued by the Trust against McKinsey.

(j) "**Net Proceeds**" shall mean, as of a Calculation Date, Proceeds from the prosecution of the McKinsey Claims, net of Outstanding Fixed Indemnity Sums, Unresolved Indemnity Sums, and Outstanding Costs and Expenses.

(k) "**New Engagement Letters**" shall mean, collectively, those certain engagement letters between the Firms and the Trust effective as of January 1, 2022, consisting of (i) this Engagement Letter, (ii) that certain engagement letter with respect to claims against PricewaterhouseCoopers LLP and/or its affiliates, (iii) that certain engagement letter with respect to claims against Accenture LLP and/or its affiliates, (iv) that certain engagement letter with respect to claims against KPMG LLP and/or its affiliates, and (v) that certain engagement letter with respect to claims against Oliver Wyman, Inc. and/or its affiliates.

(l) "**Outstanding Costs and Expenses**" means all costs and expenses (including, without limitation, Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, Special Counsel Costs, and General Costs) approved by the Trustee and actually incurred by the Trust in the prosecution of the McKinsey Claims (whether such costs and expenses are incurred and paid in the first instance by the Trust, incurred and paid by the Firms and then reimbursed by the Trust, advanced by the Firms and approved by the Trustee for recovery, or advanced by the Firms and paid out of Proceeds), that have not previously been subtracted from any Proceeds that formed the basis for the calculation of any Contingency Fee.

(m) "**Outstanding Fixed Indemnity Sums**" means, as of any Calculation Date, the total sum of any amounts, costs, fees, or judgments, determined, by fully executed settlement agreement, final and non-appealable judgment, final and non-appealable award, or final and non-appealable order, due and owing by the Trust under claims for indemnities, contributions, liens, recoupments, setoffs, offsets, or any similar or related theory, whether or not based on contract, asserted by McKinsey (including by any of McKinsey's insurers or any payor of Proceeds) or PG&E in connection with the McKinsey Claims, that have not previously been subtracted from any Proceeds that formed the basis for the calculation of any Contingency Fee.

(n) "**PG&E**" means PG&E Corporation and/or Pacific Gas and Electric Company, including reorganized PG&E Corporation and/or reorganized Pacific Gas and Electric Company.

(o) "**Prior Engagement Letter**" shall mean that certain December 18, 2020 engagement letter between the Firms and the Trust with respect to claims pursued against business management consultants.

(p) "**Proceeds**" shall mean a dollar amount that is actually paid to the Trust pursuant to any Settlement or Judgment with respect to the McKinsey Claims, so long as such dollar amount has not previously formed the basis for the calculation of any Contingency Fee.

(q) "**Receipt of Proceeds Date**" shall mean the date on which Proceeds which the Trust is due under any Settlement or Judgment generating such Proceeds are received by the Trust or, if Proceeds are received for the benefit of the Trust by the Firms or by a third party, the date on which Proceeds under any Settlement or Judgment generating such Proceeds are received by the Firms or such third party. For the avoidance of doubt, there may be more than one Receipt of Proceeds Date, if any.

(r) "**Representation**" shall mean the legal representation by the Firms of the Trust with respect to the McKinsey Claims. For the sake of clarity, the Representation does not include the legal representation by the Firms of the Trust with respect to (i) claims against any business

management consulting firms other than McKinsey, (ii) claims against any entities principally engaged in vegetation management consulting, or (iii) any other claims.

(s)    "**Settlement**" shall mean a fully executed settlement agreement between the Trust and McKinsey with respect to the McKinsey Claims.

(t)    "**Trustee**" shall mean the trustee of the Trust.

(u)    "**Unresolved Indemnity Claims**" means, as of any Calculation Date, any disputed, undetermined, unliquidated, or pending claims for indemnities, contributions, liens, recoupments, setoffs, offsets, or any similar or related theory, whether or not based on contract, asserted or assertable by McKinsey (including by any of McKinsey's insurers or any payor of Proceeds) or PG&E against the Trust in connection with the McKinsey Claims. For the avoidance of doubt, indemnity claims will be deemed resolved if, at the time a Settlement is executed, or funds are collected pursuant to a Judgment, such Settlement or Judgment conclusively resolves all indemnity claims that have been or may be asserted by McKinsey (including by any of McKinsey's insurers or any payor of Proceeds) or PG&E.

(v)    "**Unresolved Indemnity Sums**" means, as of any Calculation Date, the estimated total sum of any potential amounts, costs, fees, or judgments, potentially due and owing under any Unresolved Indemnity Claims, as reasonably determined by the Trust.

2.    **REQUIRED APPROVALS; COMMUNICATIONS WITH TRUST; COSTS.**

(a)    Prior to commencing any court proceeding as contemplated by the Representation, the Firms will provide the Trust and the Authorized Agent with a draft complaint. The Firms shall not file or serve any initiating complaint or enforce any judgment in connection with the McKinsey Claims without the prior written approval of the Trustee or the Authorized Agent. All such decisions to file or serve complaints or enforce any judgments (including the timing of any of the foregoing actions) are expressly and completely in the Trustee's sole discretion; in making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations. The Trust will pay or advance all court fees including jury fees incurred or reasonably expected to be incurred in connection with those court proceedings that are approved in advance by the Trustee or the Authorized Agent ("**Court Fees**"). Notwithstanding the foregoing, not later than June 1, 2022, the Firms shall provide the Trust and the Authorized Agent with a written recommendation with respect to whether the Trustee should authorize the filing of an initiating complaint prior to July 1, 2022.

(b)    The Firms shall not commence negotiations with McKinsey, make any demand for payment from McKinsey, or enter into any settlements in connection with the McKinsey Claims without the prior written approval of the Trustee or the Authorized Agent. All such decisions to commence negotiations, demand payments, or enter into settlements (including the timing of any of the foregoing actions) are expressly and completely in the Trustee's sole discretion; in making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations. Notwithstanding the foregoing, the date on which the Trust shall authorize the Firms to commence negotiations with McKinsey shall occur within 60 days from the Effective Date.

(c)    The Firms agree to keep the Trust, the Trustee, and the Authorized Agent reasonably informed on a timely basis as to the progress and cost of the services being performed in furtherance of the Representation and shall, upon request, provide written or oral responses to inquiries of the Trust, the Trustee, or the Authorized Agent regarding the Representation. The Firms agree to participate in a telephone conference with the Authorized Agent and the Trust on the first Friday of each month. The Firms shall, by the close of business on the day prior to such

3

monthly telephone conference, provide to the Authorized Agent and the Trust a written report with respect to the progress of the Representation and the activities conducted in the month preceding such telephone conference. Additionally, the Firms agree to comply with further reasonable reporting requirements that may be developed by the Trustee or the Authorized Agent.

(d)    The Firms shall not retain or engage the services of any court reporters ("**Court Reporters**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Court Reporters ("**Court Reporter Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Court Reporters or seek reimbursement for any Court Reporter Costs except as approved by the Trustee as provided in this Section 2(d).

(e)    The Firms shall not retain or engage the services of any electronic discovery platforms, data storage, databases, consultants, or other similar vendors and service providers ("**Discovery Services**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Discovery Services ("**Discovery Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Discovery Services or seek reimbursement for any Discovery Costs except as approved by the Trustee as provided in this Section 2(e).

(f)    The Firms shall not retain or engage any third-party investigators or other experts ("**Experts**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Experts ("**Expert Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Experts or seek reimbursement for costs incurred in connection with the retention or engagement of any Experts except as approved by the Trustee as provided in this Section 2(f).

(g)    The Firms shall not retain or engage any mediators, neutrals, or any other dispute resolution professionals ("**Mediators**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Mediators ("**Mediator Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Mediators or seek reimbursement for costs incurred in connection with the retention or engagement of any Mediators except as approved by the Trustee as provided in this Section 2(g).

(h)    The Firms shall not retain or engage any third-party bankruptcy or insurance counsel ("**Special Counsel**") without the prior written consent of the Trustee or the Authorized Agent. The Trust will pay or advance all costs incurred or reasonably expected to be incurred in connection with the authorized retention or engagement of any Special Counsel ("**Special Counsel Costs**"). Notwithstanding anything to the contrary herein, in no case shall the Firms be entitled to retain or engage any Special Counsel or seek reimbursement for any Special Counsel Costs except as approved by the Trustee as provided in this Section 2(h).

(i)    Prior to engaging any Court Reporters, Discovery Services, Experts, Mediators, or Special Counsel in connection with the Representation, the Firms shall provide to the Trustee or the Authorized Agent in writing the proposed service provider's curriculum vitae (as applicable), the proposed hourly rate (or other fee arrangement), and a projected budget for the engagement including an estimate of the total number of hours projected to be expended by such professional or service provider. The Trustee shall have sole and absolute authority over the approval and

4

selection of any Court Reporters, Discovery Services, Experts, Mediators, and Special Counsel. In making such decisions, the Trustee shall consult with the Firms and give significant weight to their recommendations.

(j)     Invoices for Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, and Special Counsel Costs incurred in accordance with this Engagement Letter shall be remitted to the Trust on a monthly basis at accounting@firevictimtrust.com, with detailed documentation to support the amounts set forth thereon. All costs, expenses, and fees are (i) subject to the Trustee's review and approval prior to being paid, as provided in Section 2(m), and (ii) subject to dispute by the Trustee, as provided in Section 4(b).

(k)     All reasonable costs and expenses incurred by the Firms after the Effective Date in connection with the Representation *other than* Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, and Special Counsel Costs ("**General Costs**") shall be advanced by the Firms and shall be recovered by the Firms only from the corpus of any Proceeds; *provided, however*, that notwithstanding anything to the contrary herein, the Firms shall not incur or commit to incur any General Costs in connection with the Representation in an amount in excess of, or reasonably expected to be in excess of, USD $5,000 per item, and/or USD $25,000 in the aggregate, without the prior written approval of the Trustee or the Authorized Agent. The Firms shall not submit as General Costs any amount(s) that would represent a duplication of any Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, or Special Counsel Costs. General Costs shall include, without limitation, travel expenses, trial preparation costs, legal research costs including Lexis and Westlaw, photocopying charges, and long-distance telephone charges. General Costs shall not include any amounts constituting the Firms' "overhead" as determined by the Trustee in his reasonable discretion. The Firms shall remit a statement of General Costs to the Trust on a monthly basis at accounting@firevictimtrust.com, with detailed documentation to support the amounts set forth thereon. All costs, expenses, and fees are (i) subject to the Trustee's review and approval prior to being paid, as provided in Section 2(m), and (ii) subject to dispute by the Trustee, as provided in Section 4(b). The Firms shall not be entitled to reimbursement for any expense or cost incurred in violation of this Section 2(k).

(l)     For clarity, none of the Trustee, the Claims Administrator of the Trust, or any of their employees, officers, directors, agents, consultants, lawyers, advisors, or professionals, shall be personally liable, whether under this Engagement Letter or based on any theory of law or equity, to the Firms or to any party claiming on behalf of or through the Firms for any of the Firms' fees or expenses. The Firms shall only look to the funds of the Trust for payment of Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, and Special Counsel Costs, and shall only look to the Proceeds, if any, for payment of any Contingency Fee(s) and reimbursement of any General Costs.

(m)     For the avoidance of doubt, and notwithstanding any other provision of this Engagement Letter, all Court Fees, Court Reporter Costs, Discovery Costs, Expert Costs, Mediator Costs, Special Counsel Costs, and General Costs, shall be supported by documentation satisfactory to the Trustee, such documentation shall be timely delivered by the Firms, with further written explanation as requested by the Trustee or the Authorized Agent, and shall be subject to the Trustee's review and approval prior to being paid. The Trustee may dispute any invoice, statement of fees, request for reimbursement, or other request for costs, expenses, and/or fees submitted by the Firms, as provided in Section 4(b). The Trust shall have no obligation to reimburse the Firms nor any third party for any costs, expenses, or fees incurred in violation of the approval requirements set forth in this Section 2.

3. **CONTINGENCY FEE.**

(a)     The Firms' compensation shall be calculated on a pure contingency basis, as set forth herein. As of any Calculation Date, subject to the limitations in Sections 3(c) to (d) below, with respect to the Net Proceeds received in connection with such Calculation Date, the Firms shall be entitled to a contingency fee (the "**Contingency Fee**") calculated on an incremental basis as follows under the applicable time period (each of Section 3(a)(i), (ii), and (iii) a "**Time Period**"):

i.     If there is a Settlement or Judgment on or prior to the date that is six months after the filing of a complaint or other commencement of an adversary proceeding, then with respect to the Net Proceeds from such Settlement or Judgment:

1. 20% on the first $200 million of Net Proceeds; *plus*
2. 18% on the next $100 million of Net Proceeds (over $200 million and up to and including $300 million of Net Proceeds); *plus*
3. 16% on the next $100 million of Net Proceeds (over $300 million and up to and including $400 million of Net Proceeds); *plus*
4. 14% on the next $100 million of Net Proceeds (over $400 million and up to and including $500 million of Net Proceeds); *plus*
5. 12% on the portion of Net Proceeds over $500 million.

ii.     If there is a Settlement or Judgment more than six months after the filing of a complaint or other commencement of an adversary proceeding, but before jury selection commences or a non-jury trial or other final evidentiary hearing (such as an arbitration) commences, then with respect to the Net Proceeds from such Settlement or Judgment:

1. 24% on the first $200 million of Net Proceeds; *plus*
2. 21% on the next $100 million of Net Proceeds (over $200 million and up to and including $300 million of Net Proceeds); *plus*
3. 19% on the next $100 million of Net Proceeds (over $300 million and up to and including $400 million of Net Proceeds); *plus*
4. 16% on the next $100 million of Net Proceeds (over $400 million and up to and including $500 million of Net Proceeds); *plus*
5. 14% on the portion of Net Proceeds over $500 million.

iii.     If there is a Settlement or Judgment on a date that is (i) more than six months after the filing of a complaint or other commencement of an adversary proceeding and (ii) on or after the day on which jury selection commences or a non-jury trial or other final evidentiary hearing (such as an arbitration) commences, then with respect to the Net Proceeds from such Settlement or Judgment:

1. 30% on the first $200 million of Net Proceeds; *plus*
2. 26% on the next $100 million of Net Proceeds (over $200 million and up to and including $300 million of Net Proceeds); *plus*
3. 22% on the next $100 million of Net Proceeds (over $300 million and up to and including $400 million of Net Proceeds); *plus*
4. 18% on the next $100 million of Net Proceeds (over $400 million and up to and including $500 million of Net Proceeds); *plus*
5. 15% on the portion of Net Proceeds over $500 million.

6

(b)     For the avoidance of doubt, neither (i) the Federal Settlement, nor (ii) any liens or offsets not relating to the McKinsey Claims, shall impact the calculation of the Contingency Fee under this Engagement Letter.

(c)     For the avoidance of doubt, the date of occurrence of each Settlement or Judgment shall determine the Time Period to be used to calculate the Contingency Fee with respect to any gross sums originating from such Settlement or Judgment (regardless of the date on which such gross sums become Net Proceeds).

(d)     For the avoidance of doubt, each Contingency Fee shall be calculated on a cumulative basis, such that Net Proceeds from any previous Calculation Date(s) shall be accounted for when determining the applicable contingency percentage. For example, if Net Proceeds as of the first Calculation Date equaled $150 million, then on the next Calculation Date, if additional Net Proceeds equaled $100 million, the Contingency Fee for the first $50 million of such $100 million would be based upon the contingency percentage set forth on line 1 of the applicable Time Period and the second $50 million of such $100 million would be based upon the contingency percentage set forth on line 2 of the applicable Time Period.

(e)     The fees set forth in this Engagement Letter are not set by law but have been negotiated between attorney and client.

(f)     The Firms shall prepare a statement of fees setting forth the amount of any Contingency Fee due or to become due as soon as practicable after any Calculation Date. The statement of fees shall be sent to the Trustee by mail to Two Embarcadero Center, Suite 1500, San Francisco, CA 94111 and by email to accounting@firevictimtrust.com with copies to pkellywemed@gmail.com and dmolton@brownrudnick.com. Any questions regarding the statement of fees should be brought to the attention of the Firms within a reasonable time. Provided that there is no dispute or pending question as to the amount set forth on the statement of fees, and subject to the limitations in Sections 3(c) to (d), above, the Contingency Fee shall be paid to the Firms within sixty (60) days after the Trust's receipt of the statement of fees.

(g)     In the event that any Unresolved Indemnity Claims exist on any Calculation Date, the Trust shall make a determination of the amount of potential Unresolved Indemnity Sums, and shall deposit into a segregated account the amount of the Contingency Fee corresponding to such Unresolved Indemnity Sums and shall not release or withdraw any funds from that account other than (i) to pay the Firms any Contingency Fee due if the Trust determines that some or all of the Unresolved Indemnity Sums are no longer Unresolved Indemnity Sums and will not become Outstanding Fixed Indemnity Sums and/or (ii) to pay the indemnitee(s) if the Unresolved Indemnity Sums become Outstanding Fixed Indemnity Sums. For the avoidance of doubt, the Trust shall pay the Firms the Contingency Fee due with respect to any Net Proceeds received in connection with such Calculation Date in addition to any approved outstanding General Costs in accordance with this Engagement Letter.

(h)     In the event the services of one or more of the Firms are terminated pursuant to Section 9 below, and such terminated Firm or Firms assert in writing a claim against the Trust for the reasonable value of their services rendered prior to such termination and/or for outstanding General Costs, then upon any Receipt of Proceeds Date, the Trust shall deposit into a segregated account an amount equal to the Contingency Fee and any approved outstanding General Costs that would, if not for the termination, be due to the terminated Firm or Firms under this Engagement Letter, and shall release funds in respect of such claim from that account to the terminated Firm or Firms to the extent (i) agreed in writing by the Trust and the terminated Firm or Firms, or (ii) determined pursuant to a resolution reached in accordance with the dispute resolution procedures set forth in Section 8 below. After making provision for the funds in accordance with the foregoing

7

(i) or (ii), any funds remaining in the segregated account shall be released to the Trust's general account. For the avoidance of doubt, no funds shall be disbursed from the segregated account except as provided in this Section 3(h).

4. **PAYMENT TO FIRMS.**

(a)     Any fees due from the Trust to the Firms pursuant to this Engagement Letter will be split evenly and the Trust will pay 50% of such fees to each of Greenberg Gross LLP and Andrews & Thornton, A Law Corporation. Any reimbursement of approved costs shall be paid by the Trust to the Firm that invoiced the costs. The Trust shall have no obligation to make any payment hereunder to any other person, law firm or other third party. Invoices shall be remitted to the Trust at accounting@firevictimtrust.com with detailed supporting documentation to support the amounts set forth thereon.

(b)     The Trustee may dispute any invoice, statement of fees, request for reimbursement, or other request for costs, expenses, and/or fees submitted by the Firms. The Trustee or the Authorized Agent shall notify the Firms' Agents of any such dispute along with a reasonably detailed description of the dispute ("**Notice of Dispute**"). Upon the Firms' receipt of a Notice of Dispute, the Trust and the Firms shall seek to resolve any such dispute expeditiously and in good faith for forty-five (45) days ("**Initial Resolution Period**"). If the Trust and the Firms have not resolved the dispute by the end of the Initial Resolution Period, then the Trust and the Firms shall resolve the dispute in accordance with the dispute resolution provisions set forth in Section 8 below. The parties hereto shall continue performing their respective obligations under this Engagement Letter during any such dispute, subject to the terms of this Engagement Letter.

5. **CONFIDENTIAL INFORMATION.**

The Firms recognize that certain of their partners, associates, and staff members may be provided with confidential and proprietary information belonging to the Trust ("**Confidential Information**"). The Firms shall not disclose to any third parties any Confidential Information obtained in the course of the Representation unless the Trust consents to such disclosure. Confidential Information will not include: (i) information made public other than as a result of breach of this Engagement Letter; (ii) information either or both of the Firms acquire from a third party with no known obligations of confidence regarding the information; or (iii) information already known to either or both of the Firms prior to disclosure by the Trust. If either or both of the Firms receive a request for disclosure of Confidential Information or are otherwise required by law to disclose any Confidential Information, the Firms will, to the extent practicable, notify the Trust of the disclosure request or requirement, and will discuss an appropriate response with the Trust. The Firms also agree to take reasonable steps to avoid the disclosure, obtain an appropriate protective order, or secure other safeguards to help preserve confidentiality.

6. **RECORDS.**

All materials prepared by the Firms for the Trust in connection with the Representation shall be the property of the Trust.

7. **COOPERATION.**

The Trust agrees that its authorized representatives will (i) be reasonably available to confer with the Firms upon request; (ii) provide the Firms with access to such documents and information as the Trust may possess relating to the Representation; (iii) disclose all facts and circumstances of which the Trust is are aware that may bear upon the Firms' handling of the Representation; and (iv) otherwise assist the Firms' efforts as reasonably requested to do so by the Trustee or the Authorized Agent.

8

8. **DISPUTE RESOLUTION.**

The parties hereto agree that any dispute that arises under this Engagement Letter including but not limited to all claims and disputes regarding any Contingency Fee(s) or other payment(s) alleged to be owed by the Trust pursuant to this Engagement Letter, whether based on facts and circumstances existing at the time of termination or arising thereafter shall, in the first instance, be sought to be resolved by an alternative dispute resolution ("**ADR**") process mutually agreeable to the parties as follows: the parties involved agree to meet and confer in good faith to agree upon and proceed with a mutually acceptable ADR process.

The parties further agree that any dispute that is not resolved by the ADR process shall be submitted to binding arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules. Such claims shall be heard by a panel of three arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the American Arbitration Association. The arbitration panel shall have the power to rule upon its own jurisdiction and authority. The place of arbitration shall be San Francisco, California, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction. The parties shall bear their own legal fees and costs in connection with any arbitration proceedings brought pursuant to this Section 8. The award of the arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party to an arbitration proceeding nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to this Engagement Letter. The parties to this Engagement Letter acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate certain claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration in accordance with the foregoing.

This Engagement Letter shall be governed by the laws of the State of California, without regard to its conflicts of law provisions that would apply the laws of another jurisdiction.

9. **TERMINATION.**

Notwithstanding anything to the contrary herein, the Trust has the right to terminate this engagement at any time, for any reason or for no reason, effective upon delivery of written notice to the Firms' Agents. In the event of termination by the Trust, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation. The Firms also have the right, subject to certain responsibilities under applicable ethical rules, to terminate this engagement by giving the Trust fifteen (15) days advance written notice if the Trust fails to cooperate with the Firms or if the Firms determine that continuing to represent the Trust would be unethical, impractical, or improper. In the event the Firms exercise such right of termination, the Firms shall provide cooperation in good faith in any transition, including return of materials provided to the Firms by the Trust and providing copies of all materials, including any work product, created under this Engagement Letter or in connection with the Representation.

10. <u>**INDEMNIFICATION.**</u>

   The Firms acknowledge that the operation of the Trust is governed by a Trust Agreement, which provides for the indemnification of certain advisors and consultants to the Trust. Notwithstanding such provisions of the Trust Agreement, the Firms acknowledge and agree that, except as to Trust's indemnity obligations arising out of or related to the Trust's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction, the Trust shall not be obligated to satisfy any indemnity obligations if and to the extent that at the time a demand for indemnity is made and would otherwise by payable by the Trust, the amount of such indemnity claim exceeds the amount of maximum aggregate limit of liability insurance coverage then available to satisfy such indemnity claim at that time, which the Trust has represented to the Firms to be $80,000,000 less the amount of covered claims already paid or payable against such maximum aggregate limit of liability insurance coverage.

11. <u>**AGREEMENT APPLICABLE UNTIL CHANGED IN WRITING.**</u>

   The scope of this Representation may be modified by the Trust at any time and from time to time by advance written notice to the Firms' Agents at their offices at Andrews & Thornton, LLC, 4701 Von Karman Avenue, Newport Beach, California 92660 and Greenberg Gross LLP, 650 Town Center Drive, Suite 1700, Costa Mesa, California 92626, or via email to aa@andrewsthornton.com and agreenberg@ggtriallaw.com. If the scope of this Representation is modified, this Engagement Letter will apply to such additional matters the Firms agree to undertake upon the Trust's behalf unless the parties hereto enter into an express written agreement reflecting an alternate arrangement.

12. <u>**ENTIRE AGREEMENT.**</u>

   Effective as of January 1, 2022, this Engagement Letter contains the entire understanding between the Firms and the Trust relating to the services to be rendered by the Firms in connection with the Representation. Effective upon the execution of the New Engagement Letters, except as provided in Sections 5 [confidential information], 6 [records], 8 [dispute resolution], 10 [indemnification], and 12 [notices] of the Prior Engagement Letter, which Sections shall remain in effect, the Prior Engagement Letter shall terminate in all respects as of December 31, 2021 with respect to the services to be rendered by the Firms in connection with the Representation and the obligations of the Trust thereunder, and the provisions of this Engagement Letter shall govern exclusively the matters set forth herein; *provided*, *however*, that notwithstanding the foregoing, the Trust shall pay hourly fees calculated based on the Adjusted Rate as defined in Section 1(i) of the Prior Engagement Letter and invoiced by the Firms, costs, and/or expenses, attributable to periods ending on or prior to December 31, 2021 in accordance with the terms of the Prior Engagement Letter.

13. <u>**NOTICES.**</u>

   Any notice given pursuant to this Engagement Letter shall be sent (i) by FedEx or other commercial courier or (ii) electronically (by email) as follows:

   (a)      If to the Firms:

   Anne Andrews
   Andrews & Thornton, LLC
   4701 Von Karman Avenue,
   Newport Beach, California 92660
   Email: aa@andrewsthornton.com

10

With copies to:

Alan A. Greenberg
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Email: agreenberg@ggtriallaw.com

(b)    If to the Trust or the Trustee**:**

Hon. John K. Trotter (Ret.), Trustee
PG&E Fire Victim Trust
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

With copies to:

Patrick M. Kelly, Esq.
REDACTED

Email: pkellywemed@gmail.com

David Molton, Esq.
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Email: dmolton@brownrudnick.com

14.  **EFFECTIVENESS.**

This Engagement Letter shall not become effective until it has been executed and delivered by all the parties hereto.

15.  **COUNTERPART SIGNATURES.**

This Engagement Letter may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all of which together shall constitute and be deemed one and the same instrument.

16.  **HEADINGS.**

The headings contained in this Engagement Letter are for reference purposes only and shall not in any way affect the meaning or interpretation of this Engagement Letter.

*(Signature page follows)*

11

     **IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.


_____
**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**


_____
**GREENBERG GROSS LLP**


<u>ACCEPTED AND AGREED</u>


_____
**PG&E FIRE VICTIM TRUST**


*[Signature Page to Engagement Letter]*

**IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.

                                                         _____

                                                         **ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**

                                                         **GREENBERG GROSS LLP**

ACCEPTED AND AGREED

        _____

**PG&E FIRE VICTIM TRUST**

*[Signature Page to Engagement Letter]*

     **IN WITNESS WHEREOF** the parties have caused this Engagement Letter to be duly executed as of the date first written above.


_____
**ANDREWS & THORNTON, ATTORNEYS AT LAW, A LAW CORPORATION**


_____
**GREENBERG GROSS LLP**


ACCEPTED AND AGREED

_____
**PG&E FIRE VICTIM TRUST**


*[Signature Page to Engagement Letter]*