David P. Addington
298 Saint James Drive
Piedmont, CA 94611
415-606-6552
dpapiedmont@gmail.com

In Pro Per Claim No 108715

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>Affects both Debtors.<br><br>*\* All papers shall be filled in the Lead Case, No 19-90088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**PLAINTIFF DAVID P. ADDINGTON'S ACTION FOR QUIET TITLE AND DECLARATORY RELIEF AT 298 SAINT JAMES**<br>(RELATED TO CLAIM NO. 108715) |

David P. Addington ("Addington") files these actions for Quiet Title and Declaratory Relief, in the above captioned chapter 11 cases of DEBTORS Corporation ("DEBTORS Corp.") and Pacific Gas and Electric Company (the "Utility"), as DEBTORS and reorganized DEBTORS (collectively, "DEBTORS"). Furthermore, "DEBTORS" shall include Great Western Power as original grantee.

As the Bankruptcy Code imposes an automatic stay upon the filing of the Chapter 11 cases, which, among other things, prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. §362(a)(3), Addington requests this Court hear Addington's Quiet Title and Declaratory Relief actions as such actions being necessary to resolve conflicting claims of Addington and DEBTORS and being necessary to determine the amount of damages warranted, such as an accurate estimate of the costs to landscape Addington's property. Lastly, the resolution of these conflicting claims is essential to avoid future litigation between Grantor and Grantee.

## I.  BACKGROUND

Addington owns the real property at 298 Saint James, Piedmont California.  The property has two metal towers which are part of a chain of similar towers to facilitate the transmission and distribution of electricity.   The towers hold aloft the cables that conduct the electricity which is sold by the DEBTORS.

The DEBTORS' rights to construct the towers and run the cables across  Addington's property were established in an Easement recorded in 1909.   (Exhibit A)

## II.  QUIET TITLE

Addington purchased the real property that is the subject of this action on November 2, 2015.  Addington has owned the property from that day and at all times since.  The property is subject to a recorded easement granting the DEBTORS certain rights to Addington's property. Addington and DEBTORS have different and incompatible claims based on Easement interpretation regarding; A) Tower Ownership and B) Land Use Approvals. Addington is seeking a determination of these issues as of the date of his purchase. (Cal Code Civ Proc § 761.020)

### A)  Tower Ownership

The metal towers are permanently fixed to the earth.  Each tower has four legs that extend into the earth encased in concrete.   Black's Law Dictionary defines Real Property as "a

term that is applied to land and immovable property on land such as buildings." Addington and only Addington *owns* the real property at 298 Saint James. Find Law defines easement as, "a property right that gives its holder an interest in land that's owned by someone else." DEBTORS hold an easement. The easement rights are real property as they derived from and a subset of real property ownership, but they are not ownership. An easement, not unlike a lease, is a transfer of a bundle of real property rights from the real property owner to a lessee or grantee in exchange for a certain obligations. The transferred rights in each of these cases are a subset of rights held by the real property owner but the owner retains some rights. A transfer of all rights is a transfer of ownership.

It is clear that one may have a right to use a fixture such as a telephone pole without owning any interest in the land to which it is attached. In the case of Balestra v. Button, 54 Cal.App.2d 192, the court stated at pages 196 to 197 [128 P.2d 816]: "We are of the opinion that the right to maintain such a line [a telephone line] or to own an interest therein, does not necessarily depend upon the ownership of any lands. The owner of such right may or may not own lands. The right to cross over the lands of another is an easement, but no dominant tenement is necessary to support it. . . ." Again, in Rothschild v. Wolf, 20 Cal.2d 17, 22 [123 P.2d 483, 154 A.L.R. 75], a case which involved a right granted to the owner of one building to use a stairway in an adjoining building of the other, it was held that "such a grant of the use of a stairway constitutes an easement and does not necessarily attach to the underlying soil."

The DEBTORS have held forth publicly that they "own" the towers at 298 Saint James. DEBTORS filing of February 15, 2023 stated, " Mr. Addington seeks quiet title over *PG&E's towers* that support its electrical transmission equipment…." (emphasis added). While PG&E built the towers, they do not now, nor have they ever *owned* the towers. Once set into the earth, encased in concrete, the towers become real property owned by the owner of the real property. The DEBTORS' do have actual interests in the subject real property, but those interests are a lesser estate than ownership.

The easement granted real property rights to DEBTORS'. Those rights, clearly defined in the easement, were to construct, maintain and patrol a line of towers. The easement

acknowledged that the grantee would utilize personal property in the use of its easement. (The easement did not grant a right for the use of personal property because such a right is not an estate in Real Property.) The Easement restricted Grantee's use of the towers to electric transmission. The Easement further required that the Grantee's personal property should always be more than thirty feet from the ground. The Easement expressly reserved all other rights to the Grantor.

Despite this, the DEBTORS claim ownership of the towers for reasons that to date are only known to the DEBTORS. Perhaps the DEBTORS are unaware that Real Property can be divided into a myriad of separate estates. Time, space, usage, sky, surface and below surface are all common elements used to create separate estates in real property. The Owner of the Real Property may have granted virtually every imaginable estate to third parties, leaving itself few, if any, current rights in the real property – as in the case of a long-term triple-net land lease. The ownership estate of Real Property is unique in that when the granted estates cease to exist, the rights however conveyed, return to once again become part of the ownership estate. The ownership estate is the alpha and omega of real property rights. Ownership of real property is where all real property rights originate and where all such rights return when their various estates are extinguished.

DEBTORS might have wrongly assumed that because they built the towers that ownership would naturally flow to them. This position is incorrect. Improvements to real property are owned by the owner of that real property. Those who built or funded those improvements have their rights to those improvements delineated in leases or mortgages or some other estate grant from the owner. Building and paying for improvements does not convey ownership.

DEBTORS' rights to use real property at 298 Saint James Drive arise from an easement granted and recorded by Addington's predecessor-in-interest. DEBTORS rights to use real property at 298 Saint James are limited to those granted by the recorded easement. DEBTORS rights to use the real property at 298 Saint James are expressly limited to those expressly granted; construct, maintain, and patrol – nothing more.

Further evidence that the Grantor did not intend to convey ownership is the easements express reservation allowing the Grantor, now Addington, the right to move the Towers, if a different location better serves the Grantor's land use. Grantee is expressly limited in its use of the towers; the Grantor is not.

Addington owns the towers and can use the towers as he sees fit for any and all purposes up to and including the right to move the towers if his land use requires it.

Addington requests a court ruling that Addington owns the Towers.

**B.      Rights of Approval – Real Property**

DEBTORS have claimed a right to approve certain real property improvements at 298 Saint James. The City of Piedmont believes DEBTORS have some role in approval. (Exhibit B)

The Easement grants no such rights. Quite the opposite, the Easement makes clear that the rights granted are limited to building, maintaining, and patrolling the towers and that *all* other rights are reserved. The easement acknowledges the Grantee's use of personal property to accomplish its objectives but provides no grant of rights for their use as they are personal property.

DEBTORS have argued that their rights of approval are necessary to maintain the integrity of electrical distribution by making certain the structural soundness of the towers and their underpinning. DEBTORS' contend that their approval is essential for the safety of all concerned. While seemingly reasonable on their face, these arguments do not create rights of approval over Addington's real property improvements..

DEBTORS are warmly invited to provide advice regarding what work Addington may intend within the easement area.  Addington and DEBTORS have a common interest in project safety. But Addington intends to use his property, including the easement area, as he wishes. And will not grant and has not granted, DEBTORS with any rights of approval, review, analysis or oversite to his land use or changes thereto.

Addington requests a determination that DEBTORS have no rights of approval of any kind over Addington's property.

## III. DECLARATORY RELIEF ACTIONS

Under the provisions of the California Declaratory Judgment Act, CCP §§ 1060 et seq., a declaratory judgment action may be brought to establish rights once a conflict has arisen, or a party may request declaratory relief as a prophylactic measure before a breach occurs. To further the purpose of providing a rapid means of resolving a dispute or a potential dispute, declaratory actions are given precedence in setting trial dates under CCP § 1062.3. Mycogen Corp. v. Monsanto Co. (Cal. 2002), 28 Cal. 4th 888, 123 Cal. Rptr. 2d 432, 51 P.3d 297, 2002 Cal. LEXIS 5025.

Court has no discretion to refuse to give judgment declaring a right which is properly pleaded and well established by evidence; where good ground exists for granting of legal or equitable relief, judgment is given to party entitled thereto as matter of right, not of grace. Collins v. Collins (Cal. 1957), 48 Cal. 2d 325, 309 P.2d 420, 1957 Cal. LEXIS 185.

These circumstances qualify for Declaratory Relief as the parties have voiced disagreement on their understanding of their rights and responsibilities under the easement. While DEBTORS have ignored the questions asked by Addington on these specific questions, (Exhibit D) every indication is that the parties will not reach a consensus as to the operation of the easement.

### A. Approval Rights

If it is found that the DEBTOR has an approval right or right(s) over Addington's real property use and/or improvements, Addington requests under CCP §§ 1060 a written description of the rights in sufficient detail to make clear the process for obtaining such approvals.

### B. Interference Determination

The recorded easement has four conditions. The fourth of which says:

> *Fourth.* Said party of the first part hereby reserves the right to use said strip of land sixty feet in width for all purposes including that of mining and agriculture, and said party of the second part, in the enjoyment of the rights hereby granted, **_shall avoid_** so far as it reasonably can **_interfering_** with the use by the party of the first part of said strip of land for any and all purposes.

1    *The party of the second part shall have the right of patrolling said towers and wires located upon*

2    *said sixty foot strip of ground, and shall have the right to erect, maintain and use gates in all fences*

3    *which now cross or which shall hereafter cross said sixty foot strip of ground, but said party of the*

4    *second part shall not have the right to fence or enclose said strip of ground sixty feet in width owner*

5    *which said easement is hereby granted. (Emphasis Added)*

6    As highlighted and underlined, the condition requires the Grantee to avoid interfering

7    with Grantor's land use.  Oxford language dictionary defines interfering as "1) take part or

8    intervene in an activity without invitation or necessity."  As Grantor, Addington can confirm that

9    no invitation was made to DEBTOR, leaving only necessity.  Oxford Language Dictionary

10   defines necessity as "the fact of being required or indispensables".  Any action by DEBTOR at

11   298 Saint James must therefore be indispensable to its rights granted.  Stated another way, if

12   DEBTOR does not take the action in question, the purpose of the granted easement – distribution

13   of electrical power – ceases to be possible.

14   If the DEBTOR takes an action that impacts Addington's property and that action is not

15   essential to the distribution of electrical power, regardless of the action's intention or outcome,

16   that action is a violation of the express terms of the easement.   Addington requests a

17   determination of the practice and procedure required to establish interference by Grantee.

18   **C.    Termination and Extinguishment Trigger**

19   The Easement's termination clause states:

20   *"Any violation of the conditions of this grant shall terminate and extinguish the easement hereby*

21   *granted."  (Emphasis Added)*

22   Oxford Dictionary defines <u>Any</u> as "used to refer to one or some of a thing or number of

23   things, *no matter how much or how many*".  (Emphasis Added)  The easement therefore directs

24   that a violation, regardless of its size, frequency, or significance, extinguishes the easement.

25   There can be no more nor no less than "any".  An avalanche and a drip are both fully "any".

26   The easement's termination and extinguishment are effective automatically, without any

27   further action by the parties.  The termination and extinguishment are not subject to the approval

28

of the parties and - by design - cannot be forestalled. These words are the words chosen by the Grantor and must be understood to represent the Grantor's intention.

> *Declaration of rights and obligations under contract, resulting in reformation, is but*
> *determination of parties' intention and legal effect of contract, and no modification of its terms.*
> *Steeve v. Yaeger (Cal. App. 4th Dist. 1956), 145 Cal. App. 2d 455, 302 P.2d 704, 1956 Cal. App.*
> *LEXIS 1361.*

In allowing the use of his property, for a very very long time - perhaps in perpetuity, for nominal compensation, while retaining all the associated costs of the property, the Grantor made abundantly clear that the Grantee should walk a very straight and narrow path or lose its privilege to walk on his property at all. The requirement of exemplary behavior is befitting the grant (or gift) of the easement. One would certainly expect a long-term house guest to exhibit exemplary behavior as a reasonable exchange for cost free accommodations forever.

Addington requests determination of the process or procedure required to establish interference as sufficient to trigger termination.

## D. Form of Notice of Extinguishment

The courts have found that when an easement contains a clause that ends an easement on the occurrence of specific events, nothing forestalls or limits that clauses operation.

> Federal: A Flock of Seagirls LLC v. Walton Cty., 7 F.4th 1072 (11th Cir. 2021) *[W]e*
> *hold (1) that the ordinance triggered the abandonment clause and (2) that no other source of*
> *law—Florida common law, separate provisions in the easement, a Walton County resolution, or a*
> *consent judgment—forestalls or limits the abandonment clause's operation.").*

As the easement's extinguishment clause is self-actuating based on events and interactions known only to Addington and DEBTORS, a notice of its' triggering must be recorded to inform other interested parties that the Easement has been extinguished. Addington requests a Court determination as to the proper process and procedure to acknowledge easement extinguishment in the public record.

## IV.     PRAYER FOR RELIEF

WHEREFORE, Addington prays for judgment against DEBTORS as follows:

On the FIRST CAUSE OF ACTION:

A:     A Court Order Confirming Addington's Tower Ownership.

B:     A Court Order Affirming that DEBTORS have no rights of approval at 298 Saint James Drive.

On the SECOND CAUSE OF ACTION:

A.     Court Order detailing DEBTORS' rights of approval at 298 Saint James and the process of obtaining said approvals.

B.      Court Order on the process and procedure to establish interference.

C.     Court Order on the process and procedure to establish interference as sufficient to trigger termination.

D.     A Court Order approving the form of recorded notice of termination clause.

On ALL CAUSES OF ACTION AND COUNTS:

(i)     For costs of suit herein incurred; and

(ii)    For such other and further relief as the court may deem proper.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.  Executed on this 20th day of February 2023, in Piedmont, California.


*/s/ David Preston Addington*

By:     David Preston Addington

# EXHIBIT A

## 11 PAGES



This is to certify that
this is a true copy of
the document on file
in this office.

ATTEST  JUN 29  2021

Melissa Willis
COUNTY CLERK RECORDER

In presence of ]           Anthony D. Verra.   (seal)

                         Blanche Frances Verra   (seal)

State of California )

County of Alameda )ss

                     On this 8th day of March in the year one thousand nine hundred and nine (1909) before me A. E. Gartner a Notary Public in and for said Alameda County, residing therein, duly commissioned and sworn, personally appeared Anthony D. Verra and Blanche Frances Verra; his wife; known to me to be the persons described in, and who executed and whose names are subscribed to the within and foregoing instrument, and they acknowledged to me that they executed the same.

                     In Witness Whereof, I have hereunto set my hand and affixed my Official Seal, the day and year in this certificate first above written

(Notarial)          A. E. Gartner, Notary Public

( seal )      in and for said county of

                        State of California

Recorded at request of Frank W. Mott Co.

Mar 9-1909 at 32 min past 3 P.M.

M 29036 — 260

Le P

                                     _[signature]_

C. A. F.                               County Recorder.

| The Realty Syndicate to Great Western Power Co. | This Indenture, made by and between The Realty Syndicate a corporation organized and existing under and by virtue of the laws of the State of California, and having its principal place of business, in the city of Oakland, County of Alameda, in said State, the party of the first part and Great Western Power Company a corporation organized and existing under and by virtue of the laws of the State of California and having its principal place of |

Contra Costa, in said State, the party of the second part, Witnesseth:

That the party of the first part, for and in consideration of the sum of Five (5) Dollars in Gold coin of the United States of America to it in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, does hereby grant unto the said party of the second part, its successors and assigns, upon the conditions and for the purposes hereinafter set forth, an easement over a tract of land of a uniform width of sixty (60) feet situated in the County of Alameda, State of California, the center line of which said strip of land sixty (60) feet in width, over which said easement is hereby granted, being more particularly described as follows, to wit:

Commencing at a point on the Western line of that certain 30 acre tract of land heretofore conveyed by The Real Estate Combine to The Realty Syndicate by deed dated May 23, 1899, and recorded in Liber 694 of Deeds at page 185, Alameda County Records, said line being also the Eastern boundary line of Lot 5 in Block 8, as said lot and block are delineated and so designated on that certain map entitled "Map of East Oakland Heights" filed in the office of the Recorder of Alameda County, California, October 6, 1890, distant therefrom South 30°44' East 30 feet from the most Northern corner of the said Lot 5; and running thence South 86°28' East 344 feet to a point 30 feet Northwesterly at right angles from the Northwestern boundary line of Fourth Avenue Terrace as said boundary line is delineated upon that certain map entitled Map of Fourth Avenue Terrace filed in the office of the Recorder of said Alameda County, May 6, 1907; thence parallel with said boundary line of said Fourth Avenue Terrace ____ ____ East 797 feet to a station; thence

at right angles from the Southeastern bound-
ary line of that certain tract of land containing
14.28 acres heretofore conveyed by Piedmont Build-
ing Association to The Realty Syndicate by deed
dated November 5, 1906, and recorded in Liber
1284 of Deeds, at page 22, Alameda County Records
thence North 49° 58' East 1987 feet to a station;
thence North 70° 42' East, at 1455 feet intersect
the line dividing that certain 116.30 acre
tract firstly described in deed from Joseph
L. Alexander to Bridget Feeney by deed dated
February 17, 1862, and recorded in Liber "L" of
deeds at page 672 Alameda County Records
from that certain 7.386 acre tract heretofore
conveyed by Leo and Carrie R. Sterling to
The Realty Syndicate by deed dated January 15,
1903 and recorded in Liber 875 of Deeds at
page 214, Alameda County Records, distant
thereon North 21° East 471 feet from the most
Southern corner of said 7.386 acre tract, 3144
feet to station; thence North 43°10' East 818 feet
to station; thence North 15°38' East 423 feet to
a point in the center of the Eastern branch
of Sausal Creek commonly known as Palo
Seco Creek, about 400 feet Southeasterly from
its confluence with Sausal Creek, on the North
eastern boundary line of that certain 223.88
acre tract heretofore conveyed by the Pacific
Mutual Life Insurance Company to The Realty
Syndicate by deed dated May 20, 1908, and record-
ed in Liber 1499 of Deeds at page 67, Alameda County
Records, at 75 feet on course North 49½° West 2.30
chains of last said boundary line.

Containing 11.88 acres and being portions
of the tracts of land deeded as follows:

The Real Estate Combine to The Realty Syn-
dicate dated May 23, 1899, and recorded in Liber
694 of Deeds at page 185, Alameda County Records

Kirkham Havens Incorporated to The Realty
Syndicate dated January 1, 1907, and recorded in

Records.

Piedmont Building Association to The Realty Syndicate dated November 5, 1906, and recorded in Liber 1204 of Deeds, at page 22, Alameda County Records.

Joseph Alexander to Bridget Feeney dated February 17, 1862, and recorded in Liber 2 of Deeds, at page 672, Alameda County Records.

George and Carrie R. Sterling to The Realty Syndicate, dated January 15, 1903, and recorded in Liber 875 of Deeds at page 214, Alameda County Records.

Pacific Mutual Life Insurance Company to The Realty Syndicate by deed dated May 20, 1908, and recorded in Liber 1499 of Deeds at page 67, Alameda County Records.

Also: A strip of land sixty (60) feet in width, the center line of which is described as follows, to wit:

Commencing at a point on the Southwestern boundary line of that certain 412 acre tract of land heretofore conveyed by The Realty Syndicate to George Sterling by deed dated October 30, 1906, and recorded in Liber 1313 of Deeds at page 147, Alameda County Records, distant thereon North 41° 54' West 397 feet from Stake 120 at the most Northern corner of that certain 474 acre tract of land heretofore conveyed by The Realty Syndicate, a corporation, to F. M. Smith, by deed dated March 22, 1907, and recorded in Liber 1314 of Deeds at page 427, Alameda County Records, and running thence South 53° 25' West 962.46 feet, thence South 15° 38' West 2126.40 feet to a point on the Northern boundary line of the aforesaid 474 acre tract, distant thereon North 47° 16' West 9 feet from stake 98 as noted in the last said deed.

Containing 3.91 acres and being a portion of that certain 474 acre tract of land heretofore conveyed by John W. Mitchell and Anna

dated February 1st, 1905, and recorded in Liber 1024 of Deeds at page 321, Alameda County Records.

This grant is made upon the following express conditions and reservations, to wit:

First. Said easement is hereby granted for the purpose only of enabling said party of the second part to erect and maintain upon said strip of ground sixty feet in width two lines of steel towers, which said steel towers shall be located upon said strip of land not less than three hundred and fifty (350) feet apart, for the purpose of suspending and stringing wires thereon and supported thereby for the transmission and distribution of electricity, with all necessary and proper cross arms, braces, connections, fastenings and other appliances for use in connection therewith, provided that no wire shall be suspended or strung upon or between said towers at a distance of less than thirty (30) feet from the surface of said sixty foot strip of ground hereinbefore described; and provided further that where said wires cross any railroad hereafter constructed across said strip of ground sixty feet in width, then in that case said party of the second part shall maintain said wires at least forty (40) feet above the rails of said railroad at said crossing.

Second. Said party of the first part hereby reserves the right to cross said sixty foot strip of ground hereinbefore described at any point or points with such streets, avenues and highways and railroad lines as it may desire,

provided that in case of the opening of any street, highway or avenue, or construction of any railroad line across said sixty foot strip, it shall become necessary to move any tower erected under the terms of this grant

case the actual cost of moving said tower shall be borne by the party of the first part.

Third. Said party of the first part also hereby reserves a right of way across said strip of ground sixty feet wide for the use of the Oakland Traction Company, a corporation organized and existing under and by virtue of the laws of the State of California, and also a right of way across said strip of ground sixty feet in width for the use of the San Francisco, Oakland and San Jose Consolidated Railway, a corporation organized and existing under and by virtue of the laws of the State of California.

Fourth. Said party of the first part hereby reserves the right to use said strip of land sixty feet in width for all purposes including that of mining and agriculture, and the said party of the second part, in the enjoyment of the rights hereby granted, shall avoid so far as it reasonably can interfering with the use by the party of the first part of said strip of land for any and all purposes. The party of the second part shall have the right of patrolling said line of towers and wires located upon said sixty foot strip of ground, and shall also have the right to erect, maintain and use gates in all fences which now cross or which shall hereafter cross said sixty foot strip of ground, but said party of the second part shall not have the right to fence or inclose said strip of ground sixty feet in width over which said easement is hereby granted.

Any violation of the conditions of this grant shall terminate and extinguish the easement hereby granted.

In Witness Whereof said party of the first part has executed these presents this ninth day of December, 1908.

The Realty Syndicate
By George E. Pratt
Third Vice President.

(Corporate seal)     By Samuel J Taylor
Secretary

State of California } ss.
County of Alameda }

On this ninth day of December, in the year of our Lord One Thousand Nine Hundred and Eight, before me, M. K. Jacobus, a Notary Public in and for said County and State, residing therein, duly commissioned and sworn, personally appeared George E. Pratt known to me to be the 3rd Vice President and Samuel J. Taylor, known to me to be the Secretary of the Corporation that executed the within instrument, and acknowledged to me that such corporation executed the same.

In Witness Whereof, I have hereunto set my hand and affixed my Official Seal, at my office in the County and State aforesaid, the day and year in this certificate first above written

(Notarial)     M. K. Jacobus, Notary Public
seal     in and for said County of Alameda
State of California

Be it Resolved that this corporation grant and convey to the Great Western Power Company, a California corporation, an easement for its electric tower transmission line and for other purposes in connection therewith; and

Be it further Resolved that George E. Pratt the Third Vice President, and Samuel J. Taylor the Secretary, be, and they are hereby authorized, empowered and directed for and in behalf of this corporation, and as its corporate act and deed to make, execute, acknowledge and deliver to said Great Western Power Company an instrument in writing in such form as

fit, granting to said Great Western Power Company such rights and easement as they may deem necessary or proper for use by said Great Western Power Company, its successors or assigns, in or to the lands or any thereof of this corporation, all acts and deeds of said Third Vice President and Secretary, and each of them, being hereby ratified, approved and confirmed.

I, Samuel J. Taylor, Secretary of The Realty Syndicate, a California corporation, do hereby certify that the foregoing resolution was duly adopted at a duly and regularly called and held meeting of the Board of Directors of said corporation, on the ninth day of December 1908, — at which meeting more than a majority of the Directors of said corporation were present and duly voted in favor of said resolution and that said resolution now stands upon the minutes of said corporation and is now in full force and effect.

In Witness Whereof, I have hereunto on this ninth day of December, 1908, signed my name as Secretary of said corporation, and affixed hereto the corporate seal of said corporation.

Saml. J. Taylor,

(corporate seal)    Secretary of the

Realty Syndicate

State of California }
County of Alameda } ss

On this ninth day of December, in the year of our Lord One Thousand Nine Hundred and Eight, before me, M. K. Jacobus a Notary Public in and for said County and State, residing therein, duly commissioned and sworn, personally appeared Samuel J. Taylor, Secretary of The Realty Syndicate a corporation, known to me to be the person described in and whose name is subscribed to the within instrument and f...

he executed the same as such Secretary.

In Witness Whereof, I have hereunto set my hand and affixed my Official Seal, at my office in the County and State aforesaid, the day and the year in this certificate first above written.

( Notarial )
( seal )

M. H. Jacobus Notary Public in and for the County of Alameda, State of California.

Recorded at request of Guy C. Earle at 1 min past 11 a. m. Mar 17- 1909

M.29 P.59

L.P.

A. N. Gile
County Recorder.

C.B.

| F. M. Smith. et al | This Indenture, made |
| to | by and between F. M. |
| Great Western Power Co. | Smith and Evelyn E. |

Smith, his wife, both of the City of Oakland, County of Alameda, State of California, the parties of the first part, and Great Western Power Company, a corporation organized and existing under and by virtue of the laws of the State of California and having its principal place of business in the City of Richmond, County of Contra Costa, in said State, the party of the second part, Witnesseth.

That the parties of the first part, for and in consideration of the sum of Five (5) Dollars in Gold Coin of the United States of America, to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do hereby grant unto the said party of the second part, its successors and assigns, upon the conditions and for the purposes hereinafter set forth, an easement over a tract of land of a uniform width of sixty (60) feet situated in the County of Alameda, State of California, the center line of which said

This is to certify that
this is a true copy of
the document on file
in this office.

JUN 29 2021



COUNTY OF ___ RECORDER

# EXHIBIT B

## 1 PAGE



## 298 Saint James

**Paki Muthig** <pmuthig@piedmont.ca.gov>
To: David Addington <dpapiedmont@gmail.com>
Cc: Steven Lizzarago <slizzarago@piedmont.ca.gov>

Thu, Dec 8, 2022 at 4:28 PM

Hi David,

I have a call into PG&E to find the right person to speak with. From our discussions the other day it sounded like there will be grading that would result in retaining walls and would require permitting. If you have or can develop Existing and Proposed site plans then we can better comment on the project and use them for reference in our discussions with PG&E.

Thank you,

**Paki Muthig AIA | Building Official | City of Piedmont**

120 Vista Avenue, Piedmont, CA    94611 - 4031

(510) 420-3062    piedmont.ca.gov

**Updated Information:**

Please expect delays in responses to emails, phone calls and processing permits. We greatly appreciate your patience and appologize for the inconvenience.

To schedule an inspection please use our **Online Inspection Scheduler:** Click Here

Submit digital PDF's of all building permit **applications** and materials to buildingpermits@piedmont.ca.gov

To stay up to date with the developments, subscribe to the Planning & Building Department **newsletter** at: https://lp. constantcontactpages.com/su/rMGm1oM/PiedmontPlanBuild

**From:** David Addington <dpapiedmont@gmail.com>
**Sent:** Wednesday, December 07, 2022 7:50 PM
**To:** Paki Muthig <pmuthig@piedmont.ca.gov>
**Subject:** 298 Saint James

You don't often get email from dpapiedmont@gmail.com. Learn why this is important