**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: (212) 310-8000
Fax: (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for the Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**REORGANIZED DEBTORS' OPPOSITION TO THE RKS CLAIMANTS' MOTION TO ENFORCE THE ADR PROCEDURES ORDER AND ESTABLISH A MARCH 20, 2023 DEADLINE TO OBJECT TO THE RKS CLAIMANTS' CLAIMS**<br><br>[Related to Docket No. 13492]<br><br>Date:  March 7, 2023<br>Time:  10:00 a.m. (Pacific Time)<br>Place: **(Tele/Videoconference Only)**<br>       United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned Chapter 11 Cases, hereby submit this opposition to *The RKS Claimants' Motion to Enforce the ADR Procedures Order and Establish a March 20, 2023 Deadline to Object to the RKS Claimants' Claims*, dated February 6, 2023 [Docket No. 13492] (the "**Motion**"). In support of their opposition, the Reorganized Debtors also submit the Declaration of Richard W. Slack (the "**Slack Declaration**"), filed concurrently herewith.

## PRELIMINARY STATEMENT

The RKS Claimants' Motion is just their latest attempt to cut the line and force the Reorganized Debtors to litigate with them before the time set by the Court, and before thousands of other claimants that are just as deserving of attention. The Court will remember that the RKS Claimants initially objected to the Reorganized Debtors' motion for an extension of the claims objection deadline, and withdrew that objection in return for a promise by the Reorganized Debtors to mediate with them. The Reorganized Debtors did mediate with them—outside of the Securities ADR Procedures (as defined below) and with a mediator chosen by the RKS Claimants. The assertion by the RKS Claimants that the Reorganized Debtors did not mediate in good faith is wholly unsupported and absolutely wrong. Given the right of the RKS Claimants to opt out if a class settlement is reached in the District Court Securities Litigation class action, the Reorganized Debtors had no incentive not to settle with the RKS Claimants if a settlement was realistically achievable.

Indeed, it is clear that the RKS Claimants are determined to disrupt and disturb the Reorganized Debtors' attempts to resolve securities claims in an orderly and equitable fashion. The Court need look no further than this Motion and the contemporaneous motion made by the RKS Claimants to intervene in the stayed District Court Securities Litigation to confirm that they have determined to make themselves a hindrance to the Reorganized Debtors and other securities claimants in an attempt to gain favorable treatment not called for by the Court-approved procedures.

The RKS Claimants' Motion is based on two fundamentally flawed premises. First, the RKS Claimants misread the Securities ADR Procedures to require an objection 60 days after the

Case: 19-30088    Doc# 13528    Filed: 02/21/23    Entered: 02/21/23 15:38:18    Page 2 of 14

1

termination of a mediation. To the contrary, the Securities ADR Procedures unambiguously state that the claim objection deadline applies unless there is an ongoing mediation, in which case the claim objection deadline is extended until 60 days after termination of the mediation. Thus, the Securities ADR Procedures do not provide that the Reorganized Debtors must object to a claim 60 days after the termination of a mediation under the Securities ADR Procedures, which alone requires denial of the Motion. Second, the Motion is also flawed because the Reorganized Debtors and the RKS Claimants did not intend to and did not engage in a mediation governed by the Securities ADR Procedures. The Securities ADR Procedures have very specific requirements for mediations that occur pursuant to the procedures and *none* of the Securities ADR Procedures requirements were followed or used for the mediation with the RKS Claimants. Thus, the 60-day period, even if shortened the time to object as misread by the RKS Claimants, would not apply here in any event.

It appears that the RKS Claimants agreed to mediate in the first place with the preconceived intention to promptly terminate the mediation and then seek to require the Reorganized Debtors to object to their clients' claims prior to the claims of every other securities claimant. In short, the Court should deny the Motion as an improper attempt by the RKS Claimants to jump the line, in contravention of the Court's Securities ADR Procedures and the Extension Order (as defined below).

**FACTUAL BACKGROUND**

I.  **BACKGROUND OF THE RKS CLAIMANT GROUP**

On January 25, 2021, this Court entered an order establishing the Securities ADR Procedures. *Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Docket No. 10015] (the "**Securities ADR Procedures**").

Although claimants were already required to submit trading data support for their securities claims with their proofs of clam, the Securities Claims Information Procedures (as defined in the Securities ADR Procedures) adopted a process by which the Reorganized Debtors could obtain that information from claimants who did not provide that information previously. This information is necessary to allow the Reorganized Debtors to evaluate the claims and calculate settlement offers. *See* Securities ADR Procedures at 1:8-11. Waiting for claimants to submit trading information significantly delayed the settlement process in the Securities ADR Procedures, even though the

claims administrator has diligently worked with claimants to obtain that information. The Reorganized Debtors and their professionals have continued to receive trading information from securities claimants that should have been provided at the outset, including from the RKS Claimants.

Of the 699 RKS Claimants, Rolnick Kramer Sadighi LLP ("**RKS**") only filed proofs of claim on behalf of approximately 272 claimants, many of which purport to be amendments of bulk filings previously made by ISS Securities Class Action Services ("**ISS**").[1] With respect to the remaining purported RKS Claimants, RKS has asserted in the Motion and in *In re PG&E Corp. Securities Litigation*, No. 5:18-cv-03509-EJD (N.D. Cal.) (the "**District Court Securities Litigation**") that RKS represents them. The Reorganized Debtors, however, have never received any independent corroboration of that assertion. As recently as November 8, 2022, RKS contended that "No fewer than 279 Securities Claimants represented by RKS had fully submitted all requested Trading Data more than one year ago." Bodnar Extension Declaration ¶ 14. This assertion, of course, implicitly acknowledges that the other individual claimants purportedly represented by RKS may not have yet provided the necessary trading data, and, as recently as January 6, 2023, certain RKS Claimants continued to provide the Reorganized Debtors with additional requested trading information. Slack Declaration ¶7.

## II. THE SECURITIES MEDIATION PROCEDURES

The Securities Mediation Procedures (as defined in the Securities ADR Procedures) set forth multiple procedural and substantive requirements for mediations conducted pursuant to them. The Securities Mediation Procedures provide for two processes, an Abbreviated Mediation Process and a Standard Mediation Process (both as defined in the Securities ADR Procedures), the former of which is intended for "claims where the amounts at issue do not justify a more comprehensive mediation process." Securities ADR Procedures at 5:6-10. Regardless of which process is selected,

---

[1] Apparently, in response to the information requests, on May 24, 2021, ISS sent a letter (attached as **Exhibit 1** to the Slack Declaration) informing its clients for which it filed a bulk claim that it would take no further action with respect to their claims, including responding to trading data requests from the Reorganized Debtors.

it is the Reorganized Debtors who, "in their sole discretion, may designate [securities claims] for mandatory participation in either mediation process." *Id.* at 5:9-10.

Under the Standard Mediation Process, the mediation process is commenced when at least forty-two days'-notice of the mediation's date, time, location and identity of the mediator are provided by the Reorganized Debtors to the claimant. *Id.* at 10:2-12. Twenty-one days prior to the mediation, the claimant is required to provide a "settlement demand" and "pre-mediation statement" that "identif[ies] each cause of action or theory the [securities claimant] asserts, including a short and plain statement of the facts and law upon which the [securities claimant] relies for recovery and maintains entitle it to relief." *Id.* at 12:10-20. At the mediation itself, the claimant or an Authorized Representative (as defined in the Securities ADR Procedures), with "complete (and not limited) authority to settle without reversion to others not attending the Standard Mediation" is required to attend, in addition to counsel. *Id.* at 11:17-12:7. The mediation may be terminated by the mediator only "if the Mediator believes an impasse has been reached with respect to the [securities claims] at issue and, in the judgment of the Mediator, there is no reasonable opportunity to settle the claim in mediation." *Id.* at 13:7-12.

As discussed in more detail below, the Reorganized Debtors did not "designate [the RKS claims] for mandatory participation" in the Securities Mediation Procedures, and none of the parties invoked or followed the Securities Mediation Procedures in connection with the January 19, 2023 mediation (the "**Mediation**") between the Reorganized Debtors and RKS.

### III. RKS OPPOSES THE REORGANIZED DEBTORS' MOTION TO EXTEND

On October 25, 2022, the Reorganized Debtors filed a motion to extend the deadline to object to claims in the above-captioned chapter 11 cases (the "**Extension Motion**").[2] The Extension Motion sought additional time for the Reorganized Debtors to object to the remaining claims, so that the Reorganized Debtors could continue to try to resolve the remaining claims, including thousands of securities claims, either through the Securities ADR Procedures or through a class settlement

---

[2] *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 13122].

without the need for dozens of prophylactic objections in order to preserve the Reorganized Debtors' rights. Extension Motion at 10:3-11:13, 13:22-28.

On November 8, 2022, RKS filed identical objections and joinders to the Extension Motion on behalf of a number (but apparently only a small percentage) of their clients. *See, e.g.*, *The Kingstown Claimants' Objection to Reorganized Debtors' Fifth Extension Motion* [Docket No. 13163] (the "**RKS Objection**").

In the weeks prior to the filing of the RKS Objection, the Reorganized Debtors' counsel corresponded and spoke with RKS on several occasions in an effort to avoid wasteful motion practice before the Court. Although RKS nonetheless filed the RKS Objection, after extensive negotiations, RKS and the Reorganized Debtors reached an agreement on November 28, 2022, that RKS would withdraw the RKS Objection and joinders, that the extension sought in the Extension Motion would be reduced from 270 days to 180 days, and that RKS and the Reorganized Debtors would "pursue during the extension period the potential resolution of the RKS Claimants' claims." *Reorganized Debtors' Omnibus Reply in Further Support of Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Docket No. 13292] at n.2. The agreement did not contemplate application of the mediation provisions of the Securities ADR Procedures. The parties thereafter agreed to move quickly to set up a separate mediation. Slack Declaration ¶3.

On December 15, 2023, the Court entered the *Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and Granting Related Relief* [Docket No. 13363] (the "**Extension Order**"). The Extension Order, among other things, extended the Reorganized Debtors' claim objection deadline to June 20, 2023, without prejudice to further extensions. Extension Order at 2:18-22. The Extension Order also notes that the Reorganized Debtors agreed "to begin making settlement offers to securities claimants in January 2023 unless the Reorganized Debtors have executed a securities class action settlement agreement . . . ." *Id.* at 2:5-7.

Since the Court's entry of the Extension Order, the Reorganized Debtors have been diligent in moving the Securities ADR Procedures process forward according to the representations made to the Court. **Since the beginning of January the Reorganized Debtors already have sent out offers**

*with respect to more than 1,200 securities claims pursuant to the Securities ADR Procedures and the Reorganized Debtors are on track to make offers with respect to a total of approximately 3,000 claims (including the 1,200 already made) by the end of April 2023.* In short, the Reorganized Debtors have done precisely what they informed the Court they would do in connection with the Extension Order.

## IV. THE RKS CONFLICTS

The Reorganized Debtors agreed to mediate with the RKS Claimants with a mediator of RKS's choosing. The Reorganized Debtors entered the Mediation with several practical concerns. If the RKS Claimants sought to negotiate a single settlement amount that would then be apportioned among their various clients by RKS, this would create a substantial conflict situation, because the RKS Claimants (according to RKS) are comprised of 699 *individual* securities claimants, that all have different claims and potentially conflicting settlement interests. For example, some RKS Claimants assert securities claims based on their purchases of stock, others based on their purchases of debt, and some based on both. There are RKS Claimants that purchased all or most of their shares immediately following the North Bay Fires and/or the Camp Fire, at the height of investor speculation about PG&E's stock price. Those claims specifically are vulnerable to a loss causation defense because it is clear that they did not make their purchase decisions based on alleged misrepresentations regarding the safety practices of the Reorganized Debtors. These apparent conflicts among the RKS Claimants created a significant question as to whether negotiations could proceed based on a single number to be apportioned by RKS—as opposed to negotiations based on separate offers to each claimant.

These conflicts are typical among a putative class of securities claimants. Critically, however, the RKS Claimants are not a class and RKS is not class counsel. In a securities class action, lead counsel is appointed by a court for the entire class. Lead counsel then creates a plan to apportion a settlement among class members who have an opportunity to object or opt out, and that settlement and allocation plan then gets reviewed and approved by a court. Counsel to the RKS Claimants have no such guardrails: they are not class counsel with fiduciary duties to a class, they are not subject to

court oversight, and no plan of allocation will be approved by a court. These facts created significant hurdles for any mediation with RKS if the parties negotiated one lump sum settlement amount that would then have to be apportioned by RKS among its clients with conflicting interests with no guarantee any or all of RKS's claimed clients would have accepted the offer.

Despite these significant challenges, the Reorganized Debtors spent significant time and resources preparing for the Mediation and attended the Mediation with representatives of the Reorganized Debtors who had authority to make settlement offers to the RKS Claimants. The parties are not permitted, pursuant to the mediation privilege, to discuss any of the substance of the Mediation, but the Reorganized Debtors came prepared to negotiate in good faith and attempted to work through the unique concerns that the Reorganized Debtors considered prior to the Mediation. Slack Declaration ¶4.

The Mediation was terminated at the end of the very first day at the request of RKS. RKS's chosen mediator agreed to terminate the Mediation without any discussion concerning termination with the Reorganized Debtors. Slack Declaration ¶¶5-6. Of course, there is no indication that the mediator applied the standard required by the Securities ADR Procedures in deciding to terminate the Mediation, which was appropriate because the Mediation was not conducted pursuant to the Securities ADR Procedures. The Reorganized Debtors were and remain willing to continue mediating with RKS and to continue to work to resolve issues raised prior to and during the Mediation despite its termination at RKS's request.

### V. POST MEDIATION

On February 6, 2023, the RKS Claimants filed the Motion. Two days later, RKS, on behalf of a functionally identical group of claimants, filed a motion to intervene in the District Court Securities Litigation. This initial motion was rejected by the District Court and refiled. *See* February 15, 2023 *Movant Plaintiffs' Motion to Intervene and Memorandum of Points and Authorities in Support Therein* (the "**RKS Motion to Intervene**.") (attached as **Exhibit 2** to the Slack

Declaration).³ The RKS Motion to Intervene seeks permission for those claimants represented by RKS to intervene in the District Court Securities Litigation in order to oppose an effort by the lead plaintiffs in that action to dissolve the stay currently in place in that action and, in RKS's own words, to "disrupt" any class settlement of the action. RKS Motion to Intervene at 1:5-17 ("The Movants seek to disrupt a coordinated tactic . . . to dispose of this Action without the participation of, or consent from, the Movants. . . .").

The RKS Claimants' admitted efforts to "disrupt" a class settlement of the District Court Securities Litigation are wholly improper and self-serving. As the Reorganized Debtors have previously informed the Court, any class settlement would be subject to the approval of both the District Court and this Court, and each and every RKS Claimant would have the opportunity to review the class settlement on the merits and decide whether to accept the settlement or opt-out. Thus, no RKS Claimant would be prejudiced by a class settlement because each claimant could simply opt-out.

Moreover, the Reorganized Debtors' efforts to settle the securities claims are continuing, separate and apart from the ongoing negotiations with PERA to resolve the District Court Securities Litigation. Notwithstanding RKS's termination of the Mediation, the Reorganized Debtors look forward to attempting to settle the RKS Claimants' claims on a claimant-by-claimant basis through the Securities ADR Procedures. In the coming weeks and months, the Reorganized Debtors will make offers to individual claimants represented by RKS, just as they are with other claimants not represented by RKS, pursuant to the Securities ADR Procedures (assuming no class settlement is reached). If the claims of some of the RKS Claimants remain unresolved, the Reorganized Debtors will then decide whether to institute mandatory mediation on a claimant-by-claimant basis under the Securities ADR Procedures, at which Authorized Representatives with complete authority to settle will be required to be present to mediate. None of these important procedures have yet to be

---

³ On February 15, 2023, the District Court struck, without prejudice, the initial RKS motion to intervene on the grounds that none of the attorneys on the motion was a member of the bar of the United States District Court for the Northern District of California. *See* February 15, 2023 *Order Striking Motion to Intervene* (attached as **Exhibit 3** to the Slack Declaration). On the same day, RKS refiled the motion with new co-counsel.

employed with respect to the RKS Claimants, and the Reorganized Debtors remain confident that some or all of the RKS Claimants' claims could be resolved utilizing these procedures on a claimant-by-claimant basis. The Court should not short-circuit the Securities ADR Procedures by granting the Motion.

**ARGUMENT**

**I. THE RKS CLAIMANTS' DESIRED RELIEF IS CONTRARY TO THE SECURITIES ADR PROCEDURES AND THE EXTENSION ORDER**

In the Motion, the RKS Claimants misleadingly contend that the "ADR Procedures provide for a deadline of sixty days from the failure of a mediation for Reorganized Debtors to object to claims that were the subject of the failed mediation." Motion at 11:5-6. The plain language of the cited provision says no such thing. Instead, the provision states that the "deadline to object to the Subordinated Securities Claims under Section 7.1 of the Plan shall be ***automatically extended*** until sixty (60) days after the termination of the Securities ADR Procedures." Securities ADR Procedures at 13:21-23 (emphasis added). Even if this provision were not abundantly clear, the subsequent sentence explicitly dispels any confusion: "For the avoidance of doubt, this provision ***in no way shortens*** the deadline to object to the Subordinated Securities Claims under Section 7.1 of the Plan." *Id.* at 13:23-25 (emphasis added). This provision was designed to make it clear that the Reorganized Debtors always have until at least the claim objection deadline provided in Section 7.1 of Plan, as extended in subsequent orders by the Court, to object to claims, but that this objection deadline is nevertheless automatically extended, if applicable, to provide the Reorganized Debtors sufficient time to object to a claim after the conclusion of a mediation conducted under the Securities ADR Procedures. Thus, under the Securities ADR Procedures, the deadline to object to a claimants' claims is the ***later*** of: a) the deadline set by the Court pursuant to Section 7.1 of the Plan; or b) sixty days after the mediation is terminated pursuant to the Securities ADR Procedures.

The RKS Claimants also misleadingly contend that counsel for the Reorganized Debtors somehow confirmed RKS's position during oral argument on the Extension Motion. *See* Motion at 11:44-21. At the November 30, 2022 hearing, the Court asked counsel for the Reorganized Debtors to confirm there is "nothing in the settlement procedures that fixes the deadline for filing objections,

though, right?" *See* November 30, 2022 Hearing Transcript (attached as **Exhibit 4** to the Slack Declaration) at 55:21-23. Counsel for the Reorganized Debtor responded that "the procedures actually deal specifically with deadlines once the procedures have been put in place and started" and that termination of a mediation under the Securities ADR Procedures provided a sixty-day deadline to object. *Id.* at 55:24-56:8. This is accurate as demonstrated above: once the claim objection deadline set by the Court has passed, there is an additional 60-day period to object to a claim after a mediation terminates.

Additionally, in the negotiations surrounding the Extension Motion and the parties' agreement to mediate, RKS insisted that the Reorganized Debtors reduce the requested claims objection deadline extension from 270 days to 180 days, subject to further extension. Slack Declaration ¶3. If the RKS Claimants had truly believed that the objection deadline for the Reorganized Debtors to object to the RKS Claimants' claims ran solely from the termination of any mediation, there would have been no reason at all for RKS to insist on a reduction of the claims objection deadline extension request. RKS obviously recognized that the claim objection deadline established by the Court in the Extension Motion governs the Reorganized Debtors' time to object to the RKS Claimants' claims.

Pursuant to the Extension Order, the deadline for the Reorganized Debtors to object to claims is June 20, 2023, three full months after the objection date now demanded by the RKS Claimants. This period is subject to further extension upon a motion by the Reorganized Debtors. There is absolutely no basis to disturb the plain language of the Securities ADR Procedures or reconsider the Extension Order.

**II. THE REORGANIZED DEBTORS' MEDIATION WITH THE RKS CLAIMANTS WAS NOT CONDUCTED PURSUANT TO THE SECURITIES ADR PROCEDURES**

Tellingly, the RKS Claimants *never* actually assert that the Mediation was conducted pursuant to Securities ADR Procedures. The reason for this is simple: it was not. As such, even if there were a 60-day objection period after a mediation conducted pursuant to the Securities ADR Procedures (which there is not), that 60-day period was never triggered.

The Securities Mediation Procedures, as established in the Securities ADR Procedures, provide for two types of mediation: "(i) the Abbreviated Mediation Process, presumptively for claims where

the amounts at issue do not justify a more comprehensive mediation process; and (ii) the Standard Mediation Process, typically for larger claims. Each process involves specified procedures appropriate to the size of the claim at issue. The Reorganized Debtors, in their sole discretion, may designate a Subordinated Securities Claim for mandatory participation in either mediation process." Securities ADR Procedures at 5:6-10.

Here, the Mediation with RKS was initiated pursuant to the resolution of RKS's objections to the Extension Motion and was conducted independent of the Securities Mediation Procedures. Indeed, virtually none of the procedures provided for in the Securities Mediation Procedures were implemented or followed.

For example, "[t]he Standard Mediation Process begins when the Reorganized Debtors send a Subordinated Securities Claimant the following materials . . . (i) notice that the Subordinated Securities Claim has been submitted to the Standard Mediation Process . . . ."). The parties never discussed or agreed to any such notice, and especially not 699 notices, and none were ever sent. *See* Slack Declaration ¶4.

Next, the mediator was not selected from a panel of mediators designated for the Securities Mediation Procedures. *See* Securities ADR Procedures at 10:22-11:6. Instead, the Reorganized Debtors agreed to a mediator selected by the RKS Claimants.

Additionally, the Securities Mediation Procedures provide that the "Subordinated Securities Claimant and any counsel must appear at the Standard Mediation" and that "[i]f a person or entity, other than the Subordinated Securities Claimant, filed the Subordinated Securities Claim on behalf of the Subordinated Securities Claimant, that person or entity must also appear at the Standard Mediation. If the Subordinated Securities Claimant is not a natural person, an authorized representative must appear at the Standard Mediation (the "**Authorized Representative**"). Unless otherwise agreed by the Reorganized Debtors, the Authorized Representative must have complete (and not limited) authority to settle without reversion to others not attending the Standard Mediation." Securities ADR Procedures at 11:17-1, 12:1-7. As the RKS Claimants set forth in the Motion, they are comprised of "699 *individual* Securities Claimants." Motion at 1:8 (emphasis added). Although the Reorganized Debtors appeared at the Mediation with representatives authorized to make settlement offers, the RKS

Claimants did not attend the Mediation with a single authorized representative on behalf of any of the RKS Claimants, with complete settlement authority, as would be required by the Securities Mediation Procedures.

The structure of the Mediation also did not comply with the Securities Mediation Procedures, which require a claimant, 21 days prior to the mediation, to provide both a settlement demand and an opening statement that must "identify each cause of action or theory the Subordinated Securities Claimant asserts, including a short and plain statement of the facts and law upon which the Subordinated Securities Claimant relies for recovery and maintains entitle it to relief." Securities ADR Procedures 12:12-17. The Reorganized Debtors received neither a settlement demand nor an opening statement from any of the RKS Claimants 21 days prior to the Mediation. Slack Declaration ¶4.

Finally, under the Securities Mediation Procedures, the mediator is supposed to terminate the mediation only if "the Mediator believes an impasse has been reached with respect to the Subordinated Securities Claim(s) at issue, and, in the judgment of the Mediator, there is no reasonable opportunity to settle the claim in mediation." Securities ADR Procedures at 13:9-13. The Reorganized Debtors did not seek to terminate the Mediation and the Reorganized Debtors remain willing to continue to try to work through the conflicts issues unique to the RKS Claimants group. Instead, the Mediation was terminated at the request of the RKS Claimants and there is no indication the mediator knew of or was applying the Securities ADR Procedures standard in terminating the Mediation. Indeed, the Reorganized Debtors do not agree that the one-day Mediation foreclosed any reasonable opportunity to settle in mediation. On the contrary, the Reorganized Debtors were, and remain, willing to mediate the RKS Claimants' claims in good faith.

In sum, it is readily apparent that the Mediation was conducted, from its inception, explicitly outside of, rather than pursuant to, the Securities Mediation Procedures. The Reorganized Debtors and the RKS Claimants followed none of the fundamental provisions for mediations provided for in the Securities ADR Procedures, especially the requirement to have authorized representatives with settlement authority at the mediation.

Under these circumstances, the accusation that the Reorganized Debtors acted in bad faith is patently absurd. In fact, it is far more likely that the RKS Claimants agreed to, and then prematurely

terminated, the Mediation based on their mistaken belief that doing so would allow them to somehow seek acceleration of the litigation of their claims ahead of other securities claimants. Rewarding such conduct would set a bad precedent that would encourage parties to attempt to prematurely terminate mediations, which would undermine the Securities ADR Procedures set by the Court. The RKS Claimants' Motion improperly seeks to subvert the Securities ADR Procedures, not enforce them, and should be denied.

## CONCLUSION

For the foregoing reasons, the Reorganized Debtors respectfully request that the Court deny the Motion.

Dated: February 21, 2023

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

*/s/ Richard W. Slack*
Richard W. Slack
*Attorneys for the Debtors and Reorganized Debtors*