ROLNICK KRAMER SADIGHI LLP
Lawrence M. Rolnick (*pro hac vice*)
lrolnick@rksllp.com
Marc B. Kramer (*pro hac vice*)
mkramer@rksllp.com
Michael J. Hampson (*pro hac vice*)
mhampson@rksllp.com
Richard A. Bodnar (*pro hac vice*)
rbodnar@rksllp.com
Frank T.M. Catalina (*pro hac vice*)
fcatalina@rksllp.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

ST. JAMES LAW, P.C.
Michael St. James, CSB No. 95653
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

*Attorneys for the RKS Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>Chapter 11<br><br>**THE RKS CLAIMANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO ENFORCE THE ADR PROCEDURES ORDER AND ESTABLISH A MARCH 20, 2023 DEADLINE TO OBJECT TO THE RKS CLAIMANTS' CLAIMS**<br><br>**Hearing Information:**<br>Date: March 7, 2023<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Telephone or Video Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

i

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

    I.    EQUITY AND EFFICIENCY REQUIRE THAT REORGANIZED DEBTORS SHOULD EITHER OBJECT TO OR ALLOW THE RKS CLAIMANTS' CLAIMS FOLLOWING THE FAILED MEDIATION ......................................... 4

        A.    Reorganized Debtors' Acted in Bad Faith in the Mediation and the Claims Allowance Process Should Not be Further Delayed ................................... 4

        B.    The RKS Claimants' Claims Are Ripe For the Claims Allowance Process 6

        C.    Reorganized Debtors' Class Negotiations Should Have No Bearing on the RKS Claimants' Claims Resolution Process ........................................... 10

    II.    THE ADR PROCEDURES ORDER APPLIES AND REQUIRES A MARCH 20, 2023 OBJECTION DEADLINE AS TO THE RKS CLAIMANTS ..................... 12

CONCLUSION ............................................................................................................................. 15

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

# TABLE OF AUTHORITIES

Page

**Cases**

*Cadeaux v. Doe Nos. 1-5,*
　2022 WL 203390 (D. Nev. Jan 24, 2022) ................................................................................ 7

*Grewal v. Jammu,*
　191 Cal. App. 4th 977, 119 Cal. Rptr. 3d 835 (2011) ............................................................. 7

*In re Rodriguez,*
　2013 WL 6697839 (9th Cir. B.A.P. Dec. 19, 2013) ................................................................ 7

*Katchen v. Landy,*
　382 U.S. 323 (1966) ................................................................................................................. 8

*N.L.R.B. v. Bildisco and Bildisco,*
　465 U.S. 513 (1984) ................................................................................................................. 8

*Taggart v. Lorenzen,*
　139 S. Ct. 1795 (2019) ............................................................................................................. 8

**Other Authorities**

H.R. Rep. 95-595 (1977) ............................................................................................................... 8

**Rules**

Fed. R. Bank. P. 1001 ............................................................................................................. 1, 2

The RKS Claimants[1] hereby submit this Reply (the "**Reply**") in Further Support of Their Motion to Enforce the Order Approving Securities ADR and Related Procedures For Resolving Subordinated Securities Claims (the "**ADR Procedures Order**") [Dkt. No. 10015] and to enter an order establishing March 20, 2023 as the deadline for Reorganized Debtors to object to the RKS Claimants' claims (the "**Motion**") [Dkt. No. 13492]. Contemporaneously herewith, the RKS Claimants submit the Declaration of Frank T.M. Catalina, dated February 28, 2023 in further support of the Motion ("**Catalina Decl.**").

## **INTRODUCTION**

The rules of procedure in bankruptcy court "shall be construed, administered and employed by the court and the parties to secure the just, speedy and inexpensive determination of every case and proceeding." Fed. R. Bank. P. 1001. They are not to be used to foster years of delay and to make claimants stand on some imaginary "line" waiting to get justice. The RKS Claimants, along with nearly all other material securities claimants, have been waiting years either to negotiate resolution of their claims or resolve them through the claims allowance process. Reorganized Debtors have masterfully manipulated this process by representing to this Court that an individual claims-resolution process would be the most efficient and expeditious way to resolve the securities claims, and then ignoring that process for nearly two years, refusing to negotiate in good faith when forced to negotiate, and now by asking the Court to make individual claimants wait several more years while they reverse course and attempt to resolve claims through a class action procedure that has been twice rejected by this Court. Enough is enough. The Court should establish a March 20, 2023 deadline to object to or allow the RKS Claimants' claims.

Establishing the requested objection deadline is the only path to efficiently resolve the RKS Claimants' claims. In their objection to the Motion (the "**Objection**"), Reorganized Debtors assert the RKS Claimants abruptly ended the mediation – seemingly for no reason – and that they remain willing and able to mediate. This is untrue. The mediation was terminated because Reorganized Debtors stubbornly refused to accept the representation by RKS Claimants' counsel that it was

---

[1] Capitalized terms that are not defined herein have the same meaning as in the Motion.

authorized to negotiate a resolution of its clients claims. Reorganized Debtors asserted the same fallacious argument that they advance here – that counsel for the RKS Claimants cannot represent multiple clients and that only counsel for the class may do so. These assertions are especially laughable given Reorganized Debtors continued efforts to negotiate a settlement with PERA, class representative in the pending – and stayed – (uncertified) Class Action against Reorganized Debtors' former directors, officers, and underwriters, despite the putative class's conflicts. Indeed, in twice resisting class treatment of the securities claims in the Chapter 11 cases, and in successfully arguing for a stay of the Class Action, Reorganized Debtors have repeatedly hammered on PERA's conflicts with individual claimants, its lack of standing, and the risk of interference with the Plan and claims resolution process posed by the Class Action.

Given Reorganized Debtors' refusal to accept the representation by counsel for the RKS Claimants that it was authorized to negotiate settlement, the mediation could not move forward. As a result, the RKS Claimants are entitled to move forward with the claims allowance process. The RKS Claimants' claims have been pending for years and the effort to negotiate a resolution was made impossible. Allowing Reorganized Debtors to delay resolution of these claims indefinitely would violate the mandatory command of the Federal Rules of Bankruptcy Procedure – to administer and employ those rules to resolve claims against the debtor in a "speedy" and "inexpensive" manner in "*every* case and proceeding." Fed. R. Bankr. P. 1001 (emphasis added). With avenues for consensual resolution prior to objection having been exhausted, nothing remains to be done but to proceed with objecting to or allowing the claims.

Reorganized Debtors' unauthorized negotiations with alleged class representative PERA do not justify slowing the process of resolving the RKS Claimants' claims. Unlike RKS, which actually represents the RKS Claimants and is authorized to act on their behalf, PERA and class counsel *actually lack any authority* to negotiate on behalf of the RKS Claimants or to resolve their claims against Reorganized Debtors. The same is true for every securities claimant who has filed a proof of claim in conformity with the procedures adopted by this Court. The claims against the Reorganized Debtors that are asserted in the Class Action were *released* in the Plan and replaced

with a right to compensation set forth in the Plan following the claims allowance process. The only claims remaining in the Class Action (that were potentially not released) are those asserted against non-debtor directors, officers, and underwriters. Thus, any purported "class settlement" will presumably use the assets of Reorganized Debtors to resolve claims asserted against non-debtors and to compensate claimants who have not even filed proofs of claim against Reorganized Debtors. For this reason, among many more, any attempt to approve a purported class settlement will engender years of delay, while the time-consuming process of notice, objection, settlement approval and concomitant appeals drags on. Rather than forcing the RKS Claimants to wait several more years while Reorganized Debtors and class counsel attempt to use Reorganized Debtors' assets to compromise claims against non-debtors, this Court should continue the claims resolution process – determining how Reorganized Debtors' assets should be distributed to its creditors who have filed claims in accordance with the confirmed Plan.

Finally, as Reorganized Debtors' counsel clearly represented to the Court in November, the ADR Procedures "trigger" a sixty-day objection deadline after a mediation is terminated. The snippets of portions of this admission cited in the Reorganized Debtors' Objection obfuscate the plain colloquy counsel had with the Court. However, even if the ADR Procedures are ambiguous as to whether they require a sixty-day deadline, the Court should exercise its equitable powers to prevent further delay by Reorganized Debtors and set a March 20, 2023 deadline. Their Objection makes clear that Reorganized Debtors agreed to mediation simply to buy themselves an indefinite reprieve from having to address the RKS Claimants' claims. The Court should not allow further delay while the Reorganized Debtors pursue their ill-conceived plan to first attempt a class action settlement. The RKS Claimants' claims have been pending for several years and they are entitled to speedy and efficient resolution in this court. They should thus be allowed to proceed.

# ARGUMENT

## I. EQUITY AND EFFICIENCY REQUIRE THAT REORGANIZED DEBTORS SHOULD EITHER OBJECT TO OR ALLOW THE RKS CLAIMANTS' CLAIMS FOLLOWING THE FAILED MEDIATION

The RKS Claimants, like nearly every other securities claimant, have waited patiently for four years since the commencement of these Chapter 11 cases – and two years since the implementation of the ADR Procedures – to resolve their claims through either negotiation or the claims allowance process. As the RKS Claimants explained at length in both the Motion, and in the objection to Reorganized Debtors' *fifth* motion to extend the objection deadline, this unnecessary and unreasonable delay results solely from Reorganized Debtors' failure to proceed in accordance with the representations they made to this Court and the procedures it implemented.

It is now abundantly clear that the mediation offered by Reorganized Debtors in exchange for the RKS Claimants' withdrawing their objection to the fifth extension motion was simply another delay tactic. While Reorganized Debtors point the finger at the RKS Claimants, the truth is the mediation was terminated because Reorganized Debtors refused to accept the representation made by counsel for the RKS Claimants that it was authorized to negotiate settlements on their behalf. Reorganized Debtors advanced the same argument they make here – that negotiation on behalf of multiple clients is inherently "conflicted" and that only class counsel may do so. Given Reorganized Debtors' refusal to negotiate with the RKS Claimants' counsel, the only course forward is through the claims allowance process, as contemplated by the ADR Procedures and the Bankruptcy Code.

### A. Reorganized Debtors Acted in Bad Faith in the Mediation and the Claims Allowance Process Should Not be Further Delayed

The mediation between Reorganized Debtors and the RKS Claimants failed because Reorganized Debtors refused to negotiate in good faith. Reorganized Debtors imply in their Objection that the RKS Claimants abruptly terminated the mediation for unknown reasons while Reorganized Debtors remained willing to continue mediating with the RKS Claimants.[2] [Dkt. No.

---

[2] The RKS Claimants took pains not to divulge anything that occurred at the mediation in their Motion. However, given Reorganized Debtors assertion that the mediation "was terminated at

13528 at 7]. This is patently false. The mediation was terminated *only after* Reorganized Debtors refused to accept the representation of RKS Claimants' counsel that it was authorized to negotiate on behalf of its own clients. Catalina Decl. ¶ 5.

As Reorganized Debtors allude in their Objection, Reorganized Debtors feign disbelief as to whether RKS actually represents the RKS Claimants and has authority to negotiate on their behalf – as though gaining admission *pro hac vice*, appearing on behalf of those clients in several fora, entering into a mediation agreement, and representing authority to negotiate on behalf of those clients is not sufficient. [*See* Dkt. No. 13528 at 3 ("Reorganized Debtors, however, have never received any independent corroboration" that counsel for the RKS Claimants actually represent the RKS Claimants)]. However, and despite their purported disbelief, Reorganized Debtors indicated that they expected personal attendance at the mediation by nearly 700 individual claimants. Catalina Decl. ¶ 3. In any event, Reorganized Debtors' assertion that they "remain willing to continue mediating with RKS" rings hollow as Reorganized Debtors simply refuse to accept the representation that RKS has authority to negotiate on behalf of the RKS Claimants. [Dkt. No. 13528 at 7].

The purported "conflicts" Reorganized Debtors raise in their Objection are the very same as those they put forward at the mediation – only class counsel can negotiate on behalf of multiple clients. Reorganized Debtors' argument that they can only negotiate a global settlement with the twice-rejected class, but not with RKS on behalf of the RKS Claimants, is nonsensical. Reorganized Debtors characterize as a "conflict" that counsel for the RKS Claimants "are not class counsel with fiduciary duties to a class, they are not subject to court oversight …." [Dkt. No. 13528 at 6-7]. This elides the plain fact that court "oversight" of our settlement is unnecessary because RKS – unlike class counsel – ***actually represents*** and has attorney-client relationships with the RKS Claimants, owing them direct fiduciary duties. Indeed, Reorganized Debtors have spoken out of both sides of their mouths throughout these proceedings in repeatedly taking the

---

the end of the very first day at the request of RKS," and its related assertions about the cause and manner of the mediation's termination, Reorganized Debtors have opened the door as to the circumstances of the mediation's termination.

position before this Court that PERA is conflicted, cannot protect the interests of individual claimants, and that individual claimants can address their own claims with their own counsel – as the RKS Claimants are attempting to do. [*See, e.g.*, Dkt. No. 10668 (Reorganized Debtors' reply in support of an omnibus objection) at 9 ("[T]he Court has found that securities claimants are more than able to address their own claims in the Chapter 11 cases. … The Court also recognized the unresolved issues surrounding PERA's numerous conflicts in attempting to represent claimants in these Chapter 11 Cases as the same time it seeks to act as class counsel in a separate District Court action.")]. *See also* 2/6/23 Bodnar Decl. [Dkt. No. 13493], Ex. 2 at 44:9-23 ("The idea that we are going to displace [individual claimants'] counsel and them and their judgment for PERA's judgment is just not appropriate."). Reorganized Debtors pretextual concerns are further belied by the fact that they never requested individual demands from each of the nearly 700 RKS Claimants, nor have they at any time attempted to negotiate on that basis with counsel for the RKS Claimants. Catalina Decl. ¶¶ 3, 6.

Reorganized Debtors refused to mediate in good faith, and their purported concerns about "conflicts" are both baseless and pretextual – especially given their previous arguments about the importance of allowing individual claimants to pursue their claims with counsel of their choosing. Further bad faith mediation will simply result in additional delay and will do nothing to resolve the RKS Claimants' claims at this time.

### B. The RKS Claimants' Claims Are Ripe For the Claims Allowance Process

The RKS Claimants' claims are ripe for the claims allowance process and should be allowed to proceed. As the RKS Claimants have recounted at length in the Motion (and the previous objection to the Fifth Extension Motion), Reorganized Debtors insisted both to this Court and to the District Court that the most expeditious way to resolve the securities claims against Reorganized Debtors was to require each claimant to file a proof of claim, employ the ADR Procedures and, if those failed, to proceed with the claims allowance process. This Court and the District Court agreed with Reorganized Debtors, eschewed proposed class procedures, and imposed a procedure with which the RKS Claimants have complied. As has also been recounted

at length, Reorganized Debtors did not comply with the process they put in place, instead unilaterally delaying resolution of all but the most insignificant securities claims for more than a year, and then secretly entering into negotiations with the very class it opposed. When Reorganized Debtors revealed their undisclosed and ill-conceived plan – and sought more time to pursue it – certain of the RKS Claimants opposed the Fifth Extension Motion. They subsequently withdrew their objection when Reorganized Debtors offered to mediate with the RKS Claimants in good faith. With the mediation having failed due to Reorganized Debtors' refusal to negotiate in good faith, nothing remains but to resolve the claims through the claims allowance process.

The ADR Procedures (which apply as discussed below) provide that if a mediation is terminated by the mediator, as happened here, the mediated claims "shall be resolved through the claims reconciliation and objection process before the Bankruptcy Court …." [Dkt. No. 10015-1 at 13]. Thus, the ADR process that has been established at Reorganized Debtors' request contemplates that, following a failed mediation, claims must be allowed to proceed through the claims allowance process. That is the only result consistent with Fed. R. Bankr. P. 1001. Through this Motion, the RKS Claimants merely seek to establish a deadline by which Reorganized Debtors object to (or allow) their claims, consistent with the process set forth in the ADR Procedures.

As of the filing of this Reply, it will have been 792 days since the initial December 28, 2020 claims objection deadline established by confirmation of the Plan. "As the adage goes: 'Justice delayed is justice denied.'" *In re Rodriguez*, 2013 WL 6697839, at *8 (9th Cir. B.A.P. Dec. 19, 2013). "'A lesser known saying, known to be attributable to prominent defense lawyers from major law firms, is that 'Justice delayed is justice [for the defendants].'" *Cadeaux v. Doe Nos. 1-5*, 2022 WL 203390, at *3 n. 1 (D. Nev. Jan 24, 2022) (quoting *Grewal v. Jammu*, 191 Cal. App. 4th 977, 999, 119 Cal. Rptr. 3d 835, 852 (2011)). Counsel for Reorganized Debtors have, to this point, masterfully employed the defensive tactic of delay to their advantage. As the Court has recognized, this delay was caused by Reorganized Debtors' dragging their feet and picking off low-hanging fruit the last two years. And now, because it furthers their goal of avoiding material

securities claims, Reorganized Debtors have reverted to secret, unauthorized negotiations with class counsel.

The Court should stay true to the underlying mandate of bankruptcy rules to facilitate the just, speedy and inexpensive resolution of all claims. It should not allow Reorganized Debtors make claimants "wait in line" while they pursue dilatory tactics. [*See* Dkt. No. 13528 at 8 (explaining that, after the failed mediation, Reorganized Debtors plan to restart the process with the RKS Claimants by making offers to selected claimants, and then purportedly forcing the RKS Claimants into "mandatory mediation" a second time – "assuming no class settlement is reached")]. The continual delay contemplated by Reorganized Debtors is inequitable and contrary to the purpose and aims of the Bankruptcy Code. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803 (2019) ("'a chief purpose of the bankruptcy laws' [is] 'to secure a prompt and effectual' resolution of bankruptcy cases 'within a limited period.'") (quoting *Katchen v. Landy*, 382 U.S. 323, 328 (1966)); *see also* H.R. Rep. 95-595 at 5975 (1977) (Bankruptcy Reform Act of 1978 Legislative History) ("Speed and efficiency in bankruptcy is also essential, because delay only operates to devalue assets, hinder financial rehabilitation, and prevent exercise [of] rights."). Indeed, the Bankruptcy Reform Act of 1978, which established Chapter 11 of the Bankruptcy Code, was passed "with the intention that business reorganizations should be quicker and more efficient and provide greater protection to the debtor, creditors, and the public interest." *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 517 n.1 (1984). Reorganized Debtors' attempted war of attrition unfairly prejudices the RKS Claimants, who, as explained in the Motion, continue to carry significant credit and market risk (in addition to being denied recovery which they are due) while they await resolution of their claims.

Incredibly, Reorganized Debtors' characterize the RKS Claimants' Motion to establish an objection deadline as an attempt to "cut the line." [Dkt. No. 13528 at 1]. But there is no "line" on which bankruptcy claimants are required to wait. The RKS Claimants merely seek a prompt, efficient and expeditious resolution of their claims – as they are entitled to under the Bankruptcy Code and the Plan. The idea that there is some "line" consisting of thousands of unidentified

claimants who must go before the RKS Claimants is an invention of the Reorganized Debtors with no support in the Bankruptcy Code or Plan. This Court has, in the administration of Reorganized Debtors' Chapter 11 cases, set different objection deadlines for different parties based on the posture of their claims and the efforts to resolve the claims with Reorganized Debtors. [*See, e.g.*, Dkt. No. 10480 at 1 (3/31/21 CAL FIRE limited objection to motion to extend deadline to object to claims explaining that "[w]hile the parties have exchanged information about the CAL FIRE claims and are making some progress towards final resolution of the claims, progress has been unacceptably slow."); Dkt. No. 10494 (Order extending deadline to object to claims to December 23, 2021, but setting September 30, 2021 deadline to object to CAL FIRE claims)].

*Second*, the Reorganized Debtors are actually trying to push the twice-rejected class to the front of "the line." Reorganized Debtors make no secret of the fact that, after vigorously advocating for an individual claims resolution process, they now wish to move PERA to the front of the line to negotiate a class settlement, before individual claimants may pursue their own claims. Nothing in the Plan or the prior decisions of this Court supports such a process. Reorganized Debtors repeatedly represented to the Court that PERA was unable to negotiate on behalf of claimants and a class procedure was twice rejected by this Court.

*Third*, unlike other claimants, the RKS Claimants have attempted to mediate their claims. The mediation failed because Reorganized Debtors have taken the position that RKS is not authorized to negotiate settlement on behalf of its clients and – even if it is – it has irreconcilable conflicts that can only be solved through a class settlement. Given the imposition of conditions that can never be satisfied, the RKS Claimants now seek to move forward with the claims allowance process.

With mediation having failed – and subjected to conditions that cannot be met – it is time for Reorganized Debtors to state their actual objections to the RKS Claimants' claims. Doing so is not only equitable and necessary, but will advance, rather than impede, further efforts at resolving the claims. Putting Reorganized Debtors' objections in the record will allow the RKS

Claimants to better evaluate their claims, which can only aid in moving the claims toward resolution.

### C. Reorganized Debtors' Class Negotiations Should Have No Bearing on the RKS Claimants' Claims Resolution Process

After delaying the ADR process for years by dragging their feet and picking off low hanging fruit, Reorganized Debtors have now been delaying the ADR and claims resolution processes for approximately ten months (five of them hidden from the Court and claimants) to negotiate a secret class settlement. This ill-conceived tactic does not justify further delaying claims resolution. The hypothetical future class settlement Reorganized Debtors continue to rely on to justify further delay is not authorized by any court, and, as explained below, faces numerous hurdles and lengthy proceedings before it might become effective. Despite Reorganized Debtors' pretextual doubts concerning RKS's authority to negotiate **on behalf of its clients**, it is in fact PERA that has no authority to negotiate on behalf of claimants who filed individual proofs of claim. In contrast, and as discussed above, RKS has actual authority to represent the RKS Claimants who have filed claims that have been pending for years and are ripe for resolution.[3]

Even if a purported class settlement is reached, it will face significant challenges that are likely to tie it up on court for years, which will further delay and add expense to the claims resolution process. Both this Court and the District Court have determined (and both at the urging of Reorganized Debtors) that claims against Reorganized Debtors should be handled through the individual claims resolution process. On April 29, 2021, in deference to this Court's entry of the ADR Procedures Order, the District Court indicated its intent to stay the Class Action *sua sponte*. *See* Catalina Decl., Ex. 1. Reorganized Debtors responded to PERA's objection to the proposed stay, arguing that the District Court should stay the Class Action (in which Reorganized Debtors are no longer parties as a result of Plan confirmation) in part because failure to impose a stay would violate the "injunction against interference with the Plan, *including the claims resolution*

---

[3] Reorganized Debtors, in keeping with their pretextual refusal to mediate in good faith with the RKS Claimants, feign confusion as to how why 272 of the 699 RKS Claimants had their proofs of claim filed by counsel for the RKS Claimants. The answer is simple and obvious: the remainder retained RKS after filing their proofs of claim.

*process*," and because PERA was attempting to "re-litigate Judge Montali's rulings" denying class treatment of the claims. *Id.*, Ex. 2 at 1, 3 (emphasis added). As Reorganized Debtors urged it to do, the District Court stayed the Class Action "pending resolution of the bankruptcy proceedings." *Id.*, Ex. 3 at 1. Thus, the claims resolution process in the Chapter 11 cases must be completed before the pending Class Action against Reorganized Debtors' former officers, directors, and underwriters can be finally resolved – not the other way around. Accordingly, holding up the claims resolution process is unwarranted and contrary to the orders that have been entered both by this Court and the District Court.

Further, the Class Action asserts claims solely against non-debtors, and the claims against Reorganized Debtors can only be resolved in the bankruptcy proceedings. Pending claims against Reorganized Debtors were released in the Plan and replaced with the provisions in the Plan for payment of allowed claims. Any purported "class" settlement, then, would be a means to use Reorganized Debtors' assets and insurance proceeds to settle claims against non-debtors for the benefit of absent class members who have not filed proofs of claim. Such a result would be antithetical to the very purpose of a Chapter 11 proceeding. In addition, this result would render illusory the purported "opt-out" right Reorganized Debtors claim the RKS Claimants could pursue if they attempt a class settlement. [*See* Dkt. No. 13528 at 8]. Under Reorganized Debtors' proposed scheme, any claimant opting out will have to pursue its claim against Reorganized Debtors after they funnel hundreds of millions of dollars of Reorganized Debtors' assets to ***non-claimants*** (and class counsel) to settle claims against ***non-debtors***. Those assets should be preserved for the benefit of, and used to resolve, filed claims against Reorganized Debtors. For these and numerous other reasons, legal challenges to any class settlement are likely to drag on for years. In addition, the notice period, objection period, approval period and administration period will also result in substantial additional delay and that is before any settlement approval (or likely disapproval) is appealed to the Ninth Circuit or even the Supreme Court.

The RKS Claimants' claims have been pending for years, they are ripe, and efforts to mediate them have failed, as Reorganized Debtors have refused to recognize RKS's authority or

ability to negotiate on behalf of its clients. Reorganized Debtors' purported efforts to settle a collateral litigation (which no longer asserts claims against Reorganized Debtors) do not justify Reorganized Debtors further delay of the claims allowance process.

## II. THE ADR PROCEDURES ORDER APPLIES AND REQUIRES A MARCH 20, 2023 OBJECTION DEADLINE AS TO THE RKS CLAIMANTS

Reorganized Debtors seek to further delay resolution of the RKS Claimants' claims by arguing that, because the parties agreed on specific terms of their mediation that differed from terms set forth in the ADR Procedures, the mediation "was not conducted pursuant to the Securities ADR Procedures." [Dkt. No. 13528 at 10-13]. Reorganized Debtors are incorrect. ***All*** subordinated securities claims – except for PERA's and those of other Class Action lead plaintiffs, which are expressly excluded – are subject to the ADR Procedures Order by their plain terms. [*See* Dkt. No. 10015-1 "Claims Subject to the Securities Claims Procedures" §§ A, B].

That the parties agreed to certain individually-tailored terms regarding the mediation procedure did not remove the mediation from the auspices of the ADR Procedures Order, or relieve Reorganized Debtors of their duties thereunder. Section IV.D of the ADR Procedures allows for Reorganized Debtors and claimants to "enter into a written agreement, without further approval of the Bankruptcy Court, to modify the foregoing Securities ADR Procedures at their mutual discretion." *Id.* at 14. That is precisely what happened here. As the ADR Procedures specifically contemplate, Reorganized Debtors and the RKS Claimants agreed to certain bespoke terms for their mediation, a practical necessity given the volume of claims (and magnitude of damages) being mediated. The RKS Claimants then provided Reorganized Debtors with their damages model, and the parties exchanged lengthy mediation statements identifying their respective claims and defenses, and the strengths and weaknesses thereof. Catalina Decl. ¶ 4. As outlined above, the mediation failed when Reorganized Debtors refused to accept the representation by RKS that it had authority to negotiate settlement on behalf of its clients. *Id.* ¶ 5.

Per the ADR Procedures, the next step after failed mediation is to proceed with the claims allowance process. [Dkt. No. 10015-1 at 13 ("If any Subordinated Securities Claim[] is not settled through the Standard Mediation Process and the mediation is terminated by the Mediator, then the

Subordinated Securities Claim shall be resolved through the claims reconciliation and objection process before the Bankruptcy Court ….")]. Next steps do ***not*** include making new settlement offers under the ADR Procedures and re-mediating, as Reorganized Debtors suggest they will attempt to do with the RKS Claimants. [*Compare id.* with Dkt. No. 13528 at 8-9 (stating Reorganized Debtors will invoke ADR Procedures to force certain RKS Claimants to re-mediate their claims)]. Of course, nothing is stopping Reorganized Debtors from making an offer if they choose to do so. But neither the ADR Procedures nor any other authority would allow Reorganized Debtors to "re-start" the ADR Procedures, after inducing the RKS Claimants to invest significant resources and expenses preparing for and attending the failed mediation. Allowing Reorganized Debtors to proceed in this way would render the mediation nothing more than a dilatory tactic to be used by Reorganized Debtors to waste the RKS Claimants' time and resources while doing nothing to progress the resolution of their claims.

Finally, as counsel for Reorganized Debtors represented to the Court, the ADR Procedures (which counsel for Reorganized Debtors authored) establish a sixty-day deadline to object to the RKS Claimants' claims following the failed mediation. Although Reorganized Debtors, in their Objection, use snippets of the exchange to try and walk-back their counsel's statements, counsel clearly acknowledged on the record that an unsuccessful mediation triggers a sixty-day deadline to object to those claims in the following fulsome discussion:

> THE COURT: Well, and let me interrupt.
>
> And Mr. Slack, remind me, under the settlement procedures, that I approved for the class, was Ms. DiCicco right that there's a thirty-five day time to respond to any settlement offer?
>
> MR. SLACK: Yeah, so the way the procedures work, Your Honor, is there's some different date triggers for some different types of procedures because there's, obviously, the offer process and the mediation process. So the offer process has thirty-five days to respond, twenty-one days if there's a counter offer for the debtors to respond, and of course, that process can continue as long as the parties are doing –
>
> THE COURT: Okay. Okay.
>
> MR. SLACK: And then, ***there's a separate thing for the mediation because the claims can be mediated.*** And –

> THE COURT: Right. But – that's the entire consensual resolution. There's nothing in the settlement procedures that fixes the deadline for filing objections, though, right?
>
> MR. SLACK: That is – when you say fixes, there are in fact – ***there are in fact a deadlines get triggered [sic] by the conclusion of the two processes, the offer process and the mediation process, for the debtors to file an objection***. So the procedures actually deal specifically with deadlines once the procedures have been put in place and started. ***There are actually objection deadlines that get triggered*** –
>
> THE COURT: Okay. What's the – ***what is the deadline when the mediation has ended unsuccessfully***?
>
> MR. SLACK: ***I think it's sixty days, Your Honor.***
>
> THE COURT: Okay. See, now we're –
>
> MR. SLACK: But the procedures specifically say that sixty days after the termination of the procedure. ***So sixty days after the termination of the mediation procedures, for example, would trigger the debtor's obligation to object.***

2/6/23 Bodnar Decl. [Dkt. No. 13493], Ex. 4 at 55:5-56:13 (emphasis added). Thus, as the full exchange makes clear, counsel for Reorganized Debtors clearly represented to the Court that, under the ADR Procedures, "deadlines get triggered" by the conclusion of the mediation process, and the objection deadline is sixty days after an unsuccessful mediation. Reorganized Debtors' citation of the ADR Procedures' language that "this provision in no way shortens the deadline to object to the Subordinated Securities Claims under Section 7.1 of the Plan" is irrelevant. The RKS Claimants ask the Court to acknowledge the deadline as to ***their claims*** has been triggered – not that the objection deadline has been modified as to "the Subordinated Securities Claims" generally.

Finally, even if the provision Reorganized Debtors' counsel described as "trigger[ing]" an objection deadline is ambiguous as to whether it in fact does so, the Court is directed to "construe" its procedures in a manner that results in the speedy and inexpensive resolution of claims. Fed. R. Bankr. P. 1001. The Court should thus construe or modify the ADR Procedures, or impose sanctions for violation thereof, to fix a March 20, 2023 objection deadline as to the RKS Claimants' claims. Though Reorganized Debtors argue that the ADR Procedures did not apply to the mediation (and they apparently get a re-do for that reason), and that the ADR Procedures do not trigger an objection deadline, they do not directly respond to the RKS Claimants' argument that

fixing a March 20, 2023 deadline is equitable and necessary. There is no response. The RKS Claimants have filed claims, retained counsel, provided extensive information to Reorganized Debtors, and attempted to mediate their claims. Reorganized Debtors delayed addressing the RKS Claimants until they no longer could, then induced the RKS Claimants to enter into a mediation, only for Reorganized Debtors to refuse to acknowledge the authority of RKS to negotiate on behalf of its clients. Absent action by the Court, Reorganized Debtors have made clear they will keep the RKS Claimants on a never-ending merry-go-round to nowhere. Further delay will continue to unfairly prejudice the RKS Claimants with no justification. The Court should administer this proceeding to allow a just, speedy and inexpensive resolution of the RKS Claimants claims and order Reorganized Debtors to object to (or allow) the RKS Claimants' claims by March 20, 2023.

## CONCLUSION

For the foregoing reasons, the RKS Claimants respectfully request that the Court order Reorganized Debtors to object to, or allow, the RKS Claimants' claims no later than March 20, 2023.

Dated: February 28, 2023    ROLNICK KRAMER SADIGHI LLP

By:  */s/ Richard A. Bodnar*

*Attorneys for the RKS Claimants*