SPIRO JANNINGS
1304 Shortridge Ave. Unit C
San Jose, CA 95116
408-292-0646
Spiro@redlineracingcams.com

CREDITOR/CLAIMANT, *In Propria Persona*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| In re: | Bankruptcy Case No.: **19-30088 (DM)** |
|---|---|
| PG&E CORPORATION, | Chapter 11 |
| - and - | (Lead Case) (Jointly Administered) |
| PACIFIC GAS AND ELECTIC COMPANY, | **CLAIMANT`S RESPONSE TO DEBTOR'S OPPOSITION TO CREDITOR'S OMNIBUS MOTION FOR RELIEF FROM FINAL ORDER DISMISSING CREDITO'S CLAIM NO. 58462, FILED OCTOBER 17, 2019** |
| Debtors. | |
| Affects both Debtors | Reference to Docket Entries: 13455, 13456, 13464 and **13524** |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Hearing:<br>Date: March 7, 2023<br>Time: 10:00 AM (Pacific)<br>Place: Tele/Video-conference Only<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

TO: The **Honorable Dennis Montali**, United States Bankruptcy Judge ("the **Court**"):

SPIRO JANNINGS, *pro se* ("**Jannings**" or "**Creditor**" or "**Claimant**"), hereby responds to the February 21, 2023 opposition (the "**Opposition**") of Pacific Gas and Electric Company ("**PG&E**" or "**Debtor**") to Jannings` January 13, 2023 Omnibus Motion (the "**Motion**") in the above styled Chapter 11 case ("**Ch-11**"), filed pursuant to Fed. R. Bankr. P. **9024** and F. R. Civ. P. **60(b)(1)/(3)**; which moved to: (**1**) VACATE the Court's January 13, 2022 Order (Dkt. 11829) (the "**Order**"), following Creditor's January 11, 2022 motion for a Default Order (Dkt. 11806) (the "**Default Motion**"), Disallowing and Expunging Creditor's October 17, 2019 Claim, No. 58462 (the "**Claim**"); (**2**) respond (the "**Response**") to Debtor's October 8, 2021 Objection (Dkt. 11388) (the "**Objection**") to the Claim; and (**3**) grant Relief From Stay of Debtor's Ch-11 (the "**Relief**"), and return the Claim to state court jurisdiction; each sought and timely filed for cause as argued therein, for which the Opposition and its attached declaration (the "**Nadeau Declaration**") fails to defeat, and moreover, fails to address the keystone elements raised in the Motion the Court is required to consider in reaching a just disposition as moved by Claimant; and in support so states:

I.     **SUMMARY IN REFUTE OF DEBTOR'S PRELIMINARY STATEMENT**

Debtor's Opposition to the Motion, it termed: "Second Reconsideration Motion" (hereinafter construed interchangeable), conveniently encapsulates the complete but limited focus it asks the Court to constrain itself to in rejecting Claimant's Motion; to uphold a nonexistent right to the default relief Debtor obtained on January 13, 2022, and look no further. The Opposition tries to redefine "appeal" and "reasonable time" to appropriate an insufficient, even benign argument they can apply here; they can't. PG&E wishes to win by default, having the court ignore everything filed for one technical reason or another, rather than face a jury.

## II. CLAIMANT'S COMMENT ON DEBTOR'S FACTUAL BACKGROUND

PG&E uses the Opposition's "FACTUAL BACKGROUND" (*Id.* p.4) to revisit matters of record the Court is well aware, not to support a point of argument, but as a prelude to set up the last of its four (4) sections ("A" thru "D"), and proffer an explanation for the unprofessional letters of PG&E counsel, Ms. Nadeau, shown in the Motion's Exhibit "Y"; specifically, one letter dated June 14, 2022, and the second letter, dated October 22, 2022 ("**the letters**"); each, from PG&E Ch-11 counselor, Ms. Jane Kim (CSB: 298192), co-author the Opposition.

In the Opposition's section "D", Ms. Kim goes to extraneous lengths to explain what she is doing sub-managing a civil matter for which she is not an attorney of record, sending doctoral letters of demand to Claimant's state court attorney, Mr. Scott Furstman, that he act in a manner that is not only, NOT in his client's best interest (Mr. Jannings), but in fact in a manner that represents the wishes of PG&E's [bankruptcy counsel]. Who does Ms. Kim think she is? The letters were harassing, intimidating, and unprofessional, no matter how proper they may appear in format and prose.

If any [unfinished business] lie at the heels of PG&E's state court case with Mr. Jannings, that was the perview of PG&E's point counsel, Ms. Nadeau; not Ms. Kim. While the letters may not represent a level of unprofessionalism or harassment fitting of a Bar review, they do go to underscore the dire desperation both Ms. Kim and Ms. Nadeau will double-team and cross-venue their authority to breach Jannings` legal rights to pursue all avenues the law provides him. Any desire to dismiss the state court case is the obligation of PG&E, not Jannings.

Conveniently omitted in Ms. Kim's section "D" explanation of her harassing letters, is the companion 10/01/18 email, p.1 of the Motion's Exhibit "Y", underscoring the lengths of desperation and breach of professional ethics that Ms.Nadeau will stoop to in undermining a fellow bar member and cross the line of interference with an adversarial party's state of mind.

## III. CLAIMANT'S REFUTE OF DEBTOR'S ARGUMENT

### A. REASONABLE TIME ARGUMENT

PG&E asks the Court to find the Motion untimely, despite Rule 60(c) being unambiguous, that Rule 60(b), reasons (1), (2) and (3) are governed by a one year limitation; and reason (6) lies at the Court's discretion that may extend beyond one year, if justice requires.

PG&E counsel ignores the Motion's clear statement in Footnote #1,[1] which clearly makes note that Jannings sought new counsel as soon as he became aware of the Court's hearings and his counsel's mistakes. Footnote #1 also explains that he retained, and paid, Mark Bostick to repair the damage, but that he got the same feckless deferments without results. Filing the Motion, on January 13, 2023, would have occurred much sooner, but for the tiring reluctance for new counsel to assume the shoes of prior counsel's mistakes, which the Court should find a reasonable, candid fact; and as such, and supported by Jannings` Declaration, that the Motion meets with Rule 60(c)…

> (c) Timing and Effect of the Motion:
>
> (1) Timing. A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

The language of Rule 60(c) is clearly not what PG&E would argue; the specificity of reasons (1), (2), and (3) being "no more than a year after the entry…" clearly sets this as the limitation over and above, the [implied] freedom the Court can have in applying "reasonable time" to all other reasons. PG&E's interpretation of what "reasonable" time to file is a vacant argument, intended to defeat all due process entitled to Jannings by another "default."

---

[1] The Motion's Footnote #1 states the date of "March 2022", which is a scrivener's error that should read "April 2022", as shown with more specificity at p.2, line 23. More importantly, Claimant's attached Declaration cures the deficiencies alleged by PG&E as to a clear and compelling reason for the "reasonable time" delay.

4

**B. JANNINGS IS BOUND BY HIS COUNSEL'S ACTIONS ARGUMENT**

The argument that Jannings cannot distance himself from the actions (or in this case, "inaction") of his attorneys is erroneous. In citing *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1259 (9th Cir. 2004), PG&E cherry picks: "As a general rule, parties are bound by the actions of their lawyers, and alleged attorney malpractice does not usually provide a basis to set aside a judgment pursuant to Rule 60(b)(1)… **This is especially the case where a party has waited a year to complain about the failings of [his] lawyers**." [Emphasized.]

1. Jannings did not wait a year; he didn't wait a week. (See Jannings` Declaration, attached and co-filed herewith).

2. The operative term in PG&E's citing (*supra*), is "As a [general rule]," because generally speaking, no case is the same as another, nor is the collective facts which govern where each case deserves to be weighed on its own merits of what justice requires.

3. **THE AGENCY THEORY AND ATTORNEY AUTHORITY**[2]

During the twentieth century, courts have often resolved the question in cases involving an attorney's procedural errors by resorting to the agency theory of the attorney-client relationship. In 1962, the Supreme Court, in *Link v. Wabash Railroad*, explained this rationale for holding clients responsible for their attorneys' procedural abuses:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexplained conduct imposes an unjust penalty on the client. Petitioner voluntarily chose his attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."[3]

---

[2] Taken in part from: DUKE LAW REVIEW, Volume Vol. 1988:733
[3] 370 U.S. 626, 633-34 (1962) (citing Smith v. Ayer, 101 U.S. 320, 326 (1879)).

Courts and commentators have frequently considered the attorney's authority in the attorney-client relationship.[4]

Courts have often held clients responsible for their attorneys' procedural mistakes. Courts have held that an attorney has virtually unrestrained authority to act in procedural or tactical areas.[5] Indeed, most jurisdictions continue to distinguish between procedural matters, in which the attorney has authority, and substantive decisions, in which the client has authority.[6] This distinction is consistent with research on the actual allocation of authority in the attorney-client relationship.[7] Moreover, because the traditional distinction posits that the input of the client-a layperson unable to understand the procedural aspects of a case-is of no value in connection with procedural issues,[8] courts have often held that an attorney may exercise discretion in procedural matters and may even take actions contrary to a client's instructions.[9]

---

[4] See *infra* notes 5-10 and accompanying text.

[5] See, e.g., *Moulton v. Bowker*, 115 Mass. 36, 40 (1874) ("An attorney at law has authority, by virtue of his employment as such, to do in behalf of his client all acts, in or out of court, necessary or incidental to the prosecution and management of the suit ...."); *Averill v. Williams*, 4 Denio 295, 296 (N.Y. Sup. Ct. 1847) ("An attorney has very plenary [sic] power in the prosecution of a suit to judgment and execution .... ); *Huston v. Mitchell*, 14 Serg. & Rawle 307, 309 (Pa. 1826) (attorney fully authorized "to do such things as pertained to the conducting of the suit"); *Swinfen v. Chelmsford*, 5 Hurl. & Norm. 890, 922, 157 Eng. Rep. 1436, 1449 (Ex. 1860) ("[A] counsel has complete authority over the suit, the mode of conducting it, and all that is incident to it.").

[6] See *Valley Line Co. v. Ryan*, 771 F.2d 366, 376 (8th Cir. 1985) (filing stipulations is procedural matter within implied authority of attorney); *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 403-04, 696 P.2d 645, 650, 212 Cal. Rptr. 151, 155-56 (1985) (attorney has authority to make stipulations or agreements regarding procedure); *Hallock v. State*, 64 N.Y.2d 224, 230, 474 N.E.2d 1178, 1181, 485 N.Y.S.2d 510, 513 (1984) (conclusion of settlement agreement not within attorney's authority over procedural matters); see also MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.2 comment 1 (1983) [hereinafter MODEL RULES] (distinguishing between "objectives" and "means").

[7] Most commentators have concluded that in the typical attorney-client relationship, the attorney exercises almost complete discretion in procedural matters. See, eg., D. ROSENTHAL, LAWYER AND CLIENT: WHO'S IN CHARGE? 30-34 (1974); Mallor, Punitive Attorneys' Fees for A buses of the Judicial System, 61 N.C.L. REv. 613, 651 (1983).

[8] Martyn, Informed Consent in the Practice of Law, 48 GEO. WASH. L. REv. 307, 315 (1980). For an example of the traditional view, see G. ARCHER, ETHICAL OBLIGATIONS OF

The substance/procedure distinction, however, does not support the conclusion that an attorney is the agent of her client in procedural matters. According to traditional agency law, an agency relationship exists only if the principal has "**the right to control the conduct of the agent with respect to matters entrusted in him.**"[10] [Emphasized.]

Jannings can not only "distance himself" from his prior attorneys, but he has an obligation, as any client would, to dismiss his abandoning counsel and seek new counsel when existing counsel has breached the client/attorney obligations required by the Court, the Bar and the client's self interest in managing his obligations under all matters of substantive conduct.

It is well recognized that in the court's doctrine of attorney/client relationships, the attorney is held accountable, and holds authority for all *procedural* matters; while the client has

---

THE LAWYER § 31 (1910) (explaining too fully to client the necessary legal steps serves "no useful purpose").

[9] See, eg., *Eury v. Huff*, 141 F.2d 554, 555 (4th Cir. 1944) (attorney has authority to control procedural matters independent of client); *Buehman v. Smelker*, 50 Ariz. 18, 29, 68 P.2d 946, 950-51 (1937) (attorney, as independent contractor rather than servant, controls drafting of pleadings); *Duffy v. Griffith Co.*, 206 Cal. App. 2d 780, 787, 24 Cal. Rptr. 161, 165 (1962) (attorney "in full charge of his client's cause or defense"); *Board of Comm'rs v. Younger*, 29 Cal. 147, 149 (1865) ("So long as he remains attorney of record the Court cannot recognize any other as having the management of the case."); see also MODEL RULES, *supra* note 6, Rule 1.2 comment 1 (1983) ("the lawyer should assume responsibility for technical and legal tactical issues, but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected"). See generally 2 F. MECHEM, § 2160 (2d ed. 1914) (client may not interfere with "due and orderly conduct" of a case); Spiegel, Lawyering and Client Decision-making: Informed Consent and the Legal Profession, 128 U. PA. L. REv. 41, 50-60 (1979) (discussing cases holding that attorney has authority to act inconsistently with client's instructions).

[10] RESTATEMENT (SECOND) OF AGENCY § 14 (1957); see also *Lane v. Hopfeld*, 160 Conn. 53, 59, 273 A.2d 721, 723-24 (1970) (out-of-state manufacturer had no agent in state for purposes of service of process); *Gross Income Tax Div. v. Fort Pitt Bridge Works*, 227 Ind. 538, 546, 86 N.E.2d 685, 689 (1949) (independent subcontractor acts as agent for prime contractor); *N & G Constr., Inc. v. Lindley*, 56 Ohio St. 2d 415, 417, 384 N.E.2d 704, 706 (1978) (contractor as agent of owner); *Siskin v. Johnson*, 151 Tenn. 93, 98, 268 S.W. 630, 631 (1925) (defendant's employee not considered agent when defendant exercised no control over activities of employee).

autonomy over all matters *substantive*, in prosecuting or defending a case. This balance of obligations goes directly to how courts manage liability and sanctions for conduct that appears to take advantage of one party over another in timely prosecuting and defending the case (i.e., withheld discovery, frivolous motions, missed hearings, missed response deadlines, etc.). At some point, the courts are obligated to take notice; correct, and mete out sanctions when no other remedy is equitable; which may directly affect either the attorney, or the client, or both. At this point, the doctrine of equity crosses paths with the doctrine of attorney/client relationships.

Jannings cannot, and could not, manage his authority over substantive matters if his agents (the attorneys) are failing to inform him of procedural matters which directly affect those substantive decisions. Jannings had (and has) a right to be informed of all matters moving forward on the case, but was denied that germane and necessary information.

### C. "FRAUD" DOES NOT ENTITLE JANNINGS TO RULE 60(b) RELIEF

While the case law cited by PG&E's Opposition fits their hopes, it is not as compelling or relevant as the premise the Motion sought, or the case law cited in kind. The Motion described the full parameters of ancillary conduct which [borders] on "fraud", without the full weight of its definition (a high bar, as noted) being applied.

PG&E asserts that Jannings failed to identify any alleged misrepresentation or omission (*Id.* p.8, Line 20), that "was not discoverable during the pendency of the Claim Objection." In other words, only upon a proper reply to the Objection, with an evidentiary hearing, and the fruits forthcoming from discovery, will PG&E admit to facts that they have in their possession, but fail to not only acknowledge to the Court, but actually "misrepresent" by "omission", because they wanted the Court to dwell solely on the original state court complaint as the be-all, end-all word for what this case was about. However, upon filing of Exhibit "X" with the Motion, that cat's out of the bag; so all PG&E can do now, is ask the Court to ignore it.

Forget the carefully orchestrated collusion of multiple parties in three (3) difference PG&E departments, more interested in saving their female supervisor's job, than meting out justice to Jannings, the public, and PG&E itself, by dismissing their supervisor on the grounds she deserved. Everything in Jannings` cause of actions against PG&E begins with the female supervisor breaching company policy to doctor time cards, and deny Jannings his pay. This is an automatic termination offense, but PG&E chose to protect its own at Jannings` expense.

PG&E's unlawful wrongdoing is not subject to, nor protected by the LMRA, nor does it enjoy any other shield PG&E erroneously argues to exist. Jannings has every right to pursue in Santa Clara Superior Court, before a jury, as filed; and not be further and irreparably damaged by the inappropriate application of Debtor's Ch-11 refuge to dismiss said cause based on technical filing defaults that were clearly not of Jannings` doing, but were in fact the result of the Court's being mislead by PG&E's Objection; then Jannings` counsel failing to bring those skewed averments of PG&E to the Court's attention in a timely manner.

PG&E's Ch-11 is of the scale and breadth of Bankruptcy jurisprudence that flies high over the head of trivial subordinate claims, by comparison to its long list of corporate sins, legal incursions, negligence, incompetence, and consumer homicide, *inter alia*, that its Ch-11 was aimed to rectify; or at least mitigate, so it could go on doing that which PG&E does.

PG&E's Ch-11 was not premised on reorganizing itself for continued service to California residents and industry to include dismissing state litigation for wrongful termination, PG&E has established a pattern of internal house cleaning to cover up its standard operating procedures of keeping incompetent employees who fit a politically correct demographic at the expense of losing their experienced, proficient personnel, who may not fit that ever evolving politically correct demographic. Jannings` suit is one such example; PG&E's most egregious conduct in [his] unlawful termination, is a loud autopsy of PG&E failures it wants to silence.

9

PG&E asks the Court to ignore the merits of Jannings` cause, and simply let PG&E off the state court hook, because Jannings` attorneys "abandoned" him, and through their negligence, they failed to prosecute a timely response to PG&E's Objection.[11]

Sanctioning the client (Jannings) with the malpractice of counsel that had abandoned him for reasons unknown, does not serve justice. The Court's well explained findings of March 14, 2022 (Dkt. 12009) noted that PG&E is not prejudiced (p.3, Line 24).

**WHEREFORE**, for the reasons set forth herein, Claimant respectfully asks this Honorable Court, to: (1) set aside and vacate its January 13, 2022 Order, and declare the Court's March 14, 2022 decision "moot," and (2) Deny PG&E's October 8, 2021 Objection to Claimant's Claim, and thereby (3) Grant Relief from automatic stay enjoyed by PG&E's Ch-11 filing, direct the Claim be returned to Santa Clara County Superior Court Jurisdiction; (4) award attorney fees as applicable in an amount yet to be determined, and (5) grant any and all other relief the Court deems just and proper.

Date:  February 28, 2023            **SPIRO JANNINGS,** *Claimant*

                                    */s/ Spiro Jannings*     .
                                    SPIRO JANNINGS
                                    *Pro Se*

---

[11] The merits of the Objection were not argued by PG&E's Default Motion; however, the closing comment of the Court's Order did render weight to the Objection's unchallenged arguments, and accordingly, require Claimant the opportunity to redress, or be prejudiced.