KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

ROVENS LAMB LLP
Steven A. Lamb (SBN 132534)
slamb@rovenslamb.com
Telephone: (310) 536.7830
Facsimile: (310) 872.5489
2601 Airport Drive, Suite 370
Torrance, California 90505

LAW OFFICES OF JENNIFER L. DODGE INC.
Jennifer L. Dodge (#195321)
(jdodgelaw@jenniferdodgelaw.com)
2512 Artesia Blvd., Suite 300D
Redondo Beach, California 90278
Tel: (310) 372.3344
Fax: (310) 861.8044

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>            **Debtors.** | Case Nos. 19-30088 (DM)<br><br>(Lead Case) (Jointly Administered)<br><br>**PG&E'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT AND COUNTER-MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM)* | Date:  April 11, 2023<br>Time:  10:00 a.m. (Pacific Time)<br>Place:  (Tele/Videoconference Only)<br>       United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

PG&E Corporation ("**Holdco**") and Pacific Gas and Electric Company ("**PG&E**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized, the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") submit this memorandum of points and authorities in opposition to the *Notice of Motion and Motion for Partial Summary Judgment of Issues in Reorganized Debtors Objection to Claim #2090 and Claimant's Response Thereto* (the "**Motion**"), filed by Amir Shahmirza and Komir, Inc. (together, "**Claimant**" or "**Komir**"), and move for summary judgment as to, and disallowance of, Proof of Claim Nos. 2090 and 109855, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure. In support of this opposition and counter-motion, PG&E submits the Request for Judicial Notice and Declarations of Brian Smith ("**Smith Decl.**"), Rob Sullivan ("**Sullivan Decl.**") and Roger Leatherman ("**Leatherman Decl.**"), filed concurrently herewith, and further state the following:

## I. INTRODUCTION

There is one fundamental fact in this matter: for decades, PG&E has held duly recorded easements (the "**PG&E Easements**") that authorize PG&E to maintain its overhead electric transmission lines (the "**Transmission Lines**") on the property at 800 Walnut Street in San Bruno, which Claimant acquired in 2000 (the "**Komir Property**"). The PG&E Easements have never been extinguished, and their continued existence defeats Claimant's claims.

Claimant has adjusted its contentions repeatedly in an effort to circumvent this fact. Claimant's complaint in San Mateo County Superior Court, filed on November 9, 2018 (the "**Complaint**"), asserts that PG&E committed trespass by lowering the height of the Transmission Lines without Claimant's permission. (Compl. at ¶¶ 13-18, 24-32, Dkt. No. 12131-1, at 8-10.) In its initial Proof of Claim, No. 2090, filed on March 20, 2019, and in ensuing argument, Claimant changed course: instead of merely complaining that the Transmission Lines should be raised, Claimant asserted that the PG&E Easements had been extinguished in 1946 by Ordinance 3975 of the City and County of San Francisco. PG&E explained in its Objection to Proof of Claim No. 2090 (Dkt. No. 12130) why that argument could not prevail. Claimant's newest contention, advanced for the first time in Claimant's Motion and contemporaneously-filed amended Proof of Claim, No. 109855, is that the PG&E Easements were actually extinguished through a February 11, 1983 condemnation action (the "**Judgment in**

**Condemnation**") by the State of California (the "**State**"), and that the State thereafter transferred title to the property to Claimant's predecessor in interest (the "**Hildebrands**") free and clear of all encumbrances, including the PG&E Easements. Claimant is incorrect.

The Judgment in Condemnation provided that certain parcels of land "shall be condemned to [the State] and as against the CITY AND COUNTY OF SAN FRANCISCO for state highway purposes, in fee simple absolute, unless a lesser estate is described." (Dkt. No. 13478-8, at 6.) By its terms, then, the Judgment was only in condemnation of the interests of the City and County of San Francisco; it expressly left intact any "lesser estate," including PG&E's interest in the PG&E Easements. The Judgment's only provision potentially impairing PG&E's rights stated merely that any PG&E transmission lines that were in physical conflict with the State's freeway construction project must be relocated (Dkt. No. 13478-8, at 7) —and none of the Transmission Lines had to be relocated. Nor did the State's 1987 conveyance of the Komir Property to the Hildebrands (Claimant's predecessor) affect PG&E's interests: the June 30, 1987 Director's Deed states that the conveyance was "[s]ubject to special assessments, if any, restrictions, reservations and *easements of record*." (Dkt. No. 13478-9, at 8 (emphasis added).) Accordingly, Claimant received the Komir Property subject to the PG&E Easements, and they remain in place today. Indeed, Claimant's own surveyor has acknowledged their existence. *See* Dkt. No. 12131-4, at 59 (Chicago Title plat diagram of the Komir Property, dated June 21, 2018, identifying PG&E Easements as "Easement for Electrical Facilities" and "Easement for Steel Towers & Wires").

Even assuming, *arguendo*, that the Judgment in Condemnation extinguished PG&E's interest established by the recorded easements, PG&E's continued occupation of the Komir Property at all times since 1983 is sufficient to establish its right to the PG&E Easements by prescription. Furthermore, the Transmission Lines have been open and obvious on the Komir Property since Claimant acquired the property in 2000, such that PG&E is entitled to summary judgment based on the three-year statute of limitations. Finally, and independently of the above, PG&E is entitled to summary judgment because Claimant's claim was discharged through PG&E's prior bankruptcy, whose plan was confirmed in 2003.

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (made applicable to this contested matter by Fed. R. Bankr. P. 7056 and 9014).

## III.     UNDISPUTED MATERIAL FACTS

PG&E holds four easements for Transmission Lines that traverse the Komir Property.  (*See* Sullivan Decl., Exs. A-E.)  The Easement Map at Exhibit E reflects the easements set forth in Exhibits A-D and is consistent with the Chicago Title plat diagram of the Komir Property, dated June 21, 2018, that Surveyor Mahoney submitted in connection with Claimant's Information Request Response (Dkt. No. 12131-4, at 59).

The State obtained a Judgment in Condemnation, dated February 11, 1983, that terminated the interest of the City and County of San Francisco in certain parcels of land and required the removal of any PG&E transmission lines that were in physical conflict with the State's freeway construction project.  (Dkt. No. 13478-8, at 6-7.)  Thereafter, the Director's Deed of June 30, 1987, conveying the Komir Property from the State to the Hildebrands, did so "[s]ubject to special assessments, if any, restrictions, reservations and ***easements of record***."  (Dkt. No. 13478-9, at 8 (emphasis added).)

Both the PG&E Easements and the Transmission Lines have been in place for decades, since at least 1946.  (Sullivan Decl. at ¶¶ 2-4 and Exs. A-E; Leatherman Decl. at ¶¶ 8-9 and Exs. F-H.)  The Transmission Lines are open and obvious structures and are permanent fixtures.  Although the Transmission Lines predate the 1983 Judgment of Condemnation, the State has never required their removal, and they continue to exist.  (*See* Leatherman Decl., Exs. F and G.)

In 2001, PG&E filed a voluntary chapter 11 case in this Court.  Claimant did not file a proof of claim in the 2001 bankruptcy case.

## IV.     ARGUMENT

### A.     The PG&E Easements Are Valid

The Judgment in Condemnation was directed to the interests of the City and County of San Francisco; it expressly left intact any "lesser estate," including PG&E's interest in the PG&E Easements. (*See* Dkt. No. 13478-8, at 6 (providing that certain parcels of land "shall be condemned to [the State]

and as against the CITY AND COUNTY OF SAN FRANCISCO for state highway purposes, in fee simple absolute, unless a lesser estate is described").) The Judgment also recognized that the State could order the relocation of any PG&E transmission lines that were in conflict with the State's future freeway construction project related to SFO airport. (*See* Dkt. No. 13478-8, at 7 ("All costs for relocation of Pacific Gas and Electric Company transmission lines and their appurtenances . . ., as required for freeway construction on Airport property, shall be pursuant to applicable State law and/or Master Contracts in effect between the State and Pacific Gas and Electric Company . . . .").)

The Judgment's reference to "Master Contracts" includes that certain Freeway Master Contract entered into between the State Department of Transportation (Caltrans) and PG&E in 1952, which governs the relocation of PG&E facilities in physical conflict with freeway projects. (Leatherman Decl., ¶¶ 6-7 and Ex. H.) Under the Freeway Master Contract, Caltrans may order the relocation of PG&E facilities to accommodate freeway projects, and the cost is allocated between the parties in accordance to the nature of PG&E's land rights. (*Id.*) Therefore, the Judgment of Condemnation provided that the State may arrange for the relocation of PG&E transmission lines, which costs would be determined under the Freeway Master Contract. The State and PG&E did relocate certain PG&E transmission lines that were in conflict with the freeway project, but these facilities were located on other portions of the property described in the condemnation action. (*Id.*, ¶ 7.) Because the Transmission Lines on the Komir Property did not conflict with the State's freeway project, they were not relocated. (*Id.*)

In sum, neither the 1983 Judgment in Condemnation, which was not directed to PG&E and left in place "lesser estate[s]" such as the PG&E Easements (Dkt. No. 13478-8, at 6), nor the 1987 Director's Deed, which specified that the State's transfer of the Komir Property to the Hildebrands was "[s]ubject to . . . easements of record" (Dkt. No. 13478-9, at 8), affected PG&E's interest in the PG&E Easements. Accordingly, the Komir Property remains subject to the recorded PG&E Easements, and summary judgment in PG&E's favor is warranted.

### B. Even Assuming the PG&E Easements Were Condemned, PG&E's Continued Use of the Transmission Lines Supports a Claim of Prescription

Even assuming, *arguendo*, that the Judgment in Condemnation somehow extinguished PG&E's interest in the recorded easements—which it did not—PG&E's continued use of the Transmission Lines

on the Komir Property for the past 40 years is more than sufficient to establish a claim of prescription. A prescriptive right to an easement over the real property of another person may be acquired by a showing of an "open, continuous, notorious and peaceable use, adverse and under a claim of right, for the statutory period of five years." *Guerra v. Packard*, 236 Cal. App. 2d 272, 288 (1965). "The claim of right must be communicated to the owner of the land, or the use . . . must be so obvious as to constitute implied notice of the adverse claim." *Smith v. Skrbek*, 71 Cal. App. 2d 351, 358 (1945).

It is undisputed that, for well over five years after Claimant purchased the Komir Property in 2000, the PG&E Easements were open, continuous, notorious, peaceable and adverse. (*See* Leatherman Decl. ¶¶ 6-9 and Exs. F-H; Smith Decl. and Exs. 1 and 2.) The Transmission Lines are and have always been clearly visible, and thus have provided obvious notice to Claimant for decades. It is beyond dispute, then, that if the recorded PG&E Easements were in fact condemned in 1983, they nonetheless survive today as prescriptive easements. Again, summary judgment for PG&E is warranted on that basis.

### C. Claimant Failed to Assert Its Claim Within the Statue of Limitations

For the reasons described above, Claimant had notice of the existence of the PG&E Transmission Lines, and thus the alleged nuisance, when it purchased the Komir Property in 2000. Yet Claimant waited some 18 years to assert its claim, with the 2018 filing of the Complaint. That is well beyond California's three-year statute of limitations for permanent trespass or nuisance claims. *See* Cal. Civ. Proc. Code § 338(b); *Spar v. Pac. Bell*, 235 Cal. App. 3d 1480, 1485 (1991) ("In cases of a permanent trespass or nuisance, the damages are complete when the nuisance comes into existence and plaintiff is required to bring one action for all past, present and future damages within three years after the permanent nuisance/trespass has occurred."); *see also Spaulding v. Cameron*, 38 Cal. 2d 265, 267 (1952) (Traynor, J.) ("The clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility"); *Capogeannis v. Superior Court*, 12 Cal. App. 4th 668, 678 (1993) ("Regardless of literal abatability, where as a practical matter either abatement or successive lawsuits would be inappropriate or unfair then the nuisance may be regarded as permanent and the plaintiff relegated to a single lawsuit, subject to a single limitation period, for all past and anticipated future harms.").

Accordingly, regardless of its substantive merits, Komir's claim is time-barred, and PG&E is entitled to summary judgment.

### D. The Claim Was Discharged and Enjoined in PG&E's 2001 Chapter 11 Case

Komir acquired the property on December 18, 2000—a few months before the filing of PG&E's first chapter 11 case in 2001 (Case No. 01-30923, the "**2001 Chapter 11 Case**"). As such, to the extent that Komir had a claim for trespass against PG&E prior to that bankruptcy case, it was discharged and enjoined pursuant to the *Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Pacific Gas and Electric Company dated July 31, 2003*. (2001 Chapter 11 Case, Dkt. No. 13298.) *See* 11 U.S.C. §§ 524 and 1141.

Federal law determines when a claim arises under the Bankruptcy Code. *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 839 (9th Cir. 2009). The Ninth Circuit has adopted the "fair contemplation" test for determining when a claim accrues. *Id.* Under that test, a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law. *Id.*

Here, not only could Komir "fairly or reasonably" contemplate the claim's existence, but the entire claim had in fact accrued before the 2001 Chapter 11 Case. As discussed in Section IV.C, *supra*, the trespass or nuisance claims alleged by Komir are permanent. The alleged nuisance came into existence no later than when Komir acquired the property in 2000. Therefore, its claim for permanent nuisance or trespass had accrued prior to the 2001 Chapter 11 Cases, and it was discharged upon confirmation of that Plan of Reorganization.

Even if the nuisance were found to be continuing and not permanent, with the cause of action perpetually accruing, Komir's entire claim would still fall within the Ninth Circuit's fair contemplation test. As the alleged nuisance had been occurring for months when the 2001 Chapter 11 Case was filed, given the obvious and long-term nature of the power lines, Komir could have fairly contemplated that his claim for nuisance would last until it secured their removal through litigation or agreement with PG&E. Therefore, Komir's entire claim would have been discharged in the 2001 Chapter 11 Case whether it was for a permanent or continuing trespass or nuisance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    CONCLUSION

For all the foregoing reasons, PG&E respectfully requests that the Court (i) deny the Claimant's Motion, (ii) grant PG&E's motion for summary judgment, and (iii) disallow and expunge Proof of Claim Nos. 2090 and 109855.

Dated:  March 3, 2023

**KELLER BENVENUTTI KIM LLP**
**ROVENS LAMB LLP**
**LAW OFFICES OF JENNIFER L. DODGE, INC.**


By: _____*/s/ Steven A. Lamb*_____
             Steven A. Lamb

*Attorneys for Debtors and Reorganized Debtors*