Exhibit C
to Sullivan
Declaration

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, at my office in the County of San Mateo, the day and year in this Certificate first above written.

A. H. STALEY.

(SEAL) Notary Public in and for the County of San Mateo, State of California.

A true copy of an original recorded at the request of Geo. H. Rice Abstract Company, Mar. 21, A. D. 1910, at 32 min. past 10 oclock, A.M.

*[signature]* County Recorder.

By *[signature]* Deputy Recorder.

THIS GRANT OF RIGHT OF WAY, made this 7th day of December, 1909, by and between D. O. MILLS, of the City of New York, State of New York, hereinafter called first party, and SIERRA AND SAN FRANCISCO POWER COMPANY, a corporation organized and existing under the laws of the State of California, having its principal place of business at Millbrae, in the County of San Mateo, State of California, hereinafter called second party.

WITNESSETH:

That the first party, for and in consideration of the sum of Ten Dollars, ($10.00), gold coin of the United States of America, to him in hand paid by the second party, the receipt of which is hereby acknowledged, does hereby grant, unto the second party, and to its successors and assigns, forever, the right to erect, maintain and operate two electric transmission lies upon, over and along two certain strips of land sixty feet in width, in the County of San Mateo, State of California, each of which strips, except as hereinafter described, lies parallel with and adjacent to the northeasterly line of the right of way granted by the first party to Standard Electric Company of California, by deed dated the 16th day of October, 1901, and recorded on the 13th day of November, 1901, in the office of the County Recorder of the County of San Mateo, State of California, in Book 96 of Deeds, at page 6 thereof; and of each of which strips respectively the center line is described as follows:

1. Beginning at a point on the boundary line between the land of D. O. Mills, known as "Millbrae Farm", and the land of Ansel M. Easton, known as "Blackhawk Ranch", in the southwest quarter of Section Twelve (12) Township Four (4) South, Range Five (5) West, Mount Diablo Base and Meridian, distant nine hundred and ninety five (995) feet measured northeasterly along said boundary line from the northeasterly line of the right of way of the Southern Pacific Railroad Company,

from the center line of the right of way of Standard Electric Company of California ); thence parallel with the said Standard Electric Company's right of way north fifty-seven degrees, three minutes (57° 3') west, forty nine hundred and three (4903) feet; more or less, to a point on the northwesterly boundary line of the said land of D. O. Mills, distant nine hundred and forty nine (949) feet measured northeasterly along the said boundary line from the northeasterly line of the right of way of the Southern Pacific Railroad Company (and sixty (60) feet northeasterly along the said boundary from the center line of the right of way of Standard Electric Company of California), all as shown and delineated upon Map No. 1 hereto attached, and hereby made a part hereof.

2. Beginning at a point on the boundary line between the land of D. O. Mills, at San Bruno, and the land of H. H. Taylor, and near the center line of Section Three (3) Township Four (4), South, Range Five (5), West, Mount Diablo Base and Meridian, distant six hundred and two (602) feet, more or less, due east of the northeasterly line of the right of way of the Southern Pacific Railroad Company, (and sixty seven and seven tenths (67.7) feet due east of the center line of the right of way of Standard Electric Company of California,); thence parallel with the right of way of said Standard Electric Company of California, north thirty four degrees, thirteen minutes (34° 13') west three hundred and fifty three feet, more or less, thence parallel with the right of way of said Standard Electric Company of California, north twenty one degrees, twenty eight minutes (21° 28') west thirty nine hundred and forty six (3946) feet, more or less, thence diverging from the right of way of said Standard Electric Company of California, north six degrees, fifty five minutes (6° 55') west thirty nine hundred and eighty three (3983) feet; more or less, to a point on the north boundary of the said land of D. O. Mills, distant thirty and two tenths (30.2) feet due east from the northwest corner of said land and one hundred and eighty four and two tenths (184.2) feet due east of the corner of Sections 27, 28, 33, and 34, all as shown and delineated upon Map No. 2, hereto attached, and made a part hereof;

It is mutually agreed between the parties hereto that this grant of right of way is made and accepted upon the following terms and conditions;

That the second party shall use the right of way hereby granted, only for the purposes and in the manner herein stated.

That the towers of one of said transmission lines shall center upon a line parallel with and distant $12\frac{1}{2}$ feet southwesterly from the center line of the sixty foot strips above described, and the towers of the other transmission line shall center upon a line parallel with and distant $17\frac{1}{2}$ feet northeasterly from the center line of the sixty foot stripe above described; that said towers shall be of standard design, and self supporting; that the foundation and base of each of said towers shall not exceed in area twenty (20) feet square, provided that the foundation and base of said towers at the two angles of the lines may where proper construction may require be twenty five (25) feet square; that no part of said transmission lines excepting the towers themselves shall be at a height less than twenty five (25)

Case: 19-30088    Doc# 13570-3    Filed: 03/03/23    Entered: 03/03/23 13:40:05    Page 3 of 5

feet above the average natural surface of the ground, that along each transmission line the said towers shall be set as nearly as practicable at a uniform distance of eight hundred (800) feet apart, provided that no tower shall be erected within seventy five (75) feet of the northerly and southerly boundary lines of the two strips described in this right of way; and that the towers of one transmission line shall be set as nearly as practicable opposite to the towers of the other transmission line in respect to a common point on, and at right angles with the said center line of the said right of way; and that upon each of said towers there shall be suspended and maintained all necessary conductors and non-conductors of electricity, together with all the necessary appliances, insulators, connections, and fastenings, for the safe and efficient transmission of electric current for any and all purposes for which such current is now or may be hereafter used.

That the second party will, upon notice and request therefor from the first party, raise the wires that may be suspended and maintained upon said towers so as not to obstruct or interfere with the use of any railway or trams operated by electric trolley or other means or roadway that may be constructed across or beneath said line.

That the second party will pay to the first party all damages of every kind and nature which may be caused to or suffered by the first party, and to any or all of his property of every kind, except to the strips of land herein described, by reason of the erection and maintenance of said transmission lines and appurtenances, or any part thereof, or by reason of the electric current conducted thereby, which said damages the second party, by the acceptance of this grant of right of way hereby promises and agrees to pay.

That the second party shall have the right to enter upon the said sixty foot strips of land along which said transmission lines run for the purposes of erection and maintaining said transmission lines and their appurtenances, and of making all necessary repairs to or renewals of the same, provided that the second party shall indemnify and forever save harmless the first party from all damages of every kind and nature which may be caused to or suffered by him by reason of such entry, including all loss and damage that may be sustained or suffered by him by reason of or on account of injuries that may be done to or suffered by the agents, servants, or employees of the second party by or from cattle or other live stock, or by or from any other cause whatsoever, while such agents' servants or employees are upon the lands and premises, of the first party pursuant to this grant of right of way.

That if the second party ceases to use said transmission lines, or either of them, for the purposes or in the manner herein specified, for a period of one year, it shall, upon notice of one month in writing given by the first party, remove said transmission lines and appurtenances, from said right of way, and the right hereby conveyed, shall at once terminate and be of no further effect; and if the second party shall neglect for the period of two months after receipt of such notice, to remove said transmission lines, and all appurtenances, thereunto belonging, then the first party shall have the right to remove the same, and the cost of such removal shall be borne and paid by the second party.

398

That the second party shall furnish to the first party, without unnecessary delay, a map of the location of the towers to be erected hereunder, which map shall be filed in the office of the County Recorder of the County of San Mateo, State of California, and a copy of which said map shall be hereunto attached and ,made a part of this grant; that pending the preparation of said map the second party shall have the right to proceed with the location and erection of the first line of towers herein specified.

That upon request of the first party, the second party will furnish , sell and deliver to the first party, at the price herein after named, for use on the lands now owned by the first party in the County of San Mateo, State of California, such electric power and energy as the first party may desire for such use on such lands, that the first party will pay to the second party one and one-half cents per kilowatt hour on the basis of a guaranteed load factor of not less than fifty per cent, provided that the power and energy to be delivered to the first party at the above price shall be delivered and measured at the voltage of the transmission lines, and that the first party shall furnish all the necessary switches and other appurtenances, for receiving and measuring such delivered power and energy.

That this grant and all of its terms, covenants and conditions shall apply to, bind and benefit the first party, his heirs, legal representatives and assigns, and the second party, its successors and assigns.

IN WITNESS WHEREOF, the first party has hereunto set his hand in triplicate, and the second party, by resolution of its Board of Directors, has caused this instrument to be signed in triplicate in its corporate name and under its corporate seal by its Acting Vice President and Assistant Secretary, the day and year first above written.

```
                                        D. O. MILLS.
Witness to signature of D. O. MILLS
                                        SIERRA & SAN FRANCISCO POWER CO.
at his request:
                                   By   CHAS. N. BLACK, Acting Vice President.
H. H. Taylor.
                            (CORP. SEAL)  By  H. F. JACKSON, Asst. Secretary.
```

Witness to the signature of Chas. N. Black at his request.
    J. E. Woodbridge.

Witness to H. F. Jackson, Signature.
    W. L. McKinley.


State of California,     )
                                  ) ss.
City and County of San Francisco. )

On this 8th day of December, A. D. 1909, before me, O. A. EGGERS, a Notary Public in and for said City and County, residing therein, duly commissioned and sworn, personally appeared H. H. Taylor, known to me to be the same person whose name is subscribed to the within instrument, as a witness thereto, who, being by me duly sworn, deposed and said, that he resides in the City and County of San Francisco, State of California, that he was present and saw D. O . Mills, personally known to him to be the same person described in, whose name is subscribed to and who executed the said instru-