WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:   (212) 310-8000
Fax:   (212) 310-8007

KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for the Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION,

- and -

PACIFIC GAS AND ELECTRIC COMPANY,

Debtors.

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

* *ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).*

Case Nos. 19-30088 (DM) (Lead Case)
(Jointly Administered)

**REORGANIZED DEBTORS' OPPOSITION TO MOTION FOR ORDER DEEMING WILLIAM B. ABRAMS SUPPLEMENT TO DAMAGE CLAIMS TIMELY**

[Related to Docket No. 13518, 13537]

Date:  March 22, 2023
Time:  10:00 a.m. (Pacific Time)
Place: **(Tele/Videoconference Only)**
       United States Bankruptcy Court
       Courtroom 17, 16th Floor
       San Francisco, CA 94102

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this opposition to the *Motion for Order Deeming William B. Abrams Supplement to Damage Claims Timely*, dated February 16, 2023 [Docket No. 13518] (the "**Motion**").

## PRELIMINARY STATEMENT[1]

By his Motion, Abrams seeks to undermine the fundamental purpose of the Debtors' confirmed chapter 11 plan [Docket No. 8048] (the "**Plan**")—which the Debtors, the Court, representatives of the Fire Claimants, and countless other parties in interest dedicated more than seventeen months towards negotiating, prosecuting, confirming, and implementing—specifically, the channeling of all claims against the Debtors relating to the 2015, 2017 and 2018 California wildfires to the Fire Victim Trust for an orderly, equitable and prompt resolution, and to provide the Reorganized Debtors a discharge and fresh start.

The Motion purports to seek authority to "supplement" previously-filed proofs of claim with new claims ostensibly arising out of alleged prepetition misstatements or omissions made by PG&E relating to the Fires. Abrams seeks to assert these new claims directly against PG&E notwithstanding the channeling injunction under the Plan, the order confirming the Plan [Docket No. 8053] (the "**Confirmation Order**"), the discharge provisions of the Plan and Confirmation Order, and the passage of the deadline in the Chapter 11 Cases for filing proofs of claim against the Debtors more than three years ago as established under the *Order Extending Bar Date for Fire Claimants and Appointing Claims Representative* [Docket No. 4672] (the "**Bar Date Order**"). Indeed, by Abrams' own admission, the purpose of the Motion is to find a way to bring fire-related claims directly against the Reorganized Debtors and to allow other claimants, ratepayers, and residents holding fire-related claims to do exactly the same. Motion at 6. For many reasons, the Motion should be denied.

First, although the Motion frames the relief sought as "supplementing" an original proof of claim filed against the Debtors, the only claims Abrams has filed against the Debtors are Fire Claims

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to it in the Plan or the Confirmation Order, as applicable.

that were channeled to the Fire Victim Trust under the Plan on the Effective Date. In other words, *there does not exist a proof of claim against the Debtors and the Debtors' estates that Abrams can supplement which was not already channeled to the Fire Victim Trust on the Effective Date*.

Abrams identifies three proofs of claim in his Motion that he claims to have timely filed. Only two appear to have actually been filed on behalf of Abrams (proofs of claims numbers 16425 and 54799,[2] collectively, the "**Abrams Fire POCs**").[3] Those two proofs of claim were filed on the Court-approved fire-related proof of claim forms (the "**Fire Claim Form**"). The Abrams Fire POCs attach no supporting documents or explanations and simply assert that Abrams seeks damages arising out of or relating to the prepetition North Bay Fires. They provide no additional facts or set forth anything else about other potential claims against the Debtors related to the Fires or otherwise. The claims asserted in the Abrams Fire POCs were appropriately channeled to the Fire Victim Trust on the Effective Date along with all other Fire Victim Claims, and any disputes as to the validity and merits of the Abrams Fire POCs, or any other Fire Claims, rest strictly between Abrams and the Fire Victim Trust.

Second, if Abrams is instead seeking to have his new claims deemed timely filed as against the Debtors, Abrams has not provided any evidence or other support to justify his failure to timely assert the new claims on or before the Bar Date—which occurred more than three years ago. The passage of three years since the Bar Date is fatal to the assertion of any such new claim, but particularly so for Abrams who was well aware of the Bar Date, as evidenced by the timely-filed Abrams Fire POC's. Indeed, there has not been a more active individual participant in the Chapter 11 Cases than Abrams.

Lastly, and perhaps most importantly, the new claims plainly arise out of or relate to the Fires, and accordingly, constitute Fire Victim Claims that cannot be asserted against the Debtors and the

---

[2] Copies of proof of claim number 16425 ("**Claim No. 16425**") and proof of claim number 54799 ("**Claim No. 54799**") are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

[3] The third proof of claim Abrams identifies, proof of claim number 20057 ("**Claim No. 20057**"), is irrelevant to the Motion, as it appears to have been filed by a different claimant altogether. Claim No. 20057 was filed by Mr. William E. Abrams, who, to the best of the Reorganized Debtors' knowledge and belief, appears to be a different individual than Mr. William B. Abrams, who filed the Motion. A copy of Claim No. 20057 is attached hereto as **Exhibit C**.

Debtors' estates. They are unequivocally barred by the Plan's and the Confirmation Order's channeling injunction and discharge provisions. Further, any portion of the new claims that relate to any purported postpetition actions or omissions by the Debtors or the Reorganized Debtors in connection with the approved Disclosure Statement, the confirmed Plan and soliciting votes thereon are barred by the Plan and Confirmation Order's exculpation and the Bankruptcy Code's safe harbor provisions.[4]

Indeed, the Motion is nothing more than an attempt to circumvent the channeling injunction provisions in the Plan and Confirmation Order (the "**Channeling Injunction**"), and the efficacy and finality of the Bar Date Order. Plan § 10.7(a). The Abrams Fire POC's were permanently channeled to the Fire Victim Trust on the Effective Date, and the Motion seeking to raise the new claims directly against PG&E is forever and permanently enjoined by the Plan, the Confirmation Order, and the Bar Date Order. Allowing Abrams to circumvent the Plan, Confirmation Order, and the Channeling Injunction would catastrophically prejudice the Debtors and the Debtors' estates, unravel the years of hard work dedicated by all parties involved in the Chapter 11 Cases, and subvert the fundamental purpose and function of the Plan and bankruptcy law.

For the above reasons, the Motion should be denied.

---

[4] Specifically, the Confirmation Order provides as follows:

> Based on the record before the Court in these Chapter 11 Cases, the Plan Proponents and their directors, officers, employees, members, agents, advisors, and professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement and Solicitation Procedures Order, in connection with all their respective activities relating to the solicitation of acceptances or rejections of the Plan (including, without limitation, with respect to the solicitation of votes of holders of Fire Victim Claims and HoldCo Rescission or Damage Claims) and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code. Such solicitation, including with respect to the third-party injunction, Channeling Injunction, third-party release, and exculpation provisions of the Plan, also satisfies the requirements of due process.

Confirmation Order at 10 [Docket No. 8053].

# ARGUMENT

## I. ABRAMS' NEWLY ASSERTED CLAIMS ARE NOT PROPER AMENDMENTS OR SUPPLEMENTS AND, IN ANY EVENT, AT MOST, CONSTITUTE FIRE CLAIMS

In his Motion, Abrams seeks to assert various new prepetition claims that generally fall within the following categories (collectively, the "**New Claims**"): (1) claims relating to an asserted loss in value of PG&E's stock held by the Fire Victim Trust; (2) claims relating to Abrams' purported inability to obtain homeowners' insurance as a result of the Fires; and (3) claims relating to PG&E customers allegedly paying higher electricity rates as a result of, among other things, the Fires.

As set forth above, Abrams seeks in his Motion to assert his New Claims as supplements or amendments to proofs of claim numbers 16425, 20057, and 54799. Claim No. 16425 was filed on a Fire Claim Form with named creditor William Abrams. Similarly, Claim No. 54799 was also filed on a Fire Claim Form with named creditor William Abrams, signed by the same attorney as Claim No. 16425, and appears to amend Claim No. 16425. The Abrams Fire POCs have every box checked in the "damages claiming/seeking" row of the form including: economic damages; non-economic damages; punitive, exemplary, and statutory damages; attorney's fees and litigation costs; interest; and any and all other damages recoverable under California law. Additionally, the Fire Claim Form provides clear instructions at the top of the first page, "this form is for tort claimants who have a claim against the Debtors (i.e. PG&E Corporation and Pacific Gas and Electric Company) that arose prior to the Debtors filing for bankruptcy (i.e. prior to January 29, 2019) and that arose from, or relates to, a fire. Do not use this form for non-fire claims." Proof of Claim (Fire Claim Related).

As claims filed on Fire Claim Forms, the Abrams Fire POCs are Fire Claims and were properly channeled to the Fire Victim Trust on the Effective Date. Any attempt by Abrams to amend the Abrams Fire POCs is a matter between Abrams and the Fire Victim Trust and any such claims, if assertable, would be the responsibility of the Fire Victim Trust. *See* Fire Victim Claims Resolution Procedures [Docket No. 8057-1]. The Fire Victim Claims Resolution Procedures provide, under the claims submission heading, the following:

> The Claims Processor will maintain a secure, web-based portal (the "Portal") for Claimants to submit Claims Questionnaires, Supporting Documents, Releases, and any other relevant information or documents. After submitting a Claim, Claimants

> will be able to use the Portal check their Claim status, receive and respond to determination notices, *submit supplementary materials*, and update contact information and other demographic information, if necessary.

Fire Victim Claims Resolution Procedures § IV (emphasis added) [Docket No. 8057]. Accordingly, to the extent Abrams attempts to supplement or amend his Fire Claims, the proper channels are through the Fire Victim Claims Resolution Procedures.

Claim No. 20057 was filed on a general proof of claim form with named creditor William E. Abrams. To the best of the Debtors' knowledge and belief, Mr. William E. Abrams is an entirely different and unrelated party to the Mr. William B. Abrams who filed the Motion and who has been an active participant in these Chapter 11 Cases since 2019. Although Claim No. 20057 was filed on a general unsecured proof of claim form, the claim seeks $10,000 in damages relating to the removal of debris from a fire alleged to have been caused by PG&E. This claim was also identified as a Fire Victim Claim and was channeled appropriately to the Fire Victim Trust on the Effective Date. As such, there is no claim against the Debtors and the Debtor's estates to amend or supplement. Moreover and, perhaps more importantly, because Claim No. 20057 does not appear to be filed by Mr. William B. Abrams, it also cannot be used to relate back to deem the New Claims timely.

Even if the New Claims were not Fire Claims, they nevertheless could not be asserted against the Debtors and the Debtors' estates. In order to amend a claim after the passage of the bar date, the amendment cannot assert new claims. Rather an amendment is only permitted if the new claim asserted relates back to the claims asserted in the timely filed proof of claim. *See In re Pac. Gas & Elec. Co.*, 311 B.R. 84, 88 (Bankr. N.D. Cal. 2004).

To satisfy the "relate back" standard, the New Claims must be premised on the same operative facts as the original claims. The relation back standard of Federal Rule of Civil Procedure 15(c) contemplates the following factors: (1) the new claim and original claim must be based upon a common core of operative facts, (2) the new claim must be transactionally related to the original claim, (3) the new claim must be likely to be proved by the kind of evidence offered in the original claim, and (4) there must be facts alleged in the original claim that would reasonably alert the debtor to the possibility of assertion of new theories based upon those facts to support the amended claim, whether

or not those facts or events were foreseeable. *Id.* at 89. Thus, analysis of the relation back standard requires analysis of the original proofs of claim timely filed by Abrams.

The New Claims asserted by Abrams are plainly Fire Claims. The Plan, the Confirmation Order, and the Plan Documents were heavily negotiated over the course of the Chapter 11 Cases. In particular, the definition of "Fire Claim" was the subject of ongoing and vigorous negotiation between many key stakeholders, including the Debtors and the Tort Claimants' Committee. As the Court is well aware, the definition of Fire Claim and the Channeling Injunction were intentionally worded to capture and direct "any Claim . . . in any way arising out the Fires," including the North Bay Fires, to the Fire Victim Trust to be administered in accordance with the Fire Victim Trust Claims Procedures. See Plan § 1.86 and Exhibit A. Specifically, Fire Claim is defined as:

> ***any Claim against the Debtors in any way arising out of the Fires***, ***including, but not limited to***, any Claim resulting from the Fires for (a) general and/or specific damages, including any Claim for personal injury, wrongful death, emotional distress and similar claims, pavement fatigue, damage to culverts, ecosystem service losses, municipal budget adjustments/reallocation, lost revenue and tax impacts, local share of reimbursed fire clean-up costs, future estimated infrastructure costs, water service losses, lost landfill capacity, costs related to unmet housing (e.g., housing market impact due to the Fires and adjustments for increased homeless population), and/or hazard mitigation costs (including, watershed restoration and hazardous tree removal expenses); (b) damages for repair, depreciation and/or replacement of damaged, destroyed, and/or lost personal and/or real property; (c) damages for loss of the use, benefit, goodwill, and enjoyment of real and/or personal property; (d) damages for loss of wages, earning capacity and/or business profits and/or any related displacement expenses; (e) economic losses; (f) damages for wrongful injuries to timber, trees, or underwood under California Civil Code § 3346; (g) damages for injuries to trees under California Code of Civil Procedure § 733; (h) punitive and exemplary damages under California Civil Code §§ 733 and 3294, California Public Utilities Code § 2106, or otherwise, (i) restitution; (j) fines or penalties; (k) any and all costs of suit, including all attorneys' fees and expenses, expert fees, and related costs, including all attorneys and other fees under any theory of inverse condemnation; (l) for prejudgment and/or postpetition interest; (m) other litigation costs stemming from the Fires; and (n) declaratory and/or injunctive relief.

Plan § 1.78 (emphasis added).

Plan Section 1.78 explicitly includes within the definition of Fire Claim all of the categories of alleged damage set forth by Abrams in his New Claims including, without limitation: general and

specific damages, lost revenue, costs relating to unmet housing, economic losses, damages for loss of the use, benefit, goodwill, and enjoyment of real and/or personal property, damages for loss of earning capacity and/or business profits and/or any related displacement expenses. Moreover, the definition of Fire Claim is explicitly "not limited to" those categories of potential damages listed.

The New Claims asserted by Abrams plainly arise out of or relate (a very broad standard) to the North Bay Fires. Accordingly, they are Fire Claims, and any attempt to supplement those claims is to be resolved and addressed by the Fire Victim Trust. To the extent Abrams could possibly demonstrate the New Claims do not arise out of or relate to the North Bay Fires or any other Prepetition Fires (which, of course, he cannot), then they could not possibly relate back to the Fire POCs filed by Abrams.

## II. ABRAMS' NEW CLAIMS MAY NOT BE TREATED AS TIMELY

In his Motion, Abrams sets forth a timeline of his various filings detailing his contemplation of the bases of the New Claims but provides no justification or explanation for his failure to file the New Claims prior to the Bar Date let alone for waiting an additional three years to assert them. Moreover, as this Court has recently pointed out, in the Ninth Circuit, "even potential claims that might be in the fair contemplation of the parties represents a contingent claim subject to the established claims bar date of a bankruptcy." Order Denying Motions to Allow Late Claims at 7 (citing *In re Jensen*, 995 F.2d 925, 929-30 (9th Cir. 1993) [Docket 13490]. Recently, the Court reiterated the importance of the deadline for filing claims in the Chapter 11 Cases stating "the Bar Date is essentially a statute of limitation that's unforgiving." Omnibus Hr'g Tr. 22, Mar. 7, 2023. [Docket No. 13591].

"A claims bar date is not a mere technicality. A trustee and an estate's prepetition creditors are entitled to know what the claims are against a bankruptcy estate so the trustee can provide for the orderly distribution of the debtor's assets." *In re Amoroso*, 2008 WL 8444823, at *3 (B.A.P. 9th Cir. July 11, 2008). Claim amendments or supplements are not a method to assert new claims after the Bar Date has passed. Were that the case, the bar date provisions of the Bankruptcy Code would be rendered entirely meaningless, and any claimant with a filed proof of claim could continue to assert new claims indefinitely in the form of claim amendments.

The cases cited by Abrams in the Motion do not provide any basis for granting the relief requested. *Robert Farms*, which Abrams heavily relies on, provides the standard under which the Bankruptcy Court considers claim amendments (as opposed to new claims). The "crucial inquiry is whether the opposing party would be unduly prejudiced by the amendment." *Roberts Farms Inc. v. Bultman (In re Roberts Farms Inc.)*, 980 F.2d 1248, 1251 (9th Cir. 1992).

Consistent with *Robert Farms*, and cited in the Motion – but not analyzed or discussed – the *Pioneer* decision directs the Bankruptcy Court to consider the following factors when assessing proposed claim amendments: "the reason for the delay; the danger of prejudice to the debtor; the length of delay and its impact on judicial proceedings; and whether the claimant acted in good faith." *In re Pac. Gas & Elec. Co.*, 311 B.R. 84, 89 (Bankr. N.D. Cal. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395). Further, the movant bears the burden of presenting facts demonstrating excusable neglect. *Id.* (citing *Key Bar Invs., Inc. v. Cahn (In re Cahn)*, 188 B.R. 627 (9th Cir. BAP 1995)).

Abrams provides no explanation to support his significant delay in seeking to assert the New Claims.[5] A more than three year delay in raising new claims is substantial and should bar any claimant from asserting the New Claims. This is consistent with previous rulings of the Court declining to deem timely other fire victim claims that were filed more than two and half years after expiration of the Bar Date. Order Denying Motions to Allow Late Claims at 6 [Docket No. 13490]. The substantial and lengthy delay, however, is particularly unexplainable as to Abrams. The Motion lays out the long history of Abrams' discontent with the adequacy of the Debtors' disclosures and alleged misstatements—the conduct on which the New Claims are premised. The Motion provides that Abrams has been contending these same disclosure-related allegations in court filings since 2020, and the Motion provides no explanation or justification for why he waited until 2023 to assert such claims.

---

[5] The general bar date passed on October 21, 2019. *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(A), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806]. The extended bar date for Fire Claims passed on December 31, 2019. *Order Extending Bar Date for Fire Claimants and Appointing Claims Representative* [Docket No. 4672].

The delay is likely dispositive as an individual factor because the Debtors' estates are protected by the safe harbor of section 1125 of the Bankruptcy Code with respect to the adequacy of disclosures, and Abrams objections regarding the Debtors' disclosures have long been overruled. The Debtors' disclosures were made in good faith and in compliance with the applicable provisions of this title and were approved by this Court and solicited through a robust process. As stated, Abrams objections to the Disclosure Statement were fully addressed and overruled and these issues certainly cannot be raised again now.

In terms of the basis for delay, Abrams cannot argue he was unaware of the Chapter 11 Cases or the New Claims. Abrams has been active throughout the Chapter 11 Cases, and has filed countless letters, motions, and objections regarding, among other things, the Disclosure Statement, the equity backstop commitment documents, Plan confirmation, and the disclosure requirements of the Fire Victim Trust. The Motion itself provides, "as the Court is aware, Abrams, perhaps more than any other party within this case, objected to the Fire Victim Trust Documents including but not limited to the Registration Rights Agreement [Docket Nos. 7913, 7914, 7919], Victim Disclosure Statement [Docket No. 5700] and the Claims Resolutions Procedures [Docket No. 5873-1]." *Motion* at 19. At one point, Abrams' filings regarding the Fire Victim Trust became so prolific and costly to the Debtors' estates and the Fire Victim Trust that this Court required him to request court permission before filing any further similar motions. *See Order Denying William B. Abrams' Motion To Enforce The Victim Trust Agreement And Replace All Members Of The Fire Victim Trust Oversight Committee, Etc.* [Docket No. 10768]. After years of unsuccessfully challenging virtually every aspect of the Chapter 11 Cases, Abrams latest belated effort to undermine the Plan and Confirmation Order cannot withstand scrutiny.

With respect to prejudice, the danger of prejudice to the Debtors and the Debtors' estates is patent. The Motion seeks to completely undermine the Plan, Confirmation Order, and Channeling injunction and, if granted, would result in a multitude of claims being pursed against the Debtors and the Debtors' estate. The Motion provides, "approval by the Court would serve as a procedural pathway for other victims, residents and ratepayers to file similar claim supplements." Motion at 6. The Motion intends to establish precedent that would provide an opportunity for all holders of Fire Claims to

amend their existing channeled Fire Claims with additional claims against the Debtors and the Debtors' estates—completely undermining the Plan and the Confirmation Order's injunction and discharge provisions and undermining the finality of the Bar Date Order. Were the Court to entertain eviscerating the Plan and the Confirmation Order this way by granting Abram's Motion, it would inevitably lead to an avalanche of similar motions (and indeed has already prompted a number of pleadings filed by other Fire Claimants) to amend or supplement existing Fire Claims by asserting new claims directly against the Debtors and the Debtors' estates.

Accordingly, in light of the extreme prejudice to the Debtors and the significant and inexcusable delay, the New Claims should not be deemed timely and the Motion should be denied.

### III. THE CHANNELING INJUNCTION UNIVERSALLY APPLIES TO ALL FIRE CLAIMS INCLUDING AMENDMENTS TO FIRE CLAIMS

There are no exceptions of any kind to the Channeling Injunction, and the Motion provides no legal basis for why amending a Fire Claim would allow any aspect of the claim to be brought against the Debtors and the Debtors' estate. The Channeling Injunction provides in part,

> The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable. The holders of such Claims shall have no recourse to or Claims whatsoever against the Debtors or Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Entities that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or Reorganized Debtor or its assets and properties with respect to any Fire Claims. . .

Plan § 10.7(a). Thus, the sole source of recovery for Abrams' Fire Claims is the Fire Victim Trust, and Abrams is permanently and forever stayed, restrained, and enjoined from taking any action against the Debtors and the Debtors estates with respect to Abrams' Fire Claims, regardless of whether the Abrams Fire POCs are subject to amendment or not.

The Fire Victims overwhelmingly voted to accept the Plan. The Motion is essentially an objection to Plan confirmation brought almost three years too late, and mirrors in many ways the overruled objections Abrams made during the plan confirmation process. *See Memorandum Decision – Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* at

15 [Docket No. 8001].  The Plan was confirmed and is valid and binding on Abrams' Fire Claims, and all Fire Claims, and the Channeling Injunction is a fundamental component of the Plan that cannot be circumvented under any circumstances, by claim amendment or otherwise.

## CONCLUSION

For the foregoing reasons, the Reorganized Debtors respectfully request the Court deny the Motion.

Dated:  March 8, 2023

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

*/s/ Richard W. Slack*
Richard W. Slack

*Attorneys for the Debtors and Reorganized Debtors*