KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

GOUGH & HANCOCK LLP
Gayle L. Gough (#154398)
(gayle.gough@ghcounsel.com)
Daniel Shevtsov (#299971)
(daniel.shevtsov@ghcounsel.com)
50 California Street, Suite 1500
San Francisco, CA 94111
Tel: 415 848 8918
Fax: 888 808 6471

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                                             **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' OBJECTION TO PROOF OF CLAIM NO. 80260 FILED BY HOWARD KRAUSSE**<br><br>**Response Deadline:**<br>**March 28, 2023, 4:00 p.m. (Pacific Time)**<br><br>**Hearing Information If Timely Response Made:**<br>Date:   April 11, 2023<br>Time:  10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>          United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 94102 |

TO: (A) THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE; (B) THE OFFICE OF THE UNITED STATES TRUSTEE; (C) THE AFFECTED CLAIMANT; AND (D) OTHER PARTIES ENTITLED TO NOTICE:

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, "**PG&E**" or the "**Debtors**," or as reorganized pursuant to the Plan (as defined below), the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") file this objection (the "**Objection**") to Proof of Claim No. 80260 (the "**Proof of Claim**") filed by Howard Krausse ("**Claimant**" or "**Krausse**"), and in support thereof, submit the Declaration of Daniel Shevtsov ("**Shevtsov Decl.**"), filed contemporaneously herewith, and further state the following:

## I. PRELIMINARY STATEMENT

Claimant alleges that PG&E negligently caused power interruptions at his residence at 640 Forest View Drive, Willow Creek, CA, and that, in investigating the issue, PG&E trespassed on, burglarized, and destroyed his property. The Proof of Claim seeks $500,000 in damages for "assorted torts," including "destruction of personal property, negligence in provision of electrical service, [and] threats to life and property." It seeks an additional $281,500 for what Claimant terms "services rendered"—*i.e.*, Claimant's time spent monitoring alleged voltage and frequency deviations at his residence, charged at $250 per hour, two hours per day, for 563 days.

Because neither the "assorted torts" nor the "services rendered" are actionable as a matter of law, the Proof of Claim should be disallowed and expunged.

## II. JURISDICTION

This Court has jurisdiction over this Objection under 28 U.S.C. §§ 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are section 502 of Title 11 of the United States Code (the

"**Bankruptcy Code**"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Bankruptcy Local Rule 3007-1.

**III.    BACKGROUND**

   **A.    Bankruptcy Background**

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code.  Prior to the Effective Date (as defined below), the Debtors continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner was appointed in either of the Chapter 11 Cases.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263].

On July 1, 2019, the Court entered the *Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2806] (the "**Bar Date Order**").  The Bar Date Order set the deadline to file all proofs of claim in respect of any prepetition claim (as defined in section 101(5) of the Bankruptcy Code), including all claims of Fire Claimants (as defined therein), Wildfire Subrogation Claimants (as defined therein), Governmental Units (as defined in section 101(27) of the Bankruptcy Code), and Customers, and for the avoidance of doubt, including all secured claims and priority claims, against either of the Debtors as October 21, 2019 at 5:00 p.m. Pacific Time (the "**Bar Date**").  The Bar Date later was extended solely with respect to unfiled, non-governmental Fire Claimants to December 31, 2019 [Docket No. 4672][1]; and subsequently with respect to certain claimants that purchased or

---

[1] The claims of Fire Claimants will be administered through the Fire Victim Trust and the claims of Wildfire Subrogation Claimants through the Subrogation Wildfire Trust in accordance with the Plan.

acquired the Debtors' publicly held debt and equity securities and may have claims against the Debtors for rescission or damages to April 16, 2020 [Docket No. 5943].

By Order dated June 20, 2020 [Docket No. 8053], the Bankruptcy Court confirmed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (as may be further modified, amended or supplemented from time to time, and together with any exhibits or scheduled thereto, the "**Plan**"). The Effective Date of the Plan occurred on July 1, 2020 (the "**Effective Date**"). *See* Docket No. 8252.

### B.   Factual and Procedural Background

The Proof of Claim alleges that on June 13, 2017, a PG&E technician was dispatched to Claimant's residence in response to his complaint of "a power interruption." Shevtsov Decl. Ex. A, Attach. 2. The technician performed a voltage and load test and did not find any problems. *Id*., Attach. 3. Claimant alleges that on July 11, 2017, he spoke with a PG&E representative by phone "about multiple power interruptions, suspected electricity theft, unacceptable voltage and frequency variations in power ostensibly supplied by PG&E," and that the representative suggested installing a Recording Voltage Meter ("**RVM**") on PG&E's utility box to further assess Claimant's complaints. *Id*., Attach. 2. Claimant alleges that during this call, he and the PG&E representative also agreed that Claimant "would monitor future power interruptions as well as voltage and frequency deviations from standard." *Id*.

On or about August 12, 2017, Claimant alleges that he received a voicemail from a second PG&E representative, who had accessed Claimant's property to install an RVM but was unable to do so because the meter boxes were locked. *Id*. While Claimant alleges that his "surveillance footage" shows no one approaching the PG&E meter or the electric panel on that date, he claims that "several boards were subsequently found to be removed from the residence," which he takes as "a trespass as well as a burglary" by PG&E. *Id*., Attach. 2.

Based on these events, the Proof of Claim seeks $500,000 in damages for "destruction of personal property, negligence in provision of electrical service, [and] threats to life and property," as well as $281,500 for Claimant's time spent monitoring alleged electrical voltage fluctuations over the course of two years, charged at $250 per hour, two hours per day, for 563 days. On August 19, 2021,

1  the parties attempted to mediate Claimant's claims pursuant to the *Order Approving ADR and Related*

2  *Procedures for Resolving General Claims* (the "**ADR Order**"), [Dkt. No. 9148], without success.

3  PG&E now objects to the Proof of Claim.

4  **IV.     THE OBJECTION AND REQUEST FOR RELIEF**

5         The Reorganized Debtors seek disallowance of the Proof of Claim under section 502(b)(1) of

6  the Bankruptcy Code because Claimant cannot prove the claims therein by a preponderance of the

7  evidence.

8         **A.     Claimant Bears the Burden of Proof**

9         A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C.

10 § 502(a).  Section 502(b)(1) of the Bankruptcy Code, however, provides in relevant part that a claim

11 may not be allowed if "such claim is unenforceable against the debtor and property of the debtor, under

12 any agreement or applicable law." 11 U.S.C. § 502(b)(1).  Once the objector raises "facts tending to

13 defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves,"

14 *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991), quoting 3 L. King, *Collier on*

15 *Bankruptcy* § 502.02 at 502-22 (15th ed. 1991), then "the burden reverts to the claimant to prove the

16 validity of the claim by a preponderance of the evidence."  *Ashford v. Consolidated Pioneer Mortgage*

17 *(In re Consolidated Pioneer Mortgage)* 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (quoting *In re*

18 *Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992), *aff'd without opinion*, 91 F.3d 151 (9th Cir.

19 1996).  "[T]he ultimate burden of persuasion is always on the claimant."  *Holm*, 931 F.2d at 623

20 (quoting King, *Collier on Bankruptcy*); *see also Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d

21 1035, 1039 (9th Cir. 2000); *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993);

22 *In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988).  As set forth below, Claimant cannot

23 meet this burden of proof.

24        **B.     The Proof of Claim is Factually and Legally Defective**

25               **1.     Fluctuating Voltage and Power Interruptions**

26        The Proof of Claim alleges fluctuating voltage and power interruptions at Claimant's

27 residence.  Shevtsov Decl. Ex. A, Attach. 2.  However, PG&E's investigation revealed that the voltage

28 and load at the property were within the required limits: on June 13, 2017, a PG&E technician was

dispatched to the Krausse residence, inspected the PG&E cables at the meter panel, performed a voltage and load test, and noted "power & volts checked ok" on the service report. *Id*., Attach. 3. Krausse has not provided any evidence of the alleged fluctuating voltage or power interruptions.

### 2. Personal Property Damage

Krausse claims damage to his deck and security camera during an August 12, 2017 visit by a PG&E representative. Although Claimant alleges that his "surveillance footage" shows no one approaching the PG&E meter or the electric panel on that date, he alleges that "several boards were subsequently found to be removed from the residence." Shevtsov Decl. Ex. A, Attach. 2. In response to an Information Request issued by the Reorganized Debtors pursuant to the ADR Order, Claimant also provided deck photos that show two boards with two nails pulled partially out and one piece of a wood rail that was "split when it was reattached by criminals." Shevtsov Decl. Ex. B, pp. 20-24. The photos appear to show wear and tear from an older deck, but Krausse has failed to provide evidence that a PG&E technician damaged the deck. Krausse also alleges that one of his security cameras was "zapped" by electromagnetic pulses during the August 12 visit, but then began working again the next day. Shevtsov Decl. Ex. A, Attach. 9. He offers no evidence of causation or damages.[2]

### 3. Trespass and Burglary

Claimant also appears to claim that the alleged August 12, 2017, property visit by a PG&E representative constituted "a trespass as well as a burglary." Shevtsov Decl. Ex. A, Attach. 2. But PG&E has the right to access its facilities located on a customer's premises at any time for any purpose connected with electric service. Tariff, Electric Rule No. 16, Section A.12 provides: "**PG&E shall at all times have the right to enter and leave Applicant's Premises for any purpose connected with the furnishing of electric service** (meter reading, inspection, testing, routine repairs, replacement, maintenance, vegetation management, emergency work, etc.) . . ."[3] (emphasis added). Thus, a PG&E technician accessing the PG&E meter located on a customer's property would not constitute a trespass because PG&E has a right to access its facilities for purposes connected with electric service. *See*

---

[2] PG&E has requested security footage of PG&E visits, but it was never provided.
[3] https://www.pge.com/tariffs/assets/pdf/tariffbook/ELEC_RULES_16.pdf

1 *Cowing v. City of Torrance*, 60 Cal. App. 3d 757, 763-64 (1976) (trespass claim fails as a matter of

2 law where entry is authorized by law).

3      Nor has Claimant offered any proof that a burglary occurred. There is no evidence that any

4 PG&E employee or agent entered his dwelling with the intent to commit a theft or a felony. *See* Cal.

5 Penal Code § 459. Furthermore, Claimant himself admits that a review of the surveillance footage

6 from that date shows no one his property. Shevtsov Decl. Ex. A, Attach. 2.

7 **4.**     **Payment for Power Monitoring (Breach of Contract)**

8      Claimant alleges that that he and a PG&E representative agreed that Claimant would monitor

9 future power interruptions as well as voltage and frequency deviations from standard. Krausse now

10 demands $281,500 for time spent monitoring voltage and frequency deviations, calculated at two hours

11 per day at $250 per hour for 563 days. PG&E denies that it agreed to pay Krausse to monitor voltage.

12      Contract formation requires mutual consent, which cannot exist unless the parties "agree upon

13 the same thing in the same sense." Cal. Civ. Code § 1580; *Bustamante v. Intuit, Inc.*, 141 Cal. App.

14 4th 199, 209 (2006); *see also* Cal. Civ. Code §§ 1550, 1565. "Mutual assent is determined under an

15 objective standard applied to the outward manifestations or expressions of the parties, i.e., the

16 reasonable meaning of their words and acts, and not their unexpressed intentions or understandings."

17 *Alexander v. Codemasters Group Limited*, 104 Cal. App. 4th 129, 141 (2002). Here, there was no

18 mutual consent, no meeting of the minds, and no contract. Krausse has not asserted that PG&E agreed

19 to pay him $250/hour for monitoring, and no PG&E agent has agreed to do so. Krausse's unexpressed

20 belief that he should be paid for his time does not constitute mutual assent for a contract. There was

21 no contract to pay Krausse to monitor power. Since there was no contract, there can be no breach of

22 contract.

23 **V.**     **RESERVATION OF RIGHTS**

24      The Reorganized Debtors hereby reserve the right to object, as applicable, in the future to the

25 Proof of Claim on any ground, and to amend, modify, or supplement this Objection to the extent the

26 Objection is not granted. A separate notice and hearing will be scheduled for any such further

27 objections. Should the grounds of objection specified herein be overruled, wholly or in part, the

28 Reorganized Debtors reserve the right to object to the Proof of Claim on any other grounds that the

Reorganized Debtors may discover or deem appropriate. The Reorganized Debtors also reserve the right to assert any counterclaims or affirmative defenses, whether in connection with this Objection or in an adversary proceeding or other litigation, which counterclaims and defenses are expressly reserved.

## VI.    NOTICE

Notice of this Objection will be provided to (i) Claimant; (ii) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (iii) all counsel and parties receiving electronic notice through the Court's electronic case filing system; and (iv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Reorganized Debtors respectfully submit that no further notice is required.

WHEREFORE the Debtors respectfully request entry of an order disallowing and expunging the Proof of Claim in its entirety and such other and further relief as the Court may deem just and appropriate.

Dated:  March 10, 2023

**KELLER BENVENUTTI KIM LLP**
**GOUGH & HANCOCK LLP**

By: _____ */s/ David A. Taylor* _____
     David A. Taylor

*Attorneys for Debtors and Reorganized Debtors*