# EXHIBIT A

**(Proof of Claim)**

Fill in this information to identify the case (Select only one Debtor per claim form):

☐ PG&E Corporation (19-30088)

☐ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim
04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

## Part 1: Identify the Claim

[ ] Date Stamped Copy Returned
[ ] No Self-Addressed Stamped Envelope
[✓] No Copy Provided

**1. Who is the current creditor?**
HOWARD KRAUSSE
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

HOWARD KRAUSSE
PO BOX 1339
WILLOW CREEK CA 95573-1339

Contact phone 707 630-3682
Contact email anneandhoward@hotmail.com

Where should payments to the creditor be sent? (if different)

Name _____
Number  Street _____
City  State  ZIP Code _____

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on ___/___/___
                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

193008880028804
1930088CUST

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

6. Do you have any number you use to identify the debtor?

☒ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. How much is the claim? $ _see Attachment #1_ . Does this amount include interest or other charges?

☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_see Attachments 2-9_

9. Is all or part of the claim secured?

☒ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) _____ %
☐ Fixed
☐ Variable

10. Is this claim based on a lease?

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

11. Is this claim subject to a right of setoff?

☒ No
☐ Yes. Identify the property: _____

| | |
|---|---|
| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No |
| | ☐ Yes. *Check one:* |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  10/17/2019 (mm/dd/yyyy)   10-17-2019

_____
Signature

Print the name of the person who is completing and signing this claim:

Name: Howard  Michael  Krausse
        First name  Middle name  Last name

Title: n/a

Company: n/a
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: P.O. Box 1339
         Number  Street
         Willow Creek              CA    95573-1339
         City                      State ZIP Code

Contact phone: 707 630-3682   Email: anneandhoward@hotmail.com

## ATTACHMENT 1

| | |
|---|---:|
| For services rendered two hours per day at $250/hour, 563 days | $281,500 |
| For assorted torts (including but not limited to destruction of personal property, negligence in provision of electrical service, threats to life and property.) No less than | $500,000 |
| **GRAND TOTAL NO LESS THAN** | **$781,500** |

# ATTACHMENT 2 PROOF OF SERVICES PERFORMED AND TORTS

On June 13, 2017, a PG&E technician was dispatched to the Krausse residence at 640 Forest View Drive, Willow Creek, CA due to a power interruption. See Service Report Attachment #3. At that time, Technician Scha wished to install an "RVM" on the Krausse residence. Krausse believing that he had located a tap on the electricity service, a wire leading off of the property, for the purpose of electricity theft, refused. Hence, a note was included on the report and the RVM was not installed.

On July 11, 2017, Krausse spoke with PG&E's agent in Eureka, Mr. Bear, about multiple power interruptions, suspected electricity theft, unacceptable voltage and frequency variations in power ostensibly supplied by PG&E and certainly billed for by PG&E. Although Bear acknowledged that PG&E had recorded 22 outages in Willow Creek year to date, PG&E phone records will demonstrate that Krausse had placed several phone calls to PG&E regarding outages at the Krausse residence that were not included in the official record.

In the course of this conversation, Mr. Bear again suggested the installation of a RVM device on the Krausse property. Krausse again refused, stating that the issue of electricity theft could not be resolved in this way. Krausse and Bear then agreed that the RVM would be installed on PG&E's utility box. There is a large green utility box opposite the Krausse residence. Mr. Bear denied that this was the property of PG&E. Krausse had put up a security camera on his driveway aimed at this box, which he mentioned to Mr. Bear. Subsequently, a label was put on the green box indicating that it is the property of PG&E. They further agreed that Krausse would monitor future power interruptions as well as voltage and frequency deviations from standard.

Mr. Bear further asserted that the AC line frequency was tightly controlled robotically in Eureka, CA, indicating that voltage and frequency variations of the sort Krausse described and subsequently documented were improbable. Pursuant to this agreement, Krausse monitored power interruptions, voltages, and frequencies of supplied power at two locations: 1595 Beverly Drive, Arcata, CA and 640 Forest View Drive, Willow Creek, CA.

What Krausse discovered was that it was indeed true that voltage and frequency were "tightly controlled" at the Arcata residence, and for several weeks at the Willow Creek address. See attachment #4. However, by October 7, 2017, there was a frequency deviation as measured by a frequency derived AC clock, of 30 seconds. On August 7, 2018, the deviation of the clock was 3 minutes 31 seconds. The deviation recorded in Arcata through this period ranged from 0:00 seconds to -0:13 seconds. This suggested to Krausse that the power supplied to the Willow Creek address came from alternative energy source(s). It also suggested that the frequent power interruptions at the Willow Creek address might be due to the transfer from one power source to another illegal source.

PG&E Electric Rule #2 (see attachment #5, sheet 7) states in part that: PG&E will exercise reasonable diligence and care to regulate and maintain its frequency within reasonable limits... In addition, Electric Rule #2 specifies Minimum and Maximum Voltages to All Services as follows: Minimum Voltage to All Services of 114 Volts and Maximum Voltages to Class A Residential Distribution Circuits of 120 Volts (See Attachment #6).

Pursuant to his conversation with Bear, Krausse documented and assembled spreadsheets of variations subsequent to July 11, 2017 to the present. An example of what Krausse documented is 113.7 Volts on October 23, 2018 and 124.2 Volts on August 7, 2018 (See Attachment #6). Krausse considers that this is not due diligence but, in fact, negligence and possible gross negligence.

On Saturday, August 12, 2017, Krausse returned to his home in Willow Creek and retrieved an answering machine message from Dan LeFawnd (spelling uncertain), a PG&E "troubleman." In the message, LeFawnd acknowledges having entered the Krausse residence with the stated intention of installing a RVM meter. He further states the need to "get into" the meter boxes-panels which were locked. Note that the PG&E meter was and is only locked by PG&E, and that the padlock secured the electric panel only, which is the homeowner, Krausse's property. The PG&E agent has no right to access of customer's property without customer consent, which had been explicitly denied on two previous occasions. A review of surveillance videos reveals that no one during this event ever approached the PG&E electric meter or the Krausse electric panel. However, several boards were subsequently found to be removed from the residence. Krausse repaired the damage to the house (See the transcript on Attachment #7).

Krausse believed the PG&E troubleman's entry into the Krausse residence constituted a trespass as well as a burglary. See also attachment #8 and #9 destruction of evidence (photo of blown hard drive data, and transcript of video.)

Krausse believes that PG&E's conduct through its agents constitutes, in the words of Governor Newsom, "conscious and willful disregard for the rights and safety of others." Further, it is a prime example of prioritizing profit over public safety.

# 3

**Pacific Gas and Electric Company** — SERVICE REPORT
PG&E Visited your Property Today to Service Your Account

Valued Customer: 640 Forest View St. W/Crest
Service Date/Time: 6-13-17, 1800  Address: _____  A.M./P.M.
Service Technician: Seha  Confirmation/Field Order #: 1803565
Transaction Type: Fluctuating Voltage / Power Interruption

☐ SORRY WE MISSED YOU: Unfortunately we were not able to complete your service request because it requires your presence or the presence of an adult. Please call us at 1-800-743-5000

☐ SORRY WE MISSED YOU: Please see reverse side for additional information

## Gas Service
Service/Inspection of Gas Equipment

| Appliance Type | Inspected | Cleaned Burner Pilot | Filter Inspected | Adjusted | Repaired | Gas Leak Repaired | Appliance Parts Replace Program | Unsafe Condition Identified | Refer to Licensed Contractor |
|---|---|---|---|---|---|---|---|---|---|
| Range | | | | | | | | | |
| Oven | | | | | | | | | |
| Water Heater | | | | | | | | | |
| Heating Appliance | | | | | | | | | |
| Dryer | | | | | | | | | |
| Pool/Spa Heater | | | | | | | | | |
| Other | | | | | | | | | |

## Electric Service
Service/Inspection of Electric Equipment

| Equipment Type | Inspected | Voltage Read | Problem Corrected | Parts/Contractor Referral | Unsafe Condition Identified | Refer to Dealer |
|---|---|---|---|---|---|---|
| Service Panel | | | | | | |
| Voltage Problem | X | | | | | |
| Complete Outage | | | | | | |
| Partial Outage | | | | | | |
| Electric Range | | | | | | |
| Electric Water Heater | | | | | | |
| Other | | | | | | |

**Remarks:**

Inspected PG&E cables @ meter panel, Performed voltage @ load test @ panel, Power @ volts checked O.k.

RVM to be checked on for installation at House @ Redmount TX T-306

Case #: _____

## Additional PG&E Work Required
☐ The work you requested will require additional PG&E follow up or repairs to complete. Please refer to your case number above when calling for additional information regarding your request.

Thank you for the opportunity to serve you
Were you satisfied with the service? Yes ☐ No ☐ If your answer is "No" how can we improve?

Comments: See the back of this form for additional services

Attachment #4

| CLOCK | | AC Frequency Derived Clock Showing Difference from Normal | | | |
|---|---|---|---|---|---|
| DATE | FILE | WC CLOCK DIFFERENCE SECONDS | ARCATA CLOCK DIFFERENCE SECONDS | NOTES | |
| 6/26/2017 | 8371 | +0:02 | | "Good repair!" | |
| 7/8/2017 | 8430 | -0:21 | | | |
| 7/10/2017 | 8433 | -0:25 | | power off today briefly | |
| 7/11/2017 | 8435 | -0:13 | | talked to Mr. Bear | |
| 7/13/2017 | 8448 | -0:18 | | | |
| 7/22/2017 | 8517 | -0:27 | | | |
| 7/22/2017 | 8526 | -0:29 | | | |
| 7/25/2017 | 8550 | -0:21 | | | |
| 8/15/2017 | 8647 | +0:08 | | | |
| 8/15/2017 | 8650 | +0:09 | | | |
| 8/15/2017 | 8651 | +0:12 | | | |
| 8/16/2017 | 8656 | +0:14 | | | |
| 8/17/2017 | 8663 | +0:11 | | | |
| 8/17/2017 | 8669 | +0:14 | | | |
| 8/18/2017 | 8670 | +0:17 | | | |
| 8/19/2017 | 8675 | +0:23 | | | |
| 8/19/2017 | 8679 | +0:24 | | | |
| 8/20/2017 | 8681 | +0:27 | | | |
| 8/20/2017 | 8682 | +0:25 | | | |
| 8/23/2017 | 8706 | +0:15 | | | |
| 8/25/2017 | 8707 | +0:17 | | | |
| 9/2/2017 | 8723 | +0:10 | | | |
| 9/9/2017 | 8821 | +0:01 | | | |
| 9/15/2017 | 8840 | +0:15 | | | |
| 10/6/2017 | 8946 | +0:25 | | | |
| 10/7/2017 | 8950 | +0:30 | | brief power outage | |
| 7/8/2018 | 9638 | +0:24 | | | |
| 7/13/2018 | 9650 | -0:55 | | | |
| 7/21/2018 | 9687 | -0:44 | | | |
| 7/22/2018 | 9691 | -0:18 | | | |
| 7/23/2018 | 9696 | -0:50 | | | |
| 7/24/2018 | 9703 | +0:02 | | | |
| 7/29/2018 | 9735 | 0:00 | | | |
| 7/30/2018 | 9747 | +0:00 | +0:00 | 9749,9750 BUT, AMM | |
| 8/4/2018 | 9755 | -0:14 | -0:07 | 9053 BUT, HYD | |
| 8/5/2018 | 9766 | +0:16 | | | |
| 8/5/2018 | 9761 | -0:14 | | | |
| 8/5/2018 | 9766 | +0:16 | | | |
| 8/6/2018 | 9771 | | -0:13 | | |
| 8/6/2018 | 9773 | -0:38 | | | |
| 8/7/2018 | 9792 | +3:31 | | | |
| 8/8/2018 | 9794 | +3:29 | | | |
| 8/8/2018 | 9798 | | -0:19 | | |
| 8/14/2018 | 9800 | | -0:40 | | |
| 8/18/2018 | 9806 | | -0:33 | 9809 BUT, AMM | |

#4

| Date | # | +time | | -time | | Notes | |
|---|---|---|---|---|---|---|---|
| 9/6/2018 | 9918 | +3:16 | | | | | |
| 8/19/2018 | 9828 | +3:12 | | | | | |
| 8/19/2018 | 9830 | | | -0:36 | | 9832 BUT, AMM | |
| 8/28/2018 | 9842 | | | -0:16 | | | |
| 8/29/2018 | 9851 | +0:27 | | | | | |
| 8/29/2018 | 9852 | | | -0:43 | | | |
| 9/1/2018 | 9858 | | | -0:33 | | | |
| 9/29/2018 | 9966 | +2:00 | | | | | |
| 9/6/2018 | 9876 | | | -0:38 | | | |
| 9/6/2018 | 9893 | +3:08 | | | | | |
| 9/13/2018 | 9898 | | | -0:17 | | 9897 BUT, HYD, AMM | |
| 9/13/2018 | 9902 | +3:27 | | | | | |
| 9/17/2018 | 9920 | | | -0:31 | | | |
| 9/18/2018 | 9975 | | | -0:51 | | | |
| 10/19/2018 | 0021 | | | -0:40 | | 0023 BUT, HYD, AMM | |
| 11/20/2018 | 0079 | | | -0:43 | | 0083 BUT, HYD, AMM | |

BUT = BUTANE
HYD = HYDROGEN GAS
AMM = AMMONIA
PROF = PROPANE

*Attachment #5*

| | | | | |
|---|---|---|---|---|
| **Pacific Gas and Electric Company** | | Revised | Cal. P.U.C. Sheet No. | 14079-E |
| U 39  San Francisco, California | Cancelling | Revised | Cal. P.U.C. Sheet No. | 13061-E |

ELECTRIC RULE NO. 2　　　　　　　　　　　　Sheet 4
DESCRIPTION OF SERVICE

C.  VOLTAGE AND FREQUENCY CONTROL (Cont'd.)

  1.  CUSTOMER SERVICE VOLTAGES (Cont'd.)

    a.  (Cont'd.)

| Nominal Two-Wire And Multi-Wire Service Voltage | Minimum Voltage To All Services | Maximum Service Voltage On Residential And Commercial Distribution Circuits | | Maximum Service Voltage On Agricultural And Industrial Distribution Circuits |
|---|---|---|---|---|
| | | Class A | Class B | |
| 120 | 114 | 120 | 126 | 126 |
| 208 | 197 | 208 | 218 | 218 |
| 240 | 228 | 240 | 252 | 252 |
| 277 | 263 | 277 | 291 | 291 |
| 480 | 456 | 480 | 504 | 504 |

  1)  For purposes of energy conservation, PG&E's distribution voltage will (N)
      be regulated to the extent practicable to maintain service voltage on
      residential and commercial distribution circuits within the minimum
      and maximum voltages specified above for Class A circuits.

  2)  The residential and commercial distribution circuits that cannot be
      operated within the minimum and maximum voltages for Class A
      circuits shall be regulated to the extent practicable to maintain
      service voltage within the minimum and maximum voltages for
      Class B circuits and, whenever possible, within the minimum and
      maximum voltages for Class A circuits. (N)

(Continued)

| | | | |
|---|---|---|---|
| Advice | 1588-E | Issued by | Date Filed　　July 2, 1996 |
| Decision | | Robert S. Kenney | Effective　　August 11, 1996 |
| | | Vice President, Regulatory Affairs | Resolution |

**Pacific Gas and Electric Company**
U 39   San Francisco, California

Revised Cal. P.U.C. Sheet No. 11261-E
Cancelling Revised Cal. P.U.C. Sheet No. 7682-E

**ELECTRIC RULE NO. 2**
**DESCRIPTION OF SERVICE**

Sheet 5

C. VOLTAGE AND FREQUENCY CONTROL (Cont'd.)

   1. CUSTOMER SERVICE VOLTAGES (Cont'd.)

      b. Exceptions to Voltage Limits

         Voltage may be outside the limits specified when the variations:

         1) Arise from the temporary action of the elements.

         2) Are infrequent momentary fluctuations of a short duration.

         3) Arise from service interruptions.

         4) Arise from temporary separation of parts of the system from the main system.

         5) Are from causes beyond the control of PG&E.

      c. It must be recognized that, because of conditions beyond the control of PG&E or customer, or both, there will be infrequent and limited periods when sustained voltages outside of the service voltage ranges will occur. Utilization equipment may not operate satisfactorily under these conditions, and protective devices may operate to protect the equipment.

      d. The sustained service delivery voltages are subject to minor momentary and transient voltage excursions which may occur in the normal operation of PG&E's system. Subject to the limitations of C.1.a. above, the voltage balance between phases will be maintained by PG&E as close as practicable to 2½ percent maximum deviation from the average voltage between the three phases.

(Continued)

| | | | |
|---|---|---|---|
| Advice | 1303-E | Issued by | Date Filed June 21, 1990 |
| Decision | | Robert S. Kenney | Effective July 31, 1990 |
| | | Vice President, Regulatory Affairs | Resolution |



| | | Revised | Cal. P.U.C. Sheet No. | 11262-E |
|---|---|---|---|---|
| | Cancelling | Revised | Cal. P.U.C. Sheet No. | 9313-E |

ELECTRIC RULE NO. 2  
DESCRIPTION OF SERVICE

Sheet 6

C. VOLTAGE AND FREQUENCY CONTROL (Cont'd.)

1. CUSTOMER SERVICE VOLTAGES (Cont'd.)

   e. Where the operation of the applicant's equipment requires unusually stable voltage regulation or other stringent voltage control beyond that supplied by PG&E in the normal operation of its system, the applicant, at his own expense, is responsible for installing, owning, operating, and maintaining any special or auxiliary equipment on the load side of the service delivery point as deemed necessary by the applicant.

   f. The applicant shall be responsible for designing and operating his service facilities between the service delivery point and the utilization equipment to maintain proper utilization voltage at the line terminals of the utilization equipment.

2. CUSTOMER UTILIZATION VOLTAGES

   a. All customer-owned utilization equipment must be designed and rated in accordance with the following utilization voltages specified by the American National Standard C84.1 if customer equipment is to give fully satisfactory performance:

| Nominal Utilization Voltage | Minimum Utilization Voltage | Maximum Utilization Voltage |
|---|---|---|
| 120 | 110 | 125 |
| 208 | 191 | 216 |
| 240 | 220 | 250 |
| 277 | 254 | 289 |
| 480 | 440 | 500 |

(Continued)

| Advice | 1303-E | Issued by | Date Filed | June 21, 1990 |
|---|---|---|---|---|
| Decision | | Robert S. Kenney | Effective | July 31, 1990 |
| | | Vice President, Regulatory Affairs | Resolution | |

Attachment #5

Pacific Gas and Electric Company
U 39
San Francisco, California

Revised Cal. P.U.C. Sheet No. 11263-E
Cancelling Revised Cal. P.U.C. Sheet No. 9313-E

**ELECTRIC RULE NO. 2**
DESCRIPTION OF SERVICE
Sheet 7

C. VOLTAGE AND FREQUENCY CONTROL (Cont'd.)

2. CUSTOMER UTILIZATION VOLTAGES (Cont'd.)

b. The differences between service and utilization voltages are allowances for voltage drop in customer wiring. The maximum allowance is 4 volts (120 volt base) for secondary service.

c. Minimum utilization voltages from American National Standard C84.1 are shown for customer information only as PG&E has no control over voltage drop in customer's wiring.

d. The minimum utilization voltages shown in a. above, apply for circuits supplying lighting loads. The minimum secondary utilization voltages specified by American National Standard C84.1 for circuits not supplying lighting loads are 90 percent of nominal voltages (108 volts on 120 volt base) for normal service.

e. Motors used on 208 volt systems should be rated 200 volts or (for small single-phase motors) 115 volts. Motors rated 230 volts will not perform satisfactorily on these systems and should not be used. Motors rated 220 volts are no longer standard, but many of them were installed on existing 208 volt systems on the assumption that the utilization voltage would not be less than 187 volts (90 percent of 208 volts).

3. FREQUENCY

PG&E will exercise reasonable diligence and care to regulate and maintain its frequency within reasonable limits but does not guarantee same.

(Continued)

*Advice* 1303-E
*Decision*

*Issued by*
***Robert S. Kenney***
*Vice President, Regulatory Affairs*

*Date Filed* June 21, 1990
*Effective* July 31, 1990
*Resolution*


#6

VOLTAGE READINGS WILLOW CREEK

DATE         FILE   VOLTAGE

  8/7/2018  9789  **124.2**
 8/29/2018  9848  **115.9**
10/23/2018  0031  **113.7**


THESE ARE PAST JANUARY 2019

2/24/2019  0231  **113.0**
2/24/2019  0232  **110.9**
2/26/2019  0237  **109.8**
 3/1/2019  0239  **108.9**

attachment #7

Saturday, August 12, 2017

Howard, standing at the answering machine says, "Yeah."

The answering machine does not have time and date entered, because AC power goes off so frequently, and the machine then forgets.

Machine robot says, "Thursday, 8 si"

"Yeah, I'm looking for Howard Krausse, umm, this is Dan Lafawnd with PG&E. I'm a troubleman in Willow Creek and I have a tag to put a RVM meter, electric RVM. It goes on your wires, to uh gauge your uh, usage. Sooo, ...I don't know if you know anything about this, but if you could just give me a call, I'm trying to get in -- actually, I was into your residence, at 640 Forest View Drive, ummm, but you have a lock on both of the meter uh boxes-panels where I need to get into.

Uhmmm, otherwise, uh, I really-really -- do not think there is anything goin' on as far as somebody uh uh, I'm not sure what-what we're putting this on there for, um, but maybe there's somethin' wrong with the meter and you could'n get a digital meter put in, which is also a non-smart digital meter, or just go ahead an' go with the smart meter like everybody else does.

Sooo...give me a call back Howard...Krausse...uh..Dan Lafawnd here -- 530-902-6529. Thanks bye."

Anne says, "Beautiful piece of evidence!"
Machine says, "End..."





## Blown Hard Drive on August 12, 2017 Transcript of CIMG 8952 video

This is the screen of uh the uh, I'll just call the "other um Zmodo" system, the one that I documented the PGE man's arrival. that hard drive is fine. but on this one. which is . as you see here, the one that would show the power outage on 8/12, and that hard drive was uh "zapped" I'll call it. and this (referring to the rightmost part of the screen) blue line here is where it started working again on the next day, August 13 (2017). so that hard drive was tampered with. as part of the burglary.