SCOTT H. MCNUTT (CSBN 104696)
Email: smcnutt@ml-sf.com
324 Warren Road
San Mateo, California 94402
Telephone: (415) 760-5601

*Appearing Specially As Counsel to William Abrams for the Purposes of this Motion Only*

William B. Abrams
end2endconsulting@gmail.com
2041 Stagecoach Rd.
Santa Rosa, CA, 95404
Tel: 707 397 5727

*Pro Se Fire Victim Claimant and Party to related proceedings before the California Public Utilities Commission and the California Office of Energy Infrastructure Safety*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>                               Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>\* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administrated)<br><br>**REPLY TO REORGANIZED DEBTORS' OPPOSITION TO MOTION FOR ORDER DEEMING WILLIAM B. ABRAMS SUPPLEMENT TO DAMAGE CLAIMS TIMELY**<br><br>[Related to Dkt. No. 13518, 13537, 13599, 13598, 13594]<br><br>**Hearing:**<br>Date: March 22, 2023<br>Time: 10:00a.m. (Pacific Time)<br>Place: (Tele/Videoconference Only)<br>       United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

William B. Abrams ("**Abrams**"), submits this "Reply to Reorganized Debtors' Opposition to Motion for Order Deeming William B. Abrams Supplement to Damage Claims Timely" (the "**Reply**" or "**Abrams Reply**") for a revised order substantially in the form attached as **Exhibit A** hereto that approves, as timely, supplements to the Damage Claims of Abrams which were valid and timely filed through the Fire Victim Trust (the "**FVT**" or "**Trust**") and other remedies that the Court may view as fair and just. Abrams, as a PG&E victim, ratepayer and Northern California resident, submits this Reply in response to the "Reorganized Debtors' Opposition to Motion for Order Deeming William B. Abrams Supplement to Damage Claims Timely" (the "**Debtor Opposition**" or "**Debtors' Opposition**") [Dkt.13599] and in accordance with the "Order Directing Reorganized Debtors to Respond to Motion Filed by William B. Abrams" (the "**Order**") [Dkt. 13537]. This Reply will also address the "Statement of Baupost Group Securities, LLC Regarding William B. Abrams's Motion for Order Deeming Supplement to Damage Claims Timely, and Related Filings" (the "**Baupost Statement**") [Dkt. 13598] and the "Fire Victim Trustee's Statement and Reservation of Rights In Response to Motion for Order Deeming William B. Abrams Supplement to Damage Claims Timely" (the "**Trustee Statement**") [Dkt. 13594]. This Reply provides further support for the "Motion for Order Deeming William B. Abrams Supplement to Damage Claims Timely" (the "**Motion for Damage Claim Supplements**" or "**Abrams Motion**") [Dkt. 13518].

## I. PRELIMINARY STATEMENT

Simply stated, Abrams asks the Court and the Debtor to be consistent with their treatment of Damage Claim Supplements. The Debtor acknowledged in their opposition to Baupost that "*there is no bar date under any Order of the Court or the Bankruptcy Code for the filing of an amendment or supplement to an existing proof of claim*"[1] and then stipulated to enter into settlement negotiations and identify how these claim supplements would be funded and administered.[2] While there are differences in the claim types between wildfire victims and Baupost, the acceptance of claim supplements must be treated the same.

---

[1] See "Reorganized Debtors' Opposition to Baupost Group Securities, LLLC's Motion for Order Deeming Supplement to Its Proofs of Rescission or Damage Claims Timely", pg. 2 (lines 16, 17) [Dkt. 13443], filed January 11, 2023
[2] See "Stipulation Resolving Motion of Baupost Group Securities, LLC for Order Deeming Supplement to Its Proofs of Rescission or Damage Claims Timely" [Dkt. 13462], filed January 20, 2023

The Debtors and Bauposts' attempt to subordinate victim claim supplements and thereby the claims themselves must be rejected by the Court. As we look at the Debtors' Opposition to the Abrams Motion, we see that because the facts are not on their side, the Debtor overly relies upon tired process arguments and attacks on Abrams himself. This is in stark contrast to the Debtors' opposition to Baupost which stated that "*the Reorganized Debtors have not contended and do not contend that the Supplements themselves were untimely filed.*"

Certainly, the Debtor releasing the names of Abrams two minor children is beyond the pale but unfortunately in keeping with the Debtors' unsavory tactics within this case. In the future, I would appreciate it if the Debtor would redact my children's names from their papers and remove those names from their mouths in preparation for the hearing on March, 22, 2023. That said, it is clear that the Debtors' Opposition is nothing more than a distraction technique to avoid the material issues as described within the Motion for Damage Claim Supplements and the factual allegations put forward by Baupost, Elliot Management Corporation and others that reference independent and corroborating sources that detail the Debtors misinformation campaign and the injuries that were revealed when the Debtors built the plan confirmation on false statements.

The Baupost Statement asserts that they "*did not seek to prejudice the rights or treatment of Fire Victims*" and would not "*change or affect the rights or treatment*" of victims.[3] Whether or not Baupost "did not seek to prejudice" and step on victims to assert their rights is not the point. Baupost should represent on the record that they will under no uncertain terms take money for their damage claim supplements before wildfire victims. The Court and victims should be assured that the absolute priority rule will not be violated. Indeed, the absolute priority rule was not intended to establish an order for certain claims in accordance with Section 1129(b)(2) only to subsequently allow parties to violate this rule through a distorted post-confirmation execution of the plan and/or through closed-door negotiations. Although, the Debtor and Baupost may like to proceed as if the Baupost Motion had never been filed, this Court must now deal with its consequences that intended or not violate the rights of victims within this case. Specifically, Baupost presents compelling evidence that the plan of reorganization was confirmed based on Debtor misinformation and without adequate disclosure of information.

---

[3] See "Motion for Order Deeming Baupost Group Securities, LLC's Supplement to Its Proofs of Rescission or Damage Claims Timely" [Dkt 13393], pg. 2 (lines 19-21)

Of course, all of the implications stemming from this new evidence cannot be remedied through the Abrams Motion. This is why Abrams respectfully requests that the Court simply (1) approve as timely his claim supplements or amendments (2) permit Abrams and joining parties to present remedies at the hearing on March 22, 2023 and (3) encourage parties to meet and confer prior to the continued hearing to be set on the calendar within 60 days. The singular issue presented by this motion is whether Abrams may timely file a supplement or amendment and in so doing provide a procedural pathway for other wildfire survivors to do the same. Although this simple and modest request should require no more evidence or argument, Abrams feels compelled to address the Debtors' Opposition and respectfully requests that the Court consider the following:

## II. REPLY TO DEBTOR OPPOSITION

### A. REPLY TO DEBTORS' FALSE ASSERTION THAT "CLAIMS ARE NOT PROPER AMENDMENTS OR SUPPLEMENTS AND, IN ANY EVENT, AT MOST, CONSTITUTE FIRE CLAIMS"

The Debtors have put forward NO objection to the Abrams claim yet the Debtors falsely assert that "*there does not exist a proof of claim against the Debtors*." In point of fact, Abrams filed his claim well before the bar date and has relied upon this over the past few years since submitting these claims and awaiting the opportunity to rebuild his home and recover. The Debtors attempt to distract from these facts by calling out one claim number (claim# 20057) that was apparently represented as a claim of a William **"E."** Abrams from the Debtors' claimant view is a red herring. If anything, this is a Fire Victim Trust administration error and the attached screenshot of the Fire Victim Trust (the "**FVT**") portal for Abrams listing this claim number demonstrates this as a valid and timely claim for Abrams (*see* **Exhibit B: Abrams FVT Screenshot**). The Court should dispense with this Debtor distraction. The extent to which this example points to a systemic Trust administration issue, it should be immediately remedied by the Trustee.

The Debtors' Opposition also is in stark contrast to the Trustee position and this contradiction should be informative in evaluating the remedies proposed by Abrams. The Debtors state these "*New Claims asserted by Abrams **are plainly Fire Claims***" while the Trustee states that they "***are not** Fire Victim Claims – because they do not "arise out of" or "result from" any Fire.*" The Trustee then goes on within their statement to assert that these are "fraud claims." Here both the Debtor and the Trustee conflate the claim type with how these injuries were revealed. The Trustee asserts that these

claims should be characterized as "fraud-based claims." This Court is not obligated to make a characterization of these claims at this time. However, the definition of "Fire Claims" could not be more expansive and leaves little room to doubt that these supplemental damages are in fact supplements to the timely filed Fire Claims. This pattern of "misstatements and nondisclosures" as described by Baupost and others is not the type of claim but provides evidence as to how and why these injuries were only realized by victims like Abrams after the Baupost Motion revealed this pattern. The injuries described by Abrams stemming from the misrepresentations of the stock, skyrocketing homeowner insurance rates and PG&E erroneous billing are all directly attributable to the fires and are of course Fire Claims. The following definition of "Fire Claims" captures these supplemental injuries very directly:

> "any Claim against the Debtors **in any way** arising out of the Fires, including, but not limited to, any Claim resulting from the Fires for (a) **general and/or specific damages**, including any Claim for personal injury, wrongful death, emotional distress and similar claims, pavement fatigue, damage to culverts, ecosystem service losses, municipal budget adjustments/reallocation, lost revenue and tax impacts, local share of reimbursed fire clean-up costs, future estimated infrastructure costs, water service losses, lost landfill capacity, costs related to unmet housing (e.g., **housing market impact due to the Fires** and adjustments for increased homeless population), and/or **hazard mitigation costs** (including, watershed restoration and hazardous tree removal expenses); (b) damages for repair, depreciation and/or replacement of damaged, destroyed, and/or lost personal and/or real property; (c) damages for loss of the use, benefit, goodwill, and enjoyment of real and/or personal property; (d) damages for loss of wages, earning capacity and/or business profits and/or any related displacement expenses; (e) **economic losses;** (f) damages for wrongful injuries to timber, trees, or underwood under California Civil Code § 3346; (g) damages for injuries to trees under California Code of Civil Procedure § 733; (h) punitive and exemplary damages under California Civil Code §§ 733 and 3294, California Public Utilities Code § 2106, or otherwise, (i) restitution; (j) fines or penalties; (k) any and all costs of suit, including all attorneys' fees and expenses, expert fees, and related costs, including all attorneys and other fees under any theory of inverse condemnation; (l) for prejudgment and/or **postpetition interest**; (m) other litigation costs stemming from the Fires; and (n) declaratory and/or injunctive relief." (**emphasis added**)

There is absolutely no interpretation of this very broad definition of "fire claims" that would exclude the types of claim supplements asserted by Abrams. The effects on the victim stock valuation, increases in homeowner insurance, property devaluation and erroneous PG&E billing all stem from the fires and certainly fall into "economic losses", "housing market impacts due to the fires" and within other areas of this definition.

The Fire Victim Trust's attempt to recast these fire claim supplements as "fraud" claims is not before the Court. That said, Abrams is not arguing for or against allegations of fraud within the Motion for Damage Claim Supplements or within this Reply. The only party that seems to consistently characterize PG&E's actions as fraudulent is the Trustee. She is free to do so but she should not project those assertions onto Abrams' Motion. These Trustee allegations of Debtor fraud if proven should not in any way limit the valid damage claim supplements described within the Abrams Motion which clearly fall within the definition of Fire Claims.

To be clear, Abrams asserts that these misrepresentations and nondisclosures hid injuries that would have been apparent to victims if they had been disclosed prior to plan confirmation. The "fraud" if correctly characterized by the Trustee was the mechanism that hid the injuries and associated Fire Claim Supplements but not the injuries, damages or claims themselves. That said, Abrams does agree with the Trustee that these Fire Claim Supplements should not affect the Corpus of the Fire Victim Trust but instead should be paid directly by PG&E. Perhaps the Trustee by characterizing the Debtors' actions as "fraud" or "fraudulent" is trying to insulate the Debtor from further actions where the Debtor might rely on exculpations rather than the merits of the claim supplements. Regardless of the motive, this is not an approach that is in the best interests of the victims within this case and not a characterization that Abrams brings before this Court.

### B. REPLY TO DEBTORS' FALSE ASSERTION THAT "ABRAMS' NEW CLAIMS MAY NOT BE TREATED AS TIMELY"

The Debtors' notion that claim supplements should not be allowed after the bar date when the proof of claim from the same claimant is timely filed should be viewed as yet another Debtor distraction. Of course, these are allowed under this plan and have been commonly filed within this case and many others. Courts have consistently found that the purpose of the bar date is to give the debtor and other creditors a deadline for claims, but this purpose is not served if a creditor is prevented from supplementing a claim with new information particularly when strategically timed nondisclosures and misstatements are revealed. In this PG&E Bankruptcy Case, the Debtors' misstatements and nondisclosures prior to the bar date made it impossible for Abrams to reasonably ascertain these injuries and file for relevant damages thus compelled Abrams to file this post-confirmation motion.

6

Case: 19-30088    Doc# 13623    Filed: 03/15/23    Entered: 03/15/23 14:02:49    Page 6 of 17

Rhetorical questions are appropriate here in response to PG&E's position. Is PG&E unaware that over 90% of Fire Claims were filed in an "unknown amount?" It naturally follows that many of these claims will require supplementation and amendment.

Abrams finds these PG&E assertions regarding timeliness to be incomprehensible given statements they have made elsewhere. For example, in response to the Baupost Motion, PG&E emphatically stated that *"there is no timing requirement for the filing of an amendment or supplement to a party's existing proof of claim."*[4] Why the Debtor is eager to accept this timing for Baupost to settle their claim supplements but then unwilling to accept this same standard for Abrams and other PG&E victims is (1) inconsistent and inequitable application of the law (2) unjust and unfair to victims and (3) at odds with PG&E public statements that "victims are our first priority."

Additionally, the Court should consider the "equitable tolling" principle. Here claims are allowable after the bar date when despite reasonable care and diligent effort, the claimant(s) did not discover the injury until after the bar date. It was not until the Baupost Motion that Abrams and many victims were made aware of these injuries when the falsity of the Debtors statements became apparent. Abrams, Baupost, Elliott Management and many other parties have clearly demonstrated that the Debtor actively engaged to deceive claimants through their material misstatements and nondisclosures and therefore claim supplements and new claims should be permitted by the Court. However, unlike the papers from these investors claiming damage claim supplements, Abrams' Motion for Damage Claim Supplements points out the many instances within the case where Abrams urged the Debtor to disclose their safety record and their criteria for the stock valuation. Similarly, Abrams considerable arguments before the Court to ensure the Debtors' representations were included within the victim disclosure statement were rejected by the Debtor over and over again within the disclosure statement hearings. Given the consistent and profound efforts of the Debtor to not disclose this material information prior to the victim vote, the revelations exposed through the Camp Fire Report cited by Baupost and the subsequent independent reports cited within the Abrams Motion are particularly troubling. Although it is not germane to the specific and limited request within this motion, it is reasonable to conclude that the types of claim supplements that the Debtor was guarding against through misinformation prior to plan confirmation are in fact the same claim

---

[4] See "Reorganized Debtors' Opposition to Baupost Group Securities, LLLC's Motion for Order Deeming Supplement to Its Proofs of Rescission or Damage Claims Timely", pg. 3 (lines 19.20) [Dkt. 13443], filed January 11, 2023

supplements that Abrams now brings before this Court. What is important for the Court to consider is that a path that allows a debtor to rely upon a false narrative to dupe unsuspecting victims is not a road to just outcomes within this bankruptcy case or any other. Therefore, Abrams urges the Court to not acquiesce to the perverse arguments put forward within the Debtors' Opposition.

### C. REPLY TO THE DEBTORS' FALSE ASSERTION THAT "THE CHANNELING INJUNCTION UNIVERSALLY APPLIES TO ALL FIRE CLAIMS INCLUDING AMENDMENTS TO FIRE CLAIMS"

The Debtor Opposition asserts that the channeling injunction and a myriad of exculpations protect the Debtor from themselves in terms of their pre-confirmation misstatements and nondisclosures. This is a complete overstatement and misinterpretation of 11 U.S. Code § 524 which states that these injunctions do not "*relieve any such entity of the duty to comply with, or of **liability under, any Federal or State law regarding the making of fraudulent conveyance**... or relieve the debtor of the debtor's obligation to comply with the terms of the plan of reorganization, **or affect the power of the court to exercise its authority under section 1141 and 1142 to compel the debtor to do so.**"* (emphasis added). Here, Abrams through the Motion for Damage Claim Supplements is calling on the Court to exercise its authority and not allow the Debtor to re-victimize the 70,000+ victims including Abrams through their deliberate and willful pre-confirmation deceptions.

Courts have often approved amendments to channeling injunctions. As an example, In re W.R. Grace and Co. (2008), the court approved a settlement agreement that modified the channeling injunction to allow future claims related to a particular type of asbestos-related disease to be brought outside the trust. The court found that this modification was necessary to ensure that all claimants were treated fairly and to ensure that the trust remain solvent. Similarly, In re Garlock Sealing Technologies LLC (2014), the court found that the debtor had underestimated its asbestos liabilities and had engaged in discovery abuses. As a result, the court ordered the debtor to establish a trust with a higher funding level and allowed claimants to bring evidence of their exposure to the asbestos-containing products in order to seek higher compensation. Here, Abrams seeks the opportunity for parties to meet, confer and evaluate similar remedies with the Debtor. This is particularly important because prior email requests to engage on these issues related to damage claim supplements have been rejected by the Debtor, the Trustee and the Trust Oversight Committee (see **Exhibit C**). **Importantly and unlike Baupost and Elliott Management, Abrams does not assert any damage claim supplements that he does not expect would benefit all of the victims within this case who**

Case: 19-30088    Doc# 13623    Filed: 03/15/23    Entered: 03/15/23 14:02:49    Page 8 of 17

**sustained like injuries that were exposed through the Baupost Motion and those described within the Motion for Damage Claim Supplements.**

### III. CONCLUSION

The statement put forward by the Trustee in response to the Motion for Damage Claim Supplements stated "*The Trustee whole-heartedly supports Fire survivors being fully compensated for losses they have incurred.*"[5] These kind words will ring hollow if the Trustee and core committees representing the interests of victims don't actively engage to support the rights and remedies of victims relative to these damage claim supplements. In stark contrast to these kind words, Ms. Grassgreen on behalf of Baupost and many other attorneys representing investor interests take legal action and fight doggedly for their clients. It is Abrams sincere hope that TCC attorneys, Trust Oversight Committee members and Fire Claimant Professionals will step up to support the post-confirmation interests of victims as a whole.

That said, Abrams and those that filed joinders to this Motion understand that victims cannot afford to wait on core committees that may be bound by the agreements associated with those committees to sit on the sidelines and not oppose the Debtor. Yes, the Debtors and the institutional investors within this case have a mountain of resources to tip the scales of justice in their favor and subordinate the interests of victims. However, these claim supplements are too important to leave only as remedies for savvy investors that would gladly step on and over victims to obtain more favorable claim determinations. This is why Abrams is so heartened and appreciative that certain attorneys representing thousands of victims have joined in support of the Motion for Damage Claim Supplements along with many victims that have taken the time to write letters and express their views. If the Court does not hear these less-resourced voices then justice within this case will not be served and this unfair treatment of victims will become precedent for future bankruptcy cases.

Instead, Abrams urges the Court to approve this Motion in substantially the same form attached as **Exhibit A** and to provide other and further relief as the Court may deem necessary to ensure just outcomes within this case relative to the treatment of claims and claim supplements. The Debtor has affirmed that "*there is no timing requirement for the filing of an amendment or

---

[5] See "Fire Victim Trustee's Statement and Reservation of Rights In Response to Motion for Order Deeming William B. Abrams Supplement to Damage Claims Timely" [Dkt. 13594], pg. 2, filed March 8, 2023

*supplement*" when responding to Baupost's Motion but refused to acknowledge this fact in support of their victims. It is important for the Court to understand that Abrams made attempts to meet and confer with the Debtor to resolve these issues prior to filing the Motion for Damage Claim Supplements but these requests were denied (see **Exhibit C**). Due to the Debtors' unwillingness to resolve these claim supplements in good-faith, the Court must intervene and (1) approve as timely these claim supplements or amendments (2) permit Abrams and joining parties to present remedies at the hearing on March 22, 2023 and (3) encourage parties to meet and confer prior to a continued hearing to be set on the calendar within 60 days.

      Abrams would like to conclude with a housekeeping matter. As the Court is aware, Abrams "timely submitted an objection to the Fire Victim Trust Documents." This timely filing is the gating fact that the Court has stated is the necessary precondition to reserve the rights to "seek court review in accordance with Section IX of the Fire Victim Claims Resolution Procedures." Abrams respectfully asks the Court to affirm these rights as has been done for Debra Grassgreen, Karl Knight and the other handful of victims within this case that like Abrams also objected to the Trust Documents. Abrams brings up this housekeeping matter in the context of this Motion for Damage Claim Supplements because he is concerned based upon the Trustee's Opposition that the Debtors position that they may now argue that he has waived this right. He has not.

Executed on March 15, 2023, at Santa Rosa, CA.

                                                      Respectfully submitted,

                                          /s/ Scott H. McNutt

                                         Scott H. McNutt
                                         Advising Attorney on Behalf of William Abrams

                                         Respectfully submitted,

                                         William B. Abrams
                                         Pro Se Claimant

# EXHIBIT A

**Proposed Order**

William B. Abrams
end2endconsulting@gmail.com
2041 Stagecoach Rd.
Santa Rosa, CA, 95404
Tel: 707 397 5727

*Pro Se Fire Victim Claimant and Party to related proceedings before the California Public Utilities Commission and the California Office of Energy Infrastructure Safety*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    -and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>                 Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankr. Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br><br><br>**ORDER DEEMING WILLIAM B. ABRAMS SUPPLEMENT TO DAMAGE CLAIMS TIMELY** |

Upon the *Motion for Order Deeming William B. Abrams Supplement to Damage Claims Timely* (the "**Motion**");[1] and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that good cause exists to grant the Motion; and William B. Abrams ("**Abrams**") having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances and no other or further notice need be provided; and the Court having considered the Motion, all pleadings and papers filed in connection with the Motion, and the arguments of counsel and evidence proffered at the hearing on the Motion; after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1) The Motion is Granted.

2) The Victim Damage Claim Supplement is approved as a timely-filed amendment to the Abrams Proof of Claim against the Debtors' estate

3) The Resident Damage Claim Supplement is approved as a timely-filed amendment to the Abrams Proof of Claim against the Debtors' estate

4) The Ratepayer Damage Claim Supplement is approved as a timely-filed amendment to the Abrams Proof of Claim against the Debtors' estate

5) The Court acknowledges and affirms that Abrams consistent with the "Order Confirming Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020" [Dkt. 8053] "timely submitted an objection to the Fire Victim Trust Documents and shall have the right to seek court review in accordance with Section IX of the Fire Victim Claims Resolution Procedures for his Damage Claims and the aforementioned Damage Claim Supplements."

6) Debtors, Abrams, TCC Members and TOC Members along with those adjoining the Motion for Damage Claim Supplements shall meet and confer to identify a remedy to evaluate, fund and administer the aforementioned valid damage claim supplements. If no mutually agreeable remedy is identified, a hearing will be set on the calendar on or about May, 2023 at which time parties may present their arguments relative to the handling of these valid claims.

---

[1] Capitalized terms not defined herein shall have the meanings used in the Motion.

**EXHIBIT B**

**William B. Abrams Fire Victim Trust Portal Screenshot**
**(Personal ID information redacted)**

# **EXHIBIT B**

## **William B. Abrams Fire Victim Trust Portal Screenshot**
## **(Personal ID information redacted)**



# EXHIBIT C

**William B. Abrams Email Correspondence with the Debtor**

# EXHIBIT C

## William B. Abrams Email Correspondence to the Debtor

