UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

-oOo-

In Re:                          ) Case No. 19-30088
                                ) Chapter 11
PG&E CORPORATION                )
                                ) San Francisco, California
            Reorganized Debtor. ) Friday, March 24, 2023
_____ ) 9:00 AM

                                MOTION FOR ORDER DEEMING
                                WILLIAM B. ABRAMS SUPPLEMENT
                                TO DAMAGE CLAIMS TIMELY.
                                FILED BY WILLIAM ABRAMS
                                [13518]

              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE DENNIS MONTALI
           UNITED STATES BANKRUPTCY JUDGE

APPEARANCES (All present by video or telephone):
For the Reorganized        JESSICA LIOU, ESQ.
Debtor:                    Weil, Gotshal & Manges LLP
                            767 Fifth Avenue
                            New York, NY 10153
                            Phone: (212) 310-8000

For William B. Abrams:     SCOTT H. MCNUTT, ESQ.
                           324 Warren Road
                           San Mateo, California 94402
                           Phone: (415) 760-5601

For Kirk Trostle and       ANGELA JAE CHUN, ESQ.
numerous wildfire          Law Office of Angela Jae Chun
claimants:                 10680 Treena Street
                           Suite 160A
                           San Diego, CA 92131
                           Phone: (619) 719-5757

For Karen Gowins, Richard  STEVEN S. KANE, ESQ.
Gowins and numerous        The Kane Law Firm
wildfire claimants:        402 West Broadway
                           Suite 2600
                           San Diego, CA 92101
                           Phone: (619) 236-8700

**eScribers, LLC**

```
1   For Brenda Wright and      NICHOLAS J.P. WAGNER, ESQ.
    numerous wildfire          The Wagner Law Group PC
2   claimants:                 1111 East Herndon Avenue
                               Suite 317
3                              Fresno, California 93720
                               Phone: (559) 449-1800
4
    For Fire Victim Trustee:   DAVID J. MOLTON, ESQ.
5                              Brown Rudnick LLP
                               Seven Times Square
6                              New York, New York 10036
                               Phone: (212) 209-4800
7
    For Baupost Group          DEBRA I. GRASSGREEN, ESQ.
8   Securities, L.L.C.:        Pachulski Stang Ziehl & Jones LLP
                                150 California Street
9                               15th Floor
                                San Francisco, CA 94111
10                              Phone: (415) 263-7000

11

12

13

14

15

16

17

18
    Court Recorder:            LORENA PARADA/ANKEY THOMAS
19                             United States Bankruptcy Court
                               450 Golden Gate Avenue
20                             San Francisco, CA 94102

21  Transcriber:               NATASHA FONDREN
                               eScribers, LLC
22                             7227 N. 16th Street
                               Suite #207
23                             Phoenix, AZ 85020
                               (800) 257-0885
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

**eScribers, LLC**

1    SAN FRANCISCO, CALIFORNIA, FRIDAY, MARCH 24, 2023, 9:00 AM

2                              -oOo-

3       (Call to order of the Court.)

4            THE CLERK:  Court is now in session.  The Honorable

5    Dennis Montali presiding.  Calling the matter of PG&E

6    Corporation.  And I will start bringing counsel in.

7            THE COURT:  Okay.  Why don't we start getting

8    appearances?

9            Good morning, Ms. Liou.  Why don't I start with you

10   and then Mr. Molton for your appearances?

11           MS. LIOU:  Sure.  Good morning, Your Honor.  Jessica

12   Liou from Weil, Gotshal & Manges on behalf of PG&E.

13           THE COURT:  All right.

14           MR. MOLTON:  Good morning, Your Honor.  Can you hear

15   me?

16           THE COURT:  Yes, I can.

17           MR. MOLTON:  Good.  I'm glad.  David Molton of Brown

18   Rudnick appearing for Cathy Yanni in her capacity as Trustee of

19   the PG&E Fire Victim Trusts.

20           THE COURT:  All right.  I see Ms. Grassgreen.  Good

21   morning.

22           MS. GRASSGREEN:  Good morning, Your Honor.  Deborah

23   Grassgreen, Pachulski, Stang, Ziehl & Jones, on behalf of the

24   Baupost Securities, LLC.

25           THE COURT:  And Mr. McNutt.

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 3
of 74

1        MR. MCNUTT:  Morning, Your Honor.  Scott McNutt,

2  appearing specially on behalf of Will Abrams.

3        THE COURT:  Okay.  Well, you're the counsel that I'm

4  supposed to hear from first, and I realize you have other

5  colleagues, Mr. McNutt, that are going to take pace of the

6  time.

7        Ms. Parada, are they waiting to be brought in?

8        THE CLERK:  Yes, Your Honor.  I'm bringing them in.

9        THE COURT:  Okay.  All right.  Well, then, hold on,

10  Mr. McNutt.  Well -- and I see Mr. Abrams.  Good morning, Mr.

11  Abrams.

12        MR. ABRAMS:  Good morning, Your Honor.

13        THE COURT:  All right.  I'm expecting Mr. Wagner,

14  someone, either Mr. or Ms. Kane and Mr. Trostle.

15        THE CLERK:  Your Honor, Mr. Trostle has not joined.

16        THE COURT:  Okay.  I tell you what.  The -- I want to

17  get underway, so go ahead.

18        And Mr. McNutt, you and Mr. Abram said you're going to

19  take eight minutes, and so I'll start you off and then we'll

20  see what other counsel that are on your list.  I see someone, a

21  Ms. Chun, but I don't see her name on the list, so -- I'll --

22        MS. CHUN:  Your Honor, I'm appearing for my colleague,

23  Tom Tosdal.  He was unable to make the schedule change today.

24        THE COURT:  Okay.

25        MS. CHUN:  I represent Kirk Trostle and a number of

1  other fire victims.

2          THE COURT:  Okay.  Well, then, I'm sorry.  Just state

3  your name for the record.  Ms. Chun

4          MS. CHUN:  Angela Jae Chun.

5          THE COURT:  Okay.  Thank you.  Good morning.

6          MS. CHUN:  Good morning.

7          THE COURT:  Okay.  Mr. McNutt, I see you put your

8  jacket on.  That's -- here we go.  All right.  Go ahead.

9  Youth.  I've read all the briefs, and I'm interested to hear

10 what you have to say.

11         MR. MCNUTT:  Morning, Your Honor.  Just so that other

12 people know, you allocated us twenty minutes.  I wanted to take

13 eight minutes to introduce my arguments.  I wanted to defer six

14 minutes to other counsel, and then I wanted to reserve six

15 minutes for rebuttal, and I'll try to stick to that.

16         THE COURT:  And that's right.  And that's what Mr. --

17 I mean, that's what Mr. Abrams notified me, and that's what I

18 was preparing for.  And I'm not keeping this exactly to the

19 precise minute.  This isn't a wrestling match, but I'm going to

20 keep forward.  So anyway, so start your eight.  Let me hear

21 from you.

22         MR. MCNUTT:  Your Honor, I'm not here today to make

23 any complicated arguments.  I'm not here to reach any

24 conclusions.  I'm not here to make any factual findings.  It's

25 my hope that we use today to start a discussion, because I feel

1  we're at the beginning of a process, not at the end of a

2  process.  I know a few things.  Well, Abrams wants nothing.  I

3  mean, he'd like to file a claim as Baupost has filed a claim

4  and reserve, for later, objections to that claim.  He just

5  doesn't want it to be deemed untimely.  That's a simple ask.

6          He'd also like a hearing and sixty days to address

7  other issues.  That's largely my hope that I can get out there

8  and talk to people and try to figure out a path forward.  Mr.

9  Abrams would not ever want to take anything in preference or

10  priority that other people don't get.  He wants to file a

11  placeholder, and he wants to use that to start the discussion

12  as to whether there's more money to be found from PG&E in this

13  case, as a result of various facts which have been revealed in

14  various ways, which I'll discuss in a minute.

15          The fact is, this trust, this case, which was promoted

16  heavily as a hundred-cent case, is probably going to be a

17  seventy-cent case, or something less than a seventy-cent case,

18  at least as far as the wildfire.

19          THE COURT:  How do you -- how do you how do you know

20  that?

21          MR. MCNUTT:  I take that from bits and pieces of

22  things, including bits and pieces of reporting from the trust

23  itself.

24          THE COURT:  Well, I mean, is there anything in writing

25  or on the record from the trustee that validates that?  I mean,

1 you may be right, and you may be wrong.  I just don't know what

2 you know.

3      MR. MCNUTT:  I believe the trustee has said that this

4 will be less than a hundred-cent case, and I believe he has

5 said he hopes it will be a seventy-cent case.  I --

6      THE COURT:  Okay.  Well, Mr. Molton can -- Mr. Molton

7 can comment on that when he's speaking.

8      MR. MCNUTT:  You're absolutely right.  So the trust

9 faces a pretty massive shortfall.  Now, for reasons that will

10 always be a mystery to me, Baupost filed a motion asking for

11 the Court's permission to file an amended claim.  They are --

12 Baupost is very well represented by one of the finest lawyers

13 possible, and they surely did this for some strategic purpose,

14 but in that motion, they allege all sorts of wrongdoing on

15 behalf of PG&E that took place before this case, during this

16 case, and is ongoing.  It might interest the Court that the day

17 before yesterday, a 118-page complaint was filed against PG&E

18 in the Northern District in federal court alleging very similar

19 things to what Baupost is --

20      THE COURT:  Was it -- wait a minute.  It wasn't filed

21 against PG&E, was it?

22      MR. MCNUTT:  It was filed against all its directors

23 and officers.

24      THE COURT:  Oh, but wait, but that's a little

25 different.  I saw a headline in the newspaper, and I don't read

Case: 19-30088    Doc# 13645    Filed: 03/27/23    Entered: 03/27/23 05:10:19    Page 7
of 74

1    it, but your statement is incorrect.  It was a suit against

2    others, not PG&E, correct?

3            MR. MCNUTT:  You're absolutely correct, Your Honor.

4            THE COURT:  I think it's pretty important to keep that

5    in mind and not to mix the two.

6            MR. MCNUTT:  A 118-page directors and officers

7    complaint was filed for their actions taken on behalf of PG&E.

8    You are correct.

9            THE COURT:  But what is the -- what, Mr. -- now, what

10   difference does that make?  There's been a -- there was a case

11   filed before the bankruptcy that I've been dealing with for now

12   three years that parallels the bankruptcy in the district

13   court, and it's a class action against officers and directors.

14   So what do I care if there's another one?

15           MR. MCNUTT:  Very good, Your Honor.  You are correct.

16   In addition to that, we have Judge Alsup, who's written

17   extensively on PG&E and called PG&E, in so many words, a

18   massive criminal conspiracy.  In fact, he's called PG&E a

19   criminal that's incapable of rehabilitation.  And he's said

20   both directly through his published statements, and through the

21   federal monitor that he appointed, that PG&E has engaged in

22   ongoing systemic misrepresentations, often with the purpose of

23   obtaining funds, which it then diverts to other purposes, not

24   the intended purposes of the funds, but to things like propping

25   up the value of its securities.

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 8
of 74

1          THE COURT:  Do you know if he has made any of those

2     statements after January 29th, 2019?  Not make the statements,

3     but does he allude to any events or facts after January 29th,

4     2019, which --

5          MR. MCNUTT:  I believe he does, Your Honor.

6          THE COURT:  Do you -- can you reference any of them

7     specifically?

8          MR. MCNUTT:  Not at this hearing, Your Honor.

9          THE COURT:  Okay.  Well, then I don't know whether he

10    has or hasn't, but what difference -- again, this is the same

11    as the last question.  What difference does it make?

12         MR. MCNUTT:  The difference it makes, Your Honor, is

13    that from the federal monitor, from Judge Alsup, from Baupost,

14    from the allegations in this recently filed complaint, the

15    assertion is made that PG&E has continuously engaged in conduct

16    which misrepresents and does not fairly describe its conduct.

17    And that from that, claims can be asserted.

18         Now, they have been asserted against Ds and Os.  They

19    have been asserted -- Ms. Grassgreen wants to assert them

20    against PG&E in its settlement discussions.  It would make

21    sense that these claims can also be fashioned into claims that

22    the wildfire victims could assert.  Although, how they assert

23    those claims is difficult, since they're not economically

24    concentrated, and since, as is apparent, the hedge funds and

25    investment managers and people who dabble in the trading of

1    distressed securities have a completely different ability to

2    retain counsel and retain consultants.  They can hire Ms.

3    Grassgreen.  The wildfire victims have Will Abrams and Scott

4    McNutt.

5            THE COURT:  Well, the wildfire victims can hire you,

6    if they want, and they can hire all the other counsel who have

7    weighed in and supported this motion, and they're free to do

8    so.  Once again, Mr. McNutt, therefore, what?

9            MR. MCNUTT:  Therefore, I want Mr. Abrams to be able

10    to file a claim that is deemed timely, and I'd like to set a

11    continued hearing for sixty days so that we can figure out and

12    make proposals as to how we move forward.

13            THE COURT:  You want to continue this hearing?

14            MR. MCNUTT:  I want --

15            THE COURT:  Wait a minute.  This hearing is whether he

16    can assert this claims (sic).  What would I do, sixty days from

17    now, any different?  Mr. McNutt, let me rephrase that.  You're

18    free to take Mr. Abrams by the hand and go to the chief

19    executive officer of PG&E or anyone else or the governor or Ms.

20    Grassgreen's clients and negotiate anything you want, but what

21    would I do sixty days from now?  There's a pending motion

22    that's supported by you and other counsel and it's opposed by

23    the debtor, most importantly, and the Fire Victims Trust and

24    Ms. Grassgreen have been implicated in the allegations.

25    They're not -- so they're opposing it, but that they're not the

1 respondent. So but again, what would happen with a

2 continuance?

3       MR. MCNUTT: Well, it's mostly my hope that I can talk

4 to the trust, to PG&E, to other parties, and maybe other

5 counsel who will also be speaking in support of this motion,

6 and make a proposal as to how we go forward in doing something

7 that will vindicate the rights of the wildfire victims.

8       THE COURT: But you can do that anyway. That's what

9 I'm saying. What's stopping you from doing that? This is Mr.

10 Abrams' motion. I set it on the calendar, and he made the

11 motion, and for reasons then, we have to -- no -- won't comment

12 on, the hearing was delayed a couple of days. It's his motion.

13 He can withdraw it, I guess, but why would I continue it if

14 it -- other than that. Why him? You want him to withdraw? If

15 he withdraws it -- never mind. I tell you what. Go ahead

16 and --

17       MR. MCNUTT: Your Honor, thank --

18       THE COURT: You've got a couple of minutes left and

19 then I'll go to the other counsel.

20       MR. MCNUTT: Your Honor, thank you for your guidance.

21 If you don't want to set a continued date, that's fine, and

22 logically, you're absolutely right.

23       THE COURT: Well, I'm rarely told I'm absolutely

24 right, but do you want to add anything more for now?

25       MR. MCNUTT: Well, I just -- I think that when Baupost

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 11 of 74

1  has filed its motion, PG&E got it exactly right in its
2  response, which is there's no order stopping supplemental
3  claims or amended claims. I treat those as equal.

4  THE COURT: Well, there is, Mr. McNutt, again, your
5  client, whether he's your client, specially or otherwise --
6  your client has been active in this case from the outset. He's
7  been involved in many hearings, and you know that. But he can
8  assert whatever he wants, but you know the law, and you know
9  you can't assert something if you don't have a basis to assert
10  it. And if a lawyer, at least, asserts a claim knowingly, one
11  that is barred by statute of limitations, there are
12  consequences just to the lawyer's conduct, if not pro se
13  parties.

14  So he's free to file what he wants, but he's not free
15  to ignore controlling law. So again, what do you want me to
16  do. If I deny today's motion and Mr. Abrams or any of the
17  other fire victims file things, they're free to file them, but
18  there may be consequences. Same with if I continue the motion.
19  So the question is, what do you want me to do that gets Mr.
20  Abrams and others that are aligned with him over this threshold
21  theory step?

22  And I'll tell you what, to blame Baupost over and over
23  again doesn't advance the ball. This isn't a I'll have what
24  she's having. Baupost filed what it filed, and Mr. Abrams can
25  file what he files, and his motion and those of other fire

1 victims has to be judged, not on what Baupost did, but what --
2 I mean, again, we're back to these horrible analogies.  That
3 guy went through the red light and didn't get a ticket,
4 Officer, why did you stop me?  Well, I don't -- I'm not here to
5 judge whether Baupost was right or wrong because its motion has
6 been deferred, and you're here on behalf of Mr. Abrams, who
7 said, this is what I want to do.  Now, I'm gonna let you
8 reserve your time, and if a couple of the others don't show up,
9 I'll give it back to you.

10          So Ms. Chun, you weighed in for -- it was for Mr.
11 Tosdale.  So why don't you go?  You have two minutes that were
12 Mr. Tosdale's.

13          MS. CHUN:  Good morning, Your Honor.  Yes.  My
14 colleague Tom Tosdal could not make it with the scheduling
15 changes, so I'm subbing in for him, for better or for worse,
16 but I hope he --

17          THE COURT:  Well, I hope his power went on.

18          MS. CHUN:  Yes, me too.  I don't think that was the
19 issue, but in any event, I will be very brief, Your Honor.  We
20 filed papers.  I represent Kirk Trostle and about 1,000 other
21 fire victims, and let's just say that this bankruptcy has not
22 been very kind to our client.  Okay?  This plan was sold as a
23 hundred percent compensation and for the fire victims to be
24 whole -- to be made whole from the fire.

25          But that is not what our clients are going to end up

1  getting.  It's three years later, Your Honor.  Our clients who

2  have received awards have only received sixty percent of their

3  awards in over four payments.  And just to confirm -- to answer

4  your question earlier, Your Honor, the trustee has told our

5  clients, the fire victims, in writing that they likely will not

6  get a hundred percent of their awards.  It's going --

7         THE COURT:  Well, I understand.

8         MS. CHUN:  -- to be about seventy percent.

9         THE COURT:  I understand, Ms. Chun.  I understand.

10  Not likely to get a hundred isn't only going to get seventy,

11  what Mr. McNutt said.  And I'm not here to judge what either of

12  you is saying if you're quoting a source, and if Mr. Molton,

13  when it's his turn, tells me that the best case is seventy

14  percent, then we'll take that as a given.  I just haven't

15  heard --

16         MS. CHUN:  Right.

17         THE COURT:  -- and I haven't heard it yet.

18         MS. CHUN:  Understood, Your Honor.  But that's our

19  understanding of what our clients are going to take home at the

20  end of the day --

21         THE COURT:  Okay.

22         MS. CHUN:  -- at this point.

23         THE COURT:  Got it.

24         MS. CHUN:  The reason for that, Your Honor, and you

25  might know, but I will just restate that it's because the PG&E

1   stock that was transferred to the Fire Victims Trust was $2.1

2   billion less than what was promised, and the market value of

3   that stock has not risen.  It has stayed low.

4           THE COURT:  Well, it has risen, I believe, but it

5   hasn't hit the target.  I understand that.

6           MS. CHUN:  Correct.

7           THE COURT:  Again, Ms. Chun, I was there.  I know

8   the -- I know the discussion and I --

9           MS. CHUN:  I know, Your Honor.

10          THE COURT:  -- and then the thirteen and a half

11  billion part cash, part stock wasn't just something that came

12  out of the air.  It was the product of a mediated negotiation

13  that I didn't participate in.  And you know what?  We both know

14  if the stock had gone up ten points, we wouldn't be having this

15  hearing, and Mr. Abrams wouldn't have filed his motion.  But --

16          MS. CHUN:  Right, Your Honor.  Right.

17          THE COURT:  But that -- but so the question comes back

18  to --

19          MS. CHUN:  And so that --

20          THE COURT:  -- what can I do now?  And I understand

21  your point.  So I'll ask you the same question --

22          MS. CHUN:  Yeah.

23          THE COURT:  -- I asked Mr. McNutt.  What do you think

24  should happen now?

25          MS. CHUN:  Well, here's where we're at, Your Honor.

1    Baupost's claim and Mr. Abrams' motion has caused my group to

2    start a very diligent investigation about what -- if whether

3    there was stock manipulation as it relates to our clients.

4    Okay?  And our investigation just isn't complete.  If and only

5    if there is a cogent case against PG&E, then we will amend or

6    supplement the claim for our 1,000-plus clients.  We have an

7    ethical obligation to our clients to maximize their claim and

8    to explore all avenues, and that's what we're doing.

9         So to answer your question, Your Honor, there's two

10   things that we're asking for here.  If our investigation

11   reveals that there is a cogent case against PG&E, then we're

12   asking that we not be put through a motion to deem our clients'

13   claims timely.  Same thing that Baupost got.  Okay?  PG&E

14   reserved all their defenses --

15        THE COURT:  And did Baupost --

16        MS. CHUN:  -- that --

17        THE COURT:  Did Baupost say anything about initiating

18   a new examination to see if there's stock manipulation or

19   did -- or did it --

20        MS. CHUN:  You know what?  Baupost's counsel will

21   probably be best to answer that.

22        THE COURT:  Oh, no.  What do you think?  What's in the

23   depth of their --

24        MS. CHUN:  Likely, if that's what their -- if that's

25   what their investigation reveals, I'm sure that's --

1  THE COURT:  No, no.  I didn't -- all I'm asking you

2  is, didn't Baupost, in its moving papers, say we have a timely

3  claim, but we've got more information that we think will

4  supplement our preexisting claims?  Isn't that essentially what

5  they said?

6  MS. CHUN:  Sure, Your Honor.

7  THE COURT:  Okay.

8  MS. CHUN:  Sure, Your Honor.  And so we're not at that

9  point, we are still investigating whether we have a claim to

10  even bring.  Okay?  So what we're asking for is that we can

11  just supplement our claim and not have to bring our motion to

12  deem it timely.  And second, is that any rulings today on Mr.

13  Abrams' claims don't prejudice our clients' claims to bring

14  significant --

15  THE COURT:  Well, I'm not here to comment on what is

16  the ramification of an adverse ruling against Mr. Abrams.  If

17  it's adverse to you or your clients, that'll be determined

18  later.  I'm not here -- I mean, other -- but the fact of the

19  matter is, certain people -- and I have a list of them and the

20  record shows it -- did a me-too, and me-too -- kind of me-too

21  filing sort of means I'm joining the motion.

22  So it seems to me if you join the motion on a me-too

23  type filing, you get the benefit if the motion wins, but if the

24  motion loses, I don't know that you don't have to take some

25  consequences.  But anyway, Mr. --

1          MS. CHUN:  Well, Your Honor, but, but, but, but.
2     Okay --

3          THE COURT:  I want --

4          MS. CHUN:  -- we need to complete our investigation to
5     see whether there is a stock manipulation here and whether
6     there is a basis to file a supplemental claim.

7          THE COURT:  Okay.

8          MS. CHUN:  Okay?

9          THE COURT:  Okay.  I got it.  Okay.  Your time is up.
10    Mr. Wagner, I think you logged in a little after --

11         MR. WAGNER:  Yes.

12         THE COURT:  -- Mr. Kane or Ms. Kane, so Steven Kane is
13    on the screen, but there's no mic activated.  Is there someone
14    who wants to be heard for the two minutes for Mr. Kane or no
15    one there?  Turn on your mic and your -- and/or your camera if
16    you want to be heard.  Otherwise, your time's going to be
17    forfeited, and I'll go to Mr. Wagner.

18         MR. KANE:  Your Honor, this is Steven Kane.  I think I
19    am --

20         THE COURT:  Good morning.

21         MR. KANE:  -- now hooked in.  I wasn't aware that I
22    was not before.

23         THE COURT:  Well, it doesn't matter.  Your
24    microphone's fine.  I can hear you.  Can you hear me?

25         MR. KANE:  Yes, I can.

1          THE COURT: Okay. You can turn on your camera if you
2     want, or you don't have to, but you have two minutes to be
3     heard as per Mr. Abrams, so --
4          MR. KANE: Your Honor.
5          THE COURT: Go ahead.
6          MR. KANE: I think that -- I'm Steven Kane. I
7     represent approximately 400 claimants in the prior cases.
8          I think we're getting -- we've gotten a little bit
9     away from what we're really trying to do here, which is really
10    pretty simple. From the Baupost motion and from work that Mr.
11    Abrams had done, we believe that and allege that there are
12    serious misrepresentations made by PG&E prior to the vote on
13    the plan to -- for confirmation, which, if known to the fire
14    victims, very likely and possibly would have prevented them
15    from voting for the plan.
16         And we think that the fire victims have a right to
17    bring that allegation forward and have it heard by a court in
18    some form, in some form of representation of the tens of
19    thousands of fire victims in this case. And that is what we
20    are asking for. And in spite of whatever you want to
21    characterize the motion as, or whatever the procedures are,
22    that is our goal. And we believe that that is a correct goal
23    and a proper goal based on what has happened to these fire
24    victims and to their claims since this plan was adopted.
25         And I could go on and on about all the things that

have happened in this case, but the Court is very well aware of them. I don't have to go over all of that material. When we started out in this case, we were representing Ms. Gowins, as a member of the Tort Claims Committee, and we were told by the U.S. Trustee that it was our job to try to seek justice and fairness in this case, not only for our clients, but for all of the clients who have been terribly harmed by these fires.

And that is what we did. And Your Honor, that is what we continue to do, to find every possible method of getting redress for the harm that these clients have suffered. And Your Honor, I respectfully request that the Court assist us in doing that, and that is all I have to say.

THE COURT: Okay. Thank you, Mr. Kane. Appreciate your time. All right.

Mr. Wagner?

MR. WAGNER: Yes, Your Honor. Good morning, Your Honor. I'm Butch (phonetic) Wagner, and I represent 660 victims of the Camp fire. I like to -- my argument is going to mirror what Mr. Kane just argued, and this -- we would like to answer the Court's original question to Scott McNutt.

We would like the Court to grant the motions today to allow us to file supplements to the claim. And this is -- when Mr. McNutt mentioned the continuance, I think what he was trying to say -- because we've had discussions, all of us, all the plaintiffs' attorneys here prior to this hearing to make

Case: 19-30088    Doc# 13645    Filed: 03/27/23    Entered: 03/27/23 05:10:19    Page 20 of 74

1  sure we're in unison, and to acknowledge that this is probably
2  just the start of a process by which the claimants -- and this
3  is the goal of all the plaintiffs' attorneys here, is to make
4  sure that they are given -- or compensated one hundred percent
5  of the determinations that have been made by the trustee. And
6  right now, it doesn't look like there's enough money there for
7  these folks to be compensated a hundred percent.

8        So this is the start of that process. We're not
9  asking for any -- the Court to make any determination on the
10 merits here, just merely to allow us, the folks who wish to do
11 the claims, who wish to file supplements to their claims or
12 supplemental claims, whatever you want to call them, and
13 perhaps the Court can set a deadline for any of the victims out
14 there for which to file a supplemental claim, so we can have a
15 tight handle on this and get to the end game here. So that's
16 what I think we're asking for here in this motion, Judge.

17       THE COURT: Okay. Thank you very much. That ends the
18 first segment of the objectors. Let me make -- just one
19 second. I want to write something down.

20       Okay. Ms. Liou, I believe you're going to take the
21 lead for the debtor. Have you allocated and agreed with Mr.
22 Molton and Ms. Grassgreen to let them have some time?

23       MS. LIOU: Yes, I have, Your Honor. For the record
24 again, Jessica Liou from Weil, Gotshal & Manges.

25       On behalf of PG&E, I have caucused with counsel for

1   the Fire Victim Trust and also Baupost, and collectively, I

2   ceded to them five minutes of my time.  I would like to, in

3   addition to that, reserve two minutes for rebuttal.

4         THE COURT:  Well, you don't get to rebut.  You're the

5   respondent on the motion, so don't get a rebuttal, so --

6         MS. LIOU:  But I asked for it anyways.  But --

7         THE COURT:  Well, you don't get it, so --

8         MS. LIOU:  (Indiscernible) absolutely (indiscernible).

9         THE COURT:  -- but I mean, Ms. Liou, you've been in --

10  before me in this case a long time, and I don't have a trap

11  door where you fall through when your time is up.  And if

12  I -- if you feel -- if there's something that you need to say

13  in response to something you hear from the other side when they

14  make their rebuttal, I'm not going to pull the trap door on

15  you, but at least for now, I'm going to say you don't have

16  anything until you have something.  Okay?

17        MS. LIOU:  But --

18        THE COURT:  So let's use up your fifteen --

19        MS. LIOU:  That's fine, Your Honor.

20        THE COURT:  -- minutes now.  And then your two

21  colleagues can have the other five.  It was five for the two of

22  them, not five for each of them, right?

23        MS. LIOU:  Five for the two of them, and they will

24  allocate amongst themselves --

25        THE COURT:  Okay.  Okay.

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 22 of 74

1          MS. LIOU:  -- the time that they will use.

2          So Your Honor, I think there are three things that I

3    would like to emphasize that I think are really important here,

4    having heard arguments from opposing counsel.  I think the

5    first is the motion and all the joinders are premised on a very

6    fundamental and fatal error in understanding of what the

7    Baupost stipulation accomplished.  And to clear out the

8    underbrush, I do think it is worth clarifying what the Baupost

9    stipulation actually did.

10         If you take a look at paragraph 4 of the Baupost

11   stipulation, it's very clear that the stipulation does not

12   address the timeliness of the amendment or the supplement that

13   Baupost filed.  What the parties agreed to was to agree that

14   Baupost had sought leave as of a certain date, which was the

15   date that they filed their motion.  All parties, PG&E and

16   Baupost, reserved their rights with respect to arguing whether

17   or not the amendment or supplement was timely made and/or

18   whether or not it was valid.  I think that's very important

19   because there's been a lot made about how Baupost is being

20   specially treated here to the detriment of the fire victim

21   claimants, which is just not the case.  The second --

22         THE COURT:  Well, it seems to me if Ms. Grassgreen had

23   called you on the phone and said, we're thinking of filing a

24   supplement, can we have a stipulation to call a time-out and

25   you all agree to that, there never would have been a Baupost

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 23
of 74

1   motion, and there probably never -- wouldn't have been a motion

2   by Mr. Abrams. Right?

3         MS. LIOU: Well, we are where we are today.

4         THE COURT: Right.

5         MS. LIOU: I just wanted to clarify the confusion.

6         THE COURT: Yeah. Okay.

7         MS. LIOU: I think it's worth rehashing how we ended

8   up here. The second point I do want to emphasize is that the

9   key question that has become apparent that all the parties are

10   being very open about, Your Honor, at today's hearing is that

11   they want to find new avenues to pursue claims relating to

12   wildfires that occurred pre-petition against PG&E. And I think

13   the question before Your Honor today is one single, very clear,

14   simple question, which is does the law support in any way that

15   fire claimants should be allowed to circumvent the bar date

16   order, the plan and confirmation orders channeling injunction,

17   and the myriad of other provisions in the plan that govern the

18   proper procedures and timing for asserting fire claims.

19         And we would submit, Your Honor, that there is

20   absolutely no authority under statute or case law that supports

21   the Court authorizing them to do that. Whether the vehicle is

22   through a claim amendment, through a claim supplement, through

23   direct claims against PG&E, there is absolutely no avenue

24   outside of what has been established through the plan, through

25   hard-fought negotiations, with due process, in two years of

1    time, with multiple parties expending a tremendous amount of

2    effort, energy, time, and expense to get that plan confirmed.

3          I also want to say, Your Honor, that if we focus on

4    the argument about whether or not these claims were proper

5    amendments, it's very clear that we do not believe they are.

6    However, to the extent that they are amendments, they are

7    amendments to something.  They are amendments to the original

8    fire claims that Mr. Abrams asserted.  No one here disputes,

9    including the Fire Victim Trust, that the original claims Mr.

10   Abrams filed are appropriately fire claims that on the

11   effective date were channeled through the channeling injunction

12   to the Fire Victim Trust.  If his new claims are truly

13   amendments, they are amendments to those claims.

14         THE COURT:  So I think what isn't -- I mean, if I can

15   turn this back to you, that's what I sense, too.  Mr. Abrams

16   and Mr. McNutt, even now -- or Mr. Abrams says, my claim is a

17   fire claim.

18         MS. LIOU:  That's right.

19         THE COURT:  So if I were to say sure, you're free to

20   amend your fire claim, he amends his claim right back into his

21   claim against the trust, and he has avowed that he's not trying

22   to undermine the trust.  So isn't that -- is that not your

23   point that --

24         MS. LIOU:  That's --

25         THE COURT:  -- the best you could do is amend a claim

1   that you've committed not to assert any further?

2            MS. LIOU:  That's right.

3            THE COURT:  Okay.

4            MS. LIOU:  That's right, Your Honor.

5            THE COURT:  Okay.

6            MS. LIOU:  That's absolutely right.  And that becomes

7   an issue between Mr. Abrams and the fire victims.

8            THE COURT:  But Ms. Liou, let's go back to the --

9   something that first Ms. Chun mentioned and then Mr. Kane and

10  Mr. Wagner said.  What if -- and you don't have to answer.

11  Well, I'll put the question rhetorically rather than asking you

12  a question to undermine your client's interest, but what if

13  they found evidence of wrongdoing by either the debtors or

14  someone else that gave them a basis to seek to start over and

15  to revisit the whole question under the plan.  They have a

16  right to do that, don't they?  Or do they not have a right to

17  do that?

18           MS. LIOU:  Your Honor, what I'm hearing in your

19  hypothetical is that you're posing a hypothetical where an

20  individual is seeking to revoke the confirmation order --

21           THE COURT:  Right.

22           MS. LIOU:  -- on the basis that there is fraud.  I

23  would say first, there is absolutely no evidence of any --

24           THE COURT:  No, no.  Understood.  Understood.

25           MS. LIOU:  Nothing in the record to substantiate any

1   kind of allegation of fraud.  In addition to that, everyone --

2   mostly everyone here, participated in the Chapter 11 process.

3   We all, in those negotiations, understood that there was a push

4   and a pull among parties.  There was a high degree of

5   transparency.  There were multiple hearings before Your Honor,

6   where Mr. Abrams made similar allegations about lack of

7   disclosure, potential fraud, and other litany of other issues

8   that he had with PG&E.

9          I know, because I was there, Your Honor provided him

10  plenty of time to air those grievances before you.  You offered

11  him due process.  You thoughtfully considered the allegations

12  that he raised, and in many instances, you overruled them.

13  That was built into the process in obtaining this confirmation

14  order, and again, supports that the confirmation order was

15  properly obtained.

16         Putting aside the fact that an order to seek

17  revocation of a confirmation order under rule 60(b), you have

18  to bring that motion within a certain amount of time, as well,

19  and that time has long lapsed.

20         THE COURT:  Okay.  I got it.

21         MS. LIOU:  Your Honor, just to spend some time also on

22  if these truly are new claims, then they are not timely.  Mr.

23  Abrams is seeking to bring new claims nearly three years after

24  the bar date and two and a half years after plan confirmation.

25  It is clear he was aware of the bar date order and the bar date

itself, given that he timely filed two other fire claims.

In addition, just to parrot back to Your Honor, there is nothing here that requires that Mr. Abrams be treated any differently than the other fire claimants who have also tried to seek to file new claims and have them deemed timely. Your Honor denied those recent motions and should deny Mr. Abrams' motion here on that basis.

He has not demonstrated any facts or any evidence to support excusable neglect. He hasn't provided a good reason for delay, and lack of awareness that you have a potential ability to recover on claims is not going to support excusable neglect, as Your Honor noted in a prior decision. He cannot argue, as I said, that he was unaware of the bar date. He also hasn't provided a basis to support why he was otherwise unable to file these claims earlier.

And the danger of prejudice here to the reorganized debtors, to PG&E, is fairly evident. And again, to note something that Your Honor previously said, when you are taking into account the equities, you have to take into account the equities affecting the reorganized debtor as a whole. It has become clear that because of Mr. Abrams' motion, there are, according to the joinders and the various filings over 2,000 fire claimants who are closely watching the outcome of this decision and ready and waiting in the wings to emerge and assert new fire claims directly against PG&E if you grant this

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 28 of 74

1  motion.

2         That is a tremendous amount of prejudice.  It
3  completely undoes the purpose and the very heart of the Chapter
4  11 plan.  It completely undoes the purpose of the Chapter 11
5  cases.  It completely ignores and eviscerates the reasons that
6  we are here today.  We had a plan confirmed after two years of
7  blood, sweat, and tears that channeled all fire claims into a
8  fire victim trust and channeled all recovery to that fire
9  victim trust.  And again, there just isn't anything to support
10 that excusable neglect exists here to allow file those new
11 claims, let alone file them directly against PG&E.

12         We've already talked about this, but I will
13 reemphasize one last point, which is there is nothing in the
14 case law, nothing in statute, nothing in the facts or the
15 evidence provided or presented today to support that there
16 should be any basis to undo, to modify, to revoke, to
17 eviscerate the channeling injunction that is the heart, the
18 very cornerstone of this Chapter 11 plan.

19         THE COURT:  Okay.  Thank you, Ms. Liou.

20         Ms. Grassgreen and Mr. Molton, who's going first on
21 the five minutes?

22         MR. MOLTON:  Your Honor, I'm going to do my best to
23 keep it brief and keep it concise in light of what's been said.
24 Again, Your Honor, good morning.  David Molton from Brown
25 Rudnick appearing for Cathy Yanni in her capacity as trustee

1  for the Fire Victim Trust.

2        One of the things I think I want to point out to Your

3  Honor, is that all of the pleadings, Mr. Abrams' pleading as

4  well as the numerous joinders, say one thing clear, that they

5  don't want to disrupt the work that's going on in the fire

6  victim trust and they don't want these claims to be asserted

7  and -- or be paid for by the fire victim trust.

8        I'm going to get to that point in a minute, Your

9  Honor.  As I read all the joinders and Mr. Abrams' pleading,

10 notwithstanding his reply, which seemed to change a little bit

11 his characterization.  All of these claims are new claims.

12 They arise from alleged misrepresentations and inaccuracies by

13 PG&E.  They arise and relate to then PG&E and not to the fires.

14 Accordingly, to the extent that Mr. Abrams' claim that he wants

15 to amend his existing channel POCs, I believe that that's

16 inaccurate based on the pleadings and the allegations.

17       What he's actually trying to do is assert new claims,

18 and those claims are not channeled to the trust.  And to the

19 extent that this ever devolves into an issue on that, Your

20 Honor, I just want to reserve our right to put a stake in the

21 ground, to do briefing on that.

22       Suffice it to say, Your Honor, as everybody has told

23 this Court and as Mr. Liou just mentioned it in the context of

24 the reorganized debtor, but especially with respect to the fire

25 victim trust, any disruption to the trust at this time will be

immensely prejudicial to all fire victims. I'm going to give Your Honor -- Your Honor asked some questions, and say I'm waiting for Mr. Molton to come on to ask him.

Basically, I'm going to give Your Honor some historical facts, the conclusions that can be then derived from those historical, publicly available information.

THE COURT: Well, I mean, I -- Mr. Molton, I'll intervene just for a second. I know a lot of the background. The critical question is, is there any strong evidence to suggest what Ms. Chun mentioned? Seventy percent is likely the target versus the other. And then remember, you have to share it with Ms. Grassgreen, so don't take too much of her time, but go ahead now. Now answer your questions on that compressed, just --

MR. MOLTON: Okay. That comes out of what I'm just about to say, Your Honor.

THE COURT: Okay.

MR. MOLTON: So I'm going to run through it. The trust has issued initial award determinations to approximately ninety-five percent of all fire victims. Those claims have been valued at 15.95 billion in claims. So Your Honor knows that exceeds the 13.5 --

THE COURT: Right.

MR. MOLTON: -- number that was reached or discussed during plan confirmation and solicitation. Of that, eighty-two

1  percent have accepted their awards.  The trust's current pro-
2  rata payment percentage is and has been disclosed at sixty
3  percent.  The trust has distributed 8.66 billion to
4  approximately 53,000 fire victims.  And as Your Honor knows,
5  we've told Your Honor before, the appellate rate, which we're
6  very proud of, Your Honor, of trust awards remains one percent.
7          I would say we're in our home stretch.  If that's not
8  being conservative enough, then I'm going to say the trust is
9  in its last lap.  We'd like to get to the finish line.  Turning
10  to its -- I don't think anyone can say fairly or accurately
11  what the final payment percentage will be, Your Honor.  That's
12  the answer to your question.  I don't think Ms. Yanni has ever
13  said what the final payment percentage will be.
14          THE COURT:  But I think you'd have to agree, it seems
15  extremely unlikely that anyone -- well, that'll it come close
16  to a hundred percent.
17          MR. MOLTON:  If you --
18          THE COURT:  Maybe it'll get over seventy, maybe it'll
19  get to some number, you know, significantly more than seventy,
20  but sounds to me like unless somebody makes a tender offer to
21  buy the stock -- you know, maybe Elon Musk will do it, he buys
22  everything else -- and maybe the stock will take a huge jump in
23  value, but at least realistically, that doesn't seem likely.
24  Isn't that a fair statement?
25          MR. MOLTON:  I don't think that that -- I don't think

1  that's an unfair statement, Judge.

2          THE COURT:  Okay.

3          MR. MOLTON:  As Your Honor knows, we had about 478

4  million shares.  We've sold 290 million to date for

5  approximately four billion dollars.  We have 180,

6  approximately.  I'm going to give approximates.  188 million

7  shares left.  Put it this way, Ms. Yanni and her team are being

8  very prudent and informed and deliberate in terms of their

9  fiduciary obligations to maximize the value of those shares.  I

10 can't tell you what the market will or won't be.

11         THE COURT:  No, of course not.

12         MR. MOLTON:  But --

13         THE COURT:  Let me interrupt you again, just to repeat

14 again, the 290 million shares for just how much in value?

15         MR. MOLTON:  Net value to the to the trust of

16 approximately four billion dollars and change.

17         THE COURT:  Four billion.  Okay.  Got it.

18         MR. MOLTON:  Judge, 188 million remaining.

19         THE COURT:  No, I got -- that was the only number I

20 didn't hear you on was the four billion.

21         MR. MOLTON:  Yeah.

22         THE COURT:  Okay.  I got it.  I appreciate that

23 summary.

24         MR. MOLTON:  So everybody can do their own math in

25 light of the figures that I've given you in terms of what's

1    needed to hit 6.75 billion or to bring the trust up to amounts

2    that might, based on the claims award number that I gave you,

3    approach payments in full.  But until -- but these shares are

4    still held by the trust.  The value is still the monetization

5    value.  Nobody can say what it will be, and accordingly, that's

6    the best I can tell you, Judge --

7                THE COURT:  Okay.  I got it.

8                MR. MOLTON:  -- with -- okay.

9                THE COURT:  Mr. Molton, let's let Ms. Grassgreen have

10   her --

11               MR. MOLTON:  Yeah.  I will, but again, Judge, just to

12   bring it at an end before I pass the baton to Ms. Grassgreen.

13   Again, all of the allegations relays to alleged

14   misrepresentations by PG&E, most of -- some of which occurred

15   during the plan post-petition, others of which occurred, if you

16   read Mr. Abrams' pleadings, even before the fires.  It's our

17   contention that all of those had nothing to do with the fire

18   victim trust, do not arise or relate from the fires, and

19   accordingly cannot and should not be channeled.  Thank you,

20   Your Honor.

21               THE COURT:  Okay.  Thank you very much, Mr. Molton.

22               Okay, Ms. Grassgreen.  I'm not going to put the clock

23   on you.  You have, of course, a --

24               MS. CHUN:  I'm -- maybe a minute or two, Your Honor.

25   First of all, you commented to Ms. Liou that perhaps this whole

1   thing could have been avoided if I called the debtors before we
2   filed our motion.  And just for the record -- and I think it
3   was in our pleadings -- we did, and so for what that's worth.
4   But I think the point -- we're not here opposing the motion, by
5   the way, our statement was not in opposition and we are not
6   opposed to fire victims.  And our claims are securities fraud
7   claims which are subordinate to the fire victims.

8           So there's been a lot said about Baupost and what it
9   has done and if it's got some secret deal, but it has not
10  received any special treatment.

11          THE COURT:  But I'm just -- let's clarify something
12  that again, I do follow the rule of never asking a question if
13  I don't already know the answer.  Your client has some debt
14  equity, has debt claims, and is entitled to cash.  Right?  And
15  your client also has subordinated claims that makes it entitled
16  to stocks.  So but the point is if --

17          MS. GRASSGREEN:  And clients, related entities, Your
18  Honor --

19          THE COURT:  No, no, but if --

20          MS. GRASSGREEN:   They're Baupost-related entities
21  that held insurance subrogation claims that were paid from the
22  Insurance Subrogation Trust and are parties of that.

23          THE COURT:  No, no, but that -- wait --

24          MS. GRASSGREEN:  Okay.

25          THE COURT:  -- I'm asking a different question.  If

1  Baupost compromised its position or the Court resolves the

2  claim tomorrow, Baupost would get X dollars and Y number of

3  shares.  Right?

4        MS. GRASSGREEN:  The claims that were the subject of

5  the supplement are securities fraud claims, and under the plan,

6  they're paid in stock.

7        THE COURT:  Yeah.  Okay.  So what I'm getting is that

8  if Baupost has allowed and therefore recovers on a portion --

9  or some of its claim, it'll get it promptly rather than not

10 until after the fire victims get what they're entitled.  That's

11 just the way it plays out.  Right?

12       MS. GRASSGREEN:  Right.  Under the plan --

13       THE COURT:  It's the same in every other -- same

14 with --

15       MS. GRASSGREEN:  -- it's from a different pot.  Right?

16       THE COURT:  No, a different -- right --

17       MS. GRASSGREEN:  So -- right, it's from a different

18 pot.

19       THE COURT:  -- but the same thing with the unsecured

20 creditors who have nonfire claims that get cash.

21       MS. GRASSGREEN:  Correct.

22       THE COURT:  Or the same of anyone else who has an

23 allowed claim based upon their subordinated position.  Okay.  I

24 knew the answer before I asked the question, but you're not

25 disagreeing with that outcome.

1          MS. GRASSGREEN:  Right.  Right.  We're in a separate

2     class with --

3          THE COURT:  Okay.

4          MS. GRASSGREEN:  -- thousands of other securities

5     fraud claims, they're subordinated, and they're not going to be

6     paid from funds that are distributable to other classes.

7          THE COURT:  No.  They're not going to be paid from

8     funds that are allocated for the fire victim --

9          MS. GRASSGREEN:  Right.

10         THE COURT:  -- but they are going to be paid whatever,

11    potentially, before the next dollar goes out to the fire

12    victims or maybe after.  We don't know.  But they couldn't

13    pay --

14         MS. GRASSGREEN:  Well, potentially, Your Honor, but I

15    mean, this is something I think we'll discuss with you on June

16    7th, but we're certainly not getting any special treatment on

17    our securities fraud claims.

18         THE COURT:  Okay.  Got it.

19         MS. GRASSGREEN:  They haven't been allowed as -- the

20    supplements haven't been allowed as timely.  We haven't

21    received an offer pursuant to the securities ADR.  We're at the

22    back of that bus, Your Honor, so --

23         THE COURT:  I got it.  I know that.  Okay.

24         MS. GRASSGREEN:  So for what it's worth, but I think

25    Ms. Liou hit the point that seems to also be confusing folks

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 37
of 74

1  about what our motion was and what our supplement is.  Our

2  motion was simply to allow the supplement to be deemed timely,

3  and that issue hasn't been determined.  We just put that off,

4  and we just said the delay's not going to be used against us.

5  You have not ruled that our supplement is timely.

6          THE COURT:  No, I know.  I know that.

7          MS. GRASSGREEN:  The supplement simply added

8  allegations, all of which were pre-petition statements.  They

9  don't deal with -- they were discovered post-petition, but they

10 were pre-petition.

11         So I really just wanted to speak to clarify the record

12 because a lot's been said about Baupost reaching a deal to the

13 detriment of fire victims that was in the papers that were

14 filed.  Nothing could be further from the truth.  There is no

15 deal and it's not to the detriment of fire victims.

16         THE COURT:  In other words, you don't agree that --

17 this is an excerpt from Hamilton.  You weren't in the room

18 where it happened, and they're out in the hall wishing they

19 were in the room that it happened, right?  Nothing happened --

20         MS. GRASSGREEN:  Right.

21         THE COURT:  -- in the room yet, correct?

22         MS. GRASSGREEN:  Right.

23         THE COURT:  Okay.

24         MS. GRASSGREEN:  Right.  Nothing has happened.  We'll

25 be happy to talk to you about that on June 7th.

1          THE COURT:  Okay.  Thank you very much.

2          Mr. McNutt, you have at least six minutes, and I have

3  one question for you.  Isn't Ms. Liou, right, that if you have

4  your client, if you -- you, as the spokesperson -- got this

5  motion, the outcome is to set aside the plan?  Because I can't

6  deny -- I can't help but think that if Mr. Abrams is entitled

7  to have a claim of any amount, that notwithstanding the label

8  "fire claim", he really isn't a fire claim, then the door

9  will -- the floodgates will be opened, and the outcome will

10  have to be to tell the debtor to go back and start over or

11  start to modify the confirmation order or the discharge.

12  Right?  It's what you're doing.  It undermines the plan.

13  What -- is Ms. Liou wrong or right on that issue?

14          MR. MCNUTT:  Your Honor, I think Ms. Liou is

15  absolutely and totally wrong.

16          THE COURT:  Okay.

17          MR. MCNUTT:  I think the -- I think the Court should

18  discourage and decline to accept Ms. Liou's invitation to

19  construe what a wildfire claim is under the plan, because I

20  think that that language is so expansive that it could include

21  almost anything --

22          THE COURT:  But then we'll --

23          MR. MCNUTT:  -- (indiscernible) --

24          THE COURT:  -- then where would his claim be?  Again,

25  this is what I find almost frustrating is -- if I had hair, I

**eScribers, LLC**

1   would be tearing it out because his motion and your reply says

2   it's a fire claim, and we just want to amend this claim, but by

3   the way, we don't want it to be treated as a fire claim.  We

4   want to take it out against PG&E.  So what am I missing here?

5            MR. MCNUTT:  Your Honor, it is --

6            THE COURT:  You can't say it's a fire claim, but we

7   don't treat it --

8            MR. MCNUTT:  It is a fire claim, but we are declining

9   the opportunity to loot the existing fire claims because we

10  don't want to interfere with the operation of the trust.

11           THE COURT:  Okay.  So suppose I say Mr. Abrams has a

12  claim for a hundred dollars, and we won't call it a fire claim

13  or anything.  We'll say it's a claim against the debtor.  What

14  happens to it?  What's the outcome?

15           MR. MCNUTT:  Well, but then we have to take further

16  action, which might include --

17           THE COURT:  Well, what happens?  What happens with

18  that hundred-dollar claim that can't be asserted against the

19  fire trust?  That --

20           MR. MCNUTT:  We would bring --

21           THE COURT:  Then you have just --

22           MR. MCNUTT:  -- it would bring an action --

23           THE COURT:  What's that?  Say again.

24           MR. MCNUTT:  We would bring an action to set aside the

25  plan, to modify the plan, to construe provisions of the plan.

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 40
of 74

1          THE COURT:  Okay.  Is it timely or not?  You are the

2    bankruptcy lawyer here today.  Is Ms. Liou right or wrong?  Is

3    it too late to vacate the plan --

4          MR. MCNUTT:  I think Ms. Liou is --

5          THE COURT:  -- to revoke the plan?

6          MR. MCNUTT:  -- wrong as to each and every word she

7    has used, including conjunctions and prepositions --

8          THE COURT:  What's the answer to the --

9          MR. MCNUTT:  -- because when you lie --

10         THE COURT:  Mr. McNutt.

11         MR. MCNUTT:  -- and you manufacture a record --

12         THE COURT:  Mr. McNutt.

13         MR. MCNUTT:  -- and you don't disclose things --

14         THE COURT:  Mr. McNutt.

15         MR. MCNUTT:  -- before, during, and after a

16   bankruptcy, where a United States Federal District Court judge

17   has said these are criminals incapable of telling the truth --

18         THE COURT:  Mr. McNutt, answer my --

19         MR. MCNUTT:  -- then presumably --

20         THE COURT:  Answer --

21         MR. MCNUTT:  -- there are normal legal remedies --

22         THE COURT:  Mr. McNutt, answer my question.

23         MR. MCNUTT:  -- for example, tolling.

24         THE COURT:  Please answer my question.  You have a lot

25   of bankruptcy experience.  I know you do.  If Ms. -- if you or

1    Mr. Kane or Mr. Wagner or Ms. Chun find some horrible,

2    outrageous conduct that you can blame PG&E management on or

3    somebody else, pick your culprit, and the outcome is we can set

4    aside confirmation.  Hasn't that -- isn't that barred by the

5    Bankruptcy Code, by Section 1141, by the deadlines for

6    revocation?

7            I'd like you to answer that question and not to rant

8    and rave about what Judge Alsup has said, and everything else,

9    and what Ms. Liou has said about prepositions.  What's the

10   legal answer as a bankruptcy lawyer to my question?

11           MR. MCNUTT:  That is what those statutes say.  And

12   then I would have to explore whether there's some leeway or

13   remedy when that failure to have complied with that timetable

14   is directly related to misrepresentations and nondisclosures.

15           THE COURT:  Okay.  Okay.

16           MR. MCNUTT:  Which is -- and I am ignorant of the

17   answer to that question.

18           THE COURT:  Okay.

19           MR. MCNUTT:  It strikes me that there should be a

20   remedy.

21           THE COURT:  So maybe there should be, but now solve

22   the next question.  Why not let you go find out if there's a

23   remedy before we waste time giving you a right, and more

24   importantly, hundreds, if not thousands of victims, the

25   expectation that they should file a claim -- they should amend

1 their claim, even though a very experienced bankruptcy lawyer
2 hasn't a clue what the remedy is?  It would seem to me you
3 ought to find the remedy before you waste time of me and you
4 and all the lawyers with asserting a claim for which there's no
5 remedy.
6         MR. MCNUTT:  I think a better --
7         THE COURT:  It's like the client comes into your
8 office and says, Mr. Molton hit me with his car.  Would you
9 please sue him?  And you say, well, when did he hit you?  And
10 the victim says, well, four years ago, or whatever, add some
11 time to the statute of limitations.  And you say, well, let me
12 see if I can find a remedy before we waste time asserting the
13 claim that's barred.
14         MR. MCNUTT:  I would --
15         THE COURT:  Now, what do I in this situation?  Huh?
16         Just a minute, Ms. Chun.  I'll give you a moment.
17         Mr. McNutt.  What do I do as a -- under the bankruptcy
18 law?
19         MR. MCNUTT:  I would encourage a different approach,
20 Your Honor.  That approach would be let us formulate a
21 position, file a claim, and respond to the -- respond to the
22 objection of that claim.  If PG&E and the trust want to
23 formulate a statement saying yes, even if the plan was
24 confirmed through fraud and misrepresentation, we think you're
25 barred, please, I'd like them to do that.

1      THE COURT:  Okay.  Ms. Chun, you wanted to --

2      MS. CHUN:  Your Honor, very briefly, I think I hear

3  what you're saying, Your Honor.  I think they're very good

4  questions.  I think we definitely would not -- a couple things.

5  I'm not a bankruptcy lawyer.  Okay?  I represent fire victims.

6  I'm the plaintiff's attorney.  But if there are new facts that

7  our investigation reveals, then we will explore whether there

8  is any remedies in terms of timeliness, in terms of our next

9  legal action.

10     I would suggest that, however Your Honor rules on Mr.

11  Abrams' motion, that we just not be barred from bringing a

12  motion to Your Honor after our investigation and research --

13     THE COURT:  Well, Ms. Chun, that's --

14     MS. CHUN:  -- if there is a cogent claim.  Okay.

15  That's --

16     THE COURT:  That's what you said before.  And if I

17  rule against Mr. Abrams' motion, and the debtor says, well,

18  you're bound by that because you joined it, maybe the debtor is

19  right or maybe you'll have a way to work around it.  My

20  question to you, though, I'm asking you as a litigator, not a

21  bankruptcy lawyer.  Do you sue -- do you sue your defendants

22  and then go look for a theory by which they're liable?

23     MS. CHUN:  No, Your Honor.  And -- no, I'm with you.

24     THE COURT:  Like do you find -- do you find a theory

25  that fits the facts?  It seems to me any respectable,

1    conscientious, ethical lawyer finds a legal basis to assert a
2    claim before you assert it.  And then if the --
3           MS. CHUN:  Well, I'm with you a hundred percent.
4           THE COURT:  Okay.
5           MS. CHUN:  And that's why we're saying, we just
6    don't -- that we're not prejudiced from bringing a motion to
7    bring a legal --
8           THE COURT:  Okay.
9           MS. CHUN:  -- cogent case that shows (audio
10   interference) and reasons for a timely claim.
11          THE COURT:  But you're not prejudiced.
12          MS. CHUN:  Okay?
13          THE COURT:  Ms. Chun, you're not prejudiced.
14          MS. CHUN:  That's all I want to make sure.
15          THE COURT:  Well, no, no, no.  A person who has done
16   nothing, whether you have crossed the line by joining the
17   Abrams' motion, I'm not going to make any judgment on that.
18   I'm putting the rhetorical question to you.  If you, as a
19   conscientious lawyer, believe that there's a theory by which
20   you can hold PG&E accountable, notwithstanding these legal
21   things that Ms. Liou has mentioned, it seems to me the right
22   thing for you to do is see if you have law that'll help you and
23   then allege the facts that fit, not the reverse, because if you
24   found that --
25          MS. CHUN:  Your Honor, that's why we're here, Your

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 45
of 74

1  Honor.

2          THE COURT:  Okay.  Well, then go and -- go dig up --

3          MS. CHUN:  Okay?  That is why we are here.

4          THE COURT:  Then go dig up your facts.

5          MS. CHUN:  Okay.  And that's what we're doing, Your

6  Honor.  I'm just telling you --

7          THE COURT:  Mr. McNutt just said let me assert the

8  claims, and then we'll see if PG&E has a defense.

9          Okay, Mr. McNutt, I'm going to give about --

10          MS. CHUN:  That's not what I said, Your Honor, but --

11          THE COURT:  Okay.  Okay.

12          MS. CHUN:  -- what I'm saying is --

13          THE COURT:  I'm glad --

14          MS. CHUN:  -- we will bring a motion if there is a

15  viable claim and it's timely.

16          THE COURT:  Mr. McNutt, you've got two more minutes to

17  wrap it up.

18          MR. MCNUTT:  I would like -- I don't think the Court

19  should, in the context of this hearing, construe what

20  constitutes a wildfire claim and say that this doesn't meet

21  that definition.  I think we should be allowed to amend this,

22  and I would like to defer ninety seconds to Mr. Abrams.

23          THE COURT:  No, I'm not going to defer to Mr. Abrams.

24  Mr. Abrams has been a hundred percent polite in all the many,

25  many hearings before me, but today he hired a lawyer to come in

1   and make the argument, and I'm going to hold him to that.

2          MR. ABRAMS:  Your Honor, when I came here --

3          THE COURT:  And what I'm not going to -- I'm not at

4   the -- with a minute and a half to go with all the lawyers on

5   the other side having followed the rules, I'm holding you to

6   the rule.  So if you have anything more to say, go ahead and

7   say it.  Otherwise, we're going to conclude.

8          MR. MCNUTT:  I don't think the Court should construe

9   what constitutes a wildfire claim.  And the standards for

10   asserting a claim are a lot different than the standards for

11   asserting a complaint.  I think there's an elephant in the

12   room, which is PG&E has been accused by many people, including

13   very reputable sources, of having engaged in massive fraudulent

14   activity, including during the course of this case.  And

15   something needs to be done about that.  And I think one way to

16   deal with that is -- starts with asserting some amended claims.

17   And finally, I've heard what Baupost has to say.  I have

18   absolute confidence in Ms. Grassgreen, but I'd sure like a

19   representation if Baupost isn't asking for more.

20          THE COURT:  The record -- the representations are on

21   their written and oral statements.  I'm not turning this into a

22   cross-examination of Ms. Grassgreen.

23          MR. MCNUTT:  And I am done, Your Honor.

24          THE COURT:  Okay.

25          MR. MCNUTT:  Thank you for the time you've given me

today. I apologize for ranting and raving. I try not to do that before noon, but today's a Friday.

THE COURT: I'm going to take a ten-minute break, and you're invited to turn your cameras off, take a break, stretch your legs, personal convenience. I'm going to give you a decision in about ten minutes, and I'm going to turn my camera off.

MR. ABRAMS: Your Honor, I'm sorry, but I did reserve time when I was addressing the Court --

THE COURT: I know, but I'm not giving you any time. Mr. Abrams, we're taking a ten-minute break. I'll give a ruling when I come back in ten minutes.

(Recess)

THE COURT: Let me wait until Mr. McNutt joins us.

Mr. McNutt, can you hear me?

Okay. All right. Well --

MR. MCNUTT: Thank you, Your Honor.

THE COURT: I've decided not to delay this matter and do a lengthy written opinion. I'm going to issue this orally.

I'm going to deny the motion. I will explain in some detail. As I say, my notes have been put together rather quickly, and I might not read my own handwriting. So bear with me. I will add, as a personal matter, I am distressed to hear that -- what Mr. Molton had to tell me, that the results have been -- might end up as low as seventy percent. Well,

1   certainly based upon the numbers that he recited, it feels like

2   it's going to be more than seventy, but certainly not realistic

3   to think at the moment that's going to be a hundred percent.

4        The one thing I am happy to hear, that there has now

5   been a pretty healthy percentage of distribution to victims.

6   It seems like forever.  On my experience in mass tort cases of

7   this complexity, getting paid even sixty percent of your claim

8   this relatively early after confirmation, I'm not going to say

9   is unprecedented, but let me tell you, it's certainly better

10  than lots of other horrible cases that I'm aware of.  This is

11  the only one I've been actively involved in.  Some of you may

12  have been involved in others and know -- but that's not here

13  nor there.

14       I wish that we didn't have to have this hearing.  And

15  I wish for the victims, Mr. Abrams, and all the others, the

16  victims represented by other counsel today, but all the victims

17  had a better result.  And I'm not going to pretend that a sixty

18  percent recovery three years later is good.  I'm just going to

19  say, given the complexity and the timing, it's -- I'm at least

20  on that, that was a piece of good news today.

21       But I'm -- the reason why I am to deny this motion is

22  many of the reasons as argued by counsel, but I'm going to put

23  it together.  I've thought about it a lot.  I read the papers,

24  and of course, as most of you know, I've been with this case as

25  long as Ms. Liou and Mr. Abrams, and I think they were the only

1  two on the call here that were in there at the outset.  Now, a

2  number of other people joined pretty early on, and so we have

3  that history together.

4      But what we have here is Mr. Abrams making a number of

5  allegations, all of which could be labeled wrongdoings by PG&E

6  and perhaps by others.  He refers to the allegations that he

7  construes from the Baupost papers.  I independently have

8  determined, as Ms. Grassgreen said, that Baupost bases its pre-

9  petition claims that were asserted based upon the value of the

10 stock.  It's not unrelated to, again, a piece of this case that

11 I'm most familiar with, that a lot of the lawyers and Mr.

12 Abrams himself maybe is tracking, but maybe not, and that has

13 to do with the securities claims and the claims that were

14 neither fire claims nor sort of the general claims, but the

15 ones that became the subject of lots and lots of discussion and

16 is still ongoing, hence what we call the securities claims.

17      And -- but Mr. Abrams paints with a very broad brush.

18 He once again brings up pre- and post-issue allegations about

19 the plan, about the committee, about the process, about all the

20 things that he complained about.  And his papers reiterate

21 again and recite a litany of matters that he has raised

22 numerously through the life of the case.  Again, I say this,

23 I'm not critical of Mr. Abrams.  I'm simply saying he brings

24 the history, a tremendous familiarity with that.  He probably

25 knows more about this case than any of us in terms of the

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 50
of 74

1  events.

2        But his motion today chronicles specifically a number

3  of these things that are all pointing the finger at things that

4  he thinks that PG&E has done.  And then he cites several third-

5  party sources, the Kirkland & Ellis report regarding the fire

6  monitor, the California state auditor regarding whatever that

7  auditor did, the -- what he calls or that is called the Evis

8  (phonetic) or Aravista (phonetic) -- maybe I'm mispronouncing

9  it -- report, and all of them, they just add -- it adds to his

10 enormous bundle of criticisms at PG&E.

11       He uses terms that are there sort of in the absolute

12 about the pre-confirmation conduct were misrepresentation and

13 justify doing something about the plan that was confirmed

14 through misrepresentations.  But his own claims -- and what's

15 important here is the moving party is free to criticize PG&E.

16 I'm not saying he can't.  He can.  He can criticize them as

17 much as he wants.  He can criticize me.  He can criticize

18 anyone.

19       But he's not focusing on the issue that must be

20 addressed is whether he can assert a claim.  That's about

21 whether he has something to assert.  And his claims -- and I

22 reviewed again his own personal claims -- they are clearly and

23 without doubt, and I'm sure Mr. Abrams would not deny, they are

24 about his losses in the Tubbs fire to his home, his family, and

25 all the things that -- the horrible things that he was

1  subjected to. And another claim that's small and incidental

2  and it's not relevant is time that may or may not be treated in

3  the fire.

4       But so there's no question that Mr. Abrams suffered a

5  loss in the fire, and there's no question that he has fire

6  claims. I don't even know to this day whether his claims have

7  been determined or not, and I don't need to know. The point I

8  do know is something that is evident, not a shred of

9  information is found in the -- his proofs of claim that are

10  anything other than his arm suffered as a victim of the fire.

11  Nothing about PG&E's conduct and the kinds of things that he

12  now thinks would give rise to a claim.

13       So to state it differently, I think Ms. Loiu may have

14  said it, but I say it too, and it's that there simply is

15  nothing to mend, unlike Baupost. Baupost, again, this is not

16  Abrams v. Baupost. It is Mr. Abrams filing a motion saying, as

17  I've said before, if Baupost can do it, why can't I do it? And

18  the answer is that Baupost had a timely claim and now says it's

19  going to amend or it wishes to amend that timely claim to

20  expand upon it.

21       This is the kind of thing that every lawyer,

22  certainly -- and familiar with federal practice knows can be

23  done. Liberal pleadings of amended claims does not mean and by

24  the way, you can ignore the statute of limitations and bring in

25  new claims. The very decision that Mr. Abrams mentions, my

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 52
of 74

1   decision that PG&E won restates that.  That was just one

2   decision.  There are thousands of decisions in all aspects of

3   federal practice that state that over and over again.

4        So nothing to amend.  The question is, what do we do?

5   So what do we do?  Instead of faulting PG&E again, saying

6   therefore he should be allowed to amend his claim,

7   unfortunately, I don't think he can amend it because there's

8   nothing to amend despite Mr. McNutt's statement that the

9   definition of fire claim is broad.

10       Well, yes, the definition of fire claim is broad.  The

11  definition in the plan is broad.  But that doesn't mean that

12  Mr. Abrams' claim has even a shred of a basis to go back to

13  some pre-petition conduct -- or let's not even limit it to

14  pre-petition -- to something that is not governed by the

15  confirmation order.  So if Mr. Abrams had a basis to complain

16  about PG&E's conduct that fell outside of the fire -- and this

17  is there the interesting dialogue, the debtor says these are

18  fire claims.  Mr. Molton says no, these are fraud claims.  And

19  the one of the few things that Mr. Abrams and the debtor agree

20  on, a rarity in this case, is they both agree, well, it really

21  is fraud claim, but -- I mean, excuse me -- it really is a fire

22  claim, but then we're back to the question of whether he can

23  amend it.

24       So he asserts and alleges and claims about things that

25  he wishes to build his theory on, but none of them fit the

1  notion that makes it similar to Baupost, that is, something to

2  amend.  In fact, in his papers, Mr. Abrams identifies three

3  theories or suggestions that would be the basis of his claims,

4  what he calls the victim claims based upon the value of the

5  stock.

6       Well, I even have a question about that.  He doesn't

7  allege that he owns any stock.  He knows that the trustee owns

8  the stock, and if the trustee thought that PG&E had culpability

9  because of misrepresentation of the stock values, maybe there's

10 some remedy.  But Mr. Abrams, even if he is a shareholder

11 himself, he hasn't alleged it, and he hasn't pointed out how,

12 as a shareholder, he can allege any claim.

13      He also, in the second category of what he calls the

14 settlements, he calls a resident claim, and the third one is

15 called a customer claim.  I assume, without debate, Mr.

16 Abrams -- of course, I know he is a resident of Santa Rosa.

17 He -- that's where his home was when the Tubbs fire happened,

18 and I will assume that he is a ratepayer.  And so in theory, if

19 he has a claim to assert as a ratepayer, again, we're back to

20 the point he hasn't asserted it before the deadlines for all

21 these things.

22      And so he did -- it just this theory of his so-called

23 what he wants to supplement, it just doesn't -- it doesn't make

24 it.  There's nothing there.  I'm repeating myself.  There's no

25 claim to amend, and of what he's asserted, there's no basis to

1  show any connection that he could do so.

2         So I disagree with Mr. McNutt to suggest that I should

3  let him assert his claim, and then let's see if PG&E raises the

4  defense.  That's not the way you do it.  You make sure you have

5  a proper claim that is supported by whatever law might apply.

6  And here we have a bar date, the bar date for fire claims, the

7  bar date for nonfire claims, two different dates, but

8  nevertheless, dates.  Then we have the confirmation.  Then we

9  have -- and the order confirming the plan, and the finality of

10 that order.  And then we have what Ms. Liou alluded to is the

11 deadline even to seek to set aside the confirmation order

12 because it was obtained by some fraudulent basis that the

13 Bankruptcy Code would recognize.

14        And I am simply not going to endorse and not going to

15 suggest that thousands of people go assert claims that I

16 believe have no life expectancy because they're all barred and

17 say, just go ahead and assert them.  We'll see if PG&E defends

18 it.  That's not the way you do it.  That's not the way I think

19 Mr. McNutt should be thinking about it as a lawyer.  My

20 discussion with Ms. Chun makes me agree with her.  She seems to

21 know.  Let me see if I have a claim -- a theory for my claim,

22 and if I have the facts to apply the theory, maybe I'll assert

23 it.  That's the way to do it.

24        So if there are facts that exist -- Mr. McNutt, in one

25 of his last comments, said he wants to explore it.  He wants to

1 see if there's a remedy, but let's just go let him assert the
2 claim while he then finds a remedy. Well, that's not the way
3 to do it. He's got to find a credible legal theory that would
4 support the existence of a claim.

5      But anyway, back to the motion, specifically. Yeah.
6 What Mr. Abrams says over and over again, it's a fire claim,
7 but I don't want it to be -- I don't want to mess up the fire
8 claimants themselves, which, again, I think that's the right
9 result, but I want to assert it. So we have this paradox. The
10 plan defines a fire claim broadly, and it creates what exists
11 perhaps only in the bankruptcy universe called a channel or
12 channeling.

13      And as Ms. Liou reminded all of us, that was the
14 product of extensive negotiation, the channeling injunction
15 came about, and for all practical purposes, PG&E was allowed to
16 put what now may not have been enough money, but it was a
17 substantial sum of money into the channel and said all the fire
18 claims are treated here. All the other claims are on me -- on
19 it. So whether it's the securities claims that Baupost asserts
20 or the thousands of claims, many of which I am overseeing --
21 not thousands yet, but hundreds -- breach of contract, of some
22 fires that are outside of the twenty-one fires or twenty fires
23 that were covered by the plan, some -- all sorts of other
24 claims that would be asserted in state court, but for the
25 bankruptcy.

1       And that's the way that we are.  So it can't change

2  that.  So we'll get back to the point, well, what is the remedy

3  for people who believe that they have something to assert

4  against PG&E but don't want to or can't assert it as a fire

5  claim?  Well, Mr. McNutt argues and tries to remind me that

6  there's this new class -- new action against officers and

7  directors.  Well, fine.  If you have a claim against the

8  officers and directors, have at it.  And as Mr. McNutt had to

9  be reminded, that new plan, just like the other one that's

10  pending in the district court, is not against PG&E.  And the

11  reason is why is obvious.  PG&E has a confirmed plan and has

12  the 1140 discharge.

13       So we come down to the fact that there's nothing to

14  amend, and therefore, this relation back theory simply doesn't

15  cut it, and there's nothing we can do about that.  And asking

16  the Court to somehow treat the claimants here consistently with

17  the way the treatment of Baupost -- you know what?  I am being

18  consistent.  I'm saying Baupost has asserted a -- even though I

19  haven't made a decision on it, the record reflects that Baupost

20  amended a preexisting claim for preexisting and post-existing

21  facts that it's come to know about, but it all emanates from

22  where did this claim arise and was it timely asserted?  The

23  answer is yes.  It was timely asserted, unless -- and if

24  there's a defense and PG&E has a defense to the Baupost's

25  claims, so be it.  But this is where Mr. Abrams and Baupost

1  part company.  He didn't timely assert anything that fits.

2          And so for him or his lawyers to argue and to start

3  throwing around terms like absolute priority and subordination

4  and the so-called closed-door negotiations, I'm simply --

5  there's simply nothing there.  There's no "there" there.  So

6  I -- there's nothing that I can do but say that the ability to

7  make these allegations to support Abrams' motion are not

8  supported.

9          One more thing.  Yeah.  He makes reference, and I

10 believe that Mr. McNutt alluded to it, about equitable tolling.

11 Again, there's no -- that's almost a throwaway.  There are no

12 facts to support any equitable tolling.  There's no allegation

13 that PG&E did anything.  There may be allegations that PG&E did

14 all sorts of bad things, but not things that would therefore

15 invoke the doctrine of equitable tolling.  And it was raised

16 only in reply without any substantiation.  And I'm going to

17 reject it.

18          And then finally, Mr. Abrams, in his closing brief,

19 says they're just a couple of housekeeping matters.  Well, you

20 know what?  They're not housekeeping matters.  The question of

21 judicial review has been raised over and over and over again,

22 and it has been rejected over and over again.  So he is free to

23 preserve whatever he wishes to preserve, but to the extent that

24 he's asking the Court to make any kind of a ruling, the only

25 ruling I will make is what I've made over and over again.  The

1  issue of which claimants are entitled to judicial review was

2  fully vetted and decided upon and is also now this final

3  order -- subject to the finality of the confirmation order.

4  And I'm not going to reject --waste time on it again.

5          I'll remind Mr. Abrahams if he files something else

6  and makes the argument again, he'll be treated exactly the

7  same, and it's just wasting everyone's time.  So this is a long

8  way of saying that I turned down the idea and the suggestion of

9  Mr. McNutt that I grant today's motion, and then people go find

10  a theory on which to justify the assertion of it.  It's not the

11  way we do it.  It's not the way Ms. Chun knows we don't do it,

12  and she didn't even advocate that frankly bizarre approach.

13          So this is going to be a blunt way to conclude.  I

14  find the Mr. Abrams motion, though well-intended, perhaps, is

15  absolutely without any foundation in the law and facts.  And

16  it's -- I won't say it borders on the frivolous, but there's

17  simply nothing there based upon the facts, the law, the

18  history, both of his involvement in the case and the way that

19  the matter has played out, given the state of the law on all of

20  these doctrines that I alluded to.

21          I'm going to issue a very short order that will recite

22  that the motion is denied for the reasons stated on the record.

23          So with that, I'm going to conclude the matter.  Thank

24  you all for your time.  I don't need any further discussion.

25          MR. WAGNER:  Thank you, Judge.

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 59
of 74

1          MS. LIOU:  Thank you, Your Honor.

2          THE COURT:  I'll close the hearing.

3          MR. MCNUTT:  Thank you, Your Honor.

4          MS. GRASSGREEN:  Thank you, Your Honor.

5          MR. MOLTON:  Thank you.

1                         I N D E X

2    RULINGS:                                    PAGE LINE

3    Motion denied                                48    20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        C E R T I F I C A T I O N

2

3   I, Natasha Fondren, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7

8   _____

9   /s/ NATASHA FONDREN

10

11  eScribers

12  7227 N. 16th Street, Suite #207

13  Phoenix, AZ 85020

14

15  Date:  March 24, 2023

16

17

18

19

20

21

22

23

24

25

**$**

**$2.1 (1)**
15:1

**A**

**ability (3)**
10:1;28:11;58:6
**able (1)**
10:9
**Abrahams (1)**
59:5
**Abram (1)**
4:18
**Abrams (55)**
4:2,10,11,12;5:17;
6:2,9;10:3,9,18;12:16,
20,24;13:6;15:15;
17:16;19:3,11;24:2;
25:8,10,15,16;26:7;
27:6,23;28:3;39:6;
40:11;46:22,23,24;
47:2;48:8,11;49:15,
25;50:4,12,17,23;
51:23;52:4,16,16,25;
53:15,19;54:2,10,16;
56:6;57:25;58:18;
59:14
**Abrams' (14)**
11:10;16:1;17:13;
28:6,21;30:3,9,14;
34:16;44:11,17;
45:17;53:12;58:7
**absolute (3)**
47:18;51:11;58:3
**absolutely (11)**
7:8;8:3;11:22,23;
22:8;24:20,23;26:6,
23;39:15;59:15
**accept (1)**
39:18
**accepted (1)**
32:1
**accomplished (1)**
23:7
**according (1)**
28:22
**Accordingly (3)**
30:14;34:5,19
**account (2)**
28:19,19
**accountable (1)**
45:20
**accurately (1)**
32:10
**accused (1)**
47:12
**acknowledge (1)**
21:1
**action (6)**
8:13;40:16,22,24;

44:9;57:6
**actions (1)**
8:7
**activated (1)**
18:13
**active (1)**
12:6
**actively (1)**
49:11
**activity (1)**
47:14
**actually (2)**
23:9;30:17
**add (4)**
11:24;43:10;48:23;
51:9
**added (1)**
38:7
**addition (4)**
8:16;22:3;27:1;
28:2
**address (2)**
6:6;23:12
**addressed (1)**
51:20
**addressing (1)**
48:9
**adds (1)**
51:9
**adopted (1)**
19:24
**ADR (1)**
37:21
**advance (1)**
12:23
**adverse (2)**
17:16,17
**advocate (1)**
59:12
**affecting (1)**
28:20
**again (37)**
9:10;10:8;11:1;
12:4,15,23;13:2;15:7;
21:24;27:14;28:17;
29:9,24;33:13,14;
34:11,13;35:12;
39:24;40:23;50:10,
18,21,22;51:22;
52:15;53:3,5;54:19;
56:6,8;58:11,21,22,
25;59:4,6
**against (24)**
7:17,21,22;8:1,13;
9:18,20;16:5,11;
17:16;24:12,23;
25:21;28:25;29:11;
38:4;40:4,13,18;
44:17;57:4,6,7,10
**ago (1)**
43:10
**agree (7)**
23:13,25;32:14;

38:16;53:19,20;55:20
**agreed (2)**
21:21;23:13
**ahead (7)**
4:17;5:8;11:15;
19:5;31:13;47:6;
55:17
**air (2)**
15:12;27:10
**aligned (1)**
12:20
**allegation (3)**
19:17;27:1;58:12
**allegations (12)**
9:14;10:24;27:6,11;
30:16;34:13;38:8;
50:5,6,18;58:7,13
**allege (5)**
7:14;19:11;45:23;
54:7,12
**alleged (3)**
30:12;34:13;54:11
**alleges (1)**
53:24
**alleging (1)**
7:18
**allocate (1)**
22:24
**allocated (3)**
5:12;21:21;37:8
**allow (4)**
20:22;21:10;29:10;
38:2
**allowed (8)**
24:15;36:8,23;
37:19,20;46:21;53:6;
56:15
**allude (1)**
9:3
**alluded (3)**
55:10;58:10;59:20
**almost (3)**
39:21,25;58:11
**alone (1)**
29:11
**Alsup (3)**
8:16;9:13;42:8
**Although (1)**
9:22
**always (1)**
7:10
**amend (17)**
16:5;25:20,25;
30:15;40:2;42:25;
46:21;52:19,19;53:4,
6,7,8,23;54:2,25;
57:14
**amended (5)**
7:11;12:3;47:16;
52:23;57:20
**amendment (3)**
23:12,17;24:22
**amendments (6)**

25:5,6,7,7,13,13
**amends (1)**
25:20
**among (1)**
27:4
**amongst (1)**
22:24
**amount (4)**
25:1;27:18;29:2;
39:7
**amounts (1)**
34:1
**analogies (1)**
13:2
**and/or (2)**
18:15;23:17
**Angela (1)**
5:4
**anyways (1)**
22:6
**apologize (1)**
48:1
**apparent (2)**
9:24;24:9
**appearances (2)**
3:8,10
**appearing (4)**
3:18;4:2,22;29:25
**appellate (1)**
32:5
**apply (2)**
55:5,22
**appointed (1)**
8:21
**Appreciate (2)**
20:13;33:22
**approach (4)**
34:3;43:19,20;
59:12
**appropriately (1)**
25:10
**approximately (6)**
19:7;31:19;32:4;
33:5,6,16
**approximates (1)**
33:6
**Aravista (1)**
51:8
**argue (2)**
28:13;58:2
**argued (2)**
20:19;49:22
**argues (1)**
57:5
**arguing (1)**
23:16
**argument (4)**
20:18;25:4;47:1;
59:6
**arguments (3)**
5:13,23;23:4
**arise (4)**
30:12,13;34:18;

25:5,6,7,7,13,13
**amends (1)**
25:20
**among (1)**
27:4
**amongst (1)**
22:24
**amount (4)**
25:1;27:18;29:2;
39:7
**amounts (1)**
34:1
**analogies (1)**
13:2
**and/or (2)**
18:15;23:17
**Angela (1)**
5:4
**anyways (1)**
22:6
**apologize (1)**
48:1
**apparent (2)**
9:24;24:9
**appearances (2)**
3:8,10
**appearing (4)**
3:18;4:2,22;29:25
**appellate (1)**
32:5
**apply (2)**
55:5,22
**appointed (1)**
8:21
**Appreciate (2)**
20:13;33:22
**approach (4)**
34:3;43:19,20;
59:12
**appropriately (1)**
25:10
**approximately (6)**
19:7;31:19;32:4;
33:5,6,16
**approximates (1)**
33:6
**Aravista (1)**
51:8
**argue (2)**
28:13;58:2
**argued (2)**
20:19;49:22
**argues (1)**
57:5
**arguing (1)**
23:16
**argument (4)**
20:18;25:4;47:1;
59:6
**arguments (3)**
5:13,23;23:4
**arise (4)**
30:12,13;34:18;

57:22
**arm (1)**
52:10
**around (2)**
44:19;58:3
**aside (5)**
27:16;39:5;40:24;
42:4;55:11
**aspects (1)**
53:2
**assert (25)**
9:19,22,22;10:16;
12:8,9,9;26:1;28:25;
30:17;45:1,2;46:7;
51:20,21;54:19;55:3,
15,17,22;56:1,9;57:3,
4;58:1
**asserted (13)**
9:17,18,19;25:8;
30:6;40:18;50:9;
54:20,25;56:24;
57:18,22,23
**asserting (6)**
24:18;43:4,12;
47:10,11,16
**assertion (2)**
9:15;59:10
**asserts (3)**
12:10;53:24;56:19
**assist (1)**
20:11
**assume (2)**
54:15,18
**attorney (1)**
44:6
**attorneys (2)**
20:25;21:3
**audio (1)**
45:9
**auditor (2)**
51:6,7
**authority (1)**
24:20
**authorizing (1)**
24:21
**available (1)**
31:6
**avenue (1)**
24:23
**avenues (2)**
16:8;24:11
**avoided (1)**
35:1
**avowed (1)**
25:21
**award (2)**
31:19;34:2
**awards (5)**
14:2,3,6;32:1,6
**aware (4)**
18:21;20:1;27:25;
49:10
**awareness (1)**

Case: 19-30088    Doc# 13645    Filed: 03/27/23    Entered: 03/27/23 05:10:19    Page 63
of 74

28:10
**away (1)**
19:9

## B

**back (16)**
13:2,9;15:17;25:15,
20;26:8;28:2;37:22;
39:10;48:12;53:12,
22;54:19;56:5;57:2,
14
**background (1)**
31:8
**bad (1)**
58:14
**ball (1)**
12:23
**bankruptcy (15)**
8:11,12;13:21;41:2,
16,25;42:5,10;43:1,
17;44:5,21;55:13;
56:11,25
**bar (8)**
24:15;27:24,25,25;
28:13;55:6,6,7
**barred (6)**
12:11;42:4;43:13,
25;44:11;55:16
**based (8)**
19:23;30:16;34:2;
36:23;49:1;50:9;54:4;
59:17
**bases (1)**
50:8
**Basically (1)**
31:4
**basis (13)**
12:9;18:6;26:14,22;
28:7,14;29:16;45:1;
53:12,15;54:3,25;
55:12
**baton (1)**
34:12
**Baupost (45)**
3:24;6:3;7:10,12,
19;9:13;11:25;12:22,
24;13:1,5;16:13,15,
17;17:2;19:10;22:1;
23:7,8,10,13,14,16,19,
25;35:8;36:1,2,8;
38:12;47:17,19;50:7,
8;52:15,15,16,17,18;
54:1;56:19;57:17,18,
19,25
**Baupost-related (1)**
35:20
**Baupost's (3)**
16:1,20;57:24
**bear (1)**
48:22
**became (1)**
50:15

**become (2)**
24:9;28:21
**becomes (1)**
26:6
**beginning (1)**
6:1
**behalf (7)**
3:12,23;4:2;7:15;
8:7;13:6;21:25
**benefit (1)**
17:23
**best (5)**
14:13;16:21;25:25;
29:22;34:6
**better (4)**
13:15;43:6;49:9,17
**billion (9)**
15:2,11;31:21;32:3;
33:5,16,17,20;34:1
**bit (2)**
19:8;30:10
**bits (2)**
6:21,22
**bizarre (1)**
59:12
**blame (2)**
12:22;42:2
**blood (1)**
29:7
**blunt (1)**
59:13
**borders (1)**
59:16
**both (4)**
8:20;15:13;53:20;
59:18
**bound (1)**
44:18
**breach (1)**
56:21
**break (3)**
48:3,4,11
**brief (3)**
13:19;29:23;58:18
**briefing (1)**
30:21
**briefly (1)**
44:2
**briefs (1)**
5:9
**bring (14)**
17:10,11,13;19:17;
27:18,23;34:1,12;
40:20,22,24;45:7;
46:14;52:24
**bringing (4)**
3:6;4:8;44:11;45:6
**brings (2)**
50:18,23
**broad (4)**
50:17;53:9,10,11
**broadly (1)**
56:10

**brought (1)**
4:7
**Brown (2)**
3:17;29:24
**brush (1)**
50:17
**build (1)**
53:25
**built (1)**
27:13
**bundle (1)**
51:10
**bus (1)**
37:22
**Butch (1)**
20:17
**buy (1)**
32:21
**buys (1)**
32:21

## C

**calendar (1)**
11:10
**CALIFORNIA (2)**
3:1;51:6
**Call (6)**
3:3;21:12;23:24;
40:12;50:1,16
**called (7)**
8:17,18;23:23;35:1;
51:7;54:15;56:11
**Calling (1)**
3:5
**calls (4)**
51:7;54:4,13,14
**came (3)**
15:11;47:2;56:15
**camera (3)**
18:15;19:1;48:6
**cameras (1)**
48:4
**Camp (1)**
20:18
**Can (52)**
3:14,16;6:7;7:6,7;
9:6,17,21;10:2,5,6,11,
16;11:3,8,13;12:7,24;
15:20;17:10;18:24,
24,25;19:1;21:13,14;
22:21;23:24;25:14;
31:5;32:10;33:24;
34:5,6;42:2,3;43:12;
45:20;48:15;51:16,
16,17,17,20;52:17,22,
24;53:7,22;54:12;
57:15;58:6
**capacity (2)**
3:18;29:25
**car (1)**
43:8
**care (1)**

8:14
**case (30)**
6:13,15,16,17,17;
7:4,5,15,16;8:10;
12:6;14:13;16:5,11;
19:19;20:1,3,6;22:10;
23:21;24:20;29:14;
45:9;47:14;49:24;
50:10,22,25;53:20;
59:18
**cases (4)**
19:7;29:5;49:6,10
**cash (3)**
15:11;35:14;36:20
**category (1)**
54:13
**Cathy (2)**
3:18;29:25
**caucused (1)**
21:25
**caused (1)**
16:1
**ceded (1)**
22:2
**certain (3)**
17:19;23:14;27:18
**certainly (5)**
37:16;49:1,2,9;
52:22
**change (4)**
4:23;30:10;33:16;
57:1
**changes (1)**
13:15
**channel (3)**
30:15;56:11,17
**channeled (5)**
25:11;29:7,8;30:18;
34:19
**channeling (5)**
24:16;25:11;29:17;
56:12,14
**Chapter (4)**
27:2;29:3,4,18
**characterization (1)**
30:11
**characterize (1)**
19:21
**chief (1)**
10:18
**chronicles (1)**
51:2
**Chun (55)**
4:21,22,25;5:3,4,4,
6;13:10,13,18;14:8,9,
16,18,22,24;15:6,7,9,
16,19,22,22,25;16:16,20,
24;17:6,8;18:1,4,8;
26:9;31:10;34:24;
42:1;43:16;44:1,2,13,
14,23;45:3,5,9,12,13,
14,25;46:3,5,10,12,
14;55:20;59:11

**circumvent (1)**
24:15
**cites (1)**
51:4
**claim (84)**
6:3,3,4;7:11;10:10;
12:10;16:1,6,7;17:3,9,
11;18:6;20:22;21:14;
24:22,22;25:16,17,20,
20,21,25;30:14;36:2,
9,23;39:7,8,8,19,24;
40:2,2,3,6,8,12,12,13,
18;42:25;43:1,4,13,
21,22;44:14;45:2,10;
46:15,20;47:9,10;
49:7;51:20;52:1,9,12,
18,19;53:6,9,10,12,
21,22;54:12,14,15,19,
25;55:3,5,21,21;56:2,
4,6,10;57:5,7,20,22
**claimants (9)**
19:7;21:2;23:21;
24:15;28:4,23;56:8;
57:16;59:1
**claims (82)**
9:17,21,21,23;
10:16;12:3,3;16:13;
17:4,13,13;19:24;
20:4;21:11,11,12;
24:11,18,23;25:4,8,9,
10,12,13;27:22,23;
28:1,5,11,15,25;29:7,
11;30:6,11,11,17,18;
31:20,21;34:2;35:6,7,
14,15,21;36:4,5,20;
37:5,17;40:9;46:8;
47:16;50:9,13,13,14,
14,16;51:14,21,22;
52:6,6,23,25;53:18,
18,24;54:3,4;55:6,7,
15;56:18,18,19,20,24;
57:25
**clarify (3)**
24:5;35:11;38:11
**clarifying (1)**
23:8
**class (3)**
8:13;37:2;57:6
**classes (1)**
37:6
**clear (7)**
23:7,11;24:13;25:5;
27:25;28:21;30:4
**clearly (1)**
51:22
**CLERK (3)**
3:4;4:8,15
**client (8)**
12:5,5,6;13:22;
35:13,15;39:4;43:7
**clients (13)**
10:20;13:25;14:1,5,
19;16:3,6,7;17:17;

20:6,7,10;35:17
**clients' (2)**
16:12;17:13
**client's (1)**
26:12
**clock (1)**
34:22
**close (2)**
32:15;60:2
**closed-door (1)**
58:4
**closely (1)**
28:23
**closing (1)**
58:18
**clue (1)**
43:2
**Code (2)**
42:5;55:13
**cogent (4)**
16:5,11;44:14;45:9
**colleague (2)**
4:22;13:14
**colleagues (2)**
4:5;22:21
**collectively (1)**
22:1
**comment (3)**
7:7;11:11;17:15
**commented (1)**
34:25
**comments (1)**
55:25
**committed (1)**
26:1
**Committee (2)**
20:4;50:19
**company (1)**
58:1
**compensated (2)**
21:4,7
**compensation (1)**
13:23
**complain (1)**
53:15
**complained (1)**
50:20
**complaint (4)**
7:17;8:7;9:14;
47:11
**complete (2)**
16:4;18:4
**completely (4)**
10:1;29:3,4,5
**complexity (2)**
49:7,19
**complicated (1)**
5:23
**complied (1)**
42:13
**compressed (1)**
31:13
**compromised (1)**

36:1
**concentrated (1)**
9:24
**concise (1)**
29:23
**conclude (3)**
47:7;59:13,23
**conclusions (2)**
5:24;31:5
**conduct (8)**
9:15,16;12:12;42:2;
51:12;52:11;53:13,16
**confidence (1)**
47:18
**confirm (1)**
14:3
**confirmation (15)**
19:13;24:16;26:20;
27:13,14,17,24;31:25;
39:11;42:4;49:8;
53:15;55:8,11;59:3
**confirmed (5)**
25:2;29:6;43:24;
51:13;57:11
**confirming (1)**
55:9
**confusing (1)**
37:25
**confusion (1)**
24:5
**conjunctions (1)**
41:7
**connection (1)**
55:1
**conscientious (2)**
45:1,19
**consequences (3)**
12:12,18;17:25
**conservative (1)**
32:8
**considered (1)**
27:11
**consistent (1)**
57:18
**consistently (1)**
57:16
**conspiracy (1)**
8:18
**constitutes (2)**
46:20;47:9
**construe (3)**
39:19;40:25;46:19;
47:8
**construes (1)**
50:7
**consultants (1)**
10:2
**contention (1)**
34:17
**context (2)**
30:23;46:19
**continuance (2)**
11:2;20:23

**continue (4)**
10:13;11:13;12:18;
20:9
**continued (2)**
10:11;11:21
**continuously (1)**
9:15
**contract (1)**
56:21
**controlling (1)**
12:15
**convenience (1)**
48:5
**cornerstone (1)**
29:18
**Corporation (1)**
3:6
**counsel (14)**
3:6;4:3,20;5:14;
10:2,6,22;11:5,19;
16:20;21:25;23:4;
49:16,22
**couple (5)**
11:12,18;13:8;44:4;
58:19
**course (5)**
33:11;34:23;47:14;
49:24;54:16
**Court (181)**
3:3,4,7,13,16,20,25;
4:3,9,13,16,24;5:2,5,
7,16;6:19,24;7:6,16,
18,20,24;8:4,9,13;9:1,
6,9;10:5,13,15;11:8,
18,23;12:4;13:17;
14:7,9,17,21,23;15:4,
7,10,17,20,23;16:15,
17,22;17:1,7,15;18:3,
7,9,12,20,23;19:1,5,
17;20:1,11,13,21;
21:9,13,17;22:4,7,9,
18,20,25;23:22;24:4,
6,21;25:14,19,25;
26:3,5,8,21,24;27:20;
29:19;30:23;31:7,17,
23;32:14,18;33:2,11,
13,17,19,22;34:7,9,
21;35:11,19,23,25;
36:1,7,13,16,19,22;
37:3,7,10,18,23;38:6,
16,21,23;39:1,16,17,
22,24;40:6,11,17,21,
23;41:1,5,8,10,12,14,
16,18,20,22,24;42:15,
18,21;43:7,15;44:1,
13,16,24;45:4,8,11,
13,15;46:2,4,7,11,13,
16,18,23;47:3,8,20,
24;48:3,9,10,14,18;
56:24;57:10,16;
58:24;60:2
**Court's (2)**
7:11;20:20

**covered (1)**
56:23
**creates (1)**
56:10
**credible (1)**
56:3
**creditors (1)**
36:20
**criminal (2)**
8:18,19
**criminals (1)**
41:17
**critical (2)**
31:9;50:23
**criticisms (1)**
51:10
**criticize (4)**
51:15,16,17,17
**crossed (1)**
45:16
**cross-examination (1)**
47:22
**culpability (1)**
54:8
**culprit (1)**
42:3
**current (1)**
32:1
**customer (1)**
54:15
**cut (1)**
57:15

# D

**dabble (1)**
9:25
**danger (1)**
28:16
**date (13)**
11:21;23:14,15;
24:15;25:11;27:24,
25,25;28:13;33:4;
55:6,6,7
**dates (2)**
55:7,8
**David (2)**
3:17;29:24
**day (3)**
7:16;14:20;52:6
**days (5)**
6:6;10:11,16,21;
11:12
**deadline (2)**
21:13;55:11
**deadlines (2)**
42:5;54:20
**deal (5)**
35:9;38:9,12,15;
47:16
**dealing (1)**
8:11
**debate (1)**

54:15
**Deborah (1)**
3:22
**debt (2)**
35:13,14
**debtor (10)**
10:23;21:21;28:20;
30:24;39:10;40:13;
44:17,18;53:17,19
**debtors (3)**
26:13;28:17;35:1
**decided (2)**
48:18;59:2
**decision (7)**
28:12,24;48:6;
52:25;53:1,2;57:19
**decisions (1)**
53:2
**decline (1)**
39:18
**declining (1)**
40:8
**deem (2)**
16:12;17:12
**deemed (4)**
6:5;10:10;28:5;
38:2
**defendants (1)**
44:21
**defends (1)**
55:17
**defense (4)**
46:8;55:4;57:24,24
**defenses (1)**
16:14
**defer (3)**
5:13;46:22,23
**deferred (1)**
13:6
**defines (1)**
56:10
**definitely (1)**
44:4
**definition (4)**
46:21;53:9,10,11
**degree (1)**
27:4
**delay (2)**
28:10;48:18
**delayed (1)**
11:12
**delay's (1)**
38:4
**deliberate (1)**
33:8
**demonstrated (1)**
28:8
**denied (2)**
28:6;59:22
**Dennis (1)**
3:5
**deny (6)**
12:16;28:6;39:6;

Case: 19-30088    Doc# 13645    Filed: 03/27/23    Entered: 03/27/23 05:10:19    Page 65 of 74

48:20;49:21;51:23
**depth (1)**
16:23
**derived (1)**
31:5
**describe (1)**
9:16
**despite (1)**
53:8
**detail (1)**
48:21
**determination (1)**
21:9
**determinations (2)**
21:5;31:19
**determined (4)**
17:17;38:3;50:8;
52:7
**detriment (3)**
23:20;38:13,15
**devolves (1)**
30:19
**dialogue (1)**
53:17
**difference (4)**
8:10;9:10,11,12
**different (10)**
7:25;10:1,17;35:25;
36:15,16,17;43:19;
47:10;55:7
**differently (2)**
28:4;52:13
**difficult (1)**
9:23
**dig (2)**
46:2,4
**diligent (1)**
16:2
**direct (1)**
24:23
**directly (4)**
8:20;28:25;29:11;
42:14
**directors (5)**
7:22;8:6,13;57:7,8
**disagree (1)**
55:2
**disagreeing (1)**
36:25
**discharge (2)**
39:11;57:12
**disclose (1)**
41:13
**disclosed (1)**
32:2
**disclosure (1)**
27:7
**discourage (1)**
39:18
**discovered (1)**
38:9
**discuss (2)**
6:14;37:15

**discussed (1)**
31:24
**discussion (6)**
5:25;6:11;15:8;
50:15;55:20;59:24
**discussions (2)**
9:20;20:24
**disputes (1)**
25:8
**disrupt (1)**
30:5
**disruption (1)**
30:25
**distressed (2)**
10:1;48:23
**distributable (1)**
37:6
**distributed (1)**
32:3
**distribution (1)**
49:5
**District (4)**
7:18;8:12;41:16;
57:10
**diverts (1)**
8:23
**doctrine (1)**
58:15
**doctrines (1)**
59:20
**dollar (1)**
37:11
**dollars (4)**
33:5,16;36:2;40:12
**done (7)**
19:11;35:9;45:15;
47:15,23;51:4;52:23
**door (3)**
22:11,14;39:8
**doubt (1)**
51:23
**down (3)**
21:19;57:13;59:8
**Ds (1)**
9:18
**due (2)**
24:25;27:11
**during (5)**
7:15;31:25;34:15;
41:15;47:14

**E**

**earlier (2)**
14:4;28:15
**early (2)**
49:8;50:2
**economically (1)**
9:23
**effective (1)**
25:11
**effort (1)**
25:2

**eight (3)**
4:19;5:13,20
**eighty-two (1)**
31:25
**either (3)**
4:14;14:11;26:13
**elephant (1)**
47:11
**Ellis (1)**
51:5
**Elon (1)**
32:21
**else (7)**
10:19;26:14;32:22;
36:22;42:3,8;59:5
**emanates (1)**
57:21
**emerge (1)**
28:24
**emphasize (2)**
23:3;24:8
**encourage (1)**
43:19
**end (6)**
6:1;13:25;14:20;
21:15;34:12;48:25
**ended (1)**
24:7
**endorse (1)**
55:14
**ends (1)**
21:17
**energy (1)**
25:2
**engaged (3)**
8:21;9:15;47:13
**enormous (1)**
51:10
**enough (3)**
21:6;32:8;56:16
**entities (1)**
35:17,20
**entitled (5)**
35:14,15;36:10;
39:6;59:1
**equal (1)**
12:3
**equitable (1)**
58:10,12,15
**equities (2)**
28:19,20
**equity (1)**
35:14
**error (1)**
23:6
**especially (1)**
30:24
**essentially (1)**
17:4
**established (1)**
24:24
**ethical (2)**
16:7;45:1

**even (14)**
17:10;25:16;34:16;
43:1,23;49:7;52:6;
53:12,13;54:6,10;
55:11;57:18;59:12
**event (1)**
13:19
**events (2)**
9:3;51:1
**everybody (2)**
30:22;33:24
**everyone (2)**
27:1,2
**everyone's (1)**
59:7
**evidence (5)**
26:13,23;28:8;
29:15;31:9
**evident (2)**
28:17;52:8
**Evis (1)**
51:7
**eviscerate (1)**
29:17
**eviscerates (1)**
29:5
**exactly (3)**
5:18;12:1;59:6
**examination (1)**
16:18
**example (1)**
41:23
**exceeds (1)**
31:22
**excerpt (1)**
38:17
**excusable (3)**
28:9,11;29:10
**excuse (1)**
53:21
**executive (1)**
10:19
**exist (1)**
55:24
**existence (1)**
56:4
**existing (2)**
30:15;40:9
**exists (2)**
29:10;56:10
**expand (1)**
52:20
**expansive (1)**
39:20
**expectancy (1)**
55:16
**expectation (1)**
42:25
**expecting (1)**
4:13
**expending (1)**
25:1
**expense (1)**

25:2
**experience (2)**
41:25;49:6
**experienced (1)**
43:1
**explain (1)**
48:20
**explore (4)**
16:8;42:12;44:7;
55:25
**extensive (1)**
56:14
**extensively (1)**
8:17
**extent (4)**
25:6;30:14,19;
58:23
**extremely (1)**
32:15

**F**

**faces (1)**
7:9
**fact (6)**
6:15;8:18;17:18;
27:16;54:2;57:13
**facts (15)**
6:13;9:3;28:8;
29:14;31:5;44:6,25;
45:23;46:4;55:22,24;
57:21;58:12;59:15,17
**factual (1)**
5:24
**failure (1)**
42:13
**fair (1)**
32:24
**fairly (3)**
9:16;28:17;32:10
**fairness (1)**
20:6
**fall (1)**
22:11
**familiar (2)**
50:11;52:22
**familiarity (1)**
50:24
**family (1)**
51:24
**far (1)**
6:18
**fashioned (1)**
9:21
**fatal (1)**
23:6
**faulting (1)**
53:5
**federal (6)**
7:18;8:21;9:13;
41:16;52:22;53:3
**feel (2)**
5:25;22:12

Case: 19-30088    Doc# 13645    Filed: 03/27/23    Entered: 03/27/23 05:10:19    Page 66
of 74

**feels (1)**
49:1
**fell (1)**
53:16
**few (2)**
6:2;53:19
**fiduciary (1)**
33:9
**fifteen (1)**
22:18
**figure (2)**
6:8;10:11
**figures (1)**
33:25
**file (18)**
6:3,10;7:11;10:10;
12:14,17,17,25;18:6;
20:22;21:11,14;28:5,
15;29:10,11;42:25;
43:21
**filed (19)**
6:3;7:10,17,20,22;
8:7,11;9:14;12:1,24,
24;13:20;15:15;
23:13,15;25:10;28:1;
35:2;38:14
**files (2)**
12:25;59:5
**filing (4)**
17:21,23;23:23;
52:16
**filings (1)**
28:22
**final (3)**
32:11,13;59:2
**finality (2)**
55:9;59:3
**finally (2)**
47:17;58:18
**find (12)**
20:9;24:11;39:25;
42:1,22;43:3,12;
44:24,24;56:3;59:9,
14
**findings (1)**
5:24
**finds (2)**
45:1;56:2
**fine (4)**
11:21;18:24;22:19;
57:7
**finest (1)**
7:12
**finger (1)**
51:3
**finish (1)**
32:9
**Fire (77)**
3:19;5:1;10:23;
12:17,25;13:21,23,24;
14:5;15:1;19:13,16,
19,23;20:18;22:1;
23:20;24:15,18;25:8,

9,10,12,17,20;26:7;
28:1,4,23,25;29:7,8,8;
30:1,5,7,24;31:1,20;
32:4;34:17;35:6,7;
36:10;37:8,11;38:13,
15;39:8,8;40:2,3,6,8,
9,12,19;44:5;50:14;
51:5,24;52:3,5,5,10;
53:9,10,16,18,21;
54:17;55:6;56:6,7,10,
17;57:4
**fires (7)**
20:7;30:13;34:16,
18;56:22,22,22
**first (7)**
4:4;21:18;23:5;
26:9,23;29:20;34:25
**fit (2)**
45:23;53:25
**fits (2)**
44:25;58:1
**five (6)**
22:2,21,21,22,23;
29:21
**floodgates (1)**
39:9
**focus (1)**
25:3
**focusing (1)**
51:19
**folks (3)**
21:7,10;37:25
**follow (1)**
35:12
**followed (1)**
47:5
**forever (1)**
49:6
**forfeited (1)**
18:17
**form (2)**
19:18,18
**formulate (2)**
43:20,23
**forward (5)**
5:20;6:8;10:12;
11:6;19:17
**found (4)**
6:12;26:13;45:24;
52:9
**foundation (1)**
59:15
**four (6)**
14:3;33:5,16,17,20;
43:10
**FRANCISCO (1)**
3:1
**frankly (1)**
59:12
**fraud (10)**
26:22;27:1,7;35:6;
36:5;37:5,17;43:24;
53:18,21

**fraudulent (2)**
47:13;55:12
**free (8)**
10:7,18;12:14,14,
17;25:19;51:15;58:22
**FRIDAY (2)**
3:1;48:2
**frivolous (1)**
59:16
**frustrating (1)**
39:25
**full (1)**
34:3
**fully (1)**
59:2
**fundamental (1)**
23:6
**funds (5)**
8:23,24;9:24;37:6,8
**further (4)**
26:1;38:14;40:15;
59:24

**G**

**game (1)**
21:15
**gave (2)**
26:14;34:2
**general (1)**
50:14
**gets (1)**
12:19
**given (7)**
14:14;21:4;28:1;
33:25;47:25;49:19;
59:19
**giving (2)**
42:23;48:10
**glad (2)**
3:17;46:13
**goal (4)**
19:22,22,23;21:3
**goes (1)**
37:11
**gonna (1)**
13:7
**Good (19)**
3:9,11,14,17,20,22;
4:10,12;5:5,6;8:15;
13:13;18:20;20:16;
28:9;29:24;44:3;
49:18,20
**Gotshal (2)**
3:12;21:24
**govern (1)**
24:17
**governed (1)**
53:14
**governor (1)**
10:19
**Gowins (1)**
20:3

**grant (3)**
20:21;28:25;59:9
**Grassgreen (35)**
3:20,22,23;9:19;
10:3,24;21:22;23:22;
29:20;31:12;34:9,12,
22;35:17,20,24;36:4,
12,15,17,21;37:1,4,9,
14,19,24;38:7,20,22,
24;47:18,22;50:8;
60:4
**Grassgreen's (1)**
10:20
**grievances (1)**
27:10
**ground (1)**
30:21
**group (1)**
16:1
**guess (1)**
11:13
**guidance (1)**
11:20
**guy (1)**
13:3

**H**

**hair (1)**
39:25
**half (3)**
15:10;27:24;47:4
**hall (1)**
38:18
**Hamilton (1)**
38:17
**hand (1)**
10:18
**handle (1)**
21:15
**handwriting (1)**
48:22
**happen (2)**
11:1;15:24
**happened (7)**
19:23;20:1;38:18,
19,19,24;54:17
**happens (3)**
40:14,17,17
**happy (2)**
38:25;49:4
**hard-fought (1)**
24:25
**harm (1)**
20:10
**harmed (1)**
20:7
**headline (1)**
7:25
**healthy (1)**
49:5
**hear (12)**
3:14;4:4;5:9,20;

18:24,24;22:13;
33:20;44:2;48:15,23;
49:4
**heard (8)**
14:15,17;18:14,16;
19:3,17;23:4;47:17
**hearing (13)**
6:6;9:8;10:11,13,
15;11:12;15:15;
20:25;24:10;26:18;
46:19;49:14;60:2
**hearings (3)**
12:7;27:5;46:25
**heart (2)**
29:3,17
**heavily (1)**
6:16
**hedge (1)**
9:24
**held (2)**
34:4;35:21
**help (2)**
39:6;45:22
**hence (1)**
50:16
**here's (1)**
15:25
**high (1)**
27:4
**himself (2)**
50:12;54:11
**hire (3)**
10:2,5,6
**hired (1)**
46:25
**historical (2)**
31:5,6
**history (3)**
50:3,24;59:18
**hit (5)**
15:5;34:1;37:25;
43:8,9
**hold (3)**
4:9;45:20;47:1
**holding (1)**
47:5
**home (4)**
14:19;32:7;51:24;
54:17
**Honor (92)**
3:11,14,22;4:1,8,12,
15,22;5:11,22;8:3,15;
9:5,8,12;11:17,20;
13:13,19;14:1,4,18,
24;15:9,16,25;16:9;
17:6,8;18:1,18;19:4;
20:8,11,16,17;21:23;
22:19;23:2;24:10,13,
19;25:3;26:4,18;27:5,
9,21;28:2,6,12,18;
29:22,24;30:3,9,20,
22;31:2,2,4,16,21;
32:4,5,6,11;33:3;

Case: 19-30088   Doc# 13645   Filed: 03/27/23   Entered: 03/27/23 05:10:19   Page 67
of 74

34:20,24;35:18;
37:14,22;39:14;40:5;
43:20;44:2,3,10,12,
23;45:25;46:1,6,10;
47:2,23;48:8,17;60:1,
3,4
**Honorable (1)**
3:4
**hooked (1)**
18:21
**hope (5)**
5:25;6:7;11:3;
13:16,17
**hopes (1)**
7:5
**horrible (4)**
13:2;42:1;49:10;
51:25
**housekeeping (2)**
58:19,20
**huge (1)**
32:22
**Huh (1)**
43:15
**hundred (10)**
13:23;14:6,10;21:4,
7;32:16;40:12;45:3;
46:24;49:3
**hundred-cent (2)**
6:16;7:4
**hundred-dollar (1)**
40:18
**hundreds (2)**
42:24;56:21
**hypothetical (2)**
26:19,19

**I**

**idea (1)**
59:8
**identifies (1)**
54:2
**ignorant (1)**
42:16
**ignore (2)**
12:15;52:24
**ignores (1)**
29:5
**immensely (1)**
31:1
**implicated (1)**
10:24
**important (4)**
8:4;23:3,18;51:15
**importantly (1)**
10:23;42:24
**inaccuracies (1)**
30:12
**inaccurate (1)**
30:16
**incapable (2)**
8:19;41:17

**incidental (1)**
52:1
**include (2)**
39:20;40:16
**including (5)**
6:22;25:9;41:7;
47:12,14
**incorrect (1)**
8:1
**independently (1)**
50:7
**indiscernible (3)**
22:8,8;39:23
**individual (1)**
26:20
**information (3)**
17:3;31:6;52:9
**informed (1)**
33:8
**initial (1)**
31:19
**initiating (1)**
16:17
**injunction (4)**
24:16;25:11;29:17;
56:14
**instances (1)**
27:12
**Instead (1)**
53:5
**insurance (1)**
35:21,22
**intended (1)**
8:24
**interest (2)**
7:16;26:12
**interested (1)**
5:9
**interesting (1)**
53:17
**interfere (1)**
40:10
**interference (1)**
45:10
**interrupt (1)**
33:13
**intervene (1)**
31:8
**into (10)**
9:21;25:20;27:13;
28:19,19;29:7;30:19;
43:7;47:21;56:17
**introduce (1)**
5:13
**investigating (1)**
17:9
**investigation (7)**
16:2,4,10,25;18:4;
44:7,12
**investment (1)**
9:25
**invitation (1)**
39:18

**invited (1)**
48:4
**invoke (1)**
58:15
**involved (3)**
12:7;49:11,12
**involvement (1)**
59:18
**issue (9)**
13:19;26:7;30:19;
38:3;39:13;48:19;
51:19;59:1,21
**issued (1)**
31:19
**issues (2)**
6:7;27:7

**J**

**jacket (1)**
5:8
**Jae (1)**
5:4
**January (2)**
9:2,3
**Jessica (2)**
3:11;21:24
**job (1)**
20:5
**join (1)**
17:22
**joinders (4)**
23:5;28:22;30:4,9
**joined (3)**
4:15;44:18;50:2
**joining (2)**
17:21;45:16
**joins (1)**
48:14
**Jones (1)**
3:23
**Judge (12)**
8:16;9:13;13:5;
14:11;21:16;33:1,18;
34:6,11;41:16;42:8;
59:25
**judged (1)**
13:1
**judgment (1)**
45:17
**judicial (2)**
58:21;59:1
**jump (1)**
32:22
**June (2)**
37:15;38:25
**justice (1)**
20:5
**justify (2)**
51:13;59:10

**K**

**Kane (16)**
4:14;18:12,12,12,
14,18,18,21,25;19:4,
6,6;20:13,19;26:9;
42:1
**keep (4)**
5:20;8:4;29:23,23
**keeping (1)**
5:18
**key (1)**
24:9
**kind (5)**
13:22;17:20;27:1;
52:21;58:24
**kinds (1)**
52:11
**Kirk (2)**
4:25;13:20
**Kirkland (1)**
51:5
**knew (1)**
36:24
**knowingly (1)**
12:10
**known (1)**
19:13
**knows (7)**
31:21;32:4;33:3;
50:25;52:22;54:7;
59:11

**L**

**label (1)**
39:7
**labeled (1)**
50:5
**lack (2)**
27:6;28:10
**language (1)**
39:20
**lap (1)**
32:9
**lapsed (1)**
27:19
**largely (1)**
6:7
**last (4)**
9:11;29:13;32:9;
55:25
**late (1)**
41:3
**later (4)**
6:4;14:1;17:18;
49:18
**law (11)**
12:8,15;24:14,20;
29:14;43:18;45:22;
55:5;59:15,17,19
**lawyer (11)**
12:10;41:2;42:10;
43:1;44:5,21;45:1,19;
46:25;52:21;55:19

**lawyers (5)**
7:12;43:4;47:4;
50:11;58:2
**lawyer's (1)**
12:12
**lead (1)**
21:21
**least (4)**
6:18;12:10;22:15;
32:23;39:2;49:19
**leave (1)**
23:14
**leeway (1)**
42:12
**left (2)**
11:18;33:7
**legal (7)**
41:21;42:10;44:9;
45:1,7,20;56:3
**legs (1)**
48:5
**lengthy (1)**
48:19
**less (3)**
6:17;7:4;15:2
**liable (1)**
44:22
**Liberal (1)**
52:23
**lie (1)**
41:9
**life (2)**
50:22;55:16
**light (3)**
13:3;29:23;33:25
**likely (6)**
14:5,10;16:24;
19:14;31:10;32:23
**limit (1)**
53:13
**limitations (3)**
12:11;43:11;52:24
**line (2)**
32:9;45:16
**Liou (41)**
3:9,11,12;21:20,23,
24;22:6,8,9,17,19,23;
23:1;24:3,5,7;25:18,
24;26:2,4,6,8,18,22,
25;27:21;29:19;
30:23;34:25;37:25;
39:3,13,14;41:2,4;
42:9;45:21;49:25;
55:10;56:13;60:1
**Liou's (1)**
39:18
**list (3)**
4:20,21;17:19
**litany (2)**
27:7;50:21
**litigator (1)**
44:20
**little (4)**

eScribers, LLC

7:24;18:10;19:8;
30:10
**LLC (1)**
3:24
**logged (1)**
18:10
**logically (1)**
11:22
**Loiu (1)**
52:13
**long (4)**
22:10;27:19;49:25;
59:7
**look (3)**
21:6;23:10;44:22
**loot (1)**
40:9
**loses (1)**
17:24
**loss (1)**
52:5
**losses (1)**
51:24
**lot (7)**
23:19;31:8;35:8;
41:24;47:10;49:23;
50:11
**lots (3)**
49:10;50:15,15
**lot's (1)**
38:12
**low (2)**
15:3;48:25

**M**

**makes (7)**
9:12;32:20;35:15;
54:1;55:20;58:9;59:6
**making (1)**
50:4
**management (1)**
42:2
**managers (1)**
9:25
**Manges (2)**
3:12;21:24
**manipulation (3)**
16:3,18;18:5
**manufacture (1)**
41:11
**many (8)**
8:17;12:7;27:12;
46:24,25;47:12;
49:22;56:20
**MARCH (1)**
3:1
**market (2)**
15:2;33:10
**mass (1)**
49:6
**massive (3)**
7:9;8:18;47:13

**match (1)**
5:19
**material (1)**
20:2
**math (1)**
33:24
**matter (7)**
3:5;17:19;18:23;
48:18,23;59:19,23
**matters (3)**
50:21;58:19,20
**maximize (2)**
16:7;33:9
**may (9)**
7:1,1;12:18;49:11;
52:2,2,13;56:16;
58:13
**maybe (15)**
11:4;32:18,18,21,
22;34:24;37:12;
42:21;44:18,19;
50:12,12;51:8;54:9;
55:22
**McNutt (83)**
3:25;4:1,1,5,10,18;
5:7,11,22;6:21;7:3,8,
22;8:3,6,15;9:5,8,12;
10:4,8,9,14,17;11:3,
17,20,25;12:4;14:11;
15:23;20:20,23;
25:16;39:2,14,17,23;
40:5,8,15,20,22,24;
41:4,6,9,10,11,12,13,
14,15,18,19,21,22,23;
42:11,16,19;43:6,14,
17,19;46:7,9,16,18;
47:8,23,25;48:14,15,
17;55:2,19,24;57:5,8;
58:10;59:6;60:3
**McNutt's (1)**
53:8
**mean (13)**
5:17;6:3,24,25;
13:2;17:18;22:9;
25:14;31:7;37:15;
52:23;53:11,21
**means (1)**
17:21
**mediated (1)**
15:12
**meet (1)**
46:20
**member (1)**
20:4
**mend (1)**
52:15
**mentioned (5)**
20:23;26:9;30:23;
31:10;45:21
**mentions (1)**
52:25
**merely (1)**
21:10

**merits (1)**
21:10
**mess (1)**
56:7
**method (1)**
20:9
**me-too (4)**
17:20,20,20,22
**mic (2)**
18:13,15
**microphone's (1)**
18:24
**might (7)**
7:16;14:25;34:2;
40:16;48:22,25;55:5
**million (5)**
33:4,4,6,14,18
**mind (2)**
8:5;11:15
**minute (8)**
5:19;6:14;7:20;
10:15;30:8;34:24;
43:16;47:4
**minutes (17)**
4:19;5:12,13,14,15;
11:18;13:11;18:14;
19:2;22:2,3,20;29:21;
39:2;46:16;48:6,12
**mirror (1)**
20:19
**mispronouncing (1)**
51:8
**misrepresentation (3)**
43:24;51:12;54:9
**misrepresentations (6)**
8:22;19:12;30:12;
34:14;42:14;51:14
**misrepresents (1)**
9:16
**missing (1)**
40:4
**mix (1)**
8:5
**modify (3)**
29:16;39:11;40:25
**Molton (32)**
3:10,14,17,17;7:6,
6;14:12;21:22;29:20,
22,24;31:3,7,15,18,
24;32:17,25;33:3,12,
15,18,21,24;34:8,9,
11,21;43:8;48:24;
53:18;60:5
**moment (2)**
43:16;49:3
**monetization (1)**
34:4
**money (4)**
6:12;21:6;56:16,17
**monitor (3)**
8:21;9:13;51:6
**Montali (1)**
3:5

**merits (1)** ... (col)
**more (11)**
6:12;11:24;17:3;
32:19;42:23;46:16;
47:6,19;49:2;50:25;
58:9
**morning (15)**
3:9,11,14,21,22;4:1,
10,12;5:5,6,11;13:13;
18:20;20:16;29:24
**most (4)**
10:23;34:14;49:24;
50:11
**mostly (2)**
11:3;27:2
**motion (54)**
7:10,14;10:7,21;
11:5,10,11,12;12:1,
16,18,25;13:5;15:15;
16:1,12;17:11,21,22,
23,24;19:10,21;
21:16;22:5;23:5,15;
24:1,1;27:18;28:7,21;
29:1;35:2,4;38:1,2;
39:5;40:1;44:11,12,
17;45:6,17;46:14;
48:20;49:21;51:2;
52:16;56:5;58:7;59:9,
14,22
**motions (2)**
20:21;28:6
**move (1)**
10:12
**moving (2)**
17:2;51:15
**much (6)**
21:17;31:12;33:14;
34:21;39:1;51:17
**multiple (2)**
25:1;27:5
**Musk (1)**
32:21
**must (1)**
51:19
**myriad (1)**
24:17
**myself (1)**
54:24
**mystery (1)**
7:10

**N**

**name (2)**
4:21;5:3
**nearly (1)**
27:23
**need (4)**
18:4;22:12;52:7;
59:24
**needed (1)**
34:1
**needs (1)**
47:15

**neglect (3)**
28:9,12;29:10
**negotiate (1)**
10:20
**negotiation (2)**
15:12;56:14
**negotiations (3)**
24:25;27:3;58:4
**neither (1)**
50:14
**Net (1)**
33:15
**nevertheless (1)**
55:8
**new (15)**
16:18;24:11;25:12;
27:22,23;28:5,25;
29:10;30:11,17;44:6;
52:25;57:6,6,9
**news (1)**
49:20
**newspaper (1)**
7:25
**next (3)**
37:11;42:22;44:8
**ninety (1)**
46:22
**ninety-five (1)**
31:20
**Nobody (1)**
34:5
**nondisclosures (1)**
42:14
**none (1)**
53:25
**nonfire (2)**
36:20;55:7
**noon (1)**
48:2
**nor (2)**
49:13;50:14
**normal (1)**
41:21
**Northern (1)**
7:18
**note (1)**
28:17
**noted (1)**
28:12
**notes (1)**
48:21
**notified (1)**
5:17
**notion (1)**
54:1
**notwithstanding (1)**
30:10;39:7;45:20
**number (9)**
4:25;31:24;32:19;
33:19;34:2;36:2;50:2,
4;51:2
**numbers (1)**
49:1

Case: 19-30088    Doc# 13645    Filed: 03/27/23    Entered: 03/27/23 05:10:19    Page 69
of 74

**numerous (1)**
30:4
**numerously (1)**
50:22

**O**

**objection (1)**
43:22
**objections (1)**
6:4
**objectors (1)**
21:18
**obligation (1)**
16:7
**obligations (1)**
33:9
**obtained (2)**
27:15;55:12
**obtaining (2)**
8:23;27:13
**obvious (1)**
57:11
**occurred (3)**
24:12;34:14,15
**off (4)**
4:19;38:3;48:4,7
**offer (2)**
32:20;37:21
**offered (1)**
27:10
**office (1)**
43:8
**officer (2)**
10:19;13:4
**officers (5)**
7:23;8:6,13;57:6,8
**often (1)**
8:22
**Once (2)**
10:8;50:18
**one (22)**
7:12;8:14;12:10;
18:15;21:4,18;24:13;
25:8;29:13;30:2,4;
32:6;39:3;47:15;49:4,
11;53:1,19;54:14;
55:24;57:9;58:9
**ones (1)**
50:15
**ongoing (3)**
7:16;8:22;50:16
**only (10)**
14:2,10;16:4;20:6;
33:19;49:11,25;
56:11;58:16,24
**oOo- (1)**
3:2
**open (1)**
24:10
**opened (1)**
39:9
**operation (1)**

40:10
**opinion (1)**
48:19
**opportunity (1)**
40:9
**opposed (2)**
10:22;35:6
**opposing (3)**
10:25;23:4;35:4
**opposition (1)**
35:5
**oral (1)**
47:21
**orally (1)**
48:19
**order (17)**
3:3;12:2;24:16;
26:20;27:14,14,16,17,
25;39:11;53:15;55:9,
10,11;59:3,3,21
**orders (1)**
24:16
**original (3)**
20:20;25:7,9
**Os (1)**
9:18
**others (7)**
8:2;12:20;13:8;
34:15;49:12,15;50:6
**otherwise (4)**
12:5;18:16;28:14;
47:7
**ought (1)**
43:3
**out (17)**
6:7,8;10:11;15:12;
20:3;21:13;23:7;30:2;
31:15;36:11;37:11;
38:18;40:1,4;42:22;
54:11;59:19
**outcome (3)**
28:23;36:25;39:5,9;
40:14;42:3
**outrageous (1)**
42:2
**outset (2)**
12:6;50:1
**outside (3)**
24:24;53:16;56:22
**over (20)**
12:20,22,22;14:3;
20:2;26:14;28:22;
32:18;39:10;53:3,3;
56:6,6;58:21,21,21,
22,22,25,25
**overruled (1)**
27:12
**overseeing (1)**
56:20
**own (4)**
33:24;48:22;51:14,
22
**owns (2)**

54:7,7

**P**

**pace (1)**
4:5
**Pachulski (1)**
3:23
**paid (7)**
30:7;35:21;36:6;
37:6,7,10;49:7
**paints (1)**
50:17
**papers (7)**
13:20;17:2;38:13;
49:23;50:7,20;54:2
**Parada (1)**
4:7
**paradox (1)**
56:9
**paragraph (1)**
23:10
**parallels (1)**
8:12
**parrot (1)**
28:2
**part (3)**
15:11,11;58:1
**participate (1)**
15:13
**participated (1)**
27:2
**parties (8)**
11:4;12:13;23:13,
15;24:9;25:1;27:4;
35:22
**party (2)**
51:5,15
**pass (1)**
34:12
**path (1)**
6:8
**pay (1)**
37:13
**payment (3)**
32:2,11,13
**payments (2)**
14:3;34:3
**pending (2)**
10:21;57:10
**people (7)**
5:12;6:8,10;9:25;
17:19;47:12;50:2;
51:15;57:3;59:9
**per (1)**
19:3
**percent (19)**
13:23;14:2,6,8,14;
21:4,7;31:10,20;32:1,
3,6,16;45:3;46:24;
48:25;49:3,7,18
**percentage (4)**
32:2,11,13;49:5

**perhaps (5)**
21:13;34:25;50:6;
56:11;59:14
**permission (1)**
7:11
**person (1)**
45:15
**personal (3)**
48:5,23;51:22
**petition (1)**
50:9
**PG&E (56)**
3:5,12,19;6:12;
7:15,17,21;8:2,7,17,
17,18,21;9:15,20;
10:19;11:4;12:1;
14:25;16:5,11,13;
19:12;21:25;23:15;
24:12,23;27:8;28:17,
25;29:11;30:13,13;
34:14;40:4;42:2;
43:22;45:20;46:8;
47:12;50:5;51:4,10,
15;53:1,5;54:8;55:3,
17;56:15;57:4,10,11,
24;58:13,13
**PG&E's (2)**
52:11;53:16
**phone (1)**
23:23
**phonetic (3)**
20:17;51:8,8
**pick (1)**
42:3
**piece (2)**
49:20;50:10
**pieces (2)**
6:21,22
**place (1)**
7:15
**placeholder (1)**
6:11
**plaintiffs' (2)**
20:25;21:3
**plaintiff's (1)**
44:6
**plan (34)**
13:22;19:13,15,24;
24:16,17,24;25:2;
26:15;27:24;29:4,6,
18;31:25;34:15;36:5,
12;39:5,12,19;40:25,
25,25;41:3,5;43:23;
50:19;51:13;53:11;
55:9;56:10,23;57:9,
11
**played (1)**
59:19
**plays (1)**
36:11
**pleading (2)**
30:3,9
**pleadings (5)**

30:3,16;34:16;35:3;
52:23
**Please (3)**
41:24;43:9,25
**plenty (1)**
27:10
**POCs (1)**
30:15
**point (14)**
14:22;15:21;17:9;
24:8;25:23;29:13;
30:2,8;35:4,16;37:25;
52:7;54:20;57:2
**pointed (1)**
54:11
**pointing (1)**
51:3
**points (1)**
15:14
**polite (1)**
46:24
**portion (1)**
36:8
**posing (1)**
26:19
**position (3)**
36:1,23;43:21
**possible (2)**
7:13;20:9
**possibly (1)**
19:14
**post-existing (1)**
57:20
**post-issue (1)**
50:18
**post-petition (1)**
34:15;38:9
**pot (2)**
36:15,18
**potential (2)**
27:7;28:10
**potentially (2)**
37:11,14
**power (1)**
13:17
**practical (1)**
56:15
**practice (2)**
52:22;53:3
**pre- (2)**
50:8,18
**precise (1)**
5:19
**pre-confirmation (1)**
51:12
**preexisting (3)**
17:4;57:20,20
**preference (1)**
6:9
**prejudice (3)**
17:13;28:16;29:2
**prejudiced (3)**
45:6,11,13

Case: 19-30088     Doc# 13645     Filed: 03/27/23     Entered: 03/27/23 05:10:19     Page 70 of 74

prejudicial (1)
31:1
premised (1)
23:5
preparing (1)
5:18
pre-petition (5)
24:12;38:8,10;
53:13,14
prepositions (2)
41:7;42:9
presented (1)
29:15
preserve (2)
58:23,23
presiding (1)
3:5
presumably (1)
41:19
pretend (1)
49:17
pretty (5)
7:9;8:4;19:10;49:5;
50:2
prevented (1)
19:14
previously (1)
28:18
prior (4)
19:7,12;20:25;
28:12
priority (2)
6:10;58:3
pro (1)
12:12
pro- (1)
32:1
probably (5)
6:16;16:21;21:1;
24:1;50:24
procedures (2)
19:21;24:18
process (9)
6:1,2;21:2,8;24:25;
27:2,11,13;50:19
product (2)
15:12;56:14
promised (1)
15:2
promoted (1)
6:15
promptly (1)
36:9
proofs (1)
52:9
proper (4)
19:23;24:18;25:4;
55:5
properly (1)
27:15
proposal (1)
11:6
proposals (1)

10:12
propping (1)
8:24
proud (1)
32:6
provided (4)
27:9;28:9,14;29:15
provisions (2)
24:17;40:25
prudent (1)
33:8
publicly (1)
31:6
published (1)
8:20
pull (2)
22:14;27:4
purpose (4)
7:13;8:22;29:3,4
purposes (3)
8:23,24;56:15
pursuant (1)
37:21
pursue (1)
24:11
push (1)
27:3
put (10)
5:7;16:12;26:11;
30:20;33:7;34:22;
38:3;48:21;49:22;
56:16
Putting (2)
27:16;45:18

Q

quickly (1)
48:22
quoting (1)
14:12

R

raised (4)
27:12;50:21;58:15,
21
raises (1)
55:3
ramification (1)
17:16
rant (1)
42:7
ranting (1)
48:1
rarely (1)
11:23
rarity (1)
53:20
rata (1)
32:2
rate (1)
32:5

ratepayer (2)
54:18,19
rather (3)
26:11;36:9;48:21
rave (1)
42:8
raving (1)
48:1
reach (1)
5:23
reached (1)
31:24
reaching (1)
38:12
read (6)
5:9;7:25;30:9;
34:16;48:22;49:23
ready (1)
28:24
realistic (1)
49:2
realistically (1)
32:23
realize (1)
4:4
really (7)
19:9,9;23:3;38:11;
39:8;53:20,21
reason (4)
14:24;28:9;49:21;
57:11
reasons (6)
7:9;11:11;29:5;
45:10;49:22;59:22
rebut (1)
22:4
rebuttal (4)
5:15;22:3,5,14
received (4)
14:2,2;35:10;37:21
recent (1)
28:6
recently (1)
9:14
Recess (1)
48:13
recite (2)
50:21;59:21
recited (1)
49:1
recognize (1)
55:13
record (11)
5:3;6:25;17:20;
21:23;26:25;35:2;
38:11;41:11;47:20;
57:19;59:22
recover (1)
28:11
recovers (1)
36:8
recovery (2)
29:8;49:18

red (1)
13:3
redress (1)
20:10
reemphasize (1)
29:13
reference (2)
9:6;58:9
refers (1)
50:6
reflects (1)
57:19
regarding (2)
51:5,6
rehabilitation (1)
8:19
rehashing (1)
24:7
reiterate (1)
50:20
reject (2)
58:17;59:4
rejected (1)
58:22
relate (2)
30:13;34:18
related (2)
35:17;42:14
relates (1)
16:3
relating (1)
24:11
relation (1)
57:14
relatively (1)
49:8
relays (1)
34:13
relevant (1)
52:2
remaining (1)
33:18
remains (1)
32:6
remedies (2)
41:21;44:8
remedy (11)
42:13,20,23;43:2,3,
5,12;54:10;56:1,2;
57:2
remember (1)
31:11
remind (2)
57:5;59:5
reminded (2)
56:13;57:9
reorganized (3)
28:16,20;30:24
repeat (1)
33:13
repeating (1)
54:24
rephrase (1)

10:17
reply (3)
30:10;40:1;58:16
report (2)
51:5,9
reporting (1)
6:22
represent (5)
4:25;13:20;19:7;
20:17;44:5
representation (2)
19:18;47:19
representations (1)
47:20
represented (2)
7:12;49:16
representing (1)
20:3
reputable (1)
47:13
request (1)
20:11
requires (1)
28:3
research (1)
44:12
reserve (6)
5:14;6:4;13:8;22:3;
30:20;48:8
reserved (2)
16:14;23:16
resident (1)
54:14,16
resolves (1)
36:1
respect (2)
23:16;30:24
respectable (1)
44:25
respectfully (1)
20:11
respond (2)
43:21,21
respondent (2)
11:1;22:5
response (2)
12:2;22:13
restate (1)
14:25
restates (1)
53:1
result (3)
6:13;49:17;56:9
results (1)
48:24
retain (1)
10:2,2
revealed (1)
6:13
reveals (3)
16:11,25;44:7
reverse (1)
45:23

Case: 19-30088     Doc# 13645     Filed: 03/27/23     Entered: 03/27/23 05:10:19     Page 71
of 74

**review (2)**
58:21;59:1
**reviewed (1)**
51:22
**revisit (1)**
26:15
**revocation (2)**
27:17;42:6
**revoke (3)**
26:20;29:16;41:5
**rhetorical (1)**
45:18
**rhetorically (1)**
26:11
**right (54)**
3:13;20:4;9,13;5:8,
16;7:1,8;11:22,24;
12:1;13:5;14:16;
15:16,16;19:16;
20:14;21:6;22:22;
24:2,4;25:18,20;26:2,
4,6,16,16,21;30:20;
31:23;35:14;36:3,11,
12,15,16,17;37:1,1,9;
38:19,20,22,24;39:3,
12,13;41:2;42:23;
44:19;45:21;48:16;
56:8
**rights (2)**
11:7;23:16
**rise (1)**
52:12
**risen (2)**
15:3,4
**room (4)**
38:17,19,21;47:12
**Rosa (1)**
54:16
**Rudnick (2)**
3:18;29:25
**rule (4)**
27:17;35:12;44:17;
47:6
**ruled (1)**
38:5
**rules (2)**
44:10;47:5
**ruling (4)**
17:16;48:12;58:24,
25
**rulings (1)**
17:12
**run (1)**
31:18

**S**

**same (9)**
9:10;12:18;15:21;
16:13;36:13,13,19,22;
59:7
**SAN (1)**
3:1

**Santa (1)**
54:16
**saw (1)**
7:25
**saying (12)**
11:9;14:12;43:23;
44:3;45:5;46:12;
50:23;51:16;52:16;
53:5;57:18;59:8
**schedule (1)**
4:23
**scheduling (1)**
13:14
**Scott (3)**
4:1;10:3;20:20
**screen (1)**
18:13
**se (1)**
12:12
**second (6)**
17:12;21:19;23:21;
24:8;31:8;54:13
**seconds (1)**
46:22
**secret (1)**
35:9
**Section (1)**
42:5
**Securities (11)**
3:24;8:25;10:1;
35:6;36:5;37:4,17,21;
50:13,16;56:19
**seek (5)**
20:5;26:14;27:16;
28:5;55:11
**seeking (2)**
26:20;27:23
**seem (2)**
32:23;43:2
**seemed (1)**
30:10
**seems (8)**
17:22;23:22;32:14;
37:25;44:25;45:21;
49:6;55:20
**segment (1)**
21:18
**sense (2)**
9:21;25:15
**separate (1)**
37:1
**serious (1)**
19:12
**session (1)**
3:4
**set (8)**
10:10;11:10,21;
21:13;39:5;40:24;
42:3;55:11
**settlement (1)**
9:20
**settlements (1)**
54:14

**seventy (8)**
14:8,10,13;31:10;
32:18,19;48:25;49:2
**seventy-cent (1)**
6:17,17;7:5
**several (1)**
51:4
**share (1)**
31:11
**shareholder (2)**
54:10,12
**shares (6)**
33:4,7,9,14;34:3;
36:3
**short (1)**
59:21
**shortfall (1)**
7:9
**show (2)**
13:8;55:1
**shows (2)**
17:20;45:9
**shred (2)**
52:8;53:12
**sic (1)**
10:16
**side (2)**
22:13;47:5
**significant (1)**
17:14
**significantly (1)**
32:19
**similar (3)**
7:18;27:6;54:1
**simple (3)**
6:5;19:10;24:14
**simply (9)**
38:2,7;50:23;52:14;
55:14;57:14;58:4,5;
59:17
**single (1)**
24:13
**situation (1)**
43:15
**six (3)**
5:13,14;39:2
**sixty (8)**
6:6;10:11,16,21;
14:2;32:2;49:7,17
**small (1)**
52:1
**so-called (2)**
54:22;58:4
**sold (2)**
13:22;33:4
**solicitation (1)**
31:25
**solve (1)**
42:21
**somebody (2)**
32:20;42:3
**somehow (1)**
57:16

**someone (4)**
4:14,20;18:13;
26:14
**sorry (2)**
5:2;48:8
**sort (3)**
17:21;50:14;51:11
**sorts (3)**
7:14;56:23;58:14
**sought (1)**
23:14
**sounds (1)**
32:20
**source (1)**
14:12
**sources (2)**
47:13;51:5
**speak (1)**
38:11
**speaking (2)**
7:7;11:5
**special (2)**
35:10;37:16
**specially (3)**
4:2;12:5;23:20
**specifically (3)**
9:7;51:2;56:5
**spend (1)**
27:21
**spite (1)**
19:20
**spokesperson (1)**
39:4
**stake (1)**
30:20
**standards (2)**
47:9,10
**Stang (1)**
3:23
**start (14)**
3:6,7,9;4:19;5:20,
25;6:11;16:2;21:2,8;
26:14;39:10,11;58:2
**started (1)**
20:3
**starts (1)**
47:16
**state (4)**
5:2;51:6;52:13;
53:3;56:24;59:19
**stated (1)**
59:22
**statement (6)**
8:1;32:24;33:1;
35:5;43:23;53:8
**statements (5)**
8:20;9:2,2;38:8;
47:21
**States (1)**
41:16
**statute (5)**
12:11;24:20;29:14;
43:11;52:24

**statutes (1)**
42:11
**stayed (1)**
15:3
**step (1)**
12:21
**Steven (3)**
18:12,18;19:6
**stick (1)**
5:15
**still (4)**
17:9;34:4,4;50:16
**stipulation (5)**
23:7,9,11,11,24
**stock (15)**
15:1,3,11,14;16:3,
18;18:5;32:21,22;
36:6;50:10;54:5,7,8,9
**stocks (1)**
35:16
**stop (1)**
13:4
**stopping (2)**
11:9;12:2
**strategic (1)**
7:13
**stretch (2)**
32:7;48:4
**strikes (1)**
42:19
**strong (1)**
31:9
**subbing (1)**
13:15
**subject (3)**
36:4;50:15;59:3
**subjected (1)**
52:1
**submit (1)**
24:19
**subordinate (1)**
35:7
**subordinated (3)**
35:15;36:23;37:5
**subordination (1)**
58:3
**subrogation (2)**
35:21,22
**substantial (1)**
56:17
**substantiate (1)**
26:25
**substantiation (1)**
58:16
**sue (3)**
43:9;44:21,21
**suffered (3)**
20:10;52:4,10
**Suffice (1)**
30:22
**suggest (4)**
31:10;44:10;55:2,
15

Case: 19-30088    Doc# 13645    Filed: 03/27/23    Entered: 03/27/23 05:10:19
of 74

**suggestion (1)**
59:8
**suggestions (1)**
54:3
**suit (1)**
8:1
**sum (1)**
56:17
**summary (1)**
33:23
**supplement (13)**
16:6;17:4,11;23:12,
17,24;24:22;36:5;
38:1,2,5,7;54:23
**supplemental (4)**
12:2;18:6;21:12,14
**supplements (3)**
20:22;21:11;37:20
**support (10)**
11:5;24:14;28:9,11,
14;29:9,15;56:4;58:7,
12
**supported (4)**
10:7,22;55:5;58:8
**supports (2)**
24:20;27:14
**suppose (1)**
40:11
**supposed (1)**
4:4
**Sure (11)**
3:11;16:25;17:6,8;
21:1,4;25:19;45:14;
47:18;51:23;55:4
**surely (1)**
7:13
**sweat (1)**
29:7
**systemic (1)**
8:22

**T**

**talk (3)**
6:8;11:3;38:25
**talked (1)**
29:12
**target (2)**
15:5;31:11
**team (1)**
33:7
**tearing (1)**
40:1
**tears (1)**
29:7
**telling (2)**
41:17;46:6
**tells (1)**
14:13
**ten (3)**
15:14;48:6,12
**tender (1)**
32:20

**ten-minute (2)**
48:3,11
**tens (1)**
19:18
**terms (7)**
33:8,25;44:8,8;
50:25;51:11;58:3
**terribly (1)**
20:7
**that'll (3)**
17:17;32:15;45:22
**theories (1)**
54:3
**theory (12)**
12:21;44:22,24;
45:19;53:25;54:18,
22;55:21,22;56:3;
57:14;59:10
**therefore (6)**
10:8,9;36:8;53:6;
57:14;58:14
**thinking (2)**
23:23;55:19
**third (1)**
54:14
**third- (1)**
51:4
**thirteen (1)**
15:10
**though (4)**
43:1;44:20;57:18;
59:14
**thought (2)**
49:23;54:8
**thoughtfully (1)**
27:11
**thousands (7)**
19:19;37:4;42:24;
53:2;55:15;56:20,21
**three (6)**
8:12;14:1;23:2;
27:23;49:18;54:2
**threshold (1)**
12:20
**throwaway (1)**
58:11
**throwing (1)**
58:3
**ticket (1)**
13:3
**tight (1)**
21:15
**timeliness (2)**
23:12;44:8
**timely (19)**
10:10;16:13;17:2,
12;23:17;27:22;28:1,
5;37:20;38:2,5;41:1;
45:10;46:15;52:18,
19;57:22,23;58:1
**time-out (1)**
23:24
**time's (1)**

18:16
**timetable (1)**
42:13
**timing (2)**
24:18;49:19
**today (15)**
4:23;5:22,25;17:12;
20:21;24:3,13;29:6,
15;41:2;46:25;48:1;
49:16,20;51:2
**today's (4)**
12:16;24:10;48:2;
59:9
**together (3)**
48:21;49:23;50:3
**told (5)**
11:23;14:4;20:4;
30:22;32:5
**tolling (4)**
41:23;58:10,12,15
**Tom (2)**
4:23;13:14
**tomorrow (1)**
36:2
**took (1)**
7:15
**Tort (2)**
20:4;49:6
**Tosdal (2)**
4:23;13:14
**Tosdale (1)**
13:11
**Tosdale's (1)**
13:12
**totally (1)**
39:15
**tracking (1)**
50:12
**trading (1)**
9:25
**transferred (1)**
15:1
**transparency (1)**
27:5
**trap (2)**
22:10,14
**treat (3)**
12:3;40:7;57:16
**treated (6)**
23:20;28:3;40:3;
52:2;56:18;59:6
**treatment (3)**
35:10;37:16;57:17
**tremendous (3)**
25:1;29:2;50:24
**tried (1)**
28:4
**tries (1)**
29:7
**Trostle (4)**
4:14,15,25;13:20
**truly (2)**
25:12;27:22

**trust (31)**
6:15,22;7:8;10:23;
11:4;15:1;22:1;25:9,
12,21,22;29:8,9;30:1,
6,7,18,25,25;31:19;
32:3,6,8;33:15;34:1,4,
18;35:22;40:10,19;
43:22
**Trustee (9)**
3:18;6:25;7:3;14:4;
20:5;21:5;29:25;54:7,
8
**Trusts (1)**
3:19
**trust's (1)**
32:1
**truth (2)**
38:14;41:17
**try (4)**
5:15;6:8;20:5;48:1
**trying (4)**
19:9;20:24;25:21;
30:17
**Tubbs (2)**
51:24;54:17
**turn (6)**
14:13;18:15;19:1;
25:15;48:4,6
**turned (1)**
59:8
**Turning (2)**
32:9;47:21
**twenty (2)**
5:12;56:22
**twenty-one (1)**
56:22
**two (17)**
8:5;13:11;16:9;
18:14;19:2;22:3,20,
21,23;24:25;27:24;
28:1;29:6;34:24;
46:16;50:1;55:7
**type (1)**
17:23

**U**

**unable (2)**
4:23;28:14
**unaware (1)**
28:13
**under (7)**
24:20;26:15;27:17;
36:5,12;39:19;43:17
**underbrush (1)**
23:8
**undermine (2)**
25:22;26:12
**undermines (1)**
39:12
**Understood (4)**
14:18;26:24,24;
27:3

**trust (31)** ... (column continues)

**underway (1)**
4:17
**undo (1)**
29:16
**undoes (2)**
29:3,4
**unfair (1)**
33:1
**unfortunately (1)**
53:7
**unison (1)**
21:1
**United (1)**
41:16
**universe (1)**
56:11
**unless (2)**
32:20;57:23
**unlike (1)**
52:15
**unlikely (1)**
32:15
**unprecedented (1)**
49:9
**unrelated (1)**
50:10
**unsecured (1)**
36:19
**untimely (1)**
6:5
**up (15)**
8:25;13:8,25;15:14;
18:9;22:11,18;24:8;
34:1;46:2,4,17;48:25;
50:18;56:7
**upon (7)**
36:23;49:1;50:9;
52:20;54:4;59:2,17
**use (4)**
5:25;6:11;22:18;
23:1
**used (2)**
38:4;41:7
**uses (1)**
51:11

**V**

**vacate (1)**
41:3
**valid (1)**
23:18
**validates (1)**
6:25
**value (10)**
8:25;15:2;32:23;
33:9,14,15;34:4,5;
50:9;54:4
**valued (1)**
31:21
**values (1)**
54:9
**various (3)**

Case: 19-30088    Doc# 13645    Filed: 03/27/23    Entered: 03/27/23 05:10:19    Page 73
of 74

6:13,14;28:22
**vehicle (1)**
24:21
**versus (1)**
31:11
**vetted (1)**
59:2
**viable (1)**
46:15
**Victim (16)**
3:19;22:1;23:20;
25:9,12;29:8,9;30:1,6,
7,25;34:18;37:8;
43:10;52:10;54:4
**victims (34)**
5:1;9:22;10:3,5,23;
11:7;12:17;13:1,21,
23;14:5;15:1;19:14,
16,19,24;20:18;
21:13;26:7;31:1,20;
32:4;35:6,7;36:10;
37:12;38:13,15;
42:24;44:5;49:5,15,
16,16
**vindicate (1)**
11:7
**vote (1)**
19:12
**voting (1)**
19:15

**W**

**Wagner (10)**
4:13;18:10,11,17;
20:15,16,17;26:10;
42:1;59:25
**wait (5)**
7:20,24;10:15;
35:23;48:14
**waiting (3)**
4:7;28:24;31:3
**wants (12)**
6:2,10,11;9:19;
12:8,14;18:14;30:14;
51:17;54:23;55:25,25
**waste (4)**
42:23;43:3,12;59:4
**wasting (1)**
59:7
**watching (1)**
28:23
**way (20)**
24:14;33:7;35:5;
36:11;40:3;44:19;
47:15;52:24;55:4,18,
18,23;56:2;57:1,17;
59:8,11,11,13,18
**ways (1)**
6:14
**weighed (2)**
10:7;13:10
**Weil (2)**

3:12;21:24
**well-intended (1)**
59:14
**weren't (1)**
38:17
**What's (9)**
11:9;16:22;29:23;
33:25;40:14,23;41:8;
42:9;51:14
**whole (5)**
13:24,24;26:15;
28:20;34:25
**who's (2)**
8:16;29:20
**wildfire (8)**
6:18;9:22;10:3,5;
11:7;39:19;46:20;
47:9
**wildfires (1)**
24:12
**wings (1)**
28:24
**wins (1)**
17:23
**wish (4)**
21:10,11;49:14,15
**wishes (3)**
52:19;53:25;58:23
**wishing (1)**
38:18
**withdraw (2)**
11:13,14
**withdraws (1)**
11:15
**within (1)**
27:18
**without (4)**
51:23;54:15;58:16;
59:15
**won (1)**
53:1
**word (1)**
41:6
**words (2)**
8:17;38:16
**work (3)**
19:10;30:5;44:19
**worse (1)**
13:15
**worth (4)**
23:8;24:7;35:3;
37:24
**wrap (1)**
46:17
**wrestling (1)**
5:19
**write (1)**
21:19
**writing (2)**
6:24;14:5
**written (3)**
8:16;47:21;48:19
**wrong (6)**

7:1;13:5;39:13,15;
41:2,6
**wrongdoing (2)**
7:14;26:13
**wrongdoings (1)**
50:5

**Y**

**Yanni (4)**
3:18;29:25;32:12;
33:7
**years (8)**
8:12;14:1;24:25;
27:23,24;29:6;43:10;
49:18
**yesterday (1)**
7:17
**Youth (1)**
5:9

**Z**

**Ziehl (1)**
3:23

**1**

**1,000 (1)**
13:20
**1,000-plus (1)**
16:6
**11 (4)**
27:2;29:4,4,18
**1140 (1)**
57:12
**1141 (1)**
42:5
**118-page (2)**
7:17;8:6
**13.5 (1)**
31:22
**15.95 (1)**
31:21
**180 (1)**
33:5
**188 (2)**
33:6,18

**2**

**2,000 (1)**
28:22
**2019 (2)**
9:2,4
**2023 (1)**
3:1
**24 (1)**
3:1
**290 (2)**
33:4,14
**29th (2)**
9:2,3

**4**

**4 (1)**
23:10
**400 (1)**
19:7
**478 (1)**
33:3

**5**

**53,000 (1)**
32:4

**6**

**6.75 (1)**
34:1
**60b (1)**
27:17
**660 (1)**
20:17

**7**

**7th (2)**
37:16;38:25

**8**

**8.66 (1)**
32:3

**9**

**9:00 (1)**
3:1

Case: 19-30088    Doc# 13645    Filed: 03/27/23    Entered: 03/27/23 05:10:19    Page 74 of 74