| | |
|---|---|
| LAWRENCE A. JACOBSON, SBN 057393<br>SEAN M. JACOBSON, SBN 227241<br>COHEN AND JACOBSON, LLP<br>66 Bovet Road, Suite 285<br>San Mateo, CA 94402<br>Telephone: (650) 261-6280<br>*laj@cohenandjacobson.com*<br><br>Attorneys for Amir Shahmirza<br>(Agent for Komir, Inc.) and Komir, Inc. | |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**RESPONSE TO PG&E'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT OF ISSUES IN REORGANIZED DEBTORS OBJECTION TO CLAIM #2090 AND CLAIMANT'S RESPONSE THERETO**<br><br>**[Reply to PG&E Opposition to Motion for Partial Summary Judgment by Komir, Inc., Filed Separately]**<br><br>**Date: April 11, 2023**<br>**Time: 10:00 a.m.**<br>**Place: (Tele/Videoconference Appearances Only)**<br>**United States Bankruptcy Court**<br>**Courtroom 17, 16th Floor**<br>**San Francisco, CA 94102** |

**RESPONSE TO PG&E'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT**    1

# Table of Contents

I. THE COMPETING MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. Claimant's Motion For Determination of Extinguishment of Easements by Condemnation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B. PG&E's "Counter-Motion for Partial Summary Judgment" is Presented in its Opposition to Claimant's Motion for Partial Summary Judgment. . . . . . . . . . . 1

II. THE RELEVANT OPERATIVE FACTS COMPEL A DETERMINATION THAT . 3

    (1) PG&E CANNOT, UNDER ANY THEORY, OBTAIN ANY "PRESCRIPTIVE EASEMENT" FOR ITS CLAIM OF EXCLUSIVE USE OF THE AREA OCCUPIED BY ITS TRANSMISSION LINES DUE TO NON-PAYMENT OF ITS REAL PROPERTY TAXES AND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    (2) PG&E FAILED TO ESTABLISH THE ELEMENTS OF PRESCRIPTIVE EASEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. Summary of Legal Conclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. PG&E Holds No Prescriptive Rights to Exclusive Use of the Area Occupied by the Old Transmission Lines or the New Transmission Lines Because it Failed to Pay the Real Property Taxes Assessed Against the Property or the Area of Claimed Exclusive Use.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C. No Prescriptive Rights Arise When the Occupancy Is Permissive. . . . . . . . . . . 8

    D. The Alteration of a Prescriptive Occupancy to a Different or Greater Area Breaks the Continuity and Destroys the Claim to Prescriptive Rights.. . . . . . . 10

    E. PG&E Has Not Acquired Any Indefeasible Prescriptive Rights as a Result of the Application of Any Statute of Limitations.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1. Continuing Trespass - No Statute of Limitations Applicable . . . . . . 11

        2. Timely Filing of Lawsuit - Commenced within Less Than One Year . . 13

        3. The Trespass Claim Is Distinguishable from the Acquisition of an Estate in Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    F. PG&E Has Not Acquired Any Indefeasible Prescriptive Rights as a Result of Its First Bankruptcy Case In Which No Notice Was Sent to Komir or Shahmirza. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# Table of Authorities

## Cases

*Ajax Magnolia One Corp. v. So. Cal. Edison Co.* (1959) 167 Cal.App.2d 743 . . . . . . . . . . . . . . . . . 7

*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862 . . . . . . . . . . . 11, 12

*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160 . . . . 12

*Blackmore v. Powell* (2007) 150 Cal.App.4th 1593 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*City of Los Angeles v. Igna* (1962) 208 Cal.App.2d 338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cushman v. Davis* (1978) 80 Cal.App.3d 731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dooling v. Dabel*, (1947) 82 Cal.App.2d 417 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gaither v. Gaither* (1958) 165 Cal.App.2d 782 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gray v. McCormick* (2008) 167 Cal.App.4th 1019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Guerra v Packard*, (1965) 236 Cal.App. 2d 272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Guerra v Packard*, 236 Cal.App. 2d 272 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 10

*Hansen v Sandridge Partners, L.P.* (2018) 22 CA 5th 1020 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Jones v. Tierney-Sinclair* (1945) 71 Cal.App.2d 366 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kapner v. Meadowlark Ranch Assn.* (2004) 116 Cal.App.4th 1182 . . . . . . . . . . . . . . . . . . . . . . . 7

*Los Angeles Brick etc. Co. v.City of Los Angeles* (1943) 60 Cal.App.2d 478 . . . . . . . . . . . . . . . . 9

*Lyle v State of California* (2007) 153 CA4th 281 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

*Mangini v Aerojet-General Corp* (1991) 230 CA3d 1125 . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Matthiessen v. Grand*, (1928) 92 Cal.App. 504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McLear-Gary v Scott*, (2018) 25 CA5th 145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Mehdizadeh v Mincer* (1996) 46 Cal.App.4th 1296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*O'Banion v. Borba* (1948) 32 Cal.2d 145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576 . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Raab v Casper* (1975) 51 Cal.App.3d 866, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Silacciv. Abramson* (1996) 45 Cal.App.4th 558 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

| | | |
|---|---|---|
| 1 | *Smith v Skrbek*, 71 Cal. App. 2d 351 (1945). | 3, 8 |
| 2 | *Starrh & Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 CA4th 583 | 12 |

**Statutes**

| | | |
|---|---|---|
| | 11 USC § 523(a)(3). | 14 |
| | Bankruptcy Local Rules of the Bankruptcy Court for the Northern District of California, Rules 1001-2, 56-1, 56-2, and 56-3. | 9 |
| | California Civil Code § 325 | 3, 6-8, 14 |
| | Civil Code section 3334 | 12 |
| | Code of Civil Procedure § 338(b). | 13 |
| | Federal Rules of Civil Procedure, Rule 56 | 9 |

**Texts**

| | | |
|---|---|---|
| | *Corpus Juris Secundum*, 28 C.J.S. 668, § 18 (2) | 8 |

Amir Shahmirza, as agent of, and acting on behalf of, Komir, Inc. ("Komir" or "Claimant"), submits the following points and authorities in opposition to PG&E's Counter-Motion for Partial Summary Judgment as contained in its combined pleading entitled "Opposition to of Claimant's Motion for Partial Summary Judgment of Issues in Reorganized Debtors Objection to Claim #2090 and In Claimant's Response Thereto" ("PG&E Opposition").  Claimant separately files its Reply to the PG&E Opposition to Komir's initiating Motion for Summary Judgment.

## I. THE COMPETING MOTIONS

### A. Claimant's Motion For Determination of Extinguishment of Easements by Condemnation.

Claimant maintains that PG&E has no easement rights based upon the recorded documents upon which it has asserted entitlements because those interests were extinguished by the condemnation of the Property by the State of California for highway purposes.

Claimant's Motion for Partial Summary Judgment presents for summary adjudication only that issue, i.e., the extinguishment of any and all easement rights under documents recorded in 1901, 1910, and in 1923 by a Judgment of Condemnation and Final Order of Condemnation of Parcel 2 within which Claimant's Property is located that were entered on February 11, 1983 (Compendium of Exhibits, Volume 4, Exhibits 6 and 7).

The only facts necessary for summary adjudication of the issue presented by Claimant are the recorded easement documents upon which PG&E claims entitlement to place transmission lines, and the subsequent recorded Judgment of Condemnation and Final Order of Condemnation by which the State of California acquired fee simple absolute ownership of the Property that the State later sold to Claimant's predecessor in interest.

No dispute exists regarding those facts.

### B. PG&E's "Counter-Motion for Partial Summary Judgment" is Presented in its Opposition to Claimant's Motion for Partial Summary Judgment.

PG&E did not file any separate Counter-Motion for Partial Summary Judgment.  Rather, its

brief Counter-Motion arguments are combined within its Response to Claimant's Motion.

The basis of PG&E's Counter-Motion is that, assuming no easement rights based upon any surviving recorded documents, PG&E is nonetheless entitled to place transmission lines (at some location and at some height) across Claimant's Property under a right of prescriptive easement.

Komir notes initially that PG&E's claim of prescriptive easement is based entirely upon possession and the rights that it asserts could only be coextensive with whatever course of travel PG&E occupied during whatever it contends to have been the prescriptive occupation period. Stated differently, the claim of prescriptive easement does not relate to any recorded document and does not include any ostensible right contained in any recorded document. This aspect of the analysis requires a focus on the factual contentions of the parties with Komir's statement of facts set forth in the Declaration of Amir Shahmirza in Support of Opposition to Counter-Motion for Summary Judgment by PG&E.

For delineation and clarification as to the portion of PG&E's response that appears to constitute its Counter-Motion, Claimant quotes below the sections that appear to constitute the Counter-Motion.

In its <u>Introduction</u>, PG&E states:

"Even assuming, *arguendo*, that the Judgment in Condemnation extinguished PG&E's interest established by the recorded easements, PG&E's continued occupation of the Komir Property at all times since 1983 is sufficient to establish its right to the PG&E Easements by prescription. Furthermore, the Transmission Lines have been open and obvious on the Komir Property since Clamant acquired the property in 2000, such that PG&E is entitled to summary judgment based on the three-year statute of limitations." (PG&E Opposition, page 2, lines 19-24).

In its <u>Argument</u>, PG&E states:

**"B. Even Assuming the PG&E Easements were Condemned, PG&E's Continued Use of the Transmission Lines Supports a Claim of Prescription.**

Even assuming, arguendo, that the Judgment in Condemnation somehow extinguished PG&E's interest in the recorded easements - which it did not - PG&E's continued use of the Transmission Lines on the Komir Property for the past 40 years is more than sufficient to establish a claim of prescription. A prescriptive right to an easement over the real property of another may be acquired by a showing of an 'open, continuous, notorious and peaceable use, adverse and under a claim of right, for the statutory period of five years.' *Guerra v Packard*, 236 Cal.App. 2d 272, 288 (1965). 'The claim of right must be communicated to the owner of

the land, or the ...must be so obvious as to constitute implied notice of the averse claim .' *Smith v Skrbek*, 71 Cal. App. 2d 351, 358 (1945).

It is undisputed that, for well over five years after Claimant purchased the Komir Property in 2000, the PG&E Easements were open, continuous, notorious, peaceable and adverse. (See Leatherman Decl. ¶¶ and Exs. F-H; Smith Decl. and Exs. 1 and 2.) The Transmission Lines are and have always been clearly visible, and thus have provided obvious notice to Claimant for decades. It is beyond dispute, then that if the recorded PG&E Easements were in fact condemned in 1983, they nonetheless survive today as prescriptive easements. Again, summary judge for PG&E is warranted on that basis." (PG&E Opposition, page 4, line 25 to page 5, line 12)

These three paragraphs, and the two (2) cases cited therein, constitute the entirety of PG&E's "Counter-Motion" for summary judgment regarding the substantive issue of the creation of a prescriptive easement, or not.

As discussed below, these conclusions ignore the complete fact pattern and are erroneous.

**II. THE RELEVANT OPERATIVE FACTS COMPEL A DETERMINATION THAT**

**(1) PG&E CANNOT, UNDER ANY THEORY, OBTAIN ANY "PRESCRIPTIVE EASEMENT" FOR ITS CLAIM OF EXCLUSIVE USE OF THE AREA OCCUPIED BY ITS TRANSMISSION LINES DUE TO NON-PAYMENT OF REAL PROPERTY TAXES AND**

**(2) PG&E FAILED TO ESTABLISH THE ELEMENTS OF PRESCRIPTIVE EASEMENT.**

The facts relevant to PG&E's Counter-Motion, that are stated in evidentiary detail in the Shahmirza Declaration,[1] include the following:

1. PG&E's claim for "prescriptive easement" seeks the exclusive use of the space occupied by its high voltage transmission lines. The space occupied by those transmission lines cannot be used by any other person in any manner for any purpose.

2. Only Komir has paid the real property taxes assessed against the Property for the entire period of Komir's ownership. PG&E has never paid any real property taxes assessed against the Property. (See California Civil Code § 325)

3. Komir consented to, and did not object to, PG&E's occupation of the Property to the extent and for the transmission lines that existed at the Acquisition Date until 2018.

---

[1] Komir adopts in this Response the defined terms as stated in the Shahmirza Declaration.

4. In 2018, PG&E abandoned both the Original Transmission Towers located on the immediately adjacent northerly boundary of the Property and the Original Transmission Lines that traversed the Property.

5. In 2018, PG&E sought a Temporary Construction Easement ("TCE") on the northerly portion of the Property to "ensure the safety and reliability of the electric transmission system" through "improvement projects near your [Komir's] property."

6. In the initial TCE document submitted by PG&E to Komir, PG&E included statements that PG&E held easement rights for ingress, egress and use of the Property.

7. Komir objected to those recitations and asserted that PG&E held no such rights. PG&E thereupon removed those statements and included a provision that the making of the TCE "shall not be interpreted or construed to mean that Grantor is granting any easement to Grantee for transmission lines over any portion of the Property."

8. PG&E and Komir entered into a TCE by which PG&E obtained a temporary right to occupy a portion of the Property upon payment of the sum of $9,000 per month.

9. At a time when Shahmirza could ascertain the new significantly different towers were being constructed at different locations that would place new transmission lines at different locations and heights across the Property, Shahmirza objected by oral communications with on-site personnel and by a written cease and desist communication to PG&E's Land Agent.

10. PG&E refused to cease and desist and, instead, constructed three huge New Transmission Towers at new locations and placed New Transmission Lines attached to the New Transmission Towers at new locations at significantly reduced height across the Property.

11. The new occupancy that commenced in May, 2018, was not permissive and with consent as had been the Original Transmission Lines, Komir promptly objected to the

New Transmission Lines, and upon PG&E's refusal to cease the installation of the New Transmission Lines, Komir filed its Complaint for Equitable Relief and Damages in the San Mateo County Superior Court on November 9, 2018. (Compendium, Volume 2, Exhibit 3).

12. Komir was not included in PG&E's list of creditors in its first bankruptcy case that is described in the Counter-Motion and PG&E did not notify Komir of any deadlines or procedural requirements. At the date of the filing of PG&E's first bankruptcy case, PG&E's use of the Original Transmission Lines was permissive.

The analysis of the legal issues and conclusions based upon these facts is set forth below.

## III. LEGAL ARGUMENT

### A. Summary of Legal Conclusions

PG&E holds no prescriptive easement rights, based upon the facts above, for the following reasons:

1. PG&E holds no prescriptive rights because PG&E claims that it is entitled to the exclusive use of the area traversed by the New Transmission Lines that is tantamount to a claim of ownership of an estate by adverse possession that requires payment of real property taxes by the party claiming the prescriptive easement which PG&E did not pay.

2. PG&E holds no prescriptive rights because prior to 2018, PG&E did not occupy the Property under an assertion of hostile, adverse occupancy but rather Claimant permitted the occupation.

3. PG&E holds no prescriptive rights because any right of way claimed by prescription is limited to the specific defined location occupied during the period of prescription and any attempted change or enlargement, which PG&E committed, constitutes an abandonment of any rights with respect to the area occupied during the pre-change occupancy.

4. PG&E is not entitled to maintain any prescriptive easement rights due to any statute of limitations for three reasons, namely, (a) the trespass was continuing and not permanent and (b) after the material alteration of the course of the traverse and the height of the lines Claimant immediately objected and filed suit, and (c) whether or not Claimant may seek damages for trespass, any bar to that damage claim would not create an estate in the Property for PG&E but rather the Court may enjoin the occupancy.

5. PG&E cannot gain any interest in any estate by prescription based upon any bankruptcy discharge in PG&E's first bankruptcy case because (a) no claim existed at the commencement of that case and (b) neither Komir nor Shahmirza received notice of the filing of that case or of any requirements pertaining thereto.

**B. PG&E Holds No Prescriptive Rights to Exclusive Use of the Area Occupied by the Old Transmission Lines or the New Transmission Lines Because it Failed to Pay the Real Property Taxes Assessed Against the Property or the Area of Claimed Exclusive Use.**

Courts routinely hold that a claim to the exclusive use of an area of property of another effectively constitutes an effort to acquire an estate by change in title that requires satisfaction of all elements of adverse possession, including the payment of real property taxes as required by California Code of Civil Procedure § 325.

In *Hansen v Sandridge Partners, L.P.* (2018) 22 CA 5th 1020, the Court discussed the reoccurring effort of litigants to mischaracterize a claim of adverse possession as being a prescriptive easement to avoid the requirement of the payment of the real property taxes.

Initially, the Court in *Hansen* quoted CCP § 325 as follows:

"In no case shall adverse possession be considered established under the provision of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, *and the party or persons, their predecessors and grantors, have timely paid all state, county, or municipal taxes that have been levied and assessed upon the land for the period of five years during which the land has been occupied and claimed*." (*Code Civ. Proc., § 325, subd. (b)*, italics added.) (Emphasis in original)

In articulating its ruling denying a claim of exclusive prescriptive easement by a claimant who had not paid the property taxes, the Court in *Hansen* stated the underlying concept as follows:

> "The Hansens also cite to cases involving express easements. (E.g., *Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576 [110 P.2d 983] (Pasadena); *Gray v. McCormick* (2008) 167 Cal.App.4th 1019, 1031 [84 Cal. Rptr. 3d 777]; *Blackmore v. Powell* (2007) 150 Cal.App.4th 1593 [59 Cal. Rptr. 3d 527]; *City of Los Angeles v. Igna* (1962) 208 Cal.App.2d 338 [25 Cal. Rptr. 247]; *Ajax Magnolia One Corp. v. So. Cal. Edison Co.* (1959) 167 Cal.App.2d 743 [334 P.2d 1053].) But such cases are inapposite because express easements do not raise the same concerns as prescriptive exclusive easements. **Because the statutory tax requirement applies to prescriptive estates but not prescriptive easements, it is especially important to maintain the distinction between easements and estates in the context of prescription. (See Code Civ. Proc., § 325, subd. (b).) That is, if courts allowed claimants to obtain by prescription a functional estate without satisfying the statutory requirements of adverse possession, then Code of Civil Procedure section 325, subdivision (b)'s tax requirement would be nullified. In contrast, that statute's tax requirement does not apply to express easements (e.g., easement by a written grant), so permitting express exclusive easements does not create the same statutory nullification issue that prescriptive exclusive easements do.**" (Emphasis supplied)

More colorfully, the Court in *Hansen* described litigant's efforts to disguise a claim of exclusive use that is tantamount to ownership as follows:

> "Because of the taxes element, it is more difficult to establish adverse possession than a prescriptive easement. The reason for the difference in relative difficulty is that a successful adverse possession claimant obtains ownership of the land (i.e., an estate), while a successful prescriptive easement claimant merely obtains the right to *use* the land in a particular way (i.e., an easement). (*Mehdizadeh, supra*, 46 Cal.App.4th at p. 1300.)
>
> **Unsurprisingly, claimants have often tried to obtain the fruits of adverse possession under the guise of a prescriptive easement to avoid having to satisfy the tax element.** (*Kapner v. Meadowlark Ranch Assn.* (2004) 116 Cal.App.4th 1182, 1187 [11 Cal. Rptr. 3d 138].) **That is, they seek judgments "employing the nomenclature of easement but … creat[ing] the practical equivalent of an estate."** (*Raab, supra*, 51 Cal.App.3d at p. 877.) **Such judgments "pervert[] the classical distinction in real property law between ownership and use**." (*Silacci, supra*, 45 Cal.App.4th at p. 564.) The law prevents this sophistry with the following rule: If the prescriptive interest sought by a claimant is so comprehensive as to supply the equivalent of an estate, the claimant must establish the elements of adverse possession, not those of a prescriptive easement. (*Raab, at pp. 876–877*.) In other words, the law simply "does not allow parties who have possessed land to ignore the statutory requirement for paying taxes by claiming a prescriptive easement." (*Kapner, at p. 1187*.)" (Emphasis supplied)

Such is the situation with PG&E's claim of exclusive use easement.

The Old Transmission Lines and New Transmission Lines are just what the name states, i.e., enormous high voltage transmission lines placed in an area of the Property that can only be occupied

by those lines, i.e., Komir, Inc., cannot use that space, cannot build in it, cannot "share" it, or have any other use by it.

Absent payment of taxes as required by CCP § 325, which Komir paid and PG&E did not pay, PG&E had, and has, no prescriptive easement entitling it to use Komir's Property for transmission lines.

The failure of PG&E's claim on this ground also has the secondary effect of defeating all other contentions by PG&E with respect to its holding any prescriptive rights as, without payment of the taxes, PG&E cannot have any easement rights regardless of the theory upon which PG&E may contend it would be entitled to obtain prescriptive rights, i.e., without the payment of the taxes PG&E could not have obtained prescriptive rights based upon any theory. The law simply forbids the acquisition of the private property of another without proof of all elements of the taking, including the payment of the real property taxes.

**C.    No Prescriptive Rights Arise When the Occupancy Is Permissive.**

A multitude of cases have consistently held that prescriptive rights may arise upon "open, notorious and hostile" occupancy by a non-owner of the property, and, conversely, no prescriptive rights can arise from a permissive use.

The opinion in *Smith v Skrbek* (1945) 71 CA2d 3351, one of two cases cited by PG&E in its Counter-Motion, illustrates this point. In *Smith*, the Court of Appeal affirmed a trial court's judgment determining that no prescriptive easement had been established because the occupancy by the plaintiff was permissive, not hostile

Citing *Corpus Juris Secundum*, 28 C.J.S. 668, § 18 (2), the Court in *Smith* discussed the concept as follows:

> "Where a landowner opens up a way on his own land for his own use and convenience, the mere use thereof by another, under circumstances which do not injure the road nor interfere with the owner's use of it, will not in the absence of circumstances indicating a claim of right be considered as adverse, and will not ripen into a prescriptive right no matter how long continued.

Similarly, the Court in *Guerra v Packard* (1965) 236 CA2d 272, the other case cited by

PG&E, stated this principle as follows:

> "Defendants' second contention is that plaintiffs proved only a permissive use, which is insufficient to establish a prescriptive right. The principle of law which defendants state is, of course, correct. (*Los Angeles Brick etc. Co. v.City of Los Angeles*, 60 Cal.App.2d 478, 489 [141 P.2d 46]; *Jones v. Tierney-Sinclair*, 71 Cal.App.2d 366, 371 [162 P.2d 669].)"

Such is the situation with respect to PG&E's occupation of the Komir's Property until 2018. Komir was not developing the Property during that prior period, the Old Transmission Lines were not interfering with Komir's use and could be relocated, so Komir did not object to, but consented without objection to, the continued traverse of the Old Transmission Lines until PG&E altered them with the New Transmission Towers and the New Transmission Lines whereupon Komir immediately objected and filed suit.

Accordingly, the claim of establishment of prescriptive rights after December 18, 2000, and prior to the events in 2018, also fails due to the permissive occupancy without any recognition of any legal right in favor of PG&E.

Further, procedurally, with respect to the Counter-Motion for Partial Summary Judgment for a determination of the existence of prescriptive rights, the Court in *Guerra*, *supra*, states the basic proposition that the determination of whether occupation was hostile or permissive is a question of fact:

> "The questions whether the use of the easement is adverse and under a claim of right, or permissive and with the owner's consent, and whether the nature of the use is sufficient to put the owner on notice, are questions of fact ..."

See also *McLear-Gary v Scott*, (2018) 25 CA5th 145, 159, stating the same holding.

Summary judgment cannot be granted unless "the movant shows that there is no dispute as to any material fact." Federal Rules of Civil Procedure, Rule 56, and Bankruptcy Local Rules of the Bankruptcy Court for the Northern District of California, Rule 1001-2, 56-1, 56-2, and 56-3. The existence of a dispute concerning whether occupancy by the Old Transmission Lines was hostile or permissive is a disputed issue of fact. Summary judgment of the issue with trial to establish the fact is improper.

### D. The Alteration of a Prescriptive Occupancy to a Different or Greater Area Breaks the Continuity and Destroys the Claim to Prescriptive Rights.

The rule that alteration of a prescriptive occupancy to a different or greater area breaks the continuity and destroys the claim to prescriptive rights is also established by the second of the two cases cited by PG&E, namely, *Guerra*, *supra*.

In *Guerra*, the Court stated this principle as follows:

" Dealing with the first of these alternatives, **we note the California rule with respect to the effect of deviations in the path of the user upon the establishment of a prescriptive easement. This rule is stated in** *Matthiessen v. Grand, 92 Cal.App. 504, 510 [268 P. 675]*, **as follows: ] "The line of travel over a roadway which is claimed by prescription may not be a shifting course, but must be certain and definite. Slight deviations from the accustomed route will not defeat an easement, but substantial changes which break the continuity of the course of travel will destroy the claim to prescriptive rights."** (See *Dooling v. Dabel, 82 Cal.App.2d 417, 424 [186 P.2d 183]*; 143 A.L.R. 1410; 80 A.L.R.2d 1095.)" (Emphasis supplied)

A more recent case, *McLear-Gary*, *supra*, made a similar statement of this rule:

**"Prescriptive rights 'are limited to the uses which were made of the easements during the prescriptive period. [Citations.] Therefore, no different or greater use can be made of the easements without defendants' consent.'** (*O'Banion v. Borba (1948) 32 Cal.2d 145, 155 [195 P.2d 10]*.) While the law permits increases in the scope of use of an easement where 'the change is one of degree, not kind' (*Cushman v. Davis (1978) 80 Cal.App.3d 731, 735–736 [145 Cal.Rptr. 791]*), 'an actual change in the physical objects passing over the road' constitutes a 'substantial change in the nature of the use and a consequent increase of burden upon the servient estate … more than a change in the degree of use.' (*Gaither v. Gaither (1958) 165 Cal.App.2d 782, 785–786 [332 P.2d 436]*.)" (Emphasis supplied)

In this instance, PG&E radically changed the course and deviated from its pre-2018 use:

1) PG&E significantly relocated the Old Transmission Towers from a location set back from Komir's northerly boundary to the new location of the New Transmission Towers nearly adjacent to the boundary lines thereby also affecting the location of the New Transmission Lines.

2) PG&E significantly relocated the Old Transmission Lines so that the New Transmission Lines traverse the Property at a different location.

3) PG&E significantly lowered the height of the Old Transmission Lines so that the New Transmission Lines are closer to the ground area for development of the Property.

See Photos attached to Shahmirza email to Scott Brady containing his Cease and Desist Demand, Exhibit E to the Shahmirza Declaration.

Whatever PG&E may argue were its purported prescriptive rights to traverse the Property with the Old Transmission Lines prior to 2018, those rights, if any, were extinguished when the New

Transmission Lines were located in a "different" and "greater" area than had been occupied by the Old Transmission Lines.

Again, to the extent that PG&E may urge contrary factual contentions regarding the relocation of the transmission lines, those matters are factual disputes that preclude the grant of the Counter-Motion for Summary Judgment.

**E.  PG&E Has Not Acquired Any Indefeasible Prescriptive Rights as a Result of the Application of Any Statute of Limitations.**

PG&E cannot bootstrap itself into a significant prescriptive right to maintain the New Transmission Lines that service the entire airport and major portions of the San Francisco Metropolitan area with all the income received as a result of those lines due to any Statute of Limitations for at least two reasons:

(a) The trespass is continuing so that no Statute of Limitations commenced to run, and

(b) Komir Inc initiated its Lawsuit against PG&E within less than one year after the creation of the New Transmission Towers and New Transmission Lines.

The analysis of each of these reasons is set forth below.

**1.  Continuing Trespass - No Statute of Limitations Applicable**

Trespasses may be "permanent" or "continuing."

In *Lyle v State of California* (2007) 153 CA4th 281 the Court explained the distinctions between a continuing nuisance or trespass (analyzed coextensively, see *Mangini v Aerojet-General Corp* (1991) 230 CA3d 1125, 1148)) as follows:

> "Whether a nuisance is continuing or permanent depends 'on the type of harm suffered.' (Baker v. Burbank-Glendale-Pasadena Airport Authority (1985) 39 Cal.3d 862, 868 [218 Cal. Rptr. 293, 705 P.2d 866] (Baker).) '[P]ermanent nuisances are of a type where ' "by one act a permanent injury is done, [and] damages are assessed once for all." ' ' (Ibid.) Nuisances found to be permanent in nature include "solid structures, such as a building encroaching upon the plaintiff's land [citation], a steam railroad operating over plaintiff's land [citation], or regrade of a street for a rail system [citation]." (Id. at p. 869, fns. omitted.) For a permanent nuisance, damages are "complete when the nuisance comes into existence," and an action must generally be brought "within three years after the permanent nuisance is erected." (Ibid.; but see Gov. Code, § 911.2 [government claim filing period one year].) A nuisance is not permanent, but continuing, if the nuisance "may be discontinued at any time." (Baker, supra, 39 Cal.3d at p. 869.) "The classic example of a continuing nuisance is an

ongoing or repeated disturbance, such as … one … caused by noise, vibration or foul odor." (Ibid.) A person harmed by a continuing nuisance "may bring successive actions for damages until the nuisance is abated." (Ibid.)"

In *Lyle*, the Court also noted an important distinction with respect to the basis for a determination of whether a nuisance is "continuing":

> "In any event, the 'continuing' nature of a nuisance refers to the continuing damage caused by the offensive condition, not to the acts causing the offensive condition to occur." (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal. App. 3d 1125, 1147 [281 Cal. Rptr. 827].)

In *Starrh & Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 CA4th 583 the Court engaged in an extensive discussion regarding the distinction between "permanent" and continuing as well as the differing scope of recoverable damages. The Court explained as follows:

> "In contrast, a **continuing trespass is an intrusion under circumstances that indicate the trespass may be *discontinued or abated***. In these circumstances, damages are assessed for present and past damages only; prospective damages are not awarded because the trespass may be discontinued or abated at some time, ending the harm. (Beck, supra, 44 Cal.App.4th at p. 1216.) Pursuant to Civil Code section 3334, damages allowed for continuing trespass include the value of the use of the property, reasonable cost of repair or restoration to the property's original condition, and the costs of recovering possession. Continuing trespasses are essentially a series of successive injuries, and the statute of limitations begins anew with each injury. In order to recover for all harm inflicted by a continuing trespass, the plaintiff is required to bring periodic successive actions. *(Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 869 [218 Cal. Rptr. 293, 705 P.2d 866] (Baker).) (Emphasis supplied)

The Court in *Starrah* then noted the consequences attributable to the difficult factual distinctions:

> "As aptly stated in *Beck*: 'These distinctions can create particular problems for the parties. For example, if the defendant is willing and able to abate the [trespass] it may be unfair to award prospective damages on the presumption that the [trespass] will continue. On the other hand, if it appears improbable that the [trespass] can or will be abated, or the plaintiff is willing that the [trespass] continue provided compensation is paid for past and prospective injuries, then it may be unreasonable to leave the plaintiff to the troublesome remedy of successive actions. And a too rigid distinction between permanent and continuing [trespass] may constitute a trap for the unwary plaintiff who guesses wrong."

The Court concluded its analysis with the statement of policy:

> "**For these reasons it is held that in doubtful cases the plaintiff has an election to treat a [trespass] as permanent or continuing**. [Citations.]' *(Beck, supra*, 44 Cal.App.4th at p. 1217.)" (Emphasis supplied)

With respect to the Counter-Motion for Summary Judgment, no claim for trespass is barred

by the Statute of Limitations for the following reasons:

The trespass (as characterized by PG&E) that PG&E claims arose in or after December, 2000, was continuing, not permanent as reflected by the facts that:

(a) The damage has been continuing per *Lyle*, *supra*.

(b) The intrusion does not have a permanence such as the "solid structures, such as a building encroaching upon the plaintiff's land" described in *Lyle*.

(c) PG&E proved that the Old Transmission Lines were movable and abatable as PG&E, in fact, moved not only the lines but created the New Transmission Towers (see admission in Exhibit G to the Declaration of Roger Leatherman admitting the removal and relocation with a date of April, 2018).[2]

(d) Komir elects to treat the trespass as continuing per *Starrh*.

**2. Timely Filing of Lawsuit - Commenced within Less Than One Year**

With respect to the trespass by the New Transmission Lines as mounted on the New Transmission Poles that were moved immediately adjacent to Komir's Property, Komir objected on-site to the persons performing the relocation, objected in writing to PG&E's Land Surveyor, and commenced suit within months, i.e., well within the three years provided by CCP § 338(b).

**3. The Trespass Claim Is Distinguishable from the Acquisition of an Estate in Property.**

As discussed in the sections above concerning the nature of prescriptive easements, a prescriptive right would maintain the encroachment. If the encroacher cannot establish a prescriptive right to occupancy, then the Court may grant injunctive relief requiring the unauthorized encroacher to vacate which remedy is intrinsic to the prescriptive rights analysis independent of the viability of a damages claim for trespass.

**F. PG&E Has Not Acquired Any Indefeasible Prescriptive Rights as a Result of Its First Bankruptcy Case In Which No Notice Was Sent to Komir or Shahmirza.**

---

[2] The relevant portion of the exhibit that is difficult to read is immediately above the red font word "Entered" that is imprinted in the filing data."

As demonstrated by the Court's file in the First Bankruptcy Case, and by the Declaration, PG&E did not list Komir, Shahmirza, or Shahmirza's predecessors Neil and Melanie Hildebrand as creditors or other parties in interest in that bankruptcy case. See Jacobson Declaration.

Claims, assuming any claim existed with respect to the Property at the commencement of the First Bankruptcy case which is a disputed factual issue, are not discharged unless the Debtor provides notice to the Claimant of the filing of the case and the requirements pertaining thereto. (11 USC § 523(a)(3).

Significantly, also, the Counter-Motion notes that Komir acquired the Property on December 18, 2000, "a few months before the filing of PG&E's first chapter 11 case" and then states that "to the extent that komir had a claim for trespass against PG&E prior to that bankruptcy case, it was discharged ..." The time period to which PG&E refers was "a few months" with the purported discharge affecting Komir "to the extent that komir had a claim for trespass" while any "trespass" continued long thereafter. See discussion above regarding permissive occupancy negating any prescriptive easement.

**Conclusion**

Since PG&E claims an exclusive prescriptive right to the use of the space occupied by its transmission lines, PG&E cannot establish any entitlement to such right unless it can prove that it paid the real property taxes assessed against the Property. Civil Code Section 325(b).

PG&E never paid any real property taxes assessed against the Property. Komir paid all the real property taxes.

PG&E's use of the space occupied by the Original Transmission Lines was permissive which precludes the establishment of any prescriptive rights.

In 2018, PG&E abandoned the space occupied by the Original Transmission Lines and installed new and materially different New Transmission Towers that caused the relocation of the New Transmission Lines thereby initiating a new, non-permissive use of a different portion of the Property. Komir timely objected and timely filed suit.

**RESPONSE TO PG&E'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT** 14

Case: 19-30088    Doc# 13654    Filed: 04/03/23    Entered: 04/03/23 16:38:58    Page 18 of 19

The trespass, if such occurred as argued by PG&E prior to 2018, was continuing and did not give rise to any statute of limitation issue. In any event, whatever effect the passage of time might have on a damage claim, no statute of limitations bar to a damage claim would allow PG&E to create for itself an interest in an estate.

No trespass claim existed at the commencement of the first bankruptcy case, and PG&E did not include Komir, its predecessor, or Shahmirza in its list of creditors and did not give notice to any of them.

While the failure to pay taxes constitutes a complete bar to any relief in favor of PG&E, factual issues exist with respect to the other contentions asserted by PG&E such that summary judgment cannot be granted as requested by the Counter-Motion.

Respectfully submitted.

Dated: April 3, 2023         COHEN AND JACOBSON, LLP

By: /s/ Lawrence A. Jacobson
    Attorneys for Claimant