| | |
|---|---|
| 1 | Jane Luciano, Esq. SBN 124263 |
| 2 | 9000 Crow Canyon Road |
| | Suite S #168 |
| 3 | Danville, CA 94506 |
| | (925) 216-6030 |
| 4 | |
| 5 | William McCann, Esq. NV SBN 12038 |
| | P.O Box 370 |
| 6 | Genoa, NV 89411 |
| 7 | *Pro Haec Vice in Butte County Superior Court Cases* |
| 8 | Attorneys for Plaintiffs and Claimants Liza Sims, individually, Estate of Edna Gleason and Thomas and Jaydene Gardner |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankr. Case No: 19-30088 (DM) |
| PG&E CORPORATION | Chapter 11 |
| -and- | (Lead Case) |
| PACIFIC GAS AND ELECTRIC COMPANY. | (Jointly Administered) |
| | **OBJECTIIONS OF PLAINTIFFS AND CLAIMANTS LIZA SIMS, INDIVIDUALLY AND ON BEHALF OF THOMAS AND JAYDENE GARDNER PURSUANT TO PG&E MOTION TO OBTAIN COVERAGE OF "CHANNELING INJUNCTION" TO DEFEAT PLAINTIFFS VARIOUS CLAIMS FOR PUNITIVE DAMAGES (PURSUANT TO LR 9014-1)** |
| Debtors | |
| **X** Affects Both Debtors | (Relates to Dkt 13685, both Liza Sims and Thomas and Jaydene Gardner cases) |
| | **Hearing: May 24, 2023**<br>**Time: 10:00 AM**<br>**Via Tele-video conference** |

## I. INTRODUCTION

In the Broadway hit of yesteryear, *Man of La Mancha,* the guttersnipe girl, who has become in Don Quixote's dreams the lady Dulcinea, asks a simple question: "Why?" This Court may well ask such a question of these humble Plaintiffs. and their potentially quixotic lawyers.

Because: Plaintiffs' Objection to this Honorable Court's "channeling injunction" was forged in the fires that cast Plaintiff Liza Sims' Mother into permanent dementia – instantly – resulting in a slow painful death. And for which there is no restitution.

Because: the present Objection to this Honorable Court's "channeling injunction" is morally, legally, and ethically justified by the tragic tale of Plaintiffs Jaydene and Thomas Gardner who, while in flight, watched the firestorm engulf their '1960s' retirement home including the black cat clock with tick tock eyes that kept time over the remaining golden days robbed from this elderly couple. And for which there is no restitution.

Because: in the prescient words of New York Time's writers Ivan Penn and Peter Evis:

*"But the relatively small size of PG&E's financial penalties could rekindle concerns that large corporations often escape appropriate punishment for their actions."*
(New York Times**, *PG and E Pleads Guilty to 84 Counts of Manslaughter in Camp Fire Cases*,** June 16, 2020.
This remarkable development occurred post *PG and E v. The Superior Court of Sacramento County,*[1] *In re Nancy Shao Su*[2], *Lockerby v. Sierra*[3], and, last but not certainly least, *Kauaahau v. Geiger* [4]

---

[1] 24 Cal. App. 5th 1150 (2018)
[2] 290 F. 3rd 1140 (9th Circuit 2002)
[3] 535 F. 3rd 1038 (9th Circuit 2008)
[4] 523 U.S. 557 (1998)

Because the 'slap – on – the – wrist' 'punishment given PG and E for the causation of 84 deaths is a mere contrivance to convince the residents of Butte County that PG and E has been adequately punished.

Because this smoke and mirrors ploy does not bring resolution for these Plaintiffs, who are not about to be bullied by the hundreds of lawyers feeding on the corpses of their dead, wounded, maimed relatives and neighbors, *so that Plaintiffs' suffering cannot be used to make a difference. Lawyers who, by their machinations on behalf of both fire victims and PG and E- pave the way for future disasters.*

Plaintiff Liza Sims, on behalf of herself and her mother, and the Gardners, demand their day in court, before a jury of their peers, to prove that PG and E's conduct was, with respect to causation of the Camp fire, "willful", "malicious" and or "fraudulent".

The Butte County plea bargain was carefully designed to circumscribe any civil liability for punitive damages in the then existing Chapter 11 proceedings, because surprisingly, damages from "recklessness" or "gross negligence" may be discharged in bankruptcy. Ordinary folks reading the tabloids don't realize that.

Unfortunately for PG and E, the Grand Jury findings that gave rise to the indictment track- precisely- on the doctrine of "willful blindness," and their battery of criminal law specialists could not-nor cannot-get around *that*. And if a trier of fact finds that PG and E-and or its cascading boards of directors—were "willfully blind" during decades or prioritizing profits over prudence, then it is subjected to non-dischargeable punitive damages. (See District Attorney of Butte County Press release attached as Exhibit "1" referenced in Plaintiffs Request to Take Judicial Notice filed concurrently herewith).

Punitive damages – whether arising from any statute or case – are intended to disincentive

individuals-corporation small or large---utilities, small or large---boards of directors and executives (blind or sighted) from engaging in the type of intentional conduct that kills people. The frustration of the District Attorney who helped craft this plea bargain, Michael Ramsey in *not* being able to take steps to prevent this type of tragedy from happening again, has been recently documented:

*"But then we get to the Camp Fire, the CEO at that time stood in front of the Judge and answered 84 times, guilty, your honor, as a picture of the person that they killed. was shown on a screen. The organization has made a turn, there is no doubt. But it is a bit like trying to move the Titanic away from that iceberg."* Michael Ramsey, Butte County District Attorney, interview CAP Radio January 9, 2022.

Unless someone is brave enough to prove the "subjective" intent of this corporation which is – after all, a person – the residents of Butte County and the people of California will continuously be subjected to wildfires caused by a renegade utility's multiple, habitual, consistent – and predictable – breaches of the standard of care. It will be "business as usual" or, as Dulcinea in *Man of La Manch* so eloquently puts it in her sad soliloquy to the fact that nothing changes, *It's All the Same:*

*https://www.youtube.com/watch?v=5w7ywCbuXNY*

### II. FACTS

A. Plaintiffs Have not Waived nor Will They Waive
Their Claims for Punitive Damages Asserted in the Butte County Superior Court
Litigations

Liza Sims individually and on behalf of her now deceased Mother Edna Gleason is Plaintiff in *Sims v. PG and E et al* No.19CV01700 (Superior Court in and for Butte County) (hereinafter 'the *Sims* case')

Thomas and Jaydene Gardner are Plaintiff's in Gardner *v. PG and E et al*

No. 19CV00379 (Superior Court in and for Butte County)

In both these cases, Plaintiffs' counsel:

    1. Refused to participate in any fire-victim Plaintiff's cartel that purported to 'vote' for PG and E's plan of reorganization and

    2. Included in the respective Proof of Claims forms filed with the Fire Victim Trust Exhibits "2" and "3" attached hereto (and labelled Exhibit "A" included with the forms) which make it crystal clear to the Trustees of said trust and to defendant PG and E that Plaintiffs did not – and would not – waive any claims for punitive or exemplary damages under the theories advanced in their State Court Cases.

And the Trustee – with the oversight of PG and E – processes these claim forms *without objection thereto.*

(See, Declaration of Jane Luciano in Support of Plaintiffs' Objection)

> B. Plaintiffs Assert Three Different Statutory Bases Justifying an Award of Punitive Damages in Their State Court Cases

    1. Plaintiffs asserts that PG and E, over a period of decades, engaged in "oppression, fraud, and or malice" by failing to maintain its equipment and failing to mitigate fire dangers associated with vegetation proximate its equipment, in violation of California Civil Code 3294. Plaintiff asserts and will prove that a corporate culture—a sort of AI *mens rea,* if you will—of placing profits over rate payer safety is fraudulent *per se*. And it is no less fraudulent because it lurks beneath board room confidentiality clauses or attorney client privileges.

Plaintiffs will prove that failing to maintain equipment and mitigate fire danger in a community known by it as the habitation of low-income, elderly, retirees is oppressive. It is oppressive

because P G and E knew these rate payers *did not have the means, strength, or youthfulness to fight back.* Plaintiffs *can* and *will* prove that. And that such conduct is beyond "recklessness" or "gross negligence" and is "willful". And that the evidence of said "willfulness" is clear and convincing.

And that PG and E should therefore pay Plaintiffs a constitutionally sustainable amount of punitive damages.

    2   Plaintiff Liza Sims on behalf of her deceased Mother alleges that PG and E's conduct, above, constitutes 'financial abuse' in violation of California Welfare and Institutions Code Section 15610.30, which is exacerbated in violation of California Welfare and Institutions Code Section 15657.5 (b) as follows:

**(b)** Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, and where it is proven by clear and convincing evidence that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse, in addition to reasonable attorney's fees and costs set forth in subdivision (a), compensatory damages, and all other remedies otherwise provided by law, the limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply.

The Bankruptcy Court is asked to consider—carefully—the fact that the standard of proof is *not* clear and convincing evidence, as in California's general punitive damage statute—but *beyond a reasonable doubt.* Plaintiff Sims believes she can clear that hurdle in proving "willfulness."

    3.  Plaintiffs will ask a jury of their peers to conclude that PG and E violated Public Utilities Commission Code 2106 which provides as follows:

Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any, act, matter or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, *it may, in addition to*

*the actual damages, award exemplary damages. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any corporation or person.* (Emphasis added)

It is not particularly surprising to Plaintiff's counsel that it could not find a *single instance* where exemplary damages were awarded under this statute, against a California public utility. There is something wrong with this picture.

In enacting this statue, the California legislature must have imaged that in vesting a corporate entity with virtually unlimited power to use power as both a club and shield, some human being-or group of human beings—might have the subjective intent to use that power in a willful, malicious, fraudulent, or oppressive way. So, the Bankruptcy Could should ask itself—was the Wizard of Id Right? Is it true that in the Golden State "he who hath the gold maketh the rule?" Or is it more correct to say, with respect to PG and E: "it that has the lawyers, lobbyists, and golf interprets…or has the rules interpreted…to its benefit."

### III. LEGAL ARGUMENT

**A.** PG and E Offers No Authority or Structural Rationale for Inclusion of Plaintiffs' Punitive Damages Claims in the 'Channeling Injunction'

PG and E offers no rationale (moral, legal, spiritual, or from a Chapter 11 point of view, structural)-whatsoever for the imposition of the so called 'channeling injunction' upon Plaintiffs remaining claims.

In coming to this conclusion, Plaintiffs were constrained to study recent bankruptcy cases to Determine not only the etiology of this creature, but whether it might apply to their cases. See ANNUAL SURVEY OF BANKRUPTCY LAW, Part III, Recent Developments, Section 105 (a) of the Bankruptcy Code, by Malhar S. Pagay, Esq.

One thing is evident: **an appellate court, mindful of the restriction that section 105 (a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself.**

This weighty conclusion is drawn from a Third Circuit Court of Appeals decision dealing with a 'channeling injunction" arising from asbestos contamination mass tort litigations, to wit, *In re Combustion Engineering, Inc.,* 391 F. 3d 190, 236, 43 Bankr. Ct. Dec (CRR) 271, Bankr. L. rep (CCH) P 80206 (3rd Cir. 2004), as amended, (Feb. 23, 2005) (citation omitted).

So, it seems to this humble scribe that a "channeling injunction" cannot be used to grant—in essence—a summary judgment concluding the elements of Section 523 (a) (6) of the Bankruptcy Code are not met by these Plaintiffs. Though the 9th Circuit has yet to speak concerning the effects of the "channeling injunction" presently in effect in the PG and E fire cases, if we view its recent holding in *Fireman's Fund v. Plant Insulation Company* (citation not available: See, *American Bankruptcy Institute Journal,* ***9th Circuit Reverses 524 (g) Plan Confirmation*** by *Jacob C. Cohn[5]) and Jeffrey R. Waxman)*, we conclude that the 9th Circuit will be 'fair and equitable' to these Plaintiffs, as well, if the scope of the present injunction divests them of substantial rights. Wouldn't it be special if the 9th Circuit Court of appeals finally rejected plan confirmation?

**B. PG and E Was, Is and Potentially Will Be: "Willfully Blind."**

---

[5] One of Plaintiff's lawyers, who works in colder regions, is mystified by the proliferation of the word 'fire' in the present lexicography. For example, Mr. Cohn's firm owns a federal trademark asserting it has something called '**LEGAL FIRE POWER'**.
See, https://tmsearch.uspto.gov/bin/showfield?f=doc&state=4810:ig7dlv.2.1

"Willful blindness"[6] is a concept existing in the ether between "reckless conduct" and down and dirty *mens rea*. It is recognized by the Supreme Court in *Global Tech Appliance v. SEB,* 131 S. Ct. 2060 (2011). It can be defined as a corporation—through its officers and directors—knowing something terribly wrong continually transpires (such as decades long systems neglect and failure to remove vegetation which can easily ignite should those systems fail) and doing little- - or nothing about it.

Herewith is the citation to the Grand Jury Transcript in the Camp fire Investigation:

https://interactive.abc10.com/pdfs/KXTV_PGE_Grand_Jury_Binder.pdf

The Transcript would ordinarily be attached as Exhibit "4" to this Objection, but it is massive and must be referenced as noted. It is included in Plaintiffs' Request to Take Judicial Notice. This set of evidence is massive. But it has been analyzed by Plaintiff's Nevada counsel William D. McCann, Esq. in depth, and it proves that PG and E engaged in a "pattern and practice' of engaging in an anti-safety, pro-profits corporate culture, and shows "subjective intent" by continually changing board of directors to intentionally violate Public Utility Commission standards of safety and maintenance. (See, Declaration of William D. McCann, Esq. in Support of Objection attached hereto). The Grand Jury transcripts shows a decades-long "willful blindness" on behalf of PG and E. And "willful blindness", if found, prevents non-dischargability of a punitive damages award against PG and E.

/

/

---

[6] The doctrine of "willful blindness" imputes subjective knowledge of illegal activity to a defendant and is used in both civil and criminal proceedings as a substitute mental state that fully satisfies a required *mens rea* of knowledge. See infra notes 57-64 and accompanying text for an in-depth discussion of the willful blindness doctrine. Washington University Law Quarterly 71, page 1199.

## IV. 'PATTERN AND PRACTION OF WRONGDOING IS EVIDENCE OF WILLFULNESS

This Court is respectfully asked to review the precedent established in the chestnut case of *TXO Production Company v. Alliance Resources,* 131 S Ct 2060 (2011).[7] Basically, the Butte County Grand Jury Transcript, the status of PG and E as a probationer before the Federal Court for the Norther District of California prior to the Tubbs, Camp, and Dixie fires, shows a pattern and practice of wrongdoing (whether civil culpability for the respective fires is admitted, or not) which is evidence*, per se – of willfulness.*

## V. INCLUDING PLAITNIFFS' PUNITIVE DAMAGES CLAIM IN THE 'CHANNELING INJUNCTION' IS DE-FACTO- -AND IMPERMISSIBLE— GRANT OF SUMMARY JUDGMENT

Liza Sims and the Gardners are entitled to prove 'willfulness.' The California Appeals decision in footnote 1 supra, overturned by writ the Butte County Superior Court's overruling of a demurrer filed by PG and E against a potential award of punitive damages. But that ruling concerned a *different* fire than Camp, excluded from its effect claims for punitive damages, pursuant to Public Utilities Code Section 2106, and was limited in its effect to a 'clear and convincing' standard of proof, not the 'preponderance of evidence' standard accorded elders who have suffered the type of abuse for which PG and E is liable.

California Code of Civil Procedure 437c, Federal Rule of Civil Procedure 56, and Bankruptcy Rule 7056 have been interpreted --- uniformly-- to require denial of summary judgment where the opponent raises a material issue of fact.

---

[7] For the millennials reading this brief, one used to refer to an 'older' case as a 'chestnut-- - i.e., a precedent that should be preserved, or perhaps, resurrected in a hope chest.

"Willfulness" –-or lack thereof – has *never* been adjudicated with respect to PG and E's acts and omissions relative to the Camp fire. The 9th Circuit panel in *in re Nancy Shao Su,* cited *supra,* Was apparently of the view that a corporation is not capable of "subject" intent, and, if that is so, then punitive damages, as we know them, are dead in the water. But if AI fiendish thingies are capable of "subjective" intent as argued in *The London Economist* (April 22nd-28th 2003), aren't boards of directors?

Respectfully. Plaintiffs deserve and herewith solicit their day in court on the issue of punitive damages.

May 9, 2023

                                                          /s/William D. McCann/s/
                                                          William D. McCann

                                                          /s/Jane Lujciano/s/
                                                             Jane Luciano

                                                          Attorneys for Plaintiffs and Claimants
                                                          Liza Sims, Edna Gleason and Thomas
                                                          And Jaydene Gardner