JOHNNY D. KNADLER (SBN 220942)
LAW OFFICE OF JOHNNY D. KNADLER
280 Summergrove Cir.
Roseville, CA 95678
Telephone: (310) 564-6695
Email: SPM.PGE@gmail.com

Attorney for Creditor

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **In re:**<br><br>    **PG&E Corporation,**<br><br>    **- and –**<br><br>    **Pacific Gas and Electric Company**<br><br>    Debtor | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>Judge: Hon. Dennis Montali<br>Date: May 24, 2023<br>Time: 10:00 a.m.<br>Courtroom: (Tele/Videoconf. Appearance)<br>    United States Bankruptcy Court<br>    Courtroom 17, 16th Floor<br>    San Francisco, CA 94102 |

**OPPOSITION TO OBJECTION TO CLAIM – SYNERGY PROJECT MANAGEMENT, INC. (POC #368) (ONE HUNDRED TWENTIETH OMNIBUS OBJECTION TO CLAIMS – NO LIABILITY CLAIMS )**

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE:**

Synergy Project Management, Inc. ("SPM"), a creditor of the debtor and reorganized debtor Pacific Gas and Electric Company ("PG&E"), hereby opposes ("Opposition") PG&E's ONE HUNDRED TWENTIETH OMNIBUS OBJECTION TO CLAIMS – NO LIABILITY CLAIMS ("Objection") filed in the above case. The Opposition is supported by the DECLARATION OF JAVAD MIRSAIDI IN SUPPORT OF OPPOSITION TO OBJECTION TO CLAIM – SYNERGY PROJECT MANAGEMENT, INC. (POC #368) ("Mirsaidi Declaration") filed concurrently herewith.

### I.    Concise Statement

1.    SPM's claims are derived from its subcontractor job on a City and County of San

Case: 19-30088    Doc# 13719    Filed: 05/10/23    Entered: 05/10/23 14:28:46    Page 1 of 10

Francisco ("City") project doing excavation work. SPM struck 5 PG&E lines in 2015. SPM believed PG&E's lines were improperly buried while PG&E blamed SPM for the accidents. The City terminated SPM's contract based on those strikes. In May 2017, PG&E denied SPM's claim for compensation while SPM filed suit against the City. Around June 2019, the City turned over evidence indicating that PG&E knew that SPM was not at fault on those strikes. SPM filed a timely proof of claim for $5,697,441.76, with $337,441.76 associated directly with the strikes and $5,360,000 in consequential damages related to PG&E's fraudulent actions.

2.  PG&E asserts that SPM has no claim as its liability is solely limited to fraud and statutory violations relating to SPM's subcontractor job on a City and County of San Francisco ("City") project doing excavation work, which presumably started in 2015, and that SPM needs to plead with greater specificity for fraud charges to toll until 2018. An amended proof of claim is filed concurrently with this Opposition setting forth in greater detail the causes of actions, with the amount of the claim remaining the same[1].

3.  SPM's claims are timely for various reasons. While the strikes did occur in 2015, many of the causes of action did not arise until no earlier than May 2017 when PG&E formally denied SPM's claims, if not later. First, PG&E's actions would be timely as a breach of contract between PG&E and the City that SPM can enforce as a third-party beneficiary. Second, SPM was not on notice of PG&E's fraudulent conduct until 2019 when the City turned over evidence of PG&E's deceit. Finally, to the extent 2015 was indeed the starting point, SPM had three years to identify and serve any Doe defendants in its 2017 lawsuit against the City. SPM could have amended the complaint to include PG&E, but PG&E's bankruptcy stayed such action, and SPM opted to resolve matters through the claims process instead. In each instance, the applicable statute of limitations had not run prior to the petition date.

## II. Background

### A. PG&E's Obligations to Stakeholders as a Utility.

4.  The City and PG&E have had a long history of working together given PG&E's status as a utility provider. As a result, multiple agreements, local ordinances, and state

---

[1] PG&E did not dispute the amount itself. To the extent PG&E has reserved the right to file further objections, SPM similarly reserves the right to provide further clarifications.

regulations have existed that regulated PG&E's conduct as a utility.

5.     In December 1939, the City's Board of Supervisors approved Ordinance No. 413, which granted PG&E its rights to install gas lines as a utility ("<u>Franchise Agreement</u>").  A copy of the Franchise Agreement is attached as **Exhibit "A"** to the Mirsaidi Declaration.  Pursuant to Section 7, "The grantee shall (a) construct, install and maintain all pipes and appurtenances in conformity with all the lawful ordinances, rules and regulations heretofore or hereafter adopted by the Board of Supervisors, or other legislative body of the city, in the exercise of the police powers of the city."

6.     Government Code 4216 establishes the 811 protocol where excavators are required to contact utilities prior to digging.  Utilities are to mark their facilities and excavators are to work around them.  This generally sets forth requirements for how accurate the utility markings have to be to allow excavators to find said utilities.  Failure to comply would result in liability to the other party.  Related to this, Order No. 176,707 issued by the City covers "Regulations for Excavating and Restoring Streets in San Francisco."  This generally sets forth the code requirements for underground utilities (i.e., markings and how far deep it needs to be).[2]

7.     Given the numerous underground utilities installed by various utilities throughout the decades, the City has entered into multiple Support and Work-Around Agreements to address how the City and its contractors are to treat encounters with various crossings and the mitigation or relocation of such lines.  In addition, section 909 of the City's Public Works Code provides that the Director may enter into an agreement with a utility to cover public works projects.[3]

**B.    <u>Factual Allegations Regarding the Haight Project Itself.</u>**

8.     In 2015, SPM was a subcontractor of Ghilotti Brothers, Inc. to the PAVEMENT RENOVATION, SEWER REPLACEMENT, AND WATER MAIN INSTALLATION – HAIGHT STREET AND HAYES STREET project ("<u>Haight Project</u>") issued by the City.  Pursuant to General Condition

---

[2] PG&E does not dispute the factual circumstances of the strikes at this time.
[3] Section 909 reads in relevant part:  "(a) The Director, with the approval of the City Administrator, may enter into an agreement with the owner or operator of any utility facility which may require support, protection and working around in order to successfully prosecute the construction of public work, to have any such support, protection and working around including as a part of a contract for public work. The cost of any such support, protection and working around a utility facility shall be borne by the owner or operator thereof."  It is unclear whether such an agreement was actually signed and would be subject to discovery.

Case: 19-30088   Doc# 13719   Filed: 05/10/23   Entered: 05/10/23 14:28:46   Page 3 of 10

4.02 on Subcontractual Relations, all subcontractors are bound by the Project Manual. A true and correct copy of Volume 1 of the Haight Project is attached as **Exhibit "B"** to the Mirsaidi Declaration.

9.     The Haight Project itself has numerous provisions regarding underground utilities. Section 00 73 20 covers "Existing Utility Facilities" and any special requirements for utilities encountered by contractors while performing the work.  Subsection 1.1.B explicitly states "The Utility Crossings Specifications is based on agreements with non-governmental agencies for removal, support and relocation of privately-owned utility facilities."  Meanwhile, Subsection D states, "For Work which physically conflicts with existing non-City owned utilities that were not indicated in the Contract Documents, the Contractor shall seek reimbursement for additional cost incurred from the non-City Utility Operator."  Second, Section 00 73 21 covers "Support, Work Around, and Protect Existing Utility Company Facilities-General Specifications."  To the extent a workaround would have been required, this section would have governed the applicable reimbursement rates and reimbursements.

10.     PG&E was required to mark and bury all of its underground gas lines in accordance with regulations so that contractors would avoid striking its lines.  PG&E failed to do so.  SPM struck five PG&E lines which disrupted construction and local businesses.  Due to the number of strikes, the City had SPM removed from the Haight Project.  PG&E denied all wrongdoing and blamed SPM for all of the strikes.  On May 9, 2017, PG&E denied all of SPM's claims for costs incurred due to the strikes. Copies of the denied claims are attached as **Exhibit "C"** to the Mirsaidi Declaration.  SPM requested an explanation and received none.

11.     On July 10, 2017, SPM filed suit in San Francisco Superior Court, case CGC-17-560034, against the City and DOES 1-10 for various torts relating to being wrongfully removed from the Haight Project and being effectively barred from future work.   A copy of the lawsuit is attached as **Exhibit "D"** to the Mirsaidi Declaration. After SPM amended its complaint to add federal claims, the City had the claim removed to federal court around November 27, 2017.

12.     In 2019, SPM received from the City several reports on the Haight Project.  This was after years of protracted delays in the production of documents.  However, the information

regarding PG&E's knowledge was concerning.  For example, in the August 27, 2015 strike, SPM crews were removing the surface asphalt when they struck a gas line that was located about 11 inches from the surface, while the asphalt itself was about 10 inches thick.  This was inconsistent with regulations that require underground utilities to be buried at least 24 inches from the surface, which made striking the surface unavoidable.  However, evidence showed PG&E's own assessment that "The damaged gas line was determined to be approximately 8-9 inches deep." In an email dated September 1, 2015, the City assessed the situation as "PG&E representatives have confirmed the shallow installation of their gas line and are not holding the contractor responsible for this incident."  Evidence of the August 27 strike are attached as **Exhibit "E"** to the Mirsaidi Declaration.  Nonetheless, PG&E had denied SPM's claim on May 9, 2017.  PG&E and the City jointly concealed evidence that would have exonerated SPM's work on the Haight Project, denied SPM any compensation, and allowed SPM's business to be ruined as a city contractor. Until that evidence was turned over, SPM did not have any hard evidence of PG&E's deceitful conduct.

### C.  The CPUC Investigated PG&E's Locate and Mark Program.

13.  Prior to the City turning over evidence, SPM's only other hint of fraudulent conduct was from the California Public Utilities Commission ("CPUC")'s ORDER INSTITUTING INVESTIGATION AND ORDER TO SHOW CAUSE ON THE COMMISSION'S OWN MOTION INTO THE OPERATIONS AND PRACTICES OF PACIFIC GAS AND ELECTRIC COMPANY WITH RESPECT TO LOCATE AND MARK PRACTICES AND RELATED MATTERS (I.18-12-007) ("OII") in December 2018.  The crux of the investigation was whether or not PG&E's locate and mark program of natural gas facilities violated various legal requirements.  This was based on a report from the CPUC's Safety and Enforcement Division's report of various violations.  However, that was primarily focused on the submission of tickets related to the Locate and Mark program and not the actual investigations themselves.  In 2020, the CPUC adopted D.20-02-36, where the parties settled and agreed as part of the findings of fact: "4. PG&E's top management was often unaware of problems with PG&E's Locate and Mark program, even though PG&E staff was aware of the problems. 5. Even when it became aware of problems with its Locate and Mark

OPPOSITION TO OBJECTION TO CLAIM – SYNERGY PROJECT MANAGEMENT, INC. (POC #368) (120TH OMNIBUS OBJ)

program, PG&E's top management failed to resolve the problems." This Court approved the settlement on April 24, 2020, docket entry 6932.

### III. Argument

14. The Debtor asserts that the applicable statute of limitations ran as of 2018. However, SPM has multiple theories for liability that accrue at various points in time. If any one of them can be sustained, then all of the remaining objections by PG&E on no-liability are moot.

#### A. The Amended Proof of Claim Should be Allowed.

15. Federal Rules of Bankruptcy Procedure ("Rule") 3001 and 3002 generally govern the filing of a Proof of Claim. Following the claims bar date, amendments are generally permitted to cure defects, describe a claim with greater specificity, or plead a new theory of recovery on facts set out in the original proof. *See* 9 COLLIER ON BANKRUPTCY ¶ 3001.04[1] (Richard Levin & Henry J. Sommer eds., 16th ed.).

16. SPM is concurrently filing an amended claim to provide additional details for the timeliness of its claim. SPM is not changing the amount of its claim at this time as PG&E objected on an absolute no-liability basis. Given the foregoing, PG&E would not be prejudiced by such a filing, and SPM should be allowed to file its amended claim.

#### B. Damages Associated with the Haight Project Are Also Governed by Contract and Has a Four Year Statute of Limitations.

17. Under California law, breach of a written contract has a statute of limitations of four years. Cal. Civ. Proc. Code § 337(a). Breach of a written contract can be made by a third-party beneficiary. The applicable law on third-party beneficiary doctrine is:

> an individual or entity that is not a party to a contract—may bring a breach of contract action against a party to a contract only if the third party establishes not only (1) that it is likely to benefit from the contract, but also (2) that a motivating purpose of the contracting parties is to provide a benefit to the third party, and further (3) that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.

Goonewardene v. ADP, LLC, 6 Cal.5th 817, 821 (2019)

OPPOSITION TO OBJECTION TO CLAIM – SYNERGY PROJECT MANAGEMENT, INC. (POC #368) (120TH OMNIBUS OBJ)

18. SPM believes the Franchise Agreement constitutes a written contract between the City and PG&E and that SPM can assert breach of contract as a third-party beneficiary. First, a contract exists between the City and PG&E with the Franchise Agreement. *See e.g.,* Complaint at 5:25-26, City and County of San Francisco v. Pacific Gas & Electric Company, Case No. CGC-17-561957 (S.F. Sup. Ct. 2017) ("The Franchise is an enforceable contract under California law and governs PG&E's Gas Line Relocation Project."); Complaint at 2:16, City and County of San Francisco v. Pacific Gas & Electric Company, Case No. CGC-03-969377 (S.F. Sup. Ct. 2003) ("The Franchises are binding contracts in perpetuity between the City and PG&E.").

19. Second, all three *Goonewardene* elements can be established with the Franchise Agreement. The first element is established as the City clearly acted with the intent of benefiting the people of San Francisco. This agreement established PG&E as the provider of gas to the populace at large, provided PG&E adhered to any requirements required by the City. The second element is established along similar lines as the first element. PG&E saw the populace as its intended market, and the City wanted gas supplied safely and economically. The final element is consistent with the Franchise Agreement. As set forth in Section 7 of the Franchise Agreement, PG&E had to install and maintain its pipes in accordance with City ordinances. If PG&E failed to maintain its lines and someone was injured, PG&E could be liable under multiple theories, through tort and in breach of contract.

20. The Franchise Agreement was enforceable in the Haight Project through the Project Manual. Per Project Manual Section 00 73 20, subsection D, "For Work which physically conflicts with existing non-City owned utilities that were not indicated in the Contract Documents, the Contractor shall seek reimbursement for additional cost incurred from the non-City Utility Operator." Mirsaidi Dec., Exh. A, at p.172 (00 72 00-2).

21. Although the strikes occurred in 2015, the actual breach of contact occurred in May 2017 when PG&E denied SPM's claims for reimbursement. Had PG&E paid SPM in 2017, no breach would have occurred since SPM would have been "reimbursed." That was not the

Case: 19-30088    Doc# 13719    Filed: 05/10/23    Entered: 05/10/23 14:28:46    Page 7
of 10

case. Since the May 2017 denials were within two years[4] of the bankruptcy, SPM's claims were timely as of the petition date and thus had a valid proof of claim insofar as the statute of limitations are concerned.

### C. PG&E's Fraudulent Conduct Would Not Have Been Reasonably Discovered Prior to 2018.

22. PG&E argues that SPM does not make any showing that SPM had not been negligent in failing to make discovery sooner nor had it actual or presumptive knowledge of facts sufficient to put it on inquiry. SPM could not have reasonably known prior to January 2016.

23. Under California law, the limitations period for fraud is three years after discovery of the facts constituting the fraud or mistake. *See* Cal. Civ. Proc. Code § 338(d) ("Within three years: An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."). Under no set of circumstances would SPM have discovered the fraud prior to January 29, 2016, three years preceding PG&E's bankruptcy.

24. First, the strikes occurred in 2015, and PG&E did not deny SPM's claims until 2017. At that point, PG&E stated that they reviewed the claim and found no liability although they never showed their evidence. That in and of itself is not fraudulent but that was the first instance of apparent damages (i.e., PG&E would not make SPM whole). Before the denial, SPM had absolutely no reason to believe the matter could not have been resolved.

25. Second, SPM cited 2018 as another opportunity to be knowledgeable based on the CPUC's announcement that it had an OII related to PG&E's locate and mark program. That put SPM on *some* knowledge that PG&E's conduct might be questionable. However, as determined in the CPUC's final settlement with PG&E, the CPUC was primarily concerned with the timing and falsification of date stamps associated with the locate and mark program, not necessarily whether PG&E was being dishonest with contractors as it related to their utility crossings. The CPUC decision ultimately bears this out as findings 4 and 5 only indirectly indicate broader

---

[4] To the extent the agreement between the City and PG&E was something other than the Franchise Agreement or any other written agreement, the statute of limitations for breach of an oral contract is two years. Cal. Civ. Proc. Code § 339(1). SPM's claim would still be timely and within 2 years of the petition date with the May 2017 denial.

Case: 19-30088    Doc# 13719    Filed: 05/10/23    Entered: 05/10/23 14:28:46    Page 8 of 10

issues with the locate and mark program.

26.    Finally, SPM had been in litigation against the City since July 2017 that wound its way through state and federal court.  Only until June 2019 did San Francisco produced enough information[5] to SPM indicating that PG&E misled SPM about the strikes.  This is where SPM believes it had actual or constructive knowledge of PG&E's fraud.

27.    In each of the above scenarios, SPM was not aware of PG&E's fraudulent conduct until well after February 2016.  PG&E conversely would have to show SPM was on notice for fraud prior to February 2016, even though SPM had not even submitted its claim yet to PG&E for reimbursement.

### D.    California Law Would Have Permitted SPM to Amend Its 2017 Lawsuit to Include PG&E.

28.    California Code of Civil Procedure section 474 provides that "When the plaintiff is ignorant of the name of a defendant … and when his true name is discovered, the pleading or proceeding must be amended accordingly…."  Related to that is Code of Civil Procedure 583.210, which provides that the summons and complaint must be served within three years after the action is commenced against the defendant.

29.    The two sections combined have the operative effect under California law of allowing plaintiffs an additional three years after filing a complaint to substitute the defendant's true name, and the substituted defendant "is considered a party to the action from its commencement so that the statute of limitations stops running as of the date of the earlier pleading."  Austin v. Massachusetts Bonding & Ins. Co., 56 Cal.2d 596, 599 (1961).  The *Austin* court noted that the rule for relating back is "dependent upon whether recovery is sought on the same general set of facts as those alleged in the original complaint."  Id. at 601.

30.    SPM filed its suit against the City in July 2017 and had an additional three years to name additional defendants.  PG&E's misconduct was not revealed until 2019 when the City turned over its documents.  This included what appeared to essentially be admissions that

---

[5] The scheduling order in federal court did not allow for discovery until 2019.  Even then the City delayed its responses. Ultimately, SPM had to do a public records request for some of the information that the City ultimately turned over.

PG&E's buried lines were not in compliance with local ordinances. Ordinarily, SPM could have amended its lawsuit against the City to include PG&E and allege amongst other things, PG&E's statutory violations when the lines were originally buried. However PG&E had filed for bankruptcy by that time and was protected by the automatic stay. Seeking relief to amend would not make sense when bankruptcy had its own claims process. Instead, SPM instead submitted a proof of claim in the case as its rights would be preserved in this case.

31. Finally, seeking relief to add PG&E does make sense given California's strong policy favoring the tolling of any statute of limitations while an action is pending in another forum. Rumberg v. Weber Aircraft Corp., 424 F.Supp. 294, 299 (C.D. Cal. 1976) (citing Bollinger v. Nat'l Fire Ins. Co. of Hartford, Conn., 25 Cal.2d 399 (1944); Elkins v. Derby, 12 Cal.3d 410 (1974); Schneider v. Schimmels, 256 Cal.App.2d 366 (1968)). California courts would likely toll any requirement during the pendency of the bankruptcy and claims resolution process.

## Conclusion

32. For the foregoing reasons, PG&E's Objection as written is without merit and SPM requests a hearing for this claim to be set for discovery and eventual trial.

Dated this 10th day of May, 2023

**LAW OFFICE OF JOHNNY D. KNADLER,**
Counsel for Synergy Project Management, Inc.

/s/ Johnny D. Knadler_____ _____
Johnny D. Knadler