1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4   In Re:                        ) Case No. 19-30088
                                  ) Chapter 11
5   PG&E CORPORATION AND PACIFIC  )
    GAS AND ELECTRIC COMPANY      ) San Francisco, California
6                                 ) Tuesday, May 9, 2023
              Reorganized Debtors. ) 10:00 AM
7   _____ )
                                    MOTION FOR PARTIAL SUMMARY
8                                   JUDGMENT OF ISSUES IN
                                    REORGANIZED DEBTORS OBJECTION
9                                   TO CLAIM 2090 AND CLAIMANT'S
                                    RESPONSE THERETO FILED BY
10                                  INTERESTED PARTY AMIR
                                    SHAHMIRZA (13478)
11
                                    PG&E'S OPPOSITION TO MOTION
12                                  FOR PARTIAL SUMMARY JUDGMENT
                                    AND COUNTER-MOTION FOR
13                                  SUMMARY JUDGMENT; MEMORANDUM
                                    OF POINTS AND AUTHORITIES
14                                  [13567]

15              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DENNIS MONTALI
16             UNITED STATES BANKRUPTCY JUDGE

17  APPEARANCES (All present by video or telephone):
    For the Reorganized        STEVEN A. LAMB, ESQ.
18  Debtors:                   Rovens Lamb LLP
                                2601 Airport Drive
19                             Suite 370
                               Torrance, CA 90505
20
                               THOMAS B. RUPP, ESQ.
21                             Keller Benvenutti Kim LLP
                               650 California Street
22                             Suite 1900
                               San Francisco, CA 94108
23

24

25  For Amir Shahmirza, Komir, LAWRENCE A. JACOBSON, ESQ.

**eScribers, LLC**

```
1  Inc.:                    Cohen and Jacobson, LLP
                             66 Bovet Road
2                            Suite 285
                             San Mateo, CA 94402
3

4

5

6

7
   B
8

9

10

11

12

13

14

15

16

17
   Court Recorder:          LORENA PARADA/ANKEY THOMAS
18                          United States Bankruptcy Court
                             450 Golden Gate Avenue
19                          San Francisco, CA 94102

20
   Transcriber:             MICHAEL DRAKE
21                          eScribers, LLC
                             7227 N. 16th Street
22                          Suite #207
                             Phoenix, AZ 85020
23                          (800) 257-0885

24  Proceedings recorded by electronic sound recording;
    transcript provided by transcription service.
25
```

**eScribers, LLC**

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, MAY 9, 2023, 10:00 AM

2                          -oOo-

3      (Call to order of the Court.)

4          THE CLERK:  Calling the matter of PG&E Corporation.

5          THE COURT:  All right.  Appearances.  Start with Mr.

6    Jacobson.  Mr. Jacobson, we need a mic and a camera from you.

7          While we're waiting, let's get the appearances from

8    Mr. Rupp and Mr. Lamb.

9          MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

10   Keller Benvenutti Kim on behalf of the reorganized debtors.

11         THE COURT:  All right.

12         MR. LAMB:  Good morning, Your Honor.  Steve Lamb, on

13   behalf of the reorganized debtors.

14         THE COURT:  Thank you.  Good morning, Mr. Lamb.

15         Mr. Jacobson, you with us now?

16         MR. JACOBSON:  I hope so.  Good morning, Your Honor.

17   Lawrence Jacobson, appearing for the claimant Komir, Inc., the

18   property owner.

19         THE COURT:  Okay.  You're going to go first.  I

20   presume you want to reserve some time.

21         MR. JACOBSON:  I do.

22         THE COURT:  How much?  How much time do you want to

23   reserve?

24         MR. JACOBSON:  Twenty minutes.

25         THE COURT:  Reserve twenty?

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 3
of 51

1    MR. JACOBSON:  Yes.

2    THE COURT:  Okay.  So I have a question or two for the

3    preliminary for you then.  We won't start the clock running.

4    Maybe this is buried in the volumes of stuff that you've

5    presented, but they are missing one fact.  The lawsuit that was

6    originally filed in Superior Court back in the '70s named a lot

7    of defendants.  But the ultimate judgment only names the City.

8    And what happened so that other defendants including PG&E?

9    Where did they go and why -- why are they bound or not bound by

10   that judgment?

11   MR. JACOBSON:  Well, I don't know the disposition as

12   to all the individual parties, but everyone is bound because

13   it's an in rem proceeding.

14   THE COURT:  Well, I understand that, but they were ==

15   PG&E and others were all defendants.  And usually when there's

16   a judgment that concludes a matter of, you dispose of

17   defendants.  You don't know specifically beyond that?

18   MR. JACOBSON:  I do not.  I have examined the entire

19   file, the thousands of pages.  The judgment and order pertain

20   to PG&E to the extent that they are discussed in it.  So --

21   THE COURT:  No.  I agree.  I understand that.  I got

22   that.  You answered my question.

23   The other question I have is you got the tentative

24   ruling I issued.  If I were to stick with that tentative, then

25   if I interpret your position correctly, your position would be

1    that you're entitled to partial summary judgment, and that

2    disposes of the -- sort of the easements going back to the --

3    really before the judgment and that's where we ended up, since

4    you didn't make a motion for partial -- I mean, you didn't make

5    a summary judgment on the merits, you would believe that where

6    we're still at issue is where the fact questions about whether

7    the events of 2018 are actionable or -- and/or whether -- or

8    whether PG&E has a legitimate prescriptive easement on the

9    property.  Is that fair statement?

10         MR. JACOBSON:  That is correct.  And all of those

11   latter issues are subject to the factual decision.

12         THE COURT:  Right.  Okay.  Okay.

13         MR. JACOBSON:  Yes.

14         THE COURT:  Go ahead.  Those are my only preliminary

15   questions.  And Mr. Lamb, if you wish to respond to them when

16   it's your turn, please feel free to.  But Mr. Jacobson, go

17   ahead and take your ten minutes.  And I'll try to listen and

18   not interrupt.

19         MR. JACOBSON:  Thank you.  Well, interrupt as you

20   choose.  That's usually productive.

21         I start with ten minutes because I want to focus on

22   what is the single sole critical dispositive issue.  The

23   claimant's motion for summary judgment focuses on simply one

24   point:  that the judgment of condemnation and the order of

25   condemnation extinguish all prior interest in the property.

1  Nothing else in any of the pleadings that have been filed
2  relates to that issue.  That is the dispositive issue on the
3  motion that was filed.
4          THE COURT:  So even though there are public easements
5  of record, the public record is overridden by the finality of
6  the judgment?
7          MR. JACOBSON:  Correct.
8          THE COURT:  So but I mean, if we put the -- if we put
9  the public record next to the judgment, they're inconsistent.
10          MR. JACOBSON:  No, because the summary because the
11  judgment and the order of condemnation as a legal matter
12  extinguish and obliterate all those --
13          THE COURT:  No, I understand.  I understand.  But Mr.
14  Jacobson, if I had a deed of trust on your house and you paid
15  off the loan and we didn't get around to reconveying it, you
16  and I, between the two of us, we would know that I don't have a
17  lien on your house, but the public record would show that I
18  have a lien on your house.  So the public record, at least in
19  that recorder's office, shows something that that looks like an
20  easement even though the public record and the finale finality
21  of the superior court judgment abolishes it.
22          MR. JACOBSON:  Correct.
23          THE COURT:  Okay.
24          MR. JACOBSON:  The public record also reflects a
25  subsequent later judgment and order of condemnation.  That

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 6
of 51

1 eliminates the inconsistency.

2 THE COURT: Okay. I didn't remember that the -- I

3 mean, I should have known, but I didn't remember that the

4 superior court judgment was itself recorded. But I -- of

5 course, the record reflects that.

6 MR. JACOBSON: So the legal analysis that deals

7 specifically with the critical issues is in Komir's points and

8 authorities, page 12, line 1 to page 14, line 14, there are

9 three pages of detailed analysis of the Civil Code statute, the

10 1945 Law Review article, and a series of Supreme Court and

11 Ninth Circuit cases that deal with these issues. And I'll

12 identify them in a moment.

13 The opposition to those -- to that legal analysis,

14 such as it is or isn't, is in PG&E's opposition at page 3, line

15 24, to page 4, line 24.

16 So the points in authorities by Komir establish the

17 following: First, the condemnation case action is an in rem

18 proceeding. It's against the property. It is not against

19 persons or interests in property. And you can look at the

20 Duckett case at the United States Supreme Court, the Wisconsin

21 Law Review article, the Buckhart Ninth Circuit case, and the

22 U.S. versus 32.42 Night Acres, Ninth Circuit case, all stand

23 for that proposition.

24 Second, the condemnation establishes a new title.

25 This isn't an old title cleaned up or modified. It is a new

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 7
of 51

1  title where the condemning agency acquires title in fee simple

2  unless otherwise specified. As to parcel 2, the judgment in

3  the order define as to parcel 2 where the Komir property is

4  located, that it is taken in fee simple.

5          Third, with respect to any prior interests of record,

6  the point that you were raising a moment ago, the order -- the

7  judgment and order of condemnation and the language of the

8  cases, the area I've indicated states that those interests are

9  obliterated and extinguished as a matter of law. The prior

10 interests simply do not anymore exist because there is a new

11 title in fee simple that obliterates and extinguishes all of

12 those interests.

13         Finally, the fourth critical point is this. There is

14 a case that dealt with the circumstance of a condemning agency,

15 condemning in fee simple and then transferring to a third

16 party. So someone came into that case and said, well, you as

17 the condemning agency, took fee simple for a public purpose,

18 but then you sold it to someone else. So now that prior

19 interest reemerges, it springs back into interest.

20         And that is the Linda Vista Homeowners Association v.

21 Telecott Investors case. It's a 2015 California Court of

22 Appeal case. It's discussed in the section of the brief I

23 mentioned. And it says explicitly there is no quiescent

24 status. There is no reservation. It does not spring into

25 existence. Once the judgment and order of condemnation has

1 been made and recorded, all prior interest are gone, period.

2    Judge, that is the interest -- that's the issue before

3 the Court. If you look at PG&E's opposition, there's not one

4 case cited. They did not refer to the civil code statute.

5 They did not refer to the Law Review article. They did not

6 refer to the Supreme Court cases. They did not refer to the

7 Ninth Circuit cases. They referred to nothing. So there is no

8 legal support to the contrary.

9    So what is before you is one issue with the case law

10 in statute establishing that the interest are extinguished a

11 record. So we end up in the circumstance that you were

12 mentioning at the beginning. There are no recorded -- no

13 interest arising from prior recorded documents. 1901, 1910,

14 1923, whatever they are, they're gone. So the remainder of

15 this case will focus on the other issues. But for this motion

16 for summary judgment, there are no longer any prior easements

17 in favor of PG&E.

18    THE COURT: Partial -- what was partial summary

19 judgment.

20    MR. JACOBSON: Correct.

21    THE COURT: Partial. Yeah. Okay. No, I got it.

22    MR. JACOBSON: That's my opening.

23    THE COURT: Okay. Mr. Lamb, I presume you're taking

24 the lead here.

25    MR. LAMB: Thank you, Your Honor. And we'd like to be

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 9
of 51

1   able to reserve ten minutes in rebuttal if possible.  I think

2   twenty minutes will cover it.

3           And the first thing that I want to point out, Your

4   Honor, is that we agree in relation to the tentative ruling it

5   relates to the issues that involve the prescriptive easement

6   issue, what I would view as a potential defense, statutes of

7   limitation and potentially damages.  I think those would be the

8   issues that would be remaining on the board if the Court were

9   to retain the tentative as it stands.

10          Obviously, we would argue that the tender shouldn't

11  stand for the following reasons.  First of all, I will concede

12  to you that this is a complicated issue.  I think it's clear,

13  but it's not complicated.

14          And counsel has referred to the Linda Vista case.

15  That case is that an easement case.  But this is not a point

16  where we need to quibble over the law because the law of

17  condemnation is not the issue.  The issue is what is the scope

18  of the judgment?  Because I would we all would agree, including

19  counsel for Shahmirza, that a judgment cannot confer more than

20  the initial complaint relates to.  That is the fundamental

21  problem, Your Honor, because if you look --

22          THE COURT:  Well, but hold on.  Is that true?  Have

23  you challenged the judgment?  I mean, I agree with you as a

24  matter of principle.  A court can't enter a judgment that's

25  more than it's asked for.  But if the judgment becomes final,

1    it isn't challenged, can it be attacked collaterally?  And you

2    haven't really attracted collaterally, have you?

3          MR. LAMB:  I don't think it's attacked collaterally.

4    It's pursuant to the judgment.  And I'll explain this further

5    because it relates back to other matters.  It's in fee simple

6    with no easements or restrictions.  And that would be

7    inconsistent with what the state and Caltrans has done after

8    that.  But if you look at the 1974 complaint that was filed by

9    the State of California against the City and County of San

10   Francisco, this was to condemn the property.  And it names PG&E

11   as a defendant only as to parcels 5A and 5B for an interest in

12   a right of way.  And that is docket number 13478-6 at page 31.

13   Parcel 2, the only interests listed for parcel 2, which

14   includes the Komir property is large -- excuse me, parcel 2 is

15   larger than just the Komir property, but the Komir property is

16   consumed within parcel 2.  The only interest listed for parcel

17   2 are the city and county of San Francisco.  Those are the

18   owner, the USA as a lessee, and the county of San Mateo for

19   taxes and assessment.  And that's at docket 13478-6, page 30.

20   So PG&E is not listed on parcel 2.  And that means that the

21   complaint filed by the State that refers back to the judgment

22   has no effect and isn't relating to any easements held by PG&E

23   on parcel 2?

24         THE COURT:  Well, where do we get some authority to

25   say that if you're a defendant, that you then can ignore

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 11
of 51

1  something that's in the specifics that refers to a parcel --

2  one parcel but not another?  I mean, doesn't -- isn't that

3  something that should have been raised and could have been

4  raised that wasn't raised?

5           MR. LAMB:  No.  The complaint --

6           THE COURT:  I understand that the complaint --

7           MR. LAMB:  -- is not --

8           THE COURT:  The complaint is what it is.

9           MR. LAMB:  Right.

10          THE COURT:  And you might have a more persuasive

11  argument if PG&E has never been brought into the suit, but it

12  was in the suit.  So what I'm getting at is what authority do

13  you have that says PG&E is only in there regarding parcels 5A

14  and B?  They're in there --

15          MR. LAMB:  Because that --

16          THE COURT:  -- as a defendant.

17          MR. LAMB:  Because, Your Honor, that's what the

18  complaint says.  The complaint says that this this particular

19  and it relates to the specific parcels.  And if you look at

20  this, you can see that for example with parcels 3A -- and

21  that's on 13478-6, and it's on page 30, there's a reference to

22  the San Francisco Bridge Company for an easement.  That relates

23  to parcels 3A, 3B, 3C.  So the way this complaint was set up

24  and the way the judgment was set up was specifically as to the

25  defendants or the property to the extent it's listed in the

1   complaint.

2           THE COURT:  So but, Mr. Lamb, what you want me to do

3   is to say, even though PG&E is a defendant and even though the

4   judgment was final forty years ago, that the language in the

5   judgment that would have cleared -- that clears parcel 2

6   doesn't bind your client because they weren't identifying with

7   parcel 2 in the original complaint.  That's your argument?

8           MR. LAMB:  It wasn't, Your Honor, that they weren't

9   identifying parcel 2.  They specifically decided they were only

10  asking for whatever rights --

11          THE COURT:  I understand.  But did you make this

12  argument in your briefs?

13          MR. LAMB:  Your Honor, I apologize if it wasn't clear.

14  I tried to lay this out.

15          THE COURT:  Mr. Jacobson complains that you didn't

16  respond to any of his arguments.  And now you're giving me an

17  argument that I don't think I've heard before.

18          MR. LAMB:  I thought -- I apologize, Your Honor.  I

19  thought that was contained within the argument.  The problem

20  that I've had with this is it seems to me that the argument

21  keeps shifting every time I -- we go.

22          THE COURT:  You know, you've said over time that the

23  argument has shifted.  You know what?  The argument before me

24  has not shifted.  I wasn't the superior court judge.  I wasn't

25  there at the outset when the demurrer was filed.  I inherited

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 13
of 51

1  this case when this claim objection came up.  And Mr. Jacobson

2  and his argument are only one argument that on this issue.

3       But my question to you is -- and it's fair to say I'm

4  looking at your opposition.  And I want to see if there's any

5  discussion about what we would call the parcel 5 versus the

6  parcel 2 argument.  And I don't I don't think there is.  I'm

7  not saying that you waived it.  I'm just trying to make sure I

8  didn't miss it.  So did I miss it or is it not in there?

9       MR. LAMB:  It's not in the brief.

10      THE COURT:  Okay.  All right.  Go ahead.

11      MR. LAMB:  Okay.  And then if you look at the 1974

12 order of possession, which is document 13478-7 at page 4, that

13 states that the state was entitled to take property by eminent

14 domain in possession and ordered that the state is authorized

15 and empowered to enter upon and take possession and use said

16 property.  A plaintiff is authorized and empowered to remove

17 therefrom any and all person obstacles, improvements, or

18 structure of any kind.  And clearly that didn't happen as to

19 the Komir property, I don't think that there's a dispute at all

20 that that transmission line has been in place for decades.  And

21 it's --

22      THE COURT:  And there's no -- and you know what?

23 There's no dispute that prior to 2018, Mr. Shahmirza didn't

24 complain.  He had a rent paying tenant for twenty years.  He

25 bought the property with the lines at the height that they

were.  And he didn't complain.  And he entered into an

agreement that paid him some rent.  And everything was fine

until 2018 when PG&E moved the towers and changed the height.

And that's the first time the proverbial you-know-what hit the

fan.  And here we are.

       So the fact that it -- the fact that PG&E didn't

complain is consistent with Mr. Shahmirza was not offended by

what was going on until the new lines got repositioned, the new

level, you know what happened, 2018 events.  Okay?  Right?

       MR. LAMB:  That's correct.

       THE COURT:  Okay.

       MR. LAMB:  That's correct.

       THE COURT:  So why don't we -- why isn't any of this

other argument irrelevant?  Why aren't we just focusing on this

as what were the rights of the parties beginning in 2018?

Which gets back to -- it gets back to the issue that Mr.

Jacobson believes is factual.  And I think you can see it as a

factual issue.

       MR. LAMB:  It is the factual issue.

       THE COURT:  No, no.  But what I'm saying is, isn't

this -- angels on a pin.  The argument here isn't -- there's no

question who owns the title.  There's no question -- and this

is not an adverse possession case.  The question is whether

PG&E has a prescriptive easement or doesn't.

       MR. LAMB:  So I think -- I agree that that question is

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 15
of 51

1    still on the table.  But I think that the issue of whether or

2    not we have these recorded easements and whether they're valid

3    is -- I think it's clear that they are valid because the

4    judgment does not extinguish that.  The language of the

5    judgment does not extinguish it because it relates back to the

6    complaint.

7                THE COURT:  Okay.  I understand your point.  But how

8    do you reconcile what you would call the valid easements with

9    the situation changed when there was such an agreement?  There

10   was the 2018 agreement.  And excuse me, I'm sorry, before 2018,

11   when there was an agreement to consent to the work and that

12   PG&E is --

13               MR. LAMB:  Oh, Your Honor, that was --

14               THE COURT:  The point is that PG&E did -- exceeded

15   that.

16               MR. LAMB:  Your Honor, that was just a temporary

17   construction easement so that we could do a laydown of property

18   that went way further than what you're talking about.

19               THE COURT:  But if I'm Mr. Shahmirza, I've got a --

20   I've got PG&E in there paying me -- paying rent for the

21   temporary stuff.  And the tower is what it is.  And the height

22   is what it is.  And then all of a sudden in 2018 PG&E moves the

23   towers and lowers the wires.  And that's when there's a

24   problem.  So what difference does it make what happened in the

25   past?  In other words --

1          MR. LAMB:  Well, the --

2          THE COURT:  -- take it differently.  What were the

3    rights to the parties when that change occurred in 2018?  Your

4    argument is, well, we go back to the recorded easements before

5    a century ago.  Right?

6          MR. LAMB:  Well, it's not quite -- it's not quite a

7    century, but it's been a long time.

8          THE COURT:  Okay.  Okay.

9          MR. LAMB:  I think basically between 1910, in 1923,

10   there's four recorded easements.  And I think --

11         THE COURT:  Yeah.  I know.  I understand.

12         MR. LAMB:  Everybody agrees with it.  Okay.  And those

13   are in the record.  And then you've got Shahmirza's surveyor

14   who admits that the PG&E and easements exist.

15         THE COURT:  No.  Mr. Lamb, I'll rephrase my question

16   again.  If you're right that those recorded easements were not

17   obliterated, then what do I make of the change of events or the

18   circumstances that were changed in 2018?

19         MR. LAMB:  You make nothing of it, Your Honor, because

20   it's consistent with the easement.

21         THE COURT:  I see.  Okay.  That's your point, that

22   it's consistent with the easement and therefore PG&E was free

23   to do what it chose to do.

24         MR. LAMB:  Right.  We're not acting any way that we

25   haven't acted for decades because it's our position that those

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 17
of 51

1  easements are still in effect.  And what I think counsel for

2  Shahmirza is saying is when they narrowly read that judgment,

3  which does not, in their argument, relate back to the

4  complaint, which cannot be, that's because everything's

5  extinguished.  And the problem with that, Your Honor, is if

6  that were true, that is completely inconsistent with how the

7  state is operating.  And the facts are clear on that.

8          You know, for example, you've got the June 30, 1987

9  directors deed from the state to the Hildebrands.

10          THE COURT:  Right.

11          MR. LAMB:  That's at document -- I'm sorry, Your

12  Honor?

13          THE COURT:  No, I was just acknowledging the

14  Hildebrand deed.

15          MR. LAMB:  Okay.  That's it.  Document 13478-9, page

16  5.  And that's talks about subject to special assessments, if

17  any, restrictions, reservations, and easements of record.  And

18  it also specifically refers to this landscape and access

19  easement that now Mr. Shahmirza is saying was extinguished

20  back -- when the condemnation action, Your Honor.  And if

21  that's true, that is completely inconsistent with how the state

22  operated.  It's also completely inconsistent with the joint use

23  agreement, which also refers to the particular easements.  And

24  we submitted that, although I understand that that Shahmirza's

25  counsel has objected to that and moved to strike that.  But

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 18
of 51

1  just for the record, we've put that in the record.  And we

2  believe that that further references it.  And if this were not

3  true, the state would refer to that.  And that that's pretty

4  clear.

5           There's also a state plat map that Shahmirza used in

6  support of the MSJ that refers to landscape and -- landscape

7  and access easements and that's at document 13478-9 at page 14.

8  So that's all consistent with what we've been talking about,

9  which is why I explained, Your Honor, that we've been operating

10  as if we have an easement because we have the easements.  We

11  haven't done anything inconsistent with that.  What's happened

12  is he believes that because we moved the tower and he claims

13  that we lowered the line, although I don't believe we did lower

14  the line, we just -- the lining is set up the same.  You know,

15  there's no substantial change.  And that really relates back to

16  the Gerrah (phonetic) case that counsel for Mr. Shahmirza

17  referred to, that there has to be a substantial deviation.  And

18  I don't think there has been a substantial --

19           THE COURT:  Well, that's a fact question.

20           MR. LAMB:  That is a fact question.  But what it --

21           THE COURT:  I should tell you, in the first couple of

22  years that I was on the bench, which is now a long time ago, I

23  had a prescriptive easement case down near the airport.  And we

24  actually had a trial at the site.  I went and did a site visit,

25  so I was thinking about that and thinking, well, I wonder if I

1    had to go down to Highway 380 and have a site visit here to see

2    the towers.  But anyway, go ahead.

3          MR. LAMB:  Well, like I -- and again, it's

4    complicated, but I think it's clear.  But to the extent that

5    the Court thinks it's not clear, what I would asked is if we're

6    already going to deal with these other two issues regarding

7    prescriptive easement and in relation to the statute of

8    limitations defense, then whether or not there's a valid

9    recorded easement, you know, we haven't had the opportunity,

10   for example, to do discovery because this has all been on the

11   papers.  We haven't been able to do discovery of the state.  We

12   could get -- we could get that.  I'm sure we could probably get

13   more documentation that shows that the state is consistent --

14         THE COURT:  Well, who prevented you from doing

15   discovery?  You filed a very brief response to the motion for

16   judgment.  You didn't ask for more time to do discovery.  And

17   you really didn't highlight the argument you've just made.  So

18   I have to decide whether you really can make this argument.

19   Mr. Jacobson, I'm sure, might tell me that you waive this

20   argument, and I don't know that.

21         But what I'm getting at is when there's a summary

22   judgment motion and the opponent says, gee, I should have the

23   right to take discovery, my answer is read the federal rules.

24   It tells you to ask for discovery if you need time to propose a

25   summary judgment motion.  That didn't happen.

1      MR. LAMB:  Well, like I said, Your Honor, I believe

2  it's complicated, but it's very clear that that judgment in

3  condemnation does not act to eviscerate or expunge or eliminate

4  those easements.  Because when you look at that complaint,

5  which is rolled into the judgment, that's the reason for the

6  judgment.

7      THE COURT:  Mr. lamb, you've said that -- you've said

8  that three times.  And what I told you this until this

9  morning's argument, I don't think I heard the argument that it

10  was only parcel 5 where he was indicated and not parcel 2.  I

11  read I read all your briefs twice.  And I led to the -- I came

12  with the tentative ruling because Mr. Jacobson persuaded me

13  fairly well that this was a nonissue.  And now you're saying,

14  well, wait a minute, go back and read the complaint.  And

15  again, Mr. Lamb, I'm not faulting you.  I'm just telling you I

16  got to figure out what to do about it.

17      Go ahead and -- you want to reserve -- you said you

18  want to reserve ten minutes.  So go ahead and use a couple more

19  now, and then I'll let Mr. Jacobson respond.  And you'll

20  have --

21      MR. LAMB:  I'll reserve now, Your Honor.  That's fine.

22      THE COURT:  Okay.  Okay.  Mr. Jacobson?

23      MR. JACOBSON:  Yes.  Thank you.

24      A couple of conceptual thoughts here.  First, none of

25  the -- nothing that counsel just argued is in his papers.  It's

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 21
of 51

1  all new, the first point.

2          The second is, he didn't cite any law for anything.

3  There's still no legal support for anything he said.

4          THE COURT:  Well, there is little support from law

5  school 101, that you can get in a complaint more than you ask

6  for.

7          MR. JACOBSON:  We're going to get to that.

8          THE COURT:  If I sue you to declare a lien a Black

9  Acre, I can't slip a judgment under the judge's nose to give me

10  my lane on White Acre, right?  So that's basic.

11          MR. JACOBSON:  Well --

12          THE COURT:  Okay.

13          MR. JACOBSON:  He cited nothing.

14          THE COURT:  Okay.

15          MR. JACOBSON:  The objector that provided no

16  authority.

17          Third, these arguments went really all over the board.

18  There was no consistency to them.  There was a collateral

19  attack with the argument about collaterally attacking the

20  judgment.

21          THE COURT:  Oh, I made that argument.  I mean, I'm the

22  one that said it.

23          MR. JACOBSON:  Well, I'm going to make it too.

24          THE COURT:  Okay.

25          MR. JACOBSON:  That's what he was attempting to do.

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 22
of 51

1  There was an argument about the scope of the judgment

2  specifically.  And we'll get to that because the specific part

3  deals with the money aspect of condemnation.  There was a

4  reference to the order for possession.  And that's an

5  intriguing argument because the order of possession refers to

6  parcel 2.  And it says -- and has the effect as a matter of law

7  of giving the state has the condemner the total exclusive right

8  to the property.  As of the entry of that order for possession,

9  PG&E and he had no right to have anything there.  That's what

10 the judgment of the Superior Court says.  As of the entry of

11 this order for possession, you, State of California, are

12 entitled to the exclusive use and possession.  There's

13 nothing --

14         THE COURT:  Well, possession of that -- it's just as a

15 matter of condemnation procedure, the order of possession

16 precedes the final judgment.  Right?

17         MR. JACOBSON:  IT does.

18         THE COURT:  Okay.  But, I mean, it's sort of like a

19 temporary relief before you get your final relief.  And doesn't

20 the final judgment then subsume and sort of overtake anything

21 that's interim?

22         MR. JACOBSON:  Yes, but with an argument that it had

23 some effect that favors PG&E.  I'm telling you the contrary.

24 It is an interim order.  But what it does is gives the state

25 from that point forward the exclusive use and exclusive right

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 23
of 51

1   to have anything on that property.

2           THE COURT:  But I think Mr. Lamb's argument is that's

3   fine, but it doesn't bind PG&E because PG&E wasn't linked to

4   parcel 2 in the original complaint.

5           MR. JACOBSON:  We're going to shift to that in a

6   minute.

7           THE COURT:  Okay.

8           MR. JACOBSON:  There was a comment about Surveyor

9   Mahoney admitted that these prior arrangements existed.  He

10  never admitted any such thing.  He did a record of survey,

11  number 3259, approved by the county Surveyor and recorded by

12  the county surveyor that says there is no such thing as any

13  transmission line easement.  That is the county's survey.  And

14  there's no electrical transmission lines.  And that's 2018.

15          So there's a reference about the Hildebrand deed.  The

16  Hildebrand deed, director's deed did what directors Deeds do.

17  It calls out any specific easement that exists.  And the only

18  easement was the landscaping easement.  So every one of

19  those -- every one of those arguments that wander around

20  collateral issues really support Komir's.

21          But now let's get past the general comments and look

22  at the legal aspect of this.  All of -- this idea that that the

23  complaint or the judgment doesn't include PG&E ignores the one

24  of the basic propositions that I was expressing to you.  It's

25  an in rem proceeding.  It extinguishes -- it's a new title.  It

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 24
of 51

1   extinguishes all prior interest.

2           And if you look at my brief, the top of page 13,

3   there's a specific discussion of this issue.  There's a

4   reference to the Burkhart case, which is Ninth Circuit, that

5   quotes Duckett, which is the U.S. Supreme Court.  The quote is

6   as follows:  "The taking was not of the rights of designated

7   persons in the property but of the property itself.  An

8   unqualified taking in fee by eminent domain takes all interest

9   as it takes the race and is not called upon to specify the

10  interest that happen to exist.

11          THE COURT:  Well, but as a matter of due process,

12  would you get an in rem judgment against the defendant who

13  you've never named in the first place?

14          MR. JACOBSON:  Yes.

15          THE COURT:  You could?

16          MR. JACOBSON:  Yes.

17          THE COURT:  A stranger?  So if there's an in rem

18  action on Black Acre and I claim Black Acre but I have never

19  brought into the lawsuit, then am I really bound by that if I

20  never have notice of it?

21          MR. JACOBSON:  Yes.

22          THE COURT:  Okay.  Well, that's a hypothetical

23  because PG&E was a defendant.

24          MR. JACOBSON:  Yes.  And the judgment and the order of

25  condemnation reflects its involvement in the case because of

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 25
of 51

1  the language about if the lines are removed from various

2  places, who will pay for them.  So the interests of PG&E across

3  the board were considered.  PG&E was not a stranger to that

4  case.

5  　　　　　THE COURT:  No, I understand.  And I -- and that's why

6  in my hypothetical is only that.  And I go back to sort of

7  basic concept of can you really be bound by an in rem matter if

8  you never knew about in the first place.  And I'll concede that

9  there are certain areas of law, admiralty for example and

10  perhaps condemnation, where the attempt -- the process is

11  satisfied.  We don't have to speculate on strangers.  PG&E was

12  not a stranger to the litigation.  I don't know what would have

13  happened if the complaint had not mentioned parcel 2, but that

14  isn't the case.  Parcel 2 is one of the twenty-two parcels.  So

15  it was in the in the bucket of race that was dealt with by the

16  court, I think, I believe, right?

17  　　　　　MR. JACOBSON:  And there has been forty years --

18  　　　　　THE COURT:  Yeah, right.

19  　　　　　MR. JACOBSON:  -- for PG&E to go make this argument.

20  And there's been five years since 2018 that they could have

21  made some kind of an argument to this effect.

22  　　　　　THE COURT:  Well, but what I said is that there was no

23  issue here between Mr. Shahmirza on the one hand and PG&E on

24  the other until 2018.

25  　　　　　MR. JACOBSON:  Yes.

1          THE COURT:  Mr. Shahmirza bought the property with

2    powerlines in place and was happy as can be presumably until

3    something happened in 2018.

4          MR. JACOBSON:  Yes.  But --

5          THE COURT:  Okay.

6          MR. JACOBSON:  I'm going with counsel's argument that

7    we're hearing for the very first time and not in his brief and

8    with no authority.  If there was an issue of the sort he's

9    describing, they've had five years to deal with it.  If anybody

10   has a floating position here, it's PG&E.  If you look at their

11   brief, their brief, which is dead wrong in saying that the

12   reason that condemnation didn't affect their easement was

13   because it referred to unless taking lesser interest and has

14   been demonstrated --

15         THE COURT:  You made a very persuasive argument about

16   that.  And you're right.  Mr. Lamb didn't respond to that very

17   much.  He sort of then goes to the prescriptive easement

18   doctrine.  I got -- I grant you.

19         MR. JACOBSON:  And so that's my point.  Now, PG&E is

20   transitioning to some new argument we're hearing the first time

21   that it's had at least five years to deal with and is contrary

22   to the law in the first place.  None of what he says makes any

23   difference because the condemnation establishes the new title

24   and extinguishes all the prior interest.

25         So I'd like to reserve the rest of my time.

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 27
of 51

1       THE COURT:  Well, I don't think -- it's a little bit

2   awkward.  We have two motions and one reservation.  And I

3   didn't complain -- or didn't say that Mr. Lamb couldn't rebut.

4   But I think you've got to make the rest of your argument.  And

5   I am not going to -- you're not going to fall through a trap

6   when the time runs.  But I'd like you to conclude your

7   argument.  And I'm going to let Mr. Lamb responded and call it

8   a -- unless there's something that I want to raise.  So is

9   there anything else you want to add?

10      MR. JACOBSON:  If I could have just a moment.

11      THE COURT:  Yes, sure.

12      MR. JACOBSON:  My other thought would be that the

13  situation is -- the issue is not complicated.  These documents

14  are 100 years old.  And the condemnation is, what, forty years

15  old.  And the change of circumstance occurred in 2018.  And so

16  you can talk about a lot of detail about any of that, any of

17  those events or topics.  But it doesn't matter because Komir

18  framed this motion for summary judgment extremely narrowly and

19  to deal with one legal issue.  And nothing PG&E has said and no

20  authority has been cited by it to contradict the basic concepts

21  that I articulated in the beginning and that are our points and

22  authorities in this section that I've described to you.

23      THE COURT:  No.  But look.  That's what you said

24  before.  And that's what persuaded me to write my tentative.

25  But you don't win the case if you get your summary judgment.

1  You simply don't lose it on the permanent easement issue.  And

2  you might win your case if I say that that PG&E did not

3  establish a prescriptive easement on the current situation.

4           But what do I do if indeed the facts come out the

5  other way?  I mean, if the facts come out the other way, even

6  if I accept all of your arguments from the judgment, we still

7  go back to what happened in 2018.

8           MR. JACOBSON:  I agree.  The purpose of this motion

9  was to get rid of this claim about rights from a recorded

10 easements.  That's all it's about.

11          THE COURT:  Yeah, right.  Okay.  So let's -- so take a

12 snap -- tell me what were the rights of the parties vis a vis

13 one another when Komir bought the property.  In other words,

14 taking your view that the in rem, if you use that great word,

15 obliterate -- the easement was so obliterated.  But the fact is

16 there were power lines over this property for 100 years.  So

17 what did Mr. Shahmirza take?  He took some property,

18 two-point-something acres, with power lines going across it.

19          MR. JACOBSON:  Yes.  And there were recorded

20 documents.

21          THE COURT:  But what was he --

22          MR. JACOBSON:  There were power lines.

23          THE COURT:  But what were they trespassers or did he

24 consent to their being there?

25          MR. JACOBSON:  Well, part of my reason for making this

1  motion the way I did is those issues, though legitimate for

2  some other conversation, don't impact the effect of the

3  condemnation.  Whatever he thought, whatever was the

4  relationship, whether the recorded documents are themselves

5  valid or not, whether there were breaches by PG&E, whether

6  there were waivers or excuse or anything else, none of that

7  matters for the motion for partial summary judgment that I

8  argue.

9        THE COURT:  But Mr. Jacobson, that's being a little

10 hyper-technical on the legal setting.  I'm not looking at the

11 ultimate exit strategy.  So these folks can go their separate

12 ways as much as you can do it if you have power lines across

13 your property.  So at the end of the day, if I were to

14 determine that that there is a prescriptive easement across the

15 property, then that's the end of the day and your client loses.

16 Right?  And if I determine that PG&E and they didn't establish

17 its rights under a prescriptive easement because it had nothing

18 that pre-dated -- I mean, that survives the prior judgment,

19 then what?  Then what's the resolution?  It's still probably an

20 economic recovery for your client, right?  The power lines are

21 still going to be across his property, I presume.

22       MR. JACOBSON:  Well if --

23       THE COURT:  Pardon me?

24       MR. JACOBSON:  I'm sorry I interrupted.  I thought you

25 were done.

1          THE COURT:  I just said I assume at the end of the

2     day, even if he loses, the remedy is to compensate your client.

3     It's not to force the the towers to be moved somewhere, is it?

4          MR. JACOBSON:  Here's what --

5          THE COURT:  Look, and I'll rephrase my question.  My

6     job is to decide the matters that are presented before me.  I

7     agree.  But, you know, I'm a bankruptcy judge.  And you're a

8     bankruptcy lawyer.  And bankruptcy people look for solutions.

9     And so I'm looking at, well, what is the ultimate exit plan

10    here.  And I'm assuming Mr. Shahmirza and his company want to

11    own the property.  And obviously PG&E wants to continue to

12    transmit power lines.  So isn't there an economic solution here

13    at some point?

14         MR. JACOBSON:  Let me -- can I answer it this way?

15         THE COURT:  Yes.

16         MR. JACOBSON:  Here's what I envision as an answer to

17    your basic question.  Where do we go from here and how does

18    this get resolved?

19         THE COURT:  Yeah.

20         MR. JACOBSON:  A main reason for filing this motion

21    was to limit the scope of the issues that need to be resolved.

22    So this motion eliminates any argument that whatever rights

23    that PG&E has or hasn't are based on prior recorded

24    instruments, because the condemnation extinguished and

25    obliterated them.  So that will leave the property with

1 transmission towers and lines affecting it.  And it will leave

2 for your determination the existence or not of a prescriptive

3 easement in or post-2018 when the lines were relocated.  And

4 then the scope of that prescriptive easement, if it exists,

5 what towers, what height, location of lines, compensation to be

6 paid for the prescriptive use, damages to the extent that they

7 are involved as a component.  But that is a discrete set of

8 issues to be decided by itself on the prescriptive easement

9 claim that's the subject of the factor in the countermotion.

10 But Komir's motion has as the salutary effect of reducing the

11 issues to be decided to just that package of convention.

12         THE COURT:  Yeah, I know, I know, I know.  I know.  So

13 one more question for you.  If I were to stick with the

14 tentative, leave aside any appeals, and I reject Mr. Lamb's

15 argument not -- without even saying why I reject it, but I

16 reject it, then what do we do?  Do we set it for trial?  Do we

17 set it for further discovery?  Do I -- there's no countermotion

18 for -- you didn't make a motion for a judgment, total complete

19 judgment.  And PG&E has made its motion, its countermotion.

20 But obviously, the tentative would deny that.

21         So I guess what I'm asking is if the permanent

22 easement -- the obliterated record easement is gone from the

23 from the issues, what do you see happening next in this

24 litigation in this Court?

25         MR. JACOBSON:  I see a case management conference at

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 32
of 51

1  which there is a discussion of issues that there is a

2  formulation of a discovery schedule and --

3         THE COURT:  okay.

4         MR. JACOBSON:  -- a trial date set or a subsequent

5  trial setting conference date established, and perhaps as a

6  part of that process in the federal manner of proceeding, to

7  have the parties make a restatement of issues to more

8  specifically define the surviving claims.  That's not

9  necessary, but that sometimes it has a practical benefit.

10        THE COURT:  And maybe the parties that go back to the

11 mediation room too, huh?

12        MR. JACOBSON:  Yes.

13        THE COURT:  Okay.  All right.  Thank you.

14        MR. JACOBSON:  I think that's just a conventional way

15 of proceeding.  That's what we would do in any case.  We --

16        THE COURT:  I just wanted to hear it from you.

17        MR. JACOBSON:  Okay.

18        THE COURT:  Okay.  Mr. Lamb, you have at least 10

19 minutes.  And I'm not I'm not keeping an exact time clock on

20 it.  You know where we are.  So it's your turn.

21        MR. LAMB:  Your Honor, the comment here keeps going

22 back to in in rem, in rem.  It is in rem.  But the rem is

23 defined by the scope of the complaint.  You can't disassociate

24 and divest the two.  Otherwise, it just makes no sense.  If you

25 look at, you know, parcels 5A, that refers to the PG&E

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 33
of 51

1  right-of-way.  There's other easements that are referred to.
2  If they're not included, then clearly what the State is looking
3  for is in rem as defined by the complaint, which does not
4  include the easements and other rights that PG&E has.  And to
5  find otherwise would just be nonsensical, given the facts of
6  what have happened.
7       THE COURT:  You know, sometimes courts make errors in
8  judgment, but their judgments nevertheless, albeit erroneous,
9  are fine because we have jurisdiction to make error.  We don't
10 have jurisdiction where we don't have jurisdiction.  So if I
11 rule a judgment in favor of the defendant for the following
12 reasons, if I'm wrong, because it was inconsistent with the
13 complaint, it's still it's still a final judgment unless it's
14 attacked in some fashion.  And I think what Mr. Jacobson has
15 complained about, and frankly, I'm raising my question too, why
16 do you get to raise this issue at an argument on a dispositive
17 motion?  And the answer is, well, I'm sorry, Your Honor, I
18 didn't.  I thought I did, but I didn't.  And that's not good
19 enough.
20      And so my question is then, not to ask you to repeat
21 again that it's in rem.  It's there is a judgment.  And PG&E
22 was not a stranger to the lawsuit.  And even if I accept your
23 drilling down into the weeds of the complaint and see parcel 2
24 is different from parcel 5, it's still a judgment that was
25 entered forty years ago.  And what am I supposed to do about

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 34
of 51

1  that?

2        And bankruptcy courts don't undermine state court

3  final judgments as a matter of comity, among other things.  So

4  even if I were to say, you know what, that superior court judge

5  got it wrong, he didn't or she didn't match PG&E up with parcel

6  2, what am I supposed to do about it?  Nobody has brought an

7  action to declare that judgment in error except you and this

8  argument.

9        MR. LAMB:  Your Honor, we're not saying that the

10  judgment is in error.  The judgment is --

11        THE COURT:  Okay, I got it.

12        MR. LAMB:  The judgment is not as to PG&E.  The

13  judgment is to the city and to the county, not to PG&E.

14        THE COURT:  So go back to the question I asked Mr.

15  Jacobson at the outset.  When this lawsuit was filed, PG&E was

16  the defendant.  Where did it go?  What happened to PG&E as a

17  defendant in that lawsuit when the judge entered the final

18  judgment?  Did PG&E just disappear as a party or was it  -- is

19  everyone bound by the interim determination in the judgment?

20        MR. LAMB:  It dealt with it in relation to 5A and 5B,

21  which is what is part of the complaint and the judgment.

22        THE COURT:  Okay.  Okay.

23        Let's switch to the other motion, your motion, which

24  I'm denying and you accept as part of the tentative.  Do you

25  agree with Mr. Jacobson that if I do not grant you judgment

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 35
of 51

1   across the board on this issue or I deny the other -- the

2   plaintiff's motion, that we should have a case management

3   conference now and talk about discovery on the limited issue of

4   the prescriptive easement?

5           MR. LAMB:  Well, I think it would be the prescriptive

6   easement and the statute of limitations.  But yes, Your Honor.

7           THE COURT:  But I mean, that's part of it.  I mean,

8   that -- that to me is what I call the prescriptive easement, is

9   that the 2001 bankruptcy statute of limitations, all the things

10  that go to the merits.  In other words, if the issue of the

11  prior judgment had never come up and PG&E had shown up with its

12  power lines, when Mr. Shahmirza bought the property, we could

13  be having an actual about prescriptive easement.  Did you

14  establish a prescription easement?  And if so, did the statute

15  of limitations bar Shahmirza or Komir from challenging it, did

16  the prior bankruptcy affect it, et cetera, all the things that

17  are part of the bundle of rights that are -- we'll put under

18  the label prescriptive easement.

19          MR. LAMB:  Yes.

20          THE COURT:  Right?  Yeah.  In other words, you could

21  make a summary judgment on that argument if you want to or

22  something else.  I have my own doubts about whether you've got

23  a strong argument there, because it seems to me -- I go back to

24  my point -- there's a -- it's not a prescriptive easement

25  because it's a permissive easement until 2018.  And if we're

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 36
of 51

1    going to -- if we're going to put labels on easements, at the

2    minimum, it would seem to me PG&E had a permissive easement

3    until it moved the tower and allegedly changed the height of

4    the wires.

5              MR. LAMB:  Your Honor, this is why it's so important

6    that I think we need to more fully adjudicate the issue of

7    whether or not they're valid easements in the first place,

8    because what counsel for Shahmirza keeps trying to say is he

9    doesn't want to call it a trespass.  Because you've asked --

10   the Court has asked a number of times, well, what's the status,

11   what are we doing.  He doesn't want to talk about that because

12   if it's an easement, it's an easement.  And I think we need to

13   have that fully adjudicated.

14             THE COURT:  Mr. Lamb, he made a motion for judgment.

15             MR. LAMB:  Yes.

16             THE COURT:  And the -- your opposition didn't raise

17   what you're now raising.  Why should Mr. Jacobson now be told

18   you got to do it again?  You made your motion and it was -- at

19   least on this issue was not opposed.

20             MR. LAMB:  I don't agree that it wasn't opposed.  If

21   you look at. --

22             THE COURT:  It wasn't -- on the legal theory parcel 5

23   versus parcel 2, it wasn't raised.

24             MR. LAMB:  We're not arguing about a legal theory,

25   Your Honor.  We're arguing about the factual issues.

1    THE COURT:  Okay.

2    MR. LAMB:  That's the issue.

3    THE COURT:  Mr. Lamb, what facts are in dispute on the

4  plaintiff's partial motion for judgment?

5    MR. LAMB:  The facts that are dispute are the fact

6  that we have shown over time that this has been treated as an

7  easement and had been referred to as an easement in the record

8  by the State of California, by Mr. Shahmirza.  And that all

9  confirms the fact that we have a recorded easement.  There is

10  no question that the easement is recorded.

11    The only question is it's, you know, completely

12  expunged and extinguished, as counsel for Shahmirza claims.

13  And we believe it hasn't because we've consistently operated

14  this way.  The State has looked at it that way.  Up until after

15  2018, even Shahmirza didn't argue about that.  And the initial

16  argument from the surveyor really incorporates a Chicago title

17  plat map, which we talked about, that specifically refers to

18  those easements.  So we've always been dealing with these

19  easements.

20    And now basically what they're trying to say is that

21  because I want to narrowly review and take a look at this

22  judgment and I want to say you can't look at anything other

23  than the words of the judgment, which also still refer to other

24  things, that's dispositive.  And it's not.

25    THE COURT:  Okay.

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 38
of 51

1          MR. LAMB:  And if we go through that process, we're

2     just going to be back there again.

3          THE COURT:  Okay.  Gentlemen, I am going to take the

4     matter under advisement.

5          We have a number of evidentiary objections.  We have

6     this last-minute flurry about the vehicles parking and blocking

7     PG&E.  I'm not sure I even have jurisdiction to deal with that

8     issue.  But the point is, I'm not going to act on it.  Mr.

9     Jacobson filed papers as late as last night.  Mr. Lamb, you

10    filed your papers, Mr. Rupp, whoever filed them just early on

11    that.  I haven't even absorbed all of them.  Whether I -- and

12    I'll just deal with them.

13         So the motion for partial summary judgment by the

14    plaintiff, the Motion for summary judgment by PG&E, the

15    objections to the evidence both ways, and this last-minute

16    effort to raise the question of the vehicles or limousines or

17    whatever is blocking PG&E's access, those are matter all

18    submitted.  I would hope that that some cooler heads could at

19    least come to a consensual resolution by the parties so that we

20    don't have the local police department out there refereeing

21    whether PG&E can get in to do what it has to do on the lines.

22         I can't -- as I say, I'm not even sure it's properly

23    before me.  And on the other hand, I don't think sending you

24    off to Superior Court at this point is the right thing to do

25    either.  So I'm just going to implore the parties to see if

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 39
of 51

1  they can come up with a short-term resolution to that immediate

2  problem.  And I'll do my best to reflect on all the arguments

3  that have been presented today.

4          I appreciate the arguments and the representations on

5  the matter.  So it stands submitted.  Thank you for your time.

6  Anybody have a question?  Mr. Jacobson?

7          MR. JACOBSON:  Yes.  With respect to this purported

8  issue about gate access, there are no moving pleadings.

9  There's nothing to take under submission with respect to that.

10  I filed papers in opposition to the supplemental reply brief

11  that made an argument to protect my record.  But you'll see in

12  our papers there is no issue.  They have a gate.  They have

13  full access to it.  This is a pure boogeyman.  There's nothing

14  to it.  But procedurally they need to file a motion of some

15  sort.  I need to have an opportunity to file a response to a

16  motion that specifies what the issues and proof are.  And it is

17  not set up for a decision.

18          THE COURT:  Okay.  But I said I haven't read them.

19  And if clearer heads prevail and the gate can get access so

20  PG&E can do what it believes needs to be done as a matter of

21  its normal course responsibilities, then let's hope that's the

22  case.

23          MR. JACOBSON:  It doesn't need to get access.  It has

24  access.

25          THE COURT:  So again.

1          MR. JACOBSON:  It doesn't need to get access.  It has

2    access.  I went out there myself yesterday morning and looked

3    at it.

4          THE COURT:  Mr. Lamb do you agree that the company has

5    access?

6          MR. LAMB:  Well, I haven't been out there today so --

7    or yesterday.  So all I know is the photographs that I've seen

8    have all these limousines that are blocking the gate.

9          THE COURT:  Well, Mr. Jacobson just said he had

10   access.

11         MR. JACOBSON:  There's a different gate on the side

12   that is not owned by Komir.  They've put in a gate.  It's nice.

13   It's new.  It's got landscape right up to it.  I walked right

14   up to it and put my hand on the lock.  I look at that -- I

15   could have swung the gate open if I had the key and walked

16   right into the substation.  They have their own gate.

17         THE COURT:  Okay.  Gentlemen, thank you for your time.

18   Matter is submitted.  All right.

19         MR. JACOBSON:  Thank you.

20         MR. LAMB:  Thank you, Your Honor.

21         THE COURT:  I'm going to sign off.  I'll thank my

22   staff.  And I will talk to you all later.

23      (Whereupon these proceedings were concluded)

24

25

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 41
of 51

1          C E R T I F I C A T I O N

2

3    I, Michael Drake, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ MICHAEL DRAKE, CER-513, CET-513

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  May 10, 2023

16

17

18

19

20

21

22

23

24

25

Case: 19-30088    Doc# 13724    Filed: 05/11/23    Entered: 05/11/23 09:57:16    Page 42
of 51

**=**

**== (1)**
4:14

**A**

**able (2)**
10:1;20:11
**abolishes (1)**
6:21
**absorbed (1)**
39:11
**accept (3)**
29:6;34:22;35:24
**access (12)**
18:18;19:7;39:17;
40:8,13,19,23,24;
41:1,2,5,10
**acknowledging (1)**
18:13
**acquires (1)**
8:1
**Acre (4)**
22:9,10;25:18,18
**Acres (2)**
7:22;29:18
**across (6)**
26:2;29:18;30:12,
14,21;36:1
**act (2)**
21:3;39:8
**acted (1)**
17:25
**acting (1)**
17:24
**action (4)**
7:17;18:20;25:18;
35:7
**actionable (1)**
5:7
**actual (1)**
36:13
**actually (1)**
19:24
**add (1)**
28:9
**adjudicate (1)**
37:6
**adjudicated (1)**
37:13
**admiralty (1)**
26:9
**admits (1)**
17:14
**admitted (2)**
24:9,10
**adverse (1)**
15:23
**advisement (1)**
39:4
**affect (2)**

27:12;36:16
**affecting (1)**
32:1
**again (7)**
17:16;20:3;21:15;
34:21;37:18;39:2;
40:25
**against (4)**
7:18,18;11:9;25:12
**agency (3)**
8:1,14,17
**ago (5)**
8:6;13:4;17:5;
19:22;34:25
**agree (10)**
4:21;10:4,18,23;
15:25;29:8;31:7;
35:25;37:20;41:4
**agreement (5)**
15:2;16:9,10,11;
18:23
**agrees (1)**
17:12
**ahead (6)**
5:14,17;14:10;20:2;
21:17,18
**airport (1)**
19:23
**albeit (1)**
34:8
**allegedly (1)**
37:3
**although (2)**
18:24;19:13
**always (1)**
38:18
**among (1)**
35:3
**analysis (3)**
7:6,9,13
**and/or (1)**
5:7
**angels (1)**
15:21
**answered (1)**
4:22
**anymore (1)**
8:10
**apologize (2)**
13:13,18
**Appeal (1)**
8:22
**appeals (1)**
32:14
**Appearances (2)**
3:5,7
**appearing (1)**
3:17
**appreciate (1)**
40:4
**approved (1)**
24:11
**area (1)**

8:8
**areas (1)**
26:9
**argue (3)**
10:10;30:8;38:15
**argued (1)**
21:25
**arguing (2)**
37:24,25
**argument (41)**
12:11;13:7,12,17,
19,20,23,23;14:2,2,6;
15:14,21;17:4;18:3;
20:17,18,20;21:9,9;
22:19,21;23:1,5,22;
24:2;26:19,21;27:6,
15,20;28:4,7;31:22;
32:15;34:16;35:8;
36:21,23;38:16;40:11
**arguments (6)**
13:16;22:17;24:19;
29:6;40:2,4
**arising (1)**
9:13
**around (2)**
6:15;24:19
**arrangements (1)**
24:9
**article (3)**
7:10,21;9:5
**articulated (1)**
28:21
**aside (1)**
32:14
**aspect (2)**
23:3;24:22
**assessment (1)**
11:19
**assessments (1)**
18:16
**Association (1)**
8:20
**assume (1)**
31:1
**assuming (1)**
31:10
**attack (1)**
22:19
**attacked (3)**
11:1,3;34:14
**attacking (1)**
22:19
**attempt (1)**
26:10
**attempting (1)**
22:25
**attracted (1)**
11:2
**authorities (3)**
7:8,16;28:22
**authority (5)**
11:24;12:12;22:16;
27:8;28:20

**authorized (2)**
14:14,16
**awkward (1)**
28:2

**B**

**back (20)**
4:6;5:2;8:19;11:5,
21;15:16,16,16:5;
17:4;18:3,20;19:15;
21:14;26:6;29:7;
33:10,22;35:14;
36:23;39:2
**bankruptcy (6)**
31:7,8,8;35:2;36:9,
16
**bar (1)**
36:15
**based (1)**
31:23
**basic (5)**
22:10;24:24;26:7;
28:20;31:17
**basically (2)**
17:9;38:20
**becomes (1)**
10:25
**beginning (3)**
9:12;15:15;28:21
**behalf (2)**
3:10,13
**believes (3)**
15:17;19:12;40:20
**bench (1)**
19:22
**benefit (1)**
33:9
**Benvenutti (1)**
3:10
**best (1)**
40:2
**beyond (1)**
4:17
**bind (2)**
13:6;24:3
**bit (1)**
28:1
**Black (3)**
22:8;25:18,18
**blocking (1)**
39:6,17;41:8
**board (4)**
10:8;22:17;26:3;
36:1
**boogeyman (1)**
40:13
**both (1)**
39:15
**bought (4)**
14:25;27:1;29:13;
36:12
**bound (6)**

4:9,9,12;25:19;
26:7;35:19
**breaches (1)**
30:5
**Bridge (1)**
12:22
**brief (8)**
8:22;14:9;20:15;
25:2;27:7,11,11;
40:10
**briefs (2)**
13:12;21:11
**brought (3)**
12:11;25:19;35:6
**bucket (1)**
26:15
**Buckhart (1)**
7:21
**bundle (1)**
36:17
**buried (1)**
4:4
**Burkhart (1)**
25:4

**C**

**CALIFORNIA (5)**
3:1;8:21;11:9;
23:11;38:8
**Call (6)**
3:3;14:5;16:8;28:7;
36:8;37:9
**called (1)**
25:9
**Calling (1)**
3:4
**calls (1)**
24:17
**Caltrans (1)**
11:7
**came (3)**
8:16;14:1;21:11
**camera (1)**
3:6
**can (17)**
7:19;11:1,25;12:20;
15:17;20:18;22:5;
26:7;27:2;28:16;
30:11,12;31:14;
39:21;40:1,19,20
**case (28)**
7:17,20,21,22;8:14,
16,21,22;9:4,4,15;
10:14,15,15;14:1;
15:23;19:16,23;25:4,
25;26:4,14;28:25;
29:2;32:25;33:15;
36:2;40:22
**cases (4)**
7:11;8:8;9:6,7
**century (2)**
17:5,7

Case: 19-30088    Doc# 13724    Filed: 05/11/23    Entered: 05/11/23 09:57:16    Page 43
of 51

**certain (1)**
26:9
**cetera (1)**
36:16
**challenged (2)**
10:23;11:1
**challenging (1)**
36:15
**change (4)**
17:3,17;19:15;
28:15
**changed (4)**
15:3;16:9;17:18;
37:3
**Chicago (1)**
38:16
**choose (1)**
5:20
**chose (1)**
17:23
**Circuit (5)**
7:11,21,22;9:7;25:4
**circumstance (3)**
8:14;9:11;28:15
**circumstances (1)**
17:18
**cite (1)**
22:2
**cited (3)**
9:4;22:13;28:20
**City (4)**
4:7;11:9,17;35:13
**Civil (2)**
7:9;9:4
**claim (4)**
14:1;25:18;29:9;
32:9
**claimant (1)**
3:17
**claimant's (1)**
5:23
**claims (3)**
19:12;33:8;38:12
**cleaned (1)**
7:25
**clear (8)**
10:12;13:13;16:3;
18:7;19:4;20:4,5;21:2
**cleared (1)**
13:5
**clearer (1)**
40:19
**clearly (2)**
14:18;34:2
**clears (1)**
13:5
**CLERK (1)**
3:4
**client (4)**
13:6;30:15,20;31:2
**clock (2)**
4:3;33:19
**Code (2)**

7:9;9:4
**collateral (2)**
22:18;24:20
**collaterally (4)**
11:1,2,3;22:19
**comity (1)**
35:3
**comment (2)**
24:8;33:21
**comments (1)**
24:21
**Company (3)**
12:22;31:10;41:4
**compensate (1)**
31:2
**compensation (1)**
32:5
**complain (4)**
14:24;15:1,7;28:3
**complained (1)**
34:15
**complains (1)**
13:15
**complaint (24)**
10:20;11:8,21;12:5,
6,8,18,18,23;13:1,7;
16:6;18:4;21:4,14;
22:5;24:4,23;26:13;
33:23;34:3,13,23;
35:21
**complete (1)**
32:18
**completely (4)**
18:6,21,22;38:11
**complicated (5)**
10:12,13;20:4;21:2;
28:13
**component (1)**
32:7
**concede (2)**
10:11;26:8
**concept (1)**
26:7
**concepts (1)**
28:20
**conceptual (1)**
21:24
**conclude (1)**
28:6
**concluded (1)**
41:23
**concludes (1)**
4:16
**condemn (1)**
11:10
**condemnation (20)**
5:24,25;6:11,25;
7:17,24;8:7,25;10:17;
18:20;21:3;23:3,15;
25:25;26:10;27:12,
23;28:14;30:3;31:24
**condemner (1)**
23:7

**condemning (4)**
8:1,14,15,17
**confer (1)**
10:19
**conference (3)**
32:25;33:5;36:3
**confirms (1)**
38:9
**consensual (1)**
39:19
**consent (2)**
16:11;29:24
**considered (1)**
26:3
**consistency (1)**
22:18
**consistent (5)**
15:7;17:20,22;19:8;
20:13
**consistently (1)**
38:13
**construction (1)**
16:17
**consumed (1)**
11:16
**contained (1)**
13:19
**continue (1)**
31:11
**contradict (1)**
28:20
**contrary (3)**
9:8;23:23;27:21
**convention (1)**
32:11
**conventional (1)**
33:14
**conversation (1)**
30:2
**cooler (1)**
39:18
**Corporation (1)**
3:4
**correctly (1)**
4:25
**counsel (8)**
10:14,19;18:1,25;
19:16;21:25;37:8;
38:12
**counsel's (1)**
27:6
**countermotion (3)**
32:9,17,19
**County (6)**
11:9,17,18;24:11,
12;35:13
**county's (1)**
24:13
**couple (3)**
19:21;21:18,24
**course (2)**
7:5;40:21
**Court (127)**

3:3,5,11,14,19,22,
25;4:2,6,14,21;5:12,
14;6:4,8,13,21,23;7:2,
4,10,20;8:21;9:3,6,18,
21,23;10:8,22,24;
11:24;12:6,8,10,16;
13:2,11,15,22,24;
14:10,22;15:11,13,20;
16:7,14,19;17:2,8,11,
15,21;18:10,13;19:19,
21;20:5,14;21:7,22;
22:4,8,12,14,21,24;
23:10,14,18;24:2,7;
25:5,11,15,17,22;
26:5,16,18,22;27:1,5,
15;28:1,11,23;29:11,
21,23;30:9,23;31:1,5,
15,19;32:12,24;33:3,
10,13,16,18;34:7;
35:2,4,11,14,22;36:7,
20;37:10,14,16,22;
38:1,3,25;39:3,24;
40:18,25;41:4,9,17,21
**courts (2)**
34:7;35:2
**cover (1)**
10:2
**critical (3)**
5:22;7:7;8:13
**current (1)**
29:3

## D

**damages (2)**
10:7;32:6
**date (2)**
33:4,5
**day (3)**
30:13,15;31:2
**dead (1)**
27:11
**deal (7)**
7:11;20:6;27:9,21;
28:19;39:7,12
**dealing (1)**
38:18
**deals (2)**
7:6;23:3
**dealt (3)**
8:14;26:15;35:20
**debtors (2)**
3:10,13
**decades (2)**
14:20;17:25
**decide (2)**
20:18;31:6
**decided (3)**
13:9;32:8,11
**decision (2)**
5:11;40:17
**declare (1)**
22:8;35:7

**deed (6)**
6:14;18:9,14;24:15,
16,16
**Deeds (1)**
24:16
**defendant (9)**
11:11,25;12:16;
13:3;25:12,23;34:11;
35:16,17
**defendants (5)**
4:7,8,15,17;12:25
**defense (2)**
10:6;20:8
**define (2)**
8:3;33:8
**defined (2)**
33:23;34:3
**demonstrated (1)**
27:14
**demurrer (1)**
13:25
**deny (2)**
32:20;36:1
**denying (1)**
35:24
**department (1)**
39:20
**described (2)**
28:22
**describing (1)**
27:9
**designated (1)**
25:6
**detail (1)**
28:16
**detailed (1)**
7:9
**determination (2)**
32:2;35:19
**determine (2)**
30:14,16
**deviation (1)**
19:17
**difference (2)**
16:24;27:23
**different (2)**
34:24;41:11
**differently (1)**
17:2
**directors (2)**
18:9;24:16
**director's (1)**
24:16
**disappear (1)**
35:18
**disassociate (1)**
33:23
**discovery (9)**
20:10,11,15,16,23,
24;32:17;33:2;36:3
**discrete (1)**
32:7
**discussed (2)**

Case: 19-30088    Doc# 13724    Filed: 05/11/23    Entered: 05/11/23 09:57:16    Page 44
of 51

4:20;8:22
**discussion (3)**
14:5;25:3;33:1
**dispose (1)**
4:16
**disposes (1)**
5:2
**disposition (1)**
4:11
**dispositive (4)**
5:22;6:2;34:16;
38:24
**dispute (4)**
14:19,23;38:3,5
**divest (1)**
33:24
**docket (2)**
11:12,19
**doctrine (1)**
27:18
**document (4)**
14:12;18:11,15;
19:7
**documentation (1)**
20:13
**documents (4)**
9:13;28:13;29:20;
30:4
**domain (2)**
14:14;25:8
**done (4)**
11:7;19:11;30:25;
40:20
**doubts (1)**
36:22
**down (3)**
19:23;20:1;34:23
**drilling (1)**
34:23
**Duckett (2)**
7:20;25:5
**due (1)**
25:11

**E**

**early (1)**
39:10
**easement (45)**
5:8;6:20;10:5,15;
12:22;15:24;16:17;
17:20,22;18:19;
19:10,23;20:7,9;
24:13,17,18,18;27:12,
17;29:1,3,15;30:14,
17;32:3,4,8,22,22;
36:4,6,8,13,14,18,24,
25;37:2,12,12;38:7,7,
9,10
**easements (24)**
5:2;6:4;9:16;11:6,
22;16:2,8;17:4,10,14,
16;18:1,17,23;19:7,

10;21:4;29:10;34:1,4;
37:1,7;38:18,19
**economic (2)**
30:20;31:12
**effect (7)**
11:22;18:1;23:6,23;
26:21;30:2;32:10
**effort (1)**
39:16
**either (1)**
39:25
**electrical (1)**
24:14
**eliminate (1)**
21:3
**eliminates (2)**
7:1;31:22
**else (5)**
6:1;8:18;28:9;30:6;
36:22
**eminent (2)**
14:13;25:8
**empowered (2)**
14:15,16
**end (4)**
9:11;30:13,15;31:1
**ended (1)**
5:3
**enough (1)**
34:19
**enter (2)**
10:24;14:15
**entered (3)**
15:1;34:25;35:17
**entire (1)**
4:18
**entitled (3)**
5:1;14:13;23:12
**entry (2)**
23:8,10
**envision (1)**
31:16
**erroneous (1)**
34:8
**error (3)**
34:9;35:7,10
**errors (1)**
34:7
**establish (4)**
7:16;29:3;30:16;
36:14
**established (1)**
33:5
**establishes (2)**
7:24;27:23
**establishing (1)**
9:10
**et (1)**
36:16
**even (13)**
6:4,20;13:3,3;29:5;
31:2;32:15;34:22;
35:4;38:15;39:7,11,

22
**events (4)**
5:7;15:9;17:17;
28:17
**Everybody (1)**
17:12
**everyone (2)**
4:12;35:19
**everything's (1)**
18:4
**evidence (1)**
39:15
**evidentiary (1)**
39:5
**eviscerate (1)**
21:3
**exact (1)**
33:19
**examined (1)**
4:18
**example (4)**
12:20;18:8;20:10;
26:9
**exceeded (1)**
16:14
**except (1)**
35:7
**exclusive (1)**
23:7,12,25,25
**excuse (3)**
11:14;16:10;30:6
**exist (3)**
8:10;17:14;25:10
**existed (1)**
24:9
**existence (2)**
8:25;32:2
**exists (2)**
24:17;32:4
**exit (2)**
30:11;31:9
**explain (1)**
11:4
**explained (1)**
19:9
**explicitly (1)**
8:23
**expressing (1)**
24:24
**expunge (1)**
21:3
**expunged (1)**
38:12
**extent (4)**
4:20;12:25;20:4;
32:6
**extinguish (4)**
5:25;6:12;16:4,5
**extinguished (6)**
8:9;9:10;18:5,19;
31:24;38:12
**extinguishes (4)**
8:11;24:25;25:1;

27:24
**extremely (1)**
28:18

**F**

**fact (9)**
4:5;5:6;15:6,6;
19:19,20;29:15;38:5,
9
**factor (1)**
32:9
**facts (6)**
18:7;29:4,5;34:5;
38:3,5
**factual (5)**
5:11;15:17,18,19;
37:25
**fair (2)**
5:9;14:3
**fairly (1)**
21:13
**fall (1)**
28:5
**fan (1)**
15:5
**fashion (1)**
34:14
**faulting (1)**
21:15
**favor (2)**
9:17;34:11
**favors (1)**
23:23
**federal (2)**
20:23;33:6
**fee (7)**
8:1,4,11,15,17;
11:5;25:8
**feel (1)**
5:16
**figure (1)**
21:16
**file (3)**
4:19;40:14,15
**filed (12)**
4:6;6:1,3;11:8,21;
13:25;20:15;35:15;
39:9,10,10;40:10
**filing (1)**
31:20
**final (8)**
10:25;13:4;23:16,
19,20;34:13;35:3,17
**finale (1)**
6:20
**finality (2)**
6:5,20
**Finally (1)**
8:13
**find (1)**
34:5
**fine (4)**

15:2;21:21;24:3;
34:9
**first (14)**
3:19;7:17;10:3,11;
15:4;19:21;21:24;
22:1;25:13;26:8;27:7,
20,22;37:7
**five (3)**
26:20;27:9,21
**floating (1)**
27:10
**flurry (1)**
39:6
**focus (2)**
5:21;9:15
**focuses (1)**
5:23
**focusing (1)**
15:14
**folks (1)**
30:11
**following (3)**
7:17;10:11;34:11
**follows (1)**
25:6
**force (1)**
31:3
**formulation (1)**
33:2
**forty (4)**
13:4;26:17;28:14;
34:25
**forward (1)**
23:25
**four (1)**
17:10
**fourth (1)**
8:13
**framed (1)**
28:18
**FRANCISCO (4)**
3:1;11:10,17;12:22
**frankly (1)**
34:15
**free (2)**
5:16;17:22
**full (1)**
40:13
**fully (2)**
37:6,13
**fundamental (1)**
10:20
**further (4)**
11:4;16:18;19:2;
32:17

**G**

**gate (8)**
40:8,12,19;41:8,11,
12,15,16
**gee (1)**
20:22

Case: 19-30088    Doc# 13724    Filed: 05/11/23    Entered: 05/11/23 09:57:16    Page 45
of 51

**general (1)**
24:21
**Gentlemen (2)**
39:3;41:17
**Gerrah (1)**
19:16
**gets (2)**
15:16,16
**given (1)**
34:5
**gives (1)**
23:24
**giving (2)**
13:16;23:7
**goes (1)**
27:17
**Good (5)**
3:9,12,14,16;34:18
**grant (2)**
27:18;35:25
**great (1)**
29:14
**guess (1)**
32:21

**H**

**hand (1)**
26:23;39:23;41:14
**happen (3)**
14:18;20:25;25:10
**happened (9)**
4:8;15:9;16:24;
19:11;26:13;27:3;
29:7;34:6;35:16
**happening (1)**
32:23
**happy (1)**
27:2
**heads (2)**
39:18;40:19
**hear (1)**
33:16
**heard (2)**
13:17;21:9
**hearing (2)**
27:7,20
**height (5)**
14:25;15:3;16:21;
32:5;37:3
**held (1)**
11:22
**Here's (2)**
31:4,16
**highlight (1)**
20:17
**Highway (1)**
20:1
**Hildebrand (3)**
18:14;24:15,16
**Hildebrands (1)**
18:9
**hit (1)**

15:4
**hold (1)**
10:22
**Homeowners (1)**
8:20
**Honor (26)**
3:9,12,16;9:25;
10:4,21;12:17;13:8,
13,18;16:13,16;
17:19;18:5,12,20;
19:9;21:1,21;33:21;
34:17;35:9;36:6;37:5,
25;41:20
**hope (3)**
3:16;39:18;40:21
**house (3)**
6:14,17,18
**huh (1)**
33:11
**hyper-technical (1)**
30:10
**hypothetical (2)**
25:22;26:6

**I**

**idea (1)**
24:22
**identify (1)**
7:12
**identifying (1)**
13:6,9
**ignore (1)**
11:25
**ignores (1)**
24:23
**immediate (1)**
40:1
**impact (1)**
30:2
**implore (1)**
39:25
**important (1)**
37:5
**improvements (1)**
14:17
**Inc (1)**
3:17
**include (2)**
24:23;34:4
**included (1)**
34:2
**includes (1)**
11:14
**including (2)**
4:8;10:18
**inconsistency (1)**
7:1
**inconsistent (7)**
6:9;11:7;18:6,21,
22;19:11;34:12
**incorporates (1)**
38:16

**indeed (1)**
29:4
**indicated (2)**
8:8;21:10
**individual (1)**
4:12
**inherited (1)**
13:25
**initial (2)**
10:20;38:15
**instruments (1)**
31:24
**interest (14)**
5:25;8:19,19;9:1,2,
10,13;11:11,16;25:1,
8,10;27:13,24
**interests (7)**
7:19;8:5,8,10,12;
11:13;26:2
**interim (3)**
23:21,24;35:19
**interpret (1)**
4:25
**interrupt (2)**
5:18,19
**interrupted (1)**
30:24
**into (9)**
8:16,19,24;12:11;
15:1;21:5;25:19;
34:23;41:16
**intriguing (1)**
23:5
**Investors (1)**
8:21
**involve (1)**
10:5
**involved (1)**
32:7
**involvement (1)**
25:25
**irrelevant (1)**
15:14
**issue (31)**
5:6,22;6:2,2;9:2,9;
10:6,12,17,17;14:2;
15:16,18,19;16:1;
25:3;26:23;27:8;
28:13,19;29:1;34:16;
36:1,3,10;37:6,19;
38:2;39:8;40:8,12
**issued (1)**
4:24
**issues (17)**
5:11;7:7,11;9:15;
10:5,8;20:6;24:20;
30:1;31:21;32:8,11,
23;33:1,7;37:25;
40:16

**J**

**Jacobson (80)**

3:6,6,15,16,17,21,
24;4:1,11,18;5:10,13,
16,19;6:7,10,14,22,
24;7:6;9:20,22;13:15;
14:1;15:17;20:19;
21:12,19,22,23;22:7,
11,13,15,23,25;23:17,
22;24:5,8;25:14,16,
21,24;26:17,19,25;
27:4,6,19;28:10,12;
29:8,19,22,25;30:9,
22,24;31:4,14,16,20;
32:25;33:4,12,14,17;
34:14;35:15,25;
37:17;39:9;40:6,7,23;
41:1,9,11,19
**job (1)**
31:6
**joint (1)**
18:22
**Judge (5)**
9:2;13:24;31:7;
35:4,17
**judge's (1)**
22:9
**judgment (77)**
4:7,10,16,19;5:1,3,
5,23,24;6:6,9,11,21,
25;7:4;8:2,7,25;9:16,
19;10:18,19,23,24,25;
11:4,21;12:24;13:4,5;
16:4,5;18:2;20:16,22,
25;21:2,5,6;22:9,20;
23:1,10,16,20;24:23;
25:12,24;28:18,25;
29:6;30:7,18;32:18,
19;34:8,11,13,21,24;
35:7,10,10,12,13,18,
19,21,25;36:11,21;
37:14;38:4,22,23;
39:13,14
**judgments (2)**
34:8;35:3
**June (1)**
18:8
**jurisdiction (4)**
34:9,10,10;39:7

**K**

**keeping (1)**
33:19
**keeps (3)**
13:21;33:21;37:8
**Keller (1)**
3:10
**key (1)**
41:15
**Kim (1)**
3:10
**kind (2)**
14:18;26:21
**knew (1)**

26:8
**known (1)**
7:3
**Komir (11)**
3:17;7:16;8:3;
11:14,15,15;14:19;
28:17;29:13;36:15;
41:12
**Komir's (3)**
7:7;24:20;32:10

**L**

**label (1)**
36:18
**labels (1)**
37:1
**Lamb (63)**
3:8,12,12,14;5:15;
9:23,25;11:3;12:5,7,9,
15,17;13:2,8,13,18;
14:9,11;15:10,12,19,
25;16:13,16;17:1,6,9,
12,15,19,24;18:11,15;
19:20;20:3;21:1,7,15,
21;27:16;28:3,7;
33:18,21;35:9,12,20;
36:5,19;37:5,14,15,
20,24;38:2,3,5;39:1,9;
41:4,6,20
**Lamb's (2)**
24:2;32:14
**landscape (4)**
18:18;19:6,6;41:13
**landscaping (1)**
24:18
**lane (1)**
22:10
**language (4)**
8:7;13:4;16:4;26:1
**large (1)**
11:14
**larger (1)**
11:15
**last (1)**
39:9
**last-minute (2)**
39:6,15
**late (1)**
39:9
**later (2)**
6:25;41:22
**latter (1)**
5:11
**Law (12)**
7:10,21;8:9;9:5,9;
10:16,16;22:2,4;23:6;
26:9;27:22
**Lawrence (1)**
3:17
**lawsuit (1)**
4:5;25:19;34:22;
35:15,17

Case: 19-30088    Doc# 13724    Filed: 05/11/23    Entered: 05/11/23 09:57:16    Page 46 of 51

**lawyer (1)**
31:8
**lay (1)**
13:14
**laydown (1)**
16:17
**lead (1)**
9:24
**least (5)**
6:18;27:21;33:18;
37:19;39:19
**leave (3)**
31:25;32:1,14
**led (1)**
21:11
**legal (10)**
6:11;7:6,13;9:8;
22:3;24:22;28:19;
30:10;37:22,24
**legitimate (2)**
5:8;30:1
**lessee (1)**
11:18
**lesser (1)**
27:13
**level (1)**
15:9
**lien (3)**
6:17,18;22:8
**limit (1)**
31:21
**limitation (1)**
10:7
**limitations (4)**
20:8;36:6,9,15
**limited (1)**
36:3
**limousines (2)**
39:16;41:8
**Linda (2)**
8:20;10:14
**line (8)**
7:8,8,14,15;14:20;
19:13,14;24:13
**lines (15)**
14:25;15:8;24:14;
26:1;29:16,18,22;
30:12,20;31:12;32:1,
3,5;36:12;39:21
**lining (1)**
19:14
**linked (1)**
24:3
**listed (4)**
11:13,16,20;12:25
**listen (1)**
5:17
**litigation (2)**
26:12;32:24
**little (3)**
22:4;28:1;30:9
**loan (1)**
6:15

**local (1)**
39:20
**located (1)**
8:4
**location (1)**
32:5
**lock (1)**
41:14
**long (2)**
17:7;19:22
**longer (1)**
9:16
**look (18)**
7:19;9:3;10:21;
11:8;12:19;14:11;
21:4;24:21;25:2;
27:10;28:23;31:5,8;
33:25;37:21;38:21,
22;41:14
**looked (2)**
38:14;41:2
**looking (4)**
14:4;30:10;31:9;
34:2
**looks (1)**
6:19
**lose (1)**
29:1
**loses (2)**
30:15;31:2
**lot (2)**
4:6;28:16
**lower (1)**
19:13
**lowered (1)**
19:13
**lowers (1)**
16:23

**M**

**Mahoney (1)**
24:9
**main (1)**
31:20
**makes (2)**
27:22;33:24
**making (1)**
29:25
**management (2)**
32:25;36:2
**manner (1)**
33:6
**map (2)**
19:5;38:17
**match (1)**
35:5
**Mateo (1)**
11:18
**matter (16)**
3:4;4:16;6:11;8:9;
10:24;23:6,15;25:11;
26:7;28:17;35:3;39:4,

17;40:5,20;41:18
**matters (3)**
11:5;30:7;31:6
**MAY (1)**
3:1
**Maybe (2)**
4:4;33:10
**mean (11)**
5:4;6:8;7:3;10:23;
12:2;22:21;23:18;
29:5;30:18;36:7,7
**means (1)**
11:20
**mediation (1)**
33:11
**mentioned (2)**
8:23;26:13
**mentioning (1)**
9:12
**merits (2)**
5:5;36:10
**mic (1)**
3:6
**might (3)**
12:10;20:19;29:2
**minimum (1)**
37:2
**minute (2)**
21:14;24:6
**minutes (7)**
3:24;5:17,21;10:1,
2;21:18;33:19
**miss (2)**
14:8,8
**missing (1)**
4:5
**modified (1)**
7:25
**moment (3)**
7:12;8:6;28:10
**money (1)**
23:3
**more (10)**
10:19,25;12:10;
20:13,16;21:18;22:5;
32:13;33:7;37:6
**morning (5)**
3:9,12,14,16;41:2
**morning's (1)**
21:9
**motion (27)**
5:4,23;6:3;9:15;
20:15,22,25;28:18;
29:8;30:1,7;31:20,22;
32:10,18,19;34:17;
35:23,23;36:2;37:14,
18;38:4;39:13,14;
40:14,16
**motions (1)**
28:2
**moved (5)**
15:3;18:25;19:12;
31:3;37:3

**moves (1)**
16:22
**moving (1)**
40:8
**MSJ (1)**
19:6
**much (4)**
3:22,22;27:17;
30:12
**myself (1)**
41:2

**N**

**named (2)**
4:6;25:13
**names (2)**
4:7;11:10
**narrowly (3)**
18:2;28:18;38:21
**near (1)**
19:23
**necessary (1)**
33:9
**need (10)**
3:6;10:16;20:24;
31:21;37:6,12;40:14,
15,23;41:1
**needs (1)**
40:20
**nevertheless (1)**
34:8
**new (10)**
7:24,25;8:10;15:8,
8;22:1;24:25;27:20,
23;41:13
**next (2)**
6:9;32:23
**nice (1)**
41:12
**Night (2)**
7:22;39:9
**Ninth (5)**
7:11,21,22;9:7;25:4
**Nobody (1)**
35:6
**none (3)**
21:24;27:22;30:6
**nonissue (1)**
21:13
**nonsensical (1)**
34:5
**normal (1)**
40:21
**nose (1)**
22:9
**notice (1)**
25:20
**number (4)**
11:12;24:11;37:10;
39:5

**O**

**objected (1)**
18:25
**objection (1)**
14:1
**objections (2)**
39:5,15
**objector (1)**
22:15
**obliterate (2)**
6:12;29:15
**obliterated (5)**
8:9;17:17;29:15;
31:25;32:22
**obliterates (1)**
8:11
**obstacles (1)**
14:17
**Obviously (3)**
10:10;31:11;32:20
**occurred (2)**
17:3;28:15
**off (3)**
6:15;39:24;41:21
**offended (1)**
15:7
**office (1)**
6:19
**old (3)**
7:25;28:14,15
**Once (1)**
8:25
**one (16)**
4:5;5:23;9:3,9;
12:2;14:2;22:22;
24:18,19,23;26:14,23;
28:2,19;29:13;32:13
**only (12)**
4:7;5:14;11:11,13,
16;12:13;13:9;14:2;
21:10;24:17;26:6;
38:11
**oOo- (1)**
3:2
**open (1)**
41:15
**opening (1)**
9:22
**operated (2)**
18:22;38:13
**operating (2)**
18:7;19:9
**opponent (1)**
20:22
**opportunity (2)**
20:9;40:15
**opposed (2)**
37:19,20
**opposition (6)**
7:13,14;9:3;14:4;
37:16;40:10

Case: 19-30088    Doc# 13724    Filed: 05/11/23    Entered: 05/11/23 09:57:16    Page 47 of 51

**order (17)**
3:3;4:19;5:24;6:11, 25;8:3,6,7,25;14:12; 23:4,5,8,11,15,24; 25:24
**ordered (1)**
14:14
**original (2)**
13:7;24:4
**originally (1)**
4:6
**others (1)**
4:15
**otherwise (3)**
8:2;33:24;34:5
**out (9)**
10:3;13:14;21:16; 24:17;29:4,5;39:20; 41:2,6
**outset (2)**
13:25;35:15
**over (5)**
10:16;13:22;22:17; 29:16;38:6
**overridden (1)**
6:5
**overtake (1)**
23:20
**own (3)**
31:11;36:22;41:16
**owned (1)**
41:12
**owner (2)**
3:18;11:18
**owns (1)**
15:22

**P**

**package (1)**
32:11
**page (11)**
7:8,8,14,15;11:12, 19;12:21;14:12; 18:15;19:7;25:2
**pages (2)**
4:19;7:9
**paid (3)**
6:14;15:2;32:6
**papers (6)**
20:11;21:25;39:9, 10;40:10,12
**parcel (27)**
8:2,3;11:13,13,14, 16,16,20,23;12:1,2; 13:5,7,9;14:5,6;21:10, 10;23:6;24:4;26:13, 14;34:23,24;35:5; 37:22,23
**parcels (7)**
11:11;12:13,19,20, 23;26:14;33:25
**Pardon (1)**

30:23
**parking (1)**
39:6
**part (7)**
23:2;29:25;33:6; 35:21,24;36:7,17
**partial (8)**
5:1,4;9:18,18,21; 30:7;38:4;39:13
**particular (2)**
12:18;18:23
**parties (8)**
4:12;15:15;17:3; 29:12;33:7,10;39:19, 25
**party (2)**
8:16;35:18
**past (2)**
16:25;24:21
**pay (1)**
26:2
**paying (3)**
14:24;16:20,20
**people (1)**
31:8
**perhaps (2)**
26:10;33:5
**period (1)**
9:1
**permanent (2)**
29:1;32:21
**permissive (2)**
36:25;37:2
**person (1)**
14:17
**persons (2)**
7:19;25:7
**persuaded (2)**
21:12;28:24
**persuasive (2)**
12:10;27:15
**pertain (1)**
4:19
**PG&E (56)**
3:4;4:8,15,20;5:8; 9:17;11:10,20,22; 12:11,13;13:3;15:3,6, 24;16:12,14,20,22; 17:14,22;23:9,23; 24:3,3,23;25:23;26:2, 3,11,19,23;27:10,19; 28:19;29:2;30:5,16; 31:11,23;32:19; 33:25;34:4,21;35:5, 12,13,15,16,18;36:11; 37:2;39:7,14,21; 40:20
**PG&E's (3)**
7:14;9:3;39:17
**phonetic (1)**
19:16
**photographs (1)**
41:7

**pin (1)**
15:21
**place (6)**
14:20;25:13;26:8; 27:2,22;37:7
**places (1)**
26:2
**plaintiff (2)**
14:16;39:14
**plaintiff's (2)**
36:2;38:4
**plan (1)**
31:9
**plat (2)**
19:5;38:17
**pleadings (2)**
6:1;40:8
**please (1)**
5:16
**point (15)**
5:24;8:6,13;10:3, 15;16:7,14;17:21; 22:1;23:25;27:19; 31:13;36:24;39:8,24
**points (3)**
7:7,16;28:21
**police (1)**
39:20
**position (4)**
4:25,25;17:25; 27:10
**possession (11)**
14:12,14,15;15:23; 23:4,5,8,11,12,14,15
**possible (1)**
10:1
**post-2018 (1)**
32:3
**potential (1)**
10:6
**potentially (1)**
10:7
**power (7)**
29:16,18,22;30:12, 20;31:12;36:12
**powerlines (1)**
27:2
**practical (1)**
33:9
**precedes (1)**
23:16
**pre-dated (1)**
30:18
**preliminary (2)**
4:3;5:14
**prescription (1)**
36:14
**prescriptive (19)**
5:8;10:5;15:24; 19:23;20:7;27:17; 29:3;30:14,17;32:2,4, 6,8;36:4,5,8,13,18,24
**presented (3)**

4:5;31:6;40:3
**presumably (1)**
27:2
**presume (3)**
3:20;9:23;30:21
**pretty (1)**
19:3
**prevail (1)**
40:19
**prevented (1)**
20:14
**principle (1)**
10:24
**prior (15)**
5:25;8:5,9,18;9:1, 13,16;14:23;24:9; 25:1;27:24;30:18; 31:23;36:11,16
**probably (2)**
20:12;30:19
**problem (5)**
10:21;13:19;16:24; 18:5;40:2
**procedurally (1)**
40:14
**procedure (1)**
23:15
**proceeding (5)**
4:13;7:18;24:25; 33:6,15
**proceedings (1)**
41:23
**process (4)**
25:11;26:10;33:6; 39:1
**productive (1)**
5:20
**proof (1)**
40:16
**properly (1)**
39:22
**property (30)**
3:18;5:9,25;7:18, 19;8:3;11:10,14,15, 15;12:25;14:13,16,19, 25;16:17;23:8;24:1; 25:7,7,7;27:1;29:13,16, 17;30:13,15,21;31:11, 25;36:12
**propose (1)**
20:24
**proposition (1)**
7:23
**propositions (1)**
24:24
**protect (1)**
40:11
**proverbial (1)**
15:4
**provided (1)**
22:15
**public (8)**
6:4,5,9,17,18,20,24;

8:17
**pure (1)**
40:13
**purported (1)**
40:7
**purpose (2)**
8:17;29:8
**pursuant (1)**
11:4
**put (7)**
6:8,8;19:1;36:17; 37:1;41:12,14

**Q**

**quibble (1)**
10:16
**quiescent (1)**
8:23
**quite (2)**
17:6,6
**quote (1)**
25:5
**quotes (1)**
25:5

**R**

**race (2)**
25:9;26:15
**raise (4)**
28:8;34:16;37:16; 39:16
**raised (4)**
12:3,4,4;37:23
**raising (3)**
8:6;34:15;37:17
**read (6)**
18:2;20:23;21:11, 11,14;40:18
**really (10)**
5:3;11:2;19:15; 20:17,18;22:17; 24:20;25:19;26:7; 38:16
**reason (4)**
21:5;27:12;29:25; 31:20
**reasons (2)**
10:11;34:12
**rebut (1)**
28:3
**rebuttal (1)**
10:1
**reconcile (1)**
16:8
**reconveying (1)**
6:15
**record (18)**
6:5,5,9,17,18,20,24; 7:5;8:5,9;9:11;17:13; 18:17;19:1,1;24:10; 32:22;38:7;40:11

Case: 19-30088     Doc# 13724     Filed: 05/11/23     Entered: 05/11/23 09:57:16     Page 48
of 51

recorded (16)
7:4;9:1,12,13;16:2;
17:4,10,16;20:9;
24:11;29:9,19;30:4;
31:23;38:9,10
recorder's (1)
6:19
recovery (1)
30:20
reducing (1)
32:10
reemerges (1)
8:19
refer (6)
9:4,5,6,6;19:3;
38:23
refereeing (1)
39:20
reference (4)
12:21;23:4;24:15;
25:4
references (1)
19:2
referred (6)
9:7;10:14;19:17;
27:13;34:1;38:7
refers (8)
11:21;12:1;18:18,
23;19:6;23:5;33:25;
38:17
reflect (1)
40:2
reflects (3)
6:24;7:5;25:25
regarding (2)
12:13;20:6
reject (3)
32:14,15,16
relate (1)
18:3
relates (8)
6:2;10:5,20;11:5;
12:19,22;16:5;19:15
relating (1)
11:22
relation (3)
10:4;20:7;35:20
relationship (1)
30:4
relief (2)
23:19,19
relocated (1)
32:3
rem (13)
4:13;7:17;24:25;
25:12,17;26:7;29:14;
33:22,22,22,22;34:3,
21
remainder (1)
9:14
remaining (1)
10:8
remedy (1)

31:2
remember (2)
7:2,3
remove (1)
14:16
removed (1)
26:1
rent (3)
14:24;15:2;16:20
reorganized (2)
3:10,13
repeat (1)
34:20
rephrase (2)
17:15;31:5
reply (1)
40:10
repositioned (1)
15:8
representations (1)
40:4
reservation (2)
8:24;28:2
reservations (1)
18:17
reserve (8)
3:20,23,25;10:1;
21:17,18,21;27:25
resolution (3)
30:19;39:19;40:1
resolved (2)
31:18,21
respect (3)
8:5;40:7,9
respond (4)
5:15;13:16;21:19;
27:16
responded (1)
28:7
response (2)
20:15;40:15
responsibilities (1)
40:21
rest (2)
27:25;28:4
restatement (1)
33:7
restrictions (2)
11:6;18:17
retain (1)
10:9
Review (4)
7:10,21;9:5;38:21
rid (1)
29:9
right (30)
3:5,11;5:12;11:12;
12:9;14:10;15:9;17:5,
16,24;18:10;20:23;
22:10;23:7,9,16,25;
26:16,18;27:16;
29:11;30:16,20;
33:13;36:20;39:24;

41:13,13,16,18
right-of-way (1)
34:1
rights (10)
13:10;15:15;17:3;
25:6;29:9,12;30:17;
31:22;34:4;36:17
rolled (1)
21:5
room (1)
33:11
rule (1)
34:11
rules (1)
20:23
ruling (3)
4:24;10:4;21:12
running (1)
4:3
runs (1)
28:6
Rupp (4)
3:8,9,9;39:10

## S

salutary (1)
32:10
same (1)
19:14
SAN (5)
3:1;11:9,17,18;
12:22
satisfied (1)
26:11
saying (8)
14:7;15:20;18:2,19;
21:13;27:11;32:15;
35:9
schedule (1)
33:2
school (1)
22:5
scope (5)
10:17;23:1;31:21;
32:4;33:23
Second (2)
7:24;22:2
section (2)
8:22;28:22
seem (1)
37:2
seems (2)
13:20;36:23
sending (1)
39:23
sense (1)
33:24
separate (1)
30:11
series (1)
7:10
set (8)

12:23,24;19:14;
32:7,16,17;33:4;
40:17
setting (2)
30:10;33:5
Shahmirza (18)
10:19;14:23;15:7;
16:19;18:2,19;19:5,
16;26:23;27:1;29:17;
31:10;36:12,15;37:8;
38:8,12,15
Shahmirza's (2)
17:13;18:24
shift (1)
24:5
shifted (2)
13:23,24
shifting (1)
13:21
short-term (1)
40:1
show (1)
6:17
shown (2)
36:11;38:6
shows (2)
6:19;20:13
side (1)
41:11
sign (1)
41:21
simple (6)
8:1,4,11,15,17;11:5
simply (5)
5:23;8:10;29:1
single (1)
5:22
site (3)
19:24,24;20:1
situation (3)
16:9;28:13;29:3
slip (1)
22:9
snap (1)
29:12
sold (1)
8:18
sole (1)
5:22
solution (1)
31:12
solutions (1)
31:8
someone (2)
8:16,18
sometimes (2)
33:9;34:7
somewhere (1)
31:3
sorry (4)
16:10;18:11;30:24;
34:17
sort (7)

5:2;23:18,20;26:6;
27:8,17;40:15
special (1)
18:16
specific (4)
12:19;23:2;24:17;
25:3
specifically (8)
4:17;7:7;12:24;
13:9;18:18;23:2;33:8;
38:17
specifics (1)
12:1
specified (1)
8:2
specifies (1)
40:16
specify (1)
25:9
speculate (1)
26:11
spring (1)
8:24
springs (1)
8:19
staff (1)
41:22
stand (2)
7:22;10:11
stands (2)
10:9;40:5
Start (3)
3:5;4:3;5:21
state (19)
11:7;9,21;14:13,14;
18:7;9,21;19:3,5;
20:11,13;23:7,11,24;
34:2;35:2;38:8,14
statement (1)
5:9
States (3)
7:20;8:8;14:13
status (2)
8:24;37:10
statute (7)
7:9;9:4,10;20:7;
36:6,9,14
statutes (1)
10:6
Steve (1)
3:12
stick (2)
4:24;32:13
still (11)
5:6;16:1;18:1;22:3;
29:6;30:19,21;34:13,
13,24;38:23
stranger (4)
25:17;26:3,12;
34:22
strangers (1)
26:11
strategy (1)

Case: 19-30088   Doc# 13724   Filed: 05/11/23   Entered: 05/11/23 09:57:16   Page 49
of 51

30:11
**strike (1)**
18:25
**strong (1)**
36:23
**structure (1)**
14:18
**stuff (2)**
4:4;16:21
**subject (3)**
5:11;18:16;32:9
**submission (1)**
40:9
**submitted (4)**
18:24;39:18;40:5;
41:18
**subsequent (2)**
6:25;33:4
**substantial (1)**
19:15,17,18
**substation (1)**
41:16
**subsume (1)**
23:20
**sudden (1)**
16:22
**sue (1)**
22:8
**suit (2)**
12:11,12
**summary (14)**
5:1,5,23;6:10;9:16,
18;20:21,25;28:18,
25;30:7;36:21;39:13,
14
**Superior (7)**
4:6;6:21;7:4;13:24;
23:10;35:4;39:24
**supplemental (1)**
40:10
**support (5)**
9:8;19:6;22:3,4;
24:20
**supposed (2)**
34:25;35:6
**Supreme (4)**
7:10,20;9:6;25:5
**sure (6)**
14:7;20:12,19;
28:11;39:7,22
**survey (2)**
24:10,13
**surveyor (5)**
17:13;24:8,11,12;
38:16
**survives (1)**
30:18
**surviving (1)**
33:8
**switch (1)**
35:23
**swung (1)**
41:15

**T**

**table (1)**
16:1
**talk (4)**
28:16;36:3;37:11;
41:22
**talked (1)**
38:17
**talking (2)**
16:18;19:8
**talks (1)**
18:16
**taxes (1)**
11:19
**Telecott (1)**
8:21
**telling (2)**
21:15;23:23
**tells (1)**
20:24
**temporary (3)**
16:16,21;23:19
**ten (4)**
5:17,21;10:1;21:18
**tenant (1)**
14:24
**tender (1)**
10:10
**tentative (9)**
4:23,24;10:4,9;
21:12;28:24;32:14,
20;35:24
**theory (2)**
37:22,24
**therefore (1)**
17:22
**therefrom (1)**
14:17
**thinking (2)**
19:25,25
**Third (3)**
8:5,15;22:17
**Thomas (1)**
3:9
**though (5)**
6:4,20;13:3,3;30:1
**thought (6)**
13:18,19;28:12;
30:3,24;34:18
**thoughts (1)**
21:24
**thousands (1)**
4:19
**three (2)**
7:9;21:8
**times (2)**
21:8;37:10
**title (9)**
7:24,25;8:1,1,11;
15:22;24:25;27:23;
38:16

**today (2)**
40:3;41:6
**told (2)**
21:8;37:17
**took (2)**
8:17;29:17
**top (1)**
25:2
**topics (1)**
28:17
**total (2)**
23:7;32:18
**tower (3)**
16:21;19:12;37:3
**towers (6)**
15:3;16:23;20:2;
31:3;32:1,5
**transferring (1)**
8:15
**transitioning (1)**
27:20
**transmission (4)**
14:20;24:13,14;
32:1
**transmit (1)**
31:12
**trap (1)**
28:5
**treated (1)**
38:6
**trespass (1)**
37:9
**trespassers (1)**
29:23
**trial (4)**
19:24;32:16;33:4,5
**tried (1)**
13:14
**true (4)**
10:22;18:6,21;19:3
**trust (1)**
6:14
**try (1)**
5:17
**trying (3)**
14:7;37:8;38:20
**TUESDAY (1)**
3:1
**turn (2)**
5:16;33:20
**Twenty (4)**
3:24,25;10:2;14:24
**twenty-two (1)**
26:14
**twice (1)**
21:11
**two (5)**
4:2;6:16;20:6;28:2;
33:24
**two-point-something (1)**
29:18

**U**

**ultimate (3)**
4:7;30:11;31:9
**under (5)**
22:9;30:17;36:17;
39:4;40:9
**undermine (1)**
35:2
**United (1)**
7:20
**unless (4)**
8:2;27:13;28:8;
34:13
**unqualified (1)**
25:8
**up (15)**
5:3;7:25;9:11;
12:23,24;14:1;19:14;
35:5;36:11,11;38:14;
40:1,17;41:13,14
**upon (2)**
14:15;25:9
**USA (1)**
11:18
**use (7)**
14:15;18:22;21:18;
23:12,25;29:14;32:6
**used (1)**
19:5
**usually (2)**
4:15;5:20

**V**

**valid (6)**
16:2,3,8;20:8;30:5;
37:7
**various (1)**
26:1
**vehicles (2)**
39:6,16
**versus (3)**
7:22;14:5;37:23
**view (2)**
10:6;29:14
**vis (2)**
29:12,12
**visit (2)**
19:24;20:1
**Vista (2)**
8:20;10:14
**volumes (1)**
4:4

**W**

**wait (1)**
21:14
**waiting (1)**
3:7
**waive (1)**

20:19
**waived (1)**
14:7
**waivers (1)**
30:6
**walked (2)**
41:13,15
**wander (1)**
24:19
**wants (1)**
31:11
**way (12)**
11:12;12:23,24;
16:18;17:24;29:5,5;
30:1;31:14;33:14;
38:14,14
**ways (2)**
30:12;39:15
**weeds (1)**
34:23
**weren't (2)**
13:6,8
**What's (3)**
19:11;30:19;37:10
**Whereupon (1)**
41:23
**White (1)**
22:10
**win (2)**
28:25;29:2
**wires (2)**
16:23;37:4
**Wisconsin (1)**
7:20
**wish (1)**
5:15
**within (2)**
11:16;13:19
**without (1)**
32:15
**wonder (1)**
19:25
**word (1)**
29:14
**words (5)**
16:25;29:13;36:10,
20;38:23
**work (1)**
16:11
**write (1)**
28:24
**wrong (3)**
27:11;34:12;35:5

**Y**

**years (11)**
13:4;14:24;19:22;
26:17,20;27:9,21;
28:14,14;29:16;34:25
**yesterday (2)**
41:2,7
**you-know-what (1)**

Case: 19-30088    Doc# 13724    Filed: 05/11/23    Entered: 05/11/23 09:57:16    Page 50
of 51

15:4

## 1

**1 (1)**
7:8
**10 (1)**
33:18
**10:00 (1)**
3:1
**100 (2)**
28:14;29:16
**101 (1)**
22:5
**12 (1)**
7:8
**13 (1)**
25:2
**13478-6 (3)**
11:12,19;12:21
**13478-7 (1)**
14:12
**13478-9 (2)**
18:15;19:7
**14 (3)**
7:8,8;19:7
**1901 (1)**
9:13
**1910 (2)**
9:13;17:9
**1923 (2)**
9:14;17:9
**1945 (1)**
7:10
**1974 (2)**
11:8;14:11
**1987 (1)**
18:8

## 2

**2 (21)**
8:2,3;11:13,13,14,
16,17,20,23;13:5,7,9;
14:6;21:10;23:6;24:4;
26:13,14;34:23;35:6;
37:23
**2001 (1)**
36:9
**2015 (1)**
8:21
**2018 (18)**
5:7;14:23;15:3,9,
15;16:10,10,22;17:3,
18;24:14;26:20,24;
27:3;28:15;29:7;
36:25;38:15
**2023 (1)**
3:1
**24 (2)**
7:15,15

## 3

**3 (1)**
7:14
**30 (3)**
11:19;12:21;18:8
**31 (1)**
11:12
**32.42 (1)**
7:22
**3259 (1)**
24:11
**380 (1)**
20:1
**3A (2)**
12:20,23
**3B (1)**
12:23
**3C (1)**
12:23

## 4

**4 (2)**
7:15;14:12

## 5

**5 (5)**
14:5;18:16;21:10;
34:24;37:22
**5A (4)**
11:11;12:13;33:25;
35:20
**5B (2)**
11:11;35:20

## 7

**70s (1)**
4:6

## 9

**9 (1)**
3:1

Case: 19-30088    Doc# 13724    Filed: 05/11/23    Entered: 05/11/23 09:57:16    Page 51
of 51