**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:     (212) 310-8000
Fax:     (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Gabrielle L. Albert (#190895)
(galbert@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for the Debtors and Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**<br><br>Date:     June 7, 2023<br>Time:   10:00 a.m. (Pacific Time)<br>Place:   **(Tele/Videoconference Only)**<br>           United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102<br><br>**Objection Deadline:**<br>**May 31, 2023, 4:00 pm (Pacific Time)** |

PG&E Corporation ("**PG&E**") and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, "**PG&E**," the "**Debtors**" or the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), in accordance with Section 7.1 of the Plan,[1] sections 105(a) and 1142 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"): (i) further extending the deadline established under the Plan for the Reorganized Debtors to object to Claims by an additional 180 days, through and including December 18, 2023,[2] without prejudice to the Reorganized Debtors' right to seek additional extensions thereof; (ii) approving certain amendments to the Securities Procedures in substantially the form attached hereto as **Exhibit B**; and (iii) approving the Securities Claims Merits Litigation Procedures – Part I in substantially the form attached hereto as **Exhibit C**. In support of the Motion, the Reorganized Debtors submit the Declarations of Richard Slack, Robb McWilliams, and Angela Ferrante, filed concurrently herewith.

---

[1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt No. 8048] (as it may be amended, modified, or supplemented and together which any exhibits or schedules thereto, the "**Plan**").

[2] 180 days after the current objection deadline is Sunday, December 17, 2023. The next day that is not a Saturday, Sunday, or legal holiday, in accordance with Bankruptcy Rule 9006, is December 18, 2023.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PRELIMINARY STATEMENT

Using the Securities Procedures, the Reorganized Debtors have now resolved more than 4,600 Securities Claims, including more than 1,550 Securities Claims during the last extension of the claim objection deadline.[3] Put simply, the Securities Procedures are working, which is not surprising in light of the fact that the Court-approved Securities Procedures are the product of multiple hearings and extensive negotiations and compromises among the Reorganized Debtors and numerous claimants. A further extension of the claims objection deadline for the Securities Claims and General Claims[4] will allow the Reorganized Debtors and claimants with unresolved claims to resolve remaining claims before (and hopefully without) resorting to expensive and piecemeal litigation, including time-consuming and costly discovery.

In considering the previous extension motion, the Court instructed the Reorganized Debtors to employ the Securities Procedures aggressively to resolve Securities Claims, and the Reorganized Debtors responded by making settlement offers with respect to 3,597 Securities Claims over the last extension period pursuant to the Securities Procedures, including offers to all of the objectors to the last extension motion.[5] The settlement offers made pursuant to the Securities Procedures have been well received, and as of Friday, May 12, 2023 nearly *90 percent* of all viewed offers were accepted,

---

[3] "**Securities Claims**" means rescission or damages claims filed in the Chapter 11 Cases by claimants who have asserted that they purchased or acquired certain of the Debtors' publicly held debt and equity securities during the period from April 29, 2015, through November 15, 2018, inclusive. Those claimants who have asserted Securities Claims are herein referred to as "**Securities Claimants**".

[4] As used herein, "**General Claims**" means claims scheduled by or filed against the Debtors that are not Securities Claims, Fire Victim Claims, or Subrogation Wildfire Claims. These General Claims include, but are not limited to, trade claims, customer claims, employment claims, regulatory claims, real property claims, and tort and other litigation claims that are unrelated to the Fires.

[5] The objectors to the Fifth Extension Motion (defined below) included Kingfishers LP, Kingstown Partners II L.P., Kingstown Partners Master Ltd. (together, the "**Kingstown Objectors**"), the California State Teachers Retirement System ("CalSTRS"), Chevron Master Pension Trust and the Chevron UK Pension Plan (together, the "**Chevron Objectors**"), the State of Oregon on behalf of the Oregon Public Employees Retirement Fund (the "**Oregon Objectors**"), and 699 Claimants represented by Rolnick Kramer Sadighi LLP (the "**RKS Claimants**").

with only 136 offers declined. The Reorganized Debtors have now resolved, by expunging (through objection or withdrawal), reducing, or settling, more than half of all of the Securities Claims.

An extension is necessary to allow the Securities Procedures to continue to work. The Reorganized Debtors have already made settlement offers with respect to 2,417 of the approximately 4,200 Securities Claims that remain unresolved, with 2,270 offers still pending, and the Reorganized Debtors expect to make offers to the remaining unresolved Securities Claimants who have not yet received offers during the next extension period. The efficiency of utilizing the Securities Procedures is evident: in addition to resolving a large portion of the Securities Claims, the offers already made to the remaining individuals and groups have narrowed the disputed amounts, and disputed issues. Over 97% of the total potential amount of the unresolved Securities Claims reside in just 94 individuals or related or affiliated groups. The Reorganized Debtors expect that allowing the Securities Procedures to run their course—including further offers and, if needed, mediations with experienced and well-regarded mediators—will be effective in resolving a large number of these claims.

Although the Reorganized Debtors believe that the Securities Procedures have been and will continue to be effective, and therefore do not require substantive modification at this time, the Reorganized Debtors propose two limited procedural modifications that are intended to make the mediation process more efficient: (a) to allow up to five contemporaneous Abbreviated Mediations before a Mediator on the same day, and (b) to allow for the addition of Mediators to both the Panel of Mediators for Standard Mediations and the Panel of Mediators for Abbreviated Mediations upon submission to the Court without further Court order. These modifications are set forth in full as **Exhibit B** hereto.

Further, the Reorganized Debtors recognize the possibility that not all claims settle, and some claims may require a determination on the merits (either as a matter of law or fact). However, the securities proofs of claim as currently filed are not ripe for a meaningful adjudication on the merits. Virtually none of the securities proofs of claim even attempt to assert allegations or causes of action that could support a federal securities claim, much less satisfy the heightened pleading requirements for those claims. Instead, Securities Claimants have merely provided their PG&E trading information

on the claim form. These claims would be subject to dismissal under the federal securities laws (and the heightened pleading standards therein), but objecting to the claims on that basis would be a waste of the Reorganized Debtors' and this Court's resources at this time because the Court would likely provide each claimant with the opportunity to amend their proof of claim in response to an objection asserting this type of dismissal.

Accordingly, the Reorganized Debtors are proposing procedures that would require Securities Claimants to identify the bases for their claims—as required by the federal securities laws—either by filing their own complaint or by adopting the allegations of the complaint filed by the Public Employees Retirement Association of New Mexico ("**PERA**") in the District Court overseeing the securities litigation between PG&E and PERA (*In re PG&E Corp. Securities Litigation*, No. 18-3509 (N.D. Cal.) (the "**Securities Litigation**")). The extension of the objection deadline and this proposal should be embraced by the RKS Claimants, if their statements to the District Court touting the Securities Procedures were genuine (as further described below), because they allow for consensual resolutions of the Securities Claims pursuant to the Securities Procedures, while at the same time setting the stage for coordinated resolution of the Securities Claims in the event that litigation on the merits is ultimately necessary. Indeed, requiring the claimants to state the bases for and identify their claims will facilitate efficient determinations on the merits and reduce the costs of litigation and discovery that may ultimately be borne by the estates (and by extension the claimants).

These proposed additional procedures are consistent with the position taken by the Reorganized Debtors at the time the Securities Procedures were adopted. As the Reorganized Debtors stated at that time, it would be necessary to adopt additional procedures to address the substance and merits of the remaining claims once the Securities Procedures had been exhausted. *See* Nov. 18, 2020 Hr'g Tr. at 10:14-17 ("[W]e think one of the advantages to our procedures is that it's purely procedural settlement issues up front and we defer the merits issues until after the settlement process, if there are any remaining."). These proposed additional procedures are designed to provide a necessary step in addressing the remaining claims on the merits, if necessary. They are set forth in full as **Exhibit C** hereto; the primary elements of these proposed procedures are:

- By August 21, 2023 (within 60 days of the additional extension period requested pursuant to this Motion), the Reorganized Debtors will send each claimant with an unresolved Securities Claim a notice requiring the claimant to make an election within 40 days to: either (a) provide the Reorganized Debtors with a complaint or similar disclosure identifying the basic and necessary elements of their claims, including complying with any heightened pleading standards required for such claims under the federal securities laws; or (b) adopt the alleged misrepresentations and other factual allegations that form the basis of the claims in the complaint in the District Court class action *In re PG&E Corp. Securities Litigation*, No. 5:18-cv-03509-EJD (N.D. Cal.) (the "**PERA Complaint**") which was the basis for this Court's extension of the Bar Date (discussed below). The notice will further provide that those Securities Claimants who adopt the PERA Complaint will agree to be bound by any determination by this Court of the law and facts with respect to any motion, objection, or other filing made to any proof of claim that incorporates or adopts the PERA Complaint, regardless of the claimant who makes or opposes the motion, objection, or filing.

- By October 13, 2023 (within 115 days of the additional extension period requested pursuant to this Motion), the Reorganized Debtors will file with the Court a status report as to (a) the status of settlements, including the number of Securities Claims resolved, the number of individual claimants or groups of claimants that hold unresolved Securities Claims, the number of abbreviated and standard mediations that have been commenced and resolved; (b) the number of individual claimants or groups of claimants who chose to file a separate pleading or disclosure setting forth their claims, and (c) the number of individual claimants or groups of claimants that chose to adopt the PERA Complaint.

- After the election by Securities Claimants discussed above, by November 7, 2023 (within the first 140 days of the additional extension period requested pursuant to this Motion), the Reorganized Debtors will file two motions: (1) a motion to dismiss

portions of the PERA Complaint similar in substance to the motions to dismiss filed in the Securities Litigation by the director and officer defendants; and (2) a motion to dismiss the claims of any claimant who does not respond to the notice, on the basis that they have failed to state a claim under the federal securities laws.

- With respect to the holders of Securities Claims who elect to file their own pleading, the Reorganized Debtors will review the substance and number of any such separate pleadings or disclosures to determine, among other things, overlapping causes of action, and overlapping issues that may be ripe for decision as a matter of law. After review, and contemporaneous with any further extension of the objection deadline, the Reorganized Debtors will propose coordinated procedures to resolve any such claims that remain unresolved after exhaustion of the Securities Procedures in the most efficient manner.

- A stay of costly and expensive discovery will continue consistent with the federal securities laws—which impose a stay of discovery prior to a determination that the claimant has sufficiently pled a claim for relief—as to all Securities Claimants while the Securities Procedures continue to be used to resolve claims.

The above additional procedures will allow the already successful Securities Procedures to continue with respect to all outstanding claims, including the institution of standard and abbreviated mediations, while contemporaneously initiating the necessary first steps in the process of resolving any Securities Claims that remain unresolved after the Securities Procedures are exhausted. It will also allow coordination of any merits resolutions of those (hopefully few if any) unresolved claims—a number that will be known only after the exhaustion of the Securities Procedures.

## II.     JURISDICTION

This Court has jurisdiction to consider these issues pursuant to 28 U.S.C. sections 157 and 1334; the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.); and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core

proceeding pursuant to 28 U.S.C. section 157(b). Venue is proper before the Court pursuant to 28 U.S.C. sections 1408 and 1409.

## III.    BACKGROUND

### A.    The Plan and the General Claims Procedures

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. Prior to the Effective Date, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On July 1, 2019, the Court entered an order setting a bar date for claims. *See Order Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Dkt. No. 2806] (the "**Bar Date Order**"). The Bar Date Order set October 21, 2019 (the "**Bar Date**") as the deadline to file proofs of claim (each, a "**Proof of Claim**") for prepetition claims (as defined in section 101(5) of the Bankruptcy Code), including all claims of Fire Claimants, Wildfire Subrogation Claimants, Governmental Units, customers, secured claims and priority claims against either of the Debtors. The Bar Date was later extended to December 31, 2019, solely with respect to unfiled, non-governmental Fire Claims [Dkt. No. 4672]; and separately to April 16, 2020, solely with respect to persons or entities that purchased or acquired certain of the Debtors' publicly held debt and equity securities within the limited period from April 29, 2015, through November 15, 2018, inclusive, and that may have Securities Claims based on those purchases against the Debtors [Dkt. No. 5943].

On June 20, 2020, this Court entered an Order confirming the Plan [Dkt. No. 8053] (the "**Confirmation Order**"). The Plan became effective on July 1, 2020 [Dkt. No. 8252] (the "**Effective Date**"). Pursuant to Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order), the Reorganized Debtors may object to Claims until the later of (i) one-hundred and eighty (180)

days after the Effective Date (*i.e.*, December 28, 2020) and (ii) such later date as may be fixed by the Bankruptcy Court for cause shown. Plan § 7.1.

On June 30, 2020, the Court entered an order approving procedures for the resolution of general claims. *See Order Approving (A) Procedures for Filing Omnibus Objections to Claims and (B) the Form and Manner of the Notice of Omnibus Objections* [Dkt. No. 8228] (the "**General Claims Omnibus Objection Procedures Order**"). The General Claims Omnibus Objection Procedures Order permits the Reorganized Debtors to file objections to General Claims on an omnibus basis.

On September 25, 2020, the Court entered an order approving certain ADR procedures for general claims. *See Order Approving ADR and Related Procedures for Resolving General Claims* [Dkt. No. 9148] (the "**General Claims ADR Procedures Order**"). The General Claims ADR Procedures Order approved "**General Claims Procedures**" (as defined therein) that allow: (i) General Claimants (*i.e.*, holders of Claims other than Fire Victim Claims, Subrogation Wildfire Claims, or Securities Claims) to submit, by mail or via a secure online portal, information necessary to allow the Reorganized Debtors to evaluate their Claims and develop settlement proposals for General Claimants; and (ii) the parties to exchange settlement offers or engage in standard or abbreviated forms of mediation to resolve General Claims. The General Claims Procedures were designed to work together with the procedures set forth in the General Claims Omnibus Objection Procedures Order to form a comprehensive and efficient pre-litigation approach to resolve General Claims.

**B.      Negotiation and Adoption of the Securities Procedures**

On September 1, 2020, the Reorganized Debtors filed a motion seeking to adopt procedures in aid of the resolution of the Securities Claims. *See Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Dkt. No. 8964] (the "**Securities Procedures Motion**"). Notice of the Securities Procedures Motion was broadly provided, and the proposed procedures prompted objections from a number of claimants. For example, both PERA and the Chevron Objectors filed objections to the Securities Procedures Motion. [Dkt. Nos. 9189, 9190]. Both parties were represented by experienced counsel. The

Reorganized Debtors engaged in extensive discussions with these and other claimants and, after consideration of the objections and issues raised, revised the proposed procedures accordingly. In particular, as reflected in the Reorganized Debtors' reply in connection with the Securities Procedures Motion, in response to claimant suggestions and objections, the Reorganized Debtors amended the proposed procedures to, among other things:

- Extend claimants' time to submit their response to a Trading Information Request Form to forty-five days from twenty-eight days (Securities Procedures § I.A.);

- Provide claimants with additional time to respond to an Abbreviated Mediation Settlement Offer until seven days prior to an Abbreviated Mediation (Securities Procedures § III.A.5);

- Provide for this Court's approval, on notice, of the proposed panels of qualified and experienced mediators for each of the Abbreviated and Standard Mediations (Securities Procedures §§ III.A.2 & B.2);[6]

- Require disclosure by the Debtors of information provided by a proposed Mediator regarding any current or past work that the proposed Mediator has performed for, or on behalf of, the Debtors, and other potential conflicts, disclosed by the Mediator to the Debtors that, in the Mediator's view, could create a reasonable inference of bias (*Id.*); and

- Identify certain materials to be provided to the mediators prior to any mediation (Securities Procedures § IV.J).

In addition to these negotiated amendments, the Reorganized Debtors argued against objections filed by PERA and the Chevron Objectors. The Court received extensive briefing and held two hearings on November 18 and December 4, 2020 to determine whether the Securities Procedures were appropriate and at which any and all claimants had the opportunity to have their voices heard on the Securities Procedures. On December 4, 2020, the Court orally granted the Securities

---

[6] *See Reorganized Debtors' Reply in Further Support of the Motion to Approve Securities ADR and Related Procedures for Resolving Submitted Securities Claims*, dated October 29, 2020 [Dkt. No. 9378].

Procedures Motion, requiring further modification of the proposed procedures to extend the time period for claimants to accept offers to thirty-five days after notice, and clarify that claimants are not required to submit counteroffers to the Reorganized Debtors.

On January 25, 2021, the Court entered an order approving the Securities Procedures. *See Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Dkt. No. 10015] (the "**Securities Procedures Order**"). The Securities Procedures Order approved the *Securities ADR and Related Procedures for Resolving Subordinated Claims* attached thereto as Exhibit A (the "**Securities Procedures**") aimed at facilitating the resolution of Securities Claims.

**C.     The Reorganized Debtors' Successful Claims Reconciliation Progress**

The reconciliation, resolution, and distributions with respect to the claims have required extensive efforts by the Reorganized Debtors' team of advisors, attorneys, and personnel.  Since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved approximately 89% of the total dollar amount of claims asserted in these Chapter 11 Cases (including Securities Claims, but excluding Fire Victim Claims and Subrogation Wildfire Claims).

*1.   The General Claims*

Since the Effective Date, the Reorganized Debtors have successfully resolved approximately 99% of the General Claims that were scheduled or filed against the Debtors in these Chapter 11 Cases. 9,510 of those General Claims were resolved through the over one hundred omnibus claims objections that have been filed since the Effective Date, as well as related claim withdrawals and the expungement of late-filed claims. Those omnibus objections have been effective at resolving objections where claims could be grouped into categories of objections and disposed of in an orderly and efficient manner where appropriate.

The Reorganized Debtors have also undertaken extensive efforts to resolve claims through negotiated settlements, including through the General Claims Procedures. These negotiation efforts have yielded the settlement of approximately 2,366 of the General Claims, including approximately 44 General Claims that were settled during the Fifth Extension Period (as defined below).

Approximately 38 General Claims are being litigated in non-bankruptcy fora, pursuant to orders of the Court modifying the automatic stay or Plan Injunction. Pursuant to the *Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and Granting Related Relief* [Docket No. 11533] (the "**Third Extension Order**"), such Claims are deemed to have been objected to for purposes of the Plan's definition of "Allowed." Plan, § 1.7(f).

Of the remaining approximately 84 General Claims that are unresolved, many are either indemnification/subrogation claims that cannot be addressed until the conclusion of the underlying disputes or claims where the parties are attempting to resolve the dispute without the need for court intervention. The handful of other remaining General Claims do not lend themselves to neat categories and summary disposition or to settlement. The Reorganized Debtors require additional time to continue the resolution of the few remaining General Claims.

Finally, in March 2023, the Fire Victim Trustee and the Reorganized Debtors determined that eight claims, which had been preliminarily identified as Fire Victim Claims, did not arise from one of the specific Fires defined in Section 1.86 of the Plan. As such, those claims do not constitute Fire Victim Claims, as defined in Section 1.79 of the Plan, but rather are General Claims against the Debtors (the "**Recategorized Claims**"). The Reorganized Debtors have filed objections to all eight Recategorized Claims, and those objections are pending as of the date of this Motion.

       2. *The Securities Claims*

       **a. Claimants' Significant Delays in Delivering Trading Information**

The first step called for in the Securities Procedures was the implementation of the collection of trading information from Securities Claimants. As the Court may recall, when the Securities Procedures were adopted, the Reorganized Debtors informed this Court of the importance of receiving complete trading data in order to evaluate potential claimed damages from all claimants before being able to launch the offer process. The Reorganized Debtors noted that collection of complete trading information was "necessary to assess the potential amount of each Subordinated Securities Claim," and that "[w]ithout that fundamental information, the Reorganized Debtors are simply unable to mediate or negotiate with individual Subordinated Securities Claimants on an informed basis." *Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures*

*for Resolving Subordinated Securities Claims*, dated September 1, 2020 [Dkt. No. 8964] at 2-3. Indeed, receipt of this trading information was necessary for the Reorganized Debtors to evaluate whether a claim could be resolved consensually and, if so, at what amount. *See* Securities Procedures at 13:10-11. As such, receipt of complete trading information from all claimants was a predicate for sizing the total amount of each claim—regardless of whether the Reorganized Debtors believed the claim had merit under the federal securities laws—and thus allowing the Reorganized Debtors to begin the next steps of the Securities Procedures, the offer process.

Consistent with the Securities Procedures, the Reorganized Debtors promptly distributed information requests. The Reorganized Debtors established, at great expense, a web-based process for claimants to submit data that allowed for the efficient identification of trading information deficiencies and the prompt submission by claimants of information to correct these deficiencies. Regrettably, the response to the information requests by thousands of claimants was slow or non-existent. Although required by the Court, many thousands of the holders of Securities Claims failed to timely respond to the information requests. This required significant follow-up by the Reorganized Debtors and their advisors over the course of more than a year. While there is little question that the trading information collection process did not proceed as quickly as the Reorganized Debtors had hoped and initially expected, and those delays impacted the ability and timing of the Reorganized Debtors to begin to make offers because it was impossible to determine the size of each claimants' notional and/or asserted damages, those delays largely fall upon the failure of these thousands of claimants to respond to information requests in a timely manner.

A prime example of the difficulty the Reorganized Debtors faced in collecting required trading data is the failure of Institutional Shareholder Services ("**ISS**") to respond to the information requests and the delay in then obtaining trading information with respect to thousands of claimants on whose behalf ISS filed bulk proofs of claim representing hundreds of millions of dollars in asserted claims. ISS identified itself as the party to receive information and notices with respect to these proofs of claim. ISS typically files claims in securities settlements for clients, and it is now clear that ISS did not treat the filing as if these claims had to be pursued and potentially litigated in the Chapter 11 Cases. The bulk claims simply set forth a list of claimants and certain trading

information, similar to how a party might respond to a class action settlement in which they only need to identify the number of shares purchased or held in order to be paid.

On March 12, 2021, the Reorganized Debtors sent ISS a Trading Information Request Form ("**TIRF**") for each bulk claim, which required ISS to provide trading information for those claimants on whose behalf they filed claims. ISS did not substantively comply with the TIRF. Instead, ISS sent a letter to the thousands of claimants on whose behalf they had filed, essentially informing them that ISS had no idea that filing a proof of claim would require ISS to continue to take steps to support those claims, and refusing to take further actions on their clients' behalf. They instead suggested that these clients begin the process of hiring separate counsel. As a result, many former ISS claimants retained counsel, and many (if not most) of the claimants now represented by RKS are former ISS claimants. The refusal of ISS with respect to thousands of claimants delayed the information collection required to make settlement offers on those claims by a year or longer as many claimants simply failed to provide information at all and others began to hire counsel, many of whom then had to get up to speed and provide information over many months. In fact, the Reorganized Debtors continued to receive trading information from former ISS Claimants, including RKS Claimants, nearly two years after the Reorganized Debtors sent the initial TIRF.

Many other claimants similarly failed to respond to the Reorganized Debtors' request for trading information. The Reorganized Debtors and their professionals have continued to receive trading information from Securities Claimants, and have sent out reminder letters to certain holders of Securities Claims requesting necessary trading information as recently as May 5, 2023. As of Friday, May 12, 2023, the Reorganized Debtors are still waiting on requested trading information in connection with 781 claims.

**b.    Reorganized Debtors' Substantial Progress to Date**

Notwithstanding the delays in the information collection process, the Reorganized Debtors have made substantial progress using the Securities Procedures to resolve outstanding claims. The Reorganized Debtors have issued settlement offers with respect to 4,997 Securities Claims. As a result of those settlement offers, 2,580 Securities Claims have been settled.

Further, the Reorganized Debtors have filed 21 Securities Claims Omnibus Objections to Securities Claims on various grounds. The Court has addressed each of these omnibus objections, resulting in the disallowance and expungement of 1,805 Securities Claims. A further 72 Securities Claims were expunged through other motions and stipulations filed with the Court, and 201 Securities Claims have been withdrawn.

Of the 8,848 Securities Claims[7] filed in these Chapter 11 cases, more than half—approximately 4,650 Securities Claims, representing approximately $1.5 billion in face value—have been resolved through the Securities Procedures as of Friday, May 12, 2023.

The Reorganized Debtors have also made settlement offers with respect to an additional 2,417 Securities Claims that remain unresolved. During the Fifth Extension Period alone, the Reorganized Debtors have made settlement offers with respect to 3,597 Securities Claims. As of Friday, May 12, 2023, 90 percent of all of the viewed offers have been accepted and only 136 offers have been declined. Settlement offers relating to more than 1,550 claims have been accepted during the Fifth Extension Period alone. The rest of the settlement offers are either (a) unopened or (b) have been responded to and the claimant and Reorganized Debtors are engaged in negotiations on the amount in an attempt to resolve those claims.

The Reorganized Debtors also expect to make additional offers on hundreds of claims between the date of this Motion and the June 7, 2023 hearing date. Should the Court grant this Motion, the Reorganized Debtors intend to have made settlement offers early in the extension period with respect to all or nearly all unresolved Securities Claims that are not subject to additional omnibus objections. Over 97% of the unresolved potential damage amounts lies with 94 claimants or groups of claimants.

In short, the offer process has been successful and is still in process for thousands of claimants. The Court should allow the offer procedures to continue to permit the efficient resolution of these claims.

---

[7] As of the extended bar date, only approximately 4,574 Securities Claims had been submitted. Since the Extended Bar Date an additional 4,274 claims have been submitted, some as amendments of prior claims.

### 3. Mediation Procedures

The Securities Procedures did not envision that all claimants would reach a settlement based on the offer process. Indeed, the procedures always contemplated that the resolution of some Securities Claims would require the help of experienced mediators on a claimant by claimant basis. Thus, the Court authorized the Reorganized Debtors to engage in mandatory, nonbinding mediation with individual claimants (the "**Securities Mediation Procedures**"). The Court has recently entered the *Order Approving Mediators for Securities ADR and Related Procedures* [Dkt. No. 13744]. The Reorganized Debtors are now in a position to begin initiating both Abbreviated and Standard Mediations. While it is difficult to predict how long mediations will take once initiated, and there is some limit to how many mediations can be pursued at one time, the Reorganized Debtors commit to actively pursuing such mediations throughout the extension period, in an effort to resolve additional claims in an efficient manner.

### D. The Extensions of the Objection Deadline

As is typical in Chapter 11 cases, and in particular cases with complicated and numerous claims, the Court has extended the Reorganized Debtors' deadline to object to claims under Section 7.1 of the Plan several times. The Reorganized Debtors' first such motion was made on October 27, 2020 [Dkt. No. 9355] (the "**Initial Extension Motion**"), which the Court granted, with some limited modifications, on November 17, 2020 [Dkt. No. 9563].

Most recently, the Court granted a fifth motion to extend the objection deadline made on October 25, 2022 [Dkt. No.13122] (the "**Fifth Extension Motion**"). The Reorganized Debtors sought additional time to allow the Securities Procedures to continue to work.

At the time of the fifth extension, the Reorganized Debtors also informed the Court that they were in active negotiations with PERA in connection with the Securities Litigation to reach a global resolution that would resolve both the Securities Litigation and the Securities Claims for all claimants who did not choose to opt out of the settlement. The Reorganized Debtors had determined that it would be efficient to pursue a global resolution of three related and significant matters: a dispute with the Reorganized Debtors' D&O insurers, the FVT's claims against certain of the Debtors' former officers and directors, and the Securities Claims brought both in the Securities Litigation and

1   as proofs of claim in the Chapter 11 Cases, submitted by members of the putative class in the

2   Securities Litigation. As the Court is aware, the Reorganized Debtors successfully resolved two of

3   these three matters, and the Court has approved the resolutions.

4       Although the RKS Claimants have tried to argue that it was somehow inappropriate for the

5   Reorganized Debtors to be negotiating with the plaintiffs in the Securities Litigation, the Reorganized

6   Debtors have certain obligations to indemnify the individual defendants in the Securities Litigation,

7   subject to applicable law. Therefore, a global resolution in the Securities Litigation would have

8   allowed the Reorganized Debtors to simultaneously resolve the Securities Claims against PG&E (for

9   those claimants who did not opt out of that settlement) and release or resolve any indemnification

10  claims at the same time, preserving estate value and judicial resources. No claimant would be

11  prejudiced by any such settlement because any global resolution would have allowed holders of the

12  Securities Claims to opt out of the settlement and continue to pursue their Securities Claims pursuant

13  to the Securities Procedures in the Chapter 11 Cases.

14      For practical reasons, it was not efficient to pursue individual settlements while attempting

15  to negotiate a global settlement. Every individual settlement would decrease the size of the proposed

16  class and, proportionately, the amount that the Reorganized Debtors would be prepared to pay to

17  settle on a class basis. This would have created a constantly moving target for any class settlement

18  negotiations. As such, the Reorganized Debtors paused the Securities Procedures process on a

19  temporary basis while pursuing a global settlement with PERA. This carefully considered decision

20  reflected the Reorganized Debtors' sound business judgment, weighing the efficiencies achievable

21  through a global resolution of the Securities Claims against a relatively short delay in continuing the

22  Securities Procedures. The modest delay also allowed for additional time for claimants to continue

23  to submit necessary trading information.

24      Negotiations with PERA are not active at this time. Indeed, PERA and the Reorganized

25  Debtors recently submitted a status report to the Ninth Circuit in connection with PERA's appeal of

26  the Court's Plan confirmation decision states that "the parties have been unable to successfully

27  negotiate the terms of a settlement agreement that would potentially resolve those issues underlying

28  this appeal." *See Joint Status Report*, attached as **Exhibit C** to the Slack Declaration, at 2.

The Fifth Extension Motion prompted a number of objections, including from the RKS Claimants. These objections generally argued that: (i) the Reorganized Debtors should not have attempted to reach a class settlement with PERA in the Securities Litigation, (ii) the length of the extension sought was too long, and (iii) the Reorganized Debtors should be required to solely engage in the settlement process pursuant to the Securities Procedures. *See e.g.*, *The Kingstown Claimants' Objection to Reorganized Debtors' Fifth Extension Motion*, dated November 8, 2022 [Dkt. No. 13163]. No objections were raised to the extension of the objection deadline as to the General Claims.

The Reorganized Debtors were able to consensually resolve a number of these objections. As one important example, the RKS Claimants agreed to withdraw their objection after the Reorganized Debtors agreed to both reduce the requested extension period from 270 days to 180 days, and to pursue the resolution of the RKS Claimants' claims in a mediation during the extension period. Self-evidently, these agreements did not guarantee the success of the mediation between RKS and the Reorganized Debtors.

The Reorganized Debtors also committed to set aggressive targets for issuing offers pursuant to the Securities Procedures during the extension period. The Reorganized Debtors committed to make offers during the first four months of 2023 "to a majority of the remaining Securities Claimants, averaging about 750 offers per month" if there was no global settlement. *See Reorganized Debtors' Omnibus Reply in Further Support of Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief*, dated November 28, 2022 [Dkt. No. 13292] at 5. The Reorganized Debtors have exceeded this goal.

On November 30, 2022, the Court held a hearing on the Fifth Extension Motion. After the hearing, on December 15, 2022, the Court extended the objection deadline an additional 180 days, through and including June 20, 2023 (the "**Fifth Extension Period**"). The Order also required that the Reorganized Debtors provide certain information to the objecting parties and make settlement offers to them no later than February 28, 2023, in accordance with the Securities Procedures (as

defined in the Fifth Extension Order).[8]  *See Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and Granting Related Relief*, dated December 15, 2022 [Dkt. No. 13363] (the "**Fifth Extension Order**").

As demonstrated above, the Reorganized Debtors have exceeded the goals set during the process of obtaining the Fifth Extension Order.

### E.     RKS Claimants

The RKS Claimants have repeatedly sought to require the Reorganized Debtors to start litigating the merits of their claims (even though they have not even filed a complaint with their proofs of claim) in order to put pressure on the Reorganized Debtors to settle with their clients on preferential terms.  Indeed, RKS will likely object to this Motion, arguing that it is simply an attempt by the Reorganized Debtors to delay resolution of their claims, and that their claims should be resolved by litigation now even if it results in expensive piecemeal litigation and discovery. Any such objection should be viewed through the lens of RKS' inconsistent representations to this Court and the District Court overseeing the Securities Litigation.

The Reorganized Debtors consensually resolved RKS' objection to the Fifth Extension Motion by agreeing to reduce the extension period requested and to attempt to mediate the RKS claims with a mediator of RKS' choosing outside of the mediation process contemplated by the Securities Procedures. It is now apparent that RKS never intended to mediate in good faith. Instead, RKS desired to quickly dispense with settlement negotiations and mediation and have the Court direct that their claims be litigated. RKS terminated the mediation after just one day despite the Reorganized Debtors having made reasonable and fair offers and without any prior discussion concerning termination of the mediation with the Reorganized Debtors.  *See Declaration of Richard W. Slack in Support of Reorganized Debtors' Opposition to the RKS Claimants' Motion to Enforce the ADR Procedures Order and Establish a March 20, 2023 Deadline to Object to the RKS Claimants' Claims*, dated February 21, 2023 [Dkt. No. 13529].

---

[8] The Debtors met their obligation to provide offers to the objectors by February 28, 2023. Several objectors, including Vanguard, Dimensional, Chevron and others, have sought extensions to respond to the offers.

1       As part of their strategy, shortly afterwards, the RKS Claimants filed their *Motion to Enforce*

2  *the ADR Procedures Order and Establish a March 20, 2023 Deadline to Object to the RKS*

3  *Claimants' Claims*, dated February 6, 2023 [Dkt. No. 13492] (the "**Motion to Enforce**"). Pursuant

4  to the Motion to Enforce, the RKS Claimants sought, in complete contradiction to the agreement

5  reached with the Reorganized Debtors, to impose an early March 20, 2023 objection deadline with

6  respect to the RKS claims.

7       Rather than being subject to the objection deadline to which they agreed and to the Securities

8  Procedures, the RKS Claimants demanded that the Court allow them to skip to the head of the line

9  and "proceed with the claims allowance process mandated by bankruptcy law." *Id.* at 2. Indeed, in

10  their reply in support of the Motion to Enforce [Dkt. No. 13556], the RKS Claimants described a

11  quick pivot to litigation as "the only course forward." *Id.* at 4.

12       RKS' attempt to avoid any additional negotiation and mediation under the Securities

13  Procedures was in sharp contrast to what RKS was telling the District Court. As stated above, just a

14  few days after filing the Motion to Enforce, the RKS Claimants filed their *Motion to Intervene and*

15  *Memorandum of Points and Authorities in Support Thereof* on February 15, 2023 (the "**Motion to**

16  **Intervene**"), attached as **<u>Exhibit A</u>** to the Slack Declaration, in the Securities Litigation. RKS' stated

17  purpose of their Motion to Intervene was to "disrupt" the negotiations between the Reorganized

18  Debtors and PERA regarding a global settlement of the Securities Claims. Motion to Intervene at 2.

19  In the Motion to Intervene, RKS repeatedly told the District Court that it should continue to stay the

20  Securities Litigation to allow the Bankruptcy Court to implement and complete the Securities

21  Procedures. For example, RKS told the District Court that the Securities Claimants should have

22  "**their claims adjudicated in accordance with the Court-ordered ADR procedures that both the**

23  **Bankruptcy Court and this Court determined would be most efficient in resolving the securities**

24  **claims**" (*Id.* at 11) (emphasis added) and that it was imperative that the District Court "uphold the

25  stay and reject any effort by PERA to certify a settlement class ***until the ADR procedures***

26  ***conclude***[.]" *Id.* at 15 (emphasis added).

27       The RKS Claimants also represented to the District Court in the Motion to Intervene that the

28  Securities Procedures were "a simple, one-track process for resolution of the Bankruptcy Claims"

and that "[b]oth this Court and the Bankruptcy Court have found that the [Securities Procedures] are the superior and most efficient method of adjudicating these claims[,]" and that "[a] motion for preliminary approval of a settlement . . . would act as a *de facto* reconsideration motion of both Courts' prior determinations, which should not be permitted[.]" Motion to Intervene at 2.

Indeed, in their reply, filed on March 28, 2023, in support of their Motion to Intervene—months after the Fifth Extension Motion—RKS continued to represent to the District Court the virtues of allowing the Securities Procedures to play out to their conclusion. *See Movant Plaintiffs' Reply Memorandum in Further Support of Motion to Intervene* (the "**Motion to Intervene Reply**") [Securities Litigation Dkt. No. 244] at 5, attached as **Exhibit B** to the Slack Declaration ("The Motion was clear about the Movants' goals in moving to intervene: 'The Movants now bring this motion to intervene for the purposes of protecting their rights in the Bankruptcy to complete the [Securities Procedures] ordered by the Bankruptcy Court, and to ensure that no actions will be taken in this Court to undermine the claims process.'"); *see also id.* at 12 – 13 ("Critically, Judge Montali adopted the [Securities Procedures] while rejecting a class resolution approach proposed by PERA because he expected that individual claims resolution would more 'quickly and inexpensively' allow the claimants to recover from the company.").

After a hearing on RKS' Motion to Enforce, this Court entered an order specifying procedures for the Reorganized Debtors' handling of the RKS claims (the "**RKS Order**"). *See Order on the RKS Claimants' Motion to Enforce the ADR Procedures Order*, dated March 13, 2023 [Dkt. No. 13612]. The Court set April 17, 2023 as a deadline for the Reorganized Debtors to issue settlement offers to all RKS Claimants, and provided the RKS Claimants 35 days to respond to the Reorganized Debtors' offers. *Id.* at 3. Finally, the Court directed the Reorganized Debtors to include in their notice of this Motion that claimants, including the RKS Claimants, will have the normal time to respond to this Motion and may make suggestions to streamline or otherwise facilitate the Securities Procedures. *Id.* The Reorganized Debtors have fully complied with the Court's order and have issued settlement

offers to the RKS Claimants on a claimant by claimant basis.[9] Indeed, the Reorganized Debtors look forward to mediations with each RKS Claimant in an effort to resolve some or all of the RKS Claimants' claims.

## IV. BASIS FOR RELIEF REQUESTED

### A. The Court Has the Authority to Extend the Current Objection Deadline

The Court has the express authority to extend the Current Objection Deadline, and cause exists for it to do so. Section 7.1 of the Plan (as approved by Paragraph 31 of the Confirmation Order) provides that the Current Objection Deadline may be extended by the Court for cause shown. Plan § 7.1. This provision anticipates and provides the necessary authority for the Motion.

Even in the absence of express authority, Bankruptcy Rule 9006(b) provides in relevant part that "when an act is required or allowed to be done at or within a specified period . . . by order of [the] court, the court for cause shown may at any time in its discretion . . . order the period enlarged . . . ." Fed. R. Bankr. P. 9006(b)(1). The Plan and Confirmation Order provide that the Court retains jurisdiction over "all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code . . . ." Plan § 11.1; Confirmation Order ¶ 78. Finally, the Plan also provides that the Court retains jurisdiction for, *inter alia*, the following purposes:

> (d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claims;…[and]

> (k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation[.]

---

[9] The Reorganized Debtors issued 25 offers to various RKS Claimants prior to the Court's consideration of the Motion to Enforce. RKS declined those offers without any counter-offers, and thus, it appears that RKS continues to have no intention to engage in efforts to pursue settlements on a claimant by claimant basis with the Reorganized Debtors. The remaining RKS Claimants received individual offers following the hearing on the Motion to Enforce and responses to those offers are due after the filing date of this Motion. As of the morning of May 17, 2023, Securities Claimants represented by RKS have now declined 322 of the offers made following the hearing on the Motion to Enforce without making counter-offers under the Securities Procedures. The RKS Claimants comprise approximately 74 percent of all settlement offers declined. Thus, in contrast to their representations to the District Court overseeing the Securities Litigation, the RKS Claimants have made no efforts to resolve claims pursuant to, or otherwise utilize, the Securities Procedures.

Plan § 11.1(d) and (k). These provisions underscore the Court's authority to extend the Current Objection Deadline.

Indeed, the Plan's express authority to extend the Current Objection Deadline is consistent with the Court's general authority under sections 105(a) and 1142(b) of the Bankruptcy Code to issue orders necessary for the consummation of the Plan or to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); 11 U.S.C. § 1142(b) ("The court may direct the debtor . . . to perform any other act . . . that is necessary for the consummation of the plan."); *see also Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."); *Nobel Grp., Inc. v. Bank (In re Nobel Grp., Inc.)*, 529 B.R. 284, 290-91 (Bankr. N.D. Cal. 2015) (quoting *Binder v. Price Waterhouse & Co., (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004) ("Post-confirmation jurisdiction is assumed by statute and rule: 11 U.S.C. § 1142(b) authorizes the bankruptcy court to 'direct' the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan[.]"). These provisions also grant the Court ample authority to deem as "objected to" any Claims that are being litigated in a non-bankruptcy forum pursuant to an order of this Court modifying the automatic stay or the Plan Injunction.

Finally, the Court has the inherent power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Dependable Highway Express, Inc. v. Navigators Ins*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This request to further extend the Current Objection Deadline is in line with relief granted in chapter 11 cases of similar size and complexity. *See, e.g.*, *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008), Dkt. Nos. 41286, 50165, 54122, 58842 (extending claims objection deadline four times, for a total of six years); *In re Motors Liquidation Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009), Dkt. Nos. 10938, 11546, 12092, 12364, 12499, 12610 (extending claims objection deadline six times, for a total of

nearly three years); *In re Ditech Holding Corp.,* Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 11, 2019), Dkt. Nos., 1925, 2829, 3190, 3440, 3682, 3861, 4073, 4514 (extending claims objection deadline eight times, for a total of over four years).

### B. Good Cause Exists to Extend the Current Objection Deadline

The Reorganized Debtors have acted diligently to review and resolve the immense number of Claims asserted in these Chapter 11 Cases. As of May 12, 2023, the Reorganized Debtors have resolved approximately 19,672 Claims with asserted amounts of $61.1 billion in the aggregate, representing approximately 89% of the aggregate dollar amount of Claims asserted in these Chapter 11 Cases. The Reorganized Debtors believe that the requested extension of 180 days is required and reasonable in light of the circumstances.

With respect to the Securities Claims, in connection with the Fifth Extension Motion, the Reorganized Debtors represented to the Court that they would establish reasonable and aggressive goals under the Securities Procedures to resolve claims. The Reorganized Debtors were transparent with the Court that, even under the aggressive standards set, the Securities Procedures would not be fully resolved by the end of the Fifth Extension Period. *See* Nov. 30, 2022 Hr'g Tr. at 43:1-5 ("[W]e're proposing to make offers to about 3,000 of these remaining 5,800 claims in the first four months of 2023, if there's no global class settlement. Which will be the vast majority of claims with complete information and not subject in whole or in part to an omnibus objection."). The Reorganized Debtors exceeded their goals and have made substantial progress in resolving the Securities Claims. As expected, more time is necessary to complete the process contemplated by the Securities Procedures, including the institution of mediations with experienced mediators to try and resolve claims that were not resolved through the offer process.

Extension of the Current Objection Deadline will benefit the estates as a whole, including creditors and other parties in interest. It will enable the Reorganized Debtors to continue to engage in meaningful negotiations to resolve Claims consensually, minimizing the need to file and litigate objections on a piecemeal basis that accelerates resolution of some claims over others. Resolving a Claim without a formal objection benefits both the holder of the Claim and the Reorganized Debtors' other stakeholders by avoiding the burden and expense of litigation.

Further, if the Current Objection Deadline is not extended, the Reorganized Debtors will be compelled to divert their resources from resolving claims consensually to filing new objections to those remaining claims for which no objection has been filed. Indeed, if the requested relief were not granted, the Reorganized Debtors would be forced to file objections on the basis that virtually none of the Securities Claimants—including the RKS Claimants—has stated a claim because those claimants have not asserted any allegations or causes of action against PG&E, but have instead provided only their purported trading information. In response to such an objection, the Court would likely impose some form of the procedures that the Reorganized Debtors propose here—to allow claimants to elect to sign onto the PERA Complaint or file their own. This process would not be in the best interests of the Reorganized Debtors, their stakeholders, the Fire Victim Trust (which still holds a significant stake in the Reorganized Debtors' equity), or the claimants themselves.

For these reasons, the Reorganized Debtors submit that extending the Current Objection Deadline through and including December 18, 2023, without prejudice to the Reorganized Debtors' right to seek additional extensions thereof, is appropriate under the circumstances.

## C. The Reorganized Debtors' Proposed Changes to the Securities Mediation Procedures Should be Approved

The Court invited the Reorganized Debtors to make suggestions to streamline the Securities Procedures. No claimant has made any suggestions to the Reorganized Debtors for modifications to the Securities Procedures. Although the Reorganized Debtors do not believe any substantive modifications to the Securities Procedures are needed, this Motion proposes two procedural modifications to the Securities Mediation Procedures that will aid in the efficient resolution of the remaining Securities Claims. The Reorganized Debtors also propose a separate mechanism to begin the substantive resolution of any unresolved Securities Claims that remain when the Securities Procedures have been exhausted.

### 1. Proposed Modifications to the Securities Mediation Procedures

The Reorganized Debtors propose two limited amendments to the Securities Mediation Procedures. First, in order to efficiently employ mediators, the Reorganized Debtors propose amending Section III.A.1 of the Securities Mediation Procedures as provided in **Exhibit B** to allow

up to five contemporaneous Abbreviated Mediations before a Mediator on the same day. Second, the Reorganized Debtors propose amending Sections III.A.2 and III.B.2 as provided in **Exhibit B** to allow the Reorganized Debtors to add Mediators to both the Abbreviated Panel and the Standard Panel upon submission of a notice to the Court without need for further Court order. The Reorganized Debtors believe these amendments will promote the efficient resolution of the Securities Claims without prejudice to the rights of any purported claimant.

> 2. *The Reorganized Debtors Propose Separate Procedures to Facilitate Securities Claims Litigation Following Exhaustion of the Securities Procedures*

The Reorganized Debtors are hopeful that all Securities Claims can be resolved through either the settlement offer, objection, or mediation procedures provided for in the Securities Procedures. However, it is likely that some Securities Claims may require adjudication once the Securities Procedures have run their course. While the Extended Bar Date permitted claimants to file a customized proof of claim form for their Securities Claims, if these claims are going to require a determination on the merits, there needs to be a complaint or similar disclosure where claimants allege their specific causes of action, alleged misrepresentations, and allegations that could plausibly establish a basis for a claim under the securities laws. It is well-established that with respect to a bankruptcy proof of claim, "the claimant must allege facts sufficient to support the claim." *Hilton v. Hongisto (In re Hongisto)*, 293 B.R. 45, 50 (N.D. Cal. 2003) (quoting *In re Consol. Pioneer Mortg.*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd*, 86 F. App'x 331 (9th Cir. 2004). If a claim does not allege facts sufficient to support a legal liability, "the claim is not prima facie valid." *Id*.

Without this first step, nearly every Securities Claim would be subject to dismissal at the outset. Indeed, for Securities Claims under Section 10(b) of the Exchange Act, the pleading standards imposed by the Private Securities Litigation Reform Act and Federal Rule of Civil Procedure 9(b) set a high bar. To survive a motion to dismiss, claimants must adequately plead (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). A claimant must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading[]" with particularity and must

allege facts supporting a plausible theory that "the statements were false or misleading at the time they were made." 15 U.S.C. § 78u-4(b)(1)(B); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). Claimants must "state with particularity facts giving rise to a strong inference that the defendant" acted with scienter—*i.e.* that defendants knew the identified statement(s) was false, or were deliberately reckless to its truth or falsity. 15 U.S.C. § 78u-4(b)(1)(B); *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) (citation omitted). A claimant may plead reliance by alleging that they directly relied on the identified misstatement(s), or through the fraud-on-the-market presumption, relying on the integrity of the stock price. *See Basic v. Levinson*, 485 U.S. 244, 247 (1988). Finally, pleading loss causation requires identifying when the information allegedly correcting the identified misstatement(s) was publicly disclosed, and "show[ing] a 'causal connection between the fraud and the loss by tracing the loss back to the very facts about which the defendant lied.'" *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022) (quotations omitted).

Nearly all of the Securities Claims plainly fail to state a claim because they have not asserted any factual allegations or causes of action. The Reorganized Debtors recognize, however, the inefficiency in filing objections to these placeholder claims. Rather than proceed with an objection that would be met with requests for time to file a complaint or join the PERA Complaint, the Reorganized Debtors propose that if an order is entered granting an extension, (the "**Extension Order**"), the Reorganized Debtors will implement the following set of procedures to allow for the orderly litigation and resolution of the Securities Claims that remain unresolved once the Securities Procedures have been exhausted.

- By August 21, 2023 (within 60 days of the additional extension period provided for in the Extension Order), the Reorganized Debtors will send each claimant with an unresolved Securities Claim a notice requiring them to make an election within 40 days of the mailing of the notice to either (a) provide the Reorganized Debtors with a complaint or similar disclosure; or (b) adopt the alleged misstatements identified in, and allegations made in the PERA Complaint as the basis for their claims. The notice will further provide that any Securities Claimant who adopts the PERA Complaint

will be bound by any determination by the Bankruptcy Court of the law or facts with respect to the resolution of any merits issues regarding the PERA Complaint, regardless of the claimant who makes or opposes the motion, objection, or filing.

- By October 13, 2023 (within 115 days of the additional extension period provided for in the Extension Order), the Reorganized Debtors will file with the Court a status report updating (a) the status of settlements, including the number of Securities Claims resolved, the number of individual claimants or groups of claimants holding unresolved Securities Claims, the number of abbreviated and standard mediations that have been commenced and resolved; (b) the number of individual claimants or groups of claimants who chose to file a separate pleading or disclosure setting forth their claims; and (c) the number of individual claimants or groups of claimants that chose to adopt the PERA Complaint. Because this notice process will run concurrently with any additional extension, the Reorganized Debtors will continue to work aggressively towards resolving the Securities Claims through the Securities Procedures, avoiding any delay.

- By November 7, 2023 (within the first 140 days of the additional extension period provided for in the Extension Order), the Reorganized Debtors will file two motions: (1) a substantive motion to dismiss all or portions of the PERA Complaint, similar to the motions to dismiss filed in the Securities Litigation by the director and officer defendants; and (2) a motion to dismiss the claims of any claimant who fails to respond to the notice. The second motion will be a motion to dismiss on the basis of failure to state a claim (not a default for failure to respond to the notice).

- With respect to the claimants who file separate pleadings, after reviewing the substance and number of separate pleadings or disclosures, and contemporaneous with any further extension of the objection deadline, the Reorganized Debtors thereafter will propose procedures to resolve the outstanding claims that have not yet been resolved, if any, in an efficient and coordinated manner. The nature of these procedures will necessarily depend on the number of unresolved claims and the

similarity of claims and causes of action, among other things, in the separate pleadings filed by claimants. A stay of discovery—which is mandated by the PSLRA in any court—will continue as to all claimants in order to avoid the cost and expense of what is sure to be very expensive discovery until the Reorganized Debtors (along with the remaining claimants and the Court) can determine the most efficient way to litigate any remaining claims once the Securities Procedures have been exhausted.

The proposed additional procedures will provide claimants with an opportunity to assert causes of action without the Reorganized Debtors simply objecting that the vast majority of Securities Claims fail to state a claim in an omnibus objection. The Reorganized Debtors, in turn, will have a full and fair opportunity to object to Securities Claims based on the actual causes of action being asserted. Such procedures will also prevent piecemeal and uncoordinated litigation and discovery by certain claimants, a costly and inefficient process that should be avoided.

**V.      NOTICE**

Notice of this Motion (the "**Notice**") will be provided to: (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Cameron M. Gulden, Esq.); (ii) all counsel and parties receiving electronic notice in these Chapter 11 Cases through the Court's electronic case filing system; and (iii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002.

Pursuant to the RKS Order, the Notice includes a notification that the above-captioned response deadline is the date by which holders of Securities Claims, including the RKS Claimants, shall oppose or respond to the Motion, including to make suggestions for streamlining or otherwise

facilitating the Securities Procedures, and responding to the Reorganized Debtors' proposals with respect to the Securities Procedures contained in the Motion.

The Reorganized Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Reorganized Debtors to this or any other Court other than the previous requests for extensions referred to above.

WHEREFORE the Reorganized Debtors respectfully request entry of the Proposed Order granting (i) the relief requested herein, and (ii) such other and further relief for the Reorganized Debtors as the Court may deem just and appropriate.

Dated: May 17, 2023

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**

*/s/ Richard W. Slack*
Richard W. Slack
*Attorneys for the Debtors and Reorganized Debtors*