WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: (212) 310-8007

KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Gabrielle L. Albert (#190895)
(galbert@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>      **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                    **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF ROBB MCWILLIAMS IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**<br><br>**Response Deadline:**<br>**May 31, 2023, 4:00 p.m. (PT)**<br><br>**Hearing Information If Timely Response Made:**<br>Date:   June 7, 2023<br>Time:  10:00 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>     United States Bankruptcy Court<br>     Courtroom 17, 16th Floor<br>     San Francisco, CA 94102 |

1  I, Robb C. McWilliams, hereby declare that the following is true and correct to the best of my

2 knowledge, information and belief:

3   1.  I am a Partner and Managing Director at the firm of AlixPartners, LLP, which is an

4 affiliate of both AlixPartners, LLC and AP Services, LLC (collectively, "**AlixPartners**"). AlixPartners

5 provided interim management services to Pacific Gas and Electric Corporation and Pacific Gas and

6 Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors**," and as reorganized

7 pursuant to the Plan, the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the

8 "**Chapter 11 Cases**"). AlixPartners continues to assist the Reorganized Debtors in resolving the Chapter

9 11 General Claims while also providing support with respect to the Securities Claims. I submit this

10 Declaration in support of the *Motion for Entry of an Order Further Extending Deadline for the*

11 *Reorganized Debtors to Object to Claims and for Related Relief* (the "**Motion**").[1]

12   2.  In my current position, I am responsible for overseeing the bankruptcy case management

13 component of AlixPartners' assignment to assist the Reorganized Debtors with various matters related

14 to these Chapter 11 Cases. My areas of responsibility include the effort by AlixPartners, in coordination

15 with the Reorganized Debtors, to review and assess the validity of all claims asserted against the Debtors,

16 other than (a) Fire Claims and Subrogation Wildfire Claims and (b) providing support with respect to

17 Securities Claims. I am generally familiar with the Reorganized Debtors' day-to-day operations,

18 financing arrangements, business affairs, and books and records. Except as otherwise indicated herein,

19 all facts set forth in this Declaration are based upon my personal knowledge, the knowledge of other

20 AlixPartners professionals working under and alongside me on this matter, my discussions with the

21 Reorganized Debtors' personnel and the Reorganized Debtors' various other advisors, and my review of

22 relevant documents and information prepared by the Reorganized Debtors.  If called upon to testify, I

23 would testify competently to the facts set forth in this Declaration. I am authorized to submit this

24 Declaration in support of the Motion.

25

26 [1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

27                2

28

3.      A team of AlixPartners professionals under my supervision has been actively involved in the claims review and reconciliation process since shortly after the filing of these Chapter 11 Cases. AlixPartners initially assisted the Debtors in the preparation of their bankruptcy schedules based on the Debtors' books and records. AlixPartners also has coordinated with the Debtors in reconciling and reviewing filed proofs of claim with claims reflected in the Debtors' schedules and books and records. AlixPartners has developed and maintains a claims reconciliation database and various data management applications that are used by the Reorganized Debtors and AlixPartners, among other things, to identify both valid claims as well as claims that are not valid in whole or in part and the appropriate grounds for objection to such claims. AlixPartners has been supporting, and will continue to support, the efforts of the Reorganized Debtors and their counsel to resolve disputed claims, including by formal objections as necessary.

4.      The Debtors began the process of gathering and consolidating information relating to their liabilities when preparing their schedules and statements of financial affairs, long before any Proofs of Claim were filed in these Chapter 11 Cases. As indicated in the Initial Extension Motion, more than 22,440 Proofs of Claim had been scheduled or filed against the Debtors, asserting over $68.4 billion in the aggregate (not including Claims listed in the Debtors' schedules as contingent, unliquidated, and/or disputed).[2] The reconciliation, resolution, and distributions of the claims have required extensive efforts by the Reorganized Debtors' team of advisors, attorneys, and personnel.

5.      As of Friday, May 12, 2023, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved approximately 19,672 claims asserting approximately $61.1 billion in claims, representing approximately 89% of the total dollar amount of claims asserted in these Chapter 11 Cases (including

---

[2] Since the First Extension Motion, the Reorganized Debtors received approximately 1,630 additional untimely Claims asserting approximately $500 million in aggregate claims. This brings the total number of Proofs of Claim filed or scheduled against the Debtors to more than 24,000 in count, asserting approximately $68.9 billion in aggregate claims. These figures and the other discussed exclude approximately 87,800 Fire Victim Claims and Subrogation Wildfire Claims, which will be resolved by the Fire Victim Trust and Subrogation Wildfire Trust, respectively, in accordance with the Plan.

Case: 19-30088   Doc# 13747   Filed: 05/17/23   Entered: 05/17/23 20:18:12   Page 3 of 7

Securities Claims, but excluding Fire Victim Claims and Subrogation Wildfire Claims).

### A. The General Claims

6. <u>Resolved Claims</u>. The Debtors and Reorganized Debtors have undertaken extensive efforts to resolve certain General Claims through negotiated settlements, including through the General Claims Procedures further described below. These negotiation efforts have yielded the settlement of approximately 2,366 General Claims, totaling over $5.6 billion in asserted claim amounts (plus unliquidated amounts), both within and separate from the General Claims Procedures discussed below. Approximately 44 of those General Claims have been settled during the Fifth Extension Period. Another 9,510 of the General Claims were resolved through omnibus objections filed since the Effective Date, as well as related claim withdrawals and the expungement of late-filed claims.

7. <u>Claims Litigated Outside of the Bankruptcy Court</u>. Currently approximately 38 General Claims are being litigated in non-bankruptcy fora, pursuant to order of the Court modifying the automatic stay or Plan Injunction. Pursuant to the Third Extension Order, such Claims are deemed to have been objected to for purposes of the Plan's definition of "Allowed." Plan, Section 1.7(f).

8. <u>Recategorized Claims</u>. In March 2023, the Fire Victim Trustee and the Reorganized Debtors identified eight claims, which had been preliminary identified as Fire Victim Claims but did not in fact constitute Fire Victim Claims. The Reorganized Debtors have filed objections to all eight of these Recategorized Claims and those objections are pending as of the date of this motion.

9. <u>Remaining Claims</u>. Since the Effective Date, the Reorganized Debtors have successfully resolved 99% of the General Claims. There currently remain approximately 84 General Claims that are unresolved. Of the remaining 84 General Claims that are unresolved, most are either indemnification/subrogation claims that will not be known or liquidated until the conclusion of the underlying disputes or claims where the parties are attempting to resolve the dispute without the need for court intervention.

### B. The Securities Claims

10. <u>Settlement Offers</u>. AlixPartners has set up a web site to manage the settlement offer

4

process for Securities Claims. Typically when offers are sent to holders of Securities Claims, AlixPartners provides a unique login and password that allows the claimant to review the offer and respond to the offer on-line. As a result, AlixPartners is able to monitor which claimants have reviewed their offers online as well as the responses, if any, to the offers.

11. The Securities Procedures have been effective in resolving Securities Claims. As of Friday May 12, 2023, the Reorganized Debtors have extended settlement offers pursuant to the Securities Procedures with respect to 4,997 Securities Claims. Settlement offers were made with respect to 3,597 Securities Claims during the Fifth Extension Period. The Reorganized Debtors have now made settlement offers to approximately 72 percent of all Securities Claims that have not been expunged, disallowed, or withdrawn.

12. The response to the settlement offers continues to be positive. As a result of the settlement offers, 2,580 Securities Claims have been settled. During the Fifth Extension Period, settlement offers have been accepted with regard to 1,552 Securities Claims. Overall, the rate of acceptance on settlement offers remains very high. As of Friday, May 12, 2023, 90 percent of the settlement offers opened and viewed on the settlement web portal have been accepted. As of Friday, May 12, 2023, only 136 settlement offers, relating to 147 claims, have been declined.[3] As of Friday May 12, 2023, 2,270 Securities Claims which have received settlement offers have not either accepted or declined those offers. Most of these settlement offers are either unopened (we have, on behalf of the Reorganized Debtors sent reminders to claimants with unopened offers) or are in the process of active negotiations between claimants and the Reorganized Debtors under the Securities Procedures.

13. Omnibus Objections. As of Friday, May 12, 2023, the Reorganized Debtors have filed 21 Securities Claims Omnibus Objections to the Securities Claims, resulting in the disallowance and expungement of 1,805 Securities Claims.

---

[3] After May 12, 2023, we have received (as of 10:30AM ET on May 17, 2023) notice that 322 Securities Claimants represented by RKS have declined offers without making counter-offers under the Securities Procedures. Thus, of the total number of claims outright denying settlement offers under the Securities Procedures, 74 percent of those claims are by claimants represented by RKS.

5

14. <u>Claims Resolved Through Other Means</u>. As of the date of this Motion, the Reorganized Debtors have expunged 72 Securities Claims through omnibus objections under the General Claims Procedures, an employee claims objection, and stipulations filed with the Court. An additional 201 Securities Claims have been withdrawn.

15. <u>Total Resolved Securities Claims</u>. 8,848 Securities Claims have been submitted in the Chapter 11 Cases. Of these claims, approximately 4,574 were filed as of the Extended Bar Date. An additional approximately 4,274 Securities Claims have been submitted following the Extended Bar Date, some as amendments of prior claims. The Reorganized Debtors have resolved through settlements, omnibus motions or otherwise, more than half of the total Securities Claims submitted – approximately 4,650 Securities Claims, representing $1.5 billion in face value. The graph attached hereto as **Exhibit A** provides a summary of Securities Claims resolved since the Effective Date and progress made during the Fifth Extension Period.

16. <u>Remaining Claims</u>. Of the approximately 4,200 Securities Claims that remain unresolved, the Reorganized Debtors have made settlement offers with respect to 2,417 claims. As of May 12, 2023, 2,270 of those offers remain pending. Over 97% of the unresolved potential damage amount resides in approximately 94 individual claimants or affiliated groups of claimants.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

6

1    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

2    correct to the best of my knowledge, information, and belief.

3

4    Executed May 17, 2023 in Dallas, Texas.

5

6                                                    */s/ Robb McWilliams*
                                                     Robb McWilliams
7                                                    Managing Director

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                   7

28