**Exhibit B**

ROLNICK KRAMER SADIGHI LLP
Lawrence M. Rolnick (*pro hac vice*)
lrolnick@rksllp.com
Marc B. Kramer (*pro hac vice*)
mkramer@rksllp.com
Michael J. Hampson (*pro hac vice*)
mhampson@rksllp.com
Jeffrey A. Ritholtz (*pro hac vice*)
jritholtz@rksllp.com
Frank T.M. Catalina (*pro hac vice*)
fcatalina@rksllp.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

THE LONG LAW FIRM, PLLC
James A. Long CSB No. 326404
8605 Santa Monica Blvd.
PMB 48629
West Hollywood, CA 90069
(315) 991-8000 Telephone
jlong@long.law

*Attorneys for the Movant Plaintiffs*

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE PG&E CORPORATION SECURITIES LITIGATION | Case No. 5:18-cv-03509-EJD <br><br> **MOVANT PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO INTERVENE** <br><br> **Hearing Information:** <br> Date:     June 29, 2023 <br> Time:     9:00 a.m. (Pacific Time) <br> Place:    Courtroom 4 (5th Floor) |

1
2
3

## **TABLE OF CONTENTS**

4
**Page**

5
6
INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 4

  A.  The Movants Seek Intervention for an Appropriate Purpose ............................. 4

  B.  The Movants Satisfy All Requirements for Intervention Under Rule 24(a)...................... 6

      1.    The Movants Have Significantly Protectable Interests........................................... 6

      2.    The Movants' Interests Will Be Impaired ............................................. 7

      3.    The Movants' Interests Are Not Adequately Represented ................................. 10

      4.    The Motion is Timely ......................................................................... 11

  C.  In the Alternative, the Movants Should Be Granted Permissive Intervention................... 15

CONCLUSION...................................................................................................... 15

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF AUTHORITIES</u>**

**Page**

**Cases**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .................................................. 12

*Apartment Association of Los Angeles County, Inc. v. City of Los Angeles*,
   2020 WL 4501792 (C.D. Cal. Aug. 5, 2020)............................... 11

*B.G.N. Fremont Square Ltd. v. Chung*,
   2011 WL 13129968 (C.D. Cal. Sep. 27, 2011)........................... 11

*Beckman Industries, Inc. v. International Insurance Co.*,
   966 F.2d 470 (9th Cir. 1992) .................................................... 15

*Bergman v. Thelen LLP*,
   2009 WL 1308019 (May 11, 2009) ........................................... 11

*Brooks v. Life Care Centers of America, Inc.*,
   2015 WL 13390031 (C.D. Cal. Mar. 3, 2015) ........................... 10

*Chavez v. PVH Corp.*,
   2014 WL 6617142 (N.D. Cal. Nov. 20, 2014) ........................... 12

*Cicero v. Directv, Inc.*,
   2010 WL 11463634 (C.D. Cal. Mar. 2, 2010) .............................. 6

*Citizens for Balanced Use v. Montana Wilderness Association*,
   647 F.3d 893 (9th Cir. 2011) ...................................................... 7

*Cody v. SoulCycle, Inc.*,
   2017 WL 8811114 (C.D. Cal. Sep. 20, 2017)............................. 12

*Cohorst v. BRE Properties, Inc.*,
   2011 WL 3489781 (S.D. Cal. July 19, 2011) ............................... 6

*Dixon v. Cost Plus*,

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

2012 WL 2499931 (N.D. Cal. June 27, 2012) ......................................................... 11

*Donnelly v. Glickman*,

159 F.3d 405 (9th Cir. 1998) ................................................................................. 4, 6

*Eacret v. Crunch, LLC*,

2021 WL 4722635 (N.D. Cal. Mar. 26, 2021) ........................................................... 8

*Eashoo v. Iovate Health Sciences U.S.A., Inc.*,

2015 WL 12696036 (C.D. Cal. May 26, 2015) ........................................................... 9

*Fresno County v. Andrus*,

622 F.2d 436 (9th Cir. 1980) ................................................................................... 6

*Glass v. UBS Financial Services, Inc.*,

2007 WL 474936 (N.D. Cal. Jan. 17, 2007) ............................................................... 9

*Gomes v. Eventbrite, Inc.*,

2020 WL 6381343 (N.D. Cal. Oct. 30, 2020) ......................................................... 6, 8

*In Matter of McLarty Industries, Inc.*,

2 B.R. 68 (N.D. Ga. Bankr. 1979) .......................................................................... 10

*In re Lopez-Soto*,

764 F.2d 23 (1st Cir. 1985) ................................................................................... 10

*League of United Latin American Citizens v. Wilson*,

131 F.3d 1297 (9th Cir. 1997) ................................................................................ 12

*National Wildlife Refuge Association v. Rural Utilities Service*,

2021 WL 2291084 (W.D. Wis. May 6, 2021) ............................................................. 7

*O'Connell v. Smith*,

2014 WL 12773900 (C.D. Cal. Aug. 18, 2014) ......................................................... 15

*Perry v. Proposition 8 Official Proponents*,

587 F. 3d 947 (9th Cir. 2009) ................................................................................ 11

*Southwest Center for Biological Diversity v. Berg*,

268 F.3d 810 (9th Cir. 2001) ................................................................................ 10

*Ubaldi v. SLM Corp.*,
  2014 WL 12639952 (N. D. Cal. June 13, 2014) ........................................................ 6

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ........................................................................... 4

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... 9, 10, 15

Fed. R. Civ. P. 24 ..................................................................................... passim

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1
2
3
4
5
6

The Movant Plaintiffs[1] submit this reply in further support of their motion to intervene in the above-captioned action (ECF No. 229, "Motion" or "Mot.") for the purpose of opposing an impending motion by the Named Plaintiffs[2] and Individual Defendants to lift the stay in this Action in connection with a motion for preliminary approval of a proposed class settlement.  In the event the stay is lifted, it will allow this Action to go forward *prior* to resolution of the related bankruptcy claims process contrary to the prior orders of both this Court and the Bankruptcy Court.

7

## **INTRODUCTION**

8
9
10
11
12
13
14
15

Up until now, PG&E, the Individual Defendants, the Bankruptcy Court, and this Court unanimously agreed that the most efficient way forward was to allow resolution of the claims administration process in the PG&E bankruptcy before proceeding with this Action.  In what can only be characterized as a sea change, PG&E and the Individual Defendants now appear poised to reverse course and proceed with an uncontested motion for preliminary approval to send a notice of settlement to thousands of claimants who have filed proofs of claim in the Bankruptcy Court.  To grant an uncontested motion for preliminary approval necessarily requires lifting the stay that this Court imposed on the Action pending resolution of the Bankruptcy Proceedings.

16
17
18
19
20
21
22

The Motion seeks to allow the Movants to argue against lifting the stay to allow the Bankruptcy Court overseeing PG&E to consider the appropriateness of any settlement that releases the thousands of claims against PG&E that have been filed in the Bankruptcy Court and/or purports to use PG&E's assets to settle both claims against non-debtors and of plaintiffs who have not filed bankruptcy claims before preliminary approval of that settlement is considered by this Court.  The requested intervention is thus not intended to "disrupt" efforts to fairly resolve this Action, but rather to ensure that any settlement of this Action will respect the Movants' rights as both putative

23
24
25
26
27
28

---

[1] The Movant Plaintiffs are identified in Appendix A to the Motion.  Capitalized terms not otherwise defined in this reply shall be given the same meanings ascribed to them in the Motion.

[2] "Named Plaintiffs" include lead plaintiff PERA, as well as plaintiffs York County on Behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

class members in this Action *and* claimants in the Bankruptcy Proceedings, including by respecting multiple orders of at least two courts directly relevant to those interests.  Despite the doomsaying from the Named Plaintiffs and the about-faced Individual Defendants, even if granted, the Motion would afford the Movants nothing more than a timely opportunity to be heard on this important issue–something this Court may well provide to any unnamed class member.

That there is any opposition at all to such a benign request to be heard gives away the game.  The Named Plaintiffs and Individual Defendants clearly aim to jointly seek relief from the stay and preliminary approval authorizing the issuance of notice to thousands of claimants as quickly as possible, regardless of fairness or appropriateness, and without any resistance, including guidance from the Bankruptcy Court.  They presumably fear that even a modicum of scrutiny of a proposed settlement by the Bankruptcy Court at this stage likely means failure because, among other reasons, they intend to use funds from PG&E's estate to settle claims against non-debtors and claims of those who have not filed proofs of claim in accordance with the Bankruptcy Plan and repeated rulings of the Bankruptcy Court, using a case that has no claims against PG&E remaining.  And though they deny, and even feign offense at, Movants' claim of "coordination," reaching a settlement in a class action and seeking preliminary approval *by definition* requires a coordinated effort.  That both sides oppose the Motion is only further evidence of their joint tactics.

The Movants are entitled to intervene to allow this Court the benefit of a genuinely adversarial process before deciding to lift the stay, reverse course, and preempt the ongoing efforts at claims resolution in progress in the Bankruptcy Proceedings.  The Movants hold interests in both the Action (as putative class members against the Individual Defendants) and the bankruptcy (as claimants against PG&E).  They therefore have reason to oppose lifting the stay and allowing notice of a class action settlement to be distributed to bankruptcy claimants not only on fairness grounds, but also to protect their bankruptcy interest.  In fact, if the Named Plaintiffs and Individual Defendants were to represent that a proposed settlement would *not* involve a release of claims against PG&E (nor require withdrawing bankruptcy claims) or the use of PG&E's funds, the Movants would withdraw the Motion.  But no such assurance is forthcoming.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1      Instead, the Named Plaintiffs and Individual Defendants would have this Court invoke

2  purportedly "well-established Ninth Circuit precedent" holding that a putative class member is not

3  permitted to intervene for the sole purpose of opposing preliminary approval of a class settlement,

4  and deny the Motion.  Even if courts in this Circuit were unanimous in establishing such a rule (far

5  from it), it would be inapposite here, where the Movants do not seek to object to preliminary

6  approval of a proposed settlement in the first instance, but rather to oppose any effort to lift the

7  Court-ordered stay of the Action before the parallel and overlapping Bankruptcy Proceedings have

8  concluded.  The opposing parties cannot point to any case with this nearly *sui generis* situation.

9      Granting preliminary approval without allowing the Movants to be heard in the face of

10  their bankruptcy interest would cause them prejudice.  For one thing, it would allow notice to be

11  sent out to thousands of putative class members who are claimants in the bankruptcy (including

12  the Movants) and would be utterly confused about the implications of a settlement on their

13  bankruptcy claims.  Further, it would serve as a pretext for PG&E to continue evading its

14  obligations under the Bankruptcy Court's ADR Procedures—which specifically carve out the

15  Named Plaintiffs, and which PG&E has largely ignored for over two years—and would thus

16  inevitably delay resolution of the Movants' claims until after the Court considers final approval

17  and opt-out rights are exercised, as needed.  In *Gomes v. Eventbrite*, this Court previously

18  recognized that intervention by a putative class member is appropriate to seek a postponement of

19  consideration of preliminary approval where to do so would benefit absent class members.  That

20  is virtually identical to the relief the Movants now request.  There is no reason this Court need lift

21  the stay, order preliminary approval and notice of settlement, or wait for final approval to

22  determine (as it has twice already) that the Bankruptcy Proceedings should take precedence.

23      Until weeks before the Movants filed their Motion, they had no reason to believe

24  intervention would be necessary.  The Individual Defendants and PG&E had argued *in favor* of

25  this Court imposing a stay pending resolution of the Bankruptcy Proceedings.  Circumstances

26  changed when PG&E stated in October 2022 that it had secretly "paused" compliance with the

27  ADR Procedures in a misguided effort to resolve this Action.  And even following PG&E's

28

startling admission, the Movants thought their interests would be preserved because PG&E had agreed to mediate their claims.  It was only once that mediation failed that the Movants found themselves in a position of having to intervene to protect their interests, and they expediently filed the Motion less than one month later.  The Motion is timely and should be granted.

## ARGUMENT

Despite this Circuit's "liberal policy in favor of intervention," *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002), the Named Plaintiffs and Individual Defendants oppose the Motion.  *See generally* Individual Defendants' Opposition to Movants' Motion to Intervene (ECF No. 242, "Defs. Opp."); Plaintiffs' Opposition to Movants' Motion to Intervene (ECF No. 243, "Plfs. Opp." and, together with Defs. Opp., "Oppositions").  They mischaracterize the purpose of the Motion, and then argue based on that faulty characterization that the Movants fail to meet the requirements of Rule 24(a) for intervention as of right, and that permissive intervention is not warranted.

Their objections are baseless.  The Movants plainly satisfy all elements of Rule 24(a): (i) they have a significantly protectable interest relating to the property that is the subject of the Action; (ii) disposition of the Action may impair or impede their ability to protect their interest; (iii) they are not adequately represented by the existing parties; and (iv) they timely moved.  *See Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  Intervention should therefore be granted as of right, or, in the alternative, the Court should use its discretion to grant permissive intervention.

### A.  The Movants Seek Intervention for an Appropriate Purpose

As an initial matter, the Oppositions completely mischaracterize the Movants' request as a motion "pertaining to dissatisfaction with a class action settlement."  Plfs. Opp. at 1; *see also* Defs. Opp. at 2 (arguing that "Movants' stated justifications for intervention are not applicable to **class action settlement opposition**") (emphasis added).  But as both Oppositions recognize, there is no settlement that has yet been proposed with which the Movants could be dissatisfied.  *See* Plfs. Opp. at 2 (describing the Motion as addressing "dissatisfaction with a ***potential*** settlement (emphasis in original)); Defs. Opp. at 9 (settlement is "hypothetical" and "may never come to fruition at all").

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Opposing a settlement is not the Movants' main purpose.  The Motion was clear about the Movants' goals in moving to intervene:  "The Movants now bring this motion to intervene for the purposes of protecting their rights in the Bankruptcy to complete the ADR procedures ordered by the Bankruptcy Court, and to ensure that no actions will be taken in this Court to undermine the claims process."  Mot. at 8.  In other words, the Movants seek to oppose entry of preliminary approval because the Court already stayed the Action "pending resolution of the bankruptcy proceedings."  ECF No. 217 at 1.  Therefore, before notice of a proposed settlement can be authorized for distribution to thousands of claimants in the Bankruptcy Proceedings, the Named Plaintiffs and Individual Defendants would need to make a motion to lift the stay.  *See id.* at 2 ("The parties may file a motion to reopen the case upon resolution of the bankruptcy proceedings, if appropriate.").[3]  The Movants, if granted permission to intervene, would oppose lifting the stay in the first instance—rather than granting preliminary approval—to allow claims resolution to play out in the Bankruptcy Proceedings and prevent undue confusion and delay that would ensue from granting preliminary approval and allowing the Named Plaintiffs to issue notices of settlement to thousands of claimants.  *See* Mot. at 14-15.  In so doing, the Movants would seek to protect their interests in receiving timely and adequate recoveries from defendants in both parallel proceedings—this Action and the bankruptcy.[4]

In fact, the Movants' intervention request would be moot if the proposed settlement did not implicate PG&E's bankruptcy estate, because it would have no impact on potential recoveries in the bankruptcy nor provide any basis for PG&E to pause the ADR Procedures.  But all indications point to a proposed settlement that includes PG&E.  The Individual Defendants have taken the

---

[3] Neither Opposition contends that a motion to lift the stay would not be required.

[4] The Named Plaintiffs puzzlingly allege that the Movants hid these intentions from the Court in their Motion.  *See* Plfs. Opp. at 16.  But the Movants stated explicitly their expectation that "PERA's proposed settlement will undermine the Movants' ability to recover in the Bankruptcy and potentially delay resolution of the Movants' claims for years," and sought relief narrowly targeted at that inevitability.  Mot. at 15.

position that funds obtained from PG&E's D&O insurers must be used to indemnify them in this Action, and explicitly quoted PG&E's statement to the Bankruptcy Court that funds from a settlement with its D&O insurers would "cover at least a meaningful portion of a potential settlement of [Securities Claims]." Defs. Opp. at 5. PG&E, in the same vein, told the Bankruptcy Court that it has paused the ADR Procedures to negotiate a "more global resolution of the Securities Claims," which ostensibly includes claims in this Action. Mot. at 8. And the Named Plaintiffs, for their part, have done nothing to assuage the Movants' concerns that any proposed settlement would incorporate funding from, and a release of their claims against, PG&E.

Accordingly, the Oppositions' attempts to equate the Movants' purpose in intervening with a typical objection to preliminary approval of a class settlement are disingenuous and should be disregarded. As is no doubt clear to this Court, which *sua sponte* stayed this Action in favor of the Bankruptcy Proceedings, there is nothing typical about this situation. The Court should consider *all* the practical implications of a decision to lift the stay and move forward with a claims-resolution process intended to disrupt and replace parallel proceedings in bankruptcy. *See Ubaldi v. SLM Corp.*, 2014 WL 12639952, at *1 (N. D. Cal. June 13, 2014) ("[T]he Court should be 'guided primarily by practical and equitable considerations' and 'should interpret the [Rule 24(a)] requirements broadly in favor of intervention.'" (quoting *Donnelly* 159 F.3d at 409)).

## B. The Movants Satisfy All Requirements for Intervention Under Rule 24(a)

### 1. The Movants Have Significantly Protectable Interests

The Ninth Circuit views the "interest" test as "basically a threshold one, . . . because the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to the task of limiting extension of the right to intervene." *Fresno Cty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). As a result, putative class members like the Movants are held to have significantly protectable interests just "by virtue of being members of the class in the federal suit." *Gomes v. Eventbrite, Inc.*, 2020 WL 6381343, at *3 (N.D. Cal. Oct. 30, 2020) (Davila, J.) (citing *Cicero v. Directv, Inc.*, 2010 WL 11463634, at *4 (C.D. Cal. Mar. 2, 2010)); *see also Cohorst v. BRE Props., Inc.*, 2011 WL 3489781, at *4 (S.D. Cal. July 19, 2011) ("[S]ince [the proposed

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

intervenor] is a class member there is no dispute that she has a significant protectable interest relating to the property or transaction that is the subject of this action.").

The Named Plaintiffs make only a half-hearted contention that the Movants' interests are too tenuous to support intervention because they are based on a "speculative economic expectancy" in PG&E's assets. Plfs. Opp. at 16-17. Their argument completely overlooks the Movants' interests as putative class members in *this* Action, which are sufficient to satisfy the Rule 24(a) requirement. *See id.*; *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) ("No specific legal or equitable interest need be established" under Rule 24(a) (internal quotation marks and citation omitted)). Notably, the Individual Defendants do not dispute that the Movants have significantly protectable interests.

**2.  The Movants' Interests Will Be Impaired**

The Movants' (and other putative class members') interests will be impaired in at least two ways if the Court were to lift the stay to grant preliminary approval of a class settlement. *First*, a proposed class settlement is likely to completely preempt the claims administration process that is currently underway in the Bankruptcy Court by releasing proofs of claim in the bankruptcy, or at least delaying their resolution under the Court-ordered ADR Procedures. Indeed, PG&E has already demonstrated that it will defer its obligations under the ADR Procedures while a settlement is being *negotiated*; it will certainly continue to put off negotiations of individual claims in the bankruptcy should a settlement be *preliminarily approved*. *See* Bankr. Dkt. No. 13122 at 10 (PG&E "paused [ADR Procedures] after [it] began discussions regarding a more global resolution of the Securities Claims"). If preliminary approval of a class settlement is granted, the Movants will be forced to wait until at least a hearing on final approval of the settlement (and perhaps even appeals) before meaningfully reengaging in claim resolution. The Movants should be permitted to intervene to prevent that imposition to a speedy resolution of their claims. *See, e.g.*, *Nat'l Wildlife Refuge Ass'n v. Rural Utils. Serv.*, 2021 WL 2291084, at *2 (W.D. Wis. May 6, 2021) (granting intervention to oppose requested injunctions that would "prevent or ***at least delay***" satisfaction of proposed intervenors' interests (emphasis added)).

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

*Second*, granting preliminary approval would authorize the Named Plaintiffs to provide notice to putative class members regarding the settlement.  As a significant portion of putative class members, including Movants, are also claimants in the PG&E bankruptcy, this notice would cause substantial and needless confusion, especially for those who filed their claims in the bankruptcy through claims administrators rather than counsel.  Since PG&E's bankruptcy, the Movants and other claimants have received multiple notices regarding their bankruptcy claims, and it has been their fair expectation that their securities claims would be resolved through the bankruptcy process, not via a collateral class settlement, particularly when class treatment has been twice rejected by the Bankruptcy Court.  There is no reason to rush through preliminary approval, upend those expectations, and force through a notice before the Movants are heard on the appropriateness of these steps.  *See Gomes*, 2020 WL 6381343, at *3 (allowing intervention prior to preliminary approval to avoid a scenario where "notice to the class will be sent without any mention of the [parallel action]"); *Eacret v. Crunch, LLC*, 2021 WL 4722635, at *1 (N.D. Cal. Mar. 26, 2021) ("[C]ounsel's desire to rush this case forward in an effort to secure attorneys' fees here is hardly a suitable justification for the confusion that would assuredly flow from putative class members receiving a notice of class action settlement in [a parallel action] at or near the same time as receiving *Belaire-West* notices in this case . . . .").

The Oppositions do not address either of these impairments directly.  Instead, they grasp at straws to distinguish this Court's decision in *Gomes v. Eventbrite*, where the Court granted an intervention motion prior to preliminary approval of a class settlement under practically the same circumstances because it benefitted the putative class to defer consideration of the settlement and the issuance of notices.  *See* Mot. at 14-15.  The Individual Defendants claim the Movants' request is "broad[er]" than the intervenors' request for a continuance in *Gomes*.  Defs. Opp. at 11.  But that is based on the misleading characterization of the Motion as a request "for the purpose of objecting to the settlement."  *Id.*  They also suggest this case is different because a proposed settlement has not yet been filed, *id.* at 9, but they identify no supporting authority and fail to explain how that criticism can be reconciled with their argument elsewhere that the Motion is

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

untimely, *see id.* at 12-16. The Named Plaintiffs argue that the Movants' reliance on *Gomes* is misplaced because (i) the Movants are not court appointed lead plaintiffs in a parallel action, (ii) do not ask for a "reasonable wait" for a decision on a dispositive motion, and (iii) do not allege that the Named Plaintiffs have stated the settlement is justified based on the potential outcome of the ADR Procedures. Plfs. Opp. at 19-20. They provide no analysis clarifying why any of those purported distinctions are relevant and instead issue a conclusory assertion that the Movants' request "goes far beyond a limited 90-day continuance to inform class members of the status of certain claims." *Id.* at 20. The Named Plaintiffs have no idea how long it will take for PG&E to resolve the bankruptcy claims, nor do they grapple with the fact that, unlike the case in *Gomes*, this Action is stayed, and thus the Movants' request to intervene for the purpose of maintaining the *status quo* would be even less disruptive than the intervention request in *Gomes*. Moreover, even putting aside the opportunity to oppose preliminary approval, the Movants clearly have a right to be heard on lifting the stay, which will permanently change the order of proceedings that have been implemented by both this Court and the Bankruptcy Court.

The Oppositions resort to targeting a strawman, citing a litany of cases from the Ninth Circuit in which intervention requests for the sole purpose of opposing a class settlement were denied on the grounds that Rule 23's objection and opt-out rights adequately protected such interests and claiming that this is the Circuit's "overwhelming[]" or even "unanimous" approach. Defs. Opp. at 9-10; Plfs. Opp. at 17-19. In reality, courts in this Circuit are split on whether Rule 23 displaces the right of a putative class member to intervene solely to oppose class settlement. *See Eashoo v. Iovate Health Sciences U.S.A., Inc.*, 2015 WL 12696036, at *6 (C.D. Cal. May 26, 2015) ("Some district courts in this circuit have followed the reasoning expressed in *Community Bank* and implied by *Diaz* finding that a class member may intervene of right under Rule 24(a)(2)."); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 474936, at *3 n.1 (N.D. Cal. Jan. 17, 2007) (noting that Ninth Circuit's *Diaz* decision suggests "members of a class, by their very nature, meet the first two requirements for intervention as of right[,]" including the impairment requirement); *see also* Mot. at 13. But even if this Court were to adopt the Oppositions' proposed rule, it is

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

simply inapplicable here because the Movants do not seek solely to oppose a class settlement at this stage—they intend to oppose a motion to lift the stay, for which Rule 23 cannot serve as a replacement.[5]  In *none* of the cases cited in the Oppositions for this proposition was there a stay in place to accommodate resolution of a parallel proceeding that would be completely undermined by granting preliminary approval of a settlement.  The Movants are entitled to protect their interest in the PG&E bankruptcy by opposing a motion to lift the stay.[6]

### 3.  The Movants' Interests Are Not Adequately Represented

The Individual Defendants do not oppose the Motion on adequacy grounds.  The Named Plaintiffs, however, spend multiple pages in opposition recounting the ways in which they purport to have adequately represented the putative class, both in this Action and the Bankruptcy Proceedings.  Plfs. Opp. at 20-24.  The Named Plaintiffs fail to address the relevant inquiries for purposes of intervention—whether they "will undoubtedly make all the intervenor's arguments" and are "capable and willing to make such arguments[.]"  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citations omitted).  Clearly not.  The Named Plaintiffs recognize the divergent interests they have with the Movants, admitting their claims are "specifically excluded" from the ADR Procedures, Plfs. Opp. at 3, and accusing the Movants of putting "their own individual economic interests ***above*** all other class members," including the Named Plaintiffs, *id.* at 14 (emphasis in original).  That adversity of interests overcomes any presumption of adequacy.  *See Brooks v. Life Care Ctrs. of Am., Inc.*, 2015 WL 13390031, at *2 (C.D. Cal. Mar. 3, 2015) (presumption of adequacy "may be overcome by . . . adversity of interest"); *Dixon v. Cost*

---

[5] For the same reason, the Individual Defendants' argument that the availability of final settlement approval undercuts the impairment prong fails.  Defs. Opp. at 12.

[6] Although it is an unusual circumstance, federal courts have granted intervention motions for the purpose of opposing the lifting of a stay.  *See, e.g.*, *In re Lopez-Soto*, 764 F.2d 23, 27-28 (1st Cir. 1985); *In Matter of McLarty Indus., Inc.*, 2 B.R. 68, 70 (N.D. Ga. Bankr. 1979).

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

*Plus*, 2012 WL 2499931, at *5 (N.D. Cal. June 27, 2012) (intervention permitted where intervenor's interests "potentially diverge from [party's] in two respects").

The suggestion that the Named Plaintiffs and Movants share an "ultimate objective" to maximize recovery for the putative class is misleading. Plfs. Opp. at 21. That might be true as to claims against the Individual Defendants, but not for a proposed settlement that will also release claims against PG&E in bankruptcy. Because it seems claims against PG&E will be involved in any settlement, it is incumbent on the Movants to protect their bankruptcy interest and ensure they are fully and expeditiously made whole by PG&E in the bankruptcy *before* its assets are depleted to pay for a settlement of claims against non-debtors or in favor of non-creditors/claimants. The existing parties do not share these interests because they (and their counsel) stand to benefit from settling this Action using PG&E's funds at the expense of the individual bankruptcy claims. Unlike the cases on which the Named Plaintiffs rely, this is not a mere disagreement on preferred litigation tactics—it is an explicit conflict of interests. *See Perry v. Proposition 8 Off. Proponents*, 587 F. 3d 947, 949 (9th Cir. 2009) (intervenor and party had "identical interests"); *Bergman v. Thelen LLP*, 2009 WL 1308019, at *3 (May 11, 2009) (intervenors' interests "are identical to that of the class"). The Movants should be permitted to intervene so that their conflicting position is heard before the stay is lifted and a settlement is preliminarily approved. *See, e.g.*, *Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*, 2020 WL 4501792, at *3 (C.D. Cal. Aug. 5, 2020) (intervention permitted when ultimate interests of parties "may directly conflict with Proposed Intervenors' interests"); *B.G.N. Fremont Sq. Ltd. v. Chung*, 2011 WL 13129968, at *5 (C.D. Cal. Sep. 27, 2011) (granting intervention where defendants and proposed intervenor had "conflicting incentives . . . to apportion maximum potential liability" to different entities).

### 4. The Motion is Timely

The Oppositions argue to no avail that the Motion is untimely because: (i) the "matter" has been pending for years and is (according to them) near settlement; (ii) intervention would prevent or delay resolution of the Action; and (iii) the Movants did not intervene at an earlier date. Defs. Opp. at 12-16; Plfs. Opp. at 9-15. None of these allegations support denying intervention.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1   *First*, the Oppositions rely primarily on cases in which intervention was requested *after*

2   preliminary approval of a settlement had been granted and *after* notices were delivered, where the

3   court and the putative class members had already expended substantial resources implementing

4   the settlement.  *See Chavez v. PVH Corp.*, 2014 WL 6617142, at *4 (N.D. Cal. Nov. 20, 2014)

5   ("Taking into consideration the Court's engagement in the case" and finding that "[t]o allow

6   intervention at this point would waste the significant resources the parties and the class have

7   expended in reliance on the settlement agreement"); *Cody v. SoulCycle, Inc.*, 2017 WL 8811114,

8   at *1 (C.D. Cal. Sep. 20, 2017) (denying intervention after "the parties reached a settlement, which

9   th[e] Court preliminarily approved"); *see also League of United Latin Am. Citizens v. Wilson*, 131

10  F.3d 1297, 1303 (9th Cir. 1997) ("We believe that the fact that the district court has substantively—

11  and substantially—engaged the issues in this case weighs heavily against allowing intervention").

12  That is not true here, where the Movants purposefully moved for intervention prior to the filing of

13  a motion for preliminary approval, and while a stay of the Action is still in place.  This is the ideal

14  time for intervention because it would cause minimal disruption to the Court and the parties.

15  *Second*, the Oppositions again ignore that the Motion is directed to maintaining the stay to

16  allow the resolution of parallel Bankruptcy Proceedings rather than simply opposing an unfair

17  settlement.  This is not a situation "where Objectors' concerns could largely be addressed through

18  the normal objection process."  *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015) (affirming

19  district court's denial of intervention motion after proposed intervenor was permitted to object at

20  preliminary and final fairness hearings).  The Oppositions wrongly suggest that the Bankruptcy

21  Court has essentially blessed a settlement of this Action that would incorporate PG&E, and thus

22  opposing a motion to lift the stay is merely an effort to hold "hostage" a potential settlement,

23  causing prejudice to the parties and putative class members.  *See* Defs. Opp. at 4-5; 13-14; Plfs.

24  Opp. at 6-8, 14-15.  While it is true that Judge Montali has not yet ruled against the possibility of

25  a global resolution of securities claims against both PG&E and the Individual Defendants, he has

26  said nothing about the form or ordering of such a resolution.  Critically, Judge Montali adopted

27  the ADR Procedures while rejecting a class resolution approach proposed by PERA because he

28

expected that individual claims resolution would more "quickly and inexpensively" allow the claimants to recover from the company.  Bankr. Dkt. No. 13164-9 at 6:21-7:4; *see also* Defs. Opp. at 3 ("In declining to take a class approach, ***the Bankruptcy Court expressed a preference for 'a well-established process . . . that facilitates consensual resolution.'***" (citing Bankr. Dkt. No. 13164-9 at 5:10-13) (emphasis added)).  He certainly did not condone the use of a class settlement as a replacement for the ADR Procedures or an excuse to massively delay resolution of the individual claims.  In fact, at a recent hearing, Judge Montali expressed the same concern voiced by the Movants—that PG&E's assets will be used to try to settle the Action rather than the individual claims:  "My point is, if the company spends money dealing with the class action, that's money it could be spending dealing with [the Movants'] claims and . . . all the other [bankruptcy] securities claimants beyond the 699 you represent."  ECF No. 243-3 at 46:14-17.[7]

There is certainly nothing prejudicial about allowing the stay to remain in place and deferring consideration of preliminary approval until after the Bankruptcy Court has been afforded the opportunity to weigh in on any settlement that would deplete PG&E's assets for the benefit of non-debtors and non-creditors and facilitate additional delay in moving the ADR Procedures forward.[8]  Indeed, this Court already recognized this as the proper procedure to follow by imposing

---

[7] The March 7, 2023 hearing was on a motion by the Movants to enforce PG&E's compliance with the ADR Procedures.  Bankr. Dkt. No. 13492.  Far from "den[ying]" that motion, Plfs. Opp. at 8, Judge Montali noted that the ADR Procedures had not progressed to the Bankruptcy Court's satisfaction, which "compels the court to consider whether to alter the procedures in some way." Bankr. Dkt. No. 13612 at 3.  To that end, Judge Montali ordered PG&E to make offers to each of the Movants, and specifically asked PG&E to suggest modifications to the ADR Procedures to streamline the claims resolution process, including potentially fixing a "prompt deadline for [PG&E] to object to the [Movants'] claims[.]"  *Id.* at 4.

[8] The Named Plaintiffs criticize the Movants for seeking relief that "lies in the Bankruptcy Court, not this Court."  Plfs. Opp. at 3.  But that is the Movants' point—they should be permitted to

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

a stay of the Action pending resolution of the Bankruptcy Proceedings.  ECF No. 217.  In doing so, the Court took into consideration the same arguments by the Named Plaintiffs that they would be prejudiced by the stay because, among other reasons, the Bankruptcy Proceedings could take four to seven years to reach completion during which they would be left without recourse because they are carved out of the ADR Procedures.  ECF No. 203 at 1.  Even so, the Court held that the stay was "in the interest of efficiency and would avoid proceeding on a piecemeal basis."  ECF No. 217 at 2-3 (internal quotation marks and citation omitted).  Those holdings remain true.

What is more, the Court agreed with the Individual Defendants (who now oppose the Motion), who argued vociferously in the context of the stay order that "it is consistent with PG&E's interests to settle claims *in the bankruptcy* on terms that release all claims related to that claimant's investments in PG&E, including the purported class claims against Defendants in this action[,]" and that a ruling against a stay "would merely constrain and interfere with Judge Montali's efforts to effectuate the plan of reorganization of PG&E."  ECF No. 207 at 3-4 (emphasis added).  The best the Individual Defendants can muster in response to this dramatic about-face is to try to explain away the Court's stay ruling by noting it does not mention the ADR Procedures specifically.  Defs. Opp. at 6.  But that is nothing more than a smokescreen—the Court's notice of intent to stay the proceedings was very clear about the role of the ADR Procedures in the decision: "Based upon the current status of the Chapter 11 Proceeding, the Court intends to stay this case *pending completion of the claims procedure and ADR*.  . . .  Lead Plaintiff and the non-debtor Defendants expect that *the ongoing bankruptcy claim process* will affect, among other things, the size and potential damage claims of the putative classes in this action."  ECF No. 198 at 2 (emphasis added).  Consistent with that view, the Movants' proposed intervention is for the purpose of avoiding disruption and delay that would result from lifting the stay.  That should outweigh any prejudice the parties would incur because of their purported negotiations involving a bankrupt entity that they knew was subject to, and neglecting, court-ordered ADR Procedures.

---

intervene here to ensure that no settlement implicating PG&E is approved before they have an opportunity to argue these issues before Judge Montali.

*Lastly*, there is no basis to argue that the Movants should have intervened earlier.  The primary interest at issue is the Movants' bankruptcy interest, so prior knowledge of their interest in this Action is irrelevant.  The Movants could only have known disposition of this matter might impact their bankruptcy interest once (i) PG&E stated generally in October 2022 that it had paused the ADR Procedures in favor of negotiating a potential settlement of this Action, and (ii) PG&E specifically broke off negotiations with the Movants concerning their bankruptcy claims, which occurred a few weeks before the Motion was filed.  *See* Mot. at 10-12.

## C.  In the Alternative, the Movants Should Be Granted Permissive Intervention

The Movants should alternatively be granted permissive intervention under Rule 24(b).  *See* Mot. at 17-18.  For the reasons discussed above, the Oppositions' objections to permissive intervention on the grounds of timeliness and prejudice are misplaced.  In all analogous cases cited in the Oppositions, courts found permissive intervention unnecessary because the proposed intervenors were adequately protected by Rule 23.  Defs. Opp. at 16-17; Plfs. Opp. at 24-25.  That is clearly not the case for the Movants' opposition to a motion to lift the stay and not at all true for this atypical situation involving a core bankruptcy and a separate action against collateral defendants.  The Individual Defendants also misinterpret the "independent jurisdictional basis" requirement as applied to the Movants.  The Movants do not seek to "become plaintiffs," Defs. Opp. at 18, or "bring additional claims," but rather to ask the Court to maintain a stay of proceedings, a "power it inherently has."  *O'Connell v. Smith*, 2014 WL 12773900, at *2 (C.D. Cal. Aug. 18, 2014).  No independent jurisdictional basis is necessary for that purpose.  *Id.*; *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992**)**.  Similarly, the Named Plaintiffs are incorrect to assume that the Movants are attempting to become lead plaintiffs in the Action or otherwise act on behalf of other absent class members.  Plfs. Opp. at 15, 25.  Permitting intervention would not undermine the PSLRA or any class action rule.

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons discussed in the Motion, the Movants respectfully request that the Court grant their motion to intervene.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1

2     Dated:  March 28, 2023                    ROLNICK KRAMER SADIGHI LLP

3

4                                                By:    _/s/ Lawrence M. Rolnick_
                                                        Lawrence M. Rolnick (*pro hac vice*)
5                                                       Marc B. Kramer (*pro hac vice*)
                                                        Michael J. Hampson (*pro hac vice*)
6                                                       Jeffrey A. Ritholtz (*pro hac* vice)
                                                        Frank T.M. Catalina (*pro hac vice*)
7
                                                        THE LONG LAW FIRM, PLLC
8                                                       James A. Long CSB No. 326404

9                                                       *Attorneys for the Movant Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020