CHARLES L. HASTINGS
CA State Bar No.: 88599
NATALI A. RON
CA State Bar No.: 302927
Law Office of Hastings & Ron
PMB 270, 4719 Quail Lakes Drive, Suite G
Stockton, CA 95207
(209) 476-1010

Attorneys for JACKSON RANCHERIA DEVELOPMENT CORP

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Case No: 19-30088 (DM)<br>Chapter 11<br><br>OPPOSITION TO REORGANIZED DEBTORS' ONE HUNDRED TWENTIETH OMNIBUS OBJECTION TO CLAIMS – BY JACKSON RANCHERIA DEVELOPMENT CORP (CLAIM NO. 3002)<br><br>Date: May 24, 2023<br>Time: 10:00 a.m.<br>Location: (Video/Teleconference Only)<br>U.S. Bankruptcy Court<br>Courtroom 17, 16th floor<br>San Francisco, CA 94102<br>Judge: Honorable Dennis Montali |

Creditor, JACKSON RANCHERIA DEVELOPMENT CORP (hereinafter referred to as "Jackson"), by and through its undersigned counsel, opposes the Reorganized Debtors', PG&E CORPORATION and PACIFIC GAS AND ELECTRIC COMPANY'S (hereinafter collectively referred to as the "PG&E") ONE HUNDRED TWENTIETH OMNIBUS OBJECTION TO CLAIMS as set forth herein.

**I.     INTRODUCTION**

Jackson's claim arises out of fire damage caused by an electrical malfunction of PG&E's power pole and grade transformer which caused a fire to erupt damaging Jackson's property.

The fire perimeter was approximately five acres and burned a barn causing it to collapse, damaging its contents and other surrounding property, including an adjacent fence, graze land, and cattle. The estimated cost to repair the barn is approximately $142,988. The cost to repair and/or replace the fence, the cattle, the grazing land, and clean-up costs is $17,525. Jackson's total claim is $160,513.

  The fire occurred at 615 New York Ranch Road, in Jackson, California on June 24, 2017. The fire was reported at approximately 2:30 PM, alongside New York Ranch Road, along a PG&E box/power pole. The fire began burning uphill grasslands, fences, and a barn, which ultimately was deemed a complete loss needing full replacement. Jackson Fire Department was dispatched to contain the fire, and issued a full automatic aid wildland response, including air and ground units from California Department of Forestry and Fire Protection ("Cal Fire"), Amador Fire Protection District, and the City of Ione Fire Department.

  Cal Fire determined the ignition source of the fire to be faulty equipment and equipment malfunction, tracing burn indicators back to a PG&E power pole with a below grade transformer at its base. Cal Fire ruled out any other indication of the source of the fire, and ultimately unequivocally determined PG&E's faulty equipment to be the source of the fire and resulting damage.

  According to the Reorganized Debtors' objection to claims, this particular Proof of Claim 3002 has been identified as a claim of which the Reorganized Debtors "conducted a thorough review and concluded that there was no basis for liability" based on "analysis of the [Reorganized Debtors'] books and records and any information submitted in connection with the Proofs of Claim, and investigation of the facts alleged by claimant." However, as set forth herein, the Reorganized Debtors have clear liability for the aforementioned claim, and the Reorganized Debtor raises no "facts tending to defeat the claim by prohibitive force equal to that of the allegations of the proofs of claim themselves," (*Wright v. Holm (In re Holm)* 931 F.2d 620, 623), as it acknowledges it is required to do. (See Objection at p. 7:5-7.) In fact, it fails to identify any specific analysis of what it did to investigate this claim, nor any facts at all as it relates to this claim, let alone facts with probative value of equal force to those facts set forth in

the claim, which would be sufficient to shift the burden to Jackson to require it to prove its claim by a preponderance of the evidence. (See *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, (1995) 178 B.R. 222, 226.) As such, the Bankruptcy Court should not sustain the Omnibus Objection as it relates to Jackson's Claim No. 3002.

## II. LEGAL ARGUMENT

### A. PG&E'S NEGLIGENCE DIRETCLY AND PROXIMATELY CAUSED JACKSON'S PROPERTY DAMAGE

PG&E installed, owned, operated, used, controlled, and/or maintained power lines and other electrical equipment for the public delivery of electricity, including power lines in and around the location of the Camp Fire. On June 24, 2017, as a direct, necessary, and legal result of PG&E's negligent management and maintenance of the power lines and electrical equipment, the power line/electrical equipment caused a wildfire that burned approximately five acres of property, including property Jackson owned or occupied, and damaged and destroyed its real and personal property. Jackson has suffered damages, including loss of use, interference with access, and/or diminution in value and/or marketability in its property, in the amount of not less than $160,513. California Civil Code section 1714 imposes responsibility on every person for "injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person…" (*Civ. Code, § 1714*.) Gas and electric companies are held to a higher standard and degree of care as a result of the inherent nature and danger of the industries. "When a duty exists to inspect and maintain property in a safe condition, the presence of a conspicuous defect or dangerous condition of the appliances which has existed for a considerable length of time will create a presumption of constructive notice thereof." (*Roberts v. Pacific Gas & Electric Co.* (1929) 102 Cal.App. 422, 428 (citing cases.) The Third District Court of Appeal went on "[t]he duty of an electric company in conducting its business of handling and selling this dangerous commodity is stated in 9 Ruling Case Law 1927, as follows: ¶ 'It is well settled that it is the imperative duty of such a company not only to install proper appliances, but also to make reasonable and proper inspection of such appliances, and to use due diligence to discover and repair defects therein, and a failure to do so constitutes negligence. Notice of a defect, in order to

charge the company with liability therefor, need not be direct and express; it is enough that the defect has existed for such a length of time that it should have been known.'" (*Id*. at 431.)

The California Supreme Court has further held that "[o]n the subject of negligence the standard of care is, that one maintaining wires carrying electricity is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Among the circumstances are the well known dangerous character of electricity and the inherent risk of injury to persons or property if it escapes. Hence, the care used must be commensurate with and proportionate to that danger." (*Dunn v. Pacific Gas & Electric Co*. (1954) 43 Cal.2d 265, 273 citing *Polk v. City of Los Angeles* (1945), 25 Cal.2d 519, 525, internal quotations and citations omitted.) PG&E has a clear obligation to exercise great care to prevent against the precise damage caused in this instance, among other damage which could have been caused, by its failure to maintain its power pole and electrical box in a safe and operable condition.

**B. PG&E IS LIABLE FOR VIOLATIONS OF PUBLIC UTILITIES CODE**

PG&E is further liable under the California Public Utilities Code. Specifically, Public Utilities Code section 451 provides in part "[e]very public utility shall furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities, including telephone facilities, as defined in Section 54.1 of the Civil Code, as are necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public." (*Pub. Util. Code, § 451*.) Furthermore, "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person." (*Pub. Util. Code, § 2106*.) AS can be seen from PG&E's conduct, it clearly failed to maintain its equipment in good repair, and its failure to do so was the cause of the fire to approximately five acres of Jackson's property. As such, PG&E is

OPPOSITION TO OBJECTION TO CLAIM 3002  4

Case: 19-30088   Doc# 13753   Filed: 05/18/23   Entered: 05/18/23 17:55:57   Page 4 of 7

liable under the Public Utilities Code for Jackson's damages.

### C. LIABILITY UNDER THEORY OF INVERSE CONDEMNATION

PG&E is also liable to Jackson under the legal theory of inverse condemnation. An inverse condemnation action is an eminent domain action initiated by one whose property was taken for public use. (*Barham v. Southern Cal. Edison Co*. (1999) 74 Cal.App.4th 744, 752.) The authority for such an action "derives from article I, section 19 of the California Constitution, which states in relevant part: 'Private property may be taken or damaged for public use only . . . when just compensation . . . has first been paid to, or into court for, the owner.'" (*Pacific Bell Telephone Co. v. Southern California Edison Co*. (2012) 208 Cal.App.4th 1400, 1404.) The policy underlying inverse condemnation is to spread among the community (through the public entity's taxing authority) any burden disproportionately borne by an individual member of the community whose property is taken for a public use. (*Barham*, at p. 752.) In the case of *Barham v. Southern California Edison* (*supra*), the court followed *Gay Law Students Assn. v. Pacific Tel. & Tel. Co*. (1979) 24 Cal.3d 458, in holding that a public utility is a state actor and is, in many respects, more akin to a governmental entity than to a purely private employer. "The nature of the California regulatory scheme demonstrates that the state generally expects a public utility to conduct its affairs more like a governmental entity than like a private corporation." (*Gay Law Students Assn. v. Pacific Tel. & Tel. Co*. (1979) 24 Cal.3d 458, 469.) As such, the *Barham* court reasoned that there is no significant difference between a privately owned utility and a public utility, the likes of which had been held liable in inverse condemnation under virtually identical facts in *Marshall v. Department of Water & Power* (1990) 219 Cal.App.3d 1124 and *Aetna Life & Casualty Co. v. City of Los Angeles* (1985) 170 Cal.App.3d 865. (See also *Pacific Bell. v. Southern California Edison Co*. (2012) 208 Cal.App.4th 1400, 1404.)

The *Barham* court distinguished the prior case of *Cantu v. Pacific Gas & Electric Co*. (1987) 189 Cal.App.3d 160, in which the court held that inverse condemnation did not apply because the improvement, in that case an electrical distribution line, did not serve a public purpose. In that case, the line served only a 16-unit subdivision. (*Cantu v. Pacific Gas & Electric Co*. (1987) 189 Cal.App.3d 160, 164 [The court concluded the use was "unlike the construction

of permanent transmission towers or power lines, which are designed to transmit electricity over a much greater area."].) The fundamental justification for inverse liability is that the government, acting in furtherance of public objectives, is taking a calculated risk that private property may be damaged." (*Arreola v. County of Monterey* (2002) 99 Cal.App.4th 722, 742, citing *Yee v. Sausalito* (1983) 141 Cal.App.3d 917, 920.) Inverse condemnation is a strict-liability cause of action. The entity did not have to act negligently or violate regulations to be held liable for the damage to property. Neither foreseeability nor fault need be shown. "[A] public entity may be liable in an inverse condemnation action for any physical injury to real property proximately caused by a public improvement as deliberately designed and constructed, whether or not that injury was foreseeable, and in the absence of fault by the public entity." (*Souza v. Silver Development Co.* (1985) 164 Cal.App.3d 165, 170; *CSAA v. City of Palo Alto* (2006) 138 Cal.App.4th 474 [Liability may attach for any physical injury to real property caused by a deliberately designed and constructed improvement even if there is no negligence on the entity's part and the injury was not foreseeable.].) Under this legal theory, as well, PG&E is liable, and must reimburse Jackson for damage to its property.

### D. PG&E IS FURTHER LIABLE PURSUANT TO VIOLATIONS OF THE HEALTH & SAFETY CODE

The California Health & Safety Code protects against, and provides liability for, conduct of one who negligently allows fire to be set to another's property. Specifically "[a]ny person who personally or through another willfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire." (*Health & Saf. Code, § 13007*.) The law clearly provides for instances such as the one at bar, and attributes liability for negligently maintaining property and allowing or causing fire to be set to another's property, causing damage as a result. As was determined by Cal Fire, and others charged with investigating the cause of the fire, it was a result of PG&E's fault equipment which clearly means PG&E negligently maintained and therefor, set fire to Jackson's property. It must be held liable for, and pay damages to, Jackson as

a result.

### III. CONCLUSION

For the foregoing reasons, PG&E's liability is clear and inescapable, and as a result, Jackson's claim should be allowed, and PG&E's objection to Claim 3002 should be overruled.

Dated: May 18, 2023

                                            LAW OFFICE OF
                                            HASTINGS & RON

                                            BY: */s/Natali A. Ron*
                                                  NATALI A. RON Attorney for JACKSON
                                                  RANCHERIA DEVELOPMENT CORP

                                            NOTICE ADDRESS: (As captioned)