Case 4:22-cv-02834-HSG   Document 18   Filed 05/30/23   Page 1 of 11

Entered on Docket
May 31, 2023
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: PG&E Corporation | Case No. 22-cv-02834-HSG<br><br>**ORDER AFFIRMING BANKRUPTCY COURT**<br><br>Re: Dkt. No. 10 |

Before the Court is the appeal filed by the City of Santa Clara, doing business as Silicon Valley Power, and Northern California Power Agency ("SVP & NCPA") of the Bankruptcy Court's *Order Regarding Dispute Between Debtors and California Department of Water Resources* entered on April 22, 2022. BR Dkt. No. 12207.[1] Having carefully considered the briefs,[2] the Court **AFFIRMS** the Bankruptcy Court's order.

I.  BACKGROUND

  A.  PG&E's Bankruptcy And Chapter 11 Plan

On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (together, the "Debtors" or "PG&E"), commenced voluntary cases for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"). Significantly, the Debtors needed to propose a plan of reorganization that satisfied the requirements of A.B. 1054. In light of the "increased risk of catastrophic wildfires," A.B. 1054

---

[1] "BR Dkt. No." references are to the Bankruptcy Court's docket, Case No. 19-30088 (DM) (Bankr. N.D. Cal.). "Dkt. No." references are to the Court's docket.
[2] Including Dkt. No. 10 ("Appellants' Brief"); Dkt. No. 14 ("Appellee's Opp."); Dkt. No. 15 ("Appellants' Reply").

created the "Go-Forward Wildfire Fund" as a multi-billion dollar safety-net to compensate future victims of public utility fires by "reduc[ing] the costs to ratepayers in addressing utility-caused catastrophic wildfires," supporting "the credit worthiness of electrical corporations," like the Debtors, and providing "a mechanism to attract capital for investment in safe, clean, and reliable power for California at a reasonable cost to ratepayers." A.B. 1054 § 1(a).

For the Debtors to qualify for the Go-Forward Wildfire Fund, however, A.B. 1054 required, among other things, the Debtors to obtain an order from the Bankruptcy Court confirming a plan of reorganization by June 30, 2020. See A.B. 1054 § 16, ch. 3, 3292(b). After more than sixteen months of negotiations among a variety of stakeholders, and following confirmation hearings that spanned several weeks, the Debtors' Plan of Reorganization dated June 19, 2020 ("Plan") was confirmed by the Bankruptcy Court on June 20, 2020 and became effective on July 1, 2020 ("Effective Date").

### B. The CDWR Claims Dispute

#### 1. The Cotenancy Agreement And CDWR's Decision To Terminate

This dispute arises from the termination of a 1984 Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230- kV Transmission Line (the "Cotenancy Agreement") between Appellee California Department of Water Resources ("CDWR"), PG&E, and SVP & NCPA. Under Section 14.3 of the Cotenancy Agreement the termination process begins with the terminating party providing one year advance notice to all parties. BR Dkt. No. 11889-2 at 36.[3] Under Section 14.5, if all remaining cotenants decide to no longer operate the transmission line, the terminating cotenant must pay removal costs. *Id.* at 36-37. Under Section 14.6, when a cotenant terminates and the other cotenants wish to continue operating the line, the terminating party must pay "financial obligations incurred prior to its effective date of termination." *Id.* at 37-38. Section 13.2 provides that disputes between the parties shall be subject to binding arbitration. *Id.* at 30-33.

On July 30, 2018, CDWR delivered notice to each cotenant of its intention to terminate its

---

[3] For ease of reference, the Court refers to the PDF pagination unless otherwise stated.

participation in the operation of the transmission line. BR Dkt. No. 11889-3. PG&E and SVP & NCPA initially opposed CDWR's termination pending "payment of its proportional share of reasonable estimated costs associated with decommissioning and removal of the New Line." BR Dkt. No. 11896 at 12. On October 18, 2019, CDWR filed a proof of claim in the Chapter 11 cases in the amount of $101,026.75 for overpayment of operation and maintenance fees following termination. BR Dkt. No. 11889-8.

### 2. CDWR's Termination And The Chapter 11 Plan And Confirmation Order

Following objections by various California agencies, including CDWR, and a hearing on the Debtors' reorganization, the Bankruptcy Court entered the order (the "Confirmation Order") confirming the Plan on June 20, 2020. BR Dkt. No. 8053. Under the Plan and Confirmation Order, executory contract disputes were to be resolved by the Bankruptcy Court. *Id.* at 33-35. Additionally, the Bankruptcy Court retained post-confirmation jurisdiction over matters arising under, arising out of, or related to the Plan. BR Dkt. No. 8053-1 at 90.

On February 1, 2022, CDWR moved for relief in the Bankruptcy Court, arguing that (1) Appellants and PG&E sought to block its termination by alleging the Agreement was "live" and could have been assumed on confirmation of Debtor's plan, (2) CDWR did not owe any removal costs for termination to be effective, and (3) PG&E refused to pay CDWR's claim. BR Dkt. No. 11887 at 6. CDWR argued that "[t]here is no authority in the [Cotenancy] Agreement to demand future removal costs from a departing Cotenant when there has been no decision by the Remaining Cotenants to discontinue operating the Line, much less demand payment of such removal costs from a cotenant before a termination can become effective." *Id.* at 12-13. CDWR argued that in the event of termination, the specific terms in Sections 14.5 controlled over the general terms in Section 14.6. *Id.* at 19 ("Removal costs were negotiated and included in the contract under Section 14.5 only for the situation where all the cotenants decided to terminate the Agreement."). Additionally, CDWR asserted that the matter should not be referred to arbitration as the Bankruptcy Court retained jurisdiction to resolve executory contract and claim disputes. *Id*. at 6.

One day later, PG&E moved to modify the Plan injunction and compel arbitration,

1  asserting that CDWR must "pay the remaining parties its proportionate share of estimated costs,
2  including those of operation, maintenance, and removal, prior to terminating its participation in
3  the agreement." BR Dkt. No. 11896 at 7. PG&E argued that the issue of termination inherently
4  encompassed removal cost liability, stating that "CDWR cannot terminate its participation in the
5  Cotenancy Agreement without first complying with its obligation under the Cotenancy Agreement
6  to pay a pro rata share of estimated removal costs to PG&E and the remaining Cotenants." *Id.* at
7  17. SVP & NCPA opted to not participate in the proceeding, instead supporting PG&E's
8  arbitration motion and PG&E's oppositions to CDWR's motion. *Id.* at 5 n. 1; BR Dkt. No. 11937
9  at 2 n. 1.

10  On March 2, 2022, the Bankruptcy Court held a hearing on CDWR's motion and PG&E's
11  opposition. Appellants' counsel was present, and the Bankruptcy Court said they could be heard if
12  they wished. Mar. 2, 2022 Hr'g Tr. at 26 (BR Dkt. No. 11986) (PG&E counsel stating "we
13  actually have also in the courtroom Jane Luckhardt from NCPA and Lisa Gast from the SVP" if
14  the Bankruptcy Court wished to hear from them, and Bankruptcy Court confirming that "if either
15  [SVP & NCPA] wishes to be brought in, I'll accommodate them."). SVP & NCPA's counsel
16  heard the Bankruptcy Court discuss its view of the removal cost liability issue and its
17  understanding that CDWR would separately pursue its rights under a contract between CDWR and
18  SVP & NCPA called the "Transmission Services Agreement" ("TSA"). *Id.* at 57 (describing
19  CDWR as "[making] it clear they'll deal with the transmission agreement separately.") The
20  Bankruptcy Court also observed that SVP & NCPA had not taken any action on the motion before
21  the hearing. *Id.* ("[SVP & NCPA] have repeatedly said we're just going along with [PG&E]").
22  On March 8, 2022, the Bankruptcy Court granted CDWR's motion and denied PG&E's
23  motion for arbitration. BR Dkt. No. 11999. The Bankruptcy Court held that "[t]he determination
24  of whether the Agreement is an executory contract that may be assumed, and if so under what
25  circumstances and leading to what consequences, is clearly a core matter for determination." *Id.* at
26  5. Following the March 8 ruling, the Bankruptcy Court invited further proceedings regarding
27  CDWR's removal cost liability. BR Dkt. No. 11999 at 7-8. SVP & NCPA then sought to
28  intervene to argue the merits of removal cost liability in light of the TSA. BR Dkt. No. 12024 at

4-5 (arguing without citing any specific rule that SVP & NCPA sought "permission to intervene and submit a brief" focused on "the interrelated nature of the [TSA] and the [Agreement]").[4]  The Bankruptcy Court denied the application on March 21, 2022.  BR Dkt. No. 12054 at 2 ("SVP and NCPA conferred with Debtors and deliberately chose not to respond to the substance of the [C]DWR Motion").  The Bankruptcy Court did not make any decision with respect to any claims based on the TSA.  BR Dkt. No. 12147 at 4; BR Dkt. No. 12207 at 3.

### 3.  Final Briefing and Adjudication by The Bankruptcy Court

On March 25, 2022, PG&E filed a memorandum stating that it would pay the CDWR claim of $101,026.75 and that no further action by the Bankruptcy Court was needed (including with respect to determining CDWR's removal costs).  BR Dkt. No. 12076.  Appellants and PG&E then initiated an ultimately unsuccessful arbitration proceeding on March 30, 2022.  BR Dkt. No. 12129-1 at 6-20, 22-24.  On April 13, 2022, the Bankruptcy Court issued a tentative ruling in response to the March 25 memorandum, characterizing PG&E's strategy as an "inappropriate and improper change of position and forum shopping" and stating that the "Debtors simply ignored the direction by this court to address the merits of their disagreement with CDWR following its Termination by a Cotenant under Section 14.3 of the Cotenancy Agreement."  BR Dkt. No. 12147 at 3.  On the merits, the Bankruptcy Court stated its intent to rule in favor of CDWR "based upon (1) the record that there are no material facts in dispute; (2) that CDWR's interpretation of the applicable sections of the Cotenancy Agreement is correct; (3) that CDWR does not owe any estimated future removal costs or anything else to Debtors and the remaining cotenants under the Cotenancy Agreement; and (4) there are no damages to be assessed, by this court or by arbitration, under that agreement."  *Id.* at 3-4.  During a hearing later that day, the Bankruptcy Court held that an adversary proceeding was not required because "the way this dispute played out afforded both sides adequate due process."  Apr. 13, 2022 Hr'g Tr. at 28.  The Bankruptcy Court entered its final

---

[4] SVP & NCPA now complain that "[C]DWR recasts [their] request to file a brief as one of intervention."  Appellants' Reply at 18.  But Appellants themselves chose to frame the request as seeking to intervene, without providing any further detail or support for the Bankruptcy Court's consideration.

order on April 22, 2022, BR Dkt. No. 12207.  On May 5, 2022, SVP & NCPA appealed.  BR Dkt. No. 12310.

## II.     LEGAL STANDARD

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158.  The district court reviews the issue of whether an appealing party has standing de novo.  *In re First Prot., Inc.*, 440 B.R. 821, 826 (B.A.P. 9th Cir. 2010).  In assessing the denial of intervention, this Court reviews the Bankruptcy Court's holding for abuse of discretion.  *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 960 (9th Cir. 2007).

## III.    DISCUSSION

SVP & NCPA argue that the Bankruptcy Court erred in several respects in denying PG&E's motion for arbitration and interpreting the Cotenancy Agreement in CDWR's favor.  As the Court has already addressed many of these issues in a prior ruling,[5] the Court need only address here (A) whether SVP & NCPA have standing, and (B) whether the Bankruptcy Court erred in denying SVP & NCPA's application seeking to intervene.  The Court finds that Appellants have standing but that the Bankruptcy Court did not abuse its discretion in denying intervention.  Accordingly, the Court affirms the Bankruptcy Court's ruling.

### A.     SVP & NCPA Have Article III And Prudential Standing

The Constitution limits the Court's jurisdiction to disputes presenting a live case or controversy.  *Matter of E. Coast Foods, Inc.*, No. 21-55967, 2023 WL 3296746, at *3 (9th Cir. May 8, 2023).  To have standing to appeal a bankruptcy court order, a party must be "directly and adversely affected" by that order such that it "diminish[es] the appellant's property, increase[s] its burdens, or detrimentally affect[s] its rights."  *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012).  In determining whether a party has standing, the Court must assess both Article III standing and prudential standing.  *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 874 (9th Cir.

---

[5] *PG&E Corp., v. California Dep't of Water Res.*, No. 4:22-CV-02833-HSG, 2023 WL 3361175, at *1 (N.D. Cal. May 10, 2023).

2011). "To have Article III standing, [the appellant] must show: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 873. Prudential standing, also known as the "person aggrieved" requirement, provides that "only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court . . . have standing to appeal that order." *Id.* at 874 (citation and quotations omitted) (holding that prudential standing is not invoked "in instances in which the appellant was the party that brought the motion at issue on appeal," but instead only "when the appellant is a party other than the moving party"); *Matter of E. Coast Foods, Inc.*, No. 21-55967, 2023 WL 3296746, at *3 ("The "person aggrieved" standard was designed to limit appeals in bankruptcy proceedings because such cases invariably implicate the interests of various stakeholders, including those not formally parties to the litigation.").

Appellants satisfy both the Article III and prudential standing requirements. SVP & NCPA allege that they have suffered actual and concrete injuries, and that their injuries are traceable to CDWR's termination of the Cotenancy Agreement and the Bankruptcy Court's April 22 ruling foreclosing removal cost payments to which SVP & NCPA argued they were entitled upon CDWR's termination. *See Thorpe*, 677 F.3d at 887 (appellants had Article III standing where the plan affected their "contractual rights, affect[ed] their financial interests, and ha[d] the possibility of affecting their litigation rights in court"); *Palmdale Hills*, 654 F.3d at 874 (affirming the Bankruptcy Appellate Panel's finding that appellee had prudential standing where it had an interest in loans subject to a stay of foreclosure on collateral securing the loans). And this injury is capable of being adequately redressed by the Court. The Court thus determines that SVP & NCPA have standing.[6]

---

[6] CDWR cites *Marino v. Ortiz*, 484 U.S. 301 (1998), which holds that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." Appellee's Opp. at 22. But that principle from civil litigation does not apply here, and the controlling cases cited above clearly establish the standard in bankruptcy cases.

\\

### B.      The Bankruptcy Court Properly Denied Appellants' Request to Intervene

#### 1.     Appellants Did Not Have an Unconditional Right to Intervene When They Made Their Motion

As a preliminary matter, the Court finds that even if SVP & NCPA had a right to be heard as a party in interest under 11 U.S.C. § 1109(b), the Bankruptcy Court correctly determined that they had to exercise that right in a timely manner.

#### a.   SVP & NCPA Were Parties In Interest Under §1109(b)

Under §1109(b), "[a] party in interest… may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).  "[A] party in interest is one who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re Tower Park Properties, LLC*, 803 F.3d 450, 457 (9th Cir. 2015) (citation and quotations omitted). Here, Appellants were parties in interest under § 1109(b) because they were parties to the Agreement and creditors in the Chapter 11 case before the Bankruptcy Court. *See id*.

#### b.   The Bankruptcy Court Correctly Applied a Timeliness Requirement to SVP & NCPA's Request for Intervention

SVP & NCPA argue that they had a right under §1109(b) to appear and file a brief after the Bankruptcy Court's March 8 ruling.  Appellant's Brief at 33.  While the parties cite no controlling authority on point, and the Court has not found any, the Court finds that even though SVP & NCPA were parties in interest under § 1109(b), they had to show that their motion to intervene after the Bankruptcy Court's ruling was timely.[7]  Even the out-of-circuit authorities on which Appellants rely stand for the principle that whatever right to be heard is conferred by § 1109(b), that right is subject to the timeliness requirement imposed by Rule 24(a) (which governs

---

[7] The Ninth Circuit has not addressed whether a party in interest has an unconditional right under § 1109(b) to appear at any time in a contested matter, or in an adversary proceeding generally. *See In re Cath. Bishop of Spokane*, No. ADV 04-00291, 2006 WL 6817586, at *6 (B.A.P. 9th Cir. Sept. 6, 2006) (holding that the court did not need to determine whether § 1109(b) confers an unconditional right to intervene in an adversary proceeding because appellant had an independent right to intervene under Rule 24(a)). And cases analyzing § 1109(b), including those cited by Appellant, have not found that the statute grants an unconditional right to intervene. *See Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286 (5th Cir. 1985) (finding that "private parties are rarely given an unconditional statutory right to intervene," and that "[s]ection 1109(b) is not the type of statute generally considered to provide an absolute right to intervene.").

intervention as of right). For example, while the Second Circuit held in *In re Caldor Corp.*, 303 F.3d 161, 172 (2d Cir. 2002), that § 1109(b) "grants a right to raise, appear and be heard on any issue regardless whether it arises in a contested matter or an adversary proceeding," *id.* at 172, that court also recognized later that the timeliness requirement of Rule 24(a) qualifies that right. *Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 F. App'x 878, 880 (2d Cir. 2005) (rejecting appellant's argument that it had an unconditional right to intervene under section 1109 that "cannot be limited by Federal Rule of Civil Procedure 24(a)'s requirement that applications to intervene be 'timely'"). And the First Circuit's decision in *In re: the Financial Oversight and Management Board for Puerto Rico*, 872 F.3d 57 (1st Cir. 2017), involved an adversary proceeding rather than a contested matter. *See id.* at 62 ("[W]e consider afresh whether § 1109(b) confers an unconditional right to intervene in an adversary proceeding."). Moreover, the First Circuit ultimately found that the appellant there "was entitled to intervene under § 1109(b) and Rule 24(a)(1)." *Id.* at 63. And Rule 24(a) requires a "timely motion." FRCP 24(a).[8]

Accordingly, the Court finds that the Bankruptcy Court properly found that Appellants' request "to intervene and submit a brief" had to be timely, and their after-the-fact invocation of section 1109(b) on appeal does not change that conclusion.

### 2. The Bankruptcy Court Did Not Abuse its Discretion In Denying Appellants' Motion to Intervene As Untimely

"Denial of a motion to intervene as of right is reviewed de novo, with the exception of timeliness, which is reviewed for abuse of discretion." *In re Cath. Bishop of Spokane*, No. ADV 04-00291, 2006 WL 6817586, at *3 (citing *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001)). In assessing the timeliness of Appellants' intervention motion, the Bankruptcy Court properly considered "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." BR Dkt. No.

---

[8] To the extent SVP & NCPA argue that they were entitled to an adversary proceeding, Appellants' Brief at 31-33, the Court notes that Rule 24(a)'s timeliness requirement logically would apply equally in adversary proceedings and contested matters. *See Iridium India Telecom Ltd.*, 165 F. App'x at 880 (holding that the district court did not abuse its discretion in affirming bankruptcy court's denial of an § 1109(b) intervention motion as untimely in an adversary proceeding because the moving party "was aware or should have been aware of the adversarial proceeding when it was instituted").

12054 at 4 (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996)); *see also In re White Savage Assocs.*, 860 F.2d 1090 (9th Cir. 1988) (determining the timeliness of a motion for intervention in a bankruptcy proceeding by weighing "1) the stage of the proceeding at which an applicant seeks to intervene; 2) the prejudice to other parties; and, 3) the reason for the length of the delay"). SVP & NCPA argue that these factors weigh in favor of intervention, because "(a) Appellants' motion was timely made after the Court denied the Arbitration Motion; (b) Appellants claimed direct separate interests related to the transactions that were subject of [C]DWR's contested matter; and (c) PG&E could not adequately represent Appellants' separate contract rights under the Agreement and TSA…." Appellants' Brief at 34-35. CDWR responds that the Bankruptcy Court properly concluded that "[t]he proceedings are nearly over, [C]DWR would be prejudiced in having previously defaulted parties enter the fray, and the reason for the delay is entirely the choice of SVP and NCPA." BR Dkt. No. 12054 at 3. The Court agrees with CDWR.

On appeal, SVP & NCPA contends that PG&E could not represent their separate interests under the Cotenancy Agreement and the TSA, such that the Bankruptcy Court prejudiced them by denying intervention. Appellant's Brief at 34-35. But as the Bankruptcy Court explained, that argument is undermined by the record, including admissions in Appellants' own briefs, and Appellants' voluntary decision not to argue CDWR's motion. *First*, Appellants sought to intervene only after the Bankruptcy Court denied PG&E's arbitration motion and granted CDWR's motion, and never raised any TSA-specific argument before that. *Second*, CDWR would have been prejudiced by permitting SVP & NCPA a second opportunity to argue the merits of removal cost liability. Moreover, the TSA is an entirely separate agreement, and the Bankruptcy Court made clear that it was not adjudicating any rights under that agreement. BR Dkt. No. 12207 at 3 ("[T]he Court is not making any ruling as to any dispute between [C]DWR on the one hand, and the City of Santa Clara dba Silicon Valley Power and Northern California Power Agency on the other, under the Transmission Services Agreement between those parties, which issues shall be dealt with outside this Court."). And PG&E and Appellants were aligned

with respect to their interpretation of the Cotenancy Agreement: Appellants acknowledged there were "common arguments to be advanced by PGE, SVP, and NCPA in response to [C]DWR's motion." BR Dkt. No. 12024 at 4. *Third*, SVP & NCPA voluntarily chose to not argue the substance of CDWR's motion, instead supporting PG&E's motion. BR Dkt. No. 11896 at 5 n.1; BR Dkt. No. 11937 at 2 n. 1. The Bankruptcy Court reasonably determined that after being served with CDWR's motion and attending a hearing at which removal cost liability was discussed at length, SVP & NCPA "remained on the sideline, casting their fate with the Reorganized Debtors." BR Dkt. No. 12054 at 3.

The Court finds that the Bankruptcy Court did not abuse its discretion in denying intervention as untimely, and thus affirms the Bankruptcy Court's denial of Appellants' application.[9]

## IV.  CONLCUSION

The Court **AFFIRMS** the Bankruptcy Court's ruling.[10] The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: 5/30/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[9] CDWR contends that March 21 order was final and immediately appealable, making this appeal untimely in its entirety. Appellee's Opp. at 1. The Court agrees that a denial of intervention is a final and immediately appealable order because it definitively determines a party's right to intervene in the case. *See United States v. State of Or.*, 913 F.2d 576, 580 (9th Cir. 1990) ("Denial of a motion to intervene is a final order and immediately appealable."). SVP & NCPA argue that their appeal from the Bankruptcy Court's denial of intervention is timely because their substantive rights were not affected until the April 22 order. Appellant's Brief at 34-35. While CDWR makes a persuasive case that SVP & NCPA's appeal is untimely given its focus on the threshold issue of whether the Bankruptcy Court erred in denying intervention, even accepting SVP & NCPA's argument, the appeal fails on the merits for the reasons explained above.

[10] Given the holdings in this order, the Court need not decide whether Appellants impliedly consented to jurisdiction, whether an adversary proceeding was required, whether the Bankruptcy Court properly denied arbitration and interpreted the Cotenancy Agreement in CDWR's favor, or whether the Bankruptcy Court had constitutional authority to enter a final judgment. Appellants' Brief at 20-33, 37-41; Appellee's Opp. 24-39.