ROLNICK KRAMER SADIGHI LLP
Lawrence M. Rolnick *(pro hac vice)*
lrolnick@rksllp.com
Marc B. Kramer *(pro hac vice)*
mkramer@rksllp.com
Michael J. Hampson *(pro hac vice)*
mhampson@rksllp.com
Richard A. Bodnar *(pro hac vice)*
rbodnar@rksllp.com
Frank T.M. Catalina (*pro hac vice*)
fcatalina@rksllp.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

ST. JAMES LAW, P.C.
Michael St. James, CSB No. 95653
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

*Attorneys for the RKS Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>Affects PG&E Corporation<br><br>Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>Chapter 11<br><br>**THE RKS CLAIMANTS' OBJECTION TO REORGANIZED DEBTORS' SIXTH EXTENSION MOTION**<br><br>**Hearing Information:**<br>Date: June 7, 2023<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Telephone or Video Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>Objection Deadline:<br>May 31, 2023, 4:00 p.m. (Pacific Time) |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 6

I.    The RKS Claimants Fulfill All Obligations Under the ADR Procedures While
      Reorganized Debtors Cause Delay ............................................................................... 6

II.   The Parties Exhaust the ADR Procedures and Reorganized Debtors Refuse to Make
      Objections ................................................................................................................... 10

ARGUMENT ........................................................................................................................ 14

I.    Reorganized Debtors Have Not Demonstrated Good Cause for the Court to Grant the
      Sixth Extension as to the RKS Claimants' Claims .................................................... 14

II.   The Court Should Adopt the RKS Claimants' Alternative Schedule for Resolution of
      Their Claims ............................................................................................................... 17

      a.    Deadlines for Amending Proofs of Claim and Objecting Should Be Set Within
            Sixty Days of the Hearing on the Motion .......................................................... 17

      b.    Additional Procedural Hurdles Should Not Be Imposed on the RKS Claimants
            That Would Further Delay Resolution of Their Claims ..................................... 20

CONCLUSION ..................................................................................................................... 22

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

# TABLE OF AUTHORITIES

**Cases**

*In re Recoton Corp.*,
   307 B.R. 751 (S.D.N.Y. Bankr. 2004) ....................................................................... 22

*In re Tronox Inc.*,
   2010 WL 1849394 (S.D.N.Y. Bankr. May 6, 2010) .................................................. 22

*Katchen v. Landy*,
   382 U.S. 323 (1966) ................................................................................................... 18

*Taggart v. Lorenzen*,
   139 S. Ct. 1795 (2019) ............................................................................................... 18

**Statutes**

11 U.S.C. § 502(a) ........................................................................................................... 20

15 U.S.C. § 78u-4(a)(1) ................................................................................................... 22

**Rules**

Fed. R. Bankr. P. 3001 .................................................................................................... 20

Fed. R. Bankr. P. 9014(c) ............................................................................................... 22

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1  The RKS Claimants[1] hereby submit this objection (the "**Objection**") to PG&E

2  Corporation's and Pacific Gas and Electricity Company's (collectively, the **"Debtors"** and, as

3  reorganized pursuant to the Plan, the **"Reorganized Debtors"**) Motion for an Entry of an Order

4  Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related

5  Relief (the **"Sixth Extension Motion," "Motion,"** or **"Mot."**) [Dkt. No. 13745] as it pertains to

6  the RKS Securities Claims.  The RKS Claimants further respectfully request that the Court deny

7  approval of the proposed Securities Claims Merits Litigation Procedures – Part I, as attached to

8  the Sixth Extension Motion, and instead approve a schedule for resolution of the RKS Claimants'

9  proofs of claim in substantially the form attached hereto as **Exhibit A**.  Contemporaneously

10  herewith, the RKS Claimants submit the Declaration of Richard A. Bodnar, dated May 31, 2023,

11  in support of this limited Objection ("**Bodnar Decl.**").

12  <u>**INTRODUCTION**</u>

13  Reorganized Debtors[2] insist that the individualized ADR Procedures they advocated—and

14  moved to implement—almost three years ago, are working, and thus a sixth extension of the

15  objection deadline is "necessary" to resolve additional claims without costly litigation.  The RKS

16  Claimants do not dispute that the ADR Procedures can be effective if followed.  The RKS

17  Claimants, for their part, have done everything required of them under the ADR procedures in an

18  effort to resolve their claims—they have submitted their trading information to Reorganized

19  Debtors, promptly responded to settlement offers, and mediated their claims in good faith.  Despite

20  those efforts, no resolution with Reorganized Debtors has been reached, and the parties remain

21  oceans apart in valuing the RKS Claimants' proofs of claim.  In fact, more than 99.99% of the

22  RKS Claimant's claims—measured by claimed damages amount—must still be resolved and

23  mediation has long since failed.  Such a result is hardly surprising.  As Reorganized Debtors

24  concede, the ADR Procedures were never expected to resolve *every* claim, and litigation of *some*

25  claims was inevitable.  For virtually all the RKS Claimants, the only path forward is to proceed to

26

27  [1] The RKS Claimants are set forth on **Schedule 1** attached hereto.

28  [2] "Reorganized Debtors" are PG&E Corporation and Pacific Gas & Electric Company, as
reorganized pursuant to the Plan (defined below).

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

the final step mandated by the ADR Procedures, in which "the Subordinated Securities claim shall be resolved through the claims reconciliation and objection process before the Bankruptcy Court." Repeated attempts at failed mediation promise only the specter of further delay and expense.

Rather than simply object to the RKS Claimants' claims as required by the ADR Procedures, Reorganized Debtors seek further delay. This too is unsurprising. Though they extol the virtues of the ADR Procedures, the Reorganized Debtors time and time again have refused to comply with their obligations under the procedures in a misguided effort to indefinitely defer this moment, when they will be forced to object to claims and litigate with the RKS Claimants. As this Court recognized, Reorganized Debtors spent years following implementation of the ADR Procedures "picking off the low hanging fruit" without meaningfully engaging with the RKS Claimants. Then, Reorganized Debtors admitted that they secretly "paused" implementing the ADR Procedures to negotiate a settlement with a class representative that was twice rejected by this Court. They now belatedly (but appropriately) acknowledge that unauthorized class negotiations "are not active at this time." Only when forced by the RKS Claimants by their objection to the Fifth Extension Motion did Reorganized Debtors finally agree to mediate with the RKS Claimants. Without recrimination over why the mediation failed, it never came remotely close to resolution and further efforts have proved fruitless. And now, ***more than three years*** after the RKS Claimants filed their proofs of claim, and ***almost three years*** after the Court entered the ADR Procedures Order, Reorganized Debtors seek to put the RKS Claimants back on a merry-go-round to nowhere.

As a compromise, the RKS Claimants are willing to agree to a limited extension of the objection deadline to address Defendant's stated concern that they wish to object to an amended proof of claim that fully details the basis for the RKS Claimants' securities law claims. The RKS Claimants are agreeable to filing an amended proof of claim that will set out more fully the basis of their securities claims and provide Reorganized Debtors with a reasonable period of time to file their objections in response. The RKS Claimants are willing to do so despite the fact that Reorganized Debtors have taken the position ***for the first time*** in this motion that the Court-ordered

securities proofs of claim forms submitted by the RKS Claimants are insufficient to notify them of the basis for their securities claims—despite having every opportunity to request that claimants clarify their positions in connection with prior extension requests, and despite purportedly having sufficient understanding of the basis for the RKS Claimants' claims to mediate with them in good faith. In an effort to move the process along and avoid needless disputation, the RKS Claimants are prepared to supplement their proofs of claim expeditiously so that there is no further excuse for delay in objecting to their claims.

Notwithstanding the very limited extension needed to accomplish the above, the Reorganized Debtors' extension request goes much too far. While they acknowledge the possibility that certain securities claims will need to be litigated, Reorganized Debtors propose a process for such litigation that deviates substantially from the Bankruptcy Code, is at war with a just, speedy, and inexpensive resolution of claims, and would put the RKS Claimants' claims on a timeline pursuant to which another extension of the objection deadline is inevitable. Under Reorganized Debtors' proposal, the RKS Claimants could adopt the class action allegations, in which case Reorganized Debtors would have until November 7, 2023 (less than 45 days before the requested extended deadline) to file a procedurally improper motion to dismiss that would not move the claims any closer to resolution on the merits. In the alternative, the RKS Claimants could file their own "pleading," in which case Reorganized Debtors would have no obligations other than to determine by some unspecified date what coordinated procedures could help resolve the remaining claims. What is more, Reorganized Debtors' proposed litigation procedures would purport to stay discovery—as if this claim were brought in a civil litigation under the Private Securities Litigation Reform Act ("PSLRA")—until the sufficiency of the proofs of claim are established, despite the PSLRA having no effect in a contested matter in bankruptcy. This too would unnecessarily impose additional delay to resolve claims in the near certain event that evidentiary hearings are required.

This Court should not tolerate further efforts to kick the can down the proverbial road and should instead require Reorganized Debtors to follow the default bankruptcy procedures for claim

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

reconciliation. Consistent with those procedures, the RKS Claimants are prepared to litigate their claims now, on a schedule that will ensure that the claims are resolved in an effective and efficient manner. For example, while the RKS Claimants are puzzled that Reorganized Debtors first raised in this motion that they view the RKS Claimants' claim forms as insufficient, the RKS Claimants are prepared to submit an amended proof of claim within 30 days of the hearing on the instant motion to further detail their securities claims. Consistent with the procedures for contested matters set out in Bankruptcy Rule 9014 and the Bankruptcy Local Rules, immediately upon the filing of objections to their amended proof of claim, the RKS Claimants will confer with Reorganized Debtors to determine which disputed issues can be resolved as a matter of law at an initial hearing by this Court, and which must be reserved for a later evidentiary hearing. There is no reason to delay setting any of these deadlines, as they will facilitate rather than disrupt any efforts at resolving the claims, which will remain subject to negotiation and mediation throughout the litigation process.

Nor is there any reason to give Reorganized Debtors an opportunity to "move to dismiss" the claims prior to filing their objections. Bankruptcy Rule 9014 imposes an expedited procedural regime to resolve claims and explicitly does not incorporate by reference Rule 12 of the Federal Rules of Civil Procedure and its attendant time-consuming motion practice. It thus gives no right to a debtor to respond to a proof of claim solely on the basis of the claim form itself without also addressing the merits of the claim concurrently. By invoking the protections of the Bankruptcy Court and advocating for a stay of the class action (thereby preventing the district court from ruling on the pending motion to dismiss in the class action), Reorganized Debtors knowingly opted for the claims resolution process in bankruptcy and relinquished their ability to seek dismissal under Rule 12. In proposing now to add that extra procedural step to the claims resolution process in bankruptcy (and halt discovery in the interim), Reorganized Debtors seek to further delay the RKS Claimants from obtaining discovery and reaching hearings on issues that could meaningfully move the process forward.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Accordingly, the RKS Claimants propose a more limited extension of the objection deadline solely applicable to RKS Securities Claims, and put forward the following alternative procedure for resolving their claims, which is set forth in full in **Exhibit A** hereto:

- By July 7, 2023 (within 30 days of the scheduled hearing on the Sixth Extension Motion and 17 days of the current objection deadline), the RKS Claimants will file an omnibus amended proof of claim that will include allegations underlying their securities claims and will give Defendants sufficient detail to file their objections.

- By August 7, 2023 (within 60 days of the scheduled hearing on the Sixth Extension Motion and 48 days of the current objection deadline), Reorganized Debtors will file objections to the omnibus amended proof of claim pursuant to Bankruptcy Rule 3007, which will include any objections to the sufficiency of the proof of claim as well as any objections on the merits.

- By August 21, 2023 (within 75 days of the scheduled hearing on the Sixth Extension Motion and 62 days of the current objection deadline), the RKS Claimants and Reorganized Debtors will submit a status report to the Court identifying contested issues that the parties agree can be resolved by the Court as a matter of law, and contested issues that the parties agree must be resolved following an evidentiary hearing. To the extent the parties cannot agree whether a specific issue can be resolved as a matter of law or requires fact and/or expert discovery, the parties will submit their respective positions to the Court.

- At its earliest convenience following August 21, 2023, the Court will hold a status conference to hear argument on issues that it decides can be resolved as a matter of law and/or set a date or dates for that hearing. The Court will also set a date or dates for an evidentiary hearing on any issues that it determines will require fact and/or expert discovery. Fact and expert discovery will open immediately following the status conference with respect to any issues the Court determines are suitable for those forms of discovery.

The history of this long-delayed case has shown that without the pressure of firm deadlines, Reorganized Debtors will continue to put off resolution of the RKS Claimants' claim and (ultimately) resolution of all Securities Claims. Far from wasting the Court's and the parties' resources, the above procedures will finally hold Reorganized Debtors to their requirements to move the RKS Claimants' claims closer to resolution. In this Court's words at the last hearing addressing these claims, the time has come for Reorganized Debtors to "fish or cut bait" with the RKS Claimants "and either not object to their claim or file an objection to their claim." The Court should maintain a firm date on which Reorganized Debtors' objections to the RKS Claimants' claims are due, deny the Sixth Extension Motion as applied to the RKS Claimants, and instead adopt the much more reasonable schedule set forth in **Exhibit A**.

## **BACKGROUND**

### I.     The RKS Claimants Fulfill All Obligations Under the ADR Procedures While Reorganized Debtors Cause Delay

The RKS Claimants are 690 individual Securities Claimants with aggregate damages of more than $2.7 billion. They represent a significant portion of the 4,198 Securities Claims that Reorganized Debtors say are unresolved, with claims nearly two times the size of all previously settled claims combined. (*See* Mot. at 13.) Throughout these bankruptcy proceedings, the RKS Claimants have made every effort to reach a reasonable resolution of their claims with Reorganized Debtors. To that end, they have steadfastly complied with the procedures urged for by Reorganized Debtors and implemented by the Court to give Reorganized Debtors proper notice of their claims, provide the information necessary for Reorganized Debtors to assess their claims, and engage in good faith negotiations with Reorganized Debtors to resolve their claims without resorting to costly and time-consuming litigation. At each turn, the RKS Claimants' have been stymied by Reorganized Debtors and, despite their efforts, have been unable to reach a settlement with Reorganized Debtors and are now at an impasse.

Debtors commenced these Chapter 11 cases on January 29, 2019, seeking relief pursuant to Chapter 11 of the Bankruptcy Code. [Dkt. No. 1]. On February 27, 2020, the Court set April 16, 2020 (the "**Extended Securities Bar Date**") as the deadline for securities claimants to file

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

individual proofs of claim, subject to an approved form (the "**Rescission or Damage Proof of Claim Form**"). The Rescission or Damage Proof of Claim Form authorized investors that "purchased or acquired [PG&E]'s publicly traded debt and/or equity securities . . . from April 29, 2015 through November 15, 2018" to submit an individualized claim. (*See, e.g.,* Bodnar Decl. Ex. 1 at 1). The Rescission or Damage Proof of Claim Form also required that each claimant attach as an annex information concerning each acquisition or sale of PG&E's equity securities by the claimant during the relevant period. (*Id.* at 4-7). Each of the RKS Claimants filed a Rescission or Damage Proof of Claim Form and the information it requested concerning their purchases and sales of PG&E securities. (Bodnar Decl. ¶ 3). On June 20, 2020, the Court entered an Order confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 (as amended and/or modified, the "**Plan**"). [Dkt. Nos. 8048, 8053].

On September 1, 2020, Reorganized Debtors filed a Motion to Approve Securities ADR and Related Procedures For Resolving Subordinated Securities Claims (the "**ADR Procedures Motion**"). [Dkt. No. 8964]. Among other things, Reorganized Debtors' ADR Procedures Motion sought entry of an order that would establish efficient procedures for resolving the Securities Claims by requiring Securities Claimants to submit information regarding their securities trading (the "**Trading Data**") to Reorganized Debtors, who would then exchange settlement offers with the claimants and/or enter into mandatory non-binding mediation with them. [*Id.* at 2]. Reorganized Debtors represented to the Court in the ADR Procedures Motion that "the Securities ADR Procedures are designed to *facilitate prompt settlements with individual claimants* as opposed to resolution of these claims on the merits." [*Id.* at 3-4 (emphasis added)].

On January 25, 2021, the Court entered the ADR Procedures Order. [Dkt. No. 10015]. The ADR Procedures Order incorporated, as attachments, (1) Securities Claim Information Procedures (the "**Claim Information Procedures**") regarding the submission of Trading Data to the Reorganized Debtors by Securities Claimants, and (2) Securities ADR Procedures (the "**ADR Procedures**") "for facilitating the potential settlement of Subordinated Securities Claims, including, without limitation, (i) procedures to allow the Reorganized Debtors and the

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Subordinated Securities Claimants to exchange settlement offers, and (ii) procedures for both standard and abbreviated mandatory non-binding mediation of Subordinated Securities Claims …" [*Id.* at 1]. The Claim Information Procedures stated that "[f]ollowing the timely return of a Trading Information Request Form," Reorganized Debtors could "(i) make a settlement offer to a Subordinated Securities Claimant; (ii) designate the Subordinated Securities Claim(s) for mandatory mediation; or (iii) both." [Dkt. No. 10015-1 at 4]. The ADR Procedures specifically noted that in response to any settlement offer received by claimants pursuant to the procedures, "[n]o counteroffer is required." [*Id.* at 13].

The RKS Claimants submitted Trading Data to Reorganized Debtors as requested. Each RKS Claimant submitted trading information called for by the claim forms, and virtually all RKS Claimants responded fully to the Trading Information Request Forms they received. (Bodnar Decl. ¶¶ 3-4). Yet, Reorganized Debtors did not make a ***single*** settlement offer to, or request to mediate with, any of the RKS Claimants for ***over two years*** from the time the ADR Procedures were put in place. (*Id.* ¶ 6). In their Motion, Reorganized Debtors attribute these failures to delays by certain Securities Claimants to respond to their requests for Trading Data (Mot. at 12), but any such delays by certain RKS Claimants—in addition to being overstated because, among other reasons, the RKS Claimants submitted all data requested by the Recission or Damages Proof of Claim Form—do not explain Reorganized Debtors' delay in providing offers to, or participating in mediation with, the RKS Claimants for whom they had full sets of Trading Data for an extensive period of time.[3] Nor do they excuse Reorganized Debtors continued reluctance to object to the RKS Claimants' claims when they are now in possession of all requested data and, in any event, could simply object on the basis of receiving insufficient data (as they already have in their seventh, eighth and seventeenth omnibus objections to Securities Claims). [*See* Dkt. Nos. 10788, 10922, 11561].

In fact, Reorganized Debtors did not offer to settle, or mediate, with any of the RKS Claimants until they were forced to. On October 25, 2022, Reorganized Debtors filed their Fifth

---

[3] Notably, no fewer than 279 RKS Claimants had submitted their complete sets of Trading Data by November 2021, and virtually all RKS Claimants submitted their complete sets of Trading Data to Reorganized Debtors no later than November 2022. (Bodnar Decl. ¶ 5).

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Extension Motion, seeking a 270-day extension of the claims objection deadline. [Dkt. No 13122 at 1-2]. Reorganized Debtors revealed for the first time in this filing that the Court-ordered ADR Procedures "w[ere] paused after the Reorganized Debtors began discussions regarding a more global resolution of the Securities Claims" with the class representative. [*Id.* at 10].[4] A group of RKS Claimants (the "**Kingstown Claimants**"), among others, objected to the Fifth Extension Motion (the "**Fifth Extension Objection**"). [Dkt. Nos. 13163]. The Kingstown Claimants argued in the Fifth Extension Objection that the Reorganized Debtors failed to demonstrate cause for a further extension of the claims objection deadline because:

> [T]hey have (i) failed to reasonably and diligently to comply with this Court's ADR Procedures Order; (ii) unilaterally "paused" compliance with that order, thereby delaying the prompt and efficient resolution of the Securities Claims; (iii) repeatedly assured this Court that they were in compliance with its ADR Procedures Order without disclosing they had secretly decided to abandon it; and (iv) used the time provided by previous extensions to pursue a class-action procedure that Reorganized Debtors themselves opposed and of which this Court repeatedly disapproved.

[Dkt. No. 13163 at 12]. The Kingstown Claimants further argued that the Court should order Reorganized Debtors to promptly comply with the ADR Procedures Order, both because "Reorganized Debtors should be judicially estopped from abandoning the ADR Procedures to pursue a 'global' resolution" with the class and in order to fulfill one of the Bankruptcy Code's primary purposes—the prompt and efficient resolution of claims. [*Id.* at 17-18].

Prior to the hearing date on the Fifth Extension Motion, the Kingstown Claimants (and other joining RKS Claimants) agreed to withdraw their objections and joinders in exchange for

---

[4] Reorganized Debtors claim this unsanctioned "pause" was justified "for practical reasons," because "[e]very individual settlement would decrease the size of the proposed class, and proportionately, the amount that the Reorganized Debtors would be prepared to pay to settle on a class basis," creating a "moving target" for negotiations with the class. (Mot. at 15). This purported explanation elides the plain fact that, as this Court has noted, these negotiations with the class expended the estate's time and resources that otherwise could have been used attempting to resolve claims of the Securities Claimants (including the RKS Claimants) pursuant to the ADR Procedures in favor of certain putative class members who did not even file claims in the bankruptcy. (Bodnar Decl. Ex. 2 at 45:21-47:9). And it ignores that these negotiations ultimately resulted in needless delay because they proved unsuccessful. (*See* Mot. at 15).

Reorganized Debtors' agreement to mediate in good faith with the RKS Claimants. (Bodnar Decl. ¶ 7). Other objectors, however, did not reach agreement with Reorganized Debtors to withdraw their objections, and the Court held a hearing on the Fifth Extension Motion on November 30, 2022 (the "**Fifth Extension Hearing**").

At the Fifth Extension Hearing, the Court stated to Reorganized Debtors' counsel that "[y]ou've confirmed my instincts. My instincts were … the first two years under the claim, or a year and a half under the procedure, you were picking off the low hanging fruit." (Bodnar Decl. Ex. 3 at 43:6-11). The Court also noted surprise that, nearly two years after entry of the ADR Procedures Order, significant claimants who had complied with the procedures had not received offers. (*See id.* at 51:19-22 ("That's why I was surprised to have this happen. I thought things were under control and I thought – I was quite surprised when this opposition surfaced.")).

## II.  The Parties Exhaust the ADR Procedures and Reorganized Debtors Refuse to Make Objections

On January 19, 2023, nearly three years after the RKS Claimants' submitted proofs of claim and two years after the ADR Procedures were put in place, The RKS Claimants and Reorganized Debtors finally participated in a mediation of the RKS Claimants' claims. The parties dispute whether each negotiated in good faith, but all agree that the mediation was completely unsuccessful.[5] The failed mediation triggered a 60-day deadline for Reorganized Debtors to object to the RKS Claimants' claims. As the ADR Procedures state:

> In the event these Securities ADR Procedures have been invoked as to a Subordinated Securities Claim but have not resolved the Subordinated Securities Claim, the deadline to object to the Subordinated Securities Claim under Section 7.1 of the Plan shall be automatically extended until sixty (60) days after the termination of the Securities ADR Procedures. For the avoidance of doubt, this provision in no way shortens the deadline to object to the Subordinated Securities Claims under Section 7.1 of the Plan.

---

[5] The RKS Claimants take issue with Reorganized Debtors' characterization of the mediation in the Motion. (Mot. at 17). RKS mediated in good faith and the mediation was terminated because Reorganized Debtors refused to accept RKS's representation that it was authorized to negotiate on behalf of all RKS Claimants. *See* Declaration of Frank T.M. Catalina in Support of the RKS Claimants' Motion to Enforce the ADR Procedures Order and Establish a March 20, 2023 Deadline to Object to RKS Claimants' Claims, dated February 28, 2023 [Dkt. No. 13557].

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

[Dkt. No. 10015-1 § III.C].

Predicting from prior experience that Reorganized Debtors would seek to avoid their objection obligations under the ADR Procedures Order, following the failed mediation the RKS Claimants promptly moved this Court for an order enforcing the ADR Procedures and setting a March 20, 2023 objection deadline specific to the RKS Claimants' claims (the **"Enforcement Motion"**). [Dkt. No. 13492]. In the Enforcement Motion, the RKS Claimants asked the Court to hold Reorganized Debtors to the 60-day objection deadline contemplated by the ADR Procedures following a failed mediation, or in the alternative, to impose an objection deadline as a discretionary remedy to penalize Reorganized Debtors for their bad faith mediation tactics. [*Id.* at 10-13]. The RKS Claimants explained why equity favored the Court's setting an objection deadline:

> The Court should order Reorganized Debtors to object to the RKS Claimants' claims no later than March 20, 2023 because, given the extreme delay in addressing the RKS Claimants' claims and the failure of the ADR Procedures, such a deadline is both equitable and necessary. As an initial matter, the equities favor imposing this reasonable time constraint on Reorganized Debtors because the RKS Claimants' claims have been sitting idle for years, and will otherwise continue to do so. . . . As this purgatory stretches on, the RKS Claimants – whose damages exceed $2.7 billion in the aggregate – are being forced to bear both credit and market risks, unlike those creditors who have already been paid under the Plan.

[*Id.* at 13]. The RKS Claimants further argued that setting an objection deadline would cause no prejudice to Reorganized Debtors because they had information concerning the RKS Claimants' trading of PG&E securities for multiple years, and thus had ample time to review and respond to their claims. [*Id.*].[6]

---

[6] In the Motion, Reorganized Debtors assert that the Enforcement Motion was part of some "strategy" employed by the RKS Claimants to "allow them to skip to the head of the line." (Mot. at 18). As an initial matter, this Court agreed that the ADR Procedures do not create a "line" in which certain claimants are required to wait until all others have moved forward. (*See* Bodnar Decl. Ex. 2 at 59:21-23 ("[Y]ou complain that they're trying to get in front of the line, and they correctly say there is no line. You haven't opened up the gate yet.").). Indeed, the idea of "waiting in line" is a euphemism for the proposition that no one can move forward faster than the slowest

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

The Court heard argument on the Enforcement Motion on March 7, 2023 (the **"Enforcement Hearing"**). At the Enforcement Hearing, the Court expressed discomfort with Reorganized Debtors' counsel's suggestion that following the failed mediation, the RKS Claimants should be forced as a next step to conduct another mediation on different terms: "[W]hat I don't feel comfortable about is both sides have agreed to a mediation procedure that failed, without saying who's at fault, but let's go back to another mediation procedure as the next step. That seems, for [the RKS Claimants], to be inappropriate." (Bodnar Decl. Ex. 2 at 61:20-24). The Court also disagreed with Reorganized Debtors' assertions that an extension beyond the June 30, 2023 objection deadline was necessary for the RKS Claimants' claims, stating that "I don't quite believe that the sky is going to fall if the deadline occurs" and "[w]hat I am not inclined to do is, at least for [the RKS Claimants], extend it beyond June 30 in any event." (*Id.* at 74:5-19). The Court instead proposed that by a date certain, Reorganized Debtors should send individualized settlement offers to each of the RKS Claimants which, if rejected, should trigger Reorganized Debtors' obligations to object to their claims. (*See id.* at 61:25-62:10 ("[I]f it's not successful, then it seems to me that PG&E, for those claimants at least, has to fish or cut bait and either not object to their claim or file an objection to their claim.")).

On March 13, 2023, the Court issued an Order on the RKS Claimants' Motion to Enforce the ADR Procedures Order (the **"Enforcement Order"**). [Dkt. No. 13612]. The Enforcement Order set an April 17, 2023 deadline for Reorganized Debtors to send individualized settlement offers to the RKS Claimants. [*Id.* at 2]. If those offers were rejected, the Enforcement Order left to the Court's discretion "whether to bypass, enforce or modify Securities ADR Procedures and fix a deadline other than the automatic 60-days . . . for objections to the claims of the RKS Claimants." [*Id.* at 3]. Finally, the Enforcement Order directed Reorganized Debtors to propose

---

claimant. Regardless, the Enforcement Motion was intended to serve the exact opposite purpose—to force the Reorganized Debtors to start moving these claims, which to that point they had largely ignored, closer to resolution. By that measure, the Enforcement Motion was somewhat successful, as following its filing, Reorganized Debtors *for the first time* sent formal settlement offers to certain of the RKS Claimants, albeit with terms that were completely unreasonable to the RKS Claimants and which they promptly rejected. (*See* Bodnar Decl. ¶ 8).

in their upcoming motion to further extend the bar date "any suggested changes they have to the Securities Claims Procedures" and "to address specifically the RKS Claimants' issues," including whether the Court should "fix a prompt deadline for the Reorganized Debtors to object to the RKS Claimants' claims" or otherwise "streamline" the procedures for their claims. [*Id.* at 4].

Reorganized Debtors submitted 571 individualized settlement offers to the RKS Claimants by the Court-ordered April 17, 2023 deadline, marking the first time in over three years since the claim forms were submitted and over two years since the ADR Procedures were implemented that many of the RKS Claimants received such offers. Counsel for the RKS Claimants promptly presented those offers to each of their clients who received them. (Bodnar Decl. ¶ 9). Five of the RKS Claimants (representing 0.0001% of the RKS Claimants' aggregate damages claim) accepted the offers they received, and another five sent counteroffers to Reorganized Debtors, to which they have not received responses. (*See id.* ¶¶ 2, 9). The vast majority of the offers, however, were completely unreasonable, and thus the RKS Claimants rejected them without a counteroffer, as permitted by the ADR Procedures. (*Id.* ¶ 9).[7]

On May 17, 2023, Reorganized Debtors filed the Sixth Extension Motion, which asks the Court for a further six-month extension of the objection deadline (until December 18, 2023) without any meaningful proposal—as required by the Enforcement Order—to streamline the procedures for the RKS Claimants' claims and to ensure objections could realistically be made by

---

[7] Reorganized Debtors note that by May 12, 2023, "90 percent of all of the viewed offers have been accepted and only 136 offers have been declined." (Mot. at 13). These figures are misleading for two reasons. *First*, offers were sent to claimants both by email (which attached a PDF describing the terms of the offer) and by link to an online portal (in which a claimant could accept or reject its offer with the click of a button). (*See* Bodnar Decl. ¶ 8, 10). It is the RKS Claimants' understanding that when Reorganized Debtors refer to "viewed" offers, they mean those offers for which claimants accessed the online portal. (*Id.* ¶ 10.) But entering the online portal is unnecessary because one could view the offer by email only and reject it by its terms by simply taking no further action (which is presumably how many claimants reviewed and rejected their offers). (*See id.* ¶ 8). *Second*, Reorganized Debtors seemingly strategically chose May 12, 2023 as their reporting date (despite filing the Motion on May 17) because in the period between May 12 and May 17, the RKS Claimants rejected nearly all the offers they received, such that 527 of 571 offers were rejected by the filing date of the Motion. (*Id.* ¶ 11). Had Reorganized Debtors reported up-to-date numbers in the Motion, the results would have appeared substantially less favorable to them.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

the requested extended bar date. On the contrary, the Sixth Extension Motion seeks to impose **additional** procedural hurdles for the RKS Claimants, including subjecting their claims to lengthy and time-consuming "motions to dismiss" not contemplated by the Bankruptcy Code or giving Reorganized Debtors the right to propose additional coordinated procedures "contemporaneous with any further extension of the objection deadline" that will all but guarantee further extensions will be required. (*See, e.g.*, Mot. at 4-5).

In the more than three years since the RKS Claimants have submitted their proofs of claim, virtually all of them have yet to receive a meaningful settlement offer from Reorganized Debtors and are no closer to resolution of their claims. The only way the parties can possibly begin to close the gap between them is through the claims reconciliation process that the RKS Claimants are entitled to under the Bankruptcy Code, and that the ADR Procedures explicitly demand when negotiations fail, as they have here. That process should begin now on a timeline that ensures that any additional extension the Court grants Reorganized Debtors is the final one.

## ARGUMENT

### I. Reorganized Debtors Have Not Demonstrated Good Cause for the Court to Grant the Sixth Extension as to the RKS Claimants' Claims

Reorganized Debtors have failed to establish good cause for the Court to grant the requested 180-day extension for purposes of objecting to the RKS Claimants' claims. Their sole basis for the requested extension is the self-serving assertion that "more time is necessary to complete the process contemplated by the Securities Procedures." (Mot. at 22). But that process has already been completed as to the RKS Claimants. The RKS Claimants have submitted their claims and Trading Data, have received and rejected offers, and have participated with Reorganized Debtors in a mediation that failed. The only reasonable next step, which the ADR Procedures explicitly require, is for Reorganized Debtors to finally object to their claims.

Under Federal Rule of Bankruptcy Procedure 9006(b)(1) and the Plan, an extension of the objection deadline may only be granted "for cause shown." No good cause exists to extend the deadline an additional six months for purposes of the RKS Claimants' claims. Reorganized Debtors have had the RKS Claimants' proofs of claim for over three years and substantially all of

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

their Trading Data for ample time. They submitted individual offers to each of the RKS Claimants and agreed to mediate with them, ostensibly understanding sufficiently the basis for their claims to negotiate a good faith resolution. The Court has already rejected the notion that the RKS Claimants must submit to another doomed mediation before the reconciliation process begins. Reorganized Debtors thus have not—and cannot—provide any reason another six months is necessary to file their specific objections against the RKS Claimants. It is a request to delay for delay's sake, which would substantially prejudice the RKS Claimants, who have continued to expend time and resources complying with the ADR Procedures and asserting their rights as creditors, to this point without any meaningful progress towards resolution of their claims.

Reorganized Debtors resort to arguing that the extension is necessary for *all* Securities Claims so as not to "accelerate[] resolution of some claims over others." (Mot. at 22). This is a transparent argument to ensure that no claim can move forward faster than the slowest claim. But nothing in the Plan or the ADR Procedures Order requires that all Securities Claims be resolved on the slowest possible track or even that they be resolved on the same track or timeline. And to the extent claims are resolved sequentially, that is a direct result of the choice of Reorganized Debtors, who decided to "pick[] off the low hanging fruit" for two years before engaging substantively with any of the larger claimants. It is completely disingenuous for Reorganized Debtors now to argue the RKS Claimants must wait *again* because they prefer not to resolve the remaining claims on a piecemeal basis. The estate, supported by sophisticated counsel, is clearly capable of litigating the RKS Claimants' claims while attempting to negotiate consensual resolutions with other claimants. Indeed, in opposition to the RKS Claimants' motion to intervene in the class action, defendants in that action told the district court they were informed PG&E was juggling multiple *actions* at once—"mediating and attempting to negotiate a class-wide settlement [of the class action] *in parallel* to the Bankruptcy process." (Bodnar Decl. Ex. 4 at 1 (emphasis added)). Reorganized Debtors' purported concern about the burdens and expenses of piecemeal litigation of multiple *bankruptcy claims* is thus purely pretextual.

Moreover, as the Court pointed out to Reorganized Debtors' counsel at the Enforcement

Hearing, formally objecting to the RKS Claimants' claims would not necessarily trigger burdensome discovery or litigation obligations. As the Court explained, objecting would not preclude the possibility of future mediation. (*See* Bodnar Decl. Ex. 2 at 73:17-23). To be sure, having objections on the record may alter the parties' bargaining positions such that a mediated resolution would become *more* realistic. That is precisely what the bankruptcy process is meant to accomplish. Indeed, Local Bankruptcy Rule 3007-1 requires that upon the filing of objections, the Court will schedule a status conference at which no evidence is presented (though matters of law could be heard and decided). (*See id.* at 73:24-74:4). The obligatory status conference provides another opportunity for the parties to confer and determine how best to structure the litigation so as to minimize the burdens on both sides and ensure disputed issues can be decided quickly and inexpensively. In those ways, and perhaps counterintuitively, at this stage enforcing Reorganized Debtors' obligation to serve objections would not force the parties into burdensome and costly litigation, but rather is more likely to move the parties from their pre-litigation negotiation positions so they can potentially *avoid* having to litigate the merits of their claims.

Lastly, the Court should not accept Reorganized Debtors' specious argument that the requested six-month extension is necessary to avoid a scenario where they must file objections on the grounds that the Securities Claimants who submitted the Court-approved Recission or Damage Proof of Claim Form failed to sufficiently notify them of the basis for their claims against PG&E. (*See* Mot. at 23). To start, most of those claim forms were submitted by the Extended Bar Date in April 2020. Since that time, Reorganized Debtors have filed 21 omnibus objections to Securities Claims and sought six extensions of the objection deadline. At no point until the filing of this Motion did Reorganized Debtors raise any issue concerning the adequacy of the Securities Claim forms. Strategically withholding their objection on that basis should not be deemed good cause for a further extension of the deadline. In any event, very little time, if any, is necessary for Securities Claimants to provide Reorganized Debtors with the notice they claim to need: Securities Claimants can assert simply that they intend to adopt the allegations in the class action (which will likely be the case for most claimants), or file amended proofs of claim setting out their own claims

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

for relief that will be substantially similar to the claims in the class action. Specifically, subject to the Court's decision on the Motion, the RKS Claimants intend to file an amended proof of claim within 30 days. (Bodnar Decl. ¶ 12). Accordingly, even if the Court were to agree that an extension to allow amendments to proofs of claim were warranted, that extension should be far shorter than the requested 180 days, at least as to the RKS Claimants.

In sum, after two years in which Reorganized Debtors focused on "low hanging fruit" and an unsuccessful (and unauthorized) class negotiation rather than the substantial claims of the RKS Claimants, the parties have spent the last six months negotiating the claims pursuant to the ADR Procedures, to no avail. Now that the ADR Procedures have been exhausted, there is no good cause for further delay in objecting to these claims. For the benefit of both the estate and its creditors, a speedy and effectual resolution of the claims should be the goal. As the Court stated, it is time for Reorganized Debtors to "fish or cut bait." The Court should deny the request for a 180-day extension.

## II. The Court Should Adopt the RKS Claimants' Alternative Schedule for Resolution of Their Claims

In the Enforcement Order, the Court gave special permission to the RKS Claimants to provide, in their response to the Motion, "any suggestions they have for streamlining or otherwise facilitating the Securities Claims Procedures, and responding to any suggestions by the Reorganized Debtors." [Dkt. No. 13612 at 4]. Pursuant to the Enforcement Order, the RKS Claimants provide below their response to the Reorganized Debtors' proposed Securities Claim Merits Litigation Procedures – Part I, which will prolong rather than streamline the claims reconciliation process, and instead propose an alternative litigation schedule specific to their claims in **Exhibit A** that will more efficiently and effectively move the claims towards resolution now that the ADR Procedures have been exhausted.

### a. Deadlines for Amending Proofs of Claim and Objecting Should Be Set Within Sixty Days of the Hearing on the Motion

Both Reorganized Debtors and this Court have consistently recognized that the purpose of the ADR Procedures is to facilitate prompt resolution of the Securities Claims, and thereby to

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

uphold the "chief purpose" of the bankruptcy laws. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803 (2019) (quoting *Katchen v. Landy*, 382 U.S. 323, 328 (1966)) ("[A] chief purpose of the bankruptcy laws [is] to secure a prompt and effectual resolution of bankruptcy cases within a limited period."). For example, Reorganized Debtors represented in their ADR Procedures Motion that the ADR Procedures "are designed to facilitate prompt settlements with individual claimants." [Dkt. No. 8964 at 3-4]. And at the hearing on that motion, Debtors' counsel represented to the Court that they would have settlement offers out to "most claimants" "within a couple of months." (Bondar Decl. Ex. 5 at 7:3-4). In issuing the ADR Procedures Order, this Court reinforced that the ADR Procedures "have the appeal of assuring some claimants will have an opportunity to recover some of their losses quickly and inexpensively." (Bodnar Decl. Ex. 6 at 7:1-4). Yet, even Reorganized Debtors acknowledge that certain of the claims will not be settled and will need to be resolved on the merits. (*See, e.g.*, Mot. at 24 ("[I]t is likely that some Securities Claims may require adjudication once the Securities Procedures have run their course.")). That is no reason to depart from the purpose of both the ADR Procedures and the bankruptcy laws to facilitate prompt resolution of the claims.[8]

Reorganized Debtors' proposed litigation procedures are clearly inconsistent with their stated goal of efficient claim resolution. Reorganized Debtors ask for (at least) 180 more days to object to the RKS Claimants' claims when they have had both their claim forms and a substantial amount of their trading data for years. That extension alone would be inappropriate. But Reorganized Debtors go further—under their proposal, far *more* than 180 days would necessarily elapse before Reorganized Debtors are required to object to the RKS Claimants' claims. Their proposed procedures set out dual tracks depending on whether a claimant adopts the securities class action allegations or files an amended proof of claim. In either case, however, Reorganized Debtors would have no obligation to object at the 180-day mark. In particular, if a claimant were

---

[8] Contrary to Reorganized Debtors' assertion (Mot. at 18-19), the RKS Claimants' position in opposition to the Motion is perfectly consistent with the position they have taken in seeking to intervene in the district court. In both instances, they seek to have Reorganized Debtors follow the ADR Procedures as they were drafted rather than "pause" them to negotiate an unsanctioned settlement on behalf of non-debtors or "modify" them to allow for endless delay.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

to adopt the class action allegations, Reorganized Debtors would be entitled to file a civil-litigation-style "motion to dismiss" 45 days prior to the objection deadline that would certainly be unresolved by the time the objection deadline is reached. And if a claimant were to amend its claim form (as the RKS Claimants plan to do), there are no procedural requirements at all for Reorganized Debtors prior to the proposed objection deadline, as they are free, "after reviewing the substance and number of separate pleadings or disclosures, *and contemporaneous with any further extension of the objection deadline*," to "propose procedures to resolve outstanding claims that have not yet been resolved." (Mot. at 26). These proposed "modifications" to the ADR Procedures would do nothing to "streamline" the procedures, as the Enforcement Order required, but rather result in a more protracted and inefficient process than the ADR Procedures and the bankruptcy laws provide.

The ADR Procedures themselves dictate the appropriate timeline for objections in the event a settlement was not reached through the offer and mediation process—60 days from the failure of the mediation. [Dkt. No. 10015-1 § III.C]. While the RKS Claimants have waited far more than 60 days following their failed mediation for Reorganized Debtors to object, as a compromise they are willing to accept Reorganized Debtors' representation—made for the first time in the Motion (Mot. at 24-25)—that it will be helpful to facilitate resolution for the RKS Claimants to provide Reorganized Debtors with an amended proof of claim that will fully disclose the basis of their claims, which they are committed to do within 30 days of the hearing on the Sixth Extension Motion—*i.e.*, by July 7, 2023. The RKS Claimants submit, however, that a slight variation of the 60-day deadline imposed by the ADR Procedures should still be enforced such that Reorganized Debtors should be required to object to the RKS Claimants' claims by August 7, 2023, 60 days from the date of the hearing on the Sixth Extension Motion. Setting this firm but reasonable deadline will prevent Reorganized Debtors from continuing to unduly delay and is thus critical for prompt resolution of the RKS Claimants' claims, whether by bringing the parties back to the table for mediation or setting the claims on a course towards resolution on the merits.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

### b. Additional Procedural Hurdles Should Not Be Imposed on the RKS Claimants That Would Further Delay Resolution of Their Claims

Reorganized Debtors' litigation proposal also asks the Court to depart from the claim reconciliation process under the bankruptcy laws and import additional time-consuming procedural rules from outside the bankruptcy process that would further delay claimants' ability to resolve their claims. Nothing in the ADR Procedures Order or the Bankruptcy Code supports the addition of these lengthy and expensive procedural hurdles, and they fly in the face of the Court's direction in the Enforcement Order that Reorganized Debtors propose ways to "streamline" resolution of the RKS Claimants' claims.

Reorganized Debtors ask the Court to allow them to file motions to dismiss claims "similar to the motions to dismiss filed in the Securities Litigation" under Federal Rule of Civil Procedure 12. (Mot. at 26). But Bankruptcy Rule 9014, which governs contested matters in bankruptcy where there is no adversary proceeding, explicitly omits Rule 7012 (which is the bankruptcy equivalent of Federal Rule of Civil Procedure 12) from application in contested matters. Fed. R. Bankr. P. 9014(c). Instead, the bankruptcy process requires prompt engagement and resolution on the merits as the most expeditious way to resolve claims. Accordingly, Reorganized Debtors have no right to "move to dismiss" the RKS Claimants' claims for alleged failure to state a claim. That is because unlike ordinary civil litigation against solvent entities, the default procedure in bankruptcy is that a claim is "deemed allowed" unless a party in interest objects. *See* 11 U.S.C. § 502(a). In other words, the legal sufficiency of the claim is assumed absent an objection. *See* Fed. R. Bankr. P. 3001(f) ("A proof of claim . . . shall constitute prima facie evidence of the validity and amount of the claim."). Thus, in a contested matter the debtor must provide ***all*** objections to a claim—whether to the sufficiency of the claim as a matter of law or to the merits of the claim based on what will be the subject of an evidentiary dispute—at once. In that sense, as this Court has acknowledged, the filing of objections to a proof of claim is analogous to filing an answer to a complaint (including all anticipated legal and factual defenses) in the non-bankruptcy context. [*See* Dkt. No. 10769 at 4-5]. The objection process thus serves multiple functions, including giving notice of the full range of defenses to the claimant, providing the Court with sufficient

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

understanding of the case to properly manage it, and facilitating the goal of the bankruptcy laws to ensure prompt and efficient resolution of the claims. There is no gating device like Rule 12 that prevents claims from moving forward before joining issue on the merits.

Reorganized Debtors should not be permitted to deviate from the standard bankruptcy procedure and add an expensive and time-consuming motion to dismiss phase to their contested matters with the RKS Claimants. Motions to dismiss are pending in the class action, and Reorganized Debtors advocated for a stay of that action that would prevent those motions from being decided while the bankruptcy proceedings are underway. (*See, e.g.*, Bodnar Decl. Ex. 7). If Reorganized Debtors thought those motions would assist in resolving the Securities Claims, they would have allowed the district court to decide them. Instead, they supported the district court's stay of that action in favor of claims resolution in bankruptcy. Their purpose in now resurrecting civil-court-style resolution is only for further delay. The Court should therefore impose the same requirement applicable to all debtors and order Reorganized Debtors to provide their ***full set*** of objections by the 60-day deadline. The Court can then ascertain, consistent with Local Rule 3007-1(b), whether the objections present any factual disputes that will require an evidentiary hearing and/or resolve any legal disputes presented by the objections at an initial status conference.[9] Setting such a schedule will ensure that the matter can be managed on an efficient timeline while respecting all parties' due process rights.

Relatedly, Reorganized Debtors take the position that discovery should be stayed until the parties and the Court "can determine the most efficient way to litigate any remaining claims once the Securities Procedures have been exhausted." (Mot. at 27). Again, there is no basis in bankruptcy law for such a procedure, and it is a clear effort by Reorganized Debtors to delay resolution of the Securities Claims. Indeed, while Reorganized Debtors claim a discovery stay is

---

[9] The RKS Claimants recognize that the parties may dispute whether certain issues will require factual findings or could be decided as a matter of law. Accordingly, the RKS Claimants include in their proposed schedule a two-week meet and confer period in which the parties can seek to resolve any such disputes and make submissions to the Court concerning their positions on how the case ought to be managed. The Court can make any such determinations at the initial status conference mandated by Local Rule 3007-1(b).

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

"mandated by the PSLRA in any court," the statutes and the courts say the opposite. The PSLRA statute itself states that it applies only "in each private action arising under this chapter *that is brought as a plaintiff class action* under the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also In re Recoton Corp.*, 307 B.R. 751, 757-58 (S.D.N.Y. Bankr. 2004) ("PSLRA by its express terms does not purport to apply to proceedings in bankruptcy."). The RKS Claimants' claims are not plaintiff class actions, but rather individual proofs of claim that are governed by Bankruptcy Rule 9014, which does not incorporate the PSLRA. *See* Fed. R. Bankr. P. 9014(c). And even had the RKS Claimants filed a class proof of claim (which they did not), the PSLRA would not "purport to regulate" such a claim because "[i]t would complicate and potentially delay bankruptcy proceedings." *In re Tronox Inc.*, 2010 WL 1849394, at *2 (S.D.N.Y. Bankr. May 6, 2010). Thus, the PSLRA is not applicable to the RKS Claimants' bankruptcy claims, and, in any event, a discovery stay is particularly inappropriate here, where the claims remain unresolved more than three years after they were filed, and Reorganized Debtors have not made a meaningful settlement offer to nearly all RKS Claimants.[10]

At bottom, Reorganized Debtors' proposed litigation procedures would not streamline resolution of the RKS Claimants' claims, but rather continue to allow them to languish with no clear path towards reconciliation. It is time for Reorganized Debtors to be held to clear deadlines to ensure that no further extensions are necessary. There is only way forward, and that is to litigate these claims under the procedures that this Court has established to expeditiously resolve claims in bankruptcy. The Court should adopt the RKS Claimants' proposal set forth in **Exhibit A**, order Reorganized Debtors to object to their claims within 60 days, and set hearings to decide disputed issues, so that these claims can finally be resolved.

## **CONCLUSION**

For the foregoing reasons, the RKS Claimants respectfully request that the Court deny the

---

[10] For the same reasons, Reorganized Debtors are incorrect to suggest that the heightened pleading standards of the PSLRA apply to the RKS Claimants' proofs of claim. (*See* Mot. at 24-25). Notably, none of the cases cited by Reorganized Debtors in their Motion purporting to mandate heightened pleading standards involved contested matters in bankruptcy.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Sixth Extension Motion, as it pertains to the RKS Claimants' claims, and instead adopt the RKS

Claimants' scheduling proposal attached as **Exhibit A**.

 Dated: May 31, 2023                    ROLNICK KRAMER SADIGHI LLP

                                        By:    */s/ Richard A. Bodnar*

                                        *Attorneys for the RKS Claimants*

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020