# EXHIBIT 3

1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4   In Re:                          ) Case No. 19-30088
                                    ) Chapter 11
5   PG&E CORPORATION AND PACIFIC    )
    GAS AND ELECTRIC COMPANY,       ) San Francisco, California
6                                   ) Wednesday, November 30, 2022
            Reorganized Debtors.    ) 10:00 AM
7   _____   )
                                    MOTION TO EXTEND TIME
8                                   PURSUANT TO FED. R. BANKR.
                                    PROC. 7015 AND 7017 TO FILE
9                                   PROOF OF CLAIM AND PURSUANT
                                    TO FED. R. BANKR. PROC.
10                                  9006(B)(1) FILED BY YUONNE
                                    PHILLIPS (13088)
11
                                    FIRE VICTIM TRUSTEE'S
12                                  OBJECTION TO MOTION PURSUANT
                                    TO FED. R. BANKR. PROC. 7015
13                                  AND 7017 TO ENLARGE TIME TO
                                    FILE PROOF OF CLAIM PURSUANT
14                                  TO FED. R. BANKR. PROC.
                                    9006(B)(1) FILED BY CATHY
15                                  YANNI [13139] (RELATED TO
                                    MOTION 13088)
16
                                    MOTION PURSUANT TO FED. R.
17                                  BANKR. 9006(B)(1) TO DEEM
                                    JUSTINE LARSEN-BERNEDO'S
18                                  CLAIM TIMELY FILED. FILED BY
                                    JUSTINE LARSEN-BERNEDO
19                                  [13080]

20                                  FIRE VICTIM TRUSTEE'S
                                    OBJECTION TO MOTION PURSUANT
21                                  TO FED. R. BANKR. 9006(B)(1)
                                    TO DEEM JUSTINE LARSEN-
22                                  BERNEDO'S CLAIM TIMELY FILED
                                    FILED BY CATHY YANNI [13131]
23                                  (RELATED TO MOTION 13080)

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1          MOTION TO FILE CLAIM AFTER
           CLAIMS BAR DATE. FILED BY
2          TARYN SKOTT [13099]

3          FIRE VICTIM TRUSTEE'S
           OBJECTION TO LETTER REQUEST
4          OF TARYN SKOTT TO DEEM LATE
           PROOF OF CLAIM TIMELY FOR THE
5          PURPOSE OF ADMINISTRATION BY
           THE FIRE VICTIM TRUST. FILED
6          BY CATHY YANNI [13144]
           (RELATED TO MOTION 13099)

7

8          MOTION TO FILE CLAIM AFTER
           CLAIMS BAR DATE. FILED BY
           ALEXANDRA DOUGHERTY [13109]
9

10         FIRE VICTIM TRUSTEE'S
           OBJECTION TO LETTER REQUEST
           OF ALEXANDRA DOUGHERTY TO
11         DEEM LATE PROOF OF CLAIM
           TIMELY FOR THE PURPOSE OF
12         ADMINISTRATION BY THE FIRE
           VICTIM TRUST. FILED BY CATHY
13         YANNI [13147] (RELATED TO
           MOTION 13109)
14
           AMENDED CONSOLIDATED MOTION
15         TO ALLOW/DEEM TIMELY LATE
           FILING OF CLAIMANTS. FILED BY
16         LESA BUSHBY ET AL. [13137]

17         FIRE VICTIM TRUSTEE'S
           OBJECTION TO AMENDED
18         CONSOLIDATED MOTION TO
           ALLOW/DEEM TIMELY LATE FILING
19         OF CLAIMANTS. FILED BY CATHY
           YANNI [13157] (RELATED TO
20         MOTION 13137)

21         MOTION TO FILE CLAIM AFTER
           CLAIMS BAR DATE. FILED BY
22         MICHAEL FREELAND [13155]

23

24

25

```
1                               FIRE VICTIM TRUSTEE'S
                                OBJECTION TO LETTER REQUEST
2                               OF MICHAEL SCOTT FREELAND TO
                                DEEM LATE PROOF OF CLAIM
3                               TIMELY FOR THE PURPOSE OF
                                ADMINISTRATION BY THE FIRE
4                               VICTIM TRUST. FILED BY CATHY
                                YANNI [13246] (RELATED TO
5                               MOTION 13155)

6                               MOTION FOR ENTRY OF AN ORDER
                                FURTHER EXTENDING DEADLINE
7                               FOR THE REORGANIZED DEBTORS
                                TO OBJECT TO CLAIMS AND FOR
8                               RELATED RELIEF FILED BY PG&E
                                CORPORATION (13122)
9

10                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE DENNIS MONTALI
11                 UNITED STATES BANKRUPTCY JUDGE

12   APPEARANCES (All present by video or telephone):

13   For Reorganized Debtors:   RICHARD W. SLACK, ESQ.
                                Weil, Gotshal & Manges LLP
14                              767 Fifth Avenue
                                New York, NY 10153-0119
15                              (212)310-8000

16   For Fire Victim Trust:     SUSAN SIEGER-GRIMM, ESQ.
                                Brown Rudnick LLP
17                              Seven Times Square
                                New York, NY 10036
18                              (212)209-4800

19   For Fire Claimants Yuonne  CHRISTOPHER D. MOON, ESQ.
     Phillips and Rick Hallen   Moon Law APC
20   et al:                     228 Hamilton Avenue, 3rd Floor
                                Palo Alto, CA 94301
21                              (619)915-9432

22   For Fire Claimant Justine  EMILY S. LEVIN, ESQ.
     Larsen-Bernedo:            Levin Law Group PLC
23                              2615 Forest Avenue, Suite 120
                                Chico, CA 95928
24                              (530)353-1679

25
```

```
1   For Fire Claimants Joseph    JOSEPH FEIST, ESQ.
    Pickett et al. and Lesa      Northern California Law Group, PC
2   Bushby et al.:               2611 Esplanade
                                 Chico, CA 95973
3                                (530)433-0233

4   For State of Oregon:         SUSAN F. DICICCO, ESQ.
                                 Morgan, Lewis & Bockius LLP
5                                1400 Page Mill Road
                                 Palo Alto, CA 94304
6                                (650)843-4000

7   For Chevron Master Pension   PHILIP S. WARDEN, ESQ.
    Trust and Chevron UK         Pillsbury Winthrop Shaw Pittman
8   Pension Plan:                LLP
                                 Four Embarcadero Center
9                                22nd Floor
                                 San Francisco, CA 94111
10                               (415)983-1000

11  For Dimensional Claimants    JULIE M. MURPHY, ESQ.
    and Vanguard Claimants:      Stradley Ronon Stevens & Young,
12                               LLP
                                 2005 Market Street, Suite 2600
13                               Philadelphia, PA 19103
                                 (856)321-2409
14
    Also Present:                Alexandra Dougherty
15                               Individual Fire Claimant

16                               Taryn Skott
                                 Individual Fire Claimant
17

18  Court Recorder:              LORENA PARADA/ANKEY THOMAS
                                 United States Bankruptcy Court
19                               450 Golden Gate Avenue
                                 San Francisco, CA 94102
20

21  Transcriber:                 MELANIE BERRY
                                 eScribers, LLC
22                               7227 N. 16th Street
                                 Suite #207
23                               Phoenix, AZ 85020
                                 (973)406-2250
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1 SAN FRANCISCO, CALIFORNIA, WEDNESDAY, NOVEMBER 30, 2022, 10:00 AM

2 -oOo-

3     (Call to order of the Court.)

4         THE CLERK:  Court is now in session, the Honorable

5 Dennis Montali presiding.  Calling the matter of PG&E

6 Corporation and I'll start bringing in counsel, Your Honor.

7         THE COURT:  And we have our pro se parties appearing

8 today?

9         THE CLERK:  Yes.  Would you like me to bring them in

10 now?

11         THE COURT:  Did Mr. Freeland (phonetic) check in?

12         THE CLERK:  I do not see Mr. Freeland.  I do see Ms.

13 Dougherty and Ms. Skott.

14         THE COURT:  Okay, yes.  Ms. Skott and Ms. Dougherty.

15         THE CLERK:  Bring them in now, Your Honor?

16         THE COURT:  Yes, please.

17         THE CLERK:  One moment, Your Honor.  Things are

18 shifting.

19         THE COURT:  I think I want to get all the parties who

20 were scheduled to speak, and so I see Ms. Sieger-Grimm has her

21 hand up and I presume she's appearing for the trustee, so let's

22 bring her in also.  And then do you have Mr. Feist?

23         THE CLERK:  Yes, Your Honor.  It's just a little slow

24 right now.

25         THE COURT:  Okay, and Ms. Levin if she's going to be

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    here too.  Okay, I see -- just one second and we'll call for

2    the appearances from everyone.  Oh, I don't see Ms. Levin, and

3    Ms. Parada, who else are you bringing in?

4             THE CLERK:  Ms. Levin?

5             THE COURT:  Okay, she is coming in, huh?

6             THE CLERK:  Yes.

7             THE COURT:  I just didn't see her name on the list.

8             Okay, Ms. Sieger-Grimm, am I correct?  You're going to

9    make the appearance for the Trust later?

10            MS. SIEGER-GRIMM:  Yes, Your Honor, I am.

11            THE COURT:  Okay.  Let me -- as soon as we get Ms.

12   Levin in, then I'm going to ask both counsel and also the pro

13   se parties to state their names for the record.  I'll just wait

14   until we get everybody lined up.  We're a little slow getting

15   them -- getting roll call here.  Okay.

16            All right, Ms. Skott and Ms. Dougherty, I see you

17   are -- you don't have to have your cameras on, but you do need

18   to put your microphones on and Ms. Levin, same with you.  And

19   Ms. Sieger-Grimm, you already spoke for a moment.  Now let's

20   get the appearances.  Let's start with the three counsel

21   appearing for the parties.

22            MR. FEIST:  Good morning, Your Honor.  Joe Feist

23   appearing on behalf of the fire victims Picketts and Lesa

24   Bushby.

25            THE COURT:  Okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. MOON:  Good morning, Your Honor.  Chris Moon on

2  behalf of movants Hallen and Phillips, et al.

3    THE COURT:  Ms. Levin?

4    MS. LEVIN:  Good morning, Your Honor.  Emily Levin on

5  behalf of Justine Larsen-Bernedo.

6    THE COURT:  Okay, and Ms. Dougherty and then Ms.

7  Skott, just state your appearances, please.  And I'm assuming

8  you want to argue.  You indicated to my clerk you wanted to, so

9  I need to hear a name from you.

10    MS. DOUGHERTY:  Good morning.  My name is Alexandra

11  Dougherty.

12    MS. SKOTT:  Good morning, Your Honor.  My name is

13  Taryn Skott.

14    THE COURT:  All right.  Ms. Grimm, we can leave you on

15  the camera.  You're going to be off the camera for the

16  arguments presented by the parties.  It's really up to you and

17  you can just turn your camera off if you wish.  Some people

18  don't like to just be stuck there in space for a while.  Let me

19  review the schedule here.

20    For the three counsel, I ask that they meet and

21  confer, and see if there are going to be any splitting of the

22  time.  Otherwise, you each have five minutes and then after

23  that Ms. Dougherty and Ms. Skott, appearing on their own

24  behalf, will be allowed five minutes.  So that's a total of

25  twenty-five minutes and then Ms. Sieger-Grimm will have an

PG&E Corporation and Pacific Gas and Electric Company

1  opportunity to speak for the Trust on behalf of -- for twenty

2  minutes and that's the plan.  And then after that, well, I'll

3  let you know what happens after that.

4      So the three counsel, Mr. Moon, Mr. Feist, and Ms.

5  Levin, have you -- are you going to share the time or divide it

6  up on your own?  What's your plan?

7      MR. FEIST:  We can share the time, Your Honor.  I only

8  have a -- I only need a few minutes.

9      THE COURT:  Okay, well, I mean I -- why don't we do

10  that then?  Why don't we start?  I believe the -- one second.

11  Let me just check one record.  I think Mr. -- or Ms. Levin, you

12  probably have the first of the various motions on the docket

13  number, so I'll hear from you first, and then Mr. Moon and then

14  Mr. Feist.  So go ahead and begin.  I've read the papers and so

15  you need to be precise and make your best argument, please.

16      MS. LEVIN:  Thank you, Your Honor.  I don't have much

17  to add above and beyond the papers.  I've certainly reviewed

18  counsel's objections and understand that Ms. Larsen's proof of

19  claim was filed quite late, a couple of months ago.  The reason

20  that I find her situation so compelling -- she originally

21  contacted our office in connection with the Dixie Fire and I

22  had a conversation with her and advised that given her

23  circumstances that she would not have a very strong claim.  She

24  had mentioned to me that she had been an evacuee in the Camp

25  fire years ago and so we delved into that a bit more.  Our

PG&E Corporation and Pacific Gas and Electric Company

1   office represents about 900 claimants in connection with the

2   Camp fire and we've been contacting repeatedly in the past

3   several months with respect to what I consider to be last ditch

4   logs, money grabs, and this, in fact, was not the case with Ms.

5   Larsen.  She was a member of the medical community who

6   evacuated from two locations, actually evacuating further into

7   the Camp fire to assist her patients.  At that point, all of

8   the professionals had left with respect to providing

9   transportation.  She'd carried two into her car who were

10  infirmed and physically evacuated them.  Her claim is very

11  minimal.  It is a simple evacuation claim.  I do understand

12  that, you know, it stands to degrade the claims of our other

13  clients and needs to be considered in the aggregate with

14  respect to all of the victims of the Camp fire, but I can't

15  help but think that her case is extremely compelling given

16  these hearings that she had, coming back to her young children.

17  Her reasons for not initially filing being her gratitude just

18  to be home with her family, but given her service to the

19  Paradise community, I think it would be a shame if she could

20  not proceed with her claims.

21          THE COURT:  Okay, thank you, Ms. Levin.

22          MS. LEVIN:  Thank you.

23          THE COURT:  Mr. Moon?

24          MR. MOON:  Thank you, Your Honor.  Just a couple of

25  quick points.  I think Mr. Feist is going to cover a lot of the

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    same points that I was.  We coordinated before this proceeding.

2    Just initially, I want to make sure the Court's aware, because

3    there's a little bit of confusion in the briefing, that the

4    claimants, or the movants, rather, that I represent had no

5    notice whatsoever of the bar date or the extended bar date.

6    They were not aware of the claims process or whether they had

7    any viable claims.  So there was -- again, just to be crystal

8    clear in the briefing, you know, that -- that is the -- the

9    posture in which they find themselves.

10          The other point I wanted to make, Your Honor.  I think

11   it's worth really drilling down on, kind of, the effect that

12   permitting these additional claimants would have on the Trust,

13   because none of that was really addressed in the briefing, at

14   least in detail.  Like Mr. Feist and Ms. Levin, you know, we

15   only represent several -- half dozen or so movants here, so

16   we're not, certainly, representing the hundreds of additional

17   claimants that have come forward, but I think it's worth noting

18   that even if the Court were to permit 700 additional claimants

19   to file their claims at this juncture, you know, it's my

20   understanding that almost all of these claims deal with

21   emotional distress and I think if the Trust were to award the

22   full value of those emotional distress claims, as it relates to

23   700 additional individuals, the total value of that -- of those

24   claims would still be a fraction of one percent of the 13.5

25   billion dollars.  And the reason I think that's important to

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   note is the fact that much of the objection had to do with the

2   prejudice that current claimants would potentially suffer were

3   these additional claimants permitted to file.  But I think the

4   Trust could, with confidence, move forward in actually awarding

5   most of the money due to the current claimants that have

6   determination notices, hold back a really small percentage of

7   the money that exists.  At least in that instance the current

8   claimants are able to get paid most of what they're owed and

9   you're not depriving hundreds of claimants of any damages

10  whatsoever in this case.

11          THE COURT:  Well, I mean, what's -- what's a small

12  amount of a claim and a small amount of an impact?

13  Everything's relative.  I mean, are you talking 500 dollars or

14  50,000 dollars or what?  What's a small claim for any

15  individual claimant?

16          MR. MOON:  So to be clear, I know most of these

17  claimants are providing claims or making claims related to the

18  Tubbs fire.  I know with the Camp fire, for instance, the total

19  value of a typical emotional distress claim is about 125,000

20  dollars.  I know that's quite a bit more than what is being

21  provided in the Tubbs fire, but even if the Court were to

22  assume that 700 additional claimants got the full value of the

23  125,000 dollars for emotional distress, that total value, as a

24  percentage of the 13.5 billion dollars, is still a fraction of

25  one percent.  So obviously that's a lot of money, but

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    relatively speaking, what it would allow the Trust to do is to

2    go ahead and award most of the monies that are due to current

3    claimants with confidence that it'll still have sufficient

4    funds.  And then, you know, during the process that it's

5    deciding these additional claims.

6              THE COURT:  Okay, I understand.  Anything else?

7              MR. MOON:  No.  Thank you, Your Honor.

8              THE COURT:  Okay.  Mr. Feist?

9              MR. FEIST:  Thank you, Your Honor.  The Court has

10   broad equitable powers to balance the interests of the affected

11   parties when ruling on these motions.  Taking into account all

12   the relevant circumstances surrounding these admissions, the

13   purpose of the Chapter 11 is to rehabilitate the debtor and

14   prevent forfeiture of creditors.  With these objections, the

15   FVT is attempting to forfeit valid fire victim claims.

16             The Picketts in this matter, their home was destroyed

17   in the fire, along with everything they own.  They didn't have

18   insurance during the fire and Mr. Pickett was sleeping in his

19   truck for several months after the fire and then subsequently

20   in a trailer, which is why he missed the initial proof of claim

21   deadline.  They are not only creditors herein, but they're also

22   victims of a felony that the debtor subsequently pled guilty

23   to.

24             Per the FVT's November 15th claim report, there are

25   still over 8,000 claimants who have yet to receive a

PG&E Corporation and Pacific Gas and Electric Company

1   determination, so approving these motions is not going to delay

2   the process of finalizing all relevant claims that still need

3   to be adjudicated.  Even by their own public statements, the

4   FBT is anticipating months of processing still before they are

5   able to wrap up, not even accounting for all of the appeals,

6   the reconsiderations that are pending, as well as the

7   reconsideration and appeals that may come from these

8   determinations that have yet to be issued.  So there is still

9   plenty of work to be done prior to this being finalized.  Had

10  these motions on the calendar now been filed prior to October

11  1st, there would have been no objection from the FVT, and from

12  their pleadings, there does not appear to be a specific reason

13  as to why October 1st prior to was excusable neglect, but after

14  is not, other than the fact that there has been a lot of Tubbs

15  fire claims filed, mostly for emotional distress.

16         We do request that the Court look at the reasons for

17  each individual victim as to why there was a delayed filing.

18  For the Picketts, shortly after the initial proof of claim

19  deadline, he sought the advice of three different law offices

20  on trying to address his claim.  All three said he had no

21  options because he had missed the initial deadline and he

22  relied on that advice.  In finding me and the option to be able

23  to file, we filed it relatively quickly thereafter.  Joseph Ray

24  Pickett was a minor at the time of the proof of claim deadline

25  and Ms. Bushby lives in Bakersfield and was only in Paradise

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    for that week celebrating her birthday, so when she went home

2    she did not receive notice from the Court.  There was no local

3    media coverage on it.  There was no members of her community

4    discussing the events as the process unfolded.  These motions

5    are being brought in good faith.  The granting of these motions

6    doesn't prejudice the debtor as their obligations relating to

7    fire victims have been satisfied.  There is no impact on

8    judicial proceedings and there's no reason to think that the

9    FVT will be unable to finalize these claims prior to finalizing

10   any other claims that they have still pending.  So the movants

11   request that the Court deny the FVT's objection and grant the

12   motions herein, and if the Court is inclined to not grant these

13   motions today, we would request that the matter be continued to

14   the October 13th calendar to allow for further briefing and

15   declarations by the movants.

16        THE COURT:  Okay.  Thank you, Mr. Feist.  I appreciate

17   your comments.

18        Ms. Dougherty, I believe you were the first to request

19   time, so if you -- again, you don't need to put your camera on.

20   You're welcome to or not.  You can make a five minute

21   presentation.

22        MS. DOUGHERTY:  Okay.  Good morning, Your Honor.  I

23   apologize if I stumble a bit here.  I did not know that this

24   was an option to get, you know, to receive lost income and

25   money from the fire victims unit.  I had a two year old at the

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    time and the wind woke me up and ash was falling from the sky

2    and we, with my two year old, my husband and I decided to get

3    out of town as quickly as possible.  We kept moving down the

4    coast just staying at AirBnBs, whoever would take our family

5    and our dog.  I left without contact lenses, clothing,

6    anything.  This was our first year in Napa, so I am not -- was

7    not used to wildfires.  Unfortunately, I have become very used

8    to them and got good at it, but this was the first year and it

9    incurred a lot of costs.  I feel very fortunate, as opposed to

10   a lot of people, who lost many things.  We lost just, you know,

11   my husband's job basically, which he was able to get another

12   job.  But lost a lot of money.  We were able to borrow money

13   from family to pay the mortgage, to pay our, you know, car

14   payments.  My husband and I are both in hospitality, therefore,

15   lost about a month worth of wages as well, but the important

16   thing to me was that my family was safe.  Our home was safe,

17   just a lot of cleanup needed to occur.  But again, I did not

18   know that this was an option and once speaking to some friends

19   that told me about this, they said, you know, why not try and

20   see if you can recoup some of the losses that you incurred from

21   this event.

22            THE COURT:  Okay.  Thank you, Ms. Dougherty.  I

23   appreciate your comments.

24            MS. DOUGHERTY:  Thank you.

25            THE COURT:  Ms. Skott?

PG&E Corporation and Pacific Gas and Electric Company

1          MS. SKOTT:  Good morning, Your Honor.  I apologize.  I
2     would really like to appear on camera, but I'm having some
3     difficulty turning it on.  It just doesn't want to.
4          THE COURT:  That's all right.  Not a problem.
5          MS. SKOTT:  I wish to speak today, and I wish to speak
6     even more now that we're discussing emotional distress, but
7     it's more apparent to me that this is about time.  Why didn't I
8     file in time?  So this is difficult for me to discuss with
9     anyone, so if you could bear with me.  Just know that on the
10    night of the Tubbs fire, because I am a Tubbs fire victim, I
11    was twenty-six years old and --
12         THE COURT:  I'm sorry, say that again.  What did you
13    just say?  On the night of the fire you were what?
14         MS. SKOTT:  I was twenty-six years old.
15         THE COURT:  Okay.
16         MS. SKOTT:  And I received a phone call just after
17    midnight from my mother to tell me goodbye because she was
18    racing the fire down the mountain that they lived on and it was
19    in their backyard.  So my emotional distress -- first, it's a
20    diagnosed condition.  You never forget the sound of your mother
21    calling to tell you goodbye and she loves you while you're
22    listening to propane tanks exploding around her, trees falling,
23    she's terrified.  You don't forget that.  As for the rest of
24    the time, I know that the initial filing began midway 2019 with
25    a bar date in October 2019.  It appears that the question is

PG&E Corporation and Pacific Gas and Electric Company

1    why didn't I file then or anytime after?  I should note that on

2    April 3rd, 2019, I was permanently disabled in a rear-end

3    collision and I was not diagnosed with permanent injuries until

4    May of 2020 during the pandemic.

5         Now starting from the beginning when my parents were

6    taking care of their home, their homeowners' insurance, as well

7    as their attorney, stated that I was not covered.  My parents

8    had all of my belongings in their home.  As far as it looks, I

9    barely existed for five years.  So the reason that I didn't

10   file until now is because we were advised I could not and the

11   day we found out I could, I did.

12        My last thing is that it's noted multiple times here

13   that I did not file a proof of claim, which again, on the day

14   that I found out I could, I absolutely did, the day.  So that's

15   as quick as I could do it.  It's because I didn't live on the

16   property.  I had been between homes.  I was caring for a

17   friend, had to clear out a bedroom.  My parents had everything

18   that belonged to me my entire first twenty-six years.  So that

19   is why there was time between.  That is why my emotional

20   distress, I feel, is pretty -- pretty distressing.  It's

21   affected me since.  I've never been the same, but I do think

22   that I have full right to be a claimant.  I do.  Thank you.

23        THE COURT:  Okay.  Thank you, Ms. Skott.  I appreciate

24   your comments.

25        All right, that concludes the -- and once again Ms.

PG&E Corporation and Pacific Gas and Electric Company

1    Parada, we have not heard from Mr. Freeland, I take it?

2              THE CLERK:  No, Your Honor.  I do not see him on the

3    list.

4              THE COURT:  Okay.  For the five persons who made the

5    argument, you're welcome to stay on the camera, but I'm going

6    to hear from the Fire Victim Trustee's counsel now, and if you

7    want to go off the camera that's all right.  It's your choice.

8    I don't mind looking at you, but you don't have to.

9              Okay, Ms. Sieger-Grimm, you've got a twenty-minute

10   time slot to respond to all of these arguments.

11             MS. SIEGER-GRIMM:  Thank you, Your Honor.  I don't

12   think we'll need that much time.  For the record, this is Susan

13   Sieger-Grimm from Brown Rudnick for the Fire Victim Trustee.

14   Just as an initial point, I want to make sure it's clear that

15   the trustee has not taken, and does not take the position, that

16   any of the movants have acted in bad faith or that their claims

17   are insignificant in any way.  This isn't about the underlying

18   claims.  It's about the delay and whether there has been proof

19   that there's, you know, it's reasonable now almost three years

20   after the extended bar date, to allow these late claims in.

21             One point that it's important to note is that when the

22   aggregate compensation was determined, when the settlements

23   were made, when the RSA was signed, all the things that ended

24   up calculating the Fire Victim Trust's compensation to

25   distribute to claimants, that didn't include any late claims,

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   and the Fire Victim Trust has tried to be as liberal as

2   possible, would love to pay as many people as possible.

3   Unfortunately, the door has to shut at some point.  This case

4   cannot go on forever.  The Fire Victim Trust can't stay open

5   forever and everyone within the Trust has to wait until all the

6   claims are determined.

7           You know, contrary to what Mr. Feist was saying about

8   appeals, there have been a very, very, very few appeals.  It's

9   been a pretty quick process when people are going through and,

10  you know, if everybody could be paid a hundred percent on the

11  dollar and sent out the door, that would be ideal.  We just

12  don't know at this point what is going to be the end payment

13  and we're waiting to get everything determined.  And honestly,

14  people are getting antsy about all the people that are coming

15  in to the Trust, concerned about what they're going to get, how

16  long are we going to have to wait, how many people are going to

17  be let in?  We set the date, the September 30th deadline

18  reluctantly, unfortunately.  I mean, it just -- things started

19  to explode.  The numbers got higher and higher and we had to

20  give notice that, look, we're going to be much stricter going

21  forward because we have to shut the door, because there has to

22  be a deadline.  Essentially, that was the third deadline.

23  There was an October 21st deadline of 2019, then that was

24  extended for fire victims who hadn't filed by that time.  There

25  were extensive programs, as you know, to give notice.  There

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  was media, there was social media postings, there were things

2  that were designed to be beyond the normal paper announcements

3  or -- recognizing that people didn't have homes necessarily to

4  mail the notices to.  The debtors did everything they could.

5  They did more than they thought they needed to do to try to

6  reach these people.  A lot of people are now saying well, we

7  found out on social media.  They used social media to try to

8  reach people.  All the efforts were made, but you know, that

9  shouldn't be a question.  It's a matter of, you know, the door

10  has to be shut, unfortunately, at some point.  We want to be

11  able to -- at this point now, we are about ninety percent

12  complete with everything.  The Trust instituted the deadline so

13  that it can progress toward winding down, so we can get to a

14  point where everything can close up.

15          THE COURT:  Well, excuse me, let me interrupt.  What's

16  ninety percent?  You mean ninety percent of the determinations?

17          MS. SIEGER-GRIMM:  Yes.

18          THE COURT:  By the way, is the public able to see

19  determinations or outcomes, or is that only for people who have

20  login authority to look at the Trust information?

21          MS. SIEGER-GRIMM:  Well, everyone either -- every

22  claimant either has the ability to, as a pro se claimant,

23  access that information directly.  That's how you submit claims

24  and questionnaires.

25          THE COURT:  No, no, no.  My question was the public.

PG&E Corporation and Pacific Gas and Electric Company

1          MS. SIEGER-GRIMM:  Publicly, no.  The public cannot

2   look at other people's claims determinations.  And while, I

3   know Mr. Moon said well, you know, could the Trust set aside

4   money for late claimants.  We can't do that.  We're required to

5   do pro rata distributions to everyone.  We can't say well, late

6   claimants are going to get less than another claimant in the

7   same position.

8          THE COURT:  What is the -- what is the current

9   percentage of distribution to the determined claims?  Is it

10  forty-five or has it gone up?

11         MS. SIEGER-GRIMM:  It is forty-five percent because

12  the economic modeling and everything that's done, that is being

13  conservative for now, to make sure that we can pay everybody

14  the same amount.

15         THE COURT:  Well, I asked the question in part because

16  I asked the earlier question about whether any individual

17  determination is available to the public.  I include myself as

18  a member of the public in the sense that the claims docket is a

19  matter of public record, but what has been determined is not.

20  I, as the Court, I don't have any inside information to the

21  Trust information.  When the trustee files a periodic report

22  and says the distribution so far is X percent, that is public.

23  So I knew of that forty-five percent from reading the very

24  reports that were filed.  So you answered my question, but

25  what -- what -- what about -- well, I'll leave it that.  Go

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    ahead with the balance of your argument.

2         MS. SIEGER-GRIMM:  Okay.  Other point is as far as the

3    debtors not being prejudiced by this, it's irrelevant,

4    unfortunately, at this point.  The Trust has stepped into the

5    debtor's shoes with respect to all claims for fire victims.

6    That's in section 6.8 of the plan.  So the fact that the

7    debtors are not, you know, that doesn't get in the way for

8    them, it's not relevant because it's the Trust.  And honestly,

9    it's the beneficiaries of the Trust, the fire victims, and the

10   prejudice to them and it does extend the time that they need to

11   wait for -- for every additional claim and it does reduce the

12   overall amount which, as I mentioned before, didn't include

13   late claims.  We didn't come to that determination of what was

14   a reasonable amount to pay to the Trust including all these

15   late claims.

16        THE COURT:  Well, I mean, again, the trustee and her

17   staff weren't really involved in the negotiations of the

18   earlier phases and, of course, the Court determined and set the

19   first claims deadline and extended the second deadline and the

20   third deadline was sort of self-imposed by the trustee.  And

21   again, I'm not faulting you.  I'm just saying that's the

22   difference.  The whole process took place within the Court

23   proceeding for the original and the fire date.  The question

24   that I have to ask, sort of, as I think about my responsibility

25   here, but my rhetorical question to you is, you know, what do I

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    tell the person who filed on September 30th, you're in, but

2    October 1st, you're out?  And -- and how do I reconcile that,

3    because the difference between September 30th and October 1st

4    has nothing to do with when the total claims were going to be

5    estimated.

6           MS. SIEGER-GRIMM:  Well, I mean, unfortunately it's

7    not unlike the difference between a December 31st, 2019 and the

8    people who mailed their late, you know, their claims to Prime

9    Clerk.  They got there two days later.  That was the deadline

10   and it had to be set at some point.  In this case, it just got

11   to the point where the Trust determined, based on the timing

12   and the amount of available funds and the concern that we

13   wouldn't be able to pay everyone, that we had to be stricter.

14   We had to draw a line, unfortunately, at some point and, you

15   know, barring exceptional circumstances, we're looking at a

16   almost a three-year delay and for the most part the reasons for

17   the delay have been well, we didn't know our claim was

18   compensable.  That's not something that the debtors are

19   required to do.  They don't have to tell you whether your claim

20   can be paid and the notices for the bar date all state, if you

21   think you have any claim, even if it's not clear, even if you

22   don't know the amount, you should file a proof of claim.

23          THE COURT:  Has the Trust -- has the trustee publicly

24   or published for the benefit of the public and the claimants

25   the current estimate of what the ultimate distribution will be

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   in a percentage on the dollar?

2           MS. SIEGER-GRIMM:  No, because it's not something that

3   our economists -- the people that have been modeling this are

4   reasonably sure of.  You know, it in a large part depends on

5   how much the stock is worth.

6           THE COURT:  Well, okay, but then in effect, there's

7   been no -- there's been no public announcement of a projection

8   of a hundred percent recovery for the timely claims, right?

9           MS. SIEGER-GRIMM:  No.

10          THE COURT:  In other words, we know from the whole

11  history of the case -- again, I've been in it longer than you

12  have, but you've been in it a long time too.  We know that

13  there might have been an expectation based upon the stock value

14  of a hundre percent recovery, but at least at the moment

15  there's no reason to know that that is likely.

16          MS. SIEGER-GRIMM:  No, we don't know that that is

17  likely and we don't have any control over the stock, you know.

18  Also, the Trust is, you know, a little restricted about how it

19  can sell stock.

20          THE COURT:  No, no, I understand.  I understand that.

21  My point is if, and I don't want to act like I'm naïve here, if

22  something happened and the stock went up dramatically, this

23  would be a much more easy problem for everybody.

24          MS. SIEGER-GRIMM:  Unfortunately, also there are --

25  there are settlements with government entities that -- that --

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that are paid only if the stock goes up a certain amount, so

2    some of that upside does go to state settlements.

3              THE COURT:  Yeah, okay.  Okay, anything further?

4              MS. SIEGER-GRIMM:  No, Your Honor, other than just --

5    this is -- we don't have any dispute about the validity of

6    these people's claims.  You know, there were people who filed

7    timely claims though that had horrific circumstances as well.

8    It's just a matter of why they were filed three years late --

9    almost three years late, and whether that is a sufficient

10   reason to add to the -- the number of claims that have, you

11   know, a limited fund to distribute to and the timing that it's

12   going to take.  And it's not just the time that it takes, you

13   know, actually to get through a claim.  It's time that is

14   professional time that -- that is -- you know, everything that

15   the Trust has is paid from that lump sum, so attorneys' fees or

16   professional fees or anything that has to do with claims

17   determination comes from that money too, and to the extent we

18   add one claim or two claims, it all kind of piles up on

19   everything.  So we're looking to try to maximize things and the

20   only way to do that is to shut the door at some point and say,

21   you know, we can't do this unless there's an exceptional

22   circumstance.  And the Trust takes the position that we haven't

23   heard an exceptional reason for these several motions to let in

24   after we've tried to make the deadline clear.  We can't, you

25   know, it's not going to be a nonopposition anymore.

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay, I got it.

2          MS. SIEGER-GRIMM:  Thank you.

3          THE COURT:  Well, let me say this to the counsel and

4    the individual claimants, that I appreciate Ms. Sieger-Grimm's

5    statement that the trustee doesn't question the good faith of

6    the claimants or even the injuries that the claims have

7    claimed.  And I -- I echo that.  I have no independent reason

8    to believe, nor do I question it.  My job is to decide whether

9    the law gives the claimants an opportunity given what's been

10   said about the claim.  And so I take your arguments seriously.

11   I will review them again.  I have reviewed them already.  The

12   matter will be submitted.  I will issue a written decision on

13   the claims in due course.  Hopefully it won't take long, but

14   that's my job.  So I thank you for your presentation and your

15   argument and with that I will conclude the hearing and state

16   that this round of late claim objection motions are -- stand

17   submitted for decision.

18          Thank you all for your time.

19          MS. SIEGER-GRIMM:  Thank you, Your Honor.

20          MR. FEIST:  Thank you, Your Honor.

21          THE COURT:  And I'm going to put the -- that concludes

22   the 10 o'clock calendar.  I'm going to -- Ms. Parada, what's

23   your pleasure?  Should we log off or just turn off the cameras

24   until 11?

25          THE CLERK:  Everyone can log out and log back in at 11

PG&E Corporation and Pacific Gas and Electric Company

1 o'clock.  It'll stay up.

2 THE COURT:  Okay, well, the parties who -- the counsel

3 and the pro se claimants here, like anyone else, you're welcome

4 to attend the court at 11.  What I'm doing at 11 has nothing to

5 do with what I did at 10.  It's a PG&E matter, but it's a

6 completely unrelated subject, so I don't expect any of you to

7 be participating.  But like any other court, you're welcome to,

8 presuming you don't want to be on the camera.  I'm going to

9 turn off the camera and log in later.  Thank you all for your

10 time and your presentation.

11 (Recess from 10:29 a.m., until 11:00 a.m.)

12 THE CLERK:  Court is now in session, the Honorable

13 Dennis Montali presiding.  Calling the matter of PG&E

14 Corporation.  I'll start bringing in counsel now, Your Honor.

15 Your Honor, if I can ask counsel who would like to

16 join to raise a hand so I could bring them in?

17 THE COURT:  Okay.  Well, Mr. Warden we have in.  I see

18 Ms. Murphy, yeah, and Ms. DiCicco.  They both are on the papers

19 also.  I recognize their names.  I believe those are the

20 attorneys that -- okay, it looks like everyone's accounted for.

21 Oh, well, we lost Mr. Warden.  Mr. Warden has his hand

22 up.  He didn't have his camera on.  Mr. Warden, you don't need

23 to turn your camera on, but you can put your hand down and we

24 need to put your -- all right.  That works.  Let's get

25 appearances.  Start with Mr. Slack and then the other counsel.

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. SLACK:  Good morning, Your Honor.  Good afternoon

2  in New York, but good morning.  Richard Slack from Weil for the

3  reorganized debtors.

4    THE COURT:  All right.  Let's go -- Mr. Warden, you

5  appeared first, and then Ms. Murphy, then Ms. DiCicco.

6    Mr. Warden, are you going to state your appearance?

7  Your microphone isn't on.  Okay, well, he's dealing with a

8  technical period.

9    Ms. Murphy and then Ms. DiCicco, would you make your

10 appearance?

11    MS. MURPHY:  Good morning, Your Honor.  Julie Murphy

12 from Stradley, Ronon, Stevens, and Young, on behalf of the

13 Vanguard claimants and the Dimensional Fund Advisor claimants.

14    THE COURT:  Ms. DiCicco?

15    MS. DICICCO:  Good morning, Your Honor.  My name's

16 Susan DiCicco from Morgan, Lewis, and Bockius, and I'm here on

17 the behalf of the State of Oregon, and the underlying funds of

18 the State of Oregon, including Oregon Public Employees

19 Retirement Fund and the Common School Fund.

20    THE COURT:  Mr. Warden?  Got your mic on now?  Well,

21 while we're waiting for Mr. Warden to get his microphone, let

22 me clarify the confusion I might have created with the comment

23 I made in the order I issued yesterday about a possible

24 conflict.

25    Bit of background.  The federal judiciary -- not this

PG&E Corporation and Pacific Gas and Electric Company

1   member of it, but others, were criticized some months ago

2   and -- for being a little slack -- not slack, lax in their

3   conflict checking.  And legislation changed and it was enacted,

4   and there's been a vast overhaul in the federal judiciary's

5   conflict checking system.

6        We've had a conflict checking system in place in our

7   court for years and is nothing new to me.  But when I -- when

8   there is a filing that identifies a party, it shows up on a

9   kind of a hit list that judges get, and on November 11th of

10  this year, just a few weeks -- two weeks ago -- three, a

11  different counsel, Gerald Kennedy, filed a joinder in the

12  objection to the fifth extension motion on behalf of two

13  entities that were identified as Vanguard entities,

14  specifically Vanguard institutional short-term bond fund and

15  Vanguard ultra-short-term bond fund.  And that came to my

16  attention because I and my family have some small holdings of

17  various Vanguard financial instruments, as I'm sure thousands

18  of people do, and when I get these notices I generally don't

19  think much about it until there's going to be some involvement.

20       The fact that a creditor or a party makes an

21  appearance in the case doesn't -- isn't an action, but it's a

22  heads up.  Well, I didn't heads up enough to connect the filing

23  of that notice with today's calendar, because again, as I say,

24  particularly institutions that are well known -- Vanguard's

25  certainly a known commodity, is well known.  However, then in

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    preparing for today's hearing, and I saw Mr. Slack's submission

2    and he identified, not Vanguard by name, but what he called the

3    late objectors.  And then when I had occasion to look at the

4    document that was filed in November by counsel, and that, in a

5    long footnote, lists dozens and dozens of dozens of Vanguard

6    entities.  And I had to determine first whether, the obvious,

7    do I have one of them?  And secondly, do I need to disqualify

8    myself as a matter of law?  Well, the short answer is I don't

9    have to, even though I thought yesterday I might have to.

10         The reason is that I checked the filing and I am --

11   well, I should say I couldn't tell whether what counsel filed

12   was only an appearance by those two Vanguard entities, or in

13   fact by all Vanguard entities, and it's not important to me

14   today.  The point is, I then was able to determine, to examine

15   the authorities that govern my conduct, that even though I have

16   to put names on lists to catch potential conflicts, there is no

17   ethical consideration prohibiting me to act as a judge when the

18   nature of the investment is a bond or a bond fund.  I mean, any

19   more than if I have a bank account I am a creditor of a bank.

20   I do not -- I am not disqualified from hearing a matter that

21   involves that bank just because I am a customer and depositor,

22   and as a depositor, a creditor.

23         Well, if I owned a bond, I am a creditor of the issuer

24   of the bond and that doesn't disqualify me.  There are some

25   exceptions that I won't bore you with.  And so it gets even

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    more attenuated and less of a conflict for a mutual fund.  And

2    unless I control the mutual fund, I don't have a conflict.  And

3    if I control a mutual fund, I probably wouldn't be working as a

4    bankruptcy judge.  I'd probably be resting in my mansion

5    somewhere in the Bahamas with my cryptocurrency.  So I'm

6    satisfied as a matter of ethics that I do not need to

7    disqualify myself.

8         I was going to tell counsel for the Vanguard entities

9    that, as I tried to explain, the interests are so exactly

10   aligned with other parties that the same counsel in this case,

11   Ms. Murphy representing, that I could simply not hear anything

12   on, or have her present an argument about, Vanguard if Vanguard

13   is willing to be bound by the outcome that I make any decision.

14   But as I say, it's a nonissue.

15        And I'm sorry if I wasted everybody's time with a

16   little bit of an alarm, but I do not believe I'm obligated to

17   recuse myself because of the disclosures that I have made, I'm

18   only embarrassed that I didn't catch it a little earlier,

19   because I say, I don't take the time to check everything

20   immediately when there's an appearance of something, just

21   checking in as Vanguard's counsel did in this case.

22        Now, Mr. Warden, would you like to state your

23   appearance?  And you're still muted.  Your microphone is muted.

24   Now try it.  No?  That's not working either.  Well, maybe you

25   should log out and log back in again.  I mean, I presume you're

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  going to make an argument today. And I wouldn't want to have a

2  hearing where I couldn't let you talk. No, can't hear you

3  still. But if you log out, just leave and then come back in,

4  maybe that'll solve the problem.

5      (Pause.)

6      THE COURT: Well, Mr. Slack, while we're waiting for

7  Mr. Warden to come back in, I suppose you could solve the

8  problem by telling me everything's been resolved. Or do I

9  assume that Mr. Warden presence, and also Ms. Murphy and Ms.

10  DiCicco, is there has not been a resolution of their situation.

11      MR. SLACK: Your Honor, that's correct.

12      THE COURT: Okay.

13      MR. SLACK: We do have some resolutions to report, but

14  there's still some unresolved.

15      THE COURT: Okay. So let's wait and see if Mr. Warden

16  rejoins.

17      Okay. Mr. Warden, can you hear me now? No, you've

18  got a microphone problem. Because the Zoom is saying that

19  you've got the -- try unplugging your headset and see, that

20  shouldn't be muting the microphone, but it might, so just

21  unplug it and see --

22      MR. WARDEN: That any better?

23      THE COURT: Yeah. Yeah, see the headset was the

24  culprit. All right. Now state your appearance even though I

25  know who you are. Mr. Warden? Can you state your appearance?

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   Oh no, now he can't hear me.  Now turn your mic -- maybe the

2   microphone is muted.  On your laptop or your computer, do you

3   have an internal microphone that you turn up the volume on it?

4           MR. WARDEN:  Does that work, Your Honor?  I just did

5   so.

6           THE COURT:  Yeah.  Yeah, now it's working.  So can you

7   hear me?

8           MR. WARDEN:  Well, I apologize for all of that.

9           THE COURT:  That's all right.  We'll send you to IT

10  school.  We'll find a teenager to come in and help you get

11  acclimated to the 21st century.  But state your appearance.

12          MR. WARDEN:  Your Honor, it's Philip Warden from

13  Pillsbury, on behalf of the two Chevron pension funds --

14          THE COURT:  Okay.

15          MR. WARDEN:  -- Chevron Pension Trust and the Chevron

16  UK Pension Plan.

17          THE COURT:  Okay.  Under my --

18          MR. WARDEN:  I apologize for that, Your Honor.

19          THE COURT:  No, that's okay.  Forget it.  All right.

20  Under my order -- well, I don't know if you heard it, but I

21  explained that I do not have to recuse myself from the matter

22  that Ms. Murphy is handling for Vanguard.

23          But Mr. Slack, under my order I've invited you to make

24  an opening, a portion of your argument.  I assume you want to

25  reserve ten minutes for rebuttal?

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. SLACK:  Your Honor, that'd be fine.

2          THE COURT:  Okay.  Okay.  Go ahead and tell me what --

3  you're up for whatever.

4          MR. SLACK:  Thank you, Your Honor.  Richard Slack,

5  from Weil, for the reorganized debtors.  As Your Honor knows,

6  we're seeking an extension of the objection deadline for

7  claims.  We originally sought 270 days; we've now pared that

8  back to 180 days based on resolution of a number of objections.

9          And in that regard, I'm happy to report to the Court

10 that we've now resolved sixty-six of the seventy objections

11 that were filed, the vast majority of which were joinders.  Our

12 reply discussed sixty-five of the sixty-six resolutions.  And

13 after we filed our reply, we also resolved the objection of the

14 Lord Abbot (phonetic) claimants, that's one of Ms. Murphy's

15 clients.  And as part of that resolution, we've agreed to make

16 an offer pursuant to the securities claim's procedures to the

17 Lord Abbot claimants, consistent with what we set out in our

18 reply, in the first four months of 2023, and the Lord Abbot

19 claimants have agreed to withdraw their objection.  So just

20 reporting that to the Court as one additional resolution.

21         THE COURT:  Okay.  But you said --

22         MR. SLACK:  So basically --

23         THE COURT:  You said there's a total of four, but Mr.

24 Warden has two, and Ms. Murphy has two others, and Ms. DiCicco,

25 I guess, is one Oregon, and -- I don't care --

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Well those are claims, I think there are

2  four objections that were filed --

3      THE COURT:  Okay.

4      MR. SLACK:  -- Your Honor --

5      THE COURT:  Okay.

6      MR. SLACK:  -- so I think Ms. Murphy has two

7  objections actually filed, Mr. Warden has one, and Ms. DiCicco

8  has one.

9      THE COURT:  Okay.  That's fine.

10     MR. SLACK:  That's the four.  So Your Honor,

11 consistent with the resolution that we had with the Lord Abbot

12 claimants, and in response to one of your questions in the

13 docket, we're prepared to prioritize offers to the remaining

14 objectors, and also make those offers pursuant to the

15 securities claims procedures in the first four months of 2023,

16 consistent, again, with the schedule, and will likely have in

17 the reply.  And we think that provides a fair resolution to the

18 motion, it does prioritize the objectors' claims to come in, in

19 that in that first group, and so that -- we think that's a fair

20 resolution.  Your Honor --

21     THE COURT:  So let me turn that back.  That means

22 regardless of what you're doing in the class action, that these

23 four -- these three counsel for their four clients, can

24 anticipate at least a proposal, a settlement offer, in the next

25 four -- well, not the next four, but -- well yes, I guess,

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  December, January, February, or March.  Is that right?  One,

2  two --

3        MR. SLACK:  So Your Honor, I think the way we framed

4  it in the reply was that if we have a class settlement proposal

5  to come to the Court that we would present that, folks would

6  have the ability to look at the economics of that, make a

7  decision, and if they wanted to opt out, they'd opt out.  And

8  then we would, at that point, obviously have to deal with

9  whatever -- you know, whomever opted out.  But --

10        THE COURT:  No, but let's assume it's December 1st --

11  which it'll be tomorrow --

12        MR. SLACK:  Yeah.

13        THE COURT:  -- or maybe go to January 1st, if there's

14  no movement on the class action then the rolling 750 offers per

15  month will start to go out.

16        MR. SLACK:  I think they'll -- I think we're proposing

17  that they're going to start going out at the beginning of

18  January, Your Honor, and I think we --

19        THE COURT:  Okay.  Okay.

20        MR. SLACK:  -- can get this started out early in

21  January.

22        THE COURT:  All right.  So again, just clarify, if you

23  start that rollout, and then there is a filing in the class

24  action matter, does that stop the rollout?

25        MR. SLACK:  It would, Your Honor.  And --

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay.

2          MR. SLACK:  -- the reason for that's a practical one,

3    and that is that if you settled the claims as a class matter,

4    then you've essentially provided for the settlement of

5    everybody.  And if people opt out, that's -- then that would

6    reduce that settlement.  So you know, once you settle as a

7    class, you have to go through the opt-out process and have

8    people --

9          THE COURT:  No, I understand that.  I understand that.

10   But the point is then -- again, I'll just pick any of these

11   three counsel.  If Mr. Warden's client gets a proposal in

12   February and hasn't responded to it, and then you come out with

13   the class action thing, then that puts that consensual

14   resolution process on hold, I gather.  And then it's not -- it

15   doesn't reopen again until sometime in the future after that.

16         MR. SLACK:  Right, if ever.  I mean, I think the way

17   we look at this, Your Honor -- and look, there is no class

18   settlement right now, but if there were a class settlement then

19   we would expect that everybody would get complete notice.

20   Obviously, Your Honor, we've talked about, we've disclosed that

21   it's going to come back to Your Honor, as well as the District

22   Court.  Have full disclosure, people would be able to look at

23   the economics, and decided whether they wanted to be in that

24   settlement, and if not they'd have the ability to opt out.  And

25   once you saw who opted out, you'd then be able to deal with how

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   we were going to go forward with --

2          THE COURT:  Okay.  But let's refine it a different

3   way.  Let's say --

4          MR. SLACK:  Okay.

5          THE COURT:  -- on January 15th Mr. Warden's client

6   gets a settlement proposal from you.

7          MR. SLACK:  Yes.

8          THE COURT:  And he hasn't responded yet, one way or

9   the other.  And on February 1st you file a class action motion.

10  What happened to that offer that's on the table from January

11  15th?

12         MR. SLACK:  We would put -- we would put all the

13  offers that haven't been resolved in terms of settlement on

14  hold to see whether that person wanted to opt out.  If the

15  person --

16         THE COURT:  Okay.

17         MR. SLACK:  -- wanted to opt out -- and the reason for

18  that, Your Honor, again, is that you've made a settlement

19  assuming that the class, and so you can't have it where you're

20  essentially having people, after you settle with the class,

21  settle because it would reduce the class number.

22         THE COURT:  Again, I understand it, I just want to --

23         MR. SLACK:  Okay.

24         THE COURT:  -- understand how it plays out for the

25  people who are impacted and who complain.  So --

PG&E Corporation and Pacific Gas and Electric Company

1          MR. SLACK:  Yeah.

2          THE COURT:  -- in my hypothetical you've sent Mr.

3     Warden an offer on January 15th, he's got three weeks to

4     respond, and at the end of two weeks you file the class action.

5     So that means that the offer's off the table again until he

6     opts out, until the time to opt out has run, whether that's a

7     month or six months or two years, it's something.  And then if

8     he opts out permanently then presumably that settlement is --

9     well who knows, something.

10          He's on his phone.  I got it.

11          MR. SLACK:  Yeah.  I mean that --

12          THE COURT:  Go ahead with your argument.

13          MR. SLACK:  Your Honor, from a practical standpoint,

14     that is how we would anticipate that working.  So --

15          THE COURT:  But the reverse is true too though, if on

16     January 3rd he says I accept, then he's in the game.  He's --

17          MR. SLACK:  That's right.

18          THE COURT:  -- got his acceptance, and a class action

19     motion on February 1st doesn't impact him.

20          MR. SLACK:  That's right --

21          THE COURT:  In my opinion.

22          MR. SLACK:  -- you'd have to settle --

23          THE COURT:  He may say I shouldn't have accepted that

24     other offer, but that's a different proposition.

25          MR. SLACK:  That's exactly right, Your Honor. I mean,

PG&E Corporation and Pacific Gas and Electric Company

1   if we enter into settlements with folks before there's a class

2   settlement, they've clearly already resolved their claims --

3           THE COURT:  Okay.

4           MR. SLACK:  -- and that would have to be taken into

5   account as well.

6           THE COURT:  Got it.

7           MR. SLACK:  So Your Honor, I think that from, you

8   know, the past we've obviously made extension motions, there

9   haven't been objections.  And what's really triggered the

10  objections is during the past extension period, the reorganized

11  debtors have made a business decision to attempt to resolve the

12  securities matters as part of a global mediation, that did

13  result in two prongs of that being settled.  And Your Honor,

14  we've already talked about --

15          THE COURT:  You keep saying that, and that's fine, but

16  it's irrelevant to the issue.  I mean, the point is, you and I

17  were here at the outset during this class action the first time

18  around in the bankruptcy court, and the second one, and now

19  here we're visiting it again the third time, in a sense.  I'm

20  told maybe I should have granted the thing the first time

21  around, or the second time --

22          MR. SLACK:  Well, Your Honor, I think there's a big

23  difference, and that's not really an issue for today, because

24  there's a very big difference between having a settlement, and

25  a class for purposes of settlement, which happens in very --

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    it's very, very typical --

2         THE COURT:  Yes.

3         MR. SLACK:  -- even after you've opposed a class for

4    purposes of actually litigating the claim.  So nobody's

5    suggesting that there be a class in the bankruptcy for folks to

6    actually have their claims litigated if there needs to be that

7    kind of a resolution.  This would just be the ability of -- to

8    resolve these efficiently as a class with people having full

9    notice and the opportunity to opt out.

10        But you know, the most important thing on that, Your

11   Honor, and I think it's an important point, is issues about

12   whether or not, you know, relating to PERA as an appropriate

13   class and settlement class.  There's going to be an

14   opportunity.  It's premature right now to deal with that.  If

15   there's a settlement -- and again, there isn't a settlement

16   right now -- folks are going to have full notice.  And we've

17   again, committed to come back to Your Honor and the district

18   court.  And you know, that's -- those kind of arguments are

19   going to be appropriate at that time.  So they're all premature

20   right now.

21        Your Honor, what I'd like to do now, just because you

22   asked the question and I want to make sure I get to it, is you

23   did ask in your docket order for some information relating to

24   the existing claims.  So I'd like to go through that right now.

25   And I think --

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Okay.  Yes.

2      MR. SLACK:  There were originally, Your Honor,

3  approximately 7,500 securities claims that were timely filed in

4  the bankruptcy, and there were another 1,300 claims filed after

5  the bar date.  And of those claims, we've resolved

6  approximately 3,000, leaving again approximately 5,800 claims

7  to be resolved.  And the asserted dollar value of the remaining

8  claims -- and that's just what people say their claims are

9  worth in the proof of claim is seven point -- approximately 7.5

10  billion.

11      And not to put too fine a point on that, Your Honor,

12  because I know you know how this all works.  But you know

13  there's a number of those claims that would still be subject if

14  we start up the procedures to additional omnibus objection,

15  such as duplicate -- you know, duplicate issues and the like.

16  So there's still some omnibus cleanup that needs to be done,

17  and that was also paused while we were doing our global

18  settlement.

19      One other point about those 5,800 claims, Your Honor,

20  is about 2,000 of those still have some amount of data that is

21  missing.  And we've been collecting data literally at a -- on a

22  monthly basis.  There are still people who are giving us and

23  feeding us data, and that process will -- you know, will still

24  continue in this extension period.  And so in the context of

25  those claims, when you think about what we're proposing, Your

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Honor, is we're proposing to make offers to about 3,000 of

2    these remaining 5,800 claims in the first four months of 2023,

3    if there's no global class settlement.  Which will be the vast

4    majority of claims with complete information and not subject in

5    whole or in part to an omnibus objection.  And --

6          THE COURT:  Okay.  But you know what?  You've

7    confirmed my instincts.  My instincts were, and I believe this

8    may be some of these counsel -- or maybe the other objectors

9    raised the point, is your -- the first two years under the

10   claim, or a year and a half under the procedure, you were

11   picking off the low hanging fruit.  And so just under fifty

12   percent of the claims have been resolved, but only about

13   fifteen percent in dollar amount.  And so and obviously that's

14   okay, I'm not faulting you, I'm just saying the dynamics have

15   changed.  And based upon your report, a huge chunk of the

16   dollar amounts will be targeted with offers at least in the

17   next four months, under your proposal.  So I got --

18         MR. SLACK:  That's correct.

19         THE COURT:  -- it; I understand the point, I --

20         MR. SLACK:  I mean that's essentially correct, Your

21   Honor.  What I would say, though, is it's a little misleading,

22   because obviously there are both unliquidated claims and the

23   like.  So it doesn't always match up, but you're essentially

24   right, and the offer process that we're going to put in place

25   will capture, again, the vast majority of claims, including

PG&E Corporation and Pacific Gas and Electric Company

1    those that have now complete information and the like.  So --

2         THE COURT:  Yeah, but the creditors represented by

3    these three counsel --

4         MR. SLACK:  Yes.

5         THE COURT:  -- have waited, I'm assuming -- I don't

6    know this, but I'm assuming they have all provided all the

7    data.  And they've waited for a long period of time with

8    nothing happening.  And now what they were presented with was

9    we're just going to be left on hold again and we have to deal

10   with the class action offer.  And if that's the case, then

11   that's the case.  I'm not going to speculate on whether that's

12   a good tactic or not, it's not my place.  The point is that

13   you're now willing to say to these people, if you don't get

14   a -- if we don't start this class action thing promptly, we

15   will have something to propose to you.  You can reject it, but

16   you can also accept it and or you can counter it.

17        MR. SLACK:  That's exactly right, Your Honor.  And

18   we'll essentially put it in the securities claims procedures.

19   Those are pretty set out with deadlines and we'll adhere to

20   them.  And we'll work with the -- work with the counsel, as we

21   had with the other offers that we've made.  But you have it

22   exactly right.

23        THE COURT:  Okay.

24        MR. SLACK:  Your Honor, what I guess I would -- I want

25   to make two other points and I know you've asked some questions

PG&E Corporation and Pacific Gas and Electric Company

1   and I probably went a little past my ten minutes.  But I do

2   have two points I'd like to make.  The first is that some of

3   the objectors who complained that we haven't given full

4   information about the mediation, and in our reply we set out I

5   think where we've actually made the disclosures about the

6   mediation, who the mediator is, who it was with.  And that's in

7   our reply.

8            And the other point I'd make is is that other than

9   that, I don't think we're in a position to be able to disclose

10  anything more about the substance of those negotiations under

11  the very strict mediation privilege in California.  So I think

12  we have, though, made – and folks that look at the 10-Q and

13  also the motion we made on the global settlement, will see that

14  we have, in fact, disclosed as much as we can disclose.

15           And so with that, Your Honor, unless you have any

16  further questions, I'll reserve the rest of the time for

17  rebuttal.

18           THE COURT:  No, that's fine.  And I'm going to give

19  ten any minute.  I'm not using it at the time.

20           Have the three of you decided how to divide up the

21  time?

22           MS. DICICCO:  We have, Your Honor.

23           THE COURT:  Okay.  Go ahead and who's going to go

24  first?  And how is this going to be done?

25           MS. DICICCO:  Thanks, Your Honor.  I'm going to go

operations@escribers.net | www.escribers.net

                PG&E Corporation and Pacific Gas and Electric Company

1    first.  We've talked about it.  We've conferred as – we would

2    have conferred otherwise, but we conferred and we're largely in

3    agreement.  So I'm going to take the lead for the moment and

4    then, Mr. Warden and Ms. Murphy can join at the end.  But I

5    think I'll probably use most of the time.

6                THE COURT:  Okay.  Thank you.

7                MS. DICICCO:  All right.  So first, there's a variety

8    of things that we need to respond to but – in part, we

9    appreciate that you're focused, Your Honor, on the timing of

10   when our clients get offers.  And so there are a few things I

11   want to address in response to what Mr. Slack said.

12               So first, one of the things on my list was to make

13   sure that we understood what exactly they were offering because

14   their reply brief is inconsistent.  And both says that they

15   will only start this process of making offers to parties if

16   there's no class action settlement.  But then, they also on

17   another page, say that they will embark on this process without

18   making contingent.  But I understand from Mr. Slack that he's

19   now saying that they will start – they will only be making the

20   offers to parties, to claimants, if there is no class action

21   settlement.

22               But if that process is still going, so I think where

23   we are right now is if the mediation continues beyond

24   January -- I understand -- I want to clarify this.  I

25   understand the debtors to be saying that even if the mediation

PG&E Corporation and Pacific Gas and Electric Company

1  continues beyond January, they will begin the process of making

2  those offers.  But --

3       THE COURT:  Well, that's what I understood.  Yes,

4  there has to be a formal initiation of what we'll call the

5  class action motion.  And if it started on January 2nd, they

6  should have started a proposal on January 1st, at least.  I

7  don't think it's really going to happen that way.  But the

8  commitment that I heard is in the first month, 750 offers are

9  going to be out there.

10       Now, whether it's to you, your client, or not, I

11  certainly can't micromanage that.

12       MS. DICICCO:  Understood.  And I guess – and I'll come

13  back to that piece because that's a different part of this in

14  terms of the timing of it.  So let me just start straight up

15  with that clarification is important, but we also heard a new

16  clarification here, a twist on the argument, which is that the

17  parties who will be getting offers are only those claimants who

18  A, provided all of the data to the debtors, and B, are not

19  subject to omnibus objections.

20       Now, debtors have referenced many times and reserved

21  in their papers many times, that there may well be lots of

22  omnibus objections they have yet to make.  We do not know

23  whether those (audio interference) will be made -- but if they

24  are, that would put that process on hold.  So the commitment

25  needs to be regardless of whether or not there are omnibus

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   objections that might also apply to our clients' claims, we

2   would want to make sure that we were getting -- we'll come to

3   the date in a second -- but we're getting an offer within

4   whatever date we talk about in a moment, without regard to

5   whether or not there's an omnibus objection that might be made.

6       THE COURT:  Well, I mean, why can't I just ask Mr.

7   Slack right now if, for your -- the three of you and your four

8   clients, if you will, if you're not going to be a target of an

9   omnibus objection.

10      Can you tell us that, Mr. Slack?  Aren't these four,

11  represented by these three able counsel, haven't they provided

12  all the data?

13      MR. SLACK:  I'd have to -- I would quite honestly,

14  Your Honor, have to go and get that information and report

15  back.  I don't have that information right now.

16      THE COURT:  Well, I mean, Ms. DiCicco probably knows

17  whether she's provided everything that she thinks that she's

18  supposed to provide.  And I don't know Ms. Murphy.  I know Mr.

19  Warden.  He's very diligent and very complete.  And I doubt

20  that Chevron has not provided all of the information that's

21  relevant to asserting its claim.

22      Okay.  Well, go ahead, Ms. DiCicco.  I guess -- look,

23  if Mr. Slack's going to file the class action motion on

24  December 31st, we're all wasting our time.  So I'm assuming

25  that he's going to be acting in good faith and not

PG&E Corporation and Pacific Gas and Electric Company

1    gamesmanship.

2            And secondly, I would hope that he would be

3    embarrassed if he serves any of you three with kind of a boiler

4    plate, you know, I didn't -- you filed duplicates, therefore I

5    won't make you a settlement offer.  I mean, come on.

6    Responsible counsel know how to avoid duplicates or the other

7    kinds of things that trailer these omnibus claims that makes

8    sense.

9            MS. DICICCO:  So let me just -- let me just address

10   the data point very quickly and the omnibus piece, one last

11   piece.  Because I think the central issue for us is the date

12   and the deadlines.  And we're -- not that our objections are

13   resolved by an open-ended promise to have an offer provided to

14   us within - by April 30th, which is five months from now.  So

15   but let me just address those two points first because I think

16   they're important.

17           First, to the extent, the debtors believe that there

18   was any additional data they need from our clients, from those

19   on the phone, we think that the debtors should be required to

20   give a deadline.  And by year end, at the latest, or sometime

21   this month, let us know.  And just by way of example, Your

22   Honor, my client provided all of the data that was required by

23   May of 2021.  We did not hear from the debtors or their agent

24   analyzing the data since then until the date that this motion

25   to extend the bar date, the objection deadline, was filed a few

PG&E Corporation and Pacific Gas and Electric Company

1 weeks ago.

2          So in eighteen months, there's been no follow up.  We

3 got some follow up and that they said they needed some

4 additional -- not a lot, some minor details that they wanted.

5 We already provided to them and as far as we're concerned,

6 we're done providing data.  If they have a different view --

7          THE COURT:  Okay, so what you --

8          MS. DICICCO:  -- I would like to know.

9          THE COURT:  But you want me to do is to say that at

10 the minimum, I ought to give Mr. Slack a much shorter deadline

11 to get any of the nonsubstantive objections out of the way.

12          MS. DICICCO:  Well, right.  That's not an objection,

13 per se.  That's a data question that he's using as a gating

14 issue to whether or not we can get an offer.  So we're

15 saying --

16          THE COURT:  Well, stated differently, if you have

17 a -- and again, let's stick with Oregon.  Oregon has a claim,

18 or claims, on file and for eighteen months, there's been dead

19 silence.  And it seems like it would be kind of a gotcha for

20 Mr. Slack to do anything other than offer to settle on the

21 merits.  Or obviously, object on the merits.  Remember he can

22 object on the merits if he wants, too.  And that's what I

23 assume will happen if an offer is rejected or not countered.

24          I mean, that's leaving aside Federal Rule 23 in the

25 district court and whatever might happen in this court, the

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  whole procedure that was created and made for this, said I'll

2  give you a chance to try to mediate and settle.  And if not, we

3  have claims objections.

4          MS. DICICCO:  Right.  And that – that was --

5          THE COURT:  Okay.

6          MS. DICICCO:  -- all predicated, Your Honor.  I'm

7  sorry.  I didn't mean to interrupt you.

8          THE COURT:  No.  That's fine.

9          MS. DICICCO:  That was all predicated on debtors'

10  representations at that time, that hearing two years ago this

11  month.

12          THE COURT:  Yes.

13          MS. DICICCO:  That this -- that they would be able to

14  quote literally make offers within two months to us so --

15          THE COURT:  Well, that's --

16          MS. DICICCO:  -- that's --

17          THE COURT:  -- that's

18          MS. DICICCO:  -- long since passed.

19          THE COURT:  That's why I was surprised to have this

20  happen.  I thought things were under control and I thought -- I

21  was quite surprised when this opposition surfaced.  Okay, so

22  what are you suggesting?  Are you suggesting that I tell Mr.

23  Slack he's got to -- for your client to have everything out of

24  the way by an earlier deadline?  And then, that'll mean you'll

25  have a window of time where you're either going to get notice

PG&E Corporation and Pacific Gas and Electric Company

1    of a new class action settlement motion or a settlement offer.

2            MS. DICICCO:  Well, yes, as to the data issues.  And

3    yes, we would like a date as to when we will get an offer and

4    when we will get an objection, any objections they want to make

5    to the claim, not necessarily omnibus only but any objections

6    to our client's claims.

7            But Your Honor, I think this issue of everything will

8    go on hold if there's a settlement proposed is unworkable.  And

9    I would just like – indulge me for a moment, just to go through

10   the timing of that for a second.

11           So if they've made a proposal and they've agreed upon

12   a settlement, and they make a motion to the district court for

13   preliminary approval of that settlement, that notice and

14   approval period -- process rather, in the district court takes

15   several months.  At a minimum, I'm dealing with this in another

16   case right now.  At a minimum, it takes five or six months.

17   Just because you have --

18           THE COURT:  And that's what I assume.

19           MS. DICICCO:  -- to give people adequate time to

20   respond.

21           THE COURT:  And that's what I assume when I asked Mr.

22   Slack if, to use my hypothetical, if you get an offer on

23   January 15th, and you haven't had time to respond and then,

24   they file the class action, the whole offer is on hold for a

25   long period of time.

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MS. DICICCO:  Correct.  It's an illusory offer, right.

2    It's not really an actionable offer.  Because a settlement

3    offer is supposed to be open until -- under the procedures, we

4    have I think thirty-five days to respond.  But we won't, right?

5    Because we'd have to be acting quickly if we want to lock it

6    in.

7         Now, I suspect we won't to do anything that quickly

8    because we're not expecting to be getting any generous offers

9    that are going to prompt us to settle out quickly.  But that is

10   an issue for another day because why should the whole offer

11   process be halted pending the resolution of class action

12   process?  Because the fact is the debtors are -- I mean, for

13   example, Your Honor, we have debt claims.  Under the confirmed

14   plan, we're supposed to be paid on that reinstated debt for the

15   full amount in full, right?  Not some paltry X cents on the

16   dollar in the securities class action statement, but in full

17   for those debt claims.  Those debt claims --

18        THE COURT:  Am I --

19        MS. DICICCO:  -- and --

20        THE COURT:  I'm aware of that.

21        MS. DICICCO:  As you well know.  And so those claims,

22   we should be getting offers.  There's no reason in our view why

23   we can't get an offer sooner and why those offers should still

24   not be outstanding, if they are made and actionable because

25   otherwise, there's really not a process that's happening.  And

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  we will basically be hijacked by the class action process.  And

2  frankly, there's likely to be objections to the class action

3  process in that, whether in this court or in the other court.

4  And that will only make that process potentially longer than

5  the six months.

6      So really, we're sitting here now in November, last

7  day of November.  And we might be here a year later, no closer

8  to knowing what their objections are to our claims, how they

9  value our claims, and really if there is a class action

10 settlement, it's value to us and to our clients in

11 understanding how the debtor evaluates our claims and how they

12 value the claims.  Because how we can make an informed

13 judgment, right, when our clients are fiduciaries who need to

14 be evaluating what's put on the table in a class action

15 settlement if it comes to pass?

16      So how do they evaluate that if they don't even know

17 after all these years if the debtors have substantive

18 objections to the claims?  We have to -- we're flying blind and

19 we are at least entitled, we think, to know what their

20 objections are.  So that's why our view is -- so let me just

21 come to ask, Your Honor.

22      Our issue is not only should there be a deadline for

23 year-end so we that we can wrap up any outstanding data issues

24 so we can proceed expeditiously thereafter, but we think the

25 debtors should commit to making a settlement offer pursuant to

PG&E Corporation and Pacific Gas and Electric Company

1    the procedures, to our clients by February 15th.  And we also

2    think that they should inform us, or file rather, their

3    objections, if they have any, to our claims by that time

4    period.  Because we need to understand where we stand.

5           THE COURT:  Well, and let me interrupt.

6           And Mr. Slack, remind me, under the settlement

7    procedures, that I approved for the class, was Ms. DiCicco

8    right that there's a thirty-five day time to respond to any

9    settlement offer?

10          MR. SLACK:  Yeah, so the way the procedures work, Your

11   Honor, is there's some different date triggers for some

12   different types of procedures because there's, obviously, the

13   offer process and the mediation process.  So the offer process

14   has thirty-five days to respond, twenty-one days if there's a

15   counter offer for the debtors to respond, and of course, that

16   process can continue as long as the parties are doing --

17          THE COURT:  Okay.  Okay.

18          MR. SLACK:  And then, there's a separate thing for the

19   mediation because the claims can be mediated.  And --

20          THE COURT:  Right.  But -- that's the entire

21   consensual resolution.  There's nothing in the settlement

22   procedures that fixes the deadline for filing objections,

23   though, right?

24          MR. SLACK:  That is -- when you say fixes, there are

25   in fact -- there are in fact a deadlines get triggered by the

PG&E Corporation and Pacific Gas and Electric Company

1   conclusion of the two processes, the offer process and the

2   mediation process, then for the debtors to file objection.  So

3   the procedures actually deal specifically with deadlines once

4   the procedures have been put in place and started.  There are

5   actually objection deadlines that get triggered --

6           THE COURT:  Okay.  What's the -- what is that deadline

7   when the mediation has ended unsuccessfully?

8           MR. SLACK:  I think it's sixty days, Your Honor.

9           THE COURT:  Okay.  See, now we're --

10          MR. SLACK:  But the procedures specifically say that

11  sixty days after the termination of the procedure.  So sixty

12  days after the termination of the mediation procedures, for

13  example, would trigger the debtors' obligation to object.

14          THE COURT:  Okay.

15          MS. DICICCO:  Your Honor, if I may.  The one -- the

16  piece that's missing in the time frame that Mr. Slack just

17  outlined is there's this process that we just talked about.  So

18  it's about a sixty-day process for initial offers and

19  counteroffers.  But then, after that, there's no deadline by

20  which they need to commence the mediation or end the mediation.

21  And that process itself, that middle piece, before we get to

22  the objections that he just talked about being sixty days after

23  the conclusion of the mediation, that period may -- that sixty-

24  day clock may never start to run because the mediation can sort

25  of stay outstanding as long as they conclude it's outstanding.

PG&E Corporation and Pacific Gas and Electric Company

1          All right.  So there's -- and we don't even know when

2     it will start because there's no deadline by which it has to

3     start.  So it's a very big open period.  So we're talking about

4     sixty days at the front end just to evaluate -- if they make a

5     counter offer, that keeps recycling, right?

6          So that period can just keep running indefinitely.  If

7     it ends -- if it ends because they decide when it ends.  If it

8     ends, there might be a mediation, but there's no time frame on

9     that mediation.  And then, the --

10         THE COURT:  But Ms. --

11         MS. DICICCO:  -- mediation --

12         THE COURT:  -- DiCicco --

13         MS. DICICCO:  -- then, we go to sixty days.

14         THE COURT:  But that's perhaps a flaw in the system

15    that we put in place two years ago.  And I can't say that

16    you're wrong.  But that's not what's on the table today.  I

17    mean, what you're doing -- it's a legitimate complaint, I

18    guess, because maybe you and I never thought it would take so

19    long to get to where we are now.  But way back, two years ago,

20    seems like only yesterday.  Maybe somebody should have said

21    well, the mediation has to start within X days after the

22    counter offer deadline.  But I -- I mean, if I -- that's

23    probably a reasonable suggestion but I don't know that I can

24    make that change today.

25         MS. DICICCO:  Well, Your Honor, I think the way we

PG&E Corporation and Pacific Gas and Electric Company

1   view it is flaw or not in the process, I think we all

2   expected -- and that's why on this motion, we were very

3   surprised to realize how little progress had been made, and it

4   sounds like you were as well -- that in this process, the only

5   outside date there is that forces them to move these claims

6   forward, because there's so much discretion built into the

7   procedures, is the objection deadline, which is the motion we

8   are here about.

9           THE COURT:  Yes.  But that --

10          MS. DICICCO:  And for the extension might be put out

11  to 180.

12          THE COURT:  But am I correct?  If I deny -- if I

13  wanted 270 days, which is the original motion.  Now, Mr. Slack

14  has modified it to 180.  If I stick with that, that will still

15  be superseded if the mediation -- I mean, if the counter

16  offer -- offer/counteroffer mediation starts another sixty days

17  deadline to object.  Right?

18          MS. DICICCO:  Right.  We are --

19          THE COURT:  Okay.  And --

20          MS. DICICCO:  In other words, yes.  I think I

21  understand what you're saying but I think what we were

22  proposing is that the best protection for our clients, given

23  the substantial delays to date, is that there not be an

24  extension of the objection deadline for the full 180 days, or

25  if there is as to certain claimants, as to our claimants, that

PG&E Corporation and Pacific Gas and Electric Company

1    deadline should be in mid-February because --

2              THE COURT:  Well, because --

3              MS. DICICCO:  -- that should be (indiscernible).

4              THE COURT:  -- you're a wheel.  I mean, you're a

5    squeaky wheel and you're saying, look, I've had it with you.

6    I've objected.  I'm still objecting so fish or cut bait and

7    what does that do for the next squeaky wheel?  I mean does

8    this -- do we have a separate rule just for four claimants

9    here?  I mean, you're going to say yes, of course, but --

10             MS. DICICCO:  Of course, I am, yes.  No, I think what

11   you have to remember also is the reason why our claimants are

12   here is, if we're squeaky or not, is because we have

13   substantial claims, very large institutional claims on behalf

14   of pension funds.  And the delay, occasioned by all of what's

15   happened to date, and I'm -- we say for another day whether the

16   debtors should have unilaterally decided to suspend these

17   procedures and go to a class action settlement.  That's an

18   issue for another day but we are where we are.

19             And we are in a place where our clients, other

20   creditors on this confirmed plan have been getting paid.  Our

21   clients have not been getting paid.  And we're being

22   disadvantaged because our clients are taking both credit risks

23   and market risks on this debtor while others are not after a

24   plan was confirmed in 2020.  And we're about to start 2023.

25             So we think in fairness, given the size of our claims

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  and the amount of time that's passed, and the fact that we are

2  not some party that hasn't provided the data that needs to be

3  provided, there's really no reason -- and no prejudice to

4  debtors as to why they can't provide us with both a settlement

5  offer and any objections that they have so we can both move

6  this forward to a quick resolution and if there is a settlement

7  of the class action, evaluate it appropriately.  Because we

8  just don't -- it's untenable for an entire process in this

9  court, on these procedures, which is the procedures we have in

10  place, to just be suspended seemingly indefinitely if they come

11  up with a class action settlement.  That does not seem either

12  fair or appropriate.

13          THE COURT:  I understand.  And okay.  Well, let me let

14  Mr. Warden and Ms. Murphy be heard if they wish to add anymore

15  and then, we'll figure out where we go from here.

16          So Mr. Warden?  It looks like you muted your mic

17  again.

18          MR. WARDEN:  I just unmuted it, Your Honor.

19          THE COURT:  Okay.

20          MR. WARDEN:  Let me say that I concur with counsel for

21  Oregon's statements.  I would note that I think the fact that

22  we represent pension funds is highly relevant.  This is a

23  hundred-cent case.  The debtor has and the debtor's counsel

24  have, I think, unlimited resources and they've had -- we're

25  entering the fifth year of this case, filed in January of 2019.

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Well, by my count, that's the fourth year.

2    We're coming up to the third year anniversary on January 29th.

3    I've been on every hearing in the case.

4    MR. WARDEN:  Well --

5    THE COURT:  You want me to tell you how many there

6    have been?

7    MR. WARDEN:  No, sir.  I can count.  Your Honor, I

8    think it's just time to get on with that as Your Honor pointed

9    out.  At some point, all of these 180-day extensions, it's

10   illusory because there's no absolute.  There's no do or die

11   date.  I think we're at a point where we need to say, okay,

12   it's time.  It's time to simply get on with it and resolve

13   these claims.  I have various other claims in the case for

14   Chevron.

15   THE COURT:  Mr. Warden.  Mr. Warden, even if I were to

16   deny an extension, if they filed a class action -- I mean, they

17   have the right to file the class action and settle and try to

18   get settlements.  And I don't know.  I mean, Mr. Slack says it

19   might be in my court.  I suspect it's going to be in the

20   district court for the most part.  But I don't know what that

21   means for the claims bar date, whether it's extended or not.  I

22   mean, if I deny today's motion completely, the bar date is the

23   end of the year.  That's a month from now, right?

24   MR. WARDEN:  Yes.

25   THE COURT:  But Mr. Slack, what happens if I just

PG&E Corporation and Pacific Gas and Electric Company

1    don't extend the time at all and you file your class action?

2          MR. SLACK: So I think, Your Honor, if you -- I mean,

3    what would practically happen as I think it, in any case, is if

4    you denied any extension whatsoever, you'd get 5,800

5    prophylactic objections that would have to be filed in the next

6    month. And we wouldn't give anybody the opportunity on either

7    side, the debtor or claimants, to be able to settle those and

8    go through a settlement process. So I don't think that's -- I

9    don't think that's really efficient, nor do I think the Court

10   would probably enjoy having a bunch of prophylactic objections

11   and starting contested matters over the next -- you know, 5,800

12   contested matters over --

13         THE COURT: Well, only 5,800. I can handle 5,800

14   objections during December.

15         MR. SLACK: I see, okay. So Your Honor, I don't

16   know -- I don't know if Mr. Warden's done, or whether you want

17   to hear from me. I guess, I'm sorry, Ms. Murphy.

18         THE COURT: Well, no. Ms. Murphy has a right to be

19   heard too, but gentlemen -- Mr. Warden, do you want to add

20   anything further?

21         MR. WARDEN: Your Honor, I think I'll defer and cede

22   any further time to Ms. Murphy.

23         THE COURT: Ms. Murphy?

24         MS. MURPHY: Thank you so much, Your Honor. I'm in

25   accord with everything Ms. DiCicco said. Our clients,

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    likewise, submitted their data timely.  We have not received

2    any requests for additional data, nor an offer.  So we're very

3    similarly situated to the other claimants here today.

4        The only other thing I wanted to raise to the Court,

5    because it came up briefly but we didn't touch on it was

6    transparency from the debtor.  And one thing that we wanted to

7    request of the Court would be to require the debtor to

8    periodically report to the Court and the creditor body, on the

9    status of its negotiations with class counsel.  Not the content

10   of the negotiations, or the mediation, but yes we have a

11   settlement, no we haven't, yes we're still working towards it,

12   no we aren't.  As well as to report to the Court and the

13   creditor body, as the debtor did in the earlier stages of this

14   process, on the securities ADR process.  How many offers have

15   been made, how many have been accepted, and where we stand on

16   that process, if we're going to go into 2023 with the debtor

17   commencing, or recommencing, the ADR process.

18       We think it would help with accountability on the one

19   hand and also transparency to the remaining creditor body on

20   the other.

21       THE COURT:  I have to -- I have to assume that, Ms.

22   Murphy, if you got an offer from Mr. Slack and Mr. Slack says

23   we're offering Dimensional and Vanguard X dollars.  You've got

24   thirty-five days, take it or leave it.  And you said to him

25   well, where are you on the class action?  Are you going to be

PG&E Corporation and Pacific Gas and Electric Company

1   filing a class action?  I presume he could tell you something.

2   And so I mean, in other words, if you're evaluating a counter,

3   or whether you should make a counter or accept an offer, you

4   certainly have a right to know if there's a class action thing

5   that's going to be filed next week that may kill off your

6   ability to respond to that contential offer, but for me to make

7   the debtors file kind of a quarterly report on where we are in

8   the mediations, seems a little bit confusing and not very

9   helpful.

10          I mean, maybe you don't agree with me and that's okay.

11  You can disagree with me.

12          But it seems to me that the opposition by you and the

13  other counsel who objected has prompted a couple of things.

14  First, it's assured at least you're going to get an offer soon.

15  And I don't know -- again, I don't fully understand why an

16  offer on the table should be totally off if they file a

17  corresponding class action.

18          But I don't -- I realize the dynamics are what they

19  are and I don't like to have these two processes get mixed when

20  I made a decision two years ago not to allow the class action.

21  And to try our bankruptcy did work, to some respect to extend.

22          MS. DICICCO:  Your Honor, can I --

23          THE COURT:  Sure.

24          MS. DICICCO:  -- interrupt for just one moment, if I

25  may?  Thank you.  Thank you.  A moment ago, you said that we're

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    being assured that we will get an offer soon.  But we really

2    have not been assured of that, right?  We're being assured that

3    if there's no class action settlement, that we may get a

4    settlement offer before April 30th.

5           THE COURT:  Right.

6           MS. DICICCO:  So it's pretty open -- it's five months

7    away and he's made it very clear that if a class action

8    settlement is achieved, and they've been going at or for a long

9    time, and there's now -- they have the insurance money so

10   presumably, they should be able to get something together.

11          If they can get something together, which it'll be

12   probably paltry sum of money when you divide it among the

13   parties who filed claims in this court and those who haven't,

14   right?  So if it going to provide for money to be distributed

15   to -- in settlement to claimants who didn't even appear and

16   file proofs of claim here, that's a different issue.

17          But (audio interference) then it'll never come.  And

18   we are exactly where we are today, with no better insight as to

19   what objections they may be filing against our clients and how

20   they value our clients' claims.  Which given the debt, and the

21   money good aspect of these claims, given that we're supposed to

22   get a certain amount of shares and -- under the algorithm, and

23   a certain amount of payment in full on our debt claims, leaves

24   us really flying blind.

25          THE COURT:  Well --

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      MS. DICICCO:  So I just don't think that we have been

2  assured of that.  There's been no date.  He's not a brought a

3  date, just sort of open ended.  And we think it should be

4  sooner.  And we think the offer should stay open regardless of

5  whether there's a class action settlement.

6      THE COURT:  Well, okay.  But that's a different

7  question.  And maybe that's the only thing that makes sense.

8  But I go back to what we got bogged on a few minutes ago.  And

9  I go back and retool the entire claims resolution process

10  today -- I guess I can for your four clients, at least the

11  three of you counsel.  But whether that's a slippery slope for

12  others, I don't know.

13      And I can joke with Mr. Slack and you about how I can

14  handle 5,800 claims objections, but the fact is I can't

15  because -- I don't care if it's a duplicate claim or not

16  omnibus objection, that you didn't get the name right or you

17  got the wrong deal.  But it substantively involves millions of

18  dollars, that's going to be heavy duty litigation, which I will

19  remember -- and maybe you remember, too.  I resisted and

20  supported the debtor on not allowing the first try at the class

21  action because I thought it was pushing up against the

22  confirmation.

23      And I was not happy with the fact that we had to have

24  a separate procedure for the securities claims in the first

25  place.  I thought that that was something that could have been

PG&E Corporation and Pacific Gas and Electric Company

1    avoided.  But again, it is what it is.

2           And then, we had the second one for good reasons.  But

3    I'm skeptical about whether the third try is going to be

4    helpful.  And I don't know.  But it seems to me that -- well,

5    how can I say this?  If a class action gets filed right away,

6    presumably it will be well thought of and it will have some

7    good reason to believe that it will be acceptable, and

8    including to your clients.  So I mean, I almost think that if

9    there's a class action motion filed soon, that that will be

10   helpful for people such as your clients to decide whether if

11   they want to be done with it.

12          And it's certainly better than litigating the claims

13   objection, right?

14          MS. DICICCO:  It likely -- it may not be, Your Honor,

15   for the reasons I've pointed out --

16          THE COURT:  Yeah.

17          MS. DICICCO:  -- in that.  Our claims are so big and

18   our money good that getting, let's say, five cents on the

19   dollar settlement in a class action, when we don't really know

20   if we would get that money, may not be -- may not be a good

21   comparison.  But I do want to be clear about one thing.  We are

22   not standing here today, or sitting here, advocating for an

23   outright denial of this motion so that they have to file these

24   prophylactic motion -- objections on December.

25          What we're advocating is that any extension that's

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   granted, whether it's 180 days or 90 days but any extension

2   granted should be conditioned on them making the settlement

3   offers pursuant to the procedures and making the -- giving us

4   our objections.  And I don't think it's unfair to be treating

5   us -- this group of clients -- to be prioritized because A, Mr.

6   Slack already offered to prioritize offers to our clients.

7   He's already settled with the Kingstown claimants, as to their

8   objections, as noted in the reply.  And also, with the Abbot

9   clients.

10          So there's already been some sort of cherry picking

11  and affording additional rights to various parties --

12          THE COURT:  Well, did they -- maybe they didn't settle

13  on the merits of their claim.

14          MS. DICICCO:  No.  No.  I didn't mean to suggest that.

15  I mean settled on the objection.  Yes, I apologize.

16          THE COURT:  Right.

17          MS. DICICCO:  So with respect to that, there's

18  already -- I don't want to say disparate treatment, but

19  slightly different treatment among the creditors and that we

20  don't think it would be -- if they were otherwise prioritizing

21  3,000 of the 5,800, we don't see the harm in saying, okay, we

22  agree.  Yours will be in the first month to a month and a half.

23          THE COURT:  Yeah, but okay --

24          MS. DICICCO:  That's not a big stretch.

25          THE COURT:  I suppose that I could say for the four of

PG&E Corporation and Pacific Gas and Electric Company

1   you, your clients, I keep saying three, four.  You know what

2   I'm talking about.  That you've got to be in the January roll

3   out and maybe that's a short term fix.  But I don't know -- and

4   this is like, you've got to be -- help me some more.

5          Why can't an offer on the table stay on the table even

6   though you filed a class action?  The fact of this -- if you

7   make an offer and it's a good faith offer, maybe it'll be

8   accepted.  Or maybe it'll be countered and the counter will be

9   accepted.

10         But it seems to me that there's something that just

11  doesn't sit right about interfering with an actual in-play

12  consensual resolution and say I take it back.  And say that six

13  months after now, when the class action is done, then we start

14  a mediation process with no deadline and then we start a

15  substantive thing.

16         I mean, I've only got twelve and a half years to go on

17  my current term.  And I'd like to have this case wrapped up

18  before I take on my fourth term of this job.

19         MR. SLACK:  Well, it's good that you've just given us

20  a goal.  So Your Honor, a couple of points here because I think

21  that the issue, with respect to if there's a class action

22  settlement and that's brought before the Court, think of

23  it -- it's really a practical issue, Your Honor.  And let's

24  assume that the class action is settled for 1,000 dollars.  And

25  each of the clients here gets an offer for a hundred but

PG&E Corporation and Pacific Gas and Electric Company

1    they're part of the class.

2         The idea is that if they -- if at the time you do the

3    class action settlement, they would be entitled to their

4    portion of the class action settlement if they decided to

5    address it.  What the debtors are buying is with that 1,000

6    dollars is the complete settlement of the claims.  Obviously,

7    people have the right to opt out.  But if folks are

8    allowed -- if you have a lot of settlement offers out there and

9    people start accepting, now you've got a settlement for 1,000

10   but you've paid 1,000 plus a hundred.  The debtors' not getting

11   the bargain which is settling everything for the 1,000.

12        THE COURT:  Mr. Slack, the debtor, through your good

13   counsel, is the one that persuaded me and urged me to do this

14   procedure.

15        MR. SLACK:  Your Honor (indiscernible) --

16        THE COURT:  And now, two years later, you're going

17   with you've changed the procedure and that's, again, I'm not

18   faulting you.  But I'm saying these folks should get the

19   benefit of what they bargain for.

20        MR. SLACK:  So Your Honor, all I can say is that if we

21   make these offers to these individuals and we leave them -- we

22   leave those offers out and they accept them, it would just --

23   it would just -- we'd have to build something into any class

24   action settlement that would deal with it.

25        But what I guess I would suggest, Your Honor, is that

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   it pre-supposes that the objectors here are going to look at

2   the class action settlement, and not agree to it.  They might

3   not agree to it.  But they're all going to have the chance to

4   look at the economics and decide --

5           THE COURT:  Well, yes, of course.  Of course, but

6   they've --

7           MR. SLACK:  But they shouldn't be able to have two

8   sets of economics.  In other words, they can join the class.

9   But once you have a class settlement, that should be their

10  choice, at least for the moment.  Then, if they opt out, you

11  can deal with it.  You're just pausing it for some amount --

12  some short amount of time (indiscernible) --

13          THE COURT:  Yeah, but come on, I don't buy that

14  because you make the -- let's say you make an offer.  We'll use

15  Ms. DiCicco as your foil here.  You say to Ms. DiCicco, we'll

16  settle your whole case for -- I don't like to use real

17  numbers -- for this amount of money.  These dollars.  And she

18  says okay, I'll think about it.  And then she says, okay, no

19  I'll counter it.  I want 2X.  And you say okay, I'll think

20  about it.  And then, oh by the way, I got you.  I'm filing a

21  class action and you -- we'll see you down in Judge Davila's

22  court six months from now.  And so she ought to at least have a

23  choice of the offer that was on the table and whatever the

24  class action is.

25          It's not a question of giving her two bites.  It's

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    giving her an alternative choice and maybe she would have made

2    a better off first.  But the point is, this is all in context.

3    This is not a clean slate.  We're two and a half -- by Mr.

4    Warden's math, four and a half years into this bankruptcy.  And

5    we implemented a class -- an alternative.  A bankruptcy

6    improvement on the claims resolution process and a lot of

7    lawyers and a lot of clients paid a lot of lawyers to do a lot.

8    And here we are two years later saying well, that was for a

9    waste of time, you're going to get a class action offer.  You

10   get a coupon for an extra Starbucks.

11           So it doesn't seem fair to say to them we've jerked

12   you around for two years, and we'll jerk you around for another

13   two.  And then, we might have a substantive objection after

14   that.  I'm more inclined to stick with my squeaky wheel and say

15   these folks squeaked so I'll give you a deadline for getting an

16   offer on the table.  And you can't take it off the table by

17   preempting it with a class action offer.

18           And I'll leave to another day whether there should be

19   a deadline for the mediation so there has to be a substantive

20   objection to the claim.  Because I'd like to think that, first

21   of all, you're not making this up.  You are trying to do a

22   class action.  And therefore, these claimants have a -- should

23   have a right to try and settle out.  They probably won't.  I

24   don't know that.  But based upon the energy that's being

25   extended, and the fact that you haven't -- well, you've told me

PG&E Corporation and Pacific Gas and Electric Company

1  the amount of claims that have been resolved.  You haven't told

2  me the amount of dollars that you've paid out to the claimants

3  that have been resolved.

4  But just doing the math, we are at the bigger ticket

5  taker of players here now.  That's why they have their lawyers

6  and they're fighting this.  So this is a long way of saying I'm

7  inclined to give you a deadline to have offers to these

8  objectors and that they cannot be preempted by an intervening

9  class action.

10  Now, you've got any -- you've got two solutions.  Get

11  a class action thing on the table before you have to make the

12  offer.  Or make the offer and make it a good enough one that

13  they'll -- or they'll either turn it down because the action is

14  better or they'll roll the dice and assert their claim, opt out

15  of the class, and turn down the consensual offer.

16  I mean, that's the third choice, right?  And Ms.

17  DiCicco can say I don't like your offer.  Stuff it.  I don't

18  like your class action.  Stuff it.  Object to my claim and

19  we'll deal with that in the normal course.

20  MR. SLACK:  Well, Your Honor, you know I -- the

21  position of the organized data, we could obviously follow that

22  direction, if that's -- if that is your direction.  And we

23  would do so.

24  THE COURT:  I'm just trying to make a -- come up with

25  a practical solution.  I mean, I'm not faulting you or your

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  opponents here.  Listen, this isn't something I do every day.

2  And certainly, Ms. DiCicco by her comments and you, Mr. Slack,

3  by my familiarity with your experience in this case, you know a

4  lot more about class actions than I do.  And I thought came up

5  with the bankruptcy solution with our claims procedure.

6  Well, okay, look.  I'll put it out as kind of a

7  tentative thinking based upon this discussion.  And I -- look,

8  Mr. Slack, you're familiar with the -- I presume the issue

9  that's gone on in the fire cases with the limited number of

10 people that complained and wanted judicial review of their

11 claims.

12 I mean, it's the same thing.  I don't believe that

13 there's anything wrong with saying that squeaky wheels do

14 get -- get the oil.  And that's what happened in the fire

15 victims, those who insisted on a right to judicial review.  It

16 seems to me here the creditors who thought enough to fight this

17 motion and lay out reasonable arguments, should get the benefit

18 of at least, something that they've asked for.

19 And I'd be inclined to say that for these claimants

20 that are represented by these three counsel, you should have an

21 earlier deadline.  And you should not be allowed to withdraw

22 the negotiated offer and counter offer process by an

23 intervening class action motion.  I won't comment on if the

24 offer and the counter is rejected.

25 If that should create today a new deadline where you

PG&E Corporation and Pacific Gas and Electric Company

1   must put it in the mediation, then you must have the mediation

2   done by another date.  That's just too much detail that I

3   haven't thought about and no one else has thought about.  But

4   it seems to me that let's try something like -- anything that

5   would be the subject of an omnibus objection or an

6   informational request should have to be made to these claimants

7   by the end of the year and you should have offers to these

8   fours clients of these three counsel by the end of February

9   unless there's an intervening class motion before those offers

10  are presented.

11          And when that offer is presented, then the

12  offer/counter offer in the claims resolution procedure are

13  operative and cannot be preempted by a class action motion, at

14  least as to these claimants.  And just leave it at that.  And

15  so if the -- period.

16          MR. SLACK:  Your Honor, under --

17          THE COURT:  Well, Ms. DiCicco, is that consistent -- I

18  mean, that's not everything you asked for but it's close.

19  Right?  And --

20          MS. DICICCO:  I believe it is, Your Honor.  I'd like

21  to I think just make sure I got the last part right, if you

22  don't mind if I repeat it quickly.  So you're saying any

23  information request to these three clients, these clients

24  represented by the three of us lawyers -- any information

25  requests relating to their claims and any omnibus-related

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   objections that would relate to any of us individually or

2   collectively, would be by year end of this year.  And that

3   offers to each of our respective clients would be required to

4   be made -- settlement offers by ADR procedures by the end of

5   February.  And unless the class action -- unless a motion for

6   approval of the class action settlement in the district court

7   happens before the end of February, and that's where I lost

8   you.  So are you saying if they do file something -- let's say

9   they file something January 31st.  Then, they're no longer

10  (audio interference).

11          THE COURT:  Well, if they file -- I guess I'm putting

12  it this way.  If they file a class action -- again, I thought

13  it would only be in the district court.  If there's

14  simultaneously here and there, leaving that aside.  It seems to

15  me they shouldn't then have to make you a settlement offer.

16  But the reverse is the rule.  If they make you a settlement

17  offer, they can't take it off the table.

18          And if -- Mr. Slack and the mediator and the class

19  action lawyers will have to recognize that just like the 1,800

20  or whatever the count was of people that have settled already,

21  they're not coming into the class action.  They're settled and

22  gone.  And if PG&E puts an offer on the table for the State of

23  Oregon on January 2nd or February 27th, it can't take it off

24  the table by saying got you, I filed a class action.

25          MS. DICICCO:  Right.

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  And --

2    MS. DICICCO:  Even though we would otherwise have the

3  opportunity to partake in that class action settlement, unless

4  we opt out, right?  I agree with that.

5    THE COURT:  Yeah, I mean, I don't think it would be

6  fair to accept the counter offer and then also file the class

7  claim.  You'd probably get indicted for double counting or

8  something for doing that.  So I'm assuming that that -- Mr.

9  Slack is an experienced lawyer.  He can negotiate a resolution

10  of the class action earlier, if he can do it.  And if he can't

11  then he's got to at least put some oil on your squeaky wheel

12  here and put an offer on the table.

13    Now, if it's a really ridiculous offer, and you'll

14  respond by a ridiculous counter offer.  And there will be no

15  agreed meeting of the minds.

16    MS. DICICCO:  Right.

17    THE COURT:  And then, we will wait and visit on

18  another day, whether the claims resolution procedure should be

19  modified to put a deadline on the mediation.  But at least I'm

20  not going to make that decision today.  Because -- and maybe

21  the class action will never come to pass.  In which case, here

22  we are.  But maybe the class action will come to pass and that

23  will be acceptable to your clients.

24    Again, I don't know.  I can't know.  But if Mr. Slack

25  offers you X and you counter it 2X and neither is satisfactory,

PG&E Corporation and Pacific Gas and Electric Company

1    and a class action gives you 3X and you accept that, then,

2    that's a good result to you.

3              MS. DICICCO:  Right.  Hopes for -- hope springs

4    eternal.

5              THE COURT:  And if you don't accept it, or the class

6    action is disapproved, then, I'll try to get the matter

7    resolved before my reappointment in twelve years.

8              MS. DICICCO:  Thank you.  So I do think this helps

9    quite a bit because I think the key, from our perspective was

10   to have a date deadline on the objections.  We have that for

11   the end of December and the date deadline for the offer at the

12   end of February.  And that -- whether the settlement happens or

13   otherwise, in terms of how we evaluate something later, that's

14   important for our clients to understand what our potential

15   recovery is here with -- via this process.  And that'll

16   (indiscernible) in terms of evaluating --

17             THE COURT:  No, if Mr. -- if Mr. Slack has talked to

18   the other sixty-six claimants that settled this procedure and

19   there's some sort of a favored nations procedure, he can deal

20   with that.  If there isn't, then his deal with them what it is

21   and his deal with you, I'm ordering it rather than asking you

22   to agree to it.  But it would seem to me that that at least

23   gives you some -- finality is the wrong word.  It gives you

24   some certainty that something's going to happen in a time

25   frame.  And if there's no class offer on the table and the

PG&E Corporation and Pacific Gas and Electric Company

1   consensual offer is countered but not agreed to, then, you'll

2   either voluntarily work with them to start the mediation

3   process or you'll come back to the bankruptcy court for some

4   relief to -- well, I was going to say, I'm glad we clarified

5   the time table for claims objection that are the product of the

6   mediation -- of the procedure.  It's different from what we're

7   doing just generally on today's motion so -- and even for the

8   non-class claims, I've extended the claims deadline as

9   requested for everybody else.

10      MR. SLACK:  So Your Honor --

11      THE COURT:  I guess, Ms. DiCicco, I guess I'll

12  nominate you to work with Mr. Slack to reduce this to a form of

13  order that both sides can understand and let Mr. Warden and Ms.

14  Murphy at least participate in the discussion.

15      Mr. Slack, do you have something?

16      MS. DICICCO:  Of course.

17      MR. SLACK:  I do have something to say because I think

18  you said something slightly different than Ms. DiCicco did --

19      THE COURT:  Okay.

20      MR. SLACK:  -- and I just want to clarify.

21      THE COURT:  Okay.

22      MR. SLACK:  I think we're getting more -- I think when

23  you issued what you expected to happen, you said that if we had

24  an omnibus objection, and there is part of the procedures that

25  talk about omnibus objections and making omnibus objections.

PG&E Corporation and Pacific Gas and Electric Company

1    And I think we are okay with if we have an omnibus objection in

2    for these folks.

3            And we're talking about things like duplicate claims

4    and things like that.  Well, we'll talk to them about it.  But

5    what we are not talking about the objection deadline for their

6    claims, which is a very different thing and that's called for

7    by the procedures.  And so I just want to make sure that we, in

8    fact, are on the same page, which is that this is relating to

9    the particular pieces of the omnibus objection procedures that

10   are you in your order.

11           THE COURT:  Yeah.  Yes, that's right.  And I, again,

12   my instincts tell me there's not even going to be any omnibus

13   objections for these people because they've already done what

14   they said they've done.  I find --

15           MR. SLACK:  And that -- And that's could very well be,

16   Your Honor.  See, that's exactly the point.

17           THE COURT:  So let's assume that Ms. DiCicco -- again,

18   we use her as an example -- that Oregon has provided everything

19   that you need to provide.  There's no omnibus objection to be

20   filed.  There will be until February 28th for you to put an

21   offer on the table unless you've preceded that offer with a

22   formal class action motion.

23           And once you've put that offer on the table, you can't

24   take it off the table because of the class action.  You can --

25   it can go off the table because it wasn't accepted and the

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    counter wasn't accepted, and then it's gone.  It then goes to

2    the mediation process.  And then, if the mediation process

3    occurs and is unsuccessful, then that has its own internal

4    statute of limitations as far as the claims following the

5    mediation.  We've talked about the sixty days.  So that's the

6    way to go.

7             MR. SLACK:  Yeah.

8             THE COURT:  So I want you then, Mr. Slack, you and Ms.

9    DiCicco to work on a form of order that the other two counsel

10   agree to and participate.  It's just for these claimants.

11            MR. SLACK:  Yeah, we will take -- you know, circulate

12   a proposed order to Ms. DiCicco and then get that circulated to

13   counsel --

14            THE COURT:  Okay.  Good.

15            MR. SLACK:  -- for the sign off.

16            THE COURT:  And then you can have a separate order

17   then, for the other claimants, right?

18            MR. SLACK:  Well, we can do it however Your Honor

19   wants to sign orders.  So we can do procedure for these --

20            THE COURT:  Whatever you want.  Whatever you want.  I

21   don't care.  I mean, I'm not -- listen, the fact that I said

22   the squeaky will should get some oil doesn't mean we're doing

23   something covertly.  If you want to do it one form order and

24   somebody complains and says I want what they got.  That's up to

25   you.  I'm not making a rule that says just because these folks

eScribers
operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    complained, that no one else can get the same benefit if the

2    debtor agrees to it.

3            I probably wouldn't do it to somebody if the debtor

4    doesn't agree to it.  Because, again, that's inconsistent to

5    say -- and to apply the principal that I'm trying to enforce.

6    Okay.  I think I'm good to go.

7            Everybody satisfied with where we are?

8            Mr. Warden?

9            Ms. Murphy?

10           MS. MURPHY:  Thank you, Your Honor.  Yes --

11           THE COURT:  Okay.

12           MR. WARDEN:  Your Honor, thank you.  Thank you for all

13   the time you took.

14           THE COURT:  Well, thank you all.  Thanks for getting

15   your phone to work.  I'll see you all.  I look forward to

16   seeing the order soon.  I'll conclude the hearing.  Thank you

17   for your time and effort.

18           MR. SLACK:  Thank you, Your Honor.

19           MR. WARDEN:  Thank you.

20           MS. DICICCO:  Thank you.

21           MS. MURPHY:  Thank you, Your Honor.

22           THE COURT:  Bye.

23       (Whereupon these proceedings were concluded at 12:23 PM)

24

25

eScribers
operations@escribers.net | www.escribers.net

1                     C E R T I F I C A T I O N

2

3    I, Dana Knight, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7

8

9

10

11    _____

    /s/ DANA KNIGHT

12

13

    eScribers

14

    7227 N. 16th Street, Suite #207

15

    Phoenix, AZ 85020

16

17

    Date:  December 1, 2022

18

19

20

21

22

23

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

# #

**#207 (1)**
83:11

# /

**/s/ (1)**
83:8

# A

**Abbot (5)**
34:14,17,18;35:11;
68:8
**ability (5)**
20:22;36:6;37:24;
41:7;64:6
**able (17)**
11:8;13:5,22;15:11,
12;20:11,18;23:13;
30:14;37:22,25;45:9;
48:11;51:13;62:7;
65:10;71:7
**above (1)**
8:17
**absolute (1)**
61:10
**absolutely (1)**
17:14
**accept (7)**
39:16;44:16;64:3;
70:22;77:6;78:1,5
**acceptable (2)**
67:7;77:23
**acceptance (1)**
39:18
**accepted (6)**
39:23;63:15;69:8,9;
80:25;81:1
**accepting (1)**
70:9
**access (1)**
20:23
**acclimated (1)**
33:11
**accord (1)**
62:25
**account (3)**
12:11;30:19;40:5
**accountability (1)**
63:18
**accounted (1)**
27:20
**accounting (1)**
13:5
**accurate (1)**
83:4
**achieved (1)**
65:8
**act (2)**
24:21;30:17

**acted (1)**
18:16
**acting (2)**
48:25;53:5
**action (74)**
29:21;35:22;36:14,
24;37:13;38:9;39:4,18;
40:17;44:10,14;46:16,
20;47:5;48:23;52:1,24;
53:11,16;54:1,2,9,14;
59:17;60:7,11;61:16,
17;62:1;63:25;64:1,4,
17,20;65:3,7;66:5,21;
67:5,9,19;69:6,13,21,
24;70:3,4,24;71:2,21,
24;72:9,17,22;73:9,11,
13,18;74:23;75:13;
76:5,6,12,19,21,24;
77:3,10,21,22;78:1,6;
80:22,24
**actionable (2)**
53:2,24
**actions (1)**
74:4
**actual (1)**
69:11
**actually (9)**
9:6;11:4;25:13;35:7;
41:4,6;45:5;56:3,5
**add (5)**
8:17;25:10,18;60:14;
62:19
**additional (14)**
10:12,16,18,23;11:3,
22;12:5;22:11;34:20;
42:14;49:18;50:4;63:2;
68:11
**address (5)**
13:20;46:11;49:9,15;
70:5
**addressed (1)**
10:13
**adequate (1)**
52:19
**adhere (1)**
44:19
**adjudicated (1)**
13:3
**admissions (1)**
12:12
**ADR (3)**
63:14,17;76:4
**advice (2)**
13:19,22
**advised (2)**
8:22;17:10
**Advisor (1)**
28:13
**advocating (2)**
67:22,25
**affected (2)**
12:10;17:21
**affording (1)**

68:11
**afternoon (1)**
28:1
**again (35)**
10:7;14:19;15:17;
16:12;17:13,25;22:16,
21;24:11;26:11;29:23;
31:25;35:16;36:22;
37:10,15;38:18,22;
39:5;40:19;41:15,17;
42:6;43:25;44:9;50:17;
60:17;64:15;67:1;
70:17;76:12;77:24;
80:11,17;82:4
**against (2)**
65:19;66:21
**agent (1)**
49:23
**aggregate (2)**
9:13;18:22
**ago (11)**
8:19,25;29:1,10;
50:1;51:10;57:15,19;
64:20,25;66:8
**agree (8)**
64:10;68:22;71:2,3;
77:4;78:22;81:10;82:4
**agreed (5)**
34:15,19;52:11;
77:15;79:1
**agreement (1)**
46:3
**agrees (1)**
82:2
**ahead (7)**
8:14;12:2;22:1;34:2;
39:12;45:23;48:22
**AirBnBs (1)**
15:4
**al (1)**
7:2
**alarm (1)**
31:16
**Alexandra (1)**
7:10
**algorithm (1)**
65:22
**aligned (1)**
31:10
**allow (4)**
12:1;14:14;18:20;
64:20
**allowed (3)**
7:24;70:8;74:21
**allowing (1)**
66:20
**almost (5)**
10:20;18:19;23:16;
25:9;67:8
**along (1)**
12:17
**alternative (2)**
72:1,5

**always (1)**
43:23
**among (2)**
65:12;68:19
**amount (19)**
11:12,12;21:14;
22:12,14;23:12,22;
25:1;42:20;43:13;
53:15;60:1;65:22,23;
71:11,12,17;73:1,2
**amounts (1)**
43:16
**analyzing (1)**
49:24
**anniversary (1)**
61:2
**announcement (1)**
24:7
**announcements (1)**
20:2
**answered (1)**
21:24
**anticipate (2)**
35:24;39:14
**anticipating (1)**
13:4
**antsy (1)**
19:14
**anymore (2)**
25:25;60:14
**apologize (5)**
14:23;16:1;33:8,18;
68:15
**apparent (1)**
16:7
**appeals (4)**
13:5,7;19:8,8
**appear (3)**
13:12;16:2;65:15
**appearance (10)**
6:9;28:6,10;29:21;
30:12;31:20,23;32:24,
25;33:11
**appearances (4)**
6:2,20;7:7;27:25
**appeared (1)**
28:5
**appearing (3)**
6:21,23;7:23
**appears (1)**
16:25
**apply (2)**
48:1;82:5
**appreciate (5)**
14:16;15:23;17:23;
26:4;46:9
**appropriate (3)**
41:12,19;60:12
**appropriately (1)**
60:7
**approval (3)**
52:13,14;76:6
**approved (1)**

55:7
**approving (1)**
13:1
**approximately (4)**
42:3,6,6,9
**April (3)**
17:2;49:14;65:4
**argue (1)**
7:8
**argument (9)**
8:15;18:5;22:1;
26:15;31:12;32:1;
33:24;39:12;47:16
**arguments (5)**
7:16;18:10;26:10;
41:18;74:17
**around (5)**
16:22;40:18,21;
72:12,12
**ash (1)**
15:1
**aside (3)**
21:3;50:24;76:14
**aspect (1)**
65:21
**assert (1)**
73:14
**asserted (1)**
42:7
**asserting (1)**
48:21
**assist (1)**
9:7
**assume (10)**
11:22;32:9;33:24;
36:10;50:23;52:18,21;
63:21;69:24;80:17
**assuming (6)**
7:7;38:19;44:5,6;
48:24;77:8
**assured (2)**
64:14;65:1,2,2;66:2
**attempt (1)**
40:11
**attempting (1)**
12:15
**attend (1)**
27:4
**attention (1)**
29:16
**attenuated (1)**
31:1
**attorney (1)**
17:7
**attorneys (1)**
27:20
**attorneys' (1)**
25:15
**audio (3)**
47:23;65:17;76:10
**authorities (1)**
30:15
**authority (1)**

eScribers, LLC
www.escribers.net

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
85 of 99

20:20
**available (2)**
21:17;23:12
**avoid (1)**
49:6
**avoided (1)**
67:1
**award (2)**
10:21;12:2
**awarding (1)**
11:4
**aware (3)**
10:2,6;53:20
**away (2)**
65:7;67:5
**AZ (1)**
83:12

**B**

**back (17)**
9:16;11:6;26:25;
31:25;32:3,7;34:8;
35:21;37:21;41:17;
47:13;48:15;57:19;
66:8;9;69:12;79:3
**background (1)**
28:25
**backyard (1)**
16:19
**bad (1)**
18:16
**Bahamas (1)**
31:5
**bait (1)**
59:6
**Bakersfield (1)**
13:25
**balance (2)**
12:10;22:1
**bank (3)**
30:19,19,21
**bankruptcy (9)**
31:4;40:18;41:5;
42:4;64:21;72:4,5;
74:5;79:3
**bar (9)**
10:5,5;16:25;18:20;
23:20;42:5;49:25;
61:21,22
**barely (1)**
17:9
**bargain (2)**
70:11,19
**barring (1)**
23:15
**based (6)**
23:11;24:13;34:8;
43:15;72:24;74:7
**basically (3)**
15:11;34:22;54:1
**basis (1)**
42:22

**bear (1)**
16:9
**become (1)**
15:7
**bedroom (1)**
17:17
**began (1)**
16:24
**begin (2)**
8:14;47:1
**beginning (2)**
17:5;36:17
**behalf (10)**
6:23;7:2,5,24;8:1;
28:12,17;29:12;33:13;
59:13
**belonged (1)**
17:18
**belongings (1)**
17:8
**beneficiaries (1)**
22:9
**benefit (4)**
23:24;70:19;74:17;
82:1
**best (2)**
8:15;58:22
**better (5)**
32:22;65:18;67:12;
72:2;73:14
**beyond (4)**
8:17;20:2;46:23;
47:1
**big (5)**
40:22,24;57:3;67:17;
68:24
**bigger (1)**
73:4
**billion (3)**
10:25;11:24;42:10
**birthday (1)**
14:1
**bit (8)**
8:25;10:3;11:20;
14:23;28:25;31:16;
64:8;78:9
**bites (1)**
71:25
**blind (1)**
54:18;65:24
**Bockius (1)**
28:16
**body (3)**
63:8,13,19
**bogged (1)**
66:8
**boiler (1)**
49:3
**bond (6)**
29:14,15;30:18,18,
23,24
**bore (1)**
30:25

**borrow (1)**
15:12
**both (9)**
6:12;15:14;27:18;
43:22;46:14;59:22;
60:4,5;79:13
**bound (1)**
31:13
**brief (1)**
46:14
**briefing (4)**
10:3,8,13;14:14
**briefly (1)**
63:5
**bring (1)**
27:16
**bringing (2)**
6:3;27:14
**broad (1)**
12:10
**brought (3)**
14:5;66:2;69:22
**Brown (1)**
18:13
**build (1)**
70:23
**built (1)**
58:6
**bunch (1)**
62:10
**Bushby (2)**
6:24;13:25
**business (1)**
40:11
**buy (1)**
71:13
**buying (1)**
70:5
**Bye (1)**
82:22

**C**

**calculating (1)**
18:24
**calendar (4)**
13:10;14:14;26:22;
29:23
**California (1)**
45:11
**call (4)**
6:1,15;16:16;47:4
**called (2)**
30:2;80:6
**calling (2)**
16:21;27:13
**came (3)**
29:15;63:5;74:4
**camera (11)**
7:15,15,17;14:19;
16:2;18:5,7;27:8,9,22,
23
**cameras (2)**

6:17;26:23
**Camp (5)**
8:24;9:2,7,14;11:18
**can (59)**
7:14,17;8:7;14:20;
15:20;20:13,13,14;
21:13;23:20;24:19;
26:25;27:15,23;32:17,
25;33:6;35:23;36:20;
44:15,16,16;45:14;
46:4;48:10;50:14,21;
54:12,23,24;55:16,19;
56:24;57:6,23;60:5;
61:7;62:13;64:11,22;
65:11;66:10,13,13;
67:5;70:20;71:8,11;
73:17;77:9,10;78:19;
79:13;80:24,25;81:16,
18,19;82:1
**capture (1)**
43:25
**car (2)**
9:9;15:13
**care (4)**
17:6;34:25;66:15;
81:21
**caring (1)**
17:16
**carried (1)**
9:9
**case (21)**
9:4,15;11:10;19:3;
23:10;24:11;29:21;
31:10,21;44:10,11;
52:16;60:23,25;61:3,
13;62:3;69:17;71:16;
74:3;77:21
**cases (1)**
74:9
**catch (2)**
30:16;31:18
**cede (1)**
62:21
**celebrating (1)**
14:1
**central (1)**
49:11
**cents (2)**
53:15;67:18
**century (1)**
33:11
**certain (4)**
25:1;58:25;65:22,23
**certainly (7)**
8:17;10:16;29:25;
47:11;64:4;67:12;74:2
**certainty (1)**
78:24
**certify (1)**
83:3
**chance (2)**
51:2;71:3
**change (1)**

57:24
**changed (3)**
29:3;43:15;70:17
**Chapter (1)**
12:13
**check (2)**
8:11;31:19
**checked (1)**
30:10
**checking (4)**
29:3,5,6;31:21
**cherry (1)**
68:10
**Chevron (5)**
33:13,15,15;48:20;
61:14
**children (1)**
9:16
**choice (5)**
18:7;71:10,23;72:1;
73:16
**Chris (1)**
7:1
**chunk (1)**
43:15
**circulate (1)**
81:11
**circulated (1)**
81:12
**circumstance (1)**
25:22
**circumstances (4)**
8:23;12:12;23:15;
25:7
**claim (35)**
8:19,23;9:10,11;
11:12,14,19;12:20,24;
13:18,20,24;17:13;
22:11;23:17,19,21,22;
25:13,18;26:10,16;
41:4;42:9;43:10;48:21;
50:17;52:5;65:16;
66:15;68:13;72:20;
73:14,18;77:7
**claimant (5)**
11:15;17:22;20:22,
22;21:6
**claimants (46)**
9:1;10:4,12,17,18;
11:2,3,5,8,9,17,22;
12:3,25;18:25;21:4,6;
23:24;26:4,6,9;27:3;
28:13,13;34:14,17,19;
35:12;46:20;47:17;
58:25,25;59:8,11;62:7;
63:3;65:15;68:7;72:22;
73:2;74:19;75:6,14;
78:18;81:10,17
**claimed (1)**
26:7
**claims (108)**
9:12,20;10:6,7,19,20,
22,24;11:17,17;12:5,

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57

15;13:2,15;14:9,10;
18:16,18,20,25;19:6;
20:23;21:2,9,18;22:5,
13,15,19;23:4,8;24:8;
25:6,7,10,16,18;26:6,
13;34:7;35:1,15,18;
37:3;40:2;41:6,24;
42:3,4,5,6,8,8,13,19,25;
43:2,4,12,22,25;44:18;
48:1;49:7;50:18;51:3;
52:6;53:13,17,17,21;
54:8,9,11,12,18;55:3,
19;58:5;59:13,13,25;
61:13,13,21;65:13,20,
21,23;66:9,14,24;
67:12,17;70:6;72:6;
73:1;74:5,11;75:12,25;
77:18;79:5,8,8;80:3,6;
81:4

**claim's (1)**
34:16

**clarification (2)**
47:15,16

**clarified (1)**
79:4

**clarify (4)**
28:22;36:22;46:24;
79:20

**class (99)**
35:22;36:4,14,23;
37:3,7,13,17,18;38:9,
19,20,21;39:4,18;40:1,
17,25;41:3,5,8,13,13;
43:3;44:10,14;46:16,
20;47:5;48:23;52:1,24;
53:11,16;54:1,2,9,14;
55:7;59:17;60:7,11;
61:16,17;62:1;63:9,25;
64:1,4,17,20;65:3,7;
66:5,20;67:5,9,19;69:6,
13,21,24;70:1,3,4,23;
71:2,8,9,21,24;72:5,9,
17,22;73:9,11,15,18;
74:4,23;75:9,13;76:5,6,
12,18,21,24;77:3,6,10,
21,22;78:1,5,25;80:22,
24

**clean (1)**
72:3

**cleanup (2)**
15:17;42:16

**clear (8)**
10:8;11:16;17:17;
18:14;23:21;25:24;
65:7;67:21

**clearly (1)**
40:2

**CLERK (7)**
6:4,6;7:8;18:2;23:9;
26:25;27:12

**client (5)**
37:11;38:5;47:10;
49:22;51:23

**clients (30)**
9:13;34:15;35:23;
46:10;48:8;49:18;
54:10,13;55:1;58:22;
59:19,21,22;62:25;
65:19;66:10;67:8,10;
68:5,6,9;69:1,25;72:7;
75:8,23,23;76:3;77:23;
78:14

**clients' (2)**
48:1;65:20

**client's (1)**
52:6

**clock (1)**
56:24

**close (2)**
20:14;75:18

**closer (1)**
54:7

**clothing (1)**
15:5

**coast (1)**
15:4

**collecting (1)**
42:21

**collectively (1)**
76:2

**collision (1)**
17:3

**coming (5)**
6:5;9:16;19:14;61:2;
76:21

**commence (1)**
56:20

**commencing (1)**
63:17

**comment (2)**
28:22;74:23

**comments (4)**
14:17;15:23;17:24;
74:2

**commit (1)**
54:25

**commitment (2)**
47:8,24

**committed (1)**
41:17

**commodity (1)**
29:25

**Common (1)**
28:19

**community (3)**
9:5,19;14:3

**comparison (1)**
67:21

**compelling (2)**
8:20;9:15

**compensable (1)**
23:18

**compensation (2)**
18:22,24

**complain (1)**
38:25

**complained (3)**
45:3;74:10;82:1

**complains (1)**
81:24

**complaint (1)**
57:17

**complete (6)**
20:12;37:19;43:4;
44:1;48:19;70:6

**completely (2)**
27:6;61:22

**computer (1)**
33:2

**concern (1)**
23:12

**concerned (2)**
19:15;50:5

**conclude (3)**
26:15;56:25;82:16

**concluded (1)**
82:23

**concludes (2)**
17:25;26:21

**conclusion (2)**
56:1,23

**concur (1)**
60:20

**condition (1)**
16:20

**conditioned (1)**
68:2

**conduct (1)**
30:15

**confer (1)**
7:21

**conferred (3)**
46:1,2,2

**confidence (2)**
11:4;12:3

**confirmation (1)**
66:22

**confirmed (4)**
43:7;53:13;59:20,24

**conflict (6)**
28:24;29:3,5,6;31:1,
2

**conflicts (1)**
30:16

**confusing (1)**
64:8

**confusion (2)**
10:3;28:22

**connect (1)**
29:22

**connection (2)**
8:21;9:1

**consensual (5)**
37:13;55:21;69:12;
73:15;79:1

**conservative (1)**
21:13

**consider (1)**
9:3

**consideration (1)**
30:17

**considered (1)**
9:13

**consistent (4)**
34:17;35:11,16;
75:17

**contact (1)**
15:5

**contacted (1)**
8:21

**contacting (1)**
9:2

**content (1)**
63:9

**contential (1)**
64:6

**contested (1)**
62:11,12

**context (2)**
42:24;72:2

**contingent (1)**
46:18

**continue (2)**
42:24;55:16

**continued (1)**
14:13

**continues (2)**
46:23;47:1

**contrary (1)**
19:7

**control (4)**
24:17;31:2,3;51:20

**conversation (1)**
8:22

**coordinated (1)**
10:1

**Corporation (1)**
27:14

**corresponding (1)**
64:17

**costs (1)**
15:9

**counsel (33)**
6:12,20;7:20;8:4;
18:6;26:3;27:2,14,15,
25;29:11;30:4,11;31:8,
10,21;35:23;37:11;
43:8;44:3,20;48:11;
49:6;60:20,23;63:9;
64:13;66:11;70:13;
74:20;75:8;81:9,13

**counsel's (1)**
8:18

**count (3)**
61:1,7;76:20

**counter (15)**
44:16;55:15;57:5,22;
58:15;64:2,3;69:8;
71:19;74:22,24;77:6,
14,25;81:1

**countered (3)**
50:23;69:8;79:1

**counteroffers (1)**
56:19

**counting (1)**
77:7

**couple (4)**
8:19;9:24;64:13;
69:20

**coupon (1)**
72:10

**course (9)**
22:18;26:13;55:15;
59:9,10;71:5,5;73:19;
79:16

**COURT (201)**
6:5,7,11,25;7:3,6,14;
8:9;9:21,23;10:18;
11:11,21;12:6,8,9;
13:16;14:2,11,12,16;
15:22,25;16:4,12,15;
17:23;18:4;20:15,18,
25;21:8,15,20;22:16,
18,22;23:23;24:6,10,
20;25:3;26:1,3,21;
27:2,4,7,12,17;28:4,14,
20;29:7;32:6,12,15,23;
33:6,9,14,17,19;34:2,9,
20,21,23;35:1,3,5,9,21;
36:5,10,13,19,22;37:1,
9,22;38:2,5,8,16,22,24;
39:2,12,15,18,21,23;
40:3,6,15,18;41:2,2,18;
42:1;43:6,19;44:2,5,
23;45:18,23;46:6;47:3;
48:6,16;50:7,9,16,25,
25;51:5,8,12,15,17,19;
52:12,14,18,21;53:18,
20;54:3,3;55:5,17,20;
56:6,9,14;57:10,12,14;
58:9,12,19;59:2,4;60:9,
13,19;61:1,5,15,19,20,
25;62:9,13,18,23;63:4,
7,8,12,21;64:23;65:5,
13,25;66:6;67:16;
68:12,16,23,25;69:22;
70:12,16;71:5,13,22;
73:24;75:17;76:6,11,
13;77:1,5,17;78:5,17;
79:3,11,19,21;80:11,
17;81:8,14,16,20;
82:11,14,22

**Court's (1)**
10:2

**cover (1)**
9:25

**coverage (1)**
14:3

**covered (1)**
17:7

**covertly (1)**
81:23

**create (1)**
74:25

**created (2)**

Min-U-Script®

eScribers, LLC
www.escribers.net

(3) claim's - created

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
87 of 99

28:22;51:1
**credit (1)**
  59:22
**creditor (7)**
  29:20;30:19,22,23;
  63:8,13,19
**creditors (6)**
  12:14,21;44:2;59:20;
  68:19;74:16
**criticized (1)**
  29:1
**cryptocurrency (1)**
  31:5
**crystal (1)**
  10:7
**culprit (1)**
  32:24
**current (7)**
  11:2,5,7;12:2;21:8;
  23:25;69:17
**customer (1)**
  30:21
**cut (1)**
  59:6

# D

**damages (1)**
  11:9
**Dana (2)**
  83:3,8
**data (18)**
  42:20,21,23;44:7;
  47:18;48:12;49:10,18,
  22,24;50:6,13;52:2;
  54:23;60:2;63:1,2;
  73:21
**date (27)**
  10:5,5;16:25;18:20;
  19:17;22:23;23:20;
  42:5;48:3,4;49:11,24,
  25;52:3;55:11;58:5,23;
  59:15;61:11,21,22;
  66:2,3;75:2;78:10,11;
  83:14
**Davila's (1)**
  71:21
**day (12)**
  17:11,13,14;53:10;
  54:7;55:8;56:24;59:15,
  18;72:18;74:1;77:18
**days (20)**
  23:9;34:7,8;53:4;
  55:14,14;56:8,11,12,
  22;57:4,13,21;58:13,
  16,24;63:24;68:1,1;
  81:5
**dead (1)**
  50:18
**deadline (40)**
  12:21;13:19,21,24;
  19:17,22,22,23;20:12;
  22:19,19,20;23:9;

25:24;34:6;49:20,25;
50:10;51:24;54:22;
55:22;56:6,19;57:2,22;
58:7,17,24;59:1;69:14;
72:15,19;73:7;74:21,
25;77:19;78:10,11;
79:8;80:5
**deadlines (5)**
  44:19;49:12;55:25;
  56:3,5
**deal (13)**
  10:20;36:8;37:25;
  41:14;44:9;56:3;66:17;
  70:24;71:11;73:19;
  78:19,20,21
**dealing (2)**
  28:7;52:15
**debt (6)**
  53:13,14,17,17;
  65:20,23
**debtor (15)**
  12:13,22;14:6;54:11;
  59:23;60:23;62:7;63:6,
  7,13,16;66:20;70:12;
  82:2,3
**debtors (22)**
  20:4;22:3,7;23:18;
  28:3;34:5;40:11;46:25;
  47:18,20;49:17,19,23;
  53:12;54:17,25;55:15;
  56:2;59:16;60:4;64:7;
  70:5
**debtors' (3)**
  51:9;56:13;70:10
**debtor's (2)**
  22:5;60:23
**December (8)**
  23:7;36:1,10;48:24;
  62:14;67:24;78:11;
  83:14
**decide (2)**
  26:8;57:7;67:10;
  71:4
**decided (5)**
  15:2;37:23;45:20;
  59:16;70:4
**deciding (1)**
  12:5
**decision (7)**
  26:12,17;31:13;36:7;
  40:11;64:20;77:20
**declarations (1)**
  14:15
**defer (1)**
  62:21
**degrade (1)**
  9:12
**delay (5)**
  13:1;18:18;23:16,17;
  59:14
**delayed (1)**
  13:17
**delays (1)**

58:23
**delved (1)**
  8:25
**denial (1)**
  67:23
**denied (1)**
  62:4
**Dennis (1)**
  27:13
**deny (4)**
  14:11;58:12;61:16,
  22
**depends (1)**
  24:4
**depositor (2)**
  30:21,22
**depriving (1)**
  11:9
**designed (1)**
  20:2
**destroyed (1)**
  12:16
**detail (2)**
  10:14;75:2
**details (1)**
  50:4
**determination (5)**
  11:6;13:1;21:17;
  22:13;25:17
**determinations (4)**
  13:8;20:16,19;21:2
**determine (2)**
  30:6,14
**determined (7)**
  18:22;19:6,13;21:9,
  19;22:18;23:11
**diagnosed (2)**
  16:20;17:3
**dice (1)**
  73:14
**DiCicco (68)**
  27:18;28:5,9,14,15,
  16;32:10;34:24;35:7;
  45:22,25;46:7;47:12;
  48:16,22;49:9;50:8,12;
  51:4,6,9,13,16,18;52:2,
  19;53:1,19,21;55:7;
  56:15;57:11,12,13,25;
  58:10,18,20;59:3,10;
  62:25;64:22,24;65:6;
  66:1;67:14,17;68:14,
  17,24;71:15,15;73:17;
  74:2;75:17,20;76:25;
  77:2,16;78:3,8;79:11,
  16,18;80:17;81:9,12;
  82:18
**die (1)**
  61:10
**difference (5)**
  22:22;23:3,7;40:23,
  24
**different (14)**
  13:19;29:11;38:2;

39:24;47:13;50:6;
55:11,12;65:16;66:6;
68:19;79:6,18;80:6
**differently (1)**
  50:16
**difficult (1)**
  16:8
**difficulty (1)**
  16:3
**diligent (1)**
  48:19
**Dimensional (2)**
  28:13;63:23
**direction (2)**
  73:22,22
**directly (1)**
  20:23
**disabled (1)**
  17:2
**disadvantaged (1)**
  59:22
**disagree (1)**
  64:11
**disapproved (1)**
  78:6
**disclose (2)**
  45:9,14
**disclosed (2)**
  37:20;45:14
**disclosure (1)**
  37:22
**disclosures (2)**
  31:17;45:5
**discretion (1)**
  58:6
**discuss (1)**
  16:8
**discussed (1)**
  34:12
**discussing (2)**
  14:4;16:6
**discussion (2)**
  74:7;79:14
**disparate (1)**
  68:18
**dispute (1)**
  25:5
**disqualified (1)**
  30:20
**disqualify (3)**
  30:7,24;31:7
**distress (8)**
  10:21,22;11:19,23;
  13:15;16:6,19;17:20
**distressing (1)**
  17:20
**distribute (2)**
  18:25;25:11
**distributed (1)**
  65:14
**distribution (3)**
  21:9,22;23:25
**distributions (1)**

21:5
**District (8)**
  37:21;41:17;50:25;
  52:12,14;61:20;76:6,
  13
**ditch (1)**
  9:3
**divide (2)**
  8:5;45:20;65:12
**Dixie (1)**
  8:21
**docket (4)**
  8:12;21:18;35:13;
  41:23
**document (1)**
  30:4
**dog (1)**
  15:5
**dollar (7)**
  19:11;24:1;42:7;
  43:13,16;53:16;67:19
**dollars (12)**
  10:25;11:13,14,20,
  23,24;63:23;66:18;
  69:24;70:6;71:17;73:2
**done (11)**
  13:9;21:12;42:16;
  45:24;50:6;62:16;
  67:11;69:13;75:2;
  80:13,14
**door (1)**
  19:3,11,21;20:9;
  25:20
**double (1)**
  77:7
**doubt (1)**
  48:19
**Dougherty (9)**
  6:16;7:6,10,11,23;
  14:18,22;15:22,24
**down (8)**
  10:11;15:3;16:18;
  20:13;27:23;71:21;
  73:13,15
**dozen (1)**
  10:15
**dozens (3)**
  30:5,5,5
**dramatically (1)**
  24:22
**draw (1)**
  23:14
**drilling (1)**
  10:11
**due (3)**
  11:5;12:2;26:13
**duplicate (4)**
  42:15,15;66:15;80:3
**duplicates (2)**
  49:4,6
**during (6)**
  12:4;18:17;4;40:10,
  17;62:14

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
88 of 99

**duty (1)**
66:18
**dynamics (2)**
43:14;64:18

**E**

**earlier (7)**
21:16;22:18;31:18;
51:24;63:13;74:21;
77:10
**early (1)**
36:20
**easy (1)**
24:23
**echo (1)**
26:7
**economic (1)**
21:12
**economics (4)**
36:6;37:23;71:4,8
**economists (1)**
24:3
**effect (2)**
10:11;24:6
**efficient (1)**
62:9
**efficiently (1)**
41:8
**effort (1)**
82:17
**efforts (1)**
20:8
**eighteen (2)**
50:2,18
**either (8)**
20:21,22;31:24;
51:25;60:11;62:6;
73:13;79:2
**else (6)**
6:3;12:6;27:3;75:3;
79:9;82:1
**embark (1)**
46:17
**embarrassed (2)**
31:18;49:3
**Emily (1)**
7:4
**emotional (8)**
10:21,22;11:19,23;
13:15;16:6,19;17:19
**Employees (1)**
28:18
**enacted (1)**
29:3
**end (14)**
19:12;39:4;46:4;
49:20;56:20;57:4;
61:23;75:7,8;76:2,4,7;
78:11,12
**ended (3)**
18:23;56:7;66:3
**ends (4)**
57:7,7,7,8
**energy (1)**
72:24
**enforce (1)**
82:5
**enjoy (1)**
62:10
**enough (3)**
29:22;73:12;74:16
**enter (1)**
40:1
**entering (1)**
60:25
**entire (4)**
17:18;55:20;60:8;
66:9
**entities (7)**
24:25;29:13,13;30:6,
12,13;31:8
**entitled (2)**
54:19;70:3
**equitable (1)**
12:10
**eScribers (1)**
83:10
**Essentially (6)**
19:22;37:4;38:20;
43:20,23;44:18
**estimate (1)**
23:25
**estimated (1)**
23:5
**et (1)**
7:2
**eternal (1)**
78:4
**ethical (1)**
30:17
**ethics (1)**
31:6
**evacuated (2)**
9:6,10
**evacuating (1)**
9:6
**evacuation (1)**
9:11
**evacuee (1)**
8:24
**evaluate (4)**
54:16;57:4;60:7;
78:13
**evaluates (1)**
54:11
**evaluating (3)**
54:14;64:2;78:16
**even (22)**
10:18;11:21;13:3,5;
16:6;23:21,21;26:6;
30:9,15,25;32:24;41:3;
46:25;54:16;57:1;
61:15;65:15;69:5;77:2;
79:7;80:12
**event (1)**
15:21
**events (1)**
14:4
**everybody (8)**
6:14;19:10;21:13;
24:23;37:5,19;79:9;
82:7
**everybody's (1)**
31:15
**everyone (6)**
6:2;19:5;20:21;21:5;
23:13;26:25
**everyone's (1)**
27:20
**Everything's (2)**
11:13;32:8
**exactly (7)**
31:9;39:25;44:17,22;
46:13;65:18;80:16
**examine (1)**
30:14
**example (4)**
49:21;53:13;56:13;
80:18
**exceptional (3)**
23:15;25:21,23
**exceptions (1)**
30:25
**excusable (1)**
13:13
**excuse (1)**
20:15
**existed (1)**
17:9
**existing (1)**
41:24
**exists (1)**
11:7
**expect (2)**
27:6;37:19
**expectation (1)**
24:13
**expected (2)**
58:2;79:23
**expecting (1)**
53:8
**expeditiously (1)**
54:24
**experience (1)**
74:3
**experienced (1)**
77:9
**explain (1)**
31:9
**explained (1)**
33:21
**explode (1)**
19:19
**exploding (1)**
16:22
**extend (4)**
22:10;49:25;62:1;
64:21
**extended (7)**
10:5;18:20;19:24;
22:19;61:21;72:25;
79:8
**extension (11)**
29:12;34:6;40:8,10;
42:24;58:10,24;61:16;
62:4;67:25;68:1
**extensions (1)**
61:9
**extensive (1)**
19:25
**extent (2)**
25:17;49:17
**extra (1)**
72:10
**extremely (1)**
9:15

**F**

**fact (18)**
9:4;11:1;13:14;22:6;
29:20;30:13;45:14;
53:12;55:25,25;60:1,
21;66:14,23;69:6;
72:25;80:8;81:21
**fair (5)**
35:17,19;60:12;
72:11;77:6
**fairness (1)**
59:25
**faith (5)**
14:5;18:16;26:5;
48:25;69:7
**falling (2)**
15:1;16:22
**familiar (1)**
74:8
**familiarity (1)**
74:3
**family (5)**
9:18;15:4,13,16;
29:16
**far (5)**
17:8;21:22;22:2;
50:5;81:4
**faulting (4)**
22:21;43:14;70:18;
73:25
**favored (1)**
78:19
**FBT (1)**
13:4
**February (11)**
36:1;37:12;38:9;
39:19;55:1;75:8;76:5,
7,23;78:12;80:20
**federal (1)**
28:25;29:4;50:24
**feeding (1)**
42:23
**feel (2)**
15:9;17:20
**fees (2)**
25:15,16
**FEIST (12)**
6:22,22;8:4,7,14;
9:25;10:14;12:8,9;
14:16;19:7;26:20
**felony (1)**
12:22
**few (6)**
8:8;19:8;29:10;
46:10;49:25;66:8
**fiduciaries (1)**
54:13
**fifteen (1)**
43:13
**fifth (2)**
29:12;60:25
**fifty (1)**
43:11
**fight (1)**
74:16
**fighting (1)**
73:6
**figure (1)**
60:15
**file (26)**
10:19;11:3;13:23;
16:8;17:1,10,13;23:22;
38:9;39:4;48:23;50:18;
52:24;55:2;56:2;61:17;
62:1;64:7,16;65:16;
67:23;76:8,9,11,12;
77:6
**filed (30)**
8:19;13:10,15,23;
19:24;21:24;23:1;25:6,
8;29:11;30:4,11;34:11,
13;35:2,7;42:3,4;49:4,
25;60:25;61:16;62:5;
64:5;65:13;67:5,9;
69:6;76:24;80:20
**files (1)**
21:21
**filing (11)**
9:17;13:17;16:24;
29:8,22;30:10;36:23;
55:22;64:1;65:19;
71:20
**finality (1)**
78:23
**finalize (1)**
14:9
**finalized (1)**
13:9
**finalizing (2)**
13:2;14:9
**financial (1)**
29:17
**find (4)**
8:20;10:9;33:10;
80:14
**finding (1)**

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
89 of 99

13:22
**fine (6)**
34:1;35:9;40:15;
42:11;45:18;51:8
**fire (31)**
6:23;8:21,25;9:2,7,
14;11:18,18,21;12:15,
17,18,19;13:15;14:7,
25;16:10,10,13,18;
18:6,13,24;19:1,4,24;
22:5,9,23;74:9,14
**first (31)**
8:12,13;14:18;15:6,
8;16:19;17:18;22:19;
28:5;30:6;34:18;35:15,
19;40:17,20;43:2,9;
45:2,24;46:1,7,12;
47:8;49:15,17;64:14;
66:20,24;68:22;72:2,
20
**fish (1)**
59:6
**five (9)**
7:22,24;14:20;17:9;
18:4;49:14;52:16;65:6;
67:18
**fix (1)**
69:3
**fixes (2)**
55:22,24
**flaw (2)**
57:14;58:1
**flying (2)**
54:18;65:24
**focused (1)**
46:9
**foil (1)**
71:15
**folks (10)**
36:5;40:1;41:5,16;
45:12;70:7,18;72:15;
80:2;81:25
**follow (3)**
50:2,3;73:21
**following (1)**
81:4
**footnote (1)**
30:5
**forces (1)**
58:5
**foregoing (1)**
83:3
**forever (2)**
19:4,5
**forfeit (1)**
12:15
**forfeiture (1)**
12:14
**forget (3)**
16:20,23;33:19
**form (3)**
79:12;81:9,23
**formal (2)**

47:4;80:22
**fortunate (1)**
15:9
**forty-five (3)**
21:10,11,23
**forward (7)**
10:17;11:4;19:21;
38:1;58:6;60:6;82:15
**found (3)**
17:11,14;20:7
**four (18)**
34:18,23;35:2,10,15,
23,23,25,25;43:2,17;
48:7,10;59:8;66:10;
68:25;69:1;72:4
**fours (1)**
75:8
**fourth (2)**
61:1;69:18
**fraction (2)**
10:24;11:24
**frame (3)**
56:16;57:8;78:25
**framed (1)**
36:3
**frankly (1)**
54:2
**Freeland (1)**
18:1
**friend (1)**
17:17
**friends (1)**
15:18
**front (1)**
57:4
**fruit (1)**
43:11
**full (12)**
10:22;11:22;17:22;
37:22;41:8,16;45:3;
53:15,15,16;58:24;
65:23
**fully (1)**
64:15
**fund (10)**
25:11;28:13,19,19;
29:14,15;30:18;31:1,2,
3
**funds (6)**
12:4;23:12;28:17;
33:13;59:14;60:22
**further (6)**
9:6;14:14;25:3;
45:16;62:20,22
**future (1)**
37:15
**FVT (3)**
12:15;13:11;14:9
**FVT's (2)**
12:24;14:11

**G**

**game (1)**
39:16
**gamesmanship (1)**
49:1
**gather (1)**
37:14
**gating (1)**
50:13
**generally (2)**
29:18;79:7
**generous (1)**
53:8
**gentlemen (1)**
62:19
**Gerald (1)**
29:11
**gets (5)**
30:25;37:11;38:6;
67:5;69:25
**given (10)**
8:22;9:15,18;26:9;
45:3;58:22;59:25;
65:20,21;69:19
**gives (4)**
26:9;78:1,23,23
**giving (4)**
42:22;68:3;71:25;
72:1
**glad (1)**
79:4
**global (4)**
40:12;42:17;43:3;
45:13
**goal (1)**
69:20
**goes (2)**
25:1;81:1
**Good (29)**
6:22;7:1,4,10,12;
14:5,22;15:8;16:1;
26:5;28:1,1,2,11,15;
44:12;48:25;65:21;
67:2,7,18,20;69:7,19;
70:12;73:12;78:2;
81:14;82:6
**goodbye (2)**
16:17,21
**gotcha (1)**
50:19
**govern (1)**
30:15
**government (1)**
24:25
**grabs (1)**
9:4
**grant (1)**
14:11,12
**granted (3)**
40:20;68:1,2
**granting (1)**
14:5
**gratitude (1)**
9:17

**Grimm (1)**
7:14
**group (2)**
35:19;68:5
**guess (12)**
34:25;35:25;44:24;
47:12;48:22;57:18;
62:17;66:10;70:25;
76:11;79:11,11
**guilty (1)**
12:22

**H**

**half (6)**
10:15;43:10;68:22;
69:16;72:3,4
**Hallen (1)**
7:2
**halted (1)**
53:11
**hand (4)**
27:16,21,23;63:19
**handle (2)**
62:13;66:14
**handling (1)**
33:22
**hanging (1)**
43:11
**happen (7)**
47:7;50:23,25;51:20;
62:3;78:24;79:23
**happened (4)**
24:22;38:10;59:15;
74:14
**happening (2)**
44:8;53:25
**happens (5)**
8:3;40:25;61:25;
76:7;78:12
**happy (2)**
34:9;66:23
**harm (1)**
68:21
**heads (2)**
29:22,22
**headset (2)**
32:19,23
**hear (10)**
7:9;8:13;18:6;31:11;
32:2,17;33:1,7;49:23;
62:17
**heard (7)**
18:1;25:23;33:20;
47:8,15;60:14;62:19
**hearing (7)**
26:15;30:1,20;32:2;
51:10;61:3;82:16
**hearings (1)**
9:16
**heavy (1)**
66:18
**help (4)**

9:15;33:10;63:18;
69:4
**helpful (1)**
64:9;67:4,10
**helps (1)**
78:8
**herein (2)**
12:21;14:12
**higher (2)**
19:19,19
**highly (1)**
60:22
**hijacked (1)**
54:1
**history (1)**
24:11
**hit (1)**
29:9
**hold (7)**
11:6;37:14;38:14;
44:9;47:24;52:8,24
**holdings (1)**
29:16
**home (6)**
9:18;12:16;14:1;
15:16;17:6,8
**homeowners' (1)**
17:6
**homes (2)**
17:16;20:3
**honestly (3)**
19:13;22:8;48:13
**Honor (93)**
6:10,22;7:1,4,12;8:7,
16;9:24;10:10;12:7,9;
14:22;16:1;18:2,11;
25:4;26:19,20;27:14,
15;28:1,11,15;32:11;
33:4,12,18;34:1,4,5;
35:4,10,20;36:3,18,25;
37:17,20,21;38:18;
39:13,25;40:7,13,22;
41:11,17,21;42:2,11,
19;43:1,21;44:17,24;
45:15,22,25;46:9;
48:14;49:22;51:6;52:7;
53:13;54:21;55:11;
56:8,15;57:25;60:18;
61:7,8;62:2,15,21,24;
64:22;67:14;69:20,23;
70:15,20,25;73:20;
75:16,20;79:10;80:16;
81:18;82:10,12,18,21
**Honorable (1)**
27:12
**hope (2)**
49:2;78:3
**Hopefully (1)**
26:13
**Hopes (1)**
78:3
**horrific (1)**
25:7

Min-U-Script®

eScribers, LLC
www.escribers.net

(6) fine - horrific

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
90 of 99

**hospitality (1)**
15:14
**huge (1)**
43:15
**huh (1)**
6:5
**hundre (1)**
24:14
**hundred (4)**
19:10;24:8;69:25;
70:10
**hundred-cent (1)**
60:23
**hundreds (2)**
10:16;11:9
**husband (2)**
15:2,14
**husband's (1)**
15:11
**hypothetical (2)**
39:2;52:22

**I**

**idea (1)**
70:2
**ideal (1)**
19:11
**identified (2)**
29:13;30:2
**identifies (1)**
29:8
**illusory (2)**
53:1;61:10
**immediately (1)**
31:20
**impact (3)**
11:12;14:7;39:19
**impacted (1)**
38:25
**implemented (1)**
72:5
**important (9)**
10:25;15:15;18:21;
30:13;41:10,11;47:15;
49:16;78:14
**improvement (1)**
72:6
**inclined (4)**
14:12;72:14;73:7;
74:19
**include (3)**
18:25;21:17;22:12
**including (4)**
22:14;28:18;43:25;
67:8
**income (1)**
14:24
**inconsistent (2)**
46:14;82:4
**incurred (2)**
15:9,20
**indefinitely (2)**

57:6;60:10
**independent (1)**
26:7
**indicated (1)**
7:8
**indicted (1)**
77:7
**indiscernible (4)**
59:3;70:15;71:12;
78:16
**individual (4)**
11:15;13:17;21:16;
26:4
**individually (1)**
76:1
**individuals (2)**
10:23;70:21
**indulge (1)**
52:9
**infirmed (1)**
9:10
**inform (1)**
55:2
**information (13)**
20:20,23;21:20,21;
41:23;43:4;44:1;45:4;
48:14,15,20;75:23,24
**informational (1)**
75:6
**informed (1)**
54:12
**initial (6)**
12:20;13:18,21;
16:24;18:14;56:18
**initially (2)**
9:17;10:2
**initiation (1)**
47:4
**injuries (1)**
17:3;26:6
**in-play (1)**
69:11
**inside (1)**
21:20
**insight (1)**
65:18
**insignificant (1)**
18:17
**insisted (1)**
74:15
**instance (2)**
11:7,18
**instincts (3)**
43:7,7;80:12
**instituted (1)**
20:12
**institutional (2)**
29:14;59:13
**institutions (1)**
29:24
**instruments (1)**
29:17
**insurance (3)**

12:18;17:6;65:9
**interests (2)**
12:10;31:9
**interference (3)**
47:23;65:17;76:10
**interfering (1)**
69:11
**internal (2)**
33:3;81:3
**interrupt (4)**
20:15;51:7;55:5;
64:24
**intervening (1)**
73:8;74:23;75:9
**into (12)**
8:25;9:6,9;12:11;
22:4;40:1,4;58:6;
63:16;70:23;72:4;
76:21
**investment (1)**
30:18
**invited (1)**
33:23
**involved (1)**
22:17
**involvement (1)**
29:19
**involves (2)**
30:21;66:17
**irrelevant (2)**
22:3;40:16
**issue (13)**
26:12;40:16,23;
49:11;50:14;52:7;
53:10;54:22;59:18;
65:16;69:21,23;74:8
**issued (3)**
13:8;28:23;79:23
**issuer (1)**
30:23
**issues (4)**
41:11;42:15;52:2;
54:23

**J**

**January (18)**
36:1,13,18,21;38:5,
10;39:3,16;46:24;47:1,
5,6;52:23;60:25;61:2;
69:2;76:9,23
**jerk (1)**
72:12
**jerked (1)**
72:11
**job (5)**
15:11,12;26:8,14;
69:18
**Joe (1)**
6:22
**join (3)**
27:16;46:4;71:8
**joinder (1)**

29:11
**joinders (1)**
34:11
**joke (1)**
66:13
**Joseph (1)**
13:23
**judge (3)**
30:17;31:4;71:21
**judges (1)**
29:9
**judgment (1)**
54:13
**judicial (3)**
14:8;74:10,15
**judiciary (1)**
28:25
**judiciary's (1)**
29:4
**Julie (1)**
28:11
**juncture (1)**
10:19
**Justine (1)**
7:5

**K**

**keep (3)**
40:15;57:6;69:1
**keeps (1)**
57:5
**Kennedy (1)**
29:11
**kept (1)**
15:3
**key (1)**
78:9
**kill (1)**
64:5
**kind (9)**
10:11;25:18;29:9;
41:7,18;49:3;50:19;
64:7;74:6
**kinds (1)**
49:7
**Kingstown (1)**
68:7
**knew (1)**
21:23
**Knight (2)**
83:3,8
**knowing (1)**
54:8
**known (3)**
29:24,25,25
**knows (3)**
34:5;39:9;48:16

**L**

**laptop (1)**
33:2

**large (2)**
24:4;59:13
**largely (1)**
46:2
**Larsen (1)**
9:5
**Larsen-Bernedo (1)**
7:5
**Larsen's (1)**
8:18
**last (5)**
9:3;17:12;49:10;
54:6;75:21
**late (12)**
8:19;18:20,25;21:4,
5;22:13,15;23:8;25:8,
9;26:16;30:3
**later (7)**
6:9;23:9;27:9;54:7;
70:16;72:8;78:13
**latest (1)**
49:20
**law (3)**
13:19;26:9;30:8
**lawyer (1)**
77:9
**lawyers (5)**
72:7,7;73:5;75:24;
76:19
**lax (1)**
29:2
**lay (1)**
74:17
**lead (1)**
46:3
**least (17)**
10:14;11:7;24:14;
35:24;43:16;47:6;
54:19;64:14;66:10;
71:10,22;74:18;75:14;
77:11,19;78:22;79:14
**leave (8)**
7:14;21:25;32:3;
63:24;70:21,22;72:18;
75:14
**leaves (1)**
65:23
**leaving (3)**
42:6;50:24;76:14
**left (3)**
9:8;15:5;44:9
**legislation (1)**
29:3
**legitimate (1)**
57:17
**lenses (1)**
15:5
**Lesa (1)**
6:23
**less (2)**
21:6;31:1
**Levin (13)**
6:2,4,12,18;7:3,4,4,

Min-U-Script®

eScribers, LLC
www.escribers.net

(7) hospitality - Levin

Case: 19-30088   Doc# 13786-3   Filed: 05/31/23   Entered: 05/31/23 14:14:57   Page
91 of 99

8:5,11,16;9:21,22;
10:14
**Lewis (1)**
28:16
**liberal (1)**
19:1
**likely (5)**
24:15,17;35:16;54:2;
67:14
**likewise (1)**
63:1
**limitations (1)**
81:4
**limited (2)**
25:11;74:9
**line (1)**
23:14
**lined (1)**
6:14
**list (4)**
6:7;18:3;29:9;46:12
**Listen (2)**
74:1;81:21
**listening (1)**
16:22
**lists (2)**
30:5,16
**literally (2)**
42:21;51:14
**litigated (1)**
41:6
**litigating (2)**
41:4;67:12
**litigation (1)**
66:18
**little (10)**
6:14;10:3;24:18;
29:2;31:16,18;43:21;
45:1;58:3;64:8
**live (1)**
17:15
**lived (1)**
16:18
**lives (1)**
13:25
**local (1)**
14:2
**locations (1)**
9:6
**lock (1)**
53:5
**log (7)**
26:23,25,25;27:9;
31:25,25;32:3
**login (1)**
20:20
**logs (1)**
9:4
**long (12)**
19:16;24:12;26:13;
30:5;44:7;51:18;52:25;
55:16;56:25;57:19;
65:8;73:6

**longer (3)**
24:11;54:4;76:9
**look (17)**
13:16;19:20;20:20;
21:2;30:3;36:6;37:17,
17,22;45:12;48:22;
59:5;71:1,4;74:6,7;
82:15
**looking (3)**
18:8;23:15;25:19
**looks (3)**
17:8;27:20;60:16
**Lord (4)**
34:14,17,18;35:11
**losses (1)**
15:20
**lost (7)**
14:24;15:10,10,12,
15;27:21;76:7
**lot (15)**
9:25;11:25;13:14;
15:9,10,12,17;20:6;
50:4;70:8;72:6,7,7,7;
74:4
**lots (1)**
47:21
**love (1)**
19:2
**loves (1)**
16:21
**low (1)**
43:11
**lump (1)**
25:15

## M

**mail (1)**
20:4
**mailed (1)**
23:8
**majority (3)**
34:11;43:4,25
**makes (3)**
29:20;49:7;66:7
**making (11)**
11:17;46:15,18,19;
47:1;54:25;68:2,3;
72:21;79:25;81:25
**mansion (1)**
31:4
**many (8)**
15:10;19:2,16;47:20,
21;61:5;63:14,15
**March (1)**
36:1
**market (1)**
59:23
**match (1)**
43:23
**math (2)**
72:4;73:4
**matter (15)**

12:16;14:13;20:9;
21:19;25:8;26:12;27:5,
13;30:8,20;31:6;33:21;
36:24;37:3;78:6
**matters (3)**
40:12;62:11,12
**maximize (1)**
25:19
**may (16)**
13:7;17:4;39:23;
43:8;47:21;49:23;
56:15,23,24;64:5,25;
65:3,19;67:14,20,20
**maybe (18)**
31:24;32:4;33:1;
36:13;40:20;43:8;
57:18,20;64:10;66:7,
19;68:12;69:3,7,8;
72:1;77:20,22
**mean (44)**
8:9;11:11,13;19:18;
20:16;22:16;23:6;
30:18;31:25;37:16;
39:11,25;40:16;43:20;
48:6,16;49:5;50:24;
51:7,24;53:12;57:17,
22;58:15;59:4,7,9;
61:16,18,22;62:2;64:2,
10;67:8;68:14,15;
69:16;73:16,25;74:12;
75:18;77:5;81:21,22
**means (3)**
35:21;39:5;61:21
**media (5)**
14:3;20:1,1,7,7
**mediate (1)**
51:2
**mediated (1)**
55:19
**mediation (32)**
40:12;45:4,6,11;
46:23,25;55:13,19;
56:2,7,12,20,20,23,24;
57:8,9,11,21;58:15,16;
63:10;69:14;72:19;
75:1,1;77:19;79:2,6;
81:2,2,5
**mediations (1)**
64:8
**mediator (2)**
45:6;76:18
**medical (1)**
9:5
**meet (1)**
7:20
**meeting (1)**
77:15
**member (3)**
9:5;21:18;29:1
**members (1)**
14:3
**mentioned (2)**
8:24;22:12

**merits (4)**
50:21,21,22;68:13
**mic (3)**
28:20;33:1;60:16
**micromanage (1)**
47:11
**microphone (7)**
28:7,21;31:23;32:18,
20;33:2,3
**microphones (1)**
6:18
**middle (1)**
56:21
**mid-February (1)**
59:1
**midnight (1)**
16:17
**midway (1)**
16:24
**might (13)**
24:13;28:22;30:9;
32:20;48:1,5;50:25;
54:7;57:8;58:10;61:19;
71:2;72:13
**millions (1)**
66:17
**mind (2)**
18:8;75:22
**minds (1)**
77:15
**minimal (1)**
9:11
**minimum (3)**
50:10;52:15,16
**minor (2)**
13:24;50:4
**minute (2)**
14:20;45:19
**minutes (3)**
7:22,24,25;8:2,8;
33:25;45:1;66:8
**misleading (1)**
43:21
**missed (2)**
12:20;13:21
**missing (2)**
42:21;56:16
**mixed (1)**
64:19
**modeling (2)**
21:12;24:3
**modified (2)**
58:14;77:19
**moment (8)**
6:19;24:14;46:3;
48:4;52:9;64:24,25;
71:10
**money (16)**
9:4;11:5,7,25;14:25;
15:12,12;21:4;25:17;
65:9,12,14,21;67:18,
20;71:17
**monies (1)**

12:2
**Montali (1)**
27:13
**month (10)**
15:15;36:15;39:7;
47:8;49:21;51:11;
61:23;62:6;68:22,22
**monthly (1)**
42:22
**months (20)**
8:19;9:3;12:19;13:4;
29:1;34:18;35:15;39:7;
43:2,17;49:14;50:2,18;
51:14;52:15,16;54:5;
65:6;69:13;71:22
**Moon (9)**
7:1,1;8:4,13;9:23,24;
11:16;12:7;21:3
**more (13)**
8:25;11:20;16:6,7;
20:5;24:23;30:19;31:1;
45:10;69:4;72:14;74:4;
79:22
**Morgan (1)**
28:16
**morning (11)**
6:22;7:1,4,10,12;
14:22;16:1;28:1,2,11,
15
**mortgage (1)**
15:13
**most (8)**
11:5,8,16;12:2;
23:16;41:10;46:5;
61:20
**mostly (1)**
13:15
**mother (2)**
16:17,20
**motion (24)**
29:12;35:18;38:9;
39:19;45:13;47:5;
48:23;49:24;52:1,12;
58:2,7,13;61:22;67:9,
23,24;74:17,23;75:9,
13;76:5;79:7;80:22
**motions (11)**
8:12;12:11;13:1,10;
14:4,5,12,13;25:23;
26:16;40:8
**mountain (1)**
16:18
**movants (6)**
7:2;10:4,15;14:10,
15;18:16
**move (3)**
11:4;58:5;60:5
**movement (1)**
36:14
**moving (1)**
15:3
**much (12)**
8:16;11:1;18:12;

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
92 of 99

19:20;24:5,23;29:19;
45:14;50:10;58:6;
62:24;75:2
**multiple (1)**
17:12
**Murphy (23)**
27:18;28:5,9,11,11;
31:11;32:9;33:22;
34:24;35:6;46:4;48:18;
60:14;62:17,18,22,23,
24;63:22;79:14;82:9,
10,21
**Murphy's (1)**
34:14
**must (2)**
75:1,1
**muted (4)**
31:23,23;33:2;60:16
**muting (1)**
32:20
**mutual (3)**
31:1,2,3
**myself (5)**
21:17;30:8;31:7,17;
33:21

**N**

**naïve (1)**
24:21
**name (6)**
6:7;7:9,10,12;30:2;
66:16
**names (3)**
6:13;27:19;30:16
**name's (1)**
28:15
**Napa (1)**
15:6
**nations (1)**
78:19
**nature (1)**
30:18
**necessarily (2)**
20:3;52:5
**need (19)**
6:17;7:9;8:8,15;
13:2;14:19;18:12;
22:10;27:22,24;30:7;
31:6;46:8;49:18;54:13;
55:4;56:20;61:11;
80:19
**needed (3)**
15:17;20:5;50:3
**needs (5)**
9:13;41:6;42:16;
47:25;60:2
**neglect (1)**
13:13
**negotiate (1)**
77:9
**negotiated (1)**
74:22

**negotiations (4)**
22:17;45:10;63:9,10
**neither (1)**
77:25
**New (5)**
28:2;29:7;47:15;
52:1;74:25
**next (7)**
35:24,25;43:17;59:7;
62:5,11;64:5
**night (2)**
16:10,13
**ninety (3)**
20:11,16,16
**nobody's (1)**
41:4
**nominate (1)**
79:12
**non-class (1)**
79:8
**none (1)**
10:13
**nonissue (1)**
31:14
**nonopposition (1)**
25:25
**nonsubstantive (1)**
50:11
**nor (3)**
26:8;62:9;63:2
**normal (2)**
20:2;73:19
**note (4)**
11:1;17:1;18:21;
60:21
**noted (2)**
17:12;68:8
**notice (10)**
10:5;14:2;19:20,25;
29:23;37:19;41:9,16;
51:25;52:13
**notices (4)**
11:6;20:4;23:20;
29:18
**noting (1)**
10:17
**November (5)**
12:24;29:9;30:4;
54:6,7
**number (6)**
8:13;25:10;34:8;
38:21;42:13;74:9
**numbers (2)**
19:19;71:17

**O**

**object (5)**
50:21,22;56:13;
58:17;73:18
**objected (2)**
59:6;64:13
**objecting (1)**

59:6
**objection (31)**
11:1;13:11;14:11;
26:16;29:12;34:6,13,
19;42:14;43:5;48:5,9;
49:25;50:12;52:4;56:2,
5;58:7,24;66:16;67:13;
68:15;72:13,20;75:5;
79:5,24;80:1,5,9,19
**objections (37)**
8:18;12:14;34:8,10;
35:2,7;40:9,10;47:19,
22;48:1;49:12;50:11;
51:3;52:4,5;54:2,8,18,
20;55:3,22;56:22;60:5;
62:5,10,14;65:19;
66:14;67:24;68:4,8;
76:1;78:10;79:25,25;
80:13
**objectors (6)**
30:3;35:14;43:8;
45:3;71:1;73:8
**objectors' (1)**
35:18
**obligated (1)**
31:16
**obligation (1)**
56:13
**obligations (1)**
14:6
**obvious (1)**
30:6
**obviously (10)**
11:25;36:8;37:20;
40:8;43:13,22;50:21;
55:12;70:6;73:21
**occasion (1)**
30:3
**occasioned (1)**
59:14
**occur (1)**
15:17
**occurs (1)**
81:3
**o'clock (2)**
26:22;27:1
**October (7)**
13:10,13;14:14;
16:25;19:23;23:2,3
**off (17)**
7:15,17;18:7;26:23,
23;27:9;39:5;43:11;
64:5,16;72:2,16;76:17,
23;80:24,25;81:15
**offer (72)**
34:16;35:24;38:10;
39:3,24;43:24;44:10;
48:3;49:5,13;50:14,20,
23;52:1,3,22,24;53:1,2,
3,10,23;54:25;55:9,13,
13,15;56:1;57:5,22;
58:16;60:5;63:2,22;
64:3,6,14,16;65:1,4;

66:4;69:5,7,7,25;71:14,
23;72:9,16,17;73:12,
12,15,17;74:22,22,24;
75:11,12;76:15,17,22;
77:6,12,13,14;78:11,
25;79:1;80:21,21,23
**offer/counter (1)**
75:12
**offer/counteroffer (1)**
58:16
**offered (1)**
68:6
**offering (2)**
46:13;63:23
**offers (30)**
35:13,14;36:14;
38:13;43:1,16;44:21;
46:10,15,20;47:2,8,17;
51:14;53:8,22,23;
56:18;63:14;68:3,6;
70:8,21,22;73:7;75:7,
9;76:3,4;77:25
**offer's (1)**
39:5
**office (2)**
8:21;9:1
**offices (1)**
13:19
**oil (3)**
74:14;77:11;81:22
**old (4)**
14:25;15:2;16:11,14
**omnibus (20)**
42:14,16;43:5;47:19,
22,25;48:5,9;49:7,10;
52:5;66:16;75:5;79:24,
25,25;80:1,9,12,19
**omnibus-related (1)**
75:25
**once (7)**
15:18;17:25;37:6,25;
56:3;71:9;80:23
**one (32)**
6:1;8:10,11;10:24;
11:25;18:21;25:18;
30:7;34:14,20,25;35:7,
8,12;36:1;37:2;38:8;
40:18;42:19;46:12;
49:10;56:15;63:6,18;
64:24;67:2,21;70:13;
73:12;75:3;81:23;82:1
**only (24)**
8:7,8;10:15;12:21;
13:25;20:19;25:1,20;
30:12;31:18;43:12;
46:15,19;47:17;52:5;
54:4,22;57:20;58:4;
62:13;63:4;66:7;69:16;
76:13
**open (6)**
19:4;53:3;57:3;65:6;
66:3,4
**open-ended (1)**

49:13
**opening (1)**
33:24
**operative (1)**
75:13
**opinion (1)**
39:21
**opponents (1)**
74:1
**opportunity (6)**
8:1;26:9;41:9,14;
62:6;77:3
**opposed (2)**
15:9;41:3
**opposition (2)**
51:21;64:12
**opt (12)**
36:7,7;37:5,24;
38:14,17;39:6;41:9;
70:7;71:10;73:14;77:4
**opted (2)**
36:9;37:25
**option (3)**
13:22;14:24;15:18
**options (1)**
13:21
**opt-out (1)**
37:7
**opts (2)**
39:6,8
**order (11)**
28:23;33:20,23;
41:23;79:13;80:10;
81:9,12,16,23;82:16
**ordering (1)**
78:21
**orders (1)**
81:19
**Oregon (8)**
28:17,18,18;34:25;
50:17,17;76:23;80:18
**Oregon's (1)**
60:21
**organized (1)**
73:21
**original (2)**
22:23;58:13
**originally (3)**
8:20;34:7;42:2
**others (4)**
29:1;34:24;59:23;
66:12
**Otherwise (5)**
7:22;46:2;53:25;
68:20;77:2;78:13
**ought (2)**
50:10;71:22
**out (49)**
15:3;17:11,14,17;
19:11;20:7;23:2;26:25;
31:25;32:3;34:17;36:7,
7,9,15,17,20;37:5,12,
24,25;38:14,17,24;

Min-U-Script®

eScribers, LLC
www.escribers.net

(9) multiple - out

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
93 of 99

39:6,6,8;41:9;44:19;
45:4;47:9;50:11;51:23;
53:9;58:10;60:15;61:9;
67:15;69:3;70:7,8,22;
71:10;72:23;73:2,14;
74:6,17;77:4
**outcome (1)**
31:13
**outcomes (1)**
20:19
**outlined (1)**
56:17
**outright (1)**
67:23
**outset (1)**
40:17
**outside (1)**
58:5
**outstanding (4)**
53:24;54:23;56:25,
25
**over (4)**
12:25;24:17;62:11,
12
**overall (1)**
22:12
**overhaul (1)**
29:4
**owed (1)**
11:8
**own (5)**
7:23;8:6;12:17;13:3;
81:3
**owned (1)**
30:23

**P**

**page (2)**
46:17;80:8
**paid (11)**
11:8;19:10;23:20;
25:1,15;53:14;59:20,
21;70:10;72:7;73:2
**paltry (2)**
53:15;65:12
**pandemic (1)**
17:4
**paper (1)**
20:2
**papers (4)**
8:14,17;27:18;47:21
**Parada (3)**
6:3;18:1;26:22
**Paradise (2)**
9:19;13:25
**pared (1)**
34:7
**parents (3)**
17:5,7,17
**part (12)**
21:15;23:16;24:4;
34:15;40:12;43:5;46:8;

47:13;61:20;70:1;
75:21;79:24
**partake (1)**
77:3
**participate (2)**
79:14;81:10
**participating (1)**
27:7
**particular (1)**
80:9
**particularly (1)**
29:24
**parties (12)**
6:13,21;7:16;12:11;
27:2;31:10;46:15,20;
47:17;55:16;65:13;
68:11
**party (3)**
29:8,20;60:2
**pass (3)**
54:15;77:21,22
**passed (2)**
51:18;60:1
**past (4)**
9:2;40:8,10;45:1
**patients (1)**
9:7
**Pause (1)**
32:5
**paused (1)**
42:17
**pausing (1)**
71:11
**pay (6)**
15:13,13;19:2;21:13;
22:14;23:13
**payment (2)**
19:12;65:23
**payments (1)**
15:14
**pending (3)**
13:6;14:10;53:11
**pension (5)**
33:13,15,16;59:14;
60:22
**people (32)**
7:17;15:10;19:2,9,
14,14,16;20:3,6,6,8,19;
23:8;24:3;25:6;29:18;
37:5,8,22;38:20,25;
41:8;42:8,22;44:13;
52:19;67:10;70:7,9;
74:10;76:20;80:13
**people's (2)**
21:2;25:6
**Per (3)**
12:24;36:14;50:13
**PERA (1)**
41:12
**percent (13)**
10:24;11:25;19:10;
20:11,16,16;21:11,22,
23;24:8,14;43:12,13

**percentage (4)**
11:6,24;21:9;24:1
**perhaps (1)**
57:14
**period (11)**
28:8;40:10;42:24;
44:7;52:14,25;55:4;
56:23;57:3,6;75:15
**periodic (1)**
21:21
**periodically (1)**
63:8
**permanent (1)**
17:3
**permanently (2)**
17:2;39:8
**permit (1)**
10:18
**permitted (1)**
11:3
**permitting (1)**
10:12
**person (3)**
23:1;38:14,15
**persons (1)**
18:4
**perspective (1)**
78:9
**persuaded (1)**
70:13
**PG&E (3)**
27:5,13;76:22
**phases (1)**
22:18
**Philip (1)**
33:12
**Phillips (1)**
7:2
**Phoenix (1)**
83:12
**phone (4)**
16:16;39:10;49:19;
82:15
**phonetic (1)**
34:14
**physically (1)**
9:10
**pick (1)**
37:10
**Pickett (2)**
12:18;13:24
**Picketts (3)**
6:23;12:16;13:18
**picking (2)**
43:11;68:10
**piece (3)**
47:13;49:10,11;
56:16,21
**pieces (1)**
80:9
**piles (1)**
25:18
**Pillsbury (1)**

33:13
**place (9)**
22:22;29:6;43:24;
44:12;56:4;57:15;
59:19;60:10;66:25
**plan (7)**
8:2,6;22:6;33:16;
53:14;59:20,24
**plate (1)**
49:4
**players (1)**
73:5
**plays (1)**
38:24
**pleadings (1)**
13:12
**please (2)**
7:7;8:15
**pleasure (1)**
26:23
**pled (1)**
12:22
**plenty (1)**
13:9
**plus (1)**
70:10
**PM (1)**
82:23
**point (33)**
9:7;10:10;18:14,21;
19:3,12;20:10,11,14;
22:2,4;23:10,11,14;
24:21;25:20;30:14;
36:8;37:10;40:16;
41:11;42:9,11,19;43:9,
19;44:12;45:8;49:10;
61:9,11;72:2;80:16
**pointed (2)**
61:8;67:15
**points (6)**
9:25;10:1;44:25;
45:2;49:15;69:20
**portion (2)**
33:24;70:4
**position (5)**
18:15;21:7;25:22;
45:9;73:21
**possible (4)**
15:3;19:2,2;28:23
**postings (1)**
20:1
**posture (1)**
10:9
**potential (2)**
30:16;78:14
**potentially (2)**
11:2;54:4
**powers (1)**
12:10
**practical (4)**
37:2;39:13;69:23;
73:25
**practically (1)**

62:3
**preceded (1)**
80:21
**precise (1)**
8:15
**predicated (2)**
51:6,9
**preempted (2)**
73:8;75:13
**preempting (1)**
72:17
**prejudice (4)**
11:2;14:6;22:10;
60:3
**prejudiced (1)**
22:3
**preliminary (1)**
52:13
**premature (2)**
41:14,19
**prepared (1)**
35:13
**preparing (1)**
30:1
**presence (1)**
32:9
**present (2)**
31:12;36:5
**presentation (3)**
14:21;26:14;27:10
**presented (4)**
7:16;44:8;75:10,11
**presiding (1)**
27:13
**presumably (3)**
39:8;65:10;67:6
**presume (3)**
31:25;64:1;74:8
**presuming (1)**
27:8
**pre-supposes (1)**
71:1
**pretty (5)**
17:20,20;19:9;44:19;
65:6
**prevent (1)**
12:14
**Prime (1)**
23:8
**principal (1)**
82:5
**prior (4)**
13:9,10,13;14:9
**prioritize (3)**
35:13,18;68:6
**prioritized (1)**
68:5
**prioritizing (1)**
68:20
**privilege (1)**
45:11
**pro (4)**
6:12;20:22;21:5;

Min-U-Script®

eScribers, LLC
www.escribers.net

(10) outcome - pro

Page
94 of 99

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57

27:3
**probably (12)**
    8:12;31:3,4;45:1;
    46:5;48:16;57:23;
    62:10;65:12;72:23;
    77:7;82:3
**problem (5)**
    16:4;24:23;32:4,8,18
**procedure (13)**
    43:10;51:1;56:11;
    66:24;70:14,17;74:5;
    75:12;77:18;78:18,19;
    79:6;81:19
**procedures (23)**
    34:16;35:15;42:14;
    44:18;53:3;55:1,7,10,
    12,22;56:3,4,10,12;
    58:7;59:17;60:9,9;
    68:3;76:4;79:24;80:7,9
**proceed (2)**
    9:20;54:24
**proceeding (2)**
    10:1;22:23
**proceedings (3)**
    14:8;82:23;83:4
**process (47)**
    10:6;12:4;13:2;14:4;
    19:9;22:22;37:7,14;
    42:23;43:24;46:15,17,
    22;47:1,24;52:14;
    53:11,12,25;54:1,3,4;
    55:13,13,13,16;56:1,2,
    17,18,21;58:1,4;60:8;
    62:8;63:14,14,16,17;
    66:9;69:14;72:6;74:22;
    78:15;79:3;81:2,2
**processes (2)**
    56:1;64:19
**processing (1)**
    13:4
**product (1)**
    79:5
**professional (2)**
    25:14,16
**professionals (1)**
    9:8
**programs (1)**
    19:25
**progress (2)**
    20:13;58:3
**prohibiting (1)**
    30:17
**projection (1)**
    24:7
**promise (1)**
    49:13
**prompt (1)**
    53:9
**prompted (1)**
    64:13
**promptly (1)**
    44:14
**prongs (1)**

40:13
**proof (8)**
    8:18;12:20;13:18,24;
    17:13;18:18;23:22;
    42:9
**proofs (1)**
    65:16
**propane (1)**
    16:22
**property (1)**
    17:16
**prophylactic (3)**
    62:5,10;67:24
**proposal (7)**
    35:24;36:4;37:11;
    38:6;43:17;47:6;52:11
**propose (1)**
    44:15
**proposed (2)**
    52:8;81:12
**proposing (4)**
    36:16;42:25;43:1;
    58:22
**proposition (1)**
    39:24
**protection (1)**
    58:22
**provide (4)**
    48:18;60:4;65:14;
    80:19
**provided (13)**
    11:21;37:4;44:6;
    47:18;48:11,17,20;
    49:13,22;50:5;60:2,3;
    80:18
**provides (1)**
    35:17
**providing (3)**
    9:8;11:17;50:6
**public (11)**
    13:3;20:18,25;21:1,
    17,18,19,22;23:24;
    24:7;28:18
**Publicly (2)**
    21:1;23:23
**published (1)**
    23:24
**purpose (1)**
    12:13
**purposes (2)**
    40:25;41:4
**pursuant (4)**
    34:16;35:14;54:25;
    68:3
**pushing (1)**
    66:21
**put (23)**
    6:18;14:19;26:21;
    27:23,24;30:16;38:12,
    12;42:11;43:24;44:18;
    47:24;54:14;56:4;
    57:15;58:10;74:6;75:1;
    77:11,12,19;80:20,23

puts (2)
    37:13;76:22
**putting (1)**
    76:11

## Q

**quarterly (1)**
    64:7
**questionnaires (1)**
    20:24
**quick (4)**
    9:25;17:15;19:9;
    60:6
**quickly (7)**
    13:23;15:3;49:10;
    53:5,7,9;75:22
**quite (5)**
    8:19;11:20;48:13;
    51:21;78:9
**quote (1)**
    51:14

## R

**racing (1)**
    16:18
**raise (2)**
    27:16;63:4
**raised (1)**
    43:9
**rata (1)**
    21:5
**rather (4)**
    10:4;52:14;55:2;
    78:21
**Ray (1)**
    13:23
**reach (2)**
    20:6,8
**read (1)**
    8:14
**reading (1)**
    21:23
**real (1)**
    71:16
**realize (2)**
    58:3;64:18
**really (20)**
    7:16;10:11,13;11:6;
    16:2;22:17;40:9,23;
    47:7;53:2,25;54:6,9;
    60:3;62:9;65:1,24;
    67:19;69:23;77:13
**reappointment (1)**
    78:7
**rear-end (1)**
    17:2
**reason (16)**
    8:19;10:25;13:12;
    14:8;17:9;24:15;25:10,
    23;26:7;30:10;37:2;
    38:17;53:22;59:11;

60:3;67:7
**reasonable (4)**
    18:19;22:14;57:23;
    74:17
**reasonably (1)**
    24:4
**reasons (5)**
    9:17;13:16;23:16;
    67:2,15
**rebuttal (2)**
    33:25;45:17
**receive (3)**
    12:25;14:2,24
**received (2)**
    16:16;63:1
**Recess (1)**
    27:11
**recognize (2)**
    27:19;76:19
**recognizing (1)**
    20:3
**recommencing (1)**
    63:17
**reconcile (1)**
    23:2
**reconsideration (1)**
    13:7
**reconsiderations (1)**
    13:6
**record (5)**
    6:13;8:11;18:12;
    21:19;83:4
**recoup (1)**
    15:20
**recovery (3)**
    24:8,14;78:15
**recuse (2)**
    31:17;33:21
**recycling (1)**
    57:5
**reduce (4)**
    22:11;37:6;38:21;
    79:12
**referenced (1)**
    47:20
**refine (1)**
    38:2
**regard (2)**
    34:9;48:4
**regardless (3)**
    35:22;47:25;66:4
**rehabilitate (1)**
    12:13
**reinstated (1)**
    53:14
**reject (1)**
    44:15
**rejected (2)**
    50:23;74:24
**rejoins (1)**
    32:16
**relate (1)**
    76:1

**related (1)**
    11:17
**relates (1)**
    10:22
**relating (5)**
    14:6;41:12,23;75:25;
    80:8
**relative (1)**
    11:13
**relatively (2)**
    12:1;13:23
**relevant (5)**
    12:12;13:2;22:8;
    48:21;60:22
**relied (1)**
    13:22
**relief (1)**
    79:4
**reluctantly (1)**
    19:18
**remaining (4)**
    35:13;42:7;43:2;
    63:19
**Remember (4)**
    50:21;59:11;66:19,
    19
**remind (1)**
    55:6
**reopen (1)**
    37:15
**reorganized (3)**
    28:3;34:5;40:10
**repeat (1)**
    75:22
**repeatedly (1)**
    9:2
**reply (9)**
    34:12,13,18;35:17;
    36:4;45:4,7;46:14;68:8
**report (9)**
    12:24;21:21;32:13;
    34:9;43:15;48:14;63:8,
    12;64:7
**reporting (1)**
    34:20
**reports (1)**
    21:24
**represent (3)**
    10:4,15;60:22
**representations (1)**
    51:10
**represented (4)**
    44:2;48:11;74:20;
    75:24
**representing (2)**
    10:16;31:11
**represents (1)**
    9:1
**request (7)**
    13:16;14:11,13,18;
    63:7;75:6,23
**requested (1)**
    79:9

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
95 of 99

requests (2)
  63:2;75:25
require (1)
  63:7
required (5)
  21:4;23:19;49:19,22;
  76:3
reserve (2)
  33:25;45:16
reserved (1)
  47:20
resisted (1)
  66:19
resolution (18)
  32:10;34:8,15,20;
  35:11,17,20;37:14;
  41:7;53:11;55:21;60:6;
  66:9;69:12;72:6;75:12;
  77:9,18
resolutions (2)
  32:13;34:12
resolve (3)
  40:11;41:8;61:12
resolved (12)
  32:8;34:10,13;38:13;
  40:2;42:5,7;43:12;
  49:13;73:1,3;78:7
resources (1)
  60:24
respect (7)
  9:3,8,14;22:5;64:21;
  68:17;69:21
respective (1)
  76:3
respond (11)
  18:10;39:4;46:8;
  52:20,23;53:4;55:8,14,
  15;64:6;77:14
responded (2)
  37:12;38:8
response (2)
  35:12;46:11
responsibility (1)
  22:24
Responsible (1)
  49:6
rest (2)
  16:23;45:16
resting (1)
  31:4
restricted (1)
  24:18
result (2)
  40:13;78:2
Retirement (1)
  28:19
retool (1)
  66:9
reverse (2)
  39:15;76:16
review (4)
  7:19;26:11;74:10,15
reviewed (2)

8:17;26:11
rhetorical (1)
  22:25
Richard (2)
  28:2;34:4
ridiculous (2)
  77:13,14
right (68)
  6:16;7:14;16:4;
  17:22,25;18:7;24:8;
  27:24;28:4;32:24;33:9,
  19;36:1,22;37:16,18;
  39:17,20,25;41:14,16,
  20,24;43:24;44:17,22;
  46:7,23;48:7,15;50:12;
  51:4;52:16;53:1,4,15;
  54:13;55:8,20,23;57:1,
  5;58:17,18;61:17,23;
  62:18;64:4;65:2,5,14;
  66:16;67:5,13;68:16;
  69:11;70:7;72:23;
  73:16;74:15;75:19,21;
  76:25;77:4,16;78:3;
  80:11;81:17
rights (1)
  68:11
risks (2)
  59:22,23
roll (3)
  6:15;69:2;73:14
rolling (1)
  36:14
rollout (2)
  36:23,24
Ronon (1)
  28:12
round (1)
  26:16
RSA (1)
  18:23
Rudnick (1)
  18:13
Rule (4)
  50:24;59:8;76:16;
  81:25
ruling (1)
  12:11
run (2)
  39:6;56:24
running (1)
  57:6

S

safe (2)
  15:16,16
same (9)
  6:18;10:1;17:21;
  21:7,14;31:10;74:12;
  80:8;82:1
satisfactory (1)
  77:25
satisfied (3)

14:7;31:6;82:7
saw (2)
  30:1;37:25
saying (20)
  19:7;20:6;22:21;
  32:18;40:15;43:14;
  46:19,25;50:15;58:21;
  59:5;68:21;69:1;70:18;
  72:8;73:6;74:13;75:22;
  76:8,24
schedule (2)
  7:19;35:16
School (2)
  28:19;33:10
se (4)
  6:13;20:22;27:3;
  50:13
second (8)
  6:1;8:10;22:19;
  40:18,21;48:3;52:10;
  67:2
secondly (2)
  30:7;49:2
section (1)
  22:6
securities (8)
  34:16;35:15;40:12;
  42:3;44:18;53:16;
  63:14;66:24
seeing (1)
  82:16
seeking (1)
  34:6
seem (3)
  60:11;72:11;78:22
seemingly (1)
  60:10
seems (9)
  50:19;57:20;64:8,12;
  67:4;69:10;74:16;75:4;
  76:14
self-imposed (1)
  22:20
sell (1)
  24:19
send (1)
  33:9
sense (4)
  21:18;40:19;49:8;
  66:7
sent (2)
  19:11;39:2
separate (4)
  55:18;59:8;66:24;
  81:16
September (3)
  19:17;23:1,3
seriously (1)
  26:10
serves (1)
  49:3
service (1)
  9:18

session (1)
  27:12
set (7)
  19:17;21:3;22:18;
  23:10;34:17;44:19;
  45:4
sets (1)
  71:8
settle (12)
  37:6;38:20,21;39:22;
  50:20;51:2;53:9;61:17;
  62:7;68:12;71:16;
  72:23
settled (8)
  37:3;40:13;68:7,15;
  69:24;76:20,21;78:18
settlement (63)
  35:24;36:4;37:4,6,
  18,18,24;38:6,13,18;
  39:8;40:2,24,25;41:13,
  15,15;42:18;43:3;
  45:13;46:16,21;49:5;
  52:1,1,8,12,13;53:2;
  54:10,15,25;55:6,9,21;
  59:17;60:4,6,11;62:8;
  63:11;65:3,4,8,15;
  66:5;67:19;68:2;69:22;
  70:3,4,6,8,9,24;71:2,9;
  76:4,6,15,16;77:3;
  78:12
settlements (5)
  18:22;24:25;25:2;
  40:1;61:18
settling (1)
  70:11
seven (1)
  42:9
seventy (1)
  34:10
several (5)
  9:3;10:15;12:19;
  25:23;52:15
shame (1)
  9:19
share (2)
  8:5,7
shares (1)
  65:22
shoes (1)
  22:5
short (3)
  30:8;69:3;71:12
shorter (1)
  50:10
shortly (1)
  13:18
short-term (1)
  29:14
shows (1)
  29:8
shut (2)
  19:3,21;20:10;25:20
side (1)

62:7
sides (1)
  79:13
Sieger-Grimm (20)
  6:8,10,19;7:25;18:9,
  11,13;20:17,21;21:1,
  11;22:2;23:6;24:2,9,
  16,24;25:4;26:2,19
Sieger-Grimm's (1)
  26:4
sign (2)
  81:15,19
signed (1)
  18:23
silence (1)
  50:19
similarly (1)
  63:3
simple (1)
  9:11
simply (2)
  31:11;61:12
simultaneously (1)
  76:14
sit (1)
  69:11
sitting (2)
  54:6;67:22
situated (1)
  63:3
situation (2)
  8:20;32:10
six (5)
  39:7;52:16;54:5;
  69:12;71:22
sixty (8)
  56:8,11,11,22;57:4,
  13;58:16;81:5
sixty- (1)
  56:23
sixty-day (1)
  56:18
sixty-five (1)
  34:12
sixty-six (3)
  34:10,12;78:18
size (1)
  59:25
skeptical (1)
  67:3
Skott (11)
  6:16;7:7,12,13,23;
  15:25;16:1,5,14,16;
  17:23
sky (1)
  15:1
Slack (96)
  27:25;28:1,2;29:2,2;
  32:6,11,13;33:23;34:1,
  4,4,22;35:4,6,10;36:3,
  12,16,20,25;37:2,16;
  38:4,7,12,17,23;39:1,
  11,13,17,20,22,25;

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57

40:4,7,22;41:3;42:2;
43:18,20;44:4,17,24;
46:11,18;48:7,10,13;
50:10,20;51:23;52:22;
55:6,10,18,24;56:8,10,
16;58:13;61:18,25;
62:2,15;63:22,22;
66:13;68:6;69:19;
70:12,15,20;71:7;
73:20;74:2,8;75:16;
76:18;77:9,24;78:17;
79:10,12,15,17,20,22;
80:15;81:7,8,11,15,18;
82:18
**Slack's (2)**
30:1;48:23
**slate (1)**
72:3
**sleeping (1)**
12:18
**slightly (2)**
68:19;79:18
**slippery (1)**
66:11
**slope (1)**
66:11
**slot (1)**
18:10
**slow (1)**
6:14
**small (5)**
11:6,11,12,14;29:16
**social (2)**
20:1,7,7
**solution (2)**
73:25;74:5
**solutions (1)**
73:10
**solve (2)**
32:4,7
**somebody (3)**
57:20;81:24;82:3
**something's (1)**
78:24
**sometime (2)**
37:15;49:20
**somewhere (1)**
31:5
**soon (5)**
6:11;64:14;65:1;
67:9;82:16
**sooner (2)**
53:23;66:4
**sorry (4)**
16:12;31:15;51:7;
62:17
**sort (6)**
22:20,24;56:24;66:3;
68:10;78:19
**sought (2)**
13:19;34:7
**sound (1)**
16:20

**sounds (1)**
58:4
**space (1)**
7:18
**speak (3)**
8:1;16:5,5
**speaking (2)**
12:1;15:18
**specific (1)**
13:12
**specifically (3)**
29:14;56:3,10
**speculate (1)**
44:11
**splitting (1)**
7:21
**spoke (1)**
6:19
**springs (1)**
78:3
**squeaked (1)**
72:15
**squeaky (7)**
59:5,7,12;72:14;
74:13;77:11;81:22
**staff (1)**
22:17
**stages (1)**
63:13
**stand (3)**
26:16;55:4;63:15
**standing (1)**
67:22
**standpoint (1)**
39:13
**stands (1)**
9:12
**Starbucks (1)**
72:10
**start (21)**
6:20;8:10;27:14,25;
36:15,17,23;42:14;
44:14;46:15,19;47:14;
56:24;57:2,3,21;59:24;
69:13,14;70:9;79:2
**started (5)**
19:18;36:20;47:5,6;
56:4
**starting (2)**
17:5;62:11
**starts (1)**
58:16
**state (13)**
6:13;7:7;23:20;25:2;
26:15;28:6,17,18;
31:22;32:24,25;33:11;
76:22
**stated (2)**
17:7;50:16
**statement (2)**
26:5;53:16
**statements (2)**
13:3;60:21

**status (1)**
63:9
**statute (1)**
81:4
**stay (6)**
18:5;19:4;27:1;
56:25;66:4;69:5
**staying (1)**
15:4
**stepped (1)**
22:4
**Stevens (1)**
28:12
**stick (3)**
50:17;58:14;72:14
**still (21)**
10:24;11:24;12:3,25;
13:2,4,8;14:10;31:23;
32:3,14;42:13,16,20,
22,23;46:22;53:23;
58:14;59:6;63:11
**stock (6)**
24:5,13,17,19,22;
25:1
**stop (1)**
36:24
**Stradley (1)**
28:12
**straight (1)**
47:14
**Street (1)**
83:11
**stretch (1)**
68:24
**strict (1)**
45:11
**stricter (2)**
19:20;23:13
**strong (1)**
8:23
**stuck (1)**
7:18
**Stuff (2)**
73:17,18
**stumble (1)**
14:23
**subject (5)**
27:6;42:13;43:4;
47:19;75:5
**submission (1)**
30:1
**submit (1)**
20:23
**submitted (3)**
26:12,17;63:1
**subsequently (2)**
12:19,22
**substance (1)**
45:10
**substantial (2)**
58:23;59:13
**substantive (4)**
54:17;69:15;72:13,

19
**substantively (1)**
66:17
**suffer (1)**
11:2
**sufficient (2)**
12:3;25:9
**suggest (2)**
68:14;70:25
**suggesting (3)**
41:5;51:22,22
**suggestion (1)**
57:23
**Suite (1)**
83:11
**sum (2)**
25:15;65:12
**superseded (1)**
58:15
**supported (1)**
66:20
**suppose (2)**
32:7;68:25
**supposed (4)**
48:18;53:3,14;65:21
**sure (11)**
10:2;18:14;21:13;
24:4;29:17;41:22;
46:13;48:2;64:23;
75:21;80:7
**surfaced (1)**
51:21
**surprised (3)**
51:19,21;58:3
**surrounding (1)**
12:12
**Susan (2)**
18:12;28:16
**suspect (2)**
53:7;61:19
**suspend (1)**
59:16
**suspended (1)**
60:10
**system (3)**
29:5,6;57:14

**T**

**table (21)**
38:10;39:5;54:14;
57:16;64:16;69:5,5;
71:23;72:16,16;73:11;
76:17,22,24;77:12;
78:25;79:5;80:21,23,
24,25
**tactic (1)**
44:12
**taker (1)**
73:5
**talk (3)**
32:2;48:4;79:25;
80:4

**talked (7)**
37:20;40:14;46:1;
56:17,22;78:17;81:5
**talking (5)**
11:13;57:3;69:2;
80:3,5
**tanks (1)**
16:22
**target (1)**
48:8
**targeted (1)**
43:16
**Taryn (1)**
7:13
**technical (1)**
28:8
**teenager (1)**
33:10
**telling (1)**
32:8
**ten (3)**
33:25;45:1,19
**tentative (1)**
74:7
**term (3)**
69:3,17,18
**termination (2)**
56:11,12
**terms (4)**
38:13;47:14;78:13,
16
**terrified (1)**
16:23
**Thanks (2)**
45:25;82:14
**that'd (1)**
34:1
**that'll (3)**
32:4;51:24;78:15
**thereafter (2)**
13:23;54:24
**therefore (3)**
15:14;49:4;72:22
**thinking (1)**
74:7
**third (3)**
19:22;22:20;40:19;
61:2;67:3;73:16
**thirty-five (2)**
53:4;55:8,14;63:24
**though (10)**
25:7;30:9,15;32:24;
39:15;43:21;45:12;
55:23;69:6;77:2
**thought (13)**
20:5;30:9;51:20,20;
57:18;66:21,25;67:6;
74:4,16;75:3,3;76:12
**thousands (1)**
29:17
**three (23)**
6:20;7:20;8:4;13:19,
20;18:19;25:8,9;29:10;

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
97 of 99

35:23;37:11;39:3;44:3;
45:20;48:7,11;49:3;
66:11;69:1;74:20;75:8,
23,24
**three-year (1)**
23:16
**ticket (1)**
73:4
**timely (4)**
24:8;25:7;42:3;63:1
**times (3)**
17:12;47:20,21
**timing (5)**
23:11;25:11;46:9;
47:14;52:10
**today (13)**
14:13;16:5;30:14;
32:1;40:23;57:16,24;
63:3;65:18;66:10;
67:22;74:25;77:20
**today's (4)**
29:23;30:1;61:22;
79:7
**together (2)**
65:10,11
**told (4)**
15:19;40:20;72:25;
73:1
**tomorrow (1)**
36:11
**took (2)**
22:22;82:13
**total (6)**
7:24;10:23;11:18,23;
23:4;34:23
**totally (1)**
64:16
**touch (1)**
63:5
**toward (1)**
20:13
**towards (1)**
63:11
**town (1)**
15:3
**trailer (2)**
12:20;49:7
**transcript (1)**
83:3
**transparency (2)**
63:6,19
**transportation (1)**
9:9
**treating (1)**
68:4
**treatment (2)**
68:18,19
**trees (1)**
16:22
**tried (3)**
19:1;25:24;31:9
**trigger (1)**
56:13

**triggered (3)**
40:9;55:25;56:5
**triggers (1)**
55:11
**truck (1)**
12:19
**true (2)**
39:15;83:3
**Trust (24)**
6:9;8:1;10:12,21;
11:4;12:1;19:1,4,5,15;
20:12,20;21:3,21;22:4,
8,9,14;23:11,23;24:18;
25:15,22;33:15
**Trustee (7)**
18:13,15;21:21;
22:16,20;23:23;26:5
**Trustee's (1)**
18:6
**Trust's (1)**
18:24
**try (14)**
15:19;20:5,7;25:19;
31:24;32:19;51:2;
61:17;64:21;66:20;
67:3;72:23;75:4;78:6
**trying (4)**
13:20;72:21;73:24;
82:5
**Tubbs (5)**
11:18,21;13:14;
16:10,10
**turn (9)**
7:17;26:23;27:9,23;
33:1,3;35:21;73:13,15
**turning (1)**
16:3
**twelve (2)**
69:16;78:7
**twenty (1)**
8:1
**twenty-five (1)**
7:25
**twenty-minute (1)**
18:9
**twenty-one (1)**
55:14
**twenty-six (3)**
16:11,14;17:18
**twist (1)**
47:16
**two (37)**
9:6,9;14:25;15:2;
23:9;25:18;29:10,12;
30:12;33:13;34:24,24;
35:6;36:2;39:4,7;
40:13;43:9;44:25;45:2;
49:15;51:10,14;56:1;
57:15,19;64:19,20;
70:16;71:7,25;72:3,8,
12,13;73:10;81:9
**types (1)**
55:12

**typical (2)**
11:19;41:1

**U**

**UK (1)**
33:16
**ultimate (1)**
23:25
**ultra-short-term (1)**
29:15
**unable (1)**
14:9
**Under (14)**
33:17,20,23;43:9,10,
11,17;45:10;51:20;
53:3,13;55:6;65:22;
75:16
**underlying (2)**
18:17;28:17
**understood (3)**
46:13;47:3,12
**unfair (1)**
68:4
**unfolded (1)**
14:4
**Unfortunately (8)**
15:7;19:3,18;20:10;
22:4;23:6,14;24:24
**unilaterally (1)**
59:16
**unit (1)**
14:25
**unless (8)**
25:21;31:2;45:15;
75:9;76:5,5;77:3;80:21
**unlike (1)**
23:7
**unlimited (1)**
60:24
**unliquidated (1)**
43:22
**unmuted (1)**
60:18
**unplug (1)**
32:21
**unplugging (1)**
32:19
**unrelated (1)**
27:6
**unresolved (1)**
32:14
**unsuccessful (1)**
81:3
**unsuccessfully (1)**
56:7
**untenable (1)**
60:8
**unworkable (1)**
52:8
**up (34)**
6:14;7:16;8:6;13:5;
15:1;18:24;20:14;

21:10;24:22;25:1,18;
27:1,22;29:8,22,22;
33:3;34:3;42:14;43:23;
45:20;47:14;50:2,3;
54:23;60:11;61:2;63:5;
66:21;69:17;72:21;
73:24;74:4;81:24
**upon (5)**
24:13;43:15;52:11;
72:24;74:7
**upside (1)**
25:2
**urged (1)**
70:13
**use (5)**
46:5;52:22;71:14,16;
80:18
**used (3)**
15:7,7;20:7
**using (2)**
45:19;50:13

**V**

**valid (1)**
12:15
**validity (1)**
25:5
**value (11)**
10:22,23;11:19,22,
23;24:13;42:7;54:9,10,
12;65:20
**Vanguard (14)**
28:13;29:13,14,15,
17;30:2,5,12,13;31:8,
12,12;33:22;63:23
**Vanguard's (2)**
29:24;31:21
**variety (1)**
46:7
**various (4)**
8:12;29:17;61:13;
68:11
**vast (1)**
29:4;34:11;43:3,25
**via (1)**
78:15
**viable (1)**
10:7
**victim (8)**
12:15;13:17;16:10;
18:6,13,24;19:1,4
**victims (9)**
6:23;9:14;12:22;
14:7,25;19:24;22:5,9;
74:15
**view (4)**
50:6;53:22;54:20;
58:1
**visit (1)**
77:17
**visiting (1)**
40:19

**volume (1)**
33:3
**voluntarily (1)**
79:2

**W**

**wages (1)**
15:15
**wait (6)**
6:13;19:5,16;22:11;
32:15;77:17
**waited (2)**
44:5,7
**waiting (3)**
19:13;28:21;32:6
**wants (2)**
50:22;81:19
**Warden (41)**
27:17,21,21,22;28:4,
6,20,21;31:22;32:7,9,
15,17,22,25;33:4,8,12,
12,15,18;34:24;35:7;
39:3;46:4;48:19;60:14,
16,18,20;61:4,7,15,15,
24;62:19,21;79:13;
82:8,12,19
**Warden's (4)**
37:11;38:5;62:16;
72:4
**waste (1)**
72:9
**wasted (1)**
31:15
**wasting (1)**
48:24
**way (19)**
18:17;20:18;22:7;
25:20;36:3;37:16;38:3,
8;47:7;49:21;50:11;
51:24;55:10;57:19,25;
71:20;73:6;76:12;81:6
**week (2)**
14:1;64:5
**weeks (5)**
29:10,10;39:3,4;50:1
**Weil (1)**
28:2;34:5
**welcome (4)**
14:20;18:5;27:3,7
**weren't (1)**
22:17
**What's (12)**
8:6;11:11,11,14;
20:15;26:9,22;40:9;
54:14;56:6;57:16;
59:14
**whatsoever (3)**
10:5;11:10;62:4
**wheel (5)**
59:4,5,7;72:14;77:11
**wheels (1)**
74:13

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
98 of 99

**Whereupon (1)**
82:23
**whole (7)**
22:22;24:10;43:5;
51:1;52:24;53:10;
71:16
**whomever (1)**
36:9
**who's (1)**
45:23
**wildfires (1)**
15:7
**willing (2)**
31:13;44:13
**wind (1)**
15:1
**winding (1)**
20:13
**window (1)**
51:25
**wish (4)**
7:17;16:5,5;60:14
**withdraw (2)**
34:19;74:21
**within (6)**
19:5;22:22;48:3;
49:14;51:14;57:21
**without (3)**
15:5;46:17;48:4
**woke (1)**
15:1
**word (1)**
78:23
**words (4)**
24:10;58:20;64:2;
71:8
**work (10)**
13:9;33:4;44:20,20;
55:10;64:21;79:2,12;
81:9;82:15
**working (5)**
31:3,24;33:6;39:14;
63:11
**works (2)**
27:24;42:12
**worth (5)**
10:11,17;15:15;24:5;
42:9
**wrap (2)**
13:5;54:23
**wrapped (1)**
69:17
**written (1)**
26:12
**wrong (4)**
57:16;66:17;74:13;
78:23

**Y**

**year (15)**
14:25;15:2,6,8;
29:10;43:10;49:20;

54:7;60:25;61:1,2,23;
75:7;76:2,2
**year-end (1)**
54:23
**years (22)**
8:25;16:11,14;17:9,
18;18:19;25:8,9;29:7;
39:7;43:9;51:10;54:17;
57:15,19;64:20;69:16;
70:16;72:4,8,12;78:7
**yesterday (3)**
28:23;30:9;57:20
**York (1)**
28:2
**young (2)**
9:16;28:12

**Z**

**Zoom (1)**
32:18

**1**

**1 (1)**
83:14
**1,000 (5)**
69:24;70:5,9,10,11
**1,300 (1)**
42:4
**1,800 (1)**
76:19
**10 (2)**
26:22;27:5
**10:29 (1)**
27:11
**10-Q (1)**
45:12
**11 (5)**
12:13;26:24,25;27:4,
4
**11:00 (1)**
27:11
**11th (1)**
29:9
**12:23 (1)**
82:23
**125,000 (2)**
11:19,23
**13.5 (2)**
10:24;11:24
**13th (1)**
14:14
**15th (6)**
12:24;38:5,11;39:3;
52:23;55:1
**16th (1)**
83:11
**180 (5)**
34:8;58:11,14,24;
68:1
**180-day (1)**
61:9

**1st (9)**
13:11,13;23:2,3;
36:10,13;38:9;39:19;
47:6

**2**

**2,000 (1)**
42:20
**2019 (6)**
16:24,25;17:2;19:23;
23:7;60:25
**2020 (2)**
17:4;59:24
**2021 (1)**
49:23
**2022 (1)**
83:14
**2023 (5)**
34:18;35:15;43:2;
59:24;63:16
**21st (2)**
19:23;33:11
**23 (1)**
50:24
**270 (2)**
34:7;58:13
**27th (1)**
76:23
**28th (1)**
80:20
**29th (1)**
61:2
**2nd (2)**
47:5;76:23
**2X (2)**
71:19;77:25

**3**

**3,000 (3)**
42:6;43:1;68:21
**30th (5)**
19:17;23:1,3;49:14;
65:4
**31st (3)**
23:7;48:24;76:9
**3rd (2)**
17:2;39:16
**3X (1)**
78:1

**5**

**5,800 (9)**
42:6,19;43:2;62:4,
11,13,13;66:14;68:21
**50,000 (1)**
11:14
**500 (1)**
11:13

**6**

**6.8 (1)**
22:6

**7**

**7,500 (1)**
42:3
**7.5 (1)**
42:9
**700 (3)**
10:18,23;11:22
**7227 (1)**
83:11
**750 (2)**
36:14;47:8

**8**

**8,000 (1)**
12:25
**85020 (1)**
83:12

**9**

**90 (1)**
68:1
**900 (1)**
9:1

Case: 19-30088    Doc# 13786-3    Filed: 05/31/23    Entered: 05/31/23 14:14:57    Page
99 of 99