# EXHIBIT 4

1  STEPHEN P. BLAKE (SBN 260069)
2  JONATHAN C. SANDERS (SBN 228785)
   HILARY A. SOLOFF (SBN 314727)
3  SIMPSON THACHER & BARTLETT LLP
   2475 Hanover Street
4  Palo Alto, CA 94304
   Telephone: (650) 251-5000
5  Facsimile: (650) 251-5002
   Email: sblake@stblaw.com
6        jsanders@stblaw.com
       hilary.soloff@stblaw.com
7
   JONATHAN K. YOUNGWOOD (admitted *pro hac vice*)
8  NICHOLAS S. GOLDIN (admitted *pro hac vice*)
   SIMPSON THACHER & BARTLETT LLP
9  425 Lexington Avenue
   New York, NY 10017
10 Telephone: (212) 455-2000
   Facsimile: (212) 455-2502
11 Email: jyoungwood@stblaw.com
          ngoldin@stblaw.com
12
   *Attorneys for Director Defendants*
13 *(Additional counsel for Defendants listed on signature*
   *pages.)*
14
                    UNITED STATES DISTRICT COURT
15
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
16
                         SAN JOSE DIVISION
17

18 IN RE PG&E CORPORATION SECURITIES         Case No. 5:18-cv-03509-EJD
   LITIGATION
19                                           **DEFENDANTS' OPPOSITION TO**
                                     )       **MOVANTS' MOTION TO**
20                                   )       **INTERVENE**
                                     )
21                                   )       Judge:  Hon. Edward J. Davila
                                     )
22                                   )       **Hearing Information:**
                                     )       Date:       June 29, 2023
23                                   )       Time:       9:00 a.m.
                                     )       Place:      Courtroom 4 (5th Floor)
24                                   )

25

26

27

28

OPPOSITION TO MOTION TO INTERVENE                        CASE NO. 5:18-CV-03509-EJD

**Table of Contents**

Page

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.   This Action ........................................................................................................ 2

    B.   PG&E's Bankruptcy ........................................................................................ 3

    C.   The Bankruptcy Court's Securities Claim Procedures ................................. 3

    D.   The Present Stay .............................................................................................. 6

    E.   Movants Seek To Disrupt Non-Bankruptcy Avenues Of The Claims Resolution
        Process ............................................................................................................. 7

ARGUMENT ...................................................................................................................... 7

I.    Movants Are Not Entitled To Intervention As Of Right ....................................... 7

    A.   Movants' Interests Will Not Be Impaired If Their Motion Is Denied ........... 8

    B.   Movants' Motion Is Untimely And Prejudicial ......................................... 12

II.   Movants Should Not Be Granted Permissive Intervention ................................. 16

CONCLUSION ................................................................................................................ 18

1

## Table of Authorities

2

Page(s)

3

**Cases**

4

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ...............................................................12, 13, 14, 16

5

*Am. Rivers v. Wheeler*,
  , 2020 WL 5993229 (N.D. Cal. Oct. 9, 2020) ..................................................8

6

7

*Barragan v. Home Depot U.S.A., Inc.*,
  2022 WL 2489357 (S.D. Cal. July 6, 2022) ..................................................16, 17

8

*Beckman Industries., Inc. v. Int'l Insurance Co.*,
  966 F.2d 470 (9th Cir. 1992) ..................................................................18

9

10

*Brown v. Accellion, Inc.*,
  2023 WL 1928210 (N.D. Cal. Feb. 10, 2023) ..................................8, 9, 17, 18

11

*Chavez v. PVH Corp.*,
  2014 WL 6617142 (N.D. Cal. Nov. 20, 2014) ..................................................13, 15

12

13

*Chi v. Univ. of S. Cal.*,
  2019 WL 3064457 (C.D. Cal. Apr. 18, 2019) ..................................................10

14

*Cnty. of Orange v. Air California*,
  799 F.2d 535 (9th Cir. 1986) ..................................................................12

15

16

*Cochran v. Accellion, Inc.*,
  2021 WL 5161921 (N.D. Cal. Nov. 5, 2021) ..................................................passim

17

*Cody v. SoulCycle, Inc.*,
  2017 WL 8811114 (C.D. Cal. Sep. 20, 2017)..................................................12, 13, 15, 16

18

19

*Cohorst v. BRE Props.*,
  2011 WL 3489781 (S.D. Cal. July 19, 2011) ..................................................10

20

*Connell v. Heartland Express*,
  2021 WL 4295754 (C.D. Cal. Apr. 30, 2021) ..................................................10, 17, 18

21

22

*Cotter v. Lyft, Inc.*,
  2016 WL 3654454 (N.D. Cal. June 28, 2016) ..................................................10

23

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ..................................................................8, 16, 18

24

25

*Glass v. UBS Fin. Servs*,
  2007 WL 474936 (N.D. Cal. Jan. 17, 2007)..................................................11

26

*Gomes v. Eventbrite, Inc.*,
  2020 WL 6381343 (N.D. Cal. Oct. 30, 2020)..................................................10, 11

27

28

OPPOSITION TO MOTION TO INTERVENE

ii

CASE NO. 5:18-cv-03509-EJD

*In re Cmty. Bank of N. Virginia*,
  418 F.3d 277 (3d Cir. 2005) ................................................................................11

*Lane v. Facebook, Inc.*,
  2009 WL 3458198 (N.D. Cal. Oct. 23, 2009) ......................................................15

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) ...............................................................13, 14, 18

*Low v. Altus Fin. S.A.*,
  44 F. App'x 282 (9th Cir. 2002) ..........................................................................13

*Samsung Elecs. Co. v. Panasonic Corp.*,
  2016 WL 11781870 (N.D. Cal. Sep. 26, 2016) ...................................................13

*United States v. Oregon*,
  913 F.2d 576 (9th Cir. 1990) .........................................................................12, 13

*Winston v. United States*,
  2015 WL 9474284 (N.D. Cal. Dec. 29, 2015) .....................................................13

**Statutes and Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................3

Federal Rule of Civil Procedure 23 ....................................................................... passim

Federal Rule of Civil Procedure 24(a)(2) ..................................................................7, 8

Federal Rule of Civil Procedure 24(b)(1)(B) ...............................................................16

# INTRODUCTION

Nearly 700 entities ("Movants") seek to intervene as individual plaintiffs in this putative class action lawsuit because, they argue, it is in their "best interest to pursue their claims in the [PG&E] Bankruptcy in accordance with the [alternative dispute resolution] procedures."  *See* Dkt. No. 224 ("Motion" or "Mot.") at i, 15, App'x A.  They are free to do so.  This stayed class action cannot prevent any claimant from electing to proceed through the Bankruptcy process, and Movants do not suggest otherwise.  Although Movants contemplate—and would evidently oppose—a possible future request to lift this Court's stay for the purpose of certifying and approving a class settlement, there is no legal basis for Movants' untimely and burdensome intervention requests.

As an initial matter, there is no "coordinated tactic" by Defendants and Lead Plaintiff to "perform[] an end-run" around the Bankruptcy Court's process for resolving securities claims against PG&E.  Mot. at 1.  Defendants are informed and believe that, under the Bankruptcy Court's oversight, PG&E has continued working through that process, making thousands of settlement offers to claimants over the last several months, and even engaging in a recent January 2023 mediation with Movants themselves.  Meanwhile, PG&E has also informed the Bankruptcy Court in October 2022—as Lead Plaintiff more recently informed the Ninth Circuit—that the parties to this action and PG&E were mediating and attempting to negotiate a class-wide settlement in parallel to the Bankruptcy process.  So informed, the Bankruptcy Court has issued orders that expressly contemplate the possibility of a class-wide settlement.  Neither this Court nor the Bankruptcy Court has ever suggested that such a settlement would be inappropriate or inadvisable, let alone precluded by any prior order.

Movants' suggestion that an approved class-wide settlement would harm members of the putative class is baseless.  Movants assume that such a settlement would include a release against PG&E, which would "create a two-track resolution process that would be extremely difficult and burdensome to administer."  Mot. at 2.  But even if such an agreement were reached, there is nothing unusual or detrimental about class members having a choice of participating in a settlement or opting out to pursue other avenues of relief.  That is precisely what the Federal Rules of Civil

OPPOSITION TO MOTION TO INTERVENE                                                    CASE NO. 5:18-cv-03509-EJD

1  Procedure contemplate.

2       Even if Movants' speculative objections to a hypothetical settlement were credible, there

3  would still be no basis for granting the Motion.  First, Movants' stated justifications for

4  intervention are not applicable to class action settlement opposition under well-established Ninth

5  Circuit precedent.  Even if Defendants and Lead Plaintiff reach a settlement agreement before

6  Movants resolve their claims through the Bankruptcy process, Movants' interests cannot be

7  impaired by denial of their Motion because they will be able to raise objections and retain the

8  ability to opt out of the settlement class.  Second, Movants' untimely Motion has been brought

9  years after they became aware that their and Lead Plaintiff's interests could diverge.  Both the

10  Court and the parties would be prejudiced by the administrative burden of needlessly injecting

11  nearly 700 new parties into this case.  The Motion should be denied.

12  **BACKGROUND**

13      **A.**    <u>**This Action**</u>

14       Pacific Gas and Electric Company (together with PG&E Corporation, "PG&E") is an

15  electric and gas utility.  This consolidated lawsuit is brought on behalf of two purported classes of

16  investors who purchased or otherwise acquired PG&E securities (i) traded on the NYSE from April

17  29, 2015 through November 15, 2018, and (ii) in notes offerings that occurred in March 2016,

18  December 2016 and March 2017 and in an April 2018 exchange offer.  On September 10, 2018, the

19  Court appointed Public Employees Retirement Association of New Mexico ("PERA") as Lead

20  Plaintiff.  Dkt. No. 62.  By stipulated order entered May 7, 2019, PERA's suit was consolidated

21  with a related suit (the "*York County* Action"), Dkt. No. 117, after which PERA and the *York*

22  *County* Action plaintiffs jointly filed the operative Third Amended Complaint ("TAC") on May 28,

23  2019, Dkt. No. 185.

24       The TAC asserts claims under the Securities Exchange Act of 1934 ("Exchange Act") and

25  the Securities Act of 1933 ("Securities Act") against PG&E and certain of PG&E's former officers,

26  and, solely with respect to the Securities Act claims, certain of PG&E's former directors and

27  PG&E's underwriters.  *See* TAC ¶¶ 42-50, 531-554.  The TAC generally alleges that PG&E made

28

OPPOSITION TO MOTION TO INTERVENE        2         CASE NO. 5:18-cv-03509-EJD

false or misleading statements about its vegetation management practices, wildfire-safety regulation compliance, and the risk of wildfires to PG&E's business. TAC ¶¶ 189-320, 471-495, 693-706. On October 4, 2019, the Defendants filed motions to dismiss the TAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Dkt. Nos. 148, 155, which were fully briefed on January 13, 2020.

## B. PG&E's Bankruptcy

On January 29, 2019, PG&E commenced a voluntary case under chapter 11 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*) (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). *See In re PG&E Corporation, et al.*, Case No. 19-30088 (Bankr. N.D. Cal.) ("Bankr. Dkt."), Bankr. Dkt. No. 1. As a result, this action was automatically stayed as to PG&E pursuant to Section 362 of the Bankruptcy Code. On June 1, 2020, the Bankruptcy Court issued an order confirming the "Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020," which discharged the claims in this action against PG&E. *See id.*; Bankr. Dkt. No. 8053-1 ("Plan") §§ 10.3, 10.6 (Ex. A to Confirmation Order); March 14, 2023 Declaration of Michael J. Reiss ("Reiss Decl.") ¶ 3.

## C. The Bankruptcy Court's Securities Claim Procedures

On January 25, 2021, the Bankruptcy Court issued an order approving procedures for the outstanding securities claims asserted against PG&E that had been pulled into the Bankruptcy Proceedings ("Securities Procedures"). *See* Bankr. Dkt. No. 10015 (the "Securities Claims Procedures Order"). The Securities Procedures generally provided for various mediation processes through which individual claimants submit claim information, make and receive settlement offers, and, if necessary, proceed through mediation. *See generally id.*; Reiss Decl. ¶¶ 5-6, 14. In declining to take a class action approach, the Bankruptcy Court expressed a preference for "a well-established process . . . that facilitates consensual resolution." Bankr. Dkt. No. 13164-9 (Dec. 4, 2020 Bankruptcy Court Hrg. Transcript) at 5:10-13.

At that time, the Bankruptcy Court addressed Lead Plaintiff's objection that individual

OPPOSITION TO MOTION TO INTERVENE                                                    3                  CASE NO. 5:18-cv-03509-EJD

securities claimants going through the Securities Procedures "are somehow unable to make their own decisions [as to] whether to accept a recovery on some portion of what they spent when they made those investment decisions" without the aid of class representation. *Id.* at 7:19-24. The Bankruptcy Court recognized that these claimants,

> either made their own decisions or took the advice of investment advisors, stock brokers, investment committees, or otherwise. I am not going to assume that they are so unsophisticated, innocent babes in the woods who can't make their own decisions now. And if they want more information, or greater concessions from the reorganized debtors, they are free to pass on the offers and acceptance and the mediation options. . . . Simply stated, they said yes or no to a choice to whether to invest years ago. Now they can say yes or no to an offer the reorganized debtors present to them under the proposed procedures.

*Id.* at 7:25-8:17.

To date, PG&E has engaged with securities claimants through the Securities Procedures. *See* Reiss Decl. ¶¶ 7-9. Over 7,000 securities claims have been filed in the Bankruptcy, of which approximately 1,600 have been settled, with other settlement offers pending and many claims expunged or otherwise resolved through omnibus objections. *Id.* To date, PG&E has made more than 3,000 settlement offers to securities claimants pursuant to the Securities Procedures. *Id.* These settlements through the Bankruptcy's Securities Procedures have included releases of claims in this Action. *Id.*

The Bankruptcy Court has never ordered that securities claims against PG&E must be resolved through the claimant-by-claimant Securities Procedures, nor "refused [] requests to certify a class for the purpose of resolving claims . . . in lieu of the ADR Procedures." Mot. at 1-2. Certain parties, including Lead Plaintiff here, were excluded from the Securities Procedures, Bankr. Dkt. No. 10015-1 at 5, and the Court noted in approving the Securities Procedures that claimants, "when faced with mediation, nothing prevents them from organizing collectively in selecting counsel on a group basis to represent their interest," Bankr. Dkt. No. 13164-9 at 8:7-11. That the Bankruptcy Court adopted Securities Procedures to encourage resolution of the securities claims against PG&E at the outset does not mean that it rejected the possibility of a class-wide settlement.

To the contrary, PG&E has informed the Bankruptcy Court that it was attempting to

globally resolve the securities claims through a class-wide settlement that would encompass this action.  *See* Reiss Decl. ¶¶ 11-12.  In PG&E's most recent Motion for an extension of its time to object to claims ("Extension Motion"), filed on October 25, 2022, the company forthrightly advised the Bankruptcy Court with respect to securities claims that,

> *[a]s the Court is aware, earlier this year, the Reorganized Debtors began significant and extensive efforts to negotiate a global settlement, which would include* settlements of certain litigation brought by the PG&E Fire Victim Trust (the "FVT") against certain former directors and officers of PG&E (the "D&O Defendants"), certain disputes with PG&E's D&O insurers, and *the securities claims brought in a separate litigation by certain securities plaintiffs and the Securities Claims.*

*See* Bankr. Dkt. No. 13122, (Motion for Entry of an order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief), at 10 (emphasis added).  PG&E further advised the Bankruptcy Court that "[PG&E] engaged in active negotiations in connection with a potential global settlement with the help of an experienced mediator."  *Id.*  PG&E also submitted a request *for the Bankruptcy Court's approval* to enter a settlement with certain of PG&E's D&O insurers that "will also help facilitate a potential settlement of the Securities Claims by providing certainty regarding the availability of insurance proceeds to cover at least a meaningful portion of a potential settlement of those claims."  *Id.* at 10-11.  While expressing optimism for a broader settlement, PG&E reiterated its commitment to the Securities Procedures process should a global settlement prove unachievable:

> The Reorganized Debtors are hopeful that the Securities Claims can be resolved without the need to litigate the claims on an individual-claim basis, whether through the current process described above or otherwise. Alternatively, the Debtors will aggressively pursue further individual settlements pursuant to the Securities Claims Procedures.

*Id.* at 8.  PG&E reiterated its ongoing efforts to negotiate a resolution of this action in its November 28, 2022 Reply Brief in support of the Extension Motion.  *See* Reiss Decl. ¶¶ 11-12; Bankr. Dkt. No. 13292 at 1, 3-4, 6-7.  The Bankruptcy Court granted the Motion on December 15, 2022, expressly acknowledging the possibility of a settlement of this action..  *See* Bank. Dkt. No. 13363

at 3; Reiss Decl. ¶ 12.[1]

### D.   <u>The Present Stay</u>

On April 29, 2021, this Court issued a Notice of Intent to Stay Action Pending Conclusion of Bankruptcy Proceedings.  See *id.* ("Notice").  The Notice observed that this action was stayed as to PG&E; that the claims against the Defendants would "involve addressing identical issues" as the Bankruptcy proceedings; and, therefore, that a stay would "promote judicial efficiency and economy, as well as avoid the potential for inconsistent judgments."[2]  Notice at 1-2.  This Court later issued an Order Staying Action Pending Resolution of Chapter 11 Bankruptcy on September 30, 2022.  *See* Dkt. No. 217 ("Stay Order").  In doing so, this Court reiterated that "because of the overlap between the bankruptcy proceedings and the instant securities fraud action," the stay "is in the interest of efficiency and would avoid proceeding on a piecemeal basis."  *Id.* at 1-2.

The Stay Order did not refer to or implicate "enforcing the ADR Procedures."  Mot. at 16. This Court has previously found that "the Plan and the Confirmation Order expressly provide that they do not have any direct impact on securities claims asserted against PG&E's non-debtor officers, directors, or underwriters defendants."  Dkt. No. 198 at 2.

Lead Plaintiff filed a Notice of Appeal of the Stay Order on October 31, 2022.  *See* Dkt. No. 218.  Lead Plaintiff filed its opening brief in that appeal on March 6, 2023.  *In re PG&E Corp. Sec.*

---

[1] On January 13, 2023, in an appeal stemming from the Bankruptcy proceedings, Lead Plaintiff and PG&E jointly requested that the Ninth Circuit place the appeal in abeyance for six months because the parties were "in the process of negotiating the terms of a settlement agreement to resolve the claims underlying this appeal."  *In re PG&E Corporation, et al.*, No. 21-16507 (9th Cir. Jan. 13, 2023), Dkt. No. 66.  The Ninth Circuit granted the request on January 25, 2023.  *Id.*, Dkt. No. 67.

[2] PG&E never argued, as Movants claim, that "failure to impose a stay would violate the injunction against interference with the Bankruptcy Plan, including the claims resolution process."  Mot. at 7. Lead Plaintiff's objection to the Notice had included a request that the court "enjoin PG&E from treading propriety to obtain releases for claims against its non-PG&E co-Defendants" through the Securities Procedures.  Dkt. No. 203 at 21.  PG&E objected to this request.  Dkt. No. 206 at 4-5.

*Litig.*, 22-16711, Dkt. No. 12 (9th Cir. Mar. 6, 2023).

        **E.**    **Movants Seek To Disrupt Non-Bankruptcy Avenues Of The Claims Resolution Process**

      Movants' present intervention requests appear to be part of a plan to obtain separate treatment for their claims before the Bankruptcy Court by disrupting alternative avenues for broader resolution of securities claims.  *See* Reiss Decl. ¶¶ 2, 13-19.  Defendants are informed and believe that Movants and PG&E have engaged in extensive negotiations as to PG&E's deadline for responding to Movants' claims, which included an agreement to mediate with PG&E on January 19, 2023.  Reiss Decl. ¶¶ 13-15.  The mediation was terminated after one day at Movants' request, after which Movants filed a motion before the Bankruptcy Court to accelerate PG&E's time to respond to their claims.  Reiss Decl. ¶¶ 16-18.  The Bankruptcy Court held a hearing on Movants' motion on March 7, 2023, then issued an order on March 13, 2023 that directed PG&E to "make a Settlement Offer to all RKS Claimants" by April 17, 2023 and set forth a schedule for related briefing on Movants' claims.  Reiss Decl. ¶ 19; Bankr. Dkt. No. 13612 at 2-3.  As before, the Bankruptcy Court's order expressly accounted for the possibility that a motion for preliminary approval of a class settlement in this action may be filed before or after Movants' settlement offer deadline.  Bankr. Dkt. No. 13612 at 2-3.  There has been no "abandonment of the ADR procedures."  Mot. at 8.

      Movants seek to intervene as nearly 700 new plaintiffs in this action.  *See* Mot. at i.  Their stated purpose is "protecting their rights in the Bankruptcy to complete the ADR procedures . . . and to ensure that no actions will be taken in this Court to undermine the claims process."  Mot. at 8.  More concretely, Movants claim that they should be permitted to intervene to "formally oppose any motion to lift the stay" and to "argue that the Court should . . . reject any effort by PERA to certify a settlement class."  Mot. at 14 n.5, 15.

## ARGUMENT

### I.    Movants Are Not Entitled To Intervention As Of Right

      To establish a right to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), a nonparty must make four showings:

      

(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  "The party seeking intervention bears the burden" and the applicable analysis "turns on 'practical considerations.'"  *Am. Rivers v. Wheeler,* 2020 WL 5993229, at *2 (N.D. Cal. Oct. 9, 2020) (quoting *Citizens for Balanced Use v. Montana Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011)).

While Movants claim that "intervention is the preferred method for an absent class member to join a case," Mot. at 9, this presumes that the absent class member satisfies Rule 24's requirements.  Courts routinely deny absent class members' requests to intervene as of right in class actions, particularly where class members seek to oppose a potential settlement.  *See, e.g.*, *Brown v. Accellion, Inc.*, 2023 WL 1928210, at *3 (N.D. Cal. Feb. 10, 2023) (Davila, J.) (denying absent class member's requested intervention where "interests would not be impaired" and collecting cases doing the same); *Cochran v. Accellion, Inc.*, v, at *3 (N.D. Cal. Nov. 5, 2021) (Davila, J.) (denying absent class member's requested intervention for failure to "demonstrate[] a significantly protectable interest").

Here, Movants have no right to intervene in this action for two reasons.  ***First***, because it is well-established in the Ninth Circuit that putative class members' interests in opposing a class settlement are adequately protected by Rule 23, Movants cannot show that their interests will be impaired. ***Second***, the Motion is untimely, as Movants have known for years of the basis for their argument that their interests could be affected by this action.

### A.   Movants' Interests Will Not Be Impaired If Their Motion Is Denied

Movants contend that they "possess a significantly protectable interest by virtue of being members of the [putative] class."  Mot. at 12.  Their "impairment" argument, however, is directed only to the possibility that "the Court lifts the stay and approves a class-wide settlement."  Mot. at 13.  Movants argue that this scenario would impair their interests because they "will be forced to decide whether to opt out of the class and continue to pursue their claims in the Bankruptcy without

1    knowing whether PG&E will continue to abide by the Court-ordered ADR procedures," which

2    would create a "two-track approach to resolution of these claims that would cause needless

3    confusion and complexity." *Id.* at 13-14.  Movants accordingly request to "be heard on this matter

4    before [the Court's] considering any preliminary approval motion." *Id.*

5         Movants fail to demonstrate that their protectable interests could be impaired.  It is

6    indisputable that the parties have not moved this Court to lift the stay to seek preliminary approval

7    of a settlement.  Movants cannot show that their interests may be impaired "as a practical matter"

8    by a hypothetical settlement agreement that has not been presented for their or this Court's review

9    and may never come to fruition at all.  The Motion fails to cite a single case in which the prospect

10   of resolution through a hypothetical settlement, the terms of which were unknown to the

11   prospective intervenor, was sufficient to warrant intervention.  Indeed, the Bankruptcy Court

12   recently ordered PG&E to proceed with making settlement offers to Movants, notwithstanding its

13   awareness of settlement discussions with respect to this action.  *See supra*, pp. 6-7.

14        Even if Movants had a protectable interest in opposing a hypothetical settlement, that

15   interest will not be impaired if their intervention request is denied.  As this Court recently held in

16   denying a motion to intervene, Rule 23's provisions for class member objections and opt-outs

17   adequately guard their interests in objecting to potential settlements in cases seeking damages:

18        It has been the well-established law in this circuit that class members' interests
         are not impaired if they have other means to protect them.  Specifically, courts

19       have consistently held that the ability to file objections and opt out of a class
         settlement, as dictated by Rule 23, are sufficient to protect the interests of class

20       members in a typical case seeking damages.  Proposed Intervenors seek to
         intervene for the sole reason that preliminary approval of the proposed settlement

21       would cause harm to them.  However, as members of the proposed settlement
         class, they can also protect their interests by opting out or objecting to the

22       settlement in the fairness hearing process.  With those means available to
         Proposed Intervenors, the Court cannot say that their interests would be impaired

23       or impeded in this case.

24   *Brown*, 2023 2023 WL 1928210, at *3 (collecting cases) (internal citations and quotations

25   removed).  This Court's *Brown* decision follows an established line of cases in the Ninth Circuit

26   that hold intervention as of right is unavailable to absent class members that seek to object to class

27   settlements because Rule 23's procedures fully protect their interests.  *See Cochran*, 2021 WL

28

OPPOSITION TO MOTION TO INTERVENE                                    CASE NO. 5:18-CV-03509-EJD

5161921, at *2 ("Courts in this circuit have consistently held that 'intervention of right is unavailable' where . . . the settlement agreement allows the putative intervenors to protect their interests by opting out of the settlement class or participating in the fairness hearing process.").[3]

Here, Rule 23 will similarly guard Movants' interests if a potential settlement is submitted for this Court's consideration.  Movants' unfounded concerns that class members will be confused by having a class settlement option in addition to the Bankruptcy ADR process, and that a class settlement is "extremely difficult and burdensome to administer," can be raised as objections.  *See* Mot. at 13-14.  And while Movants vaguely reference the prospect of Lead Plaintiff "negotiat[ing their] claims away," Mot. at 3, that cannot occur through a settlement from which Movants can opt out.  Although Movants mention Rule 23 to note that they will object to any hypothetical settlement, Mot. at 3, they do not present any argument that Rule 23's safeguards are insufficient to facilitate their objections, *see* Mot. at 13-15.

---

[3] Courts in this circuit unanimously follow this approach.  *See, e.g.*, *Connell v. Heartland Express*, 2021 WL 4295754, at *3 (C.D. Cal. Apr. 30, 2021) ("[T]he Proposed Intervenors' fail to satisfy the third requirement listed above because they may protect their interests in the present lawsuit by objecting to the proposed class action settlement pursuant to Rule 23."); *Chi v. Univ. of S. Cal.*, 2019 WL 3064457, at *6 (C.D. Cal. Apr. 18, 2019) ("Class members that disapprove of the settlement agreement would be allowed to opt out of the settlement if they prefer to adjudicate their claims in an individual action, meaning that intervention of right is unavailable under Rule 24(a)(2)."); *Cotter v. Lyft, Inc.*, 2016 WL 3654454, at *2-3 (N.D. Cal. June 28, 2016) ("The Zamora plaintiffs' ability to protect their interest in the claims released by the Cotter action will not be impaired by the Cotter settlement, because the Zamora plaintiffs may file formal objections and appear at the final approval hearing, or opt out of the Cotter settlement and continue to pursue their claims against Lyft if they wish."); *Cohorst v. BRE Props.*, 2011 WL 3489781, at *5 (S.D. Cal. July 19, 2011) ("[W]here the right to object to the settlement at the Fairness hearing or to opt out of the settlement exists, intervention is simply unnecessary to protect a putative class member's interests.").

Even Movants' primary case supports denial of their Motion.  *Gomes v. Eventbrite, Inc.* considered a request for intervention in a class action following filing of a motion for preliminary approval of a settlement.  2020 WL 6381343, at *1 (N.D. Cal. Oct. 30, 2020) (Davila, J.).  The proposed intervenors did not seek to oppose the class settlement.  *Id.*  Rather, they were plaintiffs in a related state court action who sought to intervene solely "for the purpose of requesting a continuance of the hearing on the" preliminary approval motion.  *Id.*  In distinguishing the cases that have held that, "[i]n the context of settlements, courts have frequently denied intervention by putative class members where they can adequately protect their interests via . . . Rule 23," this Court emphasized the proposed intervenors "are not intervening for the purpose of objecting to the settlement." *Id.* at *3.  Rather, the *Gomes* intervenors sought only "a relatively short continuance of the hearing," so that absent class members could "object or consider whether to opt-out of the [federal] settlement" with the benefit of a ruling on demurrers pending in the state action.  *Id.*  . This in no way supports Movants' broad request for intervention.[4]

Finally, even if Movants have an interest in opposing a hypothetical class settlement, it

---

[4] Movants also passingly cite a 2007 district court decision and an out-of-circuit case for the proposition that Rule 24(a)'s impairment prong is inherently satisfied "in the class action context" by "the very nature of Rule 23 representative litigation."  Mot. at 13 (quoting *Glass v. UBS Fin. Servs*, 2007 WL 474936, at *3, n. 1 (N.D. Cal. Jan. 17, 2007) and *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005)).  The foregoing authorities make clear that courts in this circuit have resoundingly rejected that proposition.  *Glass v. UBS Fin. Servs*—in denying a motion to intervene as untimely after absent class members' deadline to opt out of a final settlement had passed—merely commented in footnote dicta that a prior decision's footnote "suggested" that absent class members may be able to demonstrate impairment "by their very nature."  2007 WL 474936, at *3, n. 1.  Even Movants' cited Third Circuit case made clear that it was "in no way suggesting that absent class members who merely express dissatisfaction with specific aspects of the proposed settlement . . . have the right to intervene. The goals of Rule 23 would be seriously hampered if that were permitted."  *Cmty. Bank*, 418 F.3d at 315.

1  would not be impaired by denial of intervention at this stage.  Movants do not have a "significantly

2  protectable interest" in "formally oppos[ing] any motion to lift the stay" or "be[ing] heard . . .

3  before . . . preliminary approval."  Mot. at 12, 14 & n.5.  As this Court has held, class members

4  who oppose a settlement do not have a protectable interest in participating in procedural steps prior

5  to the Court's final settlement approval because the final approval decision will be independent of

6  prior rulings.  *Cochran*, 2021 WL 5161921, at *2 ("[T]here is no significantly protectable interest

7  incumbent in an opportunity to object to preliminary approval, because the Court will make its

8  determination as to whether final approval should be granted based on the law and facts before it at

9  that point in time . . . and [will] not be influenced by previously granted preliminary approval.")

10  (internal quotation omitted).  Thus, even if Movants have a protectable interest in the final

11  settlement, "that interest alone does not support intervention at this stage." *Id.*

12  ### B.   Movants' Motion Is Untimely And Prejudicial

13  Timeliness is a "threshold requirement" for intervention.  *United States v. Oregon*, 913 F.2d

14  576, 588 (9th Cir. 1990).  In determining whether a motion is timely, courts consider three factors:

15  "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other

16  parties; and (3) the reason for and length of the delay." *Cnty. of Orange v. Air California*, 799 F.2d

17  535, 537 (9th Cir. 1986).  Here, all three factors demonstrate that Movants' Motion is untimely.

18  ***First***, the stage of proceedings favors denial of intervention.  This consolidated action has

19  been pending since May 2019.  Mot. at 4.  Even if the parties were on "the eve of" a hypothetical

20  settlement that could resolve litigation, that would necessarily be a late stage of the proceedings

21  that is long past the logical time for intervention.  *See Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th

22  Cir. 2015).  For example, in *Cody v. SoulCycle, Inc.*, the court considered a motion to intervene in a

23  putative class action where (i) the action was filed less than two years prior, (ii) the intervention

24  request came before the court's ruling on a motion for class certification, and (iii) the court had

25  preliminarily approved the parties' settlement.  2017 WL 8811114, at *1-2 (C.D. Cal. Sep. 20,

26  2017).  In denying the motion as untimely, the court found that the "Proposed Intervenor seeks to

27  intervene ***at a very late stage in this action***, such that his participation would prejudice the existing

28

OPPOSITION TO MOTION TO INTERVENE                                    CASE NO. 5:18-CV-03509-EJD

parties by compromising or postponing final settlement." *Id.* at *3 (emphasis added). Similarly, the Ninth Circuit in *Allen* affirmed a district court's determination that an intervention motion filed "after four years of ongoing litigation, on the eve of settlement" was untimely. 787 F.3d 1218, 1222 (9th Cir. 2015); *see also United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) ("[I]ntervention on the eve of settlement may be untimely.").

Movants' arguments misapply the "stage of the proceeding" factor analysis. They note that "[m]otions to dismiss are pending, no discovery has been taken, and no trial date has been set." Mot. at 10. It is incorrect, however, for potential intervenors to "focus on what had not yet occurred prior to [their motion] . . . ignor[ing] what had already occurred by that time." *Chavez v. PVH Corp.*, 2014 WL 6617142, at *4 (N.D. Cal. Nov. 20, 2014) (quoting *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997)). None of Movants' cited cases found proceedings to be "early stage" where the prospective intervener cited the prospect of a case-resolving settlement as the basis for intervention after significant mediation and settlement negotiations by the parties. *See Low v. Altus Fin. S.A.*, 44 F. App'x 282, 284-85 (9th Cir. 2002) (deeming litigation "early stage" where "discovery is in its early stages" and intervenor sought "only to present evidence related to damages ***and not for any other purpose, including approval or rejection of settlement offers***" (emphasis added); *Samsung Elecs. Co. v. Panasonic Corp.*, 2016 WL 11781870, at *3 (N.D. Cal. Sep. 26, 2016) (deeming pleadings stage to be "early stage" without referring to settlement agreement prospects); *Winston v. United States*, 2015 WL 9474284, at *3 (N.D. Cal. Dec. 29, 2015) (deeming litigation "early stage" where discovery had not commenced but "no evidence has been presented of a settlement agreement among any of the parties")).

***Second***, Movants' intervention would prejudice other parties. Intervention for the purpose of opposing a prospective class settlement is necessarily prejudicial to existing parties and absent class members because it threatens an option of resolving their claims. In *Cody*, the prospective intervenor identically "argue[d] that his intervention will not unduly prejudice the parties because he seeks intervention for a limited purpose only, but admits that he intends to challenge the

OPPOSITION TO MOTION TO INTERVENE                                    CASE NO. 5:18-cv-03509-EJD

1   Settlement Agreement."  2017 WL 8811114, at *3.  The court nevertheless found that prejudice

2   would result from intervention because "his participation would prejudice the existing parties by

3   compromising or postponing final settlement."  *Id.*; *see also Allen*, 787 F.3d at 1222 ("We are not

4   persuaded that Objectors' motion was timely, because the motion . . . threatened to prejudice

5   settling parties by potentially derailing settlement talks, and especially where Objectors' concerns

6   could largely be addressed through the normal objection process.").

7          Moreover, injecting nearly 700 new plaintiffs into this litigation would impose a substantial

8   administrative burden on existing parties and the Court that threatens to, by Movants' design, delay

9   potential resolution of this action.  Such delay supports a finding of untimeliness, even if there were

10  only one prospective intervenor.  *See League of United Latin Am. Citizens*, 131 F.3d 1304 ("[I]n a

11  case like this one, in which the proposed intervenor waited twenty-seven months before seeking to

12  interject itself into the case, only to move the court for full-party participation at a time when the

13  litigation was, by all accounts, beginning to wind itself down, we believe that the additional delay

14  caused by the intervenor's presence is indeed relevant to the timeliness calculus.").

15         Movants argue that some putative class members may "benefit from hearing argument from

16  the Movants concerning the advantages of keeping the stay in place."  Mot. at 11.  But that

17  speculative benefit has no bearing on whether their intervention prejudices other parties, and is

18  equally obtainable through Movants' ability to voice objections to any prospective class settlement

19  pursuant to Rule 23 procedures, *see infra*, Section I.A.[5]

20         **Third**, Movants have no justification for their undue delay in seeking intervention.  "A

21  potential intervenor must act 'as soon as he [or she] knows **or has reason to know** that his [or her]

22  _____

23  [5] Movants also argue, without support, that Defendants cannot be prejudiced by Movants'

24  intervention because "Defendants in the Action previously advocated for imposition of the stay."

25  Mot. at 11.  There is no conflict, however, between Defendants' *not objecting* to this Court's stay of

26  the full civil litigation process to avoid duplicative proceedings in light of the Bankruptcy, *see* Dkt.

27  No. 207 at 1, and, on the other hand, a hypothetical request to lift that stay solely for the purpose of

28  approving a class settlement that would avoid duplication by resolving this action.

interests might be adversely affected by the outcome of the litigation.'" *Cody*, 2017 WL 8811114, at *2 (emphasis in original) (quoting *Chavez*, 2014 WL 6617142, at *5). Movants' stated interest is to oppose preliminary approval of any class settlement that would "necessarily create a two-track resolution process." Mot. at 2. The possibility for a settlement that creates a "second track" outside of the Bankruptcy has existed since January 2019. Movants also clearly knew by January 2021 that Lead Plaintiff had been "carved out" of the Bankruptcy ADR process and would proceed to assert its claims through this action. *See* Mot. at 6. Therefore, Movants have known for over four years that this action could be settled separate from the Bankruptcy, and have further known of the basis for their argument that Lead Plaintiff does not adequately represent their interests for over two years. Nevertheless, Movants delayed seeking to intervene, which renders the Motion untimely. *See, e.g.*, *Chavez*, 2014 WL 6617142, at *5 (finding undue delay where prospective intervenors "had 'reason to know' that their interests might be adversely affected several months prior").

Movants' argument that they "filed this motion promptly upon discovering that PERA intended to seek approval of a settlement" is irrelevant. Mot. at 11. The potential intervenor in *Cody*, who similarly sought to oppose a settlement, also argued "that he moved to intervene as soon as the proposed terms of the Settlement Agreement became public, before which he was not aware that the Settlement Agreement would affect his claims." 2017 WL 8811114, at *3. The *Cody* court concluded that this argument "misconstrues the relevant inquiry," because the "key question" is "when there was notice that those interests *could* be affected." *Id.* (emphasis in original). Based on the "length of time for which this action has been pending, and the extensive national press coverage it has received over the years," *Cody* held that it was "highly unlikely that the Proposed Intervenor was not on notice for a substantial period of time that his interests could be impacted by the progress of this *Cody* action." *Id.*; *see also Lane v. Facebook, Inc.*, 2009 WL 3458198, at *3 (N.D. Cal. Oct. 23, 2009) (holding intervention motion untimely where intervenor sought to oppose settlement because their "interests (if any) necessarily arose the moment this action was filed, and were known or should have been known to Proposed Intervenors when they learned of the very

1  *existence* of this lawsuit") (emphasis in original).

2          Here, the duration and publicity surrounding this litigation similarly renders it clear that

3  Movants have been aware for years that progress in this action could affect their interests.  Movants

4  argue that they had "no reason to intervene because a stay of the Action had been put in place."

5  Mot. at 12.  But Movants were aware of the foregoing facts long before this Court's recent

6  September 2022 Stay Order, and cite no authority that a stay (subject of an appeal) would render

7  this action incapable of affecting their interests.[6]

8          **II.      Movants Should Not Be Granted Permissive Intervention**

9          Courts may permit intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) if

10  an applicant meets three threshold requirements: "(1) it shares a common question of law or fact

11  with the main action; (2) its motion is timely; and (3) the court has an independent basis for

12  jurisdiction over the applicant's claims."  *Donnelly*, 159 F.3d at 412.  "[A]lthough the availability

13  of permissive intervention turns on the existence of a common question of law or fact rather than

14  the potential impairment of a significantly protectable interest, it is discretionary."  *Cochran*, 2021

15  WL 5161921, at *3.

16          Movants' request for permissive intervention fails for three reasons.  ***First***, Movants' ability

17  to object to any potential class settlement adequately guards their interests.  Where a movant's

18  stated interests concern potential class action settlement, standard procedural mechanisms

19  adequately protect potential interveners' interests and preclude the need for disruptive intervention.

20  Accordingly, courts routinely deny requests for permissive intervention in such situations.  *See*

21  *Barragan v. Home Depot U.S.A., Inc.*, 2022 WL 2489357, at *7(S.D. Cal. July 6, 2022) ("This

22  Court finds permissive intervention is not warranted here because Utne's interests are already

---

24  [6] Movants' reliance on *United States v. Carpenter* is misplaced because the Ninth Circuit has

25  expressly limited its holding to litigation involving "a government entity not representing

26  intervenors' interests."  *Allen*, 787 F.3d at 1218; *Cody*, 2017 WL 8811114, at *9.  Because here, as

27  in *Allen* and *Cody*, "the government is not a party," Movants "cannot rely on when [they] learned of

28  the Settlement Agreement to justify [their] delay."  *Cody*, 2017 WL 8811114, at *3.

OPPOSITION TO MOTION TO INTERVENE                                    CASE NO. 5:18-cv-03509-EJD

adequately represented through the class action settlement process."); *Cochran,* 2021 WL 5161921, at *3 ("[I]ntervention is unnecessary in this case . . . Proposed Intervenors already have been able to participate in the fairness hearings—the Court declines to exercise its discretion to permit intervention."); *Connell*, 2021 WL 4295754, at *3 ("[E]ven if the Proposed Intervenors had met all of the threshold requirements, the Court would exercise its discretion to deny their motions to intervene because Proposed Intervenors can adequately protect their interests via Rule 23's objection mechanism.").

Here, Movants' interests in opposing a hypothetical class settlement are analogous to those that courts have consistently rejected as insufficient to warrant intervention.  Movants contend that their participation will "ensur[e] that the Court can make an informed decision as to the fairness of any proposed class settlement" and that their objections (if successful in delaying any settlement) will result in putative class members "who have filed claims in the Bankruptcy [being] better informed regarding the status of those claims."  Mot. at 18.  Movants have not cited a single case in which a Ninth Circuit court granted a request for permissive intervention where intervenors sought to object to a potential class settlement.  *See* Mot. at 17-18.

In fact, Movants' interests are even weaker than those rejected as insufficient in *Barragan*, *Cochran*, and *Connell* because no settlement agreement has even been proposed for this Court's review.  As a result, any impact on Movants' interests is purely speculative.  They cannot point to any specific settlement term that it supposedly adverse to their interests.  In *Brown v. Accellion, Inc.*, this Court denied a request for permissive intervention where "Proposed Intervenors' 'sole reason' for intervening in this action was to protect their interests from any prejudice that may arise from preliminary approval of the settlement."  2023 WL 1928210, at *3 (N.D. Cal. Feb. 10, 2023).  Noting that "all motions for preliminary approval of settlements have been terminated" and that other counsel would be able to "review the proposed settlements on the table," this Court found the potential intervenors' concerns adequately "mitigated" and "decline[d] to exercise its discretion to permit intervention."  *Id.* at *3.  Here, not only is there no pending motion for preliminary approval, there is no proposed settlement of any kind.  Because there is no potential impairment of Movants'

1  interests, Movants' permissive intervention request should be denied.

2      **Second**, Movants have not demonstrated "an independent basis for [this Court's]

3  jurisdiction" over the subject of their intervention.  *Donnelly*, 159 F.3d at 412.  They do not argue

4  that one exists.  Instead, they assert that "an independent jurisdictional basis is not required"

5  because they "do not seek to litigate a claim on the merits.  Mot. at 17 (quoting *Beckman*

6  *Industries., Inc. v. Int'l Insurance Co.*, 966 F.2d 470, 473 (9th Cir. 1992)).  Movants are mistaken.

7  Courts in this circuit have held that potential intervenors do not "meet the [jurisdiction] threshold

8  requirement[]" for permissive intervention where they "do not seek to litigate claims in this case;

9  they seek to intervene for the limited purpose of challenging the class notice and filing 'a motion

10 for reconsideration of the preliminary approval order and to oppose any motion for final approval

11 of the settlement.'"  *Connell*, 2021 WL 4295754, at *3.  The single case that Movants cite

12 undermines their position.  In *Beckman Industries*, the Ninth Circuit held that prospective

13 intervenors did not need an independent jurisdictional basis where they only sought modification of

14 the court's protective order because (i) courts always retain jurisdiction to modify protective orders

15 and (ii) "***Intervenors do not . . . seek to become parties to the action***."  966 F.2d at 473 (emphasis

16 added).  Here, in contrast, nearly 700 Movants request to become plaintiffs.  *See* Mot. at i.  Their

17 permissive intervention request accordingly fails the threshold "jurisdictional basis" requirement.

18     **Third**, for permissive intervention, the Court must analyze the timeliness element "more

19 strictly than [it does] with intervention as of right."  *Brown*, 2023 WL 1928210, at *3 (quoting

20 *League of United Latin Am. Citizens*, 131 F.3d 1308).  For the reasons above, Movants' request is

21 untimely, which independently requires its denial.  *See supra,* Section I.B.

22                                 **<u>CONCLUSION</u>**

23     For the foregoing reasons, Defendants respectfully request that the Court deny the Motion.

24

25

26

27

28

OPPOSITION TO MOTION TO INTERVENE                                18                    CASE NO. 5:18-cv-03509-EJD

1

Date: March 14, 2023

Respectfully submitted,

2

SIMPSON THACHER & BARTLETT LLP

McDERMOTT WILL & EMERY LLP

3

/s/ Stephen P. Blake

/s/ Steven S. Scholes

4

Stephen P. Blake (SBN 260069)
Jonathan C. Sanders (SBN 228785)

Steven S. Scholes (admitted *pro hac vice*)
444 West Lake Street

5

Hilary A. Soloff (SBN 314727)
2475 Hanover Street

Chicago, IL 60606
Telephone: (312) 372-2000

6

Palo Alto, CA 94304
Telephone: (650) 251-5000

Facsimile: (312) 984-7700
Email: sscholes@mwe.com

7

Facsimile: (650) 251-5002
Email: sblake@stblaw.com

Jason D. Strabo (SBN 246426)

8

        jsanders@stblaw.com

2049 Century Park East, Suite 3200
Los Angeles, CA 90067

9

        hilary.soloff@stblaw.com

Telephone: (310) 277-4110
Facsimile: (310) 277-4730

10

Jonathan K. Youngwood (admitted *pro hac vice*)

Email: PG&E@mwe.com

11

Nicholas S. Goldin (admitted *pro hac vice*)
425 Lexington Avenue

*Attorneys for Officer Defendants Anthony F. Earley, Jr., Geisha J. Williams, Nickolas*

12

New York, NY 10017
Telephone: (212) 455-2000

*Stavropolous, Julie M. Kane, Christopher P. Johns, Patrick M. Hogan, David Thomason,*

13

Facsimile: (212) 455-2502

*and Dinyar Mistry*

14

Email: jyoungwood@stblaw.com
        ngoldin@stblaw.com

15

*Attorneys for Defendant Directors Barbara L.*

16

*Rambo, Lewis Chew, Fred J. Fowler, Richard C. Kelly, Roger H. Kimmel, Richard A.*

17

*Meserve, Forrest E. Miller, Maryellen C. Herringer, Barry Lawson Williams, Rosendo*

DAVIS POLK & WARDWELL LLP

18

*G. Parra, Anne Shen Smith and Eric D. Mullins.*

19

/s/ Neal A. Potischman

20

Neal A. Potischman (SBN 254862)
1600 El Camino Real
Menlo Park, California 94025

21

Telephone: (650) 752-2000
Facsimile: (650) 752-2111

22

Email:   neal.potischman@davispolk.com

23

Charles S. Duggan (admitted *pro hac vice*)
Dana M. Seshens (admitted *pro hac vice*)

24

Craig T. Cagney (admitted *pro hac vice*)
450 Lexington Avenue

25

New York, New York 10017
Telephone: (212) 450-4000

26

Facsimile: (212) 701-5800
Email:   charles.duggan@davispolk.com

27

        dana.seshens@davispolk.com
        craig.cagney@davispolk.com

28

*Attorneys for Underwriter Defendants Barclays*

OPPOSITION TO MOTION TO INTERVENE

CASE No. 5:18-cv-03509-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Capital Inc., BNP Paribas Securities Corp.,
Morgan Stanley & Co. LLC, MUFG Securities
Americas, Inc., The Williams Capital Group,
L.P., Citigroup Global Markets Inc., J.P
Morgan Securities LLC, Merrill Lynch, Pierce,
Fenner & Smith Incorporated (n/k/a BofA
Securities, Inc.), Mizuho Securities USA LLC,
Goldman, Sachs & Co., LLC, RBC Capital
Markets, LLC, Wells Fargo Securities, LLC,
BNY Mellon Capital Markets, LLC, TD
Securities (USA) LLC, C.L. King & Associates,
Inc., Great Pacific Securities, CIBC World
Markets Corp., SMBC Nikko Securities
America, Inc., U.S. Bancorp Investments, Inc.,
Mischler Financial Group, Inc., Blaylock Van,
LLC, Samuel A. Ramirez & Company, Inc., and
MFR Securities, Inc. (but not Lebenthal & Co.
LLC, which has not appeared in this action)*

20