**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
140 Broadway
New York, New York 10005

*Lead Counsel to Lead Plaintiff and the Proposed Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
One Lowenstein Drive
Roseland, New Jersey 07068

*Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

*Additional counsel listed on Exhibit A*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br><br>**SECURITIES PLAINTIFFS' PARTIAL OBJECTION TO MOTION OF REORGANIZED DEBTORS FOR ENTRY OF ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**<br>**[ECF NO. 13745]**<br><br>Date:      June 7, 2023<br>Time:      10:00 a.m. (PT)<br>Before:    (Tele/Videoconference Only)<br>              United States Bankruptcy Court<br>              Courtroom 17, 16th Floor<br>              San Francisco, California 94102<br><br>**Objection Deadline:** May 31, 2023, 4:00 p.m. (PT) |

Public Employees Retirement Association of New Mexico ("**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**") pending in the U.S. District Court for the Northern District of California (the "**District Court**"), on behalf of itself and the proposed class it represents in the Securities Litigation (the "**Class**"), together with York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund (together with PERA, "**Securities Plaintiffs**"), hereby submit this partial objection (the "**Objection**") to the motion (the "**Motion**") (ECF No. 13745) of the above-captioned reorganized debtors (the "**Reorganized Debtors**") for entry of an order further extending the deadline for the Reorganized Debtors to object to claims and for related relief. It is the "related relief" that is the focus of this Objection, as the Motion requests additional procedures that impact the rights of Class members against the Non-Debtor Defendants (defined below) in the Securities Litigation. In that regard, and subject in all respects to the reservation of rights set forth in Exhibit B annexed hereto, Securities Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT

PERA, on behalf of itself and the Class members that it represents, files this objection to the Motion to raise specific objections to the Reorganized Debtors' proposed modifications to the Securities ADR Procedures[1] that would result in extreme prejudice to the rights of the Securities Plaintiffs and all Class members in the Securities Litigation pending in the District Court. The Reorganized Debtors' proposal to have Securities Claimants "adopt" the PERA Complaint in connection with merits based determinations of federal securities law violations against the Debtors in this Court raises a host of due process, jurisdictional, and fundamental fairness concerns that will negatively impact PERA and all the Class members it represents in the Securities Litigation. Accordingly, PERA requests that this Court deny that portion of the

---

[1] Capitalized terms used by not defined herein shall have the meaning ascribed to such terms in the Motion.

Motion seeking modifications to the Securities ADR Procedures relating to merits based determinations of Securities Claims for these reasons and the reasons detailed below.

## BACKGROUND

### A.     The Securities Litigation in the District Court

Through the Securities Litigation, the Securities Plaintiffs assert claims individually and on behalf of the Class[2] under the Securities Exchange Act of 1934 §§ 10(b) and 20(a), 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Securities Act of 1933 §§ 11 and 15, 15 U.S.C. §§ 77k, 77o. *See* Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "**PERA Complaint**"). The Class is defined, with certain exclusions, as all persons that purchased or acquired PG&E publicly traded securities between April 29, 2015 and November 15, 2018 (the "**Class Period**"), and were damaged thereby, and all persons or entities that acquired PG&E senior notes in or traceable to one or more of the Notes Offerings[3] and corresponding Offering Documents, and who were damages thereby (the "**Securities Act Subclass**").  (PERA Complaint, ¶¶ 11, 463, 687).

On September 10, 2018, the District Court issued an order appointing PERA as lead plaintiff and their counsel, Labaton Sucharow LLP, as lead counsel.  (D.C. ECF 29, 62).[4]  The

---

[2]     As the court-appointed lead plaintiff in the Securities Litigation, Lead Plaintiff remains a fiduciary for Class members, including those who may have also filed Rescission and Damage Claims individually against the Debtors. *See, e.g.*, *Eubank v. Pella Corp.*, 753 F.3d 718, 723-24 (7th Cir. 2014) ("Class representatives are . . . fiduciaries of the class members. . . ."); *Schick v. Berg*, No. 03 Civ. 5513 (LBS), 2004 WL 856298, at *54 (S.D.N.Y. Apr. 20, 2004) ("The general rule is that the named plaintiff and counsel bringing the action stand as fiduciaries for the entire class, commencing with the filing of a class complaint."); *cf. In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.").

[3]     "Notes Offerings" refers to the Debtors' March 2016 public offering of senior notes, the Debtors' December 2016 public offering of senior notes, the Debtors' March 2017 public offering of senior notes, and the Debtors' April 2018 public offering of senior notes.  The "Offering Documents" refers to the Registration Stement and Prospectus (to include all amendments and supplements thereto for each offering, together with all documents incorporated by reference in each Registration Statement and Prospectus).  PERA Complaint, ¶ 496 n.149; *see also* ¶ 630(a)-(d); 687.

[4]  Citations herein to "D.C. ECF" refer to the electronic case file docket number in the District Court.

District Court's order specifically provided that "Lead Counsel shall have the authority to speak for all Plaintiffs and Class members in all matters regarding the litigation, including, but not limited to, pretrial proceedings, motion practice, trial, and settlement." (D.C. ECF 62, ¶ 10). The order further provided that lead counsel's responsibilities included the responsibility "to initiate and conduct any settlement negotiations with Defendants' counsel." *Id.*, ¶ 10(f).

The named defendants in the Securities Litigation are the Debtors, twenty of the Debtors' current and former directors and officers (the "**Individual Defendants**"), and 24 investment banks that underwrote public offerings of PG&E senior notes (together with the Individual Defendants, the "**Non-Debtor Defendants**"). (PERA Complaint, ¶¶ 42-50, 509-54). By virtue of the Chapter 11 Cases and this Court's *Order Confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (ECF 8053) (the "**Confirmation Order**"), the Securities Litigation is proceeding solely against the Non-Debtor Defendants.[5]

The PERA Complaint alleges that the Non-Debtor Defendants intentionally or recklessly made materially false and misleading statements, including misrepresentations regarding the Debtors' increased investments in vegetation management, implementation of a "shutoff protocol" to turn off electric power for safety during extreme fire danger conditions, and compliance with safety regulations. (PERA Complaint, ¶¶ 188-320). As corrective information came to light regarding the Debtors' false statements to the marketplace concerning their widespread violations of safety regulations, deficient investments in safety, illusory "shutoff protocol," and cover-up of inadequate safety practices, the Securities Plaintiffs and Class members who purchased PG&E securities at artificially inflated prices during the Class Period suffered substantial damages. (PERA Complaint, ¶¶ 321-390).

The PERA Complaint also alleges violations of the Securities Act of 1933 (the "**Securities Act**") against forty-one officers, directors, and underwriters in connection with six

---

[5] Confirmation Order ¶ 52(c): "For the avoidance of doubt, nothing in Section 10.6 of the Plan shall enjoin the continued prosecution or resolution of [the Securities Litigation] against any non-Debtor defendant, except (a) with respect to any claim by any Releasing Party, and (b) to the extent that some or all of the claims asserted in the [Securities Litigation] are determined by an unstayed order of a court of competent jurisdiction to be derivative claims belonging to the Debtors, such argument and any opposition thereto being fully preserved."

debt offerings. (PERA Complaint, ¶¶ 511-556, 693-706). Many of PERA's claims for relief are not brought against the Debtors, but rather, against twenty-four underwriters and seventeen PG&E officers and directors for violations of federal securities laws.

On October 4, 2019, the Non-Debtor Defendants filed two motions to dismiss the PERA Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (D.C. ECF Nos. 148, 155). These motions were fully briefed on January 13, 2020, and the District Court submitted them without oral argument on January 29, 2020 (D.C. ECF No. 175); the motions currently remain pending.

On September 30, 2022, the District Court entered an *Order Staying Action Pending Resolution of Chapter 11 Bankruptcy* (D.C. ECF 217) (the "**Stay Order**"). On October 31, 2022, PERA filed a *Notice of Appeal*, appealing the Stay Order to the Ninth Circuit. (D.C. ECF 218). That appeal currently remains pending.

**B.     The Motion and the Proposed Securities Claims Merits Litigation Procedures**

Through the Motion, the Reorganized Debtors seek, *inter alia*, not only to further extend the current claims objection deadline (to which the Securities Plaintiffs do not object), but also to implement proposed securities claims merits litigation procedures (the "**Merits Procedures**"). Well over three years after the bar date for filing Rescission or Damage Claims, the Merits Procedures proposed by the Reorganized Debtors would now require that every Securities Claimant either "provide the Reorganized Debtors with a complaint or similar disclosure; or (b) adopt the alleged misstatements identified in, and allegations made in the PERA Complaint as the basis for their claims". (Motion at 25). Even though Securities Claimants were provided with notice to submit claim forms drafted by the Debtors to preserve their claims, the Reorganized Debtors now propose that a Securities Claimant's failure to timely make an election and respond to the Reorganized Debtors would subject such Securities Claimant's claim to disallowance by this Court.

Moreover, the proposed Merits Procedures provide that "any Securities Claimant who adopts the PERA Complaint will be bound by any determination by the Bankruptcy Court of the law or facts with respect to the resolution of any merits issues regarding the PERA Complaint,

regardless of the claimant who makes or opposes the motion, objection, or filing." (*Id*. at 25-26). The Reorganized Debtors take this position despite the fact that only claims against the Reorganized Debtors are currently at issue in this Court and that the claims against the Non-Debtor Defendants are pending solely in the Securities Litigation. Indeed, this Court has no jurisdiction to determine Class members' claims against Non-Debtor Defendants. (Confirmation Order ¶ 52(c)). The Motion further proposes that by November 7, 2023, the Reorganized Debtors will file "a substantive motion to dismiss all or portions of the PERA Complaint, similar to the motions to dismiss filed in the Securities Litigation by the director and officer defendants". (*Id*. at 26).

## **OBJECTION**

After twice objecting to class treatment of the securities claims under Bankruptcy Rule 7023, the Reorganized Debtors now propose a class-like resolution of Class members' claims that provides the Reorganized Debtors all of the benefits of a collective resolution of thousands of claims but strips Class members of the protections afforded by Rule 23 – principally the requirement of adequacy from the class representative and their counsel. Having resisted application of Bankruptcy Rule 7023 to resolve the thousands of Securities Claims and having insisted that the adjudication of the Securities Claims in the Bankruptcy Court should be on a completely individualized basis and distinct from the Securities Litigation, the Reorganized Debtors now seek to have it both ways where they believe it is in their interest to do so.

The proposed Merits Procedures are not only a blatant attempt by the Reorganized Debtors to improperly cherry pick what they perceive as the benefits to the Reorganized Debtors of a hybrid collective class action-type claim resolution process, they also trample the Due Process rights of Securities Claimants – including the substantive rights of Class members in the Securities Litigation pending solely against the Non-Debtor Defendants. *See Expert Declaration of Professor William B. Rubenstein* (the "**Rubenstein Declaration**") ¶ 17 ("The Supreme Court has long held that the class action is constitutionally permissible if, but only if, certain core features are guaranteed; class members must be given notice, an opportunity to be heard and participate, a right to opt out, and adequate representation at all times.").

1   Nearly two and a half years since this Court approved the Securities ADR Procedures,

2   the Reorganized Debtors still face approximately 4,200 unresolved Securities Claims – not a

3   "few" as the Reorganized Debtors had hoped for.  Instead of admitting that the individual

4   resolution of these numerous unresolved claims on the merits is not efficient, expeditious, or

5   superior to class treatment, the Reorganized Debtors want these claimants to essentially start

6   over in order to pursue their claims.  In doing so, they propose placing enormous and unjustified

7   burdens on individual Securities Claimants and providing them the "option" to "adopt" the

8   PERA Complaint, which is the subject of litigation that is exclusively against Non-Debtor

9   Defendants before the District Court and involves different parties and claims.  To further tilt the

10  playing field in favor of the Reorganized Debtors, the Merits Procedures would bind Securities

11  Claimants that adopt the PERA Complaint (rather than incur the cost of drafting their own

12  complaint) to any factual or legal finding of this Court concerning the PERA Complaint without

13  the opportunity to represent themselves on an individual basis as to those claims.  Rather, the

14  Reorganized Debtors seek to bind those Securities Claimants with respect to merits decisions

15  regarding the Securities Claims of other Class members who have no fiduciary obligations to

16  one another, have not been deemed adequate representatives, and have not been determined to

17  have claims typical of those of other claimants.  The Reorganized Debtors also fail to adequately

18  disclose that the proposed Merits Procedures will prejudice Securities Claimants/Class members

19  with respect to their claims against the Non-Debtor Defendants.

20  The Reorganized Debtors offer absolutely no basis for how this process – supposedly

21  adopted to address the thousands of individual Rescission and Damage Claims that remain

22  unresolved – is consistent with fundamental fairness, principles of *res judicata*, issue preclusion,

23  or having claims determined on an individualized basis, as the Securities ADR Procedures

24  contemplate and require.

25  **A.    The Merits Procedures Would Violate the Due Process Clause of the U.S.**
26  **Constitution.**

27  The Merits Procedures would trample the Due Process Clause of the U.S. Constitution by

28  mandating "that any Securities Claimant who adopts the PERA Complaint will be bound by any

determination by the Bankruptcy Court of the law or facts with respect to the resolution of any

merits issues regarding the PERA Complaint, regardless of the claimant who makes or opposes the motion, objection or filing."  (Motion at 25-26).  This provision aims to have ***any*** individual claimant's litigation preclude ***every other*** claimants' causes of action, even if those other claimants are not joined as parties to the individual claimant's litigation and given notice and an opportunity to be heard there.  *See* Rubenstein Declaration ¶ 1.

Unsurprisingly, the Motion cites no legal authority to support this proposed trampling of the Due Process rights of Securities Claimants – including the substantive rights of Class members in the Securities Litigation pending solely against the Non-Debtor Defendants.  That is because it would violate the central premise of the Due Process Clause:  the "day in court" ideal, which guarantees that no one can be bound to the outcome of an adjudication to which he is not a party.  *See id.* ¶¶ 1, 15.[6]

The Reorganized Debtors have resisted all requests for a collective process to resolve Securities Claims, and instead have insisted on treating such claims on an individual basis.  As such, an adjudication of one Securities Claimant's claim cannot have preclusive effect on other Securities Claimants who were not parties to the litigation.  "For *res judicata* to apply, three elements must be present:  '(1) an identity of claims; (2) a final judgment on the merits; and (3) the same parties or their privies.'"  *Kim v. BMW of N. Am., LLC*, No. 5:22-cv-00202-JWH-KK, 2023 WL 3551804, at *3 (C.D. Cal. Feb. 21, 2023) (quoting *Gallardo v. AT&T Mobility, LLC*, 937 F.Supp.2d 1128, 1134 (N.D. Cal. 2013)); *see also* Rubenstein Declaration ¶ 16 ("The current proposal aims to use the judgment in any proceeding herein litigated by any claimant that adopted the PERA complaint to bind all claimants who adopt the PERA complaint, regardless of whether they were parties to the specific adjudication.  This is precisely the form of non-party preclusion that the Due Process Clause clearly forbids.").

It is no secret what the Reorganized Debtors are really seeking to accomplish by attempting to bind all Securities Claimants to an adjudication of legal or factual issues related to

---

[6] Professor Rubenstein, the Bruce Bromley Professor of Law at Harvard Law School, is widely recognized as a leading expert on complex litigation.  Rubenstein Declaration ¶ 1.  For the past fifteen years, he has been the sole author of the leading national treatise on class action law, *Newberg on Class Actions*.  *See id.* ¶ 4.  In connection with his authorship of that treatise, he wrote and published a scholarly treatment of preclusion in complex litigation that is regularly relied on in federal court opinions throughout the country.  *See id.*

the PERA Complaint. The Reorganized Debtors will undoubtedly seek out Securities Claimants unversed in complex federal securities litigation and/or claimants with a relatively small economic interest, in order to secure favorable factual and legal rulings that the Reorganized Debtors will then use to bind Securities Claimants with very significant claims, not only against the Debtors but also against the Non-Debtor Defendants who are not even before this Court.

This is yet another example of the Reorganized Debtors seeking to reap the benefits of a class action type process, while simultaneously depriving Securities Claims of the protections embedded in such a process. Specifically, when an adjudication of allegations contained in a complaint are going to bind all parties with an interest in the litigation, it is imperative that a court ensure that the party who is actively engaged in such litigation adequately represents the interests of the those who will be bound. Equally important, the litigating party must demonstrate its competency to engage in litigation and to protect the interests of others. These are the very protections that a court ensures are in place when it appoints lead plaintiff and lead counsel in securities class action litigation, as was done when the District Court appointed the Lead Plaintiff in the Securities Litigation. *See id.* ¶ 17 ("The Supreme Court has long held that the class action is constitutionally permissible if, but only if, certain core features are guaranteed: class members must be given notice, an opportunity to be heard and participate, a right to opt out, and adequate representation at all times.").

But here, the Reorganized Debtors want to benefit from challenging claims asserted against them on a collective basis, including using the *class action* PERA Complaint for a merits determination, but yet want the ability to choose which individual Securities Claimant they will litigate against, and then have the results of the adjudication binding upon all other Securities Claimants even as to claims not before this Court. Such a process is completely divorced from all principles of equity and the individualized treatment of claims. *See id.* ¶ 18 ("The proposal at issue is not for a class action and embodies none of the class action protections that would justify non-party preclusion: there is no guarantee that the preclusive judgment will be of common claims, litigated by a representative whose claims are typical, and represented by adequate claimant or counsel.").

1  The Reorganized Debtors attempt to bypass these requirements necessary for the

2  application of the doctrine of *res judicata* by simply inserting the provision of the binding effect

3  of determinations related to the PERA Complaint within the Merits Procedures.  This is

4  improper and should not be permitted by this Court.

5  **B.  The Merits Procedures Will Directly Impact the claims Against the Non-Debtor**
     **Defendants in the Securities Litigation.**

6

7  In opposing Securities Plaintiffs' earlier requests for this Court to apply Bankruptcy Rule

8  7023 and certify a class as the most efficient means to resolve the Securities Claims on a global

9  basis, the Reorganized Debtors claimed that their Securities ADR Procedures would not interfere

10 with the claims that the Securities Plaintiffs were pursuing against the Non-Debtor Defendants in

11 the District Court.  Indeed, this very issue was extensively discussed at the November 18, 2020,

12 combined hearing to consider Securities Plaintiffs' renewed motion to apply Bankruptcy Rule

13 7023 and the Reorganized Debtors' motion to approve the Securities ADR Procedures.  At that

14 hearing, counsel for the Reorganized Debtors repeatedly assured this Court that the Securities

15 ADR Procedures would be distinct from the claims being asserted by Class members in the

16 District Court and would be a superior process for quickly resolving the thousands of Securities

17 Claims asserted against the Debtors:

18    MR. SLACK:  And so Your Honor, literally within a couple of months,
      we expect the settlement process to begin, and to be fruitful. And while
19    that settlement process is going on, it allows certain merits issues,
      certainly, to be addressed by the district court, without the risk of any
20    inconsistent rulings between this court, and the district court, because
      under our proposal, all of the merits issues, so that there's no discovery,
21    there's no expense, all the merits issues are put off until we can see
      whether we can make real progress, which we expect to do under the
22    settlement procedures…[7]

23                                    * * *

24    THE COURT: . . . Let's suppose we have a claimant who filed a claim for
      100,000 dollars. . . and the company offers that claimant. . . 30,000, and
25    the claimant says okay, I'll take it, that claimant gets 30,000 dollars.  I
      presume that claimant can still preserve its claim against third parties,
26    officers and directors.  But what is the connection between that process
      and the bankruptcy court, and whatever happens, whenever it happens,
27    and the district court?

28

[7]  *See* Nov. 18, 2020 Hr'g Tr. at 9:7-16.

1    MR. SLACK:  Under our procedures, there is none in that process.  That's
2    exactly our point.  We do not –

3    THE COURT:  So if the claimant –

4    MR. SLACK:  -- believe there's any conflict.

5    THE COURT:  Okay.  So if the claimants says, no, thank you, I don't
6    want your 30,000 dollars, then under your proposal, it goes to various
     levels of mediation, but still is independent of the district court, right?
7
8    MR SLACK:   Under our procedures, we believe that it's entirely
     independent of the district court. At some point, Your Honor, here's the
9    only point I'd make, let's assume that down the road Your Honor does
     have to deal with one or more claims on the merits, under our procedures,
10   we believe that we've given the district court time to issue its rulings on
     the merit, and that could impact Your Honor's decisions on the merits later
11   on. But our procedures, right, as we try to settle these cases, Your Honor,
     is not in conflict at all with the district court, and what the district court's
12   doing.

13   THE COURT:  Okay. So if I can turn it around to you, my hypothetical
14   claimant takes the 30,000, and he's gone, and if he has a claim that he
     wishes to pursue against officers and directors, that's for another day, and
15   another court, and another judge. But if the claimant says no, thank you,
     and goes through one or two rounds of mediation without a resolution,
16   then he's in the queue to be dealt with on a merits matter, and that might
     be relevant, depending upon whatever happens in the district court; is that
17   correct?
18
19   MR. SLACK:   I think that's right, Your Honor. I would say it the
     following way, is that at the end of our process, to the extent there's a few
20   claims that are remaining, Your Honor may be asked to decide the merits.
     And what we would suggest at that time is some type of collective action,
21   much like what Your Honor did with the post-petition interest issue where
     there were thousands of people who had that issue as well. We worked out
22   a representative process to resolve that, and we would assume that we
     would be able to do the same thing down the road if we needed to here.
23
24   THE COURT:  Well, I appreciate your optimism, Mr. Slack, after the
     procedure you said there will just be a few claims left, that's nice to know.
25   Okay. Go ahead.[8]

26        It is clear from this record that the Reorganized Debtors relied on two key assumptions to

27   support their request to approve the Securities ADR Procedures, as opposed to a collective class

28

---

[8]  *See id.* at 10:18-12:18.

process:

> (i) Upon the conclusion of the Securities ADR Procedures, there would only be "a few" claims remaining that would require an adjudication on the merits; and

> (ii) During the time the Reorganized Debtors were making settlement offers and/or conducting mediations, the District Court would adjudicate the merits of the claims asserted in the PERA Complaint, to avoid the risk of inconsistent rulings between this Court and the District Court.

The Reorganized Debtors' assumptions have been proven wrong, a fact they fail to acknowledge in the Motion. The Reorganized Debtors have even taken inconsistent positions before the District Court, challenging the Securities Plaintiffs' opposition to the Stay Order to allow a merits-based adjudication of the Securities Litigation to move forward – even though leaving the Securities Litigation against the Non-Debtor Defendants untouched was a key assertion the Reorganized Debtors made in seeking approval of the Securities ADR Procedures. First, the Reorganized Debtors state in the Motion that out of the 8,848 Securities Claims, only 4,650 Securities Claims have been resolved over the past 28 months, leaving approximately 4,200 Securities Claims currently pending. (Motion at 13). This is a far cry from the "few claims" the Reorganized Debtors told this Court they believed would be pending this far along in the Securities ADR Procedures process, or the "very small number" of claims that would even need to be mediated.[9]

Second, the District Court has not been actively adjudicating the merits of the claims asserted in the PERA Complaint. Instead, the District Court's Stay Order has administratively stayed the Securities Litigation, a stay that the Reorganized Debtors supported notwithstanding their earlier representations to this Court.[10] The Non-Debtor Defendants' pending motions to

---

[9] *See* Nov. 18, 2020 Hr'g Trans. at 46:22-25 (Mr. Slack: "We expect that most of these are going to get done just by getting settlement offers. And so we think the number that's actually going to be mediated is a – is a very small number.")

[10] Tellingly, even though the Reorganized Debtors assumed that the District Court would be adjudicating the merits of the PERA Complaint, when the District Court indicated its intent to stay the Securities Litigation, which the Lead Plaintiffs opposed, the Reorganized Debtors filed a brief attacking the Lead Plaintiffs' opposition to staying the Securities Litigation. *See PG&E Corporation's Response to Lead Plaintiffs' Objection to the Court's Notice of Intent to Stay* (D.C. ECF 206).

dismiss the PERA Complaint, filed in January 2020, have not been decided.

Rather than reconsidering their further pursuit of the Securities ADR Procedures and admitting that their opposition to a collective class process at the outset of the Chapter 11 Cases was a mistake, the Reorganized Debtors have instead decided to double down by proposing the Merits Procedures, which impermissibly and prejudicially implement aspects of a collective claims resolution process without any of the protections for individual Securities Claimants typically built into a collective adjudication process.

More troubling, the Merits Procedures would link the substantive Class claims asserted by the Securities Plaintiffs in the Securities Litigation against the Non-Debtor Defendants with the Securities ADR Procedures to be adjudicated by this Court, by having Securities Claimants adopt the operative Class complaint being used to prosecute claims against the non-Debtor Defendants in the District Court, for use in adjudicating claims solely against the Debtors in this Court. This is the exact opposite of what the Reorganized Debtors represented to this Court they would do at the time the Securities ADR Procedures where approved. *See also* Rubenstein Declaration ¶ 25 ("[I]t is especially troubling when, as here, there is a parallel action against the directors and officers, pending in a federal court and governed by a very specific federal statutory framework. . . . This proposal is something of a bait and switch, whereby securities claimants are asked to consent to one thing, but the effect of that consent is to curtail another."); *see also id*. ¶¶ 19-24 (opining that the consent exception to non-party preclusion is legally inapplicable and factually fictional here).

### C. Requiring Securities Claimants to Further Supplement Their Rescission or Damages Claims is Improper Under the Circumstances.

As set forth above, the Reorganized Debtors' predictions that most of the Securities Claims would be resolved through the offer and acceptance process, leaving "a very small number" of claims for mediation, and "a few" claims for merits based determinations, has proven to be wrong. Thousands of Securities Claimants have timely completed and filed the detailed and hotly negotiated Rescission or Damage Claim form that was agreed to *by the Debtors*, and have provided all of the requested additional information concerning their claims and trading actively, as were required by the Reorganized Debtors and the Securities ADR

Procedures. However, the Merits Procedures would now require that each Securities Claimant further supplement its Rescission or Damage Claim – nearly three years after their claims were originally filed and after the Reorganized Debtors already sought and received substantial additional information from individual Securities Claimants.

Clearly, the Reorganized Debtors are attempting to present Securities Claimants/Class members with no choice at all unless they want to go through the expense of preparing their own complaints or prejudice their claims as Class members against the Non-Debtor Defendants in the District Court. The Motion attempts to couch the extraordinary relief requested through implementation of the Merits Procedures as "consistent with the position taken by the Reorganized Debtors at the time the Securities Procedures were adopted." (Motion at 3). This statement is impossible to square with the reality of the claims resolution process as it stands today and the Reorganized Debtors' prior, contrary statements on the record.

There is not "a small number" or "a few" Securities Claims that need to be resolved – there are about **4,200** pending claims. Even if this number were to be reduced by whatever Securities Claims the Reorganized Debtors manage to settle over the coming weeks, the Reorganized Debtors are asking this Court to order thousands of Securities Claimants to amend their claims by no later than September 2023 or risk having their claims disallowed. (Motion at 25-26). In essence, the Reorganized Debtors are imposing the consequences of their own misguided Securities ADR Process upon the thousands of Securities Claimants who timely filed claims, by setting yet another trap to disallow Securities Claims and now prejudice the separate litigation of the claims against the Non-Debtor Defendants in the District Court. This Court should not condone such a result.

### D. Securities Claimants Cannot "Adopt" the PERA Complaint to Support Their Securities Claims.

The irony is not lost on the Securities Plaintiffs that the Reorganized Debtors – who so vigorously opposed applying Bankruptcy Rule 7023 and certifying a class to resolve thousands of Securities Claims – now ask this Court to force Securities Claimants to "adopt" the class action PERA Complaint as one of just two options to avoid having their Securities Claims disallowed.

The most obvious defect in the process the Reorganized Debtors seek to impose by the Motion is that the PERA Complaint is the operative complaint in the Securities Litigation to prosecute claims against *Non-Debtor Defendants*. By comparison, the Securities Claims at issue in this Court are exclusively against the Debtors. As the Reorganized Debtors have previously argued to and conceded before this Court, the claims asserted in the Securities Litigation are separate and distinct from the claims resolution process that is currently before this Court. Curiously, the Motion defines the Securities Litigation as "the securities litigation between PG&E and PERA". (Motion at 3). But this is inaccurate, as the Securities Litigation only involves claims against the Non-Debtor Defendants.

The Motion fails to provide any citation to legal authority for the proposition that a Securities Claimant may "adopt the alleged misstatement identified in, and allegations made in the PERA Complaint as the basis for their claims". (Motion at 25). This omission is unsurprising given the multitude of grounds for denying the request to authorize Securities Claimants to "adopt" the PERA Complaint.

*First,* the PERA Complaint involves claims brought by PERA, as a court-appointed lead plaintiff, against **forty-four Non-Debtor Defendants** that are not subject to this Court's jurisdiction, and concern claims that require showings of proof that are different from the proofs that are required to establish liability against the Debtors. It would be improper for individual Securities Claimants to adopt claims and allegations against the Non-Debtor Defendants, yet this is exactly would the Reorganized Debtors now propose.

By way of illustration, the PERA Complaint alleges violations of the Securities Act against forty-one officers, directors and underwriters in connection with six debt offerings that are **not alleged against the Debtors**. (PERA Complaint, ¶¶ 511-556, 693-706). Specifically, PERA's Fifth Claim for relief is not brought against the Debtors but rather against twenty-four underwriters and seventeen PG&E officers and directors for violations of § 11 of the Securities Act, 15 U.S.C. § 77k, for negligence in connection with the issuance of certain notes offerings. (PERA Complaint, ¶¶ 693-702). Likewise, PERA's Sixth Claim for relief **is not brought against the Debtors** but rather against seventeen PG&E officers and directors as control persons for

violations of § 15 of the Securities Act, 15 U.S.C. § 77o.  (PERA Complaint, ¶¶ 703-706).

The PERA Complaint also alleges Exchange Act claims that either **are not alleged against the Debtors** or contain allegations that are not applicable to claims against the Debtors. PERA's First Claim for relief is brought against six non-Debtor former PG&E officers for violations of the Securities and Exchange Act of 1934 (the "**Exchange Act**").  (PERA Complaint, ¶¶ 45-51, 471-480).  It also includes allegations that are simply not applicable to the Debtors.  *See, e.g.*, PERA Complaint, ¶ 476 (pertaining to knowledge of the Individual Defendants, not the Debtors).  Further, PERA's Second Claim for relief is **not brought against the Debtors** but rather against six PG&E former officers as control persons for violations of § 20(a) of the Exchange Act.  (PERA Complaint, ¶¶ 481-486).  Because many of the allegations simply do not apply to Debtors, the Reorganized Debtors' proposal that the claimants adopt the PERA Complaint should be rejected.

**Second**, because the Securities Act allegations in the PERA Complaint have not been alleged against the Debtors (*see* PERA Complaint, ¶¶ 509-556), all Securities Claimants would necessarily fail to sufficiently allege any Securities Act claims against the Debtors in the event they elect to adopt the PERA Complaint.  Consequently, Securities Claimants with purchases in one of the six offerings at issue with respect to Securities Act violations would likely be forced to file yet another amendment to their Rescission and Damage Claims.  Thus, the Reorganized Debtors' proposal creates a perverse result.

**Third**, the Reorganized Debtors ignore that the Securities Act claims in the PERA Complaint are subject to notice pleading, not the heightened pleading standards of the Private Securities Litigation Reform Act of 1995.  *Hunt v. Bloom Energy Corp.*, No. 19—cv-02935-HSG, 2021 U.S. Dist. LEXIS 187321, at *10 (N.D. Cal. Sept. 29, 2021) (Gilliam, J.); *see also, Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).").  Thus, any proof of claim need only provide the Debtors with notice of the claims asserted against them, which the detailed specifically tailored proof of claim form and supporting documentation arguably already do.

**Fourth**, the PERA Complaint is a complex 227-page legal document that provides an exhaustive accounting of the facts supporting the allegations made against the Non-Debtor Defendants, which was produced after comprehensive due diligence by legal professionals who regularly practice in the highly specialized area of securities class action litigation. Similarly, the legal theories that form the basis for the claims asserted in the PERA Complaint are grounded in numerous federal securities laws and statutes, as further developed by case law. It is patently unreasonable to expect that individual Securities Claimants or attorneys who do not regularly practice in this specialized practice area will be able to certify that in adopting the PERA Complaint they have made an "inquiry reasonable under the circumstances," as required by Bankruptcy Rule 9011(b) and Rule 11 of the Federal Rules of Civil Procedure, or to affirm that they have a "reasonable belief that the information is true and correct," as required by Official Bankruptcy Form B410.

More fundamentally, the proposal that Securities Claimants adopt the PERA Complaint invites Securities Claimants to adopt claims that there is simply no basis for them to allege. For example: (i) individual Securities Claimants who only have claims related to purchases of equity securities (and filed Rescission and Damage Claim only with respect to such claims) by default do not have Securities Act claims, as alleged by PERA because the Securities Act claims in the PERA Complaint involve only debt offerings (PERA Complaint, ¶ 496); (ii) individual Securities Claimants who did not purchase securities pursuant to one or more of the six note offerings alleged in the PERA Complaint as part of its Securities Act claims will have no basis to allege such claims (*id.* (describing Notes Offerings)); and (iii) individual Securities Claimants asserting Exchange Act claims who sold out of their PG&E securities positions before any corrective disclosures alleged by PERA, or before misrepresentations the PERA Complaint alleges artificially inflated the price of the PG&E securities, may have no basis to adopt the allegations contained in the PERA Complaint that spans the April 29, 2015 through November 15, 2018 Class Period (PERA Complaint, ¶¶ 287-315, 327-390).[11]

---

[11] By way of illustration, a Securities Claimant who sold all of their PG&E securities prior to June 8, 2018, would not have a basis to allege misstatements that PERA alleges in June, September, and October of 2018 because they did not purchase PG&E securities at artificially inflated prices. (PERA Complaint, ¶¶ 287-315). Similarly, Securities Claimants may not have a

1   Finally, from a jurisdictional perspective, adoption of the factual and legal allegations in

2   the PERA Complaint raises a host of troublesome issues.  The claims that the Reorganized

3   Debtors invite the Securities Claimant to adopt include non-core claims against Non-Debtor

4   Defendants that can only be adjudicated by an Article III court.  Moreover, the PERA Complaint

5   asserts a jury trial demand for all claims.  The Reorganized Debtors do not even begin to offer an

6   explanation of how this Court's adjudication of certain of the claims contained in the PERA

7   Complaint would impact the jurisdiction of, or the adjudication of claims by, the District Court

8   in the Securities Litigation.  Any adjudication by this Court of claims asserted in the PERA

9   Complaint would be prejudicial to the Securities Plaintiffs' and Class members' rights in the

10  Securities Litigation.  *See* Rubenstein Declaration ¶ 25 ("The proposal therefore not only aims to

11  trump [Class members'] constitutional Due Process protections against non-party preclusion – it

12  simultaneously aims to trump their Seventh Amendment right to a jury trial against the officers

13  and directors.").

14  Accordingly, the Reorganized Debtors' proposal to have Securities Claimants adopt the

15  PERA Complaint is unsupportable under applicable law and should be rejected by this Court.

16

17

18

19

20

21

22

23

24

25

26

27  basis for claims for earlier portions of the Class Period.  Indeed, sixteen of the RKS Movants recently filed a complaint in district court against PG&E officers and directors covering a

28  relevant time period that does not begin until March 22, 2018 - nearly three years after the allegations in the PERA Complaint. *See Orbis Cap. Ltd. v. Williams, et. al.*, No. 5:23-cv-01314-EJD (N.D. Cal. Mar. 21, 2023).

1

2 **<u>CONCLUSION</u>**

3    For all of the foregoing reasons, the request to approve the Merits Procedures identified

4 in this Objection should be denied.

5

6 Dated: May 31, 2023                    **LOWENSTEIN SANDLER LLP**
                                          **MICHELSON LAW GROUP**
7
                                          By:    */s/ Randy Michelson*
8                                          Randy Michelson (SBN 114095)

9                                          *Bankruptcy Counsel to Lead Plaintiff and the Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## COUNSEL

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone  973-597-2500
Facsimile  973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone  415-512-8600
Facsimile  415-512-8601
randy.michelson@michelsonlawgroup.com

*Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
Aram Boghosian
140 Broadway
New York, New York 10005
Telephone  212-907-0700
tdubbs@labaton.com
lgottlieb@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone  415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Proposed Class*

*Lead Counsel to Lead Plaintiff and the Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone  619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone  415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone  313-578-1200
tmichaud@vmtlaw.com

*Additional Counsel for the Securities Act Plaintiffs*

**EXHIBIT B**

**RESERVATION OF RIGHTS**

This Limited Objection and any subsequent pleading, appearance, argument, claim, or suit made or filed by Lead Plaintiff, either individually or for the Class or any member thereof, do not, shall not, and shall not be deemed to:

    a.    constitute a submission by Lead Plaintiff, either individually or for the Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

    b.    constitute consent by Lead Plaintiff, either individually or for the Class or any member thereof, to entry by the Bankruptcy Court of any final order or judgment, or any other order having the effect of a final order or judgment, in any non-core proceeding, which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter or proceeding;

    c.    waive any substantive or procedural rights of Lead Plaintiff or the Class or any member thereof, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment, or any other order having the effect of a final order or judgment, on any matter; (b) the right to have final orders and judgments, and any other order having the effect of a final order or judgment, in non-core matters entered only after de novo review by a United States District Court judge; (c) the right to trial by jury in any proceedings so triable herein, in the Chapter 11 Cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, the Chapter 11 Cases, any Related Proceedings, or the Securities Litigation; (d) the right to seek withdrawal of the bankruptcy reference by a United States District Court in any matter subject to mandatory or discretionary withdrawal; or (e) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Lead Plaintiff or the Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which are expressly reserved.

For the avoidance of doubt, Lead Plaintiff, on behalf of itself and the Class, (a) reserves all rights with respect to any attempt by the Debtors and/or the Non-Debtor Defendants to (i) transfer venue of the Securities Litigation to this Court or (ii) otherwise seek any order of this Court adjudicating, releasing, waiving, enjoining, or otherwise impacting the claims of Lead Plaintiff and the Class or any member thereof against any Non-Debtor Defendants now or hereafter named in the Securities Litigation, and (b) does not, and will not impliedly, consent to this Court's adjudication of the claims asserted against any Non-Debtor Defendants now or hereafter named in the Securities Litigation.