MORGAN, LEWIS & BOCKIUS LLP
Melissa Y. Boey (SBN 292276)
Jennifer Feldsher (*pro hac vice*)
Susan F. DiCicco (*pro hac vice*)
1400 Page Mill Road
Palo Alto, CA 94304
Tel:   +1.650.843.4000
Fax:  +1.650.843.4001
melissa.boey@morganlewis.com

*Attorneys for the State of Oregon by and through the Oregon Investment Council on behalf of each of the Oregon Public Employees Retirement Fund, Common School Fund, Oregon Short Term Fund and Industrial Accident Fund.*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO

| | |
|---|---|
| **In re**<br>**PG&E CORPORATION**<br>-and-<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM) | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**OBJECTION AND JOINDER TO REORGANIZED DEBTORS' MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF [ECF No. 13745]**<br><br>**Hearing Date:** June 7, 2023<br>**Time:** 10:00 a.m. (PT)<br><br>**Place:** (Telephonic or Video Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

The State of Oregon by and through the Oregon Investment Council on behalf of each of the Oregon Public Employees Retirement Fund, Common School Fund, Oregon Short Term Fund and Industrial Accident Fund ("**Oregon**"), prepetition holders of PG&E Corporation's publicly traded debt and equity securities, through the undersigned counsel, submits this objection (the "**Objection**") to the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [ECF No. 13745] (the "**Motion**"). This Objection also joins in the BLA Schwartz Clients' Opposition To Reorganized Debtors' Sixth Extension Motion ("BLA Schwartz Clients' Objection"), which is incorporated herein by reference to the extent it is not inconsistent with Oregon's objections herein.

## SUMMARY OF OBJECTION

By their Motion, the Reorganized Debtors do not merely seek their *sixth* 180-day extension of the claims objection deadline. After three years of delays, including the Reorganized Debtors' undisclosed and unilateral suspension of the Court's approved ADR Procedures, the Reorganized Debtors now ask this Court to entirely abandon its bankruptcy claims allowance process and instead impose "Litigation Procedures" set forth in Exhibit C of the Motion (the "**Litigation Procedures**"), effectively requiring securities litigation for all unresolved securities claims. The Litigation Procedures should be denied in their entirety and the Reorganized Debtors' efforts to continue avoiding resolution of the securities claims for years to come should not be countenanced.

The Reorganized Debtors' proposed Litigation Procedures would require that by September 30, 2023 any unresolved securities claimants must (a) prepare and submit a complaint alleging their securities claims or adopt the allegations in the 216-page class action complaint filed by the Public Employees Retirement Association of New Mexico ("**PERA**") pending against various parties other than the Reorganized Debtors in the District Court (Case No: 5:18-cv-03509 (EJD)), (b) then oppose the Reorganized Debtors' motion to dismiss their claims based on their selected pleading, and (c) then litigate the merits of their claims in lengthy proceedings that will undoubtedly require expensive fact and expert discovery. The Reorganized Debtors expect up to 94 individuals or groups of claimants to proceed in this litigation process – effectively creating the equivalent of

multiple adversary proceedings for this Court to administer and resolve with complaints, motions to dismiss, discovery, experts and presumably summary judgment motions and trial, and appeals. The goal ostensibly to force claimants to accept paltry settlement amounts in order to avoid the onerous litigation procedures.

There is no need for the Reorganized Debtors' "Litigation Procedures" and there are no legal grounds that support them. Section 502(a) of the Bankruptcy Code provides that a claim or interest is deemed allowed unless a party in interest objects. Rule 3001(f) of the Federal Rules of Bankruptcy Procedure further provides that a proof of claim filed in accordance with the rules constitutes *prima facie* evidence of the validity and amount of a claim. Oregon has filed its proofs of claim <u>on specialized forms</u> created by the Debtors (and approved by this Court), supplemented its submissions at the Debtors' request and previously received confirmation from the Reorganized Debtors that its information was complete. Any suggestion the Reorganized Debtors do not understand the nature of Oregon's claims at this point in the proceedings is malarkey. Indeed, the Reorganized Debtors' own claim form for Securities Claims stated it was for claimants who:

> suffered losses as a result of alleged inadequate or fraudulent disclosure or non-disclosure of information about the Debtors that may have led you to purchase or acquire publicly traded debtor and/or equity securities during the period from April 29, 2015 through November 15, 2018. (Instructions for Rescission or Damage Claim Proof of Claim).

The Reorganized Debtors rebuffed class counsel's efforts to adjudicate class-wide securities claims against the Reorganized Debtors. Instead, they touted the benefits of the ADR Procedures and a streamlined claims allowance process as a method to getting claims resolved at little to no expense to claimants. Having created years of delay in implementing the ADR Procedures, the Reorganized Debtors should not be allowed to create a new obstacle to getting the securities claims resolved. If the Debtors do not want to allow the claims or mediate them in accordance with the ADR Procedures, the Bankruptcy Code requires them to object to the claims and the Court to resolve such objections.

With respect to the ADR Procedures, Oregon has no objection to the Reorganized Debtors' two minor changes. However, the existing ADR Procedures unfairly permit only the Reorganized Debtors to terminate the Offer Procedures and submit a claim to nonbinding mediation or proceed with the claims objection process. Oregon proposes that the same rights be afforded to claimants after there has been an exchange of offers between the Reorganized Debtors and such claimants, so claimants are not subject to a process that does not progress until the Debtors decide it should. Given the amount of time that has passed, fairness dictates that securities claimants be afforded an "off ramp" from the ADR Procedures.

## RELEVANT BACKGROUND

1. On January 29, 2019 (the "**Petition Date**"), PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company ("**Utility**", and together with HoldCo, the "**Reorganized Debtors**") commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California.

2. On February 27, 2020, the Court extended the claims bar date to April 16, 2020 (the "**Extended Securities Bar Date**") to permit claimants (the "**Securities Claimants**," and their claims, the "**Securities Claims**") that purchased or acquired the Reorganized Debtors' publicly held debt and equity securities during the period of April 29, 2015 to November 15, 2018 (the "**Securities Claim Period**") to assert claims under the securities laws against the Reorganized Debtors for rescission or damages arising out of their trading in those securities [ECF 5943] (the "**Extended Securities Bar Date Order**").

3. On April 16, 2020, Oregon timely filed six Rescission or Damages Proof of Claim Forms on account of certain of its represented funds' prepetition holdings of the Reorganized Debtors' debt and equity securities – Claim Nos. 101073, 100806, 100930, 100931, 102005, and 101850 (collectively, the "**Oregon Securities Claims**").

4. The Debtors' chapter 11 plan (as amended and/or modified, the "**Plan**") was confirmed by the Court on June 20, 2020. The Plan included three classes of the Debtors' subordinated securities claims: Class 9A – HoldCo Subordinated Debt Claims; Class 10A-II –

HoldCo Rescission or Damages Claims; and Class 10B – Utility Subordinated Debt Claims. *See* ECF No. 8048 at §§ 4.12, 4.14, 4.32. Pursuant to the Plan, debt securities claims in Classes 9A and 10B are unimpaired and entitled to receive cash in an amount equal to their allowed claims. *Id.* Equity-based Securities Claims (Class 10A-II) are impaired and are to receive shares of New HoldCo common stock according to a formula contained in the Plan. *Id.* at §§ 1.109, 4.14.

5. On September 1, 2020, the Reorganized Debtors filed a *Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims*, seeking to establish additional procedures for resolving Securities Claims (the "**ADR Procedures**") which the Debtors "designed to facilitate prompt settlements with individual claimants." *See* ECF No. 8964 at 3-4; *see also id.* at 18 ("[A]pproval of the Securities ADR Procedures here will promote the expeditious resolution of the Subordinated Securities Claims…") Under the ADR Procedures, securities claimants who had previously timely filed proofs of claim were required to submit additional information regarding their trading activities through supplemental proof of claim forms designed by the Reorganized Debtors. *Id.* The ADR Procedures provided for the Debtors to then submit individual settlement offers to claimants and/or proceed by mandatory non-binding mediation. *Id.* at 2. The Court approved the ADR Procedures by order dated January 25, 2021. ECF No. 10015.

6. The Reorganized Debtors have made several motions to extend their deadline to object to claims. In the most recent extension motion (prior to this Motion), the Reorganized Debtors revealed to the Court and claimants for the first time that the Reorganized Debtors had unilaterally suspended the ADR Procedures while they attempted to negotiate a potential global settlement of the PERA class action.

7. Pursuant to the Court's *Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief*, the Court required the Reorganized Debtors to inform certain objectors, including Oregon, of any missing trading information required under the ADR Procedures, identify the securities claims filed by those objectors that were subject to any omnibus objections the Debtors intended to assert with respect to the claims by December 30,

2022, as well as make Settlement Offers (as defined under, and pursuant to, the ADR Procedures) to each of the objectors on or before February 28, 2023. *Id.* at 2-3.

8. In response to a motion filed by another set of claimants to enforce the ADR Procedures, the Court by order dated March 13, 2023, noted that the Court and various claimants have awaited progress on the ADR Procedures for a "long time," which "compels the [C]ourt to consider whether to alter those procedures in some way." *See Order on the RKS Claimants' Motion to Enforce the ADR Procedures Order* [ECF 13612] at 3. This order directed the Debtors to propose suggested changes to the ADR Procedures, if any, in their next extension motion to facilitate resolution of the remaining claims.

9. Despite the Court's stated concerns, the Reorganized Debtors are trying to engineer the opposite result - they seek yet another 180-day extension without prejudice to their right to seek further extensions,[1] and they propose no meaningful changes to the existing ADR Procedures. Motion at 16, 23. The Motion proposes only two limited amendments to the ADR Procedures: (i) to allow up to five contemporaneous Abbreviated Mediations[2] before a Mediator on the same day; and (ii) to allow for the addition of mediators to the Panel of Mediators for Standard Mediations and Abbreviated Mediations upon submission to the Court, without further Court order. *Id.* at 2. Oregon has no objection to these limited amendments.

10. The Motion, however, for the first time proposes Litigation Procedures which would permit the Reorganized Debtors to force claimants into full securities litigation, without objecting to their claims, by simply sending claimants a notice by August 21, 2023 requiring the claimants to make an election within 40 days to either:

> (a) provide the Reorganized Debtors with a complaint or similar disclosure identifying the basic and necessary elements of their claims, including complying with any heightened pleading standards required for such claims under the federal securities laws; or (b) adopt the alleged misrepresentations and other factual allegations that form the basis of the claims in the complaint in the District Court class action *In re PG&E Corp. Securities Litigation*, No. 5:18-cv-03509-EJD (N.D. Cal.) (the "**PERA Complaint**").

---

[1] The proposed Litigation Procedures clearly contemplate multiple additional extensions.

[2] All capitalized terms used but not defined herein shall hold the definitions ascribed to them in the ADR Procedures.

*Id.* at 4. Thereafter, by November 7, 2023, the Reorganized Debtors propose to file two motions: (1) a motion to dismiss portions of the PERA Complaint similar in substance to the motions to dismiss filed in the Securities Litigation by the director and officer defendants and pending before the District Court;[3] and (2) a motion to dismiss the claims of any claimant who did not respond to their notice. *Id.* at 4-5.

11. For any securities claimants who do not adopt the PERA Complaint, the Reorganized Debtors propose they will "review the substance and number of any such separate pleadings or disclosures to determine, among other things, overlapping causes of action, and overlapping issues that may be ripe for decision as a matter of law. After review, and contemporaneous with any further extension of the Claim Objection Deadline, the Reorganized Debtors will propose another set of procedures to resolve such claims. *Id.* at 5.

## **OBJECTION AND JOINDER**

12. The Reorganized Debtors' latest extension request is, at its essence, another attempt by the Reorganized Debtors to unfairly introduce delays into the claims resolution process, to the prejudice of Oregon and other securities claimants. In addition to seeking another half-year delay to its deadline to object to claims, the Reorganized Debtors' proposed Litigation Procedures subject securities claimants to a nonstandard Rule 12(b)(6) claim dismissal process that is unnecessarily costly and time-consuming. The Litigation Procedures also shift unexpected burdens onto claimants in a manner contrary to the Bankruptcy Code. For these reasons, the Reorganized Debtors' Litigation Procedures should be denied and the Reorganized Debtors compelled to proceed with resolution of the securities claims expeditiously and in good faith.

---

[3] Significantly, the defendants in the District Court (most of whom are indemnified by the Reorganized Debtors) moved to dismiss the PERA Complaint but the fully submitted motion has not been decided because the District Court stayed the action in favor of the Bankruptcy Court proceedings. The Debtors' proposed Litigation Procedures pose a risk of inconsistent results because this Court and the District Court could ultimately decide the pending motions differently, and the District Court would not be bound by this Court's decision. If the Reorganized Debtors want a resolution of the pending motions to dismiss the PERA Complaint, the most efficient and straightforward path would be for them to pursue that in the District Court so that the decision applies equally to all members of the proposed class.

Oregon also supports and joins in the BLA Schwartz Clients' Objection, which is incorporated by reference to the extent not inconsistent with Oregon's arguments herein.

13. From its initial motion seeking approval of the ADR Procedures, the Reorganized Debtors emphasized that the ADR Procedures were "necessary or appropriate" to ensure that these Chapter 11 cases are "handled expeditiously and economically." *See Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [ECF 8964] at 13. *See, also, id.* at 4, 6, 8, 13-15, 17-19, 21. In advocating the use of a customized proof of claim form for securities claims, and the claims allowance process instead of the class action litigation process, the Debtors argued that the ADR Procedures would allow claimants to file proofs of claim easily, without counsel, and at virtually no cost. ECF 5787 at 6 (quoting precedent: creditors can "participate in the distribution for the price of a stamp.").

14. Three years later, only half of all securities claims have been resolved while 20% are still waiting for an initial settlement offer. *See, e.g.,* Motion at 2 (evidencing 1,783 unresolved securities claims for which no settlement offers have been made yet). Few if any claims appear to have been mediated and no securities claims have been objected to by the Reorganized Debtors. Simply put, the ADR process has been conducted clandestinely with the purpose of causing securities claimants to incur mounting expenses and endless delays. The Reorganized Debtors also admit that only now are they finally "in a position to begin initiating both Abbreviated and Standard Mediations" under the ADR Procedures. *Id.* at 14.

15. Oregon only received a settlement offer after the Court set a February 28, 2023 deadline in response to Oregon's objection to the Reorganized Debtors' prior motion to extend the Claims Objection Deadline. While Oregon continues to negotiate with the Reorganized Debtors, it is unclear if a settlement is achievable and it is highly unlikely a mediation, if the Reorganized Debtors initiated it, would occur before the end of the summer.

16. Although the Court has repeatedly expressed concern about the extended delay in resolving the pending securities claims, the Reorganized Debtors seek yet another hurdle before they give their own ADR Procedures a chance. By the Motion, the Reorganized Debtors seek

8

Case: 19-30088    Doc# 13794    Filed: 05/31/23    Entered: 05/31/23 16:46:45    Page 8 of 15

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

Court approval to demand securities claimants who have already filed two different proof of claim forms approved by this Court as well as supplemental information requested by the Reorganized Debtors, to incur even more litigation expenses before the Debtors will consider mediating the claims or objecting to them. This unfair attempt by the Reorganized Debtors to force the remaining objectors into submission by ratcheting up the costs of continuing to assert claims should not be countenanced.

17. The Bankruptcy Rules specifically provide that a "proof of claim executed and filed in accordance with these rules shall constitute **prima facie evidence** of the validity and amount of the claim." FED. R. BANKR. P. 3001(f) (emphasis added). Section 502(a) of the Bankruptcy Code further provides that a filed proof of claim or interest "is **deemed allowed, unless** a party in interest . . . **objects**." 11 U.S.C. § 502(a) (emphasis added). In the instant case, the Debtors themselves designed the proof of claim form to be utilized by the securities claimants – not the standard B410, but a uniquely customized rescission or damage proof of claim form approved by this Court that was specific to these Chapter 11 cases (the "**Rescission or Damage Proof of Claim Form**"). *See Order (I) Denying Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim and (II) Extending Bar Date for Certain Holders of Securities Claims for Rescission or Damages* [ECF 5943] (discussing that any holders of rescission or damage claims shall be required to use the approved "customized proof of claim form"). *See also Debtors' Supplemental Brief in Response to the Court's Tentative Ruling Regarding Motion to Apply Rule 7023 and Order Setting Deadline* [ECF 5787] (proposing and attaching the customized form for the Court's review approval). Therefore, they have no basis to suggest that securities claims filed using the forms they crafted should be disallowed for failure to state a claim. *See* Motion at 2-3, 24 ("Virtually none of the securities proofs of claim even attempt to assert allegations or causes of action that could support a federal securities claim . . . Instead, Securities Claimants have merely provided their PG&E trading information on the form . . . Without this **first step,** nearly every Securities Claim would be subject to dismissal at the outset.") (emphasis added).

18. To the contrary, approval of the Litigation Procedures at this late stage would turn the Bankruptcy Code on its head. Rather than objecting to claims as required under Section 502 of the Bankruptcy Code, the Reorganized Debtors are seeking the Court's approval to simply shift the burden prescribed by the Bankruptcy Code to the claimants by requiring them to "provide the basis of their claims in a complaint or similar disclosure" or "adopt[] the PERA Complaint as their own". Motion, Exh. C, at 2-3. Failure to respond would subject claims to dismissal, *see id.* at 26, or effectively create a second *de facto* bar date to otherwise valid securities claims. Nothing in the Bankruptcy Code supports subjecting claimants to these hurdles in lieu of a supported objection to the claims.

19. Moreover, the Litigation Procedures are manifestly unfair as they require securities claimants to litigate Rule 12(b)(6) dismissal motions prior to discovery and ultimate adjudication of the merits of those claims. Setting aside the question of whether heightened pleading requirements would be applicable within a bankruptcy claims resolution process, the requirement of filing a full pleading to justify a claim – and the Reorganized Debtors' ability to seek dismissal of that pleading on Rule 12(b)(6) grounds – has never been required to assert claims under the Bankruptcy Code and is not permitted by the Bankruptcy Rules. Claims objections are not adversary proceedings. The Reorganized Debtors have not cited a single precedent in support of the imposition of this novel requirement in the context of the claims allowance process.[4] Requiring securities claimants here to undergo such Rule 12(b)(6) motion practice prior to having the Reorganized Debtors put forth an actual objection for claimants to address unfairly shifts the burden onto the claimants, requires claimants to incur significant fees, and allows the Reorganized Debtors to strong-arm claimants into accepting small settlements.

20. Ordinarily, a debtor's objection to a claim initiates a contested matter, governed under Bankruptcy Rule 9014, *See, e.g.,* 4 COLLIER ON BANKRUPTCY ¶ 502.02; *Lundell v. Anchor*

---

[4] The Reorganized Debtors cite to *In re Hongisto* in their paragraph asserting that "there needs to be a complaint or similar disclosure where claimants allege their specific causes of action . . ." but *Hongisto* is factually distinguishable – and in any event, in *Hongisto,* the debtor had, in fact, filed an actual objection to the claim, unlike the Reorganized Debtors here.

*Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). Bankruptcy Rule 9014 does not permit use of Rule 12(b) motions to dismiss. Indeed, Bankruptcy Rule 7012 provides that Federal Rule of Civil Procedure 12(b) applies in adversary proceedings. The Rule 12(b)(6) motions to dismiss that the Reorganized Debtors contemplate filing in response to the "complaint" or deemed complaint under the Litigation Procedures, and the initial obligation imposed onto securities claimants to file Complaint-style disclosures, however, treats the adjudication of filed claims as if they were adversary proceedings. This only invites more uncertainty and delay into the process, not more efficiency.

21. The case of *In re Heath*, 331 B.R. 424, 426 (B.A.P. 9th Cir. 2005) (Montali, J.) is instructive. In *In re Heath,* the debtors attempted to argue that certain claims that did not attach sufficient documentation to their proof of claim should be disallowed as a matter of law. 331 B.R. at 426. The Ninth Circuit's Bankruptcy Appellate Panel rejected this objection, noting that "Section 502(b) sets forth the exclusive grounds for disallowance of claims, and Debtors have introduced **no evidence or arguments** to establish any of those grounds." *Id.*

22. The Panel further noted that "[t]he procedure for claims allowance or disallowance is designed to be speedy and inexpensive," particularly as "Section 502(a) deems claims allowed." *Id.* at 435. Specifically:

> The purpose of Rule 3001(f) is not to . . . create an independent reason to disallow claims but to **permit the proof of claim itself to act similar to a verified complaint and have an independent evidentiary effect.** In fact, a proof of claim has been said to have **more weight** than a verified pleading because it is signed under penalty of up to $500,000.00 or up to five years in prison, or both, for fraudulent claims. If the proof of claim is not entitled to prima facie validity then it may have lesser evidentiary weight or none at all, but **unless there is a factual dispute** that is irrelevant.

*Id.* at 435 (internal citations omitted) (emphasis added).

23. The Panel in *Heath* recognized that requiring creditors to provide "volumes of documentation" in every filing of a proof of claim, or in response to claim objections suggesting that not enough supporting documentation had been filed, would "unduly burden the parties and would inundate the Court with documents." *Id.* at 436. It would also "**invite abusive objections**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

**and more litigation** and would serve no purpose because 'if there is **no substantive objection** to the claim, the creditor should not be required to provide any further documentation of it'." *Id.* (emphasis added).

24. The Reorganized Debtors have known all along the bases underlying the rescission or damage proof of claims; they represented to the Court that their customized proof of claim form would be applicable to "holders of the Debtors' securities during the Class Period **asserting the same claims as those asserted in the Securities Litigation**." *Debtors' Supplemental Brief in Response to the Court's Tentative Ruling Regarding Motion to Apply Rule 7023 and Order Setting Deadline* [ECF 5787] at 5. The Reorganized Debtors' attempt to now disallow filed claims for an alleged failure to sufficiently plead a claim, and to impose a full blown securities litigation on every unresolved securities claimant is akin to the attempt in *Heath* to disallow claims as a matter of law solely on the basis of what the debtors believed to be insufficient documentation. Because there was "no **substantive** objection to the claim" from the debtors, the Panel held that the claims could not be disallowed. 331 B.R. at 436.

25. The Reorganized Debtors' Litigation Procedures seek to substantively modify the applicable burdens of proof in a manner that is contrary to their prior representations to the Court and contrary to the Bankruptcy Code. The Litigation Procedures appear to simply be a brazen effort to buy the Reorganized Debtors even more extra time (in addition to the three years they have had) or otherwise narrow the claims pool simply by tiring claimants out.

26. Oregon respectfully requests the Court **reject** the adoption of the proposed Litigation Procedures in their entirety and any further litigation tactics from the Reorganized Debtors.[5] The Reorganized Debtors should be required to continue resolution of claims through the ADR Procedures but on a tighter timeframe or object to any unresolved securities claims.

---

[5] To the extent the Court is inclined to adopt any of the Litigation Procedures, Oregon respectfully requests that the Court's order expressly preserves the right of any claimant to appeal to the District Court if this Court granted the Reorganized Debtors' motion to dismiss their claims in whole or in part.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

## OREGON'S PROPOSED REVISIONS TO ADR PROCEDURES

27. The ADR Procedures currently lacks any path for claimants to exit the ADR Procedures within a reasonable period of time. While the Reorganized Debtors' attempts to treat all securities claimants alike, and force all claimants among the same path and procedures, may arguably provide it with reduced administrative burden, it ignores the reality of claimants with differing amounts at stake and claimants with different priorities. Under the ADR Procedures, only the Reorganized Debtors may terminate the Offer Procedures, and only the Reorganized Debtors may submit claims to nonbinding, mandatory mediation or seek to resolve claims in the claims reconciliation and objection process before the Bankruptcy Court. The exchange of offers can continue indefinitely and will only proceed to mediation if Reorganized Debtors say so. As a result, claimants are left completely subject to the Reorganized Debtors' whims and timetable.

28. Oregon proposes that claimants have the same rights as the Reorganized Debtors after there has been an initial exchange of offers between the claimant and the Reorganized Debtors, so claimants are not subject to a process that does not progress until Debtors unilaterally decide it should. Oregon proposes that the ADR Procedures be modified so that after there has been an initial exchange of offers between the claimant and the Reorganized Debtors, the claimant may, upon 21 days' written notice to the Reorganized Debtors, (a) terminate the Offer Procedures and proceed to voluntary nonbinding mediation within 90 days, or (b) terminate the ADR Procedures and have the claims resolved by the Court, commenced by the Reorganized Debtors filing an objection to the claim within 90 days of the effective date of the termination. Oregon also proposes that the Court require the Reorganized Debtors to provide updates on the status of claims resolution (the number of claims resolved, offers pending, settlements reached) every 90 days to provide the Court and the parties with more transparency and to keep the Reorganized Debtors focused on resolving claims expeditiously.

29. These proposed modifications would not impose any undue burdens upon the Reorganized Debtors and would not disrupt the current process by which the Reorganized Debtors aim to make offers to the remaining securities claimants. The Reorganized Debtors themselves

13

Case: 19-30088    Doc# 13794    Filed: 05/31/23    Entered: 05/31/23 16:46:45    Page 13 of 15

have stated that "[o]ver 97% of the total potential amount of the unresolved Securities Claims reside in **just 94 individuals or related or affiliated groups**." Motion at 2 (emphasis added). At this stage – almost three years after the Effective Date by which claimants became entitled under the Plan to, inter alia, distribution of New HoldCo common stock for their losses on the equity purchases – fairness dictates that the remaining claimants be afforded an "off ramp" to the ADR Procedures.

30. Oregon reserves all of its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Objection under applicable law.

Dated: May 31, 2023                   **MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ *Melissa Y. Boey*
Melissa Y. Boey (SBN 292276)
Susan F. DiCicco (*pro hac vice*)
Jennifer Feldsher (*pro hac vice*)

*Attorneys for the State of Oregon by and through the Oregon Investment Council on behalf of each of the Oregon Public Employees Retirement Fund, Common School Fund, Oregon Short Term Fund and Industrial Accident Fund*

# CERTIFICATE OF SERVICE

I, Melissa Y. Boey, declare as follows:

I am a resident of the United States, over the age of eighteen (18) years, and not a party to the above-captioned action. My business address is at 1400 Page Mill Road, Palo Alto, CA 94304.

On **May 31, 2023**, I caused the above document, described as:

**OBJECTION AND JOINDER TO REORGANIZED DEBTORS' MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF,** to be served on the interested parties in this action as follows:

[ ] BY MAIL: Service was accomplished by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, addressed as set forth above.

[X] BY E-MAIL/NEF: Service was accomplished through the Notice of Electronic Filing ("**NEF**") for all parties and counsel who are registered ECF Users.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. This declaration was executed on May 31, 2023 in Palo Alto, CA.

                                        */s/ Melissa Y. Boey*
                                          Melissa Y. Boey