WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Gabrielle L. Albert (#190895)
(galbert@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**SUPPLEMENTAL DECLARATION OF ROBB MCWILLIAMS IN FURTHER SUPPORT OF THE MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**<br><br>**Hearing Information If Timely Response Made:**<br>Date: June 7, 2023<br>Time: 11:30 a.m. (Pacific Time)<br>Place: (Tele/Videoconference Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

I, Robb C. McWilliams, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am a Partner and Managing Director at the firm of AlixPartners, LLP, which is an affiliate of both AlixPartners, LLC and AP Services, LLC (collectively, "**AlixPartners**"). AlixPartners provided interim management services to Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors**," and as reorganized pursuant to the Plan, the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). AlixPartners continues to assist the Reorganized Debtors in resolving the Chapter 11 General Claims while also providing support with respect to the Securities Claims. I submit this Declaration in further support of the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* (the "**Motion**").[1] In particular, I submit this declaration to update the statistics with respect to the resolution of Securities Claims in the Chapter 11 cases.

2. In my current position, I am responsible for overseeing the bankruptcy case management component of AlixPartners' assignment to assist the Reorganized Debtors with various matters related to these Chapter 11 Cases. My areas of responsibility include the effort by AlixPartners, in coordination with the Reorganized Debtors, to review and assess the validity of all claims asserted against the Debtors, other than (a) Fire Claims and Subrogation Wildfire Claims and (b) providing support with respect to Securities Claims. I am generally familiar with the Reorganized Debtors' day-to-day operations, financing arrangements, business affairs, and books and records. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, the knowledge of other AlixPartners professionals working under and alongside me on this matter, my discussions with the Reorganized Debtors' personnel and the Reorganized Debtors' various other advisors, and my review of

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion and the *Reorganized Debtors' Omnibus Reply in Further Support of Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* ("**Reply**").

relevant documents and information prepared by the Reorganized Debtors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration in support of the Motion.

3. As of Friday, June 2, 2023, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved approximately 19,933 Claims representing approximately 89% of the total dollar amount of claims asserted in these Chapter 11 Cases (including Securities Claims, but excluding Fire Victim Claims and Subrogation Wildfire Claims).

4. <u>Resolved Securities Claims.</u> As of Friday, June 2, 2023 the Reorganized Debtors have successfully expunged through objection, settled, or otherwise resolved approximately 4,841 Securities Claims, approximately 55% of the total Securities Claims. In total, the Reorganized Debtors have made settlement offers as to 5,237 Securities Claims, 2,763 of these claims have been settled by settlement offers, and 774 have been declined. The remaining settlement offers remain outstanding. The Reorganized Debtors have now resolved or made settlement offers to approximately 83% of all Securities Claims.

5. During the Fifth Extension Period, the Reorganized Debtors issued settlement offers covering 3,837 Securities Claims and settled 1,735 Securities Claims, a rate of approximately 300 Securities Claims per month.

6. In the time after the Motion was filed on May 17, 2023, the Reorganized Debtors have issued settlement offers as to 240 Securities Claims and consensually resolved another 183 Securities Claims. The graph attached hereto as **Exhibit A** provides a summary of Securities Claims resolved since the Effective Date, progress made during the Fifth Extension Period, and additional efforts made since the Motion was filed.

7. The response to the settlement offers continues to be positive and the rate of acceptance on settlement offers remains very high, with the exception of the RKS Claimants. Following the hearing on the Motion to Enforce, the Reorganized Debtors issued individual offers to the remaining RKS

Claimants. Of the 596 offers sent to RKS Claimants, only five RKS Claimants accepted their offers, five RKS Claimants provided counteroffers and 580 settlement offers were declined without any counter-offers (six RKS Claimants currently have offers outstanding as they requested – and were granted – extensions). In the aggregate, the RKS Claimants have declined 97% of offers they received, and comprise over 80% of all settlement offers declined. Excluding the RKS Claimants, settlement offers relating to 141 claims have been declined. Accordingly, only approximately 3% of the settlement offers, excluding the RKS Claimants, have been declined by Securities Claimants. Of those Securities Claimants who have reviewed their settlement offers, excluding the RKS Claimants, approximately 90% have entered into settlements.

8. <u>Remaining Claims</u>. Of the approximately 4,008 Securities Claims that remain unresolved, the Reorganized Debtors have made settlement offers with respect to 1,700 of those claims. Of the remaining Securities Claims, only approximately 1,500 have not received offers. In total, approximately 83% of the Securities Claims have received settlement offers or have otherwise been resolved. Approximately 98% of the total potential damages amount of the unresolved Securities Claims reside with 78 individuals or related or affiliated groups.

9. <u>Pending Settlement Offers.</u> As of Friday, June 2, 2023, 1,700 settlement offers made by the Reorganized Debtors to the Securities Claimants remain outstanding. The Reorganized Debtors, through AlixPartners, have made significant efforts to encourage those Securities Claimants with outstanding settlement offers to view and make a decision on the offer. AlixPartners' general practice once a settlement offer is sent to a Securities Claimant is to follow-up with a phone call within a week of the offer having been sent to confirm the claimants are aware of the offer. During the 35 day offer window under the Securities Procedures, AlixPartners's practice is to follow-up with two additional phone calls and up to four additional written communications, via email or hardcopy mailing, if the offers remain outstanding during this 35 day window.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed June 5, 2023 in Dallas, Texas.

                                        */s/ Robb McWilliams*
                                        Robb McWilliams
                                        Managing Director