1              DUNITED STATES BANKRUPTCY COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                          -oOo-

4   In Re:                      ) Case No. 19-30088
                                ) Chapter 11
5   PG&E CORPORATION AND PACIFIC )
    GAS AND ELECTRIC COMPANY, ET ) San Francisco, California
6   AL.                         ) Wednesday, June 7, 2023
                       Debtor.  ) 11:00 AM
7   _____ )
                                ADV#: 23-03005
8                               DAVID P. ADDINGTON v. PACIFIC
                                GAS AND ELECTRIC COMPANY, ET
9                               AL.

10                              REORGANIZED DEBTORS' MOTION
                                FOR SUMMARY JUDGMENT ON
11                              CLAIMS OF DAVID P. ADDINGTON
                                AND REQUEST FOR RELATED
12                              RELIEF FILED BY PG&E
                                CORPORATION [14]

13
                      TRANSCRIPT OF PROCEEDINGS
14            BEFORE THE HONORABLE DENNIS MONTALI
                 UNITED STATES BANKRUPTCY JUDGE
15

16  APPEARANCES (All present by video or telephone):
    For the Debtors:          THOMAS B. RUPP, ESQ.
17                            Keller Benvenutti Kim LLP
                              650 California Street
18                            Suite 1900
                              San Francisco, CA 94108
19                            (415)364-6798

20  For the Plaintiff:        DAVID P. ADDINGTON
                               Pro Se
21

22

23

24

25

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 1 of 37

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    Court Recorder:              DIGITAL ONLY
                                  United States Bankruptcy Court
19                                450 Golden Gate Avenue
                                  San Francisco, CA 94102
20

21    Transcriber:                COLIN RICHILANO
                                  eScribers, LLC
22                                7227 N. 16th Street
                                  Suite #207
23                                Phoenix, AZ 85020
                                  (800) 257-0885
24
      Proceedings recorded by electronic sound recording;
25    transcript provided by transcription service.

**eScribers, LLC**

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, JUNE 7, 2023, 12:07 PM

2                              -oOo-

3        (Call to order of the Court.)

4             THE CLERK:  Court is now in session.  Calling the

5    matter of Addington v. PG&E Corporation.

6             THE COURT:  All right.  Good afternoon, gentlemen.

7    Appearances, please.

8             MR. RUPP:  Good afternoon, Your Honor.  Thomas Rupp of

9    Keller Benvenutti Kim on behalf of the reorganized debtors.

10            THE COURT:  Mr. Addington, good afternoon.

11            MR. ADDINGTON:  Good afternoon, sir.  I'm David

12   Addington, and a claimant in the PG&E case.

13            THE COURT:  I'm sorry about switching the time on you.

14   We ran late.  Mr. Rupp I guess was probably following.

15            Okay.  Under the order, you have twenty minutes.  Mr.

16   Addington, Mr. Rupp, would you want to reserve a portion?

17            MR. RUPP:  Thank you, Your Honor.  I have a short

18   opening and would like to reserve the majority of my time for

19   rebuttal.  Call it ten minutes, but I might stop before then.

20            THE COURT:  All right.  Go ahead.

21            MR. RUPP:  Thank you, Your Honor.  Once again, Thomas

22   Rupp of Keller Benvenutti Kim on behalf of the reorganized

23   debtors.  As I've said, I'm only going to open with a short

24   opening.  I believe our papers were clear on the issues and I

25   trust the Court does not want me to reread our briefs into the

1   record.  But if we could spend thirty seconds to a minute on
2   how we got here, to this place.
3           Two years ago, we objected to Mr. Addington's original
4   claim.  It was a claim based on his purported recording or his
5   actual recording of a purported termination of PG&E's easement
6   for the powerlines running across his property.  We objected to
7   that claim.  We attempted to mediate it from our court-approved
8   ADR procedures.  The mediation was unsuccessful.  And then we
9   proceeded with -- I'm not sure if it was technically a motion
10  for summary judgement, but a motion asserting that the claim
11  failed as a matter of law.  We entered into a stipulated facts.
12  We briefed that issue and the Court ruled for PG&E and
13  disallowed Mr. Addington's original claim.  As part of that
14  order, the Court gave Mr. Addington -- I believe it was sixty
15  days to amend his claim and --
16          THE COURT:  You know what, Mr. Rupp, hold on.  I
17  wonder if we lost Mr. Addington.  Oh, no.  Okay.  There we are.
18  Okay.  No, I saw -- go ahead.  Go ahead, he's back.  Or he
19  never left.
20          MR. RUPP:  Thank you, Your Honor.  As part of that
21  original order disallowing Mr. Addington's original claim, the
22  Court gave Mr. Addington sixty days to file a new claim based
23  on anything that occurred after the November 2016 release that
24  Mr. Addington entered into with the debtors regarding the work
25  done on his property in 2016.

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 4
of 37

1        Mr. Addington retained counsel.  Filed an amended

2    claim.  I engaged with counsel to attempt to resolve the claim.

3    However, we were on a deadline to file an objection and we did.

4    We filed an objection.  Mr. Addington's former counsel and I

5    agreed to some informal discovery, at the Court's suggestion.

6    PG&E produced a volume of correspondence and other documents

7    that we had agreed to provide.  And for Mr. Addington's part,

8    very little was provided regarding items that we requested that

9    would have supported his claim.

10        Nonetheless, towards -- I believe it was December

11    2022, Mr. Addington and his counsel parted ways and Mr.

12    Addington informed the Court that he would be amending his

13    claim further.  Through more haggling and scheduling, we set a

14    new deadline.  Mr. Addington filed an amended claim and not a

15    proof of claim, but papers seeking to amend his claim as well

16    as what was a complaint alleging new causes of action.  We

17    stipulated to create this adversary proceeding where we would

18    hear everything in one go.

19        So that's where we are.  We have filed this summary

20    judgment motion.  And yet, in the meantime, Mr. Addington has

21    recorded a new notice of termination purporting to terminate

22    PG&E's easement on his property, which was included in our

23    papers.  That's a very quick capsule summary, Your Honor.  It's

24    all in the record.  Plenty of documents, exhibits, status

25    conference statements.  In the main case, just for the record,

1   19-30088 and this adversary proceeding.

2         Now, as Your Honor knows, a claim is a right to

3   payment under section 101 of the Bankruptcy Code. And Mr.

4   Addington has put forward nothing that would establish a right

5   to payment against PG&E. He has not advanced any material

6   facts, disputed or even undisputed, that would support a

7   coherent theory and contract tort or otherwise that would find

8   PG&E liable for any amounts to him.

9         Really quickly, as we have taken on his claims in our

10   motion for summary judgment, they fall into a few buckets. But

11   as a starting point, there's the release. The release was

12   entered into. Mr. Addington was compensated for it. And even

13   in his response or his opposition to our motion, he

14   acknowledges that he did release PG&E. Although he does argue

15   that this release was not total or he's protected by, I think,

16   Civil Code 1542. However, the release was specific as to the

17   agreement for work and it should be binding as to the work that

18   was done. After that --

19         THE COURT: Oh, by the way, there's a document in the

20   record, a November 4th document called Tower Maintenance Work

21   Acknowledgement Addendum that the parties signed. And then

22   November 14th, a letter that acknowledges payment of the money.

23   Those are the two documents together, the release, or am I

24   missing some other writing?

25         MR. RUPP: I believe that's them, Your Honor. They

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 6 of 37

1  were included in the original joint statement that --

2          THE COURT:  Right, correct.

3          MR. RUPP:  -- was agreed to by the parties.  So there

4  was a --

5          THE COURT:  That's where I got it.  I actually went to

6  the joint statement yesterday, or when I was preparing, and I

7  wanted to make sure that I was getting the document.  Okay.

8          MR. RUPP:  Yes.

9          THE COURT:  That's your position as to that was --

10  closed the books on what was dealt with before and my order

11  then said he can assert anything after that.

12          MR. RUPP:  That's right, Your Honor.

13          THE COURT:  Okay.

14          MR. RUPP:  And with respect to what happened after

15  that, well, plenty of emails and correspondence have been

16  introduced into the record, mostly by Mr. Addington.  But

17  looking through all of that, the record indicates the opposite

18  of what Mr. Addington is asserting.  And all it shows is that

19  PG&E personnel continued to be responsive to him and work with

20  him up to a limit and try to address whatever new concerns he

21  had with his property.  There isn't much there otherwise that

22  would point to any liability on PG&E's part.  There isn't

23  anything at all, I should say.

24          Separately, and this was part of the new claims that

25  Mr. Addington has raised, is what we have termed the lamp claim

1  which Mr. Addington chose to affix one of his lamps and

2  energize it to one of the PG&E towers.  And PG&E personnel gave

3  him advanced notice and removed it.  As is their right under

4  the easement, they can patrol the towers, and it shouldn't be a

5  stretch to determine that given the equipment, given the

6  stakes, it's not unreasonable that third parties should not be

7  affixing lamps or anything else to a PG&E tower that supports

8  high voltage electrical transmission equipment.

9          THE COURT:  But you somehow want me to sort of toss

10  that out, so they can fight it out later.  I mean, you don't

11  really want to litigate that issue somewhere else, do you?

12          MR. RUPP:  Well, the lamp issue, Your Honor, I mean, I

13  believe our position is that there's no claim there.  The facts

14  that are presented by --

15          THE COURT:  Okay.

16          MR. RUPP:  -- Mr. Addington, there's nothing there

17  that indicates liability on PG&E's part.

18          THE COURT:  Agreed.  And I understand.  But if I were

19  to say that and made an adjudication that he has no claim, then

20  that's an adjudication.  But because I thought you were saying,

21  well, it was post-petition, therefore it's not part of the

22  claims process, that seems --

23          MR. RUPP:  That's a separate claim, Your Honor.

24          THE COURT:  Okay.

25          MR. RUPP:  That's a separate claim.

**eScribers, LLC**

1          THE COURT:  All right.

2          MR. RUPP:  And so I believe the lamp claims are in

3    2017, or there abouts.

4          THE COURT:  Okay.  I'm sorry.  I thought you were

5    talking about the more recent one.  Excuse me.

6          MR. RUPP:  And that's right where I'm going, Your

7    Honor.  And the last sort of bucket of claims is the

8    post-petition claims.  There was an event January 29th, 2019 --

9    a date Your Honor and I will remember forever -- and I believe

10   it was December 2nd, 2022.  Even though it was eighteen hours,

11   or whatever, after PG&E filed its petition, it's post-petition.

12   And the argument that this is all part of some continuous

13   conduct by PG&E's part is unavailing.  I don't think -- taking

14   everything Mr. Addington alleges is true, I don't think he

15   awoke that morning contemplating that he would be engaged in

16   some altercation with PG&E's contractors that day.  So it would

17   not -- it would fail the fair contemplation test in the 9th

18   Circuit under SNTL.

19         Those are the claims.  I can turn briefly to the

20   theories regarding the easement and the towers.  I believe

21   we've briefed that very thoroughly in our opening and our reply

22   brief.  And suffice it to say the Hornbook California law is

23   very clear on this.  An easement is a right in real property.

24   And PG&E operates under its right in real property to have

25   these towers erected, maintained, and supervised that happened

1  to cross over Mr. Addington's property.  So any argument of Mr.
2  Addington's that stems from the idea that he is the true owner
3  of the towers is unavailing and should fail outright.

4       THE COURT:  And you don't want me -- but that being
5  said, you don't want me to do anything about the more recent
6  recorded easement?

7       MR. RUPP:  Your Honor, we did ask in our opening brief
8  that the Court order Mr. Addington to remove or cancel the
9  termination or -- yes, the second termination I believe is what
10 we called it, so that was in our papers.

11      THE COURT:  Okay.  You believe that because he did it
12 subsequent to the bankruptcy, leaving aside the subsequent of
13 the bankruptcy, you believe it's inappropriate and the proper
14 remedy at this point is to order him to rescind it.  Assuming
15 the record -- and whatever the record document can be.  Right?

16      MR. RUPP:  Your Honor, perhaps one way of thinking
17 about it is that Mr. Addington and PG&E came before this court
18 to decide the issue of whether he could terminate the easement
19 or not.  The Court ruled that the easement was not terminated
20 and what he's done is essentially the same thing, to just
21 record a new notice of termination without really any
22 explanation or justification why this should be done.  So I
23 guess we see it more as just a violation of the Court's May
24 16th, 2022 order, and so --

25      THE COURT:  Well, it might be a violation of the

1  automatic stay, in which case you could file a motion for
2  contempt.  But you're not doing that.  I mean, what you want me
3  to do is to rule in the company's favor against Mr. Addington
4  across the board, including direct him to rescind the recorded
5  document.
6         MR. RUPP:  That's our request, Your Honor.
7         THE COURT:  Okay.
8         MR. RUPP:  That's what we've asked for in our papers.
9         THE COURT:  Okay.
10        MR. RUPP:  And so I think I've covered everything very
11 quickly.  Again, we have our papers and we've covered it pretty
12 closely.  I did want to close that there may be a lot of
13 complaints that Mr. Addington has about PG&E.  He may be
14 frustrated that they sort of have to like together under the
15 same roof, so to speak, with interlocking rights to this
16 stretch of the easement.  But what has not been shown and what
17 there are no genuine disputes as to material fact about here
18 are that Mr. Addington does not have a claim in this bankruptcy
19 case.
20        THE COURT:  Okay.  You can reserve ten minutes and the
21 metaphor of being under the same roof is a stretch, under the
22 same powerlines.
23        MR. RUPP:  Sure.
24        THE COURT:  Mr. Addington, you have twenty minutes.
25        MR. ADDINGTON:  Thank you, sir.  Is that echoey?  Can

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 11 of 37

1    you hear me fine?

2            THE COURT:  No, no, it's fine.  Yes, I can.  Thank

3    you.

4            MR. ADDINGTON:  Thank you.

5            MR. RUPP:  So from the inception of my purchase of 298

6    Saint James, the reorganized debtors have acted and held the

7    same position that the easement is permanent and irrevocable.

8            THE COURT:  No, no.  Not irrevocable.  It could be

9    mutually revoked, but you can't unilaterally -- or you didn't

10   unilaterally terminate it the way you purported to, so that's

11   the ruling that's been on the books for quite some time now.

12           MR. ADDINGTON:  Yes, sir.  I'm actually quoting the

13   reorganized debtors' counsel from the hearing, our first

14   hearing.

15           THE COURT:  Okay.

16           MR. RUPP:  When you asked him what he felt the status

17   of the easement was and he said the easement was permanent and

18   irrevocable.

19           THE COURT:  Well, Mr. Addington, the point is, if you

20   and I -- if I owned the tower and you were on the house, you

21   and I could agree to terminate it.  But what PG&E has taken

22   issue with is that your unilateral attempt to terminate was not

23   valid, and that was all I ruled.

24           MR. ADDINGTON:  No, sir.

25           THE COURT:  So let's leave it at that.  Okay.

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 12
of 37

1    MR. ADDINGTON:  Yes, sir.  Yes, sir.

2    THE COURT:  At the moment that's the rule, and so

3    let's get to what we're here today to -- if you have a proof of

4    claim.

5    MR. ADDINGTON:  Yes, sir.  And again, I'm not

6    disputing your ruling.  I'm merely quoting the reorganized

7    debtors' position regarding the easement stated earlier in this

8    court.

9    THE COURT:  Okay.

10    MR. ADDINGTON:  Because I think that position is the

11    underlying basis for their actions in the case.  If you believe

12    that the easement is, in fact, irrevocable and permanent, then

13    your actions regarding your interactions with me as a property

14    owner are far less guided than if they thought there was a

15    potential for termination.

16    THE COURT:  Mr. Addington, the argument today is

17    whether you have asserted a claim against the company; that's

18    the issue.  So it doesn't matter whether the easement is

19    irrevocable or could be revoked.  It is what it is.  And do you

20    have a claim for damages that the company needs to honor; yes

21    or no.

22    MR. ADDINGTON:  Yes, sir.

23    THE COURT:  And if the answer is yes, then you win.

24    If it's no, your claim will be disallowed.  And I won't make a

25    ruling about whether the easement is irrevocable.

1          MR. ADDINGTON:  No, I understand you.

2          THE COURT:  Okay.  Okay.  So let's stick on that

3     point.

4          MR. ADDINGTON:  I merely provided it as background.

5     The issue that I have presented in my papers is one of the

6     ownership of the real property, the towers.  The definition of

7     real property in California or anywhere else is property that

8     is permanently affixed to the land, it is unmovable.  And by

9     anyone's estimation, these towers are real property.

10          Now, Mr. Rupp raises in his brief the fact that an

11     easement is an interest in real property, and I agree with him

12     wholeheartedly it is, but it is not an ownership interest.  The

13     ownership of real property is a separate entity in and of

14     itself.  The easement is a grant from the owner of real

15     property for use of that property for some specific task.  The

16     cases that he has quoted make very clear that the easement is

17     not ownership, but rather the right to use the property of

18     another.

19          THE COURT:  So therefore, what?  But come to therefore

20     what.  You want me to say that you own the tower, and --

21          MR. ADDINGTON:  Well, no, sir.  While it would be

22     lovely for you to say it, there's no question but that I do own

23     the towers.

24          THE COURT:  Okay.

25          MR. ADDINGTON:  They are real property.  And I own the

1  property at 298 St. James.

2  THE COURT:  Okay.  That's your position.

3  MR. ADDINGTON:  Now, PG&E can have whatever interest

4  they may have in those towers.  I am the property manager,

5  asset manager for a mall in Mexico.  And we have long-term land

6  leases to Hampton Inn and Cracker Barrel.  And Cracker Barrel

7  builds its own facility.  But as soon as that stick is

8  permanent in the ground, it's real property.  And although

9  Cracker Barrel has 100 percent rights for use of that real

10  property, the underlying ownership is not theirs.

11  THE COURT:  But what does that have to do with a

12  situation that is governed by an easement?

13  MR. ADDINGTON:  So I believe the easement situation is

14  exactly parallel.

15  THE COURT:  Well, I understand that's what you

16  believe.  But what does an ownership of a Cracker Barrel in

17  Mexico that has nothing to do with easements have to do with an

18  easement dispute here?

19  MR. ADDINGTON:  So I mention it because it's far more

20  common, triple net lease real estate transactions are far more

21  common where the owner of the real property and the underlying

22  land is separate from the operator and of those improvements,

23  and --

24  THE COURT:  But leases have nothing to do with

25  easements.

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 15
of 37

1        MR. ADDINGTON:  I understand, sir.

2        THE COURT:  Well, you keep -- you're arguing that

3   they're relevant, but they're not.

4        MR. ADDINGTON:  Well, sir, the reason I think they are

5   relevant is just like in an easement, in a triple net lease

6   when the lessee -- or in this case the grantee -- takes a piece

7   of personal property and makes it into real property, the

8   ownership of the real property stays with the owner of the real

9   property.  Of the real property.  There are not -- it doesn't

10  create a separate ownership of real property.  Their rights to

11  use that real property are governed in one case by the lease

12  and in the other case by the easement, or the terms of the

13  easement.  But the ownership of those assets is not in dispute.

14  Real property is only owned by the owner of the real property,

15  and that's who is on title at 298 St. James.

16        And the reason that that results in a claim in the

17  Bankruptcy Court here, is PG&E has refused to acknowledge the

18  ownership of the towers.  They claim that they own them.  And

19  therefore as the actual owner, the property owner, my title is

20  slandered.  I can't do what I wish.  Now, PG&E has had a right

21  under the easement to use the towers, to maintain the towers,

22  to patrol the towers, as he has said.  But those rights do not

23  rise to the level of ownership.

24        THE COURT:  What if the Public Utilities Commission

25  came along and said these towers need to be replaced because of

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 16
of 37

1  their age?  Who would have to replace them?  You or PG&E?

2                MR. ADDINGTON:  PG&E.  Or I don't have --

3                THE COURT:  Oh, but you own the towers.

4                MR. ADDINGTON:  Yes, sir.

5                THE COURT:  If the Public Utilities Commission says

6  these towers are a public nuisance because they're dangerous.

7  They're going to fall over.  So property owner, replace them.

8  You would have a different answer at that point, I guess.  Say

9  no.  I don't have to.  I'm the owner, but I'm not really the

10  owner for those purposes.

11                MR. ADDINGTON:  Well, sir, I am.  Just in the case --

12  same in the case with long-term real estate leasehold interest,

13  the owner of the real property assets, the Hampton Inn or the

14  physical Cracker Barrel or what have you, he can replace it or

15  not.  But I'm not sure really what the California Public

16  Utilities Commission would require of me.  But to the extent

17  they want to try to get me into the utilities business, I would

18  be willing to consider it.  The reproduction of the towers

19  would be a fairly now expense.  A little angle iron.  I imagine

20  we could put them up pretty quick.  But I don't think that's

21  really your point.  Your point is --

22                THE COURT:  My point is, sir, do you have a claim for

23  damages.

24                MR. ADDINGTON:  Yes, I understand, so --

25                THE COURT:  And you haven't -- Mr. Rupp made the point

1   that you haven't demonstrated any yet.

2        MR. ADDINGTON:  Well, I agree, sir.  And I'm trying to

3   get to that point.

4        THE COURT:  Okay.  Let's get right to it.

5        MR. ADDINGTON:  And Mr. Rupp and PG&E, by claiming the

6   ownership of the towers where they do not have ownership have

7   slandered my title.  And in slandering the title, they have

8   clearly violated the terms of the easement and in violation of

9   the -- in violating the terms of the easement it, by Your

10  Honor's own words, becomes -- let's see what you said here --

11  it self-destructs.  And I have provided a notice of that

12  self-destruction.  I have provided a case that I think supports

13  the idea that an easement with a self-destruction clause is

14  valid and operatable, in the SeaGals (phonetic) case.  And I've

15  provided recorded notice, which I believe was in keeping with

16  your earlier ruling.

17        I did not terminate the easement.  The termination of

18  the easement happened of its own accord, and I provided a

19  notice of that termination.  And from the date of that

20  termination forward, PG&E is in trespass on my property.  And

21  in trespass, I have -- California law allows me to collect a

22  variety of damages, among which are any funds or earnings that

23  someone may have made through the trespass.  Compensatory

24  damages.  I can pull it out, I suppose, if it's necessary.  But

25  those are my damages that I am attempting to collect that would

1 be pre-petition.

2          THE COURT:  So what are they?  Can you quantify them?

3          MR. ADDINGTON:  Well, sir, no, sir.  I can't without

4 discovery.

5          THE COURT:  Well, who would you take the discovery

6 from?

7          MR. ADDINGTON:  Pardon?

8          THE COURT:  Well, if you knew that you could replace

9 the towers, why couldn't you estimate your own damages?  What

10 are the damages that you have suffered because of this

11 trespass?

12          MR. ADDINGTON:  Sir, the damages that I can collect

13 from trespass are the damages equal to the earnings or the

14 trespasser during that period of time.  So I need to ask PG&E

15 how much money has been attributable to the trespass.  There's

16 a question of whether it would be a hundred percent of the

17 revenues, subject to substation 10 or just, for instance, the

18 portion of the tariff attributed to low voltage distribution.

19 But those are questions that I can't answer because it's

20 information that only PG&E has.

21          THE COURT:  Okay.  We have time.  Anything else?

22          MR. ADDINGTON:  Nope.  So the idea that the towers --

23 I'm not sure.  I haven't heard an argument that the towers are

24 not real property.  I think buried in concrete, it's one of the

25 very first discussions in law school real estate class.

1   They're buried in the dirt.  They're immovable.  They're

2   intended to be permanent.  They're real property.  And as such,

3   the real property is owned by the owner of the real property;

4   in this case, it's me.  PG&E has had, I would argue, an

5   interest in that real property through the easement.  But

6   through this and many other actions, they've violated the terms

7   of the easement.

8        And the lamp issue which Mr. Rupp has brought up I

9   think is important not because it is a claim in and of itself,

10   but because it is an indication of PG&E's position that the

11   easement is permanent and irrevocable.  Because my neighbor

12   called and complained, they came into my yard and took the

13   thing down.  Now, whether I own the towers or PG&E own the

14   towers, they are by the terms of the easement supposed to be

15   doing everything reasonably possible to avoid interference in

16   my land use.

17        Now, is it impossible to allow my twelve-by-twelve

18   tower to sit wedged in the legs of this -- or twelve-by-twelve

19   light to sit wedged in the legs of the tower?  Of course it's

20   possible.  Now, is it somehow a health and safety risk that has

21   to be avoided?  Well, that's patently ridiculous.  You need

22   only look to the tower one to my north and you'll see it is

23   festooned with electronics, except those electronics are owned

24   on a tower -- PG&E owns the dirt and is collecting money from

25   the attachments, so.

1   THE COURT:  So but it sounds to me like what your

2 argument is that since you own the tower, you can put a light

3 on your tower.

4   MR. ADDINGTON:  Well, I would say without question I

5 can put a light on my tower.  And I'm even conceding saying if

6 they own the tower -- which they don't and can't, but if they

7 did, they would still be obligated to do everything reasonably

8 possible to avoid interference in my land use.

9   THE COURT:  But who says that that falls within the

10 reasonable use?

11   MR. ADDINGTON:  Well, I would say if you look at the

12 tower immediately to the west of us -- or to the east of us,

13 where this tower is physically connected, you would see that it

14 is festooned with electrified objects wrapping --

15   THE COURT:  But it's their tower.  But it's their

16 tower.  You don't claim any ownership in that tower, so what

17 difference does it make?  This is about like the Cracker Barrel

18 in Mexico.  What difference does it make?

19   MR. ADDINGTON:  Well, sir, PG&E's claim is that the

20 attachment of an electrified device causes some great danger.

21 And yet the tower, the very next tower -- which they do own and

22 they own the dirt -- they've attached these items to that tower

23 and somehow they're not a health hazard.  And the reason is

24 because on those they're making money and on mine they weren't.

25 But is it reasonably possible they could have allowed it?  Is

1    it somehow an actual danger?  It's simply not.  I realize

2    electricity is dangerous and people are scared of it.  But just

3    because PG&E says it's a danger doesn't make it so.

4         THE COURT:  Okay.  Let's try a different approach.  If

5    you believe you had a right to put the light there and they

6    took it down, what are the damages for not being able to have

7    the light hanging on the tower?

8         MR. ADDINGTON:  Well, sir, the damages go back to the

9    terms of the easement.  Are they doing --

10        THE COURT:  But wait a minute.  You said it's one

11   little light that you placed on the tower.

12        MR. ADDINGTON:  Yeah, it is.

13        THE COURT:  Well, so what are the damages?  Quantify

14   them for me.  Are we talking about 100 dollars or 200 dollars

15   or 500 dollars?  We're not talking about millions of dollars

16   for a light hanging on the tower, are we?

17        MR. ADDINGTON:  Well, sir, what we're talking about is

18   the terms of the easement specify that a violation of the

19   easement results in its termination, it doesn't --

20        THE COURT:  Mr. Addington, you're not answering my

21   question.

22        MR. ADDINGTON:  Okay.

23        THE COURT:  You're supposed to quantify the damages

24   that you have suffered after you signed the documentation in

25   2018.

1              MR. ADDINGTON:  Yes, sir.

2              THE COURT:  I'm sorry, 2016.

3              MR. ADDINGTON:  And I've told you --

4              THE COURT:  So you put the light up there after that,

5       right?

6              MR. ADDINGTON:  Yes, sir.

7              THE COURT:  Okay.  And then they took it down.

8              MR. ADDINGTON:  Yes, sir.  Yes, Your Honor.

9              THE COURT:  So what are the economic damages for that

10      conduct?

11             MR. ADDINGTON:  The economic damages for that conduct

12      are unknown.

13             THE COURT:  Okay.  Then why should I allow a claim for

14      them?

15             MR. ADDINGTON:  Sir, you shouldn't allow a claim for

16      that conduct.

17             THE COURT:  Okay.

18             MR. ADDINGTON:  You should allow the terms of the

19      easement which say if they do these behaviors -- the easement

20      was written in such a way, it doesn't say, hey, do anything you

21      want, get away with it, and there's no problem.  It says if --

22      you are held to a fairly high standard, you have to do

23      everything reasonably possible to avoid interference.  And for

24      an easement -- an easement is like the gold standard of real

25      estate assets.  It allows PG&E the use of real property at no

cost in perpetuity. And all they have to do, in the case of our easement, is not act like a jerk. And if you do act like a jerk, you lose the easement.

And when you come into my yard at the request of my neighbor and take down a light and then five years later are still claiming that this is somehow some great health and safety risk because it's an electrified object on a high voltage tower, it just doesn't bear scrutiny, it's just nonsense. And this is -- you ask what the damages are. This is the fifth year I've been talking about this.

THE COURT: Well, that doesn't make it -- that doesn't mean you're right, so that could make -- so the neighbor says we don't like that light on the PG&E tower, so do something about it, and so PG&E takes the light down. And you therefore say therefore, they should lose their easement?

MR. ADDINGTON: Well, no, sir. I think that I'm mentioning these things because I wanted Your Honor to see the totality of their actions because their actions always support their position that the easement is permanent and irrevocable. And if that is their position -- and that is certainly the actions, the way they have acted, then my value of my property is significantly diminished. My ability -- my only recourse under the easement is the recording of the termination and extinguishment.

I have asked the reorganized debtors for an

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 24 of 37

1 opportunity to have the Court explain to me how the easement

2 should work. We've asked for declaratory relief. The

3 reorganized debtors have said no. We're not going to allow it.

4 We don't want to have it. I've asked for a quiet title. The

5 reorganized debtors say they don't want to have it. So I'm

6 left to read it and make an interpretation based on your prior

7 ruling. I've done that. The easement, I believe, is

8 terminated and they owe money for the period of trespass. I

9 cannot determine the amount until I have discovery.

10　　　　　THE COURT: Okay. All right. Mr. Rupp, you have ten

11 minutes to reply.

12　　　　　Thank you, Your Honor. I'll try to be quick. I don't

13 have the transcript in front of me from that particular

14 hearing, but as to permanent and irrevocable, this particular

15 easement was created by a grant from a grantor -- Something

16 Something Land Company I believe it was called -- to Great

17 Western Power, PG&E's predecessor.

18　　　　　So the grant was permanent in the sense that it was

19 not for a term of years -- ninety years, a hundred years, what

20 have you -- and it was irrevocable in the sense that the

21 grantor cannot unilaterally revoke the grant of the easement

22 and terminate it by his or her or itself. It exists. It

23 exists in perpetuity. Could the parties agree to terminate it

24 or modify it in some other way? I assume so. If PG&E did act

25 in a manner inconsistent with the easement, that would justify

Case: 19-30088　Doc# 13829　Filed: 06/08/23　Entered: 06/08/23 12:34:22　Page 25 of 37

1    its termination under its terms; that's possible as well.

2           But moving on, Your Honor hit it exactly on point

3    where Mr. Addington, in arguing that he owns the towers wants

4    the benefits of ownership without the rights and duties -- or

5    the duties and obligations of ownership.  He would not -- says

6    he would not be responsible for fixing the towers or if God

7    forbid a tower -- somehow a third party was injured by one of

8    the towers, I don't believe Mr. Addington would think he was

9    liable for such an event.

10          The case about easement termination, the Flock of

11   SeaGals (phonetic) case, another case with a good name, but

12   it's not apposite here.  It involved an actual change, a

13   material change in the use of that easement.  I believe it was

14   an easement across county land or an easement by a county for

15   access, and then the county changed it to picnicking and

16   sunbathing, and that was found to be a material change.  But

17   again, I believe that's a case from the southeastern United

18   States somewhere, I don't have it right in front of me.  But

19   not apposite to these circumstances, PG&E has an easement for

20   powerlines.  It operates those powerlines.  It maintains those

21   powerlines and patrols them.

22          With respect to the lamp claim, I believe in one of

23   the photos submitted by Mr. Addington, he submitted a photo of

24   the lamp.  And it is, in fact, affixed to I think one of the

25   lowest crossbeams of the tower, if I'm thinking of that photo

right.  And it's not a question of avoiding unreasonable
interference with Mr. Addington's use of the property, it's the
tower that belongs to PG&E.  Mr. Addington clearly disagrees,
but from PG&E's point of view, the tower belongs to PG&E and so
someone affixing items, especially energized equipment, to the
towers is not acceptable.  I cannot speak for the tower down
the street that Mr.  Addington is referring to, but I would
venture that those other items are not affixed to the tower
without PG&E's agreement or participation in that.

THE COURT:  Well, sure.  He's commented that
apparently -- I haven't seen them, but apparently, PG&E is
letting somebody else put some cell towers, cell relay stations
or something, so it's generating revenue.  And which is what
one can do when one owns a tower.  Maybe he could do it if he
owned the tower.

MR. RUPP:  Right.

THE COURT:  But that's not the point.

MR. RUPP:  Perhaps so, Your Honor.  And then back to
the tower argument of ownership of the towers.  This is not a
lease.  This is an easement.  An easement is not a fee interest
in a property.  It is not ownership of land.  But it is a right
to use real property.  The cases we've cited speak about an
easement being a right in real property.  So whether that
easement is for powerlines, a road, railroad tracks, sewer
pipelines, what have you, there are many examples, those are

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 27
of 37

1   real property rights that those easement holders have to the

2   real property that their items traverse.

3         THE COURT:  But I think we learn in first year of

4   property class that if you take something that's movable and

5   you put it into the ground so it's permanent, it becomes part

6   of the land.  I think the seminal case has to do with a bank

7   that put a safe underground somewhere over on Market Street,

8   and so it became affixed because it wasn't removable.  But that

9   has nothing to do with easements.  I mean, I assume that these

10   towers are removable at some great expense, but that isn't the

11   point, is it?  They, I mean --

12         MR. RUPP:  I don't think it is the point, Your Honor.

13         THE COURT:  Okay.

14         MR. RUPP:  And I think an easement -- again, an

15   easement is a right in real property.  So the grantor says to

16   the grantee you can erect these powerlines into the earth

17   across my property because that's the only way I know how to

18   fix powerlines.  I guess you can underground them.  But they

19   can't just float without towers.  So it is a right in a real

20   property that is enjoyed by the grantee, in this case PG&E.  So

21   it doesn't mean necessarily that the towers themselves are the

22   property of the grantor.  They're the property of the grantee,

23   but the grantor has given the grantee the rights to put those

24   towers on the property.

25         THE COURT:  Okay.  All right.  The matter is going to

1 stand submitted. I've honestly been living this case as long

2 as you have, Mr. Addington and Mr. Rupp, at least in the

3 bankruptcy. Not since Mr. Addington has finally moved in, but

4 it's been here for a long time. I'm going to review the papers

5 again and reflect on the arguments and I will issue a written

6 decision in due course.

7 So thank you for your time. The matter stands

8 submitted.

9 MR. ADDINGTON: Thank you, Your Honor.

10 MR. RUPP: Thank you, Your Honor.

11 THE COURT: Okay. Thank you both. I'm going to

12 conclude our Zoom hearing for the day.

13 (Whereupon these proceedings were concluded at 12:48 PM)

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T I O N

2

3      I, Colin Richilano, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5

6

7      [signature]

8      _____

9      /s/ COLIN RICHILANO, CDLT-252

10

11     eScribers

12     7227 N. 16th Street, Suite #207

13     Phoenix, AZ 85020

14

15     Date:  June 8, 2023

16

17

18

19

20

21

22

23

24

25
```

**eScribers, LLC**

## A

**ability (1)**
24:22
**able (1)**
22:6
**abouts (1)**
9:3
**acceptable (1)**
27:6
**access (1)**
26:15
**accord (1)**
18:18
**acknowledge (1)**
16:17
**Acknowledgement (1)**
6:21
**acknowledges (2)**
6:14,22
**across (4)**
4:6;11:4;26:14;
28:17
**act (3)**
24:2,2;25:24
**acted (2)**
12:6;24:21
**action (1)**
5:16
**actions (6)**
13:11,13;20:6;
24:18,18,21
**actual (4)**
4:5;16:19;22:1;
26:12
**actually (2)**
7:5;12:12
**Addendum (1)**
6:21
**Addington (81)**
3:5,10,11,12,16;
4:14,17,22,24;5:1,11,
12,14,20;6:4,12;7:16,
18,25;8:1,16;9:14;
10:8,17;11:3,13,18,
24,25;12:4,12,19,24;
13:1,5,10,16,22;14:1,
4,21,25;15:3,13,19;
16:1,4;17:2,4,11,24;
18:2,5;19:3,7,12,22;
21:4,11,19;22:8,12,
17,20,22;23:1,3,6,8,
11,15,18;24:16;26:3,
8,23;27:3,7;29:2,3,9
**Addington's (8)**
4:3,13,21;5:4,7;
10:1,2;27:2
**address (1)**
7:20
**adjudication (2)**
8:19,20
**ADR (1)**

4:8
**advanced (2)**
6:5;8:3
**adversary (2)**
5:17;6:1
**affix (1)**
8:1
**affixed (4)**
14:8;26:24;27:8;
28:8
**affixing (2)**
8:7;27:5
**afternoon (4)**
3:6,8,10,11
**again (6)**
3:21;11:11;13:5;
26:17;28:14;29:5
**against (3)**
6:5;11:3;13:17
**age (1)**
17:1
**ago (1)**
4:3
**agree (4)**
12:21;14:11;18:2;
25:23
**agreed (4)**
5:5,7;7:3;8:18
**agreement (2)**
6:17;27:9
**ahead (3)**
3:20;4:18,18
**alleges (1)**
9:14
**alleging (1)**
5:16
**allow (5)**
20:17;23:13,15,18;
25:3
**allowed (1)**
21:25
**allows (2)**
18:21;23:25
**along (1)**
16:25
**altercation (1)**
9:16
**Although (2)**
6:14;15:8
**always (1)**
24:18
**amend (2)**
4:15;5:15
**amended (2)**
5:1,14
**amending (1)**
5:12
**among (1)**
18:22
**amount (1)**
25:9
**amounts (1)**
6:8

**angle (1)**
17:19
**apparently (2)**
27:11,11
**Appearances (1)**
3:7
**apposite (2)**
26:12,19
**approach (1)**
22:4
**argue (2)**
6:14;20:4
**arguing (2)**
16:2;26:3
**argument (6)**
9:12;10:1;13:16;
19:23;21:2;27:19
**arguments (1)**
29:5
**aside (1)**
10:12
**assert (1)**
7:11
**asserted (1)**
13:17
**asserting (2)**
4:10;7:18
**asset (1)**
15:5
**assets (3)**
16:13;17:13;23:25
**assume (2)**
25:24;28:9
**Assuming (1)**
10:14
**attached (1)**
21:22
**attachment (1)**
21:20
**attachments (1)**
20:25
**attempt (2)**
5:2;12:22
**attempted (1)**
4:7
**attempting (1)**
18:25
**attributable (1)**
19:15
**attributed (1)**
19:18
**automatic (1)**
11:1
**avoid (3)**
20:15;21:8;23:23
**avoided (1)**
20:21
**avoiding (1)**
27:1
**away (1)**
23:21
**awoke (1)**
9:15

## B

**back (3)**
4:18;22:8;27:18
**background (1)**
14:4
**bank (1)**
28:6
**Bankruptcy (6)**
6:3;10:12,13;11:18;
16:17;29:3
**Barrel (6)**
15:6,6,9,16;17:14;
21:17
**based (3)**
4:4,22;25:6
**basis (1)**
13:11
**bear (1)**
24:8
**became (1)**
28:8
**becomes (1)**
18:10;28:5
**behalf (2)**
3:9,22
**behaviors (1)**
23:19
**belongs (2)**
27:3,4
**benefits (1)**
26:4
**Benvenutti (2)**
3:9,22
**binding (1)**
6:17
**board (1)**
11:4
**books (2)**
7:10;12:11
**both (1)**
29:11
**brief (3)**
9:22;10:7;14:10
**briefed (2)**
4:12;9:21
**briefly (1)**
9:19
**briefs (1)**
3:25
**brought (1)**
20:8
**bucket (1)**
9:7
**buckets (1)**
6:10
**builds (1)**
15:7
**buried (2)**
19:24;20:1
**business (1)**
17:17

## C

**CALIFORNIA (5)**
3:1;9:22;14:7;
17:15;18:21
**Call (2)**
3:3,19
**called (4)**
6:20;10:10;20:12;
25:16
**Calling (1)**
3:4
**came (3)**
10:17;16:25;20:12
**can (18)**
7:11;8:4,10;9:19;
10:15;11:20,25;12:2;
15:3;17:14;18:24;
19:2,12;21:2,5;27:14;
28:16,18
**cancel (1)**
10:8
**capsule (1)**
5:23
**case (21)**
3:12;5:25;11:1,19;
13:11;16:6,11,12;
17:11,12;18:12,14;
20:4;24:1;26:10,11,
11,17;28:6,20;29:1
**cases (2)**
14:16;27:22
**causes (2)**
5:16;21:20
**cell (1)**
27:12,12
**certainly (1)**
24:20
**change (3)**
26:12,13,16
**changed (1)**
26:15
**chose (1)**
8:1
**Circuit (1)**
9:18
**circumstances (1)**
26:19
**cited (1)**
27:22
**Civil (1)**
6:16
**claim (35)**
4:4,4,7,10,13,15,21,
22;5:2,2,9,13,14,15,
15;6:2;7:25;8:13,19,
23,25;11:18;13:4,17,
20,24;16:16,18;
17:22;20:9;21:16,19;
23:13,15;26:22
**claimant (1)**
3:12

Case: 19-30088 Doc# 13829 Filed: 06/08/23 Entered: 06/08/23 12:34:22 Page 31 of 37

**claiming (2)**
18:5;24:6
**claims (7)**
6:9;7:24;8:22;9:2,7,
8,19
**class (2)**
19:25;28:4
**clause (1)**
18:13
**clear (3)**
3:24;9:23;14:16
**clearly (2)**
18:8;27:3
**CLERK (1)**
3:4
**close (1)**
11:12
**closed (1)**
7:10
**closely (1)**
11:12
**Code (2)**
6:3,16
**coherent (1)**
6:7
**collect (3)**
18:21,25;19:12
**collecting (1)**
20:24
**commented (1)**
27:10
**Commission (3)**
16:24;17:5,16
**common (2)**
15:20,21
**company (3)**
13:17,20;25:16
**company's (1)**
11:3
**compensated (1)**
6:12
**Compensatory (1)**
18:23
**complained (1)**
20:12
**complaint (1)**
5:16
**complaints (1)**
11:13
**conceding (1)**
21:5
**concerns (1)**
7:20
**conclude (1)**
29:12
**concluded (1)**
29:13
**concrete (1)**
19:24
**conduct (4)**
9:13;23:10,11,16
**conference (1)**
5:25

**connected (1)**
21:13
**consider (1)**
17:18
**contemplating (1)**
9:15
**contemplation (1)**
9:17
**contempt (1)**
11:2
**continued (1)**
7:19
**continuous (1)**
9:12
**contract (1)**
6:7
**contractors (1)**
9:16
**Corporation (1)**
3:5
**correspondence (2)**
5:6;7:15
**cost (1)**
24:1
**counsel (5)**
5:1,2,4,11;12:13
**county (3)**
26:14,14,15
**course (2)**
20:19;29:6
**Court (85)**
3:3,4,6,10,13,20,25;
4:12,14,16,22;5:12;
6:19;7:2,5,9,13;8:9,
15,18,24;9:1,4;10:4,8,
11,17,19,25;11:7,9,
20,24;12:2,8,15,19,
25;13:2,8,9,16,23;
14:2,19,24;15:2,11,
15,24;16:2,17,24;
17:3,5,22,25;18:4;
19:2,5,8,21;21:1,9,15;
22:4,10,13,20,23;
23:2,4,7,9,13,17;
24:11;25:1,10;27:10,
17;28:3,13,25;29:11
**court-approved (1)**
4:7
**Court's (2)**
5:5;10:23
**covered (2)**
11:10,11
**Cracker (6)**
15:6,6,9,16;17:14;
21:17
**create (2)**
5:17;16:10
**created (1)**
25:15
**cross (1)**
10:1
**crossbeams (1)**
26:25

**D**

**damages (16)**
13:20;17:23;18:22,
24,25;19:9,10,12,13;
22:6,8,13,23;23:9,11;
24:9
**danger (3)**
21:20;22:1,3
**dangerous (2)**
17:6;22:2
**date (2)**
9:9;18:19
**David (1)**
3:11
**day (2)**
9:16;29:12
**days (2)**
4:15,22
**deadline (2)**
5:3,14
**dealt (1)**
7:10
**debtors (7)**
3:9,23;4:24;12:6;
24:25;25:3,5
**debtors' (2)**
12:13;13:7
**December (2)**
5:10;9:10
**decide (1)**
10:18
**decision (1)**
29:6
**declaratory (1)**
25:2
**definition (1)**
14:6
**demonstrated (1)**
18:1
**determine (2)**
8:5;25:9
**device (1)**
21:20
**difference (2)**
21:17,18
**different (2)**
17:8;22:4
**diminished (1)**
24:22
**direct (1)**
11:4
**dirt (3)**
20:1,24;21:22
**disagrees (1)**
27:3
**disallowed (2)**
4:13;13:24
**disallowing (1)**
4:21
**discovery (4)**
5:5;19:4,5;25:9

**discussions (1)**
19:25
**dispute (2)**
15:18;16:13
**disputed (1)**
6:6
**disputes (1)**
11:17
**disputing (1)**
13:6
**distribution (1)**
19:18
**document (5)**
6:19,20;7:7;10:15;
11:5
**documentation (1)**
22:24
**documents (3)**
5:6,24;6:23
**dollars (4)**
22:14,14,15,15
**done (5)**
4:25;6:18;10:20,22;
25:7
**down (6)**
20:13;22:6;23:7;
24:5,14;27:6
**due (1)**
29:6
**during (1)**
19:14
**duties (2)**
26:4,5

**E**

**earlier (2)**
13:7;18:16
**earnings (2)**
18:22;19:13
**earth (1)**
28:16
**easement (64)**
4:5;5:22;8:4;9:20,
23;10:6,18,19;11:16;
12:7,17,17;13:7,12,
18,25;14:11,14,16;
15:12,13,18;16:5,12,
13,21;18:8,9,13,17,
18;20:5,7,11,14;22:9,
18,19;23:19,19,24,24;
24:2,3,15,19,23;25:1,
7,15,21,25;26:10,13,
14,14,19;27:20,20,23,
24;28:1,14,15
**easements (3)**
15:17,25;28:9
**east (1)**
21:12
**echoey (1)**
11:25
**economic (2)**
23:9,11

**eighteen (1)**
9:10
**electrical (1)**
8:8
**electricity (1)**
22:2
**electrified (3)**
21:14,20;24:7
**electronics (2)**
20:23,23
**else (5)**
8:7,11;14:7;19:21;
27:12
**emails (1)**
7:15
**energize (1)**
8:2
**energized (1)**
27:5
**engaged (2)**
5:2;9:15
**enjoyed (1)**
28:20
**entered (1)**
4:11,24;6:12
**entity (1)**
14:13
**equal (1)**
19:13
**equipment (3)**
8:5,8;27:5
**erect (1)**
28:16
**erected (1)**
9:25
**especially (1)**
27:5
**essentially (1)**
10:20
**establish (1)**
6:4
**estate (4)**
15:20;17:12;19:25;
23:25
**estimate (1)**
19:9
**estimation (1)**
14:9
**even (4)**
6:6,12;9:10;21:5
**event (2)**
9:8;26:9
**exactly (2)**
15:14;26:2
**examples (1)**
27:25
**except (1)**
20:23
**Excuse (1)**
9:5
**exhibits (1)**
5:24
**exists (2)**

Case: 19-30088    Doc# 13829    Filed: 06/08/23    Entered: 06/08/23 12:34:22    Page 32
of 37

25:22,23
**expense (2)**
17:19;28:10
**explain (1)**
25:1
**explanation (1)**
10:22
**extent (1)**
17:16
**extinguishment (1)**
24:24

**F**

**facility (1)**
15:7
**fact (4)**
11:17;13:12;14:10;
26:24
**facts (3)**
4:11;6:6;8:13
**fail (2)**
9:17;10:3
**failed (1)**
4:11
**fair (1)**
9:17
**fairly (2)**
17:19;23:22
**fall (2)**
6:10;17:7
**falls (1)**
21:9
**far (3)**
13:14;15:19,20
**favor (1)**
11:3
**fee (1)**
27:20
**felt (1)**
12:16
**festooned (2)**
20:23;21:14
**few (1)**
6:10
**fifth (1)**
24:10
**fight (1)**
8:10
**file (3)**
4:22;5:3;11:1
**Filed (5)**
5:1,4,14,19;9:11
**finally (1)**
29:3
**find (1)**
6:7
**fine (2)**
12:1,2
**first (3)**
12:13;19:25;28:3
**five (1)**
24:5

**fix (1)**
28:18
**fixing (1)**
26:6
**float (1)**
28:19
**Flock (1)**
26:10
**following (1)**
3:14
**forbid (1)**
26:7
**forever (1)**
9:9
**former (1)**
5:4
**forward (2)**
6:4;18:20
**found (1)**
26:16
**FRANCISCO (1)**
3:1
**front (2)**
25:13;26:18
**frustrated (1)**
11:14
**funds (1)**
18:22
**further (1)**
5:13

**G**

**gave (3)**
4:14,22;8:2
**generating (1)**
27:13
**gentlemen (1)**
3:6
**genuine (1)**
11:17
**given (3)**
8:5,5;28:23
**God (1)**
26:6
**gold (1)**
23:24
**Good (5)**
3:6,8,10,11;26:11
**governed (2)**
15:12;16:11
**grant (4)**
14:14;25:15,18,21
**grantee (5)**
16:6;28:16,20,22,
23
**grantor (5)**
25:15,21;28:15,22,
23
**great (4)**
21:20;24:6;25:16;
28:10
**ground (2)**

15:8;28:5
**guess (4)**
3:14;10:23;17:8;
28:18
**guided (1)**
13:14

**H**

**haggling (1)**
5:13
**Hampton (2)**
15:6;17:13
**hanging (1)**
22:7,16
**happened (3)**
7:14;9:25;18:18
**hazard (1)**
21:23
**health (3)**
20:20;21:23;24:6
**hear (2)**
5:18;12:1
**heard (1)**
19:23
**hearing (4)**
12:13,14;25:14;
29:12
**held (2)**
12:6;23:22
**hey (1)**
23:20
**high (3)**
8:8;23:22;24:7
**hit (1)**
26:2
**hold (1)**
4:16
**holders (1)**
28:1
**honestly (1)**
29:1
**Honor (24)**
3:8,17,21;4:20;
5:23;6:2,25;7:12;
8:12,23;9:7,9;10:7,
16;11:6;13:20;23:8;
24:17;25:12;26:2;
27:18;28:12;29:9,10
**Honor's (1)**
18:10
**Hornbook (1)**
9:22
**hours (1)**
9:10
**house (1)**
12:20
**hundred (2)**
19:16;25:19

**I**

**idea (3)**

10:2;18:13;19:22
**imagine (1)**
17:19
**immediately (1)**
21:12
**immovable (1)**
20:1
**important (1)**
20:9
**impossible (1)**
20:17
**improvements (1)**
15:22
**inappropriate (1)**
10:13
**inception (1)**
12:5
**included (2)**
5:22;7:1
**including (1)**
11:4
**inconsistent (1)**
25:25
**indicates (2)**
7:17;8:17
**indication (1)**
20:10
**informal (1)**
5:5
**information (1)**
19:20
**informed (1)**
5:12
**injured (1)**
26:7
**Inn (2)**
15:6;17:13
**instance (1)**
19:17
**intended (1)**
20:2
**interactions (1)**
13:13
**interest (6)**
14:11,12;15:3;
17:12;20:5;27:20
**interference (4)**
20:15;21:8;23:23;
27:2
**interlocking (1)**
11:15
**interpretation (1)**
25:6
**into (12)**
3:25;4:11,24;6:10,
12;7:16;16:7;17:17;
20:12;24:4;28:5,16
**introduced (1)**
7:16
**involved (1)**
26:12
**iron (1)**
17:19

**irrevocable (10)**
12:7,8,18;13:12,19,
25;20:11;24:19;
25:14,20
**issue (9)**
4:12;8:11,12;10:18;
12:22;13:18;14:5;
20:8;29:5
**issues (1)**
3:24
**items (5)**
5:8;21:22;27:5,8;
28:2

**J**

**James (3)**
12:6;15:1;16:15
**January (1)**
9:8
**jerk (1)**
24:2,3
**joint (2)**
7:1,6
**judgement (1)**
4:10
**judgment (2)**
5:20;6:10
**JUNE (1)**
3:1
**justification (1)**
10:22
**justify (1)**
25:25

**K**

**keep (1)**
16:2
**keeping (1)**
18:15
**Keller (2)**
3:9,22
**Kim (2)**
3:9,22
**knew (1)**
19:8
**knows (1)**
6:2

**L**

**lamp (6)**
7:25;8:12;9:2;20:8;
26:22,24
**lamps (2)**
8:1,7
**land (9)**
14:8;15:5,22;20:16;
21:8;25:16;26:14;
27:21;28:6
**last (1)**
9:7

Case: 19-30088     Doc# 13829     Filed: 06/08/23     Entered: 06/08/23 12:34:22     Page 33
of 37

**late (1)**
3:14
**later (2)**
8:10;24:5
**law (4)**
4:11;9:22;18:21;
19:25
**learn (1)**
28:3
**lease (4)**
15:20;16:5,11;
27:20
**leasehold (1)**
17:12
**leases (2)**
15:6,24
**least (1)**
29:2
**leave (1)**
12:25
**leaving (1)**
10:12
**left (2)**
4:19;25:6
**legs (2)**
20:18,19
**less (1)**
13:14
**lessee (1)**
16:6
**letter (1)**
6:22
**letting (1)**
27:12
**level (1)**
16:23
**liability (2)**
7:22;8:17
**liable (2)**
6:8;26:9
**light (11)**
20:19;21:2,5;22:5,
7,11,16;23:4;24:5,13,
14
**limit (1)**
7:20
**litigate (1)**
8:11
**little (3)**
5:8;17:19;22:11
**living (1)**
29:1
**long (2)**
29:1,4
**long-term (2)**
15:5;17:12
**look (2)**
20:22;21:11
**looking (1)**
7:17
**lose (2)**
24:3,15
**lost (1)**

4:17
**lot (1)**
11:12
**lovely (1)**
14:22
**low (1)**
19:18
**lowest (1)**
26:25

**M**

**main (1)**
5:25
**maintain (1)**
16:21
**maintained (1)**
9:25
**maintains (1)**
26:20
**Maintenance (1)**
6:20
**majority (1)**
3:18
**makes (1)**
16:7
**making (1)**
21:24
**mall (1)**
15:5
**manager (2)**
15:4,5
**manner (1)**
25:25
**many (2)**
20:6;27:25
**Market (1)**
28:7
**material (4)**
6:5;11:17;26:13,16
**matter (5)**
3:5;4:11;13:18;
28:25;29:7
**May (5)**
10:23;11:12,13;
15:4;18:23
**Maybe (1)**
27:14
**mean (7)**
8:10,12;11:2;24:12;
28:9,11,21
**meantime (1)**
5:20
**mediate (1)**
4:7
**mediation (1)**
4:8
**mention (1)**
15:19
**mentioning (1)**
24:17
**merely (2)**
13:6;14:4

**metaphor (1)**
11:21
**Mexico (3)**
15:5,17;21:18
**might (2)**
3:19;10:25
**millions (1)**
22:15
**mine (1)**
21:24
**minute (2)**
4:1;22:10
**minutes (5)**
3:15,19;11:20,24;
25:11
**missing (1)**
6:24
**modify (1)**
25:24
**moment (1)**
13:2
**money (5)**
6:22;19:15;20:24;
21:24;25:8
**more (6)**
5:13;9:5;10:5,23;
15:19,20
**morning (1)**
9:15
**mostly (1)**
7:16
**motion (6)**
4:9,10;5:20;6:10,
13;11:1
**movable (1)**
28:4
**moved (1)**
29:3
**moving (1)**
26:2
**much (2)**
7:21;19:15
**mutually (1)**
12:9

**N**

**name (1)**
26:11
**necessarily (1)**
28:21
**necessary (1)**
18:24
**need (3)**
16:25;19:14;20:21
**needs (1)**
13:20
**neighbor (3)**
20:11;24:5,12
**net (2)**
15:20;16:5
**new (7)**
4:22;5:14,16,21;

7:20,24;10:21
**next (1)**
21:21
**ninety (1)**
25:19
**Nonetheless (1)**
5:10
**nonsense (1)**
24:9
**Nope (1)**
19:22
**north (1)**
20:22
**notice (6)**
5:21;8:3;10:21;
18:11,15,19
**November (3)**
4:23;6:20,22
**nuisance (1)**
17:6

**O**

**object (1)**
24:7
**objected (2)**
4:3,6
**objection (2)**
5:3,4
**objects (1)**
21:14
**obligated (1)**
21:7
**obligations (1)**
26:5
**occurred (1)**
4:23
**Once (1)**
3:21
**one (15)**
5:18;8:1,2;9:5;
10:16;14:5;16:11;
19:24;20:22;22:10;
26:7,22,24;27:14,14
**only (6)**
3:23;16:14;19:20;
20:22;24:22;28:17
**oOo- (1)**
3:2
**open (1)**
3:23
**opening (4)**
3:18,24;9:21;10:7
**operable (1)**
18:14
**operates (2)**
9:24;26:20
**operator (1)**
15:22
**opportunity (1)**
25:1
**opposite (1)**
7:17

**opposition (1)**
6:13
**order (8)**
3:3,15;4:14,21;
7:10;10:8,14,24
**original (5)**
4:3,13,21,21;7:1
**otherwise (2)**
6:7;7:21
**out (3)**
8:10,10;18:24
**outright (1)**
10:3
**over (3)**
10:1;17:7;28:7
**owe (1)**
25:8
**own (15)**
14:20,22,25;15:7;
16:18;17:3;18:10,18;
19:9;20:13,13;21:2,6,
21,22
**owned (5)**
12:20;16:14;20:3,
23;27:15
**owner (13)**
10:2;13:14;14:14;
15:21;16:8,14,19,19;
17:7,9,10,13;20:3
**ownership (18)**
14:6,12,13,17;
15:10,16;16:8,10,13,
18,23;18:6,6;21:16;
26:4,5;27:19,21
**owns (3)**
20:24;26:3;27:14

**P**

**papers (8)**
3:24;5:15,23;10:10;
11:8,11;14:5;29:4
**parallel (1)**
15:14
**Pardon (1)**
19:7
**part (10)**
4:13,20;5:7;7:22,
24;8:17,21;9:12,13;
28:5
**parted (1)**
5:11
**participation (1)**
27:9
**particular (2)**
25:13,14
**parties (4)**
6:21;7:3;8:6;25:23
**party (1)**
26:7
**patently (1)**
20:21
**patrol (2)**

Case: 19-30088    Doc# 13829    Filed: 06/08/23    Entered: 06/08/23 12:34:22    Page 34
of 37

8:4;16:22
**patrols (1)**
26:21
**payment (3)**
6:3,5,22
**people (1)**
22:2
**percent (2)**
15:9;19:16
**perhaps (2)**
10:16;27:18
**period (2)**
19:14;25:8
**permanent (10)**
12:7,17;13:12;15:8;
20:2,11;24:19;25:14,
18;28:5
**permanently (1)**
14:8
**perpetuity (2)**
24:1;25:23
**personal (1)**
16:7
**personnel (2)**
7:19;8:2
**petition (1)**
9:11
**PG&E (38)**
3:5,12;4:12;5:6;6:5,
8,14;7:19;8:2,2,7;
9:11,24;10:17;11:13;
12:21;15:3;16:17,20;
17:1,2;18:5,20;19:14,
20;20:4,13,24;22:3;
23:25;24:13,14;
25:24;26:19;27:3,4,
11;28:20
**PG&E's (11)**
4:5;5:22;7:22;8:17;
9:13,16;20:10;21:19;
25:17;27:4,9
**phonetic (2)**
18:14;26:11
**photo (2)**
26:23,25
**photos (1)**
26:23
**physical (1)**
17:14
**physically (1)**
21:13
**picnicking (1)**
26:15
**piece (1)**
16:6
**pipelines (1)**
27:25
**place (1)**
4:2
**placed (1)**
22:11
**please (1)**
3:7

**Plenty (2)**
5:24;7:15
**PM (2)**
3:1;29:13
**point (16)**
6:11;7:22;10:14;
12:19;14:3;17:8,21,
21,22,25;18:3;26:2;
27:4,17;28:11,12
**portion (2)**
3:16;19:18
**position (9)**
7:9;8:13;12:7;13:7,
10;15:2;20:10;24:19,
20
**possible (6)**
20:15,20;21:8,25;
23:23;26:1
**post-petition (1)**
8:21;9:8,11
**potential (1)**
13:15
**Power (1)**
25:17
**powerlines (8)**
4:6;11:22;26:20,20,
21;27:24;28:16,18
**predecessor (1)**
25:17
**preparing (1)**
7:6
**pre-petition (1)**
19:1
**presented (2)**
8:14;14:5
**pretty (2)**
11:11;17:20
**prior (1)**
25:6
**probably (1)**
3:14
**problem (1)**
23:21
**procedures (1)**
4:8
**proceeded (1)**
4:9
**proceeding (2)**
5:17;6:1
**proceedings (1)**
29:13
**process (1)**
8:22
**produced (1)**
5:6
**proof (2)**
5:15;13:3
**proper (1)**
10:13
**property (56)**
4:6,25;5:22;7:21;
9:23,24;10:1;13:13;
14:6,7,7,9,11,13,15,

15,17,25;15:1,4,8,10,
21;16:7,7,8,9,9,10,11,
14,14,19;17:7,13;
18:20;19:24;20:2,3,3,
5;23:25;24:21;27:2,
21,22,23,25;28:1,2,4,15,
17,20,22,22,24
**protected (1)**
6:15
**provide (1)**
5:7
**provided (6)**
5:8;14:4;18:11,12,
15,18
**Public (4)**
16:24;17:5,6,15
**pull (1)**
18:24
**purchase (1)**
12:5
**purported (3)**
4:4,5;12:10
**purporting (1)**
5:21
**purposes (1)**
17:10
**put (10)**
6:4;17:20;21:2,5;
22:5;23:4;27:12;28:5,
7,23

## Q

**quantify (3)**
19:2;22:13,23
**quick (3)**
5:23;17:20;25:12
**quickly (2)**
6:9;11:11
**quiet (1)**
25:4
**quite (1)**
12:11
**quoted (1)**
14:16
**quoting (2)**
12:12;13:6

## R

**railroad (1)**
27:24
**raised (1)**
7:25
**raises (1)**
14:10
**ran (1)**
3:14
**rather (1)**
14:17
**read (1)**
25:6
**real (37)**

9:23,24;14:6,7,9,11,
13,14,25;15:8,9,20,
21;16:7,8,8,9,10,11,
14,14;17:12,13;19:24,
25;20:2,3,3,5;23:24,
25;27:22,23;28:1,2,
15,19
**realize (1)**
22:1
**Really (6)**
6:9;8:11;10:21;
17:9,15,21
**reason (3)**
16:4,16;21:23
**reasonable (1)**
21:10
**reasonably (4)**
20:15;21:7,25;
23:23
**rebuttal (1)**
3:19
**recent (2)**
9:5;10:5
**record (9)**
4:1;5:24,25;6:20;
7:16,17;10:15,15,21
**recorded (4)**
5:21;10:6;11:4;
18:15
**recording (3)**
4:4,5;24:23
**recourse (1)**
24:22
**referring (1)**
27:7
**reflect (1)**
29:5
**refused (1)**
16:17
**regarding (5)**
4:24;5:8;9:20;13:7,
13
**relay (1)**
27:12
**release (7)**
4:23;6:11,11,14,15,
16,23
**relevant (2)**
16:3,5
**relief (1)**
25:2
**remedy (1)**
10:14
**remember (1)**
9:9
**removable (2)**
28:8,10
**remove (1)**
10:8
**removed (1)**
8:3
**reorganized (8)**
3:9,22;12:6,13;

9:23,24;14:6,7,9,11,
13,14,25;15:8,9,20,
21;16:7,8,8,9,10,
14,14;17:12,13;19:24,
25;20:2,3,3,5;23:24,
25;27:23;28:1,2,
15,19
**13:6;24:25;25:3,5**
**replace (4)**
17:1,7,14;19:8
**replaced (1)**
16:25
**reply (2)**
9:21;25:11
**reproduction (1)**
17:18
**request (2)**
11:6;24:4
**requested (1)**
5:8
**require (1)**
17:16
**reread (1)**
3:25
**rescind (2)**
10:14;11:4
**reserve (3)**
3:16,18;11:20
**resolve (1)**
5:2
**respect (2)**
7:14;26:22
**response (1)**
6:13
**responsible (1)**
26:6
**responsive (1)**
7:19
**results (2)**
16:16;22:19
**retained (1)**
5:1
**revenue (1)**
27:13
**revenues (1)**
19:17
**review (1)**
29:4
**revoke (1)**
25:21
**revoked (2)**
12:9;13:19
**ridiculous (1)**
20:21
**right (27)**
3:6,20;6:2,4;7:2,12;
8:3;9:1,6,23,24;
10:15;14:17;16:20;
18:4;22:5;23:5;24:12;
25:10;26:18;27:1,16,
21,23;28:15,19,25
**rights (7)**
11:15;15:9;16:10,
22;26:4;28:1,23
**rise (1)**
16:23
**risk (2)**
20:20;24:7
**road (1)**
27:24

Case: 19-30088    Doc# 13829    Filed: 06/08/23    Entered: 06/08/23 12:34:22    Page 35
of 37

roof (2)
11:15,21
rule (2)
11:3;13:2
ruled (3)
4:12;10:19;12:23
ruling (5)
12:11;13:6,25;
18:16;25:7
running (1)
4:6
RUPP (39)
3:8,8,14,16,17,21,
22;4:16,20;6:25;7:3,
8,12,14;8:12,16,23,
25;9:2,6;10:7,16;
11:6,8,10,23;12:5,16;
14:10;17:25;18:5;
20:8;25:10;27:16,18;
28:12,14;29:2,10

S

safe (1)
28:7
safety (2)
20:20;24:7
Saint (1)
12:6
same (6)
10:20;11:15,21,22;
12:7;17:12
SAN (1)
3:1
saw (1)
4:18
saying (2)
8:20;21:5
scared (1)
22:2
scheduling (1)
5:13
school (1)
19:25
scrutiny (1)
24:8
SeaGals (2)
18:14;26:11
second (1)
10:9
seconds (1)
4:1
section (1)
6:3
seeking (1)
5:15
seems (1)
8:22
self-destruction (2)
18:12,13
self-destructs (1)
18:11
seminal (1)

28:6
sense (2)
25:18,20
separate (5)
8:23,25;14:13;
15:22;16:10
Separately (1)
7:24
session (1)
3:4
set (1)
5:13
sewer (1)
27:24
short (2)
3:17,23
shown (1)
11:16
shows (1)
7:18
signed (2)
6:21;22:24
significantly (1)
24:22
simply (1)
22:1
sit (2)
20:18,19
situation (2)
15:12,13
sixty (2)
4:14,22
slandered (2)
16:20;18:7
slandering (1)
18:7
SNTL (1)
9:18
somebody (1)
27:12
somehow (6)
8:9;20:20;21:23;
22:1;24:6;26:7
someone (2)
18:23;27:5
somewhere (3)
8:11;26:18;28:7
soon (1)
15:7
sorry (3)
3:13;9:4;23:2
sort (3)
8:9;9:7;11:14
sounds (1)
21:1
southeastern (1)
26:17
speak (3)
11:15;27:6,22
specific (2)
6:16;14:15
specify (1)
22:18

spend (1)
4:1
St (2)
15:1;16:15
stakes (1)
8:6
stand (1)
29:1
standard (2)
23:22,24
stands (1)
29:7
starting (1)
6:11
stated (1)
13:7
statement (2)
7:1,6
statements (1)
5:25
States (1)
26:18
stations (1)
27:12
status (2)
5:24;12:16
stay (1)
11:1
stays (1)
16:8
stems (1)
10:2
stick (1)
14:2;15:7
still (2)
21:7;24:6
stipulated (2)
4:11;5:17
stop (1)
3:19
street (2)
27:7;28:7
stretch (3)
8:5;11:16,21
subject (1)
19:17
submitted (4)
26:23,23;29:1,8
subsequent (2)
10:12,12
substation (1)
19:17
suffered (2)
19:10;22:24
suffice (1)
9:22
suggestion (1)
5:5
summary (4)
4:10;5:19,23;6:10
sunbathing (1)
26:16
supervised (1)

9:25
support (2)
6:6;24:18
supported (1)
5:9
supports (2)
8:7;18:12
suppose (1)
18:24
supposed (2)
20:14;22:23
sure (6)
4:9;7:7;11:23;
17:15;19:23;27:10
switching (1)
3:13

T

talking (5)
9:5;22:14,15,17;
24:10
tariff (1)
19:18
task (1)
14:15
technically (1)
4:9
ten (3)
3:19;11:20;25:10
term (1)
25:19
termed (1)
7:25
terminate (8)
5:21;10:18;12:10,
21,22;18:17;25:22,23
terminated (2)
10:19;25:8
termination (13)
4:5;5:21;10:9,9,21;
13:15;18:17,19,20;
22:19;24:23;26:1,10
terms (9)
16:12;18:8,9;20:6,
14;22:9,18;23:18;
26:1
test (1)
9:17
theirs (1)
15:10
theories (1)
9:20
theory (1)
6:7
therefore (6)
8:21;14:19,19;
16:19;24:14,15
thinking (2)
10:16;26:25
third (2)
8:6;26:7
thirty (1)

4:1
Thomas (2)
3:8,21
thoroughly (1)
9:21
though (1)
9:10
thought (3)
8:20;9:4;13:14
title (5)
16:15,19;18:7,7,
25:4
today (2)
13:3,16
together (2)
6:23;11:14
told (1)
23:3
took (3)
20:12;22:6;23:7
tort (1)
6:7
toss (1)
8:9
total (1)
6:15
totality (1)
24:18
towards (1)
5:10
Tower (34)
6:20;8:7;12:20;
14:20;20:18,19,22,24;
21:2,3,5,6,12,13,15,
16,16,21,21,22;22:7,
11,16;24:8,13;26:7,
25;27:3,4,6,8,14,15,
19
towers (33)
8:2,4;9:20,25;10:3;
14:6,9,23;15:4;16:18,
21,21,22,25;17:3,6,
18;18:6;19:9,22,23;
20:13,14;26:3,6,8;
27:6,12,19;28:10,19,
21,24
tracks (1)
27:24
transactions (1)
15:20
transcript (1)
25:13
transmission (1)
8:8
traverse (1)
28:2
trespass (7)
18:20,21,23;19:11,
13,15;25:8
trespasser (1)
19:14
triple (2)
15:20;16:5

Case: 19-30088    Doc# 13829    Filed: 06/08/23    Entered: 06/08/23 12:34:22    Page 36
of 37

**true (2)**
9:14;10:2
**trust (1)**
3:25
**try (4)**
7:20;17:17;22:4;
25:12
**trying (1)**
18:2
**turn (1)**
9:19
**twelve-by-twelve (2)**
20:17,18
**twenty (2)**
3:15;11:24
**Two (2)**
4:3;6:23

**U**

**unavailing (2)**
9:13;10:3
**Under (11)**
3:15;6:3;8:3;9:18,
24;11:14,21,21;
16:21;24:23;26:1
**underground (2)**
28:7,18
**underlying (3)**
13:11;15:10,21
**undisputed (1)**
6:6
**unilateral (1)**
12:22
**unilaterally (3)**
12:9,10;25:21
**United (1)**
26:17
**unknown (1)**
23:12
**unmovable (1)**
14:8
**unreasonable (2)**
8:6;27:1
**unsuccessful (1)**
4:8
**up (4)**
7:20;17:20;20:8;
23:4
**use (12)**
14:15,17;15:9;
16:11,21;20:16;21:8,
10;23:25;26:13;27:2,
22
**Utilities (4)**
16:24;17:5,16,17

**V**

**valid (2)**
12:23;18:14
**value (1)**
24:21

**variety (1)**
18:22
**venture (1)**
27:8
**view (1)**
27:4
**violated (2)**
18:8;20:6
**violating (1)**
18:9
**violation (4)**
10:23,25;18:8;
22:18
**voltage (3)**
8:8;19:18;24:8
**volume (1)**
5:6

**W**

**wait (1)**
22:10
**wants (1)**
26:3
**way (7)**
6:19;10:16;12:10;
23:20;24:21;25:24;
28:17
**ways (1)**
5:11
**wedged (2)**
20:18,19
**WEDNESDAY (1)**
3:1
**weren't (1)**
21:24
**west (1)**
21:12
**Western (1)**
25:17
**Whereupon (1)**
29:13
**wholeheartedly (1)**
14:12
**willing (1)**
17:18
**win (1)**
13:23
**wish (1)**
16:20
**within (1)**
21:9
**without (6)**
10:21;19:3;21:4;
26:4;27:9;28:19
**wonder (1)**
4:17
**words (1)**
18:10
**work (6)**
4:24;6:17,17,20;
7:19;25:2
**wrapping (1)**

21:14
**writing (1)**
6:24
**written (2)**
23:20;29:5

**Y**

**yard (2)**
20:12;24:4
**year (2)**
24:10;28:3
**years (5)**
4:3;24:5;25:19,19,
19
**yesterday (1)**
7:6

**Z**

**Zoom (1)**
29:12

**1**

**10 (1)**
19:17
**100 (2)**
15:9;22:14
**101 (1)**
6:3
**12:07 (1)**
3:1
**12:48 (1)**
29:13
**14th (1)**
6:22
**1542 (1)**
6:16
**16th (1)**
10:24
**19-30088 (1)**
6:1

**2**

**200 (1)**
22:14
**2016 (3)**
4:23,25;23:2
**2017 (1)**
9:3
**2018 (1)**
22:25
**2019 (1)**
9:8
**2022 (3)**
5:11;9:10;10:24
**2023 (1)**
3:1
**298 (3)**
12:5;15:1;16:15
**29th (1)**

9:8
**2nd (1)**
9:10

**4**

**4th (1)**
6:20

**5**

**500 (1)**
22:15

**7**

**7 (1)**
3:1

**9**

**9th (1)**
9:17

Case: 19-30088   Doc# 13829   Filed: 06/08/23   Entered: 06/08/23 12:34:22   Page 37
of 37