Entered on Docket
June 12, 2023
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: June 12, 2023**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>      - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>      Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered<br><br><br><u>**HEARING SCHEDULED**</u><br>Date:   July 11, 2023<br>Time:   10:00 AM<br>Via Video/Teleconference<br>www.canb.uscourts.gov/calendars |

**MEMORANDUM DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND COUNTER-MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

On May 9, 2023, the court held a hearing on the Amir Shahmirza, Responsible Person for Creditor Komir, Inc. (hereinafter "Komir") *Motion for Partial Summary Judgment of Issues in Reorganized Debtors Objection to Claim #2090 and*

*Claimant's Response Thereto* (Dkt. 13478) (the "Partial Motion") and Reorganized Debtors' (hereinafter "PG&E") *PG&E's Opposition to Motion for Partial Summary Judgment and Counter-Motion for Summary Judgment* (Dkt. 13567) (the "Counter-MSJ"). At the conclusion of the argument the court took both matters under submission. For the reasons stated below, the court will GRANT Komir's Partial Motion and DENY PG&E's Counter-MSJ.

II. **Undisputed Factual Background**

The facts of this matter center on a two-acre parcel of real property located at 800 Walnut Avenue, San Bruno, California (the "Komir Property"), that is a portion of land formerly known as Parcel 2. Parcel 2 was one of multiple "Parcels" at and around the intersection of what is now Highway 101 and Interstate 380, near the San Francisco International Airport.

In 1910 and 1923, PG&E acquired from Mills Estate Incorporated a total of four easements over Parcel 2, to place and maintain electricity transmission towers and lines. By 1943, PG&E had erected transmission lines that cross over the Komir Property. By 1973, the City and County of San Francisco ("CCSF") owned the Parcels.

On May 7, 1973, the State of California filed a Complaint in Eminent Domain ("Complaint") (Partial Motion, Exh. 3) that named CCSF, PG&E, and a variety of other entities as defendants. The Complaint explicitly stated that "public interest and necessity require the acquisition of certain real property in fee simple absolute **unless a lesser estate is described herein** for State highway purposes . . ." (emphasis added). The

-2-

Complaint goes on to separately list each affected Parcel as an exhibit which describes that Parcel's boundaries, and any easements within that parcel. The exhibit for Parcel 2 contains only a description of its boundaries, and no easements are described.

A Judgment of Condemnation (the "Judgment") and Final Order of Condemnation (the "Final Order") (Partial Motion, Exhs. 6 & 7) were entered simultaneously on February 11, 1983.[1] The Final Order states that all of the Parcels shall be taken in eminent domain "in fee simple absolute, unless a lesser estate is described." As before, the description of Parcel 2 contains no mention of any easements.

In 1987, the State of California sold the Komir Property to a third party, who then sold it to Komir in 2000.

Between 2000 and 2018 there were no disputes between PG&E and Komir that are relevant to the present controversies. In

---

[1] While the caption of the Complaint lists every Defendant individually by name, the captions of the Judgment and Final Order do not. Instead, they list the Defendants as "City and County of San Francisco, a municipal corporation, et al." This quirk is unexplained by either party. However, PG&E does not argue that it was dropped from the Complaint or that it is not bound by the outcome of the matter.

Another unexplained quirk is that a second eminent domain lawsuit was filed and consolidated prior to the original lawsuit's completion. The Judgment and Final Order are double-captioned (each naming the Plaintiff and Defendants identically as described above), with the first caption containing the same case number as the Complaint and concerning the same parcels as the Complaint, and the second lawsuit listing a second case number and describing new affected Parcels. The boundaries described for Parcel 2 in the Complaint are unchanged in the Judgment and Final Order.

-3-

fact, Komir consented to PG&E activities, leading to the court's conclusion that PG&E's easement rights were at most via a consensual easement.

In 2018, PG&E began construction of new transmission towers over the Komir Property at considerably lower height than existing lines. In fact, in March 2018 the parties entered into a Temporary Construction Easement, in which PG&E agreed to pay Komir $9,000 per month in exchange for rights of ingress and egress on a portion of the Komir Property to complete construction adjacent to the Komir Property. Shortly thereafter, PG&E removed existing transmission towers and began construction of new towers and lines of a larger size and lower height on the Komir Property. Within months of the construction, Komir filed suit in San Mateo Superior Court against PG&E for trespass and other causes of action related to the new transmission lines. The lawsuit was stayed by PG&E's bankruptcy filing in 2019. Komir duly filed a Proof of Claim related to the causes of action. After mediation related to the claim was unsuccessful, PG&E filed an Objection to the Proof of Claim (Dkt. 12130), leading to the procedural underpinnings of the MSJ and Counter-MSJ.

III. **Summary Judgment Standard**

On a motion for summary judgment, the court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact as to any claim, part of claim, defense, or part of defense. *Simo v. Union of Needletrades, Indus. & Textile Employees,* 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary

-4-

judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. It is within a court's discretion to grant summary judgment in favor of the nonmovant.  Fed. R. Civ. P. 56(f)(1); *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (court may enter summary judgment for nonmovant if the movant had "full and fair opportunity to ventilate the issues involved in the matter" and the issues adjudicated were present in the original motion.) (citations omitted).

**IV. <u>Komir's Partial Motion</u>**

The Partial Motion seeks summary judgment only as to one issue: whether PG&E's easements to place and maintain transmission lines on Parcel 2 were extinguished by the Final Order.  The court concludes that the easements were indeed extinguished by the Final Order.

The basis for Komir's argument, and for the court's conclusion, is short and simple: the Final Order condemning the real property that includes all of Parcel 2 (and therefore the entirety of the Komir Property) to the State of California was in fee simple and subject only to easements defined in the Final Order.  PG&E's easements were not defined in the Final Order and were thus extinguished.

PG&E points to the following language set forth in the Final Order regarding relocation payments owed PG&E to support its argument that its easements were not extinguished:

-5-

> [a]ll costs for relocation of Pacific Gas and
> Electric Company transmission lines and their
> appurtenances and natural gas lines and their
> appurtenances, as required for freeway
> construction on Airport property, shall be
> pursuant to applicable state law and/or Master
> Contracts in effect between the State and
> Pacific Gas and Electric Company and will be
> without cost to the CITY AND COUNTY OF SAN
> FRANCISCO.

PG&E then presents a copy of a Master Contract between the State of California and PG&E, to which Komir objects on an evidentiary basis. That Master Contract, taken by the court to be the Master Contract referenced in the Final Order, "governs relocation of PG&E facilities in physical conflict with freeway projects. Under the Master Contract, Caltrans may order the relocation of PG&E facilities to accommodate freeway projects, and the cost is allocated between the parties in accordance to the nature of PG&E's land rights." (Counter-MSJ at 4). The Master Contract makes specific references to the payment for new and necessary right-of-way easements when utility lines are to be moved, but, reasonably, does not reference how the Master Contract would interplay with an eminent domain lawsuit. Despite the Master Contract's silence, PG&E argues that because it was not asked nor paid to move its transmission lines that cross over Parcel 2 pursuant to the applicable Master Contract in effect between Caltrans and PG&E, those easements were not extinguished by the Final Order. This argument does not appear to have any legal or factual basis.

First, the Final Order explicitly sets aside a utility easement for a PG&E natural gas line in Parcel 6B, which

-6-

illustrates that if any easements were meant to have been maintained, they would have been within the language of the Final Order.

Next, PG&E does not set forth any facts to establish, or at least put into dispute, whether Parcel 2 is on what is called in the Final Order "Airport Property." There is no definition of "Airport Property" anywhere else in either party's papers. Without any facts regarding the boundaries of "Airport Property," the court assumes, without objection by either party, that Parcel 2 was not on "Airport Property" and thus the transmission lines running over Parcel 2 did not need to be moved.

Finally, PG&E does not explain how or why not moving (and not being compensated to move) transmission lines pursuant to the Master Contract would have any effect on the underlying easement, especially when the Master Contract is silent regarding its effect on any existing easement.

One final ambiguity is resolved in Komir's favor. While the Complaint explicitly states that the State plans to take the property described "unless a lesser estate is described herein," the Final Order only states that the State takes the real property "in fee simple absolute, unless a lesser estate is described" without the word "herein." PG&E argues that this means that lesser estates described in other recordings, such as its initial easement recordings from the 1910 and 1923, remained in place after the Final Order was entered and recorded.

Any ambiguity created by the absence of the word "herein" does not rise to the level of a genuine dispute. The Final

-7-

Order is itself a final recorded document as to real property that explicitly states, in all incarnations, that the Plaintiff shall take the real property described in fee simple absolute, and then parcel by parcel described what easements, if any, remain. An argument that the State deviated so entirely from this purpose by the deletion of the word "herein" in the Final Order, without more evidence than merely pointing out the loss of the word, is not persuasive and does not establish the existence of a material fact in dispute on the record presented.

The court has addressed PG&E's claims that its easements were not extinguished by the Final Order. The court must also address how PG&E did not even come close to engaging with Komir's persuasive arguments backed by binding case law and impressive secondary authority that the Final Order did in fact extinguish the easements.

Komir begins with Cal. Civ. Code § 811, which states in part that a servitude is extinguished by the destruction of the servient tenement.

Komir also cites *Burkhart v. Unites States*, 227 F.2d 659 (9th Cir. 1955) to demonstrate the basic premise of eminent domain law. In *Burkhart,* the Ninth Circuit held that the enabling eminent domain statute made clear that the government had to designate expressly any exceptions to a fee simple taking, and went on to state "[t]he taking was not of the rights of designated persons in the property but in the property itself . . . Consequently when the Government took the fee simple title subject only to highway easements, it took all the lesser estates." *Burkhart*, 227 F.2d at 661-662 at fn.2.

-8-

Komir then cites *United States v. 32.42 Acres of Land*, F.3d 1030, (9th Cir. 2012) which follows the holding and reasoning of *Burkhart* to reiterate that lesser estates are "obliterated" unless "specifically excepted" and a new title is created in an eminent domain proceeding. Though the cases involve federal eminent domain proceedings, Komir argues that the facts and law are paralleled to the state court eminent domain proceeding here. Given the Declaration of Necessity upon which the eminent domain proceeding was based, and the explicit text of both the Complaint and Final Order, the court agrees and accepts the cases as persuasive. More persuasive is the lack of any relevant argument by PG&E regarding California eminent domain law.

**V.    PG&E's Counter-MSJ**

In addition to PG&E's arguments addressed above, PG&E seeks summary judgment on three alternative claims: (1) that even if the easements were extinguished in 1983, PG&E's continued use of the transmission lines entitles it to an easement by prescription; (2) that Komir's 2018 lawsuit is barred by the statute of limitations; and (3) Komir's claims arising from the 2018 lawsuit were discharged in PG&E's 2001 bankruptcy. All three arguments turn on the same material facts that the court finds not to be in dispute and operate in Komir's favor.

First, as to PG&E's claim of prescriptive easement, PG&E merely names the elements that would entitle a party to a determination that it does have a prescriptive easement over another's property ("open, notorious and peaceable use, adverse and under a claim of right, for the statutory period of five

-9-

years." *Guerra v. Packard*, 236 Cal. App. 2d 272, 288 (1965)) and simply stating, without anything further, that PG&E meets all five criteria because transmission lines have been in operation on the Komir Property for decades. However, this glosses over the reality of PG&E's construction of new, lower height transmission lines in 2018. Komir's lawsuit relates explicitly to this construction and was filed within months of the changes that occurred earlier that year. That the use and rights changed in 2018 means PG&E cannot prove any type of use of those rights over the minimum five-year period for a prescriptive easement to be established.

The second and third arguments fail for the same reason. Without more facts from PG&E, the court could not determine as a matter of law that Komir acted beyond the statute of limitations or had that his state court causes of action were discharged in 2001, when the acts prompting Komir's 2018 lawsuit also occurred in 2018. For those reasons the court might well have granted a cross-motion for summary judgment had Komir sought one.

## VI. PG&E's Arguments at Hearing

At the hearing on May 9, PG&E presented a new argument not stated in the Counter-MSJ: PG&E was not a named Defendant in the original Complaint as to Parcel 2, and thus its easements as it relates to Parcel 2 were outside of the Complaint at all times.

The court will disregard PG&E's troubling presentation of this novel argument that it was not a defendant as to Parcel 2, affording no opportunity for Komir to meaningfully respond before the hearing.

-10-

Taking this argument on its face, it fails as a matter of law. Section VII of the Complaint states:

> The names of all owners of and claimants to the property sought to be acquired herein, **insofar as known to plaintiff**, are hereinafter set forth in this paragraph. Each defendant named has, or claims to have, some right, title, or interest in or to the parcels of real property heretofore described. **For the convenience of the court and parties, and not as allegations to which plaintiff intends to be bound**, plaintiff has set out the name of each defendant and opposite each name a statement of the respective interest in said parcel.
> (emphasis added)

The Complaint then goes on to list, by Parcel or group of Parcels, the name of the defendant and type of interest held by that defendant. PG&E is listed as a defendant with a right of way interest in Parcels 5A and 5B, but not as a defendant with any interest in Parcel 2.

The plain text of the Complaint itself states that the list of Defendants per Parcel was a matter of convenience to the court and parties, and not allegations regarding every interest in each party to which the State of California intended to be bound. This was a Complaint in eminent domain, an in rem proceeding meant to take each parcel of land in fee simple, unless otherwise stated within the Complaint itself. The plain text of the Complaint shows that the State intended to take all of Parcel 2, with no easement described therein. PG&E cannot now purport to prevail in the face of a Complaint that explicitly stated its list matching Defendants to specific

-11-

portions of the Parcel and noting that it was not binding on the Plaintiff.

## VII. Conclusion

For the foregoing reasons, the court GRANTS Komir's Partial Motion and DENIES PG&E's Counter-MSJ. The court further STRIKES PG&E's late filed declarations and pleadings as requested, for being filed outside the agreed-upon and ordered filing schedule. Komir's evidentiary objections to the Counter-MSJ are well considered, but as the inclusion of such evidence was not necessary to the court's ruling, the objections are OVERRULED as moot.

The court is concurrently issuing Orders on those motions, consistent with this Memorandum Decision.

A further status conference on the matter is HEREBY SET for July 11, 2023, at 10:00 AM.

**\*\*END OF MEMORANDUM DECISION\*\***