**LABATON SUCHAROW LLP**
Thomas A. Dubbs (*pro hac vice* forthcoming)
Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice* pending)
Thomas G. Hoffman, Jr. (*pro hac vice*)
140 Broadway
New York, New York 10005

*Lead Counsel to Securities Lead Plaintiff and the Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

*(additional counsel on Exhibit A)*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br>Chapter 11<br>(Jointly Administered)<br><br>**SECURITIES PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS**<br><br>Date: August 8, 2023<br>Time: 10:00 a.m. (PT)<br>Before: (Telephonic Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, California 94102<br><br>**Objection Deadline:** July 25, 2023, 4:00 PM (PT) |

SECURITIES PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS [CASE NO. 19-30088 (DM) (LEAD CASE)]

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 1 of 26

## TABLE OF CONTENTS

INTRODUCTION .......... 1

PROCEDURAL HISTORY .......... 4

A. Relevant Bankruptcy Proceedings .......... 4

1. PERA's First Class Certification Motion .......... 4

2. Confirmation of the Debtors' Plan of Reorganization .......... 5

3. PERA's Second Class Certification Motion .......... 5

4. The Debtors' Several Motions for Extensions of the Claims Objection Deadline .......... 6

B. Relevant District Court Proceedings .......... 6

ARGUMENT .......... 7

I. THIS COURT SHOULD EXERCISE ITS DISCRETION TO APPLY RULE 23 TO THE REMAINING SECURITIES CLAIMS .......... 7

II. THE PROPOSED CLASS OF SECURITIES CLAIMANTS SATISFIES RULE 23 .......... 10

A. The Proposed Class Satisfies Rule 23(a) .......... 10

1. *Numerosity*: Members of the Proposed Class Are So Numerous that Joinder of All Members is Impracticable .......... 11

2. *Commonality*: The Proposed Class Shares Questions of Law and Fact .......... 11

3. *Typicality*: The Securities Plaintiffs' Claims Are Typical of the Proposed Class's Claims .......... 12

4. *Adequacy of Representation*: The Securities Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Proposed Class .......... 13

a. The Securities Plaintiffs and Their Counsel Have No Conflicts with the Proposed Class of Securities Claimants .......... 14

b. The Securities Plaintiffs and Their Counsel Will Prosecute the Action Vigorously on behalf of the Class .......... 15

B. The Proposed Class Satisfies Rule 23(b)(3) .......... 16

1. Predominance Is Satisfied .......... 16

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 2 of 26

2. Superiority Is Satisfied ........ 18

CONCLUSION ........ 19

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 3 of 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972)........................................................................................ 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................16, 17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)........................................................................................16, 17

*In re Banc of Cal. Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018)........................................................................ 11

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)........................................................................................ 17

*In re Death Row Records, Inc.*,
No. 10-ap-02574, 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21, 2012) ................................ 13

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)............................................................................12, 13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)........................................................................................ 17

*Gentry v. Siegel*,
668 F.3d 83 (4th Cir. 2012)................................................................................ 7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014)..................................................................................... 17

*Hatamian v. Advanced Micro Devices, Inc.*
No. 14-cv-00226 YGR, 2016 U.S. Dist. LEXIS 34150 (N.D. Cal. Mar. 16, 2016).............. 11

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015)........................................................................... 13

*Mortland v. Aughney*,
No. 11-00743, 2011 WL 2653515 (N.D. Cal. July 6, 2011)........................................... 7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022), *cert. denied sub nom.*, 143 S. Ct. 424 (2022) ........................ 10



Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 4 of 26

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......... 10, 12, 13

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .......... 18

*Richie v. Blue Shield of Cal.*,
No. C–13–2693 EMC, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) .......... 11

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) .......... 12

*Teran v. Navient Solutions, LLC* (*In re Teran*),
649 B.R. 794 (Bankr. N.D. Cal. 2023) .......... 1

*Tyson Foods, Inc. v. Bouphakeo*,
577 U.S. 442 (2016) .......... 16

*Valentino v. Carter-Wallace*,
97 F.3d 1227 (9th Cir. 1996) .......... 12

*In re Volkswagen "Clean Diesel" Litig.*,
No. MDL 2672, 2017 WL 3058563 (N.D. Cal. July 19, 2017) .......... 13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 11

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) .......... 10

**Docketed Cases**

*Orbis Cap. Ltd. v. Williams,*
No. 23-cv-01314-EJD (N.D. Cal. Mar 21, 2023) .......... 8

*In re PG&E Corporation Securities Litigation*,
Case No. 18-03509 (N.D. Cal.) .......... *passim*

**Statutes**

Exchange Act of 1934 .......... 17, 18

Securities Act of 1933 .......... 7, 17. 18

**Other Authorities**

1 McLaughlin on Class Actions § 2:10 (19th ed. 2022) .......... 7

7A Wright & Miller, Federal Practice and Procedure § 1790 (3d ed. 1998) .......... 12

iv

SECURITIES PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS [CASE NO. 19-30088 (DM) (LEAD CASE)]

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 5 of 26

7 Newberg and Rubenstein on Class Actions § 22:63 (6th ed. June 2023 update)........... 10, 16, 17, 18

Fed. R. Bankr. P.
7023 ........................................................................................................ 1, 5
9014(a) ........................................................................................................ 1
9014(c) ........................................................................................................ 1

Fed. R. Civ. P. 23 .................................................................................................*passim*
(a)..........................................................................................................10, 13, 16
(a)(1)-(4)........................................................................................................ 1
(a)(1) ........................................................................................................ 11
(a)(2) ........................................................................................................11, 12
(a)(3) ........................................................................................................ 12
(a)(4) ........................................................................................................13, 15
(b)..........................................................................................................10, 16
(a)-(b) ........................................................................................................ 10
(b)(3) ........................................................................................ 1, 10, 16, 18, 19
(c)(4) ........................................................................................................1, 12
(c)(4)(A)........................................................................................................ 12
(c)(5) ........................................................................................................ 10

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 6 of 26

Claimant Public Employees Retirement Association of New Mexico (**"Securities Lead Plaintiff"** or **"PERA"**), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the **"Securities Action"**) pending in the U.S. District Court for the Northern District of California (the **"District Court"**), on behalf of itself and the proposed class it represents in the Securities Action (the **"Class"**), together with Claimants York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund (collectively, the **"Securities Act Plaintiffs"** and, together with Securities Lead Plaintiff, the **"Securities Plaintiffs"**), hereby submit this motion (the **"Motion"**) for entry of an order, pursuant to Rules 7023 and 9014(a) and (c) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), substantially in the form submitted herewith (the **"Proposed Order"**) as Exhibit C:

- Applying Bankruptcy Rule 7023 and Rule 23 of the Federal Rules of Civil Procedure to all unresolved Rescission or Damage Claims classified as Classes 9A, 10A-II, and 10B (the **"Securities Claims"**)[1];
- Holding that Rules 23(a)(1)-(4) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, made applicable through Bankruptcy Rule 7023, are satisfied[2]; and
- Certifying a class of all those who purchased or otherwise acquired the publicly traded debt or equity securities of PG&E Corporation, Pacific Gas and Electric Company, or both, from April 29, 2015 through November 15, 2018 (inclusive), and who timely submitted Securities Claims in these proceedings (the "Chapter 11 Cases"), which Securities Claims have not otherwise been resolved.[3]

## INTRODUCTION

More than two and a half years after this Court approved Securities ADR and Related Procedures for Resolving Subordinated Securities Claims (the **"ADR Procedures"**) under the assumption that they would quickly and efficiently resolve the filed Securities Claims, approximately ***4,000*** of those claims remain unresolved. *See* June 7, 2023 Hr'g Tr. at 6:6-8.

---

[1] Herein, "[a]ll discussion about FRCP 23 and FRBP 7023 will be referred to as 'Rule 23.'" *Teran v. Navient Solutions, LLC* (*In re Teran*), 649 B.R. 794, 800 n.2 (Bankr. N.D. Cal. 2023).

[2] In the alternative, the Court should apply Bankruptcy Rule 7023 and certify an issue class under Fed. R. Civ. P. 23(c)(4). *See* note 7, *infra*.

[3] Herein, Reorganized Debtors PG&E Corporation and Pacific Gas and Electric Company are referred to collectively as **"PG&E"** or the **"Debtors."**

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 7 of 26

As the Court previously observed, the Debtors have been merely picking off the "low hanging fruit" (*id.* at 67:17-18) by engaging in only the very first steps set forth in those procedures—*i.e.*, the offer/counter-offer process—with only a select group of Securities Claimants. Indeed, with no satisfying explanation for the lengthy delay, the Debtors only recently enlisted mediators to assist with the thousands of Securities Claims that remain unresolved. *See id.* at 9:13-11:1.

If the ADR Procedures continue at their current pace and/or are unsuccessful, this Court will be bogged down with thousands of Securities Claims, and Securities Claimants who refuse the Debtors' initial settlement offers will be forced to retain counsel at considerable expense to prosecute their claims individually. The result will run afoul of this Court's directive that it does not want "1,000 trials on securities claims." *Id*. at 20:13-14.

To be clear, granting this Motion will not prevent resolution of Securities Claims via the ADR Procedures. Those Securities Claimants who would rather go it alone and expend the costly resources to pursue their claims may do so, while allowing potentially thousands of other Securities Claimants to resolve their claims under the standard process for litigating class claims under the federal securities laws: the certification of a class under Rule 23. The efficiency of such a mechanism at this juncture cannot be disputed.

Even the Debtors admit that some form of coordinated, collective process is necessary to resolve the outstanding Securities Claims, stating:

- "Everything in the merits should be coordinated, and that's what we're suggesting." *Id.* at 14:17-18.
- "[T]he question is going to be how do we resolve all of these somewhat related claims? They're different, but they're somewhat related in a coordinated fashion." *Id.* at 15:1-3.

But they offer no better or more efficient method of proceeding than the one sought by this Motion.

Class certification would ameliorate the myriad problems and obvious inefficiencies that will arise if Securities Claimants must pursue the merits of their claims individually. Securities

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 8 of 26

Claimants, the Debtors, and the Court will all benefit from the procedures and tools provided by class certification to streamline the resolution of claims that satisfy the Rule 23 requirements, as they do here. Indeed, class certification is the ***only*** way to effectuate the potential resolution of all the pending Securities Claims.

For example, Securities Claimants' due process rights would be protected by the mechanisms of Rule 23. They will benefit from representation by counsel who have expended considerable resources to investigate the claims at issue, who have expertise in the federal securities laws, and who have retained counsel with expertise in bankruptcy procedure. Indeed, Lead Counsel has been advised by counsel for numerous Securities Claimants that their clients intend to voice their agreement that a class should be certified by filing joinders or statements in support of this Motion.

The Debtors would also benefit from this process because negotiations and litigation would be streamlined for the most part, saving the estate significant expense and time. Class certification would allow the estate to avoid the waste and inefficiency inherent in litigating thousands of Securities Claims separately. This includes propounding discovery on individual claimants, responding to numerous discovery requests from numerous claimants, defending witnesses in depositions where multiple counsel for individual Securities Claimants will be permitted to object. Not to mention that the Debtors will likely also have to bear the cost of much of this discovery a second time in the Securities Class Action.

Notably, class certification would also conserve judicial resources, as the Court would be primarily dealing with one set of representative claimants and one set of counsel representing the class.

Yet another significant benefit of class certification will flow from issuing a class notice with a rigorous, expedited class notice program and opt-out deadline. Securities Claimants will be given a choice: they can stay in the class and benefit from the class action mechanism (and class counsel's efforts) or they may individually continue to engage in the ADR Procedures with the Debtors. This opt-out process will alleviate further delays imbedded in the Debtors' handling of the

current ADR Procedures and quickly provide the Court (and the Debtors) with clarity as to how many and which Securities Claimants will seek to litigate their claims individually.

Meanwhile, the Debtors will be incentivized to focus on mediation with individual Securities Claimants they are able to schedule before class certification.

Thus, PERA respectfully submits that the Court should apply Rule 23 and certify a class of Securities Claimants with pending claims.

## PROCEDURAL HISTORY

### A. Relevant Bankruptcy Proceedings

On October 21, 2019, the Securities Plaintiffs timely filed proofs of claim on behalf of themselves and the putative class against the Debtors, based on the claims alleged in the Securities Action. *See* Claim Nos. 72193 and 72273 (PERA); 69202 and 71310 (Mid-Jersey Trucking); 61556 and 68009 (York County); 72620 and 72200 (City of Warren).

#### 1. PERA's First Class Certification Motion

On December 9, 2019, PERA filed its first Rule 23 motion, which also argued that the Debtors had failed to provide investors with adequate notice of the bar date. *See* ECF No. 5042.

On February 24, 2020, the Court denied that motion. It reasoned that the first *Musicland* factor (*i.e.*, whether the class was certified pre-petition) is irrelevant here, and that the second factor (*i.e.*, whether members of the putative class received notice of the bar date) weighed "heavily in favor of" applying Rule 23 (because the Debtors did not provide sufficient notice). *See* ECF No. 5887 at 3. However, the Court reasoned that the third *Musicland* factor (*i.e.*, whether class certification would adversely affect the administration of the estate) was pivotal. While the Court judged the discretionary factors to be a "close call," it held that the deciding factor mitigating against PERA's request was "an extrinsic deadline for confirmation that is unrelated to their claims." *Id.* at 4.

However, as an alternative remedy, the Court extended the bar date for Securities Claimants and authorized an additional notice program, giving over 8,000 PG&E investors an additional opportunity to file proofs of claim. *Id.*

**2. Confirmation of the Debtors' Plan of Reorganization**

On June 20, 2020, the Court entered an order confirming the Debtors' Joint Chapter 11 Plan of Reorganization (the **"Plan"**). ECF No. 8053. Pursuant to the Plan, Securities Claimants with claims based on their common stock purchases will receive shares of common stock according to a formula based on their allowed claim and the date on which they purchased their PG&E securities. Securities Claimants asserting claims based on their purchase of debt securities will receive cash in an amount equal to their allowed claim.

**3. PERA's Second Class Certification Motion**

On September 1, 2020, the Debtors moved to approve the ADR Procedures (*see* ECF No. 8964), which PERA found objectionable for several reasons, including that the procedures permitted the Debtors to file omnibus objections that could expunge (*i.e.*, dismiss) hundreds of Securities Claims at once and force the remaining Securities Claimants to participate in a settlement offer and mediation processes that gave the Debtors asymmetrical advantages over many if not most Securities Claimants.

PERA also filed a second Rule 23 motion on September 28, 2020 (ECF No. 9152), seeking to certify a class of Securities Claimants as an alternative to the ADR Procedures proposed by the Debtors. PERA argued, "The Damoclean threat imposed by A.B. 1054" had passed; therefore, the primary consideration that had weighed against application of Rule 7023 was no longer relevant. *Id.* at 12.

During a December 4, 2020 hearing, the Court issued an oral ruling denying PERA's second Rule 23 motion and approving the Debtors' proposed ADR Procedures, with modifications, citing the anticipated promptness and efficiency of the ADR Procedures in resolving the Securities Claims. *See, e.g.*, Dec. 4, 2020 Hr'g Tr. at 7:1-4 ("The ADR procedures suggested by the reorganized debtors have the appeal of assuring some claimants will have an opportunity to recover some of their losses quickly and inexpensively."); *see also* ECF No. 10020 (written order denying motion). Two and a half years have passed for the Debtors to resolve claims "quickly and inexpensively." While some have been resolved, thousands of claims have not.

#### 4. The Debtors' Several Motions for Extensions of the Claims Objection Deadline

The Debtors have filed several motions to extend the claims objection deadline. ECF Nos. 9355, 10408, 11450, 12229, 13122.

Most recently, on May 17, 2023, the Debtors' Sixth Motion to Extend the Claims Objection Deadline proposed additional merits-based procedures to resolve the pending Securities Claims. ECF No. 13745. On May 31, 2023, PERA filed a partial objection that detailed numerous problems with those procedures, including: (i) due process violations, (ii) prejudicial impact to claims brought against the Non-Debtor Defendants in the Securities Litigation, (iii) the practical inefficiency of requiring claimants to supplement their claim forms, and (iv) the legal and practical implications of allowing Securities Claimants to adopt PERA's Securities Action complaint in the Chapter 11 Cases. ECF No. 13791. PERA was not alone, as at least three other large institutional investors filed objections to the motion. *See* ECF No. 13785, 13787, 13788.

On June 7, 2023, the Court held a hearing on that motion, during which counsel for the Debtors argued that the ADR Procedures were still working and explained that "approximately fifty-five percent or 4,800 of the 8,800" Securities Claims had been resolved. June 7, 2023 Hr'g Tr. at 6:6-8. At the close of that hearing, the Court issued an oral ruling denying the Debtors' motion with respect to the implementation of the merits-based procedures, granting an extension of the Debtors' objection deadline, and ordering the Debtors, Securities Lead Plaintiff, and the other Securities Claimants that had objected to the motion to meet and confer regarding any such procedures.

### B. Relevant District Court Proceedings

The initial complaint in the Securities Action was filed on June 12, 2018. DC ECF No. 1.[4] On September 10, 2018, the District Court consolidated the Securities Action and appointed PERA as Lead Plaintiff and Labaton Sucharow LLP as lead counsel for the Class. DC ECF No. 62.

---

[4] Herein, documents filed in the Securities Action, No. 5:18-cv-03509-EJD (N.D. Cal.), are referred to as "DC ECF No. __."

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 12 of 26

Pursuant to that order, on December 14, 2018, PERA filed a second amended complaint. *See* DC ECF No. 95.

On February 22, 2019, the Securities Act Plaintiffs filed a class action, asserting claims under the Securities Act of 1933 against certain non-Debtor defendants (the "York County Action"). On May 7, 2019, the District Court consolidated the York County Action with the Securities Action and authorized PERA to file its Third Amended Complaint (the **"TAC"**). DC ECF No. 117.

On May 28, 2019, PERA, with the Securities Act Plaintiffs, filed the TAC against twenty of the Debtors' then current and former directors and officers and twenty-four investment banks that underwrote the Notes Offerings (the **"Non-Debtor Defendants"**). DC ECF No. 121. On October 4, 2019 (after this Court denied the Debtors' motion to extend the automatic stay to the Non-Debtor Defendants), the Non-Debtor Defendants filed motions to dismiss the TAC. DC ECF Nos. 148, 155. That motion was fully briefed on January 10, 2020. DC ECF Nos. 172, 173.

On September 30, 2022, the Honorable Edward J. Davila issued an order staying the Securities Action pending the resolution of the Securities Claims in the Chapter 11 Cases. DC ECF No. 217. PERA filed a notice of appeal of that order to the Ninth Circuit on October 31, 2022. DC ECF No. 218. That appeal has been fully briefed, and the Ninth Circuit has scheduled oral argument for September 13, 2023.

## ARGUMENT

### I. THIS COURT SHOULD EXERCISE ITS DISCRETION TO APPLY RULE 23 TO THE REMAINING SECURITIES CLAIMS

As this Court well knows, the decision to apply Rule 23 here is within its discretion. *See Mortland v. Aughney*, No. 11-00743, 2011 WL 2653515, at *2 (N.D. Cal. July 6, 2011); *see also* 1 McLaughlin on Class Actions § 2:10 (19th ed. 2022). In considering PERA's prior Rule 23 motions, this Court has focused, as it should, on "whether the benefits of applying Rule 7023 (and Civil Rule 23) are superior to the benefits of the standard bankruptcy claims procedures." *Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012).

7

SECURITIES PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS [CASE NO. 19-30088 (DM) (LEAD CASE)]

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 13 of 26

At this juncture, applying Rule 23 would be far superior than proceeding with the procedures the Debtors touted in 2020 as promoting efficiency and a quick resolution of Securities Claims.

To be clear, the Securities Plaintiffs are not suggesting that ADR be completely abandoned. But continuing down the path of individual treatment for each one of the thousands of pending Securities Claims would be inefficient, impractical, and costly.

Even the Debtors recognize that many class action mechanisms would be beneficial to the process. *See* ECF No. 13791 at 5, 8. They also foreshadow some of the inherent inefficiencies if a class is not certified – objection to the claims as insufficient and requiring them to be supplemented and/or proceeding with merits-based discovery involving allegations that span three and a half years, numerous relevant witnesses, and likely what will amount to hundreds of thousands if not millions of pages of document discovery.

Over the three years since the Plan was confirmed, the rationale for applying Rule 23 has grown only more compelling, to where it is no longer a "close call," and the balancing test now tips dramatically in favor of applying Rule 23 so the thousands of pending Securities Claims can be resolved collectively while giving those who choose to resolve their claims individually the opportunity to do so. Indeed, class certification is the only way to effectuate the resolution of most if not all the Securities Claims before the Court, as only class proceedings can efficiently litigate every alleged misstatement and omission with respect to every security at issue.

Class certification will expedite the resolution of the Securities Claims by providing the Court and all parties with clarity as to how many and which Securities Claimants wish to proceed on a class basis, as well as how many and which intend to opt out of the class and proceed individually.

Historically, in federal securities class actions there are few opt-outs. This is consistent with the fact that in the five years since the Securities Action was filed, only sixteen investors (represented by Rolnick Kramer Sadighi LLP ("RKS")) have separately filed a complaint in the District Court. *See Orbis Cap. Ltd. v. Williams,* No. 23-cv-01314-EJD (N.D. Cal. Mar. 21, 2023).

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 14 of 26

Thus, even if there are opt-outs (including, if any, those represented by RKS), class certification would still materially reduce the number of pending Securities Claims and streamline their resolution.

The benefits of class certification far exceed the minimal delay associated with an opt-out process, which ensures that the due process rights of the Securities Claimants are protected (as opposed to the hypothetical collective process the Debtors seek to impose). A rigorous, expedited schedule for class notice and an opt-out deadline can be accomplished in approximately three months (compared to the nearly 30 months that the ADR Procedures have been in effect), as set forth in the following chart:

| **DATE** | **EVENT** |
|---|---|
| 5 business days after this Court approves Notice of Class Certification | Kroll provides the Securities Claimants' email and mailing addresses to the Class Administrator |
| 7 business days after the Class Administrator's receipt of the Securities Claimants' email and mailing addresses | Notice of Class Certification issued to the Securities Claimants via ECF, email, and U.S. mail |
| 30 calendar days after issuance of Notice of Class Certification | Opt-out deadline |

There is also little doubt that Securities Claimants would benefit from being represented by class counsel with expertise in both the federal securities laws, who have spent considerable time investigating the claims at issue, and who have retained counsel with expertise in complex bankruptcy proceedings. As counsel for other claimants expressed during the June 7 Hearing, Securities Claimants cannot simply "clone" PERA's complaint without having to incur significant attorneys' fees that might dwarf any individual recovery. *See* June 7, 2023 Hr'g Tr. at 53:14-16 (counsel for the State of Oregon stating "there might be no cost for that, except it assumes that we as a counsel can just willy nilly adopt all of the allegations in a 200-page complaint under Rule 11 purposes.").

9

SECURITIES PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS [CASE NO. 19-30088 (DM) (LEAD CASE)]

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 15 of 26

Indeed, counsel for many Securities Claimants have advised Lead Counsel that their clients intend to voice their support for class certification by filing joinders or statements in support of this Motion.

Finally, the Debtors would benefit from this process because the streamlining of negotiations, ADR, discovery, motion practice and any ultimate trial would save the estate significant costs and avoid wasting time and resources separately litigating thousands of Securities Claims.

Thus, the Court should exercise its discretion to apply Rule 23 here.

## II. THE PROPOSED CLASS OF SECURITIES CLAIMANTS SATISFIES RULE 23

Once Rule 23 is deemed to apply, a class must then satisfy all four of the Rule 23(a) factors, and match at least one Rule 23(b) scenario. *See* Fed. R. Civ. P. 23(a)-(b); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (holding that the preponderance of the evidence standard applies to the inquiry), *cert. denied sub nom.*, 143 S. Ct. 424 (2022); 7 Newberg and Rubenstein on Class Actions § 22:63 (6th ed. June 2023 update) ("[M]ost of the prongs of class certification are easily met in most securities cases . . . .").

Here, the Securities Claimants meet the Rule 23(a) factors, and match the scenario for certification set out in Rule 23(b)(3).[5]

### A. The Proposed Class Satisfies Rule 23(a)

Class certification is appropriate because the Securities Claims satisfy each of the four prerequisites set forth in Federal Rule 23(a): "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

[5] The Court may certify a class composed of Securities Claimants seeking damages based on purchases of equity and/or debt securities because of the "great identity of issues that affect both stock and bond holders." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 287 (S.D.N.Y. 2003) (certifying a class of debt and equity purchasers, even where—unlike here—the putative lead plaintiff did not purchase any debt securities).

In the alternative, the Court may certify a subclass for Securities Claimants with debt claims under Plan Classes 9A and 10B. *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."). In the Securities Action, there is a putative subclass for such claims, which is jointly represented by the Securities Plaintiffs. *See* Ex. A.

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 16 of 26

**1. *Numerosity*: Members of the Proposed Class Are So Numerous that Joinder of All Members is Impracticable**

Rule 23(a)(1) is met where "the class is so numerous that joinder of all members is impracticable." "It's generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone." *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018) (citing, *inter alia*, 1 William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed.)); *see also Hatamian v. Advanced Micro Devices, Inc.* No. 14-cv-00226 YGR, 2016 U.S. Dist. LEXIS 34150, at *11 (N.D. Cal. Mar. 16, 2016).

Here, the proposed class is in the thousands with approximately four thousand claims outstanding. *See Richie v. Blue Shield of Cal.*, No. C–13–2693 EMC, 2014 WL 6982943, at *15 (N.D. Cal. Dec. 9, 2014) (To satisfy the "numerosity" requirement, one "need not state the exact number of potential class members."). Thus, it far exceeds the 40-member threshold to satisfy the numerosity requirement.

Thus, the numerosity requirement is satisfied.

**2. *Commonality*: The Proposed Class Shares Questions of Law and Fact**

Rule 23(a)(2) is met where the plaintiffs demonstrate that class members "have suffered the same injury" that "is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citations omitted). "[F]or the purposes of Rule 23(a)(2), even a single common question will do." *Id.*

Here, multiple common questions of law and fact underlie the claims at issue and span across the class.[6] Putting aside the manifest common issues that go to the merits of class claims, including every element of each Securities Claim asserted, the mere administration of these thousands of similar claims presents substantial common factual and legal issues, each of which impacts claim values on a class-wide basis, including:

- Whether the federal securities laws were violated by the Debtors' acts;

---

[6] The Debtors have conceded as much by suggesting that all Securities Claimants may adopt PERA's class action complaint (which would be inappropriate for the reasons set forth in PERA's opposition to the Debtors' motion to extend the objection deadline). ECF No. 13791.

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 17 of 26

- Whether statements made by the Debtors to the investing public misrepresented material facts about the financial condition, business, operations, and safety of PG&E;
- Whether the Debtors issued materially false and misleading financial statements;
- Whether the Debtors omitted material facts about their business and operations from statements issued to investors;
- Whether the Debtors acted with actual knowledge of falsity or recklessly in issuing false and misleading financial statements;
- Whether the prices of PG&E securities were artificially inflated because of the Debtors' alleged violations of the securities laws;
- Whether some or all of the Debtors' false and misleading misstatements or omissions maintained PG&E's artificially inflated securities prices;
- Whether the Securities Claimants have sustained damages and, if so, the proper measure of damages;
- The application of the Plan's terms related to claim valuation, including the term "Allowed HoldCo Rescission or Damage Claim" (*see* Plan §1.109, ECF No. 8053-1); and
- The resolution of the Debtors' class-wide objections, including collective defenses.[7]

The above are common questions of law and fact, any of which is sufficient to satisfy Rule 23(a)(2).

Thus, the commonality requirement is satisfied.

### 3. *Typicality*: The Securities Plaintiffs' Claims Are Typical of the Proposed Class's Claims

Under Rule 23(a)(3)'s "permissive standards" for typicality, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotations omitted). Typicality

---

[7] These common issues may be certified for class-wide decision, together or separately. "When appropriate, an action may be . . . maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4); *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."). "[T]he advantages and economies of adjudicating issues that are common to the entire class on a representative basis may be secured even though other issues in the case may need to be litigated separately by each class member." 7A Wright & Miller, Federal Practice and Procedure § 1790 (3d ed. 1998).

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 18 of 26

"is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).

Here, Securities Plaintiffs' claims and injuries are typical of those of the Class. In particular, PERA holds both equity and debt claims, and is a claimant in Plan Classes 9A, 10A-II, and 10B. *See* Claim Nos. 69105 & 71345. Securities Act Plaintiffs all filed debt claims and are members of Class 9A and Class 10B. Securities Act Plaintiff Warren Police and Fire Retirement System Transactions (**"City of Warren"**) additionally filed equity claims and is also a member of Plan Class 10A-II (Claim Nos. 69202, 71310 Mid-Jersey Trucking; 61556, 68009 York County; 72620, 72200 City of Warren).

Accordingly, Securities Plaintiffs' claims and injuries are "reasonably co-extensive" with those of all Class claimants. *See Parsons*, 754 F.3d at 685; *see also Melendres v. Arpaio*, 784 F.3d 1254, 1261-64 (9th Cir. 2015) (holding that representative parties with a direct and substantial interest may present claims on behalf of others with similar but not identical interests, provided they otherwise meet the Rule 23(a) factors); *In re Volkswagen "Clean Diesel" Litig.*, No. MDL 2672, 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017) (holding, in the securities context, that "*Melendres* clearly forecloses any argument that [a class representative] lacks standing to represent other putative class members who purchased bonds . . . in different tranches or offerings").

Thus, the typicality requirement is satisfied.

#### 4. *Adequacy of Representation*: The Securities Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Proposed Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The test for adequacy of representation for the class is two-pronged: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988)); *see also In re Death Row Records, Inc.*, No. 10-ap-02574, 2012 WL 952292, at *16 (B.A.P. 9th Cir. Mar. 21, 2012) ("In determining whether the interests of a class

13

SECURITIES PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS [CASE NO. 19-30088 (DM) (LEAD CASE)]

will be adequately represented, the court must determine that the class representative does not have an interest antagonistic to the class; and, that the class counsel must be qualified, experienced and able to conduct the litigation.").

**a. The Securities Plaintiffs and Their Counsel Have No Conflicts with the Proposed Class of Securities Claimants**

The Securities Plaintiffs have no known actual or potential conflicts of interest—and indeed, no interests antagonistic to—the other Securities Claimants. In fact, their interests are directly aligned. *See* Claim Nos. 69105 & 71345 (PERA claims); (Claim Nos. 69202, 71310 Mid-Jersey Trucking; 61556, 68009 York County; 72620, 72200 City of Warren). As members of Classes 9A and 10B, PERA and the Securities Act Plaintiffs are squarely incentivized to prosecute debt claims to recover the greatest amount of actual damages, to be paid in full in cash. As members of Class 10A-II, PERA and City of Warren are equally incentivized to prosecute claims to recover the greatest amount of actual damages for stockholder victims, to be paid in stock pursuant to the formula under the confirmed Plan. *See* ECF No. 8053-1 (Plan) §§4.12, 4.14, and 4.32.

Securities Plaintiffs purchased the Debtors' equity and/or debt securities and are asserting claims resulting from the same public statements and/or omissions as Securities Claimants in the bankruptcy proceeding. Indeed, Securities Plaintiffs have proven their willingness and ability to take an active role in the Chapter 11 Cases to protect the interests of all Securities Claimants.

Moreover, Securities Plaintiffs have engaged qualified, experienced, and capable attorneys with excellent track records in prosecuting complex securities class actions and complex litigation throughout the United States, such as this litigation. PERA's chosen counsel, Labaton Sucharow LLP, together with Securities Act Plaintiffs' retained counsel, Robbins Geller Rudman & Dowd LLP, as detailed further *infra*, have fairly and more than adequately represented the interests of the class to date. Furthermore, PERA's counsel has hired and supervised the qualified, experienced, and capable bankruptcy counsel of Lowenstein Sandler LLP and the Michelson Law Group, whose expertise in complex bankruptcy proceedings, especially in the context of investor-related claims, is well known to this Court.

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 20 of 26

**b. The Securities Plaintiffs and Their Counsel Will Prosecute the Action Vigorously on behalf of the Class**

The Securities Plaintiffs and their counsel have demonstrated their willingness and ability to serve as class representatives and class counsel. They have already vigorously advocated for the rights of all Securities Claimants.

Specifically, in addition to conducting an investigation and drafting pleadings in the Securities Action, they have: (i) defeated the Debtors' Section 105 motion for preliminary injunction; (ii) led efforts that resulted in an extension of the bar date for thousands of class member claimants whose claims would otherwise have been time barred; (iii) defeated the tort claimants committee motion for standing to transform, assume, and otherwise co-opt Securities Claims – which would have diverted recoveries away from the shareholder and bondholder members of Classes 9A, 10A-II, and 10B; and (iv) successfully opposed the Debtors' attempt to require Securities Claimants to file extensive pleadings supporting their Securities Claims. Further, proposed Class Counsel Labaton Sucharow LLP was principally responsible for the extensive negotiations right up to Plan confirmation, which provided a significant benefit to Securities Claimants, by working directly with the Debtors, Plan Proponents, and Mediator Judge Newsome.

This track record demonstrates that the Securities Plaintiffs and their counsel are ready and able to resolve the pertinent class-wide issues, identified herein, fairly and adequately. As their actions demonstrate, the Securities Plaintiffs and their counsel have committed considerable resources to representing the interests of Securities Claimants. The hard-fought proceedings to date establish there is no reason to doubt that the Securities Plaintiffs and their counsel will continue to do so on behalf of the proposed Class.

In sum, the Securities Plaintiffs are well-suited to represent the Securities Claimants, have no antagonistic interests, and have suffered injuries substantially similar to all others. They have demonstrated the willingness and ability to advocate tirelessly on behalf of the Securities Claimants, and "will fairly and adequately protect the interests of the class." *See* Rule 23(a)(4).

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 21 of 26

Thus, the adequacy requirement is satisfied, and the Court should appoint the Securities Plaintiffs as class representatives and Labaton Sucharow LLP and Robbins Geller Rudman & Dowd LLP as class counsel.[8]

**B. The Proposed Class Satisfies Rule 23(b)(3)**

Once the elements of Rule 23(a) are satisfied, a proposed class plaintiff must satisfy one subsection of Rule 23(b). Here, the proposed class satisfies subsection (b)(3) of Rule 23, which permits certification where:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

As set forth below, the "predominance" and "superiority" criteria are satisfied.

**1. Predominance Is Satisfied**

The predominance inquiry "asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouphakeo*, 577 U.S. 442, 453 (2016) (citing 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)). It does not require plaintiffs to prove that each element of their claim is susceptible to class-wide proof. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467-69 (2013). Instead, the Rule merely "require[s] that common questions predominate over any questions affecting only individual [class] members." *Id.*

This test is "readily met" in connection with securities fraud claims like the Securities Claims here. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also* 7 Newberg and Rubenstein on Class Actions § 22:63 (6th ed. June 2023 update) ("[S]ecurities cases possess the general characteristics that justify class treatment: they tend to involve allegations that fraudulent activity has injured many small and uninformed investors in a relatively uniform, but exceedingly complex, manner.").

[8] The law firm resumes for proposed Class Counsel and bankruptcy counsel are attached to the Declaration of Thomas G. Hoffman, Jr., filed herewith.

16

SECURITIES PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS [CASE NO. 19-30088 (DM) (LEAD CASE)]

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 22 of 26

Here, the common questions identified in Section II.A.2, *supra*, which are subject to generalized proof and applicable to the class of Securities Claimants as a whole, predominate over any questions requiring individualized proof.

The analysis of whether common questions predominate over individual questions "begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 563 U.S. 804, 809-10 (2011).

The elements of the Securities Claims brought under the Exchange Act of 1934 (the **"Exchange Act"**) are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.* at 810. The Supreme Court has held that the issues of whether a defendant knowingly and/or recklessly made public material misstatements and/or omissions (*i.e.*, materiality, falsity, and scienter) and whether the revelation(s) of the alleged fraud proximately caused that company's stock price to decline (*i.e.*, loss causation) involve common questions of law and fact that predominate over individualized ones. *See Amgen*, 568 U.S. at 467-69; *Halliburton I*, 563 U.S. at 812-13. Thus, "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." *See id.* at 810. Plaintiffs can establish class-wide reliance (and satisfy their burden of proving predominance) by invoking the "fraud-on-the market" presumption of reliance, which the Supreme Court adopted in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).[9]

Similarly, class treatment is appropriate for the Securities Claims brought under the Securities Act of 1933 (the **"Securities Act"**)—*i.e.*, the debt claims under Plan Classes 9A and 10B—because the elements of the Securities Claims brought under the Securities Act are a subset of

---

[9] The "prerequisites for invoking the [*Basic*] presumption—namely, publicity, materiality, market efficiency, and market timing" (*Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014))—are not reasonably in dispute here.

Further, to the extent Defendants concealed or improperly failed to disclose material facts with regard to the Company and its operations, the Class is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 23 of 26

the elements for those brought under the Exchange Act. A plaintiff can make out a *prima facie* case for a Securities Act claim "simply by alleging a material misrepresentation or omission." 7 Newberg and Rubenstein on Class Actions § 22:6 (6th ed. June 2023 update). Scienter and reliance are not elements of Securities Act claims. *See id.* (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) ("If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements.")).

Certification under this subsection is also appropriate when common questions predominate and "the amounts at stake for individuals may be so small that separate suits would be impracticable" (*Amchem*, 521 U.S. at 616), which is likely true for many if not most of the absent class members who have not yet resolved their Securities Claims.

**2. Superiority Is Satisfied**

The second requirement of Rule 23(b)(3) is also satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In determining whether the "superiority" requirement is met, courts consider four factors:

1. "the class members' interests in individually controlling the prosecution or defense of separate actions";
2. "the extent and nature of any litigation concerning the controversy already begun by or against class members";
3. "the desirability or undesirability of concentrating the litigation in [a] particular forum"; and
4. "the likely difficulties in managing a class action."

Here, each factor weighs strongly in favor of class certification. The first factor is satisfied because many Securities Claimants likely have small claims, and the expense of retaining counsel to negotiate, and if necessary litigate, is likely prohibitive. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (recognizing that class actions "permit the plaintiffs to pool claims which would be

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 24 of 26

uneconomical to litigate individually," and that "most of the plaintiffs would have no realistic day in court if a class action were not available").

The second and third factors are satisfied because this Court is the only possible forum for claims against the Debtors.

Finally, the fourth factor (*i.e.*, manageability) is satisfied because it essentially involves the same inquiry as that in which the Court must already engage when exercising its discretion to apply Rule 23—and that inquiry should be answered in the affirmative for the same reasons here. *See* Section I, *supra*.

Thus, Rule 23(b)(3) is satisfied, and class certification is appropriate here.

## CONCLUSION

For the foregoing reasons, the Court should exercise its discretion to apply Rule 23 to the Securities Claims and certify a class of Securities Claimants.

Dated: July 7, 2023

Respectfully submitted,

**MICHELSON LAW GROUP**

By: */s/ Randy Michelson*
Randy Michelson (SBN 114095)
*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

- and -

**LABATON SUCHAROW LLP**

*Lead Counsel to Securities Lead Plaintiff and the Class*

- and -

**LOWENSTEIN SANDLER LLP**

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

- and -

Case: 19-30088 Doc# 13865 Filed: 07/07/23 Entered: 07/07/23 16:09:25 Page 25 of 26

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**

*Liaison Counsel for the Class*

\- and -

**ROBBINS GELLER RUDMAN & DOWD LLP**

*Counsel for the Securities Act Plaintiffs*

\- and -

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**

*Additional Counsel for the Securities Act Plaintiffs*