1

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

-oOo-

| | |
|---|---|
| In Re: | ) Case No. 19-30088 |
| | ) Chapter 11 |
| PG&E CORPORATION | ) |
| | ) San Francisco, California |
| Debtor. | ) Tuesday, July 11, 2023 |
| _____ | ) 10:00 AM |

STATUS CONFERENCE REGARDING
REORGANIZED DEBTORS'
OBJECTION TO PROOF OF CLAIM
NO. 2090 FILED BY AMIR
SHAHMIRZA FILED BY PG&E
CORPORATION [12130]

STATUS CONFERENCE REGARDING
MOTION FOR ENTRY OF AN ORDER
FURTHER EXTENDING DEADLINE
FOR THE REORGANIZED DEBTORS
TO OBJECT TO CLAIMS AND FOR
RELATED RELIEF FILED BY PG&E
CORPORATION [13745]

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES (All present by video or telephone):

For the Debtor:          STEVEN A. LAMB, ESQ.
                         Rovens Lamb LLP
                         2601 Airport Drive, Suite 370
                         Torrance, CA 90505
                         (310)536-7830

For the Claimant:        LAWRENCE A. JACOBSON, ESQ.
                         Cohen and Jacobson, LLP
                         66 Bovet Road, Suite 285
                         San Mateo, CA 94402
                         (650)261-6280

```
 1   For the Reorganized       THOMAS B. RUPP, ESQ.
     Debtors:                  Keller Benvenutti Kim LLP
 2                              650 California Street, Suite 1900
                                San Francisco, CA 94108
 3                              (415)636-9015

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18   Court Recorder:           LORENA PARADA/ANKEY THOMAS
                                United States Bankruptcy Court
19                              450 Golden Gate Avenue
                                San Francisco, CA 94102
20

21   Transcriber:              HEIDI JOLLIFF
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (800) 257-0885
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 2 of 39

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, JULY 11, 2023, 10:00 AM

2                              -oOo-

3      (Call to order of the Court.)

4          THE CLERK:  The parties are joining.  Court is now in

5    session.  The Honorable Dennis Montali presiding, calling the

6    matter of PG&E Corporation.

7          THE COURT:  All right.  Good morning.  Mr. Rupp?

8          MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

9    Keller Benvenutti Kim for the reorganized debtors.

10         THE COURT:  Mr. Lamb, good morning.

11         MR. LAMB:  Good morning, Your Honor.  Steve Lamb for

12   the debtors.

13         THE COURT:  And Mr. Jacobson, about to join us, I

14   believe.  Okay.  Mr. Jacobson, can you hear me?

15         MR. JACOBSON:  I can.  Am I here?

16         THE COURT:  Yes.  Okay.  State your appearance.

17         MR. JACOBSON:  Good morning.  Lawrence Jacobson

18   appearing for Claimant Komir, Inc.

19         THE COURT:  So Mr. Jacobson, these two other gentlemen

20   turned down our invitation to not have a hearing today, so --

21         MR. JACOBSON:  They did.

22         THE COURT:  Mr. Lamb or Mr. Rupp, what's your

23   pleasure, and what's wrong with this schedule?

24         MR. LAMB:  Your Honor, thank you for your time.  I

25   appreciate it.  And we've reviewed the tentative and the

1   schedule that was proposed by Mr. Jacobson and just requesting

2   what I believe is a rather minor shift in that because it does

3   not currently accord forward, provide us the opportunity to

4   take some discovery. And so basically, what we're requesting,

5   and I'll detail this, is we're requesting that essentially the

6   dates shift about a month and a half or two.

7           THE COURT: Okay.

8           MR. LAMB: And basically, as I see the tentative, Your

9   Honor, it states that this dispute has been known and

10  anticipated for years. And with all due respect, we don't

11  believe that that's completely accurate because what happened

12  here is the original dispute was regarding the lowering of the

13  transmission lines, and it was this trespass complaint. And

14  that became part of the claim that Shahmirza filed.

15          Then, as you know, there was an objection. There was

16  a motion for summary adjudication, a countermotion for summary

17  judgment. The Court held that the recorded easements were

18  extinguished and denied the debtors countermotion. And in that

19  Shahmirza filed a declaration that the transmission lines were

20  lowered and materially altered in his opposition to the MSJ.

21  We think that that's a factual dispute.

22          It's left open the issue of the statute of limitations

23  and the prescriptive easement and what was referred to by the

24  Court as a consensual easement by Shahmirza. And we simply

25  want to take discovery regarding that. But this schedule, the

Case: 19-30088    Doc# 13889    Filed: 07/12/23    Entered: 07/12/23 13:06:46    Page 4
of 39

1  current schedule, presupposes that the debtors get no

2  opportunity to conduct discovery on the MSJ issues regarding

3  prescriptive easement and the statute of limitations.

4         And we're simply requesting that we'll go ahead and

5  we'll submit written discovery.  We can get that submitted by

6  next week.  We'll do requests for admissions, interrogatories,

7  production.  This relates to the consensual easement issue, the

8  prescriptive easement, and the statute of limitations.  And we

9  simply propose that we combine this discovery process for the

10 MSJ claims and the damages and just briefly extend those dates.

11 And the reason for that also is because, under the Kachadoorian

12 case that we referred to in the status report, we believe that

13 this is an inverse condemnation issue, which is pretty specific

14 in relation to damages.

15        So what our proposal, Your Honor, is that under the

16 current dates, the motion filing date is August 4th.

17 Obviously, they can file it whenever they want to file it, but

18 we just ask that this be extended to September 5th, 2023.

19 That's really just a month.

20             THE COURT:  Okay.

21             MR. LAMB:  The response --

22             THE COURT:  Let me --

23             MR. LAMB:  Go ahead.

24             THE COURT:  No, you finish.  Finish your point.

25             MR. LAMB:  I'm sorry.  The response currently is

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 5
of 39

1  September 5th.  We're asking for October 20th.  The reply is

2  currently September 19th, and we're asking for November 17th.

3  The hearing is October 3rd, and we're just asking for the first

4  week in December sometime.  And we want a complete written

5  discovery.  The completion date under the current schedule is

6  September 15th.  We're just asking for October 6th.  That's

7  just basically twenty dates.

8          Then under completing the recipient deposition

9  discovery, the current schedule is October 15.  We can do that

10 by that date, October 15th.  But we need to have that discovery

11 completed before we do our response, which would be due October

12 20th.  That's why we asked for that additional five days.

13         Right now, we don't have a current date for submitting

14 experts.  I believe -- we believe that it's in the best

15 interests of not just us but Shahmirza that we submit and

16 exchange expert reports.  Because this issue about valuation, I

17 think, is important, Your Honor.  And we would propose that

18 that date be November 18th, 2023.  We would complete expert

19 depositions.  The current date is November 10th.  We'd just

20 want to do it sometime in December, get it done in that month

21 of December, and then trial would shift from the first week in

22 December under the current proposal to just really the second

23 half of January or February 2024, depending upon, obviously,

24 the Court's calendar.  And that's our request, Your Honor.

25         THE COURT:  I'm just going to make a brief statement,

1    and then I'll let Mr. Jacobson respond.  My brief statement is

2    my statement about the parties are familiar with the dispute

3    was really kind of a 35,000-foot overview in the sense that

4    Shahmirza Komir acquired the property twentysomething years

5    ago, and all was quiet until something happened right around

6    2018.  That's what I meant.  And therefore, from my point of

7    view, there was nothing to litigate about until something

8    happened then.  Now, whether it's not important in my mind,

9    what day the wires got lowered, and so on.  So that's what I

10   had in mind.

11        Then the second thing I had in mind was that if there

12   had been no discovery -- excuse me, no status conference

13   scheduled, and there had been no colloquy like this, Mr.

14   Jacobson and Komir could have filed a motion for summary

15   judgment.  And the federal rules have a procedure in place for

16   the respondent, PG&E, to ask for more time for discovery.

17   Lawyers who cooperate, cooperate and do it all the time.

18        So when Mr. Jacobson made his statement in his status

19   conference statement that the only discovery that may

20   potentially be relevant relates to remedy and damages, I didn't

21   know whether that is the case or not.  So from my point of

22   view, leaving aside the actual dates on Mr. Jacobson's

23   schedule, from my point of view, well, why not do that first?

24   And if, as I stated in my tentative, if he wins, we're done.

25   If he needs to come back again for remedy in damages, there's

1  time to do it, and so on.  So that's all I had in mind.  And I

2  wasn't predisposing of PG&E's right to seek discovery, but the

3  procedures are in place as to deal with the discovery once

4  you're facing the motion.

5           Mr. Jacobson, do you have any problem with the

6  adjusted time frame that Mr. Lamb is suggesting?

7           MR. JACOBSON:  Well, it doesn't make sense to me.

8           THE COURT:  Okay.

9           MR. JACOBSON:  He's talking about discovery concerning

10  pre-2018.  None of that matters.  What they did before 2018 is

11  completely different than what they did in and after 2018.  The

12  rights that they are trying to assert are those that pertain to

13  where the towers and lines are now.  So the pre-2018 is not

14  relevant to that issue.

15          THE COURT:  Well, am I correct that there was no

16  change in the physical height or position of the towers or the

17  wires until 2018?  Is that correct?

18          MR. JACOBSON:  That is correct.

19          THE COURT:  Okay.  Okay.

20          MR. JACOBSON:  And they came out, and there was a

21  confrontation.  And my offer of proof on that would be that

22  when it became apparent what they were doing, Shahmirza went

23  and said, stop, you can't do that.

24          THE COURT:  Okay.  I accept that.  I accept that.

25  What I'm getting at is, then in your eyes, I gather your point

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 8
of 39

1  of view is that the world began in 2018 for this dispute.

2  Therefore, there's nothing that needs to be discovered that

3  predates 2018.

4           MR. JACOBSON:  That is correct.

5           THE COURT:  Okay.  But let -- but switch gears.  You

6  don't deny that once you frame your motion, you believe is your

7  motion for summary judgment, they have a right to take

8  discovery relevant to that motion, right?

9           MR. JACOBSON:  Yes.

10          THE COURT:  Okay.  So if they -- if you file your

11  motion and it begins in 2018, and Mr. Lamb says we want to take

12  a deposition for something that happened back in 2012, or

13  alternatively, if he can show that there are material facts

14  that undermine your position, that's certainly fair game for

15  discovery.

16          But let's go forward now to -- it's October 3rd, under

17  your schedule, and I rule that there is no prescriptive

18  easement and PG&E is a trespasser.  It sounds to me like you

19  concede that you're going to have to -- probably have to prove

20  the economics of the damage.  And if you accept that it can be

21  dealt with purely as a damage measure, much like inverse

22  condemnation, then it might indeed require experts, right?

23          In other words, stated differently, not -- how can you

24  win this case by October 3rd completely without proving

25  damages?  And how can you prove damages without recognizing

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 9
of 39

1  there may be a fact dispute about the amount of the damages?

2          MR. JACOBSON:  I indicated in my statement that those

3  would be the issues that would remain for trial.

4          THE COURT:  Okay.  Okay.

5          MR. JACOBSON:  There's an issue initially that they --

6  that the remedy is that they move the lines.  They have no

7  right to have them there.

8          THE COURT:  Okay.

9          MR. JACOBSON:  And there is a damage issue that arises

10  because they are there.  And yes, those two matters need your

11  decision.

12          THE COURT:  Okay.  Then that means, again, if I can

13  restate your argument, you believe, based upon your expectation

14  and the motion that you propose filing by August 4th, PG&E will

15  have an opportunity to dispute it, to oppose it.,  And with

16  everything going your way, you'll have a ruling on or after

17  October 3rd.  But that won't be the end of the dispute.  We

18  then we'll talk about the quantification of the damages, right?

19  So --

20          MR. JACOBSON:  Yes.

21          THE COURT:  Okay.

22          MR. JACOBSON:  And sequentially, this makes sense to

23  me.

24          THE COURT:  Okay.

25          MR. JACOBSON:  Beefing these emphasis was on recorded

1  documents.

2          THE COURT:  Now, I understand that.

3          MR. JACOBSON:  (Indiscernible).

4          THE COURT:  But they -- but PG&E raises a legitimate

5  point, and I had the same question in my mind when I studied

6  your original motion, is why you didn't go for the whole

7  enchilada, if you will.  And that's your choice.  And I'm not

8  second-guessing you.  It's like, if we could do most of your

9  case in two motions, why couldn't we do it in one?  But that's

10  passed us now.  I may --

11          MR. JACOBSON:  Well, and maybe that was not the best

12  decision on my part.

13          THE COURT:  It doesn't matter.  It was a -- this is a

14  complicated case, and both sides have invested enormous amounts

15  of effort and lawyers' fees and thinking.  And I appreciate the

16  challenge.

17          But let's go back again.  Why -- it seems to me let's

18  play it out the way it would happen if we hadn't have this

19  preliminary discussion.  You would have made your motion.  You

20  would have set it on our motion calendar.  And maybe Mr. Lamb

21  would have called you up and said, we need more time because we

22  need to take discovery.  And you would have said, no, you don't

23  need to take discovery.  And he would have said, yes, I do.

24  And guess what?  You would have made a -- come before the

25  Court, and I would have said, sorry, Mr. Lamb, you're not

1  entitled to it on this pattern and this motion, or sorry, Mr.
2  Jacobson, I will give PG&E more time.
3          So I guess what I'm saying is, it seems to me that
4  this is a bit of a hypothetical because I haven't seen your
5  motion, and you haven't written your motion.  You've no doubt
6  thought about it.  But if you file your motion, then you and
7  Mr. Lamb have this discussion, and if you concede that at least
8  within the four corners of your motion, there probably is --
9  are facts that need to be developed, you can consent to an
10  adjustment in the schedule so he can take his discovery.  And
11  if you disagree, then I will make the decision.  So what's
12  wrong with that?
13          MR. JACOBSON:  If I'm understanding your comment
14  correctly, we would use the schedule that I have proposed, but
15  with some flexibility so that as the motion is filed and PG&E
16  expresses -- articulates some specific discovery that it seeks
17  to take, we provide the time and opportunity for that as
18  needed.  And that does make --
19          THE COURT:  Which is what the federal -- which is
20  what the federal rules require.
21          MR. JACOBSON:  Yes.
22          THE COURT:  Now, the federal rules, the number got
23  changed a couple of years ago, but the rule that says a party
24  opposing a motion for summary judgment, if you show why you
25  need time and what discovery you need, then the Court should

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 12
of 39

1 grant it to you. Obviously, lawyers who cooperate with one
2 another and judges who expect the lawyers to cooperate, it
3 never happens. They just work it out.

4 So again, we're back to the point. You picked August
5 4th. I don't -- wouldn't have cared if you had picked July
6 20th or September 4th. You picked August 4th. And that
7 suggests to me that if there's no discovery necessary by PG&E,
8 then that looked like a very reasonable timetable.

9 Mr. Lamb isn't really resisting it. It's a very
10 modest suggestion he's changing. And look, let's try it a
11 different way. If I say, okay, Mr. Lamb's schedule sounds
12 right to me, but I'm not going to waste time with experts and
13 quantification of damages until we decide whether you have a
14 basis for your second motion to be out in the first place. In
15 other words, you conceded just now that if you have it your
16 way, on or after October 3rd, you'll have won another major
17 step in this case. But you won't have proven your economic
18 result or your remedy -- remedy or economic result.

19 Maybe your remedy is they have to pull the towers down
20 and put them on Parcel 3. But maybe your remedy is a dollar
21 recovery. But either way, those are material fact issues, not
22 matters that can be decided as a matter of law, I think.

23 So therefore, my thought is make your motion, stick
24 with this timetable, but be flexible, or accommodate Mr. Lamb
25 because, as I say, he's not -- he didn't say, by the way, we

1   want to stretch this out a year.  He says I want to stretch
2   this out about a month.  So --
3          MR. JACOBSON:  It just (Indiscernible) yours.  I
4   thought I developed a reasonable timetable based on articulated
5   reasons for it, and I don't see a reason to change it.  And if
6   as we go, there's some adjustment necessary, then we can deal
7   with that, and --
8          THE COURT:  Okay.  Let -- okay.
9          MR. JACOBSON:  -- talk very well with one another in
10  this case with respect to scheduling.  And if --
11         THE COURT:  Let's try -- let's try a different
12  approach.  It is now October 3rd.  I just announced that your
13  motion for -- or your second motion will be granted.  Now I
14  say, okay, gentlemen, when should we have a discovery and trial
15  prep for the remedy and the damages?  And I think Mr. Lamb is
16  suggesting that we move that process up a little bit.
17         Isn't that correct, Mr. Lamb?
18         MR. LAMB:  Your Honor, I'm just proposing we combine
19  it because I also think that if we can get some valuation
20  numbers, this, frankly, might help resolve this irrespective of
21  the --
22         THE COURT:  Well, that's always true.  That's always
23  true.  You could do that tomorrow in a conference room.  In
24  other words, of course --
25         MR. LAMB:  No, I get that, but I think it would

1   require expert reports.  I mean, I think --

2           THE COURT:  No, I understand, Mr. Lamb.  But I think

3   what I'm -- I guess I'm -- I guess I'm agreeing with both of

4   you.  I think Mr. Jacobson is saying this is not an

5   unreasonable schedule I proposed.  But he's also conceding that

6   even if we stick with his schedule, he still has to come back

7   and prove something more to win the case completely.  And

8   you're saying let's do it all at a compressed way.

9           But I think, Mr. Lamb, what may be throwing me off,

10  and maybe him off, is why are you talking about discovery that

11  predates 2018?  So why are you?  What is the relevance of any

12  facts that need to be developed pre-2018?

13          MR. LAMB:  I'm not necessarily talking about discovery

14  that predates 2018, and I don't think the statute of

15  limitations both applies -- I mean, it depends on how you look

16  at the statute of limitations issue.  They're saying, as I

17  understand it, that the reason why there's this trespass where

18  the statute of limitations doesn't apply is because it's a

19  material deviation.  I don't think that's the case, and we're

20  entitled to take discovery on that.  In fact, the current

21  schedule has percipient discovery October 15th.  We're agreeing

22  with that.  That's not going to change it.  I think what Mr.

23  Jacobson is saying is we're not entitled to take any discovery

24  unless it's expert discovery, and that can't be true.

25          THE COURT:  No, I --

1      MR. JACOBSON:  I'm not say that.  There's a schedule

2  for it.

3      THE COURT:  Yeah, I think you're reading too much into

4  it because what I -- the only problem I had with the -- until

5  I've heard from you, Mr. Lamb, but the only problem I had with

6  what Jacobson was suggesting is it seemed like the phase of the

7  litigation that we'll call the second summary judge motion was

8  going to be overlapping a post-second judgment hearing hearing.

9  And I -- my mind is, why?  Why do they overlap?  Why not break

10  it into sequences?

11      In other words, I obviously, I don't want you or him

12  to waste time and do the same kind of discovery or preparation

13  twice.  But doesn't the case lend itself to that kind of linear

14  approach that you prove that there was a trespass or a

15  violation of -- or there there was something that is not

16  actionable, that doesn't give rise to PG&E's liability?  And

17  only if and when that happens to be the case, that there has

18  been a damage or a trespass, you then prove what the damages or

19  the remedy are.  In other words --

20      MR. JACOBSON:  I'm trying to get --

21      THE COURT:  Okay.  In other words, try a different

22  way.  From a layman's point of view, it sounds to me like until

23  2018 -- there's peace in the valley.  There was no statute of

24  limitations issue because there was no dispute.  And then, in

25  2018, PG&E did something that Komir decided violated its

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 16
of 39

1  rights.  And that triggered a bunch of things, one of which was

2  filing a suit in Superior Court, followed by the bankruptcy.

3  And then the statute of limitations arguments are moot.

4      And then the issues of was this discharged in the 2001

5  bankruptcy is completely off the table because it's totally

6  irrelevant.  It's not a -- there was nothing to -- nothing was

7  violated in 20 -- until 2018.

8      MR. LAMB:  Now, I understand that Your Honor, but the

9  difficulty that I have with this is clearly, at least as I

10  understand it, Shahmirza is agreeing that -- Mr. Jacobson's

11  agreeing that we get the complete recipient deposition

12  discovery by October 15th.  But my response on the summary

13  judgment is due before that.  That just doesn't make sense.

14      THE COURT:  Okay.

15      MR. LAMB:  And that's why I'm --

16      THE COURT:  Okay.  Mr. Jacobson, then why don't you --

17  why don't you help me on that one?  Because, again, I -- it

18  looked to me like you had built in an overlap that didn't seem

19  right.  So if I stick with your schedule for what I'll call the

20  the next phase, why shouldn't the final dates that you suggest

21  be pushed out even later?  Or alternatively, do what Mr. Lamb

22  suggests is have the whole thing done into one package of time

23  and give him time to do everything in you time.  And then we

24  have a hearing on the merits or a trial, a hearing or a trial,

25  in a much closer time frame.

        MR. LAMB:  I think I dealt with those issues.  I'm
proposing that we filed a motion on August 4th.

        THE COURT:  Right.

        MR. LAMB:  And that the response is due September 5th.
He's got a month.  He's got a month to do discovery.

        THE COURT:  I know.  But then you've got discovery
completed after that, by December 5th -- September 15th.  So
what discovery is -- be -- you know, this is on -- at line 13
of your statement.  What discovery is being done up to
September 15th if the response to the motion was already due on
September 5th?  What is -- what are you discovering?  What is
the subject matter of the discovery or the depositions that are
occurring in mid-September and mid-October if we have dealt
with your schedule that ended up on October 3rd?

        MR. JACOBSON:  Well, I don't think discovery on --
there's very limited discovery that I think is relevant.  So we
may be talking about that again.  But he can -- they can do any
discovery that they choose, starting August 4th.

        THE COURT:  But you haven't answered my -- come on.
You haven't answered my question.  Mr. Lamb just asked the
question.  The question is, if I'm supposed to have my response
to the motion on September 5th, then what am I -- why am I --
is my discovery deadline and my expert depositions being put
out to beyond that?  And the obvious conclusion that I draw is
that in your mind, experts and some discovery is after you have

1 disposed of the legal arguments that you believe can be dealt

2 with on your second motion for summary judgment.

3       MR. JACOBSON: Because there will be no disputed

4 material facts with respect to the motion.

5       THE COURT: Well, okay. You know what I'm inclined to

6 do? I mean, I do think this is just a communication mix, but

7 it seems to me that the better thing to do here is to tell you,

8 Mr. Jacobson, file your motion. We'll start with an

9 anticipated hearing on October 4th -- excuse me, August 4th.

10 And Mr. Lamb, as the rules -- Federal Rules of Civil Procedure

11 and bankruptcy rules available to him to extend out his time to

12 respond to your motion if he believes that he must get

13 discovery that's relevant to your motion --

14       MR. LAMB: Yes.

15       THE COURT: -- before then. And see my point, and I

16 think I'm agreeing with him, it sounds to me like this motion

17 is going to put in issue things that PG&E has a right to

18 develop as part of his opposition. But only you know because

19 only you have in mind what your motion's going to say. But to

20 me, it's an oversimplification, perhaps. But it's -- Jacobson

21 believes that he can prove all of the -- make all of the

22 arguments necessary to establish as a matter of law that his

23 client's entitled to summary judgment except for the

24 quantification of damages or an alternative remedy. And that's

25 something that's going to require fact development and/or

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 19
of 39

1   experts.

2          So from my point of view, it should be -- it should be

3   stretched out in a linear fashion so that the timetable for the

4   second phase doesn't overlap the third one.  Or alternatively,

5   the two timetables should be consolidated so they can all be

6   done together.  So I can get -- I can give you the choice of

7   coming up with an agreed timetable for doing everything or

8   coming up with a logical and rational separation of the two

9   phases of the litigation.  You follow my thinking?  You don't

10  have to agree with me.  But do you understand what -- the way

11  I'm stating it?

12         MR. JACOBSON:  I think so.  And my response is the

13  footprint that I proposed is reasonable.  And if we start with

14  that and if, as the rules contemplate, we need an adjustment,

15  we adjust.  But we started with let's do this a year from now.

16  And so --

17         THE COURT:  We got -- we're off of that.  He's

18  conceded that point.  And so have I.

19         MR. JACOBSON:  I suggest that we stick with my

20  footprint.  If we need to adjust it, we can.  But it creates a

21  process that makes sense.

22         THE COURT:  Well, you have to -- you'll have to tell

23  me one more time then.  Again, look -- just look at your

24  writing and look at page 3 --

25         MR. JACOBSON:  Yes.

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 20
of 39

1    THE COURT:  -- line 13 and 14.  What discovery and
2  what depositions on the next line, and what expert depositions
3  are going to be done within those deadlines?  And why aren't
4  any or all of them necessary to have done before PG&E has to
5  respond to your motions?  What's the answer to that question?
6    MR. JACOBSON:  I may be missing the point, but those
7  are last dates.  They can choose to conduct what discovery they
8  want to undertake.
9    THE COURT:  I know, but that's my point.  Well, you
10  haven't answered the question.  So once again, I'll just ask
11  you the question.  What expert depositions need to be completed
12  by November 10th?
13    MR. JACOBSON:   Well, if we have a decision on October
14  3rd that there is no right to have those lines there, then you
15  would have five weeks for expert discovery on the remaining
16  remedy and damage issues, right?
17    THE COURT:  No.  No.  Because here -- what you didn't
18  say when the expert reports are, which is a relevant date.  If
19  there's going -- since this -- I don't believe we've talked
20  about experts before today.  Maybe we have.  But once we talk
21  about experts, we have to talk about deadlines for reports.  So
22  what if I say, okay, fine, if the experts' depositions have to
23  be done by November 10th, the experts' reports have to be done
24  at least a month earlier?  So but we haven't put that deadline
25  in there.  But if Mr. Lamb is hiring Professor So-and-so, who

1   says, you know, those lines can't be moved.  And you hire

2   Professor Somebody Else, who says, oh, no, those have to be

3   moved.  Then we've got competing experts.  But they have to --

4   they have to make their reports, and -- before you can be

5   expected to take their depositions.

6           I mean, that's again, expert discovery 101 in the pre-

7   trial manual.  So again, what -- or the same?  The same is true

8   if -- if PG&E's response is due under your timetable by

9   September 5th to the motion, what discovery are you saying they

10  could continue and complete up until September 15?  I mean,

11  you're the one that created the not later than, and the not

12  later than overlaps the -- an earlier deadline that appears to

13  conflict.

14          MR. JACOBSON:  The schedule contemplates you read the

15  lines 8 and 9.  The discovery may be -- may potentially be

16  relevant only to the remedy and damages.

17          THE COURT:  But don't you --

18          MR. JACOBSON:  It could be --

19          THE COURT:  -- concede that point?

20          MR. JACOBSON:  That's the --

21          THE COURT:  You made that point?  That's true, isn't

22  it?

23          MR. JACOBSON:  They can be doing remedy and damage

24  discovery, but from the outset.  We are going to have that

25  trial.

1       THE COURT: Well, I don't know. Maybe we are. But

2 Mr. Lamb, if we concede that for the next decision point, there

3 doesn't have to be any quantification of damages or alternative

4 remedies, what else is there to discover and to prepare for

5 other than just legal argument?

6       MR. LAMB: Like I explained, and we can get this

7 discovery out by next week, we'll have requests for admissions,

8 we'll have interrogatories, and we'll have requests for

9 production. And they relate to not only the inverse

10 condemnation claim but the statute of limitations because my

11 understanding is Shahmirza is saying that these lines were

12 materially altered. I don't believe they were. We can present

13 our own evidence, but I'm entitled to question Mr. Shahmirza on

14 the basis for that assumption that he makes in his declaration,

15 which I don't think is supported by anything.

16       THE COURT: No, you are. Of course, you are. Of

17 course, you're entitled to. But I don't understand something.

18 If you prove that the lines weren't materially altered, what's

19 the statute of limitations?

20       MR. LAMB: If they weren't materially altered, they've

21 known about these for years and years.

22       THE COURT: Well, of course.

23       MR. LAMB: That adjudication would bar this claim.

24       THE COURT: But Mr. Lamb, if they weren't material

25 altered, there's no damage. Does -- is that -- if you're -- if

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 23
of 39

1    PG&E had a right to alter them --

2            MR. LAMB:  That's correct.

3            THE COURT:  -- then there's no statute of limitations

4    issue.

5            MR. LAMB:  I think if they were not materially

6    altered, there is a statute of limitations defense that would

7    apply.  Damages would not be appropriate.  I'm just saying that

8    when I see the schedule that it's laid out, Your Honor, Mr.

9    Jacobson is trying to press this thing with the damages too.

10   And I'm saying -- I'm just asking for a reasonable amount of

11   time.  I'm willing to put those together, okay, which I thought

12   was an accommodation.  But the schedule, like I said, right

13   now, it says that I'm entitled to do written discovery and

14   depositions on a date prior to my response due.

15           THE COURT:  Yeah.  No, I know that.  And Mr. Jacobson

16   is resisting that and seems to think not.  Well, Mr. Jacobson,

17   I guess I'm surprised we can't seem to come to a point here,

18   but it seems to me that what I should tell you to do is tell

19   you to -- I'll stick with your schedule if there can be a

20   stipulation that there is nothing, nothing to be adjudicated or

21   determined before October 3rd that pertains to damages or

22   remedy.

23           I think realistically, the better approach would be to

24   tell -- ask you to adjust your timing, become more consistent

25   with Mr. Lamb's suggestion, and make your second motion for

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 24
of 39

1   everything you're entitled to, and if you -- unless you --
2   unless there's a concession that, of course, there has to be
3   further discovery.  But if there has to be further discovery,
4   then it doesn't belong to be part of the motion.  In other
5   words, what you can't mix and match is the notion of a summary
6   judgment with further facts to develop because they don't fit.
7   You can't have summary judgment when you have material facts in
8   dispute.

9           So you've got to either consolidate the way you want
10  to win this case across the board or you've got to bifurcate
11  it.  So there is an economy in dealing with the legal issues
12  and those which are not governed by material facts in dispute
13  with those that necessarily have material facts.  And the most
14  quintessential example would be expert testimony.  So I give
15  you your choice.  You want to think about it?  You want to meet
16  and confer with Mr. Lamb privately?

17          MR. JACOBSON:  I'd be willing to, as you say, think
18  about it.  And if I conclude it's appropriate, submit an
19  adjusted schedule.  I don't know how we do that timewise.  I
20  can do that in the next couple of days if we wanted to continue
21  this status conference for a week or something.

22          THE COURT:  Well, I mean, look, you can just accept
23  Mr. Lamb's suggestion.  We've got the whole question of a year
24  out off the table, I believe, he said in -- under his time
25  frame, this whole thing would be ready to go to final

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 25
of 39

1  adjudication and trial in January.  I think that's what you

2  said.  Didn't you say it, Mr. Lamb, or did I --

3          MR. LAMB:  Yeah, late January or February, Your Honor.

4          THE COURT:  Late January or February.  Maybe what I

5  suggest, Mr. Lamb, why don't you off-line with Mr. Jacobson?

6  You send him an email or a message that suggests more

7  specifically the proposal that you would make.  And Mr.

8  Jacobson, you meet and confer with him.  And if you can agree

9  to that or negotiate some tweaks in that, we don't need a pre-

10  trial conference.  I mean, again, I don't need to have a

11  conference to tell two experienced lawyers how to come up with

12  a great schedule.  My schedule's the easiest here.  You guys

13  have to do all the work.  I mean, I think --

14          MR. JACOBSON:  Yeah, I'm agreeable -- I'm agreeable

15  with that.

16          THE COURT:  Okay.  I mean, I'll pencil in a continued

17  hearing date if you guys come to blows about it.  But I'm

18  expecting you'll work out a sensible solution because it seems

19  reasonable, I mean completely reasonable.  But let's not beat

20  this to death.  He's got -- you've got to build into your

21  discussion deadlines for extra reports and the exchange of

22  those reports.  And then put in the opportunity to just -- to

23  depose the experts or if any -- because frankly, depose any

24  percipient witnesses, Mr. Shahmirza, or anyone else who may be

25  a material witness.  But that's easy.  Those are things you can

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 26
of 39

1  you can work on.

2        So Mr. Rupp, you know the -- you're the keeper along

3  with Ms. Parada of our PG&E schedule.  What's our -- well, I

4  know we have a hearing date next week, but what's our next

5  regular PG&E after next week?  The --

6        MR. RUPP:  I'm sorry --

7        THE CLERK:  We have July 26, Your Honor.

8        THE COURT:  July 26th, okay.  Let's do this.  I -- Mr.

9  Lamb and Mr. Jacobson, I'm urging you gentlemen to work out a

10  mutually acceptable sequence consistent with what we've been

11  discussing.  I'll put -- I'll just continue today to

12  September -- July 26th at 10:00, in case there's a breakdown of

13  this communication.  But I really urge you to resolve it and

14  give Ms. Parada a schedule that you don't have to ask my

15  permission.  She knows my schedule.  I know you know the PG&E

16  timing, and we have a lot of flexibility in the calendar if we

17  need to adjust it for your convenience.

18        So whether it's the convenience of your clients or

19  your own schedule, I want to accommodate you.  But I want to be

20  more consistent with -- why don't we say Jacobson as modified

21  by Lamb in the timetable that we've talked about for the

22  purpose, really, of avoiding this risk of overlap and, in fact,

23  having a reasonable timetable that takes us to the end of the

24  trial court involvement in this dispute so I can make a final

25  decision.  People can make their choices about appeals or

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 27
of 39

1  settlement or whatever.  Okay.  July 26th at 10:00.  I hope I

2  don't see you then.

3          MR. JACOBSON:  Can I make --

4          THE COURT:  Yes, sir.

5          MR. JACOBSON:  -- just a comment, Judge?

6          THE COURT:  Of course.

7          MR. JACOBSON:  To avoid any negative pregnant here,

8  today is the first time that I have ever heard any suggestion

9  that the modification or the change, the replacement in 2018

10  was not material.  That has just been a given all the way along

11  until these comments today.

12          Secondly, counsel's comments about inverse

13  condemnation make it sound like that's been a part of the mix

14  here as we've gone along.  The status conference statement in

15  this discussion this morning is the first mention of any

16  inverse condemnation.  So you know, we've had this discussion

17  in part in the context of there supposedly being a dispute

18  about whether there was a material alteration in 2018.  And

19  that's something that has never been suggested before.  And

20  there's been discussion or comments about the inverse

21  condemnation issue in the case.  There is no inverse

22  condemnation issue in the case.  It's not in a pleading.  It's

23  not in an objection.  It's not in anything.

24          THE COURT:  Well, I understood it to be kind of an

25  analogy, but as far as the material alteration, your client

1  believes there was a material alteration, right?

2           MR. JACOBSON:  Yes.

3           THE COURT:  Okay

4           MR. JACOBSON:  So he has always said so.

5           THE COURT:  All he has to do is prove it.  And if Mr.

6  Lamb can only argue against that proof that he doesn't believe

7  it's material, I guess he'll have to persuade me rather than

8  you.  And as far as interest condemnation, I mean, I accept

9  that the words haven't been used.  I think the concept I

10 understand, Mr. Lamb, isn't -- am I right on the concept?

11          MR. LAMB:  Well, you are right on the concept, Your

12 Honor.

13          THE COURT:  I mean --

14          MR. LAMB:  We have never -- we have never stated that

15 we agree that there's not been a material alteration.  I mean,

16 that's just not accurate at all.  You know --

17          MR. JACOBSON:  Well, you don't --

18          THE COURT:  I mean, look --

19          MR. LAMB:  That's an allegation that they have made.

20          THE COURT:  When a utility burns down somebody's

21 house, that's inverse condemnation under the law.  When a

22 utility does something that takes away someone's pleasure or

23 use of property because they have done something, I believe it

24 has been addressed as inverse condemnation because it's an

25 affirmative act by the public utility to cause property value

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 29
of 39

1   decline to somebody else.

2           Mr. Jacobson, I'll accept that the phrase hasn't been

3   used, but I think the concept is not new, at least to me.  But

4   first -- listen, if you can show that this is a made-up

5   argument and that there's no there there that you'll make --

6   you'll make your case.  Listen, so I accept that for you

7   personally and your client, maybe this is the first time you

8   believe that the other side has uttered those words or even the

9   material alteration words.  It doesn't matter whether they've

10  said it twenty times or once, they -- the question is whether

11  their -- your client has suffered those consequences, and if

12  so, what is PG&E's responsibility to it?  And that's why we're

13  having the trial.

14          MR. JACOBSON:  Maybe -- I didn't -- I didn't intend to

15  provoke an argument about it.  I just didn't want to sit

16  through this hearing with those comments --

17          THE COURT:  Okay.

18          MR. JACOBSON:  -- without commenting on them.

19          THE COURT:  I don't consider this an argument.  I

20  consider this a spirited discussion among serious people.  I

21  will or not -- I will or will not see you both on July 26th at

22  10:00.  I urge you to come together for a reasonable schedule

23  consistent with -- the matters we talked about today.  And

24  we'll leave it at that.  Okay.

25          MR. JACOBSON:  Thank you.

Case: 19-30088   Doc# 13889   Filed: 07/12/23   Entered: 07/12/23 13:06:46   Page 30
of 39

1          THE COURT:  Thank you all for your time.

2          MR. LAMB:  Thank you, Your Honor.

3          THE COURT:  Conclude the hearing.

4      (Whereupon these proceedings were concluded at 10:43 AM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 19-30088    Doc# 13889    Filed: 07/12/23    Entered: 07/12/23 13:06:46    Page 31
of 39

1               C E R T I F I C A T I O N

2

3   I, Heidi Jolliff, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7

8   _____

9   /s/ HEIDI JOLLIFF, CDLT-292

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  July 11, 2023

16

17

18

19

20

21

22

23

24

25

**A**

**accept (7)**
8:24,24;9:20;25:22;
29:8;30:2,6
**acceptable (1)**
27:10
**accommodate (2)**
13:24;27:19
**accommodation (1)**
24:12
**accord (1)**
4:3
**accurate (2)**
4:11;29:16
**acquired (1)**
7:4
**across (1)**
25:10
**act (1)**
29:25
**actionable (1)**
16:16
**actual (1)**
7:22
**additional (1)**
6:12
**addressed (1)**
29:24
**adjudicated (1)**
24:20
**adjudication (3)**
4:16;23:23;26:1
**adjust (4)**
20:15,20;24:24;
27:17
**adjusted (2)**
8:6;25:19
**adjustment (3)**
12:10;14:6;20:14
**admissions (2)**
5:6;23:7
**affirmative (1)**
29:25
**again (11)**
7:25;10:12;11:17;
13:4;17:17;18:17;
20:23;21:10;22:6,7;
26:10
**against (1)**
29:6
**ago (2)**
7:5;12:23
**agree (3)**
20:10;26:8;29:15
**agreeable (2)**
26:14,14
**agreed (1)**
20:7
**agreeing (5)**
15:3,21;17:10,11;
19:16

**ahead (2)**
5:4,23
**allegation (1)**
29:19
**along (3)**
27:2;28:10,14
**alter (1)**
24:1
**alteration (5)**
28:18,25;29:1,15;
30:9
**altered (6)**
4:20;23:12,18,20,
25;24:6
**alternative (2)**
19:24;23:3
**alternatively (3)**
9:13;17:21;20:4
**always (3)**
14:22,22;29:4
**among (1)**
30:20
**amount (2)**
10:1;24:10
**amounts (1)**
11:14
**analogy (1)**
28:25
**and/or (1)**
19:25
**announced (1)**
14:12
**answered (3)**
18:19,20;21:10
**anticipated (2)**
4:10;19:9
**apparent (1)**
8:22
**appeals (1)**
27:25
**appearance (1)**
3:16
**appearing (1)**
3:18
**appears (1)**
22:12
**applies (1)**
15:15
**apply (2)**
15:18;24:7
**appreciate (2)**
3:25;11:15
**approach (3)**
14:12;16:14;24:23
**appropriate (2)**
24:7;25:18
**argue (1)**
29:6
**argument (5)**
10:13;23:5;30:5,15,
19
**arguments (3)**
17:3;19:1,22

**arises (1)**
10:9
**around (1)**
7:5
**articulated (1)**
14:4
**articulates (1)**
12:16
**aside (1)**
7:22
**assert (1)**
8:12
**assumption (1)**
23:14
**August (7)**
5:16;10:14;13:4,6;
18:2,18;19:9
**available (1)**
19:11
**avoid (1)**
28:7
**avoiding (1)**
27:22
**away (1)**
29:22

**B**

**back (5)**
7:25;9:12;11:17;
13:4;15:6
**bankruptcy (3)**
17:2,5;19:11
**bar (1)**
23:23
**based (2)**
10:13;14:4
**basically (3)**
4:4,8;6:7
**basis (2)**
13:14;23:14
**beat (1)**
26:19
**became (2)**
4:14;8:22
**become (1)**
24:24
**Beefing (1)**
10:25
**began (1)**
9:1
**begins (1)**
9:11
**believes (3)**
19:12,21;29:1
**belong (1)**
25:4
**Benvenutti (1)**
3:9
**best (2)**
6:14;11:11
**better (2)**
19:7;24:23

**beyond (1)**
18:24
**bifurcate (1)**
25:10
**bit (2)**
12:4;14:16
**blows (1)**
26:17
**board (1)**
25:10
**both (4)**
11:14;15:3,15;
30:21
**break (1)**
16:9
**breakdown (1)**
27:12
**brief (2)**
6:25;7:1
**briefly (1)**
5:10
**build (1)**
26:20
**built (1)**
17:18
**bunch (1)**
17:1
**burns (1)**
29:20

**C**

**calendar (3)**
6:24;11:20;27:16
**CALIFORNIA (1)**
3:1
**Call (3)**
3:3;16:7;17:19
**called (1)**
11:21
**calling (1)**
3:5
**came (1)**
8:20
**can (39)**
3:14,15;5:5,17;6:9;
9:13,20,23,25;10:12;
12:9,10;13:22;14:6,
19;18:17,17;19:1,21;
20:5,6,6,20;21:7;22:4,
23;23:6,12;24:19;
25:20,22;26:8,25;
27:1,24,25;28:3;29:6;
30:4
**cared (1)**
13:5
**case (16)**
5:12;7:21;9:24;
11:9,14;13:17;14:10;
15:7,19;16:13,17;
25:10;27:12;28:21,
22;30:6
**cause (1)**

**29:25**
**certainly (1)**
9:14
**challenge (1)**
11:16
**change (4)**
8:16;14:5;15:22;
28:9
**changed (1)**
12:23
**changing (1)**
13:10
**choice (3)**
11:7;20:6;25:15
**choices (1)**
27:25
**choose (2)**
18:18;21:7
**Civil (1)**
19:10
**claim (3)**
4:14;23:10,23
**Claimant (1)**
3:18
**claims (1)**
5:10
**clearly (1)**
17:9
**CLERK (2)**
3:4;27:7
**client (3)**
28:25;30:7,11
**clients (1)**
27:18
**client's (1)**
19:23
**closer (1)**
17:25
**colloquy (1)**
7:13
**combine (2)**
5:9;14:18
**coming (2)**
20:7,8
**comment (2)**
12:13;28:5
**commenting (1)**
30:18
**comments (4)**
28:11,12,20;30:16
**communication (2)**
19:6;27:13
**competing (1)**
22:3
**complaint (1)**
4:13
**complete (4)**
6:4,18;17:11;22:10
**completed (3)**
6:11;18:7;21:11
**completely (6)**
4:11;8:11;9:24;
15:7;17:5;26:19

Case: 19-30088    Doc# 13889    Filed: 07/12/23    Entered: 07/12/23 13:06:46    Page 33
of 39

**completing (1)**
6:8
**completion (1)**
6:5
**complicated (1)**
11:14
**compressed (1)**
15:8
**concede (4)**
9:19;12:7;22:19;
23:2
**conceded (2)**
13:15;20:18
**conceding (1)**
15:5
**concept (4)**
29:9,10,11;30:3
**concerning (1)**
8:9
**concession (1)**
25:2
**conclude (2)**
25:18;31:3
**concluded (1)**
31:4
**conclusion (1)**
18:24
**condemnation (10)**
5:13;9:22;23:10;
28:13,16,21,22;29:8,
21,24
**conduct (2)**
5:2;21:7
**confer (2)**
25:16;26:8
**conference (7)**
7:12,19;14:23;
25:21;26:10,11;28:14
**conflict (1)**
22:13
**confrontation (1)**
8:21
**consensual (2)**
4:24;5:7
**consent (1)**
12:9
**consequences (1)**
30:11
**consider (2)**
30:19,20
**consistent (4)**
24:24;27:10,20;
30:23
**consolidate (1)**
25:9
**consolidated (1)**
20:5
**contemplate (1)**
20:14
**contemplates (1)**
22:14
**context (1)**
28:17

**continue (3)**
22:10;25:20;27:11
**continued (1)**
26:16
**convenience (2)**
27:17,18
**cooperate (4)**
7:17,17;13:1,2
**corners (1)**
12:8
**Corporation (1)**
3:6
**correctly (1)**
12:14
**counsel's (1)**
28:12
**countermotion (2)**
4:16,18
**couple (2)**
12:23;25:20
**course (6)**
14:24;23:16,17,22;
25:2;28:6
**Court (79)**
3:3,4,7,10,13,16,19,
22;4:7,17,24;5:20,22,
24;6:25;8:8,15,19,24;
9:5,10;10:4,8,12,21,
24;11:2,4,4,13,25;
12:19,22,25;14:8,11,
22;15:2,25;16:3,21;
17:2,14,16,18:3,6,19;
19:5,15;20:17,22;
21:1,9,17;22:17,19,
21;23:1,16,22,24;
24:3,15;25:22;26:4,
16;27:8,24;28:4,6,24;
29:3,5,13,18,20;
30:17,19;31:1,3
**Court's (1)**
6:24
**created (1)**
22:11
**creates (1)**
20:20
**current (8)**
5:1,16;6:5,9,13,19,
22;15:20
**currently (1)**
4:3;5:25;6:2

## D

**damage (7)**
9:20,21;10:9;16:18;
21:16;22:23;23:25
**damages (17)**
5:10,14;7:20,25;
9:25,25;10:1,18;
13:13;14:15;16:18;
19:24;22:16;23:3;
24:7,9,21
**date (10)**

5:16;6:5,10,13,18,
19;21:18;24:14;
26:17;27:4
**dates (7)**
4:6;5:10,16;6:7;
7:22;17:20;21:7
**day (1)**
7:9
**days (2)**
6:12;25:20
**deadline (3)**
18:23;21:24;22:12
**deadlines (3)**
21:3,21;26:21
**deal (2)**
8:3;14:6
**dealing (1)**
25:11
**dealt (4)**
9:21;18:1,13;19:1
**death (1)**
26:20
**debtors (4)**
3:9,12;4:18;5:1
**December (5)**
6:4,20,21,22;18:7
**decide (1)**
13:13
**decided (2)**
13:22;16:25
**decision (6)**
10:11;11:12;12:11;
21:13;23:2;27:25
**declaration (2)**
4:19;23:14
**decline (1)**
30:1
**defense (1)**
24:6
**denied (1)**
4:18
**Dennis (1)**
3:5
**deny (1)**
9:6
**depending (1)**
6:23
**depends (1)**
15:15
**depose (2)**
26:23,23
**deposition (3)**
6:8;9:12;17:11
**depositions (9)**
6:19;18:12,23;21:2,
2,11,22;22:5;24:14
**detail (1)**
4:5
**determined (1)**
24:21
**develop (2)**
19:18;25:6
**developed (3)**

12:9;14:4;15:12
**development (1)**
19:25
**deviation (1)**
15:19
**different (4)**
8:11;13:11;14:11;
16:21
**differently (1)**
9:23
**difficulty (1)**
17:9
**disagree (1)**
12:11
**discharged (1)**
17:4
**discover (1)**
23:4
**discovered (1)**
9:2
**discovering (1)**
18:11
**discovery (53)**
4:4,25;5:2,5,9;6:5,
9,10;7:12,16,19;8:2,3,
9;9:8,15;11:22,23;
12:10,16,25;13:7;
14:14;15:10,13,20,21,
23,24;16:12;17:12;
18:5,6,8,9,12,15,16,
18,23,25;19:13;21:1,
7,15;22:6,9,15,24;
23:7;24:13;25:3,3
**discussing (1)**
27:11
**discussion (7)**
11:19;12:7;26:21;
28:15,16,20;30:20
**disposed (1)**
19:1
**dispute (13)**
4:9,12,21;7:2;9:1;
10:1,15,17;16:24;
25:8,12;27:24;28:17
**disputed (1)**
19:3
**documents (1)**
11:1
**dollar (1)**
13:20
**done (7)**
6:20;7:24;17:22;
18:9;20:6;21:3,4,23,
23;29:23
**doubt (1)**
12:5
**down (3)**
3:20;13:19;29:20
**draw (1)**
18:24
**due (7)**
4:10;6:11;17:13;
18:4,10;22:8;24:14

## E

**earlier (2)**
21:24;22:12
**easement (6)**
4:23,24;5:3,7,8;
9:18
**easements (1)**
4:17
**easiest (1)**
26:12
**easy (1)**
26:25
**economic (2)**
13:17,18
**economics (1)**
9:20
**economy (1)**
25:11
**effort (1)**
11:15
**either (2)**
13:21;25:9
**Else (4)**
22:2;23:4;26:24;
30:1
**email (1)**
26:6
**emphasis (1)**
10:25
**enchilada (1)**
11:7
**end (2)**
10:17;27:23
**ended (1)**
18:14
**enormous (1)**
11:14
**entitled (8)**
12:1;15:20,23;
19:23;23:13,17;
24:13;25:1
**essentially (1)**
4:5
**establish (1)**
19:22
**even (3)**
15:6;17:21;30:8
**evidence (1)**
23:13
**example (1)**
25:14
**except (1)**
19:23
**exchange (2)**
6:16;26:21
**excuse (2)**
7:12;19:9
**expect (1)**
13:2
**expectation (1)**
10:13

Case: 19-30088    Doc# 13889    Filed: 07/12/23    Entered: 07/12/23 13:06:46    Page 34
of 39

**expected (1)**
22:5
**expecting (1)**
26:18
**experienced (1)**
26:11
**expert (11)**
6:16,18;15:1,24;
18:23;21:2,11,15,18;
22:6;25:14
**experts (9)**
6:14;9:22;13:12;
18:25;20:1;21:20,21;
22:3;26:23
**experts' (2)**
21:22,23
**explained (1)**
23:6
**expresses (1)**
12:16
**extend (2)**
5:10;19:11
**extended (1)**
5:18
**extinguished (1)**
4:18
**extra (1)**
26:21
**eyes (1)**
8:25

**F**

**facing (1)**
8:4
**fact (5)**
10:1;13:21;15:20;
19:25;27:22
**facts (8)**
9:13;12:9;15:12;
19:4;25:6,7,12,13
**factual (1)**
4:21
**fair (1)**
9:14
**familiar (1)**
7:2
**far (2)**
28:25;29:8
**fashion (1)**
20:3
**February (3)**
6:23;26:3,4
**federal (5)**
7:15;12:19,20,22;
19:10
**fees (1)**
11:15
**file (5)**
5:17,17;9:10;12:6;
19:8
**filed (5)**
4:14,19;7:14;12:15;

18:2
**filing (3)**
5:16;10:14;17:2
**final (3)**
17:20;25:25;27:24
**fine (1)**
21:22
**Finish (2)**
5:24,24
**first (8)**
6:3,21;7:23;13:14;
28:8,15;30:4,7
**fit (1)**
25:6
**five (2)**
6:12;21:15
**flexibility (2)**
12:15;27:16
**flexible (1)**
13:24
**follow (1)**
20:9
**followed (1)**
17:2
**footprint (2)**
20:13,20
**forward (2)**
4:3;9:16
**four (1)**
12:8
**frame (4)**
8:6;9:6;17:25;
25:25
**FRANCISCO (1)**
3:1
**frankly (2)**
14:20;26:23
**further (3)**
25:3,3,6

**G**

**game (1)**
9:14
**gather (1)**
8:25
**gears (1)**
9:5
**gentlemen (3)**
3:19;14:14;27:9
**given (1)**
28:10
**Good (5)**
3:7,8,10,11,17
**governed (1)**
25:12
**grant (1)**
13:1
**granted (1)**
14:13
**great (1)**
26:12
**guess (6)**

11:24;12:3;15:3,3;
24:17;29:7
**guys (2)**
26:12,17

**H**

**half (2)**
4:6;6:23
**happen (1)**
11:18
**happened (4)**
4:11;7:5,8;9:12
**happens (2)**
13:3;16:17
**hear (1)**
3:14
**heard (2)**
16:5;28:8
**hearing (11)**
3:20;6:3;16:8,8;
17:24,24;19:9;26:17;
27:4;30:16;31:3
**height (1)**
8:16
**held (1)**
4:17
**help (2)**
14:20;17:17
**hire (1)**
22:1
**hiring (1)**
21:25
**Honor (14)**
3:8,11,24;4:9;5:15;
6:17,24;14:18;17:8;
24:8;26:3;27:7;29:12;
31:2
**Honorable (1)**
3:5
**hope (1)**
28:1
**house (1)**
29:21
**hypothetical (1)**
12:4

**I**

**important (2)**
6:17;7:8
**Inc (1)**
3:18
**inclined (1)**
19:5
**indeed (1)**
9:22
**indicated (1)**
10:2
**Indiscernible (2)**
11:3;14:3
**initially (1)**
10:5

**intend (1)**
30:14
**interest (1)**
29:8
**interests (1)**
6:15
**interrogatories (2)**
5:6;23:8
**into (4)**
16:3,10;17:22;
26:20
**inverse (9)**
5:13;9:21;23:9;
28:12,16,20,21;29:21,
24
**invested (1)**
11:14
**invitation (1)**
3:20
**involvement (1)**
27:24
**irrelevant (1)**
17:6
**irrespective (1)**
14:20
**issue (13)**
4:22;5:7,13;6:16;
8:14;10:5,9;15:16;
16:24;19:17;24:4;
28:21,22
**issues (7)**
5:2;10:3;13:21;
17:4;18:1;21:16;
25:11

**J**

**Jacobson (69)**
3:13,14,15,17,17,
19,21;4:1;7:1,14,18;
8:5,7,9,18,20;9:4,9;
10:2,5,9,20,22,25;
11:3,11;12:2,13,21;
14:3,9;15:4,23;16:1,6,
20;17:16;18:15;19:3,
8,20;20:12,19,25;
21:6,13;22:14,18,20,
23;24:9,15,16;25:17;
26:5,8,14;27:9,20;
28:3,5,7;29:2,4,17;
30:2,14,18,25
**Jacobson's (2)**
7:22;17:10
**January (4)**
6:23;26:1,3,4
**join (1)**
3:13
**joining (1)**
3:4
**judge (2)**
16:7;28:5
**judges (1)**
13:2

**judgment (10)**
4:17;7:15;9:7;
12:24;16:8;17:13;
19:2,23;25:6,7
**JULY (7)**
3:1;13:5;27:7,8,12;
28:1;30:21

**K**

**Kachadoorian (1)**
5:11
**keeper (1)**
27:2
**Keller (1)**
3:9
**Kim (1)**
3:9
**kind (4)**
7:3;16:12,13;28:24
**known (2)**
4:9;23:21
**knows (1)**
27:15
**Komir (4)**
3:18;7:4,14;16:25

**L**

**laid (1)**
24:8
**Lamb (52)**
3:10,11,11,22,24;
4:8;5:21,23,25;8:6;
9:11;11:20,25;12:7;
13:9,24;14:15,17,18,
25;15:2,9,13;16:5;
17:8,15,21;18:1,4,20;
19:10,14;21:25;23:2,
6,20,23,24;24:2,5;
25:16;26:2,3,5;27:9,
21;29:6,10,11,14,19;
31:2
**Lamb's (3)**
13:11;24:25;25:23
**last (1)**
21:7
**late (2)**
26:3,4
**later (3)**
17:21;22:11,12
**law (3)**
13:22;19:22;29:21
**Lawrence (1)**
3:17
**Lawyers (4)**
7:17;13:1,2;26:11
**lawyers' (1)**
11:15
**layman's (1)**
16:22
**least (4)**
12:7;17:9;21:24;

Case: 19-30088    Doc# 13889    Filed: 07/12/23    Entered: 07/12/23 13:06:46    Page 35
of 39

30:3
**leave (1)**
30:24
**leaving (1)**
7:22
**left (1)**
4:22
**legal (3)**
19:1;23:5;25:11
**legitimate (1)**
11:4
**lend (1)**
16:13
**liability (1)**
16:16
**limitations (12)**
4:22;5:3,8;15:15,
16,18;16:24;17:3;
23:10,19;24:3,6
**limited (1)**
18:16
**line (3)**
18:8;21:1,2
**linear (2)**
16:13;20:3
**lines (9)**
4:13,19;8:13;10:6;
21:14;22:1,15;23:11,
18
**listen (2)**
30:4,6
**litigate (1)**
7:7
**litigation (2)**
16:7;20:9
**little (1)**
14:16
**logical (1)**
20:8
**look (7)**
13:10;15:15;20:23,
23,24;25:22;29:18
**looked (2)**
13:8;17:18
**lot (1)**
27:16
**lowered (2)**
4:20;7:9
**lowering (1)**
4:12

**M**

**made-up (1)**
30:4
**major (1)**
13:16
**makes (3)**
10:22;20:21;23:14
**manual (1)**
22:7
**match (1)**
25:5

**material (16)**
9:13;13:21;15:19;
19:4;23:24;25:7,12,
13;26:25;28:10,18,
25;29:1,7,15;30:9
**materially (5)**
4:20;23:12,18,20;
24:5
**matter (6)**
3:6;11:13;13:22;
18:12;19:22;30:9
**matters (4)**
8:10;10:10;13:22;
30:23
**may (9)**
7:19;10:1;11:10;
15:9;18:17;21:6;
22:15,15;26:24
**maybe (10)**
11:11,20;13:19,20;
15:10;21:20;23:1;
26:4;30:7,14
**mean (14)**
15:1,15;19:6;22:6,
10;25:22;26:10,13,16,
19;29:8,13,15,18
**means (1)**
10:12
**meant (1)**
7:6
**measure (1)**
9:21
**meet (2)**
25:15;26:8
**mention (1)**
28:15
**merits (1)**
17:24
**message (1)**
26:6
**mid-October (1)**
18:13
**mid-September (1)**
18:13
**might (2)**
9:22;14:20
**mind (8)**
7:8,10,11;8:1;11:5;
16:9;18:25;19:19
**minor (1)**
4:2
**missing (1)**
21:6
**mix (3)**
19:6;25:5;28:13
**modest (1)**
13:10
**modification (1)**
28:9
**modified (1)**
27:20
**Montali (1)**
3:5

**month (7)**
4:6;5:19;6:20;14:2;
18:5,5;21:24
**moot (1)**
17:3
**more (8)**
7:16;11:21;12:2;
15:7;20:23;24:24;
26:6;27:20
**morning (6)**
3:7,8,10,11,17;
28:15
**most (2)**
11:8;25:13
**motion (36)**
4:16;5:16;7:14;8:4;
9:6,7,8,11;10:14;11:6,
19,20;12:1,5,5,6,8,15,
24;13:14,23;14:13,
13;16:7;18:2,10,22;
19:2,4,8,12,13,16;
22:9;24:25;25:4
**motions (2)**
11:9;21:5
**motion's (1)**
19:19
**move (2)**
10:6;14:16
**moved (2)**
22:1,3
**MSJ (3)**
4:20;5:2,10
**much (3)**
9:21;16:3;17:25
**must (1)**
19:12
**mutually (1)**
27:10

**N**

**necessarily (2)**
15:13;25:13
**necessary (4)**
13:7;14:6;19:22;
21:4
**need (15)**
6:10;10:10;11:21,
22,23;12:9,25,25;
15:12;20:14,20;
21:11;26:9,10;27:17
**needed (1)**
12:18
**needs (2)**
7:25;9:2
**negative (1)**
28:7
**negotiate (1)**
26:9
**new (1)**
30:3
**next (9)**
5:6;17:20;21:2;

23:2,7;25:20;27:4,4,5
**None (1)**
8:10
**notion (1)**
25:5
**November (5)**
6:2,18,19;21:12,23
**number (1)**
12:22
**numbers (1)**
14:20

**O**

**objection (2)**
4:15;28:23
**obvious (1)**
18:24
**Obviously (4)**
5:17;6:23;13:1;
16:11
**occurring (1)**
18:13
**October (17)**
6:1,3,6,9,10,11;
9:16,24;10:17;13:16;
14:12;15:21;17:12;
18:14;19:9;21:13;
24:21
**off (5)**
15:9,10;17:5;20:17;
25:24
**offer (1)**
8:21
**off-line (1)**
26:5
**once (5)**
8:3;9:6;21:10,20;
23:10
**one (9)**
11:9;13:1;14:9;
17:1,17,22;20:4,23;
22:11
**only (9)**
7:19;16:4,5,17;
19:18,19;22:16;23:9;
29:6
**oOo- (1)**
3:2
**open (1)**
4:22
**opportunity (5)**
4:3;5:2;10:15;
12:17;26:22
**oppose (1)**
10:15
**opposing (1)**
12:24
**opposition (2)**
4:20;19:18
**order (1)**
3:3
**original (2)**

**4:12;11:6**
**out (15)**
8:20;11:18;13:3,14;
14:1,2;17:21;18:24;
19:11;20:3;23:7;24:8;
25:24;26:18;27:9
**outset (1)**
22:24
**overlap (4)**
16:9;17:18;20:4;
27:22
**overlapping (1)**
16:8
**overlaps (1)**
22:12
**oversimplification (1)**
19:20
**overview (1)**
7:3
**own (2)**
23:13;27:19

**P**

**package (1)**
17:22
**page (1)**
20:24
**Parada (2)**
27:3,14
**Parcel (1)**
13:20
**part (6)**
4:14;11:12;19:18;
25:4;28:13,17
**parties (2)**
3:4;7:2
**party (1)**
12:23
**passed (1)**
11:10
**pattern (1)**
12:1
**peace (1)**
16:23
**pencil (1)**
26:16
**People (2)**
27:25;30:20
**percipient (2)**
15:21;26:24
**perhaps (1)**
19:20
**permission (1)**
27:15
**personally (1)**
30:7
**persuade (1)**
29:7
**pertain (1)**
8:12
**pertains (1)**
24:21

Case: 19-30088    Doc# 13889    Filed: 07/12/23    Entered: 07/12/23 13:06:46    Page 36 of 39

**PG&E (15)**
3:6;7:16;9:18;
10:14;11:4;12:2,15;
13:7;16:25;19:17;
21:4;24:1;27:3,5,15
**PG&E's (4)**
8:2;16:16;22:8;
30:12
**phase (3)**
16:6;17:20;20:4
**phases (1)**
20:9
**phrase (1)**
30:2
**physical (1)**
8:16
**picked (3)**
13:4,5,6
**place (3)**
7:15;8:3;13:14
**play (1)**
11:18
**pleading (1)**
28:22
**pleasure (2)**
3:23;29:22
**point (17)**
5:24;7:6,21,23;
8:25;11:5;13:4;16:22;
19:15;20:2,18;21:6,9;
22:19,21;23:2;24:17
**position (2)**
8:16;9:14
**post-second (1)**
16:8
**potentially (2)**
7:20;22:15
**pre- (2)**
22:6;26:9
**pre-2018 (3)**
8:10,13;15:12
**predates (3)**
9:3;15:11,14
**predisposing (1)**
8:2
**pregnant (1)**
28:7
**preliminary (1)**
11:19
**prep (1)**
14:15
**preparation (1)**
16:12
**prepare (1)**
23:4
**prescriptive (4)**
4:23;5:3,8;9:17
**present (1)**
23:12
**presiding (1)**
3:5
**press (1)**
24:9

**presupposes (1)**
5:1
**pretty (1)**
5:13
**prior (1)**
24:14
**privately (1)**
25:16
**probably (2)**
9:19;12:8
**problem (3)**
8:5;16:4,5
**procedure (2)**
7:15;19:10
**procedures (1)**
8:3
**proceedings (1)**
31:4
**process (3)**
5:9;14:16;20:21
**production (2)**
5:7;23:9
**Professor (2)**
21:25;22:2
**proof (2)**
8:21;29:6
**property (3)**
7:4;29:23,25
**proposal (3)**
5:15;6:22;26:7
**propose (3)**
5:9;6:17;10:14
**proposed (4)**
4:1;12:14;15:5;
20:13
**proposing (2)**
14:18;18:2
**prove (8)**
9:19,25;15:7;16:14,
18;19:21;23:18;29:5
**proven (1)**
13:17
**provide (2)**
4:3;12:17
**proving (1)**
9:24
**provoke (1)**
30:15
**public (1)**
29:25
**pull (1)**
13:19
**purely (1)**
9:21
**purpose (1)**
27:22
**pushed (1)**
17:21
**put (7)**
13:20;18:23;19:17;
21:24;24:11;26:22;
27:11

**Q**

**quantification (4)**
10:18;13:13;19:24;
23:3
**quiet (1)**
7:5
**quintessential (1)**
25:14

**R**

**raises (1)**
11:4
**rather (2)**
4:2;29:7
**rational (1)**
20:8
**read (1)**
22:14
**reading (1)**
16:3
**ready (1)**
25:25
**realistically (1)**
24:23
**really (6)**
5:19;6:22;7:3;13:9;
27:13,22
**reason (3)**
5:11;14:5;15:17
**reasonable (8)**
13:8;14:4;20:13;
24:10;26:19,19;
27:23;30:22
**reasons (1)**
14:5
**recipient (2)**
6:8;17:11
**recognizing (1)**
9:25
**recorded (2)**
4:17;10:25
**recovery (1)**
13:21
**referred (2)**
4:23;5:12
**regarding (3)**
4:12,25;5:2
**regular (1)**
27:5
**relate (1)**
23:9
**relates (2)**
5:7;7:20
**relation (1)**
5:14
**relevance (1)**
15:11
**relevant (7)**
7:20;8:14;9:8;
18:16;19:13;21:18;

22:16
**remain (1)**
10:3
**remaining (1)**
21:15
**remedies (1)**
23:4
**remedy (14)**
7:20,25;10:6;13:18,
18,19,20;14:15;
16:19;19:24;21:16;
22:16,23;24:22
**reorganized (1)**
3:9
**replacement (1)**
28:9
**reply (1)**
6:1
**report (1)**
5:12
**reports (8)**
6:16;15:1;21:18,21,
23;22:4;26:21,22
**request (1)**
6:24
**requesting (4)**
4:1,4,5;5:4
**requests (3)**
5:6;23:7,8
**require (4)**
9:22;12:20;15:1;
19:25
**resisting (2)**
13:9;24:16
**resolve (2)**
14:20;27:13
**respect (3)**
4:10;14:10;19:4
**respond (3)**
7:1;19:12;21:5
**respondent (1)**
7:16
**response (10)**
5:21,25;6:11;17:12;
18:4,10,21;20:12;
22:8;24:14
**responsibility (1)**
30:12
**restate (1)**
10:13
**result (2)**
13:18,18
**reviewed (1)**
3:25
**right (20)**
3:7;6:13;7:5;8:2;
9:7,8,22;10:7,18;
13:12;17:19;18:3;
19:17;21:14,16;24:1,
12;29:1,10,11
**rights (2)**
8:12;17:1
**rise (1)**

16:16
**risk (1)**
27:22
**room (1)**
14:23
**rule (2)**
9:17;12:23
**rules (7)**
7:15;12:20,22;
19:10,10,11;20:14
**ruling (1)**
10:16
**Rupp (6)**
3:7,8,8,22;27:2,6

**S**

**same (4)**
11:5;16:12;22:7,7
**SAN (1)**
3:1
**saying (9)**
12:3;15:4,8,16,23;
22:9;23:11;24:7,10
**schedule (28)**
3:23;4:1,25;5:1;6:5,
9;7:23;9:17;12:10,14;
13:11;15:5,6,21;16:1;
17:19;18:14;22:14;
24:8,12,19;25:19;
26:12;27:3,14,15,19;
30:22
**scheduled (1)**
7:13
**schedule's (1)**
26:12
**scheduling (1)**
14:10
**second (8)**
6:22;7:11;13:14;
14:13;16:7;19:2;20:4;
24:25
**second-guessing (1)**
11:8
**Secondly (1)**
28:12
**seek (1)**
8:2
**seeks (1)**
12:16
**seem (2)**
17:18;24:17
**seemed (1)**
16:6
**seems (6)**
11:17;12:3;19:7;
24:16,18;26:18
**send (1)**
26:6
**sense (5)**
7:3;8:7;10:22;
17:13;20:21
**sensible (1)**

Case: 19-30088    Doc# 13889    Filed: 07/12/23    Entered: 07/12/23 13:06:46    Page 37
of 39

26:18
**separation (1)**
20:8
**September (13)**
5:18;6:1,2,6;13:6;
18:4,7,10,11,22;22:9,
10;27:12
**sequence (1)**
27:10
**sequences (1)**
16:10
**sequentially (1)**
10:22
**serious (1)**
30:20
**session (1)**
3:5
**set (1)**
11:20
**settlement (1)**
28:1
**Shahmirza (10)**
4:14,19,24;6:15;
7:4;8:22;17:10;23:11,
13;26:24
**shift (3)**
4:2,6;6:21
**show (3)**
9:13;12:24;30:4
**side (1)**
30:8
**sides (1)**
11:14
**simply (3)**
4:24;5:4,9
**sit (1)**
30:15
**So-and-so (1)**
21:25
**solution (1)**
26:18
**Somebody (2)**
22:2;30:1
**somebody's (1)**
29:20
**someone's (1)**
29:22
**sometime (2)**
6:4,20
**sorry (4)**
5:25;11:25;12:1;
27:6
**sound (1)**
28:13
**sounds (4)**
9:18;13:11;16:22;
19:16
**specific (2)**
5:13;12:16
**specifically (1)**
26:7
**spirited (1)**
30:20

**start (2)**
19:8;20:13
**started (1)**
20:15
**starting (1)**
18:18
**State (1)**
3:16
**stated (3)**
7:24;9:23;29:14
**statement (8)**
6:25;7:1,2,18,19;
10:2;18:9;28:14
**states (1)**
4:9
**stating (1)**
20:11
**status (5)**
5:12;7:12,18;25:21;
28:14
**statute (12)**
4:22;5:3,8;15:14,
16,18;16:23;17:3;
23:10,19;24:3,6
**step (1)**
13:17
**Steve (1)**
3:11
**stick (5)**
13:23;15:6;17:19;
20:19;24:19
**still (1)**
15:6
**stipulation (1)**
24:20
**stop (1)**
8:23
**stretch (2)**
14:1,1
**stretched (1)**
20:3
**studied (1)**
11:5
**subject (1)**
18:12
**submit (3)**
5:5;6:15;25:18
**submitted (1)**
5:5
**submitting (1)**
6:13
**suffered (1)**
30:11
**suggest (3)**
17:20;20:19;26:5
**suggested (1)**
28:19
**suggesting (3)**
8:6;14:16;16:6
**suggestion (4)**
13:10;24:25;25:23;
28:8
**suggests (3)**

13:7;17:22;26:6
**suit (1)**
17:2
**summary (11)**
4:16,16;7:14;9:7;
12:24;16:7;17:12;
19:2,23;25:5,7
**Superior (1)**
17:2
**supported (1)**
23:15
**supposed (1)**
18:21
**supposedly (1)**
28:17
**surprised (1)**
24:17
**switch (1)**
9:5

**T**

**table (2)**
17:5;25:24
**talk (4)**
10:18;14:9;21:20,
21
**talked (3)**
21:19;27:21;30:23
**talking (4)**
8:9;15:10,13;18:17
**tentative (3)**
3:25;4:8;7:24
**testimony (1)**
25:14
**therefore (3)**
7:6;9:2;13:23
**thinking (2)**
11:15;20:9
**third (1)**
20:4
**Thomas (1)**
3:8
**thought (4)**
12:6;13:23;14:4;
24:11
**throwing (1)**
15:9
**times (1)**
30:10
**timetable (8)**
13:8,24;14:4;20:3,
7;22:8;27:21,23
**timetables (1)**
20:5
**timewise (1)**
25:19
**timing (2)**
24:24;27:16
**today (6)**
3:20;21:20;27:11;
28:8,11;30:23
**together (3)**

20:6;24:11;30:22
**tomorrow (1)**
14:23
**totally (1)**
17:5
**towers (3)**
8:13,16;13:19
**transmission (2)**
4:13,19
**trespass (4)**
4:13;15:17;16:14,
18
**trespasser (1)**
9:18
**trial (11)**
6:21;10:3;14:14;
17:24,24;22:7,25;
26:1,10;27:24;30:13
**triggered (1)**
17:1
**true (5)**
14:22,23;15:24;
22:7,21
**try (4)**
13:10;14:11,11;
16:21
**trying (3)**
8:12;16:20;24:9
**TUESDAY (1)**
3:1
**turned (1)**
3:20
**tweaks (1)**
26:9
**twenty (2)**
6:7;30:10
**twentysomething (1)**
7:4
**twice (1)**
16:13
**two (7)**
3:19;4:6;10:10;
11:9;20:5,8;26:11

**U**

**under (9)**
5:11,15;6:5,8,22;
9:16;22:8;25:24;
29:21
**undermine (1)**
9:14
**understood (1)**
28:24
**undertake (1)**
21:8
**unless (3)**
15:24;25:1,2
**unreasonable (1)**
15:5
**up (8)**
11:21;14:16;18:9,
14;20:7,8;22:10;

26:11
**upon (2)**
6:23;10:13
**urge (2)**
27:13;30:22
**urging (1)**
27:9
**use (2)**
12:14;29:23
**used (2)**
29:9;30:3
**utility (3)**
29:20,22,25
**uttered (1)**
30:8

**V**

**valley (1)**
16:23
**valuation (2)**
6:16;14:19
**value (1)**
29:25
**view (6)**
7:7,22,23;9:1;
16:22;20:2
**violated (2)**
16:25;17:7
**violation (1)**
16:15

**W**

**waste (2)**
13:12;16:12
**way (11)**
10:16;11:18;13:11,
16,21,25;15:8;16:22;
20:10;25:9;28:10
**week (7)**
5:6;6:4,21;23:7;
25:21;27:4,5
**weeks (1)**
21:15
**weren't (3)**
23:18,20,24
**what's (7)**
3:22,23;12:11;21:5;
23:18;27:3,4
**whenever (1)**
5:17
**Whereupon (1)**
31:4
**whole (4)**
11:6;17:22;25:23,
25
**willing (2)**
24:11;25:17
**win (3)**
9:24;15:7;25:10
**wins (1)**
7:24

Case: 19-30088    Doc# 13889    Filed: 07/12/23    Entered: 07/12/23 13:06:46
of 39

wires (2)
  7:9;8:17
within (2)
  12:8;21:3
without (3)
  9:24,25;30:18
witness (1)
  26:25
witnesses (1)
  26:24
won (1)
  13:16
words (10)
  9:23;13:15;14:24;
  16:11,19,21;25:5;
  29:9;30:8,9
work (5)
  13:3;26:13,18;27:1,
  9
world (1)
  9:1
writing (1)
  20:24
written (4)
  5:5;6:4;12:5;24:13
wrong (2)
  3:23;12:12

**Y**

year (3)
  14:1;20:15;25:23
years (5)
  4:10;7:4;12:23;
  23:21,21

**1**

10:00 (4)
  3:1;27:12;28:1;
  30:22
10:43 (1)
  31:4
101 (1)
  22:6
10th (3)
  6:19;21:12,23
11 (1)
  3:1
13 (2)
  18:8;21:1
14 (1)
  21:1
15 (2)
  6:9;22:10
15th (6)
  6:6,10;15:21;17:12;
  18:7,10
17th (1)
  6:2
18th (1)
  6:18
19th (1)

6:2

**2**

20 (1)
  17:7
2001 (1)
  17:4
2012 (1)
  9:12
2018 (14)
  7:6;8:10,11,17;9:1,
  3,11;15:11,14;16:23,
  25;17:7;28:9,18
2023 (3)
  3:1;5:18;6:18
2024 (1)
  6:23
20th (3)
  6:1,12;13:6
26 (1)
  27:7
26th (4)
  27:8,12;28:1;30:21

**3**

3 (2)
  13:20;20:24
35,000-foot (1)
  7:3
3rd (9)
  6:3;9:16,24;10:17;
  13:16;14:12;18:14;
  21:14;24:21

**4**

4th (9)
  5:16;10:14;13:5,6,
  6;18:2,18;19:9,9

**5**

5th (7)
  5:18;6:1;18:4,7,11,
  22;22:9

**6**

6th (1)
  6:6

**8**

8 (1)
  22:15

**9**

9 (1)
  22:15

Case: 19-30088    Doc# 13889    Filed: 07/12/23    Entered: 07/12/23 13:06:46    Page 39
of 39