```
1                    UNITED STATES BANKRUPTCY COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                                -oOo-

4    In Re:                        ) Case No. 19-30088
                                   ) Chapter 11
5    PG&E CORPORATION AND PACIFIC  )
     GAS AND ELECTRIC COMPANY      ) San Francisco, California
6                                  ) Wednesday, July 19, 2023
              Reorganized Debtors. ) 11:00 AM
7    _____
                                     STATUS CONFERENCE REGARDING
8                                    MOTION FOR ENTRY OF AN ORDER
                                     FURTHER EXTENDING DEADLINE
9                                    FOR THE REORGANIZED DEBTORS
                                     TO OBJECT TO CLAIMS AND FOR
10                                   RELATED RELIEF FILED BY PG&E
                                     CORPORATION [13745]
11
                       TRANSCRIPT OF PROCEEDINGS
12              BEFORE THE HONORABLE DENNIS MONTALI
                    UNITED STATES BANKRUPTCY JUDGE
13
     APPEARANCES (All present by video or telephone):
14   For the Reorganized         RICHARD W. SLACK, ESQ.
     Debtors:                    Weil, Gotshal & Manges LLP
15                               767 Fifth Avenue
                                 New York, NY 10153
16                               (212)310-8000

17   For RKS Claimants:          JEFFREY RITHOLTZ, ESQ.
                                 Rolnick Kramer Sadighi LLP
18                               1251 Avenue of the Americas
                                 New York, NY 10020
19                               (212)597-2800

20   For CalSTRS, et al.:        IRWIN B. SCHWARTZ, ESQ.
                                 BLA Schwartz, P.C.
21                               515 S. Flower Street, 18th Floor
                                 Los Angeles, CA 90071
22                               (213)785-3683

23   For the State of Oregon:    SUSAN F. DICICCO, ESQ.
                                 Morgan, Lewis & Bockius LLP
24                               1400 Page Mill Road
                                 Palo Alto, CA 94304
25                               (650)843-4000
```

```
 1   For PERA:                 MICHAEL S. ETKIN, ESQ.
                                Lowenstein Sandler LLP
 2                              One Lowenstein Drive
                                Roseland, NJ 07068
 3                              (973)597-2500

 4   For Baupost Group         DEBRA I. GRASSGREEN, ESQ.
     Securities, L.L.C.:       Pachulski Stang Ziehl & Jones LLP
 5                              One Sansome Street
                                Suite 3430
 6                              San Francisco, CA 94104
                                (415)263-7000
 7
     For MML Investment        KIZZY L. JARASHOW, ESQ.
 8   Advisers LLC:             Goodwin Procter LLP
                                620 8th Avenue
 9                              New York, NY 10018
                                (212)813-8800
10

11

12

13

14

15

16

17

18   Court Recorder:           LORENA PARADA/ANKEY THOMAS
                                United States Bankruptcy Court
19                              450 Golden Gate Avenue
                                San Francisco, CA 94102
20

21   Transcriber:              RIVER WOLFE
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (800) 257-0885
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, JULY 19, 2023, 11:00 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session, the Honorable

5    Dennis Montali presiding.

6            Calling the matter of PG&E Corporation.

7            THE COURT:  All right.  Good morning, everyone.

8            Appearances.  I see Mr. Schwartz on the screen and Mr.

9    Slack.  Let's get your appearances.

10           MR. SCHWARTZ:  Good morning, Your Honor.  Irwin

11   Schwartz on behalf of a number of claimants, including the

12   California State Teachers and (indiscernible).

13           MR. SLACK:  And good morning, Your Honor.  Richard

14   Slack for PG&E from Weil, Gotshal & Manges LLP.

15           THE COURT:  Okay.  Ms. DiCicco.

16           MS. DICICCO:  Morning, Your Honor.  Susan DiCicco from

17   Morgan, Lewis.  I'm here for the Oregon claimants.

18           THE COURT:  Mr. Etkin.

19           Ms. Grassgreen, appearances, please.

20           MR. ETKIN:  Apologize, Your Honor.  My normal problems

21   with technology, but good morning.

22           THE COURT:  That's okay.

23           Ms. Grassgreen, your technology working today?

24           MS. GRASSGREEN:  Good morning, Your Honor.  Debra

25   Grassgreen on behalf of Baupost Securities.

1    THE COURT:  Well, Ms. Grassgreen, I'm glad you joined

2  us because I spent the last fifteen minutes studying the

3  redline, and the redline changes by adding your client several

4  times.  That seems to be the only change.

5    MS. GRASSGREEN:  That is true, Your Honor.

6    THE COURT:  Mr. Slack, thank you for the efforts, and

7  other counsel as well.  I realize from the prior hearing there

8  was a big assignment, and it looks like you've made tremendous

9  progress.

10    So Mr. Slack, I guess the question I have for you,

11  opener and then whatever you want to say, is essentially, the

12  revised what we'll call the draft or the procedures, do I

13  understand correctly, then, that by -- it's unclear whether

14  it's August 1st or the 15th; I think I guess it's August 1st,

15  but maybe the 15th -- everybody in the entire universe of

16  security claims should either have received an offer or be the

17  subject of an objection; is that right?

18    MR. SLACK:  That's right, Your Honor.

19    THE COURT:  Okay.

20    MR. SLACK:  That is what -- that is what we had told

21  the Court earlier, and that's what we've confirmed in these

22  procedures.

23    THE COURT:  Well, I was a little confused.  And again,

24  maybe because I was just reading quickly because what I did

25  this last evening, I read your statement and read the

1  attachment -- I mean, the draft.  And then today, when I saw

2  there was a change -- I mean, I was kidding with Ms.

3  Grassgreen.  I thought there'd be more changes in the

4  procedures.  But I went back and double-checked and found that

5  I was reading much of the same thing twice.  And so I might

6  have -- I might have misunderstood.

7         So I don't care whether it's the 1st or the 15th.  It

8  is one or the other.  And there's a separate procedure in place

9  for the objectors.  But the objectors does not include the

10  Baupost.  But apparently it also doesn't include Mr. Schwartz'

11  clients at this point because they aren't capitalized "term

12  objectors".

13         Again, I don't care what the outcome is.  Have I got

14  that right?

15         MR. SLACK:  So we had been treating, Your Honor, for

16  purposes of the negotiation, four parties as objectors based on

17  your orders.

18         THE COURT:  Right.

19         MR. SLACK:  And that was the RKS claimants, the Oregon

20  claimants, Chevron, and did I say the RKS claimants?

21         THE COURT:  Yes.

22         MR. SLACK:  Chevron.  Yeah.  Oregon.  Yeah.  And also

23  Mr. Schwartz's clients were originally part of the objector

24  group.  And Mr. Schwartz is on.  He can speak for himself.  But

25  at some point recently, after really spending a lot of time in

1    the negotiations, Mr. Schwartz and his clients dropped out of
2    the negotiations.  And he can speak to that.
3         But we had understood that those four parties were the
4    objectors, and then obviously we've added Baupost to the
5    proposed procedures as well now.
6         THE COURT:  My only point -- again, I'll let Mr.
7    Schwartz speak and he wants to, but he doesn't have to.  I
8    don't mind if someone says I don't want to be in the defined
9    term "Objectors".
10        My question is simply are they being treated
11   differently, and this gets back to the statement, not the
12   procedures themselves.  The statement seems to say there's a
13   different procedure for the defined term "Objectors".  So that,
14   I guess from the way the draft reads, Mr. Schwartz and his
15   clients are not within that capital-O Objector, right?
16        MR. SLACK:  Well, here's what I would tell Your Honor.
17   It wasn't clear to me whether just because Mr. Schwartz dropped
18   out, he wanted not to be part of that.  We're happy to make his
19   clients part of that if they want to -- if they want to be.  So
20   again, he's here, so he can speak for himself.
21        THE COURT:  Well, Mr. Schwartz, you're old enough, as
22   I am, to know who Groucho Marx was, but Groucho Marx --
23        MR. SCHWARTZ:  I do.
24        THE COURT:  -- used to say, I wouldn't think of
25   joining a club that would have me as a member.  So do you wish

1  to be a member of the capital-O Objectors?

2          MR. SCHWARTZ:  Your Honor, the answer is not at this

3  point, and that's because we believe that the procedures that

4  have been proposed may be in conflict with whatever Your Honor

5  rules on that 7023 motion, which my client just filed a joinder

6  on yesterday.

7          THE COURT:  Well, one of the things that I ask myself,

8  self, do I ask Mr. Slack, what does this procedure do and does

9  it undermine or does it eliminate the motion that's on calendar

10  for August 8th, and I assume it does not.

11          And I guess, Mr. Slack, am I correct in assuming that

12  the universe may now be joined by the class action folks and

13  the people who are participating and supporting this procedure?

14  Is that accurate?

15          MR. SLACK:  So Your Honor, our view on the 7023 is

16  that obviously the 7023 motion should not be granted for a

17  large number of reasons.  But we're going to brief that issue,

18  and it's going to be before Your Honor.  Our position on this

19  motion is that everybody's going to retain all of their

20  arguments to make in the 7023 motion, and Your Honor will deal

21  with them then.

22          I will tell you, Your Honor, that it's our view that

23  if Your Honor were to grant that the third time around here,

24  there'd be a lot of changes that would have to be made to the

25  process that Your Honor has already put in place with the past

1  procedures, as well as we believe these procedures.  But those

2  are all issues which Your Honor should deal with in connection

3  with the 7023 motion and not accelerate those for today.

4       THE COURT:  Yeah, and I don't want to.  And Mr. Etkin,

5  I'll certainly let you speak, but I don't want to turn this

6  into that argument.  I literally am aware of your motion.  I

7  haven't studied it yet.  It's too early.  I'm aware of

8  joinders.

9       My point is I go back to the first question.  The

10 universe of claimants has now been, Mr. Slack has reaffirmed,

11 that every member of that universe has either gotten a

12 settlement offer or if not, will receive or has received an

13 objection to its claim.  That's all I care about for today's

14 purposes.

15      And I kind of sensed that you, Mr. Etkin, and the

16 people that support your side on that motion were not going to

17 suddenly fall in line and withdraw it based upon what happened

18 today, and that's fine.  I understand that.

19      So for now, I guess what I -- and the same is true.

20 Mr. Schwartz doesn't have to tell me whether he's -- well, he

21 just told me, but he didn't have to tell me that he's joined

22 that motion.  The docket will reflect it anyway.  And more

23 importantly, lawyers know how to preserve their position.  And

24 I'm not going to do anything about that motion except

25 anticipate preparing for it.

1    So I guess, Mr. Slack, I'll come back to you.  Is

2  there an action item for me today, other than perhaps to pick a

3  date in December?  I mean, I opened by congratulating you on

4  working hard with so many parties and making progress, but is

5  there anything else that you want me to do today?

6    MR. SLACK:  Well, Your Honor, no.  I would say that

7  what we obviously are proposing is a set of procedures.  We'd

8  like Your Honor to approve them.  We're happy to have you

9  approve them as is, or if Your Honor would prefer us to put it

10  in an order and submit it, we can do that.  But the ask is for

11  you to approve those, and then we'll get on our way

12  implementing them.

13    THE COURT:  Well, I guess, having said I didn't have

14  any questions, I have one question, and maybe this more a

15  curiosity, and that's, I was a little confused of why paragraph

16  8 is in there.  By saying nobody's violating Rule 11, I mean, I

17  rarely give advisory opinions that you get a free pass to Rule

18  11.  I'm assuming that that somebody that decides to join

19  somebody else's motion isn't going to get sanctioned for

20  joining the other person's motion.

21    Is there something more, a hidden message here, in

22  paragraph 8?

23    MS. DICICCO:  Yeah, I can address that, Your Honor.  I

24  think the point was there was some discussion about, as you see

25  in the procedures, that the parties can, if they want to, adopt

1  someone else's pleading.

2          THE COURT:  Right.

3          MS. DICICCO:  Right.  It's not their motion, but their

4  actual allegations.  And so these are allegations, as Mr. Slack

5  pointed out in our last hearing, were allegations in the nature

6  of an actual complaint, right --

7          THE COURT:  Right.

8          MS. DICICCO:  -- where pleading all the facts and the

9  claims and that as a complaint, that would be subject to Rule

10  11.

11          And one of the concerns that we had talked about at

12  the last hearing was the fact that the amount of effort to

13  research and devise and come up with those allegations is not

14  only time consuming and expensive, but would also require both

15  for the client and the lawyers to make sure they're satisfying

16  Rule 11.  And the question was, well, if we want to do that, if

17  it's actually good for more parties to adopt a complaint rather

18  than have ten different complaints or whatever number different

19  complaints, then we want to encourage the adoption concept, but

20  we also, in doing that, don't want to force people, ourselves

21  included, into subjecting ourselves to Rule 11 if we need to do

22  that.

23          So what we wanted was -- and the debtors agreed to

24  this, and we thought that we just wanted to have some comfort

25  that if we do adopt a complaint, that the debtors will not

1  argue to this Court or to any other court that that violates --

2  that that's conduct that violates Rule 11.  And that's part of

3  why that was in there.  Make sure we have that protection so

4  that if people do it --

5       THE COURT:  But what if -- but Ms. DiCicco, what if

6  you go off on the deep end and you do some frivolous complaint

7  and you violate Rule 11, but Ms. Grassgreen then decides to

8  adopt your filing.  Who gets the exemption, does she or both of

9  you?  In other words --

10       MS. DICICCO:  It's the party adopting, Your Honor.

11  That's exactly right.  If I do a new complaint and I put

12  something in there that's violative of the Rule, then as

13  counsel and our clients would be subject to the Rule.  The

14  question is just the mere adoption of someone's pleading

15  shouldn't subject you to that Rule.

16       THE COURT:  Okay.  So let's say you come up with the

17  most egregious thing.  You insult the judge and make fun of his

18  mustache and do something else, and Ms. Grassgreen files a me-

19  too.  I can sanction you, but I can't sanction her under this

20  procedure?

21       MS. DICICCO:  As contemplated in the procedures,

22  that's the way that would work.

23       THE COURT:  Okay.

24       MS. DICICCO:  Because I'm the one -- in your

25  hypothetical, which I would never do, that I'm the one that

1  violated the Rule.

2      THE COURT:  Okay.  Well, Mr. Etkin, as I recall you,

3  you drafted that or helped draft that complaint three and a

4  half years ago, or four years ago or whenever, the securities

5  complaint, and so I guess if one of these lawyers decides to do

6  a me-too, you're on the hook if you violated some Rule 11, but

7  they're not.  But that's fine.  That's the way it is.

8      MR. SCHWARTZ:  Your Honor, may I be heard briefly on

9  this point?

10      THE COURT:  Yes, sir.  Of course.

11      MR. SCHWARTZ:  This came up when I was still part of

12  the group, and I can tell you that the critical language in

13  paragraph 11, as I read it, is the adoption of the allegations

14  as described above, which is cross-referencing the paragraph 4,

15  I believe.  So hopefully that abates some of Your Honor's

16  concern about off-the-reservation types of allegations, and

17  maybe Mr. Etkin's concern, although I'm not sure.

18      But that was the intent.  I know we were concerned as

19  well for our clients that if the procedures Your Honor adopts

20  incentivizes the adoption of the PERA complaint or even the

21  complaint that was filed by RKS as an opt-out complaint, all of

22  which have voluminous factual allegations in them, we didn't

23  want to, as Ms. DiCicco pointed out, be held to have done due

24  diligence as each of those factual allegations to make sure

25  that they were in fact (indiscernible) --

1  THE COURT:  Listen, I think we can -- I think we can

2  make this a nonissue.  I don't want to get bogged down into too

3  hypothetical.  It seems to me that parties who are trying to

4  come up with some joint effort that has an economy in it can

5  agree one among -- the two parties can agree, look, if you file

6  what I file, I won't going to complain.

7  I don't think litigants can by stipulation preclude

8  the Court from bringing about some consequence, and if anybody

9  knows me and has appeared before me, they can count on one hand

10 the Rule 11 violations I've handed out in all my years on the

11 bench, and I don't intend to change going forward.  So violate

12 Rule 11 at your peril, if I think you violated it.  But if Mr.

13 Slack thinks you violate it by copying what he does, you're off

14 the hook because you've got an agreement here.

15 So to me, if we all are under the understanding that

16 litigants can't bind a court from the -- exonerating by

17 literally getting a get-out-of-jail-free card like in a

18 Monopoly game, we don't have to get bogged down on this.  It

19 doesn't seem worth worrying about.  First of all, I doubt --

20 well, I'll leave it at that.

21 So Mr. Etkin or anyone else, If you want to comment on

22 it, please feel free to, but I'm not going to lose any sleep

23 over this language.  And to me, I -- and Ms. DiCicco has

24 certainly explained sort of the legislative history to it, and

25 it sounds like a sensible approach to me.

1              MS. DICICCO:  And Your Honor, if it makes sense, if

2   you if you would prefer, if we're putting this in an order --

3   because we prefer it in an order that's entered by the Court,

4   all the procedures, both so that there's transparency to all

5   other parties and so that all the parties are bound by these

6   terms, till something else happens -- then we could always say

7   in that paragraph 8, "the parties agree".  And when you sign

8   the order, you can say, "except as to paragraph 8" if you care

9   not to be looking as though you are agreeing to that.  But I

10  think it should be in the order, but obviously --

11             THE COURT:  Listen --

12             MS. DICICCO:  -- means we can't preclude the Court

13  from doing anything it wants to do.

14             THE COURT:  -- I don't want this colloquy to become

15  something that -- a tail that wag the dog.  The record speaks

16  for itself.  And if we start feeling -- lawyers feeling obliged

17  to draft in carve-outs to orders that have carve-outs that have

18  exonerations, it just gets more cumbersome.

19             So I believe, just because of the enormity of this

20  case and the length we've all been living with it, I should

21  continue to do things by orders, but my order will be sort of

22  just approved.  I mean, for the same reason -- listen, Mr.

23  Slack will remember, I went with a fine-tooth comb through the

24  ADR procedures, and I signed an order that approved it.  But

25  that's because that's my job is to sign lots of orders that

1  approve things in a case of this nature.

2         So I will approve the procedures that the debtor and

3  at least in the case of Baupost and Oregon and RKS and I guess

4  Chevron, at least, have worked together, and I'm not minimizing

5  whatever contributions the counsel for other parties who aren't

6  capital-O Objectors.  To the extent that we have a finished

7  product or a product that is workable, that works for me.

8         And I realize, whether it's Mr. Schwartz and his group

9  or Mr. Etkin and PERA or anyone else, they've had little time

10  to file objections and would oppose my entry of an order.  I

11  suppose I should ask you to speak up now if for some reason you

12  think I should decline implementation of this procedure.

13         I'm hearing -- yes.  Um-hum.

14         MR. ETKIN:  Your Honor, can I accept that --

15         THE COURT:  Yes, sir.

16         MR. ETKIN:  Can I accept that invitation?

17         THE COURT:  Sure.

18         MR. ETKIN:  Because I have a couple of comments, and

19  I'm very much aware that there's a 7023 motion pending and that

20  this is not the -- this is not the time to get into that on the

21  merits.  But Mr. Slack managed to make a couple of comments

22  there that I'd like to address.  And more importantly, you

23  can't look at all of this in a vacuum.  You at least have to

24  view the pendency of the 7023 motion as having an impact on how

25  these claims resolution procedures and ADR procedures will move

1  forward.

2          I totally disagree with the fact, and we made it clear

3  in our papers, that the 7023 motion is intended to or does

4  upend the claims resolution procedures that the Court has

5  approved.  All it does, quite frankly, is allows those who wish

6  to become part of the collective and have a representative and

7  a representative law firm stand up for them in the context of

8  the claims resolution procedures and negotiations, et cetera.

9  But we'll get to that.

10          The problem that I have with today is that this is a

11  status conference, Your Honor.  This is not a hearing on a

12  motion.  The debtors --

13          THE COURT:  Well, it is sort of a continued hearing on

14  a motion that I raised some issues.  And at the prior hearing

15  or two hearings ago, I said I want to get some clarification on

16  these things.  So I think it's a little more than a status

17  conference, but go ahead.

18          MR. ETKIN:  Well, yeah.  Well, maybe we don't look at

19  that exactly the same, Your Honor.

20          THE COURT:  Okay.  Fair enough.

21          MR. ETKIN:  As much as I -- as much as I hate to

22  disagree with you.

23          But the reorganized debtors attempted to implement

24  some merits procedures, and you denied that aspect of the

25  motion, but you encouraged the parties to continue to discuss

1    it.  We were part of some of those discussions.  We're not part

2    of others.  We have always been part of the defined objectors

3    in prior pleadings before and submissions before the Court.  So

4    we conveniently are eliminated from that definition now.

5         What it points to for me, Your Honor, is that the

6    debtors made a decision early on to exclude PERA from the

7    claims resolutions process, and it's becoming more and more

8    apparent what their motivation was.  They just consistently

9    perceive us as rocking the boat for them and their ability to

10   essentially control the process through the individual claims

11   procedures.  And we'll see where that all ends up with respect

12   to the 7023 motion.  But again --

13        THE COURT:  Right, but am I correct -- Mr. Etkin, am I

14   correct, let's forget Oregon and Baupost.  Let's assume just

15   some little old securities claimant tomorrow accepts a

16   settlement offer from PG&E, then that person is out of the

17   class consideration also too, right?

18        MR. ETKIN:  That's absolutely correct, Your Honor.

19        THE COURT:  (Indiscernible).  All right.  So whether

20   I -- and if some of the big players of Baupost or Oregon or

21   some of Mr. Ritholtz's clients settle, they can settle.  And so

22   it seems to me that -- and this, again, has probably morphed to

23   something to address in the notes in the motion on the motion,

24   but if you want -- if you don't want to participate in this

25   consensual procedure, you don't have to.  And you can sit and

1  hope that there's a class action, and you can join in it,

2  right?

3        MR. ETKIN:  Well, I don't know that that's the case,

4  and I think that's the -- I think you just identified the

5  problem, Your Honor.

6        What the debtor is asking you to do is approve a new

7  set of procedures that were negotiated by a group that do not

8  represent all of the thousands of other securities claimants

9  that are still out there.  They're not aware of it and weren't

10  aware of it at all until late last night, if they're watching

11  the docket.

12        So it just strikes me as odd at best, and perhaps

13  improper, to impose these new procedures, whatever they may be,

14  on the thousands of other securities claimants --

15        THE COURT:  What new procedure --

16        MR. ETKIN:  Well, I --

17        THE COURT:  What new procedure just got imposed last

18  night on somebody who's out there in Peoria, Illinois, who's

19  just sitting there wondering if he's ever going to --

20  somebody's ever going to call him up on his 10,000-dollar

21  securities claim?

22        MR. ETKIN:  Okay.  Good point, Your Honor.  But it

23  imposes deadlines and requirements, not only on those objectors

24  who were part of the discussion and have agreed to it, but it

25  imposes them on everybody.

1      THE COURT:  So what new deadline?  Mr. Etkin, hold on.

2  We've had claims deadlines and objections -- I just worked this

3  morning on the 120th omnibus objection in the nonsecurities

4  cases.  And claimants have a right to file their claim, but the

5  debtor has a right to object to their claim.

6      So it hasn't been some horrible thing that

7  punishment's been imposed on them.  They can always suppose

8  they're -- they can always be heard, be heard when and if PG&E

9  objects to their claim.

10      MR. ETKIN:  Well, you asked me the question, Your

11  Honor, and I'll try to answer it.  I mean, there are deadlines

12  imposed on the debtor, which are fine, with respect to putting

13  out offers or filing claim objections.  That's certainly not

14  the issue.  They can do that themselves or under current

15  procedures.

16      It does say that a securities claimant may amend

17  its -- and that just the objectors -- may amend its previous

18  filed proof of claim by filing an amended proof of claim on or

19  before October 6th.  That's new.  And that's imposed on all

20  securities claimants.

21      THE COURT:  So what's punitive about that?

22      MR. ETKIN:  It's not a -- Your Honor, it's not a

23  question of being punitive.

24      THE COURT:  Okay.

25      MR. ETKIN:  It's a question of imposing a deadline on

1   folks who are not here and with no motion pending to approve

2   this new set of procedures.

3          So folks are not entitled to notice and an opportunity

4   to be heard only with respect to things that may be punitive.

5   They're entitled to notice and an opportunity to be heard on

6   anything that imposes an obligation or a deadline on them in

7   the future that they're unaware of.  So --

8          THE COURT:  Well, again, Mr. Etkin --

9          MR. ETKIN:  -- we see that as a problem.

10         THE COURT:  -- I'm going to make the following

11  observation, and then Mr. Slack can defend his position.

12         But my observation is my hypothetical 10,000-dollar

13  securities claimant in Peoria has filed this claim two years

14  ago, and PG&E could have objected to that claim today or

15  tomorrow or the next day.  And that would have imposed a

16  deadline on that claimant to stand up and respond to the

17  objection by the deadline.  If PG&E voluntarily says to the

18  Court and to the claimants, we think you better make for a more

19  credible claim, a more supportable claim, so we're not going to

20  object to you, we're going to give you a time to amend, and

21  then after that, we'll object or we'll offer, but we're going

22  to wait.

23         And I don't think that that -- I grant you that

24  courtrooms should be open and we shouldn't be making decisions

25  overnight.  But it seems to me when there is a state of affairs

1   or a state of play and the debtor says, "I'm going to make it

2   more available to you; I'm going to extend the times you have

3   to do anything," that is hardly a denial of any kind of due

4   process. It's the reverse. It's instead of "I'm going to

5   object your claim", "I'm going to give you a chance to make for

6   a better claim. And if you don't do it, that's okay too, but

7   I'll still object."

8        So Mr. Stack, is there anything that I've said that

9   isn't consistent with your point of view on this?

10        MR. SLACK: No, Your Honor. You said it a lot better

11   than I was likely to say it. So I completely agree with you.

12        And I'd point out, Your Honor, that this process

13   started as an open process with a hearing. The Court issued an

14   order. Everybody knew there was going to be a discussion about

15   these dates. There's nothing inappropriate about the Court

16   setting the dates in here. And so that's the only piece I

17   would add.

18        THE COURT: So if I do sign an order, what will that

19   order say?

20        MR. SLACK: Your Honor, there's two ways to do this.

21   Maybe there's more than two ways, but two ways that I can think

22   of. One is Your Honor could take the procedures that we've

23   that we've submitted and can make whatever adjustments Your

24   Honor wants, if any, and issue an order that simply approves

25   them. Or Your Honor, we can put it into a more formal order

1  and submit that to you for your approval.  And we're happy to

2  do that either way.  And if you have a third option, we're

3  obviously happy to do that.

4          THE COURT:  But it seems to me that Mr. Etkin can

5  raised a question a moment ago, and I reminded him that there

6  was a continuation of a hearing.  He differed with me, and he's

7  right -- I mean, I guess we're both right.  I made some

8  decisions at a prior hearing, but I also kept open something

9  that was initiated by the colloquy.  I think it was really

10  through RKS' position and then joined, perhaps, by Chevron and

11  Oregon, more specifically.  I don't remember Mr. Schwartz and

12  his clients, where they were at that point.

13          But the point is, and my notes and minutes and the

14  transcripts will reflect, that we were coming up to the next of

15  several times PG&E was extending the bar date.  And that's

16  where PG&E wanted to go beyond where I was willing to go.  And

17  it was long before I, at least, knew that there was a new Rule

18  23 motion coming.  And I said, well, we've got to do some

19  fixing here.

20          And so what followed that created a continuance to a

21  date that got continued today.  And what you all have been

22  working on the last period of time, including last night, is

23  the culmination, I think, of that colloquy and dialog that

24  began several weeks ago.

25          So to me, I'm just entering another order, an order

1  that supplements the procedures consistent with everything

2  we've discussed today.  And that seems like a very simple way

3  to do it.  I think it's just a variation on what you've

4  suggested, Mr. Slack.

5       And I guess the last question I would ask you is how

6  is my friend in Peoria with a 10,000-dollar claim going to know

7  about the new procedure?

8       MR. SLACK:  Yeah.  Your Honor, I think that, again,

9  there's no date in here which actually is any different than if

10  Your Honor were to extend -- have an order which extends the

11  objection deadline.  It really is an objection deadline for us.

12       And in terms of the voluntary nature of the amendment,

13  I think Your Honor hit that on the nose.  So it'll be lodged

14  with the -- it'll be lodged with the Court.  Anybody can get

15  it.

16       And so that's where I think we are with respect to the

17  deadlines.  I think it's a deadline that we, the debtors,

18  really are the ones that have to deal with.  And we'll deal

19  with them.

20       MS. DICICCO:  Your Honor, if I could --

21       THE COURT:  But you're not -- you're not suggesting

22  serving it on all the --

23       MR. SLACK:  No, we're not, Your Honor.  I mean, we're

24  not --

25       THE COURT:  Okay.

1        MR. SLACK:  -- suggesting that.  We're just going

2   to --

3        THE COURT:  Okay.

4        MR. SLACK:  We're just going to have an order on the

5   on the docket.

6        THE COURT:  Okay.  Ms. DiCicco, you wanted to state

7   something?  Yeah.

8        MS. DICICCO:  Yes.  Thank you, Your Honor.  I guess I

9   just want to note, in negotiating this, we -- at least myself.

10  I can't speak for all the objectors.  But we sort of assumed

11  that there would be a mechanism by which the other claimants

12  would be apprised of the date.  There's now a new deadline for

13  them.  There is a deadline that does not currently exist in

14  October for them to amend, and if they don't amend by that

15  date, then some things can happen.

16       Now, the debtors are free under these procedures to

17  agree with any of those other parties to extend that date.  So

18  there's flexibility there if somebody comes back and says,

19  well, I didn't know I had to amend by this date.  But we

20  presumed that there would be a notice mechanism.  I think if

21  the debtors are -- I would assume that the notice to all of the

22  outstanding unresolved claimants.

23       If there's not going to be that, my suggestion would

24  be, he's about to make offers to a couple thousand people

25  before this August 15th deadline.  At least that notice to

1  those parties should apprize those people that they would

2  otherwise be expected, pursuant to your order, to amend their

3  claim if they want to do so by the new date.  Because then

4  they're already communicating directly with these parties at

5  that point in time, so that it would at least give those

6  parties -- it's a subset but -- it's imperfect but -- I think

7  broader notice would be more appropriate, but at least the

8  people who are about to get offers for the first time are going

9  to get an offer in August, and then two months later, no matter

10  where they are on the offer process, they're going to have

11  to -- they need to amend if they want to.

12          THE COURT:  Well, Mr. Slack, by my recollection, the

13  entire universe is in the neighborhood of 7,000.  So it's got

14  to be smaller than that.  And we're not talking about 80,000

15  fire victims.  We're talking about 7,000 securities claimants.

16  It wouldn't be the most outrageous thing to make you give

17  notice to all of the existing claimants, would it?

18          MR. SLACK:  Your Honor, if you would like us to send

19  the order that you enter to all of the unresolved claimants, I

20  think we could do that.  I mean, there may be some claimants

21  that we can't reach, but as a general matter, I would think

22  that we could do that.

23          But what I would suggest, Your Honor, because I think

24  we shouldn't be sending out any kind of notice, we should just

25  be sending the order and serving the order on claimants.

1      THE COURT: Well, but is Ms. DiCicco right and am I

2 right? We start with a total universe in the 7,000 range, and

3 if you're going to be communicating, whether it by email or a

4 letter or mail or somewhere, with a couple thousand of them

5 anyway, then including the information of this procedure is no

6 big deal. So what we're talking about is a relatively small

7 increased population of people that maybe get told about this

8 procedure.

9      MR. SLACK: So I think, Your Honor, what I would

10 prefer, because as you can imagine, we've tried to streamline

11 the notices that go out. Those have already been drafted.

12      I think if you would like us to serve the order, what

13 I would suggest is you give us the flexibility to either add

14 it, if that's the easiest and least expensive way for PG&E to

15 do that, or to send it separately. Because as I said, I'm not

16 sure it's actually going to be either cheaper or easier for us

17 to alter the documents that we've got prepared to send out for

18 offers to now do this.

19      But we're going to -- we'll look into it. Whatever's

20 the cheapest for the debtor and the most efficient, we can do.

21      THE COURT: Well, Mr. Etkin doesn't agree with me on a

22 couple of things, but he makes the point that there are some

23 folks out there that don't know what's about to happen, and I

24 can debate with him whether that's a denial of due process or

25 something less outrageous or egregious. But it's almost -- and

1  again, as much as there are people who like to make PG&E spend

2  money on everything, I don't like to waste anyone's money.  But

3  it doesn't sound like a terribly burdensome expense for a short

4  piece of information to go to a finite number of folks that are

5  implicated in -- or who care.  So and Ms. DiCicco makes a good

6  point.

7          Look, Mr. Slack, I will sign an order that implements

8  this procedure, and I will take your recommendation to come up

9  with a cost effective and efficient way to make sure that every

10  claimant, every securities claimant, at least, knows of this

11  procedural change.  Again, I don't think it's a downer.  I

12  think it's an upper.  But it satisfies my concerns about

13  letting people know what's going on.

14          And so I will impose that burden on your client, but

15  I'll give them the flexibility to do it in a cost-effective

16  way, and I won't worry about it.  And look, you know it as well

17  as I, my hypothetical 10,000-dollar claimant from Peoria has

18  got to be given some flexibility if that person needs more time

19  or wishes to amend a claim, like any other -- any other party

20  would do, any pro se party and so on.

21          So I'm going to live with that.  And Mr. Etkin, I

22  understand your point, and you've persuaded me that at

23  something needs to be done.  So and I understand that you and

24  the well-counseled and well-involved folks who don't like it

25  and who believe that the 23 procedure is preferable, you'll

1  have your opportunity to make that case, and I will keep an

2  open mind and read it.  And one of the things I'll focus on is

3  whether they can coexist.  I assume that this securities

4  procedure can coexist with such a procedure, but that's for

5  another day, then, when the hearing comes up.

6          MR. SCHWARTZ:  Your Honor, can I be heard on one

7  thing?

8          THE COURT:  Yes, sir.

9          MR. ETKIN:  So can I just -- can I just finish up for

10  one second --

11          THE COURT:  Yes, sir.  Go ahead.

12          MR. ETKIN:  -- so the judge can get rid of me?

13          THE COURT:  No, I'm not going to get rid of you.  I am

14  going to take a -- I may have to go dark if --

15          MR. ETKIN:  For now.

16          THE COURT:  -- here for about minute to make a phone

17  call, but go ahead.  And I'm not getting rid of you.

18          MR. ETKIN:  For now, Your Honor.

19          One other thing I just want to state for the record,

20  and it involves the whole concept of the adoption of the PERA

21  complaint, which we complained about in some detail in our

22  original limited objection to the merits procedures that the

23  debtor contemplated in its initial motion.  I mean, things have

24  changed a little bit in this document, but we still have the

25  same concerns over that that we expressed in our prior

1 pleading.  I won't repeat them again here.

2 All I can tell you is that it only goes part of the

3 way.  And if somebody wants to really stand behind the PERA

4 complaint, they should be able to stand behind it as a member

5 of a class before this Court.  And then that way, they can

6 adopt the complaint and be part of the collective and it can

7 move forward and coexist with the existing procedures.

8 But enough said, Your Honor.  I'm sure we'll deal with

9 that at the hearing on the 7023 motion.

10 THE COURT:  Okay.  Well, for the record, you've made

11 the record.  And for the record, I'm not throwing you out of

12 the courtroom.  It's always nice to see you, Mr. Etkin.

13 Mr. Schwartz.

14 MR. SCHWARTZ:  Yes, Your Honor, and I hope this is

15 just taking up Mr. Slack on what he said at the beginning.  But

16 our client's view it that it was inconsistent to join these

17 procedures and also support the 723 motion.

18 If Your Honor denies the 723 motion, we do believe

19 that the procedures outlined in the proposed order are superior

20 to no procedures at all.  So we would like the option to be

21 able to avail ourselves of those procedures after, if Your

22 Honor denies the 723 motion.

23 THE COURT:  Well, again, I'm not going to.  I

24 understand your point, and we'll let that play it out.

25 Mr. Slack, the --

1        So Mr. Schwartz, I understand your point.  And

2   frankly, I'm not surprised by it.  I didn't get the impression

3   this is three strikes and you're out, or one strike, but this

4   would be my third -- Mr. and my, for a third time, with the

5   Rule 23 and who knows what will happen, except we'll deal with

6   it.

7        Mr. Slack, I'm ready --

8        MR. ETKIN:  I prefer the expression, "Third time is

9   the charm", Your Honor.

10       THE COURT:  There you go.

11       Mr. Slack, one more question for you, though.  Do you

12   want me to give you a date in late December, or so I -- it's

13   got to be one of those dates that's kind of a holding date for

14   a status conference because it's not going to be -- I'm not

15   going to be dealing with 500 responses to client objections at

16   that hearing.  So what what's your pleasure?

17       MR. SLACK:  I mean, you can look at your calendar.  I

18   don't think we have to do that on this conference.  But Your

19   Honor, if you could look at your calendar and set aside a date

20   for us under the procedures, I think that would be appropriate.

21       THE COURT:  Well, your local counsel

22   Keller Benvenutti, and Mr. Rupp particularly and maybe Mr.

23   Silveira, they are constantly in touch with my courtroom deputy

24   for what we have as the regular PG&E calendars, and we don't

25   have any dates set aside for the last portion of the year.  But

1  that's something they routinely communicate with one another

2  with.

3        And so it would seem to me that what I will have Ms.

4  Parada do when working with those counsel is to pick dates

5  going forward into the next year.  Go for November, December,

6  January, February.  And as we've done since this case was

7  filed, we tend to set aside at least two days each calendar

8  month.  And we'll pick one that doesn't come on Christmas Eve

9  but comes somewhere a few days prior and there'll be a date in

10 January.  And you and your colleagues can work accordingly, and

11 we'll take it from there.  Doesn't that work?

12       MR. SLACK:  That that makes sense, Your Honor.

13       THE COURT:  Okay.

14       MR. SLACK:  And one thing, Your Honor, and I'd said

15 this before, and I think it's what you intended.  But when you

16 talked about notice to securities claimants, I just want to be

17 clear that we're going to notice, obviously, the unresolved

18 securities claimants because everybody (indiscernible) --

19       THE COURT:  Well, of course.

20       MR. SLACK:  Yeah.  Yeah.

21       THE COURT:  Well, of course.  But I mean, Mr. Etkin

22 conceded that to.  If my friend from Peoria accepts your

23 generous offer tomorrow, he is gone.  He's not going to -- he's

24 not going to be in the securities class.  He's not going to be

25 mediating.  He's gone.  And same with Mr. Etkin, if he accepts

1 | your offer, he is gone.  That's what compromise is all about.

2 | All right.  Does anybody want to be heard on any

3 | subject, because otherwise I'm going to thank you for what

4 | we've done.  I appreciate the contrary view of Mr. Etkin and

5 | the contributions by everyone.

6 | Anyone want to be heard on anything?

7 | Okay.  Thank you very much.

8 | For the record, then, I'm approving the procedures.  I

9 | don't have changes.  And I'll wait for a simple form of order

10 | that Mr. Slack thinks is consistent with what we said --

11 | MR. SLACK:  Okay.

12 | THE COURT:  -- and we'll go to the next

13 | (indiscernible).

14 | THE CLERK:  Excuse me, Your Honor.

15 | THE COURT:  Yes.

16 | THE CLERK:  Your Honor, we have a raised hand in the

17 | attendees list for Kizzy Jarashow.  Would you like me to bring

18 | her in?

19 | THE COURT:  All right.  I'll bring that person in, but

20 | I'm not opening the hearing to extent of debate on things.  But

21 | yes, bring Ms. Jarashow in.

22 | And I will say, if this takes more than a couple of

23 | minutes, I'm probably going to have to go dark for a moment to

24 | take care of a personal matter, but it'll only be a minute or

25 | so.

1        Okay.  Ms. Jarashow, could you please state your name

2   and your affiliation, who you represent.

3        Ms. Kizzy Jarashow, are you going to say something?

4   Oh, hello?

5        MS. JARASHOW:  Apologies, Your Honor.  Kizzy Jarashow

6   from Goodwin Procter on behalf of MML Investment Advisors.

7        THE COURT:  Okay.

8        MS. JARASHOW:  Apologies, Your Honor.  I had my hand

9   raised earlier but just got called now.  Just so you know, Your

10  Honor, we are not from Peoria.  My clients are not from Peoria.

11  But we're an informal objector originally to the motion by the

12  debtors to amend the securities procedures.

13       We had reached out on numerous occasions after the

14  last hearing to debtors' counsel and had been told that they

15  would include us in the drafts of the procedures prior to

16  filing them.  Unfortunately, Your Honor, we did not get drafts

17  of those procedures or have any input in those procedures

18  before they were filed.  And we would just ask, Your Honor,

19  that our clients be included as objectors, subject to the order

20  that would be entered today.

21       THE COURT:  Any problem with that, Mr. Slack?

22       MR. SLACK:  Yeah, we don't agree with that, Your

23  Honor.  We're happy to talk to them, but we don't agree with

24  that, Your Honor.

25       THE COURT:  Well --

1        MS. JARASHOW:  They have refuse to engage with us to

2   date, Your Honor.  And they have not yet objected to any of our

3   claims.

4        THE COURT:  Well, but leaving aside whether you get a

5   capital O on the word "objector", I mean, your rights are not

6   in jeopardy.  I mean, you have a -- of course, you had a right

7   to be heard on this hearing.  And if we didn't respond to your

8   hand raises quickly, I'm glad we caught you before we signed

9   off.

10       But what difference does it make to you and your

11   client if we don't treat it as a formal objector?

12       MS. JARASHOW:  Because the capital-O Objectors under

13   the new procedures have beneficial treatment over the ordinary

14   course securities claimants, Your Honor.  To the extent that we

15   are not deemed capital-O Objectors, we don't get the benefit of

16   the lack of tolling and many of the other procedures that were

17   set forth in the status conference statement that was filed

18   last night.

19       And Your Honor, we just read that statement this

20   morning.  We're just getting up to speed.  But we would ask

21   that we would not be prejudiced by not being included,

22   especially because we have been constantly in contact with the

23   debtors throughout this process.

24       THE COURT:  Okay.  I need to take a thirty-second

25   break.  So I'm going to -- don't go away, Ms. Jarashow.  I'm

1  going to go off the camera and off the mic just to type --

2          MS. JARASHOW:  Thank you, Your Honor.

3          THE COURT:  -- this message to somebody.

4          MS. JARASHOW:  Of course.

5      (Whereupon a recess was taken)

6          THE COURT:  I'm back.  Okay.

7          Mr. Jarashow, tell me (indiscernible) and what is it

8  you think I should do?

9          MS. JARASHOW:  Because we were part of the original

10 objectors, albeit an informal objector behind the scenes and

11 because we have repeatedly asked to be included in the

12 negotiations for these procedures and the resolution of the

13 procedures, we would ask to be included as one of the capital-O

14 Objectors in the order that is entered.

15         THE COURT:  And Mr. Slack, you oppose that?

16         MR. SLACK:  We do.  We oppose that, Your Honor.  I

17 think that calling themselves an objector or an informal

18 objector isn't accurate.  I mean, this counterparty wanted us

19 to give them an offer by a date certain.  We were prepared to

20 do that.  That was the ask, and that's what we did.

21         So I think that now coming at the last minute and

22 wanting more than that is not appropriate.  They were never

23 an -- they were never an objector.  They could have spoken up

24 at the last hearing.  So Your Honor, we don't agree with now

25 sort of adding them at the last minute into these procedures as

1   an objector.

2           MS. JARASHOW:  Your Honor --

3           THE COURT:  Okay.

4           MS. JARASHOW:  -- I would ask the debtors how it would

5   prejudice them to include us as a capital-O Objector, given our

6   desires here.

7           THE COURT:  Well, Ms. Jarashow, I'm going to give

8   you -- I'm going to tell you you have one week to file a letter

9   brief that explains why you should be treated the way you asked

10  to be treated.  And Mr. Slack has a week to respond.  And I'll

11  just make a decision on the strength of that.

12          I mean, I don't think, again, this is -- you explain

13  why -- tell the doctor where it hurts, and I'll tell you what

14  your medicine is.  And I'll let Mr. Slack respond, unless you

15  guys work something out.  Maybe there's a quick fix that that

16  make you both happy.

17          But I can't make a decision on that, and I'm certainly

18  not going to get hung up on the capital letter "O".  But I want

19  you to be heard if you (indiscernible), and you will be heard

20  on the subject.  So that's --

21          MS. JARASHOW:  Understood, Your Honor, and appreciate

22  the time.  I would just note, to what Mr. Etkin said earlier,

23  that we reserve all rights.  We don't believe that the debtors

24  are treating like-situated claimants similarly.  They have been

25  excluding us at each and every turn, and we're just going to

1 reserve all rights today with respect to --

2         THE COURT: No, I understand.

3         MS. JARASHOW: -- everything going forward.

4         THE COURT: I want you to reserve your rights. Just,

5 but again, I've given you an opportunity to say so, and I will

6 make a decision based upon the letter correspondence. Okay.

7         MS. JARASHOW: Appreciate it, Your Honor.

8         THE COURT: Okay. Thanks very much.

9         All right. Okay. Mr. Slack, then my intention will

10 be to go ahead and issue the order that you submit. If Ms.

11 Jarashow persuades me that I should make a change consistent

12 with her request and overruling any of yours, I'll do it by a

13 supplemental order. I'm not going to slow down the process

14 here, but so I will just keep open the ability to add her onto

15 that group or client if that's the right thing to do.

16         So again, I will expect you will promptly get me a

17 simple form of order that approves the procedures consistent

18 with the other procedures I produce. And you've already said

19 what you're going to do as far as getting the word out to the

20 claimants.

21         Okay. Thank you all for your time, everyone. I'm

22 going to conclude the hearing and appreciate your participation

23 and see you at least on August 8th, if not sooner.

24     (Whereupon these proceedings were concluded at 11:55 AM)

25

1                        I N D E X

2  RULINGS:                                    PAGE LINE

3  Reorganized debtors' motion extending        32    8

4  deadline to object to claims is granted

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  C E R T I F I C A T I O N

2

3  I, River Wolfe, certify that the foregoing transcript is a true

4  and accurate record of the proceedings.

5

6

7

8  _____

9  /s/ RIVER WOLFE, CDLT-265

10

11  eScribers

12  7227 N. 16th Street, Suite #207

13  Phoenix, AZ 85020

14

15  Date:  July 20, 2023

16

17

18

19

20

21

22

23

24

25

**A**

abates (1)
  12:15
ability (2)
  17:9;37:14
able (2)
  29:4,21
above (1)
  12:14
absolutely (1)
  17:18
accelerate (1)
  8:3
accept (2)
  15:14,16
accepts (3)
  17:15;31:22,25
accordingly (1)
  31:10
accurate (2)
  7:14;35:18
action (3)
  7:12;9:2;18:1
actual (2)
  10:4,6
actually (3)
  10:17;23:9;26:16
add (3)
  21:17;26:13;37:14
added (1)
  6:4
adding (2)
  4:3;35:25
address (3)
  9:23;15:22;17:23
adjustments (1)
  21:23
adopt (5)
  9:25;10:17,25;11:8;
  29:6
adopting (1)
  11:10
adoption (5)
  10:19;11:14;12:13,
  20;28:20
adopts (1)
  12:19
ADR (2)
  14:24;15:25
Advisors (1)
  33:6
advisory (1)
  9:17
affairs (1)
  20:25
affiliation (1)
  33:2
again (15)
  4:23;5:13;6:6,20;
  17:12,22;20:8;23:8;
  27:1,11;29:1,23;

  36:12;37:5,16
ago (6)
  12:4,4;16:15;20:14;
  22:5,24
agree (9)
  13:5,5;14:7;21:11;
  24:17;26:21;33:22,
  23;35:24
agreed (2)
  10:23;18:24
agreeing (1)
  14:9
agreement (1)
  13:14
ahead (4)
  16:17;28:11,17;
  37:10
albeit (1)
  35:10
allegations (8)
  10:4,4,5,13;12:13,
  16,22,24
allows (1)
  16:5
almost (1)
  26:25
alter (1)
  26:17
although (1)
  12:17
always (5)
  14:6;17:2;19:7,8;
  29:12
amend (10)
  19:16,17;20:20;
  24:14,14,19;25:2,11;
  27:19;33:12
amended (1)
  19:18
amendment (1)
  23:12
among (1)
  13:5
amount (1)
  10:12
anticipate (1)
  8:25
Apologies (2)
  33:5,8
Apologize (1)
  3:20
apparent (1)
  17:8
apparently (1)
  5:10
Appearances (3)
  3:8,9,19
appeared (1)
  13:9
appreciate (4)
  32:4;36:21;37:7,22
apprised (1)
  24:12

apprize (1)
  25:1
approach (1)
  13:25
appropriate (3)
  25:7;30:20;35:22
approval (1)
  22:1
approve (7)
  9:8,9,11;15:1,2;
  18:6;20:1
approved (3)
  14:22,24;16:5
approves (1)
  21:24;37:17
approving (1)
  32:8
argue (1)
  11:1
argument (1)
  8:6
arguments (1)
  7:20
around (1)
  7:23
aside (4)
  30:19,25;31:7;34:4
aspect (1)
  16:24
assignment (1)
  4:8
assume (4)
  7:10;17:14;24:21;
  28:3
assumed (1)
  24:10
assuming (2)
  7:11;9:18
attachment (1)
  5:1
attempted (1)
  16:23
attendees (1)
  32:17
August (6)
  4:14,14;7:10;24:25;
  25:9;37:23
avail (1)
  29:21
available (1)
  21:2
aware (5)
  8:6,7;15:19;18:9,10
away (1)
  34:25

**B**

back (6)
  5:4;6:11;8:9;9:1;
  24:18;35:6
bar (1)
  22:15

apprize (1)
based (3)
  5:16;8:17;37:6
Baupost (6)
  3:25;5:10;6:4;15:3;
  17:14,20
become (2)
  14:14;16:6
becoming (1)
  17:7
began (1)
  22:24
beginning (1)
  29:15
behalf (3)
  3:11,25;33:6
behind (3)
  29:3,4;35:10
bench (1)
  13:11
beneficial (1)
  34:13
benefit (1)
  34:15
Benvenutti (1)
  30:22
best (1)
  18:12
better (3)
  20:18;21:6,10
beyond (1)
  22:16
big (3)
  4:8;17:20;26:6
bind (1)
  13:16
bit (1)
  28:24
boat (1)
  17:9
bogged (2)
  13:2,18
both (5)
  10:14;11:8;14:4;
  22:7;36:16
bound (1)
  14:5
break (1)
  34:25
brief (2)
  7:17;36:9
briefly (1)
  12:8
bring (3)
  32:17,19,21
bringing (1)
  13:8
broader (1)
  25:7
burden (1)
  27:14
burdensome (1)
  27:3

**C**

calendar (4)
  7:9;30:17,19;31:7
calendars (1)
  30:24
CALIFORNIA (2)
  3:1,12
Call (4)
  3:3;4:12;18:20;
  28:17
called (1)
  33:9
Calling (2)
  3:6;35:17
came (1)
  12:11
camera (1)
  35:1
can (44)
  5:24;6:2,20;9:10,
  23,25;11:19;12:12;
  13:1,1,4,5,7,9;14:8;
  15:14,16;17:21,25;
  18:1;19:7,8,14;20:11;
  21:21,23,25;22:4;
  23:14;24:15;26:10,
  20,24;28:3,4,6,9,9,12;
  29:2,5,6;30:17;31:10
capital (2)
  34:5;36:18
capitalized (1)
  5:11
capital-O (7)
  6:15;7:1;15:6;
  34:12,15;35:13;36:5
card (1)
  13:17
care (6)
  5:7,13;8:13;14:8;
  27:5;32:24
carve-outs (2)
  14:17,17
case (6)
  14:20;15:1,3;18:3;
  28:1;31:6
cases (1)
  19:4
caught (1)
  34:8
certain (1)
  35:19
certainly (4)
  8:5;13:24;19:13;
  36:17
cetera (1)
  16:8
chance (1)
  21:5
change (5)
  4:4;5:2;13:11;
  27:11;37:11

Case: 19-30088   Doc# 13914   Filed: 07/20/23   Entered: 07/20/23 20:07:19   Page 40 of 48

changed (1)
    28:24
changes (4)
    4:3;5:3;7:24;32:9
charm (1)
    30:9
cheaper (1)
    26:16
cheapest (1)
    26:20
Chevron (4)
    5:20,22;15:4;22:10
Christmas (1)
    31:8
claim (17)
    8:13;18:21;19:4,5,
    9,13,18,18;20:13,14,
    19,19;21:5,6;23:6;
    25:3;27:19
claimant (7)
    17:15;19:16;20:13,
    16;27:10,10,17
claimants (23)
    3:11,17;5:19,20,20;
    8:10;18:8,14;19:4,20;
    20:18;24:11,22;
    25:15,17,19,20,25;
    31:16,18;34:14;
    36:24;37:20
claims (9)
    4:16;10:9;15:25;
    16:4,8;17:7,10;19:2;
    34:3
clarification (1)
    16:15
class (5)
    7:12;17:17;18:1;
    29:5;31:24
clear (3)
    6:17;16:2;31:17
CLERK (3)
    3:4;32:14,16
client (7)
    4:3;7:5;10:15;
    27:14;30:15;34:11;
    37:15
clients (11)
    5:11,23;6:1,15,19;
    11:13;12:19;17:21;
    22:12;33:10,19
client's (1)
    29:16
club (1)
    6:25
coexist (3)
    28:3,4;29:7
colleagues (1)
    31:10
collective (2)
    16:6;29:6
colloquy (3)
    14:14;22:9,23
comb (1)

14:23
comfort (1)
    10:24
coming (3)
    22:14,18;35:21
comment (1)
    13:21
comments (2)
    15:18,21
communicate (1)
    31:1
communicating (2)
    25:4;26:3
complain (1)
    13:6
complained (1)
    28:21
complaint (14)
    10:6,9,17,25;11:6,
    11;12:3,5,20,21,21;
    28:21;29:4,6
complaints (2)
    10:18,19
completely (1)
    21:11
compromise (1)
    32:1
conceded (1)
    31:22
concept (2)
    10:19;28:20
concern (2)
    12:16,17
concerned (1)
    12:18
concerns (3)
    10:11;27:12;28:25
conclude (1)
    37:22
concluded (1)
    37:24
conduct (1)
    11:2
conference (5)
    16:11,17;30:14,18;
    34:17
confirmed (1)
    4:21
conflict (1)
    7:4
confused (2)
    4:23;9:15
congratulating (1)
    9:3
connection (1)
    8:2
consensual (1)
    17:25
consequence (1)
    13:8
consideration (1)
    17:17
consistent (5)

21:9;23:1;32:10;
    37:11,17
consistently (1)
    17:8
constantly (2)
    30:23;34:22
consuming (1)
    10:14
contact (1)
    34:22
contemplated (2)
    11:21;28:23
context (1)
    16:7
continuance (1)
    22:20
continuation (1)
    22:6
continue (2)
    14:21;16:25
continued (2)
    16:13;22:21
contrary (1)
    32:4
contributions (2)
    15:5;32:5
control (1)
    17:10
conveniently (1)
    17:4
copying (1)
    13:13
Corporation (1)
    3:6
correctly (1)
    4:13
correspondence (1)
    37:6
cost (1)
    27:9
cost-effective (1)
    27:15
counsel (6)
    4:7;11:13;15:5;
    30:21;31:4;33:14
count (1)
    13:9
counterparty (1)
    35:18
couple (6)
    15:18,21;24:24;
    26:4,22;32:22
course (6)
    12:10;31:19,21;
    34:6,14;35:4
Court (91)
    3:3,4,7,15,18,22;
    4:1,6,19,21,23;5:18,
    21;6:6,21,24;7:7;8:4;
    9:13;10:2,7;11:1,1,5,
    16,23;12:2,10;13:1,8,
    16;14:3,11,12,14;
    15:15,17;16:4,13,20;

17:3,13,19;18:15,17;
    19:1,21,24;20:8,10,
    18;21:13,15,18;22:4;
    23:14,21,25;24:3,6;
    25:12;26:1,21;28:8,
    11,13,16;29:5,10,23;
    30:10,21;31:13,19,21;
    32:12,15,19;33:7,21,
    25;34:4,24;35:3,6,15;
    36:3,7;37:2,4,8
courtroom (2)
    29:12;30:23
courtrooms (1)
    20:24
created (1)
    22:20
credible (1)
    20:19
critical (1)
    12:12
cross-referencing (1)
    12:14
culmination (1)
    22:23
cumbersome (1)
    14:18
curiosity (1)
    9:15
current (1)
    19:14
currently (1)
    24:13

D

dark (2)
    28:14;32:23
date (15)
    9:3;22:15,21;23:9;
    24:12,15,17,19;25:3;
    30:12,13,19;31:9;
    34:2;35:19
dates (5)
    21:15,16;30:13,25;
    31:4
day (2)
    20:15;28:5
days (2)
    31:7,9
deadline (11)
    19:1,25;20:6,16,17;
    23:11,11,17;24:12,13,
    25
deadlines (4)
    18:23;19:2,11;
    23:17
deal (7)
    7:20;8:2;23:18,18;
    26:6;29:8;30:5
dealing (1)
    30:15
debate (2)
    26:24;32:20

Debra (1)
    3:24
debtor (7)
    15:2;18:6;19:5,12;
    21:1;26:20;28:23
debtors (12)
    10:23,25;16:12,23;
    17:6;23:17;24:16,21;
    33:12;34:23;36:4,23
debtors' (1)
    33:14
December (3)
    9:3;30:12;31:5
decides (3)
    9:18;11:7;12:5
decision (4)
    17:6;36:11,17;37:6
decisions (2)
    20:24;22:8
decline (1)
    15:12
deemed (1)
    34:15
deep (1)
    11:6
defend (1)
    20:11
defined (3)
    6:8,13;17:2
definition (1)
    17:4
denial (2)
    21:3;26:24
denied (1)
    16:24
denies (2)
    29:18,22
Dennis (1)
    3:5
deputy (1)
    30:23
described (1)
    12:14
desires (1)
    36:6
detail (1)
    28:21
devise (1)
    10:13
dialog (1)
    22:23
DiCicco (19)
    3:15,16,16;9:23;
    10:3,8;11:5,10,21,24;
    12:23;13:23;14:1,12;
    23:20;24:6,8;26:1;
    27:5
differed (1)
    22:6
difference (1)
    34:10
different (4)
    6:13;10:18,18;23:9

Case: 19-30088    Doc# 13914    Filed: 07/20/23    Entered: 07/20/23 20:07:19    Page 41
of 48

**differently (1)**
6:11
**diligence (1)**
12:24
**directly (1)**
25:4
**disagree (2)**
16:2,22
**discuss (1)**
16:25
**discussed (1)**
23:2
**discussion (3)**
9:24;18:24;21:14
**discussions (1)**
17:1
**docket (3)**
8:22;18:11;24:5
**doctor (1)**
36:13
**document (1)**
28:24
**documents (1)**
26:17
**dog (1)**
14:15
**done (4)**
12:23;27:23;31:6;
32:4
**double-checked (1)**
5:4
**doubt (1)**
13:19
**down (3)**
13:2,18;37:13
**downer (1)**
27:11
**draft (5)**
4:12;5:1;6:14;12:3;
14:17
**drafted (2)**
12:3;26:11
**drafts (2)**
33:15,16
**dropped (2)**
6:1,17
**due (3)**
12:23;21:3;26:24

**E**

**earlier (3)**
4:21;33:9;36:22
**early (2)**
8:7;17:6
**easier (1)**
26:16
**easiest (1)**
26:14
**economy (1)**
13:4
**effective (1)**
27:9

**efficient (2)**
26:20;27:9
**effort (2)**
10:12;13:4
**efforts (1)**
4:6
**egregious (2)**
11:17;26:25
**either (5)**
4:16;8:11;22:2;
26:13,16
**eliminate (1)**
7:9
**eliminated (1)**
17:4
**else (5)**
9:5;11:18;13:21;
14:6;15:9
**else's (2)**
9:19;10:1
**email (1)**
26:3
**encourage (1)**
10:19
**encouraged (1)**
16:25
**end (1)**
11:6
**ends (1)**
17:11
**engage (1)**
34:1
**enormity (1)**
14:19
**enough (3)**
6:21;16:20;29:8
**enter (1)**
25:19
**entered (3)**
14:3;33:20;35:14
**entering (1)**
22:25
**entire (2)**
4:15;25:13
**entitled (2)**
20:3,5
**entry (1)**
15:10
**especially (1)**
34:22
**essentially (2)**
4:11;17:10
**et (1)**
16:8
**Etkin (36)**
3:18,20;8:4,15;
12:2;13:21;15:9,14,
16,18;16:18,21;17:13,
18;18:3,16,22;19:1,
10,22,25;20:8,9;22:4;
26:21;27:21;28:9,12,
15,18;29:12;30:8;
31:21,25;32:4;36:22

**Etkin's (1)**
12:17
**Eve (1)**
31:8
**even (1)**
12:20
**evening (1)**
4:25
**everybody (4)**
4:15;18:25;21:14;
31:18
**everybody's (1)**
7:19
**everyone (3)**
3:7;32:5;37:21
**exactly (2)**
11:11;16:19
**except (3)**
8:24;14:8;30:5
**exclude (1)**
17:6
**excluding (1)**
36:25
**Excuse (1)**
32:14
**exemption (1)**
11:8
**exist (1)**
24:13
**existing (2)**
25:17;29:7
**exonerating (1)**
13:16
**exonerations (1)**
14:18
**expect (1)**
37:16
**expected (1)**
25:2
**expense (1)**
27:3
**expensive (2)**
10:14;26:14
**explain (1)**
36:12
**explained (1)**
13:24
**explains (1)**
36:9
**expressed (1)**
28:25
**expression (1)**
30:8
**extend (3)**
21:2;23:10;24:17
**extending (1)**
22:15
**extends (1)**
23:10
**extent (3)**
15:6;32:20;34:14

**F**

**fact (3)**
10:12;12:25;16:2
**facts (1)**
10:8
**factual (2)**
12:22,24
**Fair (1)**
16:20
**fall (1)**
8:17
**far (1)**
37:19
**February (1)**
31:6
**feel (1)**
13:22
**feeling (2)**
14:16,16
**few (1)**
31:9
**fifteen (1)**
4:2
**file (5)**
13:5,6;15:10;19:4;
36:8
**filed (7)**
7:5;12:21;19:18;
20:13;31:7;33:18;
34:17
**files (1)**
11:18
**filing (4)**
11:8;19:13,18;
33:16
**fine (3)**
8:18;12:7;19:12
**fine-tooth (1)**
14:23
**finish (1)**
28:9
**finished (1)**
15:6
**finite (1)**
27:4
**fire (1)**
25:15
**firm (1)**
16:7
**first (3)**
8:9;13:19;25:8
**fix (1)**
36:15
**fixing (1)**
22:19
**flexibility (4)**
24:18;26:13;27:15,
18
**focus (1)**
28:2
**folks (6)**

7:12;20:1,3;26:23;
27:4,24
**followed (1)**
22:20
**following (1)**
20:10
**force (1)**
10:20
**forget (1)**
17:14
**form (2)**
32:9;37:17
**formal (2)**
21:25;34:11
**forth (1)**
34:17
**forward (5)**
13:11;16:1;29:7;
31:5;37:3
**found (1)**
5:4
**four (3)**
5:16;6:3;12:4
**FRANCISCO (1)**
3:1
**frankly (2)**
16:5;30:2
**free (3)**
9:17;13:22;24:16
**friend (2)**
23:6;31:22
**frivolous (1)**
11:6
**fun (1)**
11:17
**future (1)**
20:7

**G**

**game (1)**
13:18
**general (1)**
25:21
**generous (1)**
31:23
**get-out-of-jail-free (1)**
13:17
**gets (3)**
6:11;11:8;14:18
**given (3)**
27:18;36:5;37:5
**glad (2)**
4:1;34:8
**goes (1)**
29:2
**Good (8)**
3:7,10,13,21,24;
10:17;18:22;27:5
**Goodwin (1)**
33:6
**Gotshal (1)**
3:14

Case: 19-30088    Doc# 13914    Filed: 07/20/23    Entered: 07/20/23 20:07:19    Page 42
of 48

**grant (2)**
7:23;20:23
**granted (1)**
7:16
**Grassgreen (9)**
3:19,23,24,25;4:1,
5;5:3;11:7,18
**Groucho (2)**
6:22,22
**group (5)**
5:24;12:12;15:8;
18:7;37:15
**guess (12)**
4:10,14;6:14;7:11;
8:19;9:1,13;12:5;
15:3;22:7;23:5;24:8
**guys (1)**
36:15

**H**

**half (1)**
12:4
**hand (4)**
13:9;32:16;33:8;
34:8
**handed (1)**
13:10
**happen (3)**
24:15;26:23;30:5
**happened (1)**
8:17
**happens (1)**
14:6
**happy (6)**
6:18;9:8;22:1,3;
33:23;36:16
**hard (1)**
9:4
**hardly (1)**
21:3
**hate (1)**
16:21
**heard (11)**
12:8;19:8,8;20:4,5;
28:6;32:2,6;34:7;
36:19,19
**hearing (18)**
4:7;10:5,12;15:13;
16:11,13,14;21:13;
22:6,8;25:8;29:9;
30:16;32:20;33:14;
34:7;35:24;37:22
**hearings (1)**
16:15
**held (1)**
12:23
**hello (1)**
33:4
**helped (1)**
12:3
**here's (1)**
6:16

**hidden (1)**
9:21
**himself (2)**
5:24;6:20
**history (1)**
13:24
**hit (1)**
23:13
**hold (1)**
19:1
**holding (1)**
30:13
**Honor (78)**
3:10,13,16,20,24;
4:5,18;5:15;6:16;7:2,
4,15,18,20,22,23,25;
8:2;9:6,8,9,23;11:10;
12:8,19;14:1;15:14;
16:11,19;17:5,18;
18:5,22;19:11,22;
21:10,12,20,22,24,25;
23:8,10,13,20,23;
24:8;25:18,23;26:9;
28:6,18;29:8,14,18,
22;30:9,19;31:12,14;
32:14,16;33:5,8,10,
16,18,23,24;34:2,14,
19;35:2,16,24;36:2,
21;37:7
**Honorable (1)**
3:4
**Honor's (1)**
12:15
**hook (2)**
12:6;13:14
**hope (2)**
18:1;29:14
**hopefully (1)**
12:15
**horrible (1)**
19:6
**hung (1)**
36:18
**hurts (1)**
36:13
**hypothetical (4)**
11:25;13:3;20:12;
27:17

**I**

**identified (1)**
18:4
**Illinois (1)**
18:18
**imagine (1)**
26:10
**impact (1)**
15:24
**imperfect (1)**
25:6
**implement (1)**
16:23

**implementation (1)**
15:12
**implementing (1)**
9:12
**implements (1)**
27:7
**implicated (1)**
27:5
**importantly (2)**
8:23;15:22
**impose (2)**
18:13;27:14
**imposed (5)**
18:17;19:7,12,19;
20:15
**imposes (3)**
18:23,25;20:6
**imposing (1)**
19:25
**impression (1)**
30:2
**improper (1)**
18:13
**inappropriate (1)**
21:15
**incentivizes (1)**
12:20
**include (4)**
5:9,10;33:15;36:5
**included (5)**
10:21;33:19;34:21;
35:11,13
**including (3)**
3:11;22:22;26:5
**inconsistent (1)**
29:16
**increased (1)**
26:7
**indiscernible (7)**
3:12;12:25;17:19;
31:18;32:13;35:7;
36:19
**individual (1)**
17:10
**informal (3)**
33:11;35:10,17
**information (2)**
26:5;27:4
**initial (1)**
28:23
**initiated (1)**
22:9
**input (1)**
33:17
**instead (1)**
21:4
**insult (1)**
11:17
**intend (1)**
13:11
**intended (2)**
16:3;31:15
**intent (1)**

12:18
**intention (1)**
37:9
**into (8)**
8:6;10:21;13:2;
15:20;21:25;26:19;
31:5;35:25
**Investment (1)**
33:6
**invitation (1)**
15:16
**involves (1)**
28:20
**Irwin (1)**
3:10
**issue (4)**
7:17;19:14;21:24;
37:10
**issued (1)**
21:13
**issues (2)**
8:2;16:14
**item (1)**
9:2

**J**

**January (2)**
31:6,10
**Jarashow (21)**
32:17,21;33:1,3,5,5,
8;34:1,12,25;35:2,4,7,
9;36:2,4,7,21;37:3,7,
11
**jeopardy (1)**
34:6
**job (1)**
14:25
**join (3)**
9:18;18:1;29:16
**joinder (1)**
7:5
**joinders (1)**
8:8
**joined (4)**
4:1;7:12;8:21;
22:10
**joining (2)**
6:25;9:20
**joint (1)**
13:4
**judge (2)**
11:17;28:12
**JULY (1)**
3:1

**K**

**keep (2)**
28:1;37:14
**Keller (1)**
30:22
**kept (1)**

22:8
**kidding (1)**
5:2
**kind (4)**
8:15;21:3;25:24;
30:13
**Kizzy (3)**
32:17;33:3,5
**knew (2)**
21:14;22:17
**knows (3)**
13:9;27:10;30:5

**L**

**lack (1)**
34:16
**language (2)**
12:12;13:23
**large (1)**
7:17
**last (15)**
4:2,25;10:5,12;
18:10,17;22:22,22;
23:5;30:25;33:14;
34:18;35:21,24,25
**late (2)**
18:10;30:12
**later (1)**
25:9
**law (1)**
16:7
**lawyers (4)**
8:23;10:15;12:5;
14:16
**least (12)**
15:3,4,23;22:17;
24:9,25;25:5,7;26:14;
27:10;31:7;37:23
**leave (1)**
13:20
**leaving (1)**
34:4
**legislative (1)**
13:24
**length (1)**
14:20
**less (1)**
26:25
**letter (4)**
26:4;36:8,18;37:6
**letting (1)**
27:13
**Lewis (1)**
3:17
**likely (1)**
21:11
**like-situated (1)**
36:24
**limited (1)**
28:22
**line (1)**
8:17

Case: 19-30088    Doc# 13914    Filed: 07/20/23    Entered: 07/20/23 20:07:19    Page 43
of 48

**list (1)**
32:17
**Listen (3)**
13:1;14:11,22
**literally (2)**
8:6;13:17
**litigants (2)**
13:7,16
**little (6)**
4:23;9:15;15:9;
16:16;17:15;28:24
**live (1)**
27:21
**living (1)**
14:20
**LLP (1)**
3:14
**local (1)**
30:21
**lodged (2)**
23:13,14
**long (1)**
22:17
**look (8)**
13:5;15:23;16:18;
26:19;27:7,16;30:17,
19
**looking (1)**
14:9
**looks (1)**
4:8
**lose (1)**
13:22
**lot (3)**
5:25;7:24;21:10
**lots (1)**
14:25

**M**

**mail (1)**
26:4
**makes (4)**
14:1;26:22;27:5;
31:12
**making (2)**
9:4;20:24
**managed (1)**
15:21
**Manges (1)**
3:14
**many (2)**
9:4;34:16
**Marx (2)**
6:22,22
**matter (4)**
3:6;25:9,21;32:24
**may (9)**
7:4,12;12:8;18:13;
19:16,17;20:4;25:20;
28:14
**maybe (9)**
4:15,24;9:14;12:17;

16:18;21:21;26:7;
30:22;36:15
**me- (1)**
11:18
**mean (16)**
5:1,2;9:3,16;14:22;
19:11;22:7;23:23;
25:20;28:23;30:17;
31:21;34:5,6;35:18;
36:12
**means (1)**
14:12
**mechanism (2)**
24:11,20
**mediating (1)**
31:25
**medicine (1)**
36:14
**member (4)**
6:25;7:1;8:11;29:4
**mere (1)**
11:14
**merits (3)**
15:21;16:24;28:22
**message (2)**
9:21;35:3
**me-too (1)**
12:6
**mic (1)**
35:1
**might (2)**
5:5,6
**mind (2)**
6:8;28:2
**minimizing (1)**
15:4
**minute (4)**
28:16;32:24;35:21,
25
**minutes (3)**
4:2;22:13;32:23
**misunderstood (1)**
5:6
**MML (1)**
33:6
**moment (2)**
22:5;32:23
**money (2)**
27:2,2
**Monopoly (1)**
13:18
**Montali (1)**
3:5
**month (1)**
31:8
**months (1)**
25:9
**more (21)**
5:3;8:22;9:14,21;
10:17;14:18;15:22;
16:16;17:7,7;20:18,
19;21:2,21,25;22:11;
25:7;27:18;30:11;

32:22;35:22
**Morgan (1)**
3:17
**morning (8)**
3:7,10,13,16,21,24;
19:3;34:20
**morphed (1)**
17:22
**most (3)**
11:17;25:16;26:20
**motion (30)**
7:5,9,16,19,20;8:3,
6,16,22,24;9:19,20;
10:3;15:19,24;16:3,
12,14,25;17:12,23,23;
20:1;22:18;28:23;
29:9,17,18,22;33:11
**motivation (1)**
17:8
**move (2)**
15:25;29:7
**much (7)**
5:5;15:19;16:21,21;
27:1;32:7;37:8
**mustache (1)**
11:18
**myself (2)**
7:7;24:9

**N**

**name (1)**
33:1
**nature (3)**
10:5;15:1;23:12
**need (3)**
10:21;25:11;34:24
**needs (2)**
27:18,23
**negotiated (1)**
18:7
**negotiating (1)**
24:9
**negotiation (1)**
5:16
**negotiations (4)**
6:1,2;16:8;35:12
**neighborhood (1)**
25:13
**new (13)**
11:11;18:6,13,15,
17;19:1,19;20:2;
22:17;23:7;24:12;
25:3;34:13
**next (4)**
20:15;22:14;31:5;
32:12
**nice (1)**
29:12
**night (4)**
18:10,18;22:22;
34:18
**nobody's (1)**

9:16
**nonissue (1)**
13:2
**nonsecurities (1)**
19:3
**normal (1)**
3:20
**nose (1)**
23:13
**note (2)**
24:9;36:22
**notes (2)**
17:23;22:13
**notice (10)**
20:3,5;24:20,21,25;
25:7,17,24;31:16,17
**notices (1)**
26:11
**November (1)**
31:5
**number (4)**
3:11;7:17;10:18;
27:4
**numerous (1)**
33:13

**O**

**object (5)**
19:5;20:20,21;21:5,
7
**objected (2)**
20:14;34:2
**objection (7)**
4:17;8:13;19:3;
20:17;23:11,11;28:22
**objections (4)**
15:10;19:2,13;
30:15
**objector (11)**
5:23;6:15;33:11;
34:5,11;35:10,17,18,
23;36:1,5
**objectors (18)**
5:9,9,12,16;6:4,9,
13;7:1;15:6;17:2;
18:23;19:17;24:10;
33:19;34:12,15;
35:10,14
**objects (1)**
19:9
**obligation (1)**
20:6
**obliged (1)**
14:16
**observation (2)**
20:11,12
**obviously (6)**
6:4;7:16;9:7;14:10;
22:3;31:17
**occasions (1)**
33:13
**October (2)**

19:19;24:14
**odd (1)**
18:12
**off (5)**
11:6;13:13;34:9;
35:1,1
**offer (9)**
4:16;8:12;17:16;
20:21;25:9,10;31:23;
32:1;35:19
**offers (2)**
19:13;24:24;25:8;
26:18
**off-the-reservation (1)**
12:16
**old (2)**
6:21;17:15
**omnibus (1)**
19:3
**one (22)**
5:8;7:7;9:14;10:11;
11:24,25;12:5;13:5,9;
21:22;28:2,6,10,19;
30:3,11,13;31:1,8,14;
35:13;36:8
**ones (1)**
23:18
**only (8)**
4:4;6:6;10:14;
18:23;20:4;21:16;
29:2;32:24
**onto (1)**
37:14
**oOo- (1)**
3:2
**open (5)**
20:24;21:13;22:8;
28:2;37:14
**opened (1)**
9:3
**opener (1)**
4:11
**opening (1)**
32:20
**opinions (1)**
9:17
**opportunity (4)**
20:3,5;28:1;37:5
**oppose (3)**
15:10;35:15,16
**option (2)**
22:2;29:20
**opt-out (1)**
12:21
**order (31)**
3:3;9:10;14:2,3,8,
10,21,24;15:10;21:14,
18,19,24,25;22:25,25;
23:10;24:4;25:2,19,
25,25;26:12;27:7;
29:19;32:9;33:19;
35:14;37:10,13,17
**orders (4)**

Case: 19-30088    Doc# 13914    Filed: 07/20/23    Entered: 07/20/23 20:07:19    Page 44
of 48

5:17;14:17,21,25
**ordinary (1)**
34:13
**Oregon (7)**
3:17;5:19,22;15:3;
17:14,20;22:11
**original (2)**
28:22;35:9
**originally (2)**
5:23;33:11
**others (1)**
17:2
**otherwise (2)**
25:2;32:3
**ourselves (3)**
10:20,21;29:21
**out (20)**
6:1,18;10:5;12:23;
13:10;17:16;18:9,18;
19:13;21:12;25:24;
26:11,17,23;29:11,24;
30:3;33:13;36:15;
37:19
**outcome (1)**
5:13
**outlined (1)**
29:19
**outrageous (2)**
25:16;26:25
**outstanding (1)**
24:22
**over (3)**
13:23;28:25;34:13
**overnight (1)**
20:25
**overruling (1)**
37:12

**P**

**papers (1)**
16:3
**Parada (1)**
31:4
**paragraph (6)**
9:15,22;12:13,14;
14:7,8
**part (13)**
5:23;6:18,19;11:2;
12:11;16:6;17:1,1,2;
18:24;29:2,6;35:9
**participate (1)**
17:24
**participating (1)**
7:13
**participation (1)**
37:22
**particularly (1)**
30:22
**parties (16)**
5:16;6:3;9:4,25;
10:17;13:3,5;14:5,5,
7;15:5;16:25;24:17;

25:1,4,6
**party (3)**
11:10;27:19,20
**pass (1)**
9:17
**past (1)**
7:25
**pendency (1)**
15:24
**pending (2)**
15:19;20:1
**people (10)**
7:13;8:16;10:20;
11:4;24:24;25:1,8;
26:7;27:1,13
**Peoria (7)**
18:18;20:13;23:6;
27:17;31:22;33:10,10
**PERA (5)**
12:20;15:9;17:6;
28:20;29:3
**perceive (1)**
17:9
**perhaps (3)**
9:2;18:12;22:10
**peril (1)**
13:12
**period (1)**
22:22
**person (3)**
17:16;27:18;32:19
**personal (1)**
32:24
**person's (1)**
9:20
**persuaded (1)**
27:22
**persuades (1)**
37:11
**PG&E (11)**
3:6,14;17:16;19:8;
20:14,17;22:15,16;
26:14;27:1;30:24
**phone (1)**
28:16
**pick (3)**
9:2;31:4,8
**piece (2)**
21:16;27:4
**place (2)**
5:8;7:25
**play (2)**
21:1;29:24
**players (1)**
17:20
**pleading (4)**
10:1,8;11:14;29:1
**pleadings (1)**
17:3
**please (3)**
3:19;13:22;33:1
**pleasure (1)**
30:16

**point (18)**
5:11,25;6:6;7:3;
8:9;9:24;12:9;18:22;
21:9,12;22:12,13;
25:5;26:22;27:6,22;
29:24;30:1
**pointed (2)**
10:5;12:23
**points (1)**
17:5
**population (1)**
26:7
**portion (1)**
30:25
**position (4)**
7:18;8:23;20:11;
22:10
**preclude (2)**
13:7;14:12
**prefer (5)**
9:9;14:2,3;26:10;
30:8
**preferable (1)**
27:25
**prejudice (1)**
36:5
**prejudiced (1)**
34:21
**prepared (2)**
26:17;35:19
**preparing (1)**
8:25
**preserve (1)**
8:23
**presiding (1)**
3:5
**presumed (1)**
24:20
**previous (1)**
19:17
**prior (7)**
4:7;16:14;17:3;
22:8;28:25;31:9;
33:15
**pro (1)**
27:20
**probably (2)**
17:22;32:23
**problem (4)**
16:10;18:5;20:9;
33:21
**problems (1)**
3:20
**procedural (1)**
27:11
**procedure (16)**
5:8;6:13;7:8,13;
11:20;15:12;17:25;
18:15,17;23:7;26:5,8;
27:8,25;28:4,4
**procedures (4)**
4:12,22;5:4;6:5,12;
7:3;8:1,1;9:7,25;

11:21;12:19;14:4,24;
15:2,25,25;16:4,8,24;
17:11;18:7,13;19:15;
20:2;21:22;23:1;
24:16;28:22;29:7,17,
19,20,21;30:20;32:8;
33:12,15,17,17;34:13,
16;35:12,13,25;37:17,
18
**proceedings (1)**
37:24
**process (10)**
7:25;17:7,10;21:4,
12,13;25:10;26:24;
34:23;37:13
**Procter (1)**
33:6
**produce (1)**
37:18
**product (2)**
15:7,7
**progress (2)**
4:9;9:4
**promptly (1)**
37:16
**proof (2)**
19:18,18
**proposed (2)**
6:5;7:4;29:19
**proposing (1)**
9:7
**protection (1)**
11:3
**punishment's (1)**
19:7
**punitive (3)**
19:21,23;20:4
**purposes (2)**
5:16;8:14
**pursuant (1)**
25:2
**put (4)**
7:25;9:9;11:11;
21:25
**putting (2)**
14:2;19:12

**Q**

**quick (1)**
36:15
**quickly (1)**
4:24;34:8
**quite (1)**
16:5

**R**

**raised (4)**
16:14;22:5;32:16;
33:9
**raises (1)**
34:8

**range (1)**
26:2
**rarely (1)**
9:17
**rather (1)**
10:17
**reach (1)**
25:21
**reached (1)**
33:13
**read (5)**
4:25,25;12:13;28:2;
34:19
**reading (2)**
4:24;5:5
**reads (1)**
6:14
**ready (1)**
30:7
**reaffirmed (1)**
8:10
**realize (2)**
4:7;15:8
**really (5)**
5:25;22:9;23:11,18;
29:3
**reason (2)**
14:22;15:11
**reasons (1)**
7:17
**recall (1)**
12:2
**receive (1)**
8:12
**received (2)**
4:16;8:12
**recently (1)**
5:25
**recess (1)**
35:5
**recollection (1)**
25:12
**recommendation (1)**
27:8
**record (6)**
14:15;28:19;29:10,
11,11;32:8
**redline (2)**
4:3,3
**reflect (2)**
8:22;22:14
**refuse (1)**
34:1
**regular (1)**
30:24
**relatively (1)**
26:6
**remember (2)**
14:23;22:11
**reminded (1)**
22:5
**reorganized (1)**
16:23

Case: 19-30088    Doc# 13914    Filed: 07/20/23    Entered: 07/20/23 20:07:19    Page 45
of 48

**repeat (1)**
29:1
**repeatedly (1)**
35:11
**represent (2)**
18:8;33:2
**representative (2)**
16:6,7
**request (1)**
37:12
**require (1)**
10:14
**requirements (1)**
18:23
**research (1)**
10:13
**reserve (3)**
36:23;37:1,4
**resolution (4)**
15:25;16:4,8;35:12
**resolutions (1)**
17:7
**respect (5)**
17:11;19:12;20:4;
23:16;37:1
**respond (4)**
20:16;34:7;36:10,
14
**responses (1)**
30:15
**retain (1)**
7:19
**reverse (1)**
21:4
**revised (1)**
4:12
**Richard (1)**
3:13
**rid (3)**
28:12,13,17
**right (26)**
3:7;4:17,18;5:14,
18;6:15;10:2,3,6,7;
11:11;17:13,17,19;
18:2;19:4,5;22:7,7;
26:1,2;32:2,19;34:6;
37:9,15
**rights (4)**
34:5;36:23;37:1,4
**Ritholtz's (1)**
17:21
**RKS (4)**
5:19,20;12:21;15:3
**RKS' (1)**
22:10
**rocking (1)**
17:9
**routinely (1)**
31:1
**Rule (16)**
9:16,17;10:9,16,21;
11:2,7,12,13,15;12:1,
6;13:10,12;22:17;

30:5
**rules (1)**
7:5
**Rupp (1)**
30:22

**S**

**same (6)**
5:5;8:19;14:22;
16:19;28:25;31:25
**SAN (1)**
3:1
**sanction (2)**
11:19,19
**sanctioned (1)**
9:19
**satisfies (1)**
27:12
**satisfying (1)**
10:15
**saw (1)**
5:1
**saying (1)**
9:16
**scenes (1)**
35:10
**Schwartz (20)**
3:8,10,11;5:24;6:1,
7,14,17,21,23;7:2;
8:20;12:8,11;15:8;
22:11;28:6;29:13,14;
30:1
**Schwartz' (1)**
5:10
**Schwartz's (1)**
5:23
**screen (1)**
3:8
**se (1)**
27:20
**second (1)**
28:10
**Securities (17)**
3:25;12:4;17:15;
18:8,14,21;19:16,20;
20:13;25:15;27:10;
28:3;31:16,18,24;
33:12;34:14
**security (1)**
4:16
**seem (2)**
13:19;31:3
**seems (7)**
4:4;6:12;13:3;
17:22;20:25;22:4;
23:2
**self (1)**
7:8
**send (3)**
25:18;26:15,17
**sending (2)**
25:24,25

**sense (2)**
14:1;31:12
**sensed (1)**
8:15
**sensible (1)**
13:25
**separate (1)**
5:8
**separately (1)**
26:15
**serve (1)**
26:12
**serving (2)**
23:22;25:25
**session (1)**
3:4
**set (7)**
9:7;18:7;20:2;
30:19,25;31:7;34:17
**setting (1)**
21:16
**settle (2)**
17:21,21
**settlement (2)**
8:12;17:16
**several (2)**
4:3;22:15,24
**short (1)**
27:3
**side (1)**
8:16
**sign (4)**
14:7,25;21:18;27:7
**signed (2)**
14:24;34:8
**Silveira (1)**
30:23
**similarly (1)**
36:24
**simple (3)**
23:2;32:9;37:17
**simply (2)**
6:10;21:24
**sit (1)**
17:25
**sitting (1)**
18:19
**Slack (50)**
3:9,13,14;4:6,10,18,
20;5:15,19,22;6:16;
7:8,11,15;8:10;9:1,6;
10:4;13:13;14:23;
15:21;20:11;21:10,
20;23:4,8,23;24:1,4;
25:12,18;26:9;27:7;
29:15,25;30:7,11,17;
31:12,14,20;32:10,11;
33:21,22;35:15,16;
36:10,14;37:9
**sleep (1)**
13:22
**slow (1)**
37:13

**small (1)**
26:6
**smaller (1)**
25:14
**somebody (6)**
9:18,19;18:18;
24:18;29:3;35:3
**somebody's (1)**
18:20
**someone (2)**
6:8;10:1
**someone's (1)**
11:14
**somewhere (2)**
26:4;31:9
**sooner (1)**
37:23
**sort (5)**
13:24;14:21;16:13;
24:10;35:25
**sound (1)**
27:3
**sounds (1)**
13:25
**speak (7)**
5:24;6:2,7,20;8:5;
15:11;24:10
**speaks (1)**
14:15
**specifically (1)**
22:11
**speed (1)**
34:20
**spend (1)**
27:1
**spending (1)**
5:25
**spent (1)**
4:2
**spoken (1)**
35:23
**Stack (1)**
21:8
**stand (4)**
16:7;20:16;29:3,4
**start (2)**
14:16;26:2
**started (1)**
21:13
**State (6)**
3:12;20:25;21:1;
24:6;28:19;33:1
**statement (5)**
4:25;6:11,12;34:17,
19
**status (4)**
16:11,16;30:14;
34:17
**still (4)**
12:11;18:9;21:7;
28:24
**stipulation (1)**
13:7

**streamline (1)**
26:10
**strength (1)**
36:11
**strike (1)**
30:3
**strikes (2)**
18:12;30:3
**studied (1)**
8:7
**studying (1)**
4:2
**subject (7)**
4:17;10:9;11:13,15;
32:3;33:19;36:20
**subjecting (1)**
10:21
**submissions (1)**
17:3
**submit (3)**
9:10;22:1;37:10
**submitted (1)**
21:23
**subset (1)**
25:6
**suddenly (1)**
8:17
**suggest (2)**
25:23;26:13
**suggested (1)**
23:4
**suggesting (2)**
23:21;24:1
**suggestion (1)**
24:23
**superior (1)**
29:19
**supplemental (1)**
37:13
**supplements (1)**
23:1
**support (2)**
8:16;29:17
**supportable (1)**
20:19
**supporting (1)**
7:13
**suppose (2)**
15:11;19:7
**sure (8)**
10:15;11:3;12:17,
24;15:17;26:16;27:9;
29:8
**surprised (1)**
30:2
**Susan (1)**
3:16

**T**

**tail (1)**
14:15
**talk (1)**

Case: 19-30088    Doc# 13914    Filed: 07/20/23    Entered: 07/20/23 20:07:19    Page 46
of 48

33:23
talked (2)
  10:11;31:16
talking (3)
  25:14,15;26:6
Teachers (1)
  3:12
technology (2)
  3:21,23
ten (1)
  10:18
tend (1)
  31:7
term (3)
  5:11;6:9,13
terms (2)
  14:6;23:12
terribly (1)
  27:3
Thanks (1)
  37:8
there'd (2)
  5:3;7:24
there'll (1)
  31:9
third (5)
  7:23;22:2;30:4,4,8
thirty-second (1)
  34:24
though (2)
  14:9;30:11
thought (2)
  5:3;10:24
thousand (2)
  24:24;26:4
thousands (2)
  18:8,14
three (2)
  12:3;30:3
throughout (1)
  34:23
throwing (1)
  29:11
till (1)
  14:6
times (3)
  4:4;21:2;22:15
today (12)
  3:23;5:1;8:3,18;9:2,
  5;16:10;20:14;22:21;
  23:2;33:20;37:1
today's (1)
  8:13
together (1)
  15:4
told (4)
  4:20;8:21;26:7;
  33:14
tolling (1)
  34:16
tomorrow (3)
  17:15;20:15;31:23
total (1)

26:2
totally (1)
  16:2
touch (1)
  30:23
transcripts (1)
  22:14
transparency (1)
  14:4
treat (1)
  34:11
treated (3)
  6:10;36:9,10
treating (2)
  5:15;36:24
treatment (1)
  34:13
tremendous (1)
  4:8
tried (1)
  26:10
true (2)
  4:5;8:19
try (1)
  19:11
trying (1)
  13:3
turn (2)
  8:5;36:25
twice (1)
  5:5
two (8)
  13:5;16:15;20:13;
  21:20,21,21;25:9;
  31:7
type (1)
  35:1
types (1)
  12:16

**U**

Um-hum (1)
  15:13
unaware (1)
  20:7
unclear (1)
  4:13
under (6)
  11:19;13:15;19:14;
  24:16;30:20;34:12
undermine (1)
  7:9
understood (2)
  6:3;36:21
Unfortunately (1)
  33:16
universe (6)
  4:15;7:12;8:10,11;
  25:13;26:2
unless (1)
  36:14
unresolved (3)

24:22;25:19;31:17
up (17)
  10:13;11:16;12:11;
  13:4;15:11;16:7;
  17:11;18:20;20:16;
  22:14;27:8;28:5,9;
  29:15;34:20;35:23;
  36:18
upend (1)
  16:4
upon (2)
  8:17;37:6
upper (1)
  27:12
used (1)
  6:24

**V**

vacuum (1)
  15:23
variation (1)
  23:3
victims (1)
  25:15
view (6)
  7:15,22;15:24;21:9;
  29:16;32:4
violate (3)
  11:7;13:11,13
violated (3)
  12:1,6;13:12
violates (2)
  11:1,2
violating (1)
  9:16
violations (1)
  13:10
violative (1)
  11:12
voluminous (1)
  12:22
voluntarily (1)
  20:17
voluntary (1)
  23:12

**W**

wag (1)
  14:15
wait (2)
  20:22;32:9
wants (4)
  6:7;14:13;21:24;
  29:3
waste (1)
  27:2
watching (1)
  18:10
way (12)
  6:14;9:11;11:22;
  12:7;22:2;23:2;26:14;

27:9,16;29:3,5;36:9
ways (3)
  21:20,21,21
WEDNESDAY (1)
  3:1
week (2)
  36:8,10
weeks (1)
  22:24
Weil (1)
  3:14
well-counseled (1)
  27:24
well-involved (1)
  27:24
weren't (1)
  18:9
Whatever's (1)
  26:19
what's (4)
  19:21;26:23;27:13;
  30:16
whenever (1)
  12:4
Whereupon (2)
  35:5;37:24
whole (1)
  28:20
who's (2)
  18:18,18
willing (1)
  22:16
wish (2)
  6:25;16:5
wishes (1)
  27:19
withdraw (1)
  8:17
within (1)
  6:15
wondering (1)
  18:19
word (2)
  34:5;37:19
words (1)
  11:9
work (4)
  11:22;31:10,11;
  36:15
workable (1)
  15:7
worked (2)
  15:4;19:2
working (3)
  3:23;9:4;22:22;
  31:4
works (1)
  15:7
worry (1)
  27:16
worrying (1)
  13:19
worth (1)

13:19

**Y**

year (2)
  30:25;31:5
years (4)
  12:4,4;13:10;20:13
yesterday (1)
  7:6

**1**

10,000-dollar (4)
  18:20;20:12;23:6;
  27:17
11 (11)
  9:16,18;10:10,16,
  21;11:2,7;12:6,13;
  13:10,12
11:00 (1)
  3:1
11:55 (1)
  37:24
120th (1)
  19:3
15th (4)
  4:14,15;5:7;24:25
19 (1)
  3:1
1st (4)
  4:14,14;5:7

**2**

2023 (1)
  3:1
23 (3)
  22:18;27:25;30:5

**4**

4 (1)
  12:14

**5**

500 (1)
  30:15

**6**

6th (1)
  19:19

**7**

7,000 (3)
  25:13,15;26:2
7023 (10)
  7:5,15,16,20;8:3;
  15:19,24;16:3;17:12;
  29:9

Case: 19-30088    Doc# 13914    Filed: 07/20/23    Entered: 07/20/23 20:07:19    Page 47
of 48

**723 (3)**
  29:17,18,22

**8**

**8 (4)**
  9:16,22;14:7,8
**80,000 (1)**
  25:14
**8th (2)**
  7:10;37:23

Case: 19-30088    Doc# 13914    Filed: 07/20/23    Entered: 07/20/23 20:07:19    Page 48
of 48