ROLNICK KRAMER SADIGHI LLP
Lawrence M. Rolnick *(pro hac vice)*
lrolnick@rksllp.com
Marc B. Kramer *(pro hac vice)*
mkramer@rksllp.com
Richard A. Bodnar *(pro hac vice)*
rbodnar@rksllp.com
Frank T.M. Catalina *(pro hac vice)*
fcatalina@rksllp.com
Jeffrey Ritholtz *(pro hac vice)*
jritholtz@rksllp.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

ST. JAMES LAW, P.C.
Michael St. James, CSB No. 95653
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

*Attorneys for the RKS Claimants*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>Chapter 11<br><br>**THE RKS CLAIMANTS' OBJECTION TO THE THIRD 7023 MOTION**<br><br>**Hearing Information:**<br>Date: August 8, 2023<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Telephone Appearances Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 5

    I.    Commencement of the Case and the First 7023 Motion ................................................ 5

    II.    The Court Orders Implementation of the Securities Claimant ADR Procedures ......... 6

    III.    The RKS Claimants Act to Implement the ADR Procedures ...................................... 8

    IV.    The Sixth Extension Motion ...................................................................................... 10

ARGUMENT ............................................................................................................................ 11

    I.    The Court Should Not Reverse Its Prior Rulings and Now Sidetrack the Claims Resolution Process With a New and Unnecessary Class Procedure Just as the Claims Resolution Process is Beginning to Bear Fruit ........................................................... 11

    II.    The Proposed Class Does Not Satisfy Rule 23 and Proposed Lead Plaintiffs Are Uniquely Incapable of Leading the Proposed Class .................................................... 18

        a.    Proposed Lead Plaintiffs Are Conflicted and Thus Uniquely Incapable of Adequately Representing a Putative Class ...................................................... 18

        b.    Proposed Lead Plaintiffs Cannot Meet Rule 23(a)'s Typicality Requirement ..... 20

        c.    The Superiority Requirement of Rule 23(b)(3) Is Not Satisfied .......................... 21

CONCLUSION .......................................................................................................................... 23

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ....................................................................... 19, 20

*General Telephone Company of Southwest v. Falcon*,
   457 U.S. 147 (1982)........................................................................................ 18

*Gentry v. Siegel*,
   668 F.3d 83 (4th Cir. 2012) ................................................................ 12, 13, 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988) ...................................................................... 19

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ......................................................................... 20

*In re Circuit City Stores, Inc.*,
   439 B.R. 652 (E.D. Va. 2010) .................................................................. 14, 21

*In re Ephedra Products Liability Litigation*,
   329 B.R. 1 (S.D.N.Y. 2005)...................................................................... 14, 22

*In re Musicland Holding Corp.*,
   362 B.R. 644 (Bankr. S.D.N.Y. 2007)...................................................... 12, 13

*In re Tea Station Investment, Inc.*,
   2021 WL 4988436 (Bankr. C.D. Cal. Oct. 26, 2021)................................ 12, 13

*Moreno v. Autozone, Inc.*,
   2007 WL 4287517 (N.D. Cal. Dec. 6, 2007 ................................................. 19

*Mortland v. Aughney*,
   2011 WL 2653515 (N.D. Cal. July 6, 2011)........................................ 12, 13, 14

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ......................................................................... 18

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.*,

136 F.R.D. 658 (D. Or. 1991) ................................................................................ 20

*Walker v. Life Insurance Company of the Southwest*,

953 F.3d 624 (9th Cir. 2020) ................................................................................ 22

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ 18, 21

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

The RKS Claimants[1] hereby submit this objection (the "**Objection**") to Public Employees Retirement Association of New Mexico (**"PERA"**), York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund's (collectively with PERA, **"Proposed Lead Plaintiffs"**) Motion for entry of an order, pursuant to Rules 7023 and 9014(a) and (c) of the Federal Rules of Bankruptcy Procedure:

- Applying Bankruptcy Rule 7023 and Rule 23 of the Federal Rules of Civil Procedure to all unresolved Rescission or Damage Claims classified as Classes 9A, 10A-II, and 10B (the "**Securities Claims**")

- Holding that Rules 23(a)(1)-(4) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, made applicable through Bankruptcy Rule 7023, are satisfied; and

- Certifying a class of all those who purchased or otherwise acquired the publicly traded debt or equity securities of PG&E Corporation, Pacific Gas and Electric Company (**"Reorganized Debtors"**), or both, from April 29, 2015 through November 15, 2018 (inclusive), and who timely submitted Securities Claims in these proceedings (the "Chapter 11 Cases"), which Securities Claims have not otherwise been resolved.

(the **"Third 7023 Motion,"** or **"Motion"**) [Dkt. No. 13865]. Contemporaneously herewith, the RKS Claimants submit the Declaration of Richard A. Bodnar, dated July 25, 2023, in support of this limited Objection ("**Bodnar Decl.**").

## INTRODUCTION

PERA's third bite at the "class certification apple" seeks to certify a class in bankruptcy consisting of all those who have filed claims but have not yet resolved them. That proposed class can itself be divided into two groups: "active" claimants, who are already moving forward with an efficient, court-approved claims resolution process with Reorganized Debtors, and "passive" claimants, who have filed joinders supporting the proposed class action or remained silent throughout the bankruptcy proceedings. However, a class action procedure is not necessary to expeditiously resolve the claims of the passive claimants. If they do not wish to shoulder the burdens of resolving their claims, they can simply accept the mandatory settlement offers or mediations that the debtor has agreed to in the existing procedures. That would result in immediate (or near-term) resolution of their claims and payment would not be delayed by the time-consuming,

---

[1] The RKS Claimants are set forth on Schedule 1 attached hereto.

multi-year process required for class certification, class litigation, class settlement, notice, fairness hearing and – finally – class claims administration. If those passive investors filing joinders seek the protection of a finding that the settlement is "fair," they need simply to obtain the advice of the counsel they have already retained in connection with the filing of their claims. There is absolutely nothing to be gained – at this late date – from abandoning a claims resolution process that has been in place for years and denying a class procedure for the third time will result in no harm to any claimant.

Class actions are disfavored in bankruptcy and are virtually unheard of where the proposed class consists solely of claimants who have filed proofs of claim and engaged in direct settlement discussions with Reorganized Debtors – which is or will be the case for all Securities Claimants. Numerous courts have recognized that the policy factors favoring class actions in civil litigation are absent in bankruptcy where the claims are already consolidated, and, as this Court has previously noted, the Court has effective tools to manage those claims through the claims resolution process. Claimants are able to file proofs of claim and, if they wish, may resolve them quickly and efficiently pursuant to a claims resolution process that requires Reorganized Debtors to make settlement offers to (or mediate with) each and every claimant. Those who want to engage counsel can do so, those who want to litigate may do so, and those who wish to passively do nothing can do so as well—and still obtain payment of their claims. Indeed, the wisdom of the claims-resolution process ordered by this Court allows every Securities Claimant filing a joinder in the Third 7023 Motion to simply settle their claims now, without imposing a wasteful, unnecessary, and delay-ridden process on the claims allowance process as a whole. Moreover, a new class action procedure would simply waste assets of Reorganized Debtors that are better spent funding settlements.

Nothing has changed that would justify abruptly changing course. As it has done twice before, this Court should exercise its discretion in declining to apply Rule 23. Proposed Lead Plaintiffs fail to even attempt to address the *Musicland* factors that must guide the Court in exercising its discretion as to whether to apply the Rule 23 requirements. That is because they

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

cannot meet any of the factors. As to the first two "critical" *Musicland* factors, Proposed Lead Plaintiffs do not represent a class that was certified pre-petition, and all members of the proposed class here had notice of the bar date, were given extended time to file claims, and have all filed proofs of claim. Thus, certifying a class here would not even have the beneficial effect of protecting absent class members through the filing of a class proof of claim – as is the case in nearly every instance of a class being certified under Bankruptcy Rule 7023. Nor will certifying a class here be in any way beneficial to the Reorganized Debtors or superior to proceeding with the claims allowance process. The ADR Procedures and claims allowance process are working well, settlement offers are being made, and those who cannot resolve their claims are moving forward with solid deadlines and an initial framework for coordinated litigation of claims that do not settle consensually.

Reorganized Debtors, the RKS Claimants, and certain other Objectors just recently agreed to, and submitted to the Court for entry as an order, new streamlined procedures establishing deadlines and procedures for completing the ADR Procedures, amending claims, objecting to claims, and litigating any objections. Moreover, the duty on the part of the Reorganized Debtors to make mandatory settlement offers (or engage in mediation) obviates the need to have PERA and the other Proposed Lead Plaintiffs act on behalf of claimants who want to remain passive. Nor is there any need to reduce their recoveries by a large attorneys' fee award to be deducted from any class settlement.

To certify a class now would result in unnecessary expense, confusion, and delay. The Court would need to approve a notice that would have to go out to every claimant. Each recipient would likely be confused by a new process that is the exact opposite of the claims-filing procedure previously implemented by this Court. Each Securities Claimant will then be forced to make a hurried and uninformed decision whether to get in the class and relinquish control of their claims or opt out. Then there will be further delay through class litigation or settlement, an approval process in two courts, and finally class claims administration – a process that typically spans years. With the ADR Procedures proceeding toward resolution, and a coordinated claims allowance

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

process on the horizon, the introduction of an unnecessary and unpredictable class process into these proceedings at this time can only serve to increase confusion and decrease efficiency.

Even if the Court were inclined to exercise its discretion in favor of applying Rule 23, however, it still should not certify a class because Proposed Lead Plaintiffs have not met their burden of proving the Rule 23 criteria have been met. Nor could they even if they presented the Court with a fact record (which they did not). Among the Securities Claimants, Proposed Lead Plaintiffs are uniquely incapable of leading a class because they are hopelessly conflicted. Proposed Lead Plaintiffs are also putative lead plaintiffs in the District Court Action. However, that putative class includes securities claimants who *failed* to file proofs of claim in these Chapter 11 cases. The Proposed Lead Plaintiffs owe fiduciary duties to those putative class members who failed to file claims that conflict with the interests of the Securities Claimants because to secure payments on their behalf diminishes the assets available to compensate the Securities Claimants who did file proofs of claim. If the Court seriously wished to entertain the idea of certifying a class of Securities Claimants, the only way it could do so would be to appoint a lead plaintiff whose only interest is in maximizing recovery for those who filed proofs of claim – and not those who failed to do so. This conflict disqualifies PERA and the Proposed Class Plaintiffs and renders them incapable of satisfying the Rule 23 criteria.

Finally, Proposed Lead Plaintiffs have utterly failed to prove that a class action is *superior* to the existing and available bankruptcy procedures – a mandatory requirement of Rule 23(b)(3) class certification. Certifying a class here would not have the salutary effects of either commencing or advancing litigation to the benefit of the class or consolidating resolution of the claims in a particular forum. Passive claimants already enjoy the benefit of a mandatory settlement offer. Active claimants have Securities Claims moving toward resolution, with momentum, and they are already consolidated in these Chapter 11 cases. In addition, the likely difficulties of managing a class action preclude a class action from being the superior method to resolve the Securities Claims. Indeed, the proposed class definition – encompassing only claimants who have "timely" filed claims – raises more questions than answers. How do claimants whose claims have

been challenged as untimely fit into this category? Are they in the class or out? It is unclear to what extent claims for which timeliness is challenged by Reorganized Debtors are included in this definition, or whether and to what extent class counsel will defend the challenged timeliness of claims. Proposed Lead Plaintiffs do not address these or related issues in their Third 7023 Motion. It is clear from the definition, however, that certifying a class will lead to unnecessary expenditure of Reorganized Debtors' funds litigating to ascertain who is and is not in the class.

A class procedure would be both an inferior means of resolving the Securities Claims and is completely unnecessary in light of the procedures this Court has already adopted. The ADR Procedures are functioning efficiently and expeditiously and, in tandem with the newly agreed-upon amendment and objection procedures, the Securities Claimants have a roadmap to efficiently and expeditiously resolving the Securities Claims, either consensually or through a coordinated claims allowance process. Now is not the time to divert the Court, the parties, and the resources of Reorganized Debtors from the task at hand with an expensive, unnecessary, confusing, time-consuming and burdensome new class procedure.

## **BACKGROUND**

### I.    **Commencement of the Case and the First 7023 Motion**

Debtors commenced these Chapter 11 cases on January 29, 2019, seeking relief pursuant to Chapter 11 of the Bankruptcy Code. [Dkt. No. 1]. On July 1, 2019, the Court entered an Order [Dkt. No. 2806] (the "**Bar Date Order**") setting a bar date of October 21, 2019 (the "**Bar Date**") for filing proofs of claim for all prepetition claims. On December 9, 2019, the Proposed Lead Plaintiffs filed a Motion to Apply Bankruptcy Rule 7023 to Class Proofs of Claim. [Dkt. No. 5042] (the "**First 7023 Motion**"). The First 7023 Motion sought permission to file a class proof of claim, among other reasons, because certain securities claimants purportedly failed to receive proper notice of the Bar Date. [Dkt. No. 5042 § I.C.2]. In its February 24, 2020, memorandum decision, this Court found that, while Debtors failed to provide the required notice, given an impending plan confirmation deadline, "granting the [First 7023 Motion] may result in more chaos

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

than certainty" [Dkt. No. 5887 at 4] and on February 27, 2020, it denied the motion. [Dkt. No. 5943].

To remedy any lack of notice, the Court set April 16, 2020 (the "**Extended Securities Bar Date**"), as the deadline for securities claimants to file individual proofs of claim, subject to an approved form (the "**Rescission or Damage Proof of Claim Form**"). The Rescission or Damage Proof of Claim Form authorized investors that "purchased or acquired [PG&E's] publicly traded debt and/or equity securities . . . from April 29, 2015 through November 15, 2018" to submit an individualized claim and listed more than 60 of Debtors' securities which claimants could indicate they purchased on the form. (Bodnar Decl., Ex. 1 at 1.)

## II. The Court Orders Implementation of the Securities Claimant ADR Procedures

On June 20, 2020, the Court entered an Order confirming the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 (as amended and/or modified, the "**Plan**"). [Dkt. Nos. 8048, 8053]. The Plan designated three classes of subordinated securities claims: Class 9A – HoldCo Subordinated Debt Claims; Class 10A-II – HoldCo Recission or Damages Claims; and Class 10B – Utility Subordinated Debt Claims.[2] [Dkt. No. 8048 §§ 4.12, 4.14, 4.32]. Pursuant to the Plan, Class 9A and Class 10B Securities Claims were unimpaired as claimants in each class would receive cash in an amount equal to their allowed claims. (*Id.* §§ 4.12, 4.32.) Equity-based Securities Claims (Class 10A-II) were impaired, and would receive shares of New HoldCo common stock according to a formula contained in the Plan based on the amount of a claimant's allowed claim. (*Id.* §§ 1.109, 4.14.)

On September 1, 2020, Reorganized Debtors filed a Motion to Approve Securities ADR and Related Procedures For Resolving Subordinated Securities Claims (the "**ADR Procedures Motion**") [Dkt. No. 8964]. Among other things, the ADR Procedures Motion sought entry of an order that would establish efficient procedures for resolving the Securities Claims by requiring Securities Claimants to submit information regarding their securities trading (the "**Trading Data**") to Reorganized Debtors, who would then make settlement offers to the claimants and/or enter into

---

[2] Those parties with Securities Claims are referred to herein as "**Securities Claimants**."

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

mandatory non-binding mediation with them. (*Id.* at 2.) Reorganized Debtors represented to the Court in the ADR Procedures Motion that the "the Securities ADR Procedures are designed to facilitate prompt settlements with individual claimants as opposed to resolution of these claims on the merits." (*Id.* at 3-4.)

On September 28, 2020, Proposed Lead Plaintiffs again sought to introduce a class action procedure to resolve the Securities Claims. Specifically, Proposed Lead Plaintiffs filed a Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class (the "**Second 7023 Motion**") [Dkt. No. 9152]. In the Second 7023 Motion, Proposed Lead Plaintiffs argued that a class mechanism was "the only way that final resolution of all claims can be negotiated on a fair and collective basis," and sought to certify a mandatory class under either FRCP 23(b)(1)(A) or 23(b)(1)(B). (*Id.* at 2, § II.B.)

On November 18, 2020, the Court held a hearing to consider both the ADR Procedures Motion and the Second 7023 Motion. [Dkt. No. 9582]. At that hearing, counsel for Reorganized Debtors represented that the proposed ADR Procedures were the most efficient means of promptly and expeditiously resolving the Securities Claims. Reorganized Debtors' counsel explained there was no need for a class procedure or lead plaintiff given the number of individual proofs of claim that had been filed and the time Securities Claimants had taken to retain counsel and file their claims:

> This is not a punitive [sic] class action where you have absent shareholders. This is a situation very different, and it's a bankruptcy situation where people have actually filed proofs of claim. Hundreds if not thousands of them have filed these proofs of claim with their own counsel.
>
> And the idea that we are going to displace the judgment of individuals who have taken the time to file proofs of claim on their claims – they've said I have a claim, I was injured. ***The idea that we are going to displace their counsel and them and their judgment for PERA's judgment is just not appropriate***. Those people very well may have different views of their claims, the strengths. They may have different desires in terms of, you know, whether they want to settle now, whether they want to fight it out.

(Bodnar Decl., Ex. 2 at 44:9-23.)

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

On December 4, 2020, the Court issued an oral ruling granting the ADR Procedures Motion and denying the Second 7023 Motion [Dkt. No. 9752]. The Court noted:

> [W]e have a well-established process in the bankruptcy system, apart from the class action world where the securities fraud claimants' advocates live, that facilitates consensual resolution, mediation, and if necessary, the traditional claims objection process. The bankruptcy process seems as normal and familiar to the bankruptcy bench and bar as does the Rule 23 class action process to those who practice and adjudicate there. I prefer to stick with a well-tried and true regime in this forum.

(Bodnar Decl., Ex. 3 at 5:10-19.)

On January 25, 2021, the Court entered an Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claims (the "**Securities Claims Procedures Order**"). [Dkt. No. 10015]. The Securities Claims Procedures Order incorporated, as attachments, (1) Securities Claim Information Procedures (the "**Claim Information Procedures**") regarding the submission of trading data to the Reorganized Debtors by Securities Claimants, and (2) Securities ADR Procedures (the "**ADR Procedures**") "for facilitating the potential settlement of Subordinated Securities Claims, including, without limitation, (i) procedures to allow the Reorganized Debtors and the Subordinated Securities Claimants to exchange settlement offers, and (ii) procedures for both standard and abbreviated mandatory non-binding mediation of Subordinated Securities Claims …" [*Id.* at 1]. The Claim Information Procedures note that "[f]ollowing the timely return of a Trading Information Request Form," the Reorganized Debtors could "(i) make a settlement offer to a Subordinated Securities Claimant; (ii) designate the Subordinated Securities Claim(s) for mandatory mediation; or (iii) both." [Dkt. No. 10015-1 at 4].

### III. The RKS Claimants Act to Implement the ADR Procedures

On October 25, 2022, Reorganized Debtors filed their fifth motion seeking to extend the objection deadline (the **"Fifth Extension Motion"**), seeking a 270-day extension of the claims objection deadline. [Dkt. No 13122 at 1-2]. Certain of the RKS Claimants (the **"Kingstown Claimants"**), among others, objected to the Fifth Extension Motion (the "**Fifth Extension**

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1  **Objection"**).  [Dkt. Nos. 13163].  Prior to the hearing date on the Fifth Extension Motion, the

2  Kingstown Claimants (and other joining RKS Claimants) agreed to withdraw their objections and

3  joinders in exchange for Reorganized Debtors' agreement to mediate in good faith with the RKS

4  Claimants.  (Bodnar Decl. ¶¶ 4-5.)

5  On January 19, 2023, the RKS Claimants and Reorganized Debtors finally participated in

6  a mediation of the RKS Claimants' claims.  Although the parties dispute whether each negotiated

7  in good faith, all agree that the mediation was unsuccessful.  Following the failed mediation, the

8  RKS Claimants promptly moved this Court for an order enforcing the ADR Procedures and setting

9  a March 20, 2023 objection deadline specific to the RKS Claimants' claims (the **"Enforcement**

10  **Motion"**).  [Dkt. No. 13492].  In the Enforcement Motion, the RKS Claimants asked the Court to

11  hold Reorganized Debtors to the 60-day objection deadline contemplated by the ADR Procedures

12  following a failed mediation.  [Dkt. No. 13492 at 10-13].

13  On March 13, 2023, following a hearing, the Court issued an Order on the RKS Claimants'

14  Motion to Enforce the ADR Procedures Order (the **"Enforcement Order"**).  [Dkt. No. 13612].

15  The Enforcement Order set an April 17, 2023 deadline for Reorganized Debtors to send

16  individualized settlement offers to the RKS Claimants.  [Dkt. No. 13612 at 2.]  If those offers were

17  rejected, the Enforcement Order left to the Court's discretion "whether to bypass, enforce or

18  modify Securities ADR Procedures and fix a deadline other than the automatic 60-days . . . for

19  objections to the claims of the RKS Claimants." [*Id.* at 3.]  Finally, the Enforcement Order directed

20  Reorganized Debtors to propose in their upcoming motion to further extend the objection deadline

21  "any suggested changes they have to the Securities Claims Procedures" and "to address

22  specifically the RKS Claimants' issues," including whether the Court should "fix a prompt

23  deadline for the Reorganized Debtors to object to the RKS Claimants' claims" or otherwise

24  streamline the procedures for their claims.  [*Id.* at 4.]

25  Reorganized Debtors submitted individualized settlement offers to all the RKS

26  Claimants by the Court-ordered April 17, 2023 deadline, and nearly all of the RKS Claimants

27  received such offers.  Counsel for the RKS Claimants promptly presented those individual offers

28

to each of the clients who received them.  (Bodnar Decl. ¶ 10).  Six of the RKS Claimants accepted the offers they received, and another eight sent counteroffers to Reorganized Debtors, six of which were accepted.  (*Id.* ¶ 11).  The vast majority of the offers, however, were rejected without a counteroffer, as permitted by the ADR Procedures.  (*Id.* ¶ 12).

## IV.  The Sixth Extension Motion

In accordance with the Enforcement Order, Reorganized Debtors and the RKS Claimants submitted competing proposals for how to proceed with the ADR Procedures and claims allowance process in Reorganized Debtors' sixth request for an extension (the **"Sixth Extension Request"**), and the RKS Claimants' objection thereto.  [*See* Dkt. Nos. 13745, 13785].  On June 7, 2023, the Court held a hearing on Reorganized Debtors' Sixth Extension Request and the objections filed by the RKS Claimants and various other objecting Securities Claimants (together with the RKS Claimants, and not including PERA, the **"Objectors"**).  In addition to the Objectors, PERA had filed its own objection to the Sixth Extension Motion.  In addition to objecting to the Sixth Extension Motion, and Reorganized Debtors' proposed procedures going forward, PERA's counsel generally argued at the hearing that a Rule 7023 class would be beneficial moving forward.  The Court denied the Sixth Extension Request (though it extended the objection deadline for a shorter period than that requested by Reorganized Debtors), and did not adopt the procedures proposed by either Reorganized Debtors or the RKS Claimants.  Instead, the Court directed Reorganized Debtors, the Objectors, and PERA to meet and confer as to reasonable procedures to allow amendments to proofs of claim and coordinated initial case management of unresolved and objected to claims following the ADR Procedures.  (*See* Bodnar Decl., Ex. 4 at 73:1-74:10.)  The Court also told PERA's counsel it could file another 7023 motion if it wanted, but adding:

> But I believed then, and I still believe it for a lot of reasons, the bankruptcy claims process is preferable to the class action process, particularly in the situation where the plan in the PG&E case got confirmed so – I won't say easily or quickly, but relatively easily compared to others mega cases of this nature.  And as I stated during the argument, one of the things that makes me feel better about the process is the fact that people (audio interference), and these securities settlements can be implemented immediately.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10220

> And I think we have the tools in the toolbox under the claims objection process to work. Now, is it perfect, and is it perfect if there are still 1,000 disputed claims that are large and hotly contested? No, it's not perfect. But I'd like to think I and the debtors, over the objections of PERA and its counsel, chose a procedure that was more suited to the bankruptcy world, and I still believe that's true.

(*Id.* at 70:6-21.)

Following the hearing, Reorganized Debtors and the Objectors began meeting and conferring to fashion procedures consistent with the Court's directive. On July 18, 2023, after Reorganized Debtors and the Objectors reached agreement as to proposed amendment and objection procedures (as amended, the **"Amendment and Objection Procedures"**), Reorganized Debtors filed the procedures and a status conference statement with the Court in advance of a July 19, 2023 status conference. [*See* Dkt. Nos. 13907, 13909]. The Amendment and Objection Procedures, among other things, (1) establish an August 15, 2023 deadline by which Reorganized Debtors must make offers or file an omnibus objection as to all Securities Claims, (2) require all Securities Claims belonging to the Objectors to be scheduled for mediations commencing on or before September 29, 2023, (3) establish an October 6, 2023 deadline to file an amended proof of claim, and an October 13, 2023 deadline by which Securities Claimants can adopt other amended proofs of claim or PERA's District Court complaint, (4) establish a 60-day deadline for Reorganized Debtors to object to any amended proofs of claim, (5) provide for a process to adjudicate sufficiency objections, and (6) establish initial case management and discovery guidelines for contested claims. [*See* Dkt. No. 13909-1]. Following the status conference, the parties prepared a joint order regarding the Amendment and Objection Procedures, which was submitted to the Court on July 21, 2023 and is awaiting entry.

## **ARGUMENT**

### I. **The Court Should Not Reverse Its Prior Rulings and Now Sidetrack the Claims Resolution Process With a New and Unnecessary Class Procedure Just as the Claims Resolution Process is Beginning to Bear Fruit**

After a delayed start, the ADR Procedures are finally proceeding expeditiously, objection deadlines have been established, and a streamlined post-ADR Procedures claims allowance process is coming into play. Reorganized Debtors and the Objectors have agreed upon the

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Amendment and Objection Procedures and submitted them to be entered as an Order by the Court. These procedures will result in the application of the ADR Procedures to each Securities Claimant and they provide a roadmap for the commencement of a claims resolution process for those claims that are not resolved consensually. Now that the process is beginning to work, Proposed Lead Plaintiffs – for a third time – are attempting to introduce a confusing and unnecessary class procedure running parallel to the ADR Procedures and claims allowance process. In addition to the fact that Proposed Lead Plaintiffs are conflicted and cannot meet the requirements for class certification (*see* Section II, *infra*), the Court should not exercise its discretion to sidetrack the ADR Procedures and claims allowance process at this critical juncture.

While the decision as to whether to apply Rule 23 lies within the Court's discretion, "[Rule 23] is not … applied often" in bankruptcy cases. *Mortland v. Aughney*, 2011 WL 2653515, at *2 (N.D. Cal. July 6, 2011). In deciding whether to apply Rule 23 in the bankruptcy context, "courts have developed a three factor framework, known as the '*Musicland* factors,' to guide the exercise of their discretion." *In re Tea Station Investment, Inc.*, 2021 WL 4988436, at *5 (Bankr. C.D. Cal. Oct. 26, 2021). The *Musicland* factors are "(1) whether the class was certified pre-petition, … (2) whether members of the putative class received notice of the bar date, … and (3) whether class certification will adversely affect the administration of the case." *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007). "The first two considerations – pre-petition certification and notice of the bar date – are critical." *Id.* at 655. "The key question is 'whether the benefits of applying Rule 7023 (and Civil Rule 23) are superior to the benefits of the standard bankruptcy claims procedures.'" *Tea Station Investment*, 2021 WL 4988436, at *5 (quoting *Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012)). Only where the Court determines in its discretion that application of Rule 7023 is beneficial to the administration of bankruptcy proceedings will it then determine whether the requirements of Rule 23 have been met. *See id.*

In their third motion for class certification, the Proposed Lead Plaintiffs do not even address the *Musicland* factors, tacitly acknowledging they cannot be met. Indeed, the "critical" first two factors strongly militate against applying Rule 23. *First*, the class Proposed Lead Plaintiffs seek

to certify here was not certified pre-petition as the District Court Action being pursued by the Proposed Lead Plaintiffs was stayed prior to reaching the class certification stage. In fact, underscoring the unusual nature of this motion, the class *could not have existed* pre-petition because it is defined as including only those who filed proofs of claim in these Chapter 11 cases. In addition, the class that Proposed Lead Plaintiffs are attempting to certify in this Third 7023 Motion is materially *different from* the putative class in the District Court Action. As is discussed further below, the District Court Action putative class, and the class proposed in the Third 7023 Motion are in direct conflict – disqualifying the Proposed Lead Plaintiffs from representing the class they seek to lead here. Nonetheless, the fact that the two putative classes are separate and distinct from each other places the Proposed Lead Plaintiffs' Third 7023 Motion well beyond any possibility of fulfilling the first *Musicland* factor.

*Second*, the members of the putative class here all received notice of the bar date, as evidenced by the fact that the putative class is defined as including only those "who timely submitted Securities Claims in these Chapter 11 Cases, which Securities Claims have not otherwise been resolved." [Dkt. No. 13865-3 at 2]. This factor highlights how unusual – and unnecessary – the Proposed Lead Plaintiffs' Third 7023 Motion is coming more than three years after Plan confirmation and seeking to lead a class of claimants who have already filed proofs of claim and participated in the claims resolution process approved by the Court. The vast majority of 7023 motions (including the cases relied on by the Proposed Lead Plaintiffs) seek to protect absent class members by approving the filing of a class proof of claim. *See, e.g.*, *Gentry*, 668 F.3d 83, 89 (former employees of debtor sought to file "class proofs of claim" on behalf of unnamed absent former employees); *Tea Station Investment*, 2021 WL 4988436, at *1 (same); *Mortland*, 2011 WL 2653515, at *1 (same); *Musicland*, 362 B.R. at 647 (same). Indeed, the protection of absent creditors who have not received notice of the bar date is one of the primary benefits that can be achieved by certifying a class under Rule 7023. No such benefit will be achieved here. Proposed Lead Plaintiffs do not even propose to file a class proof of claim. In essence, the Proposed Lead Plaintiffs do not seek to lead a class, but rather to represent a group of claimants

ROLNICK KRAMER SADIGHI LLP<br>1251 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10020

who have already appeared and filed proofs of claim in this matter.  But the Court need not certify a class for that to occur.   Securities Claimants who believe their claims are best pursued collectively through the efforts of a single counsel (such as those who have filed Joinders to the Third 7023 Motion) are free to collectively retain the services of counsel of their choosing, including class counsel if they so wish.  (*See* Bodnar Decl., Ex. 3 at 8:7-14 ("If [the Securities Claimants] want the benefit of counsel … nothing prevents them from organizing collectively in selecting counsel on a group basis to represent their interests.").  Class treatment, however, is the wrong tool to handle already-filed claims of already-appearing creditors.

*Third*, implementing a class procedure now would be detrimental to the existing bankruptcy claims administration process.  The Third 7023 Motion primarily argues, as though it is a foregone conclusion, that class litigation will "promot[e] efficiency and a quick resolution of [the] Securities Claims."  [Dkt. No. 13865 at 8].  But "[t]he superiority and efficiency of the bankruptcy claims resolution process over class litigation is well established."  *See, e.g.*, *In re Circuit City Stores, Inc.*, 439 B.R. 652, 658 (E.D. Va. 2010), *aff'd sub nom*, *Gentry v. Siegel*, 668 F.3d 83 (4th Cir. 2012); *see also In re Ephedra Prods. Liability Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005) ("this superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost."); *Mortland*, 2011 WL 2653515, at *2 ("Many of the policy factors supporting class actions are absent in bankruptcy proceedings. … [T]he bankruptcy process is already efficient; it consolidates claims just as a class action does.").   The Court has repeatedly acknowledged as much, as recently as at the June 7, 2023 hearing on Reorganized Debtors' Sixth Extension Motion.  (Bodnar Decl., Ex. 4 at 70:6-16 ("But I believed then, and I still believe that for a lot of reasons, the bankruptcy claims process is preferable to the class action process … And I think we have the tools in the toolbox under the claims objection process to work."); *id.*, Ex. 3 at 5:10-15 ("I believe we have a well-established process in the bankruptcy system, apart from the class action world where the securities fraud claimants' advocates live, that facilitates consensual resolution, mediation, and if necessary, the traditional claims objections

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

process.").

Although some claimants who wish to remain passive have filed joinders for the 7023 process, they in fact gain nothing from such a procedure. The ADR Procedures implemented by this Court allow those who do not wish to actively resolve their claims to accept an early settlement with the Reorganized Debtors that is essentially identical to the recovery they would get in a class action (except that it is quicker, less costly and does not require them to pay a fee to class counsel).

Certifying a class now would unnecessarily throw a monkey wrench into an ADR and claims resolution process that is moving forward expeditiously and bearing fruit – thanks to the efforts of the RKS Claimants and Reorganized Debtors to move the process forward. Pursuant to the Amendment and Objection Procedures, by August 15, 2023, Reorganized Debtors will have extended settlement offers, or filed an omnibus objection, as to every outstanding Securities Claim. [Dkt. No. 13909-1 at 2]. All of the Objectors' Securities Claims will be scheduled for mediation beginning on or prior to September 29, 2023. (*Id.*) By the end of the year, all Securities Claimants will have had an opportunity to amend their proofs of claim, and Reorganized Debtors will have objected to all amended and un-amended proofs of claim, subject to the provisions of the ADR Procedures that may temporarily extend that deadline as to claims that are progressing through the ADR process. (*Id.*) Following the December 13, 2013 objection deadline, the Court will hold an initial case management conference and begin a coordinated claims allowance process for those claims that have been objected to and not otherwise resolved. (*Id.*) Thus, a clear path has now been established to resolve potentially thousands of claims by the end of this year and to begin a coordinated claims allowance process for those that remain unresolved – all without the need for a class procedure. The Proposed Lead Plaintiffs' unsupported statement that "only class proceedings can effectively litigate every alleged misstatement and omission with respect to every security at issue" is simply incorrect. The Court has the ability to coordinate the litigation of these issues and the Amendment and Objection Procedures, as well as the Local Rules, establish a process for litigating threshold legal issues pertaining to the Securities Claims.

That it has taken several years to get to this point is beside the point. The Court should not

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

allow the Proposed Lead Plaintiffs' to once again sidetrack the ADR Procedures, and the claims allowance process, just as they have begun to work. While the Proposed Lead Plaintiffs claim they "are not suggesting that ADR be completely abandoned," that will be the practical effect of certifying a class. As for claimants who do not opt out of the class through the rushed and information-deprived procedure suggested by the Proposed Lead Plaintiffs, it is unclear whether they will be able to receive individual offers or mediate their duly filed claims as "their counsel" will not represent them directly, but rather a class of claimants. Thus, certifying a class now may interfere with the opportunity for passive claimants to reach a negotiated resolution with Reorganized Debtors directly, a process that could greatly reduce the number of outstanding claims to be resolved through litigation.

The Proposed Lead Plaintiffs' proposed notice and opt-out procedures will also introduce confusion to this process and force claimants to make material decisions as to their claims with little information. Proposed Lead Plaintiffs propose a rushed notice process to distribute notice (that has yet to be prepared and proposed) to class members requiring them to opt out within 30 days or surrender their claims to the class. Class members will have to make this decision with limited information, not knowing, for instance, (1) whether they will have another opportunity to opt out if and when class counsel negotiates a class settlement, (2) what proportion of claimants will opt out (which will be a far greater proportion than is typical given the class is comprised of parties who have filed proofs of claim and, in many cases, retained counsel), (3) how the presence of a class alongside a significant number of opt-outs will affect the class's ability to direct and control litigation in the claims allowance process, (4) whether the class will be willing and able to settle the Securities Claims without obtaining a recovery for District Court putative class members who did not file proofs of claim, and (5) how much additional time it will take to receive payment through a class settlement that may have to be approved by both the Bankruptcy Court and the District Court and distributed through a claims administrator. There is simply no benefit to be gained from forcing the Securities Claimants to make a hurried decision as to whether to surrender control over their duly filed claims that would compensate for the harm and confusion that may

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

1    arise from forcing such a decision upon claimants who lack relevant information as to what the

2    consequences will be.

3        Finally, the one certainty in certifying a class is that it will substantially delay the ability

4    of Securities Claimants to obtain payment on their claims.  Class members may lose the autonomy

5    to settle their claims on agreeable terms and receive near-instant payment.  (*See, e.g.*, Bodnar Decl.

6    Ex. 4 at 71:5-9 ("[W]hat I like about the process that has worked is … that thousands of creditors

7    have – securities creditors have at least had some closure by having their claims allowed."); Ex. 3

8    at 7:8-10 ("[T]he order I will make, that will issue ultimately here, will make clear that accepting

9    offers will be honored and paid promptly.").  Simply put, a class procedure will unnecessarily add

10   months or even years to the amount of time between any potential settlement and distribution to

11   claimants in the class.  Any class settlement will have to be approved by this Court and will likely

12   require the approval of the District Court as well.  This process will take at least months and could

13   easily stretch on much longer.  Even following approval, payment will have to be distributed by a

14   claims administrator following a notice period.  In matters not involving the complicated

15   intersection of two separate classes in the Bankruptcy and District Courts, this process often results

16   in a delay of more than a year in receiving any settlement funds.  In addition, class counsel will

17   have to devise a plan of allocation that will favor certain securities purchasers over others, and will

18   almost certainly result in some class members receiving less than they would have in direct

19   negotiations with Reorganized Debtors.  But class members have no way of knowing in advance

20   who will be favored and disfavored.

21       The Court need not implement a new and twice-rejected class procedure just as the ADR

22   and claims resolution processes are moving ahead on a reasonable timetable.  The ADR Procedures

23   and the Amendment and Objection Procedures are most likely to resolve the greatest possible

24   number of Securities Claims before moving onto a manageable claims allowance process that will

25   be underway by the end of the year.  Parties that wish to band together to act collectively in that

26   process are free to do so, but, in order to do so, they need not (1) impede the in-place process, (2)

27   force claimants to quickly decide whether to surrender their claims to the class process without

28

adequate information, and (3) delay the payment of thousands of claims through a lengthy and unnecessary approval and claims administration process. The Court should exercise its discretion to decline to apply Rule 23.

## II. The Proposed Class Does Not Satisfy Rule 23 and Proposed Lead Plaintiffs Are Uniquely Incapable of Leading the Proposed Class

The Court need not determine whether the Rule 23 criteria are met because Proposed Lead Plaintiffs cannot satisfy the *Musicland* factors and the Court should decline to apply Rule 23. Nonetheless, if the Court were to apply Rule 23, it should deny the Third 7023 Motion because the Rule 23 criteria are not satisfied. As an initial matter, the Third 7023 Motion is based on lawyer argument and say-so, rather than on facts. The only factual material Proposed Lead Plaintiffs have placed before the Court on this Motion are the resumes of Proposed Lead Counsel. [*See* Dkt. No. 13866 (declaration attaching firm resumes)]. "Before it can certify a class, a district court must be 'satisfied, after a *rigorous analysis*, that the prerequisites' of both Rule 23(a) and 23(b)(3) have been satisfied." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (emphasis added) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "[P]laintiffs must *prove the facts necessary* to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale*, 31 F.4th at 665 (emphasis added). Here, Proposed Lead Plaintiffs have put virtually no factual record before the Court upon which it can perform a "rigorous analysis," and Proposed Lead Plaintiffs therefore fail to meet their burden of proof. Even if the Court were to consider the Third 7023 Motion absent a fact record, Proposed Lead Plaintiffs have failed to meet the requirements under Rules 23(a) and 23(b)(3) to certify a class here.

### a. Proposed Lead Plaintiffs Are Conflicted and Thus Uniquely Incapable of Adequately Representing a Putative Class

Rule 23(a)(4) provides that a class can be certified only if "the representative parties will fairly and adequately protect the interests of the class." "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interests with other class members and (2) will the named

plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988)). Here, Proposed Lead Plaintiffs are unique among the Securities Claimants in that they owe duties to absent parties competing with the Proposed Lead Plaintiffs to recover losses arising from Reorganized Debtors' securities fraud.

With a proverbial wave of the hand, Proposed Lead Plaintiffs merely state as though it is established fact that they and their counsel "have no known or actual potential conflicts of interest – and indeed, no interests antagonistic to – the other Securities Claimants." [Dkt. No. 13865 at 14]. This is not so. Proposed Lead Plaintiffs and their counsel owe fiduciary duties to the putative class they have proposed in the District Court Litigation, which includes an unknown number of claimants who have failed to file proofs of claim in these cases or, perhaps, whose proofs of claim have been disallowed. *See, e.g.*, *Moreno v. Autozone, Inc.*, 2007 WL 4287517, at *7 (N.D. Cal. Dec. 6, 2007 (discussing "heightened standard" putative class counsel is held to in representing absent putative class members). The Securities Claimants' interest in the bankruptcy proceedings is to maximize their recovery from Reorganized Debtors' available resources – to the exclusion of those who failed to file valid proofs of claim. Proposed Lead Plaintiffs and their counsel, however, owe a duty to putative class members in the District Court Action without valid proofs of claim to maximize their recovery – *i.e.*, to divert resources from Reorganized Debtors that otherwise may have been used to settle the Securities Claimants' claims to those who have not filed valid proofs of claim.[3] To illustrate, one can imagine a hypothetical scenario where, following class certification, class counsel negotiates with Reorganized Debtors and comes to believe the most they can obtain from Reorganized Debtors for a "global settlement" is $100 million. Class counsel (and Proposed Lead Plaintiffs) will be obligated to fashion a global settlement with that $100 million that diverts some portion of it to absent putative class members in the District Court Action, reducing the Securities Claimants' recovery to benefit those who did not file proofs of claim.

---

[3] Although the District Court Action claims are asserted against non-debtor directors and officers of Debtors, those claims are indemnified by Debtors, and the indemnification obligation was preserved in the Plan.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Notably, among all of the Securities Claimants and their counsel, *only* Proposed Lead Plaintiffs and class counsel would have this issue. Thus, even if the Court believed there may be some utility in certifying a class, Proposed Lead Plaintiffs and their counsel would be uniquely inadequate to pursue claims on behalf of the class.

**b. Proposed Lead Plaintiffs Cannot Meet Rule 23(a)'s Typicality Requirement**

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis*, 657 F.3d at 984. "'Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "'The certification of a class is questionable where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or to a subclass.'" *Hanon*, 976 F.2d at 508 (quoting *Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991)).

While Proposed Lead Plaintiffs note that they collectively are in each of the Plan classes the Securities Claimants fall within, they elide over the fact that Proposed Lead Plaintiffs only transacted in approximately 12 of the approximately 67 securities for which proofs of claim have been filed in these cases. As Reorganized Debtors correctly pointed out in opposing the Second 7023 Motion, "each Plan Class encompasses dozens of different securities with different attributes – such as different issuance dates, par values, coupon rates, and even the markets on which the securities were traded – that impact the relative value of the asserted claims." [Dkt. No. 9375 at 18]. It is apparent Reorganized Debtors intend to object on unique grounds to individual claims based, among other things, on the specific securities in which a Securities Claimant transacted and when they did so. Proposed Lead Plaintiffs will be unable to effectively assert defenses that *they do not have* to claims arising from securities *they never purchased*. Precisely for this reason, much of the litigation in the claims allowance process will involve claims and defenses unique to subclasses of which the Proposed Lead Plaintiffs are not members. Because Proposed Lead Plaintiffs never transacted in approximately 55 securities that other putative class members did

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

transact in, their claims are not typical of those of the putative class.[4]

### c. The Superiority Requirement of Rule 23(b)(3) Is Not Satisfied

The Third 7023 Motion seeks to certify a class under Rule 23(b)(3), which allows class certification where common questions of law or fact predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Proposed Lead Plaintiffs fail to meet their burden to establish superiority. As discussed in connection with the *Musicland* factors above, "[t]he superiority and efficiency of the bankruptcy claims resolution process over class litigation is well established." *Circuit City*, 439 B.R. at 658. Thus, the Court's presumption should be that, absent compelling proof to the contrary, the bankruptcy claims allowance process is superior to a class process. Proposed Lead Plaintiffs have presented no such compelling proof.

Rule 23(b)(3) provides the following considerations in determining whether a class action is superior: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the particular claims in the particular forum; and (D) the likely difficulties in managing a class action." Each of these factors cuts against certifying a class here.

The Court has previously noted the interest and ability of individual claimants to control and make decisions regarding their claims – including whether to accept or reject settlement offers, whether to retain counsel, and, as many claimants have done, whether to organize and retain counsel collectively. (*See* Bodnar Decl., Ex. 3 at 7:19-8:17.) Indeed, by surrendering their claims to the proposed class, claimants who have filed proofs of claim and begun engaging in the ADR Procedures may lose the ability to control and settle their claims as they see fit and – to an extent they may not understand – to receive prompt payment when their claims are settled.

Proposed Lead Plaintiffs argue the "second and third factors are satisfied because this Court is the only possible forum for claims against the Reorganized Debtors." [Dkt. No. 13865 at 19].

---

[4] While Proposed Lead Plaintiffs cannot satisfy the typicality requirement of Rule 23(a), the RKS Claimants do not dispute Proposed Lead Plaintiffs' standing.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

But this misses the point of these factors entirely. The putative class members have materially advanced their claims toward resolution by, among other things, filing proofs of claim, gathering and submitting trading data to Reorganized Debtors, forcing Reorganized Debtors to engage in the ADR Procedures, engaging in negotiations or mediations with Reorganized Debtors, and establishing preliminary procedures to address those claims to which Reorganized Debtors will object. By the time any litigation of claims commences, any remaining claimants will have received offers and made a considered decision to reject them. This process has advanced a long way and is now moving forward with appropriate momentum. Certifying a class now will place a roadblock in the path of this progress, confusing and delaying it. The desirability of litigating the claims in a particular forum does not tilt the field in favor of class superiority. The claims *are already* consolidated – and in fact, solely being pursued in – this forum. *See In re Ephedra Prods. Liability Litig.*, 329 B.R. at 9 ("[T]his superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost.").

The final factor strongly favors denying the Third 7023 Motion. While the Ninth Circuit has not expressly adopted a requirement of an "administratively feasible" way to identify class members – *i.e.*, an ascertainability requirement – it has not done so, in part, because such a requirement would be superfluous to Rule 23(b)(3)'s superiority requirement, and in particular the analysis of "likely difficulties in managing a class action." *See Walker v. Life Ins. Co. of the S.W.*, 953 F.3d 624, 632-33 (9th Cir. 2020). Here, there will likely be significant difficulties in ascertaining the members of the proposed class. The proposed class definition is:

> [A]ll those who purchased or otherwise acquired the publicly traded debt or equity securities of PG&E Corporation, Pacific Gas and Electric Company, or both, from April 29, 2015 through November 15, 2018 (inclusive), and who timely submitted Securities Claims in these Chapter 11 Cases, which Securities Claims have not otherwise been resolved.

[Dkt. No. 13865-3].

This definition raises significant ascertainability concerns, which will lead to significant difficulties in managing a class action. First, the definition raises the question of what claims were

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

"timely submitted." Reorganized Debtors have repeatedly raised questions as to the timeliness of numerous claims filed by Securities Claimants or their representatives, and will likely object to many proofs of claim on that basis. What are the implications for class membership? Does this include claims amended after the bar date? Will the Court have to hold hearings as to each such claimant to determine whether the claimant falls within the class definition? Will class counsel advocate for the timeliness of individual claims where timeliness is disputed by Reorganized Debtors? Which claimants' claims have been "otherwise resolved?" Would that include claimants like the DRRT claimants whose claims were disallowed in an omnibus objection asserting an improper statute of repose for certain bond claims? [*See, e.g.*, Dkt. No. 13680 (District Court Order reversing grant of DRRT's motion seeking relief from orders on 11th and 13th Omnibus Objections, and remanding for further proceedings)]. To what extent will class counsel represent class members whose claims have been "resolved" by being improperly disallowed? Will class counsel appeal rulings disallowing individual class members' claims? Proposed Lead Plaintiffs fail to address any of these issues in the Third 7023 Motion.

Resolving these questions – which are wholly unnecessary absent implementation of a class procedure – will only add to the already considerable difficulty in managing the proposed class action alongside the ongoing ADR Procedures and Amendment and Objection Procedures.

## **CONCLUSION**

For the foregoing reasons, the RKS Claimants respectfully request that the Court deny the Third 7023 Motion.

Dated: July 25, 2023

ROLNICK KRAMER SADIGHI LLP

By:   */s/ Richard A. Bodnar*

*Attorneys for the RKS Claimants*