WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Bankruptcy Case No. 19-30088 (DM)

Chapter 11 (Lead Case) (Jointly Administered)

**REORGANIZED DEBTORS' OBJECTION TO SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS**

Date: August 8, 2023
Time: 10:00 a.m. (Pacific Time)
Place: (Tele/Videoconference Appearances Only)
United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF CONTENTS

Page

I.   PERA FAILS TO SATISFY THE MUSICLAND FACTORS NECESSARY FOR APPLICATION OF RULE 7023 .......................................................................................11

A.   There Was no Pre-Petition Certified Class ................................................12

B.   Each Putative Class Member Received Notice of the Bar Date ................................12

C.   Granting the Third 7023 Motion Would Materially And Adversely Affect the Administration of the Estate ...............................................................................14

II.  THE 7023 MOTION IS BARRED BY LAW OF THE CASE ................................................19

III. THE PROPOSED CLASS MOTION WOULD NEED TO BE ADJOURNED FOR AN EXTENSIVE PERIOD WHILE CLASS DISCOVERY IS TAKEN AND THE REORGANIZED DEBTORS CHALLENGE THE PRESUMPTION OF RELIANCE .........20

IV.  EVEN BASED ON THE CURRENT RECORD, THE CIVIL RULE 23 MOTION FAILS ...............................................................................................................21

A.   The Proposed Class Fails to Satisfy Civil Rule 23(a)................................................21

1.   Joinder is Practicable in the Chapter 11 Cases ................................................21

2.   PERA's Claims are Not Typical of the Proposed 7023 Class ..............................22

3.   PERA Cannot Adequately Represent the Interests of the Class Because it has Massive Numerous Conflicts Representing Different but Overlapping Classes in Different Courts...................................................................................................22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Am. Realty Cap. Properties, Inc. Litig.*,
Case No. 15-mc-40 (AKH) (S.D.N.Y. Jan. 25, 2017) ................................................... 20

*Arizona v. California*,
460 U.S. 605 (1983) .......................................................................................................... 19

*In re Aughney*,
No. 10-12666, 2011 WL 479010 (Bankr. N.D. Cal. Feb. 4, 2011) ................................. 11

*Bailey v. Jamesway Corp. (In re Jamesway Corp.)*,
1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997) ........................................................ 12

*In re Bally Total Fitness of Greater N.Y., Inc.*,
402 B.R. 616 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) .............. 11, 13, 17, 26

*Bennett v. GoDaddy.com, LLC*,
Case No. 2:16-cv-03908-DLR (D. Ariz. Jan. 20, 2017) ................................................. 20

*Besinga v. United States*,
923 F.2d 133 (9th Cir. 1991) ........................................................................................... 17

*In re Circuit City Stores, Inc.*,
2010 WL 2208014 (Bankr. E.D. Va. May 28, 2010), *aff'd sub nom. Gentry v. Circuit
City Stores, Inc. (In re Circuit City Stores, Inc.)*, 439 B.R. 652 (E.D. Va. 2010), *aff'd*,
668 F.3d 83 (4th Cir. 2012) ............................................................................................. 13

*In re Clorox Consumer Litig.*,
301 F.R.D. 436 (N.D. Cal. 2014) ..................................................................................... 22

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........................................................................................................... 20

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
141 S. Ct. 1951 (2021) ................................................................................................... 4, 20

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ......................................................................................................... 20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ............................................................. 20

*Kottler v. Deutsche Bank AG*,
2010 WL 1221809 ............................................................................................................ 27

*Laventhol et al. v. Horwitch*,
637 F.2d 672 (9th Cir. 1980) ............................................................................................. 6

ii

*In re Lehman Bros. Sec. & ERISA Litig.*,
 684 F. Supp. 2d 485 (S.D.N.Y. 2010), *aff'd sub nom. In re Lehman Bros. Mortg.-*
 *Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011) ......................................................... 26

*Ludlow v. BP, P.L.C.*,
 800 F. 3d 674 (5th Cir. 2015) ........................................................................................ 4

*In re Major Model Mgmt. Inc.*,
 641 B.R. 302 (Bankr. S.D.N.Y. 2022) .................................................................. 11, 13

*In re McDermott Int'l, Inc. Sec. Litig.*,
 2009 WL 1010039 (S.D.N.Y. Apr. 13, 2009) ............................................................. 20

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
 902 F.2d 703 (9th Cir. 1990) ....................................................................................... 19

*Moreno v. Autozone, Inc.*,
 No. C05-04432 MJJ, 2007 WL 4287517 (Dec. 6, 2007) ..................................... 24, 25

*In re Motors Liquidation Co.*,
 447 B.R. 150 (Bankr. S.D.N.Y. 2011) ......................................................................... 12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ..................................................... 17

*Musacchio v. United States*,
 577 U.S. 237 (2016) ..................................................................................................... 19

*In re Musicland Holding Corp.*,
 362 B.R. 644 (Bankr. S.D.N.Y. 2007) .................................................................. *passim*

*In re PG&E Corp.*,
 No. 20-CV-04567 HSG (N.D. Cal Mar. 9, 2021) ........................................................ 23

*In re PG&E Corp. Securities Litig.*,
 Case No. 18-CV-03509 (N.D. Cal.) ....................................................................... *passim*

*In re PG&E Corporation Securities Litigation*,
 Case No. 22-16711 (9th Cir. 2023) ........................................................................ 6, 24

*Smith v. Levine Leichtman Cap. Partners, Inc.*,
 No. C 10-00010 JSW, 2011 WL 13153123 (N.D. Cal. Mar. 9, 2011) ................... 23, 25

*Sullivan v. Chase Inv. Servs. of Bos., Inc.*,
 79 F.R.D. 246 (N.D. Cal. 1978) ................................................................................... 25

*Troice v. Proskauer Rose LLP*,
 Case No. 3:09-cv-01600-N-BG (N.D. Tex. Sept. 16, 2014) ........................................ 21

*United States v. Orrock*,
 2020 WL 2199620 (D. Nev. May 5, 2020) ................................................................... 11

*In re Verity Health Sys. of Cal.*,
 2:18-bk-20151-ER, 2019 WL 2896189 (Bankr. C.D. Cal. May 24, 2019) ............. 11, 12

iii

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prods. Liab. Litig.*,
  2017 WL 3058563 (N.D. Cal. July 19, 2017) ................................................................. 22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................................................... 20

*In re Wildwood Vills., LLC*,
  2021 WL 1784408 (M.D. Fla. May 4, 2021) ................................................................... 13

*Yoon v. Gap, Inc.*,
  2010 WL 11597565 (C.D. Cal. Oct. 6, 2010) ................................................................. 22

*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007) .......................................................................................... 11

**Statutes**

Securities Act ......................................................................................................................... 6

Securities Act of 1933, the Exchange Act of 1934 ................................................................. 5

**Other Authorities**

Bankruptcy Rule 7023 ................................................................................................... *passim*

18B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4478.1 (2d ed. 2020) ...................... 19

Civil Rule 23 ................................................................................................................. *passim*

Civil Rule 23(a) ........................................................................................................... 21, 26

Civil Rule 23(b) .................................................................................................................. 26

Civil Rule 23(b)(1)(A) ........................................................................................................... 7

Civil Rule 23(b)(3): (a) ....................................................................................................... 26

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 21

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 22

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 26, 27

*Securities Class Action Settlements – 2022 Review and Analysis*, Cornerstone Research,
  at 13, https://securities.stanford.edu/research-reports/1996-2022/Securities-Class-
  Action-Settlements-2022-Review-and-Analysis.pdf ........................................................ 17

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

iv

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**HoldCo**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and reorganized debtors (collectively, the "**Debtors**" and as reorganized pursuant to the Plan (defined below), the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Objection (the "**Objection**") to the *Securities Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Motion for the Application of Bankruptcy Rule 7023 and the Certification of a Class of Securities Claimants* [Dkt. No. 13865] (the "**Third 7023 Motion**" or "**7023 Motion**"),[1] filed by the Public Employees Retirement Association of New Mexico ("**PERA**").[2]

In support of the Objection, the Debtors submit the *Declaration of Robb McWilliams in Support of Reorganized Debtors' Objection to Securities Plaintiffs' Motion for the Application of Bankruptcy Rule 7023 and the Certification of a Class of Securities Claimants*, filed concurrently herewith.

## PRELIMINARY STATEMENT

As this Court recently stated:

> I believed [when denying the Second 7023 Motion], and I still believe that for a lot of reasons, the bankruptcy claims process is preferable to the class action process . . . And as I stated during the argument, one of the things that makes me feel better about the process is the fact that people (audio interference), and these securities settlements can be implemented immediately . . . I'd like to think I and the debtors, over the objections of PERA and its counsel, chose a procedure that was more suited to the bankruptcy world, and *I still believe that's true*.

June 7, 2023 Hr'g Tr. at 70:6-21 (emphasis supplied).

The Court should deny PERA's 7023 Motion for the third time. Certifying a class now would not only be disruptive; it would delay and complicate the careful process long underway, and it would be expensive, particularly for smaller claimants. For starters, it is not workable to adopt a class action and insert it into the middle of the Securities ADR Procedures adopted by the Court. It is not fair

---

[1] The Objection also responds to all joinders to the 7023 Motion, filed at Dkt. Nos. 13869, 13895-13901, 13904-13906, 13908, 13913, and 13916.

[2] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (as it may be amended, modified, or supplemented and together with any exhibits or schedules thereto, the "**Plan**") or the *Securities ADR and Related Procedures for Resolving Subordinated Claims* (the "**Securities ADR Procedures**"), as applicable.

- 1 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

fundamentally to the thousands of parties (including the Reorganized Debtors) who took steps and spent money based on the Court-ordered Securities ADR Procedures. In addition, a new "class action" would be inconsistent with continuing to pursue the procedures—for example, the pursuit of individual settlement negotiations and mediations with individual claimants. A class action will slow the resolution process, potentially to a halt, not speed it up. Notice will need to be drafted, approved by the Court, and then provided to all claimants – a process that will take considerable time given the inevitable disputes over the substance and scope of any such notice. Securities Claimants would then need time to opt into any class. Nobody will know for at least many months who is in the class or who is not in the class – putting all else on hold. All of this will create confusion among claimants and will not result in any additional resolution of claims.

Perhaps more importantly, the process for approving a class in securities litigations under Civil Rule 23 involves significant discovery and expert witness testimony about whether a class is proper at all. The Reorganized Debtors believe it is not, and Supreme Court precedent makes clear that due process requires that they be given the opportunity to robustly challenge a Civil Rule 23 motion after discovery and with expert testimony. A class certification process run in accordance with Supreme Court authority would result in at least six to nine months of significant discovery, briefing, and likely a trial on class issues.

Moreover, the certification of a class will ensure that PERA's counsel receives some significant percentage of any settlement or litigation recovery otherwise payable to Securities Claimants. Under the Securities ADR Procedures, however, there is no such payment. Any thought that a quick settlement will be forthcoming with class counsel is dispelled by the fact that, as the Court is well aware, the Reorganized Debtors and PERA engaged in negotiations for the better part of a year without any settlement. In stark contrast, the Securities ADR Procedures have already led to the resolution of 5,299 claims (approximately 60% of the Securities Claims filed) of which approximately 3,200 Securities Claims were resolved by settlements—and none of these claimants were forced to share any of their recovery with class counsel.

- 2 -

Fortunately, there is an easy solution for every claimant that wishes to be treated as part of a group led by PERA. It can simply hire PERA's counsel to represent it based on whatever fee agreement they wish, and the Reorganized Debtors will then negotiate litigation procedures with PERA's counsel in the same way that procedures were negotiated with the RKS Claimants, the Oregon Claimants, Chevron and Baupost. Indeed, the Court has already held as much, stating:

> If [Securities Claimants] want the benefit of counsel, either at the outset of the offer acceptance process or later, when faced with mediation, nothing prevents them from organizing collectively in selecting counsel on a group basis to represent their interests.

Dec. 4, 2020 Hr'g Tr. at 8:7-11.

The Court should therefore deny the 7023 Motion on three primary grounds. *First*, the 7023 Motion is deficient as a matter of law. As this Court is aware, under well-settled bankruptcy authority, a claimant seeking to represent a class in Bankruptcy *must* first satisfy the *Musicland* factors. The 7023 Motion does not even mention the *Musicland* factors or attempt to apply them, and the reason is obvious: PERA cannot satisfy any of them. The sole factor that the Court found weighed in PERA's favor on PERA's First 7023 Motion—whether all potential claimants were served with notice of the bar date—now weighs in PG&E's favor. Pursuant to this Court's orders, every Securities Claimant received actual notice of the Extended Bar Date and those that chose to do so have already submitted proofs of claim. PERA cannot point to a single instance where a Bankruptcy Court has certified a proposed class after claimants received *actual* notice of the relevant bar date and *had all already filed individual proofs of claim*. There is good reason for this. In such circumstances, the universe of proposed claims is known, there are no unknown creditors to protect, and the Bankruptcy Court is well-equipped to handle the administration of large volumes of claims in an efficient manner. By contrast, the class process adds costly and time-consuming layers of procedural and factual complexities, which will delay any payment on the remaining unresolved Securities Claims for years.

*Second*, as discussed above, while the 7023 Motion addresses the requirements of Civil Rule 23, the parties have not undertaken the significant discovery that would be required to actually litigate a class certification motion with respect to a securities litigation. The Reorganized Debtors are entitled to test PERA's assertion that the requirements of Civil Rule 23 have been met, including discovery into

- 3 -

the adequacy of the proposed class representative and class counsel. Perhaps more importantly, the Reorganized Debtors are permitted to challenge at the class certification stage the ability of the plaintiffs to use a presumption of reliance especially where, as here, there are scores of different securities that encompass the proposed class, most of which PERA never traded in or otherwise acquired, with purchasers that bought over a lengthy period and had significantly different information, given the intervening wildfires, public regulatory and criminal findings, and company disclosures. Indeed, the United States Supreme Court has held that "a court has an obligation before certifying a class to determine that Rule 23 is satisfied, even when that requires inquiry into the merits. And under *Halliburton II*, a court cannot conclude that Rule 23's requirements are satisfied without considering all evidence relevant to price impact." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1960-61 (2021) (internal citations and quotations omitted); *see also Ludlow v. BP, P.L.C.*, 800 F. 3d 674, 690-91 (5th Cir. 2015) ("[T]he theory of damages must be consistent with the liability case, and the district court is required to conduct a rigorous analysis at the class certification stage to determine whether that is so.") (internal quotations omitted). If the Court does not dispose of the 7023 Motion under the preliminary *Musicland* factors or the failure of the Rule 23 factors on their face, it would then need to hold a conference to set a schedule for discovery and experts for a class certification motion.

*Third*, even as the record stands now, PERA cannot fulfill the exacting requirements of Civil Rule 23. PERA, and its counsel, are entirely unsuited to represent the proposed class under the standard set forth by Civil Rule 23. PERA is inherently conflicted. PERA already seeks to represent a different class of individuals in the Securities Litigation (as defined below) in the District Court, which it asserts is not coextensive with the class PERA seeks to certify in these proceedings. Indeed, as detailed below, there are very real conflicts between the putative classes.

PERA's suggestion that certification of a class proof of claim is the only way to achieve an orderly, coordinated approach to resolving the outstanding Securities Claims is belied by the progress to date and the comprehensive agreement reached on a go-forward schedule. The Securities ADR Procedures already have achieved the resolution of 5,299 Securities Claims. And the Reorganized

- 4 -

Debtors have reached agreement with certain Securities Claimants on a set of procedures which will allow for an orderly and efficient process to allow all Securities Claimants to amend proofs of claim, allow the settlement procedures of the Securities ADR Procedures to continue, and then, allow the Court to determine whether the unresolved Securities Claims are sufficient to state legally cognizable claims against the Reorganized Debtors under federal securities laws before forcing the parties into costly and time-consuming merits discovery. These Amendment and Objection Procedures are simply incompatible with class certification. The Court should decline to certify a class proof of claim and, instead, allow the Securities ADR Procedures and the newly agreed-upon Amendment and Objection Procedures to continue.

## BACKGROUND

### A. The Securities Litigation

PERA is the lead plaintiff in a putative securities class action pending in the U.S. District Court for the Northern District of California, *In re PG&E Corp. Securities Litig.*, Case No. 18-CV-03509 (N.D. Cal.) (the "**Securities Litigation**"). The operative complaint in the Securities Litigation asserts claims against the Reorganized Debtors' former directors and officers (the "**Individual Defendants**") and underwriters of certain of the Debtors' notes offerings (the "**Underwriters**"), under the Securities Act of 1933, the Exchange Act of 1934, and SEC Rule 10b-5.[3] The Securities Litigation amended complaint makes allegations concerning just eight[4] of the Debtors' notes and equity securities during the putative class period. *See* PERA Complaint.

---

[3] *See* Sec. Litig. Dkt. No. 121 (the "**PERA Complaint**").

[4] The PERA complaint makes allegations solely with respect to the following eight securities: (i) PG&E common stock, (ii) 2.95% Senior Notes due March 1, 2026 (March 2016 notes offering), (iii) 1.51778% (floating rate) Senior Notes due November 30, 2017, (iv) 4% Senior Notes due December 1, 2046 (December 2016 and March 2017 notes offerings), (v) 3.30% Senior Notes due March 15, 2027 (March 2017 notes offering), (vi) 2.541388% (floating rate) Senior Notes due November 28, 2018, (vii) 3.30% Senior Notes due December 1, 2027 (April 2018 exchange offer), and (viii) 3.95% Senior Notes due December 1, 2047 (April 2018 exchange offer). *See, e.g.*, *id.* ¶¶ 496 n. 149, 502.

In contrast, proofs of claim have been filed with respect to at least 67 different securities.

- 5 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The pool of insurance money to satisfy potential recoveries in the Securities Litigation is limited. Moreover, while the Individual Defendants claim to have indemnification from the Reorganized Debtors, public policy prevents the Reorganized Debtors from indemnifying the Individual Defendants from securities liabilities. *See, e.g., Laventhol et al. v. Horwitch*, 637 F.2d 672, 676 (9th Cir. 1980) ("[T]he purpose of the [Securities Act] is regulatory rather than compensatory, and permitting indemnity would undermine the statutory purpose of assuring diligent performance of duty and deterring negligence."). PERA has taken the position that the putative class in the Securities Litigation is not coextensive with those Securities Claimants who filed proofs of Claim in the Bankruptcy. *In re PG&E Corporation Securities Litigation*, Case No. 22-16711 (9th Cir. 2023) Reply Brief for Plaintiffs-Appellants at 7 ("[N]umerous class members in this action did not file claims in the PG&E bankruptcy case."). Any equity holders who are part of the putative class in the Securities Litigation, but did not file proofs of claim in the bankruptcy, would have very limited funds from which to collect and have an interest in preserving any insurance proceeds for the Securities Litigation. Securities Claimants in the claims process, however, have an interest in maximizing insurance available for payments from the Reorganized Debtors as part of negotiated settlements in the Chapter 11 Cases.

## B. PERA's Original Rule 7023 Motion

On July 1, 2019, after extensive briefing and argument from the various constituencies, this Court established October 21, 2019 as the last date to file proofs of claim in the Chapter 11 Cases. Nearly two months after the Bar Date, on December 9, 2019, PERA filed the *Securities Lead Plaintiff's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim* [Dkt. No. 5042] (the "**First 7023 Motion**"). The First 7023 Motion defined the putative class as "the proposed class [PERA] represents in the Securities Litigation." *See* First 7023 Motion at 7.

Following two rounds of briefing and extensive argument at two separate hearings, this Court denied the 7023 Motion in favor of extending the Bar Date to allow absent class members to file individual proofs of claim. *See Memorandum Decision Regarding Motion to Apply Rule 7023* [Dkt. No. 5887] at 5 (the "**7023 Decision**"). Pursuant to that decision, the Court expressly held that "Because Debtors did not make a reasonable effort to give actual notice to class members of the claims bar date,

- 6 -

the court will extend the bar date for this group of creditors." *Id*. at 4. PERA explicitly sought to defer consideration of the Civil Rule 23 requirements and the Court did not address them in its ruling. *See id.* at 3. The 7023 Decision addressed the threshold question of whether it would be an appropriate use of the Court's discretion to apply Bankruptcy Rule 7023. By declining to do so, the Court, in its discretion, decided that providing each current and former securities holder the opportunity to determine for themselves whether to file individual proofs of claim would better serve the administration of the estates than class certification under any provision of Civil Rule 23. 7023 Decision at 5. As the Court will recall, PERA was involved in developing the notice provided to former securities holders.

## C. The Securities Claims Procedures and PERA's Second 7023 Motion

On September 1, 2020, the Reorganized Debtors filed a motion seeking to adopt procedures in aid of the resolution of the Securities Claims. *See Reorganized Debtors' Motion to Approve Securities ADR and Related Procedures for Resolving Subordinated Securities Claims* [Dkt. No. 8964] (the "**Securities ADR Procedures Motion**"). Shortly thereafter, on September 28, 2020, PERA filed its second 7023 Motion. *See Memorandum of Points and Authorities in Support of Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* [Dkt. No. 9152] (the "**Second 7023 Motion**").

The Second 7023 Motion sought to certify a mandatory, non-opt-out class of Equity Claimants under Civil Rule 23(b)(1)(A). *See* Second 7023 Motion at 9, 15-20. The Second 7023 Motion also sought to certify a subclass compromised only of Debt Claims, in apparent recognition that the interests of these groups are not sufficiently aligned so as to render class certification appropriate—a proposal PERA raises once again in the 7023 Motion. *Compare* Second 7023 Motion at 9 n.3; 7023 Motion at 10 n.5.

Multiple parties submitted extensive briefing with respect to both the Securities ADR Procedures Motion and Second 7023 Motion, and the Court held a hearing on November 18, 2023 and heard argument. On December 4, 2020, the Court issued an oral ruling denying the Second 7023 Motion in favor of the Securities ADR Procedures. *See* Dec. 4, 2020 Hr'g Tr. First, the Court noted

- 7 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

that the Securities ADR Procedures were similar to ADR procedures already implemented in the bankruptcy with respect to the General Claims. *Id.* at 4:10-15.

Second, the Court held that, in rejecting the First 7023 Motion, the Court had invited Securities Claimants to submit individualized proofs of claim in lieu of certifying a class and that to reverse course would introduce confusion. *Id.* at 5:3-9 ("Going back to a variance on what was rejected before might well cause confusion, particularly for those who did not file claims the first time, and might well cause one to question why the Court is changing horses in the middle of the stream.").

Third, the Court held that, unlike a class-based resolution, individualized resolution of the Securities Claims through the Securities ADR Procedures would allow individual Securities Claimants to settle with the Reorganized Debtors quickly and inexpensively without waiting for a class-wide resolution and without paying a portion of any recovery to class counsel. *Id.* at 6:21-7:10 ("The ADR procedures suggested by the reorganized debtors have the appeal of assuring some claimants will have an opportunity to recover some of their losses quickly and inexpensively.").

Finally, the Court held that individual claimants were more than capable of protecting their own interests in pursuing individualized resolution of their Securities Claims. The Court stated:

> I further reject the notion that somehow investors, whether they be individuals or institutions, who were able to make their own investment choices for purchasing the company's stock or debt years ago, are somehow unable to make their own decisions whether to accept a recovery on some portion of what they spent when they made those investment decisions . . . am not going to assume that they are so unsophisticated, innocent babes in the woods who can't make their own decisions now.

Dec. 4, 2020 Hr'g Tr. at 7:19-8:4.

The Court also noted that the Securities Claimants were capable of making their own decisions with respect to whether to retain counsel, including whether to select counsel to represent their interests on a group basis. *Id.* at 8:7-11.

On January 25, 2021, the Court entered the Securities ADR Procedures to facilitate the resolution of the Securities Claims.

- 8 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**D.      The Securities ADR Procedures Have Worked, and Continue to Work**

Following the Court's decision to reject the second 7023 Motion, the Reorganized Debtors and thousands of claimants have taken steps to actively implement the Securities ADR Procedures at great time and effort.

Consistent with the Securities ADR Procedures, the Reorganized Debtors promptly distributed Trading Information Request Forms after the Securities ADR Procedures were implemented. The Reorganized Debtors established, at great expense, a web-based process for claimants to submit data that allowed for the efficient identification of trading information deficiencies and the prompt submission by claimants of information to correct these deficiencies. *See* Dkt. No. 13746 at 3.

The Reorganized Debtors also created a web site to manage the settlement offer process for Securities Claims. *See* Dkt. No. 13747. Upon issuing a settlement offer, the Reorganized Debtors typically reached out to Securities Claimants by mail and by phone multiple times to remind Securities Claimants to view their settlement offers and provide a response.

These efforts have paid off. As of July 21, 2023, 5,299 Securities Claims have been resolved through objections, settlements, and claim withdrawals, or otherwise resolved through the Securities ADR Procedures—which represents approximately 60% of the securities proofs of claim filed. The Reorganized Debtors have now issued settlement offers with respect to 5,618 Securities Claims and expect to issue all remaining settlement offers by August 15, 2023. As a result of the Reorganized Debtors' settlement offers, approximately 3,200 Securities Claims have been settled.    Indeed, in the short time since the hearing on the Motion to Extend (defined below) on June 7, 2023, the Reorganized Debtors have settled another 411 Securities Claims.

Securities Claimants continue to settle their claims under the Offer Procedures. The Court has also appointed panels of experienced mediators and the Reorganized Debtors have begun noticing mediations under the Mediation Procedures which will likely lead to additional settlements. In short, the Securities ADR Procedures have been very successful and are still in process for thousands of Securities Claimants. Securities Claimants have realized the benefits that the Court noted when selecting the Securities ADR Procedures over the Second 7023 Motion—an opportunity to individually

resolve their claims and recover without waiting for a class-based resolution and without the necessity of paying a large percentage of their recovery to class counsel.

### E.     The Claims Objection Deadline

On May 17, 2023, the Reorganized Debtors filed a further motion to extend the objection deadline. *See Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* [Dkt. No. 13745] (the "**Motion to Extend**"). Numerous parties objected (the "**Objectors**"). Shortly thereafter, on June 7, 2023, this Court held a hearing on the Motion to Extend.  At the hearing, the Court ordered the Reorganized Debtors and those parties who had filed objections or other filings in connection with the Motion to Extend to meet and confer as to procedures regarding amendment and objections with respect to the remaining Securities Claims.

At the hearing on the Motion to Extend, PERA sought an order where the Court would invite a Rule 7023 motion and argued once again for a class action instead of adopting more typical bankruptcy procedures for resolution of the remaining Securities Claims. The Court once again expressed a clear preference for allowing the Securities ADR Procedures to proceed over a third PERA 7023 motion, but stated it would not stop PERA from filing another 7023 motion. June 7, 2023 Hr'g Tr. at 70:6-21.

### F.     The Third PERA 7023 Motion

On July 7, 2023, PERA filed the Third 7023 Motion seeking to certify an opt-out class of Securities Claimants. There is nothing new. If a class was not the preferred method to resolve Securities Claims three years ago, it is certainly not appropriate after (i) the Securities ADR Procedures have proven to be effective in resolving approximately 60% of the outstanding securities claims, with more than 3,200 claims settled, and (ii) the Amendment and Objection Procedures have recently been approved by the Court.  The Third 7023 Motion ignores these critical factors and (a) the *Musicland* factors; (b) Supreme Court authority that permits defendants to challenge the presumption of reliance at the class certification stage after discovery and expert testimony; (c) other discovery of the proposed class representatives to which defendants are entitled before a class can be certified; (d) the extensive delay any class procedure will add to the resolution of claims; and (e) the success of the existing bankruptcy procedures adopted by the Court.

- 10 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**ARGUMENT**

## I. PERA FAILS TO SATISFY THE *MUSICLAND* FACTORS NECESSARY FOR APPLICATION OF RULE 7023

Tellingly, PERA fails to address the *Musicland* framework.[5] All three *Musicland* factors weigh heavily against certifying a class proof of claim and this Court should, for a third time, reject PERA's Motion.

There is no absolute right to file a class proof of claim under the Bankruptcy Code. *See In re Aughney*, No. 10-12666, 2011 WL 479010, at *1 (Bankr. N.D. Cal. Feb. 4, 2011); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 619-20 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *In re Musicland Holding Corp.*, 362 B.R. 644, 650 (Bankr. S.D.N.Y. 2007) (application of Civil Rule 23 is not automatic). Because many of the policy factors supporting class actions are absent in bankruptcy proceedings, class certification is often less desirable in bankruptcy than in other civil litigation. *In re Major Model Mgmt. Inc.*, 641 B.R. 302, 306 (Bankr. S.D.N.Y. 2022).

Accordingly, a movant seeking class certification must first establish that it is beneficial to apply Bankruptcy Rule 7023 to the claims administration process under the three-factor test set forth in *In re Musicland*, 362 B.R. at 654; 7023 Decision at 3. The *Musicland* factors ask whether: (i) the class was certified pre-petition; (ii) members of the putative class received actual or constructive notice of the bar date; and (iii) class certification will adversely affect the administration of the estate. *Id*. Only if the Court determines that it is appropriate to apply Bankruptcy Rule 7023 does the Court then proceed to determine whether the requirements of Civil Rule 23 have also been satisfied. *In re Verity Health Sys. of Cal.*, 2:18-bk-20151-ER, 2019 WL 2896189, at *7 (Bankr. C.D. Cal. May 24, 2019). PERA cannot satisfy any of the *Musicland* factors.

---

[5] In PERA's First 7023 motion, PERA focused solely on the *Musicland* factors but failed to address the requirements of Civil Rule 23. Here, while PERA addresses the requirements of Civil Rule 23, it fails to address the *Musicland* factors. PERA's failure to brief these factors is fatal to the Third 7023 Motion and this defect cannot be remedied on reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *United States v. Orrock*, 2020 WL 2199620, at *1 (D. Nev. May 5, 2020) ("I decline to consider arguments raised for the first time in reply briefs because the practice of using a motion as merely a placeholder and then loading up the reply brief with the real information eliminates the opposing party's ability to provide a meaningful response and does not promote justice.").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### A. There Was no Pre-Petition Certified Class

There is still no certified class in the Securities Litigation now, more than five years after the District Court action was filed. While the Court did not find this factor weighed for either side on the First 7023 Motion, this factor should now weigh heavily against granting the Third 7023 Motion. *See In re Motors Liquidation Co.,* 447 B.R. 150, 166 (Bankr. S.D.N.Y. 2011) ("The first of the other two factors also weighs against the [claimants]. There was no prepetition class certification here."); *In re Verity Health Sys. of Cal.*, 2019 WL 2896189, at *9 ("The putative class was not certified prepetition, so the first *Musicland* factor weighs against applying Civil Rule 23 to the claims administration process."). Now that every Securities Claimant has already submitted an individual proof of claim, there are no "unknown" or "absent" creditors that the class mechanism is designed to protect.

An analysis of the underlying purpose of this *Musicland* factor explains why it weighs so heavily against a class at this stage of the Chapter 11 Cases. Bankruptcy Courts consider whether a class has already been certified specifically for the protection of potential claimants. In circumstances where a class has already been certified in a non-bankruptcy forum, putative class members could well believe that their claims are protected by the class *and for that reason not file proofs of claim*. No such risk exists here. Every Securities Claimant that PERA seeks to represent here has *already* submitted a proof of claim—and did so *after* PERA's first attempt to represent a class failed. Thus, there is no argument that putative class members had a "reasonable expectation" that they need not comply with the Securities Bar Date that this Court specifically set for these very claims. *Bailey v. Jamesway Corp. (In re Jamesway Corp.)*, 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997). Accordingly, this factor supports denying the Third 7023 Motion.

### B. Each Putative Class Member Received Notice of the Bar Date

The second *Musicland* factor—whether class members received notice of the bar date—also weighs heavily against granting the Third 7023 Motion. Every Securities Claimant received notice of the Extended Bar Date, in a manner and scope designed, in part, by PERA, and every Securities Claimant has submitted a proof of claim. Accordingly, each putative class member has already asserted its claim against the estates and there are no unknown class members whose potential claims may only

- 12 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

be protected by approving a class proof of claim. There is therefore no justification for certifying a class to litigate the merits comprised of individuals and entities who have already filed proofs of claim. *See, e.g.*, *In re Circuit City Stores, Inc.*, 2010 WL 2208014, at *6 (Bankr. E.D. Va. May 28, 2010) ("Bankruptcy is set up to efficiently handle large numbers of claims."), *aff'd sub nom. Gentry v. Circuit City Stores, Inc. (In re Circuit City Stores, Inc.)*, 439 B.R. 652 (E.D. Va. 2010), *aff'd*, 668 F.3d 83, 94 (4th Cir. 2012) (even several thousand claims would be better handled by the well-functioning claims resolution process already in place than by class treatment). In such cases, as here, where debtors have satisfied the notice requirement, Bankruptcy Courts have declined to apply Civil Rule 23 to the claims administration process. *See In re Major Model Mgmt.*, 641 B.R. at 321; *In re Bally Total Fitness,* 402 B.R. at 620.

As this Court has recognized, Bankruptcy Courts are well-equipped to facilitate the resolution of estates with large numbers of claims, and there is no need to certify a class of individuals who have already filed individual proofs of claim. Dec. 4, 2020 Hr'g Tr. at 5:10-19 ("As stated otherwise, I believe we have a well-established process in the bankruptcy system, apart from the class action world where the securities fraud claimants' advocates live, that facilitates consensual resolution, mediation, and if necessary, the traditional claims objection process. The bankruptcy process seems as normal and familiar to the bankruptcy bench and bar as does the Civil Rule 23 class action process to those who practice and adjudicate there. I prefer to stick with a well-tried and true regime in this forum."); *see also In re Wildwood Vills., LLC*, 2021 WL 1784408, at *5 (M.D. Fla. May 4, 2021) ("Bankruptcy courts are unique in that they are equipped to efficiently handle thousands of claims in one forum.").[6] This second factor is the sole factor the Court in its first decision denying class certification determined favored PERA – and even then determined to extend the Bar Date to provide additional notice to

---

[6] In connection with its Second 7023 Motion, PERA repeatedly mischaracterized the decision in *Sequoia Senior Solutions, Inc.*, 2017 WL 2533345, at *2 (Bankr. N.D. Cal. June 9, 2017), as a supposed example of the certification of a post-confirmation class. The Court there dealt with a very different situation where, unlike here, claimants in a pre-petition class action did not file individual proofs of claim. Nor did the Court certify a class. The Court instead held: "The court at this time makes no ruling regarding certification of the class or the merits of the claim, and holds only that the request to apply Rule 7023 is timely and that the equities of the case militate in favor of allowing the claim to be asserted on behalf of employees if the other legal requirements can be met." *Id.* Here, unlike in Sequoia, there is no danger that an entire category of creditors will be shut out here. Every member of the proposed class has filed a proof of claim.

Case: 19-30088   Doc# 13922   Filed: 07/25/23   Entered: 07/25/23 15:48:25   Page 18 of 33

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1 claimants. With notice concerns resolved by the extended Bar Date, class certification is no longer a
2 "close call." The universe of Securities Claimants is known, the proposed class has filed proofs of
3 claim, and there is no longer any basis to even consider class certification.

4       Indeed, the fact that the proposed class encompasses Securities Claimants which have
5 affirmatively filed proofs of claim in these Chapter 11 Cases, underscores the folly of PERA's proposed
6 opt-out class mechanism. The PERA-proposed class mechanism would require Securities Claimants
7 to affirmatively opt out of the proposed class or else be divested of control over their filed proofs of
8 claim. It would be wildly inappropriate to take away a claimant's right to prosecute its own proof of
9 claim and require it to now pay PERA's counsel a portion of any recovery absent an affirmative opt-in
10 mechanism. And such a class would offer no benefits beyond what could be achieved by interested
11 claimants simply engaging PERA's counsel to represent them in this proceeding anyway—without the
12 numerous increased costs and delays that would be associated with even an opt-in class procedure,
13 such as the necessity for class certification briefing and discovery.[7]

14       This Court should not now depart from its "well-tried and true regime," especially where PERA
15 has not even bothered to argue the threshold *Musicland* factors.

16 **C.**     **Granting the Third 7023 Motion Would Materially And Adversely Affect the**
17            **Administration of the Estate**

18       This Court has acknowledged in various rulings that reverting to a class resolution process at
19 this juncture would be prejudicial to both the Securities Claimants and the Reorganized Debtors, and
20 would cause unnecessary confusion in the administration of the estates. This is the same analysis called
21 for by the third *Musicland* factor, which asks whether class certification will adversely affect the
22 administration of the case.[8] As the Court has previously articulated, this consideration weighs heavily
23 in favor of denying the Third 7023 Motion.

24

---

25 [7] Even if the Court were inclined to adopt a class, the class should be opt-in consistent with this
26 Court's repeated admonitions that individual claimants can, and should, be permitted to control the
resolution of their claims.

27 [8] The analysis of the third *Musicland* factor centers on (i) the timing of the motion for certification,
and (ii) whether a plan has been negotiated, voted or confirmed. *In re Musicland Holding Corp.*,
28 362 B.R. at 654-55. Both considerations favor denial here.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

In connection with the Second 7023 Motion, the Court addressed whether class certification would be preferable to individualized claims resolution pursuant to the Securities ADR Procedures and once again rejected class certification. The Court expressed an unequivocal preference for the individualized resolution of the Securities Claims as contemplated by the Bankruptcy Code and the Securities ADR Procedures, rather than a class-based resolution. *See* Dec. 4, 2020 Hr'g Tr. at 6:21-7:10 ("The ADR procedures suggested by the reorganized debtors have the appeal of assuring some claimants will have an opportunity to recover some of their losses quickly and inexpensively."). The Court reaffirmed its preference to allow creditors to pursue their claims individually just last month at the hearing on the Motion to Extend. June 7, 2023 Hr'g Tr. at 70:6-8 ("But I believed [when denying the Second 7023 Motion], and I still believe that for a lot of reasons, the bankruptcy claims process is preferable to the class action process.").

As this Court acknowledged during the June 7, 2023 hearing on the Reorganized Debtors' Motion to Extend, implementing "something that sounds like and acts like a class action" at this stage of the proceedings would be "a disservice to the process that implicated and caused a number of these creditors to engage counsel and do what they've been doing as late as today." June 7, 2023 Hr'g Tr. at 69:25-70:3, 71:10-13. Instead, the Court affirmed that "the bankruptcy claims process is preferable to the class action process" and that the Court had the "tools in the toolbox under the claims objection process to work." *Id*. at 70:6-16.

All parties in interest have been operating under the Securities ADR Procedures. Many Securities Claimants have retained individual counsel and several, such as the Objectors, have been active in asserting their positions on the resolution of these claims. These efforts and expenses incurred were based on the Court's denial of PERA's prior 7023 motions and would be entirely wasted if the Court were to reverse itself.

Not only have Securities Claimants expended time and resources operating under the Securities ADR Procedures, but many claimants have resolved their claims in the belief that all claims would be resolved either through the Securities ADR Procedures or through the objection process. The progress

- 15 -

made under the Securities ADR Procedures following the denial of the Second 7023 Motion demonstrates that the claims resolution process has been successful and should be allowed to continue.

In addition, as this Court is aware, the Reorganized Debtors already engaged in negotiations with PERA as putative class counsel in the Securities Litigation for nearly a year in an attempt to reach a global resolution that would have largely resolved both the Securities Litigation and the Securities Claims for all claimants. These negotiations were not successful. There is no reason to believe that renewed negotiations with PERA will be any swifter or more successful. Should the Court certify a class now, this could well leave putative members of the proposed 7023 class in a worse position.

Finally, class certification would necessitate a substantial delay in the resolution of the remaining unresolved Securities Claims. While the Third 7023 Motion touts a "rigorous, expedited class notice program and opt-out deadline" that could be accomplished in just three months (Third 7023 Motion at 3), this ignores the many delays the class process will entail, including an extensive period (after the class motion is decided) for notice and the ability to opt-into (or out of) of the class. As demonstrated below, any class process will entail substantial delay for the following reasons:  (a) there would need to be discovery, including depositions of class representatives, on the issues of conflict of interest and adequacy, before the Court could consider class certification; (b) as a matter of due process and Supreme Court authority, the Reorganized Debtors are entitled to challenge the presumption of reliance at the class certification stage, an issue that typically requires 6-9 months of discovery, experts and often a live hearing; (c) the proposed notice to the potential class is likely to be hotly disputed by the Reorganized Debtors and other counsel for Securities Claimants who may be approaching claimants to join other groups instead of opting into a class; and (d) because PERA has not served all claimants

- 16 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

with the 7023 Motion, a final class certification order cannot issue until such notice is provided and claimants have a right to appear and object.[9]

This Court has previously acknowledged that even once a class is certified, those Securities Claimants who elected to remain part of the class would face substantial delay in resolving their claims. *See* June 7, 2023 Hr'g Tr. at 37:22-38:4 ("So my question to you is, if I denied today's motion and I said, okay, Mr. [Etkin], if you want to file a 23 motion, do it, just give me a preview in what decade that would ever get resolved, come to fruition, starting with two, three years into the confirmation. When would it show up and start to produce some results for people? Because you can't start paying members of the class when you have a class action, right?"). Reorganized Debtors would have to reach global settlement with PERA before a single member of the proposed 7023 class received any payment. That settlement would then be subject to a hearing with notice before any payment could be made. In 2022, the median time from filing to settlement hearing date for securities class action cases was 3.2 years. For cases that settled for at least $100 million, the time was even longer, at over 5.5 years. *Securities Class Action Settlements – 2022 Review and Analysis*, Cornerstone Research, at 13, https://securities.stanford.edu/research-reports/1996-2022/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf. The other option is for the Reorganized Debtors to engage in protracted class action litigation, which fares no better. As other courts have acknowledged, class action litigation adds "layers of procedural and factual complexity" which "siphon[] the Debtors' resources and interfer[e] with the orderly progression of the reorganization." *In re Bally Total Fitness,* 402 B.R. at 621.

The chaos and delay PERA proposes is especially problematic given that class certification does not benefit creditors or the administration of the estates. PERA proposes that "Securities

---

[9] It is ironic that PERA chose not to serve all claimants with the 7023 motion at the same time it argued to the Court that the Court could not extend the objection deadline and adopt additional procedures regarding the Securities Claims because the Reorganized Debtors did not serve all claimants. As a matter of due process, however, class certification requires notice to all class members and an opportunity to object. *See Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

- 17 -

Claimants' due process rights would be protected" by class certification because Securities Claimants would be represented by class counsel. Third 7023 Motion at 3. But this tired argument has been repeatedly and correctly rejected by the Court which has found that Securities Claimants are more than capable of making their own decisions regarding filing and prosecuting claims. Dec. 4, 2020 Hr'g Tr. at 7:19-8:6. Further, if a Securities Claimant believed that PERA's counsel could best represent their interests, that Securities Claimant has always had the option of simply hiring PERA's counsel. *Id.* at 8:7-11 ("If [Securities Claimants] want the benefit of counsel, either at the outset of the offer acceptance process or later, when faced with mediation, nothing prevents them from organizing collectively in selecting counsel on a group basis to represent their interests."). Put into perspective, approximately 600 unresolved claimants have now chosen to be represented by the RKS law firm. If there are claimants who wish to have PERA's counsel act for them, including the claimants who filed joinders to PERA's motion, they are free to do so. The Third 7023 Motion offers no representational benefits to claimants.

PERA also baselessly asserts that certifying a class would benefit the Reorganized Debtors and the Court "because negotiations and litigation would be streamlined for the most part." Third 7023 Motion at 3. But PERA's assertion that the Court and Reorganized Debtors would only need to primarily coordinate with class counsel is not realistic. There are likely to be a significant amount of claimants who do not opt into the class. Indeed, the approximately 600 claimants represented by RKS are likely to opt out or not opt in, as are other large individual claimants.[10] Certifying a class will, after a very substantial delay, leave this Court exactly where it started—asking Securities Claimants and the Reorganized Debtors to coordinate on procedures for the resolution of outstanding Securities Claims.

A class proof of claim is not a superior option for achieving a streamlined and collective resolution of the remaining unresolved Securities Claims. The Reorganized Debtors and certain of the Objectors have agreed to a set of procedures that will allow for Securities Claimants to amend proofs of claim, allow the settlement procedures of the Securities ADR Procedures to continue, and set a

---

[10] The lackluster support for class certification among Securities Claimants is underscored by the small number of joinders to the 7023 Motion. Only fourteen joinders were filed and of these, seven were filed by the same law firm as individual joinders rather than a single group joinder. *See* Dkt. Nos. 13895-13901.

- 18 -

timetable for the Court to determine whether the unresolved Securities Claims are sufficient to state legally cognizable claims against the Reorganized Debtors under the federal securities laws. *See* Dkt. No. 13907. These procedures will allow the Court to determine issues on a reasonable schedule that undoubtedly will expedite the resolution of the unresolved claims.

## II. THE 7023 MOTION IS BARRED BY LAW OF THE CASE

"[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 577 U.S. 237, 244-45 (2016); *see also Arizona v. California*, 460 U.S. 605, 619 (1983) ("[A] fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive."). Thus, when an issue has previously been "decided explicitly or by necessary implication," the law of the case should control a court's subsequent decision-making. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (citation omitted); *see* 18B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4478.1 (2d ed. 2020) ("A trial court could not operate if it were to yield to every request to reconsider each of the multitude of rulings that may be made between filing and final judgment."). This Court has already denied PERA's First and Second 7023 Motions; the issue squarely presented here—whether to certify a class under Rule 7023—has already been decided. *See* Oct. 15, 2020 Status Conferencing Hr'g Tr. 15:4-6 ("When I learned that [PERA] had filed this renewed [7023] motion, my first reaction . . . was why are they doing that again?"). The Court should therefore decline to revisit the issue, and allow what was once settled to remain settled. This will be the third time, the Reorganized Debtors and its constituents will have to bear the costs of responding to the same motion. Enough.

This Court has already held that PERA has failed to satisfy the *Musicland* factors and rejected class certification on that basis. *See* 7023 Decision at 5. This Court has also already determined that the Securities ADR Procedures are the superior mechanism for resolving the Securities Claims. *See* Dec. 4, 2020 Hr'g Tr. at 5:10-15 ("I believe we have a well-established process in the bankruptcy system, apart from the class action world where the securities fraud claimants' advocates live, that facilitates consensual resolution, mediation, and if necessary, the traditional claims objection process."). Parties in interest, from the Reorganized Debtors to thousands of claimants, have relied on

- 19 -

the Court's previous decisions, and this fact alone should preclude PERA's efforts to pursue a third 7023 Motion now.

**III.  THE PROPOSED CLASS MOTION WOULD NEED TO BE ADJOURNED FOR AN EXTENSIVE PERIOD WHILE CLASS DISCOVERY IS TAKEN AND THE REORGANIZED DEBTORS CHALLENGE THE PRESUMPTION OF RELIANCE**

The Supreme Court has repeatedly held that "to maintain the consistency of the presumption with the class certification requirements of Federal Rule of Civil Procedure 23, defendants must be afforded an opportunity before class certification to defeat the presumption through evidence that an alleged misrepresentation did not actually affect the market price of the stock." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014); *see also Arkansas Tchr. Ret. Sys.*, 141 S. Ct. at 1960; *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

As the Supreme Court in *Halliburton* stated: "defendants should at least be allowed to defeat the presumption at the class certification stage through evidence that the misrepresentation did not in fact affect the stock price." 573 U.S. at 279. This challenge is a notoriously fact-intensive and complicated inquiry that typically requires the use of expert witnesses and extensive discovery. *See In re McDermott Int'l, Inc. Sec. Litig.*, 2009 WL 1010039, at *4 (S.D.N.Y. Apr. 13, 2009) ("To the extent their testimony would be offered to show loss causation, moreover, the witnesses would have to qualify as experts."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3 (S.D.N.Y. Sept. 29, 2003) ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony.").

Discovery in similar securities cases typically takes 6 to 9 months to complete, particularly due to the need for expert witness depositions. *See, e.g.,* Joint Case Management Report, *Bennett v. GoDaddy.com, LLC*, Case No. 2:16-cv-03908-DLR (D. Ariz. Jan. 20, 2017) [Dkt. No. 35] (attached hereto as **Exhibit A)** (providing the parties with seven months to complete fact discovery related to class certification and an additional three months for expert discovery); Order Resolving Discovery Issues and Regulating Future Proceedings, *In re Am. Realty Cap. Properties, Inc. Litig.*, Case No. 15-mc-40 (AKH) (S.D.N.Y. Jan. 25, 2017) [Dkt No. 352] (attached hereto as **Exhibit B**) (providing the

- 20 -

parties with five months to complete document discovery in connection with class certification in securities litigation); Class Certification Scheduling Order, *Troice v. Proskauer Rose LLP*, Case No. 3:09-cv-01600-N-BG (N.D. Tex. Sept. 16, 2014) [Dkt. No. 142] (attached hereto as **Exhibit C**) (providing the parties five months to complete discovery in connection with class certification in securities litigation).

If the Court does not reject the PERA motion on its face, then before the Court can grant the Third 7023 Motion, the Court should set a date for a scheduling conference to set a discovery schedule for class certification, including discovery of the proposed representatives and expert witness disclosure and discovery.

## IV. EVEN BASED ON THE CURRENT RECORD, THE CIVIL RULE 23 MOTION FAILS

The Third 7023 Motion also should be denied because it does not meet the requirements of Civil Rule 23 – even on the limited record to date.

### A. The Proposed Class Fails to Satisfy Civil Rule 23(a)

#### 1. Joinder is Practicable in the Chapter 11 Cases

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). While it is true that courts have often certified proposed classes of 40-or-more members, that numerical test is not the right test here where all of the proposed class has filed proofs of claim and therefore could join in collective action. Here, not only is joinder practicable, but it has actually happened, as each of the Securities Claimants has affirmatively elected to participate in the Chapter 11 Cases and thus could easily be joined collectively in any pleading if they chose to be represented by PERA's counsel.

Moreover, the number of potential class claimants decreases daily as Securities Claims are resolved pursuant to the Securities ADR Procedures. Further, the representatives of large numbers of Securities Claimants – including the RKS Claimants – are likely not to opt into the class, further reducing the size of and need for a class. Indeed, by number of claims, approximately 19% of the unresolved claims now are represented by RKS. Certifying a class where such a substantial portion the remaining claims will choose not to participate defeats the purpose of the 7023 Motion.

- 21 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### 2. PERA's Claims are Not Typical of the Proposed 7023 Class

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The class representative must "possess the same interest and suffer the same injury as the class members." *Yoon v. Gap, Inc.*, 2010 WL 11597565, at *5 (C.D. Cal. Oct. 6, 2010). PERA asserts that it satisfies the typicality requirement because it holds "both equity and debt claims" and is a claimant in Plan Classes 9A, 10A-II, and 10-B. Third 7023 Motion at 13. But this is an oversimplification. As the Reorganized Debtors demonstrated in their *Objection to Securities Lead Plaintiff's Renewed Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* [Dkt. No. 9375] (the "**Objection to Renewed Motion**"), the Securities Claimants in the proposed 7023 class traded in at least 67 securities, while PERA purchased only HoldCo common stock traded on the NYSE, one of the bonds at issue in the Securities Litigation, and two other bonds that are not part of the Securities Litigation. Objection to Renewed Motion at 18. Each of the Plan Classes encompass dozens of these different securities with different attributes that impact the relative value of the asserted claims. *Id.*

In claiming that typicality is satisfied, PERA conflates standing with the typicality requirement of Civil Rule 23. Whether purported representative parties "may be allowed to present claims on behalf of others who have similar, but not identical interests," depends upon "an assessment of typicality and adequacy of representation." *In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prods. Liab. Litig.*, 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017). PERA cannot satisfy the typicality element here.

### 3. PERA Cannot Adequately Represent the Interests of the Class Because it has Massive Numerous Conflicts Representing Different but Overlapping Classes in Different Courts

The Ninth Circuit applies a two-part test to determine the adequacy of class representation: (i) the representative plaintiffs and their counsel must not have conflicts of interest with other class members, and (ii) the representative plaintiffs and their counsel must prosecute the action vigorously on behalf of the class. *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 443 (N.D. Cal. 2014). PERA is hopelessly conflicted and cannot satisfy this standard for at least three reasons. First, PERA asserts it

- 22 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

owes fiduciary duties to the putative class in the Securities Litigation, and this class is in direct conflict with Securities Claimants over funds available to satisfy claims.  *See* Brief of Securities Plaintiffs-Appellants in Opposition to Appellee-TCC's Motion to Dismiss the Appeal as Moot at 5, *In re PG&E Corp.*, No. 20-CV-04567 HSG (N.D. Cal Mar. 9, 2021) [Dkt. No. 23]  ("It is true that these claims may be settled, in whole or in part, through D&O Insurance proceeds, and it is also true that Securities Claimants may also recover insurance proceeds through a distinct federal district court class action against PG&E's officers and directors").  Second, PERA's counsel is itself conflicted because any fees it obtains in connection with recoveries for Securities Claimants will reduce the amount available from insurance to satisfy the putative class in the Securities Litigation.  Finally, conflicts exist within the proposed class itself—cash paid to Debt Claimants may reduce the amount available to satisfy Equity Claimants.

a.     <u>The Proposed 7023 Class and the Putative Class in the Securities Litigation are in Conflict</u>

Because PERA seeks to represent the putative class in the Securities Litigation, PERA and its counsel will take on an obligation of duty of loyalty once that class is certified, if ever. *Smith v. Levine Leichtman Cap. Partners, Inc.*, No. C 10-00010 JSW, 2011 WL 13153123, at *5 (N.D. Cal. Mar. 9, 2011) (recognizing that putative class counsel are subject to a heightened standard to represent all class members). This duty to the putative class in the Securities Litigation presents an irreconcilable conflict that prevents PERA, and its counsel, from representing the proposed 7023 class. Indeed, this Court previously acknowledged the real question of whether PERA and PERA counsel's could represent a class of Securities Claimants. *See* Dec. 4, 2020 Hr'g Tr. at 16:22-17:4 ("The unknowns that don't need to be the subject of further litigation in this case now, or possible appeals in this case, include whether PERA or PERA's counsel have a conflict in representing the securities class in the district court, and the claimants here, and also whether the limited fund doctrine applies, or doesn't, to the common stock to be issued under the plan by the…solvent debtor."). This remains a very real question and risk which PERA fails to address in its Third 7023 Motion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

PERA characterizes the interests of the putative class in the Securities Litigation and in the Securities Claimants in the bankruptcy as "directly aligned," but PERA has also taken the position that the putative class in the Securities Litigation and the proposed 7023 class are theoretically not one in the same. *In re PG&E Corporation Securities Litigation*, Case No. 22-16711 (9th Cir. 2023) Reply Brief for Plaintiffs-Appellants at 7-9. The class PERA seeks to certify in the bankruptcy may be both broader and narrower than the putative class in the Securities Litigation. In that regard, PERA has asserted that not all of the members of the putative class in the Securities Litigation have filed proofs of claim in the Chapter 11 Cases. *Id.* Of note, two of the individual named plaintiffs – David C. Weston and Jon Paul Moretti – do not appear to have filed proofs of claim. As these plaintiffs will not recover against the Reorganized Debtors in the bankruptcy proceedings, their sole interest is in maximizing their recovery in the Securities Litigation. Any such recovery, though, would reduce the funds available to satisfy the recovery (if any) of the proposed class. The proposed 7023 class is also significantly broader than the putative class in the Securities Litigation, consisting of at least 67 of Reorganized Debtors' securities as compared to the eight securities in the putative class in the Securities Litigation for which the PERA complaint expressly pleads claims. The interest of these Securities Claimants lies in maximizing their recovery (if any) in as little time and with as little expense as possible. On the other hand, the Securities Litigation is indefinitely stayed pending the resolution of these Chapter 11 Cases with any resolution significantly far out in the future. PERA has failed to explain how it will manage these competing interests and these apparent conflicts are reason alone for the Court to deny the Third 7023 Motion.

b.    PERA's Counsel Has Adverse Economic Interests to the Proposed 7023 Class

Moreover, PERA's counsel certainly should not be paid handsome contingency fees from recoveries by Securities Claimants in the proof of claim process—which will, of course, reduce the funds available for distribution to claimants. *See, e.g., Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *7 (Dec. 6, 2007) (disqualifying counsel from simultaneously representing a putative class, and clients with interests adverse to the putative class' interests, recognizing that

- 24 -

putative class counsel "are subject to a 'heightened standard'" of loyalty to unnamed class members, particularly where counsel has "a pecuniary interest" to posture claims to "recover larger attorney's fees.").

Indeed, even in the absence of actual conflicts of interest, counsel are not permitted to represent dueling classes where there is "even the appearance of divided loyalties of counsel." *See Sullivan v. Chase Inv. Servs. of Bos., Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978) ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.").

Faced with a similar situation in *Smith v. Levine*, the District Court in the Northern District of California required class counsel to withdraw from that action based on counsel's simultaneous representation of parallel plaintiff classes. There, plaintiffs' counsel represented one class of plaintiffs (the *Del Campo* plaintiffs) asserting pre-petition claims against a bankrupt debt-collection company. *Smith*, 2011 WL 13153123, at *1. After the bankruptcy plan was confirmed, the same counsel initiated a separate class action on behalf of a separate class (the *Smith* plaintiffs), asserting similar claims against the reorganized debt collection company. *Id.* at *2. The District Court refused to certify the *Smith* class, finding that "by representing the class members in both the *Smith* and the *Del Campo* actions, Plaintiffs' counsel are in a position of having to choose between vigorously enforcing the rights of the *Smith* class and preserving the monetary recovery available for the *Del Campo* class." *Id.* at *3; see also Sullivan*, 79 F.R.D. at 258 (requiring plaintiffs' counsel to withdraw from representing plaintiffs in a parallel securities fraud case against the same defendant in another district because "[t]he Lions' interest in collecting some money from [defendant] before this class litigation is concluded is obvious, and the diminution of the defendants' assets by payment to the Lions would equally obviously affect the interests of this class."); *Moreno*, 2007 WL 4287517, at *7.

c.      The Proposed 7023 Class is Internally Conflicted

On a more basic level, conflicts exist within the proposed 7023 class between Equity Claimants and Debt Claimants. Because the Plan provides a formula for paying allowed Equity Claims, which allows the Reorganized Debtors to satisfy such claims, if allowed, using insurance proceeds and/or by

- 25 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

issuing a certain number of shares, every dollar that is paid out on a Debt Claim could reduce the value of any shares issued to Equity Claimants.

In sum, determining whether the interests of the members of the proposed 7023 class align could—unless such claims are resolved through the Securities ADR Procedures—require mini-trials to examine the legal and factual merits of the claims on a security-by-security basis, including the trading patterns of each claimant and when they purchased and sold every security at issue. In these situations, federal courts have refused to certify classes. Instead, they create subclasses to address conflicts such as these, or simply deny class treatment altogether. *See, e.g., In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010), *aff'd sub nom. In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011) (dismissing plaintiffs' claims with respect to those offerings in which they did not purchase securities because plaintiffs could not "have been injured with respect to those offerings."). While PERA meekly claims in a footnote that the Court could create subclasses of bondholders, it offers no viable means of doing so, and this would add the complexity of numerous sub-classes to the claims process. *See* Third 7023 Motion at 10 n.5.

### A. The Proposed 7023 Class Fails to Satisfy Civil Rule 23(b)

The Third 7023 Motion must also be denied for failure to satisfy Civil Rule 23(b). If a plaintiff is successful in establishing the requirements of Civil Rule 23(a), they must then satisfy one of the elements of Civil Rule 23(b). *In re Bally Total Fitness*, 402 B.R. at 621. Here, PERA seeks class certification under subsection (b)(3), which permits certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). PERA has failed to demonstrate that a class action would be superior to the claims administration process.

The question of whether the element of superiority is satisfied depends on the application of the four factors listed in Civil Rule 23(b)(3): (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or

- 26 -

undesirability of concentrating the litigation in [a] particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Each factor weighs against class certification.

*First*, many of the putative members of the proposed 7023 class are Securities Claimants with significant asserted potential damages who have retained their own experienced and competent counsel. Securities Claimants are capable of pursuing their claims individually and have the means to retain PERA's counsel at any time, but have already chosen not to do so.

*Second*, as detailed above, significant progress has been made in the claims administration process under the Securities ADR Procedures. Reorganized Debtors and Securities Claimants alike have expended significant time and resources in engaging counsel, gathering trading data, making and evaluating settlement offers, and implementing the Mediation Procedures. If the Court were to grant class certification at this late stage, all of these significant expenditures would be wasted with respect to any Securities Claimant that has not yet settled. Further, given the progress Reorganized Debtors have made in resolving the Securities Claims, class certification no longer holds the prospect of expediency, if it ever did. Class treatment is not a superior method of resolution when individual claimants have already demonstrated their ability to pursue and, in many instances, settle their own claims. *See Kottler v. Deutsche Bank AG*, 2010 WL 1221809, at *5.

*Third*, as this Court is the only possible forum for resolving Securities Claims against the Reorganized Debtors, this factor is neutral in the analysis.

*Finally*, as demonstrated above, certification of a class at this late stage would cause confusion and undue delay in the administration of the estate. *See* Section II.C, *supra*.

- 27 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, the Reorganized Debtors respectfully request that the Motion under Bankruptcy Rule 7023 be denied once again and that the Court grant the Reorganized Debtors such other and further relief as is just and proper.

Dated: July 25, 2023

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By: ____/s/ Richard W. Slack____
            Richard W. Slack

*Attorneys for Debtors*
*and Reorganized Debtors*

- 28 -