| | |
|---|---|
| **LABATON SUCHAROW LLP** | **LOWENSTEIN SANDLER LLP** |
| Thomas A. Dubbs (*pro hac vice*) | Michael S. Etkin (*pro hac vice*) |
| Carol C. Villegas (*pro hac vice*) | Andrew Behlmann (*pro hac vice*) |
| Michael P. Canty (*pro hac vice*) | Scott Cargill |
| Thomas G. Hoffman, Jr. (*pro hac vice*) | Colleen Restel |
| 140 Broadway | One Lowenstein Drive |
| New York, New York 10005 | Roseland, New Jersey 07068 |

*Lead Counsel to Securities Lead Plaintiff and the Class*

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br>Chapter 11<br>(Jointly Administered)<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS**<br><br>Date:    August 8, 2023<br>Time:   10:00 a.m. (PT)<br>Before: (Telephonic Appearances Only)<br>      United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, California 94102<br><br>**Objection Deadline:** July 25, 2023, 4:00 PM (PT) |

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ....................................................................................... ii

I.      INTRODUCTION ........................................................................................... 1

II.     The Court Should Exercise Its Discretion to Apply Rule 23 ......................... 4

        A.      The *Musicland* Factors Must Be Considered in the Current Context of the
                Need for a Collective Resolution of Thousands of Remaining Securities
                Claims ..................................................................................................... 4

                1.      *Musicland* factor #1: whether the class was certified prepetition ................. 4

                2.      *Musicland* factor #2: whether the members of the putative class
                        received notice of the bar date .............................................................. 5

                3.      *Musicland* factor #3: whether class certification will adversely affect
                        the administration of the estate ............................................................. 6

        B.      The Court Should Reject Reorganized Debtors' Proposal for an Opt-In Class .......... 7

        C.      The Court Should Schedule Tailored Class Certification Discovery and
                Supplemental Briefing ................................................................................ 9

III.    The Rule 23 Factors Are satisfied ............................................................... 11

        A.      Rule 23(a) Is Satisfied ............................................................................ 11

                1.      Numerosity Is Satisfied ....................................................................... 11

                2.      Typicality Is Satisfied .......................................................................... 11

                3.      Adequacy Is Satisfied .......................................................................... 13

                        a.      The proposed class here and the putative class in the Securities
                                Litigation are not in conflict ........................................................ 13

                        b.      Proposed class counsel does not have economic interests that
                                are adverse to those of the proposed class .................................. 14

                        c.      The proposed class is not internally conflicted ............................. 15

        B.      Rule 23(b) Is Satisfied ............................................................................ 16

IV.     CONCLUSION .............................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ackal v. Centennial Beauregard Cellular L.L.C.*,
700 F.3d 212 (5th Cir. 2012)...................................................................................8

*Andrews Farms v. Calcot, Ltd.*,
258 F.R.D. 640 (E.D. Cal. 2009).............................................................................8

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).................................................................................................10

*In re Chaparral Energy, Inc.*,
571 B.R. 642 (Bankr. D. Del. 2017).........................................................................4

*Conkwright v. A C & S Inc.*,
No. CV-95-00133-SMM, 1996 WL 772633 (9th Cir. Nov. 7, 1996)........................7

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009).............................................................................16

*In re Ephedra Products Liability Litigation*,
329 B.R. 1, 9 (S.D.N.Y. 2005)................................................................................17

*Ferris v. Wynn Resorts Ltd.*,
No. 2:18-cv-00479-APG-DJA, 2023 U.S. Dist. LEXIS 35374 (D. Nev. Mar. 1, 2023)........10

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*,
141 S. Ct. 1951 (2021).............................................................................................10

*Kern v. Siemens Corp.*,
393 F.3d 120 (2d Cir. 2004)......................................................................................8

*Laventhol, Krekstein, Horwath & Horwath v. Horwitch*,
637 F.2d 672 (9th Cir. 1980)....................................................................................14

*In re Mattel, Inc. Sec. Litig.*,
No. 2:19-cv-10860-MCS-PLA, 2021 U.S. Dist. LEXIS 194121 (C.D. Cal. Oct. 6, 2021)....10

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015)..................................................................................12

*Millan v. Cascade Water Servs., Inc.*,
310 F.R.D. 593 (E.D. Cal. 2015)...............................................................................8

*Moreno v. Autozone, Inc.*,
No. C05-04432 MJJ, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) ..........................15

ii

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007)..........................................................4, 5, 6

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014)....................................................................12

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010)..................................................................12

*Schneider v. Traweek*,
    No. CV 88–0905 RG (KX), 1990 WL 132716 (C.D. Cal. July 31, 1990)....................12, 16

*Smith v. Levine Leichtman Cap. Partners, Inc.*,
    No. C 10-00010 JSW, 2011 WL 13153123 (N.D. Cal. Mar. 9, 2011) ..........................14, 15

*Sullivan v. Chase Inv. Servs. of Bos., Inc.*,
    79 F.R.D. 246 (N.D. Cal. 1978) ................................................................15

*Teran v. Navient Solutions, LLC (In re Teran)*,
    649 B.R. 794 (Bankr. N.D. Cal. 2023)............................................................2

*In re Think Fin., LLC*,
    No. 17-33964 (HDH), 2018 WL 9801454 (Bankr. N.D. Tex. Aug. 30, 2018) ..................6, 8

*Thorpe v. Abbott Labs., Inc.*,
    534 F. Supp. 2d 1120 (N.D. Cal. 2008) ...........................................................8

*In re Verity Health Sys. of Cal., Inc.*,
    No. 2:18-bk-20151-ER, 2019 WL 2461688 (Bankr. C.D. Cal. June 11, 2019) .....................4

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    No. MDL 2672, 2017 WL 3058563 (N.D. Cal. July 19, 2017) ...................................12

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................16

**RULES**

Fed. R. Bankr. P. 7023 ................................................................4, 6, 7, 17

Fed. R. Civ. P. 23(b) ..................................................................8, 16

Fed. R. Civ. P. 23(a) ..................................................................11, 12

Fed. R. Civ. P. 23(c) ..................................................................7, 8

**OTHER AUTHORITIES**

Harv. L. Rev. 356, 397 (1967) ..............................................................8

*McLaughlin on Class Actions,* § 4:30 (19th ed. Nov. 2022 Update)..........................................13

3 *Newberg and Rubenstein on Class Actions* § 9:48 (6th ed. June 2023 Update).........7, 8, 11, 14

Ryan C. Williams, *Due Process, Class Action Opt Outs, and the Right Not To Sue*, 115 Colum. L.
Rev. 599, 602 (2015)..........................................................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

# I. INTRODUCTION

Reorganized Debtors' objection to class certification[1] should be rejected because it flatly ignores that—despite having two and a half years to resolve Securities Claims under their proposed ADR Procedures—they have failed to resolve thousands of such claims.[2] The Reorganized Debtors enjoy the advantage of maintaining the status quo by picking and choosing who to negotiate with and keeping those negotiations secret.

The potential problem this Court recognized in November 2020 of thousands of unresolved Securities Claims that might compel it to "go to plan B under the Rule [7023] motion" has now materialized.[3] Plan B is the pathway for the fair and orderly resolution of the Securities Claims by certifying a class of Securities Claimants so the unresolved claims of innocent investors can be decided collectively on the merits efficiently, while allowing the ADR Procedures to proceed on a parallel track.

The Reorganized Debtors fail to provide the Court with any plan to efficiently resolve the thousands of remaining Securities Claims individually. The reason is clear—they perceive an advantage to maintaining the status quo. The Reorganized Debtors would have thousands of Securities Claimants each responding to dispositive motions, each serving and responding to document requests, interrogatories, requests for admissions and deposition notices, as well as attending and objecting at depositions and hearings. Indeed, the new Amendment and Objection Procedures approved by this Court provide that the Reorganized Debtors have until at least December 13, 2023 to object to Securities Claimants' amended proofs of claim. (ECF 13934-1 ¶5). Thereafter, the Reorganized Debtors "intend to make sufficiency objections akin to a motion to dismiss with respect to all claims set forth in the unresolved securities proofs of claim." *Id.* ¶9. At the end of the day, there may well remain "1,000 trials on securities claims."[4]

---

[1] ECF 13922 ("Reorganized Debtors' Objection").

[2] Herein, all capitalized terms have the same meaning as in the Motion.

[3] Nov. 18, 2020 Hr'g Tr. at 16:3.

[4] June 7, 2023 Hr'g Tr. at 20:13–14.

In contrast, the procedures and tools provided by class certification under Rule 23 would streamline the resolution of the thousands of Securities Claims that remain pending and avoid unnecessary duplication of expenses.[5]

Further, while the Reorganized Debtors contend there is nothing "new" warranting granting this Motion that is simply not true. Not only has the passage of time proven that the Reorganized Debtors' ADR Procedures will not resolve thousands of Securities Claims but numerous Securities Claimants have now endorsed class certification and only the presumptive opt outs represented by RKS have objected to the Motion.[6]

Crucially, the numerous joinders to the Motion demonstrate that class certification enjoys broad support among Securities Claimants, including some of the very largest institutional investors—such as Vanguard (ECF 13905), MassMutual (ECF 13869), the NYS Common Retirement Fund (ECF 13904), and CalSTRS (ECF 13904)—as well as (in order of filing):

- International Brotherhood of Teamsters Local 282 Benefit Trust Funds (ECF 13895)
- Iowa Public Employees' Retirement System (ECF 13896)
- Laborers' & Retirement Board Employees' Annuity & Benefit Fund of Chicago (ECF 13897)
- Local 580 Annuity Fund, Insurance Fund, and Pension Fund (ECF 13898–900)
- San Bernadino County Employees' Retirement Association (ECF 13901)
- Teacher Retirement System of Texas (ECF 13904)
- Pension Reserves Investment Management Board of Massachusetts (ECF 13904)
- Hartford Accountants (representing 38 Securities Claimants) (ECF 13904)
- Dimensional Claimants (ECF 13906)
- State of Oregon (ECF 13908)
- Louisiana Sheriffs' Pension & Relief Fund (ECF 13913)
- Southern Nevada Culinary and Bartender Pension Trust Fund (ECF 13916)

---

[5] Herein, "[a]ll discussion about FRCP 23 and FRBP 7023 will be referred to as 'Rule 23.'" *Teran v. Navient Solutions, LLC (In re Teran)*, 649 B.R. 794, 800 n.2 (Bankr. N.D. Cal. 2023).

[6] ECF 13918 ("RKS Objection").

2

- Strathclyde Pension Fund (ECF 13932)

- Man Numeric Amplified Core LLC (ECF 13937)

- Man Numeric Alternative Risk Premia Value (ECF 13937)

- Stichting Depository APG Developed Markets Equity Pool (ECF13937)

- Sumitomo Mitsui Trust Bank (SMTB) (ECF 13937)

- Alphas Managed Accounts Platform LXXI Limited - Risk Premia Segregated Portfolio (ECF 13937)

This strong showing of support from members of the proposed class—many of whom are already represented by sophisticated counsel—should weigh heavily in the Court's analysis because it demonstrates their belief that Securities Plaintiffs will fairly and adequately protect their interests.

Reorganized Debtors also complain that class certification would be "disruptive," that it would "delay and complicate the careful process long underway," and that "it is not workable to adopt a class action and insert it into the middle of the Securities ADR Procedures adopted by the Court." Reorganized Debtors' Objection at 1. But these are all straw man arguments because class certification will not prevent the resolution of any Securities Claims via the ADR Procedures, as the class process would run alongside the ADR Procedures. *See* Motion at 2.

Likewise, the RKS Objection—the only objection by Securities Claimants—is no bar to class certification. As presumptive opt outs, the RKS claimants have no standing to object to class certification.[7] Indeed, their objection should be rejected, as it is premised on the erroneous notion that class certification would result in "abandoning" the ADR Procedures. RKS Objection at 2. If the Court certifies the proposed class, the RKS claimants will remain free to opt out and participate in the ADR Procedures just as they are now.

Finally, the Rule 23 requirements are satisfied here. The manufactured conflicts and other arguments of Reorganized Debtors and the RKS claimants to the contrary are meritless. *See* Section III, *infra*.

---

[7] *See* https://www.rksllp.com/about (describing RKS's "deliberate focus on . . . class action opt-outs").

3

Thus, the Court should exercise its discretion to apply Rule 23 and certify the proposed class of Securities Claimants.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION TO APPLY RULE 23

### A. The *Musicland* Factors Must Be Considered in the Current Context of the Need for a Collective Resolution of Thousands of Remaining Securities Claims

Both the Reorganized Debtors and the RKS claimants attempt to fault Securities Plaintiffs for failing to analyze the factors from *In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007), as if this Court has not previously addressed them.

In addition, the Reorganized Debtors necessarily overstate the significance of the *Musicland* factors to the extent they are currently relevant at all. Rather than an inalterable command that Securities Plaintiffs "*must* first satisfy the *Musicland* factors" (Reorganized Debtors' Objection at 3) (emphasis in original), "courts have developed a three-factor framework to help guide the court's discretion in determining if Bankruptcy Rule 7023 should be extended to the claims administration process . . . . No one factor is dispositive; a factor may take on more or less importance in any given case." *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017); *see also, In re Verity Health Sys. of Cal., Inc.*, No. 2:18-bk-20151-ER, 2019 WL 2461688, at *7 (Bankr. C.D. Cal. June 11, 2019).

Those factors are (1) whether the class was certified prepetition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate. *See Musicland*, 362 B.R. at 654.

#### 1. *Musicland* factor #1: whether the class was certified prepetition

This Court has previously considered and rejected the arguments again advanced by the Reorganized Debtors and the RKS claimants that the failure to certify a class in the District Court prior to the bankruptcy case was fatal to class certification. *See Mem. Decision Regarding Mot. to Apply Rule 7023*, dated Feb. 24, 2020 (ECF 5887) at 3 ("Because a motion to dismiss is currently pending in the Securities Litigation, Movants are unable to certify their class at this point . . . Consequently, this factor does not weigh against them.").

Nothing has changed. Therefore, the first *Musicland* factor remains irrelevant here.

4

## 2. *Musicland* factor #2: whether the members of the putative class received notice of the bar date

The Reorganized Debtors' and the RKS claimants' arguments that the proposed class of Securities Claimants should not be certified because Securities Claimants received actual notice of the bar date might be more persuasive if this Court was writing on a clean slate and we were not nearly three years into the ADR Procedures, with thousands of individually filed Securities Claims that remain unresolved. That Securities Claimants received notice of the extended bar date (only after this Court required the Reorganized Debtors to provide such notice) fails to address the fact the ADR Procedures have not worked for thousands of claims. Given the Reorganized Debtors' stated intent to object to them on the grounds they are facially deficient—despite the fact they were filed on a proof of claim form of Debtors' own creation—litigation of the merits of those claims might take many more years. Moreover, this factor is essentially irrelevant because the number of putative class members is now fixed and there is no intention to expand that number.

It has become painfully apparent that the Reorganized Debtors were wrong by every conceivable metric when *in November 2020*, they advised this Court that the settlement process under the ADR Procedures would largely resolve all Securities Claims and that merits related issues would be resolved by the District Court:

> MR. SLACK: And so Your Honor, literally within a couple of months, we expect the settlement process to begin, and to be fruitful.[8]
>
> * * *
>
> MR. SLACK: We expect that most of these are going to get done just by getting settlement offers. And so we think the number that's actually going to be mediated is a – is a very small number.[9]

That a Securities Claimant received notice and submitted a claim does not lead to the conclusion that resolution of complex securities litigation claims (arising out of a common set of facts and circumstances) is best resolved through an individualized adjudication process. We are now years into the Reorganized Debtors' ADR Procedures and there are still thousands of pending Securities

---

[8] *See* Nov. 18, 2020 Hr'g Tr. at 9:7–8.

[9] *See id.* at 46:22–25.

REPLY MEMORANDUM IN FURTHER SUPPORT OF SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS
CASE NO. 19-30088 (DM) (LEAD CASE)

Claims. *Cf. In re Think Fin., LLC*, No. 17-33964 (HDH), 2018 WL 9801454, at *5 (Bankr. N.D. Tex. Aug. 30, 2018) ("[T]he number of consumer borrowers who received notice of the Bar Date, understood the notice, filed a claim, and properly identified the basis for their claim appears to be vanishingly small").

Thus, at worst, the second *Musicland* factor is neutral because—while Securities Claimants may have received notice of the extended bar date—such notice has not been particularly helpful in resolving the Securities Claims.

### 3. *Musicland* factor #3: whether class certification will adversely affect the administration of the estate

While this Court has previously described the question of whether to apply Rule 23 to the Securities Claims adjudication process as "a close call" (ECF 5887 at 4), the subsequent passage of years, with thousands of claims still languishing under the Reorganized Debtors' ADR Procedures, has made the decision to apply Rule 23 much easier. This is particularly true given that a Rule 23 process can operate efficiently alongside the existing ADR Procedures and with minimal disruption to those Securities Claimants who seek to litigate their claims individually.

In approving the ADR Procedures,[10] and denying the second Rule 7023 Motion without prejudice, this Court anticipated that the reconsideration of a class mechanism would be appropriate if the Reorganized Debtors' expectations for the ADR Procedures fell short of their plans:

> THE COURT: . . . I need to know why I should grant the debtors' ADR motion, and that's what we spent some time talking about. . . Because frankly, Mr. Slack, I'm not a hundred percent convinced that I couldn't do this sequentially. I could try your procedure, and if you're right, only a few remain, that's one thing, but what if 5, 000 remain, I might decide to go to plan B under the Rule [7023] motion.[11]

As we approach the three-year anniversary since the Court made the above observations, it has become increasingly clear that a class mechanism is the only viable solution for the fair and efficient resolution of the thousands of the Securities Claims that remain pending.

The Reorganized Debtors cannot credibly claim that the application of Rule 23 will negatively

---

[10] *See* Dec. 4, 2020 Hr'g Tr. at 17:21–22.

[11] *See* Nov. 18, 2020 Hr'g Tr. at 15:18–16:3.

impact the administration of the estate. The Plan has been substantially consummated for several years and the vast majority of creditors have received all distributions on account of their claims. While the Reorganized Debtors initially advised this Court that the Securities Claims would be resolved in a matter of months, the ADR Procedures have instead become one of the lagging workstreams in the resolution of these Chapter 11 Cases. Accordingly, applying Rule 23 will not and cannot interfere with the administration of the Reorganized Debtors' estates.

The joinders that numerous members of the proposed class filed in support of the Motion, and the absence of objection but for the presumptive opt outs represented by RKS, should weigh heavily in favor of the Court exercising its discretion to apply Rule 23. If there are numerous opt outs after class notice is issued to the entire proposed class, then the Court may amend its interlocutory class certification order accordingly. *See* Fed. R. Civ. P. 23(c)(1)(C).

Thus, the Court should exercise its discretion to apply Rule 23 here.[12] In doing so, the Court should reject the Reorganized Debtors' proposal for an opt-in class, and it should set a date for a scheduling conference to set a schedule for class certification discovery and supplemental briefing, as set forth below.

## B. The Court Should Reject the Reorganized Debtors' Proposal for an Opt-In Class

The Reorganized Debtors argue for an opt-in class mechanism. Reorganized Debtors' Objection at 14. However, "[t]he [Rule 23] class action mechanism is an opt-out, not opt-in, procedure." 3 *Newberg and Rubenstein on Class Actions* § 9:48 (6th ed. June 2023 Update)

---

[12] The Reorganized Debtors argue that the Court is bound by the law-of-the-case doctrine. Reorganized Debtors' Objection at 19. But when it initially chose to implement the ADR Procedures, the Court explicitly stated it could consider class certification at a later time. Dec. 4, 2020, Hr'g. Tr. 9:2-6 ("If it turns out that the offer and acceptance, mediation, and related procedures failed significantly, we can revisit the question of whether remaining securities fraud claimants would be better served by some variation on a Rule 7023 process."). What followed were Reorganized Debtors' six motions to extend the claims objection deadline and years of delay. *See, e.g.*, Reorganized Debtors' Sixth Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims (ECF 13745). Indeed, the Court essentially invited this Motion. *See* June 7, 2023, Hr'g Tr. at 37:23–24 ("if you want to file a 23 motion, do it . . ."). Thus, the law-of-the-case doctrine does not apply. *See Conkwright v. A C & S Inc.*, No. CV-95-00133-SMM, 1996 WL 772633, at *1 (9th Cir. Nov. 7, 1996) ("The law of the case doctrine does not apply because the district court considered substantially different facts . . .").

7

("*Newberg*"); *see also Millan v. Cascade Water Servs., Inc.,* 310 F.R.D. 593, 602 (E.D. Cal. 2015) ("Rule 23 simply does not provide for an opt-in class.").

Indeed, "substantial legal authority supports the view that by adding the 'opt out' requirement to Rule 23 . . . Congress **prohibited** 'opt in' provisions by implication." *Kern v. Siemens Corp.*, 393 F.3d 120, 124 (2d Cir. 2004) (emphasis added); *see also Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 216 (5th Cir. 2012) ("Not only is an opt in provision not required, but substantial legal authority supports the view that by adding the opt out requirement to Rule 23 . . . , Congress prohibited opt in provisions by implication."); *Thorpe v. Abbott Labs., Inc.,* 534 F. Supp. 2d 1120, 1123 (N.D. Cal. 2008); *see also* 3 *Newberg* § 9:48 ("[S]ignificant precedent bars courts from requiring absent class members in Rule 23 class actions to opt in to the action.").[13]

Accordingly, "no court has ever certified an opt-in class under 23(b)(3), and courts have denied certification of classes for which plaintiffs request an opt-in provision"). *Id.*; *see also Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 656 (E.D. Cal. 2009) ("Based on well-settled authority, this Court will employ an opt out procedure, as provided by Rule 23(c), and denies Defendants' request for an opt in class action.").

Regardless, filing an opt out is a minimal burden relative to the significant burdens that Securities Claimants must bear under the new Amendment and Objection Procedures, which require Securities Claimants proceeding individually to amend their claims, face "sufficiency objections akin to a motion to dismiss," participate in fact and expert discovery on an individual basis, and litigate their individual claim through trial. (ECF 13934-1 ¶¶ 4, 9-10); c.f. *Think Fin.*, 2018 WL 9801454, at *5 ("[E]ven the consumer borrowers who filed proofs of claim are not guaranteed recoveries because

---

[13] Under the original version of Rule 23, "class actions seeking money damages effectively operated on an opt-in basis, with a judgment treated as binding only upon those absent class members who affirmatively intervened in the case. The 1966 amendments introduced a new procedure—the 'opt out' class action authorized by Rule 23(b)(3)—which reversed the operative presumption of the original Rule by requiring class members to affirmatively request exclusion from the class in order to avoid being bound to the class judgment." Ryan C. Williams, *Due Process*, *Class Action Opt Outs, and the Right Not To Sue*, 115 Colum. L. Rev. 599, 602 (2015); *see also* Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356, 397 (1967) (noting that the Advisory Committee on Civil Rules rejected the suggestion that judgment in Rule 23(b)(3) class actions would bind only those who affirmatively indicated their desire to be included in the class).

REPLY MEMORANDUM IN FURTHER SUPPORT OF SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS
CASE NO. 19-30088 (DM) (LEAD CASE)

they may not have properly articulated the basis for their claims or may not be equipped or incentivized to defend their proofs of claim. Filing a claim may have been relatively easy for consumer borrowers who were familiar with their causes of action, but defending against an objection could be significantly more difficult and costly").

### C. The Court Should Schedule Tailored Class Certification Discovery and Supplemental Briefing

Securities Plaintiffs agree with the Reorganized Debtors that the Court should "set a discovery schedule for class certification, including discovery of the proposed representatives and expert witness disclosure and discovery." Reorganized Debtors' Objection at 21.

The Reorganized Debtors argue that a class certification process would then result in "at least six to nine months of significant discovery, briefing, and likely a trial on class issues." Reorganized Debtors' Objection at 2. But the Reorganized Debtors grossly overstate the potential delays in connection with class certification in order to kill an approach it finds threatening. While the Reorganized Debtors are correct that the issue of price impact often involves expert testimony, that testimony is typically limited to opining on publicly available information because, almost by definition, non-public information will not impact the price of publicly-traded securities. Based on their papers, that is the only question. Therefore, extensive document discovery on price impact is unnecessary.

If the Motion is granted, counsel for the proposed class representatives will begin to collect all documents relating to their trades in PG&E securities and produce any relevant, non-privileged documents to the Reorganized Debtors as soon as a confidentiality order can be entered.

Accordingly, the Court can set a schedule for class certification discovery and supplemental briefing that will be completed this year, as set forth in the below chart:

9

| DATE | EVENT |
|---|---|
| August 18, 2023 | Discovery requests to Securities Plaintiffs |
| September 8, 2023 | Service of Reorganized Debtors' initial expert report(s) on price impact, etc. |
| Week of September 18, 2023 | Deposition(s) of Reorganized Debtors' expert(s); depositions of proposed class representatives |
| September 22, 2023 | Service of Securities Plaintiffs' opposing expert report(s) |
| Week of October 2, 2023 | Deposition of Securities Plaintiffs' expert(s) |
| October 13, 2023 | Securities Plaintiffs' supplemental class certification brief on open class issues |
| October 20, 2023 | Reorganized Debtors' supplemental class certification brief on open class issues |
| December 1, 2023, or as soon thereafter is convenient for the Court | Class certification hearing |
| December 8, 2023 (or 7 calendar days after the Court issues an order granting Class Certification) | Motion for class notice and appointment of Class Administrator |
| January 5, 2024 (or as soon thereafter is convenient for the Court) | Hearing on Class Notice |
| January 12, 2024 (or 5 business days after this Court approves Class Notice) | Kroll provides the Securities Claimants' email and mailing addresses to the Class Administrator |
| January 17, 2024 (or 7 business days after the Class Administrator's receipt of the Securities Claimants' email and mailing addresses) | Preliminary Class Notice issued to the Securities Claimants via ECF, email, and U.S. mail |
| February 16, 2024 (or 30 calendar days after issuance of Class Notice) | Opt out deadline |

The Reorganized Debtors do not contest market efficiency or the application of the *Basic* presumption of reliance, which "is premised on the theory that investors rely on the market price of a company's security, which in an efficient market incorporates all of the company's public misrepresentations." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1957 (2021) (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)). Rather, the Reorganized Debtors seek to rebut the presumption of reliance "through evidence that its alleged misrepresentations actually had no impact on its stock price." *Id.* The Reorganized Debtors must bear the burdens of production and persuasion to prove lack of price impact by a preponderance of the evidence. *See id.* at 1960, 1963.[14]

---

[14] The Reorganized Debtors fail to carry their burden of proving a lack of price impact given they did not serve an expert report with their objection. Where a defendant fails to carry its burden of proving a lack of price impact, they fail to defeat predominance. *See In re Mattel, Inc. Sec. Litig.*, No. 2:19-cv-10860-MCS-PLA, 2021 U.S. Dist. LEXIS 194121, at *21 (C.D. Cal. Oct. 6, 2021) (finding defendants failed to carry their burden of proving a lack of price impact even where they

Footnote continued on next page

10

REPLY MEMORANDUM IN FURTHER SUPPORT OF SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS
CASE NO. 19-30088 (DM) (LEAD CASE)

Case: 19-30088   Doc# 13893   Filed: 08/01/23   Entered: 08/01/23 16:25:17   Page 15 of 23

To be clear, the issue of price impact is only relevant to the Securities Claims brought under the Securities Exchange Act of 1934 ("Exchange Act") because reliance is not an element of the Securities Claims brought under the Securities Act of 1933 ("Securities Act")—*i.e.*, the debt claims under Plan Classes 9A and 10B. *See* Motion at 17–18 (discussing the elements of the two types of Securities Claims).

## III.    THE RULE 23 FACTORS ARE SATISFIED

### A.    Rule 23(a) Is Satisfied

#### 1.    Numerosity Is Satisfied

The Reorganized Debtors argue that numerosity is defeated because "not only is joinder practicable, but it has actually happened, as each of the Securities Claimants has affirmatively elected to participate in the Chapter 11 Cases and thus could easily be joined collectively in any pleading if they chose to be represented by PERA's counsel." Reorganized Debtors' Objection at 21.

But under that view numerosity would be defeated in any case where multiple individuals filed related claims against a defendant. That is not the state of the law.

Moreover, the Reorganized Debtors deliberately miss the obvious: here, joinder has proven to be "impracticable" under Fed. R. Civ. P. 23(a). *See* 1 *Newberg* § 3:14 ("Plaintiffs do not have to demonstrate that joinder cannot be accomplished; a showing of strong litigational hardship or inconvenience is sufficient.").

#### 2.    Typicality Is Satisfied

The Reorganized Debtors argue that typicality is defeated because Securities Claimants in the proposed class "traded in at least 67 securities, while PERA purchased only HoldCo common stock traded on the NYSE, one of the bonds at issue in the Securities Litigation, and two other bonds that are not part of the Securities Litigation." Reorganized Debtors' Objection at 22.

---

submitted an expert opinion); *Ferris v. Wynn Resorts Ltd.*, No. 2:18-cv-00479-APG-DJA, 2023 U.S. Dist. LEXIS 35374, at *24 (D. Nev. Mar. 1, 2023) (where defendant's expert did not address back-end price impact, the defendant failed to carry their burden of proving a lack of price impact). Notwithstanding that, Securities Plaintiffs include expert discovery on price impact in their proposed schedule.

11

But the typicality standard is a permissive one, requiring the class representative's claims to be "reasonably coextensive" with the class's, "not . . . substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). "[T]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (citation omitted).

Moreover, the Ninth Circuit has held that such an argument should not defeat typicality. *See Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) (holding that representative parties with a direct and substantial interest may present claims on behalf of others with similar but not identical interests, provided they otherwise meet the Rule 23(a) factors). In the securities context, "*Melendres* clearly forecloses [any] argument that [a class representative] lacks standing to represent other putative class members who purchased . . . bonds in different tranches or offerings." *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. MDL 2672, 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017); *see also Schneider v. Traweek*, No. CV 88–0905 RG (KX), 1990 WL 132716, at *9 (C.D. Cal. July 31, 1990) ("The fact that the named Plaintiffs purchased different types of securities, either limited partnership units or promissory notes, at different times from different limited partnerships does not destroy the 'typicality' of their claims.").

Thus, even if PG&E securities were issued at different times, or have different yields, PERA's resulting claims and injuries are typical.[15]

Further, because all Securities Claims filed pursuant to the Extended Bar Date are based on the claims in PERA's putative class action complaint, PERA's typicality was cemented for the independent reason that it is best positioned to be making "similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted).[16]

---

[15] Likewise, while the Reorganized Debtors essentially ignore them, the Securities Act Plaintiffs' claims and injuries are also typical of the proposed class.

[16] Neither the Reorganized Debtors nor the RKS claimants dispute that commonality is satisfied under Fed. R. Civ. P. 23(a)(2).

Case: 19-30088 Doc# 13734 Filed: 05/01/23 Entered: 05/01/23 16:25:17 Page 17 of 23

### 3. Adequacy Is Satisfied

The Reorganized Debtors argue that PERA is conflicted and cannot satisfy this standard for three reasons, all of which lack merit, as explained by the Securities Plaintiffs' expert on legal ethics and class action conflicts of interest, Professor Peter A. Joy, the Henry Hitchcock Professor of Law at Washington University in St. Louis School of Law. *See* Decl. of Peter A. Joy, dated Aug. 1, 2023 ("Joy Decl."), ¶3. In short, there is no evidence that there are not funds sufficient to satisfy recoveries in this case and the Securities Litigation.

#### a. The proposed class here and the putative class in the Securities Litigation are not in conflict

First, both the Reorganized Debtors and the RKS claimants argue that the putative class in the Securities Litigation directly conflicts with Securities Claimants over funds available to satisfy claims, including hundreds of millions of dollars in insurance funds. *See* Reorganized Debtors' Objection at 22–23; RKS Objection at 19.

However, as Professor Joy explains, the proposed class does not have a conflict of interest with the putative class in the Securities Litigation 'because possible recovery in the Securities Litigation is speculative and, should there be recovery, it is not established that there are limited funds available to settle [the alleged] claims." Joy Decl. ¶ 14; *see also McLaughlin on Class Actions,* § 4:30 (19th ed. Nov. 2022 Update) ("*McLaughlin*") ("Numerous courts have stated that class certification should not be denied based on speculative suggestions of potential conflicts.").

The asserted conflict is highly speculative because it assumes facts not established. First, the claimed conflict of interest assumes that the putative class in the Securities Litigation will be certified and successful in that litigation, both events that have not occurred. Second, even if the putative class is certified and successful in the Securities Litigation, a conflict of interest will not be present unless the Reorganized Debtors and the other defendants have fewer funds and insurance than is necessary to compensate the putative class. That lack of funds has not been established. *Id.* at 10.[17]

---

[17] The Reorganized Debtors argue that "while the Individual Defendants claim to have indemnification from the Reorganized Debtors, public policy prevents the Reorganized Debtors

Footnote continued on next page

13

### b. Proposed class counsel does not have economic interests that are adverse to those of the proposed class

Second, the Reorganized Debtors argue that proposed class counsel is conflicted because any fees it obtains in connection with recoveries for the proposed class here will reduce the amount available from insurance to satisfy the claims of the putative class in the Securities Litigation. *See* Reorganized Debtors' Objection at 24–25. Not so.

Here, any contingency fee awarded based on a recovery for the proposed class of Securities Claimants will come from that recovery (not any recovery in the Securities Litigation) and must be approved by this Court. *See* Joy Decl. ¶ 16.

Moreover, as a leading treatise on class actions states, "only client conflicts that are material and presently manifest—rather than merely trivial, speculative, or contingent on the occurrence of a future event—will affect the adequacy of class counsel." 1 *Newberg* at § 3:75. The alleged conflict for proposed class counsel is not only speculative but it is contingent on three future events. *See* Joy Decl. ¶ 10.[18] It is also well-recognized that "class counsel may represent multiple sets of litigants—

---

from indemnifying the Individual Defendants from securities liabilities." Reorganized Debtors' Objection at 6. Therefore, they argue, "Any equity holders who are part of the putative class in the Securities Litigation, but did not file proofs of claim in the bankruptcy, would have very limited funds from which to collect and have an interest in preserving any insurance proceeds for the Securities Litigation." *Id.*

However, the Reorganized Debtors' authority is inapt because it involves claims under the Securities Act of 1933 (the "Securities Act"). *Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672, 676 (9th Cir. 1980) ("[T]he purpose of the [Securities Act] is regulatory rather than compensatory, and permitting indemnity would undermine the statutory purpose of assuring diligent performance of duty and deterring negligence."). The equity holders do not assert Securities Act claims against the Individual Defendants.

There is no limited pot issue for the Securities Act claims in the Securities Litigation because the Securities Act defendants include not only the Reorganized Debtors and individual defendants but also numerous large investment banks, plus significant D&O insurance.

[18] The Reorganized Debtors' authorities are inapposite because, in those cases, the asserted conflict was not speculative or contingent. *See Smith v. Levine Leichtman Cap. Partners, Inc.*, No. C 10-00010 JSW, 2011 WL 13153123, at *4 (N.D. Cal. Mar. 9, 2011) ("Plaintiffs' counsel do not dispute that litigating the *Smith* class claims "would 'risk' diminution of potential recovery from the bankruptcy for the portion of the *Smith* class also in the *Del Campo* class."); *Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *4 (N.D. Cal. Dec. 6, 2007) ("Bailey Pinney's representation of Moreno and Medrano . . . has obligated the law firm to advocate that the settlement and judgment in *Martinez* should not be approved-a position that Bailey Pinney has zealously advanced before the state trial and appellate courts. This advocacy is adverse to the

Footnote continued on next page

---

14

whether in the same action or in a related proceeding—so long as the litigants' interests are not inherently opposed." *Id*. "The interests of Securities Plaintiffs and the interests of the putative class in the Securities Litigation are aligned, they are not inherently opposed." Joy Decl. ¶ 16.

### c. The proposed class is not internally conflicted

Third, the Reorganized Debtors argue that conflicts exist within the proposed class itself "[b]ecause the Plan provides a formula for paying allowed Equity Claims, which allows the Reorganized Debtors to satisfy such claims, if allowed, using insurance proceeds and/or by issuing a certain number of shares, every dollar paid out on Debt Claims could reduce the value of any shares issued to Equity Claimants." Reorganized Debtors' Objection at 25–26.

However, as Professor Joy explains, and the Reorganized Debtors themselves recognize, this too is a hypothetical conflict because paying the Debt Claimants "*could* reduce the value" of Equity Claimants. *See* Joy Decl. ¶ 17. Additionally, the Reorganized Debtors do not address the fact that (while a settlement need not be tied to the Plan) under the Plan the Securities Claimants will be paid stock-for-stock or bond-for-bond. *See id.*

Moreover, proposed class representatives ensure that both sets of claimants are represented because they have Securities Claims based on purchases of PG&E common stock and debt securities. *See* DC ECF Nos. 121-1, 121-4.

Further, all Securities Claims arise from the same misconduct: PG&E mislead investors regarding its wildfire safety practices, including their representations regarding legal compliance and investing in safety, and failure to disclose numerous and widespread violations of powerline safety regulations. *Schneider*, 1990 WL 132716, at *9 (certifying class of investors that purchased different types of securities because "all of the named Plaintiffs and the purported class members they represent were injured by the Defendants' common course of conduct").

Indeed, Courts regularly grant class certification a single class of investors that purchased different types of securities. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 287

---

interests of McDaniel, Knox and Velox, also clients of Bailey Pinney . . . ."); *Sullivan v. Chase Inv. Servs. of Bos., Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978) (finding a conflict "great enough to influence litigation strategy").

15

1  (S.D.N.Y. 2003) (certifying a class of debt and equity purchasers, even where—unlike here—the

2  putative lead plaintiff purchased no debt securities); *In re Countrywide Fin. Corp. Sec. Litig.*, 273

3  F.R.D. 586, 624–25 (C.D. Cal. 2009) (certifying a class of investors that purchased common stock,

4  put options, and other securities).

5  **B.      Rule 23(b) Is Satisfied**

6  Rule 23 permits certification where "the court finds that the questions of law or fact

7  common to class members predominate over any questions affecting only individual members, and

8  that a class action is superior to other available methods for fairly and efficiently adjudicating the

9  controversy." Fed. R. Civ. P. 23(b)(3).

10  In determining whether superiority is satisfied, the Court must consider the four factors

11  listed in Civil Rule 23(b)(3): (a) the interest of class members in individually controlling the

12  prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the

13  controversy already commenced by or against members of the class; (c) the desirability or

14  undesirability of concentrating the litigation in a particular forum; and (d) the difficulties likely to

15  be encountered in the management of a class action. *Id*.

16  These factors militate for class certification here.

17  The Reorganized Debtors argue that factor (a)—the interest of class members in individually

18  controlling the prosecution or defense of separate actions—goes against superiority because many

19  members of the proposed class have alleged significant potential damages and have retained their

20  own counsel to pursue their claims individually. *See* Reorganized Debtors' Objection at 26–27.

21  While that may be true for the RKS claimants, who are presumptive opt outs and therefore

22  irrelevant to the analysis, most of the other Securities Claimants who have retained their own

23  counsel have voiced their support for this Motion by filing joinders. Again, any Securities

24  Claimants that do not want to participate in the class process can opt out of it.

25  The Reorganized Debtors argue that factor (b)— the extent and nature of any litigation

26  concerning the controversy already commenced by or against members of the class—goes against

27  superiority because the Reorganized Debtors and Securities Claimants have expended "significant

28

16

REPLY MEMORANDUM IN FURTHER SUPPORT OF SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF
BANKRUPTCY RULE 7023 AND FOR CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS
CASE NO. 19-30088 (DM) (LEAD CASE)

Case: 19-30088   Doc# 13994   Filed: 08/01/23   Entered: 08/01/23 16:25:17   Page 21
of 23

1  time and resources" engaging in the ADR Procedures, which would all be wasted if class
2  certification were granted. *See id.* But that is not so, because any Securities Claimant may opt out of
3  the class and go forward with the ADR Procedures. Class certification is superior here because it
4  will aid in resolving the thousands of pending Securities Claims not resolved via the ADR
5  Procedures.

6  As Reorganized Debtors recognize, factor (c)— the desirability of concentrating the
7  litigation in a particular forum—is "neutral" in the analysis, as this Court is the only possible forum
8  for resolving Securities Claims against the Reorganized Debtors.[19]

9  Finally, factor (d)—the difficulties likely to be encountered in the management of a class
10  action—tips strongly in favor of certifying the proposed class, for all the reasons discussed in
11  Section II, *supra*.

12  **IV.  CONCLUSION**

13  For the foregoing reasons, and the reasons set forth in the Motion, the Court should exercise
14  its discretion to apply Rule 23 to the Securities Claims and find that the proposed class of Securities
15  Claimants meets all applicable Rule 23 requirements, except the Court should schedule (1)
16  discovery of the proposed class representatives and (2) expert discovery on the issue of price impact
17  with respect to PG&E common stock.

18  Dated: August 1, 2023

19  Respectfully submitted,

20  **MICHELSON LAW GROUP**

21  By: /s/ Randy Michelson
22  Randy Michelson (SBN 114095)
   *Local Bankruptcy Counsel to Securities Lead*

23

24  [19] The RKS claimants cite *In re Ephedra Products Liability Litigation* for the proposition that the
   "superiority of the class action vanishes when the 'other available method is bankruptcy.'" 329 B.R.
25  1, 9 (S.D.N.Y. 2005). But if that were the case, there would be no reason at all for Bankruptcy Rule
   7023. Moreover, *Ephedra* is inapposite because there the class certification motion was untimely
26  and dealt with "small claims" for which "case discovery and fact-finding" could be "avoided
   altogether." *Id.* at 6-9. The court in *Ephedra* even noted that the "[c]laims of class members would
27  likely be few and small" such that "the likely total benefit to class members would not justify the
   cost to the estate of defending a class action under Rule 23." *Id.* at 10. Here, in contrast, numerous
28  Securities Claimants that have filed joinders to the Motion have very significant claims.

*Plaintiff and the Class*

- and –

**LABATON SUCHAROW LLP**
*Lead Counsel to Securities Lead Plaintiff and the Class*

- and -

**LOWENSTEIN SANDLER LLP**
*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

- and -

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
*Liaison Counsel for the Class*

- and -

**ROBBINS GELLER RUDMAN & DOWD LLP**
*Counsel for the Securities Act Plaintiffs*

- and -

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
*Additional Counsel for the Securities Act Plaintiffs*

18

REPLY MEMORANDUM IN FURTHER SUPPORT OF SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND FOR CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS
CASE NO. 19-30088 (DM) (LEAD CASE)