**LABATON SUCHAROW LLP**
Thomas A. Dubbs (*pro hac vice* forthcoming)
Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice* pending)
Thomas G. Hoffman, Jr. (*pro hac vice*)
140 Broadway
New York, New York 10005

*Lead Counsel to Securities Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Colleen Maker
One Lowenstein Drive
Roseland, New Jersey 07068

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

(*additional counsel on Exhibit A*)

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br>Chapter 11<br>(Jointly Administered)<br><br>**DECLARATION OF PETER A. JOY IN SUPPORT OF SECURITIES PLAINTIFFS' REPLY TO REORGANIZED DEBTORS' AND RKS CLAIMANTS' OBJECTIONS TO SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS**<br><br>Date:  August 8, 2023<br>Time:  10:00 a.m. (PT)<br>Before:  (Telephonic Appearances Only)<br> United States Bankruptcy Court<br> Courtroom 17, 16th Floor<br> San Francisco, California 94102 |

I, PETER A. JOY, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

**I.      QUALIFICATIONS AND DISCLOSURES**

1.      I am a person over eighteen (18) years of age and competent to testify. I make this Declaration based on my own professional knowledge and understanding of the California Rules of Professional Conduct ("California Rules"), applicable provisions in the California Business and Professions Code ("BPC"), applicable case authority, persuasive authority from the Restatement (Third) of the Law Governing Lawyers, other legal ethics authorities, class action treatises, customs and practices of legal professionals in California and elsewhere, and materials related to the above-captioned case. The legal ethics and class action conflicts of interest expert opinions in this Declaration are also based upon my experience, skill, training and education, and the legal ethics expert opinions expressed herein are consistent with ordinary legal ethics custom or practice, and are presented here to a reasonable degree of professional certainty.

2.      I am an attorney at law admitted to practice and on active status and in good standing in the State of Missouri (1998), the State of Ohio (1977), and I was admitted to practice in the District of Columbia (1979), where I am in good standing but on inactive status. I am also admitted to practice before the U.S. Supreme Court (1995), the Sixth Circuit Court of Appeals (1983), the Third Circuit Court of Appeals (1984), the Fifth Circuit Court of Appeals (1999), the Eighth Circuit Court of Appeals (1999), and the District Court for the Northern District of Ohio (1979). I have had a Martindale-Hubbell AV rating since 1980. My practice experience includes class action experience in federal court.

3.      I am the Henry Hitchcock Professor of Law at Washington University in St. Louis School of Law, St. Louis, Missouri, where I have taught since 1998, and where I was Vice Dean from January 2010 to July 2012 and Vice Dean for Academic Affairs from September 2018 to January 1, 2020. I previously taught at Case Western Reserve School of Law, Cleveland, Ohio, from 1978-1980, and 1981-1998. I have also had positions as a Visiting Professor, Visiting Scholar, or Visiting Fellow at Aoyama-Gakuin University (Tokyo, Japan), Hitotsubashi University Law School (Kunitachi, Japan), Monash University (Melbourne, Australia), Northumbria University Law

School (Newcastle Upon Tyne, UK), St. Louis University School of Law, and Utrecht University (Utrecht, Netherlands). I have taught at law schools for over forty years.

4. My major areas of teaching are legal ethics, clinical teaching, and trial practice and procedure. My primary area of research and scholarship is legal ethics, although I also write about legal education, clinical legal education, and less about trial practice and procedure. I teach legal ethics both in a classroom setting and in an applied setting through clinical courses.

5. I am a Subject Matter Expert for the Multistate Professional Responsibility Exam ("MPRE") with the National Conference of Bar Examiners, in the United States. I am an elected member of the American Law Institute ("ALI"). I am also a member of the American Bar Association ("ABA") Center for Professional Responsibility, Missouri Bar Association, and a former member of the Ohio Bar Association, Cleveland Bar Association, and Cuyahoga County Bar Association, in the State of Ohio.

6. I am a co-author of *Professional Responsibility: A Contemporary Approach* (3d ed. West 2017, 4th ed. 2020, 5th ed. 2023), and co-author of the second, third, and fourth editions of the teaching manual for that textbook. I have published another book, several book chapters, and numerous articles on issues of legal ethics, and the articles have appeared in law reviews, ABA publications, and state and local bar association publications. I am a columnist (previously contributing-editor) for an ethics column for the ABA publication *Criminal Justice*.

7. My legal ethics scholarship has been cited widely, including by: United States House of Representatives, Committee on the Judiciary, Committee Report, Lawsuit Abuse Reduction Act of 2011, 112-174 (resubmitted in 2013, 2015, and 2017); *ABA/BNA Lawyers' Manual on Professional Conduct*; *Annotated Model Rules of Professional Conduct*; ABA Standing Committee on Ethics and Professional Development; Association of the Bar of the City of New York Committee on Professional and Judicial Ethics; Supreme Court of Ohio Board of Professional Conduct; legal ethics treatises; and various state and federal court decisions in the United States. The news media frequently quotes me on a variety of legal ethics issues, including several quotes in the *ABA Journal*, *The New York Times*, and *The Associate Press News*.

N/A
Case: 19-30088    Doc# 13941    Filed: 08/01/23    Entered: 08/01/23 16:31:14    Page 3 of 42

8.      I was a Special Investigator for the Ohio Supreme Court Board of Commissioners on Character and Fitness (1990-91), and I served on the following bar committees: Missouri State Bar Association Professionalism Committee (approximately 1999-2001); Cleveland Bar Association Ethics Committee (1987-98) and Advertising Committee (1989-90); Cuyahoga County Bar Association Ethics Committee (1989-90, 1991-98, Vice-Chair, 1997-98), Judicial Selection/Standards Committee (1994-98), and Lawyer Referral Service Committee (1996); and the Joint Cleveland-Cuyahoga County Bar Admissions Committee (1987-92). I am also a former member of the executive committee and a former chair of the Association of American Law Schools' Professional Responsibility Section.

9.      I am a frequent presenter in the area of legal ethics for continuing legal education (CLE) courses sponsored by federal and state courts, bar associations, law firms, and law schools. Sponsoring organizations include: the ABA; the ABA Center for Professional Responsibility; the Federal Judicial Center; and Federal District Courts in Missouri and Illinois.

10.     I have been an expert witness in Ohio, Missouri, Kansas, Illinois, Massachusetts, and New York, including legal ethics issues in class actions, conflicts of interest, client confidentiality and attorney-client privilege, legal malpractice, professional discipline for alleged ethics violations, and other legal ethics issues. I have testified as an expert in state courts in Ohio and Missouri, and in Federal District Courts for the Northern District of Ohio and the District of Kansas.

11.     Within the last five years, I have not testified in a federal court case.

## II.      DOCUMENTS AND MATERIALS REVIEWED

12.     In addition to the legal ethics and class action materials discussed previously, I have reviewed the following documents and materials: Securities Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Motion for the Application of Bankruptcy Rule 7023 and the Certification of a Class of Securities Claimants; Reorganized Debtors' Objection to Securities Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Motion for the Application of Bankruptcy Rule 7023 and the Certification of a Class of Securities Claimants ("PG&E Objection"); Declaration of Robb McWilliams in Support of PG&E Objection; The RKS

4

Claimants' Objection to the Third 7023 Motion ("RKS Objection"); Declaration of Richard A. Bodnar in Support of RKS Objection; Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 (the "Plan"); Order Granting Motion for Consolidation and Appointment as Lead Plaintiff and as Lead Counsel in the Securities Litigation; Certification of PERA in the Securities Litigation; Certification of Named Plaintiff York County on Behalf of County of York Retirement Fund in the Securities Litigation; Certification of Named Plaintiff Mid-Jersey Trucking Industry and Local No. 701 Pension Fund; Certification of Named Plaintiff City of Warren Police and Fire Retirement System in the Securities Litigation; and PG&E Corporation's SEC Form 10-Q dated July 27, 2023.

## III.    FACTS ASSUMED

13.    For the purposes of this Declaration, I have assumed the following facts based on my review of the documents and materials described above and/or confirmed by counsel for Securities Plaintiffs:

- Reorganized Debtors do not quantify the amount of available insurance money, and the dollar figure is not public.

- PG&E has recorded a liability in the aggregate amount of $300 million (before available insurance), which represents its best estimate of probable losses for the Securities Litigation and the Securities Claims in the Bankruptcy Court.

- In the Securities Litigation, the equity holders assert claims for monetary damages under the Securities Exchange Act of 1934 (the "Exchange Act") against individual defendants (the "Individual Exchange Act Defendants"). Three Exchange Act Defendants are former PG&E directors and officers and two are former PG&E officers.

- PG&E's financial statements, including the Form 10-Q filed with the SEC on July 27, 2023, provide: "To the extent permitted by law, PG&E Corporation and the Utility have obligations to indemnify directors and officers for certain events or occurrences while a director or officer is or was serving in such capacity, which indemnification obligations may extend to the claims asserted against certain directors and officers in the securities class actions and in the litigation matters enumerated under the heading 'Wildfire-Related Derivative Litigation' in Note 15 of the Notes to the Consolidated Financial Statements in Item 8 of the 2022 Form 10-K. PG&E Corporation and the Utility maintain D&O Insurance coverage to reduce their exposure to such indemnification obligations."

- PG&E's articles of incorporation provide: "The liability of the directors of the corporation for monetary damages shall be eliminated to the fullest extent possible under California law." (Exhibit A.) They further provide that PG&E "is authorized to provide indemnification of agents [any person who is or was a director, officer, employee or other agent of the corporation] through bylaws, resolutions, agreements with agents, vote of

5

shareholders or disinterested directors, or otherwise, in excess of the indemnification otherwise permitted by Section 317 of the California Corporations Code, subject only to the applicable limits set forth in Section 204 of the California Corporations Code."

- The Plan of Reorganization preserved Reorganized Debtors' indemnification obligation with respect to the current and former PG&E directors and officers. (Plan at § 1.127.)

- While Reorganized Debtors state that "public policy prevents the Reorganized Debtors from indemnifying the Individual Defendants from securities liabilities," (PG&E Objection at 6), Reorganized Debtors previously have acknowledged they "may face indemnification liability" in the Securities Litigation. *In re: PG&E Corp., et al v. Public Employees Retirement, et al*, No. 21-16507 (9th Cir.), ECF No. 30 at 12 ("Critically, these resolved claims [in the bankruptcy cases] are based on alleged misconduct for which Appellants allege PG&E is jointly and severally liable with the Exchange Act Defendants and Securities Act Defendants, and for which PG&E may face indemnification liability if other defendants are found liable."); *see also In Re PG&E Corp. Securities Litigation*, No. 5:18-cv-03509-EJD (N.D. Cal.), ECF No. 206 at 3-4 ("[I]f the Claimants are to receive compensation for their securities claims against PG&E in the bankruptcy, PG&E would want to extinguish any further liability, including potential indemnity liability to the remaining defendants [in the Securities Litigation], in connection with those very same investment decisions.").

- Reorganized Debtors state that "while the Individual Defendants claim to have indemnification from the Reorganized Debtors, public policy prevents the Reorganized Debtors from indemnifying the Individual Defendants from securities liabilities." (PG&E Objection at 6.) However, the authority they cite is inapt because it involves claims under the Securities Act of 1933 (the "Securities Act"). *Laventhol et al. v. Horwitch*, 637 F.2d 672, 676 (9th Cir. 1980) ("[T]he purpose of the [Securities Act] is regulatory rather than compensatory, and permitting indemnity would undermine the statutory purpose of assuring diligent performance of duty and deterring negligence."). The equity holders do not assert Securities Act claims against the Individual Exchange Act Defendants.

- PERA and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund purchased PG&E common stock and debt securities.

- York County on behalf of the County of York Retirement Fund and City of Warren Police and Fire Retirement System purchased PG&E debt securities.

- PERA was appointed Lead Plaintiff in the Securities Litigation on September 10, 2018.

- York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are named plaintiffs in the Securities Litigation.

## IV. SUMMARY OF LEGAL ETHICS AND CLASS ACTION CONFLICTS OF INTEREST EXPERT OPINIONS

14. The following is a summary of my legal ethics and class action conflicts of interest expert opinions:

- PERA does not have a conflict of interest with Securities Claimants because possible recovery in the Securities Litigation is speculative and, should there be recovery, it is not established that there are limited funds available to settle claims for the putative class in the Securities Litigation and the proposed class of Securities Plaintiffs in this matter.

6

- PERA's counsel is not conflicted because there is not a substantial risk that counsel's representation of the putative class in the Securities Litigation would be materially and adversely affected by counsel's fiduciary duties to the proposed class of Securities Plaintiffs in this matter. Additionally, it is my legal ethics and class action conflicts of interest expert opinion that PERA's counsel does not have a personal conflict of interest due to any fees it obtains in connection with recoveries for Securities Claimants because there is no showing that there is a limited amount of insurance and other assets to resolve both the claims in this matter and the claims of the putative class in the Securities Litigation.

- The interests of the proposed class members, Debt Claimants and Equity Claimants, are aligned and are not in conflict. Additionally, if a class is certified and a settlement is proposed, the Court has the authority to accept or reject any settlement, thereby ensuring that the best interests of the class members have been protected.

## V.    LEGAL ETHICS AND CLASS ACTION CONFLICTS OF INTEREST ANALYSIS AND OPINIONS

15.    As I will explain more below, it is my legal ethics and class action conflicts of interest expert opinion that PERA does not have a conflict of interest with Securities Claimants because possible recovery in the Securities Litigation is speculative and, should there be recovery, it is not established that there are limited funds available to settle claims for the putative class in the Securities Litigation and the proposed class of Securities Plaintiffs in this matter.

The mere allegation of a conflict of interest does not make a proposed representative of a class inadequate. "Numerous court have stated that class certification should not be denied based on speculative suggestions of potential conflicts." *McLaughlin on Class Actions* (19th ed. 2022) ("*McLaughlin*") § 4:30. Both Reorganized Debtors and RKS Claimants suggest that PERA has a conflict of interest because recovery of the proposed class of Securities Claimants in this matter will somehow preclude or reduce potential recover of the putative class in the Securities Litigation. Such a claim of conflict of interest is highly speculative because it assumes facts that have not been established. First, the claimed conflict of interest assumes that the putative class in the Securities Litigation will be certified and successful in that litigation, both events that have not occurred. Second, even if the putative class is certified and successful in the Securities Litigation, a conflict of interest will not be present unless the Reorganized Debtors and the Individual Exchange Act Defendants have less funds and insurance than is necessary to compensate the putative class. That lack of funds has not been established.

N/A
Case: 19-30088    Doc# 13941    Filed: 08/01/23    Entered: 08/01/23 16:31:14    Page 7 of 42

1    Although PERA was appointed Lead Plaintiff in the Securities Litigation, the putative class

2    members in the Securities Litigation have named plaintiffs York County on behalf of the County of

3    York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking

4    Industry & Local No. 701 Pension Fund. These named plaintiffs are also available to protect the

5    interests of the putative class members in the Securities Litigation.

6        16.    As I will explain more below, it is my legal ethics and class action conflicts of

7    interest expert opinion that PERA's counsel is not conflicted because there is not a substantial risk

8    that counsel's representation of the putative class in the Securities Litigation would be materially

9    and adversely affected by counsel's fiduciary duties to the proposed class of Securities Plaintiffs in

10   this matter. Additionally, it is my legal ethics and class action conflicts of interest expert opinion

11   that PERA's counsel does not have a personal conflict of interest due to any fees it obtains in

12   connection with recoveries for Securities Claimants because there is no showing that there is a

13   limited amount of insurance and other assets to resolve both the claims in this matter and the claims

14   of the putative class in the Securities Litigation.

15       Section 128 of the Restatement (Third) of the Law Governing Lawyers states, in relevant part,

16   that a lawyer has a conflict of interest and may not "represent two or more clients in a matter if there

17   is a substantial risk that the lawyer's representation of one client would be materially and adversely

18   affected by the lawyer's duties to another client in the matter." California has adopted this position in

19   Rule 1.7 of the California Rules of Professional Conduct, which states in relevant part: "(b) A lawyer

20   shall not, without informed consent from each affected client and in compliance with paragraph (d),

21   represent a client if there is a significant risk that the lawyer's representation of the client will be

22   materially limited by the lawyer's responsibilities to or relationships with another client, a former

23   client or third person, or by the lawyer's own interests."

24       Reorganized Debtors and RKS Claimants alleged that PERA's counsel has a conflict of

25   interest because counsel's duties to the putative class in the Securities Litigation are at odds with

26   counsel's duties to the proposed class of Securities Plaintiffs in this matter. They argue that

27   maximizing the recovery from Reorganized Debtors will divert funds away from the putative class in

28

8

the Securities Litigation. Like the alleged conflict of interest for PERA, this alleged conflict is highly speculative and depends on three events: 1) the putative class is certified; 2) the putative class prevails in the Securities Litigation; and 3) the Reorganized Debtors and the Individual Securities Exchange Act Defendants have insufficient insurance and other assets available to resolve both the claims in this matter and the claims of the putative class in the Securities Litigation. None of these events have occurred, and one or more of these events may never occur.

As a leading treatise on class actions states, "only client conflicts that are material and presently manifest—rather than merely trivial, speculative, or contingent on the occurrence of a future event—will affect the adequacy of class counsel." *Newberg and Rubenstein on Class Actions* § 3:75 (6th ed. 2023). The alleged conflict for PERA's counsel is not only speculative but it is contingent on three future events. It is also well-recognized that "class counsel may represent multiple sets of litigants—whether in the same action or in a related proceeding—so long as the litigants' interests are not inherently opposed." *Id.* The interests of Securities Plaintiffs and the interests of the putative class in the Securities Litigation are aligned, they are not inherently opposed.

Reorganized Debtors and also allege that "PERA's counsel is itself conflicted because any fees it obtains in connection with recoveries for Securities Claimants will reduce the amount available from insurance to satisfy the putative class in the Securities Litigation," and "PERA's counsel certainly should not be paid handsome contingency fees from recoveries by Securities Claimants in the proof of claim process—which will, of course, reduce the funds available for distribution to claimants." (Debtor's Objection at 23 & 24.) Both of these allegations are premised on events that have not occurred. There has been no showing that the Reorganized Debtors and the Individual Securities Exchange Act Defendants have insufficient insurance and other assets available to resolve both the claims in this matter and the claims of the putative class in the Securities Litigation. In addition, the putative class in the Securities Litigation has not been certified and it has not prevailed. With regard to any fees PERA's counsel may obtain through any successful class action, the judge in that matter will have to approve them and will surely consider any contingency fees, if any, involved in approving a fee award.

Only in a true limited fund situation would PERA's counsel potentially have a conflict of interest that affects the adequacy of counsel. That situation is not present in this matter. There is nothing in the record that demonstrates a true limited fund situation. As a result, it is my legal ethics and class action conflicts of interest opinion that PERA's counsel does not have a conflict of interest.

17. It is my legal ethics and class action conflicts of interest expert opinion that the interests of the proposed class members, Debt Claimants and Equity Claimants, are aligned and are not in conflict. The liability theory for the claims of all of the proposed 7023 class members is the same—they are all based on the alleged concealment of information by the Reorganized Debtors. In this regard, their interests are perfectly aligned. With regard to damages, the Security Act claims are subject to a statutory formula that applies to all such claims.

Reorganized Debtors allege that the proposed 7023 class is internally conflicted "[b]ecause the Plan provides a formula for paying allowed Equity Claims, which allows the Reorganized Debtors to satisfy such claims, if allowed, using insurance proceeds and/or by issuing a certain number of shares, every dollar paid out on Debt Claims could reduce the value of any shares issued to Equity Claimants." (PG&E Objection at 25-26.) As the Reorganized Debtors recognize, this too is a hypothetical conflict because paying the Debt Claimants "*could* reduce the value" of Equity Claimants.

Further, if a class is certified and a settlement is proposed, the Court has the authority to accept or reject any settlement, thereby ensuring that the best interests of the class members have been protected.

## CONCLUSION

These are my independent legal ethics and class action conflicts of interest expert opinions formed on my own and without the assistance of any person. These opinions are based upon my knowledge, skill, experience, training, and education, and informed by the facts assumed, materials I reviewed, and research I performed. All of my legal ethics opinions are consistent with ordinary legal education custom or practice and are presented here to a reasonable degree of professional certainty. I reserve the right to expand upon or modify the opinions in this Declaration if presented with

10

additional facts or materials, or if I conduct supplemental research after the submission of this Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Date:     August 1, 2023

Respectfully submitted,

*Peter A. Joy*

Peter A. Joy
Attorney at Law
6624 Pershing Avenue
St. Louis, MO 63130
Tel. (314) 935-6445
E-mail: joy@wustl.edu

11

# Exhibit A





## SECRETARY OF STATE

I, *Kevin Shelley*, Secretary of State of the State of California, hereby certify:

That the attached transcript of ⟨29⟩ page(s) has been compared with the record on file in this office, of which it purports to be a copy, and that it is full, true and correct.

**IN WITNESS WHEREOF**, I execute this certificate and affix the Great Seal of the State of California this day of



APR 1 2 2004

*Kevin Shelley*

Secretary of State

Sec/State Form CE-107 (rev. 1/03)

OSP 03 80510

**ENDORSED - FILED**
in the office of the Secretary of State
of the State of California

APR 1 2 2004

**KEVIN SHELLEY**
**Secretary of State**

### RESTATED ARTICLES OF INCORPORATION
### OF
### PACIFIC GAS AND ELECTRIC COMPANY

Gordon R. Smith and Linda Y. H. Cheng certify that:

1. They are the President and the Corporate Secretary, respectively, of Pacific Gas and Electric Company, a California corporation (the "corporation").

2. The Articles of Incorporation of the corporation, as amended to the date of the filing of this certificate, including the amendments set forth herein but not separately filed (and with the omissions required by Section 910 of the Corporations Code) are amended and restated as follows:

FIRST: That the name of said corporation shall be

PACIFIC GAS AND ELECTRIC COMPANY.

SECOND: The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

The right is reserved to this corporation to amend the whole or any part of these Articles of Incorporation in any respect not prohibited by law.

THIRD: That this corporation shall have perpetual existence.

FOURTH: The corporation elects to be governed by all of the provisions of the General Corporation Law (as added to the California Corporations Code effective January 1, 1977, and as subsequently amended) not otherwise applicable to this corporation under Chapter 23 of said General Corporation Law.

FIFTH: The Board of Directors by a vote of two-thirds of the whole Board may appoint

1

from the Directors an Executive Committee, which Committee may exercise such powers as may lawfully be conferred upon it by the Bylaws of the Corporation. Such Committee may prescribe rules for its own government and its meetings may be held at such places within or without California as said Committee may determine or authorize.

SIXTH: The liability of the directors of the corporation for monetary damages shall be eliminated to the fullest extent permissible under California law.

SEVENTH: The corporation is authorized to provide indemnification of agents (as defined in Section 317 of the California Corporations Code) through bylaws, resolutions, agreements with agents, vote of shareholders or disinterested directors, or otherwise, in excess of the indemnification otherwise permitted by Section 317 of the California Corporations Code, subject only to the applicable limits set forth in Section 204 of the California Corporations Code.

EIGHTH: The total number of shares which this corporation is authorized to issue is eight hundred eighty-five million (885,000,000) of the aggregate par value of six billion eight hundred seventy-five million dollars ($6,875,000,000). All of these shares shall have full voting rights. The corporation shall be prohibited from issuing nonvoting stock.

Said eight hundred eighty-five million (885,000,000) shares shall be divided into three classes, designated as common stock, first preferred stock and $100 first preferred stock. Eight hundred million (800,000,000) of said shares shall be common stock, of the par value of $5 per share, seventy-five million (75,000,000) of said shares shall be first preferred stock, of the par value of $25 per share, and ten million (10,000,000) of said shares shall be $100 first preferred stock, of the par value of $100 per share.

## FIRST PREFERRED STOCK
## AND $100 FIRST PREFERRED STOCK

The first preferred stock and $100 first preferred stock each shall be divided into series. The first series of first preferred stock shall consist of four million two hundred eleven thousand six hundred sixty-two (4,211,662) shares and be designated as Six Per Cent First Preferred Stock. The second series of first preferred stock shall consist of one million one hundred seventy-three thousand one hundred sixty-three (1,173,163) shares and be designated as Five and One-Half Per Cent First Preferred Stock. The third series of first preferred stock shall consist of four hundred thousand (400,000) shares and be designated as Five Per Cent First Preferred Stock. The remainder of said first preferred stock, viz., 69,215,175 shares, and all of the $100 first preferred stock may be issued in one or more additional series, as determined from time to

2

Case: 19-30088    Doc# 13941    Filed: 08/01/23    Entered: 08/01/23 16:31:14    Page 15 of 42

time by the Board of Directors. Except as provided herein, the Board of Directors is hereby authorized to determine and alter the rights, preferences, privileges and restrictions granted to or imposed upon the first preferred stock or $100 first preferred stock or any series thereof with respect to any wholly unissued series of first preferred stock or $100 first preferred stock, and to fix the number of shares of any series of first preferred stock or $100 first preferred stock and the designation of any such series of first preferred stock or $100 first preferred stock. The Board of Directors, within the limits and restrictions stated in any resolution or resolutions of the Board of Directors originally fixing the number of shares constituting any series, may increase or decrease (but not below the number of shares of such series then outstanding) the number of shares of any series subsequent to the issue of shares of that series.

The owners and holders of shares of said first preferred stock and $100 first preferred stock, when issued as fully paid, are and shall be entitled to receive, from the date of issue of such shares, out of funds legally available therefor, cumulative preferential dividends, when and as declared by the Board of Directors, at the following rates upon the par value of their respective shares, and not more, viz.: Six per cent (6%) per year upon Six Per Cent First Preferred Stock; five and one-half per cent (5-1/2%) per year upon Five and One-Half Per Cent First Preferred Stock; five per cent (5%) per year upon Five Per Cent First Preferred Stock; and upon the shares of each additional series of said first preferred stock and of each series of $100 first preferred stock the dividend rate fixed therefor; and such dividends on both classes of first preferred stock and $100 first preferred stock shall be declared and shall be either paid or set apart for payment before any dividend upon the shares of common stock shall be either declared or paid.

Upon the liquidation or dissolution of this corporation at any time and in any manner, the owners and holders of shares of said first preferred stock and $100 first preferred stock issued as fully paid will be entitled to receive an amount equal to the par value of such shares plus an amount equal to all accumulated and unpaid dividends thereon to and including the date fixed for such distribution or payment before any amount shall be paid to the holders of said common stock.

If any share or shares of first preferred stock and $100 first preferred stock shall at any time be issued as only partly paid, the owners and holders of such partly paid share or shares shall have the right to receive dividends and to share in the assets of this corporation upon its liquidation or dissolution in all respects like the owners and holders of fully paid shares of first preferred stock and $100 first preferred stock, except that such right shall be only in proportion to the amount paid on account of the subscription price for which such partly paid share or shares shall have been issued.

3

The unissued shares of said first preferred stock and $100 first preferred stock may be offered for subscription or sale or in exchange for property and be issued from time to time upon such terms and conditions as said Board of Directors shall prescribe.

The first three series of said first preferred stock, namely, the Six Per Cent First Preferred Stock, the Five and One-Half Per Cent First Preferred Stock, and the Five Per Cent First Preferred Stock, are not subject to redemption.

Any or all shares of each series of said first preferred stock and $100 first preferred stock other than said first three series of first preferred stock may be redeemed at the option of this corporation, at any time or from time to time, at the redemption price fixed for such series together with accumulated and unpaid dividends at the rate fixed therefor to and including the date fixed for redemption. If less than all the outstanding shares of any such series are to be redeemed, the shares to be redeemed shall be determined pro rata or by lot in such manner as the Board of Directors may determine.

Unless the certificate of determination for any series of the first preferred stock or the $100 first preferred stock shall otherwise provide, notice of every such redemption shall be published in a newspaper of general circulation in the City and County of San Francisco, State of California, and in a newspaper of general circulation in the Borough of Manhattan, City and State of New York, at least once in each of two (2) successive weeks, commencing not earlier than sixty (60) nor later than thirty (30) days before the date fixed for redemption; successive publications need not be made in the same newspaper. A copy of such notice shall be mailed within the same period of time to each holder of record, as of the record date, of the shares to be redeemed, but the failure to mail such notice to any shareholder shall not invalidate the redemption of such shares.

From and after the date fixed for redemption, unless default be made by this corporation in paying the amount due upon redemption, dividends on the shares called for redemption shall cease to accrue, and such shares shall be deemed to be redeemed and shall be no longer outstanding, and the holders thereof shall cease to be shareholders with respect to such shares and shall have no rights with respect thereto except the right to receive from this corporation upon surrender of their certificates the amount payable upon redemption without interest. Or, if this corporation shall deposit, on or prior to the date fixed for redemption, with any bank or trust company in the City and County of San Francisco, having capital, surplus and undivided profits aggregating at least five million dollars ($5,000,000), as a trust fund, a sum sufficient to redeem the shares called for redemption, with irrevocable instructions and authority to such bank or trust company to publish or complete the publication of the notice of redemption (if this corporation shall not have theretofore completed publication of such notice), and to pay, on and after the date

4

fixed for redemption, or on and after such earlier date as the Board of Directors may determine, the amount payable upon redemption of such shares, then from and after the date of such deposit (although prior to the date fixed for redemption) such shares shall be deemed to be redeemed; and dividends on such shares shall cease to accrue after the date fixed for redemption. The said deposit shall be deemed to constitute full payment of the shares to their respective holders and from and after the date of such deposit the shares shall be no longer outstanding, and the holders thereof shall cease to be shareholders with respect to such shares and shall have no rights with respect thereto except the right to receive from said bank or trust company the amount payable upon redemption of such shares, without interest, upon surrender of their certificates therefor, and except, also, any right which such shareholders may then have to exchange or convert such shares prior to the date fixed for redemption. Any part of the funds so deposited which shall not be required for redemption payments because of such exchange or conversion shall be repaid to this corporation forthwith. The balance, if any, of the funds so deposited which shall be unclaimed at the end of six (6) years from the date fixed for redemption shall be repaid to this corporation together with any interest which shall have been allowed thereon; and thereafter the unpaid holders of shares so called for redemption shall have no claim for payment except as against this corporation.

All shares of the first preferred stock and $100 first preferred stock shall rank equally with regard to preference in dividend and liquidation rights, except that shares of different classes or different series thereof may differ as to the amounts of dividends or liquidation payments to which they are entitled, as herein set forth.

## COMMON STOCK

When all accrued dividends upon all of the issued and outstanding shares of the first preferred stock and $100 first preferred stock of this corporation shall have been declared and shall have been paid or set apart for payment, but not before, dividends may be declared and paid, out of funds legally available therefor, upon all of the issued and outstanding shares of said common stock.

Upon the liquidation or dissolution of this corporation, after the owners and holders of such first preferred stock and $100 first preferred stock shall have been paid the full amount to which they shall have been entitled under the provisions of these Articles of Incorporation, the owners and holders of such common stock shall be entitled to receive and to have paid to them the entire residue of the assets of this corporation in proportion to the number of shares of said common stock held by them respectively.

If any share or shares of common stock shall at any time be issued as only partly paid, the

5

owners and holders of such partly paid share or shares shall have the right to receive dividends and to share in the assets of this corporation upon its liquidation or dissolution in all respects like the owners and holders of fully paid shares of common stock, except that such right shall be only in proportion to the amount paid on account of the subscription price for which such partly paid share or shares shall have been issued.

The unissued shares of said common stock may be offered for subscription or sale or in exchange for property and be issued from time to time upon such terms and conditions as said Board of Directors may prescribe.

## PROHIBITION AGAINST ASSESSMENTS

Shares of such stock, whether first preferred, $100 first preferred stock or common stock, the subscription price of which shall have been paid in full, whether such price be par or more or less than par, shall be issued as fully paid shares and shall never be subject to any call or assessment for any purpose whatever. Shares of such stock, whether first preferred, $100 first preferred stock or common stock, a part only of the subscription price of which shall have been paid, shall be subject to calls for the unpaid balance of the subscription price thereof. But no call made on partly paid first preferred stock, partly paid $100 first preferred stock or partly paid common stock shall be recoverable by action or be enforceable otherwise than by sale or forfeiture of delinquent stock in accordance with the applicable provisions of the Corporations Code of California.

If at any time, whether by virtue of any amendment of these Articles of Incorporation or any amendment or change of the law of the State of California relating to corporations or otherwise, any assessment shall, in any event whatever, be levied and collected on any subscribed and issued shares of said first preferred stock or $100 first preferred stock after the subscription price thereof shall have been paid in full, the rights of the owners and holders thereof to receive dividends and their rights to share in the assets upon the liquidation or dissolution of this corporation shall, immediately upon the payment of such assessment and by virtue thereof, be increased in the same ratio as the total amount of the assessment or assessments so levied and collected shall bear to the par value of such shares of first preferred stock or $100 first preferred stock.

## RESERVES

The Board of Directors of this corporation shall, notwithstanding the foregoing provisions of these Articles of Incorporation, have authority from time to time to set aside, out of

6

the profits arising from the business of this corporation, such reasonable sums as may in their judgment be necessary and proper for working capital and for usual reserves and surplus.

NINTH: CERTIFICATE OF DETERMINATION OF PREFERENCES OF THE 5% REDEEMABLE FIRST PREFERRED STOCK: The Certificate of Determination of Preferences of the 5% Redeemable First Preferred Stock which is attached hereto as Exhibit 1 is hereby incorporated by reference as Article NINTH of these Articles of Incorporation.

TENTH: CERTIFICATE OF DETERMINATION OF PREFERENCES OF THE 5% REDEEMABLE FIRST PREFERRED STOCK, SERIES A: The Certificate of Determination of Preferences of the 5% Redeemable First Preferred Stock, Series A, which is attached hereto as Exhibit 2 is hereby incorporated by reference as Article TENTH of these Articles of Incorporation.

ELEVENTH: CERTIFICATE OF DETERMINATION OF PREFERENCES OF THE 4.80% REDEEMABLE FIRST PREFERRED STOCK: The Certificate of Determination of Preferences of the 4.80% Redeemable First Preferred Stock which is attached hereto as Exhibit 3 is hereby incorporated by reference as Article ELEVENTH of these Articles of Incorporation.

TWELFTH: CERTIFICATE OF DETERMINATION OF PREFERENCES OF THE 4.50% REDEEMABLE FIRST PREFERRED STOCK: The Certificate of Determination of Preferences of the 4.50% Redeemable First Preferred Stock which is attached hereto as Exhibit 4 is hereby incorporated by reference as Article TWELFTH of these Articles of Incorporation.

THIRTEENTH: CERTIFICATE OF DETERMINATION OF PREFERENCES OF THE 4.36% REDEEMABLE FIRST PREFERRED STOCK: The Certificate of Determination of Preferences of the 4.36% Redeemable First Preferred Stock which is attached hereto as Exhibit 5 is hereby incorporated by reference as Article THIRTEENTH of these Articles of Incorporation.

FOURTEENTH: CERTIFICATE OF DETERMINATION OF PREFERENCES OF THE 6.57% REDEEMABLE FIRST PREFERRED STOCK: The Certificate of Determination of Preferences of the 6.57% Redeemable First Preferred Stock which is attached hereto as Exhibit 6 is hereby incorporated by reference as Article FOURTEENTH of these Articles of Incorporation.

FIFTEENTH: CERTIFICATE OF DETERMINATION OF PREFERENCES OF THE 7.04% REDEEMABLE FIRST PREFERRED STOCK: The Certificate of Determination of Preferences of the 7.04% Redeemable First Preferred Stock which is attached hereto as Exhibit 7 is hereby incorporated by reference as Article FIFTEENTH of these Articles of Incorporation.

7

Case: 19-30088    Doc# 13941    Filed: 08/01/23    Entered: 08/01/23 16:31:14    Page 20 of 42

SIXTEENTH: CERTIFICATE OF DETERMINATION OF PREFERENCES OF THE 6.30% REDEEMABLE FIRST PREFERRED STOCK: The Certificate of Determination of Preferences of the 6.30% Redeemable First Preferred Stock which is attached hereto as Exhibit 8 is hereby incorporated by reference as Article SIXTEENTH of these Articles of Incorporation.

3. The foregoing amendments and restatement of the Articles of Incorporation were adopted to (1) amend Article Eighth to prohibit the corporation from issuing nonvoting equity securities, which is required by Section 1123(a)(6) of the United States Bankruptcy Code, (2) to eliminate Article Sixteenth, which previously set forth the Certificate of Determination of Preferences of the 6-7/8% Redeemable First Preferred Stock, to reflect the reduction in the authorized number of shares of that series to zero which occurred upon filing the Certificate of Decrease with respect to such series immediately preceding the filing of the Restated Articles, pursuant to California Corporations Code Section 401(c), and the elimination of that series as an authorized series of the corporation pursuant to California Corporations Code Section 401(f); and (3) to renumber the remaining Articles to reflect the deletion of Article Sixteenth.

4. The amendment to Article Eighth has not been approved by the Board of Directors or the shareholders, for the following reasons. The corporation filed a petition for voluntary bankruptcy under Chapter 11 of the U.S. Bankruptcy Code on April 6, 2001. Under the Confirmation Order dated December 22, 2003, as supplemented by orders dated January 27, 2004 and March 15, 2004, in respect of its plan of reorganization, the corporation is required to (1) amend its Articles of Incorporation to contain the provisions necessary to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code and as provided in the plan of reorganization and (2) empower the chairman of the board, the president, any vice president, the chief financial officer, the controller, the secretary, the treasurer, any assistant treasurer and any assistant secretary, jointly or severally, to exercise the power and authority to effectuate these provisions of the plan. Pursuant to California Corporations Code Section 1400, any domestic corporation with respect to which a proceeding has been initiated under any applicable statute of the United States, as now existing or hereafter enacted, relating to reorganizations or arrangements of corporations, has full power and authority to put into effect and carry out any plan of reorganization or arrangement and the orders of the court or judge entered in such proceeding and may take any proceeding and do any act provided in the plan or directed by such orders, without further action by its Board of Directors or shareholders,

8

including without limitation, the authority to amend its articles of incorporation.

5. Amendments to the Articles of Incorporation for the purpose of eliminating the 6-7/8 % Redeemable First Preferred Stock series have been approved by the board of Directors. Pursuant to California Corporations Code Sections 202(e)(3), 203.5(b), 401(c) and 401(f), amendments to the Articles of Incorporation for the purpose of eliminating the 6-7/8 % Redeemable First Preferred Stock series need not be approved by the affirmative vote of the majority of the outstanding shares; accordingly, such amendments and restatement may be adopted with approval of the Board of Directors alone.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of our own knowledge.

Date: April 12, 2004

_____
Gordon R. Smith
President

_____
Linda Y. H. Cheng
Corporate Secretary

9

EXHIBIT 1

PACIFIC GAS AND ELECTRIC COMPANY
CERTIFICATE OF DETERMINATION OF PREFERENCES
OF 5% REDEEMABLE FIRST PREFERRED STOCK

WHEREAS, the Articles of Incorporation of this corporation provide for a class of stock known as First Preferred Stock, issuable from time to time in one or more series, of which a series of such class of stock was issued as the 5% Redeemable First Preferred Stock, $25 par value (herein called the "5% Series"); and

WHEREAS, this corporation has elected to redeem, purchase, or otherwise acquire 1,082,805 shares of the 5% Series from time to time; and

WHEREAS, pursuant to California Corporations Code Section 401(c), this corporation filed a Certificate of Decrease in Number of Shares of Certain Series of First Preferred Stock on March 23, 1994, which amended the Articles of Incorporation to decrease the number of shares constituting the 5% Series from 2,860,977 to 1,778,172 shares; and

WHEREAS, pursuant to California Corporations Code Section 202(e)(3), the 1,082,805 shares constituting the decrease in the 5% Series resumed the status of authorized and unissued shares of First Preferred Stock, $25 par value; and

WHEREAS, it is in the best interest of this corporation to restate the four existing Certificates of Determination of Preferences of the 5% Series to (i) reflect the reduction in the authorized number of shares of the 5% Series, (ii) consolidate such existing Certificates of Determination of Preferences into a single Certificate of Determination of Preferences of the 5% Series, and (iii) eliminate the portions of the officers' certificates and verifications which do not set forth any of the rights, preferences, privileges, or restrictions of the 5% Series.

E-1-1

NOW, THEREFORE, BE IT RESOLVED that the foregoing restatement of the Certificates of Determination of Preferences of the 5% Series is hereby approved; and

BE IT FURTHER RESOLVED that the Certificate of Determination of Preferences of the 5% Series is hereby approved and adopted as restated in its entirety as follows:

1,778,172 shares of this corporation's unissued redeemable First Preferred Stock shall constitute a series designated "5% Redeemable First Preferred Stock"; the dividend rate of such shares shall be five per cent per year; such shares shall have no conversion rights; and the redemption price of such shares shall be

$28.25 per share if redeemed on or before July 31, 1953,
$27.75 per share if redeemed thereafter and on or before July 31, 1958,
$27.25 per share if redeemed thereafter and on or before July 31, 1963, and
$26.75 per share if redeemed thereafter.

E-1-2

EXHIBIT 2

## PACIFIC GAS AND ELECTRIC COMPANY
### CERTIFICATE OF DETERMINATION OF PREFERENCES
### OF 5% REDEEMABLE FIRST PREFERRED STOCK,
### SERIES A

WHEREAS, the Articles of Incorporation of this corporation provide for a class of stock known as First Preferred Stock, issuable from time to time in one or more series, of which a series of such class of stock was issued as the 5% Redeemable First Preferred Stock, Series A, $25 par value (herein called the "5% Series A"); and

WHEREAS, this corporation has elected to redeem, purchase, or otherwise acquire 815,678 shares of the 5% Series A from time to time; and

WHEREAS, pursuant to California Corporations Code Section 401(c), this corporation filed a Certificate of Decrease in Number of Shares of Certain Series of First Preferred Stock on March 23, 1994, which amended the Articles of Incorporation to decrease the number of shares constituting the 5% Series A from 1,750,000 to 934,322 shares; and

WHEREAS, pursuant to California Corporations Code Section 202(e)(3), the 815,678 shares constituting the decrease in the 5% Series A resumed the status of authorized and unissued shares of First Preferred Stock, $25 par value; and

WHEREAS, it is in the best interest of this corporation to restate the two existing Certificates of Determination of Preferences of the 5% Series A to (i) reflect the reduction in the authorized number of shares of the 5% Series A, (ii) consolidate such existing Certificates of Determination of Preferences into a single Certificate of Determination of Preferences of the 5% Series A, and (iii) eliminate the portions of the officers' certificates and verifications which do not set forth any of the rights, preferences, privileges, or restrictions of the 5% Series A.

NOW, THEREFORE, BE IT RESOLVED that the foregoing restatement of the Certificates of Determination of Preferences of the 5% Series A is hereby approved; and

BE IT FURTHER RESOLVED that the Certificate of Determination of Preferences of the 5% Series A is hereby approved and adopted as restated in its entirety as follows:

Case: 19-30088    Doc# 13941    Filed: 08/01/23    Entered: 08/01/23 16:31:14    Page 25 of 42

934,322 shares of this corporation's unissued redeemable First Preferred Stock shall constitute a series designated "5% Redeemable First Preferred Stock, Series A"; the dividend rate of such shares shall be five per cent per year; such shares shall have no conversion rights; and the redemption price of such shares shall be

$28.25 per share if redeemed on or before July 31, 1953,
$27.75 per share if redeemed thereafter and on or before July 31, 1958,
$27.25 per share if redeemed thereafter and on or before July 31, 1963, and
$26.75 per share if redeemed thereafter.

E-2-2

EXHIBIT 3

## PACIFIC GAS AND ELECTRIC COMPANY
### CERTIFICATE OF DETERMINATION OF PREFERENCES
### OF 4.80% REDEEMABLE FIRST PREFERRED STOCK

WHEREAS, the Articles of Incorporation of this corporation provide for a class of stock known as First Preferred Stock, issuable from time to time in one or more series, of which a series of such class of stock was issued as the 4.80% Redeemable First Preferred Stock, $25 par value (herein called the "4.80% Series"); and

WHEREAS, this corporation has elected to redeem, purchase, or otherwise acquire 724,344 shares of the 4.80% Series from time to time; and

WHEREAS, pursuant to California Corporations Code Section 401(c), this corporation filed a Certificate of Decrease in Number of Shares of Certain Series of First Preferred Stock on March 23, 1994, which amended the Articles of Incorporation to decrease the number of shares constituting the 4.80% Series from 1,517,375 to 793,031 shares; and

WHEREAS, pursuant to California Corporations Code Section 202(e)(3), the 724,344 shares constituting the decrease in the 4.80% Series resumed the status of authorized and unissued shares of First Preferred Stock, $25 par value; and

WHEREAS, it is in the best interest of this corporation to restate the two existing Certificates of Determination of Preferences of the 4.80% Series to (i) reflect the reduction in the authorized number of shares of the 4.80% Series, (ii) consolidate such existing Certificates of Determination of Preferences into a single Certificate of Determination of Preferences of the 4.80% Series, and (iii) eliminate the portions of the officers' certificates and verifications which do not set forth any of the rights, preferences, privileges, or restrictions of the 4.80% Series.

NOW, THEREFORE, BE IT RESOLVED that the foregoing restatement of the Certificates of Determination of Preferences of the 4.80% Series is hereby approved; and

BE IT FURTHER RESOLVED that the Certificate of Determination of Preferences of the 4.80% Series is hereby approved and adopted as restated in its entirety as follows:

793,031 shares of this corporation's unissued redeemable First Preferred Stock shall constitute a series designated "4.80% Redeemable First Preferred Stock"; the

E-3-1

dividend rate of such shares shall be 4.80% per year; such shares shall have no conversion rights; and the redemption price for such shares shall be

$28.75 per share if redeemed on or before January 31, 1955;
$28.25 per share if redeemed thereafter and on or before January 31, 1960;
$27.75 per share if redeemed thereafter and on or before January 31, 1965; and
$27.25 per share if redeemed thereafter.

E-3-2

EXHIBIT 4

## PACIFIC GAS AND ELECTRIC COMPANY
## CERTIFICATE OF DETERMINATION OF PREFERENCES
## OF 4.50% REDEEMABLE FIRST PREFERRED STOCK

WHEREAS, the Articles of Incorporation of this corporation provide for a class of stock known as First Preferred Stock, issuable from time to time in one or more series, of which a series of such class of stock was issued as the 4.50% Redeemable First Preferred Stock, $25 par value (herein called the "4.50% Series"); and

WHEREAS, this corporation has elected to redeem, purchase, or otherwise acquire 516,284 shares of the 4.50% Series from time to time; and

WHEREAS, pursuant to California Corporations Code Section 401(c), this corporation filed a Certificate of Decrease in Number of Shares of Certain Series of First Preferred Stock on March 23, 1994, which amended the Articles of Incorporation to decrease the number of shares constituting the 4.50% Series from 1,127,426 to 611,142 shares; and

WHEREAS, pursuant to California Corporations Code Section 202(e)(3), the 516,284 shares constituting the decrease in the 4.50% Series resumed the status of authorized and unissued shares of First Preferred Stock, $25 par value; and

WHEREAS, it is in the best interest of this corporation to restate the two existing Certificates of Determination of Preferences of the 4.50% Series to (i) reflect the reduction in the authorized number of shares of the 4.50% Series, (ii) consolidate such existing Certificates of Determination of Preferences into a single Certificate of Determination of Preferences of the 4.50% Series, and (iii) eliminate the portions of the officers' certificates and verifications which do not set forth any of the rights, preferences, privileges, or restrictions of the 4.50% Series.

NOW, THEREFORE, BE IT RESOLVED that the foregoing restatement of the Certificates of Determination of Preferences of the 4.50% Series is hereby approved; and

BE IT FURTHER RESOLVED that the Certificate of Determination of Preferences of the 4.50% Series is hereby approved and adopted as restated in its entirety as follows:

611,142 shares of this corporation's unissued redeemable first preferred stock shall constitute a series designated "4.50% Redeemable First Preferred Stock"; the dividend rate of such shares shall be 4.50% per year; such shares shall have no conversion rights; and the redemption price of such shares shall be

Case: 19-30088    Doc# 13941    Filed: 08/01/23    Entered: 08/01/23 16:31:14    Page 29 of 42

$27.25 per share if redeemed on or before July 31, 1959;
$26.75 per share if redeemed thereafter and on or before July 31, 1964;
$26.25 per share if redeemed thereafter and on or before July 31, 1969; and
$26.00 per share if redeemed thereafter.

E-4-2

EXHIBIT 5

## PACIFIC GAS AND ELECTRIC COMPANY
## CERTIFICATE OF DETERMINATION OF PREFERENCES
## OF 4.36% REDEEMABLE FIRST PREFERRED STOCK

WHEREAS, the Articles of Incorporation of this corporation provide for a class of stock known as First Preferred Stock, issuable from time to time in one or more series, of which a series of such class of stock was issued as the 4.36% Redeemable First Preferred Stock, $25 par value (herein called the "4.36% Series"); and

WHEREAS, this corporation has elected to redeem, purchase or otherwise acquire 581,709 shares of the 4.36% Series from time to time; and

WHEREAS, pursuant to California Corporations Code Section 401(c), this corporation filed a Certificate of Decrease in Number of Shares of Certain Series of First Preferred Stock on March 23, 1994, which amended the Articles of Incorporation to decrease the number of shares constituting the 4.36% Series from 1,000,000 to 418,291 shares; and

WHEREAS, pursuant to California Corporations Code Section 202(e)(3), the 581,709 shares constituting the decrease in the 4.36% Series resumed the status of authorized and unissued shares of First Preferred Stock, $25 par value; and

WHEREAS, it is in the best interest of this corporation to restate the Certificate of Determination of Preferences of the 4.36% Series to (i) reflect the reduction in the authorized number of shares of the 4.36% Series and (ii) eliminate the portions of the officers' certificate and verification which do not set forth any of the rights, preferences, privileges, or restrictions of the 4.36% Series.

NOW, THEREFORE, BE IT RESOLVED that the foregoing restatement of the Certificate of Determination of Preferences of the 4.36% Series is hereby approved; and

BE IT FURTHER RESOLVED that the Certificate of Determination of Preferences of the 4.36% Series is hereby approved and adopted as restated in its entirety as follows:

418,291 shares of this corporation's unissued Redeemable First Preferred Stock shall constitute a series designated "4.36% Redeemable First Preferred Stock"; the dividend rate of such shares shall be 4.36% per year; such shares shall have no conversion rights; and the redemption price of such shares shall be

$26.75 per share if redeemed on or before October 31, 1960;
$26.50 per share if redeemed thereafter and on or before October 31, 1965;
$26.25 per share if redeemed thereafter and on or before October 31, 1970;
$26.00 per share if redeemed thereafter and on or before October 31, 1975; and
$25.75 per share if redeemed thereafter.

EXHIBIT 6

## CERTIFICATE OF DETERMINATION OF PREFERENCES
## OF 6.57% REDEEMABLE FIRST PREFERRED STOCK OF
## PACIFIC GAS AND ELECTRIC COMPANY

WHEREAS, the Articles of Incorporation of this corporation provide for a class of stock known as First Preferred Stock, issuable from time to time in one or more series, of which a series of such class of stock was issued as the 6.57% Redeemable First Preferred Stock, $25 par value (herein called the "6.57% Series"); and

WHEREAS, it is in the best interest of this corporation to restate the Certificate of Determination of Preferences of the 6.57% Series to eliminate the portions of the officers' certificate and verification which do not set forth any of the rights, preferences, privileges, or restrictions of the 6.57% Series.

NOW, THEREFORE, BE IT RESOLVED that the foregoing restatement of the Certificate of Determination of Preferences of the 6.57% Series is hereby approved; and

BE IT FURTHER RESOLVED that the Certificate of Determination of Preferences of the 6.57% Series is hereby approved and adopted as restated in its entirety as follows:

3,000,000 shares of this corporation's unissued First Preferred Stock, $25 par value, shall constitute a series designated "6.57% Redeemable First Preferred Stock" (hereinafter referred to as the "6.57% Series").

The terms of the 6.57% Series are hereby fixed as    follows:

(a)      The holders of shares of the 6.57% Series shall be entitled to receive, when and as declared by the Board of Directors, dividends at the rate of 6.57 percent of par value thereof per annum, and no more.  Such dividends shall be cumulative with respect to each share from the date of issuance thereof.

(b)      No dividend shall be declared or paid on any shares of the 6.57% Series or on any shares of any other series or class of preferred stock unless a ratable dividend on the 6.57% Series and such other series or class of preferred stock, in proportion to the full preferential amounts to which each series or class is entitled, is declared and is paid or set apart for payment.  As used herein, the term "preferred stock" shall mean all series of the first preferred stock, $25 par value per share, and first preferred stock, $100 par value per share, and any other class of stock ranking equally with the preferred stock as to preference in dividends and liquidation rights.

E-6-1

notwithstanding that shares of such series and classes may differ as to the amounts of dividends or liquidation payments to which they are entitled.

(c)     No junior shares or shares of preferred stock shall be purchased, redeemed or otherwise acquired by the corporation, and no moneys shall be paid to or set aside or made available for a sinking fund for the purchase or redemption of junior shares or shares of preferred stock, unless full cumulative dividends upon all series and classes of preferred stock then outstanding to the end of the dividend period next preceding the date fixed for such redemption (and for the current dividend period if the date fixed for such redemption is a dividend payment date) shall have been declared and shall have been paid or set aside for payment. As used herein, the term "junior shares" shall mean common shares or any other shares ranking junior to the preferred stock either as to dividends or upon liquidation, dissolution, or winding up.

(d)     The shares of the 6.57% Series shall not be subject to redemption by this corporation prior to July 31, 2002. On or after July 31, 2002, the redemption price shall be $25.00 per share, together with an amount equal to all accumulated and unpaid dividends thereon to and including the date of redemption.

(e)     Shares of the 6.57% Series shall also be subject to redemption through the operation of a sinking fund (herein called the "Sinking Fund") at the redemption price (the "Sinking Fund Redemption Price") of $25.00 per share plus an amount equal to the accumulated and unpaid dividends thereon to and including the redemption date, whether or not earned or declared. For the purposes of the Sinking Fund, out of any funds of the corporation legally available therefor remaining after full cumulative dividends upon all series and classes of preferred stock then outstanding to the end of the dividend period next preceding the date fixed for such redemption (and for the current dividend period if the date fixed for such redemption is a dividend payment date) shall have been declared and shall have been paid or set apart for payment, the corporation shall redeem 150,000 shares of the 6.57% Series annually on each July 31, from 2002 through 2006, inclusive, and 2,250,000 shares on July 31, 2007, at the Sinking Fund Redemption Price. The Sinking Fund shall be cumulative so that if on any such July 31 the funds of the corporation legally available therefor shall be insufficient to permit the required redemption in full, or if for any other reason such redemption shall not have been made in full, the remaining shares of the 6.57% Series so required to be redeemed shall be redeemed before any cash dividend shall be paid or declared, or any distribution made, on any junior shares or before any junior shares or any shares of preferred stock shall be purchased, redeemed or otherwise acquired by the corporation, or any monies shall be paid to or set aside or made available for a sinking fund for the purchase or redemption or any junior shares or any shares of preferred stock; provided, however, that, notwithstanding the existence of any such

E-6-2

deficiency, the corporation may make any required sinking fund redemption on any other series or class of preferred stock if the number of shares of such other series or class of preferred stock being so redeemed bears (as nearly as practicable) the same ratio to the aggregate number of shares of such other series or class then due to be redeemed as the number of shares of the 6.57% Series being redeemed bears to the aggregate number of shares of the 6.57% Series then due to be redeemed.

(f)     Shares of the 6.57% Series redeemed otherwise than as required by section (e) or purchased or otherwise acquired by the corporation may, at the option of the corporation, be applied as a credit against any Sinking Fund redemption required by section (e).  Moneys available for the Sinking Fund shall be applied on each such July 31 to the redemption of shares of the 6.57% Series.

(g)     Any shares of the 6.57% Series which have been redeemed, purchased, or otherwise acquired by the corporation shall become authorized and unissued shares of the First Preferred Stock, $25 par value, but shall not be reissued as shares of the 6.57% Series.

(h)     Upon liquidation, dissolution, or winding up of the corporation, the holders of shares of the 6.57% Series shall be entitled to receive the liquidation value per share, which is hereby fixed at $25.00 per share, plus an amount equal to all accumulated and unpaid dividends thereon at such time, whether or not earned or declared.

(i)     Dividends shall be computed on a basis of a 360-day year of twelve 30-day months.

(j)     If the date for payment of any dividend or the date fixed for redemption of any share of the 6.57% Series shall not be on a business day, then payment of the dividend or applicable redemption price need not be made on such date, but may be made on the next succeeding business day with the same force and effect as if made on the date for payment of such dividend or date fixed for redemption.

E-6-3

EXHIBIT 7

## CERTIFICATE OF DETERMINATION OF PREFERENCES
## OF 7.04% REDEEMABLE FIRST PREFERRED STOCK OF
## PACIFIC GAS AND ELECTRIC COMPANY

WHEREAS, the Articles of Incorporation of this corporation provide for a class of stock known as First Preferred Stock, issuable from time to time in one or more series, of which a series of such class of stock was issued as the 7.04% Redeemable First Preferred Stock, $25 par value (herein called the "7.04% Series"); and

WHEREAS, it is in the best interest of this corporation to restate the Certificate of Determination of Preferences of the 7.04% Series to eliminate the portions of the officers' certificate and verification which do not set forth any of the rights, preferences, privileges, or restrictions of the 7.04% Series.

NOW, THEREFORE, BE IT RESOLVED that the foregoing restatement of the Certificate of Determination of Preferences of the 7.04% Series is hereby approved; and

BE IT FURTHER RESOLVED that the Certificate of Determination of Preferences of the 7.04% Series is hereby approved and adopted as restated in its entirety as follows:

3,000,000 shares of this corporation's unissued First Preferred Stock, $25 par value, shall constitute a series designated "7.04% Redeemable First Preferred Stock" (hereinafter referred to as the "7.04% Series").

The terms of the 7.04% Series are hereby fixed as follows:

(a)     The holders of shares of the 7.04% Series shall be entitled to receive, when and as declared by the Board of Directors, dividends at the rate of 7.04 percent of par value thereof per annum, and no more. Such dividends shall be cumulative with respect to each share from the date of issuance thereof.

(b)     No dividend shall be declared or paid on any shares of the 7.04% Series or on any shares of any other series or class of preferred stock unless a ratable dividend on the 7.04% Series and such other series or class of preferred stock, in proportion to the full preferential amounts to which each series or class is entitled, is declared and is paid or set apart for payment. As used herein, the term "preferred stock" shall mean all series of the first preferred stock, $25 par value per share, and first preferred stock, $100 par value per share, and any other class of stock ranking equally with the preferred stock as to preference in dividends and liquidation rights,

E-7-1

notwithstanding that shares of such series and classes may differ as to amounts of dividends or liquidation payments to which they are entitled.

(c)    No junior shares or shares of preferred stock shall be purchased, redeemed, or otherwise acquired by the corporation, and no moneys shall be paid to or set aside or made available for a sinking fund for the purchase or redemption of junior shares or shares of preferred stock, unless full cumulative dividends upon all series and classes of preferred stock then outstanding to the end of the dividend period next preceding the date fixed for such redemption (and for the current dividend period if the date fixed for such redemption is a dividend payment date) shall have been declared and shall have been paid or set aside for payment. As used herein, the term "junior shares" shall mean common shares or any other shares ranking junior to the preferred stock either as to dividends or upon liquidation, dissolution, or winding up.

(d)    The shares of the 7.04% Series shall not be subject to redemption by this corporation prior to January 31, 2003. On and after January 31, 2003, the redemption price shall be as follows:

If redeemed during the 12 months' period beginning January 31,

| 2003 | $25.88 | 2008 | $25.44 |
| 2004 | $25.79 | 2009 | $25.35 |
| 2005 | $25.70 | 2010 | $25.26 |
| 2006 | $25.62 | 2011 | $25.18 |
| 2007 | $25.53 | 2012 | $25.09 |

and at $25.00 per share on and after January 31, 2013, together in each case with an amount equal to all accumulated and unpaid dividends thereon to and including the date of redemption. For the purpose of redeeming any shares of the 7.04% Series, payment of the redemption price shall be out of any funds of the corporation legally available therefor remaining after: (i) full cumulative dividends upon all series and classes of preferred stock then outstanding to the end of the dividend period next preceding the date fixed for such redemption (and for the current dividend period if the date fixed for such redemption is a dividend payment date) shall have been declared and shall have been paid or set apart for payment, and (ii) all money shall have been paid to or set aside or made available for any sinking fund for the purchase or redemption of all series of and classes of preferred stock as may be required by the terms of such preferred stock.

(e)    Any shares of the 7.04% Series which have been redeemed, purchased, or otherwise acquired by the corporation shall become authorized and unissued shares

E-7-2

of the First Preferred Stock, $25 par value, but shall not be reissued as shares of the 7.04% Series.

(f)　　Upon liquidation, dissolution, or winding up of the corporation, the holders of shares of the 7.04% Series shall be entitled to receive the liquidation value per share, which is hereby fixed at $25.00 per share, plus an amount equal to all accumulated and unpaid dividends thereon at such time, whether or not earned or declared.

(g)　　Dividends shall be computed on a basis of a 360-day year of twelve 30-day months.

(h)　　If the date for payment of any dividend or the date fixed for redemption of any share of the 7.04% Series shall not be a business day, then payment of the dividend or applicable redemption price need not be made on such date, but may be made on the next succeeding business day with the same force and effect as if made on the date for payment of such dividend or date fixed for redemption.

Case: 19-30088　　Doc# 13941　　Filed: 08/01/23　　Entered: 08/01/23 16:31:14　　Page 38 of 42

EXHIBIT 8

## CERTIFICATE OF DETERMINATION OF PREFERENCES
## OF 6.30% REDEEMABLE FIRST PREFERRED STOCK OF
## PACIFIC GAS AND ELECTRIC COMPANY

WHEREAS, the Articles of Incorporation of this corporation provide for a class of stock known as First Preferred Stock, issuable from time to time in one or more series, of which a series of such class of stock was issued as the 6.30% Redeemable First Preferred Stock, $25 par value (herein called the "6.30% Series"); and

WHEREAS, it is in the best interest of this corporation to restate the Certificate of Determination of Preferences of the 6.30% Series to eliminate the portions of the officers' certificate and verification which do not set forth any of the rights, preferences, privileges, or restrictions of the 6.30% Series.

NOW, THEREFORE, BE IT RESOLVED that the foregoing restatement of the Certificate of Determination of Preferences of the 6.30% Series is hereby approved; and

BE IT FURTHER RESOLVED, that the Certificate of Determination of Preferences of the 6.30% Series is hereby approved and adopted as restated in its entirety as follows:

2,500,000 shares of this corporation's unissued Redeemable First Preferred Stock, $25 par value, shall constitute a series designated "6.30% Redeemable First Preferred Stock" (hereinafter referred to as the "6.30% Series").

The terms of the 6.30% Series are hereby fixed as follows:

(a)  The holders of shares of the 6.30% Series shall be entitled to receive, when and as declared by the Board of Directors, dividends at the rate of 6.30 percent of par value thereof per annum, and no more. Such dividends shall be cumulative with respect to each share from the date of issuance thereof.

E-8-1

(b)     No dividend shall be declared or paid on any shares of the 6.30% Series or on any shares of any other series or class of preferred stock unless a ratable dividend on the 6.30% Series and such other series or class of preferred stock, in proportion to the full preferential amounts to which each series or class is entitled, is declared and is paid or set apart for payment. As used herein, the term "preferred stock" shall mean all series of the first preferred stock, $25 par value per share, and first preferred stock, $100 par value per share, and any other class of stock ranking equally with the preferred stock as to preference in dividends and liquidation rights, notwithstanding that shares of such series and classes may differ as to amounts of dividends or liquidation payments to which they are entitled.

(c)     No junior shares or shares of preferred stock shall be purchased, redeemed, or otherwise acquired by the corporation, and no moneys shall be paid to or set aside or made available for a sinking fund for the purchase or redemption of junior shares or shares of preferred stock, unless full cumulative dividends upon all series and classes of preferred stock then outstanding to the end of the dividend period next preceding the date fixed for such redemption (and for the current dividend period if the date fixed for such redemption is a dividend payment date) shall have been declared and shall have been paid or set aside for payment. As used herein, the term "junior shares" shall mean common shares or any other shares ranking junior to the preferred stock either as to dividends or upon liquidation, dissolution, or winding up.

(d)     The shares of the 6.30% Series shall not be subject to redemption by this corporation prior to January 31, 2004. On and after January 31, 2004, the redemption price shall be $25.00 per share, together with an amount equal to all accumulated and unpaid dividends thereon to and including the date of redemption. For the purpose of redeeming any shares of the 6.30% Series, payment of the redemption price shall be out of any funds of the corporation legally available therefor remaining after: (i) full cumulative dividends upon all series and classes of preferred stock then outstanding to the end of the dividend period next preceding the date fixed for such redemption (and for the current dividend period if the date fixed for such redemption is a dividend payment date) shall have been declared and shall have been paid or set apart for payment, and (ii) all money shall have been paid to or set aside or made available for any sinking fund for the purchase or redemption of all series of and classes of preferred stock as may be required by the terms of such preferred stock.

(e)     Shares of the 6.30% Series shall also be subject to redemption through the operation of a sinking fund (herein called the "Sinking Fund") at the redemption price (the "Sinking Fund Redemption Price") of $25.00 per share plus an amount equal to the accumulated and unpaid dividends thereon to and including the redemption date, whether or not earned or declared. For the purposes of the Sinking Fund, out of any funds of the corporation legally available therefor remaining after full cumulative dividends upon all series and classes of preferred

Case: 19-30088    Doc# 13941    Filed: 08/01/23    Entered: 08/01/23 16:31:14    Page 40 of 42

stock then outstanding to the end of the dividend period next preceding the date fixed for such redemption (and for the current dividend period if the date fixed for such redemption is a dividend payment date) shall have been declared and shall have been paid or set apart for payment, the corporation shall redeem 125,000 shares of the 6.30% Series annually on each January 31, from 2004 through 2008, inclusive, and 1,875,000 shares on January 31, 2009, at the Sinking Fund Redemption Price. The Sinking Fund shall be cumulative so that if on any such January 31 the funds of the corporation legally available therefor shall be insufficient to permit the required redemption in full, or if for any other reason such redemption shall not have been made in full, the remaining shares of the 6.30% Series so required to be redeemed shall be redeemed before any cash dividend shall be paid or declared, or any distribution made, on any junior shares or before any junior shares or any shares of preferred stock shall be purchased, redeemed or otherwise acquired by the corporation, or any moneys shall be paid to or set aside or made available for a sinking fund for the purchase or redemption of any junior shares or any shares of preferred stock; *provided, however,* that, notwithstanding the existence of any such deficiency, the corporation may make any required sinking fund redemption on any other series or class of preferred stock if the number of shares of such other series or class of preferred stock being so redeemed bears (as nearly as practicable) the same ratio to the aggregate number of shares of such other series or class then due to be redeemed as the number of shares of the 6.30% Series being redeemed bears to the aggregate number of shares of the 6.30% Series then due to be redeemed.

(f)     Shares of the 6.30% Series redeemed otherwise than as required by section (e) or purchased or otherwise acquired by the corporation may, at the option of the corporation, be applied as a credit against any Sinking Fund redemption required by section (e). Moneys available for the Sinking Fund shall be applied on each such January 31 to the redemption of shares of the 6.30% Series.

(g)     Any shares of the 6.30% Series which have been redeemed, purchased, or otherwise acquired by the corporation shall become authorized and unissued shares of the First Preferred Stock, $25 par value, but shall not be reissued as shares of the 6.30% Series.

(h)     Upon liquidation, dissolution, or winding up of the corporation, the holders of shares of the 6.30% Series shall be entitled to receive the liquidation value per share, which is hereby fixed at $25.00 per share, plus an amount equal to all accumulated and unpaid dividends thereon at such time, whether or not earned or declared.

(i)     Dividends shall be computed on a basis of a 360-day year of twelve 30-day months.

(j)     If the date for payment of any dividend or the date fixed for redemption of any share of the 6.30% Series shall not be a business day, then payment of the

E-8-3

dividend or applicable redemption price need not be made on such date, but may be made on the next succeeding business day with the same force and effect as if made on the date for payment of such dividend or date fixed for redemption.

E-8-4

