David P. Addington
298 Saint James Drive
Piedmont, CA 94611

Telephone: (415) 606-6552
Email: dpapiedmont@gmail.com

In pro per

FILED
AUG 15 2023
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

In re:

PG&E CORPORATION,

-and-

PACIFIC GAS AND ELECTRIC COMPANY,

Debtors.

Affects Both Debtors.

Bankruptcy Case No. 19-30088 (DM)

Adv. Proc. No. 23-03005 (DM)

**CREDITOR DAVID P. ADDINGTON'S MOTION FOR RECONSIDERATION (CLAIM NO. 3093)**

[Related to Docket No. 13951]

Creditor David P. Addington, *in pro per*, respectfully submits this Motion for Reconsideration of the Court's Order, entered on Docket August 8, 2023, and received via USPS on August 14, 2023, in the above-captioned Case in light of the following:

## ADDINGTON OWNS THE TOWERS

The real property located at 298 Saint James is owned in fee by DAVID P. ADDINGTON.[1]

The towers at 298 Saint James are real property.[2]

Addington owns the towers.

## EASEMENTS DO NOT CONVEY FEE

From the Court's Memorandum of 7/24/23, page 7, beginning on line nine:

"In contrast, PG&E does present law that demonstrates that its easement, like all easements, is real property *separate* from the *fee* itself."

Fee is *ownership* of real property. As the Court here acknowledges, the grant, while conveying real property rights, is not a transfer of fee ownership. Easements cannot and do not convey fee *ownership*.

> An easement "represents a limited privilege to use the land of another,... but does not create an interest in the land itself." (Kazi v. State Farm Fire & Casualty Co, (2001) 24 Cal.4th 871, 881.) An easement involves primarily the privilege of doing a certain act on, or to the detriment of, another's property. An easement gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be less than the right of ownership. Thus, the owner of an easement is not the owner of the property, but merely the possessor of a "right to use someone's land for a specified purpose ...." (Blackmore v. Powell (2007) 150 Cal.App.4th 1593; McBride v. Smith, (2018) 18 Cal. App. 5th 1160,1174.)
>
> Generally, easements are distinguished from estates in land such as ownership in fee, tenancy in common, joint tenancy, and leaseholds, which are forms of possession of land. (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, §§ 9–10, 382, pp. 59–60, 446–447.) " 'An easement involves primarily the privilege of doing a certain act on, or to the detriment of, another's property.' ( Wright v. Best (1942) 19 Cal. 2d 368, 381 [121 P.2d 702].)An easement gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be less than the right of ownership. (Mehdizadeh v. Mincer (1996) 46 Cal.App.4th 1296, 1306 [54 Cal. Rptr.2d 284], quoting Wright v. Best (1942) 19 Cal.2d 368, 381 [121 P.2d 702].) Blackmore v. Powell 150 Cal. App. 4th 1593

---

[1] Addington has previously provided this Court with the title report(s) for 298 Saint James (Exhibits N and O filed with Opposition Motion March 31, 2022) and DEBTORS have raised no objection,

[2] 1) Property is either: 1. Real or immovable; or,2. Personal or movable. Cal Civ Code § 657

2) Real or immovable property consists of: 1. Land; 2. That which is affixed to land; 3. That which is incidental or appurtenant to land; 4. That which is immovable by law; except that for the purposes of sale, emblements, industrial growing crops and things attached to or forming part of the land, which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the provisions of the title of this code regulating the sales of goods. Cal Civ Code § 658

3) The towers at 298 Saint James are immovable and affixed to the land. The towers are real property.

> "[A]n easement is not a type of ownership, but rather an 'incorporeal interest in land . . . '" which confers a right upon the owner thereof to some profit, benefit, dominion, or lawful use out of or over the estate of another.'" ( Hansen v. Sandridge Partners, L.P. (2018) 22 Cal.App.5th 1020, 1032

> An easement is an interest *in the land of another* that entitles the owner of the easement to a limited use or enjoyment of the other's land [Goble v. Dotson (1962) 203 Cal. App. 2d 272, 277, 21 Cal. Rptr. 769; City of Long Beach v. Daugherty (1977) 75 Cal. App. 3d 972, 977, 142 Cal. Rptr. 593, cert. den., 439 U.S. 823 (9178); Restatement of Property § 450(a), (b)].

> Easement is interest *in land of another*, but such interest carries only right to use land and *does not carry fee*. Lyons v. Schwartz (Cal. App. 1940), 40 Cal. App. 2d 60, 104 P.2d 383, 1940 Cal. App. LEXIS 66.

An easement requires the fee to be vested in an entity separate and distinct from the grantee. In the case at 298 Saint James, the grant provides DEBTORS non-possesory real property interests in a 60-foot-wide strip of land on where they can erect and maintain towers to facilitate the transmission of electricity. But the grant cannot and does not transfer fee in the real property but allows and prioritizes use of the real property in accordance with the purposes and conditions of the grant.

## PERSONAL PROPERTY, FIXTURES AND REAL PROPERTY

*Quicquid plantur solo, solo credit.*

> If a party places property upon the land of another permanently attached and affixed, without any agreement providing for the removal of any portion of the personality, the property becomes a part of the land. Pomeroy v. Bell (Cal. 1897), 118 Cal. 635, 50 P. 683, 1897 Cal. LEXIS 822.

> In general, whatever is once annexed to freehold becomes parcel thereof, and passes with conveyance of estate. Sands v. Pfeiffer (Cal. 1858), 10 Cal. 258, 1858 Cal. LEXIS 225.

As these cases from California - and decided prior to the date of the recorded grant - make clear, personal property attached to real property becomes part of the fee. The parties to the recorded grant knew this to be the case. The law of California is clear - chattels permanently attached to the land of another become part of that land. ADDINGTON has been unable to identify an exception to this rule in any jurisdiction or circumstance.

# EASEMENT IN OPERATION

ADDINGTON'S ownership of the towers does not extinguish the easement, nor does it prohibit the DEBTORS' use of the towers. .

From the Court's Memorandum of 7/24/23, page 7, beginning on line thirteen:

> The extent of any easement "is determined by the grant, or the nature of the enjoyment by which it was acquired." In this case, the recorded grant of easement was specifically for the erection and maintenance of the Towers and transmission lines.

The language from the recorded easement is as follows:

> "does hereby *grant* unto the said party of the second part, its successors and assigns, *upon the conditions and for the purposes hereinafter set forth*, an *easement of a tract of land* of uniform width of sixty(60) feet situated in the County of Alameda, State of California, the center line of which said strip of land sixty (60) feet in width, over which said easement is hereby granted, being more particularly described as follows, to wit;"

As discussed above, an easement is created by a fee owner's grant of rights in its' real property to another. Here, ADDINGTON's predecessor grants PG&E's predecessor an easement of a tract of land sixty feet in width. This tract of land is real property owned in fee by the Grantor. The rights granted to Grantee to this real property are rights in real property. The Grantee's rights in this easement tract are limited *"upon the conditions and for the purposes hereinafter set forth"*. All rights not expressly granted are reserved to the Grantor.

> Where the easement is founded upon a grant, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee. The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement. It is not necessary for him to make any reservation to protect his interests in the land, for what he does not convey, he still retains. Friends of the Trails v. Blasius 78 Cal. App. 4th 810 Cal. App. Ct., 3rd Dist. | 2000-02-28

The purposes and conditions both limit and prioritize the Grantee's use of the real property. The Grantee can use the real property *"for the transmission and distribution of electricity"*. The Grantee's pursuit of this purpose is acknowledged to be the priority within the affected land. The Grantee's use is restricted but prioritized. Where necessary for the transmission and distribution of electricity, the Grantee can use the Real Property subject to the grant even if the Grantor's desired use of the real property is thereby diminished or eliminated. However, the Grantee in every

circumstance must *"avoid so far as it reasonably can interfering"* with Grantor's land use. In pursuit of its granted purpose, Grantee can do what it must with the real property, which include the towers. Where Grantee's use of the easement interferes with Grantor's land use, Grantee must have determined its actions are required in pursuit of its granted purpose and that no reasonable option is available that avoids such interference.

Both ADDINGTON and PG&E have (or had) rights in the real property at 298 Saint James. This property includes the towers. For the purpose of electrical transmission, PG&E has a priority. Beyond PG&E's prioritized use, ADDINGTON retains all rights. Outside the purpose of electrical transmission, Grantee has no rights to the real property.

## DECLARATORY RELIEF AND QUIET TITLE

ADDINGTON and the DEBTORS do not agree regarding their respective rights and obligations arising out of the easement. These disagreements require declaratory relief and quite title actions to avoid further litigation.

## TERMINATION

DEBTORS have repeatedly made clear their belief that an active easement cannot be terminated.

ADDINGTON disagrees and believes the easement at 298 can be, and has been, terminated and extinguished in accord with its terms.

ADDINGTON did not and cannot terminate the easement. This Court's ruling of 5/16/22 made clear that ADDINGTON cannot terminate the easement. ADDINGTON's recorded notice does not terminate the easement. The notice informs the public that the easement has terminated in accordance with its own terms. The recording of the notice did not terminate and extinguish the easement; just as the removal of the notice, will not restore the easement.

This Court has held that "It is a question of fact whether PG&E's actions or inactions give rise to any recovery by ADDINGTON, and if so, whether that recovery should result in termination of the easement…". The facts make plain that DEBTORS' actions have repeatedly fallen short of

the high and inflexible standards set forth in the easement. ADDINGTON has requested Declaratory Relief to understand better the easements operation. Without such Declaratory Relief ADDINGTON will - as he must - act in accordance with the plain and direct language of the recorded grant.

RIGHTS OF APPROVAL

This Court has held that DEBTORS may have rights of approval over proposed changes to ADDINGTON's property. ADDINGTON does not agree that such rights exist. The City of Piedmont, however, thinks the DEBTORS do have some rights of approval over ADDINGTON's property. Should these rights exist they must emanate from the easement so an action for Declaratory Relief is the proper forum for their unveiling. Should these rights not exist, an action for Quiet Title has been requested so as to correct the mistaken perceptions of the City and others.

RELEASE

ADDINGTON'S has released DEBTORS from any claims arising from their maintenance *work* done on ADDINGTON'S property. ADDINGTON bought the property subject to the easement. At the time of ADDINGTON'S purchase the topography within the easement had remained unchanged for at least fifty years and nothing indicated that any change was needed. Yet, within months of ADDINGTON'S purchase, DEBTORS identified conditions on ADDINGTON'S property that required extensive changes to the property's topography. These changes required the expenditure of hundreds of thousands of rate payer dollars and resulted in a topography far less conducive to ADDINGTON's land use.

ADDINGTON has released DEBTORS from any further liability arising from this work. The release makes clear that both ADDINGTON and DEBTORS intend the release to be limited to the work. For the release to be valid, the "work" has to be defined. ADDINGTON has asked to know the conditions which necessitated the changes to his property, what work was done and if the work sufficiently addresses the conditions that mandated it.

The DEBTORS must have documents that identify the conditions that required the topographic changes.. DEBTORS must have documents of a plan to address these conditions. The

DAVID P ADDINGTON
Telephone: 415/606 6552

DEBTORS must have documents that indicate the new conditions have sufficiently addressed the conditions. These documents should be readily available and constitute no burden to produce. The DEBTORS have produced none of these documents despite repeated requests.

The documents are necessary to define the extent of the release and to provide ADDINGTON with guidance regarding future changes to his properties topography that the DEBTORS might require, or ADDINGTON might intend.

## DAMAGES FOR EMOTIONAL DISTRESS

> But the availability of damages for emotional distress caused by trespass is an established principle. "It is settled that, regardless of whether the occupant of land has sustained physical injury, he may recover damages for the discomfort and annoyance of himself and the members of his family and for mental suffering occasioned by fear for the safety of himself and his family when such discomfort or suffering has been proximately caused by a trespass or a nuisance." (Acadia, California, Ltd. v. Herbert (1960) 54 Cal.2d 328, 337-338, 5 Cal. Rptr. 686.)

ADDINGTON'S poor drafting has confused the Court regarding his claims for Emotional Distress damages. DEBTORS' repeatedly trespassed, often under cover of darkness, on ADDINGTON'S residence caused annoyance and discomfort to ADDINGTON and his family which was the natural and proximate result of the trespass. At least twice, the DEBTORS entered ADDINGTON'S property at night and took photos and removed the light(s) resting on his tower. ADDINGTON has previously provided this Court with a <u>Declaration on Stress</u> evidencing the emotional distress caused to himself and his family.

> Generally, in an invasion of privacy action, the plaintiff is entitled to damages which will compensate for all the harm proximately caused by the defendant's intrusion on the plaintiff's privacy [see Leavy v. Cooney (1963) 214 Cal. App. 2d 496, 501, 29 Cal. Rptr. 580; Fairfield v. American Photocopy Equip. Co. (1955) 138 Cal. App. 2d 82, 88–90, 291 P.2d 194; Civ. Code § 3344 (compensatory damages)]. General Damages are recoverable without a showing of a specific loss [Fairfield v. American Photocopy Equip. Co. (1955) 138 Cal. App. 2d 82, 88–89, 291 P.2d 194]. A physical injury is not required in order to recover damages [Leavy v. Cooney (1963) 214 Cal. App. 2d 496, 502, 29 Cal. Rptr. 580]. The injury to be compensated includes impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering [Diaz v. Oakland Tribune, Inc. (1983) 139 Cal. App. 3d 118, 137, 188 Cal. Rptr. 762]. Substantial damages for mental anguish or emotional distress may be recovered even though no other damage has occurred [see Miller v. National Broad. Co. (1986) 187 Cal. App. 3d 1463, 1484–1485, 232 Cal. Rptr. 668]. 429.46 Damages California Forms of Pleading and Practice

The DEBTORS have the right to enter the ADDINGTON property only if that entry is to facilitate the transmission and distribution of electricity. And even when entry is so required, if at

DAVID P ADDINGTON
Telephone: 415/606 6552

all possible it must be done such as to avoid interference with ADDINGTON'S land use. Should DEBTORS enter ADDINGTON residence without having met these requirements, they are in trespass. As DEBTORS have repeatedly failed to meet both of these requirements, they were trespassing on ADDINGTON'S residence. Such trespass entitles ADDINGTON to damages.

In light of these new facts and the laws applicable to them, ADDINGTON respectfully requests the COURT reconsider its ruling.

August 15, 2023

<u>David P. Addington</u>
David P. Addington, In Pro Per

DAVID P ADDINGTON
Telephone: 415/606 6552