ROLNICK KRAMER SADIGHI LLP
Lawrence M. Rolnick (pro hac vice)
lrolnick@rksllp.com
Marc B. Kramer (pro hac vice)
mkramer@rksllp.com
Michael J. Hampson (pro hac vice)
mhampson@rksllp.com
Richard A. Bodnar (pro hac vice)
rbodnar@rksllp.com
Jeffrey Ritholtz (pro hac vice)
jritholtz@rksllp.com
Frank T.M. Catalina (pro hac vice)
fcatalina@rksllp.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

ST. JAMES LAW, P.C.
Michael St. James, CSB No. 95653
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

*Attorneys for the RKS Claimants*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>Chapter 11<br><br>**RKS CLAIMANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OBJECTION TO THE THIRD 7023 MOTION**<br><br>**Hearing Information:**<br>Date: August 23, 2023<br>Time: 10:00 a.m. (Pacific Time)<br>Place: (Telephone or Video Only)<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Case: 19-30088    Doc# 13977    Filed: 08/18/23    Entered: 08/18/23 15:21:41    Page 1 of 10

The RKS Claimants[1] hereby submit this supplemental brief in further support of their Objection to Public Employees Retirement Association of New Mexico ("**PERA**"), York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund's (collectively with PERA, "**Proposed Lead Plaintiffs**") Motion for entry of an order, pursuant to Rules 7023 and 9014(a) and (c) of the Federal Rules of Bankruptcy Procedure (the "**Third 7023 Motion**," or "**Motion**") [Dkt. No. 13865], and to respond specifically to the questions posed by the Court in its Order Regarding Continued Hearing on Motion for the Application of Bankruptcy Rule 7023 [Dkt. No. 13952]. In addition to the responses below, the RKS Claimants continue to join in Reorganized Debtors'[2] opposition to the Third 7023 Motion.

## RESPONSES TO SPECIFIC QUESTIONS

**1. Whether PERA's proposed Rule 7023 procedure [will] have an adverse effect on the pending ADR procedures and on the Reorganized Debtors apart from their cost to defend all of the matters (See PERA Reply, (Dkt 13940 at p.10) if the Motion is granted?**

RESPONSE: The RKS Claimants submit that the procedure will have a severe adverse effect on the pending ADR procedures.

*First*, any Rule 7023 procedures will introduce unavoidable delay in resolving the RKS Claimants' claims. Under the Proposed Lead Plaintiffs' asserted schedule (Mot. at 10), class certification will not even be heard until December 2023, and thus opt-outs will not be formally operative until the first quarter of 2024 at the very earliest. Thus, even if the ADR Procedures could somehow proceed at the same time as a class structure, they will inevitably be paused *at least* six months while class certification is resolved.[3] The delay could stretch much longer should

---

[1] The RKS Claimants are set forth on Schedule 1 attached to their Objection to the Third 7023 Motion [Dkt. No. 13918].

[2] "Reorganized Debtors" are PG&E Corporation and Pacific Gas & Electric Company, as reorganized pursuant to Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020 (as amended and/or modified, the "**Plan**").

[3] Proposed Lead Plaintiffs four month timeline is not realistic. This matter concerns dozens of

there be an appeal of the class certification decision. There is no reason to further delay claims resolution now that the ADR Procedures are moving forward expeditiously, and claimants can look to the recently distributed amendment and objection procedures to understand the next steps of claim resolution.

Second, adoption of a Rule 7023 procedure will introduce substantial confusion into the current claims resolution process. Currently, hundreds, if not thousands of claimants are reviewing offers, making counters, engaging in negotiations, engaging in mediations, and otherwise following the existing procedures. Those claimants have received numerous notices with respect to this case, none of which contemplated a 7023 class. A 7023 notice will serve to confuse this process.

Nor would a 7023 notice be a simple matter to work out and will likely involve the Court far more heavily than Proposed Lead Plaintiffs allow. For example, the joinders in support of a 7023 class procedure suggest (incorrectly in the RKS Claimants' view) that class members will not need to submit themselves to any discovery, prove reliance or be subjected to certain defenses—such as rebuttal of fraud on the market, and that Debtor would either be denied or voluntarily give up the ability to challenge claims on an individual basis for individual reasons. Whether this is true is but one of many issues critical for a claimant to understand via the notice. Negotiation, and perhaps litigation, of the notice, will inevitably add more delay and further pause the ADR Procedures.

The RKS Claimants, like any claimant, would rely on the class notice to understand, as a preliminary matter, whether participation in the class provides any actual benefits (or harms) as opposed to their current status. Assuming class participation confers no special benefits, joining a

---

securities with varying characteristics. In a less complex matter, involving far fewer securities, a decision on class certification took nine months from filing of the motion for class certification. *In re Teva Sec. Litig.*, No. 3:17-CV-558 (SRU), 2021 WL 872156, at *2 (D. Conn. Mar. 9, 2021) (concerning only 7 securities, not over 60, motion filed in June 2020 at Docket No. 419, decided March 2021). *See also In re Lyft Inc. Sec. Litig.*, No. 19-CV-02690-HSG, 2021 WL 3711470, at *1 (N.D. Cal. Aug. 20, 2021) (eleven month process in case involving one security and only Section 11 claims).

class would be nothing more than choosing Proposed Class Counsel to represent them. Since the RKS Claimants have already retained counsel of their choice, they would presumably opt out of the class (as Proposed Lead Plaintiffs assert).[4] However, should the Court grant this (effectively initial-step) 7023 motion and there be a further class process (with an opt out right at the *end* of that process), RKS Claimants would be *de facto* class members. Numerous RKS Claimants are in active negotiations with Reorganized Debtors and are in the process of reviewing offers, considering mediation notices, or have demands and/or counter-offers pending. Should these claimants receive notice that they are now class members under Rule 7023, they may well be confused as to why they must take further administrative steps (opting out) just to be back where they are now. Further, they may well be confused as to whether their pending offers, mediation notices, and demands are still operative, and if their choice of counsel is still operative. This cannot help the ADR process go forward. These claims are on the path towards resolution, yet the Rule 7023 procedure threatens to upend that progress. Indeed, it is difficult to understand why Debtors would continue negotiations with RKS Claimants until the point in time where they were able to opt out of the class, which would result in substantial delay as described above.

Lastly, adopting the Rule 7023 procedure will unnecessarily add issues that complicate the ability for individual claimants to resolve their claims in the ADR Procedure because it will introduce class-wide elements of proof that would otherwise be inapplicable for individual claimants (assuming the procedures could, even in theory, co-exist). For example, Lead Plaintiffs will have to demonstrate class-wide reliance for all the dozens of securities at issue despite the fact that individual claimants may have only traded in one or a small subset of them. This will complicate, rather than streamline, claims resolution for many of the RKS Claimants because Reorganized Debtors would still have all of the objections they currently have, including the ability

---

[4] Proposed Lead Plaintiffs have asserted that every single RKS Claimant should be considered an opt out and thus the RKS Claimants lack standing to object to the 7023 motion. RKS represents over 700 claims, individually and independently – ranging from large asset managers to individual investors – and each claimant has the right to make their own decisions in this matter, including with respect to class membership. More telling is Proposed Lead Plaintiff assumes up to 25% of the "class" will opt out – and sees no issue with this.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

to challenge their claims on individual issues, such as reliance and damages, but additional issues will be added that may impact the RKS Claimants, but can only harm them.  Yet again, this simply adds to the burden on claimants when the ADR Procedures that were intended to be a lower burden,

**2.     If the court provides an opt-out option under Rule 7023, do specific claimants have the right to opt back in if the ADR procedures are unsuccessful as to them?**

RESPONSE:  The RKS Claimants cannot speak to what the Proposed Lead Plaintiffs intend under their proposed Rule 7023 procedure. The RKS Claimants defer to Reorganized Debtors as to the impact on Reorganized Debtors.  The RKS Claimants submit that allowing claimants to freely move in and out of the Class prejudices all claimants – class members and non-class members alike.  A class, if granted, should have a firm opt in date.  This allows all relevant parties to understand the size, scope, and position of the class as well as what issues the Class may deal with.  A moving target of litigation exposure makes it virtually impossible to determine a fair settlement amount and would only increase the delay and confusion inherent in the proposed Rule 7023 procedure.

**3.     What is the harm to permitting an opt-in option instead of what PERA proposes? The authorities cited suggest only the opt-out option appears in FRCP 23, but nothing appears to prohibit it.**

RESPONSE:  An opt-in procedure would be far less harmful than the opt-out procedure set out by Proposed Lead Plaintiffs.  This Court already adopted an "opt-in" procedure when confirming the Bankruptcy Plan, allowing claimants to opt in (not out) of third-party releases with respect to—among other individuals—the Debtors' former directors and officers [Dkt. No. 8048 §1.180].  A similar opt-in procedure here makes far more sense than an opt out procedure.

As a threshold matter, the RKS Claimants (and other claimants) should not be burdened with an opt-out requirement if they simply wish to keep following the procedures approved by this Court.  If this Court is inclined to grant the 7023 motion, let claimants who wish to be part of a "class" bear the burden of opting into that class, and allow those who have been moving forward with their claims to continue doing so without an unnecessary diversion.

An opt in requirement (as opposed to an opt out requirement) has other benefits. An opt in requirement gives Reorganized Debtors, the Court, Proposed Class Counsel, and other claimants enhanced clarity about who is in and out of the class. Opportunities for confusion about Class membership abound with an opt out procedure, especially given various idiosyncrasies on the claims register. For instance, some claimants (including certain of the joinders to the Motion) do not appear as claimants on the claims register at all but rather are included within a larger claim, such as the one filed by Institutional Shareholder Services ("ISS") (Claims 99436, 99838, 102193, 102442). Other claims, such as 100011 and 100386 (both of which provide the creditor as "ML Various Clients") provide no information to other claimants of who the actual creditors are that are contained within the claim. In other instances, the "Creditor" name on the claims register must surely be incorrect. *See, e.g.*, Numeric Investors LLC Joiner to 7023 Motion [Docket No. 13937] at Schedule A (listing claims 104151 and 104183 with the creditor as "Pacific Gas & Electric Company"). Thus, a claimant cannot be certain that no other claim purports to assert its interests.

The Claims Register issues will make it exceedingly difficult to administer an opt-out procedure and will create confusion (and likely, litigation) about the scope of the class. An opt-in procedure, on the other hand, will be far easier to administer and create a much clearer class, as only claimants who file an opt-in form will become a class member and adopt Proposed Lead Counsel's representation.

An opt-in procedure also is far more in line with this Court's view that third-party releases in bankruptcy must be consensual. *See, e.g.*, Memorandum Decision – Confirmation of Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization, at 24-25, In re PG&E Corporation, No. 19-30088-DM, (Bankr. N.D. Cal. June 17, 2020), ECF No. 8001 (noting that the releases were permissible only because they are consensual, and section 524(e) and Ninth Circuit case law prohibit nonconsensual third-party releases). What releases may be contained in any class settlement down the road is completely unknown. Only a party who affirmatively opts into that uncertainty should be bound to such releases in line with Ninth Circuit authority.

1    While an opt-in procedure is certainly preferable to the proposed 7023 procedure in the Motion, it still suffers from the inherent problems of simultaneous class and bankruptcy claim resolution and would cause undue delay. For example, a notice would still need to be negotiated or litigated, and claimants would need to be informed whether there are some benefits to participation in the class that are unavailable to "ordinary" bankruptcy claimants. If there are no such benefits, that should be made equally clear. The Amendment and Objection Procedures for Securities Claims recently negotiated by Reorganized Debtors, the RKS Plaintiffs, and other objectors [Dkt. No. 13934-1] already allow for claimants to essentially "opt in" by adopting the claims of other claimants (including the RKS Claimants) who intend to file amended proofs of claim or to stand on their existing proof of claim. Rather than operate as a class, the negotiated procedures will allow the cases to proceed as to individual claimants (or groups of claimants) without the burdensome and time-consuming procedural requirements of Rule 7023. For example, under the negotiated procedures, there is no class certification decision (and potential appeal of that decision) serving as a gating event to determine when class members may opt in, and no requirement for preliminary, class certification discovery. Because the class device is unnecessary and would further delay resolution of the claims, the RKS Claimants submit that even an opt-in procedure should not be adopted.

**4.    Is there any bankruptcy case other than this one where a class action has been considered at the same time something akin to the ADR procedures here (which clearly has its own "opt-out" option available to claimants by who reject the best settlement offer of the Reorganized Debtors?**

RESPONSE: The RKS Claimants are unaware of any such case. The RKS Claimants respectfully submit that the "opt-out" option provided by the ADR Procedures is different in its nature than the opt-out contemplated by the Rule 7023 procedure proposed in the Motion. The ADR Procedures are flexible. RKS Claimants who rejected offers previously can (and have), re-engaged with Reorganized Debtors and some have entered follow-on negotiations. Simply put, any claimant who decides not to accept an offer from Reorganized Debtors through the ADR

Procedures is still free to negotiate directly with Reorganized Debtors, including through counsel, and reach a consensual agreement *at any time*. To the contrary, a claimant who chooses not to opt out of a class action no longer has the ability to negotiate an individual settlement, as the claimant is now subject to the collective decision-making of class counsel, who need not even communicate individual offers to putative class members.

**5. If the court grants the Motion, what happens after class certification, notice and the opt-out deadline? More specifically, assuming there is no consensual resolution between PERA and the Reorganized Debtors via efforts to settle any class action, on what timeline would the court expect to set pre-trial and trial scheduling matters?**

RESPONSE: The timeline for any pre-trial and trial scheduling for a class action will necessarily be far more protracted than the timeline under the Amendment and Objection Procedures for Securities Claims. The Amendment and Objection Procedures contemplate that at the Court's earliest availability following its ruling on Reorganized Debtors' sufficiency objections, which could occur as early as the beginning of 2024, the Court will hold a case management conference to set a discovery schedule, among other things. We would expect, therefore, that under those procedures, discovery would occur through 2024 and trial would be held sometime in 2025. Moreover, the procedures do not permit an appeal of a decision on the sufficiency objections to delay the discovery schedule or any other case deadline. On the contrary, Proposed Lead Plaintiffs' proposed schedule sets the opt-out deadline in February 2024, ignores the possibility of an appeal of the class certification decision, leaves unclear if Proposed Lead Plaintiffs would seek to amend their 'class' claim, and seems to assume any sufficiency objection would be briefed following this process. The Court should deny the Motion to allow the claims resolution procedures to proceed more quickly and efficiently now that workable procedures have been put in place.

**6. If the ADR procedures are unsuccessful, what would be the estimated pre-trial and trial scheduling for adjudication of the remaining claims under the traditional claims objection process?**

RESPONSE: As described above, the Amendment and Objection Procedures lay out a clear path to claims resolution. They allow amendments of proofs of claim until October 2023, require Reorganized Debtors to object to the amended proofs of claim within 60 days of the amendments, and leave to the Court's discretion the schedule for sufficiency objection briefing and discovery. They also contain a presumptive discovery period of approximately one year, starting with Debtors providing initial disclosures – indicating a willingness to move this matter along at an efficient pace. Consistent with the procedures, the RKS Claimants expect that the claim resolution process will move forward effectively. That is because, in all likelihood, individual claimants will self-sort into one of five groups: (i) those who stand on their original proofs of claim/claim form; (ii) those who adopt Proposed Lead Plaintiffs' complaint; (iii) the RKS Claimants and those who adopt the RKS Claimants' amendment(s); (iv) those who make their own separate individual amendments; and (v) those who continue to negotiate and mediate under the ADR Procedures, who will later filter into one of the prior four groups if their claims remain unresolved. Each of these groups will have specific differences but proceed on mostly overlapping issues that will allow coordination of pre-trial and trial efforts. The Court—as it does in typical bankruptcy proceedings involving many claimants—can supervise that coordination and ensure non-duplication. This Court anticipated as much in its decision on the second of Proposed Lead Plaintiffs' prior 7023 motion, stating: "If [claimants] want the benefit of counsel, either at the outset of the offer acceptance process or later, when faced with mediation, nothing prevents them from organizing collectively in selecting counsel on a group basis to represent their interests. Further, if it comes to the formal claims objection procedures, they can rally their forces collectively again if they wish. Simply stated, they said yes or no to a choice to whether to invest years ago. Now they can say yes or no to an offer the reorganized debtors present to them under the proposed procedures." That remains exactly right.

As such, the RKS Claimants expect that should the Amendment and Objection Procedures be followed, discovery would close in early 2025, and trial could proceed on these cases in late 2025. Further, the Amendment and Objection Procedures—in stark contrast with the proposed

class procedure—would allow individual claimants to continue negotiating and settling their claims with Reorganized Debtors throughout the pre-trial period, thus potentially narrowing the claims and number of issues that will need to be decided at trial.

**7. Assume parallel tracks for ADR and Rule 7023 procedures, neither of which are entirely successful, when will it be appropriate to consolidate matters to avoid duplication of matters such as expert testimony? For example, will the question of market price (Reply, at p. 10 and footnote 14) or other similar matters need to be dealt with even without the Motion being granted?**

RESPONSE: As explained above, the RKS Plaintiffs do not believe it would be practical for the ADR and Rule 7023 procedures to run simultaneously without causing significant prejudice, confusion, delay, and disruption of settlement efforts. Nevertheless, in the event the Court were to grant the Motion, consolidation would be appropriate at the start of discovery, as issues such as the price impact of an alleged disclosure would be relevant to both the class and the individual claimants.

**8. Other concerns Reorganized Debtors have that arose in the PERA Reply that have not been dealt with in the Opposition.**

RESPONSE: The RKS Claimants defer to Reorganized Debtors' response.

## **CONCLUSION**

For the foregoing reasons and the reasons provided in the RKS Claimants' Objection to the Motion, the RKS Claimants respectfully request that the Court deny Lead Plaintiffs' third attempt at a motion for entry of an order under Rule 7023.

Dated: August 18, 2023             ROLNICK KRAMER SADIGHI LLP

By:   */s/ Richard A. Bodnar*

*Attorneys for the RKS Claimants*