**LABATON SUCHAROW LLP**
Thomas A. Dubbs (*pro hac vice*)
Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Thomas G. Hoffman, Jr. (*pro hac vice*)
140 Broadway
New York, New York 10005

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Colleen Restel
One Lowenstein Drive
Roseland, New Jersey 07068

*Lead Counsel to Securities Lead Plaintiff and the Class*

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered<br><br><br>Date: August 23, 2023<br>Time: 10:00 a.m. (PT)<br>Before: (Tele/Videoconference Appearances Only)<br>   United States Bankruptcy Court<br>   Courtroom 17, 16th Floor<br>   San Francisco, California 94102 |

## SUPPLEMENTAL BRIEF REGARDING THE SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    I.      CLASS CERTIFICATION UNDER RULE 23 WOULD NOT ADVERSELY AFFECT THE PENDING ADR PROCEDURES OR THE REORGANIZED DEBTORS ............................................................................................................. 2

    II.     IF THE COURT CERTIFIES THE PROPOSED CLASS, SECURITIES CLAIMANTS NEED NOT OPT OUT OR DO ANYTHING ELSE UNTIL THE OPT-OUT DEADLINE SET BY THE COURT ................................................. 5

    III.    AN OPT-IN APPROACH IS NOT PERMISSIBLE UNDER RULE 23 AND WOULD BE MORE CUMBERSOME AND LESS EFFICIENT THAN AN OPT-OUT CLASS ................................................................................................ 6

    IV.    THERE IS ANALOGOUS AUTHORITY IN THE BANKRUPTCY CONTEXT ................................................................................................................ 8

    V.     IF THE COURT GRANTS CLASS CERTIFICATION BUT THE CLASS MEDIATION FAILS, THE COURT CAN SET A TRIAL DATE FOR LATE 2024 ................................................................................................................ 9

    VI.    IF THE COURT DOES NOT GRANT CLASS CERTIFICATION, THEN IT WILL LIKELY TAKE YEARS FOR THIS COURT TO ADJUDICATE THE THOUSANDS OF REMAINING SECURITIES CLAIMS INDIVIDUALLY ................................................................................................... 10

    VII.   IF THE ADR PROCEDURES AND THE CLASS PROCEED TO LITIGATION ON PARALLEL TRACKS, THE COURT CAN COORDINATE PRE-TRIAL LITIGATION AND TRIAL ...................................... 11

CONCLUSION ...................................................................................................................... 13

-i-

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ackal v. Centennial Beauregard Cellular L.L.C.,*
    700 F.3d 212 (5th Cir. 2012)..............................................................7

*Andrews Farms v. Calcot, Ltd.,*
    258 F.R.D. 640 (E.D. Cal. 2009) .........................................................7

*De Asencio v. Tyson Foods, Inc.,*
    342 F.3d 301 (3d Cir. 2003)................................................................7

*Johnson v. Quantum Learning Network, Inc.,*
    No. 15-CV-05013-LHK, 2016 WL 4529607 (N.D. Cal. Aug. 30, 2016) ...............6

*Kern v. Siemens Corp.,*
    393 F.3d 120 (2d Cir. 2004)................................................................7

*Klein v. O'Neal, Inc.,*
    No. 7:03 CV 102-D, 2009 WL 1174638 (N. D. Tex. Apr. 29, 2009)...................6

*Millan v. Cascade Water Servs., Inc.,*
    310 F.R.D. 593 (E.D. Cal. 2015) .........................................................6

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011)................................................................5

*In re Tesla, Inc. Sec. Litig.,*
    No. 18-CV-04865-EMC, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ...............12

*In re Think Finance, LLC,*
    No. 17-33964, 2018 WL 9801454 (Bankr. N.D. Tex. Aug. 30, 2018)..............8, 9

*Thorpe v. Abbott Labs., Inc.,*
    534 F. Supp. 2d 1120 (N.D. Cal. 2008) ..................................................7

*Vataj v. Johnson,*
    No. 4:19-cv-06996-HSG (N.D. Cal. Mar. 9, 2021), ECF No. 98 .....................6

*Wang v. Chinese Daily News, Inc.,*
    623 F.3d 743 (9th Cir. 2010), *judgment vacated on other grounds*, 565 U.S. 801 (2011).......7

RULES

Fed. R. Bankr. P. 7023 ...........................................................passim

Fed. R. Civ. P. 23 ..............................................................passim

Case: 19-30088    Doc# 13978    Filed: 08/18/23    Entered: 08/18/23 15:31:07    Page 3
of 21

**OTHER AUTHORITIES**

3 *Newberg and Rubenstein on Class Actions* ......................................................... 6, 7, 11 13

*In re FirstEnergy Corp. Securities Litigation*
    No. 2:20-cv-3785 (E.D. Ohio 2020), ECF No. 117 ................................................. 12

*In re Think Finance, LLC,*
    Case No. 17-33964 (Bankr. N.D. Tex.), ECF Nos. 359, 1523-3, 1701 ............................... 8, 9

*Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Industries Ltd.,*
    No. 3:17-cv-558 (D. Conn. Apr. 28, 2020), ECF No. 352 ....................................... 12

Proposed class representatives PERA and the Securities Act Plaintiffs (collectively, the "Securities Plaintiffs") hereby submit this supplemental brief to address the specific questions in the Court's August 8, 2023 Order Regarding Continued Hearing on Motion for the Application of Bankruptcy Rule 7023 (the "Order"). ECF No. 13952 at 2-4.[1]

## PRELIMINARY STATEMENT

Years after confirmation, there is no resolution in sight for thousands of remaining Securities Claims. The Securities Plaintiffs respectfully submit that class certification, in tandem with the ADR Procedures, provides the Court with "the most practical and legally permissible way" to resolve them. (Order at 2–3).

In summary, the answers to the Court's specific questions are as follows:

- Class certification would complement the ADR Procedures and benefit the Reorganized Debtors (§ I).

- Securities Claimants will not have to opt out or do anything else with respect to the class process until the opt-out deadline set by the Court; meanwhile, they can continue to negotiate with the Reorganized Debtors (§ II).

- An opt-in approach is legally impermissible under Rule 23 and would defeat a key purpose of class certification by impeding the settlement of the Securities Claims (§ III).

- There is precedent for use of the class mechanism in bankruptcy even after a bar date has been established and passed (§ IV).

- If the Court certifies a class but class mediation fails, the Court can conduct a trial by the end of 2024 (§ V).

- Absent class certification, resolution of the remaining Securities Claims will likely take years (§ VI).

- If both mediation and the ADR Procedures do not result in the consensual resolution of all Securities Claims, the Court can coordinate pre-trial litigation and trial (§ VII).

There is simply no merit to the Reorganized Debtors' resistance to the fairness and efficiency that class certification would add to the claims resolution process.

Thus, the Court should exercise its discretion to apply Rule 7023 and certify a class of Securities Claimants under Rule 23.

---

[1] Capitalized terms used but not defined herein have the same meanings as in the Motion.

# ARGUMENT

## I. CLASS CERTIFICATION UNDER RULE 23 WOULD NOT ADVERSELY AFFECT THE PENDING ADR PROCEDURES OR THE REORGANIZED DEBTORS

The Order first asks whether class certification would adversely affect the ADR Procedures or the Reorganized Debtors, apart from their cost to defend all the matters. Order at 3. It would not. In fact, class certification would complement the ADR Procedures and benefit the Reorganized Debtors by facilitating the swift and efficient resolution of the thousands of remaining Securities Claims.

Class certification would not adversely affect the ADR Procedures because the Securities Plaintiffs' class certification proposal assumes the ADR Procedures would continue undisturbed until the opt-out deadline. Until then, Securities Claimants can continue to negotiate with the Reorganized Debtors before deciding whether to stay in the class or opt out and go it alone. Securities Claimants need not opt out or do anything else with respect to the proposed class procedures until the opt-out deadline.

The date of the opt-out deadline would depend on whether the Court is inclined to grant the Reorganized Debtors' request for limited class certification discovery. *See* Reorganized Debtors' Objection (ECF No. 13922) at 21. If the Court decides to apply Bankruptcy Rule 7023 and proceed toward class certification, the Court's two alternatives are to: (1) grant class certification without delay or (2) allow limited class certification discovery.[2]

Whichever option the Court chooses, if the Court certifies the proposed class and the opt-out deadline passes, that does not close the door to ADR with respect to the class. The Securities Plaintiffs propose that, after the opt-out deadline, the Securities Plaintiffs should participate in a mediation with the Reorganized Debtors to explore a class-wide resolution of the Securities Claims prior to the expenditure of significant resources on litigation.[3]

---

[2] Depending on which option the Court chooses, the Securities Plaintiffs will provide the Court with an appropriate revised proposed order.

[3] For the class mediation, the Securities Plaintiffs propose three mediators because they believe it will be difficult and needlessly time-consuming to reach agreement with the Reorganized Debtors on a sole mediator. Therefore, the Securities Plaintiffs propose a panel of three mediators: one chosen by the Court (from the approved panel of mediators or otherwise), one chosen by the

Footnote continued on next page

***Option #1: Grant Class Certification Without Delay***

The Securities Plaintiffs respectfully submit that certification is appropriate now because the Reorganized Debtors have failed to even attempt to defeat any of the Rule 23 class certification criteria. *See, e.g.*, Reply at 10 n.14 ("The Reorganized Debtors fail to carry their burden of proving a lack of price impact given they did not serve an expert report with their objection.").[4] If the Court grants class certification now, then the Securities Plaintiffs would move for class notice within 14 days, proposing an opt-out deadline 30 days after class notice is issued to the Securities Claimants. Then, the class mediation could take place as soon as practicable after the opt-out deadline.

***Option #2: Allow Limited Class Certification Discovery***

If the Court is inclined to grant the Reorganized Debtors' request for limited class certification discovery of the proposed class representatives and expert discovery regarding price impact, then the Securities Plaintiffs propose the schedule set forth in the chart below.[5] Under this schedule, there would be a brief period for discovery, then the Parties would submit supplemental class certification briefing and, if the Court certifies the class, the Securities Plaintiffs would then move for class notice.

The bolded rows in the chart identify the only proposed hearing dates (subject to the Court's availability and scheduling); all other rows list briefing and other actions to be taken by the Securities Plaintiffs and/or the Reorganized Debtors without Court intervention:

| Event | Deadline |
|-------|----------|
| Discovery requests to proposed class representatives | August 31, 2023 |

---

Reorganized Debtors, and one chosen by the Securities Plaintiffs. Multiple mediators have been used with some frequency in large securities cases.

[4] Moreover, as discussed in Section VII, *infra*, the issue of market price (or price impact) must be addressed at summary judgment and/or trial even if a class is not certified.

[5] If the Court adopts this schedule, then the Securities Plaintiffs believe an informational notice should be issued to all Securities Claimants to explain the class certification proposal and procedures going forward, including how it relates to the ADR Procedures. However, the Securities Plaintiffs would endeavor to work with the Reorganized Debtors on the informational notice, and they do not anticipate that Court intervention would be necessary.

| Event | Deadline |
|---|---|
| Service of Reorganized Debtors' initial expert report(s) on price impact, etc. | September 21, 2023 |
| Deposition(s) of Reorganized Debtors' expert(s); depositions of proposed class representatives | Week of October 2, 2023 |
| Service of Securities Plaintiffs' opposing expert report(s) | October 6, 2023 |
| Deposition of Securities Plaintiffs' expert(s) | Week of October 16, 2023 |
| Securities Plaintiffs' supplemental class certification brief on open class issues | October 27, 2023 |
| Reorganized Debtors' supplemental class certification brief on open class issues | November 3, 2023 |
| **Class certification hearing** | **December 1, 2023** |
| Motion for Class Notice (with request for exclusion) and appointment of Class Administrator | December 8, 2023 (or 7 calendar days after the Court issues an order granting Class Certification) |
| **Hearing on Class Notice** | **January 5, 2024** |
| Class Notice issued to the Securities Claimants via ECF, email, and U.S. mail | January 19, 2024 (or 12 business days after this Court approves Class Notice) |
| Opt-out deadline | February 19, 2024 (or 30 calendar days after issuance of Class Notice) |
| Class mediation | Week of February 26, 2024 (or the week after the opt-out deadline) |

The Reorganized Debtors would not be adversely affected by class certification either. Rather, class certification would provide them (and the Court) with several benefits. In addition to significant efficiencies and cost savings, class certification would provide clarity as to how many Securities Claimants would proceed to the claims resolution procedures individually—including not only institutional investors like the many large institutions that have filed joinders to the motion but also the "hypothetical 10,000-dollar securities claimant in Peoria." *See* July 19, 2023 Hr'g Tr. at

Case: 19-30088    Doc# 13978    Filed: 08/18/23    Entered: 08/18/23 15:31:07    Page 8 of 21

20:12-13.[6] Class certification certainly would result in a much smaller number of Securities Claimants proceeding individually than the thousands that remain pending today. As discussed in more detail Sections II and III, *infra*, this clarity is absolutely essential to a negotiated resolution of the Securities Claims.

## II. IF THE COURT CERTIFIES THE PROPOSED CLASS, SECURITIES CLAIMANTS NEED NOT OPT OUT OR DO ANYTHING ELSE UNTIL THE OPT-OUT DEADLINE SET BY THE COURT

The Order asks whether, if the Court certifies an opt-out class under Rule 23, Securities Claimants may opt back in to the class if the ADR Procedures are unsuccessful as to them. Order at 3.

The answer is that Securities Claimants need not opt out or do anything else until the opt-out deadline set by the Court. That gives Securities Claimants time to continue to negotiate with the Reorganized Debtors individually before deciding whether to stay in the class or opt out and go it alone. However, Securities Claimants must make that decision by the opt-out-deadline.

The establishment of an opt-out deadline would provide clarity as to who is in and who is out of the class. That would allow the Reorganized Debtors to make a reasonable estimate of the magnitude of their liabilities to any opt outs. That estimate, in turn, is crucial to facilitating settlement negotiations and achieving global litigation peace. This is particularly true where, as here, certain Securities Claimants hold very large Securities Claims. Knowing whether they are in or out of the class is absolutely essential to reach a negotiated resolution of the remaining Securities Claims.

The opt-out deadline would provide the Reorganized Debtors with the necessary clarity. In the view of the Securities Plaintiffs, the uncertainty created by permitting Securities Claimants to change their decision ***after*** the opt-out deadline would imperil any opportunity to achieve a negotiated class-wide resolution of the Securities Claims and, ultimately, "global peace." *Sullivan v.*

---

[6] As noted in the Motion (at 2), the RKS Claimants are presumptive opt outs. Moreover, as RKS's website states, it is "Focused Exclusively on Serving Leading Investment Managers." https://www.rksllp.com/about; *see also id.* ("RKS's clients include hedge funds, mutual funds, investment managers, private equity, and credit, real estate and structured finance funds."). Thus, RKS is ***not*** focused on the "hypothetical 10,000-dollar securities claimant in Peoria." *See* July 19, 2023 Hr'g Tr. at 20:12-13.

*DB Invs., Inc.*, 667 F.3d 273, 310–12 (3d Cir. 2011) (reasoning that defendants seek to obtain comprehensive class action settlements and releases of claims in order to obtain "global peace," which is viewed as a "valid, and valuable, incentive to class action settlements"); *Klein v. O'Neal, Inc.*, No. 7:03 CV 102-D, 2009 WL 1174638, at *3 (N. D. Tex. Apr. 29, 2009) ("In a class action settlement setting, defendants seek and pay for global peace—i.e., the resolution of as many claims as possible.").

Here, global peace requires the settlement of a class where all Securities Claimants that do not opt out are bound by the settlement's terms and enjoined from continuing to pursue their Securities Claims individually. A recent settlement in a securities class action against PG&E provides a typical example. *See* Stipulation and Agreement of Settlement, *Vataj v. Johnson*, No. 4:19-cv-06996-HSG (N.D. Cal. Mar. 9, 2021), ECF No. 98. The settlement agreement releases all class claims against the defendants arising out of or relating to the action (*see id.* ¶¶ 2, 42), enforced by an order and judgment enjoining class members from pursuing those claims individually (*see id.* at 14 ¶ C.2).

Leaving the scope of the class open indefinitely would create uncertainty about the magnitude of the Reorganized Debtors' liabilities and doom the prospects for a timely collective resolution of the Securities Claims.

## III. AN OPT-IN APPROACH IS NOT PERMISSIBLE UNDER RULE 23 AND WOULD BE MORE CUMBERSOME AND LESS EFFICIENT THAN AN OPT-OUT CLASS

The Order asks whether there is any harm to an opt-in approach, as opposed to an opt-out approach. Order at 3. An opt-in approach is legally impermissible.

Rule 23 does not provide an opt-in mechanism. *See Disfavored Approaches to Exclusion – Opt-in Class Actions Prohibited,* 3 *Newberg and Rubenstein on Class Actions* § 9:48 (6th ed. June 2023 Update) ("The [Rule 23] class action mechanism is an opt-out, not opt-in, procedure."); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 602 (E.D. Cal. 2015) ("Rule 23 simply does not provide for an opt-in class."). Therefore, requiring class members "to opt in or 'file their consent to join with the Court' is inconsistent with Rule 23." *Johnson v. Quantum Learning Network, Inc.*, No. 15-CV-05013-LHK, 2016 WL 4529607, at *2 (N.D. Cal. Aug. 30, 2016).

Indeed, "substantial legal authority supports the view that by adding the 'opt out' requirement to Rule 23 . . . Congress ***prohibited*** 'opt in' provisions by implication." *Kern v. Siemens Corp.*, 393 F.3d 120, 124 (2d Cir. 2004) (emphasis in original); *see also Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 216 (5th Cir. 2012) ("[N]ot only is an opt in provision not required, but substantial legal authority supports the view that by adding the opt out requirement to Rule 23 . . . , Congress prohibited opt in provisions by implication.") (citation omitted); *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1123 (N.D. Cal. 2008); 3 *Newberg and Rubenstein on Class Actions* § 9:48 ("[S]ignificant precedent bars courts from requiring absent class members in Rule 23 class actions to opt in to the action.").

This was no accident because Congress has specifically legislated for opt-in classes in other contexts—but not this one. For example, in cases brought under the Fair Labor Standards Act (FLSA), Congress expressly legislated for an opt-in class mechanism "to strike a balance to maintain employees' rights but curb the number of lawsuits." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003).

Accordingly, "no court has ever certified an opt-in class under 23(b)(3)." 3 *Newberg and Rubenstein on Class Actions* § 9:48 (noting that "courts have denied certification of classes for which plaintiffs request an opt-in provision"); *see also Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 656 (E.D. Cal. 2009) ("Based on well-settled authority, this Court will employ an opt out procedure, as provided by Rule 23(c), and denies Defendants' request for an opt in class action.").

Moreover, the harm of the opt-in approach is that it would defeat the purpose of class certification here. Opt-out classes have significantly higher participation rates than opt-in classes. *See, e.g.*, *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010) (noting that "opt-in action will almost invariably have fewer participants"), *judgment vacated on other grounds*, 565 U.S. 801 (2011); *De Asencio*, 342 F.3d at 310 ("Generally, the distinction between opt-in and opt-out classes is crucial. Under most circumstances, the opt-out class will be greater in number, perhaps even exponentially greater"). Therefore, an opt-in class is likely to be smaller than an opt-out class, resulting in fewer Securities Claims being resolved via the class mechanism.

Importantly, an opt-in approach would also defeat the purpose of class certification here because, as discussed in Section II, *supra*, an opt-out class is the only way to provide clarity as to which Securities Claimants are in and which are out of the class. As noted, that clarity is essential to any timely collective resolution of the Securities Claims.

## IV.    THERE IS ANALOGOUS AUTHORITY IN THE BANKRUPTCY CONTEXT

The Order asks for an example of "any bankruptcy case other than this one where a class action has been considered at the same time" something similar to the ADR Procedures. Order at 3–4.

The short answer is that there is no case directly on point, as this case is factually unique in many respects.

However, *In re Think Finance, LLC*, Case No. 17-33964 (Bankr. N.D. Tex.), provides helpful guidance. There, the bankruptcy court changed its mind regarding class treatment of numerous individual claims, and therefore altered its approach by implementing a class procedure even after having set a bar date.

On November 21, 2017, the *Think Finance* court entered an order setting a March 1, 2018 bar date by which consumer borrowers of the debtors had to file proofs of claim. *See In re Think Finance, LLC*, No. 17-33964, 2018 WL 9801454, at *1 (Bankr. N.D. Tex. Aug. 30, 2018). The court eventually determined "that it appeared the procedures set forth by the Debtors were fair and reasonable and would provide good, sufficient, and proper notice to all potential creditors of their rights and obligations in connection with claims they may have against the Debtors or their property in these Bankruptcy Cases." *Id*.

Before the bar date passed, several parties filed motions requesting that the court apply Bankruptcy Rule 7023 to the consumer borrowers' class proofs of claim and certify various classes of consumer borrowers. *See id*. at *2. The debtors objected to the Rule 7023 motions. *Id*.

In March 2018, shortly after the bar date had passed, the debtors filed their first omnibus objection seeking disallowance of certain consumer borrowers' proofs of claim on substantive grounds. *Think Finance*, No. 17-33964 (Bankr. N.D. Tex.), ECF No. 359. A trial to consider the first omnibus objection to claims was scheduled for October 2018. *Id*., ECF No. 1523-3 at 16.

The bankruptcy court did not consider the Rule 7023 motions until August 2018, several months after the bar date had passed, and while parties were preparing for trial on the debtors' substantive objection to certain consumer claims.

The bankruptcy court granted the Rule 7023 motions. While the bankruptcy court noted the benefits and economic efficiencies of the bankruptcy claims process in managing a large number of claims, it determined that "they are less ameliorative in situations such as this one where it is not obvious to the potential claimants that they would have a claim against the entity in bankruptcy, or what legal theory would support their claim." *Think Finance*, 2018 WL 9801454, at *5.

Following application of Rule 7023 to the class process, a proposed settlement was reached between the debtors and a large settlement class. The settlement allowed for individual claimants to opt out of the proposed class and pursue their individual clams against the debtors. On January 16, 2020, the court entered an order granting final approval of the class settlement. *Think Finance*, No. 17-33964 (Bankr. N.D. Tex.), ECF No. 1701.

Here, as in *Think Finance*, the Court is presented with the benefit of hindsight and changed circumstances that justify an alternative approach to the resolution of the Securities Claims. Three years after confirmation, thousands of Securities Claims remain unresolved, and it has become apparent that their swift and efficient resolution is not feasible on an individual basis. Moreover, class certification would provide Securities Claimants more choices than were available to the consumer borrowers in *Think Finance*. Specifically, until the opt-out deadline, all Securities Claimants would retain their right to decide whether to participate in the class process or pursue their Securities Claims individually through the ADR Procedures or the claims resolution procedures.

## V.     IF THE COURT GRANTS CLASS CERTIFICATION BUT THE CLASS MEDIATION FAILS, THE COURT CAN SET A TRIAL DATE FOR LATE 2024

The Order asks, assuming there is no negotiated resolution of the class Securities Claim, "on what timeline would the court expect to set pre-trial and trial scheduling matters?" Order at 4.

The Securities Plaintiffs respectfully submit that, if the class mediation fails, then the Court should immediately schedule a conference to set a pre-trial schedule and a trial date for a combined trial of the class Securities Claim and any opt-out Securities Claims.

If the Reorganized Debtors cooperate reasonably and timely provide relevant discovery, the trial can be held by the end of 2024.

## VI. IF THE COURT DOES NOT GRANT CLASS CERTIFICATION, THEN IT WILL LIKELY TAKE YEARS FOR THIS COURT TO ADJUDICATE THE THOUSANDS OF REMAINING SECURITIES CLAIMS INDIVIDUALLY

The Order asks, "If the ADR procedures are unsuccessful, what would be the estimated pre-trial and trial scheduling for adjudication of the remaining claims under the traditional claims objection process?" Order at 4.

The answer is that it will likely take years for the Court to adjudicate the thousands of remaining Securities Claims individually. Thousands of Securities Claims remain unresolved three years after the Plan went effective. The Reorganized Debtors' predictions as to the final resolution of all Securities Claims have not materialized and it is clear that a fully individualized process would take far longer and be less efficient than the class process proposed by the Motion.

If the ADR Procedures are unsuccessful, the new Amendment and Objection Procedures approved by this Court provide that the Reorganized Debtors have until at least December 13, 2023 to file objections to Securities Claimants' amended proofs of claim. (ECF No. 13934-1 ¶ 5). Thereafter, the Reorganized Debtors "intend to make sufficiency objections akin to a motion to dismiss with respect to all claims set forth in the unresolved securities proofs of claim." *Id*. ¶ 9. At the end of the day, there may well remain "1,000 trials on securities claims." June 7, 2023 Hr'g Tr. at 20:13–14.

Then, the Reorganized Debtors would have thousands of Securities Claimants each responding to dispositive motions, each serving and responding to document requests, interrogatories, requests for admissions and deposition notices, and attending and objecting at depositions and hearings. The Reorganized Debtors might seek depositions of thousands of

Case: 19-30088    Doc# 13978    Filed: 08/18/23    Entered: 08/18/23 15:31:07    Page 14 of 21

individual Securities Claimants. The Court might have to adjudicate thousands of discovery disputes.

Even the Reorganized Debtors themselves appear to recognize that a collective mechanism would be beneficial to resolving the Securities Claims, albeit without the protections afforded to Securities Claimants by Rule 23. *See* Motion at 8 (citing ECF No. 13791 at 5, 8).[7] Indeed, just this week, the Reorganized Debtors filed their twenty-fourth omnibus objection to certain Securities Claims based on the corrective disclosures alleged in PERA's class action complaint (ECF No. 13963)—even though those corrective disclosures were not alleged by the Securities Claimants targeted by the omnibus objection. Thus, the Reorganized Debtors seek to use a collective mechanism when it suits them, but they oppose the protections that Rule 23 would afford the Securities Claimants.

Moreover, as discussed in Section VII, *infra*, the procedures and tools provided by class certification under Rule 23 would avoid the significant and unnecessary duplication of effort and expense of litigating the Securities Claims individually and streamline the resolution of the remaining Securities Claims. *See also* Reply at 2, 17.

## VII. IF THE ADR PROCEDURES AND THE CLASS PROCEED TO LITIGATION ON PARALLEL TRACKS, THE COURT CAN COORDINATE PRE-TRIAL LITIGATION AND TRIAL

The Order states: "Assume parallel tracks for ADR and Rule 7023 procedures, neither of which are entirely successful, when will it be appropriate to consolidate matters to avoid duplication of matters such as expert testimony?" Order at 4.

The answer is that, if the class mediation is unsuccessful, then the Court can coordinate all pre-trial litigation and trial.

Indeed, the Court has "nearly unfettered discretion" in coordinating and managing the class litigation. *Judicial Management of Class Actions—Generally*, 3 *Newberg and Rubenstein on Class*

---

[7] It appears that the Reorganized Debtors' count of the number of Securities Claims may be underestimating the number of Securities **Claimants** that must participate individually in the ADR Procedures or the claims resolution procedures if a class is not certified, because multiple Securities Claims were filed on claim forms submitted on behalf of hundreds if not thousands of individuals or entities with proper authorizations. *See, e.g.*, Claim Nos. 99436, 99838, 102193, 102442, 101400, 101999, 105885, 105888.

Case: 19-30088   Doc# 13978   Filed: 08/18/23   Entered: 08/18/23 15:31:07   Page 15 of 21

*Actions* § 10:1 (A court may "adopt special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems . . . .") (citation omitted).

In securities class action litigation, it is common practice for courts to coordinate discovery between class plaintiffs and opt-out plaintiffs. For example, the court in *In re FirstEnergy Corp. Securities Litigation* issued a deposition protocol that required class plaintiffs and opt-out plaintiffs to coordinate fact depositions. *See* No. 2:20-cv-3785 (E.D. Ohio 2020), ECF No. 117.

Similarly, courts presiding over securities class actions have coordinated expert discovery. *See, e.g.*, *Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Industries Ltd.*, No. 3:17-cv-558 (D. Conn. Apr. 28, 2020), ECF No. 352. As with all pre-trial litigation, class treatment of expert discovery is far superior to proceeding individually because that is the only way to resolve issues such as loss causation and damages with respect to all the alleged misstatements and corrective disclosures. This includes issues of market price (or price impact), which must be addressed for any equity claims asserted under the Exchange Act of 1934 even if a class is not certified. *See, e.g.*, *In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2022 WL 1497559, at *21 (N.D. Cal. Apr. 1, 2022) (denying summary judgment for the plaintiff where there was "evidence suggesting that the misrepresentations did not actually affect the market price"); *see also* Ninth Circuit Model Civil Jury Instruction 18.7 (presumption of reliance can be rebutted by proving that "the alleged misrepresentation or omission did not affect the market price of the security").

Then, after the close of all discovery, the Parties can meet and confer over the parameters and appropriate level of coordination of the trial and present a proposed pre-trial order to the Court.

Finally, at trial there would be a determination of (a) an allowed class claim against the Reorganized Debtors, in some amount, allocated across the four time periods set forth in the definition of "HoldCo Rescission or Damage Claim Share" in Article 1.109 of the confirmed Plan [ECF No. 8048] for conversion into a number of shares of common stock in reorganized PG&E pursuant to Article 4.14 of the Plan and (b) an allowed class claim on account of any bond purchasers' losses, which would be paid in cash pursuant to the Plan. Those Plan distributions

1 would then be allocated among and distributed to members of the class pursuant to a Court-
2 approved plan of allocation.

3    Therefore, if the class mediation is unsuccessful, the procedures and tools provided by class
4 certification under Rule 23 would streamline all pre-trial litigation and trial. Specifically, "the class
5 action can make litigation more efficient for both the litigants and the judicial system by forestalling
6 repetitive litigation." 3 *Newberg and Rubenstein on Class Actions* § 10:1; *see also id.* (noting that
7 "courts have repeatedly held that a court rarely rejects certification on the grounds that a case is
8 unmanageable, particularly because a court has available to it a variety of case management
9 techniques to make a class suit manageable," and citing the Federal Judicial Center's Manual for
10 Complex Litigation).

11    There is absolutely no reason to believe that every single one of the remaining Securities
12 Claims—or even most of them—could be resolved more quickly and efficiently on an individual
13 basis than under the Securities Plaintiffs' class certification proposal.

14                                    **<u>CONCLUSION</u>**

15    Thus, for the foregoing reasons and those set forth in the Securities Plaintiffs' Motion and
16 Reply, the Court should exercise its discretion to apply Rule 23 and certify a class of Securities
17 Claimants.

18 Dated: August 18, 2023

19                              Respectfully submitted,

20                              **MICHELSON LAW GROUP**

21                              By: */s/ Randy Michelson*
22                              Randy Michelson (SBN 114095)
                                *Local Bankruptcy Counsel to Securities Lead*
23                              *Plaintiff and the Class*

24                              - and –

25                              **LABATON SUCHAROW LLP**
26                              *Lead Counsel to Securities Lead Plaintiff and the*
                                *Class*
27
                                - and -
28

**LOWENSTEIN SANDLER LLP**
*Special Bankruptcy Counsel to Securities Lead*
*Plaintiff and the Class*

- and -

14

1

2

**LABATON SUCHAROW LLP**
Thomas A. Dubbs (*pro hac vice*)
Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Thomas G. Hoffman, Jr. (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone 212-907-0700
tdubbs@labaton.com
cvillegas@labaton.com
mcanty@labaton.com
thoffman@laaton.com

*Lead Counsel to Securities Lead Plaintiff and the Class*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone 415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill
Colleen Restel
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone 973-597-2500
Facsimile 973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com
scargill@lowenstein.com
crestel@lowenstein.com

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone 415-512-8600
Facsimile 415-512-8601
randy.michelson@michelsonlawgroup.com

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone 619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone 313-578-1200
tmichaud@vmtlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Hadiya K. Deshmukh (SBN 328118)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone 415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com

*Counsel for the Securities Act Claims*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
*Liaison Counsel for the Class*

- and -

**ROBBINS GELLER RUDMAN & DOWD LLP**
*Counsel for the Securities Act Plaintiffs*

- and -

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
*Additional Counsel for the Securities Act Plaintiffs*

## EXHIBIT B
## RESERVATION OF RIGHTS

The Securities Plaintiffs, on behalf of themselves and the Class, do not, and will not impliedly, consent to this Court's adjudication of the claims asserted against any Non-Debtor Defendants now or hereafter named in the Securities Action.