WEIL, GOTSHAL & MANGES LLP
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: (415) 496-6723
Fax: (650) 636 9251

*Attorneys for Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 (Lead Case) (Jointly Administered) |
| - and - | **REORGANIZED DEBTORS' SUBMISSION IN CONNECTION WITH THE SECURITIES PLAINTIFFS' MOTION FOR THE APPLICATION OF BANKRUPTCY RULE 7023 AND THE CERTIFICATION OF A CLASS OF SECURITIES CLAIMANTS** |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | |
| | Date: August 23, 2023 |
| | Time: 10:00 a.m. (Pacific Time) |
| ☐ Affects PG&E Corporation | Place: (Tele/Videoconference Appearances Only) |
| ☐ Affects Pacific Gas and Electric Company | United States Bankruptcy Court |
| ☒ Affects both Debtors | Courtroom 17, 16th Floor |
| | San Francisco, CA 94102 |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors**" or the "**Reorganized Debtors**"), hereby submit this supplemental brief in response to the Court's *Order Regarding Continued Hearing on Motion for the Application of Bankruptcy Rule 7023* (the "**Supplemental Briefing Order**").[1] The Debtors also submit a *Report on the Progress of the Securities ADR Procedures in Resolving the Securities Claims* filed concurrently herewith.

## PRELIMINARY STATEMENT

The Securities ADR Procedures have worked and continue to work. Every unresolved Securities Claim subject to the Securities ADR Procedures (not resolved or subject to a pending omnibus objection) has now received a settlement offer. As of August 17th, approximately 64% of the Securities Claims have been resolved—5,639 claims in total. In the last two weeks alone, the Reorganized Debtors have settled 281 Securities Claims and filed omnibus objections which, if granted, would resolve approximately 165 additional Securities Claims. Indeed, since PERA filed its third 7023 motion, Securities Claimants and the Reorganized Debtors have settled an additional 571 claims.

The Securities ADR Procedures and the Court's newly adopted Amendment and Objection Procedures[2], without the distraction of class certification discovery and briefing, remain the best option to expeditiously and fairly resolve Securities Claims; they provide a straightforward and efficient roadmap for the resolution of the unresolved Securities Claims. PERA's class certification proposal, if adopted, would only cause extensive delay and confusion, and it would severely diminish claimants' evident desire to settle now—*i.e.*, before finding out whether a class will be certified. And, if the class certification process is allowed to move forward, the Court will likely find itself right back where it is now, because discovery, experts, and an evidentiary trial will establish that a securities class should not be certified.

---

[1] Capitalized terms used herein have the meanings ascribed to such terms in the *Reorganized Debtors' Objection to the Securities Plaintiffs' Motion for the Application of Bankruptcy Rule 7023 and the Certification of a Class of Securities Claimants* (the "**Objection**") as applicable.

[2] *See Order Authorizing Amendment and Objection Procedures for Securities Claims* [Dkt. No. 13934] (the "**Amendment and Objection Procedures**").

- 1 -

If litigation on the merits does prove to be necessary, under the Amendment and Objection Procedures, it will be expeditious and coordinated following the objection deadline in December of this year. The Amendment and Objection Procedures require an initial case management conference as soon as practicable following the December 13, 2023 Securities Claims objection deadline to set a coordinated briefing schedule and hearing date for any sufficiency objections filed by the Reorganized Debtors. Even while the Court is considering the sufficiency objections, the Amendment and Objection Procedures require certain parties to meet and confer regarding discovery procedures to ensure quick, efficient, and coordinated discovery in the event that any Securities Claims survive a sufficiency objection. These procedures, which were heavily negotiated by the Reorganized Debtors and certain large securities claimants, are set forth in orders already entered by the Court and have already been served on the Securities Claimants with unresolved claims.

Deviating from the clear path set forth by the Securities ADR Procedures and Amendment and Objection Procedures to even consider class certification will effectively and practically end settlements under the Securities ADR Procedures. The procedures adopted by the Court—and negotiated with numerous claimants—allow for claimants and the Reorganized Debtors to focus their efforts on settlement during the remainder of 2023. If those efforts are unsuccessful with certain claimants, those parties then can focus efforts on litigation that will be coordinated and well-defined. Litigating about whether a proposed class should be certified turns that process on its head. As demonstrated below, under well-established Supreme Court authority, class certification requires the immediate litigation of important merits issues. It accelerates discovery on these merits issues and will divert the attention of all parties from settlement to active and extensive discovery, including likely dozens of depositions, expert discovery of numerous experts, expert reports and active merits litigation.

In its Supplemental Briefing Order, the Court set forth a number of questions, each of which this supplemental brief answers. All of the Court's questions demonstrate why PERA's proposed class certification proposal would impose needless impediments to the procedures adopted by the Court. Although PERA appears to contend that if the Court grants PERA's Motion the certification of a securities class is a foregone conclusion, but that is not the case. The Reorganized Debtors and perhaps

- 2 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

other Securities Claimants will vigorously oppose the certification of a Rule 23 class. By PERA's own admission, the class certification process would impose months of additional litigation that would not otherwise be necessary under the existing procedures. This supplemental submission also explains, however, that the six-month schedule that PERA proposes is not just "expedited," but unrealistic under well-established Supreme Court authority. For the Court's information, the Reorganized Debtors set forth in this supplemental submission, the detailed, claim-by-claim legal analysis that the Court would be required to undertake—and the extensive discovery that would be required in connection with that analysis—if the Court were to entertain PERA's request for class certification.

## ARGUMENT

The Supplemental Briefing Order sets forth eight questions regarding the applicability of Rule 7023. Set forth below are the Reorganized Debtors' answers.

- **Whether PERA's proposed Rule 7023 procedure have an adverse effect on the pending ADR procedures and on the Reorganized Debtors apart from their cost to defend all of the matters (See PERA Reply, (Dkt 13940 at p.10) if the Motion is granted?**

Implementing PERA's proposed 7023 procedures will as a practical matter end any significant resolution of Securities Claims under the Securities ADR Procedures. The two processes are wholly incompatible and cannot be pursued at the same time for at least two reasons. First, the existence of the 7023 process will chill further settlements. Second, proceeding under both PERA's proposed class certification schedule and the Securities ADR Procedures at the same time would be inconsistent, confusing, wasteful, and prejudicial to Securities Claimants and the Reorganized Debtors.

1. *Implementing a Schedule for Class Certification Will Likely End Significant Further Progress Under the Securities Procedures*

All settlement offers under the Securities ADR Procedures are confidential and this confidentiality is critical for allowing the Reorganized Debtors and Securities Claimants to productively negotiate settlements. *See* Securities ADR Procedures at 25. Many Securities Claimants, especially those who have asserted significant damages against the Reorganized Debtors, are financial institutions that owe fiduciary duties to their clients. The confidentiality provisions of the Securities

- 3 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

ADR Procedures protect Securities Claimants who settle with the Reorganized Debtors from facing comparisons with settlements reached with other Securities Claimants.

If the Court were to certify a class, however, any settlements reached on a claimant-by-claimant basis pending a determination of whether a class action will proceed would undoubtedly be compared to the terms reached with the class, if certified. Accordingly, Securities Claimants would not be willing to pursue individual settlements and take the risk (regardless of how unlikely) that their individualized settlement may prove less favorable than a class-wide resolution.

Securities Claimants with fiduciary obligations are especially unlikely to take that risk. Many of these institutions have already requested extensions of their deadlines to respond to settlement offers as a result of the pending 7023 motion. If the Court allows PERA's proposed class certification procedure to go forward, it is likely that many Securities Claimants, especially pension funds and institutions, will not engage in further settlement discussions until this Court has decided whether to certify a class—a decision unlikely to occur until as late as 2025, after PG&E's claim objections are decided and the extensive class discovery and briefing are complete.

As a practical matter, the chilling effect caused by PERA's proposed 7023 procedures will likely end further significant progress under the Securities ADR Procedures, especially with many large claimants, including pension funds and institutions.

2. *Pursuing the Securities ADR Procedures and PERA's Proposed 7023 Procedures Simultaneously Would be Confusing, Wasteful, and Prejudicial*

The Amendment and Objection Procedures provide a roadmap for the resolution of unresolved Securities Claims, and this roadmap is wholly incompatible with PERA's 7023 proposal. Attempting to pursue both in parallel will be confusing, procedurally impossible, and wasteful.

Even under PERA's wildly optimistic schedule, and assuming the Court would ultimately adopt a class (which it should not do based on the evidence), nobody will know which Securities Claimants are members of the class until at least late 2024. These considerations would chill all aspects of the Securities ADR Procedures for at least six months and likely far longer. In contrast, the Reorganized Debtors have resolved 981 claims in just the time since the last extension motion was filed in May (just

- 4 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

three months ago), and the Reorganized Debtors could resolve a significant number of the unresolved Securities Claims by the end of the year should this Court deny the 7023 Motion.

Pursuing class certification and the Securities ADR Procedures in parallel would result in wasteful and duplicative litigation. Under the Amendment and Objection Procedures, Securities Claimants face two deadlines long before PERA's proposed December 1, 2023 hearing on class certification. *See* Reply[3] at 10. First, Securities Claimants who intend to amend their proofs of claim must do so by October 6, 2023, with the Reorganized Debtors' objections due within sixty days of the date any such amendment is made, subject to any applicable tolling provisions set forth in the Securities ADR Procedures. Amendment and Objection Procedures at ¶¶ 4, 6. Second, Securities Claimants who intend to adopt the allegations set forth in any other Securities Claimants' proof of claim must do so by October 13, 2023, with the Reorganized Debtors' objections due within sixty days of the date any such amendment is made, subject to any applicable tolling provisions set forth in the Securities ADR Procedures. *Id.* Even under PERA's accelerated and Constitutionally-infirm schedule, however, the Securities Claimants would not be notified of the existence of a potential class until January 17, 2024, and Securities Claimants would not be permitted to make their class election until February 16, 2024. Reply at 10.

Under these deadlines, "proceeding in parallel" would force the parties to proceed under the Securities ADR Procedures for months, only to be potentially mooted through class election. Spearheaded by class counsel, class members would then re-litigate and submit duplicative briefing of precisely the same issues. There is absolutely no efficiency to be gained through such a process.

Because PERA does not propose providing any formal notice of the potential class until this Court has decided whether to certify a class, Securities Claimants understandably will be confused as to how the Securities ADR and Amendment and Objection Procedures interact with the proposed class mechanism. A Securities Claimant might miss the October deadlines to amend its proof of claim or adopt the allegations set forth in another proof of claim, either (I) because it is under the impression

---

[3] *See Reply Memorandum in Further Support of Securities Plaintiffs' Motion for the Application of Bankruptcy Rule 7023 and the Certification of a Class of Securities Claimants* [Dkt. No. 13940] (the "**Reply**").

- 5 -

that class counsel is already representing its interests, or (II) to gain a strategic advantage because, under PERA's proposal, it can join the class before the Court is likely to rule on any sufficiency objections the Reorganized Debtors file to its proof of claim. Parallel tracks render the Securities ADR Procedures and the Amendment and Objection Procedures confusing, at best, and require claimants (and the Reorganized Debtors) to make choices under the procedures that might be unnecessary if a class is ultimately certified. Securities Claimants may be forced to separately amend their proofs of claim and the Reorganized Debtors may need to file sufficiency objections as to those proofs of claim many months before anyone knows whether a class will be certified. Allowing Claimants to opt into a class after strategic decisions have been made by both Securities Claimants and the Reorganized Debtors is fundamentally unfair to all parties.

The Securities ADR Procedures and class certification are mutually exclusive and as a practical matter cannot be undertaken simultaneously.

- **If the court provides an opt-out option under Rule 7023, do specific claimants have the right to opt back in if the ADR procedures are unsuccessful as to them?**

While technically permissible, the Court cannot allow a Securities Claimant who opts out of a Rule 23 class to opt back in without scrutinizing the decision "to assure that no special benefit is conferred upon [the claimant opting back into the class] at the expense of the other class members" and to assure that the Reorganized Debtors will not be prejudiced. *In re Elec. Carbon Prod. Antitrust Litig.*, 447 F. Supp. 2d 389, 397 (D.N.J. 2006); *see also In re Elec. Weld Steel Tubing Antitrust Litig.*, 1982 WL 1873, at *3 (E.D. Pa. June 30, 1982). Any attempt to rejoin the class would be heavily contested.

Allowing Securities Claimants to opt out of the class and rejoin later will prejudice the Reorganized Debtors and undermine settlement negotiations under the Securities ADR Procedures. Productive negotiations with the class require the Reorganized Debtors and the class representatives to know which Securities Claimants are class members. Allowing Securities Claimants to opt out of the class and potentially rejoin for settlement purposes will stifle negotiations with the class.

Further, allowing Securities Claimants to opt back into the class encourages strategic gamesmanship under the Securities ADR Procedures. A Securities Claimant can opt out of the class,

- 6 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

attempt to delay accepting an offer under the Securities ADR Procedures until the Reorganized Debtors and the class reach a resolution, then try to opt back into the class in the event the class resolution is more favorable than the individual resolution offered. This would result in a windfall for Securities Claimants who attempt this kind of strategic abuse of the process at the expense of the Reorganized Debtors and would be fundamentally unfair to those Securities Claimants who have engaged in good faith with the Reorganized Debtors under the Securities ADR Procedures. The potential for this kind of strategic abuse of the opt-out process is reason enough to bar the practice. *In re Del-Val Fin. Corp. Sec. Litig.*, 162 F.R.D. 271, 276 (S.D.N.Y. 1995) (denying an opt-out claimant's request to opt back into a class with respect to some, but not all, defendants because of the risk of strategic abuse).

- **What is the harm to permitting an opt-in option instead of what PERA proposes? The authorities cited suggest only the opt-out option appears in FRCP 23, but nothing appears to prohibit it.**

An opt-in class mechanism is legally permissible, and while no class should be certified, an opt-in class is the only class mechanism that should even be considered under the circumstances here.

The purpose of Rule 23 is to protect absent class members where "[t]he plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually, nor would he affirmatively request inclusion in the class if such a request were required by the Constitution." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). This is not the situation here. All Securities Claimants have filed claims or have instructed others to file claims on their behalf.

Given the purpose behind Rule 23, it makes perfect sense that courts have rejected opt-in class certification mechanisms where the proposed class consists of unknown or absent class members. *Every* case PERA cites for the proposition that Rule 23 prohibits an opt-in class involved certifying a class which included ***absent class members***. *See Kern v. Siemens Corp.*, 393 F.3d 120, 124 (2d Cir. 2004) (declining to certify an opt-in class which included absent heirs and beneficiaries of a train accident); *Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 216 (5th Cir. 2012)

- 7 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(declining to certify an opt-in class of absent governmental units); *Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 656 (E.D. Cal. 2009) (declining to certify an opt-in class of absent cotton growers).[4]

But this is not those cases, and opt-in classes are permitted: "Circumstances may require a court to . . . impose what amounts to an opt-in requirement." *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 42 (E.D.N.Y. 1991). Courts must examine whether the specific circumstances warrant departure from the "typically recognized opt out procedure." *See Martinez v. Knight Transportation, Inc.*, 2022 WL 14746410, at *9 (E.D. Cal. Oct. 25, 2022); *Maciel v. Bar 20 Dairy, LLC*, 2018 WL 5291969, at *8 (E.D. Cal. Oct. 23, 2018).

Here, if certification were granted (although it should not be) the circumstances would require an opt-in class. Every member of the proposed class has filed one (or more) proofs of claim—there are no absent class members. The Reorganized Debtors have already made a settlement offer to each member of the proposed class. Under the Securities ADR Procedures, the Reorganized Debtors may mediate with a significant portion of the proposed class members—where an individual with settlement authority must participate. But if a class is certified, settlement authority would transfer from the individual claimant to class counsel. This Court should not deprive the Securities Claimants of the ability to pursue or settle their claims without their affirmative consent.

Moreover, absent an opt-in procedure, the Court would effectively divest a claimant of the ability to prosecute their own proof of claim in favor of being part of PERA's class proof of claim—and being bound by litigation over PERA's proof of claim rather than its own filed proof of claim. It raises grave due process concerns to divest a Securities Claimant of their filed proof of claim without some affirmative indication that they consent to joining the class. Even worse, some claimants have hired their own counsel who filed proofs of claim. Discarding a Securities Claimant's choice of counsel without affirmative consent is without precedent at best and Constitutionally infirm at worst.

It is worth underscoring, however, that the Court need not certify a class to realize any potential benefits from Securities Claimants coordinating with PERA's counsel for a collective resolution of

---

[4] PERA also cites *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120 (N.D. Cal. 2008), but that case examines whether a Rule 23 class action can be brought alongside the class action procedures found in the Fair Labor Standards Act and is irrelevant here.

their claims. Securities Claimants are, and have always been, free to hire PERA's counsel (or any other counsel of their choosing). In any event, if the Court were inclined to certify a class, the Court can and should require Securities Claimants to affirmatively opt into the class under the circumstances here.

- **Is there any bankruptcy case other than this one where a class action has been considered at the same time something akin to the ADR procedures here (which clearly has its own "opt-out" option available to claimants by who reject the best settlement offer of the Reorganized Debtors?**

No. What PERA proposes is unprecedented. Not only has there been no class certified where there are some type of ADR procedures in place, the Reorganized Debtors have found no case where a court has *ever* certified a class of individuals comprised solely of those who had already filed proofs of claim.

- **If the court grants the Motion, what happens after class certification, notice and the opt-out deadline? More specifically, assuming there is no consensual resolution between PERA and the Reorganized Debtors via efforts to settle any class action, on what timeline would the court expect to set pre-trial and trial scheduling matters?**

After the lengthy period required for class certification, under PERA's proposal the Court would next need to address the sufficiency of the class claim. By this point in time, the Court will have likely decided other sufficiency objections (if any), including those based on the allegations in the PERA Complaint under the newly adopted procedures. *See* Amendment and Objection Procedures at ¶ 10(a). PERA's proposal invites different litigation by a class on a complaint that will have already been the subject of litigation.

Assuming the class survives a sufficiency objection, in whole or in part, the Reorganized Debtors and the class will engage in discovery many months after some or all of the Objectors under the Amendment and Objection Procedures—making it impossible to coordinate discovery between the class and remaining parties. In any event, discovery here will likely be lengthy. *See, e.g.*, Joint Case Management Report, *Bennett v. GoDaddy.com, LLC*, Case No. 2:16-cv-03908-DLR (D. Ariz. Jan. 20, 2017) [Dkt. No. 35] (providing a year and five months for fact and expert discovery in a securities matter). After the close of discovery, parties in securities litigation typically take three to four months to brief dispositive motions, and the case can be ready for trial soon after those motions are decided, if

- 9 -

necessary. *See, e.g.*, Stipulated Discovery Plan and Scheduling Order Pursuant to Fed. R. Civ. P. 26(F) and Local Rule 26-1, *In re MGM Mirage Securities Litigation*, Case No. 2:09-cv-01558-GMN-VCF (D. Nev. Jan. 9, 2014) (providing three-and-a-half months for briefing dispositive motions in securities case); Order Granting Joint Motion Regarding Briefing and Hearing Schedule for Joint Motions, *In re PetCo Corporation Securities Litigation*, Case No. 05-CV-0823-H(RBB) (S.D. Cal. Oct. 17, 2007) (providing approximately three months for briefing of dispositive motions in a securities case).

- **If the ADR procedures are unsuccessful, what would be the estimated pre-trial and trial scheduling for adjudication of the remaining claims under the traditional claims objection process?**

- **Assume parallel tracks for ADR and Rule 7023 procedures, neither of which are entirely successful, when will it be appropriate to consolidate matters to avoid duplication of matters such as expert testimony? For example, will the question of market price (Reply, at p. 10 and footnote 14) or other similar matters need to be dealt with even without the Motion being granted?**

Unlike the lengthy and speculative timeline for resolution of the remaining Securities Claims under PERA's proposal, much of the timeline for the resolution of the remaining Securities Claims is already set forth in the Amendment and Objection Procedures. Under those procedures, the Reorganized Debtors must object to all claims not subject to the tolling provisions of the Securities ADR Procedures by December 13, 2023. Amendment and Objection Procedures at ¶¶ 5, 6. On December 14, 2023, or as soon thereafter as convenient for the Court, the Court will then set a coordinated briefing schedule for the adjudication of any sufficiency objections the Reorganized Debtors have filed. *Id.* at ¶ 10(a). While the parties are awaiting the Court's decision on the sufficiency objections, the parties will meet and confer regarding procedures for coordinated discovery in the event the Court denies any of the pending sufficiency objections, and as soon as convenient after the Court issues its decision, the Court will set a case management conference to set a coordinated discovery schedule. *Id.* at ¶ 10(b). Fact discovery will take at least nine months and expert discovery will take at least three months. *Id.* at ¶ 10(e). As set forth above, parties in securities litigations typically take three to four months to brief dispositive motions, and the case can be ready for trial soon after, if necessary. And this is a rocket pace relative to most securities litigations. *See* Securities Class Action

- 10 -

Settlements – 2022 Review and Analysis, Cornerstone Research, at 13, https://securities.stanford.edu /research-reports/1996-2022/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (demonstrating that median time from filing to settlement in a securities class action is 3 1/2 years)

The Amendment and Objection Procedures provide a clear path forward for the coordinated, efficient adjudication of the unresolved Securities Claims. The Court can begin to consolidate legal issues for adjudication as early as December of this year in connection with the sufficiency objections, and as soon as the Court has issued a decision on the sufficiency objections, the Court can immediately set a single, coordinated discovery schedule that encompasses any fact issues that remain across all unresolved Securities Claims, including the issue of market price. And this assumes that any Securities Claims remain to adjudicate after the Court has ruled on the sufficiency objections.

In stark contrast, the class certification process will likely delay any coordinated litigation by as long as a year or more while class certification issues are litigated. Indeed, that time could be even longer if the Court abides by the Private Securities Litigation Reform Act ("**PSLRA**") and Supreme Court authority, and briefs and decides the sufficiency of the claims in the PERA Complaint _**before**_ allowing discovery on and expert reports concerning class certification issues. Class certification would then not be decided until long after the Reorganized Debtors and Securities Claimants have begun litigating under the Amendment and Objection Procedures.

- **Other concerns Reorganized Debtors have that arose in the PERA Reply that have not been dealt with in the Opposition.**

  1. _PERA's Proposed Schedule For Class Certification Discovery And Briefing In Its Reply Is Contrary To Settled Law And Wildly Unrealistic_

While on the surface class certification may seem like an efficient approach to resolving the remaining securities claims, litigating and deciding class certification in the securities arena is an intensive process that will only cause inefficiencies and delays as explained above. In any event, efficiency is only one factor in the class certification analysis. Certification of a class involves significant due process and evidentiary concerns, with the burden on the movant to show that the exacting standards of Federal Rule of Civil Procedure 23 are met. It is, therefore, a serious and time-consuming process, requiring expert testimony, discovery and an evidentiary hearing—a process that

- 11 -

Case: 19-30088    Doc# 13983    Filed: 08/18/23    Entered: 08/18/23 18:18:51    Page 12 of 22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

typically takes the better part of a year.  When compared to the rate at which the Reorganized Debtors are resolving claims through the Securities ADR Procedures, beginning the class certification process will only significantly delay the resolution of the remaining Securities Claims.

Moreover, the schedule PERA proposes in support of its Rule 7023 Motion is contrary to Supreme Court precedent and the near universal practice of federal courts when considering the certification of securities fraud claims. PERA does not dispute that class certification ***discovery*** itself typically takes 6-9 months (and only ***after*** a motion to dismiss has been decided).  Reply at 9.  Instead, PERA claims that the Reorganized Debtors should not need extensive discovery on the issue of price impact because expert testimony on the issue "is typically limited to opining on publicly available information because, almost by definition, non-public information will not impact the price of publicly-traded securities." *Id.*  This is not accurate.  Indeed, in the most recent securities case heard by the Supreme Court on class certification (one litigated by PERA's counsel here), the parties had nearly 2 1/2 years of class certification-related discovery (after the motion to dismiss was denied, in part).  *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2015 WL 5613150, at *1 (S.D.N.Y. Sept. 24, 2015), vacated and remanded sub nom. *Arkansas Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474 (2d Cir. 2018).  In fact, when PERA was trying to convince this Court to certify a mandatory class in the second Rule 7023 Motion, it argued that when certifying a class under Rule 23(b)(3) it is "virtually inevitable that extensive discovery ensues wherein the parties fight over the data and expert analytics underlying this evidence." *Declaration of Andrew D. Bradt Concerning Securities Plaintiffs Reply in Further Support of Motion to Apply Bankruptcy Rule 7023 and Certify a Limited Class* [Dkt. No. 9492-2]. Anything short of a typical schedule allowing approximately nine months for discovery would render the process fundamentally improper and deprive the Reorganized Debtors of their due process rights to contest certification.

### i.     *PERA's Schedule Is Premature*

PERA's proposed schedule is premature as it requires the Court to certify the class—which must be done on a cause of action by cause of action basis—before determining whether any of the Securities Claims at issue here meet the high pleading bar set by the PSLRA.  It would be premature

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to address class certification before the Court has ruled on the legal sufficiency of each alleged misrepresentation in the PERA Complaint. No court has addressed the PERA Complaint, much less complied with the standard that "class certification must be addressed on a claim-by-claim basis." *See e.g.*, *James v. City of Dallas, Tex.*, 254 F.3d 551, 563 (5th Cir. 2001); *In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306, at *17 (S.D. Cal. Mar. 20, 2023) (denying certification of "claims regarding Defendants' alleged licensing misrepresentations" but granting certification as to "regarding Defendants' alleged bundling misrepresentations").[5] Accordingly, before the certification process can even begin, the Court must determine whether the claims meet the "unprecedented" high bar set by the PSLRA and Federal Rule of Civil Procedure 9(b) for pleading Securities Claims. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) (describing the "exacting" requirements for pleading claims under Section 10(b)).

The test here will be a serious one. The Securities Claims should be rejected as a matter of law for what they are—a reflexive attempt to exploit California's new wildfire reality through "abusive and opportunistic securities litigation and . . . the practice of pleading fraud by hindsight" that Congress prohibited in the PSLRA. *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002). Indeed, the Ninth Circuit recently rejected eerily similar claims against another utility as inactionable as a matter of law. *Barnes v. Edison Int'l*, 2021 WL 2325060, at *12 (C.D. Cal. Apr. 27, 2021), *aff'd*, No. 21-55589, 2022 WL 822191 (9th Cir. Mar. 18, 2022) (dismissing claims under Sections 10(b) and 11 based on alleged misrepresentations regarding safety practices and regulatory compliance, which allegedly concealed the Southern California utility's risk of wildfire liability).

But even if the Court does not dismiss the claims in the PERA Complaint as a whole, it will need to determine which (if any) of the alleged misrepresentations are actionable. Courts reviewing the legal sufficiency of securities complaints often dismiss at least some of the claims based on certain alleged misrepresentations or claimed losses. To litigate the class questions, the parties would need to

---

[5] The Supreme Court has repeatedly made clear that certification is analyzed by each alleged misrepresentation, and plaintiffs must establish that elements of each claim can be determined on a class-wide basis. *E.g.*, *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1959 (2021) ("defendants may rebut the presumption of reliance [and defeat certification] by showing that *an alleged misrepresentation* did not actually affect the market price of the stock").

- 13 -

know which of the alleged misrepresentations pled in the PERA Complaint, if any, will survive. This is because the viability of those "misrepresentations" often drives the contours—duration and membership—of the class that can be certified. *E.g.*, *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 2023 WL 5112157, at *13 (2d Cir. Aug. 10, 2023) (analyzing certification separately for two categories of alleged misrepresentations: "business principles" and "conflicts disclosure"); *Indiana Pub. Ret. Sys. V. AAC Holdings*, 2023 WL 2228987, at *27 (M.D. Tenn. Feb. 24, 2023) (certifying certain 10(b) claims and not others); *Erica P. John Fund, Inc. v. Halliburton Co*., 309 F.R.D. 251, 269-76 (N.D. Tex. 2015) ("*Halliburton III*") (denying certification of claims based on losses associated with five of six alleged corrective disclosures where price drop was not statistically significant); *In re Lehman Bros. Sec. and ERISA Litig*., 2013 WL 440622, at *3-4 (S.D.N.Y. Jan. 23, 2013) (granting certification for Section 11 claims because defendants had not proffered evidence of knowledge, but denying certification of Section 12(a)(2) claims because plaintiffs had not proffered evidence of lack of knowledge). Here, the Reorganized Debtors are less than four months from filing claim objections and it makes no sense to engage in discovery or employ experts on class certification before those sufficiency objections are determined and the parties know what alleged representations survive dismissal, if any.

        **ii.     *PERA's Proposed Schedule Fails Because It Ignores the Evidentiary Burden on PERA to Show That Certification is Warranted***

PERA's schedule would not only be unprecedented, it would turn the class certification requirements on their head. Courts require evidence—not just argument—to certify a class. Yet, PERA's schedule ignores established Supreme Court precedent that requires plaintiffs to make a showing of why Rule 23(b) applies to each claim, and then provides any defendant the opportunity to obtain discovery—which in securities cases typically covers discovery from plaintiffs, their investment advisors, analysts and other third parties, along with fact and expert depositions—before submitting an opposition channeling all of that discovery into an evidentiary showing of the individualized issues that will determine liability and predominate. That evidentiary showing will be particularly apt here because claimants have filed individualized proofs of claim with unique trading in 67 PG&E securities—all of which must be separately analyzed for class certification purposes.

Case: 19-30088    Doc# 13983    Filed: 08/18/23    Entered: 08/18/23 18:18:51    Page 15 of 22

**PERA's Burden.** As an initial matter, PERA's proposed schedule fails because it would eliminate PERA's burden to show compliance with the requirements of Rule 23(b). Supreme Court precedent is clear that "[a] party seeking class certification must affirmatively demonstrate his compliance" with Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (requiring "evidentiary proof" that Rule 23(b) is satisfied). Then, the Court must conduct a "rigorous analysis" to determine the merits, or lack thereof, of plaintiff's arguments. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

PERA's schedule ignores its burden (and thereby seeks to avoid challenges to certification based on its inability to make the required evidentiary showing that Rule 23(b)(3) applies). Here, for claims under Section 10(b) and Rule 10b-5, PERA is required, at least, to show that the "presumption of reliance" alleged in the PERA Complaint applies in the first instance.[6] The required showings related to market efficiency[7] are typically done through experts, and are not the foregone conclusion PERA assumes. *E.g.*, *Goldman*, 141 S. Ct. at 1960; *see also Brokop v. Farmland Partners Inc.*, 2021 WL 4913970, at *5 (D. Colo. Sept. 30, 2021) (limiting class to include only purchasers for which plaintiff met its burden to show market efficiency). "[W]ithout the presumption of reliance, a Rule 10b-5 suit cannot proceed as a class action [because each] plaintiff would have to prove reliance individually, so common issues would not 'predominate' over individual ones." *Halliburton II*, 134 S. Ct. at 2416. Beyond the reliance element, securities plaintiffs seeking to certify a class must also show in the first instance that other elements (and defenses) can be determined on a class-wide basis, such that individualized issues of liability will not predominate. *E.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27,

---

[6] The presumption of reliance is a rebuttable presumption adopted by the Supreme Court in *Basic v. Levinson* ("*Basic*"), based on the theory that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price," such that if "most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action." *Basic Inc. v. Levinson*, 485 U.S. 224, 247, 108 S. Ct. 978, 992 (1988); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (*Halliburton I*).

[7] Specifically "a plaintiff must make the following showings to demonstrate that the presumption of reliance applies in a given case: (1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton II*, 134 S. Ct. at 2407.

- 15 -

34 (2013) (plaintiffs "cannot show Rule 23(b)(3) predominance" where expert damages "model falls far short of establishing that damages are capable of measurement on a class-wide basis"); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 691 (5th Cir. 2015) (denying certification where plaintiffs' expert failed to show loss causation and damages could be determined on a class-wide basis for claims based on allegedly concealed risk of oil spill). Here, PERA has yet to offer an explanation as to how loss causation could be determined on a class-wide basis, which is a significant issue, since the proposed class would include investors who purchased stock before and after the North Bay Fires, as well as after the Camp Fire. All of these traders would be lumped together in PERA's proposed class; but as in *Ludlow*, it is difficult to see how loss causation and damages could be determined on a class-wide basis. 800 F.3d at 691 (denying certification where expert model did not show that damages and loss causation could be determined on a class-wide basis "because it lumps together those who would have bought the stock at the heightened risk with those who would not have").

**PERA's schedule improperly limits discovery.** PERA's proposed schedule also limits the traditional sorts of class certification discovery defendants take, which effectively deprives the Reorganized Debtors of their ability to oppose certification by showing, through evidence, that liability depends on (and differs for) individual investors—based on reliance, knowledge and risk tolerance. If the Court granted certification without providing the Reorganized Debtors the required opportunity to show that such individualized issues exist for both Section 10(b) and Section 11 claims, it would have the effect of limiting the Reorganized Debtors' ability to contest liability as to individual class members at all. *Wal-Mart*, 564 U.S. at 367 ("the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right'" (quoting 28 U.S.C. § 2072(b))).[8]

Not only does PERA's proposed schedule seek to severely limit this sort of required and standard expert discovery, it does not contemplate nor provide enough time for non-expert discovery. Critically, the proposed schedule does not provide for any discovery on the most important and salient evidence regarding individualized issues, including Securities Claimants' own reliance and knowledge,

---

[8] PERA claims that "[t]he Reorganized Debtors do not contest market efficiency or the application of the *Basic* presumption of reliance." Reply at 10. That is absolutely false. Reorganized Debtors intend to vigorously oppose class certification on these and several other bases.

- 16 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

as well as loss causation. For example, the proposed schedule provides only for depositions of PERA's proposed class representatives—without specifying whether these depositions will be a 30(b)(6) deposition or otherwise—and does not permit the depositions of the investment advisors that made decisions on the class representatives' behalf, much less any other sophisticated investors, analysts, or other class members. This evidence is critical to any showing of what information was available to the market, and why individualized issues exist, and must be considered by the Court. *See, e.g.*, *Goldman*, 141 S. Ct. at 1955 (ordering the "Second Circuit to consider all record evidence relevant to price impact, regardless [of] whether that evidence overlaps with materiality or any other merits issue."); *Residential Capital*, 272 F.R.D. at 170 (denying certification based on a "good deal of documentary [and testimonial] evidence imputing knowledge" from investment advisors, sophisticated investors, and putative class members). Nor does the schedule provide for discovery of third parties, which courts have held is essential to show that individualized issues will predominate.[9] PERA's proposed schedule fundamentally limits the Reorganized Debtors' ability to develop this evidence, and ultimately oppose class certification. Again, PERA's own Complaint relies on myriad reports that were released over time regarding the alleged misrepresentations, and claims that "the truth began to emerge" halfway through the alleged class period and before many investors purchased stock. Here, based on the PERA Complaint alone, "different levels of knowledge can be imputed to investors who purchased at different times because throughout the relevant period more and more information became publicly available," and evidence of that knowledge will demonstrate why certification is not permitted here. *New Jersey Carpenters I* 272 F.R.D. at 169.

**Section 10(b) claims.** With respect to certification of claims under Section 10(b), at the very least, the Reorganized Debtors have clear avenues to rebut the presumption of reliance. "*Basic* itself 'made clear that the presumption was just that'"—a presumption—that can be rebutted "in a number of ways." *Halliburton II*, 134 S. Ct. at 2405, 2414. As stated in *Basic*, "[a]ny showing that severs the

---

[9] *See, e.g.*, *In re Initial Pub. Offerings*, 471 F.3d at 44-45 (denying class certification based on showing of "widespread knowledge"); *cf. In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132 (S.D.N.Y. 2008) (granting certification where defendant speculated that class members could have knowledge but "provide[d] no direct evidence"); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008) (holding no evidence put forward by defendants showed "that any potential class plaintiff—including investment banks—had actual knowledge").

- 17 -

link between the alleged misrepresentation and . . . the price received (or paid) by the plaintiff . . . will be sufficient to rebut the presumption of reliance" because "the basis for finding that the fraud had been transmitted through market price would be gone." 485 U.S., at 248, 108 S.Ct. 978. On the face of PERA's Complaint alone, there are several ways the Reorganized Debtors will be able to defeat PERA's class certification bid, but they require the opportunity to fully develop evidence to show a lack of price impact, including:

- Evidence showing statements did not have front-end price impact—*i.e.*, that they did not result in a statistically significant increase in price. *IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 782-83 (8th Cir. 2016) (evidence of no front-end price impact rebutted the presumption).

- Evidence showing "a mismatch between the contents of the misrepresentation and the corrective disclosure," including where statements are general and alleged corrective disclosures are specific. *Goldman*, 141 S. Ct. at 1961; *Goldman*, 2023 WL 5112157, at *22 (decertifying class for claims challenging generic statements based on, among other things, expert analysis of 880 analyst reports, which "correctly observed that the alleged misrepresentations 'do not provide information that bears on a company's future financial performance or value' and 'are also too general to convey anything precise or meaningful' that can be used in investment decision-making").

- Evidence showing the market knew the truth prior to the alleged corrective disclosures. *See Goldman*, 879 F.3d at 486 (2d Cir. 2018) (reversing class certification and directing district court to consider "evidence that the market learned the truth about" the alleged misstatements prior to the alleged corrective disclosures, "without any accompanying decline in the price of Goldman stock").

- Evidence showing the alleged corrective disclosures were not in fact corrective of any of the alleged misstatements defeats class certification—*i.e.* they did not "reveal some then-undisclosed fact with regard to the specific misrepresentations in the complaint." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010).

- Evidence showing that a stock price drop was caused by other factors. *E.g. Halliburton II*, 134 S. Ct. at 2415-16 (lack of price impact can be shown by "[c]omparing the relative seriousness of all the information released" on a particular day, and showing that the misrepresentation or corrective disclosure did not "play[] a significant role" in the stock drop).

The deficiencies that preclude certification (and likely liability) are apparent on the face of PERA's own Complaint and the trading data submitted with respect to its claims. The PERA Complaint challenges nearly identical statements made before and after the North Bay Fires, under the theory that PG&E misrepresented its safety practices, compliance with regulations, and the risk of

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- 18 -

wildfires. PERA Compl. ¶¶ 1-10, 503. Yet at that same time, PERA claims that the "truth began to emerge about PG&E's insufficient safety practices" after the North Bay Fires. *Id.* ¶ 335. And, it claims losses based on five disclosures regarding the North Bay Fires that allegedly corrected previous misstatements—including PG&E's suspension of a cash dividend based on "potential liabilities associated with" the North Bay Fires and CAL Fire Reports that those were caused by PG&E's equipment and its investigation revealed "evidence of alleged violations of state law"—and caused the stock price to drop. *Id.* ¶¶ 335, 339, 346-54. But despite alleging that the truth was revealed, PERA continues to claim that nearly identical statements regarding PG&E's safety practices and compliance (some made on the same day as the corrective disclosures ) were materially misleading, investors relied on them, and they inflated PG&E's stock price. The trading data submitted by claimants itself suggests that claimants did not rely on the alleged misrepresentations in making their purchases, as several institutional Securities Claimants purchased the majority of their shares at the height of speculation— immediately after alleged corrective disclosures surrounding the North Bay Fires and/or the Camp Fire. Third-party discovery and analysts will likely confirm, at least, the lack of price impact for certain misstatements and the evolving understanding of the market after the North Bay Fires, and underscore the need for individualized inquiries on other reliance and even loss causation for investors who purchased at different times. *Goldman*, 2023 WL 5112157, at *22.

**Section 11 claims.** Significant individualized issues also will be determinative of PERA's Section 11 claims. First, Courts routinely deny certification of Section 11 claims where the record demonstrates that the actual information plaintiffs contend was omitted was publicly available, some investors knew it, and there is a "reasonable inference" that other investors learned it. *See, e.g.*, *Fat Brands*, 2020 WL 1934976, at *5 (common questions did not predominate "where the allegedly omitted

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- 19 -

information . . . was public information, reported prior to the IPO" and "it is likely that, before investing, some purchasers . . . discovered or were exposed to [that information]").[10]

Second, liability will depend on individualized issues of causation, just like the Section 10(b) claims. Section 11 provides a "negative causation" defense, which is the mirror-image of the loss causation element of Section 10(b). 15 U.S.C. § 77k(e); *In re WorldCom, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 2216, at *20 (S.D.N.Y. Feb. 17, 2005) (stating that "negative causation defense in Section 11 and loss causation in Section 10(b) are mirror images"). Here, the price of the notes at issue did not change over most of the alleged class period, even when PERA alleges the "truth began to emerge" in October 2017 with the North Bay Fires. And there is reason to believe that many, if not most, notes are purchased based on the terms of repayment, not to seek trading gains. Where, as here, issues of causation will likely depend on whether investors would have purchased notes regardless of the allegedly concealed risks, courts have recognized that those causation issues must be determined on an individual basis and preclude certification. *Ludlow*, 800 F.3d at 691.

## CONCLUSION

For the foregoing reasons, the Reorganized Debtors respectfully request that the Motion under Bankruptcy Rule 7023 be denied once again.

---

[10] *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 144 (N.D. Tex. 2014) (denying certification where evidence showed the information about an oil field's production problems "was publicly disclosed" and read by some investors). That is particularly true where, as here, "different levels of knowledge can be imputed to investors who purchased at different times because throughout the relevant period more and more information became publicly available." *New Jersey Carpenters Health Fund v. Residential Cap., LLC*, 272 F.R.D. 160, 169 (S.D.N.Y. 2011), *aff'd sub nom. New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809 (2d Cir. 2012). Showing a variation in knowledge among class members requires more than expert discovery; it requires discovery from third parties and analysts, among others. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 43-44 n.14 (2d Cir. 2006); *True Health*, 896 F.3d at 932-33 (denying certification "based on individual communications and personal relationships between McKesson representatives and [putative subclass members]").

- 20 -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Dated: August 18, 2023

WEIL, GOTSHAL & MANGES LLP

KELLER BENVENUTTI KIM LLP

By:    */s/ Richard W. Slack*
         Richard W. Slack

*Attorneys for Debtors*
*and Reorganized Debtors*

Case: 19-30088   Doc# 13983   Filed: 08/18/23   Entered: 08/18/23 18:18:51   Page 22 of 22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119