| | |
|---|---|
| KELLER BENVENUTTI KIM LLP<br>Jane Kim (#298192)<br>(jkim@kbkllp.com)<br>David A. Taylor (#247433)<br>(dtaylor@kbkllp.com)<br>Dara L. Silveira (#274923)<br>(dsilveira@kbkllp.com)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Tel: 415 496 6723<br>Fax: 650 636 9251 | |

*Attorneys for Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' REPLY IN SUPPORT OF ONE HUNDRED TWENTIETH OMNIBUS OBJECTION (NO LIABILITY CLAIMS) SOLELY WITH RESPECT TO CLAIM NO. 72390 (SYNERGY PROJECT MANAGEMENT, INC.)**<br><br>[Re: Docket Nos. 13670, 13719] |

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ............................................................................................5

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................................7
    A. SPM's Removal from the Haight Street Project ..........................................7
    B. SPM's Failed Attempts to Recover from the City ......................................7
        1. The Administrative Hearing ..............................................................7
        2. SPM's Challenge of the Hearing Officer's Findings ........................8
        3. SPM's Failed Suit for Business Torts and Civil Rights Violations ...9
    C. The Original SPM Claim ............................................................................10
    D. The Omnibus Objection and SPM Response ............................................10

III. LEGAL ARGUMENT ..................................................................................................10
    A. The Alleged Statutory Violations Fail as a Matter of Law .......................10
        1. SPM Is Collaterally Estopped from Arguing that PG&E Is Responsible for the Strikes ........................................................................................11
        2. The Statutory Violations Claim Is Time-Barred ............................12
            a. SPM Did Not Substitute PG&E as a Doe Defendant ..........12
            b. PG&E Was Not a Doe Defendant .......................................13
    B. SPM's Fraud Claim Fails as a Matter of Law ...........................................14
        1. SPM Fails to Plead Fraud with the Required Specificity ...............14
        2. SPM Does Not and Cannot Allege That It Detrimentally Relied on PG&E's Representations ..........................................................................15
        3. The Fraud Claim Is Time-Barred ....................................................16
    C. SPM Does Not State a Claim for Breach of Contract ................................17
        1. SPM Is Not a Third-Party Beneficiary of the Franchise Agreement ...17
        2. PG&E's Denial of SPM's Reimbursement Claims Was Not a Breach of the Franchise Agreement ....................................................................18

IV. CONCLUSION ..............................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*A.N., a Minor v. Cnty. of Los Angeles*, 171 Cal. App. 4th 1058 (2009) ................................................. 12

*Allen v. McCurry*, 449 U.S. 90 (1980) ................................................................................................. 10

*Austin v. Massachusetts Bonding & Ins. Co.*, 56 Cal. 2d 596 (1961) .................................................... 12

*Clark v. Bear Stearns & Co.*, 966 F.2d 1318 (9th Cir. 1992) ................................................................. 10

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011) ..................................................................... 14

*Davis v. Marin*, 80 Cal. App. 4th 380 (2000) ....................................................................................... 12

*Disimone v. Browner*, 121 F.3d 1262 (9th Cir. 1997) .......................................................................... 10

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) ................................................................ 14

*Figueroa v. Campbell Indus.*, 45 F.3d 311 (9th Cir. 1995) .................................................................... 10

*Geernaert v. Mitchell*, 31 Cal. App. 4th 601 (1995) ............................................................................. 14

*Goonewardene v. ADP, LLC*, 6 Cal. 5th 817 (2019) ............................................................................. 17

*In re DJK Residential LLC*, 416 B.R. 100 (Bankr. S.D.N.Y. 2009) ..................................................... 13

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .................................................................... 13

*Marasco v. Wadsworth*, 21 Cal. 3d 82 (1978) ...................................................................................... 12

*Montana v. United States*, 440 U.S. 147 (1979) ................................................................................... 10

*Neverkovec v. Fredericks*, 74 Cal. App. 4th 337 (1999) ....................................................................... 17

*Resolution Trust Corp. v. Keating*, 186 F.3d 1110 (9th Cir. 1999) ...................................................... 11

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004) .................................................. 14

*Shapiro v. Sutherland*, 64 Cal. App. 4th 1534 (1998) .......................................................................... 14

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ............................................................................ 14

*Synergy Project Management, Inc. v. City and County of San Francisco*, 33 Cal. App. 5th 21 (2019) .. 7

*Synergy Project Management, Inc. v. City and County of San Francisco*, 859 Fed. Appx. 99 (9th Cir. 2021) .................................................................................................................................... 8

*United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966) ............................................. 10

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ............................................................ 13

*Westlake Community Hosp. v. Superior Court*, 17 Cal. 3d 465 (1976) ................................................. 8

| | |
|---|---|
| 1 | **Statutes** |
| 2 | 8 Cal. Code Reg. § 1541(b)(4)......................................................................................................7 |
| 3 | Cal. Civ. Code 1709 ...................................................................................................................14 |
| 4 | Cal. Civ. Proc. Code § 338(a).....................................................................................................11 |
| 5 | Cal. Civ. Proc. Code § 338(d)....................................................................................................15 |
| 6 | Cal. Civ. Proc. Code § 474 ...................................................................................................11, 12 |
| 7 | Cal. Civ. Proc. Code § 583.210 ..................................................................................................11 |
| 8 | Cal. Gov. Code § 4216.4.............................................................................................................10 |
| 9 | **Rules** |
| 10 | Fed. R. Civ. P. 9(b) .................................................................................................................5, 13 |

I.  **PRELIMINARY STATEMENT**

In advance of the September 12, 2023, 10:00 a.m. omnibus hearing, PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, "**PG&E**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this reply brief (the "**Reply**") in further support of the *Reorganized Debtors' One Hundred Twentieth Omnibus Objection to Claims (No Liability Claims)* [Docket No. 13670] (the "**Omnibus Objection**")[1] to Claim No. 72390 (Synergy Project Management, Inc.) (the "**Original SPM Claim**"), for which a response [Docket No. 13719] (the "**SPM Response**") was filed on May 10, 2023 by Synergy Project Management, Inc. ("**SPM**").

SPM has repeatedly sought to hold others, first the City of San Francisco (the "**City**") and now PG&E, responsible for purported damages that are the consequence of its own carelessness.  The City had SPM removed as a subcontractor on a Department of Public Works ("**DPW**") project, the Haight Street Project (as defined below), because SPM struck five PG&E lines (the "**Strikes**") over the course of six months, causing danger and inconvenience to local businesses and residents.  SPM denied responsibility and claimed instead that PG&E had improperly located and marked the lines.  A San Francisco administrative hearing officer disagreed, and found that it was SPM's actions, namely using heavy machinery instead of hand digging, that had caused the Strikes on April 29, 2015, August 27, 2015, September 16, 2015, October 6, 2015, and October 8, 2015.  SPM pursued its administrative remedies all the way to the California Court of Appeal, where it lost.  It then sued the City in the Superior Court for the County of San Francisco (the "**Superior Court**") on business tort theories.  The lawsuit was removed to the United States District Court for the Northern District of California (the "**District Court**") once SPM added allegations of federal civil rights violations.  SPM's litigation against the City ultimately spanned five years, five complaints, and four courts (the Superior Court, the District Court, the Court of Appeal, and the Ninth Circuit), and SPM was unsuccessful on all of its causes of action. Judgment was entered in the City's favor in June 2022.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Omnibus Objection.

SPM submitted the Original SPM Claim in these Chapter 11 Cases in October 2019, at which time two of its complaints already had been dismissed and a motion to dismiss was pending on its most recent complaint. SPM asserted, without evidence, that PG&E was liable for damages arising from the Strikes—though the Hearing Officer had found to the contrary nearly four years before—and that PG&E had "fraudulently" represented SPM's fault for the Strikes to the City, leading the City to remove SPM from the Haight Street Project. The Omnibus Objection seeks to disallow and expunge the Original SPM Claim on the grounds that (1) it is time-barred because the Strikes occurred in 2015, outside the statute of limitations for either statutory violations or fraud and (2) PG&E would not be liable even if SPM's claims were timely.

The SPM Response fails to provide either a cognizable basis for PG&E's liability or a cogent reason why the claims are not time-barred. As an initial matter, SPM is collaterally estopped from arguing that PG&E is liable for statutory violations relating to the location and marking of its lines, because the Hearing Officer already determined that SPM was responsible for the Strikes. Regardless, the statutory violations claim is time-barred because the Strikes occurred in 2015 and the statute of limitations is three years; the fact that SPM might have been able to attempt to substitute PG&E as a Doe defendant in its litigation with the City did not toll the statute of limitations. Second, SPM's fraud claim fails as a matter of law because it is not pled with the specificity required by Rule 9(b) and because SPM has not alleged and cannot allege an essential element: reliance by SPM on any representation by PG&E. Moreover, the accrual of the statute of limitations was not delayed because SPM knew the relevant facts in 2015. Finally, SPM was not a third-party beneficiary of the 1939 agreement pursuant to which PG&E provides natural gas and electricity to the City. Even if it was, PG&E's denial of SPM's claims relating to the Strikes does not constitute a breach thereof.

For these reasons, the Omnibus Objection should be sustained and the Original SPM Claim should be disallowed and expunged as a matter of law.

II. **FACTUAL AND PROCEDURAL BACKGROUND**

A. **SPM's Removal from the Haight Street Project**

On February 10, 2015, the City entered into a contract with Ghilotti Brothers, Inc. ("**GBI**") to replace the sewer line, install new water lines, and renovate the pavement on Haight Street and Hayes Street, DPW Project No. PCE 15018/2264J(R) (the "**Haight Street Project**"). On April 17, 2015, GBI entered into a subcontract with SPM to perform the underground excavation and utilities work for the Haight Street Project. RJN Ex. A at ¶¶ 48-51. The Strikes occurred on April 29, 2015, August 27, 2015, September 16, 20215, October 6, 2015, and October 8, 2015 in the course of SPM's excavation work, during which time SPM was using heavy equipment in lieu of hand digging. The Strikes led to evacuations, shelter-in-place orders, street closures, and gas outages, RJN Ex. B, and thus "drew significant public attention and criticism from neighborhood residents and businesses." RJN Ex. A at ¶ 67. The City suspended the Haight Street Project on October 7, 2015, and, the next day, DPW Director Mohammed Nuru directed GBI to stop work and remove SPM. *Id*. at ¶ 70-71.

B. **SPM's Failed Attempts to Recover from the City**

1. The Administrative Hearing

SPM contested its removal from the Haight Street Project and pursued its administrative remedies. On December 19, 2015, SPM and the City participated in an administrative hearing (the "**Administrative Hearing**") before hearing officer Tim Leung (the "**Hearing Officer**"). RJN Ex. A at ¶¶ 75, 78. SPM and GBI objected that only GBI, not the City, had authority to remove SPM. RJN Ex. C at 2. The Hearing Officer issued written findings on January 8, 2016. He ruled that the City did have authority to remove SPM, and, more importantly, that the City's decision to do so had been justified because DPW had established by a preponderance of the evidence that SPM's work on the Haight Street Project was substantially unsatisfactory. *Id*. The Hearing Officer found that DPW had established, *inter alia*, that (1) at least four of the Strikes "resulted from Synergy's unsafe practices"; (2) SPM improperly shored trenches, which could have led to property damage or personal injury, and which did lead to at least one of the Strikes; (3) SPM's failure to properly store equipment led to a pedestrian trip and fall;

and (4) SPM workers had engaged in "highly dangerous conduct when they dangled the Synergy foreman by his ankles into an open manhole with no safety equipment or traffic control." *Id.* at 2-3.

At the Administrative Hearing, SPM argued, as it does here, that PG&E had improperly installed and marked the lines and that therefore SPM was not responsible for the Strikes. The Hearing Officer was "not persuaded that these explanations mitigate the serious safety violations substantiated by Public Works." *Id.* at 20. The Hearing Officer found that SPM had violated section 4216.4 of the Government Code with respect to the April 29 and September 16 Strikes because it failed to hand dig around the area of the gas line. As to the August 27 Strike, the Hearing Officer found that the line was not installed at the proper depth, but that SPM nevertheless should have ensured that the saw blade used did not protrude into the soil beneath the road service. *Id.* at 21. With respect to the October 6 Strike, PG&E had informed SPM to "daylight" the area of the line because it was not certain of its exact location; SPM opted not to hand dig and instead used excavation equipment, which the Hearing Officer found "was not reasonable." *Id.* at 22. After the October 6 Strike, SPM failed to properly shore the area of the gas line, as it was required to do by 8 Cal. Code Reg. § 1541(b)(4). This shoring issue caused concrete to fall onto the line and sever it. *Id.*[2]

### 2. SPM's Challenge of the Hearing Officer's Findings

SPM and GBI filed a petition for writ of administrative mandate to the Superior Court, "abandoning any challenge to the determination that Synergy's performance justified substitution," and simply contending that the hearing officer had lacked jurisdiction to make the ruling pursuant to the terms of the City-GBI contract. *Synergy Project Management, Inc. v. City and County of San Francisco*, 33 Cal. App. 5th 21, 27 (2019). The Superior Court agreed with SPM on the jurisdictional issue but the Court of Appeal reversed. *Id.*

---

[2] The Hearing Officer found additional reasons—other than the Strikes—that SPM's removal from the Haight Street Project had been appropriate, namely that SPM had improperly shored trenches on six separate occasions despite having been advised of the issue. RJN Ex. C at 22. Moreover, the Hearing Officer noted that the incident in which SPM workers dangled the foreman into the manhole by his ankles was "extremely dangerous and unacceptable and a violation of California regulation," and the fact that he continued on as foreman for two months after the incident "is an additional indication that Synergy did not properly respond to safety issues." *Id.* Finally, the Hearing Officer found other miscellaneous safety failures by SPM, including failure to properly store equipment and generators and inaccurate placement of traffic control signs. *Id.* at 23.

### 3. SPM's Failed Suit for Business Torts and Civil Rights Violations

On July 10, 2017, while the writ of administrative mandate was pending, SPM sued the City in Superior Court for three business torts: intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage. RJN Ex. D. SPM did not serve this complaint on the City and instead filed a first amended complaint that alleged the same three business torts and added causes of action for purported civil rights violations, including retaliation. RJN Ex. E. Given the addition of the federal claims, the City removed the action to the District Court. *Id*. SPM filed second and third amended complaints, both of which were dismissed, the third with prejudice as to the federal claims. RJN Exs. F-I. SPM appealed that dismissal to the Ninth Circuit. RJN Ex. J.

On June 7, 2021, the Ninth Circuit affirmed the District Court's dismissal of SPM's federal claims without leave to amend. *Synergy Project Management, Inc. v. City and County of San Francisco*, 859 Fed. Appx. 99 (9th Cir. 2021). The District Court declined to exercise jurisdiction over the remaining state law business tort claim and remanded it to Superior Court. RJN Ex. K. On April 20, 2022, SPM filed its Fourth Amended Complaint, which made numerous corruption allegations against the City, especially with respect to DPW Director Nuru and then-Supervisor London Breed. SPM alleged that the City had persecuted SPM because (1) SPM had previously sued the City to compel payment for construction work pursuant to direct contract with the City, RJN Ex. A at ¶¶ 18-22, 42-45, and (2) SPM had not donated to Nuru's non-governmental organizations despite "repeated pressure from government officials" to do so. *Id*. at ¶ 37. Despite the raft of corruption allegations against the City—and Nuru's January 6, 2022 guilty plea on federal corruption charges—the Superior Court sustained the City's demurrer without leave to amend as to SPM's business tort claims. The Superior Court dismissed on the estoppel-based rule laid out in *Westlake Community Hosp. v. Superior Court*, 17 Cal. 3d 465 (1976), under which "so long as a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the [defendant's] action." RJN Ex. L at 2. The Superior Court entered judgment in favor of the City on July 7, 2022. RJN Ex. M.

### C. The Original SPM Claim

SPM filed the Original SPM Claim in these Chapter 11 Cases on October 20, 2019. It seeks $5,697,441.76 for "[d]amages relating to strikes, fraud, and related business damages." The attachment to the claim bases PG&E's purported liability on (1) failure to comply with City regulations and the California Government Code regarding the placement and marking of its lines and (2) "fraud/misrepresentations" arising from PG&E denying liability for the Strikes. Original SPM Claim at 5. SPM claims $337,441.76 for consequential damages from the Strikes and $5,360,000 for "damage to business due to PG&E fraud/misrepresentations," allegedly comprised of $1.86 million of alleged lost profits from the completion of the Haight Street Project and a "conservative estimate" of the profit to which SPM would have earned had the City selected it for a future project on Van Ness Avenue. *Id*. at 4-7. PG&E reserves its right to object to SPM's purely speculative measure of damages if necessary.

### D. The Omnibus Objection and SPM Response

The Omnibus Objection seeks disallowance and expungement of the Original SPM Claim on two bases: first, that it was barred by the statute of limitations, and second, that PG&E had no legal liability in general. The SPM Response only speaks to the purported timeliness of the Original SPM Claim. Along with the SPM Response, SPM filed an amended claim, Claim No. 109882 (the "**Amended SPM Claim**"), which seeks the same amount and attaches new exhibits purporting to demonstrate "additional details for the timeliness of its claim." SPM Response at 6. Without conceding that amendment is proper, PG&E submits that the Amended SPM Claim fails for the same reasons as the Original SPM Claim.

## III. LEGAL ARGUMENT

The Original SPM Claim, the Amended SPM Claim, and the SPM Response do not articulate any cognizable basis for PG&E's liability. SPM's claims therefore fail as a matter of law and should be disallowed and expunged.

### A. The Alleged Statutory Violations Fail as a Matter of Law

SPM claims that it was not responsible for the Strikes because PG&E had improperly placed and marked its lines in violation of City and California regulations. These allegations fail as a matter of law

because (1) SPM raised (and lost) the same argument at the Administrative Hearing and therefore is collaterally estopped from bringing it here and (2) the claims are time-barred, and SPM does not present any valid theory to toll the applicable statute of limitations.[3]

1. SPM Is Collaterally Estopped from Arguing that PG&E Is Responsible for the Strikes

SPM argued at the Administrative Hearing that it was not responsible for the Strikes because PG&E had improperly placed and marked its lines, but the Hearing Officer found that this was not the case. To the contrary, he ruled that SPM had committed "serious safety violations" and had itself violated the applicable statute, section 4216.4 of the California Government Code, by failing to hand dig in the general location of the lines and instead using heavy machinery. RJN Ex. C at 20-22. Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979); *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Administrative proceedings may be given the preclusive effect accorded to those before a court when, as here, the administrative agent "acts *in a judicial capacity* and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966) (emphasis added).

For an issue to be collaterally estopped, (1) it must be identical to the one alleged in the prior litigation; (2) it must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. *Disimone v. Browner*, 121 F.3d 1262, 1267 (9th Cir. 1997); *Figueroa v. Campbell Indus.*, 45 F.3d 311, 315 (9th Cir. 1995); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320-21 (9th Cir. 1992). Here, SPM raises an issue—its liability for the Strikes—in the Original SPM Claim and SPM Response

---

[3] SPM's statutory violation arguments also are factually incorrect. Should it be necessary to expand the factual record beyond judicially noticeable documents, PG&E will further demonstrate that it was SPM that violated the relevant statutes. PG&E reserves all rights in this regard.

that is identical to the one determined at the Administrative Hearing.[4] The issue actually was litigated at the Administrative Hearing: both SPM and the City provided evidence and argument, and the Hearing Officer's ruling addresses the issue in detail. And the issue was central to the Hearing Officer's determination because whether or not SPM had been responsible for the Strikes was an essential part of determining whether the City had properly removed it from the Haight Street Project. As a result, the statutory violations claim is collaterally estopped and therefore fails as a matter of law.

### 2. The Statutory Violations Claim Is Time-Barred

The statute of limitations for claims based upon statutory violations is three years. Cal. Civ. Proc. Code § 338(a). Since any alleged statutory violations stemming from the location and marking of PG&E's lines would have occurred in 2015 (or before), SPM's claims expired before these Chapter 11 Cases commenced. SPM argues that sections 474 and 583.210 of the California Code of Civil Procedure give it three years to substitute PG&E for a Doe defendant and thus tolled the statute of limitations for that entire period, SPM Response at 9, but this argument fails for two reasons. First, SPM did not actually substitute PG&E. Second, SPM could not have substituted PG&E as a Doe defendant because SPM has known PG&E's identity and the bases for its purported liability since 2015.

#### a. SPM Did Not Substitute PG&E as a Doe Defendant

SPM's interpretation of sections 474 and 583.210 is overly expansive. It argues that these statutes have the effect of "allowing plaintiffs an additional three years after filing a complaint to substitute the defendant's true name" and that a substituted Doe defendant is considered a party to the

---

[4] Courts consider four factors in determining whether two issues are identical for purposes of collateral estoppel: (1) whether there is a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first proceeding; (2) whether the new evidence or argument involves the application of the same rule of law as that involved in the prior proceeding; (3) whether pretrial preparation and discovery related to the matter presented in the first action could reasonably be expected to have embraced the matter sought to be presented in the second action; and (4) whether the claims involved in the two proceedings are closely related. *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1113 (9th Cir. 1999). Here, first, the evidence and arguments are the same between the Administrative Hearing and these Chapter 11 Cases: the location and marking of the PG&E lines, what SPM actually did, and what it should have done instead. Second, the applicable rule of law, the California Government Code, is the same as well. Third, the factual development for the Administrative Hearing, including witness testimony, covered the same issues presented in the Original SPM Claim. Finally, SPM essentially seeks the same ruling through the Original SPM Claim and the Administrative Hearing: a determination that it was not liable for the Strikes.

| | |
|---|---|
| 1 | action from the date of its commencement, such that the statute of limitations stops running as of that |
| 2 | date. SPM Response at 9 (citing *Austin v. Massachusetts Bonding & Ins. Co.*, 56 Cal. 2d 596, 599 |
| 3 | (1961)). SPM does not cite authority for the implied proposition that *Austin* and these statutes toll the |
| 4 | statute of limitations for three years *absent an actual Doe defendant substitution*. SPM had a full year |
| 5 | and a half to substitute PG&E into its litigation against the City before these Chapter 11 Cases |
| 6 | commenced; postpetition, it could have sought relief from the automatic stay to do so. SPM chose not |
| 7 | to substitute PG&E, however, and cannot remedy that failure now. Furthermore, to the extent that SPM |
| 8 | argues that its submission of the Original SPM Claim somehow was akin to a substitution for purposes |
| 9 | of tolling the statute of limitations, it has provided no authority or rationale in support of this proposition. |

           b.      <u>PG&E Was Not a Doe Defendant</u>

The goal of section 474 is to "enable a plaintiff to avoid the bar of the statute of limitations when [it] is ignorant of the identity of the defendant." *Davis v. Marin*, 80 Cal. App. 4th 380, 386 (2000). A plaintiff is "ignorant" for these purposes when "[it] knew the identity of the person but was ignorant of the facts giving him a cause of action against the person . . . or knew the name and all of the facts but was unaware that the law gave [it] a cause of action against the fictitiously named defendant and discovered that right by reason of decisions rendered after the commencement of the action." *Marasco v. Wadsworth*, 21 Cal. 3d 82, 88 (1978). SPM cannot offer any argument that PG&E's identity was unknown to it, so it would have to demonstrate that it only became aware that it had a cause of action against PG&E afterwards given a later decision. It has not identified any such intervening decision and PG&E is not aware of one.

PG&E is not a Doe defendant. Rather, it is simply an entity SPM opted not to pursue. SPM's actual Doe defendants relate only to the City. *See* RJN Exs. A, E, F, and H ("[I]t is anticipated that additional City agents and employees were involved in the actions described herein, and that such additional City agents and employees may be discovered through this action, and therefore Synergy sues such defendants by these fictitious names."). Section 474 includes "an implicit requirement that a plaintiff may not unreasonably delay his or her filing of a Doe amendment after learning a defendant's identity." *A.N., a Minor v. Cnty. of Los Angeles*, 171 Cal. App. 4th 1058, 1066-67 (2009) (internal

quotations omitted). Given the long time between the Strikes, the Administrative Hearing, and the filing of SPM's suit against the City, PG&E would have been prejudiced by being substituted in at such a late date, even had SPM properly sought to do so prepetition.

### B. SPM's Fraud Claim Fails as a Matter of Law

Even taking all of SPM's allegations as true, SPM fails to state a claim for fraud for three reasons. First, SPM fails to pinpoint the actions by PG&E that it believes constitute fraud and thus does not plead the claim with sufficient particularity. Second, SPM does not and cannot allege any detrimental reliance *by SPM* on any representation made by PG&E and therefore fails to plead an essential element of fraud. Finally, the facts on which SPM relies demonstrate that SPM was aware of the alleged "fraud" contemporaneously, such that its fraud claim would be time-barred were it not otherwise fatally flawed.

#### 1. SPM Fails to Plead Fraud with the Required Specificity

The clearest description of PG&E's alleged "fraud" that SPM provides is that "PG&E's continued campaign of denying liability resulted in the City terminating SPM's Haight Street Project contract and negotiations on the Van Ness project. PG&E knew that it was at fault, that SPM was not at fault for these incidents, and that the City relied on PG&E's representations." Original SPM Claim at 5; *see also* SPM Response at 4 ("PG&E denied all wrongdoing and blamed SPM for all of the strikes."). These statements are insufficiently specific under Federal Rule 9(b), which requires that a fraud allegation state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).[5] To satisfy Rule 9(b), fraud allegations "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The pleading must provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764

---

[5] Rule 9(b) applies to the bankruptcy claims allowance process. *See, e.g., In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, Bankruptcy Courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure."); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.").

(9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Despite having had the benefit of discovery in its litigation against the City, SPM cannot meet these particularity requirements and therefore the fraud claim fails as a matter of law.

> 2. <u>SPM Does Not and Cannot Allege That It Detrimentally Relied on PG&E's Representations</u>

The elements of fraud are: (1) misrepresentation of a material fact (whether through false representation, concealment, or nondisclosure); (2) knowledge of that falsity; (3) intent to defraud *i.e.*, intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 259 (2011) (citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004)); *see also* Cal. Civ. Code 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."). Even if PG&E had misrepresented SPM's comparative fault for the Strikes,[6] SPM has not alleged any reliance *by SPM* on any statements made by PG&E. To the contrary, SPM alleges that the *City* relied on these statements. Original Synergy Claim at 8. SPM has not cited, and PG&E has not located, any cases in which reliance by a third party, as opposed to by the plaintiff, stated a claim for fraud. Under the "indirect deception doctrine" line of cases, a fraud claim may result from a representation made to a third party, as SPM alleges here, but the reliance still must be on the part of the plaintiff. *Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 608 (1995) (A defendant may be liable for fraud where the "defendant made the misrepresentation to a third party but intended or had reason to expect reliance *by the plaintiff* or the class of persons of which he is a member.") (emphasis added); *see also Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1548-49 (1998).

Factual arguments regarding the City's reliance on statements by PG&E about the Strikes are not necessary because SPM's fraud claim fails as a matter of law, but it is worth noting that Synergy makes arguments and presents facts that are contrary to the position it took in the Superior Court litigation and

---

[6] PG&E reserves its right to augment the factual record if necessary, but judicially noticeable facts demonstrate that public statements by PG&E that SPM was to blame for the Strikes were not misrepresentations. For example, the Hearing Officer determined that SPM's failure to hand dig and properly shore its trenches was responsible for or contributed to all of the Strikes. RJN Ex. C at 20-22.

that are directly contradicted by its own evidence. Rather than claiming that the City was led astray by PG&E's denials of responsibility for the Strikes, SPM alleged before the Superior Court that the City used SPM as a "scapegoat" in "in retaliation against Synergy for its exercise of its constitutional right to petition the courts for redress of grievances." RJN Ex. A at ¶ 92. Similarly, SPM attaches a 2015 internal City email to the Mirsaidi Declaration in which one City employee tells another that PG&E does not blame SPM for one Strike. Mirsaidi Decl. Ex. E at 278. To the extent that this email is admissible or has any evidentiary merit—which PG&E does not concede—it demonstrates precisely the opposite point than SPM intends: PG&E did not mislead the City.

### 3. The Fraud Claim Is Time-Barred

The statute of limitations for fraud is three years. Cal. Civ. Proc. Code § 338(d). A cause of action for fraud accrues when the aggrieved party discovers the facts constituting fraud. *Id*. Analysis of delayed accrual presupposes a valid fraud claim, which, as discussed above, SPM does not have. However, if SPM somehow had stated a claim for fraud, that claim still would be time-barred because SPM's theories for delayed accrual are irrelevant and counterfactual.

Despite both the Strikes and PG&E's public statements regarding them having occurred in 2015, SPM claims that it could not have discovered any "fraud" on PG&E's part until PG&E denied SPM's reimbursement claims in May 2017, because before the denial "SPM had absolutely no reason to believe the matter could not have been resolved." SPM Response at 8. It is difficult to discern what SPM means with respect to the matter being resolved and how that would relate to the "facts constituting fraud or mistake." Cal. Civ. Proc. Code § 338(d). The resolution of PG&E's internal claims process as to SPM's reimbursement request for the Strikes in no way relates to the alleged fraud—*i.e.*, PG&E's representations that SPM was to blame for the Strikes. SPM concedes as much when it states that denial is "in and of itself not fraudulent." SPM Response at 8. Similarly, the fact that several years later the California Public Utilities Commission announced an Order Instituting Investigation with respect to certain aspects of how PG&E located and marked its lines also in no way relates to the "facts constituting fraud or mistake" as to SPM. Finally, SPM points to an internal City email in which one City employee tells another that PG&E does not blame SPM for the August 27, 2015 Strike. Leaving aside the fact

that, as discussed above, this would negate SPM's arguments that the City relied on PG&E's misrepresentations that SPM was liable for the Strikes, SPM already knew from the Hearing Officer's findings regarding that Strike that one line potentially had been placed shallowly; but that "Synergy should have nonetheless ensured that the saw blade used did not protrude into the soil beneath the road surface." RJN Ex. C at 21.

### C. SPM Does Not State a Claim for Breach of Contract

SPM argues for the first time in the SPM Response that damages in any way associated with the Haight Street Project were governed by the 1939 franchise agreement between PG&E and the City (the "Franchise Agreement") such that California's four-year statute of limitations for breach of contract applies to its claims. SPM Response at 6-7. This argument is nonsensical. First, the Franchise Agreement was drafted seven decades before SPM was formed and has nothing to do with SPM. Second, even if SPM somehow was a third-party beneficiary, PG&E's denial of its reimbursement claims relating to the Strikes does not constitute a breach of the Franchise Agreement. As a result, it is immaterial that a breach of contract claim would not have been time-barred when these Chapter 11 Cases were filed.

#### 1. SPM Is Not a Third-Party Beneficiary of the Franchise Agreement[7]

The SPM Response states that "Synergy believes the Franchise Agreement constitutes a written contract between the City and PG&E and that SPM can assert breach of contract as a third-party beneficiary." SPM Response at 7. While the Franchise Agreement is a written contract between PG&E and the City, for SPM to be a third-party beneficiary it would have to demonstrate that: (1) it was likely to benefit from the Franchise Agreement; (2) a "motivating purpose of the contracting parties [was] to provide a benefit" to SPM; and (3) permitting SPM to bring its own breach of contract action against a contracting party is "consistent with the objectives of the contract and the reasonable expectations of the

---

[7] SPM likely makes its breach of contract argument with respect to the Franchise Agreement because it recognizes that it is collaterally estopped from doing so with respect to the City-GBI contract. SPM argued before the District Court that although there was no formal contract between it and the City, it had entered into some kind of contractual relationship with the City because its subcontract with GBI incorporated all of the terms of the contract between GBI and the City. The District Court dismissed this argument on the ground that "one of the terms in Ghilotti's contract with the City provides that '[n]othing in the [contract] shall be construed to create a contractual relationship between the City and a Subcontractor.' This term, which was imported into Synergy's contract with Ghilotti, ends the discussion." RJN Ex. G at 6 (internal citations omitted).

contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 821 (2019). SPM cannot do so. SPM might benefit from the Franchise Agreement because it is an entity using gas and electricity within the City; as SPM notes, "the City clearly acted with the intent of benefiting the people of San Francisco." SPM Response at 7. However, this benefit is far too attenuated to fit the second *Goonewardene* factor because the mere fact of the contract resulting in a benefit to a third party "is not enough to entitle that party to demand enforcement. The contracting parties must have intended to confer a benefit on the third party." *Neverkovec v. Fredericks*, 74 Cal. App. 4th 337, 348 (1999). SPM does not specify any particular benefit that PG&E and the City intended to confer on it, because to do so would be impossible: the Franchise Agreement was drafted in 1939, long before SPM was founded in 2003. Original SPM Claim at 4. Moreover, the terms of the Franchise Agreement do not identify any third-party beneficiaries, let alone specifically call out SPM.

Finally, permitting SPM to sue either the City or PG&E for a breach of the Franchise Agreement is totally removed from the goals of the Franchise Agreement or the reasonable expectations of the contracting parties. SPM argues only that under the Franchise Agreement, "PG&E had to install and maintain its pipes in accordance with City ordinances. If PG&E failed to maintain its lines and someone was injured, PG&E could be liable under multiple theories, through tort and in breach of contract." SPM Response at 7. This is true *as to the City*: if PG&E failed to install and maintain its pipes as required in the Franchise Agreement, the City would have a cause of action for breach of contract against PG&E. Someone injured by such a failure would have tort claims against PG&E generally, independent of the Franchise Agreement. SPM fails to articulate how the City and PG&E could reasonably have expected a breach of contract suit from SPM or how such a suit would have been consistent with the Franchise Agreement's objective of delivering gas and electricity to the people of the City.

### 2. PG&E's Denial of SPM's Reimbursement Claims Was Not a Breach of the Franchise Agreement

PG&E's denial of SPM's reimbursement claims relating to the Strikes would not constitute a breach of the Franchise Agreement even if SPM was a third party beneficiary. First, SPM has not pointed to any provision of the Franchise Agreement it thinks was breached. Second, the fact that the Project

Manual for the Haight Street Project mandates that the "Contractor" seek reimbursement from PG&E for work that "physically conflicts with existing non-City owned utilities," SPM Response at 7 (citing Mirsaidi Decl. Ex. A at 00 73 20 – 2), does not relate in any way the Franchise Agreement or to SPM. To the contrary, it creates a procedure through which GBI is to seek reimbursement if necessary. *See* Mirsaidi Decl. Ex. A at 00 72 00 – 2 (defining "Contractor"). Even if that provision related to the Franchise Agreement or to SPM, it merely sets up a procedure. Denial of a claim pursuant to that procedure is not a breach because reimbursement is not an obligation to which the party seeking reimbursement is contractually entitled.

IV. **CONCLUSION**

For the foregoing reasons, as well as for the reasons set forth in the Omnibus Objection and its supporting documents, the Reorganized Debtors respectfully request that the Court overrule the Synergy Response, sustain the Omnibus Objection, and disallow and expunge the Synergy Claim as a matter of law.

Dated: September 5, 2023

**KELLER BENVENUTTI KIM LLP**

By: */s/ Dara L. Silveira*
      Dara L. Silveira

*Attorneys for Debtors and Reorganized Debtors*