1        UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4   In Re:                          ) Case No. 19-30088
                                    ) Chapter 11
5   SYNERGY PROJECT MANAGEMENT,     )
    INC.                            ) San Francisco, California
6                                   ) Tuesday, September 12, 2023
                        Debtor.     ) 10:00 AM
7   _____ )
                                    REORGANIZED DEBTORS' ONE
8                                   HUNDRED TWENTIETH OMNIBUS
                                    OBJECTION TO CLAIMS (NO
9                                   LIABILITY
                                    CLAIMS) FILED BY PG&E
10                                  CORPORATION [13670]

11              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE DENNIS MONTALI
12            UNITED STATES BANKRUPTCY JUDGE

13  APPEARANCES (All present by video or telephone):
    For the Debtor:            JOHNNY D. KNADLER, ESQ.
14                             Law Office of Johnny D. Knadler
                               280 Summergrove Cir.
15                             Roseville, CA 95678
                               (310)564-6695
16
    For Reorganized Debtors:   DARA L. SILVEIRA, ESQ.
17                             Keller Benvenutti Kim LLP
                               650 California Street
18                             Suite 1900
                               San Francisco, CA 94108
19                             (415)496-6723

20  For Reorganized Debtors:   GAYLE L. GOUGH, ESQ.
                               Gough & Hancock LLP
21                             50 California Street
                               Suite 1500
22                             San Francisco, CA 94111
                               (415)848-8918

23

24

25

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 1 of 38

```
 1  Court Recorder:              LORENA PARADA/ANKEY THOMAS
                                 United States Bankruptcy Court
 2                               450 Golden Gate Avenue
                                 San Francisco, CA 94102
 3

 4  Transcriber:                 DEANNA HINCHY
                                 eScribers, LLC
 5                               7227 N. 16th Street
                                 Suite #207
 6                               Phoenix, AZ 85020
                                 (800) 257-0885
 7

 8  Proceedings recorded by electronic sound recording;
    transcript provided by transcription service.
```

eScribers, LLC

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, SEPTEMBER 12, 2023, 10:35

2                                AM

3                               -oOo-

4       (Call to order of the Court.)

5          THE COURT:  I presume you have some Counsel that want

6    to be heard today?

7          MR. DUBBS:  Yes, Your Honor.  I'm bringing them in

8    now.

9          THE COURT:  All right.  Can I get appearances, please?

10   Mrs. Silveria?

11         MS. SILVEIRA:  Good morning, Your Honor.  Dara

12   Silveira, Keller Benvenutti Kim on behalf of the Debtors and

13   Reorganized Debtors.

14         THE COURT:  Ms. Silveira, can you appear?  You've got

15   to be microphoned.

16         MS. GOUGH:  Thank you, Your Honor.  Good morning, Your

17   Honor.  Gayle Gough on behalf of PG&E.

18         THE COURT:  And Ms. Parada, do we have an appearance

19   by Mr. Knadler?

20         MR. DUBBS:  Yes, he's joining now, Your Honor.

21         THE COURT:  All right.  Mr. Knadler, good morning.

22   Can you state your appearance, please?

23         MR. KNADLER:  Good morning, Your Honor.  Johnny

24   Knadler on behalf of Synergy Project Management, Inc.

25         THE COURT:  Knadler.  Sorry.  Well --

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 3
of 38

1          MR. KNADLER:  Either way is fine.

2          THE COURT:  I know, but I like to stick with your

3     name.  I was surprised that after seeing the lengthy opposition

4     from the Debtor that I didn't hear from you.  I mean, there's

5     an awful lot of persuasive arguments that I read.

6          What are you going to do about them?

7          MR. KNADLER:  Well, we have a lengthy response that

8     will address each and every one of those arguments and refute

9     them in favor of Synergy.

10          THE COURT:  And where is this response?  You didn't

11     write any -- file anything, did you?

12          MR. KNADLER:  No.  No.  Because of -- I guess we got

13     it and we went through it.  There are many documents and so we

14     just prepared to argue orally.  But I'm perfectly willing to

15     submit a supplemental response, if you like, including the case

16     law that we're going to cite today and any supplemental facts.

17          THE COURT:  Well, but that's my point.  This is a --

18     this is a claims objection.  And under our rules, I can issue a

19     ruling on legal questions.  And you can't suddenly now

20     decide -- well, I'll tell you what, you can argue that there

21     are fact issues, but I'm not going to turn this into an

22     evidentiary hearing.  I'm going to let you go ahead and make a

23     brief oral argument.  But I'm not -- I'm not going to turn this

24     into an all-day of session.  So make your pitch.

25          MR. KNADLER:  All right.  So I will just start with a

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 4
of 38

1  brief summary of where we started.  So this involves the Haight

2  Street Project, and at the time Synergy bit on that project, it

3  relied on the maps provided by PG&E and were provided to the

4  City at the time.  Unknown to it at the time, these maps were

5  inaccurate and that PG&E had had a long history of providing

6  inaccurate and false maps that doomed the project from the very

7  beginning.  And when the City -- when PG&E initially -- or

8  sorry, when Synergy initially went after the City, it was under

9  the mistaken belief that this was possibly negligence.  But it

10  turned out to be a pattern and practice of PG&E that, again,

11  doomed the project.  And just to be quick, I will turn quickly

12  to the arguments addressed by or raised by PG&E.

13      THE COURT:  Let's -- let me let me rephrase it.  So

14  you're not misled here.

15      MR. KNADLER:  Yeah.

16      THE COURT:  You've got to persuade me that the facts

17  I'm assuming that the -- that the legal arguments that PG&E

18  made can be defeated because you can show how you can defeat

19  them.

20      But if the legal arguments are such -- for example,

21  the res judicata notion.  PG&E made a persuasive argument that

22  the administrative process ended and it's final, and you

23  can't -- it's too late.  It's too late.  So that's not a fact

24  question.  That's a legal question.

25      So you need to persuade me why you should be allowed

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 5
of 38

1  to go to a factual dispute.  And that as a matter of law, your

2  client shouldn't be thrown out with this claim disallowed.

3  Okay?

4        MR. KNADLER:  Okay.

5        THE COURT:  Okay.

6        MR. KNADLER:  And I will address that.  So res

7  judicata, it requires the claims to be substantially similar.

8  And PG&E pointed to four factors, and -- whether there's

9  overlap between the evidence and argument.  And in that case

10  there is not because it has been held in Ferdig v. State

11  Personnel Board that administrative hearings are severely

12  limited and controlled by law.  And because they are focused in

13  on administrative issues rather than the issues presented in

14  this case, the legal factors are -- I'll put it to you this

15  way.  You cannot use the administrative hearing.  So in Ferdig

16  v. State Personnel Board, which is 71 Cal.2d 96, at 103, it

17  held, administrative agencies only have such powers as have

18  been conferred upon them by the Constitution and Statute.  And

19  if the administrative hearing could not have been -- did not

20  involve particular issues raised in a subsequent case, then

21  they cannot be used for res judicata or collateral estoppel

22  purposes.

23        And in this case, the issue of the administrative

24  hearing was purely on the removal of Synergy and the ability of

25  the City to enact that very narrow issue.  And in fact, it did

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 6
of 38

1  not confront the issues here, which were fraud, breach of
2  contract, or consider any of the fact questions.  So there is
3  no overlap between the evidence and argument.
4         THE COURT:  But the fact is --
5         MR. KNADLER:  It is --
6         THE COURT:  But your client was removed.
7         MR. KNADLER:  Yes, but that was under public contract
8  law, not under any of the issues here.  And the -- as pointed
9  out in Ferdig, the issue of whether they were removed or not,
10 for the reasons stated in the administrative hearing, is
11 immaterial to our current case, at least on a legal basis.
12        THE COURT:  Okay.
13        MR. KNADLER:  Okay.  The next is, did it involve the
14 application of the same rule of law?  Again, public contract
15 law versus fraud, versus breach of contract, and other issues
16 we raised in the claim.  Those were not considered and were not
17 found by the administrative hearing.  Again, because it was
18 narrowly tailored to the issue of the City and the proprietary
19 of removal, not --
20        THE COURT:  Hold on, hold on one second, please.  I
21 have to close a door.
22        MR. KNADLER:  Yes.  Okay.
23        THE COURT:  Okay.
24        MR. KNADLER:  Okay.  Number three, whether pre-trial
25 preparation in discovery embrace the matter that -- or embrace

1   the issues and evidence that were raised in the second matter.

2   Under the administrative hearing rules, each side could only

3   call two witnesses; there was no discovery; Synergy could not

4   call PG&E or any expert witnesses.  There was no discovery

5   allowed, no experts were allowed, no -- and only two witnesses

6   per side.

7          If you look at the hearing that involved Mr. Galati

8   (phonetic) and Mr. Mercede (phonetic).  Those were the only

9   witnesses.  They did not call any of the workers that were

10  involved in the case.  They did not call PG&E.  They did not

11  call anybody to testify on any matter related to PG&E with

12  direct evidence.  Okay?  Because of that, the administrative

13  hearing did not meet the discovery standards in any kind of

14  civil case, or even the case of under the Federal Rules of

15  Civil Procedure allowed in bankruptcy.

16         And then number four, were the matters closely

17  related.  And they are not.  Again, limited scope of the

18  administrative hearing was the proprietary removal, proprietary

19  nature of the removal of Synergy from the project; not whether

20  PG&E had submitted false maps; not whether PG&E had a long

21  history of submitting false maps; certifying those maps, and

22  providing faulty information that directly impacted Synergy's

23  bid on the project.

24         And in fact, PG&E conceded that even on the factual

25  question, the administrator did find PG&E at fault for at least

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 8 of 38

1     one of those strikes. Okay?

2          So in County of Los Angeles v. SoCal Edison Company

3     2003, so 112 Cal.App.4th 1108 at 1120, it said the present

4     issue must be identical to the decided issue. And it was not.

5     And because it was not, the administrative hearing cannot be

6     used as a basis for collateral estoppel. And I welcome any

7     citation to any finding that said that PG&E did not commit

8     fraud, that PG&E did not falsify maps of any kind of reliance.

9     Okay?

10          THE COURT: Switch and tell me about the statute of

11     limitations argument that --

12          MR. KNADLER: Okay.

13          THE COURT: -- you missed?

14          MR. KNADLER: Okay.

15          THE COURT: I mean, I understand your point about

16     maybe res judicata -- your argument as to res judicata

17     principles don't apply. Okay?

18          Statute of limitations. Why doesn't that apply?

19          MR. KNADLER: Okay. Synergy pointed to the Rumberg

20     case, the Ninth Circuit in Lindley v. General Electric Company,

21     780 F.2d 797, upheld Synergy's reasoning of the Rumberg case.

22     And the Court stated, a contrary ruling was wrote in the

23     abridgment of substantive rights under state statutes of

24     limitations.

25          THE COURT: I have no idea what you're talking about

Case: 19-30088    Doc# 14024    Filed: 09/20/23    Entered: 09/20/23 05:14:17    Page 9 of 38

1  you know?  I just --

2          MR. KNADLER:  Oh --

3          THE COURT:  I just asked you why the statute of

4  limitations --

5          MR. KNADLER:  Okay.  Sorry, I will rehash it.  I'm

6  sorry.  And in our argument we pointed to a case, Rumberg, that

7  said that --

8          THE COURT:  In what argument?

9          MR. KNADLER:  Okay, so --

10         THE COURT:  In what argument?

11         MR. KNADLER:  In our in our original objection.

12         THE COURT:  Okay.

13         MR. KNADLER:  So --

14         THE COURT:  Okay.  That's fine if that's the case.

15         THE COURT:  Okay.  So I'll step back a second.  On the

16  three year -- just on the three years, Synergy did not find out

17  about the pattern and practice and deceptive nature of PG&E

18  until at the earliest, probably the middle of I believe, 2016.

19  The claim was timely filed in 2019.  Okay?

20         THE COURT:  What's the date --

21         MR. KNADLER:  So --

22         THE COURT:  What's the date of the facts?  You said in

23  2016?  When in 2016?

24         MR. KNADLER:  Well, actually, in our argument, we

25  point out we actually didn't find out about the pattern or

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 10
of 38

1  practice until 2018.  Which was around the time, but I'm just

2  entertaining that PG&E had said that that we should have known

3  by the time of the removal in 2016, which we disagree with.  So

4  I was just using that as a point.

5        Our argument is we actually didn't know until 2018

6  when a report came out saying that PG&E had not only misfiled

7  and submitted false maps and certifications of those maps, not

8  dozens of times, but tens of thousands of times, over the

9  period immediately preceding Synergy's work on the project.

10 Okay?  So that was discovered in 2018.  And we began to --

11 the -- an investigation.  We uncovered other reports that

12 indicated that PG&E had a pattern and practice of filing these

13 false reports, which Synergy relied on.  That was in 2018.

14 That is in our objection.  I believe it's paragraphs 30 and 31,

15 but I'm not positive.  I'm checking.

16        THE COURT:  That's okay.  I have --

17        MR. KNADLER:  Yeah.  So our contention is we didn't

18 know about it.

19        And our secondary argument is under Rumberg,

20 Plaintiffs have an additional three years past the statute of

21 limitations, once an action has been timely filed -- which PG&E

22 doesn't dispute that we timely filed an action against the City

23 and County of San Francisco.

24        THE COURT:  But did you file an action against PG&E?

25        MR. KNADLER:  Well, they were one of the Doe

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 11
of 38

1   Defendants.  We were going to Doe them in.

2           THE COURT:  Why were they a Doe Defendant?

3           MR. KNADLER:  Well, because in 2018 --

4           THE COURT:  You knew who they were.

5           MR. KNADLER:  But we didn't know the facts underlying

6   the fraudulent claims.

7           THE COURT:  Your client knew who was in contract with

8   and who was doing the -- who --

9           MR. KNADLER:  Right.  But --

10          THE COURT:  The client knew who got it suspended at

11  the administrative level.  I mean, you can't pretend that PG&E

12  was just a mystery.  You don't know.  They aren't -- you know,

13  there aren't a bunch of major public utilities sitting around

14  in San Francisco.  So it seems to me not naming a Doe Defendant

15  is kind of playing fast with the rules about statute of

16  limitations.

17          MR. KNADLER:  Well, but we filed a timely -- when we

18  considered filing a Doe amendment against PG&E, they had

19  already filed for bankruptcy.  And we decided that instead of

20  Doeing them in, and then filing a relief from the stay, and all

21  that, we could just simply file the claim in a timely manner in

22  the bankruptcy court -- because otherwise it would have

23  derailed.  We had state -- we had a state lawsuit and we had a

24  federal lawsuit.  If we had Doe'd them in, it would have

25  been --

1          THE COURT:  But all the more reason to seek relief

2     from day.

3          THE COURT:  Well, no, because then we would have had

4     to ultimately go to the bankruptcy court, I believe.

5          THE COURT:  Well, that's where you are now, sir.

6          MR. KNADLER:  Yes, but that's why we -- instead of

7     skipping, we skipped that step.  In judicial economy, was to

8     just say, let's file a timely claim within the three-year

9     statute of limitations period.

10          THE COURT:  Okay.

11          MR. KNADLER:  We just brought up the Doe argument

12     because the Ninth Circuit has held that you still have an

13     additional three years to Doe someone in.  But we didn't need

14     to Doe them in, because we filed a timely claim within that

15     period.  And again, 2018 to 2019 is only a year.  So the

16     statute of limitations doesn't even apply to that.

17          THE COURT:  No, I understand that.  And I mean, I

18     understand --

19          MR. KNADLER:  And --

20          THE COURT:  If the fact --

21          MR. KNADLER:  -- on another --

22          THE COURT:  If it --

23          MR. KNADLER:  We submitted -- oh, sorry.

24          THE COURT:  I was going to say, I'm agreeing with you.

25     If the statute didn't start to run until 2018, you obviously

1    were timely, if that was the case.  But that's obviously,

2    contested.

3              MR. KNADLER:  Yes.  And one thing to deal with when it

4    began to accrue, the -- Synergy also filed a claim based on --

5    we sent letters per the administrative code of San Francisco,

6    to PG&E to cover the costs of the various strikes.  And that

7    was denied within three years of our filing of the bankruptcy

8    claim.

9              So again, on multiple levels, we are within the three-

10   year period.  But even if, as PG&E argues, that it goes back to

11   the removal date, we still have additional times under the

12   Ninth Circuit Lindley case, and the Rumberg reasoning.  So --

13             THE COURT:  Okay.  Hold on.

14             MR. KNADLER:  And I can address the -- one of the

15   facets of the timeliness is the ignorant identity.  And that

16   states, that it's only when you know of the facts giving rise

17   to the cause of action.  And again, we were not aware of the

18   widespread falsification of records and the problems with the

19   maps for the gas line, until 2018, when the City came out with

20   that.

21             THE COURT:  Let's assume for the moment that that PG&E

22   engaged in false maps.  Were the maps that your client relied

23   on false?

24             MR. KNADLER:  Yes.  That's why we have the gas

25   strikes.

1        THE COURT:  But isn't that a fact question?  In other
2    words, look, suppose --
3        MR. KNADLER:  Right.
4        THE COURT:  -- they filed 100 false maps, but the
5    101st one was the one that your client relied on.  I'm not
6    suggesting that if they did something wrong, they get off the
7    hook.  But I don't think they're not -- your client gets a free
8    ride, if somebody else was the victim of the false map, false
9    reports.  I'm just -- I want to be clear.
10       MR. KNADLER:  Yes.  And then I just want to point out
11   that the breach of contract claim has an even lengthier -- has
12   an even lengthier statute of limitations.  And --
13       THE COURT:  No, I understand that.
14       MR. KNADLER:  Yeah, so again, I think the statute of
15   limitations do not begin to run until 2018.  And we filed the
16   claim within that time.
17       THE COURT:  Okay.  Let me hear from either Ms.
18   Silveira or Ms. Gough briefly, on what -- these issues, because
19   I told you, I read the proposition.  I looked at your objection
20   some time ago.  And as you were mentioning these various cases,
21   I don't think they were cited by PG&E, but I could be wrong.
22       Ms. Gough, are you making the argument or Ms.
23   Silveira?
24       MS. SILVEIRA:  I'll be making it, Your Honor.
25       THE COURT:  So I'll let you make whatever you want to.

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 15
of 38

1   But in looking just at the table of cases in your opposition or

2   your reply, unless I'm missing it, I don't see either of the

3   cases that he just cited that Rumberg case or -- did I miss it?

4           MS. SILVEIRA:  That's right, Your Honor.  We didn't

5   cite to Rumberg directly.  Our argument on the point really

6   goes to what Your Honor was raising about, how could PG&E

7   possibly be a Doe Defendant?

8           And what I would say about Rumberg and Mr. Knadler's

9   citation to it is, he's really arguing for just an indefinite

10  three-year tolling of the statute of limitations, any time a

11  complaint involves Doe Defendants.  And that can't be the rule.

12          And there's also no argument that Synergy has raised

13  that filing a proof of claim in a bankruptcy operates somehow

14  in lieu of substitution of a Doe Defendant.  Even if PG&E could

15  have been --

16          THE COURT:  Why not?  Why not?  I mean, come on, we

17  know that well, are you saying that -- maybe what you're saying

18  is, your objection to the claim is based upon the statute

19  running because there wasn't an identification of the Doe

20  Defendant?  Right?

21          MS. SILVEIRA:  That's correct.

22          THE COURT:  Isn't that what you're saying?

23          MS. SILVEIRA:  Right.  PG&E -- Synergy had a year, a

24  year and a half pre-petition, where it could have sought to

25  substitute PG&E in as a Doe Defendant.  It didn't.

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 16
of 38

1    I would also point, Your Honor, to the language we

2   cited in our reply brief that the way Synergy phrased in each

3   of its claims in the Superior Court and the District Court, the

4   Doe Defendants are linked to the City, to additional City

5   Defendants, not Doe Defendants generally.  It's two specific

6   City Defendants.  So in any case, Synergy had a year and a half

7   pre-petition to attempt to substitute PG&E in.  It didn't.  As

8   Your Honor noted, it also didn't seek relief from stay, to do

9   so.

10    THE COURT:  I just go back to what you're saying.  You

11   telling me that in the federal court and the state court, one,

12   if you read those complaints, you have to -- the inferences

13   that the Doe Defendants are not PG&E, it can't be PG&E?

14    MS. SILVEIRA:  Correct, Your Honor.

15    THE COURT:  Not because they didn't know who PG&E was,

16   but what's attributed to the Doe Defendants could not be PG&E.

17   Is that your argument?

18    MS. SILVEIRA:  That's right, Your Honor.  And as Your

19   Honor pointed out, Synergy has been aware of PG&E's involvement

20   in -- writ large the facts that are at dispute here, the events

21   that form the basis of Synergy's claim in its litigation

22   against the City.  The fact that it somehow wasn't aware that

23   PG&E was involved for purposes of substitution as a Doe, just

24   doesn't hold water here.

25    THE COURT:  What if they had never named a Doe

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 17
of 38

1　Defendant in state or federal court, but they filed the proof
2　of claim in 2019?　In other words, what if the first time
3　Synergy did anything that appears to be seeking a legal
4　recovery from PG&E, is when it filed the proof of claim?　Would
5　you -- do you have a statute of limitations defense then?

6　　　　　　　MS. SILVEIRA:　Absolutely, Your Honor.　Because all
7　relevant facts, here, occurred in 2015.

8　　　　　　　THE COURT:　Okay.

9　　　　　　　MS. SILVEIRA:　I would --

10　　　　　　THE COURT:　What I'm trying to say is, if that's true,
11　and you prove that, you win.　But it seems to me to be kind of
12　an end run to say they didn't name us as a Doe Defendant,
13　therefore we can't -- they can't file their proof of claim
14　against the debtor who they obviously knew to be the debtor
15　when they filed the claim.

16　　　　　　MS. SILVEIRA:　So Your Honor, I want to separate out a
17　couple strains of the argument that I think that Mr. Knadler
18　made.

19　　　　　　The first is, the statutory violations claims were
20　time-barred on the petition date.　The statute of limitations
21　is three years.　There's no delayed discovery provision that
22　would extend the statute of limitations as to the statutory
23　violations claims.　Delayed discovery only relates to the fraud
24　claims.　However, the delayed discovery provision requires a
25　viable fraud claim, which, as we've shown there, isn't here.

Case: 19-30088　Doc# 14024　Filed: 09/20/23　Entered: 09/20/23 05:14:17　Page 18
of 38

1      I believe that Mr. Knadler's citation to Rumberg is
2  his argument for a tolling of the statute of limitations with
3  respect to -- solely to the statutory violations claim.  But as
4  we've said, PG&E -- that would require Rumberg -- my reading of
5  Rumberg requires that there actually was a substitution of the
6  Doe Defendant.
7          THE COURT:  Okay.
8          MS. SILVEIRA:  I wanted to clarify a couple of other
9  points.  PG&E isn't arguing that Synergy has collaterally
10 estoppel from arguing fraud or breach of contract.  Collateral
11 estoppel only relates to the statutory violations claims.  And
12 with respect to the rule that the hearing officer was
13 analyzing, he specifically cites to section 4216.4 of the
14 Government Code and finds that Synergy violated it and
15 therefore it was Synergy's carelessness, and not anything to do
16 with location and marking, that led to the strikes.
17         Moving on to the fraud points that that Mr. Knadler
18 made.  So Synergy didn't -- hasn't argued up until now that
19 there was some falsification of maps and that that was the
20 reliance that forms the basis for its fraud claim.  Even if
21 that's their argument now, the fraud claim still fails is a
22 matter of law because there's no fraudulent intent by PG&E.
23 And even if -- and we certainly wouldn't agree to this, but
24 even if there was a problem with the maps, Synergy would have
25 to have alleged and would have to demonstrate that there was

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 19
of 38

1 intent by PG&E. And hasn't done that and he can't do that.

2 And then just returning to -- I'm sorry to jump around

3 here. Returning to Mr. Knadler's point on collateral estoppel

4 with respect to the statutory violations claims. The hearing

5 officer's report necessarily had to deal with the propriety of

6 the City's removal of Synergy as the subcontractor on the

7 project. That's an essential part. It's not just he didn't

8 limit his findings to the City's authority to make that

9 removal. He also found that the Department of Public Works,

10 that the City had demonstrated that the removal was

11 appropriate. So I think that's important to note here as well.

12 THE COURT: Well, but therefore what? I mean, I think

13 that if you indicate -- I mean, therefore what in terms of the

14 remaining claim? In his -- Mr. Knadler's point, I think, was

15 the hearing officer allowed the removal, period. He didn't

16 decide that PG's liability of any concern, because it wasn't

17 presented to him. Right? In other words, I think -- let me

18 rephrase it. In terms of the way I read your reply brief, it

19 seemed to me like this was a garden variety res judicata issue.

20 You won because it could have been argued before. But from

21 what Mr. Knadler is arguing, it wasn't presented to the hearing

22 officer to begin with. The only question before the hearing

23 officer was whether Synergy could be bounced from the City, and

24 that's what they lost. Right? So what am I missing?

25 MS. SILVEIRA: So my argument, Your Honor, is that it

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 20
of 38

was presented to the hearing officer because Synergy's
liability for the strikes is an essential part of the City's
ability to remove it from the project. And that was before the
hearing officer. And therefore, his findings that Synergy was
at fault collaterally estop it from arguing here, that it
wasn't.

And even if there's -- even if Synergy isn't
collaterally estopped from making that argument, the claim is
still time-barred.

THE COURT: Okay. I got it.

Any further?

MS. SILVEIRA: Not at this time, Your Honor.

THE COURT: Mr. Knadler, I have a quick question for
you.

MR. KNADLER: Yes, sir.

THE COURT: One second. Let me go back to my notes
for a minute, please. I -- sorry. Hold on.

Yeah, now this Ferdig case, was that cited in your
papers?

MR. KNADLER: Which case was that, Your Honor?

THE COURT: Ferdig.

MR. KNADLER: Ferdig.

THE COURT: Well, the 71 Cal.2d 93 (sic), what's
the -- the first case you mentioned.

MR. KNADLER: Oh, Ferdig. Ferdig. Sorry.

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 21
of 38

```
 1              THE COURT:  How do you spell it?
 2              MR. KNADLER:  F-E-R-D-I-G, v. State Personnel Board.
 3              THE COURT:  Okay.  But is it cited in your papers?
 4              MR. KNADLER:  No, it was not.  It was something we
 5    discovered in response to what was raised by PG&E.
 6              THE COURT:  But that's fine.  But it could be a mean
 7    from what Ms. Silveira believes, this could be fatal to your
 8    case.  Because if you're saying that it stands for the
 9    proposition that there's limited authority of the hearing
10    officer, but she claims that it was fundamental.  The hearing
11    officer had to make a determination to disqualify your client,
12    therefore -- and that determination, if I understand correctly,
13    was that your client was liable for the strikes.  In other
14    words, what it comes down to what I heard her say and tell me,
15    you think this is not true.  If we go back to the time when
16    something happened where what -- there are five different times
17    when the pipes were stricken, struck, striked -- whatever the
18    verb is -- and the hearing officer determined that your client
19    was responsible for those strikes.  Isn't that correct?
20              MR. KNADLER:  That is not the view of that
21    administrative hearing.  For example, on page, I believe, 71
22    the hearing, they said PG&E was responsible for one of the
23    strikes, yet that did not affect the judgment of the
24    administrative officer regarding whether the City had the legal
25    authority to remove Synergy.
```

1       And that Ferdig case, it dealt with the termination of

2   an employee.  And the Court held, well, whether he was

3   terminated or not, is immaterial to the underlying issue raised

4   in the subsequent actions.  So --

5       THE COURT:  It's very difficult for me to get a case

6   that nobody has cited.  And you start telling me what the facts

7   are, as though I know the case.  You just can't possibly do

8   that.

9       MR. KNADLER:  Well --

10      THE COURT:  And I'm going to go back to my question to

11  you.  If I were a fly on the wall at the hearing office

12  hearing, and I listen to the hearing officer announce a ruling,

13  would that hearing officer have announced that your client

14  caused the strikes and therefore has to be thrown off the

15  City's contracts?

16      MR. KNADLER:  That was not the legal conclusion in my

17  reading.

18      THE COURT:  That isn't what I asked you.

19      MR. KNADLER:  Right.

20      THE COURT:  I asked you what his ruling was?

21      MR. KNADLER:  No.  No.  His ruling had the City was

22  able to remove it because of safety issues that had -- some of

23  which had nothing to do with PG&E.  For example, you know, the

24  manhole and shoring, none of that -- plus, the hearing officer

25  never considered the electrical strike that PG&E has not cited

1  is covered by collateral estoppel.  That was one of the
2  strikes, again, involving PG&E, that was not at all touched on.
3  And the administrating officer only considered two witnesses on
4  each side.  They did not hear anything from PG&E.
5        THE COURT:  Yeah, I think you said that.
6        MR. KNADLER:  Yeah.  So with no discovery, how could
7  the officer -- you know, after they appointed a new
8  subcontractor, multiple -- Haight Street, all the way through
9  2019, continued to have strikes because of the faulty maps.
10       THE COURT:  But that has nothing to do with your
11  client's culpability here.  Again, I go back.  You keep acting
12  as though we're on this -- PG&E is not --
13       MR. KNADLER:  Right.
14       THE COURT:  -- for all its record keeping.
15       MR. KNADLER:  Right.
16       THE COURT:  It's fighting with you to determine
17  whether you have made a case against it, when Ms. Silveria
18  makes the point that you had a case and you got an adverse
19  ruling.  So I don't know.  So what --
20       MR. KNADLER:  So I would say the adverse ruling,
21  again, under the -- was not the same as the issues currently
22  before the Court.  We have to wade into the facts of the
23  hearing, even to -- which we are not supposed to, because it's
24  a legal issue.  If we wade into the facts and weigh the facts,
25  that's the only thing that supports Ms. Silveira's position, is

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 24
of 38

1  she had to point to the facts about who's responsible for the

2  strikes and all that. The legal conclusion of the Court, and

3  more importantly, when it went up to the appellate court, was

4  whether the City had the authority to remove it under public

5  contract law, not under --

6             THE COURT: -- right?

7             MR. KNADLER: What?

8             THE COURT: Didn't they win that?

9             MR. KNADLER: Ultimately, yes, we won at the Superior

10  Court level on the legal issues.

11            THE COURT: But you lost at the appellate level?

12            MR. KNADLER: Yes. On the narrow issue of whether it

13  was the proprietary removal, which is not even an issue here.

14  I think in the legal sense, because, again, it had to deal with

15  the authority of the City under public contract law. Which is

16  a different issue than what we have now.

17            THE COURT: Okay.

18            MR. KNADLER: I mean, it involves the same incident,

19  but it would be similar to whether, you know, we have auto

20  accidents and whether the car was safe or not. But they still

21  had the auto accident. Whether a federal court or an

22  administrative hearing found that the car was improperly

23  manufactured, doesn't go to the ultimate issue of the accident.

24  Just like here, whether the City had the authority to remove

25  Synergy, whether that ultimately impacts our case against PG&E,

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 25
of 38

1  and I don't think it does.  And again, very limited discovery,

2  which is another element raised for collateral estoppel.

3       THE COURT:  You keep repeating that as though that's

4  going to change anything.  You can say that ten times and it is

5  what it is.  I understand that.  But the question is whether

6  it's dispositive.  Okay.

7       Look, I am going to have to do my homework here.  I'm

8  going to have to dig a little deeper into the record.  I'm not

9  going to -- I'm going to make a note you told me that this

10  Ferdig case is -- I want to make sure I got the cite right.  71

11  Cal.3rd 96; is that correct?

12       MR. KNADLER:  Cal.2nd.  Sorry.

13       THE COURT:  Cal.2nd, yes.  71 Cal.2nd 96.  And it's,

14  F-E-R-D-I-G?

15       MR. KNADLER:  Yes.  Yes, Your Honor.  V. State

16  Personnel Board, 1969.

17       THE COURT:  I don't care about -- I just want to be

18  able to look it up.  Okay?  All right.  I'm going to take the

19  matter under advisement.

20       MS. GOUGH:  Your Honor, may I -- I apologize if I may

21  just interject for a minute?  This is Gayle Gough.  I was

22  asked, because I'm familiar with PG's procedures, et cetera, to

23  take a look with respect to discovery.  And I think Your Honor

24  will find -- and so I did review the claim that was submitted.

25  And I think you will find the work map never appears in the

1   claim that was submitted to Chapter 11.  I think you will find
2   that it pertains to what they have called strikes, we call dig-
3   ins.  And I don't know if Your Honor has the statement of the
4   hearing officer in which the hearing officer rejects -- Synergy
5   offers no explanation for why PG&E is at fault here.  And it
6   says, the undersigned finds that it was not reasonable for
7   Synergy to disregard the instructions provided by PG&E and use
8   excavation equipment in the area that PG&E stated should be
9   hand-dug.  And it goes on at length.  PG&E as discussed in the
10  hearing officer's statement.  And Synergy is found to have been
11  unsafe.  And that is the reason.  So I don't know if that's
12  something Your Honor has before you, but I would suggest --
13          THE COURT:  I only have what's before me that people
14  have put before me.  So where would I find it in our record?
15  Our record consists of --
16          MS. SILVEIRA:  I'm so sorry to interrupt, Your Honor.
17  The hearing officer's findings is Exhibit C to our request for
18  judicial notice.
19      (Hearing Officer's Findings was hereby marked for
20  identification as Reorganized Debtors' Exhibit C, as of this
21  date.)
22          THE COURT:  Say again?  What exhibit?
23          MS. SILVEIRA:  It's Exhibit C to the request for
24  judicial notice.
25          THE COURT:  Okay.  So that's the hearing officer's

Case: 19-30088    Doc# 14024    Filed: 09/20/23    Entered: 09/20/23 05:14:17    Page 27
of 38

1   ruling?

2          MS. SILVEIRA:  Yes, his findings.

3          MS. GOUGH:  Thank you, Your Honor.

4          That and the Chapter 11 claim, I think they illuminate

5   what's actually being claimed here.

6          THE COURT:  Mr. Knadler was -- does Exhibit C say what

7   Mr. Gough just told me it does?

8          MR. KNADLER:  I'm not sure.  I did not -- I don't have

9   it right in front of me.

10         THE COURT:  Neither do I.  Neither do I.

11         MR. KNADLER:  So but that, again, wades into the facts

12  of the case, which, if anything, we should be allowed discovery

13  just on the fact that -- it's like in summary judgment.  If you

14  have to keep arguing about the facts of the case, then summary

15  judgment isn't appropriate.  If we have to keep arguing about

16  the facts of the underlying claim, then I don't think this

17  objection should be sustained.

18         THE COURT:  I understand.  Again, they're arguing

19  something that I know that.

20         MR. KNADLER:  Yeah.

21         THE COURT:  I know when summary judgment has to be

22  denied, when there are material facts in dispute.  But they're

23  not material if they're dispositive as legal matter.

24         Look, folks, I'm going to take the matter under

25  advisement.  This -- I didn't anticipate the complexity of it.

1    And as I say, I was -- well, I won't say anything further.  I

2    understand the stakes are high from Synergy's point of view

3    particularly.  And I'm going to review the record.  And if I

4    agree with PG&E, I presume I will disallow the claim.  And if I

5    believe that it must be a factual determination, then I will

6    set this for some sort of a further pre-trial and a schedule.

7           For now, I'm going to take it under advisement.

8           Again, Mr. Knadler, to go back to our procedures, on a

9    claims objection, our rules say, that if it can be disposed of

10   as a matter of law at the first hearing, that it can be.

11          And if Ms. Gough and Ms. Silveira persuade me that

12   that's the case, then I will disallow your client.  But if I am

13   persuaded by you, that it's -- there are fact issues, then I

14   will set it for some sort of further hearing.

15          So I thank you both, all three of you, for your

16   arguments.  The matter stands submitted with the hearing.

17   Appreciate your time, all of you.

18          MS. SILVEIRA:  Thank you, Your Honor.

19          MS. GOUGH:  Thank you.

20          MR. KNADLER:  Thank you, Your Honor.

21          THE COURT:  Thanks.  Thank you.

22          And Ms. Parada, I'm going to conclude.

23      (Whereupon these proceedings were concluded at 11:15 AM)

24

25

```
1                         I N D E X

2                       E X H I B I T S

3   REORGANIZED DEBTORS'                DESCRIPTION    MARKED

4                ADMITTED

5   C            Hearing Officer's          27

6                Findings
```

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 30
of 38

1          C E R T I F I C A T I O N

2

3    I, Deanna Hinchy, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7    *Deanna M. Hinchy*

8    _____

9    /s/ DEANNA HINCHY, CDLT-254

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  September 13, 2023

16

17

18

19

20

21

22

23

24

25

Case: 19-30088   Doc# 14024   Filed: 09/20/23   Entered: 09/20/23 05:14:17   Page 31 of 38

## A

**ability (2)**
6:24;21:3
**able (2)**
23:22;26:18
**abridgment (1)**
9:23
**Absolutely (1)**
18:6
**accident (2)**
25:21,23
**accidents (1)**
25:20
**accrue (1)**
14:4
**acting (1)**
24:11
**action (4)**
11:21,22,24;14:17
**actions (1)**
23:4
**actually (5)**
10:24,25;11:5;19:5;
28:5
**additional (4)**
11:20;13:13;14:11;
17:4
**address (3)**
4:8;6:6;14:14
**addressed (1)**
5:12
**administrating (1)**
24:3
**administrative (18)**
5:22;6:11,13,15,17,
19,23;7:10,17;8:2,12,
18;9:5;12:11;14:5;
22:21,24;25:22
**administrator (1)**
8:25
**adverse (2)**
24:18,20
**advisement (3)**
26:19;28:25;29:7
**affect (1)**
22:23
**again (17)**
5:10;7:14,17;8:17;
13:15;14:9,17;15:14;
24:2,11,21;25:14;
26:1;27:22;28:11,18;
29:8
**against (7)**
11:22,24;12:18;
17:22;18:14;24:17;
25:25
**agencies (1)**
6:17
**ago (1)**
15:20
**agree (2)**
19:23;29:4
**agreeing (1)**
13:24
**ahead (1)**
4:22
**all-day (1)**
4:24
**alleged (1)**
19:25
**allowed (6)**
5:25;8:5,5,15;
20:15;28:12
**amendment (1)**
12:18
**analyzing (1)**
19:13
**Angeles (1)**
9:2
**announce (1)**
23:12
**announced (1)**
23:13
**anticipate (1)**
28:25
**apologize (1)**
26:20
**appear (1)**
3:14
**appearance (2)**
3:18,22
**appearances (1)**
3:9
**appears (2)**
18:3;26:25
**appellate (2)**
25:3,11
**application (1)**
7:14
**apply (3)**
9:17,18;13:16
**appointed (1)**
24:7
**Appreciate (1)**
29:17
**appropriate (2)**
20:11;28:15
**area (1)**
27:8
**argue (2)**
4:14,20
**argued (2)**
19:18;20:20
**argues (1)**
14:10
**arguing (8)**
16:9;19:9,10;20:21;
21:5;28:14,15,18
**argument (22)**
4:23;5:21;6:9;7:3;
9:11,16;10:6,8,10,24;
11:5,19;13:11;15:22;
16:5,12;17:17;18:17;
19:2,21;20:25;21:8

**arguments (6)**
4:5,8;5:12,17,20;
29:16
**around (3)**
11:1;12:13;20:2
**assume (1)**
14:21
**assuming (1)**
5:17
**attempt (1)**
17:7
**attributed (1)**
17:16
**authority (6)**
20:8;22:9,25;25:4,
15,24
**auto (2)**
25:19,21
**aware (3)**
14:17;17:19,22
**awful (1)**
4:5

## B

**back (8)**
10:15;14:10;17:10;
21:16;22:15;23:10;
24:11;29:8
**bankruptcy (6)**
8:15;12:19,22;13:4;
14:7;16:13
**based (2)**
14:4;16:18
**basis (4)**
7:11;9:6;17:21;
19:20
**began (2)**
11:10;14:4
**begin (2)**
15:15;20:22
**beginning (1)**
5:7
**behalf (3)**
3:12,17,24
**belief (1)**
5:9
**believes (1)**
22:7
**Benvenutti (1)**
3:12
**bid (1)**
8:23
**bit (1)**
5:2
**Board (4)**
6:11,16;22:2;26:16
**both (1)**
29:15
**bounced (1)**
20:23
**breach (4)**
7:1,15;15:11;19:10

**brief (4)**
4:23;5:1;17:2;
20:18
**briefly (1)**
15:18
**bringing (1)**
3:7
**brought (1)**
13:11
**bunch (1)**
12:13

## C

**Cal2d (2)**
6:16;21:23
**Cal2nd (3)**
26:12,13,13
**Cal3rd (1)**
26:11
**CalApp4th (1)**
9:3
**CALIFORNIA (1)**
3:1
**Call (7)**
3:4;8:3,4,9,10,11;
27:2
**called (1)**
27:2
**came (2)**
11:6;14:19
**Can (12)**
3:9,14,22;4:18,20;
5:18,18,18;14:14;
26:4;29:9,10
**car (2)**
25:20,22
**care (1)**
26:17
**carelessness (1)**
19:15
**case (31)**
4:15;6:9,14,20,23;
7:11;8:10,14,14;9:20,
21;10:6,14;14:1,12;
16:3;17:6;21:18,20,
24;22:8;23:1,5,7;
24:17,18;25:25;
26:10;28:12,14;29:12
**cases (3)**
15:20;16:1,3
**cause (1)**
14:17
**caused (1)**
23:14
**certainly (1)**
19:23
**certifications (1)**
11:7
**certifying (1)**
8:21
**cetera (1)**
26:22

**change (1)**
26:4
**Chapter (2)**
27:1;28:4
**checking (1)**
11:15
**Circuit (3)**
9:20;13:12;14:12
**citation (3)**
9:7;16:9;19:1
**cite (3)**
4:16;16:5;26:10
**cited (7)**
15:21;16:3;17:2;
21:18;22:3;23:6,25
**cites (1)**
19:13
**City (18)**
5:4,7,8;6:25;7:18;
11:22;14:19;17:4,4,6,
22;20:10,23;22:24;
23:21;25:4,15,24
**City's (4)**
20:6,8;21:2;23:15
**civil (2)**
8:14,15
**claim (28)**
6:2;7:16;10:19;
12:21;13:8,14;14:4,8;
15:11,16;16:13,18;
17:21;18:2,4,13,15,
25;19:3,20,21;20:14;
21:8;26:24;27:1;28:4,
16;29:4
**claimed (1)**
28:5
**claims (11)**
4:18;6:7;12:6;17:3;
18:19,23,24;19:1;
20:4;22:10;29:1
**clarify (1)**
19:8
**clear (1)**
15:9
**client (12)**
6:2;7:6;12:7,10;
14:22;15:5,7;22:11,
13,18;23:13;29:12
**client's (1)**
24:11
**close (1)**
7:21
**closely (1)**
8:16
**code (2)**
14:5;19:14
**collateral (6)**
6:21;9:6;19:10;
20:3;24:1;26:2
**collaterally (3)**
19:9;21:5,8
**commit (1)**
9:7

Case: 19-30088    Doc# 14024    Filed: 09/20/23    Entered: 09/20/23 05:14:17    Page 32
of 38

**Company (2)**
9:2,20
**complaint (1)**
16:11
**complaints (1)**
17:12
**complexity (1)**
28:25
**conceded (1)**
8:24
**concern (1)**
20:16
**conclude (1)**
29:22
**concluded (1)**
29:23
**conclusion (2)**
23:16;25:2
**conferred (1)**
6:18
**confront (1)**
7:1
**consider (1)**
7:2
**considered (4)**
7:16;12:18;23:25;
24:3
**consists (1)**
27:15
**Constitution (1)**
6:18
**contention (1)**
11:17
**contested (1)**
14:2
**continued (1)**
24:9
**contract (9)**
7:2,7,14,15;12:7;
15:11;19:10;25:5,15
**contracts (1)**
23:15
**contrary (1)**
9:22
**controlled (1)**
6:12
**correctly (1)**
22:12
**costs (1)**
14:6
**Counsel (1)**
3:5
**County (2)**
9:2;11:23
**couple (2)**
18:17;19:8
**Court (105)**
3:4,5,9,14,18,21,25;
4:2,10,17;5:13,16;
6:5;7:4,6,12,20,23;
9:10,13,15,22,25;
10:3,8,10,12,14,15,20,
22;11:16,24;12:2,4,7,

10,22;13:1,3,4,5,10,
17,20,22,24;14:13,21;
15:1,4,13,17,25;
16:16,22;17:3,3,10,
11,11,15,25;18:1,8,
10;19:7;20:12;21:10,
13,16,21,23;22:1,3,6;
23:2,5,10,18,20;24:5,
10,14,16,22;25:2,3,6,
8,10,11,17,21;26:3,
13,17;27:13,22,25;
28:6,10,18,21;29:21
**cover (1)**
14:6
**covered (1)**
24:1
**culpability (1)**
24:11
**current (1)**
7:11
**currently (1)**
24:21

**D**

**Dara (1)**
3:11
**date (5)**
10:20,22;14:11;
18:20;27:21
**day (1)**
13:2
**deal (3)**
14:3;20:5;25:14
**dealt (1)**
23:1
**Debtor (3)**
4:4;18:14,14
**Debtors (2)**
3:12,13
**Debtors' (1)**
27:20
**deceptive (1)**
10:17
**decide (1)**
4:20;20:16
**decided (2)**
9:4;12:19
**deeper (1)**
26:8
**defeat (1)**
5:18
**defeated (1)**
5:18
**Defendant (9)**
12:2,14;16:7,14,20,
25;18:1,12;19:6
**Defendants (8)**
12:1;16:11;17:4,5,
5,6,13,16
**defense (1)**
18:5
**delayed (3)**

18:21,23,24
**demonstrate (1)**
19:25
**demonstrated (1)**
20:10
**denied (2)**
14:7;28:22
**Department (1)**
20:9
**derailed (1)**
12:23
**determination (3)**
22:11,12;29:5
**determine (1)**
24:16
**determined (1)**
22:18
**different (2)**
22:16;25:16
**difficult (1)**
23:5
**dig (1)**
26:8
**dig- (1)**
27:2
**direct (1)**
8:12
**directly (2)**
8:22;16:5
**disagree (1)**
11:3
**disallow (2)**
29:4,12
**disallowed (1)**
6:2
**discovered (2)**
11:10;22:5
**discovery (11)**
7:25;8:3,4,13;
18:21,23,24;24:6;
26:1,23;28:12
**discussed (1)**
27:9
**disposed (1)**
29:9
**dispositive (2)**
26:6;28:23
**dispute (4)**
6:1;11:22;17:20;
28:22
**disqualify (1)**
22:11
**disregard (1)**
27:7
**District (1)**
17:3
**documents (1)**
4:13
**Doe (21)**
11:25;12:1,2,14,18;
13:11,13,14;16:7,11,
14,19,25;17:4,5,13,
16,23,25;18:12;19:6

**Doe'd (1)**
12:24
**Doeing (1)**
12:20
**done (1)**
20:1
**doomed (2)**
5:6,11
**door (1)**
7:21
**down (1)**
22:14
**dozens (1)**
11:8
**DUBBS (2)**
3:7,20

**E**

**earliest (1)**
10:18
**economy (1)**
13:7
**Edison (1)**
9:2
**Either (3)**
4:1;15:17;16:2
**Electric (1)**
9:20
**electrical (1)**
23:25
**element (1)**
26:2
**else (1)**
15:8
**embrace (2)**
7:25,25
**employee (1)**
23:2
**enact (1)**
6:25
**end (1)**
18:12
**ended (1)**
5:22
**engaged (1)**
14:22
**entertaining (1)**
11:2
**equipment (1)**
27:8
**essential (2)**
20:7;21:2
**estop (1)**
21:5
**estopped (1)**
21:8
**estoppel (7)**
6:21;9:6;19:10,11;
20:3;24:1;26:2
**et (1)**
26:22
**even (14)**

8:14,24;13:16;
14:10;15:11,12;
16:14;19:20,23,24;
21:7,7;24:23;25:13
**events (1)**
17:20
**evidence (4)**
6:9;7:3;8:1,12
**evidentiary (1)**
4:22
**example (2)**
5:20;22:21;23:23
**excavation (1)**
27:8
**Exhibit (5)**
27:17,20,22,23;
28:6
**expert (1)**
8:4
**experts (1)**
8:5
**explanation (1)**
27:5
**extend (1)**
18:22

**F**

**F2d (1)**
9:21
**facets (1)**
14:15
**fact (11)**
4:21;5:23;6:25;7:2,
4;8:24;13:20;15:1;
17:22;28:13;29:13
**factors (2)**
6:8,14
**facts (16)**
4:16;5:16;10:22;
12:5;14:16;17:20;
18:7;23:6;24:22,24,
24;25:1;28:11,14,16,
22
**factual (3)**
6:1;8:24;29:5
**fails (1)**
19:21
**false (10)**
5:6;8:20,21;11:7,
13;14:22,23;15:4,8,8
**falsification (2)**
14:18;19:19
**falsify (1)**
9:8
**familiar (1)**
26:22
**fast (1)**
12:15
**fatal (1)**
22:7
**fault (1)**
8:25;21:5;27:5

Case: 19-30088    Doc# 14024    Filed: 09/20/23    Entered: 09/20/23 05:14:17    Page 33
of 38

**faulty (2)**
8:22;24:9
**favor (1)**
4:9
**Federal (5)**
8:14;12:24;17:11;
18:1;25:21
**Ferdig (10)**
6:10,15;7:9;21:18,
21,22,25,25;23:1;
26:10
**F-E-R-D-I-G (2)**
22:2;26:14
**fighting (1)**
24:16
**file (5)**
4:11;11:24;12:21;
13:8;18:13
**filed (12)**
10:19;11:21,22;
12:17,19;13:14;14:4;
15:4,15;18:1,4,15
**filing (5)**
11:12;12:18,20;
14:7;16:13
**final (1)**
5:22
**find (7)**
8:25;10:16,25;
26:24,25;27:1,14
**finding (1)**
9:7
**findings (5)**
20:8;21:4;27:17,19;
28:2
**finds (2)**
19:14;27:6
**fine (3)**
4:1;10:14;22:6
**first (4)**
18:2,19;21:24;
29:10
**five (1)**
22:16
**fly (1)**
23:11
**focused (1)**
6:12
**folks (1)**
28:24
**form (1)**
17:21
**forms (1)**
19:20
**found (4)**
7:17;20:9;25:22;
27:10
**four (2)**
6:8;8:16
**FRANCISCO (4)**
3:1;11:23;12:14;
14:5
**fraud (9)**

7:1,15;9:8;18:23,
25;19:10,17,20,21
**fraudulent (2)**
12:6;19:22
**free (1)**
15:7
**front (1)**
28:9
**fundamental (1)**
22:10
**further (4)**
21:11;29:1,6,14

**G**

**Galati (1)**
8:7
**garden (1)**
20:19
**gas (2)**
14:19,24
**Gayle (2)**
3:17;26:21
**General (1)**
9:20
**generally (1)**
17:5
**gets (1)**
15:7
**giving (1)**
14:16
**goes (3)**
14:10;16:6;27:9
**Good (4)**
3:11,16,21,23
**GOUGH (10)**
3:16,17;15:18,22;
26:20,21;28:3,7;
29:11,19
**Government (1)**
19:14
**guess (1)**
4:12

**H**

**Haight (2)**
5:1;24:8
**half (2)**
16:24;17:6
**hand-dug (1)**
27:9
**happened (1)**
22:16
**hear (3)**
4:4;15:17;24:4
**heard (2)**
3:6;22:14
**hearing (39)**
4:22;6:15,19,24;
7:10,17;8:2,7,13,18;
9:5;19:12;20:4,15,21,
22;21:1,4;22:9,10,18,

21,22;23:11,12,12,13,
24;24:23;25:22;27:4,
4,10,17,19,25;29:10,
14,16
**hearings (1)**
6:11
**held (4)**
6:10,17;13:12;23:2
**hereby (1)**
27:19
**high (1)**
29:2
**history (2)**
5:5;8:21
**hold (5)**
7:20,20;14:13;
17:24;21:17
**homework (1)**
26:7
**Honor (28)**
3:7,11,16,17,20,23;
15:24;16:4,6;17:1,8,
14,18,19;18:6,16;
20:25;21:12,20;
26:15,20,23;27:3,12,
16;28:3;29:18,20
**hook (1)**
15:7

**I**

**idea (1)**
9:25
**identical (1)**
9:4
**identification (2)**
16:19;27:20
**identity (1)**
14:15
**ignorant (1)**
14:15
**illuminate (1)**
28:4
**immaterial (2)**
7:11;23:3
**immediately (1)**
11:9
**impacted (1)**
8:22
**impacts (1)**
25:25
**important (1)**
20:11
**importantly (1)**
25:3
**improperly (1)**
25:22
**inaccurate (2)**
5:5,6
**Inc (1)**
3:24
**incident (1)**
25:18

**including (1)**
4:15
**indefinite (1)**
16:9
**indicate (1)**
20:13
**indicated (1)**
11:12
**inferences (1)**
17:12
**information (1)**
8:22
**initially (2)**
5:7,8
**ins (1)**
27:3
**instead (2)**
12:19;13:6
**instructions (1)**
27:7
**intent (2)**
19:22;20:1
**interject (1)**
26:21
**interrupt (1)**
27:16
**into (6)**
4:21,24;24:22,24;
26:8;28:11
**investigation (1)**
11:11
**involve (2)**
6:20;7:13
**involved (3)**
8:7,10;17:23
**involvement (1)**
17:19
**involves (3)**
5:1;16:11;25:18
**involving (1)**
24:2
**issue (14)**
4:18;6:23,25;7:9,
18;9:4,4;20:19;23:3;
24:24;25:12,13,16,23
**issues (13)**
4:21;6:13,13,20;
7:1,8,15;8:1;15:18;
23:22;24:21;25:10;
29:13

**J**

**Johnny (1)**
3:23
**joining (1)**
3:20
**judgment (4)**
22:23;28:13,15,21
**judicata (6)**
5:21;6:7,21;9:16,
16;20:19
**judicial (3)**

13:7;27:18,24
**jump (1)**
20:2

**K**

**keep (4)**
24:11;26:3;28:14,
15
**keeping (1)**
24:14
**Keller (1)**
3:12
**Kim (1)**
3:12
**kind (4)**
8:13;9:8;12:15;
18:11
**Knadler (75)**
3:19,21,23,24,25;
4:1,7,12,25;5:15;6:4,
6;7:5,7,13,22,24;9:12,
14,19;10:2,5,9,11,13,
21,24;11:17,25;12:3,
5,9,17;13:6,11,19,21,
23;14:3,14,24;15:3,
10,14;18:17;19:17;
20:21;21:13,15,20,22,
25;22:2,4,20;23:9,16,
19,21;24:6,13,15,20;
25:7,9,12,18;26:12,
15;28:6,8,11,20;29:8,
20
**Knadler's (4)**
16:8;19:1;20:3,14
**knew (3)**
12:4,7,10;18:14
**known (1)**
11:2

**L**

**language (1)**
17:1
**large (1)**
17:20
**late (2)**
5:23,23
**law (10)**
4:16;6:1,12;7:8,14,
15;19:22;25:5,15;
29:10
**lawsuit (2)**
12:23,24
**least (2)**
7:11;8:25
**led (1)**
19:16
**legal (14)**
4:19;5:17,20,24;
6:14;7:11;18:3;22:24;
23:16;24:24;25:2,10,
14;28:23

Case: 19-30088    Doc# 14024    Filed: 09/20/23    Entered: 09/20/23 05:14:17    Page 34
of 38

**length (1)**
27:9
**lengthier (2)**
15:11,12
**lengthy (2)**
4:3,7
**letters (1)**
14:5
**level (3)**
12:11;25:10,11
**levels (1)**
14:9
**liability (2)**
20:16;21:2
**liable (1)**
22:13
**lieu (1)**
16:14
**limit (1)**
20:8
**limitations (15)**
9:11,18,24;10:4;
11:21;12:16;13:9,16;
15:12,15;16:10;18:5,
20,22;19:2
**limited (4)**
6:12;8:17;22:9;
26:1
**Lindley (2)**
9:20;14:12
**line (1)**
14:19
**linked (1)**
17:4
**listen (1)**
23:12
**litigation (1)**
17:21
**little (1)**
26:8
**location (1)**
19:16
**long (2)**
5:5;8:20
**look (6)**
8:7;15:2;26:7,18,
23;28:24
**looked (1)**
15:19
**looking (1)**
16:1
**Los (1)**
9:2
**lost (2)**
20:24;25:11
**lot (1)**
4:5

**M**

**major (1)**
12:13
**makes (1)**

24:18
**making (3)**
15:22,24;21:8
**Management (1)**
3:24
**manhole (1)**
23:24
**manner (1)**
12:21
**manufactured (1)**
25:23
**many (1)**
4:13
**map (2)**
15:8;26:25
**maps (16)**
5:3,4,6;8:20,21,21;
9:8;11:7,7;14:19,22,
22;15:4;19:19,24;
24:9
**marked (1)**
27:19
**marking (1)**
19:16
**material (2)**
28:22,23
**matter (10)**
6:1;7:25;8:1,11;
19:22;26:19;28:23,
24;29:10,16
**matters (1)**
8:16
**may (2)**
26:20,20
**maybe (2)**
9:16;16:17
**mean (9)**
4:4;9:15;12:11;
13:17;16:16;20:12,
13;22:6;25:18
**meet (1)**
8:13
**mentioned (1)**
21:24
**mentioning (1)**
15:20
**Mercede (1)**
8:8
**microphoned (1)**
3:15
**middle (1)**
10:18
**minute (2)**
21:17;26:21
**misfiled (1)**
11:6
**misled (1)**
5:14
**miss (1)**
16:3
**missed (1)**
9:13
**missing (2)**

16:2;20:24
**mistaken (1)**
5:9
**moment (1)**
14:21
**more (2)**
13:1;25:3
**morning (4)**
3:11,16,21,23
**Moving (1)**
19:17
**Mrs (1)**
3:10
**multiple (2)**
14:9;24:8
**must (2)**
9:4;29:5
**mystery (1)**
12:12

**N**

**name (2)**
4:3;18:12
**named (1)**
17:25
**naming (1)**
12:14
**narrow (2)**
6:25;25:12
**narrowly (1)**
7:18
**nature (2)**
8:19;10:17
**necessarily (1)**
20:5
**need (2)**
5:25;13:13
**negligence (1)**
5:9
**Neither (1)**
28:10,10
**new (1)**
24:7
**next (1)**
7:13
**Ninth (3)**
9:20;13:12;14:12
**nobody (1)**
23:6
**none (1)**
23:24
**note (2)**
20:11;26:9
**noted (1)**
17:8
**notes (1)**
21:16
**notice (2)**
27:18,24
**notion (1)**
5:21
**Number (2)**

7:24;8:16

**O**

**objection (7)**
4:18;10:11;11:14;
15:19;16:18;28:17;
29:9
**obviously (3)**
13:25;14:1;18:14
**occurred (1)**
18:7
**off (2)**
15:6;23:14
**offers (1)**
27:5
**office (1)**
23:11
**officer (17)**
19:12;20:15,22,23;
21:1,4;22:10,11,18,
24;23:12,13,24;24:3,
7;27:4,4
**officer's (5)**
20:5;27:10,17,19,
25
**once (1)**
11:21
**one (12)**
4:8;7:20;9:1;11:25;
14:3,14;15:5,5;17:11;
21:16;22:22;24:1
**only (13)**
6:17;8:2,5,8;11:6;
13:15;14:16;18:23;
19:11;20:22;24:3,25;
27:13
**oOo- (1)**
3:3
**operates (1)**
16:13
**opposition (2)**
4:3;16:1
**oral (1)**
4:23
**orally (1)**
4:14
**order (1)**
3:4
**original (1)**
10:11
**otherwise (1)**
12:22
**out (11)**
5:10;6:2;7:9;10:16,
25,25;11:6;14:19;
15:10;17:19;18:16
**over (1)**
11:8
**overlap (2)**
6:9;7:3

**P**

**page (1)**
22:21
**papers (2)**
21:19;22:3
**Parada (2)**
3:18;29:22
**paragraphs (1)**
11:14
**part (2)**
20:7;21:2
**particular (1)**
6:20
**particularly (1)**
29:3
**past (1)**
11:20
**pattern (4)**
5:10;10:17,25;
11:12
**people (1)**
27:13
**per (2)**
8:6;14:5
**perfectly (1)**
4:14
**period (5)**
11:9;13:9,15;14:10;
20:15
**Personnel (4)**
6:11,16;22:2;26:16
**persuade (1)**
5:16,25;29:11
**persuaded (1)**
29:13
**persuasive (2)**
4:5;5:21
**pertains (1)**
27:2
**petition (1)**
18:20
**PG&E (58)**
3:17;5:3,5,7,10,12,
17,21;6:8;8:4,10,11,
20,20,24,25;9:7,8;
10:17;11:2,6,12,21,
24;12:11,18;14:6,10,
21;15:21;16:6,14,23,
25;17:7,13,13,15,16,
23;18:4;19:4,9,22;
20:1;22:5,22;23:23,
25;24:2,4,12;25:25;
27:5,7,8,9;29:4
**PG&E's (1)**
17:19
**PG's (2)**
20:16;26:22
**phonetic (2)**
8:8,8
**phrased (1)**
17:2

Case: 19-30088 Doc# 14024 Filed: 09/20/23 Entered: 09/20/23 05:14:17 Page 35 of 38

**pipes (1)**
22:17
**pitch (1)**
4:24
**Plaintiffs (1)**
11:20
**playing (1)**
12:15
**please (4)**
3:9,22;7:20;21:17
**plus (1)**
23:24
**point (12)**
4:17;9:15;10:25;
11:4;15:10;16:5;17:1;
20:3,14;24:18;25:1;
29:2
**pointed (5)**
6:8;7:8;9:19;10:6;
17:19
**points (2)**
19:9,17
**position (1)**
24:25
**positive (1)**
11:15
**possibly (3)**
5:9;16:7;23:7
**powers (1)**
6:17
**practice (4)**
5:10;10:17;11:1,12
**preceding (1)**
11:9
**preparation (1)**
7:25
**prepared (1)**
4:14
**pre-petition (2)**
16:24;17:7
**present (1)**
9:3
**presented (4)**
6:13;20:17,21;21:1
**presume (2)**
3:5;29:4
**pretend (1)**
12:11
**pre-trial (2)**
7:24;29:6
**principles (1)**
9:17
**probably (1)**
10:18
**problem (1)**
19:24
**problems (1)**
14:18
**Procedure (1)**
8:15
**procedures (2)**
26:22;29:8
**proceedings (1)**

29:23
**process (1)**
5:22
**Project (10)**
3:24;5:2,2,6,11;
8:19,23;11:9;20:7;
21:3
**proof (4)**
16:13;18:1,4,13
**proposition (2)**
15:19;22:9
**proprietary (4)**
7:18;8:18,18;25:13
**propriety (1)**
20:5
**prove (1)**
18:11
**provided (1)**
5:3,3;27:7
**providing (2)**
5:5;8:22
**provision (1)**
18:21,24
**public (6)**
7:7,14;12:13;20:9;
25:4,15
**purely (1)**
6:24
**purposes (2)**
6:22;17:23
**put (2)**
6:14;27:14

**Q**

**quick (2)**
5:11;21:13
**quickly (1)**
5:11

**R**

**raised (8)**
5:12;6:20;7:16;8:1;
16:12;22:5;23:3;26:2
**raising (1)**
16:6
**rather (1)**
6:13
**read (4)**
4:5;15:19;17:12;
20:18
**reading (2)**
19:4;23:17
**really (2)**
16:5,9
**reason (2)**
13:1;27:11
**reasonable (1)**
27:6
**reasoning (2)**
9:21;14:12
**reasons (1)**

7:10
**record (5)**
24:14;26:8;27:14,
15;29:3
**records (1)**
14:18
**recovery (1)**
18:4
**refute (1)**
4:8
**regarding (1)**
22:24
**rehash (1)**
10:5
**rejects (1)**
27:4
**related (2)**
8:11,17
**relates (2)**
18:23;19:11
**relevant (1)**
18:7
**reliance (2)**
9:8;19:20
**relied (4)**
5:3;11:13;14:22;
15:5
**relief (3)**
12:20;13:1;17:8
**remaining (1)**
20:14
**removal (11)**
6:24;7:19;8:18,19;
11:3;14:11;20:6,9,10,
15;25:13
**remove (5)**
21:3;22:25;23:22;
25:4,24
**removed (2)**
7:6,9
**Reorganized (2)**
3:13;27:20
**repeating (1)**
26:3
**rephrase (2)**
5:13;20:18
**reply (3)**
16:2;17:2;20:18
**report (2)**
11:6;20:5
**reports (2)**
11:11,13;15:9
**request (2)**
27:17,23
**require (1)**
19:4
**requires (3)**
6:7;18:24;19:5
**res (6)**
5:21;6:6,21;9:16,
16;20:19
**respect (4)**
19:3,12;20:4;26:23

**response (4)**
4:7,10,15;22:5
**responsible (3)**
22:19,22;25:1
**returning (2)**
20:2,3
**review (2)**
26:24;29:3
**ride (1)**
15:8
**right (18)**
3:9,21;4:25;12:9;
15:3;16:4,20,23;
17:18;20:17,24;
23:19;24:13,15;25:6;
26:10,18;28:9
**rights (1)**
9:23
**rise (1)**
14:16
**rule (3)**
7:14;16:11;19:12
**rules (5)**
4:18;8:2,14;12:15;
29:9
**ruling (8)**
4:19;9:22;23:12,20,
21;24:19,20;28:1
**Rumberg (11)**
9:19,21;10:6;11:19;
14:12;16:3,5,8;19:1,4,
5
**run (3)**
13:25;15:15;18:12
**running (1)**
16:19

**S**

**safe (1)**
25:20
**safety (1)**
23:22
**same (3)**
7:14;24:21;25:18
**SAN (4)**
3:1;11:23;12:14;
14:5
**saying (6)**
11:6;16:17,17,22;
17:10;22:8
**schedule (1)**
29:6
**scope (1)**
8:17
**second (4)**
7:20;8:1;10:15;
21:16
**secondary (1)**
11:19
**section (1)**
19:13
**seeing (1)**

4:3
**seek (2)**
13:1;17:8
**seeking (1)**
18:3
**seemed (1)**
20:19
**seems (2)**
12:14;18:11
**sense (1)**
25:14
**sent (1)**
14:5
**separate (1)**
18:16
**SEPTEMBER (1)**
3:1
**session (1)**
4:24
**set (2)**
29:6,14
**severely (1)**
6:11
**shoring (1)**
23:24
**show (1)**
5:18
**shown (1)**
18:25
**sic (1)**
21:23
**side (3)**
8:2,6;24:4
**SILVEIRA (23)**
3:11,12,14;15:18,
23,24;16:4,16:4,21,23;
17:14,18;18:6,9,16;
19:8;20:25;21:12;
22:7;27:16,23;28:2;
29:11,18
**Silveira's (1)**
24:25
**Silveria (2)**
3:10;24:17
**similar (2)**
6:7;25:19
**simply (1)**
12:21
**sitting (1)**
12:13
**skipped (1)**
13:7
**skipping (1)**
13:7
**SoCal (1)**
9:2
**solely (1)**
19:3
**somebody (1)**
15:8
**somehow (2)**
16:13;17:22
**someone (1)**

Case: 19-30088    Doc# 14024    Filed: 09/20/23    Entered: 09/20/23 05:14:17    Page 36
of 38

13:13
**Sorry (10)**
3:25;5:8;10:5,6;
13:23;20:2;21:17,25;
26:12;27:16
**sort (2)**
29:6,14
**sought (1)**
16:24
**specific (1)**
17:5
**specifically (1)**
19:13
**spell (1)**
22:1
**stakes (1)**
29:2
**standards (1)**
8:13
**stands (2)**
22:8;29:16
**start (3)**
4:25;13:25;23:6
**started (1)**
5:1
**state (10)**
3:22;6:10,16;9:23;
12:23,23;17:11;18:1;
22:2;26:15
**stated (3)**
7:10;9:22;27:8
**statement (2)**
27:3,10
**states (1)**
14:16
**Statute (17)**
6:18;9:10,18;10:3;
11:20;12:15;13:9,16,
25;15:12,14;16:10,
18;18:5,20,22;19:2
**statutes (1)**
9:23
**statutory (5)**
18:19,22;19:3,11;
20:4
**stay (2)**
12:20;17:8
**step (2)**
10:15;13:7
**stick (1)**
4:2
**still (5)**
13:12;14:11;19:21;
21:9;25:20
**strains (1)**
18:17
**Street (2)**
5:2;24:8
**stricken (1)**
22:17
**strike (1)**
23:25
**striked (1)**

22:17
**strikes (13)**
9:1;14:6,25;19:16;
21:2;22:13,19,23;
23:14;24:2,9;25:2;
27:2
**struck (1)**
22:17
**subcontractor (2)**
20:6;24:8
**submit (1)**
4:15
**submitted (6)**
8:20;11:7;13:23;
26:24;27:1;29:16
**submitting (1)**
8:21
**subsequent (2)**
6:20;23:4
**substantially (1)**
6:7
**substantive (1)**
9:23
**substitute (2)**
16:25;17:7
**substitution (3)**
16:14;17:23;19:5
**suddenly (1)**
4:19
**suggest (1)**
27:12
**suggesting (1)**
15:6
**summary (4)**
5:1;28:13,14,21
**Superior (2)**
17:3;25:9
**supplemental (2)**
4:15,16
**supports (1)**
24:25
**suppose (1)**
15:2
**supposed (1)**
24:23
**sure (2)**
26:10;28:8
**surprised (1)**
4:3
**suspended (1)**
12:10
**sustained (1)**
28:17
**Switch (1)**
9:10
**Synergy (30)**
3:24;4:9;5:2,8;
6:24;8:3,19;9:19;
10:16;11:13;14:4;
16:12,23;17:2,6,19;
18:3;19:9,14,18,24;
20:6,23;21:4,7;22:25;
25:25;27:4,7,10

**Synergy's (7)**
8:22;9:21;11:9;
17:21;19:15;21:1;
29:2

**T**

**table (1)**
16:1
**tailored (1)**
7:18
**talking (1)**
9:25
**telling (2)**
17:11;23:6
**ten (1)**
26:4
**tens (1)**
11:8
**terminated (1)**
23:3
**termination (1)**
23:1
**terms (2)**
20:13,18
**testify (1)**
8:11
**Thanks (1)**
29:21
**therefore (7)**
18:13;19:15;20:12,
13;21:4;22:12;23:14
**though (3)**
23:7;24:12;26:3
**thousands (1)**
11:8
**three (8)**
7:24;10:16,16;
11:20;13:13;14:7;
18:21;29:15
**three- (1)**
14:9
**three-year (2)**
13:8;16:10
**thrown (2)**
6:2;23:14
**time-barred (2)**
18:20;21:9
**timeliness (1)**
14:15
**timely (8)**
10:19;11:21,22;
12:17,21;13:8,14;
14:1
**times (5)**
11:8,8;14:11;22:16;
26:4
**today (2)**
3:6;4:16
**told (3)**
15:19;26:9;28:7
**tolling (2)**
16:10;19:2

**touched (1)**
24:2
**true (2)**
18:10;22:15
**trying (1)**
18:10
**TUESDAY (1)**
3:1
**turn (3)**
4:21,23;5:11
**turned (1)**
5:10
**two (4)**
8:3,5;17:5;24:3

**U**

**ultimate (1)**
25:23
**ultimately (3)**
13:4;25:9,25
**uncovered (1)**
11:11
**under (16)**
4:18;5:8;7:7,8;8:2,
14;9:23;11:19;14:11;
24:21;25:4,5,15;
26:19;28:24;29:7
**underlying (3)**
12:5;23:3;28:16
**undersigned (1)**
27:6
**Unknown (1)**
5:4
**unless (1)**
16:2
**unsafe (1)**
27:11
**up (4)**
13:11;19:18;25:3;
26:18
**upheld (1)**
9:21
**upon (2)**
6:18;16:18
**use (2)**
6:15;27:7
**used (2)**
6:21;9:6
**using (1)**
11:4
**utilities (1)**
12:13

**V**

**variety (1)**
20:19
**various (2)**
14:6;15:20
**verb (1)**
22:18
**versus (2)**

7:15,15
**viable (1)**
18:25
**victim (1)**
15:8
**view (2)**
22:20;29:2
**violated (1)**
19:14
**violations (5)**
18:19,23;19:3,11;
20:4

**W**

**wade (2)**
24:22,24
**wades (1)**
28:11
**wall (1)**
23:11
**water (1)**
17:24
**way (5)**
4:1;6:15;17:2;
20:18;24:8
**weigh (1)**
24:24
**welcome (1)**
9:6
**What's (6)**
10:20,22;17:16;
21:23;27:13;28:5
**Whereupon (1)**
29:23
**who's (1)**
25:1
**widespread (1)**
14:18
**willing (1)**
4:14
**win (2)**
18:11;25:8
**within (5)**
13:8,14;14:7,9;
15:16
**witnesses (5)**
8:3,4,5,9;24:3
**won (2)**
20:20;25:9
**words (4)**
15:2;18:2;20:17;
22:14
**work (2)**
11:9;26:25
**workers (1)**
8:9
**Works (1)**
20:9
**writ (1)**
17:20
**write (1)**
4:11

Case: 19-30088    Doc# 14024    Filed: 09/20/23    Entered: 09/20/23 05:14:17    Page 37
of 38

**wrong (2)**
15:6,21
**wrote (1)**
9:22

## Y

**year (6)**
10:16;13:15;14:10;
16:23,24;17:6
**years (5)**
10:16;11:20;13:13;
14:7;18:21

## 1

**10:35 (1)**
3:1
**100 (1)**
15:4
**101st (1)**
15:5
**103 (1)**
6:16
**11 (2)**
27:1;28:4
**11:15 (1)**
29:23
**1108 (1)**
9:3
**112 (1)**
9:3
**1120 (1)**
9:3
**12 (1)**
3:1
**1969 (1)**
26:16

## 2

**2003 (1)**
9:3
**2015 (1)**
18:7
**2016 (4)**
10:18,23,23;11:3
**2018 (9)**
11:1,5,10,13;12:3;
13:15,25;14:19;15:15
**2019 (4)**
10:19;13:15;18:2;
24:9
**2023 (1)**
3:1

## 3

**30 (1)**
11:14
**31 (1)**
11:14

## 4

**4216.4 (1)**
19:13

## 7

**71 (5)**
6:16;21:23;22:21;
26:10,13
**780 (1)**
9:21
**797 (1)**
9:21

## 9

**93 (1)**
21:23
**96 (3)**
6:16;26:11,13

Case: 19-30088    Doc# 14024    Filed: 09/20/23    Entered: 09/20/23 05:14:17    Page 38
of 38