Entered on Docket
October 02, 2023
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: October 2, 2023**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re:                              ) Bankruptcy Case
                                    ) No. 19-30088-DM
PG&E CORPORATION,                   )
                                    ) Chapter 11
        - and -                     )
                                    ) Jointly Administered
PACIFIC GAS AND ELECTRIC COMPANY,   )
                                    )
        Reorganized Debtors.        )
                                    )
☐ Affects PG&E Corporation          )
☐ Affects Pacific Gas and           )
    Electric Company                )
☒ Affects both Debtors              )
                                    )
* All papers shall be filed in      )
the Lead Case, No. 19-30088 (DM).   )
                                    )
                                    )
```

**MEMORANDUM DECISION ON OBJECTION TO PROOF OF CLAIM
OF SYNERGY PROJECT MANAGEMENT, INC.**

**I.   Introduction**

The court held a hearing on September 12, 2023 on the Objection (Dkt. 13670) by the Reorganized Debtors ("Debtors") to the proof of claim filed by Synergy Project Management, Inc. ("SPM"). Appearances were noted on the record. For the reasons that follow, the court will sustain the objections and disallow

-1-

SPM's claim filed on October 20, 2019, as amended on May 10, 2023.

**II. Background[1]**

The parties are quite familiar with SPM's status as a subcontractor of Ghilotti Brothers, Inc. ("GBI") pursuant to a sewer replacement and water main installation project in San Francisco in 2015 described generally as the "Haight Project". In short, the Haight Project began in the spring of 2015 and between April and October of 2015, at least six incidents occurred that are at the core of the present dispute. Five of the incidents have been described as "gas strikes"; one has been described as an "electrical strike".

After litigation before a hearing officer, the City and County of San Francisco ("CCSF") terminated SPM as the subcontractor for GBI. Over time, SPM blamed Debtors for causing the situation that led to those strikes; by June 2017, Debtors denied most of SPM's claims.

Debtors filed their Chapter 11 on January 29, 2019. On October 20, 2019, SPM filed Proof of Claim Co. 72390 ("Initial POC"). On May 10, 2023, SPM filed Amended Proof of Claim No. 109882 ("Amended POC"). The Initial POC and the Amended POC each seek damages in the amount of $5,697,441.76. The basis of the claim is "damages relating to strikes, fraud and related business damages." (See Initial POC and Amended POC at ¶ 8.) The Initial POC contains a four-and-a-half page narrative describing the five gas strikes and one electrical strike and

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

related impact delays totaling $337,441.76 in damages. Each then adds "damage to business due to PG&E fraud/misrepresentations" in the amount of $5,360,000. The narrative continues by reciting that Debtors made multiple representations to CCSF denying that they were responsible for the strikes that resulted in commencement of proceedings initiated by CCSF to remove SPM as GHI's subcontractor on the Haight Project. It adds the recital that its claims were denied by Debtors in May 2017. The narrative continues with the allegation that Debtors had a pattern of falsifying records and that in June 2019, SPM's counsel received evidence that Debtors knew that the second strike (on August 7, 2015) was not SPM's fault. There is no mention of the other five strikes or any other problems identified by the hearing officer as SPM's responsibility that led to its termination.

The narrative continues with a few sentences describing Debtors' alleged failure to comply with certain city regulations and Government Code provisions dealing with underground utilities. It contains in a final paragraph referring to SPM's termination from the Haight Project.

For no apparent reason, the Amended POC sets forth the entire SPM-GBI contract but does not repeat the narrative just summarized.

**III. Discussion**

A.  The Administrative Hearing

Both sides devote a lot of ink and a portion of the oral argument to the December 19, 2015 administrative hearing and its results. SPM contends that result was not dispositive in any

-3-

way for a variety of reasons. Debtors contend that the adverse ruling, and in particular the finding of the hearing officer that SPM caused at least four of the strikes based upon its unsafe practices, is dispositive under principles of collateral estoppel.

The legal analysis of that ruling under collateral estoppel principles is for another day. Questions about the reach of collateral estoppel principles applied to non-judicial administrative hearings, and which do not include the very same parties who later invoke them, are complex, sometimes uncertain, and certainly not necessary for speculation and conjecture by this court to resolve this dispute. As described below, the Initial POC and the Amended POC must be disallowed for independent and dispositive reasons.

B. Locate and Mark Program

The parties also spend time on the 2018 investigation by the California Public Utilities Commission whether or not Debtors' "Locate and Mark Program" of natural gas facilities violated various legal requirements. More specifically, the primary focus was on the submission of "tickets" relating to the program and the fact that Debtors' top management was unaware of some of the problems in administering that program while its own staff was aware of them. That was finally resolved and approved by an April 24, 2020 order of this court.

The court believes that the discussion of that dispute and its resolution is nothing more than a red herring, designed by SPM to distract from the underlying merits of the Objection to its claim, namely that it – not Debtors – caused five of the six

-4-

strikes and other problems that are solely the responsibility of SPM, and no one else. The court can find no indication that there is some causal connection between the failure to properly account for "tickets" and SPM's failures. If there was fraud involved in the Locate and Mark Program, SPM has not even come close to showing how it was a victim of such fraud, or reasonably relied to its detriment in any way.

C. State Court Litigation

Finally, there is a lot of attention given to the state court litigation and various amendments initiated by SPM (originally with no fictitious defendants) and later naming as Doe defendants San Francisco's mayor and its later convicted former Director of Department of Public Works. Again, these allegations and the lengthy history of that litigation do not appear to have any direct bearing on Debtors' potential liability for the matters described in SPM's Proofs of Claim other than the notable absence of Debtors as parties to that litigation.

D. The Franchise Agreement

An alternative theory of SPM's claim apparently turns on a 1939 agreement between Debtors and CCSF regulating its supervision of Debtors' conduct as a utility serving the city in numerous ways. SPM argues that it is somehow a third-party beneficiary of that agreement and that therefore the four-year statute of limitations and saves its claims against Debtors.

As a preliminary matter, the Initial POC and the Amended POC, at paragraph 8 of each form, say nothing about any breach of contract or third-party beneficiary theory that might justify

-5-

the four-year statute of limitations.  To repeat what is noted above, both Proofs of Claim allege fraud and related business damages of relating to the strikes.  For that reason alone, the court rejects the third-party beneficiary franchise four-year contract theory of recovery.

E.   Three-Year Statute of Limitation for Fraud

At bottom, this dispute turns on whether SPM can recover under non-contract theories based upon events that occurred more than three years prior to Debtors' Chapter 11 bankruptcy on January 29, 2019.  The short answer, again, is that it cannot.

Despite SPM's contention that a breach of contract occurred in May, 2017 (See Opposition, Dkt. 13719 at ¶ 21: "Although the strikes occurred in 2015, the actual breach of contact occurred in May 2017 when PG&E denied SPM's claims for reimbursement"), the fact is that the operative events occurred in 2015.  SPM sued CCSF in 2017 and after the original complaint, several amendments contained fairly routine and boilerplate recitals that Doe defendants were CCSF agents and employees whose identity could be discovered during the action and could be named as Doe defendants.  It does not include in those boilerplate allegations Debtors or any of its own representatives, nor could it, as SPM knew well the totality of Debtors' involvement in the Haight Project.  In fact, at least two Doe defendants were subsequently identified as Mayor Breed and Director Nuru but at no time was there ever any attempt to substitute Debtors in as Doe defendants.

SPM contends that California Code of Civil Procedure § 474 ("CCP 474") allows it to add a fictitious defendant not known at

-6-

the time of the complaint.  That is the law, but the unmistakable facts are that SPM knew of Debtors' involvement in the entire Haight Project from the inception, it obviously knew of the strikes that occurred in 2015 and it obviously knew that its claims were denied by Debtors no later than May 2017, prior to when it initiated the Superior Court litigation that it now relies on to justify treating Debtors as Doe defendants when they were not, nor could they have been.

CCP 474 is meant to protect the innocent plaintiff who does not know the identity of a prospective defendant at the time an action is brought. *Olden v. Hatchell,* 154 Cal. App. 3d 1032, 1037 (1984).  The Court in *Olden* elaborates:

> Section 474 provides in pertinent part: 'When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . .'

*Id.*  Finally, on this point, SPM's reliance on CCP 583.210 is misplaced and of no help, as that section deals with service of a summons.

From the foregoing, the court concludes that whether or not SPM could of or should have named Debtors as defendants in the state court litigation, it did not, and it was too late to do so well before the January 2019 bankruptcy filings.  The suggestion that alleged fraud was not known or discovered until years later is simply not credible, and in any event lacks even a minimum of specificity to justify including it after the fact.

-7-

## IV. Conclusion

For the foregoing reasons, the court, even giving SPM the benefit of the narrative that accompanies its Initial POC but inexplicably was not included in the Amended POC, fails to state a claim or relief. Accordingly, the claims must be DISALLOWED.

The court is concurrently issuing an order disposing of the claims consistent with this Memorandum Decision.

**\*END OF MEMORANDUM DECISION\*\***

**COURT SERVICE LIST**

ECF Recipients