# EXHIBIT 22

# THOMSON REUTERS PRACTICAL LAW

# Commencing a Securities Class Action: Pleading Claims

by Carol C. Villegas & Jake Bissell-Linsk, Labaton Sucharow LLP, with Practical Law Securities Litigation & White Collar Crime

Status: **Maintained** | Jurisdiction: **United States**

This document is published by Practical Law and can be found at: **us.practicallaw.tr.com/w-027-8561**
Request a free trial and demonstration at: **us.practicallaw.tr.com/about/freetrial**

A Practice Note focusing on private actions asserting material misstatements or omissions in violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934. This Note also explains aspects of complaint drafting affected by the heightened pleading applicable to securities class actions, including under the Private Securities Litigation Reform Act of 1995 (PSLRA), and how to structure the complaint to state a securities fraud claim and comply with other requirements. It also addresses preparing, filing, and serving the case-initiating documents.

Drafting a federal securities class action complaint raises unique issues and challenges. Complaints generally serve as the primary document in which plaintiffs tell their story, and the heightened pleading standards and intricacies of class action litigation typically result in long detailed pleadings. Counsel must understand which claims to allege, the difference between initial and amended complaints, the applicable pleading standards, how to draft the complaint, and various procedural requirements. The failure to understand and address the issues uniquely relevant to federal securities class action complaints may result in dismissal of claims or the complaint and prejudice the client's interests.

This Note focuses on stating a securities fraud claim under Exchange Act Section 10(b) and Rule 10b-5 along with control person claims under Exchange Act Section 20(a) because plaintiffs assert these claims in nearly all federal securities class actions.

This Note assumes a basic understanding of general complaint drafting considerations.

For a collection of resources on commencing a securities class action, including guidance on how to file and serve the case-initiating documents, see Commencing a Federal Securities Class Action Toolkit.

## Preparing to Draft a Complaint

Before starting to draft the complaint, counsel must assess and investigate potential claims. Although counsel should ensure that they plead claims with the requisite level of particularity under the applicable pleading standards, counsel in securities class actions almost always amend the initial complaint.

## Typical Claims

The typical federal securities class action alleges fraud claims based on Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) and Securities Exchange Commission (SEC) Rule 10b-5 (15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5). This cause of action has been described as a catch-all anti-fraud provision for securities claims based primarily on misstatements, omissions, and other deceptive conduct affecting the market price of publicly traded securities. In almost every instance, the complaint also alleges control person claims under Section 20(a) of the Exchange Act. That provision provides joint liability for those who control a company liable for fraud.

Because the liability provisions of the federal securities laws frequently overlap, liability under one provision or act usually does not preclude liability under another. Most plaintiffs assert a Section 10(b) and Rule 10(b) claim in a class action that also asserts claims under Sections 11 and 12 of the Securities Act of 1933 (Securities Act) based on alleged violations in the documents used to offer securities to the market, meaning in an initial public offering. Plaintiffs may also assert control person liability claims under Securities Act Section 15.

Other common claims involve misstatements in the context of shareholder votes under Section 14(a) of the Exchange Act, tender offers under Section 14(e) of the

© 2020 Thomson Reuters. All rights reserved. Use of Practical Law websites and services is subject to the Terms of Use (static.legalsolutions.thomsonreuters.com/static/agreement/westlaw-additional-terms.pdf) and Privacy Policy (a.next.westlaw.com/Privacy).



Case: 19-30088    Doc# 14070-4    Filed: 10/13/23    Entered: 10/13/23 20:31:44    Page 2 of 9

Exchange Act, and other provisions applying to similar specific situations.

For more on identifying claims, see Practice Note, Commencing a Securities Class Action: Identifying Claims.

For more on the private actions available under the federal securities laws, see Private Actions Under US Securities Laws Chart and Practice Note, Securities Act and Securities Exchange Act Liability Provisions: Overview.

### Initial Complaint Versus First Amended Complaint

It is so routine for plaintiffs to file an amended complaint in federal securities litigation that the parties often stipulate that the plaintiffs may file an amended complaint before the defendants file a motion to dismiss.

The parties generally expect amendment because the Private Securities Litigation Reform Act of 1995 (PSLRA) institutes a process for the court to appoint a lead plaintiff to oversee the class action. To eliminate the advantage of being the first plaintiff to file suit, the PSLRA provides a process for the orderly appointment of a lead plaintiff. That process directs courts to apply a rebuttable presumption that the lead plaintiff movant with the greatest economic stake in the outcome who also satisfies the typicality and adequacy requirements under Rule 23 of the Federal Rules of Civil Procedure (FRCP) should serve as the lead plaintiff (15 U.S.C. § 78u-4(a)(3)(B)(i), (iii)). Plaintiffs therefore usually file a simple initial complaint and then amend it by filing a more fulsome document after the court appoints the lead plaintiff (and the lead plaintiff selects lead counsel). For more on the lead plaintiff and lead counsel appointment process, see Practice Note, Commencing a Securities Class Action: Lead Plaintiff and Lead Counsel Appointments.

The initial complaint usually defines the action's contours to permit all parties interested in pursuing the case to move for the lead plaintiff and plead the cause of action sufficiently to toll the statute of limitations. The operative complaint for litigating the action is almost always the amended complaint.

Counsel filing initial complaints should remain cognizant of their FRCP obligations and ensure that the claims are not frivolous and that the factual contentions have adequate evidentiary support or are expected to have that support after further investigation and discovery. For more information on FRCP 11 sanctions, see Practice Note, Sanctions in Civil Litigation (Federal): Sanctions for Frivolous Pleadings, Motions, or Other Papers Under FRCP 11.

### Pleading Standards

The PSLRA establishes special rules governing the appointment of the lead plaintiff, the applicable pleading standards, settlement, and how the court evaluates whether a pleading is sanctionable.

The Securities Litigation Uniform Standards Act also affects pleading securities fraud cases by pushing those cases into the federal courts and preventing the simultaneous pleading of securities fraud cases and state law fraud cases.

### Pleading Securities Fraud Under Exchange Act Section 10(b)

In addition to the general pleading standards of FRCP 8(a), federal securities fraud claims must meet the heightened pleading requirements of FRCP 9(b), which requires the plaintiffs to:

- Specify the statements alleged to be fraudulent.
- Identify the speaker.
- State where and when the statements were made.
- Explain why the statements were fraudulent.

The PSLRA also imposes requirements that the plaintiffs state "the who, what, when, where, and how" of the alleged fraud (*In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003)). The plaintiffs must:

- Specify each statement alleged to have been misleading and the reasons why the statement is misleading.
- State with particularity all facts supporting allegations made on information and belief.
- State allegations of scienter with particularity and support them with facts that establish a strong inference that the defendant acted with the requisite state of mind. Scienter refers to a mental state embracing an intent to deceive, manipulate, or defraud and is an essential element of a securities fraud claim under Section 10(b) and Rule 10(b)-5.

(15 U.S.C. § 78u-4(b)(1)-(2).)

To meet these standards, counsel drafting the complaint should allege detailed information, including quoting directly from the documents containing the alleged misstatement or omission. The material quoted should be robust enough to put the alleged misrepresentation or omission in their relevant context. This generally means that plaintiffs include lengthy block quotes from the documents that serve as the basis of the complaint

© 2020 Thomson Reuters. All rights reserved. Use of Practical Law websites and services is subject to the Terms of Use (static.legalsolutions.thomsonreuters.com/static/agreement/westlaw-additional-terms.pdf) and Privacy Policy (a.next.westlaw.com/Privacy).

Case: 19-30088    Doc# 14070-4    Filed: 10/13/23    Entered: 10/13/23 20:31:44    Page 3 of 9

(see Materially False and Misleading Statements or Omissions). The complaint should likewise detail the fraud's factual narrative (see Scienter Allegations).

**Pleading Securities Act Claims**

Securities Act and Exchange Act claims under Section 10(b) differ in key respects. Section 10(b) of the Exchange Act requires the plaintiffs to prove reliance, causation, or knowledge and that the defendant acted with the intent to deceive, manipulate, or defraud. By contrast, Securities Act Sections 11 and 12 are generally regarded as imposing strict liability against the issuer and providing negligence-based remedies against other defendants, including the underwriter.

Although plaintiffs may base Securities Act claims on allegations of fraud, plaintiffs pleading Securities Act claims typically specifically disclaim fraud to avoid the heightened pleading burdens for fraud allegations under FRCP 9(b). If the complaint broadly adopts fraud allegations for a Securities Act claim, the court may apply a heightened pleading standard to all claims. To mitigate that risk, plaintiffs should consider dividing the complaint to distinguish the nonfraud allegations or otherwise separating some of or all the allegations based on the specific counts they support.

## Addressing the Unique Aspects of Securities Class Action Complaints

Although a typical securities class action must reflect the considerations and sections typical to all federal court complaints, it must also address unique nuances driven by the federal securities laws most relevant to:

- The introduction (see Introduction).
- The preliminary statement (see Preliminary Statement).
- Short sections describing:
  - jurisdiction and venue (see Jurisdiction and Venue); and
  - the parties (see Parties).
- Background allegations (see Background).
- Substantive allegations (see Substantive Allegations).
- Class allegations (see Class Allegations).
- Legal claims (see Legal Claims).
- A prayer for relief (see Prayer for Relief).

Depending on case circumstances, counsel may decide to vary from this structure, for example, combining sections or reordering them. Regardless of the precise order in which these appear, counsel should use headings and numbered paragraphs to delineate each of the above sections, including distinguishing subsections in outline form for clarity as appropriate.

### Introduction

Although not required, securities class action complaints typically begin with an introduction. The introduction typically is up to a few unnumbered paragraphs and asserts who is bringing the action and the sources of supporting facts.

### Preliminary Statement

Securities class action complaints should include a carefully drafted preliminary statement, which will generally be the most important part of the complaint. The preliminary statement should summarize the allegations and concisely tell the story of the defendant's misconduct. The preliminary statement serves not only as a rhetorical tool but also provides the lead plaintiff with the best opportunity to present the allegations. This is important and consistent with the Supreme Court's instruction that courts must view the complaint in its entirety when considering a motion to dismiss. (*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).)

Considering that the complaint's other sections are often technical, complex, and narrowly focused, the preliminary section gives counsel the opportunity to bring everything together like a preliminary statement in a legal brief.

The preliminary statement in most securities class action complaints ranges between seven and 15 pages.

### Jurisdiction and Venue

The jurisdiction and venue section tends to be boilerplate. It typically begins with a recitation of the claims asserted to help establish the existence of federal question jurisdiction because the claims arise from federal law (28 U.S.C. §§ 1331 and 1337). Exchange Act Section 27 also provides jurisdiction (15 U.S.C. § 78aa(a)).

Venue is equally straightforward because the plaintiffs can file a class action under the federal securities laws in any district where a substantial event or omission underlying the claim occurred (28 U.S.C. § 1391). The party should plead any additional facts sufficient to establish that the claims meet this requirement, including where the security

© 2020 Thomson Reuters. All rights reserved. Use of Practical Law websites and services is subject to the Terms of Use (static.legalsolutions.thomsonreuters.com/static/agreement/westlaw-additional-terms.pdf) and Privacy Policy (a.next.westlaw.com/Privacy).

Case: 19-30088    Doc# 14070-4    Filed: 10/13/23    Entered: 10/13/23 20:31:44    Page 4 of 9

trades or the defendants' business is located. Defendants rarely challenge venue but sometimes seek to transfer the case to a more appropriate venue, especially when other plaintiffs file a related action in another jurisdiction before the court appoints the lead plaintiff. To avoid arguments that another venue is more appropriate, counsel should pay due attention to this section even if it is short.

Counsel should also consider whether to include any other information about jurisdiction or venue based on the case's unique facts. For example, if the case involves international parties or events, counsel may plead facts establishing why plaintiffs have properly brought suit in the US. In rare cases, plaintiffs may need to allege additional facts to show that the federal securities laws apply to a non-traditional instrument or investment contract.

Altogether, this section is usually one or two pages.

## Parties

The complaint typically includes a section describing the parties. Counsel should decide whether to combine this section with allegations about other key persons like nonparty executives or witnesses.

When describing the lead plaintiffs and other named plaintiffs, the complaint should plead that they bought or sold the relevant security to show standing and support the court's exercise of jurisdiction. This may succinctly describe the lead plaintiff's sophistication and experience with investing. (See, for example, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-38, 749 (1975); *Licht v. Watson*, 567 F. App'x 689, 691 (11th Cir. 2014).)

Counsel should then describe individual defendants' role in the case and positions, including any facts that help establish control if the complaint asserts claims under Exchange Act Section 20(a) or Securities Act Section 15. A later section of the complaint typically should describe the individual defendants' specific misstatements, omissions, and other specific allegations about their involvement in the fraud or their motivations (see Substantive Allegations).

Counsel may expand this section to include allegations about other individuals involved in the litigation, usually under the header "Relevant Non-Parties." For example, allegations about a management level employee may be relevant to the question of what information was known within the defendant company, but the plaintiffs may have chosen not to name that individual as a defendant if they did not directly participate in the fraud. Counsel sometimes identify and describe outside parties. For example, it is common to describe other parties to a merger when relevant.

Many securities fraud cases rely on confidential witnesses to describe the true condition within the company or defendants' awareness of the allegations. Counsel sometimes use numbers to identify confidential witnesses (for example, CW-1, CW-2). This approach allows counsel to describe those witnesses with the appropriate detail without disrupting the later narrative in the complaint when alleging facts the confidential witnesses provided. For more information about working with confidential witnesses, see Practice Note, Commencing a Securities Class Action: Investigating Claims: Working with Confidential Witnesses.

## Background

In this section, the plaintiff should include the information relevant to understand the substantive allegations. This commonly includes information about the issuer's business and how the various business segments contribute to the issuer's overall financial condition. If the fraud only involves one segment of the business, counsel should put the relative significance of that business in context.

The length of this section varies dramatically across complaints based on the case's particular story. For example, if the complaint involves:

- False hyping of a new product, this section may describe key background information about the product launch and its supposed success and how the product fits into the issuer's overall business.

- A data security event or lack of internal controls, this section explains how those systems were relevant to the issuer's operations.

- A merger or other major transaction, this section may set out relevant information about the transaction's history.

- Accounting fraud or a failure to comply with other regulatory obligations, this section describes the relevant accounting standards or regulations.

Counsel must exercise judgment when organizing the allegations and carefully consider whether to allege certain facts in the Background or Substantive Allegations sections depending on what likely tells a more clear and compelling story to support specific claims.

© 2020 Thomson Reuters. All rights reserved. Use of Practical Law websites and services is subject to the Terms of Use (static.legalsolutions.thomsonreuters.com/static/agreement/westlaw-additional-terms.pdf) and Privacy Policy (a.next.westlaw.com/Privacy).

Case: 19-30088   Doc# 14070-4   Filed: 10/13/23   Entered: 10/13/23 20:31:44   Page 5 of 9

### Substantive Allegations

The lengthiest part of the complaint contains the factual narrative necessary to set out the alleged fraud. The section should provide enough information to place the fraudulent conduct in context, which typically means supporting each element of the alleged claims.

In Section 10(b) claims based on material misstatements and omissions, this includes allegations supporting:

- A material misrepresentation or omission (see Materially False and Misleading Statements or Omissions).
- A connection with the purchase or sale of a security, usually established when alleging jurisdiction (see Jurisdiction and Venue).
- Scienter (see Scienter Allegations).
- Transaction causation and reliance (see Transaction Causation and Reliance).
- Economic loss and loss causation (see Loss Causation and Economic Loss).

Counsel should endeavor to draft highly detailed allegations with plenty of information to establish the true condition within the company. This information may reflect:

- Information from confidential witnesses.
- Defendants' own admissions.
- Disclosures in other litigation.
- Requests for information under the Freedom of Information Act (FOIA) and other sources of public information.

Counsel sometimes use information that experts provide with or without naming that expert. However, it may be helpful to consider how the assigned judge would view these allegations, including based on the judge's familiarity with securities litigation. Counsel should also anticipate and allege facts to refute any innocent explanation that defendants may raise in a motion to dismiss, such as arguments based on the bespeaks caution doctrine or PSLRA safe harbor provisions (see Bespeaks Caution and PSLRA Safe Harbor).

For more on working with confidential witnesses, experts, and other sources of information to support a complaint, see Practice Note, Commencing a Securities Class Action: Investigating Claims.

### Materially False and Misleading Statements or Omissions

The section of the complaint setting out the materially false and misleading statements or omissions is among the more technically challenging components of the complaint to draft. Counsel sometimes prefer to plead the false statements or omissions throughout the story in the background section rather than carving out a separate section.

Plaintiffs use this section to show that that the defendant made or is responsible for a statement that omitted a material fact or was misleading about it (see, for example, *Stoneridge Inv. Partners, LLC v. Sci-Atl.*, 552 U.S. 148, 157 (2008)). The first few paragraphs should allege that the issuer defendant is the maker of any statement by or on its behalf by its management-level employees. The maker is the person or entity with ultimate authority over the statement's content and communication and is generally the proper defendant in private securities fraud lawsuits. (*Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142-43 (2011); but see *Lorenzo v. SEC*, 139 S. Ct. 1094, 1100-01 (2019).)

This section should also detail the alleged misstatements and omissions. It should set out the key information regarding who made the statement, when it was made, and why it was false or misleading. Counsel sometimes introduce each statement and then provide a block quote that identifies the statement's source to place it in context. Counsel who take this approach should:

- Clearly identify the specific portion of the statement the plaintiffs alleged is false and misleading, such as with bold and italic formatting.
- Include a paragraph after each statement explaining why the statement is false and misleading.

Determining which portion of a broader statement was false and misleading is often more art than science and requires a balancing act. Defendants may argue that block quotes are too cumbersome and not sufficiently particular to state a claim or seek to shift focus from the specific misstatement to other language in the block quote included only to serve as context. However, if counsel only include a narrow section as false, they risk dismissal because the court cannot and should not consider this section in isolation. Counsel therefore often choose to provide additional language to contextualize the statement rather than risk the conclusion that they cherry-picked statements out of context.

© 2020 Thomson Reuters. All rights reserved. Use of Practical Law websites and services is subject to the Terms of Use (static.legalsolutions.thomsonreuters.com/static/agreement/westlaw-additional-terms.pdf) and Privacy Policy (a.next.westlaw.com/Privacy).

Case: 19-30088   Doc# 14070-4   Filed: 10/13/23   Entered: 10/13/23 20:31:44   Page 6 of 9

To save space and reduce redundancy, counsel may identify an alleged misstatement or omission one time and then cross-reference it. However, defendants often attack this practice as impermissible puzzle pleading so counsel should use this approach sparingly and thoughtfully (see, for example, *Owen v. Jastrow*, 789 F.3d 529, 537-38 (5th Cir. 2015)).

**Bespeaks Caution and PSLRA Safe Harbor**

The PSLRA partially codified a judicial rule known as the bespeaks caution doctrine. This rule protects forward-looking statements, meaning statements predicting what will occur in the future, from allegations of fraud merely because those predictions did not occur. Forward-looking statements include revenue and income projections and management's plans for future operations. (15 U.S.C. § 78u-5(i)(1).)

The complaint therefore should include a short section arguing that the alleged misstatements do not fit within the safe harbor. Conclusory allegations do not suffice to prevent dismissal. The safe harbor allegations instead should include detailed factual allegations to show that the defendant:

- Failed to adequately label the statements as forward looking.
- Did not accompany the alleged misstatements with meaningful cautionary language that the PSLRA requires for the safe harbor to apply.
- Knew that the statements were false when it made them.

(See, for example, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010); *Howard v. Liquidity Serv., Inc.*, 177 F. Supp. 3d 289, 308-09 (D.D.C. 2016).)

Most courts recognize that a statement can have both forward-looking and present or historical meaning (see *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017) (collecting cases and concluding the safe harbor does not cover a false or misleading non-forward-looking statement embedded in a mixed statement)). If a defendant stated that an event will continue, the statement conveys both what is occurring and what is expected to occur. The complaint should then invoke this important limitation to the safe harbor and allege that any forward-looking statements were also misleading because they falsely conveyed information about the company's present true condition of the company.

**Scienter Allegations**

The complaint typically includes a section alleging that defendants acted with scienter.

The PSLRA requires plaintiffs to allege sufficient facts to support a strong inference of scienter. The inference must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged. While courts must consider innocent explanations for the alleged conduct, they may infer scienter from the facts. (*Tellabs, Inc.*, 551 U.S. at 314.)

The scienter section usually begins with an explanation that the issuer defendant is imputed with the scienter of its management-level employees. Counsel should generally follow that with subsections dividing allegations based on applicable theories of scienter for the relevant individual defendants, including allegations:

- Explaining and summarizing how an individual defendant knew specific information, including through confidential witness allegations (see Practice Note, Commencing a Securities Class Action: Investigating Claims: Working with Confidential Witnesses).
- Supporting an inference of scienter from motive and opportunity (for example, that defendants sold stock while the price was artificially inflated by the fraud or bought stock at less than fair value due to the fraud).
- Showing recklessness or supporting the core operations theory, meaning that the subject of the fraud was of so much importance to the company that defendants must have known the truth. These types of allegations often are found to be supportive of scienter but not sufficient to meet the strong inference standard standing alone, and as a result, counsel should plead them as mutually reinforcing of each other.

The specific approach to pleading scienter will vary dramatically across jurisdictions based on the differing approaches used by the different circuits in assessing whether there has been a strong inference of scienter. Plaintiffs should also allege facts showing that the defendant meant to defraud, knew the true facts were different from those conveyed, or was reckless about the possibility of defrauding. Jurisdictions vary in how they evaluate scienter, especially in how they define recklessness. However, the US Supreme Court has held that assessing whether there is a strong inference of scienter requires courts to assess all alleged facts collectively rather than in isolation (*Tellabs, Inc.*, 551 U.S. at 323).

© 2020 Thomson Reuters. All rights reserved. Use of Practical Law websites and services is subject to the Terms of Use (static.legalsolutions.thomsonreuters.com/static/agreement/westlaw-additional-terms.pdf) and Privacy Policy (a.next.westlaw.com/Privacy).

Case: 19-30088    Doc# 14070-4    Filed: 10/13/23    Entered: 10/13/23 20:31:44    Page 7 of 9

**Transaction Causation and Reliance**

Plaintiffs must establish a causal link between the fraud and some action that resulted in injury (see *Basic v. Levinson*, 485 U.S. 224, 243 (1988)). This is most often satisfied by proving reliance, meaning that plaintiffs made a decision in reliance on the defendants' fraud.

Plaintiffs can establish reliance through specific allegations that the defendants personally deceived the plaintiffs when they made the fraudulent statement. However, this would require each individual class member to make a similar pleading. Class action fraud complaints therefore allege that the lead plaintiff and class members are entitled to one of two reliance presumptions.

The Supreme Court endorsed the most common presumption in *Basic Inc. v. Levinson*, often referred to as the fraud on the market or *Basic* presumption, applicable in cases involving alleged misstatements. Under this doctrine, courts must presume that the market price of shares trading in well-developed markets reflect the publicly available information about the security and that investors rely on that market price when trading. (485 U.S. 224 (1988).) Plaintiffs typically recite information to allege that the relevant market was efficient, including that the security traded at high volumes, was listed on a major exchange, and was the subject of news coverage or analyst coverage.

The Supreme Court established the next most common presumption in *Affiliated Ute Citizens of Utah v. United States*, which applies when the allegations involve omissions. This presumption recognizes that the plaintiffs cannot directly prove that they relied on that which was not said so the requirement to prove reliance should be excused (406 U.S. 128 (1972)). The complaint should provide a short statement invoking this presumption when applicable.

**Loss Causation and Economic Loss**

Plaintiffs must plead that the defendants' misrepresentation or omission caused them to suffer an economic loss, which loss is typically realized when the stock price falls following a corrective disclosure or other publicly known event in which previously concealed risks materialized (*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005)). However, plaintiffs need not provide an estimate of losses at the pleading stage.

The complaint must also describe the plaintiffs' loss causation theory. Counsel typically include this in a stand-alone loss caution section but may also include it as part of the substantive allegations. While jurisdictions vary in their exact approach to loss causation, it is generally not necessary to establish in the pleadings that the stock price fell precisely because the fraudulent statements were shown to be false (see *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 472 (4th Cir. 2011)).

Most plaintiffs seeking to plead loss causation rely on either:

- The corrective disclosure theory by alleging that the market reacted negatively to a corrective disclosure of the fraud.

- The materialization of risk theory by alleging that the loss was foreseeable and caused by a materialization of a risk that the defendant's fraudulent statement concealed.

(*Carpenters Pension Tr. Fund of St. Louis v. Barclays, PLC*, 750 F.3d 227, 232-33 (2d Cir. 2014).)

Counsel should also consider that the circuit courts have different views regarding both how directly the corrective disclosure must reveal the fraud and how the materialization of fraudulently concealed risk functions as a theory of loss causation. The US Court of Appeals for the Second Circuit has observed that these two theories are not wholly distinct because the basic loss causation calculus remains the same. The market learns the truth from a corrective disclosure describing the precise fraud or through events constructively disclosing the fraud. (*In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262 (2d Cir. 2016).)

The loss usually is the result of the truth becoming known and the stock price falling so the complaint should describe the revelations and materializations of the risk. The complaint should also describe the resulting effect on the security's price. For example, in a securities fraud case based on a security breach, plaintiffs may allege loss causation based on a materialization of the risk theory. If so, they may plead that the defendants lied about their security systems and experienced losses when the deficient security system failed to prevent some negative event from occurring.

Counsel should consider whether to include commentary from analysts showing that the disclosure was unexpected given the company's prior disclosures. These allegations help establish materiality and plead that the fraud caused the investors' losses. Plaintiffs should think carefully about how these allegations fit with their theory of loss causation.

**Class Allegations**

A securities class action complaint must define the class and identify those exempt from the class definition.

7  Practical Law

© 2020 Thomson Reuters. All rights reserved. Use of Practical Law websites and services is subject to the Terms of Use (static.legalsolutions.thomsonreuters.com/static/agreement/westlaw-additional-terms.pdf) and Privacy Policy (a.next.westlaw.com/Privacy).

Case: 19-30088   Doc# 14070-4   Filed: 10/13/23   Entered: 10/13/23 20:31:44   Page 8 of 9

# Commencing a Securities Class Action: Pleading Claims

Classes generally consist of investors who engaged in the relevant transactions involving that security during the class period and who suffered an economic loss as a result. Counsel should also include a paragraph specifying any exclusions from the class. This paragraph should typically include a detailed explanation of the insiders or participants in the fraud that are excluded from participating in the class and anyone affiliated with the insiders.

A key part of the class definition often hinges on the relevant time period, which counsel also refer to as the class period. Counsel must articulate this definition thoughtfully as lead plaintiffs should ordinarily include a wide set of injured parties and plead the strongest possible set of claims without:

- Stretching to include claims that may distract from the litigation.
- Giving the defendants an opportunity to attack the claims as untimely.

The class period generally refers to the time period when the defendant made the false and misleading statements and ends with the revelation of the truth that negatively affected a security's value.

This section also sets out pleadings to satisfy Rule 23, for example, articulating why a class action is superior to other methods of adjudication and stating common questions of fact or law that are susceptible to class-wide determination.

For more on identifying the class period and class definition, see Practice Note, Commencing a Securities Class Action: Identifying Claims. For more on the legal framework for class actions, see Practice Note, Class Actions: Overview.

## Legal Claims

After the sections detailing the plaintiff's substantive factual allegations, the complaint should list each of the plaintiff's legal claims under separate headings, commonly referred to as counts. This section serves to formally recite the claims being brought and to clearly mark which claims are brought against which defendants.

Although this is usually a fairly short section, counsel should carefully research all possible claims against the defendant and ensure that they properly draft and support each element of every claim with sufficient factual allegations. To save space, plaintiffs may incorporate by reference prior paragraphs of its complaint into later sections, such as by incorporating the facts section into the legal claims section. However, counsel should ensure that they clearly state which facts support which claims against each defendant.

## Prayer for Relief

This short section describes what is being requested form the court. While often boilerplate, it requires thoughtful attention. In this section, the plaintiffs state:

- That they request to serve as class representatives.
- That their counsel be appointed as class counsel.
- What remedies they seek because of the litigation. The federal securities laws ordinarily entitle the plaintiff to monetary damages.

For more on drafting other sections of the complaint and related documents, see Practice Note, Commencing a Federal Lawsuit: Drafting the Complaint. For more on the mechanics and procedural requirements of drafting a complaint, see Commencing a Federal Securities Class Action Toolkit.

**About Practical Law**

Practical Law provides legal know-how that gives lawyers a better starting point. Our expert team of attorney editors creates and maintains thousands of up-to-date, practical resources across all major practice areas. We go beyond primary law and traditional legal research to give you the resources needed to practice more efficiently, improve client service and add more value.

If you are not currently a subscriber, we invite you to take a trial of our online services at legalsolutions.com/practical-law. For more information or to schedule training, call 1-800-733-2889 or e-mail referenceattorneys@tr.com.

