ROLNICK KRAMER SADIGHI LLP
Lawrence M. Rolnick *(pro hac vice)*
lrolnick@rksllp.com
Marc B. Kramer *(pro hac vice)*
mkramer@rksllp.com
Michael J. Hampson *(pro hac vice)*
mhampson@rksllp.com
Richard A. Bodnar *(pro hac vice)*
rbodnar@rksllp.com
Jeffrey Ritholtz *(pro hac vice)*
jritholtz@rksllp.com
Frank T.M. Catalina (*pro hac vice*)
fcatalina@rksllp.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

ST. JAMES LAW, P.C.
Michael St. James, CSB No. 95653
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

*Attorneys for the RKS Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>   - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>           Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>Chapter 11<br><br>**RKS CLAIMANTS' PROPOSED SCHEDULE FOR ADR TRACK AND 7023 TRACK**<br><br>**Hearing Information:**<br>Date:     October 17, 2023<br>Time:    10:00 a.m. (Pacific Time)<br>Place:    (Telephone or Video Only)<br>           United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102 |

The RKS Claimants are a collective of over 750 individual claims represented by common counsel.[1] As this Court is aware, for the better part of a year, the RKS Claimants have consistently pushed the claims resolution process forward through a series of objections and motions. The RKS Claimants have absolutely no interest in delay for delay's sake, but they have every interest in a fair, transparent, reasonable, effective, and ultimately supportable process that will avoid a sideshow of interminable appeal.

The group that has ultimately expended the plurality, if not the majority, of time, effort, and resources on this matter are the claimants writ large. Claimants filed their own claims. Claimants gathered and submitted their trade data. Hundreds of claimants retained counsel. Hundreds of claimants have met omnibus objections, in a variety of forms. Thousands of claimants received offers, and have spent, collectively, likely thousands of hours considering those offers, countering, and the like. And it is ultimately the claimants whose rights are most affected by the procedures and process put in place.

And claimants, writ large, have received conflicting information and changes in approach in this matter repeatedly. But in July, at long last, an amendment and objection deadline was set paving a path to resolution of claims – and claimants were notified appropriately. Not a single claimant objected to that Court order, asked to be heard, or otherwise sought to oppose its entry.

The RKS Claimants respectfully submit that the proposed schedule submitted herewith as **Exhibit A** is the best schedule to protect claimants' rights and to continue on an orderly and efficient path to claims resolution. Debtor and PERA have their own unique interests around class certification. But the class action device is meant to be simply a device of aggregation – aggregation, in this case, of the claims that are known and identified, and that have been asserted by claimants who have advanced and protected their claims to date. The potential class certification process should neither disrupt the current schedule established by the Court, nor should it be treated as a mere formality, with a rushed and ineffective discovery and briefing

---

[1] The RKS Claimants represent approximately 25% of all unresolved claims by number, if not more at this point.

process.² Accordingly, the RKS Claimants' proposed schedule seeks to establish a fair and efficient process for claimants and is based upon the following general principles:

    **1.**     **Adherence to the Prior Order**. This Court's July 28, 2023 Order Authorizing Amendment and Objection Procedures For Securities Claims (the "July 28 Order") should be adhered to. That order provided a deadline to amend (without leave of court), and a deadline to adopt others' amendments (or the PERA complaint) if a claimant *chose to do so*. This procedure is critical to the ADR process, the post-ADR process, and the asserted class certification process.

    **2.**     **Sufficiency First**. As a matter of practicality, fairness to claimants, and the law, sufficiency objections should occur *before* class certification *begins*, and resolution of sufficiency objections *must* occur *before* the opt out deadline.

    **3.**     **Full Class Discovery**. Class certification discovery and briefing is not *just* about the rights of defendant-debtor and putative class representative – it is also a critical vehicle to provide claimants/class members information *about the proposed class action*. Full class certification discovery, including discovery of and as to the proposed lead plaintiff should occur.

    **4.**     **The ADR Procedures Should Continue**. The ADR Procedures have been effective when used. Thousands of claimants have reached consensual resolution with PG&E via the procedures. Over two dozen claimants represented by RKS have reached consensual resolution with PG&E via the ADR procedures. The ADR procedures, in their full form, should continue.

The RKS Claimants briefly address each of these points below.

## ARGUMENT

**I.**     **The Parties Should Adhere to the July 28 Order**

This July 28 Order should be adhered to by Debtor, PERA, and claimants. That order provided a deadline to amend (without leave of court) of October 6th. The Order also provided an

---

² PERA's proposed schedule contains not one, but two apparently mandatory mediation sessions. But PERA (and any other claimant) can engage in voluntary mediation with PG&E at anytime. The schedule is also rushed to a point of prejudicing claimants and potentially debtor, setting an appeal-trap that this Court should decline to enter. Having contributed to a nearly *year* delay in this matter, PERA's newfound focus on reckless speed should be balanced with prior acts.

October 13th deadline to adopt allegations if a claimant *chooses to do so*.[3] Contrary to assertions by certain claimants, the Order does not *require* a claimant to take any action at all if it does not wish to. Claimants who believe they are best served by PERA's complaint – whether a class is ultimately certified or not – may have adopted PERA's complaint.[4] Other claimants may take the view that their claim form is sufficient without amendment or adoption. Whether a class is ultimately certified or not, this process has moved claims along. Debtor was provided an amendment deadline to avoid a moving target. In turn, Debtor is under Order to make sufficiency objections by *December 13th* to effectively all claims – which will presumably include the PERA complaint. Claimants across the spectrum benefit from these critical steps forward.

As this Court is aware from the motions of the RKS Claimants, securing an objection deadline has been no easy feat for claimants. The Court should not undo any of that progress now.

In addition, as it appears all acknowledge, including putative lead plaintiff, consensual resolution via the ADR procedures is the simpler, cheaper, and preferred route. The July 28 Order should also be followed (and not modified) as a practical matter – this Court properly required notice of its order be sent to every claimant, and that appears to have occurred. Claimants have relied on that Order in their actions to date, including hiring counsel to meet the October 6th and 13th deadlines and in anticipation of the December 13th deadline. Changing course, and re-noticing claimants of the course change will create further delay.

II. **As Is the Case In All Securities Fraud Class Actions, the Court Should Adjudicate the Sufficiency of PERA's Claim Before Addressing Class Certification**

In every single major securities fraud case, motions to dismiss (which are somewhat akin to the sufficiency objections here) occur *before* class certification briefing. The RKS Claimants are not aware of a single significant case (no less one with fully known and appearing class members) where objections to the sufficiency of the complaint (*i.e.*, the motion to dismiss) occurred *after* (or in parallel with) class certification. *See, e.g.*, *In re Apple Inc. Sec. Litig.*, No.

---

[3] As of this writing, the claims register and docket reflects that at least 770 claims adopted the RKS Amendment. Several claimants have adopted the PERA complaint in the District Court Class Action, which PERA has also asserted cannot be adopted.

[4] As of the time of this writing, a few claimants did exactly that. *See, e.g.*, Claim 110004.

4:19-CV-2033-YGR, 2022 WL 354785, at *3 fn. 3 (N.D. Cal. Feb. 4, 2022) (class certification decision noting motion to dismiss decision two years prior).[5]

There are strong reasons for any class certification *briefing* to await a sufficiency objection decision and exceptionally strong reasons for any *opt out deadline* to be after a sufficiency objection decision (and corresponding indication by putative lead plaintiff of its plans).

*First*, class certification briefing should wait for a sufficiency decision. The sufficiency of PERA's claim will be tested on the current schedule by a sufficiency objection on December 13th. It is a waste of resources for all involved to brief class certification when various parts of PERA's claim may be eliminated by the sufficiency objection. The waste of resources will not just be Debtors' (and PERA's). Claimants will need to be actively reviewing the class certification process precisely because the evidence and issues advanced will inevitably touch upon issues claimants themselves will need to argue.

Further, the scope of the claims PERA actually asserts will, apparently, only be made clear through a sufficiency objection process. PERA remained mute as to omnibus objections that directly raised the issue whether PERA intended to bring Section 10b-5 claims with respect to Debtors' debt securities. (*See, e.g.*, Dkt. No. 11168 (opposition to 11th Securities Omnibus Objection, which omnibus objection was premised on assertion putative class plaintiffs did not assert Exchange Act claims on debt securities, based in part on statements of PERA's counsel).) It remains unclear *to this day* whether PERA is bringing claims for all the securities on the claim form. Even PERA's own class definition calls into question what claims are included, and appears to exclude claims already adjudicated by the Court. (*See* Dkt. No. 13865 at 1 (proposing to define class as including only those claims that were "timely submitted" and that "have not otherwise

---

[5] *Vignola v. FAT Brands, Inc.*, 2019 WL 13038337, at *3 (C.D. Cal. Dec. 3, 2019) is instructive. There, the Court struck plaintiffs' filing of a class certification motion before resolution of the motion to dismiss. Although that case was governed by the PSLRA, which does not govern these proceedings, the Court also observed that the goals motivating the PSLRA were served by resolution of a motion to dismiss first, followed by class certification. *See also Schlagal v. Learning Tree, Int'l*, No. CV 98-6384 ABC (EX), 1999 WL 672306, at *2 (C.D. Cal. Feb. 23, 1999) ("The Court had delayed ruling on Plaintiffs' motion to certify the class, filed on November 5, 1998, until it ruled on the motion to dismiss.").

been resolved.").) The Court should not adjudicate the certification of a class until it is clear what claims the putative class will be asserting.

*Second*, concurrent briefing of dismissal and class certification motions is inefficient and pointlessly entangles the issues. Experts will assess and provide evidence whether a common model under *Comcast Corp. v. Behrend,* 569 U.S. 27 (2013) can apply based on the claims, the misstatements, and the corrective disclosures in the case. Concurrent briefing runs the significant risk that the sufficiency objection will alter the most relevant evidence for class certification – forcing a second round of evidence and briefing (or clouding the issue for appellate review).[6] This is a serious risk of added delay that can be obviated by taking this matter stepwise in its normal course: sufficiency first, certification second.

*Third*, even if the Court is considering a concurrent approach, the opt out deadline *cannot* occur before a sufficiency objection is ruled upon as a matter of fairness and to uphold the constitutional principles that opt out rights are associated with. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 798 (1985) (in cases seeking money judgments, "[t]he Due Process Clause requires notice, an opportunity to appear in person or by counsel, an opportunity to "opt out," and adequate representation."). Rule 23 (and the bankruptcy equivalent, Rule 7023) cannot be used to alter the substantive rights of the parties. *See* 28 U.S.C. § 2072(b) (federal rules "shall not abridge, enlarge or modify any substantive right."). Normally, this is no issue for opt out rights as the parties to the matter are the issuer, the proposed lead plaintiff, and then only absent class members. Here, it's the precise opposite. The class members are known; they have done all the work to date to advance their claims (providing data, responding to requests, responding to offers, etc.). There may well be claimants still in an active ADR process when the sufficiency objections are ruled upon.

---

[6] In *In re Apple Inc. Sec. Litig.*, No. 19-CV-02033-YGR, 2020 WL 6482014, at *3 (N.D. Cal. Nov. 4, 2020), the initial lead plaintiff, equivalent to PERA here, filed a "far-ranging" complaint. After the motion to dismiss was granted in part, paring the case down to a smaller subset of the original complaint, *both* the lead plaintiff *and* lead counsel were changed and then class certification proceeded apace, eventually resulting in certification being granted. *Apple* highlights that the results of the motion to dismiss (here, the somewhat similar sufficiency objections) may alter the class certification process in a real way.

PERA's proposal would have a claimant make a decision on whether to divest itself of authority over its claim (opt out or not) before, potentially, the claimant even gets to *see PERA's response* to a sufficiency objection. Worse still, a claimant may not even know the full scope of PERA's claims under PERA's proposed schedule. Thus, a claimant may choose to remain in the class, only to learn after the fact that PERA has abandoned, or never asserted in the first place, its claim.[7] The claimants here are not absent class members for whom, but for the class device, their claims would be lost. The opposite is true here. But for the class device, the claimants are known, have authority over their claims, have received individual offers to settle from Debtor, and have the substantive right to act on that offer and engage in other procedures until a class is certified and they opt out (or not). Claimants deserve the most information before making that decision, nothing less.[8]

### III. The Court Should Provide Time For Full Class Discovery.

Class certification discovery and briefing is not *just* about the rights of defendant-debtor and putative class representative – it is also a critical vehicle to provide claimants/class members information about the proposed class action, the lead plaintiff, and the scope of the case.

Rule 23 requires the proponent of the class to come forward with evidence to satisfy every prong of the analysis. A class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, (1982). Because a rigorous analysis inherently includes the need for discovery into each element, factual discovery related to a class action is both appropriate and necessary. Anything less only invites delay via successful appeal. PERA's schedule appears to *completely*

---

[7] Indeed, since the Court has allowed the 7023 process to move forward, the proposed lead plaintiff has allowed claims to be extinguished through the omnibus objection process without any attempt to preserve them on behalf of putative class members – *see, e.g.*, PG&E's unopposed Twenty-Fifth Omnibus Objection.

[8] The resolution of the sufficiency objection and PERA's intended next steps are critical information to a claimant deciding whether to remain in the class or opt out of the class and seek separate counsel. PERA itself has abandoned class action cases before. *Compare Harari v. PriceSmart, Inc.*, No. 19-CV-958 JLS (LL), 2019 WL 4934277, at *1 (S.D. Cal. Oct. 7, 2019) (appointing PERA as lead plaintiff); *with* 19-CV-958 ECF No. 29 (granting motion to dismiss without prejudice and inviting amendment – but PERA filed no amendment and the case ended).

*ignore* fact-based discovery of proposed lead plaintiff. Courts have denied certification based on that factual discovery, and that discovery has led to revelations fatal to class certification in a number of cases. *In re Groupo Televisa Sec. Litig.*, No. 18 CIV. 1979 (LLS), 2020 WL 3050550, at *8 (S.D.N.Y. June 8, 2020) (denying class certification and disqualifying lead plaintiffs based on additional trading discovered during fact-related class certification discovery); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 160 (S.D.N.Y. 2010) (holding putative lead plaintiff "cannot be named class representative" based on specific fact issues, including issues of undisclosed representation only brought forth in fact discovery); *Williams v. Block one*, No. 20-CV-2809 (LAK), 2022 WL 5294189, at *7 (S.D.N.Y. Aug. 15, 2022) (upon "further reflection and a much fuller record" refusing to certify a class based on the location of lead plaintiffs' purchases); *Stoyas v. Toshiba Corp.*, No. 2:15-CV-04194 DDP-JC, 2022 WL 220920, at *4 (C.D. Cal. Jan. 25, 2022) (class certification denied based on transaction information specific to proposed lead plaintiff); *In re Allergan PLC Sec. Litig.*, No. 18CIV12089CMGWG, 2020 WL 5796763, at *6 (S.D.N.Y. Sept. 29, 2020) (class certification denied on adequacy grounds based on information about representation discovered during fact related class certification discovery).

More generally, discovery of a proposed lead plaintiff is both allowed and necessary as to reliance. *Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 CIV. 2106 (ER), 2018 WL 2958361, at *6 (S.D.N.Y. June 13, 2018) ("Indeed, both prior to and following the Supreme Court's decision in *Halliburton II*, courts have permitted defendants to challenge the fraud-on-the-market presumption at the class certification stage by demonstrating, on an individual basis, that the lead plaintiff did not rely on the integrity of a stock's market price in trading in that security." (collecting cases)). Claimants are entitled to this information as well. None of the proposed lead plaintiffs provide information on whether they, or an investment adviser, directed the trading at issue here. *See id.* 2018 WL 2958361, at *4 (the court "may look to a non-party investment adviser's knowledge in determining reliance, where that investment adviser invests on behalf of institutional plaintiffs."). Indeed, without this information, it is not clear if the investment advisers they used (if they used any) may be *other claimants in this very case*.

The RKS Claimants schedule also builds in short periods for non-PERA claimants, such as the RKS Claimants, to file their own papers with respect to the issues being briefed on class certification and to participate in discovery. The issues Reorganized Debtor and PERA will litigate over are likely to have spillover effects on all claimants, and claimants should have the right to, at minimum, reserve their rights on various issues, and to state their positions contra to PERA and Reorganized Debtors as needed.[9]

### IV. The ADR Procedures Should Continue

The ADR Procedures have been effective when used. Thousands of claimants have reached consensual resolution with Reorganized Debtors via the procedures. Over two dozen claimants represented by RKS have reached consensual resolution with Reorganized Debtors via the ADR procedures. The ADR procedures, in their full form, should continue.

In ruling on the 7023 motion, this Court contemplated an approach whereby class certification would act as a "catchall" for those who did not resolve via the ADR procedures and those who did not hire separate counsel – an approach based on efficiency when looking ahead to discovery and trial. The ADR procedures remain the most effective interim means to move claims to resolution, but PERA's proposed rushed timeline will interfere with this process. A sense of timeline is important. Debtor made numerous offers to claimants by the August 15 deadline in the July 28 Order, with response deadlines in mid-September. Many claimants countered at or around the response deadline – RKS represents some of those claimants now. The ADR procedures explicitly contemplate Debtor has 21 days to counter back (or accept) and that process can continue over several rounds. That process must be allowed to continue as sufficiency objections are briefed. In addition, some RKS claimants are actively scheduling mediations. In the same vein, mediations can be an efficient way of moving the claims forward to consensual resolution.

---

[9] PERA's schedule is divorced from any reality as to discovery timing. Following it would severely prejudice Claimants. PERA's schedule appears to contemplate a mad rush through discovery to get to, not a real summary judgment procedure, but rather a "second" mediation. This rush is predicated, it appears, on PERA accepting documents produced in a derivative action and not much more. The RKS Claimants have absolutely no intention of accepting just the documents produced in a related action and intend to take full and fair discovery of PG&E when the time comes.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Case: 19-30088    Doc# 14071    Filed: 10/13/23    Entered: 10/13/23 22:05:35    Page 9 of 14

Finally, the ADR procedures allow PG&E to make omnibus objections, including for failure to comply with the ADR procedures. These objections can act to spur claim resolution; these objections also should continue alongside the sufficiency objections (which are targeted at a completely different set of issues).

**CONCLUSION**

The RKS Claimants respectfully submit their proposed schedule should be adopted.

Dated: October 13, 2023　　　　　　　　　　ROLNICK KRAMER SADIGHI LLP

By:　*/s/ Richard A. Bodnar*

*Attorneys for the RKS Claimants*

**[EXHIBIT A FOLLOWS]**

# EXHIBIT A

## RKS Claimants' Proposed Schedule

**_Step 1: Adoption._**

**October 13, 2023**: Deadline for all claimants to adopt the PERA claim[10] or adopt a different claim or decide to take no further action (subject to the Amendment Order procedures).

**Justification**: The Court has already ordered this deadline and numerous claimants have met it.

**_Step 2: Sufficiency Objection_**

**December 13, 2023**: Objection Deadline. Outside limit of PG&E's Sufficiency Objections to all claimants (subject to the Amendment Order procedures).

**Justification**: The Court has already ordered this deadline. (To accommodate ease of briefing, the RKS Claimants would consent to all objections being due on December 13, 2023 (instead of piecemeal December 6, 12, and 13) assuming sufficient time for opposition.)

**Note as to Alternative Schedules**: Any schedule should adhere to this critical deadline. The Objection Deadline was heavily litigated by the RKS Claimants, among others (but not including PERA), for effectively a year. The Objection Deadline *must* hold to allow Claimants to move their claims forward. Any change will undo almost a year of progress.

**_Step 3: A Case Management Conference_**

**At the Court's discretion**, with the RKS Claimants suggesting **December 19, 2023** (an already set hearing date).

**Justification**: The Court's order explicitly contemplates a CMC to propose a briefing schedule. A CMC is necessary, in the wake of Debtor's objections, to set a unified briefing schedule, and potentially page limits and other ground rules.

---

[10] The number of claimants who ultimately adopt the PERA claim (or who do something else) will also serve as a relevant straw-poll for all parties as to the composition of PERA's proposed class, and will form a relevant part of the typicality, adequacy, and predominance analysis. As of this writing, it may well be below 40.

ROLNICK KRAMER SADIGHI LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020

Case: 19-30088    Doc# 14071    Filed: 10/13/23    Entered: 10/13/23 22:05:35    Page 11 of 14

**Note as to Alternative Schedule**: A CMC is clearly contemplated by the July 28 Order and should be built into any schedule.

**Note as to Debtor Schedule**: The Debtor's schedule contemplates a CMC. Insofar as Debtor and the various claimant sets who wish to participate can negotiate a briefing schedule without a CMC, including page limits and ancillary issues, the RKS Claimants would be prepared to agree to forego a CMC or have it limited in scope.

### *Step 4: Opposition to Sufficiency Objections*

**60 days after the CMC or March 11, 2024, whichever is <u>earlier</u> (assuming a CMC occurs before March 11, 2024):** Claimants' oppositions to Sufficiency Objections.

**Justification**: Claimants will have received Debtors' sufficiency objections by December 13th, this provides appropriate time for Claimants to respond to those objections given their likely length, complexity, and intervening holidays.

**Note as to Debtor Schedule**: The Debtor's schedule allows approximately 30 days for claimants to oppose their sufficiency objection, a time period encompassing the end-of-year holidays, while allowing 45 days for Debtors to reply. Particularly given the holidays, the RKS Claimants submit this truncated opposition turnaround time unduly burdens claimants.

### *Step 5: Replies as to Sufficiency Objections[11]*

**30 days after Claimants' oppositions are due, moved to the Friday of that week, e.g., if March 11, 2024 oppositions are due, April 12, 2024:** PG&E reply briefs in support of the sufficiency objections.

---

[11] The time for opposition and reply is a primary divergence between the Reorganized Debtor and the RKS Claimants. The RKS Claimants respectfully submit that this divergence is limited in scope compared to fundamental structuring issues such as sufficient-first or certification-first, and may well be resolved by agreement around or before the CMC.

*Step 6: Argument and Decision*

**As soon as the Court is available and ready to hear argument, which the RKS Claimants request be no later than May 2024:** Oral argument, or if the Court declines oral argument, taking the matter under submission.

**Sufficiency Objection** *decision* **to follow per the Court's schedule.**

*Parallel ADR Procedures Preserved:*

*Nothing in the above steps shall eliminate any of the ADR procedures, including: the right of PG&E to make omnibus objections for omnibus objection reasons (including non-compliance with the ADR procedures); the offer-counter process; or the mediation process.*

*Step 7: Class Certification*

**Class Certification Schedule:**

**14 Days After Court Issues Ruling on Sufficiency Objection**: PERA files motion for class certification and any affirmative expert reports, as in the usual course of class certification. Within *21 days* of this motion, any claimant may file a reservation of rights or contestation of the applicability of PERA's evidence, or may oppose the motion for claimant-related reasons.

**Justification**: Claimants must be afforded the time and opportunity to take a position as to the provided evidence in favor of class certification. This is because (1) class certification decisions can have an effect on all claimants, even those outside the class; (2) PERA's proffered "evidence" may harm claimants' claim value. Critically, in the Rule 23 context, class members can intervene at any time under Rule 24. One of the reasons class members *may* seek to intervene is if the Class takes a position that harms those claimants' interests.

**21-90 Days After Motion**: PG&E conducts discovery on PERA, experts and relevant third-parties (if any) relating to class certification. As explained above, this is not a simple task and provides Claimants extremely relevant information. Claimants who made a relevant filing *may* access such discovery and/or be involved in the discovery process, subject to reasonable limits.

**Justification**: Claimants may be affected by this process and deserve the ability to be involved in it.

**120 Days After Motion**: PG&E's Opposition and Expert reports due. Within *21 days* of this opposition, any claimant may file a reservation of rights or contestation of the applicability of PG&E's evidence, or may join the opposition for claimant-related reasons.

**21-45 Days After Opposition**: PERA conducts discovery of PG&E's experts. Claimants who made a relevant filing may access such discovery and/or be involved in the discovery process, subject to limits of reasonableness.

**45 days after Opposition**: PERA's reply due.

**TBD** - Hearing on motion for class certification as soon as the Court is available and ready to hear argument.

**Assuming a grant of certification**, lead plaintiff(s) to propose a notice within 14 days, Debtor and/or claimants to suggest edits, or oppose issuance of notice and propose edits to the Court within 14 days of the proposed notice.

*<u>During Class Certification, Merits Discovery</u>*

*Nothing in the Class Certification related steps shall prevent the Reorganized Debtor and the Claimants from moving forward with additional procedures and discovery.*