1      UNITED STATES BANKRUPTCY COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3      -oOo-

4  In Re:                          ) Case No. 19-30088
                                   ) Chapter 11
5  PG&E CORPORATION AND PACIFIC    )
   GAS AND ELECTRIC COMPANY        ) San Francisco, California
6                                  ) Tuesday, October 17, 2023
          Reorganized Debtors.     )10:00 AM
7  _____ )
                                   STATUS CONFERENCE REGARDING
8                                  SECURITIES PLAINTIFFS' MOTION
                                   FOR THE APPLICATION OF
9                                  BANKRUPTCY RULE 7023 AND THE
                                   CERTIFICATION OF A CLASS OF
10                                 SECURITIES CLAIMANTS. FILED
                                   BY SECURITIES LEAD PLAINTIFF
11                                 AND THE PROPOSED CLASS
                                   [13865]

12

13          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE DENNIS MONTALI
              UNITED STATES BANKRUPTCY JUDGE

14

   APPEARANCES (All present by video or telephone):
15  For the Reorganized        RICHARD W. SLACK, ESQ.
    Debtors:                   Weil, Gotshal & Manges LLP
16                              767 Fifth Avenue
                                New York, NY 10153
17                              (212)310-8000

18                             JOSHUA G. HAMILTON, ESQ.
                                Latham & Watkins LLP
19                              10250 Constellation Boulevard
                                Suite 1100
20                              Los Angeles, CA 90067
                                (424)653-5500

21  For PERA:                  THOMAS A. DUBBS, ESQ.
22                              Labaton Sucharow LLP
                                140 Broadway
23                              New York, NY 10005
                                (212)907-0700

24

25

```
1   For PERA:                MICHAEL S. ETKIN, ESQ.
                             Lowenstein Sandler LLP
2                            One Lowenstein Drive
                             Roseland, NJ 07068
3                            (973)597-2500

4   For RKS Claimants:       FRANK T.M. CATALINA, ESQ.
                             Rolnick Kramer Sadighi LLP
5                            1251 Avenue of the Americas
                             New York, NY 10020
6                            (212)597-2800

7

8

9

10

11

12

13

14

15

16

17

18  Court Recorder:          LORENA PARADA/ ANKEY THOMAS
                             United States Bankruptcy Court
19                           450 Golden Gate Avenue
                             San Francisco, CA 94102
20

21  Transcriber:             RIVER WOLFE
                             eScribers, LLC
22                           7227 N. 16th Street
                             Suite #207
23                           Phoenix, AZ 85020
                             (800) 257-0885
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

**eScribers, LLC**

1   SAN FRANCISCO, CALIFORNIA, TUESDAY, OCTOBER 17, 2023, 10:00 AM

2                                  -oOo-

3       (Call to order of the Court.)

4           THE CLERK:  Court is now in session, the Honorable

5   Dennis Montali presiding.  Calling the matter of PG&E Corp.

6           THE COURT:  Morning.  Morning, Mr. Slack.

7           MR. SLACK:  Good morning, Your Honor.

8           THE COURT:  Or good afternoon for you, I guess.

9           MR. SLACK:  That's true.  That's true.

10          THE COURT:  (Indiscernible).  Huh?

11          MR. SLACK:  I was going to -- I was going to say, Your

12  Honor, if we could bring in Joshua Hamilton from Latham &

13  Watkins who's going to be joining me today.

14          THE COURT:  Okay.  Ms. Parada, do you have Mr.

15  Hamilton in the -- waiting?

16          THE CLERK:  Yes, I see him on the list.  I'll bring

17  him in now.

18          THE COURT:  All right.  Mr. Dubbs, would you state

19  your appearance.  Or Mr. Etkin, you can --

20          MR. DUBBS:  Good morning, Your Honor.

21          THE COURT:  Well, whichever of you is going to make

22  the argument, or both of you, Etkin, Dubbs, state your names.

23          MR. DUBBS:  This is Mr. Dubbs.  Thomas Dubbs from

24  Labaton for PERA.  Good morning, Your Honor.

25          THE COURT:  Morning.

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 3
of 61

1          MR. ETKIN:  Good morning, Your Honor.

2          THE COURT:  Mr. Hamilton.

3          MR. HAMILTON:  Morning, Your Honor.

4          MR. ETKIN:  Michael Etkin --

5          THE COURT:  Okay.

6          MR. ETKIN:  (Indiscernible) sorry.

7          THE COURT:  I'm just being polite with everybody.  Mr.

8  Etkin, good morning.

9          MR. ETKIN:  Good morning, Your Honor.

10          THE COURT:  Mr. Hamilton.

11          MR. ETKIN:  Good to see you.  I'm joining, but

12  primarily given the subject matter of today's conference, Mr.

13  Dubbs is going to handle it on behalf of PERA.

14          THE COURT:  Mr. Dubbs, you can leave your camera off

15  if you want, or you can leave it on, turn it on.  It's up to

16  you.

17          Well, Mr. Etkin, the same as at a prior hearing, you

18  don't need to stay on the (indiscernible) if you don't want to.

19  You're welcome to.  I don't mind looking at you.  But if you

20  fall asleep, I'll notice it.

21          I do have a couple of preliminary questions before I

22  take the argument.

23          Oh, well, do we have -- wait a minute.  Do we have an

24  appearance from RKS and Mr. Bodnar or anyone else?  Anyone from

25  RKS appearing today?

1    THE CLERK:  Your Honor, I just received an email from

2    Mr. Bodnar's firm requesting the Zoom link.  I will send that

3    to them now.

4    THE COURT:  Okay.  Well, let me take care of a couple

5    of preliminaries.

6    Mr. Slack, I see that you have uploaded the orders

7    dealing with the twenty-sixth omnibus objections and my

8    disposition of the PERA so-called objection, and I plan to sign

9    those orders right after the hearing.  Are there any last-

10   minute changes or any additional folks that got to you and

11   saved the day, or is the order ready to go?

12   MR. SLACK:  The order is ready to go, Your Honor.  And

13   as Your Honor alluded to, just to be clear on the record

14   because we did get some -- we did get some requests to make it

15   clear that the order we submitted, even though we didn't get

16   any formal objections or informal objections, there were people

17   who took the opportunity, as we said in our objection, that if

18   they responded to the offers, we'd withdraw them.  So we've

19   identified those in a report to Your Honor.  And our exhibit,

20   in fact, takes those people off of the exhibit.  And we're no

21   longer pressing the objection with respect to those people.

22   THE COURT:  Okay.  Well, I certainly gleaned that from

23   the paper filed by CalPERS' counsel.  But the other ones, there

24   was not a filing.  And so it was fine.  I'm glad we got it

25   taken care of.  And then those orders will just be entered.

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 5
of 61

1   And pursuant to my docket text, I'm not going to act anything

2   further on it unless we have some last-minute need to

3   accommodate someone.

4        I have a request for Mr. Dubbs and Mr. Etkin.  Mr.

5   Etkin, you've been in this case for a long time, and I think

6   what I'd like you and Mr. Dubbs to do going forward, if -- this

7   is no criticism of your local counsel, Ms. Michelson, who I've

8   known for years, but I'd like the signature of the brief on the

9   page so I know who to blame if there's an issue and --

10        MR. ETKIN:  Okay.

11        THE COURT:  -- what poor Ms. Michelson, as her name

12  appears on everything you file and everybody else's names, but

13  I don't make it a habit of criticizing, and hopefully I don't.

14  But if there are issues, I like to know who's the principal

15  author.

16        But I want to turn to the merits.  And I have to say,

17  this is a rarity for me to complain about what, Mr. Etkin, you

18  or Mr. Dubbs, did, but I'm going to complain.  I waited and

19  waited for something to come in.  I watch the docket

20  faithfully.  And nothing from PERA.  Nothing from PERA.  And I

21  realized that there some -- it was perhaps a no meeting of the

22  minds and the efforts to meet-and-confer.

23        So finally, I guess it was day before yesterday, I get

24  a filing from the debtor, Mr. Slack, and I get -- and I will

25  have to confess to Mr. Slack, I didn't read all twenty-seven of

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 6
of 61

1 his exhibits, or yet, but I read the papers. But I didn't see

2 Exhibit 21, which was your term sheet, or your proposal. And

3 it was only when Ms. Grassgreen filed something for her client

4 that I saw that was the -- I shouldn't have called it a term

5 sheet, maybe that's the wrong word, from you. And I thought,

6 well, why didn't I know about that until one day before the

7 hearing?

8 So last night, at dinnertime or whatever, I got the

9 filing from you. And I'm not asking you to do anything, except

10 just be mindful that when some very substantive things come in

11 at the last minute, it's a challenge for me to keep up with it.

12 And that being said, I've got a couple of very, very

13 fundamental questions.

14 The first one probably is more substantive than

15 anything else. And again, if Mr. Dubbs would rather answer

16 this, that's okay. But in the filing of yesterday, which is

17 the -- we'll call the securities (indiscernible) response, the

18 statement, it's made right on page 2 in the second or third

19 paragraph of the argument, that they, meaning the debtors, are

20 not correct in saying that the PSLRA controls. And the

21 argument goes on, the Bankruptcy Rules control. Okay. That's

22 a position. I don't think I'd heard that before.

23 But then the next sentence says, to the extent the

24 PSLRA applies in bankruptcy, a modification is warranted.

25 Well, it either applies or it doesn't. And if you really

1  believe that the PSLRA doesn't apply, I don't know how you can

2  sort of say, well, just apply it partway.

3        So I just say to you, if you really believe that the

4  law and the Bankruptcy Procedures -- I won't say preempt PSLRA,

5  but simply replace in the bankruptcy setting, then that's your

6  position.  And then you've got to convince me if that's

7  correct.  And it hasn't -- I don't think you've cited any case

8  law that says that and any authority for that.

9        So it's just a -- it's sort of a the-night-before-the-

10  hearing-I'm-presented-something-that-is-brand-new, and then to

11  get more brand-new, I don't recall that there was ever any

12  suggestion that you for PER, either jointly with the debtor or

13  on your own, were going to make a motion to withdraw the

14  reference.  But you have every right to make a motion to

15  withdraw the reference.  I don't question your right to do it.

16        The question is when we've had all these discussions

17  about procedure, if you're sitting on a strategy to withdraw

18  the reference, my first answer is if Judge Davila withdraws the

19  reference, I'll send him a bottle of his favorite wine, and I

20  will have two years not to worry about this case.  But I also

21  bet on the 49ers to win last Sunday, and I was wrong.  Judge

22  Davila, as I recall, about three years ago put his case on hold

23  pending the bankruptcy.  And unless the Ninth Circuit has made

24  a ruling in the last twenty-four hours, I believe that Judge

25  Davila isn't going anywhere on that litigation.  And if you

1   want to make a motion to withdraw the reference, fine. But my

2   guess is that he's not going to take it so --

3           But in the context of this scheduling, I don't know

4   what to do about it because again, you have every right to make

5   it. Your timetable says you're going to make it. And the next

6   thing that happens is seven-to-fourteen days after the district

7   court grants the motion, well, first of all, it may never grant

8   the motion. It may deny it. And second of all, if it grants

9   it, who knows when it's going to grant it or when it's even

10   going to consider it. And I don't know what to make of then

11   putting right smack in the early stage of the case mandatory

12   class mediation.

13           So this is a long introduction to my frustration on I

14   don't know what to do about your legal position in terms of the

15   PSLRA. And more specifically, I don't see in your timetable

16   anything to deal with what Mr. Slack and RKS and others have

17   argued about the so-called sufficiency objection. So am I to

18   assume that you believe that there is no -- there is no

19   sufficiency motion that would ever be filed under your theory,

20   and it would only be the 12(b)(6) at some point.

21           Now, that's a lot of -- a lot of issues I've asked you

22   to deal with, and I'll be quiet now and let one or both of you

23   answer. And then after that, I'll turn to Mr. Slack and Mr.

24   Hamilton. And oh, I see Mr. Catalina for RKS. And we'll talk

25   about what to do with that.

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 9
of 61

1    But the ball's in your court now to help me understand
2    what it is you really want to do here from PERA's point of
3    view.

4        MR. DUBBS:  Well, Your Honor, let me take a bite of
5    that.  There are a number of issues, as the Court is aware.

6        Let me start from the proposition that you ask us to
7    go negotiate with the debtors to come up with a schedule to
8    implement a timeline for the 7023 motion or order.  And we did
9    that.  And we are very close.  And I can get into that if you
10   want, and I will get into it at some point.  And I think we can
11   reach closure on that issue in a few days, like, a week at the
12   outside.

13       THE COURT:  Well, but (indiscernible) does closure
14   mean an agreement with the debtors?

15       MR. DUBBS:  It means an agreement on scheduling with
16   the debtors.

17       THE COURT:  Okay.  Well, that's the best news I've
18   heard today.

19       MR. DUBBS:  Well, agreement on the schedule.  We got
20   lots of other things to fight about, but agreement on the
21   schedule.

22       Now, when we started to get into this and started
23   negotiations, the debtors had two overarching goals, which we
24   had problems with.  Number one, which I'll return to, a motion
25   to dismiss, and they fought.  And their position, and they dug

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 10
of 61

1  in their heels, is that a motion to dismiss has to precede

2  anything else.  And they rely on the PSLRA for that

3  proposition, and I'll get back to that in a second.

4          THE COURT:  Well, in other words, the motion to

5  dismiss your class action matter --

6          MR. DUBBS:  Though, the motion --

7          THE COURT:  -- before it's --

8          MR. DUBBS:  Well, the motion to dismiss the complaint.

9          THE COURT:  Okay.

10         MR. DUBBS:  The substantive allegations of the

11  complaint.  And they say, well, we're going to win on that, so

12  the class-action issue becomes moot because there will --

13         THE COURT:  Well, no.  Hold on.

14         MR. DUBBS:  -- be no class action --

15         THE COURT:  Where would this motion be filed, in the

16  bankruptcy court or the district court?

17         MR. DUBBS:  It's in the bankruptcy court, according to

18  their view of the world.

19         THE COURT:  But there's nothing to dismiss.

20         MR. DUBBS:  Well, you ask them.  They're saying that

21  this is part and parcel of the various motions on the

22  individual claims.

23         THE COURT:  Okay.

24         MR. DUBBS:  All right.  So that's the way we

25  understand their position.  So there will be a motion to

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 11
of 61

1  dismiss. You can call that 12(b)(6). You can put another

2  label on it. But that's that.

3      Then the other issue, which was overarching for them,

4  was the length of the proceedings. And as you can see by their

5  extensive collection of other things from other cases, which

6  I'm sure their paralegals worked very hard on, and kudos to

7  them, we are very close on that to the tune of and the metric

8  that is usually used, or often used, is how long between class

9  discovery and briefing and class certification. And they

10 offered 150 days, we started with ninety-one days, and we're at

11 119 days. So the spread there is between 150 days and 119

12 days. Now, that's not the be-all and end-all, but that's a

13 good metric of how we're doing.

14      The other thing that they looked at, which can be a

15 useful metric, is when a hearing on class certification might

16 take place. And they were saying October of '24. We said no,

17 no, that's too long. Why can't we do it this year, December of

18 '23. And we have recently told them, okay, we'll go to June of

19 '24. So the difference is between June and October 10 of '24

20 for that issue.

21      Now, those are metrics, and that's not every jot and

22 tittle of a schedule. But those are the key movers, except

23 for, let's go back to the motion to dismiss. Again, their view

24 of the world is they will make a motion to dismiss before Your

25 Honor and that will be definitive and there will be no case

1  after that.  That gave us --

2         THE COURT:  Okay.  So if I could (indiscernible)

3  interrupt you, then they're essentially dismiss your entire

4  class motion, right?

5         MR. DUBBS:  The entire class motion will go.  And even

6  if --

7         THE COURT:  Okay.

8         MR. DUBBS:  -- the class motion were denied, PERA will

9  go individually because it has no claim.

10        THE COURT:  Okay.

11        MR. DUBBS:  The whole shebang will go out the window.

12  That's their view of the world as we understand it.

13        So the more we thought about that, the more it --

14  nothing, like, focuses the mind as bullets and motions to

15  dismiss.  And so we looked into it, and we are still

16  considering making a motion to Judge Davila to withdraw the

17  reference in part.  In part.  And I know this is not the

18  easiest question.  But we have no intention of withdrawing the

19  whole case but just the point dealing with the very

20  sophisticated issues of securities law.

21        And presumably, after Judge Davila decides one way or

22  the other, it will be up to him, of course, but the presumption

23  would be he would send it back here for the rest of the

24  proceedings.  But --

25        THE COURT:  Okay.

1      MR. DUBBS:  -- I can't tell you what he will do.  And

2  at that point, he may say, well, I'm stuck with the tar baby.

3  I'll just finish it.  I don't know what he's --

4      THE COURT:  But he also might -- but he also might

5  deny your motion, too.

6      MR. DUBBS:  That's true.  He may deny it, and we'll --

7      THE COURT:  Okay.

8      MR. DUBBS:  -- come back here and be where we are now.

9      So we tried to address in our own way their two major

10  issues, which was timing and length of the schedule and then

11  secondly, the motion to dismiss.

12      Now, an aside on the motion to dismiss, and this gets

13  into the whole issue of, which can be viewed as theoretical or

14  practical, about the application of Rule 23 and the PSLRA to

15  this action.  The history of PSLRA, which I unfortunately lived

16  through, had to do with basically the business community going

17  to Congress and said, we have all these junkie class actions.

18  Some of them are junkier than others.  We've got to get the

19  most junky ones screened out before we spend a fortune on

20  discovery.

21      THE COURT:  Right.  I understand.

22      MR. DUBBS:  So they got -- and -- so --

23      THE COURT:  I also lived through it.  I didn't

24  practice in it, but I lived through it and watched it.

25      MR. DUBBS:  So you know as well as I do what motivated

1    it.

2          So what's different here, well, a lot of things are

3    different.  First, Your Honor's view of his discretion to

4    incorporate a class action into a bankruptcy of this magnitude,

5    which we believe has never been done before.  And then against

6    that backdrop, having exercised that discretion, what rules

7    apply now.  And 7023 does not say we are incorporating the

8    Federal Rules of Civil Procedure, jot and tittle and every

9    little paragraph and comma, in the PSLRA.  It's an

10   incorporation by reference of another statute to give the Court

11   guidance and rules as to what should be done.

12         Now, that's a highly theoretical point.  I'm the first

13   to grant that.  And I'm not sure the Court needs to raise that

14   issue.  But it was put down, perhaps in excessive caution, as

15   for purposes of putting everything on the table.  But the point

16   is that we did not, rightly or wrongly, focus on the fact that

17   the motion to dismiss, they insisted over their dead bodies

18   that it be done first because of their rather sanguine view

19   that this whole case is going to go away on a motion to

20   dismiss.  We thought --

21         THE COURT:  Well, again, Mr. Dubbs, let me stop you.

22   In several prior hearings, each time I made reference to what

23   I'll call the 12(b)(6) motion to dismiss, I think Mr. Slack or

24   others would tell me, no, it's this motion for -- in different

25   terminology, it was the so-called sufficiency motion.  But

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 15
of 61

1 that's really what we're talking about, right?

2        In other words, am I correct that your concern is that

3 the debtors want to challenge the sufficiency of your position,

4 and therefore, they make the argument that they are entitled to

5 discovery and testimony by experts before you come to that;

6 isn't that correct?

7        MR. DUBBS: No, Your Honor. That's not the way we

8 understand their position. Now, maybe we --

9        THE COURT: Okay.

10        MR. DUBBS: -- don't understand it correctly. We

11 understand their position to be, number one, before we get to

12 any class schedule or any class framework, there has to be a

13 full-blown motion to dismiss or sufficiency motion that will

14 be, if not identical, at least a very close cousin to what

15 happens in the district court. And they are going to then and

16 argue that the pleading is insufficient, that scienter has not

17 been properly pled, that -- and they've said this in their

18 papers this time around -- they're going to look at a lot of

19 other factors that are typically part of the bread and butter

20 of a 12(b)(6) motion in a district court. And that's what

21 their intention is.

22        Now, if we've misunderstood their intention, so be it,

23 and maybe we have to have more discussions on that. But that's

24 what we understand. And we have been saying that we wanted

25 that put down the road. And they said, no, no, no, no, no.

1   And you can't, and the reason you can't is because of the

2   PSLRA.  And we said, number one, the PSLRA is not as rigid, nor

3   is it incorporated the way you think it is.  And number two,

4   the Court has discretion to do what it wants to do.

5           And so that's where we're at loggerheads.  And I think

6   our "compromise" or our approach to that is we would like to

7   take a shot at getting the reference withdrawn as to securities

8   issues embodied in the motion to dismiss or sufficiency motion

9   or however one wants to characterize it, and the rest of the

10  case stays before Your Honor.  And the way the schedules --

11          THE COURT:  Well, but Mr. Dubbs, I mean, isn't

12  implicit in that that if you make that motion, you will wait

13  and see what the district judge does, and you will argue that

14  the District judge should keep it.  And maybe PG&E will agree.

15  I don't know.  But I just -- then the bankruptcy aspect just

16  goes on the backburner.  There's nothing to do until we wait

17  and see if the district judge tosses the lawsuit, right?

18          MR. DUBBS:  Well, let's look at what they propose

19  before we answer that question directly.  And I'm not ducking

20  it.  This schedule, whether we pick their schedule, our

21  schedule, or somewhere in between, doesn't start for several

22  months.  The motion to dismiss, the sufficiency motions, don't

23  have to be filed until December.  And (indiscernible) --

24          THE COURT:  Well, wait a -- December is only a few

25  weeks away.  This is --

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 17
of 61

1          MR. DUBBS:  Well, I understand.

2          THE COURT:  -- in mid-October.

3          MR. DUBBS:  Well, I understand that.  I understand

4    that.  Look, if they want to do some discovery during while

5    that motion's pending, we're happy to do it.  But they don't

6    want to do it that way.

7          THE COURT:  Okay.  So if you have your way, leaving

8    aside what I'm supposed to do in the meantime, you make your

9    motion, whether it's a joint motion or just PERA or your law

10   firm.  And if and when Judge Davila acts on it and grants it,

11   then you turn to the merits of the motion that you ask him to

12   decide.  And --

13         MR. DUBBS:  Yeah.

14         THE COURT:  -- if he decides adverse to you, case is

15   over, right?

16         MR. DUBBS:  That's right.

17         THE COURT:  Okay.  I mean, again, I'm not here to tell

18   you you can't make the motion.  I'm just saying, it seems like

19   a long shot at this point.  And I know you're going to make the

20   standard argument that bankruptcy judges aren't qualified to

21   decide all these fancy interstate things.

22         I have a bad habit, by the way, of recommending

23   frequently that motions to withdraw the reference be denied.  I

24   don't know that I would take a position on this matter but --

25   and I was joking that I would give Judge Davila a bottle of

1  wine if he granted it.  But I'm not taking a position on that.

2  I'm just saying that from a case management point of view, it

3  would seem that if there's a pending motion to withdraw, I

4  should just not waste my time to do anything.  And I continue

5  to --

6          MR. DUBBS:  Well, Your Honor -- I'm sorry.

7          THE COURT:  Yeah, go ahead.  Go ahead.

8          MR. DUBBS:  Well, we have to keep in mind that while

9  this is happening, potentially, the rest of the train on a

10  parallel track keeps moving.  They're going to presumably still

11  keep trying to bring people through the ADR process and settle

12  cases.

13          THE COURT:  Well, what's wrong with that?

14          MR. DUBBS:  No, there's nothing wrong with it.  We're

15  the ones who said we should go on two tracks.  There's nothing

16  wrong with it.  I'm just reminding the Court that I thought you

17  were suggesting, well, there's not going to be any activity.

18  There's going to be lots of activity if they start writing

19  checks to everybody else who's a claimant.

20          So it's not like nothing's going to be going on.  It's

21  just that this stage may be more elongated than was suspected.

22  But --

23          THE COURT:  But I didn't mean that Mr. Slack and his

24  colleagues and his clients wouldn't be busy.  I'm just saying

25  from a managing-this-mega-case, from my point of view, in terms

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 19
of 61

1 of this dispute, it seems to me that there's not much for me to

2 do while that motion's pending. The Rules on withdraw the

3 reference do say that while there's a motion to withdraw the

4 reference pending, the underlying matter goes forward. But as

5 a practical matter, I don't know what I would do on any pre-

6 motion discovery or things like that if it's going to be mooted

7 by later.

8 But let's not worry about that today. Today, you've

9 made it clear what a potential track for strategy is, and

10 you've clarified. And I understand your point. The other side

11 may have a contrary view, but it's not my place to rule one way

12 or the other on what you're planning. I just, I want to

13 understand it, and I think I do understand it a little better.

14 Okay. But see, one of the things that -- the problem

15 I was having, and it was even though I maybe would have liked

16 to have seen this position a few days ago, I did study it last

17 night. And I still -- there were just so many unknowns in

18 terms of timing. And I consider my responsibility for now to

19 make a decision to get that train moving. And I can't look at

20 an outline that you've submitted that has the first two or

21 three things with no timetable. That's all.

22 MR. DUBBS: Well, one way to shorten this whole thing

23 is, of course, if they filed or agreed to file their

24 "sufficiency motion" or motion to dismiss as to PERA's

25 complaint. Then, in a week or two, we can ask Judge Davila

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 20
of 61

1  what he thinks.  And if he says, no, I don't want to do it

2  because you don't meet the 157 standards, I'm not going to hear

3  this, go home, or go back to Judge Montali, that's one answer.

4  And if he says, well, I think you've proved your threshold, now

5  I'm going to take the motion on the merits, that's another

6  answer.  But we can get an answer on that hopefully quick, and

7  we anticipate the Second -- or the Ninth Circuit to -- in the

8  past, they've been pretty quick on this.  But who knows.  Or

9  it's not --

10        THE COURT:  But it hasn't made a ruling.  I listened

11  to the argument, actually, and I was certainly of the view that

12  that the court is going to do something.  But it hasn't done it

13  yet, right?

14        MR. DUBBS:  You're absolutely right.

15        THE COURT:  Okay.

16        MR. DUBBS:  You heard it the same thing we did.

17        THE COURT:  Okay.  All right.  Okay.  Well, but one

18  more question and then I'm going to let the other counsel be

19  heard.  What, in terms of your proposed schedule, let's say,

20  whether you make your motion to withdraw the reference or you

21  don't, where does this mandatory class mediation come from?  I

22  mean, who's mandating?  Are you asking me to order some

23  mediation, and if so, who are the participants?

24        MR. DUBBS:  Well, the answer is yes, we're ordering

25  you to order a mediation, which is within your power, because

1  we thought if people are interested in a potential resolution,
2  which Your Honor is naturally so, it might advance the ball
3  because we have not been successful, obviously, to date on
4  other modalities.  So that's a suggestion.  If you don't like
5  it, you don't feel comfortable ordering people to mediation,
6  we'll take it off the schedule.  It's not necessary to the --
7           THE COURT:  I'm --
8           MR. DUBBS:  I'm sorry.
9           THE COURT:  I'm very comfortable in ordering it.  I
10 just didn't -- the word "mandatory" means that it's required
11 somewhere, and I would want to hear from the other side before
12 I'm determining that something is mandatory.  I mean, I can
13 make it mandatory, but that's -- I'm the one that's pushed the
14 ADR procedure, right, so --
15          MR. DUBBS:  Well, QED, Your Honor.  I mean, I
16 thought --
17          THE COURT:  Okay.
18          MR. DUBBS:  Yeah, I mean --
19          THE COURT:  Okay, Mr. Dubbs.  Let's let Mr. Slack or
20 Mr. Hamilton speak, and then Mr. Catalina.  I'll come back to
21 you.
22          But Mr. Slack, are you going to --
23          MR. SLACK:  I'm going to start, Your Honor.  Richard
24 Slack, Weil, Gotshal & Manges, for the reorganized debtors.  I
25 have a couple of preliminary remarks, and then I'm going to

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 22
of 61

1 turn it over to Mr. Hamilton to present PG&E's position on the

2 proposed schedule itself.

3        So Your Honor, maybe the remark that I'll start with

4 is I want to address this concept of withdrawal of the

5 reference, which was raised by PERA in its proposal to the

6 Court.  We got this proposal on Friday, which was the day our

7 submissions were due.  And I quite frankly think there's a lot

8 in that proposal that still needs to be fleshed out to even be

9 able to understand it and be able to figure out what our

10 position would be on that.

11        And let me just -- let me just say that it's not clear

12 what's precisely being withdrawn.  In their statement, they

13 talk about the claims being withdrawn.  And if you're

14 withdrawing claims, that's one thing.  Today, they're talking

15 about specific issues in the sufficiency, which is a motion to

16 dismiss.  And as Your Honor will remember, we talked at great

17 length about the fact that whether you call it a sufficiency

18 objection or a 12(b)(6), we do intend to make, essentially,

19 motions to dismiss the PERA complaint in December.  And that's

20 on the schedule that Your Honor put together.

21        But it's unclear what they're actually trying to

22 withdraw.  And as Your Honor knows, there is permissive

23 withdrawal.  There is mandatory withdrawal.  And if you have

24 a -- if the position is is that these claims have certain

25 issues that are going to need to be decided under the

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 23
of 61

1  securities laws and therefore the reference is getting

2  withdrawn, we have to understand, I think, well, does that mean

3  just the PERA complaint and their claims get withdrawn, or

4  wouldn't that mean that everybody who's got a securities claim

5  would have to have their claims mandatorily withdrawn.

6       While PERA may be only concerned with its claims and

7  its motion to dismiss, the debtors have to consider any

8  proposal with respect to withdrawal of the reference as to how

9  it affects all of the claims and all of the motions to dismiss

10 and sufficiency arguments that are going on.  So from our

11 perspective, we just simply do not understand yet what the

12 proposal is, how it would work.

13      Given an example, if you're saying you're going to

14 withdraw the reference with respect to part of the motion to

15 dismiss, we're going to be making very similar motions to

16 dismiss the RKS complaint.  Baupost has a complaint that partly

17 relies on the PERA complaint and then some of their own

18 allegations.

19      So again, we don't understand how this is supposed to

20 work.  So that's observation number one.  Observation number

21 two on the --

22      THE COURT:  Am I correct -- Mr. Slack, am I correct,

23 you haven't rejected the proposal out of hand yet?

24      MR. SLACK:  Your Honor, I don't think we know what the

25 proposal is.  And I'd have it --

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 24
of 61

1      THE COURT:  Right.  Well, okay.  Then you haven't.

2      MR. SLACK:  And I think we'd have to look what the law

3  is.  I mean, it was a little surprising, but I think we want

4  to -- we want to understand it, Your Honor.

5      THE COURT:  Okay.  Again, Mr. Slack, I'm not

6  negotiating, and I hope you know I was joking about the bottle

7  of wine I would give Judge Davila.  But my own experience is --

8      MR. SLACK:  Yeah.

9      THE COURT:  -- withdrawal of the references is one of

10 those threats that very rarely means anything because lawyers

11 who come in and say, oh, this involves interstate commerce and

12 nonbankruptcy law usually are just blowing smoke because --

13     MR. SLACK:  Yeah.

14     THE COURT:  -- this is all about claims objection,

15 which is fundamental core bankruptcy stuff.  And the fact

16 that -- but again, I'm not lobbying against withdrawal of the

17 reference.  I'm just trying to understand it.  And you've made

18 it clear to me that withdraw what is the -- it's obviously not

19 the whole bankruptcy case.  It's obviously something more than

20 just PERA's own individual standing.

21     But sure, I will wait until you and Mr. Dubbs come to

22 an agreement, if there is an agreement.  Or if not, then if he

23 files his motion, I'll do what the Rules require.  I'll make

24 sure the clerk sends it to the district court and may or may

25 not make a recommendation.

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 25
of 61

1          Okay.  Go ahead.  Second point, you had a second

2     point.

3          MR. SLACK:  Well, the second point, still on the

4     motion to withdraw, is PERA's statement says, and maybe this is

5     being walked-back a little bit today.  But PERA's statement

6     says they are going to make this motion after we file the

7     sufficiency hearing.  In other words, they're not waiting for

8     us to agree to it.  They've said they're going to make this

9     regardless.

10         And you have three schedules in front of you right

11    now.  You have the debtors' schedule.  You have RKS' schedule.

12    You have PERA's schedule.  And I think Mr. Dubbs observed

13    correctly that under all of those schedules, the class

14    certification process doesn't start until sometime in the

15    spring of next year under all three, for different reasons.

16    And --

17         THE COURT:  Yeah.  I got it.

18         MR. SLACK:  And so here's my point, Your Honor.  And I

19    think this -- I think this is what you were essentially saying

20    here.  Mr. Dubbs makes this motion to withdraw the reference.

21    The most prudent thing to do is for all of us to wait and see

22    what gets withdrawn, whether the district court's going to

23    hear -- if it gets withdrawn, is the district court going to

24    hear all the claims?  Is it going to keep the class

25    certification motion?  What's it going to do?

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 26
of 61

1       So the most prudent thing, it seems to, I think, us,

2   and this is obviously new, just looking at the proposal that

3   came in yesterday, is let them make their motion to withdraw.

4   And the Court, after the district court makes its decision,

5   there'll be plenty of time for Your Honor if it gets denied to

6   then at that time set some kind of a class-certification

7   schedule.  In other words, there's no need to do that today.

8   And I would say that the most prudent thing is just to wait

9   until we see what's going on with PERA's motion in the district

10  court.

11      And so with that, Your Honor, if Your Honor is

12  inclined to actually look at the schedules today, I'm going to

13  turn it over to Mr. Hamilton to discuss some of the issues that

14  Mr. Dubbs raised and let you know why we think our schedule is

15  the one that makes the most sense here.

16      THE COURT:  Well, before Mr. Hamilton speaks, let me

17  go back and just make sure we're on the same page.  At the

18  start of the hearing, I complained a little bit to Mr. Dubbs

19  and Mr. Etkin about how I was in the dark until yesterday.  So

20  the document that PERA filed or prepared in, I guess, the end

21  of September, which it labeled "confidential negotiation

22  communication", which was Exhibit 21 to your submission of two

23  days ago, said joint motion to withdraw the reference.  So

24  that's what I was preparing for there was in a reference to a

25  joint motion.  What Mr. Dubs filed yesterday, it's no longer a

1  joint motion.  It's a motion.

2       So I was operating under the presumption that perhaps

3  PG&E was on board, and this would be a joint motion.  You've

4  made it clear that maybe it is and maybe it isn't.  You don't

5  know what it is yet.  Okay.  So we're in the same -- we're in

6  agreement there.

7       MR. SLACK:  And Your Honor, just to be clear, we got

8  this proposal to have this motion for withdrawal on Friday,

9  just the same day that we filed our submission so --

10      THE COURT:  Well, I know, but the thing that you got a

11  few days earlier that was marked confidential, which was

12  September 27th, I believe, isn't that when you first got that

13  one that had the joint motion in there?

14      MR. SLACK:  Your Honor, the first time we got any kind

15  of a proposal -- I think we knew that PERA was thinking about

16  making a proposal for withdrawal of the reference, but the

17  first time that there was actually a proposal that we saw was

18  this Friday.

19      THE COURT:  Okay.  It doesn't matter.  The point is

20  that Mr. Dubbs has now said he plans to make a motion, and

21  maybe PG&E is going to consider whether it would join that

22  motion or oppose it.  And again, I don't speak for RKS or

23  anyone else.  But from my point of view, a joint motion would

24  be much different.  And I probably would -- I would probably

25  voluntarily recommend that the district court withdraw the

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 28
of 61

1  reference if there could be a clarification consistent with the

2  clarification you asked, what is being withdrawn.

3  And so I would like that to get fleshed out.  And if

4  PG&E's response is we're not filing, we're not joining a

5  motion, then fine.  Mr. Dubbs can make his motion, and I'll

6  figure out what to do about it while we wait.  If PG&E joins

7  that motion, it's a much different dynamic, from my point of

8  view.

9  Now, in terms of what Mr. Hamilton would offer and

10  RKS' counsel, it's true that in front of me today are three

11  different schedules, but for the reasons that I stated, the

12  PERA schedule is complete -- it's like a big piece of Swiss

13  cheese.  There's so many holes in it.  I can't consider it

14  because I don't know what the time frame of it is.

15  So it almost is though, what's the point in trying to

16  reconcile a difference between RKS and PG&E when maybe PG&E

17  will come around to agree with PERA and support a motion to

18  withdraw the reference.  So I'm almost inclined to take the

19  risk here of sending you back to the drawing board again and

20  see in another two weeks.  I hate doing that because I am

21  concerned about the need to keep moving.

22  But so with that background, and I'll call on Mr.

23  Hamilton.  But Mr. Hamilton, I don't think it would be terribly

24  constructive today to try to take apart the PERA timetable and

25  argue for yours.  If you want to tell me why your timetable is

1  preferable to RKS', that's fine, but those don't seem to be

2  dramatically different at this point.  But go ahead and make

3  whatever presentation you want.

4          MR. HAMILTON:  All right.  Thank you, Your Honor.

5  Joshua Hamilton of Latham & Watkins on behalf of the

6  reorganized debtors.  Your Honor, what we heard today largely

7  was consistent with our position in that we do believe that

8  this, whether you call it a claims objection or a sufficiency

9  objection, the threshold thing that needs to be resolved by the

10 Court is a motion to dismiss because at its heart this is a

11 securities class action --

12          THE COURT:  Yes.

13          MR. HAMILTON:  -- and it needs to be determined based

14 on the substance.  There's the Barnes v. Edison case, which was

15 recently decided on very similar facts on a motion to dismiss.

16 And that's a threshold issue that I think everyone should agree

17 needs to be resolved before anything else happens so -- and

18 that's on the calendar, Your Honor.  That's in December, we

19 will be filing those.  So things will be moving along.  I don't

20 have a -- and can discuss with Mr. Slack as well.

21          In terms of the rest of it, RKS and PG&E are largely

22 in aligned in terms of the overall schedule.  And so to the

23 extent that these issues that we were just given to us, as far

24 as the reference and withdrawal, as Mr. Slack said, we haven't

25 had a chance to address those.  But the bottom line that's

1   important overall is that the motion to dismiss or whatever

2   threshold legal issues need to take place before there's

3   anything else moves forward, before there's class

4   certification, before there's discovery, because that shapes

5   the case, whether it's going to --

6           THE COURT:  Mr. Hamilton, what about mandatory first

7   try at mediation, which is --

8           MR. HAMILTON:  Well, that's a --

9           THE COURT:  -- it's box 2 in Mr. Dubbs' submission of

10  yesterday.

11          MR. HAMILTON:  Yeah.

12          THE COURT:  Can I order that?

13          MR. HAMILTON:  Can you order it?

14          THE COURT:  Well, I mean, yeah.  I mean, of course I

15  can, yeah.  But I mean --

16          MR. HAMILTON:  Yeah, and that -- again, that's

17  something that obviously in terms of those discussions, we're

18  open to those.  But that's, again, something that was placed to

19  us on the day we were providing our submission.  We haven't

20  talked to our client.  We haven't assessed that particular

21  offer.

22          THE COURT:  Well, Mr. Hamilton, you're perhaps now

23  to --

24          MR. HAMILTON:  Yeah.

25          THE COURT:  -- in my court.  I'm sure you're not new

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 31
of 61

1  to class actions. And but I'm quite experienced in being a

2  mediator. And one thing that's got to be the most frustrating

3  in the world as a mediator is when people ask you to go to

4  mediation, the first thing they say is we got to take some more

5  discovery. So when somebody says let's have a mandatory

6  mediation schedule while the other side's saying we're going to

7  take a bunch of discovery, it's like what's the point of having

8  the mediation.

9          MR. HAMILTON: Right.

10          THE COURT: So I am not ready to order mediation

11  unless both sides agree to it, in which case I don't really

12  have to order it. I can say great. Go do it. So I'll take

13  mandatory mediation off the table at this point.

14          Now, so you don't -- you as a class action specialist,

15  you're not offended by the -- or it doesn't make a huge

16  difference whether we call it a 12(b)(6) of a sufficiency. A

17  12(b)(6) motion is itself a challenge to the sufficiency of the

18  complaint in any 12(b)(6) motion, right?

19          MR. HAMILTON: Correct, under the heightened pleading

20  standards for pleading the securities class action.

21          THE COURT: But even in the run-of-the-mill Iqbal

22  Twombly world if you just plead a bunch of garbage and you

23  don't state a theory of relief, your motion to dismiss will be

24  granted. Period. So if it's a heightened standard for

25  securities litigation, so be it. But what do you think of Mr.

1  Dubbs' suggestion that maybe the PSLRA doesn't even apply?

2          MR. HAMILTON:  Yeah, well I think it's --

3          THE COURT:  And this is a bankruptcy claims objection.

4          MR. HAMILTON:  Well, those are two really -- I think

5  two different issues.  There's one, you know, the PSLRA's

6  procedural issues in terms of whether or not a stay of all

7  proceedings should take place, whether or not the specific

8  procedures within the PSLRA apply.  I do want to note in terms

9  of that argument, the PSLRA -- and it's even quoted what -- is

10 that Rule 23 is incorporated, right, into 7023.  And so what

11 the PSLRA says is that there's a stay of any proceedings for

12 any claim brought pursuant to Rule 23.  So essentially the

13 PSLRA and the Rule 23 is going to be incorporated into the

14 bankruptcy rules for the purpose of a securities class action.

15 There's not -- we looked.  There's no specific going either

16 way.  But I believe that this is unique in that this is a

17 securities class action so at its heart, it should be litigated

18 like a securities class action.

19          But those are -- substantively the claims have to be

20 pled under the 10(b)(5) heightened pleading standard.  Those

21 are the Supreme Court cases that's going to be unquestioned.

22 This is not a run-of-the-mill class action.  This is a

23 securities class action with -- you have to plead all the

24 claims with a heightened pleading standard.  You have to plead

25 (indiscernible).  Even in PERA's brief if you looked at what

1  they said, they specifically said these create numerous thorny

2  issues of substantive federal securities logs.

3      THE COURT: Yeah, no. I understand.

4      MR. HAMILTON: Yeah.

5      THE COURT: And yet on the other hand, I think

6  everybody has said -- at least at a prior hearing, I believe

7  every counsel were in agreement that this is almost a first --

8      MR. HAMILTON: Right.

9      THE COURT: -- in terms of a major bankruptcy case

10  with a claims objection that's in place after a very, very

11  thorough ADR process. And then in the middle of it, we're

12  taking in a Rule 23.

13      I mean, I agree with you. The Rule, Bankruptcy Rule,

14  says FRCP 23 applies. So it's hard to imagine that these

15  issues that you mentioned don't apply. But there's no caselaw

16  on the point anywhere, right. No bankruptcy court or court of

17  appeals has dealt with any bankruptcy court doing it in this

18  set of -- kind of a setting. Right? Do you know of any case?

19      MR. HAMILTON: We have not identified it. But we also

20  haven't seen somebody saying otherwise.

21      THE COURT: Yeah, no. I understand. I understand.

22      Okay. All right. So your point, I think, is you're

23  going to -- your recommendation at the moment, unless there is

24  a decision by your client to join forces with PERA and take

25  something to the district court, is to proceed in this court to

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 34
of 61

1  file your -- we'll call it a motion to dismiss without putting

2  any labels on it.  But if that motion were granted, what goes

3  out the door?  Every securities claim?

4          MR. HAMILTON:  That's right.

5          THE COURT:  So not just PERA and its counsel.  Every

6  securities claim?

7          MR. HAMILTON:  Well, we'd be filing them as to the

8  specific claims that have been filed in the Bankruptcy Court.

9  So if the motion to dismiss is granted, the cases are over.  Or

10  the claims.

11          THE COURT:  Well, I understand.  But there's 2,000

12  claims, right?  Are we going to have 2,000 respondents?

13          MR. HAMILTON:  Well, we would certainly address the

14  PERA.  And then I think we would have to address in terms of if

15  anyone who filed -- I think some people have an opportunity to

16  either join PERA's complaint or file their own.  And we would

17  have to address, to the extent that they've satisfied the

18  pleading standards or haven't, to a specific claim.

19          THE COURT:  Well, yeah, but RKS on its own has got

20  over 700 of them, I believe.

21          MR. HAMILTON:  Right.  Right.

22          THE COURT:  I mean, I --

23          MR. SLACK:  Yeah.  Your Honor, can I take that for a

24  second?  I may be able to help a little bit here.  Because I

25  think your question suggests that there might be thousands of

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 35
of 61

1 separate sufficiency motions.  And I don't think I -- I don't

2 think that's what's going to happen here.

3        So there have been three parties that have filed

4 separate complaints.

5        THE COURT:  Right.

6        MR. SLACK:  PERA, RKS -- and again, I said Baupost is

7 sort of a hybrid because they essentially joined PERA, but then

8 filed a supplement which has some substantive evaluations.  And

9 so there's no question that there's going to be sufficiency

10 objections/12(b)(6) motions with respect to those three

11 complaints.

12        THE COURT:  Okay.

13        MR. SLACK:  Your Honor, and I -- but two things.  So

14 there are people who have joined those complaints.  So

15 obviously if Your Honor were to dismiss those, then those

16 people who joined those complaints would also have their claims

17 dismissed.  So RKS, for example, has, like, 750 claimants who

18 have joined their claims.  PERA has -- I think there's a few

19 dozen now that have joined the PERA complaint.  And all of

20 those would be dismissed.

21        And I think, Your Honor, we said this, so this is not

22 going to come as a surprise.  Anybody who hasn't either filed a

23 complaint or joined one of the complaints is likely to be

24 subject to an omnibus sufficiency objection as well, but that's

25 just going to be one of them.

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 36
of 61

1    THE COURT:  Well, you've made that clear.  You've made

2  that clear.

3    MR. SLACK:  Yeah.  So I think you're really looking at

4  essentially four motions.  Not dozens, not hundreds, and

5  certainly thousands -- really objections, not motions -- that

6  are likely to get filed.

7    THE COURT:  Okay.  I got it.  I mean, that makes

8  sense.  And I really wasn't worried about 2,000 respondents.

9  But I had to understand and make sure we're clear.  We're back

10  to what is it you're objecting to.  And Mr. Slack, I think you

11  clarified it.  And I know that between PERA and its district

12  court complaint and those that have joined it plus RKS, we've

13  got an awful lot of them accounted for.

14    Okay.  Well, Mr. Hamilton, do you want to spend some

15  time to argue for the time table for PG&E v. RKS or should we

16  just assume that maybe that's not worth worrying about because

17  we're either going to be dealing with a motion to withdraw the

18  reference -- but in any event, we'll be dealing with your

19  sufficiency motion on a much earlier time table.  So I guess my

20  question is, why should I worry about reconciling the competing

21  schedules if the entry point is your sufficiency motion?

22    MR. HAMILTON:  I think that's fair, Your Honor.  If we

23  file our motion to dismiss/sufficiency motion in December, to

24  the extent that the briefing schedule needs to be amended or

25  changed a bit to accommodate RKS' schedule, we're not going

1 to -- we thought we were trying to move things as efficiently

2 as possible and have a very streamlined briefing schedule for

3 the motions to dismiss. But to the extent that RKS or someone

4 else needs a few more weeks here or there to file an

5 opposition, we're not going to hold things up for that.

6       THE COURT: Well, and we already have a status

7 conference tentatively scheduled after you filed the motion,

8 right?

9       MR. HAMILTON: Right.

10       THE COURT: Okay.

11       MR. HAMILTON: That's right.

12       THE COURT: Well, I -- again, I've been doing an awful

13 lot of talking here and I want to let counsel for RKS be heard

14 and come back to Mr. Dubbs after that, but I'd be inclined not

15 to try to reconcile the two competing schedules of RKS and the

16 debtors at this point.

17       And to the extent that there's a third competing

18 schedule that Mr. Dubbs filed, as I say, it's not something I

19 can act on because I think Mr. Dubbs and his side have to

20 decide whether they're going to ask the district judge to do

21 it, and that's up to them and when to do it. And I don't think

22 it would be fruitful -- excuse me -- to get into a debate about

23 that schedule if he's got a motion to withdraw the reference

24 that he wants to be presented. And I have no idea when Judge

25 Davila would hear it or what his outcome would be, and it's not

1   my business, so.

2           Why don't we let RKS' counsel, Mr. Catalina -- I

3   thought I would hear from Mr. Bodner today, but I guess you got

4   the duty, so.

5           MR. CATALINA:  I did.  I did, Your Honor.  Thank you.

6   Yeah.

7           THE COURT:  Congratulations.

8           MR. CATALINA:  We can say that.  Thank you very much.

9           Yeah, I think we generally agree.  I mean, our kind of

10  first principles, right, that we put in the papers we submitted

11  would be we have an order in place right now, the July 28th

12  order, that kind of governs how we contemplated before this

13  7023 motion practice occurred how to move forward with the

14  claims allowance process, and that's -- and that is moving

15  forward, right.  The October deadline to pass the sufficiency

16  objections are coming up.  And as Your Honor said, have a case

17  management conference where it's contemplated that we would

18  discuss timing on briefing with regard to the sufficiency

19  objections.  And as Your Honor pointed out, PG&E and we are not

20  so far apart there.

21          One of the other first principles that we put in our

22  papers is we would agree with PERA that the PSLRA doesn't apply

23  to the claims allowance process in the Bankruptcy Court here.

24  We would disagree, however, with -- I mean, the PSLRA doesn't

25  apply, but we think it's very important that the sufficiency

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 39
of 61

1  objection/motion to dismiss, whatever you want to call it,

2  occurs prior to the class certification process because -- and

3  one of the things that we haven't talked -- there's been a lot

4  of talk about kind of an all or nothing with regard to motions

5  to dismiss.  I'll just point out, PERA's complaint in the

6  district court has 19, I believe, misstatements pled.  I know

7  that our amendment has 20-some-odd.  I don't have the number in

8  front of me.

9        The way that motion to dismiss practice typically

10  occurs in these securities class actions or securities claims

11  is that sometimes some of the misstatements are trimmed.

12  Sometimes the contours of what claims actually get past the

13  motion to dismiss change.  And that changes the contours,

14  potentially, of a class, right.  So class period is often

15  defined based on the misstatements, the corrective disclosures

16  that are pled in the complaint.

17        So one of the issues we raise in our papers is until

18  you get past that sufficiency process, it can be unclear what

19  misstatements, which corrective disclosures are in the case.

20  And therefore, what the contours of the actual potential class

21  are.

22        I would also like to point out, and maybe this is

23  leaping a little bit with regard to withdrawing the reference.

24  In PERA's papers, in their footnote 4, they say that the class

25  complaint does not allege claims based on transactions in 67

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 40
of 61

1  separate securities, but instead only in common stock and eight

2  debt securities.  So it's a little unclear if PERA's saying

3  that their class definition would only encompass purchases in

4  the equity securities and in eight of the debt securities.  If

5  the removing of reference for a motion to dismiss that only

6  includes nine securities out of sixty-some-odd securities that

7  are on the proof of claim form in this bankruptcy, it's unclear

8  what that means for the rest of the securities, right.

9        So right now, I think the class definition is very

10 unclear.  And I think we have to go through this sufficiency

11 process to -- before you can start taking discovery and making

12 motions on class certification.  So that's another principle

13 that we have.

14       Other than that, as far as the PSLRA application

15 question, that's not something that we extensively researched

16 and briefed here.  I think that's going to come up on the

17 sufficiency objections, right.  Because it sounds like PG&E is

18 going to argue that the Court should determine those

19 sufficiency objections in that framework.  And obviously we,

20 and I presume others, will argue the opposite.

21       The last thing I'd say is that -- and as Your Honor

22 noted, right, it's going to be up to the district court if PERA

23 makes the motion.  But we've gotten to the point where we got

24 the July 28th order in place.  We have a framework going

25 forward towards claims allowance.  The ADR procedures are

1  actually moving forward and occurring as we speak.  Withdrawing

2  the reference seems to us to just put this back on that

3  merry-go-round to nowhere.  It seems to us just another kind

4  of -- whether it's a tactic for delay, will result in delay.  I

5  point out that in the district court case against the directors

6  and officers, before the stay was even entered, there was a

7  motion to dismiss pending there for a long period of time.

8         THE COURT:  Well yeah, but Judge Davila has stayed

9  that, right, for all this time?

10         MR. CATALINA:  He has stayed it.

11         THE COURT:  Which is why PERA took this case to the

12  court of appeal, right?

13         MR. CATALINA:  Yes.  Yes, he has stayed it.  But

14  before even staying it -- all I'm saying is that removing this

15  to the district court to have motion practice there from our

16  point of view does not seem like something that will resolve

17  these claims more efficiently, more quickly.  We want to

18  continue moving forward.  From day 1 that's been our interest.

19  And every time I've had the pleasure of appearing before Your

20  Honor, that's what we're trying to do, is to keep this claims

21  allowance process moving forward.  And we're making some

22  progress here and we think that that should be the north star

23  here.

24         THE COURT:  Well, Mr. Dubbs can speak for himself, but

25  I've never been of the impression that PERA is trying to delay

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 42
of 61

1  the process here.  They were frustrated by -- that's why they

2  took the district court matter before the circuit.  And I

3  believe they were pushing for a schedule here -- leaving aside

4  withdrawal of the reference, their schedule was much more

5  aggressive and much quicker than either you or the debtor was

6  agreeable to.

7         So again, that's for another day or for another court.

8  And the proof is in the pudding.  PERA and its counsel will

9  either stick with their plan and make a motion to withdraw the

10 reference or not.  And if they don't, I guess they're not

11 trying to use the district court as a stalling tactic.

12         MR. CATALINA:  Well, I would just -- to go back to the

13 origins of the July 28th order which has put us on a track to

14 claims resolution, it was about a year ago, Your Honor, that

15 the RKS claimants first appeared in front of Your Honor,

16 objecting to PG&E's, the reorganized debtors', request to

17 extend the objection deadline another time.

18         THE COURT:  Right.

19         MR. CATALINA:  Which really got the ball rolling to

20 where it was, how were we going to push forward to the claims

21 allowance process, which resulted in the July 28th order.

22         So certainly, we are focused on trying to move forward

23 with the claims allowance process.  And we have concerns.  And

24 again, as Your Honor said, it's not going to be necessarily up

25 to you if they move, but that going the district court route is

1    not --

2              THE COURT:  Well, a handful of your clients have

3    settled, so the claims process has worked for them and worked

4    for whatever other number that Mr. Slack has reported have

5    settled and is distinguished from those who didn't even

6    respond, and thus their objections -- okay.  Listen.  Let's let

7    Mr. Dubbs have his final comment.

8              But let me say to you, Mr. Dubbs, my inclination is to

9    anticipate and tell Mr. Hamilton and everybody else that I'm

10   expecting until told otherwise by DJ (phonetic) that I will be

11   dealing with the motion to dismiss in December, and consistent.

12   But in the meantime, I'll continue for another couple of weeks

13   if you want to talk to Mr. Slack and see if you can come up

14   with some compromise on the withdraw of the reference or

15   anything else.  But with that, if you think that's worth doing,

16   it's no big deal to pencil in a hearing in a couple of weeks to

17   let you report back on that.  So tell me what you would like.

18             MR. DUBBS:  Yeah, I think it's worth taking that

19   approach and seeing whether any progress can be made in the two

20   weeks.  And I've heard Mr. Slack and people have had their say,

21   but maybe some other conversations might or might not be

22   helpful.  No promises, but I think it's worth doing; that's not

23   the one --

24             THE COURT:  Well, why don't we do this.  I'll give you

25   a date now on our PG&E calendar a couple of weeks out.  And if

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 44
of 61

1  you reach some sort of a consensus with the debtor that's fine.

2  And I think it would be helpful to either tell me by then you

3  have, in fact, filed your motion to withdraw the reference or

4  that you're going to or not going to if that's the decision.

5  And because again, I am mindful that the law requires or

6  provides that a bankruptcy judge does not stay a matter just

7  because there's a motion to withdraw the reference. And I'm

8  not kidding when I tell you I have a pretty good track record

9  of persuading district judges not to withdraw the reference.

10  So but whether I take a position on this one is another story.

11  But at least if in a couple weeks you tell me we filed

12  our motion or we're going to file our motion or we've got an

13  agreement or PG&E is joining us or something, that's progress.

14  But for now, I'll anticipate having our case management

15  conference just before Christmas on the other schedule before

16  we go from here. And obviously, we'll have to factor in what

17  to make of any motion to withdraw the reference. I don't

18  imagine it will be heard that quickly. I mean, it might be

19  heard by December, but I don't imagine it will be heard on an

20  expedited basis. But who knows; that's for you and the

21  assigned judge to decide.

22  So Ms. Prada, our next PG&E calendar is when? October

23  28th? No. November? Oh, wait. I lost her. Ms. Prada, are

24  you there? No.

25  Ms. Thomas, are you there?

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 45
of 61

1            THE COURT REPORTER:  I'm sorry, Your Honor.

2            THE COURT:  Okay.

3            THE COURT REPORTER:  I'm having connection issues

4     today.

5            THE COURT:  What's our next PG&E calendar?

6            THE COURT REPORTER:  I've lost my calendar, but I

7     believe --

8            THE COURT:  Mr. Slack or Mr. Dubbs knows all these

9     things.  I should know them too.  Hold on.  We'll figure out

10    when the next PG&E calendar is.

11            THE COURT REPORTER:  I'm sorry, Your Honor.  All of

12    my --

13            THE COURT:  Ms. Thomas, do you know?

14            MR. DUBBS:  Your Honor, I think it's November 7th, is

15    the next one that I see.

16            THE COURT:  Let me double check.  Yeah, that seems

17    right.

18            THE CLERK:  Yes, Your Honor.  November 7th at 10

19    o'clock.

20            THE COURT:  Okay.  Mr. Dubbs, I'm going to continue

21    today's hearing to November 7th at 10 o'clock for a status on

22    the matters that we've left for you to talk to Mr. Slack about

23    and for a report on what your intentions are.  And but the plan

24    will be that I am not going to act on the competing schedules.

25    I'm going to follow the timetable that Mr. Hamilton alluded to

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 46
of 61

1 that everybody's familiar with.  And that's our -- my

2 recollection is it's just before Christmas, a status

3 conference.

4    Isn't that right?  December 19th, Ms. Prada?

5    THE COURT REPORTER:  I'm sorry, Your Honor.  I'm still

6 trying to reboot all my programs.

7    THE COURT:  Let me doublecheck, yeah.  Mr. Hamilton,

8 do you remember?  Isn't that a date we set aside?

9    THE CLERK:  I believe it's December 19th.

10    THE COURT:  Yeah, that's -- okay.  So for planning

11 purposes, the November 7th hearing on this aspect of PG&E is

12 for just a check-in and where things stand on PERA and the

13 motion to withdraw and what have you.  And for the bigger

14 picture, the hearing for a status conference on where we go

15 after that for the motion to dismiss or sufficiency motion,

16 whatever the debtors have called it, will take place on

17 December 19th at 10 o'clock.

18    All right.  Anyone have anything else to chip in or

19 raise before we adjourn?

20    Mr. Dubbs?

21    MR. DUBBS:  Yes, just a couple of quick points.  First

22 of all, Mr. Hamilton I think articulately expressed their view

23 that the full panoply of pleading and other mechanical aspects

24 of securities cases apply to any decision on a 12(b)(6), or

25 call it something else, motion.  That doesn't surprise me.  I'm

Case: 19-30088 Doc# 14083 Filed: 10/18/23 Entered: 10/18/23 10:41:05 Page 47
of 61

1  just underscoring it for the Court.

2  Secondly, in terms if there's been some issues about

3  timing and what have you, Exhibit 21 was a document provided

4  under the protections noted on it. We never thought it would

5  become public. We were never asked whether it could become

6  public. And it said joint motion to withdraw the reference.

7  And that was a proposal to them. And they never said yes or no

8  until today, to the extent that they said it. So that's just a

9  matter of housekeeping. And beyond that, we will get back to

10  you by November 7th with the matters that Your Honor outlined.

11  THE COURT: Okay. But Mr. Dubbs, let me repeat again.

12  I wasn't -- I hope you didn't take it as a complaint, you

13  personally or your colleagues. I've had so many hearings

14  involving your client and you and Mr. Etkin that I usually am

15  up to date on what's happening. And so here I am two days

16  before today's hearing and PERA is a mystery to me. And

17  finally I got attached to Mr. Slack's filing, the so-called

18  confidential -- not so-called, the confidential schedule. And

19  it was the first time I was aware of any of these events. I

20  guess it might have been preferable if you would -- never mind.

21  I got it and I got your filing and I know where we are on

22  things. So I will stay tuned and look forward to seeing

23  whatever developments happen on November 7th on this issue.

24  And if it gets resolved, we don't even have to have the

25  hearing. And for now, then, we're planning to deal with the

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 48
of 61

1  December 19th matter.

2           Anything else you -- yes, sir.  Go ahead.

3           MR. DUBBS:  Finally, I want to apologize for the

4  confusion that we obviously created and the burden on the Court

5  because of our internal issues as to what had to be filed, what

6  didn't have to be filed, what was part of the informal

7  negotiation process, and what had to be filed for the Court.

8  And that won't happen again.  Thank you.

9           THE COURT:  No apologies are necessary.  This is a

10  complicated matter for everybody.  For the lawyers, for the

11  clients, for me, for staff, for everything.  So it's not worth

12  making a big deal out of, and we move on.

13           All right.  Anything else from anyone on any subject?

14           MR. ETKIN:  Your Honor, if I may?

15           THE COURT:  Yes, sir.  Mr. Etkin?

16           MR. ETKIN:  One housekeeping matter.

17           THE COURT:  Yes.

18           MR. ETKIN:  I think at the end of your ruling decision

19  on the 7023 motion there was discussion of entering an order

20  that simply said that the motion was granted in accordance with

21  the decision placed on the record on that day.  I don't think

22  an order has been entered yet to that effect.  And we just

23  wanted to ask Your Honor whether you wanted us to upload an

24  order to that effect, discuss it with Mr. Slack and Mr.

25  Catalina and whoever was --

Case: 19-30088   Doc# 14083   Filed: 10/18/23   Entered: 10/18/23 10:41:05   Page 49
of 61

1        THE COURT:  Well, is it important to you?  I mean, I

2   realize what -- if you wish to seek an appeal.  And certainly

3   to the extent that you might be putting together a motion to

4   withdraw the reference, it might be part of the complete record

5   of what the Bankruptcy Court has done.  So I have no problem

6   with it.  You don't have to, again, tell me what your strategy

7   is.

8        But Mr. Slack, any objections?  I think I probably did

9   say that.

10        MR. SLACK:  Yeah.  I mean, I would say, Your Honor, it

11   seems unnecessary.  But Your Honor did say and ruled the way

12   you ruled.  So whether it's unnecessary or not, I'll leave it

13   to Mr. Etkin whether he wants to press that.

14        THE COURT:  Okay.  Mr. Etkin, go ahead and --

15        MR. ETKIN:  Well, and yeah, there's nothing strategic

16   about it whatsoever.

17        THE COURT:  Mr. Etkin, go ahead and ask Mr. Slack to

18   sign off on the form of it.  And if he approves it as to form,

19   it will be signed without discussion.

20        Okay.  All right.  Thank you all for your time,

21   everyone.  Appreciate the hard work on the complexities of this

22   matter.  So with that, I'll conclude the matter.  Have a good

23   day, everyone.

24        (Whereupon these proceedings were concluded)

25

C E R T I F I C A T I O N

I, River Wolfe, certify that the foregoing transcript is a true
and accurate record of the proceedings.

_____

/s/ RIVER WOLFE, CDLT-265


eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020


Date:  October 18, 2023

## A

**able (3)**
23:9,9;35:24
**absolutely (1)**
21:14
**accommodate (2)**
6:3;37:25
**accordance (1)**
49:20
**according (1)**
11:17
**accounted (1)**
37:13
**act (3)**
6:1;38:19;46:24
**action (12)**
11:5,14;14:15;15:4;
30:11;32:14,20;
33:14,17,18,22,23
**actions (3)**
14:17;32:1;40:10
**activity (2)**
19:17,18
**acts (1)**
18:10
**actual (1)**
40:20
**actually (6)**
21:11;23:21;27:12;
28:17;40:12;42:1
**additional (1)**
5:10
**address (6)**
14:9;23:4;30:25;
35:13,14,17
**adjourn (1)**
47:19
**ADR (4)**
19:11;22:14;34:11;
41:25
**advance (1)**
22:2
**adverse (1)**
18:14
**affects (1)**
24:9
**afternoon (1)**
3:8
**again (20)**
7:15;9:4;12:23;
15:21;18:17;24:19;
25:5,16;28:22;29:19;
31:16,18;36:6;38:12;
43:7,24;45:5;48:11;
49:8;50:6
**against (3)**
15:5;25:16;42:5
**aggressive (1)**
43:5
**ago (4)**
8:22;20:16;27:23;

43:14
**agree (8)**
17:14;26:8;29:17;
30:16;32:11;34:13;
39:9,22
**agreeable (1)**
43:6
**agreed (1)**
20:23
**agreement (9)**
10:14,15,19,20;
25:22,22;28:6;34:7;
45:13
**ahead (7)**
19:7,7;26:1;30:2;
49:2;50:14,17
**aligned (1)**
30:22
**allegations (2)**
11:10;24:18
**allege (1)**
40:25
**allowance (3)**
39:14,23;41:25;
42:21;43:21,23
**alluded (2)**
5:13;46:25
**almost (3)**
29:15,18;34:7
**along (1)**
30:19
**amended (1)**
37:24
**amendment (1)**
40:7
**anticipate (3)**
21:7;44:9;45:14
**apart (2)**
29:24;39:20
**apologies (1)**
49:9
**apologize (1)**
49:3
**appeal (2)**
42:12;50:2
**appeals (1)**
34:17
**appearance (2)**
3:19;4:24
**appeared (1)**
43:15
**appearing (2)**
4:25;42:19
**appears (1)**
6:12
**application (2)**
14:14;41:14
**applies (3)**
7:24,25;34:14
**apply (9)**
8:1,2;15:7;33:1,8;
34:15;39:22,25;47:24
**Appreciate (1)**

50:21
**approach (2)**
17:6;44:19
**approves (1)**
50:18
**argue (6)**
16:16;17:13;29:25;
37:15;41:18,20
**argued (1)**
9:17
**argument (8)**
3:22;4:22;7:19,21;
16:4;18:20;21:11;
33:9
**arguments (1)**
24:10
**around (2)**
16:18;29:17
**articulately (1)**
47:22
**aside (4)**
14:12;18:8;43:3;
47:8
**asleep (1)**
4:20
**aspect (2)**
17:15;47:11
**aspects (1)**
47:23
**assessed (1)**
31:20
**assigned (1)**
45:21
**assume (2)**
9:18;37:16
**attached (1)**
48:17
**author (1)**
6:15
**authority (1)**
8:8
**aware (2)**
10:5;48:19
**away (2)**
15:19;17:25
**awful (2)**
37:13;38:12

## B

**baby (1)**
14:2
**back (14)**
11:3;12:23;13:23;
14:8;21:3;22:20;
27:17;29:19;37:9;
38:14;42:2;43:12;
44:17;48:9
**backburner (1)**
17:16
**backdrop (1)**
15:6
**background (1)**

29:22
**bad (1)**
18:22
**ball (2)**
22:2;43:19
**ball's (1)**
10:1
**Bankruptcy (23)**
7:21,24;8:4,5,23;
11:16,17;15:4;17:15;
18:20;25:15,19;33:3,
14;34:9,13,16,17;
35:8;39:23;41:7;45:6;
50:5
**Barnes (1)**
30:14
**based (3)**
30:13;40:15,25
**basically (1)**
14:16
**basis (1)**
45:20
**Baupost (2)**
24:16;36:6
**be-all (1)**
12:12
**become (2)**
48:5,5
**becomes (1)**
11:12
**behalf (2)**
4:13;30:5
**best (1)**
10:17
**bet (1)**
8:21
**better (1)**
20:13
**beyond (1)**
48:9
**big (3)**
29:12;44:16;49:12
**bigger (1)**
47:13
**bit (5)**
26:5;27:18;35:24;
37:25;40:23
**bite (1)**
10:4
**blame (1)**
6:9
**blowing (1)**
25:12
**board (2)**
28:3;29:19
**bodies (1)**
15:17
**Bodnar (1)**
4:24
**Bodnar's (1)**
5:2
**Bodner (1)**
39:3

both (3)
3:22;9:22;32:11
**bottle (3)**
8:19;18:25;25:6
**bottom (1)**
30:25
**box (1)**
31:9
**brand-new (1)**
8:11
**bread (1)**
16:19
**brief (2)**
6:8;33:25
**briefed (1)**
41:16
**briefing (4)**
12:9;37:24;38:2;
39:18
**bring (3)**
3:12,16;19:11
**brought (1)**
33:12
**bullets (1)**
13:14
**bunch (2)**
32:7,22
**burden (1)**
49:4
**business (2)**
14:16;39:1
**busy (1)**
19:24
**butter (1)**
16:19

## C

**calendar (6)**
30:18;44:25;45:22;
46:5,6,10
**CALIFORNIA (1)**
3:1
**Call (11)**
3:3;7:17;12:1;
15:23;23:17;29:22;
30:8;32:16;35:1;40:1;
47:25
**called (2)**
7:4;47:16
**Calling (1)**
3:5
**CalPERS' (1)**
5:23
**came (1)**
27:3
**camera (1)**
4:14
**can (28)**
3:19;4:14,15;8:1;
10:9,10;12:1,1,4,14;
14:13;20:25;21:6;
22:12;29:5;30:20;

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 52
of 61

31:12,13,15;32:12;
35:23;38:19;39:8;
40:18;41:11;42:24;
44:13,19
**care (2)**
5:4,25
**case (22)**
6:5;8:7,20,22;9:11;
12:25;13:19;15:19;
17:10;18:14;19:2;
25:19;30:14;31:5;
32:11;34:9,18;39:16;
40:19;42:5,11;45:14
**caselaw (1)**
34:15
**cases (5)**
12:5;19:12;33:21;
35:9;47:24
**Catalina (10)**
9:24;22:20;39:2,5,
8;42:10,13;43:12,19;
49:25
**caution (1)**
15:14
**certain (1)**
23:24
**certainly (6)**
5:22;21:11;35:13;
37:5;43:22;50:2
**certification (7)**
12:9,15;26:14,25;
31:4;40:2;41:12
**challenge (3)**
7:11;16:3;32:17
**chance (1)**
30:25
**change (1)**
40:13
**changed (1)**
37:25
**changes (2)**
5:10;40:13
**characterize (1)**
17:9
**check (1)**
46:16
**check-in (1)**
47:12
**checks (1)**
19:19
**cheese (1)**
29:13
**chip (1)**
47:18
**Christmas (2)**
45:15;47:2
**Circuit (3)**
8:23;21:7;43:2
**cited (1)**
8:7
**Civil (1)**
15:8
**claim (7)**

13:9;24:4;33:12;
35:3,6,18;41:7
**claimant (1)**
19:19
**claimants (2)**
36:17;43:15
**claims (32)**
11:22;23:13,14,24;
24:3,5,6,9;25:14;
26:24;30:8;33:3,19,
24;34:10;35:8,10,12;
36:16,18;39:14,23;
40:10,12,25;41:25;
42:17,20;43:14,20,23;
44:3
**clarification (2)**
29:1,2
**clarified (2)**
20:10;37:11
**class (35)**
9:12;11:5,14;12:8,
9,15;13:4,5,8;14:17;
15:4;16:12,12;21:21;
26:13,24;30:11;31:3;
32:1,14,20;33:14,17,
18,22,23;40:2,10,14,
14,20,24;41:3,9,12
**class-action (1)**
11:12
**class-certification (1)**
27:6
**clear (10)**
5:13,15;20:9;23:11;
25:18;28:4,7;37:1,2,9
**CLERK (6)**
3:4,16;5:1;25:24;
46:18;47:9
**client (4)**
7:3;31:20;34:24;
48:14
**clients (3)**
19:24;44:2;49:11
**close (3)**
10:9;12:7;16:14
**closure (2)**
10:11,13
**colleagues (2)**
19:24;48:13
**collection (1)**
12:5
**comfortable (2)**
22:5,9
**coming (1)**
39:16
**comma (1)**
15:9
**comment (1)**
44:7
**commerce (1)**
25:11
**common (1)**
41:1
**communication (1)**

27:22
**community (1)**
14:16
**competing (4)**
37:20;38:15,17;
46:24
**complain (2)**
6:17,18
**complained (1)**
27:18
**complaint (17)**
11:8,11;20:25;
23:19;24:3,16,16,17;
32:18;35:16;36:19,
23;37:12;40:5,16,25;
48:12
**complaints (5)**
36:4,11,14,16,23
**complete (2)**
29:12;50:4
**complexities (1)**
50:21
**complicated (1)**
49:10
**compromise (2)**
17:6;44:14
**concept (1)**
23:4
**concern (1)**
16:2
**concerned (2)**
24:6;29:21
**concerns (1)**
43:23
**conclude (1)**
50:22
**concluded (1)**
50:24
**conference (6)**
4:12;38:7;39:17;
45:15;47:3,14
**confess (1)**
6:25
**confidential (4)**
27:21;28:11;48:18,
18
**confusion (1)**
49:4
**Congratulations (1)**
39:7
**Congress (1)**
14:17
**connection (1)**
46:3
**consensus (1)**
45:1
**consider (5)**
9:10;20:18;24:7;
28:21;29:13
**considering (1)**
13:16
**consistent (3)**
29:1;30:7;44:11

constructive (1)
29:24
**contemplated (2)**
39:12,17
**context (1)**
9:3
**continue (4)**
19:4;42:18;44:12;
46:20
**contours (3)**
40:12,13,20
**contrary (1)**
20:11
**control (1)**
7:21
**controls (1)**
7:20
**conversations (1)**
44:21
**convince (1)**
8:6
**core (1)**
25:15
**Corp (1)**
3:5
**corrective (2)**
40:15,19
**correctly (2)**
16:10;26:13
**counsel (9)**
5:23;6:7;21:18;
29:10;34:7;35:5;
38:13;39:2;43:8
**couple (9)**
4:21;5:4;7:12;
22:25;44:12,16,25;
45:11;47:21
**course (3)**
13:22;20:23;31:14
**Court (158)**
3:3,4,6,8,10,14,18,
21,25;4:2,5,7,10,14;
5:4,22;6:11;9:7;10:1,
5,13,17;11:4,7,9,13,
15,16,16,17,19,23;
13:2,7,10,25;14:4,7,
21,23;15:10,13,21;
16:9,15,20;17:4,11,
24;18:2,7,14,17;19:7,
13,16,23;21:10,12,15,
17;22:7,9,17,19;23:6;
24:22;25:1,5,9,14,24;
26:17,23;27:4,4,10,
16;28:10,19,25;30:10,
12;31:6,9,12,14,22,
25,25;32:10,21;33:3,
21;34:3,5,9,16,16,17,
21,25,25;35:5,8,11,
19,22;36:5,12;37:1,7,
12;38:6,10,12;39:7,
23;40:6;41:18,22;
42:5,8,11,12,15,24;
43:2,7,11,18,25;44:2,

24;46:1,2,3,5,6,8,11,
13,16,20;47:5,7,10;
48:1,11;49:4,7,9,15,
17;50:1,5,14,17
**court's (1)**
26:22
**cousin (1)**
16:14
**create (1)**
34:1
**created (1)**
49:4
**criticism (1)**
6:7
**criticizing (1)**
6:13

**D**

**dark (1)**
27:19
**date (4)**
22:3;44:25;47:8;
48:15
**Davila (11)**
8:18,22,25;13:16,
21;18:10,25;20:25;
25:7;38:25;42:8
**day (10)**
5:11;6:23;7:6;23:6;
28:9;31:19;42:18;
43:7;49:21;50:23
**days (11)**
9:6;10:11;12:10,10,
11,11,12;20:16;
27:23;28:11;48:15
**dead (1)**
15:17
**deadline (2)**
39:15;43:17
**deal (5)**
9:16,22;44:16;
48:25;49:12
**dealing (5)**
5:7;13:19;37:17,18;
44:11
**dealt (1)**
34:17
**debate (1)**
38:22
**debt (2)**
41:2,4
**debtor (4)**
6:24;8:12;43:5;
45:1
**debtors (11)**
7:19;10:7,14,16,23;
16:3;22:24;24:7;30:6;
38:16;47:16
**debtors' (2)**
26:11;43:16
**December (12)**
12:17;17:23,24;

23:19;30:18;37:23;
44:11;45:19;47:4,9,
17;49:1
**decide (4)**
18:12,21;38:20;
45:21
**decided (2)**
23:25;30:15
**decides (2)**
13:21;18:14
**decision (7)**
20:19;27:4;34:24;
45:4;47:24;49:18,21
**defined (1)**
40:15
**definition (2)**
41:3,9
**definitive (1)**
12:25
**delay (3)**
42:4,4,25
**denied (3)**
13:8;18:23;27:5
**Dennis (1)**
3:5
**deny (3)**
9:8;14:5,6
**determine (1)**
41:18
**determined (1)**
30:13
**determining (1)**
22:12
**developments (1)**
48:23
**difference (3)**
12:19;29:16;32:16
**different (9)**
15:2,3,24;26:15;
28:24;29:7,11;30:2;
33:5
**dinnertime (1)**
7:8
**directly (1)**
17:19
**directors (1)**
42:5
**disagree (1)**
39:24
**disclosures (2)**
40:15,19
**discovery (9)**
12:9;14:20;16:5;
18:4;20:6;31:4;32:5,
7;41:11
**discretion (3)**
15:3,6;17:4
**discuss (4)**
27:13;30:20;39:18;
49:24
**discussion (2)**
49:19;50:19
**discussions (3)**

8:16;16:23;31:17
**dismiss (41)**
10:25;11:1,5,8,19;
12:1,23,24;13:3,15;
14:11,12;15:17,20,23;
16:13;17:8,22;20:24;
23:16,19;24:7,9,15,
16;30:10,15;31:1;
32:23;35:1,9;36:15;
38:3;40:1,5,9,13;
41:5;42:7;44:11;
47:15
**dismiss/sufficiency (1)**
37:23
**dismissed (2)**
36:17,20
**disposition (1)**
5:8
**dispute (1)**
20:1
**distinguished (1)**
44:5
**district (24)**
9:6;11:16;16:15,20;
17:13,14,17;25:24;
26:22,23;27:4,9;
28:25;34:25;37:11;
38:20;40:6;41:22;
42:5,15;43:2,11,25;
45:9
**DJ (1)**
44:10
**docket (2)**
6:1,19
**document (2)**
27:20;48:3
**done (5)**
15:5,11,18;21:12;
50:5
**door (1)**
35:3
**double (1)**
46:16
**doublecheck (1)**
47:7
**down (2)**
15:14;16:25
**dozen (1)**
36:19
**dozens (1)**
37:4
**dramatically (1)**
30:2
**drawing (1)**
29:19
**Dubbs (71)**
3:18,20,22,23,23,
23;4:13,14;6:4,6,18;
7:15;10:4,15,19;11:6,
8,10,14,17,20,24;
13:5,8,11;14:1,6,8,22,
25;15:21;16:7,10;
17:11,18;18:1,3,13,

16;19:6,8,14;20:22;
21:14,16,24;22:8,15,
18,19;25:21;26:12,
20;27:14,18;28:20;
29:5;38:14,18,19;
42:24;44:7,8,18;46:8,
14,20;47:20,21;
48:11;49:3
**Dubbs' (2)**
31:9;33:1
**Dubs (1)**
27:25
**ducking (1)**
17:19
**due (1)**
23:7
**dug (1)**
10:25
**during (1)**
18:4
**duty (1)**
39:4
**dynamic (1)**
29:7

**E**

**earlier (2)**
28:11;37:19
**early (1)**
9:11
**easiest (1)**
13:18
**Edison (1)**
30:14
**effect (2)**
49:22,24
**efficiently (2)**
38:1;42:17
**efforts (1)**
6:22
**eight (2)**
41:1,4
**either (9)**
7:25;8:12;33:15;
35:16;36:22;37:17;
43:5,9;45:2
**elongated (1)**
19:21
**else (14)**
4:24;7:15;11:2;
19:19;28:23;30:17;
31:3;38:4;44:9,15;
47:18,25;49:2,13
**else's (1)**
6:12
**email (1)**
5:1
**embodied (1)**
17:8
**encompass (1)**
41:3
**end (2)**

16;19:6,8,14;20:22;
21:14,16,24;22:8,15,
18,19;25:21;26:12,
20;27:14,18;28:20;
29:5;38:14,18,19;
42:24;44:7,8,18;46:8,
14,20;47:20,21;
48:11;49:3
**end-all (1)**
12:12
**entered (3)**
5:25;42:6;49:22
**entering (1)**
49:19
**entire (2)**
13:3,5
**entitled (1)**
16:4
**entry (1)**
37:21
**equity (1)**
41:4
**essentially (6)**
13:3;23:18;26:19;
33:12;36:7;37:4
**Etkin (24)**
3:19,22;4:1,4,4,6,8,
9,11,17;6:4,5,10,17;
27:19;48:14;49:14,
15,16,18;50:13,14,15,
17
**evaluations (1)**
36:8
**even (13)**
5:15;9:9;13:5;
20:15;23:8;32:21;
33:1,9,25;42:6,14;
44:5;48:24
**event (1)**
37:18
**events (1)**
48:19
**everybody (7)**
4:7;6:12;19:19;
24:4;34:6;44:9;49:10
**everybody's (1)**
47:1
**everyone (3)**
30:16;50:21,23
**example (2)**
24:13;36:17
**except (2)**
7:9;12:22
**excessive (1)**
15:14
**excuse (1)**
38:22
**exercised (1)**
15:6
**exhibit (5)**
5:19,20;7:2;27:22;
48:3
**exhibits (1)**
7:1
**expecting (1)**
44:10
**expedited (1)**
45:20
**experience (1)**
25:7

**experienced (1)**
32:1
**experts (1)**
16:5
**expressed (1)**
47:22
**extend (1)**
43:17
**extensive (1)**
12:5
**extensively (1)**
41:15
**extent (5)**
7:23;30:23;35:17;
37:24;38:3,17;48:8;
50:3

**F**

**fact (5)**
5:20;15:16;23:17;
25:15;45:3
**factor (1)**
45:16
**factors (1)**
16:19
**facts (1)**
30:15
**fair (1)**
37:22
**faithfully (1)**
6:20
**fall (1)**
4:20
**familiar (1)**
47:1
**fancy (1)**
18:21
**far (3)**
30:23;39:20;41:14
**favorite (1)**
8:19
**Federal (2)**
15:8;34:2
**feel (1)**
22:5
**few (6)**
10:11;17:24;20:16;
28:11;36:18;38:4
**fight (1)**
10:20
**figure (3)**
23:9;29:6;46:9
**file (8)**
6:12;20:23;26:6;
35:1,16;37:23;38:4;
45:12
**filed (22)**
5:23;7:3;9:19;
11:15;17:23;20:23;
27:20,25;28:9;35:8,
15;36:3,8,22;37:6;
38:7,18;45:3,11;49:5,

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 54
of 61

6,7
**files (1)**
25:23
**filing (9)**
5:24;6:24;7:9,16;
29:4;30:19;35:7;
48:17,21
**final (1)**
44:7
**finally (3)**
6:23;48:17;49:3
**fine (5)**
5:24;9:1;29:5;30:1;
45:1
**finish (1)**
14:3
**firm (2)**
5:2;18:10
**first (18)**
7:14;8:18;9:7;15:3,
12,18;20:20;28:12,14,
17;31:6;32:4;34:7;
39:10,21;43:15;
47:21;48:19
**fleshed (2)**
23:8;29:3
**focus (1)**
15:16
**focused (1)**
43:22
**focuses (1)**
13:14
**folks (1)**
5:10
**follow (1)**
46:25
**footnote (1)**
40:24
**forces (1)**
34:24
**form (3)**
41:7;50:18,18
**formal (1)**
5:16
**fortune (1)**
14:19
**forward (12)**
6:6;20:4;31:3;
39:13,15;41:25;42:1,
18,21;43:20,22;48:22
**fought (1)**
10:25
**four (1)**
37:4
**frame (1)**
29:14
**framework (3)**
16:12;41:19,24
**FRANCISCO (1)**
3:1
**frankly (1)**
23:7
**FRCP (1)**

34:14
**frequently (1)**
18:23
**Friday (3)**
23:6;28:8,18
**front (4)**
26:10;29:10;40:8;
43:15
**fruitful (1)**
38:22
**frustrated (1)**
43:1
**frustrating (1)**
32:2
**frustration (1)**
9:13
**full (1)**
47:23
**full-blown (1)**
16:13
**fundamental (2)**
7:13;25:15
**further (1)**
6:2

**G**

**garbage (1)**
32:22
**gave (1)**
13:1
**generally (1)**
39:9
**gets (5)**
14:12;26:22,23;
27:5;48:24
**given (3)**
4:12;24:13;30:23
**glad (1)**
5:24
**gleaned (1)**
5:22
**goals (1)**
10:23
**goes (4)**
7:21;17:16;20:4;
35:2
**Good (11)**
3:7,8,20,24;4:1,8,9,
11;12:13;45:8;50:22
**Gotshal (1)**
22:24
**governs (1)**
39:12
**grant (3)**
9:7,9;15:13
**granted (5)**
19:1;32:24;35:2,9;
49:20
**grants (3)**
9:7,8;18:10
**Grassgreen (1)**
7:3

**great (2)**
23:16;32:12
**guess (8)**
3:8;6:23;9:2;27:20;
37:19;39:3;43:10;
48:20
**guidance (1)**
15:11

**H**

**habit (2)**
6:13;18:22
**Hamilton (42)**
3:12,15;4:2,3,10;
9:24;22:20;23:1;
27:13,16;29:9,23,23;
30:4,5,13;31:6,8,11,
13,16,22,24;32:9,19;
33:2,4;34:4,8,19;35:4,
7,13,21;37:14,22;
38:9,11;44:9;46:25;
47:7,22
**hand (2)**
24:23;34:5
**handful (1)**
44:2
**handle (1)**
4:13
**happen (3)**
36:2;48:23;49:8
**happening (2)**
19:9;48:15
**happens (3)**
9:6;16:15;30:17
**happy (1)**
18:5
**hard (3)**
12:6;34:14;50:21
**hate (1)**
29:20
**hear (6)**
21:2;22:11;26:23,
24;38:25;39:3
**heard (10)**
7:22;10:18;21:16,
19;30:6;38:13;44:20;
45:18,19,19
**hearing (13)**
4:17;5:9;7:7;12:15;
26:7;27:18;34:6;
44:16;46:21;47:11,
14;48:16,25
hearing-I'm-presented-something-that-is-brand-new (1)
8:10
**hearings (2)**
15:22;48:13
**heart (2)**
30:10;33:17
**heels (1)**
11:1
**heightened (4)**
32:19,24;33:20,24

**help (2)**
10:1;35:24
**helpful (2)**
44:22;45:2
**here's (1)**
26:18
**highly (1)**
15:12
**himself (1)**
42:24
**history (1)**
14:15
**hold (4)**
8:22;11:13;38:5;
46:9
**holes (1)**
29:13
**home (1)**
21:3
**Honor (57)**
3:7,12,20,24;4:1,3,
9;5:1,12,13,19;10:4;
12:25;16:7;17:10;
19:6;22:2,15,23;23:3,
16,20,22;24:24;25:4;
26:18;27:5,11,11;
28:7,14;30:4,6,18;
35:23;36:13,15,21;
37:22;39:5,16,19;
41:21;42:20;43:14,
15,24;46:1,11,14,18;
47:5;48:10;49:14,23;
50:10,11
**Honorable (1)**
3:4
**Honor's (1)**
15:3
**hope (2)**
25:6;48:12
**hopefully (2)**
6:13;21:6
**hours (1)**
8:24
**housekeeping (2)**
48:9;49:16
**huge (1)**
32:15
**Huh (1)**
3:10
**hundreds (1)**
37:4
**hybrid (1)**
36:7

**I**

**idea (1)**
38:24
**identical (1)**
16:14
**identified (2)**
5:19;34:19
**imagine (3)**

34:14;45:18,19
**implement (1)**
10:8
**implicit (1)**
17:12
**important (3)**
31:1;39:25;50:1
**impression (1)**
42:25
**inclination (1)**
44:8
**inclined (3)**
27:12;29:18;38:14
**includes (1)**
41:6
**incorporate (1)**
15:4
**incorporated (3)**
17:3;33:10,13
**incorporating (1)**
15:7
**incorporation (1)**
15:10
**Indiscernible (8)**
3:10;4:6,18;7:17;
10:13;13:2;17:23;
33:25
**individual (2)**
11:22;25:20
**individually (1)**
13:9
**informal (1)**
5:16;49:6
**insisted (1)**
15:17
**instead (1)**
41:1
**insufficient (1)**
16:16
**intend (1)**
23:18
**intention (3)**
13:18;16:21,22
**intentions (1)**
46:23
**interest (1)**
42:18
**interested (1)**
22:1
**internal (1)**
49:5
**interrupt (1)**
13:3
**interstate (2)**
18:21;25:11
**into (9)**
10:9,10,22;13:15;
14:13;15:4;33:10,13;
38:22
**introduction (1)**
9:13
**involves (1)**
25:11

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 55
of 61

**involving (1)**
48:14
**Iqbal (1)**
32:21
**issue (9)**
6:9;10:11;11:12;
12:3,20;14:13;15:14;
30:16;48:23
**issues (19)**
6:14;9:21;10:5;
13:20;14:10;17:8;
23:15,25;27:13;
30:23;31:2;33:5,6;
34:2,15;40:17;46:3;
48:2;49:5

**J**

**join (3)**
28:21;34:24;35:16
**joined (7)**
36:7,14,16,18,19,
23;37:12
**joining (4)**
3:13;4:11;29:4;
45:13
**joins (1)**
29:6
**joint (8)**
18:9;27:23,25;28:1,
3,13,23;48:6
**jointly (1)**
8:12
**joking (2)**
18:25;25:6
**Joshua (2)**
3:12;30:5
**jot (2)**
12:21;15:8
**Judge (18)**
8:18,21,24;13:16,
21;17:13,14,17;18:10,
25;20:25;21:3;25:7;
38:20,24;42:8;45:6,
21
**judges (2)**
18:20;45:9
**July (4)**
39:11;41:24;43:13,
21
**June (2)**
12:18,19
**junkie (1)**
14:17
**junkier (1)**
14:18
**junky (1)**
14:19

**K**

**keep (7)**
7:11;17:14;19:8,11;

26:24;29:21;42:20
**keeps (1)**
19:10
**key (1)**
12:22
**kidding (1)**
45:8
**kind (1)**
27:6;28:14;34:18;
39:9,12;40:4;42:3
**knew (1)**
28:15
**known (1)**
6:8
**knows (5)**
9:9;21:8;23:22;
45:20;46:8
**kudos (1)**
12:6

**L**

**Labaton (1)**
3:24
**label (1)**
12:2
**labeled (1)**
27:21
**labels (1)**
35:2
**largely (2)**
30:6,21
**last (6)**
7:8,11;8:21,24;
20:16;41:21
**last- (1)**
5:9
**last-minute (1)**
6:2
**later (1)**
20:7
**Latham (2)**
3:12;30:5
**law (7)**
8:4,8;13:20;18:9;
25:2,12;45:5
**laws (1)**
24:1
**lawsuit (1)**
17:17
**lawyers (2)**
25:10;49:10
**leaping (1)**
40:23
**least (3)**
16:14;34:6;45:11
**leave (3)**
4:14,15;50:12
**leaving (2)**
18:7;43:3
**left (1)**
46:22
**legal (2)**

9:14;31:2
**length (3)**
12:4;14:10;23:17
**liked (1)**
20:15
**likely (2)**
36:23;37:6
**line (1)**
30:25
**link (1)**
5:2
**list (1)**
3:16
**Listen (1)**
44:6
**listened (1)**
21:10
**litigated (1)**
33:17
**litigation (2)**
8:25;32:25
**little (8)**
15:9;20:13;25:3;
26:5;27:18;35:24;
40:23;41:2
**lived (3)**
14:15,23,24
**lobbying (1)**
25:16
**local (1)**
6:7
**loggerheads (1)**
17:5
**logs (1)**
34:2
**long (6)**
6:5;9:13;12:8,17;
18:19;42:7
**longer (2)**
5:21;27:25
**look (7)**
16:18;17:18;18:4;
20:19;25:2;27:12;
48:22
**looked (4)**
12:14;13:15;33:15,
25
**looking (3)**
4:19;27:2;37:3
**lost (2)**
45:23;46:6
**lot (8)**
9:21,21;15:2;16:18;
23:7;37:13;38:13;
40:3
**lots (2)**
10:20;19:18

**M**

**magnitude (1)**
15:4
**major (2)**

14:9;34:9
**makes (5)**
26:20;27:4,15;37:7;
41:23
**making (6)**
13:16;24:15;28:16;
41:11;42:21;49:12
**management (3)**
19:2;39:17;45:14
**managing-this-mega-case (1)**
19:25
**mandating (1)**
21:22
**mandatorily (1)**
24:5
**mandatory (9)**
9:11;21:21;22:10,
12,13;23:23;31:6;
32:5,13
**Manges (1)**
22:24
**many (3)**
20:17;29:13;48:13
**marked (1)**
28:11
**matter (15)**
3:5;4:12;11:5;
18:24;20:4,5;28:19;
43:2;45:6;48:9;49:1,
10,16;50:22,22
**matters (2)**
46:22;48:10
**may (11)**
9:7,8;14:2,6;19:21;
20:11;24:6;25:24,24;
35:24;49:14
**maybe (15)**
7:5;16:8,23;17:14;
20:15;23:3;26:4;28:4,
4,21;29:16;33:1;
37:16;40:22;44:21
**mean (22)**
10:14;17:11;18:17;
19:23;21:22;22:12,
15,18;24:2,4;25:3;
31:14,14,15;34:13;
35:22;37:7;39:9,24;
45:18;50:1,10
**meaning (1)**
7:19
**means (4)**
10:15;22:10;25:10;
41:8
**meantime (2)**
18:8;44:12
**mechanical (1)**
47:23
**mediation (11)**
9:12;21:21,23,25;
22:5;31:7;32:4,6,8,10,
13
**mediator (2)**
32:2,3

**meet (1)**
21:2
**meet-and-confer (1)**
6:22
**meeting (1)**
6:21
**mentioned (1)**
34:15
**merits (3)**
6:16;18:11;21:5
**merry-go-round (1)**
42:3
**metric (3)**
12:7,13,15
**metrics (1)**
12:21
**Michael (1)**
4:4
**Michelson (2)**
6:7,11
**middle (1)**
34:11
**mid-October (1)**
18:2
**might (11)**
12:15;14:4,4;22:2;
35:25;44:21,21;
45:18;48:20;50:3,4
**mind (4)**
4:19;13:14;19:8;
48:20
**mindful (2)**
7:10;45:5
**minds (1)**
6:22
**minute (3)**
4:23;5:10;7:11
**misstatements (4)**
40:6,11,15,19
**misunderstood (1)**
16:22
**modalities (1)**
22:4
**modification (1)**
7:24
**moment (1)**
34:23
**Montali (2)**
3:5;21:3
**months (1)**
17:22
**moot (1)**
11:12
**mooted (1)**
20:6
**more (14)**
7:14;8:11;9:15;
13:13,13;16:23;
19:21;21:18;25:19;
32:4;38:4;42:17,17;
43:4
**Morning (10)**
3:6,6,7,20,24,25;

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05
of 61

4:1,3,8,9
**most (6)**
14:19;26:21;27:1,8,
15;32:2
**motion (108)**
8:13,14;9:1,7,8,19;
10:8,24;11:1,4,6,8,15,
25;12:23,24;13:4,5,8,
16;14:5,11,12;15:17,
19,23,24,25;16:13,13,
20;17:8,8,12,22;18:9,
9,11,18;19:3;20:3,6,
24,24;21:5,20;23:15;
24:7,14;25:23;26:4,6,
20,25;27:3,9,23,25;
28:1,1,3,8,13,20,22,
23;29:5,5,7,17;30:10,
15;31:1;32:17,18,23;
35:1,2,9;37:17,19,21,
23,23;38:7,23;39:13;
40:9,13;41:5,23;42:7,
15;43:9;44:11;45:3,7,
12,12,17;47:13,15,15,
25;48:6;49:19,20;
50:3
**motions (14)**
11:21;13:14;17:22;
18:23;23:19;24:9,15;
36:1,10;37:4,5;38:3;
40:4;41:12
**motion's (2)**
18:5;20:2
**motivated (1)**
14:25
**move (5)**
38:1;39:13;43:22,
25;49:12
**movers (1)**
12:22
**moves (1)**
31:3
**moving (8)**
19:10;20:19;29:21;
30:19;39:14;42:1,18,
21
**much (7)**
20:1;28:24;29:7;
37:19;39:8;43:4,5
**mystery (1)**
48:16

**N**

**name (1)**
6:11
**names (2)**
3:22;6:12
**naturally (1)**
22:2
**necessarily (1)**
43:24
**necessary (2)**
22:6;49:9

**need (6)**
4:18;6:2;23:25;
27:7;29:21;31:2
**needs (7)**
15:13;23:8;30:9,13,
17;37:24;38:4
**negotiate (1)**
10:7
**negotiating (1)**
25:6
**negotiation (2)**
27:21;49:7
**negotiations (1)**
10:23
**new (2)**
27:2;31:25
**news (1)**
10:17
**next (7)**
7:23;9:5;26:15;
45:22;46:5,10,15
**night (2)**
7:8;20:17
**nine (1)**
41:6
**ninety-one (1)**
12:10
**Ninth (2)**
8:23;21:7
**nonbankruptcy (1)**
25:12
**nor (1)**
17:2
**north (1)**
42:22
**note (1)**
33:8
**noted (2)**
41:22;48:4
**nothing's (1)**
19:20
**notice (1)**
4:20
**November (7)**
45:23;46:14,18,21;
47:11;48:10,23
**nowhere (1)**
42:3
**number (9)**
10:5,24;16:11;17:2,
3;24:20,20;40:7;44:4
**numerous (1)**
34:1

**O**

**objecting (2)**
37:10;43:16
**objection (12)**
5:8,17,21;9:17;
23:18;25:14;30:8,9;
33:3;34:10;36:24;
43:17

**objection/motion (1)**
40:1
**objections (10)**
5:7,16,16;37:5;
39:16,19;41:17,19;
44:6;50:8
**objections/12b6 (1)**
36:10
**observation (2)**
24:20,20
**observed (1)**
26:12
**obviously (9)**
22:3;25:18,19;27:2;
31:17;36:15;41:19;
45:16;49:4
**occurred (1)**
39:13
**occurring (1)**
42:1
**occurs (2)**
40:2,10
**o'clock (3)**
46:19,21;47:17
**OCTOBER (5)**
3:1;12:16,19;39:15;
45:22
**off (5)**
4:14;5:20;22:6;
32:13;50:18
**offended (1)**
32:15
**offer (2)**
29:9;31:21
**offered (1)**
12:10
**offers (1)**
5:18
**officers (1)**
42:6
**often (2)**
12:8;40:14
**omnibus (2)**
5:7;36:24
**one (30)**
7:6,14;9:22;10:24;
13:21;16:11;17:2,9;
20:11,14,22;21:3,17;
22:13;23:14;24:20;
25:9;27:15;28:13;
32:2;33:5;36:23,25;
39:21;40:3,17;44:23;
45:10;46:15;49:16
**ones (3)**
5:23;14:19;19:15
**only (7)**
7:3;9:20;17:24;
24:6;41:1,3,5
**oOo- (1)**
3:2
**open (1)**
31:18
**operating (1)**

28:2
**opportunity (2)**
5:17;35:15
**oppose (1)**
28:22
**opposite (1)**
41:20
**opposition (1)**
38:5
**order (19)**
3:3;5:11,12,15;
10:8;21:22,25;31:12,
13;32:10,12;39:11,
12;41:24;43:13,21;
49:19,22,24
**ordering (3)**
21:24;22:5,9
**orders (3)**
5:6,9,25
**origins (1)**
43:13
**others (4)**
9:16;14:18;15:24;
41:20
**otherwise (2)**
34:20;44:10
**out (16)**
13:11;14:19;23:8,9;
24:23;29:3,6;35:3;
39:19;40:5,22;41:6;
42:5;44:25;46:9;
49:12
**outcome (1)**
38:25
**outline (1)**
20:20
**outlined (1)**
48:10
**outside (1)**
10:12
**over (6)**
15:17;18:15;23:1;
27:13;35:9,20
**overall (2)**
30:22;31:1
**overarching (2)**
10:23;12:3
**own (7)**
8:13;14:9;24:17;
25:7,20;35:16,19

**P**

**page (3)**
6:9;7:18;27:17
**panoply (1)**
47:23
**paper (1)**
5:23
**papers (6)**
7:1;16:18;39:10,22;
40:17,24
**Parada (1)**

3:14
**paragraph (2)**
7:19;15:9
**paralegals (1)**
12:6
**parallel (1)**
19:10
**parcel (1)**
11:21
**part (7)**
11:21;13:17,17;
16:19;24:14;49:6;
50:4
**participants (1)**
21:23
**particular (1)**
31:20
**parties (1)**
36:3
**partly (1)**
24:16
**partway (1)**
8:2
**pass (1)**
39:15
**past (3)**
21:8;40:12,18
**pencil (1)**
44:16
**pending (6)**
8:23;18:5;19:3;
20:2,4;42:7
**people (11)**
5:16,20,21;19:11;
22:1,5;32:3;35:15;
36:14,16;44:20
**PER (1)**
8:12
**PERA (32)**
3:24;4:13;5:8;6:20,
20;13:8;18:9;23:5,19;
24:3,6,17;27:20;
28:15;29:12,17,24;
34:24;35:5,14;36:6,7,
18,19;37:11;39:22;
41:22;42:11,25;43:8;
47:12;48:16
**PERA's (12)**
10:2;20:24;25:20;
26:4,5,12;27:9;33:25;
35:16;40:5,24;41:2
**perhaps (4)**
6:21;15:14;28:2;
31:22
**Period (3)**
32:24;40:14;42:7
**permissive (1)**
23:22
**personally (1)**
48:13
**perspective (1)**
24:11
**persuading (1)**

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 57
of 61

45:9
**PG&E (17)**
3:5;17:14;28:3,21;
29:6,16,16;30:21;
37:15;39:19;41:17;
44:25;45:13,22;46:5,
10;47:11
**PG&E's (3)**
23:1;29:4;43:16
**phonetic (1)**
44:10
**pick (1)**
17:20
**picture (1)**
47:14
**piece (1)**
29:12
**place (8)**
12:16;20:11;31:2;
33:7;34:10;39:11;
41:24;47:16
**placed (2)**
31:18;49:21
**plan (3)**
5:8;43:9;46:23
**planning (3)**
20:12;47:10;48:25
**plans (1)**
28:20
**plead (3)**
32:22;33:23,24
**pleading (7)**
16:16;32:19,20;
33:20,24;35:18;47:23
**pleasure (1)**
42:19
**pled (4)**
16:17;33:20;40:6,
16
**plenty (1)**
27:5
**plus (1)**
37:12
**point (31)**
9:20;10:2,10;13:19;
14:2;15:12,15;18:19;
19:2,25;20:10;26:1,2,
3,18;28:19,23;29:7,
15;30:2;32:7,13;
34:16,22;37:21;
38:16;40:5,22;41:23;
42:5,16
**pointed (1)**
39:19
**points (1)**
47:21
**polite (1)**
4:7
**poor (1)**
6:11
**position (16)**
7:22;8:6;9:14;
10:25;11:25;16:3,8,

11;18:24;19:1;20:16;
23:1,10,24;30:7;
45:10
**possible (1)**
38:2
**potential (3)**
20:9;22:1;40:20
**potentially (2)**
19:9;40:14
**power (1)**
21:25
**practical (2)**
14:14;20:5
**practice (4)**
14:24;39:13;40:9;
42:15
**Prada (3)**
45:22,23;47:4
**pre- (1)**
20:5
**precede (1)**
11:1
**precisely (1)**
23:12
**preempt (1)**
8:4
**preferable (2)**
30:1;48:20
**preliminaries (1)**
5:5
**preliminary (2)**
4:21;22:25
**prepared (1)**
27:20
**preparing (1)**
27:24
**present (1)**
23:1
**presentation (1)**
30:3
**presented (1)**
38:24
**presiding (1)**
3:5
**press (1)**
50:13
**pressing (1)**
5:21
**presumably (2)**
13:21;19:10
**presume (1)**
41:20
**presumption (2)**
13:22;28:2
**pretty (2)**
21:8;45:8
**primarily (1)**
4:12
**principal (1)**
6:14
**principle (1)**
41:12
**principles (2)**

39:10,21
**prior (4)**
4:17;15:22;34:6;
40:2
**probably (4)**
7:14;28:24,24;50:8
**problem (2)**
20:14;50:5
**problems (1)**
10:24
**procedural (1)**
33:6
**procedure (3)**
8:17;15:8;22:14
**Procedures (3)**
8:4;33:8;41:25
**proceed (1)**
34:25
**proceedings (5)**
12:4;13:24;33:7,11;
50:24
**process (14)**
19:11;26:14;34:11;
39:14,23;40:2,18;
41:11;42:21;43:1,21,
23;44:3;49:7
**programs (1)**
47:6
**progress (3)**
42:22;44:19;45:13
**promises (1)**
44:22
**proof (2)**
41:7;43:8
**properly (1)**
16:17
**proposal (14)**
7:2;23:5,6,8;24:8,
12,23,25;27:2;28:8,
15,16,17;48:7
**propose (1)**
17:18
**proposed (2)**
21:19;23:2
**proposition (2)**
10:6;11:3
**protections (1)**
48:4
**proved (1)**
21:4
**provided (1)**
48:3
**provides (1)**
45:6
**providing (1)**
31:19
**prudent (3)**
26:21;27:1,8
**PSLRA (19)**
7:20,24;8:1,4;9:15;
11:2;14:14,15;15:9;
17:2,2;33:1,8,9,11,13;
39:22,24;41:14

**PSLRA's (1)**
33:5
**public (2)**
48:5,6
**pudding (1)**
43:8
**purchases (1)**
41:3
**purpose (1)**
33:14
**purposes (2)**
15:15;47:11
**pursuant (2)**
6:1;33:12
**push (1)**
43:20
**pushed (1)**
22:13
**pushing (1)**
43:3
**put (9)**
8:22;12:1;15:14;
16:25;23:20;39:10,
21;42:2;43:13
**putting (4)**
9:11;15:15;35:1;
50:3

**Q**

**QED (1)**
22:15
**qualified (1)**
18:20
**quick (3)**
21:6,8;47:21
**quicker (1)**
43:5
**quickly (2)**
42:17;45:18
**quiet (1)**
9:22
**quite (2)**
23:7;32:1
**quoted (1)**
33:9

**R**

**raise (3)**
15:13;40:17;47:19
**raised (2)**
23:5;27:14
**rarely (1)**
25:10
**rarity (1)**
6:17
**rather (2)**
7:15;15:18
**reach (2)**
10:11;45:1
**read (2)**
6:25;7:1

**ready (3)**
5:11,12;32:10
**realize (1)**
50:2
**realized (1)**
6:21
**really (10)**
7:25;8:3;10:2;16:1;
32:11;33:4;37:3,5,8;
43:19
**reason (1)**
17:1
**reasons (2)**
26:15;29:11
**reboot (1)**
47:6
**recall (2)**
8:11,22
**received (1)**
5:1
**recently (2)**
12:18;30:15
**recollection (1)**
47:2
**recommend (1)**
28:25
**recommendation (2)**
25:25;34:23
**recommending (1)**
18:22
**reconcile (2)**
29:16;38:15
**reconciling (1)**
37:20
**record (4)**
5:13;45:8;49:21;
50:4
**reference (39)**
8:14,15,18,19;9:1;
13:17;15:10,22;17:7;
18:23;20:3,4;21:20;
23:5;24:1,8,14;25:17;
26:20;27:23,24;
28:16;29:1,18;30:24;
37:18;38:23;40:23;
41:5;42:2;43:4,10;
44:14;45:3,7,9,17;
48:6;50:4
**references (1)**
25:9
**regard (3)**
39:18;40:4,23
**regardless (1)**
26:9
**rejected (1)**
24:23
**relief (1)**
32:23
**relies (1)**
24:17
**rely (1)**
11:2
**remark (1)**

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 58
of 61

23:3
**remarks (1)**
22:25
**remember (2)**
23:16;47:8
**reminding (1)**
19:16
**removing (2)**
41:5;42:14
**reorganized (3)**
22:24;30:6;43:16
**repeat (1)**
48:11
**replace (1)**
8:5
**report (3)**
5:19;44:17;46:23
**reported (1)**
44:4
**REPORTER (5)**
46:1,3,6,11;47:5
**request (2)**
6:4;43:16
**requesting (1)**
5:2
**requests (1)**
5:14
**require (1)**
25:23
**required (1)**
22:10
**requires (1)**
45:5
**researched (1)**
41:15
**resolution (2)**
22:1;43:14
**resolve (1)**
42:16
**resolved (3)**
30:9,17;48:24
**respect (4)**
5:21;24:8,14;36:10
**respond (1)**
44:6
**responded (1)**
5:18
**respondents (2)**
35:12;37:8
**response (2)**
7:17;29:4
**responsibility (1)**
20:18
**rest (5)**
13:23;17:9;19:9;
30:21;41:8
**result (1)**
42:4
**resulted (1)**
43:21
**return (1)**
10:24
**Richard (1)**

22:23
**right (52)**
3:18;5:9;7:18;8:14,
15;9:4,11;11:24;13:4;
14:21;16:1;17:17;
18:15,16;21:13,14,17;
22:14;25:1;26:10;
30:4;32:9,18;33:10;
34:8,16,18,22;35:4,
12,21,21;36:5;38:8,9,
11;39:10,11,15;
40:14;41:8,9,17,22;
42:9,12;43:18;46:17;
47:4,18;49:13;50:20
**rightly (1)**
15:16
**rigid (1)**
17:2
**risk (1)**
29:19
**RKS (17)**
4:24,25;9:16,24;
24:16;28:22;29:16;
30:21;35:19;36:6,17;
37:12,15;38:3,13,15;
43:15
**RKS' (5)**
26:11;29:10;30:1;
37:25;39:2
**road (1)**
16:25
**rolling (1)**
43:19
**route (1)**
43:25
**Rule (8)**
14:14;20:11;33:10,
12,13;34:12,13,13
**ruled (2)**
50:11,12
**Rules (7)**
7:21;15:6,8,11;
20:2;25:23;33:14
**ruling (3)**
8:24;21:10;49:18
**run-of-the-mill (2)**
32:21;33:22

**S**

**same (5)**
4:17;21:16;27:17;
28:5,9
**SAN (1)**
3:1
**sanguine (1)**
15:18
**satisfied (1)**
35:17
**saved (1)**
5:11
**saw (2)**
7:4;28:17

**saying (13)**
7:20;11:20;12:16;
16:24;18:18;19:2,24;
24:13;26:19;32:6;
34:20;41:2;42:14
**schedule (30)**
10:7,19,21;12:22;
14:10;16:12;17:20,
20,21;21:19;22:6;
23:2,20;26:11,11,12;
27:7,14;29:12;30:22;
32:6;37:24,25;38:2,
18,23;43:3,4;45:15;
48:18
**scheduled (1)**
38:7
**schedules (8)**
17:10;26:10,13;
27:12;29:11;37:21;
38:15;46:24
**scheduling (2)**
9:3;10:15
**scienter (1)**
16:16
**screened (1)**
14:19
**second (8)**
7:18;9:8;11:3;21:7;
26:1,1,3;35:24
**secondly (2)**
14:11;48:2
**securities (25)**
7:17;13:20;17:7;
24:1,4;30:11;32:20,
25;33:14,17,18,23;
34:2;35:3,6;40:10,10;
41:1,2,4,4,6,6,8;47:24
**seeing (2)**
44:19;48:22
**seek (1)**
50:2
**seem (3)**
19:3;30:1;42:16
**seems (7)**
18:18;20:1;27:1;
42:2,3;46:16;50:11
**send (3)**
5:2;8:19;13:23
**sending (1)**
29:19
**sends (1)**
25:24
**sense (2)**
27:15;37:8
**sentence (1)**
7:23
**separate (3)**
36:1,4;41:1
**September (2)**
27:21;28:12
**session (1)**
3:4
**set (3)**

27:6;34:18;47:8
**setting (2)**
8:5;34:18
**settle (1)**
19:11
**settled (2)**
44:3,5
**seven-to-fourteen (1)**
9:6
**several (2)**
15:22;17:21
**shapes (1)**
31:4
**shebang (1)**
13:11
**sheet (2)**
7:2,5
**shorten (1)**
20:22
**shot (2)**
17:7;18:19
**side (3)**
20:10;22:11;38:19
**sides (1)**
32:11
**side's (1)**
32:6
**sign (2)**
5:8;50:18
**signature (1)**
6:8
**signed (1)**
50:19
**similar (2)**
24:15;30:15
**simply (3)**
8:5;24:11;49:20
**sitting (1)**
8:17
**sixty-some-odd (1)**
41:6
**Slack (42)**
3:6,7,9,11;5:6,12;
6:24,25;9:16,23;
15:23;19:23;22:19,
22,23,24;24:22,24;
25:2,5,8,13;26:3,18;
28:7,14;30:20,24;
35:23;36:6,13;37:3,
10;44:4,13,20;46:8,
22;49:24;50:8,10,17
**Slack's (1)**
48:17
**smack (1)**
9:11
**smoke (1)**
25:12
**so-called (5)**
5:8;9:17;15:25;
48:17,18
**somebody (2)**
32:5;34:20
**someone (2)**

6:3;38:3
**sometime (1)**
26:14
**sometimes (2)**
40:11,12
**somewhere (2)**
17:21;22:11
**sophisticated (1)**
13:20
**sorry (6)**
4:6;19:6;22:8;46:1,
11;47:5
**sort (4)**
8:2,9;36:7;45:1
**sounds (1)**
41:17
**speak (4)**
22:20;28:22;42:1,
24
**speaks (1)**
27:16
**specialist (1)**
32:14
**specific (5)**
23:15;33:7,15;35:8,
18
**specifically (2)**
9:15;34:1
**spend (2)**
14:19;37:14
**spread (1)**
12:11
**spring (1)**
26:15
**staff (1)**
49:11
**stage (2)**
9:11;19:21
**stalling (1)**
43:11
**stand (1)**
47:12
**standard (4)**
18:20;32:24;33:20,
24
**standards (3)**
21:2;32:20;35:18
**standing (1)**
25:20
**star (1)**
42:22
**start (8)**
10:6;17:21;19:18;
22:23;23:3;26:14;
27:18;41:11
**started (3)**
10:22,22;12:10
**state (3)**
3:18,22;32:23
**stated (1)**
29:11
**statement (4)**
7:18;23:12;26:4,5

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05
of 61

**status (4)**
38:6;46:21;47:2,14
**statute (1)**
15:10
**stay (6)**
4:18;33:6,11;42:6;
45:6;48:22
**stayed (3)**
42:8,10,13
**staying (1)**
42:14
**stays (1)**
17:10
**stick (1)**
43:9
**still (6)**
13:15;19:10;20:17;
23:8;26:3;47:5
**stock (1)**
41:1
**stop (1)**
15:21
**story (1)**
45:10
**strategic (1)**
50:15
**strategy (3)**
8:17;20:9;50:6
**streamlined (1)**
38:2
**stuck (1)**
14:2
**study (1)**
20:16
**stuff (1)**
25:15
**subject (3)**
4:12;36:24;49:13
**submission (4)**
27:22;28:9;31:9,19
**submissions (1)**
23:7
**submitted (3)**
5:15;20:20;39:10
**substance (1)**
30:14
**substantive (5)**
7:10,14;11:10;34:2;
36:8
**substantively (1)**
33:19
**successful (1)**
22:3
**sufficiency (28)**
9:17,19;15:25;16:3,
13;17:8,22;20:24;
23:15,17;24:10;26:7;
30:8;32:16,17;36:1,9,
24;37:19,21;39:15,18,
25;40:18;41:10,17,
19;47:15
**suggesting (1)**
19:17

**suggestion (3)**
8:12;22:4;33:1
**suggests (1)**
35:25
**Sunday (1)**
8:21
**supplement (1)**
36:8
**support (1)**
29:17
**supposed (2)**
18:8;24:19
**Supreme (1)**
33:21
**sure (7)**
12:6;15:13;25:21,
24;27:17;31:25;37:9
**surprise (2)**
36:22;47:25
**surprising (1)**
25:3
**suspected (1)**
19:21
**Swiss (1)**
29:12

**T**

**table (4)**
15:15;32:13;37:15,
19
**tactic (2)**
42:4;43:11
**talk (5)**
9:24;23:13;40:4;
44:13;46:22
**talked (3)**
23:16;31:20;40:3
**talking (3)**
16:1;23:14;38:13
**tar (1)**
14:2
**tentatively (1)**
38:7
**term (2)**
7:2,4
**terminology (1)**
15:25
**terms (13)**
9:14;19:25;20:18;
21:19;29:9;30:21,22;
31:17;33:6,8;34:9;
35:14;48:2
**terribly (1)**
29:23
**testimony (1)**
16:5
**the-night-before-the- (1)**
8:9
**theoretical (2)**
14:13;15:12
**theory (2)**
9:19;32:23

**therefore (3)**
16:4;24:1;40:20
**there'll (1)**
27:5
**thinking (1)**
28:15
**third (2)**
7:18;38:17
**Thomas (3)**
3:23;45:25;46:13
**thorny (1)**
34:1
**thorough (1)**
34:11
**though (4)**
5:15;11:6;20:15;
29:15
**thought (9)**
7:5;13:13;15:20;
19:16;22:1,16;38:1;
39:3;48:4
**thousands (2)**
35:25;37:5
**threats (1)**
25:10
**three (7)**
8:22;20:21;26:10,
15;29:10;36:3,10
**threshold (4)**
21:4;30:9,16;31:2
**thus (1)**
44:6
**timeline (1)**
10:8
**timetable (6)**
9:5,15;20:21;29:24,
25;46:25
**timing (4)**
14:10;20:18;39:18;
48:3
**tittle (2)**
12:22;15:8
**today (15)**
3:13;4:25;10:18;
20:8,8;23:14;26:5;
27:7,12;29:10,24;
30:6;39:3;46:4;48:8
**today's (3)**
4:12;46:21;48:16
**together (2)**
23:20;50:3
**told (2)**
12:18;44:10
**took (3)**
5:17;42:11;43:2
**tosses (1)**
17:17
**towards (1)**
41:25
**track (4)**
19:10;20:9;43:13;
45:8
**tracks (1)**

**19:15**
**train (2)**
19:9;20:19
**transactions (1)**
40:25
**tried (1)**
14:9
**trimmed (1)**
40:11
**true (4)**
3:9,9;14:6;29:10
**try (3)**
29:24;31:7;38:15
**trying (10)**
19:11;23:21;25:17;
29:15;38:1;42:20,25;
43:11,22;47:6
**TUESDAY (1)**
3:1
**tune (1)**
12:7
**tuned (1)**
48:22
**turn (6)**
4:15;6:16;9:23;
18:11;23:1;27:13
**twenty-four (1)**
8:24
**twenty-seven (1)**
6:25
**twenty-sixth (1)**
5:7
**two (8)**
8:20;10:23;14:9;
17:3;19:15;20:20,25;
24:21;27:22;29:20;
33:4,5;36:13;38:15;
44:19;48:15
**Twombly (1)**
32:22
**typically (2)**
16:19;40:9

**U**

**unclear (5)**
23:21;40:18;41:2,7,
10
**under (8)**
9:19;23:25;26:13,
15;28:2;32:19;33:20;
48:4
**underlying (1)**
20:4
**underscoring (1)**
48:1
**unfortunately (1)**
14:15
**unique (1)**
33:16
**unknowns (1)**
20:17
**unless (4)**

6:2;8:23;32:11;
34:23
**unnecessary (2)**
50:11,12
**unquestioned (1)**
33:21
**up (12)**
4:15;7:11;10:7;
13:22;38:5,21;39:16;
41:16,22;43:24;
44:13;48:15
**upload (1)**
49:23
**uploaded (1)**
5:6
**use (1)**
43:11
**used (2)**
12:8,8
**useful (1)**
12:15
**usually (3)**
12:8;25:12;48:14

**V**

**various (1)**
11:21
**view (14)**
10:3;11:18;12:23;
13:12;15:3,18;19:2,
25;20:11;21:11;
28:23;29:8;42:16;
47:22
**viewed (1)**
14:13
**voluntarily (1)**
28:25

**W**

**wait (9)**
4:23;17:12,16,24;
25:21;26:21;27:8;
29:6;45:23
**waited (2)**
6:18,19
**waiting (2)**
3:15;26:7
**walked-back (1)**
26:5
**wants (4)**
17:4,9;38:24;50:13
**warranted (1)**
7:24
**waste (1)**
19:4
**watch (1)**
6:19
**watched (1)**
14:24
**Watkins (2)**
3:13;30:5

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 60
of 61

**way (14)**
11:24;13:21;14:9;
16:7;17:3,10;18:6,7,
22;20:11,22;33:16;
40:9;50:11
**week (2)**
10:11;20:25
**weeks (8)**
17:25;29:20;38:4;
44:12,16,20,25;45:11
**Weil (1)**
22:24
**welcome (1)**
4:19
**what's (10)**
15:2;19:13;23:12;
26:25;27:9;29:15;
32:7;36:2;46:5;48:15
**whatsoever (1)**
50:16
**Whereupon (1)**
50:24
**whichever (1)**
3:21
**whole (6)**
13:11,19;14:13;
15:19;20:22;25:19
**who's (5)**
3:13;6:14;19:19;
21:22;24:4
**win (2)**
8:21;11:11
**window (1)**
13:11
**wine (3)**
8:19;19:1;25:7
**wish (1)**
50:2
**withdraw (31)**
5:18;8:13,15,17;
9:1;13:16;18:23;19:3;
20:2,3;21:20;23:22;
24:14;25:18;26:4,20;
27:3,23;28:25;29:18;
37:17;38:23;43:9;
44:14;45:3,7,9,17;
47:13;48:6;50:4
**withdrawal (10)**
23:4,23;24:8;
25:9,16;28:8,16;
30:24;43:4
**withdrawing (4)**
13:18;23:14;40:23;
42:1
**withdrawn (9)**
17:7;23:12,13;24:2,
3,5;26:22,23;29:2
**withdraws (1)**
8:18
**within (2)**
21:25;33:8
**without (2)**
35:1;50:19

**word (2)**
7:5;22:10
**words (4)**
11:4;16:2;26:7;
27:7
**work (3)**
24:12,20;50:21
**worked (3)**
12:6;44:3,3
**world (5)**
11:18;12:24;13:12;
32:3,22
**worried (1)**
37:8
**worry (3)**
8:20;20:8;37:20
**worrying (1)**
37:16
**worth (5)**
37:16;44:15,18,22;
49:11
**writing (1)**
19:18
**wrong (5)**
7:5;8:21;19:13,14,
16
**wrongly (1)**
15:16

**Y**

**year (3)**
12:17;26:15;43:14
**years (3)**
6:8;8:20,22
**yesterday (6)**
6:23;7:16;27:3,19,
25;31:10

**Z**

**Zoom (1)**
5:2

**1**

**1 (1)**
42:18
**10 (4)**
12:19;46:18,21;
47:17
**10:00 (1)**
3:1
**10b5 (1)**
33:20
**119 (2)**
12:11,11
**12b6 (9)**
9:20;12:1;15:23;
16:20;23:18;32:16,
17,18;47:24
**150 (2)**
12:10,11

**157 (1)**
21:2
**17 (1)**
3:1
**19 (1)**
40:6
**19th (4)**
47:4,9,17;49:1

**2**

**2 (2)**
7:18;31:9
**2,000 (3)**
35:11,12;37:8
**2023 (1)**
3:1
**20-some-odd (1)**
40:7
**21 (3)**
7:2;27:22;48:3
**23 (7)**
12:18;14:14;33:10,
12,13;34:12,14
**24 (3)**
12:16,19,19
**27th (1)**
28:12
**28th (5)**
39:11;41:24;43:13,
21;45:23

**4**

**4 (1)**
40:24
**49ers (1)**
8:21

**6**

**67 (1)**
40:25

**7**

**700 (1)**
35:20
**7023 (5)**
10:8;15:7;33:10;
39:13;49:19
**750 (1)**
36:17
**7th (6)**
46:14,18,21;47:11;
48:10,23

Case: 19-30088    Doc# 14083    Filed: 10/18/23    Entered: 10/18/23 10:41:05    Page 61
of 61