KELLER BENVENUTTI KIM LLP
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, CA 94105
Tel: 415 496 6723
Fax: 650 636 9251

ROVENS LAMB LLP
STEVEN A. LAMB (SBN 132534)
slamb@rovenslamb.com
Telephone: (310) 536.7830
Facsimile: (310) 872.5489
2601 Airport Drive, Suite 370
Torrance, California 90505

LAW OFFICES OF JENNIFER L. DODGE INC.
Jennifer L. Dodge (#195321)
(jdodgelaw@jenniferdodgelaw.com)
2512 Artesia Blvd., Suite 300D
Redondo Beach, California 90278
Tel: (310) 372.3344
Fax: (310) 861.8044

*Attorneys for Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> *\* ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM)* | Case Nos. 19-30088 (DM) <br><br> (Lead Case) (Jointly Administered) <br><br> **PG&E'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLAIMANT'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: December 19 2023 <br> Time: 10:00 a.m. (Pacific Time) <br> Place: (Tele/Videoconference Only) <br> United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STANDARD OF REVIEW | 2 |
| III. | UNDISPUTED MATERIAL FACTS | 2 |
| IV. | LEGAL ARGUMENT | 4 |
| | A. The Claim Is Time-Barred. | 4 |
| | B. PG&E Has Established Prescriptive Rights Over the Komir Property. | 5 |
| |     1. PG&E satisfies all the elements of a prescriptive easement against the prior owners, perfected its right, and the easement now runs with the land. | 5 |
| |     2. Should it be determined that PG&E did not acquire a prescriptive easement against the prior owners, PG&E can show it has satisfied all elements of a prescriptive easement against Claimant. | 8 |
| |     3. PG&E's prescriptive rights are intact following minor alterations to the Transmission Lines in 2018. | 8 |
| |     4. PG&E's payment of property taxes was not required. | 10 |
| | C. Claimant Seeks Relief Unavailable to Him. | 13 |
| | D. Claimant's Motion Is Riddled With Disputed Factual Issues that Foreclose Summary Judgment. | 14 |
| V. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................. 2, 14

*Barlow v. Ground*,
    943 F.2d 1132 (9th Cir. 1991) ..................................................................................... 2, 13

**California Cases**

*Bertram v. Orlando*,
    102 Cal. App. 2d 506 (1951) ............................................................................................. 5

*Capogeannis v. Superior Court*,
    12 Cal. App. 4th 668 (1993) ............................................................................................. 4

*Cleary v. Trimble*,
    229 Cal. App. 2d 1 (1964) .............................................................................................. 11

*Flengenhauer v. Soni*,
    121 Cal. App. 4th 445 (2004) ........................................................................................... 7

*Gilardi v. Hallam*,
    30 Cal. 3d 317 (1981) ................................................................................................ 7, 11

*Guerra v. Packard*,
    236 Cal. App. 2d 272 (1965) ....................................................................................... 9, 10

*Hansen v. Sandridge Partners, L.P.*,
    22 Cal. App. 5th 1020 (2018) .................................................................................... 11, 12

*Hoffman v. 162 N. Wolf LLC*,
    228 Cal. App. 4th 1178 (2014) ......................................................................................... 8

*Husain v. California Pacific Bank*,
    61 Cal. App. 5th 717 (2021) ............................................................................................. 7

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003) .................................................................................................. 13

*Kachadoorian v. Calwa County Water Dist.*
    96 Cal. App. 3d 741 (1979) ............................................................................................ 13

*Kytasty v. Godwin*,
    102 Cal. App. 3d 762 (1980) ........................................................................................ 7, 8

*Mangini v. Aerojet General Corporation*,
 12 Cal. 4th 1087 (1996)..................................................................................................... 4

*Matthiessen v. Grand*,
 92 Cal. App. 504 (1928).................................................................................................... 10

*Mehdizadeh v. Mincer*,
 46 Cal. App. 4th 1296 (1996)............................................................................................ 12

*Otay Water Dist. v. Beckwith*,
 1 Cal.App.4th 1041 (1991)............................................................................................ 7, 12

*People's Water Co. v. Anderson*,
 170 Cal. 683 (1915)........................................................................................................... 11

*Rankin v. De Bare*,
 205 Cal. 639 (1928)............................................................................................................. 4

*Shamsian v. Atlantic Richfield Co.*,
 107 Cal. App. 4th 967 (2003).............................................................................................. 5

*Silacci v. Abramson*,
 45 Cal. App. 4th 558 (1996).............................................................................................. 12

*Spar v. Pac. Bell*,
 235 Cal. App. 3d 1480 ........................................................................................................ 4

*Spaulding v. Cameron*,
 38 Cal. 2d 265 (1952) (Traynor, J.).................................................................................... 4

*Taormino v. Denny*,
 1 Cal. 3d 679 (1970)..................................................................................................... 5, 11

*Ward v. City of Monrovia et al.*,
 16 Cal. 2d 815 (1940)................................................................................................... 9, 10

*Warsaw v. Chicago Metallic Ceilings, Inc.*,
 35 Cal. 3d 564 (1984)............................................................................................... 5, 6, 14

*Zimmer v. Dykstra*,
 39 Cal. App. 3d 422 (1974)............................................................................................... 11

**California Statutes**

Cal. Civ. Code
 § 1104............................................................................................................................. 7, 8

Cal. Civil Code
 § 1007.................................................................................................................................. 6

**Other Authorities**

Fed. R. Bankr. P. 7056 and 9014(c) ................................................................................ 2

Fed. R. Civ. P. 30(b)(6) ................................................................................................... 3

Federal Rule of Civil Procedure 56 ................................................................................ 2

PG&E Corporation ("**Holdco**") and Pacific Gas and Electric Company ("**PG&E**"), as debtors and reorganized debtors (collectively, the "**Debtors**," or as reorganized, the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") submit this memorandum of points and authorities in opposition to the *Notice of Claimant's Second Motion and Claimant's Second Motion for Partial Summary Judgment of Issues in Reorganized Debtors Objection to Claim #2090 and Claimant's Response Thereto* (the "**Motion**"), filed by Amir Shahmirza and Komir, Inc. (together, "**Claimant**" or "**Komir**"). In support of this opposition, PG&E submits the Declarations of Steven A. Lamb ("**Lamb Decl.**"), Mark Galicia ("**Galicia Decl.**"), Elouise Jadhav ("**Jadhav Decl.**"), Melanie Brayton Hildebrand ("**Hildebrand Decl.**"), Michael Sosinski ("**Sosinski Decl.**") and John Raines ("**Raines Decl.**"), filed concurrently herewith, and further state the following:

I.     **INTRODUCTION**

Claimant's Motion raises more material factual disputes than it resolves. Not only does Claimant overstate the Court's ruling on the first motion for partial summary judgment,[1] but Claimant's second Motion focuses on red-herring arguments about property taxes and alleged "consent" to the Transmission Lines to dodge the fact that PG&E established prescriptive rights to the Komir Property. The instant Motion necessarily fails because:

(1) Claimant's underlying trespass and nuisance claims are time-barred. The overhead transmission lines (the "**Transmission Lines**") traversing the Komir Property have been in place and clearly visible for decades, and Claimant knew of them <u>for over 17 years before he objected to them</u>.

(2) PG&E established a prescriptive easement for the Transmission Lines over the Komir Property decades before Claimant bought the Komir Property. Those prescriptive rights run with the land. PG&E's prescriptive rights remain intact following a minor alteration to the

---

[1] The Court held that PG&E's recorded easements to place and maintain transmission lines on Parcel 2 were extinguished by final order in 1983. (Dkt. No. 13832 at 5:14-18). That order is not a final judgment and remains subject to appeal.

Transmission Lines in 2018.[2] Payment of taxes is not required to establish a prescriptive easement and the requirement that the prescriptive easement be "hostile" is not rebutted by Claimant's self-serving assertion that he consented to the lines prior to 2018 through his lack of formal objection.

(3) Claimant seeks relief unavailable to him because, as a matter of fact and law, the Transmission Lines cannot be relocated.

(4) At minimum, several material factual issues remain regarding the nature of PG&E's use of aerial space, the deviation of the new Transmission Line's height and location from its historical occupation, and the import of that deviation.

If the Court agrees with any one of these arguments, Claimant's Motion must fail.

## II. STANDARD OF REVIEW

Bankruptcy Rules 7056 and 9014(c) make Federal Rule of Civil Procedure 56 applicable to all contested matters such as this claim objection. Fed. R. Bankr. P. 7056 and 9014(c). Under Rule 56, the Court cannot grant summary judgment unless the party moving for summary judgment can show that, under applicable law, there can be only one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Ruling on a summary judgment motion, the Court must construe the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991); see also Fed. R. Civ. P. 56 (summary judgment cannot be granted unless moving party demonstrates that there is "no genuine issue as to **any** material fact") (emphasis added).

## III. UNDISPUTED MATERIAL FACTS

Claimant's Motion omits material facts critical to the outcome of its Motion. As such, PG&E offers the following additional material facts for consideration.

PG&E has maintained the Transmission Lines over the Komir Property for decades, since

---

[2] The *de minimis* changes fall squarely within PG&E's pre-existing prescriptive rights. It would also be manifestly unjust and inequitable for Claimant to enter into multiple temporary construction easements at great expense to PG&E and then assert that a minor deviation in the lines' height now eviscerates PG&E's longstanding prescriptive rights to keep and maintain the Transmission Lines.

long before Claimant acquired the Property in 2000.[3]  The Transmission Lines are, and at all relevant times have been, open and obvious.  They are clearly visible from the Komir Property.  *See* Hildebrand Decl. at ¶¶ 1-5.

      The Transmission Lines are part of PG&E's critical electric infrastructure.  They are attached to the PG&E Transition Station on PG&E property that is adjacent to the Komir Property and serve numerous PG&E utility customers – residential, industrial, and commercial.  The Transmission Towers are part of the PG&E Transition Station north of the Komir Property and have never been on Komir Property.  Galicia Decl. at ¶¶ 1-6; Jadhav Decl. at ¶¶ 1-7; Sosinski Decl. at ¶¶ 1-6; Lamb Decl. at Ex. A (Deposition Transcript of Amir Shahmirza/Komir, Inc. pursuant to Fed. R. Civ. P. 30(b)(6) ("**Shahmirza Tr.**") at 19:22-20:20; 21:8-21).

      The Transmission Lines run from north to south over the Komir Property and connect to Transmission Towers that are adjacent to, but south of, the Komir Property.  Residential properties lie immediately to the west of the Transmission Lines, and a complex system of freeway and roadway connections adjacent to the San Francisco International Airport lies immediately to the east.  The Transmission Lines cannot be relocated off the Komir Peroperty.  To do so is infeasible as it would require PG&E to obtain new land rights and involve substantial cost and effort.  Sosinski Decl. at ¶¶ 1-6.

      In 2018, the Transmission Towers to the north of the Komir Property were relocated within the PG&E Transition Station, aligned just as they had always been. When new Transmission Towers were erected in 2018 to the north of the Komir Property, they too were located within the Transition Station within the same alignment.  Galacia Decl. at ¶1-7.  After relocating the Transmission Towers, the Transmission Lines were raised sightly, by 4.9 feet, on the north Transmission Tower within the Transition Station.  At the lowest elevation over the Komir Property the Transmission Lines were not lowered.  Raines Decl. at ¶¶ 1-15 and Exs. A-1 through A-4 (LiDAR Diagrams showing height and alignment of conductor lines and towers).

---

[3] In fact, the Transmission Lines were placed over the Komir Property for decades before the prior owners, the Hildebrands, owned the property.  Hildebrand Decl. at ¶¶ 1-5.


## IV. LEGAL ARGUMENT

### A. The Claim Is Time-Barred.

Without even turning to the substance, this Court should conclude that Claimant's Motion is time-barred. Contrary to Claimant's assertion that the Transmission Lines are temporary and abatable, the law is clear that the Claim sounds in permanence—whether under theory of nuisance or trespass. *See Spaulding v. Cameron*, 38 Cal. 2d 265, 267 (1952) (Traynor, J.) ("The clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility"); *Capogeannis v. Superior Court*, 12 Cal. App. 4th 668, 678 (1993) ("Regardless of literal abatability, where as a practical matter either abatement or successive lawsuits would be inappropriate or unfair then the nuisance may be regarded as permanent and the plaintiff relegated to a single lawsuit, subject to a single limitation period, for all past and anticipated future harms."). "In cases of a permanent trespass or nuisance, the damages are complete when the nuisance comes into existence and plaintiff is required to bring one action for all past, present and future damages within three years after the permanent nuisance/trespass has occurred." *Spar v. Pac. Bell*, 235 Cal. App. 3d 1480, 1485; *see also Rankin v. De Bare*, 205 Cal. 639, 641 (1928).

In fact, the California Supreme Court recognized in *Mangini v. Aerojet General Corporation* that it is precisely such public utility structures that should be treated as permanent for statute of limitations purposes:

> [I]n in a strictly literal sense even a nuisance represented by an encroaching building or an underlying public utility pipeline might be discontinued or abated, 'at any time,' by tearing down the building or digging up the pipeline. But as *Spaulding* makes clear, it was just such situations that the concept of permanent nuisance, as an exception to the preexisting rule that all nuisances should be treated as abatable and thus continuing, was developed.

12 Cal. 4th 1087, 1100 (1996).

The claim is therefore subject to a three-year statute of limitations. *See Spar*, 235 Cal. App. 3d at 1485. The statute of limitations for a trespass begins to run the moment the trespass occurs. *Bertram v. Orlando*, 102 Cal. App. 2d 506, 506-08 (1951). Similarly, the statute of

limitations for a permanent nuisance commences at the onset of the nuisance. *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 979 (2003).

The Transmission Lines existed over the Komir Property for decades, since before the prior owners, the Hildebrands, owned the property. Claimant admits to having had notice of their existence since at least 2000, yet he waited over 17 years, until 2018, to file his Complaint. And, as discussed in detail below, the *de minimis* change in the height of the Transmission Lines in 2018 does not change PG&E's prescriptive rights such that the clock for a nuisance or trespass claim would restart. Therefore, under either a trespass or nuisance theory, the three-year statute of limitations ran well before Claimant brought his action in 2018. The late complaint cannot now be saved.

Claimant is well aware of the impact of the statute of limitations on his claims. In 2014 the San Mateo Superior Court issued a judgment against Komir and in favor of the County of San Mateo, finding that a pump station located on the Komir Property and servicing the Flood Control Channel was a public utility. *See* Shahmirza Tr. at 81:5-83:14 and Ex. 15 to Shahmirza Tr. ("Statement of Decision and Judgment.") at 3:25-4:7 ("In light of this evidence, it is clear that the pump station has been present on Plaintiff's property far longer than the three year statute of limitations that applies to trespass and nuisance claims.")

### B. PG&E Has Established Prescriptive Rights Over the Komir Property.

A prescriptive easement ripens when use of the property is (1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under a claim of right for a five-year period. *Taormino v. Denny*, 1 Cal. 3d 679, 686 (1970). Each of the elements necessary to create an easement by prescription is a question of fact. *Warsaw v. Chicago Metallic Ceilings, Inc.*, 35 Cal. 3d 564, 570 (1984). Claimant's Motion omits discussion of the elements of a prescriptive easement and instead concludes, without support, that PG&E's use prior to 2018 was permissive and that PG&E was required, but failed, to pay property taxes.

   1. PG&E satisfies all the elements of a prescriptive easement against the prior owners, perfected its right, and the easement now runs with the land.

1	Claimant's Motion focuses on events since 2018, but misses the fact that PG&E perfected
2	its prescriptive easement against the prior owners in 1992, five years after they purchased the
3	Komir Property.[4]
4	The use of the Transmission Lines was open and notorious because the Transmission Lines
5	were visible and hung over the Komir Property for the prescriptive period following Hildebrand's
6	acquisition of the Komir Property in 1987.  The previous property owners acknowledge PG&E's
7	the presence of the overhead Transmission Lines that crossed the Komir Property at the time they
8	acquired the property.  Hildebrand Decl. at ¶¶ 1-5. [5]
9	The previous property owners acknowledge PG&E's overhead Transmission Lines crossed
10	the Komir Property.  Hildebrand Decl. at ¶¶ 1-5.  PG&E's use of the Komir Property with its
11	Transmission Lines has been open and notorious at all times since 1987.  PG&E's use of the
12	Transmission Lines has been continuous and uninterrupted for during the Hildebrand ownership.
13	Claimant admits the Transmission Lines were present at the time it acquired the Komir Property in
14	2000.  Raines Decl. at ¶ 16 and Ex. A-5; Lamb Decl. at Ex. A, Shahmirza Tr. at 19:22-20:3.
15	Whether PG&E's use of the aerial space on the Komir Property is hostile is a question of
16	fact determined by the circumstances and relationship between the parties.  *Warsaw v. Chicago*
17	*Metallic Ceilings, Inc.*, 35 Cal. 3d 564, 572 (1984); see also *Husain v. California Pacific Bank*, 61
18	Cal. App. 5th 717, 732-33 (2021) (where evidence that the use was permissive is susceptible to

---

[4] Specifically, the prescriptive period began upon the conveyance of the property by the State Department of Transportation (Caltrans) to Neil F. Hildebrand and Melanie Hildebrand on June 25, 1987.  Hildebrand Decl., Ex. A.  Although Caltrans acquired title to the property four years earlier in 1983 through the Judgment of Condemnation, no prescriptive claim arose during the period of Caltrans' ownership.  Cal. Civil Code § 1007 (providing that "no possession by any person, firm or corporation no matter how long continued of any land, water, water right, easement, or other property whatsoever … dedicated to or owned by the state or any public entity, shall ever ripen into any title, interest or right against the owner thereof.")

[5] PG&E's use of the Komir Property with its Transmission Lines has been open and notorious since at least 1987.  Further, Claimant testified that he has been aware of the Transmission Lines since at least 2000, showing not only that PG&E's use has been open and notorious but also continuous and uninterrupted.  Lamb Decl. at Ex. A, Shahmirza Tr. at 19:22-20:3.

conflicting inferences, a question of fact arises).

*Otay Water Dist. v. Beckwith*, 1 Cal.App.4th 1041 (1991) is instructive here. In *Otay*, a water district constructed and operated a reservoir for over 20 years, pursuant to a prescriptive easement, and without permission from the landowner. The *Otay* court explained that "the requirement of 'hostility' means the claimant's possession must be adverse to the record owner, unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter." *Id.* at 1045 (internal citations omitted). The water district submitted a declaration establishing its hostile use under a claim of right without permission of the landowner for over 20 years and the court upheld the district's prescriptive easement. *Id*. at 1046.

PG&E's occupation of the Komir Property meets the standard of hostility because PG&E's occupation of the Komir Property was adverse to the property interests of the prior owners. PG&E did not seek consent from the prior owners because it believed it had a claim of right to occupy the Komir Property pursuant to its easements. The previous property owners confirmed that they did not give PG&E consent to occupy the Komir Property with the Transmission Lines because they also believed PG&E had easements. Hildebrand Decl. at ¶¶ 1-5. It does not matter that PG&E continued to occupy the Komir Property under a mistaken claim of right, despite Caltrans' acquisition of the property through eminent domain proceedings. California courts have recognized and enforced prescriptive rights even though they were acquired due to error or mistake. *Gilardi v. Hallam*, 30 Cal. 3d 317, 321-322 (1981)(recognizing "… [T]he rule is settled in California that the requisite hostile possession and claim of right may be established when the occupancy or use occurred through mistake." *Flengenhauer v. Soni*, 121 Cal. App. 4th 445, 449 (2004)("Claim of right does not require a belief or claim that the use is legally justified. It simply means the use of the property was used without permission of the owner of the land.")

Once a prescriptive easement ripens, it transfers with the sale of the property "provided the marks of its burden are open and visible." *Kytasty v. Godwin*, 102 Cal. App. 3d 762, 770 (1980); Cal. Civ. Code § 1104. Whether the easement is disclosed in the transfer of the Komir Property to Claimant is inconsequential. *Id*.; see also *Hoffman v. 162 N. Wolf LLC*, 228 Cal. App. 4th 1178, 1184, 1199 (2014) (holder of prescriptive easement for landscaping and ingress/egress had no duty

to disclose easement to purchaser of servient estate). PG&E's prescriptive easement therefore was perfected prior to Claimant's ownership, has been maintained ever since, and is enforceable against Claimant. *See Kytasty*, 102 Cal. App. 3d at 770. For this reason alone, Claimant's Motion fails outright.

2. Should it be determined that PG&E did not acquire a prescriptive easement against the prior owners, PG&E can show it has satisfied all elements of a prescriptive easement against Claimant.

Even if it is determined that PG&E did not acquire a prescriptive easement against the prior owners, PG&E can establish all elements of a prescriptive easement against Claimant. As established above, use of the Transmission Lines is open and notorious because the Transmission Lines are visible and hung over the Komir Property for decades prior to Claimant's purchase of the Property in 2000 and continued to be open and notorious for at least five years after Claimant purchased the property; use has been continuous and uninterrupted for decades, well beyond the five-year statutory period after Claimant purchased the property.[6] With the benefit of hindsight, Claimant now asserts that he consented to the utility lines prior to 2018 and terminated his consent when PG&E moved the lines. However, Claimant has offered no evidence other than a self-serving declaration concluding that PG&E's use was permissive prior to 2018. PG&E strongly disputes that the parties' relationship would establish permissive use. Therefore, at minimum, a factual dispute remains regarding whether the use of the property was hostile. As hostility is an essential element of a claim for prescriptive easement, it is material and must be determined by a trier of fact.

3. PG&E's prescriptive rights are intact following minor alterations to the Transmission Lines in 2018.

Claimant's Motion hinges on the bald assertion that he revoked his "consent" in 2018, when PG&E altered the Transmission Lines' height. Again, Claimant's revocation of consent is irrelevant to PG&E's perfected prescriptive easement against the prior owners. Minor alterations in the location of utility facilities do not defeat a prescriptive easement where there is not a

---

[6] PG&E kept the Transition Station in service even during its 2018 electric transmission project.

resulting material or substantial increase in the burden imposed on the servient tenement. For example, in *Ward v. City of Monrovia et al.*, the city did not forfeit its right to its prescriptive easement by placing a reconstructed pipeline approximately five feet away from old pipe because "there was not such a substantial deviation in the place or alteration in the use and enjoyment of the easement" to be considered a "material" alteration. *Ward v. City of Monrovia et al.*, 16 Cal. 2d 815, 821 (1940). In *Guerra v. Packard*, similarly, the trial court's determination that there was no substantial deviation in a roadway was upheld despite testimony that certain stretches of the new road "were anywhere from 150 feet to one-half mile away from the original" trail. 236 Cal. App. 2d 272, 283-84 (1965).

Given that the alterations in *Ward* and *Guerra* were determined to be immaterial, Claimant's assertion that the Transmission Lines have been substantially lowered falls flat as a matter of law. The alignment of the Transmission Lines have not changed. Raines Decl. at ¶¶ 1-15 and Exs. A-1 through A-4 (LiDAR diagrams reflecting that alignment has not changed and height is slightly lowered at the northernmost Transition Tower within the Transition Station and not on Komir Property, and that height of the lowest conductor line over the lowest portion of the Komir Property has not changed).

Claimant concedes that he never measured the height of the Transmission Lines and Transmission Towers, Shahrmiza Tr. at 26:1-16, but alleges that he was told, by unspecified "PG&E representatives" at some point, that the Transmission Lines were lowered by 11 feet from their previous location (Mot. at p. 6.). This is simply not accurate. While the conductor lines attached to the northern Transmission Tower were lowered 4.9 feet, that is within the PG&E Transition Station, and the lowest point of the lowest conductor line over the Komir Property now is no lower than the lowest conductor line before the 2018 Transmission Tower Project. Raines Decl. at ¶¶ 1-15 and Exs. A-1 through A-4. The conductor lines also remain in the same alignment following the 2018 Transmission Tower project. Raines Decl. at ¶¶ 1-15 and Exs. A-1 through A-4; Galicia Decl. at ¶¶ 1-6 and Exs. 1-4 attached thereto. So, Claimant is plainly incorrect that the lines have been lowered by 11 feet as there is no change in conductor height at the lowest point over the Komir Property. Further, Claimant has not produced any evidence that

he has suffered any substantial loss of use of the property since PG&E's reconductoring of the Transmission Lines. On the contrary, after PG&E's electric transmission project concluded in 2018, Claimant continued to rent out portions of the Komir Property to PG&E.[7] Jadhav Decl. at ¶ 8.

A minor height adjustment of 4.9 feet within the Transition Station does not represent a substantial deviation from PG&E's past use of the Komir Property, nor does it adversely burden the Claimant. Indeed, any development, such as a building, would not be within the Transition Station, would be situated over the storm channel, and would be situated beneath the lowest point of the conductors over the Komir Property. *See* Shahmirza Tr. at 42:2-43:14, 57:7-19, and Exs. 6-8 thereto (reflecting Claimant's purported "design plans," which clearly show the proposed building directly over the flood control channel, and for which Claimant has performed no seismic or environmental testing and for which Claimant has not submitted to the City or County any plans or permits).

Further, it would be unjust for Claimant to rent out his property to PG&E for the electric reconductoring project during which PG&E is reconstructing its towers and reconductoring the Transmission Lines, only for the Claimant to then assert a claim that PG&E is not permitted to do the work it had set out to perform.

The *de minimis* change in location therefore does not extinguish PG&E's prescriptive rights. *See Ward*, 16 Cal. 2d at 821; *Guerra*, 236 Cal. App. 2d at 283-84. Regardless, whether the deviation is material such that it would affect PG&E's prescriptive rights is yet another disputed fact that must be weighed in the context of the land. *See Matthiessen v. Grand*, 92 Cal. App. 504, 510 (1928). The resolution of this issue requires weighing competing (disputed) evidence and therefore defeats Claimant's Motion.

          4.     PG&E's payment of property taxes was not required.

Claimant's longshot argument is that PG&E cannot have established a prescriptive

---

[7] PG&E acquired several temporary construction easements on the Komir Property from 2018 through as recently as August 2022, at a cost to PG&E and in favor of Claimant for $444,536.00. Jadhav Decl. at ¶ 7.

easement because it failed to pay property taxes. A prescriptive easement requires establishment of the same elements as acquisition of fee title by adverse possession except that "payment of taxes is required only if the easement has been separately assessed." *Gilardi v. Hallman*, 30 Cal. 3d 317, 321 (1981). Claimant conflates PG&E's non-exclusive prescriptive right to use airspace with a fee interest in the property by suggesting that PG&E was somehow required to pay property taxes in order to preserve a claim for prescriptive easement. *See Zimmer v. Dykstra*, 39 Cal. App. 3d 422, 430, n.5 (1974) (the fact that plaintiff did not pay taxes on disputed land did not preclude acquisition of prescriptive easement by plaintiff and the burden of demonstrating that the easement was separately assessed was on the owner of the servient estate); *Cleary v. Trimble*, 229 Cal. App. 2d 1, 11 (1964). Put simply, use of property without payment of taxes will not ripen into title, *People's Water Co. v. Anderson*, 170 Cal. 683, 684 (1915), but does not defeat a claim for prescriptive easement, *Taormino v. Denny*, 1 Cal. 3d 679, 686 (1970).

The single case Claimant relies on for support is distinguishable and, applied here, would lead to an absurd result. In *Hansen v. Sandridge Partners, L.P.*, a neighboring landowner sought to quiet title to an alleged 10-acre prescriptive easement "to the exclusion of" the rightful owner, leaving the owner with "no right to use or occupy any portion" of that property. 22 Cal. App. 5th 1020, 1033-34 (2018). Though the plaintiff "labeled [the claim] as a 'prescriptive easement,' the interest they sought would 'divest [Sandridge] of nearly all rights that owners customarily have' including access and usage." *Id.* at 1034. The court determined that, because the interest sought was the "practical equivalent of an estate," the neighboring land owner was required to meet all elements of adverse possession including payment of taxes on that land. *Id*. Rendering its decision, the court cautioned that while all easements involve the use of another's property that cannot be interfered with by the owner, "that does not mean that all easements are the practical equivalent of an estate." *Id.*

The fact that the Transmission Lines traverse only aerial space over the Komir Property makes them inherently non-exclusive as Claimant is still able to use his entire parcel, including the land below the lines and all sub-surface area. This fact alone distinguishes this case from *Hansen*. But even if the Transmission Lines were determined to be exclusive, prescriptive easements have

been granted where the use of the property is much more intrusive than overhanging transmission lines. In *Otay*, a water district quieted title to a prescriptive easement for exclusive use of a water reservoir on the servient estate to the exclusion of the owners. *Otay*, 1 Cal. App. 4th at 1048. The *Otay* court granted the exclusive prescriptive easement and determined payment of taxes was not required because the water district's use was not "tantamount to a fee estate" as the easement still granted "significantly less than fee title." *Id*. Specifically, "[i]f Otay stops using the property as a reservoir or increases the burden on the Beckwith's property, Otay's easement can be taken away. Such a restricted use is not the same as a fee interest." *Id*. So too here. PG&E holds significantly fewer rights than a fee estate, such as use of the land below the Transmission Lines. Similarly, should PG&E ever cease operation of the Transmission Lines, its easement could be extinguished. Thus, the prescriptive easement is not tantamount to a fee interest and payment of taxes is not required. *Id.*

   Case law since *Otay* also suggests that greater deference is given to holders of exclusive prescriptive easements that serve important public purposes. *See, e.g.*, *Mehdizadeh v. Mincer*, 46 Cal. App. 4th 1296, 1307 (1996) (distinguishing *Otay* as having a "public health or safety basis" for granting an exclusive easement); *Silacci v. Abramson*, 45 Cal. App. 4th 558, 563-64 (1996) (acknowledging the same). Like the Otay Water District, PG&E has a strong safety interest in preserving the prescriptive right to the aerial space where the Transmission Lines run, further supporting that PG&E has established a prescriptive easement rather than a fee estate. Applying *Hansen* to the instant case would render every prescriptive easement for utility lines as the functional equivalent of a fee take of the estate. This outcome would be absurd.

   Even if Claimant stated a colorable argument that PG&E's use of the property is so exclusive as to be a fee estate, this creates yet another unresolved issue of material fact as to whether PG&E's use is more akin to the fee estate in *Hansen* or the easement created in *Otay*. PG&E has established, and case law supports, that PG&E was not required to make payment of any taxes to preserve its prescriptive rights over the Komir Property. However, should this Court disagree, the question of whether PG&E's use of aerial space was tantamount to a fee estate such that payment of property taxes was required to preserve prescriptive rights presents a factual

dispute that must be given further consideration. Given that, as PG&E has demonstrated, this fact is, at the very least, disputed, the Court must deny the instant Motion. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

### C. Claimant Seeks Relief Unavailable to Him.

Claimant has asserted, without regard for the facts or law, that the Transmission Lines can be removed from the Komir Property and repositioned elsewhere. This is a nonstarter; Claimant has neither moved for injunctive relief nor established any elements that may otherwise avail a party of the extraordinary relief of an injunction. *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1352 (2003) (holding that "the extraordinary remedy of injunction" for trespass cannot be granted absent a showing of the likelihood of irreparable harm that cannot be adequately compensated with damages).

In any event, the type of relief Claimant seeks is not available to him. *See Kachadoorian v. Calwa County Water Dist.* 96 Cal. App. 3d 741, 747 (1979) ("Where a public utility subjects a landowner's property to a public use and the necessity of maintaining the use has been established, the landowner is not entitled to quiet title or to injunctive relief; rather, his remedy is by way of damages in the nature of inverse condemnation.") Even where an easement was considered abandoned and the public utility's claim for prescriptive easement ultimately failed, the long-existing public project was given a presumption of public necessity and the property owner was relegated to an action for damages. *Id*. at 749-50. Similarly here, even if the Court finds that PG&E does not hold a prescriptive easement, Claimant is barred from any recovery other than monetary damages.

Moving the Transmission Lines is also infeasible. Residential properties lie immediately to the west of them, and a complex system of freeway and roadway connections adjacent to the San Francisco International Airport lies immediately to the east. The Transmission Lines attached to the Transition Station and are part of critical infrastructure in a public utility to serve numerous residential, industrial, and commercial utility customers. The Transmission Towers are positioned north of the Komir Property within the PG&E Substation and have never been on Komir Property. They must continue to be attached to the PG&E Transition Station. The Transmission Towers

south of the Komir Property cannot be relocated around the Komir Property. PG&E does not possess land rights to that property, and destruction of the south Transmission Towers and emplacement around the Komir Property would be extremely costly. *See* Galicia Decl. at ¶¶ 1-6 and Exs. 1-4; Raines Decl. at ¶¶ 1-15 and Exs. A-1 through A-4; Sosinski Decl. at ¶¶ 1-6; Jadhav Decl. at ¶¶ 1-7. Accordingly, as a matter of fact and law, Claimant is not entitled to removal or replacement of the Transmission Lines regardless of the ultimate outcome of the prescriptive easement issue at trial.

### D. Claimant's Motion Is Riddled With Disputed Factual Issues that Foreclose Summary Judgment.

The question of whether the elements of a prescriptive easement have been established is a question of fact. *Warsaw*, 35 Cal. 3d at 570. That question cannot be resolved at this juncture because several material factual disputes remain, including, but not limited to:

- Whether Claimant's Complaint, filed over 17 years after he acquired the Komir Property and had notice of the overhanging Transmission Lines, is time barred;
- Whether PG&E established prescriptive rights against the prior owner that run with the land;
- Whether PG&E's use of certain aerial space over the Komir Property is hostile;
- Whether PG&E's prescriptive rights are intact following the *de minimis* alteration of the Transmission Lines in 2018;
- Whether PG&E's prescriptive rights are exclusive or non-exclusive; and
- Whether PG&E's use of the property is tantamount to a fee interest such that payment of property taxes was required.

A determination of any one of these factors could reasonably be resolved by a trier of fact in favor of PG&E. Accordingly, the instant Motion must be denied. *Anderson*, 477 U.S. at 250.

///
///
///
///

# V. CONCLUSION

For all the foregoing reasons, PG&E respectfully requests the Court deny the instant Motion.

DATED: November 3, 2023

**KELLER BENVENUTTI KIM LLP**
**ROVENS LAMB LLP**
**LAW OFFICES OF JENNIFER L. DODGE, INC.**

By:     */s/ Steven A. Lamb*
Steven A. Lamb
*Attorneys for Debtors and Reorganized Debtors*