# Appendix 2
# Excerpts of Relevant Regulations

I.      **RESOLUTION ESRB 4**

| Date | Exhibit No. | Relevant Information |
|------|-------------|----------------------|
| **June 16, 2014** | 24 | • Resolution ESRB-4 "Directs Investor Owned Electric Utilities to take remedial measures to reduce the likelihood of fires . . . during the current drought." Ex. 24 at 1.<br><br>• "Climate Change has facilitated and exacerbated numerous wildfires, which have damaged and could continue to threaten the critical infrastructure of the utilities, the Commission finds that an emergency exists. Therefore, the instant Resolution directs Investor Owned Electric Utilities - i.e., Pacific Gas and Electric Company (PG&E) . . . to take additional remedial measures to reduce the likelihood of fires associated with or threatening their facilities during the current drought." *Id.* at 2-3.<br><br>• "[T]he catastrophic consequences of Climate Change have now become a reality and the drought conditions threaten California with more frequent and extensive wildfires." *Id.* at 5.<br><br>• "Statistical data from CalFire indicates an increased number of wildfires from previous years during the first five months of this year. . . . There is an increased chance of large and devastating wildfires occurring this year." *Id.* at 13.<br><br>• "Investor Owned Electric Utilities must take practicable measures necessary to reduce the likelihood of fires associated with their facilities. These measures include: increasing vegetation inspections and removing hazardous, dead and sick trees and other vegetation near the IOUs' electric power lines and poles; sharing resources with the California Department of Forestry and Fire Protection (CalFire) to staff lookouts adjacent to the IOUs' property; and clearing access roads under power lines for fire truck access." *Id.* at 14. |

## II.     RESOLUTION ESRB 8

| Date | Exhibit No. | Relevant Information |
|------|-------------|----------------------|
| **July 16, 2018** | 25 | • Resolution ESRB-8 "extends the de-energization reasonableness, public notification, mitigation and reporting requirements . . . . This resolution provides guidelines that IOUs must follow and strengthens public safety requirements when an IOU decides to de-energize its facilities during dangerous conditions." Ex. 25 at 1.<br><br>• "Recent California experience with wildfires demands that we enhance existing de-energization policy and procedures. In order to ensure that the public and local officials are prepared for power shut off and aware of an IOU de-energization policy, and in order to ensure proper safety oversight by SED, we adopt the following: . . . The guidelines in D.12-04-024." *Id.* at 5.<br><br>• D.12-04-024, which became applicable to PG&E through ESRB-8, included:<br>    o "[PG&E] has the burden of demonstrating that its decision to shut off power is necessary to protect public safety."<br>    o "[PG&E] must rely on other measures, to the extent available, as alternatives to shutting off power."<br>    o "[PG&E] must consider efforts to mitigate the adverse impacts on the customers and communities in areas where it shuts off power. This includes steps to warn and protect its customers whenever it shuts off power."<br>    o PG&E must "provide notice and mitigation to its customers, to the extent feasible and appropriate, whenever [PG&E] shuts off power pursuant to its statutory authority." *Id.* at 4.<br><br>• Public Outreach, Notification, and Mitigation Requirements:<br>    o "[PG&E] shall notify the Director of SED, as soon as practicable, once it decides to de-energize its facilities."<br>    o "[PG&E] shall convene De-Energization Informational Workshops with representatives of entities that may be affected by a de-energization event, including but not limited to: state agencies, tribal governments, local agencies and representatives from local communities. . . . The purpose of these workshops is to explain, and receive feedback on, the IOU's de-energization policies and procedures." |

| Date | Exhibit No. | Relevant Information |
|------|-------------|---------------------|
| | | o "[PG&E] shall submit a report to the Director of SED outlining its public outreach, notification, and mitigation plan." *Id.* at 6. |
| | | • "We expect [PG&E] to use its best judgment on a case-by-case basis to determine whether de-energization is needed for public safety. We hold this expectation even if [PG&E] has not complied fully with each of the requirements in this resolution, for example, if a need for de-energization arises before [PG&E] has meet with the impacted local communities." *Id.* at 8. |

## III.    GENERAL ORDER 95

| Date | Exhibit No. | Relevant Information |
|------|-------------|---------------------|
| **January 2016** | 26 | **Note 18**<br><br>• "Each company . . . is responsible for taking appropriate corrective action to remedy Safety Hazards and GO 95 nonconformances posed by its facilities." Ex. 26 at I-8.<br><br>• "Upon completion of the corrective action, the company's records shall show, with sufficient detail, the nature of the work, the date, and the identity of persons performing the work." *Id.*<br><br>• "All companies shall establish an auditable maintenance program for their facilities and lines. All companies must include a timeline for corrective actions to be taken following the identification of a Safety Hazard or nonconformances with General Order 95 on the company's facilities. The auditable maintenance program shall prioritize corrective actions consistent with the priority levels set forth below." *Id.* at I-9.<br><br>• "There shall be 3 priority levels." *Id.*<br><br>• Level 1:<br><br> o "Immediate safety and/or reliability risk with high probability for significant impact." *Id.*<br><br> o "Take action immediately, either by fully repairing the condition, or by temporarily repairing and reclassifying the condition to a lower priority." *Id.* |

- Level 2:
  - "Variable (non-immediate high to low) safety and/or reliability risk." *Id.* at I-10.

  - "Take action to correct within specified time period (fully repair, or by temporarily repairing and reclassifying the condition to a lower priority). Time period for correction to be determined at the time of identification by a qualified company representative, but not to exceed: (1) 12 months for nonconformances that compromise worker safety, (2) 12 months for nonconformances that create a fire risk and are located in an Extreme or Very High Fire Threat Zone in Southern California, and (3) 59 months for all other Level 2 nonconformances." *Id.*

- Level 3
  - "Acceptable safety and/or reliability risk." *Id.*

  - "Take action (re-inspect, re-evaluate, or repair) as appropriate." *Id.*

- "Correction times may be extended under reasonable circumstances." *Id.*

**Note 35**

- "Where overhead conductors traverse trees and vegetation, safety and reliability of service demand that certain vegetation management activities be performed in order to establish necessary and reasonable clearances, the minimum clearances set forth in Table 1, Cases 13 and 14, measured between line conductors and vegetation under normal conditions shall be maintained." *Id.* at III-19.

- "Communication and electric supply circuits, energized at 750 volts or less, including their service drops, should be kept clear of vegetation in new construction and when circuits are reconstructed or repaired, whenever practicable." *Id.* at III-20.

- "**Contact between vegetation and conductors, in and of itself, does not constitute a nonconformance with the rule**." *Id.* (emphasis added).

- "The Commission recognizes that unusual circumstances beyond the control of the utility may result in nonconformance with the rules. In such cases, the utility may be directed by the Commission to take prompt remedial action to come into conformance, whether or not the nonconformance gives rise to penalties or is alleged to fall within permitted exceptions or phase–in requirements." *Id.* at III-21

| Date | Exhibit No. | Relevant Information |
|------|-------------|----------------------|
| | | **Table 1**<br>• Case Nos. 13 & 14 provide distances for "Radial clearance of bare line conductors from tree branches or foliage," and "Radial clearance of bare line conductors from vegetation in Extreme and VeryHigh Fire Threat Zones in Southern California." *Id.* at III-25.<br><br>**Appendix E**<br>• This Appendix provides "guidelines to Rule 35." *Id.* at E-2.<br><br>• "The radial clearances shown below are recommended minimum clearances that should be established, at time of trimming, between the vegetation and the energized conductors and associated live parts where practicable." *Id.*<br><br>• "Reasonable vegetation management practices may make it advantageous for the purposes of public safety or service reliability to obtain greater clearances than those listed below to ensure compliance until the next scheduled maintenance. Each utility may determine and apply additional appropriate clearances beyond clearances listed below, which take into consideration various factors. . . ." *Id.*<br><br>• Appendix E contains the table below: |

| Voltage of Lines | Case 13 of Table 1 | Case 14 of Table 1 |
|------------------|--------------------|--------------------|
| Radial clearances for any conductor of a line operating at 2,400 or more volts, but less than 72,000 volts | 4 feet | 6.5 feet |
| Radial clearances for any conductor of a line operating at 72,000 or more volts, but less than 110,000 volts | 6 feet | 10 feet |
| Radial clearances for any conductor of a line operating at 110,000 or more volts, but less than 300,000 volts | 10 feet | 20 feet |
| Radial clearances for any conductor of a line operating at 300,000 or more volts | 15 feet | 20 feet |

| Date | Exhibit No. | Relevant Information |
|---|---|---|
| **December 21, 2017** | 27 | **Note 18**<br><br>• "Rule 18-A(2)(a), as modified previously in today's Decision, requires utilities to prioritize the correction of safety hazards based on six factors, including whether the safety hazard is located in a Tier 3 fire-threat area in Southern California." Ex. 27 at 32.<br><br>• "The High Fire-Threat District consists of areas where there is an elevated or extreme risk for utility-associated wildfires. The precepts of common sense and public safety dictate that when utilities discover facilities that pose a fire hazard, they should consider if the fire hazard is in Zone 1, Tier 2, or Tier 3 of the High Fire-Threat District when prioritizing the correction of the fire hazard." *Id.* at 32-33.<br><br>• "Rule 18-A(2)(a)(ii), as modified previously in today's Decision, requires utilities to correct within 12 months a Priority Level 2 fire risk that is located in Tier 3 of the High Fire-Threat District in Southern California. All other Priority Level 2 fire risks must be corrected within 59 months. These are maximum allowed timeframes for correcting fire risks. Rule 18 requires a Priority Level 2 fire risk to be corrected in less than 12 months or 59 months if doing so is necessary to protect public safety." *Id.* at 34 (footnote omitted).<br><br>• "Given the severity of the wildfire risk, we conclude that public safety requires that we amend Rule 18-A(2)(a)(ii) to provide a maximum of six months to correct Priority Level 2 fire risks in Tier 3 fire-threat areas. Similarly, Tier 2 fire-threat areas pose an elevated risk for utility-associated wildfires. Given the elevated wildfire risk, we conclude that public safety requires that we amend Rule 18-A(2)(a)(ii) to provide a maximum of 12 months to correct Priority Level 2 fire risks in Tier 2 fire-threat areas. We emphasize that 6 months is the maximum time allowed to correct Priority Level 2 fire risks in Tier 3 fire-threat areas, and 12 months in Tier 2 fire-threat areas." *Id.* at 35.<br><br>**Note 35**<br><br>• "Case 14 requires increased radial clearances between bare line conductors and vegetation in the high fire-threat areas of Southern California on the Interim Fire-Threat Maps. In D.17-01-009, the Commission determined that all existing fire-safety regulations that apply only to high fire-threat areas in Southern California on the Interim Fire-Threat Maps shall transfer to Tier 3 fire-threat areas of the High Fire-Threat District in Southern California." *Id.* at 46.<br><br>• "We conclude that existing fire-safety regulations that apply only to high fire-threat areas in Southern California on the Interim Fire-Threat Maps should apply to Tier 3 fire-threat areas of the High Fire-Threat District statewide. These fire-safety regulations were adopted for the specific purpose of addressing |

| Date | Exhibit No. | Relevant Information |
|---|---|---|
| | | extreme utility-associated wildfire risks. We find that in order to protect public safety, it is vital that these fire-safety regulations, including Case 14 at issue here, should apply to Tier 3 extreme fire-threat areas throughout California." *Id.* at 48.<br><br>• "Wildfires ignited by vegetation contact with power lines can potentially grow to great size and cause enormous destruction in Zone 1 and Tier 2 fire-threat areas. This fact is illustrated by the following map that shows the footprint of large wildfires (from all causes) during 2012-2016 overlaid on the draft map of the High Fire-Threat District (i.e., Zone 1, Tier 2, and Tier 3). *Id.* at 50.<br><br>• "Power-line fires can cause enormous destruction as demonstrated by the catastrophic power-line fires in Southern California in October 2007 and the devastating Butte Fire in Amador and Calaveras Counties in September 2015. The catastrophic wildfires in Northern California in October 2017 further demonstrate the enormous destruction and loss of life that wildfires can cause." *Id.* at 58.<br><br>**Appendix E**<br><br>• "Appendix E of GO 95 ("Appendix E") specifies recommended clearances to be obtained between bare line conductors and vegetation at the time vegetation is trimmed ("time-of-trim clearances"). One purpose of Appendix E's recommended time-of-trim clearances is to ensure that there is no breach of the minimum clearances required by Case 14 during the period between trims." *Id.* at 100.<br><br>• "Appendix E [is amended] to increase the recommended time-of-trim clearances. . . ." *Id.* |
| **May 2018** | 28 | **Note 18**<br><br>• "Each company . . . is responsible for taking appropriate corrective action to remedy potential violations of GO 95 and Safety Hazards posed by its facilities." Ex. 28 at I-8.<br><br>• "Each company (including electric utilities and communications companies) shall establish and implement an auditable maintenance program for its facilities and lines for the purpose of ensuring that they are in good condition so as to conform to these rules." *Id.* at I-9.<br><br>• "Companies shall undertake corrective actions within the time periods stated for each of the priority levels set forth below. . . ." *Id.* at I-10. |

| <u>Date</u> | <u>Exhibit No.</u> | <u>Relevant Information</u> |
|---|---|---|
| | | • "Level 1 -- An immediate risk of high potential impact to safety or reliability: Take corrective action immediately, either by fully repairing or by temporarily repairing and reclassifying to a lower priority." *Id.* at I-10. |
| | | • "Level 2 -- Any other risk of at least moderate potential impact to safety or reliability: Take corrective action within specified time period (either by fully repair or by temporarily repairing and reclassifying to Level 3 priority). Time period for corrective action to be determined at the time of identification by a qualified company representative, but not to exceed: (1) six months for potential violations that create a fire risk located in Tier 3 of the High Fire-Threat District; (2) 12 months for potential violations that create a fire risk located in Tier 2 of the High Fire- Threat District; (3) 12 months for potential violations that compromise worker safety; and (4) 36 months for all other Level 2 potential violations." *Id.* at I-10. |
| | | • "Level 3 -- Any risk of low potential impact to safety or reliability: Take corrective action within 60 months subject to the exception specified below." *Id.* at I-10. |
| | | • "Correction times may be extended under reasonable circumstances . . . ." *Id.* at I-11. |
| | | • "Commission staff may direct a company to correct violation(s) of GO 95 at specific location(s) sooner than the maximum time periods contained in this rule." *Id.* |
| | | **Note 35** |
| | | • "Where overhead conductors traverse trees and vegetation, safety and reliability of service demand that certain vegetation management activities be performed in order to establish necessary and reasonable clearances, the minimum clearances set forth in Table 1, Cases 13 and 14, measured between line conductors and vegetation under normal conditions shall be maintained." *Id.* at III-19. |
| | | • "Communication and electric supply circuits, energized at 750 volts or less, including their service drops, should be kept clear of vegetation in new construction and when circuits are reconstructed or repaired, whenever practicable." *Id.* at III-20. |
| | | • "The Commission recognizes that unusual circumstances beyond the control of the utility may result in nonconformance with the rules. In such cases, the utility may be directed by the Commission to take prompt remedial action to come into conformance, whether or not the nonconformance gives rise to penalties or is alleged to fall within permitted exceptions or phase–in requirements." *Id.* at III-21. |

**Table 1**

- Case Nos. 13 & 14 provide distances for "Radial clearance of bare line conductors from tree branches or foliage," and "Radial clearance of bare line conductors from vegetation in the Fire-Threat District." *Id.* at III-25.

**Appendix E**

- This Appendix provides "guidelines to Rule 35." *Id.* at E-2.

- "The radial clearances shown below are recommended minimum clearances that should be established, at time of trimming . . . where practicable." *Id.*

- "Reasonable vegetation management practices may make it advantageous for the purposes of public safety or service reliability to obtain greater clearances than those listed below to ensure compliance until the next scheduled maintenance. Each utility may determine and apply additional appropriate clearances beyond clearances listed below, which take into consideration various factors. . . ." *Id.*

- Appendix E contains the table below:

| Voltage of Lines | Case 13 of Table 1 | Case 14 of Table 1 |
|---|---|---|
| Radial clearances for any conductor of a line operating at 2,400 or more volts, but less than 72,000 volts | 4 feet | 12 feet |
| Radial clearances for any conductor of a line operating at 72,000 or more volts, but less than 110,000 volts | 6 feet | 20 feet |
| Radial clearances for any conductor of a line operating at 110,000 or more volts, but less than 300,000 volts | 10 feet | 30 feet |
| Radial clearances for any conductor of a line operating at 300,000 or more volts | 15 feet | 30 feet |

## IV.     GENERAL ORDER 165

| Date | Exhibit No. | Relevant Information |
|---|---|---|
| **January 12, 2012** | 29 | • "The purpose of this General Order is to establish requirements for electric distribution and transmission facilities . . . regarding inspections in order to ensure safe and high-quality electrical service." Ex. 29 at 1. <br><br> • "The requirements of this order are in addition to the requirements imposed upon utilities under General Order[] 95 . . . to maintain a safe and reliable electric system. Nothing in this General Order relieves any utility from any requirements or obligations that it has under General Order[] 95." *Id.* <br><br> • "Each utility subject to this General Order shall conduct inspections of its distribution facilities, as necessary, to ensure reliable, high-quality, and safe operation, but in no case may the period between inspections (measured in years) exceed the time specified in Table 1." *Id.* at 2. <br><br> • "By July 1st each utility subject to this General Order shall submit an annual report for the previous year . . . . The report shall list four categorical types of inspections: Patrols, Overhead Detailed, Underground Detailed and Wood Pole Intrusive. The report shall denote the total units of work by inspection type for the reporting period and the number of outstanding (not completed) inspections within the same reporting period for each of the four categories." *Id.* at 3. <br><br> • Table 1 sets forth "Distribution Inspection Cycles" ranging from 1-year mandatory patrols for overhead transformers in urban areas to 20-year inspection periods for intrusive inspections on certain wooden poles. *Id.* at 4. <br><br> • Footnote 1 of Table 1 states: "Patrol inspections in rural areas shall be increased to once per year in Extreme and Very High Fire Threat Zones in the following counties Imperial, Los Angeles, Orange, Riverside, Santa Barbara, San Bernardino, San Diego, and Ventura." *Id.* |

| Date | Exhibit No. | Relevant Information |
|------|-------------|---------------------|
| **December 21, 2017** | 27 | • "Table 1 of GO 165 ('GO 165') requires electric utilities to conduct a patrol inspection of their overhead electric utility distribution facilities every two years in rural areas, and every year in rural areas of Southern California that are also high fire-threat areas on the Interim Fire-Threat Maps." Ex. 27 at 102–03 (footnote omitted). <br><br> • "[I]t is in the public interest to . . . [amend] GO 165 to require electric utilities to conduct an annual patrol inspection of their overhead electric utility distribution facilities in rural Tier 2 and Tier 3 fire-threat areas statewide." *Id.* at 107. <br><br> • "Overhead electric utility distributions facilities pose an ever-present hazard for ignitions. It is essential that such facilities be maintained in good condition to mitigate the risk of utility-associated wildfires. Extra vigilance in the form of annual patrol inspections is warranted in rural Tier 2 and Tier 3 fire-threat areas, where there is an elevated or extreme risk for utility-associated wildfires, to ensure that overhead electric utility distribution facilities in such areas are maintained in good condition." *Id.* at 108 (footnote omitted). |