| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP**<br>Richard W. Slack (*pro hac vice*)<br>(richard.slack@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: (212) 310-8000<br>Fax: (212) 310-8007<br><br>**KELLER BENVENUTTI KIM LLP**<br>Jane Kim (#298192)<br>(jkim@kbkllp.com)<br>David A. Taylor (#247433)<br>(dtaylor@kbkllp.com)<br>Thomas B. Rupp (#278041)<br>(trupp@kbkllp.com)<br>425 Market Street, 26th Floor<br>San Francisco, CA 94105<br>Tel: (415) 496-6723<br>Fax: (650) 636 9251 | **LATHAM & WATKINS LLP**<br>Joshua G. Hamilton (#199610)<br>(joshua.hamilton@lw.com)<br>Michael J. Reiss (#275021)<br>(michael.reiss@lw.com)<br>10250 Constellation Blvd., Suite 1100<br>Los Angeles, California 90067<br>Tel: 424 653 5500<br><br>**LATHAM & WATKINS LLP**<br>James E. Brandt (*pro hac vice*)<br>(james.brandt@lw.com)<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Tel: 212 906 1200 |

*Attorneys for the Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' THIRTY-FIFTH SECURITIES CLAIMS OMNIBUS OBJECTION TO THE BAUPOST AMENDMENT** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. BAUPOST'S SUPPLEMENTAL ALLEGATIONS AND TRADING HISTORY ............2

    A. Baupost's Supplemental Falsity Allegations. ............................................3

    B. Baupost's Supplemental Scienter Allegations. ..........................................4

    C. Baupost's Supplemental Loss Causation And Reliance Allegations.........4

    D. Baupost And Its PG&E Trading History. ..................................................4

III. LEGAL STANDARD ...........................................................................................6

IV. ARGUMENT ........................................................................................................6

    A. The Truth-On-The-Market Doctrine Bars All Of Baupost's Claims Because Baupost Cannot Show It Relied On The Alleged Misstatements..............7

    B. Baupost Fails To Allege Falsity.................................................................9

    C. Baupost Fails To Allege Scienter. ...........................................................11

    D. Baupost Fails To Allege Loss Causation. ...............................................12

V. CONCLUSION...................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ...................................................................................................... 7

*In re Convergent Techs. Sec. Litig.*,
    948 F.2d 507 (9th Cir. 1991) ..................................................................................... 7, 8

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...................................................................................................... 6

*Glazer Cap. Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ..................................................................................... 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ...................................................................................................... 7

*In re Kalobios Pharms., Inc. Sec. Litig.*,
    258 F. Supp. 3d 999 (N.D. Cal. 2017) ........................................................................ 7

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) ..................................................................................... 12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) .................................................................................................... 10

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996) ..................................................................................... 7

### STATUTES

15 U.S.C.
    § 78u-4(b)(1)(B) ............................................................................................................ 6
    § 78u-4(b)(2)(A) ........................................................................................................... 6

# GLOSSARY OF DEFINED TERMS

| Defined Term | Definition |
|---|---|
| Alleged Relevant Period | April 29, 2015, through November 15, 2018 |
| Baupost | Baupost Group Securities, L.L.C. |
| Cal Fire | California Department of Forestry and Fire Protection |
| CEMA | Catastrophic Event Memorandum Account |
| CPUC | California Public Utilities Commission |
| District Court Action | *In re PG&E Corporation Securities Litigation*, No. 5:18-cv-03509 (N.D. Cal.) |
| *Edison I* | *Barnes v. Edison Int'l*, No. CV 18-09690 CBM, 2021 WL 2325060 (C.D. Cal. Apr. 27, 2021) |
| *Edison II* | *Barnes v. Edison Int'l*, No. 21-55589, 2022 WL 822191 (9th Cir. 2022) |
| Edison or SCE | Southern California Edison |
| ESRB | Electric Safety and Reliability Branch of the CPUC's Safety and Enforcement Division |
| ESRB-4 | A June 2014 resolution promulgated by the ESRB |
| ESRB-8 | A July 2018 resolution promulgated by the ESRB |
| Exchange Act | Securities Act of 1934, 15 U.S.C. § 78a *et seq.* |
| Exchange Offer | PG&E's April 2018 exchange offer |
| FAC | Consolidated Class Action Complaint for Violation of the Federal Securities Laws filed by PERA in the District Court Action on November 9, 2018 |
| FERC | Federal Energy Regulatory Commission |
| GRC | General Rate Case |
| Mid-Jersey | Mid-Jersey Trucking & Local 701 Pension Fund |
| Notes Offerings | PG&E's note offerings in March 2016, December 2016, and March 2017 |
| Offering Documents | Registration statements, prospectuses and prospectus supplements filed with the SEC in connection with the Notes Offerings and Exchange Offer |

| Defined Term | Definition |
|---|---|
| PERA | Public Employees Retirement Association of New Mexico |
| PERA Objection or PERA Obj. | Reorganized Debtors' 33rd Securities Omnibus Claims Objections To PERA's TAC, Including to Certain Claimants that Adopted the TAC |
| PG&E | PG&E Corporation and Pacific Gas and Electric Company (the "Utility") are referred to as "PG&E" solely for purposes of the Objections |
| Plan | Joint Chapter 11 Plan of Reorganization |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 |
| RKS | The law firm of Rolnick Kramer Sadighi LLP |
| RKS Amendment or RKS Am. | The Amended Statement of Claim on Behalf of the RKS Claimants |
| RKS Claimants | Claimants represented by RKS in this matter, and also any non-RKS-represented claimants that adopted, in whole or in part, the allegations in the RKS Amendment |
| RKS Objection or RKS Obj. | Reorganized Debtors' 34th Securities Omnibus Claims Objections To RKS Amendment, Including to Certain Claimants that Adopted the RKS Amendment |
| SAC | Second Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws filed by PERA in the District Court Action on December 14, 2018 |
| SEC | Securities and Exchange Commission |
| Securities Act | Securities Act of 1933, 15 U.S.C. § 77a *et seq.* |
| Securities Act Plaintiffs | County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking & Local 701 Pension Fund |
| SED | CPUC's Safety Enforcement Division |
| Supplemental Baupost Obj. | Reorganized Debtors' 35th Securities Omnibus Claims Objections To Baupost's Supplemental Proof Of Claim |
| Supplemental POC or Supp. POC | The Supplemental Proofs of Claim filed by Baupost as Claim Nos. 109847 and 109848, which adopted and incorporated the allegations in the TAC and added additional substantive allegations, attached as Exhibit 113 to the accompanying Request for Judicial Notice |

| Defined Term | Definition |
|---|---|
| TAC | Third Amended Complaint filed by PERA and the Securities Act Plaintiffs in the District Court Action, attached as Exhibit 92 to the accompanying Request for Judicial Notice |
| Warren | City of Warren Police and Fire Retirement System |
| York | County of York Retirement Fund |

PG&E[1] incorporates by reference its Omnibus Claim Objection to PERA's TAC ("**PERA Obj.**") and files this supplemental claim objection (the "**Objection**" or "**Supplemental Baupost Objection**") to amended Proofs of Claim Nos. 109847 and 109848 (the "**Supplemental POC**" or "**Supp. POC**")[2] filed by Baupost Group Securities, L.LC. ("**Baupost**"). PG&E files this Objection, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Bankruptcy Local Rule 3007-1, and the Securities ADR Procedures Order, seeking entry of an order disallowing and/or expunging the proofs of claims identified in the column headed "Claim(s) to be Disallowed and Expunged" on **Exhibit A** annexed hereto.[3]

I. INTRODUCTION

Baupost epitomizes the highly sophisticated institutional investor that seeks to improperly weaponize the federal securities laws to force a company's current stockholders (here, including fire victims that received PG&E stock) to cover its trading losses. Baupost did not buy a share of PG&E stock during the relevant period until February 2018—after the September 2015 Butte Fire and the corresponding CPUC findings that PG&E caused that wildfire, and very shortly after the October 2017 North Bay Fires and December 2017 dividend suspension. Put bluntly, Baupost viewed the catastrophic wildfires as an investment opportunity. When Baupost first invested, not only had PG&E repeatedly and in great detail disclosed the risk of wildfires and the attendant liability, but California regulators and the media had been publicly reporting for months on

---

[1] PG&E Corporation and Pacific Gas and Electric Company are the Debtors and Reorganized Debtors in the above-captioned chapter 11 cases.

[2] For the Court's convenience, a copy of Baupost's Supplemental POC, Claim No. 109847, is attached as Exhibit 113 to the accompanying Request for Judicial Notice. Baupost had previously filed two proofs of claim which "incorporated," without supplementing, PERA's TAC. Claim Nos. 100269 and 100309.

[3] In accordance with Paragraph I.E of the Securities Omnibus Objection Procedures, **Exhibit A** hereto provides the following information: (i) an alphabetized list of the Claimants whose claims are subject to this objection; (ii) the claim numbers of the claims that are the subject of this objection; (iii) the amount of the claim asserted in each claim, or a statement that the claim seeks an unliquidated amount; and (iv) the grounds for this objection. Upon the establishment of a hearing date and briefing schedule for this objection, PG&E will provide notice to the claimants, the form of which will satisfy the requirements set forth in Paragraph I.F of the Securities Omnibus Objection Procedures.

PG&E's role in the North Bay Fires.  In full view of these risks, Baupost gambled that another catastrophic wildfire would not occur.  That turned out to be a losing bet when the Camp Fire started in November 2018; however, that is not a basis for recovery under the federal securities laws.  The timing of Baupost's stock purchases underscores the point that PG&E makes in both the PERA Objection and the RKS Objection—PG&E made no material false statements, much less with the requisite scienter, on which any securities claimant could, or did, rely.

Baupost's Supplemental POC offers little beyond PERA's TAC.  Baupost "adopt[ed] and incorporate[d]" the allegations in the TAC, and also alleged "seven additional misstatements," six of which overlap with the additional statements in the RKS Amendment.  As a threshold matter, the "truth-on-the-market" doctrine forecloses Baupost from establishing reliance at the pleading stage because all its purchases were after the North Bay Fires, and the market was already aware of any material fact that Baupost contends was concealed.  And the one additional allegation Baupost asserts rests on the implausible premise that PG&E's positive statements about certain of its infrastructure investments, none of which Baupost allege are untrue, misled investors into overestimating all of PG&E's safety efforts, including with respect to the specific transmission line that caused the Camp Fire.  Baupost's additional statement, which neither PERA nor the RKS Claimants allege is false, is a transparent attempt to manufacture a new misstatement between PG&E's December 2017 dividend suspension, which purportedly "corrected" prior misstatements, and Baupost's first purchase of PG&E stock in February 2018.

Baupost's securities claims against PG&E fail for the same reasons that PERA's and the RKS Claimants' claims fail, and for the additional reasons described below.  Baupost's Supplemental POC should therefore be expunged and dismissed with prejudice.

## II. BAUPOST'S SUPPLEMENTAL ALLEGATIONS AND TRADING HISTORY

On April 15, 2020, Baupost filed proofs of claim against PG&E.  On December 28, 2022, Baupost filed its Supplemental POC.  Baupost's Supplemental POC includes an "Addendum" that "adopts and incorporates" the allegations in the PERA TAC and "provide[s] additional details" regarding the allegations supporting its claims against the Reorganized Debtors, as well as Baupost's purported trades of PG&E stock during the relevant period.  Supp. POC ¶¶ 2–3.

LATHAM&WATKINS LLP
Attorneys At Law

Case: 19-30088    Doc# 14206    Filed: 12/13/23    Entered: 12/13/23 21:58:07    Page 8 of 18

A. **Baupost's Supplemental Falsity Allegations.**

Baupost alleges seven "Additional Misstatements" that are not alleged in the PERA TAC. Six of these statements are identical, word-for-word, to the false statements alleged in the RKS Amendment. *Compare* Supp. POC ¶¶ 19–25, *with* RKS Am. ¶¶ 307, 313, 316, 346, 349, 363; *see also* RKS Obj. §§ II.B, III.A (discussing these statements in detail).

Baupost alleges only one additional misstatement beyond what was alleged by PERA and the RKS Claimants. Supp. POC ¶ 18. According to Baupost, on January 8, 2018, Nikolaus Stavropoulos, PG&E's then-President and COO, submitted the following written testimony to the CPUC:

> On the electric system, infrastructure investment has also been extensive over the last five years, including replacement of over 700 miles of overhead distribution conductor, 49 miles of underground distribution cable, 40 miles of network cable, and over 4,300 manhole cover replacements with venting covers, as well as installing or replacing over 700 miles of transmission line.

Supp. POC ¶ 18.

Baupost alleges that this statement and the six additional statements that overlap with the RKS Amendment were false and misleading because: (i) "they created a false impression that Debtors were sufficiently investing in their electrical system infrastructure," when in reality they "were 'employing a run to failure strategy on the entirety of the Caribou-Big Bend section of the Caribou-Palermo line'"; (ii) "they created a false impression that Debtors employed robust vegetation management practices"; and (iii) "they created a false impression that Debtors were performing frequent and rigorous inspections of powerlines in areas prone to fire," even though "Debtors had not inspected Tower :27/222 of the Caribou-Palermo transmission line." Supp. POC ¶¶ 26–29 (citation omitted). These falsity allegations are nearly identical to the RKS Claimants' allegations. *Compare, e.g.*, Supp. POC ¶ 27, *with* RKS Am. ¶ 347.

Baupost also alleges that these additional misstatements "materially omitted facts" about the specific PG&E equipment that ultimately caused the Camp Fire, including allegations that PG&E failed to disclose that it did not inspect "towers on the Caribou-Palermo line" for wind damage, and that it failed to disclose that "aerial patrols and ground inspections . . . on the century-

old Caribou-Palermo line could not assess wear on C hooks and hanger holes." Supp. POC ¶ 30. These allegations are also identical to the RKS Claimants' allegations. *Compare* RKS Am. ¶ 370 (alleging 11 omitted facts), *with* Supp. POC ¶ 30 (alleging same 11 omitted facts in same order).

### B. Baupost's Supplemental Scienter Allegations.

Baupost's additional allegations supporting its scienter theory are from the same source discussed in the RKS Amendment: the Butte County District Attorney Report. Baupost alleges that this 2020 investigation report "sheds additional light" on PG&E's maintenance programs, and demonstrates that PG&E "knew," or was "reckless in not knowing," about maintenance issues on the Caribou-Palermo line. Supp. POC ¶¶ 12, 37; *see* RKS Am. ¶ 541 (discussing the Butte County District Attorney Report). While Baupost cites the same evidence as RKS in support of its scienter allegations, it relies on PERA's overall theory of scienter. *See* Supp. POC ¶¶ 33–38 (citing to PERA's TAC to support each of its scienter allegations). And Baupost does not allege the RKS Claimants' espoused theory that "PG&E's guilty plea establishes its scienter as a matter of law." *Compare* Supp. POC, *with* RKS Am. ¶¶ 611–615 (capitalization altered). Like both PERA and the RKS Claimants, Baupost does not allege which, if any, of PG&E's officers or high-level managers knew the information in the Butte County District Attorney Report. Supp. POC ¶¶ 33–38; *see generally* Ex. 87 (Butte County DA Report).

### C. Baupost's Supplemental Loss Causation And Reliance Allegations.

Baupost makes no supplemental allegations regarding loss causation or reliance. *See generally* Supp. POC.

### D. Baupost And Its PG&E Trading History.

Baupost touts itself as a sophisticated hedge fund that invests in securities that are "currently out of favor, but have good prospects" according to its own valuations. *See* Ex 23 (Baupost Form ADV Part 2A) at 7.

Baupost started purchasing PG&E stock during the Alleged Relevant Period[4] very shortly after the North Bay Fires and increased its position as more information allegedly "corrected"

---

[4] Definitions for terms not otherwise defined herein can be found in the PERA Objection and in the Glossary in this Objection.

PG&E's misrepresentations, thus undermining Baupost's allegation that PG&E's assurances about fire safety induced its purchases of PG&E stock. Supp. POC ¶¶ 4, 7; *id.* Annex A and Schedule 1.

**February 2018: Baupost Starts Purchasing Stock.** Baupost purchased approximately $18 million of PG&E shares on February 9, 2018, the same day that PG&E disclosed that its liquidity and cash flows "could be materially affected" by the North Bay Fires and that PG&E expected "additional lawsuits and investigations" related to its role in causing those fires. Ex. 6 (2017 Form 10-K) at 27; *see* Supp. POC Annex A and Schedule I (listing Baupost's trades). According to the TAC's allegations—which Baupost has adopted and asserts as its own—at the point that Baupost started buying PG&E shares, the following information was already in the public domain:

- Investors understood "that PG&E was financially responsible for the North Bay Fires," PERA TAC ¶ 331, and were "concerned regarding whether PG&E violated any regulations . . . with respect to the North Bay Fires," *id.* ¶ 333;

- PG&E had disclosed its "financial condition or results of operations could be materially affected" as a result of the North Bay Fires, *id.* ¶ 335;

- Investors understood PG&E "was a proximate cause of at least some of the North Bay Fires," and "at least some of the North Bay Fires were caused by PG&E's negligence or worse," *id.* ¶ 337;

- PG&E had suspended its dividend, *id.* ¶ 339;

- PG&E could "be liable for property damages and attorneys' fees associated with [the North Bay Fires]," *id.*;

- Investors believed "[PG&E's] prior representations regarding its safety operations may have been misleading and PG&E would bear a higher than expected level of responsibility, and thus liability, for the North Bay Fires," *id.* ¶ 342; and

- There was a "greater risk than [analysts] had assumed surrounding regulatory treatment of the October 2017 Northern California wildfires," *id.* ¶ 343.

**May & June 2018: Baupost Purchases More Shares After The Cal Fire Reports.** On both May 25, 2018, and June 8, 2018, Cal Fire confirmed that PG&E's electrical equipment caused certain of the North Bay Fires. TAC ¶¶ 346, 353. Even though investors, including Baupost, knew

that Cal Fire decided to "refer criminal investigations . . . to the relevant district attorneys' offices," *id.* ¶ 347, Baupost continued to purchase PG&E shares.

**November 2018:  Baupost Purchases PG&E Shares While The Camp Fire Is Burning.** On November 8, 2018, the Camp Fire ignited.  TAC ¶ 363.  Within one day, investors learned "that PG&E had not only caused the Camp Fire, but did so in a manner that violated state safety regulations."  *Id.* ¶ 372.  But Baupost kept purchasing PG&E shares anyway, buying more than 800,000 shares after the Alleged Relevant Period, but while the Camp Fire was still burning.[5]

## III.   LEGAL STANDARD

Baupost's securities fraud claims, all of which are based on the purchase of PG&E stock and not bonds, can only survive this Objection if Baupost satisfies its high burden of pleading: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

As discussed in more detail in the PERA Objection, a claim for securities fraud is subject to the heightened pleading standards of Rule 9(b) and the PSLRA.  *See* PERA Obj. §§ II, III.B. Every element of a securities fraud claim must be pleaded with particularity and a plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" (falsity) and "state with particularity facts giving rise to a strong inference that the defendant acted with [scienter]."  15 U.S.C. § 78u-4(b)(1)(B), (2)(A).  For both falsity and scienter, the PSLRA requires that the statement must have been false when it was made, and not that it has become false by virtue of a later event.  *See* PERA Obj. § III.C.

## IV.   ARGUMENT

Baupost's claims under the Exchange Act fail for four independent reasons.[6]  First, Baupost has not satisfied its obligation to plead reliance on any misstatement or omission as required under

---

[5] Baupost does not allege it purchased any PG&E notes, and therefore it does not and cannot assert any Securities Act claims.

[6] Baupost's Section 20(a) claims fail because it has not alleged a primary violation of the Exchange Act.  *See* PERA Obj. § III.D.

the Exchange Act. Second, Baupost offers no new allegations that could save the statements that PERA and the RKS Claimants allege to be false. The only additional statement Baupost challenges does not change this result. Third, Baupost has failed to adequately allege a strong inference of scienter for any of the challenged statements. Fourth, Baupost cannot establish loss causation.

### A. The Truth-On-The-Market Doctrine Bars All Of Baupost's Claims Because Baupost Cannot Show It Relied On The Alleged Misstatements.

Baupost cannot come close to satisfying the "reliance upon misrepresentation or omission" requirement to plead a viable claim under the Exchange Act. Baupost's "fraud on the market" theory for reliance—*i.e.*, the presumption that investors rely on a defendant's misleading statements—is of no help to Baupost. *See* TAC ¶¶ 459–60. If the misrepresentation did not distort the stock's market price, or "if the plaintiff did not buy the stock after the misrepresentation was made but before the truth was revealed," then the presumption does not apply. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014); *Basic Inc. v. Levinson,* 485 U.S. 224, 248 (1988) (presumption not applicable where "market price would not have been affected by [a defendant's] misrepresentations").

That means, where the market is already aware of the facts that the plaintiff alleges are concealed, the "truth-on-the-market" doctrine overcomes the "fraud-on-the-market" presumption, and the claims should be dismissed at the pleading stage. PERA Obj. § III.C.4; *see In re Kalobios Pharms., Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1008 (N.D. Cal. 2017) (Davila, J.) (granting dismissal at the pleading stage where defendant established that "the information that was withheld or misrepresented was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression" (citation omitted)); *see also Provenz v. Miller*, 102 F.3d 1478, 1492 (9th Cir. 1996) ("In a 'fraud on the market' case 'an omission is materially misleading only if the information has not already entered the market.'" (citation omitted)); *In re Convergent Techs. Sec. Litig*., 948 F.2d 507, 513 (9th Cir. 1991) ("[A]n omission is materially misleading only if the information has not already entered the market. If the market has become aware of the allegedly concealed information, 'the facts allegedly omitted by the defendant would already be reflected in the stock's price' and the market 'will not be misled.'"

(citation omitted)).  Baupost adds nothing to PERA's conclusory allegations regarding the presumption of reliance, and fares even worse as it did not make a single purchase before the alleged truth was revealed.  PERA Obj. § III.C.4.

First, like PERA, Baupost cannot allege that the stock price was distorted by any alleged misrepresentation when it made its first purchase.  PERA Obj. § III.C.4.  Baupost adds a single alleged misrepresentation on January 8, 2018, in order to claim that a misrepresentation was made between PG&E's disclosures in the wake of the North Bay Fires (*i.e.*, when PERA admits the market knew of PG&E's violations) and its first purchase in February 2018.  And Baupost claims that, following the North Bay Fires, PG&E "attempted to reassure investors, falsely" regarding its compliance, wildfire risk, and potential liability.  TAC ¶¶ 248–249.  But none of PG&E's statements suggested PG&E could not be held liable for future wildfires.  Instead, PG&E repeatedly disclosed the risk of wildfires, and the risk of liability from the North Bay Fires, which could have a material impact on PG&E's financial position.  *See, e.g.*, Ex. 6 (2017 Form 10-K) at 27–43.

Significantly, Baupost purchased when there was "truth on the market" such that its allegations of reliance on any purported misstatement are not reasonable.  PERA Obj. § III.C.4. Baupost did not begin purchasing PG&E stock until after (1) the CPUC disclosed that it issued a litigation hold letter to PG&E about its safety practices (TAC ¶ 246), (2) Cal Fire announced that it was investigating PG&E's role in the fires (TAC ¶ 247), (3) PG&E was cooperating with Cal Fire's investigation and suspending its dividend because of uncertainty from its potential liability associated with the North Bay Fires (TAC ¶ 339), and (4) numerous lawsuits were filed seeking damages against PG&E alleging it caused the North Bay Fires (*see, e.g.*, Ex. 88 (Moretti Complaint); Ex. 89 (Weston Complaint); Ex. 100 (Lore OLDS Complaint); Ex. 101 (Lentine Complaint); Ex. 102 (Firemen's Ret. Sys. Complaint)).  Supp. POC Annex A, Part II at 1 (first purchase on February 9, 2018).  Consequently, the potential for PG&E to face significant liability for future catastrophic wildfires was "already . . . reflected in [PG&E's] stock[] price" before Baupost ever purchased a PG&E share.  *In re Convergent*, 948 F.2d at 513.

Baupost's trading history confirms that it could not have been misled by any concealed risk that PG&E could be held liable for catastrophic wildfires in the future. To the contrary, it waited for PG&E's stock price to drop after one of those wildfires, and then bet against it happening again. That is not a valid basis for a securities fraud claim. Because Baupost cannot meet its burden to adequately allege reliance, its Exchange Act claims should be dismissed with prejudice.

### B. Baupost Fails To Allege Falsity.

Because Baupost adopts the PERA TAC in full, its falsity allegations fail for the same reasons set forth in Section III.C.1 of the PERA Objection. And because Baupost pleads that six additional statements are false for the same reasons set forth in the RKS Amendment, those falsity allegations fail for the same reasons set forth in Section III.A of the RKS Objection.

Baupost's only alleged misstatement that is not alleged by any other claimant is a January 2018 statement by PG&E's then-President and COO, Nikolaus Stavropoulos. Mr. Stavropoulos stated that PG&E's "infrastructure investment . . . over the last five years, includ[ed] replacement of over 700 miles of overhead distribution conductor, 49 miles of underground distribution cable, 40 miles of network cable, and over 4,300 manhole cover replacements with venting covers, as well as installing or replacing over 700 miles of transmission line." Supp. POC ¶ 18. Critically, ***Baupost never alleges that this statement was actually false***—*i.e.*, that PG&E, in fact, did not replace 700 miles of overhead distribution, or that it lied about the number of manhole covers it replaced.

Instead, Baupost alleges that this statement was misleading because it "created a false impression" that PG&E was "sufficiently investing in their electrical system infrastructure." Supp. POC ¶ 27. This is the same general falsity theory advanced by RKS:

| Baupost Supplemental POC | RKS Amendment |
|---|---|
| The alleged false statement was: "materially false and/or misleading because [it] created a false impression that Debtors were sufficiently investing in their electrical system infrastructure, including by replacing | The alleged false statements were: "materially false and/or misleading because it created [a] false impression that [Debtors] [were] sufficiently investing in its electrical system infrastructure . . . , including by replacing |

| | |
|---|---|
| equipment that was antiquated, worn, or otherwise at or near the end of its useful life. [Citation].  But, as the Butte Report concluded, Debtors were 'employing a run to failure strategy on the entirety of the Caribou-Big Bend section of the Caribou-Palermo line' at the time the statement was made.  butte [County DA] Report at 60." Supp. POC ¶ 27. | equipment that was antiquated, worn, or otherwise at or near the end of its useful life.  But, as the Butte … Report concluded, [Debtors] [were] 'employing a run to failure strategy on the entirety of the Caribou-Big Bend section of the Caribou-Palermo line" at the time the statement was made.  Butte County DA Report at 60."  RKS Am. ¶ 347. |

Baupost's theory fails for the same reasons that the RKS Claimants' theory fails—namely, Baupost cannot manufacture a claim by misinterpreting PG&E's statements and reading them out of context.  *See* RKS Obj. § III.A.1.  Baupost improperly conflates a factual statement to the CPUC about the number and types of replaced equipment (manhole covers, network cables, transmission lines, etc.), Supp. POC ¶ 18, with a statement that PG&E's fire safety measures were "sufficien[t]," *id.* ¶ 27.  But when reading Mr. Stavropoulos' statement in context, a reasonable investor would recognize that PG&E disclosed that "[t]he provision of electricity . . . has certain inherent hazards and related safety implications for . . . the public," and "there will always be some risk."  Ex. 73 (Stavropoulos testimony) at 1–8.  There was nothing misleading about this statement.

Baupost also parrots the RKS Claimants' "material omission" theory of falsity by claiming that this statement omitted 11 material facts.  Supp. POC ¶ 30; RKS Am. ¶ 347.  Baupost's central theory of omission is that PG&E did not disclose enough details about the Caribou-Palermo line—the powerline that ultimately caused the Camp Fire.  Supp. POC ¶ 30.  But the additional facts set forth by Baupost regarding the Caribou-Palermo transmission line—that the line faced "high wind" conditions, and the "C hooks and hanger holes" on this section of line were in poor condition—do not render PG&E's general statement about its "electric system[] infrastructure investment . . . over the last five years" false.  *Id.* ¶¶ 18, 30.  The allegedly omitted facts about one segment of one powerline do not "conflict with what a reasonable investor would take from" PG&E's statements about quantifying how many miles of transmission lines it had "install[ed] or replac[ed]" during a five-year period.  *See also* RKS Obj. § III.A.3.b (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015)).  And, as made

clear by the Butte County District Attorney Report, the allegedly omitted facts were already publicly known. *See, e.g.*, Ex. 87 (Butte County DA Report) at 63 & n.121 (discussing a 2017 filing with CPUC which indicated PG&E's "Hardware" was a "significant risk" and that "PG&E's transmission infrastructure . . . [was] nearing [the] 'end of [its] useful life'" (citation omitted)), 64 ("Since, at least 2007, fire has been identified as the number one risk for PG&E."), 65 ("The 2007 Rock Fire was caused by the failure of a connector on a Caribou-Palermo line."). Baupost cannot ignore facts to state a falsity claim based on omission.

### C. **Baupost Fails To Allege Scienter.**

Even if Baupost could establish falsity, it has not adequately alleged scienter. Baupost's scienter allegations advance PERA's legal theory, but with additional factual citations to the Butte County District Attorney Report. Supp. POC ¶¶ 33–38 (citing PERA's TAC and the Butte County DA Report). For the reasons stated in the PERA Objection, Baupost's theory fails to establish scienter, and its citations to the Butte County District Attorney Report do not change that result. *See* PERA Obj. § III.C.2. According to Baupost, the Butte County District Attorney Report demonstrates that PG&E "knew, or [was] culpably reckless in not knowing," various facts about the company's inspections, maintenance practices, and vegetation management programs. Supp. POC ¶¶ 35–38. But Baupost's conclusory allegations about the contents of the Butte County District Attorney Report do not identify specific facts demonstrating that any individual alleged to have made a misstatement did so intentionally or with deliberate recklessness. *See* PERA Obj. § III.C.2.a (citing *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008)); *see also* PERA Obj. § III.C.2 (explaining that even allegations of mismanagement do not support a strong inference of scienter). To plead scienter, a plaintiff must allege that the speaker knew, or was reckless in not knowing, that the statement was false when it was made. *See* PERA Obj. § III.C.2.a. Baupost's additional allegations thus serve only to undermine its theory of scienter. *See also* RKS Obj. § III.D (discussing additional reasons why the Butte County District Attorney Report does not establish scienter).

### D. Baupost Fails To Allege Loss Causation.

Baupost makes no supplemental allegations regarding loss causation. *See generally* Supp. POC. Beyond the allegations in the TAC, Baupost does not attempt to trace PG&E's stock price declines to the "very facts" about which PG&E purportedly lied, as opposed to negative news regarding PG&E's financial health generally. *See* PERA Obj. § III.C.3 (citing *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022)). Given that Baupost purchased all of its shares after the North Bay Fires and the December 2017 dividend suspension, loss causation is dispositive for its claims; any allegedly concealed "risks" had already materialized by the time Baupost purchased its shares. *See* PERA Obj. § III.C.3.a. For this additional reason, Baupost's securities claims should be expunged and dismissed.

## V. CONCLUSION

For the foregoing reasons, PG&E respectfully requests entry of an order (i) disallowing and expunging the claims listed on **Exhibit A** hereto, and (ii) granting such other and further relief as the Court may deem just and appropriate.

Dated: December 13, 2023

Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**
**LATHAM & WATKINS LLP**

By: /s/ Joshua G. Hamilton

Joshua G. Hamilton

Attorneys for Debtors and Reorganized Debtors