1              UNITED STATES BANKRUPTCY COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                   -oOo-

```
 4   In Re:                         ) Case No.  19-30088
                                    ) Chapter 11
 5   PG&E CORPORATION AND PACIFIC   )
     GAS AND ELECTRIC COMPANY       ) San Francisco, California
 6                                  ) Tuesday, January 9, 2024
                          Debtor.   ) 10:00 AM
 7   _____)
                                      STATUS CONFERENCE REGARDING
 8                                    SECOND MOTION FOR PARTIAL
                                      SUMMARY JUDGMENT OF ISSUES IN
 9                                    REORGANIZED DEBTOR'S
                                      OBJECTION TO CLAIM #2090 AND
10                                    CLAIMANT'S RESPONSE THERETO
                                      FILED BY AMIR SHAHMIRZA
11                                    [14007]
```

12             TRANSCRIPT OF PROCEEDINGS

           BEFORE THE HONORABLE DENNIS MONTALI

13           UNITED STATES BANKRUPTCY JUDGE

```
14   APPEARANCES (All present by video or telephone):
     For the Reorganized        STEVEN A. LAMB, ESQ.
15   Debtors:                   Rovens Lamb LLP
                                 2601 Airport Drive
16                              Suite 370
                                Torrance, CA 90505
17                              (310)536-7830

18                              THOMAS B. RUPP, ESQ.
                                Keller Benvenutti Kim LLP
19                              650 California Street
                                Suite 1900
20                              San Francisco, CA 94108
                                (415)636-9015
21
     For Amir Shahmirza,        LAWRENCE A. JACOBSON, ESQ.
22   Komir, Inc.:               Cohen and Jacobson, LLP
                                 66 Bovet Road
23                              Suite 285
                                San Mateo, CA 94402
24                              (650)261-6280

25   Also Present:              Amir Shahmirza, Claimant
```

**eScribers, LLC**

```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18   Court Recorder:              LORENA PARADA/ANKEY THOMAS
                                  United States Bankruptcy Court
19                                450 Golden Gate Avenue
                                  San Francisco, CA 94102
20

21   Transcriber:                 SHARONA SHAPIRO
                                  eScribers, LLC
22                                7227 N. 16th Street
                                  Suite #207
23                                Phoenix, AZ 85020
                                  (800) 257-0885
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

Case: 19-30088    Doc# 14264    Filed: 01/10/24    Entered: 01/10/24 09:06:33    Page 2 of 29

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, JANUARY 9, 2024, 10:00 AM

2                                -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session, the Honorable

5    Dennis Montali presiding, calling the matter of PG&E

6    Corporation.

7            THE COURT:  All right.  Good morning.  Appearances,

8    please.

9            Mr. Jacobson, good morning.

10           MR. JACOBSON:  Yes.  Good morning, Your Honor.

11   Lawrence Jacobson, appearing for claimant, Komir, Inc.  Amir

12   Shahmirza is present here with me.  He can see the screen, but

13   he is off camera.

14           THE COURT:  All right.  Thank you.

15           Mr. Lamb?

16           MR. LAMB:  Good morning, Your Honor.  Steve Lamb for

17   the reorganized debtors.

18           THE COURT:  And Mr. Rupp?

19           MR. RUPP:  Good morning, Your Honor.  Thomas Rupp, of

20   Keller Benvenutti Kim, on behalf of the reorganized debtors.

21           THE COURT:  So as I've stated in my docket text order

22   of December 26th, I've decided to deny the Shahmirza/Komir

23   second motion for summary judgment at docket 14007 for the

24   reasons that I will explain in this oral ruling.

25           By way of introduction, I repeat verbatim what was set

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 3
of 29

1   forth in and is the issue presented by the second motion:

2   "PG&E never paid any real property taxes assessed against the

3   property.  Komir paid all the real property taxes.  These facts

4   alone warrant the granting of summary judgment number two.

5   Moreover, PG&E's use of the space occupied by the original

6   transmission lines was permissive, which precludes the

7   establishment of any prescriptive rights.  PG&E did not occupy

8   the property under any adverse claim for five-years.

9   Therefore, the requisite five-year period could not have

10   expired between the initiation of any nonconsensual possession

11   and the filing of the state court lawsuit.  For each of the

12   separate foregoing reasons, PG&E has no prescriptive rights.

13   The Court's order granting this motion for partial summary

14   judgment is not only appropriate, in view of the facts and the

15   law set forth above, but is the fair and just result as PG&E

16   acted unilaterally and proceeded over the objections of the

17   owner with no regard for the owner or its rights by using the

18   230 kV lines to service all of the customers to whom PG&E sold

19   the power delivered across claimant's property presumably to

20   the airport and to the northern peninsula of San Francisco."

21         To begin with the explanation of my ruling, however, I

22   need to clarify a statement made in my June 12th, 2023,

23   memorandum decision on the first motion for summary judgment,

24   docket 13832.

25         In that decision, I rejected PG&E's counter-motion for

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 4
of 29

1  summary judgment because the thrust of its argument leading up

2  to that decision, and thus my own reasoning, was that it held a

3  prescriptive easement over the property for decades. I

4  complained that the argument overlooked the reality of the

5  movement of the towers and the slight lowering of the lines in

6  2018 and pointed out that the Komir lawsuit was based upon the

7  change of use and the rights that were established well before

8  the five-year period for prescriptive easement to be

9  established.

10       The briefing for the second motion, the arguments, and

11  the evidence, and in particular the declaration of Melanie M.

12  Brayton, formerly Melanie M. Hildebrand, focused on Komir's

13  consent by acquiescence, between 2000 and 2018, which it

14  contends is not therefore an easement by prescription.

15       It was my understanding that the state of affairs

16  prior to 2018 were not in play and there was no need to focus

17  on whether PG&E's rights, going back decades, were established

18  by a consensual easement, a prescriptive easement, or some

19  other operation of law, but not the events described in the

20  briefing on the first motion and dealt with by the first

21  portion of my June 12th, 2023 memorandum decision, namely the

22  elimination of the recorded easement.

23       It is only upon the further arguments in the second

24  motion that I now understand that PG&E's statute-of-limitations

25  argument pertains to events that happened decades earlier.

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 5
of 29

1  That is the background for my decision today, namely that it is

2  simply the change of circumstances in 2018 that give Komir any

3  basis to complain and PG&E the right to uphold its present

4  position.

5       Further, as my explanation that follows should make

6  clear, the matters raised by Komir in its January 3rd, 2024 ex

7  parte motion, document docket 14253, are duplicative of matters

8  I have resolved.  In fact, I made the decision before Komir

9  made that filing and only deferred it until now to take time to

10  explain my reasoning more fully.  Thus, the ex-parte motion

11  will be denied as unnecessary.

12       Komir built its entire argument around the principle

13  that's established in the Hansen v. Sandridge Partners opinion

14  at 22 Cal.App.5th 1020.  The Court of Appeals held that when

15  someone in Hansen's position, the alleged dominant estate, here

16  PG&E's position, the dominant estate, purports to obtain the

17  fruits of adverse possession by exclusively occupying the

18  affected property, to the exclusion of complete use by a

19  disputed owner, the subservient estate -- in that case,

20  Sandridge; in this case, Komir -- it must also have paid the

21  real property taxes.

22       In short, the reason is that, when under certain

23  nonexclusive circumstances, a party might obtain an easement,

24  in fact, when its occupation might create the equivalent of an

25  estate, it triggers the obligation to pay the taxes.

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 6
of 29

1           For several reasons, the Hansen case is simply not on
2    point and in fact is demonstrably distinguishable.  For
3    openers, the Court's principal analysis and reasoning begins
4    with the discussion of equitable easements, none of which is
5    relevant to any component of the dispute between Komir and
6    PG&E.
7           After a brief summary of the factual history, the
8    court turns to its analysis, and the discussion in the opening
9    paragraph reads, "The Hansens are not entitled to an equitable
10   easement".  Then the court opinion proceeds with a summary of
11   the law of equitable easements, and after pointing out the
12   standard of review, it applies that law to the facts and then
13   asserts two critical facts:  Hansens negligently encroached;
14   and Sandridge, the neighbor, was not contributorily negligent.
15          After further discussion, it finally deals with
16   prescriptive easements and rejects the Hansen cross-appeal.
17   The decision does contain a useful and helpful tutorial on the
18   difference between estates, namely, ownership interests, that
19   are or may become possessory, and easement incorporeal
20   interests that are less than the right of ownership.
21          And the following quote from that case is dispositive
22   here.  And this is, again, a direct quote.  "The Hansens
23   counter that all easements involve use of another's property
24   that cannot be interfered with by the owner.  But that does not
25   mean that all easements are the practical equivalent of an

1  estate.  For example, consider an easement for a road across

2  the property of another.  The Hansens observe that such

3  easements necessarily prevent servient landowner from farming

4  its property under the road, storing material in the roadway,

5  or building a structure on the roadway.  But the servient

6  lender would still be able to drive on the road.  Such

7  nonexclusive easements do not create the same problem that

8  arises when a purported easement prevents the servient tenement

9  landowner from using the land for any practical purpose."

10  Citations omitted and a quote.

11        Thus the analysis that contrasts the circumstances of

12  a prescriptive easement, or any other type of easement, and

13  whether it morphs into an estate are simply not supported by

14  the facts of the Hansen case.

15        A further distinction comes from the fact that Hansen

16  acted negligently when it planted the trees and installed the

17  irrigation system.  And in fact, in summarizing this

18  discussion, the court pointed out that Erik Hansen did not know

19  that the lot line at issue involved disputed land, suggesting

20  that its encroachment was not intentional but did not settle

21  the issue of negligence.

22        The court added that Mr. Hansen did not know where the

23  lot line adjustment was, and that is why he was negligent in

24  planting a permanent crop without determining where the lot

25  line was located.

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 8
of 29

1      Here there is simply no suggestion that PG&E acted

2 wrongfully.  There is no comparison between a ten-acre

3 pistachio tree orchard, that has no other use or access across

4 it, with no power lines over it, with Komir's two-acre

5 commercial property that has a pumping station on it, power

6 lines over it for decades, and on which the owner, Komir, has

7 leased the very property to PG&E, on occasion, over the years,

8 from time to time, since it acquired the property.

9      Add to that the fact that, in 2014, the San Mateo

10 Superior Court, in an action brought by Komir against the

11 County Flood Control District, overruled Komir's challenge

12 based upon a statute of limitations, and further upheld the

13 prescriptive easement, but at the same time awarded a nominal

14 amount of money to Komir for an unlawful expansion of that

15 easement by two lengths of fence enclosing 100 square feet of

16 the plaintiff's property.

17      Again, while the recovery is nominal, it was

18 measurable in dollars and more closely resembles the cases

19 cited in Hansen, such as Warsaw and MacDonald Properties, both

20 of which turned on an exception when the easement is

21 nonexclusive and the subservient landowner shares the benefit

22 of the easement.

23      Here the power lines did not exclude Komir from

24 maintaining the pumping station on its property, maintaining

25 through the district, or to be compensated for the pumping

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 9
of 29

1    irrigation district's placement of the unauthorized fences.

2    Nor is there any evidence about the power lines interfering

3    with other uses of the property beyond Komir's aspirational

4    intention to have a multi-story building constructed on the

5    property.  That situation is either as it existed for decades

6    or had been slightly altered in 2018.

7            Finally, Komir argues that nothing about any change in

8    direction of the transmission lines or their height is relevant

9    to the second motion for summary judgment.  The Court agrees

10   that those require a factual determination, and such

11   determination would not be appropriate on this motion.

12           The only matter for this action is the now denied

13   second motion for summary judgment framed in the way I

14   described at the outset of this ruling.  Thus, the matters

15   raised in the ex parte motion are for another day.

16           That being said, it appears from the briefing that the

17   burden is on the subservient tenement here, Komir, to prove

18   that the repositioning of the line's height establishes its

19   damages.  That, again, is for trial.

20           In that regard, the Court notes that in PG&E's

21   opposition to the motion, docket 14111, there is a discrepancy

22   between the statement at page 3, line 22, that the lines were

23   "raised slightly by 4.9 feet", and a statement, at page 9, line

24   21, that the conduction lines were, "lowered by 4.9 feet".

25           Komir's state court complaint filed on November 29th,

1  2018, is premised on Komir's belief that the lowering was

2  allegedly eleven feet and said nothing about any repositioning

3  of the lines.  In contrast, the Raines declaration, document

4  14116, suggests a 4.9-foot lowering, beginning at the northern

5  boundary of the Komir property, and tapering down to no change

6  at the height that appears to be near the center, where Raines

7  described the sag in the power line at maximum temperature.

8         These observations are nothing more than that and are

9  not relevant to today's decision.  However, if this matter goes

10  to trial -- and on the factual question it is worth pointing

11  out that the parties that Komir -- excuse me -- pointing out to

12  the parties that Komir's evidence of an eleven-foot decrease is

13  barely credible, and the Raines' evidence appears to be

14  virtually dispositive on that specific issue.

15         In summary, PG&E's conduct, vis-a-vis Komir and the

16  2018 changes at the property, have no similarity to the knowing

17  and negligent conduct of Hansen that deprived the adjacent

18  owner of virtually any meaningful use of the property in that

19  case.

20         Here, at best, there is a slight decrease in the

21  height of a portion of the power lines that run north and south

22  from the property line and perhaps give rise to some modest

23  trespass damages, if any.  There is no need to act on the

24  competing evidentiary objections because the decision made here

25  is purely one of law.  The history of how the easement came to

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 11
of 29

1  be is of no consequence.

2      The declaration of Ms. Brayton is consistent with the

3  absence of any consent by her or her late husband.  But there

4  is no evidence to indicate how before that easement came to be

5  established -- how or before that easement came to be

6  established, nor does it matter.  What is relevant here is

7  that, from 2000 forward, Komir acquiesced in the existing

8  easement.

9      So call it consensual, if you will, but it took no

10  action to do anything about it, and thus, to the extent that

11  the easement was established sometime prior, the statute of

12  limitations of three years would preclude any action.  But

13  since Komir only acted when there was a change in 2018, there's

14  nothing to implicate any statute of limitations, but merely the

15  question of whether the slight adjustment in height at one end

16  of the property gave rise to any measurable damage based upon

17  the theory of trespass.

18      The events of 2018, however characterized, did not

19  eliminate the easement rights PG&E enjoyed and utilized for

20  decades.  That will be dealt with at trial if the parties do

21  not finally settle this case.

22      Stated differently, Mr. Shahmirza stated that he

23  withdrew his consent when the power lines were moved in 2018,

24  but the removal of his consent was irrelevant.  The easement

25  was established long before Mr. Shahmirza ever bought the

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 12
of 29

1   property, and therefore to withdraw consent was a nullity,

2   because the consent was not relevant in the first place. It

3   was, again, I'll repeat, only the change in 2018 that might

4   have created a trespass, but as I concluded from the evidence,

5   did not constitute an abandonment or elimination of the

6   easement that existed through the lines.

7        And again, the notion that power lines across and over

8   property create a separate measurable parcel, and to compare it

9   with the ten acres of pistachio trees in the country, is just

10  simply a nonstarter. And there's no indication, as I stated

11  previously, that the presence of the power lines took away

12  various options available to Komir or Shahmirza for what was

13  taking place on the ground.

14        For the foregoing reasons, the second motion will be

15  denied and the Court will issue an order to that effect later

16  today.

17        Counsel should meet and confer about what should come

18  next. The Court will hold a status conference on January 24th,

19  2024, at 10 a.m., to discuss the future events left open for

20  consideration after this ruling as contemplated in the

21  stipulation of July 25th, 2023, document number 13920.

22        So that will conclude my ruling, and I don't want to

23  take any further argument. Are there any questions?

24        Mr. Jacobson?

25        MR. JACOBSON: No, I would make comments, but I'm

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 13
of 29

1　understanding that those are not welcome at the moment.

2　　　　THE COURT:  Well, you can make a comment.  I just

3　don't want to take further argument.  Make a comment.  I'm not

4　trying to silence you.  I just -- I've made my decision, and it

5　is my decision, but feel free to comment.

6　　　　MR. JACOBSON:  The issue started with the lowering of

7　the lines.  And as I'm understanding the ruling, the lowering

8　of the lines and its effect is the issue now.  But there is a

9　crossover here, because I understand the Hansen case to talk

10　about the exclusive use of the disputed space, not the ability

11　of the owner to use the property for other purposes.

12　　　　And both Brayton and Shahmirza have made their

13　declarations that both intended to develop and construct.  So

14　that the lines not -- the use of the lines space is not only

15　exclusive, but the placement of the lines adversely affects the

16　use between the ground and the transmission towers.

17　　　　And the evidence in the record is that neither Brayton

18　nor Komir purchased this property to be farmers or miners or to

19　park cars.  So PG&E is profiting from all of the electricity

20　that passes through.  But neither Brayton nor Komir can use the

21　space under the lines for their intended purpose.  That's my

22　comment.

23　　　　THE COURT:  My only response -- I'm not going to

24　debate it.  I'm simply recalling your argument before in your

25　briefing.  Again, I'm not criticizing you.  You cast your fate

1  with the Hansen case, and you made me read the Hansen case,

2  which, of course, is my responsibility.  And I found the Hansen

3  case to be fascinating, and thorough, and scholarly, but not on

4  point, because I do not equate lines over property that has

5  been used by third parties, by PG&E, by the irrigation

6  district, by Komir leasing property on the ground to PG&E, I

7  don't find that equivalent to occupying ten acres where you

8  grow pistachio trees and there isn't even a road through it so

9  that no other use is there.

10         Now, you want to do hypotheticals?  What if somebody

11  came along and put power lines over those pistachio trees?

12  Well, I'm not going to debate that because that isn't what

13  happened.  And what would happen if PG&E deactivated those

14  lines across the Komir property and never earned a dollar from

15  it; they just sat there and housed scarecrows or birds?  I

16  don't think it matters.  The question is, is the air space

17  occupied by three or -- excuse me -- six power lines exclusive

18  for purposes of saying if the real property taxes aren't paid

19  it's the equivalent of an estate.  And I simply don't accept

20  that.

21         So Mr. Lamb, any comments?

22         MR. LAMB:  Your Honor, my only comment would be that

23  my understanding is that we're trying to deal with some

24  scheduling issues, which I appreciate.  Hopefully we can come

25  to some agreement before this January 24th conference.  But we

Case: 19-30088    Doc# 14264    Filed: 01/10/24    Entered: 01/10/24 09:06:33    Page 15
of 29

1 have a deadline right now, based on a prior stipulation, on

2 January 16th for expert depositions. And I believe opposing

3 counsel has agreed that it should be extended to at least

4 February 16th. I've asked for March 1st.

5    We should obviously meet and confer about further

6 dates, but if we could at least agree on the record that that

7 January 16th date isn't effective, then we can deal with that,

8 I think, later at the January 24th conference.

9    THE COURT: Well, the January 24th conference was just

10 picked as my next available PG&E date. I'm not wedded to that.

11 My fervent hope is that maybe the parties will settle this case

12 now, because I'm upset -- not upset personally, but I regret,

13 for both sides, the staggering expense that has been gone to by

14 both sides. And I don't take pleasure in telling Mr. Shahmirza

15 that I don't think his theory is a winner, but that's my

16 conclusion.

17    And therefore, to state it differently, I'm

18 acknowledging that PG&E had rights, that something changed in

19 2018, but it didn't change in a way, in my mind, that somehow

20 its easement was obliterated, and rather that there appears to

21 be a slight change in the height, not even the angle, the

22 height of the wires starting north of the property, but at

23 least assuming dropping five feet as it crossed into Komir, and

24 maybe to eight feet, or ten feet, or eleven feet, or some

25 amount of feet. Again, there must be some measure to quantify

Case: 19-30088 Doc# 14264 Filed: 01/10/24 Entered: 01/10/24 09:06:33 Page 16
of 29

1 a trespass. And I don't know whether that's 500 dollars, or
2 500,000 dollars, or some other amount. But it would seem to me
3 that, if one trespasses on one's property by altering
4 something, that there should be some consequence.

5 So my hope is that maybe the parties will come to a
6 consensual resolution. But if we have to have a trial about
7 what are the monetary consequences of the ruling that I've
8 made, we'll do it.

9 So I'll accommodate both of you and your own schedule.
10 And I won't order anybody to mediation. I will just plead you
11 to try to solve this problem so we don't have any further
12 litigation over it. So there's nothing concrete about that
13 date. I just picked it as the next date. I'll move it
14 anywhere you want if that's the consensus of both sides that we
15 do that.

16 MR. LAMB: And we will certainly meet and confer. And
17 I think we've tentatively agreed on mediation, but we're still
18 sorting out dates and we will work on that, Your Honor.

19 THE COURT: Yeah. I mean, look, I'm not asking Komir
20 to throw in the towel if they believe my decision is wrong. If
21 they wish to appeal my decision, they can do so. Of course
22 they have a right to do that.

23 But my point is, I'm just taking what -- again, I
24 compliment Mr. Jacobson for his research and focusing on that
25 case. And I thought the case was a wonderful learning

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 17
of 29

1  experience.

2          MR. JACOBSON:  I would just say --

3          THE COURT:  I just don't think it did what Mr.

4  Jacobson wanted it to do, in my mind.

5          MR. JACOBSON:  Well, I --

6          THE COURT:  Anyway -- yes, I'm sorry.  Go ahead, Mr.

7  Jacobson.

8          MR. JACOBSON:  My other comment would be that the

9  Court keep a neutral point of view about the significance of

10  the alteration, that every inch counts, and it's lowered for a

11  distance of 304 feet.  And there's been disagreement between

12  PG&E and Komir about use and building, and a letter from PG&E

13  about what Komir can or can't do.  And I would just ask the

14  Court to keep a neutral perspective on the amount of the

15  lowering of the lines, the consequences, and potential damage.

16          THE COURT:  And Mr. Jacobson, I said 50,000 or

17  500,000, if you have experts that can show 15 million do it.

18  What I'm saying is we start with your own client's rather off-

19  the-cuff eleven foot, and the quote of some guy that says, oh,

20  those things have been adjusted by eleven feet  Mr. Raines

21  says, well, it's not eleven feet; it's some other feet.  It's

22  whatever it is.  But I don't know how to quantify that in terms

23  of damage.

24          I do accept, and I believe -- again, this is what I

25  learned from the research and reading the case law -- that when

1  you mess with your easement rights, you don't lose your

2  easement, necessarily, but you might have to pay a trespass

3  consequence.  And to me, that's -- and the simple -- the most

4  important lesson that I learned was what the superior court did

5  in 2014.  It said to the irrigation district, you guys didn't

6  have the right to put those two fences up, and made them move

7  two fences.

8          But those fences were on the Komir property.  And so

9  the court upheld the right for the irrigation district to have

10 the pumping station there and just made it -- and I don't even

11 know what the outcome was; I presume it was nominal.

12         So is it nominal to say to PG&E you shouldn't have

13 lowered the wire five feet?  Well, maybe it's nominal; maybe

14 it's seven figures.  I don't have any -- you know that I

15 couldn't determine that on a motion for summary judgment.  And

16 it doesn't matter.  There's no evidence of how we quantify it.

17 So of course I'm keeping a neutral attitude about that.  Okay.

18         MR. JACOBSON:  That's all I ask.  We look forward to

19 the trial.  We have seven or eight figure damage experts, so we

20 will look forward to being in front of you and talking about

21 that.

22         THE COURT:  I look forward to approving a settlement.

23 But that's up to you and your client.  So we'll see what

24 happens.  And again, thank you for your time, and the time in

25 the briefing, and appreciate your participation on both sides.

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 19
of 29

1    Good job.  And we'll conclude the hearing now at this point.

2    Thank you very much.

3              MR. LAMB:  Thank you, Your Honor.

4         (Whereupon these proceedings were concluded at 10:30 AM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I N D E X

RULINGS:                                          PAGE  LINE

Second Motion of Amir Shahmirza, Komir,            3     23
Inc. for partial summary judgment of
issues in reorganized debtor's objection to
Claim 2090 is denied.

C E R T I F I C A T I O N

I, Sharona Shapiro, certify that the foregoing transcript is a true and accurate record of the proceedings.

*Sharona Shapiro*

/s/ SHARONA SHAPIRO, CET-492

eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020

Date:  January 10, 2024

Case: 19-30088   Doc# 14264   Filed: 01/10/24   Entered: 01/10/24 09:06:33   Page 22 of 29

## A

**abandonment (1)**
13:5
**ability (1)**
14:10
**able (1)**
8:6
**above (1)**
4:15
**absence (1)**
12:3
**accept (2)**
15:19;18:24
**access (1)**
9:3
**accommodate (1)**
17:9
**acknowledging (1)**
16:18
**acquiesced (1)**
12:7
**acquiescence (1)**
5:13
**acquired (1)**
9:8
**acres (2)**
13:9;15:7
**across (5)**
4:19;8:1;9:3;13:7;
15:14
**act (1)**
11:23
**acted (4)**
4:16;8:16;9:1;
12:13
**action (4)**
9:10;10:12;12:10,
12
**Add (1)**
9:9
**added (1)**
8:22
**adjacent (1)**
11:17
**adjusted (1)**
18:20
**adjustment (2)**
8:23;12:15
**adverse (2)**
4:8;6:17
**adversely (1)**
14:15
**affairs (1)**
5:15
**affected (1)**
6:18
**affects (1)**
14:15
**again (10)**
7:22;9:17;10:19;
13:3,7;14:25;16:25;
17:23;18:24;19:24
**against (2)**
4:2;9:10
**agree (1)**
16:6
**agreed (2)**
16:3;17:17
**agreement (1)**
15:25
**agrees (1)**
10:9
**ahead (1)**
18:6
**air (1)**
15:16
**airport (1)**
4:20
**alleged (1)**
6:15
**allegedly (1)**
11:2
**alone (1)**
4:4
**along (1)**
15:11
**alteration (1)**
18:10
**altered (1)**
10:6
**altering (1)**
17:3
**Amir (1)**
3:11
**amount (4)**
9:14;16:25;17:2;
18:14
**analysis (3)**
7:3,8;8:11
**angle (1)**
16:21
**another's (1)**
7:23
**appeal (1)**
17:21
**Appeals (1)**
6:14
**Appearances (1)**
3:7
**appearing (1)**
3:11
**appears (4)**
10:16;11:6,13;
16:20
**applies (1)**
7:12
**appreciate (2)**
15:24;19:25
**appropriate (2)**
4:14;10:11
**approving (1)**
19:22
**argues (1)**
10:7

**argument (7)**
5:1,4,25;6:12;
13:23;14:3,24
**arguments (2)**
5:10,23
**arises (1)**
8:8
**around (1)**
6:12
**aspirational (1)**
10:3
**asserts (1)**
7:13
**assessed (1)**
4:2
**assuming (1)**
16:23
**attitude (1)**
19:17
**available (2)**
13:12;16:10
**awarded (1)**
9:13
**away (1)**
13:11

## B

**back (1)**
5:17
**background (1)**
6:1
**barely (1)**
11:13
**based (4)**
5:6;9:12;12:16;
16:1
**basis (1)**
6:3
**become (1)**
7:19
**begin (1)**
4:21
**beginning (1)**
11:4
**begins (1)**
7:3
**behalf (1)**
3:20
**belief (1)**
11:1
**benefit (1)**
9:21
**Benvenutti (1)**
3:20
**best (1)**
11:20
**beyond (1)**
10:3
**birds (1)**
15:15
**both (8)**
9:19;14:12,13;

16:13,14;17:9,14;
19:25
**bought (1)**
12:25
**boundary (1)**
11:5
**Brayton (5)**
5:12;12:2;14:12,17,
20
**brief (1)**
7:7
**briefing (5)**
5:10,20;10:16;
14:25;19:25
**brought (1)**
9:10
**building (3)**
8:5;10:4;18:12
**built (1)**
6:12
**burden (1)**
10:17

## C

**CalApp5th (1)**
6:14
**CALIFORNIA (1)**
3:1
**Call (2)**
3:3;12:9
**calling (1)**
3:5
**came (4)**
11:25;12:4,5;15:11
**camera (1)**
3:13
**can (8)**
3:12;14:2,20;15:24;
16:7;17:21;18:13,17
**cars (1)**
14:19
**case (15)**
6:19,20;7:1,21;
8:14;11:19;12:21;
14:9;15:1,1,3;16:11;
17:25,25;18:25
**cases (1)**
9:18
**cast (1)**
14:25
**center (1)**
11:6
**certain (1)**
6:22
**certainly (1)**
17:16
**challenge (1)**
9:11
**change (8)**
5:7;6:2;10:7;11:5;
12:13;13:3;16:19,21
**changed (1)**

16:18
**changes (1)**
11:16
**characterized (1)**
12:18
**circumstances (3)**
6:2,23;8:11
**Citations (1)**
8:10
**cited (1)**
9:19
**claim (1)**
4:8
**claimant (1)**
3:11
**claimant's (1)**
4:19
**clarify (1)**
4:22
**clear (1)**
6:6
**CLERK (1)**
3:4
**client (1)**
19:23
**client's (1)**
18:18
**closely (1)**
9:18
**comment (6)**
14:2,3,5,22;15:22;
18:8
**comments (2)**
13:25;15:21
**commercial (1)**
9:5
**compare (1)**
13:8
**comparison (1)**
9:2
**compensated (1)**
9:25
**competing (1)**
11:24
**complain (1)**
6:3
**complained (1)**
5:4
**complaint (1)**
10:25
**complete (1)**
6:18
**compliment (1)**
17:24
**component (1)**
7:5
**conclude (2)**
13:22;20:1
**concluded (2)**
13:4;20:4
**conclusion (1)**
16:16
**concrete (1)**

Case: 19-30088    Doc# 14264    Filed: 01/10/24    Entered: 01/10/24 09:06:33    Page 23 of 29

17:12
**conduct (2)**
11:15,17
**conduction (1)**
10:24
**confer (3)**
13:17;16:5;17:16
**conference (4)**
13:18;15:25;16:8,9
**consensual (3)**
5:18;12:9;17:6
**consensus (1)**
17:14
**consent (6)**
5:13;12:3,23,24;
13:1,2
**consequence (3)**
12:1;17:4;19:3
**consequences (2)**
17:7;18:15
**consider (1)**
8:1
**consideration (1)**
13:20
**consistent (1)**
12:2
**constitute (1)**
13:5
**construct (1)**
14:13
**constructed (1)**
10:4
**contain (1)**
7:17
**contemplated (1)**
13:20
**contends (1)**
5:14
**contrast (1)**
11:3
**contrasts (1)**
8:11
**contributorily (1)**
7:14
**Control (1)**
9:11
**Corporation (1)**
3:6
**Counsel (2)**
13:17;16:3
**counter (1)**
7:23
**counter-motion (1)**
4:25
**country (1)**
13:9
**counts (1)**
18:10
**County (1)**
9:11
**course (3)**
15:2;17:21;19:17
**Court (30)**

3:3,4,7,14,18,21;
4:11;6:14;7:8,10;
8:18,22;9:10;10:9,20,
25;13:15,18;14:2,23;
16:9;17:19;18:3,6,9,
14,16;19:4,9,22
**Court's (2)**
4:13;7:3
**create (3)**
6:24;8:7;13:8
**created (1)**
13:4
**credible (1)**
11:13
**critical (1)**
7:13
**criticizing (1)**
14:25
**crop (1)**
8:24
**cross-appeal (1)**
7:16
**crossed (1)**
16:23
**crossover (1)**
14:9
**customers (1)**
4:18

**D**

**damage (4)**
12:16;18:15,23;
19:19
**damages (2)**
10:19;11:23
**date (4)**
16:7,10;17:13,13
**dates (2)**
16:6;17:18
**day (1)**
10:15
**deactivated (1)**
15:13
**deadline (1)**
16:1
**deal (2)**
15:23;16:7
**deals (1)**
7:15
**dealt (2)**
5:20;12:20
**debate (2)**
14:24;15:12
**debtors (2)**
3:17,20
**decades (6)**
5:3,17,25;9:6;10:5;
12:20
**December (1)**
3:22
**decided (1)**
3:22

**decision (13)**
4:23,25;5:2,21;6:1,
8;7:17;11:9,24;14:4,
5;17:20,21
**declaration (3)**
5:11;11:3;12:2
**declarations (1)**
14:13
**decrease (2)**
11:12,20
**deferred (1)**
6:9
**delivered (1)**
4:19
**demonstrably (1)**
7:2
**denied (3)**
6:11;10:12;13:15
**Dennis (1)**
3:5
**deny (1)**
3:22
**depositions (1)**
16:2
**deprived (1)**
11:17
**described (3)**
5:19;10:14;11:7
**determination (2)**
10:10,11
**determine (1)**
19:15
**determining (1)**
8:24
**develop (1)**
14:13
**difference (1)**
7:18
**differently (2)**
12:22;16:17
**direct (1)**
7:22
**direction (1)**
10:8
**disagreement (1)**
18:11
**discrepancy (1)**
10:21
**discuss (1)**
13:19
**discussion (4)**
7:4,8,15;8:18
**dispositive (2)**
7:21;11:14
**dispute (1)**
7:5
**disputed (3)**
6:19;8:19;14:10
**distance (1)**
18:11
**distinction (1)**
8:15
**distinguishable (1)**

7:2
**District (5)**
9:11,25;15:6;19:5,9
**district's (1)**
10:1
**docket (5)**
3:21,23;4:24;6:7;
10:21
**document (3)**
6:7;11:3;13:21
**dollar (1)**
15:14
**dollars (3)**
9:18;17:1,2
**dominant (2)**
6:15,16
**down (1)**
11:5
**drive (1)**
8:6
**dropping (1)**
16:23
**duplicative (1)**
6:7

**E**

**earlier (1)**
5:25
**earned (1)**
15:14
**easement (28)**
5:3,8,14,18,22;
6:23;7:10,19;8:1,8,12,
12;9:13,15,20,22;
11:25;12:4,5,8,11,19,
24;13:6;16:20;19:1,2
**easements (7)**
7:4,11,16,23,25;8:3,
7
**effect (2)**
13:15;14:8
**effective (1)**
16:7
**eight (2)**
16:24;19:19
**either (1)**
10:5
**electricity (1)**
14:19
**eleven (5)**
11:2;16:24;18:19,
20,21
**eleven-foot (1)**
11:12
**eliminate (1)**
12:19
**elimination (2)**
5:22;13:5
**enclosing (1)**
9:15
**encroached (1)**
7:13

7:2
**District (5)**

**encroachment (1)**
8:20
**end (1)**
12:15
**enjoyed (1)**
12:19
**entire (1)**
6:12
**entitled (1)**
7:9
**equate (1)**
15:4
**equitable (3)**
7:4,9,11
**equivalent (4)**
6:24;7:25;15:7,19
**Erik (1)**
8:18
**established (8)**
5:7,9,17;6:13;12:5,
6,11,25
**establishes (1)**
10:18
**establishment (1)**
4:7
**estate (7)**
6:15,16,19,25;8:1,
13;15:19
**estates (1)**
7:18
**even (3)**
15:8;16:21;19:10
**events (4)**
5:19,25;12:18;
13:19
**evidence (8)**
5:11;10:2;11:12,13;
12:4;13:4;14:17;
19:16
**evidentiary (1)**
11:24
**ex (2)**
6:6;10:15
**example (1)**
8:1
**exception (1)**
9:20
**exclude (1)**
9:23
**exclusion (1)**
6:18
**exclusive (3)**
14:10,15;15:17
**exclusively (1)**
6:17
**excuse (2)**
11:11;15:17
**existed (2)**
10:5;13:6
**existing (1)**
12:7
**expansion (1)**
9:14

Case: 19-30088    Doc# 14264    Filed: 01/10/24    Entered: 01/10/24 09:06:33    Page 24
of 29

**ex-parte (1)**
6:10
**expense (1)**
16:13
**experience (1)**
18:1
**expert (1)**
16:2
**experts (2)**
18:17;19:19
**expired (1)**
4:10
**explain (2)**
3:24;6:10
**explanation (2)**
4:21;6:5
**extended (1)**
16:3
**extent (1)**
12:10

**F**

**fact (6)**
6:8,24;7:2;8:15,17;
9:9
**facts (5)**
4:3,14;7:12,13;8:14
**factual (3)**
7:7;10:10;11:10
**fair (1)**
4:15
**farmers (1)**
14:18
**farming (1)**
8:3
**fascinating (1)**
15:3
**fate (1)**
14:25
**February (1)**
16:4
**feel (1)**
14:5
**feet (14)**
9:15;10:23,24;11:2;
16:23,24,24,24,25;
18:11,20,21,21;19:13
**fence (1)**
9:15
**fences (4)**
10:1;19:6,7,8
**fervent (1)**
16:11
**figure (1)**
19:19
**figures (1)**
19:14
**filed (1)**
10:25
**filing (2)**
4:11;6:9
**finally (3)**

7:15;10:7;12:21
**find (1)**
15:7
**first (4)**
4:23;5:20,20;13:2
**five (2)**
16:23;19:13
**five-year (2)**
4:9;5:8
**five-years (1)**
4:8
**Flood (1)**
9:11
**focus (1)**
5:16
**focused (1)**
5:12
**focusing (1)**
17:24
**following (1)**
7:21
**follows (1)**
6:5
**foot (1)**
18:19
**foregoing (2)**
4:12;13:14
**formerly (1)**
5:12
**forth (2)**
4:1,15
**forward (4)**
12:7;19:18,20,22
**found (1)**
15:2
**framed (1)**
10:13
**FRANCISCO (2)**
3:1;4:20
**free (1)**
14:5
**front (1)**
19:20
**fruits (1)**
6:17
**fully (1)**
6:10
**further (9)**
5:23;6:5;7:15;8:15;
9:12;13:23;14:3;16:5;
17:11
**future (1)**
13:19

**G**

**gave (1)**
12:16
**goes (1)**
11:9
**Good (6)**
3:7,9,10,16,19;20:1
**granting (2)**

4:4,13
**ground (3)**
13:13;14:16;15:6
**grow (1)**
15:8
**guy (1)**
18:19
**guys (1)**
19:5

**H**

**Hansen (13)**
6:13;7:1,16;8:14,
15,18,22;9:19;11:17;
14:9;15:1,1,2
**Hansens (4)**
7:9,13,22;8:2
**Hansen's (1)**
6:15
**happen (1)**
15:13
**happened (2)**
5:25;15:13
**happens (1)**
19:24
**hearing (1)**
20:1
**height (7)**
10:8,18;11:6,21;
12:15;16:21,22
**held (2)**
5:2;6:14
**helpful (1)**
7:17
**Hildebrand (1)**
5:12
**history (2)**
7:7;11:25
**hold (1)**
13:18
**Honor (6)**
3:10,16,19;15:22;
17:18;20:3
**Honorable (1)**
3:4
**hope (2)**
16:11;17:5
**Hopefully (1)**
15:24
**housed (1)**
15:15
**husband (1)**
12:3
**hypotheticals (1)**
15:10

**I**

**implicate (1)**
12:14
**important (1)**
19:4

**Inc (1)**
3:11
**inch (1)**
18:10
**incorporeal (1)**
7:19
**indicate (1)**
12:4
**indication (1)**
13:10
**initiation (1)**
4:10
**installed (1)**
8:16
**intended (2)**
14:13,21
**intention (1)**
10:4
**intentional (1)**
8:20
**interests (2)**
7:18,20
**interfered (1)**
7:24
**interfering (1)**
10:2
**into (2)**
8:13;16:23
**introduction (1)**
3:25
**involve (1)**
7:23
**involved (1)**
8:19
**irrelevant (1)**
12:24
**irrigation (5)**
8:17;10:1;15:5;
19:5,9
**issue (7)**
4:1;8:19,21;11:14;
13:15;14:6,8
**issues (1)**
15:24

**J**

**Jacobson (14)**
3:9,10,11;13:24,25;
14:6;17:24;18:2,4,5,7,
8,16;19:18
**JANUARY (8)**
3:1;6:6;13:18;
15:25;16:2,7,8,9
**job (1)**
20:1
**judgment (8)**
3:23;4:4,14,23;5:1;
10:9,13;19:15
**July (1)**
13:21
**June (2)**
4:22;5:21

**K**

**keep (2)**
18:9,14
**keeping (1)**
19:17
**Keller (1)**
3:20
**Kim (1)**
3:20
**knowing (1)**
11:16
**Komir (30)**
3:11;4:3;5:6;6:2,6,
8,12,20;7:5;9:6,10,14,
23;10:7,17;11:5,11,
15;12:7,13;13:12;
14:18,20;15:6,14;
16:23;17:19;18:12,
13;19:8
**Komir's (7)**
5:12;9:4,11;10:3,
25;11:1,12
**kV (1)**
4:18

**L**

**Lamb (7)**
3:15,16,16;15:21,
22;17:16;20:3
**land (2)**
8:9,19
**landowner (3)**
8:3,9;9:21
**late (1)**
12:3
**later (2)**
13:15;16:8
**law (6)**
4:15;5:19;7:11,12;
11:25;18:25
**Lawrence (1)**
3:11
**lawsuit (2)**
4:11;5:6
**leading (1)**
5:1
**learned (2)**
18:25;19:4
**learning (1)**
17:25
**leased (1)**
9:7
**leasing (1)**
15:6
**least (3)**
16:3,6,23
**left (1)**
13:19
**lender (1)**
8:6

Case: 19-30088    Doc# 14264    Filed: 01/10/24    Entered: 01/10/24 09:06:33    Page 25 of 29

**lengths (1)**
9:15
**less (1)**
7:20
**lesson (1)**
19:4
**letter (1)**
18:12
**limitations (3)**
9:12;12:12,14
**line (7)**
8:19,23,25;10:22,
23;11:7,22
**lines (27)**
4:6,18;5:5;9:4,6,23;
10:2,8,22,24;11:3,21;
12:23;13:6,7,11;14:7,
8,14,14,15,21;15:4,
11,14,17;18:15
**line's (1)**
10:18
**litigation (1)**
17:12
**located (1)**
8:25
**long (1)**
12:25
**look (4)**
17:19;19:18,20,22
**lose (1)**
19:1
**lot (3)**
8:19,23,24
**lowered (3)**
10:24;18:10;19:13
**lowering (6)**
5:5;11:1,4;14:6,7;
18:15

**M**

**MacDonald (1)**
9:19
**maintaining (2)**
9:24,24
**March (1)**
16:4
**Mateo (1)**
9:9
**material (1)**
8:4
**matter (5)**
3:5;10:12;11:9;
12:6;19:16
**matters (4)**
6:6,7;10:14;15:16
**maximum (1)**
11:7
**may (1)**
7:19
**maybe (5)**
16:11,24;17:5;
19:13,13

**mean (2)**
7:25;17:19
**meaningful (1)**
11:18
**measurable (3)**
9:18;12:16;13:8
**measure (1)**
16:25
**mediation (2)**
17:10,17
**meet (3)**
13:17;16:5;17:16
**Melanie (2)**
5:11,12
**memorandum (2)**
4:23;5:21
**merely (1)**
12:14
**mess (1)**
19:1
**might (4)**
6:23,24;13:3;19:2
**million (1)**
18:17
**mind (2)**
16:19;18:4
**miners (1)**
14:18
**modest (1)**
11:22
**moment (1)**
14:1
**monetary (1)**
17:7
**money (1)**
9:14
**Montali (1)**
3:5
**more (3)**
6:10;9:18;11:8
**Moreover (1)**
4:5
**morning (5)**
3:7,9,10,16,19
**morphs (1)**
8:13
**most (1)**
19:3
**motion (16)**
3:23;4:1,13,23;
5:10,20,24;6:7,10;
10:9,11,13,15,21;
13:14;19:15
**move (2)**
17:13;19:6
**moved (1)**
12:23
**movement (1)**
5:5
**much (1)**
20:2
**multi-story (1)**
10:4

**must (2)**
6:20;16:25

**N**

**namely (3)**
5:21;6:1;7:18
**near (1)**
11:6
**necessarily (2)**
8:3;19:2
**need (3)**
4:22;5:16;11:23
**negligence (1)**
8:21
**negligent (3)**
7:14;8:23;11:17
**negligently (2)**
7:13;8:16
**neighbor (1)**
7:14
**neither (2)**
14:17,20
**neutral (3)**
18:9;14;19:17
**next (3)**
13:18;16:10;17:13
**nominal (5)**
9:13,17;19:11,12,
13
**nonconsensual (1)**
4:10
**none (1)**
7:4
**nonexclusive (3)**
6:23;8:7;9:21
**nonstarter (1)**
13:10
**Nor (1)**
10:2;12:6;14:18,20
**north (2)**
11:21;16:22
**northern (2)**
4:20;11:4
**notes (1)**
10:20
**notion (1)**
13:7
**November (1)**
10:25
**nullity (1)**
13:1
**number (2)**
4:4;13:21

**O**

**objections (2)**
4:16;11:24
**obligation (1)**
6:25
**obliterated (1)**
16:20

**observations (1)**
11:8
**observe (1)**
8:2
**obtain (2)**
6:16,23
**obviously (1)**
16:5
**occasion (1)**
9:7
**occupation (1)**
6:24
**occupied (2)**
4:5;15:17
**occupy (1)**
4:7
**occupying (2)**
6:17;15:7
**off (1)**
3:13
**off- (1)**
18:18
**omitted (1)**
8:10
**one (3)**
11:25;12:15;17:3
**one's (1)**
17:3
**only (9)**
4:14;5:23;6:9;
10:12;12:13;13:3;
14:14,23;15:22
**oOo- (1)**
3:2
**open (1)**
13:19
**openers (1)**
7:3
**opening (1)**
7:8
**operation (1)**
5:19
**opinion (2)**
6:13;7:10
**opposing (1)**
16:2
**opposition (1)**
10:21
**options (1)**
13:12
**oral (1)**
3:24
**orchard (1)**
9:3
**order (5)**
3:3,21;4:13;13:15;
17:10
**original (1)**
4:5
**out (6)**
5:6;7:11;8:18;
11:11,11;17:18
**outcome (1)**

**19:11
**outset (1)**
10:14
**over (9)**
4:16;5:3;9:4,6,7;
13:7;15:4,11;17:12
**overlooked (1)**
5:4
**overruled (1)**
9:11
**own (3)**
5:2;17:9;18:18
**owner (7)**
4:17,17;6:19;7:24;
9:6;11:18;14:11
**ownership (2)**
7:18,20

**P**

**page (2)**
10:22,23
**paid (4)**
4:2,3;6:20;15:18
**paragraph (1)**
7:9
**parcel (1)**
13:8
**park (1)**
14:19
**parte (2)**
6:7;10:15
**partial (1)**
4:13
**participation (1)**
19:25
**particular (1)**
5:11
**parties (6)**
11:11,12;12:20;
15:5;16:11;17:5
**Partners (1)**
6:13
**party (1)**
6:23
**passes (1)**
14:20
**pay (2)**
6:25;19:2
**peninsula (1)**
4:20
**perhaps (1)**
11:22
**period (2)**
4:9;5:8
**permanent (1)**
8:24
**permissive (1)**
4:6
**personally (1)**
16:12
**perspective (1)**
18:14

Case: 19-30088    Doc# 14264    Filed: 01/10/24    Entered: 01/10/24 09:06:33    Page 28
of 29

**pertains (1)**
5:25
**PG&E (20)**
3:5;4:2,7,12,15,18;
6:3;7:6;9:1,7;12:19;
14:19;15:5,6,13;
16:10,18;18:12,12;
19:12
**PG&E's (7)**
4:5,25;5:17,24;
6:16;10:20;11:15
**picked (2)**
16:10;17:13
**pistachio (4)**
9:3;13:9;15:8,11
**place (2)**
13:2,13
**placement (2)**
10:1;14:15
**plaintiff's (1)**
9:16
**planted (1)**
8:16
**planting (1)**
8:24
**play (1)**
5:16
**plead (1)**
17:10
**please (1)**
3:8
**pleasure (1)**
16:14
**point (5)**
7:2;15:4;17:23;
18:9;20:1
**pointed (2)**
5:6;8:18
**pointing (3)**
7:11;11:10,11
**portion (2)**
5:21;11:21
**position (3)**
6:4,15,16
**possession (2)**
4:10;6:17
**possessory (1)**
7:19
**potential (1)**
18:15
**power (12)**
4:19;9:4,5,23;10:2;
11:7,21;12:23;13:7,
11;15:11,17
**practical (2)**
7:25;8:9
**preclude (1)**
12:12
**precludes (1)**
4:6
**premised (1)**
11:1
**prescription (1)**

5:14
**prescriptive (8)**
4:7,12;5:3,8,18;
7:16;8:12;9:13
**presence (1)**
13:11
**present (2)**
3:12;6:3
**presented (1)**
4:1
**presiding (1)**
3:5
**presumably (1)**
4:19
**presume (1)**
19:11
**prevent (1)**
8:3
**prevents (1)**
8:8
**previously (1)**
13:11
**principal (1)**
7:3
**principle (1)**
6:12
**prior (3)**
5:16;12:11;16:1
**problem (2)**
8:7;17:11
**proceeded (1)**
4:16
**proceedings (1)**
20:4
**proceeds (1)**
7:10
**profiting (1)**
14:19
**Properties (1)**
9:19
**property (34)**
4:2,3,3,8,19;5:3;
6:18,21;7:23;8:2,4;
9:5,7,8,16,24;10:3,5;
11:5,16,18,22;12:16;
13:1,8;14:11,18;15:4,
6,14,18;16:22;17:3;
19:8
**prove (1)**
10:17
**pumping (4)**
9:5,24,25;19:10
**purchased (1)**
14:18
**purely (1)**
11:25
**purported (1)**
8:8
**purports (1)**
6:16
**purpose (2)**
8:9;14:21
**purposes (2)**

14:11;15:18
**put (2)**
15:11;19:6

## Q

**quantify (3)**
16:25;18:22;19:16
**quote (4)**
7:21,22;8:10;18:19

## R

**Raines (3)**
11:3,6;18:20
**Raines' (1)**
11:13
**raised (3)**
6:6;10:15,23
**rather (2)**
16:20;18:18
**read (1)**
15:1
**reading (1)**
18:25
**reads (1)**
7:9
**real (4)**
4:2,3;6:21;15:18
**reality (1)**
5:4
**reason (1)**
6:22
**reasoning (3)**
5:2;6:10;7:3
**reasons (4)**
3:24;4:12;7:1;
13:14
**recalling (1)**
14:24
**record (2)**
14:17;16:6
**recorded (1)**
5:22
**recovery (1)**
9:17
**regard (2)**
4:17;10:20
**regret (1)**
16:12
**rejected (1)**
4:25
**rejects (1)**
7:16
**relevant (5)**
7:5;10:8;11:9;12:6;
13:2
**removal (1)**
12:24
**reorganized (2)**
3:17,20
**repeat (2)**
3:25;13:3

**repositioning (2)**
10:18;11:2
**require (1)**
10:10
**requisite (1)**
4:9
**research (2)**
17:24;18:25
**resembles (1)**
9:18
**resolution (1)**
17:6
**resolved (1)**
6:8
**response (1)**
14:23
**responsibility (1)**
15:2
**result (1)**
4:15
**review (1)**
7:12
**right (8)**
3:7,14;6:3;7:20;
16:1;17:22;19:6,9
**rights (8)**
4:7,12,17;5:7,17;
12:19;16:18;19:1
**rise (2)**
11:22;12:16
**road (4)**
8:1,4,6;15:8
**roadway (2)**
8:4,5
**ruling (7)**
3:24;4:21;10:14;
13:20,22;14:7;17:7
**run (1)**
11:21
**Rupp (3)**
3:18,19,19

## S

**sag (1)**
11:7
**same (2)**
8:7;9:13
**SAN (3)**
3:1;4:20;9:9
**Sandridge (3)**
6:13,20;7:14
**sat (1)**
15:15
**saying (2)**
15:18;18:18
**scarecrows (1)**
15:15
**schedule (1)**
17:9
**scheduling (1)**
15:24
**scholarly (1)**

15:3
**screen (1)**
3:12
**second (7)**
3:23;4:1;5:10,23;
10:9,13;13:14
**seem (1)**
17:2
**separate (2)**
4:12;13:8
**service (1)**
4:18
**servient (3)**
8:3,5,8
**session (1)**
3:4
**set (2)**
3:25;4:15
**settle (3)**
8:20;12:21;16:11
**settlement (1)**
19:22
**seven (2)**
19:14,19
**several (1)**
7:1
**Shahmirza (6)**
3:12;12:22,25;
13:12;14:12;16:14
**Shahmirza/Komir (1)**
3:22
**shares (1)**
9:21
**short (1)**
6:22
**show (1)**
18:17
**sides (4)**
16:13,14;17:14;
19:25
**significance (1)**
18:9
**silence (1)**
14:4
**similarity (1)**
11:16
**simple (1)**
19:3
**simply (7)**
6:2;7:1;8:13;9:1;
13:10;14:24;15:19
**situation (1)**
10:5
**six (1)**
15:17
**slight (4)**
5:5;11:20;12:15;
16:21
**slightly (2)**
10:6,23
**sold (1)**
4:18
**solve (1)**

Case: 19-30088    Doc# 14264    Filed: 01/10/24    Entered: 01/10/24 09:06:33    Page 27
of 29

17:11
**somebody (1)**
15:10
**somehow (1)**
16:19
**someone (1)**
6:15
**sometime (1)**
12:11
**sorry (1)**
18:6
**sorting (1)**
17:18
**south (1)**
11:21
**space (5)**
4:5;14:10,14,21;
15:16
**specific (1)**
11:14
**square (1)**
9:15
**staggering (1)**
16:13
**standard (1)**
7:12
**start (1)**
18:18
**started (1)**
14:6
**starting (1)**
16:22
**state (4)**
4:11;5:15;10:25;
16:17
**stated (4)**
3:21;12:22,22;
13:10
**statement (3)**
4:22;10:22,23
**station (3)**
9:5,24;19:10
**status (1)**
13:18
**statute (3)**
9:12;12:11,14
**statute-of-limitations (1)**
5:24
**Steve (1)**
3:16
**still (2)**
8:6;17:17
**stipulation (2)**
13:21;16:1
**storing (1)**
8:4
**structure (1)**
8:5
**subservient (3)**
6:19;9:21;10:17
**suggesting (1)**
8:19
**suggestion (1)**

9:1
**suggests (1)**
11:4
**summarizing (1)**
8:17
**summary (11)**
3:23;4:4,13,23;5:1;
7:7,10;10:9,13;11:15;
19:15
**Superior (2)**
9:10;19:4
**supported (1)**
8:13
**system (1)**
8:17

**T**

**talk (1)**
14:9
**talking (1)**
19:20
**tapering (1)**
11:5
**taxes (5)**
4:2,3;6:21,25;15:18
**telling (1)**
16:14
**temperature (1)**
11:7
**ten (3)**
13:9;15:7;16:24
**ten-acre (1)**
9:2
**tenement (2)**
8:8;10:17
**tentatively (1)**
17:17
**terms (1)**
18:22
**the-cuff (1)**
18:19
**theory (2)**
12:17;16:15
**Therefore (4)**
4:9;5:14;13:1;
16:17
**third (1)**
15:5
**Thomas (1)**
3:19
**thorough (1)**
15:3
**thought (1)**
17:25
**three (2)**
12:12;15:17
**throw (1)**
17:20
**thrust (1)**
5:1
**thus (5)**
5:2;6:10;8:11;

10:14;12:10
**today (2)**
6:1;13:16
**today's (1)**
11:9
**took (2)**
12:9;13:11
**towel (1)**
17:20
**towers (2)**
5:5;14:16
**transmission (3)**
4:6;10:8;14:16
**tree (1)**
9:3
**trees (4)**
8:16;13:9;15:8,11
**trespass (5)**
11:23;12:17;13:4;
17:1;19:2
**trespasses (1)**
17:3
**trial (5)**
10:19;11:10;12:20;
17:6;19:19
**triggers (1)**
6:25
**try (1)**
17:11
**trying (2)**
14:4;15:23
**TUESDAY (1)**
3:1
**turned (1)**
9:20
**turns (1)**
7:8
**tutorial (1)**
7:17
**two (5)**
4:4;7:13;9:15;19:6,
7
**two-acre (1)**
9:4
**type (1)**
8:12

**U**

**unauthorized (1)**
10:1
**under (4)**
4:8;6:22;8:4;14:21
**unilaterally (1)**
4:16
**unlawful (1)**
9:14
**unnecessary (1)**
6:11
**up (3)**
5:1;19:6,23
**upheld (2)**
9:12;19:9

**uphold (1)**
6:3
**upon (4)**
5:6,23;9:12;12:16
**upset (2)**
16:12,12
**use (13)**
4:5;5:7;6:18;7:23;
9:3;11:18;14:10,11,
14,16,20;15:9;18:12
**used (1)**
15:5
**useful (1)**
7:17
**uses (1)**
10:3
**using (2)**
4:17;8:9
**utilized (1)**
12:19

**V**

**various (1)**
13:12
**verbatim (1)**
3:25
**view (2)**
4:14;18:9
**virtually (2)**
11:14,18
**vis-a-vis (1)**
11:15

**W**

**warrant (1)**
4:4
**Warsaw (1)**
9:19
**way (3)**
3:25;10:13;16:19
**wedded (1)**
16:10
**welcome (1)**
14:1
**Whereupon (1)**
20:4
**winner (1)**
16:15
**wire (1)**
19:13
**wires (1)**
16:22
**wish (1)**
17:21
**withdraw (1)**
13:1
**withdrew (1)**
12:23
**without (1)**
8:24
**wonderful (1)**

17:25
**work (1)**
17:18
**worth (1)**
11:10
**wrong (1)**
17:20
**wrongfully (1)**
9:2

**Y**

**years (2)**
9:7;12:12

**1**

**10 (1)**
13:19
**10:00 (1)**
3:1
**10:30 (1)**
20:4
**100 (1)**
9:15
**1020 (1)**
6:14
**12th (2)**
4:22;5:21
**13832 (1)**
4:24
**13920 (1)**
13:21
**14007 (1)**
3:23
**14111 (1)**
10:21
**14116 (1)**
11:4
**14253 (1)**
6:7
**15 (1)**
18:17
**16th (3)**
16:2,4,7
**1st (1)**
16:4

**2**

**2000 (2)**
5:13;12:7
**2014 (2)**
9:9;19:5
**2018 (12)**
5:6,13,16;6:2;10:6;
11:1,16;12:13,18,23;
13:3;16:19
**2023 (3)**
4:22;5:21;13:21
**2024 (3)**
3:1;6:6;13:19
**21 (1)**

Case: 19-30088    Doc# 14264    Filed: 01/10/24    Entered: 01/10/24 09:06:33    Page 28
of 29

10:24
**22 (2)**
6:14;10:22
**230 (1)**
4:18
**24th (4)**
13:18;15:25;16:8,9
**25th (1)**
13:21
**26th (1)**
3:22
**29th (1)**
10:25

---

**3**

**3 (1)**
10:22
**304 (1)**
18:11
**3rd (1)**
6:6

---

**4**

**4.9 (2)**
10:23,24
**4.9-foot (1)**
11:4

---

**5**

**50,000 (1)**
18:16
**500 (1)**
17:1
**500,000 (2)**
17:2;18:17

---

**9**

**9 (2)**
3:1;10:23

Case: 19-30088    Doc# 14264    Filed: 01/10/24    Entered: 01/10/24 09:06:33    Page 29 of 29