**LABATON KELLER SUCHAROW LLP**
Thomas A. Dubbs (pro hac vice)
Carol C. Villegas (pro hac vice)
Michael P. Canty (pro hac vice)
Thomas G. Hoffman, Jr. (pro hac vice)
140 Broadway
New York, New York 10005

*Lead Counsel to Lead Plaintiff and the Proposed Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Local Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (pro hac vice)
Andrew Behlmann (pro hac vice)
Scott Cargill (pro hac vice)
Colleen Restel
One Lowenstein Drive
Roseland, New Jersey 07068

*Special Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

*Additional counsel listed on Exhibit A*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | **Case No. 19-30088 (DM) (Lead Case)**<br><br>**Chapter 11**<br><br>**(JOINTLY ADMINISTERED)**<br><br>**SECURITIES PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISCOVERY** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

    I.    Securities Plaintiffs Are Entitled to Discovery Under Applicable Bankruptcy Law..........................................................................................................................2

    II.   Securities Plaintiffs Are Not Bound by the Amendment and Objection Procedures ...............................................................................................................4

    III.  The Sufficiency Objection Raises Material Factual Disputes....................................6

        a.    The Sufficiency Objection Creates Disputed Factual Issues Regarding Falsity.............................................................................................................7

        b.    The Sufficiency Objection Creates Disputed Factual Issues Regarding Scienter.........................................................................................................10

        c.    The Sufficiency Objection Creates Disputed Factual Issues Regarding Loss Causation ............................................................................................12

    IV.  Securities Plaintiffs Should Be Authorized to Take Limited Discovery ..................14

CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amalgamated Bank v. Facebook, Inc. (In re Facebook, Inc. Sec. Litig.)*,
    87 F.4th 934 (9th Cir. 2023) ................................................................................... 12, 13, 14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)............................................................................................................ 12, 14

*Bayview Loan Servicing, LLC v. Donnan (In re Donnan)*,
    2019 WL 1922843 (BAP 9th Cir. Apr. 29, 2019)...................................................................... 2

*In re Blue Earth, Inc.*,
    2017 WL 1498147 (Bankr. N.D. Cal. Apr. 21, 2017) (Montali, J.).......................................... 4

*Bohbot v. Kessler (In re Kessler)*,
    2014 WL 2761212 (Bankr. C.D. Cal. June 18, 2014)............................................................... 3

*Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*,
    671 F.3d 1011 (9th Cir. 2012).................................................................................................. 3

*Inlandboatmens Union of Pac. v. Dutra Grp.*,
    279 F.3d 1075 (9th Cir. 2002), *overruled on other grounds by Albino v. Baca*,
    747 F.3d 1162 (9th Cir. 2014).................................................................................................. 7

*Khachikyan v. Hahn (In re Khachikyan)*,
    335 B.R. 121 (BAP 9th Cir. 2005)....................................................................................... 2, 4

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)............................................................................................*passim*

*Lawrence v. Nat'l Bank (In re Edmonds)*,
    924 F.2d 176 (10th Cir. 1991).................................................................................................. 7

*In re PG&E Corporation Securities Litigation*,
    Case No. 18-03509............................................................................................................... 1, 6

*In re Protea Biosciences, Inc.*,
    2018 WL 5734464 (Bankr. N.D. W.Va. Oct. 30, 2018) .......................................................... 4

*Reliance Steel & Aluminum Co. v. Locklin (In re Locklin)*,
    2015 WL 8267995 (BAP 9th Cir. Dec. 7, 2015) ..................................................................... 3

*In re Rosebud Farm, Inc.*,
    619 B.R. 202 (Bankr. N.D. Ill. 2020)....................................................................................... 3

*S.E.C. v. Phan*,
   500 F.3d 895 (9th Cir. 2007) .................................................................................................. 12

*United States v. PG&E*,
   No. 14-cr-175 (N.D. Cal. Mar. 5, 2019), ECF No. 1027 ....................................................... 12

**Statutes**

15 U.S.C.A. § 78u-4(a)(1) .............................................................................................................. 4

15 U.S.C.A. § 78u-4(b)(3)(B) ........................................................................................................ 4

Bankruptcy Code § 510(b) ............................................................................................................. 4

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ........................................................ 4

**Rules**

Fed. R. Bankr. P. 9014 ........................................................................................................ 1, 2, 3, 6

Fed. R. Civ. P. 12 ........................................................................................................................... 7

Fed. R. Civ. P. 12(b) .............................................................................................................. 4, 6, 7

Fed. R. Civ. P. 12(d) ...................................................................................................................... 7

Fed. R. Civ. P. 56 ........................................................................................................................... 7

Fed. R. Evid. 201 .......................................................................................................................... 11

Fed. R. Evid. 802 .......................................................................................................................... 11

Public Employees Retirement Association of New Mexico ("**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**") pending in the U.S. District Court for the Northern District of California, as lead plaintiff for the proposed class it represents in the Securities Litigation (the "**Class**") and as a creditor in the chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") of the above-captioned debtors (as reorganized, the "**Reorganized Debtors**" or "**PG&E**"), together with York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund (together with PERA, "**Securities Plaintiffs**"), hereby submit this memorandum of points and authorities pursuant to the Court's *Order Setting Deadlines in Connection with Reorganized Debtors' Motions to Dismiss* [ECF No. 14247] (the "**Scheduling Order**") and in furtherance of the Securities Plaintiffs' request to take limited discovery in connection with the *Reorganized Debtors' Thirty-Third Securities Omnibus Claims Objection to PERA and Securities Act Plaintiffs' TAC, Including to Certain Claimants That Adopted the TAC* (the "**Sufficiency Objection**") [ECF No. 14200].

## INTRODUCTION

Securities Plaintiffs are entitled to discovery in connection with the Sufficiency Objection as a matter of law, fact, and fairness for three distinct reasons. <u>First</u>, the Sufficiency Objection commenced a contested matter pursuant to Bankruptcy Rule 9014, which automatically imports discovery rules generally applicable to adversary proceedings. As such, the parties to a contested matter may pursue discovery as of right in connection with responding to any objection, including so-called sufficiency objections. Indeed, courts have faulted parties that did not diligently exercise their rights to pursue discovery in connection with claim objections.

<u>Second</u>, unlike other claimants that negotiated objection procedures that may have limited or waived their rights to discovery in connection with the Reorganized Debtors' sufficiency objections, Securities Plaintiffs were not parties to, and had no involvement with, any procedures concerning how the sufficiency objections would be resolved. Indeed, Securities Plaintiffs were specifically excluded from the claims resolution and the ADR procedures altogether. The

Reorganized Debtors rely on those procedures as the basis for preventing claimants from seeking discovery. The only logical conclusion is that at least claimants that are not subject to those procedures are entitled to exercise discovery rights available under applicable bankruptcy law.

Third, the Sufficiency Objection, and the Reorganized Debtors' accompanying request for the Court to take judicial notice of thousands of pages of documents outside of the pleadings, raise a plethora of disputed issues of material fact that cannot be decided on a motion to dismiss standard. As set forth below, the Sufficiency Objection asks the Court to weigh evidence and decide factual issues that are hotly contested by Securities Plaintiffs and cannot, at this stage, be decided as a matter of law.

Accordingly, the Court should find that Securities Plaintiffs are entitled to take discovery in connection with responding to the Sufficiency Objection.

## ARGUMENT

### I. Securities Plaintiffs Are Entitled to Discovery Under Applicable Bankruptcy Law

"A claim is deemed allowed absent objection from a party in interest. § 502(a). The filing of an objection to a proof of claim creates a dispute which is a contested matter within the meaning of [Bankruptcy] Rule 9014 and must be resolved after notice and opportunity for hearing." *Bayview Loan Servicing, LLC v. Donnan (In re Donnan)*, 2019 WL 1922843, at *3 (BAP 9th Cir. Apr. 29, 2019).[1] And when an issue is adjudicated through a contested matter pursuant to Bankruptcy Rule 9014, as is the case here, "considerations of timing dictate that parties wishing discovery and desiring an actual trial must be nimble and proactive in obtaining appropriate scheduling accommodations." *Khachikyan v. Hahn (In re Khachikyan)*, 335 B.R. 121, 127 (BAP 9th Cir. 2005). "Since the mandatory disclosure requirement of [Federal Rule of Civil Procedure] 26 does not apply to contested matters, there is no impediment to immediately seeking discovery." *Id*. (citing Fed R. Bankr. P. 9014(c)). The Ninth Circuit has held that a "bankruptcy court abuses its discretion in denying discovery only if the movant diligently pursued its previous discovery opportunities, and can demonstrate that allowing additional discovery would have precluded

---

[1] Herein, all internal citations and quotations are omitted unless otherwise indicated.

summary judgment." *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1024 (9th Cir. 2012).

Indeed, courts have faulted claimants for failing to exercise their rights to take discovery in contested matters arising from claim objections. *See, e.g.*, *Reliance Steel & Aluminum Co. v. Locklin (In re Locklin)*, 2015 WL 8267995, at *7 (BAP 9th Cir. Dec. 7, 2015) ("Yet there is nothing in the record indicating that [claimant] made any effort to conduct discovery at any time during the claim proceedings . . . . Nor is there anything in the record indicating any legitimate reason why [claimant] was unable to conduct the requisite discovery while its bankruptcy claim against [the debtor] was pending"); *Bohbot v. Kessler (In re Kessler)*, 2014 WL 2761212, at *8 (Bankr. C.D. Cal. June 18, 2014) ("Here, there is no indication [claimant] engaged in any pursuit of discovery prior to the hearing on her Claim"); *In re Rosebud Farm, Inc.*, 619 B.R. 202, 209 (Bankr. N.D. Ill. 2020) ("A discovery conference and disclosures were not required here and [claimant] has had all the regular means of discovery available to him throughout this contested matter. If the taking of discovery was necessary herein, [claimant] should have requested such discovery after the Objection was filed . . . .").

Here, Securities Plaintiffs are seeking discovery at the first available opportunity because such discovery is necessary for Securities Plaintiffs to adequately address the numerous factual disputes raised by the Sufficiency Objection. *See* Section III, *infra*.

Further, Bankruptcy Rule 9014 "generally requires bankruptcy courts to resolve contested matters only after holding an evidentiary hearing at which the testimony of witnesses is taken in the same manner as it is in adversary proceedings . . . . There are two exceptions to this rule: (1) the court may, if the parties so stipulate, decide the contested matter based on the parties's [sic] affidavits and exhibits; and (2) the court may dispense with the evidentiary hearing requirement when there are no disputed material factual issues presented." *Locklin*, 2015 WL 8267995 at *5.

Securities Plaintiffs have not stipulated with the Reorganized Debtors to having the Sufficiency Objection decided based on the parties' affidavits and exhibits. To the contrary, as set forth below, the Sufficiency Objection raises a host of disputed factual issues that cannot be decided as a matter of law. Similarly, Securities Plaintiffs have never agreed that the issues raised in the

Sufficiency Objection were suitable for disposition under a motion to dismiss standard. "Once a contested matter is initiated, many of the rules governing adversary proceedings automatically apply; however, [Bankruptcy Rule] 9014(c) does not make [Bankruptcy Rule] 7012 applicable to contested matters. Consequently, unless specifically ordered by the court on notice to the parties, there is no motion to dismiss a contested matter that is governed by Fed. R. Civ. P. 12(b)." *In re Protea Biosciences, Inc.*, 2018 WL 5734464, at *1 (Bankr. N.D. W.Va. Oct. 30, 2018). This Court has not issued an order applying Fed. R. Civ. P. 12(b) to this contested matter,[2] and given the numerous disputed factual issues raised by the Sufficiency Objection, it would be inappropriate for the Court to do so.[3]

Accordingly, Securities Plaintiffs seek to exercise their rights to take discovery in this contested matter that was commenced by the filing of the Sufficiency Objection. *See Khachikyan*, 335 B.R. at 126 ("Contrary to the debtor's position, discovery was available to him as of right in the . . . contested matter").

**II.　Securities Plaintiffs Are Not Bound by the Amendment and Objection Procedures**

During the December 19, 2023, status conference to set a briefing schedule in connection with the Sufficiency Objection, the Court asked counsel for the Reorganized Debtors what their basis was for precluding parties from seeking discovery. The sole basis offered by the Reorganized Debtors was that the *Order Authorizing Amendment and Objection Procedures for Securities*

---

[2] The Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA") is not applicable to these Chapter 11 Cases because the PSLRA is explicitly limited to private actions "brought as a plaintiff class action pursuant to the Federal Rules of **Civil** Procedure." 15 U.S.C.A. § 78u-4(a)(1); *see also* ECF No. 14071 at 4 n.5 (RKS Claimants agreeing these proceedings not governed by the PSLRA). These Chapter 11 Cases are governed by the Federal Rules of **Bankruptcy** Procedure. But even assuming *arguendo* the PSLRA does apply here, the PSLRA's discovery stay provision would not apply because it only applies "during the pendency of any motion to dismiss" (15 U.S.C.A. § 78u-4(b)(3)(B)) and, as noted, this Court has not issued an order applying Fed. R. Civ. P. 12(b) to this contested matter.

[3] The present matter is distinguishable from the Court's decision in *In re Blue Earth, Inc.*, 2017 WL 1498147, at *2-3 (Bankr. N.D. Cal. Apr. 21, 2017) (Montali, J.), where the Court denied discovery requested by a claimant because the claim at issue did not relate to a transaction involving the debtor, and even if the claim was allowed, it would be subordinated pursuant to Bankruptcy Code § 510(b) and not receive any distribution. By contrast, Securities Claimants' claims are against the Reorganized Debtors and if allowed such claims will receive a distribution in these Chapter 11 Cases.

*Claims* [ECF No. 13934] (the "**Objection Procedures Order**") prohibited claimants from seeking discovery in connection with the Reorganized Debtors' sufficiency objections:

> THE COURT: . . . But Mr. Slack, I'm still uncertain about something. You have taken a pretty firm view on whether there is any discovery permitted. And all the other counsel, or at least three of them, seem to have some limited discovery entitlements that they are entitled to. Are you wedded to that, that I have to make a decision on that? Or are you willing to come up with some sort of an agreement on a limited discovery while we're – while they're doing their oppositions.
>
> Mr. SLACK: No, Your Honor, we're pretty firm. Your Honor's – and I'm going to turn this over to Mr. Hamilton in a second. But we're pretty firm that the amendment and objection procedures specifically preclude the discovery. It was a negotiated point. Baupost, PERA, and RKS were parties to that. That was the sine qua non of that deal.

Dec. 19, 2023 Hr'g Tr. at 6:25–7:13.

It is notable that the Reorganized Debtors pointed to the Objection Procedures Order as the sole basis for not allowing discovery in connection with the sufficiency objections, stating that it was the "sine qua non" for the agreement to the objection procedures. The only logical conclusion from this position is that, but for the Objection Procedures Order, the Reorganized Debtors would be obligated under applicable bankruptcy law to respond to discovery requests made in connection with sufficiency objections.

As clarified on the record at the December 19th status conference,[4] neither PERA nor any of the Securities Plaintiffs are among the parties defined as "Objectors" in the procedures approved by the Objection Procedures Order.[5] Accordingly, any agreement negotiated between the Objectors and the Reorganized Debtors that allegedly limited or waived the Objectors' or Baupost's right to seek discovery in connection with a sufficiency objection is clearly inapplicable to Securities Plaintiffs, who were not parties to any agreement with respect to such procedures.

---

[4] Dec. 19, 2023 Hr'g Tr. at 9:24-10:2 ("MS. VILLEGAS: And I just wanted to correct something that Mr. Slack said. PERA was not involved in the negotiation whereby some folks agreed that discovery wasn't necessary.").

[5] *See* Objection Procedures Order at ¶ 4 (defining "Objectors" as the RKS Claimants, Chevron, and Oregon).

Accordingly, the Securities Plaintiffs retained all their rights to seek discovery under applicable bankruptcy law in connection with the Sufficiency Objection.

### III. The Sufficiency Objection Raises Material Factual Disputes

Disposition of the Sufficiency Objection is governed by Bankruptcy Rule 9014 and thus, it is inappropriate to determine the objection under Fed. R. Civ. 12(b)(6). It is also particularly inappropriate to determine the Sufficiency Objection in this case under Fed. R. Civ. 12(b)(6) given the sheer number of documents that the Reorganized Debtors rely upon which are outside of the pleadings and require the Court to consider and weigh evidence. In support of their Sufficiency Objection, the Reorganized Debtors request that this Court take judicial notice of 113 documents totaling over 4,300 pages. *See* ECF No. 14208 ("**RJN**"). The Third Amended Consolidated Class Action Complaint (the "**TAC**") [Securities Litigation ECF No. 121] does not cite 81 of the 113 documents. Another 13 are cited in the TAC only once or twice. Hence, under black letter Ninth Circuit law, the TAC does not incorporate them by reference. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (incorporation by reference requires "extensive" reference). Nonetheless, the Reorganized Debtors' 95-page Sufficiency Objection cites the RJN documents ***364 times***, averaging nearly four times per page. In other words, the RJN is the Reorganized Debtors' primary basis for their Sufficiency Objection. *See* Appendix 1.

This is precisely the "unscrupulous" use of judicial notice that the Ninth Circuit recently has warned against, reasoning:

> [T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. This risk is especially significant in [securities] fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access. If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief. Such undermining of the usual pleading burdens is not the purpose of judicial notice or the incorporation-by-reference doctrine.

*Orexigen*, 899 F.3d at 998.

Fed. R. Civ. P. 12 dictates: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Lawrence v. Nat'l Bank (In re Edmonds)*, 924 F.2d 176, 179-81 (10th Cir. 1991) (bankruptcy court erred by dismissing creditor's complaint for "failure to state a claim" "on the basis of information contained outside the pleadings" rather than "converting debtors' motion to dismiss into one for summary judgment"). "When a [] court does consider such extraneous evidence, the general rule is that the motion is converted into a motion for summary judgment, and **the non-moving party must be allowed to conduct discovery** in order to oppose that motion." *Inlandboatmens Union of Pac. v. Dutra Grp.*, 279 F.3d 1075, 1083 (9th Cir. 2002), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014); *see also* Fed. R. Civ. P. 56(d) ("[I]f a nonmovant . . . cannot present facts essential to justify its [summary judgment] opposition, the court may: (1) defer considering the motion or deny it; (2) **allow time to obtain affidavits or declarations or to take discovery**; or (3) issue any other appropriate order.").[6]

Accordingly, Securities Plaintiffs' claims cannot be expunged without a full and fair opportunity for Securities Plaintiffs to take discovery to resolve the numerous factual disputes that the Reorganized Debtors have raised through the Sufficiency Objection. As set forth below, the Sufficiency Objection has created disputed factual issues regarding, *inter alia*, falsity, scienter and loss causation.

      **a.**      **The Sufficiency Objection Creates Disputed Factual Issues Regarding Falsity**

The Sufficiency Objection cites numerous RJN exhibits for the proposition that each alleged misstatement was actually "True" (Sufficiency Objection at 36-40, citing RJN exhibits 10 times) or "Not Materially False or Misleading" (Sufficiency Objection at 41-53, citing RJN exhibits 33 times). Each instance merely and at best creates a factual dispute. Below are illustrative examples.

<u>Budget "Doubling" Misstatements.</u> Days after the North Bay Fires, as PG&E's stock began its decline on initial indications that PG&E had not been adhering to the prudent manager standard

---

[6] Herein, all emphasis is added unless otherwise indicated.

(TAC ¶¶ 328-338). PG&E hosted a conference call on November 2, 2017 to reassure investors (TAC ¶ 258).[7] Its CEO stated that "[i]n 2016, we spent an additional $200 million, essentially doubling our typical vegetation management spending last year." TAC ¶ 258 (Misstatement No. 10). Its President reiterated, "[W]e've doubled the amount that we've invested in veg[etation] management." TAC ¶ 264 (Misstatement No. 11). But as alleged, PG&E had not materially increased its total yearly spending on vegetation management. PG&E spent $194,094,406 in 2015, $198,735,579 in 2016, and $201,456,193 in 2017—increases of only 2.4% and 1.4%, less than inflation. TAC ¶ 78. Thus, the "doubling" reassurances were false. TAC ¶¶ 259, 265.

The Reorganized Debtors, in the guise of judicial notice, dispute these facts, proving why they should not be allowed to proffer facts pre-discovery. The Sufficiency Objection asserts, without evidence, that the TAC's numbers capture "prospective" General Rate Case ("GRC") budgets but not "retroactive[]"spending from a Catastrophic Event Memorandum Account ("CEMA") (Sufficiency Objection at 36). The RJN also attaches, as Exhibit 67, PG&E's March 30, 2018 CEMA application. The Reorganized Debtors argue that the CEMA application establishes that "$394.5 million in costs of vegetation management work that it performed over and above" in 2016-2017 (combined), to argue that the "doubling" statements were true. *See* Sufficiency Objection at 37 (citing Ex. 67).[8]

But, after filing the CEMA application, PG&E had to withdraw Exhibit 67 for "errata" including "errant 2017 tree mortality costs . . . and other items" undescribed.[9] After an audit and

---

[7] As the Court knows, in California, a utility's ability to raise rates as reimbursement for inverse condemnation losses is judged by whether the utility acted as a "prudent manager." ECF No. 4895 at 5. As this Court has reasoned, "[T]he prudent manager standard virtually guarantees cost spreading if the utility acted prudently, which is a far more lenient standard than strict liability. Thus, Debtors are likely guaranteed cost spreading if they act prudently." *Id.* at 10.

[8] The RJN inexplicably asserts Exhibit 67 was cited by the TAC. *See* RJN at 4 (pointing to TAC ¶¶ 73-74, 640-641). In fact, the TAC makes no mention of it. *See* TAC ¶¶ 73-74, 640-641. This is just one of 28 documents that the Reorganized Debtors erroneously claim were cited in the TAC (RJN at 4). *Compare* TAC *with* RJN at 5 (falsely claiming Exs. 24, 34, 37-39, 41-45, 47-51, 55, 56, 59-63, 74, 79, 81, 84, & 86 cited by TAC). Where "the Complaint did not refer to this document, and the document did not form the basis of any claims," a "court abuse[s] its discretion by incorporating it." *Orexigen*, 899 F.3d at 1005.

[9] *See* CPUC, Motion of Pacific Gas and Electric Company (U 39 E) For Reissuing Its 2018 CEMA Testimony and Work Papers and Auditor Selection Process dated July 1, 2019, *available at* http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M309/K725/309725339.PDF

*two more* amendments, PG&E requested, and the CPUC granted, a "$36.7 million . . . global reduction" in the CEMA request.[10]

Moreover, the Reorganized Debtors ignore that PG&E claimed CEMA spending in 2015 as well. Even as they accuse PERA of "cherry-pick[ing]" data, they selectively cite PG&E's CEMA spending in 2016 and 2017 to argue that the "doubling" statements were actually true. However, they neglect to mention that PG&E also sought $126,775,000 in CEMA reimbursement for 2015.[11]

Even assuming *arguendo* that the Reorganized Debtors are correct (which the Court cannot determine on a motion to dismiss standard), the revised totals do not support PG&E's "doubling" misstatements. Including CEMA spending, the totals would have been <u>$321 million in 2015</u> ($194,094,406 budgeted in 2015 as alleged, plus $126,775,000 of CEMA), <u>to $440 million in 2016</u> ($198,735,579 in 2016, plus $259,679,000 of CEMA, minus $18,350,000 or half of the $36,700,000 by which PG&E voluntarily lowered its CEMA request), <u>to $318 million in 2017</u> ($201,456,193 in 2017, plus $135,170,000 in CEMA, minus the remaining $18,350,000). This is still not close to doubling in any year; more importantly, it involves a factual analysis that cannot be resolved without proper discovery.

<u>*Inspection and "Pole Integrity" Misstatements.*</u> After Cal Fire announced that PG&E violations had caused some North Bay Fires, PG&E's fraud evolved. Previously, PG&E falsely assured investors it "inspect[ed] all" or "every mile" or "every segment" of its powerlines "every year," (TAC ¶¶ 197, 211, 258, 264). But as alleged, PG&E's policy was to inspect transmission towers only "every five years," including the fatefully uninspected-since-2014 Camp Fire ignition point, Tower :27/222. TAC ¶ 118. Moreover, a contemporaneous internal company email stated that "the likelihood of failed structures happening is high" on the Caribou-Palermo transmission line. TAC ¶ 136. Within days of Cal Fire's reports, PG&E's fraud evolved. PG&E twice publicly stated that "PG&E meets or exceeds regulatory requirements for pole integrity management." TAC ¶¶ 280, 287. Soon thereafter, two near-simultaneous pole integrity failures sparked the Camp Fire.

---

[10] CPUC, Decision Approving Settlement, dated March 17, 2022, *available at* https://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M461/K202/461202251.PDF

[11] CPUC, Application of Pacific Gas and Electric Company, filed Oct. 31, 2016, *available at* https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M169/K117/169117865.PDF

TAC ¶¶ 282, 290.

The Reorganized Debtors respond to these allegations with more arguments based on disputed facts. They offer Exhibit 69, a report by PG&E's regulator that is never mentioned in the TAC, to claim that "Tower :27/221, was inspected aerially on September 11, 2018," and argue that

> PERA offers no plausible explanation of how the need for maintenance at an individual pole on a single transmission line, out of about two million poles on 114,000 miles of distribution line and more than 18,000 miles of transmission lines in PG&E's service area, would have been material to investors.

Sufficiency Objection at 45-46. But that argument confuses evidence of one violation with a conclusion that there was only one violation. More importantly, it takes advantage of an incomplete factual record to confuse the facts. For example, it confuses "Tower :27/221" (the subject of Exhibit 69) with "Tower :27/222" (the failure of which sparked the Camp Fire, *see* TAC ¶¶ 117-118). At best, it amounts to a fallacious argument that the alleged misstatements regarding pole integrity were not false because, two months before the Camp Fire, a PG&E crew conducted a cursory aerial patrol over a single tower on the Caribou-Palermo line that had nothing to do with the Camp Fire. *See* Sufficiency Objection at 45 (citing Ex. 69 at 14-15).[12]

The Reorganized Debtors' falsity arguments create disputed issues of fact and offer paradigmatic examples of why the Ninth Circuit held that it is "perverse" to let an accused party "[s]ubmit[] documents not mentioned in the complaint to create a defense" at the pleading stage. *Orexigen*, 899 F.3d at 1003.

    **b.**     <u>**The Sufficiency Objection Creates Disputed Factual Issues Regarding Scienter**</u>

The TAC alleges that safety was critically important to PG&E's operations, the Individual

---

[12] The voluminous RJN cites numerous other documents in an attempt to disprove falsity by purportedly showing PG&E's progress with safety efforts. *E.g.*, Sufficiency Objection at 36 (citing RJN Exs. 71 & 86 to establish "PERA cannot overcome judicially noticeable facts showing that PG&E made these efforts . . . increasing spending and undertaking 'five major initiatives'"); Sufficiency Objection at 40 (citing RJN Ex. 71 to prove that alleged misstatement about "the Recloser Disabling Pilot Program . . . was true"); Sufficiency Objection at 44 n.15 (citing RJN Ex. 110 to establish "PG&E informed the public that its vegetation management program strove toward compliance and full mitigation of fires"). None of these documents are incorporated in the TAC or judicially noticeable as cited, so none can be used by the Reorganized Debtors to dispute well-pled facts without full discovery. *See Orexigen*, 899 F.3d at 1005.

Defendants were directly involved in operational safety, and PG&E knew its safety practices continued to violate the law. *See* TAC ¶¶ 392–403. A key allegation of the TAC is that, based on PG&E's own admissions, a criminal court found that PG&E had "actual knowledge from 2015 to 2017 that its vegetation management practices did not comply with California safety regulations on the order of thousands of violations per year." TAC ¶¶ 394-396. Thus, PG&E had actual knowledge of violations while it was falsely warranting its legal compliance. *See, e.g.*, TAC ¶¶ 3, 104, 202, 216, 227, 239, 244, 254, 276, 284, 292, 394, 424.

The Reorganized Debtors argue that these allegations do not support a strong inference of scienter, pointing to RJN Ex. 96, the "PG&E Response to Request for Information" that PG&E submitted to defend itself in a related criminal action. Based on that document, the Reorganized Debtors argue that "the presence of unworked trees was public knowledge, which wholly undermines an inference of scienter." Sufficiency Objection at 57. But Exhibit 96 is dated February 22, 2019—*i.e.*, more than three months after the alleged Class Period.[13] Contrary to the Reorganized Debtors' argument, it says nothing about what was or was not "public knowledge" during the alleged Class Period. In other words, the Reorganized Debtors cannot rely on this document to dispute what investors knew during the Class Period, without inviting discovery into what investors knew and when.

Moreover, the Reorganized Debtors cite Ex. 96 for the proposition that "only 131 of those" 3,962 known violations "remained pending, and none of those trees were at the ignition points of any North Bay Fires." Sufficiency Objection at 57-58 (citing Ex. 96[14]). But this is no more than unreliable, self-serving hearsay (*see* Fed. R. Evid. 802), not a "source[] whose accuracy cannot reasonably be questioned" (Fed. R. Evid. 201). Therefore, it is not judicially noticeable for the truth of its contents. *See Orexigen*, 899 F.3d at 1001 (document not judicially noticeable where "there is a

---

[13] The alleged Class Period is April 29, 2015 through November 15, 2018. *See* TAC ¶ 1.

[14] The TAC references Exhibit 96 only twice (TAC ¶¶ 76 n.14, 423 n.137), to convey what PG&E reported to Judge Alsup ***after*** the disclosure of the alleged fraud. Therefore, the TAC does not incorporate Exhibit 96 by reference. *See Orexigen*, 899 F.3d at 1003 (a quotation of "only a few lines in a footnote of a 67-page complaint" that "conveys only basic historic facts . . . is not sufficiently extensive" to be incorporated by reference); *cf. id.* ("[I]t is improper to assume the truth of an incorporated document . . . to dispute facts stated in a well-pleaded complaint").

reasonable dispute as to what the [document] establishes").[15]

This Court should not allow the Reorganized Debtors' self-serving exhibits, which the Reorganized Debtors improperly use to advance purported (but highly disputed) facts, to undermine the inference of scienter without first granting Securities Plaintiffs discovery into the Reorganized Debtors' internal knowledge of well-pled facts.

    c.    **The Sufficiency Objection Creates Disputed Factual Issues Regarding Loss Causation**

To make a truth-on-the-market defense, a defendant must prove that the allegedly concealed information was "'transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression'" made by the alleged fraud. *Amalgamated Bank v. Facebook, Inc. (In re Facebook, Inc. Sec. Litig.)*, 87 F.4th 934, 950 (9th Cir. 2023). The Supreme Court has held that the weighing of evidence supporting a "'truth-on-the-market' defense," which "is a method of refuting an alleged misrepresentation's *materiality*, . . . is a matter for trial" or "a summary-judgment motion." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 481–82 (2013) (emphasis in original).

Despite the Supreme Court's view on the truth-on-the-market defense, the Reorganized Debtors attempt to assert the defense by coupling many RJN documents with pure conjecture about how investors must have interpreted them in context. *See generally*, Sufficiency Objection Sections C.1.c(2)-(5), C.1.d(1)-(6), C.2.b, C.3.a-b, & C.4.a-b (citing RJN Exs. 1-6, 7-12, 15-22, 24, 31-63, 66, 68, 70, 74-79, 84-86, 88-89, 101-103, 109, 111-112). In a securities fraud action, "context" means no less than the "total mix" of factors influencing investment decisions. *S.E.C. v. Phan*, 500 F.3d 895, 911 (9th Cir. 2007) ("[M]ateriality must be judged in the context of the 'total mix' of information available to investors."). But here, the Sufficiency Objection's selective reliance on

---

[15] In fact, the TAC's well-pled and far more reliable allegation regarding PG&E's knowledge of thousands of violations was based on Judge Alsup's findings of fact regarding the Reorganized Debtors' violations of the terms of its criminal probation. *See* TAC ¶ 394. Judge Alsup's order, which is nowhere to be found in the RJN, makes no finding that PG&E fixed these violations—despite Judge Alsup's access to Exhibit 96. *See* Second Order to Show Cause Why PG&E's Conditions of Probation Should Not Be Modified, *United States v. PG&E*, No. 14-cr-175 (N.D. Cal. Mar. 5, 2019), ECF No. 1027.

exhibits not relied upon in the TAC fails to develop a proper record of what that "total mix" of information was for PG&E investors, particularly when counterbalanced against the misleading impact of the fraud. The Reorganized Debtors offer no market commentary, media reports, or expert analysis in support.

For example, the Reorganized Debtors cite RJN Ex. 74, Cal Fire's 2016 Investigation Report, for the proposition that investors knew of PG&E's widespread violations. Sufficiency Objection at 48, 50 But Exhibit 74 is not incorporated by reference in the TAC. It is not even mentioned in the TAC. Nor is it judicially noticeable to show anything beyond the isolated violations described therein. It is certainly not judicially noticeable to show how investors interpreted that information—especially in light of PG&E's false warrants of compliance going forward. *See Orexigen*, 899 F.3d at 1001 (document not judicially noticeable where "there is a reasonable dispute as to what the [document] establishes").[16]

Even if Ex. 74 and the other 112 exhibits were properly noticeable, Securities Plaintiffs are entitled to discovery regarding whether PG&E sufficiently warned investors of its rampant safety noncompliance and what the true "magnitude of the ensuing harm" would mean for investors. *See Facebook*, 87 F.4th at 950.

Importantly, Securities Plaintiffs' claim is not that PG&E concealed its past wrongs or the general risks of investing in a California electrical utility during a drought with global warming. The gravamen of Securities Plaintiffs' claim is that PG&E misrepresented that the it had turned over a new leaf and had become a compliant, prudent manager. Therefore, investors were surprised by news of rampant noncompliance and PG&E's inability to pass wildfire liabilities on to ratepayers. *See, e.g.*, TAC ¶¶ 39, 349, 359, 391. Not one of the Reorganized Debtors' 113 exhibits even begins to address "the intensity and credibility" with which that risk was communicated to and understood by investors. Nor do PG&E's alleged risk warnings explain why investors were so "surprised"

---

[16] The Reorganized Debtors repeatedly make similar arguments based on the RJN documents. *See, e.g.*, Sufficiency Objection at 10-12 (Exs. 1-6 warned of the inherent risks of running an electrical utility); *id.* at 31-32 and 65-68 (Exs. 4-6 disclosed risks and consequences related to causing unrelated, smaller fires); *id.* at 50 (Exs. 31–63, 66, 70, 74-79 disclosed isolated incidents of noncompliance).

13

during nine distinct loss-causing events when news emerged, not of wildfires, but of PG&E's noncompliance and imprudence in causing wildfires. TAC ¶¶ 327-390.[17] The Reorganized Debtors should not be allowed to say what the total mix of information available to investors was in the absence of a complete record.

## IV. Securities Plaintiffs Should Be Authorized to Take Limited Discovery

Securities Plaintiffs are cognizant of the need for the prompt resolution of the Sufficiency Objection and do not seek to unduly delay this contested matter by requiring comprehensive discovery at this time. As such, the Securities Plaintiffs seek only two sets of document discovery at this time.

First, all deposition transcripts and all documents that were previously produced by the Reorganized Debtors in the action styled *John Trotter (Ret.), Trustee of the PG&E Fire Victim Trust v. Williams*, Lead Case No. CGC-17-562591, San Francisco Country Superior Court (the "**Derivative Action**"), a case that was settled for the sum of $117 million. Requiring the Reorganized Debtors to produce documents to Securities Plaintiffs that they previously produced in the Derivative Action is an appropriately targeted scope of discovery that is capable of being produced in an expedited fashion.

Second, specific discovery to allow Securities Plaintiffs to respond to the factual disputes raised by the Sufficiency Objection. *See, e.g.*, Section III, *infra*.[18]

## CONCLUSION

For all the foregoing reasons, Securities Plaintiffs respectfully request that this Court enter an Order authorizing Securities Plaintiffs to take discovery in connection with the Sufficiency Objection consistent with the relief requested herein.

---

[17] The Reorganized Debtors argue truth-on-the-market based on general risk warnings. However, in *Facebook*, the Ninth Circuit not only held that risk warnings do not support a truth-on-the-market defense, it held that such warnings could be materially misleading in and of themselves. *See Facebook*, 87 F.4th at 950 (far from exculpatory, "such a [risk warning] could be misleading even if the magnitude of the ensuing harm was still unknown").

[18] Securities Plaintiffs reserve all rights to seek additional discovery at a later procedural stage, and request permission to take any discovery the Court allows any other securities claimant to take.

Case: 19-30088   Doc# 14272   Filed: 01/16/24   Entered: 01/16/24 17:18:15   Page 18 of 20

14

Dated: January 16, 2024

**LOWENSTEIN SANDLER LLP**
**MICHELSON LAW GROUP**

By: */s/ Randy Michelson*
Randy Michelson (SBN 114095)

*Bankruptcy Counsel to Lead Plaintiff and the Class*

# EXHIBIT A
# COUNSEL

**LABATON KELLER SUCHAROW LLP**
Thomas A. Dubbs
Carol C. Villegas
Michael P. Canty
Thomas G. Hoffman, Jr.
Jeffrey A. Dubbin (SBN 287199)
140 Broadway
New York, New York 10005
Telephone 212-907-0700
tdubbs@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com

*Lead Counsel to Lead Plaintiff and the Proposed Class*

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095) 220 Montgomery Street, Suite 2100 San Francisco, CA 94104
Telephone 415-512-8600
Facsimile 415-512-8601
randy.michelson@michelsonlawgroup.com

*Local Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone 619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Thomas C. Michaud 79 Alfred Street
Detroit, Michigan 48201
Telephone 313-578-1200
tmichaud@vmtlaw.com

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill (*pro hac vice*)
Colleen Restel
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone 973-597-2500
Facsimile 973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com

*Special Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**ADAMSKI, MORISKI, MADDEN, CUMBERLAND & GREEN LLP**
James M. Wagstaffe (SBN 95535)
100 Pine Street, Suite 2250
San Francisco, California 94111
Telephone 415-254-8615
wagstaffe@ammcglaw.com

*Liaison Counsel for the Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone 415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Additional Counsel for the Securities Act Plaintiffs*