**Weil, Gotshal & Manges LLP**

767 Fifth Avenue  
New York, NY 10153-0119  
+1 212 310 8000 tel  
+1 212 310 8007 fax  

**Richard W. Slack**  
+1 (212) 310-8017  
richard.slack@weil.com

BY ECF

February 8, 2024

Honorable Dennis Montali  
United States Bankruptcy Court  
Northern District of California  
450 Golden Gate Avenue, 16th Floor  
San Francisco, CA 94102

Re: *In re PG&E Corporation and Pacific Gas and Electric Co.* ("PG&E" or the "Reorganized Debtors"), Case No. 19-30088 (DM) (Jointly Administered)

Dear Judge Montali:

We represent the Reorganized Debtors and write in response to the February 7, 2024 letter (the "**PERA Letter**" or "**Letter**") of the Public Retirement Association of New Mexico ("**PERA**").

Prior to and during the January 24, 2024 hearing (the "**Hearing**") on *PERA's Motion For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel* [Dkt. No. 14169], PG&E (and the RKS Claimants) informed the Court that it appeared that PERA's motion was nothing more than a veiled attempt to try to reverse the Court's multiple rulings that PERA does not have standing to appear on behalf of other claimants who have filed separate proofs of claim in the Chapter 11 Cases. The PERA Letter now confirms that PG&E was correct. The Reorganized Debtors and other claimants have relied on these prior rulings in these Chapter 11 Cases, and there is no legal or factual basis to reverse these rulings.

Both the Court's Tentative Ruling [Dkt. No. 14283] and the discussion at the Hearing made clear that the relief PERA seeks is inconsistent with the Court's two prior rulings that PERA does not have standing to appear on behalf of other claimants with respect to their separately filed claims. The Tentative Ruling correctly identified that PERA's "commitment that it does not intend to 'improperly intercede in the ADR Procedures' . . . seems at odds with the accompanying statement [] that PERA 'reserves all rights to object to the Reorganized Debtors' omnibus objections.'" *Id.* at 2. Additionally, at the Hearing the Court had to ask PERA's counsel 12 times what PERA would do in this regard if appointed lead plaintiff to get a substantive response. Finally, near the end of the Hearing, when PERA's counsel was asked "what do you do with Mr. X or Ms. Y if I tell you there's not going to be any discovery and ***I've already said you don't have standing to represent their interests individually*** [,] . . . [w]hat else is there to do as interim class counsel?" (Hearing Tr. at 36:24-37:2 (emphasis added)), PERA's counsel responded: "Well, Your Honor, the primary thing and the thing that I started with is

opposing the sufficiency objections on behalf of the putative class members." *Id.* at 37:3-5. When the Court then asked PERA's counsel to clarify whether that meant PERA intended to "take over [another claimant's] position," counsel responded: "I would hesitate to refer to it as taking over their position. I would rather refer to it as taking on a role of advocating on their behalf." *Id.* at 37:18-20. After PERA's counsel, as the Court noted, was "going around in circles" (*id.* at 11:23), the Court correctly summed up PERA's position as "***trying to persuade me to put this interim class counsel label on you . . . [as] a way to get around my ruling that you didn't have standing to act as claimants and the individual claimants' counsel***." *Id.* at 39:17-21 (emphasis added).

The Court's *Order Granting Motion For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel* [Dkt. No. 14300] indicated that the Court was sticking to its Tentative Ruling, which, as quoted above, recognized that the very relief now sought in PERA's Letter is "inconsistent" with the Court's prior two standing rulings.

There is no basis for the Court to now reject its two prior standing rulings and the Tentative Ruling. The Court should summarily deny PERA's request to intercede on behalf of other claimants.

***First***, nothing in the law allows interim or lead counsel to appear on behalf of other claimants who have separately filed their own claims – and, indeed, elected not to sign onto the PERA complaint despite the express opportunity to do so. There is no question that PERA can now prosecute, as lead plaintiff, its own potential class proof of claim – and that includes responding to motions to dismiss the PERA proof of claim (i.e., the PERA complaint), making a class certification motion, and engaging in discovery on its claims. However, that is very different from acting now on behalf of claimants that they do not represent and that were and are subject to the Court's orders in this matter, including the Court-ordered deadline to amend or adopt allegations. Simply put, there is no authority that would allow PERA to now appear on behalf of claimants with respect to their separately filed claims.

Unsurprisingly then, the PERA Letter is devoid of any authority that would allow PERA to appear on behalf of other claimants. It is no accident that the only authority cited by PERA is a case focused on "absent class members" permitted to sit back and do nothing while class counsel prosecutes a class action. *See* PERA Letter at 4, n.15. But the claimants here are not absent class members. Each claimant has filed a separate proof of claim in this bankruptcy case, has provided its own trading information, and has received, and in almost every case responded to, settlement offers. The Court has many times, and over many years, recognized that these claimants are not absent class members, but claimants responsible for prosecuting their own claims. *See*, *e.g.*, Dec. 4, 2020 Hr'g Tr. at 8:2-8:4 ("[THE COURT:] I am not going to assume that they are so unsophisticated, innocent babes in the woods who can't make their own decisions now"); Nov. 18, 2020 Hr'g Tr. at 29:12-30:15 ("THE COURT: . . . why shouldn't I just let 7,000 people or some subset of them make a choice first, before I take it away from them and tell them that I'm going to let you do it for them? . . . [Y]our argument is, well, some of these people will be picked off as rubes. Well, maybe they will be. But they also will be given a chance up front to get money. And they can make that decision, can't they? We don't – this isn't a paternalistic

society. We say, would you like some money or not?"). The Court's observations have been proven correct by the considerable progress made in this proceeding, with approximately 4,600 claims resolved by settlement.

PERA has twice argued that being "Lead Plaintiff" and "Lead Counsel" in the District Court action imbued PERA with fiduciary duties to the class that required that PERA appear on behalf of the absent class members in the Chapter 11 Cases. The Court correctly determined that being named "Lead Plaintiff" in the District Court action and any duties that come with it do not give PERA standing to appear in connection with claims individually filed by other claimants. *See*, *e.g.*, June 11, 2021 *Order Overruling PERA's Opposition To Debtors' First Securities Claims Omnibus Objection* [Dkt. No. 10769] ("[PERA] is neither an amicus nor a private attorney general carrying forth positions not advanced by real parties in interest"). Courts in the Ninth Circuit and around the country have held the same. *See*, *e.g.*, *In re Retail Grp., Inc.*, No. 20-33113-KRH, 2021 WL 863338, *7 (Bankr. E.D. Va. Mar. 5, 2021) (where securities lead plaintiffs "failed to adduce any evidence that the putative class members may be incapable of asserting their own rights," and especially where "the putative class members have been able to represent their own interests at will. . . [, t]o now grant the [securities lead plaintiffs] the authority to represent those interests would threaten to undo the choice that individual equity holders have made up to this point and cause confusion with which neither the bankruptcy estates nor the putative class members should be saddled").

The Court has already entered orders that are consistent with this approach. For example, the Court set forth procedures pursuant to which these claimants received notice and which set a deadline for these claimants to adopt a pending complaint, including the PERA complaint, or assert their own allegations. Nonetheless, PERA now takes the position that it should represent claimants who had the opportunity to, but did not, adopt the PERA complaint, and who have not elected to be represented by PERA's counsel in this matter.

**Second**, as noted above, the Court has twice previously ruled that PERA does not have standing to respond to Omnibus Objections to which none of its own securities claims are subject. *See October 17, 2023 Order Overruling PERA's Objection To Reorganized Debtors' Twenty Sixth Securities Claims Omnibus Objection (Securities ADR No Liability Claims)* [Dkt. No. 14081]; June 11, 2021 *Order Overruling PERA's Opposition To Debtors' First Securities Claims Omnibus Objection* [Dkt. No. 10769]. Indeed, **after the Court's September 12, 2023 ruling on PERA's Rule 7023 Motion**, PERA reprised its efforts to appear on behalf of separately filed claims by other claimants in connection with the Twenty Sixth Securities Claims Omnibus Objection. The Court rejected PERA's efforts to appear on behalf of other claimants "again," calling PERA's position "gratuitous," "[in]correct, both on procedural and substantive grounds," and "out of line." *October 15, 2023 Docket Text Order*. Because, among other reasons, no opposition had "been filed by any respondent with standing," the Court granted the omnibus objection and disallowed the claims. *Id.*

***Third***, and as noted above, the Amendment and Objection Procedures approved by the Court already provide a mechanism for the resolution of the securities claims. The PERA Letter seeks to alter those procedures after they have been adopted, provided to every claimant, and relied upon by the Reorganized Debtors and all securities claimants for many months. Indeed, PERA's approach threatens to upend the Court-ordered deadline to assert allegations and securities claims against PG&E to facilitate an orderly resolution of the remaining claims.

The Amendment and Objection Procedures are working. Once the sufficiency objections proceed to conclusion, then the Court has indicated it will consider a class certification process. A class may well not be needed or appropriate given the success of the Court-approved procedures in resolving claims and the substantial number of claimants who already have indicated they would not join a class. The Court should not allow PERA to undermine the continuing progress of the Amendment and Objection Procedures.

Indeed, it is ironic that PERA now seems to assert that all claimants who did not adopt a complaint should be found, by fiat, without a Court order, and after the deadline to amend or adopt another claim, to have *ex-post* adopted the PERA complaint. As the Court may recall, PERA previously objected to having securities claimants adopt the PERA complaint, arguing that the PERA complaint does not cover all potential claims brought by securities claimants in these Chapter 11 Cases and that deeming those securities claimants to adopt the PERA complaint would violate significant due process rights. *See Securities Plaintiffs' Partial Objection To Motion Of The Reorganized Debtors For Entry Of Order Further Extending Deadline For Reorganized Debtors To Object To Claims And Related Relief* [Dkt. No. 13791] ("The Reorganized Debtors' proposal to have Securities Claimants 'adopt' the PERA Complaint in connection with merits based determinations of federal securities law violations against the Debtors in this Court raises a host of due process, jurisdictional, and fundamental fairness concerns that will negatively impact PERA and all the Class members it represents in the Securities Litigation"); *see also id.* ("because the Securities Act allegations in the PERA Complaint have not been alleged against the Debtors (*see* PERA Complaint, ¶¶ 509-556), all Securities Claimants would necessarily fail to sufficiently allege any Securities Act claims against the Debtors in the event they elect to adopt the PERA Complaint. Consequently, Securities Claimants with purchases in one of the six offerings at issue with respect to Securities Act violations would likely be forced to file yet another amendment to their Rescission and Damage Claims"). Accordingly, PERA now seeks to undertake the same conduct it previously characterized as a violation of due process, without notice to claimants or any hearing, but just based on a letter and a status conference.

The Court rejected the Reorganized Debtors' initial Procedures proposal and sent the parties back to negotiate new procedures. After nearly a month of good faith negotiations, numerous claimants and the Reorganized Debtors agreed on the Court-approved Amendment and Objection Procedures. The *sine qua non* of the Amendment and Objection Procedures is the individualized nature of the amendment process and ability to expressly adopt (or not adopt) another securities claimant's complaint, coupled

with a transparent sufficiency objection process. The PERA Letter seeks to undermine the Amendment and Objection Procedures.

**PERA's Proposed Schedule**

In the PERA Letter, PERA also states that it seeks a "uniform and efficient schedule" for the remaining omnibus objections and would place all sufficiency objections on the same schedule as the motion to dismiss the PERA complaint. The motions to dismiss the substantive complaints are directed at specific claimants who have adopted the PERA, RKS and Baupost complaints. Those will be significant motions requiring complex and detailed briefing for the Court to consider. Therefore, it would be entirely inefficient for the other Omnibus Objections to be placed on the same schedule. The other Omnibus Objections are directed at approximately 300 other claims, the holders of which could file separate responses based on their separate claims. This inefficient approach would also be patently unfair and burdensome to the Reorganized Debtors.

The current schedules for outstanding omnibus objections are appropriate. The schedules comply with the Securities Omnibus Objection Procedures in the ADR Procedures Order [Dkt. No. 10015], including providing for service on all claimants and allowing those claimants at least 42 days to respond. Most of the Omnibus Objections referenced in the PERA letter provided for greater than 42 days for claimants to respond to those Omnibus Objections after notice.

As the Court stated at the Hearing, PERA remains able to contact securities claimants who have filed separate claims. Hearing Tr. at 36:6-8 ("you're free to call up these people if you want. I'm not going to tell you [that] you can't do that"). If those claimants want to hire PERA's counsel to file responses to the Omnibus Objections, each claimant may do so.

**The Improper One-line Reconsideration Request**

PERA's request that the Court reconsider its *Order Disallowing And Expunging Proofs Of Claim Pursuant To Reorganized Debtors' Twenty-Eighth Securities Claims Omnibus Objection (Insufficient Substantive Allegations Claims)* [Dkt. No. 14303] (the "**Order**") should be denied. PERA has failed to properly move for reconsideration and even were the request procedurally proper (which it is not), this Court should deny PERA's request.

Section 502(j) of the Bankruptcy Code permits reconsideration of a claim that has been disallowed "for cause." 11 U.S.C. § 502(j); *see also* Bankruptcy Rule 3008 (incorporating 11 U.S.C. § 502(j)). The timing of any such motion dictates which Federal Rule of Civil Procedure governs. If filed before the time to appeal has expired, a party may seek reconsideration under Civil Rule 59. *United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 209 (B.A.P. 9th Cir. 2006). Of course, relief under Rule 59 "is an extraordinary remedy, to be used sparingly" and is only proper "(1) where the motion is

necessary to correct manifest errors of law or fact upon which the judgment rests; (2) where the motion is necessary to present newly discovered or previously unavailable evidence; (3) where the motion is necessary to prevent manifest injustice; and (4) where the amendment is justified by an intervening change in controlling law." *In re Doorman Property Maintenance*, 2017 WL 3084389, at *2 (Bankr. N.D. Cal. July 19, 2017) (denying motion for reconsideration). PERA does not and cannot assert that any of these factors are present here. When filed after the appellate window, such motion is "subject to the constraints" of Civil Rule 60(b), and "the party seeking reconsideration is not permitted to revisit the merits of the underlying judgment or argue that the trial court committed some legal error in arriving at the judgment." *In re Wylie*, 349 B.R. at 209.

Here, PERA filed no motion and, in its Letter, has neither attempted to argue entitlement to relief under either rule nor challenged the factual or legal merits of this Court's decision. PERA claims that reconsideration—and an extension of the response deadline—is necessary so that "all securities claimants with pending claims are treated equitably." Dkt. No. 14304 at 4. But each securities claimant has been treated equitably by the Court. All are subject to the exact same omnibus objection procedures, which PERA's counsel was instrumental in drafting, governing claim objections, and each claimant received notice of the *Reorganized Debtors' Twenty-Eighth Securities Claims Omnibus Objection (Insufficient Substantive Allegations Claims)* [Dkt. No. 14183]. *See Certificate of Service of Nathan Chien*, dated January 6, 2024.

**Conclusion**

PERA admits in the PERA Letter what its "lead plaintiff" and "interim counsel" motion really seeks. PERA and its counsel now request the authority to argue on behalf of other claimants that have filed and pursued their own claims against PG&E, regardless of whether that claimant would fall within the contours of PERA's undefined proposed class, regardless of whether that claimant actually wants PERA to represent them, and regardless of the fact that, as the Court has recognized, these claimants were provided notice and every opportunity to assert their own claims and allegations against PG&E. The Court-ordered procedures are working, with approximately 4,600 claims resolved by settlement and hundreds more adopting a pending complaint or asserting independent allegations. PERA's request has absolutely no basis in law, is contrary to the Court's repeated standing rulings, and would cause far more problems than it purports to solve.

The Reorganized Debtors therefore ask the Court to reject PERA's attempt to reverse numerous prior orders and upend the Amendment and Objection Procedures, deny PERA's request for new deadlines for submissions PERA has no standing to make, and deny PERA's improper and deficient one sentence request for reconsideration.

Respectfully submitted,

*/s/ Richard W. Slack*

Richard W. Slack