1                    UNITED STATES BANKRUPTCY COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                                 -oOo-

4    In Re:                          ) Case No. 19-30088
                                     ) Chapter 11
5    PG&E CORPORATION AND PACIFIC    )
     GAS AND ELECTRIC COMPANY        ) San Francisco, California
6                                    ) Friday, February 9, 2024
                          Debtor.    ) 11:38 AM
7    _____ )
                                       STATUS CONFERENCE REGARDING
8                                      ORDER GRANTING MOTION FOR
                                       APPOINTMENT AS LEAD PLAINTIFF
9
                                       APPROVAL OF SELECTION OF LEAD
10                                     COUNSEL

11                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE DENNIS MONTALI
12                UNITED STATES BANKRUPTCY JUDGE

13
     APPEARANCES (All present by video or telephone):
14   For the Reorganized       RICHARD W. SLACK, ESQ.
     Debtors:                   Weil, Gotshal & Manges LLP
15                              767 Fifth Avenue
                                New York, NY 10153
16                              (212)310-8000
                                JOSHUA G. HAMILTON, ESQ.
17                              Latham & Watkins LLP
                                10250 Constellation Boulevard
18                              Suite 1100
                                Los Angeles, CA 90067
19                              (424)653-5500

20   For PERA:                  MICHAEL S. ETKIN, ESQ.
                                Lowenstein Sandler LLP
21                              One Lowenstein Drive
                                Roseland, NJ 07068
22                              (973)596-2500

23                              MICHAEL P. CANTY, ESQ.
                                Labaton Keller Sucharow LLP
24                              140 Broadway
                                New York, NY 10005
25                              (212)907-0700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18   Court Recorder:              LORENA PARADA
                                 United States Bankruptcy Court
19                               450 Golden Gate Avenue
                                 San Francisco, CA 94102
20

21   Transcriber:                KRYSTAL BOOTS
                                 eScribers, LLC
22                               7227 N. 16th Street
                                 Suite #207
23                               Phoenix, AZ 85020
                                 (800) 257-0885
24

25   Proceedings recorded by electronic sound recording;
     transcript provided by transcription service.

1    SAN FRANCISCO, CALIFORNIA, FRIDAY, FEBRUARY 9, 2024, 11:38 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Calling the matter of PG&E Corporation.

5    I'll bring counsel in now, Your Honor.

6            THE COURT:  Okay.  Good morning, Mr. Slack, or good

7    afternoon for you.  Admit your appearance, please?

8            MR. SLACK:  Yes, Your Honor.  It's Richard Slack from

9    Weil, Gotshal & Manges, for the reorganized debtors.

10           THE COURT:  Mr. Hamilton.

11           MR. HAMILTON:  Good morning, Your Honor.  Joshua

12    Hamilton of Latham & Watkins, on behalf of the reorganized

13    debtors.

14           THE COURT:  Mr. Canty.

15           MR. CANTY:  Good morning, Your Honor.  Michael Canty

16    from Labaton Keller Sucharow on behalf of PERA.  I'm joined by

17    Mr. Etkin as well, who is, I believe, on screen now.

18           THE COURT:  Well, I'm used to seeing Mr. Etkin, I

19    don't think I've seen you before, but maybe I have.

20           MR. CANTY:  It's been a long time ago, Judge.  It's

21    good to see you again.

22           THE COURT:  Okay.  Well --

23           MR. ETKIN:  Good morning, Your Honor.

24           THE COURT:  Mr. Etkin, just -- you've read Mr. Slack's

25    response, what would happen if I -- I mean what -- we're here

1  on your letter request.  What is it -- I think I know the

2  answer, but what, specifically, would happen if I were to give

3  you what you want?  I'm not sure I know what -- you want

4  reconsideration of the disallowance on the sustaining of the

5  twenty-eight omnibus objection.  But as to the twenty-ninth and

6  forward, all the ones that do not involve RKS or Balpost

7  (phonetic), what would happen other than a new deadline for

8  response?

9          MR. ETKIN:  Your Honor, the requests in our letter,

10  which was a request for a status conference, effectively to

11  implement Your Honor's appointment order -- and I apologize in

12  advance, I'm kind of battling a cold.  But we were really

13  focused more on scheduling and advising the Court exactly what

14  we intended to do and not to do, in particular, since we know

15  the Court is particularly interested in that.  So bottom line

16  is we were looking to file as class -- on behalf of class

17  plaintiff, and as interim class counsel, opposition to what the

18  Court has described as a 12(b)(6) motion challenging the merits

19  of the claims against -- with respect to the securities loss,

20  against the reorganized debtors.

21          THE COURT:  Well, but again, I understand that, and

22  that's what I expected you to say, but let's be more specific.

23  Let's take the first one that's -- numerically, that's the

24  twenty-ninth.  I'm not going to talk about the twenty-eighth

25  because there's an order on the twenty-eighth, and I'll raise

1  with you that question.  Let's suppose that I let you file - -

2  at the moment, there has to be a response by the 13th.  You

3  asked --

4          MR. ETKIN:  Correct.

5          THE COURT:  -- for an extension of time.  Whether it's

6  the 13th or some other date, do I assume that you or your

7  colleagues will file something on behalf of all the claimants

8  that are either the subject of that twenty-ninth objection?

9          MR. ETKIN:  Yes, and again, Your Honor, limited -- I

10  don't have it in front of me -- but some of these omnibus

11  objections that were filed had more than one basis.  But to the

12  extent that the objection is based upon insufficient

13  substantive allegations, with respect to the securities claims,

14  yes, we would file an omnibus opposition to that motion dealing

15  with that issue, which is relevant to, effectively, every

16  unresolved claim.

17          THE COURT:  So am I -- so let's say that there --

18  among the members of the twenty-ninth omnibus objection group,

19  there is a pro se party and there's another party who's

20  represented by experienced counsel.  Neither one of them know

21  that you're filing anything until you file it, right?

22          MR. ETKIN:  That's correct, Your Honor, and that,

23  frankly, is part of the point, I guess, that --

24          THE COURT:  Well, but what -- so what happens if that

25  pro se party has just accepted an offer from PG&E of some

1   amount -- doesn't matter what the amount is -- and the counsel

2   representing another member of that group allow his or her own

3   opposition, then we have two oppositions on behalf of the same

4   creditor -- claimant?

5           MR. ETKIN:  No, to answer your first question, Your

6   Honor, if it's resolved, it's resolved, and that claim is no

7   longer extend, which is what we've indicated from the get go,

8   and we haven't interfered at all with that process.

9           THE COURT:  Well, I didn't say you were interfering.

10  Mr. Slack may say you're interfering.  But what I'm saying is

11  that we can look -- I haven't taken the time but I could; I

12  could look at the twenty-ninth omnibus objection, and I could

13  see, I suspect, several pages of people's names, claimant's

14  names, and claim numbers, and reasons for the amount that

15  they're claiming, and the reasons for the objection.  But the

16  point is, you have that same information, but you will be

17  filing something for the benefit of those claimants, and they

18  will not even be aware that you're doing it.  And so --

19          MR. ETKIN:  Well --

20          THE COURT:  So if claimant number one has accepted a

21  generous offer of 500 dollars from PG&E, and he's waiting for

22  his 500 dollars but you filed an objection on behalf of that

23  claimant, what do I do from a case management point of view?

24          MR. ETKIN:  That objection is moot --

25          THE COURT:  Okay.

1    MR. ETKIN:  -- as it relates to that point.

2    THE COURT:  But you -- then what about the one that's

3    the claimant in that group that's represented by counsel who's

4    preparing his own opposition?

5    MR. ETKIN:  Well, Your Honor, I think one thing we can

6    do to deal with that issue, to the extent it becomes one, is we

7    can check the docket and see if that particular claimant has

8    filed -- or their counsel, if they have one, has filed a notice

9    of appearance in the case.

10    THE COURT:  Well, that doesn't --

11    MR. ETKIN:  Then we can --

12    THE COURT:  That doesn't tell you that they're in

13    touch with the debtor or they negotiated something.

14    MR. ETKIN:  Well, that's a separate issue, Your Honor,

15    in our view.  If they're in touch with the debtor and

16    negotiating something, they'll either resolve their claim or

17    not.  We're not -- again, we're not looking to stop that from

18    happening, and if it does, if there's a resolution, well that

19    resolution moots out anything relating to that claimant because

20    as we indicated, even in our 7023 motion, the class that we're

21    looking at, which would be the subject of certification,

22    eventually, but which is now the subject of the appointment

23    order that Your Honor entered, that class is only with respect

24    to unresolved claims.

25    So if a claim is resolved, that's a separate

1   resolution that they've negotiated with PG&E, and that's the

2   end of the story with respect to that particular claimant.  So

3   if you want to --

4           THE COURT:  Well, look, I understand that -- what you

5   want to do, but Mr. Slack takes issue with the consequences

6   that you're essentially revisiting my ruling -- two rulings

7   about standing.  And I haven't changed that ruling.  I mean I

8   don't -- I'm the one that accepted your argument, and over

9   PG&E's objection, I allowed your firm and your colleagues to be

10  class counsel on a noncertified class basis.  But I didn't

11  revisit and didn't decide to revisit the standing question.

12          So I guess my question to you is -- maybe this is not

13  angels on a pin, but it's a real problem -- how do you get

14  around the standing on behalf of any particular claimant just

15  because you persuaded me to let you be counsel for a class to

16  be -- that may be certified in the future?

17          MR. ETKIN:  Well, let me, if I may, Your Honor, just

18  take a step back for one second, with respect to how we got in

19  front of you today.  And I'm not looking to kick the can down

20  the road, but we -- our letter was strictly intended to

21  implement your order, and to indicate to the Court how we

22  intended to move forward and what we -- what relief we thought,

23  from a scheduling perspective, that the Court should consider

24  assuming that reorganized PG&E is not inclined to consent to

25  it.

1      Instead, at 9 o'clock last night, we got back what

2  amounts to a letter brief on the issue of standing.  And kind

3  of like what happened with respect to the original hearing on

4  the lead plaintiff lead counsel motion, leaving the

5  characterizations aside, we got into some last minute case law

6  and argument about Rule 23(g), and the Court requested,

7  properly so, additional briefing on that issue.

8      We think that given the letter brief that was filed

9  with respect to standing at 9 o'clock last night, if the

10  Court's going to make any decisions with respect to that issue,

11  and the scope of the standing and really the scope of the order

12  that Your Honor entered, we would like the opportunity to file

13  something with the court.  And give the Court our perspective

14  on issues that we did not address in our original letter,

15  because our original letter was, at least in our view, Your

16  Honor, a rather simple request.

17          THE COURT:  Mr. Etkin -- Mr. Etkin.  Your --

18          MR. ETKIN:  Yeah.

19          THE COURT:  -- request came to my attention at 7

20  o'clock in the morning on the 7th of February.  That's all of

21  two whole day ago, right?  And you asked to be heard, as I

22  recall, you asked to have a status conference before the 13th.

23          MR. ETKIN:  Correct, Your Honor.

24          THE COURT:  Which is the deadline for a lot -- a long

25  list of the omnibus objections, a bunch of them.  And I decided

1  to accommodate you and try to make that heard as quickly as
2  possible.  And I expected, I fully expected, that PG&E, Mr.
3  Slack, would file something.  So whether you say it's a letter
4  brief or something else, it's something that was precipitated
5  by your request and my willingness to accommodate you on an
6  expedited basis.

7        So if I tell you I want a letter brief, what am I
8  going to do, make a ruling before the 13th?  I mean the
9  question is, it seemed to me, that if I didn't do something, if
10  I deny your request, that's the end of that.  But if I granted
11  your request, I have to do it before the 13th, or my guess is
12  hundreds and hundreds of claimants will be impacted by that.

13        And so I -- I'm not blaming anybody, we have a
14  situation that's difficult for everyone, including me.  And I'm
15  trying to figure out what happens next, so I don't complain
16  that Mr. Slack raised legal arguments.  These are nothing new;
17  these are things that -- there's some repetition.  I understand
18  that.

19        But let's try it again.  Let's try it a different way.
20  If I had told Mr. Slack I didn't want to hear from him, I was
21  going to grant you an extension, and the twenty-ninth
22  securities claims objection can be extended to two weeks, you
23  would do something in those two weeks.  And so it seems to me,
24  in those two weeks, you would file something that would be in
25  the nature of a support for the claim.  And again, going back

1   to not what class action lawyers think about, but what

2   bankruptcy lawyers think about -- and you know this, I'm

3   repeating myself -- a claim is like a complaint, and an

4   objection to claim is like an answer, and a motion to dismiss a

5   debtor's proceeding is like a sufficiency objection to a claim.

6          And so you would, no doubt, file something that says

7   the people in twenty-ninth securities -- omnibus securities

8   group, have stated claims that can survive a sufficiency

9   objection, and here's how.  And then you attach the pair of

10  compliant or something else.

11         We're back to the same issue.  So I mean, the question

12  is, is that proper?  And the question is, and you answered my

13  question in the negative; you haven't had any communication

14  with the claimants.  So you want me to do something that

15  impacts the claimants, and they don't even know about it.  And

16  it seems to me that what I'm concerned about is that if a

17  member of that group says, you know, Mr. Etkin, I'd like you to

18  take on my representation, you could do that, and then it's --

19  you don't have a standing question.

20         MR. ETKIN:  Your Honor, I'm going to turn it over to

21  Mr. Canty in a moment because he is the Rule 23 and class

22  action expert.  I know enough to be dangerous, but I know the

23  interplay between bankruptcy and class actions.

24         Let me just say this, Your Honor, we're talking about

25  issues relating to the sufficiency of securities claims that

1   impact each and every one of these claimants that's the subject

2   of a sufficiency motion.  This is not individual representation

3   of a particular claimant.  This is pursuant to Rule 23 and Rule

4   23(g).  Your order, Your Honor, with respect to the

5   appointments has to mean something in terms of what we can and

6   should, indeed do in order to protect these, in particular, pro

7   se claimants who may have filed proofs of claim, but in many

8   respects they're akin to absent class members.

9           So maybe I'm wading into these issues a little more

10  than I should, and I'll turn it over to Mr. Canty, but we

11  believe the order that you entered, Your Honor, aside from

12  being appropriate, meant something in terms of what we could do

13  to what the Court characterized as 2,000 claimants with

14  unresolved claims that many of which are -- appear pro se, and

15  we're looking to do something to protect their interests, and

16  efficiently, Your Honor's words, and effectively.  That's our

17  goal.

18          THE COURT:  I'll be happy to hear from Mr. Canty, but

19  let me just make the following observation, and again, Mr.

20  Etkin, you're one of the veterans who've been on this case.  We

21  just passed the five-year mark, and so I've known you and Mr.

22  Slack for five years in the context of this case.  And so that

23  means some of these people who are asking to get some money,

24  lost their -- made their investment seven years ago or eight

25  years ago, and here we are, and they may have had aspirations

of getting a big payday, but they might be happy to be getting some modest, little recovery. And Mr. Slack will tell me and tell you the number of claims that have been resolved.

So it seems to me that there may be claimants in that twenty-ninth group, or the thirtieth or the thirty-first, or whatever, who would be happy to get some modest payment, and they're not going to get it if I suddenly say, well, Mr. Etkin and his colleagues can take over the representation, and you might get something several years from now. And it seems to me I shouldn't be taking that option away from those people who can make their own decision.

MR. ETKIN: Well --

THE COURT: So with that --

MR. CANTY: Your Honor --

THE COURT: With that in mind --

MR. CANTY: Your Honor --

THE COURT: -- I will ask Mr. Canty to add what he wants to add. But keep in mind, Mr. Canty, no one has given me a single precedent for a massive claims objection process that gets married up with the class action thing five years into a bankruptcy.

MR. CANTY: Well, Your Honor, thank you. And I will say that I think what we're proposing here will efficiently resolve the claims.

To answer your first question, we are not asking to

1  act as counsel for individual claimants. And there's a

2  distinction there that matters.  If an individual claimant is

3  in the process of negotiating with the debtors, and is willing

4  and interested in taking whatever the debtors are offering

5  them, they are free to do so.  They don't need our permission;

6  we have no role in that.

7            What we seek to do, and this is where class action law

8  comes in -- the standing issue, number one, we'd like to brief

9  it.  And I know, Your Honor, we're on a tight schedule.  We can

10  certainly get you something Monday.  But I think it's important

11  because the law on this is nuanced.  And I think if you look at

12  the law, the standing issue is whether or not PERA has

13  standing, which I believe the Court has determined through the

14  appointment.

15            The second question is, what does that mean for the

16  absent class members as we've described it, or those -- let's

17  talk about the claimants.  Well, PERA -- the debtors have said,

18  well, they filed claims.  Well, that's -- if you want to liken

19  it to a class action case, that's essentially what absent class

20  members do when the case is settled.  They file trading data,

21  it goes through the plan --

22            THE COURT:  Yes, I know that.  I know that.

23            MR. CANTY:  But my point is --

24            THE COURT:  But this isn't them.

25            MR. CANTY:  I understand.  My point though, Your Honor

1  is we are seeking to adjudicate issues that will apply to

2  everyone, and that's the most efficient way forward.  We are

3  now at the bottom of the claimants that are just unwilling to

4  settle, right?  We've got 2,000 left.  Candidly, they've

5  reached out; they've said we are not willing to, you know -- we

6  don't -- we're not going to go forward, we want this process to

7  go forward.

8        So what's the most efficient way to do that?  Well, if

9  they're represented by counsel, counsel can protect their

10 interests.  That doesn't affect what we do.  What we can do for

11 those that don't have counsel or don't file something on their

12 behalf, is you can rule on these issues that apply to everyone.

13 And that's the most efficient way forward.

14       If you say, look, this -- an issue with respect to

15 (Indiscernible) loss causation, that will apply to everybody.

16 That really is the most efficient way forward, not what -- and

17 again, we are not looking to interfere with the mediation

18 negotiation process at all.  And in fact, the minute somebody

19 takes that offer, they're essentially done.

20       So again, I just would reiterate, we're requesting an

21 opportunity to brief this standing issue because there is

22 nuance here.  We're not seeking to represent them in an

23 individual capacity.  And I think if we're allowed --

24       THE COURT:  I, again, I'm not interested in having a

25 brief over the weekend and make a decision on Monday.  So what

1  would happen if I extend the deadline for these classes, these

2  groups rather, that are due on the 13th?  What happens?  What

3  do you brief?

4          MR. CANTY:  Well, the debtors can file individual

5  objections as they pertain to those --

6          THE COURT:  Oh, it already has.

7          MR. CANTY:  Okay.

8          THE COURT:  That's my point.  They already have.

9          MR. CANTY:  But on a sufficiency claim, what

10  essentially is a sufficiency claim?  It's saying that they

11  haven't made out a claim here.  We're saying --

12          THE COURT:  Mr. Canty, the debtor has filed.  The

13  reason why we're at the 28th omnibus objection is because they

14  filed twenty-seven prior ones.  No, I'm -- I may not have

15  counted right, but the point is, there are members -- let's

16  take the current twenty-eighth group, which just defaulted.  A

17  number of members of that group have responded, and I believe

18  some of them have settled, and some of them that have not been

19  defaulted, they've been rolled over for further discussion.

20          So there's an ongoing dialog taking place outside of

21  the court, which is the way it should be.  So if I were to

22  grant more time, that just keeps open the time for you to do

23  something.  So what you are saying is, well, you'll file

24  something that isn't taking over their claim but is in fact

25  arguing their case for them.

1       MR. CANTY:  Well --

2       THE COURT:  I don't know how we get around that.

3       MR. CANTY:  Well, and I think that's the nuance I'm

4 talking about, Your Honor.  We're not arguing their case.

5 We're arguing the case for those that have claims against the

6 debtor that are identical for all claimants, those issues that

7 are identical for all the claimants.

8       THE COURT:  Okay.

9       MR. CANTY:  And I think that's sufficient.  We would

10 respectfully submit that that's the most efficient way forward.

11       THE COURT:  Mr. Slack?

12       MR. ETKIN:  Your Honor, can I add something to that?

13       THE COURT:  Yes.  Okay.  Yes.

14       MR. ETKIN:  One moment, and I apologize.  Because I

15 know it's -- having two lawyers talk for the same party is

16 often frowned at, so I appreciate the courtesy.

17       THE COURT:  I've welcomed it since the first day in

18 this case, so.  Thank you.

19       MR. ETKIN:  Since I've been involved since the first

20 day of the case, I recall it distinctly.  I want to try to

21 answer the question because the idea of briefing the issue of

22 standing, and look, we -- Your Honor, you ruled on standing

23 issues previously.  But none of those rulings were in advance

24 of the appointment order that you recently --

25       THE COURT:  No, that's true.  That's true.

1          MR. ETKIN:  And that to us at least, changed the

2     dynamic here, properly so.  The debtor seems to take the

3     position that the order that you entered just doesn't matter.

4     It's business as usual.  And we can plow through these claims

5     the same way we've been doing it for the past five years or

6     three years, however long it's been.

7          We think that that has changed for the better because,

8     Your Honor, we felt that the Court, in analyzing these issues,

9     had some level of concern for those claimants that are still

10    out there that are unrepresented.  And we've always taken the

11    position that it's the securities laws issue.  I would urge

12    Your Honor to take a look at a letter by Carol Cookson

13    (phonetic) that was filed.  It's docket number 14295, filed on

14    the 25th.  I'm not going to quote it --

15          THE COURT:  I mean, then tell me the number again,

16    please.

17          MR. ETKIN:  It's 14 --

18          THE COURT:  14295?

19          MR. ETKIN:  14295.

20          THE COURT:  Okay.

21          MR. ETKIN:  Filed on the 25th, entered on the 26th.

22    It really outlines what we believe is likely the position of

23    many, if not all, who assumed that once they filed the claim,

24    there was really nothing more they had to do.  Because she even

25    points to the fact that there's a pending class action, and I

1    thought that the Public Employees Retirement System of New

2    Mexico was going to handle this going forward.

3              THE COURT:  Oh, that's -- excuse me.  Let me

4    interrupt.  That's the creditor who I -- who said she's had --

5    she's sick of the whole thing and she wants out.  And we've

6    treated her claim as gone.

7              MR. ETKIN:  No, Your Honor, that's somebody else

8    and --

9              THE COURT:  That's somebody else?  Okay.  Well,

10   then --

11             MR. ETKIN:  Yeah.  If somebody wants out and doesn't

12   care, they're out.  We're not --

13             THE COURT:  Well then, all right.  I may have just --

14             MR. ETKIN:  We're not -- this is a different letter,

15   and the points that she makes in her letter are important.

16   Now, Your Honor mentioned that, you know, a bunch of people

17   responded to the twenty-eighth objection.  Very few people

18   responded.  Over 200 people were defaulted.  We respectfully

19   don't want to see that happen again to people, with respect to

20   the upcoming objections, which is why without ruling on the

21   standing issue as it may exist right now or is identified by

22   the debtor.

23             But in the wake of Your Honor's appointment order, we

24   think an adjustment to the scheduling to allow the Court to

25   make a determination of just exactly what the Court believes we

1  can or cannot do, or should or should not do, in the wake of

2  the appointment order without risking a default, without

3  risking, you know, just a bunch of people losing their claims

4  because they don't know any better, or they were -- felt that

5  they were relying on somebody else, or felt they didn't have to

6  do anything more.

7       I can't get in their heads, Your Honor, but the idea

8  of hundreds of people losing their claims because they default

9  where they would not necessarily be losing their claims if they

10 could rely on briefing put in by us on the very issues that

11 impact all of them on the merits as far as their securities

12 claims are concerned.  That's where we're at, Your Honor.

13      THE COURT:  Well, I've been listening to you, but I

14 also looked again at Ms. Cookson's letter, and I agree.  You've

15 correctly stated it, and I was confusing it with another one.

16 And she does say she wants to adopt the apera (phonetic)

17 statements.  And I don't know what PG&E has done about that

18 letter, but I know I don't want to take time to deal with a

19 particular creditor.  I got to hear what Mr. Slack has to say.

20      Mr. Slack, let me let me say this, again, leaving

21 aside the question of whether procedurally it's appropriate to

22 reconsider the 28th omnibus objection and focusing only on

23 going forward, I have to say there's one thing that Mr.

24 Etkin -- and Mr. Etkin said a number of things that I don't

25 disagree with, but one thing that I really don't disagree with

1    is that when I made the decision over your objection to appoint

2    the class representatives under 29 -- I'm sorry -- 23G3, I

3    intended something to come of it.  This wasn't just a paper

4    title that was of no consequence.  So with that in mind, let me

5    give you an opportunity to say what you want to say.

6           MR. SLACK:  Sure.  Thank you, Your Honor.  Again,

7    Richard Slack, Weil, Gotshal for the Reorganized Debtors.  Your

8    Honor, I think you -- where you started this hearing is right

9    on point, which is this is an issue of constitutional standing.

10   And Your Honor's ruled twice on this precise issue.  And

11   although what I heard counsel for PERA talking about is, well,

12   now we need to brief the standing issue.

13          What I will say, Your Honor, is if you go back and you

14   look at the briefing that we had and then this letter, the

15   standing issue has been briefed.  It's been briefed twice

16   before.  And what I will tell you, Your Honor, is that Your

17   Honor got the standing issue exactly right.  And there's

18   absolutely nothing, nothing in 23G3 or in any of the cases that

19   PERA has ever cited to you that says that being appointed

20   interim counsel changes in any way the constitutional basis.

21   That PERA doesn't have the ability to come in and appear for

22   individuals that have filed separate claims in the bankruptcy.

23          The constitutional issue is exactly the same.  And in

24   fact, what I would tell you, Your Honor, is PERA has actually

25   made this precise argument twice, and you've rejected it.  So

1    while PERA says, Your Honor hadn't made the appointment, what
2    PERA has argued twice to Your Honor is that they were appointed
3    interim and lead counsel in the District Court.  And they are
4    correct that everybody who filed here -- I shouldn't say
5    everybody.  There are a lot of people who filed here who in
6    fact -- are and would be absent class members in the District
7    Court.  And what PERA has said to you twice, and you've
8    rejected it twice, is that somehow being named lead counsel
9    gave them the ability to come and appear for individuals in
10   their separate claims.
11          And the fact is, is that constitutionally lead
12   plaintiff or interim plaintiff, that doesn't change the
13   constitutional issue.  And what I heard counsel for PERA say
14   today is they don't want to appear on behalf of the individuals
15   who were actually subject to the omnibus objections.  And
16   that's what's necessary, however, in order to have
17   constitutional standing; they simply do not.  And I, again, I
18   would say, Your Honor, you can go back and you can look because
19   standing was part of what was done --
20          THE COURT:  Look, I know that and I know that well.
21   But my point is that when we had the discussion about allowing
22   PERA to be class rep --
23          MR. SLACK:  Yep.
24          THE COURT:  -- there had to be something that follows
25   from it.  And I realize that the conversation didn't turn on

1  that legal question. You were adamant, very adamant about all

2  the other judges in the Northern District that never have done

3  this before. And guess what? I found that that doesn't make a

4  difference; the rule is the rule.

5       But I had to ask myself, well, what does that mean?

6  And I accepted, over your objection, PERA's request, and -- but

7  I had to -- I mean, there had to be a reason behind it. If it

8  really was just a titular title to give them brownie points, it

9  was of no consequence. And so it had to mean they could do

10  something. And I don't know what because again, I don't

11  pretend -- as if I have to explain this to Etkin and Canty, Mr.

12  Canty.

13       I don't pretend to have the expertise in class

14  actions, but I do have the expertise in the bankruptcy world.

15  And we have equivalent things in the bankruptcy world that

16  work. I mean, if there's one regret about this case that's up

17  in the top of my regrets is that somebody didn't ask to have an

18  official committee of securities claimants appointed early. I

19  wish the U.S. Trustee had done that, or I had known enough

20  about class actions to have done it. And here I am five years

21  later, regretting it because I think that would have been a

22  wonderful solution in my opinion.

23       I can't do anything about that now that the horse has

24  left the barn. But if I could magically go back, I'd say,

25  solve the problem. We need an official committee of securities

1    claimants, and maybe they'll hire Mr. Etkins' firm, and maybe

2    they'll hire somebody else.  That's not the point.  But here we

3    are, Mr. Slack.  What's the downside to my giving Mr. Etkin and

4    company the opportunity to see if any individual claimants want

5    to align themselves with the arguments that he's making?

6             Like, take for example, the letter that --

7             MR. SLACK:  Yep.

8             THE COURT:  -- Mr. Etkin just pointed me to, Ms.

9    Cookson's letter.  She says, and very politely, I'm a

10   housewife.  I don't know -- I've done a lot of things, and I

11   fully intend to adopt the complaint of PERA.  Well do I treat

12   her as aligning herself with PERA or is she on her own still?

13            MR. SLACK:  So Your Honor, I think there's a couple of

14   different things to unpack there, but first off, let me just

15   say we have no objection to PERA reaching out to claimants and

16   asking whether they want to hire PERA to represent them.

17   That's perfectly appropriate.  I mean, what's interesting, Your

18   Honor, is once again, we kind of hear that unrepresented

19   claimants in the bankruptcy are akin to absent class members.

20   You know, that couldn't be farther from the truth.

21            Think about, Your Honor, just think about this.  Each

22   of the claimants here, unlike an absent class member who

23   doesn't do anything, filed their own proof of claim.  They had

24   to, under your orders, provide trading information.  So they've

25   engaged in providing trading information under the ADR

1 procedures.  They had to make a decision whether to hire

2 counsel or not.  Some did, some didn't.  All of them, every one

3 of them, received a settlement offer, and the overwhelming

4 majority, even the ones that are left, either responded or

5 negotiated to those.  So they've been engaged there.

6      The claimants received the amendment and objection

7 procedures and were required, under Your Honor's order, to make

8 a choice as to whether to amend or to -- whether to adopt the

9 PERA complaint.  And every single one of them that's left,

10 okay, has already gotten notice and made the election not to

11 adopt the PERA complaint.  And the claimants received direct

12 notice of the omnibus objection.  So --

13      THE COURT:  Right.

14      MR. SLACK:  -- none of those things -- none of those

15 things would happen, Your Honor, in an absent class member

16 situation.  They've all litigated fully in the bankruptcy,

17 exactly the way the bankruptcy was meant to be.

18      THE COURT:  Well, they've done -- Mr. Slack, they've

19 done the bankruptcy equivalent of filing a complaint.

20      MR. SLACK:  They certainly have, Your Honor.

21      THE COURT:  And by PG&E objecting, that's the

22 adversary bankruptcy -- adversary equivalent of filing an

23 answer.  And then --

24      MR. SLACK:  Exactly.

25      THE COURT:  And then PG&E by its sufficiency

1   objection, has filed a 12(b)(6) motion to that complaint.  And

2   that's where we are.  And that's where I -- that's where I

3   think we are.  But no, let's --

4            MR. SLACK:  And one other point, Your Honor, just

5   because I think it's an important one here, is there's been

6   some discussion about everybody having the same issues.  Well,

7   everybody doesn't.  Every person who filed a claim has

8   different trading.  Some -- and of course, our objections, if

9   they're granted by Your Honor, don't affect anybody else's

10  claim.  So the flaw in what Mr. Etkin and Mr. Canty are arguing

11  is that somehow -- and let's just take the twenty-ninth

12  omnibus.  I will tell you, Your Honor, the twenty-ninth omnibus

13  says those folks didn't make any allegations.  Okay?  So we're

14  not going to be litigating in any of those any of the

15  substantive issues in the PERA complaint because they didn't

16  adopt the PERA complaint.  And now we're looking at what they

17  do have in their proof of claim.

18           And if Your Honor disallows -- and we're only talking

19  about the twenty-ninth right now, but if it disallows and

20  expunges those claims, it doesn't affect any of the other

21  claims in any of the other omnibuses.  And Mr. Etkin and Mr.

22  Canty, when they get to their omnibus, because the PERA omnibus

23  is thirty-three, it doesn't affect the PERA omnibus one iota.

24  We're not going to be litigating the PERA complaint in

25  connection with the twenty-ninth omnibus.

1    THE COURT:   Oh, I know that.  I know that.  Let me

2  interrupt you.  I know that if you look at the ch

3    (Whereupon these proceedings were concluded at 3:03 PM)art

4  Mr. Etkin put together, it starts with twenty-eight, twenty-

5  nine, thirty, thirty-one, thirty-two and then thirty-three, and

6  then it skips thirty-four and thirty-five because that's RKS

7  (phonetic) and Baupost.  And I don't know about the other ones.

8  And PERA itself is the 33rd, so to me, the 33rd doesn't even

9  have to be in that chart because PERA's representing itself,

10  its client, its representatives, and it's got a whole schedule.

11    MR. SLACK:   Exactly, Your Honor.

12    THE COURT:   But Mr. Slack, you said something that

13  frankly, I'm glad to hear.  You said we have no objection if

14  PERA wants to reach out and ask these folks if they want to

15  come in and be represented.  And maybe Mr. Etkin and

16  colleagues, for their own reasons, don't want to.  But the

17  point is, that does solve the standing problem.  And I'm

18  inclined to say that there can't be a lot of harm for my

19  extending the deadline by a reasonable period of time for

20  twenty-nine, thirty, thirty-one, thirty-two, thirty-eight.

21  Excuse me, thirty-six and thirty-seven -- well, thirty -- leave

22  aside thirty-seven for a moment.  But all the other ones that I

23  read are all deadlines of next week on the 13th.

24    If I just categorically extend that some period of

25  time and give Mr. Etkin and company the opportunity to see if

1   they want to pick up those claimants, then that seems to be a

2   fair thing to go to do.

3         Mr. Etkin or Mr. Canty, what's wrong with that

4   suggestion?

5         MR. CANTY:  Well, Your Honor, certainly we'll abide by

6   the Court's order.  But under the order, we talk about having a

7   titular title.  Under 23(g)(3), it allows us to act on behalf

8   of the putative class.  That doesn't require an opt in.  Right?

9   The case law is very clear that the absent class members sit

10  back and do nothing.  And it's -- I noticed that counsel did

11  not answer your question about Mrs. Cookson (phonetic), and

12  she's a perfect example.  This is an individual that we have

13  that's been described -- has to enter into an adversary process

14  against Weil Gotshal, who is not a lawyer and has to navigate

15  this whole process.  That's exactly why we made the motion.  So

16  our position is under 23(g)(3), we will act on behalf of those

17  putative class members.  So --

18        THE COURT:  But when you say act on them, again, we're

19  at a situation where outside of bankruptcy this would never

20  happen.  So you know what -- Mr. Canty, you weren't on the call

21  I don't think.  I was given a long list of instances about the

22  only time you ever do a lead counsel is when you have competing

23  counsel.  I'll say, we don't have competing counsel here, but I

24  was persuaded that there must be other times to do it.  And

25  I -- and this was -- and I used the example, this is a perfect

1  time to do it.  So when I did it, I had in mind something.  But

2  I guess what I didn't have in mind was suddenly you're going to

3  take an affirmative role on behalf of these claimants and in

4  effect take over the prosecution of their opposition.  Again,

5  to use my analogy, take over the prosecution of their claim,

6  because that's really what you're doing.  And if there were no

7  bankruptcy, there never would have been a claim or objection

8  procedure.  We are taking a remedy that exists in the

9  bankruptcy world and imposing it on the class action world.

10  And it's an odd fit.  I agree, it's an odd fit.

11         But I don't think I can suddenly ignore the very role

12  that we're playing where you must individually defend.

13  Remember, in the class action you have typically one

14  articulated claim against the defendant.  Here we had 7,000

15  claims against the defendant.  And the defendant said a number

16  of them are no good for various reasons.  Some were out of

17  time; some were insufficient; some were paid for; some were

18  duplicative.  You know, the whole litany.  And we're down to a

19  smaller number, but some of them will survive because they do

20  assert sufficient claims.

21         So it would seem to me that a simple solution would be

22  to everyone on those lists, do you want us, meaning your firms,

23  to take on the prosecution of your claim?  Now, whether that

24  invokes some kind of attorney-client relationship, I can't say.

25  And I can't pretend to know, but I can only assume that there

1   is no analog in the class action world.  And that doesn't mean

2   we aren't going to -- we ought to come up with something.

3          So to me, as thinking of it not as a bankruptcy judge,

4   but as common sense.  If you have a sophisticated opposition

5   and you have difficult legal issues, and you gentlemen on your

6   half have very varied experience on your side.  All you have to

7   do is marry up these claimants and say, you want me to help

8   you, I'll help you free of charge.  I'll do it.  But I will

9   be -- I will take on the responsibility to represent your

10  interests in this process.

11         Now, I realize there may be consequences, but you know

12  what?  There are consequences.  So what?  So look, what I'm

13  inclined to do is the following.  And I will simply -- and I'm

14  prepared -- I'll give Mr. Slack one more chance if he wants to

15  fall on his sword here.  But he already said he had no

16  objections.

17         I'm inclined to take no action on the 28th because

18  it's a done deal.  I'm not going to turn it into a motion to

19  reconsider and a one sentence in a brief.  If there's a proper

20  motion to reconsider, someone with standing can make that

21  motion, and it'll be tested on its merits.

22         But I will tell you, before anybody makes a motion to

23  reconsider the 28th, it has to be -- well, what about everybody

24  that acted on it?  But I will say that I'm prepared to extend

25  the February 13th deadline of twenty-nine, thirty, thirty-one,

1  thirty-two, thirty-three, thirty-six -- and thirty-six, let's

2  say four weeks.  And give you a new date for a hearing.  And in

3  that, if you could send out a mass mailing, if you're willing

4  to do it.  And you can say, if you want us step up and

5  represent your interest or however you would word it, that's

6  something that I'll do for you.  And if you don't think that's

7  appropriate then, I guess I can't help you.

8          So Mr. Etkin, Mr. Canty, any comments?

9          MR. ETKIN:  I would only say, Your Honor, that

10 that's -- it's challenging and unwieldy.

11         THE COURT:  What's unwieldy about it?  What's unwieldy

12 about -- you've got the mailing list.  I mean, I realize unless

13 it's bad form and it smacks of, you know, champerty or whatever

14 the old thing is that lawyers aren't supposed to do.  But --

15 and obviously, I'm not asking you to do something that's

16 unethical or to do something that you don't think is proper by

17 any means.  I'm not directing you to do it.  I'm saying, I

18 think that might solve the problem.  But I don't know why it's

19 unwieldy to send a letter out and say, we're the class counsel.

20 And if you'd like us to --

21         MR. ETKIN:  Well, I think, Your Honor, there are

22 challenges involved in doing that.  So I -- maybe unwieldy is

23 the wrong word.  And frankly, it's because of those challenges

24 that we wanted to introduce the Rule 23 process into this to

25 begin with.  And we took the first step when Your Honor agreed

1  to apply Rule 23 in this case.  And of course, certification

2  remains to be resolved.  But --

3          THE COURT:  You don't have to answer my question.  But

4  where were you when somebody should have asked the U.S. Trustee

5  to appoint official committee?

6          MR. ETKIN:  Well, you --

7          THE COURT:  No, you don't have to answer that.  I'm

8  not here to criticize you.

9          MR. ETKIN:  Yeah, we tried another way early on in the

10  case.

11          THE COURT:  No, but come on, Mr. Etkin, in fairness to

12  all of us, the highest priority then and the highest priority

13  that I still have no regrets about, is complying with the

14  Governor's and the California's legislative mandate to do

15  something for the fire victims.  And --

16          MR. ETKIN:  You'll get --

17          THE COURT:  And if I had -- if I could do it over

18  again, I would do the same for the fire victims.  But I maybe

19  would say there must be some way to do something that now is

20  looming.  It's -- the 800-pound gorilla is come out of the

21  closet five years later, and here we are.  And this is no fun,

22  and it's no fun for the clients, and it's no fun for the

23  debtor.  And I'm sure it's no fun for all the work that you

24  guys are doing.  But I don't -- I just don't have a fix.  So --

25          MR. ETKIN:  All I'll say is, Your Honor, number one,

1    you'll get not even a hint of argument from me in terms of what

2    the priorities were with respect to this case early on, none.

3    I would ask Your Honor to just -- and I apologize because I

4    don't have the pleading in front of me. But in our reply, we

5    quoted some language from the advisory opinion as to what --

6         THE COURT: Hold on one second, Mr. Etkin, I just have

7    to close the door.

8         MR. ETKIN: Of course.

9         THE COURT: Yeah. I'm sorry. Go ahead.

10         MR. ETKIN: No. No problem.

11         And again, I don't have it in front of me, but we

12    quoted some language from the advisory opinion with respect to

13    Rule 23(g), as to what an interim class counsel can do. And

14    the language, if I recall correctly, was well, they can deal

15    with motion practice, they can deal with discovery, and they

16    can attempt to negotiate a settlement. Those were the three

17    items on the laundry list. Well discovery is off the table

18    now. So that's not going to happen with respect to certainly

19    the sufficiency objections.

20         With respect to settlement negotiations on a class-

21    wide basis, you need two to tango with respect to that. And we

22    don't have a dance partner with that right now.

23         But there is motion practice out there, and that's

24    what we focused on in terms of what we would try to do. But

25    I've heard Your Honor. Obviously, we have to discuss what Your

1    Honor is suggesting internally and see whether --

2            MR. ETKIN:  Mr. Etkin, is there any activity at all in

3    the District court action, or is it still stuck with Judge

4    Davila's ruling in the Ninth Circuit, not ruling?  Is that

5    still --

6            MR. ETKIN:  Still stuck with Judge Davila's ruling in

7    the Ninth Circuit, not ruling.

8            THE COURT:  I find it frustrating that they haven't

9    gotten a ruling from the Ninth Circuit.  But again, it's not my

10   call.

11           MR. CANTY:  Of course, it certainly would be helpful.

12           THE COURT:  But my point -- my question to you

13   though --

14           MR. ETKIN:  Uh-huh.

15           THE COURT:  -- and Mr. Canty -- this is again more to

16   Mr. Canty --

17           MR. CANTY:  Yes?

18           THE COURT:  -- as a class action expert.  If there had

19   been no bankruptcy, I believe that Judge Davila's ruling still

20   would have -- there still would have been a stay of discovery

21   pending the motions.  But what other kind of -- what else could

22   have happened?  In other words, what would interim class

23   counsel do if there was no discovery pending the motions to

24   dismiss?

25           MR. CANTY:  The case against the nondebtors in the

1  District court would have moved forward.  We would have

2  prosecuted that.

3         THE COURT:  But the stay -- but if there had been no

4  bankruptcy, wouldn't there still have been a stay pending the

5  motions?

6         MR. CANTY:  According to the PSLRA, that's right; they

7  would have been stayed.

8         THE COURT:  Got it.

9         MR. CANTY:  But we would have gotten a decision with

10 respect to all class members.

11        Your Honor, the only concern I raise is because of

12 your order and the controlling class action jurisprudence,

13 there are claimants that believe that they are now protected by

14 PERA.  And we saw that through the letter of Mrs. Cookson.  So

15 we're now saying we have to go out and affirmatively reach out

16 to them to say we want to represent you as interim class

17 counsel.  But they know the world of class action in the

18 District Court.

19        And their presumption, I would assume, because that is

20 the controlling case law, that they -- I mean, the Supreme

21 Court has said, and we quoted in our letter, an absent class

22 action plaintiff is not required to do anything.  You may sit

23 back and allow the litigation to run its course content in

24 knowing that there are safeguards provided for his protection.

25 Because of the order that's been implemented, there are a

1   number of claimants that essentially believe, because of the

2   controlling case law, that they can sit back and do nothing and

3   will be protected by PERA.

4           THE COURT:  Yeah.  But the point is though, that what

5   you can't tell me is, what would one do in the interim between

6   the sufficiency motion and the ruling on it?  You can't take

7   discovery to say that you can engage in motion practice.  What

8   motion practice?  What is there to do?  In other words, what's

9   being done in regard to the 33rd omnibus objection that PERA is

10  its own department?  I mean, I'm sorry, I may be getting --

11  yeah.  I mean, the point is, there's nothing to do.

12          So look, I -- to quote the Rules Committee is to

13  almost predict with certainty there wasn't a single bankruptcy

14  person in the room when that rule was drafted, and they never

15  thought about it, because, again, you could line up a hundred

16  class action experts, starting with you, Mr. Canty, and ask you

17  how many --

18          MR. CANTY:  I'd be low on that list, Your Honor, I

19  wouldn't --

20          THE COURT:  -- how many of you have been involved in a

21  mass tort multi-thousand claim bankruptcy?  And the answer is,

22  none.  Never probably because this is our one.

23          Look, gentlemen, I'm going to do what I said.  I'm

24  going to pick a date.  And I'm going to unilaterally, on my

25  own, issue an order that will extend the February 13th deadline

1  for those particular groups that I've mentioned.  Actually, I

2  will include the thirty-seventh as well, even though that's a

3  later date.  And I'm going to just look at the calendar and I'm

4  going to pick a date for roughly four weeks.  I'm just going to

5  tack four more weeks on that deadline, and I will pick a date

6  on our PG&E regular calendar for a hearing date.

7          And you do what you feel is appropriate.  If you want

8  to make a motion to reconsider, if you want to do -- whatever

9  you want to do, do what you want to do.  I'm not going to take

10 any action on the 28th because that's a done deal.  And Mr.

11 Slack is right.  If you want to have that reconsidered, you

12 have to go through the hoops for Rule 59 or 60.  And I will not

13 tell you that you should or shouldn't notify anybody, including

14 Ms. -- the woman who's wrote her letter.

15          Mr. Slack, you don't have to tell me.  I'm assuming

16 that you're not going to take a default from Ms. Cookson

17 because she essentially -- well, I'll just tell you, you got to

18 treat Ms. Cookson as though she has informally, as a pro se

19 party by letter, adopted the PERA complaint.  So put that on

20 the list.  And you're free to try to settle with her.  But I'm

21 not going to -- and I appreciate Mr. Etkin calling to my

22 attention that letter, because I did confuse it with the other

23 person, and I'm just going to leave at that.

24          And so we have a saying here in the West, Mr. Slack,

25 for you with your New York Yankees thing called, go Niners.

1    And the Niners are going to try to beat Taylor Swift and win

2    the Super Bowl on Sunday.  And I'm not going to have you all be

3    briefing things for me on Monday.  So have a nice weekend,

4    everyone.  I appreciate your time and your involvement.  And I

5    still wish we had had an official committee of claimants five

6    years ago.  So have a good weekend, everyone.

7              MR. ETKIN:  Thank you, Your Honor.

8              MR. CANTY:  Thank you, Your Honor.

9              MR. SLACK:  Thank you, Your Honor.

10             THE COURT:  Thank you.

11

12        (Whereupon these proceedings were concluded)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3   I, Krystal Boots, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7   *Krystal Boots*

8   _____

9   /s/ KRYSTAL BOOTS

10

11  eScribers

12  7227 N. 16th Street, Suite #207

13  Phoenix, AZ 85020

14

15  Date:  February 13, 2024

16

17

18

19

20

21

22

23

24

25

**A**

**abide (1)**
28:5
**ability (2)**
21:21;22:9
**absent (9)**
12:8;14:16,19;22:6;
24:19,22;25:15;28:9;
35:21
**absolutely (1)**
21:18
**accepted (4)**
5:25;6:20;8:8;23:6
**accommodate (2)**
10:1,5
**According (1)**
35:6
**act (4)**
14:1;28:7,16,18
**acted (1)**
30:24
**action (17)**
11:1,22;13:20;14:7,
19;18:25;29:9,13;
30:1,17;34:3,18;
35:12,17,22;36:16;
37:10
**actions (3)**
11:23;23:14,20
**activity (1)**
34:2
**actually (3)**
21:24;22:15;37:1
**adamant (2)**
23:1,1
**add (3)**
13:17,18;17:12
**additional (1)**
9:7
**address (1)**
9:14
**adjudicate (1)**
15:1
**adjustment (1)**
19:24
**Admit (1)**
3:7
**adopt (5)**
20:16;24:11;25:8,
11;26:16
**adopted (1)**
37:19
**ADR (1)**
24:25
**advance (2)**
4:12;17:23
**adversary (3)**
25:22,22;28:13
**advising (1)**
4:13
**advisory (2)**

33:5,12
**affect (4)**
15:10;26:9,20,23
**affirmative (1)**
29:3
**affirmatively (1)**
35:15
**afternoon (1)**
3:7
**again (25)**
3:21;4:21;5:9;7:17;
10:19,25;12:19;
15:17,20,24;18:15;
19:19;20:14,20;21:6;
22:17;23:10;24:18;
28:18;29:4;32:18;
33:11;34:9,15;36:15
**against (7)**
4:19,20;17:5;28:14;
29:14,15;34:25
**ago (5)**
3:20;9:21;12:24,25;
38:6
**agree (2)**
20:14;29:10
**agreed (1)**
31:25
**ahead (1)**
33:9
**akin (2)**
12:8;24:19
**align (1)**
24:5
**aligning (1)**
24:12
**allegations (2)**
5:13;26:13
**allow (3)**
6:2;19:24;35:23
**allowed (2)**
8:9;15:23
**allowing (1)**
22:21
**allows (1)**
28:7
**almost (1)**
36:13
**although (1)**
21:11
**always (1)**
18:10
**amend (1)**
25:8
**amendment (1)**
25:6
**among (1)**
5:18
**amount (3)**
6:1,1,14
**amounts (1)**
9:2
**analog (1)**
30:1

**analogy (1)**
29:5
**analyzing (1)**
18:8
**angels (1)**
8:13
**answered (1)**
11:12
**apera (1)**
20:16
**apologize (3)**
4:11;17:14;33:3
**appear (4)**
12:14;21:21;22:9,
14
**appearance (2)**
3:7;7:9
**apply (4)**
15:1,12,15;32:1
**appoint (2)**
21:1;32:5
**appointed (3)**
21:19;22:2;23:18
**appointment (7)**
4:11;7:22;14:14;
17:24;19:23;20:2;
22:1
**appointments (1)**
12:5
**appreciate (3)**
17:16;37:21;38:4
**appropriate (5)**
12:12;20:21;24:17;
31:7;37:7
**argued (1)**
22:2
**arguing (4)**
16:25;17:4,5;26:10
**argument (4)**
8:8;9:6;21:25;33:1
**arguments (2)**
10:16;24:5
**around (2)**
8:14;17:2
**articulated (1)**
29:14
**aside (4)**
9:5;12:11;20:21;
27:22
**aspirations (1)**
12:25
**assert (1)**
29:20
**assume (3)**
5:6;29:25;35:19
**assumed (1)**
18:23
**assuming (2)**
8:24;37:15
**attach (1)**
11:9
**attempt (1)**
33:16

**attention (2)**
9:19;37:22
**attorney-client (1)**
29:24
**aware (1)**
6:18
**away (1)**
13:10

**B**

**back (10)**
8:18;9:1;10:25;
11:11;21:13;22:18;
23:24;28:10;35:23;
36:2
**bad (1)**
31:13
**Balpost (1)**
4:6
**bankruptcy (19)**
11:2,23;13:21;
21:22;23:14,15;
24:19;25:16,17,19,22;
28:19;29:7,9;30:3;
34:19;35:4;36:13,21
**barn (1)**
23:24
**based (1)**
5:12
**basis (5)**
5:11;8:10;10:6;
21:20;33:21
**battling (1)**
4:12
**Baupost (1)**
27:7
**beat (1)**
38:1
**becomes (1)**
7:6
**begin (1)**
31:25
**behalf (12)**
3:12,16;4:16;5:7;
6:3,22;8:14;15:12;
22:14;28:7,16;29:3
**behind (1)**
23:7
**believes (1)**
19:25
**benefit (1)**
6:17
**better (2)**
18:7;20:4
**big (1)**
13:1
**blaming (1)**
10:13
**bottom (2)**
4:15;15:3
**Bowl (1)**
38:2

**brief (10)**
9:2,8;10:4,7;14:8;
15:21,25;16:3;21:12;
30:19
**briefed (2)**
21:15,15
**briefing (5)**
9:7;17:21;20:10;
21:14;38:3
**bring (1)**
3:5
**brownie (1)**
23:8
**bunch (3)**
9:25;19:16;20:3
**business (1)**
18:4

**C**

**calendar (2)**
37:3,6
**CALIFORNIA (1)**
3:1
**California's (1)**
32:14
**Call (3)**
3:3;28:20;34:10
**called (1)**
37:25
**Calling (2)**
3:4;37:21
**came (1)**
9:19
**can (30)**
6:11;7:5,7,11;8:19;
10:22;11:8;12:5;13:8,
11;14:9;15:9,10,12;
16:4;17:12;18:4;20:1;
22:18,18;29:11,25;
30:20;31:4;33:13,14,
15,16;36:2,7
**Candidly (1)**
15:4
**Canty (39)**
3:14,15,15,20;
11:21;12:10,18;
13:14,16,17,18,22;
14:23,25;16:4,7,9,12;
17:1,3,9;23:11,12;
26:10,22;28:3,5,20;
31:8;34:11,15,16,17,
25;35:6,9;36:16,18;
38:8
**capacity (1)**
15:23
**care (1)**
19:12
**Carol (1)**
18:12
**case (20)**
6:23;7:9;9:5;12:20,
22;14:19,20;16:25;

Case: 19-30088    Doc# 14316    Filed: 02/13/24    Entered: 02/13/24 16:58:30    Page 40 of 47

17:4,5,18,20;23:16;
28:9;32:1,10;33:2;
34:25;35:20;36:2
**cases (1)**
21:18
**categorically (1)**
27:24
**causation (1)**
15:15
**certainly (5)**
14:10;25:20;28:5;
33:18;34:11
**certainty (1)**
36:13
**certification (2)**
7:21;32:1
**certified (1)**
8:16
**ch (1)**
27:2
**challenges (2)**
31:22,23
**challenging (2)**
4:18;31:10
**champerty (1)**
31:13
**chance (1)**
30:14
**change (1)**
22:12
**changed (3)**
8:7;18:1,7
**changes (1)**
21:20
**characterizations (1)**
9:5
**characterized (1)**
12:13
**charge (1)**
30:8
**chart (1)**
27:9
**check (1)**
7:7
**choice (1)**
25:8
**Circuit (3)**
34:4,7,9
**cited (1)**
21:19
**claim (25)**
5:16;6:6,14;7:16,
25;10:25;11:3,4,5;
12:7;16:9,10,11,24;
18:23;19:6;24:23;
26:7,10,17;29:5,7,14,
23;36:21
**claimant (10)**
6:4,20,23;7:3,7,19;
8:2,14;12:3;14:2
**claimants (29)**
5:7;6:17;10:12;
11:14,15;12:1,7,13;

13:4;14:1,17;15:3;
17:6,7;18:9;23:18;
24:1,4,15,19,22;25:6,
11;28:1;29:3;30:7;
35:13;36:1;38:5
**claimant's (1)**
6:13
**claiming (1)**
6:15
**claims (23)**
4:19;5:13;7:24;
10:22;11:8,25;12:14;
13:3,19,24;14:18;
17:5;18:4;20:3,8,9,
12;21:22;22:10;
26:20,21;29:15,20
**class (42)**
4:16,16,17;7:20,23;
8:10,10,15;11:1,21,
23;12:8;13:20;14:7,
16,19,19;18:25;21:2;
22:6,22;23:13,20;
24:19,22;25:15;28:8,
9,17;29:9,13;30:1;
31:19;33:13;34:18,
22;35:10,12,16,17,21;
36:16
**class- (1)**
33:20
**classes (1)**
16:1
**clear (1)**
28:9
**CLERK (1)**
3:4
**client (1)**
27:10
**clients (1)**
32:22
**close (1)**
33:7
**closet (1)**
32:21
**cold (1)**
4:12
**colleagues (4)**
5:7;8:9;13:8;27:16
**comments (1)**
31:8
**committee (5)**
23:18,25;32:5;
36:12;38:5
**common (1)**
30:4
**communication (1)**
11:13
**company (2)**
24:4;27:25
**competing (2)**
28:22,23
**complain (1)**
10:15
**complaint (10)**

11:3;24:11;25:9,11,
19;26:1,15,16,24;
37:19
**compliant (1)**
11:10
**complying (1)**
32:13
**concern (2)**
18:9;35:11
**concerned (2)**
11:16;20:12
**concluded (2)**
27:3;38:12
**conference (2)**
4:10;9:22
**confuse (1)**
37:22
**confusing (1)**
20:15
**connection (1)**
26:25
**consent (1)**
8:24
**consequence (2)**
21:4;23:9
**consequences (3)**
8:5;30:11,12
**consider (1)**
8:23
**constitutional (5)**
21:9,20,23;22:13,
17
**constitutionally (1)**
22:11
**content (1)**
35:23
**context (1)**
12:22
**controlling (3)**
35:12,20;36:2
**conversation (1)**
22:25
**Cookson (5)**
18:12;28:11;35:14;
37:16,18
**Cookson's (2)**
20:14;24:9
**Corporation (1)**
3:4
**correctly (2)**
20:15;33:14
**counsel (27)**
3:5;4:17;5:20;6:1;
7:3,8;8:10,15;9:4;
14:1;15:9,9,11;21:11,
20;22:3,8,13;25:2;
28:10,22,23,23;31:19;
33:13;34:23;35:17
**counted (1)**
16:15
**couple (1)**
24:13
**course (5)**

26:8;32:1;33:8;
34:11;35:23
**Court (90)**
3:3,6,10,14,18,22,
24;4:13,15,18,21;5:5,
17,24;6:9,20,25;7:2,
10,12;8:4,21,23;9:6,
13,13,17,19,24;12:13,
18;13:13,15,17;14:13,
22,24;15:24;16:6,8,
12,21;17:2,8,11,13,
17,25;18:8,15,18,20;
19:3,9,13,24,25;
20:13;22:3,7,20,24;
24:8;25:13,18,21,25;
27:1,12;28:18;31:11;
32:3,7,11,17;33:6,9;
34:3,8,12,15,18;35:1,
3,8,18,21;36:4,20;
38:10
**courtesy (1)**
17:16
**Court's (2)**
9:10;28:6
**creditor (3)**
6:4;19:4;20:19
**criticize (1)**
32:8
**current (1)**
16:16

**D**

**dance (1)**
33:22
**dangerous (1)**
11:22
**data (1)**
14:20
**date (7)**
5:6;31:2;36:24;
37:3,4,5,6
**Davila's (3)**
34:4,6,19
**day (3)**
9:21;17:17,20
**deadline (7)**
4:7;9:24;16:1;
27:19;30:25;36:25;
37:5
**deadlines (1)**
27:23
**deal (6)**
7:6;20:18;30:18;
33:14,15;37:10
**dealing (1)**
5:14
**debtor (7)**
7:13,15;16:12;17:6;
18:2;19:22;32:23
**debtors (2)**
3:9,13;4:20;14:3,4,
17;16:4;21:7

**debtor's (1)**
11:5
**decide (1)**
8:11
**decided (1)**
9:25
**decision (5)**
13:11;15:25;21:1;
25:1;35:9
**decisions (1)**
9:10
**default (3)**
20:2,8;37:16
**defaulted (3)**
16:16,19;19:18
**defend (1)**
29:12
**defendant (3)**
29:14,15,15
**deny (1)**
10:10
**department (1)**
36:10
**described (3)**
4:18;14:16;28:13
**determination (1)**
19:25
**determined (1)**
14:13
**dialog (1)**
16:20
**difference (1)**
23:4
**different (4)**
10:19;19:14;24:14;
26:8
**difficult (2)**
10:14;30:5
**direct (1)**
25:11
**directing (1)**
31:17
**disagree (2)**
20:25,25
**disallowance (1)**
4:4
**disallows (2)**
26:18,19
**discovery (5)**
33:15,17;34:20,23;
36:7
**discuss (1)**
33:25
**discussion (3)**
16:19;22:21;26:6
**dismiss (2)**
11:4;34:24
**distinction (1)**
14:2
**distinctly (1)**
17:20
**District (6)**
22:3,6;23:2;34:3;

Case: 19-30088   Doc# 14316   Filed: 02/13/24   Entered: 02/13/24 16:58:30
of 47

35:1,18
**docket (2)**
7:7;18:13
**dollars (2)**
6:21,22
**done (12)**
15:19;20:17;22:19;
23:2,19,20;24:10;
25:18,19;30:18;36:9;
37:10
**door (1)**
33:7
**doubt (1)**
11:6
**down (2)**
8:19;29:18
**downside (1)**
24:3
**drafted (1)**
36:14
**due (1)**
16:2
**duplicative (1)**
29:18
**dynamic (1)**
18:2

**E**

**early (3)**
23:18;32:9;33:2
**effect (1)**
29:4
**effectively (3)**
4:10;5:15;12:16
**efficient (5)**
15:2,8,13,16;17:10
**efficiently (2)**
12:16;13:23
**eight (1)**
12:24
**either (3)**
5:8;7:16;25:4
**election (1)**
25:10
**else (4)**
10:4;11:10;19:7,9;
20:5;24:2;34:21
**else's (1)**
26:9
**Employees (1)**
19:1
**end (2)**
8:2;10:10
**engage (1)**
36:7
**engaged (2)**
24:25;25:5
**enough (2)**
11:22;23:19
**enter (1)**
28:13
**entered (5)**

7:23;9:12;12:11;
18:3,21
**equivalent (3)**
23:15;25:19,22
**essentially (6)**
8:6;14:19;15:19;
16:10;36:1;37:17
**Etkin (63)**
3:17,18,23,24;4:9;
5:4,9,22;6:5,19,24;
7:1,5,11,14;8:17;9:17,
17,18,23;11:17,20;
12:20;13:7,12;17:12,
14,19;18:1,17,19,21;
19:7,11,14;20:24,24;
23:11;24:3,8;26:10,
21;27:4,15,25;28:3;
31:8,9,21;32:6,9,11,
16,25;33:6,8,10;34:2,
2,6,14;37:21;38:7
**Etkins' (1)**
24:1
**even (8)**
6:18;7:20;11:15;
18:24;25:4;27:8;33:1;
37:2
**eventually (1)**
7:22
**everybody (6)**
15:15;22:4,5;26:6,
7;30:23
**everyone (6)**
10:14;15:2,12;
29:22;38:4,6
**exactly (8)**
4:13;19:25;21:17,
23;25:17,24;27:11;
28:15
**example (3)**
24:6;28:12,25
**excuse (2)**
19:3;27:21
**exist (1)**
19:21
**exists (1)**
29:8
**expected (3)**
4:22;10:2,2
**expedited (1)**
10:6
**experience (1)**
30:6
**experienced (1)**
5:20
**expert (2)**
11:22;34:18
**expertise (2)**
23:13,14
**experts (1)**
36:16
**explain (1)**
23:11
**expunges (1)**

26:20
**extend (5)**
6:7;16:1;27:24;
30:24;36:25
**extended (1)**
10:22
**extending (1)**
27:19
**extension (2)**
5:5;10:21
**extent (2)**
5:12;7:6

**F**

**fact (6)**
15:18;16:24;18:25;
21:24;22:6,11
**fair (1)**
28:2
**fairness (1)**
32:11
**fall (1)**
30:15
**far (1)**
20:11
**farther (1)**
24:20
**FEBRUARY (4)**
3:1;9:20;30:25;
36:25
**feel (1)**
37:7
**felt (3)**
18:8;20:4,5
**few (1)**
19:17
**figure (1)**
10:15
**file (13)**
4:16;5:1,7,14,21;
9:12;10:3,24;11:6;
14:20;15:11;16:4,23
**filed (19)**
5:11;6:22;7:8,8;
9:8;12:7;14:18;16:12,
14;18:13,13,21,23;
21:22;22:4,5;24:23;
26:1,7
**filing (4)**
5:21;6:17;25:19,22
**find (1)**
34:8
**fire (2)**
32:15,18
**firm (2)**
8:9;24:1
**firms (1)**
29:22
**first (7)**
4:23;6:5;13:25;
17:17,19;24:14;31:25
**fit (2)**

29:10,10
**five (6)**
12:22;13:20;18:5;
23:20;32:21;38:5
**five-year (1)**
12:21
**fix (1)**
32:24
**flaw (1)**
26:10
**focused (2)**
4:13;33:24
**focusing (1)**
20:22
**folks (2)**
26:13;27:14
**following (2)**
12:19;30:13
**follows (1)**
22:24
**form (1)**
31:13
**forward (11)**
4:6;8:22;15:2,6,7,
13,16;17:10;19:2;
20:23;35:1
**found (1)**
23:3
**four (3)**
31:2;37:4,5
**FRANCISCO (1)**
3:1
**frankly (3)**
5:23;27:13;31:23
**free (3)**
14:5;30:8;37:20
**FRIDAY (1)**
3:1
**front (4)**
5:10;8:19;33:4,11
**frowned (1)**
17:16
**frustrating (1)**
34:8
**fully (3)**
10:2;24:11;25:16
**fun (4)**
32:21,22,22,23
**further (1)**
16:19
**future (1)**
8:16

**G**

**gave (1)**
22:9
**generous (1)**
6:21
**gentlemen (2)**
30:5;36:23
**gets (2)**
13:20

**given (3)**
9:8;13:18;28:21
**giving (1)**
24:3
**glad (1)**
27:13
**goal (1)**
12:17
**goes (1)**
14:21
**Good (8)**
3:6,6,11,15,21,23;
29:16;38:6
**gorilla (1)**
32:20
**Gotshal (3)**
3:9;21:7;28:14
**Governor's (1)**
32:14
**grant (2)**
10:21;16:22
**granted (2)**
10:10;26:9
**group (8)**
5:18;6:2;7:3;11:8,
17;13:5;16:16,17
**groups (2)**
16:2;37:1
**guess (6)**
5:23;8:12;10:11;
23:3;29:2;31:7
**guys (1)**
32:24

**H**

**half (1)**
30:6
**Hamilton (3)**
3:10,11,12
**handle (1)**
19:2
**happen (8)**
3:25;4:2,7;16:1;
19:19;25:15;28:20;
33:18
**happened (2)**
9:3;34:22
**happening (1)**
7:18
**happens (3)**
5:24;10:15;16:2
**happy (3)**
12:18;13:1,6
**harm (1)**
27:18
**heads (1)**
20:7
**hear (5)**
10:20;12:18;20:19;
24:18;27:13
**heard (5)**
9:21;10:1;21:11;

Case: 19-30088    Doc# 14316    Filed: 02/13/24    Entered: 02/13/24 16:58:30    Page 42
of 47

22:13;33:25
**hearing (4)**
9:3;21:8;31:2;37:6
**help (3)**
30:7,8;31:7
**helpful (1)**
34:11
**here's (1)**
11:9
**herself (1)**
24:12
**highest (2)**
32:12,12
**hint (1)**
33:1
**hire (4)**
24:1,2,16;25:1
**Hold (1)**
33:6
**Honor (66)**
3:5,8,11,15,23;4:9;
5:9,22;6:6;7:5,14,23;
8:17;9:12,16,23;
11:20,24;12:4,11;
13:14,16,22;14:9,25;
17:4,12,22;18:8,12;
19:7,16;20:7,12;21:6,
8,13,16,17,24;22:1,2,
18;24:13,18,21;25:15,
20;26:4,9,12,18;
27:11;28:5;31:9,21,
25;32:25;33:3,25;
34:1;35:11;36:18;
38:7,8,9
**Honor's (5)**
4:11;12:16;19:23;
21:10;25:7
**hoops (1)**
37:12
**horse (1)**
23:23
**housewife (1)**
24:10
**hundred (1)**
36:15
**hundreds (3)**
10:12,12;20:8

**I**

**idea (2)**
17:21;20:7
**identical (2)**
17:6,7
**identified (1)**
19:21
**ignore (1)**
29:11
**impact (2)**
12:1;20:11
**impacted (1)**
10:12
**impacts (1)**

11:15
**implement (2)**
4:11;8:21
**implemented (1)**
35:25
**important (3)**
14:10;19:15;26:5
**imposing (1)**
29:9
**inclined (4)**
8:24;27:18;30:13,
17
**include (1)**
37:2
**including (2)**
10:14;37:13
**indeed (1)**
12:6
**indicate (1)**
8:21
**indicated (2)**
6:7;7:20
**Indiscernible (1)**
15:15
**individual (7)**
12:2;14:1,2;15:23;
16:4;24:4;28:12
**individually (1)**
29:12
**individuals (3)**
21:22;22:9,14
**informally (1)**
37:18
**information (3)**
6:16;24:24,25
**instances (1)**
28:21
**Instead (1)**
9:1
**insufficient (2)**
5:12;29:17
**intend (1)**
24:11
**intended (4)**
4:14;8:20,22;21:3
**interest (1)**
31:5
**interested (2)**
4:15;14:4;15:24
**interesting (1)**
24:17
**interests (3)**
12:15;15:10;30:10
**interfere (1)**
15:17
**interfered (1)**
6:8
**interfering (2)**
6:9,10
**interim (8)**
4:17;21:20;22:3,12;
33:13;34:22;35:16;
36:5

**internally (1)**
34:1
**interplay (1)**
11:23
**interrupt (2)**
19:4;27:2
**into (6)**
9:5;12:9;13:20;
28:13;30:18;31:24
**introduce (1)**
31:24
**investment (1)**
12:24
**invokes (1)**
29:24
**involve (1)**
4:6
**involved (3)**
17:19;31:22;36:20
**involvement (1)**
38:4
**iota (1)**
26:23
**issue (23)**
5:15;7:6,14;8:5;9:2,
7,10;11:11;14:8,12;
15:14,21;17:21;
18:11;19:21;21:9,10,
12,15,17,23;22:13;
36:25
**issues (12)**
9:14;11:25;12:9;
15:1,12;17:6,23;18:8;
20:10;26:6,15;30:5
**items (1)**
33:17

**J**

**joined (1)**
3:16
**Joshua (1)**
3:11
**Judge (5)**
3:20;30:3;34:3,6,19
**judges (1)**
23:2
**jurisprudence (1)**
35:12

**K**

**keep (1)**
13:18
**keeps (1)**
16:22
**Keller (1)**
3:16
**kick (1)**
8:19
**kind (5)**
4:12;9:2;24:18;
29:24;34:21

**knowing (1)**
35:24
**known (2)**
12:21;23:19

**L**

**Labaton (1)**
3:16
**language (3)**
33:5,12,14
**last (3)**
9:1,5,9
**later (3)**
23:21;32:21;37:3
**Latham (1)**
3:12
**laundry (1)**
33:17
**law (7)**
9:5;14:7,11,12;
28:9;35:20;36:2
**laws (1)**
18:11
**lawyer (1)**
28:14
**lawyers (4)**
11:1,2;17:15;31:14
**lead (5)**
9:4,4;22:3,8,11;
28:22
**least (2)**
9:15;18:1
**leave (2)**
27:21;37:23
**leaving (2)**
9:4;20:20
**left (4)**
15:4;23:24;25:4,9
**legal (3)**
10:16;23:1;30:5
**legislative (1)**
32:14
**letter (23)**
4:1,9;8:20;9:2,8,14,
15;10:3,7;18:12;
19:14,15;20:14,18;
21:14;24:6,9;31:19;
35:14,21;37:14,19,22
**level (1)**
18:9
**likely (1)**
18:22
**liken (1)**
14:18
**limited (1)**
5:9
**line (2)**
4:15;36:15
**list (6)**
9:25;28:21;31:12;
33:17;36:18;37:20
**listening (1)**

20:13
**lists (1)**
29:22
**litany (1)**
29:18
**litigated (1)**
25:16
**litigating (2)**
26:14,24
**litigation (1)**
35:23
**little (2)**
12:9;13:2
**long (4)**
3:20;9:24;18:6;
28:21
**longer (1)**
6:7
**look (15)**
6:11,12;8:4;14:11;
15:14;17:22;18:12;
21:14;22:18,20;27:2;
30:12;36:12,23;37:3
**looked (1)**
20:14
**looking (7)**
4:16;7:17,21;8:19;
12:15;15:17;26:16
**looming (1)**
32:20
**losing (1)**
20:3,8,9
**loss (2)**
4:19;15:15
**lost (1)**
12:24
**lot (4)**
9:24;22:5;24:10;
27:18
**low (1)**
36:18

**M**

**magically (1)**
23:24
**mailing (2)**
31:3,12
**majority (1)**
25:4
**makes (2)**
19:15;30:22
**making (1)**
24:5
**management (1)**
6:23
**mandate (1)**
32:14
**Manges (1)**
3:9
**many (5)**
12:7,14;18:23;
36:17,20

Case: 19-30088    Doc# 14316    Filed: 02/13/24    Entered: 02/13/24 16:58:30    Page 43
of 47

**mark (1)**
12:21
**married (1)**
13:20
**marry (1)**
30:7
**mass (2)**
31:3;36:21
**massive (1)**
13:19
**matter (3)**
3:4;6:1;18:3
**matters (1)**
14:2
**may (12)**
6:10;8:16,17;12:7,
25;13:4;16:14;19:13,
21;30:11;35:22;36:10
**maybe (8)**
3:19;8:12;12:9;
24:1,1;27:15;31:22;
32:18
**mean (17)**
3:25;8:7;10:8;
11:11;12:5;14:15;
18:15;23:5,7,9,16;
24:17;30:1;31:12;
35:20;36:10,11
**meaning (1)**
29:22
**means (2)**
12:23;31:17
**meant (2)**
12:12;25:17
**mediation (1)**
15:17
**member (4)**
6:2;11:17;24:22;
25:15
**members (11)**
5:18;12:8;14:16,20;
16:15,17;22:6;24:19;
28:9,17;35:10
**mentioned (2)**
19:16;37:1
**merits (3)**
4:18;20:11;30:21
**Mexico (1)**
19:2
**Michael (1)**
3:15
**might (3)**
13:1,9;31:18
**mind (5)**
13:15,18;21:4;29:1,
2
**minute (2)**
9:5;15:18
**modest (2)**
13:2,6
**moment (4)**
5:2;11:21;17:14;
27:22

**Monday (3)**
14:10;15:25;38:3
**money (1)**
12:23
**moot (1)**
6:24
**moots (1)**
7:19
**more (10)**
4:13,22;5:11;12:9;
16:22;18:24;20:6;
30:14;34:15;37:5
**morning (5)**
3:6,11,15,23;9:20
**most (5)**
15:2,8,13,16;17:10
**motion (18)**
4:18;5:14;7:20;9:4;
11:4;12:2;26:1;28:15;
30:18,20,21,22;33:15,
23;36:6,7,8;37:8
**motions (3)**
34:21,23;35:5
**move (1)**
8:22
**moved (1)**
35:1
**Mrs (2)**
28:11;35:14
**multi-thousand (1)**
36:21
**must (3)**
28:24;29:12;32:19
**myself (1)**
11:3;23:5

**N**

**named (1)**
22:8
**names (2)**
6:13,14
**nature (1)**
10:25
**navigate (1)**
28:14
**necessarily (1)**
20:9
**necessary (1)**
22:16
**need (4)**
14:5;21:12;23:25;
33:21
**negative (1)**
11:13
**negotiate (1)**
33:16
**negotiated (3)**
7:13;8:1;25:5
**negotiating (2)**
7:16;14:3
**negotiation (1)**
15:18

**negotiations (1)**
33:20
**Neither (1)**
5:20
**new (5)**
4:7;10:16;19:1;
31:2;37:25
**next (2)**
10:15;27:23
**nice (1)**
38:3
**night (2)**
9:1,9
**nine (1)**
27:5
**Niners (2)**
37:25;38:1
**Ninth (3)**
34:4,7,9
**noncertified (1)**
8:10
**nondebtors (1)**
34:25
**none (5)**
17:23;25:14,14;
33:2;36:22
**Northern (1)**
23:2
**notice (3)**
7:8;25:10,12
**noticed (1)**
28:10
**notify (1)**
37:13
**nuance (2)**
15:22;17:3
**nuanced (1)**
14:11
**number (11)**
6:20;13:3;14:8;
16:17;18:13,15;
20:24;29:15,19;
32:25;36:1
**numbers (1)**
6:14
**numerically (1)**
4:23

**O**

**objecting (1)**
25:21
**objection (26)**
4:5;5:8,12,18;6:12,
15,22,24;8:9;10:22;
11:4,5,9;13:19;16:13;
19:17;20:22;21:1;
23:6;24:15;25:6,12;
26:1;27:13;29:7;36:9
**objections (8)**
5:11;9:25;16:5;
19:20;22:15;26:8;
30:16;33:19

**observation (1)**
12:19
**obviously (2)**
31:15;33:25
**o'clock (3)**
9:1,9,20
**odd (2)**
29:10,10
**off (2)**
24:14;33:17
**offer (4)**
5:25;6:21;15:19;
25:3
**offering (1)**
14:4
**official (4)**
23:18,25;32:5;38:5
**often (1)**
17:16
**old (1)**
31:14
**omnibus (18)**
4:5;5:10,14,18;
6:12;9:25;11:7;16:13;
20:22;22:15;25:12;
26:12,12,22,22,23,25;
36:9
**omnibuses (1)**
26:21
**once (2)**
18:23;24:18
**one (31)**
4:23;5:11,20;6:20;
7:2,5,6,8;8:8,18;12:1,
20;13:18;14:8;17:14;
20:15,23,25;23:16;
25:2,9;26:4,5,23;
29:13;30:14,19;
32:25;33:6;36:5,22
**ones (5)**
4:6;16:14;25:4;
27:7,22
**ongoing (1)**
16:20
**only (7)**
7:23;20:22;26:18;
28:22;29:25;31:9;
35:11
**oOo- (1)**
3:2
**open (1)**
16:22
**opinion (3)**
23:22;33:5,12
**opportunity (5)**
9:12;15:21;21:5;
24:4;27:25
**opposition (6)**
4:17;5:14;6:3;7:4;
29:4;30:4
**oppositions (1)**
6:3
**opt (1)**

28:8
**option (1)**
13:10
**order (20)**
3:3;4:11,25;7:23;
8:21;9:11;12:4,6,11;
17:24;18:3;19:23;
20:2;22:16;25:7;28:6,
6;35:12,25;36:25
**orders (1)**
24:24
**original (3)**
9:3,14,15
**ought (1)**
30:2
**out (17)**
7:19;10:15;15:5;
16:11;18:10;19:5,11,
12;24:15;27:14;
29:16;31:3,19;32:20;
33:23;35:15,15
**outlines (1)**
18:22
**outside (2)**
16:20;28:19
**over (13)**
8:8;11:20;12:10;
13:8;15:25;16:19,24;
19:18;21:1;23:6;29:4,
5;32:17
**overwhelming (1)**
25:3
**own (8)**
6:2;7:4;13:11;
24:12,23;27:16;
36:10,25

**P**

**pages (1)**
6:13
**paid (1)**
29:17
**pair (1)**
11:9
**paper (1)**
21:3
**part (2)**
5:23;22:19
**particular (8)**
4:14;7:7;8:2,14;
12:3,6;20:19;37:1
**particularly (1)**
4:15
**partner (1)**
33:22
**party (5)**
5:19,19,25;17:15;
37:19
**passed (1)**
12:21
**past (1)**
18:5

Case: 19-30088    Doc# 14316    Filed: 02/13/24    Entered: 02/13/24 16:58:30    Page 44
of 47

**payday (1)**
13:1
**payment (1)**
13:6
**pending (4)**
18:25;34:21,23;
35:4
**people (10)**
11:7;12:23;13:10;
19:16,17,18,19;20:3,
8;22:5
**people's (1)**
6:13
**PERA (29)**
3:16;14:12,17;
21:11,19,21,24;22:1,
2,7,13,22;24:11,12,
15,16;25:9,11;26:15,
16,22,23,24;27:8,14;
35:14;36:3,9;37:19
**PERA's (2)**
23:6;27:9
**perfect (2)**
28:12,25
**perfectly (1)**
24:17
**period (2)**
27:19,24
**permission (1)**
14:5
**person (3)**
26:7;36:14;37:23
**perspective (2)**
8:23;9:13
**persuaded (2)**
8:15;28:24
**pertain (1)**
16:5
**PG&E (10)**
3:4;5:25;6:21;8:1,
24;10:2;20:17;25:21,
25;37:6
**PG&E's (1)**
8:9
**phonetic (5)**
4:7;18:13;20:16;
27:7;28:11
**pick (4)**
28:1;36:24;37:4,5
**pin (1)**
8:13
**place (1)**
16:20
**plaintiff (5)**
4:17;9:4;22:12,12;
35:22
**plan (1)**
14:21
**playing (1)**
29:12
**pleading (1)**
33:4
**please (2)**

3:7;18:16
**plow (1)**
18:4
**PMart (1)**
27:3
**point (16)**
5:23;6:16,23;7:1;
14:23,25;16:8,15;
21:9;22:21;24:2;26:4;
27:17;34:12;36:4,11
**pointed (1)**
24:8
**points (3)**
18:25;19:15;23:8
**politely (1)**
24:9
**position (4)**
18:3,11,22;28:16
**possible (1)**
10:2
**practice (4)**
33:15,23;36:7,8
**precedent (1)**
13:19
**precipitated (1)**
10:4
**precise (2)**
21:10,25
**predict (1)**
36:13
**prepared (2)**
30:14,24
**preparing (1)**
7:4
**presumption (1)**
35:19
**pretend (3)**
23:11,13;29:25
**previously (1)**
17:23
**prior (1)**
16:14
**priorities (1)**
33:2
**priority (2)**
32:12,12
**pro (5)**
5:19,25;12:6,14;
37:18
**probably (1)**
36:22
**problem (5)**
8:13;23:25;27:17;
31:18;33:10
**procedurally (1)**
20:21
**procedure (1)**
29:8
**procedures (2)**
25:1,7
**proceeding (1)**
11:5
**proceedings (2)**

27:3;38:12
**process (9)**
6:8;13:19;14:3;
15:6,18;28:13,15;
30:10;31:24
**proof (2)**
24:23;26:17
**proofs (1)**
12:7
**proper (3)**
11:12;30:19;31:16
**properly (2)**
9:7;18:2
**proposing (1)**
13:23
**prosecuted (1)**
35:2
**prosecution (3)**
29:4,5,23
**protect (3)**
12:6,15;15:9
**protected (2)**
35:13;36:3
**protection (1)**
35:24
**provide (1)**
24:24
**provided (1)**
35:24
**providing (1)**
24:25
**PSLRA (1)**
35:6
**Public (1)**
19:1
**pursuant (1)**
12:3
**put (3)**
20:10;27:4;37:19
**putative (2)**
28:8,17

**Q**

**quickly (1)**
10:1
**quote (2)**
18:14;36:12
**quoted (3)**
33:5,12;35:21

**R**

**raise (2)**
4:25;35:11
**raised (1)**
10:16
**rather (2)**
9:16;16:2
**reach (2)**
27:14;35:15
**reached (1)**
15:5

**reaching (1)**
24:15
**read (2)**
3:24;27:23
**real (1)**
8:13
**realize (3)**
22:25;30:11;31:12
**really (8)**
4:12;9:11;15:16;
18:22,24;20:25;23:8;
29:6
**reason (2)**
16:13;23:7
**reasonable (1)**
27:19
**reasons (4)**
6:14,15;27:16;
29:16
**recall (3)**
9:22;17:20;33:14
**received (3)**
25:3,6,11
**recently (1)**
17:24
**reconsider (5)**
20:22;30:19,20,23;
37:8
**reconsideration (1)**
4:4
**reconsidered (1)**
37:11
**recovery (1)**
13:2
**regard (1)**
36:9
**regret (1)**
23:16
**regrets (2)**
23:17;32:13
**regretting (1)**
23:21
**regular (1)**
37:6
**reiterate (1)**
15:20
**rejected (2)**
21:25;22:8
**relates (1)**
7:1
**relating (2)**
7:19;11:25
**relationship (1)**
29:24
**relevant (1)**
5:15
**relief (1)**
8:22
**rely (1)**
20:10
**relying (1)**
20:5
**remains (1)**

32:2
**remedy (1)**
29:8
**Remember (1)**
29:13
**reorganized (5)**
3:9,12;4:20;8:24;
21:7
**rep (1)**
22:22
**repeating (1)**
11:3
**repetition (1)**
10:17
**reply (1)**
33:4
**represent (5)**
15:22;24:16;30:9;
31:5;35:16
**representation (3)**
11:18;12:2;13:8
**representatives (2)**
21:2;27:10
**represented (4)**
5:20;7:3;15:9;
27:15
**representing (2)**
6:2;27:9
**request (8)**
4:1;10:9;16,19;
10:5,10,11;23:6
**requested (1)**
9:6
**requesting (1)**
15:20
**requests (1)**
4:9
**require (1)**
28:8
**required (2)**
25:7;35:22
**resolution (3)**
7:18,19;8:1
**resolve (2)**
7:16;13:24
**resolved (5)**
6:6,6;7:25;13:3;
32:2
**respect (17)**
4:19;5:13;7:23;8:2,
18;9:3,9,10;12:4;
15:14;19:19;33:2,12,
18,20,21;35:10
**respectfully (2)**
17:10;19:18
**respects (1)**
12:8
**responded (4)**
16:17;19:17,18;
25:4
**response (3)**
3:25;4:8;5:2
**responsibility (1)**

Case: 19-30088     Doc# 14316     Filed: 02/13/24     Entered: 02/13/24 16:58:30     Page 45
of 47

30:9

**Retirement (1)**
19:1

**revisit (2)**
8:11,11

**revisiting (1)**
8:6

**Richard (2)**
3:8;21:7

**right (14)**
5:21;9:21;15:4;
16:15;19:13,21;21:8,
17;25:13;26:19;28:8;
33:22;35:6;37:11

**risking (2)**
20:2,3

**RKS (2)**
4:6;27:6

**road (1)**
8:20

**role (3)**
14:6;29:3,11

**rolled (1)**
16:19

**room (1)**
36:14

**roughly (1)**
37:4

**Rule (12)**
9:6;11:21;12:3,3;
15:12;23:4,4;31:24;
32:1;33:13;36:14;
37:12

**ruled (2)**
17:22;21:10

**Rules (1)**
36:12

**ruling (11)**
8:6,7;10:8;19:20;
34:4,4,6,7,9,19;36:6

**rulings (2)**
8:6;17:23

**run (1)**
35:23

**S**

**safeguards (1)**
35:24

**same (8)**
6:3,16;11:11;17:15;
18:5;21:23;26:6;
32:18

**SAN (1)**
3:1

**saw (1)**
35:14

**saying (7)**
6:10;16:10,11,23;
31:17;35:15;37:24

**schedule (2)**
14:9;27:10

**scheduling (3)**

4:13;8:23;19:24

**scope (2)**
9:11,11

**screen (1)**
3:17

**se (5)**
5:19,25;12:7,14;
37:18

**second (3)**
8:18;14:15;33:6

**securities (10)**
4:19;5:13;10:22;
11:7,7,25;18:11;
20:11;23:18,25

**seeing (1)**
3:18

**seek (1)**
14:7

**seeking (2)**
15:1,22

**seem (1)**
29:21

**seemed (1)**
10:9

**seems (6)**
10:23;11:16;13:4,9;
18:2;28:1

**send (2)**
31:3,19

**sense (1)**
30:4

**sentence (1)**
30:19

**separate (4)**
7:14,25;21:22;
22:10

**settle (2)**
15:4;37:20

**settled (2)**
14:20;16:18

**settlement (3)**
25:3;33:16,20

**seven (1)**
12:24

**several (2)**
6:13;13:9

**sick (1)**
19:5

**side (1)**
30:6

**simple (2)**
9:16;29:21

**simply (2)**
22:17;30:13

**single (3)**
13:19;25:9;36:13

**sit (3)**
28:9;35:22;36:2

**situation (3)**
10:14;25:16;28:19

**skips (1)**
27:6

**Slack (31)**

3:6,8,8;6:10;8:5;
10:3,16,20;12:22;
13:2;17:11;20:19,20;
21:6,7;22:23;24:3,7,
13;25:14,18,20,24;
26:4;27:11,12;30:14;
37:11,15,24;38:9

**Slack's (1)**
3:24

**smacks (1)**
31:13

**smaller (1)**
29:19

**solution (2)**
23:22;29:21

**solve (3)**
23:25;27:17;31:18

**somebody (8)**
15:18;19:7,9,11;
20:5;23:17;24:2;32:4

**somehow (2)**
22:8;26:11

**someone (1)**
30:20

**sophisticated (1)**
30:4

**sorry (3)**
21:2;33:9;36:10

**specific (1)**
4:22

**specifically (1)**
4:2

**standing (22)**
8:7,11,14;9:2,9,11;
11:19;14:8,12,13;
15:21;17:22,22;
19:21;21:9,12,15,17;
22:17,19;27:17;30:20

**started (1)**
21:8

**starting (1)**
36:16

**starts (1)**
27:4

**stated (2)**
11:8;20:15

**statements (1)**
20:17

**status (2)**
4:10;9:22

**stay (3)**
34:20;35:3,4

**stayed (1)**
35:7

**step (3)**
8:18;31:4,25

**still (10)**
18:9;24:12;32:13;
34:3,5,6,19,20;35:4;
38:5

**stop (1)**
7:17

**story (1)**

8:2

**strictly (1)**
8:20

**stuck (2)**
34:3,6

**subject (5)**
5:8;7:21,22;12:1;
22:15

**submit (1)**
17:10

**substantive (2)**
5:13;26:15

**Sucharow (1)**
3:16

**suddenly (3)**
13:7;29:2,11

**sufficiency (9)**
11:5,8,25;12:2;
16:9,10;25:25;33:19;
36:6

**sufficient (2)**
17:9;29:20

**suggesting (1)**
34:1

**suggestion (1)**
28:4

**Sunday (1)**
38:2

**Super (1)**
38:2

**support (1)**
10:25

**suppose (1)**
5:1

**supposed (1)**
31:14

**Supreme (1)**
35:20

**sure (3)**
4:3;21:6;32:23

**survive (2)**
11:8;29:19

**suspect (1)**
6:13

**sustaining (1)**
4:4

**Swift (1)**
38:1

**sword (1)**
30:15

**System (1)**
19:1

**T**

**table (1)**
33:17

**tack (1)**
37:5

**talk (4)**
4:24;14:17;17:15;
28:6

**talking (4)**

11:24;17:4;21:11;
26:18

**tango (1)**
33:21

**Taylor (1)**
38:1

**terms (4)**
12:5,12;33:1,24

**tested (1)**
30:21

**thinking (1)**
30:3

**thirtieth (1)**
13:5

**thirty (4)**
27:5,20,21;30:25

**thirty-eight (1)**
27:20

**thirty-first (1)**
13:5

**thirty-five (1)**
27:6

**thirty-four (1)**
27:6

**thirty-one (3)**
27:5,20;30:25

**thirty-seven (3)**
27:21,22

**thirty-seventh (1)**
37:2

**thirty-six (3)**
27:21;31:1,1

**thirty-three (3)**
26:23;27:5;31:1

**thirty-two (3)**
27:5,20;31:1

**though (5)**
14:25;34:13;36:4;
37:2,18

**thought (3)**
8:22;19:1;36:15

**three (2)**
18:6;33:16

**tight (1)**
14:9

**times (1)**
28:24

**title (3)**
21:4;23:8;28:7

**titular (2)**
23:8;28:7

**today (2)**
8:19;22:14

**together (1)**
27:4

**told (1)**
10:20

**took (1)**
31:25

**top (1)**
23:17

**tort (1)**
36:21

Case: 19-30088    Doc# 14316    Filed: 02/13/24    Entered: 02/13/24 16:58:30    Page 46
of 47

**touch (2)**
7:13,15
**trading (4)**
14:20;24:24,25;
26:8
**treat (2)**
24:11;37:18
**treated (1)**
19:6
**tried (1)**
32:9
**true (2)**
17:25,25
**Trustee (2)**
23:19;32:4
**truth (1)**
24:20
**try (7)**
10:1,19,19;17:20;
33:24;37:20;38:1
**trying (1)**
10:15
**turn (4)**
11:20;12:10;22:25;
30:18
**twenty- (1)**
27:4
**twenty-eight (2)**
4:5;27:4
**twenty-eighth (4)**
4:24,25;16:16;
19:17
**twenty-nine (2)**
27:20;30:25
**twenty-ninth (12)**
4:5,24;5:8,18;6:12;
10:21;11:7;13:5;
26:11,12,19,25
**twenty-seven (1)**
16:14
**twice (6)**
21:10,15,25;22:2,7,
8
**two (8)**
6:3;8:6;9:21;10:22,
23,24;17:15;33:21
**typically (1)**
29:13

**U**

**under (7)**
21:2;24:24,25;25:7;
28:6,7,16
**unethical (1)**
31:16
**unilaterally (1)**
36:24
**unless (1)**
31:12
**unlike (1)**
24:22
**unpack (1)**

24:14
**unrepresented (2)**
18:10;24:18
**unresolved (3)**
5:16;7:24;12:14
**unwieldy (5)**
31:10,11,11,19,22
**unwilling (1)**
15:3
**up (7)**
13:20;23:16;28:1;
30:2,7;31:4;36:15
**upcoming (1)**
19:20
**upon (1)**
5:12
**urge (1)**
18:11
**use (1)**
29:5
**used (2)**
3:18;28:25
**usual (1)**
18:4

**V**

**varied (1)**
30:6
**various (1)**
29:16
**veterans (1)**
12:20
**victims (2)**
32:15,18
**view (3)**
6:23;7:15;9:15

**W**

**wading (1)**
12:9
**waiting (1)**
6:21
**wake (2)**
19:23;20:1
**wants (6)**
13:18;19:5,11;
20:16;27:14;30:14
**Watkins (1)**
3:12
**way (12)**
10:19;15:2,8,13,16;
16:21;17:10;18:5;
21:20;25:17;32:9,19
**week (1)**
27:23
**weekend (3)**
15:25;38:3,6
**weeks (6)**
10:22,23,24;31:2;
37:4,5
**Weil (3)**

3:9;21:7;28:14
**welcomed (1)**
17:17
**weren't (1)**
28:20
**West (1)**
37:24
**what's (8)**
15:8;22:16;24:3,17;
28:3;31:11,11;36:8
**Whereupon (2)**
27:3;38:12
**whole (5)**
9:21;19:5;27:10;
28:15;29:18
**who's (3)**
5:19;7:3;37:14
**who've (1)**
12:20
**wide (1)**
33:21
**willing (3)**
14:3;15:5;31:3
**willingness (1)**
10:5
**win (1)**
38:1
**wish (2)**
23:19;38:5
**without (3)**
19:20;20:2,2
**woman (1)**
37:14
**wonderful (1)**
23:22
**word (2)**
31:5,23
**words (3)**
12:16;34:22;36:8
**work (2)**
23:16;32:23
**world (6)**
23:14,15;29:9,9;
30:1;35:17
**wrong (2)**
28:3;31:23
**wrote (1)**
37:14

**Y**

**Yankees (1)**
37:25
**years (10)**
12:22,24,25;13:9,
20;18:5,6;23:20;
32:21;38:6
**Yep (2)**
22:23;24:7
**York (1)**
37:25

**1**

**11:38 (1)**
3:1
**12b6 (2)**
4:18;26:1
**13th (9)**
5:2,6;9:22;10:8,11;
16:2;27:23;30:25;
36:25
**14 (1)**
18:17
**14295 (3)**
18:13,18,19

**2**

**2,000 (2)**
12:13;15:4
**200 (1)**
19:18
**2024 (1)**
3:1
**23 (4)**
11:21;12:3;31:24;
32:1
**23g (3)**
9:6;12:4;33:13
**23G3 (4)**
21:2,18;28:7,16
**25th (2)**
18:14,21
**26th (1)**
18:21
**28th (5)**
16:13;20:22;30:17,
23;37:10
**29 (1)**
21:2

**3**

**3:03 (1)**
27:3
**33rd (3)**
27:8,8;36:9

**5**

**500 (2)**
6:21,22
**59 (1)**
37:12

**6**

**60 (1)**
37:12

**7**

**7 (1)**

9:19
**7,000 (1)**
29:14
**7023 (1)**
7:20
**7th (1)**
9:20

**8**

**800-pound (1)**
32:20

**9**

**9 (3)**
3:1;9:1,9

Case: 19-30088    Doc# 14316    Filed: 02/13/24    Entered: 02/13/24 16:58:30    Page 47
of 47