1

# ZINK & LENZI

ATTORNEYS AT LAW

2  250 VALLOMBROSA AVE., STE. 175
CHICO, CALIFORNIA 95926

3  Tel:      530 / 895-1234
Fax:      530 / 895-1254

4  MICHAEL R. BUSH . (SBN: 58854)
condote59@gmail.com

5

6

7

8              UNITED STATES BANKRUPTCY COURT

                NORTHERN DISTRICT OF CALIFORNIA

9                 SAN FRANCISCO DIVISION

10

11  In re:                          Bankruptcy Case No. 19-30088
                                    (DM)
12  PG&E CORPORATION

13       -and-                      Chapter 11
                                    (Lead Case)
14  PACIFIC GAS AND ELECTRIC        (Jointly Administered)
    COMPANY,
15
                  Debtors.
16                                  MOTION TO DETERMINE IF THE
                                    TRUSTEE'S MODIFICATION OF THE
17  ☐ Affects PG&E Corporation      CLAIM RESOLUTION PROCEDURE WAS
                                    APPROVED BY BANKRUPTCY COURT
18  ☐ Affects Pacific Gas and Electric  AND IF NOT SO APPROVED TO GRANT
       Company                      REQUESTED RELIEF UNDER 11 U.S.C.
19                                  § 105(a) and § 1142(a)
    ■ Affects both Debtors          B.L.R. § 9014-1(b)(3)
20
    *All papers shall be filed in the Lead
21  Case, No. 19-30088 (DM)
    _____/
22

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**INTRODUCTION**

The Trustee of the Fire Victims Trust cannot supplement, amend or modify the Claim Resolution Procedure (CRP) in a material way that is inconsistent with the plan, the confirmation order, the trust agreement or the claims resolution  procedure, without approval of the bankruptcy court.  Confirmation Order paragraphs 2(a), 18(L).

This limitation on the Trustee's ability to modify the CRP is also stated in sections 2.2(F)(iii), and 8.3 of the Trust Agreement.

This motion is based on the contention that the Trustee did not obtain court approval for the modification of the CRP titled "BIL Eligibility Criteria," implemented on May 25, 2021. Exhibit A.

The fact that the modification, "BIL Eligibility Criteria," has a material and adverse affect on an identifiable number of claimants is shown by the effects on the claim valuation process of a commercial landlord's claim, recently determined by the Trustee.

The manner of the modification's operation, and the dramatic negative effects on a claim arising under inverse condemnation is illustrated on the Trustee determination of the Sayegh Brothers claim.  Exhibit B.

The processing of the Sayegh Brothers' claim including reconsiderations, appeal to Neutral and final determination by the trustee, demonstrates that the trustee and claims administrator are well aware of California law regarding the valuation of damages to leasehold interest arising under

2

1  inverse condemnation.  The trust contends in essence that the

2  modification preempts California law and that this bankruptcy

3  court approved the modification.

4      Sayegh Brothers bring this motion not as an appeal of the

5  Trustee's determination in their case but rather as a challenge

6  to the CRP amendment that was implemented without bankruptcy

7  court approval.

8                        **JURISDICTION**

9      The court has jurisdiction to consider this matter

10  pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring*

11  *Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General

12  Order 24 (N.D. Cal. Feb. 22, 2016), and Bankruptcy Local Rules

13  5011-1(a) and 9014-1(b)3.  This is a core proceeding pursuant

14  to 28 USC 157(b). The court has jurisdiction pursuant to 11 USC

15  1123(a)(4) and 105(a) to resolve unequal treatment of claims.

16      The court has jurisdiction pursuant to 11 UCS 1142(a) to

17  resolve a claim regarding failure to follow a court order.

18      The court has jurisdiction according to §11.1(U) of the

19  Plan, to hear and determine a dispute involving the wildfire

20  trust, including the interpretation of the wildfire trust

21  agreements.

22                        **BACKGROUND**

23      1.  On November 8, 2018 the Camp Fire destroyed commercial

24  property throughout Paradise, California terminating long term

25  leasehold interests.

26      2.  January 29, 2019 PG&E filed Chapter 11 bankruptcy.

27      3.  On October 25, 2019, the debtor and others seek a

28  determination that inverse condemnation is not applicable to

Case: 19-30088   Doc# 14319   Filed: 02/20/24   Entered: 02/20/24 11:44:59   Page 3 of 24

1  North Bay and Camp Fires. [Dck. No. 4485.]

2      4.  In response, this court sets a briefing schedule

3  because the issue is important and affects upcoming estimation

4  proceedings. [Dck. No. 4540.]

5      5.  On November 15, 2019 the official committee of tort

6  claimants filed an opposition brief arguing, intra alia, that

7  inverse condemnation is based on constitutional principles that

8  can't be overridden by statute or administrative agencies.

9  [Dck. No. 4773, p. 28.]

10      6.  November 29, 2019 this court rules that inverse

11  condemnation is based on the California constitution, is

12  distinguished from negligence, and will apply to damage claims

13  in this bankruptcy. [Dck. No. 4895.]

14      7.  May 5, 2020 Adventist Health and other entities filed

15  objections to the trust documents.  Amongst these objections

16  was the concern that without judicial review the trustee could

17  arbitrarily modify the trust documents to the benefit or

18  disadvantage of certain classes of claimants. [Dck. No. 7072,

19  p. 26.]

20      8.  The concern was based in part on the fact that the TCC

21  had asked the debtor to add a statement in the debtor's

22  disclosure statement to the effect that would permit the larger

23  claims of business victims to be treated differently. [May 15,

24  2020 hearing transcript, Dck. No. 7416, pages 34-35.]

25      In a response brief the Official Committee of Tort

26  Claimants argued, "The Trust Agreement grants the Trustee

27  discretion only so far as is necessary to insure that operation

28  of the Fire Victims Trust is as evenhanded and efficient as

4

possible and that key decisions are subject to oversight"
Response brief. [Dck. No. 7159, p. 33, line 12.]

9.    May 26, 2020 this court issued a memorandum on the objection of Adventist Health.  With respect to the concern regarding arbitrary changes, the court stated that there will be a provision in the confirmation order that the trust documents could not be modified without bankruptcy court approval. [Dck. No. 7597.]

10.    The confirmation order dated June 20, 2020 accepted that the existing trust documents as amended do not "materially and adversely affect the treatment of holders of claims." [Dck. No. 8053, p. 8.]

11.    On November 24, 2020 Sayegh Brothers, a commercial landlord, submitted their claim to the trust asking to be paid the fair market value of the leasehold interest taken by the Camp Fire. $3,307,769.00.

12.    On May 25, 2021, the trustee modified the Claims Resolution Procedure by adding the "BIL Eligibility Criteria" procedure ostensibly to control and limit claims based on negligence that could be affected by the post fire regional economy.

13.    On July 21, 2022, the trust made its first determination of the Sayegh Brothers claim using the BIL Eligibility Criteria. The loss amount was determined on a future income prediction based on pre fire tax returns and capped at four years.  (Exhibit C)

14.    A request for reconsideration of this determination was filed October 6, 2022, making two points, 1) Because a

5

ZINK & LENZI
ATTORNEYS AT LAW

1  lease is an interest in real property, valuing this claim has
2  to be done according to state law of eminent domain, and 2) The
3  BIL Eligibility Criteria method of projecting future income off
4  of tax returns is too speculative and unacceptable per
5  California supreme court and numerous appellate court
6  decisions. [Exhibit D Reconsideration Brief.]

7      15.  March 3, 2023, Reconsideration Determination issued,
8  affirming the original decision.  The determination does not
9  discuss constitutional issue or the applicability of California
10  Eminent Domain Law.  (Exhibit E)

11      16.  Concerned that the claims processor was violating
12  California law, issues related to the improper treatment were
13  presented to the claims manager (Exhibit F), the claims
14  administrator (Exhibit G), David Molton, Trust Attorney,
15  (Exhibit H), the TOC, (Exhibit I), Steve Skikos (Exhibit K)
16  [Bush Declaration and Exhibits.]

17      17.  Notice of Appeal filed and brief supporting appeal
18  filed on June 29, 2023. (Exhibit M)

19      18.  August 15, 2023 hearing on appeal conducted via Zoom.
20  First words out of the Neutral were the appeal is denied
21  because the bankruptcy court approved the procedure used by the
22  trust.

23      19.  On September 8, 2023 trustee issued Notice of Trustee
24  Determination.  Exhibit B

25                         **RELIEF REQUESTED**

26      If this court determines that the Trustee failed to obtain
27  necessary court approval for using the BIL Eligibility Criteria
28  on inverse condemnation claims; it is requested that the court

Case: 19-30088   Doc# 14319   Filed: 02/20/24   Entered: 02/20/24 11:44:59   Page 6 of 24

1 review the BIL Eligibility Criteria and determine if the

2 criteria apply only to claims based on negligence and not

3 inverse condemnation. If appropriate the court is requested to

4 exercise its equitable power pursuant to 11 USC § 105(a) and

5 order the Fire Victim Trust to cease using the BIL Eligibility

6 Criteria on claims arising under inverse condemnation brought

7 by commercial landlords based on terminated leases, and to

8 further order the Trust to identify all claims of commercial

9 landlords that were improperly processed according to the BIL

10 Eligibility Criteria, and thereafter, reevaluate the damages

11 according to California Eminent Domain Law and if necessary

12 adjust their awards accordingly.

13    In support of this request we submit the following:

14                         **ARGUMENT**

15 **(A) One year after the plan was confirmed the Fire Victims Trust made unauthorized changes to the laws, and the rules and**

16 **procedures approved in the confirmation order, for valuing claims.**

17

18 **I.    BANKRUPTCY COURT HAS DETERMINED THE GOVERNING LAW**

19    Some of the most important legal principles that apply to

20 this motion have already been considered and ruled upon by this

21 court.

22    In the period before the estimation proceedings were to

23 begin in the District Court, PG&E joined with other parties and

24 filed a brief challenging the application of inverse

25 condemnation in connection with the 2015, 2017 and 2018

26 wildfires caused by PG&E's equipment. [Dck. No. 4485.]

27    In addition to PG&E's standard arguments that have been

28 rejected countless times by California trial and appellate

1  courts, PG&E presented a new argument contending that the

2  Doctrine of Inverse Condemnation no longer applies because a

3  recent decision of an administrative agency, the CPUC, could

4  limit PG&E's ability to go to the rate payers to pay for their

5  mistakes.

6      In response, this court set a briefing and hearing

7  schedule in order to decide the issue for future consideration

8  as the bankruptcy case proceeds. [Dck. No. 4540.]

9      The Official Committee of Tort Claimants (TCC) filed a

10  brief in opposition which addressed PG&E's new argument by

11  pointing out that inverse condemnation is based on the

12  California Constitution, the provisions of which cannot be

13  overridden by statute, and certainly not by an administrative

14  agency fulfilling a statutory purpose. [Dck. No. 4773, p. 28.]

15      In ruling that the Doctrine of Inverse Condemnation would

16  apply in this bankruptcy proceeding the court agreed with the

17  TCC that the doctrine is based on the constitution. This court

18  rejected PG&E's new argument as unsupported by the facts and

19  the law.

20      Mindful of the fact that PG&E's liability is also based on

21  negligence, the memorandum decision describes the

22  characteristics of inverse condemnation that distinguish and

23  set it apart from liability based on negligence.

24      The Doctrine is "rooted in the California Constitution"

25  and is mainly a form of strict liability and as such "does not

26  require any breach of a standard of care, a finding of

27  negligence, foreseeability or any other similar factual

28  finding," (citation omitted), instead the operative inquiry is

8

merely whether there was actual physical injury to real property proximately caused by a public improvement as deliberately designed and constructed." [Dck. No. 4895, pages 3-4.]

Significantly, the doctrine's main limitation is that it mainly applies to real property damage.

**II. CALIFORNIA CONSTITUTION ARTICLE I, SECTION 19, AND CALIFORNIA EMINENT DOMAIN LAW GOVERN THIS PROCEEDING.**

Under longstanding California law the threshold issue is whether the damage or taking for a public purpose caused a reduction in the fair market value of the property interest affected. *Eachus v. Los Angeles Railway Co.*, 103 Cal. 614, 620 (1894). Thus, the substance of a claim arising under inverse condemnation is the determination of the fair market value of a property interest before and after the fire.

In bankruptcy proceedings, issues related to the substance of claims, such as loss of fair market value are governed by state law, *Raleigh v. Illinois Dept. Of Revenue*, 530 U.S. 15, 20 (2000).

In this particular bankruptcy the importance of state law is further emphasized in the Trust Agreement at section 8:16. "All fire victim claims administered under the CRP and this Trust Agreement shall be evaluated under the laws of the State of California."

The primary function of inverse condemnation is to insure that the owners of an interest in property receive the constitutional requirement of just compensation for what was taken involuntarily.

9

ZINK & LENZI
ATTORNEYS AT LAW

1  Historically, there are two approaches to making this
2  determination; (I) the undivided fee rule followed by a
3  majority of states, proceeds on the assumption that the fair
4  market value of the property must be determined as if the
5  property was held by a single undivided ownership; (II)
6  California follows the minority rule known as the divided fee,
7  or aggregate of interest rule.  CCP §1265, 010, et seq.
8  The difference between the two rules is that the undivided
9  fee rule does not consider the enhanced value of the fee
10  occasioned by leases appurtenant to the property.  However,
11  under the rule followed by California, a lease is an interest
12  in the land that enhances the fair market value of the land
13  itself and therefore leases should be valued separately. CCP §
14  1260.220.  See generally the discussion on this issue in *People*
15  *ex Rel. Dept. Pub. Wks. v. Lynbar, Inc.* (1967) 253 Cal.App.2d
16  870, 874-875.
17  In 1975 the legislature adopted the current Eminent Domain
18  law.  CCP §§ 1230.010, et seq.  It is a comprehensive statutory
19  scheme designed to insure that the constitutional requirement
20  of just compensation would apply to the taking of private
21  property for a public purpose.  It codified judicial decisions
22  that found leases to be a property interest that had to be
23  valued in a specific way in order to determine their fair
24  market value.  CCP §§ 1235,125, 1260.220(a).
25  There are legal and practical differences between eminent
26  domain and inverse condemnation, but these differences do not
27  effect the issue of compensation.  "All condemnation law
28  procedure and practice is but a means to the constitutional end

10

1  of just compensation." *Escondido Union School District v. Casa*

2  *Suenos de Oro, Inc*. (2005) 129 Cal.App.4th 944, 959.

3      The established rule is that the time of the taking is the

4  time of the invasion by fire and it is that event which gives

5  rise to the claim for compensation and fixes the date of

6  valuation.  It is the date the building burnt down, it's the

7  date leases are terminated by operation of law.  CCP §

8  1265.110. *Merced Irrigation Dist. v. Woolstenhulme*, 4 Cal.3d

9  478, 494 (1971).

10      In monetary terms just compensation means the property

11  owner is to be put in as good a position pecuniarily as he

12  would be if his property had not been taken.  *Lynbar*, supra

13  880. This principle was also raised by the TCC brief, [Dck. No.

14  4773, p. 27, line 15.]

15      The fair market value of a leasehold interest is "the

16  capitalized value of the reasonable net rental value

17  attributable to the land and existing improvements," California

18  Evidence Code § 819.  *People ex rel. Department of Public Works*

19  *v. Dunn* (1956) 46 Cal.2d 639, 641.

20      For commercial landlords the valuation procedure of § 819

21  shows what the fair market value of their leasehold interest

22  was worth on the day of the fire and this is the amount of the

23  loss that must be compensated.

24  **III.  THE FIRE VICTIMS TRUST CHANGES THE ACCEPTED VALUATION
       PROCESS**

25

26      The Trustee's determination (Exhibit B) shows that the

27  loss of fair market value ($3,307,769), is not the measure of

28  damages, it is just the beginning of the BIL Eligibility

11

Criteria created by the Fire Victims Trust,

Its application clearly expressed on the face of Exhibit "B" results in a reduction of the fair market value. In the Sayegh Brothers' claim that reduction is almost 85% of the fair market value amount, leaving only 15% of the loss as just compensation.

A set of policy machinations designed by the Trust have overridden the Trust Agreement, the CRP, the California Constitution and the California statutes that are in place to implement its mandate of just compensation.

The Fire Victims Trust argues that this new procedure was approved by this Bankruptcy Court. That is hard to believe, especially in light of the briefing, hearing, and the Memorandum Decision on Inverse Condemnation. [Dck. No. 4895.]

In its brief in support of inverse condemnation, the official committee of tort claimants, the progenitors of the Fire Victims Trust, argued that no statute nor statutory agency could override the California constitutional requirement of just compensation. [TCC Brief, Dck. No. 4773, pages 27-28.]

The official committee of tort claimants also filed a response to Adventist Health pre confirmation objection to the trust documents. At the hearing, and with respect to the objectors concerns about being treated differently, counsel for the committee asserted: "The first sentence of the claims resolution procedure requires the trustee to fairly compensate claimants in an equitable manner consistent with California law so I think that resolves the issue." [Transcript, Dck. No. 7416, page 60.]

12

The Fire Victims Trust was not established at the time the Official Committee of Tort Claimants made the arguments in support of inverse condemnation and against Adventist Health, but based on the strong oral and written claims of the TCC this court could have reasonably expected that when the Trust was established it would operate within the constitutional boundaries articulated by the TCC and value claims in accordance with California law.

Yet, a year after these strong arguments persuaded the court that the Trust documents would be followed, the Fire Victims Trust, established by the TCC, implemented a modification or amendment to the CRP that the Trust has used to eliminate the constitutional compensation requirement for certain damage claims arising under inverse condemnation.

By this amendment, the Trust has taken a position just the opposite of the earlier position taken by the TCC. The earlier position being that an agency performing a statutory duty could not override the constitutional requirement of just compensation for claims arising under Inverse Condemnation.

The new position taken by the Trust, illustrated in the Trustee's determination, Exhibit "B," is that the Trust's BIL Eligibility Criteria can indeed override and reduce the constitutional compensation requirement of California law.

This unusual position should be rejected: First: On procedural grounds because the new or modified procedure was implemented without the approval of the bankruptcy court as required by the confirmation order and the Trust Agreement; and Second: On the merits, the BIL Eligibility Criteria, as

13

1   designed and applied cannot be used to evaluate claims of

2   commercial landlords for the taking of leasehold interests by

3   inverse condemnation.

4   **IV.   THE RECORD DOES NOT SHOW THAT THE COURT APPROVED THIS
        MODIFICATION TO THE CRP**

5

6       The BIL Eligibility Criteria modifies the evaluation

7   procedure of the CRP in a material way that is inconsistent

8   with the Trust Agreement and the CRP, both of which require

9   claims to be evaluated according to California law.

10      California law is abundantly clear as expressed in Article

11  1, § 19 of the California constitution, the California law of

12  Eminent Domain, CCP §1230.010, *et seq*. and California Evidence

13  Code §§810-824, and most importantly, this court's memorandum

14  decision on inverse condemnation, incorporated by reference in

15  the memorandum and decision on plan confirmation, [Dck. No.

16  8001, page 29], confirms to the parties in this proceeding,

17  such as the Fire Victims Trust, that claims arising under

18  inverse condemnation require just compensation evaluated

19  pursuant to California law.

20      Section II(1)(A) of the amended version of the CRP as

21  accepted in the confirmation order, provides a list of the

22  types of real property claims included in the CRP.  This list

23  includes damage to the land and improvements but does not

24  include leasehold interest.  This section further provides that

25  "real property damages may be measured in one of two ways: (1)

26  The loss in Fair Market Value to the property (Diminution in

27  value); or (2) reasonable costs to rebuild or repair the

28  property."

14

The fact that the listing does not include leasehold interest is not dispositive. Perhaps it is an oversight or a drafting error or the list is meant to be illustrative but not exclusive. CRP Section III supports the idea that the list is non exclusive because it allows the Trustee and claims administrator to add categories of recoverable damages.

In any event, of the two measures, cost of repairs would not be applicable to a leasehold interest, whereas diminution in value is measured by loss of fair market value and would certainly apply to leasehold interest under California law.

In the plan confirmation proceedings this court accepted the CRP as "highly detailed and sophisticated." Memorandum on Adventist objections. [Dck. No. 7159, p. 6, line 13.]

At the time, there was nothing in the CRP that indicated to this court that the Trust would not evaluate leasehold interests in accordance with California law for claims arising under inverse condemnation.

If on the other hand, the CRP actually stated that it would not value leasehold interests as an interest in property, this court would likely have found that leasehold interests in real property receive unequal treatment in violation of 11 USC §1123(a)(4), or misclassification, § 1122(a).

Adding the BIL Eligibility Criteria a year after this court approved the CRP, modified the CRP in a material way in that it eliminated the valuation process for leasehold interests required by California law of Eminent Domain. The effect of the modification is also material in that it tends to reduce the fair market value of leasehold interest and deny

15

just compensation as a result.

Modifying the CRP by adding the BIL Eligibility Criteria does not, on its face, indicate to this court or to claimants that the criteria applies to leasehold interests taken by inverse condemnation. In fact, just the opposite is suggested by the rationale the Trust uses to explain the legal basis and what the criteria is meant to accomplish.

On page 1 of the BIL Eligibility Criteria the Trust states unequivocally that the economic loss rule it is concerned with is based upon negligence theory.

There is no attempt to show how, or even if, the criteria might be applied to claims arising under inverse condemnation. Yet, as demonstrated by the Trustee's final determination in the Sayegh claim, the criteria actually eliminates a claim based on inverse condemnation, and replaces it with a claim based on negligence. In this circumstance, the bankruptcy court should have been informed, and a decision explicitly approving the criteria obtained before implementation.

According to the Bush declaration, he was not able to find a docket entry confirming the Trust position that the bankruptcy court approved the criteria for claims arising under inverse condemnation. Nor did any of the professionals associated with the Trust respond to the multiple requests, (Exhibits F, G, H, I and K) by stating the bankruptcy court approved using the criteria on claims arising under inverse condemnation. It wasn't until the opening of the appeal hearing that the Trust for the first time made the unsubstantiated claim, and then it was too late to address the

16

ZINK & LENZI
ATTORNEYS AT LAW

1    issue within the CRP.

2    **V.    THE BIL ELIGIBILITY CRITERIA SHOULD NOT BE USED FOR CLAIMS**
     **ARISING UNDER INVERSE CONDEMNATION**

3

4    The purpose of the BIL Eligibility Criteria as stated in the

5    introduction is to tailor (i.e., limit) the loss periods in

6    order to: "account for a specific claimant's losses

7    attributable directly to the fire and not for the broader

8    effects of the fire to the economy of the region as a whole."

9        The underlying concern that damage claims could be

10   improperly affected by post fire conditions in the local

11   economy could be a sufficient basis for the Trust to implement

12   procedures to account for the affect on the claims subject to

13   post fire conditions, such as claims based on negligence.

14       However, that rationale has no application to claims that

15   are based on inverse condemnation because the post fire local

16   economy has zero affect on the loss of fair market value

17   determined as of the day of the fire only.

18       For the authority to engage in this speculative process,

19   the Trust turned to a recent California Supreme Court case

20   involving an industrial accident. *The Southern California Gas*

21   *Leak Cases*, 7 Cal.5th 391 (2019), involved a natural gas

22   storage facility that sprung a leak contaminating the air in a

23   Los Angeles suburb. There was no property damage but people

24   became sick and the local government required an evacuation of

25   the area in the vicinity of the facility, involving

26   approximately 15,000 people for three months.

27       The evacuation took an enormous toll on the local economy.

28   Certain local businesses filed suit alleging that the gas

17

1 company was liable under a negligence theory for the decline in

2 economic activity causing them identifiable economic loss.

3     The gas company filed a demurrer on the ground that it did

4 not have a duty to protect against purely economic loss.

5     The trial court overruled the demurrer claiming the law

6 was uncertain and there is no bar to recovery for purely

7 economic loss when the precipitating event is a mass tort.

8     The gas company filed a writ with the 2nd District Court of

9 Appeal.

10     The appellate court found that the rule denying recovery

11 under a negligence theory for purely economic losses without

12 damage to property, persons or other special relationships is

13 still the law.  The court issued a peremptory writ vacating the

14 trial courts order and requiring a new order sustaining the

15 demurrer without leave to amend.

16     On appeal, the Supreme Court affirmed the court of appeals

17 judgment that the gas company was not liable under a theory of

18 negligence for purely economic loss.

19     The court took the opportunity presented by the gas leak

20 case to clarify and set limits on what trial courts can do with

21 claims of "purely economic loss" arising under a negligence

22 theory of liability.

23     The problem identified by the court is that purely

24 economic losses: "proliferate more easily than losses of other

25 kinds and are not self limiting in the same way."  *Gas Leak*

26 *Cases*, supra 407.

27     But, drawing lines to limit liability on a case by case

28 basis is beyond the capabilities of the court.  Therefore

18

1  California, like all other jurisdictions that have considered
2  the problem, will follow the rule that such losses are not
3  compensable under a negligence theory. The court noted it's
4  not the best rule but, "it is the least-worst rule out there."
5  *Gas Leak Cases*, supra 412.

6      While it is not exactly clear just how the gas leak case
7  supports the Trustee's implementation of the BIL Eligibility
8  Criteria for cases arising under Inverse Condemnation, it is
9  certainly clear from the trial court, Appellate Court and
10 Supreme Court that the problem of purely economic loss occurs
11 only where liability is based on negligence, not inverse
12 condemnation.

13     The court approved, rules and procedures for valuing and
14 paying fire victim claims, are the trust documents which were
15 given to the Trust when it was established. The court's
16 confirmation order requires that any material change to the
17 rules and procedures has to be approved by the Bankruptcy
18 Court.

19     Moreover, as a general principle of administrative law any
20 changes the Trust makes to the rules and procedures for valuing
21 damage claims must be consistent with and not contrary to
22 controlling law. *Communities for a Better Environment v.*
23 *California Resource Agency*, 103 Cal.App.4th 98, 109-110 (2002).

24     In bankruptcy proceedings the controlling law is state law
25 with respect to the substance of damage claims. *Raleigh v.*
26 *Illinois*, supra, page 20. According to this court's ruling, *In*
27 *re PG&E Corp.*, 611 B.R. 110, 113, just compensation is
28 controlling law with respect to the measure of damages to real

1  property interest arising under inverse condemnation.  The

2  Trust Agreement at section 8:16, states California law is the

3  governing law for evaluating fire victim claims.  Thus

4  California eminent domain/inverse condemnation statutory

5  procedures are the controlling laws for valuing the damaged

6  leasehold interests of commercial landlords.

7  Using controlling California law, the commercial landlord

8  in the Sayegh Brothers' claim determined $3,307,769.00 is just

9  compensation for the loss of fair market value of the leasehold

10  interest.

11  The way the Trust applied the rules of the "criteria" is

12  shown on page 2 of the Trustee's determination, the effect of

13  which resulted in reducing the amount of just compensation by

14  85%, a result inconsistent with and contrary to controlling law

15  and therefore void.  *Mineral Associations Coalition v. State*

16  *Mining and Geology Bd.*, (2006) 138 Cal.App.4th 574, 589.

17  In the memorandum and decision on inverse condemnation

18  this court recognized that there are two broad subclasses of

19  fire victims.  Those whose opportunity for recovery is based on

20  negligence and those whose opportunity for recovery arises

21  under inverse condemnation.  Claims arising under inverse

22  condemnation are limited to damage to real property interests.

23  Commercial landlords are a specific and discreet group of

24  claimants within the class of claimants seeking compensation

25  under inverse condemnation for damage to real property

26  interests.

27  Leases are recognized as an interest in real property by

28  California law and subject to the valuation and compensation

20

**ZINK & LENZI**
ATTORNEYS AT LAW

1  rules under Article 1, § 19 of the California Constitution, the

2  California eminent domain law, and California Evidence Code §§

3  810-824.

4      The real property interest of commercial landlords is the

5  right to receive lease payments, *Lynbar,* supra, page 876, FN2.

6      The right of commercial landlords to receive lease

7  payments becomes a constitutional right to receive just

8  compensation if the leases are taken by inverse condemnation.

9      The loss of fair market value is one element of a claim

10 brought under inverse condemnation.  A claimant may also

11 recover interest from the day of the taking, (the fire) as well

12 as reasonable costs and attorney fees.

13     The Trustee's determination of the appeal shows that the

14 damage award for a commercial landlord's leasehold interest

15 does not include reasonable attorney fees, nor any interest

16 from the day of the loss.  And the loss itself is not based on

17 the loss of fair market value.  And, finally, the amount of

18 compensation that was left after the Trust applied the

19 eligibility criteria was 15% of the amount of the just

20 compensation claimant established by the statutory procedure,

21 Evidence Code §§ 817, 819.

22     The Trustee's determination demonstrates that  commercial

23 landlord's property claims for damage to leasehold interests

24 are subject to a valuation system created by the Trust for

25 claims based on negligence, that is inconsistent with and

26 contrary to controlling law of just compensation.  And there is

27 nothing in the record that shows the court approved this

28 amendment to the CRP.

Case: 19-30088   Doc# 14319   Filed: 02/20/24   Entered: 02/20/24 11:44:59   Page 21 of 24

ZINK & LENZI
ATTORNEYS AT LAW

1    In response to Sayegh Brothers' request for clarification,

2    the Trustee and claims administration stated "We must

3    consistently apply the provisions of the Fire Victims Trust

4    Agreement, claims resolution procedure, and Eligibility

5    Criteria to all claims and claimants." Exhibit J

6    **(B) Bankruptcy Court has discretion to grant relief
     requested.**

7

8    The actions of the Fire Victims Trust as described herein

9    are inconsistent with and contrary to orders and rulings of

10   this court.

11   In the first instance and with respect to the confirmation

12   order, this court should clarify when and in what proceeding it

13   approved of the "Criteria" being applied to claims arising

14   under inverse condemnation

15   The Trust has been less than transparent in explaining why

16   leasehold interest of commercial landlords are being treated as

17   if they are subject to liability under a negligence theory,

18   instead of liability under inverse condemnation.

19   Thus it is appropriate and necessary to clarify what the

20   orders and rulings the court has made with respect to valuing

21   claims.

22   A bankruptcy court has inherent power to interpret and

23   enforce its own orders.  *Travelers` Indemnity Co. V. Bailey*,

24   557 U.S. 137 (2009).

25   Bankruptcy courts have additional authority under § 105(a)

26   to issue any order, process or judgment necessary to carry out

27   the provisions of the Bankruptcy Code, and this is especially

28   important for determining the effect of the confirmation order

22

1  on creditors and interested parties.  *In Re Gonzales*, 512 B.R.

2  255, 258-259 (BK C.D. CA 2014)

3      This court's order on the applicability of inverse

4  condemnation states it is a constitutional doctrine that

5  requires "just compensation" for a property interest taken for

6  a public purpose.  The court made a point of distinguishing

7  liability of inverse condemnation from liability based on

8  negligence. They are different legal theories of liability.

9      Seven months after the ruling on inverse condemnation, the

10  court returned to the significance of liability in its ruling

11  on the various objections to confirming the debtor's plan.  One

12  objection raised by an individual victim claimed that debtors,

13  "impermissibly classified fire victims in different classes."

14  Arguing that all victims were victims of debtor's fires, and

15  should be in one class.

16      In overruling the objection, the court agreed with debtor

17  that separate classes were necessary because some claims "are

18  based on different legal theories of liability." [Memorandum

19  Decision Dck. No. 8001, p27.]

20      Thus, by the time the Fire Victims Trust was established,

21  this court had ruled that liability under inverse condemnation

22  would apply to claims involving damage to real property

23  interest.  Furthermore, liability under inverse condemnation is

24  fundamentally different than liability under a negligence

25  theory and that claims based on different legal theories of

26  liability should not be in the same class for treatment under

27  the plan.

28      However and in spite of the constitutional requirements of

1  just compensation, confirmed by this court's ruling, the
2  Trustee and claims administration have implemented a claims
3  valuation procedure designed specially for negligence based
4  claims and have applied it to "all claims and claimant" thereby
5  denying commercial landlords the right to just compensation for
6  their loss.

7  <u>**CONCLUSION**</u>

8  Based on the foregoing we ask the court to exercise its
9  discretion under 11 U.S.C. § 105(a) and order the Trust to
10 recalculate and pay, according to California Eminent Domain
11 law, the claims of commercial landlords for leasehold interest
12 originally subjected to the Eligibility Criteria.

13 Respectfully submitted.

14 DATED: _February 13_, 2024.

15
16 MICHAEL R. BUSH
17
18
19
20
21
22
23
24
25
26
27
28

-24-