# ZINK & LENZI

ATTORNEYS AT LAW

250 VALLOMBROSA AVE., STE. 175
CHICO, CALIFORNIA 95926
Tel:     530 / 895-1234
Fax:     530 / 895-1254
J.D. ZINK   (SBN: 58726)
MICHAEL R. BUSH .  (SBN: 58854)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

In re:                           Bankruptcy Case No. 19-30088
                                 (DM)
PG&E CORPORATION

     -and-                       Chapter 11
                                 (Lead Case)
PACIFIC GAS AND ELECTRIC         (Jointly Administered)
COMPANY,

              Debtors.           DECLARATION OF MICHAEL R. BUSH
                                 IN SUPPORT OF MOTION TO
☐ Affects PG&E Corporation       DETERMINE IF THE BANKRUPTCY
                                 COURT DID, OR SHOULD HAVE
                                 APPROVED THE FIRE VICTIMS TRUST
☐ Affects Pacific Gas and Electric   POST CONFIRMATION MATERIAL
   Company                       MODIFICATION OF THE CLAIMS
                                 RESOLUTION PROCEDURE
■ Affects both Debtors

*All papers shall be filed in the Lead
Case, No. 19-30088 (DM)
_____/

     I, MICHAEL R. BUSH, pursuant to 28 USC § 1746, declare

under penalty of perjury:

     1.  I am an attorney at law duly admitted to practice law

before the courts of the State of California.  I am counsel at

Zink & Lenzi, with primary responsibility representing victims

of the Camp Fire.

     2.  Except where specifically noted, all statements in

ZINK & LENZI
ATTORNEYS AT LAW

this declaration are based upon a) my personal knowledge developed during the course of my working with personnel, associated with the Trust, the TOC, the claims administration, and other professionals working with the Fire Victims Trust; b) my review of relevant documents and/or my professional opinion based upon my experience. If called to do so I would competently testify as to the facts set forth in this declaration.

3. After the plan was confirmed and the Fire Victims Trust was established this office was assigned a third year student as claims manager. Contact with the claims administration was through the claims manager. After the first claims manager finished law school we were assigned a new third year law student. The claims manager we now have is our third one. The main function of the claims manager was to take our questions or concerns and relay them to someone we were never allowed to talk to.

4. According to the claim, Sayegh Brothers owned 29,000 square feet in a larger shopping center which they leased to three tenants, two of which had 12 years remaining at the time the property was destroyed. The capitalized value of the leasehold interest on the day of the fire was $3,307,769. Their claim for that amount was submitted to the trust on November 24, 2020. Exhibit      .

5. May 25, 2021 the Trust published a modification to the CRP adding a special valuation procedure for business income loss claims where the claim is based on negligence.

6. Attached hereto as Exhibit A is a true and correct

-2-

ZINK & LENZI
ATTORNEYS AT LAW

1  copy of the "BIL Eligibility Criteria."

2      7.  On July 21, 2022 the Trust issued a determination

3  notice on the Sayegh claim. The claim was calculated by using

4  the "eligibility criteria" valuation process of projecting

5  future income based on pre fire tax returns and capping the

6  loss period at four years.

7      8.  Attached hereto as Exhibit C is a true and correct

8  copy of the Determination Notice.

9      9.  I filed a request for reconsideration presenting two

10  points.  1.  A leasehold interest is an interest in property

11  and for a loss caused by inverse condemnation must be valued

12  according to California Eminent Domain procedures; 2.

13  projecting future income based on past income is a valuation

14  procedure rejected by California courts.

15      10.  Attached hereto as Exhibit D is a true and correct

16  copy of the request for reconsideration.

17      11.  The Reconsideration Determination dated March 3, 2023

18  confirmed the original determination as well as the valuation

19  procedures of the "BIL Eligibility Criteria."

20      12.  Attached hereto as Exhibit E is a true and correct

21  copy of the Reconsideration Determination.

22      13.  The Reconsideration Determination was simply

23  incomprehensible.  I contacted my claims manager, the claims

24  administrator, David Molton, and the TOC asking for help with a

25  valuation process used by the Trust, that seemed to violate

26  California law.

27      14.  Attached hereto as Exhibit F-I are true and correct

28  copies of communications to:

-3-

F. Claims Manager

G. Claims Administrator

H. David Molton, Fire Victims Trust Attorney

I. Trust Oversight Committee

15. I received only one response to my requests for help. On March 23, 2023 the Claims Administrator, in an email, joined by the Trustee, stated: "We must consistently apply the provisions of the Fire Victims Trust agreement, claims resolution procedure, and the eligibility criteria to all claims and claimants."

16. A true and correct copy of the March 23, 2023 email from the Claims Administrator is attached as Exhibit J.

17. The email suggests that there were other claimants similar to the Sayegh Brothers that had their leasehold interests valued according to the Trust eligibility criteria instead of California law of Eminent Domain. But what exactly it meant was unclear.

18. On April 25, 2023, I sent a letter via email to Steven Skikos asking if he could explain what the Trust was doing with the valuation of long term leases. Mr. Skikos did not respond.

19. A true an correct copy of the April 25, 2023 letter is attached hereto as Exhibit K.

20. At no time did a person associated with the Trust, the TOC or the claims administration inform me that the new eligibility criteria used by the trust had been approved by the Bankruptcy court for use on claims arising under inverse condemnation.

-4-

**ZINK & LENZI**
ATTORNEYS AT LAW

1    21.   The appeal was conducted via Zoom on August 15, 2023.
2  Judge Hight opened the hearing by stating that the procedure
3  the Trust is using was approved by the bankruptcy court
4  therefore the appeal is denied.  Later that day I sent the
5  neutral copies of emails I had with our claims manager that
6  indicate the earliest record of the BIL Eligibility Criteria
7  was May 25, 2021.

8    22.   A true and correct copy of the August 15, 2023 email
9  sent to Judge Hight is attached hereto as Exhibit L.

10    23.   The claims filed by this office involving damage to
11  real property such as homes received a damage award that
12  included attorney fees and interest from day of the fire.

13    I declare under penalty of perjury under the laws of the
14  United States of America that the foregoing is true and
15  correct.

16    Executed at Chico, California on February *13*, 2024.

17
18                                  *Michael R Bush*
19                           MICHAEL R. BUSH
20
21
22
23
24
25
26
27
28

-5-

1                            Exhibit A

 
**Eligibility Criteria for Business Income Loss**

The Trust will evaluate claims for economic losses suffered by businesses as a result of the Fires. These awards are available for eligible business entities (*e.g.*, corporations, limited liability companies, partnerships, etc.) ("Business Entities") and individual claimants operating as sole proprietors and/or independent contractors who reported income and expenses on a Schedule C, rental income on a Schedule E, or farm income on a Schedule F filed with their federal income tax return in the year of the applicable Fire ("Sole Proprietors").

Claimants may assert one claim for Business Income Loss ("BIL") for every facility of the business that experienced an eligible loss because of a Fire ("Loss Location"). For a Sole Proprietor whose business is associated with the business owner's home address, the Loss Location would be the physical location of the business owner's home.

Additionally, the Trust has considered the implication of the decision in *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 247 Cal. Rptr. 3d 632, 441 P.3d 881 (2019), which upholds the common law doctrine that bars plaintiffs from recovering pure economic losses under a negligence theory without personal injury, property damage or a special relationship (the "Economic Loss Rule"). The Trust has incorporated the Economic Loss Rule in these Eligibility Criteria for BIL claims in two primary ways. First, the Trust requires that claimants establish that they suffered a personal injury or property damage that has directly resulted in their economic loss to have a compensable BIL claim. Second, the Trust imposes limits on the periods of time after the applicable Fire over which it will calculate an eligible claimant's losses ("Loss Periods"), under the theory that Loss Periods should be reasonably tailored to account for a specific claimant's losses attributable directly to the Fire, and not for the broader effects of the Fire to the economy of the region as a whole. For all BIL claim categories, claimants must establish the causal relationship between the injury or property damage claimed and the Business Income Loss claimed, together with the amount of the loss related to the property damage or injury.

Specific documentation required or permitted is listed below to assist claimants in presenting the information needed to fully document the claim and facilitate review. In addition to these suggested documents or required documents, claimants are encouraged to submit profit and loss summaries or reports, financial statements or similar documentation derived from business accounting systems or prepared in connection with the claim, financial reports and/or loss calculations prepared by outside accountants and/or experts or by insurance carriers in connection with claims for insured business losses.

Given all of the foregoing, the Trust will evaluate BIL claims according to the following criteria:

I.     **Tier I – General Review.** This review criteria applies to all claimants whose claims or specific industry do not require the individualized review described in Tiers II or III, as described below. In select instances, the Trust may determine that claims otherwise reviewable in Tier I will require individualized review based upon an annual revenue in the calendar year preceding the Fire, or other unique claims attributes that the Trust determines require individualized review of the claim.

1



**A. Category A (Sole Proprietor with Minor Personal Injury).**

1. <u>Nature of Loss</u>.  Claimants who are Sole Proprietors and who establish that they have suffered minor personal injury caused by the Fire in the form of emotional distress or a minor physical injury that required medical treatment will be evaluated under Tier I Category A.  Examples of minor physical injuries subject to evaluation under Tier I Category A include smoke inhalation, minor evacuation injuries (*e.g.*, abrasions/cuts/bruises) and minor musculoskeletal injury, provided that all such injuries must be supported by documentation of treatment by a healthcare provider.

2. <u>Loss Period</u>.  For claimants in Tier I Category A, the Loss Period is the period of time that the claimant was unable to work because of injuries suffered as a result of the Fire, which shall not exceed **30 days**.

3. <u>Required Documents</u>.  Claimants in Tier I Category A must provide documentation sufficient to establish the existence of their injury, including proof of medical treatment related to the injury; documentation establishing the relationship between the injury and the claimed monetary loss; and documentation establishing the amount of loss claimed, as specified in detail below:

    (a)  Documentation to establish the nature of the loss, as set forth in Section I.A.1.

        (1) Supporting documentation for claimants who allege they suffered minor physical injury that required medical treatment that has directly resulted in their economic loss. Examples include:

            a. Medical records related to the injury, including medical records from a treating physician or healthcare provider showing a diagnosis and prognosis must be provided (medical opinion establishing causation between the injury and loss is encouraged);
            b. Medical bills related to the injury;
            c. Written narratives detailing how the claimant's injury has directly resulted in their economic loss, which supplements the medical information provided; and/or
            d. Photos or videos depicting the claimant's injury, which supplements the medical information provided.

        (2) Supporting documentation for claimants who allege they suffered emotional distress that (1) required medical treatment or counseling from a healthcare provider, and (2) which has directly resulted in their economic loss. Examples include:

            a. Medical/counseling records describing consultation or treatment for mental health or emotional conditions that has directly resulted in

2


their economic loss must be provided (professional opinion establishing causation between the injury and loss is encouraged);

b.  Documentation of medical and counseling expenses; and

c.  Other supporting documents including narratives or descriptions detailing the claimant's mental anguish, pain and suffering, and inconvenience suffered as a result that has directly resulted in their economic loss, which supplements the medical or counseling information provided.

(b)  Claimants in Tier I Category A (minor physical injury or emotional distress) are required to provide annual federal tax returns or, if the claimant is a Sole Proprietor, the Schedule C, E or F from such returns together with the Form 1040, only for (1) the calendar year immediately preceding the applicable Fire, and (2) the calendar year of the applicable Fire. For claimants in Tier I Category A (minor physical injury or emotional distress), where such tax documentation does not exist, the Trust, in its discretion, may consider alternative documentation of income loss provided such documentation establishes past income history and loss for the period claimed. Such documents may include banking or other information showing historic and post-injury revenue, invoices or other documentation establishing business expenses and similar source documentation.

(c)  Documentation of insurance limits, broken down by coverage type (*e.g.*, business interruption, business personal property, etc.) and Loss Location (as applicable).

(d)  Documentation of insurance payments received, broken down by coverage type and Loss Location (as applicable).

(e)  Documentation of FEMA funds received, broken down by FEMA payment category (as applicable).

(f)  Documentation to establish the nature of the claimant's business/industry.

(g)  Documentation to establish the claimant's Loss Location(s).

(h)  Documentation of any extraordinary losses, such as receipts or accounting statements documenting lost inventory, equipment/property repair, or other additional expenses associated with the Fire (as applicable).

**B.  Category B (Minimal Property Damage).**

1.  <u>Nature of Loss</u>. Claimants will be evaluated under Tier I Category B if they establish the damage they suffered as a result of the Fire, which has directly resulted in their economic loss, is:

(a) Smoke and soot damage to real property they own, lease, rent or otherwise legally control; or

(b) Damage to personal property they own, lease, rent or otherwise legally control.

2. <u>Loss Period</u>. The Loss Period for claimants in Tier I Category B shall not exceed **30 days**.

3. <u>Required Documents</u>. Claimants in Tier I Category B must provide documentation from third-party sources or verifiable business records to establish entitlement to make the claim, including evidence of ownership of or agency status for the business entity and related property which sustained the damage. Examples include:

(a) Documentation from independent third-party sources (except where otherwise noted) to establish that the loss is compensable as set forth in Section I.B.1. Examples include:

    (1) Verification of ownership and, where appropriate, agency status;

    (2) Appraisals;

    (3) Tax records;

    (4) Purchase records and proofs of purchase;

    (5) Mortgage or loan documentation showing the pre-Fire condition or value of the property;

    (6) Pre-Fire and post-Fire photos or videos of the structures (interior or exterior) or other damaged areas of the property (which are not required to be from an independent third-party);

    (7) Architectural or engineering drawings;

    (8) Permits;

    (9) Contractor rebuild or repair estimates or invoices;

    (10) Arborist reports, timber surveys, or documents relating to landscaping;

    (11) Lists of personal property destroyed or damaged (which are not required to be from an independent third-party); and

    (12) Other supporting documents within the claimant's possession.

(b) For Business Entities, documentation to verify formation and ownership of the business (if applicable), such as:

    (1) Articles/Certificate of Incorporation/Organization;

    (2) Corporate Bylaws;

    (3) Operating Agreement;

    (4) Corporate Resolutions;

    (5) Shareholder Lists;

    (6) Partnership Agreements;

4


    (7)    Copies of readily verifiable public records such as downloadable reports from the Secretary of State or local regulatory authority websites, business licenses and similar reliable documentation; and

    (8)    Other documents to establish legal ownership and/or agency status of individuals submitting a claim on behalf of the Business Entity.

(c)    For Business Entities required to file entity tax returns, annual federal tax returns, including all Schedules and Attachments (*e.g.*, Schedules K-1 for Form 1065 or Form 1120S, etc.), for (1) all calendar years included in the selected Benchmark Period and (2) the calendar year of the applicable Fire.

(d)    For Sole Proprietors reporting income on a Schedule C, E or F attached to a Form 1040, such schedules and Form 1040s for (1) all calendar years included in the selected Benchmark Period and (2) the calendar year of the applicable Fire.

(e)    The required documents enumerated in Section I.A.3(c) through I.A.3(h), as applicable.

## C. Category C (Significant Property Damage).

1.    <u>Nature of Loss</u>.  Claimants will be evaluated under Tier I Category C if they establish they suffered burn damage caused by the Fire to real property that is owned, leased, rented or otherwise under the legal control of the claimant resulting in a loss of the structure or the use of the structure that has directly resulted in their economic loss.

2.    <u>Loss Period</u>.  The Loss Period for claimants in Tier I Category C will gradually be capped over time as follows:

(a)    For claimants with losses resulting from the **Butte or North Bay Fires**:

    (1)    Losses calculated during the first 12 months after the Fire will be calculated at 100% of actual documented losses.

    (2)    Losses calculated during the period starting 13 months after the Fire through 18 months after the Fire will be capped at 75% of actual documented losses.

    (3)    Losses calculated during the period starting 19 months after the Fire through 24 months after the Fire will be capped at 50% of actual documented losses.

    (4)    Losses calculated during the period starting 25 months after the Fire through 30 months after the Fire will be capped at 25% of actual documented losses.

    (5)    Losses calculated during the period starting 31 months after the Fire through 36 months after the Fire will be capped at 15% of actual documented losses.

5


(6) Losses asserted after 36 months after the Fire will not be compensable.

(b) For claimants with losses resulting from the **Camp Fire**:

    (1) Losses calculated during the first 12 months after the Fire will be calculated at 100% of actual documented losses.

    (2) Losses calculated during the period starting 13 months after the Fire through 18 months after the Fire will be capped at 75% of actual documented losses.

    (3) Losses calculated during the period starting 19 months after the Fire through 24 months after the Fire will be capped at 60% of actual documented losses.

    (4) Losses calculated during the period starting 25 months after the Fire through 30 months after the Fire will be capped at 40% of actual documented losses.

    (5) Losses calculated during the period starting 31 months after the Fire through 36 months after the Fire will be capped at 30% of actual documented losses.

    (6) Losses calculated during the period starting 37 months after the Fire through 48 months after the Fire will be capped at 20% of actual documented losses.

    (7) Losses asserted after 48 months after the Fire will not be compensable.

(c) The table below illustrates these "Loss Period Caps" by Fire for claimants in Tier I Category C:

| Fire | 1 - 6 Months | 7 - 12 Months | 13 - 18 Months | 19 - 24 Months | 25 - 30 Months | 31 - 36 Months | 37 - 48 Months |
|------|------|------|------|------|------|------|------|
| Butte | 100% | 100% | 75% | 50% | 25% | 15% | 0% |
| North Bay | 100% | 100% | 75% | 50% | 25% | 15% | 0% |
| Camp | 100% | 100% | 75% | 60% | 40% | 30% | 20% |

3. <u>Required Documents</u>. Claimants in Tier I Category C must provide the following required documents to support their claim:

(a) Documentation to establish the nature of the loss as described in Section I.C.1.

(b) The business entity documentation as described for claimants in Tier I Category B, as set forth in Section I.B.3, as pertinent to the claimant.

(c) For Business Entities required to file entity tax returns, annual federal tax returns, including all Schedules and Attachments (*e.g.*, Schedules K-1 for Form 1065 or Form 1120S, etc.), for (1) all calendar years included in the

6


selected Benchmark Period; (2) the calendar year of the applicable Fire; and (3) the calendar years included in the Loss Period.

(d) For Sole Proprietors reporting income on a Schedule C, E or F attached to a Form 1040, such schedules and Form 1040s for (1) all calendar years included in the selected Benchmark Period; (2) the calendar year of the applicable Fire; and (3) the calendar years included in the Loss Period.

(e) The required documents enumerated in Section I.A.3(c) through I.A.3(h), as applicable.

**D. Compensation Framework.** For claimants who establish a compensable loss and provide the required documents as set forth above, the Trust will calculate the difference between Predicted Post-Fire Income and Actual Post-Fire Income.

1. <u>Predicted Post-Fire Income</u>: Calculated as average pre-fire income over the Benchmark Period for the applicable Fire, applying an annual growth rate of 2% per year based on CPI data. If the claimant provides supporting documentation for more than one Benchmark Period year, the Trust will determine and use the Benchmark Period that maximizes the claimant's award.

   (a) Benchmark Periods for **Butte**. Claimants must select one of the following Benchmark Periods by providing the required supporting documentation over the included calendar years:

      (1) 2014
      (2) Average of 2013 and 2014
      (3) Average of 2012, 2013 and 2014

   (b) Benchmark Periods for **Camp**. Claimants must select one of the following Benchmark Periods by providing the required supporting documentation over the included calendar years:

      (1) 2017
      (2) Average of 2016 and 2017
      (3) Average of 2015, 2016 and 2017

   (c) Benchmark Periods for **North Bay**. Claimants must select one of the following Benchmark Periods by providing the required supporting documentation over the included calendar years:

      (1) 2016
      (2) Average of 2015 and 2016
      (3) Average of 2014, 2015 and 2016



      2. <u>Actual Post-Fire Income</u>:  Actual post-fire revenues less operating expenses/costs over the Loss Period.

## II.   <u>Tier II – Individualized Review.</u>

    **A. Applicable Claimants.** This review criteria applies to claimants that are not in Tier III and satisfy one or more of the following:

      1. Claimants with annual revenue in the calendar year preceding the Fire that exceeds a threshold amount, to be determined by the Trust.

      2. Claimants who request Individualized Review in their Request for Reconsideration.

      3. Claimant requests for individualized review will be considered at the discretion of the Trust.

      4. Claimants with insufficient historical data (*i.e.*, start-up businesses).

      5. Claimants with multiple Loss Locations.

      6. Claimants who are Sole Proprietors and who establish that they have suffered personal injury caused by the Fire in the form of severe emotional distress or a severe physical injury that required significant medical treatment.

    **B. Nature of Loss.** Claimants in Tier II must provide documentation from independent third-party sources that they have suffered the described property damage or, in the case of Sole Proprietors, personal injury or property damage, that has directly resulted in their economic loss.

    **C. Loss Periods and Loss Period Caps.** The Loss Periods and Loss Period Caps for claimants in Tier II will be as set forth in Section I.C.2. above, unless the Trust determines that a different Loss Period or Loss Period Cap is required based on documentation submitted by the claimant.

    **D. Required Documents.** Claimants in Tier II must provide the following required documents to support their claim:

      1. Documentation to establish the nature of the compensable loss, as set forth in Section II.B.

      2. All of the remaining Documentation Requirements for claimants in Tier I Category B, as set forth in Section I.B.3.

5/25/21
Case: 19-30088    Doc# 14319-1    Filed: 02/20/24    Entered: 02/20/24 11:44:59    Page 14 of 63



**E. Additional Documents.** Depending on the specific facts and circumstances, claimants in Tier II may be required to provide the following additional documents ("Additional Documents"):

1. Annual and monthly Profit and Loss statements, contemporaneously prepared and specifying the basis of accounting used, for the Benchmark Period, Loss Period, and any other period deemed necessary by the Trust. The Trust may also require claimants to produce source documentation to support financial statements, including banking records, receipts, contracts, invoices, and similar information. If a claimant did not maintain contemporaneous profit and loss information, the Trust may require source documentation verifying gross revenues and expenses during relevant periods, such as banking records showing business deposits, canceled checks, invoices or other records showing expense payments, copies of contracts, or other information.

2. Annual Federal Tax Returns, including all relevant Schedules and Attachments (*e.g.*, Schedules C, E or F for Form 1040, Schedule K-1 for Form 1065 or Form 1120S, etc.), for certain calendar years preceding the selected Benchmark Period.

3. Any existing financial statements, audited or reviewed in accordance with GAAP, for the Benchmark Period and the Loss Period.

4. State or federal regulatory filings.

5. Documentation provided to the claimant's insurer to support insurance claims.

6. Insurance carrier "audits" or reports calculating business income losses compensable under an applicable insurance policy.

**F. Optional Documents.** Claimants in Tier II may provide the following documents to support BIL claims ("Optional Documents"):

1. Expert reports and damage calculations with supporting information and/or relevant analysis and assumptions, if any, including "audit" reports prepared by insurers and/or their agents.

2. Budgets, if prepared contemporaneously, including budget-to-actual analysis and comparisons.

**G. Compensation Framework.** For claimants who establish the nature of the compensable loss and provide the required documents and Additional Documents, as applicable, set forth above, the Trust will calculate the difference between Predicted Post-Fire Income and Actual Post-Fire Income.

1. <u>Predicted Post-Fire Income</u>: Calculated as average pre-fire income over the Benchmark Period for the applicable Fire, applying an annual growth rate that is

9



individually calculated based on the historical data or a business plan provided by the claimant.

2. <u>Actual Post-Fire Income</u>: Actual post-fire revenues less operating expenses/costs over the Loss Period.

**III.** **Tier III – Specialized Industry Review.**

**A. Applicable Claimants.** This review criteria applies to claimants in certain specialized industries, such as the following:

1. Vineyards / Wineries
2. Mobile Home Parks
3. Golf Courses
4. Agriculture

**B. Nature of Loss.** Claimants in Tier III must provide documentation from independent third-party sources that they have suffered property damage or personal injury that has directly resulted in their economic loss.

**C. Loss Periods and Loss Period Caps.** The Loss Periods and Loss Period Caps for claimants in Tier III will be as set forth in Section I.C.2. above, unless the Trust determines that a different Loss Period or Loss Period Cap is required based on documentation submitted by the claimant.

**D. Required Documents.** Claimants in Tier III must provide the following required documents to support their claim:

1. Documentation to establish the nature of the compensable loss, as set forth in Section III.B.

2. All of the remaining Documentation Requirements for claimants in Tier I Category B, as set forth in Section I.B.3.

**E. Additional Documents.** Depending on the specific facts and circumstances, claimants in Tier III may be required to provide and may submit the Additional Documents enumerated in Section II.E.

**F. Optional Documents.** Claimants in Tier III may provide Additional Documents as listed in Section II.E and/or the Optional Documents enumerated in Section II.F, at their own discretion.

**G. Compensation Framework.** For claimants who establish the nature of a compensable loss and provide the required documents and Additional Documents, as applicable, set forth above, the Trust will calculate the difference between Predicted Post-Fire Income and Actual Post-Fire Income.

10



1. <u>Predicted Post-Fire Income</u>: Calculated as average pre-fire income over the Benchmark Period for the applicable Fire, applying an annual growth rate that is individually calculated based on the historical data or a business plan provided by the claimant.

2. <u>Actual Post-Fire Income</u>: Actual post-fire revenues less operating expenses/costs over the Loss Period.

**IV.** **Expedited BIL Review.** Claimants may qualify for an expedited review, which requires less supporting documentation and results in $10,000 awards for BIL claims ("Expedited BIL Review"). To qualify for Expedited BIL Review, the claimant must satisfy these criteria:

**A.** The claimant must request Expedited BIL Review.

**B.** The claimant must establish that they suffered a personal injury or property damage that has directly resulted in their economic loss.

**V.** **Offsets.** The following amounts will be offset from all calculated awards for BIL:

**A. FEMA Payments.** Prior payments from FEMA will be offset against BIL claim awards if the Trust determines that the FEMA payment was intended to compensate the claimant for the same losses as the BIL claim.

**B. Available Insurance Recoveries.** To the extent the BIL claim represents losses covered by a policy of insurance, the BIL claim will be reduced by all insurance coverages available to the claimant on account of such losses. Examples of applicable insurance coverages include, but are not limited to (1) business interruption loss coverage, (2) business interruption loss – extra expense coverage, (3) business interruption insurance – evacuation expense coverage, (4) business personal property coverage and (5) rental income loss coverage.

**VI.** **Ineligible Claimants.** Claimants will not be eligible for BIL compensation in the following circumstances:

**A. Lack of Causation.** Claimants that the Trust determines did not suffer property damage or personal injury as a result of the applicable Fire that has directly resulted in their economic loss will be ineligible for BIL compensation.

**B. Business Not Operating at the Time of the Fire.** Claimants that the Trust determines were not doing business at the time of the applicable Fire will be ineligible for BIL compensation.

1                                    <u>Exhibit B</u>
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



# NOTICE OF TRUSTEE DETERMINATION

## DATE OF NOTICE: 9/8/2023

### I. INTRODUCTION

This Notice is an official communication from the Claims Processor for the Fire Victim Trust. The Fire Victim(s) identified in Section II below submitted an appeal as described in Section III below from the Claims Administrator's Reconsideration Determination. The Appeals Neutral assigned to hear this appeal issued their recommendation(s) to the Trustee. After considering the Appeals Neutral's recommendation(s), the Trustee made the final determination(s) set ou in Section IV below.

### II. FIRE VICTIM INFORMATION

| Claimant(s): | Sayegh Brothers, Inc. |
|---|---|
| CQ ID: | 10000857 |
| Law Firm: | Zink & Lenzi |

### III. CLAIM(S) APPEALED

| Claim ID | Claim Type | Pre-Appeal Claims Administrator Reconsideration Determination |
|---|---|---|
| 15749 | Business Income Loss | $527,538.61<br>(Subject to ownership percentage and Pro Rata Distribution) |

### IV. TRUSTEE DETERMINATION(S)

| Claim ID | Claim Type | Trustee Determination |
|---|---|---|
| 15749 | Business Income Loss | $527,538.61<br>(Subject to ownership percentage and Pro Rata Distribution) |
| Trustee Rationale: | The Trustee approves the Appeals Neutral's determination. | |



CQ ID: 1000085



# NOTICE OF TRUSTEE DETERMINATION

| Appeals Neutral Rationale: | Claimant appeals the Trust's determination of its lost rent on 3 commercial leases based on two grounds: |
|---|---|
| | 1. The trust used the valuation method, which was calculated based on Claimant's Federal Income Tax Statement's profit & loss statement to determine the amount which should be compensated for the loss of the 3 long term leases, instead of following established criteria for loss of property due to Eminent Domain/Inverse Condemnation. |
| | 2. Claimant's leases had 164 months to run before expiration. The Trust only allowed 48 months under its "Loss Period Caps". Claimant believes it is entitled to the full 164 months. |
| | As explained below, the FMV derived by either valuation method makes virtually no difference when applying the Trust's Business Income Loss Eligibility Criteria. That Criteria limit losses to 48 months pursuant to the Trust's established procedures. |
| | Claimant claims a FMV of the leases of $3,307,769. Applying the Trust's "Loss Period Caps" to that number Claimant would be entitled to $514,281. (This number is derived by dividing $3,307,769 by 164 months, the term of the leases, which equals $20,169 per month) Computing the loss over the Trust's 48 months allowable loss at the rate of $20,169 per month results in $514,281 due to Claimant. The Trust has determined the loss to be $527,538.61. Thus, applying the Trust's rules, Claimant is being awarded $13,257 more under the Trust's calculations than under its calculations. |
| | Claimant further alleges that other claimants have been allowed more than the 48 months set forth in the Trust's Business Income Loss Eligibility Criteria. This reviewer could find no applicable substantiation of this claim. |
| | For the above reason this appeal is affirmed. |

## V. FINAL CQ OUTCOME

| Claim ID | Claim Type | Final Amount (Subject to Pro Rata Distribution) |
|---|---|---|
| 15749 | Business Income Loss | $527,538.61 |
| 131072 | Other Damages | $0.00 |
| Total | | $527,538.61 |

## VI. IMPORTANT INFORMATION ABOUT APPEALS, PAYMENTS AND LIENS





# NOTICE OF TRUSTEE DETERMINATION

**Appeal:** The Trustee's Determination above is final, binding, and non-appealable and is not subject to review by any Court.

**Pro Rata Payments:** Click here to read about the payment information required from each Fire Victim before the Trust can pay any pro rata amounts allowed under this Trustee Determination Notice, and the methodology for issuing pro rata payments on Approved Claims.

**Credits, Liens and Taxes:** Click here to read about any amounts the Trustee is required to deduct from this determination as required under Article XII of the Claims Resolution Procedures. Go to your Portal to see live information about any medical reimbursement obligations and to determine your potential holdbacks or final repayment amounts for any Medicare, Medicare or private health insurance reimbursement obligations.

**Minors or Incapacitated Adults:** Click here to read about the Special Master review process required before the Trust can pay any amounts allowed under this Trustee Determination Notice to a Minor or Incapacitated Adult Fire Victim.



CQ ID: 1000085

Exhibit C



| DATE OF NOTICE: 7/21/22 |
|---|
| RESPONSE DEADLINE: 8/22/22 |

## I. DETERMINATION NOTICE

This Notice is an official communication from the Claims Processor for the Fire Victim Trust (the "Trust") and relates to the Fire Victim(s) identified in Section II below. This Determination Notice summarizes the aggregate settlement offer for your submitted claims from the Claims Questionnaire ("CQ").

## II. FIRE VICTIM INFORMATION

| Claimant(s): | Sayegh Brothers, Inc. |
|---|---|
| CQ ID: | 10000857 |
| Law Firm: | Zink & Lenzi |
| Aggregate Claim Amount:<br>(subject to pro rata distribution) | $527,538.61 |

## III. IMPORTANT INFORMATION ABOUT RECONSIDERATION, APPEALS, PAYMENTS AND LIENS

**Reconsideration and Appeal**: Click here to read about how you can request Reconsideration or appeal the determination to a Neutral if you are dissatisfied with the award or calculation methodology.

**Pro Rata Payments:** Click here to read about the payment information required from each Fire Victim before the Trust can pay any pro rata amounts allowed under this Determination Notice, and the methodology for issuing pro rata payments on Approved Claims

**Credits, Liens, and Taxes:** Click here to read about any amounts the Trustee had to deduct from this determination as required under Article XII of the Claims Resolution Procedures. Go to your Portal to see live information about any medical reimbursement obligations and to determine your potential holdbacks or final repayment amounts for any Medicare, Medi-Cal, or private health insurance reimbursement obligations.

**Minors or Incapacitated Adults:** Click here to read about the Special Master review process required before the Trust can pay any amounts allowed under this Determination Notice to a Minor or Incapacitated Adult Fire Victim.


Case: 19-30088   Doc# 14319-1   Filed: 02/20/24   Entered: 02/20/24 11:44:59   Page 23 of 63



# DETERMINATION REPORT

## DATE OF REPORT: 7/21/22

### I. BUSINESS INCOME LOSS CLAIM INFORMATION

| Claimant Name(s): | Sayegh Brothers, Inc. | | |
|---|---|---|---|
| **Claimant ID:** | 1049616 | **Claim ID:** | 15749 |
| **Claim Questionnaire ID:** | 10000857 | | |
| **Law Firm:** | Zink & Lenzi | | |
| **Loss Location Address:** | Street<br>6026 Clark Rd Ste B | | Apt/Suite/Lot/Number |
| | City<br>Paradise | State<br>California | Zip Code<br>95969-4186 |
| | County<br>Butte | APN<br>053-103-037-000 | Fire<br>Camp |

### II. DETERMINATION AND CLAIM AWARD

Business Income Loss claims include claims for economic losses suffered by a business as a result of the Fires, including loss of business property or inventory used to conduct business and lost profits, to the extent permitted by California law.

[Aft]er reviewing all submitted documents, the Trust has made the following determination for the Business Income Loss [cl]aim you asserted.

| Review Criteria: | Tier I - General Review |
|---|---|
| **Category:** | Severe Property Damage |
| **Net Claim Award for Business Income Loss:** | $527,538.61 |

### III. BUSINESS INCOME LOSS AWARD AND CALCULATION

#### A. Income Loss Calculation

| | | |
|---|---|---|
| 1. | Benchmark Period: | 2017 |
| 2. | Average Annual Net Profit Over Benchmark Period: | $67,648.00 |
| 3. | Estimated Annual Growth Rate | 2.00% |
| 4. | Loss Period Start Month: | November 2018 |
| 5. | Loss Period End Month: | October 2022 |
| 6. | Number of Months in Loss Period: | 48 |
| 7. | Net Losses Over Loss Period: | $727,538.61 |
| | Less Insurance Paid: | ($200,000.00) |

Case: 19-30088    Doc# 14319-1    Filed: 02/20/24    Entered: 02/20/24 11:44:59    Page 24 of 63


| | | |
|---|---|---|
| 9. | Less Additional Insurance Recovery Available: | ($0.00) |
| 10. | Net Income Loss Award: | $527,538.61 |
| | **B. Total Business Income Loss Claim Award** | |
| 1. | Total Claim Award for Business Income Loss: (Greater of the sum of totals above or $10,000): | $527,538.61 |
| 2. | Claimant's Ownership Share: | 100.00% |
| 3. | Net Claim Award for Business Income Loss: | $527,538.61 |


Case: 19-30088   Doc# 14319-1   Filed: 02/20/24   Entered: 02/20/24 11:44:59   Page
25 of 63



# DETERMINATION REPORT

DATE OF REPORT: 7/21/22

## I. OTHER DAMAGES CLAIM INFORMATION

| | | | |
|---|---|---|---|
| **Claim ID:** | 131072 | **Claim Questionnaire ID:** | 10000857 |
| **Claimant Name(s):** | Sayegh Brothers, Inc. | | |
| **Law Firm:** | Zink & Lenzi | | |

## II. SUMMARY OF OTHER DAMAGES ASSERTIONS

The Trust reviews and considers all claims for damages and costs recoverable under California law or, if applicable, other non-bankruptcy law. Damages asserted in the Other Damages section of the Claims Questionnaire but eligible within a Claim Type enumerated in Section II of the Claims Resolution Procedure (*e.g.*, Real Property, Emotional Distress, Business Income Loss) will be reclassified to the appropriate Claim Type and considered there. Asserted damages not specifically contemplated in other Claim Types are evaluated as part of an Other Damages Claim.

The table below identifies the assertions made in the Other Damage section of your Claims Questionnaire and the determination for each. For any assertions identified as Considered in Other Claim Type, the attachment for that Claim Type includes additional information on the determination and corresponding award amounts.

| ASSERTION | DETERMINATION | AMOUNT |
|---|---|---|
| All claims for damages, attorneys' fees, costs, or interest under any ...ate or other legal theory which are asserted under this Other Damages claim type, other than as specifically noted in this Determination Notice or as otherwise published by the Trust, are denied | Denied | $0.00 |
| Attorneys' fees, costs, and prejudgment interest related to inverse condemnation of property | Denied | $0.00 |
| **Claim Award:** | | $0.00 |

Attorneys' fees, costs, and prejudgment interest related to inverse condemnation of property are not available absent a compensable claim for property damage asserted on this or a related Claims Questionnaire.

1

Exhibit D

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# REQUEST FOR RECONSIDERATION

| | |
|---|---|
| Claimant: | Sayegh Brother Inc |
| Claimant ID: | 1049616 |
| Claim ID: | 15749 |
| CQ ID: | 10000857 |
| Determination: | 7/21/22 |

This request for reconsideration asks The FVT to reconsider the methodology it used as it attempted to evaluate the loss suffered by the Sayegh brothers. The calculations made by the TRUST using the profit and loss statements on their Federal tax returns is not a procedure sanctioned by the California legislature for this type of situation and furthermore it is a method criticized and rejected by California Courts. The method used by the TRUST is improper according to California statutory and decisional law and also inconsistent with the principle of just compensation under The Fifth Amendment of the U.S. Constitution and article 1 section 19 of the California Constitution.

Not only is the methodology used by the TRUST improper but also and more importantly the determination notice fails to address or even discuss the fact that the taking by inverse condemnation terminated two long term leases as well as the pocket to pocket lease of the liquor store. Perhaps these failures are a result of the fact that the claims questionnaire does not have a category in its business loss section that recognizes the possibility that the income loss is based on an interest in land. "The landlords right to receive future rents is an interest in land. It is an incorporeal hereditament." Callahan v. Martin (1935) 3 Cal.2d.110,124.

PG&E's admitted negligence might be a sufficient legal basis to support the trust fund's use of past businesses profits as a measurement of future businesses income loss in some cases. However the Sayegh brothers claim is not based on negligence, it is based on the taking of property (by inverse condemnation). The property happened to be subject to long term leases on the day of the taking. Their claim is governed by the principles and procedures of Eminent Domain, Customer Co. v City of Sacramento (1995) 10 Cal. 4th. 365, 377 and in such proceedings "Lost business profits are not compensable as an element of damages" San Diego Gas and Electric Co. V. Schmidt (2014) 228 Cal App. 4th. 1280, 1290.

In the context of Eminent Domain's goal of determining the amount of just compensation, California courts have long rejected evidence of future business income, basically because it is subject to so many variables. It is too conjectural and speculative, City of Stockton v. Albert Brocchini Farms (2001) 92. Cal App. 4th. 193, 199. A defendant (ie Sayegh) "may not present evidence of income from a business that is conducted on the condemned property, but may offer proof of rental income from the property itself"(Emphasis added) Brocchini supra. See also, People ex rel. Dept of Public Works v. Dunn, (1956) 46. Cal. 2d. 639, 641.

1

By using an improper and unsanctioned method, the Trust Fund arrived at a monetary damage figure that is about 85% less than what is needed to provide "just compensation" for the proven loss suffered by Sayegh brothers.

The claims questionnaire submitted by Sayegh Brothers contained evidence presented by an expert witness who used the methods sanctioned by the legislature. We are submitting with this reconsideration request an income capitalization appraisal also done according to statutory requirements. These two procedures were done independently yet came to similar conclusion that the compensable loss is greater than three million dollars.

That the procedures used by claimant are correct is confirmed by an appellate court decision that is considered the beginning of the modern era of California Eminent Domain Law.

People ex rel Department of Public Works v. Lynbar (1967) 253 Cal App. 2d. 870 is a case involving condemnation of property subject to a long term lease. The case arose in 1964 well before the legislature enacted the statutory scheme that controls Eminent Domain proceedings today. However by basing it's decision on the constitutional mandate of "just compensation" the appellate court arrived at a conclusion that is entirely consistent with the law as it stands today.

Lynbar owned a parcel of land that it leased to Tidewater Oil Company that ran a gas station under a long term lease. At the time of the taking the lease had 17 more years. The state offered to pay for the land and improvements but offered nothing for the leasehold interest.

There was some authority that the state claimed supported its position and the Eminent Domain statute, CCP §1246.1, was a little ambiguous, none the less the trail court ruled against the state on it's attempt to limit the valuation and the state appealed.

The appellate court found that just compensation means the full equivalent in money of the property taken, and that this amount is the market value of the property defined as the highest price which the property would bring between willing and knowledgeable sellers and buyers, and this measure applies to all the compensable attributes of the property such as the Tidewater leasehold interest Lynbar pp. 880-881 " If any compensable constituent element of value such as the Tidewater leasehold is omitted in arriving at just compensation this constitutional mandate has not been met." Lynbar p. 883.

There is no ambiguity under the statutory scheme that now exists. Leasehold interests are a type of property interest that must be compensated (CCP §§ 1235.125,170). The measure of value is Fair Market Value CCP 1263.310, 320.

The taking of the property terminates any lease related to it. CCP §§ 1265.110. While the termination of the lease ends the obligation of the lessee, the value of the unpaid term must be paid to the lessor by the entity that caused the taking Texas Co v. County of Los Angeles (1959) 52 Cal2d. 55,62.

2

As Lynbar was being decided the evidence code was amended to add provisions that apply to Eminent Domain proceedings. Section 817 shows that leasehold interests are compensable and provides in relevant part," when relevant to the determination of the value of property, a witness may take in to account as a basis for an opinion the rent reserved and other terms and circumstances of any lease which included the property or property interest being evaluated..."

Evidence code § 819 describes the particular valuation method that must be used in a case such as Sayegh brothers, where the taking is the rental value of the leasehold interest. "A witness may take into account as a basis for his opinion the capitalized value of the reasonable net rental value attributable to the land and existing improvements." Another term for capitalized value is "present value".

Along with the claims questionnaire and settlement demand the Sayagh brothers submitted as exhibit D, a spreadsheet that shows the capitalized value of the reasonable net rental value of what was lost. The notes to the document show that the rents were adjusted according to the terms of the leases and that the expenses were based in actual expenses. The capitalized or present value as of the date of the taking is $3,307,769.00, this figure was arrived at by utilizing a 10 year constant maturity treasury rate of 3.24%. The calculation also included as a deduction against income, the income loss payment made by the Sayegh brother's insurance policy.

Attached to this reconsideration request as exhibit A, in the original calculations as well as a statement of qualifications of the evaluator Steven Boyles and an email explaining why the particular rate was used.

The evidence of loss presented by the claimant is considerably more than the amount the trust determined but it is more in line with the evaluation done by the victims insurance company, $3,180,000. With regards to the amount of the leasehold interest, courts generally recognize that the value of long term leasehold interests can be as much as the value of the fee itself, DeLuz Homes Inc v. County of San Diego (1955) 45 Cal.2d. 546,570, Texas Co, Supra p. 62.

Attached to this reconsideration request as exhibit B is the insurance company appraisal which used the income capitalization approach.

The appraisal report states that the purpose is to determine the "retrospective market value of the leased fee interest of the subject property as of November 7, 2018". (p.1)

A leased fee estate is defined as "an ownership interest held by the lessor which includes the right to receive the contract rent specified in the lease..." (p.3)

It would seem self evident that the highest and best use of the property being in an existing shopping center would be to continue as a retail building. This appraisal does a 4 page analysis, pp 22-25, of all the relevant factors and concludes that the highest and best use is to continue as a retail building.

3

The part of the appraisal that uses the capitalization of reasonable rental income starts at page 32 and end on page 39 with value by direct capitalization of $3,180,000.00

The trust has before it two analytic procedures both consistent with statutory requirements, but they have some differences; claimant believes that the procedure used in the original claim is better mainly because it uses actual income and cost figures based on the actual income and expenses of the three leased properties. Each uses a different rate for discounting the income stream to a present value as of the day of the fire. Both rates are realistic and based on accepted methodologies. The aspect that makes the methodology used by claimant in the original demand more appropriate is that it included in its calculations the fact that the insurance company paid for one year of lost rental income.

Claimant contends that the trust must arrive at a valuation that is no lower than the valuation presented by the appraisal by BRI in the amount of $3,180,000.00.

Respectfully submitted,

MICHAEL R. BUSH

4

1                            <u>Exhibit E</u>



# RECONSIDERATION DETERMINATION NOTICE

| | |
|---|---|
| **DATE OF NOTICE: 3/3/23** | |
| **DEADLINE TO APPEAL : 4/3/23** | |

## I. DETERMINATION NOTICE

This Notice is an official communication from the Claims Processor for the Fire Victim Trust (the "Trust") and relates to the Fire Victim(s) identified in Section II below. This Reconsideration Determination Notice summarizes the aggregate amount for your submitted claims from the Claims Questionnaire ("CQ") after review of any new supporting proof and/or arguments made in the Reconsideration request.

## II. FIRE VICTIM INFORMATION

| Claimant(s): | Sayegh Brothers, Inc. |
|---|---|
| CQ ID: | 10000857 |
| Law Firm: | Zink & Lenzi |
| **Reconsideration Determination:** (subject to pro rata distribution) | $527,538.61 |

## III. IMPORTANT INFORMATION ABOUT RECONSIDERATION, APPEALS, PAYMENTS AND LIENS

**Appeal**: Click here to read about how you can appeal the determination to a Neutral if you are dissatisfied with the award.

**Pro Rata Payments**: Click here to read about the payment information required from each Fire Victim before the Trust can pay any pro rata amounts allowed under this Determination Notice, and the methodology for issuing pro rata payments on Approved Claims.

**Credits, Liens, and Taxes**: Click here to read about any amounts the Trustee had to deduct from this determination as required under Article XII of the Claims Resolution Procedures. Go to your Portal to see live information about any medical reimbursement obligations and to determine your potential holdbacks or final repayment amounts for any Medicare, Medi-Cal, or private health insurance reimbursement obligations.

**Minors or Incapacitated Adults:** Click here to read about the Special Master review process required before the Trust can pay any amounts allowed under this Determination Notice to a Minor or Incapacitated Adult Fire Victim.

Case: 19-30088     Doc# 14319-1     Filed: 02/20/24     Entered: 02/20/24 11:44:59     Page
33 of 63



# BUSINESS INCOME LOSS
# RECONSIDERATION DETERMINATION REPORT

## DATE OF REPORT: 3/3/23

## I. BUSINESS INCOME LOSS CLAIM INFORMATION

| | | | |
|---|---|---|---|
| **Claimant Name(s):** | Sayegh Brothers, Inc, | | |
| **Claimant ID:** | 1049616 | **Claim ID:** | 15749 |
| **Claim Questionnaire ID:** | 10000857 | | |
| **Law Firm:** | Zink & Lenzi | | |

| **Loss Location Address:** | Street | | Apt/Suite/Lot/Number |
|---|---|---|---|
| | 6026 Clark Rd Ste B | | |
| | City | State | Zip Code |
| | Paradise | California | 95969-4186 |
| | County | APN | Fire |
| | Butte | 053-103-037-000 | Camp |

## II. DETERMINATION AND CLAIM AWARD

Business Income Loss claims include claims for economic losses suffered by a business as a result of the Fires, including loss of business property or inventory used to conduct business and lost profits, to the extent permitted by California law.

After reviewing all submitted documents, the Trust has made the following determination for the Business Income Loss claim you asserted.

| Review Criteria | Tier I - General Review |
|---|---|
| **Category:** | Severe Property Damage |
| **Net Claim Award for Business Income Loss:** | $527,538.61 |

## III. BUSINESS INCOME LOSS AWARD AND CALCULATION

### A. Income Loss Calculation

| | | |
|---|---|---|
| 1. | Benchmark Period: | 2017 |
| 2. | Average Annual Net Profit Over Benchmark Period: | $67,648.00 |
| 3. | Estimated Annual Growth Rate | 2.00% |
| 4. | Loss Period Start Month: | November 2018 |
| 5. | Loss Period End Month: | October 2022 |
| 6. | Number of Months in Loss Period: | 48 |
| 7. | Net Losses Over Loss Period: | $727,538.61 |
| 8. | Less Insurance Paid: | ($200,000.00) |

Case: 19-30088    Doc# 14319-1    Filed: 02/20/24    Entered: 02/20/24 11:44:59    Page
34 of 63



# BUSINESS INCOME LOSS
## RECONSIDERATION DETERMINATION REPORT

| 9. | Less Additional Insurance Recovery Available: | ($0.00) |
|---|---|---|
| 10. | Net Income Loss Award: | $527,538.61 |

### B. Total Business Income Loss Claim Award

| 1. | Total Claim Award for Business Income Loss: (Greater of the sum of totals above or $10,000): | $527,538.61 |
|---|---|---|
| 2. | Claimant's Ownership Share: | 100.00% |
| 3. | Net Claim Award for Business Income Loss: | $527,538.61 |

### III. RECONSIDERATION COMMENT

The claimant requested reconsideration of their Business Income Loss award, asserting their initial award was inadequate and requested an Individualized Review. The Trust's accountant has conducted a Tier II-Individualized Review of the claim and awarded claimant $662,593 less insurance payments, which results in a total award of $410,593. See Business Income Loss Award Calculation for further detail on the Tier II Review. On reconsideration, the Trust affirms the original Tier I determination, which is more favorable.



www.firevictimtrust.com
2 of 2
Claim ID: 15749
CQ ID: 10000857
Case: 19-30088   Doc# 14319-1   Filed: 02/20/24   Entered: 02/20/24 11:44:59   Page
35 of 63



# OTHER DAMAGES
# RECONSIDERATION DETERMINATION REPORT

## DATE OF REPORT: 3/3/23

### I. OTHER DAMAGES CLAIM INFORMATION

| Claim ID: | 131072 | Claim Questionnaire ID: | 10000857 |
|---|---|---|---|
| Claimant Name(s): | Sayegh Brothers, Inc. | | |
| Law Firm: | Zink & Lenzi | | |

### II. SUMMARY OF OTHER DAMAGES ASSERTIONS

The Trust reviews and considers all claims for damages and costs recoverable under California law or, if applicable, other non-bankruptcy law. Damages asserted in the Other Damages section of the Claims Questionnaire but eligible within a Claim Type enumerated in Section II of the Claims Resolution Procedure (*e.g.*, Real Property, Emotional Distress, Business Income Loss) will be reclassified to the appropriate Claim Type and considered there. Asserted damages not specifically contemplated in other Claim Types are evaluated as part of an Other Damages Claim.

The table below identifies the assertions made in the Other Damage section of your Claims Questionnaire and the determination for each. For any assertions identified as Considered in Other Claim Type, the attachment for that Claim Type includes additional information on the determination and corresponding award amounts.

| ASSERTION | DETERMINATION | AMOUNT |
|---|---|---|
| All claims for damages, attorneys' fees, costs, or interest under any statute or other legal theory which are asserted under this Other Damages claim type, other than as specifically noted in this Determination Notice or as otherwise published by the Trust, are denied | Denied | $0.00 |
| Attorneys' fees, costs, and prejudgment interest related to inverse condemnation of property | Denied | $0.00 |
| **Claim Award:** | | $0.00 |

### IV. RECONSIDERATION COMMENT

Attorneys' fees, costs, and prejudgment interest related to inverse condemnation of property are not available absent a compensable claim for property damage asserted on this or a related Claims Questionnaire.

Case: 19-30088    Doc# 14319-1    Filed: 02/20/24    Entered: 02/20/24 11:44:59    Page
36 of 63

Exhibit F



**Mike Bush** <condole59@gmail.com>
To: Rachel Motley <rmotley@browngreer.com>

Tue, Mar 7, 2023 at 4:21 PM

Hello Rachel:

It is at times like these that it would be good if I could talk to the expert.

If you are capable of getting California case law please print out the case I referenced

People ex rel Department of Public works V Lynbar, 253 cal app 2d 870. In that case the court talks about how California

is different from most of the country in the way it treats Long term leases on land taken by Eminent Domain and/or

Inverse condemnation. The remaining term of the lease is an interest in the land being taken, just as a building or any

other improvement. The just compensation clause of the constitution requires payment for what the owner loses as a result

of the taking. Calif evidence codes 817 and 819 tell the trust how that figure is arrived at with respect to long term leases.

The 48 month scheme used by the trust using a projection of future profits based on past tax returns cannot be used with leases.

According to Calif law, the leases terminated on the day of the fire by operation of law.

There is no duty to mitigate damages as there is when liability is based on Negligence.

The Insurance company that insured the property used the correct method when it calculated what it would pay for lost rental income.

We gave the trust a copy of the report which included a description of the methodology.

We provided the trust with a copy of the report prepared by our expert. Both reports valued the loss at above three million. The difference between the two

is because they used different discount rates and our expert used actual cost values whereas the insurance company used market averages.

Anyway Rachel, maybe I didn't present the case clearly enough, but the statutory, decisional and constitutional law sure seems to support my position.

Thanks for your consideration

Mike

[quoted text hidden]

This electronic mail is intended to be received and read only by certain individuals. It may contain information that is privileged or protected from disclosure by law. If it has been
misdirected, or if you suspect you received this in error, please notify me by replying and then delete this message and your reply. These restrictions apply to any attachment to
this email.

Exhibit G



# Gmail

Mike Bush <condote59@gmail.com>

## CQID10000857
4 messages

---

**Mike Bush** <condote59@gmail.com>
To: claimsadministrator@firevictimtrust.com

Mon, Mar 6, 2023 at 4:36 PM

David Agretelis:

I think this is a problem for your level of resolution.

I just received a reconsideration determination notice for a commercial landlord, CQID10000857.

There are a couple of issues that are disturbing about this; First, it took five months, but secondly and more importantly, whoever handled this reconsideration either completely misunderstood what the request was based on, or simply didn't care that the system used by the trust is disapproved by Calif. courts,is contrary to California Statutory Eminent Domain law as well as specific evidence code section, and violates the just compensation requirements of the U.S. and California Constitutions. All of this was the stated reason for the reconsideration request. Yet, in the comment section of the determination it states simply that the claimant asserts that the amount was inadequate.

That is not what the request asserted. California law in this area is different than most of the country>

Did a lawyer that practices California law review this request?

I know I can appeal this determination, however, before I do that I want the trust to have a chance to fix it.

Thanks

Mike Nush

Zirk and Lenzi

---

**Claims Administrator of the Fire Victim Trust** <claimsadministrator@firevictimtrust.com>
To: Mike Bush <condote59@gmail.com>
Cc: Claims Administrator of the Fire Victim Trust <claimsadministrator@firevictimtrust.com>

Tue, Mar 7, 2023 at 10:19 AM

Thank you. We're looking into this and will have information to you by next week.

---

**From:** Mike Bush <condote59@gmail.com>
**Sent:** Tuesday, March 7, 2023 12:36 AM
**To:** Claims Administrator of the Fire Victim Trust <claimsadministrator@firevictimtrust.com>
**Subject:** CQID10000857

[Quoted text hidden]

---

**Mike Bush** <condote59@gmail.com>
To: Claims Administrator of the Fire Victim Trust <claimsadministrator@firevictimtrust.com>

Thu, Mar 16, 2023 at 4:00 PM

Exhibit H

 Gmail

**Mike Bush <condote59@gmail.com>**

# Improper valuation method used by FVT
1 message

**Mike Bush <condote59@gmail.com>**
To: "Molton, David J." <DMolton@brownrudnick.com>

Mon, Mar 20, 2023 at 11:44 AM

Hi David:

I Emailed K. Baghdadi, asking him to put me in touch with any member of the TOC That had experience with a client that was a landowner of properties with long term leases that were terminated when the property was destroyed by the fire.

His response is that I should talk to you.

I don't know what the protocol is, and I don't know why I can't talk to the TOC.

So, I have a client that owns three spaces in a mall. He leased the spaces. The spaces were subject to leases that had 12 years remaining.

The FVT has a method for calculating lost business income by using profit and loss figures from years prior to the fire and then projecting future income over the next four years after the fire.

That method can not be used to calculate the value of what the owner lost as a result of inverse condemnation terminating the long term leases.

California case law is clear. see Dept of Pub wks V. Lynbar, 235 Cal app 2d 870.

California Eminent Domain law is also clear. CCP 1230.010 through 1265.010 and Ca. Evidence code sections 817 and 819 are also very clear. You have to capitalize the remaining term of the lease as of the day of the taking (fire)

We did this with two experts, one from the clients insurance company and one we hired. Using the correct method they both came to a figure above three million.

Using the projected profits method the trust came to a figure around $527,000.

We asked for reconsideration, pointing out the law in more detail.

The reconsideration determination used the same method as before and came up with an even lower figure.

With respect to long term leases the FVT method violates the just compensation clause of both the State and National constitutions.

I raised this with the claims manager, got nowhere, raised it with the Claims Administrator ten days ago, no answer yet, and I tried to see if the law firms in the TOC had any experience and I got sent to you.

I am guessing that the rules the FVT uses were written and or approved by these law firms, so the rules have to be consistent with Ca. law. Did this issue slip through the cracks?

If I can't get this figured out I have to appeal before April 3.

Help me if you can>
Mike Bush

Case: 19-30088    Doc# 14319-1    Filed: 02/20/24    Entered: 02/20/24 11:44:59    Page 42 of 63

1    <u>Exhibit I</u>

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ZINK & LENZI**
ATTORNEYS AT LAW

*Dedicated to Helping Injured Persons Obtain*
*The Compensation They Deserve*

J. D. ZINK, INC.
Attorney at Law

ALBERT J. LENZI, JR., INC.
Attorney at Law

250 VALLOMBROSA AVE., STE. 175
CHICO, CALIFORNIA 95926
Tel: 530 / 895-1234
Fax: 530 / 895-1254

March 28, 2023

Dear Member of the TOC:

On March 6th, 2023, I asked the claims administer to review a reconsideration determination that applied a valuation method to long term leases that is entirely inconsistent with, contrary to, and in violation of clearly stated California law. The result of which is a violation of the just compensation clause.

On March 23, I received an email response upholding the determination on the grounds, "We must consistently apply the provisions of" … The FVT agreement, The CRP and eligibility criteria…"to all claims".

The response did not address the claim that the various documents and procedures themselves have to be consistent with California law.

The claims administrator goes on to state there are more than 10,000 business claims. Certainly with such a large number there would have to be other commercial landlords that lost property subject to long term leases and thus the state mandated valuation procedures.

It seems reasonable that the law firms sitting on the TOC would have fire victim clients that lost properties subject to long term leases.

It also seems reasonable that in its oversight capacity the TOC would have been aware of this issue.

Moreover, some members of The TOC and law firms associated with The TOC actually help write the rules, procedures and eligibility criteria for business loss claims and based on that experience would have informed the FVT that long term leases have to be valued according to state law.

Based on the above it seems appropriate that The TOC should look into this situation.

It might be that I have overlooked something that explains and supports that FVT decision to not follow California law and if that is the case please inform me so I don't waste everybody's time by pursuing this.

Please respond quickly

MICHAEL R. BUSH

1  Exhibit J

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# M Gmail

Mike Bush <condote59@gmail.com>

## Sayegh brothers

**Claims Administrator of the Fire Victim Trust** <claimsadministrator@firevictimtrust.com>   Thu, Mar 23, 2023 at 2:26 PM
To: Mike Bush <condote59@gmail.com>
Cc: Claims Administrator of the Fire Victim Trust <claimsadministrator@firevictimtrust.com>

We reviewed the Sayegh claim and your submissions with the Trustee, Cathy Yanni, confirming that we cannot change the current Reconsideration Determination. With over 10,000 business claims submitted to the Trust, we must consistently apply the provisions of the Fire Victim Trust Agreement, Claims Resolution Procedure, and Eligibility Criteria to all claims and claimants. If your clients are not satisfied with the Reconsideration Determination, we encourage you to appeal and present your arguments to the Appellate Panelist for consideration.

**From:** Mike Bush <condote59@gmail.com>
**Sent:** Thursday, March 23, 2023 5:39 PM
**To:** Claims Administrator of the Fire Victim Trust <claimsadministrator@firevictimtrust.com>
**Subject:** Sayegh brothers

[Quoted text hidden]

Case: 19-30088    Doc# 14319-1    Filed: 02/20/24    Entered: 02/20/24 11:44:59    Page
46 of 63

Exhibit K

# ZINK & LENZI
ATTORNEYS AT LAW

*Dedicated to Helping Injured Persons Obtain*
*The Compensation They Deserve*

J. D. ZINK, INC.
Attorney at Law

ALBERT J. LENZI, JR., INC.
Attorney at Law

250 VALLOMBROSA AVE., STE. 175
CHICO, CALIFORNIA 95926
Tel: 530 / 895-1234
Fax: 530 / 895-1254

April 25, 2023

Steven J Skikos
Trust Oversight Committee
One Sansome Street #2830
San Francisco, CA 94104

Re:          Claims Administration

Dear Mr. Skikos:

I am writing to you as a member of the TOC and perhaps most knowledgeable about the problem I describe below.

I have tried to communicate my concerns to the TOC by contacting the TOC Liaison, K. Baghdadi, but instead of connecting me to the TOC Mr. Baghdadi refers me to either the trustee or the Brown Rudnick law firm. In the context of my problem, the trust and its attorney are more like adversaries.

I am not sure if Mr. Baghdadi is operating on his own or if he is following directions from TOC. I don't know how the TOC performs the oversight responsibility if its not listening to the experiences of fire victims regarding the claims process.

The problem:

On 11/24/20 this office submitted a claim on behalf of a commercial landlord whose property was destroyed in the campfire. At the time of destruction there was considerable time left on the lease of his property. We submitted the calculations of an expert that capitalized the net rental income as of the day of destruction, $3,307,769.00. The trust, using its formula based on earnings and taxes prior to the fire arrived at a much lower figure $567,538.61.

On reconsideration we pointed out that California statutory law, case law, as well as the Constitution not only required the method we used but also implicitly rejects the method used by the trust.

Also we pointed out that the capitalized value of net rental income is actually an interest in land and should be added to the fair market value of the property and compensated using the rules and procedures of eminent domain law. In response, the trust reaffirmed its original calculation,

stating in a subsequent email "We must consistently apply the provisions of the fire victims trust agreement, claim resolution procedure and eligibility criteria to all claims and claimants".

We asked the claims administrator if we should have put the claim in one of the real property sections instead of BIL and were told it wouldn't matter. According to the trust, what matters is the need for consistency. However, and in spite of the goal of administrative transparency, it is unclear, just what our claim is supposed to be consistent with. We are asking for your help answering this question.

As a member of the TCC and TOC you might have participated in discussions regarding issues related to valuing the amount of loss where long term leases are involved.

As a partner in a law firm with 5,000 fire victim claims you would know if your office represented any commercial landlords that lost property subject to long term leases that were terminated by inverse condemnation and subsequently received a determination based on procedures in evidence code sections 817,819. By same token you would know if your firm's clients accepted the smaller amount generated by the trust's methodology of projecting future income loss based upon pre fire tax returns.

You could also ask other law firms on the TOC what their experience has been with this type of claim. In any event, the numbers are out there and might already be known by you.

We appreciate that you have accepted a fiduciary relationship with my client. In furtherance of which I hope you will share what information readily available to you that bears upon my clients situation described above.

I am in the appeal process. It would be helpful to both the fire victim and neutral if you could provide information as to how this issue was handled with other commercial landlords.

I am sending this letter as an email attachment. My personal email is condote59@gmail.com.

Please confirm what you are capable of doing regarding this request.

MICHAEL R. BUSH

MRB;ns

Exhibit L

# Nikkole Stafford

| | |
|---|---|
| **From:** | Nikkole Stafford |
| **Sent:** | Wednesday, August 16, 2023 1:32 PM |
| **To:** | rhight.jamsadr@gmail.com |
| **Subject:** | Sayegh Appeal #1100112468 |
| **Attachments:** | 20230816131827.pdf |

Dear Judge Hight,

I am using my legal assistant's computer, but you can respond to my email.

In the Sayegh hearing you told me that you had to follow the eligibility criteria because it was approved or required by the bankruptcy court. My response was that the bankruptcy court had nothing to do with the eligibility criteria because it was created solely by the Trust almost ten months after the confirmation order.

I am sending you an email conversation I had with my claims manager that supports the fact that the eligibility criteria did not exist until sometime around May of 2021.

Could you tell me where you got the information that the bankruptcy court approved or required the eligibility criteria pertinent to my appeal.

Thank you,

Michael Bush

# M Gmail

Mike Bush <condote59@gmail.com>

## eligibility criteria
3 messages

**Mike Bush** <condote59@gmail.com>
To: Rachel Motley <rmotley@browngreer.com>

Fri, Jun 2, 2023 at 3:21 PM

Hello Rachel:
My copy of the BIL eligibility criteria is dated 5/25/21. Is this the first time the Trust published
the criteria?
If not,c
Can you send me a copy of the BIL eligibility criteria that existed in November 2020.
Thanks
Mike

**Rachel Motley** <rmotley@browngreer.com>
To: Mike Bush <condote59@gmail.com>
Cc: "Joi L. Tabb" <jtabb@browngreer.com>

Mon, Jun 5, 2023 at 1:47 PM

Good Afternoon,

Thank you for your email. Yes, the 5/25/21 date listed on the BIL Eligibility Criteria is the first time this information was published by the Trust.
Please don't hesitate to reach out to me if you have any additional questions. Thank you and have a great day!

Thank you,

**Rachel Motley**

Case Manager

**BROWNGREER PLC**

250 Rocketts Way

Richmond, Virginia 23231

1                                    <u>Exhibit M</u>

**ZINK & LENZI**
ATTORNEYS AT LAW
250 VALLOMBROSA AVE., STE. 175
CHICO, CALIFORNIA 95926
Tel:     530 / 895-1234
Fax:     530 / 895-1254
J.D. ZINK   (SBN: 58726)
MICHAEL R. BUSH .  (SBN: 90911)

ATTORNEYS FOR: Claimants

In re the appeal of Sayegh        Sayegh Brothers Appeal
Brothers,                         (Claim ID 15749/CQ10000857)

        This appeal involves a question of law. The facts are not disputed.  Should the claimant's loss be evaluated in accordance with procedures designed by the TRUST for claims based on negligence or should the loss be evaluated in accordance with California eminent domain law intended to ensure that claimants constitutional right to just compensation, is protected.

                              <u>History</u>

        Sayegh Brothers, a type S corporation, owned 29,080 sq ft. within the "Old Town Plaza", a larger shopping mall located at the corner of Clark and Elliot in Paradise.

        Sayegh Brothers leased their space to three entities: Grocery Outlet, Papa Murphy's and Liquor bank.

        At the time the Camp Fire completely destroyed the property, Grocery Outlet, and Papa Murphy's each had 12 years remaining on their leases. Liquor Bank a separate type S corporation owned by Sayegh Brothers rented "pocket to pocket" and was deemed to be of similar length.

ZINK & LENZI
ATTORNEYS AT LAW

The Sayegh Brother's insurance company paid the actual cash value of the structure loss. The insurance company had the leasehold interests appraised, which determined that the capitalized fair market value of the remaining leasehold income the day before the fire was $3,180,000. The policy limit for lost income coverage, $252,000, was paid.

Sayegh Brothers' cause of action against PG&E for the uncompensated loss is based on Inverse Condemnation. PG&E filed for bankruptcy before an action could be filed in the Superior Court.

The Bankruptcy proceeding resulted in a monetary settlement of 13.5 billion dollars to be distributed to fire victims through a Qualified Settlement Trust.

The task of determining and distributing damage awards was enormous. There were 70,000 claims to process, and according to a brief filed in the bankruptcy court, by an attorney that worked on developing the process, "Each fire claim could have 25 or more different economic and noneconomic damage categories implicating dozens of California codes…plus vast body of case law". (Exhibit 1 – Skikos Brief p9, L4 docket #7167). Also, there were legal deadlines that put pressure on the TRUST to inform the bankruptcy court it was ready, before it was ready.

On August 17, 2020, the TRUST made available the claims questionnaire that must be used. The Sayegh Brothers submitted their claim questionnaire on 11/24/2020.

The claim questionnaire form provided by the TRUST has only two sections that address commercial loss.

Section III C, Commercial Real Property

2

1    This section relating to losses based on destruction of

2  property is where one could expect to find questions regarding

3  the loss of FMV based on long term leases being terminated.

4    However, there were no questions on the questionnaire

5  relating to long-term leases. The questions asked in the

6  commercial property section are about structure damage only. But,

7  because of the insurance payment, Sayegh Brothers did not make a

8  claim for structure damage. This section did not appear

9  appropriate for the facts of the Sayegh claim.

10    Section IV, Business Income Loss, on the other hand asks

11 numerous questions directly related to the facts of the Sayegh

12 claim. For example, question   (3) "Does your claim for lost

13 income relate to damage to property in which you had a property

14 interest at the time of the fire?" answered "yes". Long term

15 leases are "an interest in property". Also The BIL asked for the

16 amount of the loss and how it was calculated. Sayegh brothers

17 presented the calculations of a Forensic Economist that showed

18 the capitalized value of the lease payment as of the day before

19 the fire.

20    It is noteworthy that at the time the TRUST published the

21 Claims Questionnaire it had already published an eight page

22 Claims Questionnaire Data Summary and eight page Claims

23 Questionnaire Data Guidelines both of which were to help

24 claimants identify and support their claims. Neither of these

25 documents refer to property with long term leases. It appears as

26 if the legal significance of long term leases was not

27 contemplated by the people designing the CRP.

28    Six months after the claim was filed the TRUST published

3

1  eligibility criteria for Business loss claims based on negligence
2  (Exhibit 2), stating unequivocally that the eligibility criteria
3  are purposely meant to limit liability of claims based on
4  negligence. The main feature of the eligibility criteria is the
5  use of pre fire Tax statements to project future income over a 4-
6  year period. On its face the eligibility criteria do not apply to
7  claims based on Inverse Condemnation.

8      A year and a half after the claim was submitted, the TRUST
9  issued a determination of the claim, awarding only $527,538.61.
10  The figure was arrived at by the TRUST using the methodology
11  designed specifically for claims based on negligence.

12                          Reconsideration

13     Sayegh Brothers requested the claim be reconsidered using
14  the valuation method required by well established California law,
15  arguing that a long-term lease is an interest in property, it is
16  a property interest. (CF questionnaire IV(3)). It has an
17  ascertainable value on the day it is prematurity terminated.
18  Because it is a taking of an interest in property, the
19  Constitution requires the owner (Sayegh) be paid "Just
20  compensation," which means "The full and perfect equivalent in
21  money of the property taken. The owner is to be put in as good a
22  position pecuniarily as he would have occupied if his property
23  had not been taken." People Ex Rel Dept. of Public Works v.
24  Lynbar (1967), 253Cal.App.2d.870,880. California Eminent Domain
25  law applies to Inverse Condemnation damage claims. The statutory
26  procedures are intended to determine a constitutionally
27  acceptable amount of compensation.

28     Sayegh Brothers used the California statutory procedure,

4

1  Evidence code §817, 819 and determined the capitalized value of
2  the lost rental income was $3,307,769.00, the day before the
3  fire.

4      In further support of its original claim, Sayegh Brothers
5  submitted a retrospective appraisal of the leasehold interest
6  that was conducted by the Sayegh Brothers insurance company
7  shortly after the fire. The capitalized income was appraised at
8  $3,180,000.  (See Exhibit B to reconsideration request.)

9      Finally, the reconsideration request pointed out that the
10 methodology used by the TRUST has been criticized by the courts
11 and rejected for use in circumstances involving Eminent
12 Domain/Inverse Condemnation. Using income other than rentals is
13 proscribed by Evidence Code § 819. <u>South Bay Irrigation Dist. V.</u>
14 <u>California American Water Co.</u> (1976) 61 Cal.App.3d 944, 979.

15     Moreover, the TRUST's concerns about the general post fire
16 economy do not apply to the Sayegh claim that is limited already
17 to property damage only and is based on a valuation of pre fire
18 Fair Market Value.

19     In the redetermination decision the TRUST rejected
20 claimant's request entirely, it did not change its valuation
21 method or amount, nor did it explain why the constitutional
22 provisions and statutory procedures did not apply.

23     Filing the claim under the BIL triggered the new eligibility
24 criteria regarding income.  However the reconsideration request
25 clearly presented the claim as a property loss claim, protected
26 by the constitution and subject to the rules and procedure of
27 California Eminent Domain law.  New evidence was submitted, in
28 the form of the insurance company appraisal, that confirmed that

Case: 19-30088    Doc# 14319-1    Filed: 02/20/24    Entered: 02/20/24 11:44:59    Page
58 of 63

1  the loss of Fair Market Value was greater than three million

2  dollars. Generally confirming the amount of the original claim.

3      We contacted the TRUST seeking clarification and was told

4  the TRUST couldn't change method nor the award because "we must

5  consistently apply the provisions of The Fire Victims Trust

6  agreement, claims resolution procedures, and eligibility criteria

7  to all claims and claimants." (Exhibit 3-email thread.)

8      On April 28, 2023 I contacted the TOC asking for help

9  understanding what exactly The Sayegh claim had to be consistent

10  with (Exhibit 4). To date there has been no response.

11                         <u>Argument</u>

12     1. <u>Standard of Review</u>  At the appeal stage section VIIIB

13  of the CRP, specifies the claim to be considered de novo.

14     2. <u>Governing Law</u>  In the CRP the trust set up rules,

15  standards and procedures to evaluate Fire Victim claims under

16  the laws of the state of California (Trust agreement section

17  8:16 "Governing Laws").

18

19      Inasmuch as this is de novo review , we emphasize this

20  claim should be treated as if it is a claim made under the Real

    Property section of the Claim Questionnaire, and although there

21  are no questions regarding leasehold interest, it is the place

22  where DIV is supposed to be listed.

23

24      Under California law the theory of the claim or claim

25  type, as originally presented is not controlling. The doctrine

26  that a plaintiff can only recover on the theory of complaint is

    not followed in this state. <u>Sturgis v. Charles L. Harney</u>,

27  (1958) 165 Cal.App.2d 306, 317. If the facts support another

28  theory of the claim, then that theory of the claim can be

<div align="center">6</div>

1  presented at the appeal stage.  Ward v. Taggart 1959, 51.
2  Cal.2d.736,742.

3      Pursuant to the CRP: "real property damages may be measured
4  in one of two ways: (1) Loss in fair market value to the property
5  …or (2) The reasonable cost to rebuild or repair the property.
6

7      Unfortunately, when the TRUST designed the claims
8  questionnaire the only questions in the Real Property section are
9  about repair or rebuilding.

10     The lack of any questions involving loss of fair market
11  value in the Real Property section directed us to look at the
12  only other section, the Business Income Loss, Section IV. At
13  least the BIL section had questions that were relevant to the
14  Sayegh Brother's claim.

15     Thus the original claim was filed under the theory that it
16  was a Business income loss claim. Six months later the TRUST made
17  a rule that certain business loss claims will be restricted and
18  diminished by a formula based on pre fire tax returns.
19

20     The rule, presented as eligibility criteria for claims based
21  on negligence, should not be applied to the Sayegh Brothers claim
22  because it is based on Inverse Condemnation.

23     First because post fire economy does not effect in any way
24  a claim that is limited to property damage that is valued on pre
25  fire conditions, i.e., FMV.  Secondly, but more importantly,
26  Inverse Condemnation claims are a product of our constitutional
27  rights and constitutional limitations on those that have a duty
28  to protect and advance those rights.  In this case it is the

1   TRUST that has that duty.   The point about the right to just
2   compensation is it has to be paid at that level.   The TRUST
3   cannot avoid its duty by applying eligibility rules that focus on
4   protected future income from the property rather than the FMV of
5   the property itself.   The California Constitution assures that
6   Sayegh will receive just compensation.   No state rule or
7   regulation can be applied in such a way as to give Sayegh
8   Brothers less than just compensation. <u>County of Los Angeles v.</u>
9   <u>American Savings and Loan</u> (1972) Cal.App.3d 7, 13.

10      The practical distinction between the two in regard to the
11  new rule is that the damage under Inverse Condemnation is based
12  only on the value of property at the time of taking. Whereas
13  damages under negligence expand and contract over time and space
14  based on concepts like duty and foreseeability. It was a correct
15  decision for Trust to try to limit negligence damages.
16

17      The eligibility criteria do not apply to Sayegh Brothers
18  because their claim is for loss of fair market value. Evidence
19  was submitted with the claim that established the terms of the
20  remaining years on the leases. Both the appraiser for the
21  insurance company and the claimant's expert found the loss to be
22  above 3 million dollars. Both used methods required by Evidence
23  code §§817-819.

24      Evidence submitted with the claim established that the loss
25  was based on destruction of real property and termination of
26  leases incident there to.

27      The facts of the Sayegh claim are well established. The
28  lease agreements show the terms for the next 12 years. The fire

8

that destroyed the property is considered by the TRUST to be based on inverse condemnation. The TRUST consistently uses inverse condemnation as a basis for calculating damages for claims involving property damage.

Two reports were prepared regarding the capitalized value of the rent reserved. One using market analysis involving comparable rental rates and the other using actual terms of Sayegh leases. Both analyses show the capitalized value to be above 3 million dollars.

According to California Eminent Domain law a leasehold interest is an interest in property that must be compensated if the property is taken (destroyed) through inverse condemnation. The amount of compensation must satisfy the constitutional requirement of "just compensation" CCP §§ 1235.125 and 170, California statues establish the method that should be used in order to satisfy the just compensation mandate. The results of the statutory method is considered to be the fair market value of the leasehold interest on the day of the taking.

The destruction of the property terminates the leasehold interest which automatically reduces its FMV to zero. CCP § 1265.110. The CRP instructs the TRUST to subtract the FMV the day after from the FMV the day before the fire. The resulting diminution in value, DIV, is the amount of damages to be compensated by the TRUST.

In Sayegh case the math shows damages of either $3,180,000 (insurance appraisal) or $3,307,769 (actual income plus expenses). Because it is a property loss claim, and to be

9

1  consistent with other property loss claims, interest and attorney

2  fees should be added.

3                            Conclusion

4

5      The Camp Fire victims lost everything, their homes, their

6  businesses, their friends, families, and community.

7      But they did not loose their constitutional right to just

8  compensation.  Nor can the Fire Victims Trust diminish that right

9  through its processing rules and procedures.   Just compensation

10  is $3,307,769.

11

12      DATED: June 29, 2023.

13

14                                    Michael R. Bush

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10