| | |
|---|---|
| 1 | **LABATON KELLER SUCHAROW LLP** | **LOWENSTEIN SANDLER LLP** |

1  **LABATON KELLER SUCHAROW LLP**        **LOWENSTEIN SANDLER LLP**
Thomas A. Dubbs (*pro hac vice*)                 Michael S. Etkin (*pro hac vice*)
2  Carol C. Villegas (*pro hac vice*)                 Andrew Behlmann (*pro hac vice*)
Michael P. Canty (*pro hac vice*)                 Scott Cargill (*pro hac vice*)
3  Thomas G. Hoffman, Jr. (*pro hac vice*)         Colleen Restel
140 Broadway                                      One Lowenstein Drive
4  New York, New York 10005                         Roseland, New Jersey 07068

5  *Lead Counsel to Securities Lead Plaintiff and*    *Special Bankruptcy Counsel to Securities Lead*
*the Class*                                          *Plaintiff and the Class*
6

7  **MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
8  220 Montgomery Street, Suite 2100
San Francisco, California 94104
9
*Local Bankruptcy Counsel to Securities Lead*       *Additional counsel listed on Exhibit A*
10 *Plaintiff and the Class*

**UNITED STATES BANKRUPTCY COURT**
11 **NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**
12

| | |
|---|---|
| 13  In re: | **Case No. 19-30088 (DM) (Lead Case)** |
| 14  PG&E CORPORATION | **Chapter 11** |
| 15  - and – | **(JOINTLY ADMINISTERED)** |
| 16  PACIFIC GAS AND ELECTRIC COMPANY, | |
| 17                            Debtors. | |
| 18 | |
| 19  ☒ Affects Both Debtors | **LEAD PLAINTIFF PERA AND THE** |
|      ☐ Affects PG&E Corporation | **SECURITIES ACT PLAINTIFFS' (1)** |
| 20  ☐ Affects Pacific Gas and Electric | **OPPOSITION TO THE REORGANIZED** |
| 21  Company | **DEBTORS' OMNIBUS REQUEST FOR** |
|     | **INCORPORATION OF DOCUMENTS** |
| 22 | **BY REFERENCE OR JUDICIAL** |
|     | **NOTICE AND (2) CROSS-REQUEST** |
| 23 | **FOR JUDICIAL NOTICE** |
| 24 | |
| 25 | United States Bankruptcy Court |
|     | Courtroom 17, 16th Floor |
| 26 | San Francisco, CA 94102 |

27

28

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT .......................................................................................................2

I.    PG&E FAILS TO CARRY ITS BURDEN TO PROVE INCORPORATION BY REFERENCE WITH RESPECT TO ANY DOCUMENT ...................................2

II.   THE 19 RJN EXHIBITS THAT ARE ARGUABLY INCORPORATED BY REFERENCE ARE UNNECESSARY AND IRRELEVANT ...................................3

III.  PG&E HAS NOT CARRIED ITS BURDEN OF PROVING THAT JUDICIAL NOTICE IS APPROPRIATE........................................................5

IV.  PG&E IS NOT ENTITLED TO JUDICIAL NOTICE OF DISPUTED FACTS ........................................................................................7

    A.   PG&E Cannot Use Judicial Notice to Support a Truth-on-the-Market Defense at the Pleading Stage ................................................7

    B.   PG&E Cannot Use Judicial Notice to Prove, at the Pleading Stage, that Its Statements Were "True" or "Not Misleading"....................................9

        i.    PG&E Improperly Uses Extraneous Documents to Dispute Allegations that the Company Misrepresented Its Spending "Doubling" ..................................................11

        ii.   PG&E Improperly Challenges the Well-Pled Facts as to Why the Company's "Inspection" and "Pole Integrity" Statements Were False..................................................14

    C.   PG&E Cannot Use Judicial Notice to Dispute Other Well-Pled Allegations ..................................................17

V.   THE COURT SHOULD JUDICIALLY NOTICE TEN DOCUMENTS REQUESTED BY LEAD PLAINTIFF ..................................................18

    A.   Judicial Notice of Six Select Documents is Proper to Allow Lead Plaintiff to Rebut PG&E's RJN Documents ..................................................18

    B.   Judicial Notice of Four Post-TAC Documents Containing Facts Incapable of Dispute is Proper ..................................................19

VI.  CONCLUSION..................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) ................................................................................. 9

*Biggs v. Terhune*,
 334 F.3d 910 (9th Cir. 2003) ................................................................... 20

*In re Clark*,
 No. BAP CC-11-1322, 2012 WL 1911926 (B.A.P. 9th Cir. May 25, 2012), *aff'd*,
 556 F. App'x 656 (9th Cir. 2014) ............................................................... 2

*Daniels-Hall v. Nat'l Educ. Ass'n*,
 629 F.3d 992 (9th Cir. 2010) ................................................................... 21

*DEPCOM Power, Inc. v. CSUN Solar, Inc.*,
 No. 18-CV-00729-JST, 2020 WL 5176193 (N.D. Cal. July 30, 2020) ................................. 6

*Diaz v. Intuit, Inc.*,
 2018 WL 2215790 (N.D. Cal. May 15, 2018) (Davila, J.) ..................................... 21

*Diversified Cap. Invs., Inc. v. Sprint Commc'ns, Inc.*,
 No. 15-03796, 2016 WL 2988864 (N.D. Cal. May 24, 2016) ................................. 4

*In re ECOtality, Inc. Sec. Litig.*,
 No. 13-03791, 2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ........................... 3-4

*In re Facebook, Inc. Sec. Litig.*,
 87 F.4th 934 (9th Cir. 2023) ................................................................. 7, 9

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
 868 F. Supp. 2d 983 (E.D. Cal. 2012) ...................................................... 20

*Hall-Johnson v. City & Cnty. of San Francisco*,
 No. 21-CV-07770, 2022 WL 2161602 (N.D. Cal. June 15, 2022) ......................... 7

*Hardison v. Newland*,
 No. 98-4517, 2003 WL 23025432 (N.D. Cal. Dec. 17, 2003) ............................. 5

*Harrison v. Milligan*,
 No. 09-4665, 2012 WL 1835428 (N.D. Cal. May 21, 2012) ............................... 6

*In re Kalobios Pharm., Inc. Sec. Litig.*,
 258 F. Supp. 3d 999 (N.D. Cal. 2017) ..................................................... 21

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)..................................................................*passim*

*Lacey v. Maricopa Cty.*,
   693 F.3d 896 (9th Cir. 2012) (*en banc*) ............................................... 18

*Mullins v.Wells Fargo Bank, N.A.*,
   2013 WL 2318879 (E.D. Cal. May 28, 2013)....................................... 20

*S.E.C. v. Phan*,
   500 F.3d 895 (9th Cir. 2007)..................................................................... 9

*Saldaña v. Occidental Petroleum Corp.*,
   2012 WL 12884907 (C.D. Cal. Feb. 13, 2012),
   aff'd sub nom. *Saldana v. Occidental Petroleum Corp.*,
   774 F.3d 544 (9th Cir. 2014)................................................................. 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................... 19

*In re Thoratec Corp. Sec. Litig.*,
   No. 04-03168, 2006 WL 1305226 (N.D. Cal. May 11, 2006)............................. 7, 9

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003).......................................................... 2, 3, 18

*Velasquez v. Chase Home Fin. LLC*,
   No. 10-01641, 2010 WL 3211905 (N.D. Cal. Aug. 12, 2010) ............................. 15

*Vinson v. Cal. Dep't of Corr. & Rehab.*,
   No. 13-CV-00699-JST, 2014 WL 4594208 (N.D. Cal. Sept. 15, 2014)................................. 6

**Rules**

Fed. R. Evid. 201 ................................................................................ 5, 7, 19

Fed. R. Evid. 201(a) ................................................................................... 7

Fed. R. Evid. 201(b)......................................................................*passim*

Fed. R. Evid. 801(c)(2) ............................................................................ 17

**Other Authorities**

21B Charles Alan Wright & Kenneth W. Graham, Jr.,
   Fed. Prac. & Proc. Evid. § 5104 (2d ed. Apr. 2023 Update) ...................................... 6

1    Lead Plaintiff Public Employees Retirement Association of New Mexico ("**PERA**"),

2  together with York County on behalf of the County of York Retirement Fund, City of Warren

3  Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension

4  Fund (together with PERA, "**Securities Plaintiffs**"), hereby submit this memorandum of points and

5  authorities in opposition to the *Reorganized Debtors' Omnibus Request For Incorporation Of*

6  *Documents By Reference Or Judicial Notice In Support Of Reorganized Debtors' Thirty-third,*

7  *Thirty-Fourth, And Thirty-Fifth Securities Claims Omnibus Objections* [ECF No. 14208] (the

8  "**RJN**").

9                                        **INTRODUCTION**

10      The RJN seeks incorporation by reference and/or judicial notice of 113 documents totaling

11  more than 4300 pages. It should be denied in large part because PG&E utterly fails to carry its

12  burden of proving this is one of "those rare instances when assessing the sufficiency of a claim

13  requires that the [external] document at issue be reviewed, even at the pleading stage." *Khoja v.*

14  *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).[1]

15      The Ninth Circuit has recognized that "the unscrupulous use of extrinsic documents to

16  resolve competing theories against the complaint risks premature dismissals of plausible claims that

17  may turn out to be valid after discovery," reasoning:

18
19              This risk is especially significant in [] fraud matters, where there is
                already a heightened pleading standard, and the defendants possess
                materials to which the plaintiffs do not yet have access. … **If**
20              **defendants are permitted to present their own version of the facts**
                **at the pleading stage—and district courts accept those facts as**
21              **uncontroverted and true—it becomes near impossible for even the**
                **most aggrieved plaintiff to demonstrate a sufficiently "plausible"**
22              **claim for relief.** … Such undermining of the usual pleading burdens is
                not the purpose of judicial notice or the incorporation-by-reference
23              doctrine.

24  *Orexigen*, 899 F.3d at 998-99 (internal citations omitted).

25      As the Court previously reasoned, it should not consider such "voluminous documents"

26  where, as here, they merely present PG&E's own version of "disputed facts" and the only thing the

27

28  ─────────────────
    [1] Herein, "PG&E" or the "Company" shall mean Reorganized Debtors.

Court must determine "is the sufficiency, therefore, the underlying plausibility, of what is alleged in the respective proofs of claim."  Hr'g Tr. dated Jan. 24, 2024 at 49:25-50:12.

<u>ARGUMENT</u>

**I.    <u>PG&E FAILS TO CARRY ITS BURDEN TO PROVE INCORPORATION BY REFERENCE WITH RESPECT TO ANY DOCUMENT</u>**

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if [1] the plaintiff refers extensively to the document or [2] the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Only 19 of the 113 RJN exhibits are incorporated into the Third Amended Consolidated Class Action Complaint (the "TAC") under one or both tests.[2]

The RJN never discusses whether any of the 113 documents meets either of the Ninth Circuit's two tests for incorporation by reference. Instead, it lists six single-spaced bullet points (RJN at 4-5) purportedly showing where the TAC cites various exhibits, devoid of argument. It also inaccurately lists 29 exhibits as being cited in the TAC even though they are not, pointing to irrelevant paragraphs of the TAC seemingly at random. *See* RJN at 4-5 (falsely claiming Exs. 24, 34, 37-39, 41-45, 47-51, 55, 56, 59-63, 67, 74, 79, 81, 84, & 86 were cited in the TAC).

For example, the RJN falsely claims that Exhibit 67 was cited by the TAC at "¶¶ 73-74, 640-641" (*id.* at 4), yet those paragraphs never mention Exhibit 67 (nor does any other part of the TAC). The TAC cites 81 of the 113 **zero times**.[3] Therefore, they are not incorporated by reference.

Where, as here, "the Complaint did not refer to [a] document, and the document did not form the basis of any claims," a "court abuse[s] its discretion by incorporating it." *Orexigen*, 899 F.3d at 1005; *id.* at 1007 ("the Complaint does not reference or identify this press release at all . . . . Therefore, the district court abused its discretion by incorporating the press release."); *see also id.* ("When parties pile on volumes of exhibits to their motion to dismiss, hoping to squeeze some into the complaint, their submissions can become needlessly unwieldy. Simply reviewing these submissions demands precious time. It is the parties' duty to ensure their own accuracy.").

---

[2] References to the TAC are denoted "¶."

[3] Specifically, the TAC never cites RJN Exs. 1-3, 7-10, 13-14, 23-24, 30-65, 67, 69-74, 79, 81-91, 93-94, 97-104, 107, 109, and 111-113.

Another 11 RJN exhibits are not incorporated by reference because the TAC only cited them once or twice—not "extensively"—and they do not "form the basis" of the fraud claims.[4] *See Orexigen*, 899 F.3d at 1003 ("For 'extensively' to mean anything under *Ritchie*, it should, ordinarily at least, mean more than once" and be "relatively lengthy.").[5]

The RJN never attempts to argue that even one document is "extensively" referenced or "forms the basis" of PERA's claims. This is fatal, as "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Id.* at 1002 (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

Thus, PG&E has failed to carry its burden to show **any** documents are incorporated by reference.

## II. THE 19 RJN EXHIBITS THAT ARE ARGUABLY INCORPORATED BY REFERENCE ARE UNNECESSARY AND IRRELEVANT

"The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Id.* at 1014. Therefore, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Orexigen*, 899 F.3d at 1003.

The TAC arguably incorporates by reference 19 of the RJN exhibits, but most of those documents are just copies of the public laws that PG&E allegedly lied about complying with, or they are documents memorializing the fraud itself—*e.g.*, those containing the allegedly false or misleading statements/omissions. Taking the matters contained in such documents as true would be absurd: "were the Court to assume the truth of all documents incorporated by reference into the [complaint], that would mean assuming the truth of all of Defendants' allegedly false or misleading statements." *In re ECOtality, Inc. Sec. Litig.*, No. 13-03791, 2014 WL 4634280, at *3 n.2 (N.D. Cal.

[4] These are Exs. 4, 5, 17, 27, 28, and 110 (cited once) and Exs. 6, 66, 68, 75, and 95 (cited twice).
[5] Although Ex. 96 is cited three times, two of these are mere footnotes, used to plead basic facts for only 19 lines of the 217-page complaint—neither "extensively" nor forming the basis of the fraud claims. *Orexigen,* 899 F.3d at 1003 (where the quotation of a document "comprises only a few lines in a footnote of a 67-page complaint" and "conveys only basic historic facts . . . [i]t is not sufficiently extensive under *Ritchie*"); *id.* ("Otherwise, the rule would simply require a complaint to 'refer' to the document.").

Sept. 16, 2014) (declining to "assume their truth"); *see also Diversified Cap. Invs., Inc. v. Sprint Commc'ns, Inc.*, No. 15-03796, 2016 WL 2988864, at *4 (N.D. Cal. May 24, 2016) (declining to consider document incorporated by reference for its truth where plaintiff "expressly denie[d] that the statements in it are truthful").

Only 56 of the Sufficiency Objection's 364 citations to the RJN cite these 19 documents. These 56 citations fall into two categories: (1) accurately restating the TAC's allegations[6] (in which case, they are superfluous), or (2) mischaracterizing and refuting the TAC's allegations (which is improper, *see Orexigen*, 899 F.3d at 1003). Either way, they are all unnecessary and irrelevant.[7]

For an example of mischaracterization, the Sufficiency Objection cites two RJN exhibits for the inaccurate factual assertion that "Ultimately, Cal Fire determined that 11 of the North Bay Fires **may have involved** violations of state law by PG&E. Exs. 76–77." OBJ at 18 (emphasis added). RJN Exhibits 76 and 77 are Cal Fire press releases announcing results of their North Bay Fire investigations, which are not only quoted at length in the TAC, but also specifically pled to have disclosed, respectively: "the role of PG&E equipment in starting all four of the relevant North Bay Fires, Cal Fire's findings that three of the fires *were caused by violations of California safety laws*, and Cal Fire's decision to refer criminal investigations regarding these three fires to the relevant district attorneys' offices" (¶ 347) and "the role of PG&E equipment in starting *all 12* of the relevant North Bay Fires and Cal Fire's decision to refer criminal investigations regarding eight of the fires to the relevant district attorneys' offices 'due to evidence of alleged violations of state law'" (¶ 357)—precisely *not* that, as the Sufficiency Objection mischaracterizes it, that "11 of the North Bay Fires may have involved violations." OBJ at 18. Twelve is not eleven, and a violation is not a potential violation. Incidentally, RJN Exhibit 76 and the TAC both explicitly state: "The investigation found evidence that PG&E allegedly failed to remove a tree from the proximity of a

---

[6] *E.g.*, OBJ at 35 & 81 (citing RJN Ex. 15 to describe PG&E's dividend suspension—as alleged, *see* ¶¶ 339-340); OBJ at 36 (citing RJN Ex. 16 to recount news that PGE expected to "record a significant liability" for North Bay Fires, precipitating a significant share price decline—as alleged, *see* ¶ 357); OBJ at 40 (citing RJN Ex. 80 for total acreage damaged by Camp Fire—as alleged, *see* ¶ 33).
[7] Herein, "Sufficiency Objection" shall mean the Reorganized Debtors' Thirty-Third Securities Omnibus Claims Objection to PERA and Securities Act Plaintiffs' TAC, Including to Certain Claimants That Adopted the TAC (ECF No. 14200).

power line, ***in violation of the state Public Resources Code section 4293***." ¶ 346, RJN Ex. 76. Other examples of similar mischaracterizations of RJN Exhibits by PG&E abound.[8]

PG&E does not argue that the TAC misquotes or misconstrues any aspect of these 19 documents (*i.e.*, where incorporation-by-reference is typically employed). It cites these external documents either to needlessly restate certain allegations and dispute others. Either way, they are immaterial to the TAC's sufficiency.

## III. PG&E HAS NOT CARRIED ITS BURDEN OF PROVING THAT JUDICIAL NOTICE IS APPROPRIATE

The party seeking judicial notice "must meet the burden of demonstrating that the facts of the [document] are either '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned' as required under Rule 201(b) of the Federal Rules of Evidence." *Hardison v. Newland*, No. 98-4517, 2003 WL 23025432, at *15 (N.D. Cal. Dec. 17, 2003).

The RJN never discusses whether any of the purported facts contained in the RJN's 4300 pages were "generally known" within the Northern District of California. Nor does it ever discuss whether any of the purported facts are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Instead, the RJN classifies the various exhibits into five categories and cites cases where similar types of documents were judicially noticed for completely different facts—which is ***not*** the appropriate analysis.[9]

PG&E's approach does not pass muster after the Ninth Circuit's decision in *Orexigen*, noting "a concerning pattern in securities cases like this one: exploiting [judicial notice] procedures

---

[8] *See, e.g.*, OBJ at 19, 39 & n.12 (mischaracterizing Ex. 25, CPUC Resolution ESRB-8, which speaks for itself); OBJ at 21 (mischaracterizing Ex. 106, containing Misstatement No. 19, by eliding the key word "weather"—*i.e.*, portraying the misstatement as "conditions did not warrant" preemptive electricity shutoff instead of "***weather*** conditions did not warrant" it—which is alleged to be false because as alleged, "weather conditions did, in fact, warrant a shutoff," ¶¶ 314-315); OBJ at 19 (mischaracterizing Ex. 108 as proof that a protocol was implemented, despite the allegation that it "PG&E did not 'implement' it," *see* ¶ 301); OBJ at 38-39 (mischaracterizing Ex. 108 as a protocol listing "many criteria . . . including [] seven weather-related criteria" even though the allegation is that the protocol lists only seven criteria total, not all of which were weather-related, *see* ¶ 300).

[9] Lead Plaintiff does not oppose judical notice of the facts in RJN Ex. 87 (The Butte County District Attorney's June 16, 2020 Camp Fire Report), as it alone among the 113 exhibits appears to be a "source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

1   improperly to defeat what would otherwise constitute adequately stated claims at the pleading

2   stage." 899 F.3d at 998. To discharge its burden, PG&E was required to demonstrate that each

3   "*fact*" was either generally known or "capable of accurate and ready determination," and a fact-by-

4   fact analysis was never even attempted in the RJN.

5           The fact-by-fact analysis is crucial. "Succinctly put, judicial notice is taken of facts, not

6   documents." 21B Charles Alan Wright & Kenneth W. Graham, Jr., Fed. Prac. & Proc. Evid. § 5104

7   (2d ed. Apr. 2023 Update) (citing, *inter alia*, *Orexigen*, 899 F.3d at 999). Further, "a party

8   requesting judicial notice bears the burden of persuading the trial judge that **the fact** is a proper

9   matter for judicial notice." *DEPCOM Power, Inc. v. CSUN Solar, Inc.*, No. 18-CV-00729-JST,

10  2020 WL 5176193, at *2 (N.D. Cal. July 30, 2020) (emphasis added, citations omitted). In other

11  words, the party seeking judicial notice must establish why each proffered **fact** meets all the criteria

12  of Rule 201(b).

13          The RJN neither engages in the required fact-by-fact analysis, nor attempts to establish that

14  any Rule 201(b) elements are satisfied for any external fact. PG&E's failure to carry this burden is

15  sufficient to deny the RJN entirely. *See Vinson v. Cal. Dep't of Corr. & Rehab.*, No. 13-CV-00699-

16  JST, 2014 WL 4594208, at *2 (N.D. Cal. Sept. 15, 2014) (denying judicial notice of news articles

17  because "Plaintiff has not met his burden of demonstrating that these articles satisfy either of these

18  tests" for "judicial notice . . . as required under Rule 201(b) of the Federal Rules of Evidence");

19  *Harrison v. Milligan*, No. 09-4665, 2012 WL 1835428, at *1 (N.D. Cal. May 21, 2012) (denying

20  judicial notice because "[t]he party requesting judicial notice bears the burden of persuading the

21  court **that the particular fact** is not reasonably subject to dispute and is capable of immediate and

22  accurate determination by resort to a source whose accuracy cannot reasonably be questioned" and

23  "Harrison has not met this burden" (emphasis added)).

24          And even if PG&E had attempted to argue why each purported fact was indisputable, and

25  made the further effort to satisfy Rule 201(b), judicial notice would still be improper wherever it

26  proffers such extraneous facts to dispute the allegations of the TAC. The Ninth Circuit puts it

27  simply: "a court cannot take judicial notice of disputed facts." *Orexigen*, 899 F.3d at 999. As set

28

forth below (*see* Part IV, *infra*), the overwhelming majority of the Sufficiency Objection's 364 citations to the RJN are made to dispute facts alleged in the TAC.

Thus, even if some facts contained in the RJN exhibits might be judicially noticeable, (*i.e.*, their dates, who signed them, and so forth), the unsupported, disputed facts for which PG&E offers them—without attempting to carry its burden on a fact-by-fact basis—cannot be judicially noticed. *See Hall-Johnson v. City & Cnty. of San Francisco*, No. 21-CV-07770, 2022 WL 2161602, at *4 (N.D. Cal. June 15, 2022) ("Defendant's request for judicial notice is DENIED as the defendants have not met their burden.").

## IV. PG&E IS NOT ENTITLED TO JUDICIAL NOTICE OF DISPUTED FACTS

Judicial notice is never appropriate for a document as a whole, including everything contained therein. It is for "an adjudicative fact only." Fed. R. Evid. 201(a). And a court may only "judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Unsurprisingly, "a court cannot take judicial notice of disputed facts." *Orexigen*, 899 F.3d at 999.

As detailed below, nearly all of PG&E's citations to the RJN improperly dispute facts pled in the TAC.

### A. PG&E Cannot Use Judicial Notice to Support a Truth-on-the-Market Defense at the Pleading Stage

Most often, the Sufficiency Objection cites the RJN to argue that, in light of various pieces of publicly available information, PG&E's investors were not actually misled. To assert such a truth-on-the-market defense, a defendant must prove that the allegedly concealed information was "'transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression'" made by the alleged fraud. *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 950 (9th Cir. 2023). This intensely fact-specific inquiry cannot be resolved "at the pleading stage." *In re Thoratec Corp. Sec. Litig.*, No. 04-03168, 2006 WL 1305226, at *4 (N.D. Cal. May 11, 2006) ("'[A] truth-on-the-market defense is available in principle ... but not at the pleading stage'" (quoting *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004))).

Here, the TAC explicitly alleges that the relevant concealed information was not known to the public until nine discrete events in which new fraud-related information (and effects thereof) emerged followed by investors' genuine surprise and a significant decline in PG&E's stock price. Specifically:

> As information regarding the impact of PG&E's deficient safety practices emerged between October 12, 2017 and November 15, 2018, **investors were surprised**, given Defendants' numerous public statements during the Class Period touting the Company's compliance, safety measures, and its intertwined financial health. As information came to light relating to PG&E's inadequate safety measures and/or the effects thereof, PG&E's artificially inflated share price dropped significantly. Thus, as a result of Defendants' wrongful acts and omissions, Lead Plaintiff and other Class members have suffered significant damages.

¶ 39 (emphasis added); *see also* ¶ 349 ("Analysts were surprised by the results of the Cal Fire reports."); ¶ 359 ("The market was surprised by the number and range of alleged violations of safety laws in the Cal Fire report."); ¶ 391 ("The public was surprised to learn the extent to which PG&E had misled everyone about its lack of safety procedures related to wildfire prevention and responsibility for the North Bay and Camp Fires"); ¶¶ 111-124 (section pleading how "Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire").

Here is just a representative sample of the improper truth-on-the-market arguments in the Sufficiency Objection:

- PG&E disclosed "inherent" risks of running an electrical utility, including starting wildfires, particularly during a drought, beetle infestations, and climate change. OBJ at 9-12 (citing Ex. 68); *id.* at 11-12 (citing Exs. 3-6); *id.* at 44 (citing Ex. 5); *id.* at 47 & n.17 (citing Exs. 5, 24, 84); *id.* at 62 (citing Exs. 2-6); *id.* at 65 (citing Ex. 4); *id.* at 69 (citing Exs. 4-6); *id.* at 70 (citing Exs. 4-6).

- PG&E warned investors it "may" cause a catastrophic event that "could" result in unrecoverable financial losses and California law provides for significant liability for utilities that fail to heed any regulation. OBJ at 10-11 (citing, without quoting, Exs. 1-6).

- PG&E disclosed its potential liability for the 2015 Butte Fire. OBJ at 14-15 (citing Exs. 4, 5, 10, 76); *id.* at 47-48 (citing Exs. 4, 6, 70, 74).

- Various sources discussed other times PG&E may have violated safety regulations. OBJ at 15 (citing Exs. 30, 53, 70); *id.* at 19-20 & 50 (citing Exs. 31–63, 66, 70, 74-79).

- "[E]liminating the dividend signaled to the market the enormous potential liability." OBJ at 17 (citing Ex. 6, PG&E's SEC filing, not any market commentary)

- PG&E disclosed it also caused unrelated, smaller fires. *Id.* at 47-50 (citing Exs. 4-6); *id.* at 50 (citing Exs. 4-6).

- PG&E disclosed it "could be subject to additional regulatory or governmental" oversight and investigations that could result in fines or other penalties. *Id.* at 53 (citing Exs. 5-6).

- The public became aware of negative news about PG&E "from the time of the North Bay Fires through February 2018." *Id.* at 69-70 (citing Exs. 17, 76-77, 88-89, 100-102, 112).

PG&E fails to analyze whether any of these RJN exhibits "effectively counterbalance[d] any misleading impression" created by the alleged fraud (*Facebook*, 87 F.4th at 950) and what Securities Plaintiffs or other investors reasonably thought in light of the "total mix" of information available to them (*S.E.C. v. Phan*, 500 F.3d 895, 911 (9th Cir. 2007) ("[M]ateriality must be judged in the context of the 'total mix' of information available to investors").[10]   PG&E will have its day in court to argue that "news of the truth credibly entered the market and dissipated the effects of prior misstatements [but] proof of that sort is a matter for trial (and presumably also for a summary-judgment motion)." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 481–82 (2013) (alterations and internal quotations omitted).

### B.    PG&E Cannot Use Judicial Notice to Prove, at the Pleading Stage, that Its Statements Were "True" or "Not Misleading"

The Sufficiency Objection cites 74 RJN exhibits – many of them, repeatedly – to argue improperly that the nineteen alleged misstatements were "true" or at least "not misleading." *See generally* Sufficiency Objection Sections C.1.c(2)-(5), C.1.d(1)-(6), C.2.b, C.3.a-b, & C.4.a-b (citing RJN Exs. 1-6, 7-12, 15-22, 24, 31-63, 66, 68, 70, 74-79, 84-86, 88-89, 101-103, 109, 111-112). They must wait until after discovery, on summary judgment or at trial to make these arguments, each of which is contradicted by the TAC. For example:

- "PERA cannot overcome judicially noticeable facts showing that PG&E made these efforts" to improve safety. OBJ at 36 (citing Exs. 71 & 86).
  - *But see* ¶ 238 ("PG&E did not make substantial improvements in wildfire safety over … six years" (internal quotation marks omitted).

---

[10] For the same reasons, Ex. 103 (PG&E's historical stock prices during the asserted Class Period) is not judicially noticeable. *See In re Thoratec Corp. Sec. Litig.*, No. C-04-03168 RMW, 2006 WL 1305226, at *4 (N.D. Cal. May 11, 2006) (declining to take judicial notice of defendant's historical stock prices).

- "PG&E did in fact approximately 'double' the spending . . . toward vegetation management for 2016 and 2017." OBJ at 36-37 (citing Ex. 67) & *id.* at 58.
  - *But see* ¶ 259 ("PG&E did not double its typical vegetation management spending" those years, but rather "spent $194,094,406 on vegetation management in 2015, $198,735,579 in 2016, and $201,456,193 in 2017 – increases of only 2.4% and 1.4%, respectively").

- Misstatement No. 3 in 2015 about "the Recloser Disabling Pilot Program" "Was True." OBJ at 40-41 (citing RJN Ex. 71).
  - *But see* ¶ 209 (Misstatement No. 3 was false because "PG&E dangerously kept reclosers in use through at least October 2017," "PG&E reclosers caused one of the North Bay Fires," and "a recloser was found on a broken PG&E pole at the second ignition point for the Camp Fire").

- "[T]he presence of unworked trees was public knowledge, which wholly undermines an inference of scienter." OBJ at 57 (citing RJN Exs. 31-63).
  - *But see* ¶¶ 104-105 ("PG&E never disclosed" the "scale" of its unworked tree violations, in the thousands, until "March 5, 2019," much less the fact that it had "actual knowledge since 2015" of such rampant safety violations).

- Misstatements of annual inspections were not false because "PERA relies on hindsight in the form of the CPUC's later investigation and findings regarding inspections" of "Tower :27/221," OBJ at 45-46 (citing Ex. 69)
  - *But see* ¶¶ 117-118 (misstatements of annual inspections were false because "PG&E had not inspected Tower :27/222 [a different tower] since August 2014, and prior to that, not since 2009, "pursuant to an internal policy" to inspect such equipment only "every five years")

Overall, for each of the nineteen alleged misstatements, the TAC contains a subsection

pleading precisely **why** each statement is false and/or misleading.[11] These sections build on earlier

portions of the TAC that detail how each statement is false and/or misleading.[12] As a result, the

---

[11] ¶¶ 195-196 (reasons why Misstatement No. 1 was false/misleading); ¶¶ 198-207 (same, No. 2); ¶¶ 209-210 (No. 3); ¶¶ 212-221 (No. 4); ¶¶ 223-231 (No. 5); ¶¶ 234-236 (No. 6); ¶¶ 238-240 (No. 7); ¶¶ 242-245 (No. 8); ¶¶ 250-257 (No. 9); ¶¶ 259-263 (No. 10); ¶¶ 265-269 (No. 11); ¶¶ 272-279 (No. 12); ¶¶ 281-285 (No. 13); ¶¶ 288-295 (No. 14); ¶¶ 297-298 (No. 15); ¶¶ 301-302 (No. 16); ¶¶ 304-308 (No. 17); ¶¶ 310-313 (No. 18); ¶¶ 315-316 (No. 19).

[12] ¶¶ 77-81 (section pleading how "PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point"); ¶¶ 82-83 (section pleading how "PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period"); ¶¶ 84-85 (section pleading how "After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal"); ¶¶ 86-92 (section pleading how "PG&E Concealed Its Unsafe Use of Reclosers During the Class Period"); ¶¶ 93-110 (section pleading how "PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period"); ¶¶ 111-124 (section pleading how "Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire"); ¶¶ 125-140 (section pleading how "PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety Violations"); ¶¶ 141-176 (section pleading how "PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to Follow It Was a Proximate Cause of the Camp Fire").

TAC precisely contradicts each of PG&E's assertions that the statements were in fact "true" or at least "not misleading." The Sufficiency Objection relies on the RJN to dispute these well-pled facts, but "a court cannot take judicial notice of disputed facts." *Orexigen*, 899 F.3d at 999.

Two instances of PG&E's use of external facts to dispute well-pled allegations deserve special attention, since PG&E may attempt to argue (erroneously, and too late) that its exhibits merely supplement the record with additional facts without outright contradicting the TAC's allegations. They are: that PG&E's vegetation management expenditure must be reconsidered in light of its "Catastrophic Even Memorandum Account ("CEMA"),[13] and the introduction of extraneous facts about PG&E's inspection procedures.[14] The Court should not regard these facts as merely collateral, and in any event, as argued below, Lead Plaintiff disputes them, so they remain off-limits.

### i. PG&E Improperly Uses Extraneous Documents to Dispute Allegations that the Company Misrepresented Its Spending "Doubling"

Days after the North Bay Fires, PG&E hosted a conference call with investors on November 2, 2017. ¶ 258. Already, PG&E's stock had begun its decline on initial indications of PG&E's imprudence. ¶¶ 328-338. To reassure investors, PG&E's CEO stated (among other alleged misrepresentations) that "[i]n 2016, we spent an additional $200 million, essentially doubling our typical vegetation management spending last year." ¶ 258 (Misstatement No. 10). Its President then reiterated: "we've doubled the amount that we've invested in veg[etation] management." ¶ 264 (Misstatement No. 11). But as alleged, PG&E had not materially increased its total yearly vegetation management spending: PG&E spent $194,094,406 on vegetation management in 2015, $198,735,579 in 2016, and $201,456,193 in 2017—increases of only 2.4% and 1.4%, respectively. In contrast, inflation rose 5.48% over the same period. ¶78. Thus, PERA alleges, the "doubling" reassurances were false. ¶¶ 259, 265.

PG&E abuses judicial notice to dispute these well-pled facts. First, the Sufficiency Objection asserts, without evidence, that the TAC's numbers represent mere "prospective" General

---

[13] *See* OBJ at 13 (citing Ex. 24), *id.* at 36-37 (citing Ex. 67 & Cal. Pub. Util. Code §§ 454(a), 454.9(a)), *id.* at 58 (cross-referencing "supra § III.C.1.c(2)"), and *id.* at 82 (citing Ex. 67).
[14] *See* OBJ at 45-46 (citing Exs. 29, 69, 86, & 87).

Rate Case ("GRC") budgets and do not include "retroactive[]" CEMA spending (OBJ at 36), which may be true and may not be. Second, the RJN attaches, as Exhibit 67, PG&E's March 30, 2018 "CEMA" application to CPUC for reimbursement that PG&E's Motion characterizes as follows: "PG&E applied for retroactive recovery of $394.5 million in costs of vegetation management work that it performed over and above the pre-approved spending" in 2016 and 2017, combined. OBJ at 37 (citing Ex. 67, CEMA Application, at 6-8).[15] PG&E argues that, through this CEMA process, "PG&E did in fact approximately 'double' the spending that it was approved to apply toward vegetation management for 2016 and 2017," hence their "doubling" statements were true. OBJ at 37.

As an initial matter, the CEMA application must be ignored because no matter what it says, it serves no purpose here other than disputing well-pled allegations of what PG&E spent on vegetation management. "[A] court cannot take judicial notice of disputed facts." *Orexigen*, 899 F.3d at 999. The TAC alleges PG&E's total spending, and that is how its sufficiency must be judged.

But more to the point, Lead Plaintiff vigorously disputes all the factual inferences PG&E seeks through Exhibit 67. There are two major problems with how the Sufficiency Objection uses Exhibit 67.

First, after it filed this CEMA application on March 30, 2018, PG&E had to withdraw it.[16] Two public documents, which PERA asks to be judicially noticed just for their existence, show that two[17] parties[18] challenged the accuracy of PG&E's claims in the CEMA application. Thereafter, another public document (that can also be noticed merely for its existence) shows that on July 1,

---

[15] Because Exhibit 69 is mentioned nowhere in the TAC, it is not incorporated by reference and can only be considered if judicially noticed. *See Orexigen*, 899 F.3d at 1005.

[16] *See generally* CPUC Docket A.18-03-015, *available at* https://apps.cpuc.ca.gov/apex/f?p=401:56::::RP,57,RIR:P5_PROCEEDING_SELECT:A1803015. Bankruptcy courts can "take judicial notice of relevant proceedings in other courts" as reflected on public dockets. *In re Clark*, No. BAP CC-11-1322, 2012 WL 1911926, at *1 (B.A.P. 9th Cir. May 25, 2012), *aff'd*, 556 F. App'x 656 (9th Cir. 2014).

[17] CPUC, Protest of The Utility Reform Network, filed May 4, 2018, available at http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M213/K824/213824387.PDF.

[18] CPUC, Protest of the Office of Ratepayer Advocates, filed May 4, 2018, available at http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M213/K823/213823845.PDF.

1   2019, PG&E requested to **withdraw** the same application it now proffers as indisputable, judicially-

2   noticeable evidence, in part to "incorporate certain errata and updates" including removal of "errant

3   2017 tree mortality costs ... and other items" not further described.[19] The CPUC then allowed

4   PG&E to submit a new application, under the condition that it be audited.[20] After the audit and **two**

5   **more** amended CEMA applications, PG&E requested, and the CPUC granted, a "$36.7 million ...

6   global reduction" in the CEMA request, *i.e.*, overall and without specifying whether those

7   reductions applied to 2016, 2017, or both.[21] Why PG&E would inform this Court of its initial

8   CEMA request and not the smaller, operative one must be left to this Court's judicial experience

9   and common sense. Suffice it to say that Exhibit 67 is neither "indisputable" nor judicially

10  noticeable. *See* Fed. R. Evid. 201(b).

11          Second, PG&E willfully ignores that the Company claimed CEMA spending in 2015 as

12  well. Even as PG&E accuses Lead Plaintiff of "cherry-pick[ing]" data, the Company selectively

13  touts its CEMA spending in 2016 and 2017 (to make the "doubling" statements seem true), yet they

14  neglect to mention that PG&E also sought $126,775,000 in CEMA reimbursement for 2015.[22] So

15  even if this Court were to (a) accept their disputed view that spending calculations require a

16  combination of the TAC's allegations plus CEMA requests for each year, and (b) allow use of

17  judicial notice to delve into disputed facts about how to measure CEMA expenses, it must still

18  account for 2015 CEMA spending to judge whether total spending really doubled in 2016 or 2017.

19          Such revised totals would still show PG&E's spending ***not*** doubling. The combined TAC

20  plus CEMA spending would have been <u>$321 million in 2015</u> ($194,094,406 budgeted in 2015 as

21  alleged, plus $126,775,000 of CEMA), <u>to $440 million in 2016</u> ($198,735,579 in 2016, plus

22  [19] *See* CPUC, Motion of Pacific Gas and Electric Company (U 39 E) For Reissuing Its 2018 CEMA
23  Testimony and Workpapers and Auditor Selection Process, dated July 1, 2019, *available at*
    http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M309/K725/309725339.PDF.

24  [20] CPUC, Assigned Commissioner's Revised Ruling Granting Pacific Gas and Electric Company
    Motion to Facilitate the Hiring of an Independent Auditor for Resolution ESRB-4 Purposes, filed on
25  Oct. 16, 2019, *available at*
    http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M317/K684/317684171.PDF.

26  [21] CPUC, Decision Approving Settlement, dated Mar. 31, 2022, *available at*
    https://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M461/K202/461202251.PDF,
27  [22] CPUC, Application of Pacific Gas and Electric Company, filed Oct. 31, 2016, *available at*
28  https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M169/K117/169117865.PDF (summing 2015
    totals in Table 1-1).

$259,679,000 of CEMA, minus $18,350,000 or half of the $36,700,000 by which PG&E voluntarily lowered its CEMA request), to $318 million in 2017 ($201,456,193 in 2017, plus $135,170,000 in CEMA, minus the remaining $18,350,000)—**still not close to ever doubling**.

PG&E's request to take judicial notice of Exhibit 67 is a paradigmatic example of why the Ninth Circuit found letting an accused party "[s]ubmit[] documents not mentioned in the complaint to create a defense" at the pleading stage is so "perverse"—and so reversible. *Orexigen*, 899 F.3d at 1003. PG&E left most of the relevant documents for truly understanding CEMA out of their RJN, making their abuse of judicial notice even more egregious.

As the Ninth Circuit warned, "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id,* at 998.

### ii. PG&E Improperly Challenges the Well-Pled Facts as to Why the Company's "Inspection" and "Pole Integrity" Statements Were False

Four of PG&E's allegedly fraudulent statements involve its assurances that it "inspect[ed] all" or "every mile" or "every segment of" its powerlines "every year," (¶¶ 197, 211, 258, 264). These statements were false, as alleged, because PG&E had not inspected the tower responsible for the Camp Fire's first ignition point (Tower :27/222) since August 2014, and prior to that, not since 2009, pursuant to an internal policy that transmission poles be inspected only "every five years" (¶ 118), even though an internal company email stated that "the likelihood of failed structures happening is high" on the Caribou-Palermo transmission line specifically (¶ 136).[23]

After Cal Fire issued its first and second reports that PG&E vegetation and other safety violations caused at least some of the North Bay Fires (in May and June of 2018), PG&E's fraud evolved; it began to warrant that "PG&E meets or exceeds regulatory requirements for pole integrity management using a comprehensive database to manage multiple patrol and inspection schedules" within days of both Cal Fire reports. ¶¶ 280, 287. These statements were false and

---

[23] As further alleged, when PG&E introduced its 2019 Mitigation Plan to bring its program into compliance, it called for increased inspections that PG&E expected to cost between $798 million and $1.396 billion—compared to the "**$15 million** authorized in PG&E's last [General Rate Case]," an extraordinary increase by **more than a factor of 50**. ¶ 183. The clear inference is that old PG&E was not actually doing all the necessary inspecting.

1    misleading, as alleged, for the reasons above and because "the failure of power poles" contributed

2    to two near-simultaneous pole integrity failures that sparked the Camp Fire. ¶¶ 281, 290, 353.

3            PG&E attempts to use judicial notice to undermine these well-pled allegations. It proffers

4    Exhibit 69, a report by PG&E's regulator,[24] to claim that "Tower :27/221, was inspected aerially on

5    September 11, 2018," and argues that

6                    PERA offers no plausible explanation of how the need for maintenance
                at an individual pole on a single transmission line, out of about two
7                    million poles on 114,000 miles of distribution line and more than
                18,000 miles of transmission lines in PG&E's service area, would have
8                    been material to investors.

9    OBJ at 45-46. Far from indisputable, the argument is a fallacy: it confuses evidence of one violation

10   with a conclusion that there was only one violation. It is also swaps a well-pled fact for an irrelevant

11   one by confusing "Tower :27/221" (the subject of Exhibit 69) with "Tower :27/222" (the failure of

12   which sparked the Camp Fire, *see* ¶¶ 117-118). Even assuming that the confusion was

13   unintentional, it amounts to a fallacious argument that the alleged misstatements regarding pole

14   integrity were not false because, two months before the Camp Fire, a PG&E crew conducted a

15   cursory aerial patrol over a single tower on the Caribou-Palermo line that had nothing to do with the

16   Camp Fire. *See* OBJ at 45 (citing Ex. 69 at 14-15). It is irrelevant and, therefore, not judicially

17   noticeable. *See Orexigen*, 899 F.3d at 1000 & n.5.

18           Nor is the document judicially noticeable on its face. Exhibit 69 bears major redactions (*e.g.*,

19   Ex. 69 at 23, 25) and a Bates stamp in the lower right (CAMP-XXXX), calling into question

20   whether it is even public. *See Velasquez v. Chase Home Fin. LLC*, No. 10-01641, 2010 WL

21   3211905, at *3 n.2 (N.D. Cal. Aug. 12, 2010) (denying judicial notice of "non-public documents . . .

22   because they are not subject to notice under Rule 201(b) of the Federal Rules of Evidence").

23           If the document became public at a certain time (still unestablished), it may be noticed at

24   most for its availability from that point on, but that is not how PG&E attempts to use it. PG&E asks

25   this Court to conclude, wrongly, that it proves PG&E inspected the Caribou-Palermo line two

26   _____

27   [24] Separately, Exhibit 69 is not incorporated by reference. It was never mentioned in the TAC, and it
     forms the basis for no claims. Because "the Complaint did not refer to this document, and the
28   document did not form the basis of any claims," a "court abuse[s] its discretion by incorporating it."
     *Orexigen*, 899 F.3d at 1005.

months before the Camp Fire. OBJ at 45 (citing Ex. 69 at 14-15). But even if all the document's contents are taken as true "adjudicative facts"—which would be an improper use of judicial notice—the most it would show is that a PG&E crew *says* it conducted a cursory aerial patrol over a single tower that had nothing to do with the Camp Fire, and that PG&E internally called this clearly insufficient move an "inspection." *See id*. It disputes factual assertions that the TAC pleads specifically, *e.g.*: "PG&E had not inspected Tower :27/222 since August 2014" and "an aerial patrol is not an inspection." ¶ 118.[25] Whatever PG&E's aerial flyovers entailed—how much scrutiny they involved, how much time and attention each tower would receive, what elements would get checked, what elements could not be checked, whether such flyovers actually cover "every segment" of its lines, and other potential distinctions from true inspections—remains a factual dispute and must be resolved before deciding whether PG&E's promises of inspections "every year" for "every segment" of its powerlines, and of "pole integrity" compliance, were in fact false or misleading.

   For now, the annual inspection and "pole integrity" misstatements are adequately pleaded as false and misleading because PG&E allegedly had an internal policy to inspect transmission poles only "every five years." ¶ 118. However used, Exhibit 69 serves no purpose other than to contradict that well-pled fact, and "a court cannot take judicial notice of disputed facts." *Orexigen*, 899 F.3d at 999. The detail that Exhibit 69 relates to **the wrong tower** also matches the same "concerning pattern in securities cases" that the *Orexigen* panel warned of, namely, "exploiting these [judicial notice and incorporation-by-reference] procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Orexigen*, 899 F.3d at 998.

---

[25] The TAC identifies a valid basis for PERA's version of these facts (though its allegations must be taken as true at this stage regardless), which was PG&E's own admission in one of its criminal cases: "PG&E has admitted that an aerial patrol is not an inspection, as it is only '[d]uring a detailed inspection of a transmission line' that 'PG&E personnel are instructed to look for and document abnormalities or circumstances that will negatively impact safety, reliability, or asset life,'" distinguishing inspections from aerial flyovers. ¶ 118 (quoting PG&E Camp Fire Incident Description & Factual Summary at 4, *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-175 (N.D. Cal. Dec. 31, 2018), ECF No. 956-1).

1    **C.      PG&E Cannot Use Judicial Notice to Dispute Other Well-Pled Allegations**

2          A handful of other facts are not judicially noticeable as proffered by the Sufficiency

3    Objection.

4          A key allegation of the TAC is that, based on PG&E's own admissions, a criminal court

5    found that PG&E had "actual knowledge from 2015 to 2017 that its vegetation management

6    practices did not comply with California safety regulations on the order of thousands of violations

7    per year." ¶¶ 394-396 (pleading company's actual knowledge of 3,962 vegetation management

8    violations at the time the North Bay Fires erupted). PG&E asks the Court to judicially notice

9    Exhibit 96, the "PG&E Response to Request for Information" that the Company submitted to

10   defend itself in a related criminal action. Based on that document, PG&E argues that "the presence

11   of unworked trees was public knowledge, which wholly undermines an inference of scienter." OBJ

12   at 57-58 (citing Ex. 96). But Exhibit 96 is dated February 22, 2019—*i.e.*, more than three months

13   after the Class Period. Contrary to PG&E's argument, Exhibit 96 says nothing about what was or

14   was not "public knowledge" during the alleged Class Period.[26] In other words, Ex. 96 is not

15   judicially noticeable for facts about what investors knew during the Class Period, because it

16   contains none.

17         Moreover, the PG&E cites Ex. 96 for the further extraneous fact that "only 131 of those

18   [3,962 allegedly unworked] trees remained pending, and none of those trees were at the ignition

19   points of any North Bay Fires." Suff. Op. at 75-76 (citing Ex. 96). Far from indisputable, those facts

20   are unreliable, self-serving hearsay (being PG&E's own out-of-court statement, *see* Fed. R. Evid.

21   801(c)(2)), not a "source[] whose accuracy cannot reasonably be questioned" (Fed. R. Evid. 201).

22   "[A] court cannot take judicial notice of a fact that would be inadmissible if it were offered as

23   evidence." Wright & Miller, 21B Fed. Prac. & Proc. Evid. § 5104 (2d ed.).

24         PG&E also repeatedly mischaracterizes, without ever quoting, Lead Plaintiff's prior,

25   superseded complaints. OBJ at 23-24 (citing Exs. 90-91); 70-71 (citing Ex. 91). These arguments

26   fail on the merits—because prior complaints are "without legal effect" and because PG&E

27

28   _____
     [26] The alleged Class Period is April 29, 2015 through November 15, 2018. *See* ¶ 1.

mischaracterizes them, occasionally even mixing them up (OBJ at 71)—but making the arguments also abuses judicial notice. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012) (*en banc*) (recognizing "the general rule . . . that an amended complaint supercedes [*sic*] the original complaint and renders it without legal effect"). What an earlier complaint says about the truth of PG&E's fraud emerging, when it was written after the North Bay Fires but before anyone had any knowledge of the Camp Fire, cannot be misconstrued into some judicially noticeable fact that even aspects of the "truth" related to the Camp Fire were fully revealed before the Camp Fire; obviously, no member of the public, including Lead Plaintiff, knew the full extent of the fraud until the later Camp Fire-related revelations. Hence, the import of the prior complaints is far from "indisputable." Fed. R. Evid. 201(b). The Court cannot credit PG&E's unsupported characterizations of these documents as judicially noticeable "adjudicative facts."

## V. THE COURT SHOULD JUDICIALLY NOTICE TEN DOCUMENTS REQUESTED BY LEAD PLAINTIFF

Lead Plaintiff requests that this Court take judicial notice of specific facts in just ten documents: (1) six documents solely for the purpose of refuting PG&E's RJN documents, to the extent the Court considers them, and (2) four documents to introduce indisputable facts that emerged after the TAC was filed and corroborate the allegations of the TAC.

### A. Judicial Notice of Six Select Documents is Proper to Allow Lead Plaintiff to Rebut PG&E's RJN Documents

For the reasons above, PG&E has improperly introduced more than three thousand pages of extraneous material. In response, Lead Plaintiff requests that the following documents be judicially noticed to give Securities Plaintiffs a fair opportunity to respond and avoid tainting the record. *Ritchie*, 342 F.3d at 909 ("[I]t would have been improper for the court to consider the declaration and exhibits attached to the government's opposition without converting the motion to dismiss into a motion for summary judgment and giving Horner an opportunity to respond."). Judicial notice of the following documents attached to the Declaration of Thomas G. Hoffman, Jr. is appropriate, as all are public, none are being noticed for truth of the matters contained therein, and none are being noticed to contradict well-pled factual allegations made in the TAC. *Khoja*, 899 F.3d at 1001.

1. California Public Utilities Commission, Protest of The Utility Reform Network filed May 4, 2018, available at http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M213/K824/213824387.PDF ("TURN Protest")

2. California Public Utilities Commission, Protest of the Office of Ratepayer Advocates filed May 4, 2018, *available at* http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M213/K823/213823845.PDF ("ORA Protest")

3. California Public Utilities Commission, Motion of Pacific Gas and Electric Company (U 39 E) For Reissuing Its 2018 CEMA Testimony and Work papers and Auditor Selection Process dated July 1, 2019, *available at* http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M309/K725/309725339.PDFS

4. California Public Utilities Commission, Assigned Commissioner's Revised Ruling Granting Pacific Gas and Electric Company Motion to Facilitate the Hiring of an Independent Auditor for Resolution ESRB-4 Purposes filed on Oct. 16, 2019, *available at* http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M317/K684/317684171.PDF

5. California Public Utilities Commission, Decision Approving Settlement, *available at* https://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M461/K202/461202251.PDF

6. CPUC, Application of Pacific Gas and Electric Company, filed Oct. 31, 2016, *available at* https://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M169/K117/169117865.PDF

**B.      Judicial Notice of Four Post-TAC Documents Containing Facts Incapable of Dispute is Proper**

Under Federal Rules of Evidence 201, courts may take judicial notice of a such a fact as long as it "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("matters of which a court may take judicial notice" are properly considered when evaluating the sufficiency of a complaint)

Judicial notice of the following four documents attached to the Declaration of Thomas G. Hoffman, Jr. is appropriate, as all are public "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

7. K&E Report, *United States v. Pacific Gas & Electric Company*, No. 3:14-cr-00175, ECF No. 1089 (N.D. Cal. July 26, 2019)

8. Order, *United States v. Pacific Gas & Electric Company*, No. 3:14-cr-00175, ECF No. 1186 (N.D. Cal. April 29, 2020) ("Order Modifying Conditions of Probation") (Alsup, J.)

Exhibits 7 and 8 are federal court filings in the criminal action against PG&E itself. Exhibit 7 is a report prepared by the law firm Kirkland & Ellis LLP serving as a monitor of PG&E, pursuant to an order from Judge William Alsup in PG&E's probation in the Northern District of California. *United States v. Pacific Gas & Electric Company*, No. 3:14-cr-00175, ECF No. 1089. Exhibit 8 is an Order by Judge Alsup modifying the conditions of PG&E's probation. Judicial notice of Exhibits 7 and 8 is appropriate because, as material from a court proceeding, they are matter of public record not subject to reasonable dispute. *See* Fed. R. Evid. 201(b); *Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003) ("Materials from a proceeding in another tribunal are appropriate for judicial notice."); *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012) ("Courts routinely take judicial notice of publicly available records … from other court proceedings.").

9.  CPUC letter regarding Transmission Audit of PG&E's Table Mountain Division dated Oct. 23, 2019, *available at* https://www.cpuc.ca.gov/-/media/cpuc-website/files/uploadedfiles/cpuc_public_website/content/safety/electric_safety_and_reliability/reports_and_audits/electric_facilities/ta2019-847-pge-tablemountaintransmissionauditreport.pdf

Exhibit 9 is a government report prepared by the CPUC. Judicial notice of Exhibit 9 is appropriate because, as a report authored by a government agency, it is a matter of public record not subject to reasonable dispute. *See* Fed. R. Evid. 201(b); *Orexigen*, 899 F.3d at 999; *Mullins v.Wells Fargo Bank, N.A.*, 2013 WL 2318879, at *3 (E.D. Cal. May 28, 2013) (taking judicial notice of "official documents from government agencies"); *Saldaña v. Occidental Petroleum Corp.*, 2012 WL 12884907, at *1 n.1 (C.D. Cal. Feb. 13, 2012), a*ff'd sub nom. Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544 (9th Cir. 2014) (taking judicial notice of report authored by government agency).

10. ABC 10, "Secrets of the Camp Fire: 3 years later, exposing evidence of PG&E's crimes," November 8, 2021; https://www.abc10.com/article/news/local/wildfire/camp-fire-evidence-of-pge-crimes/103-1a46d20d-9891-4043-a474-944a8b97d9f2.

Exhibit 10 is a news article published *ABC 10* summarizing information revealed during PG&E's litigation and criminal actions following the 2017 North Bay and 2018 Camp Fires. Judicial notice of Exhibit 10 for the limited purpose of showing the public's awareness of information in the

article is appropriate because it is a publicly available document, available on a publicly accessible website. Fed. R. Evid. 201(b); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010); *Diaz v. Intuit, Inc.*, 2018 WL 2215790, at *3 (N.D. Cal. May 15, 2018) (Davila, J.) ("Publicly accessible websites and news articles are proper subjects of judicial notice."). Judicial notice of this news article is appropriate to show that the market was not previously aware of the information contained in the article. *See In re Kalobios Pharm., Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1003-04 (N.D. Cal. 2017) (Davila, J.) (judicial notice appropriate where party "does not offer these news reports for the truth of their content, but rather to refute Plaintiffs' 'fraud-on-the-market' theory by demonstrating [w]hat [information] public news sources" were aware of).

## VI.   **CONCLUSION**

The PG&E's 95-page Sufficiency Objection cites the RJN documents 364 times, averaging nearly four times per page. Most of these citations, and the arguments premised thereon, are improper for the reasons outlined above. Accordingly, the Court should disregard them while evaluating the Sufficiency Objection. And while there are judicially noticeable facts outside the TAC that the Court can consider, such as those in Lead Plaintiff's ten requested documents, such facts refute, not support, the Sufficiency Objection.

Dated: March 15, 2024

**LABATON KELLER SUCHAROW LLP**

By: */s/ Thomas A. Dubbs*
Thomas A. Dubbs (*pro hac vice*)

*Lead Counsel to Securities Lead Plaintiff and the Class*

- and -

**MICHELSON LAW GROUP**

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

- and –

**LOWENSTEIN SANDLER LLP**
*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

- and –

**ADAMSKI, MORISKI, MADDEN,
CUMBERLAND & GREEN LLP**

*Liaison Counsel for the Class*

- and –

**ROBBINS GELLER RUDMAN & DOWD LLP**

*Counsel for the Securities Act Plaintiffs*

- and –

**VANOVERBEKE, MICHAUD & TIMMONY,
P.C.**

*Additional Counsel for the Securities Act Plaintiffs*

**EXHIBIT A**
**COUNSEL**

2

**LABATON KELLER SUCHAROW LLP**
Thomas A. Dubbs (*pro hac vice*)
Carol C. Villegas (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Thomas G. Hoffman, Jr. (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone 212-907-0700
tdubbs@labaton.com
cvillegas@labaton.com
mcanty@labaton.com
thoffman@labaton.com

*Lead Counsel to Securities Lead Plaintiff and the Class*

**ADAMSKI, MORISKI, MADDEN, CUMBERLAND & GREEN LLP**
James M. Wagstaffe (SBN 95535)
100 Pine Street, Suite 2250
San Francisco, California 94111
Telephone 415-254-8615
wagstaffe@ammcglaw.com

*Liaison Counsel for Securities Lead Plaintiff and the Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
Scott Cargill (*pro hac vice*)
Colleen Restel
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone 973-597-2500
Facsimile 973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com
scargill@lowenstein.com
crestel@lowenstein.com

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone 415-512-8600
Facsimile 415-512-8601
randy.michelson@michelsonlawgroup.com

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone 619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone 313-578-1200
tmichaud@vmtlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone 415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Counsel for Securities Act Plaintiffs*

*Additional Counsel for the Securities Act Plaintiffs*