# EXHIBIT 1

```
 1                 UNITED STATES BANKRUPTCY COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3                           -oOo-

 4   In Re:                    ) Case No. 19-30088
                               ) Chapter 11
 5   PG&E CORPORATION AND PACIFIC )
     GAS AND ELECTRIC COMPANY   ) San Francisco, California
 6                              ) Wednesday, January 24, 2024
                   Debtors.    ) 10:00 AM
 7   _____ )
                                 STATUS CONFERENCE REORGANIZED
 8                               DEBTORS' OBJECTION TO PROOF
                                 OF CLAIM NO. 2090 FILED BY
 9                               AMIR SHAHMIRZA [12130]

10                               PERA'S MOTION FOR APPOINTMENT
                                 AS LEAD PLAINTIFF AND
11                               APPROVAL OF SELECTION OF LEAD
                                 COUNSEL FILED BY SECURITIES
12                               LEAD PLAINTIFF AND THE
                                 PROPOSED CLASS [14169]
13
                                 DISCOVERY RULING ON
14                               REORGANIZED DEBTORS' THIRTY-
                                 THIRD SECURITIES OMNIBUS
15                               CLAIMS OBJECTION TO PERA AND
                                 SECURITIES ACT PLAINTIFFS'
16                               TAC, INCLUDING CERTAIN
                                 CLAIMANTS THAT ADOPTED THE
17                               TAC FILED BY PG&E CORPORATION
                                 [14200]
18
                                 DISCOVERY RULING ON
19                               REORGANIZED DEBTORS' THIRTY-
                                 FOURTH SECURITIES CLAIMS
20                               OMNIBUS OBJECTION TO CLAIMS
                                 ADOPTING RKS AMENDMENT FILED
21                               BY PG&E CORPORATION [14203]

22                               DISCOVERY RULING ON
                                 REORGANIZED DEBTORS' THIRTY-
23                               FIFTH SECURITIES CLAIMS
                                 OMNIBUS OBJECTION TO BAUPOST
24                               AMENDMENT FILED BY PG&E
                                 CORPORATION [14206]
25
```

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 2 of 81

```
 1                    TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE DENNIS MONTALI
 2                 UNITED STATES BANKRUPTCY JUDGE

 3   APPEARANCES (All present by video or telephone):
     For the Reorganized        STEVEN A. LAMB, ESQ.
 4   Debtors:                    Rovens Lamb LLP
                                  2601 Airport Drive
 5                               Suite 370
                                 Torrance, CA 90505
 6                               (310)536-7830

 7                               THOMAS B. RUPP, ESQ.
                                  Keller Benvenutti Kim LLP
 8                               650 California Street
                                 Suite 1900
 9                               San Francisco, CA 94108
                                  (415)636-9015
10
                                 Richard W. Slack, Esq.
11                                Weil, Gotshal & Manges LLP
                                  767 Fifth Avenue
12                               New York, NY 10153
                                  (212)310-8000
13
                                 Joshua G. Hamilton, Esq.
14                                Latham & Watkins LLP
                                  10250 Constellation Boulevard
15                               Suite 1100
                                 Los Angeles, California 90067
16                                (424)653-5500

17   For Amir Shahmirza, Komir,  LAWRENCE A. JACOBSON, ESQ.
     Inc.:                       Cohen and Jacobson, LLP
18                                66 Bovet Road
                                 Suite 285
19                                San Mateo, CA 94402
                                  (650)261-6280
20
     For PERA:                   MICHAEL S. ETKIN, ESQ.
21                                Lowenstein Sandler LLP
                                  One Lowenstein Drive
22                                Roseland, New Jersey 07068
                                  (973)597-2500
23

24

25
```

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page 3 of 81

```
 1   For RKS Claimants:          FRANK T.M. CATALINA, ESQ.
                                  Rolnick Kramer Sadighi LLP
 2                                1251 Avenue of the Americas
                                  New York, New York 10020
 3
     Also Present:               Amir Shahmirza, Claimant
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18   Court Recorder:            LORENA PARADA
                                United States Bankruptcy Court
19                              450 Golden Gate Avenue
                                San Francisco, CA 94102
20

21   Transcriber:               RIVER WOLFE
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (800) 257-0885
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 4
of 81

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, JAN. 24, 2024, 10:01 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session, the Honorable

5    Dennis Montali presiding.  Calling the matter of PG&E

6    Corporation.

7            THE COURT:  Morning.  Mr. Jacobson.

8            MR. JACOBSON:  Good morning, Your Honor.  Lawrence

9    Jacobson for claimant Komir, Inc.  Mr. Shahmirza is present

10   here with me.  He is off camera.

11           THE COURT:  Muted.  Mr. Lamb, you're on mute.

12           Mr. Rupp, you want to speak for him?

13           MR. RUPP:  Good morning, Your Honor.  Thomas Rupp of

14   Keller Benvenutti Kim for the reorganized debtors.  And not to

15   state the obvious, but I take it Your Honor is taking this

16   matter first and all of the security stuff next?

17           THE COURT:  We are.  That's true.

18           MR. RUPP:  Very good.

19           THE COURT:  All right.  Mr. Lamb, you turned your mic

20   on.  Good morning.

21           Mr. lamb, can you hear me?

22           Mr. Jacobson, you can hear me, can't you?

23           MR. JACOBSON:  I can.  These kind of connection issues

24   are a source of great anxiety every time.

25           MR. LAMB:  Madam clerk, is there audio on?  I cannot

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page 5
of 81

1  hear anything.

2          THE CLERK:  Yes.  Mr. Lamb, can you hear us?

3          THE COURT:  We can hear you, Mr. Lamb.

4          Well, I wonder if Mr. Lamb has his own setting too

5  low.

6          Well, Mr. Rupp, I set this one first because it would

7  be -- I thought it'd be quick.

8          MR. RUPP:  Your Honor, do you think you could -- if

9  it's all right with everyone, could you trail it while we get

10 Mr. Lamb sorted out?

11         THE COURT:  Well, I'll have to do that.  But I've got

12 much longer chunk of time reserved.  I'd like to just see if

13 he's made any progress.

14         Mr. Lamb, can you hear me yet?

15         Well, I guess we'll have -- we have no choice on that.

16         MR. JACOBSON:  Well, maybe he could -- excuse me.

17 Maybe he could call in on the telephone for the audio part?

18         THE COURT:  Ms. Parada, can we do that?  Can we tell

19 him to do that?

20         THE CLERK:  I can send him an email, Your Honor.  He

21 can't hear us to give him those directions.

22         THE COURT:  Okay.  Well, we'll see if we can get this

23 fixed in a minute or two because I don't want to delay it

24 extensively, but I also don't want to wait too long for the

25 other counsel coming up in the next matter.

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 6
of 81

1          So Mr. Lamb, are you -- or Mr. Rupp, are you in direct
2  communication with him?  You could also call him on his phone
3  and tell him to call in on it on the audio.
4          MR. RUPP:  Oh, Your Honor, I would need the
5  instructions from Ms. Parada on how to call in and if that's
6  possible.
7          THE COURT:  No, that's what I said.  I said you could
8  call Mr. Lamb on your telephone the old fashioned way and tell
9  him to call in on the audio line or do something or to reboot
10  or do something.
11          Well, Ms. Parada, did you send him something?
12          THE CLERK:  I did.  I did inform him that we can hear
13  him and that -- I will mute him.
14          THE COURT:  Okay.  Mr. Lamb, how about now?  Can you
15  hear me?
16          Well, we'll wait a minute or two.  That's about it.  I
17  almost canceled this hearing and just sent out a message giving
18  you a trial date now, but we decided to wait.
19          So Mr. Jacobson, your comment confuses me.  I mean,
20  I --
21          MR. LAMB:  I'm still not hearing anything.
22          THE COURT:  Oh.
23          THE CLERK:  Mr. Lamb, can you hear us?
24          THE COURT:  Mr. Jacobson, my question to you, you
25  commented about frequent problems.  You mean through the court

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page 7
of 81

1 or with Mr. Lamb?

2         MR. JACOBSON: Oh, no. With the court, state court

3 and federal court. There's always that moment of anxiety where

4 everybody else is connected and they're saying, counsel,

5 counsel. And you're trying to figure out what's wrong and bad

6 things get worse and it's very frustrating. I can empathize

7 with Mr. Lamb.

8         THE COURT: Oh, I hate to tell you, we've had a pretty

9 good record. Maybe it's the A team at work here for you.

10         Mr. Lamb, last chance. Can you hear me?

11         All right. Well, gentlemen, I'll just have to try you

12 at the end of the calendar -- not the end, but we did set aside

13 about forty minutes for --

14         MR. LAMB: Great. I can't hear anything.

15         THE COURT: Well, okay. Obviously, I think the

16 problem must be at Mr. Lamb's end and --

17         THE CLERK: Yes, Your Honor.

18         THE COURT: -- we can hear him, so something's

19 working. It's probably nothing more than a setting on his own

20 audio, and which might just be a simple -- he needs a teenager

21 in the room to come in and fix it for him. But I'm going to

22 move the Shahmirza matter off after the next matter.

23         So I'm sorry, Mr. Jacobson and Mr. Rupp. I'm going

24 have to do it that way. So --

25         MR. JACOBSON: Very good, Your Honor.

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 8
of 81

1          THE COURT:  Okay.  Okay.  Ms. Parada, go ahead and
2  call the next item on the PG&E case.

3          THE CLERK:  Taking the PERA motion, Your Honor.

4          THE COURT:  Yes.

5          THE CLERK:  If I can just have counsel that will
6  appear to raise a hand, please.

7          THE COURT:  Morning, Mr. Slack.  Just state your
8  appearance, please.

9          MR. SLACK:  Good morning, Your Honor.  Richard Slack
10  from Weil, Gotshal & Manges for the reorganized debtors.

11          THE COURT:  Mr. Catalina, are you going to make an
12  appearance?

13          MR. CATALINA:  Yes.  Good morning, Your Honor.  Frank
14  Catalina of Rolnick Kramer Sadighi for the RKS claimants.

15          THE COURT:  Okay.  Mr. Etkin, are you making the
16  argument today?

17          MR. ETKIN:  I am, Your Honor.  Can you hear me?

18          THE COURT:  Okay.  State your appearance, and then
19  let's get underway.

20          MR. ETKIN:  Okay, Your Honor.  Michael Etkin,
21  Lowenstein Sandler, for PERA.

22          THE COURT:  Mr. Hamilton, are you making an appearance
23  today?

24          MR. HAMILTON:  Yes, Your Honor.  Joshua Hamilton of
25  Latham & Watkins for the reorganized debtors.  Good morning.

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 9
of 81

1      THE COURT:  Okay.  Ms. Parada, why don't we take Mr.

2  Lamb and Mr. Jacobson off the screen for now.

3      THE CLERK:  Yes, Your Honor.

4      THE COURT:  Okay.  All right.  Mr. Etkin you've got my

5  order for argument time.  You ready to do that?

6      MR. ETKIN:  I am, Your Honor, and I do have your

7  order.  And I intend to try and accomplish what you've asked.

8      THE COURT:  How much time do you want to reserve?

9      MR. ETKIN:  I want to reserve eight minutes --

10     THE COURT:  Okay.

11     MR. ETKIN:  -- for rebuttal, Your Honor.

12     THE COURT:  Okay.  Let's do it, and let's get

13  underway.  Go ahead.

14     MR. ETKIN:  Okay.  Well, good afternoon, Your Honor.

15  Good morning to you, I guess.

16     THE COURT:  It is.

17     MR. ETKIN:  As the Court notes, a Rule 23 process

18  working alongside the claims procedures is unusual.  That's

19  what the Court wanted, a dual process.  And there's no basis to

20  say that it's not working.  It's not our intention to interfere

21  with that process and the dual track.  But we do want to do our

22  job, and we do want to make sure that we fulfill our fiduciary

23  obligations.

24     What is not unusual, Your Honor, in the context of

25  Rule 23 is the idea of a representative plaintiff and a

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
10 of 81

1　representative counsel being appointed pre-certification to

2　deal with substantive challenges to the securities claims,

3　which are at the core of this whole situation.  In fact, as we

4　noted in our motion and our reply and as the Court noted in its

5　tentative ruling, Rule 23 specifically contemplates the

6　appointment of interim class counsel.

7　　　　So let me get to the core question that the Court

8　posed in its interim ruling.  And I'll quote it rather than

9　paraphrase it.  "Just what PERA and its counsel expect to be

10　able to do as interim class representatives, consistent with

11　PERA's commitment that it does not intend to improperly

12　intercede in the ADR procedures," the Court went on to say that

13　that statement seems at odds with the accompanying statement at

14　footnote 8, that PERA reserves all rights to object to the

15　reorganized debtors' omnibus objections.

16　　　　Now, as a threshold matter, Your Honor, there was no

17　intention for those two statements to be at odds with one

18　another.

19　　　　THE COURT:  Well, listen, let me simplify it for you.

20　You've been actively representing PERA since the case began.

21　And by the way, some of you might know, and Mr. Slack will

22　remember, I believe we're coming up one week from now to the

23　fifth year on the case.  All right.  You've been here since the

24　beginning, I believe.  But if I grant your motion, as my

25　tentative indicated I would, you take on, it seems to me, a

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
11 of 81

1    slightly different relationship with other claimants.

2             So I won't doubt that you can continue to represent

3    PERA whether you are a representative or not.  But the question

4    is what happens to an individual claimant or a represented

5    claimant, either one, who are on their own and they're

6    defending the omnibus objections?  What is your and PERA's

7    relationship to those that individual or that represented

8    individual if I authorize the interim class label to be added

9    to your role here?

10            MR. ETKIN:  Well, Your Honor, as interim class counsel

11   and with PERA as interim representative plaintiff, the one

12   thing that's top of mind is to deal with these sufficiency

13   objections, which go to the heart of the securities claims.

14            THE COURT:  Which ones?  The ones against your claim,

15   which is fine, but what about the sufficiency objections

16   directed to another claimant?

17            MR. ETKIN:  It would be on --

18            THE COURT:  My hypothetical claimant who's on his own.

19            MR. ETKIN:  Well, Your Honor, as we said in our

20   motion, it's not our intention to in any way represent or take

21   positions on behalf of claimants who are individually

22   represented in the case.

23            THE COURT:  Mr. Etkin, you're going around in circles.

24            MR. ETKIN:  Well, it's those claims --

25            THE COURT:  The debtors' counsel has filed enormous

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
12 of 81

1  numbers of objections, and the PERA one is a standalone.  It's

2  the thirty-third -- or maybe it's the thirty-fifth -- thirty-

3  third omnibus, and that's easy for me to resolve.  I'm talking

4  about Mr. X, Mr. X who filed a small claim for 20,000 dollars,

5  hypothetically, and PG&E has objected.  And Mr. X says, I'm

6  owed 20,000 dollars.  And I suspect that that Mr. Slack will

7  ask that I strike that claim as not stating a viable claim.

8        My question is what do you do about Mr. X, who in a

9  nonbankruptcy setting, maybe you would speak for Mr. X because

10 he's a member of the putative class, but do you stand up at the

11 podium and argue for Mr. X on the whatever omnibus objection

12 he's opposing, or are you quiet on him?  And that's what I need

13 you to clarify what you do.

14        MR. ETKIN:  Well, I --

15        THE COURT:  So what do you do about Mr. X, who's

16 standing there, saying, I've got a good claim for 20,000, and

17 Mr. Slack wants to toss it?

18        MR. ETKIN:  Well, we would be filing opposition to the

19 sufficiency objections on behalf of the --

20        THE COURT:  On behalf of Mr. X?

21        MR. ETKIN:  On behalf of Mr. X and anyone else who's

22 out there who's the subject of a sufficiency objection that is

23 not represented by independent counsel.

24        THE COURT:  Okay.  So Mr. X says --

25        MR. ETKIN:  Your Honor, I see no difference --

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
13 of 81

1    actually, I see no difference here with a situation outside of

2    bankruptcy which happens all the time in securities cases under

3    Rule 23, where --

4           THE COURT:  How many times, Mr. Etkin?  How often in a

5    nonbankruptcy securities class action does the defendant

6    challenge the standing by filing an objection to a claim of a

7    member of the class before there's any certification?

8           MR. ETKIN:  I don't know.  Your Honor, I confess, I

9    don't know what you mean by challenging the standing.  But I

10   don't --

11          THE COURT:  Mr. X shows up at the district court and

12   says, I want to be heard.  I want to say something and --

13          MR. ETKIN:  He's entitled to be -- he's entitled to be

14   heard.

15          THE COURT:  Okay.

16          MR. ETKIN:  We're not foreclosing any individual

17   claimant from coming into court and wanting to be heard.  What

18   we're doing is making sure that claimants who are

19   unrepresented, that claimants who are not coming into court,

20   that we advance a position in opposition to the sufficiency

21   objections that challenge fundamentally the claims that all of

22   these securities claimants are asserting and have asserted.

23          THE COURT:  Okay.  And you believe you're able to do

24   that once I grant your motion under 23(g)(3).  And even then,

25   there's no conflict with PERA, your actual client, on a

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
14 of 81

1    different set of objections.

2            MR. ETKIN:  With respect to the sufficiency

3    objections, which challenge the securities claims at their

4    core, we have the ability and Rule 23 contemplates, and Rule 23

5    is now applicable here, recertification.  Rule 23 contemplates

6    that an interim counsel can come in on behalf of absent class

7    members to make the arguments to sustain, at least on a

8    preliminary basis, the allegations that are made by each of

9    these individuals by filing a claim.

10           Your Honor, it's interesting.  I went back, and I took

11   a look at the proof of claim.  And really, that proof of claim

12   is even structured based certainly in part, at least, on the

13   PERA complaint.  When you look at the time frame of the

14   purchases, it all ties into the PERA complaint.

15           So it's obviously simple with respect to those that

16   adopted the PERA complaint directly.  But even those that

17   didn't, these allegations, which the debtor is now challenging,

18   are at the core of all of these claims.  And I don't think the

19   Court ever had an expectation that hundreds of securities

20   claimants would come in with hundreds of lawyers, filing

21   hundreds of documents, in opposition to what the debtor refers

22   to as a motion to dismiss.

23           THE COURT:  Yeah, I don't know.  Frankly, I didn't

24   know what to contemplate.  All right.  So let me phrase the

25   question a little more specifically and then I'll call on the

1  opposing counsel and then let you respond.

2      But what do I do for an actual, real person, a real

3  Mr. X, who is on his own, and he has, in fact, filed an

4  opposition to one of the omnibus objections, the one that was

5  directed at him?  Do you purport to then take over the argument

6  for him?  Do you purport to be his lawyer?  So you have X is

7  unrepresented, on his own, and is filed a pro se opposition to

8  the omnibus objection.  What is your role vis-a-vis Mr. X under

9  that situation?

10      MR. ETKIN:  If that were an actual situation, we would

11  certainly reach out to that Mr. X.  But we would take the

12  position that obviously the Court would need to pay attention

13  to whatever Mr. X filed if he chose to file something on his

14  own.  But what we're filing in his case would at the very least

15  be a supplement to that and would be something for the Court to

16  consider.

17      THE COURT:  Okay.

18      MR. ETKIN:  While the Court is considering these

19  sufficiency objections, each of which -- and I'm not talking

20  about the RKS situation.  They're on their own.  I'm not

21  talking about the Baupost situation.  They're on their own,

22  unless they tell us something different.  But aside from that,

23  each of the other objections from the twenty-eighth through the

24  thirty-eight are in whole or in part sufficiency objections

25  with respect to the underlying securities claims.

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
16 of 81

1    THE COURT:  Okay.  Mr. Etkin, let's hold it at that

2    point.  Let me just make one comment.  This is not asking you

3    to respond.

4         I will just tell you, if you look at our docket, which

5    is voluminous, you will see already there are Mr. Xs that are

6    filing on their own in response to the omnibus objections.  And

7    we've got two weeks to go for the first round of omnibus

8    objections that are not on the thirty-third, thirty-fourth, and

9    thirty-fifth.  You and Baupost and RKS are on a different

10   timetable.

11        And so all I'm saying is that I have to have -- you've

12   given me the answer.  And when I ask you to make your rebuttal

13   argument, if you have any refinement to that, I just want to

14   know what you perceive to be your role.  Just take my word for

15   it, the docket already reflects, let's say unrepresented, or at

16   least apparently pro se claimants, who are fighting back on the

17   omnibus objections without your kind of expertise and so on.

18        So don't comment now.  I want to move along.  And I'll

19   come back --

20        MR. ETKIN:  The only comment I'll make, Your -- if you

21   permit me, Your Honor, the only comment I'll make is that I've

22   seen two of those pro se --

23        THE COURT:  Okay.

24        MR. ETKIN:  -- objections or statements, and all that

25   says to me -- and I'll comment further later, but all that says

1  to me is that these people need an interim counsel to come in

2  and take substantive positions on their behalf.

3        THE COURT:  Okay.  Mr. Hamilton, are you making the

4  argument, or Mr. Slack?

5        MR. HAMILTON:  Mr. Slack's going to start, Your Honor.

6        THE COURT:  Okay.  I just wanted (indiscernible) --

7        MR. SLACK:  Yeah.

8        THE COURT:  -- Mr. Slack.

9        UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

10        MR. SLACK:  Yeah.  And Your Honor, the RKS folks are

11  going to get five, and I'm going to give a couple of minutes to

12  Mr. Hamilton at the end to address one more discrete issue.

13        THE COURT:  Okay.  Thank you.

14        MR. SLACK:  So Your Honor, I also apologize that my

15  internet went out.  So I don't know whether anybody noticed I

16  was not on the screen for a while.  So I missed much of what

17  Mr. Etkin said.  So I'm not really in a position to respond to

18  a great deal of it.  But let me make the following point to

19  start, which is --

20        THE COURT:  You want me to take a break so you can

21  listen to the audio?

22        MR. SLACK:  Well, I'm not sure -- I'm not sure I even

23  know how to go back and do that, Your Honor.

24        THE COURT:  Okay.  And go ahead and make your

25  argument.  You're a capable --

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
18 of 81

1        MR. SLACK:  Yeah.

2        THE COURT:  -- experienced lawyer.

3        MR. SLACK:  So Your Honor, Your Honor's tentative

4 ruling got the most important point exactly right, and that is

5 that the apparent real purpose of PERA's motion is inconsistent

6 with the Court's two prior rulings that PERA doesn't have

7 standing to object to the omnibus objections directed at the

8 claims of other claimants.  And PERA's motion, which is

9 interesting, I mean, when you look at their motion, was

10 entirely silent on what it meant to be interim counsel.  And

11 the case law they cite, and this is important, provides

12 absolutely no basis for interim counsel to be able to appear on

13 behalf of separate claims brought by individual claimants.

14 There is zero cases that do that.

15        And the reason for the silence in the motion, and

16 quite frankly, for the confusion on the meaning of what the

17 motion would mean stems from the fact that Rule 23(g)(3) was

18 not intended to apply in this situation.  I mean, I note that

19 Mr. Etkin says that it's not unusual for interim counsel to be

20 appointed under 23(g)(3), and I guess I would say this.  It's

21 not only unusual in this situation, it's completely unheard of.

22 And that's because when you understand the purpose of Rule

23 23(g)(3), you understand why PERA can't do any of which they're

24 actually suggesting they should be able to do.

25        The advisory notes to Rule 23(g)(3), which PERA cites

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 19 of 81

1  only in part in their reply, makes clear that 23(g)(3) is

2  designed for a different situation than present here.  Rule

3  23(g)(3) is meant to apply where there are competing counsel or

4  competing cases where there are multiple counselors saying,

5  Judge, let me represent the class.

6          THE COURT:  Well, I know that.

7          MR. SLACK:  And the court --

8          THE COURT:  I know that but -- I know that, but you

9  know what, Mr. Slack, as long as you've been appearing before

10 me, I've never recall once that you have not even cited a rule

11 that you think is dispositive.  I mean, I found it amazing that

12 that not a single reference to 23(g) in your papers.  So what

13 do I do now?

14         MR. SLACK:  Yeah.

15         THE COURT:  The words of the Rule are pretty clear.

16         MR. SLACK:  So let me explain that, Your Honor.

17         THE COURT:  Well, I mean, I --

18         MR. SLACK:  Yeah, let me explain that, Your Honor.

19         THE COURT:  But what I'm saying is, you know what the

20 rule about we don't consult the actual text of the statute if

21 the legislative history is clear.  Well, the text of the Rule

22 here is pretty clear.  The court may appoint interim counsel.

23         MR. SLACK:  I actually disagree with that, Your Honor.

24         THE COURT:  Okay.

25         MR. SLACK:  I mean, I think that the -- I think

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
20 of 81

1  that -- I think that -- I think that at least the cases, and

2  I'm going to cite you a couple if you give me the leeway to do

3  it in your own district by district court judges, state that

4  Rule 23(g)(3) is designed only for the situation where there's

5  competing counsel.  And what's interesting is that it's not

6  only the advisory notes that say this.  Right.

7          When you look at the key cases -- I mean, for example,

8  in Donaldson v. Pharmacia, which is 206 WL 1308582 from the

9  Southern District of Illinois, in that case, the court said,

10  importantly, both the commentary to Rule 23 and the Manual For

11  Complex Litigation, Fourth indicate the appointment of interim

12  counsel is not appropriate.  Whereas here, a single law firm

13  has brought a class action and seeks appointment as class

14  counsel.  And then they said, consistent with the commentary to

15  Rule 23 and the manual, the court's research indicates that the

16  kind of matter in which interim counsel is appointed is one

17  where a large number of putative class actions have been

18  consolidated or otherwise are pending in a single court.

19          And recently, Judge Nunley in the Eastern District of

20  California adhered exactly to that.  He denied appointment of

21  interim counsel, holding that, "There is no indication of rival

22  cases exist that might justify appointing interim counsel."

23  And that's in Brooks v. Tapestry, 2022 WL 956872, from March of

24  2022.

25          And he's not the only judge in California that said

1  that.  Judge Alsup recently similarly denied interim class

2  counsel and recognized, "The typical situation requiring

3  appointment of class counsel is one where a large number of

4  putative class actions have been consolidated or are otherwise

5  pending in a single court.

6        And Judge White --

7        THE COURT:  Okay.  Mr. Slack.  Mr. Slack, again, I'm

8  not even writing down the cases right now.  I might ask you to

9  file a brief statement that set forth the sites.

10        But my point is, not a single one of them involves a

11  parallel track.  But more importantly, is there any reason to

12  believe that the rule makers themselves, the Supreme Court,

13  when they promulgated the Rule, limited it to this multiple

14  class situation?  Because it doesn't say so.  It doesn't limit.

15  The language of sub (3) doesn't limit it to when there are

16  multiple cases or multiple counsel competing.

17        MR. SLACK:  Well, let me just say that Judge White,

18  also, from the Northern District of California, his holding

19  denying interim class counsel is "Where there are no competing

20  lawsuits or firms, courts in this district have been unwilling

21  to appoint interim class counsel."

22        THE COURT:  Okay.  Okay.  All right.  All right.

23        MR. SLACK:  And the point -- and the point is, Your

24  Honor, and I think it's really important, the purpose of the

25  Rule is where you have these competing counsel, the defendants

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
22 of 81

1  actually need to know who they're going to deal with to file

2  class certification and to who's going to do discovery on the

3  class certification. It's purely a Rule -- and that's what the

4  advisory opinion -- the advisory notes say. It's purely a Rule

5  that's designed to deal with this particular problem.

6        When you understand it, in that you get the reason

7  why -- and this is critical, Your Honor -- there is not a

8  single case, zero, null set, that has ever expanded the powers

9  of counsel to go and appear for people who have filed

10  individual claims, whether in the bankruptcy or out of the

11  bankruptcy. And in fact, zero. There's not any support that

12  PERA has given. Zero. I keep saying zero because it's zero.

13  The meaning of interim counsel doesn't expand their role at

14  all.

15        THE COURT: Is there a single case or a zero case that

16  has denied a request like this one with one class, one request?

17  And the score is zero to zero, I guess. There's no case either

18  way, right?

19        MR. SLACK: No. No, it's not. There's Judge White --

20        THE COURT: Well, I know you said Judge White. Did

21  any of the other cases deny a request of a counsel such as Mr.

22  Etkin and his colleagues representing only one group, rather

23  than competing?

24        MR. SLACK: It doesn't. Doesn't.

25        THE COURT: Hmm?

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
23 of 81

1          MR. SLACK:  Doesn't.  And in fact, if you go to -- if

2     you go to -- if you go to Judge White's case, which is In re:

3     Seagate Technology, which is Northern District, California,

4     where he said that where there's no competing firms, courts in

5     this district have been unwilling to appoint interim class

6     counsel, he cites a dozen cases in your district.  Where

7     there's only one competing counsel, it was denied.  He cites

8     six of them.  I cited another three here, which I can do.  And

9     the point is is that, Your Honor, it is well known -- and had

10    they done --

11          Look, here's what's really crazy, Your Honor.  They

12    made a motion, and they're experienced securities counsel.

13    They made a motion.  They said they want to name a lead

14    plaintiff, lead plaintiff, and lead counsel.  Now, that is a

15    term of art, and that's a term of art in the PSLRA.  And

16    there's no support in the Federal Rules for that.

17          So what did they -- what did they say in their reply?

18    Well, they said, Judge, we cited Rule 23(g)(3).  Well, you know

19    what they did.  They cited Rule 23(g)(3) in a footnote without

20    any discussion.  They didn't say any cases that support what

21    they're doing.  They didn't say what the purpose was.  They

22    didn't say under 23(g) that there was any process they had to

23    follow.  It was a cite in a footnote without any discussion

24    whatsoever.  And let me tell Your Honor, when you get a counsel

25    as a security -- a brief as a securities lawyer that says lead

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
24 of 81

1   plaintiff and lead counsel, that's not 23(g)(3).

2          One other thing, Your Honor.  Look at their motion.

3   They want to appoint a lead plaintiff first and then lead

4   counsel.  Rule 23(g)(3) does not even address lead plaintiff or

5   an interim --

6          THE COURT:  No, I know that.  I'm aware of that.

7          MR. SLACK:  And so the idea --

8          THE COURT:  But therefore, what?

9          MR. SLACK:  The idea that this, that they're --

10         THE COURT:  But therefore, what?

11         MR. SLACK:  Therefore, Your Honor, I'm just saying --

12   I'm just saying that you haven't had the opportunity to have

13   that issue briefed in front of you because they didn't put it

14   in their -- they pivoted from saying, we want lead plaintiff

15   and lead counsel, which is a term of art in the PSLRA.

16          THE COURT:  Thank you.  I got it.

17         MR. SLACK:  And so all of this -- all of this case law

18   that I'm citing to you that says that what they're doing is

19   completely inappropriate, you didn't have the opportunity to

20   see when you did your tentative.

21          And the point I'm making, Your Honor, is that when you

22   understand 23(g)(3) in light of its purpose, it doesn't expand

23   anybody's -- it doesn't expand counsel's role in any way.  All

24   it does is it tells everybody, the defendants and everybody,

25   who is going to be the counsel that's doing things like filing

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
25 of 81

1   the class certification motion.  Otherwise, if the Court didn't

2   do that when there's competing counsel and competing cases --

3           THE COURT:  Okay.  Okay.  I get it.

4           MR. SLACK:  -- you'd never have an idea of who was

5   going to -- who was going to be involved.

6           And so Your Honor, I would say one other thing, which

7   is really important here.  One of the reasons that courts don't

8   just nilly-willy when there's no competition appoint an interim

9   plaintiff -- or not -- an interim counsel is because it

10  accelerates certain aspects of the class certification motion.

11  What 23(g)(3) says, and I think it's important, Your Honor, is

12  that you apply the same standard for counsel as you would in

13  class certification.  And so when you seek to apply interim

14  counsel and you do it when there's -- you may need to do it if

15  you're a court when there's competing counsel because you have

16  to pick between counsel.  But otherwise, what you're doing is

17  you're accelerating part of the class certification

18  determination.

19          And what I'll tell Your Honor is that prejudices us

20  here because Your Honor said specifically when we dealt with

21  class certification that issues of typicality and adequacy,

22  which are the two that they dealt with in their opening motion,

23  all right, what Your Honor said was that we were entitled to

24  discovery.  You were not making any determination on the

25  merits.

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
26 of 81

1        THE COURT:  No, I acknowledge that.

2        MR. SLACK:  What's happening here is that in order to

3 make an appointment of interim counsel, you're reversing that

4 decision and prejudicing us.  And that's not appropriate,

5 especially when Rule 23(g)(3) was never meant to be applied in

6 this context.

7        So what I would tell Your Honor is there is a process

8 that was set out in the amended objection procedures.  That

9 process is working.  We have had over thirty omnibus

10 objections.  Individuals have either objected or they haven't.

11 But the point is individuals over this -- individual claimants

12 have either appeared or not, but Your Honor has granted

13 objections where individuals have appeared, where they haven't

14 appeared, and each individual is responsible for that.  And

15 twice, Your Honor has ruled that PERA can't step in and do

16 that.

17        THE COURT:  No, you're just repeating.  You're

18 repeating yourself now.  Let me call on Mr. Catalina for his

19 comments, and then I'll figure out what to do next.

20        Mr. Catalina.

21        MR. SLACK:  Thank you, Your Honor.

22        MR. HAMILTON:  Your Honor, I have one comment to add

23 to Mr. Slack, if I may.

24        THE COURT:  Yes, sir.

25        MR. HAMILTON:  Thank you.

1        THE COURT:  Mr. Hamilton.

2        MR. HAMILTON:  Thank you, Your Honor.  Your Honor, I

3   just want to address briefly your comment on the PSLRA

4   specifically applying to this situation.  I'm really building

5   on what Mr. Slack said.  There is consequences to PERA citing

6   Rule 23(g) because as Your Honor knows, the PSLRA already has

7   two specific points -- two sections that specifically apply to

8   any private right of -- any private action under this Chapter.

9   And the lead plaintiff process specifically applies where an

10  action is brought pursuant to the Federal Rules of Civil

11  Procedure.

12        And so by invoking Rule 23, and Mr. Etkin specifically

13  said Rule 23 is applicable here, Rule 23, then, this is a --

14  this is unquestionably a Securities Act and Exchange Act claim

15  brought in the bankruptcy court, a private action pursuant to

16  the Federal Rules of Civil Procedure.  So if to the extent that

17  they're even trying to invoke Rule 23(g), they have to then

18  accept the lead plaintiff proposition from the PSLRA.

19        THE COURT:  Look, I'm not going to repeat what I said.

20  You all know, all you securities lawyers particularly know,

21  that the bankruptcy courts generally and this bankruptcy judge

22  doesn't have much occasion to deal with class actions.  It just

23  so happens that I was, in fact, in a -- did a nationwide class

24  certification in the Teran case, which is on just about a done

25  deal now through another court.  But it's rare.  I mean, I've

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
28 of 81

1  talked to other colleagues and mentioned about the rarity of a

2  traditional class action.  And it's true.

3          So this judge gets a motion that cites a Rule that

4  have no occasion to look at ever and read it.  And I then got

5  responses from very experienced counsel that never even

6  mentioned the Rule.  And it was sort of like, how can I ignore

7  the plain meaning of 23(g)(3).  End of story.  So I'm not

8  complaining or criticizing you all.  I'm saying, you got a

9  handful of arguments now about all these ramifications.  And we

10 have this case on this record and this decision, and here we

11 are.

12         So anyway, Mr. Catalina, you have a couple of moments

13 here.

14         MR. CATALINA:  Thank you, Your Honor.  I'll be brief.

15 Just a couple things I want to address.  First, and most

16 important to the RKS claimants, we did see in PERA's papers an

17 apparent shift in the class definition to exclude the RKS

18 claimants and most expressly in their reply, where they say

19 that the RKS claimants are explicitly excluded from the

20 proposed class.  I think that's consistent with what I heard

21 Mr. Etkins say before.  But most important to us, certainly, is

22 that nothing that would be done by a lead plaintiff or a lead

23 counsel would have any effect on the RKS claimants' claims.

24 And I just want to get that out there.  And I think that's

25 consistent with everything PERA's said.

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
29 of 81

1       THE COURT: Well, it's consistent with -- it's

2   certainly consistent with the way we've discussed the briefing

3   for the sufficiency things, the way the omnibus objections are

4   broken out, and everything else. So it's never been my even

5   slightest imagination that Mr. Etkins' trying to poach on your

6   turf or Baupost's turf.

7       MR. CATALINA: I understand, Your Honor. In the

8   7023 --

9       THE COURT: Okay.

10      MR. CATALINA: -- motion, the class definition would

11  seem to subsume even the RKS claimants. It seems from the

12  latest submission that that's not the case. And from what Mr.

13  Etkins said, I just want to put that on the record. That's

14  all.

15      THE COURT: Okay.

16      MR. CATALINA: The second point that we want to make

17  is our understanding of Your Honor's thinking on the

18  certification of a class is that in part, it stems from the

19  idea that we get through these ADR procedures and sufficiency

20  objections and there may be some number of claims left with a

21  diffuse claimant group and how is the Court going to manage

22  those claims.

23      Consistent with that, we think that, although we

24  don't understand what a lead plaintiff is in this situation, we

25  think that if the Court is looking for a way to define a lead

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
30 of 81

1    plaintiff role, what makes the most sense is to get beyond the

2    sufficiency objection stage. And when we get there, we're

3    getting to a place where now there are going to be some number

4    of claims left over to litigate. And there's going to be

5    discovery. At that point, we think it would be efficient for

6    the resolution of these claims, certainly, if PERA stepped in

7    and was the party at the table in the discovery coordination

8    and case management coordination discussions at that point that

9    kind of represented the interests of the remaining

10   nonrepresented, nonactively litigating claimants.

11          The problem, the issue we have, and again, I'll always

12   fall back, Your Honor, when I'm appearing before you, the RKS

13   claimants are most interested in moving forward with the with

14   well-defined procedures that are in place efficiently, without

15   delay, and expeditiously. We've heard a lot of questions

16   raised here, and we raised plenty in our papers. One I haven't

17   heard today is if they're answering these objections on behalf

18   of claimants who didn't amend their claims, are they able to

19   remove the reference for those claims when the Ninth Circuit

20   comes down with its decision and suddenly PERA changes its mind

21   about litigation strategy here. Right.

22          And what I think is a concern for us is that if

23   there's an ill-defined lead plaintiff role and moniker put on

24   PERA here and they're able to do things that aren't expressly

25   allowed to them through this process, there's going to be

1  litigation about that.  They're going to be binding people who

2  may not want to be bound.  They might make litigation decisions

3  that people disagree with.

4  We think the best way to do this, if there is going to

5  be a lead plaintiff designation, is to go through and finish

6  the ADR procedures and sufficiency objections, as have already

7  been enshrined in the Court's orders, and at that point a lead-

8  plaintiff-type role for PERA might be helpful to coordinate

9  discovery.

10  THE COURT:  Okay.  But Mr. Catalina, let's follow up

11  on that just for a moment.  You repeated today something that

12  you said before.  You believe and RKS believes we should be

13  moving more quickly on the sufficiency objections.  And I have

14  to say that in thinking about the discovery issue, which I'm

15  going to announce here in a few minutes, is that, well, okay,

16  what happens if I overrule the sufficiency objections?

17  So just by my calculation, those matters will be

18  submitted to me for decision if we're on schedule in May.  So

19  let's assume in May, I overrule the sufficiency objections in

20  in whole or in part.  Then what?  Do I then allow Mr. Etkin to

21  be lead interim counsel?

22  MR. CATALINA:  Well --

23  THE COURT:  In other words, what's different if we get

24  past this wave of sufficiency objections and there's still some

25  claimants still standing?

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
32 of 81

1          MR. CATALINA:  Well, what they --

2          THE COURT:  It's the same problem, isn't it?  Isn't it

3    the same problem?

4          MR. CATALINA:  No.  What's different is that at that

5    point, now the Court has the case management issue that it's

6    raised in the past, right --

7          THE COURT:  Right.  Right.

8          MR. CATALINA:  -- that there's going to be some number

9    of claims.  And by the way, that number is reducing all the

10   time.  And I think after a decision, once parties have a better

11   understanding of the strengths and weaknesses of their case and

12   what remains, there's likely to be more settlement at that

13   point that --

14         THE COURT:  Of course.  Of course.  I understand.

15         MR. CATALINA:  Yeah.

16         THE COURT:  But that's still months away.  That's

17   months away.

18         MR. CATALINA:  Certainly.  I think at that point --

19   because, as Your Honor noted in the order, right, this is an

20   undefined and unclear thing, this lead plaintiff designation,

21   what I'm saying is that from a pure case management and

22   practicality issue, as well as taking actions that bind

23   claimants who have submitted claims, endowing them with powers

24   now, PERA with powers now that are in any way ill-defined or

25   that allows them to steer claims will be inefficient.  It's

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
33 of 81

1   going to lead to more litigation that's going to slow down the

2   sufficiency process.

3           As soon as that's done and we're in a place -- we're

4   in a posture where we're setting discovery parameters and

5   schedules and things like that, it actually will be more

6   efficient, rather than having 600 claimants in the room, to

7   have Mr. Etkin there to kind of represent their interests in

8   crafting discovery parameters, schedule, and how we're going to

9   litigate the claims going forward.  So I think it actually

10  helps the Court and helps move the process at that time.

11  Whereas now, I don't think it does help move the process one

12  bit.  And in fact, it's only going to muddy the waters when we

13  have this --

14          THE COURT:  Okay.

15          MR. CATALINA:  -- kind of ill-defined lead plaintiff

16  in place.

17          THE COURT:  Okay.  Mr. Etkin, I think Mr. Slack was

18  very animated and clear on his position, and he did cite with

19  some confidence a number of cases, and some of which are local

20  but none of which is technically binding.  Do you know of a

21  single case ever in your history where a district court has

22  approved an interim class counsel when there's no other

23  parallel proceeding or other counsel competing for the job?  Is

24  there a single one reported decision that would be like this

25  one if I were to grant this motion?

1          MR. ETKIN:  Well, Your Honor, I think we cite the two

2   cases in our reply brief.

3          THE COURT:  But just tell me what they hold.  Do they

4   have an -- well, one lawyer or law firm -- again, your

5   cocounsel, but you know what I mean, one plaintiff group

6   wanting to be lead counsel when there's no other competing

7   plaintiff group competing for the job?

8          MR. ETKIN:  Your Honor, I don't have --

9          THE COURT:  Not a single one.

10          MR. ETKIN:  I don't have those cases in front of me.

11   I don't --

12          THE COURT:  Well, in your experience, has it ever

13   happened?

14          MR. ETKIN:  In my experience, Your Honor, I have seen

15   interim lead counsel appointed.  Let's go to the advisory

16   committee notes, Your Honor, that Mr. Slack referenced --

17          THE COURT:  No, no.  I'll tell you what.  I don't want

18   to go to the advisory notes.  I want you to tell me what you're

19   going to do otherwise if I were to grant this motion.  You've

20   said that for our pro se parties, not Mr. Catalina's clients

21   and not Baupost, but you're going to reach out and offer to

22   help them.

23          What else are you going to do?  What else -- what

24   other role do you play?  Do you draft their opposition for them

25   to the sufficiency objection?

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
35 of 81

1      MR. ETKIN:  Well, the answer is yes.  And the reason

2  why I was citing the advisory committee notes, which we cited

3  in our reply brief, is that they talk about what an interim

4  class counsel will do.  And we don't see our role as being any

5  different than what they reference.  They say, and I'm

6  quoting --

7      THE COURT:  Well, give me an -- give me an example.

8      MR. ETKIN:  -- "Less counsel may be needed to engage

9  in discovery."  Now, I don't know what the Court's ruling is

10  going to be on the discovery situation, but if the Court rules

11  that the parties are entitled to discovery in advance of

12  responding to the sufficiency objections, we would certainly

13  participate in that with an interim class counsel role.  They

14  talk about motion practice.   And they talk about

15  (indiscernible).

16      THE COURT:  Mr. Etkin.  Mr. Etkin, I'm going to -- I'm

17  going to -- this is called a spoiler alert.  In about five

18  minutes, I'm going to announce that I'm not going to allow any

19  discovery, and I'll explain why.  And unfortunately for you,

20  your client and Baupost are really the respondents on that

21  ruling.

22      But we've already got in place a very, very well

23  established procedure for what happens between now and the

24  sufficiency motion ruling.  So what else is there for you to

25  do?  In other words, I don't think it's --

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
36 of 81

1        MR. ETKIN:  If there is --

2        THE COURT:  -- I think it's a little unseemly for me

3   to suggest that you can go out and beat the bushes and hustle

4   up clients.  You can do it on your own if you want, but I don't

5   believe I should give you an imprimatur to do that with the

6   label of interim class counsel.  I mean, you're free to --

7   you're free to call up these people if you want.  I'm not going

8   to tell you you can't do that.  But what else are you going to

9   do?

10       MR. ETKIN:  That's not our role, Your Honor.

11       THE COURT:  Okay.  But what else are you going to do?

12       MR. ETKIN:  Others may have done that, but that's not

13  our role (indiscernible).

14       THE COURT:  Mr. Etkin, I'm not suggesting that your

15  guilt by association.  What I'm suggesting is that I don't

16  think, with the kind of comments that Mr. Slack made, that

17  handing you a label that says I am now the official interim

18  class counsel is appropriate if at the same time there's

19  nothing for you to do.

20       So my question again is if you are not -- we have a

21  very, very elaborate process in place to flush out the

22  deficiencies or insufficiencies of the claims.  And I suspect,

23  despite Mr. Slack's advocacy, that some are likely to survive.

24  And so what do you do with Mr. X or Ms. Y if I tell you there's

25  not going to be any discovery and I've already said you don't

1    have standing to represent their interests individually?  What

2    else is there to do as interim class counsel?

3         MR. ETKIN:  Well, Your Honor, the primary thing and

4    the thing that I started with is opposing the sufficiency

5    objections on behalf of putative class members.

6         THE COURT:  On behalf of their claimant?  In other

7    words, you're going to advocate as advocate for them as

8    claimants?

9         MR. ETKIN:  That's right.

10        THE COURT:  Okay.

11        MR. ETKIN:  That's right, Your Honor.

12        THE COURT:  So --

13        MR. ETKIN:  That's all it --

14        THE COURT:  -- it's probably easy for you to do it for

15   every claimant that has adopted the PERA third amended

16   complaint.  But what about somebody else that just is on his

17   own?  You're going to take over that person's position?

18        MR. ETKIN:  Well, I would hesitate to refer to it as

19   taking over their position.  I would rather refer to it as

20   taking on a role of advocating on their behalf, since they are

21   putative class members.  And none of this is about class

22   certification.  That's down the road.  We all know that.

23        THE COURT:  I know.  I know.

24        MR. ETKIN:  But right now, all of these claimants,

25   unrepresented claimants, are facing sufficiency objections

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
38 of 81

1  which effectively say that you don't have a claim.  You don't
2  have a claim on the merits.  You should go home.
3      When you look at some of these pro se papers that have
4  been filed, it kind of pulls back the curtain a little bit on
5  what's been going on between the debtors and some of these
6  individuals, where the debtors are saying that they have no
7  claims, that their claims are subject to being thrown out, and
8  here's a hundred dollars.  Some of these people aren't
9  accepting that.  And frankly, the fire victims didn't accept
10 that when on the basis of the same operative facts as these
11 claims that are asserted as securities claims where they
12 settled for over a hundred million dollars.  I'm sure Mr.
13 Catalina doesn't think these claims are --
14      THE COURT:  That's not a very good analogy, frankly,
15 no.
16      MR. ETKIN:  Well, Your Honor, respectfully, I think
17 it -- the their claims are based upon the same set of operative
18 facts.
19      THE COURT:  Some of the best tort lawyers in the West
20 represented the fire victims, and maybe the fire victims didn't
21 think they got enough.  But in my experience, the results were
22 much more appropriate and substantial.  And it had nothing to
23 do with the securities fraud claims that don't have anything to
24 do with -- aren't analogous.
25      MR. ETKIN:  If I may -- if I may, those weren't claims

1  asserted in connection with the horrendous losses that these

2  people suffered.  Those were claims, derivative claims, breach

3  of fiduciary duty claims, mismanagement claims that were

4  assigned to the fire victims trust and that were asserted in

5  connection with a separate piece of litigation.

6          THE COURT:  Oh, you were referring to the -- I thought

7  you were referring to the overall tort --

8          MR. ETKIN:  Oh, no, no, no.

9          THE COURT:  The overall tort settlement.

10          MR. ETKIN:  No, no, no, no.

11          THE COURT:  Okay.  Fair enough.

12          MR. ETKIN:  I apologize, Your Honor.  I apologize --

13          THE COURT:  No, but I stand corrected.

14          MR. ETKIN:  -- if I was unclear.

15          THE COURT:  Okay.  But again, all right.  One more

16  time.  And what is the -- it sounds to me like Mr. Slack may be

17  right.  What's you're doing is you're trying to persuade me to

18  put this interim class counsel label on you, you, again, not

19  personally, and that's a way to get around my ruling that you

20  didn't have standing to act as claimants and the individual

21  claimants' counsel; am I correct?  Is that --

22          MR. ETKIN:  There's a very important distinction

23  between those rulings and these sufficiency objections.  For

24  example, the last ruling involved a situation where we took a

25  position as it relates to those claimants who never responded

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
40 of 81

1   to a settlement offer and that their claims were expunged as a

2   result.  We're not looking to take -- the Court was clear.

3   We're not looking to get involved in situations like that.

4   Also, there may be some objections that some of these

5   claimants, by virtue of positions they took in the Chapter 11,

6   that they effectively released their claims.

7           We're not looking to get involved in that.  This is

8   solely with respect to the sufficiency objections, which

9   challenge the bona fides of the underlying securities claims.

10  Every claimant is asserting those claims.  Every claimant.

11  They're not in a position --

12          THE COURT:  Okay.  So --

13          MR. ETKIN:  They're not in a good position.  So if

14  those claims --

15          THE COURT:  So the way the way you --

16          MR. ETKIN:  If those claims are (indiscernible) --

17          THE COURT:  I presume the way you get around a -- I

18  assume the way you get around a sufficiency objection is you

19  try to amend your claim.

20          MR. ETKIN:  Not necessarily.

21          THE COURT:  No?  Okay.

22          MR. ETKIN:  Not necessarily.

23          THE COURT:  All right.

24          MR. ETKIN:  We intend to file papers, and I think that

25  that Mr. Catalina and I will probably look at some of the same

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
41 of 81

1 issues and make some of the same arguments. But what we're

2 looking to do is challenge the debtors' ability to get these

3 claims thrown out on the merits because they haven't asserted

4 viable securities claims. And that's an issue that runs across

5 the board. And that's the issue that we're looking to get

6 involved in as interim class counsel to make sure -- to make

7 sure that each of these individuals that are not represented by

8 counsel have an appropriate say in what happens to the merits

9 of their claims. Not more complicated than that, Your Honor.

10          THE COURT: Okay.

11          MR. ETKIN: And based upon the Court's indication of

12 their ruling on discovery -- the ruling on discovery, we're

13 going to have to do that without the benefit of further

14 discovery. And if (indiscernible) --

15          THE COURT: I know, which is what gets me back to my

16 question I'm not sure what you can do.

17          All right. Gentlemen, I'm on running on a tight

18 schedule. And I --

19          MR. SLACK: Your Honor, I know you're on a tight

20 schedule. Give me --

21          THE COURT: One minute.

22          MR. SLACK: -- give me. Thank you. That's all I

23 need, Your Honor.

24          THE COURT: One minute. One minute. One minute.

25          MR. SLACK: I just want to -- I want to answer the

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
42 of 81

1    question you asked Mr. Etkin that he didn't answer, which is he

2    said he had cases.  Well, I'm going to tell you what his three

3    cases under 23(g)(3) say.  He cited the Schneider case.  There,

4    there were two separate class actions filed, and counsel in

5    each of those actions was vying for the lead class plaintiff.

6    That's the Schneider.  Okay.

7         The second one was Wachovia.  The Wachovia case, there

8    were multiple counsel seeking to be class counsel of an ERISA

9    class action.  Thus, they had the same issue.  They had

10   multiple counsel vying in that case.

11        And then they cite the Foreign 1 Company (phonetic)

12   case.  In there, they were dealing with multiple counsel with

13   different cases vying to be class counsel.  And there, the

14   court even said specifically based on the Manual For Complex

15   Litigation that the interim counsel was based on the fact that

16   there were a number of overlapping, duplicative, and competing

17   suits present and that there were a number of lawyers competing

18   for the class counsel appointment.

19        So I just wanted to answer that, that all of the cases

20   under 23(g)(3) that PERA cites were, in fact, counsel

21   competing --

22             THE COURT:  Okay.  Okay.

23             MR. SLACK:  -- or competing cases.

24             THE COURT:  Okay.  Though it sounds to --

25             MR. SLACK:  The second thing --

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
43 of 81

1           THE COURT:  Well, what I'm saying --

2           MR. SLACK:  Yeah.  I just going --

3           THE COURT:  -- is it just sounds to me like -- oh, go

4    ahead.  Go ahead.

5           MR. SLACK:  I was just going to say that the second

6    piece of this, of course, is that there's nothing different

7    between the sufficiency objections from people.  And let's just

8    be clear.  There were folks who had the opportunity to adopt

9    PERA or adopt RKS or file an amendment, and they didn't do

10   that.  So we're not talking about Mr. Etkin coming in and

11   dealing with his own complaint or saying that his own complaint

12   is valid.  Nobody is denying that he can go and say that and

13   we're not going to be -- we're not going to be relitigating

14   that with respect to other people that adopted his complaint.

15          But for the people who didn't, there's no difference

16   between PERA trying to come into those where there are no

17   allegations, at least according to us, and any other of the

18   substantive, merits-based omnibus objections that we made.  In

19   fact, the first one, when Your Honor denied standing to PERA,

20   was a substantive one that said people didn't have trades.

21   They traded both bought and sold before the first record of

22   disclosure that's on the merits.  And this Court correctly said

23   PERA doesn't have standing, even though it was merits based.

24          So Your Honor, those were the two points I wanted to

25   leave you with.  And I appreciate the opportunity.  And we're

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
44 of 81

1    happy to file a pleading, if it would be helpful to the Court.

2           THE COURT:  What I want -- well, I'll hold the matter

3    under advisement for a very short period of time.  I want you,

4    Mr. Slack, to file a -- just file a document that gives full

5    cites.  I mean, these string cites of unreported cases

6    sometimes have so many numbers in them, I can't keep up with

7    them so I want just the cite of the cases that you rely on that

8    you ran through and include in the same filing the three cases

9    that you believe that Mr. Etkin wasn't able to rely on and I

10   have Mr. Etkin's brief, but to just --

11          MR. SLACK:  Yeah.

12          THE COURT:  -- see them all in one place.

13          And Mr. Etkin, if --

14          MR. ETKIN:  Your Honor --

15          THE COURT:  -- if you --

16          MR. ETKIN:  -- out of fair --

17          THE COURT:  I was going to say -- I was going to say,

18   if you have other authority -- what?

19          MR. ETKIN:  I'm sorry.

20          THE COURT:  What do you want to say?

21          MR. ETKIN:  I was just going to say, out of fairness,

22   since these are cites that Mr. Slack ran through earlier that

23   don't appear in any of the papers, that we should have an

24   opportunity to provide supplemental briefing as well.

25          THE COURT:  I don't want -- I don't want briefing to

1  briefing this case.  I have to move quickly on this.

2         MR. ETKIN:  Supplemental authority, Your Honor.

3         THE COURT:  So okay.  Mr. Slack, can you file

4  something by Friday?

5         MR. SLACK:  Sure.  I mean, if -- look, it seems to me

6  that both sides can file something by Friday simultaneously and

7  you'll have whatever because --

8         THE COURT:  No, I was going -- I asked if you could do

9  it on Friday.

10        MR. SLACK:  Yeah, we can.  No problem.

11        THE COURT:  I don't need argument.  Just say here are

12  the cites that -- the cases that I'm citing.

13        Mr. Etkin, you can file any other citations without

14  authority on Monday.

15        MR. ETKIN:  Okay.  Thank you.

16        THE COURT:  In other words, and you don't have to

17  refile something that lists the very cases that Mr. Slack -- I

18  just, it's not that I don't like listening to your arguments.

19  It's that I want to -- and I'm not going to repeat my

20  frustration, but my frustration is to have to make a decision

21  on a simple sentence in a plain Rule and get into this long

22  discussion that you experts know about that I had no way of

23  knowing about.

24        So if I take a look at these cases, I'll see what my

25  colleagues on the bench have said and decide whether I should

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
46 of 81

1   do it. But that's where we'll stand. Submitted on the matter.

2   So thank you all for your time. Now, I'm going to --

3           MR. SLACK: Thank you, Your Honor.

4           THE COURT: I'm going to offend some other counsel by

5   making him wait a little bit longer because I'm going to go

6   immediately to what I promised you is a ruling.

7           So Ms. Parada, for calendaring purposes, I'm going to

8   treat the PERA motion as submitted. And I'm going to, for the

9   docketing purposes, turn immediately to the oral ruling on the

10  discovery issue. And so I don't think we need to have other

11  people appearing and stating their appearance because I'm not

12  really asking for appearances. So I'm just going to announce

13  my ruling.

14          THE CLERK: Yes, Your Honor.

15          THE COURT: So the issue that all counsel are familiar

16  with is the discovery requested specifically by PERA and also

17  by Baupost pending resolution of the sufficiency motions that

18  were filed by PG&E and challenging the principal claims of the

19  securities claimants. And RKS is also -- in that briefing

20  schedule are some of the former officers through their counsel.

21  RKS joins PG&E, as do those other officers. So I'm just, I'm

22  not (audio interference) going to talk about RKS position that

23  there should not be discovery and PERA and Baupost position to

24  the contrary.

25          And I start with an analysis that is not new to anyone

1    that's seen me or been before many bankruptcy courts, and that

2    is that an objection to (audio interference) --

3         MR. ETKIN:  Your Honor, we're having trouble --

4         THE CLERK:  Excuse me, Your Honor.

5         THE COURT:  -- is analogous -- analogous, not -- yes.

6         Yes, Ms. Parada.

7         THE CLERK:  Your Honor, your audio.  We're having

8    trouble hearing you.  It's cutting in and out.

9         THE COURT:  Oh, wonderful.  Okay.  Hold on.  Let's see

10   if I can -- what I can do about this.

11        Is that any different if I speaking now, Ms. Parada?

12        THE CLERK:  It sounds better now, Your Honor.

13        THE COURT:  Okay.  Okay.  I'm saying that there's the

14   analogy, and this comes up, of course, because there are

15   numerous claims on file in the PG&E case and PG&E has objected

16   to the claim and now is challenging under the so-called

17   sufficiency objections.

18        The proof of claim is analogous to a complaint.  And a

19   complaint is governed by the Federal Rules of Civil Procedure.

20   A bankruptcy claim is governed by the Bankruptcy Rules.  But

21   the point is that there's a lot of similarity.  And when a

22   claim is filed, it's like a complaint.  When an objection to

23   claim is filed, it's analogous to a motion to dismiss or an

24   answer.  And certainly, the Supreme Court's teaching from Iqbal

25   and other authorities on plausibility are well established law,

1   as the notion that in a complaint, the allegations of the

2   complaint are deemed to be true unless challenged under some

3   other theory.  And same is true with a proof of claim.  It's

4   deemed allowed and taken to be true unless it's challenged by

5   the objection process.

6         And so a PSLRA, which we've had this endless

7   discussion on whether it applies or doesn't apply, it says that

8   there's to be no discovery pending a sufficiency determination.

9   Rule 12(b)(6) in the traditional setting, I don't believe, has

10   a similar silencing effect in terms of discovery, but clearly

11   it's treated in the same way.  A 12(b)(6) motion is treated as

12   though the complaint is deemed to be true, and a motion to

13   dismiss challenges the sufficiency and the -- of plausibility

14   of the allegations.

15         So here, regardless of any other choice of law, we

16   have the July 2023 order that was well hammered out through

17   efforts by the debtor, particularly RKS and Baupost.  To a

18   lesser degree by PERA, but nevertheless, PERA was aware of it.

19   And in any event, it is in place, and it says no discovery

20   pending these sufficiency determinations.

21         Some of the opposition here from Baupost and PERA

22   suggests that this is governed by Rule -- we're governed here

23   by Rule 9014.  Well, we are governed by 9014, but 9014, in

24   turn, incorporates and can incorporate all the other Federal

25   Rules.  And Rule 12 is certainly one of those other Federal

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
49 of 81

1    Rules that, although not incorporated specifically in the

2    language of 9014, is very much incorporatable and has been the

3    source for the way, certainly, the July 23rd order is

4    consistent Rule 12(b).

5         And more importantly and locally, the claims objection

6    process are governed by Bankruptcy Local Rule 3007-1(b).  And

7    3007-1(b) deals with what happens on a first hearing on a

8    claims objection.  And the Rule makes clear that if there are

9    facts to be -- unresolved facts to be decided, that cannot be

10   disposed of at the preliminary hearing.  But if there are

11   questions of law that can be dispositive, they can be disposed

12   of at that preliminary hearing.  And whereas there is Rule is

13   silent on whether there can be discovery pending a claims

14   objection, in practice, there should not be if, as a matter of

15   law, the proof of claim isn't plausible, just like a complaint

16   should be disposed of if it is not plausible as a matter of

17   law.

18        So here, on the Court's -- the Court assumes and will

19   assume the facts as set forth by the claimants PERA, Baupost,

20   and RKS are true for purposes of the sufficiency objection.

21   And again, I won't repeat the ground rules that we're all

22   familiar with with motions to dismiss.

23        So what I conclude from all that is there's simply no

24   facts to be decided at that preliminary hearing if the law

25   compels the outcome that the objector seeks.  And so PG&E has

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
50 of 81

1    filed very voluminous papers in support of its sufficiency

2    objections, but to the extent that those papers, particularly

3    the voluminous documents they want me to take notice of, it's

4    of no consequence to take notice of things that are factual

5    determinations when the only test that I believe is relevant is

6    what I said, the sufficiency of the claims themselves.  So I

7    haven't taken the time to study the details of PG&E's

8    submissions or at all in detail.  The point is, I don't know

9    why I would consider disputed facts when the only thing I need

10   to consider is the sufficiency, therefore, the underlying

11   plausibility, of what is alleged in the respective proofs of

12   claim.

13          And so that's a long way of saying that -- not that I

14   won't consider what PG&E filed in opposition, but I will say

15   that whatever facts that are in dispute that PERA and Baupost

16   may want to rebut, it's a waste of time to try to rebut them

17   because that's not the inquiry.  PERA and Baupost and RKS,

18   their claims will survive the sufficiency on their own face, on

19   their strength of themselves, not on the weakness of what they

20   believe exists in PG&E's defenses.  Those will be tested after

21   the sufficiency objections are favorably disposed of in favor

22   of the claimants and will not be at all relevant if the

23   sufficiency objections are sustained.

24          So at summary judgment or trial or somewhere in the

25   future, those facts will be relevant.  This is a -- take this

1  all together, there's no appropriate purpose for discovery,

2  pending the sufficiency objections determination, and thus the

3  collective requests by PERA and Baupost must be denied.

4  Discovery stay will remain in effect for all of those reasons.

5         So gentlemen, with that ruling, I don't know if I need

6  to issue a formal order.  I guess I perhaps will issue a simple

7  order that says, for the reasons stated in the oral ruling,

8  there will be no discovery by the objectors pending the

9  sufficiency objections.  And I will then look forward to the

10  filings from Mr. Etkin and Mr. Slack and try to issue a ruling

11  as early as the middle of next week on the interim class

12  representative question, again, without a lot of detail.  I

13  look to see if there's any -- well, I'll leave it at that.

14         So thank you for your time.  Anybody have any

15  questions?

16         Nothing.  Okay.  Mr. Slack.

17         MR. SLACK:  Thank you, Your Honor.

18         MR. ETKIN:  Just the timing concern, Your Honor.

19         THE COURT:  Yes, sir.

20         MR. ETKIN:  Given what we've discussed today and what,

21  at least, we feel our role would be as interim counsel with

22  respect to challenging the sufficiency objections, the

23  objections and the -- the objections and the response deadlines

24  and the hearing dates are scattered, as the Court pointed out.

25  The dates for us, for the RKS clients, are a bit later.  I'm

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
52 of 81

1    just concerned that given the role that we think we should play

2    and want to play with respect dealing with these sufficiency

3    objections across the board, as to those that are the subject

4    of them, that their time to respond is going to come and go. A

5    lot of these unrepresented people may not file anything. And

6    we've gotten a lot of phone calls from folks who are asking us

7    what to do; can we rely on the opposition that you're filing.

8         So I just have a concern for these folks that their

9    time is going to come and go, something that obviously the

10   reorganized debtors would look forward to. We, on the other

11   hand, want to make sure that -- and that's been our stance

12   throughout -- that at least these folks have the benefit of

13   somebody filing something substantive on their behalf.

14        THE COURT: Mr. Etkin, I'll repeat something. It's

15   none of my business if you sign up Mr. X or Mr. Y as additional

16   clients tomorrow. But I'm not going to empower you with a

17   label that perhaps is inappropriate. And if I grant your

18   motion, I am not -- you've got to understand, and I don't --

19   well, I'll tell you what.

20        (Audio interference) motion, I guess I have to say

21   there may be consequences. If I deny your motion, I'm still

22   not in a position with any authority to tell you you can't take

23   on the representation of a particular individual. Whether you

24   can represent an individual while at the same time you

25   represent PERA, now this is your business and not my business.

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
53 of 81

1    I'm not going to disqualify you.  If someone believes that

2    you're doing so disqualifies you, they'll have to bring an

3    appropriate motion.

4         So to the extent that you're caring and thoughtful

5    about these pro se individuals, I compliment you.  But I can't

6    empower you in a manner that's inappropriate.  I can just say,

7    do what you need to do.  And I can't tell you to give legal

8    advice to these people or give you some sort of a get out of

9    jail free card that says you now have -- you've got some form

10   of official authority because at the moment, you don't.

11        So that's the best I can say.  But that being said, I

12   am mindful that things need to move more quickly if I'm

13   persuaded that you should be allowed to have that label.  And

14   that's why I move forward quickly.  That's why no more

15   briefing.  That's why just let me get the kind of additional

16   help that I might have expected earlier on the briefing when I

17   now know what Mr. Slack and Mr. Catalina and Mr. Hamilton think

18   about what 23(g)(3) is supposed to be all about.

19        So I'll leave it at that.  I'm not going to beat this

20   to death.  Thank you for your time, gentlemen.  Have a good

21   weekend.  Good day.

22        IN UNISON:  Thank you, Your Honor.

23        THE COURT:  All right.  All right.  Okay.  Has Mr.

24   Jacobson gone to lunch?

25        THE CLERK:  No.  I will bring in Mr. Jacobson now,

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
54 of 81

1  Your Honor.  And Mr. Lamb, I believe, is joining.

2          THE COURT:  All right.  Mr. Jacobson, I'm sorry about

3  this.  Mr. Lamb owes you something.  A lunch, maybe.

4          MR. LAMB:  I apologize, Your Honor.  I had serious

5  technical difficulties.

6          THE COURT:  Okay.  Mr. Jacobson, just say something so

7  I know you're on the line.

8          MR. JACOBSON:  I'm here.

9          THE COURT:  Okay.  Well, again, I apologize for the

10  inconvenience.  But so Mr. Lamb, looks like you have a busy

11  trial schedule, but let me tell you, why can't I suggest a two-

12  day trial in person in court, not Zoom, but no more than two-

13  day trial in late June?  It seems to fit your trial schedule.

14  Any reason why we couldn't do that?

15          MR. LAMB:  Well, Your Honor, I think that based on

16  what I've seen from submissions from Mr. Jacobson, I think that

17  two days is not going to be sufficient.  I think it's probably

18  going to be more along the lines of a eight-to-ten-day trial.

19  I understand that it's going to be a bench trial, but I think

20  it will take some time.

21          We have looked through what counsel has proposed

22  regarding dates, and I'll be prepared, probably today or

23  tomorrow.  There's four of the dates that we can confirm.  I'm

24  still trying to figure out a couple of dates.

25          There's a number of issues, though, relating to what I

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
55 of 81

1  believe are requests for discovery, both depositions and

2  written, that is past the date that is closed based on docket

3  order number 13921 that was issued by the Court, where written

4  discovery was closed on October 6th and percipient depositions

5  were closed on October 15th.  And we just heard about that two

6  days ago.  So we're willing to meet-and-confer about that.  But

7  I think that that's going to take some time.

8       Plus, I would think it would be advisable for us to

9  take some time once we can get these depositions of experts

10  done to review those matters and sit down and have, hopefully,

11  a meaningful mediation that will hopefully avoid the

12  requirement for your involvement in that trial, Your Honor.  So

13  that's --

14       THE COURT:  I thought the -- I thought the mediator

15  was available in April.

16       MR. LAMB:  We don't have a date yet.  I've kept trying

17  to get dates, and we don't have a date yet.  I mean, every time

18  I've asked, we've talked about it.  There was a date that was

19  proposed by me, but it's way early.  It's before any of the

20  depositions, and it's right in the middle of basically a

21  vacation I'm taking the following week where I'm out of the

22  Country.  So I couldn't do that.

23       And I haven't heard back yet from Mr. Jacobson about

24  other dates.  But hopefully, it would be sometime -- I think we

25  can probably get the depositions done of the experts,

1    hopefully, in April.  I think the last date that Mr. Jacobson

2    proposed was April 12th.  Like I said, we still have a couple

3    of people that we don't have dates yet.  I'm trying to get

4    that.  Hopefully, I can get that in the next couple of days.

5            And in regards to the other issues, there are a number

6    of individuals.  They listed Mr. Petree, Mr. Salguero, Mr.

7    Cortez.  These are percipient.  They're not experts.  So I

8    don't see that that would be called for under the current

9    stipulation and order entered by the Court, but I'm willing to

10   meet-and-confer about that.  Like I said, we just heard about

11   that a couple days ago, Your Honor.

12           THE COURT:  Well, we're jumping around.

13           Mr. Jacobson, didn't you -- where did I see -- you

14   have agreed on a mediator who I thought Mr. Bening was

15   available in April; is that incorrect?

16           MR. JACOBSON:  No, that is correct.  And I proposed a

17   discovery deposition schedule that concludes in mid-April.  And

18   Mr. Bening is available throughout the month of April and May.

19   He has many days in the second half of April.  And the entire

20   month of June is open for all counsel.  So we can complete the

21   depositions and the mediation by 1st of May or early May.  And

22   then we have the entire month of June for trial.

23           THE COURT:  Well, we're not going to have a trial if

24   you settle, obviously, but --

25           MR. JACOBSON:  Right.

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
57 of 81

1          MR. LAMB:  If I may, Your Honor.

2          THE COURT:  Yeah, please.

3          MR. LAMB:  The problem with that, though, is we have

4    to then have availability of individuals in June for that

5    trial.  And I know that there are some individuals now that are

6    not going to be available if we wind up going to a trial.  And

7    we have  --

8          THE COURT:  Okay.  Fair enough.  Hold on.

9          MR. LAMB:  We have issues with --

10         THE COURT:  Mr. Lamb, slow down.  Slow down.

11         Mr. Jacobson, what do you think is a trial time

12   estimate?

13         MR. JACOBSON:  I think five days on the outside.

14         THE COURT:  What are the issues besides the height of

15   the wire?

16         MR. JACOBSON:  There's just a lot of detail packed

17   into it.

18         THE COURT:  But what kind of facts have to be proven?

19   I mean, gentlemen, I got to tell you -- in fact, now I'm read

20   that maybe Mr. Raines had the wire lower than it was.  What is

21   there to testify and prove at trial, other than the height of

22   the wire and the economic impact of it?

23         MR. JACOBSON:  Those are issues, and there are simply

24   technical details about it.  Mr. Raines has a very long

25   declaration about all kinds of scans and measurements and such.

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
58 of 81

1  And we just need the normal depositions and trial on those

2  issues.

3        THE COURT:  I know.  I understand you need the

4  depositions.  You think I'm going to have a trial where I'm

5  going to have competing witnesses tell me the height of the

6  wire at a given point?

7        MR. JACOBSON:  That would be a disputed fact, yes.

8        THE COURT:  And so one witness says it's twelve feet

9  and six inches and the other witness says it's fourteen feet

10 and three inches and I'm going to make a fact determination of

11 that?

12       MR. JACOBSON:  Well, I think I --

13       THE COURT:  I guess, I got to tell you, I don't

14 understand why this doesn't all translate to economic impact

15 and an expert saying, with the wires the way they are, the

16 property suffered a value decrease of X dollars.  And the other

17 witness say, no, it was really Y dollars.

18       I mean, I'm not going to make a decision today.  But

19 the notion that why this isn't done by competing experts who

20 submit expert reports and are subject to cross-examination, I

21 can't imagine that beyond that, what is there to try.  So I'll

22 keep an open mind about how much time to set for trial, but I

23 still instinctively am mystified that it would take even two

24 days with experts.  But I won't prejudge that.

25       MR. JACOBSON:  Well, my comment was five days on the

1  outside after I heard an eight-day estimate or whatever from

2  opposing counsel.  Particularly with your standing order with

3  respect to experts and declarations and cross-examination and

4  such, five days is an outside.  I would say, three, four days.

5      THE COURT:  Well, I'm not trying to negotiate this

6  with you now.  I'm just saying that you need to be prepared to

7  persuade me what we do, and we'll do it.  And we'll do it live

8  in 450 Golden Gate Avenue.

9      But the question is, what else is there to do today.

10  And I accept that Mr. Lamb has a vacation schedule, and I

11  respect that.  And he's got other trial commitments.  And you

12  gentlemen can work out things for mutual adjustments of

13  deadlines.  And if not, I'll make my decision on it.

14      But I think for now, the only thing I would do is

15  perhaps just pin down another status conference and let things

16  shake out and tell you to get on.  Get it resolved.  And not

17  tell you when to mediate and who to select and who to depose

18  and who not to depose.

19      But I will say, when it comes time to pin down the

20  trial, I'm going to require each side to give me a summary of

21  what each witness is going to say, a nonexpert witness.  I

22  mean, if you tell me that Mr. So-and-so is your expert on the

23  valuation, then I'll just make you agree on when that expert's

24  report will be available.  And we'll follow the procedure of

25  the report being filed and the expert starting with cross-

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
60 of 81

1  examination.  And same with the other expert or two experts or

2  three experts.  But we don't -- but not percipient witnesses.

3         Yes, Mr. Jacobson.

4         MR. JACOBSON:  This has been pending a long time.  We

5  have a very discreet deposition schedule.  We have the entire

6  month of June open.  And if we -- it's appropriate at this

7  point to have a trial date.  And the trial date -- the

8  existence of the trial date influences the mediation.  It's not

9  just we're up against a status conference.  There is a benefit

10 to having the trial date.  Things don't just keep getting

11 postponed.  And if we need to change the trial date for some

12 reason, that's always an option.  We would just like to have a

13 trial date during the month --

14        THE COURT:  Okay.

15        MR. JACOBSON:  -- everybody is available and

16 discovery's been completed.

17        THE COURT:  Mr. Lamb, any --

18        MR. LAMB:  And I know that that date would be

19 September.  And I don't see what the major issue is.  I don't

20 see having a problem with a further status conference.  We're

21 going to meet-and-confer regarding things.  But I just, I think

22 that that's overly ambitious in June because I have to have

23 schedules with people that are going to be able to appear at

24 trial.  And I know that we can get that scheduled by June.

25        So if you want a firm date versus a further status

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
61 of 81

1   conference, that's why I would ask for September.

2           THE COURT:  So it's January now, and January now --

3           MR. LAMB:  It's January.

4           THE COURT:  And so January 24th, you have to -- I have

5   to know when your witness is available in September, rather

6   than tell you that the witness better be available in June?

7   I'm sorry.  That's not going to fly.

8           MR. LAMB:  Your Honor, I'm not sure what witnesses

9   we're going to have yet because we haven't done all these

10  depositions and there's a number of --

11          THE COURT:  I know.

12          MR. LAMB:  -- these percipient witnesses that we have

13  to meet-and-confer about because I think that that's been

14  closed already.

15          THE COURT:  But I just got through telling you, I

16  don't know what the hell some percipient witness is going to

17  do.  What do you think the percipient witness is going to

18  testify to?

19          MR. LAMB:  I didn't ask for it, Your Honor.  These

20  were asked for by Mr. Jacobson.

21          THE COURT:  Well, how about any -- how about any

22  witnesses you're going to call?

23          MR. LAMB:  How many witnesses am I going to call?

24          THE COURT:  No, no, no, no.  Do you have any

25  percipient witnesses that you intend to call?

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
62 of 81

1          MR. LAMB:  Yes.

2          THE COURT:  And what are they going to testify to?

3          MR. LAMB:  They're going to testify about the

4    circumstances relating to the line height and what was observed

5    then and what Mr. Shahmirza is claiming now and whether or not

6    there were --

7          THE COURT:  What was observed then?  Well, Mr. Lamb,

8    what was observed then isn't relevant.  What is relevant, seems

9    to me, is the situation now.  I mean, I -- really --

10         MR. LAMB:  Or I think it's -- I think it's --

11         THE COURT:  -- maybe we should have a --

12         MR. LAMB:  -- both relevant.

13         THE COURT:  -- maybe we should have a site inspection.

14    I mean, I can get out there with my tape measure, if I don't

15    get electrocuted, and figure out how high the wire is.

16         MR. JACOBSON:  Judge, this is a status conference for

17    scheduling.  And we're talking about June, which is five months

18    away.  And we're talking about a handful of depositions and a

19    mediation.  That's a huge amount of time from now till June.

20    And asking for September --

21         THE COURT:  Right.

22         MR. JACOBSON:  -- just bespeaks an objective, a

23    strategy of trying to delay this.

24         THE COURT:  Mr. Lamb, I have to agree with him on this

25    point.  I'll tell you what.  I'm still skeptical on why we even

1  need anywhere near, like, five days.  So I'm going to give you

2  a three-day -- a three-day block for an in-person trial in late

3  June.  And the June is designed to accommodate Mr. Lamb's

4  competing trial schedule.  He's busy, and compliment to him.

5  And he's entitled -- and he's got a vacation plan.  And we'll

6  take a -- we'll have a status conference in two or three months

7  prior to that time to check in with it.

8             So Ms. Parada, three days in the second half of June.

9             THE CLERK:  How is June 24th, 25th, and 26th?

10            THE COURT:  Sold.  Mr. Jacobson, any problem with

11  that?

12            MR. JACOBSON:  Agreed.

13            THE COURT:  Mr. Lamb?

14            MR. LAMB:  Well, Your Honor --

15            THE COURT:  I understand you don't really agree, but I

16  mean, are those dates available?

17            MR. LAMB:  They could be available for me, but I have

18  to make sure that there's witness availability.

19            THE COURT:  Well, we have a tail wagging the dog here.

20  This is the Court picking a trial with principal counsel.

21            MR. LAMB:  Yes.

22            THE COURT:  And if you can't make a witness available,

23  we'll figure out some other way.  If there is a absolute

24  critical witness that's going to be having heart surgery or be

25  in another country, that's one thing.  And if there's somebody

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
64 of 81

1  that just, there's an inconvenient time for a percipient

2  witness, get a different percipient witness.  And I will have

3  a -- and you have plenty of time to have experts available and

4  have their reports.

5          So I'm going to -- I'm going to pick mid-April for a

6  further status conference.  Separately set.  Ms. Parada, it can

7  be on the PG&E calendar or separately.

8          THE CLERK:  April 23rd at 10 o'clock.

9          THE COURT:  That time and date convenient for you,

10 gentlemen?

11         MR. LAMB:  I'm scheduled to be in a trial during that

12 week.

13         THE COURT:  Are you on a trial that day or not?

14         MR. LAMB:  Yes.  Yes.

15         THE COURT:  Okay.  So how about you want a week

16 earlier?  Is that right?  You can (indiscernible) by Zoom.

17 We'll do this by Zoom.

18         MR. LAMB:  Okay.  That'd be fine, Your Honor.

19         THE COURT:  But I want to accommodate you.

20         MR. LAMB:  Sure.

21         THE COURT:  So Ms. Parada, is the 16th available?

22         THE CLERK:  Yes, Your Honor.

23         THE COURT:  Mr. Jacobson, that works?

24         MR. LAMB: The 15th is the -- the 16th is when the

25 trial starts, so actually, the 15th would be better.

1       THE COURT:  Is that available, Ms. Parada?

2       THE CLERK:  Yes, Your Honor, at 10 o'clock.

3       THE COURT:  Mr. Jacobson, that work for you?

4       MR. JACOBSON:  Yes.

5       THE COURT:  Okay.  Gentlemen, we have a status

6   conference on April 15th at 10 o'clock to discuss all the

7   things we've talked about, whether there's any open discovery

8   issues, whether you've agreed on deadlines for experts reports

9   and so on.  And for now, I'm penciling in, but marking on the

10  calendar, a three-day trial in San Francisco in person on June

11  24.

12      I won't issue a trial scheduling order yet.  I'll wait

13  until after the April status conference.  But there's no

14  reason, unless you all tell me otherwise, to not follow my

15  normal trial schedule with briefs ahead of time and experts

16  reports and all that stuff.  But both of you know what that is,

17  and maybe you'll have all worked it -- it all worked out.

18      So it seems to me that I'm available between now and

19  then if there's a dispute that isn't resolved about whether you

20  renew nonexpert witnesses, whether the experts get deposed,

21  whether Mr. Shahmirza gets deposed.  Yeah, everything that that

22  you've all been talking about.

23      And when we have the status conference on April 15th,

24  we'll talk about actual trial time and who the witnesses are,

25  and you should anticipate making a demonstration then or

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
66 of 81

1  promptly after that about who your witnesses will be and why

2  they will be necessary and what they'll talk about so we can

3  decide whether that seems necessary.  And I will promise you

4  that we'll have the trial.  And if the plaintiff, particularly

5  the claimant, or either side, but particularly the claimant

6  here, needs more time than three days, we'll figure out a way

7  to bifurcate it and make it work.

8          But Mr. Jacobson, you have your request.  You have a

9  firm trial date.  And the best thing you all can do is make

10  sure it never happens because you got the case resolved on a

11  mediated result.  Okay.

12          MR. JACOBSON:  I have a question.  Is your normal pre-

13  trial order applicable here?

14          THE COURT:  Yeah, but I just wasn't going to issue it

15  until the status conference.

16          MR. JACOBSON:  Okay.

17          THE COURT:  Yeah, that's what I'm saying.  I mean, my

18  pre-trial for me is it's briefs, whatever, ten or whatever days

19  to prior it is and all the other stuff.  I can't remember it,

20  but there's plenty of time for it.  Okay.

21          Mr. Lamb, any questions?

22          MR. LAMB:  No, Your Honor.

23          THE COURT:  Okay.  Thank you.  Again, sorry about the

24  delay.  And good luck to make some progress in this case.

25          (Whereupon these proceedings were concluded at 11:37 AM)

1                              I N D E X

2    RULINGS:                                        PAGE LINE

3    Discovery requests by PERA and Baupost are       50    25

4    denied

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        C E R T I F I C A T I O N

2

3  I, River Wolfe, certify that the foregoing transcript is a true

4  and accurate record of the proceedings.

5

6

7

8  _____

9  /s/ RIVER WOLFE, CDLT-265

10

11  eScribers

12  7227 N. 16th Street, Suite #207

13  Phoenix, AZ 85020

14

15  Date:  January 25, 2024

16

17

18

19

20

21

22

23

24

25

## A

**ability (2)**
14:4;41:2
**able (8)**
10:10;13:23;18:12,
24;30:18,24;44:9;
60:23
**absent (1)**
14:6
**absolute (1)**
63:23
**absolutely (1)**
18:12
**accelerates (1)**
25:10
**accelerating (1)**
25:17
**accept (3)**
27:18;38:9;59:10
**accepting (1)**
38:9
**accommodate (2)**
63:3;64:19
**accompanying (1)**
10:13
**accomplish (1)**
9:7
**according (1)**
43:17
**acknowledge (1)**
26:1
**across (2)**
41:4;52:3
**Act (3)**
27:14,14;39:20
**action (7)**
13:5;20:13;27:8,10,
15;28:2;42:9
**actions (6)**
20:17;21:4;27:22;
32:22;42:4,5
**actively (1)**
10:20
**actual (5)**
13:25;15:2,10;
19:20;65:24
**actually (7)**
13:1;18:24;19:23;
22:1;33:5,9;64:25
**add (1)**
26:22
**added (1)**
11:8
**additional (2)**
52:15;53:15
**address (4)**
17:12;24:4;27:3;
28:15
**adequacy (1)**
25:21
**adhered (1)**

20:20
**adjustments (1)**
59:12
**adopt (2)**
43:8,9
**adopted (3)**
14:16;37:15;43:14
**ADR (3)**
10:12;29:19;31:6
**advance (2)**
13:20;35:11
**advice (1)**
53:8
**advisable (1)**
55:8
**advisement (1)**
44:3
**advisory (7)**
18:25;20:6;22:4,4;
34:15,18;35:2
**advocacy (1)**
36:23
**advocate (2)**
37:7,7
**advocating (1)**
37:20
**afternoon (1)**
9:14
**again (10)**
21:7;30:11;34:4;
36:20;39:15,18;
49:21;51:12;54:9;
66:23
**against (2)**
11:14;60:9
**ago (2)**
55:6;56:11
**agree (3)**
59:23;62:24;63:15
**agreed (3)**
56:14;63:12;65:8
**ahead (6)**
8:1;9:13;17:24;
43:4,4;65:15
**alert (1)**
35:17
**allegations (5)**
14:8,17;43:17;48:1,
14
**alleged (1)**
50:11
**allow (2)**
31:20;35:18
**allowed (3)**
30:25;48:4;53:13
**allows (1)**
32:25
**almost (1)**
6:17
**along (2)**
16:18;54:18
**alongside (1)**
9:18

Alsup (1)
21:1
**although (2)**
29:23;49:1
**always (3)**
7:3;30:11;60:12
**amazing (1)**
19:11
**ambitious (1)**
60:22
**amend (2)**
30:18;40:19
**amended (2)**
26:8;37:15
**amendment (1)**
43:9
**amount (1)**
62:19
**analogous (5)**
38:24;47:5,5,18,23
**analogy (2)**
38:14;47:14
**analysis (1)**
46:25
**animated (1)**
33:18
**announce (3)**
31:15;35:18;46:12
**anticipate (1)**
65:25
**anxiety (1)**
4:24;7:3
**apologize (5)**
17:14;39:12,12;
54:4,9
**apparent (2)**
18:5;28:17
**apparently (1)**
16:16
**appear (5)**
8:6;18:12;22:9;
44:23;60:23
**appearance (5)**
8:8,12,18,22;46:11
**appearances (1)**
46:12
**appeared (3)**
26:12,13,14
**appearing (3)**
19:9;30:12;46:11
**applicable (3)**
14:5;27:13;66:13
**applied (1)**
26:5
**applies (2)**
27:9;48:7
**apply (6)**
18:18;19:3;25:12,
13;27:7;48:7
**applying (1)**
27:4
**appoint (5)**
19:22;21:21;23:5;

24:3;25:8
**appointed (4)**
10:1;18:20;20:16;
34:15
**appointing (1)**
20:22
**appointment (7)**
10:6;20:11,13,20;
21:3;26:3;42:18
**appreciate (1)**
43:25
**appropriate (8)**
20:12;26:4;36:18;
38:22;41:8;51:1;53:3;
60:6
**approved (1)**
33:22
**April (10)**
55:15;56:1,2,15,18,
19;64:8;65:6,13,23
**argue (1)**
12:11
**argument (7)**
8:16;9:5;15:5;
16:13;17:4,25;45:11
**arguments (4)**
14:7;28:9;41:1;
45:18
**around (5)**
11:23;39:19;40:17,
18;56:12
**art (3)**
23:15,15;24:15
**aside (2)**
7:12;15:22
**aspects (1)**
25:10
**asserted (5)**
13:22;38:11;39:1,4;
41:3
**asserting (2)**
13:22;40:10
**assigned (1)**
39:4
**association (1)**
36:15
**assume (3)**
31:19;40:18;49:19
**assumes (1)**
49:18
**attention (1)**
15:12
**audio (10)**
4:25;5:17;6:3,9;
7:20;17:21;46:22;
47:2,7;52:20
**authorities (1)**
47:25
**authority (5)**
44:18;45:2,14;
52:22;53:10
**authorize (1)**
11:8

24:3;25:8
**appointed (4)**
10:1;18:20;20:16;
34:15
**availability (2)**
57:4;63:18
**available (15)**
55:15;56:15,18;
57:6;59:24;60:15;
61:5,6;63:16,17,22;
64:3,21;65:1,18
**Avenue (1)**
59:8
**avoid (1)**
55:11
**aware (2)**
24:6;48:18
**away (2)**
32:16,17;62:18

## B

**back (8)**
14:10;16:16,19;
17:23;30:12;38:4;
41:15;55:23
**bad (1)**
7:5
**bankruptcy (10)**
13:2;22:10,11;
27:15,21,21;47:1,20,
20;49:6
**based (8)**
14:12;38:17;41:11;
42:14,15;43:23;
54:15;55:2
**basically (1)**
55:20
**basis (4)**
9:19;14:8;18:12;
38:10
**Baupost (12)**
15:21;16:9;34:21;
35:20;46:17,23;
48:17,21;49:19;
50:15,17;51:3
**Baupost's (1)**
29:6
**beat (2)**
36:3;53:19
**began (1)**
10:20
**beginning (1)**
10:24
**behalf (12)**
11:21;12:19,20,21;
14:6;17:2;18:13;
30:17;37:5,6,20;
52:13
**believes (2)**
31:12;53:1
**bench (2)**
45:25;54:19
**benefit (3)**
41:13;52:12;60:9
**Bening (2)**
56:14,18

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
70 of 81

**Benvenutti (1)**
4:14
**besides (1)**
57:14
**bespeaks (1)**
62:22
**best (4)**
31:4;38:19;53:11;
66:9
**better (4)**
32:10;47:12;61:6;
64:25
**beyond (2)**
30:1;58:21
**bifurcate (1)**
66:7
**bind (1)**
32:22
**binding (2)**
31:1;33:20
**bit (4)**
33:12;38:4;46:5;
51:25
**block (1)**
63:2
**board (2)**
41:5;52:3
**bona (1)**
40:9
**both (6)**
20:10;43:21;45:6;
55:1;62:12;65:16
**bought (1)**
43:21
**bound (1)**
31:2
**breach (1)**
39:2
**break (1)**
17:20
**brief (6)**
21:9;23:25;28:14;
34:2;35:3;44:10
**briefed (1)**
24:13
**briefing (7)**
29:2;44:24,25;45:1;
46:19;53:15,16
**briefly (1)**
27:3
**briefs (2)**
65:15;66:18
**bring (2)**
53:2,25
**broken (1)**
29:4
**Brooks (1)**
20:23
**brought (4)**
18:13;20:13;27:10,
15
**building (1)**
27:4

**bushes (1)**
36:3
**business (3)**
52:15,25,25
**busy (2)**
54:10;63:4

**C**

**calculation (1)**
31:17
**calendar (3)**
7:12;64:7;65:10
**calendaring (1)**
46:7
**CALIFORNIA (5)**
4:1;20:20,25;21:18;
23:3
**Call (14)**
4:3;5:17;6:2,3,5,8,
9;8:2;14:25;26:18;
36:7;61:22,23,25
**called (2)**
35:17;56:8
**Calling (1)**
4:5
**calls (1)**
52:6
**camera (1)**
4:10
**can (53)**
4:21,22,23;5:2,3,14,
18,18,20,22;6:12,14,
23;7:6,10,18;8:5,17;
11:2;14:6;17:20;23:8;
28:6;36:3,4;41:16;
43:12;45:3,6,10,13;
47:10,10;48:24;
49:11,11,13;52:7,24;
53:6,11;54:23;55:9,
25;56:4,20;59:12;
60:24;62:14;64:6,16;
66:2,9
**canceled (1)**
6:17
**capable (1)**
17:25
**card (1)**
53:9
**caring (1)**
53:4
**case (29)**
8:2;10:20,23;11:22;
15:14;18:11;20:9;
22:8,15,15,17;23:2;
24:17;27:24;28:10;
29:12;30:8;32:5,11,
21;33:21;42:3,7,10,
12;45:1;47:15;66:10,
24
**cases (26)**
13:2;18:14;19:4;
20:1,7,22;21:8,16;

22:21;23:6,20;25:2;
33:19;34:2,10;42:2,3,
13,19,23;44:5,7,8;
45:12,17,24
**Catalina (21)**
8:11,13,14;26:18,
20;28:12,14;29:7,10,
16;31:10,22;32:1,4,8,
15,18;33:15;38:13;
40:25;53:17
**Catalina's (1)**
34:20
**certain (1)**
25:10
**certainly (10)**
14:12;15:11;28:21;
29:2;30:6;32:18;
35:12;47:24;48:25;
49:3
**certification (11)**
13:7;22:2,3;25:1,
10,13,17,21;27:24;
29:18;37:22
**challenge (5)**
13:6,21;14:3;40:9;
41:2
**challenged (2)**
48:2,4
**challenges (2)**
10:2;48:13
**challenging (5)**
13:9;14:17;46:18;
47:16;51:22
**chance (1)**
7:10
**change (1)**
60:11
**changes (1)**
30:20
**Chapter (2)**
27:8;40:5
**check (1)**
63:7
**choice (2)**
5:15;48:15
**chose (1)**
15:13
**chunk (1)**
5:12
**circles (1)**
11:23
**Circuit (1)**
30:19
**circumstances (1)**
62:4
**citations (1)**
45:13
**cite (7)**
18:11;20:2;23:23;
33:18;34:1;42:11;
44:7
**cited (6)**
19:10;23:8,18,19;

35:2;42:3
**cites (9)**
18:25;23:6,7;28:3;
42:20;44:5,5,22;
45:12
**citing (4)**
24:18;27:5;35:2;
45:12
**Civil (3)**
27:10,16;47:19
**claim (21)**
11:14;12:4,7,7,16;
13:6;14:9,11,11;
27:14;38:1,2;40:19;
47:16,18,20,22,23;
48:3;49:15;50:12
**claimant (13)**
4:9;11:4,5,16,18;
13:17;29:21;37:6,15;
40:10,10;66:5,5
**claimants (30)**
8:14;11:1,21;13:18,
19,22;14:20;16:16;
18:8,13;26:11;28:16,
18,19;29:11;30:10,13,
18;31:25;32:23;33:6;
37:8,24,25;39:20,25;
40:5;46:19;49:19;
50:22
**claimants' (2)**
28:23;39:21
**claiming (1)**
62:5
**claims (51)**
9:18;10:2;11:13,24;
13:21;14:3,18;15:25;
18:8,13;22:10;28:23;
29:20,22;30:4,6,18,
19;32:9,23,25;33:9;
36:22;38:7,7,11,11,
13,17,23,25;39:2,2,3,
3;40:1,6,9,10,14,16;
41:3,4,9;46:18;47:15;
49:5,8,13;50:6,18
**clarify (1)**
12:13
**class (52)**
10:6,10;11:8,10;
12:10;13:5,7;14:6;
19:5;20:13,13,17;
21:1,3,4,14,19,21;
22:2,3,16;23:5;25:1,
10,13,17,21;27:22,23;
28:2,17,20;29:10,18;
33:22;35:4,13;36:6,
18;37:2,5,21,21;
39:18;41:6;42:4,5,8,9,
13,18;51:11
**clear (8)**
19:1,15,21,22;
33:18;40:2;43:8;49:8
**clearly (1)**
48:10

35:2;42:3
**CLERK (19)**
4:4,25;5:2,20;6:12,
23;7:17;8:3,5;9:3;
46:14;47:4,7,12;
53:25;63:9;64:8,22;
65:2
**client (2)**
13:25;35:20
**clients (4)**
34:20;36:4;51:25;
52:16
**closed (4)**
55:2,4,5;61:14
**cocounsel (1)**
34:5
**colleagues (3)**
22:22;28:1;45:25
**collective (1)**
51:3
**coming (5)**
5:25;10:22;13:17,
19;43:10
**comment (9)**
6:19;16:2,18,20,21,
25;26:22;27:3;58:25
**commentary (2)**
20:10,14
**commented (1)**
6:25
**comments (2)**
26:19;36:16
**commitment (1)**
10:11
**commitments (1)**
59:11
**committee (2)**
34:16;35:2
**communication (1)**
6:2
**Company (1)**
42:11
**compels (1)**
49:25
**competing (22)**
19:3,4;20:5;21:16,
19,25;22:23;23:4,7;
25:2,2,15;33:23;34:6,
7;42:16,17,21,23;
58:5,19;63:4
**competition (1)**
25:8
**complaining (1)**
28:8
**complaint (14)**
14:13,14,16;37:16;
43:11,11,14;47:18,19,
22;48:1,2,12;49:15
**complete (1)**
56:20
**completed (1)**
60:16
**completely (2)**
18:21;24:19

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
71 of 81

**Complex (2)**
20:11;42:14
**complicated (1)**
41:9
**compliment (2)**
53:5;63:4
**concern (3)**
30:22;51:18;52:8
**concerned (1)**
52:1
**conclude (1)**
49:23
**concluded (1)**
66:25
**concludes (1)**
56:17
**conference (11)**
59:15;60:9,20;61:1;
62:16;63:6;64:6;65:6,
13,23;66:15
**confess (1)**
13:8
**confidence (1)**
33:19
**confirm (1)**
54:23
**conflict (1)**
13:25
**confuses (1)**
6:19
**confusion (1)**
18:16
**connected (1)**
7:4
**connection (3)**
4:23;39:1,5
**consequence (1)**
50:4
**consequences (2)**
27:5;52:21
**consider (4)**
15:16;50:9,10,14
**considering (1)**
15:18
**consistent (8)**
10:10;20:14;28:20,
25;29:1,2,3,23;49:4
**consolidated (2)**
20:18;21:4
**consult (1)**
19:20
**contemplate (1)**
14:24
**contemplates (3)**
10:5;14:4,5
**context (2)**
9:24;26:6
**continue (1)**
11:2
**contrary (1)**
46:24
**convenient (1)**
64:9

**coordinate (1)**
31:8
**coordination (2)**
30:7,8
**core (4)**
10:3,7;14:4,18
**Corporation (1)**
4:6
**corrected (1)**
39:13
**correctly (1)**
43:22
**Cortez (1)**
56:7
**counsel (83)**
5:25;7:4,5;8:5;10:1,
6,9;11:10,25;12:23;
14:6;15:1;17:1;18:10,
12,19;19:3,22;20:5,
12,14,16,21,22;21:2,
3,16,19,21,25;22:9,
13,21;23:6,7,12,14,
24;24:1,4,15,25;25:2,
9,12,14,15,16;26:3;
28:5,23;31:21;33:22,
23;34:6,15;35:4,8,13;
36:6,18;37:2;39:18,
21;41:6,8;42:4,8,8,10,
12,13,15,18,20;46:4,
15,20;51:21;54:21;
56:20;59:2;63:20
**counselors (1)**
19:4
**counsel's (1)**
24:23
**Country (2)**
55:22;63:25
**couple (8)**
17:11;20:2;28:12,
15;54:24;56:2,4,11
**course (4)**
32:14,14;43:6;
47:14
**Court (226)**
4:3,4,7,11,17,19;
5:3,11,18,22;6:7,14,
22,24,25;7:2,2,3,8,15,
18;8:1,4,7,11,15,18,
22;9:1,4,8,10,12,16,
17,19;10:4,7,12,19;
11:14,18,23,23;12:15,
20,24;13:4,11,11,15,
17,19,23;14:19,23;
15:12,15,17,18;16:1,
23;17:3,6,8,13,20,24;
18:2;19:6,7,8,15,17,
19,22,24;20:3,9,18;
21:5,7,12,22;22:15,
20,25;24:6,8,10,16;
25:1,3,15;26:1,17,24;
27:1,15,19,25;29:1,9,
15,21,25;31:10,23;
32:2,5,7,14,16;33:10,

14,17,21;34:3,9,12,
17;35:7,10,16;36:2,
11,14;37:6,10,12,14,
23;38:14,19;39:6,9,
11,13,15;40:2,12,15,
17,21,23;41:10,15,21,
24;42:14,22,24;43:1,
3,22;44:1,2,12,15,17,
20,25;45:3,8,11,16;
46:4,15;47:5,9,13;
49:18;51:19,24;
52:14;53:23;54:2,6,9,
12;55:3,14;56:9,12,
23;57:2,8,10,14,18;
58:3,8,13;59:5;60:14,
17;61:2,4,11,15,21,
24;62:2,7,11,13,21,
24;63:10,13,15,19,20,
22;64:9,13,15,19,21,
23;65:1,3,5;66:14,17,
23
**courts (5)**
21:20;23:4;25:7;
27:21;47:1
**Court's (7)**
18:6;20:15;31:7;
35:9;41:11;47:24;
49:18
**crafting (1)**
33:8
**crazy (1)**
23:11
**critical (2)**
22:7;63:24
**criticizing (1)**
28:8
**cross- (1)**
59:25
**cross-examination (2)**
58:20;59:3
**current (1)**
56:8
**curtain (1)**
38:4
**cutting (1)**
47:8

**D**

**date (16)**
6:18;55:2,16,17,18;
56:1;60:7,7,8,10,11,
13,18,25;64:9;66:9
**dates (9)**
51:24,25;54:22,23,
24;55:17,24;56:3;
63:16
**day (4)**
53:21;54:12,13;
64:13
**days (14)**
54:17;55:6;56:4,11,
19;57:13;58:24,25;

59:4,4;63:1,8;66:6,18
**deadlines (3)**
51:23;59:13;65:8
**deal (7)**
10:2;11:12;17:18;
22:1,5;27:22,25
**dealing (3)**
42:12;43:11;52:2
**deals (1)**
49:7
**dealt (2)**
25:20,22
**death (1)**
53:20
**debtor (3)**
14:17,21;48:17
**debtors (6)**
4:14;8:10,25;38:5,
6;52:10
**debtors' (3)**
10:15;11:25;41:2
**decide (2)**
45:25;66:3
**decided (2)**
6:18;49:9,24
**decision (9)**
26:4;28:10;30:20;
31:18;32:10;33:24;
45:20;58:18;59:13
**decisions (1)**
31:2
**declaration (1)**
57:25
**declarations (1)**
59:3
**decrease (1)**
58:16
**deemed (3)**
48:2,4,12
**defendant (1)**
13:5
**defendants (2)**
21:25;24:24
**defending (1)**
11:6
**defenses (1)**
50:20
**deficiencies (1)**
36:22
**define (1)**
29:25
**definition (2)**
28:17;29:10
**degree (1)**
48:18
**delay (4)**
5:23;30:15;62:23;
66:24
**demonstration (1)**
65:25
**denied (6)**
20:20;21:1;22:16;
23:7;43:19;51:3

59:4,4;63:1,8;66:6,18
**Dennis (1)**
4:5
**deny (2)**
22:21;52:21
**denying (2)**
21:19;43:12
**depose (2)**
59:17,18
**deposed (2)**
65:20,21
**deposition (2)**
56:17;60:5
**depositions (10)**
55:1,4,9,20,25;
56:21;58:1,4;61:10;
62:18
**derivative (1)**
39:2
**designation (2)**
31:5;32:20
**designed (4)**
19:2;20:4;22:5;
63:3
**despite (1)**
36:23
**detail (3)**
50:8;51:12;57:16
**details (2)**
50:7;57:24
**determination (5)**
25:18,24;48:8;51:2;
58:10
**determinations (2)**
48:20;50:5
**difference (3)**
12:25;13:1;43:15
**different (12)**
11:1;14:1;15:22;
16:9;19:2;31:23;32:4;
35:5;42:13;43:6;
47:11;64:2
**difficulties (1)**
54:5
**diffuse (1)**
29:21
**direct (1)**
6:1
**directed (3)**
11:16;15:5;18:7
**directions (1)**
5:21
**directly (1)**
14:16
**disagree (2)**
19:23;31:3
**disclosure (1)**
43:22
**discovery (30)**
22:2;25:24;30:5,7;
31:9,14;33:4,8;35:9,
10,11,19;36:25;41:12,
12,14;46:10,16,23;
48:8,10,19;49:13;

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
72 of 81

51:1,4,8;55:1,4;
56:17;65:7
**discovery's (1)**
60:16
**discreet (1)**
60:5
**discrete (1)**
17:12
**discuss (1)**
65:6
**discussed (2)**
29:2;51:20
**discussion (4)**
23:20,23;45:22;
48:7
**discussions (1)**
30:8
**dismiss (4)**
14:22;47:23;48:13;
49:22
**disposed (4)**
49:10,11,16;50:21
**dispositive (2)**
19:11;49:11
**dispute (2)**
50:15;65:19
**disputed (2)**
50:9;58:7
**disqualifies (1)**
53:2
**disqualify (1)**
53:1
**distinction (1)**
39:22
**district (11)**
13:11;20:3,3,9,19;
21:18,20;23:3,5,6;
33:21
**docket (3)**
16:4,15;55:2
**docketing (1)**
46:9
**document (1)**
44:4
**documents (2)**
14:21;50:3
**dog (1)**
63:19
**dollars (6)**
12:4,6;38:8,12;
58:16,17
**Donaldson (1)**
20:8
**done (9)**
23:10;27:24;28:22;
33:3;36:12;55:10,25;
58:19;61:9
**doubt (1)**
11:2
**down (9)**
21:8;30:20;33:1;
37:22;55:10;57:10,
10;59:15,19

**dozen (1)**
23:6
**draft (1)**
34:24
**dual (2)**
9:19,21
**duplicative (1)**
42:16
**during (2)**
60:13;64:11
**duty (1)**
39:3

**E**

**earlier (3)**
44:22;53:16;64:16
**early (3)**
51:11;55:19;56:21
**Eastern (1)**
20:19
**easy (2)**
12:3;37:14
**economic (2)**
57:22;58:14
**effect (3)**
28:23;48:10;51:4
**effectively (2)**
38:1;40:6
**efficient (2)**
30:5;33:6
**efficiently (1)**
30:14
**efforts (1)**
48:17
**eight (1)**
9:9
**eight-day (1)**
59:1
**eight-to-ten-day (1)**
54:18
**either (5)**
11:5;22:17;26:10,
12;66:5
**elaborate (1)**
36:21
**electrocuted (1)**
62:15
**else (11)**
7:4;12:21;29:4;
34:23,23;35:24;36:8,
11;37:2,16;59:9
**email (1)**
5:20
**empathize (1)**
7:6
**empower (2)**
52:16;53:6
**end (5)**
7:12,12,16;17:12;
28:7
**endless (1)**
48:6

**endowing (1)**
32:23
**engage (1)**
35:8
**enormous (1)**
11:25
**enough (3)**
38:21;39:11;57:8
**enshrined (1)**
31:7
**entered (1)**
56:9
**entire (3)**
56:19,22;60:5
**entirely (1)**
18:10
**entitled (5)**
13:13,13;25:23;
35:11;63:5
**ERISA (1)**
42:8
**especially (1)**
26:5
**established (2)**
35:23;47:25
**estimate (2)**
57:12;59:1
**Etkin (83)**
8:15,17,20,20;9:4,6,
9,11,14,17;11:10,17,
19,23,24;12:14,18,21,
25;13:4,8,13,16;14:2;
15:10,18;16:1,20,24;
17:17;18:19;22:22;
27:12;31:20;33:7,17;
34:1,8,10,14;35:1,8,
16,16;36:1,10,12,14;
37:3,9,11,13,18,24;
38:16,25;39:8,10,12,
14,22;40:13,16,20,22,
24;41:11;42:1;43:10;
44:9,13,14,16,19,21;
45:2,13,15;47:3;
51:10,18,20;52:14
**Etkins (2)**
28:21;29:13
**Etkins' (1)**
29:5
**Etkin's (1)**
44:10
**even (15)**
13:24;14:12,16;
17:22;19:10;21:8;
24:4;27:17;28:5;29:4,
11;42:14;43:23;
58:23;62:25
**event (1)**
48:19
**everybody (4)**
7:4;24:24;24,60:15
**everyone (1)**
5:9
**exactly (2)**

18:4;20:20
**examination (1)**
60:1
**example (3)**
20:7;35:7;39:24
**Exchange (1)**
27:14
**exclude (1)**
28:17
**excluded (1)**
28:19
**excuse (2)**
5:16;47:4
**exist (1)**
20:22
**existence (1)**
60:8
**exists (1)**
50:20
**expand (3)**
22:13;24:22,23
**expanded (1)**
22:8
**expect (1)**
10:9
**expectation (1)**
14:19
**expected (1)**
53:16
**expeditiously (1)**
30:15
**experience (3)**
34:12,14;38:21
**experienced (3)**
18:2;23:12;28:5
**expert (5)**
58:15,20;59:22,25;
60:1
**expertise (1)**
16:17
**experts (13)**
45:22;55:9,25;56:7;
58:19,24;59:3;60:1,2;
64:3;65:8,15,20
**expert's (1)**
59:23
**explain (3)**
19:16,18;35:19
**explicitly (1)**
28:19
**expressly (2)**
28:18;30:24
**expunged (1)**
40:1
**extensively (1)**
5:24
**extent (3)**
27:16;50:2;53:4

**F**

**face (1)**
50:18

**facing (1)**
37:25
**fact (13)**
10:3;15:3;18:17;
22:11;23:1;27:23;
33:12;42:15,20;
43:19;57:19;58:7,10
**facts (10)**
38:10,18;49:9,9,19,
24;50:9,15,25;57:18
**factual (1)**
50:4
**Fair (3)**
39:11;44:16;57:8
**fairness (1)**
44:21
**fall (1)**
30:12
**familiar (3)**
46:15;49:22
**fashioned (1)**
6:8
**favor (1)**
50:21
**favorably (1)**
50:21
**federal (7)**
7:3;23:16;27:10,16;
47:19;48:24,25
**feel (1)**
51:21
**feet (2)**
58:8,9
**few (1)**
31:15
**fides (1)**
40:9
**fiduciary (2)**
9:22;39:3
**fifth (1)**
10:23
**fighting (1)**
16:16
**figure (6)**
7:5;26:19;54:24;
62:15;63:23;66:6
**file (13)**
15:13;21:9;22:1;
40:24;43:9;44:1,4,4;
45:3,6,13;47:15;52:5
**filed (14)**
11:25;12:4;15:3,7,
13;22:9;38:4;42:4;
46:18;47:22,23;50:1,
14;59:25
**filing (10)**
12:18;13:6;14:9,20;
15:14;16:6;24:25;
44:8;52:7,13
**filings (1)**
51:10
**fine (2)**
11:15;64:18

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
73 of 81

**finish (1)**
31:5
**fire (4)**
38:9,20,20;39:4
**firm (4)**
20:12;34:4;60:25;
66:9
**firms (2)**
21:20;23:4
**first (8)**
4:16;5:6;16:7;24:3;
28:15;43:19,21;49:7
**fit (1)**
54:13
**five (7)**
17:11;35:17;57:13;
58:25;59:4;62:17;
63:1
**fix (1)**
7:21
**fixed (1)**
5:23
**flush (1)**
36:21
**fly (1)**
61:7
**folks (5)**
17:10;43:8;52:6,8,
12
**follow (4)**
23:23;31:10;59:24;
65:14
**following (2)**
17:18;55:21
**footnote (3)**
10:14;23:19,23
**foreclosing (1)**
13:16
**Foreign (1)**
42:11
**form (1)**
53:9
**formal (1)**
51:6
**former (1)**
46:20
**forth (2)**
21:9;49:19
**forty (1)**
7:13
**forward (5)**
30:13;33:9;51:9;
52:10;53:14
**found (1)**
19:11
**four (2)**
54:23;59:4
**fourteen (1)**
58:9
**Fourth (1)**
20:11
**frame (1)**
14:13

**FRANCISCO (2)**
4:1;65:10
**Frank (1)**
8:13
**Frankly (4)**
14:23;18:16;38:9,
14
**fraud (1)**
38:23
**free (3)**
36:6,7;53:9
**frequent (1)**
6:25
**Friday (3)**
45:4,6,9
**front (2)**
24:13;34:10
**frustrating (1)**
7:6
**frustration (2)**
45:20,20
**fulfill (1)**
9:22
**full (1)**
44:4
**fundamentally (1)**
13:21
**further (5)**
16:25;41:13;60:20,
25;64:6
**future (1)**
50:25

**G**

**Gate (1)**
59:8
**generally (1)**
27:21
**gentlemen (8)**
7:11;41:17;51:5;
53:20;57:19;59:12;
64:10;65:5
**gets (3)**
28:3;41:15;65:21
**given (5)**
16:12;22:12;51:20;
52:1;58:6
**gives (1)**
44:4
**giving (1)**
6:17
**Golden (1)**
59:8
**Good (18)**
4:8,13,18,20;7:9,
25;8:9,13,25;9:14,15;
12:16;17:9;38:14;
40:13;53:20,21;66:24
**Gotshal (1)**
8:10
**governed (6)**
47:19,20;48:22,22,

23;49:6
**grant (5)**
10:24;13:24;33:25;
34:19;52:17
**granted (1)**
26:12
**great (3)**
4:24;7:14;17:18
**ground (1)**
49:21
**group (4)**
22:22;29:21;34:5,7
**guess (7)**
5:15;9:15;18:20;
22:17;51:6;52:20;
58:13
**guilt (1)**
36:15

**H**

**half (2)**
56:19;63:8
**Hamilton (11)**
8:22,24,24;17:3,5,
12;26:22,25;27:1,2;
53:17
**hammered (1)**
48:16
**hand (2)**
8:6;52:11
**handful (2)**
28:9;62:18
**handing (1)**
36:17
**happened (1)**
34:13
**happening (1)**
26:2
**happens (8)**
11:4;13:2;27:23;
31:16;35:23;41:8;
49:7;66:10
**happy (1)**
44:1
**hate (1)**
7:8
**hear (14)**
4:21,22;5:1,2,3,14,
21;6:12,15,23;7:10,
14,18;8:17
**heard (10)**
13:12,14,17;28:20;
30:15,17;55:5,23;
56:10;59:1
**hearing (8)**
6:17,21;47:8;49:7,
10,12,24;51:24
**heart (2)**
11:13;63:24
**height (4)**
57:14,21;58:5;62:4
**hell (1)**

23;49:6
**help (3)**
33:11;34:22;53:16
**helpful (2)**
31:8;44:1
**helps (2)**
33:10,10
**here's (2)**
23:11;38:8
**hesitate (1)**
37:18
**high (1)**
62:15
**history (2)**
19:21;33:21
**Hmm (1)**
22:25
**hold (5)**
16:1;34:3;44:2;
47:9;57:8
**holding (2)**
20:21;21:18
**home (1)**
38:2
**Honor (98)**
4:8,13,15;5:8,20;
6:4;7:17,25;8:3,9,13,
17,20,24;9:3,6,11,14,
24;10:16;11:10,19;
12:25;13:8;14:10;
16:21;17:5,9,10,14,
23;18:3;19:16,18,23;
21:24;22:7;23:9,11,
24;24:2,11,21;25:6,
11,19,20,23;26:7,12,
15,21,22;27:2,2,6;
28:14;29:7;30:12;
32:19;34:1,8,14,16;
36:10;37:3,11;38:16;
39:12;41:9,19,23;
43:19,24;44:14;45:2;
46:3,14;47:3,4,7,12;
51:17,18;53:22;54:1,
4,15;55:12;56:11;
57:1;61:8,19;63:14;
64:18,22;65:2;66:22
**Honorable (1)**
4:4
**Honor's (2)**
18:3;29:17
**hopefully (1)**
55:10,11,24;56:1,4
**horrendous (1)**
39:1
**huge (1)**
62:19
**hundred (2)**
38:8,12
**hundreds (3)**
14:19,20,21
**hustle (1)**
36:3
**hypothetical (1)**

11:18
**hypothetically (1)**
12:5

**I**

**idea (5)**
9:25;24:7,9;25:4;
29:19
**ignore (1)**
28:6
**ill-defined (3)**
30:23;32:24;33:15
**Illinois (1)**
20:9
**imagination (1)**
29:5
**imagine (1)**
58:21
**immediately (2)**
46:6,9
**impact (2)**
57:22;58:14
**important (8)**
18:4,11;21:24;25:7,
11;28:16,21;39:22
**importantly (3)**
20:10;21:11;49:5
**imprimatur (1)**
36:5
**improperly (1)**
10:11
**inappropriate (3)**
24:19;52:17;53:6
**Inc (1)**
4:9
**inches (2)**
58:9,10
**include (1)**
44:8
**inconsistent (1)**
18:5
**inconvenience (1)**
54:10
**inconvenient (1)**
64:1
**incorporatable (1)**
49:2
**incorporate (1)**
48:24
**incorporated (1)**
49:1
**incorporates (1)**
48:24
**incorrect (1)**
56:15
**independent (1)**
12:23
**indicate (1)**
20:11
**indicated (1)**
10:25
**indicates (1)**

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
74 of 81

20:15
**indication (2)**
20:21;41:11
**indiscernible (6)**
17:6;35:15;36:13;
40:16;41:14;64:16
**individual (11)**
11:4,7,8;13:16;
18:13;22:10;26:11,
14;39:20;52:23,24
**individually (2)**
11:21;37:1
**individuals (10)**
14:9;26:10,11,13;
38:6;41:7;53:5;56:6;
57:4,5
**inefficient (1)**
32:25
**influences (1)**
60:8
**inform (1)**
6:12
**in-person (1)**
63:2
**inquiry (1)**
50:17
**inspection (1)**
62:13
**instinctively (1)**
58:23
**instructions (1)**
6:5
**insufficiencies (1)**
36:22
**intend (4)**
9:7;10:11;40:24;
61:25
**intended (1)**
18:18
**intention (3)**
9:20;10:17;11:20
**intercede (1)**
10:12
**interested (1)**
30:13
**interesting (3)**
14:10;18:9;20:5
**interests (3)**
30:9;33:7;37:1
**interfere (1)**
9:20
**interference (3)**
46:22;47:2;52:20
**interim (39)**
10:6,8,10;11:8,10,
11;14:6;17:1;18:10,
12,19;19:22;20:11,16,
21,22;21:1,19,21;
22:13;23:5;24:5;25:8,
9,13;26:3;31:21;
33:22;34:15;35:3,13;
36:6,17;37:2;39:18;
41:6;42:15;51:11,21

**internet (1)**
17:15
**into (6)**
13:17,19;14:14;
43:16;45:21;57:17
**invoke (1)**
27:17
**invoking (1)**
27:12
**involved (5)**
25:5;39:24;40:3,7;
41:6
**involvement (1)**
55:12
**involves (1)**
21:10
**Iqbal (1)**
47:24
**issue (17)**
17:12;24:13;30:11;
31:14;32:5,22;41:4,5;
42:9;46:10,15;51:6,6,
10;60:19;65:12;66:14
**issued (1)**
55:3
**issues (10)**
4:23;25:21;41:1;
54:25;56:5;57:9,14,
23;58:2;65:8
**item (1)**
8:2

**J**

**Jacobson (44)**
4:7,8,9,22,23;5:16;
6:19,24;7:2,23,25;
9:2;53:24,25;54:2,6,8,
16;55:23;56:1,13,16,
25;57:11,13,16,23;
58:7,12,25;60:3,4,15;
61:20;62:16,22;
63:10,12;64:23;65:3,
4;66:8,12,16
**jail (1)**
53:9
**JAN (1)**
4:1
**January (4)**
61:2,2,3,4
**job (3)**
9:22;33:23;34:7
**joining (1)**
54:1
**joins (1)**
46:21
**Joshua (1)**
8:24
**Judge (13)**
19:5;20:19,25;21:1,
6,17;22:19,20;23:2,
18;27:21;28:3;62:16
**judges (1)**

20:3
**judgment (1)**
50:24
**July (2)**
48:16;49:3
**jumping (1)**
56:12
**June (15)**
54:13;56:20,22;
57:4;60:6,22,24;61:6;
62:17,19;63:3,3,8,9;
65:10
**justify (1)**
20:22

**K**

**keep (4)**
22:12;44:6;58:22;
60:10
**Keller (1)**
4:14
**kept (1)**
55:16
**key (1)**
20:7
**Kim (1)**
4:14
**kind (10)**
4:23;16:17;20:16;
30:9;33:7,15;36:16;
38:4;53:15;57:18
**kinds (1)**
57:25
**knowing (1)**
45:23
**known (1)**
23:9
**knows (1)**
27:6
**Komir (1)**
4:9
**Kramer (1)**
8:14

**L**

**label (6)**
11:8;36:6,17;39:18;
52:17;53:13
**Lamb (54)**
4:11,19,21,25;5:2,3,
4,10,14;6:1,8,14,21,
23;7:1,7,10,14;9:2;
54:1,3,4,10,15;55:16;
57:1,3,9,10;59:10;
60:17,18;61:3,8,12,
19,23;62:1,3,7,10,12,
24;63:13,14,17,21;
64:11,14,18,20,24;
66:21,22
**Lamb's (2)**
7:16;63:3

**language (2)**
21:15;49:2
**large (2)**
20:17;21:3
**last (3)**
7:10;39:24;56:1
**late (2)**
54:13;63:2
**later (2)**
16:25;51:25
**latest (1)**
29:12
**Latham (1)**
8:25
**law (10)**
18:11;20:12;24:17;
34:4;47:25;48:15;
49:11,15,17,24
**Lawrence (1)**
4:8
**lawsuits (1)**
21:20
**lawyer (4)**
15:6;18:2;23:25;
34:4
**lawyers (4)**
14:20;27:20;38:19;
42:17
**lead (25)**
23:13,14,14,25;
24:1,3,3,4,14,15;27:9,
18;28:22,22;29:24,
25;30:23;31:5,21;
32:20;33:1,15;34:6,
15;42:5
**lead- (1)**
31:7
**least (8)**
14:7,12;15:14;
16:16;20:1;43:17;
51:21;52:12
**leave (3)**
43:25;51:13;53:19
**leeway (1)**
20:2
**left (2)**
29:20;30:4
**legal (1)**
53:7
**legislative (1)**
19:21
**Less (1)**
35:8
**lesser (1)**
48:18
**light (1)**
24:22
**likely (2)**
32:12;36:23
**limit (2)**
21:14,15
**limited (1)**
21:13

**line (3)**
6:9;54:7;62:4
**lines (1)**
54:18
**listed (1)**
56:6
**listen (2)**
10:19;17:21
**listening (1)**
45:18
**lists (1)**
45:17
**litigate (2)**
30:4;33:9
**litigating (1)**
30:10
**Litigation (7)**
20:11;30:21;31:1,2;
33:1;39:5;42:15
**little (4)**
14:25;36:2;38:4;
46:5
**live (1)**
59:7
**local (2)**
33:19;49:6
**locally (1)**
49:5
**long (6)**
5:24;19:9;45:21;
50:13;57:24;60:4
**longer (2)**
5:12;46:5
**look (16)**
14:11,13;16:4;18:9;
20:7;23:11;24:2;
27:19;28:4;38:3;
40:25;45:5,24;51:9,
13;52:10
**looked (1)**
54:21
**looking (6)**
29:25;40:2,3,7;
41:2,5
**looks (1)**
54:10
**losses (1)**
39:1
**lot (6)**
30:15;47:21;51:12;
52:5,6;57:16
**low (1)**
5:5
**Lowenstein (1)**
8:21
**lower (1)**
57:20
**luck (1)**
66:24
**lunch (2)**
53:24;54:3

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
75 of 81

## M

**Madam (1)**
4:25
**major (1)**
60:19
**makers (1)**
21:12
**makes (3)**
19:1;30:1;49:8
**making (8)**
8:15,22;13:18;17:3;
24:21;25:24;46:5;
65:25
**manage (1)**
29:21
**management (3)**
30:8;32:5,21
**Manges (1)**
8:10
**manner (1)**
53:6
**Manual (3)**
20:10,15;42:14
**many (5)**
13:4;44:6;47:1;
56:19;61:23
**March (1)**
20:23
**marking (1)**
65:9
**matter (11)**
4:5,16;5:25;7:22,
22;10:16;20:16;44:2;
46:1;49:14,16
**matters (2)**
31:17;55:10
**may (20)**
19:22;25:14;26:23;
29:20;31:2,18,19;
35:8;36:12;38:25,25;
39:16;40:4;50:16;
52:5,21;56:18,21,21;
57:1
**maybe (11)**
5:16,17;7:9;12:2,9;
38:20;54:3;57:20;
62:11,13;65:17
**mean (23)**
6:19,25;13:9;18:9,
17,18;19:11,17,25;
20:7;27:25;34:5;36:6;
44:5;45:5;55:17;
57:19;58:18;59:22;
62:9,14;63:16;66:17
**meaning (3)**
18:16;22:13;28:7
**meaningful (1)**
55:11
**meant (3)**
18:10;19:3;26:5
**measure (1)**

**measurements (1)**
57:25
**mediate (1)**
59:17
**mediated (1)**
66:11
**mediation (4)**
55:11;56:21;60:8;
62:19
**mediator (2)**
55:14;56:14
**meet-and-confer (4)**
55:6;56:10;60:21;
61:13
**member (2)**
12:10;13:7
**members (3)**
14:7;37:5,21
**mentioned (2)**
28:1,6
**merits (6)**
25:25;38:2;41:3,8;
43:22,23
**merits-based (1)**
43:18
**message (1)**
6:17
**mic (1)**
4:19
**Michael (1)**
8:20
**mid-April (2)**
56:17;64:5
**middle (2)**
51:11;55:20
**might (7)**
7:20;10:21;20:22;
21:8;31:2,8;53:16
**million (1)**
38:12
**mind (3)**
11:12;30:20;58:22
**mindful (1)**
53:12
**minute (6)**
5:23;6:16;41:21,24,
24,24
**minutes (5)**
7:13;9:9;17:11;
31:15;35:18
**mismanagement (1)**
39:3
**missed (1)**
17:16
**moment (3)**
7:3;31:11;53:10
**moments (1)**
28:12
**Monday (1)**
45:14
**moniker (1)**
30:23

62:14

**Montali (1)**
4:5
**month (5)**
56:18,20,22;60:6,
13
**months (4)**
32:16,17;62:17;
63:6
**more (17)**
7:19;14:25;17:12;
21:11;31:13;32:12;
33:1,5;38:22;39:15;
41:9;49:5;53:12,14;
54:12,18;66:6
**Morning (10)**
4:7,8,13,20;8:7,9,
13,25;9:15;17:9
**most (6)**
18:4;28:15,18,21;
30:1,13
**motion (31)**
8:3;10:4,24;11:20;
13:24;14:22;18:5,8,9,
15,17;23:12,13;24:2;
25:1,10,22;28:3;
29:10;33:25;34:19;
35:14,24;46:8;47:23;
48:11,12;52:18,20,21;
53:3
**motions (2)**
46:17;49:22
**move (7)**
7:22;16:18;33:10,
11;45:1;53:12,14
**moving (2)**
30:13;31:13
**much (7)**
5:12;9:8;17:16;
27:22;38:22;49:2;
58:22
**muddy (1)**
33:12
**multiple (7)**
19:4;21:13,16,16;
42:8,10,12
**must (2)**
7:16;51:3
**mute (2)**
4:11;6:13
**Muted (1)**
4:11
**mutual (1)**
59:12
**mystified (1)**
58:23

## N

**name (1)**
23:13
**nationwide (1)**
27:23
**near (1)**

**Montali (1)**

63:1
**necessarily (2)**
40:20,22
**necessary (2)**
66:2,3
**need (18)**
6:4;12:12;15:12;
17:1;22:1;25:14;
41:23;45:11;46:10;
50:9;51:5;53:7,12;
58:1,3;59:6;60:11;
63:1
**needed (1)**
35:8
**needs (2)**
7:20;66:6
**negotiate (1)**
59:5
**nevertheless (1)**
48:18
**new (1)**
46:25
**next (7)**
4:16;5:25;7:22;8:2;
26:19;51:11;56:4
**nilly-willy (1)**
25:8
**Ninth (1)**
30:19
**Nobody (1)**
43:12
**nonactively (1)**
30:10
**nonbankruptcy (2)**
12:9;13:5
**none (3)**
33:20;37:21;52:15
**nonexpert (2)**
59:21;65:20
**nonrepresented (1)**
30:10
**normal (3)**
58:1;65:15;66:12
**Northern (2)**
21:18;23:3
**note (1)**
18:18
**noted (3)**
10:4,4;32:19
**notes (7)**
9:17;18:25;20:6;
22:4;34:16,18;35:2
**notice (2)**
50:3,4
**noticed (1)**
17:15
**notion (2)**
48:1;58:19
**null (1)**
22:8
**number (13)**
20:17;21:3;29:20;
30:3;32:8,9;33:19;

63:1

42:16,17;54:25;55:3;
56:5;61:10
**numbers (2)**
12:1;44:6
**numerous (1)**
47:15
**Nunley (1)**
20:19

## O

**object (2)**
10:14;18:7
**objected (3)**
12:5;26:10;47:15
**objection (15)**
12:11,22;13:6;15:8;
26:8;30:2;34:25;
40:18;47:2,22;48:5;
49:5,8,14,20
**objections (46)**
10:15;11:6,13,15;
12:1,19;13:21;14:1,3;
15:4,19,23,24;16:6,8,
17,24;18:7;26:10,13;
29:3,20;30:17;31:6,
13,16,19,24;35:12;
37:5,25;39:23;40:4,8;
43:7,18;47:17;50:2,
21,23;51:2,9,22,23,
23;52:3
**objective (1)**
62:22
**objector (1)**
49:25
**objectors (1)**
51:8
**obligations (1)**
9:23
**observed (3)**
62:4,7,8
**obvious (1)**
4:15
**Obviously (5)**
7:15;14:15;15:12;
52:9;56:24
**occasion (2)**
27:22;28:4
**o'clock (3)**
64:8;65:2,6
**October (2)**
55:4,5
**odds (2)**
10:13,17
**off (3)**
4:10;7:22;9:2
**offend (1)**
46:4
**offer (2)**
34:21;40:1
**officers (2)**
46:20,21
**official (2)**

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page 76 of 81

36:17;53:10
**often (1)**
13:4
**old (1)**
6:8
**omnibus (13)**
10:15;11:6;12:3,11;
15:4,8;16:6,7,17;
18:7;26:9;29:3;43:18
**once (4)**
13:24;19:10;32:10;
55:9
**one (41)**
5:6;10:17,22;11:5,
11;12:1;15:4,4;16:2;
17:12;20:16;21:3,10;
22:16,16,16,22;23:7;
24:2;25:6,7;26:22;
30:16;33:11,24,25;
34:4,5,9;39:15;41:21,
24,24,24;42:7;43:19,
20;44:12;48:25;58:8;
63:25
**ones (2)**
11:14,14
**only (13)**
16:20,21;18:21;
19:1;20:4,6,25;22:22;
23:7;33:12;50:5,9;
59:14
**oOo- (1)**
4:2
**open (4)**
56:20;58:22;60:6;
65:7
**opening (1)**
25:22
**operative (2)**
38:10,17
**opinion (1)**
22:4
**opportunity (5)**
24:12,19;43:8,25;
44:24
**opposing (4)**
12:12;15:1;37:4;
59:2
**opposition (9)**
12:18;13:20;14:21;
15:4,7;34:24;48:21;
50:14;52:7
**option (1)**
60:12
**oral (2)**
46:9;51:7
**order (14)**
4:3;9:5,7;26:2;
32:19;48:16;49:3;
51:6,7;55:3;56:9;
59:2;65:12;66:13
**orders (1)**
31:7
**Others (1)**

36:12
**otherwise (6)**
20:18;21:4;25:1,16;
34:19;65:14
**out (31)**
5:10;6:17;7:5;
12:22;15:11;17:15;
22:10;26:8,19;28:24;
29:4;34:21;36:3,21;
38:7;41:3;44:16,21;
47:8;48:16;51:24;
53:8;54:24;55:21;
59:12,16;62:14,15;
63:23;65:17;66:6
**outcome (1)**
49:25
**outside (4)**
13:1;57:13;59:1,4
**over (7)**
15:5;26:9,11;30:4;
37:17,19;38:12
**overall (2)**
39:7,9
**overlapping (1)**
42:16
**overly (1)**
60:22
**overrule (2)**
31:16,19
**owed (1)**
12:6
**owes (1)**
54:3
**own (16)**
5:4;7:19;11:5,18;
15:3,7,14,20,21;16:6;
20:3;36:4;37:17;
43:11,11;50:18

---

## P

**packed (1)**
57:16
**papers (8)**
19:12;28:16;30:16;
38:3;40:24;44:23;
50:1,2
**Parada (12)**
5:18;6:5,11;8:1;
9:1;46:7;47:6,11;
63:8;64:6,21;65:1
**parallel (2)**
21:11;33:23
**parameters (2)**
33:4,8
**paraphrase (1)**
10:9
**part (7)**
5:17;14:12;15:24;
19:1;25:17;29:18;
31:20
**participate (1)**
35:13

**particular (2)**
22:5;52:23
**particularly (6)**
27:20;48:17;50:2;
59:2;66:4,5
**parties (3)**
32:10;34:20;35:11
**party (1)**
30:7
**past (3)**
31:24;32:6;55:2
**pay (1)**
15:12
**penciling (1)**
65:9
**pending (9)**
20:18;21:5;46:17;
48:8,20;49:13;51:2,8;
60:4
**people (16)**
17:1;22:9;31:1,3;
36:7;38:8;39:2;43:7,
14,15,20;46:11;52:5;
53:8;56:3;60:23
**PERA (40)**
8:3,21;10:9,14,20;
11:3,11;12:1;13:25;
14:13,14,16;18:6,23,
25;22:12;26:15;27:5;
30:6,20,24;31:8;
32:24;37:15;42:20;
43:9,16,19,23;46:8,
16,23;48:18,18,21;
49:19;50:15,17;51:3;
52:25
**PERA's (6)**
10:11;11:6;18:5,8;
28:16,25
**perceive (1)**
16:14
**percipient (9)**
55:4;56:7;60:2;
61:12,16,17,25;64:1,2
**perhaps (3)**
51:6;52:17;59:15
**period (1)**
44:3
**permit (1)**
16:21
**person (3)**
15:2;54:12;65:10
**personally (1)**
39:19
**person's (1)**
37:17
**persuade (2)**
39:17;59:7
**persuaded (1)**
53:13
**Petree (1)**
56:6
**PG&E (10)**
4:5;8:2;12:5;46:18,

21;47:15,15;49:25;
50:14;64:7
**PG&E's (2)**
50:7,20
**Pharmacia (1)**
20:8
**phone (2)**
6:2;52:6
**phonetic (1)**
42:11
**phrase (1)**
14:24
**pick (2)**
25:16;64:5
**picking (1)**
63:20
**piece (2)**
39:5;43:6
**pin (2)**
59:15,19
**pivoted (1)**
24:14
**place (8)**
30:3,14;33:3,16;
35:22;36:21;44:12;
48:19
**plain (2)**
28:7;45:21
**plaintiff (22)**
9:25;11:11;23:14,
14;24:1,3,4,14;25:9;
27:9,18;28:22;29:24;
30:1,23;31:5;32:20;
33:15;34:5,7;42:5;
66:4
**plaintiff-type (1)**
31:8
**plan (1)**
63:5
**plausibility (3)**
47:25;48:13;50:11
**plausible (2)**
49:15,16
**play (3)**
34:24;52:1,2
**pleading (1)**
44:1
**please (3)**
8:6,8;57:2
**plenty (3)**
30:16;64:3;66:20
**Plus (1)**
55:8
**poach (1)**
29:5
**podium (1)**
12:11
**point (21)**
16:2;17:18;18:4;
21:10,23,23;23:9;
24:21;26:11;29:16;
30:5,8;31:7;32:5,13,
18;47:21;50:8;58:6;

60:7;62:25
**pointed (1)**
51:24
**points (2)**
27:7;43:24
**posed (1)**
10:8
**position (12)**
13:20;15:12;17:17;
33:18;37:17,19;
39:25;40:11,13;
46:22,23;52:22
**positions (3)**
11:21;17:2;40:5
**possible (1)**
6:6
**postponed (1)**
60:11
**posture (1)**
33:4
**powers (3)**
22:8;32:23,24
**practicality (1)**
32:22
**practice (2)**
35:14;49:14
**pre- (1)**
66:12
**pre-certification (1)**
10:1
**prejudge (1)**
58:24
**prejudices (1)**
25:19
**prejudicing (1)**
26:4
**preliminary (4)**
14:8;49:10,12,24
**prepared (2)**
54:22;59:6
**present (3)**
4:9;19:2;42:17
**presiding (1)**
4:5
**presume (1)**
40:17
**pre-trial (1)**
66:18
**pretty (3)**
7:8;19:15,22
**primary (1)**
37:3
**principal (2)**
46:18;63:20
**prior (3)**
18:6;63:7;66:19
**private (3)**
27:8,8,15
**pro (6)**
15:7;16:16,22;
34:20;38:3;53:5
**probably (6)**
7:19;37:14;40:25;

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
77 of 81

54:17,22;55:25
**problem (9)**
7:16;22:5;30:11;
32:2,3;45:10;57:3;
60:20;63:10
**problems (1)**
6:25
**Procedure (5)**
27:11,16;35:23;
47:19;59:24
**procedures (6)**
9:18;10:12;26:8;
29:19;30:14;31:6
**proceeding (1)**
33:23
**proceedings (1)**
66:25
**process (14)**
9:17,19,21;23:22;
26:7,9;27:9;30:25;
33:2,10,11;36:21;
48:5;49:6
**progress (2)**
5:13;66:24
**promise (1)**
66:3
**promised (1)**
46:6
**promptly (1)**
66:1
**promulgated (1)**
21:13
**proof (5)**
14:11,11;47:18;
48:3;49:15
**proofs (1)**
50:11
**property (1)**
58:16
**proposed (5)**
28:20;54:21;55:19;
56:2,16
**proposition (1)**
27:18
**prove (1)**
57:21
**proven (1)**
57:18
**provide (1)**
44:24
**provides (1)**
18:11
**PSLRA (6)**
23:15;24:15;27:3,6,
18;48:6
**pulls (1)**
38:4
**purchases (1)**
14:14
**pure (1)**
32:21
**purely (2)**
22:3,4

**purport (2)**
15:5,6
**purpose (6)**
18:5,22;21:24;
23:21;24:22;51:1
**purposes (3)**
46:7,9;49:20
**pursuant (2)**
27:10,15
**put (4)**
24:13;29:13;30:23;
39:18
**putative (2)**
12:10;20:17;21:4;
37:5,21

## Q

**quick (1)**
5:7
**quickly (4)**
31:13;45:1;53:12,
14
**quiet (1)**
12:12
**quite (1)**
18:16
**quote (1)**
10:8
**quoting (1)**
35:6

## R

**Raines (2)**
57:20,24
**raise (1)**
8:6
**raised (3)**
30:16,16;32:6
**ramifications (1)**
28:9
**ran (2)**
44:8,22
**rare (1)**
27:25
**rarity (1)**
28:1
**rather (5)**
10:8;22:22;33:6;
37:19;61:5
**re (1)**
23:2
**reach (2)**
15:11;34:21
**read (2)**
28:4;57:19
**ready (1)**
9:5
**real (3)**
15:2,2;18:5
**really (11)**
14:11;17:17;21:24;

23:11;25:7;27:4;
35:20;46:12;58:17;
62:9;63:15
**reason (7)**
18:15;21:11;22:6;
35:1;54:14;60:12;
65:14
**reasons (3)**
25:7;51:4,7
**reboot (1)**
6:9
**rebut (2)**
50:16,16
**rebuttal (2)**
9:11;16:12
**recall (1)**
19:10
**recently (2)**
20:19;21:1
**recertification (1)**
14:5
**recognized (1)**
21:2
**record (4)**
7:9;28:10;29:13;
43:21
**reducing (1)**
32:9
**refer (2)**
37:18,19
**reference (3)**
19:12;30:19;35:5
**referenced (1)**
34:16
**referring (2)**
39:6,7
**refers (1)**
14:21
**refile (1)**
45:17
**refinement (1)**
16:13
**reflects (1)**
16:15
**regarding (2)**
54:22;60:21
**regardless (1)**
48:15
**regards (1)**
56:5
**relates (1)**
39:25
**relating (2)**
54:25;62:4
**relationship (2)**
11:1,7
**released (1)**
40:6
**relevant (6)**
50:5,22,25;62:8,8,
12
**relitigating (1)**
43:13

**rely (3)**
44:7,9;52:7
**remain (1)**
51:4
**remaining (1)**
30:9
**remains (1)**
32:12
**remember (2)**
10:22;66:19
**remove (1)**
30:19
**renew (1)**
65:20
**reorganized (5)**
4:14;8:10,25;10:15;
52:10
**repeat (4)**
27:19;45:19;49:21;
52:14
**repeated (1)**
31:11
**repeating (2)**
26:17,18
**reply (6)**
10:4;19:1;23:17;
28:18;34:2;35:3
**report (2)**
59:24,25
**reported (1)**
33:24
**reports (4)**
58:20;64:4;65:8,16
**represent (7)**
11:2,20;19:5;33:7;
37:1;52:24,25
**representation (1)**
52:23
**representative (5)**
9:25;10:1;11:3,11;
51:12
**representatives (1)**
10:10
**represented (7)**
11:4,7,22;12:23;
30:9;38:20;41:7
**representing (2)**
10:20;22:22
**request (4)**
22:16,16,21;66:8
**requested (1)**
46:16
**requests (2)**
51:3;55:1
**require (1)**
59:20
**requirement (1)**
55:12
**requiring (1)**
21:2
**research (1)**
20:15
**reserve (2)**

9:8,9
**reserved (1)**
5:12
**reserves (1)**
10:14
**resolution (2)**
30:6;46:17
**resolve (1)**
12:3
**resolved (3)**
59:16;65:19;66:10
**respect (9)**
14:2,15;15:25;40:8;
43:14;51:22;52:2;
59:3,11
**respectfully (1)**
38:16
**respective (1)**
50:11
**respond (4)**
15:1;16:3;17:17;
52:4
**responded (1)**
39:25
**respondents (1)**
35:20
**responding (1)**
35:12
**response (2)**
16:6;51:23
**responses (1)**
28:5
**responsible (1)**
26:14
**result (2)**
40:2;66:11
**results (1)**
38:21
**reversing (1)**
26:3
**review (1)**
55:10
**Richard (1)**
8:9
**right (33)**
4:19;5:9;7:11;9:4;
10:23;14:24;18:4;
20:6;21:8,22,22;
22:18;25:23;27:8;
30:21;32:6,7,7,19;
37:9,11,24;39:15,17;
40:23;41:17;53:23,
23;54:2;55:20;56:25;
62:21;64:16
**rights (1)**
10:14
**rival (1)**
20:21
**RKS (19)**
8:14;15:20;16:9;
17:10;28:16,17,19,23;
29:11;30:12;31:12;
43:9;46:19,21,22;

Case: 19-30088     Doc# 14354-1     Filed: 03/15/24     Entered: 03/15/24 19:37:01     Page
78 of 81

48:17;49:20;50:17;
51:25
**road (1)**
37:22
**role (16)**
11:9;15:8;16:14;
22:13;24:23;30:1,23;
31:8;34:24;35:4,13;
36:10,13;37:20;
51:21;52:1
**Rolnick (1)**
8:14
**room (2)**
7:21;33:6
**round (1)**
16:7
**Rule (43)**
9:17,25;10:5;13:3;
14:4,4,5;18:17,22,25;
19:2,10,15,20,21;
20:4,10,15;21:12,13,
25;22:3,4;23:18,19;
24:4;26:5;27:6,12,13,
13,17;28:3,6;45:21;
48:9,22,23,25;49:4,6,
8,12
**ruled (1)**
26:15
**Rules (9)**
23:16;27:10,16;
35:10;47:19,20;
48:25;49:1,21
**ruling (16)**
10:5,8;18:4;35:9,
21,24;39:19,24;41:12,
12;46:6,9,13;51:5,7,
10
**rulings (2)**
18:6;39:23
**running (1)**
41:17
**runs (1)**
41:4
**Rupp (9)**
4:12,13,13,18;5:6,
8;6:1,4;7:23

**S**

**Sadighi (1)**
8:14
**Salguero (1)**
56:6
**same (14)**
25:12;32:2,3;36:18;
38:10,17;40:25;41:1;
42:9;44:8;48:3,11;
52:24;60:1
**SAN (2)**
4:1;65:10
**Sandler (1)**
8:21
**saying (19)**

7:4;12:16;16:11;
19:4,19;22:12;24:11,
12,14;28:8;32:21;
38:6;43:1,11;47:13;
50:13;58:15;59:6;
66:17
**scans (1)**
57:25
**scattered (1)**
51:24
**schedule (12)**
31:18;33:8;41:18,
20;46:20;54:11,13;
56:17;59:10;60:5;
63:4;65:15
**scheduled (2)**
60:24;64:11
**schedules (2)**
33:5;60:23
**scheduling (2)**
62:17;65:12
**Schneider (2)**
42:3,6
**score (1)**
22:17
**screen (2)**
9:2;17:16
**se (6)**
15:7;16:16,22;
34:20;38:3;53:5
**Seagate (1)**
23:3
**second (6)**
29:16;42:7,25;43:5;
56:19;63:8
**sections (1)**
27:7
**securities (17)**
10:2;11:13;13:2,5,
22;14:3,19;15:25;
23:12,25;27:14,20;
38:11,23;40:9;41:4;
46:19
**security (2)**
4:16;23:25
**seek (1)**
25:13
**seeking (1)**
42:8
**seeks (2)**
20:13;49:25
**seem (1)**
29:11
**seems (8)**
10:13,25;29:11;
45:5;54:13;62:8;
65:18;66:3
**select (1)**
59:17
**send (2)**
5:20;6:11
**sense (1)**
30:1

**sent (1)**
6:17
**sentence (1)**
45:21
**separate (3)**
18:13;39:5;42:4
**Separately (2)**
64:6,7
**September (4)**
60:19;61:1,5;62:20
**serious (1)**
54:4
**session (1)**
4:4
**set (10)**
5:6;7:12;14:1;21:9;
22:8;26:8;38:17;
49:19;58:22;64:6
**setting (5)**
5:4;7:19;12:9;33:4;
48:9
**settle (1)**
56:24
**settled (1)**
38:12
**settlement (3)**
32:12;39:9;40:1
**Shahmirza (4)**
4:9;7:22;62:5;
65:21
**shake (1)**
59:16
**shift (1)**
28:17
**short (1)**
44:3
**shows (1)**
13:11
**side (2)**
59:20;66:5
**sides (1)**
45:6
**sign (1)**
52:15
**silence (1)**
18:15
**silencing (1)**
48:10
**silent (2)**
18:10;49:13
**similar (1)**
48:10
**similarity (1)**
47:21
**similarly (1)**
21:1
**simple (4)**
7:20;14:15;45:21;
51:6
**simplify (1)**
10:19
**simply (2)**
49:23;57:23

**simultaneously (1)**
45:6
**single (10)**
19:12;20:12,18;
21:5,10;22:8,15;
33:21,24;34:9
**sit (1)**
55:10
**site (1)**
62:13
**sites (1)**
21:9
**situation (17)**
10:3;13:1;15:9,10,
20,21;18:18,21;19:2;
20:4;21:2,14;27:4;
29:24;35:10;39:24;
62:9
**situations (1)**
40:3
**six (2)**
23:8;58:9
**skeptical (1)**
62:25
**Slack (60)**
8:7,9,9;10:21;12:6,
17;17:4,7,8,10,14,22;
18:1,3;19:7,9,14,16,
18,23,25;21:7,7,17,
23;22:19,24;23:1;
24:7,9,11,17;25:4;
26:2,21,23;27:5;
33:17;34:16;36:16;
39:16;41:19,22,25;
42:23,25;43:2,5;44:4,
11,22;45:3,5,10,17;
46:3;51:10,16,17;
53:17
**Slack's (2)**
17:5;36:23
**slightest (1)**
29:5
**slightly (1)**
11:1
**slow (3)**
33:1;57:10,10
**small (1)**
12:4
**So-and-so (1)**
59:22
**so-called (1)**
47:16
**sold (2)**
43:21;63:10
**solely (1)**
40:8
**somebody (3)**
37:16;52:13;63:25
**someone (1)**
53:1
**something's (1)**
7:18
**sometime (1)**

55:24
**sometimes (1)**
44:6
**somewhere (1)**
50:24
**soon (1)**
33:3
**sorry (5)**
7:23;44:19;54:2;
61:7;66:23
**sort (2)**
28:6;53:8
**sorted (1)**
5:10
**sounds (4)**
39:16;42:24;43:3;
47:12
**source (2)**
4:24;49:3
**Southern (1)**
20:9
**speak (2)**
4:12;12:9
**SPEAKER (1)**
17:9
**speaking (1)**
47:11
**specific (1)**
27:7
**specifically (10)**
10:5;14:25;25:20;
27:4,7,9,12;42:14;
46:16;49:1
**spoiler (1)**
35:17
**stage (1)**
30:2
**stance (1)**
52:11
**stand (2)**
12:10;39:13;46:1
**standalone (1)**
12:1
**standard (1)**
25:12
**standing (10)**
12:16;13:6,9;18:7;
31:25;37:1;39:20;
43:19,23;59:2
**start (3)**
17:5,19;46:25
**started (1)**
37:4
**starting (1)**
59:25
**starts (1)**
64:25
**state (5)**
4:15;7:2;8:7,18;
20:3
**stated (1)**
51:7
**statement (3)**

Case: 19-30088   Doc# 14354-1   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 79 of 81

10:13,13;21:9
**statements (2)**
10:17;16:24
**stating (2)**
12:7;46:11
**status (11)**
59:15;60:9,20,25;
62:16;63:6;64:6;65:5,
13,23;66:15
**statute (1)**
19:20
**stay (1)**
51:4
**steer (1)**
32:25
**stems (2)**
18:17;29:18
**step (1)**
26:15
**stepped (1)**
30:6
**still (9)**
6:21;31:24,25;
32:16;52:21;54:24;
56:2;58:23;62:25
**stipulation (1)**
56:9
**story (1)**
28:7
**strategy (2)**
30:21;62:23
**strength (1)**
50:19
**strengths (1)**
32:11
**strike (1)**
12:7
**string (1)**
44:5
**structured (1)**
14:12
**study (1)**
50:7
**stuff (3)**
4:16;65:16;66:19
**sub (1)**
21:15
**subject (4)**
12:22;38:7;52:3;
58:20
**submission (1)**
29:12
**submissions (2)**
50:8;54:16
**submit (1)**
58:20
**submitted (4)**
31:18;32:23;46:1,8
**substantial (1)**
38:22
**substantive (5)**
10:2;17:2;43:18,20;
52:13

**subsume (1)**
29:11
**suddenly (1)**
30:20
**suffered (2)**
39:2;58:16
**sufficiency (42)**
11:12,15;12:19,22;
13:20;14:2;15:19,24;
29:3,19;30:2;31:6,13,
16,19,24;33:2;34:25;
35:12,24;37:4,25;
39:23;40:8,18;43:7;
46:17;47:17;48:8,13,
20;49:20;50:1,6,10,
18,21,23;51:2,9,22;
52:2
**sufficient (1)**
54:17
**suggest (2)**
36:3;54:11
**suggesting (3)**
18:24;36:14,15
**suggests (1)**
48:22
**suits (1)**
42:17
**summary (2)**
50:24;59:20
**supplement (1)**
15:15
**supplemental (2)**
44:24;45:2
**support (4)**
22:11;23:16,20;
50:1
**supposed (1)**
53:18
**Supreme (2)**
21:12;47:24
**sure (14)**
9:22;13:18;17:22,
22;38:12;41:6,7,16;
45:5;52:11;61:8;
63:18;64:20;66:10
**surgery (1)**
63:24
**survive (1)**
36:23;50:18
**suspect (2)**
12:6;36:22
**sustain (1)**
14:7
**sustained (1)**
50:23

**T**

**table (1)**
30:7
**tail (1)**
63:19
**talk (6)**

35:3,14,14;46:22;
65:24;66:2
**talked (3)**
28:1;55:18;65:7
**talking (7)**
12:3;15:19,21;
43:10;62:17,18;65:22
**tape (1)**
62:14
**Tapestry (1)**
20:23
**teaching (1)**
47:24
**team (1)**
7:9
**technical (2)**
54:5;57:24
**technically (1)**
33:20
**Technology (1)**
23:3
**teenager (1)**
7:20
**telephone (2)**
5:17;6:8
**telling (1)**
61:15
**tells (1)**
24:24
**ten (1)**
66:18
**tentative (4)**
10:5,25;18:3;24:20
**Teran (1)**
27:24
**term (3)**
23:15,15;24:15
**terms (1)**
48:10
**test (1)**
50:5
**tested (1)**
50:20
**testify (4)**
57:21;61:18;62:2,3
**That'd (1)**
64:18
**theory (1)**
48:3
**therefore (4)**
24:8,10,11;50:10
**thinking (2)**
29:17;31:14
**third (2)**
12:3;37:15
**thirty (1)**
26:9
**thirty- (1)**
12:2
**thirty-eight (1)**
15:24
**thirty-fifth (2)**
12:2;16:9

**thirty-fourth (1)**
16:8
**thirty-third (2)**
12:2;16:8
**Thomas (1)**
4:13
**Though (5)**
42:24;43:23;48:12;
54:25;57:3
**thought (5)**
5:7;39:6;55:14,14;
56:14
**thoughtful (1)**
53:4
**three (9)**
23:8;42:2;44:8;
58:10;59:4;60:2;63:6,
8;66:6
**three-day (3)**
63:2,2;65:10
**threshold (1)**
10:16
**throughout (2)**
52:12;56:18
**thrown (2)**
38:7;41:3
**Thus (2)**
42:9;51:2
**ties (1)**
14:14
**tight (2)**
41:17,19
**till (1)**
62:19
**times (1)**
13:4
**timetable (1)**
16:10
**timing (1)**
51:18
**today (8)**
8:16,23;30:17;
31:11;51:20;54:22;
58:18;59:9
**together (1)**
51:1
**tomorrow (2)**
52:16;54:23
**took (3)**
14:10;39:24;40:5
**top (1)**
11:12
**tort (3)**
38:19;39:7,9
**toss (1)**
12:17
**track (2)**
9:21;21:11
**traded (1)**
43:21
**trades (1)**
43:20
**traditional (2)**

28:2;48:9
**trail (1)**
5:9
**translate (1)**
58:14
**treat (1)**
46:8
**treated (2)**
48:11,11
**trial (40)**
6:18;50:24;54:11,
12,13,13,18,19;55:12;
56:22,23;57:5,6,11,
21;58:1,4,22;59:11,
20;60:7,7,8,10,11,13,
24;63:2,4,20;64:11,
13,25;65:10,12,15,24;
66:4,9,13
**trouble (2)**
47:3,8
**true (7)**
4:17;28:2;48:2,3,4,
12;49:20
**trust (1)**
39:4
**try (6)**
7:11;9:7;40:19;
50:16;51:10;58:21
**trying (10)**
7:5;27:17;29:5;
39:17;43:16;54:24;
55:16;56:3;59:5;
62:23
**turf (2)**
29:6,6
**turn (2)**
46:9;48:24
**turned (1)**
4:19
**twelve (1)**
58:8
**twenty-eighth (1)**
15:23
**twice (1)**
26:15
**two (17)**
5:23;6:16;10:17;
16:7,22;18:6;25:22;
27:7,7;34:1;42:4;
43:24;54:17;55:5;
58:23;60:1;63:6
**two- (2)**
54:11,12
**typical (1)**
21:2
**typicality (1)**
25:21

**U**

**unclear (2)**
32:20;39:14
**undefined (1)**

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
80 of 81

32:20
**under (12)**
13:2,24;15:8;18:20;
23:22;27:8;42:3,20;
44:3;47:16;48:2;56:8
**underlying (3)**
15:25;40:9;50:10
**underway (2)**
8:19;9:13
**unfortunately (1)**
35:19
**unheard (1)**
18:21
**UNIDENTIFIED (1)**
17:9
**UNISON (1)**
53:22
**unless (4)**
15:22;48:2,4;65:14
**unquestionably (1)**
27:14
**unreported (1)**
44:5
**unrepresented (5)**
13:19;15:7;16:15;
37:25;52:5
**unresolved (1)**
49:9
**unseemly (1)**
36:2
**unusual (4)**
9:18,24;18:19,21
**unwilling (2)**
21:20;23:5
**up (12)**
5:25;10:22;12:10;
13:11;31:10;36:4,7;
44:6;47:14;52:15;
57:6;60:9
**upon (2)**
38:17;41:11

**V**

**vacation (3)**
55:21;59:10;63:5
**valid (1)**
43:12
**valuation (1)**
59:23
**value (1)**
58:16
**versus (1)**
60:25
**viable (2)**
12:7;41:4
**victims (4)**
38:9,20,20;39:4
**virtue (1)**
40:5
**vis-a-vis (1)**
15:8
**voluminous (3)**

16:5;50:1,3
**vying (3)**
42:5,10,13

**W**

**Wachovia (2)**
42:7,7
**wagging (1)**
63:19
**wait (5)**
5:24;6:16,18;46:5;
65:12
**wants (1)**
12:17
**waste (1)**
50:16
**waters (1)**
33:12
**Watkins (1)**
8:25
**wave (1)**
31:24
**way (25)**
6:8;7:24;10:21;
11:20;22:18;24:23;
29:2,3,25;31:4;32:9,
24;39:19;40:15,15,17,
18;45:22;48:11;49:3;
50:13;55:19;58:15;
63:23;66:6
**weakness (1)**
50:19
**weaknesses (1)**
32:11
**WEDNESDAY (1)**
4:1
**week (5)**
10:22;51:11;55:21;
64:12,15
**weekend (1)**
53:21
**weeks (1)**
16:7
**Weil (1)**
8:10
**well-defined (1)**
30:14
**weren't (1)**
38:25
**West (1)**
38:19
**what's (8)**
7:5;20:5;23:11;
26:2;31:23;32:4;38:5;
39:17
**whatsoever (1)**
23:24
**Whereas (3)**
20:12;33:11;49:12
**Whereupon (1)**
66:25
**White (4)**

21:6,17;22:19,20
**White's (1)**
23:2
**whole (3)**
10:3;15:24;31:20
**who's (5)**
11:18;12:15,21,22;
22:2
**willing (2)**
55:6;56:9
**wind (1)**
57:6
**wire (5)**
57:15,20,22;58:6;
62:15
**wires (1)**
58:15
**without (7)**
16:17;23:19,23;
30:14;41:13;45:13;
51:12
**witness (14)**
58:8,9,17;59:21,21;
61:5,6,16,17;63:18,
22,24;64:2,2
**witnesses (10)**
58:5;60:2;61:8,12,
22,23,25;65:20,24;
66:1
**WL (2)**
20:8,23
**wonder (1)**
5:4
**wonderful (1)**
47:9
**word (1)**
16:14
**words (5)**
19:15;31:23;35:25;
37:7;45:16
**work (4)**
7:9;59:12;65:3;
66:7
**worked (2)**
65:17,17
**working (4)**
7:19;9:18,20;26:9
**works (1)**
64:23
**worse (1)**
7:6
**writing (1)**
21:8
**written (2)**
55:2,3
**wrong (1)**
7:5

**X**

**Xs (1)**
16:5

**Y**

**year (1)**
10:23

**Z**

**zero (9)**
18:14;22:8,11,12,
12,12,15,17,17
**Zoom (3)**
54:12;64:16,17

**1**

**1 (1)**
42:11
**10 (3)**
64:8;65:2,6
**10:01 (1)**
4:1
**11 (1)**
40:5
**11:37 (1)**
66:25
**12 (1)**
48:25
**12b (1)**
49:4
**12b6 (2)**
48:9,11
**12th (1)**
56:2
**1308582 (1)**
20:8
**13921 (1)**
55:3
**15th (5)**
55:5;64:24,25;65:6,
23
**16th (2)**
64:21,24
**1st (1)**
56:21

**2**

**20,000 (3)**
12:4,6,16
**2022 (2)**
20:23,24
**2023 (1)**
48:16
**2024 (1)**
4:1
**206 (1)**
20:8
**23 (12)**
9:17,25;10:5;13:3;
14:4,4,5;20:10,15;
27:12,13,13
**23g (4)**

19:12;23:22;27:6,
17
**23g3 (19)**
13:24;18:17,20,23,
25;19:1,3;20:4;23:18,
19;24:1,4,22;25:11;
26:5;28:7;42:3,20;
53:18
**23rd (2)**
49:3;64:8
**24 (2)**
4:1;65:11
**24th (2)**
61:4;63:9
**25th (1)**
63:9
**26th (1)**
63:9

**3**

**3 (1)**
21:15
**3007-1b (2)**
49:6,7

**4**

**450 (1)**
59:8

**6**

**600 (1)**
33:6
**6th (1)**
55:4

**7**

**7023 (1)**
29:8

**8**

**8 (1)**
10:14

**9**

**9014 (4)**
48:23,23,23;49:2
**956872 (1)**
20:23

Case: 19-30088    Doc# 14354-1    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
81 of 81