# EXHIBIT 2

1           UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                 -oOo-

4  In Re:              ) Case No. 19-30088
                     ) Chapter 11
5  PG&E CORPORATION       )
                     ) San Francisco, California
6           Debtor.  ) Wednesday, June 7, 2023
  _____ ) 10:00 AM
7

8                     MOTION FOR ENTRY OF AN ORDER
                     FURTHER EXTENDING DEADLINE
9                     FOR THE REORGANIZED DEBTORS
                     TO OBJECT TO CLAIMS AND FOR
10                    RELATED RELIEF FILED BY PG&E
                     CORPORATION [13745]

11

12           TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE DENNIS MONTALI T
13        UNITED STATES BANKRUPTCY JUDGE

14  APPEARANCES (All present by video or telephone):
  For the Reorganized     RICHARD W. SLACK, ESQ.
15  Debtor:             Weil, Gotshal & Manges LLP
                   767 Fifth Avenue
16                 New York, NY 10153
                 (212)310-8000

17  For RKS Claimants:      JEFFREY RITHOLTZ, ESQ.
                 Rolnick Kramer Sadighi LLP
18                 1251 Avenue of the Americas
                 New York, NY 10020
19                 (212)597-2800

20  For CalSTRS et al.:     IRWIN B. SCHWARTZ, ESQ.
                 BLA Schwartz, P.C.
21                 515 South Flower Street
                 18th Floor
22                 Los Angeles, CA 90071
                 (213)785-3683
23

  For The State of Oregon:  SUSAN F. DICICCO, ESQ.
24                 Morgan, Lewis & Bockius LLP
                 1400 Page Mill Road
25                 Palo Alto, CA 94304

Case: 19-30088  Doc# 14354-2  Filed: 03/15/24  Entered: 03/15/24 19:37:01  Page 2 of 99

1                                    (650)843-4000

2    For PERA:                   MICHAEL S. ETKIN, ESQ.
                                 Lowenstein Sandler LLP
3                                One Lowenstein Drive
                                 Roseland, NJ 07068
4                                (973)597-2500

5    For Chevron Master Pension  JONATHAN DOOLITTLE, ESQ.
     Trust and Chevron UK        Pillsbury Winthrop Shaw Pittman
6    Pension Plan:               LLP
                                 Four Embarcadero Center
7                                22nd Floor
                                 San Francisco, CA 94111
8                                (415)983-1000

9

10

11

12

13

14

15

16

17   Court Recorder:              LORENA PARADA/ANKEY THOMAS
                                 United States Bankruptcy Court
18                               450 Golden Gate Avenue
                                 San Francisco, CA 94102
19

20   Transcriber:                CATHY L. KLEINBART
                                 eScribers, LLC
21                               7227 N. 16th Street
                                 Suite #207
22                               Phoenix, AZ 85020
                                 (800) 257-0885
23

24   Proceedings recorded by electronic sound recording;
     transcript provided by transcription service.

25

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, JUNE 7, 2023, 10:00 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  Court is now in session.  The Honorable

5    Dennis Montali presiding.  Calling the matter of PG&E

6    Corporation.

7            THE COURT:  Ms. Parada, you gave me the names of

8    several who are going to appear, but I didn't see counsel for

9    Oregon.  I think that's Ms. Polivey. (phonetic)  Have you heard

10   from her?

11           THE CLERK:  I'll check, Your Honor.  It's a long list.

12           THE COURT:  Well, if counsel for the Oregon entities

13   expects to appear, just raise your hand so we can bring you in.

14   There we go.  Ms. DiCicco.

15           Okay.  Why don't we start with appearances.  I see Mr.

16   Schwartz, would you -- and then Mr. Doolittle, please state

17   your appearances.

18           MR. SCHWARTZ:  Good morning, Your Honor.  Irwin

19   Schwartz on behalf of California State Teachers Retirement

20   System and a couple of other public (indiscernible) plans

21   and --

22           THE COURT:  All right.

23           MR. SCHWARTZ:  -- and thirty-six entities related to

24   the Hartford.

25           THE COURT:  Mr. Doolittle?

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 4
of 99

1          MR. DOOLITTLE:  Good morning, Your Honor.  Jonathan
2   Doolittle for Chevron.

3          THE COURT:  Mr. Slack?

4          MR. SLACK:  Good morning, Your Honor.  Richard Slack,
5   Weil, Gotshal & Manges for PG&E.

6          THE COURT:  Okay.  We have some more people coming in,
7   I believe, I assume.

8          Ms. Parada, no one else is trying to get in?

9          THE CLERK:  Yes.  I'm bringing people in now, Your
10  Honor.

11         THE COURT:  Okay.

12         Ms. DiCicco?

13         MS. DICICCO:  Good morning, Your Honor.  Susan DiCicco
14  from Morgan, Lewis & Bockius for the Oregon claimants.

15         THE COURT:  Good morning.

16         Mr. Etkin?

17         And it's Mr. Ritholtz, I don't see -- recognize your
18  name.  You state your appearance and your client?

19         MR. RITHOLTZ:  Yes.  Jeffrey Ritholtz from Rolnick
20  Kramer Sadighi for the RKS claimants.

21         THE COURT:  Oh, I'm sorry.  RKS.  Excuse me.  I
22  expected somebody else.  Are you presenting the argument or Mr.
23  Bodnar?

24         MR. RITHOLTZ:  Yes, I am.

25         THE COURT:  Okay.  Mr. Etkin, I was waiting for your

1  appearance, sir.

2          MR. ETKIN:  Yes, Your Honor.  I apologize.

3          THE COURT:  Okay.

4          MR. ETKIN:  Michael Etkin on behalf of the Public

5  Employees Retirement Association of New Mexico.

6          THE COURT:  Okay.  I think I got everybody.

7          Mr. Slack, you are up to bat first, and you want to

8  reserve some time, I presume?

9          MR. SLACK:  I'd like to reserve ten minutes for

10 rebuttal, Your Honor.

11          THE COURT:  Fine.  Thank you.

12          MR. SLACK:  So Your Honor, this motion seeks to extend

13 the objection deadline for six months until December 18th,

14 2023.  And putting aside the PERA objection, which doesn't

15 object to the extension, there are only four filed objections

16 to the extension, and these objections are from the same

17 parties and/or counsel who objected to the last extension

18 motion, and each of them makes essentially the exact same

19 argument that they made six months ago in connection with the

20 prior extension.

21          And this Court granted the last extension,

22 notwithstanding the objections, and PG&E set out an aggressive

23 schedule under the Court's securities procedures with it being

24 clear that a further extension would be necessary.  And that's

25 the sole issue on the extension motion should be whether PG&E

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 6
of 99

1   met the goals set out under the last extension motion and

2   whether the procedures are working to resolve claims, and the

3   answer to both of those is a resounding yes.

4           And although there are a number of ways to look at the

5   success of the securities procedures, a few statistics make the

6   point.  The reorganized debtors have resolved approximately

7   fifty-five percent or 4,800 of the 8,800 securities claims

8   submitted and have settled nearly 2,800 securities claims.

9           The reorganized debtors have made settlement offers to

10  all but approximately 1,500 of the unresolved securities

11  claims, meaning that nearly eighty-three percent of the

12  securities claims have received settlement offers or have

13  otherwise been resolved.  And --

14          THE COURT:  I don't mean to interrupt your

15  statistics --

16          MR. SLACK:  Yes.

17          THE COURT:  -- because your statistics are in your

18  papers.  What about the four objecting counsel and their

19  clients, where do they fit in the numbers?  Are they in that

20  1,500?  I think there are a couple of them that -- the RKS

21  folks have settled, but a vast number, it's a very high

22  percentage, isn't it?

23          MR. SLACK:  Yeah.  So out of --

24          THE COURT:  Okay.

25          MR. SLACK:  -- the objectors, Your Honor, we've given

1    I think settlement offers to all but a couple of Mr. Schwartz's

2    clients.  So Oregon, RKS, Chevron have all received offers.

3    We're in negotiations with Oregon, and we've obviously have

4    gotten responses from some of the other folks.

5          So what's important, Your Honor, is also is that

6    excluding the RKS claimants, nearly ninety-one percent of the

7    claimants that have reviewed their settlement offers have

8    entered into settlements.  And what this means is where parties

9    have been willing to engage with PG&E, we've been able --

10   largely to be able to settle claims.

11         Now, during the last extension period, PG&E made

12   offers with respect to about 3,800 securities claims and

13   entered into 1,800 settlements or nearly 300 per month.  I

14   mean, that's fifteen each business day.  And even in the few

15   weeks since making the motion, PG&E made offers to an

16   additional 240 claimants and settled 183 securities claims.  So

17   there's really --

18         THE COURT:  180 -- excuse me.

19         MR. SLACK:  183.

20         THE COURT:  180 of the 240?

21         MR. SLACK:  No, not of the 240, but just because

22   there's a lag, but we've --

23         THE COURT:  Yeah.

24         MR. SLACK:  -- actually had 183 new settlements since

25   the motion was filed.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 8
of 99

1          THE COURT:  Okay, okay.

2          MR. SLACK:  So Your Honor, where does that leave us?

3   There's only about, as I said, 1,500 claims that have not

4   received offers, and we expect to make omnibus objections with

5   respect to a couple hundred of those, and that means that there

6   will be about 1,200 claims that we will expect to make offers

7   to in the first few months of a new extension period, and at

8   that time, everybody will either be the subject of an omnibus

9   objection or will have received offers.

10          And we anticipate that negotiations will continue with

11   a number of claimants obviously who've received over the next

12   month and that we'll be successful in continuing to settle a

13   significant number of these claims.

14          THE COURT:  Well, shouldn't I be a half-full person

15   and say then if I deny your motion, the dialog will continue,

16   and there will be some more settlements, right?  I assume --

17          MR. SLACK:  I'm sorry.  What --

18          THE COURT:  I assume.  Pardon?

19          MR. SLACK:  What is that, Your Honor.

20          THE COURT:  No.  I said I'm going to be a little glass

21   half empty --

22          MR. SLACK:  Oh, okay.

23          THE COURT:  -- perhaps here, and say if I deny your

24   motion today, you're still going to negotiate with lots of

25   folks -- and maybe not RKS, they seem to be on your bad guy

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 9
of 99

1  list -- but you might still be settling of 150 every couple

2  weeks going forward, right?  Nothing says the settlements can't

3  continue.

4          MR. SLACK:  Yeah.  I think, Your Honor, what of course

5  we're missing there is that we're not in a position to object

6  to 4,000 claims.  As we've said, we don't have -- we actually

7  don't have -- we don't have any pleadings that we can object to

8  other than a handful in more than a general way of saying they

9  don't meet the pleadings standards.  So look, it makes sense to

10  extend it.  It makes sense to let the procedures go forward and

11  see how many we can settle, and then we'll talk about the

12  merits procedures that we're trying to put into place.

13          But one very important point here about letting these

14  procedures go forward is of course if the Court has now

15  approved a mediation panel of experienced and independent

16  mediators to help us settle, and it makes sense to allow the

17  mediators the time to try to settle more claims before we

18  figure out who's left, how many complaints do we have, and what

19  do we do.  So in --

20          THE COURT:  One of the things that troubled me to some

21  extent -- I don't want to use the word trouble.  That's a

22  negative, but amazed me is why it took so long to get the panel

23  of mediators approved?  I mean, I could have approved that a

24  year ago.

25          MR. SLACK:  Yeah.  So that's a good point, and Your

1    Honor, that's a good question.  Here's the answer:  When we

2    went with the -- the first thing you do is you go with the

3    offers.  We were settling.  Remember, we still have others

4    before RKS.  We've actually gotten settlements with over ninety

5    percent of the people we've negotiated with.  So that --

6            THE COURT:  No, I understand that.  I got that.

7            MR. SLACK:  So we had very, very few people who

8    outright rejected who would be really subject to mediation.  So

9    we're now at the point where we have a critical mass of people

10   who we can start mediating with.  And even now, most of those

11   folks are really, when you look collectively, are going to be

12   RKS claimants in the first instance and then a handful of

13   others that have rejected.  So we really are only in the

14   position to start mediating now, and we set the panel.  So it

15   makes perfect sense the timing that we did that.

16           THE COURT:  But Mr. Slack, again, I'll use my glass

17   half empty hat, and say, you've been at odds with RKS for

18   months, and you've been critical of RKS more than once in

19   saying, they're getting -- they want to be at the head of the

20   line, and what you're telling me really is they're going to go

21   to the back of the line because if I deny the motion -- excuse

22   me, if I grant your motion today, maybe RKS sees this again six

23   months from now when you're asking for more time, and maybe

24   they're still at odds, and maybe it's time to force that matter

25   to either binding mediation or more importantly, a claims

1    objection to see what happens.

2                MR. SLACK:  Yeah.  So --

3                THE COURT:  I mean, you don't have to answer that, but

4    you ought to -- from my point of view, squeaky wheels sometimes

5    get oiled, but if they just are left in the back room to

6    squeak, they aren't happy.

7                MR. SLACK:  Yeah.  I would say this, Your Honor, is

8    that our procedures don't put RKS in the back of the line.

9    They put RKS completely on the same level as every other

10   securities claimant --

11               THE COURT:  No.  But realistically --

12               MR. SLACK:  And --

13               THE COURT:  But realistically, they're hanging tough,

14   and they're not settling at the rate that you would like, and

15   again, I don't want to get into why they are or why they

16   aren't.  That's not appropriate.  But the fact of the matter is

17   RKS is not alone in opposing this motion.  The other four

18   groups are -- or three groups.

19               But my point is that you want me to maintain the

20   status quo as though the squeaky wheels are going to get

21   resolved, and they can get resolved even if I deny your motion.

22   You can cut a group with Mr. -- the RKS Group tomorrow if the

23   parties come to an agreement.  So what is so bad about getting

24   back to what was contemplated in the -- when I implemented this

25   procedure over your persuasive arguments and over PERA's

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
12 of 99

1 opposition three years ago?

2 MR. SLACK: Yeah. So let me say this, Your Honor, I

3 think there's a couple of layers there. So let's talk about

4 RKS first. I think you should deny the RKS and overrule the

5 RKS motion for four reasons. First, I think that the RKS

6 proposal would undermine the securities procedures for

7 everybody else.

8 Holders of unresolved claims are not going to sit idly

9 by while RKS races forward with merits litigation. These

10 people are going to be compelled to intervene and be involved,

11 including in discovery. In other words, it's not going to be

12 that RKS is going to be doing this, and everybody else is going

13 to sit back and watch them and say, great. Go ahead and

14 litigate these issues. That's just not going to happen, and

15 how do we know that --

16 THE COURT: Hold on --

17 MR. SLACK: We --

18 THE COURT: Hold on. RKS has claims on file, and

19 there's no objection pending. So they're deemed allowed. So

20 RKS doesn't necessarily get to turn loose. You have to object.

21 So --

22 MR. SLACK: Well, we have to objection deadline, but

23 once --

24 THE COURT: Oh, I understand. I understand. But --

25 MR. SLACK: The point is that --

1          THE COURT:  But what I'm --

2          MR. SLACK:  The point is that what they want, Your

3    Honor, is they want to expedite litigation here, and I think

4    all our point is is that if we expedite litigation with RKS

5    according to their procedures, you're going to have everybody

6    coming in and trying to intervene because nobody is going to

7    let RKS go jump ahead --

8          THE COURT:  Well, when you say --

9          MR. SLACK:  Everybody wants to be on the same line.

10         THE COURT:  Mr. Slack, when you say "intervene", there

11   are a quantity of claims in file in round numbers.  I suspect,

12   whether it's 1,200 or a higher number, I mean, you gave me the

13   statistics a few minutes ago about the number that had been

14   resolved.  So I can't keep track of it exactly.

15         But the point is these lawyers representing these four

16   groups know the number of claims involved.  So if I deny your

17   motion, they don't have to do anything until you object.  So

18   let's assume you filed an objection to one claim in the RKS

19   category --

20         MR. SLACK:  Right.

21         THE COURT:  -- what is there to intervene on?  The

22   other claims are deemed allowed until you object.  So now,

23   let's assume you object to one claim of RKS, one claim of

24   Oregon, and one claim of Chevron -- or Mr. Schwartz's clients,

25   so four.  So we have a status conference, and I say, okay.  We

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
14 of 99

1 got four objections to claims. Do I resolve them by law

2 argument, or do we set it for trial? What is this stampede

3 that's come in with people joining the fray when they haven't

4 even had their claims put at issue yet?

5      MR. SLACK: Well, I guess, I would say this, Your

6 Honor, ultimately it's going to be you're the gatekeeper of

7 that, but I can tell you we know from the Bail Post statement

8 that was filed, they don't want to sit back and let RKS or

9 somebody else litigate the same issues or related issues to

10 what they want, what they have in theirs, and there's going to

11 be a lot of claimants who aren't going to want to sit back and

12 let litigation or discovery take place.

13      And Your Honor, discovery is exactly the point here,

14 too, is that PG&E shouldn't be required at different stages to

15 have four sets of -- ten sets, twenty sets of documents

16 requests and depositions. The way this should be done is that

17 all of the merits work. Everything in the merits should be

18 coordinated, and that's what we're suggesting.

19      Let everybody go file a complaint or not file a

20 complaint or do whatever they're going to do. RKS agrees that

21 they need to file an amended complaint. Everybody really is in

22 that same boat. All we've said is let's let everybody do it at

23 the same time, let's see who we settle with over the next six

24 months. We're going to have fewer people in the next six

25 months than we do now substantially, and now the question --

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
15 of 99

1  then the question is going to be how do we resolve all of these

2  somewhat related claims?  They're different, but they're

3  somewhat related in a coordinated fashion.  And it's a very

4  finite --

5      THE COURT:  Okay.  RKS said that they're going to take

6  you up on your proposal that they're going to amend.  I don't

7  know that the other groups are going to amend, but they have a

8  right to.  I mean, they can amend today if they want to.  Their

9  claims are on file --

10      MR. SLACK:  Right.

11      THE COURT:  -- and they can amend their claims.

12  There's no issue on that, is there?

13      MR. SLACK:  Well, they -- I mean, there are some

14  amendments that are proper and some that aren't.  We'll reserve

15  our rights --

16      THE COURT:  No, no --

17      MR. SLACK:  But you're right --

18      THE COURT:  No --

19      MR. SLACK:  -- you can effectively amend as long as

20  it's an appropriate amendment.  I --

21      THE COURT:  Mr. Slack, I'm assuming they're not going

22  to file inappropriate amendments.  So if they've blown a

23  statute of limitations or something.  But if they're trying to

24  fill in the blanks, we have a very liberal policy of amending.

25  So what I'm saying is that whether it's RKS or the other

1  creditors, if anyone want to, they can amend any time they

2  want.

3          It's difficult.  I agree with you.  If suddenly, PG&E

4  is hit with ten different document requests, that's burdensome,

5  but there are ways to do that, too.  There are bellwether

6  trials (audio interference) the Court can conduct a bellwether

7  claim objection, too, can't it?  And can limit and control the

8  discovery so there is a consolidation.

9          In other words, whether I go with their proposal or

10  some other proposal, if at some point there are multiple claims

11  that are still objected to by PG&E, I don't think you have to

12  defend four depositions, if you can defend one deposition with

13  four people on the other side of the table.  We can control it

14  from a case management point of view.

15          What's different about this, except the numbers?

16          MR. SLACK:  Well, when you say what's different,

17  except for the numbers, the numbers are important.  I mean, we

18  have again very significant claimants who still have to go

19  through the settlement process.  And what I would say is this

20  is you don't want to force those people into, again, trying to

21  intervene or whatever while their claims are getting attempted

22  to settle.

23          The way to do this is for the Court quite frankly to

24  be encouraging people to settle and encouraging people to use

25  all the tools of the securities procedures, and what's really

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
17 of 99

1 important here is that RKS, while they paid lip service to

2 exhausting the securities procedures, it's clear that they

3 haven't.

4          At the last extension hearing, the Court ordered the

5 reorganized debtors to make offers to the RKS claimants on a

6 claimant-by-claimant basis.  And presumably, that was to have

7 the parties engage with each other on the securities

8 procedures.  Instead, what happened is that RKS rejected

9 ninety-eight percent of those offers --

10          THE COURT:  No, I understand.

11          MR. SLACK:  -- and so --

12          THE COURT:  I understand it happened.  Go ahead.

13          MR. SLACK:  And so the other thing, Your Honor, really

14 important is they also haven't used and they're trying to avoid

15 the mediation procedures because they have not mediated on a

16 claimant-by-claimant basis, and they haven't done it in front

17 of the panel of mediators that you've --

18          THE COURT:  But hold on, Mr. Slack.  Again, I give you

19 a time limit, and then I interrupt you.  But I don't want to

20 get back into who blew the failed mediation.  It was

21 inconsistent with the procedures to begin with, and you're

22 blaming them, and they might blame you.  But the point is if I

23 deny today's motion, the mediation procedures are still in

24 place.  They can sit and sulk at the mediation, if you want, or

25 leaving aside whether they can veto anything further.  I don't

1 know that the Court (audio interference) suggested something

2 like that, and you don't like that.

3      But my point is that if I give you six more months and

4 we have this same discussion and you're still pointing at RKS

5 and blaming them for being difficult, it's going to be the same

6 problem, and in between now and then, of course if you get more

7 settled, that's good.  I do encourage mediation.  I already

8 complained about why weren't these mediators appointed a year

9 ago.  They're in place now.  I hope that are fast at work

10 trying to resolve cases.

11      But anyway, go ahead and make whatever argument you

12 want to make -- well, one more question for you, and then I'll

13 be --

14      MR. SLACK:  Okay.

15      THE COURT:  -- quiet for the rest.  Your litigation

16 procedures -- and I looked them again this morning -- they're

17 not really mandatory, right?  In other words, if I'm a creditor

18 with a securities claim and I get this litigation thing that

19 says I can join the PERA complaint or I can file my own, I can

20 also just do nothing, right, and show up at the first hearing

21 on the claim objection; isn't that true?

22      MR. SLACK:  That is true.  And that was the point,

23 Your Honor.  They're meant to be entirely voluntary, but what

24 it does is -- and this was really the point of that.  We

25 wanted -- while the settlement procedures were still working

1   and still in place, we wanted to have some procedures that

2   would allow sort of a first step to take place because as we

3   see it, Your Honor, if people don't do this, our first

4   objection is going to be your proof of claim doesn't state a

5   claim, and --

6           THE COURT:  Okay.

7           MR. SLACK:  And I would think --

8           THE COURT:  Good.

9           MR. SLACK:  -- Your Honor is going to do one of two

10  things.  He's either going to say to them, well, you can go and

11  amend it or adopt a PERA, whatever you're going to do, but

12  we're trying to take that step out of it.  And it's very clear

13  that none of these claims actually meet the pleading standard

14  once we object.  So we were actually trying to --

15          THE COURT:  Well, I know, but Mr. Slack, you --

16          MR. SLACK:   -- move along the process.

17          THE COURT:  You've made that point that it doesn't

18  meet your definition of the pleading standards.

19          Excuse me.  I have to avoid a phone call on my phone

20  here.  Sorry.  One sec.  It's another judge calling me, but I'm

21  not going to answer the phone.  Excuse me.

22          So the point is that -- look, let's pick somebody

23  other than RKS, let's say Mr. Schwartz.  Are you calling Mr.

24  Schwartz and say, you know, I think your claim is going to be

25  knocked out because you didn't state a case.  He says, all

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
20 of 99

1 right. I'll amend it, or I'll see you in court because I think

2 it's a good claim --

3       MR. SLACK: Right.

4       THE COURT: But maybe he says, okay. I'll amend, and

5 he just amends, and then you have a merits objection or you

6 negotiate. What is different? I mean, what are we

7 accomplishing by implementing a voluntary amendment process

8 that Mr. Schwartz could take advantage of or decline or file

9 something else, and then when it's time -- leaving aside

10 mediation -- so we go through the mediation efforts -- and then

11 it's the first status conference on the claims objection. I

12 say, okay. What's at issue? And I realize that I don't

13 particularly look forward to having 1,000 trials on securities

14 claims, but my job is to decide decisions, and if Mr. Schwartz

15 says, I think I got a valid claim and you say, no, and I rule

16 in your favor, Mr. Schwartz is sent packing. His claim is

17 disallowed. He should have amended.

18       Or alternatively, I say, well, I'm going to give you a

19 chance to amend or to have some discovery. What's different

20 about this from any other claims procedure?

21       MR. SLACK: Yeah. So I, by the way, completely agree

22 with everything you just said, and what's different is that

23 because -- look, because of the way the extended bar date was

24 done here by all of us, Your Honor, us included, the folks that

25 filed claims just filed the form and didn't put in there any

1    kind of the facts or basis that you would need typically for a

2    valid claim.

3          So what we were doing at this point was trying to put

4    in place a procedure that quite frankly we think is going to

5    expedite and speed up the process, not slow it down.  But we

6    completely agree with you.  Everybody can do this anyway, and

7    if they don't, we'll just come back to you, and we will make

8    those objections to whether it's 100, 500, or 1,000, and if the

9    people like Mr. Schwartz say, look, I don't think I have to do

10   anything, we'll disagree, and Your Honor will decide.  We get

11   that.  That's fine.  But we thought that these procedures

12   actually had the advantage of speeding that up and removing the

13   process --

14          THE COURT:  Well, they are.  They do as long -- they

15   do as long as they're voluntary.

16          MR. SLACK:  Yes.

17          THE COURT:  And there's a deadline or a consequence,

18   not to punish the claimant that doesn't do anything, but to

19   say, well, we're going to go to the next step.  In other words,

20   using Mr. Schwartz as an example in comparing him to the RKS,

21   RKS takes advantage of the suggestion, and it amends its claim

22   in the next thirty days.  Mr. Schwartz says, no.  We're

23   standing on our claim as is.  Then you try the mediation.  It

24   doesn't work.  You object to the claim.  It comes to a status

25   conference, and maybe Mr. Schwartz is sent packing; maybe, he

1       isn't.  It doesn't matter.

2              The fact of the matter is the procedures in place did

3       work because you only had 7,000 claims to begin with.  You

4       might have had 10,000 if the claims process was more robust or

5       more extensive.  And I'm not faulting that.  I mean, I approved

6       it with your support, and we ended up with 7,000 claims.  Okay.

7       Now, you're down to below 4,000.  Fine.

8              MR. SLACK:  Well, we had 8,800, and we've now resolved

9       approximately 5,000.  So I think we're -- and a lot of that

10      progress again has been because of the procedures.  And because

11      there hasn't been this duality, the procedures have been

12      allowed to work without having a merits litigation overlay

13      because as I think we all know, one of the big advantages, both

14      for PG&E and for other claimants who aren't sitting here, is

15      settling rather than spending money on merits litigation is

16      attractive, and that is attractive for the reorganized

17      debtor --

18             THE COURT:  Well, the simple solution is save money by

19      accepting your -- you're accepting their counterproposal rather

20      than their accepting yours.  So that's for the mediator.

21             Okay.  Mr. Slack, I'm going to save at least ten

22      minutes for you and --

23             MR. SLACK:  Okay.  Very good.

24             THE COURT:  And --

25             MR. SLACK:  Thank you, Your Honor.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
23 of 99

1          THE COURT:  And as you know, two more if we have to.

2    Now, the other four counsel, have you agreed to share the time?

3          MR. SCHWARTZ:  Yes, Your Honor.  It's Irwin Schwartz.

4    We do have an agreement about how to allocate time.

5          THE COURT:  Okay.  And what should I expect?

6          MR. SCHWARTZ:  I'm sorry, Your Honor.  I didn't hear

7    what you just said.

8          THE COURT:  No, just tell me the sequence.  Who's

9    going to go first.

10          MR. SCHWARTZ:  So it will be me starting with a very

11    short introduction, Mr. Etkin for fifteen minutes on behalf of

12    New Mexico, Mr. Ritholtz for ten minutes on behalf of RKS, and

13    the balance of time to Ms. DiCicco.

14          THE COURT:  Okay.  Okay.

15          MR. SCHWARTZ:  Thank you, Your Honor.  I'm going to --

16    very short.  I would note that I've spoken with Mr. Doolittle.

17    He's agreed -- Chevron has agreed to adopt our few comments.

18    And what I would say, Your Honor, is we don't have much to add

19    to add to our papers or Chevron's papers, other than to note

20    that we're pleased to see that it appears that the debtor is

21    agreeing with us as to where we are in the posture of the case,

22    that claimants have not settled, and Your Honor just said that,

23    the debtors must either accept the proofs or object based on

24    evidence, and that's what provided in the Code.

25          Nowhere in there reply, Your Honor, did the debtors

1  actually assert that they don't understand the bases of the

2  claims, asserted by any of the claimants.  In fact, it's pretty

3  obvious that those claim forms that Your Honor approved were

4  approved in contemplation of the New Mexico complaint, and

5  so --

6          THE COURT:  Mr. Schwartz, hold just one second.  I

7  have to close the door.  Just one sec.  Okay.  Sorry.  Go

8  ahead.

9          MR. SCHWARTZ:  Okay.  I don't think there's any

10 plausible argument that the debtors don't understand what the

11 claims are that are submitted under the claim form that Your

12 Honor approved, but nevertheless, they're asking -- although

13 it's a bit of a moving target, they're asking you to adopt

14 extraordinary procedures here under the false premise that they

15 don't understand what the claim is that is being brought

16 against --

17         THE COURT:  Now, Mr. Schwartz, let's try a

18 hypothetical.  Suppose we're past mediation for your clients

19 and there's a claim objection based upon your claim as filed.

20 Just pick one (audio interference).

21         MR. SCHWARTZ:  Okay.

22         THE COURT:  And we're now at the first steps

23 conference, and I say, well, Mr. Schwartz, you have the burden

24 of going forward.  How long are your going to take, and what do

25 you want to do to present your case?  Do you need discovery, or

1  are you ready to present your case?

2          MR. SCHWARTZ:  We would want discovery, Your Honor.

3          THE COURT:  Okay.  You would want discovery.

4          MR. SCHWARTZ:  Right.

5          THE COURT:  So isn't that exactly what Mr. Slack is

6  concerned about that everybody will want discovery and we have

7  a -- run a bank again.

8          MR. SCHWARTZ:  Well, Your Honor, I have to say that's

9  exactly what Mr. Slack should have expected at the time he

10 proposed these procedures.  In other words, he's asking --

11 instead of going forward with a class action style -- and I'm

12 not going to -- I wasn't even there, Your Honor, for those

13 arguments.  He's asked that each of us be treated separately.

14 Each of our clients did submit the claim form with the trading

15 information, been responsive to all of the requests put on by

16 Mr. Slack's agent, who is dealing with the technology side, and

17 therefore, we're in a position where we've stated a proof of

18 claim.  That's now the burden on the debtors to object with

19 evidence based on whatever objection they said with evidence,

20 we will likely seek discovery.

21          Your Honor just said you're going to be able to

22 coordinate discovery because we won't be the only one looking

23 for discovery and then --l

24          THE COURT:  Is your claim presumably is going to say

25 this particular claim made this much of an investment at this

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
26 of 99

1  period of time, and presumably, you're going to say something

2  like, and relied on representations by a debtor or the debtor's

3  officers and directors or other people.

4          MR. SCHWARTZ:  Yes.

5          THE COURT:  And then I'll say, well, who will your

6  witness be?  And you say, I don't know.  We haven't take

7  discovery yet.  So we are back to the whole process where maybe

8  you don't amend, but maybe the RKS claimants do amend or

9  somebody else adopts PERA.  I mean, we're at the same break

10  down, right, where there's a lot -- there's still a lot of

11  facts to develop by the claimants, right?

12          MR. SCHWARTZ:  That's exactly --

13          THE COURT:  Okay.

14          MR. SCHWARTZ:  -- right, Your Honor, and so -- and I

15  have to say, I think there's been a slight shift because I

16  think originally, the litigation proposal was that the

17  claimants had to adopt either the Mexico complaint, draft their

18  own, or subject themselves to risk of dismissal for failure to

19  state a claim.

20          THE COURT:  I don't think the debtor on its own can

21  impose the dismissal.  I think what I read the litigation

22  procedures is if you don't do anything, you might be on the

23  receiving end of an objection because you don't state a claim,

24  but again, that's what we do all the time.  I mean, we don't --

25  we can have this debate about Rule 12(b)(6) applies under a

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
27 of 99

1 Bankruptcy setting, but the fact of the matter is if somebody

2 comes into my court for a status conference, and I say, it

3 looks like your claim was passed the statute of limitations,

4 and the lawyer says, well, I concede that point, then your

5 claim is disallowed.

6      But if you said, no. We have a defense because the

7 debtor did such and such. We just need to prove that there was

8 a (audio interference) okay. We'll set it for trial. So for

9 you, you're in there, and there's no facial objection on the

10 face like statute of limitations, but there's essentially what

11 a 12(b)(6) motion would say if the claimant hasn't stated a

12 basis for relief. And you'd say, well, I just need to develop

13 the facts to prove my case, and I'd say, okay, go do it.

14 That's what Mr. Slack is complaining about.

15      MR. SCHWARTZ: I understand, and that's what would be

16 expected dealt with on a case-by-case basis as the securities

17 procedures proposed. What I would say, Your Honor -- and I've

18 now gone way beyond the time that we agreed to --

19      THE COURT: Yes, sir. I'm the one that asked. I

20 asked you the question.

21      MR. SCHWARTZ: Yeah. It's that we and Chevron

22 actually adopt and agree with the reasoning that was put forth

23 by New Mexico in its opposition, especially with respect to the

24 procedural and fairness and the constitutional concerns of the

25 requested merits procedures. So I'd like at this point, Your

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
28 of 99

1  Honor, to turn it over to Mr. Etkin who will address those

2  issues.

3  　　　　　THE COURT:  Okay.  Good morning, Mr. Etkin.  Good to

4  see you again.  Mr. Etkin, you need to turn on your mic.

5  You're muted.

6  　　　　　MR. ETKIN:  My technical expertise in full view, Your

7  Honor.

8  　　　　　THE COURT:  I know.  That's true.  Mr. Etkin, I have a

9  couple of preliminary questions for you, just two questions.

10  I'm aware and you're aware of the recent Ninth Circuit ruling

11  that go your way, but my only question is there another PG&E

12  appeal that you're involved in that's still pending at the

13  Ninth Circuit, or is that it, that circuit?

14  　　　　　MR. ETKIN:  Not on the bankruptcy side, as I

15  understand it, Your Honor.  But --

16  　　　　　THE COURT:  Okay.  Because there was something in the

17  briefs about a conversation that you or someone on your side

18  and someone on the debtor's side had with the appellate -- I

19  mean, the mediation panel at the circuit and so on, and I

20  didn't know whether that's still a live dispute.  And it's not

21  that I'd do anything.  I just wanted a status report.  That's

22  okay.

23  　　　　　MR. ETKIN:  No.  I understand, and some of my

24  colleagues are I think on the Zoom call, and they can correct

25  me if I'm wrong by raising their hand, but I don't believe that

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
29 of 99

1    there are other bankruptcy-related appeals pending.

2              THE COURT:  Okay.  And I don't need to take --

3              MR. ETKIN:  There are appeals pending in connection

4    with the district court proceeding.

5              THE COURT:  Okay.  Fine.  And I have -- no.  I don't

6    want to take your colleagues time.

7              The other just sort of important threshold question,

8    you've made the point in your papers that the district point

9    has not acted on a motion to dismiss as far as the nondebtor

10   defendants, but is that -- did the judge not issue -- or his

11   stay order that's tied to the bankruptcy, does that not cover

12   the pending motion to dismiss?

13             MR. ETKIN:  It unfortunately does, Your Honor, and

14   that's --

15             THE COURT:  It does.  Okay, okay.

16             MR. ETKIN:  That's what's currently on appeal to the

17   Ninth Circuit is the --

18             THE COURT:  Okay.

19             MR. ETKIN:  -- stay that Judge Dalia (phonetic)

20   issued.

21             THE COURT:  So my point is that -- and maybe I didn't

22   phrase it correctly, I understood that he stayed things before

23   him until the bankruptcy is resolved, but I didn't know if that

24   included the motion to dismiss by the officers and directors.

25             MR. ETKIN:  As I understand, Your Honor, it includes

1  everything --

2      THE COURT:  Okay.

3      MR. ETKIN:  -- and Judge Dalia didn't make any

4  exceptions, which again, is part of the problem, but I won't

5  get into that.

6      THE COURT:  No.  I don't want you to get into that.

7  My point is -- I'll leave it that.  You've answered my

8  question.  Okay.

9      Go ahead with your scheduled presentation.

10      MR. ETKIN:  Thank you, Your Honor.  And I'd like to

11  start off with some reference to the district court, and what

12  the debtors originally around two-and-a-half years ago

13  regarding the ADR procedures and that they would work separate

14  and apart from the class action pending in the district in the

15  district court, and in fact, Your Honor, they touted and

16  emphasized that the resolution of those pending motions to

17  dismiss at that time, and they're still pending, would have a

18  salutary impact on the securities claims asserted against the

19  debtor in this court.  If the debtor unfortunately didn't

20  follow through on that approach when it effectively threw

21  silence at the very least, supported the issue, and sort of

22  stayed by Judge Davila.  So that's kind of where we are.

23      But despite those prior representations, Your Honor,

24  now, and what really concerns us, and what even has become more

25  apparent to me in listening to Mr. Slack's presentation today

1    and some of the colloquy, is that PG&E through these merits

2    procedures, they are really seeking to impact not only the

3    claims before Your Honor that are asserted solely against the

4    debtor, but the claims against the non-debtor parties in the

5    District Court case.  And these non-debtors, there are over 40

6    of them, they're not before Your Honor, those claims are not

7    before Your Honor.

8            But if it's really a global resolution that the

9    debtors are looking for and they allude to that, especially in

10   their reply, there's really only one appropriate way of

11   handling this on a global basis without trampling on the due

12   process rights of securities claimants, who, as Your Honor

13   knows, are also members of the class in connection with the

14   claims and the case that's before Judge Davila.  And that is

15   really what Bankruptcy Rule 7023 is all about; it's there for a

16   reason.

17           Now, the debtors in their reply talk about narrowing

18   and shaping the process.  What the debtors clearly want to do

19   through this merits procedure that they outlined, is to extract

20   the benefits of a binding determination under some hybrid

21   collective process where they're pulling the strings by

22   providing what they insist is a choice in adopting the PERA

23   complaint or filing their own complaint and undergoing that

24   significant cost and that significant effort of drafting their

25   own complaint.

1     We don't view that really is a choice, your Honor, and

2  it's the consent that the debtor talks about is really engineer

3  consent to a process that we believe will severely prejudice

4  securities claimants in this court, in your court, and before

5  Judge Davila in connection with those separate claims against

6  non-debtors.

7     THE COURT:  But Mr. Etkin, Mr. Slack conceded, which I

8  understood the case, it's completely voluntary.  If a creditor

9  doesn't either clone the PERA complaint or file essentially the

10  equivalent of a new one, the creditor has the option to stand

11  on its existing proof of claim.  Why is that violating

12  anybody's due process?

13     MR. ETKIN:  Well, Your Honor, the problem really is

14  when you when you focus on the so-called voluntariness of it.

15  You're looking at a situation where it's not such a subtle

16  threat by the debtor that if you don't do either of those

17  things, your complaint is going to -- your claim is going to be

18  subject to being expunged or dismissed.

19     THE COURT:  But Etkin, we do that all the time.  If a

20  claim is defective and somebody objects, I toss it out.

21     MR. ETKIN:  Well, you do that all the time, Your

22  Honor, but not with a court-endorsed merits procedure that

23  effectively is being thrown out in front of all these

24  claimants.

25     THE COURT:  No, no, but I gave -- you say court

1    endorsed, but Mr. Slack concedes it's voluntary.  So if I

2    don't -- look tight and away.  If I deny the motion today, any

3    of the existing securities claims can amend its claim and clone

4    the PERA complaint or clone its own version of the complaint or

5    make up a new theory.  They all have their day to amend their

6    claim.  You take it in terms of filing an amended claim.  I

7    take it in bankruptcy words as amending your proof of claim.

8    But it's the same result.  It's taking an outcome before the

9    forum and it's up to the other side then to object.

10           MR. ETKIN:  Well, I think, Your Honor, that you

11   actually laid it out pretty well that, what do you need these

12   merits procedures for, if not to -- pardon me -- tip the

13   playing field.  If somebody wants to amend, they can amend.  If

14   through discussions with Mr. Slack, they think that they're

15   best off amending in order to avoid dismissal, or if they

16   think, as most of us practitioners normally think, is that a

17   proof of claim, as you indicated, is deemed allowed until it's

18   objected to.

19           And at that point, perhaps things happen.  Things

20   happen with respect to the 4000 unresolved claims out there

21   that we'll all want discovery and we'll all want depositions.

22   And again that takes me back to the point that I think is

23   really important to make.  And that is, that at one point

24   previously, Your Honor, when we first made our 7023 motion

25   early on in the case, based upon the benefit of hindsight and

1    what's happened, if the debtor would have consented to that
2    motion, these claims would be gone; they'd be resolved in my
3    humble opinion.  You wouldn't even have to be dealing with them
4    at this point.
5            Then after the extension of the bar date and the
6    claims process -- of the filing of the claims process there, we
7    again moved under 7023.  And if the debtors had consented to
8    that process, you wouldn't have the issues that are being
9    raised before you now.
10           THE COURT:  Or if I had consented to it.  I mean, I'll
11   take blame.
12           MR. ETKIN:  I'm not blaming -- well, Your Honor, you
13   call balls and strikes, Your Honor.  That's the way it works.
14   But again, I'm talking about this with the benefit of
15   hindsight.  If that would have happened, there would have been
16   a resolution already with respect to everyone except those who
17   decide to opt out of that process and go it alone.
18           THE COURT:  I understand.  And you're speaking like a
19   seasoned class action specialist, and you are that way.  And
20   believe me, Mr. Etkin, in reading these papers and thinking
21   about, we are almost at the three year anniversary of the
22   confirmation order, thinking, well, maybe I should have granted
23   that motion the first time, because that's where we are.  Mr.
24   Slack is almost coming full circle with this adopt the PERA;
25   it's like class action revisited.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
35 of 99

1      MR. ETKIN:  Your Honor, that's precisely the way that

2  that we see it at this point.

3      THE COURT:  Okay.  But what do you want me to do?

4  What do you want me to do?

5      MR. ETKIN:  Maybe it's buyer's -- well, you don't have

6  a 7023 motion in front of you.

7      THE COURT:  Right.

8      MR. ETKIN:  I don't think what I -- and I don't think

9  I need to remind the Court that with respect to the denial of

10  the 7023 motion, the second one, the Court was clear that that

11  denial was without prejudice.

12      THE COURT:  Right.

13      MR. ETKIN:  And what the Court commented on at that

14  point was, well, we'll see where it stands and we'll see how

15  many of these claims remain outstanding.  And I understand that

16  that Mr. Slack believes that they've been successful; and

17  that's in the eye of the beholder somewhat.  But the bottom

18  line is that there are 4000 unresolved claims out there.

19  That's a lot.

20      THE COURT:  So what do you want me to do?

21      MR. ETKIN:  It's not on you.

22      THE COURT:  But you didn't you didn't oppose today's

23  motion with a cross motion to --

24      MR. ETKIN:  I did not.  And I'll tell you -- I'll be

25  candid with you, Your Honor.  I think hopefully you know me by

1 now that I respect this Court and I respect the hints,

2 sometimes subtle, sometimes not so subtle that the Court has

3 laid out. And I don't think that -- I didn't think at the

4 time, and in preparation for today, and in dealing with the

5 merits procedures aspect of the of the motion. I would prefer

6 to get some indication from the Court that the Court would

7 entertain that motion.

8 THE COURT: You just quoted me from the prior hearing.

9 But Mr. Etkin, for today's purposes, if you could make the

10 order for today, what would the order say?

11 MR. ETKIN: The order would deny the merits procedures

12 that are being requested.

13 THE COURT: Okay.

14 MR. ETKIN: And the order would say that you have X

15 days or X weeks to file a renewed 7023 motion in order to get

16 this all under control; the discovery aspect of it, the

17 adequate representation aspect of it, the notice aspects of it,

18 to get that all taken care of, giving folks, whoever they might

19 be, the opportunity to opt out and go it alone if they want.

20 Frankly, it would be salutary to flush that out in any

21 event for the debtor. And if you're going to use the PERA

22 complaint, a class action complaint of over 200 pages, which

23 required an enormous amount of work, and if there's already a

24 court appointed lead plaintiff and lead counsel in the district

25 court, wouldn't it make sense to proceed, not have people worry

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
37 of 99

1  about who's representing them and who's representing their

2  interests; have only one deposition except for those who want

3  to proceed on their own; have only one set of document requests

4  handle it all through that process.

5       And frankly, Your Honor, that's how most securities

6  litigation is handled, even in a bankruptcy context.  And I

7  think, again, unfortunately, this case has been pending a long

8  time.  We all have the benefit of hindsight.  And as we all

9  know, hindsight is often 20/20.  But now that we know where we

10 are, that would really solve all of these issues that the

11 debtor is attempting to solve through what we believe is a

12 half-baked kind of elective process.

13      THE COURT:  Okay.  Well, I have to tell you that with

14 these very capable lawyers who are opposing the motion today,

15 like RKS, and Oregon, and Mr. Schwartz's clients, and not

16 diminishing Doolittle and Chevron, but it's a smaller quantity

17 of people, not a single one of them have indicated that they

18 want to join you and do this.  And even Mr. Slack, who was your

19 fierce opponent when you wanted Rule 23, now when he's facing

20 this opposition, didn't make this concession that will flip it

21 over to a 23.

22      So my question to you is, if I denied today's motion

23 and I said, okay, Mr. Aitken, if you want to file a 23 motion,

24 do it, just give me a preview in what decade that would ever

25 get resolved, come to fruition, starting with two, three years

1  into the confirmation.  When would it show up and start to

2  produce some results for people?  Because you can't start

3  paying members of the class when you have a class action,

4  right?

5          MR. ETKIN:  You can't start the paying members of the

6  class until you have a settlement with respect to those --

7          THE COURT:  Right.

8          MR. ETKIN:  -- who want to participate.

9          THE COURT:  Right.  But when you allow a claim under

10  the bankruptcy rules, you can pay them the next day, right?

11          MR. ETKIN:  Your Honor, my guess is that there's a

12  reason why 4000 claims still remain outstanding.  There's a

13  reason -- why I forget the number, 1500, 1800 haven't even

14  received offers yet.  My guess, Your Honor, is that this could

15  happen very quickly.  All of the sophisticated people involved

16  in this case and even those who are unsophisticated that are

17  still involved with their claims would have the opportunity to

18  say I don't want to be a part of a class action, so I want to

19  go it alone.

20          But then at least you'll have plenty of people.  And

21  I'm not presupposing what counsel for Oregon or counsel for

22  CalSTRS would ultimately do with respect to that.  But my guess

23  would be that some would want to participate because they don't

24  want to spend the money, they don't want to draft their own

25  complaint.  They would be comfortable proceeding in the fashion

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
39 of 99

1   that I've outlined at this stage. And you may be left without

2   outliers, Your Honor, at the end of the day, people who opt

3   out.

4            But at the very least, you're going to whittle down

5   4000 much more easily than through a process as the debtor

6   indicates is intended to be a dealing with individual claims.

7            THE COURT: Okay.

8            MR. ETKIN: But they're saying something different.

9            THE COURT: Let me say something in advance of when

10  RKS and Oregon speak, and that is nobody has to waste time

11  worrying that I'm suddenly going to flip this into a Rule 23

12  motion. I'm either going to grant or deny the pending motion

13  today or with some modification. And if, as a result of my

14  ruling, Mr. Atkin and his clients or somebody else decides to

15  make a motion to activate a Rule 23 process, we'll deal with

16  it. But please don't waste time doing that today.

17           Mr. Etkin, I would tell you one war story if I could

18  be given 15 seconds. Since I've last seen you, I actually have

19  presided over a real class action, and I've issued a nationwide

20  injunction and certified a nationwide class. So I've actually

21  had some experience in your field in another area having

22  nothing to do with PG&E. Anyway.

23           MR. ETKIN: Your Honor, even with this experience that

24  I've gained -- and at the risk of saying something differently

25  than Your Honor assumes, I'm a bankruptcy lawyer that happens

1   to know a little bit about class actions.  And my colleagues

2   (indiscernible) are the class action lawyers.  But I've been

3   doing this kind of work for a long time.  So the interplay

4   between the two is something that I've obviously had a fair

5   amount of experience with.

6         One last point, Your Honor.  And that is the concern,

7   this whole idea of consent and the concern that we have, in a

8   class action context, even in a test case context that you

9   identified, people get the chance to decide as to who the test

10  case is going to be, what the facts are in their case, who the

11  lawyer is going to be.  They get to weigh in on all of that.

12        Under the circumstances that the debtors have put in

13  front of you, they're the ones who get to choose which case

14  they're going to file a motion to dismiss and which claim

15  they're going to object to and how sophisticated or

16  unsophisticated that claimant might be.  That's what really

17  triggers our are our due process concerns and our fundamental

18  fairness concerns.

19        And that's why a Rule 23 process really prevents those

20  concerns from surfacing and deals with those issues so that

21  people are comfortable with who's representing them, that who's

22  representing them owes a fiduciary duty to those class members.

23  That's a big deal.  Whoever is going --

24        THE COURT:  Okay.  I know.  Listen, I'm going to cut

25  you off.  I know those things.

1          MR. ETKIN:  Okay.

2          THE COURT:  And I'm going to say, I'm going to deal

3    with today's motion, not some hypothetical motion that you or

4    someone else might choose to file at some point in the future.

5    So I don't want to waste time on that subject.

6          MR. ETKIN:  Enough said, Your Honor.  Thank you.

7    Thank you for indulging me.

8          THE COURT:  So Mr. Ritholtz, you're up next; is that

9    right?

10         MR. RITHOLTZ:  Thank you, Your Honor.

11         THE COURT:  And I'm going to stick with -- I gave

12   whatever time you agreed.  I think you were promised 15

13   minutes, you can have it.

14         MR. RITHOLTZ:  Yeah, ten minutes.  Thank you.  As Your

15   Honor correctly observed, RKS claimants are differently

16   situated than the other objectors.  We're not actively

17   negotiating with reorganized debtors at this point.  We've

18   rejected the vast majority of the individualized offers we've

19   received, and we've mediated.

20         However reorganized there is want to put us in the

21   back of the line and have us move as slow as the slowest

22   claimant.  Reorganized debtors say that we're trying to

23   expedite the procedures for ourselves, but that's not what

24   we're being asked to -- that's not what we're asking to do.

25   We're being asked to slow down to the reorganized debtors pace.

1          And to be clear, we've offered to amend our proofs of

2    claim only on condition that reorganized debtors will timely

3    object because they've represented in their papers that doing

4    so will move the process forward more quickly --

5          THE COURT:  Well, they'd have to under the under the

6    under the normal case management orders in place.  They'd have

7    to object.  Maybe not on your timeline, but on my timeline,

8    right?

9          MR. RITHOLTZ:  Yes.  Yes, absolutely.  June 30th,

10   technically, at the moment, yes.

11         THE COURT:  Yes, I understand.

12         MR. RITHOLTZ:  But we're trying to prevent the extra

13   step that reorganized debtors have said that will occur, which

14   is that they'll object saying the proofs of claim are

15   insufficient and then we'll have to amend in any event.  So

16   we're just trying to skip that step and move the process

17   forward more quickly.

18         The RKS claimants and the reorganized debtors do not

19   disagree on many things with respect to the procedures.  We

20   agree that the procedures can work when followed.  And unlike

21   Mr. Etkin, we agree that they are the better alternative to

22   class treatment when followed.  The problem is that the

23   reorganized debtors have at every stage chosen delay over

24   complying with the ADR procedures, except when the RKS

25   claimants have forced them to do so.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
43 of 99

1      They refuse to engage at all with the RKS claimants

2  for two years after the procedures were put in place.  Instead,

3  deciding, as Your Honor put it, to pick off the low hanging

4  fruit.  Then they acknowledged that they had secretly paused

5  the procedures to negotiate with Mr. Etkin's client.

6      They first made settlement offers to any of the RKS

7  claimants only after the RKS claimants had objected to the

8  fifth extension motion.  And then they only agreed to mediate

9  with the RKS claimants in exchange for the RKS claimants

10  agreement to withdraw their objection to the fifth extension

11  motion.

12      Now the reorganized debtors accused the RKS claimants

13  of refusing to engage in the ADR procedures.  But that couldn't

14  be farther from the truth.  The RKS claimants have done

15  everything in their power to resolve the claims as quickly as

16  possible.  They submitted proofs of claim and trading

17  information as required.  They survived omnibus objections.

18  When offers were made, they promptly responded.  Now

19  reorganized debtors suggest that those responses should have

20  included counteroffers.  But the ADR procedures explicitly

21  don't require counteroffers.

22      THE COURT:  Well, they don't require it.  They could

23  have included it, but they didn't.  Okay.

24      MR. RITHOLTZ:  Yeah.  And the rate of reject --

25      THE COURT:  What would happen next if I denied the

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
44 of 99

1  motion and either a take your alternative or a variation of it?

2  In your mind, that's the end of the mediation option between

3  your client and the debtors, right?

4       MR. RITHOLTZ:  Well, not necessarily, Your Honor,

5  because the debtors could still offer to mediate with any of

6  our clients individually.  And our position is that if

7  objections are on the table, we're more likely to have a

8  successful mediation because then everybody's positions will be

9  on the table, everyone will understand where each other is.

10  And that's a more useful way to come back to the table than

11  being in the same place that we are right now, which is only

12  having our position on the table without knowing what

13  reorganized debtors' objections are.

14       THE COURT:  Okay.  So if I take Mr. Slack offer, I

15  might see you in six months.  If I take your proposal -- keep

16  in mind my colloquy with Mr. Schwartz a few minutes ago.  Let's

17  assume that you amend your proof of claim as you see fit,

18  leaving aside whether it's 760 claims or just one.  Let's just

19  assume one claim in your bundle of clients, and that one claim

20  gets amended and debtor objects.

21       So we have a status conference and I say, okay, what

22  are we going to do?  Are you ready to prove your case?  Are you

23  going to be ready to prove your case or are you going to have

24  to take discovery from the debtor?

25       MR. RITHOLTZ:  Well, I believe we'll have to take

1   discovery on certain issues.  There may be issues that could be

2   resolved as a matter of law.  And I think in our proposal,

3   we've suggested that we'll meet and confer with the debtors to

4   figure out which issues we agree can be resolved as a matter of

5   law, which would require discovery.  And then we'll have the

6   initial status conference as the --

7          THE COURT:  Okay.  ADR standard procedures have been

8   in place as long as I've been on the bench, the first status

9   conference on a claim objection can be dispositive on legal

10  questions.  Now, so again, let's take the simple example, the

11  hypothetical statute of limitations here, or your client's

12  claim was out of the period of time, or just missed the bar

13  date.  You'd tell me it's a legal question.  I'd say, fine,

14  your claim's disallowed.  End of story.

15         But if it's not, if you've got to find out what was

16  said, who said, what the proof was, I mean, I presume your

17  client proves what he or she did in reliance on things.  But

18  we'll also try to prove what you were relying on were false,

19  right?

20         MR. RITHOLTZ:  Yeah, that's correct.

21         THE COURT:  Okay.

22         MR. RITHOLTZ:  What we're asking for essentially, is

23  to proceed by the ordinary bankruptcy procedures.  We're not

24  asking for any deviation from.

25         THE COURT:  Okay.  So what's going to happen when Mr.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
46 of 99

1  Slack worries about incomes, Oregon incomes, CalSTRS income,

2  Chevron incomes, all the other outposts, and they say we got

3  to -- we're all joining the fight here; they all show up at the

4  status conference and say, I want in too.  Then what do I do?

5       MR. RITHOLTZ:  Well, I think we can discuss case

6  management at that point.  It shouldn't preclude the first

7  step, which is an objection.  That's really what we're asking

8  for, is let's have the objections on the table and then we can

9  decide who wants to litigate, and we can manage the case at

10  that stage.

11       THE COURT:  But an objection might just be almost a

12  general denial.  Again, we know that bankruptcy rules aren't

13  the same as civil rules, and certainly not in class action.

14  But much of what I do by way of first screening out claims

15  objection is the same as a 12(b)(6) motion.  And so the debtor

16  says this proof of claim fails to state a claim.  And I say,

17  yeah, you know, you're right, I'm going to give you 20 days to

18  amend.  So you amend some stuff that then we set it for trial,

19  right?  Again, that's what happens.

20       MR. RITHOLTZ:  I'm not disagreeing with that, Your

21  Honor.  I'm just saying that we should -- it's time to proceed

22  to that stage.  How we manage the case going forward from there

23  is a question that we can resolve with the Court and all the

24  parties and figure out what the best way to move forward is.

25  But right now on the reorganized debtors' proposal, we're going

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
47 of 99

1   to be in that place in six months and not having progressed at

2   all.

3            THE COURT:  Okay.  So whether it's all 760 of your

4   clients or only a handful of them, and if some of Mr.

5   Schwartz's clients -- again, I'm oversimplifying here.  We

6   might end up with a whole bunch or we might not.  But your

7   point is the debtors had plenty of time to implement its

8   procedure and now it's time to go to the next phase, which is

9   called claim objection.

10           MR. RITHOLTZ:  Yes, exactly.

11           THE COURT:  Okay.

12           MR. RITHOLTZ:  Exactly.

13           THE COURT:  That's fine.

14           MR. RITHOLTZ:  And it doesn't preclude -- to be clear,

15   it doesn't preclude further mediation, further negotiation.

16   That all can happen within that framework.  But not if we --

17           THE COURT:  But what if I follow a procedure -- well,

18   what if I denied today's motion, but Mr. Slack calls you up and

19   says we've selected so-and-so to be the mediator, you need to

20   have your client at the table next week.  Are you going to

21   participate?

22           MR. RITHOLTZ:  Well, I think we disagree that we would

23   be mandated by the procedure to do that, but that doesn't mean

24   we wouldn't.  And certain of our clients may very well be

25   willing to do that.  We'd have to ask them.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
48 of 99

1        THE COURT:  Okay.  Clarify for something that was a

2  little confusing to me in your papers.  Again, recognizing you

3  don't have just one client and you have 700 and some number of

4  them.  But it's really a smaller number because I can see that

5  there are a number of entities that probably have the same

6  management.  But my point is that I don't know -- what do you

7  mean when you're going to do an omnibus amendment?  You're

8  essentially going to amended proof of claim, right?  Or group

9  of proof of claim?

10        MR. RITHOLTZ:  Well, what we would intend to do is

11  file one proof of claim on behalf of all.  If it means we have

12  to do it as a formal process where we submit them separately

13  for each client, it would be the same document but submitted on

14  behalf all of them.

15        THE COURT:  Well, whether it's one document or 760

16  documents, there is one writing or there's one expression of

17  the desires and the positions taken by each claimant who you're

18  speaking for, right?

19        MR. RITHOLTZ:  Correct.

20        THE COURT:  Yeah.

21        MR. RITHOLTZ:  Correct.

22        THE COURT:  I have to tell you that, again, and this

23  goes back to some prior experience.  I was involved at the

24  rulemaking level, at the judicial conference for the creation

25  of the bankruptcy omnibus rule.  And the omnibus objection rule

1   has kind of taken many shapes and forms, but I've never had an

2   omnibus amendment to a claim.  So I mean essentially it's

3   like -- I got it now.  I mean, my point is, you clarified that

4   the rights of client A are going to be asserted as well as the

5   rights of client B and client C.  You're not going to do some

6   boilerplate that just sort of --

7          MR. RITHOLTZ:  No.

8          THE COURT:  Okay.  I got it.

9          MR. RITHOLTZ:  That's correct.

10          THE COURT:  All right.  Anything else?

11          MR. RITHOLTZ:  Yes.  So I just want to make the point

12   that reorganized debtors have criticized the rate at which

13   we've rejected offers.  But I think it's important to

14   understand that obviously not all claims are created equal.

15   And reorganized debtors have not told the court what percentage

16   of the potential damages exposure they've resolved, they've

17   only given numbers of claims.  A $1 claim is not the same as a

18   $1 million claim; and I think we all know that.  And as we

19   know, and as Your Honor mentioned at a prior hearing, they

20   picked off the low hanging fruit for a long time.  And they may

21   still be continuing to do that, we just don't know.

22          THE COURT:  Well, there's nothing wrong with that.  I

23   mean, that's perfectly okay.  Those little people that got

24   small amounts of money, or shares, or whatever they got; that's

25   a good thing.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
50 of 99

1        MR. RITHOLTZ:  Sure.  There's nothing wrong with it;

2  we agree.  It goes to the point that criticizing us for

3  rejecting offers when we could have large claims -- and

4  obviously we're not at liberty to talk about the offers, when

5  we could have very large claims and getting very lowball

6  offers, it's not a fair criticism.

7        THE COURT:  Well, you could criticize them for not

8  making better offers.

9        MR. RITHOLTZ:  Yes, exactly.  Exactly.

10        THE COURT:  Fair.  What's new?

11        MR. RITHOLTZ:  So I want to talk a little bit about

12  the actual merits procedures that reorganized debtors are

13  proposing.  It goes beyond asking us to wait in the back of the

14  line; they're actually extending the line to some extent

15  because they're adding procedural elements to a litigation that

16  are not found in the bankruptcy code.  And they're not

17  providing any objection deadline.  They're not telling the

18  court at what point this process will actually end.

19        Under both tracks in their proposed procedures,

20  they're saying either you're going to adopt PERA's complaint

21  and then there's going to be a motion to dismiss procedure,

22  which is not found in the bankruptcy code for contested matters

23  or they're saying --

24        THE COURT:  Come one, you know that there could be,

25  though.  I mean, I just got through saying it's essentially a

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
51 of 99

1  12(b)(6) process.  It can be done.

2         MR. RITHOLTZ:  No, I understand.  But they're saying

3  45 days before the extended objection deadline, there's first

4  going to be a motion to dismiss filed, which is unlikely to be

5  resolved by the time of the objection deadline, and only then

6  will decide when they need to object, because there's going to

7  have to be inevitably another motion to extend.

8         And then if you don't adopt the PERA complaint, then

9  we'll decide basically contemporaneously with a further motion

10 to extend what the procedures are.  So we're just not getting

11 any firm objection deadline and we're getting additional

12 procedural elements.  It's a merry go round to nowhere, which I

13 think we've said in papers before.

14        And in addition, they're saying in their procedures

15 that there will be a PSLRA stay, which does not apply in

16 bankruptcy.  There's no adoption in the bankruptcy code of the

17 PSLRA.

18        THE COURT:  No, that's true.  I agree that that's

19 true.  Somebody can ask the court to stay it if they want to.

20        MR. RITHOLTZ:  Yeah.  But the logic underlying the

21 PSLRA doesn't really apply here.  I mean, if reorganized

22 debtors were -- the PSLRA was built so that frivolous claims

23 would not result in ruinous discovery for defendants.  But if

24 the reorganized debtors really thought these were frivolous

25 claims, they could have let the district court decide the

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
52 of 99

1  motion to dismiss PERA's claim, and they chose not to in favor

2  of the bankruptcy.  It's another case where they're trying to

3  have their cake and eat it, too.  They want the civil

4  litigation procedures, but they want the bankruptcy protections

5  at the same time.

6          And just lastly, I'll just say and reiterate that the

7  RKS claimants' proposal to proceed to objections and claim

8  reconciliation is not going to add time and expense to claim

9  resolution here, which reorganized debtors claim it will.  It's

10  going to enhance the possibility of resolution and avoid

11  potentially the claims having to be resolved on the merits

12  because it will ensure that the parties' positions are out in

13  the open.

14          The equivalent in civil litigation would be if we were

15  trying to resolve these claims just based on a complaint being

16  filed without an answer.  We just don't know what the position

17  of the reorganized debtors is on our claims.  And so our view

18  is this will facilitate -- having them object will facilitate

19  future mediation and negotiations rather than discourage them,

20  and that the Court should therefore deny the debtors' motion

21  and adopt the RKS proposed procedures and end this merry go

22  round to nowhere.  Thank you, Your Honor.

23          THE COURT:  Thank you.  Ms. DiCicco, I'm sorry to keep

24  you waiting all this time, but

25          MS. DICICCO:  No worries.

1        THE COURT:  -- I forget what you've asked for.  But
2   you're up.
3        MS. DICICCO:  Thank you, Your Honor.  I'll try to be
4   as brief as possible.  I want to address --
5        THE COURT:  Take your time.
6        MS. DICICCO:  -- a few points.  Thank you.  I want to
7   address a few points that the parties have been talking about.
8   First, there's been a lot of emphasis by the debtors, and Your
9   Honor, that this is a voluntary process and that there's lots
10  of choice here.  There really isn't.  And I want to explain
11  that in more detail.  The three choices are you can adopt -- my
12  client can adopt the PERA complaint.
13       If we do that, he says there's no cost for that.
14  Well, sure, there might be no cost for that, except it assumes
15  that we as a council can just willy nilly adopt all of the
16  allegations in a 200-page complaint under Rule 11 purposes.
17  But let's put that part aside.  Then, no matter what, they said
18  they will move to dismiss for all the various reasons they want
19  to move to dismiss the complaint, just as there are pending
20  motions to dismiss in the district court.  We would then have
21  to oppose that motion to dismiss.  So that would be a
22  substantial cost on the legal claims based on a complaint that
23  we didn't even draft, right?  So there's cost to that.
24       THE COURT:  What if I got that objection and I decided
25  to use Judge Davila's rule of thumb, and I'd say, well, I'll

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
54 of 99

1  wait until he decides.

2          MS. DICICCO:  And then we're waiting -- and then we

3  have -- no one's deciding, right?

4          THE COURT:  Then he and I, we'll both retire and you

5  will be old enough to retire by then.  Okay.

6          MS. DICICCO:  No, you can't do that to us.  We cannot

7  handle that.  That will be too much, more delay.  So the issue

8  will be, there'll be cost -- even if it's cost free to accept

9  the PERA complaint, you then have to deal with the motion to

10  dismiss.  And the debtors, in their papers on page thirteen,

11  seem to imply that PERA will be the one opposing that motion to

12  dismiss.  Almost as if they are class counsel in this matter,

13  which going back to where we were a few minutes ago, they're

14  currently not.  And so, that's a little odd.  And so, I want to

15  give the Court a quick hypothetical.

16          Let's say we adopt and then there's a motion to

17  dismiss briefing, which by the way, is a very expensive and

18  circuitous class action.  And it will take a long time.  And

19  then the Court addresses it and let's say, hypothetically, you

20  grant the motion to dismiss and I haven't appeared and the PERA

21  counsel has argued the motion.  Can I appeal?  My claim has now

22  been denied but do I have a right to appeal the decision on

23  that?  And so I think it would then force people to have to

24  also appear in order to preserve the right to appeal and so it

25  makes a procedural mess.  So that's the first thing I wanted to

1  address.

2        The second part -- option is file your own complaint.

3  I don't have to then be bound.  I would just have my own

4  complaint.  But that causes tremendous expense for the

5  claimants, who after three years, after filing the form the

6  debtors asked us to file which didn't ask us to allege which

7  misrepresentations were in there, didn't ask us to allege

8  anything other than the treating data and based on the class

9  period that were set forth in the complaint in the District

10  Court.  So we've done everything they had asked and now, three

11  years later, they want to change the process.  So now that

12  would be additional cost to develop, investigate, prepare that

13  complaint, which frankly if we were going to do, we'd have to

14  start doing it now in order to comply with the schedule the

15  debtors' are proposing.  Then we then have to deal with all the

16  costs of the motion to dismiss there and potential appeals,

17  etc.  So those two processes are very -- are much more

18  expensive than the claims objection process, which is supposed

19  to be speedy and inexpensive.

20        And then the third option is you're going to say, "Ms.

21  DiCicco, you don't have to do any of that, just don't do

22  anything.  Stand on your original proof of claim."  But they've

23  made clear that they are going to move to dismiss on that.  So

24  they aren't planned to make an objection.  They claim to file

25  an omnibus motion to dismiss for everybody who doesn't do that.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
56 of 99

1      THE COURT:  Oh now, come on.  Wait, I got to stop you.

2  You're just playing with terminology here.  The motion to

3  dismiss is no different from an objection to the claim.  The

4  claim is my reported decisions and lots of literature  -- I

5  mean the scholarship says, "a proof of claim is analogist to a

6  complaint" and so a proof of claim is like a complaint and you

7  respond to a complaint by an answer or a 12(b)(6) motion in the

8  Federal Court.  So if they object to the claim, it's because

9  the proof of claim fails to state a claim.  So what's new about

10  that?  That's something -- if Mr. Slack calls it a motion to

11  dismiss by say, "Mr. Slack we're going to call it an objection

12  to claim." Now what happens at the hearing?

13      MS. DICICCO:  Well with an objection to claim, it's

14  their burden.  This is part of the burden shifting that

15  we're --

16      THE COURT:  No it's not their burden.  It's your

17  burden until you have a prima facie case.

18      MS. DICICCO:  It's their burden to demonstrate why my

19  claim is lacking.

20      THE COURT:  Okay.

21      MS. DICICCO:  And they have to bring forth those

22  arguments.  Now, he'd say, "Well I'm just going to argue that

23  since you filed the form that I asked you to file, that wasn't

24  sufficient."  So it seems rather unfair, now three years later

25  after doing what they asked us to do on the form that was put

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
57 of 99

1   forth by them, that now we now have to have an actual full-

2   blown complaint in order to assert these claims.

3         THE COURT:  Okay, so if Mr. Slack doesn't object, he

4   shows up at the status conference and says, "We're ready to go

5   to trial."  And I say to you, "Ms. DiCicco, when are you ready

6   to put on your prima -- prove your case."  You have the burden

7   to prove your case.

8         MS. DICICCO:  And then --

9         THE COURT:  And you're going to say, "Oh, well we have

10  to take some discovery," right?

11        MS. DICICCO:  Correct.

12        THE COURT:  So guess what?  Aren't we right back into

13  the same situation?

14        MS. DICICCO:  We are.  But Your Honor, that might

15  point -- first, two things.  One is the choice issue is this

16  isn't really voluntary because by forcing this process earlier,

17  we're shifting that back to us and those costs to us and it's

18  really designed to get all of these parties to go away by way

19  of a settlement.

20        THE COURT:  But look, if I were to deny Mr. Slack's

21  motion today, Mr. Ritholtz says he's going to amend.  You don't

22  have to tell me what you're going to do.  But let's just assume

23  that I deny Slack's motion and he then -- you either amend your

24  proof of claim because you think that's the right thing to do

25  or he objects.  So let's assume he objects saying there's no

1   basis for liability.  So now aren't we in the -- where are we
2   now?  He has challenged there's no -- on the face of it, you
3   haven't established a basis for liability.
4           MS. DICICCO:  Well Your Honor, now we're to my next
5   point.  That was a perfect segway.  The answer to your question
6   is, this is short circuiting the process.  So as Mr. Slack
7   noted, my clients are currently negotiating.  The process
8   should be renegotiated until we're not negotiating.  We do a
9   mediation and then he files an objection.  What the schedule
10  that the debtors have proposed under these merits procedures
11  would cut that short, because it's now June 7.  We're not done
12  with the negotiating.  There has been no attempt to schedule a
13  mediation yet and so we'll never have that mediation.
14          THE COURT:  Well it's going to happen if I deny is
15  motion.  Period.  Then what happens?
16          MS. DICICCO:  Then we would continue.  We're prepared
17  to continue under the ADR procedures.
18          THE COURT:  You know, keep in mind, I don't want to
19  have --
20          MS. DICICCO:  Sorry.
21          THE COURT:  -- catastrophe on June 7th by having a
22  June 30th deadline.  So let's assume that at least I extend the
23  deadline to object.
24          MS. DICICCO:  Right.
25          THE COURT:  But even if I don't.  Even if he's forced

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
59 of 99

1 to object, you can still negotiate.  You can still mediate.

2 You can do all those things and you don't have to plate

3 anything.

4          MS. DICICCO:  Your Honor, my concern is this.

5          THE COURT:  I heard what you're saying.  Look, you

6 told me that Mr. Slack's choices are do PERA, or clone PERA, or

7 file your own.  Those are both acceptable from your point of

8 view and I get it.  And so my response then is, okay if I tell

9 Mr. Slack good-bye, we're going with the claims process the way

10 it's written, again leaving aside the June 30 deadline, which

11 may be a little bit too tight for everybody.

12          MS. DICICCO:  Uh-huh.

13          THE COURT:  You're going to mediate.  You're going to

14 negotiate and if that's successful, fine.  If it's

15 unsuccessful, we have to -- he has to object and you have to be

16 ready to figure out what you want to do next.

17          MS. DICICCO:  Your Honor, I agree with everything

18 you're saying relating to the ADR procedures that are currently

19 in place.  But our main objection is to these litigation

20 procedures, which attempt to graph in some kind of hybrid class

21 action --

22          THE COURT:  Okay.

23          MS. DICICCO:  And adversary proceeding that isn't part

24 of the process and we think --

25          THE COURT:  Okay, I got it.

1          MS. DICICCO:  -- hurts and harms us.  So that's our

2   main concern.

3          THE COURT:  So you, Oregon, is willing and can live

4   with, the current procedure, right?  I take it you don't --

5   well didn't ask you, you don't object to us continuing an

6   extension of as is, do you?

7          MS. DICICCO:  An extension of the period, no?

8          THE COURT:  Just to the deadline.  I mean June 30th --

9          THE COURT:  The deadline, no.  But we're opposed to --

10  we're very much opposed to the procedures that he wants to put

11  in place.

12         THE COURT:  Okay.

13         MS. DICICCO:  In our papers we actually proposed a few

14  modest modifications to the ADR procedures, which are designed

15  to give us the off ramp.

16         THE COURT:  No, I know you object and I didn't ask Mr.

17  Slack.  I'm not sure I'm persuaded that you -- I should change

18  the options under the mediation.  Again, the company is paying

19  for the mediators and you're getting -- anyway, I don't want to

20  get into that.  Your point is in the papers and I understand

21  it.  I understand from our colloquy here what's the major

22  concern for your clients.  So go ahead and add anything else

23  you want to add.

24         MS. DICICCO:  Yes, the only thing I wanted to finish

25  with is I think the process that this will come to at the end

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
61 of 99

1  of the ADR procedures, may very well call for this sort of

2  class process that we're talking about.  So I think the idea of

3  whether we have a 723 motion, I'd favor that.  I think that's a

4  welcome -- I think that would be a good solution to try and

5  bring all these things together.  That's the efficiency of a

6  class action that you would have.  And now that is perfectly

7  fine now that the claims have been reduced.  But there's still

8  a lot of claims to be managed and I think, in terms of the

9  resources of the parties and the Court, we would be better off

10 if we went down that road.  But today, the main concern is that

11 these other procedures, which sort of morph the process, should

12 be denied.

13          THE COURT:  Okay.  I got it.  Thank you very much.

14          MS. DICICCO:  Thank you.

15          THE COURT:  Mr. Slack.  Oh wait, Mr. Schwartz, did we

16 cover everybody?  Got all your colleagues?  Will you counter

17 for everybody?  Well if there's a lawyer who expected to make

18 a --

19          MR. SCHWARTZ: We got everybody, Your Honor, I'm sorry.

20          THE COURT:  Oh, okay.  Will you -- I'm sorry to take

21 so much time here.  You were nice enough to coordinate with

22 your fellow opponents here and I just want to make sure we got

23 everybody accounted for.

24          MR. SCHWARTZ:  Yes, Your Honor.  We do.

25          THE COURT:  All right, Mr. Slack, you have time to

1  reply.

2          MR. SLACK:  Thank you, Your Honor.  So let me start

3  with the extension as opposed to the merit procedures.  I'll

4  deal with those a little separate even though they come

5  together at some point.

6          The first is, is that it's certainly our position, and

7  I think the Court recognizes, that the objection deadline

8  should be extended for at least everyone who didn't object.

9  And the Court's not going to want thousands of these objections

10 filed in the next two weeks or even in the next month to people

11 who haven't objected and who are willing, and quite frankly

12 able, to go through the securities process.  So then the

13 question becomes what to do with the objectors and the issue of

14 what to do with the objection deadline for them.  And I think

15 Your Honor recognized an important point, which was even under

16 sort of the RKS model, their proposing that they do sort of a

17 modified version of what we did and then we would have some

18 time, obviously to object after that.  So there's going to need

19 to be, no matter how you view these procedures, some amount of

20 time and some amount of extension.  And what we would say, Your

21 Honor, is that there's a real advantage we believe, and we

22 still believe having heard everybody, to allowing two things

23 that are very critical.  One is to allow the securities

24 procedures to be exhausted and second, Your Honor, and this I

25 think is really important, is to put every claimant on the same

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
63 of 99

1  footing. So it doesn't matter if you're like RKS and you say,

2  "We're done.  We were early whether we pushed forward, or

3  whatever.  We're done."  But there are claimants who aren't

4  done yet and the fact is, is that when you asked counsel for

5  RKS, "Well what's going to happen when everybody comes in?"  I

6  think there was a real recognition that, that's going to happen

7  and the answer was, "Well we're all going to sit down and

8  figure it out then."  And here's the point, Your Honor, that I

9  think is very clear from our procedures, okay?  Is that, that's

10  what we're saying.  What we're saying, let's put everybody on

11  the same schedule, okay?  And then let's figure out how we deal

12  with this.  And I think the difference between what we're

13  suggesting and what RKS is suggesting is a finite matter of

14  months.  And I would tell you the other big advantage to what

15  the debtors are proposing is that from our perspective, and I

16  don't think there's any question about this, if we continue to

17  let the procedures work, they've been working pretty

18  dramatically and I don't think anybody said anything else.  I

19  mean, when you're talking about 300 settlements a month, this

20  is all working.  It's working the way it was intended to work.

21  We're going to get to a whole lot more settlements and now that

22  the mediation procedures are in place, what that's going to

23  mean if we actually resolve a bunch of players, is that when we

24  sit down and talk, we're not going to be forcing people to come

25  in and try and intervene and the like early.  What you're going

1　to do is those people who are resolved are going to be resolved

2　and quite frankly, we're willing and that's the whole point

3　here.  To turn to litigation and work out a process

4　collectively with RKS.  We're willing to meet with them and

5　work with RKS.  But the point is that our procedures actually

6　do what RKS has said, to some degree, but they do it in a more

7　coordinated fashion that's not going to force people to come in

8　and litigate before the procedures are exhausted.

9　　　　　Now with respect to a couple of other points before we

10　go to the couple of things from Oregon.  With respect to the

11　new procedures, there are two real points in responding to

12　PERA.  Number one, Your Honor, is there are no due process

13　concerns for PERA.  PERA doesn't have to make any choice under

14　these procedures.  In fact, they're excluded from the

15　procedures.  They've already in their proof of claim adopted --

16　they've said specifically they're adopting their own complaint.

17　So there are no due process concerns for PERA at all.  So what

18　PERA is really saying if you look at their pleading, their

19　pleading is securities claimants and what they're essentially

20　saying is they're making this objection on behalf of other

21　people, not themselves.  And the Court's already told PERA that

22　they don't represent these other folks in the bankruptcy.  But

23　fine, let's turn to the due process argument that PERA's

24　counsel talked about.

25　　　　　THE COURT:  Before we talk of due process, what if

1    Judge Dablow decides he's going to -- he's not going to stip

2    any -- and tomorrow as I implement your procedure to PERA

3    complaint in the bankruptcy court and tomorrow Judge Dablow

4    grants the motion to dismiss as to the non-debtor defendants,

5    what happens to the PERA bankruptcy version before me?  Do I

6    get to deny a motion to dismiss or do I have to file them?

7    What is the outcome from a case -- from appearance of due

8    process?

9            MR. SLACK:  Well sir, there's two different issues

10   because there's no class certified in that case, there's just

11   (indiscernible) it's certainly going to be collateral estoppel

12   as to PERA itself.

13           THE COURT:  Okay, but it's more importantly, it means

14   a bunch of officers and directors are out of the lawsuit.

15   But --

16           MR. SLACK:  Well at least for those particular claims,

17   there are --

18           THE COURT:  Yes, I understand.

19           MR. SLACK:  -- a motion to dismiss in the District

20   Court is not a complete motion.  But there are particular

21   claims and particular securities that it applies to.  And so --

22           THE COURT:  But those defendants aren't before the

23   bankruptcy court even if we adopt the PERA complaint so what's

24   weird about this proposal is that last time I checked, PG-E is

25   not an active defendant in the PERA complaint.  And the

1    officer/directors are not players in the bankruptcy that you

2    want me to import the PERA complaint into the bankruptcy court

3    and make rulings on the merits of it.  I found that to be

4    strange.

5              MR. SLACK:  Well let me just -- let me say this, Your

6    Honor, and I think if you listen to Mr. Schwartz, where he

7    started it was really telling.  What he said was that he

8    anticipated based on the process that folks were adopting the

9    PERA complaint as a result of the process that was put in

10   place.  I think, Your Honor, the idea is that what we're saying

11   is, is that people need the ability to choose to do that if

12   that's what Mr. Schwartz and his clients want to do, that's

13   fine.  They can put in a pleading that just says, "Look, we

14   adopt PERA."  Right?  They can always do that.  So all we're

15   saying, Your Honor, is cause if you do remember, which I know

16   you do, Your Honor, when we did the extended bar date, that was

17   based on the class in the PERA complaint.

18             THE COURT:  No, I know.  I know it was.

19             MR. SLACK:  And so --

20             THE COURT:  And as for malpractice purposes, we

21   created a class for -- our claims were old and people who fell

22   outside that time limit and they're out.  They're out of the

23   money, right?

24             MR. SLACK:  That's right.  That's right, Your Honor.

25   So the only point that we're making is, we wanted to put an

1 option, again it's purely voluntary, where somebody can adopt

2 the -- which, again, I think they could do now. They could say

3 look there's this complaint filed, we adopt it and it gives

4 folks that don't want to spend the money, the ability to

5 settle, right --on their own. And look, one huge advantage for

6 the -- everybody who has settled up till now, without having a

7 class, is they haven't had to pay class counsel, right?

8 They're getting their money. They're getting it early and

9 they're not paying class counsel. And so --

10         THE COURT: Presuming their -- they may be paying

11 their own counsel.

12         MR. SLACK: And maybe they are and maybe they are.

13 That's exactly right, but maybe they're not. Maybe they don't

14 have counsel. Maybe they have a financial advisor. Maybe they

15 are paying their own counsel but they're not paying him the

16 equivalent of twenty or twenty-five or thirty percent. So --

17         THE COURT: Well Mr. Slack, in my world low hanging

18 fruit is usually in small lousy apples anyway. It's not the

19 big tasty ones that are up on the higher branches. So low

20 hanging fruit has a practical aspect to it also.

21         MR. SLACK: Yes, well, I'm going to say this, Your

22 Honor. I think it's really unfair to keep talking about low

23 hanging fruit. I will tell you, Your Honor, we've made offers

24 to people who have potentially one-hundred-dollar damages

25 100,000-dollar damages and over 1,000,000 dollars in damages

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
68 of 99

1   and we settled with people in each of those categories.

2          THE COURT:  Good.  Keep up the good work.

3          MR. SLACK:  This isn't -- yes, and we're going to try

4   Your Honor.  And the fact that we think it will be successful.

5   But the point is, is that this process has worked and will

6   continue to work if it's given the time to work.

7          THE COURT:  Okay, I got it. I know.  I understand.

8          MR. SLACK:  You know a couple of other points that I

9   think are important here about the PERA complaint, about --

10  with respect to the

11         THE COURT:  I'll tell you what I -- you've appeared

12  before me many times and you always put on excellent arguments

13  but I'm going to cut you off.

14         MR. SLACK:  Okay.

15         THE COURT:  I'm simply not going to take your

16  recommendation here today and I'd be misleading you if the next

17  ten minutes could change my mind.  I've given lots and lots of

18  thought to this and so have you and so have all these other

19  counsel and you've given me a lot of stuff.  But I think in

20  fairness to you and in fairness to the process I don't want to

21  give you a false sense of security.  So I'm going to cut off

22  the argument and tell you a portion of my decision and a

23  portion of that I'm going to leave out.  I do feel strongly

24  that it's almost ironic that we're at this days away from the

25  third anniversary of the confirmation order and I don't

1 remember the actual date.  We have the first of the --

2          (sound lost)

3          MS. DICICCO:  Am I the only one who lost sound?

4          UNIDENTIFIED VOICE:  No, I lost it too.

5          MS. DICICCO:  Your Honor, We couldn't hear what you

6 said after the anniversary date, you went -- you froze.

7          THE COURT:  Oh, yes, okay.  Now my connection is

8 unstable.  Hold on.  Okay, Ms. Parada, can you hear me now?

9          THE CLERK:  Yes, I can hear you now, Your Honor.

10          THE COURT:  Okay, thank you for catching me up, Ms.

11 DiCicco.  I've reflected on the fact that we have coming up to

12 the third-year anniversary and I'm gratified that although the

13 securities case administration is completely different from the

14 fire case, that the fire victims, although they're unhappy with

15 the amount they've been paid, the numbers of them that have

16 been paid are a much better percentage and I think about the

17 complexities that have been done there and the question is well

18 why isn't this moving at a better pace?

19          And I reflect on lots of things, and I go back, did I

20 make a mistake by not taking PERA's example or request to

21 invoke the class action the first time or the second time, and

22 again, I'm not gloating or crying over spilled milk or blaming

23 anybody, but Mr. Slack, you were very much a proponent of what

24 I was persuaded to do, and I sort of feel that to change

25 courses back to this procedure or your version of it is a

1    disservice to the process that implicated and caused a number

2    of these creditors to engage counsel and do what they've been

3    doing as late as today.  So I think that -- and I wasn't

4    kidding, if Mr. Etkin wants to make a motion to reactivate Rule

5    23 7023, he can free to do so.

6         But I believed then, and I still believe that for a

7    lot of reasons, the bankruptcy claims process is preferable to

8    the class action process, particularly in the situation where

9    the plan in the PG&E case got confirmed so -- I won't say

10   easily or quickly, but relatively easily compared to others

11   mega cases of this nature.  And as I stated during the

12   argument, one of the things that makes me feel better about the

13   process is the fact that people (audio interference), and these

14   securities settlements can be implemented immediately.

15        And I think we have the tools in the toolbox under

16   the claims objection process to work.  Now, is it perfect, and

17   is it perfect if there are still 1,000 disputed claims that are

18   large and hotly contested?  No, it's not perfect.  But I'd like

19   to think I and the debtors, over the objections of PERA and its

20   counsel, chose a procedure that was more suited to the

21   bankruptcy world, and I still believe that's true.

22        Now, should there have been a pause?  It's not for me

23   to say there should have been or shouldn't have been, but there

24   was, and that slowed the thing up.  Should there have been a

25   delay appointing the mediators?  Again, not going to say it

1  should or shouldn't have been.  It may have slowed the process

2  down.  But obviously to the extent that PG&E is able to

3  negotiate settlements without incurring the expense of its own

4  counsel, perhaps more so or the mediators, those are legitimate

5  goals, but what I like about the process that has worked is

6  that whether they are little apples low on the tree or big

7  apples higher on the tree, that thousands of creditors have --

8  securities creditors have at least some closure by having their

9  claims allowed.

10         And I think to go back and go back and kind of circle

11  almost 360 degrees to something that sounds like and acts like

12  a class action in disguise is a bad choice, and I'm not

13  prepared to adopt it.  So I'm simply go -- for that reason, I'm

14  going to deny the debtor's motion insofar as implementing those

15  procedures.

16         Now, I've already stated in an order that I'm

17  certainly agreeing over because there are no objections to

18  implementing the modification to the mediation (audio

19  interference) in the two ways that was suggested, and I'm

20  extending by the six month as requested, the bar date, for the

21  general claims.

22         In terms of what's left there for in terms of what we

23  have on today's motion, I appreciate RKS's suggestions, but I

24  think they're just too tight and too confining, and I think Ms.

25  DiCicco has a better way in the way she expressed it, and I

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
72 of 99

1  think to lock people into a pleading that may get dismissed

2  doesn't actually involve the debtor, but involves people who

3  aren't before the Court is just an invitation to confusion and

4  disaster. And Mr. Ritholtz's suggestions are good, but perhaps

5  a little bit too confining.

6          So what I'm going to do -- and finally, Ms. DiCicco

7  makes the suggestion that I implement a change in the mediation

8  so that the claimants can cancel or call off the mediation

9  rather than the way it's designed. I'm going to stick with

10 what the debtor designed because that aspect of the procedure

11 has been -- seems to be working.

12          And frankly, with the mediators now engaged -- and

13 maybe there will be an expansion of the mediation board

14 panel -- I'm hoping that numbers of these things will pick up

15 promptly, but I'm not going to tie the debtor up in the next

16 seventeen days to file crazy objections or anybody else to

17 start worrying about things, and therefore, I'm not going to

18 adopt the RKS alternatives at this point.

19          What I'm going to do at this point is -- is -- and by

20 the way, Mr. Slack, I'm going to make a decision that affects

21 all the securities claimants, not just the objectors, at least

22 for the short term. Whether there should be a different

23 procedure just for these parties who formally objected or

24 something less for people that haven't, I'm not going to make a

25 decision on that today.

1        But I'm going to suggest for example that I will,

2   today, on this record, extend the bar date for the debtor to

3   file objections by sixty days, and in the next perhaps -- so

4   that means, at the end of August, rather than the end of June,

5   if I'm doing the math correctly.  And I want Mr. Slack and the

6   principal lawyers, like all of you around this call today and

7   others who wish to be involved, to put your heads together and

8   come up with a procedure that will deal with the kinds of

9   concerns that Ms. DiCicco was describing.

10        I don't want to have a situation where -- let's assume

11   further that between now and that deadline there are some

12   successful mediations and successful settlements, even without

13   the mediators, but I still anticipate there will be a number of

14   claims that are at issue, and any claimant between now and

15   whatever that date is who wishes to amend its proof of claim

16   can amend its claims just because the Rule is permitted and

17   there's no objections pending.

18        And I want the principal lawyers to meet and confer

19   and see if there is a consensus that -- and Mr. Ritholtz was

20   talking about this, too -- about an agreement as to what is a

21   reasonable period of time for the debtor to -- or any

22   amendments that the debtor -- excuse me -- for any amendments

23   that the claimants wish to make, not to file new complaints,

24   but simply to amend their proofs of claim as they see fit, and

25   for the debtors to have a meet and confer with counsel to come

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
74 of 99

1    up with a procedure that if the debtor chooses to object, we

2    then have a meet and confer among counsel to talk about a well-

3    organized case management session to have the first hearing.

4            So at that first hearing, I would hope there's already

5    been perhaps some protocols and discussions agreed to about how

6    we don't turn it into a crazy mayhem.  And I haven't thought

7    through what this would be like, and I want you, Mr. Slack, to

8    take the lead to use your good brain to think through

9    reasonable things, and let these other counsel work with you to

10   come up with something that might makes sense.

11           I hope that's clear.  But I suggest that we have just

12   a status conference on this issue, let's say, in three weeks,

13   three or four weeks from now, so that the order today would be

14   the motion is granted to the extent that it extends the

15   noncontroversial things we've talked about.  It's denied to the

16   extent that the debtor wishes to implement the procedures that

17   we've talked about, and that the deadline for the debtor to

18   object to securities claims is extended at least for sixty days

19   and -- sixty days more.  So it's essentially eighty days, and

20   that roughly in twenty or thirty days -- I'm jumping around

21   here -- four-weeks' range, something like that, we have a

22   conference to talk about whether there's been an agreement on

23   how best to make sure the debtor doesn't have to go crazy with

24   objections and people have to respond to lengthy objections on

25   a crazy basis.  In other words, a status conference to flesh

1  things out.

2          And I hope that's clear.  If it's not completely clear

3  it's because I've been making this up as I've been going

4  through it and thinking about it.  So I don't think it would be

5  constructive to have a huge debate now.  I am welcome to have a

6  further -- I won't say off the record.  I don't mean off the

7  record, but on the record, but a -- conference among you, as

8  the principal lawyers, and me to talk about how best to

9  implement these various things if that's your wish.

10          And Mr. Slack, I'm going to let you be the tour guide

11  to figure out when that should happen, and you can meet with

12  these counsel and talk about what's good.  So whether we have

13  an informal conference -- again, I say informal.  I don't mean

14  to imply anything other than on the record like we do

15  everything else, but it doesn't have to be something that a

16  bunch of pleadings get filed.  It can just be a conversation

17  like this as to what you think to do.

18          To the extent that you feel I should formally issue

19  orders because people may seek appellate review, I'm happy to

20  do what people want, if everybody is willing just to sit tight

21  for the next few weeks and let you all work together in a

22  constructive, collaborative manner, then I can sign an order at

23  some other date.  I'll leave that to you, Mr. Slack, to think

24  what's best so that the public at large and the thousands of

25  people that are following this case will know what we're doing.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
76 of 99

1      Okay?  Is that clear enough for starters, Mr. Slack?

2           MR. SLACK:  Well, I think we have some marching

3  orders.  I do want to make -- I do want to say two things,

4  which is I completely understand what Your Honor is saying.  I

5  would suggest for two reasons that I'd like the Court to at

6  least consider after this hearing making that sixty-day time

7  frame a little longer, and here's the two reasons why:

8           The mediation procedures allow a significant amount of

9  time, like forty-five days -- maybe forty-two, but forty-two,

10 forty-five to even implement a mediation, or you have to give a

11 lot of notice.  And so with respect to getting mediation

12 started and the like, two months is not going to be enough time

13 to have any progress with respect to the mediations at this

14 point.

15          The second thing, Your Honor, is -- and I think no

16 matter whether you make it an extra amount of time or not when

17 you go back and think about it, what I would say it's going to

18 take some time to develop this and work with folks, and we're

19 perfectly willing to do that, but I think given the amount of

20 people and the issues we have, I think it's going to take a

21 little more time than that.  So anyway, I leave you with that,

22 Your Honor, and I know that you'll think about that before the

23 order, but that would be our request.

24          THE COURT:  Well, I could ask for a show of hands, but

25 I'd rather what all of you do is talk to your colleagues or

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
77 of 99

1　whoever you want, and there can be an agreement that the sixty

2　could become some other number, but Mr. Slack, 60 does not mean

3　180, and Mr. Ritholtz might want 60 to be 30, and I'm just

4　trying to come up with something that will give the debtor and

5　the whole system in the bankruptcy context, not what I'll call

6　the 723 light PERA version, but the traditional bankruptcy

7　claims process to stay in place.

8　　　　　And it seems to me that if you discuss even extending

9　sixty to some other time among these principal counsel and we

10　have a status conference in four weeks, that solves the

11　problem.  I mean, it gives you -- that should be an easier

12　thing to talk about.  I've tried to make it clear, I'm trying

13　to stick with the process that we put in place and not let it

14　get changed too much.  Okay.  So but I'm also not saying, see

15　you in six months --

16　　　　　MR. SLACK:  Right.  And we understand --

17　　　　　THE COURT:  I'm accepting the argument that Mr.

18　Ritholtz and Mr. Schwartz made that -- again, if this isn't

19　obvious, I was impressed before and I'm impressed again about

20　the enormous amount of effort that these claimants and their

21　counsel have been put to also.  And it seems like to say, well,

22　we're going to go all back and toss all that and you're part of

23　a new class action -- or the debtor's version of it -- is not

24　the right way to go.

25　　　　　So I'm going around in circles, but for now, I'm not

1  going to issue a written order, but if there's a consensus

2  among all of you about it, I will.

3       Ms. DiCicco?

4       MS. DICICCO:  Yes.  Thank you, Your Honor.  On the

5  point of whether you enter an order now or later, I would

6  request that you enter it sooner, just because there are a lot

7  of people following the docket who think these procedures may

8  be put in place, and I think they should know that they won't

9  be because it may impact their negotiations with the debtors in

10  terms of pending offers and settlements.

11       THE COURT:  Well, would it be satisfactory -- again,

12  I'm -- and if somebody wishes to take an appeal, I would like

13  the appellate court have a better understanding of my thinking

14  other than the oral transcript.  But would you be satisfied if

15  I just issued something that said, for the reasons stated on

16  the record, the debtor's deadline of June 30th is extended to

17  August 30th for purposes of the securities claims objections.

18  Is something that simple, is that clear enough?

19       MS. DICICCO:  I think it can be short and sweet that

20  way, Your Honor.  I guess, the point I'm making is the

21  requested litigation procedures in the motion, the request for

22  that part has been denied.

23       THE COURT:  Mr. Slack, can you propose an order that

24  satisfies the notion of the public record reflecting what we're

25  doing without going into any detail, and circulate it with

1  these counsel anyway, and get their consent as to the form of

2  it.

3  　　　　　MR. SLACK: Yeah. We'll do that. And look, Your

4  Honor, I know this is not a -- either this procedure, there's

5  no sort of  no precedent for it, and we'll do it.

6  　　　　　I'm just going to say that from the debtor's

7  standpoint, we're going to go, we'll try to work out

8  procedures, but until we actually have that discussion and meet

9  with Your Honor, figuring out what we're going to have to draft

10  in terms of objections and how those are going to look like,

11  again, I think that sixty-day period is just not going to be

12  sufficient because we're not going to be able to really start

13  that work until we get -- we meet an confer and then we get

14  Your Honor's -- we meet with Your Honor and get your input. So

15  again, we --

16  　　　　　THE COURT: What if I just denied it today without a

17  (indiscernible), what would happen?

18  　　　　　MR. SLACK: Well, then you'd get 4,000 objections that

19  you -- that --

20  　　　　　THE COURT: Well, I'm not trying to --

21  　　　　　MR. SLACK: -- we'd all have to deal with I a very

22  short period of time, and then most likely would be, as we

23  said, they would be these just are simply insufficient, and I

24  don't think that's going to move the ball at all. So I think

25  Your Honor realizes that.

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
80 of 99

1    THE COURT:  Okay.  Look, your assignment is to

2  circulate with these counsel a simple order.  I'm going to have

3  Ms. Parada make the minute order reflect that the debtor's

4  motion is denied as to the litigation procedures.

5    It's granted as to the extension of the securities --

6  excuse me, as to the deadline for objections to securities

7  claims, and a formal order will follow, and then I'm going

8  to -- so that will just be a short docket entry, and then I'll

9  expect you to take the lead with these counsel for an order

10  that memorializes it for purposes of the public record beyond

11  the docket entry.  And I'll expect that you will circulate your

12  suggestion among counsel for a date that's convenient for

13  everybody in the four-week time period just to have the

14  conversation.  And believe me, I'm available.  Okay.

15    Anybody else want to be heard?  Okay.  Thank you all

16  for your time.  I appreciate the hard work on all sides, and

17  look forward to -- well, I guess I look forward to another

18  session with you.

19    MS. DICICCO:  Thank you, Your Honor.

20    THE COURT:  Ms. Parada, did you have a question?

21    THE CLERK:  Did you want to set a continued hearing,

22  Your Honor, or a status conference now?

23    THE COURT:  Well, Mr. Slack, do you want me to pin

24  down a date now, or do you want to discuss it with your

25  colleagues and other counsel and come back to Ms. Parada?

1          MR. SLACK:  Yeah.  I mean, we'll come back.  We'll

2     come back in sort of very short, short order.

3          THE COURT:  I mean, are regular PG&E calendar date

4     there on the Court's website, and I'd like to leave them on

5     there, but we can do it for -- we can set it specially if that

6     works.

7          MR. SLACK:  Yeah.  Okay.

8          THE COURT:  Thank you all for your time and

9     participation.

10          IN UNSION:  Thank you, Your Honor.

1                              I N D E X

2   RULINGS:                                    PAGE LINE

3   Motion denied as to litigation procedures;   80    4

4   motion granted for extension deadline for

5   objections to securities claims

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page
83 of 99

1                    C E R T I F I C A T I O N

2

3    I, Cathy L. Kleinbart, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5

6

7    *[signature: Cathy L. Kleinbart]*

8    _____

9    /s/ CATHY L. KLEINBART

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  June 8, 2023

16

17

18

19

20

21

22

23

24

25

**#**

**#207 (1)**
83:12

**$**

**$1 (2)**
49:17,18

**/**

**/s/ (1)**
83:9

**A**

**ability (2)**
66:11;67:4
**able (7)**
7:9,10;25:21;62:12;
71:2;79:12
**absolutely (1)**
42:9
**accept (2)**
23:23;54:8
**acceptable (1)**
59:7
**accepting (4)**
22:19,19,20;77:17
**accomplishing (1)**
20:7
**according (1)**
13:5
**accounted (1)**
61:23
**accurate (1)**
83:4
**accused (1)**
43:12
**acknowledged (1)**
43:4
**acted (1)**
29:9
**action (18)**
25:11;30:14;34:19,
25;36:22;38:3,18;
39:19;40:2,8;46:13;
54:18;59:21;61:6;
69:21;70:8;71:12;
77:23
**actions (1)**
40:1
**activate (1)**
39:15
**active (1)**
65:25
**actively (1)**
41:16
**acts (1)**
71:11
**actual (3)**

50:12;57:1;69:1
**actually (18)**
7:24;9:6;10:4;
19:13,14;21:12;24:1;
27:22;33:11;39:18,
20;50:14,18;60:13;
63:23;64:5;72:2;79:8
**add (5)**
23:18,19;52:8;
60:22,23
**adding (1)**
50:15
**addition (1)**
51:14
**additional (3)**
7:16;51:11;55:12
**address (4)**
28:1;53:4,7;55:1
**addresses (1)**
54:19
**adequate (1)**
36:17
**administration (1)**
69:13
**adopt (19)**
19:11;23:17;24:13;
26:17;27:22;34:24;
50:20;51:8;52:21;
53:11,12,15;54:16;
65:23;66:14;67:1,3;
71:13;72:18
**adopted (1)**
64:15
**adopting (3)**
31:22;64:16;66:8
**adoption (1)**
51:16
**adopts (1)**
26:9
**ADR (9)**
30:13;42:24;43:13,
20;45:7;58:17;59:18;
60:14;61:1
**advance (1)**
39:9
**advantage (6)**
20:8;21:12,21;
62:21;63:14;67:5
**advantages (1)**
22:13
**adversary (1)**
59:23
**advisor (1)**
67:14
**affects (1)**
72:20
**again (34)**
10:16,22;11:15;
16:18,20;17:18;
18:16;22:10;25:7;
26:24;28:4;30:4;
33:22;34:7,14;37:7;
45:10;46:12,19;47:5;

48:2,22;59:10;60:18;
67:1,2;69:22;70:25;
75:13;77:18,19;
78:11;79:11,15
**against (5)**
24:16;30:18;31:3,4;
32:5
**agent (1)**
25:16
**aggressive (1)**
5:22
**ago (8)**
5:19;9:24;12:1;
13:13;18:9;30:12;
44:16;54:13
**agree (10)**
16:3;20:21;21:6;
27:22;42:20,21;45:4;
50:2;51:18;59:17
**agreed (7)**
23:2,17,17;27:18;
41:12;43:8;74:5
**agreeing (2)**
23:21;71:17
**agreement (6)**
11:23;23:4;43:10;
73:20;74:22;77:1
**agrees (1)**
14:20
**ahead (7)**
12:13;13:7;17:12;
18:11;24:8;30:9;
60:22
**Aitken (1)**
37:23
**allegations (1)**
53:16
**allege (2)**
55:6,7
**allocate (1)**
23:4
**allow (5)**
9:16;19:2;38:9;
62:23;76:8
**allowed (5)**
12:19;13:22;22:12;
33:17;71:9
**allowing (1)**
62:22
**allude (1)**
31:9
**almost (6)**
34:21,24;46:11;
54:12;68:24;71:11
**alone (4)**
11:17;34:17;36:19;
38:19
**along (1)**
19:16
**alternative (2)**
42:21;44:1
**alternatively (1)**
20:18

**alternatives (1)**
72:18
**although (4)**
6:4;24:12;69:12,14
**always (2)**
66:14;68:12
**amazed (1)**
9:22
**amend (26)**
15:6,7,8,11,19;
16:1;19:11;20:1,4,19;
26:8,8;33:3,5,13,13;
42:1,15;44:17;46:18,
18;57:21,23;73:15,16,
24
**amended (5)**
14:21;20:17;33:6;
44:20;48:8
**amending (3)**
15:24;33:7,15
**amendment (4)**
15:20;20:7;48:7;
49:2
**amendments (4)**
15:14,22;73:22,22
**amends (2)**
20:5;21:21
**among (5)**
74:2;75:7;77:9;
78:2;80:12
**amount (9)**
36:23;40:5;62:19,
20;69:15;76:8,16,19;
77:20
**amounts (1)**
49:24
**analogist (1)**
56:5
**and/or (1)**
5:17
**anniversary (4)**
34:21;68:25;69:6,
12
**answered (1)**
30:7
**anticipate (2)**
8:10;73:13
**anticipated (1)**
66:8
**apart (1)**
30:14
**apologize (1)**
5:2
**apparent (1)**
30:25
**appeal (6)**
28:12;29:16;54:21,
22,24;78:12
**appeals (3)**
29:1,3;55:16
**appear (3)**
3:8,13;54:24
**appearance (3)**

alternatives (1)
appearances (2)
3:15,17
**appeared (2)**
54:20;68:11
**appears (1)**
23:20
**appellate (3)**
28:18;75:19;78:13
**apples (3)**
67:18;71:6,7
**applies (2)**
26:25;65:21
**apply (2)**
51:15,21
**appointed (2)**
18:8;36:24
**appointing (1)**
70:25
**appreciate (2)**
71:23;80:16
**approach (1)**
30:20
**appropriate (3)**
11:16;15:20;31:10
**approved (7)**
9:15,23,23;22:5;
24:3,4,12
**approximately (3)**
6:6,10;22:9
**area (1)**
39:21
**argue (1)**
56:22
**argued (1)**
54:21
**argument (9)**
4:22;5:19;14:2;
18:11;24:10;64:23;
68:22;70:12;77:17
**arguments (4)**
11:25;25:13;56:22;
68:12
**around (4)**
30:12;73:6;74:20;
77:25
**aside (6)**
5:14;17:25;20:9;
44:18;53:17;59:10
**aspect (5)**
36:5,16,17;67:20;
72:10
**aspects (1)**
36:17
**assert (2)**
24:1;57:2
**asserted (3)**
24:2;30:18;31:3;
49:4
**assignment (1)**
80:1
**Association (1)**
5:5

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
85 of 99

**assume (11)**
4:7;8:16,18;13:18,
23;44:17,19;57:22,
25;58:22;73:10
**assumes (2)**
39:25;53:14
**assuming (1)**
15:21
**Atkin (1)**
39:14
**attempt (2)**
58:12;59:20
**attempted (1)**
16:21
**attempting (1)**
37:11
**attractive (2)**
22:16,16
**audio (6)**
16:6;18:1;24:20;
27:8;70:13;71:18
**August (2)**
73:4;78:17
**available (1)**
80:14
**avoid (4)**
17:14;19:19;33:15;
52:10
**aware (2)**
28:10,10
**away (3)**
33:2;57:18;68:24
**AZ (1)**
83:13

**B**

**back (27)**
10:21;11:5,8,24;
12:13;14:8,11;17:20;
21:7;26:7;33:22;
41:21;44:10;48:23;
50:13;54:13;57:12,
17;69:19,25;71:10,
10;76:17;77:22;
80:25;81:1,2
**bad (3)**
8:25;11:23;71:12
**Bail (1)**
14:7
**balance (1)**
23:13
**ball (1)**
79:24
**balls (1)**
34:13
**bank (1)**
25:7
**Bankruptcy (28)**
27:1;28:14;29:11,
23;31:15;33:7;37:6;
38:10;39:25;45:23;
46:12;48:25;50:16,

22;51:16,16;52:2,4;
64:22;65:3,5,23;66:1,
2;70:7,21;77:5,6
**bankruptcy-related (1)**
29:1
**bar (6)**
20:23;34:5;45:12;
66:16;71:20;73:2
**based (9)**
23:23;24:19;25:19;
33:25;52:15;53:22;
55:8;66:8,17
**bases (1)**
24:1
**basically (1)**
51:9
**basis (9)**
17:6,16;21:1;27:12,
16;31:11;58:1,3;
74:25
**bat (1)**
5:7
**become (2)**
30:24;77:2
**becomes (1)**
62:13
**begin (2)**
17:21;22:3
**behalf (7)**
3:19;5:4;23:11,12;
48:11,14;64:20
**beholder (1)**
35:17
**believes (1)**
35:16
**bellwether (2)**
16:5,6
**below (1)**
22:7
**bench (1)**
45:8
**benefit (3)**
33:25;34:14;37:8
**benefits (1)**
31:20
**best (5)**
33:15;46:24;74:23;
75:8,24
**better (8)**
42:21;50:8;61:9;
69:16,18;70:12;
71:25;78:13
**beyond (3)**
27:18;50:13;80:10
**big (5)**
22:13;40:23;63:14;
67:19;71:6
**binding (2)**
10:25;31:20
**bit (5)**
24:13;40:1;50:11;
59:11;72:5
**blame (2)**

17:22;34:11
**blaming (4)**
17:22;18:5;34:12;
69:22
**blanks (1)**
15:24
**blew (1)**
17:20
**blown (2)**
15:22;57:2
**board (1)**
72:13
**boat (1)**
14:22
**Bockius (1)**
4:14
**Bodnar (1)**
4:23
**boilerplate (1)**
49:6
**both (5)**
6:3;22:13;50:19;
54:4;59:7
**bottom (1)**
35:17
**bound (1)**
55:3
**brain (1)**
74:8
**branches (1)**
67:19
**break (1)**
26:9
**brief (1)**
53:4
**briefing (1)**
54:17
**briefs (1)**
28:17
**bring (3)**
3:13;56:21;61:5
**bringing (1)**
4:9
**brought (1)**
24:15
**built (1)**
51:22
**bunch (4)**
47:6;63:23;65:14;
75:16
**bundle (1)**
44:19
**burden (8)**
24:23;25:18;56:14,
14,16,17,18;57:6
**burdensome (1)**
16:4
**business (1)**
7:14
**buyer's (1)**
35:5

**C**

**cake (1)**
52:3
**calendar (1)**
81:3
**CALIFORNIA (2)**
3:1,19
**Call (9)**
3:3;19:19;28:24;
34:13;56:11;61:1;
72:8;73:6;77:5
**called (1)**
47:9
**Calling (3)**
3:5;19:20,23
**calls (2)**
47:18;56:10
**CalSTRS (2)**
38:22;46:1
**can (65)**
3:13;9:7,11;10:10;
11:21,22;14:7;15:8,
11,19;16:1,6,7,12,13;
17:24,25;18:19,19,19;
19:10;21:6;26:20,25;
28:24;33:3,13;38:10;
41:13;42:20;45:4,9;
46:5,8,9,23;47:16;
48:4;51:1,19;53:11,
12,15;54:21;59:1,1,2;
60:3;66:13,14;67:1;
69:8,9;70:5,14;72:8;
73:16;75:11,16,22;
77:1;78:19,23;81:5,5
**cancel (1)**
72:8
**candid (1)**
35:25
**capable (1)**
37:14
**care (1)**
36:18
**case (33)**
16:14;19:25;23:21;
24:25;25:1;27:13;
31:5,14;32:8;33:25;
37:7;38:16;40:8,10,
10,13;42:6;44:22,23;
46:5,9,22;52:2;56:17;
57:6,7;65:7,10;69:13,
14;70:9;74:3;75:25
**case-by-case (1)**
27:16
**cases (2)**
18:10;70:11
**catastrophe (1)**
58:21
**catching (1)**
69:10
**categories (1)**
68:1

**category (1)**
13:19
**Cathy (1)**
83:3,9
**cause (1)**
66:15
**caused (1)**
70:1
**causes (1)**
55:4
**certain (2)**
45:1;47:24
**certainly (4)**
46:13;62:6;65:11;
71:17
**certified (2)**
39:20;65:10
**certify (1)**
83:3
**challenged (1)**
58:2
**chance (2)**
20:19;40:9
**change (5)**
55:11;60:17;68:17;
69:24;72:7
**changed (1)**
77:14
**check (1)**
3:11
**checked (1)**
65:24
**Chevron (7)**
4:2;7:2;13:24;
23:17;27:21;37:16;
46:2
**Chevron's (1)**
23:19
**choice (6)**
31:22;32:1;53:10;
57:15;64:13;71:12
**choices (2)**
53:11;59:6
**choose (3)**
40:13;41:4;66:11
**chooses (1)**
74:1
**chose (2)**
52:1;70:20
**chosen (1)**
42:23
**circle (2)**
34:24;71:10
**circles (1)**
77:25
**Circuit (5)**
28:10,13,13,19;
29:17
**circuiting (1)**
58:6
**circuitous (1)**
54:18
**circulate (3)**

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
86 of 99

78:25;80:2,11
**circumstances (1)**
40:12
**civil (3)**
46:13;52:3,14
**claim (78)**
13:18,23,23,24;
16:7;18:18,21;19:4,5,
24;20:2,15,16;21:2,
21,23,24;24:3,11,15,
19,19;25:14,18,24,25;
26:19,23;27:3,5;
32:11,17,20;33:3,6,6,
7,17;38:9;40:14;42:2,
14;43:16;44:17,19,
19;45:9,12;46:16,16;
47:9;48:8,9,11;49:2,
17,18;52:1,7,8,9;
54:21;55:22,24;56:3,
4,5,6,8,9,9,12,13,19;
57:24;64:15;73:15,24
**claimant (8)**
11:10;21:18;27:11;
40:16;41:22;48:17;
62:25;73:14
**claimant-by-claimant (2)**
17:6,16
**claimants (36)**
4:14,20;7:6,7,16;
8:11;10:12;14:11;
16:18;17:5;22:14;
23:22;24:2;26:8,11,
17;31:12;32:4,24;
41:15;42:18,25;43:1,
7,7,9,9,12,14;55:5;
63:3;64:19;72:8,21;
73:23;77:20
**claimants' (1)**
52:7
**claims (85)**
6:2,7,8,11,12;7:10,
12,16;8:3,6,13;9:6,17;
10:25;12:8,18;13:11,
16,22;14:1,4;15:2,9,
11;16:10,21;19:13;
20:11,14,20,25;22:3,
4,6;24:2,11;30:18;
31:3,4,6,14;32:5;33:3,
20;34:2,6,6;35:15,18;
38:12,17;39:6;43:15;
44:18;46:14;49:14,
17;50:3,5;51:22,25;
52:11,15,17;53:22;
55:18;57:2;59:9;61:7,
8;65:16,21;66:21;
70:7,16,17;71:9,21;
73:14,16;74:18;77:7;
78:17;80:7;82:5
**claim's (1)**
45:14
**clarified (1)**
49:3
**Clarify (1)**

48:1
**class (34)**
25:11;30:14;31:13;
34:19,25;36:22;38:3,
3,6,18;39:19,20;40:1,
2,8,22;42:22;46:13;
54:12,18;55:8;59:20;
61:2,6;65:10;66:17,
21;67:7,7,9;69:21;
70:8;71:12;77:23
**clear (14)**
5:24;17:2;19:12;
35:10;42:1;47:14;
55:23;63:9;74:11;
75:2,2;76:1;77:12;
78:18
**clearly (1)**
31:18
**CLERK (5)**
3:4,11;4:9;69:9;
80:21
**client (11)**
4:18;43:5;44:3;
45:17;47:20;48:3,13;
49:4,5,5;53:12
**clients (15)**
6:19;7:2;13:24;
24:18;25:14;37:15;
39:14;44:6,19;47:4,5,
24;58:7;60:22;66:12
**client's (1)**
45:11
**clone (4)**
32:9;33:3,4;59:6
**close (1)**
24:7
**closure (1)**
71:8
**Code (4)**
23:24;50:16,22;
51:16
**collaborative (1)**
75:22
**collateral (1)**
65:11
**colleagues (6)**
28:24;29:6;40:1;
61:16;76:25;80:25
**collective (1)**
31:21
**collectively (2)**
10:11;64:4
**colloquy (3)**
31:1;44:16;60:21
**comfortable (2)**
38:25;40:21
**coming (4)**
4:6;13:6;34:24;
69:11
**commented (1)**
35:13
**comments (1)**
23:17

**company (1)**
60:18
**compared (1)**
70:10
**comparing (1)**
21:20
**compelled (1)**
12:10
**complained (1)**
18:8
**complaining (1)**
27:14
**complaint (41)**
14:19,20,21;18:19;
24:4;26:17;31:23,23,
25;32:9,17;33:4,4;
36:22,22;38:25;
50:20;51:8;52:15;
53:12,16,19,22;54:9;
55:2,4,9,13;56:6,6,7;
57:2;64:16;65:3,23,
25;66:2,9,17;67:3;
68:9
**complaints (2)**
9:18;73:23
**complete (1)**
65:20
**completely (7)**
11:9;20:21;21:6;
32:8;69:13;75:2;76:4
**complexities (1)**
69:17
**comply (1)**
55:14
**complying (1)**
42:24
**concede (1)**
27:4
**conceded (1)**
32:7
**concedes (1)**
33:1
**concern (6)**
40:6,7;59:4;60:2,
22;61:10
**concerned (1)**
25:6
**concerns (8)**
27:24;30:24;40:17,
18,20;64:13,17;73:9
**concession (1)**
37:20
**condition (1)**
42:2
**conduct (1)**
16:6
**confer (5)**
45:3;73:18,25;74:2;
79:13
**conference (18)**
13:25;20:11;21:25;
24:23;27:2;44:21;
45:6,9;46:4;48:24;

57:4;74:12,22,25;
75:7,13;77:10;80:22
**confining (2)**
71:24;72:5
**confirmation (3)**
34:22;38:1;68:25
**confirmed (1)**
70:9
**confusing (1)**
48:2
**confusion (1)**
72:3
**connection (5)**
5:19;29:3;31:13;
32:5;69:7
**consensus (2)**
73:19;78:1
**consent (4)**
32:2,3;40:7;79:1
**consented (3)**
34:1,7,10
**consequence (1)**
21:17
**consider (1)**
76:6
**consolidation (1)**
16:8
**constitutional (1)**
27:24
**constructive (2)**
75:5,22
**contemplated (1)**
11:24
**contemplation (1)**
24:4
**contemporaneously (1)**
51:9
**contested (2)**
50:22;70:18
**context (4)**
37:6;40:8,8;77:5
**continue (7)**
8:10,15;9:3;58:16,
17;63:16;68:6
**continued (1)**
80:21
**continuing (3)**
8:12;49:21;60:5
**control (3)**
16:7,13;36:16
**convenient (1)**
80:12
**conversation (3)**
28:17;75:16;80:14
**coordinate (2)**
25:22;61:21
**coordinated (3)**
14:18;15:3;64:7
**Corporation (1)**
3:6
**correctly (3)**
29:22;41:15;73:5
**cost (8)**

31:24;53:13,14,22,
23;54:8,8;55:12
**costs (2)**
55:16;57:17
**council (1)**
53:15
**counsel (32)**
3:8,12;5:17;6:18;
23:2;36:24;38:21,21;
54:12,21;63:4;64:24;
67:7,9,11,14,15;
68:19;70:2,20;71:4;
73:25;74:2,9;75:12;
77:9,21;79:1;80:2,9,
12,25
**counter (1)**
61:16
**counteroffers (2)**
43:20,21
**counterproposal (1)**
22:19
**couple (10)**
3:20;6:20;7:1;8:5;
9:1;12:3;28:9;64:9,
10;68:8
**course (3)**
9:4,14;18:6
**courses (1)**
69:25
**Court (225)**
3:3,4,7,12,22,25;
4:3,6,11,15,21;25:5:3,
6,11,21;6:14,17,24;
7:18,20,23;8:1,14,18,
20,23;9:14,20;10:6,
16;11:3,11,13;12:16,
18,24;13:1,8,10,21;
15:5,11,16,18,21;
16:6,23;17:4,10,12,
18;18:1,15;19:6,8,15,
17;20:1,4;21:14,17;
22:18,24;23:1,5,8,14;
24:6,17,22;25:3,5,24;
26:5,13,20;27:2,19;
28:3,8,16;29:2,4,5,15,
18,21;30:2,6,11,15,
19;31:5;32:4,4,7,19,
25,25;34:10,18;35:3,
7,9,10,12,13,20,22;
36:1,2,6,6,8,13,24,25;
37:13;38:7,9;39:7,9;
40:24;41:2,8,11;42:5,
11;43:22,25;44:14;
45:7,21,25;46:11,23;
47:3,11,13,17;48:1,
15,20,22;49:8,10,15,
22;50:7,10,18,24;
51:18,19,25;52:20,23;
53:1,5,20,24;54:4,15,
19;55:10;56:1,8,16,
20;57:3,9,12,20;
58:14,18,21,25;59:5,
13,22,25;60:3,8,9,12,

16;61:9,13,15,20,25;
62:7;64:25;65:3,13,
18,20,22,23;66:2,18,
20;67:10,17;68:2,7,
11,15;69:7,10;72:3;
76:5,24;77:17;78:11,
13,23;79:16,20;80:1,
20,23;81:3,8
**court-endorsed (1)**
32:22
**Court's (4)**
5:23;62:9;64:21;
81:4
**cover (2)**
29:11;61:16
**crazy (4)**
72:16;74:6,23,25
**created (2)**
49:14;66:21
**creation (1)**
48:24
**creditor (3)**
18:17;32:8,10
**creditors (4)**
16:1;70:2;71:7,8
**critical (3)**
10:9,18;62:23
**criticism (1)**
50:6
**criticize (1)**
50:7
**criticized (1)**
49:12
**criticizing (1)**
50:2
**cross (1)**
35:23
**crying (1)**
69:22
**current (1)**
60:4
**currently (4)**
29:16;54:14;58:7;
59:18
**cut (5)**
11:22;40:24;58:11;
68:13,21

**D**

**Dablow (2)**
65:1,3
**Dalia (2)**
29:19;30:3
**damages (4)**
49:16;67:24,25,25
**data (1)**
55:8
**date (14)**
20:23;34:5;45:13;
66:16;69:1,6;71:20;
73:2,15;75:23;80:12,
24;81:3;83:15

**Davila (3)**
30:22;31:14;32:5
**Davila's (1)**
53:25
**day (4)**
7:14;33:5;38:10;
39:2
**days (12)**
21:22;36:15;46:17;
51:3;68:24;72:16;
73:3;74:18,19,19,20;
76:9
**deadline (19)**
5:13;12:22;21:17;
50:17;51:3,5,11;
58:22,23;59:10;60:8,
9;62:7,14;73:11;
74:17;78:16;80:6;
82:4
**deal (9)**
39:15;40:23;41:2;
54:9;55:15;62:4;
63:11;73:8;79:21
**dealing (4)**
25:16;34:3;36:4;
39:6
**deals (1)**
40:20
**dealt (1)**
27:16
**debate (2)**
26:25;75:5
**debtor (28)**
22:17;23:20;26:2,
20;27:7;30:19,19;
31:4;32:2,16;34:1;
36:21;37:11;39:5;
44:20,24;46:15;72:2,
10,15;73:2,21,22;
74:1,16,17,23;77:4
**debtors (41)**
6:6,9;17:5;23:23,
25;24:10;25:18;
30:12;31:9,17,18;
34:7;40:12;41:17,22,
25;42:2,13,18,23;
43:12,19;44:3,5;45:3;
47:7;49:12,15;50:12;
51:22,24;52:9,17;
53:8;54:10;55:6;
58:10;63:15;70:19;
73:25;78:9
**debtors' (4)**
44:13;46:25;52:20;
55:15
**debtor's (7)**
26:2;28:18;71:14;
77:23;78:16;79:6;
80:3
**decade (1)**
37:24
**December (1)**
5:13

**decide (8)**
20:14;21:10;34:17;
40:9;46:9;51:6,9,25
**decided (1)**
53:24
**decides (3)**
39:14;54:1;65:1
**deciding (2)**
43:3;54:3
**decision (4)**
54:22;68:22;72:20,
25
**decisions (2)**
20:14;56:4
**decline (1)**
20:8
**deemed (3)**
12:19;13:22;33:17
**defective (1)**
32:20
**defend (2)**
16:12,12
**defendant (1)**
65:25
**defendants (4)**
29:10;51:23;65:4,
22
**defense (1)**
27:6
**definition (1)**
19:18
**degree (1)**
64:6
**degrees (1)**
71:11
**delay (3)**
42:23;54:7;70:25
**demonstrate (1)**
56:18
**denial (3)**
35:9,11;46:12
**denied (10)**
37:22;43:25;47:18;
54:22;61:12;74:15;
78:22;79:16;80:4;
82:3
**Dennis (1)**
3:5
**deny (16)**
8:15,23;10:21;
11:21;12:4;13:16;
17:23;33:2;36:11;
39:12;52:20;57:20,
23;58:14;65:6;71:14
**deposition (2)**
16:12;37:2
**depositions (2)**
14:16;16:12;33:21
**describing (1)**
73:9
**designed (4)**
57:18;60:14;72:9,
10

**desires (1)**
48:17
**despite (1)**
30:23
**detail (2)**
53:11;78:25
**determination (1)**
31:20
**develop (4)**
26:11;27:12;55:12;
76:18
**deviation (1)**
45:24
**dialog (1)**
8:15
**DiCicco (42)**
3:14;4:12,13,13;
23:13;52:23,25;53:3,
6;54:2,6;55:21;56:13,
18,21;57:5,8,11,14;
58:4,16,20,24;59:4,
12,17,23;60:1,7,13,
24;61:14;69:3,5,11;
71:25;72:6;73:9;78:3,
4,19;80:19
**difference (1)**
63:12
**different (13)**
14:14;15:2;16:4,15,
16;20:6,19,22;39:8;
56:3;65:9;69:13;
72:22
**differently (2)**
39:24;41:15
**difficult (2)**
16:3;18:5
**diminishing (1)**
37:16
**directors (3)**
26:3;29:24;65:14
**disagree (3)**
21:10;42:19;47:22
**disagreeing (1)**
46:20
**disallowed (3)**
20:17;27:5;45:14
**disaster (1)**
72:4
**discourage (1)**
52:19
**discovery (20)**
12:11;14:12,13;
16:8;20:19;24:25;
25:2,3,6,20,22,23;
26:7;33:21;36:16;
44:24;45:1,5;51:23;
57:10
**discuss (3)**
46:5;77:8;80:24
**discussion (2)**
18:4;79:8
**discussions (2)**
33:14;74:5

**disguise (1)**
71:12
**dismiss (24)**
29:9,12,24;30:17;
40:14;50:21;51:4;
52:1;53:18,19,20,21;
54:10,12,17,20;55:16,
23,25;56:3,11;65:4,6,
19
**dismissal (3)**
26:18,21;33:15
**dismissed (2)**
32:18;72:1
**dispositive (1)**
45:9
**dispute (1)**
28:20
**disputed (1)**
70:17
**disservice (1)**
70:1
**district (11)**
29:4,8;30:11,14,15;
31:5;36:24;51:25;
53:20;55:9;65:19
**docket (3)**
78:7;80:8,11
**document (4)**
16:4;37:3;48:13,15
**documents (2)**
14:15;48:16
**dollars (1)**
67:25
**done (11)**
14:16;17:16;20:24;
43:14;51:1;55:10;
58:11;63:2,3,4;69:17
**Doolittle (6)**
3:16,25;4:1,2;
23:16;37:16
**door (1)**
24:7
**down (10)**
21:5;22:7;26:10;
39:4;41:25;61:10;
63:7,24;71:2;80:24
**draft (2)**
26:17;38:24;53:23;
79:9
**drafting (1)**
31:24
**dramatically (1)**
63:18
**duality (1)**
22:11
**due (8)**
31:11;32:12;40:17;
64:12,17,23,25;65:7
**during (2)**
7:11;70:11
**duty (1)**
40:22

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
88 of 99

# E

**earlier (1)**
57:16
**early (4)**
33:25;63:2,25;67:8
**easier (1)**
77:11
**easily (3)**
39:5;70:10,10
**eat (1)**
52:3
**effectively (3)**
15:19;30:20;32:23
**efficiency (1)**
61:5
**effort (2)**
31:24;77:20
**efforts (1)**
20:10
**eighty (1)**
74:19
**eighty-three (1)**
6:11
**either (12)**
8:8;10:25;19:10;
23:23;26:17;32:9,16;
39:12;44:1;50:20;
57:23;79:4
**elective (1)**
37:12
**elements (2)**
50:15;51:12
**else (15)**
4:8,22;12:7,12;
14:9;20:9;26:9;39:14;
41:4;49:10;60:22;
63:18;72:16;75:15;
80:15
**emphasis (1)**
53:8
**emphasized (1)**
30:16
**Employees (1)**
5:5
**empty (2)**
8:21;10:17
**encourage (1)**
18:7
**encouraging (2)**
16:24,24
**end (10)**
26:23;39:2;44:2;
45:14;47:6;50:18;
52:21;60:25;73:4,4
**ended (1)**
22:6
**endorsed (1)**
33:1
**engage (5)**
7:9;17:7;43:1,13;
70:2

**engaged (1)**
72:12
**engineer (1)**
32:2
**enhance (1)**
52:10
**enormous (2)**
36:23;77:20
**Enough (6)**
41:6;54:5;61:21;
76:1,12;78:18
**ensure (1)**
52:12
**enter (2)**
78:5,6
**entered (2)**
7:8,13
**entertain (1)**
36:7
**entirely (1)**
18:23
**entities (3)**
3:12,23;48:5
**entry (2)**
80:8,11
**equal (1)**
49:14
**equivalent (3)**
32:10;52:14;67:16
**eScribers (1)**
83:11
**especially (2)**
27:23;31:9
**essentially (9)**
5:18;27:10;32:9;
45:22;48:8;49:2;
50:25;64:19;74:19
**established (1)**
58:3
**estoppel (1)**
65:11
**etc (1)**
55:17
**Etkin (46)**
4:16,25;5:2,4,4;
23:11;28:1,3,4,6,8,14,
23;29:3,13,16,19,25;
30:3,10;32:7,13,19,
21;33:10;34:12,20;
35:1,5,8,13,21,24;
36:9,11,14;38:5,8,11;
39:8,17,23;41:1,6;
42:21;70:4
**Etkin's (1)**
43:5
**even (24)**
7:14;10:10;11:21;
14:4;25:12;30:24;
34:3;37:6,18;38:13,
16;39:23;40:8;53:23;
54:8;58:25,25;62:4,
10,15;65:23;73:12;
76:10;77:8

**event (2)**
36:21;42:15
**everybody (23)**
5:6;8:8;12:7,12;
13:5,9;14:19,21,22;
21:6;25:6;55:25;
59:11;61:16,17,19,23;
62:22;63:5,10;67:6;
75:20;80:13
**everybody's (1)**
44:8
**everyone (3)**
34:16;44:9;62:8
**evidence (3)**
23:24;25:19,19
**exact (1)**
5:18
**exactly (10)**
13:14;14:13;25:5,9;
26:12;47:10,12;50:9,
9;67:13
**example (4)**
21:20;45:10;69:20;
73:1
**excellent (1)**
68:12
**except (6)**
16:15,17;34:16;
37:2;42:24;53:14
**exceptions (1)**
30:4
**exchange (1)**
43:9
**excluded (1)**
64:14
**excluding (1)**
7:6
**Excuse (7)**
4:21;7:18;10:21;
19:19,21;73:22;80:6
**exhausted (2)**
62:24;64:8
**exhausting (1)**
17:2
**existing (2)**
32:11;33:3
**expansion (1)**
72:13
**expect (5)**
8:4,6;23:5;80:9,11
**expected (4)**
4:22;25:9;27:16;
61:17
**expects (1)**
3:13
**expedite (4)**
13:3,4;21:5;41:23
**expense (3)**
52:8;55:4;71:3
**expensive (2)**
54:17;55:18
**experience (4)**
39:21,23;40:5;

48:23
**experienced (1)**
9:15
**expertise (1)**
28:6
**explain (1)**
53:10
**explicitly (1)**
43:20
**exposure (1)**
49:16
**expressed (1)**
71:25
**expression (1)**
48:16
**expunged (1)**
32:18
**extend (6)**
5:12;9:10;51:7,10;
58:22;73:2
**extended (6)**
20:23;51:3;62:8;
66:16;74:18;78:16
**extending (3)**
50:14;71:20;77:8
**extends (1)**
74:14
**extension (20)**
5:15,16,17,20,21,
24,25;6:1;7:11;8:7;
17:4;34:5;43:8,10;
60:6,7;62:3,20;80:5;
82:4
**extensive (1)**
22:5
**extent (6)**
9:21;50:14;71:2;
74:14,16;75:18
**extra (2)**
42:12;76:16
**extract (1)**
31:19
**extraordinary (1)**
24:14
**eye (1)**
35:17

# F

**face (2)**
27:10;58:2
**facial (1)**
27:9
**facie (1)**
56:17
**facilitate (2)**
52:18,18
**facing (1)**
37:19
**fact (10)**
11:16;22:2;24:2;
27:1;30:15;63:4;
64:14;68:4;69:11;

70:13
**facts (4)**
21:1;26:11;27:13;
40:10
**failed (1)**
17:20
**fails (2)**
46:16;56:9
**failure (1)**
26:18
**fair (3)**
40:4;50:6,10
**fairness (4)**
27:24;40:18;68:20,
20
**false (3)**
24:14;45:18;68:21
**far (1)**
29:9
**farther (1)**
43:14
**fashion (3)**
15:3;38:25;64:7
**fast (1)**
18:9
**faulting (1)**
22:5
**favor (3)**
20:16;52:1;61:3
**Federal (1)**
56:8
**feel (4)**
68:23;69:24;70:12;
75:18
**fell (1)**
66:21
**fellow (1)**
61:22
**few (12)**
6:5;7:14;8:7;10:7;
13:13;23:17;44:16;
53:6,7;54:13;60:13;
75:21
**fewer (1)**
14:24
**fiduciary (1)**
40:22
**field (2)**
33:13;39:21
**fierce (1)**
37:19
**fifteen (2)**
7:14;23:11
**fifth (2)**
43:8,10
**fifty-five (1)**
6:7
**fight (1)**
46:3
**figure (7)**
9:18;45:4;46:24;
59:16;63:8,11;75:11
**figuring (1)**

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
89 of 99

79:9
**file (24)**
12:18;13:11;14:19,
19,21;15:9,22;18:19;
20:8;32:9;36:15;
37:23;40:14;41:4;
48:11;55:2,6,24;
56:23;59:7;65:6;
72:16;73:3,23
**filed (13)**
5:15;7:25;13:18;
14:8;20:25,25;24:19;
51:4;52:16;56:23;
62:10;67:3;75:16
**files (1)**
58:9
**filing (4)**
31:23;33:6;34:6;
55:5
**fill (1)**
15:24
**finally (1)**
72:6
**financial (1)**
67:14
**find (1)**
45:15
**Fine (10)**
5:11;21:11;22:7;
29:5;45:13;47:13;
59:14;61:7;64:23;
66:13
**finish (1)**
60:24
**finite (2)**
15:4;63:13
**fire (2)**
69:14,14
**firm (1)**
51:11
**first (27)**
5:7;8:7;10:2,12;
12:4,5;18:20;19:2,3;
20:11;23:9;24:22;
33:24;34:23;43:6;
45:8;46:6,14;51:3;
53:8;54:25;57:15;
62:6;69:1,21;74:3,4
**fit (3)**
6:19;44:17;73:24
**flesh (1)**
74:25
**flip (2)**
37:20;39:11
**flush (1)**
36:20
**focus (1)**
32:14
**folks (10)**
6:21;7:4;8:25;
10:11;20:24;36:18;
64:22;66:8;67:4;
76:18

**follow (3)**
30:20;47:17;80:7
**followed (2)**
42:20,22
**following (2)**
75:25;78:7
**footing (1)**
63:1
**force (4)**
10:24;16:20;54:23;
64:7
**forced (2)**
42:25;58:25
**forcing (2)**
57:16;63:24
**foregoing (1)**
83:3
**forget (2)**
38:13;53:1
**form (7)**
20:25;24:11;25:14;
55:5;56:23,25;79:1
**formal (2)**
48:12;80:7
**formally (2)**
72:23;75:18
**forms (2)**
24:3;49:1
**forth (4)**
27:22;55:9;56:21;
57:1
**forty-five (2)**
76:9,10
**forty-two (2)**
76:9,9
**forum (1)**
33:9
**forward (14)**
9:2,10,14;12:9;
20:13;24:24;25:11;
42:4,17;46:22,24;
63:2;80:17,17
**found (3)**
50:16,22;66:3
**four (13)**
5:15;6:18;11:17;
12:5;13:15,25;14:1,
15;16:12,13;23:2;
74:13;77:10
**four-week (1)**
80:13
**four-weeks' (1)**
74:21
**frame (1)**
76:7
**framework (1)**
47:16
**FRANCISCO (1)**
3:1
**frankly (8)**
16:23;21:4;36:20;
37:5;55:13;62:11;
64:2;72:12

**fray (1)**
14:3
**free (2)**
54:8;70:5
**frivolous (2)**
51:22,24
**front (4)**
17:16;32:23;35:6;
40:13
**froze (1)**
69:6
**fruit (5)**
43:4;49:20;67:18,
20,23
**fruition (1)**
37:25
**full (2)**
28:6;34:24
**full- (1)**
57:1
**fundamental (1)**
40:17
**further (7)**
5:24;17:25;47:15,
15;51:9;73:11;75:6
**future (2)**
41:4;52:19

**G**

**gained (1)**
39:24
**gatekeeper (1)**
14:6
**gave (4)**
3:7;13:12;32:25;
41:11
**general (3)**
9:8;46:12;71:21
**gets (1)**
44:20
**given (7)**
6:25;39:18;49:17;
68:6,17,19;76:19
**gives (2)**
67:3;77:11
**giving (1)**
36:18
**glass (2)**
8:20;10:16
**gloating (1)**
69:22
**global (2)**
31:8,11
**goals (2)**
6:1;71:5
**goes (3)**
48:23;50:2,13
**Good (20)**
3:18;4:1,4,13,15;
9:25;10:1;18:7;19:8;
20:2;22:23;28:3,3;
49:25;61:4;68:2,2;

72:4;74:8;75:12
**good-bye (1)**
59:9
**Gotshal (1)**
4:5
**grant (3)**
10:22;39:12;54:20
**granted (5)**
5:21;34:22;74:14;
80:5;82:4
**grants (1)**
65:4
**graph (1)**
59:20
**gratified (1)**
69:12
**great (1)**
12:13
**Group (3)**
11:22,22;48:8
**groups (4)**
11:18,18;13:16;
15:7
**guess (7)**
14:5;38:11,14,22;
57:12;78:20;80:17
**guide (1)**
75:10
**guy (1)**
8:25

**H**

**half (2)**
8:21;10:17
**half-baked (1)**
37:12
**half-full (1)**
8:14
**hand (2)**
3:13;28:25
**handful (3)**
9:8;10:12;47:4
**handle (2)**
37:4;54:7
**handled (1)**
37:6
**handling (1)**
31:11
**hands (1)**
76:24
**hanging (6)**
11:13;43:3;49:20;
67:17,20,23
**happen (12)**
12:14;33:19,20;
38:15;43:25;45:25;
47:16;58:14;63:5,6;
75:11;79:17
**happened (4)**
17:8,12;34:1,15
**happens (1)**
11:1;39:25;46:19;

72:4;74:8;75:12
**good-bye (1)**
59:9

56:12;58:15;65:5
**happy (2)**
11:6;75:19
**hard (1)**
80:16
**harms (1)**
60:1
**Hartford (1)**
3:24
**hat (1)**
10:17
**head (1)**
10:19
**heads (1)**
73:7
**hear (4)**
23:6;69:5,8,9
**heard (4)**
3:9;59:5;62:22;
80:15
**hearing (9)**
17:4;18:20;36:8;
49:19;56:12;74:3,4;
76:6;80:21
**help (1)**
9:16
**Here's (3)**
10:1;63:8;76:7
**high (1)**
6:21
**higher (3)**
13:12;67:19;71:7
**hindsight (4)**
33:25;34:15;37:8,9
**hints (1)**
36:1
**hit (1)**
16:4
**Hold (5)**
12:16,18;17:18;
24:6;69:8
**Holders (1)**
12:8
**Honor (113)**
3:11,18;4:1,4,10,
13;5:2,10,12;6:25;
7:5;8:2,19;9:4;10:1;
11:7;12:2;13:3;14:6,
13;17:13;18:23;19:3,
9;20:24;21:10;22:25;
23:3,6,15,18,22,25;
24:3,12;25:2,8,12,21;
26:14;27:17;28:1,7,
15;29:13,25;30:10,15,
23;31:3,6,7,12;32:1,
13,22;33:10,24;34:12,
13;35:1,25;37:5;
38:11,14;39:2,23,25;
40:6;41:6,15,15;43:3;
44:4;46:21;49:19;
52:22;53:3,9;57:14;
58:4;59:4,17;61:19,
24;62:2,15,21,24;

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page 90 of 99

63:8;64:12;66:6,10,
15,16,24;67:22,23;
68:4;69:5,9;76:4,15,
22;78:4,20;79:4,9,14,
25;80:19,22;81:10
**Honorable (1)**
3:4
**Honor's (1)**
79:14
**hope (4)**
18:9;74:4,11;75:2
**hopefully (1)**
35:25
**hoping (1)**
72:14
**hotly (1)**
70:18
**huge (2)**
67:5;75:5
**humble (1)**
34:3
**hundred (1)**
8:5
**hurts (1)**
60:1
**hybrid (2)**
31:20;59:20
**hypothetical (4)**
24:18;41:3;45:11;
54:15
**hypothetically (1)**
54:19

# I

**idea (3)**
40:7;61:2;66:10
**identified (1)**
40:9
**idly (1)**
12:8
**immediately (1)**
70:14
**impact (3)**
30:18;31:2;78:9
**implement (6)**
47:7;65:2;72:7;
74:16;75:9;76:10
**implemented (2)**
11:24;70:14
**implementing (3)**
20:7;71:14,18
**implicated (1)**
70:1
**imply (2)**
54:11;75:14
**import (1)**
66:2
**important (11)**
7:5;9:13;16:17;
17:1,14;29:7;33:23;
49:13;62:15,25;68:9
**importantly (2)**

10:25;65:13
**impose (1)**
26:21
**impressed (2)**
77:19,19
**inappropriate (1)**
15:22
**included (4)**
20:24;29:24;43:20,
23
**includes (1)**
29:25
**including (1)**
12:11
**income (1)**
46:1
**incomes (3)**
46:1,1,2
**inconsistent (1)**
17:21
**incurring (1)**
71:3
**independent (1)**
9:15
**indicated (2)**
33:17;37:17
**indicates (1)**
39:6
**indication (1)**
36:6
**indiscernible (4)**
3:20;40:2;65:11;
79:17
**individual (1)**
39:6
**individualized (1)**
41:18
**individually (1)**
44:6
**indulging (1)**
41:7
**inevitably (1)**
51:7
**inexpensive (1)**
55:19
**informal (2)**
75:13,13
**information (2)**
25:15;43:17
**initial (1)**
45:6
**injunction (1)**
39:20
**input (1)**
79:14
**insist (1)**
31:22
**insofar (1)**
71:14
**instance (1)**
10:12
**Instead (3)**
17:8;25:11;43:2

**insufficient (2)**
42:15;79:23
**intend (1)**
48:10
**intended (2)**
39:6;63:20
**interests (1)**
37:2
**interference (6)**
16:6;18:1;24:20;
27:8;70:13;71:19
**interplay (1)**
40:3
**interrupt (2)**
6:14;17:19
**intervene (6)**
12:10;13:6,10,21;
16:21;63:25
**into (17)**
7:8,13;9:12;11:15;
16:20;17:20;27:2;
30:5,6;38:1;39:11;
57:12;60:20;66:2;
72:1;74:6;78:25
**introduction (1)**
23:11
**investigate (1)**
55:12
**investment (1)**
25:25
**invitation (1)**
72:3
**invoke (1)**
69:21
**involve (1)**
72:2
**involved (7)**
12:10;13:16;28:12;
38:15,17;48:23;73:7
**involves (1)**
72:2
**ironic (1)**
68:24
**Irwin (2)**
3:18;23:3
**issue (13)**
5:25;14:4;15:12;
20:12;29:10;30:21;
54:7;57:15;62:13;
73:14;74:12;75:18;
78:1
**issued (3)**
29:20;39:19;78:15
**issues (12)**
12:14;14:9,9;28:2;
34:8;37:10;40:20;
45:1,1,4;65:9;76:20

# J

**Jeffrey (1)**
4:19
**job (1)**

20:14
**join (2)**
18:19;37:18
**joining (2)**
14:3;46:3
**Jonathan (1)**
4:1
**judge (10)**
19:20;29:10,19;
30:3,22;31:14;32:5;
53:25;65:1,3
**judicial (1)**
48:24
**jump (1)**
13:7
**jumping (1)**
74:20
**JUNE (10)**
3:1;42:9;58:11,21,
22;59:10;60:8;73:4;
78:16;83:15

# K

**keep (6)**
13:14;44:15;52:23;
58:18;67:22;68:2
**kidding (1)**
70:4
**kind (7)**
21:1;30:22;37:12;
40:3;49:1;59:20;
71:10
**kinds (1)**
73:8
**Kleinbart (2)**
83:3,9
**knocked (1)**
19:25
**knowing (1)**
44:12
**knows (1)**
31:13
**Kramer (1)**
4:20

# L

**lacking (1)**
56:19
**lag (1)**
7:22
**laid (2)**
33:11;36:3
**large (4)**
50:3,5;70:18;75:24
**largely (1)**
7:10
**last (8)**
5:17,21;6:1;7:11;
17:4;39:18;40:6;
65:24
**lastly (1)**

52:6
**late (1)**
70:3
**later (3)**
55:11;56:24;78:5
**law (3)**
14:1;45:2,5
**lawsuit (1)**
65:14
**lawyer (4)**
27:4;39:25;40:11;
61:17
**lawyers (6)**
13:15;37:14;40:2;
73:6,18;75:8
**layers (1)**
12:3
**lead (3)**
36:24,24;74:8;80:9
**least (11)**
22:21;30:21;38:20;
39:4;58:22;62:8;
65:16;71:8;72:21;
74:18;76:6
**leave (6)**
8:2;30:7;68:23;
75:23;76:21;81:4
**leaving (4)**
17:25;20:9;44:18;
59:10
**left (4)**
9:18;11:5;39:1;
71:22
**legal (3)**
45:9,13;53:22
**legitimate (1)**
71:4
**lengthy (1)**
74:24
**less (1)**
72:24
**letting (1)**
9:13
**level (2)**
11:9;48:24
**Lewis (1)**
4:14
**liability (2)**
58:1,3
**liberal (1)**
15:24
**liberty (1)**
50:4
**light (1)**
77:6
**likely (3)**
25:20;44:7;79:22
**limit (3)**
16:7;17:19;66:22
**limitations (4)**
15:23;27:3,10;
45:11
**line (9)**

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01
91 of 99

10:20,21;11:8;13:9;
35:18;41:21;50:14,
14;82:2
**lip (1)**
17:1
**list (2)**
3:11;9:1
**Listen (2)**
40:24;66:6
**listening (1)**
30:25
**literature (1)**
56:4
**litigate (4)**
12:14;14:9;46:9;
64:8
**litigation (19)**
12:9;13:3,4;14:12;
18:15,18;22:12,15;
26:16,21;37:6;50:15;
52:4,14;59:19;64:3;
78:21;80:4;82:3
**little (12)**
8:20;40:1;48:2;
49:23;50:11;54:14;
59:11;62:4;71:6;72:5;
76:7,21
**live (2)**
28:20;60:3
**lock (1)**
72:1
**logic (1)**
51:20
**long (11)**
3:11;9:22;15:19;
21:14,15;24:24;37:7;
40:3;45:8;49:20;
54:18
**longer (1)**
76:7
**look (19)**
6:4;9:9;10:11;
19:22;20:13,23;21:9;
33:2;57:20;59:5;
64:18;66:13;67:3,5;
79:3,10;80:1,17,17
**looked (1)**
18:16
**looking (3)**
25:22;31:9;32:15
**looks (1)**
27:3
**loose (1)**
12:20
**lost (3)**
69:2,3,4
**lot (12)**
14:11;22:9;26:10,
10;35:19;53:8;61:8;
63:21;68:19;70:7;
76:11;78:6
**lots (6)**
8:24;53:9;56:4;

68:17,17;69:19
**lousy (1)**
67:18
**low (6)**
43:3;49:20;67:17,
19,22;71:6
**lowball (1)**
50:5

## M

**main (3)**
59:19;60:2;61:10
**maintain (1)**
11:19
**major (1)**
60:21
**majority (1)**
41:18
**makes (9)**
5:18;9:9,10,16;
10:15;54:25;70:12;
72:7;74:10
**making (7)**
7:15;50:8;64:20;
66:25;75:3;76:6;
78:20
**malpractice (1)**
66:20
**manage (2)**
46:9,22
**managed (1)**
61:8
**management (5)**
16:14;42:6;46:6;
48:6;74:3
**mandated (1)**
47:23
**mandatory (1)**
18:17
**Manges (1)**
4:5
**manner (1)**
75:22
**many (6)**
9:11,18;35:15;
42:19;49:1;68:12
**marching (1)**
76:2
**mass (1)**
10:9
**math (1)**
73:5
**matter (14)**
3:5;10:24;11:16;
22:1,2;27:1;45:2,4;
53:17;54:12;62:19;
63:1,13;76:16
**matters (1)**
50:22
**may (12)**
39:1;45:1;47:24;
49:20;59:11;61:1;

67:10;71:1;72:1;
75:19;78:7,9
**maybe (21)**
8:25;10:22,23,24;
20:4;21:25,25;26:7,8;
29:21;34:22;35:5;
42:7;67:12,12,13,13,
14,14;72:13;76:9
**mayhem (1)**
74:6
**mean (32)**
6:14;7:14;9:23;
11:3;13:12;15:8,13;
16:17;20:6;22:5;26:9,
24;28:19;34:10;
45:16;47:23;48:7;
49:2,3,23;50:25;
51:21;56:5;60:8;
63:19,23;75:6,13;
77:2,11;81:1,3
**meaning (1)**
6:11
**means (5)**
7:8;8:5;48:11;
65:13;73:4
**meant (1)**
18:23
**mediate (4)**
43:8;44:5;59:1,13
**mediated (2)**
17:15;41:19
**mediating (2)**
10:10,14
**mediation (29)**
9:15;10:8,25;17:15,
20,23,24;18:7;20:10,
10;21:23;24:18;
28:19;44:2,8;47:15;
52:19;58:9,13,13;
60:18;63:22;71:18;
72:7,8,13;76:8,10,11
**mediations (2)**
73:12;76:13
**mediator (2)**
22:20;47:19
**mediators (10)**
9:16,17,23;17:17;
18:8;60:19;70:25;
71:4;72:12;73:13
**meet (12)**
9:9;19:13,18;45:3;
64:4;73:18,25;74:2;
75:11;79:8,13,14
**mega (1)**
70:11
**members (4)**
31:13;38:3,5;40:22
**memorializes (1)**
80:10
**mentioned (1)**
49:19
**merit (1)**
62:3

**merits (18)**
9:12;12:9;14:17,17;
20:5;22:12,15;27:25;
31:1,19;32:22;33:12;
36:5,11;50:12;52:11;
58:10;66:3
**merry (2)**
51:12;52:21
**mess (1)**
54:25
**met (1)**
6:1
**Mexico (5)**
5:5;23:12;24:4;
26:17;27:23
**mic (1)**
28:4
**Michael (1)**
5:4
**might (15)**
9:1;17:22;22:4;
26:22;36:18;40:16;
41:4;44:15;46:11;
47:6,6;53:14;57:14;
74:10;77:3
**milk (1)**
69:22
**million (1)**
49:18
**mind (4)**
44:2,16;58:18;
68:17
**minute (1)**
80:3
**minutes (10)**
5:9;13:13;22:22;
23:11,12;41:13,14;
44:16;54:13;68:17
**misleading (1)**
68:16
**misrepresentations (1)**
55:7
**missed (1)**
45:12
**missing (1)**
9:5
**mistake (1)**
69:20
**model (1)**
62:16
**modest (1)**
60:14
**modification (2)**
39:13;71:18
**modifications (1)**
60:14
**modified (1)**
62:17
**moment (1)**
42:10
**money (7)**
22:15,18;38:24;
49:24;66:23;67:4,8

**Montali (1)**
3:5
**month (5)**
7:13;8:12;62:10;
63:19;71:20
**months (13)**
5:13,19;8:7;10:18,
23;14:24,25;18:3;
44:15;47:1;63:14;
76:12;77:15
**more (29)**
4:6;8:16;9:8,17;
10:18,23,25;18:3,6,
12;22:4,5;23:1;30:24;
39:5;42:4,17;44:7,10;
53:11;54:7;55:17;
63:21;64:6;65:13;
70:20;71:4;74:19;
76:21
**Morgan (1)**
4:14
**morning (7)**
3:18;4:1,4,13,15;
18:16;28:3
**morph (1)**
61:11
**most (4)**
10:10;33:16;37:5;
79:22
**motion (77)**
5:12,18,25;6:1;
7:15,25;8:15,24;
10:21,22;11:17,21;
12:5;13:17;17:23;
27:11;29:9,12,24;
33:2,24;34:2,23;35:6,
10,23,23;36:5,7,15;
37:14,22,23;39:12,12,
15;40:14;41:3,3;43:8,
11;44:1;46:15;47:18;
50:21;51:4,7,9;52:1,
20;53:21;54:9,11,16,
20,21;55:16,25;56:2,
7,10;57:21,23;58:15;
61:3;65:4,6,19,20;
70:4;71:14,23;74:14;
78:21;80:4;82:3,4
**motions (2)**
30:16;53:20
**move (9)**
19:16;41:21;42:4,
16;46:24;53:18,19;
55:23;79:24
**moved (1)**
34:7
**moving (2)**
24:13;69:18
**much (12)**
23:18;25:25;39:5;
46:14;54:7;55:17;
60:10;61:13,21;
69:16,23;77:14
**multiple (1)**

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
92 of 99

16:10
**must (1)**
23:23
**muted (1)**
28:5

## N

**name (1)**
4:18
**names (1)**
3:7
**narrowing (1)**
31:17
**nationwide (2)**
39:19,20
**nature (1)**
70:11
**nearly (4)**
6:8,11;7:6,13
**necessarily (2)**
12:20;44:4
**necessary (1)**
5:24
**need (13)**
14:21;21:1;24:25;
27:7,12;28:4;29:2;
33:11;35:9;47:19;
51:6;62:18;66:11
**negative (1)**
9:22
**negotiate (6)**
8:24;20:6;43:5;
59:1,14;71:3
**negotiated (1)**
10:5
**negotiating (4)**
41:17;58:7,8,12
**negotiation (1)**
47:15
**negotiations (4)**
7:3;8:10;52:19;
78:9
**nevertheless (1)**
24:12
**New (13)**
5:5;7:24;8:7;23:12;
24:4;27:23;32:10;
33:5;50:10;56:9;
64:11;73:23;77:23
**next (18)**
8:11;14:23,24;
21:19,22;38:10;41:8;
43:25;47:8,20;58:4;
59:16;62:10,10;
68:16;72:15;73:3;
75:21
**nice (1)**
61:21
**nilly (1)**
53:15
**ninety (1)**
10:4

**ninety-eight (1)**
17:9
**ninety-one (1)**
7:6
**Ninth (3)**
28:10,13;29:17
**nobody (2)**
13:6;39:10
**noncontroversial (1)**
74:15
**nondebtor (1)**
29:9
**non-debtor (2)**
31:4;65:4
**non-debtors (2)**
31:5;32:6
**none (1)**
19:13
**normal (1)**
42:6
**normally (1)**
33:16
**note (2)**
23:16,19
**noted (1)**
58:7
**notice (2)**
36:17;76:11
**notion (1)**
78:24
**notwithstanding (1)**
5:22
**Nowhere (3)**
23:25;51:12;52:22
**number (15)**
6:4,21;8:11,13;
13:12,13,16;38:13;
48:3,4,5;64:12;70:1;
73:13;77:2
**numbers (8)**
6:19;13:11;16:15,
17,17;49:17;69:15;
72:14

## O

**object (29)**
5:15;9:5,7;12:20;
13:17,22,23;19:14;
21:24;23:23;25:18;
33:9;40:15;42:3,7,14;
51:6;52:18;56:8;57:3;
58:23;59:1,15;60:5,
16;62:8,18;74:1,18
**objected (6)**
5:17;16:11;33:18;
43:7;62:11;72:23
**objecting (1)**
6:18
**objection (39)**
5:13,14;8:9;11:1;
12:19,22;13:18;16:7;
18:21;19:4;20:5,11;

24:19;25:19;26:23;
27:9;43:10;45:9;46:7,
11,15;47:9;48:25;
50:17;51:3,5,11;
53:24;55:18,24;56:3,
11,13;58:9;59:19;
62:7,14;64:20;70:16
**objections (24)**
5:15,16,22;8:4;
14:1;21:8;43:17;44:7,
13;46:8;52:7;62:9;
70:19;71:17;72:16;
73:3,17;74:24,24;
78:17;79:10,18;80:6;
82:5
**objectors (4)**
6:25;41:16;62:13;
72:21
**objects (4)**
32:20;44:20;57:25,
25
**observed (1)**
41:15
**obvious (2)**
24:3;77:19
**obviously (7)**
7:3;8:11;40:4;
49:14;50:4;62:18;
71:2
**occur (1)**
42:13
**odd (1)**
54:14
**odds (2)**
10:17,24
**off (12)**
30:11;33:15;40:25;
43:3;49:20;60:15;
61:9;68:13,21;72:8;
75:6,6
**offer (2)**
44:5,14
**offered (1)**
42:1
**offers (24)**
6:9,12;7:1,2,7,12,
15;8:4,6,9;10:3;17:5,
9;38:14;41:18;43:6,
18;49:13;50:3,4,6,8;
67:23;78:10
**officer/directors (1)**
66:1
**officers (3)**
26:3;29:24;65:14
**often (1)**
37:9
**oiled (1)**
11:5
**old (2)**
54:5;66:21
**omnibus (6)**
8:4,8;43:17;48:7,
25,25;49:2;55:25

**once (3)**
10:18;12:23;19:14
**one (42)**
4:8;9:13,20;13:18,
23,23,24;16:12;
18:12;19:9,20;22:13;
24:6,7,20;25:22;
27:19;31:10;32:10;
33:23;35:10;37:2,3,
17;39:17;40:6;44:18,
19,19;48:3,11,15,16,
16;50:24;54:11;
57:15;62:23;64:12;
67:5;69:3;70:12
**one-hundred-dollar (1)**
67:24
**ones (2)**
40:13;67:19
**one's (1)**
54:3
**only (20)**
5:15;8:3;10:13;
22:3;25:22;28:11;
31:2,10;37:2,3;42:2;
43:7;8;44:11;47:4;
49:17;51:5;60:24;
66:25;69:3
**oOo- (1)**
3:2
**open (1)**
52:13
**opinion (1)**
34:3
**opponent (1)**
37:19
**opponents (1)**
61:22
**opportunity (2)**
36:19;38:17
**oppose (2)**
35:22;53:21
**opposed (3)**
60:9,10;62:3
**opposing (3)**
11:17;37:14;54:11
**opposition (3)**
12:1;27:23;37:20
**opt (3)**
34:17;36:19;39:2
**option (5)**
32:10;44:2;55:2,20;
67:1
**options (1)**
60:18
**oral (1)**
78:14
**order (25)**
3:3;29:11;33:15;
34:22;36:10,10,11,14,
15;54:24;55:14;57:2;
68:25;71:16;74:13;
75:22;76:23;78:1,5,
23;80:2,3,7,9;81:2

**ordered (1)**
17:4
**orders (3)**
42:6;75:19;76:3
**ordinary (1)**
45:23
**Oregon (12)**
3:9,12;4:14;7:2,3;
13:24;37:15;38:21;
39:10;46:1;60:3;
64:10
**organized (1)**
74:3
**original (1)**
55:22
**originally (2)**
26:16;30:12
**others (4)**
10:3,13;70:10;73:7
**otherwise (1)**
6:13
**ought (1)**
11:4
**ourselves (1)**
41:23
**out (34)**
5:22;6:1,23;9:18;
19:12,25;32:20,23;
33:11,20;34:17;
35:18;36:3,19,20;
39:3;45:4,12,15;
46:14,24;52:12;
59:16;63:8,11;64:3;
65:14;66:22,22;
68:23;75:1,11;79:7,9
**outcome (2)**
33:8;65:7
**outliers (1)**
39:2
**outlined (2)**
31:19;39:1
**outposts (1)**
46:2
**outright (1)**
10:8
**outside (1)**
66:22
**outstanding (2)**
35:15;38:12
**over (15)**
8:11;10:4;11:25,25;
14:23;28:1;31:5;
36:22;37:21;39:19;
42:23;67:25;69:22;
70:19;71:17
**overlay (1)**
22:12
**overrule (1)**
12:4
**overrule (1)**
12:4
**oversimplifying (1)**
47:5
**owes (1)**
40:22

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page 93 of 99

**own (16)**
18:19;26:18,20;
31:23,25;33:4;37:3;
38:24;55:2,3;59:7;
64:16;67:5,11,15;
71:3

# P

**pace (2)**
41:25;69:18
**packing (2)**
20:16;21:25
**page (2)**
54:10;82:2
**pages (1)**
36:22
**paid (3)**
17:1;69:15,16
**panel (6)**
9:15,22;10:14;
17:17;28:19;72:14
**papers (11)**
6:18;23:19,19;29:8;
34:20;42:3;48:2;
51:13;54:10;60:13,20
**Parada (6)**
3:7;4:8;69:8;80:3,
20,25
**Pardon (2)**
8:18;33:12
**part (8)**
30:4;38:18;53:17;
55:2;56:14;59:23;
77:22;78:22
**participate (3)**
38:8,23;47:21
**participation (1)**
81:9
**particular (4)**
25:25;65:16,20,21
**particularly (2)**
20:13;70:8
**parties (10)**
5:17;7:8;11:23;
17:7;31:4;46:24;53:7;
57:18;61:9;72:23
**parties' (1)**
52:12
**passed (1)**
27:3
**past (1)**
24:18
**pause (1)**
70:22
**paused (1)**
43:4
**pay (2)**
38:10;67:7
**paying (7)**
38:3,5;60:18;67:9,
10,15,15
**pending (13)**

12:19;28:12;29:1,3,
12;30:14,16,17;37:7;
39:12;53:19;73:17;
78:10
**people (44)**
4:6,9;10:5,7,9;
12:10;14:3,24;16:13,
20,24,24;19:3;21:9;
26:3;36:25;37:17;
38:2,15,20;39:2;40:9,
21;49:23;54:23;
62:10;63:24;64:1,7,
21;66:11,21;67:24;
68:1;70:13;72:1,2,24;
74:24;75:19,20,25;
76:20;78:7
**per (1)**
7:13
**PERA (34)**
5:14;18:19;19:11;
26:9;31:22;32:9;33:4;
34:24;36:21;51:8;
53:12;54:9,11,20;
59:6,6,6;64:12,13,13,
17,18,21;65:2,5,12,
23,25;66:2,9,14,17;
68:9;70:19;77:6
**PERA's (5)**
11:25;50:20;52:1;
64:23;69:20
**percent (6)**
6:7,11;7:6;10:5;
17:9;67:16
**percentage (3)**
6:22;49:15;69:16
**perfect (5)**
10:15;58:5;70:16,
17,18
**perfectly (3)**
49:23;61:6;76:19
**perhaps (6)**
8:23;33:19;71:4;
72:4;73:3;74:5
**period (11)**
7:11;8:7;26:1;
45:12;55:9;58:15;
60:7;73:21;79:11,22;
80:13
**permitted (1)**
73:16
**person (1)**
8:14
**perspective (1)**
63:15
**persuaded (2)**
60:17;69:24
**persuasive (1)**
11:25
**PG&E (17)**
3:5;4:5;5:22,25;7:9,
11,15;14:14;16:3,11;
22:14;28:11;31:1;
39:22;70:9;71:2;81:3

**PG-E (1)**
65:24
**phase (1)**
47:8
**Phoenix (1)**
83:13
**phone (3)**
19:19,19,21
**phonetic (2)**
3:9;29:19
**phrase (1)**
29:22
**pick (4)**
19:22;24:20;43:3;
72:14
**picked (1)**
49:20
**pin (1)**
80:23
**place (20)**
9:12;14:12;17:24;
18:9;19:1,2;21:4;
22:2;42:6;43:2;44:11;
45:8;47:1;59:19;
60:11;63:22;66:10;
77:7,13;78:8
**plaintiff (1)**
36:24
**plan (1)**
70:9
**planned (1)**
55:24
**plans (1)**
3:20
**plate (1)**
59:2
**plausible (1)**
24:10
**players (2)**
63:23;66:1
**playing (2)**
33:13;56:2
**pleading (6)**
19:13,18;64:18,19;
66:13;72:1
**pleadings (3)**
9:7,9;75:16
**please (2)**
3:16;39:16
**pleased (1)**
23:20
**plenty (2)**
38:20;47:7
**point (58)**
6:6;9:13,25;10:9;
11:4,19;12:25;13:2,4,
15;14:13;16:10,14;
17:22;18:3,22,24;
19:17,22;21:3;27:4,
25;29:8,8,21;30:7;
33:19,22,23;34:4;
35:2,14;40:6;41:4,17;
46:6;47:7;48:6;49:3,

11;50:2,18;57:15;
58:5;59:7;60:20;62:5,
15;63:8;64:2,5;66:25;
68:5;72:18,19;76:14;
78:5,20
**pointing (1)**
18:4
**points (5)**
53:6,7;64:9,11;68:8
**policy (1)**
15:24
**Polivey (1)**
3:9
**portion (2)**
68:22,23
**position (7)**
9:5;10:14;25:17;
44:6,12;52:16;62:6
**positions (3)**
44:8;48:17;52:12
**possibility (1)**
52:10
**possible (2)**
43:16;53:4
**Post (1)**
14:7
**posture (1)**
23:21
**potential (2)**
49:16;55:16
**potentially (2)**
52:11;67:24
**power (1)**
43:15
**practical (1)**
67:20
**practitioners (1)**
33:16
**precedent (1)**
79:5
**precisely (1)**
35:1
**preclude (3)**
46:6;47:14,15
**prefer (1)**
36:5
**preferable (1)**
70:7
**prejudice (2)**
32:3;35:11
**preliminary (1)**
28:9
**premise (1)**
24:14
**preparation (1)**
36:4
**prepare (1)**
55:12
**prepared (2)**
58:16;71:13
**present (2)**
24:25;25:1
**presentation (2)**

30:9,25
**presenting (1)**
4:22
**preserve (1)**
54:24
**presided (1)**
39:19
**presiding (1)**
3:5
**presumably (3)**
17:6;25:24;26:1
**presume (2)**
5:8;45:16
**Presuming (1)**
67:10
**presupposing (1)**
38:21
**pretty (5)**
24:2;33:11;63:17
**prevent (1)**
42:12
**prevents (1)**
40:19
**preview (1)**
37:24
**previously (1)**
33:24
**prima (2)**
56:17;57:6
**principal (4)**
73:6,18;75:8;77:9
**prior (5)**
5:20;30:23;36:8;
48:23;49:19
**probably (1)**
48:5
**problem (5)**
18:6;30:4;32:13;
42:22;77:11
**procedural (4)**
27:24;50:15;51:12;
54:25
**procedure (18)**
11:25;20:20;21:4;
31:19;32:22;47:8,17,
23;50:21;60:4;65:2;
69:25;70:20;72:10,
23;73:8;74:1;79:4
**procedures (75)**
5:23;6:2,5;9:10,12,
14;11:8;12:6;13:5;
16:25;17:2,8,15,21,
23;18:16,25;19:1;
21:11;22:2,10,11;
24:14;25:10;26:22;
27:17,25;30:13;31:2;
33:12;36:5,11;41:23;
42:19,20,24;43:2,5,
13,20;45:7,23;50:12,
19;51:10,14;52:4,21;
58:10,17;59:18,20;
60:10,14;61:1,11;
62:3,19,24;63:9,17,

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
94 of 99

22;64:5,8,11,14,15;
71:15;74:16;76:8;
78:7,21;79:8;80:4;
82:3
**proceed (5)**
36:25;37:3;45:23;
46:21;52:7
**proceeding (3)**
29:4;38:25;59:23
**proceedings (1)**
83:4
**process (58)**
16:19;19:16;20:7;
21:5,13;22:4;26:7;
31:12,18,21;32:3,12;
34:6,6,8,17;37:4,12;
39:5,15;40:17,19;
42:4,16;48:12;50:18;
51:1;53:9;55:11,18;
57:16;58:6,7;59:9,24;
60:25;61:2,11;62:12;
64:3,12,17,23,25;
65:8;66:8,9;68:5,20;
70:1,7,8,13,16;71:1,5;
77:7,13
**processes (1)**
55:17
**produce (1)**
38:2
**progress (2)**
22:10;76:13
**progressed (1)**
47:1
**promised (1)**
41:12
**promptly (2)**
43:18;72:15
**proof (18)**
19:4;25:17;32:11;
33:7,17;44:17;45:16;
46:16;48:8,9,11;
55:22;56:5,6,9;57:24;
64:15;73:15
**proofs (5)**
23:23;42:1,14;
43:16;73:24
**proper (1)**
15:14
**proponent (1)**
69:23
**proposal (10)**
12:6;15:6;16:9,10;
26:16;44:15;45:2;
46:25;52:7;65:24
**propose (1)**
78:23
**proposed (6)**
25:10;27:17;50:19;
52:21;58:10;60:13
**proposing (4)**
50:13;55:15;62:16;
63:15
**protections (1)**

52:4
**protocols (1)**
74:5
**prove (7)**
27:7,13;44:22,23;
45:18;57:6,7
**proves (1)**
45:17
**provided (1)**
23:24
**providing (2)**
31:22;50:17
**PSLRA (4)**
51:15,17,21,22
**public (5)**
3:20;5:4;75:24;
78:24;80:10
**pulling (1)**
31:21
**punish (1)**
21:18
**purely (1)**
67:1
**purposes (5)**
36:9;53:16;66:20;
78:17;80:10
**pushed (1)**
63:2
**put (26)**
9:12;11:8,9;14:4;
20:25;21:3;25:15;
27:22;40:12;41:20;
43:2,3;53:17;56:25;
57:6;60:10;62:25;
63:10;66:9,13,25;
68:12;73:7;77:13,21;
78:8
**putting (1)**
5:14

**Q**

**quantity (2)**
13:11;37:16
**quick (1)**
54:15
**quickly (5)**
38:15;42:4,17;
43:15;70:10
**quiet (1)**
18:15
**quite (4)**
16:23;21:4;62:11;
64:2
**quo (1)**
11:20
**quoted (1)**
36:8

**R**

**races (1)**
12:9

**raise (1)**
3:13
**raised (1)**
34:9
**raising (1)**
28:25
**ramp (1)**
60:15
**range (1)**
74:21
**rate (3)**
11:14;43:24;49:12
**rather (7)**
22:15,19;52:19;
56:24;72:9;73:4;
76:25
**reactivate (1)**
70:4
**read (1)**
26:21
**reading (1)**
34:20
**ready (6)**
25:1;44:22,23;57:4,
5;59:16
**real (4)**
39:19;62:21;63:6;
64:11
**realistically (2)**
11:11,13
**realize (1)**
20:12
**realizes (1)**
79:25
**really (34)**
7:17;10:8,11,13,20;
14:21;16:25;17:13;
18:17,24;30:24;31:2,
8,10,15;32:1,2,13;
33:23;37:10;40:16,
19;46:7;48:4;51:21,
24;53:10;57:16,18;
62:25;64:18;66:7;
67:22;79:12
**reason (4)**
31:16;38:12,13;
71:13
**reasonable (2)**
73:21;74:9
**reasoning (1)**
27:22
**reasons (6)**
12:5;53:18;70:7;
76:5,7;78:15
**rebuttal (1)**
5:10
**received (7)**
6:12;7:2;8:4,9,11;
38:14;41:19
**receiving (1)**
26:23
**recent (1)**
28:10

**recognition (1)**
63:6
**recognize (1)**
4:17
**recognized (1)**
62:15
**recognizes (1)**
62:7
**recognizing (1)**
48:2
**recommendation (1)**
68:16
**reconciliation (1)**
52:8
**record (9)**
73:2;75:6,7,7,14;
78:16,24;80:10;83:4
**reduced (1)**
61:7
**reference (1)**
30:11
**reflect (2)**
69:19;80:3
**reflected (1)**
69:11
**reflecting (1)**
78:24
**refuse (1)**
43:1
**refusing (1)**
43:13
**regarding (1)**
30:13
**regular (1)**
81:3
**reiterate (1)**
52:6
**reject (1)**
43:24
**rejected (5)**
10:8,13;17:8;41:18;
49:13
**rejecting (1)**
50:3
**related (4)**
3:23;14:9;15:2,3
**relating (1)**
59:18
**relatively (1)**
70:10
**reliance (1)**
45:17
**relied (1)**
26:2
**relief (1)**
27:12
**relying (1)**
45:18
**remain (2)**
35:15;38:12
**Remember (3)**
10:3;66:15;69:1
**remind (1)**

35:9
**removing (1)**
21:12
**renegotiated (1)**
58:8
**renewed (1)**
36:15
**reorganized (23)**
6:6,9;17:5;22:16;
41:17,20,22,25;42:2,
13,18,23;43:12,19;
44:13;46:25;49:12,
15;50:12;51:21,24;
52:9,17
**reply (4)**
23:25;31:10,17;
62:1
**report (1)**
28:21
**reported (1)**
56:4
**represent (1)**
64:22
**representation (1)**
36:17
**representations (2)**
26:2;30:23
**represented (1)**
42:3
**representing (5)**
13:15;37:1,1;40:21,
22
**request (4)**
69:20;76:23;78:6,
21
**requested (4)**
27:25;36:12;71:20;
78:21
**requests (4)**
14:16;16:4;25:15;
37:3
**require (3)**
43:21,22;45:5
**required (3)**
14:14;36:23;43:17
**reserve (3)**
5:8,9;15:14
**resolution (5)**
30:16;31:8;34:16;
52:9,10
**resolve (8)**
6:2;14:1;15:1;
18:10;43:15;46:23;
52:15;63:23
**resolved (16)**
6:6,13;11:21,21;
13:14;22:8;29:23;
34:2;37:25;45:2,4;
49:16;51:5;52:11;
64:1,1
**resounding (1)**
6:3
**resources (1)**

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
95 of 99

61:9
**respect (16)**
7:12;8:5;27:23;
33:20;34:16;35:9;
36:1,1;38:6,22;42:19;
64:9,10;68:10;76:11,
13
**respond (2)**
56:7;74:24
**responded (1)**
43:18
**responding (1)**
64:11
**response (1)**
59:8
**responses (2)**
7:4;43:19
**responsive (1)**
25:15
**rest (1)**
18:15
**result (4)**
33:8;39:13;51:23;
66:9
**results (1)**
38:2
**retire (2)**
54:4,5
**Retirement (2)**
3:19;5:5
**review (1)**
75:19
**reviewed (1)**
7:7
**revisited (1)**
34:25
**Richard (1)**
4:4
**right (51)**
3:22;8:16;9:2;
13:20;15:8,10,17;
18:17,20;20:1,3;25:4;
26:10,11,14;35:7,12;
38:4,7,9,10;41:9;
42:8;44:3,11;45:19;
46:17,19,25;48:8,18;
49:10;53:23;54:3,22,
24;57:10,12,24;
58:24;60:4;61:25;
66:14,23,24,24;67:5,
7,13;77:16,24
**rights (4)**
15:15;31:12;49:4,5
**risk (2)**
26:18;39:24
**Ritholtz (36)**
4:17,19,19,24;
23:12;41:8,10,14;
42:9,12;43:24;44:4,
25;45:20,22;46:5,20;
47:10,12,14;48:22;48:10,
19,21;49:7,9,11;50:1,
9,11;51:2,20;57:21;

73:19;77:3,18
**Ritholtz's (1)**
72:4
**RKS (62)**
4:20,21;6:20;7:2,6;
8:25;10:4,12,17,18,
22;11:8,9,17,22;12:4,
4,5,5,9,12,18,20;13:4,
7,18,23;14:8,20;15:5,
25;17:1,5,8;18:4;
19:23;21:20,21;
23:12;26:8;37:15;
39:10;41:15;42:18,
24;43:1,6,7,9,9,12,14;
52:7,21;62:16;63:1,5,
13;64:4,5,6;72:18
**RKS's (1)**
71:23
**road (1)**
61:10
**robust (1)**
22:4
**Rolnick (1)**
4:19
**room (1)**
11:5
**roughly (1)**
74:20
**round (3)**
13:11;51:12;52:22
**ruinous (1)**
51:23
**rule (13)**
20:15;26:25;31:15;
37:19;39:11,15;
40:19;48:25,25;
53:16,25;70:4;73:16
**rulemaking (1)**
48:24
**rules (3)**
38:10;46:12,13
**ruling (2)**
28:10;39:14
**rulings (2)**
66:3;82:2
**run (1)**
25:7

**S**

**Sadighi (1)**
4:20
**salutary (2)**
30:18;36:20
**same (21)**
5:16,18;11:9;13:9;
14:9,22,23;18:4,5;
26:9;33:8;44:11;
46:13,15;48:5,13;
49:17;52:5;57:13;
62:25;63:11
**SAN (1)**
3:1

satisfactory (1)
78:11
**satisfied (1)**
78:14
**satisfies (1)**
78:24
**save (2)**
22:18,21
**saying (23)**
9:8;10:19;15:25;
39:8,24;42:14;46:21;
50:20,23,25;51:2,14;
57:25;59:5,18;63:10,
10;64:18,20;66:10,
15;76:4;77:14
**schedule (5)**
5:23;55:14;58:9,12;
63:11
**scheduled (1)**
30:9
**scholarship (1)**
56:5
**Schwartz (38)**
3:16,18,19,23;
19:23,24;20:8,14,16;
21:9,20,22,25;23:3,3,
6,10,15;24:6,9,17,21,
23;25:2,4,8;26:4,12,
14;27:15,21;44:16;
61:15,19,24;66:6,12;
77:18
**Schwartz's (4)**
7:1;13:24;37:15;
47:5
**screening (1)**
46:14
**seasoned (1)**
34:19
**sec (2)**
19:20;24:7
**second (6)**
24:6;35:10;55:2;
62:24;69:21;76:15
**seconds (1)**
39:18
**secretly (1)**
43:4
**securities (34)**
5:23;6:5,7,8,10,12;
7:12,16;11:10;12:6;
16:25;17:2,7;18:18;
20:13;27:16;30:18;
31:12;32:4;33:3;37:5;
62:12,23;64:19;
65:21;69:13;70:14;
71:8;72:21;74:18;
78:17;80:5,6;82:5
**security (1)**
68:21
**seek (2)**
25:20;75:19
**seeking (1)**
31:2

**seeks (1)**
5:12
**seem (2)**
8:25;54:11
**seems (4)**
56:24;72:11;77:8,
21
**sees (1)**
10:22
**segway (1)**
58:5
**selected (1)**
47:19
**sense (7)**
9:9,10,16;10:15;
36:25;68:21;74:10
**sent (2)**
20:16;21:25
**separate (3)**
30:13;32:5;62:4
**separately (2)**
25:13;48:12
**sequence (1)**
23:8
**service (1)**
17:1
**session (3)**
3:4;74:3;80:18
**set (10)**
5:22;6:1;10:14;
14:2;27:8;37:3;44:18;
55:9;80:21;81:5
**sets (3)**
14:15,15,15
**setting (1)**
27:1
**settle (9)**
7:10;8:12;9:11,16,
17;14:23;16:22,24;
67:5
**settled (7)**
6:8,21;7:16;18:7;
23:22;67:6;68:1
**settlement (9)**
6:9,12;7:1,7;16:19;
18:25;38:6;43:6;
57:19
**settlements (12)**
7:8,13,24;8:16;9:2;
10:4;63:19,21;70:14;
71:3;73:12;78:10
**settling (4)**
9:1;10:3;11:14;
22:15
**seventeen (1)**
72:16
**several (1)**
3:8
**severely (1)**
32:3
**shapes (1)**
49:1
**shaping (1)**

31:18
**share (1)**
23:2
**shares (1)**
49:24
**shift (1)**
26:15
**shifting (2)**
56:14;57:17
**short (10)**
23:11,16;58:6,11;
72:22;78:19;79:22;
80:8;81:2,2
**show (4)**
18:20;38:1;46:3;
76:24
**shows (1)**
57:4
**side (6)**
16:13;25:16;28:14,
17,18;33:9
**sides (1)**
80:16
**sign (1)**
75:22
**significant (5)**
8:13;16:18;31:24,
24;76:8
**silence (1)**
30:21
**simple (4)**
22:18;45:10;78:18;
80:2
**simply (4)**
68:15;71:13;73:24;
79:23
**single (1)**
37:17
**sit (8)**
12:8,13;14:8,11;
17:24;63:7,24;75:20
**sitting (1)**
22:14
**situated (1)**
41:16
**situation (4)**
32:15;57:13;70:8;
73:10
**six (10)**
5:13,19;10:22;
14:23,24;18:3;44:15;
47:1;71:20;77:15
**sixty (5)**
73:3;74:18,19;77:1,
9
**sixty-day (2)**
76:6;79:11
**skip (1)**
42:16
**Slack (104)**
4:3,4,4;5:7,9,12;
6:16,23,25;7:19,21,
24;8:2,17,19,22;9:4,

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
96 of 99

25;10:7,16;11:2,7,12;
12:2,17,22,25;13:2,9,
10,20;14:5;15:10,13,
17,19,21;16:16;17:11,
13,18;18:14,22;19:7,
9,15,16;20:3,21;
21:16;22:8,21,23,25;
25:5,9;27:14;32:7;
33:1,14;34:24;35:16;
37:18;44:14;46:1;
47:18;56:10,11;57:3;
58:6;59:9;60:17;
61:15,25;62:2;65:9,
16,19;66:5,19,24;
67:12,17,21;68:3,8,
14;69:23;72:20;73:5;
74:7;75:10,23;76:1,2;
77:2,16;78:23;79:3,
18,21;80:23;81:1,7

**Slack's (5)**
25:16;30:25;57:20,
23;59:6

**slight (1)**
26:15

**slow (3)**
21:5;41:21,25

**slowed (2)**
70:24;71:1

**slowest (1)**
41:21

**small (2)**
49:24;67:18

**smaller (2)**
37:16;48:4

**so-and-so (1)**
47:19

**so-called (1)**
32:14

**sole (1)**
5:25

**solely (1)**
31:3

**solution (2)**
22:18;61:4

**solve (2)**
37:10,11

**solves (1)**
77:10

**somebody (11)**
4:22;14:9;19:22;
26:9;27:1;32:20;
33:13;39:14;51:19;
67:1;78:12

**someone (3)**
28:17,18;41:4

**sometimes (3)**
11:4;36:2,2

**somewhat (3)**
15:2,3;35:17

**sooner (1)**
78:6

**sophisticated (2)**
38:15;40:15

**sorry (9)**
4:21;8:17;19:20;
23:6;24:7;52:23;
58:20;61:19,20

**sort (11)**
19:2;29:7;30:21;
49:6;61:1,11;62:16,
16;69:24;79:5;81:2

**sound (2)**
69:2,3

**sounds (1)**
71:11

**speak (1)**
39:10

**speaking (2)**
34:18;48:18

**specialist (1)**
34:19

**specially (1)**
81:5

**specifically (1)**
64:16

**speed (1)**
21:5

**speeding (1)**
21:12

**speedy (1)**
55:19

**spend (2)**
38:24;67:4

**spending (1)**
22:15

**spilled (1)**
69:22

**spoken (1)**
23:16

**squeak (1)**
11:6

**squeaky (2)**
11:4,20

**stage (4)**
39:1;42:23;46:10,
22

**stages (1)**
14:14

**stampede (1)**
14:2

**stand (2)**
32:10;55:22

**standard (2)**
19:13;45:7

**standards (2)**
9:9;19:18

**standing (1)**
21:23

**standpoint (1)**
79:7

**stands (1)**
35:14

**start (11)**
3:15;10:10,14;
30:11;38:1,2,5;55:14;
62:2;72:17;79:12

**started (2)**
66:7;76:12

**starters (1)**
76:1

**starting (2)**
23:10;37:25

**state (9)**
3:16,19;4:18;19:4,
25;26:19,23;46:16;
56:9

**stated (5)**
25:17;27:11;70:11;
71:16;78:15

**statement (1)**
14:7

**statistics (4)**
6:5,15,17;13:13

**status (15)**
11:20;13:25;20:11;
21:24;27:2;28:21;
44:21;45:6,8;46:4;
57:4;74:12,25;77:10;
80:22

**statute (4)**
15:23;27:3,10;
45:11

**stay (5)**
29:11,19;51:15,19;
77:7

**stayed (2)**
29:22;30:22

**step (6)**
19:2,12;21:19;
42:13,16;46:7

**steps (1)**
24:22

**stick (3)**
41:11;72:9;77:13

**still (26)**
8:24;9:1;10:3,24;
16:11,18;17:23;18:4,
25;19:1;26:10;28:12,
20;30:17;38:12,17;
44:5;49:21;59:1,1;
61:7;62:22;70:6,17,
21;73:13

**stip (1)**
65:1

**stop (1)**
56:1

**story (2)**
39:17;45:14

**strange (1)**
66:4

**Street (1)**
83:12

**strikes (1)**
34:13

**strings (1)**
31:21

**strongly (1)**
68:23

**stuff (2)**

46:18;68:19

**style (1)**
25:11

**subject (5)**
8:8;10:8;26:18;
32:18;41:5

**submit (2)**
25:14;48:12

**submitted (4)**
6:8;24:11;43:16;
48:13

**substantial (1)**
53:22

**substantially (1)**
14:25

**subtle (3)**
32:15;36:2,2

**success (1)**
6:5

**successful (7)**
8:12;35:16;44:8;
59:14;68:4;73:12,12

**suddenly (2)**
16:3;39:11

**sufficient (2)**
56:24;79:12

**suggest (4)**
43:19;73:1;74:11;
76:5

**suggested (3)**
18:1;45:3;71:19

**suggesting (3)**
14:18;63:13,13

**suggestion (3)**
21:21;72:7;80:12

**suggestions (2)**
71:23;72:4

**Suite (1)**
83:12

**suited (1)**
70:20

**sulk (1)**
17:24

**support (1)**
22:6

**supported (1)**
30:21

**Suppose (1)**
24:18

**supposed (1)**
55:18

**Sure (5)**
50:1;53:14;60:17;
61:22;74:23

**surfacing (1)**
40:20

**survived (1)**
43:17

**Susan (1)**
4:13

**suspect (1)**
13:11

**sweet (1)**

78:19

**System (2)**
3:20;77:5

---

**T**

**table (7)**
16:13;44:7,9,10,12;
46:8;47:20

**talk (13)**
9:11;12:3;31:17;
50:4,11;63:24;64:25;
74:2,22;75:8,12;
76:25;77:12

**talked (3)**
64:24;74:15,17

**talking (6)**
34:14;53:7;61:2;
63:19;67:22;73:20

**talks (1)**
32:2

**target (1)**
24:13

**tasty (1)**
67:19

**Teachers (1)**
3:19

**technical (1)**
28:6

**technically (1)**
42:10

**technology (1)**
25:16

**telling (3)**
10:20;50:17;66:7

**ten (7)**
5:9;14:15;16:4;
22:21;23:12;41:14;
68:17

**term (1)**
72:22

**terminology (1)**
56:2

**terms (6)**
33:6;61:8;71:22,22;
78:10;79:10

**test (2)**
40:8,9

**theirs (1)**
14:10

**theory (1)**
33:5

**therefore (3)**
25:17;52:20;72:17

**there'll (1)**
54:8

**thinking (4)**
34:20,22;75:4;
78:13

**third (2)**
55:20;68:25

**third-year (1)**
69:12

Case: 19-30088   Doc# 14354-2   Filed: 03/15/24   Entered: 03/15/24 19:37:01   Page 97 of 99

**thirteen (1)**
54:10
**thirty (3)**
21:22;67:16;74:20
**thirty-six (1)**
3:23
**though (3)**
11:20;50:25;62:4
**thought (4)**
21:11;51:24;68:18;
74:6
**thousands (3)**
62:9;71:7;75:24
**threat (1)**
32:16
**three (10)**
11:18;12:1;34:21;
37:25;53:11;55:5,10;
56:24;74:12,13
**threshold (1)**
29:7
**threw (1)**
30:20
**thrown (1)**
32:23
**thumb (1)**
53:25
**tie (1)**
72:15
**tied (1)**
29:11
**tight (4)**
33:2;59:11;71:24;
75:20
**till (1)**
67:6
**timeline (2)**
42:7,7
**timely (1)**
42:2
**times (1)**
68:12
**timing (1)**
10:15
**tip (1)**
33:12
**today (19)**
8:24;10:22;15:8;
30:25;33:2;36:4,10;
37:14;39:13,16;
57:21;61:10;68:16;
70:3;72:25;73:2,6;
74:13;79:16
**today's (7)**
17:23;35:22;36:9;
37:22;41:3;47:18;
71:23
**together (4)**
61:5;62:5;73:7;
75:21
**told (3)**
49:15;59:6;64:21
**tomorrow (3)**

11:22;65:2,3
**took (1)**
9:22
**toolbox (1)**
70:15
**tools (2)**
16:25;70:15
**toss (2)**
32:20;77:22
**tough (1)**
11:13
**tour (1)**
75:10
**touted (1)**
30:15
**track (1)**
13:14
**tracks (1)**
50:19
**trading (2)**
25:14;43:16
**traditional (1)**
77:6
**trampling (1)**
31:11
**transcript (2)**
78:14;83:3
**treated (1)**
25:13
**treating (1)**
55:8
**treatment (1)**
42:22
**tree (2)**
71:6,7
**tremendous (1)**
55:4
**trial (4)**
14:2;27:8;46:18;
57:5
**trials (2)**
16:6;20:13
**tried (1)**
77:12
**triggers (1)**
40:17
**trouble (1)**
9:21
**troubled (1)**
9:20
**true (3)**
18:21,22;28:8;
51:18,19;70:21;83:4
**truth (1)**
43:14
**try (9)**
9:17;21:23;24:17;
45:18;53:3;61:4;
63:25;68:3;79:7
**trying (18)**
4:8;9:12;13:6;
15:23;16:20;17:14;
18:10;19:12,14;21:3;

41:22;42:12,16;52:2,
15;77:4,12;79:20
**turn (6)**
12:20;28:1,4;64:3,
23;74:6
**twenty (3)**
14:15;67:16;74:20
**twenty-five (1)**
67:16
**two (17)**
19:9;23:1;28:9;
37:25;40:4;43:2;
55:17;57:15;62:10,
22;64:11;65:9;71:19;
76:3,5,7,12
**two-and-a-half (1)**
30:12
**typically (1)**
21:1

**U**

**ultimately (1)**
14:6;38:22
**under (21)**
5:23;6:1;24:11,14;
26:25;31:20;34:7;
36:16;38:9;40:12;
42:5,5,6;50:19;53:16;
58:10,17;60:18;
62:15;64:13;70:15
**undergoing (1)**
31:23
**underlying (1)**
51:20
**undermine (1)**
12:6
**understood (2)**
29:22;32:8
**unfair (2)**
56:24;67:22
**unfortunately (3)**
29:13;30:19;37:7
**unhappy (1)**
69:14
**UNIDENTIFIED (1)**
69:4
**unlike (1)**
42:20
**unlikely (1)**
51:4
**unresolved (4)**
6:10;12:8;33:20;
35:18
**UNSION (1)**
81:10
**unsophisticated (2)**
38:16;40:16
**unstable (1)**
69:8
**unsuccessful (1)**
59:15
**up (28)**

5:7;15:6;18:20;
21:5,12;22:6;33:5,9;
38:1;41:8;46:3;47:6,
18;53:2;57:4;67:6,19;
68:2;69:10,11;70:24;
72:14,15;73:8;74:1,
10;75:3;77:4
**upon (2)**
24:19;33:25
**use (6)**
9:21;10:16;16:24;
36:21;53:25;74:8
**used (1)**
17:14
**useful (1)**
44:10
**using (1)**
21:20
**usually (1)**
67:18

**V**

**valid (2)**
20:15;21:2
**variation (1)**
44:1
**various (2)**
53:18;75:9
**vast (2)**
6:21;41:18
**version (6)**
33:4;62:17;65:5;
69:25;77:6,23
**veto (1)**
17:25
**victims (1)**
69:14
**view (7)**
11:4;16:14;28:6;
32:1;52:17;59:8;
62:19
**violating (1)**
32:11
**VOICE (1)**
69:4
**voluntariness (1)**
32:14
**voluntary (8)**
18:23;20:7;21:15;
32:8;33:1;53:9;57:16;
67:1

**W**

**wait (4)**
50:13;54:1;56:1;
61:15
**waiting (3)**
4:25;52:24;54:2
**wants (5)**
13:9;33:13;46:9;
60:10;70:4

**war (1)**
39:17
**waste (3)**
39:10,16;41:5
**watch (1)**
12:13
**way (24)**
9:8;14:16;16:23;
20:21,23;27:18;
28:11;31:10;34:13,
19;35:1;44:10;46:14,
24;54:17;57:18;59:9;
63:20;71:25,25;72:9,
20;77:24;78:20
**ways (3)**
6:4;16:5;71:19
**website (1)**
81:4
**WEDNESDAY (1)**
3:1
**week (1)**
47:20
**weeks (3)**
7:15;9:2;36:15;
62:10;74:12,13;
75:21;77:10
**weigh (1)**
40:11
**Weil (1)**
4:5
**weird (1)**
65:24
**welcome (2)**
61:4;75:5
**well- (1)**
74:2
**weren't (1)**
18:8
**what's (18)**
7:5;16:15,16,25;
20:12,19,22;29:16;
34:1;45:25;50:10;
56:9;60:21;63:5;
65:23;71:22;75:12,24
**wheels (2)**
11:4,20
**whittle (1)**
39:4
**whole (6)**
26:7;40:7;47:6;
63:21;64:2;77:5
**who's (6)**
9:18;23:8;37:1,1;
40:21,21
**who've (1)**
8:11
**willing (8)**
7:9;47:25;60:3;
62:11;64:2,4;75:20;
76:19
**willy (1)**
53:15
**wish (3)**

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
98 of 99

73:7,23;75:9
**wishes (3)**
73:15;74:16;78:12
**withdraw (1)**
43:10
**within (1)**
47:16
**without (11)**
22:12;31:11;35:11;
39:1;44:12;52:16;
67:6;71:3;73:12;
78:25;79:16
**witness (1)**
26:6
**word (1)**
9:21
**words (7)**
12:11;16:9;18:17;
21:19;25:10;33:7;
74:25
**work (23)**
14:17;18:9;21:24;
22:3,12;30:13;36:23;
40:3;42:20;63:17,20;
64:3,5;68:2,6,6;
70:16;74:9;75:21;
76:18;79:7,13;80:16
**worked (2)**
68:5;71:5
**working (6)**
6:2;18:25;63:17,20,
20;72:11
**works (2)**
34:13;81:6
**world (2)**
67:17;70:21
**worries (2)**
46:1;52:25
**worry (1)**
36:25
**worrying (2)**
39:11;72:17
**writing (1)**
48:16
**written (2)**
59:10;78:1
**wrong (3)**
28:25;49:22;50:1

**Y**

**year (3)**
9:24;18:8;34:21
**years (7)**
12:1;30:12;37:25;
43:2;55:5,11;56:24

**Z**

**Zoom (1)**
28:24

**1**

**1,000 (3)**
20:13;21:8;70:17
**1,000,000 (1)**
67:25
**1,200 (2)**
8:6;13:12
**1,500 (3)**
6:10,20;8:3
**1,800 (1)**
7:13
**10,000 (1)**
22:4
**10:00 (1)**
3:1
**100 (1)**
21:8
**100,000-dollar (1)**
67:25
**11 (1)**
53:16
**12b6 (5)**
26:25;27:11;46:15;
51:1;56:7
**15 (2)**
39:18;41:12
**150 (1)**
9:1
**1500 (1)**
38:13
**16th (1)**
83:12
**180 (3)**
7:18,20;77:3
**1800 (1)**
38:13
**183 (3)**
7:16,19,24
**18th (1)**
5:13

**2**

**2,800 (1)**
6:8
**20 (1)**
46:17
**20/20 (1)**
37:9
**200 (1)**
36:22
**200-page (1)**
53:16
**2023 (3)**
3:1;5:14;83:15
**23 (7)**
37:19,21,23;39:11,
15;40:19;70:5
**240 (3)**
7:16,20,21

**3**

**3,800 (1)**
7:12
**30 (2)**
59:10;77:3
**300 (2)**
7:13;63:19
**30th (5)**
42:9;58:22;60:8;
78:16,17
**360 (1)**
71:11

**4**

**4 (1)**
82:3
**4,000 (3)**
9:6;22:7;79:18
**4,800 (1)**
6:7
**40 (1)**
31:5
**4000 (4)**
33:20;35:18;38:12;
39:5
**45 (1)**
51:3

**5**

**5,000 (1)**
22:9
**500 (1)**
21:8

**6**

**60 (2)**
77:2,3

**7**

**7 (2)**
3:1;58:11
**7,000 (2)**
22:3,6
**700 (1)**
48:3
**7023 (7)**
31:15;33:24;34:7;
35:6,10;36:15;70:5
**7227 (1)**
83:12
**723 (2)**
61:3;77:6
**760 (3)**
44:18;47:3;48:15
**7th (1)**
58:21

**8**

**8 (1)**
83:15
**8,800 (1)**
6:7;22:8
**80 (1)**
82:3
**85020 (1)**
83:13

Case: 19-30088    Doc# 14354-2    Filed: 03/15/24    Entered: 03/15/24 19:37:01    Page
99 of 99