1  BROWN RUDNICK LLP
   David J. Molton (SBN 262075)
2  (DMolton@brownrudnick.com)
   Seven Times Square
3  New York, New York 10036
   Telephone:    (212) 209-4800
4  Facsimile:    (212) 209-4801

5  BROWN RUDNICK LLP
   Joel S. Miliband (SBN 077438)
6  (JMiliband@brownrudnick.com)
   2211 Michelson Drive, Seventh Floor
7  Irvine, California 92612
   Telephone:    (949) 752-7100
8  Facsimile:    (949) 252-1514

9  *Attorneys for the Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**FIRE VICTIM TRUSTEE'S OBJECTION TO SAYEGH BROTHERS MOTION**<br><br>[Relates to Docket Number 14319]<br><br>Hearing Date:    April 9, 2024<br>Hearing Time:    10:00 a.m. (PT)<br>Place: Hearing will be conducted telephonically or by video |

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust (the "**Trust**"), by and through her undersigned counsel, hereby objects to the *Motion To Determine If The Trustee Modification Of The Claim Resolution Procedure Was Approved By The Bankruptcy Court And If Not So Approved To Grant Requested Relief Under 11 U.S.C. § 105(a) and § 1142(a) B.L.R. 9014-1 (b)(3)* [Docket No. 14319] (the "**Motion**") filed on behalf of Sayegh Brothers, Inc. ("**Sayegh Brothers**") on February 20, 2024. In support of this objection, the Trustee respectfully states as follows:

**<u>PRELIMINARY STATEMENT</u>**

There is no basis for the relief requested in the Motion. Accordingly, the Motion must be denied or dismissed as moot.

As an initial matter, the Motion is a disguised attempt to improperly "appeal" the Trust's final determination of a Fire Victim Claim. Sayegh Brothers does not have any right to appeal to this Court for review of the Trust's final determination of its Fire Victim Claim that was channeled to the Trust (such claim, the "**Sayegh Brothers Claim**"). As such, Sayegh Brothers does not have standing to prosecute this appeal, and this Court does not have jurisdiction to consider the improper appeal.[1] Despite the assertion that the Motion was "brought not as an appeal of the Trustee's determination"—an assertion undoubtedly made because counsel for Sayegh Brothers is well aware[2] that his client does not have a right to judicial review of that final determination—that is the only purpose of the Motion.

Further, the Motion is predicated on the assertion that a Fire Victim Claim based on a "leasehold interest" should be valued under California inverse condemnation law. While merits

---

[1] The Court has recognized that "there is no recourse in this court for any dissatisfied Fire Victims Claimants aside from those who specifically preserved the right to do so." *Memorandum Regarding Recent Correspondence From Fire Victim Claimants* [Dkt. No. 14156]. Sayegh Brothers is not among those who are listed in the Confirmation Order as having explicitly preserved the right to judicial review. Sayegh Brothers did not appeal the Confirmation Order on any basis.

[2] While counsel to the Sayegh Brothers lists many of his own emails and letters in support of the Motion, he fails to include any of the responses, including a comprehensive December 2023 letter from counsel to the Trustee explaining why a filing such as the Motion would be inappropriate, attached hereto as **Exhibit 1**, and a January 2024 email from counsel to the Trustee reiterating the fact that Sayegh Brothers does not have a right to judicial review of the Trust's final determination of its claim and attaching the *Memorandum Regarding Recent Correspondence From Fire Victim Claimants* [Dkt. No. 14156] for reference, attached hereto as **Exhibit 2**.

issues are not, and cannot be, properly raised in the Motion, given the foregoing, the Trustee wishes to inform the Court that ***there is no such property interest*** included in the Sayegh Brothers Claim. The Trust's treatment of property claims such as those involving a leasehold interest is irrelevant here. Sayegh Brothers itself acknowledged in the first brief it submitted to the Trust, attached hereto as **<u>Exhibit 1</u>**,[3] that the Sayegh Brothers Claim is for ***loss of income only***. Sayegh Brothers has not submitted a property claim to the Trust, and the Trust has not processed, reviewed or determined any property claim asserted by Sayegh Brothers.[4]

Sayegh Brothers asks this Court to grant relief under 11 U.S.C. §105(a). Should the Court reach consideration of this request, it must also weigh the fact that, as of March 14, 2024,[5] the Trust had issued Determination Notices to **100% of all Fire Victim Claimants** who have timely submitted claims questionnaires to the Trust, awarding $19.24 billion to these claimants. ***Ninety-seven percent (97%) of these claimants*** have accepted their determinations, allowing the Trust to finalize their claims and pay more than $11 billion to holders of Fire Victim Claims. Even if the relief requested in the Motion was warranted (it is not), implementing that relief would require the Trust to ***unwind payments made on account of Fire Victim Claims held by claimants not before the Court*** and to

---

[3] As both the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures require the Trust to hold all claimant submissions in confidence other in a few limited circumstances, the Trustee has filed Exhibit 1 under seal, pending the Court's determination of the Trustee's Motion to Seal Exhibit, filed contemporaneously with this Objection.

[4] While a leasehold interest is ***part*** of the fair market value of real property under California law, it is not considered to be ***in addition to*** the fair market value of the property. *See, e.g., New Haven Unified Sch. Dist. v. Taco Bell Corp.*, 24 Cal. App. 4th 1473, 1479, 30 Cal. Rptr. 2d 469, 471–72 (1994) (discussing the division of a property's fair market value between lessor and lessee). Sayegh Brothers recovered the full fair market value of its real property from its insurance company and is not eligible for additional compensation from the Trust for the real property claim fully paid by insurance. In addition, even if Sayegh Brothers had a right to compensation from the Trust on account of a real property claim (which it does not, of course), California law also dictates that ***the tenant*** is generally entitled to the value of its leasehold interest under a condemnation award. *See, e.g., New Haven Unified Sch. Dist. v. Taco Bell Corp.*, 24 Cal. App. 4th 1473, 1478, 30 Cal. Rptr. 2d 469, 471 (1994) (a business lessee is entitled to the fair market value of his leasehold interest in the part taken). Sayegh Brothers is the property owner and lessor in this case and has not established any right to any claim its tenants may have. As stated in the very case Sayegh Brothers cites throughout the Motion, "the constitutional concept of just compensation expresses a principle of fairness." *People By & Through Dep't of Pub. Works v. Lynbar, Inc.*, 253 Cal. App. 2d 870, 883, 62 Cal. Rptr. 320, 329 (Ct. App. 1967). Here, in direct contravention of the spirit of "just compensation," Sayegh Brothers improperly and unfairly seek compensation from the Trust above and beyond what it is entitled to receive on account of its eligible Fire Victim Claims to the detriment of its fellow Fire survivors.

[5] The latest statistics can be found on the Fire Victim Trust website at https://www.firevictimtrust.com. The Trust will update the program statistics again on or about March 30, 2024.

reassess the distributions to be made on account of those claims.[6] The relief requested by Sayegh Brothers is tantamount to appealing a confirmation order after a Chapter 11 plan has been substantially consummated,[7] only in this case the relief is being requested far later in the game and with far more devastating consequences to innocent third parties who have suffered disproportionately worse harm than any other creditors of the Debtors.

## RELEVANT BACKGROUND

1. On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors filed the Chapter 11 Cases to address the billions of dollars of damage and loss relating to the devastating 2015, 2017 and 2018 California fires and to provide compensation to wildfire victims.

2. On June 19, 2020, the Debtors filed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (together with all schedules and exhibits thereto, the "**Plan**").[8] The Plan, which, among other things, addresses the claims of more than 70,000 Fire Victim Claimants through the creation and funding of the Trust, was the product of months of vigorous and intense negotiations between various stakeholders and was overwhelmingly supported by Fire Victim Claimants.

3. On June 20, 2020, the Bankruptcy Court entered the *Order Confirming Debtors' and Shareholder Proponent's Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8053] (the "**Confirmation Order**") and the Effective Date of the Plan occurred on July 1, 2020. Pursuant to the Plan and Confirmation Order, the Trust was established on the Effective Date. The confirmation of the Plan avoided costly and time-consuming litigation and implemented a Fire Victim Trust designed to ensure the most equitable and efficient payment of Fire Victim Claims.

---

[6] This assumes that the Court determines it would be just to order the Trust to claw back from 60,977 Fire Victim Claimants the $11.23 billion in payments it has paid to them as their pro rata share (66% of awarded compensation).

[7] *See, e.g., In re Pac. Gas & Elec. Co.*, No. 21-15447, 2022 WL 911780 (9th Cir. Mar. 29, 2022) (confirming District Court determination that appeal was equitably moot).

[8] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

3

4.    The Plan provides in Section 6.7(a), "In accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, the Fire Victim Trust shall, among other tasks described in this Plan or the Fire Victim Trust Agreement, administer, process, settle, resolve, liquidate, satisfy, and pay all Fire Victim Claims."  In addition, the Trustee has been vested with the authority and power to administer, object to or settle Fire Victim Claims and to make distributions to holders of Fire Victim Claims in accordance with the terms of the Plan and the Trust Agreement.  Plan § 6.8 (b).  There are no restrictions of any kind in the Plan on the methods by which the Trust may process, review, analyze or determine Fire Victim Claims.

5.    Importantly, the terms of the Fire Victim Trust Agreement (the "**Trust Agreement**") and the Fire Victim Trust Claims Resolution Procedures (the "**CRP**," and together with the Trust Agreement, the "**Trust Documents**") were also the product of vigorous negotiations, including the resolution of objections lodged by Fire Victim Claimants ranging from individual claimants proceeding *pro se* to large corporate claimants with robust legal representation.  Nothing in the Trust Document was spared the close inspection and analysis of all parties.

6.    The Trust Documents were contained in the *Ninth Supplement to Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [Dkt. 8057] (the "**Ninth Plan Supplement**").  The Confirmation Order incorporates the Ninth Plan Supplement.

7.    The Trust Agreement provides: "The Claims Administrator shall have reasonable discretion in the means and methods in carrying out the duty of resolving Fire Victim Claims consistently with the CRP." Trust Agreement § 2.3. The Trust Agreement further grants the Claims Administrator, in conjunction with the Trustee, "the power and obligation to evaluate, disallow, resolve, settle, and approve any and all Fire Victim Claims in accordance with the CRP without the need to seek the approval of the Bankruptcy Court for any actions taken with respect to the determination of Fire Victim Claims." Trust Agreement § 2.3(b)(i).

8.    To promote efficiency in resolving the thousands of Fire Victim Claims channeled to the Trust, the CRP provides that PG&E's negligence and/or equipment is deemed to be a substantial factor in causing all Fires for the purpose of claims determination.  CRP § I(A).  This provision

4

eliminates a hurdle that holders of Fire Victim Claims would have to clear if they were forced to litigate with PG&E in court.

9. In accordance with the terms of the Plan and the Trust Agreement, the Trust developed a claims questionnaire (the "**CQ**") that helps the Trust verify identities, support claimed damages, and demonstrate a claimant's authority to assert those claims, along with supporting documentation and any other relevant information. The CQ is submitted by claimants (or their counsel, if applicable) through a web-based portal. The Trust also developed guidelines, consistent with the claims determination provisions of the CRP, to ensure the consistent consideration and determination of various types of Fire Victim Claims based on information provided to the Trust through the submission of CQs. The Eligibility Criteria for Business Income Loss Claims (the "**BIL Guidelines**") referenced in the Motion are among such guidelines developed by the Trust.

10. The Trust began accepting claims information on July 1, 2020, and immediately began processing claims information to develop review criteria. The Trust made the CQ form available to Fire Victim Claimants as of August 17, 2020, and began accepting CQs from Fire Victims on the same date.

11. To ensure that applicable California law would be consistently applied in the determination of all Fire Victim Claims, the Trust engaged retired California state court judges to assist in the development of guidelines to be used by the Trust in the review, analysis and determination Fire Victim Claims in accordance with the Plan, Confirmation Order and Trust Documents.

12. Sayegh Brothers owned 29,080 square feet of property within a large shopping mall in Paradise, California that was destroyed by the Camp Fire. Sayegh Brothers' insurance company compensated Sayegh Brothers *in full* for that property interest. Sayegh Brothers' insurance company also compensated Sayegh Brothers for lost business income up to the policy limit.

13. Sayegh Brothers filed a proof of claim on the specialized "Fire Claim Related" form on October 17, 2019, asserting a claim in an amount to be determined at a later date ("**POC 79118**"). POC 79118 was channeled to the Trust pursuant to Section 4.26 of the Plan as of the Effective Date.

14. Sayegh Brothers submitted to the Trust a CQ reflecting the Sayegh Brothers Claim on November 24, 2020. Sayegh Brothers asserted a claim against the Debtors for its uninsured **business income loss**. The Sayegh Brothers Claim does not include a property claim component.

15. Sayegh Brothers' initial Claims Determination Notice was issued on July 21, 2022. Sayegh Brothers contested the Claims Determination Notice and submitted a reconsideration request to the Claims Administrator of the Trust. Following review of the October 11, 2022 reconsideration request and additional documents submitted by Sayegh Brothers on, a Reconsideration Determination Notice was issued to Sayegh Brothers on March 3, 2023.

16. Sayegh Brothers contested the payment amount set forth in the Reconsideration Notice and submitted a notice of appeal to the Claims Administrator of the Trust on April 21, 2023. Sayegh Brothers submitted its brief in support of its appeal on June 29, 2023. Following review of the Sayegh Brothers claims by a randomly chosen FVT appeals neutral, an Appeals Determination reflecting the neutral's recommendation was issued to the Trustee for consideration.

17. Following the Trustee's review of neutral's recommendation regarding the Sayegh Brothers Claim, a Trustee Determination Notice was issued to Sayegh Brothers on September 8, 2023.

18. Claimants, including Sayegh Brothers, who did not object to the terms of the Trust Documents with respect to judicial review of their claims are afforded a maximum of three reviews of their claims under the CRP: the initial Claims Determination, a reconsideration determination, and a Trustee Determination. For Sayegh Brothers and all other claimants without a right of judicial review of their claims under the Trust Documents, the Trustee Determination is deemed to be the final determination of their claims.

19. Sayegh Brothers engaged in the appeal process governed by Section VIII of the CRP and exhausted its appeals. Sayegh Brothers does not have a right to Court review of the Sayegh Brothers Claim under the Trust Documents, the Plan or the Confirmation Order.

20. As noted above, as of March 14, 2024, the Trust had issued Determination Notices to **100%** of all claimants who have submitted claims questionnaires to the Trust, awarding $19.24 billion to these claimants. More than 97% of these claimants have accepted their determinations—

including every Fire Victim Claimant with a right to judicial review—allowing the Trust to finalize the vast majority of Fire Victim Claims and pay more than $11 billion to holders of Fire Victim Claims.

**OBJECTION**

As explained in the Preliminary Statement, Sayegh Brothers does not have a right to judicial review of the Trust's final determination of its Fire Victim Claim. Sayegh Brothers is not among those who are listed in footnote 7 to Paragraph 18(k) of the Confirmation Order as having explicitly preserved the right to judicial review. In fact, Sayegh Brothers did not ever object in any way to the provisions in the Plan or the Trust Documents that govern the review and determination of Fire Victim Claims,[9] none of which have been amended or modified in any way since the Confirmation Order was entered. Accordingly, there is no recourse in this Court for Sayegh Brothers to address its dissatisfaction with the Trust's final determination of its Fire Victim Claims. *See* Dkt. No. 14156. Nevertheless, the Trustee addresses the false and misleading allegations made in the Motion and requests that this Court deny the Motion.

I. THE SAYEGH BROTHERS MOTION FAILS TO STATE A BASIS UPON WHICH THE REQUESTED RELIEF COULD BE GRANTED

A. The Trust did not Amend the CRP

21. The CRP sets forth the sole process by which Fire Victim Claims are processed, evaluated, and determined by the Trust. The Trust has not altered its claims determination process any way since the Trust was established on the Effective Date. The Trust has not revised or amended the CRP in any way, material or otherwise. The CRP remains as it was on the Effective Date, consistent with the terms of the Plan, Confirmation Order and Trust Agreement.

22. As noted above, the Trust developed several guidelines to ensure that various claim types would be consistently evaluated on the basis of the California law applicable to each particular

---

[9] Despite the claim in the Motion that the Sayegh Brothers Claim was "recently determined by the Trustee," Sayegh Brothers actually received the Trust's final determination of its Fire Victim Claim more than five month prior to filing the Motion, after nearly a year of appeals within the Trust. Counsel for the Trustee explained to Sayegh Brothers' counsel in detail why Sayegh Brothers could not pursue further appeal of the Trust's final determination of its Fire Victim Claim. *See* **Exhibit 2**.

type of claim. In addition to the BIL Guidelines, the Trust developed *Eligibility Criteria for Real Property and Personal Property Claims*, *Eligibility Criteria for Personal Income Loss Claims, Eligibility Criteria for Emotional Distress Claims, Eligibility Criteria for Personal Injury Claims,* and *Eligibility Criteria for Wrongful Death Claims* (collectively with the BIL Guidelines, the "**Trust Claim Guidelines**"). The Trust Claim Guidelines are available to claimants and their counsel to view and download in PDF form on the Fire Victim Trust Website.

23. The Trust Claim Guidelines do not revise or amend any claim determination criteria set forth in the CRP. Rather, the Trust Claim Guidelines set forth the applicable California law for the various types of claims to be determined pursuant to the terms of the CRP.

24. The BIL Guidelines, developed by the Trust with a retired California state court judge, do not conflict with the California law applicable to the Sayegh Brothers Claim. Contrary to the assertion in the Motion that the Trust somehow has contended the CRP and BIL guidelines "preempt California law," the Trust has consistently maintained only that it must consistently apply the proper California law to all claims determinations. The Trust therefore has denied Sayegh Brothers' demand that the Sayegh Brothers Claim be treated differently than all other BIL claims because it would prefer a different outcome—an outcome its counsel contends would result from the application of California inverse condemnation law that is *not* applicable to non-property claims such as the Sayegh Brothers Claim.

B. The Sayegh Brothers Claim is not a Real Property
  Claim to Which California Inverse Condemnation Applies

25. The Plan, Confirmation Order and Trust Documents provide that the Trust shall process and determine claims independent of this Court and the Debtors. Although this Court does not have any authority to direct the methods by which the Trust determines Fire Victim Claims, the Trust submits that the BIL Guidelines properly address the relevant California law regarding business income loss.

26. The Motion notes that "[u]nder longstanding California law the threshold issue is whether the damage or taking for a public purpose caused a reduction in the fair market value of the property interest affected." Motion at 9:9-12. Significantly, the Motion also acknowledges that "the

8

doctrine's main limitation is that it mainly applies to real property damage." Motion at 9:5-6. In other words, a real property interest is necessary to properly assert inverse condemnation damages.

27. Here, Sayegh Brothers do not have a real property interest eligible for compensation by the Trust because Sayegh Brothers' insurance company already fully compensated Sayegh Brothers for the real property lost in the Camp Fire.

28. Instead, the Sayegh Brothers Claim seeks compensation solely for lost rental income beyond the limits of its insurance policy. Nevertheless, counsel for the Sayegh Brothers seeks compensation for the Sayegh Brothers Claim under California inverse condemnation law, presumably to obtain payment of an unsubstantiated claim for attorneys' fees and costs in excess of $1 million.

29. Despite the lack of any property claim within the Sayegh Brothers Claim, in order to support its demand for inverse condemnation damages, the Motion asserts that Sayegh Brothers has a "leasehold interest" in the real property for which it has already been fully compensated by insurance. Sayegh Brothers, as the owner and lessor of the subject property, has a ***fee interest*** in that property that has been covered by insurance—any leasehold interest belonged to the lessees. Importantly, the Sayegh Brothers Claim simply does not include the requisite real property claim.

30. Accordingly, Sayegh Brothers' demand for inverse condemnation damages on account of lost rental income fails as a matter of California law. There is no basis to direct the Trust to reevaluate the Sayegh Brothers Claim or any other BIL claims using inverse condemnation.

II. <u>EQUITY REQUIRES THAT THE COURT DENY THE MOTION</u>

31. Even if the Motion had stated a legitimate basis for the relief requested therein (which, as explained above, it did not), the requested relief is moot and the Motion should be denied.

A. <u>The Request That the Trust Discontinue Using the BIL Guidelines is Moot</u>

32. The Motion requests that this Court order the Trust to cease using the BIL Guidelines on claims asserted by commercial landlords for loss of lease income, but this request is moot.

33. As noted above, ***there are no claims subject to the Trust's BIL Guidelines remaining to be determined***. In fact, there are no claims ***of any type*** left for the Trust to determine.

34. As there are no BIL claims that have not already been determined, the request that the Court direct the Trust to discontinue using the BIL Guidelines is moot and the request must be denied.

      B.      The Request That the Trust Reevaluate Certain
              Business Income Loss Claims is Equitably Moot

35. The Motion also requests that this Court direct the Trust to reevaluate all Fire Victim Claims asserted by commercial landlords for loss of lease income according to the standard advocated by counsel for Sayegh Brothers. This relief requested by Sayegh Brothers may require this Court to direct Fire Victim Claimants to return the pro rata payment amounts they have been paid on account of their BIL claims—based on determinations the overwhelming majority of such claimants have accepted—and start the determination process for these claims over again using California law ***not applicable to their non-real property claims***.

36. Of the 11,173 BIL claims submitted to the Trust, Fire Victim Claimants have accepted the Trust's determination of approximately **ninety-five percent (95%)** of such claims. Moreover, not all such claims that remain open are contested, as some are merely on a CQ that includes a separate claim that is being contested.

37. Yet now, with 100% of all Fire Victim Claims having been determined and all but 3% of such determinations having been accepted by Fire Victim Claimants, Sayegh Brothers wants to unwind thousands of claims determinations and set the Trust back significantly ***without any concern for the harm its request would cause other Fire Victim Claimants***.

38. Not only is the relief requested unwarranted, as the method proposed by Sayegh Brothers would require the Trust to follow inapplicable California law, but the Court does not have the authority to direct the method by which Fire Victim Claims are determined.

39. Moreover, the requested unwinding and redetermination would affect ***every single Fire Victim Claim*** because the Trust may need to evaluate the cost of such an operation and the impact such cost would have on the availability of funds to pay Fire Victim Claims. Undoubtedly, the cost of the requested reevaluation would lower the amount of the pro rata payments the Trust could make, ***requiring the Trust to attempt to claw back payments made to innocent Fire Victim Claimants***.

10

40. As the requested reevaluation of BIL claims such as the Sayegh Brothers Claim is unwarranted, impractical and certain to adversely affect every one of the 71,804 Fire Victim Claimants who have not asked for or supported the requested reevaluation, the Court must deny the Motion.

## CONCLUSION

For the reasons set for in this objection, the Trustee respectfully requests that this Court deny the relief requested in the Motion and grant such other and further relief as may be just.

DATED: April 2, 2024

BROWN RUDNICK LLP

By: /s/ David J. Molton
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

and

Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

*Attorneys for the Fire Victim Trustee*

# EXHIBIT 1

Brief in Support of Sayegh Brothers Fire Victim Claim

**EXHIBIT 1 FILED UNDER SEAL**

# EXHIBIT 2

October 5, 2023 Letter from D. Molton to M. Bush

**EXHIBIT 3**

January 4, 2024 Email from D. Molton to M. Bush