1    William B. Abrams
    end2endconsulting@gmail.com
2    625 McDonald Ave.
    Santa Rosa, CA, 95404
3    Tel: 707 397 5727

4

5    *Pro Se PG&E Fire Victim Claimant and Party to related proceedings before the California Public*
6    *Utilities Commission*

**FILED**

**APR 12 2024** BG

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

7

8

9            **UNITED STATES BANKRUPTCY COURT**
10            **NORTHERN DISTRICT OF CALIFORNIA**
            **SAN FRANCISCO DIVISION**

11

12

13    In re:

14    PG&E CORPORATION,

15

16       -and-

17    PACIFIC GAS AND ELECTRIC
18    COMPANY,
         Debtors.

19

20    ☐ Affects PG&E Corporation
    ☐ Affects Pacific Gas and Electric Company
21    ☒ Affects both Debtors
22

23    * *All papers shall be filed in the lead case,*
24    *No. 19-30088 (DM)*

25

26

27

28

Bankr. Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administrated)

**WILLIAM B. ABRAMS NOTICE REGARDING FIRE VICTIM TRUST AND VICTIM CLAIMANT COMMUNICATIONS**

**Related Documents:** [Dkt. 14396, 14401]

# PRELIMINARY STATEMENT

William B. Abrams ("**Abrams**") as a PG&E victim, claimant and Northern California resident, submits this "William B. Abrams Notice Regarding Fire Victim Trust and Victim Claimant Communications." In keeping with the "Order Setting Response Deadline to William B. Abrams' Motion to Stay" [Dkt. 14401], Abrams is filing this notice to ensure certain documents and communications are entered into the record but will not be putting forward additional arguments given that he was not afforded an opportunity to reply. Abrams hopes that this is viewed by the Court as a good faith effort to comply with the Court Order and the processes for Pro Se Claimants associated with this case. If after considering the papers filed on this matter and the associated documents herein, Abrams is granted the opportunity to reply by the Court, he is prepared to put forward facts and arguments to refute the forthcoming claims he expects to be filed by the Fire Victim Trustee and other core parties within this case.

# BACKGROUND

1) The following is an excerpt from the "*Notice of (I) Approval of Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization (II) Establishment and Approval of Record Date, Voting Deadline, and Other Plan Solicitation and Voting Procedures; (III) Approval of Forms of Ballots, Solicitation Packages, and Related Notices; (IV) Establishment of Plan Confirmation Notice Procedures and (V) Other Related Relief*" that was provided with the victim voting packet [Dkt. 6935] (See **Exhibit A**):

> part of any settlement as set forth in Section 4.25(f)(ii) hereof.
>
> (c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

This paragraph entitled "*Only Consensual Non-Debtor Releases*" states that "*the holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.*"

2) The attached April 7, 2024 Notice to "Cease and Desist the Administration of Nondebtor Releases to PG&E Victims" (See **Exhibit B**) was served upon the Trustee and Trust Oversight Committee to reinforce the fact that victims were provided with Court approved disclosures that they could "opt in or not to the releases" and that the "*the holder of a Claim or Interest shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor*... [Victim Claimants] *shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor...*" Within this Notice Abrams put forward the following remedy given that the FVT violated the terms of the Plan and the Disclosure Statement:

1) *"**Halt the Administration of Nondebtor Releases:** The Trustee must no longer administer these nondebtor releases in a manner that is inconsistent with the Disclosure Statement."*
2) *"**Reissue Nondebtor Releases** – The Trustee should immediately dispose and make null and void all prior issued nondebtor releases that were administered in direct violation of the Disclosure Statement. The Trustee should then reissue the nondebtor releases and allow victim claimants to "opt-in or not to the releases." The Trustee must also communicate to victims that they will **receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor.""***
3) *"**Reimburse Financial Impacts Associated with Corrections** – The costs associated with the above two administrative and legal processes to undo the prior actions of the Fire Victim Trustee and other Trust representatives should not be taken from the corpus of the Fire Victim Trust. The Trustee should ensure full disclosure to victims regarding the costs associated with these corrections so that victims will be reassured that they are not unduly subjected to added costs that will negatively impact their pro-rata payments."*

3) Subsequent to this notice, the Trustee issued the attached April 8, 2024 letter (See **Exhibit C**) that for the first time indicated an earlier April 15, 2024 date for when victims need to submit these Non-Debtor releases and indicated that "*release submission is a prerequisite to payment going forward*." Accompanying this letter, the Trustee also released a "*Messages from Cathy*" video emphasizing this new date.[1]

4) In response to this letter and video, the attached "Notice Regarding Breach of Trust and Improper Administration of NonDebtor Releases" was sent to the Trustee and Trust Oversight Committee Members on April 12, 2024 (See **Exhibit D**). This letter provided the following facts for the Trustee's further consideration:

1) **Disclosure Statement** – The Court approved Disclosure Statement issued at the time that victims voted upon the plan clearly and unequivocally states that "[Victim Claimant] *holder's decision to opt-in or not to the releases shall not in any way affect the classification or treatment of such Claim or Interest. The holder of a Claim or Interest **shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor**... [Victim Claimants] shall*

---

[1] See April 8, 2024 Trustee Video, https://www.firevictimtrust.com/TrustUpdates.aspx#messagesfromcathy

receive the same amount of consideration under the Plan **whether or not such holder elects or release a party that is not a Debtor...**" (emphasis added)

2) **No Informed Consent** – The victims within this case were never noticed regarding any process or procedure to "opt-out." It appears that this lack of informed consent occurred due to (1) certain attorneys on core committees within this case willfully choosing not to inform their clients or the other victims they represented about a process or procedure to "opt-out" of nondebtor releases or (2) other attorneys who were not made aware of the process or procedure to opt-out of the nondebtor releases in turn did not inform their victim clients. It should not matter to the Trustee the percentage of victims that fall into the above two categories, the result is the same. Victims including Abrams were never provided with informed consent.

3) **Victims Signing Releases Under Duress** – Now that it is clear to victims that they will only receive up to 70% of their FVT determinations, they are trying to make do to put food on the table for their families and rebuild their homes and their lives. Indeed, these same victims that were burned out of their homes by PG&E are now being told that they are "required" to sign these nondebtor releases to receive their 66% pro-rata payment. This is clearly requiring victims to sign under duress. The Abrams Family like many victims have endured many hardships while waiting on the intentionally slow stock sale process intentionally designed within the FVT Agreement to protect the financial interests of PG&E's institutional investors that were concerned about a quicker sell off of the victim stock position in PCG.

Following these points, this letter provided the following recommendation:

*"The extent to which the Trustee may question the facts above, I simply suggest that the Trustee do one simple thing. She should ask the core attorneys on this case, largely represented on the Trust Oversight Committee, to produce the notice or notices that were sent to victims with this opt-out clause. Please, ask them to point to the check box or any other mechanism to opt-out of these nondebtor releases in accordance with the Disclosure Statement and regardless of their vote on the plan. Abrams contends that he along with the other 70,000+ PG&E victims never received such a notice. However, if the Trustee manages to acquire this notice and relies upon it as the basis of determining that informed consent was indeed provided, she should share such notice with Abrams and other victims. If on the other hand this notice is not produced, the Trustee and Members of the Trust Oversight Committee should consider the release null and void and immediately cease and desist the administration of these releases so as not to subject victims to additional harms."*

5) The Court should be made aware that many victims have attempted to weigh in regarding these and other issues within this case but have been faced with increasingly more restrictive processes for making their voices heard. Given these increasing restrictions, Abrams, upon receiving permission from Ms. Kullmann and through driving to the clerk's counter in San Francisco, provides the attached email to the Court (See **Exhibit E**) representing one of many other victims that would like to make their voice heard on this matter.

Abrams hopes that this notice and the associated documents attached hereto will be welcome and appreciated by the Court to assist with deliberations related to the "William B. Abrams Motion to Stay the Administration, Execution and Enforcement of Victim Claimant Releases as Defined within the Fire Victim Trust Agreement Pending United States Supreme Court Ruling and Pursuant **11 U.S.C. § 105(A)**" [Dkt. 14396]. Abrams as a Pro Se Claimant and Victim has done his best to adhere to all Court processes, procedures and the "Order Setting Response Deadline to William B. Abrams' Motion to Stay" [Dkt. 14401] and will respectfully await the Trustee's response and the Court's decision.

Executed on April 12, 2024, at Santa Rosa, CA.

Respectfully submitted,

William B. Abrams
Pro Se Claimant

**Exhibit A**

| | |
|---|---|
| 1 | WEIL, GOTSHAL & MANGES LLP |
| 2 | Stephen Karotkin (*pro hac vice*) (stephen.karotkin@weil.com) |
| 3 | Ray C. Schrock, P.C. (*pro hac vice*) (ray.schrock@weil.com) |
| 4 | Jessica Liou (*pro hac vice*) (jessica.liou@weil.com) |
| 5 | Matthew Goren (*pro hac vice*) (matthew.goren@weil.com) |
| 6 | 767 Fifth Avenue |
| 7 | New York, NY 10153-0119 Tel: 212 310 8000 |
| 8 | Fax: 212 310 8007 |

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

   **- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

   **Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Chapter 11 Case

No. 19-30088 (DM)

(Lead Case)

(Jointly Administered)

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT FOR DEBTORS' AND SHAREHOLDER PROPONENTS' JOINT CHAPTER 11 PLAN OF REORGANIZATION; (II) ESTABLISHMENT AND APPROVAL OF RECORD DATE, VOTING DEADLINE, AND OTHER PLAN SOLICITATION AND VOTING PROCEDURES; (III) APPROVAL OF FORMS OF BALLOTS, SOLICITATION PACKAGES, AND RELATED NOTICES; (IV) ESTABLISHMENT OF PLAN CONFIRMATION NOTICE PROCEDURES; AND (V) OTHER RELATED RELIEF**

*Weil, Gotshal & Manges LLP*
*767 Fifth Avenue*
*New York, NY 10153-0119*

40662-01

**PLEASE TAKE NOTICE** that:

1.      **Approval of Disclosure Statement**. By Order, dated March 17, 2020 [Docket No. 6340] (the "**Disclosure Statement and Solicitation Procedures Order**"), the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**") approved the disclosure statement (the solicitation version of which is filed at Docket No. 6353, together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") for the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 16, 2020* [Docket No. 6320] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**")[1] as having adequate information as provided under section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**"), and also approved certain procedures for the solicitation, distribution, and tabulation of votes to accept or reject the Plan.  The Plan is annexed as **Exhibit A** to the Disclosure Statement. The Bankruptcy Court previously set certain dates and deadlines with respect to approval of the Disclosure Statement and confirmation of the Plan by Order, dated February 11, 2020 [Docket No. 5732] (the "**Scheduling Order**").

2.      **The Voting Classes and Record Date**. Only parties that hold Claims against, or Interests in, the Debtors in the following Classes as of March 3, 2020 (the "**Record Date**") are entitled to vote to accept or reject the Plan (collectively, the "**Voting Classes**"):

| The Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 5A-I | HoldCo Public Entities Wildfire Claims | Impaired |
| Class 5A-II | HoldCo Subrogation Wildfire Claims | Impaired |
| Class 5A-III | HoldCo Fire Victim Claims | Impaired |
| Class 10A-I | HoldCo Common Interests | Impaired |
| Class 10A-II | HoldCo Rescission or Damage Claims | Impaired |
| Class 3B-I | Utility Impaired Senior Note Claims | Impaired |
| Class 3B-III | Utility Short-Term Senior Note Claims | Impaired |
| Class 3B-IV | Utility Funded Debt Claims | Impaired |
| Class 5B-I | Utility Public Entities Wildfire Claims | Impaired |

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order, as applicable.

2

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| The Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 5B-II | Utility Subrogation Wildfire Claims | Impaired |
| Class 5B-III | Utility Fire Victim Claims | Impaired |

3.  **The Voting Deadline.**  Votes to accept or reject the Plan must be actually received by the Debtors' solicitation agent, Prime Clerk LLC (**"Prime Clerk"** or the **"Solicitation Agent"**), by no later than **May 15, 2020 at 4:00 p.m. (Prevailing Pacific Time)** (the **"Voting Deadline"**) in accordance with the procedures set forth in the Disclosure Statement and Solicitation Procedures Order and the instructions set forth on any Ballot.  Failure to follow the voting instructions as set forth in the Disclosure Statement and Solicitation Procedures Order and any applicable Ballot may result in the vote of any such Claim or Interest holder not being counted for purposes of accepting or rejecting the Plan.

4.  **The Non-Voting Classes and Other Parties Not Entitled to Vote on the Plan.**  Holders of Unimpaired Claims or Interests in the Classes listed below are Unimpaired under the Plan (collectively, the **"Non-Voting Classes"**), are not entitled to vote to accept or reject the Plan, and will not receive a Ballot.  Such holders will instead receive a Notice of Non-Voting Status.

| The Non-Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 1A | HoldCo Other Secured Claims | Unimpaired |
| Class 2A | HoldCo Priority Non-Tax Claims | Unimpaired |
| Class 3A | HoldCo Funded Debt Claims | Unimpaired |
| Class 4A | HoldCo General Unsecured Claims | Unimpaired |
| Class 5A-IV | HoldCo Ghost Ship Fire Claims | Unimpaired |
| Class 6A | HoldCo Workers' Compensation Claims | Unimpaired |
| Class 7A | HoldCo Environmental Claims | Unimpaired |
| Class 8A | HoldCo Intercompany Claims | Unimpaired |
| Class 9A | HoldCo Subordinated Debt Claims | Unimpaired |
| Class 11A | HoldCo Other Interests | Unimpaired |
| Class 1B | Utility Other Secured Claims | Unimpaired |
| Class 2B | Utility Priority Non-Tax Claims | Unimpaired |
| Class 3B-II | Utility Reinstated Senior Note Claims | Unimpaired |
| Class 3B-V | Utility PC Bond (2008 F and 2010 E) Claims | Unimpaired |
| Class 4B | Utility General Unsecured Claims | Unimpaired |
| Class 5B-IV | Utility Ghost Ship Fire Claims | Unimpaired |
| Class 6B | Utility Workers' Compensation Claims | Unimpaired |
| Class 7B | 2001 Utility Exchange Claims | Unimpaired |
| Class 8B | Utility Environmental Claims | Unimpaired |
| Class 9B | Utility Intercompany Claims | Unimpaired |
| Class 10B | Utility Subordinated Debt Claims | Unimpaired |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

3

| The Non-Voting Classes | | |
|---|---|---|
| **Class** | **Designation** | **Impairment** |
| Class 11B | Utility Preferred Interests | Unimpaired |
| Class 12B | Utility Common Interests | Unimpaired |

In addition, pursuant to the Disclosure Statement and Solicitation Procedures Order, the following holders of Claims and Interests **are not** entitled to vote to accept or reject the Plan:

    (a) Any holder of a Claim that was not listed in the Schedules or was listed as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a Proof of Claim was not (i) filed by the applicable Bar Date or (ii) deemed timely filed by an Order of the Bankruptcy Court before the Voting Deadline unless the Debtors have consented in writing;

    (b) Any holder of a Claim that is the subject of an objection or request for estimation filed by February 21, 2020 at 4 p.m. (Prevailing Pacific Time);

    (c) Any holder of a Claim (i) filed in the amount of $0.00, (ii) where, as of the Record Date, the outstanding amount of a Claim is not greater than $0.00, or (iii) where a Claim has been disallowed, expunged, disqualified, or suspended; and

    (d) Claimholders who are otherwise disqualified from voting to accept or reject the Plan pursuant to the procedures set forth in the Solicitation Procedures and Disclosure Statement Order.

    5.    **Objections to Claims or Requests to Estimate for Voting Purposes.** If an objection to, or request for estimation of, a Claim has been filed and served by any party in interest with appropriate standing by the deadline set forth in the Scheduling Order (February 21, 2020, at 4:00 p.m. (Prevailing Pacific Time)), such Claim shall be temporarily disallowed or estimated for voting purposes only with respect to the Plan and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection or request for estimation; *provided,* that the deadline for any party in interest with appropriate standing to file and serve an objection to, or request for estimation of, any timely filed HoldCo Rescission or Damage Claim has been extended through and including May 1, 2020, at 4:00 p.m. (Prevailing Pacific Time).

    6.    **Rule 3018 Motions.** Pursuant to the Scheduling Order, if you timely filed a Proof of Claim or Interest and disagreed with the Debtors' classification of, objection to, or request for estimation of, your Claim or Interest and believe that you should have been be entitled to vote to accept or reject the Plan, then you were required to file and serve a motion, pursuant to Bankruptcy Rule 3018(a) (a

4

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1  "**3018 Motion**"), to temporarily allow such Claim or Interest in a different amount or in a different Class

2  for purposes of voting to accept or reject the Plan by March 6, 2020 at 4:00 p.m. (Prevailing Pacific

3  Time), unless such deadline has been extended by agreement of the Debtors; *provided, however,* that,

4  notwithstanding anything in the Disclosure Statement and Solicitation Procedures Order or the

5  Scheduling Order to the contrary, the deadline for any holder of a timely filed HoldCo Rescission or

6  Damage Claim to file a 3018 Motion has been extended through and including April 23, 2020, at 4:00

7  p.m. (Prevailing Pacific Time). 3018 Motions that were not timely filed and served in accordance with

8  the Scheduling Order shall not be considered. The rights of the Debtors and any other party in interest

9  to respond or object to any 3018 Motion are hereby expressly reserved. Any claimant or interest holder

10 that timely filed a 3018 Motion will be provided with a Ballot and such Ballot will be counted in

11 accordance with the procedures set forth in the Disclosure Statement and Solicitation Procedures Order,

12 unless temporarily allowed in a different amount by an Order of the Court entered prior to the Voting

13 Deadline. For the avoidance of doubt, and notwithstanding any other provision in the Disclosure

14 Statement and Solicitation Procedures to the contrary, any amount that is established or determined by

15 the Court in connection with a timely filed 3018 Motion shall be allowed in the amount determined by

16 the Court for voting purposes only with respect to the Plan, and not for purposes of allowance or

17 distribution;[2]

18     7.    **The Confirmation Hearing**. Pursuant to the Scheduling Order, the hearing (the

19 "**Confirmation Hearing**") to consider confirmation of the Plan will be held on **May 27, 2020 at 10:00**

20 **a.m. (Pacific Time)**, before the Honorable Dennis Montali, United States Bankruptcy Judge, in

21 Courtroom 17 of the Bankruptcy Court, 450 Golden Gate Avenue, 18th Floor, San Francisco, California

22 94102. Pursuant to the *Order re: Coronavirus Disease Public Health Emergency*, General Order 38

23 (N.D. Cal. Mar. 18, 2020), **all hearings through May 1, 2020 will be conducted telephonically and**

24 **the courtroom will be closed**. Although the Confirmation Hearing is scheduled for May 27, 2020,

25

26 [2] Claimants may contact PG&E Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by telephone at 844-339-4217 (domestic) or 929-

27 333-8977 (international), or by e-mail to pgeinfo@primeclerk.com to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a 3018 Motion has been filed.

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

5

parties are encouraged to check back as to the status of the Confirmation Hearing or the manner in which the Confirmation Hearing will be conducted with the Clerk of the Bankruptcy Court (the "**Clerk**") by visiting at http://www.canb.uscourts.gov/ or with Prime Clerk by visiting the case website at https://restructuring.primeclerk.com/pge (the "**Case Website**").[3]  The procedures for filing responses and objections to confirmation of the Plan are set forth below.  The Confirmation Hearing and the deadlines related thereto may be continued from time to time by the Bankruptcy Court without further notice other than announcement by the Bankruptcy Court in open Court, as indicated in any notice of agenda of matters scheduled for hearing filed with the Bankruptcy Court, or on the docket.  The Plan may be modified, if necessary, before, during, or because of the Confirmation Hearing, without further notice to interested parties.

8.    **Objections to Confirmation of the Plan**.  Responses and objections to confirmation of the Plan must:

(a)  Be in writing;

(b)  State the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

(c)  State with particularity the basis and nature of any objection with respect to the Plan;

(d)  Conform to the Bankruptcy Rules, the Bankruptcy Local Rules for the United States District Court for the Northern District of California, the *Order Establishing Procedures for Disclosure Statement and Confirmation Hearing* (N.D. Cal. May 2017) (Montali, J.), and the Scheduling Order; and

(e)  Be filed with the Bankruptcy Court and served in accordance with Bankruptcy Rule 3020(b)(1) so as to be actually received on or before **4:00 p.m. (Prevailing Pacific Time) on May 15, 2020** (the "**Objection Deadline**") by the following parties (the "**Notice Parties**"):

(i)  Clerk, U.S. Bankruptcy Court for the Northern District of California, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102;

---

[3] All parties who wish to appear at hearings must make arrangements to appear telephonically with CourtCall at 1−866−582−6878 no later than 4:00 p.m. (Pacific Time) on the day before the hearing. Further information regarding telephonic appearances via CourtCall can be found on the court's website, at the following location: http://www.canb.uscourts.gov/procedure/district-oakland-san-jose-san-francisco/policy-and-procedure-appearances-telephone.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

6

(ii)    The Debtors, c/o PG&E Corporation and Pacific Gas and Electric Company, 77 Beale Street, P.O. Box 770000, San Francisco, California 94177 (Attn: Janet Loduca, Esq.);

(iii)   The attorneys for the Debtors, (A) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. (stephen.karotkin@weil.com), Jessica Liou, Esq. (jessica.liou@weil.com), and Matthew Goren, Esq. (matthew.goren@weil.com)), (B) Keller Benvenutti Kim LLP, 650 California Street, Suite 1900, San Francisco, California 94108 (Attn: Tobias S. Keller, Esq. (tkeller@kbkllp.com) and Jane Kim, Esq. (jkim@kbkllp.com)), and (C) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019 (Attn: Paul H. Zumbro, Esq. (pzumbro@cravath.com), Kevin J. Orsini, Esq. (korsini@cravath.com), and Omid H. Nasab, Esq. (onasab@cravath.com));

(iv)    The U.S. Trustee, 450 Golden Gate Avenue, 5th Floor, Suite 05-0153, San Francisco, California 94102 (Attn: James L. Snyder, Esq. (James.L.Snyder@usdoj.gov) and Timothy Laffredi, Esq. (Timothy.S.Laffredi@usdoj.gov));

(v)     The attorneys for the administrative agent under the Debtors' debtor-in-possession financing facility, (A) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982 (Attn: Kristopher M. Hansen, Esq. (khansen@stroock.com), Erez E. Gilad, Esq. (egilad@stroock.com), and Matthew G. Garofalo, Esq. (mgarofalo@stroock.com)) and (B) Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067-3086 (Attn: Frank A. Merola, Esq. (fmerola@stroock.com));

(vi)    The attorneys for the collateral agent under the Debtors' debtor-in-possession financing facility, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Eli J. Vonnegut, Esq. (eli.vonnegut@davispolk.com), David Schiff, Esq. (david.schiff@davispolk.com), and Timothy Graulich, Esq. (timothy.graulich@davispolk.com));

(vii)   The attorneys for the CPUC, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064 (Attn: Alan W. Kornberg, Esq. (akornberg@paulweiss.com), Brian S. Hermann, Esq. (bhermann@paulweiss.com), Walter R. Rieman, Esq. (wrieman@paulweiss.com), Sean A. Mitchell, Esq. (smitchell@paulweiss.com), and Neal P. Donnelly, Esq. (ndonnelly@paulweiss.com));

(viii)  The attorneys for the Creditors Committee, (A) Milbank LLP, 55 Hudson Yards, New York, New York 10001-2163 (Attn: Dennis F. Dunne, Esq. (DDunne@milbank.com) and Samuel A. Kahlil, Esq. (skhalil@milbank.com)) and (B) Milbank LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067 (Attn: Gregory A. Bray, Esq. (GBray@milbank.com) and Thomas R. Kreller, Esq. (TKreller@milbank.com));

(ix)    The attorneys for the Tort Claimants Committee, (A) Baker & Hostetler LLP, 1160 Battery Street, Suite 100, San Francisco, California 94111 (Attn: Robert A. Julian, Esq. (rjulian@bakerlaw.com) and Cecily A. Dumas,

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

7

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Esq. (cdumas@bakerlaw.com)) and (B) Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California, 90025-0509 (Attn: Eric E. Sagerman, Esq. (esagerman@bakerlaw.com) and Lauren T. Attard, Esq. (lattard@bakerlaw.com ));

(x)    The attorneys for the Ad Hoc Group of Subrogation Claim Holders, (A) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Matthew A. Feldman, Esq. (mfeldman@willkie.com), Joseph G Minias Esq. (jminias@willkie.com), Benjamin P. McCallen Esq. (bmccallen@willkie.com), and Daniel I. Forman Esq. (dforman@willkie.com) and (B) Diemer & Wei, LLP, 100 West San Fernando Street, Suite 555, San Jose, California 95113 (Attn: Kathryn S. Diemer (kdiemer@diemerwei.com));

(xi)    The attorneys for the Shareholder Proponents, Jones Day, 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071-2300 (Attn: Bruce S. Bennett, Esq. (bbennett@jonesday.com), Joshua M. Mester, Esq. (jmester@jonesday.com), and James O. Johnston, Esq. (jjohnston@jonesday.com)); and

(xii)    The attorneys for the Ad Hoc Committee of Senior Unsecured Noteholders, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York, 10036 (Attn: Michael S. Stamer, Esq. (mstamer@akingump.com), Ira S. Dizengoff, Esq. (idizengoff@akingump.com), David H. Botter, Esq. (dbotter@akingump.com), Abid Qureshi, Esq. (aqureshi@akingump.com) and (B) Akin Gump Strauss Hauer & Feld LLP, 580 California Street, Suite 1500, San Francisco, California 94104 (Attn: Ashley Vinson Crawford, Esq. (avcrawford@akingump.com)).

IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.

PURSUANT TO THE SCHEDULING ORDER, PRINCIPAL COUNSEL REPRESENTING A PARTY, OR ANY PRO SE PARTY, OBJECTING TO CONFIRMATION OF THE PLAN MUST APPEAR IN PERSON AT A PRE-CONFIRMATION SCHEDULING CONFERENCE ON MAY 19, 2020 AT 10:00 AM (PREVAILING PACIFIC TIME) TO DISCUSS SCHEDULING ANY EVIDENTIARY MATTERS TO BE DEALT WITH IN CONNECTION WITH THE CONFIRMATION HEARING AND SCHEDULING FOR BRIEFING OF CONTESTED LEGAL ISSUES. FAILURE TO APPEAR MAY RESULT IN THE OBJECTION BEING STRICKEN.

9. **Plan Releases.** INFORMATION REGARDING CERTAIN INJUNCTIONS, EXCULPATIONS, AND RELEASES UNDER THE PLAN IS SET FORTH ON ANNEX A HERETO. YOU SHOULD CAREFULLY REVIEW THE PLAN AND THE INFORMATION ON ANNEX A IN ITS ENTIRETY AS IT MAY AFFECT YOUR RIGHTS.

10. **Executory Contracts and Unexpired Leases**. Pursuant to the Plan, as of, and subject to, the occurrence of the Effective Date of the Plan and the payment of any applicable Cure Amount (as defined in the Plan), all executory contracts and unexpired leases of the Reorganized Debtors shall be deemed assumed, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, pursuant to a Final Order (as defined in the Plan), (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation Date (as defined in the Plan), or (iv) is specifically designated as an executory contract or unexpired lease to be rejected on the Schedule of Rejected Contracts (as defined in the Plan) by the Debtors. The Debtors shall serve all applicable notices regarding cure amounts or rejection as set forth in the Plan on the appropriate parties no later than fourteen (14) days before the Objection Deadline.

11. **Additional Information**. Copies of the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, the Plan, and the other solicitation materials are on file with the Clerk and may be examined by interested parties on the Case Website. Copies of the Disclosure Statement, the Disclosure Statement and Solicitation Procedures Order, the Plan, and the other solicitation materials may also be: (i) examined by interested parties during normal business hours at the office of the Clerk; (ii) accessed for a fee via PACER at http://www.canb.uscourts.gov/; and (iii) obtained by written request to the Solicitation Agent, at the address or e-mail address set forth below:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

9

40662-01

<table>
<tr><td>If by e-mail to:</td><td>If by standard, overnight, or hand delivery:</td></tr>
<tr><td>pgeinfo@primeclerk.com</td><td>PG&E Information<br>c/o Prime Clerk, LLC<br>60 East 42nd Street<br>Suite 1440<br>New York, NY 10165</td></tr>
</table>

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Dated: March 18, 2020

**WEIL, GOTSHAL & MANGES LLP**

**KELLER BENVENUTTI KIM LLP**

By:  /s/ Stephen Karotkin
Stephen Karotkin

*Attorneys for Debtors
and Debtors in Possession*

10

# ANNEX A

## NOTICE OF INJUNCTION, EXCULPATION AND RELEASE PROVISIONS[4]

**Binding Effect, Injunctions, Exculpations, and Releases.** If the Plan is confirmed by the Bankruptcy Court, the Plan, including the injunctions, exculpations, and releases contained in, among others, Sections 4.6(a), 4.7(a), 4.25(e), 4.26(b), 6.4(a), 6.7(a), 10.3, 10.4, 10.5, 10.6, 10.7, 10.8, and 10.9 thereof, will be binding on you, regardless of whether you are Impaired under the Plan and whether you have accepted the Plan. If the Plan is confirmed by the Bankruptcy Court, the following key injunction, exculpation, and release provisions will apply, subject to such definitions, other provisions, and exceptions contained in the Plan that may be applicable. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER:

*Section 10.6 – Injunction.*

(a) Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner

---

[4] Capitalized terms used in this Annex but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    or in any place, any action that does not comply with or is inconsistent with the provisions of
2    this Plan; *provided*, that nothing contained herein shall preclude such Persons who have held,
    hold, or may hold Claims against a Debtor or an estate from exercising their rights, or
3    obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation
    Order, or any other agreement or instrument entered into or effectuated in connection with
4    the consummation of the Plan.

5 (b) By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be
    deemed to have affirmatively and specifically consented to be bound by this Plan, including,
6    the injunctions set forth in this Section.

7 *Section 10.7 – Channeling Injunction.*

8 (a) The sole source of recovery for holders of Subrogation Wildfire Claims and Fire Victim
    Claims shall be from the Subrogation Wildfire Trust and the Fire Victim Trust, as applicable.
9    The holders of such Claims shall have no recourse to or Claims whatsoever against the
    Reorganized Debtors or their assets and properties. Consistent with the foregoing, all Persons
10    that have held or asserted, or that hold or assert any Subrogation Wildfire Claim or Fire
11    Victim Claim shall be permanently and forever stayed, restrained, and enjoined from taking
    any action for the purpose of directly or indirectly collecting, recovering, or receiving
12    payments, satisfaction, or recovery from any Reorganized Debtor or its assets and properties
    with respect to any Fire Claims, including all of the following actions:

13
14      (i)    commencing, conducting, or continuing, in any manner, whether directly or indirectly,
         any suit, action, or other proceeding of any kind in any forum with respect to any such
15         Fire Claim, against or affecting any Reorganized Debtor, or any property or interests
         in property of any Reorganized Debtor with respect to any such Fire Claim;

16
17      (ii)    enforcing, levying, attaching, collecting or otherwise recovering, by any manner or
         means, or in any manner, either directly or indirectly, any judgment, award, decree or
18         other order against any Reorganized Debtor or against the property of any Reorganized
         Debtor with respect to any such Fire Claim;

19
20      (iii)    creating, perfecting, or enforcing in any manner, whether directly or indirectly, any
         Lien of any kind against any Reorganized Debtor or the property of any Reorganized
         Debtor with respect to any such Fire Claims;

21
22      (iv)    asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or
         recoupment of any kind, whether directly or indirectly, against any obligation due to
23         any Reorganized Debtor or against the property of any Reorganized Debtor with
         respect to any such Fire Claim; and

24
25      (v)    taking any act, in any manner, in any place whatsoever, that does not conform to, or
         comply with, the provisions of the Plan Documents, with respect to any such Fire Claim.

26 (b) Reservations. Notwithstanding anything to the contrary in this Section 10.7 of the Plan, this
    Channeling Injunction shall not enjoin:

27

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(i) the rights of holders of Subrogation Fire Claims and Fire Victim Claims to the treatment afforded them under the Plan, including the right to assert such Claims in accordance with the applicable Wildfire Trust Agreements solely against the applicable Wildfire Trust whether or not there are funds to pay such Fire Claims; and

(ii) the Wildfire Trusts from enforcing their rights under the Wildfire Trust Agreements.

(c) **Modifications.** There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d) **No Limitation on Channeling Injunction.** Nothing in the Plan, the Confirmation Order, or the Wildfire Trust Agreements shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for herein and in the Confirmation Order.

(e) **Bankruptcy Rule 3016 Compliance.** The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

*Section 10.8 - Exculpation.* Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the Plan Funding, the DIP Facilities, the Disclosure Statement, the Plan, the Restructuring Transactions, the Wildfire Trusts (including the Plan Documents, the Claims Resolution Procedures and the Wildfire Trust Agreements), or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; any membership in (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees; the issuance of Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

3

*Section 10.9 – Releases.*

(a) *Releases by the Debtors.* **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the Restructuring, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtors, the Reorganized Debtors, and the Debtors' estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or the Debtors' estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or the Debtors' estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Fires, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to this Plan, any membership (including, but not limited to, on an *ex officio* basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

(b) *Releases by Holders of Claims and Interests.* **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, and except for the Assigned Rights and Causes of Action solely to the extent preserved by Section 10.9(g), for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

4

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Fires, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facilities, the Plan Funding, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the Public Entities Plan Support Agreement, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, the Exit Financing Documents, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents (including the Plan Documents, the Claims Resolution Procedures, the Wildfire Trust Agreements, Public Entities Plan Support Agreements, the Backstop Commitment Letters, the Subrogation Claims RSA, the Tort Claimants RSA, the Noteholder RSA, and the Exit Financing Documents), the solicitation of votes with respect to the Plan, any membership in (including, but not limited to, on an ex officio basis), participation in, or involvement with the Statutory Committees, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan; and nothing herein shall be deemed to impose a release by holders of Fire Victim Claims of insurance claims arising under their insurance policies against holders of Subrogation Wildfire Claims, other than any rights such holder may elect to release as part of any settlement as set forth in Section 4.25(f)(ii) hereof.

(c) *Only Consensual Non-Debtor Releases.* Except as set forth under Section 4.25(f)(ii) hereof, for the avoidance of doubt, and notwithstanding any other provision of this Plan, nothing in the Plan is intended to, nor shall the Plan be interpreted to, effect a nonconsensual release by a holder of a Claim in favor of a party that is not a Debtor, it being acknowledged that such holder shall be deemed to release a party that is not a Debtor under the Plan solely to the extent that such holder consensually elects to provide such Plan release in accordance with the opt-in release procedures set forth herein or in any applicable Ballot. The holder of a Claim shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor in accordance with the opt-in release procedures set forth herein or in any applicable Ballot.

(d) *Release of Liens.* Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Financing Documents, on the Effective Date and concurrently with the applicable

5

distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.

(e) *Waiver of Statutory Limitations on Releases.* Each releasing party in any general release contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each releasing party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, and solely with respect to any general release under this Plan, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in this Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

(f) Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan. For the avoidance of doubt, this injunction shall not apply to the rights of the Fire Victims Trust to prosecute and settle any Assigned Rights and Causes of Action solely to the extent provided for in the Plan. Notwithstanding the above, the holders of Environmental Claims, Workers' Compensation Claims and 2001 Utility Exchange Claims retain the right to assert such Claims against the Reorganized Debtors in accordance with the terms of the Plan.

(g) No Release or Exculpation of Assigned Rights and Causes of Action. Notwithstanding any other provision of the Plan, including anything in Section 10.8 and/or 10.9, the releases, discharges, and exculpations contained in this Plan shall not release, discharge, or exculpate any Person from the Assigned Rights and Causes of Action.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

6

William B. Abrams
Pro Se Claimant
625 McDonald Ave.
Santa Rosa, CA, 95404

April 7, 2024

Cathy Yanni, Trustee
PG&E Fire Victim Trust
2 Embarcadero Center, Suite 1500
San Francisco, CA, 94111

**RE: Cease and Desist the Administration of Nondebtor Releases to PG&E Victims**

Attention Ms. Yanni, Trustee:

Consistent with the "William B. Abrams Motion to Stay the Administration, Execution and Enforcement of Victim Claimant Releases as Defined within the Fire Victim Trust Agreement Pending United States Supreme Court Ruling and Pursuant **11 U.S.C. § 105(A)**" (the "**Motion**") [Dkt. 14396], Abrams respectfully requests that the PG&E Fire Victim Trustee immediately cease and desist the administration of these nondebtor releases that are in direct conflict with the Disclosure Statement and violate the constitutional rights of victims. Please, consider the following outline that clearly identifies how the current FVT administration of these releases does not conform to the Disclosure Statement that Fire Victims **relied upon** when voting on the Plan:

| Current State: Fire Victim Trust Continues to Administer Nondebtor Releases in Violation of the Disclosure Statement | Proposed State: Fire Victim Trust Changes Course and Administers Nondebtor Releases Consistent with the Disclosure Statement |
|---|---|
| Trustee Letter Dated 3/12/2024: "Q: *Are releases required to receive a 66% pro rata payment? Yes. **Only claimants whose claims have been finalized and who have signed and submitted both releases will be eligible to receive payments**"* | Disclosure Statement [Dkt. 6353]: "[Victim Claimant] *holder's decision to opt-in **or not to the releases shall not in any way affect the classification or treatment of such Claim or Interest. The holder of a Claim or Interest shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor...** [Victim Claimants] shall receive the same amount of consideration under the Plan whether or not such holder elects or release a party that is not a Debtor...*" (emphasis added) |
| **Consistent with the Disclosure Statement without Violating the Constitutional Rights of Victims: NO** <br> Victims MUST receive the same consideration under the Plan and receive the entirety of their pro rata payments "whether or not" they execute nondebtor releases. | **Consistent with the Disclosure Statement without Violating the Constitutional Rights of Victims: YES** <br> The Disclosure Statement clearly indicates that victims may opt-out of the nondebtor releases and "shall receive the same amount of consideration." |

It is clear that the Fire Victim Trustee and others are administering these nondebtor releases to unduly protect the interests of *"the Trust, the Trustee, Delaware Trustee, TOC, Claims Administrator, Special Master and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, Delaware Trustee, TOC, Claims Administrator or Special Master."* Abrams as a pro se claimant, strongly urges the Trustee and other parties acting on behalf of the Trust to cease and desist further actions which are in direct violation of the Disclosure Statement. They must change course immediately and attempt to restore the constitutional rights of the victims they are paid to represent. Respectfully, Abrams requests that the Trustee provide the following remedies:

1) **Halt the Administration of Nondebtor Releases:** The Trustee must no longer administer these nondebtor releases in a manner that is inconsistent with the Disclosure Statement.
2) **Reissue Nondebtor Releases** – The Trustee should immediately dispose and make null and void all prior issued nondebtor releases that were administered in direct violation of the Disclosure Statement. The Trustee should then reissue the nondebtor releases and allow victim claimants to "opt-in or not to the releases." The Trustee must also communicate to victims that they will *"receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor."*
3) **Reimburse Financial Impacts Associated with Corrections** – The costs associated with the above two administrative and legal processes to undo the prior actions of the Fire Victim Trustee and other Trust representatives should not be taken from the corpus of the Fire Victim Trust. The Trustee should ensure full disclosure to victims regarding the costs associated with these corrections so that victims will be reassured that they are not unduly subjected to added costs that will negatively impact their pro-rata payments.

I am hopeful that the Trustee, the Trust Oversight Committee Members and other "released parties" were not aware that they acted in a manner inconsistent with the Disclosure Statement that was relied upon by victims when they voted upon the Plan. I am also hopeful that it was not the intent of the Trustee and/or Trust representatives to operate in a manner that harms countless families and undermines the constitutional rights of victims. Now that the Trustee has been made aware through this letter and through the Motion referenced herein, I expect that these issues will be remedied. As a pro se claimant and PG&E victim, my only motivations through this letter and through the Motion are to fight to preserve the rights of victims within this case. I have appreciated certain letters issued by the Trustee indicating that she too cares for victim rights and wants to manage the Trust consistent with high ethical standards. Given these sentiments, I would welcome the opportunity to collaboratively resolve these issues with the Trustee and Trust Oversight Committee Members. I certainly understand that many of the nondebtor "released parties" within this case have done their best for victims given the confines of the plan. However, the extent to which certain parties may have acted in a manner in violation of the law or in violation of their ethical and legal obligations to represent victims, they should not be protected through these releases that were designed to be optional in accordance with the Disclosure Statement. I have proposed the above in good faith and hope that the Trustee will work towards just ends in relation to these critical issues.

Respectfully submitted,

William B. Abrams
(707) 397-5727
Cc: Fire Vitim Trust Oversight Committee



April 8, 2024

**Exhibit C**



As I mentioned in March, the Fire Victim Trust is increasing the *pro rata* payment percentage to 66% effective April 25, 2024. This means the Trust can distribute over $1.2 billion in additional payments to fire survivors. On April 25, 2024, the Trust will begin issuing 6% true-up payments, bringing prior payments up from 60% to 66%. After that, the Trust will pay all *pro rata* payments at 66% of the final award amount.

There is one critical condition for these payments to occur. Only claimants whose claims have been finalized and who have **signed and submitted both releases** will be eligible to receive this *pro rata* increase and future payments. While your next *pro rata* payment is not conditioned on whether other claimants have signed their releases, your payment is conditioned on whether you have signed your releases.

There will be at least one additional *pro rata* increase as we finalize the remaining claims, achieve certainty regarding the Trust's total payment obligations, and wind down the program.

We encourage attorneys and *pro se* claimants to submit releases as soon as possible to ensure that we receive and have time to review your releases before finalizing the April 25 payment list. Payments to eligible claimants whose releases are not received in time for the April 25 disbursement will be included in the next payment cycle after the Trust receives and confirms their releases. As a reminder, the Trust issues payments twice monthly, generally on the 15th and on the last day of the month.

### The Road to Completion

My latest video update (available <u>here</u> on the Trust website) discusses the releases, my most recent tax relief support letter, and current program statistics, and I wanted to share the statistics here with you here as well.

▸ **Notices and Payments:** 98% of determinations are now accepted and final with $11.27 billion paid to claimants.

There remain roughly 700 determination notices not yet accepted. These are in various stages of Reconsideration and Appeal. We continue working with attorneys and *pro se* claimants to move 100% of claims to acceptance and resolution without delay.

▸ **Releases:** The Trust has received signed releases from 80% of eligible claimants. We encourage all claimants to submit their releases before the April *pro rata* payment increase, as **release submission is a prerequisite to payment going forward**.

The Trust's public website includes FAQs (<u>here</u>) regarding these required releases.

1 of 2

▸ **Minors Compromises:** The Honorable Ellen Sickles James (Ret.) was appointed Special Master to review claims determinations and disbursement measures for all awards to minors and incapacitated adults. We highlighted this process in an interview with Special Master James last year (available here). To streamline the process, we have increased the threshold for awards requiring a hearing via Zoom to $56,000 for represented claimants. As before, all *pro se* claimants get a hearing, and represented claimants whose awards are below $56,000 may request a hearing.

Roughly 2,900 claimants (39%) have completed the Special Master approval process. We encourage everyone still requiring approval to submit their petitions and initiate the process as soon as possible.

We are pleased to be able to increase the *pro rata* percentage and continue to work diligently to resolve claims and process payments to all qualifying claimants.

Thanks,

Cathy Yanni

William B. Abrams
Pro Se Claimant
625 McDonald Ave.
Santa Rosa, CA, 95404

April 12, 2024

Cathy Yanni, Trustee
PG&E Fire Victim Trust
2 Embarcadero Center, Suite 1500
San Francisco, CA, 94111

RE: <u>**Notice Regarding Breach of Trust and Improper Administration of Nondebtor Releases**</u>

Attention Ms. Yanni, Trustee and Members of the Trust Oversight Committee:

In response to the April 4, 2024, "William B. Abrams Motion to Stay the Administration, Execution and Enforcement of Victim Claimant Releases as Defined within the Fire Victim Trust Agreement Pending United States Supreme Court Ruling and Pursuant **11 U.S.C. § 105(A)**" (the "**Motion**") [Dkt. 14396], you publicly released the April 10, 2024, Trustee letter and associated video indicating your intent to continue to require nondebtor releases despite receiving my April 7, 2024, letter to cease and desist the administration of these releases. Given that the Trustee seems to be content with a path that violates the terms of the Disclosure Statement and the constitutional rights of victims, Abrams wants to make clear the following three facts in the hopes that the Trustee will reconsider her actions on behalf of the victims that she represents:

1) **Disclosure Statement** – The Court approved Disclosure Statement issued at the time that victims voted upon the plan clearly and unequivocally states that "[Victim Claimant] *holder's decision to opt-in or not to the releases shall not in any way affect the classification or treatment of such Claim or Interest. The holder of a Claim or Interest shall receive the same amount of consideration under the Plan whether or not such holder elects to release a party that is not a Debtor...* [Victim Claimants] *shall receive the same amount of consideration under the Plan whether or not such holder elects or release a party that is not a Debtor...*" (emphasis added)

2) **No Informed Consent** – The victims within this case were never noticed regarding any process or procedure to "opt-out." It appears that this lack of informed consent occurred due to (1) certain attorneys on core committees within this case willfully choosing not to inform their clients or the other victims they represented about a process or procedure to "opt-out" of nondebtor releases or (2) other attorneys who were not made aware of the process or procedure to opt-out of the nondebtor releases in turn did not inform their victim clients. It should not matter to the Trustee the percentage of victims that fall into the above two categories, the result is the same. Victims including Abrams were never provided with informed consent.

3) **Victims Signing Releases Under Duress** – Now that it is clear to victims that they will only receive up to 70% of their FVT determinations, they are trying to make do to put food on the table for their families and rebuild their homes and their lives. Indeed, these same victims that were burned out of their homes by PG&E are now being told that they are "required" to sign these nondebtor releases to receive their 66% pro-rata payment. This is clearly requiring victims to sign under duress. The

Abrams Family like many victims have endured many hardships while waiting on the intentionally slow stock sale process intentionally designed within the FVT Agreement to protect the financial interests of PG&E's institutional investors that were concerned about a quicker sell off of the victim stock position in PCG.

I respectfully request that the Trustee take these profound and consequential issues under advisement as she moves forward with the administration of the Fire Victim Trust. The extent to which the Trustee may question the facts above, I simply suggest that the Trustee do one simple thing. She should ask the core attorneys on this case, largely represented on the Trust Oversight Committee, to produce the notice or notices that were sent to victims with this opt-out clause. Please, ask them to point to the check box or any other mechanism to opt-out of these nondebtor releases in accordance with the Disclosure Statement and regardless of their vote on the plan. Abrams contends that he along with the other 70,000+ PG&E victims never received such a notice. However, if the Trustee manages to acquire this notice and relies upon it as the basis of determining that informed consent was indeed provided, she should share such notice with Abrams and other victims. If on the other hand this notice is not produced, the Trustee and Members of the Trust Oversight Committee should consider the release null and void and immediately cease and desist the administration of these releases so as not to subject victims to additional harms.

I have made repeated requests to meet with the Trustee and Members of the Trust Oversight Committee to resolve the above issues in good faith. These requests have been denied. That said, I continue to stand ready to meet with the Trustee and TOC Members to identify reasonable remedies to the above issues in the best interests of victims within this case. Thank you for your continued consideration of these critical issues.

Sincerely,

William B. Abrams
Pro Se Claimant and PG&E Wildfire Survivor

On Apr 10, 2024, at 12:41 PM, Lorena Parada <Lorena_Parada@canb.uscourts.gov> wrote:

Good Afternoon,

Unfortunately, we cannot accept information in emails sent to Judge Montali's staff nor will that information be considered by the court. If there is any information you would like the Judge to know and consider, you must file it on the court's docket and serve the opposing parties. If you wish to file documents, you must do so by submitting it over the counter at the Clerk's Office or mailing it to the Clerk's Office. Emailed correspondence will not be filed on the docket.

Regards,

Lorena Parada
Courtroom Deputy to the
Honorable Dennis Montali
United States Bankruptcy Court

 Susan Kulmann

April 10, 2024 at 10:55AM

☑ Releases required through the Fire Victim Trust should be Optional
**To:** RA Kroll Docket

Dear Clerk of the Court,

Can you please forward my email to Judge Montali regarding Bankruptcy Case No. 19-30088 (DM) Chapter 11 – PG&E in support of the motion to stay the FVT releases filed with the court on 4-4-2024 as docket numbers 14396 and 14397:
https://restructuring.ra.kroll.com/pge/Home-DocketInfo

Dear Judge Montali,

My name is Susan Kulmann, formerly from Santa Rosa, CA, in Sonoma County and now from Claremont, CA in Los Angeles County. Please accept this declaration of support of the "William B. Abrams Motion to Stay the Administration Execution and Enforcement of Victim Releases as Defined Within the Fire Victim Trust Agreement Pending US Supreme Court Ruling and Pursuant 11 USC 105A (the 'motion'). Docket 14396 and 14397 filed on 04-04-2024.

Since December 2023, both the FVT and my personal attorney have advised claimants that they must sign both the claimant release and the insurance release in order to receive any further payment. In addition, we are apprised that our representing attorney(s) will be paid regardless of whether their claimant signs the releases. Therefore, our attorney(s) are not pressing the trustee with questions claimants have regarding the releases.

When the voting ballots were sent to all of the victims, the disclosure stated that releases will be optional. In addition, the reorganization plan states that the claimant release must be "consensual." I did not vote for the reorganization plan and, therefore, am not "releasing parties."

Just a few concerns are that we have no idea who we are releasing as claimants are not privy to detailed financial statements that name contractors and professionals hired by the FVT. Children who were minors at the time of the fire – what do they do when they didn't vote? Or people whose lawyers voted for them without their knowledge or consent? Or people who never received the ballot or received them after the due date? There are various concerns Judge Montali. No one from the Trust Oversight Committee or the Fire Victims Trust has answered our questions. Both my personal attorney and Trustee Yanni continue to issue ultimatums that we must sign these releases to receive any further disbursements. This coercion is very distressing to all of the claimants.

The release process is time-consuming (December 2023 – April 27, 2024), and its' administration will further erode funds left in the trust. Thereby, Trustee Yanni has informed claimants that only 6% will be released in the next disbursement. The administration of the releases is a gross misuse of funds, as well as ethical violations by the trustee.

Judge Montali, please help the claimants and intervene at this juncture by issuing a stay on the releases. We will all be grateful for any assistance you can offer.

Sincerely,

Susan Kulmann