**Entered on Docket**
**April 18, 2024**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**




**Signed and Filed: April 18, 2024**

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |

**AMENDED ORDER OVERRULING SAYEGH BROTHERS MOTION**[1]

On April 9, 2024, the court heard the Sayegh Brothers' *Motion to Determine If the Trustee's Modification of the Claims Resolution Procedure Was Approved by Bankruptcy Court and If Not So Approved to Grant Requested Relief Under 11 U.S.C. § 105(a)*

[1] This Order replaces Dkt. 14422 to incorporate minor non-substantive edits.

*and § 1142(a) and B.L.R. 9014-1(b)(3)* (Dkt. 14319) (the "Motion") and the *Fire Victim Trustee's Objection to Sayegh Brothers Motion* (Dkt. 14388) ("FVT Objection"). Appearances are noted on the record. For the reasons explained below, the court will sustain the FVT Objection and deny the Motion.

## I. BACKGROUND

On June 19, 2020, the Debtors filed the *Debtors' and Shareholder Proponent's Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* ("Plan") (Dkt. 8048), which was the result of many revisions and long negotiations by various stakeholders over a months-long process.

On June 20, 2020 the court entered an *Order Confirming Debtor's and Shareholder Proponent's Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* ("Confirmation Order") (Dkt. 8053). The Plan and Confirmation Order established the Fire Victim Trust ("FVT") as of the Plan's effective date, on July 1, 2020. The main role of the FVT is the resolution and payment of Fire Victim Claims as defined in the Trust Agreement described below. The process by which the FVT carries out this role is set forth in the Fire Victim Trust Agreement ("Trust Agreement") and the Fire Victim Claims Resolution Procedures ("CRP") (both at Dkt. 8057), which are incorporated into the Confirmation Order.

The Trust Agreement directs the FVT's Trustee and Claims Administrator to resolve Fire Victim Claims in accordance with the CRP, and also gives reasonable discretion in their determinations without the need to seek court approval in that decision making. Trust Agreement §§ 2.3 and 2.4. The Trust



Case: 19-30088 Doc# 14426 Filed: 04/18/24 Entered: 04/18/24 16:37:10 Page 2 of 8

Agreement further states that "[t]he Claims Administrator's determination, as confirmed by the Trustee, of eligibility, amount, and allowance of each Fire Victim Claim shall be final and binding, and shall not be subject to any challenge or review of any kind, by any court or other person or entity, except as set forth in Section IX of the CRP." Trust Agreement § 2.4(d). Section IX of the CRP sets forth the process by which only specifically named Fire Victim Claimants, who preserved the right to seek judicial or other review of their Fire Victim Claim determination, could seek such review.

Section II briefly sets forth the types of Fire Victim Claims and supporting documents that may be submitted to the FVT for determination, including claims for business losses. The FVT further developed a claims questionnaire for submission for Fire Victim Claimants. The "[FVT] also developed guidelines, consistent with the claims determination provisions of the CRP, to ensure the consistent consideration and determination of various types of Fire Victim Claims based on information provided to the Trust through the submission of the claims questionnaire." FVT Objection (Dkt. 14388 ¶ 9). This included the development of Guidelines for the determination of Business Income Loss ("BIL") claims.

## II. SAYEGH BROTHERS DAMAGE CLAIMS

Sayegh Brothers suffered enormous losses in the 2018 Camp Fire in Paradise, CA, including the total destruction of its retail buildings and loss of substantial rental income from three long-term tenants at that location.

Outside of the FVT, Sayegh Brothers recovered three million dollars from its insurance carrier for the loss of its real property and structures. It asserted a claim in the FVT for economic damages of $3,307,769 plus attorney fees, interest, and cost of an additional $1,321,156.01. The FVT allowed a total BIL claim of $527,538.61

After exhausting its non-judicial remedies in the FVT, Sayegh Brothers filed the Motion. In the Motion, and at oral argument presented by its counsel, it conceded that pursuant to the CRP approved by the court as part of the Plan and Confirmation Order, there was no judicial review available to revisit the final determination by the FVT. Instead, it cited to this court's *Memorandum Decision on Inverse Condemnation* (Dkt. 4895) and built its argument around its belief that the FVT had made unauthorized changes to the CRP, altering the guidelines related to BIL in a manner that it contended was inconsistent with controlling California law, and in particular, the California's constitutionally required determination of the amount of just compensation. Sayegh Brothers cites CCP §§ 1235.125 and 1260.220(a), and *People v. Lynbar, Inc.*, 253 Cal.App.2d 870 (1967), among other cases, to demonstrate that California eminent domain law views leases as a land interest that increases the value of the land for which an owner should be compensated.

**III. DISCUSSION**

The court's authority to revisit determinations by the FVT for claimants does not exist for Sayegh Brothers or any other PG&E wildfire claimants other than a handful whose claims have

now been finally determined without the need for judicial intervention.

Counsel for Sayegh Brothers argues that this is not an end run on the absence of authority to second guess the FVT's determination, but rather an inquiry into whether or not fundamental bankruptcy procedures were ignored. There is no evidence to suggest that they were ignored. All the Sayegh Brothers has is a statement by its counsel as follows:

> The appeal was conducted via Zoom on August 15, 2023. Judge Hight opened the hearing by stating that the procedures the Trust is using was approved (sic) by the bankruptcy court therefore the appeal is denied.

*Declaration of Michael R. Bush*, Dkt. 14319-1, 5:1-4.

That is all there is. In fact, the BIL and the detailed specifics (described below) were developed by the FVT well before counsel made this argument and well before the FVT issued its first determination on the Sayegh Brothers claim. The BIL include extensive eligibility criteria broken into various categories, including, more specifically, those that covered what are called "Significant Property Damage" and even more specifically, claimants whose losses resulted from the Camp Fire. In those criteria, claimants are entitled to damages calculated on leased property that has been lost and has directly resulted in economic loss. The losses for the Camp Fire, per the BIL criteria, are not compensable after forty-eight (48) months from the fire. This appears to be at the heart of Sayegh Brothers' complaint here.

In rejecting the Sayegh Brothers' argument, the FVT appeals neutral stated as follows:

> Claimant appeals the Trust's determination of its lost rent on 3 commercial leases based on two grounds:
>
> 1. The trust used the valuation method, which was calculated based on Claimant's Federal Income Tax Statement's profit & loss statement to determine the amount which should be compensated for the loss of the 3 long term leases, instead of following established criteria for loss of property due to Eminent Domain/Inverse Condemnation.
>
> 2. Claimant's leases had 164 months to run before expiration. The Trust only allowed 48 months under its "Loss Period Caps". Claimant believes it is entitled to the full 164 months.
>
> As explained below, the FMV derived by either valuation method makes virtually no difference when applying the Trust's Business Income Loss Eligibility Criteria. That Criteria limit losses to 48 months pursuant to the Trust's established procedures.
>
> Claimant claims a FMV of the leases of $3,307,769. Applying the Trust's "Loss Period Caps" to that number Claimant would be entitled to $514,281. (This number is derived by dividing $3,307,769 by 164 months, the term of the leases, which equals $20,169 per month) Computing the loss over the Trust's 48 months allowable loss at the rate of $20,169 per month results in $514,281 due to Claimant. The Trust has determined the loss to be $527,538.61. Thus, applying the Trust's rules, Claimant is being awarded $13,257 more under the Trust's calculations than under its calculations.
>
> Claimant further alleges that other claimants have been allowed more than the 48 months set forth in the Trust's Business Income Loss Eligibility Criteria. This reviewer could find no applicable substantiation of this claim.
>
> For the above reason this appeal is affirmed.

*Notice of Trustee Determination*, Dkt. 14319-1, p. 20.



Case: 19-30088 Doc# 14426 Filed: 04/18/24 Entered: 04/18/24 16:37:10 Page 6 of 8

It appears that not only is there no authority for revisiting a final determination by the FVT, there was no impropriety or ignoring of pre-existing court approved procedures that control the administration of the FVT. More importantly, the foregoing demonstrates that the methodologies for analyzing claims of this nature are similar whether under eminent domain/inverse condemnation procedures or federal income tax profit and loss statements, but only insofar as the procedures adopted by the FVT to limit loss income property damages based upon consistently applied criteria[2]. Whatever California law may fix as the amount of any claim such as Sayegh Brothers', what must be paid on that claim in this federal proceeding governed by bankruptcy law and principles need not be the same.

If those criteria adopted by the FVT were wrong in the first instance, a proposition the court neither endorses nor rejects, there is no basis to believe that court procedures were ignored or that the determinations of the FVT can or should be revisited.

**IV. CONCLUSION**

For the foregoing reasons, the FVT Objection is sustained and the Motion is overruled.

****END OF ORDER****

---

[2] By analogy, Bankruptcy Code § 502(b)(4) caps claims of insiders and attorneys to reasonable amounts, and § 502(b)(6) caps those of landlords holding rejected leases to a formula of roughly fifteen percent of lost future rent.

COURT SERVICE LIST

ECF Recipients



Case: 19-30088 Doc# 14426 Filed: 04/18/24 Entered: 04/18/24 16:37:10 Page 8 of 8