**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: (212) 310-8000
Fax: (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, CA 94105
Tel: (415) 496-6723
Fax: (650) 636-9251

*Attorneys for the Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *ALL PAPERS SHALL BE FILED IN THE LEAD CASE, NO. 19-30088 (DM).* | Case Nos. 19-30088 (DM) (Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF ROBB C. MCWILLIAMS IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING DEADLINE FOR THE REORGANIZED DEBTORS TO OBJECT TO CLAIMS AND FOR RELATED RELIEF**<br><br>Date: May 21, 2024<br>Time: 10:00 a.m. (Pacific Time)<br>Place: **(Telephonic or Video Only)**<br>United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Objection Deadline:**<br>**May 14, 2024, 4:00 p.m. (Pacific Time)** |

I, Robb C. McWilliams, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am a Partner and Managing Director at the firm of AlixPartners, LLP, which is an affiliate of both AlixPartners, LLC and AP Services, LLC (collectively, "**AlixPartners**"). AlixPartners has been retained to provide interim management services to PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, the "**Debtors**," and as reorganized pursuant to the Plan, the "**Reorganized Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). I submit this Declaration in support of the *Motion for Entry of an Order Further Extending Deadline for the Reorganized Debtors to Object to Claims and for Related Relief* (the "**Motion**").[1]

2. In my current position, I am responsible for overseeing the case management component of AlixPartners' assignment to assist the Reorganized Debtors with various matters related to these Chapter 11 Cases. My areas of responsibility include the effort by AlixPartners, in coordination with the Reorganized Debtors, to review and assess all claims asserted against the Debtors, other than Fire Claims and Subrogation Wildfire Claims. I am generally familiar with the Reorganized Debtors' day-to-day operations, financing arrangements, business affairs, and books and records. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, the knowledge of other AlixPartners professionals working under and alongside me on this matter, my discussions with the Reorganized Debtors' personnel and the Reorganized Debtors' various advisors and counsel, and my review of relevant documents and information. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration in support of the Motion.

3. A team of AlixPartners professionals under my supervision has been actively involved in the claims review and reconciliation process since shortly after the filing of these Chapter 11 Cases. AlixPartners initially assisted the Debtors in the preparation of their bankruptcy schedules based on the Debtors' books and records. AlixPartners also has coordinated with the Debtors in reconciling

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

and reviewing filed proofs of claim with claims reflected in the Debtors' schedules and books and records. AlixPartners has developed and maintains a claims reconciliation database and various data management applications that are used by the Reorganized Debtors and AlixPartners to identify both valid claims as well as claims that are not valid in whole or in part and the appropriate grounds for objection to such claims. AlixPartners is now supporting, and will continue to support, the efforts of the Reorganized Debtors and their counsel to resolve disputed claims, including by formal objections as necessary.

4. Over 15,230 General Claims[2] were scheduled or filed in these Chapter 11 Cases against the Debtors. The General Claims do not include the Securities Claims,[3] or the Fire Victim Claims and Subrogation Wildfire Claims, which were channeled to the Fire Victim Trust and the Subrogation Wildfire Trust, respectively. The Reorganized Debtors and their professionals have worked diligently to resolve the General Claims, and they are nearing completion of this herculean task. In the four years since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through settlement, reconciled and allowed, or otherwise resolved over 15,160 of the General Claims. This represents over $59.8 billion in the aggregate of the approximately $60.2 billion of General Claims filed in these Chapter 11 Cases—over 99.4% of the total dollar amount and over 99.5% of the total number of General Claims.

### A. The Reorganized Debtors' Successful General Claims Reconciliation Progress

5. The resolution of General Claims has required extensive efforts by the Reorganized Debtors' team of advisors, attorneys, and personnel. As more fully set forth below, since the Effective Date, the Reorganized Debtors have successfully expunged through objection, reduced through

---

[2] As used herein, "**General Claims**" means Claims scheduled by or filed against the Debtors that are not Securities Claims, Fire Victim Claims, or Subrogation Wildfire Claims. These General Claims include, but are not limited to, trade claims, customer claims, employment claims, regulatory claims, real property claims, and tort and other litigation claims that are unrelated to the Fires.

[3] "**Securities Claims**" means rescission or damages claims filed in the Chapter 11 Cases by claimants who have asserted that they purchased or acquired certain of the Debtors' publicly held debt and equity securities during the period from April 29, 2015, through November 15, 2018, inclusive. An update on the status of the Reorganized Debtors' efforts to resolve the remaining Securities Claims is included in Section B below.

settlement, reconciled and allowed, or otherwise resolved over 99.4% of the total dollar amount and over 99.5% in number of the General Claims asserted in these Chapter 11 Cases.

  a. <u>General Claim Omnibus Objections</u>. As of the date hereof, the Reorganized Debtors have filed 120 General Claim Omnibus Objections, which has led to the resolution of over 9,520 General Claims through modification, withdrawal, disallowance and/or expungement. This has reduced the amounts asserted against the Debtors by approximately $31.6 billion.

  b. <u>Settled Claims</u>. The Reorganized Debtors have undertaken extensive efforts to resolve many of the General Claims through negotiated settlements, including through the General Claims Procedures further described below. These negotiation efforts have led to the settlement of over 2,420 General Claims, totaling over $5.8 billion in asserted claim amounts (plus unliquidated amounts), both within and separate from the General Claims Procedures discussed below. The Reorganized Debtors settled 47 of those General Claims during the Seventh Extension Period.

  c. <u>General Claims Procedures</u>. The Reorganized Debtors have resolved a subset of the settled General Claims described above through the General Claims Procedures. Since the entry of the General Claims ADR Procedures Order, the Reorganized Debtors have sent formal information requests to the holders of over 410 General Claims, have initiated settlement offer exchanges on approximately 150 General Claims, and have noticed over 90 Abbreviated Mediations and over 70 Standard Mediations (each as defined in the General Claims ADR Procedures Order).[4] The General Claims Procedures have resulted in the resolution of over 150 General Claims by settlement, totaling over $220 million in asserted value (plus unliquidated amounts).

  d. <u>Claims Litigated Outside of Bankruptcy Court</u>. As of the date of the Motion, 31 General Claims are being litigated in non-bankruptcy fora pursuant to orders of the Court modifying the automatic stay or Plan Injunction.

---

[4] The categories referenced in this sentence are not mutually exclusive; for example, the Reorganized Debtors may have sent an information request, initiated settlement offer exchanges, and noticed a mediation on the same General Claim.

e. <u>Distributions on Claims</u>. Since the Effective Date, the Reorganized Debtors have processed more than 106 rounds of distributions and made distributions on over 5,150 General Claims, totaling approximately $24.7 billion.

### B. Securities Claims

6. The Reorganized Debtors have now resolved over 88% of all Securities Claims; of the 8,976 Securities Claims (which includes amendments as separate Securities Claims until the prior claim is expunged as a duplicate), approximately 7,940 have now been resolved, including nearly 4,900 claims resolved by settlement. Settlements have been consummated with small and large claimants, including sophisticated institutions and funds, often represented by counsel (some of whom have appeared before the Court). Excluding claimants represented by Rolnick Kramer Sadighi LLP ("RKS"), the Reorganized Debtors have resolved the claims of twenty-one of the twenty-five claimants that have the largest claims. Moreover, the Reorganized Debtors have also resolved the claims of more than half of the RKS claimants or groups of affiliated claimants.

7. As of April 29, 2024, there are only approximately 1,036 Securities Claims that remain unresolved, and even that number understates PG&E's substantial progress in resolving the Securities Claims. Of the approximately 1,036 unresolved Securities Claims, approximately 660 are claims represented by RKS and another 210 claims have been filed by Vanguard or its affiliates. In other words, RKS and Vanguard alone account for over 83% of the unresolved Securities Claims. Thus, there are now only about 166 unresolved Securities Claims outside of those represented by RKS or filed by Vanguard. Because many claimants or affiliated groups of claimants often filed multiple proofs of claim, these approximately 166 proofs of claim represent only approximately 59 unique filers of proofs of claim — and the Reorganized Debtors expect that this number will continue to be significantly reduced by omnibus objections and settlements in the coming months.

### C. The Remaining General Claims

8. The approximately 35 Remaining General Claims fall into three general groups. First, certain Claims are subject to active settlement negotiations and/or business discussions. Of these, the Reorganized Debtors have extended settlement offers to resolve two General Claims; if accepted, these settlements will reduce the unresolved asserted Claims pool by over $5.4 million. Second, certain of

the General Claims do not require any immediate action by the Reorganized Debtors, but they cannot be resolved until the conclusion of certain disputes pending in other fora, including because the vast majority are indemnification/subrogation Claims that necessarily trail other matters. The remaining few General Claims present complicated legal, factual, or procedural issues that the Reorganized Debtors require more time to analyze in order to determine the best path to resolution.

[*Remainder of Page Intentionally Left Blank*]

| | |
|---|---|
| 1 | Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and |
| 2 | correct to the best of my knowledge, information, and belief. Executed this 30th day of April, 2024 |
| 3 | in Dallas, Texas. |

/s/ *Robb C. McWilliams*
Robb C. McWilliams
Partner and Managing Director