**Entered on Docket**
May 02, 2024
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: May 2, 2024**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Bankruptcy Case No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |

**ORDER DENYING WILLIAM B. ABRAMS' MOTION TO STAY**

On April 4, 2024, interested party William B. Abrams filed a *Motion to Stay the Administration Execution and Enforcement of Victim Releases as Defined Within the Fire Victim Trust Agreement Pending United States Supreme Court Ruling and Pursuant to 11 U.S.C. § 105(a)* ("Motion") (Dkt. 14396). The court set a mandatory response deadline of April 29, 2024 for the Fire Victim Trust ("FVT") and the same date as an optional

-1-

response deadline for any other interested party.  On April 18, 2024, the Cathi Yanni, Trustee of the FVT, duly filed a Response (Dkt. 14424).  No other responses to the Motion were filed on or before the April 29, 2024 deadline.

Upon due consideration and for the reasons set forth below, the court denies the Motion.

Mr. Abrams' Motion seeks to stay a requirement that Fire Victim Claimants sign a general release ("Release") of any potential claims against the FVT or related entities and persons prior to receipt of allowed compensation from the FVT, pending the outcome of *Harrington v. Purdue Pharma L.P.* No. 23-124 ("*Purdue Pharma*").  The Supreme Court heard oral arguments in *Purdue Pharma* on December 4, 2023, and a forthcoming decision in the case may determine whether it is permissible for a Chapter 11 plan to include non-debtor third party releases without consent of claimants.  Mr. Abrams argues that staying the Release requirement "will avoid potential conflicting interpretations of the law and ensure consistency with the Supreme Court's guidance."  While much of the Motion is devoted to the potential impact of *Purdue Pharma*, he also makes the unfounded argument that the Fire Victim Claimants are also being subjected to a late-stage rug pull: That Section 10.9 of the Disclosure Statement and Proposed Chapter 11 Plan that Fire Victim Claimants voted on (Dkt. 6353) states that all claimants could choose to opt-in to liability releases at the time of voting for the Plan, while now the FVT is forcing claimants to sign wide-ranging releases in order to receive any distribution.

-2-

The court first addresses Mr. Abrams' apparent confusion regarding the opt-in liability release. The court's docket reflects the long and public process which culminated in the Order Confirming Plan (Dkt. 8053) ("OCP"); the creation of the FVT; and the creation of the FVT Claims Resolutions Procedures ("CRP") for Fire Victim Claimants. As a result of that process, the Disclosure Statement and Proposed Chapter 11 Plan at Section 10.9 cited by Mr. Abrams did provide for an opt-in release of claims against various parties for actions undertaken during the bankruptcy process, meaning that any vote-casting claimant would have to affirmatively agree to release named parties from potential claims that relate to acts taken by those parties during the bankruptcy process. That opt-in provision had nothing to do with the establishment of the FVT or the CRP, and the Release Mr. Abrams seeks to stay are not governed by the Disclosure Statement or the Confirmed Plan beyond the Plan's creation of and implementation of the FVT and CRP. Any argument by Mr. Abrams that the FVT is attempting to mislead Fire Victim Claimants or this court by forcing a liability release prior to distribution of funds in light of Section 10.9 is simply incorrect.

Next, the court addresses the relevance of the pending *Purdue Pharma* case on Section 10.9[1] and the separate releases promulgated by the CRP against which Mr. Abrams seeks a stay.

---

[1] Even though, as explained above, Section 10.9 has no bearing on Mr. Abrams' concerns regarding the Release requirement for Fire Victim Claimants, the court will still address it in relation to the *Purdue Pharma* case in the interest of fully addressing the Motion.

-3-

As to Section 10.9, the court and other stakeholders took pains to make clear, after multiple rounds of hearings and compromise, and with the addition of Section 10.8, that this opt-in provision was an exculpation clause, which is permitted under Ninth Circuit law, *see Blixseth v. Credit Suisse*, 961 F.3d 1074, 1084-85 (9th Cir. 2020), and not a third-party release of any sort. As *Blixseth* explains, exculpation clauses are meant for non-debtor professionals and individuals involved in a debtor's bankruptcy process and are "focused on acts committed as part of bankruptcy proceedings" (*Id.*). Exculpation clauses do not release third parties for underlying debts or acts that may have led to bankruptcy, as opposed to third-party releases, which may release non-debtor third parties for any type of claim accrued pre-bankruptcy. Page 51 of the OCP, as well as Sections 10.8 and 10.9 of the Plan attached to the OCP, all state in bold typeface that Section 10.9 describes an exculpation clause relating solely to acts committed by Exculpated Parties (as defined in the Plan attached to the OCP) during the bankruptcy, and nothing more. Further, both Exculpated Parties and Released Parties (also defined in the Plan attached to the OCP) were subject to affirmative, consensual opt-ins by every entity or individual casting a ballot. The consensual releases enshrined in the OCP would not be affected by the outcome of *Purdue Pharma*, which concerns only non-consensual third-party releases.

Turning to the Release contained in the CRP, the FVT accurately recounts the procedural history of these releases. On March 3, 2020, the Tort Claimants Committee filed a *Notice of Filing of Proposed Fire Victim Trust Agreement and Proposed Fire*

-4-

*Victim Claims Resolutions Procedures* (Dkt. 6049). This document, as with every other part of the Plan process, was the subject of heavy scrutiny and negotiation. Ultimately, the Trust Agreement and CRP were made final as part of the *Ninth Supplement to Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* (Dkt. 8057) and incorporated by the OCP. From that earliest iteration of the Trust Agreement and CRP to the final version incorporated by the OCP, Fire Victim Claimants were required to execute the Release as a precondition to receiving a distribution from the FVT for approved claims. Only certain government entities that objected to the release provisions (Dkt. 7973) are excepted, and the timeframe of the Release was narrowed in its final iteration.

While called a "Claimant Release and Indemnification in Connection with the Fire Victim Trust Awards," this again is not the type of third-party release contemplated by *Purdue Pharma*, and is limited to, in very simple terms, the release of any party related to the FVT, Trust Oversight Committee, Claims Administrator, or Special Master for any claim related to Trust Agreement, CRP, Plan, or any other part of the bankruptcy process. In short, this Release is a proper exculpation clause that was duly served with notice to affected parties, and extensively revised prior to its final entry. No matter the outcome of *Purdue Pharma*, the releases to be signed by Fire Victim Claimants would not be affected, and those Fire Victim Claimants' due process or other constitutional rights are not implicated by the existence of the required release.

Accordingly, the Motion is DENIED.

**\*\*END OF ORDER\*\***

COURT SERVICE LIST

William B. Abrams
625 McDonald Ave.
Santa Rosa, CA 95404