**COHEN AND JACOBSON, LLP**
ATTORNEYS AT LAW
66 BOVET ROAD, SUITE 285
SAN MATEO, CA 94402

TELEPHONE: (650) 261-6280
FACSIMILE: (650) 368-6221

HENRY COHEN (Deceased)
LAWRENCE A. JACOBSON
SEAN M. JACOBSON

LAJ@COHENANDJACOBSON.COM
SEAN@COHENANDJACOBSON.COM

May 3, 2024

Chambers of the Hon. Dennis Montali             ***By Email Only* to:**
Attn: Lorena Parada                             **Lorena_Parada@canb.uscourts.gov**
Courtroom 17, 16th Floor                        **slamb@rovenslamb.com**
450 Golden Gate Avenue                          **snessier@hansonbridgett.com**
San Francisco, CA 94102                         **trupp@kbkllp.com**

     Re:    PG&E/Komir, Inc.
              Bankruptcy Case No. 19-30088

         Discovery Dispute: Letter/Brief by Claimant Per Status Conference on April 15, 2024

To the Hon. Dennis Montali:

      Claimant Komir, Inc., and its agent Amir Shahmirza ("Claimant"), present below the request by Claimant that the Court order PG&E to produce further documents pursuant to the Request for Production of Documents contained in the Notice of Taking Deposition of the purported experts who filed declarations in opposition to Summary Judgment No. 2 concerning claims of prescriptive easement, overrule the objection to the taking of the deposition of Melanie Brayton, and authorize the depositions of two engineers whose identity and work product were ascertained on April 29, 2024.

      A copy of the deposition notice of John Raines is attached as Exhibit A. The document request is the same in all of the notices.

      The context for the depositions and the document request is as follows:

1.    In 2018, when Claimant objected to the lowering of the Transmission Lines, PG&E responded that it was entitled to do so as it held rights under recorded Easements that allowed it to place those lines on the Property as it chose. PG&E did not assert that it had any such rights under any claim of prescription.

2.    By Order entered on June 12, 2023 (Docket No. 13833), pursuant to Memorandum Decision of the same date (Docket No. 13832), the Court held that PG&E held no such rights as the recorded easements had been extinguished by condemnation.

3.    The Memorandum Decision also indicated the Court's inclination to have granted a summary adjudication of no prescriptive rights if that issue had been presented by Claimant stating "That the use and rights changed in 2018 means PG&E cannot prove any type of use of those rights over the minimum five-year period for a prescriptive easement to be established." The Court also denied the cross-motion by PG&E by which it sought, in the alternative, a determination of

prescriptive rights.

4.  Accordingly, Claimant filed a second motion for summary judgment seeking an affirmative determination that PG&E held no prescriptive rights arguing also that PG&E had failed to pay the property taxes as required by CCP § 325.

5.  Only under these circumstances did PG&E seek to create a record to attempt to support a claim of prescriptive entitlement to keep its Transmission Lines on the relocated towers at the new attachment points and heights. By declarations of in-house, unlicensed engineers PG&E asserted that the lines had not really been lowered.[1]  The testimony in the declarations, while admitting that the towers had been moved 10' to 20' from the original location, is to the effect that, based on the Declarants' method of comparison, (a) the attachment points were only 4'9" lower at the property line extending at lowered height for 304' inward onto Komir's Property to a point of purportedly no change and then, (b) most improbably, and in defiance of the laws of physics, were higher on the far (southerly) end of the Property than prior to the lowering of the lines on the northerly end.

6.  Finally, PG&E sought to rebut owner's pre-2018 consent to the lines (at their original height) by procuring a declaration of one of the prior owners, Melanie (Hildebrand) Brayton.  However, Ms. Brayton, by her own testimony, (a) was not involved in any manner in any aspect of acquisition or ownership and in fact consented believing that PG&E held rights under recorded easements that she would respect and (b) had no awareness of modifications or additions to the towers or lines during her ownership and no knowledge of the effect thereof.[2]

Under these circumstances, the discovery being conducted by Claimant relates to (1) whether PG&E ever acquired any prescriptive right to exclusively occupy the space of the Property where the relocated Transmission Lines are now situated, or at all, and (2) if PG&E might be allowed to keep transmission lines on the Property at the relocated positions and heights, then to determine the consequences of the trespass arising from the relocation, i.e., the compensation for taking away Komir's ability to use the Property to its highest and best, and unrestricted or less restricted, use of the valuable M-1commercial zoning.

Stated differently, in view of the "alternative" position that PG&E seeks to establish without any rights under recorded documents, the discovery seeks documents that PG&E must necessarily possess as the constructor of both the original and the new towers regarding exact locations of the old and new towers, the height of the attachment points on the old and the new towers, and the height of the relocated transmission lines. There is no reason for PG&E not to produce its "business records" as described by the declarants.

Such information would not require LiDar scans as a secondary means of attempting to retroactively and forensically compare heights that can be established from the original construction drawings.  Further, the Raines Declaration does not explain (a) his selective choice of using scans from 2012 and 2022 or (b) the reason that he did not utilize other prior or intervening scans such as scans in

---

[1]  Claimant submitted evidentiary objections to those declarations.

[2]  Claimant also filed extensive evidentiary objections to Ms. Brayton's testimony.

2016 or 2017, i.e., immediately prior to the reconstruction and relocation. Claimant needs to obtain all the LiDar scans from 2000 through 2022 to evaluate the forensic selectivity of the declarant. There is no reason for PG&E not to produce those records.

These documents, and this information, are not general subject matter discovery requests.

The detailed analysis of the statements contained in the declarations that are correlated to the particular document requests is set forth in the attached meet and confer correspondence between the parties' respective counsel. (Exhibit B, letter from Jacobson to Lamb dated March 22, 2025; Exhibit C, letter from Lamb to Jacobson dated March 25, 2024; Exhibit D, letter from Jacobson to Lamb dated March 28, 2024, and Exhibit E, letter from Lamb to Jacobson dated April 1, 2024, and Exhibit F, letter from Lamb to Jacobson dated April 29, 2024[3])

As demonstrated specifically as to each and all of the deponents, the documents being requested are those described in the respective declarations as being the basis of either the declarant's basic knowledge or the specific basis of the declarant's opinions or conclusions, or both. Experts are routinely and customarily requested to provide prior to deposition the documents that related to their analysis an opinions. That is all that Claimant requests.

Claimant also seeks this Court's order overruling PG&E's objection to the taking of the deposition of Ms. Brayton. The deposition will take less than 2 hours and will relate to the statements in her declaration.

On April 29, 2024, PG&E sent a further meet and confer letter attempting to clarify certain documents. Upon review, the documents appear to indicate at least an 8' lowering of the lines at some point as well as wider lateral or horizontal distances. The documents do not include all the documents requested with the deposition notices[4] but do include drawings by licensed engineers Benjamin Joseph Schuch and Engineer Eric C. Johnsrud. The existence of those documents now raises a further need to depose those engineers with respect to those drawings and Claimant requests that the Order to be issued with respect to these disputes include the authorization to depose those two individuals.

Sincerely,

  /s/   *Lawrence A. Jacobson*
Lawrence A. Jacobson

---

[3] Paragraph 4 of Exhibit F refers to the coordinates of the new structure that are provided but Claimant needs, and requested, the same coordinate for the poles that were removed, i.e., 6/52A , 6/52B and 5/38, 5/39, in order to make the comparisons.

[4] For example, some of the pages of drawings including only portions of the drawings, e.g., Sheet # 4 of 6 without pages 1 through 3 or 5. (Drawing Nos. 217643, 229404, and 229394 are incomplete). The drawings also refer descriptively to larger tubular steel tower poles without diameter dimensions of either the old or the new poles.

# EXHIBIT A

LAWRENCE A. JACOBSON, SBN 057393
SEAN M. JACOBSON, SBN 227241
COHEN AND JACOBSON, LLP
66 Bovet Road, Suite 285
San Mateo, CA 94402
Telephone: (650) 261-6280
laj@cohenandjacobson.com

Attorneys for Amir Shahmirza
(Agent for Komir, Inc.)

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 19-30088 (DM) |
| PG&E CORPORATION, | Chapter 11 |
| - and - | (Lead Case) (Jointly Administered) |
| PACIFIC GAS AND ELECTRIC COMPANY, | **Deposition Date:**     **April 9, 2024** <br> **9:30 a.m.** <br> **Remote Video** |
| Debtors. | |
| □ Affects PG&E Corporation <br> □ Affects Pacific Gas and Electric Company <br> ■ Affects both Debtors | |

**NOTICE OF DEPOSITION OF JOHN RAINES WITH PRODUCTION OF DOCUMENTS IN CONTESTED MATTER ON OBJECTION TO PROOF OF CLAIM #2090 (KOMIR, INC., AS FILED BY AMIR SHAHMIRZA)**

NOTICE IS HEREBY GIVEN that, pursuant to FRCP 30 and FRBP 7030, and FRCP 34 and FRBP 7034 as referenced in FRCP 30 and FRBP 7030, Komir, Inc., through its agent Amir Shahmirza, as the Claimant having filed Proof of Claim #2090, ("Deposing Party"), will conduct the deposition of John Raines ("Deponent"), as an employee of the Reorganized Debtors who filed his Declaration herein in Opposition to Claimant's Second Motion for Partial Summary Adjudication (Docket # 14116), by remote video conference on April 9, 2024, commencing at 9:30 a.m. utilizing

Case: 19-30088    Doc# 14446    Filed: 05/03/24    Entered: 05/09/24 16:20:55    Page 5 of 36

1  the remote facility of Veritext Legal Solutions.

2    Veritext Legal Solutions will host the deposition as a Zoom conference or similar video

3  technology. No later than the day prior to the deposition, Veritext Legal Solutions will provide to all

4  parties and the deponent by e-mail, text, or phone (at an email address or telephone number to be

5  provided by them more than one day prior to the deposition) the link to access to appear for the

6  deposition. If counsel or the deponent do not have a personal computer, laptop, or mobile device and

7  a quality Wi-Fi connection, these items will be provided for them at the date and time of the

8  deposition for use at the office of Veritext Legal Solutions at 101 Montgomery Street, Suite 450, San

9  Francisco CA 94104 (Phone: 415.274.9977 Fax: 415.274.9998) at which all applicable health and

10  safety protocols will be observed.

11    PG&E, the party that filed the Raines Declaration, is represented by Steven A. Lamb of

12  Rovens Lamb LLP as its counsel in this matter and the address of the deponent is known to such

13  counsel.

14    NOTICE IS FURTHER GIVEN that the deposition testimony shall be recorded

15  stenographically with the use of instant visual display of testimony.

16    NOTICE IS FURTHER GIVEN that the deponent is required to respond to the attached

17  document request within 30 days after service of this Notice and to produce the documents identified

18  on Exhibit A hereto.

19    The deposition shall continue from day to day, Saturdays, Sundays and holidays excepted,

20  until completed.

21    A list of the attorneys involved in this action is enclosed on the Proof of Service.

22  Dated: February 20, 2024        COHEN AND JACOBSON, LLP

23

24            By: __/s/ Lawrence A. Jacobson__
           Lawrence A. Jacobson`

25

26

**NOTICE OF DEPOSITION OF JOHN RAINES WITH PRODUCTION OF DOCUMENTS**    2

Exhibit A to Deposition Notice

1.     All DOCUMENTS concerning, evidencing or referring to that project described in the
Declaration of Mark Galicia in Support of PG&E's Memorandum of Points and Authorities in
Opposition to Claimant's Second Motion for Partial Summary Judgment ("Galacia
Declaration") at page 2, lines 18-21 as follows:

"The project involved the reconstruction of six poles that supported six separate 115 kV
circuits in the Transition Station. These poles were replaced with three new tubular steel poles
within the Transition Station, with each tubular steel pole supporting two 115 kV circuits."
(the "PROJECT"), including without limitation the following:

(a)     All Construction Documents including Architectural, structural, civil, grading,
        surveying, electrical, mechanical and specifications of

        (i)     each of the six towers as referred to in the Galicia Declaration and Exhibit 1
                thereto as 6/52A, 6/52B, 5/38(2 each), and 5/39(2 each) that were
                "reconstructed" (the "REMOVED TOWERS") from the date of their erection
                to 2018;

        (ii)    the three new tubular steel poles referred to in the Galicia Declaration as 6/52
                and 004/037-039 (2 each)) that "replaced" the original six towers (the
                "REPLACEMENT TOWERS;" and

        (iii)   the three southerly towers to which the transmission lines were attached near
                San Bruno Avenue referred to in the Galicia Declaration as 6/51 and 5/40 (2
                each) (the "SOUTHERLY TOWERS") from the date of their erection to
                2018,

        including without limitation those complete sets of the drawings referenced by PG&E
        numbers 229394, 217643 and 229404 as stated in the Raines Declaration.

(b)     WRITINGS indicating the sizes and locations and coordinates of the bases and the
        height of each of the REMOVED TOWERS and each REPLACEMENT TOWERS.
        (see, Galicia Exhibit 1 page 4)

(c)     WRITINGS constituting or indicating aerial height, surveys, and transmission lines
        and towers attachment points on the REMOVED TOWERS and the
        REPLACEMENT TOWERS.

(d)     WRITINGS indicating the current and future electrical transmission capacity of the
        transmission lines that were attached to the REMOVED TOWERS and to the
        REPLACEMENT TOWERS.

(e)     WRITINGS indicating the dimensions, weight, and conductor length of the
        REMOVED TOWERS and the REPLACEMENT TOWERS,

2.     All DOCUMENTS constituting, concerning, evidencing or referring to any application to the
California Public Utilities Commission for erecting and for any alteration and modifications
to the towers that support or supported the crossing transmission conductors across Komir's
property referred to as 6/52A, 6/52B, 5/38, 5/39, 6/52, 004/037-039, 6/51 and 5/40 referred

and shown in Galicia Declaration Exhibit 1, i.e., the REMOVED TOWERS, the REPLACEMENT TOWERS, and the SOUTHERLY TOWERS.

3. All DOCUMENTS constituting, concerning, evidencing or referring to any alteration, whether by increase in height, decrease in height, or otherwise, of the SOUTHERLY TOWERS in or after 2014.

4. All DOCUMENTS constituting, concerning, evidencing or referring to any inspection of the work performed by PG&E or its subcontractors or others acting on its behalf on the PROJECT by any governmental agency, including but not limited to the California Public Utility Commission.

5. All DOCUMENTS constituting, concerning, evidencing or referring to any type or form of notice published in any manner to inform the public, or any segment thereof, of the PROJECT.

6. All DOCUMENTS that identify the persons who performed work on the PROJECT and their contact information whether through counsel or otherwise.

7. All DOCUMENTS concerning, evidencing or referring to aerial views of the REMOVED TOWERS, the REPLACEMENT TOWERS, and/or the transmission lines on or after June 30, 1987.

8. All DOCUMENTS constituting, concerning, evidencing or referring to actions taken by PG&E with respect to the REMOVED TOWERS, the REPLACEMENT TOWERS, and/or the transmission lines across the PROPERTY as described in the Declaration of John Raines in Support of PG&E's Memorandum of Points and Authorities in Opposition to Claimant's Second Motion for Partial Summary Judgment (the "RAINES DECLARATION") at page 2, lines 22-26 as follows:

"My current responsibilities including checking ground clearance heights on existing structures and on future designs, designing new configurations (such as removing/moving poles or stringing new kinds of conductor with different sag characteristics), preparing structure check sheets (data sheets containing basic data about tower loads, span lengths, conductor characteristics, etc), among other technical duties."

The documents to be produced include all records of the type underlined that relate to the PROPERTY, namely, DOCUMENTS constituting, evidencing, concerning, specifying, requiring or referring to the required ground clearance heights;design configurations relating to removing/moving poles or stringing new kinds of conductor with different sag characteristics; and structure check sheets including data sheets containing basic data about tower loads, span lengths, conductor characteristics and specifications and requirements.

9. All DOCUMENTS constituting, concerning, evidencing or referring to LiDAR scans as described in the RAINES DECLARATION at page 2, lines 25-27 as follows:

"LiDAR scans kept and maintained in the ordinary course of business relating to the Transmission Towers on the Transition Station and the Transmission Lines that extend from the Transition Station over the Komir Property."

including all such LiDAR scans and data relating thereto made on or after June 30, 1987.

10. All DOCUMENTS that reflect the gross revenue, as expressed in any convenient manner whether daily, monthly, quarterly, annually or otherwise, received by PG&E for the delivery of electricity as described in the following statement in the Declaration of Michael Sosinski in Support of PG&E's Memorandum of Points and Authorities in Opposition to Claimant's Second Motion for Partial Summary Judgment (the "SOSINSKI DECLARATION") at page 1, lines, 24-26:

"The six circuits are the primary south- north corridor that serves the San Francisco peninsula as well as massive public infrastructure such as BART and SFO airport."

11. All DOCUMENTS concerning, evidencing including but not limited to Caltrans requirements and PG&E's clearance requirements and all aerial views of transmission lines and the towers from 1987 to present, referring to or otherwise supporting or providing any basis for the following statement in the SOSINSKI DECLARATION at page 2, lines 9-11:

"The Caltrans right-of-way to the east (Highway 101) is fully occupied with infrastructure and Caltrans requirements would not allow a longitudinal installation for safety reasons."

12. All DOCUMENTS concerning, evidencing, referring to or otherwise supporting or providing any basis for the following statement in the SOSINSKI DECLARATION at page 2, lines 13-15:

"I would expect costs for each relocation to exceed $1M just in temporary circuitry and construction logistics alone for each of the six circuits. Double circuit structures with constrained construction access could cost in excess of $1.M each."

13. All DOCUMENTS concerning, evidencing, referring to or otherwise supporting or providing any basis for the following statement in the SOSINSKI DECLARATION at page 2, lines 17-19:

"Fracturing the transmission infrastructure at this location would create future maintenance and disaster recovery complications that would have untold implications to system security, reliability, and customers."

14. All DOCUMENTS that indicate the height of transmission towers and the transmission lines, and/or any addition, alteration or modification of the towers and/or transmission lines, across the Property during the period from June 30, 1987 to July 1, 1992.

See PG&E's Memorandum of Points and Authorities in Opposition to Claimant's Second Motion for Partial Summary Judgment at page 6, lines 1-3 stating:

"Claimant's Motion focuses on events since 2018, but misses the fact that PG&E perfected its prescriptive easement against the prior owners in 1992, five years after

they purchased the Komir Property."

15.     All DOCUMENTS that indicate the height of the towers and the transmission lines across the Property during the period from December 18, 2000 to April 30, 2018.

    See PG&E's Memorandum of Points and Authorities in Opposition to Claimant's Second Motion for Partial Summary Judgment at page 8, lines 7-13 stating "Even if it is determined that PG&E did not acquire a prescriptive easement against the prior owners, PG&E can establish all elements of a prescriptive easement against Claimant. As established above, use of the Transmission Lines is open and notorious because the Transmission Lines are visible and hung over the Komir Property for decades prior to Claimant's purchase of the Property in 2000 and continued to be open and notorious for at least five years after Claimant purchased the property; use has been continuous and uninterrupted for decades, well beyond the five-year statutory period after Claimant purchased the property."

16.     All DOCUMENTS constituting, concerning, evidencing or referring to any notices of violations of statutes, rules or regulations pertaining to the maintenance of the REMOVED TOWERS and/or the REPLACEMENT TOWERS.

# EXHIBIT B

# COHEN AND JACOBSON, LLP
### ATTORNEYS AT LAW
### 66 BOVET ROAD, SUITE 285
### SAN MATEO, CA 94402

TELEPHONE: (650) 261-6280
FACSIMILE: (650) 368-6221

HENRY COHEN (Deceased)
LAWRENCE A. JACOBSON
SEAN M. JACOBSON

LAJ@COHENANDJACOBSON.COM
SEAN@COHENANDJACOBSON.COM

March 22, 2024

***By Email Only***

Steven A. Lamb
2601 Airport Drive, Suite 370
Torrance, California 90505
slamb@rovenslamb.com

     Re:     PG&E/Komir, Inc.
               Bankruptcy Case No. 19-30088

               Document Production for Deposition of PG&E Declarants/Deponents
               Objection to Claim #2090 and Claimant's Response Thereto

Dear Mr. Lamb:

     I write to you to formally "meet and confer" with respect to PG&E's objections served by you yesterday, March 21, 2024, to Komir's deposition notices of PG&E's own experts and to the production of documents relevant to those purported experts.

### The Request for Documents Was Derived Specifically from the Declarations of the PG&E "Experts" and Identifies the Source of Derivation by Page and Line Number of the Testimony of the Declarants.

     Komir drafted the request for production of documents to specify those records described by the declarants as either (a) the basis of their knowledge about the reconstruction of the towers and lines that establishes their ostensible expertise or (b) the foundation for their opinions.

     This request for production of documents is not a broad "subject matter" form of discovery but is limited by, and focused upon, the statements of the respect declarants who will be the deponents.

     The direct correlation of the requested documents and the Declarations is indicated by page and line references in the request such as the following:

- Galacia Declaration at Page 2, Lines 18-21
- Galicia Exhibit 1 Page 4
- Raines Declaration at Page 3, Line 15
- Raines Declaration at Page 2, Lines 22-26

- Raines Declaration at Page 2, Lines 25-27
- Sosinski Declaration at Page 1, Lines, 24-26
- Sosinski Declaration at Page 2, Lines 9-11
- Sosinski Declaration at Page 2, Lines 13-15
- Sosinski Declaration at page 2, lines 17-19

Each and all of these citations are included in the passages to which PG&E's objections make reference.

### The Request for Documents Was Also Derived from the Substantive Content of the Declarations.

The requests in the document specification also relate directly to the substantive testimony of the Declarants.

For example, the respective Declarations contain the following statements that form the basis for the requests:

John Raines

"4. My current responsibilities including checking ground clearance heights on existing structures and on future designs, designing new configurations (such as removing/moving poles or stringing new kinds of conductor with different sag characteristics), preparing structure check sheets (data sheets containing basic data about tower loads, span lengths, conductor characteristics, etc), among other technical duties." (Emphasis added)

The specification of documents to be produced seeks the documents as described in this quote verbatim in the request.

"16. PG&E maintains engineering drawings of its towers and transmission circuits in the regular course of business. Its PG&E's business practice to reference any modifications to the towers and circuits that may be made over the course of time by identifying such modifications in revision notes that appear at the bottom of the drawing. The revision notes reflect the dates the modifications were made and a general description of the work. I have reviewed the drawings relating to the Transmission Lines over the Komir Property." (Emphasis added)

By this statement, Mr. Raines testifies that PG&E maintains engineering drawings of its towers and transmission circuits in the regular course of business and that he reviewed the drawings relating to the Transmission Lines over the Komir Property. All of those documents must be produced.

While Mr. Raines testified that he "reviewed the drawings relating to the Transmission Lines over the Komir Property," Mr. Raines did not limit the number of drawings, or the time periods of the drawings, so the statement conveys the meaning that he reviewed all the drawings

relevant to the comparisons that he supposedly made.

Mr. Raines stated that, having reviewed all the documents, he "compared the position of the towers, the conductor attachment points, and the ground clearance as it was scanned in 2012 and 2022."

However, publicly published information obtained by Komir after the last briefing and after the last hearing reveals that the line height was altered by PG&E in 2014-2015. I refer you to our correspondence concerning the notifications sent by Bernard Cortes to the residential neighbors informing them that the line height was being altered by PG&E in 2014-2015.

Since Mr. Raines, having reviewed all the drawings relating to the Transmission Lines over the Komir Property, made comparisons only between 2012 and 2022 without considering the alterations in 2014-2015, all documents concerning all the modifications between 2012 and 2022 must be produced to determine the actual heights, measurements and comparisons and to assess the credibility of Mr. Raines by virtue of his using selective and erroneous baselines.

Further, Mr. Raines attaches an Exhibit 3 that is followed by what appears to be only a small portion of page 4 of 6 of drawing number 229394 (which is one of apparently many drawings that he states that he reviewed) that is identified in his Exhibits, and/or his Exhibits 1, 2, and 3 are based on computer images that are overlayed by him and do not provide evidentiary compliant foundation of any opinion by him; rather, any opinion based upon the type of data that Mr. Raines appears to be referencing must be rendered by a qualified, licensed engineer or surveyor who can analyze the full set of original documents and compare the data accurately. The refusal to produce all these documents supports the inference that the data is inaccurate, contrived, and misleading. Those documents must all be produced.

<u>Michael Sosinski</u>

"I have held different positions with PG&E, most recently working as an engineer leader on electric transmission facilities. Since February 2017 I have been employed with the Transmission Line Engineering Department where <u>my current duties as Senior Manager include overseeing the execution of all Transmission design aspects</u> of the Maintenance and Project work portfolios.

4. <u>I am familiar with the transmission facilities at the PG&E San Bruno Transition Station and the transmission lines that extend over the adjoining Komir Property.</u> The transmission lines that extend over the Komir Property comprise three double circuit 115 kV lines (six circuits). Attached as Exhibit 1 to this Declaration is an aerial image that of the Komir Property. <u>The alignment of the transmission lines over the Komir Property is depicted by the purple lines on Exhibit 1.</u>" (Emphasis added)

Thus, Mr. Sosinski identifies himself as the Senior Manager overseeing the execution and design aspects of the Project and then purports to "depict" design features of the transmission lines. All those documents must be produced. All the documents concerning the subject matter

"depicted" by him must be produced.

Mark Galacia:

"4. In 2017-2018 <u>I was the Project Engineer</u> on the reconstruction of the transmission poles at the San Bruno Transition Station, which is the parcel of land owned by PG&E located immediately north of the Komir Property. <u>As Project Engineer I was responsible for the engineering and design</u> of the reconstruction project."  (Emphasis added)

By these statements Declarant Galacia directly placed in issue his knowledge of the entire Project and the engineering and design documents.  Mr. Galacia purported to base his opinions and conclusions upon his superior knowledge of the engineering and design of the Project.  All the documents concerning the engineering and design must be produced.

Further, Mr. Galacia refer to and attaches his Exhibit 1 to his Declaration that shows the coordinates of the 3 new towers based on a California zone 3 survey as described therein but fails to show the coordinates of the other existing towers.  The entirety of the engineering and design documents utilized by Mr. Galacia must be produced not only for deposition examination concerning the coordinates that he chose to reference but also, and perhaps more importantly, the coordinates information in the documents that he chose not to reference.  All those documents must be produced.

As demonstrated as to all Declarant Deponents, the specification of documents does not only correlate the request with the Declarations by page and line numbers but also correlates with the Exhibits attached by the Declarants and with the substantive statements by those declarants.

### PG&E Failed to Serve a Rule 26-compliant Expert Disclosure with Respect to the Declarant Deponents Specifically Failing to Identify Documents

Initially, PG&E did not make any expert disclosure but only sent the Michele Patton appraisal report with a transmittal email.

After receiving Komir's Rule 26-Complaint disclosure, PG&E sent a late expert disclosure statement that, as to Ms. Patton, contains the information required by Rule 26, including description of documents.  However, with respect to the Summary Adjudication Declarants, the disclosure stated only:

"7. The following nonretained experts are identified as experts who may testify at trial in this matter. They are each employed by PG&E and can be contacted through counsel. They each submitted declarations setting forth their opinions, their bases thereof, and their qualifications, in declarations that have been previously filed with the Court and served on Claimant:

a. John a. Raines
b. Mark Galicia
c. Elouise Jadhav
d. Michael Sosinski
e. Brian Smith
f. Rob Sullivan
g. Roger Leatherman"

Accordingly, in formulating the specification of documents to be produced for the deposition of the Declarant Deponents, Komir was required, in effect, to reverse engineer the identification of documents utilized by the deponents, whether in terms of documents that form the basis of the knowledge applied to the analysis or in terms of specific data underlying a particular opinion. As indicated above, in doing so Komir referred in its specification to page and line numbers of the Declarations and to the stated substance of the Declarations.

### PG&E'S Objections and Refusals to Produce the Documents Upends the Deposition Schedule

The deposition notices were served so that the documents would be received sufficiently prior to the commencement of depositions that Komir and counsel could review the documents and meaningfully prepare for the taking of the depositions.

The requested documents were identified by the Declarants as routine business records that the Declarants consulted or utilized as general information or specific data in formulating the testimony in their Declarations. Accordingly, those documents are presumably at hand and production does not require and search or delay.

At this point, i.e., March 22, 2024, Komir has no documents and no understanding of what documents may actually be produced subject to the extensive objections, or when those documents might be received.

Further, absent a constructive response to this effort to meet and confer for resolution, Komir will be required to seek judicial intervention.

Accordingly, Komir invites PG&E to reconsider its objections and to deliver all documents as requested by close of business on Monday, March 25, 2024, that is 10 calendar days prior to the date set for the first deposition on April 2, 2024, so the depositions may go forward as scheduled.

### Conclusion

The documents specified for production do not constitute a broad subject matter request.

Rather, these documents are related specifically to the content of the Declarations both by page and line references and by substantive content.

Refusal to produce these documents bespeaks a knowledge that the content of the Declarations is not correct.

Otherwise, PG&E should be anxious to produce all the documents to demonstrate accuracy and thoroughness of the Declarations.

Such, obviously, is not the case.

Note: this meet and confer letter relates only to the matters that are the subject of discussion. A further meet and confer letter will follow with respect to other matters that are not as time critical.

Komir requests a response by noon on Monday, March 25, 2024.

Sincerely,

   /s/   *Lawrence A. Jacobson*
Lawrence A. Jacobson

cc: Thomas Rupp at:   trupp@kbkllp.com

# EXHIBIT C

**ROVENS LAMB LLP**

2601 Airport Drive, Suite 370
Torrance, CA 90505
Telephone: 310.536.7830
Facsimile: 310.872.5026

slamb@rovenslamb.com
310.536.7830

March 25, 2024

<u>By Electronic Mail Only</u>

Lawrence A. Jacobson
COHEN & JACOBSON, LLP
66 Bovet Road, Suite 285
San Mateo, CA 94402
laj@cohenandjacobson.com

RE:    Proof of Claim of Amir Shahmirza in *PG&E Corporation*,
         Case No. 19-30088  (DM), U.S. Bankruptcy Court, N. D. Cal.

Dear Mr. Jacobson:

Reference is made to your meet and confer correspondence of Friday, March 22, 2024,
transmitted electronically after hours.

Your correspondence does not address a specific concern with a specific response.  The
responses request that the Responding Party produce documents "that relate directly to
the substantive testimony of the Declarants."  [See your correspondence at p. 2.]  As we
noted in our responses and objections, we will produce the project file, which includes
photos and engineering drawings.  We will also produce a video of the project that shows
its construction.

The deponents will produce the documents which they relied on or considered for their
expert testimony, as is their obligation.  What they will not produce, and what you cannot
seek by means of an expert deposition notice, are fact documents not considered by the
experts in their expert roles.  Fact discovery closed long ago in this matter, and these
expert witnesses, and their depositions, do not provide a path to circumvent the expiration
of the fact discovery period.  Furthermore, the bulk of the lines you have quoted and
underlined in your correspondence are statements about the role of the deponents in
general at PG&E.  The record requests that relate to those are unintelligible in the context

of these expert witnesses depositions and their declarations in this case.

I note that your representation on page three of your correspondence that "publicly published information . . . reveals the line height was altered by PG&E" is inaccurate. The referenced public notice refers to a project south of the Komir Property adjacent to Angus Avenue, which has no impact on the transmission lines over the Komir Property. As you know, there are no transmission towers on the Komir Property.

In our responses, we asked simply that you agree to a time period within which to produce documents on a reciprocal basis for each respective deposition, including the depositions of Messrs. Mateo and Shahmirza. Your correspondence does not respond to this request. Instead, you demand an immediate response 8 business hours after sending your after-hours correspondence on the 22nd.

Notwithstanding, we are in the process of producing the documents that you have requested. We trust that this addresses your concerns.

We note that we have repeatedly asked you to provide us with dates to schedule mediation and have asked for a trial continuance based on my most recent correspondence. See my email of March 18th (set forth in substance below). [1]

---

[1] Larry:

The noticed depositions are all scheduled to be completed by April 17th.

If you can provide us dates of availability for date(s) after April 17th we will coordinate internally. Note that it will take us at least a couple weeks after the completion of the deposition on April 17th to obtain availability and to obtain settlement authority for the mediation.

Accordingly, sometime in May would be ideal.

Also, in order to provide us with the greatest possibility for success, please reconsider our prior request to continue the trial until September. This would ensure that we have adequate time for mediation, which may take more than one session. It may also avoid considerable time and expense involved in preparing for trial while also preparing for and participating in mediation.

In that vein, when the Court preliminarily set the trial for a three-day trial from June 24-26, I had told the Court that I was free on those days. While that is true, I have a conference scheduled for June 21-23 in Vermont. I am scheduled to be one of two presenters at that conference. While June 24th is open, it will be very difficult for me to travel back from Vermont the afternoon of June 23rd and then appear the following day in trial in San Francisco on the 24th.

Accordingly, I ask at a minimum that you agree to a schedule change for that purpose.

We look forward to hearing from you.

**ROVENS LAMB LLP**

March 25, 2024
Lawrence A. Jacobson
Page 3


We again ask that you provide us the professional courtesy of a response.

Best regards,

*S.A. Lamb*

Steven A. Lamb

cc:  Thomas Rupp
     David Taylor
     Shannon Nessier

# EXHIBIT D

TELEPHONE: (650) 261-6280
FACSIMILE: (650) 368-6221

HENRY COHEN (Deceased)
LAWRENCE A. JACOBSON
SEAN M. JACOBSON

LAJ@COHENANDJACOBSON.COM
SEAN@COHENANDJACOBSON.COM

March 28, 2024

*By Email Only*

Steven A. Lamb
2601 Airport Drive, Suite 370
Torrance, California 90505
slamb@rovenslamb.com

> Re:   PG&E/Komir, Inc.
>        Bankruptcy Case No. 19-30088
>
>        Document Production for Deposition of PG&E Declarants/Deponents
>        Objection to Claim #2090 and Claimant's Response Thereto

Dear Mr. Lamb:

I write to you to further "meet and confer" with respect to PG&E's objections served by you on March 21, 2024, to Komir's deposition notices of PG&E's own experts and to the subsequent deficient production of documents relevant to those purported experts.

I wrote to you to formally meet and confer on Friday, March 22, 2024, concerning the lack of any production and the lack of any specification of any date for production.

You responded on Monday, March 25, 2024, with a limited production that PG&E apparently considers to be its complete response to the document demand contained within the notices of the taking of the respective experts.

The production does not organize and label the documents that were produced to correspond to the categories in the request as required by Federal Rules of Civil Procedure, Rule 34(b)(2)(E)(i) so Komir cannot ascertain which documents are supposedly responsive to which request.  The lack of organization and labeling compounds the difficulty in identifying the documents that were not produced.

While the production includes minor documents pertaining to the construction of the new towers, the production fails to include significant documentation requested in the notices that relates directly to the Declarations of the PG&E witnesses.  The production is limited to the extent that it appears to have been calculated to create a delay for PG&E to obtain a postponement of the trial date.

The production contains more than 200 sheets of corrupted calculation sheets and several hundred calculations for light posts (not towers or lines) and data for the North station (north of 380 and irrelevant to the present controversy) and typical standard data to create the appearance of a substantial production in terms of volume.

The production should contain the construction documents for new and old towers, including towers removed in 2018. These construction documents should include, without limitation, the coordinates of towers, height, and plans and drawings of towers from erection when they were first built to the present including any and all modifications and alterations.

The towers for which the construction documents ought to have been produced are shown in Exhibit 1 of Galacia Declaration and referred to in Raines Declaration and include the following:

6/51, 6/52, 6/52A, 6/52B (San Mateo- Martin #4, San Mateo- Martin #3)
5/40, 5/39, 5/38, 004/037-039 (East Grand- San Mateo, Martin- Millbrae)
5/40, 5/39, 5/38, 004/037-039 (San Mateo, Martin #6, Martin- SF Airport)

Specifically with respect to LiDar scans, inasmuch as Mr. Raines based nearly the entirety of his opinion based upon his stated review of PG&E's business records containing LiDar scans, the production ought to have included the LiDar records from 2012 to present for transmission lines between the above towers.

Although the experts stated that they held comprehensive knowledge concerning the entire project of the complete removal of the old towers with the lines connected to them and the total replacement of those old towers with the new ones with lines connected at different locations and heights, the production does not contain the information requested with respect to the characteristics of the towers that were removed and the height of the towers and the lines connected to them at the time of removal.

Nonetheless, the experts opined as to the comparative features of the lines as previously located on the old towers and the new ones. See my prior correspondence that specifically relates the documents being requested to the page and line numbers of the expert declarations and to the substance of their testimony.

Due to these circumstances Mr. Shahmirza and Komir are compelled to agree to your request for postponement of the trial.

They prefer a date in July or August and it appeared from the schedule the you previously provided that you would be available for a three day trial in that period. The two matters that you mentioned in your Status Conference Statement indicate that (a) for the SF Superior Court matter a trial date is set for July 8, 2024, with a time estimate by PG&E of 15 days and (b) for the Santa Clara Superior Court matter a trial date is set for August 12, 2024, with a time estimate by PG&E of 5 - 7 days. That schedule would suggest your availability in late July and early

August, or in late August, for a 3 day bench trial.

Until the issues concerning PG&E's production of documents is resolved, whether with or without judicial intervention, Komir shall not proceed with the depositions as scheduled but will re-notice for dates mutually agreeable to the parties, perhaps in the last half of May.

Please call me to arrange a suitable continued trial date.

Sincerely,

  /s/  *Lawrence A. Jacobson*
Lawrence A. Jacobson

cc: Thomas Rupp at:   trupp@kbkllp.com

# EXHIBIT E

# ROVENS LAMB LLP

2601 Airport Drive, Suite 370
Torrance, CA 90505
Telephone: 310.536.7830
Facsimile: 310.872.5026

slamb@rovenslamb.com
310.536.7830

April 1, 2024

By Electronic Mail Only

Lawrence A. Jacobson
COHEN & JACOBSON, LLP
66 Bovet Road, Suite 285
San Mateo, CA 94402
laj@cohenandjacobson.com

RE:     Proof of Claim of Amir Shahmirza in *PG&E Corporation*
        Case No. 19-30088 (DM), U.S. Bankruptcy Court, N. D. Cal.

Dear Mr. Jacobson:

Reference is made to your meet and confer correspondence of Thursday, March 28, 2024, transmitted electronically. We address below a number of issues with the statements and claims made therein.

As an initial matter, your prior correspondence of Friday, March 22, 2024, delivered after business hours and demanding immediate response, ignored our request for mutually-agreed-to dates for production of documents. Instead, you demanded that we produce documents by the next business day, Monday, March 24, 2024, or you were unilaterally cancelling your depositions, which the parties worked very hard to put in place. Despite your unwillingness to engage in good faith meet and confer efforts, we produced the relevant, responsive documents under your client's Notices the day you demanded.

## PG&E Expert Production

The document production responding to the deposition notices of Messrs. Galicia, Sosinski, and Raines (the "PG&E Expert Production") was produced through our office's .ftp site. The PG&E Expert Production contained over 2GB of data, 87 documents on topics such as Technical Scope, Structure Data Sheets, FAA Drawings, Foundation

Drawings, Electrical Drawing, just to name a few of the 18 categories of documents that were produced. Despite these efforts and facts, your recent correspondence makes several incorrect and improper claims about the production in order to justify cancelling the depositions of these expert witnesses.

First, your March 28th correspondence claims that the PG&E Expert Production does not meet the requirement of Federal Rule of Civil Procedure, Rule 34(b)(2)(E)(i), in that "[t]he production does not organize and label the documents that were produced to correspond to the categories in the request as required by Federal Rules of Civil Procedure, Rule 34(b)(2)(E)(i)." That is simply not true.

Your correspondence is an incomplete and misleading citation to the actual Rule. The Rule requires that:

(i)     A party must produce documents *as they are kept in the usual course of business* **or** must organize and label them to correspond to the categories in the request;

(ii)    If a request *does not specify a form for producing* electronically stored information, a party **must produce it** in the form or forms in which it is **ordinarily maintained** or in a reasonably usable form or forms.

FRCP 34(b)(2)(E)(i) and (ii) (all emphasis added).

The PG&E Expert Production complies with the Rule. Because the documents were produced "as they are kept in the usual course of business," PG&E has no obligation to organize and label them to correspond to the categories in the request. Further, because you did not specify a form for producing ESI, the electronic production **must** be produced in the form it is ordinarily maintained in the usual course of business, which it was. Further, all files except the three CADD drawings and one video were produced as easily viewable PDFs – a baseline for reasonable form of production. The PG&E Expert Production contains helpful file names and document names for all the documents Messrs. Galicia, Sosinski, and Raines relied on or considered for their expert testimony, as set forth in their declarations.

Second, your correspondence asserts that the PG&E Expert Production "contains more than 200 sheets of corrupted calculation sheets." All but three CADD files and the video

are .pdf files. We opened them, co-counsel outside our office opened them, and the client opened them. They are viewable and do not appear to be "corrupted." If you can identify a specific file and document and explain how you view it as "corrupted," we will work with you to help you properly download and view the .pdf files. The LiDAR scans are located in the file identified as "IFC Drawings," in Folder 02 – PLS-CADD Files. These three files were produced as they **are ordinarily maintained** and in their native form. However, as your client, who is a civil engineer, knows, CADD is a software system, which issues licenses. They are viewable with the appropriate software license. If Mr. Shahmirza does not have access to that software, then you and your client should confer on a form of production to alternatively request.

## PG&E Retained Expert Production

As with the PG&E Expert Production, in response to your refusal to meet and confer on a reasonable production date, and your demand to produce documents the next business day or else you would unilaterally cancel depositions, your office was provided via a second file share service the production from co-counsel's office for PG&E's retained expert Michelle Patton (the "Retained Expert Production"). You do not raise any issues relating to the Retained Expert Production, and to the extent you claim any of the above issues apply to that production, we incorporate our responses to the same.

## Pending Depositions

By your correspondence, you removed from their currently noticed dates the depositions of Messrs. Galicia, Sosinski, and Raines. In reliance on your correspondence, we have released those dates for the witnesses. However, you raised no issues with the Retained Expert Production. It was complete and Rule compliant; we do not see why that deposition cannot proceed. However, the deposition is yours to withdraw or proceed as you like; but, for avoidance of confusion, please confirm that you request that it be continued.

As to PG&E's deposition notices for Mr. Mateo and Mr. Shahmirza, those are not under your authority to take off calendar or to unilaterally continue. The Notices were duly served, have not been withdrawn, and all deadlines in and triggered by them are still applicable and enforceable. You simply do not have the authority to cancel PG&E's noticed depositions unilaterally.

Beyond the above, we also see no reason the depositions of Ms. Patton, Mr. Mateo, and

Mr. Shahmirza cannot go forward as scheduled and without further delay. The appraisers have both already issued their reports, which have been exchanged. They are not affected by the depositions related to the other witnesses. Furthermore, as to Mr. Shahmirza, his testimony is as an expert only, PG&E having already deposed him as a percipient witness. His expert testimony does not rely on any of the other witnesses' testimony. Like the expert appraisers, his testimony is on his own expertise given his is the only documentation about the alleged development he thinks can be built on his parcel; his personal thoughts about other issues (or the other witnesses) are not at issue or relevant, and thus his deposition should likewise proceed. .In furtherance of our April 15th further status conference with the Court, we will coordinate with you and respond separately regarding our proposed trial date after reviewing counsel and witness availability. At that time, we would be willing to discuss further accommodations with our own Notices, but we are not in that position right now.

Kindly confirm whether you will proceed with the Patton deposition, or request to continue it as well. By this letter, we confirm that at this time, the Mateo and Shahmirza depositions have not been withdrawn or continued, and remain in place.

## Conclusion

We produced all responsive documents, in compliance with the Rules, within the time limit you demanded for all of PG&E's in-house and retained experts. We were prepared to produce Messrs. Galicia, Sosinski, and Raines for deposition on April 2, 4, and 9, respectively; you unilaterally continued those. We have accepted that request. In the meantime, in order to assist you with your issues with the PG&E Expert Production, please identify your claims about "corrupt" files, and update us on the CADD file issue. We want to help you get this resolved.

As to the other experts, we seek clarity on your plans for Ms. Patton, and we confirm our Notices remain applicable for the depositions of Messrs. Mateo and Shahmirza at this time. In that vein, we note that you have failed to respond to or produce documents by Friday's deadline, in response to the deposition notices of Messrs. Mateo and Shahmirza. Accordingly, you must respond immediately, without objection, and produce all documents.

.

April 1, 2024
Lawrence A. Jacobson
Page 5

Finally, we remind you to direct all correspondence, documents, pleadings, etc., not only to my office, but also to Thomas Rupp and Shannon Nessier, both of whom are counsel of record for PG&E, and need to be included, consistent with their appearances in this matter. This will avoid any delays or issues going forward.

If you wish to have a call about any of the above, please let me know.

Best regards,

Steven A. Lamb

cc: Thomas Rupp
     Shannon Nessier

# EXHIBIT F

**ROVENS LAMB LLP**

2601 Airport Drive, Suite 370
Torrance, CA 90505
Telephone: 310.536.7830
Facsimile: 310.872.5026

slamb@rovenslamb.com
310.536.7830

April 29, 2024

<u>By Electronic Mail Only</u>

Lawrence A. Jacobson
COHEN & JACOBSON, LLP
66 Bovet Road, Suite 285
San Mateo, CA 94402
laj@cohenandjacobson.com

RE:     Proof of Claim of Amir Shahmirza in *PG&E Corporation*
        Case No. 19-30088  (DM), U.S. Bankruptcy Court, N. D. Cal.

Dear Mr. Jacobson:

Reference is made to our meet and confer correspondence of April 1, 2024.  We addressed a number of issues with the statements and claims made therein and requested information from you in order to help you identify documents and information that you requested.  You have not responded.

We remain willing to assist you in this endeavor but need responses to our requests.  For example:

1.   You have not identified any documents that you claim are "corrupted."  As noted earlier, we have been able to view all .pdf documents.
2.  Regarding the CADD files, these are LiDAR scans.  You have not confirmed that your client, a civil engineer, does not have access to software to view these files.  Nor have you proposed any alternative means to review these files, such as screenshots, which we have offered.

Your March 28th meet and confer correspondence requests information that would have been more appropriate for interrogatories.  As you know, you did not serve any interrogatories and the deadline for percipient discovery has long passed.  My clients

have provided you detailed documentation, which includes much of the information you suggest "is not there." Interpretation of the documents you demanded is not required nor appropriate for the expert document requests you propounded. Notwithstanding, we are attempting to provide you with that information as a sign of good faith. We anticipate you will be seeking further clarification through the depositions of Messrs. Galicia, Sosinski, and Raines, but provide this information to help you understand the documents provided. We hope that will help you prepare your questions for the respective depositions regarding the following. If you need further help with the documents, we will do our best to assist you.

We have already provided the IFC drawings, which contain much of the information you demanded. We are including here the As-Built file. The As-Built file is largely duplicative of the IFC file, but has some markings that confirm that everything was built as designed in the IFC you already have. Below we try to help your office find the data that is present in the documents it demanded:

1. The height of the new structures is shown on Tubular Steel Pole (TSP) Requirement drawing 093711 and on vendor shop drawing *6038888 (attached). These drawings also include dimensions of conductor points of attachment on the structures. *6038888 confirms the pole height provided by the vendor is correct. Note: there is an incorrect dimension shown on 093711 pages 4, 5 and 6 regarding which you may wish to inquire during depositions.
2. The catenary image of the conductor is shown on Plan and Profile drawings 377636, 30100252 and 3013379. 30100252 and 3013379 show values for height (above ground) of conductor attachment points for all three wires (top/middle/bottom).
3. 377636 shows values for elevation of conductor attachment points for all three wires (top/middle/bottom).
4. Design coordinates of the new structures are shown on TSP Requirement drawing 093711 sheet 3.
5. Drawing 445856 Structure Requirements for Tubular Steel Poles San Bruno Interchange, shows design details for the old/removed TSP's.
6. Drawings of the new/replaced structures are at 093711 and 6038888.
7. Old foundation dimension for 6/52A and 6/52B is on drawing 445856. New foundation for 6/52 is on drawing 3100205.
8. Existing foundation for tower 6/51 is on drawing 200614.
9. Old foundation dimension for 5/39 and 5/38 is on drawing 445856.
10. New foundation for 004/037-039 is on drawing 3100205.

11. Old foundation dimension for 5/39 and 5/38 is on drawing 445856.
12. New foundation for 5/39 is on drawing 3100205.
13. Existing foundation for tower 5/40 is on drawing 401368.

Further, we note that you demanded we answer questions about GPS data in your meet and confer email. Again, asking questions of a party about documents they produced is not an appropriate use of the document request discovery device. But we nevertheless will elaborate here, again to try to assist your office in understanding the documents that were provided. PG&E typically uses station values for its own in-house location measurement as well as X and Y state plane coordinates. While X and Y state plane coordinates can be converted to GPS coordinates, that is not how the client keeps its data or records these installations in its regular course of business, so it produced to you the data that it keeps in the format that it keeps that data. X and Y state plane data are what US surveyors typically use. This data can be found on the bottom of sheet 3 of Drawing 093711 (page 14 of the PDF document).

Finally, despite hearing nothing about possible solutions for the LiDAR data in the CADD files from your office, PG&E did its own assessment and can provide screenshots, similar to the screenshots attached to the Raines Declaration. As we explained, the LiDAR data has been produced and you can retain a surveyor or engineer with a CADD license who will be able to view all of the data. Additionally, if there is specific screenshot information that you are looking for, we will try to address that. An example of a screenshot that may be helpful is on the following page, *below*.

We are making best efforts to reach out, and would appreciate any substantive response from you on these items. It is difficult to meet and confer in a vacuum, but we will continue to make efforts to try and resolve these issues.

Best regards,

*S.A. Lamb*

Steven A. Lamb

Enclosures:
- As-Builts Drawings

cc: Thomas Rupp
    Shannon Nessier

