| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP**<br>Richard W. Slack (pro hac vice)<br>(richard.slack@weil.com)<br>Jessica Liou (pro hac vice)<br>(jessica.liou@weil.com)<br>Matthew Goren (pro hac vice)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: (212) 310-8000<br>Fax: (212) 310-8007<br><br>**KELLER BENVENUTTI KIM LLP**<br>Jane Kim (#298192)<br>(jkim@kbkllp.com)<br>David A. Taylor (#247433)<br>(dtaylor@kbkllp.com)<br>Thomas B. Rupp (#278041)<br>(trupp@kbkllp.com)<br>425 Market Street, 26th Floor<br>San Francisco, CA 94105<br>Tel: (415) 496-6723<br>Fax: (650) 636-9251 | **LATHAM & WATKINS LLP**<br>Joshua G. Hamilton (#199610)<br>(joshua.hamilton@lw.com)<br>Michael J. Reiss (#275021)<br>(michael.reiss@lw.com)<br>10250 Constellation Blvd., Suite 1100<br>Los Angeles, California 90067<br>Tel: (424) 653-5500<br><br>**LATHAM & WATKINS LLP**<br>James E. Brandt (pro hac vice)<br>(james.brandt@lw.com)<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Tel: (212) 906-1200 |

*Attorneys for the Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>        **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case Nos. 19-30088 (DM)<br><br>(Lead Case) (Jointly Administered)<br><br>**FURTHER REPLY IN SUPPORT OF REORGANIZED DEBTORS' THIRTY-FOURTH SECURITIES CLAIMS OMNIBUS OBJECTION TO CLAIMS ADOPTING RKS AMENDMENT** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ....................................................................................................... 2

    A. The RKS Claimants' Allegation That PG&E Failed To Follow Its Internal Procedures Cannot Support A Securities Claim Because PG&E Never Made A Statement To The Contrary ............................... 2

        1. PG&E Cannot Be Liable For A Statement It Did Not Make ..................... 2

        2. Whether PG&E Complied Or Did Not Comply With Its ETPM Is Irrelevant To Any Other Challenged Statement ......................... 3

    B. Statements Regarding PG&E's Disclosure Controls Are Not Actionable ................................................................................................. 4

    C. The RKS Claimants' Scheme Liability Claim Fails ............................................. 6

        1. The RKS Claimants Fail To Rebut That Their Scheme Liability Claim Based On PG&E's Statements To Investors Is Duplicative Of Their 10b-5(b) Claim ..................................... 6

        2. The RKS Claimants Fail To Rebut That Their Allegations Regarding PG&E's Actions Separate And Apart From Its Public Disclosures Cannot Establish A Scheme Liability Claim ......................................................................................................... 8

    D. The RKS Claimants' Opposition Underscores That They Have Failed To Plead Reliance For Their Section 10(b) Debt Claims ........................ 11

III. CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acedo v. DMAX, Ltd.*,
  2015 WL 12912365 (C.D. Cal. July 31, 2015) ................................................................. 5

*Basic v. Levinson*,
  485 U.S. 224 (1988) ....................................................................................................... 12

*Binder v. Gillespie*,
  184 F.3d 1059 (9th Cir. 1999) ....................................................................................... 12

*Di Donato v. Insys Therapeutics Inc.*,
  2017 WL 3268797 (D. Ariz. Aug. 1, 2017) .................................................................... 9

*Falkowski v. Imation Corp.*,
  309 F.3d 1123 (9th Cir. 2003), *abrogated on other grounds by Proctor v.
  Vishay Intertech. Inc.*, 584 F.3d 1208 (9th Cir. 2009) .................................................. 11

*Howard v. Arconic Inc.*,
  395 F. Supp. 3d 516 (W.D. Pa. 2019) ............................................................................. 4

*In re Able Labs. Sec. Litig.*,
  2008 WL 1967509 (D.N.J. Mar. 24, 2008) ................................................................... 10

*In re Alphabet*,
  1 F.4th 687 (9th Cir. 2021) ............................................................................................. 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009) .................................................................................. 13

*In re Firstenergy Corp.*,
  2022 WL 681320 (S.D. Ohio Mar. 7, 2022) ................................................................. 10

*In re Mindbody, Inc. Sec. Litig.*,
  489 F. Supp. 3d 188 (S.D.N.Y. 2020) ............................................................................. 7

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ........................................................................................... 2

*In re Turquoise Hill Resources Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022) ............................................................................. 7

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
  382 F. Supp. 2d 1173 (N.D. Cal. 2004) ........................................................................ 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    328 F. Supp. 3d 963 (N.D. Cal. 2018) ............................................................................. 13

*Klein v. Altria Grp., Inc.*,
    525 F. Supp. 3d 638 (E.D. Va. 2021) ............................................................................ 10

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019) ..................................................................................................... 7

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
    601 U.S. 257 (2024) .................................................................................................... 3, 5

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ........................................................................................................... 5

*Menaldi v. Och-Ziff Capital Mgmt. Group LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017) ..................................................................... 10, 11

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
    2021 U.S. Dist. LEXIS 61182 (S.D.N.Y. Mar. 30, 2021) .............................................. 10

*Mucha v. Volkswagen AG*,
    540 F. Supp. 3d 269 (E.D.N.Y. 2021) .............................................................................. 4

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
    730 F.3d 1111 (9th Cir. 2013) ....................................................................................... 12

*Ong v. Chipotle Mexican Grill, Inc.*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018) .............................................................................. 4

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977) ......................................................................................................... 5

*SEC v. Bardman*,
    216 F. Supp. 3d 1041 (N.D. Cal. 2016) ........................................................................ 10

*SEC v. Pirate Investor LLC*,
    580 F.3d 233 (4th Cir. 2009) ..................................................................................... 9, 10

*SEC v. Rio Tinto, PLC*,
    41 F.4th 47 (2d Cir. 2022) ............................................................................................... 7

*SEC v. Zandford*,
    535 U.S. 813 (2002) .................................................................................................... 8, 9

*Stoneridge Inv. Partners, LLC v. Sci-Atlanta*,
    552 U.S. 148 (2008) ......................................................................................................... 9

*Stoyas v. Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018) ........................................................................................... 8

*Takata v. Riot Blockchain, Inc.*,
    2023 WL 7133219 (D.N.J. Aug. 25, 2023) ...............................................................................8

*Weston Fam. P'ship LLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) ..................................................................................................2

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ...............................................................................................3

PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, "**PG&E**," the "**Debtors**" or the "**Reorganized Debtors**"), hereby submit this further reply in support of the *Reorganized Debtors' Thirty-Fourth Securities Claims Omnibus Objection to Claims Adopting RKS Amendment* [ECF No. 14203] (the "**RKS Objection**" or "**RKS Obj.**").

## I. INTRODUCTION

The RKS[1] Amendment predominantly cribs from PERA's[2] Third Amended Complaint, and PG&E's arguments regarding those allegations are addressed in PG&E's Omnibus Reply, which is fully incorporated herein.

Perhaps recognizing the vulnerabilities of the Third Amended Complaint, however, the RKS Claimants made some additional allegations and arguments, none of which save their claims:

- The RKS Claimants allege that PG&E failed to follow its own internal procedures, including those set forth in an Electric Transmission Preventative Maintenance Manual; these allegations fail to state a securities claim because PG&E never made public statements concerning its internal procedures, and its alleged failure to follow them cannot render any of its other statements false.

- The RKS Claimants purport to have alleged claims based on PG&E's disclosure controls; those claims fail because the RKS Claimants never actually pled them, and even if they had, they plead no specific facts establishing the statements were false.

- The RKS Claimants allege a "scheme liability" claim under SEC Rules 10b-5(a) and (c); that claim fails because it is impermissibly duplicative of their "misstatements" claim under Rule 10b-5(b), and to the extent it were not, they plead no facts establishing some additional acts constituted a fraudulent scheme within the meaning of the federal securities laws.

---

[1] For purposes of this Reply, "**RKS**" refers to the law firm of Rolnick Kramer Sadighi LLP, and the "**RKS Claimants**" refers to claimants represented by RKS in this matter, and also any non-RKS-represented claimants that adopted, in whole or in part, the allegations in the RKS Amendment.

[2] Definitions for terms not otherwise defined herein can be found in PG&E's Omnibus Reply to PERA's TAC (the "**Omnibus Reply**").

- The RKS Claimants allege claims under Section 10(b) of the Securities Exchange Act based on PG&E debt securities; those claims fail because the RKS Claimants have not pled facts establishing the required element of reliance.

In short, the RKS Claimants cannot save their claims by simply adding "more facts as well as broader legal claims anchored in the same misconduct" to the Third Amended Complaint. RKS Opp. at 6. More does not equal adequate, and none of those additional allegations change the outcome for the RKS Claimants or any other claimants. All claims based on the RKS Amendment should be disallowed and expunged.

## II.     ARGUMENT

### A. The RKS Claimants' Allegation That PG&E Failed To Follow Its Internal Procedures Cannot Support A Securities Claim Because PG&E Never Made A Statement To The Contrary

Like PERA, the RKS Claimants have failed to plead with particularity that PG&E made a material misrepresentation or omission—*i.e.*, that each challenged statement "directly contradict[ed] what the defendant knew at that time" in a material way, *Weston Fam. P'ship LLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) (citation omitted), and materially altered the "total mix" of information available to investors, *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1408 (9th Cir. 1996). *See generally* PERA Obj. at 25–27.

The RKS Claimants' attempt to argue that PG&E's alleged non-compliance with its internal Electric Transmission Preventative Maintenance Manual ("**ETPM**") somehow meets their burden to plead that PG&E's statements regarding its fire safety and compliance efforts were false (RKS Opp. at 16–17 (citing RKS Am. ¶ 238)) fails because (1) PG&E never made any public representations regarding the ETPM; and (2) under any circumstances, purported non-compliance with an internal policy not communicated to the public does not render false PG&E's general statements about compliance.

#### 1.     PG&E Cannot Be Liable For A Statement It Did Not Make

The RKS Claimants allege that PG&E's statements regarding its compliance with laws and regulations were false because PG&E purportedly failed to comply with its own internal procedures, and those procedures were supposedly inadequate. *See* RKS Opp. at 15 (citing RKS

Am. ¶¶ 154–65). This fraud theory fails for the simple reason that the RKS Claimants do not allege a single public statement in which PG&E discussed its internal policies, let alone compliance therewith.

The RKS Claimants' allegations focus on PG&E's ETPM, which "went into effect in 2005"—long before the Alleged Relevant Period started. RKS Am. ¶ 154. While the RKS Claimants levy several allegations about supposed problems with the ETPM and PG&E's compliance with it, they do not make the central allegation for any securities claim—that PG&E actually made a public statement concerning its compliance with the ETPM (or any other internal procedures). On this basis alone, the RKS Claimants' theory fails. *See, e.g.*, *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021) (plaintiffs did not plead sufficient facts to establish falsity where "Plaintiffs' brief rewrites th[e] statement" to something that "is not what the statement says"). For the same reason, all of the RKS Claimants' allegations regarding the effectiveness (or alleged lack thereof) of PG&E practices prior to the Alleged Relevant Period are irrelevant, as the RKS Claimants point to no public statements PG&E made within the Alleged Relevant Period concerning its internal policies that were rendered false by PG&E's purported failures to disclose information regarding such historical practices. *See* RKS Am. ¶¶ 156, 159–66; *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 264 (2024) ("Rule 10b–5(b) does not proscribe pure omissions. . . . [T]he Rule requires identifying affirmative assertions (i.e., 'statements made') before determining if other facts are needed to make those statements 'not misleading.'").

    2. <u>Whether PG&E Complied Or Did Not Comply With Its ETPM Is Irrelevant To Any Other Challenged Statement</u>

The RKS Claimants further attempt to manufacture a claim by arguing that PG&E's alleged failure to comply with the ETPM rendered PG&E's statements that it complied with relevant laws false. The RKS Claimants rest this argument on the premise that, in order to comply with relevant laws, PG&E had to comply "with what it had provided to its regulators," including a copy of the ETPM (among thousands of other documents). *See* RKS Opp. at 16–17.

But the RKS Claimants provide no authority for this assertion. They cite no law or

regulation tied to PG&E's own internal policies, regardless of whether they were provided to regulators. In fact, many courts that have addressed this issue have come to the opposite conclusion. *See, e.g., Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 548 (W.D. Pa. 2019) (statements inactionable because "[a]t most, the allegations demonstrate that Arconic 'failed to live up to its own . . . safety standards'") (citation omitted); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) (statements that company's "food safety programs are also designed to ensure that [the Company] compl[ies] with applicable federal, state and local food safety regulations" were inactionable); *Mucha v. Volkswagen AG*, 540 F. Supp. 3d 269, 296–97 (E.D.N.Y. 2021) (statements about a company's "goals" or what a company "aims to do" are not actionable).

The RKS Claimants' attempt to tie PG&E's undisclosed internal policies to statements about PG&E's compliance with law fails to support a claim under the federal securities laws.

### B. Statements Regarding PG&E's Disclosure Controls Are Not Actionable

The RKS Claimants argue that PG&E failed to respond to "an entire category of alleged misstatements," specifically allegations that PG&E's statements about its "disclosure controls and procedures were false and misleading." RKS Opp. at 21–22. But PG&E did respond to these allegations when responding to claims about other statements. And importantly, the RKS Amendment identifies neither the precise statements about disclosure controls that are alleged to be false nor the factual basis for such allegations. The RKS Claimants cannot press a claim on those statements now, much less criticize PG&E for not addressing them.

The RKS Claimants clearly articulated in the RKS Amendment which statements they were alleging were false, stating that *only* "[t]he statements made by PG&E that are **bold and italicized** are the statements alleged to be false and misleading." RKS Am. ¶ 26 n.4 (emphasis in original). The RKS Claimants did not bold or italicize any of PG&E's purported statements regarding disclosure controls and procedures. *See* RKS Am. ¶¶ 418–24. The RKS Claimants did not even specifically identify all of the disclosure-related statements they now vaguely allege were false and misleading; their pleading merely alleges that PG&E "made substantively identical statements" in various SEC filings. *Id*. ¶¶ 422–23. The RKS Claimants cannot now claim that

statements which they failed to identify with particularity—and failed even to bold and italicize, as they did with other allegedly false statements in the RKS Amendment—are false, and that PG&E failed to respond. *Acedo v. DMAX, Ltd.*, 2015 WL 12912365, at *27 (C.D. Cal. July 31, 2015) ("As courts routinely recognize, it is improper for plaintiffs to assert unpled theories of liability in opposition to defendants' Rule 12(b)(6) motion to dismiss."). The RKS Claimants had many *years* to decide precisely what facts to allege in their Amendment and failed to allege specific facts to show falsity as required by the securities laws.

In any event, the RKS Claimants' substantive allegations fail to state a claim. The statements the RKS Claimants apparently purport to challenge are "substantively identical statements" in various PG&E securities filings that PG&E's "principal executive officers and principal financial officers have concluded" that PG&E's "disclosure controls and procedures" were "effective to ensure that information required to be disclosed" was "recorded, processed, summarized, and reported within the time periods specified in the SEC rules and forms," and "accumulated and communicated to PG&E Corporation's and the Utility's management . . . as appropriate to allow timely decisions regarding required disclosure." RKS Am. ¶¶ 421–22. First, these allegations are really disguised claims for mismanagement that cannot support a claim for securities law violations. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) (Congress "did not seek to regulate transactions which constitute no more than internal corporate mismanagement" in enacting Section 10(b) of the Exchange Act). Moreover, to the extent that the RKS Claimants' falsity theory for these statements is that "PG&E knew, but failed to inform investors, of its criminally negligent and criminally reckless actions, failure to comply with laws and regulations, and deficient vegetation management practices" (RKS Am. ¶ 424), such an alleged failure to disclose even material information does not establish a federal securities claim, absent a duty to disclose or unless that failure rendered some statement false or misleading. *Macquarie*, 601 U.S. at 264 ("[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information.") (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). In line with this maxim, PG&E stated merely that its controls were "effective to ensure that information ***required to be disclosed*** by PG&E Corporation and the Utility" would

be reported. RKS Am. ¶ 421 (emphasis added). The RKS Claimants do not and cannot allege that PG&E claimed its disclosure controls would ensure the disclosure of any and all material information—something the securities laws do not require.

The RKS Claimants plead no specific facts establishing that PG&E knowingly failed to disclose information that it was required to disclose. And even if the RKS Claimants *had* pled specific facts establishing that PG&E failed to disclose information it was required to disclose—thereby purportedly showing with the benefit of hindsight that PG&E's disclosure controls and procedures were ineffective—those facts would *still* be insufficient to state a securities fraud claim because such facts would not show that PG&E's officers knew the controls were ineffective at the time of the statements. Therefore, the RKS Claimants' allegations regarding PG&E's statements about its disclosure controls and procedures—to the extent the Court is inclined to consider them at all—do not state a claim.

### C. The RKS Claimants' Scheme Liability Claim Fails

The RKS Claimants, unlike PERA, assert a claim for "scheme liability" pursuant to SEC Rules 10b-5(a) and (c), in addition to their primary claim for misstatement liability pursuant to Rule 10b-5(b). *See* RKS Am. ¶¶ 634–44. But as explained in the RKS Objection, the RKS Claimants' scheme liability claim fails because, *first*, it is duplicative of their misstatement claims under Rule 10b-5(b), and *second*, to the extent it were premised on PG&E acts other than the alleged false statements, the RKS Claimants fail to plead the elements of such a claim with the specificity required under governing law. Nothing in the RKS Opposition changes that result.

1. The RKS Claimants Fail To Rebut That Their Scheme Liability Claim Based On PG&E's Statements To Investors Is Duplicative Of Their 10b-5(b) Claim

As PG&E explained in the RKS Objection, the RKS Claimants' scheme liability claim is not viable because their conclusory allegation that "PG&E carried out a common plan, scheme, and unlawful course of conduct" to "deceive the investing public" and "artificially inflate the price of PG&E securities," RKS Am. ¶ 636, is wholly duplicative of their misstatement and omission allegations under Rule 10b-5(b), and must be dismissed on that basis. RKS Obj. at 31–32; *see also In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 217 (S.D.N.Y. 2020) (dismissing scheme

liability claim because "the entire 'conduct' or 'scheme' complained of is the dissemination of misleading information" which was "indistinguishable" from the 10b-5(b) claim).

The RKS Claimants' contention that their allegation that PG&E "disseminated more than thirty fraudulent misstatements of fact" somehow states a claim is wrong. RKS Opp. at 51. As PG&E argued in the RKS Objection, a plaintiff cannot base a Rule 10b-5(a) and (c) scheme liability claim on nothing more than allegations of misstatements and omissions that also purportedly support a Rule 10b-5(b) claim. RKS Obj. at 31-32. The RKS Claimants argue that this rule was abrogated by *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), and *In re Alphabet*, 1 F.4th 687 (9th Cir. 2021). Not so. *Lorenzo* held that an individual who did not make the purportedly false statement—and hence cannot be liable under Rule 10b-5(b)—may be liable under Rules 10b-5(a) and (c) for the separate offense of *disseminating* that false statement in furtherance of a fraudulent scheme, because knowingly disseminating someone else's false statement can itself be deceptive. 139 S. Ct. at 1102 (defendant investment banker liable under 10b-5(a) and (c) for knowingly disseminating to investors false statements made by others for purpose of defrauding those investors). And *In re Alphabet* acknowledged that, pursuant to *Lorenzo*, scheme liability and misstatement liability claims may "overlap," and misstatements may form a part of a fraudulent scheme. 1 F.4th at 709. But as more recent Second Circuit authority directly addressing the point explained, a defendant cannot be liable under Rules 10b-5(a) and (c) based on nothing more than the making of statements which a plaintiff alleges also violated Rule 10b-5(b). *SEC v. Rio Tinto, PLC*, 41 F.4th 47, 54-55 (2d Cir. 2022) (noting the importance of "[p]reserving distinctions between the subsections" of Rule 10b-5 to prevent plaintiffs from "repackag[ing] their misstatement claims as scheme liability claims to 'evade the pleading requirements imposed in misrepresentation cases'") (citation omitted). Furthermore, a plaintiff cannot transform a Rule 10b-5(b) claim based upon false statements into a 10b-5(a) and (c) scheme liability claim by merely alleging that a defendant also "disseminated" those same statements. *In re Turquoise Hill Resources Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 248–49 (S.D.N.Y. 2022) (dismissing claim because "the creation of a false statement that is then disseminated … is not sufficient to create scheme liability"). The RKS Claimants cite no authority to the contrary. And of course, if the

Court finds—as it should—that the RKS Claimants have failed to state a Rule 10b-5(b) misstatement claim as to any of the purported misstatements they allege PG&E disseminated, then the RKS Claimants' scheme liability claim based on those same statements necessarily also fails. *Takata v. Riot Blockchain, Inc.*, 2023 WL 7133219, at *11 (D.N.J. Aug. 25, 2023) (dismissing scheme liability claim because "Plaintiff merely repackages the statements or omissions," and since "the Court has found those allegations unactionable," they "cannot independently serve as 'deceptive or manipulative acts' to support scheme liability").

2. The RKS Claimants Fail To Rebut That Their Allegations Regarding PG&E's Actions Separate And Apart From Its Public Disclosures Cannot Establish A Scheme Liability Claim

The RKS Claimants' scheme liability claim also fails because, to the extent it is based on purported misconduct other than alleged misstatements to investors, the RKS Claimants' allegations are not sufficient to state a claim under the federal securities laws. The RKS Claimants make no substantive allegations in support of their scheme liability claim specifically. In fact, SEC Rules 10b-5(a) and (c), and the theory of scheme liability more broadly, are referenced only in the last few pages of the RKS Amendment in the "Asserted Claims To Be Allowed" section. *See* RKS Am. ¶¶ 634–44.

Recognizing this failure, the RKS Claimants in their Opposition improperly attempt to supplement the RKS Amendment with allegations about PG&E's actions separate and apart from its statements to investors—such as allegations that PG&E "cheat[ed] on the maintenance of its grid," "violated its probation conditions during the Relevant Period," and "defrauded and deceived its regulators." RKS Opp. at 51–52. Even if these new, unpled allegations could be considered (which they cannot), they do not state a scheme liability claim because PG&E did not commit such alleged misconduct in connection with the purchase or sale of a security. *SEC v. Zandford*, 535 U.S. 813, 825 (2002); *see also Stoyas v. Toshiba Corp.*, 896 F.3d 933, 951 (9th Cir. 2018) ("We have held that for fraud to be 'in connection with the purchase or sale of any security,' it must 'touch' the sale—i.e., it must be done to induce the purchase at issue.") (citation omitted). In determining whether an alleged fraud was in connection with the purchase or sale of a security such that it might fall within the ambit of the federal securities laws, courts consider factors such

as "(1) whether a securities sale was necessary to the completion of the fraudulent scheme; (2) whether the parties' relationship was such that it would necessarily involve trading in securities; (3) whether the defendant intended to induce a securities transaction; and (4) whether material misrepresentations were disseminated to the public in a medium upon which a reasonable investor would rely." *SEC v. Pirate Investor LLC*, 580 F.3d 233, 244 (4th Cir. 2009) (per curiam) (citations and quotation marks omitted). As the Supreme Court explained, "the [Exchange Act] must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b)[.]" *Zandford*, 535 U.S. at 820 (finding "in connection with" requirement met because "[t]he securities sales and respondent's fraudulent practices were not independent events" but "coincided with the sales themselves"). Here, even taking the RKS Claimants' allegations as true, they allege no facts establishing that PG&E's purported cheating on grid maintenance, violations of its probation conditions, or deceptions of its regulators involved, or were directly connected to, any securities transactions. The RKS Claimants' scheme liability claim must therefore fail. *Pirate Investor*, 580 F.3d at 244.

The RKS Claimants center their claim that PG&E "defrauded and deceived its regulators" on a new allegation that PG&E provided a "sham manual"—the ETPM—to the CPUC. This argument is misplaced because purportedly committing a fraud on a third party, such as a regulator, is not sufficient to state a scheme liability claim unless the plaintiff pleads specific facts showing that the fraud was committed as part of a scheme to deceive investors, and was something on which investors relied. *Stoneridge Inv. Partners, LLC v. Sci-Atlanta*, 552 U.S. 148, 159, 162 (2008) (Section 10(b) "does not reach all commercial transactions that are fraudulent and affect the price of a security in some attenuated way," and "[r]eliance by the plaintiff upon the defendant's deceptive acts is an essential element" of a scheme liability claim). The RKS Claimants nowhere plead that the ETPM was provided to investors, or that investors relied on it in deciding to invest in PG&E securities, which is fatal to their scheme liability claim. *Di Donato v. Insys Therapeutics Inc.*, 2017 WL 3268797, at *16 (D. Ariz. Aug. 1, 2017) ("The kinds of statements courts have found to satisfy the 'in connection with' requirement are typically documents directly targeted to investors or the investment community[.]" (citing *Pirate Investor,* 580 F.3d at 250–51)).

The RKS Claimants' cases are all inapposite because they involved alleged frauds that occurred coincident to the securities transactions at issue *and* in each of them the court also found that defendants made related material misstatements to investors pursuant to Rule 10b-5(b). *See Klein v. Altria Grp., Inc.*, 525 F. Supp. 3d 638, 651–52 (E.D. Va. 2021) (defendants lied to investors and regulators in connection with a defendant's acquisition of the stock of another); *SEC v. Bardman*, 216 F. Supp. 3d 1041, 1045, 1057 (N.D. Cal. 2016) (defendants misrepresented company's financial condition to its auditors as part of a "scheme to materially inflate the operating income that [it] reported to its investors").[3] The RKS Claimants point to no case in which a court allowed a scheme liability claim to proceed where the scheme was not directly connected to the relevant securities transactions and the plaintiff had not also successfully pled a misstatement claim under Rule 10b-5(b).

Furthermore, even if the RKS Claimants had sufficiently pled (which they did not) that the ETPM was a document on which investors might rely, their allegations regarding the ETPM still would fail to state a scheme liability claim because, as the RKS Claimants acknowledge, PG&E submitted the ETPM to the CPUC *in 2005*—years before the Alleged Relevant Period. RKS Am. ¶¶ 154, 156. Allegations regarding pre-class period misconduct do not establish a scheme liability claim absent specific facts establishing that such prior misconduct was part of a scheme to deceive investors in the class period—facts that the RKS Claimants fail to plead. *See Menaldi v. Och-Ziff Capital Mgmt. Group LLC*, 277 F. Supp. 3d 500, 518 (S.D.N.Y. 2017) (dismissing scheme liability claims based on misconduct that "occurred years before the class period"); *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 U.S. Dist. LEXIS 61182, at *9–11, *32 (S.D.N.Y. Mar. 30, 2021) (dismissing misstatement and scheme liability claims because plaintiff did not plead that alleged illegal bribery continued into the class period).

Finally, even if the RKS Claimants could successfully plead that the purported fraudulent

---

[3] *See also In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *20 (D.N.J. Mar. 24, 2008) (defendants submitted false reports to the FDA in order to obtain specific approvals, and then made misstatements about those same approvals to increase company's stock price); *In re Firstenergy Corp.*, 2022 WL 681320, at *2 (S.D. Ohio Mar. 7, 2022) (company engaged in bribery and other crimes with the specific goal of offloading the company's nuclear liabilities, a topic that had "c[o]me to 'dominate' earnings calls and analyst coverage," and concurrently lied to investors about that same topic).

scheme was in connection with the purchase or sale of a relevant security (they cannot), their claim would still fail because the allegations supporting their scheme liability claim are not pled with sufficient particularity. Scheme liability claims under Rules 10b-5(a) and (c), like misstatement claims under Rule 10b-5(b), are subject to the PSLRA and Rule 9(b), which require a plaintiff to "state with particularity 'what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue.'" *Menaldi*, 277 F. Supp. 3d at 517. The RKS Claimants plead no such facts. The entirety of their scheme liability allegations are based on the conclusions of the Butte County DA and Judge Alsup, but none of the allegations are pled with sufficient factual particularity to satisfy Rule 9(b) and the PSLRA. Neither the Butte County DA nor Judge Alsup ever found that PG&E, or any PG&E employee, made a knowing false statement or committed another knowingly deceptive act in connection with the purchase or sale of any security. *See* Omnibus Reply Section III.E.2. The RKS Claimants' scheme liability claim fails for this additional independent reason. *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2003), *abrogated on other grounds by Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208 (9th Cir. 2009) ("Although the allegations here are voluminous, they do not rise to the level of specificity required under the PSLRA.").

**D.     The RKS Claimants' Opposition Underscores That They Have Failed To Plead Reliance For Their Section 10(b) Debt Claims**

The RKS Claimants alone assert claims under Section 10(b) related to the purchase of PG&E debt securities. As PG&E explained in the RKS Objection, Section 10(b) debt claims typically fail because (among other reasons) debtholders cannot invoke the "fraud-on-the-market presumption," which, in certain circumstances, can allow stockholders to satisfy the element of reliance by showing that the security traded in an efficient market, and therefore any investor who purchased based on the price of the security also implicitly relied on all publicly available information about that security. *Basic v. Levinson*, 485 U.S. 224, 247–48 (1988).[4] Because debt

---

[4] For the same reasons as discussed in the PERA Objection, the RKS Objection, and the Omnibus Reply, the RKS Claimants' Section 10(b) claims relating to debt securities also fail because the RKS Claimants did not adequately plead the required element of loss causation. PERA Obj. at 61-67; RKS Obj. at 29-31; Omnibus Reply Section III.F. A Section 10(b) plaintiff must plead with

securities rarely trade in efficient markets, a debtholder cannot invoke that presumption, which means such a plaintiff must plead, and ultimately prove, that it actually relied on the precise misstatements at issue. RKS Obj. at 35. This is an insurmountable obstacle to most debtholder plaintiffs, and the RKS Opposition shows that this case is no different.

The RKS Claimants argue that their Section 10(b) debt claims should survive because they pled that PG&E's securities "traded in an efficient market or markets," and hence they can rely on the fraud-on-the-market presumption to establish reliance. RKS Opp. at 87 (citing RKS Am. ¶¶ 617–18). But the RKS Claimants plead *no facts*, as they must, indicating the market for PG&E's debt securities was efficient. In fact, the RKS Claimants do not specifically mention the debt market at all. *See* RKS Am. ¶ 618. Unlike purchasing PG&E stock on the New York Stock Exchange, the purchase of debt securities—*i.e.*, a contract to pay for the right to receive principal plus interest—is different because of (among other things) the nature of the security, the lack of an organized exchange and the frequency (or lack thereof) of the trades. In determining whether a market for a security is efficient, courts in the Ninth Circuit consider whether the security "trades at a high weekly volume"; "whether securities analysts follow and report" on it; whether the security has "market makers and arbitrageurs"; "whether the company is eligible to file SEC registration form S-3, as opposed to form S-1 or S-2"; and "whether there are 'empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response'" in the security price. *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (citation omitted). The RKS Claimants plead no facts regarding these points.

The failure to plead facts establishing an efficient market is fatal to the RKS Claimants' Section 10(b) claims involving debt securities because the RKS Claimants do not adequately plead individual reliance. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,

---

particularity when and how the price of the relevant security responded to the revelation of the allegedly misrepresented information. *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1124 (9th Cir. 2013) (applying loss causation pleading requirements to debt claims and noting that to allege loss causation a plaintiff must typically "show that the revelation of [the alleged misstatement] . . . was a substantial factor in causing a decline in the security's price") (citation omitted). The RKS Amendment pleads no more than that the prices of certain PG&E bonds declined on certain dates. RKS. Am ¶¶ 524-25. This is insufficient to plead loss causation.

328 F. Supp. 3d 963, 970 (N.D. Cal. 2018) (recognizing debt is not necessarily traded in efficient markets and dismissing complaint because plaintiff "does not allege that it purchased an 'actively traded' bond"); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 615 (C.D. Cal. 2009) (recognizing the analysis for determining the efficiency of a debt market is different than for stock because "[d]ebt and equity respond differently to some types of news"); *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1187–88 (N.D. Cal. 2004) (dismissing complaint because plaintiffs "have not pled particular facts establishing an efficient market" and therefore "have not sufficiently pled fraud on the market reliance"). Because the RKS Claimants have pled no facts establishing the efficiency of the market for PG&E's debt securities, their Section 10(b) debt claim must be dismissed.[5]

### III. CONCLUSION

For the foregoing reasons, and the reasons stated in the RKS Objection and PG&E's Omnibus Reply filed concurrently herewith, all claims based on or incorporating the RKS Amendment should be disallowed and expunged.

Dated: May 14, 2024                     Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**
**LATHAM & WATKINS LLP**
**KELLER BENVENUTTI KIM LLP**

By: */s/ Joshua G. Hamilton*
    Joshua G. Hamilton

Attorneys for Debtors and Reorganized Debtors

---

[5] The RKS Claimants' conclusory suggestion that they individually relied on PG&E's alleged misstatements cannot support a Section 10(b) claim. *See* Omnibus Reply Section III.G.3.