1  BROWN RUDNICK LLP
   David J. Molton (SBN 262075)
2  (DMolton@brownrudnick.com)
   Seven Times Square
3  New York, New York 10036
   Telephone:   (212) 209-4800
4  Facsimile:   (212) 209-4801

5  BROWN RUDNICK LLP
   Joel S. Miliband (SBN 077438)
6  (JMiliband@brownrudnick.com)
   2211 Michelson Drive, Seventh Floor
7  Irvine, California 92612
   Telephone:   (949) 752-7100
8  Facsimile:   (949) 252-1514

9  *Attorneys for the Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br>**PG&E CORPORATION,**<br>- and –<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**FIRE VICTIM TRUSTEE'S OBJECTION TO MOTION TO ALLOW/DEEM TIMELY LATE FILING OF PROOF OF CLAIM BY IAN ALEXANDER, LISA ALEXANDER, KELLAN ALEXANDER, NOEL ALEXANDER AND PARI ALEXANDER; DECLARATION OF ROY MILLER; DECLARATION OF IAN ALEXANDER**<br><br>[Relates to Docket Number 14464]<br><br>No Hearing Date Set<br><br>Objection Deadline:  June 6, 2024 |

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust, by and through her undersigned counsel, hereby submits this Objection to the *Motion to Allow/Deem Timely Late Filing of Proof of Claim by Ian Alexander, Lisa Alexander, Kellan Alexander, Noel Alexander and Pari Alexander; Declaration of Roy Miller; Declaration of Ian Alexander* [Docket No. 14464] (the "**Motion**") filed on May 16, 2024 seeking to have proof of claim 96793 (the "**Proof of Claim**") filed on January 27, 2020 on behalf of Ian Alexander, Lisa Alexander, Kellan Alexander, Noel Alexander and Pari Alexander ("**Movants**") deemed "timely" for the purpose of administration by the Trust. In support of this Objection, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

The Fire Victim Trust understands that the Fires caused by PG&E in 2015, 2017 and 2108 made it hard for survivors to undertake many everyday tasks due displacement, trauma and other factors. The Trust has been extremely accommodating with respect to late claims and has made every effort to allow as many Fire Victim Claimants as possible to present their claims to the Trust for consideration. Nevertheless, the Trustee must balance the Trust's efforts to address as many Fire Victim Claims as possible against the fact that 82,692 Fire Victim Claimants – many of whom suffered horrific losses – were able to file timely proofs of claim and are prejudiced by the acceptance of late claims.

Now nearing the end of its limited purpose, the Trust has awarded determination notices for 100% of the Claim Questionnaires that have been submitted to the Trust. As of May 31, 2024, over 99% of such determinations, reflecting $19.34 billion in awards, have been accepted. The *pro rata* payment percentage currently is 66%. The Trust is unable to predict with certainty the final payment percentage until all claims have been determined and all determinations have been accepted. Requiring the Trust to re-administer multiple late claims will further delay the determination of the final *pro rata* percentage and final payments to Fire Victim Claimants. The tens of thousands of Fire Victim Claimants who have waited as long as nine years to be compensated for their losses and injuries should not be expected to wait longer, especially for claimants who were on notice nearly two years ago that their late claims would be ineligible for compensation by the Trust.

1

**RELEVANT BACKGROUND**

1. On January 29, 2019, PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Reorganized Debtors filed the Chapter 11 Cases to address the billions of dollars of damage and loss relating to the devastating 2015, 2017 and 2018 California fires and to provide compensation to wildfire victims.

2. On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors. On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**TCC**").

3. On March 14, 2019, the Debtors filed their schedules of assets and liabilities. By Order dated July 1, 2019, the Court established October 21, 2019 (the "**Bar Date**") as the last date to file proofs of claim in the Chapter 11 Cases [Docket No. 2806] (the "**Bar Date Order**"). By Order dated November 11, 2019, the Court extended the Bar Date to December 31, 2019 (the "**Extended Bar Date**") for unfiled, non-governmental Fire Claimants [Docket No. 4672] (the "**Extended Fire Victim Claimants Bar Date Order**").

4. The Extended Fire Victim Claimants Bar Date Order was entered in response to a motion filed by the TCC. The TCC argued that the Bar Date "should be extended for the Fire Victim Claimants on the ground that evidence filed herewith establishes that a large number of victims are not filing claims in these chapter 11 cases because they are impaired from filing. Their impairments include emotional distress, suffering from trauma caused by the wildfire that destroyed everything they own, confusion caused by the trauma, a lack of awareness of the fire claims bar date, and a belief that a claimant needs to be insured to file a claim." [Docket No. 4293 at 5:2-8]. In considering the TCC motion and approving the resulting stipulation between the TCC and the Debtors, this Court has already considered and addressed the adequacy of notice to Fire Victim Claimants. The Debtors provided a well-publicized notice of the Extended Bar and coordinated with TCC for the appointment of a Claims Representative who designed and implemented with his team an expansive outreach effort designed to identify, locate, and assist Fire Victim Claimants who were eligible to file claims

but failed to do so by the original bar date. As a result of the Court's careful consideration of this issue and the thoughtful manner in which the Debtors redoubled their efforts to reach additional Fire Victim Claimants, more than 82,000 claimants filed their claims in a timely manner.

5. The earliest version of the Fire Victim Claims Resolution Procedures (the "**CRP**") made available to the public on this Court's docket was filed on March 3, 2020. *See* Exhibit 2 to *Notice of Filing of Proposed Fire Victim Trust Agreement and Proposed Fire Victim Claims Resolution Procedures* [Docket No. 6049-2]. That early draft of the CRP made it clear that proofs of claim must be timely filed in order to be eligible for compensation from the Trust.[1]

6. The CRP included in the solicitation materials provided to all holders of Fire Victim Claims also stated, using the same language as was used in the March 3, 2020 draft CRP, that in order to be eligible for compensation from the Trust, proofs of claim must have been filed no later than December 31, 2019. Despite numerous other changes to the CRP that came about through extensive negotiations leading to the confirmation of the Plan, the eligibility requirement of a timely-filed proof of claim has remained the same, **word for word**.

7. Movants filed the Proof of Claim on January 27, 2020. Although the Motion claims that Movants "dutifully re-filed their proof of claim - in the event of a mistake," Movants were—or should have been—aware that the Proof of Claim was filed after the Extended Bar Date. The Kroll Restructuring Administration (formerly Prime Clerk LLC) claims database does not contain any other proof of claim submitted by or on behalf of Movants, as the Motion acknowledges. No decisions regarding acceptance or denial of claims are made upon the filing of a proof of claim. In other words, the addition of a submitted claim to the claims database does not indicate that the claims are valid or compensable. Claims submitted on the special "Fire Claim Related" proof of claim form are routinely channeled to the Trust with minimal review, regardless of whether they are timely filed

---

[1] The CRP included the first *Notice of Filing of Proposed Fire Victim Trust Agreement and Proposed Fire Victim Claims Resolution Procedures* filed on March 3, 2020 stated that "All Claimants must have filed a Proof of Claim for their claims or those of their family in the Bankruptcy Cases on or before December 31, 2019 . . ." The March 3, 2020 draft CRP also clearly explained, "Claims that were not timely submitted to the Bankruptcy Cases are ineligible for payment by the Trust, unless the claimant obtains relief from the Bankruptcy Court to file a late Claim . . ." This exact language has been retained in the CRP through the current, final version.

3

or otherwise compensable by the Trust. Nothing connected to the late filing of the Proof of Claim or the routine channeling to the Trust should have given Movants the impression that the Proof of Claim was timely filed.

8. After Movants submitted a Claims Questionnaire ("**CQ 10004476**") to the Trust, the Trust began the processing and administration of Movants' Fire Victim Claims. After a Claims Questionnaire is submitted to the Trust, the claimant (or claimant's counsel) automatically receives all Trust alerts and instructions relevant to claims being processed and administered, regardless of whether any claim is compensable, until the Trust issues a determination with respect to the claims included in the Claims Questionnaire.

9. On August 1, 2022, the Trust sent an email (the "**Late Claim Email**") to Fire Victim Claimants, including Movants, who had submitted Claims Questionnaires to the Trust based on proofs of claims filed after the Extended Bar Date. The Late Claim Email reiterated the eligibility requirements set forth in the CRP, informing these claimants *again* that their proofs of claim would need to be deemed timely filed by the Bankruptcy Court in order for their Fire Victim Claims to be eligible for compensation by the Trust.[2]

10. At least one other *pro se* Fire Victim Claimant reacted to the Late Claim Letter by filing a letter with this Court requesting that his late proof of claim be deemed timely for the purpose of administration by the Trust. *See* Docket No. 14035. Contrary to the representation in the Motion, Movants' claims were not denied by the Trust at this time. Instead, the Trust gave Claimants with

---

[2] The notified claimants were advised they were ineligible for compensation by the Trust because they did not have a timely filed proof of claim. The Late Claim Email explained how a claimant could update the Trust if: (1) the claimant believed the Trust records indicating a late-filed proof of claim were incorrect; or (2) the claimant was a family or household member related to a timely filed proof of claim. The Late Claim Email also clearly stated:

> "If options 1 and 2 do not apply and you wish to continue pursuing your FVT claim(s), you must obtain relief from the Bankruptcy Court to file a late Claim. To do this, you must file a proper motion to allow late proof of claim with the Bankruptcy Court. Counsel for the Fire Victim Trust along with counsel for PG&E will have an opportunity to respond to your motion. As Claims Processor to the Fire Victim Trust, [BrownGreer is] not permitted to provide you with any further advice or direction as to how to file with the Bankruptcy Court. You should consider seeking the advice of your own counsel to determine how to best proceed. If the Bankruptcy Court approves your request for relief, we will update the Trust's records to reflect that and then can move forward with evaluating your submitted claims.

4

late-filed proofs of claim time to correct the issue that made their claims ineligible for compensation by the Trust *before* determining their claims.

11. The Late Claim Email was not the only source directing Fire Victim Claimants who had late-filed proofs of claim to file a motion to have their claims deemed timely. In addition to the long-available eligibility provisions in the CRP, the Fire Victim Trust Website, through which Fire Victim Claimants and counsel access their claimant portals, explains the process of having a late claim deemed "timely" in the publicly accessible FAQs.[3]

12. Despite being aware that their claims based on the late Proof of Claim would not be compensable by the Trust, Movants did not file a late claim motion or letter with the Court. After receiving the Late Claim Email, Movants hired counsel to address the late claim issue.

13. Based on the Trust's experience with Movants' counsel involving thousands of Fire Victim Claimants over the course of the past four years, counsel is well aware of the eligibility requirements set forth in the CRP. Despite this knowledge and the information in the Late Claim Email regarding the necessity of filing a motion to have late claims deemed timely for the purpose of administration by the Trust, counsel did not file such a motion at that time.

14. Movants did not update the Trust regarding their retention of counsel until January 26, 2023, at which time Movants submitted an Update Attorney Representation Form in Trust portal. Submission of the form allowed the Trust to transfer Movants' claims submissions to Watts Guerra LLP's Law Firm Portal.

15. Rather than follow up on the Late Claim Email, which explicitly informed Movants that no claims related to the Proof of Claim would be compensable without an order of this Court deeming the Proof of Claim timely, counsel did not file the necessary motion. Instead, counsel submitted a second Claims Questionnaire ("**CQ 10050590**")—still based on the late-filed Proof of Claim—on behalf of Movants on March 24, 2023.

---

[3] FAQ 11, "**If I did not file a Proof of Claim by December 31, 2019, can I still get compensation from the Trust?**" has been on the Fire Victim Trust Website since it was established in 2020.

5

16. Movants' Fire Victim Claims, as set forth in CQ 10004476 and CQ 10050590, therefore proceeded through administration by the Trust without an order deeming the Proof of Claim timely. Pursuant to the requirements of the CRP—and as the Late Claim Email warned—the Trust denied Movants' claims as ineligible due to the late-filed Proof of Claim and issued Determinations of Untimely Proof of Claim for CQ 10004476 and CQ 10050590 on December 30, 2023.

17. Despite the unequivocal language in the Determinations of Untimely Proof of Claim, counsel for Movants did not promptly file a motion requesting that this Court deem the Proof of Claim timely for the purpose of administration by the Trust. Instead, two months later, on February 21, 2024, counsel for Movants requested that the Trust waive the CRP's requirement that all proofs of claim be filed on or before the Extended Bar Date. The Trust unequivocally informed counsel for Movants, both orally and in writing by email on the same date, that only this Court had the authority to deem a proof of claim timely for the purpose of administration by the Trust.

18. After the Trustee denied a subsequent request by counsel for Movants to waive the CRP's eligibility requirement that all proofs of claim be filed on or before the Extended Bar Date, the Motion was filed on May 16, 2024.

## OBJECTION

19. While the Proof of Claim was filed only weeks after the Extended Bar Date, Movants have been on notice for nearly two years that their claims would not be eligible for compensation unless this Court deemed the Proof of Claim timely for the purpose of administration by the Trust.

20. The Supreme Court has opined that "that the determination [of whether to allow a late-filed claim to be deemed timely] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 123 L. Ed. 2d 74 (1993). The interests the Court is being asked to balance here are not those of Movants versus those of the Debtors as framed in the Motion, but those of Movants versus those of the Trust and its beneficiaries, the more than 82,000 Fire Victim Claimants who filed proofs of claim by the Extended Bar Date despite often seemingly insurmountable odds. All of those timely Fire Victim Claimants must wait until *all* claims – including the multiple claims within the Proof of Claim the Motion now requests this Court to deem

6

timely – have been determined and accepted before they will find out how much of their claims can be paid.[4] It would be inequitable to allow Movants' late claims to dilute and delay the payment of timely filed claims held by Fire Victim Claimants who have engaged with the Trust from its inception, especially as Movants were informed by the Trust that they needed to file a motion with this Court nearly two years ago.

21. The Motion relies primarily upon the Supreme Court opinion in *Pioneer*. Notably, in *Pioneer*, counsel had filed the claimant's proof of claim only 20 days after the bar date, had concurrently filed a motion to permit the filing of the late claim, and the Supreme Court found that the bar date notice in that case contained a "dramatic ambiguity" regarding the bar date. By contrast, while the Proof of Claim was filed twenty-seven days after the Extended Bar Date, the Motion was not filed for more than four more years, **two years** after the Trust informed Movants of the need to file a late claim motion. In addition, the notice of the Extended Bar Date, the **second** bar date notice provided to potential Fire Victim Claimants, was carefully crafted to inform that group of the deadline to file any claims arising from a Fire.

22. While courts have decided that there is no harm to **the debtor** in allowing late claims to be considered when a solvent debtor is paying all claims **in full** in a bankruptcy case, in this case the Debtors are not paying any additional consideration to the Trust no matter how many late claims

---

[4] Contrary to the suggestion that granting the Motion will not cause a significant delay to final payment of other Fire Victim Claimants because "the FVT has all information to evaluate Movants' claim and issue a Determination in a timely manner," if the Motion is granted the Trust must follow the same three-tiered review and dispute resolution process outlined in the Claims Resolution Procedures as it has followed in the administration of every other Fire Victim Claim eligible for administration by the Trust:

1. **Initial Review:** Trust must review all claims materials and issue initial Determination Notices on both Claims Questionnaires. Movants have **30 days** to review and accept or contest each determination by requesting Reconsideration.
2. **Reconsideration:** Trust must review all previous and new claims materials and issue a Reconsideration Determination Notice on each contested Claims Questionnaire. Movants have **30 days** to review and accept or contest each determination by requesting Appeal.
3. **Appeal:** Movants must schedule and complete a hearing within **30 days** of appealing or may elect document review only. Appeals Neutral must review all previous and new claims materials and, within **30 days** of the close of hearing, must submit a recommendation to the Trustee for review and final determination.

At a minimum, the required process would add a minimum of 120 days to the Trust's now-completed administration timeline, which does not include the time the Trust would need to review the claims on Initial Review and Reconsideration. Any claim complexities requiring expert review by Trust Professionals would further extend these timelines.

7

are added. Pursuant to Section 6.8(b) of the Plan and Paragraph 18(e)(iii) of the Confirmation Order, the Trustee has stepped into the Debtors' shoes with respect to Fire Victim Claims. The relevant inquiry in a request to deem a late Fire Victim Claim timely is how the requested relief will affect the Trust rather than the Debtors, and specifically the effect on the Trust's beneficiaries, the Fire Victim Claimants. As Movants' counsel is well aware but fails to acknowledge in the Motion,[5] far from being paid in full, the Trust is only able to pay Fire Victim Claim awards at a *pro rata* percentage of 66% at this time. While there will be at least one additional *pro rata* increase after the Trust finalizes all claims, there has never been an expectation that Trust funding would allow Fire Victim Claimants to be paid in full.

23. As this Court has recognized, claimants who file late proofs of claim bear "the burden of presenting facts demonstrating excusable neglect." *In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 89 (2004) (citing *Key Bar Invs., Inc. v. Cahn* (*In re Cahn*), 188 B.R. 627 (9th Cir. BAP 1995)). In discussing the "excusable neglect" standard of Bankruptcy Rule 9006(b)(1), the Supreme Court referred to the interpretation of Rule 6(b) of the Federal Rules of Civil Procedure and acknowledged that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392, 113 S. Ct. at 1496.

### **Application of Pioneer Factors**

24. In *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)* the Supreme Court applied the majority of what was then the Ninth Circuit test for determining whether a failure to timely file a proof of claim was due to excusable neglect: (1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; and (4) whether the creditor acted in good faith. *Pioneer,* 507 U.S. at 395, 113 S. Ct. at 1498.

---

[5] The Trust acknowledges that the Motion is merely a copy of late claim motions filed on behalf of other claimants, as the statement that "the delay in filing the Subject Proof of Claim is reasonable considering the estrangement of Movants and the accompanying stress of relocating after the emotional trauma they experienced surviving the ***Camp Fire***" does not apply to Movants and is exactly the same phrase used by other counsel in earlier such motions.

8

**Deeming Movants' Late Claim "Timely" Will Prejudice Other Fire Victim Claimants**

25. The first consideration in determining whether a late claim filing was the result of "excusable neglect" under *Pioneer* is the danger of prejudice to the debtor. This factor is irrelevant in the present case because the Trust has taken the place of the Debtors with respect to Fire Victim Claims. While it is true that the relief requested in the Motion will not prejudice the *Debtors*, which have already satisfied their funding obligations to the Trust under the Plan, it most certainly prejudices the Trust and its Fire Victim Claimant beneficiaries who timely filed proofs of claim and have been waiting years for compensation and finality.

26. The *Pioneer* Court noted that "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. Equity does not condone waiting to file a late claim motion for years after learning that such a motion is necessary for claims to be eligible for compensation. This Court already considered and confirmed the adequacy of the notice of the Extended Bar Date and thousands of Fire Victim Claimants with similar claims filed timely claims. Thousands more, especially victims of the North Bay Fires like Movants, filed late proofs of claim and concurrently or soon thereafter filed motions to have their late claims deemed timely *without* the benefit of additional explicit notice to do so like Movants received from the Trust two years ago. For these reasons, the first factor does not support deeming Movants' late claims timely for the purpose of administration by the Trust.

**The Length of Movants' Delay is Extreme and Negatively Impacts Trust Administration**

27. The second consideration under *Pioneer* is the length of delay and its potential impact on judicial proceedings. While the Proof of Claim was not filed extremely long after the Extended Bar Date, the Motion was not filed for four more years. Nearly two years prior to the filing of the Motion, the Trust notified Movants that their claims would not be compensable by the Trust unless a motion to deem the Proof of Claim timely was filed and granted by this Court. As noted above, the Trust has a limited fund from which to pay all Fire Victim Claims, and the current *pro rata* rate is 66%. Despite the fact that the Trust has issued determinations with respect to every Claims Questionnaire that has been submitted, the Trust cannot finally determine how much it can pay on account of any Fire Victim Claim if claimants with late claims can have their claims deemed timely

9

years after they are notified of the defect in their claims.

28. Deeming a late claim "timely" this late in the game, when both Movants and their counsel have known for at least two years that late claims are not eligible for compensation by the Trust but have done nothing to rectify that despite receiving explicit direction from the Trust, inequitably prejudices those Fire Victim Claimants who have complied with Trust directives with further delay. As noted by a Fire Victim Claimant in a letter to this Court, these delays "are holding up the rest of us!" [Dkt. No. 13365]. The extreme length of Movants' delay in filing the Motion and the impact of this delay on the final payment of timely filed Fire Victim Claims weighs heavily against deeming the Proof of Claim timely.

**Earlier Filing of the Motion was not Beyond Movants' Control**

29. The third *Pioneer* factor, whether the delay was beyond the late claimant's control, also weighs against granting the relief requested in the Motion. The Motion does not provide any basis for a finding of excusable neglect in not filing it sooner. Movants admit that the Trust informed them two years ago that their late claims would not be compensable by the Trust without requesting that this Court grant a motion to deem the Proof of Claim timely. Just as ignorance of the need to file a claim is not a sufficient excuse, *See Pioneer*, 507 U.S. at 392, 113 S. Ct. at 1496, ignoring the Trust's direction to file a late claim motion should not be sufficient.

30. Although the Trust does not minimize Movants' claims in any way, tens of thousands of other claimants with similar claims arising from the North Bay Fires were able file timely proofs of claim. As this Court is well aware, thousands more filed late claims and promptly filed motions to deem those late claims timely. Around the time that Movants received notice from the Trust that Movants needed to file a motion to deem the Proof of Claim timely, this Court was being inundated with such motions. Social media posts at the time encouraged victims of the North Bay Fires to file late claims and to engage counsel to file late claim motions. One hundred fifty-five (155) late claim motions were filed in August, 2022 and a mind-boggling **six hundred seventy-five (675)** late claim motions were filed on September 30, 2022 alone. The failure to file a motion to deem the Proof of Claim timely despite this knowledge was not beyond Movants' control prior to retaining counsel. It certainly was not beyond the control of counsel, who repeatedly attempted to circumvent the filing

10

of the Motion with the particularly inequitable request that the Trust waive the timeliness requirement for Movants. The third *Pioneer* factor therefore must also be decided in favor of the Trust and the Fire Victim Claimants who have made the effort to engage with the Trust regarding late-filed proofs of claim.

**Even Without Bad Faith, Equity Does Not Favor Movant Over Other Fire Victim Claimants**

31. While the Trustee does not believe that Movants lack the good faith that comprises the final consideration listed by the *Pioneer* court, the Motion fails to state any facts that justify waiting until now to file the Motion.

32. In addition, granting the Motion without extenuating circumstances would encourage other latecomers who ignored the Trust's directives and received notices of untimely proofs of claim to file similar motions.[6]

33. For the foregoing reasons, Movants fails to meet the burden for establishing "excusable neglect" for filing the Proof of Claim after the Extended Bar Date and failing to rectify the issue despite notice from the Trust. The Proof of Claim therefore should not be deemed timely for the purpose of administration by the Trust.

//
//
//
//
//
//
//
//
//
//

---

[6] Including the two notices issued to Movants, the Trust has issued 105 Determinations of Untimely Proof of Claim that relate to the claims of 164 claimants.

11

**CONCLUSION**

The Trustee respectfully requests that this Court deny the relief requested in the Motion and grant the Trust such other and further relief as may be just.

DATED: June 5, 2024							BROWN RUDNICK LLP

									By: */s/ David J. Molton*
									David J. Molton (SBN 262075)
									(DMolton@brownrudnick.com)
									Seven Times Square
									New York, New York 10036

									And

									Joel S. Miliband (SBN 077438)
									(JMiliband@brownrudnick.com)
									2211 Michelson Drive, Seventh Floor
									Irvine, California 92612

									*Attorneys for Fire Victim Trustee*