Michael S. Danko (SBN 111359)
Kristine K. Meredith (SBN 158243)
**DANKO MEREDITH**
333 Twin Dolphin Drive, Suite 145
Redwood Shores, California 94065
Telephone: (650) 453-3600
Facsimile: (650) 394-8672
mdanko@dankolaw.com
kmeredith@dankolaw.com

Dario de Ghetaldi (SBN 126782)
Amanda L. Riddle (SBN 215221
**COREY, LUZAICH
DE GHETALDI & RIDDLE LLP**
700 El Camino Real
P.O Box 669
Millbrae, California 94030
Telephone: (650) 871-5666
Facsimile: (650) 871-4144
deg@coreylaw.com
alr@coreylaw.com

Eric Gibbs (SBN 178658)
Dylan Hughes (SBN 209113
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com

*Attorneys for Movants Julie Poincenot,
Patrick Doolittle, Megan Van Mater Davidson,
and Paul Lore*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**&**<br><br>**PACIFIC GAS AND ELECTIC COMPANY,**<br><br>          **Debtors.**<br><br>Affects:<br>☐ PG&E Corporation<br>☐ Pacific Gas & Electric Company<br>☒ Both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br><br>**DECLARATION OF BRADFORD BOWEN IN SUPPORT OF MOTION TO STAY PROCEEDINGS RE DISPUTED CLAIMS UNDER THE FIRE VICTIM TRUST AGREEMENT & REVIEW OF FVT INTERPRETATION OF PLAN LANGUAGE**<br><br>**Date: July 30, 2024**<br>**Time: 10:00 a.m.**<br>**Location: Telephone/Videoconference**<br>**https://www.canb.uscourts.gov/calendars** |

I, Bradford Bowen, hereby declare as follows:

1. I am an attorney at law duly licensed to practice before all courts in the State of California and the Northern District of California and am an attorney with Danko Meredith, a part of the Northern California Fire Lawyers, counsel of record for the movants Julie Poincenot, Patrick Doolittle, Megan Van Mater Davidson, and Paul Lore (collectively, the Movants or Claimants).

2. I am a custodian of the records and files of the Movants as they pertain to the claims of each of the Movants. I have personally worked on the records and files related to this matter.

3. All of the records, documents, and emails described herein below were made and are maintained by our office in the ordinary course of its business and are currently under my custody, or were received by our office from the Fire Victim Trust, or from the docket in this matter.

4. All such records, documents, and emails described below are kept by our office in the course of its regularly conducted business activities, and were made at or near the time by, or from information transmitted by, an employee or agent with knowledge of the act, event, condition or opinion and a duty to make such records, documents, and emails, or were received from the Fire Victim Trust, or from the docket in this matter.

5. To the extent that I have personal knowledge of the facts set forth herein, I will set forth said personal knowledge. To the extent that I do not have personal knowledge, then I have gained such knowledge in the course and scope of my employment at Danko Meredith, by reviewing the records, documents, and emails in this matter, and by reviewing the docket in this matter.

6. If called upon to testify in this action as to the matters set forth in this declaration, I could and would competently testify thereto.

**A.** **The Plan**

7. The Debtors' Joint Chapter 11 Plan of Reorganization that was confirmed on June 20, 2020 ("Confirmed Plan") authorized the creation of the Fire Victim Trust ("FVT") to

administer funds designated for fire victims' claims related to damages for loss of property, personal injury, loss of income, and other claims caused by the fires. The FVT is governed by the terms stated in the Fire Victim Trust Agreement, which sets forth the procedures for bringing a claim, the claim resolution procedures, and the process for reconsideration of a disputed claim.

**B.     The Trust Agreement, Claims Resolution Procedures and Eligibility Criteria**

8.     The FVT is governed by the terms stated in the Fire Victim Trust Agreement, which lays out the procedures for bringing a claim, the claim resolution procedures, and the process for reconsideration of a disputed claim.

9.     The Fire Victim Trust Agreement sets forth Claims Resolution Procedures ("CRP") that define the various types of claims that can be filed, detail the specific information that would be required to show a valid claim, and describe the supporting documents required to support a valid claim.  A true and correct copy of the Claims Resolution Procedures is attached hereto as **Exhibit "1"** and is incorporated herein by reference.

10.     In addition to the CRP, the Trust also issued Eligibility Criteria documents for each type of claim which describe in greater detail the supporting documents required to be submitted with each claim, as well as the standards the Trust will apply to evaluate each claim. A true and correct copy of the Eligibility Criteria is attached hereto as **Exhibit "2"** and is incorporated herein by reference.

11.     Section VIII of CRP outlines the Dispute Resolution process for a claimant to dispute their determination of damages under the FVT and Trust Agreement. This process starts with the issuance of an initial Claim Determination. If the claimant rejects the initial determination, the claimant may submit additional documents to be reviewed by the Trust's Claims Administrator and Claims Processor, who then issues a Reconsideration Determination with an updated award amount. If the claimant rejects the Reconsideration Determination, the claimant may request a hearing before an appointed Neutral for further appeal of their claims. The Neutral hears the arguments and issues an Appeals Determination to the Trustee who then

1  has the discretion to modify or reject the Appeals Determination.  The Trustee then issues a

2  final Trustee Determination. Bowen Decl. Ex. 1, Section VIII.

3      12.    Section (B), subsection (1)(a) of the Eligibility Criteria for a Personal Injury

4  claim details the causation standards that will be applied to claims, and states, "The Personal

5  Injury Consultant will determine whether the Fire was a 'substantial factor' in causing the

6  injury. The Fire must be more than a 'remote' or 'trivial' factor."  Ex. 2, Section B.1(a).

7  **C.    The Claims and Reconsideration Determinations**

8      **i.    Claimant 1**

9      13.    Megan Davidson ("Claimant 1") submitted a timely claim to the FTV for

10  Personal Injury relating to vision loss and the development of Leber Hereditary Optic

11  Neuropathy ("LHON"), Personal Income Loss, Emotional Distress under the theory of Zone of

12  Danger, Emotional Distress under the theory of Nuisance, and for Other Damages relating to

13  vision loss (the "Claim").

14      14.    Claimant 1 subsequently received notice that the Claim was denied in the initial

15  Claim Determination and filed for a Reconsideration Determination pursuant to the CRP.

16      15.    The Trust issued a Reconsideration Determination Notice ("Reconsideration

17  Determination") on March 1, 2024, a true and correct partial copy (with Claimant's home

18  address redacted) of which is attached hereto as **Exhibit "3"** and is incorporated herein by

19  reference, wherein the Claim was again denied, with the Trustee noting that "[t]he Claimant's

20  address at [REDACTED] is 133.4 miles outside of the Camp Fire Perimeter. Because the

21  Claimant was not within the Camp Fire Perimeter at the time of the Fire, this Personal Injury

22  Claim is not eligible for compensation from the Fire Victim Trust." See Exhibit 3, Personal

23  Injury Section IV.

24      16.    In response to the Reconsideration Determination, Claimant further appealed the

25  decision pursuant to the CRP.  A Notice of Appeals Neutral was posted on April 15, 2024,

26  wherein a neutral was appointed and a deadline of June 14, 2024, was set for completion of the

27  appeals hearing before the neutral. Pursuant to the CRP, after this June 14th deadline, the

28  Trust's Final Determination may be binding and neither the Court nor the Trust would have

further jurisdiction to review the Claim.

**ii.    Claimant 2**

17.    Patrick Doolittle ("Claimant 2")  submitted a timely claim to the FTV for Personal Injury, Personal Income Loss, Emotional Distress under the theory of Zone of Danger, and for Other Damages relating to vision damage (the "Claim"). Claimant 2 subsequently received notice that the claim was denied in the initial Claim Determination, and filed for a Reconsideration Determination pursuant to the CRP.

18.    The Trust issued a Reconsideration Determination Notice ("Reconsideration Determination") on March 1, 2024, a true and correct partial copy (with Claimant's home address redacted) of which is attached hereto as **Exhibit "4"** and is incorporated herein by reference, wherein the Claim was again denied, with the Trustee noting that "The Claimant's address at [REDACTED] is 18 miles outside of the nearest included Fire Perimeter. Because the Claimant was not within an included North Bay Fire Perimeter at the time of the Fires, this Personal Injury Claim is not eligible for compensation from the Fire Victim Trust." See Exhibit 4, Personal Injury Section IV.

19.    In response to the Reconsideration Determination, Claimant further appealed the decision pursuant to the CRP.  A Notice of Appeals Neutral was posted on April 15, 2024, wherein a neutral was appointed and a deadline of June 14, 2024, was set for completion of the appeals hearing before the neutral. Pursuant to the CRP, after this June 14th deadline, the Trust's Final Determination may be binding and neither the Court nor the Trust would have further jurisdiction to review the Claim.

**iii.    Claimant 3**

20.    Paul Lore ("Claimant 3")  submitted a timely claim to the FTV for Personal relating to vision loss, legal blindness secondary to Leber Hereditary Optic Neuropathy ("LHON"), optic atrophy, visual disturbance, and astigmatism; for Emotional Distress, for Personal Property damage, and for personal income loss as a result of the fires (the "Claim").

//

//

21.     Claimant 3 subsequently received notice that the claim was denied in the initial Claim Determination, and filed for a Reconsideration Determination for all claims except Personal Property Loss pursuant to the CRP.

22.     The Trust issued a Reconsideration Determination Notice ("Reconsideration Determination") on March 1, 2024, a true and correct partial copy (with Claimant's home address redacted) of which is attached hereto as **Exhibit "5"** and is incorporated herein by reference, wherein the Claim was again denied, with the Trustee noting that "[t]he Claimant's address at . . . is 130.8 miles outside of the Camp Fire Perimeter. Because the Claimant was not within the Camp Fire Perimeter at the time of the Fire, this Personal Injury Claim is not eligible for compensation from the Fire Victim Trust." See Exhibit 5, Personal Injury Section IV.

23.     In response to the Reconsideration Determination, Claimant further appealed the decision pursuant to the CRP.  A Notice of Appeals Neutral was posted on April 15, 2024, wherein a neutral was appointed and a deadline of June 14, 2024, was set for completion of the appeals hearing before the neutral. Pursuant to the CRP, after this June 14th deadline, the Trust's Final Determination may be binding and neither the Court nor the Trust would have further jurisdiction to review the Claim.

### iv.     Claimant 4

24.     Julie Poincenot ("Claimant 4") submitted a timely claim to the FTV for Personal Injury relating to vision loss, the development of Leber Hereditary Optic Neuropathy ("LHON"), smoke inhalation, Personal Income Loss, Emotional Distress under the theory of Zone of Danger, Emotional Distress under the theory of Nuisance, and for Other Damages relating to vision loss (the "Claim").

25.     Claimant 4 subsequently received notice that the Claim was denied in the initial Claim Determination, and filed for a Reconsideration Determination pursuant to the CRP.

26.     The Trust issued a Reconsideration Determination Notice ("Reconsideration Determination") on March 1, 2024, a true and correct partial copy (with Claimant's home address redacted) of which is attached hereto as **Exhibit "6"** and is incorporated herein by

reference, wherein the Claim was again denied, with the Trustee noting that "[t]he Claimant's address at [REDACTED] is 131.3 miles outside of the Camp Fire Perimeter. Because the Claimant was not within the Camp Fire Perimeter at the time of the Fire, this Personal Injury Claim is not eligible for compensation from the Fire Victim Trust." See Exhibit 6, Personal Injury Section IV.

27.     In response to the Reconsideration Determination, Claimant further appealed the decision pursuant to the CRP. A Notice of Appeals Neutral was posted on April 15, 2024, wherein a neutral was appointed and a deadline of June 14, 2024, was set for completion of the appeals hearing before the neutral. Pursuant to the CRP, after this June 14th deadline, the Trust's Final Determination may be binding and neither the Court nor the Trust would have further jurisdiction to review the Claim.

28.     Hereinafter, Claimant 1, Claimant 2, Claimant 3 and Claimant 4 may be collectively referred to as the "Claimants" or "Movants," and their respective claims may be collectively referred to herein as the "Claims."

**D.     Email Correspondence with FVT**

29.     In an attempt to receive clarification about the "fire perimeter" that was the grounds for denial of the Claim, our office contacted the Appeals Officer via email on May 12, 2024, requesting a copy of the policy that establishes the "fire perimeter" as a prerequisite for eligibility for compensation under the FVT. In response to our inquiry, we were instructed to direct any questions to the Neutral assigned to Claimants' case. The Neutral also advised us that she was unable to provide a copy of the fire perimeter policy to us. The FVT never provided a substantive response to our inquiry and never provided a copy of or citation to the policy that defined or mentioned the "fire perimeter" requirement that was the basis for denial of the Claims. A true and correct copy of the email correspondence is attached hereto as **Exhibit "7"** and is incorporated herein by reference.

30.     Multiple oral requests for information about this policy were made by our office prior to the attached email. Preceding the appeal, I had orally requested a copy of the policy during meetings with the FVT and was never provided with the policy.

31.     The Appeals Officer and the Neutral assigned to the case did not provide a copy of any policy that mentions a "fire perimeter," despite our requests. See Ex. 7, Page 1.

**E.     Other Accepted Claims for Similarly Situated Claimants**

32.     In connection with the continued appeal of Claimants' Claim, our office reviewed other claims filed with the FVT and their respective awards from the FVT. During the course of this review, our office found several claims where the FVT awarded compensation to claimants who were outside the alleged "fire perimeter."

33.     For example, on Claims Questionnaire ("CQ") 10045121, a claimant received a Personal Injury Determination award despite being in Mexico at the time the Camp Fire started.

34.     On CQ 10043673, a claimant received a Personal Injury Determination for issues the smoke from the Camp Fire caused to their eyes, despite being at work well outside the fire perimeter when the fire started, and never entering the fire perimeter.

35.     On CQ 10001774, a claimant received a Personal Injury Determination for smoke inhalation, but was in Carmel, CA, at the time the Butte Fire started. Claimant then drove towards the Butte Fire but was stopped by law enforcement from getting close to the fire, well outside the perimeter.

36.     On CQ 10046346, a claimant received a Personal Injury award despite not being in the Camp Fire perimeter.

37.     It appears from my review of these factually similar claims that the eligibility criteria for compensation under the FVT are being inconsistently applied.

**F.     Notice of Appeals Neutral**

38.     On April 15, 2024, Claimants were issued a notice by the Trust that informed them of "(1) the Panel type assigned to the Appeal; (2) the Neutral assigned to hear the Appeal; and (3) the Appeals Case Manager assigned to coordinate with the Claimant(s) on the Appeal." All four Claimants held a joint Appeal hearing due to the substantial overlap in their cases. Claimants do not take issue with the procedure, the conduct of the appeal, or the Appeals Neutral. The Appeals Neutral has conducted a fair hearing, but may be prevented from issuing a decision on the merits of the case due to the perimeter issue.

1    I declare under penalty of perjury under the laws of the State of California and the

2 United States of America that the foregoing is true and correct.

3    Executed on June 20, 2024 at Redwood City, California.

4

5

6              _____

7                BRADFORD BOWEN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "1"**

**EXHIBIT 2**

**FIRE VICTIM CLAIMS RESOLUTION PROCEDURES**

**PREAMBLE**

The goal of the Fire Victim Trust[1] is to provide an efficient process to fairly compensate the holders of timely filed Fire Victim Claims (respectively, "**Claimants**" and "**Claims**") in an equitable manner and on a *pro rata* basis consistent with the terms of the Trust Documents, the Plan, the Confirmation Order and California and federal law. These Fire Victim Claims Resolution Procedures ("**CRP**") apply to all Claims, provided that, any Claim that has been liquidated pursuant to a settlement agreement approved by the Bankruptcy Court or is the subject of a Final Judicial Determination shall not be subject to further determination under the CRP. The Claims Administrator shall implement and administer the CRP in consultation with the Trustee, Claims Processor, Neutrals, and Trust Professionals with the goal of securing the just, speedy, and cost-efficient determination of every Claim. Those entrusted with the consideration and determination of Claims shall treat all Claimants with abiding respect and shall strive to balance the prudent stewardship of the Trust with care in its administration, allocation, and distribution.

The speed of any distribution in a program involving thousands of claimants relies on multiple variables impacting administrative expediency. To achieve maximum fairness and efficiency, the CRP is founded on the following principles:

1.    Objective eligibility criteria;

2.    Clear and reliable proof requirements;

3.    Administrative transparency;

4.    Rigorous review processes that generate consistent outcomes regardless of the asserted amount of the Claim; and

5.    Independence of the Trustee, Claims Administrator, Claims Processor, Neutrals, Appeals Officer and Trust Professionals.

The Trustee and Claims Administrator will consult with the Claims Processor and other Trust Professionals to develop claims valuation processes that result in fair and reasonable compensation of eligible Claims in accordance with the Trust Documents, the Plan and the Confirmation Order.

---

[1]    All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the PG&E Fire Victim Trust Agreement (the "**Trust Agreement**") and the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated June 19, 2020, as it may be further modified, amended, or supplemented from time to time and, together with all exhibits and schedules thereto, the "Plan"), as applicable.

Case: 19-30088   Doc# 14492   Filed: 06/20/24   Entered: 06/20/24 15:15:07   Page 11 of 48

# I. CLAIMANT ELIGIBILITY

To be eligible to receive compensation from the Trust, a Claimant must: (1) have a Claim related to a Fire; (2) have timely filed a Proof of Claim; and (3) submit supporting documentation as outlined in Section II of this CRP or as required by the Claims Administrator ("**Supporting Documents**"). Upon submission of the Supporting Documents, the Trust will review each Claim and apply California law or, if applicable, other non-bankruptcy law to determine the Approved Amount of the Claim, including all recoverable damages and costs, whether or not identified or enumerated in Article II hereof.

      **A.**     **Included Fires**. The Trust is established to administer Claims related to the fires identified in <u>Exhibit 1</u> (each a "**Fire**" and collectively the "**Fires**"). Any claims unrelated to the Fires are ineligible for payment by the Trust and, pursuant to the process described herein, shall be held to be ineligible on a final basis. Solely for the purposes of claims determination, including assertion of defenses, in accordance with the CRP, including Section IX hereof, PG&E's negligence and/or equipment is deemed to be a substantial factor in causing all Fires, <u>provided</u> <u>that</u>, (i) nothing herein or in any of the Trust Documents, Plan or Confirmation Order shall be deemed to require the Trustee to concede that PG&E was negligent or that its negligence and/or equipment is deemed to be a substantial factor in causing all Fires with respect to the Assigned Rights and Causes of Action, and (ii) except as otherwise provided in the Trust Documents, the Plan and the Confirmation Order, the Trustee shall have the right to assert all defenses that the Debtors have or would have had under applicable law to all Fire Victim Claims, <u>provided</u>, <u>however</u>, that (A) the Trust's and Trustee's right to assert the defenses of comparative fault and/or comparative negligence with respect to a Claimant shall be limited to the determination of the amount of that Claimant's Claims and for no other purpose (including the determination of the amount of any other Claimant's Claims), (B) the Trust's rights and defenses (except as otherwise expressly set forth in this subsection (ii)(A) and (ii)(C)) shall not include claims that may be asserted by the Debtors or Reorganized Debtors by way of setoff, recoupment, counterclaim, or cross claim and (C) the Trustee may raise and assert Assigned Rights and Causes of Action in defense of a Claim. Any holder of a Fire Victim Claim shall be permitted to assert any defense to Assigned Rights and Causes of Action that such holder would have had under applicable law, if the Debtors, as opposed to the Trust, were asserting the Assigned Rights and Causes of Action.

      **B.**     **Proof of Claim**. All Claimants must have filed a Proof of Claim for their Claims or those of their family in the Chapter 11 Cases on or before December 31, 2019, and as amended, which was the extended Bar Date for Fire Claimants. Claims that were not timely filed in the Chapter 11 Cases are ineligible for payment by the Trust, unless the Claimant (a) obtains relief from the Bankruptcy Court to file a late Claim, and (b) within 30 days after the Bankruptcy Court order allowing such late filing (i) files the Claim in the Chapter 11 Cases and (ii) submits such Claim to the Trust. Claims that have been disallowed or that have been withdrawn from the Claims Register in the Chapter 11 Cases are ineligible for payment by the Trust.

      **C.**     **Supporting Documents**. Section II sets forth each type of Claim ("**Claim Type**") the Trust will consider and the Supporting Documents that may be submitted for each. In addition to the Supporting Documents outlined in Section II, Claimants will be required to submit a Claims Questionnaire, as explained in Section V.

Case: 19-30088   Doc# 14492   Filed: 06/20/24   Entered: 06/20/24 15:15:07   Page 12 of 48

## II. CLAIM TYPES AND SUPPORTING DOCUMENTS

The Trust will use all information that assists in objectively valuing Claims and alleviates the burden on Claimants. This includes, but is not limited to, data from a Claimant's (a) Proof of Claim Form; (b) Wildfire Assistance Program Claim Form; (c) Damages Questionnaire established under Case Management Order 5 in the California North Bay Fire Cases (JCCP 4955); and (d) other reasonably ascertainable and reliable information. Claimants may be required to submit additional facts and documents to support their Claims for each of the following Claim Types:

A. **Real Property**.

1. ***Description of Real Property Claim.*** Real Property Claims include Claims for damage to structures on residential or commercial real property, landscaping, forestry, and other real property improvements (*e.g.*, hardscape, fencing, retaining walls, pools, and solar panels) as a result of the Fires. Real Property damages may be measured in one of two ways: (1) the loss in fair market value to the property ("**Diminution in Value**"); or (2) the reasonable costs to rebuild or repair the property ("**Cost of Repair**"). Whether Diminution in Value or Cost of Repair is awarded will depend on the facts of each Claim.

(a) ***Diminution in Value.*** Diminution in Value will be calculated by subtracting the fair market value of the property immediately after the Fire from the fair market value of the property immediately before the Fire

(b) ***Cost of Repair.*** The reasonable costs to rebuild or repair the property will be determined based on: (1) the use of the structure(s) and other improvement(s); (2) the extent of damage to the structure(s); (e.g., burn damage versus smoke and soot damage); (3) the square footage of structure(s); (4) the geographic location of the property; (5) the size of the vegetation on the property immediately before the Fire; (6) the extent of damage to vegetation; (7) the type of vegetation damaged; and (8) the fair market value of the property immediately before the Fire. In addition, the Claimant may claim the value of trees lost.

(c) ***Consequential Damages.*** Claimants also may make a claim for other reasonably foreseeable economic losses directly caused by destruction of or damage to real property.

2. ***Types of Supporting Documents.*** Claimants may provide the following documents to support a Real Property Claim:

(a) Verification of ownership;

(b) Appraisals;

(c) Tax records;

(d) Purchase records;

(e)        Mortgage or loan documentation showing the pre-Fire condition or value of the property;

(f)        Pre-Fire and post-Fire photos or videos of the structures (interior or exterior) or other damaged areas of the property;

(g)        Architectural or engineering drawings;

(h)        Permits;

(i)        Contractor rebuild or repair estimates or invoices;

(j)        Arborist reports, timber surveys, or documents relating to landscaping; and

(k)        Other supporting documents within the Claimant's possession.

**B.**        **Personal Property**.

1.        ***Description of Personal Property Claim.*** Personal Property Claims include Claims for loss of or damages to personal property, such as household items (*e.g.*, clothes, furniture, or tools) and automobiles, as a result of the Fires.

2.        ***Types of Supporting Documents.*** Claimants may provide the following documents to support a Personal Property Claim:

(a)        List of items destroyed or damaged in the residency;

(b)        Proofs of purchase;

(c)        Pre-Fire and post-Fire photos;

(d)        Appraisals; and

(e)        Other supporting documents within the Claimant's possession.

**C.**        **Personal Income Loss**.

1.        ***Description of Personal Income Loss Claim.*** Personal Income Loss Claims include Claims of individuals who lost income as a result of the Fires, to the extent permitted by California law.

2.        ***Loss of Rental Income.*** Personal Income Loss Claims also include loss of income from rental of a damaged or destroyed property.

3.        ***Types of Supporting Documents.*** Claimants may provide the following documents to support a Personal Income Loss Claim:

(a)        Tax returns, including all schedules and attachments;

(b)      W-2 Forms;

(c)      1099 Forms;

(d)      Lease agreements or canceled rent checks;

(e)      Bank account statements identifying earnings;

(f)      Paycheck stubs or payroll records; and

(g)      Other supporting documents within the Claimant's possession.

**D.**    **Business Loss**.

1.    ***Description of Business Loss Claim.*** Business Loss Claims include Claims for economic losses suffered by a business as a result of the Fires, including loss of business property or inventory used to conduct business and lost profits or revenue.

2.    ***Types of Supporting Documents.*** Claimants may provide the following documents to support a Business Loss Claim:

(a)      Description of the business, including its mission statement;

(b)      Tax returns, including all schedules or attachments;

(c)      Financial statements, including profit and loss statements;

(d)      Articles of Incorporation, bylaws, shareholder lists, or partnership or limited partnership agreements;

(e)      Leases, deeds, titles, or other documents identifying the property owned or occupied by the business;

(f)      Canceled contracts;

(g)      Photos, videos, or other documentary evidence of fire damage to the Claimant's home or business; and

(h)      Other supporting documents within the Claimant's possession.

**E.**    **Other Out-of-Pocket Expenses**.

1.    ***Description of Other Out-of-Pocket Loss Claim.*** Other Out-of-Pocket Loss Claims include Claims for out-of-pocket expenses that are not considered in any other Claim Type. These may include additional living expenses, medical and counseling expenses, and other out-of-pocket expenses as a result of the Fires.

2.    ***Types of Supporting Documents.*** Claimants may provide the following documents to support an Other Out-of-Pocket Loss Claim:

       (a)      Documentation supporting a claim for additional living expenses;

       (b)      Medical bills;

       (c)      Counseling bills; and

       (d)      Other supporting documents within the Claimant's possession.

**F.**      **Wrongful Death and Personal Injury**.

      **1.**      ***Description of Wrongful Death and Personal Injury Claim.*** Wrongful Death and Personal Injury Claims include Claims relating to individuals who died or suffered personal injury as a result of the Fires ("**PI/WD Claims**"). The Trustee and Claims Administrator will devise procedures ensuring a streamlined and sensitive process providing Claimants and their family members the dignity that is critical to successfully resolving Claims relating to these extraordinary losses.

      **2.**      ***Types of Supporting Documents.*** Claimants may provide medical records and other documents supporting a Wrongful Death or Personal Injury Claim, as well as documents supporting a Claim for loss of relationship, love, support, and companionship.

**G.**      **Emotional Distress**.

      **1.**      ***Description of Emotional Distress Claim.*** Emotional Distress Claims include claims for emotional distress the claimant suffered as a result of the Fires, to the extent permitted by California law.

      **2.**      ***Types of Supporting Documents***. Claimants may provide the following documents to support an Emotional Distress Claim:

       (a)      A written narrative or an audio or video recording detailing the Claimant's evacuation and impact of the Fire on the Claimant and his or her family, including impact related to the loss of property and any sentimental items in the home;

       (b)      Texts, emails, or social media content the Claimant created during the evacuation;

       (c)      Photos or videos taken during the evacuation;

       (d)      Pre-Fire and post-Fire photos and videos of the Claimant's property;

       (e)      Records describing bodily injury or mental health counseling or treatment;

       (f)      Documentation of medical and counseling expenses; and

       (g)      Other supporting documents in the Claimant's possession.

Case: 19-30088   Doc# 14492   Filed: 06/20/24   Entered: 06/20/24 15:15:07   Page 16 of 48

## III.    OTHER DAMAGES

The Trustee and Claims Administrator will devise procedures to evaluate any additional categories of recoverable damages.

## IV.    CLAIMS SUBMISSION

The Claims Processor will maintain a secure, web-based portal (the "**Portal**") for Claimants to submit Claims Questionnaires, Supporting Documents, Releases, and any other relevant information or documents. After submitting a Claim, Claimants will be able to use the Portal check their Claim status, receive and respond to determination notices, submit supplementary materials, and update contact information and other demographic information, if necessary.

## V.    CLAIMS QUESTIONNAIRE

In addition to the Claim-specific Supporting Documents identified in Section II, the Claims Administrator will require Claimants to complete a Claims Questionnaire that provides sufficient information to: (1) verify the Claimant's identity; (2) identify and support the claimed damages; and (3) demonstrate the Claimant's authority to assert the Claims.

Individual Claimants may submit Claims Questionnaires by household. The Claims Processor will pre-populate Claims Questionnaires with information already in its possession, including but not limited to data from a Claimant's (a) Bankruptcy Claim Proof of Claim Form; (b) Wildfire Assistance Program Claim Form; (c) Damages Questionnaire established under Case Management Order 5 in the California North Bay Fire Cases (JCCP 4955); and (d) information that is otherwise reasonably ascertainable and reliable.

The Claims Administrator shall obtain insurance claims files ("**Insurance Claims Files**") from the relevant insurers and store them on the Portal where they shall be made available to relevant Claimants and their attorneys for download, review and response over a thirty (30) day period. Such responses may include: (1) approving the ability of the Claims Administrator and Trust professionals to access the Insurance Claims Files applicable to a Claimant; (2) redacting portions of the Insurance Claims Files applicable to a Claimant; and/or (3) contesting redactions applied to Insurance Claims Files by insurers or objecting to the Insurance Claims Files production, which will prevent the use of the Insurance Claims Files or specific portions thereof in the claims process. The Plan does not absolve the insurance carriers of their duty to fulfill their coverage obligations under their policies of insurance with a Claimant.

## VI.    RELEASES

Prior to making each distribution to a Claimant on account of an Approved Fire Victim Claim, the Trust will require the Claimant to execute a release in substantially the same form and content as the (i) Claimant Release and Indemnification in Connection With the Fire Victim Trust Awards or (ii) Entity Claimant Release and Indemnification in Connection With the Fire Victim Trust Awards, attached to the Trust Agreement as **Exhibits 4A and 4B** (each, a

"**Claimant Release**" and together the "**Claimant Releases**").[2] In addition, pursuant to and subject to Section 4.25(f)(ii) of the Plan and the Confirmation Order, and except with respect to any settlement or other agreement regarding the Fire Victim Claims asserted by Adventist Health System/West and Feather River Hospital d/b/a Adventist Health Feather River, the Trust shall require all Claimants who hold Approved Fire Victim Claims to execute a release in substantially the same form and content as the Mutual Made Whole Release attached to the Trust Agreement as **Exhibit 5**.

By signing a Claimant Release, the Claimant will agree to release, through the date on which the Claimant receives the distribution on account of which the Claimant Release is signed, the Trust, the Trustee, Delaware Trustee, TOC, Claims Administrator, Special Master and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, Delaware Trustee, TOC, Claims Administrator or Special Master (the "**Trust Released Parties**") from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, in any forum that an applicant had, have, or may have in the future arising from, relating to, resulting from or in any way connected to, in whole or in part, the discharge of the Trust Released Parties' duties and responsibilities under the Retention Order, the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the CRP, the Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the CRP and the Plan, and any and all other orders of the District Court or Bankruptcy Court relating to the Trust Released Parties and/or their duties and responsibilities.

The Claimant Release will also require the Claimant to (i) acknowledge and agree that the Claimant remains solely responsible for resolving all open Government Payors'[3] and Non-Government Payors' liens, rights of reimbursement, and other claims (collectively, "**Liens and Other Claims**"); (ii) use best efforts to resolve all known Liens and Other Claims; (iii) agree to indemnify and hold harmless the Trust in connection with all known Liens and Other Claims and any future Liens and Other Claims; (iv) agree that the Trust will not be liable for any act, or failure to act, of the lien resolution administrator retained in connection with the Fire Victim

---

[2] In accordance with the *Order on Remaining Objection of California State Agencies and the United States of America Regarding Proposed Government Entity Release* [Docket No. 7973] the governmental entities that were the subject of such Order shall not be required to execute a Claimant Release in connection with receiving distributions from the Trust.

[3] "**Governmental Payor**" means any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Department of Indian Health Services.

Case: 19-30088    Doc# 14492    Filed: 06/20/24    Entered: 06/20/24 15:15:07    Page 18 of 48

Trust; and (v) assign the Trust the right to pursue the 2015 Insurance Rights, if any, and the Claimant Insurance Rights (as defined in the Trust Agreement), if applicable, for the full value of the Fire Victim Claim.

## VII. <u>NOTICE OF CLAIMS DETERMINATION</u>

**A.** **Claims Determination**. The CRP will govern the process by which each Claim is reviewed, including determining whether a Claim is eligible or ineligible for payment and, if eligible, the amount approved for payment (the "**Claims Determination**"). After the Trust has fully evaluated a Claim, the Claims Processor will issue a notice to the Claimant explaining the review result ("**Determination Notice**"). If the Claim has been approved and is eligible for payment (an "**Approved Claim**"), then the notice will include the specific amount that the Trust has approved (the "**Approved Claim Amount**"). If the Claimant accepts the Approved Claim Amount, it becomes the final determination of the Claim (the "**Final Determination**"). If the Claim is missing documents or information required for the Trust to fully evaluate the Claim (a "**Deficient Claim**"), the notice will explain what is required and provide a timeline within which the Claimant may resolve the deficiencies. If the Claim is ineligible for payment from the Trust pursuant to the CRP, the notice will explain the reason(s) that the Claim is ineligible.

**B.** **Application of the Payment Percentage**.

**1.** ***Payment Upon Final Determination.*** Only after the Trustee has established an Initial Payment Percentage in accordance with Section VII.B.2 and the Trust Agreement, then once there is a Final Determination of a Claim pursuant to Section II.B., VII.A, VIII.A, VIII.C, IX.B.1 or IX.C.1 hereof, the Claimant will receive a *pro rata* share of the Final Determination based on a Payment Percentage described in Section VII.B.2 & VII.B.3. For the purpose of payment by the Trust, a Final Judicial Determination (as defined in Section IX.B.1 hereof) shall constitute a Final Determination.

**2.** Initial Payment Percentage. An Initial Payment Percentage shall be set after the Trust is established by the Trustee in accordance with the Trust Agreement. The Initial Payment Percentage shall apply to all Final Determinations except as provided in Section VII.B.3 with respect to supplemental payments in the event the Initial Payment Percentage is changed.

**3**. Supplemental Payment Percentage. When the Trustee determines that the then-current estimates of the Trust's assets and its liabilities, as well as then-estimated value of then-pending Claims, warrant additional distributions on account of Final Determinations, the Trustee shall set a Supplemental Payment Percentage in accordance with the Trust Agreement. Such Supplemental Payment Percentage shall be applied to all Final Determinations that became final prior to the establishment of such Supplemental Payment Percentage. Claimants whose Claim becomes a Final Determination after a Supplemental Payment Percentage is set shall receive an initial distribution equal to the aggregate of the Initial Payment Percentage and all prior Supplemental Payment Percentages set by the Trustee.

# VIII.  DISPUTE RESOLUTION

Claimants dissatisfied with their Claims Determination will have the opportunity to dispute the determination and to provide supplemental information or documents to support their dispute. The Trust will implement the following three-tiered process:

**A.    Reconsideration**. If a Claimant contests a Claims Determination, the Claims Administrator and Claims Processor will review the Claim again and will consider any newly submitted information and documents and all previously submitted information. Taking into account all information before them, the Claims Administrator and Claims Processor will determine the amount in which the Claim should be approved, and the Claims Processor will issue a Reconsideration Determination. The Claimant may accept the Reconsideration Determination or may appeal to a Neutral. If accepted by the Claimant, the Reconsideration Determination becomes the Final Determination of the Claim.

**B.    Appeal**. If a Claimant appeals a Reconsideration Determination, the Claimant shall submit a Notice of Appeal to the Claims Administrator. The Claims Administrator shall submit the Claim to the Appeals Officer**4** for further consideration *de novo* in accordance with the procedure set forth herein.

       **1.**    The Claims Administrator shall submit the following to the Appeals Officer and the Claimant:

          (a)    The Notice of Appeal;

          (b)    The record from the Claims Administrator and Claims Processor resulting in the Claims Determination;

          (c)    The record from the Claims Administrator and Claims Processor resulting in the Reconsideration Determination;

       **2.**    Claimant may submit to the Appeals Officer and the Claims Administrator the following:

          (a)    Any additional information and/or documents not included in the record from either the Claims Determination or the Reconsideration Determination;

          (b)    A brief not to exceed twenty (20) pages setting forth the issues on appeal and the basis for appeal as to each such issue.

       **3.**    Claimant shall designate the type of review sought:

          (a)    Document review only;

---

4 The **Appeals Officer** shall be an individual appointed for the sole purpose of determining whether an appeal from a Determination of the Claims Administrator should be heard by a Neutral from the General Panel or by a Neutral from the Complex Panel. Such determination shall be at the sole and exclusive discretion of the Appeals Officer, who shall at all times remain independent of the Trustee and the Claims Administrator.

Case: 19-30088    Doc# 14492    Filed: 06/20/24    Entered: 06/20/24 15:15:07    Page 20 of 48

(b)        Document review followed by telephonic hearing;

(c)        Document review followed by virtual hearing

(d)        Document review followed by in-person hearing.

4.        The Appeals Officer shall determine whether the appeal shall be considered by a Neutral from the Complex Panel. The Claimant may request that the appeal be considered by a Neutral from the Complex Panel, subject to a determination by the Appeals Officer.

(a)        The determination of whether an appeal should be considered by a Neutral from the Complex Panel shall be made by the Appeals Officer in his sole discretion.

(b)        The Appeals Officer may consider the type, amount and complexity of a Claim and the type of review requested when determining whether an appeal should be considered by a Neutral from the Complex Panel the Claim

(c)        The Appeals Officer's determination of whether an appeal should be considered by a Neutral from the Complex Panel shall be final, binding and non-appealable and is not subject to review by any Court.

5.        A Neutral shall be chosen at random from the General Panel or from the Complex Panel, as determined by the Appeals Officer, to consider the Claim de novo in accordance with the type of review requested by Claimant.

6.        The Neutral shall consider the appeal based on all items submitted by Claimant through the close of the review and/or hearing.

7.        Within thirty (30) days of the close of the hearing, the Neutral shall issue an Appeals Determination, increasing, decreasing, or confirming the Reconsideration Determination.

C.      **Trustee Determination**. The Neutral shall submit to the Trustee the Appeals Determination, increasing, decreasing, or confirming the Reconsideration Determination. The Trustee may accept, reject, or revise the Appeals Determination to ensure that all Claims are treated equitably and then will issue a Trustee Determination to the Claimant. If an Eligible Claimant (as defined in Section IX.B, below) rejects the Trustee Determination but fails to file an election notice pursuant to Section IX.B.1 hereof within 14 days of receiving the Trustee Determination, the Eligible Claimant shall be deemed to have accepted the Trustee Determination. If the Claimant accepts the Trustee Determination it becomes a Final Determination.

## IX.    COURT REVIEW

**A.     Court Review of Claims**.  This Section IX shall only apply to Claimants who are identified in the Confirmation Order at paragraph 18(k).[5]

**B.     Bankruptcy Court Review for Eligible Claims**. Claimants who fully exhaust the dispute resolution process set forth in Section VIII by (i) contesting their Claims Determinations, (ii) exhausting their appellate rights under the CRP, (iii) rejecting the Trustee Determination, and (iv) satisfying the condition of eligibility under Section IX.A ("**Eligible Claimants**") with respect to their Claims, shall have the right to have the Trustee Determination (x) with respect to such Claims and in respect of damages, and (y) with respect to any other determination (legal or factual) made by the Trustee in connection with such Claims, in each case, given plenary review by the Bankruptcy Court,[6] in accordance with the Trust Documents, the Plan and the Confirmation Order and the procedures set forth therein.  Judicial Determination (described herein, and generally "**Judicial Determination**") shall be treated as a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.  Except as otherwise provided in the Trust Documents, Plan or Confirmation Order, the Trustee shall have the right to assert all defenses that the Debtors have or would have had under applicable law to such Claims, provided, however, that (A) the Trust's and the Trustee's right to assert the defenses of comparative fault and/or comparative negligence with respect to a Claimant shall be limited to the determination of the amount of that Claimant's Claims and for no other purpose (including the determination of the amount of any other Claimant's Claims), (B) the Trust's rights and defenses (except as otherwise expressly set forth in this Section IX(B)(A) and Section IX(B)(C)) shall not include claims that may be asserted by the Debtors or Reorganized Debtors by way of setoff, recoupment, counterclaim, or cross claim, (C) the Trustee may raise and assert Assigned Rights and Causes of Action in respect to a Claim, and (D) the Trustee may waive any defense and/or concede any issue of fact or law. Eligible Claimants shall be permitted to assert any defense to Assigned Rights and Causes of Action that such Eligible Claimants would have had under applicable law if the Debtors, as opposed to the Trust, were asserting the Assigned Rights and Causes of Action.  Eligible Claimants remain subject to, and bound by, the Plan, including, without limitation, the Channeling Injunction and any other injunction or release issued or granted in connection with the Plan. Payment by the Trust of a judgment for monetary damages obtained pursuant to this Section IX shall be subject to adjustment, if applicable, for subordination of Claims for punitive or exemplary damages as provided in Section IX.C.

**1.     *Election of Judicial Determination*.** Within fourteen (14) days after an Eligible Claimant receives a Trustee Determination (the "**Election Deadline**") with respect to a

---

[5] For the avoidance of doubt, Section IX(C) of this CRP applies to all Claimants and all Claims generally.

[6] To the extent the Bankruptcy Court determines that a claim asserted by an Eligible Claimant constitutes a personal injury tort or wrongful death claim under and for purposes of 28 U.S.C. § 157(b)(5) (an "**Eligible PI/WD Claimant**"), that Eligible PI/WD Claimant may elect review of its claim pursuant to this Section IX in the District Court for the Northern District of California, subject to the same constraints, election, notice and filing requirements, and other limitations described herein with respect to Bankruptcy Court Review; provided, however, that an Eligible PI/WD Claimant may request that the District Court provide relief, such that review of its Claim may proceed in the court where such claim was pending or could have been pending prior to the Petition Date.  The Trustee's rights to contest any such request are hereby preserved. Nothing in these procedures shall be deemed a waiver or modification of the Eligible PI/WD Claimant's right, if any, to a trial by jury.

Case: 19-30088    Doc# 14492    Filed: 06/20/24    Entered: 06/20/24 15:15:07    Page 22 of 48

Claim, such Eligible Claimant must notify the Trust of the Eligible Claimant's intent to seek a Judicial Determination by submitting a written notice to the Trustee (a "**Judicial Determination Election Notice**") and filing a copy of such Judicial Determination Election Notice with the Bankruptcy Court. Eligible Claimants who fail to submit and file a Judicial Determination Election Notice by the Election Deadline shall be deemed to accept the Trustee Determination of such Claim, and such Trustee Determination shall become a Final Determination that is final, binding, non-appealable and not subject to review by any Court. Eligible Claimants who submit and file a Judicial Determination Election Notice by the Election Deadline ("**Electing Judicial Claimants**") shall have no right to receive any distribution from the Trust absent the issuance of an order or judgment of the Bankruptcy Court, or District Court as applicable, awarding damages on account of the Eligible Claimants' Claim that is no longer subject to appeal and for which no appeal is pending (a "**Final Judicial Determination**").

> **2.** *Recovery Limited to Final Judicial Determination*.  To the extent that a Claimant's Final Judicial Determination with respect to a Claim results in a judgment or award in an amount less than the amount of the Trustee Determination with respect to such Claim, the Claimant will receive payments from the Trust that will be based on the amount of the Final Judicial Determination for such Claim. In determining whether a Claimant's Final Judicial Determination is less than the amount of the Trustee Determination, no amounts awarded for punitive or exemplary damages shall be considered in either circumstance.

> **3.** *Judicial Determinations after Initial Review Period*. Electing Judicial Claimants may only seek a Final Judicial Determination by commencing a contested matter against the Trust in Bankruptcy Court under this Section IX.B within the time prescribed herein after all Claimants that hold Approved Claims have received a Determination Notice with respect to such Approved Claims and have had an opportunity to fully exhaust the dispute resolution process set forth in Section VIII of this CRP (the "**Initial Review Period**").  The Trustee shall file a notice that the Initial Review Period has ended (the "**Initial Review Period Notice**") with the Bankruptcy Court and post the Initial Review Period Notice on the Trust Website.[7]  Electing Judicial Claimants who fail to commence a contested matter in the Bankruptcy Court within the fourteen (14) day period after the filing of the Initial Review Period Notice shall be deemed to accept the Trustee Determination of their Claims, and such Trustee Determination shall become a Final Determination that is final, binding, non-appealable and not subject to review by any Court.  Upon filing, all contested matters commenced under this section shall be stayed pending a decision by the Bankruptcy Court regarding the consolidation of all such matters as set forth in Section IX.B.5 hereof.

> **4.** *Supporting Evidence.*  During the Judicial Determination, the Claimant and the Trustee shall be governed by the rights and obligations imposed upon parties to a contested matter under the Federal Rules of Bankruptcy Procedure; provided, however, that an

---

[7] The Trustee shall also contemporaneously serve a copy of the Initial Review Period Notice via email on counsel of record or as otherwise provided in the Claims Questionnaire for Claimants who are identified in the Confirmation Order at paragraph 18(k) and upon such additional representatives of any of such Claimants as may be designated in writing by that Claimant from time to time, provided that, such email notices shall be required for a Claimant only if the Claimant is an Electing Judicial Claimant or the Election Deadline for the Claimant has not passed when the Initial Review Period Notice is filed.

Electing Judicial Claimant shall not have the right to introduce into evidence during the Judicial Determination any information or documents that (a)(1) were requested by the Trustee or (2) the Electing Judicial Claimant reasonably could have been expected (before issuance of the Trustee Determination) to rely on or introduce as evidence in a Judicial Proceeding, and (b) were available to the Electing Judicial Claimant at the time of the request or during the pendency of the review of the Claim by the Trustee and Claims Administrator, but which the Claimant failed to or refused to provide to the Trust prior to the issuance of the Trustee Determination; provided, however, that nothing in this Subsection IX.B.4 shall prohibit an Electing Judicial Claimant from introducing information or documents that is responsive to information or documents not disclosed to the Electing Judicial Claimant before the issuance of the Trustee Determination. The Claimant's responses to requests by the Trustee for documents or information shall be subject to Rule 37 of the Federal Rules of Civil Procedures, as applicable under the Federal Rules of Bankruptcy Procedure. Claimants shall not have the right to disclose the Claims Determination, Appeals Determination or Trustee Determination to any Court except as provided in the following sentence. Subject to the terms of any protective order entered by a Court, a Claimant's filing of a Judicial Determination Election Notice shall permit the Trust or any representative thereof to introduce as evidence before a Court all information and documents submitted to the Trust under the CRP, and the Claimant may introduce any and all information and documents that it submitted to the Trust under the CRP.

       **5.**     ***Consolidation of Judicial Determinations***. Subject to notice and a hearing and at the discretion of the Bankruptcy Court, all judicial review proceedings elected pursuant to this section IX.B may be heard and determined in one or more consolidated proceedings to the extent practicable, in a manner acceptable to the court, and in accordance with applicable law. All contested matters filed within the fourteen (14) day period following the filing of the Initial Review Period Notice shall be stayed pending the Bankruptcy Court's determination on how or whether to proceed under this subsection.

       **6.**     ***Attorneys' Fees and Expenses.*** Electing Judicial Claimants shall be required to pay their own attorneys' fees and expenses unless such fees and expenses are otherwise recoverable as part of their Claim under California law.

       **7.**     ***Payment of Bankruptcy Court Determinations***. Under no circumstances shall interest be paid under any statute on any judgments obtained in the tort system. If and when a Claimant obtains a Final Judicial Determination it shall be treated within and receive *pro rata* distributions from the Trust, subject to the Trust Documents, including Section VII.B hereof, the Plan and the Confirmation Order.

      **C.**     **Punitive and Exemplary Damages**. The Trustee shall have the discretion to award punitive or exemplary damages consistent with California law and the Trust Agreement. Any award of punitive or exemplary damages made by the Trustee or a Court with respect to any Claim shall be subordinate and junior in right to the prior payment in full of all Final Determinations and Final Judicial Determinations as provided herein.

      **D.**     **Redetermination of Prior Final Determinations**. To the extent that a Final Judicial Determination of a Claim implicates a determination of damages which is inconsistent to other Claims, theories, facts, or issues of a similar type to the Claim subject of a Final Judicial

Determination, the Trustee, in his sole and absolute discretion, may redetermine, adjust or modify the amount of any prior Final Determinations, solely in an upward manner, to be consistent with such Final Judicial Determination.

## X.   PREVENTION AND DETECTION OF FRAUD

**A.**   The Claims Administrator may institute claim auditing procedures and other procedures to detect and prevent the allowance of fraudulent claims. All Claims must be signed under the pains and penalties of perjury. To the extent of applicable law, the submission of a fraudulent Claim may violate the criminal laws of the United States, including the criminal provisions applicable to Bankruptcy Crimes, 18 U.S.C. § 152, and to the extent of applicable law, may subject those responsible to criminal prosecution in the federal courts. If the Claims Administrator determines that a Claim is fraudulent, the Trustee shall deny the Claim and so inform the Claimant.

**B.**   The Claims Administrator shall have the authority to request the Claimant to submit additional records in order to make a determination of allowance or denial of any Claim. If the Claimant refuses to or fails to respond to such a request within ninety (90) days or if the Claims Administrator determines that a Claimant's response is inadequate, the Claims Administrator shall take such actions as she deems appropriate on the Claim and notify the Claimant of the action and basis therefore and the Claimant may dispute the same and seek a Judicial Determination as set forth in Article IX.

**C.**   The Claims Administrator may conduct random audits to verify supporting documentation submitted (including death certificates, medical and other records) by randomly selecting Claims and may audit individual claims or groups of Claims.

**D.**   All Claimants must certify to the Claims Administrator on the Claims Questionnaire that the Claimant has not transferred his or her or its right to recover from the Released Parties with respect to his or her Claim such that the Claim can be asserted by another person or entity. The fact that a Claimant has executed a "subrogation" agreement with a health insurer or that a statutory provision grants to any governmental entity rights of subrogation shall not of itself be construed as a transfer of Claimant's right to recover.

## XI.   ATTORNEY'S FEES

**A.**   **Attorney's Fees Determined Pursuant to State Law.** Any award of attorney's fees with respect to a Claim shall be determined in accordance with the laws of the State of California.

**B.**   **Hold-Back for Attorney Liens.** Prior to receiving any award in respect of any Claim Determination, any Claimant who was represented by an attorney ("**Claimant Attorney**") at the time of filing its Proof of Claim in the Chapter 11 Cases or at any time thereafter, shall: (1) agree to receive their award through their Claimant Attorney; or (2) provide evidence to the satisfaction of the Claims Administrator and Trustee that there is no lien or potential lien on their

Final Determination asserted or assertable by a Claimant Attorney (an "**Attorney Lien**"), including by providing written confirmation from such Claimant Attorney that no Attorney Lien exists.  If an Attorney Lien exists, is asserted or assertable, then only the undisputed portion of the award shall be provided to the Claimant.  The disputed portion shall be held back until the Claims Administrator receives satisfactory notice in his or her sole determination, that such dispute and Attorney Lien has been resolved. The payment of attorney's fees incurred by Claimant and the satisfaction of any Attorney Lien is the sole obligation of Claimant. Neither the Trustee nor the Trust is responsible for the payment of any attorney's fees or the resolution of any Attorney Lien incurred in connection with a Claim.

# XII.   CREDITS AND DEDUCTIONS

**A.     Credits for Amounts Covered By Insurance**. In determining all award amounts, the Trustee will take into account all insurance recoveries available to the Claimant as provided in the Trust Agreement.

**B.     Deduction for Payment Received from Wildfire Assistance Fund**. In determining all award amounts, the Trustee will take into account any payment Claimant has received from the Wildfire Assistance Fund as provided in the Trust Agreement.

**C.     Deduction for Payment Received from FEMA.** In determining all award amounts, the Trustee will take into account any payment Claimant has received from the Federal Emergency Management Agency ("**FEMA**") on account of the same damages or losses, as provided in the Trust Agreement.

**D.     Medical Liens.** In determining all award amounts, the Trustee will take into account all known outstanding governmental medical liens, if any, currently owed by the Claimant. Claimants shall be responsible for the payment of all medical or other applicable liens. The Claimant will undertake to resolve such liens, and if not done, the Trustee will take over the process, solely with respect to governmental liens. The Trustee will retain the services of a Lien Resolution Administrator to identify, resolve, and satisfy, in accordance with applicable law, certain Claimant governmental repayment obligations, including, but not limited to, Medicare (Parts A and B), Medicaid, and other governmental liens.

**E.     Taxes.** In connection with their duties hereunder, the Trustee and Claims Administrator will make every effort to ensure that the Trust complies with all applicable laws, including without limitation all tax return filings and information reporting requirements set forth in applicable laws.

**F.     Authority to Withhold Distributions Pending Resolution of Third Party Claims.** The Trustee has the authority and discretion to withhold any distribution, or portions thereof, on account of any Claim that received a Final Determination or Judicial Determination if the Claimant is subject to pending or contemplated litigation brought by the Trust in respect of Assigned Rights and Causes of Action under the Plan until the final resolution of such litigation, including the conclusion of all appellate rights or expiration of any statutes of limitation.  The

Trustee may disallow any Claim of any entity or person that is liable to the Trust in respect of Assigned Rights and Causes of Action under the Plan until such entity or person has paid the amount for which such entity or person is liable to the Trust.


## XIII.   <u>CONFIDENTIALITY OF CLAIMS INFORMATION</u>

All personal information, facts, and documents submitted to the Trust by or regarding any Claimant or Claim shall be kept confidential and shall only be disclosed: (1) to the Trustee, Claims Administrator, Claims Processor, Neutrals, and Trust Professionals to the extent necessary to process and pay Claims; or (2) as may be required by applicable law, ethical requirements, or legitimate business uses associated with administering the Trust.

**EXHIBIT "2"**



**Eligibility Criteria for Personal Injury**

Personal Injury Claims are claims for physical, bodily injury and any related pain and suffering and/or mental anguish resulting from the bodily injury. Personal Injury Claims may include but are not limited to the following types of bodily injuries suffered as a result of the Fires:

1. Bodily injury that involves substantial risk of death or disfigurement;
2. Injuries causing blindness or deafness;
3. Disfiguring burns; and
4. Traumatic brain injury or other brain injuries that result in permanent cognitive impairment, physical disability or mood imbalance.

Claimants who submit Emotional Distress claims will have those claims separately evaluated.

If a Claimant submitted a Proof of Claim in the Bankruptcy Cases on or before 12/31/19 and subsequently died, the Trust will consider his or her Personal Injury Claims preserved and will review the Claim to determine eligibility and award amount, if any.

A. <u>**Supporting Documents**</u>.

Claimants must submit sufficient documents, including all available medical bills and records related to the injury, identifying the type and severity of bodily injury, demonstrating the causal relationship to the Fires, and reflecting any treatment required and/or received.

The following documents will be particularly helpful to support a Personal Injury Claim:

1. Medical records related to the injury, including medical records from a treating physician or healthcare provider as to diagnosis and prognosis;
2. Medical bills related to the injury;
3. Written narratives detailing the Claimant's injury and any mental anguish, pain and suffering, and inconvenience suffered as a result; and
4. Photos or videos depicting the Claimant's injury.

B. <u>**Claims Review**</u>.

The Trust will designate a person with a significant amount of experience in evaluating Personal Injury Claims ("Personal Injury Consultant") to review causation and determine damage awards for serious injury claims. BrownGreer and the Personal Injury Consultant will coordinate to review Personal Injury Claims submitted to the Trust. BrownGreer will conduct a preliminary review of all Personal Injury Claims to determine the severity of the claimed injury, including whether it required medical treatment and/or hospitalization and will route Claims for determination as follows:

1

Case: 19-30088    Doc# 14492    Filed: 06/20/24    Entered: 06/20/24 15:15:07    Page 29 of 48



1. **Consultant Review.** The Personal Injury Consultant will review all Claims that:

    (1) Assert injuries that resulted in a permanent disability or disfigurement;
    (2) Assert injuries that exacerbated a pre-existing medical condition;
    (3) Assert injuries that did not occur during evacuation or present other causation issues; or
    (4) BrownGreer escalates for input or determination.

    The Personal Injury Consultant will determine whether each Claim is eligible or ineligible for payment and, if eligible, the amount approved for payment. These determinations, including causation, documentation sufficiency, and award amounts, will be made as follows:

    **(a) Causation:** The Personal Injury Consultant will determine whether the Fire was a "substantial factor" in causing the injury. The Fire must be more than a "remote" or "trivial" factor. The documents provided pursuant to Section A will be used to make this determination. If the Fire was a substantial factor causing the injury, the Personal Injury Consultant will review the asserted damages and make an award determination. If the Fire was not a substantial factor causing the injury, the Claim will be denied.

    **(b) Damages:** The Personal Injury Consultant will determine the full extent of damages allowed by California law, including both the bodily injury and any directly related emotional distress. Consideration will be given to the nature and duration of treatment, any resulting disability, and whether the injury is permanent in nature. Damages also may include the reasonable costs of (1) any past medical care received and related to an eligible injury and/or (2) reasonably necessary medical care related to an eligible injury and certain to be required in the future. Where injuries are determined to be permanent, the Personal Injury Consultant will consult the U.S. Decennial Life Tables in the *National Vital Statistics Reports*, published by the National Center for Health Statistics, to determine the Claimant's life expectancy.

    **(c) Award:** Considering the determinations made in Sections B.1(a) and B.1(b), the Personal Injury Consultant will award damages to each eligible Claimant. In awarding damages, the Personal Injury Consultant has the power to reduce the "full" damage determination after considering the likelihood of establishing causation pursuant to Section B.1(a). This power includes the authority to award no damages.

    Awards for future costs associated with medical care, household services, equipment, therapy or any other future goods or services will not be reduced to their present value nor shall they be adjusted for inflation or increases in productivity.

Case: 19-30088    Doc# 14492    Filed: 06/20/24    Entered: 06/20/24 15:15:07    Page 30 of 48



2. **<u>BrownGreer Review</u>.** BrownGreer will review all Claims that do not meet the requirements for Personal Injury Consultant review in Section B.1, including Claims that allege only emotional distress; or allege an injury that did not require medical treatment or that required only evaluation or acute care.

Claims determinations, including causation, documentation sufficiency, and award amounts, will be based on criteria approved by the Personal Injury Consultant. While the Personal Injury Consultant generally will not review Claims in this category, BrownGreer may escalate Claims to the Personal Injury Consultant for input or determination.

In either scenario, if the submitted documents are insufficient, the Trust will issue a Deficiency Notice explaining the additional documents or information required for the Trust to fully evaluate the Claim.

**EXHIBIT "3"**



# PERSONAL INJURY RECONSIDERATION DETERMINATION REPORT

## DATE OF REPORT: 3/1/24

## I. PERSONAL INJURY CLAIM INFORMATION

| | | | |
|---|---|---|---|
| **Name:** | Megan Van Mater Davidson | **Claimant ID:** | 1015650 |
| **Claim ID:** | 253246 | **Claim Questionnaire ID:** | 10041136 |
| **Law Firm:** | Corey, Luzaich, de Ghetaldi & Riddle LLP | | |

## II. ELIGIBILITY CRITERIA AND CLAIM AWARD AMOUNT

Personal Injury Claims include Claims for physical or bodily injuries suffered by a Claimant and any related pain and suffering and/or mental anguish caused as a result of the Fires. This includes any or all Claims for bodily injury caused by a Fire and allowed under California law.

The Trust determines award amounts for eligible Personal Injury Claims based on the Claimant's medical expenses related to treatment of the alleged injury, if medical expenses are submitted, and compensation for the Claimant's pain and suffering and/or mental anguish. After reviewing all submitted documents, the Trust has made the following determination for your asserted Personal Injury Claim.

| Description | Amount | FEMA Offset | Net Amount |
|---|---|---|---|
| Vision Loss; LHON | $0.00 | $0.00 | $0.00 |
| **Net Claim Award:**<br>This is the sum of all Injury awards above minus prior related FEMA payments, if any. | | | **$0.00** |

## III. EXPLANATION OF INELIGIBLE INJURY

The table below provides additional information related to the asserted injuries that are not eligible for payment within the Personal Injury Claim Type. If you wish to accept the Aggregate Award included in your Determination Notice, you do not need to submit additional documents or take any other action on these deficiencies. If you would like us to consider these additional Assertions, you must request Reconsideration and submit the additional documents identified below. Your Determination Notice includes additional instructions on how to request Reconsideration.

| What is the issue? | How to Address this Item |
|---|---|
| To be eligible for compensation for a Personal Injury Claim, the Fire must have been a substantial contributing factor causing you physical bodily injury. | You either were outside of the Fire perimeter or did not provide sufficient information showing that you were within the Fire perimeter at the time of the Fire. Therefore, your Claim is not eligible for compensation from the Fire Victim Trust. |

## IV. RECONSIDERATION COMMENT

The Claimant requested reconsideration of the Personal Injury Claim and submitted additional records. After reviewing the new documents, the Trust confirmed the prior Personal Injury Award. The Claimant's address at ███████████████████████ is 133.4 miles outside of the Camp Fire Perimeter. Because the Claimant was not within the Camp Fire Perimeter at the time of the Fire, this Personal Injury Claim is not eligible for compensation from the Fire Victim Trust.



Case: 19-30088    Doc# 14492    Filed: 06/20/24    Entered: 06/20/24 15:15:07    Page 33 of 48

**EXHIBIT "4"**



# PERSONAL INJURY RECONSIDERATION DETERMINATION REPORT

## I. PERSONAL INJURY CLAIM INFORMATION

| | | | |
|---|---|---|---|
| **Name:** | PATRICK C DOOLITTLE | **Claimant ID:** | 1030940 |
| **Claim ID:** | 245004 | **Claim Questionnaire ID:** | 10038731 |
| **Law Firm:** | Corey, Luzaich, de Ghetaldi & Riddle LLP | | |

## II. ELIGIBILITY CRITERIA AND CLAIM AWARD AMOUNT

Personal Injury Claims include Claims for physical or bodily injuries suffered by a Claimant and any related pain and suffering and/or mental anguish caused as a result of the Fires. This includes any or all Claims for bodily injury caused by a Fire and allowed under California law.

The Trust determines award amounts for eligible Personal Injury Claims based on the Claimant's medical expenses related to treatment of the alleged injury, if medical expenses are submitted, and compensation for the Claimant's pain and suffering and/or mental anguish. After reviewing all submitted documents, the Trust has made the following determination for your asserted Personal Injury Claim.

| Description | Amount | FEMA Offset | Net Amount |
|---|---|---|---|
| Loss of Vision; LHON | $0.00 | $0.00 | $0.00 |
| **Net Claim Award:**<br>This is the sum of all Injury awards above minus prior related FEMA payments, if any. | | | **$0.00** |

## III. EXPLANATION OF INELIGIBLE INJURY

The table below provides additional information related to the asserted injuries that are not eligible for payment within the Personal Injury Claim Type. If you wish to accept the Aggregate Award included in your Determination Notice, you do not need to submit additional documents or take any other action on these deficiencies. If you would like us to consider these additional Assertions, you must request Reconsideration and submit the additional documents identified below. Your Determination Notice includes additional instructions on how to request Reconsideration.

| What is the issue? | How to Address this Item |
|---|---|
| To be eligible for compensation for a Personal Injury Claim, the Fire must have been a substantial contributing factor causing you physical bodily injury. | You either were outside of the Fire perimeter or did not provide sufficient information showing that you were within the Fire perimeter at the time of the Fire. Therefore, your Claim is not eligible for compensation from the Fire Victim Trust. |

## IV. RECONSIDERATION COMMENT

The Claimant requested reconsideration of the Personal Injury Claim and submitted additional records. After reviewing the new documents, the Trust confirmed the prior Personal Injury Award. The Claimant's address at ████████████████ is 18 miles outside of the nearest included Fire Perimeter. Because the Claimant was not within an included North Bay Fire Perimeter at the time of the Fires, this Personal Injury Claim is not eligible for compensation from the Fire Victim Trust.



**EXHIBIT "5"**



# PERSONAL INJURY RECONSIDERATION DETERMINATION REPORT

## I. PERSONAL INJURY CLAIM INFORMATION

| | | | |
|---|---|---|---|
| **Name:** | Paul Lore | **Claimant ID:** | 1043348 |
| **Claim ID:** | 302151 | **Claim Questionnaire ID:** | 10047752 |
| **Law Firm:** | Corey, Luzaich, de Ghetaldi & Riddle LLP | | |

## II. ELIGIBILITY CRITERIA AND CLAIM AWARD AMOUNT

Personal Injury Claims include Claims for physical or bodily injuries suffered by a Claimant and any related pain and suffering and/or mental anguish caused as a result of the Fires. This includes any or all Claims for bodily injury caused by a Fire and allowed under California law.

The Trust determines award amounts for eligible Personal Injury Claims based on the Claimant's medical expenses related to treatment of the alleged injury, if medical expenses are submitted, and compensation for the Claimant's pain and suffering and/or mental anguish. After reviewing all submitted documents, the Trust has made the following determination for your asserted Personal Injury Claim.

| Description | Amount | FEMA Offset | Net Amount |
|---|---|---|---|
| Vision Loss; Legal Blindness secondary to Leber's Hereditary Optic Neuropathy (LHON); Optic Atrophy; Visual Disturbance; Astigmatism | $0.00 | $0.00 | $0.00 |
| **Net Claim Award:**<br>This is the sum of all Injury awards above minus prior related FEMA payments, if any. | | | **$0.00** |

## III. EXPLANATION OF INELIGIBLE INJURY

The table below provides additional information related to the asserted injuries that are not eligible for payment within the Personal Injury Claim Type. If you wish to accept the Aggregate Award included in your Determination Notice, you do not need to submit additional documents or take any other action on these deficiencies. If you would like us to consider these additional Assertions, you must request Reconsideration and submit the additional documents identified below. Your Determination Notice includes additional instructions on how to request Reconsideration.

| What is the issue? | How to Address this Item |
|---|---|
| To be eligible for compensation for a Personal Injury Claim, the Fire must have been a substantial contributing factor causing you physical bodily injury. | You either were outside of the Fire perimeter or did not provide sufficient information showing that you were within the Fire perimeter at the time of the Fire. Therefore, your Claim is not eligible for compensation from the Fire Victim Trust. |

## IV. RECONSIDERATION COMMENT

The Claimant requested reconsideration of the Personal Injury Claim and submitted additional records. After reviewing the new documents, the Trust confirmed the prior Personal Injury Award. The Claimant's address at ████████████████████ is 130.8 miles outside of the Camp Fire Perimeter. Because the Claimant was not within the Camp Fire Perimeter at the time of the Fire, this Personal Injury Claim is not eligible for compensation from the Fire Victim Trust.



**EXHIBIT "6"**



# PERSONAL INJURY RECONSIDERATION DETERMINATION REPORT

## DATE OF REPORT: 3/1/24

## I. PERSONAL INJURY CLAIM INFORMATION

| | | | |
|---|---|---|---|
| **Name:** | Julie Poincenot | **Claimant ID:** | 1008348 |
| **Claim ID:** | 253118 | **Claim Questionnaire ID:** | 10040280 |
| **Law Firm:** | Corey, Luzaich, de Ghetaldi & Riddle LLP | | |

## II. ELIGIBILITY CRITERIA AND CLAIM AWARD AMOUNT

Personal Injury Claims include Claims for physical or bodily injuries suffered by a Claimant and any related pain and suffering and/or mental anguish caused as a result of the Fires. This includes any or all Claims for bodily injury caused by a Fire and allowed under California law.

The Trust determines award amounts for eligible Personal Injury Claims based on the Claimant's medical expenses related to treatment of the alleged injury, if medical expenses are submitted, and compensation for the Claimant's pain and suffering and/or mental anguish. After reviewing all submitted documents, the Trust has made the following determination for your asserted Personal Injury Claim.

| Description | Amount | FEMA Offset | Net Amount |
|---|---|---|---|
| Vision Loss; LHON; Smoke Inhalation | $0.00 | $0.00 | $0.00 |
| **Net Claim Award:**<br>This is the sum of all Injury awards above minus prior related FEMA payments, if any. | | | **$0.00** |

## III. EXPLANATION OF INELIGIBLE INJURY

The table below provides additional information related to the asserted injuries that are not eligible for payment within the Personal Injury Claim Type. If you wish to accept the Aggregate Award included in your Determination Notice, you do not need to submit additional documents or take any other action on these deficiencies. If you would like us to consider these additional Assertions, you must request Reconsideration and submit the additional documents identified below. Your Determination Notice includes additional instructions on how to request Reconsideration.

| What is the issue? | How to Address this Item |
|---|---|
| To be eligible for compensation for a Personal Injury Claim, the Fire must have been a substantial contributing factor causing you physical bodily injury. | You either were outside of the Fire perimeter or did not provide sufficient information showing that you were within the Fire perimeter at the time of the Fire. Therefore, your Claim is not eligible for compensation from the Fire Victim Trust. |

## IV. RECONSIDERATION COMMENT

The Claimant requested reconsideration of the Personal Injury Claim and submitted additional records. After reviewing the new documents, the Trust confirmed the prior Personal Injury Award. The Claimant's address at ███████████████████████████ is 131.3 miles outside of the Camp Fire Perimeter. Because the Claimant was not within the Camp Fire Perimeter at the time of the Fire, this Personal Injury Claim is not eligible for compensation from the Fire Victim Trust.



**EXHIBIT "7"**

Are we able to bring our own or record it ourselves?


-------- Original message --------
From: Appeals Officer FVT <appealsofficer@fvtadmin.com>
Date: 5/30/24 12:08 (GMT-08:00)
To: Brad Bowen <bbowen@dankolaw.com>
Subject: Re: LHON

> **External Email. Do not open links or attachments from untrusted sources.**

Yes, I can respond to the procedural issue: you and your client(s) are the sole participants at the hearing, and there are no reporters, nor do we record the proceedings.

Viggo Boserup
310-804-4753


> On May 30, 2024, at 12:00 PM, Brad Bowen <bbowen@dankolaw.com> wrote:
>
>
> Thank you for your email and clarifying that the Neutral will respond to issues we present on appeal. I was asking for a copy of the rule/policy/whatever that states a claimant must be in the fire perimeter in order to be eligible for a Personal Injury award. The reason given for the denial of their claims was that they were not in fire perimeter. There is no published rule, eligibility criteria, procedural requirement or anything else similar in any papers publicly available or on the FVT website stating this rule. We are appealing the denial of their claims, and have not been provided with the policy or rule partially at issue on the appeal. We would like a copy of that. Forcing someone to go through an appeal without specifying what the rule is at issue is extremely unfair and prejudicial, and not at all in the interest of justice or fairness. When I asked the Neutral on a phone call what policy or rule she was asked to evaluate the case under she said she was unable to tell me and I would have to ask the FVT, hence why I am asking the FVT.
>
> Additionally, we have asked the Neutral's office for the procedure to get a court reporter at, or a recording of the hearing and have not gotten an answer. Is the FVT able to shed any light on that issue, it seems to fit the procedural question category you mentioned below.
>
> Thank you much,

Brad

---

**From:** Appeals Officer FVT <appealsofficer@fvtadmin.com>
**Sent:** Tuesday, May 28, 2024 12:39 PM
**To:** Brad Bowen <bbowen@dankolaw.com>
**Cc:** Appeals Officer FVT <appealsofficer@fvtadmin.com>
**Subject:** Re: LHON

**External Email. Do not open links or attachments from untrusted sources.**

Thank you for your email.

The Appeals Neutral assigned to hear your cases (Casandra Franklin, Esq.) shall respond to any issues you present on appeal.

If you have any procedural, or non-substantive, questions, please feel free to contact me.

Viggo Boserup, Esq.,
Appeals Officer
Direct Dial: 310-804-4753
   appealsofficer@fvtadmin.com

> On May 28, 2024, at 10:04 AM, Brad Bowen <bbowen@dankolaw.com> wrote:
>
> Good morning,
>
> I am following up on our request to get a copy of the policy that resulted in the denial of the claims. We have not been given a copy of the policy that is at issue in the appeal. Is it the exact perimeter? Within some set distance like a mile? Or 5 miles?

Thank you much,

Brad

---

**From:** Brad Bowen
**Sent:** Friday, May 17, 2024 12:28 PM
**To:** Appeals Officer FVT <appealsofficer@fvtadmin.com>
**Subject:** RE: LHON

Thank you. Can we please get a copy of the policy or rule described below? Thank you.

-------- Original message --------
From: Appeals Officer FVT <appealsofficer@fvtadmin.com>
Date: 5/17/24 12:26 (GMT-08:00)
To: Brad Bowen <bbowen@dankolaw.com>
Subject: Re: LHON

> **External Email. Do not open links or attachments from untrusted sources.**

Brad, please direct any inquiries connected to, or in any way related to, your cases, exclusively to me and the neutral while you are in the appeal phase. This will facilitate a prompt response and allow others to focus on their non-appeal issues, of which there remain many.

Viggo Boserup
310-804-4753

> On May 17, 2024, at 10:24 AM, Brad Bowen
> <bbowen@dankolaw.com> wrote:
>
> Hi Jessica, would it possible to get a copy of the policy or
> rule or whatever it is that establishes a certain proximity
> to the fire perimeter is necessary to be eligible for an
> award from the FVT? I do not see it in my review of the
> Bankruptcy Plan, the Trust Agreement, the Claims
> Resolution Process, the Eligibility for Personal Injury, or

any other documents on the Bankruptcy Docket or on the FVT website.

Thank you,

Brad

---

**From:** Jessica Smith <jssmith@browngreer.com>
**Sent:** Monday, May 13, 2024 2:48 PM
**To:** Brad Bowen <bbowen@dankolaw.com>; Amanda Riddle <alr@coreylaw.com>; cyanni@fvtadmin.com; Viggo Boserup <appealsofficer@fvtadmin.com>
**Cc:** Jay Mense <jmense@browngreer.com>; Jennifer Owens <jowens@browngreer.com>; Phil Strunk <pstrunk@browngreer.com>
**Subject:** RE: LHON

> **External Email. Do not open links or attachments from untrusted sources.**

Hi, Brad.  I am adding Viggo Boserup, the FVT Appeals Coordinator, to this thread.  I understand that these appeals already have been assigned to Cassandra Franklin.  You will need to coordinate any communications or requests through Cassandra Franklin's Case Manager, whose contact information is included below.  In keeping with the Guidelines for Appeals of Reconsideration Determinations, new information and evidence may be submitted until the close of hearing.

I also would note that the Trust's position on causation is not new.  Instead, the causation position outlined and studies cited in the memo track and build on the conversation the Personal Injury Consultant, Eric Kennedy, had with you and Lisa Manoogian last summer.  While the claims remain procedurally denied, the Trust determined they also suffer from fatal general and specific causation issues.

| Appeals Neutral | Cassandra Franklin |
|---|---|
| Appeals Case Manager | Kemi Oyemade<br>213-253-9784<br>koyemade@jamsadr.com |

**From:** Brad Bowen <bbowen@dankolaw.com>
**Sent:** Sunday, May 12, 2024 11:16 PM
**To:** Jessica Smith <jssmith@browngreer.com>; Amanda
Riddle <alr@coreylaw.com>; cyanni@fvtadmin.com
**Cc:** Jay Mense <jmense@browngreer.com>; Jennifer Owens
<jowens@browngreer.com>; Phil Strunk
<pstrunk@browngreer.com>
**Subject:** RE: LHON

Again, thank you for sharing this. It is very nice to see that an
analysis was done. As we have been asking for this im
written or oral form for months now, since the
reconsiderstion determination came out, it would be
appropriate to delay the claims' referral to a neutral a few
weeks. All other claimants have been provided similar
documents or feedback showing the reasoning behind the
determination during  the 30 day window after a
reconsideration determination notice before clicking the
appeal button. These four claimants deserve to have a
similar opportunity as well.

Thank you,

Brad


-------- Original message --------
From: Jessica Smith <jssmith@browngreer.com>
Date: 5/10/24 11:50 (GMT-08:00)
To: Amanda Riddle
<alr@coreylaw.com>, cyanni@fvtadmin.com
Cc: Brad Bowen <bbowen@dankolaw.com>, Jay Mense
<jmense@browngreer.com>, Jennifer Owens
<jowens@browngreer.com>, Phil Strunk
<pstrunk@browngreer.com>
Subject: RE: LHON

External Email. Do not open links or attachments from
untrusted sources.

Thank you for following up on this, Amanda.  In
addition to the procedural Fire Perimeter denials, the
Claims Processor, Personal Injury Consultant, and

Trustee considered the underlying personal injury assertions raised in the Lore, Poincenot, Davidson, and Doolittle cases. In addition to reviewing the submitted claim materials, the Personal Injury Consultant and Claims Processor discussed the personal injury claims in detail with counsel on 7/13/23 after counsel received initial Determination Notices denying the claims. That discussion touched on both Fire Perimeter and Causation issues.

After that meeting and following review of the subsequently submitted claims materials and additional independent review of the scientific literature, the Personal Injury Consultant determined that the claim should be substantively denied as there is insufficient scientific evidence to establish a causative link between the Claimant's smoke exposure and subsequent blindness. Having thoroughly reviewed the claims, the Personal Injury Consultant presented his findings and recommendation to the Trustee, who affirmed the determinations. A copy of the Personal Injury Consultant's memo is attached.

Thank you,
Jess

---

**From:** Amanda Riddle <alr@coreylaw.com>
**Sent:** Thursday, May 9, 2024 6:13 PM
**To:** cyanni@fvtadmin.com; Jessica Smith <jssmith@browngreer.com>
**Cc:** Brad Bowen <bbowen@dankolaw.com>; Jay Mense <jmense@browngreer.com>; Jennifer Owens <jowens@browngreer.com>
**Subject:** LHON

Cathy and Jess,

We would appreciate a discussion about the LHON cases before they are referred to a neutral. We have asked JGood and Jay the same questions over and over and we are in the same place as we were a few months ago.

The Trust denied the claims because the claimants were outside the fire perimeter. California law obviously does

not support the denial. There is nothing in California law that sets a geographic perimeter on causation. We also see nothing in the Trust's policies that support the denial. And we understand that other claimants have received awards for smoke inhalation even though they were outside the fire perimeter.

So, we need to understand whether the Trust has looked at our detailed work up and evidence in support of causation or if you are denying the claims simply on the ground that the claimants were outside the fire perimeter so that we know how to proceed before the neutral and whether we need to bring a motion before Judge Montali challenging the Trust's policies because they conflict with California law.

Thank you,

Amanda L. Riddle, Esq.
Corey, Luzaich, de Ghetaldi & Riddle LLP
700 El Camino Real
Millbrae, CA 94030
(650) 871-5666 (Phone)
(650) 871-4144 (Fax)
alr@coreylaw.com

**The information contained in this email message is legally privileged and confidential information intended solely for the use of the individual or organization to whom it is addressed. DO NOT copy, modify, distribute, or take any action in reliance on this email message if you are not the intended recipient. Any dissemination or use of this email message or disclosure of its contents to a third party by anyone other than the intended recipient is strictly prohibited. If you have received this email message in error, please notify the sender and delete the entire message, including any attachments, from your system.**

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you

are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.