1  William B. Abrams
   end2endconsulting@gmail.com
2  625 McDonald Ave.
   Santa Rosa, CA, 95404
3  Tel: 707 397 5727

4

5

6  *Pro Se Fire Victim Claimant and Party to related proceedings before the California Public Utilities*
7  *Commission*

8

9

10              **UNITED STATES BANKRUPTCY COURT**
11               **NORTHERN DISTRICT OF CALIFORNIA**
12                  **SAN FRANCISCO DIVISION**

13
     In re:
14                                          Bankr. Case No. 19-30088 (DM)
                                            Chapter 11
15   PG&E CORPORATION,                      (Lead Case)
                                            (Jointly Administrated)
16        -and-
17                                          **RESPONSE OF WILLIAM B.**
                                            **ABRAMS TO THE ORDER**
18   PACIFIC GAS AND ELECTRIC               **REGADING WILLIAM B. ABRAMS**
     COMPANY,                               **RECENT FILING**
19                  Debtors.

20
     ☐ Affects PG&E Corporation
21   ☐ Affects Pacific Gas and Electric Company
22   ☑ Affects both Debtors

23                                          Relates to: Dkt. 14481, 14474
     *  All papers shall be filed in the lead case,*
24   *No. 19-30088 (DM)*

25

26

27

28



## PRELIMINARY STATEMENT

William B. Abrams ("**Abrams**") as a Pro Se Claimant, hereby submits this *Response of William B. Abrams to the Order Regarding William B. Abrams Recent Filing* (the "**Response**") pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Bankruptcy Rule 2004-1(a). This is a direct Response to the June 12, 2024, *Order Regarding William B. Abrams Recent Filing* (the "**Order**") [Dkt. 14481] and in support of the June 6, 2024, *Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Trust Compliance With Court Orders* (the "**Motion**") [Dkt. 14474]. Specifically, this Response is to address the Court Order directing Abrams to "...*file with the court a copy of any "Claimant Release and Indemnification in Connection with the Fire Victim Trust Awards..." If he has done so, Mr. Abrams should also include an explanation (not to exceed ten pages) expalining* [sic] *his standing or entitlement to pursue the current Motion.*"

As Abrams has done throughout the papers he has filed within this case and associated hearings, he will follow this new Court direction and the processes and procedures for pro se claimants and respectfully requests that the Court consider the following:

## RESPONSE

### A. The "Claimant Release and Indemnification"

First, the Court should recognize that Abrams rights and remedies to discovery as a real party in interest and as a pro se claimant are in no way compromised or waived due to his execution of the required victim releases (*See* **Exhibit A**) that were the subject of his prior *William B. Abrams Motion to Stay the Administration, Execution and Enforcement of Victim Claimant Releases as Defined within the Fire Victim Trust Agreement Pending United States Supreme Court Ruling and Pursuant 11 U.S.C. § 105(A)"* [Dkt. 14396]. **These victim releases do not waive discovery rights and are not grounds for limiting victim discovery pursuant to Federal Rule of Bankruptcy Procedure 2004.** Indeed, the Court recognized that victims have the right to pursue discovery when it stated within the "*Order on Fire Victim Trustee's Rule 2004 Motion*" that "*while the CRP does not*

*incorporate Rule 2004, it does not exclude use of that rule either*" [Dkt. 11652]. Nothing within the victim releases undermines or otherwise limits victim discovery rights and remedies within this Court. Given that Abrams has now through this Response complied with the Court Order to "...*file with the court a copy of any "Claimant Release and Indemnification in Connection with the Fire Victim Trust Awards..."* and has explained how this does not in any way limit his rights and those of other victims to discovery, he will now address the Court's other question regarding "*standing to pursue the current Motion.*"

### B. Abrams is a "Real Party in Interest"

As has been well established within this Court and has remained unchallenged by the Trustee or Members of the Trust Oversight Committee, Abrams indeed holds valid Fire Victim Trust claims as a victim from the 2017 PG&E Tubbs Fire. **What is also clear, is that Abrams as a "real party in interest," along with the vast majority of other victims, stands to be significantly disadvantaged relative to the issues raised within this Motion for Discovery.** The attached April 29, 2024 letter from Gerald Singleton of Singleton Schreiber "Fearless Advocacy" Law Group (Member of the Trust Oversight Committee) makes it clear that victims like Abrams are indeed disadvantaged relative to his clients through his management and settlement negotiations associated with the Davey Tree litigation (*See* **Exhibit B**). It certainly appears within this letter that Mr. Singleton is trying to ignore or disregard his financial obligations to all victims as a Member of the Trust Oversight Committee so as to advance his own financial benefits through this settlement. Regardless of Mr. Singleton's motives or intentions, Abrams as a real party in interest has the right and the obligation once receiving this disturbing information to bring these issues to the attention of the Court. Within this letter Mr. Singleton states that "*per the Settlement Agreement, this approximately $200 million will not be disbursed until after all FVT claims have been paid.*" This statement sent "*privileged and confidential*" ONLY to his clients is of great concern and directly impacts Abrams' settlement along with the settlement of the other 70,000+ victims that are not benefiting from representation by Members of the TOC who were selected by the Trustee to pursue this and other litigation on behalf of ALL victims. The Court should note that this letter was voluntarily provided to Abrams by another concerned victim and is therefore no longer privileged.

Additionally, troubling is that it seems that **only those clients represented by the counsel assigned to this case are being asked for "*consent as to how to proceed.*" Conveniently, Abrams**

**and the other 70,000+ victims are not being asked if they are willing to forgo their financial benefits from this case and/or if they will consent to release the Trustee from her commitments to victims that all proceeds would be equitably distributed.** Clearly, there are a myriad of ethical and legal concerns raised by this letter regarding the extent to which Trust Oversight Committee Members and the Trustee are engaged in activities that violate the Fire Victim Trust Agreement and applicable law. How many other agreements and "consortium agreements" referenced within the Trustee response to the prior Abrams Motion also provide inequitable benefits favoring Members of the Trust Oversight Committee? Will the lobbying activities facilitated by the Trustee and by Members of the TOC support equitable treatment for victims and address the FVT shortfall? Abrams through the Discovery Motion is looking to ascertain the extent and breadth of these issues and the associated violations of the Fire Victim Trust Agreement. **However, these issues which are the subject of the Motion will not be expounded upon here but suffice it to say, Abrams is (1) clearly a real party in interest, (2) has standing, (3) has the legal right to enforce and defend his claims and (4) should be granted all of the rights and remedies through Rule 2004 Discovery that have been previously afforded to the Trustee.**

### C. Ethical and Practical Considerations for Pro Se Discovery Motions

The above Response demonstrating that Abrams is a real party in interest should be more than sufficient for establishing his standing relative to Rule 2004 discovery. However, given the Trustee's prior "*ex parte*" email to the Court attempting to short-circuit Abrams rights, it will be important to put forward further arguments demonstrating why pro se claimants like Abrams should be granted ALL of the rights and remedies to discovery that have been prior afforded to the Trustee and other parties within this case (*see* **Exhibit C**).

First, it is important to consider the ethical standards and practical considerations that a pro se movant like Abrams should apply when deciding whether or not to bring a discovery motion before the Court. There is no "code of conduct" or "bar association rules" governing pro se litigants other than general requirements to follow court processes and procedures. Therefore, Abrams, albeit imperfectly, has done his very best to understand and adhere to Federal Bankruptcy Law, Bankruptcy Local Rules for the Northern District of California, applicable State Law and the additional direction and rulings provided by the Court. Beyond these legal requirements, Abrams has followed his conscience and the law as a guide to decide if, when and how to bring forward issues for the Court's

consideration and has only brought forward motions when the importance of the evidence compelled his actions.

Of course, many of the core parties within this case would prefer that Abrams and other victims would leave well enough alone and forfeit all of their legal rights and remedies. These same parties like the Trustee and the Members of the Trust Oversight Committee have sought and received broad and sweeping legal protections through confidentiality protocols, nondisclosure terms, indemnifications, exculpations and any other protections that they could find to keep their actions in the dark and free from accountability. Free from the view of victims, these parties have been able to establish for themselves complicated financial incentive structures interwoven between their often-differing duties as well as legal and ethical obligations to (1) their victim clients (2) victim trust beneficiaries and (3) the Trustee and FVT representatives. **It is precisely because these other parties have established these protections and financial structures that the legal standing of victims like Abrams should be protected by the Court especially in relation to these discovery motions.** When the Trust Oversight Committee members and others establish "consortium agreements" and other legal vehicles to delineate their financial incentives and guard against the types of discovery that are the subject of the Abrams Discovery Motion, it should be no surprise to the Court or others that it would require the perspective from a pro se claimant like Abrams to shine a light and seek discovery when evidence points to potential violations and breaches in the fiduciary duties of these parties. Of course, some may wish to believe that these parties act with the utmost altruistic motivations and would never prioritize their own financial interests above the interests of victims. However, Abrams while believing that the vast majority of the attorneys within this case do act with honesty and integrity, he does not believe that all of these attorneys are so altruistic that they would be immune from the temptation to engage in strategies and associated agreements that maximize their financial benefits at the expense of their victim clients and trust beneficiaries. Even if the Court takes the view that the ethics and actions of these parties are beyond reproach, it would still be practical for the Court to support the standing of Abrams relative to these discovery motions, if only to assuage any fears that the interests of victims have been misrepresented within this case and to protect the due process rights of victims.

///

### D. Legal Precedent to support the Due Process Rights of Pro Se Victim Claimants

As the Court is aware, the rights of citizens to represent themselves is foundational to our system of justice even within complex legal cases. However, when cases are not complex there is often no need to protect the standing and discovery rights of pro se litigants because the facts are in full view of the Court, the public and parties alike. Conversely, as cases increase in complexity, courts must preserve and protect the discovery rights of victims like Abrams. Here, the Court has recognized that these PG&E bankruptcy cases "*are among the most complex in U.S. bankruptcy history, involving "difficult legal, financial, practical and personal issues.*"[1] Indeed, within these complex cases, and without any ill-intention or malice, it is easy to understand how seasoned bankruptcy practitioners may "lose the view of the forest through the trees" as they mediate, negotiate, compromise and pursue complex legal strategies. These complexities are precisely why the discovery rights of the layperson pro se claimant above all other parties must be preserved and protected by the Court. Abrams through this Motion for Discovery is exercising these rights.

Indeed, these discovery rights and the standing of pro se victims have been preserved and protected by our courts. As an example, in Haines v. Kerner, the Court held that judges should "*liberally construe pro se pleadings.*" It further stated that "*allegations such as those asserted by* [the pro se] *petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.*"[2]

Indeed, not only has the standing to pursue discovery been protected for pro se movants like Abrams, but the exercising of these rights has also been encouraged by our courts which is why these pro se claimants are frequently granted added leeway beyond those afforded to bankruptcy attorneys. In Anderson v. Cryovac, Inc., 862 F.2d 910 (1st Cir. 1988), the First Circuit held that pro se litigants should be afforded reasonable leeway in discovery disputes to further the court's goal of providing fairness and access to justice. In re Wade, 991 F.2d 402 (7th Cir. 1993), the Seventh Circuit found

---

[1] See August 2, 2022 "Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust", Dkt. 12682, pg. 2, lines 17-20.
[2] Haines v. Kerner, 404 U.S. 519, 520-21 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)

that pro se litigants are entitled to fair treatment in bankruptcy proceedings and should not be prejudiced due to their lack of legal representation. Likewise, in re Weidner, 455 B.R. 24 (Bankr. D. Mass. 2011), the court highlighted the importance of ensuring that pro se litigants receive an opportunity to be heard regarding discovery motions and other pleadings.

### E. Standing to Pursue Discovery Acknowledged and Affirmed by the Court

As described above, we see that the precedent for self-representation within bankruptcy cases particularly through pro se motions for discovery is well established. This pro se standing has also been acknowledged directly by this Court and within the *Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust* (the "**Prior Discovery Order**") [Dkt. 12682]. Here the Court thoughtfully acknowledged that "*the resulting shortfall, combined with Trust administrative expenses and lengthy and complicated distribution process for claimants, some of whom are fire victims who are years into this unfortunate situation without any recompense, has understandably led to questions regarding the management of the FVT... there should be more visibility in the process meant to protect those most damaged by the very events that sparked this bankruptcy.*" This accurate and compassionate statement from the Court was a sound view in August, 2022. Now, the Court should consider these same sentiments exponentially more applicable given the "*resulting shortfall*" has been shown to be ~30% and that the Trusts' "*expenses,* [and] *lengthy and complicated distribution process*" have only been more complicated by the subsequent two-year time period which exacerbated the plight of victims.

The Court, within this same order, indicated that "*Federal Rule of Bankruptcy Procedure 2004 remains available as a vehicle for that exchange of information... the court cannot take seriously the Trustee's attempt to shut off access via Rule 2004 when, as pointed out by Mr. Abrams, he has himself invoked that very rule when he sought discovery from Adventist Healthcare Systems/West et al. and PricewaterhouseCoopers LLP.*" Now, the Court should understand that at the time of this order and following this order, the Trustee was granted broad discovery from many parties including through what is described as Bankruptcy Rule 2004 "fishing expeditions." These Court approved discovery remedies extended to pre-confirmation inquiries, detailed interrogatories, subpoenas, "*telephonic conferences in accordance with its regular procedures*" and through many other activities. Abrams as a pro se claimant, noted that these discovery remedies were approved by the Court and in turn requested these same remedies to understand substantive concerns and

violations regarding the management and administration of the Fire Victim Trust. However, while these activities were approved for the Trustee and many other parties, Abrams was denied these remedies and instead the Court substituted the Abrams detailed interrogatories with "discrete areas identified by Mr. Abrams."

The Court should note that Abrams continues to adhere to the Court's prior orders through the most recent Discovery Motion and even though he has been denied the discovery remedies that other parties have been granted, he has not pressed that issue or appealed those decisions. Instead, Abrams is only requesting that the Court grant him standing to seek discovery within the "discrete areas" that were permitted prior by the Court along with reasonable discovery into those related issues revealed by the partial release of heavily redacted retention agreements and the recent TOC actions as described within the Abrams Motion. If through this discovery request, the evidence points to further violations of the Fire Victim Trust Agreement and/or breaches in the fiduciary duties of the Trustee or Trust Oversight Committee Members, Abrams trusts that the Court will proactively engage in discovery to understand the extent of these violations without the need for further motions from pro se claimants like Abrams.

### CONCLUSION

Abrams as a pro se claimant has followed the processes and procedures of the Court and has now adhered to the additional procedural steps requested by the Trustee and granted through the June 12, 2024, *Order Regarding William B. Abrams Recent Filing*. Abrams as a "real party in interest" and as a pro se claimant has substantial interests in this case. It is undeniable that Abrams' due process rights to represent and defend these interests would be significantly and unfairly disadvantaged if he is denied standing and access to Rule 2004 discovery remedies. Therefore, Abrams should be granted standing on his Motion. Moreover, and notwithstanding the Trustee's ex parte email attempt [Dkt. 14483] to preemptively deny Abrams his due process rights to discovery, the Court should grant Abrams a hearing to argue and support this Motion if the Trustee choses to oppose or otherwise prevent this discovery.

///

In conclusion, Abrams is a pro se movant and claimant with substantial interests within this case and has put forward the Motion for Discovery and this Response in good faith so that the Court, the Trustee and all other parties may see the benefits of a fair and open discovery process. Abrams hopes that this action in a small way may support the Court's goal to provide just and fair outcomes within this case.

Executed on June 25, 2024, at Santa Rosa, CA.

William B. Abrams
Pro Se Claimant

# CLAIMANT RELEASE AND INDEMNIFICATION
# IN CONNECTION WITH THE FIRE VICTIM TRUST AWARDS

To receive payment of an Award (as defined below) from the PG&E Fire Victim Trust (the "**Trust**"), an eligible Claimant must execute and submit to the Trustee (as defined below) this Release and Indemnification (the "**Release**"). **This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below). A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient.**

If you need assistance, please contact the Claims Administrator by email at info@firevictimtrust.com or by phone toll-free at 1 (888) 664-1152. You may also visit the Fire Victim Trust Website for additional information.

## DEFINITIONS

The definitions set forth above for the terms "**Trust**" and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.

All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Chapter 11 Plan (as defined below).

"**2015 Insurance Policies**" means any insurance policy issued to any of the Debtors or under which the Debtors have sought or may seek coverage for the 2015 policy year.

"**2015 Insurance Rights**" means any and all rights, titles, privileges, interests, claims, demands, or entitlements of the Debtors to resolve any claims related to Fires under the 2015 Insurance Policies, other than the rights of the Debtors to be reimbursed for claims submitted to and paid by the Debtors prior to January 29, 2019.

"**Award**" means the compensation a Claimant receives on behalf of the Claimant's Fire Claim.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of California San Francisco Division, having subject matter jurisdiction over the Chapter 11 Cases and, to the extent of any reference withdrawal made under section 157(d) of title 28 of the United States Code, the District Court.

"**Channeling Injunction**" means the permanent injunction provided for in Section 10.7 of the Chapter 11 Plan with respect to Fire Victim Claims that was issued pursuant to, and included in, the order confirming the Chapter 11 Plan.

"**Chapter 11 Cases**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and currently styled *In re PG&E Corporation and Pacific Gas and Electric Company*, Bankruptcy Case No. 19-30088 (DM) (Lead Case) (Jointly Administered).

Claimant ID: 1041713

"**Chapter 11 Plan**" means the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020, filed in the Chapter 11 Cases and confirmed by the Bankruptcy Court.

"**Claim**" or "**Claims**" has the meaning set forth in section A of this Release.

"**Claimant**" means a Fire Victim who (i) has timely filed a proof of claim in the Chapter 11 Cases, (ii) has had his or her Claim channeled to the Trust for evaluation, resolution, and payment pursuant to the Plan and the Channeling Injunction; and (iii) who is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Claimant Insurance Company**" means any insurance company that issued or allegedly issued a Claimant Insurance Policy.

"**Claimant Insurance Policy**" means any insurance policy that was issued or allegedly issued that does or may afford the Claimant rights, benefits, indemnity, or insurance coverage with respect to any claims and that has been assigned to the Trustee by Claimant and accepted by the Trustee pursuant to Section 2.6(c) of the Trust Agreement.

"**Claimant Insurance Rights**" means any and all rights, titles, privileges, interests, claims, demands, or entitlements of the Claimant to any proceeds, payments, benefits, causes of action, choses in action, defense or indemnity arising under or attributable to any and all Claimant Insurance Policies, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent.

"**Claims Questionnaire**" means the claims questionnaire and supporting documents required by the CRP in support of Fire Victim Claims.

"**CRP**" means the Fire Victim Claims Resolution Procedures for the resolution, liquidation, and payment of Fire Victim Claims by the Trust, substantially in the form included in the Plan Supplement filed in the Chapter 11 Cases on May 1, 2020 and as may be amended and supplemented thereafter from time to time.

"**Debtors**" means PG&E Corporation and Pacific Gas and Electric Company, the debtors and debtors-in-possession in the Chapter 11 cases.

"**District Court**" means the United States District Court for the Northern District of California, having jurisdiction in the Chapter 11 Cases.

"**Fires**" means the Butte Fire (2015), the North Bay Fires (2017) (consisting of the following fires: LaPorte, McCourtney, Lobo, Honey, Redwood/Potter Valley, Sulphur, Cherokee, 37, Blue, Pocket, Atlas, Cascade, Nuns, Adobe, Norrbom, Pressley, Partrick, Pythian/Oakmont, Maacama, Tubbs, Point, and Sullivan) and the Camp Fire (2018).

"**Fire Victim**" means a person or entity damaged, or who purports to have been damaged, in various ways by the Fires.

"**Fire Victim Claim**" means any claim against the Debtors in any way arising out of the Fires that was channeled to the Trust by the Channeling Injunction and the Plan.

"**Governmental Payor**" means any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Department of Indian Health Services.

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court (including the Special Master) or has other legal authorization to file a proof of claim and/or a Fire Victim Claim on behalf of the Claimant.

"**Lien**" or "**Liens**" means (i) any statutory lien of a Governmental Payor or Medicare Part C or Part D Program sponsor, or (ii) any mortgage, lien, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, held by any Other Payer or Provider, where there is a legal obligation to withhold payment of an Award, or some portion thereof, to a Claimant under applicable federal or state law or for the Claimant to reimburse the Government Payor, Other Payer or Provider for amounts paid on the Claimant's behalf in connection with the Claimant's Fire Victim Claims.

"**Lien Resolution Administrator**" means that person or entity, retained by the Trustee to resolve Medicare Program Part A and B liens, Medicaid Program liens, and Medicare Part C Program liens, using the information provided by the Claimant in the Claims Questionnaire.

"**Medicaid Program**" means the federal program administered by the states under which certain medical items, services, and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396-1, *et seq*.

"**Medicare Part C or Part D Program**" means the program(s) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with Centers for Medicare & Medicaid Services ("**CMS**").

"**Medicare Program**" means the Medicare Parts A and B federal program administered by CMS under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq*.

"**Released Parties**" means the Trust, the Trustee, Delaware Trustee, TOC, Claims Administrator, Special Master and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, Delaware Trustee, TOC, Claims Administrator or Special Master.

"**Retention Orders**" means the Order Granting Application of The Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 1103 and 363 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Hon. John K. Trotter (Ret.) as Trustee *Nunc Pro Tunc* to January 13, 2020 [Docket No. 6760] and the Order Granting Application of The Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 1103 and 363 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Cathy Yanni as Claims Administrator *Nunc Pro Tunc* to January 13, 2020 [Docket No. 6759], entered by the Bankruptcy Court on April 14, 2020 in the Chapter 11 Cases.

"**Special Master**" means the special master appointed by the Superior Court of California for the County of San Francisco to approve any and all minors' compromises in conjunction with the evaluation, disallowance, resolution, settlement, and approval of any and all Fire Victim Claims in accordance with the CRP.

"**TOC**" means the members of Trust Oversight Committee appointed by the Consenting Fire Claimant Professionals and the Tort Claimants Committee to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**Trust Agreement**" means the PG&E Fire Victim Trust Agreement dated as of July 1, 2020, substantially in the form included in the Plan Supplement filed in the Chapter 11 Cases on May 1, 2020.

"**Trustee**" means Hon. John K. Trotter (Ret.) or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RELEASE AND INDEMNIFICATION

A.  In consideration of the benefit of an Award from the Trust, I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "I", "My" or "Me"), do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally and irrevocably waive, release, remit, acquit, forever discharge, covenant not to sue, and hold harmless the Released Parties from and with respect to any and all claims, including, but not limited to, all claims as defined in section 101(5) of the Bankruptcy Code, charges, complaints, demands, obligations, causes of action, losses, expenses, suits, awards, promises, agreements, rights to payment, right to any equitable remedy, rights of any contribution, indemnification, reimbursement, subrogation or similar rights, demands, debts, liabilities, express or implied contracts, obligations of payment of performances, rights of offset or recoupment, costs, expenses, attorneys' and other professional fees and expenses, compensation or other relief, and liabilities of any nature whatsoever whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or other legal or equitable theory of recovery (collectively, "**Released Claims**") arising from, relating to, resulting from or in any way connected to, in whole or in part, the discharge of the Released Parties' duties and responsibilities under the Retention Orders, the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the CRP, the Chapter 11 Plan, the formulation, preparation,

Case: 19-30088    Doc# 14507    Filed: 06/26/24    Entered: 06/26/24 11:54:43    Page 13 of 22

negotiation, execution or consummation of the Trust Agreement, the CRP and the Chapter 11 Plan, and any and all other orders of the District Court or Bankruptcy Court relating to the Released Parties and/or their duties and responsibilities, from the beginning of time through the execution date of this Release.[1] I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action based upon, arising out of, or relating to any Released Claim released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

B.   I hereby acknowledge that pursuant to the Chapter 11 Plan, the Channeling Injunction and the order confirming the Chapter 11 Plan, the Debtors have been fully and completely discharged and the Debtors and their respective property and successors and assigns have been released from any and all liability arising from or related to any Fire Victim Claim asserted.

C.   I hereby acknowledge that I am solely and ultimately responsible for the satisfaction and discharge of all Liens. I shall use best efforts to resolve all known Liens.

D.   Notwithstanding my responsibilities to resolve all known Liens, I hereby authorize the Lien Resolution Administrator to resolve any and all Medicare Program liens, Medicaid Program liens, and Medicare Part C Program liens, as set forth in the definition of Lien Resolution Administrator above. The Lien Resolution Administrator shall use best efforts to resolve the Medicare Program liens, Medicaid Program liens, and Medicare Part C Program liens on my behalf.

E.   In further consideration of the benefit of an Award, I do hereby release, forever discharge, hold harmless, and covenant not to sue the Released Parties from any and all Claims arising from, relating to, resulting from or in any way connected to, in whole or in part, any act, or failure to act, of the Lien Resolution Administrator. I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) institute a lawsuit or other action based upon, arising out of, or relating to any Claim released hereby, (ii) participate, assist, or cooperate in any such action, or (iii) encourage, assist and/or solicit any third party to institute any such action.

F.   I hereby acknowledge and agree that to the extent my information is incorrect or incomplete to any substantial degree, after reasonable diligence by the Lien Resolution Administrator, which results in the Lien Resolution Administrator being unable to properly verify coverage or identify Liens for which the Lien Resolution Administrator is responsible, then the Lien Resolution Administrator shall have no further responsibility for such unknown/unresolved Liens.

G.   In further consideration of the benefit of an Award, I shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including the costs of defense and attorneys' fees of, the Released Parties against any and all Claims.

---

[1] A SUBSEQUENT RELEASE OR ANNEX TO THE ORIGINAL RELEASE WILL BE REQUIRED TO BE EXECUTED BY THE CLAIMANT AT THE TIME OF EACH DISTRIBUTION, RELEASING THE RELEASED PARTIES FROM THE DATE OF THE LAST RELEASE THROUGH THE DATE OF EACH SUBSEQUENT RELEASE.

Claimant ID: 1041713
Case: 19-30088   Doc# 14507   Filed: 06/26/24   Entered: 06/26/24 11:54:43   Page 14 of 22

H.   I, as assignor, hereby irrevocably and unconditionally transfer and assign to the Trust, as assignee, any and all rights to pursue and release 2015 Insurance Rights for my Claim for the full amount of the liability that either of the Debtors may have or have had for my Claim.

I.   [Reserved]

J.   I acknowledge that the Trust is not providing any tax advice with regard to the receipt of the Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Award, to the extent applicable.

K.   If I am awarded compensation for any loss of consortium or bystander claims, I acknowledge and agree that all beneficiaries of such claims (each, a "**Beneficiary**") must execute and be bound by this Release. Each Beneficiary waives all rights and interests in those indirect or third-party claims and is barred from the assertion of those indirect or third-party claims in the tort system or otherwise.

Claimant or Legal Representative Printed Name:   William B Abrams

Claimant or Legal Representative Signature:   *William B Abrams*

Signature Date:   4/23/2024

Claimant ID: 1041713



591 Camino de la Reina, Suite 1025, San Diego, CA 92108
(619) 771-3473 | SingletonSchreiber.com

## PRIVILEGED/CONFIDENTIAL
## ATTORNEY-CLIENT COMMUNICATION

April 29, 2024

Dear Clients,

We are writing to provide you with an update on a tentative settlement between third-party defendants Davey Tree Expert Company, Davey Tree Resource Group, Inc. and Davey Tree Surgery Company (collectively "Davey Tree"), the FVT and certain individual plaintiff.

### Proposed CONFIDENTIAL Settlement with Davey Tree

In October 2019 (immediately prior to statute of limitations expiring) four law firms, including ours, filed a complaint against Davey Tree for damages arising out of the North Bay Fires.

In January 2021, the FVT filed a complaint against Davey Tree. The FVT was able to do so this because, as part of the bankruptcy, all of PG&E's claims were transferred to the FVT. Accordingly, in filing this complaint, the FVT was essentially filing the claims that PG&E would have been able to file had it not declared bankruptcy. These cases were consolidated into a single action in San Francisco Superior Court.

Over the last several years, litigation has continued against Davey Tree in San Francisco Superior Court. The FVT has been spearheading the litigation efforts and, most recently, negotiated a tentative policy limits settlement with Davey Tree.

After extensive litigation, Davey Tree has agreed to pay its insurance policy limits to resolve all litigation against it. This poses a problem as the amount of Davey Tree's insurance is roughly $200 million; while this obviously is a lot of money, it is not enough to make a significant difference to the $14 billion trust. (To put it in context, $200 million is approximately 1.4% of the value of the Trust.) Per the Settlement Agreement, this approximately $200 million will not be disbursed until after all FVT claims have been paid.

As we have said, we believed that the result of the settlement with Davey Tree would be the same as the result of the other third-party settlements: that is, all of the money would go into the FVT and would be distributed to all plaintiffs on a pro rata basis.

In this particular settlement, however, the result was slightly different. While the vast majority of the funds recovered went to the FVT, as it had the largest claims, a small amount was allocated to each of the firms that filed suit, including our clients. The amount allocated to our group was $9,950,000 (gross), slightly less than 5% of the total amount of the settlement. As a reminder, this settlement is confidential and, as such, we must remind you not to discuss this settlement with anyone that is not your attorney.

CALIFORNIA | NEW MEXICO | OREGON | WASHINGTON | UTAH | COLORADO | TEXAS | MISSOURI | HAWAI'I

Accordingly, we are writing the following letter to (1) advise you of your rights, and (2) obtain your informed consent as to how to proceed.

### What it means to have a "policy limits" settlement

Here, all of the various "Davey Tree" defendants against whom we filed suit submitted the claims to their insurance companies. Each defendant is insured by its own separate carrier, and each has a different amount of policy limits available. Accordingly, the most that each insurance company will pay to settle claims against its insured is the maximum amount that the insurance contract provides. The total amount of all of these policies is the aggregate "policy limits" of the case.

While it is possible to pursue claims against the third-party defendants in excess of the policy limits, we do not believe that makes sense in this case.

The amount of the damages will far exceed each company's ability to pay, and if we litigate the companies will seek to shift the blame to PG&E (which has declared bankruptcy and therefore cannot be forced to pay anything further).

Accordingly, all attorneys involved believe that the current, policy-limits settlement of roughly $200 million is the best thing for all plaintiffs (the FVT and the plaintiffs represented by the four individual firms).

### Participating in the Davey Tree Settlement

If you would like to participate in this settlement, you must sign and return the attached Release. You are not required to sign the attached Release, but if you do not sign and return the release, you will not be eligible to participate in the settlement.

While it is certainly your choice as to whether or not to participate in this settlement, we want to advise you that we believe it is in your best interest to do so as pursuing litigation against Davey Tree on an individual basis will be extremely costly and risky. Unfortunately, given the enormous amount of claimants and the extremely limited amount of money that is available to recover from, there simply is not enough money available to justify the costs of going forward with a trial against Davey Tree.

### Davey Tree Settlement Allocation

For those that elect to participate in the settlement, the funds will be allocated as follows:

**First**, rather than recover joint costs from your next pro rata payment, we will allocate these funds towards your percentage of global joint costs. Specifically, as you may recall, as part of our representation, our firm has been advancing costs on your behalf. This includes both individual costs (such as experts to establish individual damages) and joint costs incurred for the benefit of all of our clients (such as liability experts, depositions, bankruptcy costs, etc.). Under the fee agreement, these costs must be paid back at the conclusion of the case. Rather than collect these

out of the next pro rata payment—as we are doing with all other FVT clients—SSLLP will collect these funds from the Davey Tree settlement.

**To the extent you elect <u>not</u> to participate in the settlement, which, as we've said, is absolutely your right, you will be responsible for reimbursing our firm for these costs.**

*Second*, the remaining funds will be allocated to all eligible North Bay claimants on a pro rata basis calculated based on your damages. To assist with the allocation process, our firm will engage the assistance of an experienced Special Master.

### Disclaimer – Notification of Rights

Please understand that you are <u>not</u> compelled to agree to participate in this settlement. You have the absolute right to refuse to proceed with this settlement. <u>**You also have the absolute right to consult with an attorney of your choosing, separate and apart from us, regarding this proposed settlement**</u>.

### Conclusion

Please do not hesitate to contact us anytime if you have questions. You can contact any of our team members directly, email us at pgebksettlement@singletonschreiber.com, or contact our main line, (619) 771-3473, and we will put you in touch with the right team member.

Sincerely,

Gerald Singleton

Gerald Singleton

Encl: Authorization to enter settlement and for proposed disbursement

## Exhibit C: Ex Parte Email Exchange

 **= Note: Ex Parte email request sent by Trustee ~3.5 hours prior to Court Order**

| | |
|---|---|
| **From:** | Sieger-Grimm, Susan |
| **To:** | Ankey Thomas |
| **Cc:** | Will Abrams; dmolton_brownrudnick.com |
| **Subject:** | 19-30088 PG&E - Response Deadline and Hearing on Docket No. 14474 |
| **Date:** | Wednesday, June 12, 2024 11:29:19 AM |

**CAUTION - EXTERNAL:**

Ms. Thomas,

As you know, we are counsel to the Trustee of the Fire Victim Trust. Based on Judge Montali's prior ruling that the Court would not set hearings on motions filed by Mr. Abrams until it conducts a preliminary review of the relief requested and the basis for the request [Docket No. 10768], we are inquiring whether the Trustee should adhere to the response deadline and hearing date set in Mr. Abrams's recently filed motion seeking further discovery from the Trust and the Trustee [Docket No. 14474]. At this time there are no final settlements of Assigned Claims for which the Trust has not yet filed and posted the required disclosures. While we do not believe any disclosures need to be made by the Trust that have not already been filed with the Court and posted to the Fire Victim Trust Website in compliance with this Court's August 2, 2022 order [Docket No. 12682], should the Court hear Mr. Abram's latest motion, the Trustee would like the opportunity to respond.

Thank you,

## **brown**rudnick

**Susan Sieger-Grimm**
Counselor at Law

Brown Rudnick LLP
Seven Times Square
New York, NY 10036
T: 212.209.4863
F: 212.938.2963
M: 914.420.2912
ssieger-grimm@brownrudnick.com
www.brownrudnick.com

*******************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely),

the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

***************************************************************************

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

 = Note: Abrams response to Trustee 30 min after Court Order was issued but not yet posted to Kroll site

| | |
|---|---|
| **From:** | end2endconsulting@gmail.com |
| **To:** | Sieger-Grimm, Susan |
| **Cc:** | Ankey Thomas; dmolton_brownrudnick.com |
| **Subject:** | Re: 19-30088 PG&E - Response Deadline and Hearing on Docket No. 14474 |
| **Date:** | Wednesday, June 12, 2024 4:08:24 PM |

**CAUTION - EXTERNAL:**

Ms. Thomas -

This statement from Ms. Sieger-Grimm is false on two accounts. First, Judge Montali never stated that he "would not set hearings on motions filed by Mr. Abrams." Second, recent communications from members of the Trust Oversight Committee directly contradict the prior statements from the Trustee and those within Ms. Siegel-Grimm's email. These TOC communication indicate resolved cases that have NOT been disclosed in accordance with Judge Montali's ruling granting my prior motion. The Trustee's violations of the Court's rulings should not stand unchallenged.

I urge you to resist Trustee counsel's attempt to further erode the due process rights of victims within this case. As Judge Montali has stated, the Trustee has exercised these rights for discovery and specifically stated that these rights would remain open to Mr. Abrams.

Thank you for your consideration of these important procedural issues. I am hopeful that this important matter will be heard by the Court.

Thanks again,

Will Abrams
(707) 397-5727

> On Jun 12, 2024, at 1:29 PM, Sieger-Grimm, Susan <SSieger-Grimm@brownrudnick.com> wrote:
>
>
> Ms. Thomas,
>
> As you know, we are counsel to the Trustee of the Fire Victim Trust. Based on Judge Montali's prior ruling that the Court would not set hearings on motions filed by Mr. Abrams until it conducts a preliminary review of the relief requested and the basis for the request [Docket No. 10768], we are inquiring whether the Trustee should adhere to the response deadline and hearing date set in Mr. Abrams's recently filed motion seeking further discovery from the Trust and the Trustee [Docket No. 14474]. At this time there are no final settlements of Assigned Claims for which the Trust has not yet filed and posted the required disclosures. While we do not believe any disclosures need to be made by the Trust that have not already been filed with the Court and

posted to the Fire Victim Trust Website in compliance with this Court's August 2, 2022 order [Docket No. 12682], should the Court hear Mr. Abram's latest motion, the Trustee would like the opportunity to respond.

Thank you,

<image001.jpg>

**Susan Sieger-Grimm**
Counselor at Law

Brown Rudnick LLP
Seven Times Square
New York, NY 10036
T: 212.209.4863
F: 212.938.2963
M: 914.420.2912
ssieger-grimm@brownrudnick.com
www.brownrudnick.com

*************************************************************************

The information contained in this electronic message may be legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If the recipient of this message is not the above-named intended recipient, you are hereby notified that any dissemination, copy or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Brown Rudnick LLP, (617) 856-8200 (if dialing from outside the US, 001-(617)-856-8200) and purge the communication immediately without making any copy or distribution.

To the extent Brown Rudnick is a "controller" of the "personal data" (as each term is defined in the European General Data Protection Regulation (EU/2016/679) or in the UK's Data Protection Act 2018) you have provided to us in this and other communications between us, please see our privacy statement and summary here which sets out details of the controller, the personal data we have collected, the purposes for which we use it (including any legitimate interests on which we rely), the persons to whom we may transfer the data and when and how we intend to transfer it outside the European Economic Area.

*************************************************************************

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.