1

**<u>EXHIBIT 1</u>**

2

SETTLEMENT AGREEMENT

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

DocuSign Envelope ID: A7FBDE79-C4B1-48CF-87FB-BCFCE6214DCC

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of June __ 2024, by and among the following (collectively, "the Parties," and each, a "Party"): Cathy Yanni, trustee of the PG&E Fire Victim Trust ("FVT"), the Abram Plaintiffs (defined below, and, together with the FVT, the "Settling Plaintiffs") on the one hand, and Osmose Utilities Services, Inc. (collectively, "the Settling Defendants") on the other hand.

## RECITALS

This Agreement is entered into on the basis of the following facts:

A.      On January 28, 2021, John K. Trotter, Jr., as the then trustee of the FVT, filed a complaint against the Settling Defendants and others in that certain action entitled *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. ACRT Pacific, LLC, et al.;* San Francisco Superior Court Case No. CGC-21-589441 (the "*FVT* Action").

B.      On October 8, 2019, various plaintiffs filed a complaint against the Settling Defendants and others in that certain action entitled *Abram, et al. v. ACRT, Inc., et al.;* San Francisco Superior Court Case No. CGC-19-579861 (the "*Abram* Action").[1]

C.      The *FVT* Action and the *Abram* Action (collectively, the "Lawsuits"), were coordinated in the proceeding entitled *California North Bay Fire Cases,* Judicial Council Coordination Proceeding No. 4955 (the "JCCP").

D.      Without admitting any liability or wrongdoing whatsoever, the Settling Plaintiffs, on the one hand, and the Settling Defendants, on the other hand, now wish to settle and resolve all claims between them, whether known or unknown, under the terms and conditions specified herein.

E.      Where referenced herein, the "Northern California Wildfires" refers to all wildfires referenced in the complaint allegations set forth in the Lawsuits.

F.      Where referenced herein, the "Sulphur Fire" refers to the wildfire event that

---

[1] Those plaintiffs who remain named plaintiffs in the *Abram* Action as of the date of this Agreement shall be referred to hereinafter as the "Abram Plaintiffs."

4887-9738-3584.1

began just before or around the closing minutes of October 8, 2017 along Sulphur Bank Road off Highway 20 in Clearlake Oaks, and is inclusive of all of the areas burned as a result, as alleged in the Lawsuits.

G.  Where referenced herein, the "Cascade Fire" refers to the wildfire event that began just before or around the closing minutes of October 8, 2017 at or near 13916 Cascade Way in the city of Browns Valley in Yuba County and is documented under California Public Utilities Commission Incident No. E20171020-06.

## AGREEMENT

NOW, THEREFORE, in light of the foregoing Recitals which the Parties agree are incorporated herein as part of this Agreement, and in consideration of the representations, warranties, promises, and releases contained herein, the Parties agree to the following terms and conditions:

1.  SETTLEMENT PAYMENT.  Subject to the terms of this Agreement, the Settling Defendants shall pay or cause to be paid the total amount of FOUR MILLION, FIVE HUNDRED THOUSAND DOLLARS AND ZERO CENTS (US $4,500,000.00) (the "Settlement Payment"). The Settlement Payment shall be made in accordance with the instructions to be issued by the FVT to Settling Defendants following execution of this Agreement.

2.  TIME FOR PAYMENT; GOOD FAITH SETTLEMENT.  The Settlement Payment shall be paid or cause to be paid by the Settling Defendants no later than thirty (30) days after entry of an order by the Superior Court in the JCCP determining this Agreement to be a good faith settlement under section 877.6 of the California Code of Civil Procedure (the "Good Faith Order"). The Settling Defendants shall move for such determination promptly after execution of this Agreement by all Parties, and in no event later than July 19, 2024, and shall seek to have this motion heard on the first available hearing date. All of the Parties shall support the good faith settlement determination requested in such motion.

In addition, contemporaneous with filing the motion seeking the Good Faith Order, the Parties shall jointly request an order from the Superior Court finding that the terms of this Agreement resolve any and all claims or possible claims the Settling

4887-9738-3584.1

Plaintiffs may have against the Settling Defendants that arise out of or are in any way connected, directly or indirectly, with the Northern California Wildfires, including but not limited to the Sulphur Fire and/or Cascade Fire, and concludes the Settling Defendants' involvement in the JCCP. Should any action thereafter be filed by the Settling Plaintiffs against the Settling Defendants with respect to any claims arising out of the Northern California Wildfires, including but not limited to the Sulphur Fire and/or Cascade Fire, that are the subject of this Agreement, all of the Parties to this Agreement will support and cooperate with any motion filed by the Settling Defendants seeking to dismiss such action.

3.     DISMISSAL OF ACTIONS AGAINST SETTLING DEFENDANTS.  As a condition of making the Settlement Payment, the FVT shall first deliver or cause to be delivered to counsel of record for the Settling Defendants executed Requests for Dismissal ("RFDs"), with prejudice, as against the Settling Defendants, by all plaintiffs in the Lawsuits.  The executed RFDs shall be held in escrow by counsel of record for the Settling Defendants pending the Settling Defendants' payment of the Settlement Payment.  In the event the Settlement Payment is timely made in full and in accordance with this Agreement, counsel for the Settling Defendants shall file and serve the RFDs within three (3) business days thereafter.

4.     MUTUAL RELEASES.

a.     Except with respect to the obligations set forth in this Agreement, effective upon receipt by the Settling Plaintiffs of the Settlement Payment in accordance with Section 2 of this Agreement, the Settling Plaintiffs release and forever discharge each of the Settling Defendants and their current and former attorneys, parents, subsidiaries, affiliated companies, shareholders, members, agents, representatives, insurers, employees, officers, directors, partners, and owners, in each case in their capacity as such (collectively, the "Settling Defendants Released Parties"), from any and all claims, demands, causes of action, damages, debts, injuries, liabilities, accounts, costs, expenses, and liens, of any kind or nature, whether now known or unknown, fixed or contingent, suspected or unsuspected, which arise out of or are in any way connected, directly or indirectly, with the Northern California Wildfires, including but not limited to the Sulphur Fire and the Cascade Fire, the Lawsuits, the allegations contained in the

Lawsuits, or any allegations that could have been contained therein. For avoidance of doubt, the release set forth in this paragraph operates as a release by the FVT, and, by operation of Pacific Gas and Electric Company and PG&E Corporation's rights having been legally assigned to the FVT, release of the same claims by Pacific Gas and Electric Company, and PG&E Corporation, of any and all actual or potential claims arising out of the Sulphur Fire, whether or not heretofore asserted, against the Settling Defendant Released Parties. Such released claims include without limitation any and all claims against the Settling Defendants for full or partial indemnification or contribution and for the expenses incurred in connection with the Lawsuits or the JCCP. For further clarity, and notwithstanding any provisions of this Agreement, the FVT is not releasing its claims against any defendants in the *FVT* Action or the JCCP other than the Settling Defendants, and the Abram Plaintiffs are not releasing their claims against any defendants in the Abram Action or the JCCP other than the Settling Defendants.

     b.    Except with respect to the obligations set forth in this Agreement, effective upon payment of the Settlement Payment in accordance with Section 2 of this Agreement, each of the Settling Defendants hereby releases and forever discharges the Settling Plaintiffs, Pacific Gas and Electric Company, and PG&E Corporation and each of their current and former trustees, attorneys, shareholders, members, agents, representatives, insurers, employees, officers, directors, partners, and owners, from any and all claims, demands, causes of action, damages, debts, injuries, liabilities, accounts, costs, expenses, and liens, of any kind or nature, whether now known or unknown, fixed or contingent, suspected or unsuspected, which arise out of or are in any way connected, directly or indirectly, with the Northern California Wildfires, including but not limited to the Sulphur Fire and the Cascade Fire, the Lawsuits, the allegations contained therein, or any allegations that could have been contained therein.

     c.    Each of the signatories to this release expressly **waives** the provisions of Section 1542 of the Civil Code of the State of California, and acknowledges that such party is familiar with and understands that section, which provides as follows:

     **A general release does not extend to the claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her would have materially affected his or her**

4887-9738-3584.1

DocuSign Envelope ID: A7FBDE79-C4B1-48CF-87FB-BCFCE6214DCC

**settlement with the debtor or released party.**

In connection with such waiver and the releases in Sections 4.a., 4.b., and 4.c., each releasing party acknowledges that such party may hereafter discover facts in addition to or different from those which such party now knows or believes to be true, but that it is such party's intention hereby to fully, finally, and forever settle and release all such claims, matters, disputes, and differences, known or unknown, fixed or contingent, suspected or unsuspected, except as specifically set forth in this Agreement. The releases given herein shall be and remain in effect as full and complete releases notwithstanding the discovery or existence of any such additional or different facts.

d. Each of the releasing Parties covenants and agrees that such party will not make, assert, or maintain any claim, demand, action, suit, or proceeding that is released in this Agreement.

5. NO ADMISSIONS.

Nothing in this Agreement shall constitute or be construed as an admission by any of the Parties of any wrongdoing or legal liability of any kind. The terms and conditions of this Agreement constitute a compromise and settlement of disputed claims and an accord and satisfaction of contested matters.

6. NOTICES.

Any notice under this Agreement shall be made by both email and by personal delivery or overnight courier, addressed as follows or at any other street address (no post office boxes) as the Parties may later designate in writing:

To the FVT:

Cathy Yanni, Trustee of the Fire Victim Trust,
c/o
David Molton
DMolton@brownrudnick.com
Brown Rudnick LLP
7 Times Square
New York, NY 10036

with a copy to:

Khaldoun Baghdadi
kbaghdadi@WalkupLawOffice.com

4887-9738-3584.1

Case: 19-30088   Doc# 14515-1   Filed: 07/02/24   Entered: 07/02/24 13:29:06   Page 6 of 11

Walkup, Melodia, Kelly & Schoenberger
650 California St, 26th Floor
San Francisco, CA 94108

and

Sean Higgins
shiggins@andrewsthornton.com
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660

To the Abram Plaintiffs:

Gerald Singleton
gsingleton@singletonschreiber.com
Singleton Schreiber
591 Camino De La Reina #1025
San Diego, CA 92108

To the Settling Defendants:

Osmose Utilities Services, Inc.
c/o
Sharon C. Collier
sharon.collier@fmglaw.com
Freeman Mathis & Gary, LLP
1850 Mt. Diablo Blvd., Suite 510
Walnut Creek, CA 94596

7.    SUCCESSORS AND ASSIGNS.

This Agreement, together with the releases herein contained, shall be binding upon and inure to the benefit of the heirs, executors, administrators, personal representatives, successors in interest, and assignees of the respective Parties.

8.    ENTIRE AGREEMENT.

This Agreement contains the entire agreement and understanding concerning the subject matter hereof and supersedes and replaces all prior negotiations, proposed agreements and agreements, written or oral, unless otherwise expressly set forth herein. Each of the signatories hereto acknowledges and represents that it has not made, nor has its respective agents or attorneys made, any promise, representation, or warranty

whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce the other signatory to execute this Agreement, and acknowledges and warrants that it is not executing this Agreement in reliance on any promise, representation, or warranty not contained herein.

9.     AMENDMENTS AND MODIFICATIONS.

This Agreement may not be amended, modified, terminated, or superseded, other than by an instrument in writing, signed by the party against whom enforcement of the amendment, modification, termination, or supersession is sought.

10.     NO WAIVER.

A waiver by a party of a breach of any of the terms of this Agreement shall not be construed as a waiver of any subsequent breach of the same or any other term of this Agreement.

11.     GOVERNING LAW; VENUE.

This Agreement is to be governed by, and construed in accordance with, the laws of the State of California. Any action arising out of or relating to this Agreement shall be brought in a state or federal court of competent jurisdiction located in the County of San Francisco, State of California.

12.     ATTORNEYS' FEES.

Each of the Parties shall bear their own attorneys' fees, costs and expenses incurred in connection with the Lawsuits, the matters released by this Agreement, and the negotiation, documentation and execution of this Agreement. In the event any litigation or other proceeding is brought to enforce the terms of this Agreement, or in the event of any litigation or other proceeding involving, arising out of, or in connection with this Agreement, including any litigation or other proceeding in pursuit of claims released under this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees, expenses and costs.

13.     FURTHER DOCUMENTS.

The Parties agree to execute promptly all additional documents necessary to complete and effectuate this Agreement.

14.     DISCLOSURE OF SETTLEMENT OR SETTLEMENT AGREEMENT

The Parties agree not to publish, advertise, or report this settlement to any legal newspaper or jury verdict/settlement publications, or any other publications, nor create, author, or publish any advertisements or other public statements disclosing the names of the parties to this settlement, or the terms herein, except as required by law or court order. Under this Agreement, the FVT is, however, permitted to publish any required court filings on the FVT website without further statement, in a manner consistent with the FVT's publishing of previous settlement court filings. Further, the Parties agree that any public statement issued by any of the Parties concerning the Settlement Payment or this Agreement will include a statement that "the claims resolved by the settlement are allegations only and there has been no determination of liability. The [Settling Defendants] deny the allegations and deny any liability for the Sulphur Fire. The outcome of any litigation is uncertain, and all parties operated in good faith in coming to this resolution."

15.  REPRESENTATIONS AND WARRANTIES.

Each of the Parties to this Agreement represents, warrants, and agrees as follows:

a.  This Agreement in all respects has been voluntarily and knowingly executed by such party.

b.  Such party has had an opportunity to seek and has sought legal advice from legal counsel of such party's choice with respect to the advisability, including tax consequences, of executing this Agreement.

c.  Such party has made such investigation of the facts pertaining to this Agreement as such party deems necessary.

d.  The terms of this Agreement are the result of negotiations among the Parties and are entered into in good faith by the Parties in accordance with California law.

e.  This Agreement has been carefully read by such party and the contents hereof are known and understood by such party.

f.  Such party has not heretofore assigned or transferred any matter released by this Agreement or any part or portion thereof to anyone who is not a party to this Agreement. Such party agrees to indemnify and hold harmless the opposing Parties from any claims resulting from any assignment or transfer by such party, or asserted by any assignee or transferee from such party.

g.     Such party does not believe that any covenant, provision, or term of this Agreement is invalid for any reason.

16.     <u>INTERPRETATION</u>.

This document was mutually negotiated and drafted by the Parties. No provision of this Agreement shall be interpreted for, or against, a party because such party drafted or requested such provision.

17.     <u>HEADINGS</u>.

The headings on paragraphs and subparagraphs of this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.

18.     <u>COUNTERPARTS</u>.

This Agreement may be signed in counterparts, each of which shall be deemed an original for all purposes. Facsimile signatures to this Agreement shall for all purposes be deemed originals and shall bind the signatories delivering such signatures via fax or email.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first set forth above.

Dated:    6/21/2024

_____
Cathy Yanni, trustee of the PG&E
Fire Victim Trust

Dated:    06/21/2024

_____
Name:     Gerald Singleton
Firm:     Singleton Schreiber
Attorney on behalf of the Abram
Plaintiffs

Dated:    Jun 21, 2024

Osmose Utilities Services, Inc.

John Rigney
_____
John Rigney,
Chief Administrative and Legal
Officer
Osmose Utilities Services, Inc.

4887-9738-3584.1

Dated: 06/20/2024

Osmose Utilities Services, Inc.

By: _____

Name: Sharon C. Collier
Name: Nicholas R. O'Brien-Kovari
Firm:   Freeman Mathis & Gary
Attorneys for Osmose Utilities
Services, Inc.