1  BROWN RUDNICK LLP
   David J. Molton (SBN 262075)
2  (DMolton@brownrudnick.com)
   Seven Times Square
3  New York, New York 10036
   Telephone:   (212) 209-4800
4  Facsimile:   (212) 209-4801

5  BROWN RUDNICK LLP
   Joel S. Miliband (SBN 077438)
6  (JMiliband@brownrudnick.com)
   2211 Michelson Drive, Seventh Floor
7  Irvine, California 92612
   Telephone:   (949) 752-7100
8  Facsimile:   (949) 252-1514

9  *Attorneys for the Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**FIRE VICTIM TRUSTEE'S RESPONSE AND OBJECTION TO MOTION OF WILLIAM B. ABRAMS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY AND TRUST COMPLIANCE WITH COURT ORDERS**<br><br>[Relates to Docket Number 14474]<br><br>Hearing Date: July 30, 2024 |

Case: 19-30088   Doc# 14529   Filed: 07/15/24   Entered: 07/15/24 10:32:36   Page 1 of 20

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust ("**Trust**"), by and through her undersigned counsel, submits this response and objection (the "**Response**") to the *Motion of William B. Abrams Pursuant Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Trust Compliance with Court Orders* filed on June 4, 2024 [Dkt. 14474] (the "**Further Discovery Motion**") pursuant to the Court's *Order for Further Briefing on Motion of William B. Abrams Pursuant To Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Trust Compliance with Court Orders* [Dkt. 14512], and respectfully states as follows:

## PRELIMINARY STATEMENT

With the Trust having issued determinations for ***all*** submitted claims questionnaires, a light can finally be seen at the end of the long tunnel that Fire Victim Claimants have had to endure to obtain compensation from PG&E for their Fire-related injuries and losses. At this late date, Mr. Abrams is once again before this Court making unfounded allegations that diminish the Trust's remaining assets – otherwise available for distribution to Fire Victims – by requiring Trust professionals to respond to Mr. Abrams' motion to set the record straight. Simply put, there are no finally settled Assigned Rights and Causes of Action for which the Trust has not already filed and posted all required disclosures in accordance with the prior directions and orders of this Court. Further, there is no settlement of any Assigned Rights and Causes of Action contemplated that would be inequitably distributed to Fire Victim Claimants.

As with the majority of his prior motions, the Further Discovery Motion is founded upon misunderstanding, misinterpretation, and ignorance of the facts of this case, the alleged issues, and the applicable law. Despite the efforts of the Trust and its professionals in addressing issues regularly raised by Mr. Abrams out of Court, Mr. Abrams chooses to file irresponsible pleadings rather than ask questions of Trust counsel with whom he has regularly engaged. This ongoing pattern distracts the Trust from focusing on finalizing distributions to his fellow Fire Victim Claimants. Mr. Abrams represents only his own interests in his many appearances before this Court, as the Court has recognized. *See* Dkt. 12682 at 8:11-15 (opining that the "comprehensive sweeping and broad form

1

of request of discovery" requested by Mr. Abrams in 2022 was "inappropriate for a variety of reasons, not the least of which is that Mr. Abrams is really acting on his own behalf and is not empowered to act on behalf of other fire victims"). Mr. Abrams's grandstanding should end so as to enable the Trust to complete the work with which it has been charged. The vast majority of Fire Victim Claimants would prefer that the Trust remain focused on completing its Court-assigned purpose, rather than spend time responding to unfounded accusations and conspiracy theories that do not benefit the Trust's beneficiaries.

## RELEVANT BACKGROUND

### The Chapter 11 Cases

1. On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors filed the Chapter 11 Cases to address the billions of dollars of damage and loss relating to the devastating 2015, 2017 and 2018 California fires and to provide compensation to wildfire victims.

2. On March 3, 2020, the Tort Claimants Committee filed a *Notice of Filing of Proposed Fire Victim Trust Agreement and Proposed Fire Victim Claims Resolution Procedures* [Dkt. 6049]. The proposed Fire Victim Trust Agreement attached as an exhibit to the Notice contained the requirement that "all holders of Approved Fire Victim Claims" execute a claimant release "as a precondition to receiving any payment on account of their Fire Victim Claims from the Trust." The proposed Fire Victim Claims Resolution Procedures contained a release provision that stated, "[b]efore receiving payment from the Trust, Claimants must submit signed releases in substantially the same form and content as the Claimant Release."

3. On June 19, 2020, the Debtors filed the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (together with all schedules and exhibits thereto, the "**Plan**"). The Plan, which, among other things, addresses the claims of more than 70,000 Fire Victim Claimants through the creation and funding of the Trust, was the product of months of vigorous and intense negotiations between various stakeholders and was overwhelmingly supported by Fire Victim Claimants.

4. As part of the consideration with which PG&E funded the Trust, PG&E assigned certain rights, claims and causes of action ("the Assigned Claims") to the Trust.

5. On June 20, 2020, the Bankruptcy Court entered the *Order Confirming Debtors' and Shareholder Proponent's Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8053] (the "**Confirmation Order**") and the Effective Date of the Plan occurred on July 1, 2020. Pursuant to the Plan and Confirmation Order, the Trust was established on the Effective Date. The confirmation of the Plan avoided costly and time-consuming litigation and implemented a Fire Victim Trust designed to ensure the most equitable and efficient payment of Fire Victim Claims.

6. Importantly, the terms of the Fire Victim Trust Agreement (the "**Trust Agreement**") and the Fire Victim Trust Claims Resolution Procedures (the "**CRP**," and together with the Trust Agreement, the "**Trust Documents**") were also the product of vigorous negotiations, including the resolution of objections lodged by Fire Victim Claimants ranging from individual claimants proceeding *pro se* to large corporate claimants with robust legal representation. Nothing in the Trust Documents was spared the close inspection and analysis of all parties and the careful scrutiny of this Court.

7. The final Trust Documents were contained in the *Ninth Supplement to Plan Supplement in Connection with Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* [Dkt. 8057] (the "**Ninth Plan Supplement**"). The Ninth Plan Supplement includes the Trust Releases, which, as noted above, are exhibits to the Trust Agreement. The Confirmation Order incorporates and approves the Ninth Plan Supplement.

**Mr. Abrams's Repeated Requests for Broad Discovery Under Rule 2004**

8. On May 23, 2022, nearly two years after the Effective Date of the Plan, Mr. Abrams filed the *Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Administration of the Fire Victim Trust* [Dkt. No. 12440] (the "**Initial Discovery Motion**").

9. The Court held a preliminary hearing regarding the Initial Discovery Motion on June 7, 2022. Pursuant to the Court's direction at the June 7, 2022 hearing, then-Trustee Trotter filed the *Objection of Fire Victim Trustee to Motion of William B. Abrams Pursuant to Fed. R. Bankr. 2004*

3

*for Entry of an Order Authorizing Discovery and Hearings Regarding the Administration of the Fire Victim Trust* [Dkt. No. 12527] (the "**Initial Discovery Objection**") on June 21, 2022 and contemporaneously filed a supplemental exhibit to the 2021 Annual Report providing additional detail regarding information contained in the 2021 Annual Report.

10. On July 6, 2022, Mr. Abrams filed the *William B. Abrams Reply to the Objection of the Fire Victim Trustee Pursuant to Fed. R. Bankr. 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Administration of the Fire Victim Trust* [Dkt. No. 12593] (the "**Initial Discovery Reply**").

11. After considering the Initial Discovery Motion, the Initial Discovery Objection, the Initial Discovery Reply and the statements presented to the Court at the June 7, 2022 hearing, the Court entered the Initial Discovery Order on August 2, 2022. The Initial Discovery Order denied the Initial Discovery Motion in part and granted it in part by, *inter alia*, directing the Trust to post a copy of the retention agreement pertaining to each third-party litigation firm retained by the Trust through the "request for proposal" interview process described in the Initial Discovery Objection. It should be noted that as a condition of their engagement by the Trust, the litigation firms retained by the Trust could not represent individual Fire Victims in prosecuting claims against the defendants that the Trust would be suing in connection with the Assigned Claims.

12. On August 18, 2022, Mr. Abrams filed the *Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New Evidence* [Docket No. 12766] (the "**Expanded Discovery Motion**") along with a supporting declaration [Dkt. No. 12767].

13. On August 24, 2022, Trustee Yanni filed a *Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved* [Dkt. No. 12871] (the "**Litigation Redaction Motion**"). On August 29, 2022, the Court entered the *Order Granting Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally* Resolved [Dkt. No. 12884] (the "**Litigation Redaction Order**"), granting the Litigation

4

Redaction Motion after *in camera* review of unredacted copies of all of the retention agreements subsequently filed on the Court's docket in response to the Initial Discovery Order.

14. On August 29, 2022, the Trust and the Reorganized Debtors filed the *Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, In Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust* [Dkt. No. 12887] (the "**Joint Extension Motion**"), the *Joint Ex Parte Motion to File Redacted Version of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, In Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust* [Dkt. No. 12889] (the "**Joint Redaction Motion**") and the *Declaration of Robin J. Reilly in Support of Reorganized Debtors and Fire Victim Trust's Joint Ex Parte Motion to Extend, In Part, Deadline to Comply with Order on Motion of William B. Abrams Authorizing Discovery Regarding Administration of the Fire Victim Trust* [Dkt. No. 12890]. On August 31, 2022 the Court entered orders granting both the Joint Extension Motion and the Joint Redaction Motion. [Dkts. No. 12898 and 12899].

15. On September 1, 2022, Mr. Abrams filed a *Motion for Reconsideration and Related Relief from the Order Granting Motion of the Fire Victim Trustee to File Redacted Versions of Certain Retention Agreements Until Litigation Related to Such Retention Agreements is Finally Resolved and Pursuant to Federal Rule of Civil Procedure 59(e)* [Dkt. No. 12916] (the "**Reconsideration Motion**") and supporting declaration [Dkt. No. 12917]. On September 6, 2022, the Court entered the Order on Motion for Reconsideration [Dkt. No. 12929] (the "**Reconsideration Order**").

16. On September 6, 2022, Trustee Yanni filed the *Fire Victim Trustee's Responses in Connection with the Court's August 2, 2022 Discovery Order* [Dkt. No. 12931] (the "**Initial Trust Discovery Disclosure Response**"), answering the Court's specific questions and providing copies of the requested retention agreements, temporarily redacted as authorized by the Litigation Redaction Order.

5

17. On September 15, 2022, Trustee Yanni filed the *Fire Victim Trustee's Disclosures Directed by September 6, 2022 Order on Motion for Reconsideration* [Dkt. No. 12972] pursuant to the Reconsideration Order.

18. On September 22, 2022, Mr. Abrams filed the *Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding Debtors' Acts, Conduct and Agreements That May Obstruct or Limit the Just and Fair Management of the Fire Victim Trust* [Dkt. No. 12995] (the "**PG&E Discovery Motion**") and the *Declaration of William B. Abrams in Support of the Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding Debtors' Acts, Conduct and Agreements That May Obstruct or Limit the Just and Fair Management of the Fire Victim Trust* [Dkt. No. 12996]. On September 26, 2022, the Court entered the *Order Directing Reorganized Debtors to Respond To Motion Filed by William B. Abrams*, directing the Reorganized Debtors to file any opposition they may have to the motion at Docket No. 12995 no later than October 12, 2022.

19. On September 27, 2022 the Court entered the *Order Denying Motion for Reconsideration* [Dkt. 13008], disposing of Mr. Abrams's complaints regarding the adequacy of the Trust's disclosures. In this Order, the Court reiterated that it had reviewed all redacted information in the Trust's discovery disclosures, explaining that "[t]he redacted portions of discovery promulgated by the FVT are specifically redacted to protect the interests of the FVT and would likely aid potential defendants if disclosed." Dkt. 13008 at 3:19-22. The Court further stated that it "remains satisfied that these temporary redactions are necessary for the benefit of the FVT, and the victim beneficiaries of the FVT. It will not second-guess the trustee's judgment on this issue." Dkt. 13008 at 3:24-27.

20. On September 29, 2022, the Reorganized Debtors filed the *Reorganized Debtors' Motion for Entry of an Order (I) Approving Settlements Resolving Disputes with Certain Insurers, and (II) Granting Related Relief* [Dkt. No. 13015]. Also on September 29, 2022, the Trust filed the *Fire Victim Trust's Notice of Filing D&O Settlement Agreement* [Dkt. No. 13020] in accordance with

6

the Initial Discovery Order, providing an unredacted copy of the Settlement and Release Agreement by and among the Trustee, certain former directors and officers of PG&E, and the Debtors.

21. On September 30, 2022, in accordance with the Initial Discovery Order, the Trust filed the *Fire Victim Trust's Notice of Filing D&O Firms' Engagement Letter* [Dkt. No. 13024], providing an unredacted copy of the Engagement Letter between the Trust and the law firms it engaged in connection with potential claims against certain former directors and officers of PG&E. Also, in accordance with the Initial Discovery Order, the D&O Settlement Agreement and D&O Firms' Engagement Letter Fire Victim Trust were posted in the Documents section of the public Fire Victim Trust Website on October 3, 2022.

22. On October 3, 2022, the Trust filed the *Objection of Fire Victim Trustee to Motion Of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New Evidence* [Dkt. 13035]. Objections to the Expanded Discovery Motion were also filed by Steven J. Skikos, Esq. [Dkt. 13036] and Former Fire Victim Trustee John K. Trotter [Dkt. 13039].

23. On October 5, 2022 Mr. Abrams filed a *Supplemental Statement in Support of the Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Hearings Regarding the Acts and Conduct of JAMS Neutrals Given New Evidence* [Dkt. 13046].

24. On October 21, 2022 the Court entered the *Memorandum Decision Regarding William B. Abrams' Requests for Discovery Under Federal Rule of Bankruptcy Procedure 2004* [Dkt. 13105] (the "**Discovery Memorandum Decision**") directing former Trustee Trotter, Trustee Yanni and the Trust to respond to the Expanded Discovery Motion in the limited nature described by the Court, explaining the Court's reasoning for denying the remainder of the Expanded Discovery Motion and denying the PG&E Discovery Motion outright. Also on October 21, 2022, the Court entered the *Order on William B. Abrams' Request for Discovery of Reorganized Debtors Under Federal Rule of Bankruptcy Procedure 2004* [Dkt 13106] and the *Order on William B. Abrams' Request for Discovery of Jams Neutrals Under Federal Rule of Bankruptcy Procedure 2004* [Dkt. 13107] denying the PG&E Discovery Motion and the Expanded Discovery Motion.

25. On October 26, 2022 Trustee Yanni filed the *Declaration of Cathy Yanni in Response to the Court's Directives in the Memorandum Decision Regarding William B. Abrams' Requests for Discovery Under Federal Rule of Bankruptcy Procedure 2004* [Dkt. 13126] and on October 28, 2022 Former Trustee Trotter filed the *Declaration of John K. Trotter in Response to the Court's Directives in the Memorandum Decision (Docket No. 13105) on Motion of William B. Abrams* [Dkt. 13128].

26. On February 10, 2023, the Trustee filed the *Fire Victim Trust's Notice of Final Resolution of Assigned Claims (*the "**McKinsey Settlement Notice**") in accordance with the Initial Discovery Order and the Litigation Redaction Order. The McKinsey Settlement Notice summarized the Trust's settlement of Assigned Rights and Causes of Action (the "**McKinsey Claims**") against McKinsey & Company, Inc. United States ("**McKinsey**") that were transferred to the Trust pursuant to the Plan. The McKinsey Settlement Notice included a complete copy of the settlement agreement between the Trust and McKinsey as Exhibit 1 and included an unredacted copy of the applicable engagement letter as Exhibit 2.

27. On February 14, 2023, the McKinsey Settlement Notice was posted in the Documents section of the public Fire Victim Trust Website in accordance with the Initial Discovery Order and the Litigation Redaction Order.

28. On March 9, 2023, the Trustee filed the *Fire Victim Trust's Supplemental Notice of D&O Settlement* [Dkt. 13502] in accordance with the Initial Discovery Order, providing an accounting of the costs, expenses, and attorneys' fees incurred in connection with the prosecution and settlement of the D&O Claims.

29. On March 9, 2023, the *Fire Victim Trust's Supplemental Notice of D&O Settlement* was posted in the Documents section of the public Fire Victim Trust Website in accordance with the Initial Discovery Order.

30. On March 10, 2023, the Trustee filed the *Fire Victim Trust's Notice of Final Resolution of Assigned Claims* (the "**WECI Settlement Notice**") [Dkt. 13606] in accordance with the Initial Discovery Order and the Litigation Redaction Order. The WECI Settlement Notice summarized the Trust's settlement of Assigned Rights and Causes of Action (the "**WECI Claims**") against Western Environmental Consultants, LLC, ArborMetrics Solutions, LLC, Trees, LLC, and

8

Utility Tree Service, LLC (collectively, the "**Settling Vegetation Defendants**") that were transferred to the Trust pursuant to the Plan. The WECI Settlement Notice included a complete copy of the settlement agreement between the Trust and the Settling Vegetation Defendants as Exhibit 1, and included a copy of the applicable engagement letter, redacted pursuant to the terms of the Litigation Redaction Order, as Exhibit 2.[1]

31. On March 10, 2023, the WECI Settlement Notice was posted in the Documents section of the public Fire Victim Trust Website in accordance with the Initial Discovery Order and the Litigation Redaction Order.

32. On April 27, 2023, the Trustee filed the *Fire Victim Trust's Supplemental Notice Regarding McKinsey Settlement* [Dkt. 13689] in accordance with the Initial Discovery Order and the Litigation Redaction Order, providing an accounting of the costs, expenses, and attorneys' fees incurred in connection with the prosecution and settlement of the McKinsey Claims.

33. On April 28, 2023, the *Fire Victim Trust's Supplemental Notice Regarding McKinsey Settlement* was posted in the Documents section of the public Fire Victim Trust Website in accordance with the Initial Discovery Order.

34. On June 6, 2023, the Trustee filed the *Fire Victim Trust's Supplemental Notice Regarding Settlement with Certain Vegetation Defendants* [Dkt. 13815] in accordance with the Initial Discovery Order and the Litigation Redaction Order, providing an accounting of the costs, expenses, and attorneys' fees incurred in connection with the prosecution and settlement of the WECI Claims.

35. On June 7, 2023, the *Fire Victim Trust's Supplemental Notice Regarding Settlement with Certain Vegetation Defendants* was posted in the Trust Documents and Documents Archive sections of the public Fire Victim Trust Website in accordance with the Initial Discovery Order

36. On July 2, 2024, the Trustee filed the *Fire Victim Trust's Notice of Final Resolution of Assigned Claims* (the "**Osmose Settlement Notice**") in accordance with the Initial Discovery Order and the Litigation Redaction Order. The Osmose Settlement Notice summarized the Trust's

---

[1] The Court reviewed an unredacted copy of the applicable VM Firms' Engagement Letter in connection with its consideration Litigation Redaction Motion.

settlement of Assigned Rights and Causes of Action against Osmose Utilities Services, Inc. ("**Osmose**") that were transferred to the Trust pursuant to the Plan. The Osmose Settlement Notice included a complete copy of the settlement agreement between the Trust and Osmose as Exhibit 1, and included a copy of the applicable engagement letter, redacted pursuant to the terms of the Litigation Redaction Order, as Exhibit 2.[2] As noted in the Osmose Settlement Notice, litigation has not yet been finally resolved with respect to certain other vegetation management entities, including The Davey Tree Expert Co., Davey Tree Surgery Co., and Davey Resource Group, Inc.

37. On July 2, 2024, in accordance with the Initial Discovery Order and the Litigation Redaction Order, the Osmose Settlement Notice and the Exhibits thereto were posted in the Trust Documents and Documents Archive sections of the public Fire Victim Trust Website.

**The Progress of the Fire Victim Trust Claims Program**

38. As July 15, 2024, the Trust has issued Determination Notices to **100%** of the 71,800 Fire Victim Claimants who have submitted claims questionnaires ("**CQs**") to the Trust. Determination notices have been accepted for more than ninety-nine percent (99.8%) of all submitted CQs, which has allowed the Trust to finalize the vast majority of Fire Victim Claims and pay $12.54 billion to holders of Fire Victim Claims as of July 15, 2024[3] based on the current *pro rata* percentage of 66%.

39. As of July 15, 2024 more than ninety-four percent (94.1%) of all eligible Fire Victim Claimants with submitted CQs have executed the Trust Releases and submitted them to the Trust, including Mr. Abrams and his family members.

**RESPONSE AND OBJECTION**

40. The Further Discovery Motion is another example of Mr. Abrams abusing his position as an ostensible party in interest to publicize unfounded conspiracy theories regarding the Trust, the Trustee, and the TOC without regard to the truthfulness of his allegations or the damage caused by

---

[2] The Court reviewed an unredacted copy of the applicable VM Firms' Engagement Letter in connection with its consideration of the Litigation Redaction Motion.

[3] The latest statistics can be found on the Fire Victim Trust website at https://www.firevictimtrust.com.

his unwarranted claims. While Mr. Abrams has not been shy about approaching Trust representatives or counsel with a myriad of questions about the Trust over the course of its existence, he has conveniently avoided such communication, or has rejected counsel's response that the Trust cannot disclose confidential and mediation privileged material (especially where, as here, any unwarranted disclosure could prejudice and injure the Trust in its negotiations), when he stands to gain attention by filing papers filled with sensational claims based on mere speculation, such as the Further Discovery Motion.

41. Mr. Abrams uses the Court's statement that "Federal Rule of Bankruptcy Procedure 2004 remains available as a vehicle for that exchange of information" as a basis for demanding further disclosure from the Trust without the context in which it was used by the Court.[4] The Further Discovery Motion alleges that there is "new evidence related to the 'acts and conduct' of Cathy Yanni, Trustee, Members of the Trust Oversight Committee and other Trust contractors and employees" but fails to provide any evidence that indicates any wrongdoing by the Trustee or any other Trust representative. Mr. Abrams cannot be allowed to use this Court as a platform for unfounded and blatantly false accusations.

### The Trust has not Removed or Altered Documents on the Fire Victim Trust Website to Hide Information From Fire Victim Claimants

42. The Further Discovery Motion states, without a scintilla of evidence, that the Trust has removed documents from the Fire Victim Trust website ("**FVT Website**") "to whitewash the actions of the Trustee or at a minimum to provide a false narrative to victims" [Dkt. 14474 at 9:15-17].

43. Contrary to Mr. Abrams's conspiracy theory, the FVT Website was revised and updated after Cathy Yanni became Trustee and instituted an expanded program of communication

---

[4] As this Court recognized in response to Mr. Abrams use of its phrase in his JAMS Discovery Motion, "[t]hese words are taken out of context: that exchange of information was specifically limited to "trust oversight and litigation activities; lobbyist activities; and administrative and litigation expenses." [Dkt. 13105 at 5:7-10] Once again, Mr. Abrams insinuates "that the court left open the door to a broad application of Rule 2004" that would allow discovery based on "an unfounded attempt to find some instance of wrongdoing because Mr. Abrams apparently believes it exists." *See* Dkt. 13105 at 5:11-12, 17-19,

with Fire Victim Claimants and their communities. As part of the website review and renovation, former Trustee Trotter's June 21, 2022 letter (the "**Trustee Letter**") and other of his letters and video addresses to Fire Victim Claimants were removed from the FVT Website on October 3, 2022.

44. The removal of former Trustee Trotter's letters and video communications from the FVT Website did not make them unavailable to Fire Victim Claimants or the general public, however. Mr. Abrams conveniently fails to acknowledge in the Further Discovery Motion that *Fire Victim Claimants and the public can still freely access the Trustee Letter on the docket for the Chapter 11 Cases*. As is the case for every letter and video posted to the FVT Website by former Trustee Trotter, the Trust filed a notice of the posting of the Trustee Letter, which is currently available to the public as the *Notice of Filing of Letter to the Fire Victims on Behalf of the Fire Victim Trust* at Dkt. 12528. *See* Dkt. 12528 at Exhibit A.

45. More importantly, there is nothing to "whitewash" with respect to the Trustee Letter. The full text and surrounding context of the line Mr. Abrams partially quotes from the Trustee Letter is: "Suits against entities who had contracted with PG&E to perform vegetation management have been filed regarding different Fires . . . They [the law firms prosecuting vegetation management claims on behalf of the Trust] will be paid only from any recovery they achieve for the Trust, so no Trust money is used to pursue these claims." In other words, and *consistent with all of the disclosures made by the Trust*, the law firms retained to pursue the vegetation management claims were or would be paid only if their litigation was successful in obtaining additional funds for the Trust, and their payment came (or will come) from the gross fund obtained prior to the net balance being transferred to the Trust.[5] *No litigation[6] attorneys' fees related to any vegetation management claims have been paid from the Trust corpus*. Moreover, the percentage fees that the firms pursuing

---

[5] Unrelated to the vegetation management claims, and in limited circumstances that are long concluded, law firms retained by the Trust to investigate the viability of Assigned Claims against certain large business management consultant institutions earned hourly compensation from the Trust. The only business management Assigned Claims that were determined to be profitable for the Trust to pursue were the McKinsey Claims, the settlement of which was disclosed as described in paragraphs 25-26 and 31-32, *supra*.

[6] From time to time, the Trust's general counsel, Brown Rudnick LLP and other of the Trust's staff have assisted the Trustee in managing the litigation and consulting on litigation matters. These fees and expenses are considered [general administrative expenses] of the Trust and are included in the Trust's annual report within the respective person or entity's budget.

12

vegetation management claims received (or may receive, for those claims not yet finally resolved) were negotiated by the Trust through a request for proposal process and, as a result, are generally lower than their standard rate. None approach 30% as Mr. Abrams alleges. The Trust has fully disclosed, in accordance with the terms of the Initial Discovery Order, the net benefit received by the Trust as a result of the settlement of every Assigned Claim action that has been fully resolved as of the date hereof other than the recent Osmose settlement that is currently subject to an accounting.[7]

46. The only statements regarding the Trustee Letter that "could reasonably be construed as false and/or misleading," as Mr. Abrams puts it, are those made by Mr. Abrams himself in the Further Discovery Motion, including the ridiculous claim that Former Trustee Trotter's announcement in the Trustee Letter of his retirement as Trustee "might also be the reason this letter and other documents were removed from the FVT document archive." [Dkt. 14474 at 10:2-3].

**The Court Has Already Ruled on Mr. Abrams's Objections
To the Trust's Disclosures Regarding the Retention of Outside Counsel**

47. The instant Motion is Mr. Abrams's attempt to relitigate his earlier claim that redacted information in certain engagement letters improperly conceals relevant information about the process by which the Trust retained outside counsel to prosecute the Assigned Claims. The Court has already ruled that "there is no redacted material propounded by the FVT that would shed any more light on [the RFP] process." [Dkt. 13008 at 4:25-27] The Court has further opined that it was "a doubtful proposition" that the Court has the authority to rule on Mr. Abrams's dissatisfaction with the RFP process. [Dkt. 13008 at 4:27-5:2]

48. In both the Trustee Letter and the *Fire Victim Trustee's Disclosures Directed by September 6, 2022 Order on Motion for Reconsideration*, the Trustee fully explained the process by which the Trust chose outside counsel to litigate all of the Assigned Claims on behalf of the Trust, identified all TOC members so engaged as outside counsel, and, in accordance with the Litigation

---

[7] As noted in the Osmose Settlement Notice, the Trust will file a supplemental notice disclosing the amounts of its costs, expenses, and attorneys' fees and disclosing the net benefit received by the Trust as a result of the Settlement Agreement, as it has done for every other Assigned Clam action that has been finally resolved.

13

Redaction Order, filed copies of the Court-required engagement letters in redacted form for **all** litigation involving the Assigned Claims.

49. For nearly two years, while Trust-retained counsel successfully prosecuted the majority of the Assigned Claims for the benefit of Fire Victim Claimants, resulting in the addition of over $249.5 million[8] to the Trust corpus, and the Trust disclosed the substance of all Assigned Claims settlements as directed by this Court, Mr. Abrams has chosen not to pursue his dissatisfaction with the RFP process before the Court. Now, with few Assigned Claims remaining shy of final resolution, Mr. Abrams renews his complaints at the expense of jeopardizing the final settlements of the remaining Assigned Claims.

50. Worse still, and once again without any basis other than unfounded conjecture, Mr. Abrams also alleges that the Trustee and TOC members might be involved in activities contrary to their fiduciary duties, based on an attorney-client communication that Mr. Abrams apparently obtained and misunderstood or misconstrued to fit his purposes. There are two simple answers to Mr. Abrams's latest conspiracy theory: First, the Trust has made all required disclosures. The Assigned Claim Mr. Abrams raises as evidence of some sort of illicit collusion by the Trust and TOC members is not finally resolved but is subject to confidential state court mediation. Second, the attorney-client communication Mr. Abrams holds out as a smoking gun of some sort is not what he imagines it to be.

**The Trust has Made All Required Disclosures**

51. As the facts recited above attest, the Trust has made extensive disclosures with respect to the settlement of the Assigned Claims. There is no further disclosure required by the Initial Discovery Order or otherwise that can be made by the Trust as of the date hereof because ***no other Assigned Claims have been finally resolved***.

---

[8] Pursuant to a pre-Trust settlement agreement between the Debtors, the Official Committee of Tort Claimants, and certain federal agencies that was approved by the Bankruptcy Court, the Trust was required to pay the first $117 million recovered from the Assigned Claims after professional fees and costs to the Department of Justice. *See Order Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 9019 (I) Approving Settlements with Federal and State Agencies of Governmental Agency Fire Claims, and (II) Granting Related Relief* [Dkt. No. 7399] at Ex. A, § 2.2(b).

14

52.     As the Court knows from its *in camera* review of unredacted copies of all engagement letters related to the prosecution of third-party claims on behalf of the Trust, there is nothing in the still-redacted engagement letters that raises any question of collusion or complicity by the Trust. The fact that there may be consortium agreements among law firms prosecuting the Assigned Claims on behalf of the Trust is not evidence of collusion or improper action by any firms. How a group of law firms divided litigation tasks among the firms within the group may be of interest to those defending against Assigned Claims, but it has no impact on the rights or interests of Fire Victim Claimants. Similarly, the manner in which such a group of law firms divides compensation earned after an accounting that determines the total compensation to be paid has no impact on the rights or interests of Fire Victim Claimants.

**Settled Actions and Disclosures**

53.     The Trust has settled four Assigned Claims thus far, resulting in the contribution of an additional $249.5 million[9] to the Trust's corpus.

54.     As set forth in paragraphs 8-36, *supra*, the Trustee has disclosed the substance of every final resolution of an Assigned Claim, including posting unredacted copies of every relevant retention letter not connected to ongoing litigation and providing a breakdown of fees, expenses, and the net benefit to the Trust for every settled Assigned Claim. There is no relevant information related to any fully resolved Assigned Claim that has not been made publicly available to Fire Victim Claimants on both the docket for the Chapter 11 Cases and the FVT Website.

**The Status of the Assigned Claims Related to the Davey Entities**

55.     As disclosed in the Osmose Settlement Notice, litigation has not been finally resolved with respect to certain other vegetation management entities, including The Davey Tree Expert Co., Davey Tree Surgery Co., and Davey Resource Group, Inc. (collectively, the "**Davey Entities**").

56.     It appears that Mr. Abrams obtained a client communication from Singleton Schreiber to certain of its clients. Gerald Singleton, who Mr. Abrams claims wrote the letter (though only a quote allegedly taken from the letter is provided) is a TOC member. However, neither Mr.

---

[9] *See* footnote 8, *supra*.

Singleton nor Singleton Schrieber is engaged by the Trustee with respect to any Assigned Claims, including claims against the Davey Entities. Given the Trustee's knowledge of the status of the Assigned Claims related to Davey Tree, it is clear that Mr. Abrams has taken that privileged communication out of context. The Trustee understands that the purpose of such a communication may have been to obtain client consent to enter into a settlement pursuant to Cal. Code Civ. Proc. § 664.6, with the Davey Entities with respect to that client's distinct and separate claim against the relevant defendant.

57. Contrary to the allegations in the Further Discovery Motion, the Trustee offers the declaration of Jeffrey M. Reisner, counsel to the Davey Entities, filed contemporaneously herewith. The Reisner Declaration affirms that the Assigned Claims against the Davey Entities are currently in mediation and have not been finally resolved at this time.

**Litigation of Claims Against the Davey Entities Involved Non-Trust Claims**

58. Under the Plan, the Trust ***only*** received certain rights and causes of action of PG&E against the Davey Entities. *See* Plan, Dkt. 8048 §1.8. The Plan did not and could not confer to the Trust the right to resolve, settle or extinguish claims held by third parties (i.e., Fire Victim Claimants) against non-Debtor co-defendants or alleged contributors to the Fires that destroyed their homes and lives. That was the law of this Circuit even before the U.S. Supreme Court's recent decision in *Harrington v. Purdue Pharma L.P*. *See Harrington v. Purdue Pharma L.P.*, Case No. 23-124 (Jun. 27, 2024). As further explained below, prior to and concurrent with PG&E's commencement of the Chapter 11 Cases, many Fire Victim Claimants, through their private attorneys, instituted suit against the Davey Entities seeking redress for the harm they are alleged to have caused. These claims are separate and apart from the Assigned Claims based on contracts that were held by PG&E and assigned to the Trust. Notably, at the time the individual plaintiff groups commenced their cases against third party defendants, including the Davey Entities, the TOC did not exist.

59. In connection with the resolution of the Trust's Assigned Claims, the Davey Entities and their insurers have understandably sought the resolution of ***all*** Fire-related claims against them. As a result, settlement negotiations have involved claims for which the Trust has no right of recovery. A brief explanation of these claims and the events that have taken placed with respect to their

16

resolution (all of which is a matter of public record, despite Mr. Abrams's allegations of collusion and secrecy) may further clarify the status of the Assigned Claims against the Davey Entities for the Court.

60. In the months following October 2017, hundreds of plaintiffs filed complaints against PG&E in various California superior courts alleging that PG&E's equipment had caused more than a dozen fires throughout Northern California. On January 4, 2018, Judge Curtis E.A. Karnow of the Superior Court for the County of San Francisco entered an Order Granting Petitions for Coordination and Staying Cases. Judge Karnow stood up Judicial Council Coordination Proceeding No. 4955 (JCCP 4955) to administer the California North Bay Fire Cases. On August 8, 2019, certain individual plaintiffs filed a complaint in Napa Superior Court naming a Davey entity as defendant in a lawsuit for damages caused by the Partrick Fire, one of the Fires defined in the Plan. On October 7 and 8, 2019, a number of groups of individual plaintiffs each filed separate complaints in San Francisco and Sacramento Superior Courts naming various Davey entities as defendants, alleging that these Davey defendants were liable for damages caused by a number of the North Bay Fires defined in the Plan.

61. Among the Assigned Claims PG&E assigned to the Trust were certain rights against the Davey Entities (the "**Davey Assigned Claims**"). To prosecute the Davey Assigned Claims, counsel for the Fire Victim Trust filed three complaints in San Francisco Superior Court, all of which named Davey entities as defendants, in January 2021. Judge Andrew Y.S. Cheng entered orders in May 2021, September 2021, and December 2021, effectively coordinating into JCCP 4955 all three of the Trust's lawsuits against the Davey Entities, along with all of the aforementioned individual plaintiff lawsuits. True and correct copies of Judge Chang's consolidation orders are attached hereto as **Exhibit 1**.[10]

---

[10] Exhibit 1 unquestionably refutes Mr. Abrams's ridiculous allegation that "the Davey Tree Litigation had not been consolidated" [Further Discovery Motion at 19:13], yet another example of Mr. Abrams misrepresenting facts to suit his illogical arguments.

17

62. In January 2023, the Trust filed a motion for summary adjudication in the JCCP to prevent Davey from enforcing contractual limitations on its obligations to indemnify PG&E.[11] Through that motion, the Trust sought relief from the JCCP Court to maximize the value of its potential recovery based on the Davey Assigned Claims. While the FVT's motion was under consideration, the Trust reached settlement with another group of defendants in the consolidated litigation, the Settling Vegetation Defendants. The Trust duly reported the WECI Settlement to this Court and posted the notice on the FVT Website, as described in paragraphs 20-30, *supra*.

63. Following extensive briefing by the Trust and the Davey Entities, the JCCP Court denied the Trust's motion to set aside Davey's contractual limitations of liability. The Trust and the individual plaintiff groups in the JCCP with claims against the Davey Entities have been actively engaged in mediation with the Davey Entities since the JCCP Court's ruling. While in mediation with the Davey Entities, the Trust reached settlement with another defendant in the consolidated litigation, Osmose. The Trust duly reported the Osmose Settlement to this Court and posted the notice on the FVT Website, as described in paragraphs 35-36, *supra.*

64. While the mediation with the Davey Entities includes both the Trust and the individual plaintiff groups, the individual plaintiff groups are pursuing claims unrelated to the Davey Assigned Claims. As such, the individual plaintiff groups are not bound by the contractual limitations of liability that stand to limit the Trust's recovery against Davey. Accordingly, any recovery by the individual plaintiff groups by Davey will be unrelated to and beyond the maximum amount that the Trust can recover for the Davey Assigned Claims. In other words, the Trust ***is not entitled to share in any recovery paid to the individual plaintiff groups by Davey***.

65. The matters are presently under confidential mediation. Mr. Abrams's mischaracterizations and use of this Docket to publicize them has threatened the successful completion of that mediation. The Trustee and her legal team have already spent considerable time and effort attempting to get the mediation back on track with parties who have been distracted by the

---

[11] The Trust sought a determination that the Trust was not bound by PG&E's contractual recovery limitation against the Davey Entities, which is less than the amount of the Davey Entities' insurance coverage.

18

| | |
|---|---|
| 1 | Further Discovery Motion. If the Trust reaches a final settlement with Davey, it will report the |
| 2 | settlement to the Court in accordance with its disclosure obligations. |

### The Trust has not Engaged in Further Lobbying Efforts Regarding AB 1054

66. The Further Discovery Motion resurrects Mr. Abrams's earlier allegations regarding the Trust's lobbying efforts. The Trust has already disclosed all such lobbying efforts in response to the Initial Discovery Order. Since the 2022 Trust disclosures, the Trust has not engaged in anything beyond a few phone calls to discuss the status of expanding AB 1054.

67. The Further Discovery Motion relies upon dated exhibits regarding activities by various groups including Up From the Ashes, all of which have no relation to the Trust. The Trust has not been involved in any lobbying efforts by any lawyers in their capacity as counsel to individual Fire Victims.

### CONCLUSION

For the reasons set forth herein, the Further Discovery Motion should be overruled in its entirety.

DATED: July 15, 2024					BROWN RUDNICK LLP

By: */s/ David J. Molton*
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:   (212) 209-4800
Facsimile:   (212) 209-4801

and

Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive
Seventh Floor
Irvine, California 92612
Telephone:   (949) 752-7100
Facsimile:   (949) 252-1514

*Attorneys for the Fire Victim Trustee*

19