BROWN RUDNICK LLP
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036
Telephone:   (212) 209-4800
Facsimile:    (212) 209-4801

BROWN RUDNICK LLP
Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612
Telephone:   (949) 752-7100
Facsimile:    (949) 252-1514

*Attorneys for the Fire Victim Trustee*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: <br><br> **PG&E CORPORATION,** <br><br> - and – <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☑ Affects both Debtors <br><br> * All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Case No. 19-30088 (DM) <br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **FIRE VICTIM TRUSTEE'S OBJECTION TO MOTION TO STAY PROCEEDINGS RE DISPUTED CLAIMS UNDER THE FIRE VICTIM TRUST AGREEMENT & REVIEW OF FVT INTERPRETATION OF PLAN LANGUAGE** <br><br> [Relates to Docket Number 14491] <br><br> Hearing Date: July 30, 2024 <br> Hearing Time: 10:00 a.m. |

Cathy Yanni, in her capacity as the Trustee (the "**Trustee**") of the Fire Victim Trust (the "**Trust**"), by and through her undersigned counsel, hereby submits this Objection (the "**Objection**") to the *Motion to Stay Proceedings Re Disputed Claims Under the Fire Victim Trust Agreement* [Docket No. 14491] (the "**Motion**") filed on behalf of Julie Poincenot, Patrick Doolittle, Megan Van Mater Davidson and Paul Lore (collectively, "**Movants**") on June 20, 2024 seeking to have this Court prevent the Trust from issuing a final determination of Movants' Fire Victim Claims. In support of this Objection, the Trustee respectfully states as follows:

## RELEVANT BACKGROUND

1. Timely proofs of claim were filed on behalf of each of Movants, all of which were channeled to the Trust pursuant to Section 4.26 of the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. No. 8048] (together with all schedules and exhibits thereto, the "**Plan**").

2. Claims Questionnaires were submitted on behalf of each of Movants between February 2021 and May 2022, each reporting a loss location well beyond the CAL FIRES-determined perimeter (the "Fire Perimeter") of the Fire claimed to be the cause of the asserted injuries. In the aggregate, Movants' Claims Questionnaires include claims for Real and Personal Property, Emotional Distress – Zone of Danger, Emotional Distress – Nuisance, Personal Injury, Personal Income Loss, and Other Damages. All of Movants lived and worked in the Bay area at the time of the Fires. None of Movants had evacuated from or sheltered-in-place as a result of any Fire. None had property within any Fire Perimeter. As a result, the Trust issued Determination Notices in April 2023, denying each of Movants' claims, including for the reason that they occurred outside the applicable Fire Perimeter. As no further information or documents could "cure" the fact that the loss location for each Movant was not within any Fire Perimeter, the Trust did not issue deficiency notices requesting Movants' submit additional documentation.

3. At counsel's request, representatives from the Trust's claims administration team, including Eric Kennedy, Esq., the Trust's Personal Injury consultant, held a telephone conference with Movants' counsel Brad Bowen and Lisa Manoogian in July 2023. During the call, the Trust representatives explained both (1) the Trust's application of the Fire Perimeter to Personal Injury

1

claims evaluations generally and specifically as to Movants' claims and (2) the general and specific causation issues as to each of Movants' Personal Injury claims.

4. Movants each requested reconsideration of all of their claims pursuant to the Dispute Resolution provisions of the Fire Victim Claims Resolution Procedures (the "**CRP**") in August 2023. Counsel for Movants requested additional time before the Trust issued Reconsideration Determination Notices with regard to Movants' claims.

5. On March 1, 2024, after reviewing all new documentation submitted through the end of February, the Trust issued Reconsideration Determination Notices to each of Movants, maintaining the prior denials, including citing the occurrence of the asserted injuries outside of the applicable Fire Perimeter.

6. Movants each appealed their Reconsideration denials pursuant to the Dispute Resolution provisions of the CRP in April 2024. In accordance with the CRP, an Appeals Neutral was appointed, and Movants appeared through counsel at a joint hearing before the Appeals Neutral on June 14, 2024.

7. As the CRP provides that Appeals are considered *de novo* and allow new evidence to be presented, the Appeals Neutral and Trustee are not bound by the considerations and framing of the initial Determination Notice or the Reconsideration Determination Notice. Instead, they review the case as if it is being presented for the first time, addressing all issues on Appeal.

8. After considering each Appeal based on all items submitted by each of Movants through the close of the Appeal hearing, the Appeals Neutral submitted her recommendations with respect to each of Movants' claims to the Trustee on July 12 and 13, 2024.

9. In the normal course of the Trust's claims administration process, the Trustee duly considered the recommendations of the Appeals Neutral in the Appeals Determinations for each of Movants and issued Trustee Determinations to each of Movants on July 15, 2024. In accordance with the CRP's charge that the Trustee's final and binding decision must ensure that all Fire Victim Claims are treated equitably, the Trustee denied each of Movants' claims, both because the asserted injuries occurred outside the applicable Fire Perimeter, and because Movants did not establish their asserted injuries were caused by any Fire. For example, as to the Personal Injury claims, the evidence

presented by Movants through the close of the Appeals hearing did not support a finding of general or specific causation as required to establish that any Fire was a substantial cause of Movants' blindness.

10. As of July 15, 2024, the Trust had issued Determination Notices to 100% of the 71,800 Fire Victim Claimants who have submitted claims questionnaires ("CQs") to the Trust. Determination Notices have been accepted for more than ninety-nine percent (99.8%) of all submitted CQs, which has allowed the Trust to finalize the vast majority of Fire Victim Claims and pay $12.54 billion to holders of Fire Victim Claims as of July 15, 2024[1] based on the current pro rata percentage of 66%. Also as of July 15, 2024, more than ninety-four percent (94.1%) of all eligible Fire Victim Claimants with submitted CQs have executed the Trust Releases and submitted them to the Trust.

**OBJECTION**

11. While Movants assert that they "are not seeking to have the Court adjudicate the merits of the underlying claims," [Motion at 2:23-24] there is no other explanation for the relief requested in the Motion. By Movants own account, they are not entitled to any further review of their claims under the CRP, having already "pursued all avenues for review of the denial of [their] claims, including a hearing before an appointed neutral." Motion at 2:6-7. The relief requested in the Motion would require the Court to overrule the Trustee Determination, decide that the Fire Perimeter requirement applied to every other Fire Victim Claim should be overlooked with respect to Movants' claims, and "remand" them to the Trustee (*i.e.*, after granting Movants' Appeal) for a further reconsideration not granted to any other Fire Victim Claimant. The relief requested in the Motion cannot be granted *without* having the Court treat the Motion as an appeal of a final Trustee Determination.

12. Movants are openly attempting to skirt this Court's prior rulings regarding its authority to review the Trust's final determinations of Fire Victim Claims.[2] They ask this Court to

---

[1] The latest statistics can be found on the Fire Victim Trust website at https://www.firevictimtrust.com.

[2] Stay Motion at 9:9-12. ("This motion is brought concurrently with an Application for Order Shortening Time for
(footnote continued)

3

intervene in the normal course of Trust's administration of their Fire Victim Claims without explaining how such intervention could be warranted.

13. Movants exhausted the same Dispute Resolution process available to all other Fire Victim Claimants, including reconsideration of their initial Claims Determinations with the opportunity to submit additional documentation, and *de novo* review by an Appeals Neutral, once again with the opportunity to submit additional documentation for consideration. Unsatisfied with their results, Movants now ask the Court to order the Trustee to give them one more chance, this time without having to satisfy the most basic of the eligibility requirements applicable to every other Fire Victim Claimant.

14. Although Movants agree that the Trustee Determinations of their claims are final and not appealable, they nevertheless allege that they deserve an appeal to the Court because they believe that the Trust's requirement—of all Fire Victim Claimants—that claimed losses occur within the Fire Perimeter of the applicable Fire is an "improper and arbitrary eligibility criteria." Because Movants seek special treatment compared to all other Fire Victim Claimants, the Trustee requests that the Court sustain this Objection and deny the Motion in full.

**The Court Does Not Have Jurisdiction to**
**Interfere in the Trust's Administration of Claims**

15. As the Court instructed during the June 26, 2024 hearing, the Trustee will focus first on whether this Court has "any jurisdiction at all to do anything." Jun 26, 2024 Hr'g Tr. at 12:5-6. The short answer to this question is no.

16. The heart of the matter brought before the Court here is that Movants do not like the Trust's determination of their claims. While they assert that the Trust has treated their claims unfairly, Movants have taken full advantage of every tier of dispute resolution available to them, uploading multiple supporting documents throughout the Appeal process, and the Trust has responded by fully considering every argument and submission they have put forth during the

---

Hearing on this motion due to the June 14, 2024 deadline to complete the hearing before the neutral and the impending issuance of the Trustee's Final Determination under the CRP, after which time Movants may have no further recourse for reconsideration of the Claims.")

4

process. The relief requested by Movants flies in the face of the Plan, the *Order Confirming Debtor's and Shareholder Proponent's Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* [Dkt. 8053] (the "**Confirmation Order**"), the Fire Victim Trust Agreement (the "**Trust Agreement**"), and the CRP.

17. The Plan provides in Section 6.7(a), "In accordance with the Plan, the Confirmation Order, the Fire Victim Trust Agreement and the Fire Victim Claims Resolution Procedures, the Fire Victim Trust shall, among other tasks described in this Plan or the Fire Victim Trust Agreement, administer, process, settle, resolve, liquidate, satisfy, and pay all Fire Victim Claims." In addition, the Trustee has been vested with the authority and power to administer, object to, or settle Fire Victim Claims and to make distributions to holders of Fire Victim Claims in accordance with the terms of the Plan and the Trust Agreement. Plan § 6.8 (b). There are no restrictions of any kind in the Plan on the methods by which the Trust may process, review, analyze or determine Fire Victim Claims.

18. The Trust Agreement provides: "The Claims Administrator shall have reasonable discretion in the means and methods in carrying out the duty of resolving Fire Victim Claims consistently with the CRP." Trust Agreement § 2.3. The Trust Agreement further grants the Claims Administrator, in conjunction with the Trustee, "the power and obligation to evaluate, disallow, resolve, settle, and approve any and all Fire Victim Claims in accordance with the CRP without the need to seek the approval of the Bankruptcy Court for any actions taken with respect to the determination of Fire Victim Claims." Trust Agreement § 2.3(b)(i).

19. The Court has recognized that "there is no recourse in this court for any dissatisfied Fire Victims Claimants aside from those who specifically preserved the right to do so." *Memorandum Regarding Recent Correspondence From Fire Victim Claimants* [Dkt. No. 14156]. Movants are not among those who are listed in footnote 7 to Paragraph 18(k) of the Confirmation Order as having explicitly preserved the right to judicial review. Movants did not ever object in any way to the provisions in the Plan, the Fire Victim Trust Agreement or the CRP that govern the review and determination of Fire Victim Claims. In fact, counsel for Movants is a member of the Trust Oversight Committee. Movants did not appeal the Confirmation Order on any basis. As such, Movants do not have standing to prosecute what amounts to an appeal of a final determination by the

5

Trust, and this Court does not have jurisdiction to consider Movants' improper appeal.

20. As the Court recognized where another Fire Victim Claimant tried to obtain a judicial appeal by claiming that Trust guidelines used in the determination of its claim were unfair, "[t]he court's authority to revisit determinations by the FVT for claimants *does not exist* for . . . any other PG&E wildfire claimants other than a handful whose claims have now been finally determined without the need for judicial intervention."[3] As in that case, Trust has issued final determinations to all of Movants. The Court does not have authority to revisit the Trust's final determinations of Movants' claims and so must deny the Motion.

**Even if the Court had Jurisdiction to Overturn the
Trustee Determination, There is no Basis For the Court To Do So**

21. Assuming that the Court has the authority to revisit the Trustee's final, non-appealable determinations of Movants' claims (which it does not have), the Movants' Personal Injury claims must be denied because Movants have not established that the Fires caused their blindness. In addition, as the Fire Perimeter requirement is a legitimate eligibility criteria that has been consistently applied to all Fire Victim Claims, the fact that all Movants assert loss locations well beyond the established Fire Perimeters prevents their claims from being eligible for compensation by the Trust.

**Movants Failed to Establish Causation for Their Personal Injury Claims**

22. The Motion requests that this Court "remand" consideration of their claims to the Trust for consideration of their claims substantively on the basis of causation, without regard to the Fire Perimeter. The Trust has considered causation as to all of Movants' claims through the *de novo* Appeal. The Motion also suggests that the Trust is not permitted to deny their claims based on causation unless the Trust first provides deficiency notices to each Movant and allows Movants to further address any deficiencies. This is incorrect. The CRP requires a deficiency notice when the Trust determines a claim is missing documents or information necessary for the Trust to fully evaluate the claim. CRP § VII.A. Conversely, where additional documentation would not materially change the Trust's determination, a claim is not "deficient" and there is no need to request additional

---

[3] *Amended Order Overruling Sayegh Brothers Motion* [Dkt. 14426] at 4:26-5:2 (emphasis added).

documents via a deficiency notice.

23. As the Motion recognizes, counsel for Movants received a one-on-one explanation of the causation issues with their claims from the Trust's Personal Injury consultant. This explanation, provided before Movants requested reconsideration, explained all grounds for the Trust's denial of the Personal Injury claims. In addition, in the course of the Appeals process, Movants' counsel received supporting memoranda further explaining the Trust's position with respect to the causation issues with their claims. Counsel for Movants has been provided with ample notice of every causation issue identified by the Trust and sufficient opportunity to address such issues. There is no legitimate basis on which the Court could find that the Appeals Neutral and the Trustee may not deny Movants' claims without a further opportunity for Movants to address substantive causation issues. Indeed, Movants' *Ex Parte Application for an Order Shortening Time to hear a Motion to Stay Proceedings re Disputed Claims Under the Fire Victim Trust Agreement* [Dkt. 14489] explicitly recognized that "Movants are satisfied with the conduct of appeals hearing as it relates to causation under the law." Dkt. 14489 at 4:14-15.

24. As instructed by the Trust Agreement, the Appeals Neutral conducted a *de novo* review of each of Movants' claims and submitted her Appeals Determination to the Trustee on July 12-13, 2024. After considering the Appeals Neutral's recommendations—including her recommendation that the Trustee deny each of Movants' Personal Injury claims—and carefully evaluating each of Movants' claims *de novo*, the Trustee denied all of Movants' claims. As to Movants' Personal Injury claims, each Trustee Determination explains that the documentation submitted by each of Movants—including medical records and testimony—failed to establish that the Fires caused Movants' blindness. Although the Appeals Neutral and the Trustee considered each of Movants' claims independent of other Movants' claims, and issued separate Trustee Determination Notices to each Movant, the following summary of the Trustee's final, non-appealable determinations with respect to Movants' Personal Injury claims addresses them as a group due to the similarity of the issues. In short, Movants' claims submission, even with the new documents and information submitted on Appeal, failed to establish general or specific causation.

25. It is important to note again that the CRP requires a *de novo* evaluation by the Appeals

7

Neutral and the Trustee. They have completed those reviews, and Trustee Determinations were issued to each of Movants on July 15, 2024. Those Trustee Determinations are final, binding, and non-appealable.

26. The Trustee Determinations issued to Movants include a robust explanation of the Trust's findings as to each claim and confirm that the Personal Injury denials are based solely on Movants' failure to establish general and specific causation.

27. Even if the Court had jurisdiction to overturn the Trustee Determinations and remand the claims to the Trust for re-evaluation without consideration of the Fire Perimeter, there would be no material effect on Movants' Personal Injury determinations. The claims would remain denied for failure to establish that wildfire smoke exposure was a substantial factor causing Movants' injuries. None of Movants established the requisite general causation link between wildfire smoke exposure and LHON, and none of Movants established that wildfire smoke exposure specifically caused their blindness.

28. Under California law, establishing medical causation is a two-step analysis that requires proof of both general causation and specific causation. With respect to Movants' Personal Injury claims, establishing general causation requires proof, primarily through medical and scientific literature, that exposure to wildfire smoke is capable of causing vision loss in persons with LHON. General causation almost always requires the use of epidemiology. Proving specific causation requires establishing that each of Movants was exposed to wildfire smoke, that the exposure level was comparable to or greater than levels in the epidemiological studies, and that the timing of onset of each Movant's injury was consistent with that experienced by those in the studies.

29. None of Movants were able to provide any epidemiology, animal, or lab studies relating to the causative relationship between wildfire smoke and LHON. Instead, Movants based their causation arguments on tobacco smoking studies, claiming that that that such studies were analogous. After the Appeal hearing, the Trustee considered Movants' arguments in coordination with the Trust's Personal Injury consultant. Relying upon the Personal Injury consultant's causation determination and reasoning that was previously shared with Movants' counsel, the Trustee found that each of Movants failed to establish causation. Similarly, none of Movants established a causal

link between wildfire smoke exposure and LHON generally, and none established that wildfire smoke exposure specifically caused his or her blindness. As a result, the Trustee accepted the Appeals Neutral's recommendations with regard to Movants' Personal Injury claims. Because none of Movants established that the wildfire smoke exposure was a substantial factor causing his or her injury, the Trustee denied their Personal Injury claims.

**The Fire Perimeter Requirement is a Legitimate Eligibility Criteria That Has Been Consistently Applied**

30. In accordance with the authority granted to the Trustee in the Plan and Trust Agreement to process, review, analyze and determine Fire Victim Claims, the Trust developed guidelines, consistent with the claims determination provisions of the CRP, to ensure the consistent consideration and determination of various types of Fire Victim Claims based on information provided to the Trust through the submission of Claims Questionnaires. The Court has previously held that the Trust's use of such guidelines is not contrary to fundamental bankruptcy procedures.[4]

31. Movants do not dispute a complex set of guidelines here, but a simple, fundamental, *objective* measure of whether a claim submitted to the Trust arises from a Plan-defined Fire. The Trust has set the perimeter for each Fire based on CAL FIRE's determination of that Fire's perimeter, which is perhaps the most widely known measure of the extent of a California wildfire's damage. The Trust has consistently required that claims relate to injuries and damages incurred within the Fire Perimeters to obtain compensation from the Trust.

32. As stated in the Preamble of the CRP, the first of the founding principles the CRP employs "to achieve maximum fairness and efficiency" is the application of *objective eligibility criteria*. The Debtors commenced their bankruptcy cases to resolve their liabilities resulting from specific wildfires, and the Plan does not authorize the Trust to compensate Fire Victim Claimants for injuries arising from any other incident or cause. As a threshold matter, then, a Fire Victim Claimant must be entitled to compensation from the Debtors as a result of their liability resulting from the Northern California wildfires defined in the Plan.

---

[4] *See Amended Order Overruling Sayegh Brothers Motion* [Dkt. 14426].

9

33. Movants allege that "there is no mention of a 'fire perimeter' or any other geographic boundary within the Eligibility Criteria." Motion at 11:9-10. This is inaccurate. Contrary to the allegations in the Motion, the FVT Eligibility Criteria expressly reference the Fire Perimeter as a basis for denying certain claims.

34. The Trust uses the Fire Perimeters as an objective means of determining whether claims arise from the asserted Fire, which is a fundamental requirement of the Plan. The Fire Perimeter has been considered with respect to *every claim reviewed by the Trust.* This has resulted in over 2,000 perimeter denials of Emotional Distress claims and over 400 perimeter denials of Personal Injury claims, including the Emotional Distress and Personal Injury claims asserted by Movants.

35. The Fire Perimeter requirement is not something that comes as a surprise to Movants' counsel. Forty-four (44) of the Trust's over 400 Personal Injury perimeter denials—10%—were issued to clients represented Movants' counsel. Forty (40) of these perimeter denials were accepted by Movant's counsel on behalf of *other* of their clients, beginning in November 2021. Counsel for Movants has never before disputed the Trust's use of the Fire Perimeters. If counsel for Movants truly believed that there is fundamental problem with the Trust's use of the Fire Perimeters, this matter would have been brought before the Court prior to this Motion.

**Use of the CAL FIRE Fire Perimeters is Neither Improper Nor Arbitrary**

36. Movants were all located outside out of the Fire Perimeter of any Fire at the time each allegedly sustained the injuries on which they base their claims. The loss location of one of Movants was eighteen (18) miles outside of the perimeter of the closest of the North Bay Fires alleged to be the cause of the asserted injuries, and the loss locations for rest of Movants was approximately one hundred thirty (130) miles beyond the perimeter of the Camp Fire claimed to be the cause of the asserted injuries. None of Movants was subject to an evacuation or shelter-in-place directive. None owned property within a Fire Perimeter. The Trustee does not owe any duty related to the administration of the Trust to claimants who are not eligible to be beneficiaries of the Trust. Indeed, the Trustee's fiduciary duties to eligible claimants requires her, with respect to the limited fund she administers, to be scrupulous in assessing and denying claims that are ineligible for distributions

10

from that limited fund under the documents governing the Fire Victim Trust.

37. As the successor to PG&E's liability for Fire Victim Claims, the Trust is charged with administering and providing compensation for injuries arising out of or resulting from certain Fires identified in the Plan. PG&E funded the Trust with a limited corpus based on PG&E's estimate of the Debtors' aggregate liability for all Fire Victim Claims. As the Trust has a limited fund from which to pay all eligible Fire Victim Claims, any distribution made on account of an ineligible claim necessarily comes from the funds available to pay all eligible Fire Victim Claims, which would be a clear breach of the duty of care owed to eligible Trust beneficiaries. As a result, it is imperative that the Trust only compensate holders of claims that indisputably arise out of, or are a result of, a Fire.

38. While California law may govern the value of the types of claims asserted by Movants, it does not dictate whether Movants' claims are compensable by the Trust. As this Court recently recognized, "[w]hatever California law may fix as the amount of any claim . . . what must be paid on that claim in this federal proceeding governed by bankruptcy law and principles need not be the same."[5]

**The Trust Has Consistently Applied the Fire Perimeter Requirement**

39. As noted above, The Trust has consistently applied the requirement that a claim's loss location must fall within the applicable Fire Perimeter for each of the nearly 255,000 claims the Trust has administered. The Trust has not altered its claims determination process any way, including the Fire Perimeter requirement, since the Trust was established on the Effective Date, more than four years ago.

40. Movants allege that "it is evident that the standards for eligibility for compensation under the FVT are being applied to claims in a non-uniform and discretionary manner, resulting in inconsistent awards for claimants that are similarly situated in terms of injury and causation." [Motion at 12:20-22]. This is simply not true. All the Fire Victim Claimants cited as examples of "non-uniform" application of the Fire Perimeter requirement in the Motion and in the Bowen Declarations [Dkts. 14490 and 14492] received distributions based on injuries that occurred within a

---

[5] *Amended Order Overruling Sayegh Brothers Motion* [Dkt. 14426] at 7:10-14.

1 | Fire Perimeter.

41. Unlike Movants, the Fire Victim Claimants held out as examples of the Trust's allegedly inconsistent application of the Fire Perimeter requirement all (a) were physically within an applicable Fire Perimeter while the Fire was burning and/or (b) had a home or other loss location physically within a Fire Perimeter. Their circumstances are not comparable to those of the Movants, who were not physically within and did not own any property within any applicable Fire Perimeter. The Trust has not enforced the Fire Perimeter requirement in an uneven or inequitable manner. The only issue is that Movants do not like the result.

42. Claimants ask the Court to order the Trustee to grant them an additional round of reconsideration for their claims "in accordance with the specifically stated terms of the Trust Agreement, the Eligibility Criteria, the CRP and the Confirmed Plan." As Movants themselves admit, they have already exhausted every manner of dispute resolution available under the CRP, all of which was undertaken in accordance with the specifically stated terms of the Trust Agreement, the Eligibility Criteria, the CRP and the Confirmed Plan. Movants have not been subjected to any inequity or unfair treatment that could justify granting them further review beyond what is authorized by the Plan, Confirmation Order, Trust Agreement and CRP.

//
//
//
//
//
//
//
//
//
//
//
//

12

# **CONCLUSION**

For the reasons stated herein, the Trustee respectfully requests that this Court sustain the Trust's objection, deny the relief requested in the Motion and grant the Trust such other and further relief as may be just.

DATED: July 16, 2024　　　　　　　　　BROWN RUDNICK LLP

By: */s/ David J. Molton*
David J. Molton (SBN 262075)
(DMolton@brownrudnick.com)
Seven Times Square
New York, New York 10036

And

Joel S. Miliband (SBN 077438)
(JMiliband@brownrudnick.com)
2211 Michelson Drive, Seventh Floor
Irvine, California 92612

*Attorneys for Fire Victim Trustee*