## **EXHIBIT C1**

5/17/2021 Notice of Submission of Case Coordination

See Seven TOC Members Representing FVT <u>AND</u> Certain Other Plaintiffs

Within Policy Limits Settlement Negotiations


See Exhibit 2, pg. 1-2, 4, 7, 21

See Addendum A, "Plaintiff's Executive Committee," pg. 1-3

1   MICHAEL A. KELLY (State Bar #71460)
    mkelly@walkuplawoffice.com
2   KHALDOUN A. BAGHDADI (State Bar #190111)
    kbaghdadi@walkuplawoffice.com
3   **WALKUP, MELODIA, KELLY**
    **& SCHOENBERGER**
4   650 California Street, 26th Floor
    San Francisco, CA 94108
5   Telephone:   (415) 981-7210
    Facsimile:    (415) 391-6965
6
7   ANNE ANDREWS (Bar No. 103280)
    aandrews@andrewsthornton.com
8   JOHN C. THORNTON (Bar No. 84492)
    jct@andrewsthornton.com
    SEAN T. HIGGINS (Bar No. 266888)
9   shiggins@andrewsthornton.com
    ROBERT S. SIKO (Bar No. 312856)
10  rsiko@andrewsthornton.com
    **ANDREWS & THORNTON**
11  4701 Von Karman Ave, Suite 300
    Newport Beach, California 92660
12  Telephone:   (949) 748-1000
    Facsimile:    (949) 315-3540
13
    **ATTORNEYS FOR PLAINTIFF JOHN K. TROTTER,**
14  **JR., TRUSTEE OF THE PG&E FIRE VICTIM TRUST**

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                       COUNTY OF SAN FRANCISCO

17

18  JOHN K. TROTTER, JR., Trustee of the        Case No. CGC-21-589441
    PG&E Fire Victim Trust,
19                                              **NOTICE OF SUBMISSION FOR**
                Plaintiff,                      **COORDINATION**
20
            v.                                  Action Filed:    January 28, 2021
21                                              Trial Date:      Unassigned
    ACRT PACIFIC, LLC;, ACRT, INC.,
22  DAVEY RESOURCE GROUP, INC.;
    DAVEY TREE EXPERT COMPANY;
23  DAVEY TREE SURGERY COMPANY;
    OSMOSE UTILITIES SERVICES, INC.;
24  and DOES 1 through 25, inclusive,

25              Defendants.

26

27          TO THE CLERK OF COURT AND TO ALL PARTIES AND THEIR

28  RESPECTIVE COUNSEL OF RECORD:

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**05/17/2021**
**Clerk of the Court**
BY: JUDITH NUNEZ
        Deputy Clerk

1    You are hereby notified that on January 4, 2018, the Honorable Curtis E.A.

2 Karnow, Judge of the San Francisco Superior Court and assigned Coordination Trial

3 Judge of Judicial Counsel Coordination Proceeding No. 4955 ("JCCP 4955"), entered

4 an Order Granting Petitions for Coordination and Staying Cases. A true and correct

5 copy of that Order is attached hereto as Exhibit 1.

6    On March 6, 2018, Judge Karnow entered Case Management Order No. 1 in

7 JCCP 4955. A true and correct copy of that Order is attached hereto as Exhibit 2.

8    You are hereby notified that on May 17, 2021, Petitioner John K. Trotter, Jr.,

9 Trustee of the PG&E Fire Victim Trust submitted a Stipulated Petition for

10 Coordination of Add-On Cases to JCCP 4955 (the "Petition") seeking coordination of

11 the present action. A true and correct copy of the Petition is attached hereto as

12 Exhibit 3.

13    Pursuant to California Rule of Court, Rule 3.544, the Coordination Trial Judge

14 may enter an order granting the Petition if no party files a notice of opposition within

15 ten days after service of the Stipulation.

16

17 Dated: May 17, 2021            WALKUP, MELODIA, KELLY & SCHOENBERGER

18

19                               By: _____

20                                    MICHAEL A. KELLY
                                      KHALDOUN A. BAGHDADI
21                                    Attorneys for PLAINTIFF JOHN K.
                                      TROTTER, JR., TRUSTEE OF THE PG&E
22                                    FIRE VICTIM TRUST

23

24

25

26

27

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2

NOTICE OF SUBMISSION FOR COORDINATION: CASE NO. CGC-21-589474

Case 19-30088    Doc 12215-1    Filed 04/21/22    Entered 04/21/22    Page 3 of 173

# EXHIBIT 1

FILED

San Francisco County Superior Court

JAN 4 - 2018

CLERK OF THE COURT
BY: _____
                    Deputy Clerk

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF SAN FRANCISCO

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.550] | Judicial Council Coordination Proceeding No.: 4955 |
| *California North Bay Fire Cases* | **ORDER GRANTING PETITIONS FOR COORDINATION AND STAYING CASES** |
| Included actions: | |
| *See appended list (Appendix B)* | |

**Procedural Background[1]**

Beginning on October 8, 2017, several fires started in northern California. Some merged with each other and some did not. Over 50 lawsuits have been filed seeking to hold PG&E Corporation and/or Pacific Gas & Electric Company (PG&E) liable.

On October 31, 2017, the *Harvell* Plaintiffs[2] filed a petition seeking to coordinate all actions arising out of what have been termed the North Bay Fires in the Superior Court, San Francisco County. Other plaintiffs have joined in this. On November 9, 2017, PG&E filed a petition[3] seeking to coordinate the actions arising out of the North Bay Fires in five clusters, with

---

[1] A plain English summary of this order is appended at Appendix A.

[2] The *Harvell* Plaintiffs include 107 plaintiffs spread across seven actions, six of which were filed in San Francisco County Superior Court and one of which was filed in Sonoma County Superior Court. Harvell Memorandum in Support of Petition for Coordination, 2.

[3] At the time PG&E's petition was filed, there were fifteen subject actions, including the actions subject to the *Harvell* petition. PG&E's Petition for Coordination ¶¶ 6(a)-(o). Of those actions, ten were filed in San Francisco, four were filed in Sonoma, and one was filed in Napa. *Id.* PG&E has subsequently filed two add-on petitions. On December 5, 2017, PG&E requested that 32 additional actions be added. Of these, eighteen were filed in San

1

proceedings to be held in the county where, assertedly, most of the damage was caused by the several underlying fires. PG&E asks that some of the cases be assigned to counties that, at least as of now, have no pertinent cases.

Following a directive from the Chair of the Judicial Council, the Presiding Judge of this court assigned me as the coordination motion judge. On December 1, 2017, I assigned the eight additional included actions contained in PG&E's petition to this coordination motion.

On December 1, 2017, the *Koven* Plaintiffs[4] filed a petition for coordination of the actions arising out of the Tubbs Fire in a separate coordinated proceeding in Sonoma County.[5] On December 8, 2017, the *Hay* Plaintiffs[6] filed their petition for coordination of all actions arising out of the North Bay Fires in San Francisco.[7] On December 11, 2017, the *Butler* Plaintiffs[8] filed a petition in support of the *Harvell* Plaintiffs' petition by which the *Butler* Plaintiffs requested their actions be coordinated in one proceeding in San Francisco. In a December 13, 2017, the *Olds* Plaintiffs[9] endorsed coordinating all actions in San Francisco. That day the Atlas Fire Plaintiffs[10] filed papers arguing that Atlas Fire should be assigned to a distinct coordinated proceeding in Napa County. A few days later Plaintiff Taylor Waldon filed papers

---

Francisco, eleven were filed in Sonoma, and three were filed in Napa. PG&E Notice of Submission of Add-Ons, 2-4. On December 15, 2017, PG&E filed a second add-on petition with nine additional actions. Of those, six were filed in San Francisco and one in Sonoma. PG&E's Second Notice of Potential Add-On Cases, 2-8.

[4] The *Koven* Plaintiffs include five individuals who filed a single action. *See* Koven Petition, 1-2. The *Koven* petition encompasses 37 actions, including twenty filed in San Francisco, sixteen in Sonoma, and one filed in Napa. *Id.* at 2-7. At argument, the Koven plaintiffs on reflection modified their written recommendation to have all the cases coordinated in one locale—Santa Rosa, Sonoma County.

[5] There is no order that formally consolidates the *Koven* petition with the present petitions. However, the *Koven* petition relates to the same cases and substantially mirrors one aspect of PG&E's proposal.

[6] The *Hay* Plaintiffs include fourteen plaintiffs spread across seven actions, and the *Hay* petition included 55 actions. This included actions already subject to the petitions filed by the *Harvell* Plaintiffs and PG&E.

[7] There is no order that formally consolidates the *Hay* petition with the present petition. However, the *Hay* petition relates to the same cases and substantially mirrors the *Harvell* Plaintiffs' proposal.

[8] The *Butler* Plaintiffs include nine plaintiffs, each of whom filed separate actions. Eight of the actions were filed in San Francisco. The remaining action was filed in Sonoma.

[9] The *Olds* Plaintiffs include a class action and approximately seven plaintiffs spread across two actions, both of which were filed in San Francisco. At argument I heard that at least one more class action is likely to be filed.

[10] The Atlas Fire Plaintiffs include 21 individuals and a winery, each of whom suffered damage from the Atlas Fire, which occurred primarily in Napa County.

2

to have the Tubbs Fire cases coordinated as a separate proceeding in Sonoma, and Plaintiff Valerie Evans filed papers agreeing with PG&E's '5 cluster' argument. On December 20, 2017, the Subrogation Insurers[11] filed a brief in support or a single coordinated proceeding in San Francisco, as did the *Benham* Plaintiffs[12] on December 22, 2017.

On January 2, 2018 I heard argument on certain petitions for coordination.

## Cases At Issue

After the Chair of the Judicial Council ordered the appointment of a coordination motion judge, a variety of filings revealed further cases subject to coordination. Some of those were potential add-on cases noticed December 5 and 15, 2017, others the subject of petitions or responses to petitions filed between December 12 and 29, 2017, and yet others just listed as potential add-ons. These are all listed as such in Appendix B to this order, in a listing created by PG&E at my request. My review of the papers and argument does not suggest that any of these cases should be treated differently from the original included actions, e.g., those designated by orders of the Chair of the Judicial Council dated November 13 and 27, 2017, and accordingly my order applies to each case listed in Appendix B below. CRC 3.531(b). If a party contends that it had insufficient notice of the coordination and is not properly an add-on case, it may file a motion before me not later than January 24, 2018, and thereafter should bring its concerns to the attention of the coordination trial judge assuming one is appointed.

## Discussion

Coordination is governed by C.C.P. §§ 404 and C.C.P. § 404.1 *et seq.* See also CRC 3.520 *et seq.* See generally *Ford Motor Warranty Cases*, 11 Cal.App.5th 626, 629 (2017). All

---

[11] The Subrogation Insurers had filed a total of three complaints as of the date of their brief.
[12] The *Benham* Plaintiffs include 78 plaintiffs spread over six actions.

3

parties correctly agree (i) the actions are complex, and (ii) coordination is appropriate. The only issue is whether there should one or more coordinated proceedings. CRC 3.530.

A.  *Predominance of common questions of law or fact.* Parties favoring a single proceeding argue that the cases will focus on PG&E's high level policies and its preparedness for weather events such as the high winds present in the region when the fires started on October 8, 2017 or shortly after.[13] Parties favoring separate proceedings argue that the cases depend on the precise mechanism causing a given fire.[14]

(1) *Common issues.* These include PG&E's policies and practices, including those regarding (a) the electrification of lines during high wind conditions, (b) the sorts of maintenance required of vegetation and of lines and poles; (c) training practices that apply to the multiple PG&E inspectors responsible for various types of maintenance. All the fires started in the same region under the same or similar (high wind) weather conditions. There is likely to be a substantial overlap as among the PG&E witnesses and documents, as well as the experts, as among all the cases.

(2) *Individual issues.* There are fire-specific variations in the facts to be adduced, such as the mechanism that caused each fire, and the conduct of third parties that may have contributed to each fire. It is possible that a given set of general policies may be found reasonable with respect to one fire and negligent with respect to another, given the differing circumstances, also suggesting individual issues. We do not now know if fire-specific discovery will track PG&E's 5 fire proposal, or some other pattern, because it may be that what we now term one fire will have multiple ignition sources presenting multiple factual inquires; indeed PG&E recommends

---

[13] Harvell Memorandum, 7-8; Joinder, 5; Hay Memorandum, 5-7; Olds Response, 5-6, 8; Subrogation Plaintiffs Memorandum, 3-5, 8-10; Harvell Opposition, 3.

[14] PG&E Memorandum, 9-10, 14-15; Koven Memorandum, 8; Schulz Declaration in Support of Koven Memorandum ¶¶ 19-21; Atlas Fire Plaintiffs Response, 6-8.

4

that at least one of its 5 proceedings *include multiple fires*. So we do not know if adopting

PG&E's five part division will or will not help keep these detailed factual inquires distinct, or to

what extent.[15] Nor do we know, at this stage, if a fire such as the Atlas Fire had one or more

ignition sources.

There are of course a series of other individual issues, no matter how we slice up the

cases: each plaintiff has unique damages, for example. Such factors do not favor one, three, or

five coordinated proceedings.

(3) *Predominance of common factors*. We can predict common discovery and motion

practice across all of the fires relating to PG&E's policies and practices, and common legal

issues relating to inverse condemnation and other matters. So there are benefits that can only be

achieved through a single coordinated proceeding. A single judge can oversee a single discovery

plan applicable to all of the fires, including depositions, admissions, and documents, and ensure

for example relevant items are deemed produced as to all pertinent cases. The single judge can

create multiple tracks—perhaps 5, if PG&E is right—to accommodate the track-specific

discovery that needs to be done, involving only the parties and counsel interested in those facts.

The present matters are reminiscent of the *Ford Motor Warranty Cases*. There, the

"Lemon Law" cases involved a common transmission system installed in two different models of

cars over several model years by a single manufacturer. *Ford Motor Warranty Cases*, 11

Cal.App.5th 626, 629 (2017). There were common discovery issues regarding e.g., the design

and modification of the transmission at issue, in addition to individualized facts that required

review at trial. 11 Cal.App.5th at 641-43. Here, each of the fires shares, at least at the pleading

stage, a common core allegation: PG&E's alleged lax maintenance and failure to prepare for a

---

[15] Nor by the same token do we know if, following other parties' suggestions, we sliced off the Atlas or the Tubbs fire, we would nevertheless have multiple ignition sources for each of those fires.

5

foreseeable weather event. As in the *Ford Motor Warranty Cases*, the fact that some individual issues must be resolved in each case, or separately as to specific fires, does not undercut the benefits of coordination.

Coordinating the claims into distinct proceedings based on the fire at issue will likely cause unnecessary procedural delays. Complaints may allege damages resulting from multiple fires in multiple counties or may simply be vague as to which fire caused damage.[16] Sorting each complaint, including ruling on anticipated motions to sever, into separate coordinated proceedings would result in unnecessary delay throughout the proceedings.

A final word on the delays feared by plaintiffs, such as those urging me to segregate the Atlas Fire cases for Napa county. This is a serious concern. Coordination can be clumsy, and there is always a risk that delays in one part of a coordinated litigation ramify across the cases. But the powers of the coordination trial judge are substantial, and include the ability to expedite a case or group of cases. *McGhan Med. Corp. v. Superior Court*, 11 Cal. App. 4th 804, 812 (1992).

Even were the Atlas Fire cases sent, for example, to Napa, it is likely that the Napa judge would then be required to coordinate common discovery (such as that against PG&E) with the other judges handling the other cases, indeed to the extent of avoiding, if possible, conflicting orders on discoverability, burden, proper topics for PMK depositions, and so on. All of which is to say that while the efficiency of one case may not be efficient for all, factors which may delay coordinated cases cannot be avoiding by peeling off one set of cases to e.g., Napa County.

B.    *Convenience of Parties, Witnesses, and Counsel.* The distances between the various counties involved is not so severe as to suggest this is a significant factor. San Francisco

---

[16] *See* Pitre Declaration in Support of Hay Petition, Ex. A at ¶¶ 1, 7, Ex. B at ¶¶ 1, 7, Ex. C at ¶¶ 1-2, 10-14; Ex. D at ¶¶ 1, 7; Ex. E at ¶¶ 1-2.

with its nearby international airport is somewhat more convenient than the counties to the north, but all are within reasonable driving distance, and the availability of Court Call further reduces the inconvenience for parties and lawyers residing in the North Bay. San Francisco is surely the most convenient location for PG&E, and plaintiffs' counsel representing the vast bulk of current plaintiffs also favor San Francisco, including for its convenience. The e-filing procedures in San Francisco, and the widespread availability of all e-filed documents, favors San Francisco above the rest of the nominated counties.

C.  *Relative Development of the Actions and the Work Product of Counsel.*  The cases have all just been filed.  This factor weighs in favor of coordination generally, but has no weight in determining whether to include all of the subject actions in a single coordinated proceeding or in several separate coordinated proceedings.

D.  *Efficient Utilization of Judicial Facilities and Manpower and the Calendar of the Courts.* A single coordinated proceeding will ensure one judge is apprised of the status of the litigation as a whole.  Other courts may well become involved, because even with proceedings coordinated in San Francisco, the coordination judge "is vested with 'whatever great breadth of discretion may be necessary and appropriate to ease the transition through the judicial system of the logjam of cases which gives rise to coordination.'"  *Ford Motor Warranty Cases*, 11 Cal.App.5th at 645.  So trials need not be held in one place.  *Id.* at 644.[17]  And a single forum avoids the specter of e.g., five judges coordinating not only all the cases before each of them but also with the other judges.

_____

[17] Even where the coordinated cases may not be tried in one forum, "coordination will enable the parties to consider stipulations of facts that need not be proven and other procedures to expedite the presentation of evidence, to obtain rulings on motions in limine, and to develop jury questionnaires, jury instructions, special verdicts, and interrogatories that may be used in future trials." *Ford Motor Warranty Cases*, 11 Cal.App.5th at 644.

- 7

E. *Disadvantages of Duplicative and Inconsistent Rulings, Orders, or Judgments.* This factor favors a single proceeding. There is a risk that inconsistent rulings and orders pertaining to general issues will result from splitting these actions into separate proceedings. Also, the five proceedings recommended by PG&E could implicate two separate appellate districts (although this could be avoided by my designation of a single appellate court).

F. *Likelihood of Settlement Without Further Litigation Should Coordination be Denied.* This factor suggests coordination, but not whether there should be one or more proceedings. As the facts develop, the parties may seek one settlement or settlement of some portion of the cases. This is true regardless of whether the cases are in one or (for example) five locations.

**Proper Superior Court For Coordination Proceedings**

San Francisco County is best equipped to handle a single coordinated proceeding. With one exception,[18] no party has proposed a single coordinated proceeding in another venue. This venue is most appropriate because: (1) Most of the cases at issue were filed in San Francisco County; (2) San Francisco County supports e-filing, whereas the other counties in which cases have been filed do not, or at least not to the same extent; (3) San Francisco County has a designated complex litigation department, whereas the other counties in which cases have been filed do not; and (4) San Francisco County is the most accessible option to individuals traveling from Southern California and out-of-state, and is not far removed from the North Bay counties.

**Proper Court to Exercise Appellate Jurisdiction Over Coordination Proceedings**

The First District Court of Appeal is most appropriate. San Francisco County is included within the First District. The only other counties where cases have been filed, Sonoma and Napa, are also within the First District.

---

[18] See above note 4.

8

**Stay**

      PG&E requests a stay pending coordination. PG&E Memorandum, 18-19. C.C.P. § 404.5. Plaintiff Valerie Evans opposes the request, arguing that she has served narrow time-sensitive discovery. Evans Response, 1-2. At argument I stated my tentative view that a stay was appropriate, and no party argued to the contrary.

      The request is granted. A limited (and not general) stay is imposed: discovery, motion practice, and the obligations to respond to complaints and cross complaints are stayed pending further order of the coordination trial judge.

**Conclusion**

      The petitions to coordinate are granted to the extent they seek coordination of the cases in a single county, and are otherwise denied.

      I recommend the Superior Court of California, County of San Francisco, be the site for the coordinated proceedings and I designate the Court of Appeal, First District, as the reviewing court.

      The included cases are subject to the limited stay as described above.

      Petitioner PG&E is directed to serve a copy of this order on (1) all parties to the included coordinated actions, and (2) the clerk of each court for filing in each included action, and otherwise as required. CRC 3.529.

DATED: January 4, 2018

_____
Curtis E.A. Karnow
Judge Of The Superior Court
Coordination Motion Judge

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page 13 of 173

## Appendix A

*Plain English Summary*[19]

As a result of the so-called "North Bay Fires" many hundreds of lawsuits have been filed against PG&E, which is accused of being legally responsible for the damage caused by those fires. Many more cases will probably be filed. Most of the cases were filed in San Francisco, because that's where PG&E has its offices. But other people brought cases in other counties such as Napa and Sonoma.

Under California law, people involved in related cases can ask a court to assign all the cases to one judge. This is termed coordination. Coordinated cases usually go through pretrial procedures together, but they may or may not go to trial together. Even if cases are coordinated in one county, individual cases could go to trial in other counties, such as the county where they were originally filed.

Some of the people who brought these cases want them handled closer to where they live, such as Napa, Sonoma, and other counties. PG&E thinks it's best to divide up all the cases and send them out to 5 different counties, centered on where the various fires started. Others involved in these cases want all the cases coordinated in one county, San Francisco.

This order recommends that the pretrial procedures for all the cases be in San Francisco, because that's the most convenient place for almost everyone, and because there are a series of fact and legal issues which are common to all the cases, which can therefore be handled once, as opposed to many—possibly conflicting—ways across the various counties.

After this order is filed, the Chair of the Judicial Council, who is the Chief Justice of California, will decide whether to accept or reject the recommendation on coordination.

---

[19] This is for the convenience of the lay reader and is not the court's analysis or decision.

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page 14 of 173

## Appendix B

Included Actions per November 13, 2017 Order by the Chair of the Judicial Council

| COURT | NUMBER | SHORT TITLE |
|-------|--------|-------------|
| Superior Court of California County of San Francisco | CGC-17- 561937 | Harvell et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17- 562172 | Berry et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562175 | Daniels et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562173 | Green et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562192 | Krause et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-561997 | O'Neal et al. v. PG&E Corporation et al. |
| Superior Court of California County of Sonoma | SCV-261436 | Heidingsfelder et al. v. PG&E Corporation et al. |

Additional Included Actions per November 27, 2017 Order by the Chair of the Judicial Council

| COURT | NUMBER | SHORT TITLE |
|-------|--------|-------------|
| Superior Court of California County of Napa | 17CV001224 | Evans v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-561983 | Schrock v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562246 | Tandrup et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562251 | Ruiz et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562320 | Omlin et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261490 | Hill v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261484 | Thomas et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261489 | Burton v. Pacific Gas & Electric Company et al. |

11

Actions included in PG&E Defendants' Notices of Potential Add-On Cases dated December 5 and December 15 2017

| COURT | NUMBER | SHORT TITLE |
|-------|--------|-------------|
| Superior Court of California County of San Francisco | CGC-17-562380 | Hollinger et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261513 | Hollenbeck et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562456 | Hay et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562457 | Jordan et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562458 | Wilson et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562460 | Silvas et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Napa | 17CV001284 | Animo L.P. v. PG&E Corporation et al. |
| Superior Court of California County of Napa | 17CV001292 | Amador et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261534 | Meyer et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261535 | Wilson et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261536 | Callagy et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261542 | Davenport et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562536 | Chaddha et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Napa | 17CV001293 | Langner et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562366 | Winkle v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562537 | Beugelmans et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562647 | Butler v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562648 | Perliss Estate Vineyards LLC v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562660 | Belon et al. v. Pacific Gas & Electric Company et al. |

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page 16 of 173

| COURT | NUMBER | SHORT TITLE |
|---|---|---|
| Superior Court of California County of San Francisco | CGC-17-562661 | Bowman et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562664 | Olson v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562665 | Tran v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562666 | Udell v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562667 | Wood v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562668 | Bubel v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562729 | Godfrey v. PG&E Corporation et al. |
| Superior Court of California County of Sonoma | SCV-261556 | Koven et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261558 | Clausen et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261564 | Carucci et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261581 | Turner v. PG&E Corporation et al. |
| Superior Court of California County of Sonoma | SCV-261587 | Reynoso et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261591 | Waldon v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562753 | Preimesberger et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562755 | Reynoso et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562791 | Olds et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562809 | Robertson et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-562815 | Goldberg v. PG&E Corporation et al. |
| Superior Court of California County of Sonoma | SCV-261599 | Andrews et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261602 | Appleton et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of Sonoma | SCV-261618 | Bevier et al. v. Pacific Gas & Electric Company et al. |

13

| COURT | NUMBER | SHORT TITLE |
|-------|--------|-------------|
| Superior Court of California County of San Francisco | CGC-17-562953 | Simmons et al. v. PG&E Corporation et al. |

Additional Actions Identified in Coordination Petitions or Responses Filed between December 12, 2017 and December 29, 2017

| COURT | NUMBER | SHORT TITLE |
|-------|--------|-------------|
| Superior Court of California County of Napa | 17CV001397 | Hagafen Cellars Inc. et al. v. PG&E Corporation et al. |
| Superior Court of California County of Napa | 17CV001398 | Ashworth et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-562990 | Bostan v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563006 | Rasouli et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563008 | Amaya et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563183 | United Services Automobile Association et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-563184 | State Farm General Insurance Company et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-563185 | California Fair Plan Association et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-563286 | Alves et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563288 | Hancock et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563290 | Andrew et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563292 | Pardini et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563293 | Benham et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563295 | Glabicki et al. v. PG&E Corporation et al. |

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page 18 of 173

Additional Potential Add-On Actions

| COURT | NUMBER | SHORT TITLE |
|---|---|---|
| Superior Court of California County of San Francisco | CGC-17-563134 | Holstine v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563135 | Burwell v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563136 | Atlas Peak Mountain Winery LLC v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563137 | Donzelli v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563138 | Jepsen v. PG&E Corporation et al. |
| Superior Court of California County of Sonoma | SCV-261692 | Bricker et al. v. Pacific Gas & Electric Company et al. |
| Superior Court of California County of San Francisco | CGC-17-563273 | Merjil et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563276 | Hancock et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563279 | Pardini et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563315 | Gilbert v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563316 | Kinney v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563317 | Cisneros v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563318 | Giannini v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563320 | Bellenger v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563322 | Malone et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563327 | Adkins et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563328 | Friedland v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563329 | Perez v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563330 | Hogan v. PG&E Corporation et al. |

15

| COURT | NUMBER | SHORT TITLE |
|---|---|---|
| Superior Court of California County of Sonoma | SCV-261723 | Ger Hospitality LLC v. PG&E Corporation et al. |
| Superior Court of California County of Napa | 17CV001454 | Patland et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563387 | Anderson v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563363 | McNeive et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563389 | Wasem et al. v. PG&E Corporation et al. |
| Superior Court of California County of Sonoma | SCV-261698 | Poundstone et al. v. PG&E Corporation et al. |
| Superior Court of California County of Sonoma | SCV-261701 | Gaytan et al. v. PG&E Corporation et al. |
| Superior Court of California County of San Francisco | CGC-17-563407 | Ortiz et al. v. Pacific Gas & Electric Company et al. |

16

# EXHIBIT 2

F I L E
San Francisco County Super[ior]

E-SERVICE
61766260
Mar 06 2018
03:18PM
File & ServeXpress

MAR 6 - 2018

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.550] | Judicial Council Coordination Proceeding No.: 4955 |
| ***California North Bay Fire Cases*** | **CASE MANAGEMENT ORDER NO. 1** |

I conducted a case management conference (CMC) February 27, 2018.[1]

There are five groups in this litigation: 1) Individual Plaintiffs, which include cases brought on behalf of persons and business entities; 2) Public Entity Plaintiffs; 3) Class Action Plaintiffs (together with the Individual Plaintiffs and the Public Entity Plaintiffs the "Direct Action Plaintiffs"); 4) Subrogation Plaintiffs; and 5) Defendants.

**ORGANIZATION OF PLAINTIFFS' COUNSEL**

    **A.**    **Individual Plaintiffs**

           **1.**    **Lead Counsel for Individual Plaintiffs**

The Court appoints the following lawyers as Individual Plaintiffs' Lead Counsel for those cases:

    Michael A. Kelly
    Walkup, Melodia, Kelly & Schoenberger
    650 California Street, 26th Floor
    San Francisco, CA 94108
    Tel: (415) 981-7210

_____

[1] The Department's User Manual may be found at <http://sfsuperiorcourt.org/divisions/civil/litigation>

- 1 -

mkelly@walkuplawoffice.com

Frank Pitre
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
fpitre@cpmlegal.com

Bill Robins, III
Robins Cloud LLP
808 Wilshire Boulevard, Suite 450
Santa Monica, CA 90401
Tel.: (310) 929-4200
robins@robinscloud.com

Lead Counsel for Individual Plaintiffs shall be members of, as well as authorize and direct the work of the Plaintiffs' Executive Committee and Individual Plaintiffs' Steering Committee for cases involving Individual Plaintiffs. Individual Plaintiffs' Lead Counsel shall also be responsible for coordinating the activities of the Direct Action Plaintiffs during pretrial proceedings, and in consultation and with the assistance of the Plaintiffs' Executive Committee, shall:

    a.    Appear before the Court and present the position of Individual Plaintiffs at all Case Management Conferences, Status Conferences, or other court ordered hearings;

    b.    Direct and coordinate the briefing and argument of all motions directed at or brought by Direct Action Plaintiffs generally;

    c.    Direct and coordinate the filing of opposing briefs and argue motions in proceedings initiated by other parties against Direct Action Plaintiffs' interests (except as to matters directed to specific individual plaintiffs and their counsel or a specific Plaintiff group);

    d.    Initiate and coordinate all discovery proceedings on behalf of Direct Action Plaintiffs, including propounded general liability written discovery,

- 2 -

document production discovery and the taking of oral depositions;[2]

e.     Manage the selection of all cases for trial setting;

f.     Coordinate the initiation of, and conduct discovery on behalf of Direct Action Plaintiffs consistent with the requirements of the California Code of Civil Procedure and Rules of Court or any order of this Court;

g.     Assign work for the investigation and discovery of common liability and damages matters for all Direct Action Plaintiffs' counsel, and delegate specific tasks to other Direct Action Plaintiffs' counsel, in a manner to ensure that pretrial preparation for Individual Plaintiffs is conducted effectively, efficiently and economically;

h.     Enter into stipulations, on behalf of Direct Action Plaintiffs, with opposing counsel as necessary for the conduct of the litigation;

i.     Prepare and distribute to other Individual Plaintiffs' counsel periodic status reports;

j.     Perform such other duties as may be necessary to the representation of Individual Plaintiffs, proper coordination of Individual Plaintiffs' activities or authorized by order of the Court; and

k.     Submit, if appropriate, additional Individual Plaintiffs' committees and counsel for designation by the Court.

**2.**     **Individual Plaintiffs' Liaison Counsel**

The Court appoints the following lawyers as Individual Plaintiffs' Liaison Counsel:

> Khaldoun A. Baghdadi
> Walkup, Melodia, Kelly & Schoenberger
> 650 California Street, 26th Floor
> San Francisco, CA 94108
> Tel: (415) 981-7210
> kbaghdadi@walkuplawoffice.com

---

[2] Discovery initiated by Defendants directed to specific individual plaintiffs shall be handled by the attorney for those specific individuals.

- 3 -

Amy Eskin
Levin Simes LLP
44 Montgomery Street, Floor 32
San Francisco, CA 94104
Tel: (415) 426-3000
aeskin@levinsimes.com

Steven J. Skikos
Skikos, Crawford, Skikos & Joseph, LLP
One Sansome Street, Suite 2830
San Francisco, CA 94104
Tel: (415) 546-7300
sskikos@skikos.com

Liaison Counsel shall be members of the Plaintiffs' Executive Committee and have the
following responsibilities:

  a.  Upon the designation of Individual Plaintiffs' Lead Counsel, appear before
the Court and present the position of Individual Plaintiffs at all Case
Management Conferences, Status Conferences, or other court ordered
hearings;

  b.  To make available to the Court, to counsel for Individual Plaintiffs, and to
counsel for Defendants an up-to-date comprehensive Service List of all
Individual Plaintiffs' counsel (including the date of the most recent
revision);

  c.  To receive and distribute to Individual Plaintiffs' counsel as appropriate,
orders, notices and correspondence from the Court;

  d.  To maintain and make available to other Individual Plaintiffs, on
reasonable notice and at reasonable times, a complete set of all filed
pleadings and orders filed and/or served in these coordinated proceedings;
and

  e.  To coordinate the filing of notices and papers by any Individual Plaintiff,
including the designation of responsibilities to encourage the filing of a

- 4 -

single set of papers by the Individual Plaintiffs in situations where the Individual Plaintiffs have a common position.

### 3. Individual Plaintiffs' Executive Committee

The Court appoints the lawyers and firms identified in Addendum A to the Individual Plaintiffs' Executive Committee. Individual Plaintiffs' Executive Committee shall have the following responsibilities with respect to matters of common concern to all Individual Plaintiffs:

    a.    Coordination of Individual Plaintiffs' pretrial activities and work performed by the Individual Plaintiffs' lead counsel and liaison counsel;

    b.    Calling meetings of Individual Plaintiffs' counsel when appropriate and to consult with Individual Plaintiffs' counsel on matters of common concern;

    c.    Designating additional Individual Plaintiffs' subcommittees to perform services on behalf of Individual Plaintiffs and designate additional Individual Plaintiffs' counsel to serve on such subcommittees; and

    d.    When appropriate, chairing and organizing Individual Plaintiffs' subcommittees as necessary to address specific issues of concern to claims of Individual Plaintiffs, Subrogation Plaintiffs, Government Plaintiffs and Class Plaintiffs.

### 4. Individual Plaintiffs' Steering Committee

The Court appoints the lawyers and firms identified in Addendum B to the Individual Plaintiffs' Steering Committee. The Individual Plaintiffs' Steering Committee shall have the following responsibilities with respect to matters of common concern to all Individual Plaintiffs:

    a.    To meet, strategize, and provide guidance to Individual Plaintiffs' Lead Counsel, Liaison Counsel, and Executive Committee with respect to the

- 5 -

direction of Individual Plaintiffs' pretrial activities and overall litigation strategy;

b.  To provide recommendations concerning the execution of Individual Plaintiffs' pretrial activities and work performed by the Individual Plaintiffs' lead counsel and liaison counsel, including the drafting of motions and opposing briefs and taking of depositions;

c.  To call meetings of Individual Plaintiffs' counsel when appropriate and to consult with Individual Plaintiffs' counsel on matters of common concern; and

d.  Serve on additional Individual Plaintiffs' subcommittees to perform services on behalf of Individual Plaintiffs and designate additional Individual Plaintiffs' counsel to serve on such subcommittees.

**B.  Public Entity Plaintiffs**

The Court appoints the following lawyer as Lead Counsel:

> Scott Summy
> Baron & Budd, P.C.
> 3102 Oak Lawn Ave #1100
> Dallas, TX 75219
> Tel: (214) 521-3605
> ssummy@baronbudd.com

Public Entities' Lead Counsel shall be responsible for responding to discovery, briefing, and argument of issues that are specific to the Public Entity cases. Public Entities' Lead Counsel shall maintain a current listing of all filed Public Entity cases and identify same for the Executive Plaintiffs Committee, Defendants and the Court. Counsel in any Public Entity cases shall cooperate with the Lead Counsel for Individual Plaintiffs, Public Entities' Lead Counsel and the Court in the production of information necessary to prepare for any status conference or in the scheduling of any discovery, or hearing.

- 6 -

## C. Class Action Plaintiffs

The Class Action committee will be formed and the Committee Chairs are identified below:

> Elizabeth Cabraser
> Lexi Hazam
> Lieff Cabraser Heimann & Bernstein, LLP
> 275 Battery Street, 29th Floor
> San Francisco, CA 94111-3339
> Tel: (415) 956-1000
> ecabraser@lchb.com
> lhazam@lchb.com

The Committee shall be responsible for the prosecution and management of the class actions, including discovery, briefing, and argument of issues that are specific to the class cases. The Committee shall maintain a current listing of all filed class action cases and identify same for Lead Counsel for Individual Plaintiffs, Defendants and the Court. Counsel in any Class Action case shall cooperate with the Committee, Lead Counsel for Individual Plaintiffs and the Court in the production of information necessary to prepare for any status conference or in the scheduling of any discovery, or hearing. The Committee should evaluate consolidated complaints and certification hearings, and report in the next CMC statement its views on the timing of these. While there is no stay of class related discovery, the Committee expects that the liability discovery described below will be used for certification briefing.

## D. Subrogation Plaintiffs

The Court appoints the following lawyers as Lead Counsel and Liaison Counsel for the Subrogation Plaintiffs and the Executive Committee for Subrogation Plaintiffs. They have the same duties/responsibilities within/to the Subrogation Plaintiffs group as the lawyers serving as Lead Counsel and Liaison Counsel and the Executive Committee for the Individual Plaintiffs:

-7-

1.     **Lead Counsel for Subrogation Plaintiffs**[3]

Shawn Caine
The Law Offices of Shawn E. Caine
1221 Camino Del Mar
Del Mar, CA 92014
Tel: (619) 838-1365
scaine@cainelaw.com

Mark Grotefeld
Grotefeld Hoffmann
Shepard Mountain Plaza
6034 West Courtyard Drive, Suite 200
Austin, TX 78730
Tel: (737) 226-5310
mgrotefeld@ghlaw-llp.com

Howard Maycon
Cozen O'Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Tel: (213) 892-7900
hmaycon@cozen.com

Maura Walsh Ochoa
Grotefeld Hoffmann
700 Larkspur Landing Circle, Suite 280
Larkspur, California 94939
Tel: (415) 344-9670
mochoa@ghlaw-llp.com

Craig Simon
Berger Kahn, A Law Corporation
1 Park Plaza, Suite 340
Irvine, CA 92614
Tel: (949) 748-4444
csimon@bergerkahn.com

Lead Counsel for Subrogation Plaintiffs shall be responsible for discovery, briefing, and argument of issues that are specific to the Subrogation cases. Lead Counsel for the Subrogation Plaintiffs shall maintain a current listing of all filed Subrogation cases and identify same for Lead Counsel for Individual Plaintiffs, Defendants and the Court. Counsel in any Subrogation cases shall cooperate with Lead Counsel for the Subrogation Plaintiffs, Subrogation Plaintiffs' Executive Committee and the Court in the production of information necessary to prepare for

---

[3] The rights and obligations of Lead Counsel for Subrogation Plaintiffs mirror the rights and obligations of Lead Counsel for Individual Plaintiffs.

- 8 -

any status conference or in the scheduling of any discovery, or hearing.

### 2. Liaison Counsel for Subrogation Plaintiffs

Alan Jang
Jang & Associates
1766 Lacassie Avenue, Suite 200
Walnut Creek, CA 94596
Tel: (925) 937-1400
ajang@janglit.com

Scott Loewe
Bauman Loewe Witt & Maxwell, PLLC
8765 East Bell Road, Suite 210
Scottsdale, Arizona 85260
Tel: (480) 502-4664
sloewe@blwmlawfirm.com

Waylon Pickett
Grotefeld Hoffmann
0324 SW Abernethy Street
Portland, Oregon 97239
Tel: (503) 384-2772
wpickett@ghlaw-llp.com

### 3. Subrogation Plaintiffs' Executive Committee

Mark Bauman
Bauman Loewe Witt & Maxwell, PLLC
8765 East Bell Road, Suite 210
Scottsdale, Arizona 85260
Tel: (480) 502-4664
mbauman@blwmlawfirm.com

Kevin Bush
Cozen O'Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Tel: (213) 892-7900
kbush@cozen.com

Tim Cary
Stutman·Law
1260 Corona Pointe Ct., Suite 306
Corona, CA 92879
Tel: (951) 963-1298
caryt@stutmanlaw.com

Eric Schroeder
Schroeder Loscotoff

- 9 -

1     7410 Greenhaven Dr., Ste. 200
2     Sacramento, CA 95831
    Tel: (916) 438-8306
3     cmschroeder@calsubro.com

4 **II.   DEFENDANTS' COUNSEL**

5

6     Defendants are represented by Cravath, Swaine & Moore LLP, Wilson Sonsini Goodrich & Rosati and Clarence Dyer & Cohen LLP.

7     Evan R. Chesler,
8     Timothy G. Cameron
    Kevin J. Orsini
9     Damaris Hernandez
    Cravath, Swaine & Moore LLP
10     Worldwide Plaza
    825 8th Avenue
11     New York, New York 10019
    Tel: (212) 474-1000
12     echesler@cravath.com
    tcameron@cravath.com
13     korsini@cravath.com
    dhernandez@cravath.com
14
    Keith E. Eggleton
15     John P. Flynn
    Rodney G. Strickland
16     Colleen Bal
    Wilson Sonsini Goodrich & Rosati
17     650 Page Mill Road
    Palo Alto, California 94304, and
18     One Market Plaza, Suite 3300
    San Francisco, CA 94105
19     Tel: (650) 493-9300
    Tel: (415) 947-2000
20     keggleton@wsgr.com
    jflynn@wsgr.com
21     rstrickland@wsgr.com
    cbal@wsgr.com
22
23     Kate Dyer
    Clarence Dyer & Cohen LLP
24     899 Ellis Street
    San Francisco, California 94109
25     Tel: (415) 749-1800
    kdyer@clarencedyer.com
26

27

- 10 -

# JURISDICTION AND WAIVER OF SERVICE OF PROCESS

The parties agree that this court has jurisdiction over the parties and that there are no challenges to personal or subject matter jurisdiction. The parties have met and conferred and Defendants have agreed to waive service of process in cases filed in JCCP No. 4955 in which they are named. For such cases, Plaintiffs shall send the Notice of Adoption of Short Form Complaint and Short Form Complaint by email to the following individuals, Kevin J. Orsini (korsini@cravath.com), Brittany L. Sukiennik, (bsukennik@cravath.com), Keith E. Eggleton (keggleton@wsgr.com), and Rodney Strickland (rstrickland@wsgr.com) or by U.S. Mail to:

> Kevin J. Orsini
> Brittany L. Sukiennik
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 8th Avenue
> New York, New York 10019-7475
>
> Keith E. Eggleton
> Rodney G. Strickland
> Wilson Sonsini Goodrich & Rosati, EC
> 650 Page Mill Road
> Palo Alto, California 94304

The parties agree that complying with these provisions shall constitute personal service of process under the California Code of Civil Procedure.

## A. Master Pleadings

The parties agree that a Master Complaint for Individual Plaintiffs, a Master Complaint for Subrogation Plaintiffs and a Master Complaint for the Public Entity Plaintiffs shall be lodged with the Court. Corresponding Master Answers for Defendants in response to each of the three Master Complaints shall govern the pleadings for those actions.[4] Drafts of the applicable Master Complaints for the Individual Plaintiffs, Public Entity Plaintiffs and Subrogation Plaintiffs are being exchanged and will be presented to the Court.

---

[4] Subsections B, C and D do not apply to the Class Action Plaintiffs.

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page 32 of 173

**B.     Challenges to Master Pleadings**

The parties anticipate a single challenge to the Master Complaints concerning the applicability of inverse condemnation to a private utility.

Defendants will file that challenge on March 16, 2018. The Individual Plaintiffs' Lead Counsel (on behalf of the Direct Action Plaintiffs) and the Subrogation Plaintiffs' Lead Counsel shall each file their opposition no later than April 16, 2018. Defendants will file a single reply to both oppositions, which shall not exceed 20 pages, by April 30, 2018. The hearing is set for **May 18, 2018 at 9:00 a.m.**

**C.     Notice of Adoption of Master Complaint and Master Answer**

The parties will meet and confer regarding the Notice of Adoption of Master Complaint, and Notice of Potential Add-On Cases and Request for Coordination. Plaintiffs will provide Defendants the applicable documents for review and submission to the Court. The Master Complaints shall be filed no later than March 12, 2018. The Master Answers shall be filed no later than March 16, 2018. The Master Complaints and the Master Answers will not be verified.

**1.     Notice of Adoption of Master Complaint**

Each Direct Action Plaintiff or Subrogation Plaintiff with a case already on file in JCCP No. 4955 shall serve on their respective Lead Counsel a Notice of Adoption of Master Complaint within 30 days of the date the Master Complaint is filed. The Notice of Adoption shall contain the following information: 1) the name and address of each plaintiff; 2) the fire(s) by which each plaintiff was allegedly harmed;[5] 3) the causes of action each plaintiff is joining and against which defendant(s) they are pled; and 4) the categories of damages allegedly incurred by each plaintiff and for which that plaintiff is seeking recovery and from which defendant(s).

For existing Individual Plaintiffs, the filing of a Notice of Adoption of Master Complaint

---

[5] Counsel are to agree on a naming convention for the fires.

- 12 -

shall not require the payment of an additional filing fee or a new case number. Each Notice of Adoption shall constitute an amended complaint for all purposes. Upon filing the Notice of Adoption, the Master Complaint, as amended by the Plaintiff's Notice of Adoption, shall be the operative pleading. The date on which the Master Complaint is filed shall have no bearing on whether any Plaintiff has satisfied the applicable statute of limitations. Rather, the date on which an individual Plaintiff's properly filed original complaint initiating his or her action was filed shall be the operative date for statute of limitations purposes.

For cases naming more than one Plaintiff, except those naming a derivative Plaintiff (e.g., an heir asserting a wrongful death claim) each Plaintiff must file an individual Notice of Adoption.[6]

### 2. Notice of Adoption of Master Answer

The Defendants' Notice of Adoption of Master Answer must be filed within 30 days of the filing of Plaintiffs' Notice of Adoption of Master Complaint. All responses pled in PG&E's Master Answer will be deemed pled in any previously filed Complaint and Responsive Pleading now pending in this JCCP proceeding, and in any Notice of Adoption filed thereafter.

### 3. Cases to Be Filed

Plaintiffs who have not yet filed an action will initiate an action by Filing a Short Form Complaint and Notice of Adoption of Master Complaint, in a proper venue in California. As indicated above, the Notice of Adoption shall contain the following information: 1) the name and address of each plaintiff; 2) the fire(s) by which each plaintiff was allegedly harmed; 3) the causes of action each plaintiff is joining and against which defendant(s) they are pled; and 4) the categories of damages allegedly incurred by each plaintiff and for which that plaintiff is seeking recovery and from which defendant(s).

---

[6] Members of a single household need only file one notice of adoption.

- 13 -

Upon that filing, the Master Complaint, as Amended by the Notice of Adoption, shall be the operative pleading. The date on which the Master Complaint is filed shall have no bearing on whether any Plaintiff has satisfied any applicable statute of limitations. Rather, the later date on which an individual Plaintiff properly filed the Short Form Complaint or Notice of Adoption initiating his or her action shall be the operative date for statute of limitations purposes. For any future case filed, the Plaintiff must include a civil cover sheet identifying this JCCP (California North Bay Fire Cases, JCCP No. 4955).

### D.    Adding Cases into These Coordinated Proceedings

Add-on cases may be handled by stipulation of all parties or by petition of Defendants consistent with the procedures and requirements of CRC 3.531 and C.C.P. § 404.4.

### E.    Cross-Complaints

The parties agree that Defendants may or may not file cross-complaints as they choose.

However, if a cross-complaint is not filed at the time Defendants file the Master Answers, but instead is filed by an existing Defendant at a later date, by whatever means or procedure, such later filing will not, absent good cause or as otherwise provided by the Code of Civil Procedure, constitute cause for delay of any then-existing trial date or trial.

**Discovery Phases**

The parties have agreed to stage discovery. Stage One relates to: 1) liability discovery; and 2) damages discovery from Individual Plaintiffs, Public Entity Plaintiffs and Subrogation Plaintiffs. Stage Two relates to expert discovery on issues of both liability and damages and will be subject to further order of this Court.

- 14 -

**Stage One: Liability Discovery**

     1.    **By Direct Action and Subrogation Plaintiffs.**

. Liability discovery shall be conducted as directed by Lead Counsel for the Individual Plaintiffs and Lead Counsel for Subrogation Plaintiffs. Lead Counsel for Individual Plaintiffs have informed counsel for PG&E regarding the initial round of liability discovery that includes: a set of initial Requests for Admission to elicit whether PG&E is contesting causation on the origin of each of the North Bay Fires; a Deposition notice for the person most qualified at PG&E on the general topics of how the company stores, accesses, exchanges and retrieves data on vegetation management and electrical infrastructure; and a request for inspection and/or production of photographs or recordings of any item of physical evidence related to PG&E equipment or vegetation inspected as a potential cause of a fire included in these proceedings. Direct Action Plaintiffs and Subrogation Plaintiffs may seek liability discovery concerning the origin and cause of each of the North Bay Fires:, such as vegetation management, electrical infrastructure and wildfire risk management.

Prior to serving Defendants with liability discovery, Direct Action Plaintiffs and Subrogation Plaintiffs have agreed to cooperate in good faith to coordinate such discovery. Either the Individual Plaintiffs' Lead Counsel (on behalf of Direct Action Plaintiffs) or the Subrogation Plaintiffs' Lead Counsel may serve discovery on Defendants. After liability . discovery is served on Defendants, regardless of which Plaintiff group was the serving party, the Individual Plaintiffs' Lead Counsel (on behalf of Direct Action Plaintiffs) and the Subrogation Plaintiffs' Lead Counsel shall collectively meet and confer with Defendants concerning Defendants' discovery responses. Plaintiffs shall not serve duplicative or cumulative discovery on Defendants.

Should any Plaintiff or law firm after consultation with the Individual Plaintiffs' Lead Counsel and the Subrogation Plaintiffs' Lead Counsel believe that they need to propound liability discovery that has not been or will not be propounded by the Individual Plaintiffs' Lead

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page 36 of 173

Counsel or the Subrogation Plaintiffs' Lead Counsel, such Plaintiff or law firm may seek an order from the Court allowing such discovery to be propounded. Otherwise, no Plaintiff may serve separate liability discovery.

### 2. By Defendants

Defendants will serve any liability discovery directed to any specific individual Plaintiff or the Subrogation Plaintiffs on Individual Plaintiffs' Lead Counsel, Subrogation Plaintiffs' Lead Counsel and counsel of record for the specific individual plaintiff(s). Where appropriate, the Direct Action Plaintiffs or Subrogation Plaintiffs will serve Defendants with a Master Response. To the extent such discovery relates to a specific Plaintiffs' group, Defendants may serve such discovery requests on Lead Counsel for each applicable Plaintiffs' group or, in the case of the Class Action Plaintiffs, the Committee, Lead Counsel or Committee shall similarly serve Defendants with a Master Response for such group.

### Stage One: Damages Discovery

### 3. Subrogation Plaintiffs

Damages discovery may be propounded to all Subrogation Plaintiffs in a Master Request to All Subrogation Plaintiffs. The Subrogation Plaintiffs will serve a Master Response to the Master Request to All Subrogation Plaintiffs, and each Subrogation Plaintiff will then serve an Adoption of the Master Response in Full or in Part. If the response adopts "in Part", the responding Subrogation Plaintiff will set forth any answers that are different from the Master Response in the Adoption. These Adoptions will be verified by each responding Subrogation Plaintiff.

The Subrogation Plaintiffs will set forth a list of claims for which they are seeking reimbursement. The Subrogation Plaintiffs will provide to Defendants an updated list of the names, addresses, dates of loss, claim numbers, the amounts paid by Subrogation Plaintiffs and

- 16 -

open reserves (as that information is available) as to each of the subrogated claims for which they are seeking reimbursement (hereinafter the "List of Claims") not later than June 30, 2018. The Subrogation Plaintiffs will provide an updated List of Claims at least on a quarterly basis, or more frequently as necessary to advise Defendants of additional payments made on any claims, and/or as reasonably requested by the Defendants. In any event, Subrogation Plaintiffs will provide a final List of Claims to Defendants on or before October 31, 2020 (prior to the statute of limitations), which will constitute the final list of claims to be included in the litigation.[7] The original and/or any amended adoption complaint filed by the Subrogation Plaintiffs will be deemed to set forth all of the information in the List of Claims provided to Defendants pursuant to this order. Any claims not disclosed by the Subrogating Plaintiffs on or before October 31, 2020, will be barred by statute.

The parties agree that the Lists of Claims provided by the Subrogation Plaintiffs will not be admissible in evidence unless the Defendants later reach an agreement with the Subrogation Plaintiff that prepared the List of Claims that the List of Claims is admissible.

The Subrogation Plaintiffs will produce claim files on a rolling basis. The parties will meet and confer regarding a schedule and protective order to govern the production of claim files and will report back to the Court on this issue in the next joint CMC statement. The Subrogation Plaintiffs will continue to produce on a rolling basis any supplements to the claim files as required to update Defendants on any additional payments made on the claims following the production of the claim files. Defendants will also be notified of additional payments on any of the claims by the Subrogating Plaintiffs by the periodic production of an updated List of Claims. Claim files may be requested sooner for any Plaintiff claiming a preference or on a case-by-case basis, and Subrogation Plaintiffs will make every effort to produce such claim files within 15 days of a request.

---

[7] This is not an implication that trials be delayed until after this date.

### 4. Individual Plaintiffs

Each individual plaintiff shall complete the Notice of Adoption of Master Complaint which contains specific facts regarding the case. All other damages case specific discovery is stayed including any written discovery, contention discovery, or deposition discovery until further order of the court and as contemplated by sections below relating to bellwether trial settings and preference trial settings.

## Privileged Communications

Pursuant to the parties' agreement, the communication, transmission, or dissemination of information of common interest among Plaintiffs' counsel or among Defendants' counsel shall be protected by the attorney-client privilege, the protections afforded by the attorney work product doctrine, the protections afforded to material prepared for litigation or any other privilege to which a party may otherwise be entitled. Further, cooperative efforts shall not in any way be used against any of the parties, be cited as purported evidence of conspiracy, wrongful action or wrongful conduct, and shall not be communicated to any jury.

## Trial

*Preferential Trial Settings*: The Plaintiffs anticipate that it may be appropriate to file motions for preferential trial settings per C.C.P. § 36.

*Bellwether Process*: The parties have agreed to meet and confer on the scope and procedure relating to any potential bellwether process, including a bellwether case selection process, case specific discovery and law and motion practice in bellwether and non-bellwether cases, if any, and the conduct of bellwether trials. The parties contemplate that if they agree upon a bellwether process, an order of this Court relating to the bellwether process will include: trial settings and the bellwether selection process, discovery and motion practice appropriate for

- 18 -

bellwether selected cases, and whether or not motion practice may be appropriate to cases outside of those selected as bellwethers.

*Jury or Non-Jury*: Plaintiffs demand jury trials.

*Trial Date*: Trial dates and length, and close of discovery dates will be set in future case management conferences.

*Place of Trial*: Complaints in this matter have been filed in the Superior Court of Napa, Sonoma, and San Francisco. Locations of trials are reserved for future consideration.

**Pro Hac Vice Admissions:**

A number of counsel have been admitted *pro hac vice* in the underlying cases now coordinated in this JCCP. Such counsel are deemed admitted for all purposes in this JCCP and all current and future actions coordinated in this JCCP. Counsel not yet been admitted *pro hac vice* shall file his or her *pro hac vice* application with this Court.

*Protective Order*: The parties are expected to present a proposed stipulated protective order within 30 days. I ask the parties to review the Department's User Manual especially on sealing issues, and to resist the urge to over-designate under the protective order.

**Next Case Management Conference**

A date will be selected for the next CMC at the May 18, 2018 hearing. In addition to issues noted above, the parties are invited to advise on (1) the status of a discovery plan, including discovery focused on e.g., (i) PG&E policies and actions and (ii) causes and circumstances of ignitions; (2) whether a cut-off date for the addition of new parties should be set (which could be avoided on a showing that new information supported leave of court to add

- 19 -

the party); a general description of the discovery required for meaningful settlement discussions, and the likely time needed to acquire it.

Dated: March 6, 2018

_____
Curtis E.A. Karnow
Judge Of The Superior Court

- 20 -

1  ***Addendum A – Individual Plaintiffs' Executive Committee***

2       Individual Plaintiffs request that the Court appoint the following attorneys and firms to the

3  Executive Committee:

4  Mary Alexander
   Mary Alexander & Associates, P.C.
5  44 Montgomery Street, Suite 1303
   San Francisco, CA 94101
6  Tel: (415) 433-4440
   malexander@maryalexanderlaw.com
7
   Thomas Brandi
8  The Brandi Law Firm
   354 Pine St. Floor, 3rd floor
9  San Francisco, CA 94104-3231
   Tel (415) 989-1800
10 tjb@brandilaw.com

11 Elizabeth Cabraser
   Lexi Hazam
12 Lieff Cabraser Heimann & Bernstein, LLP
   275 Battery Street, 29th Floor
13 San Francisco, CA 94111-3339
   Tel: (415) 956-1000
14 ecabraser@lchb.com
   lhazam@lchb.com
15
   Steven M. Campora
16 Dreyer Babich Buccola Wood Campora LLP
   20 Bicentennial Circle
17 Sacramento, CA 95826
   Tel: (916) 379-3500
18 scampora@dbbwc.com

19 Ahmed S. Diab
   Dixon Diab & Chambers LLP
20 501 W. Broadway, Suite 800
   San Diego, CA 92101
21 Tel: (619) 354-2662
   diab@theddcfirm.com
22
   Amy Eskin (**Co-Liaison**)
23 Levin Simes LLP
   44 Montgomery Street, Floor 32
24 San Francisco, CA 94104
   Tel: (415) 426-3000
25 aeskin@levinsimes.com

26

27

28

Dario de Ghetaldi
Corey, Luzaich, de Ghetaldi & Riddle LLP
700 El Camino Real
Millbrae, CA 94030
Tel: (650) 871-5666
deg@coreylaw.com

Michael A. Kelly (**Co-Lead**)
Khaldoun A. Baghdadi (**Co-Liaison**)
Walkup, Melodia, Kelly & Schoenberger
650 California Street, 26th Floor
San Francisco, CA 94108
Tel: (415) 981-7210
mkelly@walkuplawoffice.com
kbaghdadi@walkuplawoffice.com

Brendan M. Kunkle
Michael Green
Abbey, Weitzenberg, Warren & Emery
100 Stony Point Rd, Suite 200
Santa Rosa, CA 95401
Tel: (707) 542-5050
bkunkle@abbeylaw.com
mgreen@abbeylaw.com

Brian Panish
Rahul Ravipudi
Panish Shea & Boyle, LLP
11111 Santa Monica Blvd. #700
Los Angeles, 90025
Tel: (310) 477-1700
panish@psblaw.com
ravipudi@psblaw.com

Frank Pitre (**Co-Lead**)
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
fpitre@cpmlegal.com

Bill Robins III (**Co-Lead**)
Robins Cloud, LLP
808 Wilshire Boulevard, Suite 450
Santa Monica, CA 90401
Tel: (310) 929-4200
robins@robinscloud.com

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page
42 of 173

| | |
|---|---|
| 1 | Mark Robinson |
| | Robinson Calcagnie, Inc. |
| 2 | 19 Corporate Plaza Dr. |
| | Newport Beach, CA 92660 |
| 3 | Tel: (949) 720-1288 |
| | mrobinson@robinsonfirm.com |
| 4 | |

Mark Robinson
Robinson Calcagnie, Inc.
19 Corporate Plaza Dr.
Newport Beach, CA 92660
Tel: (949) 720-1288
mrobinson@robinsonfirm.com

Steve Skikos (**Co-Liaison**)
Greg Skikos
Matt Skikos
Skikos, Crawford, Skikos & Joseph, LLP
One Sansome Street, Suite 2830
San Francisco, CA 94104
Tel: (415) 546-7300
sskikos@skikos.com
gskikos@skikos.com
mskikos@skikos.com

Scott Summy (**Lead for Public Entities**)
Baron & Budd
N 7000 Mopac Service Road #200
Austin, TX 78731
Tel: (214) 521-3605
ssummy@baronbudd.com

2

ADDENDUM A - PLAINTIFFS' EXECUTIVE COMMITTEE - JCCP No. 4955

# Addendum B – Individual Plaintiffs' Steering Committee

Individual Plaintiffs request that the Court create and name the following individuals to a Steering Committee:

Elliot Adler
Adler Law Group, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Tel: (619) 531-8700
eadler@theadlerfirm.com

Michael Caddell
Cynthia Chapman
Caddell & Chapman
628 E. 9th Street
Houston, TX 77077
Tel: (713) 751-0400
mac@caddellchapman.com
cbc@caddellchapman.com

Don Edgar
Edgar Law Firm
408 College Avenue
Santa Rosa, CA 95401
Tel: (707) 799-4090
don@classattorneys.com

Dave Fox
Fox Law, APC
Plaza Building
225 West Plaza Street, Suite 102
Solana Beach, CA 92075
Tel: (858) 256-7616
dave@foxlawapc.com

Sean Higgins
Andrews & Thornton
2 Corporate Park, Suite 110
Irvine, California 92606
Tel: (949) 748-1000
shiggins@andrewsthornton.com

John F. McGuire
Thorsnes Bartolotta McGuire, LLP
2550 Fifth Avenue, 11th Floor
San Diego, CA 92103
Tel: (619) 236-9363
mcguire@tbmlawyers.com

Patrick McNicholas
McNicholas & McNicholas, LLP
10866 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024
Tel: (310) 474-1582
pmc@mcnicholaslaw.com

Francis O. Scarpulla
Law Offices of Francis O. Scarpulla
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel: (415) 788-7210
fos@scarpullalaw.com

Christopher Sieglock
Sieglock Law, APC
1221 Camino Del Mar
Del Mar, CA 92014
Tel: (858) 793-0380
chris@sieglocklaw.com

Gerald Singleton
Singleton Law Firm
115 Plaza St
Solana Beach, CA 92075
Tel: (760) 697-1330
gerald@slffirm.com

Terry L. Singleton
Terry Singleton, APC
1950 5th Avenue, Suite 200
San Diego, CA 92101-2344
Tel: (619) 239-3225
terry@terrysingleton.com

Tom Tosdal
777 South Highway 101, Suite 215
Solana Beach, CA 92075
Tel: (858) 704-4709
tom@tosdallaw.com

Mikal C. Watts
Guy Watts
Watts Guerra LLP
5726 W. Hausman Rd, Suite 119
San Antonio, Texas
Tel: (210) 527-0500
mcwatts@wattsguerra.com
gwatts@wattsguerra.com

1

ADDENDUM B - PLAINTIFFS' STEERING COMMITTEE - JCCP No. 4955

1  Ben Wilson
2  Morgan & Morgan, PLLC
   4450 Old Canton Rd. Suite 200
3  Jackson, MS 39211
   Tel: (601) 949-3388
4  BWilson@ForThePeople.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

ADDENDUM B - PLAINTIFFS' STEERING COMMITTEE - JCCP No. 4955

# EXHIBIT 3

1   MICHAEL A. KELLY (State Bar #71460)
    mkelly@walkuplawoffice.com
2   KHALDOUN A. BAGHDADI (State Bar #190111)
    kbaghdadi@walkuplawoffice.com
3   **WALKUP, MELODIA, KELLY**
    **& SCHOENBERGER**
4   650 California Street, 26th Floor
    San Francisco, CA 94108
5   Telephone:   (415) 981-7210
    Facsimile:   (415) 391-6965
6
    ANNE ANDREWS (Bar No. 103280)
7   aandrews@andrewsthornton.com
    JOHN C. THORNTON (Bar No. 84492)
8   jct@andrewsthornton.com
    SEAN T. HIGGINS (Bar No. 266888)
9   shiggins@andrewsthornton.com
    ROBERT S. SIKO (Bar No. 312856)
10  rsiko@andrewsthornton.com
    **ANDREWS & THORNTON**
11  4701 Von Karman Ave, Suite 300
    Newport Beach, California 92660
12  Telephone:        (949) 748-1000
    Facsimile:        (949) 315-3540
13
    (ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGES)
14
    **ATTORNEYS FOR PETITIONER JOHN K. TROTTER,**
15  **JR., TRUSTEE OF THE PG&E FIRE VICTIM TRUST**
16
17                  SUPERIOR COURT OF THE STATE OF CALIFORNIA
18                          COUNTY OF SAN FRANCISCO

| | |
|---|---|
| 19   Coordination Proceeding Special Title (Rule 3.550) | **JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4955** |
| 20 | Hon. Andrew Cheng, Dept. 613 |
| 21   **CALIFORNIA NORTH BAY FIRE CASES** | |
| 22 | Date: None Set |
| 23 | Time: None Set |
| | Dept: 613 |
| 24 | **STIPULATED PETITION FOR** |
| 25 | **COORDINATION OF ADD-ON CASES** |
| | **(California Code of Civil Procedure § 404.4)** |

26
27
28

Pursuant to California Code of Civil Procedure § 404 *et seq.*, and California Rules of Court 3.520 *et seq.*, Petitioner John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust ("Petitioner") hereby requests that Petitioner's actions be coordinated with Judicial Council Coordination Proceeding No. 4955 – *California North Bay Fire Cases* ("JCCP No. 4955") as add-on cases:

        a.     *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. Davey Resource Group, Inc., et al.*, San Francisco County Superior Court Case No. CGC-21-589438 (complaint filed on January 28, 2021);

        b.     *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. Davey Resource Group, Inc., et al.*, San Francisco County Superior Court Case No. CGC-21-589439 (complaint filed on January 28, 2021);

        c.     *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. ACRT Pacific, LLC, et al.*, San Francisco County Superior Court Case No. CGC-21-589441 (complaint filed on January 28, 2021) (together "Included Actions").

A chart listing the parties to the Included Actions, and their respective, known attorneys of record, and the status of service of the complaint and summons on Defendants, is attached as Exhibit A to the accompanying Declaration of Khaldoun Baghdadi.

This Petition is brought on the grounds that the Included Actions present common questions of fact and law and that coordination will therefore promote the ends of justice, as required by California Code of Civil Procedure §§ 404 and 404.1, as more particularly set forth in the accompanying Memorandum of Points and Authorities and Declaration of Khaldoun Baghdadi in support of this Petition. The Included Actions relate to factual issues that overlap extensively with factual issues that were the subject of extensive discovery in actions brought against Pacific Gas and Electric Company ("PG&E") that were previously coordinated in JCCP No. 4955. The parties have agreed that they will stipulate to, and request that the Court enter, a protective order that will allow the defendants in the Included Actions to have access to any and all discovery, document productions, physical evidence, deposition transcripts, and related repositories for discovery that were previously collected during the JCCP No. 4955 proceeding. Such a stipulated protective order would greatly expedite the discovery process in the Included Actions.

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page 48 of 173

All parties have stipulated and agreed that, as part of this coordination, the Defendants in the Included Actions shall not be bound by or subject to any orders, including any case management orders, that were previously issued in JCCP No. 4955, or any deadlines established by statute or court rule that applied based on the complaints against PG&E that were previously included in JCCP No. 4955.

The parties agree that other actions that have been brought against the Defendants by numerous plaintiffs, which are pending in this Court and other Superior Courts, should be coordinated with the Included Actions. The parties do not presently have a stipulation with the numerous plaintiffs for coordination of the other actions. A stipulation will be submitted if it is obtained. Otherwise, a motion will be brought to add-on the other cases for coordination.

All parties to the Included Actions having stipulated to coordination. Petitioner requests that this Petition be granted without a hearing pursuant to California Rule of Court 3.544(d). If any written opposition is timely served and submitted, then Petitioner requests a hearing be conducted.

Dated: May 13 , 2021          WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____

MICHAEL A. KELLY
KHALDOUN A. BAGHDADI
650 California Street, 26th Floor
San Francisco, CA 94108
Tel: (415) 981-7210
Fax: (415) 391-6965
mkelly@walkuplawoffice.com
kbaghdadi@walkuplawoffice.com


ANDREWS & THORNTON

SEAN T. HIGGINS
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Tel (949) 748-1000
Fax (949) 315-3540
shiggins@andrewsthornton.com

- 3 -

GREENBERG GROSS LLP

ALAN A. GREENBERG
WAYNE R. GROSS
EVAN C. BORGES
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Tel: (213) 334-7000
Fax: (213) 334-7001
AGreenberg@GGTrialLaw.com
WGross@GGTrialLaw.com
EBorges@GGTrialLaw.com

COTCHETT PITRE & McCARTHY

FRANK M. PITRE
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
fpitre@cpmlegal.com

DREYER, BABICH, BUCCOLA, WOOD, CAMPORA

STEVEN M. CAMPORA
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500
Fax: (916) 379-3599
scampora@dbbw.com

COREY, LUZAICH, DE GHETALDI & RIDDLE, LLP

DARIO de GHETALDI
700 El Camino Real
PO Box 669
Millbrae, CA 94030
Tel: (650) 871-5666
Fax: (650) 871-4144
deg@coreylaw.com

**Attorneys for Petitioner John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust**

- 4 -

PETITION FOR COORDINATION OF ADD-ON CASES

# **TABLE OF CONTENTS**

Page(s)

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 7

    I.     Introduction ........................................................................................ 7

    II.    The Status of the Included Actions and Coordinated Actions ................................ 8

    III.   The Included Actions Are Complex Cases as Defined by California Rule of Court 3.400 ........................................................................................ 8

    IV.   Coordination Will Satisfy The Requirements of CCP § 404.1 ............................. 9

    V.    Consent of the Other Parties ................................................................. 10

    VI.   Hearing on the Petition ........................................................................ 11

    VII.  Conclusion ......................................................................................... 11

DECLARATION OF KHALDOUN BAGHDADI ........................................................... 13

PETITION FOR COORDINATION OF ADD-ON CASES

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page 51 of 173

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*McGhan Medical Corp. v. Superior Court*,
    11 Cal. App. 4th 804 (1992)..................................................................8

**Statutes**

Cal. Civ. Proc. Code § 404.1 ..............................................................8, 9

**Rules**

Cal. R. Ct. 3.400..................................................................................7

Cal. R. Ct. 3.400(b)(1)..........................................................................7

Cal. R. Ct. 3.400(b)(2)..........................................................................7

Cal. R. Ct. 3.400(b)(3)..........................................................................8

Cal. R. Ct. 3.544(b)..............................................................................9

Cal. R. Ct. 3.521..................................................................................12

Case: 19-90089   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page
52 of 173

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Petitioner John K. Trotter, Jr. is the duly-appointed Trustee of the PG&E Fire Victim Trust (the "Fire Victim Trust" or the "Trust"), which was established pursuant to the Plan of Reorganization confirmed in the *In re: PG&E Corporation* Chapter 11 bankruptcy action, Case No. 19-30088. The Trustee is a resident of the State of California. The Trust is a Delaware statutory trust.

The Plan resulted in the creation of the Trust. Case No. 19-30088, D.E. 8053. The Trust was established to administer individual victims' claims against Pacific Gas and Electric Company ("PG&E") related to the Wildfires, which were caused by PG&E's electrical equipment. The Plan empowered the Trust to recover additional funds for the benefit of victims of the Wildfires, including by bringing the Assigned Rights and Causes of Action on behalf of PG&E against other responsible parties.

As in many of the actions brought against PG&E that were previously coordinated in JCCP No. 4955, the Included Actions arise from the 2017 fires caused by PG&E's electrical equipment in Northern California ("North Bay Fires"). The Included Actions also involve allegations concerning fires in 2015 and 2018. The Included Actions are brought against contractors of PG&E that are alleged to have contributed to or caused certain of the North Bay Fires by failing to adequately perform vegetation management in the vicinity of PG&E's electrical lines—and are based overlapping factual allegations. (*See* Baghdadi Decl., Exs. B-D.)

JCCP No. 4955 was established to promote justice and judicial efficiency by coordinating the actions brought against PG&E concerning the North Bay Fires, among other wildfires, for pre-trial purposes (the "Coordinated Actions"). Although the Coordinated Actions against PG&E have been dismissed as a result of the confirmed plan of reorganization in PG&E's bankruptcy, a substantial amount of discovery, depositions, and motion practice occurred under JCCP No. 4955 that will be relevant to the resolution of the Included Actions. The Included Actions will require resolution of a substantial number of questions of law and fact that overlap with the cases that were previously coordinated under JCCP No. 4955, including, among other things: (a) the cause of the

- 7 -

Case: 19-30088    Doc# 14555-1    Filed: 08/02/23    Entered: 08/02/23 13:43:17    Page
53 of 173

ignition of the North Bay fires, (b) vegetation management contractors' inspections and trimming of vegetation in the vicinity of PG&E's electrical lines, (c) the foreseeability of extreme weather events contributing to the North Bay Fires, (d) the operation of PG&E's vegetation management program, and (e) the performance or alleged failure to perform contractual duties undertaken by the vegetation management contractors.

Denying coordination of the Included Actions into JCCP No. 4955 would result in multiple, duplicative proceedings and a substantial duplication of effort in the Included Actions, as well as risk inconsistent results. Since the interests of the courts, judicial economy, witnesses, and parties all weigh heavily *against* separately litigating the Included Actions, Petitioner respectfully requests that the Included Actions be coordinated as add-on cases to JCCP No. 4955.

## II.     THE STATUS OF THE INCLUDED ACTIONS AND COORDINATED ACTIONS

Petitioner seeks coordination of the following actions (the "Included Actions") in JCCP No. 4955:

a.      *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. Davey Resource Group, Inc., et al.*, San Francisco County Superior Court Case No. CGC-21-589438 (complaint filed on January 28, 2021);

b.      *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. Davey Resource Group, Inc., et al.*, San Francisco County Superior Court Case No. CGC-21-589439 (complaint filed on January 28, 2021);

c.      *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. ACRT Pacific, LLC, et al.*, San Francisco County Superior Court Case No. CGC-21-589441 (complaint filed on January 28, 2021).

The Included Actions were served on all defendants in February 2021. No pretrial motions have been filed or heard in the Included Actions.

## III.    THE INCLUDED ACTIONS ARE COMPLEX CASES AS DEFINED BY CALIFORNIA RULE OF COURT 3.400

The Included Actions are complex within the meaning of California Rule of Court 3.400 in that they will require extensive judicial management to avoid placing unnecessary burdens on the

Case: 19-30088    Doc# 14535-4    Filed: 08/02/24    Entered: 09/02/24 13:43:17    Page 54 of 173

PETITION FOR COORDINATION OF ADD-ON CASES
4815-9514-9545.1

courts and the litigants and to expedite the cases, keep costs reasonable, and promote efficient decision making by the courts, the parties, and counsel. *See* Cal. R. Ct. 3.400(b)(1)-(2). For example, the Included Actions are expected to involve, among other things, numerous pretrial motions raising difficult and novel legal issues that will be time-consuming to resolve. (Baghdadi Decl. ¶ 5.) The Included Actions also will likely involve a large number of witnesses and a substantial amount of discovery and documentary evidence, which overlap with discovery previously conducted in JCCP No. 4955, concerning many individual tree inspections and trimmings, training materials and courses, hiring decisions, supervisory decisions, investigations by regulatory and enforcement agencies, and other complex factual issues. (Baghdadi Decl. ¶ 6.) The Included Actions likely will require management of a large number of separately related parties. *See* Cal. R. Ct. 3.400(b)(3).

## IV.    <u>COORDINATION WILL SATISFY THE REQUIREMENTS OF CCP § 404.1</u>

The Included Actions indisputably satisfy the standard for coordination as add on cases to JCCP No. 4955 as set forth in Section 404.1 of the California Code of Civil Procedure, which provides:

> Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied.

Many, if not a majority, of the questions of law or fact that can be reasonably expected to arise in the Included Actions regarding vegetation management will overlap with those that were the subject of the actions against PG&E in JCCP 4955, including the question of the defendants' duty and issues of liability. (Baghdadi Decl. ¶¶ 7-9.) The convenience of the parties, witnesses, and counsel, as well as the need to preserve judicial resources, all favor coordination.

Petitioner expect defendants in the Included Actions to file voluminous motions related to the pleadings, discovery, the scope of the claims at issue, and the Court's jurisdiction. In light of

PETITION FOR COORDINATION OF ADD ON CASES
4815-9514-9545.1

the expected volume of motion practice and overlapping discovery in both the Included Actions, it would be far more efficient for all involved if these issues are resolved in a coordinated manner in JCCP No. 4955, instead of in piecemeal fashion. *See McGhan Medical Corp. v. Superior Court*, 11 Cal. App. 4th 804, 814 (1992) (finding preparation for trial of similar actions "better achieved if done in a coordinated manner"). Coordination also removes the possibility of inconsistent rulings and the need for multiple appeals. *See* Cal. Civ. Proc. Code § 404.1 (noting the "disadvantages of duplicative and inconsistent rulings, orders, or judgments"). Coordination will also increase the likelihood of a universal settlement of the Included Actions.

In addition to reducing the burden on assigned judges' calendars in the Included Actions and more efficiently utilizing judicial facilities and resources, coordination will further serve the interests of convenience to the parties, witnesses, and counsel. Coordination will serve the convenience of counsel who will not have to make appearances on the same or similar issues in multiple courtrooms on separate days. Coordination will also serve the convenience of the parties and witnesses who, with a streamlined and organized discovery process in place, would avoid duplicative depositions.

## V.    **CONSENT OF THE OTHER PARTIES**

At the time of the filing of the instant Petition, Petitioner herein and Plaintiff in the each of the Included Action has consented to coordination of the Included Actions in JCCP No. 4955 as add-on cases. (Baghdadi Decl. ¶ 11.)

The defendants named in the Included Actions have agreed to coordination and so stipulate that the coordination of the Included Actions into JCCP No. 4955 is appropriate. (Baghdadi Decl. ¶ 11.)

Petitioner and the defendants agree that other actions that have been brought against the Defendants by numerous plaintiffs, which are pending in this Court and other Superior Courts, also should be coordinated with the Included Actions once they are added to JCCP No. 4955. The parties do not presently have a stipulation with the numerous plaintiffs for coordination of the other actions. A stipulation will be submitted if it is obtained. Otherwise, a motion will be brought to add-on the other cases for coordination. (Baghdadi Decl. ¶ 13.)

- 10 -

## VI. HEARING ON THE PETITION

If no defendant in the Included Actions serves and submits a written opposition to this Petition within the time allowed by California Rule of Court 3.544(b), Petitioner requests that this Petition be granted without a hearing. If any such written opposition is timely served and submitted, then Petitioner requests a hearing be conducted, should the Court deem a hearing necessary.

## VII. CONCLUSION

For the reasons stated above, the Petition for Coordination of Add-On Cases should be granted.

Dated: ___May 13___, 2021          WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____

MICHAEL A. KELLY
KHALDOUN A. BAGHDADI
650 California Street, 26th Floor
San Francisco, CA 94108
Tel: (415) 981-7210
Fax: (415) 391-6965
mkelly@walkuplawoffice.com
kbaghdadi@walkuplawoffice.com


ANDREWS & THORNTON

SEAN T. HIGGINS
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Tel (949) 748-1000
Fax (949) 315-3540
shiggins@andrewsthornton.com

- 11 -

GREENBERG GROSS LLP

    ALAN A. GREENBERG
    WAYNE R. GROSS
    EVAN C. BORGES
    601 South Figueroa Street, 30th Floor
    Los Angeles, California 90017
    Tel: (213) 334-7000
    Fax: (213) 334-7001
    AGreenberg@GGTrialLaw.com
    WGross@GGTrialLaw.com
    EBorges@GGTrialLaw.com

COTCHETT PITRE & McCARTHY

    FRANK M. PITRE
    San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
    Burlingame, CA 94010
    Tel: (650) 697-6000
    Fax: (650) 697-0577
    fpitre@cpmlegal.com

DREYER, BABICH, BUCCOLA, WOOD, CAMPORA

    STEVEN M. CAMPORA
    20 Bicentennial Circle
    Sacramento, CA 95826
    Tel: (916) 379-3500
    Fax: (916) 379-3599
    scampora@dbbw.com

COREY, LUZAICH, DE GHETALDI & RIDDLE, LLP

    DARIO de GHETALDI
    700 El Camino Real
    PO Box 669
    Millbrae, CA 94030
    Tel: (650) 871-5666
    Fax: (650) 871-4144
    deg@coreylaw.com

    **Attorneys for Petitioner John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust**

- 12 -

Case: 19-30088   Doc# 14555-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page 58 of 173

## **DECLARATION OF KHALDOUN BAGHDADI**

I, Khaldoun Baghdadi, hereby state and declare as follows:

1. I am admitted to practice before this Court and am a Partner at the law firm of Walkup, Melodia, Kelly & Schoenberger, counsel for Petitioner, John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust. I make this declaration in support of the instant Petition for Coordination of Add-On Cases. If called as a witness I could competently testify to the following based upon my own personal knowledge, except where based on a review of pleadings and records.

2. The Petition seeks to coordinate the following actions with Judicial Council Coordination Proceeding No. 4955 – CALIFORNIA NORTH BAY FIRE CASES ("JCCP No. 4955") as add-on cases:

   a. *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. Davey Resource Group, Inc., et al.*, San Francisco County Superior Court Case No. CGC-21-589438 (complaint filed on January 28, 2021);

   b. *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. Davey Resource Group, Inc., et al.*, San Francisco County Superior Court Case No. CGC-21-589439 (complaint filed on January 28, 2021);

   c. *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. ACRT Pacific, LLC, et al.*, San Francisco County Superior Court Case No. CGC-21-589441 (complaint filed on January 28, 2021)

3. No pretrial motions have been pursued in the Included Actions. Attached hereto as Exhibit A is a chart prepared by Petitioner pursuant to California Rule of Court 3.521 listing the parties to the Included Actions and their respective known attorneys of record, the status of pretrial or discovery motions or orders, and the status of service of the complaints and summonses on Defendants.

4. Attached hereto as Exhibits B-D are true and correct copies of the operative complaints in Included Actions.

5. The Included Actions are "complex" as that term is defined by California Rules of Court 3.400 *et seq*. The Included Actions are complex because they all will they require extensive

- 13 -

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page
59 of 173

judicial management to avoid placing unnecessary burdens on the courts and the litigants and to expedite the cases, keep costs reasonable, and promote efficient decision making by the courts, the parties, and counsel. Among other things, Petitioner anticipates that the Included Actions will involve numerous pretrial motions raising difficult and novel legal issues that will be time-consuming to resolve.

6. As with the actions against Pacific Gas and Electric Company ("PG&E") that were the subject of JCCP No. 4955, the Included Actions also will likely involve a large number of witnesses and a substantial amount of overlapping discovery and documentary evidence concerning many individual tree inspections and trimmings, training materials and courses, hiring decisions, supervisory decisions, investigations by regulatory and enforcement agencies, and other complex factual issues. At the same time, litigating the Included Actions likely will require dozens of expert witnesses.

7. Petitioner has asserted claims against eight separate defendants spanning the three Included Actions. While Petitioner is represented by the same counsel in each action, the Included Actions will involve multiple separately represented defendants.

8. Petitioner anticipates that the Included Actions will be motion intensive, including discovery motions, dispositive motions, and other pretrial motions on scientific or other factual issues. Coordination will avoid the potential for inconsistent rulings on nearly identical motions and avoid wasteful, duplicative motion practice.

9. Nearly every question of law or fact that can be reasonably expected to arise in the Included Actions regarding the vegetation management contractors will be the same, including the question of their duty and issues of liability. Indeed, the only issues that foreseeably will differ between cases is the amount of damages claimed by Plaintiff and issues of specific-causation.

10. The Included Actions are currently pending in San Francisco County Superior Court; the JCCP is similarly based in San Francisco County. Coordination also will serve the convenience of counsel as well as serve the convenience of the parties and witnesses who, with a streamlined and organized discovery process in place, would avoid duplicative depositions. So too will having one judge rule on multiple similar motions save counsel from filing duplicative

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page
60 of 173

motions. With one pretrial judge, multiple courts will not have to review nearly identical motions which are apt to occur on motions to quash, discovery motions, and other pretrial motions. This will help foster judicial economy and preserve valuable judicial resources. Again, this case could potentially involve a number of voluminous motions, including demurrers, discovery motions, and other pretrial motions on scientific or other factual issues. Coordination will avoid the potential for inconsistent rulings on nearly identical motions and avoid wasteful, duplicative motion practice. Coordination will also allow for an efficient pretrial process which may encourage settlement since such a process will allow the parties to conserve resources while affording them an opportunity to assess all of the cases on their factual merits.

11. On behalf of my client—Petitioner and plaintiff in the Included Actions—I consent to coordination of the Included Actions as add-on cases in JCCP No. 4955. Counsel for each of the defendants in the Included Actions (listed in Exhibit A to this Declaration) have consented to coordination of the Included Actions as add-on cases in JCCP No. 4955.

12. Petitioner is informed and believes that San Francisco County Superior Court has sufficient facilities and judicial resources to coordinate the Included Actions JCCP No. 4955, and that San Francisco provides an easy location for witnesses arriving to proceedings from out of town.

///

///

///

///

///

///

///

///

///

///

///

///

- 15 -

13.     Petitioner and the defendants in the Included Actions have agreed that other actions that have been brought against the defendants by numerous plaintiffs, which are pending in this Court and other Superior Courts, should be coordinated with the Included Actions once they are added to JCCP No. 4955. The parties do not presently have a stipulation with the numerous plaintiffs for coordination of the other actions. A stipulation will be submitted to the Court if it is obtained. Otherwise, a motion will be brought to add-on the other cases for coordination.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ____13____th day of May, 2021, in San Francisco, California.


_____
Khaldoun Baghdadi

PETITION FOR COORDINATION OF ADD-ON CASES

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page 62 of 173

# EXHIBIT A

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page
63 of 173

EXHIBIT A TO DECLARATION OF KHALDOUN BAGHDADI ISO OF PETITION FOR COORDINATION OF ADD-ON CASES

| Case Name | Case No. | Court Filed | Plaintiffs | Defendant Name and Name/Address of Attorney and Status of Service of Summons/Complaint | Date Filed | Status of Pretrial/Discovery Motions and Orders |
|---|---|---|---|---|---|---|
| *John K Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. Davey Resource Group, Inc., et al.* | CGC-21-589438 | San Francisco County Superior Court | John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust | DAVEY RESOURCE GROUP, INC.; DAVEY TREE EXPERT COMPANY; DAVEY TREE SURGERY COMPANY ✓ Summons/Complaint served Aldo E. Ibarra, Esq.; Robert M Blum, Esq.; Penny Azizi, Esq.; **Nixon Peabody, LLP** One Embarcadero Center, 32nd Floor, San Francisco, CA 94111 THE ORGINAL MOWBRAYS TREE SERVICE, INC. ✓ Summons/Complaint served Michael I. Kim, Esq. **CKB Vienna LLP** 9531 Pittsburg Avenue Rancho Cucamonga, CA 91730 WESTERN ENVIRONMENTAL CONSULTANTS, INC. ✓ Summons/Complaint served Randy W. Gimple, Esq.; A. David Bona, Esq. **Carlson Calladine & Peterson LLP** 353 Sacramento Street, 16th Floor San Francisco, CA 94111 | 1/28/2021 | None |

| | | | | | 1/28/2021 | None |
|---|---|---|---|---|---|---|
| *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. Davey Resource Group, Inc., et al.* | CGC-21-589439 | San Francisco County Superior Court | John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust | DAVEY RESOURCE GROUP, INC., DAVEY TREE EXPERT COMPANY; DAVEY TREE SURGERY COMPANY<br>➢ Summons/Complaint served<br>➢ Aldo E. Ibarra, Esq.; Robert M. Blum, Esq.; Penny Azizi, Esq.; **Nixon Peabody, LLP**<br>One Embarcadero Center, 32nd Floor, San Francisco, CA 94111 | | |
| *John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust v. ACRT Pacific, LLC, et al.* | CGC-21-589441 | San Francisco County Superior Court | John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust | ACRT PACIFIC, LLC; ACRT, INC.<br>➢ Summons/Complaint served<br>➢ Brendan P. Bradley, Esq.<br>**Gordon & Rees LLP**<br>275 Battery Street, Suite 2000, San Francisco, CA 94111<br>DAVEY RESOURCE GROUP, INC.; DAVEY TREE EXPERT COMPANY; DAVEY TREE SURGERY COMPANY<br>➢ Summons/Complaint served<br>➢ Aldo E. Ibarra, Esq.; Robert M. Blum, Esq.; Penny Azizi, Esq.; **Nixon Peabody, LLP**<br>One Embarcadero Center, 32nd Floor, San Francisco, CA 94111<br>OSMOSE UTILITIES SERVICES, INC.<br>➢ Summons/Complaint served<br>➢ David S. Wilgus, Esq.<br>**Burnham Brown**<br>1901 Harrison Street, 13th Floor, Oakland, CA 94612 | 1/28/2021 | None |

# EXHIBIT B

1  MICHAEL A. KELLY (State Bar #71460)
   mkelly@walkuplawoffice.com
2  KHALDOUN A. BAGHDADI (State Bar #190111)
   kbaghdadi@walkuplawoffice.com
3  **WALKUP, MELODIA, KELLY**
   **& SCHOENBERGER**
4  650 California Street, 26th Floor
   San Francisco, CA 94108
5  Telephone:   (415) 981-7210
   Facsimile:   (415) 391-6965

6  ANNE ANDREWS (Bar No. 103280)
   aandrews@andrewsthornton.com
7  JOHN C. THORNTON (Bar No. 84492)
   jct@andrewsthornton.com
8  SEAN T. HIGGINS (Bar No. 266888)
   shiggins@andrewsthornton.com
9  ROBERT S. SIKO (Bar No. 312856)
   rsiko@andrewsthornton.com
10 **ANDREWS & THORNTON**
   4701 Von Karman Ave, Suite 300
11 Newport Beach, California 92660
   Telephone:   (949) 748-1000
12 Facsimile:   (949) 315-3540

13 (ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGES)

14 ATTORNEYS FOR PLAINTIFF JOHN K. TROTTER,
   JR., TRUSTEE OF THE PG&E FIRE VICTIM TRUST
15

**F I L E D**
Superior Court of California
County of San Francisco

JAN 28 2021

CLERK OF THE COURT
BY: _____
Deputy Clerk

16              SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                        COUNTY OF SAN FRANCISCO

18

19 JOHN K. TROTTER, JR., Trustee of the       Case No. CGC - 21 - 589438
   PG&E Fire Victim Trust,
20                                            **COMPLAINT FOR DAMAGES**
                    Plaintiff,
21                                            1) Breach of Contract (Performance and
        v.                                       Express Contractual Indemnity)
22                                            2) Breach of Contract (Insurance)
   DAVEY RESOURCE GROUP, INC.;                3) Breach of Implied Duty of Good Faith
23 DAVEY TREE EXPERT COMPANY;                    and Fair Dealing
   DAVEY TREE SURGERY COMPANY;                4) Equitable Indemnity
24 THE ORIGINAL MOWBRAYS TREE                 5) Negligence
   SERVICE, INC.; WESTERN                     6) Professional Negligence
25 ENVIRONMENTAL CONSULTANTS,                 7) Unjust Enrichment
   INC.; and DOES 1 through 25, inclusive,
26                                            **JURY TRIAL DEMANDED**
                    Defendants.
27

28
                                      1
                            COMPLAINT FOR DAMAGES

Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust (the "Trustee" or "Plaintiff"), brings this action against Davey Resource Group, Inc., Davey Tree Expert Company, Davey Tree Surgery Company, The Original Mowbrays Tree Service Inc., and Western Environmental Consultants, Inc., (hereinafter collectively referred to as "VM Defendants" or "Defendants") as follows:

## NATURE OF THE ACTION

1.    Prior to 2020, Pacific Gas & Electric Company ("PG&E")[1] owned and operated a power grid and electrical system, which was the cause of several catastrophic wildfires, including: the Butte Fire on September 9, 2015, the Adobe, Atlas, Norrbom, Nuns, Partrick, Point, Sulphur, and Tubbs Fires on October 8 and 9, 2017[2], and the Camp Fire on November 8, 2018 (collectively, the "Wildfires"). Each of these fires started because of separate and distinct failures to observe due care, as well as the failure to fulfill statutory and contractual obligations on the part of the defendants named herein.

2.    On January 29, 2019, PG&E filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California, as a result of PG&E's substantial and overwhelming liabilities associated with the 2015, 2017, and 2018 Wildfires caused by its electrical equipment. (*In re PG&E Corp.* (Bankr. N.D. Cal.) Case No. 19-30088, Docket Entry Nos. 7711 and 8053.) After notice to all interested parties, the Bankruptcy Court confirmed a bankruptcy plan binding on PG&E, its creditors, and all parties in interest, including the victims of the Wildfires (the "Plan"), as of the Effective Date. (*In re PG&E, supra,* Docket Entry No. 8053.)

---

[1] As used herein, "PG&E" refers to the former Pacific Gas & Electric Company as it existed prior to the effective date of its Chapter 11 bankruptcy plan of July 1, 2020 (the "Effective Date"), and not the newly emerged Pacific Gas & Electric Company.

[2] The Oakmont/Pythian Fire started on or about October 13, 2017. For ease of reference to the firestorm commonly referred to as the "North Bay Fires", this Complaint will refer to October 8 and 9, 2017 as the ignition dates.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2

COMPLAINT FOR DAMAGES

3.     The Plan provided, among other things, for the creation of the Fire Victim Trust. *Id.* Pursuant to the Plan, by operation of federal law, PG&E assigned to the Trust certain rights, claims, and causes of action (the "Assigned Rights and Causes of Action"). The Assigned Rights and Causes of Action include "any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the prepetition Fires that the Debtors may have against vendors, suppliers, third party contractors and consultants (including those who provided services, directly or indirectly, regarding the Debtors' electrical system, system equipment, inspection and maintenance of the system, and vegetation management)." (*In re PG&E, supra,* Docket Entry No. 7712-1 at 1.) The claims pursued by the Trustee in this Complaint are within the Assigned Rights and Causes of Action.)

4.     The Trust was established for two overall purposes: (1) to provide compensation to victims of the Wildfires based on a claims-administration process; and (2) to recover additional funds for the benefit of victims of the Wildfires, including by bringing the Assigned Rights and Causes of Action on behalf of PG&E against other responsible parties. This Complaint is an asset recovery action against responsible third parties brought for the benefit of the victims of the Wildfires.

5.     Each VM Defendant contributed to PG&E's failure to mitigate the risk of wildfires through PG&E's systems for evaluating, inspecting and clearing trees and vegetation overgrowth, as well as other vegetation hazards such as disease and decay, in proximity to PG&E transmission and distribution lines, as necessary to comply with California regulations regarding management of vegetation along utility power lines. Each VM Defendant entered into lucrative contracts with PG&E to implement its vegetation management programs, practices, policies, and procedures (PG&E's "VM Program"). In those contracts, each VM Defendant promised PG&E that it would perform VM Program services to reduce the risk of wildfire caused by

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1   vegetation issues and otherwise assist PG&E in complying with its regulatory duties.

2   Each VM Defendant thereby joined PG&E in the solemn duty to prevent the deadly

3   and catastrophic wildfires that could be caused by PG&E equipment.

4       6.    During the relevant time period, each VM Defendant participated in,

5   implemented and executed PG&E's VM Program.

6       7.    All VM Defendants held themselves out as fully capable to advise

7   regarding, if not experts in, evaluating and managing trees and other vegetation

8   that, due to their proximity to power transmission and distribution lines, pose a risk

9   of damaging utility lines and causing fires. Each VM Defendant subsequently failed

10  to perform or negligently performed their duties. In addition to PG&E itself, the

11  known and foreseeable victim of wildfires, who would be injured and damaged by VM

12  Defendants' breach of their duties, were California residents and businesses in the

13  area of the PG&E electrical grid in Northern California. The VM Defendants' acts

14  and omissions were substantial contributing causes of the Wildfires.

15      8.    The failures that caused the Wildfires arose from the combined conduct

16  of PG&E and VM Defendants, each of whom failed in their essential roles in reducing

17  the risk of fires caused by vegetation.

18      9.    In the aftermath of the Wildfires, California regulatory officials

19  uncovered PG&E practices permitting dangerous conditions, which caused the

20  individual Wildfires, to go uncorrected. In particular, California regulatory officials

21  found that PG&E failed to abide by legal safety requirements for managing

22  vegetation near its power lines. These substandard, negligent and dangerous

23  practices were contributed to, caused, and/or exacerbated by VM Defendants'

24  breaches of their contractual duties and duties of care with respect to PG&E's VM

25  Programs.

26  ////

27  ////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

4

COMPLAINT FOR DAMAGES

# GENERAL ALLEGATIONS

## A.     The Parties

10.     <u>Plaintiff Trustee of the PG&E Fire Victim Trust</u>. Plaintiff John K. Trotter, Jr. is the duly appointed Trustee of the PG&E Fire Victim Trust (the "Fire Victim Trust" or the "Trust"), which was established pursuant to the Plan. The Trustee is a resident of the State of California. The Trust is a Delaware statutory trust.

11.     The Plan resulted in the creation of the Trust. Case No. 19-30088, D.E. 8053. The Trust was established to administer individual victims' claims against PG&E related to the Wildfires, which were caused by PG&E's electrical equipment.

12.     <u>Defendant Davey Resource Group, Inc.</u> Davey Resource Group, Inc., ("Davey Resource") is a corporation organized and existing under the laws of Delaware with its principal place of business in Kent, Ohio. At all relevant times, Davey Resource has been licensed to do business in and actually conducted business in the State of California. Davey Resource is a professional services company offering a suite of vegetation management services for utility operations, including performance of pre-inspection duties for utilities' vegetation management programs, auditing or quality control of vegetation management work, creation of vegetation clearance work orders, and other related vegetation management work. In the course of said business, Davey Resource was hired by and performed vegetation management services for PG&E in the State of California as herein alleged. On information and belief, at a minimum, Davey Resource performed such services in connection with the Atlas, Partrick, Nuns, and Tubbs Fires, and may have performed vegetation management services in connection with additional separate fires.

13.     <u>Defendant Davey Tree Expert Company</u>. Davey Tree Expert Company ("Davey Tree Expert") is a corporation organized and existing under the laws of Ohio with its principal place of business in Kent, Ohio. At all relevant times, Davey Tree

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

5

Expert has been licensed to do business in and actually conducted business in the State of California. Davey Tree Expert is a professional services company offering a suite of vegetation management services for utility operations, including responding to vegetation management work orders, performance of line clearance for vegetation issues, recording and logging clearance work performed, and, in the course of said business, was hired by and performed vegetation management services for PG&E in the State of California as herein alleged. On information and belief, at a minimum, Davey Tree Expert performed such services in connection with the Adobe, Atlas, Norrbom, Nuns, Partrick, Tubbs, and Sulphur Fires, and may have performed vegetation management services in connection with additional separate fires.

14. <u>Defendant Davey Tree Surgery Company</u>. Davey Tree Surgery Company ("Davey Tree Surgery") is a corporation organized and existing under the laws of Delaware with its principal place of business in Kent, Ohio. At all relevant times, Davey Tree Surgery has been licensed to do business in and actually conducted business in the State of California. Davey Tree Surgery is a professional services company offering a suite of vegetation management services for utility operations, including responding to vegetation management work orders, performance of line clearance for vegetation issues, recording and logging clearance work performed, and, in the course of said business, was hired by and performed vegetation management services for PG&E in the State of California as herein alleged. On information and belief, at a minimum, Davey Tree Surgery performed such services in connection with the Adobe, Atlas, Norrbom, Nuns, Partrick, Tubbs, and Sulphur Fires, and may have performed vegetation management services in connection with additional separate fires.

15. <u>Defendant Original Mowbrays Tree Service</u>. The Original Mowbrays Tree Service, Inc. ("Mowbrays") is a corporation organized and existing under the laws of California with its principal place of business in San Bernardino, California.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

6

Mowbrays is a professional services company offering a suite of vegetation management services for utility operations, including responding to vegetation management work orders, performance of line clearance for vegetation issues, recording and logging clearance work performed, and, in the course of said business, was hired by and performed vegetation management services for PG&E in the State of California as herein alleged. On information and belief, at a minimum, Mowbrays performed such services in connection with the Adobe and Nuns Fires, and may have performed vegetation management services in connection separate additional fires.

16. <u>Defendant Western Environmental Consultants</u>. Western Environmental Consultants, Inc. ("Western EC") is a corporation organized and existing under the laws of California with its principal place of business in Willow Grove, Pennsylvania. Western EC a professional services company offering a suite of vegetation management services for utility operations, including performance of pre-inspection duties for utilities' vegetation management programs, auditing or quality control of vegetation management work, creation of vegetation clearance work orders, and other related vegetation management work. In the course of said business, Western EC was hired by and performed vegetation management services for PG&E in the State of California as herein alleged. On information and belief, at a minimum, Western EC performed such services in connection with the Adobe, Norrbom, and Nuns Fires, and may have performed vegetation management services in connection with additional separate fires.

17. At all relevant times, each VM Defendant was a business entity doing business in the State of California. Each VM Defendant held itself out as an expert in one or more of (1) performance of pre-clearance line inspection for vegetation issues, (2) performance of line clearance of vegetation issues, or (3) auditing or quality control of vegetation management work. At all relevant times, each Defendant was hired by PG&E to perform services in connection with its VM Program, with such

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

7

1  services to be performed in California.

2    18. Each Defendant was a contractor, vendor, supplier, or third-party

3  contractor of PG&E, as defined in the Plan. Thus, PG&E's claims against the

4  Defendants are included in the Plan's Assigned Rights and Causes of Action. To the

5  extent that one or more of the Defendants have been purchased by, merged into, or

6  changed its form such that it is now owned and/or controlled by a successor, the

7  Trustee asserts the claims asserted herein against such successors, and such

8  successors are liable for the injuries and damages alleged herein. The Trust will seek

9  leave to amend this Complaint to identify any such successors, once information

10  regarding any successors is developed and/or confirmed.

11    19. The true names, capacities and basis for liability, whether individual,

12  corporate, partnership, or otherwise, of Doe Defendants 1 through 25, and each of

13  them, are unknown to the Trustee, who therefore sues said Defendants by such

14  fictitious names. The Trustee is informed and believes that each Defendant

15  designated herein as a Doe was in some manner legally responsible for the events,

16  acts, omissions, and damages alleged herein. Any reference herein to the Defendant

17  Consultants includes Doe Defendants 1 through 25, inclusive.

18    **B.** **Jurisdiction and Venue**

19    20. This Court has personal jurisdiction over VM Defendants because this

20  suit arises from the Wildfires, which occurred in California, caused damage to PG&E

21  in California, and was caused by Defendants' services performed pursuant to

22  contracts entered in San Francisco County. Each Defendant is qualified to do

23  business in the State of California.

24    21. Pursuant to California Code of Civil Procedure § 395(a), venue is proper

25  in this Court as the agreements that provide a basis for liability herein were entered

26  into in the County of San Francisco, State of California.

27    22. The allegations contained and remedies sought herein share common

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

8

1 questions of law and fact such that they should be coordinated or otherwise added on
2 to JCCP 4955, In Re California North Bay Fire Cases.

C.    **Factual Allegations**

1.    **PG&E's VM Programs**

23.    PG&E is a utility company that supplies electrical power by way of
overhead conductors throughout California, from Humboldt County to Santa Barbara
County. PG&E has identified wildfires caused by its electrical equipment as a top
safety and enterprise risk.

24.    To protect against the risk of wildfires caused by its electrical
equipment, PG&E utilized its VM Program. The policies, processes, procedures, and
practices of PG&E's VM Program are designed to comply with the regulations of the
California Public Utility Commission ("CPUC") and the California Department of
Forestry and Fire Protection ("CAL FIRE"), as well as other relevant laws, statutes
and regulations.

25.    Through its VM Program, PG&E monitors approximately 100,000 miles
of high-voltage overhead lines across a 70,000-square mile service area. Within that
service area, PG&E is responsible for monitoring approximately 120 million trees
that have the potential to grow close to, or fall on, overhead lines.

26.    During the relevant time period, PG&E's VM Program for its
distribution lines included but was not limited to, Catastrophic Event Memorandum
Account ("CEMA") patrols and Routine patrols. CEMA patrols were a system-wide
program of patrolling PG&E's service area, to identify, prescribe, and document work
to be conducted on hazardous trees that threatened PG&E's overhead lines. Routine
patrols involved patrolling and conducting tree work along PG&E's high-voltage
distribution lines to comply with CPUC General Order 95, Rule 35, and Public
Resources Code sections 4292 and 4293.

27.    A CEMA patrol or Routine patrol consisted of pre-inspection, tree work,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

9

COMPLAINT FOR DAMAGES

Case 19-30088    Doc# 14559-4    Filed 08/02/24    Entered 08/02/24 13:43:17    Page
75 of 173

1   and quality control analysis of the pre-inspection and tree work.

2       28.     PG&E outsourced the entirety of these functions to third-party
3   vendors—the VM Defendants—that specialized in pre-inspection, tree work, or
4   quality control.

5       29.     PG&E required onboarding or training to be completed by each VM
6   Defendant. Pursuant to contracts between PG&E and the VM Defendants, it is each
7   VM Defendant's responsibility to train its workforce.

8       30.     Each year, PG&E spends several hundred million dollars on vegetation
9   management. As part of the vegetation management planning process, PG&E
10  determines annually the number of planned trees that need to be maintained, as well
11  as the annual pre-inspection time. To ensure reliability, pre-inspection contractors
12  are required to meet schedule attainment metrics for both CEMA and Routine
13  patrols.

14      31.     The pre-inspection process involves a contractor's pre-inspectors, also
15  referred to as consulting utility foresters ("CUFs") or supervising consulting utility
16  foresters ("SCUFs"), patrolling the lines listed in PG&E's project management
17  database and looking for vegetation conditions that are potentially problematic for
18  PG&E's overhead lines.

19      32.     Under PG&E's Vegetation Management Improvement Initiative
20  ("VMII"), pre-inspection contractors can earn an incentive if the actual number of
21  trees identified for work is less than the pre-set target number.

22      33.     On January 12, 2012, the CPUC issued Decision 12-01-032, which
23  sought to reduce the risk of fire hazards associated with overhead power lines and
24  communication facilities. The CPUC decision required a determination of the risk of
25  catastrophic fires in the service territory of electrical utilities caused by their
26  overhead electrical facilities and the preparation of a fire prevention plan with an

27

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

10

1  effective date of December 21, 2012[3]. In response to CPUC Decision 12-01-032, PG&E

2  developed a companywide "Fire Prevention Plan."

3      34.    PG&E has developed a number of wildfire safety plans since 2012. Each

4  VM Defendant was hired by PG&E to be an integral part of its safety plans, and

5  specifically the implementation and execution of VM Programs to improve safety,

6  reduce the risk of tree failure into PG&E lines, and prevent wildfires.

7          **2.      The Wildfires**

8              **(a)      2017 North Bay Fires**

9      35.    On Sunday, October 8, 2017, tragedy struck communities across

10  Northern California when a series of separate fires began to spark and spread. These

11  deadly fires quickly spread through neighborhoods and destroyed everything in their

12  path, including residences, vegetation, structures, and businesses.

13      36.    The North Bay Fires are collectively some of the most destructive fires

14  in California's history. In just a few weeks, the fires caused the deaths of at least 44

15  people, hospitalized over 185 individuals, displaced about 100,000 people who were

16  forced to leave their homes and search for safety, burned over 245,000 acres, and

17  damaged or destroyed an estimated 14,700 homes, 3,600 vehicles, and 728

18  businesses. A summary of the specific and distinct fires relevant to this action is as

19  follows:

20              **(i)      The Nuns Fire**

21      37.    The Nuns Fire started near Highway 12, north of Glen Ellen, at around

22  10:00 P.M. on October 8, 2017. It later merged with the Norrbom, Adobe, Partrick,

23  Pressley, and Oakmont fires. Two separate broken power poles were reported at

24  Highway 12 north of Glen Ellen, where the Nuns Fire started. At 10:40 P.M. Sonoma

25  dispatchers were called to respond to a blown transformer at Oak Leaf and Old Oak

26  Lane. The Nuns Fire was the sixth most destructive in the state's history. An Alder

27

[3] https://www.pge.com/nots/rates/tariffs/tm2/pdf/ELEC_4167-E.pdf

11

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

COMPLAINT FOR DAMAGES

tree stem fell onto open wire on PG&E's conductors and started the fire. After merging with the Norrbom, Adobe, Partrick, Pressley and Oakmont/Pythian Fires, the Nuns Fire burned a total of 56,556 acres, destroyed over 1,500 structures, and killed three people.

### (ii)   The Adobe Fire

38.     The Adobe Fire started on October 8, 2017 at Chateau St. Jean Winery in Kenwood (Sonoma) when a Eucalyptus tree struck power lines on PG&E's Dunbar-1101 12 kV circuit near 8555 Sonoma Highway. The Adobe Fire later merged into the Nuns Fire.

### (iii)   The Partrick Fire

39.     The Partrick Fire started on October 8, 2017 at 1721 Partrick Road in the city of Napa when a Coast Live Oak tree struck power lines on PG&E's 12 kV conductors. The Partrick Fire merged into the Nuns Fire.

### (iv)   The Norrbom Fire

40.     The Norrbom Fire started on October 8, 2017 near 16200 Norrbom Road in the city of Sonoma when a Black Oak tree branch failed and hit PG&E's power lines, sparking and igniting the tree and surrounding terrain. The Norrhom Fire later merged into the Nuns Fire.

### 3.   VM Defendants' Engagement

41.     Prior to 2017, each VM Defendant entered into a written contract with PG&E that mandated the provision of vegetation management services. The specific content has been designated as "Confidential" or otherwise restricted from public disclosure in prior litigation involving these defendants. Plaintiff accordingly describes the general terms and obligations imposed by the agreements, all of which are in possession of the defendants.

a.     patrolling distribution and transmission lines to identify and assess required tree work, including such hazardous trees or

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

12

COMPLAINT FOR DAMAGES

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   13:43:17   Page 78 of 173

portions of trees with the potential to fail and come into contact
with high voltage conductors, trees near power lines that could
interfere with PG&E lines, vegetation with the potential to grow
into the primary conductors before the next annual trim or which
is currently causing strain/abrasion of the secondary conductors,
or trees which will not hold minimum clearance,

b.   mandates on the required timing of certification and training for
inspectors,

c.   prescribing work to be performed,

d.   entering work identified and prescription information into the
PG&E Vegetation Management Data Base (VMDB),

e.   editing the data in VMDB and creating work request form(s), and

f.   either undertaking to perform the work requested or assigning
the work to other PG&E contractors, as directed by PG&E.

Each VM Defendant is responsible for having a Quality Assurance Auditor to confirm
contractual compliance. Such auditor is required to have specific educational or
vocational training and experience. The essence of each VM Defendant's contract was
to ensure the safe and reliable operation of all PG&E distribution lines in compliance
with state laws and regulations.

42.   Additionally, each VM Defendant's contract contained a requirement
that each respective VM Defendant indemnify and hold harmless PG&E from
liability arising from personal injury, property injury/damage, violations of laws, or
strict liability imposed by law that is connected in any way with each VM
Defendant's performance of or failure to perform under the contract.

43.   Additionally, each VM Defendant's contract also obligates it to defend
any action, claim, or suit asserting a claim which might be covered by the above
indemnity, as well as pay all costs and expenses that may be incurred by PG&E in

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

13

COMPLAINT FOR DAMAGES

1 enforcing the indemnity, including reasonable attorney's fees.

2     44.    Each VM Defendant was aware that their contract required it to

3 indemnify PG&E even for liability that was not the result of VM Defendant's

4 negligence so long as the liability was in any way connected with Defendant's

5 performance of or failure to perform under the contract.

6     45.    Separate and apart from the indemnity provisions in the VM

7 Defendants' contracts with PG&E, each VM Defendant's contract required Defendant

8 to maintain insurance coverage, including Commercial General Liability insurance,

9 for each occurrence where the VM Defendant's performance under the contract is an

10 any way connected with fire-related liability. It also required each VM Defendant to

11 add PG&E as an "Additional Insured" to its Commercial General Liability coverage

12 requirement with respect to liability arising out of or connected with the work

13 performed by or for each VM Defendant. Each contract did not specify or limit to

14 what insurance policies PG&E was to be added as an Additional Insured; rather,

15 PG&E was to be added as an Additional Insured on each policy covering an instance

16 where each VM Defendant was required to maintain Commercial General Liability

17 insurance. The Pre-Inspection Contract also required that each VM Defendant's

18 insurance policies must specify that Defendant's insurance is primary and that any

19 insurance or self-insurance maintained by PG&E shall not contribute with it.

20     46.    Each VM Defendant's contract contains a provision stating that if it fails

21 to add PG&E as an Additional Insured, it must stand in the shoes of its insurance

22 carrier to the same extent as an insurer issuing ISO form occurrence coverage

23 without coverage deletions. Failure to do so, results in further damages, including

24 attorney's fees and punitive damages.

25     47.    As part of their contracts, VM Defendants were required to attain

26 schedule requirements on a weekly basis to ensure that trees adjacent to or near

27 PG&E's system lines are adequately inspected. During the term of the contract,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

14

COMPLAINT FOR DAMAGES

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   13:43:17   Page 80 of 173

however, Defendants continually and repeatedly fell behind their schedule
attainment requirements, including leading up to the Wildfires, sometimes by as
much as a year. In the North Bay Division alone, in October 2017, more than 3,000
trees were two months behind VM Defendants' pre-inspection schedule.

48.     Moreover, in 2017, PG&E required its pre-inspection contractors,
including VM Defendants, to identify 23 percent of the trees marked for treatment to
be marked for removal. A removal designation served to both lower the risk of fire by
protecting the electrical equipment and by diminishing the near for future tree work
on trees with the potential to contact power lines. Yet VM Defendants routinely
missed the removal threshold.

49.     At the time of the Wildfires, VM Defendants' pre-inspectors regularly
discussed amongst themselves how far behind schedule Defendants were in
complying with their contractual duties to inspect PG&E's power lines for hazardous
trees.

50.     VM Defendants were aware that their pre-inspectors did not have
adequate training to identify trees subject to the relevant contractual standards.

51.     VM Defendants were also aware that their pre-inspectors did not have
the contractually-required educational background and/or credentials to comply with
the Pre-Inspection Contract. VM Defendants also knew those inspectors were not
properly certified as required under the terms of the agreement.

52.     VM Defendants were aware that their pre-inspectors did not know of or
have the requisite knowledge to understand how to determine whether an inspection
complied with requisite contractual and industry standards. Despite their awareness,
VM Defendants did not test their pre-inspectors' knowledge of the relevant inspection
and trimming standards. Nor did they ensure that their pre-inspectors read relevant
materials designed to educate them about the relevant inspection and trimming
standards.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

COMPLAINT FOR DAMAGES

53. VM Defendants were further aware that their pre-inspectors had rushed through their pre-inspection work when they fell behind their scheduled attainment requirements.

54. When VM Defendants fell behind schedule, their pre-inspectors would attempt to rush through their work in order to qualify for contractual financial incentives.

55. At all times herein alleged, and prior to the Wildfires, each VM Defendant, was aware that if they failed to perform their duties, as required under their agreements with PG&E, to the standard required of an expert in the industry, there was a significant risk of fire, damage to property owned by members of the general public, and the death to members of the general public. The VM Defendants failed to inspect the trees as required under the terms of the contract, specifically including, but not limited to, failing to inspect, prune, remove and identify trees as required by PG&E Vegetation Management program.

56. Specifically, each VM Defendant was aware of the significant wildfire risk posed by trees or other vegetation coming into contact with high voltage electrical transmission and distribution lines during high wind events in Northern California. More specifically, each VM Defendant was aware that prior to the Wildfires, the State of California, and in particular the counties affected by the Wildfires, had been in a prolonged state of drought. VM Defendants, and each of them, knew or should have known that the drought conditions had existed for a number of years and that fire danger was at an extraordinarily high level. VM Defendants, and each them, as arborists and vegetation experts, were aware or should have been aware that, at the time of the Wildfires, there was an abundance of undergrowth and other fuels such that the risk of a catastrophic fire was high. Each VM Defendant was aware that there had been a long history of large-scale wildfires ignited during high winds, like the Santa Ana winds, causing trees to fall into PG&E

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

16

COMPLAINT FOR DAMAGES

electrical equipment, as well as other utilities' electrical equipment, across
California.

57.     Each VM Defendant knew or should have known that the members of
the public were at great risk if they failed to fulfill their duties and perform to the
standard of an expert in the utility arborist industry. Each VM Defendant knew that
if the lines came into contact with vegetation a fire would likely result and that,
given the drought and other weather conditions such as the Santa Ana winds, the
resulting fire could cause loss of life, personal injury, significant damage to real and
personal property, and other damage to members of the general public. The risk of
improperly trimmed or removed trees starting large-scale, costly, and deadly
wildfires by failing during high wind events and hitting electrical equipment was
well-documented and foreseeable to any reasonable company providing vegetation
management services to a utility. As a result of this known danger, each VM
Defendant had a heightened duty of care.

58.     Each VM Defendant held itself out as fully competent to perform and as
a professional expert with sufficient expert skill, training, and knowledge to identify
and trim or remove dangerous vegetation in close proximity to PG&E's infrastructure
and electrical operations. Accordingly, each VM Defendant's conduct should be
assessed under such professional standards.

59.     In addition, each VM Defendant had a duty to properly inspect and
identify trees and other vegetation that posed a risk to, or was endangered by,
PG&E's electrical lines, to mark such trees and other vegetation for work or removal,
and to remove or trim trees and other vegetation. Proper performance of these duties
was necessary for each VM Defendant to comply with applicable standards of care,
including but not limited to the Public Resources Code, industry standards, and
PG&E's policies and procedures.

60.     Each VM Defendant received lucrative contracts from PG&E to mitigate

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

17

COMPLAINT FOR DAMAGES

wildfire risk. Each VM Defendant executed one or more Master Services Agreements ("MSA") with PG&E to provide vegetation management services in support of PG&E's duty to operate its electrical equipment without causing fires. The primary purpose of each MSA was to provide a set of terms, conditions, and requirements that would apply to each VM Defendant's work for PG&E. In most cases, each VM Defendant's work was also governed by a specific Contract Work Authorization ("CWA") entered into under the respective MSA. The work performed by each VM Defendant under the relevant CWA was intended to identify and mitigate the risk of vegetation hitting PG&E transmission and distribution lines during high wind events, and thus reduce the risk of widescale wildfires being ignited by PG&E lines and dangerously spreading uncontrolled through communities across Northern California.

61.     Each VM Defendant was aware that if it failed to perform its contractual duties to the standard required of a professional expert, a significant risk existed of a catastrophic wildfire causing injury and death to persons within the fire perimeters as well as extraordinary property damage.

62.     Each VM Defendant undertook the duty to properly and reasonably perform vegetation management work to identify and remediate vegetation issues around PG&E lines.

63.     Each VM Defendant undertook the duty to use its professional training and experience, best efforts, and reasonable care to protect foreseeable victims of fires caused by PG&E's equipment, namely, Californians in the areas serviced by PG&E's electrical system.

64.     Each VM Defendant, in performing under its contracts with PG&E, understood and recognized that vegetation management services were for the benefit of both PG&E and the citizens of California, who were at risk of injury and damage from wildfires caused by tress or vegetation coming into contact with or otherwise

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

COMPLAINT FOR DAMAGES

damaging PG&E's electrical system.

65. Each VM Defendant also failed to take contractually required and industry-standard precautions that would have prevented the Wildfires from occurring.

### 4. PG&E Bankruptcy, Settlement and Assignment of Rights to the Fire Victim Trust

66. Each VM Defendant's respective failure to provide the contracted services to PG&E, or to do so competently, caused devastating financial losses for PG&E in the form of its own equipment losses, as well as liabilities (both via strict liability and otherwise) to third parties who suffered death, personal injury, or property damage as a result of the Wildfires.

67. As alleged above, PG&E under the Plan assigned to the Fire Victim Trust the right to bring the Assigned Rights and Causes of Action to provide compensation to victims of the Wildfires, including claims for damages and indemnification on behalf of PG&E.

68. Among the claims resolved by the Plan were claims based on any theory of inverse condemnation. (*See In re PG&E, supra*, Docket Entry No. 8053.)

69. Inverse condemnation is a legal principle, rooted in the California Constitution whereby utilities such as PG&E are held strictly liable for damage arising from fires caused by utility electrical equipment. (*See* Cal. Const., art. I, § 19.)

70. On November 26, 2019, the Bankruptcy Court held that inverse condemnation applied to PG&E for all of the 2017 Northern California Wildfires and the 2018 Camp Fire. (*See In re PG&E, supra*, Docket Entry No. 4895.)

71. As the Bankruptcy Court explained: "In short, the California Constitution imposes strict liability in favor of the owner of property that has been taken or damaged through a public use or purpose and does not concern itself with the rights or liabilities of whom or what did the damage. It is a form of strict liability

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

19

COMPLAINT FOR DAMAGES

1 imposed on the party causing, or whose equipment caused, the damage." (*Id.* at 3.)

2      72.    Each VM Defendant's indemnity obligations to PG&E include, but are

3 not limited to, the obligation to indemnify PG&E for its strict liability associated with

4 inverse condemnation based on the Wildfires. This indemnification obligation, and

5 other indemnification obligations of the VM Defendants, are within the Assigned

6 Rights and Causes of Action assigned to the Trust.

7      73.    As part of its Plan, PG&E agreed to settle its wildfire liabilities,

8 including but not limited to inverse condemnation liabilities, to injured third parties,

9 for a total of $25.5 billion, of which $13.5 billion was allocated for wildfire victims,

10 $11 billion was allocated for the subrogated insurers of wildfire victims, and $1

11 billion was allocated to certain public entities.

12      74.    The $13.5 billion allocated to wildfire victims was distributed to the

13 Trust for individual allocation to wildfire victims through a claims-handling process.

14      75.    On July 1, 2020, the assignment of the Assigned Rights and Causes of

15 Action to the Trust became effective under the Plan.

16      76.    Each VM Defendant has failed to indemnify PG&E for the damage

17 caused by the Wildfires.

18      77.    Claims to recover for each VM Defendant's failure to add PG&E as an

19 Additional Insured under its general liability policies as required under each VM

20 Defendant's contracts with PG&E, are within the Assigned Rights and Causes of

21 Action assigned to the Trust.

22 <center>**CAUSES OF ACTION**</center>

23 <center>**FIRST CAUSE OF ACTION**</center>

24 <center>**For Breach of Contract – Performance and Express Contractual Indemnity**</center>

25 <center>**(Against All VM Defendants)**</center>

26      78.    The Trustee incorporates by reference, as though set forth in full herein,

27 paragraphs 1 through 77 of this Complaint.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

<center>20</center>

79. Each VM Defendant and PG&E entered into a series of written contracts in the form of MSAs and CWAs, as herein alleged.

80. PG&E performed all, or substantially all, of the significant conditions, covenants, promises, and duties to be performed by it under its contracts with the VM Defendants, or such obligations have been excused.

81. All of the conditions that were required for each VM Defendant to perform under its respective contracts with PG&E have been satisfied and occurred.

82. A material term of each contract with the VM Defendants was that they would perform vegetation management work to identify, remove or trim vegetation within striking distance of PG&E's transmission and distribution lines pursuant to regulatory and industry standards to prevent vegetation from coming into contact with, or other damaging, PG&E equipment, especially during high wind events. VM Defendants were aware that improperly managed vegetation presented a significant risk of igniting wildfires.

83. A material term of each contract with the VM Defendants was that they would perform vegetation management work to comply with regulatory requirements of vegetation utility line clearance, including but not limited to:

      a. pre-clearance inspection of PG&E transmission and distribution lines to identify vegetation needing trimming, pruning or removal,

      b. timely clearance of vegetation in close proximity to PG&E transmission and distribution lines identified as needing trimming, pruning or removal,

      c. proper training of employees to recognize hazardous and dangerous trees and vegetation in close proximity to PG&E transmission and distribution lines, and

      d. compliance with vegetation management laws and regulations.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

21

COMPLAINT FOR DAMAGES

84. An express or implied term of each contract with the VM Defendants was that they would provide competent vegetation management services to PG&E, pursuant to its contractual obligations, so as to identify and mitigate vegetation that posed a risk to PG&E lines, in compliance with the applicable statutes, regulations, and standards.

85. The Wildfires were a direct, proximate, and legal result of each VM Defendant's breach of the express and implied terms of its contracts with PG&E by failing to perform vegetation management services with diligence and reasonable care.

86. Each VM Defendant further failed to provide competent vegetation management services to PG&E, pursuant to its contractual obligations to ensure the proper maintenance and safe operation of PG&E's electrical equipment in compliance with the applicable statutes, regulations and standards, resulting in the Wildfires.

87. Each VM Defendant's breaches under its respective contracts also include failure to trim, prune or remove trees and other vegetation that posed a risk of starting a fire by coming into contact or damaging PG&E's transmission or distribution lines. Defendants further failed to institute or recommend increasing the frequency and quality of inspections and line clearance as part of PG&E's VM Program. VM Defendants' failures resulted in the Wildfires.

88. As a result of each VM Defendant's failure to perform its express and implied contractual duties, PG&E has suffered damages, including incurring liability for personal injury, wrongful death, and property damage caused by the Wildfires. PG&E's liabilities arose from claims against it based on general negligence in the management of the electrical infrastructure, negligent violations of law, strict liability imposed by law, including inverse condemnation, damages incurred by subrogated insurers who covered claims made by wildfire victims, and damages sustained by certain public entities.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

22

89. Pursuant to the Plan, on the Effective Date, PG&E settled its liability from the Wildfires to such individuals and entities by, among other things, funding and committing to fund the Fire Victim Trust.

90. Each VM Defendant, pursuant to its contracts with PG&E, is required to indemnify PG&E for liability for personal injury and wrongful death claims, as well as all personal damage actions against PG&E arising from each VM Defendant's activity "connected in any way" to their vegetation management services and performance under the contracts.

91. PG&E, pursuant to the Plan, assigned to the Fire Victim Trust the right to recover from each VM Defendant its indemnity obligations to PG&E.

92. Additionally, each VM Defendant had a contractual duty to PG&E to protect PG&E's electrical equipment from contact with or damage from trees and other vegetation by taking due care to competently identity and remove or remediate hazardous vegetation next to PG&E's lines.

93. Each VM Defendant reasonably could have foreseen that its failure to meet its duties under its contracts would result in wildfires that would destroy PG&E's electrical equipment, which occurred and caused PG&E to suffer damages.

94. As a result of each VM Defendant's breach of its contractual duties, PG&E suffered damages in an amount to be proven at trial.

95. PG&E, pursuant to the Plan, assigned to the Fire Victim Trust the right to recover damages from the VM Defendants, for the benefit of the victims of the Wildfires, all damages suffered by PG&E based on the VM Defendant Consultants' above-described breaches of their contractual duties, including their contractual obligations to indemnify PG&E.

////
////
////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

23

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1

**SECOND CAUSE OF ACTION**

2

**For Breach of Contract - Insurance**

3

**(Against All VM Defendants)**

4   96.    The Trustee incorporates by reference, as though set forth in full herein,

5   paragraphs 1 through 95 of this Complaint.

6   97.    Each of the contracts between the VM Defendants and PG&E required

7   that each VM Defendant maintain insurance coverage, including Commercial

8   General Liability insurance with specified minimum coverage limits, and that VM

9   Defendants add PG&E as an "Additional Insured" to their respective Commercial

10  General Liability policies.

11  98.    On information and belief, each VM Defendant breached its contracts by

12  failing to ensure that PG&E was added as an "Additional Insured" to VM

13  Defendants' respective Commercial General Liability policies.

14  99.    On information and belief, PG&E timely tendered an indemnity demand

15  to each VM Defendant's general liability insurers and demanded that they indemnify

16  PG&E as an additional insured under the general liability policies.

17  100.   None of the VM Defendants' insurers have paid any portion of the

18  damages that PG&E has incurred. Consequently, PG&E has been deprived of the

19  insurance coverage that each VM Defendant was obligated to provide under its

20  contracts.

21  101.   Because VM Defendants' insurance carriers have failed or refused to

22  indemnify PG&E pursuant to an additional insured endorsement, each VM

23  Defendant is obligated to stand in the place of its insurers and indemnify PG&E.

24  Each VM Defendant breached its duty by failing to indemnify PG&E for any portion

25  of the damages that PG&E incurred in settling the Wildfire claims and funding the

26  Trust.

27  102.   The Trust's damages include the amounts that PG&E would have

28

24

1 received under the VM Defendants' insurance policies for indemnity with respect to
2 the litigation arising out of the Wildfires had the VM Defendants' general liability
3 policy insurers acknowledged PG&E as an Additional Insured and performed the
4 duties they owed to PG&E as an Additional Insured.

5     103. Given that VM Defendants stand in the place of their insurers, the
6 Trust is entitled to an award of attorneys' fees and punitive damages pursuant to the
7 contract with PG&E.

8 ## THIRD CAUSE OF ACTION

9 **For Breach of Implied Covenant of Good Faith and Fair Dealing**

10 **(Against All VM Defendants)**

11     104. The Trustee incorporates by reference, as though set forth in full herein,
12 paragraphs 1 through 103 of this Complaint.

13     105. Each VM Defendant and PG&E entered into written contracts in the
14 form of MSAs and CWAs, as herein alleged.

15     106. PG&E performed all of the conditions required of it under the contracts
16 with each VM Defendants.

17     107. All of the conditions required for each VM Defendant to perform under
18 the contract had occurred.

19     108. In each PG&E contract with each VM Defendant, California law implies
20 a covenant of good faith and fair dealing, pursuant to which neither party may take
21 or fail to take action that would deprive the other party of the intended benefits of
22 the contract. In this case, the Defendant Consultants impliedly covenanted that in
23 performing vegetation management services each VM Defendant would focus its
24 efforts on the overall safety of the electrical system, and that all work on aspects of
25 the system would be in the context of overall planning for safety. PG&E had a right
26 under each such contract to receive the benefit of the most experienced and qualified
27 expertise on vegetation management services, which is what VM Defendants

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

25

1  purported to be selling, to mitigate its own risk and exposure and protect the safety
2  of Californians.

3      109.    Each VM Defendant breached the implied covenant of good faith and
4  fair dealing when it stalled or otherwise delayed critical vegetation clearance work
5  without examining the overall impact that its delay would have on the risk of
6  vegetation-caused electrical grid fires. Each VM Defendant failed to execute its
7  vegetation management services such that it was capable of keeping up with the
8  amount of vegetation management work needed for PG&E to safely operate the grid,
9  thereby denying PG&E of the expertise for which it had bargained.

10     110.    By reason of the VM Defendants' breach of the implied covenant of good
11 faith and fair dealing, PG&E suffered damages. PG&E has assigned to the Trust the
12 right to recover these damages for the benefit of the victims of the Wildfires.

13                    **FOURTH CAUSE OF ACTION**

14         **For Equitable Indemnity (Comparative Fault Between and Among**

15                              **Tortfeasors)**

16                    **(Against All VM Defendants)**

17     111.    The Trustee incorporates by reference, as though set forth in full herein,
18 paragraphs 1 through 110 of this Complaint.

19     112.    As alleged herein, VM Defendants were negligent in the provision of
20 their vegetation management services to PG&E.

21     113.    The negligent conduct of each VM Defendant was a substantial factor in
22 causing PG&E's equipment to ignite the Wildfires, which resulted in damage to life
23 and property and caused PG&E to incur billions of dollars in liability in funding the
24 Plan. PG&E has assigned to the Trust the right to recover these damages for the
25 benefit of the victims of the Wildfires.

26     114.    Equity requires that each VM Defendant pay a proportionate share of
27 damages corresponding to its percentage of responsibility.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

                              26

COMPLAINT FOR DAMAGES

# FIFTH CAUSE OF ACTION

## For Negligence

### (Against All VM Defendants)

115. The Trustee incorporates by reference, as though set forth in full herein, paragraphs 1 through 114 of this Complaint.

116. Each VM Defendant entered into contracts with PG&E, whereby each voluntarily and deliberately undertook the duty to act competently to identify and correct unsafe vegetation conditions, so as to ensure the proper maintenance and safe operation of PG&E's electrical system in compliance with the applicable statutes, regulations, and standards.

117. It was reasonably foreseeable that each VM Defendant's vegetation management services would directly impact Californians who required protection from deadly and devastating wildfires caused by vegetation hitting PG&E's electrical equipment during high wind events. Accordingly, each VM Defendant assumed a duty of care to both PG&E and to the foreseeable victims of wildfires caused by vegetation coming into contact with or otherwise damaging PG&E's electrical infrastructure.

118. Each VM Defendant breached its duty by failing to use reasonable care in the vegetation management work it performed, including by failing to identify, clear or mitigate vegetation issues that presented a significant risk of igniting wildfires. Specifically, each VM Defendant breached its duties by failing to (1) inspect trees and other vegetation so as to ensure compliance with the applicable statutes, regulations and standards; (2) timely and properly trim and remove vegetation; (3) properly identify trees and other vegetation that posed a threat to PG&E's electrical lines; and (4) train their employees to recognize hazardous and dangerous trees and other vegetation. Each VM Defendant also breached its duties by participating in a program that offered incentives to its employees for reducing the number of trees and

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94118
(415) 981-7210

27

1 other plants that they marked trimming, removal, or other vegetation management

2 work.

3     119.    Each VM Defendant further breached its duty by failing to use

4 reasonable care to identify and correct unsafe conditions to ensure the proper

5 maintenance and safe operation of PG&E's electrical equipment in compliance with

6 the applicable statutes, regulations, and standards, including with respect to the

7 dangerous conditions that caused the Wildfires.

8     120.    As a result of VM Defendants' negligence in rendering vegetation

9 management services, Santa Ana winds caused various trees to come into contact

10 with PG&E electrical lines, which resulted in the Wildfires.

11     121.    The negligence of each VM Defendant was a substantial contributing

12 cause of the Wildfires, resulting in catastrophic loss of life and property.

13     122.    As a result of each VM Defendant's negligence, PG&E incurred liability

14 for personal injury, wrongful death, and property damage caused by the Wildfires.

15 PG&E's liabilities arose from claims against it based on general negligence in the

16 management of the electrical infrastructure, negligent violations of law, strict

17 liability imposed by law, including inverse condemnation, and damages incurred by

18 subrogated insurers who covered claims made by wildfire victims, and damages

19 suffered by certain public entities.

20     123.    PG&E settled its liability to such individuals and entities as part of the

21 Plan, thereby suffering damages. In addition, PG&E suffered damages to its

22 equipment resulting from the Wildfires. Under the Plan, PG&E assigned to the Trust

23 the right to recover these damages as alleged in this Complaint.

## SIXTH CAUSE OF ACTION

### For Professional Negligence

### (Against All VM Defendants)

27     124.    The Trustee incorporates by reference, as though set forth in full herein,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

COMPLAINT FOR DAMAGES

1  paragraphs 1 through 123 of this Complaint.

2      125.   Each VM Defendant represented to PG&E that it was a professional

3  expert vegetation management with specialized training and expert skill in

4  identifying and trimming and removing dangerous vegetation in close proximity to

5  utility infrastructure.

6      126.   Each VM Defendant owed a duty to PG&E, as well as to reasonably

7  foreseeable fire victims of a PG&E-caused wildfire, to exercise the skill and care that

8  a skilled professional would use in the work performed for PG&E.

9      127.   By reason of the foregoing, each VM Defendant breached its professional

10  duty of care, and failed to exercise the level of skill, care, and diligence that a

11  reasonable professional would exercise to assist PG&E to prevent wildfires resulting

12  from its electrical infrastructure.

13      128.   Each VM Defendant failed to perform its services for PG&E in accord

14  with professional standards of care and their acts and omissions were a substantial

15  contributing cause of the Wildfires and resulting damages, as alleged herein. Under

16  the Plan, PG&E has assigned to the Trust the right to recover these damages from

17  each VM Defendant for the benefit of the victims of the Wildfires.

18             **SEVENTH CAUSE OF ACTION**

19               **Unjust Enrichment**

20  **(Davey Resource Group, Inc., Davey Tree Expert Company; Davey Tree**

21  **Surgery Company; The Original Mowbrays Tree Service Inc.; Western**

22  **Environmental Consultants, Inc.; and Does 1 through 25)**

23      129.   The Trustee incorporates by reference, as though set forth in full herein,

24  paragraphs 1 through 128 of this Complaint.

25      130.   Each Defendant failed to provide competent services to PG&E,

26  breaching to its contractual obligations, so as to ensure operation of PG&E's

27  electrical equipment in compliance with the applicable statutes, regulations and

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

29

1    standards, thereby causing the Wildfires.

2    131.    As a result of each Defendant's failures, PG&E suffered damages as
3    alleged herein.

4    132.    Nevertheless, and despite their failures to perform its obligations and
5    duties to prevent PG&E equipment from causing wildfires, Defendants received
6    substantial sums from PG&E for 'emergency' work authorized in the aftermath of the
7    2017 fires.

8    133.    Accordingly, each Defendant was unjustly enriched at PG&E's expense
9    because each received the financial benefit of being awarded contracts with PG&E to
10   perform additional vegetation management work under higher rates, and on
11   information and belief, to perform work that should have already been performed
12   under non-emergency vegetation management contracts.

13   **PRAYER FOR RELIEF**

14   Wherefore, Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim
15   Trust, prays for judgment against each VM Defendant as follows:

16       a.    For damages according to proof at trial;

17       b.    For complete or partial indemnity for the obligations and
18             damages incurred and Assigned to the Trustee;

19       c.    For pre-judgment interest;

20       d.    For attorney's fees and punitive damages according to
21             Defendants' contracts with PG&E;

22       e.    For attorneys' fees, expert fees, consultant fees, and other
23             litigation expenses, as permitted by law;

24       f.    For costs of suit herein;

25       g.    For such other and further relief as the Court may deem just and
26             proper.

27

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

30

COMPLAINT FOR DAMAGES

1 ## DEMAND FOR JURY TRIAL

2 Plaintiff hereby demands a jury trial.

3 Dated: January 28, 2021       WALKUP, MELODIA, KELLY & SCHOENBERGER

4

5 By: _____

6 MICHAEL A. KELLY

7 KHALDOUN A. BAGHDADI
650 California Street, 26th Floor
8 San Francisco, CA 94108
Tel: (415) 981-7210
9 Fax: (415) 391-6965
mkelly@walkuplawoffice.com
10 kbaghdadi@walkuplawoffice.com

11 Dated: January 28, 2021       ANDREWS & THORNTON

12

13

14 By: _____/s/ Anne Andrews_____
ANNE ANDREWS
15 JOHN C. THORNTON
SEAN T. HIGGINS
16 ROBERT S. SIKO
17 4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
18 Tel (949) 748-1000
Fax (949) 315-3540
19 aa@andrewsthornton.com
jct@andrewsthornton.com
20 shiggins@andrewsthornton.com
21 rsiko@andrewsthornton.com

22 **Attorneys for Plaintiff John K. Trotter,
Jr., Trustee of the PG&E Fire Victim
23 Trust**

24 **(additional counsel listed on following
25 pages)**

26

27

28
LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

31

COMPLAINT FOR DAMAGES

| | |
|---|---|
| Dated: January 28, 2021 | GREENBERG GROSS LLP |

By:      */s/ Alan A. Greenberg*

ALAN A. GREENBERG
WAYNE R. GROSS
EVAN C. BORGES
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Tel: (213) 334-7000
Fax: (213) 334-7001
AGreenberg@GGTrialLaw.com
WGross@GGTrialLaw.com
EBorges@GGTrialLaw.com

| | |
|---|---|
| Dated: January 28, 2021 | COTCHETT PITRE & McCARTHY |

By:      */s/ Frank M. Pitre*

FRANK M. PITRE
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
fpitre@cpmlegal.com

| | |
|---|---|
| Dated: January 28, 2021 | DREYER, BABICH, BUCCOLA, WOOD, CAMPORA |

By:      */s/ Steven M. Campora*

STEVEN M. CAMPORA
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500
Fax: (916) 379-3599
scampora@dbbw.com

**Attorneys for Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust**

**(additional counsel listed on following pages)**

32

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

COMPLAINT FOR DAMAGES

Dated: January 28, 2021

COREY, LUZAICH, DE GHETALDI & RIDDLE, LLP

By: _____/s/ Dario de Ghetaldi_____

DARIO de GHETALDI
700 El Camino Real
PO Box 669
Millbrae, CA 94030
Tel: (650) 871-5666
Fax: (650) 871-4144
deg@coreylaw.com

**Attorneys for Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust**

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

33

COMPLAINT FOR DAMAGES

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State nber, and address):
Michael A. Kelly/Khaldoun A. B_ Jadi 71640/190111
Walkup, Melodia, Kelly & Schoenberger
650 California Street, 26th Floor
San Francisco, CA 94108
TELEPHONE NO: (415) 981-7210    FAX NO: (415) 391-6965
ATTORNEY FOR (Name): Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust

FOR COURT USE ONLY

# F I L E D
Superior Court of California
County of San Francisco

JAN 2 8 2021

CLERK OF THE COURT
BY: _____
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civil-Unlimited

CASE NAME: Trotter v. Davey Resource Group, Inc., Davey Tree Expert Company, Davey Tree Surgery Company, The Orginal Mowbrays Tree Service, Inc; et al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 2 1 – 5 8 9 4 3 8 |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☑ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action (specify): Seven
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 28, 2021

Khaldoun A. Baghdadi
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

## NOTICE
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CEB® Essential Forms™
ceb.com

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
            or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
        Claim
    Other Civil Petition

CEB | Essential
ceb.com | Forms

# EXHIBIT C

1  MICHAEL A. KELLY (State Bar #71460)
   mkelly@walkuplawoffice.com
2  KHALDOUN A. BAGHDADI (State Bar #190111)
   kbaghdadi@walkuplawoffice.com
3  **WALKUP, MELODIA, KELLY**
   **& SCHOENBERGER**
4  650 California Street, 26th Floor
   San Francisco, CA 94108
5  Telephone:   (415) 981-7210
   Facsimile:   (415) 391-6965
6  ANNE ANDREWS (Bar No. 103280)
   aandrews@andrewsthornton.com
7  JOHN C. THORNTON (Bar No. 84492)
   jct@andrewsthornton.com
8  SEAN T. HIGGINS (Bar No. 266888)
   shiggins@andrewsthornton.com
9  ROBERT S. SIKO (Bar No. 312856)
   rsiko@andrewsthornton.com
10 **ANDREWS & THORNTON**
   4701 Von Karman Ave, Suite 300
11 Newport Beach, California 92660
   Telephone:        (949) 748-1000
12 Facsimile:        (949) 315-3540

13 (ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGES)

14 ATTORNEYS FOR PLAINTIFF JOHN K. TROTTER,
   JR., TRUSTEE OF THE PG&E FIRE VICTIM TRUST
15

F I L E D
Superior Court of California
County of San Francisco

JAN 2 8 2021

CLERK OF THE COURT
BY: _____
                    Deputy Clerk

16         SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                   COUNTY OF SAN FRANCISCO

18

19 JOHN K. TROTTER, JR., Trustee of the        Case No. CGC - 21 - 589439
   PG&E Fire Victim Trust,
20                                             **COMPLAINT FOR DAMAGES**
                    Plaintiff,
21                                             1) Breach of Contract (Performance and
         v.                                       Express Contractual Indemnity)
22                                             2) Breach of Contract (Insurance)
   DAVEY RESOURCE GROUP, INC.;                 3) Breach of Implied Duty of Good Faith
23 DAVEY TREE EXPERT COMPANY;                     and Fair Dealing
   DAVEY TREE SURGERY COMPANY;                 4) Equitable Indemnity
24 and DOES 1 through 25, inclusive,           5) Negligence
                                               6) Professional Negligence
25                  Defendants.                7) Unjust Enrichment
26                                             **JURY TRIAL DEMANDED**
27

28

                                  1
                        COMPLAINT FOR DAMAGES

Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust (the "Trustee" or "Plaintiff"), brings this action against Defendants Davey Resource Group, Inc., Davey Tree Expert Company, and Davey Tree Surgery Company, (hereinafter collectively referred to as "VM Defendants" or "Defendants") as follows:

## NATURE OF THE ACTION

1. Prior to 2020, Pacific Gas & Electric Company ("PG&E")[1] owned and operated a power grid and electrical system, which was the cause of several catastrophic wildfires, including: the Butte Fire on September 9, 2015, the Adobe, Atlas, Norrbom, Nuns, Partrick, Pocket, Point, Potter/Redwood, Sulphur, and Tubbs Fires on October 8 and 9, 2017[2], and the Camp Fire on November 8, 2018 (collectively, the "Wildfires"). Each of these fires started because of separate and distinct failures to observe due care, as well as the failure to fulfill statutory and contractual obligations on the part of the defendants named herein.

2. On January 29, 2019, PG&E filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California, as a result of PG&E's substantial and overwhelming liabilities associated with the 2015, 2017, and 2018 Wildfires caused by its electrical equipment. (*In re PG&E Corp.* (Bankr. N.D. Cal.) Case No. 19-30088, Docket Entry Nos. 7711 and 8053.) After notice to all interested parties, the Bankruptcy Court confirmed a bankruptcy plan binding on PG&E, its creditors, and all parties in interest, including the victims of the Wildfires (the "Plan"), as of the Effective Date. (*In re PG&E, supra,* Docket Entry No. 8053.)

3. The Plan provided, among other things, for the creation of the Fire

---

[1] As used herein, "PG&E" refers to the former Pacific Gas & Electric Company as it existed prior to the effective date of its Chapter 11 bankruptcy plan of July 1, 2020 (the "Effective Date"), and not the newly emerged Pacific Gas & Electric Company.

[2] The Oakmont/Pythian Fire started on or about October 13, 2017. For ease of reference to the firestorm commonly referred to as the "North Bay Fires", this Complaint will refer to October 8 and 9, 2017 as the ignition dates.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2

COMPLAINT FOR DAMAGES

Victim Trust. *Id.* Pursuant to the Plan, by operation of federal law, PG&E assigned to the Trust certain rights, claims, and causes of action (the "Assigned Rights and Causes of Action"). The Assigned Rights and Causes of Action include "any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the prepetition Fires that the Debtors may have against vendors, suppliers, third party contractors and consultants (including those who provided services, directly or indirectly, regarding the Debtors' electrical system, system equipment, inspection and maintenance of the system, and vegetation management)." (*In re PG&E, supra,* Docket Entry No. 7712-1 at 1.) The claims pursued by the Trustee in this Complaint are within the Assigned Rights and Causes of Action.)

4.     The Trust was established for two overall purposes: (1) to provide compensation to victims of the Wildfires based on a claims-administration process; and (2) to recover additional funds for the benefit of victims of the Wildfires, including by bringing the Assigned Rights and Causes of Action on behalf of PG&E against other responsible parties. This Complaint is an asset recovery action against responsible third parties brought for the benefit of the victims of the Wildfires.

5.     Each VM Defendant contributed to PG&E's failure to mitigate the risk of wildfires through PG&E's systems for evaluating, inspecting and clearing trees and vegetation overgrowth, as well as other vegetation hazards such as disease and decay, in proximity to PG&E transmission and distribution lines, as necessary to comply with California regulations regarding management of vegetation along utility power lines. Each VM Defendant entered into lucrative contracts with PG&E to implement its vegetation management programs, practices, policies, and procedures (PG&E's "VM Program"). In those contracts, each VM Defendant promised PG&E that it would perform VM Program services to reduce the risk of wildfire caused by vegetation issues and otherwise assist PG&E in complying with its regulatory duties.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

3
COMPLAINT FOR DAMAGES

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    13:43:17    Page 105 of 173

1  Each VM Defendant thereby joined PG&E in the solemn duty to prevent the deadly

2  and catastrophic wildfires that could be caused by PG&E equipment.

3      6.    During the relevant time period, each VM Defendant participated in,

4  implemented and executed PG&E's VM Program.

5      7.    All VM Defendants held themselves out as fully capable to advise

6  regarding, if not experts in, evaluating and managing trees and other vegetation

7  that, due to their proximity to power transmission and distribution lines, pose a risk

8  of damaging utility lines and causing fires. Each VM Defendant subsequently failed

9  to perform or negligently performed their duties. In addition to PG&E itself, the

10  known and foreseeable victim of wildfires, who would be injured and damaged by VM

11  Defendants' breach of their duties, were California residents and businesses in the

12  area of the PG&E electrical grid in Northern California. The VM Defendants' acts

13  and omissions were substantial causes of the Wildfires.

14      8.    The failures that caused the Wildfires arose from the combined conduct

15  of PG&E and VM Defendants, each of whom failed in their essential roles in reducing

16  the risk of fires caused by vegetation.

17      9.    In the aftermath of the Wildfires, California regulatory officials

18  uncovered PG&E practices permitting dangerous conditions, which caused the

19  individual Wildfires, to go uncorrected. In particular, California regulatory officials

20  found that PG&E failed to abide by legal safety requirements for managing

21  vegetation near its power lines. These substandard, negligent and dangerous

22  practices were contributed to, caused, and/or exacerbated by VM Defendants'

23  breaches of their contractual duties and duties of care with respect to PG&E's VM

24  Programs.

25                  **GENERAL ALLEGATIONS**

26  **A.    The Parties**

27      10.    <u>Plaintiff Trustee of the PG&E Fire Victim Trust</u>. Plaintiff John K.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

4

1  Trotter, Jr. is the duly appointed Trustee of the PG&E Fire Victim Trust (the "Fire

2  Victim Trust" or the "Trust"), which was established pursuant to the Plan. The

3  Trustee is a resident of the State of California. The Trust is a Delaware statutory

4  trust.

5      11.    The Plan resulted in the creation of the Trust. Case No. 19-30088, D.E.

6  8053. The Trust was established to administer individual victims' claims against

7  PG&E related to the Wildfires, which were caused by PG&E's electrical equipment.

8      12.    <u>Defendant Davey Resource Group, Inc.</u> Davey Resource Group, Inc.,

9  ("Davey Resource") is a corporation organized and existing under the laws of

10  Delaware with its principal place of business in Kent, Ohio. At all relevant times,

11  Davey Resource has been licensed to do business in and actually conducted business

12  in the State of California. Davey Resource is a professional services company offering

13  a suite of vegetation management services for utility operations, including

14  performance of pre-inspection duties for utilities' vegetation management programs,

15  auditing or quality control of vegetation management work, creation of vegetation

16  clearance work orders, and other related vegetation management work. In the course

17  of said business, Davey Resource was hired by and performed vegetation

18  management services for PG&E in the State of California as herein alleged. On

19  information and belief, at a minimum, Davey Resource performed such services in

20  connection with the Atlas, Partrick, Nuns, and Tubbs Fires, and may have performed

21  vegetation management services in connection with additional separate fires.

22      13.    <u>Defendant Davey Tree Expert Company</u>. Davey Tree Expert Company

23  ("Davey Tree Expert") is a corporation organized and existing under the laws of Ohio

24  with its principal place of business in Kent, Ohio. At all relevant times, Davey Tree

25  Expert has been licensed to do business in and actually conducted business in the

26  State of California. Davey Tree Expert is a professional services company offering a

27  suite of vegetation management services for utility operations, including responding

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

5

1  to vegetation management work orders, performance of line clearance for vegetation

2  issues, recording and logging clearance work performed, and, in the course of said

3  business, was hired by and performed vegetation management services for PG&E in

4  the State of California as herein alleged. On information and belief, at a minimum,

5  Davey Tree Expert performed such services in connection with the Adobe, Atlas,

6  Norrbom, Nuns, Partrick, Tubbs, and Sulphur Fires, and may have performed

7  vegetation management services in connection with additional separate fires.

8        14.   <u>Defendant Davey Tree Surgery Company</u>. Davey Tree Surgery Company

9  ("Davey Tree Surgery") is a corporation organized and existing under the laws of

10  Delaware with its principal place of business in Kent, Ohio. At all relevant times,

11  Davey Tree Surgery has been licensed to do business in and actually conducted

12  business in the State of California. Davey Tree Surgery is a professional services

13  company offering a suite of vegetation management services for utility operations,

14  including responding to vegetation management work orders, performance of line

15  clearance for vegetation issues, recording and logging clearance work performed, and,

16  in the course of said business, was hired by and performed vegetation management

17  services for PG&E in the State of California as herein alleged. On information and

18  belief, at a minimum, Davey Tree Surgery performed such services in connection

19  with the Adobe, Atlas, Norrbom, Nuns, Partrick, Tubbs, and Sulphur Fires, and may

20  have performed vegetation management services in connection with additional

21  separate fires.

22        15.   At all relevant times, each VM Defendant was a business entity doing

23  business in the State of California. Each VM Defendant held itself out as an expert in

24  one or more of (1) performance of pre-clearance line inspection for vegetation issues,

25  (2) performance of line clearance of vegetation issues, or (3) auditing or quality

26  control of vegetation management work. At all relevant times, each Defendant was

27  hired by PG&E to perform services in connection with its VM Program, with such

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

6

1 | services to be performed in California.

2     16.     Each Defendant was a contractor, vendor, supplier, or third-party

3 contractor of PG&E, as defined in the Plan. Thus, PG&E's claims against the

4 Defendants are included in the Plan's Assigned Rights and Causes of Action. To the

5 extent that one or more of the Defendants have been purchased by, merged into, or

6 changed its form such that it is now owned and/or controlled by a successor, the

7 Trustee asserts the claims asserted herein against such successors, and such

8 successors are liable for the injuries and damages alleged herein. The Trust will seek

9 leave to amend this Complaint to identify any such successors, once information

10 regarding any successors is developed and/or confirmed.

11     17.     The true names, capacities and basis for liability, whether individual,

12 corporate, partnership, or otherwise, of Doe Defendants 1 through 25, and each of

13 them, are unknown to the Trustee, who therefore sues said Defendants by such

14 fictitious names. The Trustee is informed and believes that each Defendant

15 designated herein as a Doe was in some manner legally responsible for the events,

16 acts, omissions, and damages alleged herein. Any reference herein to the Defendant

17 Consultants includes Doe Defendants 1 through 25, inclusive.

18     **B.**     **Jurisdiction and Venue**

19     18.     This Court has personal jurisdiction over VM Defendants because this

20 suit arises from the Wildfires, which occurred in California, caused damage to PG&E

21 in California, and was caused by Defendants' services performed pursuant to

22 contracts entered in San Francisco County. Each Defendant is qualified to do

23 business in the State of California.

24     19.     Pursuant to California Code of Civil Procedure § 395(a), venue is proper

25 in this Court as the agreements that provide a basis for liability herein were entered

26 into in the County of San Francisco, State of California.

27     20.     The allegations contained and remedies sought herein share common

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

7

1 questions of law and fact such that they should be coordinated or otherwise added on
2 to JCCP 4955, In Re California North Bay Fire Cases.

**C.      Factual Allegations**

**1.      PG&E's VM Programs**

21.      PG&E is a utility company that supplies electrical power by way of overhead conductors throughout California, from Humboldt County to Santa Barbara County. PG&E has identified wildfires caused by its electrical equipment as a top safety and enterprise risk.

22.      To protect against the risk of wildfires caused by its electrical equipment, PG&E utilized its VM Program. The policies, processes, procedures, and practices of PG&E's VM Program are designed to comply with the regulations of the California Public Utility Commission ("CPUC") and the California Department of Forestry and Fire Protection ("CAL FIRE"), as well as other relevant laws, statutes and regulations.

23.      Through its VM Program, PG&E monitors approximately 100,000 miles of high-voltage overhead lines across a 70,000-square mile service area. Within that service area, PG&E is responsible for monitoring approximately 120 million trees that have the potential to grow close to, or fall on, overhead lines.

24.      During the relevant time period, PG&E's VM Program for its distribution lines included but was not limited to, Catastrophic Event Memorandum Account ("CEMA") patrols and Routine patrols. CEMA patrols were a system-wide program of patrolling PG&E's service area, to identify, prescribe, and document work to be conducted on hazardous trees that threatened PG&E's overhead lines. Routine patrols involved patrolling and conducting tree work along PG&E's high-voltage distribution lines to comply with CPUC General Order 95, Rule 35, and Public Resources Code sections 4292 and 4293.

25.      A CEMA patrol or Routine patrol consisted of pre-inspection, tree work,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

8

COMPLAINT FOR DAMAGES

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page
110 of 173

1   and quality control analysis of the pre-inspection and tree work.

2       26.     PG&E outsourced the entirety of these functions to third-party

3   vendors—the VM Defendants—that specialized in pre-inspection, tree work, or

4   quality control.

5       27.     PG&E required onboarding or training to be completed by each VM

6   Defendant. Pursuant to contracts between PG&E and the VM Defendants, it is each

7   VM Defendant's responsibility to train its workforce.

8       28.     Each year, PG&E spends several hundred million dollars on vegetation

9   management. As part of the vegetation management planning process, PG&E

10  determines annually the number of planned trees that need to be maintained, as well

11  as the annual pre-inspection time. To ensure reliability, pre-inspection contractors

12  are required to meet schedule attainment metrics for both CEMA and Routine

13  patrols.

14      29.     The pre-inspection process involves a contractor's pre-inspectors, also

15  referred to as consulting utility foresters ("CUFs") or supervising consulting utility

16  foresters ("SCUFs"), patrolling the lines listed in PG&E's project management

17  database and looking for vegetation conditions that are potentially problematic for

18  PG&E's overhead lines.

19      30.     Under PG&E's Vegetation Management Improvement Initiative

20  ("VMII"), pre-inspection contractors can earn an incentive if the actual number of

21  trees identified for work is less than the pre-set target number.

22      31.     On January 12, 2012, the CPUC issued Decision 12-01-032, which

23  sought to reduce the risk of fire hazards associated with overhead power lines and

24  communication facilities. The CPUC decision required a determination of the risk of

25  catastrophic fires in the service territory of electrical utilities caused by their

26  overhead electrical facilities and the preparation of a fire prevention plan with an

27

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210
28

9

1  effective date of December 21, 2012[3]. In response to CPUC Decision 12-01-032, PG&E
2  developed a companywide "Fire Prevention Plan."

3      32.    PG&E has developed a number of wildfire safety plans since 2012. Each
4  VM Defendant was hired by PG&E to be an integral part of its safety plans, and
5  specifically the implementation and execution of VM Programs to improve safety,
6  reduce the risk of tree failure into PG&E lines, and prevent wildfires.

7          **2.    The Wildfires**

8              **(a)    2017 North Bay Fires**

9      33.    On Sunday, October 8, 2017, tragedy struck communities across
10  Northern California when a series of separate fires began to spark and spread. These
11  deadly fires quickly spread through neighborhoods and destroyed everything in their
12  path, including residences, vegetation, structures, and businesses.

13     34.    The North Bay Fires are collectively some of the most destructive fires
14  in California's history. In just a few weeks, the fires caused the deaths of at least 44
15  people, hospitalized over 185 individuals, displaced about 100,000 people who were
16  forced to leave their homes and search for safety, burned over 245,000 acres, and
17  damaged or destroyed an estimated 14,700 homes, 3,600 vehicles, and 728
18  businesses. A summary of the specific and distinct fires relevant to this action is as
19  follows:

20              **(i)    The Tubbs Fire**

21     35.    The Tubbs fire started October 8, 2017, on real property located at 1128
22  Bennett Lane, Calistoga, CA, when a tree that had not been properly identified for
23  work, pruned and/or removed, came into contact with a PG&E distribution line at
24  that location. The tree line contact caused the Tubbs Fire, which burned thousands of
25  acres, burned thousands of homes and structures, and burned the facilities of PG&E.

26

27

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28  [3] https://www.pge.com/nots/rates/tariffs/tm2/pdf/ELEC_4167-E.pdf

10

### 3. VM Defendants' Engagement

36. Prior to 2017, each VM Defendant entered into a written contract with PG&E that mandated the provision of vegetation management services. The specific content has been designated as "Confidential" or otherwise restricted from public disclosure in prior litigation involving these defendants. Plaintiff accordingly describes the general terms and obligations imposed by the agreements, all of which are in possession of the defendants.

    a.    patrolling distribution and transmission lines to identify and assess required tree work, including such hazardous trees or portions of trees with the potential to fail and come into contact with high voltage conductors, trees near power lines that could interfere with PG&E lines, vegetation with the potential to grow into the primary conductors before the next annual trim or which is currently causing strain/abrasion of the secondary conductors, or trees which will not hold minimum clearance,

    b.    mandates on the required timing of certification and training for inspectors,

    c.    prescribing work to be performed,

    d.    entering work identified and prescription information into the PG&E Vegetation Management Data Base (VMDB),

    e.    editing the data in VMDB and creating work request form(s), and

    f.    either undertaking to perform the work requested or assigning the work to other PG&E contractors, as directed by PG&E.

Each VM Defendant is responsible for having a Quality Assurance Auditor to confirm contractual compliance. Such auditor is required to have specific educational or vocational training and experience. The essence of each VM Defendant's contract was to ensure the safe and reliable operation of all PG&E distribution lines in compliance

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

11

1   with state laws and regulations.

2       37.   Additionally, each VM Defendant's contract contained a requirement
3   that each respective VM Defendant indemnify and hold harmless PG&E from
4   liability arising from personal injury, property injury/damage, violations of laws, or
5   strict liability imposed by law that is connected in any way with each VM
6   Defendant's performance of or failure to perform under the contract.

7       38.   Additionally, each VM Defendant's contract also obligates it to defend
8   any action, claim, or suit asserting a claim which might be covered by the above
9   indemnity, as well as pay all costs and expenses that may be incurred by PG&E in
10  enforcing the indemnity, including reasonable attorney's fees.

11      39.   Each VM Defendant was aware that their contract required it to
12  indemnify PG&E even for liability that was not the result of VM Defendant's
13  negligence so long as the liability was in any way connected with Defendant's
14  performance of or failure to perform under the contract.

15      40.   Separate and apart from the indemnity provisions in the VM
16  Defendants' contracts with PG&E, each VM Defendant's contract required Defendant
17  to maintain insurance coverage, including Commercial General Liability insurance,
18  for each occurrence where the VM Defendant's performance under the contract is an
19  any way connected with fire-related liability. It also required each VM Defendant to
20  add PG&E as an "Additional Insured" to its Commercial General Liability coverage
21  requirement with respect to liability arising out of or connected with the work
22  performed by or for each VM Defendant. Each contract did not specify or limit to
23  what insurance policies PG&E was to be added as an Additional Insured; rather,
24  PG&E was to be added as an Additional Insured on each policy covering an instance
25  where each VM Defendant was required to maintain Commercial General Liability
26  insurance. The Pre-Inspection Contract also required that each VM Defendant's
27  insurance policies must specify that Defendant's insurance is primary and that any

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210
28

12

1 | insurance or self-insurance maintained by PG&E shall not contribute with it.

2 |     41.    Each VM Defendant's contract contains a provision stating that if it fails
3 | to add PG&E as an Additional Insured, it must stand in the shoes of its insurance
4 | carrier to the same extent as an insurer issuing ISO form occurrence coverage
5 | without coverage deletions. Failure to do so, results in further damages, including
6 | attorney's fees and punitive damages.

7 |     42.    As part of their contracts, VM Defendants were required to attain
8 | schedule requirements on a weekly basis to ensure that trees adjacent to or near
9 | PG&E's system lines are adequately inspected. During the term of the contract,
10 | however, Defendants continually and repeatedly fell behind their schedule
11 | attainment requirements, including leading up to the Wildfires, sometimes by as
12 | much as a year. In the North Bay Division alone, in October 2017, more than 3,000
13 | trees were two months behind VM Defendants' pre-inspection schedule.

14 |     43.    Moreover, in 2017, PG&E required its pre-inspection contractors,
15 | including VM Defendants, to identify 23 percent of the trees marked for treatment to
16 | be marked for removal. A removal designation served to both lower the risk of fire by
17 | protecting the electrical equipment and by diminishing the near for future tree work
18 | on trees with the potential to contact power lines. Yet VM Defendants routinely
19 | missed the removal threshold.

20 |     44.    At the time of the Wildfires, VM Defendants' pre-inspectors regularly
21 | discussed amongst themselves how far behind schedule Defendants were in
22 | complying with their contractual duties to inspect PG&E's power lines for hazardous
23 | trees.

24 |     45.    VM Defendants were aware that their pre-inspectors did not have
25 | adequate training to identify trees subject to the relevant contractual standards.

26 |     46.    VM Defendants were also aware that their pre-inspectors did not have
27 | the contractually-required educational background and/or credentials to comply with

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

13

COMPLAINT FOR DAMAGES

1   the Pre-Inspection Contract. VM Defendants also knew those inspectors were not

2   properly certified as required under the terms of the agreement.

3        47.   VM Defendants were aware that their pre-inspectors did not know of or

4   have the requisite knowledge to understand how to determine whether an inspection

5   complied with requisite contractual and industry standards. Despite their awareness,

6   VM Defendants did not test their pre-inspectors' knowledge of the relevant inspection

7   and trimming standards. Nor did they ensure that their pre-inspectors read relevant

8   materials designed to educate them about the relevant inspection and trimming

9   standards.

10       48.   VM Defendants were further aware that their pre-inspectors had rushed

11   through their pre-inspection work when they fell behind their scheduled attainment

12   requirements.

13       49.   When VM Defendants fell behind schedule, their pre-inspectors would

14   attempt to rush through their work in order to qualify for contractual financial

15   incentives.

16       50.   At all times herein alleged, and prior to the Wildfires, each VM

17   Defendant, was aware that if they failed to perform their duties, as required under

18   their agreements with PG&E, to the standard required of an expert in the industry,

19   there was a significant risk of fire, damage to property owned by members of the

20   general public, and the death to members of the general public. The VM Defendants

21   failed to inspect the trees as required under the terms of the contract, specifically

22   including, but not limited to, failing to inspect, prune, remove and identify trees as

23   required by PG&E Vegetation Management program.

24       51.   Specifically, each VM Defendant was aware of the significant wildfire

25   risk posed by trees or other vegetation coming into contact with high voltage

26   electrical transmission and distribution lines during high wind events in Northern

27   California. More specifically, each VM Defendant was aware that prior to the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

Wildfires, the State of California, and in particular the counties affected by the Wildfires, had been in a prolonged state of drought. VM Defendants, and each of them, knew or should have known that the drought conditions had existed for a number of years and that fire danger was at an extraordinarily high level. VM Defendants, and each them, as arborists and vegetation experts, were aware or should have been aware that, at the time of the Wildfires, there was an abundance of undergrowth and other fuels such that the risk of a catastrophic fire was high. Each VM Defendant was aware that there had been a long history of large-scale wildfires ignited during high winds, like the Santa Ana winds, causing trees to fall into PG&E electrical equipment, as well as other utilities' electrical equipment, across California.

52. Each VM Defendant knew or should have known that the members of the public were at great risk if they failed to fulfill their duties and perform to the standard of an expert in the utility arborist industry. Each VM Defendant knew that if the lines came into contact with vegetation a fire would likely result and that, given the drought and other weather conditions such as the Santa Ana winds, the resulting fire could cause loss of life, personal injury, significant damage to real and personal property, and other damage to members of the general public. The risk of improperly trimmed or removed trees starting large-scale, costly, and deadly wildfires by failing during high wind events and hitting electrical equipment was well-documented and foreseeable to any reasonable company providing vegetation management services to a utility. As a result of this known danger, each VM Defendant had a heightened duty of care.

53. Each VM Defendant held itself out as fully competent to perform and as a professional expert with sufficient expert skill, training, and knowledge to identify and trim or remove dangerous vegetation in close proximity to PG&E's infrastructure and electrical operations. Accordingly, each VM Defendant's conduct should be

COMPLAINT FOR DAMAGES

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

assessed under such professional standards.

54.     In addition, each VM Defendant had a duty to properly inspect and identify trees and other vegetation that posed a risk to, or was endangered by, PG&E's electrical lines, to mark such trees and other vegetation for work or removal, and to remove or trim trees and other vegetation. Proper performance of these duties was necessary for each VM Defendant to comply with applicable standards of care, including but not limited to the Public Resources Code, industry standards, and PG&E's policies and procedures.

55.     Each VM Defendant received lucrative contracts from PG&E to mitigate wildfire risk. Each VM Defendant executed one or more Master Services Agreements ("MSA") with PG&E to provide vegetation management services in support of PG&E's duty to operate its electrical equipment without causing fires. The primary purpose of each MSA was to provide a set of terms, conditions, and requirements that would apply to each VM Defendant's work for PG&E. In most cases, each VM Defendant's work was also governed by a specific Contract Work Authorization ("CWA") entered into under the respective MSA. The work performed by each VM Defendant under the relevant CWA was intended to identify and mitigate the risk of vegetation hitting PG&E transmission and distribution lines during high wind events, and thus reduce the risk of widescale wildfires being ignited by PG&E lines and dangerously spreading uncontrolled through communities across Northern California.

56.     Each VM Defendant was aware that if it failed to perform its contractual duties to the standard required of a professional expert, a significant risk existed of a catastrophic wildfire causing injury and death to persons within the fire perimeters as well as extraordinary property damage.

57.     Each VM Defendant undertook the duty to properly and reasonably perform vegetation management work to identify and remediate vegetation issues

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

16

1  around PG&E lines.

2      58.    Each VM Defendant undertook the duty to use its professional training

3  and experience, best efforts, and reasonable care to protect foreseeable victims of

4  fires caused by PG&E's equipment, namely, Californians in the areas serviced by

5  PG&E's electrical system.

6      59.    Each VM Defendant, in performing under its contracts with PG&E,

7  understood and recognized that vegetation management services were for the benefit

8  of both PG&E and the citizens of California, who were at risk of injury and damage

9  from wildfires caused by tress or vegetation coming into contact with or otherwise

10  damaging PG&E's electrical system.

11      60.    Each VM Defendant also failed to take contractually required and

12  industry-standard precautions that would have prevented the Wildfires from

13  occurring.

14          **4.    PG&E Bankruptcy, Settlement and Assignment of Rights
                  to the Fire Victim Trust**

15

16      61.    Each VM Defendant's respective failure to provide the contracted

17  services to PG&E, or to do so competently, caused devastating financial losses for

18  PG&E in the form of its own equipment losses, as well as liabilities (both via strict

19  liability and otherwise) to third parties who suffered death, personal injury, or

20  property damage as a result of the Wildfires.

21      62.    As alleged above, PG&E under the Plan assigned to the Fire Victim

22  Trust the right to bring the Assigned Rights and Causes of Action to provide

23  compensation to victims of the Wildfires, including claims for damages and

24  indemnification on behalf of PG&E.

25      63.    Among the claims resolved by the Plan were claims based on any theory

26  of inverse condemnation. (*See In re PG&E, supra*, Docket Entry No. 8053.)

27      64.    Inverse condemnation is a legal principle, rooted in the California

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

17

Constitution whereby utilities such as PG&E are held strictly liable for damage arising from fires caused by utility electrical equipment. (*See* Cal. Const., art. I, § 19.)

65. On November 26, 2019, the Bankruptcy Court held that inverse condemnation applied to PG&E for all of the 2017 Northern California Wildfires and the 2018 Camp Fire. (*See In re PG&E, supra*, Docket Entry No. 4895.)

66. As the Bankruptcy Court explained: "In short, the California Constitution imposes strict liability in favor of the owner of property that has been taken or damaged through a public use or purpose and does not concern itself with the rights or liabilities of whom or what did the damage. It is a form of strict liability imposed on the party causing, or whose equipment caused, the damage." (*Id.* at 3.)

67. Each VM Defendant's indemnity obligations to PG&E include, but are not limited to, the obligation to indemnify PG&E for its strict liability associated with inverse condemnation based on the Wildfires. This indemnification obligation, and other indemnification obligations of the VM Defendants, are within the Assigned Rights and Causes of Action assigned to the Trust.

68. As part of its Plan, PG&E agreed to settle its wildfire liabilities, including but not limited to inverse condemnation liabilities, to injured third parties, for a total of $25.5 billion, of which $13.5 billion was allocated for wildfire victims, $11 billion was allocated for the subrogated insurers of wildfire victims, and $1 billion was allocated to certain public entities.

69. The $13.5 billion allocated to wildfire victims was distributed to the Trust for individual allocation to wildfire victims through a claims-handling process.

70. On July 1, 2020, the assignment of the Assigned Rights and Causes of Action to the Trust became effective under the Plan.

71. Each VM Defendant has failed to indemnify PG&E for the damage caused by the Wildfires.

72. Claims to recover for each VM Defendant's failure to add PG&E as an

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

18

COMPLAINT FOR DAMAGES

1  Additional Insured under its general liability policies as required under each VM
2  Defendant's contracts with PG&E, are within the Assigned Rights and Causes of
3  Action assigned to the Trust.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**For Breach of Contract – Performance and Express Contractual Indemnity**

**(Against All VM Defendants)**

8      73.    The Trustee incorporates by reference, as though set forth in full herein,
9  paragraphs 1 through 72 of this Complaint.

10     74.    Each VM Defendant and PG&E entered into a series of written
11  contracts in the form of MSAs and CWAs, as herein alleged.

12     75.    PG&E performed all, or substantially all, of the significant conditions,
13  covenants, promises, and duties to be performed by it under its contracts with the
14  VM Defendants, or such obligations have been excused.

15     76.    All of the conditions that were required for each VM Defendant to
16  perform under its respective contracts with PG&E have been satisfied and occurred.

17     77.    A material term of each contract with the VM Defendants was that they
18  would perform vegetation management work to identify, remove or trim vegetation
19  within striking distance of PG&E's transmission and distribution lines pursuant to
20  regulatory and industry standards to prevent vegetation from coming into contact
21  with, or other damaging, PG&E equipment, especially during high wind events. VM
22  Defendants were aware that improperly managed vegetation presented a significant
23  risk of igniting wildfires.

24     78.    A material term of each contract with the VM Defendants was that they
25  would perform vegetation management work to comply with regulatory requirements
26  of vegetation utility line clearance, including but not limited to:

27         a.     pre-clearance inspection of PG&E transmission and distribution

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

19

COMPLAINT FOR DAMAGES

lines to identify vegetation needing trimming, pruning or removal,

    b.    timely clearance of vegetation in close proximity to PG&E transmission and distribution lines identified as needing trimming, pruning or removal,

    c.    proper training of employees to recognize hazardous and dangerous trees and vegetation in close proximity to PG&E transmission and distribution lines, and

    d.    compliance with vegetation management laws and regulations.

79.    An express or implied term of each contract with the VM Defendants was that they would provide competent vegetation management services to PG&E, pursuant to its contractual obligations, so as to identify and mitigate vegetation that posed a risk to PG&E lines, in compliance with the applicable statutes, regulations, and standards.

80.    The Wildfires were a direct, proximate, and legal result of each VM Defendant's breach of the express and implied terms of its contracts with PG&E by failing to perform vegetation management services with diligence and reasonable care.

81.    Each VM Defendant further failed to provide competent vegetation management services to PG&E, pursuant to its contractual obligations to ensure the proper maintenance and safe operation of PG&E's electrical equipment in compliance with the applicable statutes, regulations and standards, resulting in the Wildfires.

82.    Each VM Defendant's breaches under its respective contracts also include failure to trim, prune or remove trees and other vegetation that posed a risk of starting a fire by coming into contact or damaging PG&E's transmission or distribution lines. Defendants further failed to institute or recommend increasing the frequency and quality of inspections and line clearance as part of PG&E's VM

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Program. VM Defendants' failures resulted in the Wildfires.

83. As a result of each VM Defendant's failure to perform its express and implied contractual duties, PG&E has suffered damages, including incurring liability for personal injury, wrongful death, and property damage caused by the Wildfires. PG&E's liabilities arose from claims against it based on general negligence in the management of the electrical infrastructure, negligent violations of law, strict liability imposed by law, including inverse condemnation, damages incurred by subrogated insurers who covered claims made by wildfire victims, and damages sustained by certain public entities.

84. Pursuant to the Plan, on the Effective Date, PG&E settled its liability from the Wildfires to such individuals and entities by, among other things, funding and committing to fund the Fire Victim Trust.

85. Each VM Defendant, pursuant to its contracts with PG&E, is required to indemnify PG&E for liability for personal injury and wrongful death claims, as well as all personal damage actions against PG&E arising from each VM Defendant's activity "connected in any way" to their vegetation management services and performance under the contracts.

86. PG&E, pursuant to the Plan, assigned to the Fire Victim Trust the right to recover from each VM Defendant its indemnity obligations to PG&E.

87. Additionally, each VM Defendant had a contractual duty to PG&E to protect PG&E's electrical equipment from contact with or damage from trees and other vegetation by taking due care to competently identity and remove or remediate hazardous vegetation next to PG&E's lines.

88. Each VM Defendant reasonably could have foreseen that its failure to meet its duties under its contracts would result in wildfires that would destroy PG&E's electrical equipment, which occurred and caused PG&E to suffer damages.

89. As a result of each VM Defendant's breach of its contractual duties,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1  PG&E suffered damages in an amount to be proven at trial.

2      90.     PG&E, pursuant to the Plan, assigned to the Fire Victim Trust the right

3  to recover damages from the VM Defendants, for the benefit of the victims of the

4  Wildfires, all damages suffered by PG&E based on the VM Defendant Consultants'

5  above-described breaches of their contractual duties, including their contractual

6  obligations to indemnify PG&E.

## SECOND CAUSE OF ACTION

### For Breach of Contract - Insurance

### (Against All VM Defendants)

10      91.     The Trustee incorporates by reference, as though set forth in full herein,

11  paragraphs 1 through 90 of this Complaint.

12      92.     Each of the contracts between the VM Defendants and PG&E required

13  that each VM Defendant maintain insurance coverage, including Commercial

14  General Liability insurance with specified minimum coverage limits, and that VM

15  Defendants add PG&E as an "Additional Insured" to their respective Commercial

16  General Liability policies.

17      93.     On information and belief, each VM Defendant breached its contracts by

18  failing to ensure that PG&E was added as an "Additional Insured" to VM

19  Defendants' respective Commercial General Liability policies.

20      94.     On information and belief, PG&E timely tendered an indemnity demand

21  to each VM Defendant's general liability insurers and demanded that they indemnify

22  PG&E as an additional insured under the general liability policies.

23      95.     None of the VM Defendants' insurers have paid any portion of the

24  damages that PG&E has incurred. Consequently, PG&E has been deprived of the

25  insurance coverage that each VM Defendant was obligated to provide under its

26  contracts.

27      96.     Because VM Defendants' insurance carriers have failed or refused to

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

22

indemnify PG&E pursuant to an additional insured endorsement, each VM Defendant is obligated to stand in the place of its insurers and indemnify PG&E. Each VM Defendant breached its duty by failing to indemnify PG&E for any portion of the damages that PG&E incurred in settling the Wildfire claims and funding the Trust.

97.     The Trust's damages include the amounts that PG&E would have received under the VM Defendants' insurance policies for indemnity with respect to the litigation arising out of the Wildfires had the VM Defendants' general liability policy insurers acknowledged PG&E as an Additional Insured and performed the duties they owed to PG&E as an Additional Insured.

98.     Given that VM Defendants stand in the place of their insurers, the Trust is entitled to an award of attorneys' fees and punitive damages pursuant to the contract with PG&E.

### THIRD CAUSE OF ACTION

### For Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All VM Defendants)

99.     The Trustee incorporates by reference, as though set forth in full herein, paragraphs 1 through 98 of this Complaint.

100.     Each VM Defendant and PG&E entered into written contracts in the form of MSAs and CWAs, as herein alleged.

101.     PG&E performed all of the conditions required of it under the contracts with each VM Defendants.

102.     All of the conditions required for each VM Defendant to perform under the contract had occurred.

103.     In each PG&E contract with each VM Defendant, California law implies a covenant of good faith and fair dealing, pursuant to which neither party may take or fail to take action that would deprive the other party of the intended benefits of

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

23

1  the contract. In this case, the Defendant Consultants impliedly covenanted that in
2  performing vegetation management services each VM Defendant would focus its
3  efforts on the overall safety of the electrical system, and that all work on aspects of
4  the system would be in the context of overall planning for safety. PG&E had a right
5  under each such contract to receive the benefit of the most experienced and qualified
6  expertise on vegetation management services, which is what VM Defendants
7  purported to be selling, to mitigate its own risk and exposure and protect the safety
8  of Californians.

9      104.   Each VM Defendant breached the implied covenant of good faith and
10 fair dealing when it stalled or otherwise delayed critical vegetation clearance work
11 without examining the overall impact that its delay would have on the risk of
12 vegetation-caused electrical grid fires. Each VM Defendant failed to execute its
13 vegetation management services such that it was capable of keeping up with the
14 amount of vegetation management work needed for PG&E to safely operate the grid,
15 thereby denying PG&E of the expertise for which it had bargained.

16     105.   By reason of the VM Defendants' breach of the implied covenant of good
17 faith and fair dealing, PG&E suffered damages. PG&E has assigned to the Trust the
18 right to recover these damages for the benefit of the victims of the Wildfires.

19                    **FOURTH CAUSE OF ACTION**
20        **For Equitable Indemnity (Comparative Fault Between and Among**
21                              **Tortfeasors)**
22                        **(Against All VM Defendants)**
23     106.   The Trustee incorporates by reference, as though set forth in full herein,
24 paragraphs 1 through 105 of this Complaint.
25     107.   As alleged herein, VM Defendants were negligent in the provision of
26 their vegetation management services to PG&E.
27     108.   The negligent conduct of each VM Defendant was a substantial factor in

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

24

1  causing PG&E's equipment to ignite the Wildfires, which resulted in damage to life
2  and property and caused PG&E to incur billions of dollars in liability in funding the
3  Plan. PG&E has assigned to the Trust the right to recover these damages for the
4  benefit of the victims of the Wildfires.

5      109.   Equity requires that each VM Defendant pay a proportionate share of
6  damages corresponding to its percentage of responsibility.

## FIFTH CAUSE OF ACTION

### For Negligence

### (Against All VM Defendants)

10     110.   The Trustee incorporates by reference, as though set forth in full herein,
11  paragraphs 1 through 109 of this Complaint.

12     111.   Each VM Defendant entered into contracts with PG&E, whereby each
13  voluntarily and deliberately undertook the duty to act competently to identify and
14  correct unsafe vegetation conditions, so as to ensure the proper maintenance and safe
15  operation of PG&E's electrical system in compliance with the applicable statutes,
16  regulations, and standards.

17     112.   It was reasonably foreseeable that each VM Defendant's vegetation
18  management services would directly impact Californians who required protection
19  from deadly and devastating wildfires caused by vegetation hitting PG&E's electrical
20  equipment during high wind events. Accordingly, each VM Defendant assumed a
21  duty of care to both PG&E and to the foreseeable victims of wildfires caused by
22  vegetation coming into contact with or otherwise damaging PG&E's electrical
23  infrastructure.

24     113.   Each VM Defendant breached its duty by failing to use reasonable care
25  in the vegetation management work it performed, including by failing to identify,
26  clear or mitigate vegetation issues that presented a significant risk of igniting
27  wildfires. Specifically, each VM Defendant breached its duties by failing to (1) inspect

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

25

trees and other vegetation so as to ensure compliance with the applicable statutes, regulations and standards; (2) timely and properly trim and remove vegetation; (3) properly identify trees and other vegetation that posed a threat to PG&E's electrical lines; and (4) train their employees to recognize hazardous and dangerous trees and other vegetation. Each VM Defendant also breached its duties by participating in a program that offered incentives to its employees for reducing the number of trees and other plants that they marked trimming, removal, or other vegetation management work.

114. Each VM Defendant further breached its duty by failing to use reasonable care to identify and correct unsafe conditions to ensure the proper maintenance and safe operation of PG&E's electrical equipment in compliance with the applicable statutes, regulations, and standards, including with respect to the dangerous conditions that caused the Wildfires.

115. As a result of VM Defendants' negligence in rendering vegetation management services, Santa Ana winds caused various trees to come into contact with PG&E electrical lines, which resulted in the Wildfires.

116. The negligence of each VM Defendant was a substantial contributing cause of the Wildfires, resulting in catastrophic loss of life and property.

117. As a result of each VM Defendant's negligence, PG&E incurred liability for personal injury, wrongful death, and property damage caused by the Wildfires. PG&E's liabilities arose from claims against it based on general negligence in the management of the electrical infrastructure, negligent violations of law, strict liability imposed by law, including inverse condemnation, and damages incurred by subrogated insurers who covered claims made by wildfire victims, and damages suffered by certain public entities.

118. PG&E settled its liability to such individuals and entities as part of the Plan, thereby suffering damages. In addition, PG&E suffered damages to its

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

26

1  equipment resulting from the Wildfires. Under the Plan, PG&E assigned to the Trust

2  the right to recover these damages as alleged in this Complaint.

3  ## SIXTH CAUSE OF ACTION

4  ### For Professional Negligence

5  ### (Against All VM Defendants)

6  119.  The Trustee incorporates by reference, as though set forth in full herein,

7  paragraphs 1 through 118 of this Complaint.

8  120.  Each VM Defendant represented to PG&E that it was a professional

9  expert vegetation management with specialized training and expert skill in

10  identifying and trimming and removing dangerous vegetation in close proximity to

11  utility infrastructure.

12  121.  Each VM Defendant owed a duty to PG&E, as well as to reasonably

13  foreseeable fire victims of a PG&E-caused wildfire, to exercise the skill and care that

14  a skilled professional would use in the work performed for PG&E.

15  122.  By reason of the foregoing, each VM Defendant breached its professional

16  duty of care, and failed to exercise the level of skill, care, and diligence that a

17  reasonable professional would exercise to assist PG&E to prevent wildfires resulting

18  from its electrical infrastructure.

19  123.  Each VM Defendant failed to perform its services for PG&E in accord

20  with professional standards of care and their acts and omissions were a substantial

21  contributing cause of the Wildfires and resulting damages, as alleged herein. Under

22  the Plan, PG&E has assigned to the Trust the right to recover these damages from

23  each VM Defendant for the benefit of the victims of the Wildfires.

24  ////

25  ////

26  ////

27  ////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

27

COMPLAINT FOR DAMAGES

# SEVENTH CAUSE OF ACTION

## Unjust Enrichment

**(Against Defendants Davey Resource Group, Inc., Davey Tree Expert Company; Davey Tree Surgery Company; and Does 1 through 25)**

124.  The Trustee incorporates by reference, as though set forth in full herein, paragraphs 1 through 123 of this Complaint.

125.  Each Defendant failed to provide competent services to PG&E, breaching to its contractual obligations, so as to ensure operation of PG&E's electrical equipment in compliance with the applicable statutes, regulations and standards, thereby causing the Wildfires.

126.  As a result of each Defendant's failures, PG&E suffered damages as alleged herein.

127.  Nevertheless, and despite their failures to perform its obligations and duties to prevent PG&E equipment from causing wildfires, Defendants received substantial sums from PG&E for 'emergency' work authorized in the aftermath of the 2017 fires.

128.  Accordingly, each Defendant was unjustly enriched at PG&E's expense because each received the financial benefit of being awarded contracts with PG&E to perform additional vegetation management work under higher rates, and on information and belief, to perform work that should have already been performed under non-emergency vegetation management contracts.

## PRAYER FOR RELIEF

Wherefore, Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust, prays for judgment against each VM Defendant as follows:

    a.    For damages according to proof at trial;

    b.    For complete or partial indemnity for the obligations and damages incurred and Assigned to the Trustee;

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

COMPLAINT FOR DAMAGES

c.    For pre-judgment interest;

d.    For attorney's fees and punitive damages according to Defendants' contracts with PG&E;

e.    For attorneys' fees, expert fees, consultant fees, and other litigation expenses, as permitted by law;

f.    For costs of suit herein;

g.    For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated: January 28, 2021          WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____

MICHAEL A. KELLY
KHALDOUN A. BAGHDADI
650 California Street, 26th Floor
San Francisco, CA 94108
Tel: (415) 981-7210
Fax: (415) 391-6965
mkelly@walkuplawoffice.com
kbaghdadi@walkuplawoffice.com

**Attorneys for Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust**

**(additional counsel listed on following pages)**

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

29

COMPLAINT FOR DAMAGES

Dated: January 28, 2021          ANDREWS & THORNTON

By:        /s/ Anne Andrews
          ANNE ANDREWS
          JOHN C. THORNTON
          SEAN T. HIGGINS
          ROBERT S. SIKO
          4701 Von Karman Ave., Suite 300
          Newport Beach, CA 92660
          Tel (949) 748-1000
          Fax (949) 315-3540
          aa@andrewsthornton.com
          jct@andrewsthornton.com
          shiggins@andrewsthornton.com
          rsiko@andrewsthornton.com

Dated: January 28, 2021          GREENBERG GROSS LLP

By:        /s/ Alan A. Greenberg
          ALAN A. GREENBERG
          WAYNE R. GROSS
          EVAN C. BORGES
          601 South Figueroa Street, 30th Floor
          Los Angeles, California 90017
          Tel: (213) 334-7000
          Fax: (213) 334-7001
          AGreenberg@GGTrialLaw.com
          WGross@GGTrialLaw.com
          EBorges@GGTrialLaw.com

          **Attorneys for Plaintiff John K. Trotter,
          Jr., Trustee of the PG&E Fire Victim
          Trust**

          **(additional counsel listed on following
          pages)**

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

30

COMPLAINT FOR DAMAGES

Dated: January 28, 2021            COTCHETT PITRE & McCARTHY


                                   By:        /s/ Frank M. Pitre
                                             FRANK M. PITRE
                                             San Francisco Airport Office Center
                                             840 Malcolm Road, Suite 200
                                             Burlingame, CA 94010
                                             Tel: (650) 697-6000
                                             Fax: (650) 697-0577
                                             fpitre@cpmlegal.com

Dated: January 28, 2021            DREYER, BABICH, BUCCOLA, WOOD, CAMPORA


                                   By:        /s/ Steven M. Campora
                                             STEVEN M. CAMPORA
                                             20 Bicentennial Circle
                                             Sacramento, CA 95826
                                             Tel: (916) 379-3500
                                             Fax: (916) 379-3599
                                             scampora@dbbw.com

Dated: January 28, 2021            COREY, LUZAICH, DE GHETALDI & RIDDLE, LLP


                                   By:        /s/ Dario de Ghetaldi
                                             DARIO de GHETALDI
                                             700 El Camino Real
                                             PO Box 669
                                             Millbrae, CA 94030
                                             Tel: (650) 871-5666
                                             Fax: (650) 871-4144
                                             deg@coreylaw.com


                                   **Attorneys for Plaintiff John K. Trotter,
                                   Jr., Trustee of the PG&E Fire Victim
                                   Trust**

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

                                          31
                              COMPLAINT FOR DAMAGES

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State bar number, and address):*
Michael A. Kelly/Khaldoun A. Baghdadi 71640/190111
Walkup, Melodia, Kelly & Schoenberger
650 California Street, 26th Floor
San Francisco, CA 94108
TELEPHONE NO.: (415) 981-7210   FAX NO.: (415) 391-6965
ATTORNEY FOR *(Name):* Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civil-Unlimited

CASE NAME: Trotter v. Davey Resource Group, Inc; Davey Tree Expert
Company; Davey Tree Surgery Company; and DOES 1 through 25, inclusive

**FOR COURT USE ONLY**

**F I L E D**
Superior Court of California
County of San Francisco

JAN 28 2021

CLERK OF THE COURT
BY: _____
Deputy Clerk

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CGC-21-589439 |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☑ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):* Seven
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 28, 2021

Khaldoun A. Baghdadi
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]          CEB® Essential Forms™  ceb.com

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case-Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ-Mandamus on Limited Court Case Matter
    Writ-Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal-Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page 135 of 173

# EXHIBIT D

1  MICHAEL A. KELLY (State Bar #71460)
   mkelly@walkuplawoffice.com
2  KHALDOUN A. BAGHDADI (State Bar #190111)
   kbaghdadi@walkuplawoffice.com
3  **WALKUP, MELODIA, KELLY
   & SCHOENBERGER**
4  650 California Street, 26th Floor
   San Francisco, CA 94108
5  Telephone:  (415) 981-7210
   Facsimile:  (415) 391-6965
6  ANNE ANDREWS (Bar No. 103280)
   aandrews@andrewsthornton.com
7  JOHN C. THORNTON (Bar No. 84492)
   jct@andrewsthornton.com
8  SEAN T. HIGGINS (Bar No. 266888)
   shiggins@andrewsthornton.com
9  ROBERT S. SIKO (Bar No. 312856)
   rsiko@andrewsthornton.com
10 **ANDREWS & THORNTON**
   4701 Von Karman Ave, Suite 300
11 Newport Beach, California 92660
   Telephone:  (949) 748-1000
12 Facsimile:  (949) 315-3540

13 (ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGES)

14 ATTORNEYS FOR PLAINTIFF JOHN K. TROTTER,
   JR., TRUSTEE OF THE PG&E FIRE VICTIM TRUST
15

16          SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                  COUNTY OF SAN FRANCISCO

18

19 JOHN K. TROTTER, JR., Trustee of the      Case No. CGC - 21 - 589441
   PG&E Fire Victim Trust,
20                                           **COMPLAINT FOR DAMAGES**
                     Plaintiff,
21                                           1) Breach of Contract (Performance and
        v.                                      Express Contractual Indemnity)
22                                           2) Breach of Contract (Insurance)
   ACRT PACIFIC, LLC; ACRT, INC.,            3) Breach of Implied Duty of Good Faith
23 DAVEY RESOURCE GROUP, INC.;                  and Fair Dealing
   DAVEY TREE EXPERT COMPANY;                4) Equitable Indemnity
24 DAVEY TREE SURGERY COMPANY;               5) Negligence
   OSMOSE UTILITIES SERVICES, INC.;          6) Professional Negligence
25 and DOES 1 through 25, inclusive,         7) Unjust Enrichment

26                   Defendants.             **JURY TRIAL DEMANDED**
27
28

                                1

<span style="color:red">F I L E D</span>
Superior Court of California
County of San Francisco

JAN 28 2021

CLERK OF THE COURT
BY: _____
          Deputy Clerk

1  Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust (the
2  "Trustee" or "Plaintiff"), brings this action against Defendants ACRT Pacific, LLC;
3  ACRT, Inc., Davey Resource Group, Inc., Davey Tree Expert Company, Davey Tree
4  Surgery Company, and Osmose Utilities Services, Inc., (hereinafter collectively
5  referred to as "VM Defendants" or "Defendants") as follows:

6  ## NATURE OF THE ACTION

7  1.    Prior to 2020, Pacific Gas & Electric Company ("PG&E")[1] owned and
8  operated a power grid and electrical system, which was the cause of several
9  catastrophic wildfires, including: the Butte Fire on September 9, 2015, the Adobe,
10  Atlas, Norrbom, Nuns, Partrick, Point, Sulphur, and Tubbs Fires on October 8 and 9,
11  2017[2], and the Camp Fire on November 8, 2018 (collectively, the "Wildfires"). Each of
12  these fires started because of separate and distinct failures to observe due care, as
13  well as the failure to fulfill statutory and contractual obligations on the part of the
14  defendants named herein.

15  2.    On January 29, 2019, PG&E filed a voluntary Chapter 11 bankruptcy
16  petition in the United States Bankruptcy Court for the Northern District of
17  California, as a result of PG&E's substantial and overwhelming liabilities associated
18  with the 2015, 2017, and 2018 Wildfires caused by its electrical equipment. (*In re*
19  *PG&E Corp.* (Bankr. N.D. Cal.) Case No. 19-30088, Docket Entry Nos. 7711 and
20  8053.) After notice to all interested parties, the Bankruptcy Court confirmed a
21  bankruptcy plan binding on PG&E, its creditors, and all parties in interest, including
22  the victims of the Wildfires (the "Plan"), as of the Effective Date. (*In re PG&E*, *supra*,
23  Docket Entry No. 8053.)

24  _____

25  [1] As used herein, "PG&E" refers to the former Pacific Gas & Electric Company as it
   existed prior to the effective date of its Chapter 11 bankruptcy plan of July 1, 2020
26  (the "Effective Date"), and not the newly emerged Pacific Gas & Electric Company.

27  [2] The Oakmont/Pythian Fire started on or about October 13, 2017. For ease of
   reference to the firestorm commonly referred to as the "North Bay Fires", this
28  Complaint will refer to October 8 and 9, 2017 as the ignition dates.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2

3. The Plan provided, among other things, for the creation of the Fire Victim Trust. *Id.* Pursuant to the Plan, by operation of federal law, PG&E assigned to the Trust certain rights, claims, and causes of action (the "Assigned Rights and Causes of Action"). The Assigned Rights and Causes of Action include "any and all rights, claims, causes of action, and defenses related thereto relating directly or indirectly to any of the prepetition Fires that the Debtors may have against vendors, suppliers, third party contractors and consultants (including those who provided services, directly or indirectly, regarding the Debtors' electrical system, system equipment, inspection and maintenance of the system, and vegetation management)." (*In re PG&E, supra,* Docket Entry No. 7712-1 at 1.) The claims pursued by the Trustee in this Complaint are within the Assigned Rights and Causes of Action.)

4. The Trust was established for two overall purposes: (1) to provide compensation to victims of the Wildfires based on a claims-administration process; and (2) to recover additional funds for the benefit of victims of the Wildfires, including by bringing the Assigned Rights and Causes of Action on behalf of PG&E against other responsible parties. This Complaint is an asset recovery action against responsible third parties brought for the benefit of the victims of the Wildfires.

5. Each VM Defendant contributed to PG&E's failure to mitigate the risk of wildfires through PG&E's systems for evaluating, inspecting and clearing trees and vegetation overgrowth, as well as other vegetation hazards such as disease and decay, in proximity to PG&E transmission and distribution lines, as necessary to comply with California regulations regarding management of vegetation along utility power lines. Each VM Defendant entered into lucrative contracts with PG&E to implement its vegetation management programs, practices, policies, and procedures (PG&E's "VM Program"). In those contracts, each VM Defendant promised PG&E that it would perform VM Program services to reduce the risk of wildfire caused by

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

3

COMPLAINT FOR DAMAGES

1 vegetation issues and otherwise assist PG&E in complying with its regulatory duties.
2 Each VM Defendant thereby joined PG&E in the solemn duty to prevent the deadly
3 and catastrophic wildfires that could be caused by PG&E equipment.

4     6.    During the relevant time period, each VM Defendant participated in,
5 implemented and executed PG&E's VM Program.

6     7.    All VM Defendants held themselves out as fully capable to advise
7 regarding, if not experts in, evaluating and managing trees and other vegetation
8 that, due to their proximity to power transmission and distribution lines, pose a risk
9 of damaging utility lines and causing fires. Each VM Defendant subsequently failed
10 to perform or negligently performed their duties. In addition to PG&E itself, the
11 known and foreseeable victim of wildfires, who would be injured and damaged by VM
12 Defendants' breach of their duties, were California residents and businesses in the
13 area of the PG&E electrical grid in Northern California. The VM Defendants' acts
14 and omissions were substantial contributing causes of the Wildfires.

15     8.    The failures that caused the Wildfires arose from the combined conduct
16 of PG&E and VM Defendants, each of whom failed in their essential roles in reducing
17 the risk of fires caused by vegetation.

18     9.    In the aftermath of the Wildfires, California regulatory officials
19 uncovered PG&E practices permitting dangerous conditions, which caused the
20 individual Wildfires, to go uncorrected. In particular, California regulatory officials
21 found that PG&E failed to abide by legal safety requirements for managing
22 vegetation near its power lines. These substandard, negligent and dangerous
23 practices were contributed to, caused, and/or exacerbated by VM Defendants'
24 breaches of their contractual duties and duties of care with respect to PG&E's VM
25 Programs.

26 ////
27 ////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

4

## GENERAL ALLEGATIONS

**A.     The Parties**

10.     <u>Plaintiff Trustee of the PG&E Fire Victim Trust.</u> Plaintiff John K. Trotter, Jr. is the duly appointed Trustee of the PG&E Fire Victim Trust (the "Fire Victim Trust" or the "Trust"), which was established pursuant to the Plan. The Trustee is a resident of the State of California. The Trust is a Delaware statutory trust.

11.     The Plan resulted in the creation of the Trust. Case No. 19-30088, D.E. 8053. The Trust was established to administer individual victims' claims against PG&E related to the Wildfires, which were caused by PG&E's electrical equipment.

12.     <u>Defendants ACRT Pacific, LLC, and ACRT, Inc.</u> ACRT Pacific, LLC is a corporation organized and existing under the laws of the State of California and headquartered in Stow, Ohio. ACRT, Inc., is a corporation organized and existing under the laws of the State of Ohio and headquartered in Stow, Ohio with, at all relevant times, a second principal place of business in Stockton, California.[3] At all relevant times, ACRT, Inc., has been licensed to do business in and actually conducted business in the State of California. In October 2017, ACRT Pacific, LLC, was formed by ACRT, Inc., and ACRT, Inc., assigned its contracts with PG&E to ACRT Pacific, LLC. On information and belief, as part of the formation of and transfer of the PG&E contracts to ACRT Pacific, LLC, ACRT Pacific, LLC expressly acquired some or all liabilities for and is otherwise the successor-in-interest to ACRT, Inc. Alternatively, ACRT Pacific, LLC, is ACRT, Inc.'s successor-in-interest as a mere continuation of ACRT, Inc. with respect to work that ACRT, Inc., was performing for

---

[3] Defendant ACRT, Inc. removed its principal place of business in California in September 2020, but on information and belief, at all relevant times, including to the present, Defendant ACRT, Inc., maintained a principal office in Stockton, California. As of January 26, 2021, the main page of ACRT Pacific, LLC's website lists its corporate office address as 3443 Deer Park Dr., STE. B, Stockton, CA 95219. *See* https://pacific.acrt.com/, last accessed 1/26/21.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

5

COMPLAINT FOR DAMAGES

1  PG&E. Defendants ACRT Pacific, LLC, and ACRT, Inc., are hereinafter collectively
2  referred to as Defendants ACRT. Defendants ACRT are professional services
3  companies offering a suite of vegetation management services for utility operations,
4  including performance of pre-inspection duties for utilities' vegetation management
5  programs, auditing or quality control of vegetation management work, creation of
6  vegetation clearance work orders, and other related vegetation management work. In
7  the course of said business, Defendants ACRT were hired by and performed
8  vegetation management services for PG&E in the State of California as herein
9  alleged. On information and belief, at a minimum, Defendants ACRT performed such
10 services in connection with the Atlas Fire, and may have performed vegetation
11 management services in connection with additional separate fires.

12     13.     Defendant Davey Resource Group, Inc. Davey Resource Group, Inc.,
13 ("Davey Resource") is a corporation organized and existing under the laws of
14 Delaware with its principal place of business in Kent, Ohio. At all relevant times,
15 Davey Resource has been licensed to do business in and actually conducted business
16 in the State of California. Davey Resource is a professional services company offering
17 a suite of vegetation management services for utility operations, including
18 performance of pre-inspection duties for utilities' vegetation management programs,
19 auditing or quality control of vegetation management work, creation of vegetation
20 clearance work orders, and other related vegetation management work. In the course
21 of said business, Davey Resource was hired by and performed vegetation
22 management services for PG&E in the State of California as herein alleged. On
23 information and belief, at a minimum, Davey Resource performed such services in
24 connection with the Atlas, Partrick, Nuns, and Tubbs Fires, and may have performed
25 vegetation management services in connection with additional separate fires.

26     14.     Defendant Davey Tree Expert Company. Davey Tree Expert Company
27 ("Davey Tree Expert") is a corporation organized and existing under the laws of Ohio

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210
28

6

COMPLAINT FOR DAMAGES

with its principal place of business in Kent, Ohio. At all relevant times, Davey Tree
Expert has been licensed to do business in and actually conducted business in the
State of California. Davey Tree Expert is a professional services company offering a
suite of vegetation management services for utility operations, including responding
to vegetation management work orders, performance of line clearance for vegetation
issues, recording and logging clearance work performed, and, in the course of said
business, was hired by and performed vegetation management services for PG&E in
the State of California as herein alleged. On information and belief, at a minimum,
Davey Tree Expert performed such services in connection with the Adobe, Atlas,
Norrbom, Nuns, Partrick, Tubbs, and Sulphur Fires, and may have performed
vegetation management services in connection with additional separate fires.

      15.    Defendant Davey Tree Surgery Company. Davey Tree Surgery Company
("Davey Tree Surgery") is a corporation organized and existing under the laws of
Delaware with its principal place of business in Kent, Ohio. At all relevant times,
Davey Tree Surgery has been licensed to do business in and actually conducted
business in the State of California. Davey Tree Surgery is a professional services
company offering a suite of vegetation management services for utility operations,
including responding to vegetation management work orders, performance of line
clearance for vegetation issues, recording and logging clearance work performed, and,
in the course of said business, was hired by and performed vegetation management
services for PG&E in the State of California as herein alleged. On information and
belief, at a minimum, Davey Tree Surgery performed such services in connection
with the Adobe, Atlas, Norrbom, Nuns, Partrick, Tubbs, and Sulphur Fires, and may
have performed vegetation management services in connection with additional
separate fires.

      16.    Defendant Osmose Utilities Services. Osmose Utilities Services, Inc.
("Osmose") is a corporation organized and existing under the laws of Delaware with

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

7

its principal place of business in Peachtree City, Georgia. At all relevant times, Defendant Osmose has been licensed to do business in and actually conducted business in the State of California. Osmose provides infrastructure construction and support services. The Company offers remedial treatment, pole restoration, barrier protection, ground wire molding, woodpecker repairing, and other related services. On information and belief, at a minimum, Osmose performed such services in connection with the Sulphur Fire, and may have performed vegetation or pole restoration management services in connection with separate additional fires.

17.     At all relevant times, each VM Defendant was a business entity doing business in the State of California. Each VM Defendant held itself out as an expert in one or more of (1) performance of pre-clearance line inspection for vegetation issues, (2) performance of line clearance of vegetation issues, or (3) auditing or quality control of vegetation management work. At all relevant times, each Defendant was hired by PG&E to perform services in connection with its VM Program, with such services to be performed in California.

18.     Each Defendant was a contractor, vendor, supplier, or third-party contractor of PG&E, as defined in the Plan. Thus, PG&E's claims against the Defendants are included in the Plan's Assigned Rights and Causes of Action. To the extent that one or more of the Defendants have been purchased by, merged into, or changed its form such that it is now owned and/or controlled by a successor, the Trustee asserts the claims asserted herein against such successors, and such successors are liable for the injuries and damages alleged herein. The Trust will seek leave to amend this Complaint to identify any such successors, once information regarding any successors is developed and/or confirmed.

19.     The true names, capacities and basis for liability, whether individual, corporate, partnership, or otherwise, of Doe Defendants 1 through 25, and each of them, are unknown to the Trustee, who therefore sues said Defendants by such

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

8

COMPLAINT FOR DAMAGES

1  fictitious names. The Trustee is informed and believes that each Defendant
2  designated herein as a Doe was in some manner legally responsible for the events,
3  acts, omissions, and damages alleged herein. Any reference herein to the Defendant
4  Consultants includes Doe Defendants 1 through 25, inclusive.

5       **B.     Jurisdiction and Venue**

6       20.     This Court has personal jurisdiction over VM Defendants because this
7  suit arises from the Wildfires, which occurred in California, caused damage to PG&E
8  in California, and was caused by Defendants' services performed pursuant to
9  contracts entered in San Francisco County. Each Defendant is qualified to do
10  business in the State of California.

11       21.     Pursuant to California Code of Civil Procedure § 395(a), venue is proper
12  in this Court as the agreements that provide a basis for liability herein were entered
13  into in the County of San Francisco, State of California.

14       22.     The allegations contained and remedies sought herein share common
15  questions of law and fact such that they should be coordinated or otherwise added on
16  to JCCP 4955, In Re California North Bay Fire Cases.

17       **C.     Factual Allegations**

18           **1.     PG&E's VM Programs**

19       23.     PG&E is a utility company that supplies electrical power by way of
20  overhead conductors throughout California, from Humboldt County to Santa Barbara
21  County. PG&E has identified wildfires caused by its electrical equipment as a top
22  safety and enterprise risk.

23       24.     To protect against the risk of wildfires caused by its electrical
24  equipment, PG&E utilized its VM Program. The policies, processes, procedures, and
25  practices of PG&E's VM Program are designed to comply with the regulations of the
26  California Public Utility Commission ("CPUC") and the California Department of
27  Forestry and Fire Protection ("CAL FIRE"), as well as other relevant laws, statutes

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

9

1  and regulations.

2       25.    Through its VM Program, PG&E monitors approximately 100,000 miles

3  of high-voltage overhead lines across a 70,000-square mile service area. Within that

4  service area, PG&E is responsible for monitoring approximately 120 million trees

5  that have the potential to grow close to, or fall on, overhead lines.

6       26.    During the relevant time period, PG&E's VM Program for its

7  distribution lines included but was not limited to, Catastrophic Event Memorandum

8  Account ("CEMA") patrols and Routine patrols. CEMA patrols were a system-wide

9  program of patrolling PG&E's service area, to identify, prescribe, and document work

10  to be conducted on hazardous trees that threatened PG&E's overhead lines. Routine

11  patrols involved patrolling and conducting tree work along PG&E's high-voltage

12  distribution lines to comply with CPUC General Order 95, Rule 35, and Public

13  Resources Code sections 4292 and 4293.

14       27.    A CEMA patrol or Routine patrol consisted of pre-inspection, tree work,

15  and quality control analysis of the pre-inspection and tree work.

16       28.    PG&E outsourced the entirety of these functions to third-party

17  vendors—the VM Defendants—that specialized in pre-inspection, tree work, or

18  quality control.

19       29.    PG&E required onboarding or training to be completed by each VM

20  Defendant. Pursuant to contracts between PG&E and the VM Defendants, it is each

21  VM Defendant's responsibility to train its workforce.

22       30.    Each year, PG&E spends several hundred million dollars on vegetation

23  management. As part of the vegetation management planning process, PG&E

24  determines annually the number of planned trees that need to be maintained, as well

25  as the annual pre-inspection time. To ensure reliability, pre-inspection contractors

26  are required to meet schedule attainment metrics for both CEMA and Routine

27  patrols.

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

31.     The pre-inspection process involves a contractor's pre-inspectors, also referred to as consulting utility foresters ("CUFs") or supervising consulting utility foresters ("SCUFs"), patrolling the lines listed in PG&E's project management database and looking for vegetation conditions that are potentially problematic for PG&E's overhead lines.

32.     Under PG&E's Vegetation Management Improvement Initiative ("VMII"), pre-inspection contractors can earn an incentive if the actual number of trees identified for work is less than the pre-set target number.

33.     On January 12, 2012, the CPUC issued Decision 12-01-032, which sought to reduce the risk of fire hazards associated with overhead power lines and communication facilities. The CPUC decision required a determination of the risk of catastrophic fires in the service territory of electrical utilities caused by their overhead electrical facilities and the preparation of a fire prevention plan with an effective date of December 21, 2012[4]. In response to CPUC Decision 12-01-032, PG&E developed a companywide "Fire Prevention Plan."

34.     PG&E has developed a number of wildfire safety plans since 2012. Each VM Defendant was hired by PG&E to be an integral part of its safety plans, and specifically the implementation and execution of VM Programs to improve safety, reduce the risk of tree failure into PG&E lines, and prevent wildfires.

## 2.     The Wildfires

### (a)     2017 North Bay Fires

35.     On Sunday, October 8, 2017, tragedy struck communities across Northern California when a series of separate fires began to spark and spread. These deadly fires quickly spread through neighborhoods and destroyed everything in their path, including residences, vegetation, structures, and businesses.

36.     The North Bay Fires are collectively some of the most destructive fires

---

[4] https://www.pge.com/nots/rates/tariffs/tm2/pdf/ELEC_4167-E.pdf

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

11

in California's history. In just a few weeks, the fires caused the deaths of at least 44 people, hospitalized over 185 individuals, displaced about 100,000 people who were forced to leave their homes and search for safety, burned over 245,000 acres, and damaged or destroyed an estimated 14,700 homes, 3,600 vehicles, and 728 businesses. A summary of the specific and distinct fires relevant to this action is as follows:

### (i)     The Atlas Fire

37.     The Atlas Fire started to the south of Lake Berryessa, off Atlas Peak Road at around 9:52 P.M. on October 8, 2017. The Atlas fire was the largest of the 2017 wildfires in Napa/Sonoma during the 2017 firestorms, covering over 51,000 acres and killing six people. The Atlas Fire started when a Black Oak tree fell on one of PG&E's Pueblo-1104 12 kV conductors. Close to the same time, a failed branch from a Valley Oak tree fell at a second location and contacted the same Pueblo line. The fires started at each of the locations merged and continued to burn towards Napa.

### (ii)     The Sulphur Fire

38.     The Sulphur Fire started off Highway 20 and Sulphur Bank Road in Clearlake Oaks, Lake County at around 1:59 P.M. on October 8, 2017. At 11:55 P.M., investigators found two power poles failed and knocked down nearby power lines near Clearlake, Lake County. The Sulphur fire burned 2,207 acres. The fire was started when the top of a wooden pole supporting PG&E's conductors failed and fell to the ground. The conductors then contacted the ground and ignited the fire. The pole failed due to substantial weakening from bird damage, likely a woodpecker nest.

### 3.     VM Defendants' Engagement

39.     Prior to 2017, each VM Defendant entered into a written contract with PG&E that mandated the provision of vegetation management services. The specific content has been designated as "Confidential" or otherwise restricted from public

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

12

COMPLAINT FOR DAMAGES

1 disclosure in prior litigation involving these defendants. Plaintiff accordingly

2 describes the general terms and obligations imposed by the agreements, all of which

3 are in possession of the defendants.

4     a.    patrolling distribution and transmission lines to identify and

5               assess required tree work, including such hazardous trees or

6               portions of trees with the potential to fail and come into contact

7               with high voltage conductors, trees near power lines that could

8               interfere with PG&E lines, vegetation with the potential to grow

9               into the primary conductors before the next annual trim or which

10               is currently causing strain/abrasion of the secondary conductors,

11               or trees which will not hold minimum clearance,

12     b.    mandates on the required timing of certification and training for

13               inspectors,

14     c.    prescribing work to be performed,

15     d.    entering work identified and prescription information into the

16               PG&E Vegetation Management Data Base (VMDB),

17     e.    editing the data in VMDB and creating work request form(s), and

18     f.    either undertaking to perform the work requested or assigning

19               the work to other PG&E contractors, as directed by PG&E.

20 Each VM Defendant is responsible for having a Quality Assurance Auditor to confirm

21 contractual compliance. Such auditor is required to have specific educational or

22 vocational training and experience. The essence of each VM Defendant's contract was

23 to ensure the safe and reliable operation of all PG&E distribution lines in compliance

24 with state laws and regulations.

25     40.    Additionally, each VM Defendant's contract contained a requirement

26 that each respective VM Defendant indemnify and hold harmless PG&E from

27 liability arising from personal injury, property injury/damage, violations of laws, or

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

13

COMPLAINT FOR DAMAGES

1 strict liability imposed by law that is connected in any way with each VM
2 Defendant's performance of or failure to perform under the contract.

3     41.    Additionally, each VM Defendant's contract also obligates it to defend
4 any action, claim, or suit asserting a claim which might be covered by the above
5 indemnity, as well as pay all costs and expenses that may be incurred by PG&E in
6 enforcing the indemnity, including reasonable attorney's fees.

7     42.    Each VM Defendant was aware that their contract required it to
8 indemnify PG&E even for liability that was not the result of VM Defendant's
9 negligence so long as the liability was in any way connected with Defendant's
10 performance of or failure to perform under the contract.

11     43.    Separate and apart from the indemnity provisions in the VM
12 Defendants' contracts with PG&E, each VM Defendant's contract required Defendant
13 to maintain insurance coverage, including Commercial General Liability insurance,
14 for each occurrence where the VM Defendant's performance under the contract is an
15 any way connected with fire-related liability. It also required each VM Defendant to
16 add PG&E as an "Additional Insured" to its Commercial General Liability coverage
17 requirement with respect to liability arising out of or connected with the work
18 performed by or for each VM Defendant. Each contract did not specify or limit to
19 what insurance policies PG&E was to be added as an Additional Insured; rather,
20 PG&E was to be added as an Additional Insured on each policy covering an instance
21 where each VM Defendant was required to maintain Commercial General Liability
22 insurance. The Pre-Inspection Contract also required that each VM Defendant's
23 insurance policies must specify that Defendant's insurance is primary and that any
24 insurance or self-insurance maintained by PG&E shall not contribute with it.

25     44.    Each VM Defendant's contract contains a provision stating that if it fails
26 to add PG&E as an Additional Insured, it must stand in the shoes of its insurance
27 carrier to the same extent as an insurer issuing ISO form occurrence coverage

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210
28

14

COMPLAINT FOR DAMAGES

1 | without coverage deletions. Failure to do so, results in further damages, including
2 | attorney's fees and punitive damages.

3 | 45. As part of their contracts, VM Defendants were required to attain
4 | schedule requirements on a weekly basis to ensure that trees adjacent to or near
5 | PG&E's system lines are adequately inspected. During the term of the contract,
6 | however, Defendants continually and repeatedly fell behind their schedule
7 | attainment requirements, including leading up to the Wildfires, sometimes by as
8 | much as a year. In the North Bay Division alone, in October 2017, more than 3,000
9 | trees were two months behind VM Defendants' pre-inspection schedule.

10 | 46. Moreover, in 2017, PG&E required its pre-inspection contractors,
11 | including VM Defendants, to identify 23 percent of the trees marked for treatment to
12 | be marked for removal. A removal designation served to both lower the risk of fire by
13 | protecting the electrical equipment and by diminishing the near for future tree work
14 | on trees with the potential to contact power lines. Yet VM Defendants routinely
15 | missed the removal threshold.

16 | 47. At the time of the Wildfires, VM Defendants' pre-inspectors regularly
17 | discussed amongst themselves how far behind schedule Defendants were in
18 | complying with their contractual duties to inspect PG&E's power lines for hazardous
19 | trees.

20 | 48. VM Defendants were aware that their pre-inspectors did not have
21 | adequate training to identify trees subject to the relevant contractual standards.

22 | 49. VM Defendants were also aware that their pre-inspectors did not have
23 | the contractually-required educational background and/or credentials to comply with
24 | the Pre-Inspection Contract. VM Defendants also knew those inspectors were not
25 | properly certified as required under the terms of the agreement.

26 | 50. VM Defendants were aware that their pre-inspectors did not know of or
27 | have the requisite knowledge to understand how to determine whether an inspection

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

15

COMPLAINT FOR DAMAGES

complied with requisite contractual and industry standards. Despite their awareness, VM Defendants did not test their pre-inspectors' knowledge of the relevant inspection and trimming standards. Nor did they ensure that their pre-inspectors read relevant materials designed to educate them about the relevant inspection and trimming standards.

51. VM Defendants were further aware that their pre-inspectors had rushed through their pre-inspection work when they fell behind their scheduled attainment requirements.

52. When VM Defendants fell behind schedule, their pre-inspectors would attempt to rush through their work in order to qualify for contractual financial incentives.

53. At all times herein alleged, and prior to the Wildfires, each VM Defendant, was aware that if they failed to perform their duties, as required under their agreements with PG&E, to the standard required of an expert in the industry, there was a significant risk of fire, damage to property owned by members of the general public, and the death to members of the general public. The VM Defendants failed to inspect the trees as required under the terms of the contract, specifically including, but not limited to, failing to inspect, prune, remove and identify trees as required by PG&E Vegetation Management program.

54. Specifically, each VM Defendant was aware of the significant wildfire risk posed by trees or other vegetation coming into contact with high voltage electrical transmission and distribution lines during high wind events in Northern California. More specifically, each VM Defendant was aware that prior to the Wildfires, the State of California, and in particular the counties affected by the Wildfires, had been in a prolonged state of drought. VM Defendants, and each of them, knew or should have known that the drought conditions had existed for a number of years and that fire danger was at an extraordinarily high level. VM

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Defendants, and each them, as arborists and vegetation experts, were aware or should have been aware that, at the time of the Wildfires, there was an abundance of undergrowth and other fuels such that the risk of a catastrophic fire was high. Each VM Defendant was aware that there had been a long history of large-scale wildfires ignited during high winds, like the Santa Ana winds, causing trees to fall into PG&E electrical equipment, as well as other utilities' electrical equipment, across California.

55.     Each VM Defendant knew or should have known that the members of the public were at great risk if they failed to fulfill their duties and perform to the standard of an expert in the utility arborist industry. Each VM Defendant knew that if the lines came into contact with vegetation a fire would likely result and that, given the drought and other weather conditions such as the Santa Ana winds, the resulting fire could cause loss of life, personal injury, significant damage to real and personal property, and other damage to members of the general public. The risk of improperly trimmed or removed trees starting large-scale, costly, and deadly wildfires by failing during high wind events and hitting electrical equipment was well-documented and foreseeable to any reasonable company providing vegetation management services to a utility. As a result of this known danger, each VM Defendant had a heightened duty of care.

56.     Each VM Defendant held itself out as fully competent to perform and as a professional expert with sufficient expert skill, training, and knowledge to identify and trim or remove dangerous vegetation in close proximity to PG&E's infrastructure and electrical operations. Accordingly, each VM Defendant's conduct should be assessed under such professional standards.

57.     In addition, each VM Defendant had a duty to properly inspect and identify trees and other vegetation that posed a risk to, or was endangered by, PG&E's electrical lines, to mark such trees and other vegetation for work or removal,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

17

COMPLAINT FOR DAMAGES

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page 153 of 173

and to remove or trim trees and other vegetation. Proper performance of these duties was necessary for each VM Defendant to comply with applicable standards of care, including but not limited to the Public Resources Code, industry standards, and PG&E's policies and procedures.

58.     Each VM Defendant received lucrative contracts from PG&E to mitigate wildfire risk. Each VM Defendant executed one or more Master Services Agreements ("MSA") with PG&E to provide vegetation management services in support of PG&E's duty to operate its electrical equipment without causing fires. The primary purpose of each MSA was to provide a set of terms, conditions, and requirements that would apply to each VM Defendant's work for PG&E. In most cases, each VM Defendant's work was also governed by a specific Contract Work Authorization ("CWA") entered into under the respective MSA. The work performed by each VM Defendant under the relevant CWA was intended to identify and mitigate the risk of vegetation hitting PG&E transmission and distribution lines during high wind events, and thus reduce the risk of widescale wildfires being ignited by PG&E lines and dangerously spreading uncontrolled through communities across Northern California.

59.     Each VM Defendant was aware that if it failed to perform its contractual duties to the standard required of a professional expert, a significant risk existed of a catastrophic wildfire causing injury and death to persons within the fire perimeters as well as extraordinary property damage.

60.     Each VM Defendant undertook the duty to properly and reasonably perform vegetation management work to identify and remediate vegetation issues around PG&E lines.

61.     Each VM Defendant undertook the duty to use its professional training and experience, best efforts, and reasonable care to protect foreseeable victims of fires caused by PG&E's equipment, namely, Californians in the areas serviced by

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

18

1    PG&E's electrical system.

2         62.    Each VM Defendant, in performing under its contracts with PG&E,

3    understood and recognized that vegetation management services were for the benefit

4    of both PG&E and the citizens of California, who were at risk of injury and damage

5    from wildfires caused by tress or vegetation coming into contact with or otherwise

6    damaging PG&E's electrical system.

7         63.    Each VM Defendant also failed to take contractually required and

8    industry-standard precautions that would have prevented the Wildfires from

9    occurring.

10              4.      PG&E Bankruptcy, Settlement and Assignment of Rights
                        to the Fire Victim Trust

11

12        64.    Each VM Defendant's respective failure to provide the contracted

13   services to PG&E, or to do so competently, caused devastating financial losses for

14   PG&E in the form of its own equipment losses, as well as liabilities (both via strict

15   liability and otherwise) to third parties who suffered death, personal injury, or

16   property damage as a result of the Wildfires.

17        65.    As alleged above, PG&E under the Plan assigned to the Fire Victim

18   Trust the right to bring the Assigned Rights and Causes of Action to provide

19   compensation to victims of the Wildfires, including claims for damages and

20   indemnification on behalf of PG&E.

21        66.    Among the claims resolved by the Plan were claims based on any theory

22   of inverse condemnation. (*See In re PG&E, supra*, Docket Entry No. 8053.)

23        67.    Inverse condemnation is a legal principle, rooted in the California

24   Constitution whereby utilities such as PG&E are held strictly liable for damage

25   arising from fires caused by utility electrical equipment. (*See* Cal. Const., art. I, § 19.)

26        68.    On November 26, 2019, the Bankruptcy Court held that inverse

27   condemnation applied to PG&E for all of the 2017 Northern California Wildfires and

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

19

COMPLAINT FOR DAMAGES

1  the 2018 Camp Fire. (*See In re PG&E, supra*, Docket Entry No. 4895.)

2       69.    As the Bankruptcy Court explained: "In short, the California

3  Constitution imposes strict liability in favor of the owner of property that has been

4  taken or damaged through a public use or purpose and does not concern itself with

5  the rights or liabilities of whom or what did the damage. It is a form of strict liability

6  imposed on the party causing, or whose equipment caused, the damage." (*Id.* at 3.)

7       70.    Each VM Defendant's indemnity obligations to PG&E include, but are

8  not limited to, the obligation to indemnify PG&E for its strict liability associated with

9  inverse condemnation based on the Wildfires. This indemnification obligation, and

10  other indemnification obligations of the VM Defendants, are within the Assigned

11  Rights and Causes of Action assigned to the Trust.

12       71.    As part of its Plan, PG&E agreed to settle its wildfire liabilities,

13  including but not limited to inverse condemnation liabilities, to injured third parties,

14  for a total of $25.5 billion, of which $13.5 billion was allocated for wildfire victims,

15  $11 billion was allocated for the subrogated insurers of wildfire victims, and $1

16  billion was allocated to certain public entities.

17       72.    The $13.5 billion allocated to wildfire victims was distributed to the

18  Trust for individual allocation to wildfire victims through a claims-handling process.

19       73.    On July 1, 2020, the assignment of the Assigned Rights and Causes of

20  Action to the Trust became effective under the Plan.

21       74.    Each VM Defendant has failed to indemnify PG&E for the damage

22  caused by the Wildfires.

23       75.    Claims to recover for each VM Defendant's failure to add PG&E as an

24  Additional Insured under its general liability policies as required under each VM

25  Defendant's contracts with PG&E, are within the Assigned Rights and Causes of

26  Action assigned to the Trust.

27  /////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

COMPLAINT FOR DAMAGES

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### For Breach of Contract – Performance and Express Contractual Indemnity

### (Against All VM Defendants)

76. The Trustee incorporates by reference, as though set forth in full herein, paragraphs 1 through 75 of this Complaint.

77. Each VM Defendant and PG&E entered into a series of written contracts in the form of MSAs and CWAs, as herein alleged.

78. PG&E performed all, or substantially all, of the significant conditions, covenants, promises, and duties to be performed by it under its contracts with the VM Defendants, or such obligations have been excused.

79. All of the conditions that were required for each VM Defendant to perform under its respective contracts with PG&E have been satisfied and occurred.

80. A material term of each contract with the VM Defendants was that they would perform vegetation management work to identify, remove or trim vegetation within striking distance of PG&E's transmission and distribution lines pursuant to regulatory and industry standards to prevent vegetation from coming into contact with, or other damaging, PG&E equipment, especially during high wind events. VM Defendants were aware that improperly managed vegetation presented a significant risk of igniting wildfires.

81. A material term of each contract with the VM Defendants was that they would perform vegetation management work to comply with regulatory requirements of vegetation utility line clearance, including but not limited to:

      a.    pre-clearance inspection of PG&E transmission and distribution lines to identify vegetation needing trimming, pruning or removal,

      b.    timely clearance of vegetation in close proximity to PG&E

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

21

COMPLAINT FOR DAMAGES

transmission and distribution lines identified as needing

trimming, pruning or removal,

c.     proper training of employees to recognize hazardous and

dangerous trees and vegetation in close proximity to PG&E

transmission and distribution lines, and

d.     compliance with vegetation management laws and regulations.

82.    An express or implied term of each contract with the VM Defendants was that they would provide competent vegetation management services to PG&E, pursuant to its contractual obligations, so as to identify and mitigate vegetation that posed a risk to PG&E lines, in compliance with the applicable statutes, regulations, and standards.

83.    The Wildfires were a direct, proximate, and legal result of each VM Defendant's breach of the express and implied terms of its contracts with PG&E by failing to perform vegetation management services with diligence and reasonable care.

84.    Each VM Defendant further failed to provide competent vegetation management services to PG&E, pursuant to its contractual obligations to ensure the proper maintenance and safe operation of PG&E's electrical equipment in compliance with the applicable statutes, regulations and standards, resulting in the Wildfires.

85.    Each VM Defendant's breaches under its respective contracts also include failure to trim, prune or remove trees and other vegetation that posed a risk of starting a fire by coming into contact or damaging PG&E's transmission or distribution lines. Defendants further failed to institute or recommend increasing the frequency and quality of inspections and line clearance as part of PG&E's VM Program. VM Defendants' failures resulted in the Wildfires.

86.    As a result of each VM Defendant's failure to perform its express and implied contractual duties, PG&E has suffered damages, including incurring liability

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

22

COMPLAINT FOR DAMAGES

1  for personal injury, wrongful death, and property damage caused by the Wildfires.

2  PG&E's liabilities arose from claims against it based on general negligence in the

3  management of the electrical infrastructure, negligent violations of law, strict

4  liability imposed by law, including inverse condemnation, damages incurred by

5  subrogated insurers who covered claims made by wildfire victims, and damages

6  sustained by certain public entities.

7      87.     Pursuant to the Plan, on the Effective Date, PG&E settled its liability

8  from the Wildfires to such individuals and entities by, among other things, funding

9  and committing to fund the Fire Victim Trust.

10     88.     Each VM Defendant, pursuant to its contracts with PG&E, is required

11  to indemnify PG&E for liability for personal injury and wrongful death claims, as

12  well as all personal damage actions against PG&E arising from each VM Defendant's

13  activity "connected in any way" to their vegetation management services and

14  performance under the contracts.

15     89.     PG&E, pursuant to the Plan, assigned to the Fire Victim Trust the right

16  to recover from each VM Defendant its indemnity obligations to PG&E.

17     90.     Additionally, each VM Defendant had a contractual duty to PG&E to

18  protect PG&E's electrical equipment from contact with or damage from trees and

19  other vegetation by taking due care to competently identity and remove or remediate

20  hazardous vegetation next to PG&E's lines.

21     91.     Each VM Defendant reasonably could have foreseen that its failure to

22  meet its duties under its contracts would result in wildfires that would destroy

23  PG&E's electrical equipment, which occurred and caused PG&E to suffer damages.

24     92.     As a result of each VM Defendant's breach of its contractual duties,

25  PG&E suffered damages in an amount to be proven at trial.

26     93.     PG&E, pursuant to the Plan, assigned to the Fire Victim Trust the right

27  to recover damages from the VM Defendants, for the benefit of the victims of the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

23

COMPLAINT FOR DAMAGES

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page 159 of 173

1  Wildfires, all damages suffered by PG&E based on the VM Defendant Consultants'
2  above-described breaches of their contractual duties, including their contractual
3  obligations to indemnify PG&E.

## SECOND CAUSE OF ACTION

### For Breach of Contract - Insurance

### (Against All VM Defendants)

7      94.    The Trustee incorporates by reference, as though set forth in full herein,
8  paragraphs 1 through 93 of this Complaint.

9      95.    Each of the contracts between the VM Defendants and PG&E required
10 that each VM Defendant maintain insurance coverage, including Commercial
11 General Liability insurance with specified minimum coverage limits, and that VM
12 Defendants add PG&E as an "Additional Insured" to their respective Commercial
13 General Liability policies.

14     96.    On information and belief, each VM Defendant breached its contracts by
15 failing to ensure that PG&E was added as an "Additional Insured" to VM
16 Defendants' respective Commercial General Liability policies.

17     97.    On information and belief, PG&E timely tendered an indemnity demand
18 to each VM Defendant's general liability insurers and demanded that they indemnify
19 PG&E as an additional insured under the general liability policies.

20     98.    None of the VM Defendants' insurers have paid any portion of the
21 damages that PG&E has incurred. Consequently, PG&E has been deprived of the
22 insurance coverage that each VM Defendant was obligated to provide under its
23 contracts.

24     99.    Because VM Defendants' insurance carriers have failed or refused to
25 indemnify PG&E pursuant to an additional insured endorsement, each VM
26 Defendant is obligated to stand in the place of its insurers and indemnify PG&E.
27 Each VM Defendant breached its duty by failing to indemnify PG&E for any portion

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page
160 of 173

1  of the damages that PG&E incurred in settling the Wildfire claims and funding the
2  Trust.

3     100.   The Trust's damages include the amounts that PG&E would have
4  received under the VM Defendants' insurance policies for indemnity with respect to
5  the litigation arising out of the Wildfires had the VM Defendants' general liability
6  policy insurers acknowledged PG&E as an Additional Insured and performed the
7  duties they owed to PG&E as an Additional Insured.

8     101.   Given that VM Defendants stand in the place of their insurers, the
9  Trust is entitled to an award of attorneys' fees and punitive damages pursuant to the
10 contract with PG&E.

11            **THIRD CAUSE OF ACTION**
12     **For Breach of Implied Covenant of Good Faith and Fair Dealing**
13               **(Against All VM Defendants)**

14     102.   The Trustee incorporates by reference, as though set forth in full herein,
15 paragraphs 1 through 101 of this Complaint.

16     103.   Each VM Defendant and PG&E entered into written contracts in the
17 form of MSAs and CWAs, as herein alleged.

18     104.   PG&E performed all of the conditions required of it under the contracts
19 with each VM Defendants.

20     105.   All of the conditions required for each VM Defendant to perform under
21 the contract had occurred.

22     106.   In each PG&E contract with each VM Defendant, California law implies
23 a covenant of good faith and fair dealing, pursuant to which neither party may take
24 or fail to take action that would deprive the other party of the intended benefits of
25 the contract. In this case, the Defendant Consultants impliedly covenanted that in
26 performing vegetation management services each VM Defendant would focus its
27 efforts on the overall safety of the electrical system, and that all work on aspects of

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210
28

25

the system would be in the context of overall planning for safety. PG&E had a right under each such contract to receive the benefit of the most experienced and qualified expertise on vegetation management services, which is what VM Defendants purported to be selling, to mitigate its own risk and exposure and protect the safety of Californians.

107.   Each VM Defendant breached the implied covenant of good faith and fair dealing when it stalled or otherwise delayed critical vegetation clearance work without examining the overall impact that its delay would have on the risk of vegetation-caused electrical grid fires. Each VM Defendant failed to execute its vegetation management services such that it was capable of keeping up with the amount of vegetation management work needed for PG&E to safely operate the grid, thereby denying PG&E of the expertise for which it had bargained.

108.   By reason of the VM Defendants' breach of the implied covenant of good faith and fair dealing, PG&E suffered damages. PG&E has assigned to the Trust the right to recover these damages for the benefit of the victims of the Wildfires.

## FOURTH CAUSE OF ACTION

### For Equitable Indemnity (Comparative Fault Between and Among
### Tortfeasors)

### (Against All VM Defendants)

109.   The Trustee incorporates by reference, as though set forth in full herein, paragraphs 1 through 108 of this Complaint.

110.   As alleged herein, VM Defendants were negligent in the provision of their vegetation management services to PG&E.

111.   The negligent conduct of each VM Defendant was a substantial factor in causing PG&E's equipment to ignite the Wildfires, which resulted in damage to life and property and caused PG&E to incur billions of dollars in liability in funding the Plan. PG&E has assigned to the Trust the right to recover these damages for the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

26

COMPLAINT FOR DAMAGES

1 | benefit of the victims of the Wildfires.

2 | 112. Equity requires that each VM Defendant pay a proportionate share of

3 | damages corresponding to its percentage of responsibility.

## FIFTH CAUSE OF ACTION

### For Negligence

### (Against All VM Defendants)

7 | 113. The Trustee incorporates by reference, as though set forth in full herein,

8 | paragraphs 1 through 112 of this Complaint.

9 | 114. Each VM Defendant entered into contracts with PG&E, whereby each

10 | voluntarily and deliberately undertook the duty to act competently to identify and

11 | correct unsafe vegetation conditions, so as to ensure the proper maintenance and safe

12 | operation of PG&E's electrical system in compliance with the applicable statutes,

13 | regulations, and standards.

14 | 115. It was reasonably foreseeable that each VM Defendant's vegetation

15 | management services would directly impact Californians who required protection

16 | from deadly and devastating wildfires caused by vegetation hitting PG&E's electrical

17 | equipment during high wind events. Accordingly, each VM Defendant assumed a

18 | duty of care to both PG&E and to the foreseeable victims of wildfires caused by

19 | vegetation coming into contact with or otherwise damaging PG&E's electrical

20 | infrastructure.

21 | 116. Each VM Defendant breached its duty by failing to use reasonable care

22 | in the vegetation management work it performed, including by failing to identify,

23 | clear or mitigate vegetation issues that presented a significant risk of igniting

24 | wildfires. Specifically, each VM Defendant breached its duties by failing to (1) inspect

25 | trees and other vegetation so as to ensure compliance with the applicable statutes,

26 | regulations and standards; (2) timely and properly trim and remove vegetation; (3)

27 | properly identify trees and other vegetation that posed a threat to PG&E's electrical

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

27

1 | lines; and (4) train their employees to recognize hazardous and dangerous trees and
2 | other vegetation. Each VM Defendant also breached its duties by participating in a
3 | program that offered incentives to its employees for reducing the number of trees and
4 | other plants that they marked trimming, removal, or other vegetation management
5 | work.

6      117.   Each VM Defendant further breached its duty by failing to use
7 | reasonable care to identify and correct unsafe conditions to ensure the proper
8 | maintenance and safe operation of PG&E's electrical equipment in compliance with
9 | the applicable statutes, regulations, and standards, including with respect to the
10 | dangerous conditions that caused the Wildfires.

11      118.   As a result of VM Defendants' negligence in rendering vegetation
12 | management services, Santa Ana winds caused various trees to come into contact
13 | with PG&E electrical lines, which resulted in the Wildfires.

14      119.   The negligence of each VM Defendant was a substantial contributing
15 | cause of the Wildfires, resulting in catastrophic loss of life and property.

16      120.   As a result of each VM Defendant's negligence, PG&E incurred liability
17 | for personal injury, wrongful death, and property damage caused by the Wildfires.
18 | PG&E's liabilities arose from claims against it based on general negligence in the
19 | management of the electrical infrastructure, negligent violations of law, strict
20 | liability imposed by law, including inverse condemnation, and damages incurred by
21 | subrogated insurers who covered claims made by wildfire victims, and damages
22 | suffered by certain public entities.

23      121.   PG&E settled its liability to such individuals and entities as part of the
24 | Plan, thereby suffering damages. In addition, PG&E suffered damages to its
25 | equipment resulting from the Wildfires. Under the Plan, PG&E assigned to the Trust
26 | the right to recover these damages as alleged in this Complaint.

27 | ////

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

28

COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

### For Professional Negligence

### (Against All VM Defendants)

122.    The Trustee incorporates by reference, as though set forth in full herein, paragraphs 1 through 121 of this Complaint.

123.    Each VM Defendant represented to PG&E that it was a professional expert vegetation management with specialized training and expert skill in identifying and trimming and removing dangerous vegetation in close proximity to utility infrastructure.

124.    Each VM Defendant owed a duty to PG&E, as well as to reasonably foreseeable fire victims of a PG&E-caused wildfire, to exercise the skill and care that a skilled professional would use in the work performed for PG&E.

125.    By reason of the foregoing, each VM Defendant breached its professional duty of care, and failed to exercise the level of skill, care, and diligence that a reasonable professional would exercise to assist PG&E to prevent wildfires resulting from its electrical infrastructure.

126.    Each VM Defendant failed to perform its services for PG&E in accord with professional standards of care and their acts and omissions were a substantial contributing cause of the Wildfires and resulting damages, as alleged herein. Under the Plan, PG&E has assigned to the Trust the right to recover these damages from each VM Defendant for the benefit of the victims of the Wildfires.

### SEVENTH CAUSE OF ACTION

### Unjust Enrichment

### (Against Defendants ACRT Pacific, LLC and ACRT, Inc.; Davey Resource Group, Inc., Davey Tree Expert Company; Davey Tree Surgery Company; and Does 1 through 25)

127.    The Trustee incorporates by reference, as though set forth in full herein,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

29

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page 165 of 173

paragraphs 1 through 126 of this Complaint.

128. Each Defendant failed to provide competent services to PG&E, breaching to its contractual obligations, so as to ensure operation of PG&E's electrical equipment in compliance with the applicable statutes, regulations and standards, thereby causing the Wildfires.

129. As a result of each Defendant's failures, PG&E suffered damages as alleged herein.

130. Nevertheless, and despite their failures to perform its obligations and duties to prevent PG&E equipment from causing wildfires, Defendants received substantial sums from PG&E for 'emergency' work authorized in the aftermath of the 2017 fires.

131. Accordingly, each Defendant was unjustly enriched at PG&E's expense because each received the financial benefit of being awarded contracts with PG&E to perform additional vegetation management work under higher rates, and on information and belief, to perform work that should have already been performed under non-emergency vegetation management contracts.

## PRAYER FOR RELIEF

Wherefore, Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust, prays for judgment against each VM Defendant as follows:

    a.    For damages according to proof at trial;

    b.    For complete or partial indemnity for the obligations and damages incurred and Assigned to the Trustee;

    c.    For pre-judgment interest;

    d.    For attorney's fees and punitive damages according to Defendants' contracts with PG&E;

    e.    For attorneys' fees, expert fees, consultant fees, and other litigation expenses, as permitted by law;

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

30

COMPLAINT FOR DAMAGES

f. For costs of suit herein;

g. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: January 28, 2021   WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____
MICHAEL A. KELLY
KHALDOUN A. BAGHDADI
650 California Street, 26th Floor
San Francisco, CA 94108
Tel: (415) 981-7210
Fax: (415) 391-6965
mkelly@walkuplawoffice.com
kbaghdadi@walkuplawoffice.com

Dated: January 28, 2021   ANDREWS & THORNTON

By: _____/s/ Anne Andrews_____
ANNE ANDREWS
JOHN C. THORNTON
SEAN T. HIGGINS
ROBERT S. SIKO
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Tel (949) 748-1000
Fax (949) 315-3540
aa@andrewsthornton.com
jct@andrewsthornton.com
shiggins@andrewsthornton.com
rsiko@andrewsthornton.com

**Attorneys for Plaintiff John K. Trotter, Jr., Trustee of the PG&E Fire Victim Trust**

**(additional counsel listed on following pages)**

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Dated: January 28, 2021          GREENBERG GROSS LLP


                                 By:    /s/ Alan A. Greenberg
                                       ALAN A. GREENBERG
                                       WAYNE R. GROSS
                                       EVAN C. BORGES
                                       601 South Figueroa Street, 30th Floor
                                       Los Angeles, California 90017
                                       Tel: (213) 334-7000
                                       Fax: (213) 334-7001
                                       AGreenberg@GGTrialLaw.com
                                       WGross@GGTrialLaw.com
                                       EBorges@GGTrialLaw.com

Dated: January 28, 2021          COTCHETT PITRE & MCCARTHY


                                 By:    /s/ Frank M. Pitre
                                       FRANK M. PITRE
                                       San Francisco Airport Office Center
                                       840 Malcolm Road, Suite 200
                                       Burlingame, CA 94010
                                       Tel: (650) 697-6000
                                       Fax: (650) 697-0577
                                       fpitre@cpmlegal.com

                                 **Attorneys for Plaintiff John K. Trotter,
                                 Jr., Trustee of the PG&E Fire Victim
                                 Trust**

                                 **(additional counsel listed on following
                                 pages)**

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

                                      32

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page
                                  168 of 173

Dated: January 28, 2021          DREYER, BABICH, BUCCOLA, WOOD, CAMPORA


By:    _____/s/ Steven M. Campora_____
       STEVEN M. CAMPORA
       20 Bicentennial Circle
       Sacramento, CA 95826
       Tel: (916) 379-3500
       Fax: (916) 379-3599
       scampora@dbbw.com

Dated: January 28, 2021          COREY, LUZAICH, DE GHETALDI & RIDDLE, LLP


By:    _____/s/ Dario de Ghetaldi_____
       DARIO de GHETALDI
       700 El Camino Real
       PO Box 669
       Millbrae, CA 94030
       Tel: (650) 871-5666
       Fax: (650) 871-4144
       deg@coreylaw.com


       **Attorneys for Plaintiff John K. Trotter,
       Jr., Trustee of the PG&E Fire Victim
       Trust**

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

33

COMPLAINT FOR DAMAGES

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Michael A. Kelly/Khaldoun A. Baghdadi 71640/190111<br>Walkup, Melodia, Kelly & Schoenberger<br>650 California Street, 26th Floor<br>San Francisco, CA 94108-2615<br>TELEPHONE NO. (415) 981-7210    FAX NO. (415) 391-6965<br>ATTORNEY FOR *(Name)*: Plaintiff John K. Trotter, Jr., Trustee | FOR COURT USE ONLY<br><br>F I L E D<br>Superior Court of California<br>County of San Francisco<br><br>JAN 28 2021<br><br>CLERK OF THE COURT<br>BY: _____<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Unlimited Jurisdiction

CASE NAME: Trotter v ACRT Pacific, LLC, ACRT, Inc. Davey Resource Group, Inc., Davey Tree Expert Company, Davey Tree Surgery Company, Osmose Utilities Services, et

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | CGC-21-589441<br><br>JUDGE:<br><br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case.**

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☑ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment**<br>☐ Enforcement of judgment (20) |
| **Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02) | **Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |
| **Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
　a. ☑ Large number of separately represented parties
　b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
　c. ☐ Substantial amount of documentary evidence
　d. ☑ Large number of witnesses
　e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
　f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify)*: Seven
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 28, 2021

Khaldoun A. Baghdadi
(TYPE OR PRINT NAME) ▶ _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

15730

Case: 19-30088    Doc# 14559-4    Filed: 08/02/24    Entered: 08/02/24 13:43:17    Page 170 of 173

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
 Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
 Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
 Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
   Wrongful Death
 Product Liability *(not asbestos or
  toxic/environmental)* (24)
 Medical Malpractice (45)
  Medical Malpractice–
   Physicians & Surgeons
  Other Professional Health Care
   Malpractice
 Other PI/PD/WD (23)
  Premises Liability (e.g., slip
   and fall)
  Intentional Bodily Injury/PD/WD
   (e.g., assault, vandalism)
  Intentional Infliction of
   Emotional Distress
  Negligent Infliction of
   Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
 Business Tort/Unfair Business
  Practice (07)
 Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
 Defamation (e.g., slander, libel)
  (13)
 Fraud (16)
 Intellectual Property (19)
 Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
   *(not medical or legal)*
 Other Non-PI/PD/WD Tort (35)

**Employment**
 Wrongful Termination (36)
 Other Employment (15)

**Contract**
 Breach of Contract/Warranty (06)
  Breach of Rental/Lease
   Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
   Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
   Warranty
  Other Breach of Contract/Warranty
 Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
   Case
 Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
 Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
 Eminent Domain/Inverse
  Condemnation (14)
 Wrongful Eviction (33)
 Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
   domain, landlord/tenant, or
   foreclosure)*

**Unlawful Detainer**
 Commercial (31)
 Residential (32)
 Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
 Asset Forfeiture (05)
 Petition Re: Arbitration Award (11)
 Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
   Case Matter
  Writ–Other Limited Court Case
   Review
 Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
   Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
 Antitrust/Trade Regulation (03)
 Construction Defect (10)
 Claims Involving Mass Tort (40)
 Securities Litigation (28)
 Environmental/Toxic Tort (30)
 Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
 Enforcement of Judgment (20)
  Abstract of Judgment (Out of
   County)
  Confession of Judgment *(non-
   domestic relations)*
  Sister State Judgment
  Administrative Agency Award
   *(not unpaid taxes)*
  Petition/Certification of Entry of
   Judgment on Unpaid Taxes
  Other Enforcement of Judgment
   Case

**Miscellaneous Civil Complaint**
 RICO (27)
 Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
   harassment)*
  Mechanics Lien
  Other Commercial Complaint
   Case *(non-tort/non-complex)*
  Other Civil Complaint
   *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
 Partnership and Corporate
  Governance (21)
 Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
   Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
   Claim
  Other Civil Petition

CEB | Essential
ceb.com | Forms

15730

Case: 19-30088   Doc# 14559-4   Filed: 08/02/24   Entered: 08/02/24 13:43:17   Page
171 of 173

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

# PROOF OF SERVICE
### Trotter v. ACRT Pacific, LLC, et al.
### Case No. CGC-21-589441

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the county where the mailing took place. My business address is 650 California Street, 26th Floor, City and County of San Francisco, CA 94108-2615.

On the date set forth below, I caused to be served true copies of the following document(s) described as:

## NOTICE OF SUBMISSION FOR COORDINATION

to:

| | |
|---|---|
| Aldo E. Ibarra, Esq.<br>Robert M. Blum, Esq.<br>Penny Azizi, Esq.<br>Nixon Peabody, LLP<br>One Embarcadero Center, 32nd Floor<br>San Francisco, CA 94111 | Attorneys for Defendants DAVEY RESOURCE GROUP, INC.; DAVEY TREE EXPERT COMPANY, and DAVEY TREE SURGERY COMPANY<br>Phone: 415-984-8200<br>Fax: 415-984-8300<br>Email: aibarra@nixonpeabody.com;<br>rblum@nixonpeabody.com;<br>pazizi@nixonpeabody.com;<br>gcaspersen@nixonpeabody.com;<br>lcardona@nixonpeabody.com |
| David S. Wilgus, Esq.<br>Burnham Brown<br>1901 Harrison Street, 13th Floor<br>Oakland, CA 94612-3501 | Attorneys for Defendant OSMOSE UTILITIES SERVICES, INC.<br>Phone: 510-835-6803<br>Fax: 510-835-6666<br>Email: dwilgus@burnhambrown.com; |
| Anne Andrews, Esq.<br>John C. Thornton, Esq.<br>Sean T. Higgins, Esq.<br>Robert S. Siko, Esq.<br>Andrews & Thornton<br>4701 Von Karman Ave, Suite 300<br>Newport Beach, California 92660 | Attorneys for Plaintiff JOHN K. TROTTER, JR., Trustee of the PG&E Fire Victim Trust<br>Phone: 949-748-1000<br>Fax: 949-315-3540<br>Email: aandrews@andrewsthornton.com;<br>jct@andrewsthornton.com;<br>shiggins@andrewsthornton.com;<br>rsiko@andrewsthornton.com; |
| Alan A. Greenberg, Esq.<br>Wayne R. Gross, Esq.<br>Evan C. Borges, Esq.<br>Greenberg Gross LLP<br>601 South Figueroa Street, 30th Floor<br>Los Angeles, California 90017 | Attorneys for Plaintiff JOHN K. TROTTER, JR., Trustee of the PG&E Fire Victim Trust<br>Phone: 213-334-7000<br>Fax: 213-334-7001<br>Email: AGreenberg@GGTrialLaw.com;<br>WGross@GGTrialLaw.com;<br>EBorges@GGTrialLaw.com; |

3

NOTICE OF SUBMISSION FOR COORDINATION - CASE NO. CGC-21-589441

| 1 | Frank M. Pitre, Esq. | Attorneys for Plaintiff JOHN K. |
| | Cotchett Pitre & McCarthy | TROTTER, JR., Trustee of the PG&E |
| 2 | San Francisco Airport Office Center | Fire Victim Trust |
| | 840 Malcolm Road, Suite 200 | Phone: 650-697-6000 |
| 3 | Burlingame, CA 94010 | Fax: 650-697-0577 |
| | | Email: fpitre@cpmlegal.com: |
| 4 | | |
| | Steven M. Campora, Esq. | Attorneys for Plaintiff JOHN K. |
| 5 | Dreyer, Babich, Buccola, Wood, Campora | TROTTER, JR., Trustee of the PG&E |
| | 20 Bicentennial Circle | Fire Victim Trust |
| 6 | Sacramento, CA 95826 | Phone: 916-379-3500 |
| | | Fax: 916-379-3599 |
| 7 | | Email: scampora@dbbwc.com: |
| 8 | Dario de Ghetaldi, Esq. | Attorneys for Plaintiff JOHN K. |
| | Corey, Luzaich, de Ghetaldi & | TROTTER, JR., Trustee of the PG&E |
| 9 | Riddle, LLP | Fire Victim Trust |
| | 700 El Camino Real | Phone: 650-871-5666 |
| 10 | PO Box 669 | Fax: 650-871-4144 |
| | Millbrae. CA 94030 | Email: deg@coreylaw.com: |
| 11 | | |

12    **ONLY BY ELECTRONIC TRANSMISSION:** Only by e-mailing the
13  document(s) to the persons at the e-mail address(es) listed based CA Rules of Court,
Emergency Rules Related to COVID-19, Emergency rule 12 "Electronic Service" and
14  on notice provided on or after March 12, 2020 that, during the Coronavirus (COVID-19) pandemic, this office will be working remotely, not able to send physical mail as
usual, and is therefore using only electronic mail.

15    I declare under penalty of perjury under the laws of the State of California
16  that the foregoing is true and correct.

17    Executed on May 17, 2021, at San Francisco, California.

18

19

20  _____
    Lily Connors

21

22

23

24

25

26

27

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

4