Entered on Docket
September 16, 2024
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: September 16, 2024**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |

**ORDER DENYING MOTION OF WILLIAM B. ABRAMS PURSUANT TO
FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004
FOR ENTRY OF AN ORDER AUTHORIZING DISCOVERY AND TRUST
COMPLIANCE WITH COURT ORDERS**

**I. INTRODUCTION**

William B. Abrams filed his *Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Trust Compliance With*

-1-

*Court Orders* ("Motion") (Dkt. 14474) on June 6, 2024. The Fire Victim Trust ("FVT") opposed that Motion with its *Response and Objection to Motion of William B. Abrams Pursuant to Federal Rule of Bankruptcy Procedure 2004 for Entry of an Order Authorizing Discovery and Trust Compliance With Court Orders* (Dkt. 14529). Mr. Abrams filed his *Response of William B. Abrams to the Order Regarding Williams B. Abrams Recent Filing* (Dkt. 14507).

Mr. Abrams has requested more than what is within the reach of Fed R. Bankr. P. 2004 ("Rule 2004") in this case. It is true that Rule 2004 is available to facilitate the gathering of information. Efforts must "relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Rule 2004(b). It is also true that this court has expanded the availability of Rule 2004 to the FVT in its efforts, and has agreed to afford Mr. Abrams a similar but limited right earlier in this case in connection with some activities of the FVT.

The Rule 2004 discovery Mr. Abrams now seeks covers topics that he believes are fair game for more discovery.[1] The court will focus on three principal topics of the request that arguably could support some Rule 2004 discovery were these cases not so far along and the activities of the FVT and the Trust Oversight Committee ("TOC") so near to completion. To the extent that Mr. Abrams seeks other relief, such as compliance

---

[1] See Dkt 14474, PP. 17-20 and the 12 enumerated topics, and his proposed order at PP. 25-27.

-2-

Case: 19-30088    Doc# 14591    Filed: 09/16/24    Entered: 09/16/24 11:14:35    Page 2 of 8

with prior orders (as he frames the request), there is no authority, nor good reason, to grant such further relief.

## II. DISCUSSION

First, Mr. Abrams wants more information about the FVT's engagement of various law firms, or consortiums of law firms, to represent the FVT in various lawsuits that were assigned to it under the confirmed Plan and that have produced hundreds of millions of dollars so far.

Second, Mr. Abrams is concerned about the potential for a substantial settlement of one portion of that litigation that will benefit the FVT in large measure, but also benefit others who are prosecuting similar actions on their own.

Finally, Mr. Abrams seeks discovery about any activities by the FVT or others involving lobbying efforts to improve the recoveries of the survivors of the various PG&E wildfires in 2015, 2017 and 2018 that funded the Plan, then in due course, funded the FVT and its wildfire survivor beneficiaries.

The court addresses those three concerns in turn.

### A. Retention Agreements.

In the Motion at page 6 of 67, Mr. Abrams lists a series of retention agreements involving the FVT and various law firms chosen by John K. Trotter, the initial trustee of the FVT, not long after the Plan became effective and the FVT began functioning largely free of any court supervision. The record is clear that any matters that have been fully resolved that are described in that portion of the Motion have been disclosed. Conversely, matters that are still pending, and thus not concluded, have not been fully disclosed. They will be in the

-3-

future without an order and therefore an examination under Rule 2004 is uncalled for.

The court has, *in camera*, reviewed all of the underlying confidential retention agreements and is satisfied that the retentions were proper and that none of the law firms who are parties to those various retention agreements have at the same time taken positions adverse to the interests of the FVT, Mr. Abrams or any wildfire survivors, or have represented claimants with competing claims. Accordingly, the court will deny that portion of the Motion that seeks further discovery or any other enquiries regarding the retention agreements or related matters.

**B. Mr. Singleton's Role.**

Before this bankruptcy was commenced in January 2019, certain litigation had been initiated in state courts against various defendants including Debtors. Mr. Singleton, or his prior firm, served as counsel to some of those claimants, as did Bill Robins, III, of Robins Cloud LLP. Mr. Robins and Mr. Singleton are members of the TOC. See Dkt. 8195, Exhibit 1.

Exhibit C2 submitted by Mr. Abrams as part of his August 2 submission (Dkt. 14559) is a substitution of attorney filed in JCCP No. 4955, CGC-17-562192 on September 13, 2018 in the Superior Court of California, County of San Francisco. In that substitution, Mr. Robins' firm replaced Mr. Singleton's. The only relevance of that event to this dispute is that both of those counsel were actively involved in fire prosecutions before PG&E filed bankruptcy and therefore before the Plan was confirmed or the FVT created. The significance is that at the

-4-

time of the creation of the TOC, John K. Trotter was well aware of the participation of those individuals in that litigation.

He and the TOC were therefore aware of Singleton Schreiber LLC's representation of other fire survivors in the state court from the outset. If Trustee Trotter had cause for concern he would not have remained silent about Mr. Singleton's appointment to the TOC. There is no need now to go back and revisit that appointment by subjecting Mr. Singleton or Mr. Robins to a Rule 2004 examination about those events. There is no way for the court to know why the trustee did not hire Mr. Singleton's or Mr. Robins' firms, but there is no need to be concerned because that never happened.

Mr. Abrams' concerns were exacerbated by his becoming aware of a letter of April 29, 2024 to "Dear Clients" from Mr. Singleton, whose clients stand to share in the litigation described in that letter.

There is no reason to question the allocation among the FVT or other claimants of a fixed settlement fund, particularly when the overwhelming portion of that settlement is for the FVT. Such an allocation among competing claimants to a fixed sum is not unusual and does not implicate Mr. Singleton and his continued service on the TOC.

There is nothing presented by Mr. Abrams that hints or suggests that there has been any improper conduct or conflict of interest based on Mr. Singleton's or Mr. Robins' representation of pre-bankruptcy wildfire survivors who are not beneficiaries of the FVT and in their performance of their responsibilities as TOC members. The is nothing, therefore, for Mr. Abrams to expend

-5-

his efforts or their efforts, or the court's involvement, or the FVT's expense in pursuing that matter further.

**C.   Lobbying Activities.**

In the Response to the Motion, the FVT has represented that the current Trustee, Cathy Yanni, has not employed any lobbyists to act on behalf of the FVT in 2023 or 2024.  Ms. Yanni did send a letter to a United States Senator pointing out her support for HR 7024, the Tax Relief for American Families and Workers Act of 2024, which would amend the Internal Revenue Service Code to exclude qualified wildfire relief payments from gross income. If Ms. Yanni's efforts help produce a result for Mr. Abrams, the PG&E wildfire victims, or other similarly situated persons, that is a desirable result.  A simple letter such as that is hardly lobbying activity the court needs to examine, or Mr. Abrams needs to do anything but hope for a favorable result. It does not justify allowing Mr. Abrams to expend FVT's resources in his attempt to uncover further lobbying activities.

Mr. Abrams did provide a May 6, 2024 letter from Mr. Singleton's law firm addressed to "Dear Client" and reporting that he (Mr. Singleton) is excited to announce a new coalition called The Fairness of Fire Victims which will advocate a commonsense solution to make PG&E wildfire victims 100% whole. That letter does not purport to be on behalf of the FVT nor would Mr. Singleton have standing or authority to act in that capacity.

Once again, successful lobbying efforts on behalf of PG&E wildfire survivors, and other wildfire survivors, can only be a beneficial result and not something to generate unnecessary and

-6-

costly Rule 2004 discovery directed at a person who is undertaking that at no expense to, or on behalf of, the FVT.

**III. CONCLUSION**

For all these reasons, Mr. Abrams' Motion is DENIED in its entirety.

**\*\*END OF ORDER\*\***

**COURT SERVICE LIST**

William B. Abrams
625 McDonald Ave.
Santa Rosa, CA 95404