1 **WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
2 (richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
3 (jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
4 (matthew.goren@weil.com)
767 Fifth Avenue
5 New York, NY 10153-0119
Tel:   (212) 310-8000
6 Fax:   (212) 310-8007

7 **KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
8 (jkim@kbkllp.com)
David A. Taylor (#247433)
9 (dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
10 (trupp@kbkllp.com)
425 Market St., 26th Floor
11 San Francisco, CA 94105
Tel: (415) 496-6723
12 Fax: (650) 636 9251

**LATHAM & WATKINS LLP**
Joshua G. Hamilton (#199610)
(joshua.hamilton@lw.com)
Michael J. Reiss (#275021)
(michael.reiss@lw.com)
10250 Constellation Blvd., Suite 1100
Los Angeles, California  90067
Tel: 424 653 5500

**LATHAM & WATKINS LLP**
James E. Brandt (*pro hac vice*)
(james.brandt@lw.com)
1271 Avenue of the Americas
New York, NY 10020
Tel: 212 906 1200

13 *Attorneys for the Debtors and Reorganized Debtors*

14                **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
15                    **SAN FRANCISCO DIVISION**

16                                          Bankruptcy Case No. 19-30088 (DM)

17 **In re:**                              Chapter 11
                                           (Lead Case) (Jointly Administered)
18 **PG&E CORPORATION,**
                                           **REORGANIZED DEBTORS' MOTION**
19          **- and -**                    **FOR LEAVE TO APPEAL AND**
                                           **MEMORANDUM OF POINTS AND**
20 **PACIFIC GAS AND ELECTRIC**            **AUTHORITIES**
   **COMPANY,**
21
22                          **Debtors.**

23 ☐ Affects PG&E Corporation
   ☐ Affects Pacific Gas and Electric Company
24 ☑ Affects both Debtors

25 * *All papers shall be filed in the Lead*
   *Case, No. 19-30088 (DM).*
26

27

28

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

Pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004, PG&E Corporation ("PG&E Corp.") and Pacific Gas and Electric Company (the "Utility"), as debtors and reorganized debtors (collectively, the "Reorganized Debtors" or "PG&E") respectfully move the District Court for leave to file an appeal from the bankruptcy court's September 19, 2024 orders overruling in part and sustaining in part PG&E's Thirty-Third and Thirty-Fourth Omnibus Objections to Securities Claims. BDkt. Nos. 14594, 14595 (together, the "September 19 Orders"). Copies of the Bankruptcy Court's memorandum opinion and its September 19 Orders are attached as Exhibits A, B, and C to this motion.

This appeal involves the same securities claims that are at issue in another case pending in this Court: *In re PG&E Corporation Securities Litigation*, 5:18-cv-03509-EJD. Once this appeal is docketed in this Court, PG&E plans to file, pursuant to Civil L.R. 3-12, a Motion to Consider Whether Cases Should Be Related.

Dated: October 24, 2024                    Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**
**LATHAM & WATKINS LLP**

By: /s/ Joshua G. Hamilton
Joshua G. Hamilton

Attorneys for the Debtors and Reorganized Debtors

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.................................2

    A.    PG&E'S Potential Liability ...............................................2

    B.    The District Court Securities Litigation..............................3

    C.    The Bankruptcy Court Securities Litigation .......................4

    D.    The District Court Motion To Dismiss ...............................5

QUESTIONS PRESENTED....................................................................................5

RELIEF SOUGHT...................................................................................................5

ARGUMENT ..........................................................................................................5

I.    INTERLOCUTORY REVIEW IS WARRANTED TO RESOLVE
CONTROLLING LEGAL QUESTIONS ...............................................6

    A.    The Court Should Review Whether The PSLRA Applies To Securities
Claims In Bankruptcy Court .............................................6

    B.    The Court Should Review Whether The Bankruptcy Court Committed
Legal Error In Allowing The 2018 Exchange Offering Claims To Survive.........11

II.    INTERLOCUTORY REVIEW WOULD PROMOTE CONSISTENT
TREATMENT OF IDENTICAL CLAIMS AND PRESERVE JUDICIAL
RESOURCES .....................................................................................13

CONCLUSION......................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................7

*Barnes v. Edison Int'l*,
  No. 18-cv-09690, WL 2325060 (C.D. Cal Apr. 27, 2021), *aff'd Barnes v.*
  *Edison Int'l*, No. 21-55589, WL 822191 (9th Cir. Mar. 18, 2022) ..........................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................7

*Bennett v. Spear*,
  520 U.S. 154 (1997)..............................................................................................7

*Bhapinderpal S. Bhangal v. Hawaiian Electric Industries, Inc. et al.*,
  No. 23-cv-04332-JSC, 2024 WL 4505465 (N.D. Cal. Oct. 15, 2024) ................9, 11

*Brem-Air Disposal v. Cohen*,
  156 F.3d 1002 (9th Cir. 1998) ..............................................................................7

*Caiafa v. Sea Containers Ltd.*,
  331 F. App'x 14 (2d Cir. 2009) ............................................................................11

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*,
  583 U.S. 416 (2018)..............................................................................................7

*Deutsche Bank Nat. Trust Co. v. F.D.I.C.*,
  854 F. Supp. 2d 756 (C.D. Cal. 2011) ....................................................................9

*Hildes v. Arthur Andersen LLP*,
  734 F.3d 854 (9th Cir. 2013) ..........................................................................12, 13

*In re Belli*,
  268 B.R. 851 (B.A.P. 9th Cir. 2001)......................................................................14

*In re Blendheim*,
  No. 09-10283-MLB, 2016 WL 4264058 (Bankr. W.D. Wash. Aug. 11, 2016) ........7

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1981) ................................................................................9

*In re City of San Bernardino*,
  260 F. Supp. 3d 1216 (C.D. Cal. 2013) ..............................................................9, 13

*In re Conseco Life Ins. Cost of Ins. Litig.*,
   No. ML 04-1610 AHM, 2005 WL 5678841 (C.D. Cal. May 31, 2005)...................................9

*In re Dozier Fin., Inc.*,
   No. AP 17-80113-HB, 2018 WL 6985219 (Bankr. D.S.C. Apr. 20, 2018)...........................8

*In re HealthSouth Corp. Sec. Litig.*,
   261 F.R.D. 616 (N.D. Ala. 2009)..................................................................................12

*In re Heath*,
   331 B.R. 424 (B.A.P. 9th Cir. 2005)..............................................................................7

*In re Levi Strauss & Co. Sec. Litig.*,
   527 F.Supp.2d 965 (N.D. Cal. 2007) ............................................................................12

*In re Price*,
   79 B.R. 888 (B.A.P. 9th Cir. 1987)................................................................................5

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007)............................................................................12

*In re Wells*,
   No. BAP AZ-12-1308, 2013 WL 3770810 (B.A.P. 9th Cir. July 10, 2013) .......................7

*Kuenher v. Dickinson & Co.*,
   84 F.3d 316 (9th Cir. 1996) ..........................................................................................9

*Loritz v. Exide Techs.*,
   No. 2:13-cv-2607-SVW, 2014 WL 4058752 (C.D. Cal. Aug. 7, 2014) ...........................11

*Mishkin v. Ageloff*,
   220 B.R. 784 (S.D.N.Y. 1998)......................................................................................8

*Murphy v. I.R.S.*,
   554 B.R. 533 (D. Me. 2014) ..........................................................................................5

*Raleigh v. Illinois Dep't of Revenue*,
   530 U.S. 15 (2000)........................................................................................................7

*Rubke v. Capitol Bancorp. Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ......................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................................1, 6, 7, 8

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ........................................................................................10

# STATUTES

15 U.S.C.
    § 78u-4(b)........................................................................................................4
    § 78u-4(b)(1)-(2)........................................................................................1, 7
    § 78u-4(b)(2)...............................................................................................6

28 U.S.C.
    § 158(a)(3).................................................................................................5
    § 1292(b)..........................................................................................1, 5, 9, 13

# RULES

Civ. L.R. 3-12 ...............................................................................................14

## INTRODUCTION

This case involves federal securities claims that originated in a purported class action brought in this Court under the Private Securities Litigation Reform Act ("PSLRA") against PG&E Corporation and Pacific Gas and Electric Company (together, "PG&E") and former PG&E officers. In January 2019, PG&E filed for Chapter 11 bankruptcy, automatically staying the claims against PG&E in this Court. Various claimants—including the named plaintiff in the district court action—then filed proofs of claim in the bankruptcy court replicating the allegations made in this Court. In September 2024, the bankruptcy court largely denied PG&E's objections to those claims on the bankruptcy-law equivalent of a motion to dismiss, based on its view that the PSLRA's pleading standards do not apply in bankruptcy court. Meanwhile, the individual defendants in the parallel litigation in this Court have filed motions to dismiss the same claims. The defendants in both courts steadfastly maintain that the claims fail on virtually identical grounds.

PG&E now seeks this Court's leave to appeal the bankruptcy court's September 2024 orders denying dismissal of those claims. The Court has broad discretion to authorize the appeal under 28 U.S.C. § 158(a)(3). It should do so for two reasons.

*First*, this case satisfies the criteria set forth in 28 U.S.C. § 1292(b), which authorizes interlocutory appeals in district court cases when (1) a district court order "involves a controlling question of law as to which there is substantial ground for difference of opinion," and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Below, the bankruptcy court committed a pure legal error when it held that the PSLRA's heightened pleading standard does not apply to federal securities claims in bankruptcy court. The court did so even though (1) the PSLRA applies to "*any* private action arising under" the federal securities laws, 15 U.S.C. § 78u-4(b)(1)-(2) (emphasis added), and governs identical claims when brought in district court; (2) Congress intended the PSLRA to establish a "uniform pleading standard" governing all securities claims, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007); and (3) other bankruptcy courts have applied the PSLRA to similar claims. The bankruptcy court's failure to apply the PSLRA tainted its evaluation of virtually every aspect of the claims asserted under the Securities Exchange Act of 1934

("Exchange Act"). Separately, the bankruptcy court also committed legal error with respect to the claims brought under the Securities Act of 1933 ("Securities Act"), incorrectly holding that claimants could validly state a Section 11 claim based on the exchange of notes originally purchased in a private offering for publicly traded notes with the exact same terms. That holding conflicts with the majority of courts that have addressed the issue, thus allowing meritless Section 11 claims to move forward.

*Second*, interlocutory appeal is warranted to ensure that the virtually identical claims that claimants have filed against PG&E and the individual defendants in the bankruptcy court and this Court are adjudicated at the same time, by the same judge, applying the same legal standards—and presumably reaching consistent results. As noted, this Court will soon consider the individual defendants' motions to dismiss Exchange Act and Securities Act claims that are based on the *exact same complaint* underlying the bankruptcy proofs of claim. Granting interlocutory review would allow those motions to be considered together with this appeal of the bankruptcy court's orders on PG&E's equivalent motions. Such review would promote fairness, eliminate the need for multiple, piecemeal appeals on virtually identical issues, and avoid the risk of contradictory results.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. PG&E'S Potential Liability

PG&E issued the equity and debt securities giving rise to the claims at issue. PG&E Corporation is a publicly traded company, and Pacific Gas and Electric Company, its wholly owned subsidiary, is a utility that provides natural gas and electricity to approximately 16 million people in California. BDkt. 14208-4, Ex. 104.[1]

Investing in public utilities like PG&E comes with obvious risks. Because providing gas and electricity is inherently dangerous, the utility can potentially incur liability, including for contributing to wildfires. Third Amended Compl. ("TAC") ¶ 2, *In re PG&E Corporation Securities Litigation* ("District Court Action"), 5:18-cv-03509-EJD (N.D. Cal. May 28, 2019),

---

[1] "BDkt. _" refers to documents filed on the docket of the above-captioned bankruptcy case.

DCt. ECF No. 121.[2]  Utilities are also highly regulated, and the labyrinth of applicable laws and regulations increases the risk of liability.  *Id.* ¶¶ 53-76.  During the period at issue, PG&E repeatedly flagged these risks to shareholders.  *See, e.g.*, BDkt. 14208-1, Exs. 1-6.

These risks ultimately materialized in historically destructive wildfires in October 2017 (the North Bay Fires) and November 2018 (the Camp Fire).  *Id.* ¶¶ 19, 21, 327, 587.  The California Department of Forestry and Fire Protection found that PG&E equipment was responsible for igniting the wildfires.  *Id.* ¶¶ 33, 579-80, 588.  PG&E estimated that its liability for the fires could exceed $30 billion.  *Id.* ¶ 179.

### B.    The District Court Securities Litigation

In June 2018, two securities complaints related to the North Bay Fires were filed in this Court against PG&E and former PG&E officers.  DCt.ECF 1; *Moretti v. PG&E et al.*, 3:18-cv-03545-VC (N.D. Cal. June 14, 2018), ECF 1.  The Court consolidated the complaints and appointed the Public Employees Retirement Association of New Mexico ("PERA") as lead plaintiff.  DCt.ECF 62.

PERA's operative complaint now alleges that between April 29, 2015 and November 15, 2018, PG&E and the individual defendants made 19 materially false or misleading statements and omissions, in violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.  TAC ¶¶ 188-316.  The allegedly false statements addressed PG&E's efforts to mitigate wildfire risk and comply with applicable regulations.  *Id.* ¶¶ 328-390.

In January 2019, PG&E filed for bankruptcy.  The District Court Action was automatically stayed as to PG&E pursuant to Section 362(a) of the Bankruptcy Code, but it proceeded against the individual defendants.

In February 2019, three retirement funds that had purchased debt securities from PG&E ("Securities Act Plaintiffs") filed a new complaint against PG&E officers, directors, and underwriters for alleged violations of Section 11 of the Securities Act.  *See* DCt.ECF 113.  PG&E was not named as a defendant, given the bankruptcy stay.

---

[2] "DCt.ECF _" refers to documents filed in the District Court Action.

In May 2019, all of the above claims before this Court were combined in the TAC, which is the operative complaint. DCt.ECF 121. Going forward, this brief will refer to all of the district court defendants as the "Individual Defendants."

### C. The Bankruptcy Court Securities Litigation

In October 2019, PERA and the Securities Act Plaintiffs filed proofs of claim in PG&E's bankruptcy case. Those claims expressly incorporated the TAC, including the Exchange Act and Securities Act claims.[3] Other parties in the bankruptcy court adopted the TAC as the basis for their claims as well.[4] And in October 2023, the law firm Rolnick Kramer Sadighi LLP ("RKS"), which had filed dozens of proofs of claim alleging similar securities violations by PG&E, based its claims on a "complaint" called the RKS Amendment. *See* BDkt. 14049; 14049-1.[5]

In December 2023, PG&E filed its 33rd and 34th Omnibus Objections to Securities Claims seeking dismissal of the proofs of claim based on the TAC and the RKS Amendment. BDkt. 14200, 14203. Among other things, the Omnibus Objections argued that (1) proofs of claim alleging Exchange Act violations should be dismissed for failure to satisfy the PSLRA's heightened pleading standard, 15 U.S.C. § 78u-4(b); and (2) proofs of claim alleging Securities Act violations should be dismissed based on the statute of limitations, failure to state a claim under Rule 9(b), or because the debt notes were acquired in transactions that do not give rise to Section 11 liability.

In September 2024, the bankruptcy court sustained PG&E's objections in part and overruled them in part. BDkt. 14593 ("Op."), 14594, 14495; Exs. A-C. In doing so, the court held that the PSLRA does not apply to Exchange Act claims brought in bankruptcy court. It also rejected PG&E's arguments on the Securities Act claims. Op.52.

---

[3] The proofs of claim of PERA and the Securities Act Plaintiffs can be accessed at https://restructuring.ra.kroll.com/pge/Home-ClaimInfo (search for claims "69105," "71345," "61556," "68009," "72620," 69202," and "71310"), and are attached as Exhibit D.

[4] The claim numbers for these claimants are listed in BDkt. 14200-4. An example is attached as Exhibit E (*see* Annex A, Part III).

[5] The claim numbers for RKS claimants are listed in BDkt. 14061. That document explains the process by which RKS claimants adopted the RKS amendment.

**D.     The District Court Motion To Dismiss**

On October 24, 2024, the Individual Defendants filed their motions to dismiss the TAC in this Court. DCt.ECF 284, 286. Many of the arguments advanced in the motions replicate those raised by PG&E in its objections in the bankruptcy court. *See infra* at 13-14.

### QUESTIONS PRESENTED

The overarching question presented by this appeal is whether claimants have validly stated claims that PG&E is liable for violating the Exchange Act and the Securities Act. That question implicates multiple controlling questions of law, including (1) whether the PSLRA applies to Exchange Act claims litigated in bankruptcy court, and (2) whether Section 11 of the Securities Act can be violated when unregistered securities originally purchased in a private offering are later exchanged for registered, publicly tradable securities with materially identical terms.

### RELIEF SOUGHT

PG&E seeks leave to appeal the bankruptcy court's September 19 Orders addressing PG&E's 33rd and 34th Omnibus Objections.

### ARGUMENT

District courts have broad discretion to authorize appeals of interlocutory bankruptcy court orders. 28 U.S.C. § 158(a)(3). In deciding whether to grant review, district courts draw guidance from the test set forth in 28 U.S.C. § 1292(b), which governs certification of non-bankruptcy interlocutory appeals. *See, e.g.*, *In re Price*, 79 B.R. 888, 889 (B.A.P. 9th Cir. 1987). Under Section 1292(b), interlocutory review is warranted if (1) "the order involves a controlling question of law as to which there is substantial ground for difference of opinion," and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). But Section 1292(b)'s test does not directly govern bankruptcy appeals, so "there is a greater measure of flexibility [to grant review] under § 158(a)(3)." *Murphy v. I.R.S.*, 554 B.R. 533, 534 (D. Me. 2014).

Interlocutory review is warranted here for two reasons. *First*, the bankruptcy court's orders involve controlling questions of law regarding (1) the application of the PSLRA to securities claims brought in bankruptcy court, and (2) the application of Section 11 of the Securities Act to

a plaintiff's exchange of restricted, unregistered notes originally acquired in a private offering but then swapped for publicly tradable, registered notes with identical terms. On each question, the bankruptcy court adopted an outlier position that conflicts with decisions of other district courts, and common sense. If the bankruptcy court had correctly interpreted the law, it likely would have dismissed several of the pending claims. *Second*, interlocutory review would promote judicial efficiency by allowing this Court to address the securities claims against PG&E together with the nearly identical claims pending in the District Court Action against the Individual Defendants.

## I. INTERLOCUTORY REVIEW IS WARRANTED TO RESOLVE CONTROLLING LEGAL QUESTIONS

### A. The Court Should Review Whether The PSLRA Applies To Securities Claims In Bankruptcy Court

Interlocutory review is warranted to determine whether the PSLRA applies to claims in bankruptcy. This issue plainly satisfies Section 1292(b) because (1) the bankruptcy court's holding that the PSLRA does *not* apply is erroneous (and certainly subject to reasonable disagreement), and (2) correcting that error should result in the dismissal of multiple claims.

1. Below, the bankruptcy court assessed the validity of claimants' allegations under the Rule 12(b)(6) test, instead of under the PSLRA's heightened pleading standard. That was error. Congress enacted the PSLRA to "set[] a uniform pleading standard" for securities actions. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007). Recognizing that securities actions could be "employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law," Congress imposed "[e]xacting pleading requirements," requiring plaintiffs to state their claims "with particularity." *Id.* at 313. Most relevant here, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). To determine whether the allegations meet this threshold, the court "must engage in a comparative evaluation" of the inferences that can be "rationally drawn from the facts alleged"; a claim can survive only if the inference of scienter is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

These requirements are significantly more demanding than Rule 12(b)(6), which merely requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). By contrast, the PSLRA requires that any "inference of scienter" be "*more* than merely plausible or reasonable." *Tellabs*, 551 U.S. at 314 (emphasis added).

The bankruptcy court's refusal to apply the PSLRA's heightened standards was erroneous. Bankruptcy courts generally treat objections to proofs of claims like motions to dismiss. *See, e.g.*, *In re Heath*, 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005) (noting that proofs of claim are "commonly" "analogized to complaints" and that "objections are like motions to dismiss"); *In re Wells*, No. BAP AZ-12-1308, 2013 WL 3770810, at *2 n.2 (B.A.P. 9th Cir. July 10, 2013) (same). Treating a debtor's objection to an asserted claim like a motion to dismiss makes sense because they share the same goal: "testing the sufficiency" of the claims. *In re Blendheim*, No. 09-10283-MLB, 2016 WL 4264058, at *10 (Bankr. W.D. Wash. Aug. 11, 2016). Indeed, the bankruptcy court itself recognized that PG&E "intend[ed] to make *sufficiency objections akin to a motion to dismiss* with respect to all claims set forth in the unresolved securities proofs of claims." BDkt. 13934-1 at 9 (emphasis added).

Congress itself specified that the PSLRA governs "*any* private action arising under" the securities laws. 15 U.S.C. § 78u-4(b)(1)-(2) (emphasis added). And as the Supreme Court and Ninth Circuit have made clear, "'any' means 'any.'" *Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1004 (9th Cir. 1998) (citing *Bennett v. Spear*, 520 U.S. 154, 166 (1997)). Indeed, the Supreme Court has emphasized that the PSLRA's heightened pleading standards apply even in state court. *See Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 432-34 (2018). There is no good reason to apply those heightened pleading standards in every context except bankruptcy. Moreover, the Supreme Court has made clear that absent a contrary congressional directive, substantive rules governing the adjudication of a claim in district court carry over to bankruptcy court. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 26 (2000) (applying this principle to hold

that "the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it").

Here, there is no dispute that if the bankruptcy court Exchange Act claims were instead proceeding in district court, the PSLRA would govern. *See* BDkt. 14353 at 18-19 (RKS conceding that the PSLRA would apply to a "civil suit" alleging the same claims). It makes no sense to apply a different standard in bankruptcy court. As explained above, Congress established a heightened pleading standard to prevent "abusive litigation" and protect law-abiding companies from costly lawsuits. *Tellabs*, 551 U.S. at 313.

Notably, other bankruptcy courts have correctly applied the PSLRA to securities claims. For example, a bankruptcy court in South Carolina recently "appl[ied] the relevant standards under Fed. R. Civ. P. 8(a), 9(b), 12(b)(6), *and the PSLRA*" to determine whether a party had stated securities claims. *In re Dozier Fin., Inc.*, No. AP 17-80113-HB, 2018 WL 6985219, at *10 (Bankr. D.S.C. Apr. 20, 2018) (emphasis added). Similarly, a bankruptcy court in New York analyzed the application of the PSLRA's discovery stay and its exceptions to a securities claim in bankruptcy. *Mishkin v. Ageloff*, 220 B.R. 784, 789-90, 792-95 (S.D.N.Y. 1998).

Below, the bankruptcy court gave no valid reason for refusing to apply the PSLRA. It emphasized that the PSLRA is "unfamiliar territory for bankruptcy courts," Op.8, but that is not grounds for not applying it. The court also briefly suggested that the PSLRA applies only to class plaintiffs, *id.* at 7-8, but nothing in the PSLRA limits its heightened pleading standard to class actions, and motions to dismiss under the PSLRA are virtually always adjudicated before motions for class certification. Although the bankruptcy court also suggested that applying the PSLRA was somehow inconsistent with its chosen procedures, Op.4-8, 11, it did not explain what it meant—or why those procedures could supersede the PSLRA. Finally, while the court stated there was "no focus by the court or the parties as to whether the PSLRA applied" earlier in the case, Op.6-7, PG&E had no obligation to raise the PSLRA before filing its Omnibus Objections to the claims.

For all these reasons, the bankruptcy court's holding that the PSLRA does not apply in bankruptcy court was legal error. At minimum, there are "substantial ground[s] for difference[s]

of opinion" on the issue, 28 U.S.C. § 1292(b), especially given the "conflicting case law" recognizing that the PSLRA *does* apply in this context. *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 854 F. Supp. 2d 756, 769 (C.D. Cal. 2011).

2. The bankruptcy court's failure to apply the PSLRA also qualifies as "controlling" under Section 1292(b), insofar as its immediate resolution "could materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (defining issue as "controlling" where its "resolution … could materially affect the outcome of litigation[.]"). An appeal advances the ultimate termination of the litigation where it "may appreciably shorten the time, effort, or expense of conducting a lawsuit," *id.* at 1027, preventing "needless expense and delay," *Kuenher v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996). Courts frequently find this factor satisfied where a different outcome on appeal would lead to dismissal of some or all claims. *See, e.g., In re City of San Bernardino*, 260 F. Supp. 3d 1216, 1226 (C.D. Cal. 2013); *In re Conseco Life Ins. Cost of Ins. Litig.*, No. ML 04-1610 AHM, 2005 WL 5678841, at *1 (C.D. Cal. May 31, 2005) (no need for dismissal of all claims for issue to be considered "controlling").

The bankruptcy court's refusal to apply the PSLRA tainted its entire analysis of claimants' Exchange Act claims—and especially its evaluation of the scienter allegations. Claimants allege 19 false statements made by at least six different PG&E-affiliated speakers. TAC ¶¶ 194-316. Under the PSLRA, the bankruptcy court should have evaluated claimants' scienter allegations by analyzing (1) whether the speaker of each statement would be motivated to mislead the public; (2) whether the allegations include particularized facts indicating the speakers knew that each statement was false; (3) whether each statement was so fundamental to PG&E's business that a court could infer the corporate entity had scienter; and (4) whether the inference of scienter for each statement is at least compelling as any opposing inference one could draw from the allegations. *See Bhapinderpal S. Bhangal v. Hawaiian Electric Industries, Inc. et al*., No. 23-cv-04332-JSC, 2024 WL 4505465, at *14-16 (N.D. Cal. Oct. 15, 2024).

Instead—because the bankruptcy court refused to apply the PSLRA—it rejected PG&E's scienter arguments in three cursory paragraphs. *See* Op.33. That analysis did not even try to

address the scienter of any particular speaker with respect to any particular statement, focusing instead on generalized corporate knowledge. *See* TAC ¶¶ 194-316; *cf.* Op.32 (declining PG&E's request to analyze falsity on a "statement-by-statement" basis "because it [did] not consider the PSLRA to be controlling"). But the PSLRA allows a court to impute such knowledge to specific speakers only in "rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Webb v. Solarcity Corp.*, 884 F.3d 844, 854 (9th Cir. 2018). The bankruptcy court never addressed that test, let alone applied it. *See* TAC ¶¶ 397-403; BDkt. 14200 at 56-58; BDkt. 14453 at 21-23.

Similarly, the bankruptcy court's approach to scienter failed to consider the competing inferences raised by PG&E and assess whether they were more compelling than claimants' proposed inferences. For example, the bankruptcy court found scienter for a 2015 statement that PG&E was nearing completion of a project to disable reclosers because a non-disabled recloser was an ignition point for one of the 2017 fires. Op.33. But that does not show knowledge at the time of the statement. While one possible inference from the fire is that PG&E misrepresented its plan to disable reclosers, a more plausible inference is that PG&E intended to disable them but either missed one or did not complete the project before the fire. *See* BDkt. 14200 at 40-41; BDkt. 14453 at 13. Under the PSLRA's heightened standard, claimants' scienter allegations as to the 2015 statement would not have sufficed. But the bankruptcy court green-lighted the claim under the more lax Rule 12(b)(6) test.

Finally, the bankruptcy court's errors were not limited to scienter. Because the court declined to engage in a statement-by-statement analysis, it let obvious puffery survive. *See* Op.21-23. As just one example, the court allowed claims arising from obviously generic, unquantifiable PG&E statements like "[w]e're stepping up our vegetation management activities to mitigate wildfire risk and improve access for firefighters" to survive. TAC ¶ 194. Similarly, it refused to dismiss claims based on PG&E's statement that "We've continued to demonstrate leadership and commitment on safety. We're delivering the most reliable service in our company's history." *Id.* ¶ 233.

As these examples show, the bankruptcy court's PSLRA error was the dispositive factor allowing meritless Exchange Act claims to survive. Indeed, the bankruptcy court's ruling sharply contrasts with district courts that have relied on the PSLRA to dismiss federal securities claims against utilities based on similar allegations of misleading investors with respect to potential wildfire liability. *See Barnes v. Edison Int'l*, No. 18-cv-09690, WL 2325060, at *10 (C.D. Cal Apr. 27, 2021), *aff'd Barnes v. Edison Int'l*, No. 21-55589, WL 822191 (9th Cir. Mar. 18, 2022); *Hawaiian Electric Industries*, 2024 WL 4505465, at *1. Correcting the bankruptcy court's error here should result in dismissal of many of the Exchange Act claims against PG&E, thereby materially advancing the termination of this case. The PSLRA issue plainly satisfies Section 1292(b)'s test for interlocutory review.[6]

### B. The Court Should Review Whether The Bankruptcy Court Committed Legal Error In Allowing The 2018 Exchange Offering Claims To Survive

A subset of the Securities Act claims allege that PG&E violated Section 11 by making misstatements in the offering documents for PG&E's 2018 exchange of registered for unregistered notes. TAC ¶ 631; Op.51. The bankruptcy court erred by rejecting PG&E's argument that this theory fails as a matter of law. Op.52.

The 2018 exchange offering involved what is called an Exxon Capital exchange. In such an exchange, an investor has previously purchased—in a private offering—unregistered securities that cannot be sold on the open market; the investor later exchanges those unregistered securities for registered securities that can be publicly traded but are otherwise identical. *Loritz v. Exide Techs.*, No. 2:13-cv-2607-SVW, 2014 WL 4058752, *14 (C.D. Cal. Aug. 7, 2014). Here, claimants allege that in May 2018, they exchanged unregistered PG&E notes that they had

---

[6] The bankruptcy court committed a similar error as to the pleading standards when it declined to apply Rule 9(b) to the Securities Act claims on the grounds that "a Section 11 claim is not a fraud claim." Op.45 (citation omitted). Here, claimants' Section 11 claims *do* "sound in fraud," because they "allege[] a unified course of fraudulent conduct" with the Section 10(b) claims. *Rubke v. Capitol Bancorp. Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (applying Rule 9(b) to Section 11 claim); *see also, e.g.*, *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009). This legal question is controlling as to the Securities Act claims—and resolving it would materially advance termination of the litigation—for many of the reasons discussed above as to the PSLRA and the Exchange Act claims.

previously obtained in a private offering for registered PG&E notes with identical terms. *See* TAC, Attachs. B & C; TAC ¶¶ 506-07; BDkt. 14208-1 at 1757. Claimants allege that PG&E violated Section 11 of the Securities Act by making misstatements in the offering documents for that exchange offering. TAC ¶ 631.

Claimants' theory is legally defective: The "majority of courts have held that [investors] who acquire their securities in an Exxon Capital exchange cannot bring § 11 claims" under the Securities Act. *Id.*; *see, e.g.*, *In re Levi Strauss & Co. Sec. Litig.*, 527 F.Supp.2d 965, 978 (N.D. Cal. 2007); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 637 (S.D.N.Y. 2007); *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 647 (N.D. Ala. 2009). That is because such investors cannot prove that misstatements made at the time of the exchange offering were material. After all, it is always rational to exchange "unregistered [securities] for [securities] that are identical in all respects except that they are freely tradeable." *In re Levi Strauss*, 527 F. Supp. 2d at 976. There is no downside—and only upside—associated with exchanging non-tradeable securities for otherwise-identical tradeable securities. Accordingly, any "alleged misstatements" in a registration statement governing the exchange offering "would not have been material" to the decision to exchange the unregistered securities for the new registered ones. *Id.* at 978. Even if the registration statement contained misstatements and even if investors had learned the truth about them, "they would have had no reason to avoid making their holdings tradeable; on the contrary, they would have had every reason to rid themselves of the [unregistered securities] as soon as possible." *In re Refco*, 503 F. Supp. 2d at 636.[7]

If the bankruptcy court had applied this settled law, it would have dismissed claimants' Section 11 claims based on the 2018 exchange offering. Instead, it rejected the majority view and allowed those claims to go forward. It did so based on the Ninth Circuit's statement in *Hildes v. Arthur Andersen LLP* that a plaintiff has standing to bring a Section 11 claim if "'misrepresentations contained in the Registration Statement played a role in the causal chain that

---

[7] Investors in these circumstances cannot bring Section 11 claims based on their *initial* acquisition of the unregistered securities in a private offering, because "Section 11 liability . . . is not available for [private] offerings." *In re Levi Strauss*, 527 F. Supp. 2d at 975.

resulted in the exchange of stock.'"  Op.52 (quoting 734 F.3d 854, 862 (9th Cir. 2013)).  But the court ignored that *Hildes*—unlike this case—did not involve an Exxon Capital exchange in which alleged misrepresentations *could not have played a causal role* because any rational person would have traded unregistered securities for identical, registered ones that can be publicly traded. Indeed, *Hildes* itself distinguished Exxon Capital exchanges on precisely that basis, explaining that in such exchanges, "the unregistered bondholders would have incentive to exchange their bonds for registered ones *regardless of [the] contents of [the] registration statement*."  734 F.3d at 862 (emphasis added).  *Hildes* is thus consistent with the majority rule that there is no Section 11 liability for Exxon Capital exchanges.

The bankruptcy court's Section 11 holding readily satisfies Section 1292(b)'s test for interlocutory review.  That holding is wrong—and, at a minimum, is subject to reasonable disagreement on the grounds set forth in cases like *In re Levi Strauss* and *In re Refco*.  It is also "controlling":  Overturning it will require dismissal of claimants' Section 11 claims based on the 2018 exchange offering and will therefore "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *In re City of San Bernardino*, 260 F. Supp. 3d at 1226. Interlocutory review is warranted on this issue as well.

## II.    INTERLOCUTORY REVIEW WOULD PROMOTE CONSISTENT TREATMENT OF IDENTICAL CLAIMS AND PRESERVE JUDICIAL RESOURCES

As explained above, the motions at issue are virtually identical to the Individual Defendants' motions to dismiss now pending before the Court in the District Court Action, with the TAC at issue in both forums.  Both cases turn on virtually identical Exchange Act and Securities Act claims raised against PG&E and its senior leaders.  *See supra* at 3-5; Ex. D at 9 ("The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference."); Ex. D at 34 (same); BDkt. 14049-1 (RKS Amendment making similar allegations to TAC).  Both are now at the same threshold motion-to-dismiss stage of litigation. *See* DCt.ECF 282 (setting briefing schedule, which will be complete in January 2025).   And the arguments the Individual Defendants have made in their motions to dismiss almost entirely overlap with arguments PG&E itself made to the bankruptcy court (and hopes to make here on appeal).

1  *Compare* Dct.ECF 286 at 7-24 (arguing claimants fail to allege a false or misleading statement or

2  omission), *and* Dct.ECF 284 at 11-12, 15-19, 21-23, 25-30 (same), *with* B.Dkt 14200 at 28-53, 80-

3  85 (same); *compare* Dct.ECF 284 at 12-15, 19-24, 29-31 (arguing claimants fail to allege scienter),

4  *with* B.Dkt 14200 at 54-61 (same); *compare* Dct.ECF 286 at 28-33 (arguing various Securities Act

5  claims are time-barred), *with* B.Dkt 14200 at 77-80 (same); *compare* Dct.ECF 286 at 33-34

6  (arguing Section 11 doesn't apply to 2018 exchange offering), *with* B.Dkt 14200 at 90-91 (same).

7     In these unusual circumstances, it makes perfect sense for this Court to adjudicate the core

8  threshold issues in the two cases in tandem.  *See* Civ. L.R. 3-12 (providing for process to refer case

9  to judge presiding over related case).  Doing so will ensure that the cases are treated fairly and

10  equitably, under the same legal standards, and will eliminate the potential for inconsistent rulings

11  on key threshold issues.  It will also promote judicial economy and conserve resources.  After all,

12  this Court will necessarily have to resolve these issues in the context of the Individual Defendants'

13  motions to dismiss.  If the Court agrees with the Individual Defendants that certain claims should

14  be dismissed, that holding should carry over to the identical bankruptcy court claims against

15  PG&E.  In such circumstances, it would be a waste of time and effort for the bankruptcy court to

16  adjudicate claims that should not have survived the pleading stage.

17     Section 158(a)(3) is a flexible tool granting this Court broad discretion to authorize

18  interlocutory review when necessary to do justice and "avoid wasteful litigation and expense."  *In*

19  *re Belli*, 268 B.R. 851, 858 (B.A.P. 9th Cir. 2001).  These considerations strongly support PG&E's

20  proposed appeal.

21               **CONCLUSION**

22     This Court should grant PG&E's motion for leave to appeal.

23

24

25

26

27

28

Dated:  October 24, 2024

Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**
**LATHAM & WATKINS LLP**

By: _/s/ Joshua G. Hamilton_

Joshua G. Hamilton

Attorneys for the Debtors and Reorganized Debtors