# Exhibit D

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Lowenstein Sandler LLP
Attn: Michael S. Etkin and Andrew Behlmann
One Lowenstein Drive
Roseland, NJ 07068

Contact phone 973-597-2500
Contact email 973-597-2400

Where should payments to the creditor be sent? (if different)

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 2 of 166

| **Part 2:** | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ <u>Unliquidated (see addendum)</u>. **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 3 of 166

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). — $ _____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). — $ _____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). — $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). — $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). — $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies. — $ _____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Andrew David Behlmann |
| | First name · Middle name · Last name |
| Title | Counsel |
| Company | Lowenstein Sandler LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | One Lowenstein Drive |
| | Number · Street |
| | Roseland · NJ · 07068 |
| | City · State · ZIP Code |
| Contact phone | 973-597-2332 |
| Email | abehlmann@lowenstein.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do **not** have supporting documentation.

🖇 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 5 of 166

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                    12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Page 5 of 165

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 6 of 166

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

**Do not file these instructions with your form**

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 7 of 166

| | |
|---|---|
| 1 | **LABATON SUCHAROW LLP**  **LOWENSTEIN SANDLER LLP** |

1  **LABATON SUCHAROW LLP**               **LOWENSTEIN SANDLER LLP**
   Thomas A. Dubbs                         Michael S. Etkin (*pro hac vice*)
2  Louis Gottlieb                          Andrew Behlmann (*pro hac vice*)
   Carol C. Villegas                       One Lowenstein Drive
3  Jeffrey A. Dubbin (SBN 287199)          Roseland, New Jersey 07068
   140 Broadway
4  New York, New York 10005

5  *Lead Counsel to PERA*                  *Bankruptcy Counsel to PERA*

6  **MICHELSON LAW GROUP**
   Randy Michelson (SBN 114095)
7  220 Montgomery Street, Suite 2100       *Additional counsel listed on Exhibit C*
   San Francisco, California 94104
8
   *Bankruptcy Counsel to PERA*
9
                    **UNITED STATES BANKRUPTCY COURT**
10                   **NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN FRANCISCO DIVISION**
11

12  In re:

13  PG&E CORPORATION
                                           Case No. 19-30088 (DM) (Lead Case)
14          - and –
                                           Chapter 11
15  PACIFIC GAS AND ELECTRIC
    COMPANY,                               (Jointly Administered)
16
                        Debtors.
17

18  ☒ Affects Both Debtors                 **ADDENDUM TO PROOF OF CLAIM**
    ☐ Affects PG&E Corporation             **OF PUBLIC EMPLOYEES RETIREMENT**
19  ☐ Affects Pacific Gas and Electric Company  **ASSOCIATION OF NEW MEXICO**

20

21

22

23

24

25

26

27

28

Public Employees Retirement Association of New Mexico ("**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.      The Securities Litigation**

1.      On May 28, 2019, Lead Plaintiff filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[1] In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**") against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**") and (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the

---

[1]      The Debtors are named as Exchange Act Defendants in the TAC, subject to an express acknowledgment that the Securities Litigation cannot proceed against them in the District Court at this time due to the automatic stay.

Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2.    A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**.  The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.    The Claim**

3.    As of the Petition Date, the Debtors were, and currently remain, liable to PERA in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**").  The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim.   A schedule of PERA's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4.    PERA reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5.    The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available.  In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6.    No payments have been made on account of the Claim.

7.    The Claim is not subject to any setoff or counterclaim.

8.    No security interest is held for the Claim.

9.    The Claim is asserted in addition to, and not in lieu of, any and all other claims that PERA may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.    Reservation of Rights**

10.    PERA reserves all rights (including but not limited to arguments, counterarguments,

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page
10 of 166

and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11. This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by PERA, whether in its individual capacity or as lead plaintiff in the Securities Litigation, shall not be deemed to:

- constitute a submission by PERA to the jurisdiction of the Bankruptcy Court;

- constitute consent by PERA to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;

- waive any substantive or procedural rights of PERA, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which PERA is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights,



1  claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments

2  are expressly reserved, nor shall this proof of claim be deemed to constitute

3  consent to electronic service of any pleading or papers for which mailed or

4  personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT**[2]

---
[2] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

1  **LABATON SUCHAROW LLP**
   THOMAS A. DUBBS (*pro hac vice*)
2  LOUIS GOTTLIEB (*pro hac vice*)
   JEFFREY A. DUBBIN (#287199)
3  ARAM BOGHOSIAN (*pro hac vice*)
   140 Broadway
4  New York, New York 10005
   Telephone: (212) 907-0700
5  Facsimile: (212) 818-0477
   Email: tdubbs@labaton.com
6  lgottlieb@labaton.com
   jdubbin@labaton.com
7  aboghosian@labaton.com

8  *Counsel for Lead Plaintiff the Public Employees Retirement*
   *Association of New Mexico and Lead Counsel for the Class*
9
   **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
10 JAMES M. WAGSTAFFE (#95535)
   FRANK BUSCH (#258288)
11 100 Pine Street, Suite 725
   San Francisco, California 94111
12 Telephone: (415) 357-8900
   Facsimile: (415) 371-0500
13 Email: wagstaffe@wvbrlaw.com
   busch@wvbrlaw.com
14
   *Liaison Counsel for the Class*
15

16              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
17                 **SAN FRANCISCO DIVISION**

18

19                                    Civil Action No. 3:18-cv-03509-EJD

20 IN RE PG&E CORPORATION             THIRD AMENDED CONSOLIDATED CLASS
   SECURITIES LITIGATION              ACTION COMPLAINT FOR VIOLATION OF
21                                    THE FEDERAL SECURITIES LAWS

22                                    JURY TRIAL DEMANDED

23

24

25

26

27

28

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
14 of 166

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    NATURE OF THE CASE ............................................................................... 4

III.   JURISDICTION AND VENUE ....................................................................... 5

IV.    OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ............................... 5

    A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
       Wildfires in 2017 and Investors' Consequent Losses......................................6

    B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
       Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
       Losses...............................................................................................................8

       1.  After the North Bay Fires, PG&E Continued to Make False and
           Misleading Statements and Omissions ................................................ 8

       2.  PG&E's Continuing Noncompliance With Safety Regulations Caused the
           Camp Fire.......................................................................................... 10

    C. Exchange Act Claims Being Asserted .........................................................12

V.     THE EXCHANGE ACT PARTIES................................................................. 13

VI.    SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

    A. PG&E Operates Within a Robust Legal Regime ........................................15

       1.  California Law Required PG&E to Maintain a Safe Distance Between Its
           Electrical Equipment and Nearby Vegetation ................................... 15

       2.  California Law Required PG&E to Safely Maintain Its Electrical
           Equipment and Infrastructure ........................................................... 16

       3.  PG&E Is Regulated by the CPUC ..................................................... 17

           (a)   CPUC's General Orders 95 and 165 Impose Strict Safety
               Regulations on PG&E................................................................ 17

           (b)   CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
               Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol ................... 19

           (c)   PG&E Must Follow CPUC's Regulations Under Penalty of Law ............. 20

       4.  Cal Fire Is the Duly Authorized Investigative Arm of the State of
           California for Wildfires...................................................................... 20

       5.  Under California's Inverse Condemnation Law, PG&E Would Not Bear
           the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
           and Prudently ..................................................................................... 21

       6.  Federal Law Also Requires PG&E to Follow Minimum Safety Standards.......... 21

Third Amended Consolidated Class Action Complaint
Civil Action No. 3:18-cv-03509-EJD

                    i

Page 14 of 165

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
15 of 166

B.  PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point............22

C.  PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period ...................................................................................24

D.  After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal...........................................................................................25

E.  PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ...........................25

2.  PG&E Concealed Its Use of Reclosers from Investors During the Class Period ...............................................................................................27

F.  PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period.......................................28

1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ...............28

2.  PG&E Unsafely Flouts Safety Regulations ..........................................................28

3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ...........................................................................................30

4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ......................................................................................................30

(a)  PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period............................30

(b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards...............32

G.  Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires.........................................................33

2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire.................................................................34

(a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations...........................................................................................34

(b)  The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations..............................................................................37

H.  PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety
Violations ........................................................................................................38

    1.   PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety
Violations Caused the Deadly Butte Fire ............................................... 38

    2.   PG&E Internally Acknowledged, Extensively Documented, and Tolerated
for Years the Safety Violations that Caused the Camp Fire ................... 39

  I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to
Follow It Was a Proximate Cause of the Camp Fire ....................................43

    1.   PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor
of Shutting Off the Power ...................................................................... 45

      (a)   Criterion 1: the National Fire Danger Rating System Rated Jarbo
Gap as Having an "Extreme" Fire Danger Threat Level ............................ 45

      (b)   Criterion 2: the National Weather Service Declared a "Red Flag
Warning" for the Area ........................................................................ 47

      (c)   Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel)
Weighed in Favor of a Shutoff .......................................................... 47

      (d)   Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor
of a Shutoff ...................................................................................... 49

    2.   All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

      (a)   Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity
Levels................................................................................................ 52

      (b)   Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed......... 53

      (c)   Criterion 5: Site-Specific Conditions Further Favored Shutoff.................. 54

    3.   PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed
in Favor of Shutting Off the Power ........................................................ 54

  J.  PG&E's Bankruptcy and Other Post-Class-Period Developments............................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS
UNDER THE EXCHANGE ACT .................................................................................. 59

  A. Overview of Defendants' Fraudulent Course of Conduct ..........................................59

  B. Defendants Made Materially False and Misleading Statements and Omissions
Regarding Its Vegetation Management Activities and Compliance with
Wildfire Safety Regulations Before the North Bay Fires ...........................................61

    1.   April 29, 2015 – Misstatement No. 1....................................................... 61

    2.   October 16, 2015 – Misstatement No. 2 .................................................. 62

    3.   November 18, 2015 – Misstatement No. 3 ............................................... 64

4. October 6, 2016 – Misstatement No. 4 ................................................................. 65

5. August 9, 2017 – Misstatement No. 5 .................................................................. 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ........................................................ 69

1. May 23, 2016 – Misstatement No. 6 ................................................................... 70

2. November 4, 2016 – Misstatement No. 7 ........................................................... 71

3. May 31, 2017 – Misstatement No. 8 ................................................................... 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge .............................. 74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ......................................................................... 75

1. October 31, 2017 – Misstatement No. 9 ............................................................. 75

2. November 2, 2017 – Misstatement No. 10 ......................................................... 76

3. November 2, 2017 – Misstatement No. 11 ......................................................... 79

4. November 5, 2017 – Misstatement No. 12 ......................................................... 81

5. May 25, 2018 – Misstatement No. 13 ................................................................. 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ........................................................................ 85

1. June 8, 2018 – Misstatement No. 14 ................................................................... 85

2. June 8, 2018 – Misstatement No. 15 ................................................................... 87

3. September 27, 2018 – Misstatement No. 16 ....................................................... 88

4. October 9, 2018 – Misstatement No. 17 ............................................................. 90

5. October 9, 2018 – Misstatement No. 18 ............................................................. 91

6. November 8, 2018 – Misstatement No. 19 ......................................................... 92

VIII. MATERIALITY UNDER THE EXCHANGE ACT ................................................... 93

IX. LOSS CAUSATION UNDER THE EXCHANGE ACT ............................................ 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ...................................................................................................... 94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires ........................ 95

C.   PG&E's Safety Violations Caused the Devastating Camp Fire .................................95

D.   As the Market Learned About the Effects and Extent of PG&E's Inadequate
     Safety Practices, the Price of PG&E's Securities Fell Dramatically .........................96

     1.   October 12, 2017 – Corrective Disclosure and/or Materialization of
          Concealed Risk ................................................................................................ 96

          (a)   The Market Began to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires ........................................................ 96

          (b)   Market Commentators Confirmed the Cause of PG&E's Share Price
                Decline on October 12, 2017 ........................................................................ 97

     2.   October 13-16, 2017 – Corrective Disclosure and/or Materialization of
          Concealed Risk ................................................................................................ 99

          (a)   The Market Continued to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires ........................................................ 99

          (b)   Market Commentators Confirmed the Cause of PG&E's Share Price
                Decline on October 13, 2017 ........................................................................ 99

     3.   December 20, 2017 – Corrective Disclosure and/or Materialization of
          Concealed Risk ............................................................................................... 100

          (a)   The Market Continued to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires ...................................................... 100

          (b)   Market Commentators Confirmed the Proximate Cause of PG&E's
                Share Price Decline on December 20, 2017 ............................................... 101

     4.   May 25, 2018 – Corrective Disclosure and/or Materialization of
          Concealed Risk ............................................................................................... 102

          (a)   The Market Continued to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires ...................................................... 102

          (b)   Market Commentators Confirmed that the News Regarding Safety
                Violations Proximately Caused PG&E's Share Price Decline on May
                25-29, 2018 ................................................................................................. 104

     5.   June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
          Risk ................................................................................................................ 105

          (a)   The Market Learned the Truth of PG&E's Continued, Unsafe Use of
                Reclosers ..................................................................................................... 107

          (b)   The Market Continued to Learn the Extent and Effects of PG&E's
                Safety Violations and Responsibility for the North Bay Fires ................. 107

          (c)   Market Commentators Confirmed that the Number and Range of
                Safety Violations Proximately Caused PG&E's Share Price Decline
                on June 8-11, 2018 ...................................................................................... 108

6.  November 8-9, 2018 – Corrective Disclosure and/or Materialization of
    Concealed Risk ................................................................................................. 109

    (a)  The Market Began to Learn the Extent and  Effects of PG&E's
         Responsibility for the Camp Fire .......................................................... 109

    (b)  Market Commentators Confirmed the Cause of PG&E's November
         9, 2018 Share Price Decline ................................................................. 110

7.  November 9-12, 2018 – Corrective Disclosure and/or Materialization of
    Concealed Risk ................................................................................................. 112

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's
         Responsibility for the Camp Fire .......................................................... 112

    (b)  Market Commentators Confirmed the Cause of PG&E's November
         9-12, 2018 Share Price Decline. ........................................................... 113

8.  November 13-14, 2018 – Corrective Disclosure and/or Materialization of
    Concealed Risk ................................................................................................. 114

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's
         Responsibility for the Camp Fire .......................................................... 114

    (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
         Decline on November 14, 2018 ............................................................. 115

9.  November 15, 2018 – Corrective Disclosure and/or Materialization of
    Concealed Risk ................................................................................................. 116

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's
         Responsibility for the Camp Fire .......................................................... 116

    (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
         Decline on November 15, 2018 ............................................................. 117

X.   SCIENTER UNDER THE EXCHANGE ACT ................................................................ 118

    A.  PG&E Knew that Its Safety Practices Continued to Violate the Law Even
        After PG&E Was on Notice of the Butte Fire Safety Violations ............................ 118

    B.  Safety Was Core to PG&E's Operations, and the Exchange Act Individual
        Defendants Were Directly Involved in It ............................................................... 120

    C.  The Federal Court Overseeing PG&E's Probation, Including Safety
        Monitoring, Has Uncovered Additional Facts Supporting Scienter ........................ 123

    D.  PG&E's Noncompliance with Safety Regulations Was Well-Known
        Throughout the Company, Including at the Highest Levels, with Real-Time
        Access to a Database of Known Safety Violations .................................................. 129

        1.  PG&E Recorded Its Violations of Safety Regulations in a Sophisticated
            Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

vi

2.  PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ................................................................. 131

E.  PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority ..........................................133

F.  The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ..........................................................................135

G.  After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up..........................................136

H.  PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ....................................................................140

XI.   APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS ................................................ 141

XII.   CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS............. 142

XIII.   CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT......................................... 144

XIV.   NATURE OF THE SECURITIES ACT CLAIMS................................................... 151

XV.   OVERVIEW OF THE SECURITIES ACT VIOLATIONS ...................................... 151

XVI.   THE SECURITIES ACT PARTIES ...................................................................... 153

A.  Securities Act Named Plaintiffs.........................................................153

B.  Bankrupt Entities ...............................................................................154

C.  Securities Act Individual Defendants ................................................154

D.  Underwriter Defendants......................................................................159

XVII.  SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A.  PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations............................................................................................162

1.  Overview of Laws and Regulations Governing PG&E's Operations................. 162

2.  PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires........ 164

XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS............................................................................................................ 186

A.  The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance.....................................................187

1.  The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices.......... 188

2.   The Offering Documents Did Not Disclose PG&E's Investments in,
Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B.   The Securities Act Defendants Materially Misled Investors Regarding
PG&E's Liability for Wildfires .................................................................................203

C.   PG&E's Offering Documents Misled Investors by Failing to Comply with
Item 303's Disclosure Requirements and Disclosure Safety Violations ..................208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS ..................................... 211

XX.   CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............. 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT ........................................... 214

XXII.   PRAYER FOR RELIEF ................................................................................. 216

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

viii

Page 21 of 165
Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
22 of 166

| PG&E CORP. COMMON STOCK | | | |
|---|---|---|---|
| **Transaction Type** | **Trade Date** | **Shares** | **Price Per Share** | **Cost / Proceeds** |
| Purchase | 06/03/15 | 1,000 | $51.97 | ($51,970.00) |
| Purchase | 06/03/15 | 2,000 | $51.97 | ($103,940.00) |
| Purchase | 07/13/15 | 2,500 | $51.15 | ($127,872.75) |
| Purchase | 03/10/16 | 1,100 | $56.95 | ($62,645.99) |
| Purchase | 06/24/16 | 3,200 | $62.66 | ($200,512.00) |
| Purchase | 08/09/16 | 94,400 | $63.60 | ($6,004,113.76) |
| Sale | 08/25/16 | -54 | $63.56 | $3,432.41 |
| Sale | 08/25/16 | -1,691 | $63.58 | $107,512.43 |
| Purchase | 08/25/16 | 11,768 | $63.66 | ($749,143.82) |
| Sale | 08/26/16 | -1,315 | $62.99 | $82,826.06 |
| Sale | 08/26/16 | -1,503 | $63.08 | $94,803.98 |
| Sale | 08/29/16 | -376 | $62.50 | $23,500.00 |
| Sale | 08/29/16 | -1,865 | $62.55 | $116,646.98 |
| Sale | 08/30/16 | -1,878 | $62.04 | $116,508.87 |
| Sale | 08/31/16 | -126 | $61.80 | $7,786.99 |
| Purchase | 08/31/16 | 74,700 | $61.94 | ($4,627,052.46) |
| Purchase | 09/27/16 | 6,153 | $63.80 | ($392,539.25) |
| Purchase | 10/20/16 | 8,307 | $60.96 | ($506,386.41) |
| Purchase | 11/08/16 | 700 | $62.02 | ($43,414.00) |
| Sale | 11/17/16 | -8,258 | $58.72 | $484,925.45 |
| Sale | 11/17/16 | -227 | $58.96 | $13,383.38 |
| Sale | 11/17/16 | -7,285 | $59.03 | $430,058.32 |
| Sale | 11/18/16 | -4,630 | $58.40 | $270,409.59 |
| Purchase | 11/22/16 | 6,224 | $59.28 | ($368,962.45) |
| Sale | 11/29/16 | -4,519 | $60.69 | $274,260.37 |
| Sale | 11/30/16 | -2,288 | $59.21 | $135,469.51 |
| Sale | 12/01/16 | -1,197 | $57.90 | $69,308.57 |
| Sale | 12/02/16 | -796 | $58.32 | $46,424.55 |
| Purchase | 12/13/16 | 7,217 | $60.40 | ($435,937.11) |
| Sale | 01/06/17 | -3,108 | $60.84 | $189,090.72 |
| Sale | 01/06/17 | -8,392 | $60.97 | $511,683.74 |
| Purchase | 01/20/17 | 10,349 | $61.41 | ($635,532.09) |
| Purchase | 02/13/17 | 400 | $63.69 | ($25,476.00) |
| Purchase | 02/24/17 | 7,378 | $65.95 | ($486,588.69) |
| Sale | 03/08/17 | -4,763 | $65.24 | $310,739.07 |
| Sale | 03/09/17 | -1,809 | $65.29 | $118,105.63 |
| Sale | 03/10/17 | -928 | $65.35 | $60,648.33 |
| Purchase | 03/22/17 | 1,010 | $67.57 | ($68,241.56) |
| Sale | 04/07/17 | -8,900 | $67.11 | $597,294.13 |
| Purchase | 04/10/17 | 50,200 | $66.93 | ($3,359,735.40) |
| Purchase | 05/25/17 | 5,600 | $66.80 | ($374,085.04) |
| Sale | 05/31/17 | -427 | $68.38 | $29,198.26 |
| Sale | 05/31/17 | -1,710 | $68.38 | $116,929.80 |
| Purchase | 06/06/17 | 2,323 | $68.74 | ($159,680.93) |
| Purchase | 06/30/17 | 11,240 | $66.61 | ($748,694.15) |

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page
23 of 166

## PG&E CORP. COMMON STOCK

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 07/24/17 | 1,168 | $67.90 | ($79,307.20) |
| Purchase | 08/31/17 | 1,700 | $70.30 | ($119,510.51) |
| Sale | 10/10/17 | -8,637 | $69.16 | $597,294.33 |
| Sale | 10/11/17 | -977 | $69.08 | $67,494.38 |
| Sale | 10/11/17 | -4,936 | $69.30 | $342,064.80 |
| Purchase | 10/30/17 | 4,180 | $57.23 | ($239,222.65) |
| Sale | 11/20/17 | -2,900 | $52.65 | $152,685.00 |
| Sale | 11/30/17 | -13,862 | $54.24 | $751,874.88 |
| Sale | 11/30/17 | -41,586 | $54.24 | $2,255,624.64 |
| Sale | 11/30/17 | -7,887 | $54.25 | $427,869.75 |
| Sale | 12/01/17 | -15,727 | $54.28 | $853,636.40 |
| Sale | 12/04/17 | -9,743 | $54.13 | $527,404.18 |
| Sale | 12/05/17 | -12,339 | $53.54 | $660,590.58 |
| Sale | 12/06/17 | -2,135 | $53.53 | $114,282.07 |
| Sale | 12/07/17 | -4 | $53.01 | $212.03 |
| Sale | 12/08/17 | -665 | $53.19 | $35,369.69 |
| Sale | 12/15/17 | -5,000 | $53.05 | $265,250.00 |
| Sale | 01/31/18 | -2,040 | $41.79 | $85,260.37 |
| Sale | 02/21/18 | -500 | $39.79 | $19,895.00 |
| Purchase | 04/16/18 | 5,859 | $45.08 | ($264,123.72) |
| Purchase | 04/16/18 | 94 | $45.30 | ($4,257.97) |
| Purchase | 04/16/18 | 40,480 | $45.50 | ($1,842,026.21) |
| Purchase | 04/17/18 | 3,307 | $45.91 | ($151,838.92) |
| Sale | 05/31/18 | -24,012 | $43.33 | $1,040,439.96 |

## PACIFIC GAS & ELECTRIC CO. 6.050% due 03/01/2034

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 05/11/16 | 850,000 | $132.53 | ($1,126,471.00) |

## PACIFIC GAS & ELECTRIC CO 4.600% due 06/15/2043

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 06/03/15 | 125,000 | $101.50 | ($126,875.00) |
| Sale | 08/14/15 | -875,000 | $103.58 | $906,298.75 |

## PACIFIC GAS & ELECTRIC CO 3.300% due 03/15/2027

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 03/07/17 | 95,000 | $99.65 | ($94,662.75) |

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
24 of 166

**EXHIBIT C**
**COUNSEL**

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone   973-597-2500
Facsimile   973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone   415-512-8600
Facsimile   415-512-8601
randy.michelson@michelsonlawgroup.com

*Bankruptcy Counsel to PERA*

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Louis Gottlieb
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
Aram Boghosian
140 Broadway
New York, New York 10005
Telephone  212-907-0700
tdubbs@labaton.com
lgottlieb@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

**WAGSTAFFE, VON LOEWENFELDT,
BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone  415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for PERA*

*Lead Counsel to PERA*

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
25 of 166

# Electronic Proof of Claim_QXAUV27386

Final Audit Report                                                2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA1ilCq1qVC8k9_Fzlyg02krKNp5niZrnk |

## "Electronic Proof of Claim_QXAUV27386" History

📄 Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:48:00 PM GMT

📎 Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
   📎 Attachment
2019-10-21 - 2:50:08 PM GMT

📄 Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:50:08 PM GMT- IP address: 199.127.9.1

🖊 (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64)
   AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 2:50:10 PM GMT- IP address: 199.127.9.1

✅ Signed document emailed to Prime Clerk E-Filing (efiling@primeclerk.com) and Andrew Behlmann
   (abehlmann@lowenstein.com)
2019-10-21 - 2:50:10 PM GMT

**Prime Clerk** | POWERED BY Adobe Sign

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page
26 of 166

# United States Bankruptcy Court, Northern District of California

| Fill in this information to identify the case (Select only one Debtor per claim form): |
|---|
| ☒ PG&E Corporation (19-30088) |
| ☐ Pacific Gas and Electric Company (19-30089) |

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

## Part 1: Identify the Claim

**1. Who is the current creditor?**

PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Lowenstein Sandler LLP
Attn: Michael S. Etkin and Andrew Behlmann
One Lowenstein Drive
Roseland, NJ 07068

Contact phone 973-597-2500
Contact email abehlmann@lowenstein.com

Where should payments to the creditor be sent? (if different)

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known)_____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 27 of 166

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ _Unliquidated (see addendum)_

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 28 of 166

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature:  *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email:  abehlmann@lowenstein.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Andrew David Behlmann |
| | First name        Middle name        Last name |
| Title | Counsel |
| Company | Lowenstein Sandler LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | One Lowenstein Drive |
| | Number        Street |
| | Roseland        NJ        07068 |
| | City        State        ZIP Code |
| Contact phone | 973-597-2332        Email  abehlmann@lowenstein.com |

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 29 of 166

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do **not** have supporting documentation.

📎 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 30 of 166

# Instructions for Proof of Claim

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 31 of 166

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

| Do not file these instructions with your form |
| --- |

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 32 of 166

<table>
<tr><td>1</td><td colspan="2"><strong>LABATON SUCHAROW LLP</strong>      <strong>LOWENSTEIN SANDLER LLP</strong></td></tr>
</table>

| | | |
|---|---|---|
| 1 | **LABATON SUCHAROW LLP** | **LOWENSTEIN SANDLER LLP** |
| | Thomas A. Dubbs | Michael S. Etkin (*pro hac vice*) |
| 2 | Louis Gottlieb | Andrew Behlmann (*pro hac vice*) |
| | Carol C. Villegas | One Lowenstein Drive |
| 3 | Jeffrey A. Dubbin (SBN 287199) | Roseland, New Jersey 07068 |
| | 140 Broadway | |
| 4 | New York, New York 10005 | |
| 5 | *Lead Counsel to PERA* | *Bankruptcy Counsel to PERA* |
| 6 | **MICHELSON LAW GROUP** | |
| | Randy Michelson (SBN 114095) | |
| 7 | 220 Montgomery Street, Suite 2100 | *Additional counsel listed on Exhibit C* |
| | San Francisco, California 94104 | |
| 8 | | |
| | *Bankruptcy Counsel to PERA* | |
| 9 | | |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | |
| | |
| PG&E CORPORATION | Case No. 19-30088 (DM) (Lead Case) |
|      - and – | |
| | Chapter 11 |
| PACIFIC GAS AND ELECTRIC | |
| COMPANY, | (Jointly Administered) |
|           Debtors. | |
| ☒ Affects Both Debtors | **ADDENDUM TO PROOF OF CLAIM** |
| ☐ Affects PG&E Corporation | **OF PUBLIC EMPLOYEES RETIREMENT** |
| ☐ Affects Pacific Gas and Electric Company | **ASSOCIATION OF NEW MEXICO** |

Public Employees Retirement Association of New Mexico ("**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.      The Securities Litigation**

1.      On May 28, 2019, Lead Plaintiff filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[1] In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**") against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**") and (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the

---

[1]   The Debtors are named as Exchange Act Defendants in the TAC, subject to an express acknowledgment that the Securities Litigation cannot proceed against them in the District Court at this time due to the automatic stay.

Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2. A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**. The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B. The Claim**

3. As of the Petition Date, the Debtors were, and currently remain, liable to PERA in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**"). The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim. A schedule of PERA's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4. PERA reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5. The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available. In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6. No payments have been made on account of the Claim.

7. The Claim is not subject to any setoff or counterclaim.

8. No security interest is held for the Claim.

9. The Claim is asserted in addition to, and not in lieu of, any and all other claims that PERA may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D. Reservation of Rights**

10. PERA reserves all rights (including but not limited to arguments, counterarguments,

and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11. This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by PERA, whether in its individual capacity or as lead plaintiff in the Securities Litigation, shall not be deemed to:

- constitute a submission by PERA to the jurisdiction of the Bankruptcy Court;

- constitute consent by PERA to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;

- waive any substantive or procedural rights of PERA, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which PERA is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights,

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 36 of 166



claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT[2]**

---

[2]    Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto.  However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 38 of 166

1   **LABATON SUCHAROW LLP**
    THOMAS A. DUBBS (*pro hac vice*)
2   LOUIS GOTTLIEB (*pro hac vice*)
    JEFFREY A. DUBBIN (#287199)
3   ARAM BOGHOSIAN (*pro hac vice*)
    140 Broadway
4   New York, New York 10005
    Telephone: (212) 907-0700
5   Facsimile: (212) 818-0477
    Email: tdubbs@labaton.com
6   lgottlieb@labaton.com
    jdubbin@labaton.com
7   aboghosian@labaton.com

8   *Counsel for Lead Plaintiff the Public Employees Retirement*
    *Association of New Mexico and Lead Counsel for the Class*
9
    **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
10  JAMES M. WAGSTAFFE (#95535)
    FRANK BUSCH (#258288)
11  100 Pine Street, Suite 725
    San Francisco, California 94111
12  Telephone: (415) 357-8900
    Facsimile: (415) 371-0500
13  Email: wagstaffe@wvbrlaw.com
    busch@wvbrlaw.com
14
    *Liaison Counsel for the Class*
15

16              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17                  **SAN FRANCISCO DIVISION**

18

19                                     Civil Action No. 3:18-cv-03509-EJD

20  IN RE PG&E CORPORATION              THIRD AMENDED CONSOLIDATED CLASS
    SECURITIES LITIGATION               ACTION COMPLAINT FOR VIOLATION OF
21                                      THE FEDERAL SECURITIES LAWS

22                                      JURY TRIAL DEMANDED

23

24

25

26

27

28

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 39 of 166

1

**TABLE OF CONTENTS**

2

I.     INTRODUCTION .......................................................................................... 1

3

II.    NATURE OF THE CASE ............................................................................. 4

4

III.   JURISDICTION AND VENUE .................................................................... 5

5

IV.    OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ............................ 5

6

       A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
          Wildfires in 2017 and Investors' Consequent Losses ...................................... 6

7

8

       B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
          Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
          Losses ............................................................................................................. 8

9

10

          1. After the North Bay Fires, PG&E Continued to Make False and
             Misleading Statements and Omissions ...................................................... 8

11

          2. PG&E's Continuing Noncompliance With Safety Regulations Caused the
             Camp Fire .............................................................................................. 10

12

       C. Exchange Act Claims Being Asserted ......................................................... 12

13

V.     THE EXCHANGE ACT PARTIES ............................................................ 13

14

VI.    SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

15

       A. PG&E Operates Within a Robust Legal Regime ........................................... 15

16

          1. California Law Required PG&E to Maintain a Safe Distance Between Its
             Electrical Equipment and Nearby Vegetation .......................................... 15

17

18

          2. California Law Required PG&E to Safely Maintain Its Electrical
             Equipment and Infrastructure .................................................................. 16

19

          3. PG&E Is Regulated by the CPUC ............................................................ 17

20

             (a)   CPUC's General Orders 95 and 165 Impose Strict Safety
                   Regulations on PG&E ..................................................................... 17

21

22

             (b)   CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
                   Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol .................. 19

23

             (c)   PG&E Must Follow CPUC's Regulations Under Penalty of Law .............. 20

24

          4. Cal Fire Is the Duly Authorized Investigative Arm of the State of
             California for Wildfires ............................................................................ 20

25

26

          5. Under California's Inverse Condemnation Law, PG&E Would Not Bear
             the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
             and Prudently .......................................................................................... 21

27

28

          6. Federal Law Also Requires PG&E to Follow Minimum Safety Standards .......... 21

B.  PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point............22

C.  PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period ..................................................................................24

D.  After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal..............................................................................................25

E.  PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

  1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ...........................25

  2.  PG&E Concealed Its Use of Reclosers from Investors During the Class Period ................................................................................................27

F.  PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period..............................................28

  1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ................28

  2.  PG&E Unsafely Flouts Safety Regulations .........................................................28

  3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ................................................................................................30

  4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ..........................................................................................................30

      (a)  PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period ...........................30

      (b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards ...............32

G.  Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

  1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires .......................................33

  2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire ..................................................34

      (a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations...................................................................................................34

      (b)  The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations..........................................................................37

H.  PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety Violations ................................................................................................38

    1.  PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety Violations Caused the Deadly Butte Fire .............................................. 38

    2.  PG&E Internally Acknowledged, Extensively Documented, and Tolerated for Years the Safety Violations that Caused the Camp Fire ...................... 39

  I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to Follow It Was a Proximate Cause of the Camp Fire ...................................43

    1.  PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor of Shutting Off the Power ...................................................................... 45

        (a)  Criterion 1: the National Fire Danger Rating System Rated Jarbo Gap as Having an "Extreme" Fire Danger Threat Level ............................ 45

        (b)  Criterion 2: the National Weather Service Declared a "Red Flag Warning" for the Area ...................................................................... 47

        (c)  Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel) Weighed in Favor of a Shutoff ...................................................... 47

        (d)  Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor of a Shutoff ................................................................................ 49

    2.  All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

        (a)  Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity Levels................................................................................................ 52

        (b)  Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed......... 53

        (c)  Criterion 5: Site-Specific Conditions Further Favored Shutoff.................. 54

    3.  PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed in Favor of Shutting Off the Power .............................................................. 54

  J.  PG&E's Bankruptcy and Other Post-Class-Period Developments...........................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS UNDER THE EXCHANGE ACT ....................................................................... 59

  A. Overview of Defendants' Fraudulent Course of Conduct .........................................59

  B. Defendants Made Materially False and Misleading Statements and Omissions Regarding Its Vegetation Management Activities and Compliance with Wildfire Safety Regulations Before the North Bay Fires .............................................61

    1.  April 29, 2015 – Misstatement No. 1....................................................... 61

    2.  October 16, 2015 – Misstatement No. 2 .................................................. 62

    3.  November 18, 2015 – Misstatement No. 3 ............................................... 64

4. October 6, 2016 – Misstatement No. 4 ................................................................ 65

5. August 9, 2017 – Misstatement No. 5 ................................................................ 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ........................................................ 69

1. May 23, 2016 – Misstatement No. 6 ................................................................ 70

2. November 4, 2016 – Misstatement No. 7 ........................................................ 71

3. May 31, 2017 – Misstatement No. 8 ................................................................ 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge ................................ 74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ........................................................ 75

1. October 31, 2017 – Misstatement No. 9 .......................................................... 75

2. November 2, 2017 – Misstatement No. 10 ...................................................... 76

3. November 2, 2017 – Misstatement No. 11 ...................................................... 79

4. November 5, 2017 – Misstatement No. 12 ...................................................... 81

5. May 25, 2018 – Misstatement No. 13 .............................................................. 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ........................................................ 85

1. June 8, 2018 – Misstatement No. 14 ................................................................ 85

2. June 8, 2018 – Misstatement No. 15 ................................................................ 87

3. September 27, 2018 – Misstatement No. 16 .................................................... 88

4. October 9, 2018 – Misstatement No. 17 .......................................................... 90

5. October 9, 2018 – Misstatement No. 18 .......................................................... 91

6. November 8, 2018 – Misstatement No. 19 ...................................................... 92

VIII. MATERIALITY UNDER THE EXCHANGE ACT ................................................ 93

IX. LOSS CAUSATION UNDER THE EXCHANGE ACT ........................................ 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ........................................................ 94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires ........................ 95

C. PG&E's Safety Violations Caused the Devastating Camp Fire .................................95

D. As the Market Learned About the Effects and Extent of PG&E's Inadequate
   Safety Practices, the Price of PG&E's Securities Fell Dramatically..........................96

   1. October 12, 2017 – Corrective Disclosure and/or Materialization of
      Concealed Risk ................................................................................................ 96

      (a) The Market Began to Learn the Extent and Effects of PG&E's
          Responsibility for the North Bay Fires.........................................................96

      (b) Market Commentators Confirmed the Cause of PG&E's Share Price
          Decline on October 12, 2017 .......................................................................97

   2. October 13-16, 2017 – Corrective Disclosure and/or Materialization of
      Concealed Risk ................................................................................................ 99

      (a) The Market Continued to Learn the Extent and Effects of PG&E's
          Responsibility for the North Bay Fires.........................................................99

      (b) Market Commentators Confirmed the Cause of PG&E's Share Price
          Decline on October 13, 2017 .......................................................................99

   3. December 20, 2017 – Corrective Disclosure and/or Materialization of
      Concealed Risk ...............................................................................................100

      (a) The Market Continued to Learn the Extent and Effects of PG&E's
          Responsibility for the North Bay Fires.......................................................100

      (b) Market Commentators Confirmed the Proximate Cause of PG&E's
          Share Price Decline on December 20, 2017 ...............................................101

   4. May 25, 2018 – Corrective Disclosure and/or Materialization of
      Concealed Risk ...............................................................................................102

      (a) The Market Continued to Learn the Extent and Effects of PG&E's
          Responsibility for the North Bay Fires.......................................................102

      (b) Market Commentators Confirmed that the News Regarding Safety
          Violations Proximately Caused PG&E's Share Price Decline on May
          25-29, 2018 ................................................................................................104

   5. June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
      Risk .................................................................................................................105

      (a) The Market Learned the Truth of PG&E's Continued, Unsafe Use of
          Reclosers.....................................................................................................107

      (b) The Market Continued to Learn the Extent and Effects of PG&E's
          Safety Violations and Responsibility for the North Bay Fires .................107

      (c) Market Commentators Confirmed that the Number and Range of
          Safety Violations Proximately Caused PG&E's Share Price Decline
          on June 8-11, 2018......................................................................................108

6.  November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 109

    (a)  The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire ................................. 109

    (b)  Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline ................................. 110

7.  November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 112

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................. 112

    (b)  Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ................................. 113

8.  November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 114

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................. 114

    (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ................................. 115

9.  November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 116

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................. 116

    (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ................................. 117

X.  SCIENTER UNDER THE EXCHANGE ACT ................................................................. 118

A.  PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations ........................... 118

B.  Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It ........................... 120

C.  The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter ........................ 123

D.  PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations ........................... 129

1.  PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 45 of 166

2.   PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ........................................................................ 131

E.   PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority ..............................................133

F.   The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ..............................................................................135

G.   After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up ..........................................136

H.   PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ..........................................................................140

XI.    APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS ................................................ 141

XII.   CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII.  CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT ....................................... 144

XIV.   NATURE OF THE SECURITIES ACT CLAIMS ................................................. 151

XV.    OVERVIEW OF THE SECURITIES ACT VIOLATIONS ....................................... 151

XVI.   THE SECURITIES ACT PARTIES ................................................................... 153

A.   Securities Act Named Plaintiffs ..................................................................153

B.   Bankrupt Entities ........................................................................................154

C.   Securities Act Individual Defendants ........................................................154

D.   Underwriter Defendants ..............................................................................159

XVII.  SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A.   PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations ....................................................................................................162

1.   Overview of Laws and Regulations Governing PG&E's Operations ................. 162

2.   PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ........ 164

XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS ................................................................................................... 186

A.   The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance ..............................................................187

1.   The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices .......... 188

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

vii

2.   The Offering Documents Did Not Disclose PG&E's Investments in,
Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B.   The Securities Act Defendants Materially Misled Investors Regarding
PG&E's Liability for Wildfires ................................................................................. 203

C.   PG&E's Offering Documents Misled Investors by Failing to Comply with
Item 303's Disclosure Requirements and Disclosure Safety Violations ................. 208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX.   CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............. 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT ......................................... 214

XXII.   PRAYER FOR RELIEF ............................................................................................... 216

| PG&E CORP. COMMON STOCK | | | |
|---|---|---|---|
| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
| Purchase | 06/03/15 | 1,000 | $51.97 | ($51,970.00) |
| Purchase | 06/03/15 | 2,000 | $51.97 | ($103,940.00) |
| Purchase | 07/13/15 | 2,500 | $51.15 | ($127,872.75) |
| Purchase | 03/10/16 | 1,100 | $56.95 | ($62,645.99) |
| Purchase | 06/24/16 | 3,200 | $62.66 | ($200,512.00) |
| Purchase | 08/09/16 | 94,400 | $63.60 | ($6,004,113.76) |
| Sale | 08/25/16 | -54 | $63.56 | $3,432.41 |
| Sale | 08/25/16 | -1,691 | $63.58 | $107,512.43 |
| Purchase | 08/25/16 | 11,768 | $63.66 | ($749,143.82) |
| Sale | 08/26/16 | -1,315 | $62.99 | $82,826.06 |
| Sale | 08/26/16 | -1,503 | $63.08 | $94,803.98 |
| Sale | 08/29/16 | -376 | $62.50 | $23,500.00 |
| Sale | 08/29/16 | -1,865 | $62.55 | $116,646.98 |
| Sale | 08/30/16 | -1,878 | $62.04 | $116,508.87 |
| Sale | 08/31/16 | -126 | $61.80 | $7,786.99 |
| Purchase | 08/31/16 | 74,700 | $61.94 | ($4,627,052.46) |
| Purchase | 09/27/16 | 6,153 | $63.80 | ($392,539.25) |
| Purchase | 10/20/16 | 8,307 | $60.96 | ($506,386.41) |
| Purchase | 11/08/16 | 700 | $62.02 | ($43,414.00) |
| Sale | 11/17/16 | -8,258 | $58.72 | $484,925.45 |
| Sale | 11/17/16 | -227 | $58.96 | $13,383.38 |
| Sale | 11/17/16 | -7,285 | $59.03 | $430,058.32 |
| Sale | 11/18/16 | -4,630 | $58.40 | $270,409.59 |
| Purchase | 11/22/16 | 6,224 | $59.28 | ($368,962.45) |
| Sale | 11/29/16 | -4,519 | $60.69 | $274,260.37 |
| Sale | 11/30/16 | -2,288 | $59.21 | $135,469.51 |
| Sale | 12/01/16 | -1,197 | $57.90 | $69,308.57 |
| Sale | 12/02/16 | -796 | $58.32 | $46,424.55 |
| Purchase | 12/13/16 | 7,217 | $60.40 | ($435,937.11) |
| Sale | 01/06/17 | -3,108 | $60.84 | $189,090.72 |
| Sale | 01/06/17 | -8,392 | $60.97 | $511,683.74 |
| Purchase | 01/20/17 | 10,349 | $61.41 | ($635,532.09) |
| Purchase | 02/13/17 | 400 | $63.69 | ($25,476.00) |
| Purchase | 02/24/17 | 7,378 | $65.95 | ($486,588.69) |
| Sale | 03/08/17 | -4,763 | $65.24 | $310,739.07 |
| Sale | 03/09/17 | -1,809 | $65.29 | $118,105.63 |
| Sale | 03/10/17 | -928 | $65.35 | $60,648.33 |
| Purchase | 03/22/17 | 1,010 | $67.57 | ($68,241.56) |
| Sale | 04/07/17 | -8,900 | $67.11 | $597,294.13 |
| Purchase | 04/10/17 | 50,200 | $66.93 | ($3,359,735.40) |
| Purchase | 05/25/17 | 5,600 | $66.80 | ($374,085.04) |
| Sale | 05/31/17 | -427 | $68.38 | $29,198.26 |
| Sale | 05/31/17 | -1,710 | $68.38 | $116,929.80 |
| Purchase | 06/06/17 | 2,323 | $68.74 | ($159,680.93) |
| Purchase | 06/30/17 | 11,240 | $66.61 | ($748,694.15) |

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page
48 of 166

## PG&E CORP. COMMON STOCK

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 07/24/17 | 1,168 | $67.90 | ($79,307.20) |
| Purchase | 08/31/17 | 1,700 | $70.30 | ($119,510.51) |
| Sale | 10/10/17 | -8,637 | $69.16 | $597,294.33 |
| Sale | 10/11/17 | -977 | $69.08 | $67,494.38 |
| Sale | 10/11/17 | -4,936 | $69.30 | $342,064.80 |
| Purchase | 10/30/17 | 4,180 | $57.23 | ($239,222.65) |
| Sale | 11/20/17 | -2,900 | $52.65 | $152,685.00 |
| Sale | 11/30/17 | -13,862 | $54.24 | $751,874.88 |
| Sale | 11/30/17 | -41,586 | $54.24 | $2,255,624.64 |
| Sale | 11/30/17 | -7,887 | $54.25 | $427,869.75 |
| Sale | 12/01/17 | -15,727 | $54.28 | $853,636.40 |
| Sale | 12/04/17 | -9,743 | $54.13 | $527,404.18 |
| Sale | 12/05/17 | -12,339 | $53.54 | $660,590.58 |
| Sale | 12/06/17 | -2,135 | $53.53 | $114,282.07 |
| Sale | 12/07/17 | -4 | $53.01 | $212.03 |
| Sale | 12/08/17 | -665 | $53.19 | $35,369.69 |
| Sale | 12/15/17 | -5,000 | $53.05 | $265,250.00 |
| Sale | 01/31/18 | -2,040 | $41.79 | $85,260.37 |
| Sale | 02/21/18 | -500 | $39.79 | $19,895.00 |
| Purchase | 04/16/18 | 5,859 | $45.08 | ($264,123.72) |
| Purchase | 04/16/18 | 94 | $45.30 | ($4,257.97) |
| Purchase | 04/16/18 | 40,480 | $45.50 | ($1,842,026.21) |
| Purchase | 04/17/18 | 3,307 | $45.91 | ($151,838.92) |
| Sale | 05/31/18 | -24,012 | $43.33 | $1,040,439.96 |

## PACIFIC GAS & ELECTRIC CO. 6.050% due 03/01/2034

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 05/11/16 | 850,000 | $132.53 | ($1,126,471.00) |

## PACIFIC GAS & ELECTRIC CO 4.600% due 06/15/2043

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 06/03/15 | 125,000 | $101.50 | ($126,875.00) |
| Sale | 08/14/15 | -875,000 | $103.58 | $906,298.75 |

## PACIFIC GAS & ELECTRIC CO 3.300% due 03/15/2027

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 03/07/17 | 95,000 | $99.65 | ($94,662.75) |

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
49 of 166

## EXHIBIT C
## COUNSEL

1

2

3 **LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
One Lowenstein Drive
4 Roseland, New Jersey 07068
Telephone  973-597-2500
5 Facsimile   973-597-2333
metkin@lowenstein.com
6 abehlmann@lowenstein.com

7

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone  415-512-8600
Facsimile   415-512-8601
randy.michelson@michelsonlawgroup.com

*Bankruptcy Counsel to PERA*

8

9 **LABATON SUCHAROW LLP**
Thomas A. Dubbs
Louis Gottlieb
10 Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
11 Aram Boghosian
140 Broadway
12 New York, New York 10005
Telephone  212-907-0700
13 tdubbs@labaton.com
lgottlieb@labaton.com
14 cvillegas@labaton.com
jdubbin@labaton.com
15 aboghosian@labaton.com

16 *Lead Counsel to PERA*

**WAGSTAFFE, VON LOEWENFELDT,
BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone  415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for PERA*

17

18

19

20

21

22

23

24

25

26

27

28

# Electronic Proof of Claim_CTNKU27386

Final Audit Report                                                                    2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAlmK79yaxosDZDfs1ZAovxLKiXBTXl2h0 |

## "Electronic Proof of Claim_CTNKU27386" History

Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:38:39 PM GMT

Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
   Attachment
2019-10-21 - 2:41:02 PM GMT

Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:41:02 PM GMT- IP address: 199.127.9.1

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 2:41:04 PM GMT- IP address: 199.127.9.1

Signed document emailed to Prime Clerk E-Filing (efiling@primeclerk.com) and Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:41:04 PM GMT

Prime Clerk    POWERED BY Adobe Sign

## United States Bankruptcy Court, Northern District of California

| | |
|---|---|
| **Fill in this information to identify the case (Select only one Debtor per claim form):** | |

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

**Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.**

| **Part 1:** | **Identify the Claim** |
|---|---|

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | York County on behalf of the County of York Retirement Fund |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| | | |
|---|---|---|
| 2. | **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? |

| | | | |
|---|---|---|---|
| 3. | **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | | Lowenstein Sandler LLP<br>Attn: Michael S. Etkin and Andrew Behlmann<br>One Lowenstein Drive<br>Roseland, NJ 07068 | |
| | | Contact phone 973-597-2500 | Contact phone |
| | | Contact email 973-597-2400 | Contact email |

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known)_____ Filed on ____/____/____ MM / DD / YYYY |

| | | |
|---|---|---|
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ <u>Unliquidated (see addendum)</u>

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Violations of federal securities laws (see addendum)</u>

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410

**Proof of Claim**

page 2

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 53 of 166

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No
☐ Yes. *Check one:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Andrew David Behlmann | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Counsel | | |
| Company | Lowenstein Sandler LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | One Lowenstein Drive | | |
| | Number        Street | | |
| | Roseland | NJ | 07068 |
| | City | State | ZIP Code |
| Contact phone | 973-597-2332 | Email | abehlmann@lowenstein.com |

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 54 of 166

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do <u>not</u> have supporting documentation.

📎 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

Case: 19-30088     Doc# 14619-4     Filed: 10/24/24     Entered: 10/24/24 21:37:07     Page 55 of 166

# Instructions for Proof of Claim

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 56 of 166

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

| Do not file these instructions with your form |
| --- |

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 57 of 166

| | |
|---|---|
| 1 | **LOWENSTEIN SANDLER LLP** |
| | Michael S. Etkin *(pro hac vice)* |
| 2 | Andrew Behlmann *(pro hac vice)* |
| | One Lowenstein Drive |
| 3 | Roseland, New Jersey 07068 |
| 4 | *Bankruptcy Counsel to Claimant* |

1   **LOWENSTEIN SANDLER LLP**        **MICHELSON LAW GROUP**
    Michael S. Etkin *(pro hac vice)*       Randy Michelson (SBN 114095)
2   Andrew Behlmann *(pro hac vice)*    220 Montgomery Street, Suite 2100
    One Lowenstein Drive            San Francisco, California 94104
3   Roseland, New Jersey 07068

4   *Bankruptcy Counsel to Claimant*     *Bankruptcy Counsel to Claimant*

5   **ROBBINS GELLER RUDMAN & DOWD LLP**  **ROBBINS GELLER RUDMAN & DOWD LLP**
    Darren J. Robbins (SBN 168593)     Willow E. Radcliffe (SBN 200089)
6   Brian E. Cochran (SBN 286202)      Kenneth J. Black (SBN 291871)
    655 West Broadway, Suite 1900      Post Montgomery Center
7   San Diego, California 92101        One Montgomery Street, Suite 1800
    Telephone  619-231-1058        San Francisco, California 94104
8   darrenr@rgrdlaw.com            Telephone  415-288-4545
    bcochran@rgrdlaw.com          willowr@rgrdlaw.com
9                            kennyb@rgrdlaw.com
    **VANOVERBEKE, MICHAUD &**
10  **TIMMONY, P.C.**
    Thomas C. Michaud
11  79 Alfred Street
    Detroit, Michigan 48201
12  Telephone  313-578-1200
    tmichaud@vmtlaw.com

13

                         *Counsel to Claimant*
14

15          **UNITED STATES BANKRUPTCY COURT**
          **NORTHERN DISTRICT OF CALIFORNIA**
16             **SAN FRANCISCO DIVISION**

17   In re:

18   PG&E CORPORATION

19        - and –                 Case No. 19-30088 (DM) (Lead Case)

20   PACIFIC GAS AND ELECTRIC       Chapter 11
    COMPANY,
21                       (Jointly Administered)
               Debtors.
22

23   ☒ Affects Both Debtors
    ☐ Affects PG&E Corporation
24   ☐ Affects Pacific Gas and Electric    **ADDENDUM TO PROOF OF CLAIM**
    Company
25

26

27

28

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.     The Securities Litigation**

1.     On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]    Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]    Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2.     A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**.  The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.     The Claim**

3.     As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**").  The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim.   A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4.     Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5.     The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available.   In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6.     No payments have been made on account of the Claim.

7.     The Claim is not subject to any setoff or counterclaim.

8.     No security interest is held for the Claim.

9.     The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.     Reservation of Rights**

10.   Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.   This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;

- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;

- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

1   sums claimed herein; or (g) all other rights, claims, actions, arguments,
2   counterarguments, defenses, setoffs, or recoupments to which Claimant is or may
3   be entitled under agreements, at law, in equity, or otherwise, all of which rights,
4   claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments
5   are expressly reserved, nor shall this proof of claim be deemed to constitute
6   consent to electronic service of any pleading or papers for which mailed or
7   personal service is required under any applicable law, rule, regulation, or order.



1

2

**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT**[3]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[3] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

**LABATON SUCHAROW LLP**
THOMAS A. DUBBS (*pro hac vice*)
LOUIS GOTTLIEB (*pro hac vice*)
JEFFREY A. DUBBIN (#287199)
ARAM BOGHOSIAN (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: tdubbs@labaton.com
lgottlieb@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

*Counsel for Lead Plaintiff the Public Employees Retirement
Association of New Mexico and Lead Counsel for the Class*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
JAMES M. WAGSTAFFE (#95535)
FRANK BUSCH (#258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 371-0500
Email: wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

IN RE PG&E CORPORATION
SECURITIES LITIGATION

Civil Action No. 3:18-cv-03509-EJD

THIRD AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT FOR VIOLATION OF
THE FEDERAL SECURITIES LAWS

JURY TRIAL DEMANDED

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION ............................................................................................. 1

3   II.   NATURE OF THE CASE ................................................................................ 4

4   III.  JURISDICTION AND VENUE ....................................................................... 5

5   IV.   OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ............................. 5

6         A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
7            Wildfires in 2017 and Investors' Consequent Losses....................................6

8         B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
             Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
9            Losses.............................................................................................................8

10             1. After the North Bay Fires, PG&E Continued to Make False and
                  Misleading Statements and Omissions ................................................ 8

11             2. PG&E's Continuing Noncompliance With Safety Regulations Caused the
12                Camp Fire........................................................................................... 10

13        C. Exchange Act Claims Being Asserted ........................................................12

14   V.   THE EXCHANGE ACT PARTIES.................................................................. 13

15   VI.  SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

16        A. PG&E Operates Within a Robust Legal Regime .........................................15

17             1. California Law Required PG&E to Maintain a Safe Distance Between Its
                  Electrical Equipment and Nearby Vegetation.................................... 15

18             2. California Law Required PG&E to Safely Maintain Its Electrical
19                Equipment and Infrastructure ........................................................... 16

20             3. PG&E Is Regulated by the CPUC ..................................................... 17

21                 (a)   CPUC's General Orders 95 and 165 Impose Strict Safety
                         Regulations on PG&E............................................................. 17

22                 (b)   CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
23                       Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol .................... 19

24                 (c)   PG&E Must Follow CPUC's Regulations Under Penalty of Law ............. 20

25             4. Cal Fire Is the Duly Authorized Investigative Arm of the State of
                  California for Wildfires....................................................................... 20

26             5. Under California's Inverse Condemnation Law, PG&E Would Not Bear
                  the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
27                and Prudently ..................................................................................... 21

28             6. Federal Law Also Requires PG&E to Follow Minimum Safety Standards.......... 21

B.  PG&E's Vegetation Management Expenditures Did Not Materially Change
from Year to Year During the Class Period, Let Alone Double at Any Point ............ 22

C.  PG&E's Tree Trimming and Removal Did Not Come Close to Doubling
During the Class Period .................................................................................................... 24

D.  After the North Bay Fires, PG&E Started Reporting Inflated Numbers for
Tree Removal ..................................................................................................................... 25

E.  PG&E Concealed Its Unsafe Use of Reclosers During the Class Period .................... 25

1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ........................... 25

2.  PG&E Concealed Its Use of Reclosers from Investors During the Class
Period ........................................................................................................................ 27

F.  PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety
Requirements Before and Throughout the Class Period ............................................. 28

1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ................ 28

2.  PG&E Unsafely Flouts Safety Regulations .......................................................... 28

3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte
Fire in 2015 .............................................................................................................. 30

4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide
Vegetation Management and Other Safety Violations During the Class
Period ........................................................................................................................ 30

(a)  PG&E Documented and Tolerated Thousands of Dangerous Safety
Violations Across Its Territory During the Class Period ........................... 30

(b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices
Had the Potential to Allow for Dangerous Safety Violations on the
Order of Hundreds of Thousands to a Million Wildfire Hazards .............. 32

G.  Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe
Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........ 33

1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity
Requirements Caused the North Bay Fires ........................................................... 33

2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity
Requirements Caused the Camp Fire .................................................................... 34

(a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety
Violations .................................................................................................... 34

(b)  The Camp Fire's Second Ignition Point Was Also Caused by
PG&E's Safety Violations .......................................................................... 37

H.  PG&E's Repeated Vegetation Management and Pole Integrity Safety
Violations Show that the Company Knew of Its Numerous and Widespread
Violations of Fire Safety Regulations Throughout the Class Period, but Did

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

ii

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety Violations ............................................................................................. 38

1. PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety Violations Caused the Deadly Butte Fire ............................................. 38

2. PG&E Internally Acknowledged, Extensively Documented, and Tolerated for Years the Safety Violations that Caused the Camp Fire ................... 39

I. PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to Follow It Was a Proximate Cause of the Camp Fire ................................... 43

1. PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor of Shutting Off the Power ......................................................... 45

(a) Criterion 1: the National Fire Danger Rating System Rated Jarbo Gap as Having an "Extreme" Fire Danger Threat Level ........................... 45

(b) Criterion 2: the National Weather Service Declared a "Red Flag Warning" for the Area ............................................................ 47

(c) Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel) Weighed in Favor of a Shutoff .................................................. 47

(d) Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor of a Shutoff ............................................................... 49

2. All of the Weather Criteria Weighed in Favor of Shutting Off the Power ........... 50

(a) Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity Levels ............................................................................ 52

(b) Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed ......... 53

(c) Criterion 5: Site-Specific Conditions Further Favored Shutoff ................... 54

3. PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed in Favor of Shutting Off the Power ...................................... 54

J. PG&E's Bankruptcy and Other Post-Class-Period Developments ............................. 56

VII.   DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS UNDER THE EXCHANGE ACT ............................................................................ 59

A. Overview of Defendants' Fraudulent Course of Conduct ......................................... 59

B. Defendants Made Materially False and Misleading Statements and Omissions Regarding Its Vegetation Management Activities and Compliance with Wildfire Safety Regulations Before the North Bay Fires ............................................. 61

1. April 29, 2015 – Misstatement No. 1 ............................................................... 61

2. October 16, 2015 – Misstatement No. 2 ........................................................... 62

3. November 18, 2015 – Misstatement No. 3 ......................................................... 64

4. October 6, 2016 – Misstatement No. 4 ................................................................. 65

5. August 9, 2017 – Misstatement No. 5 ................................................................. 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ........................................................69

1. May 23, 2016 – Misstatement No. 6 ................................................................. 70

2. November 4, 2016 – Misstatement No. 7 .......................................................... 71

3. May 31, 2017 – Misstatement No. 8 ................................................................. 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge ...............................74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations .............................................................................75

1. October 31, 2017 – Misstatement No. 9 ........................................................... 75

2. November 2, 2017 – Misstatement No. 10 ........................................................ 76

3. November 2, 2017 – Misstatement No. 11 ........................................................ 79

4. November 5, 2017 – Misstatement No. 12 ........................................................ 81

5. May 25, 2018 – Misstatement No. 13 ............................................................... 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol .......................................................85

1. June 8, 2018 – Misstatement No. 14 ................................................................. 85

2. June 8, 2018 – Misstatement No. 15 ................................................................. 87

3. September 27, 2018 – Misstatement No. 16 ...................................................... 88

4. October 9, 2018 – Misstatement No. 17 ........................................................... 90

5. October 9, 2018 – Misstatement No. 18 ........................................................... 91

6. November 8, 2018 – Misstatement No. 19 ........................................................ 92

VIII.   MATERIALITY UNDER THE EXCHANGE ACT ................................................ 93

IX.   LOSS CAUSATION UNDER THE EXCHANGE ACT .............................................. 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ....................................................................................................94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires ........................95

C.  PG&E's Safety Violations Caused the Devastating Camp Fire ...................................95

D.  As the Market Learned About the Effects and Extent of PG&E's Inadequate
    Safety Practices, the Price of PG&E's Securities Fell Dramatically............................96

    1.  October 12, 2017 – Corrective Disclosure and/or Materialization of
        Concealed Risk .................................................................................. 96

        (a)  The Market Began to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires.......................................... 96

        (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
             Decline on October 12, 2017 ....................................................... 97

    2.  October 13-16, 2017 – Corrective Disclosure and/or Materialization of
        Concealed Risk .................................................................................. 99

        (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires.......................................... 99

        (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
             Decline on October 13, 2017 ....................................................... 99

    3.  December 20, 2017 – Corrective Disclosure and/or Materialization of
        Concealed Risk .................................................................................. 100

        (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires.......................................... 100

        (b)  Market Commentators Confirmed the Proximate Cause of PG&E's
             Share Price Decline on December 20, 2017 ................................ 101

    4.  May 25, 2018 – Corrective Disclosure and/or Materialization of
        Concealed Risk .................................................................................. 102

        (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires.......................................... 102

        (b)  Market Commentators Confirmed that the News Regarding Safety
             Violations Proximately Caused PG&E's Share Price Decline on May
             25-29, 2018 .............................................................................. 104

    5.  June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
        Risk .................................................................................................. 105

        (a)  The Market Learned the Truth of PG&E's Continued, Unsafe Use of
             Reclosers................................................................................... 107

        (b)  The Market Continued to Learn the Extent and Effects of PG&E's
             Safety Violations and Responsibility for the North Bay Fires ................. 107

        (c)  Market Commentators Confirmed that the Number and Range of
             Safety Violations Proximately Caused PG&E's Share Price Decline
             on June 8-11, 2018.................................................................... 108

6. November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 109

    (a) The Market Began to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................................ 109

    (b) Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline ................................................................ 110

7. November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 112

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................................ 112

    (b) Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ................................................................ 113

8. November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 114

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................................ 114

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ................................................................ 115

9. November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 116

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................................ 116

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ................................................................ 117

X. SCIENTER UNDER THE EXCHANGE ACT ................................................................ 118

A. PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations ........................... 118

B. Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It ........................................................... 120

C. The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter ......................... 123

D. PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations ................................................. 129

    1. PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

2.   PG&E Instituted a Culture Among Its On-the-Ground Employees of
Reporting Problems up the Corporate Chain, Which Upper Management
Was Aware of and Monitored ........................................................................... 131

E.   PG&E's Compliance Statements Were Authorized by Defendant Kane and
Were Made under Her Ultimate Authority ......................................................133

F.   The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to
Mislead Investors .............................................................................................135

G.   After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the
Camp Fire, PG&E Attempted to Cover It Up ..................................................136

H.   PG&E's Unprecedented Departure of Officers and Directors Strengthens the
Inference of Scienter ........................................................................................140

XI.     APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE
MARKET FOR THE EXCHANGE ACT CLAIMS .................................................... 141

XII.    CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS............. 142

XIII.   CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT....................................... 144

XIV.    NATURE OF THE SECURITIES ACT CLAIMS.................................................... 151

XV.     OVERVIEW OF THE SECURITIES ACT VIOLATIONS ....................................... 151

XVI.    THE SECURITIES ACT PARTIES........................................................................ 153

A.   Securities Act Named Plaintiffs.......................................................................153

B.   Bankrupt Entities .............................................................................................154

C.   Securities Act Individual Defendants ..............................................................154

D.   Underwriter Defendants....................................................................................159

XVII.   SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS
162

A.   PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety
Violations..........................................................................................................162

1.   Overview of Laws and Regulations Governing PG&E's Operations.................. 162

2.   PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires........ 164

XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND
MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES
OFFERINGS............................................................................................................ 186

A.   The Securities Act Defendants Misled Investors Regarding PG&E's Safety
Practices, Policies and Compliance.................................................................187

1.   The Offering Documents Omitted PG&E's Widespread Safety Failures
and the Existing Risks Associated with Its Inadequate Safety Practices........... 188

2. The Offering Documents Did Not Disclose PG&E's Investments in, Commitment to, and Practices Related to Safety Were Inadequate .................. 194

B. The Securities Act Defendants Materially Misled Investors Regarding PG&E's Liability for Wildfires ................................................................203

C. PG&E's Offering Documents Misled Investors by Failing to Comply with Item 303's Disclosure Requirements and Disclosure Safety Violations ..................208

XIX. NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX. CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............ 212

XXI. CLAIMS FOR RELIEF UNDER THE SECURITIES ACT ......................................... 214

XXII. PRAYER FOR RELIEF ............................................................................................ 216

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

viii

Page 71 of 165

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
72 of 166

## EXHIBIT B
## YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND TRANSACTIONS

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 05/03/2018 | 2.95% due 03/01/2026 | 112,000 | $92.16 |
| 05/30/2018 | 2.95% due 03/01/2026 | 212,000 | $91.95 |
| 11/27/2017 | 3.3% due 12/01/2027 | 162,000 | $99.70 |
| 11/27/2017 | 3.3% due 12/01/2027 | 162,000 | $99.99 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 212,000 | $92.51 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 11/15/2018 | 2.95% due 03/01/2026 | 25,000 | $80.00 |
| 11/15/2018 | 2.95% due 03/01/2026 | 25,000 | $81.00 |
| 11/15/2018 | 2.95% due 03/01/2026 | 46,000 | $79.92 |
| 11/15/2018 | 2.95% due 03/01/2026 | 64,000 | $81.63 |
| 11/15/2018 | 2.95% due 03/01/2026 | 64,000 | $82.25 |
| 11/16/2018 | 2.95% due 03/01/2026 | 38,000 | $87.00 |
| 01/09/2019 | 2.95% due 03/01/2026 | 62,000 | $79.00 |
| 05/03/2018 | 3.3% due 12/01/2027 | 112,000 | $92.92 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 212,000 | $92.51 |
| 05/30/2018 | 3.3% due 12/01/2027 | 212,000 | $92.73 |

[e]Debt exchange offer.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page
73 of 166

# Electronic Proof of Claim_BJIYB27386

Final Audit Report                                                      2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZVCpf9oCkIKIEUTJ8DEaGXpWHODeAx9R |

## "Electronic Proof of Claim_BJIYB27386" History

Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:56:49 PM GMT

Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
 Attachment
2019-10-21 - 2:58:32 PM GMT

Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:58:32 PM GMT- IP address: 199.127.9.1

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 2:58:34 PM GMT- IP address: 199.127.9.1

Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:58:34 PM GMT

**Prime Clerk** POWERED BY Adobe Sign

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

York County on behalf of the County of York Retirement Fund

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Lowenstein Sandler LLP
Attn: Michael S. Etkin and Andrew Behlmann
One Lowenstein Drive
Roseland, NJ 07068

Contact phone  973-597-2500
Contact email  973-597-2400

Where should payments to the creditor be sent? (if different)

Contact phone  _____
Contact email  _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known)_____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

Official Form 410
Claim Number: 61556
Proof of Claim
page 1
Page 74 of 165
Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 75 of 166

**Part 2:**    Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ _Unliquidated (see addendum)_

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:**    $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410          **Proof of Claim**          page 2

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

- ☑ No
- ☐ Yes. *Check one:*

**Amount entitled to priority**

- ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

- ☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

- ☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

- ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

- ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

- ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies.  $ _____

  \* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:** **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

- ☐ I am the creditor.
- ☑ I am the creditor's attorney or authorized agent.
- ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
- ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Andrew David Behlmann
First name        Middle name        Last name

Title: Counsel

Company: Lowenstein Sandler LLP
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: One Lowenstein Drive
Number        Street
Roseland        NJ        07068
City        State        ZIP Code

Contact phone: 973-597-2332        Email: abehlmann@lowenstein.com

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 77 of 166

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.       ☐ I do **not** have supporting documentation.
    (attach below)

Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

**Do not file these instructions with your form**

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 80 of 166

<table>
<tr><td>1</td><td colspan="2"><strong>LOWENSTEIN SANDLER LLP</strong><br>Michael S. Etkin <em>(pro hac vice)</em></td></tr>
</table>

1    **LOWENSTEIN SANDLER LLP**      **MICHELSON LAW GROUP**
     Michael S. Etkin *(pro hac vice)*      Randy Michelson (SBN 114095)

2    Andrew Behlmann *(pro hac vice)*      220 Montgomery Street, Suite 2100
     One Lowenstein Drive      San Francisco, California 94104

3    Roseland, New Jersey 07068

4    *Bankruptcy Counsel to Claimant*      *Bankruptcy Counsel to Claimant*

5    **ROBBINS GELLER RUDMAN & DOWD LLP**      **ROBBINS GELLER RUDMAN & DOWD LLP**
     Darren J. Robbins (SBN 168593)      Willow E. Radcliffe (SBN 200089)

6    Brian E. Cochran (SBN 286202)      Kenneth J. Black (SBN 291871)
     655 West Broadway, Suite 1900      Post Montgomery Center

7    San Diego, California 92101      One Montgomery Street, Suite 1800
     Telephone 619-231-1058      San Francisco, California 94104

8    darrenr@rgrdlaw.com      Telephone 415-288-4545
     bcochran@rgrdlaw.com      willowr@rgrdlaw.com

9      kennyb@rgrdlaw.com
   **VANOVERBEKE, MICHAUD &**

10    **TIMMONY, P.C.**
   Thomas C. Michaud

11    79 Alfred Street
   Detroit, Michigan 48201

12    Telephone 313-578-1200
   tmichaud@vmtlaw.com

13

14                    *Counsel to Claimant*

15          **UNITED STATES BANKRUPTCY COURT**
         **NORTHERN DISTRICT OF CALIFORNIA**

16             **SAN FRANCISCO DIVISION**

17    In re:

18    PG&E CORPORATION         Case No. 19-30088 (DM) (Lead Case)

19        - and –            Chapter 11

20    PACIFIC GAS AND ELECTRIC     (Jointly Administered)
   COMPANY,

21                Debtors.

22

23    ☒ Affects Both Debtors
   ☐ Affects PG&E Corporation

24    ☐ Affects Pacific Gas and Electric    **ADDENDUM TO PROOF OF CLAIM**
   Company

25

26

27

28

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

A.    **The Securities Litigation**

1.    On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]    Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]    Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 82 of 166

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2. A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**. The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.     The Claim**

3. As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**"). The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim. A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4. Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5. The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available. In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6. No payments have been made on account of the Claim.

7. The Claim is not subject to any setoff or counterclaim.

8. No security interest is held for the Claim.

9. The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.     Reservation of Rights**

10.   Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.   This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;
- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;
- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 84 of 166

sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Claimant is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT[3]**

---
[3] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 86 of 166

**LABATON SUCHAROW LLP**
THOMAS A. DUBBS (*pro hac vice*)
LOUIS GOTTLIEB (*pro hac vice*)
JEFFREY A. DUBBIN (#287199)
ARAM BOGHOSIAN (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: tdubbs@labaton.com
lgottlieb@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

*Counsel for Lead Plaintiff the Public Employees Retirement*
*Association of New Mexico and Lead Counsel for the Class*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
JAMES M. WAGSTAFFE (#95535)
FRANK BUSCH (#258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 371-0500
Email: wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PG&E CORPORATION SECURITIES LITIGATION | Civil Action No. 3:18-cv-03509-EJD<br><br>THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Third Amended Consolidated Class Action Complaint
Civil Action No. 3:18-cv-03509-EJD

1

<b>TABLE OF CONTENTS</b>

2   I.     INTRODUCTION ................................................................................... 1

3   II.     NATURE OF THE CASE ...................................................................... 4

4   III.    JURISDICTION AND VENUE ............................................................ 5

5   IV.    OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ................... 5

        A. PG&E's Failure to Comply with Safety Regulations Proximately Caused Wildfires in 2017 and Investors' Consequent Losses ...................................... 6

        B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately Causing a Disastrous Wildfire in November 2018 as Well as Further Investor Losses .................................................................................................................. 8

            1. After the North Bay Fires, PG&E Continued to Make False and Misleading Statements and Omissions ......................................... 8

            2. PG&E's Continuing Noncompliance With Safety Regulations Caused the Camp Fire ............................................................................................. 10

        C. Exchange Act Claims Being Asserted ............................................................ 12

V.     THE EXCHANGE ACT PARTIES ..................................................... 13

VI.    SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

        A. PG&E Operates Within a Robust Legal Regime ........................................... 15

            1. California Law Required PG&E to Maintain a Safe Distance Between Its Electrical Equipment and Nearby Vegetation ................................... 15

            2. California Law Required PG&E to Safely Maintain Its Electrical Equipment and Infrastructure ......................................................... 16

            3. PG&E Is Regulated by the CPUC ...................................................... 17

                (a) CPUC's General Orders 95 and 165 Impose Strict Safety Regulations on PG&E ...................................................................... 17

                (b) CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol ................. 19

                (c) PG&E Must Follow CPUC's Regulations Under Penalty of Law ............. 20

            4. Cal Fire Is the Duly Authorized Investigative Arm of the State of California for Wildfires ................................................................. 20

            5. Under California's Inverse Condemnation Law, PG&E Would Not Bear the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably and Prudently ............................................................................. 21

            6. Federal Law Also Requires PG&E to Follow Minimum Safety Standards.......... 21

B. PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point ............ 22

C. PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period .................................................................................................... 24

D. After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal ......................................................................................................................... 25

E. PG&E Concealed Its Unsafe Use of Reclosers During the Class Period .................... 25

   1. PG&E Used Reclosers to Prioritize Convenience Over Safety ........................... 25

   2. PG&E Concealed Its Use of Reclosers from Investors During the Class Period .............................................................................................................................. 27

F. PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period ................................................ 28

   1. PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ................ 28

   2. PG&E Unsafely Flouts Safety Regulations ......................................................... 28

   3. PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 .............................................................................................................. 30

   4. PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ........................................................................................................................ 30

      (a) PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period ............................ 30

      (b) PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards ............... 32

G. Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........ 33

   1. PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires ........................................................... 33

   2. PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire ................................................................... 34

      (a) The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations ..................................................................................................... 34

      (b) The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations ........................................................................... 37

H. PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety Violations ...................................................................................................38

   1.  PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety Violations Caused the Deadly Butte Fire.............................................. 38

   2.  PG&E Internally Acknowledged, Extensively Documented, and Tolerated for Years the Safety Violations that Caused the Camp Fire ...................... 39

I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to Follow It Was a Proximate Cause of the Camp Fire ...................................................43

   1.  PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor of Shutting Off the Power ............................................................. 45

      (a)  Criterion 1: the National Fire Danger Rating System Rated Jarbo Gap as Having an "Extreme" Fire Danger Threat Level ........................... 45

      (b)  Criterion 2: the National Weather Service Declared a "Red Flag Warning" for the Area ................................................................ 47

      (c)  Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel) Weighed in Favor of a Shutoff .......................................................... 47

      (d)  Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor of a Shutoff ........................................................................ 49

   2.  All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

      (a)  Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity Levels.................................................................................. 52

      (b)  Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed......... 53

      (c)  Criterion 5: Site-Specific Conditions Further Favored Shutoff.................. 54

   3.  PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed in Favor of Shutting Off the Power ................................................... 54

J.  PG&E's Bankruptcy and Other Post-Class-Period Developments.............................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS UNDER THE EXCHANGE ACT ..........................................................................59

A. Overview of Defendants' Fraudulent Course of Conduct ..........................................59

B. Defendants Made Materially False and Misleading Statements and Omissions Regarding Its Vegetation Management Activities and Compliance with Wildfire Safety Regulations Before the North Bay Fires ...........................................61

   1.  April 29, 2015 – Misstatement No. 1....................................................... 61

   2.  October 16, 2015 – Misstatement No. 2 .................................................. 62

   3.  November 18, 2015 – Misstatement No. 3 ............................................... 64

4. October 6, 2016 – Misstatement No. 4 ................................................................. 65

5. August 9, 2017 – Misstatement No. 5 ................................................................. 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ................................................ 69

1. May 23, 2016 – Misstatement No. 6 .................................................................. 70

2. November 4, 2016 – Misstatement No. 7 ........................................................... 71

3. May 31, 2017 – Misstatement No. 8 .................................................................. 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge ............................... 74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ........................................................ 75

1. October 31, 2017 – Misstatement No. 9 ............................................................. 75

2. November 2, 2017 – Misstatement No. 10 .......................................................... 76

3. November 2, 2017 – Misstatement No. 11 .......................................................... 79

4. November 5, 2017 – Misstatement No. 12 .......................................................... 81

5. May 25, 2018 – Misstatement No. 13 ................................................................ 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ............................................. 85

1. June 8, 2018 – Misstatement No. 14 .................................................................. 85

2. June 8, 2018 – Misstatement No. 15 .................................................................. 87

3. September 27, 2018 – Misstatement No. 16 ........................................................ 88

4. October 9, 2018 – Misstatement No. 17 ............................................................. 90

5. October 9, 2018 – Misstatement No. 18 ............................................................. 91

6. November 8, 2018 – Misstatement No. 19 .......................................................... 92

VIII. MATERIALITY UNDER THE EXCHANGE ACT ................................................. 93

IX. LOSS CAUSATION UNDER THE EXCHANGE ACT .............................................. 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ................................................................................ 94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires ......................... 95

Third Amended Consolidated Class Action Complaint
Civil Action No. 3:18-cv-03509-EJD

iv

C.  PG&E's Safety Violations Caused the Devastating Camp Fire ..................................95

D.  As the Market Learned About the Effects and Extent of PG&E's Inadequate
    Safety Practices, the Price of PG&E's Securities Fell Dramatically .........................96

    1.  October 12, 2017 – Corrective Disclosure and/or Materialization of
        Concealed Risk ............................................................................................... 96

        (a)  The Market Began to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires .......................................... 96

        (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
             Decline on October 12, 2017 ........................................................ 97

    2.  October 13-16, 2017 – Corrective Disclosure and/or Materialization of
        Concealed Risk ............................................................................................... 99

        (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires .......................................... 99

        (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
             Decline on October 13, 2017 ........................................................ 99

    3.  December 20, 2017 – Corrective Disclosure and/or Materialization of
        Concealed Risk ............................................................................................. 100

        (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires ........................................ 100

        (b)  Market Commentators Confirmed the Proximate Cause of PG&E's
             Share Price Decline on December 20, 2017 ................................ 101

    4.  May 25, 2018 – Corrective Disclosure and/or Materialization of
        Concealed Risk ............................................................................................. 102

        (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires ........................................ 102

        (b)  Market Commentators Confirmed that the News Regarding Safety
             Violations Proximately Caused PG&E's Share Price Decline on May
             25-29, 2018 ................................................................................. 104

    5.  June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
        Risk .............................................................................................................. 105

        (a)  The Market Learned the Truth of PG&E's Continued, Unsafe Use of
             Reclosers ...................................................................................... 107

        (b)  The Market Continued to Learn the Extent and Effects of PG&E's
             Safety Violations and Responsibility for the North Bay Fires ................. 107

        (c)  Market Commentators Confirmed that the Number and Range of
             Safety Violations Proximately Caused PG&E's Share Price Decline
             on June 8-11, 2018 ........................................................................ 108

6. November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 109

    (a) The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire ................................................ 109

    (b) Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline ................................................ 110

7. November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 112

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................ 112

    (b) Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ................................................ 113

8. November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 114

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................ 114

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ................................................ 115

9. November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 116

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................ 116

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ................................................ 117

X.  SCIENTER UNDER THE EXCHANGE ACT ................................................ 118

A. PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations ............................. 118

B. Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It ............................. 120

C. The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter ......................... 123

D. PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations .................................................. 129

    1. PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

2.   PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ...................................................................... 131

E.   PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority ...................................................133

F.   The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ...........................................................................................135

G.   After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up ...................................................136

H.   PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ......................................................................................140

XI.   APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS ................................................................. 141

XII.   CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS............. 142

XIII.   CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT......................................... 144

XIV.   NATURE OF THE SECURITIES ACT CLAIMS...................................................... 151

XV.   OVERVIEW OF THE SECURITIES ACT VIOLATIONS ....................................... 151

XVI.   THE SECURITIES ACT PARTIES ......................................................................... 153

A.   Securities Act Named Plaintiffs.........................................................................153

B.   Bankrupt Entities ...............................................................................................154

C.   Securities Act Individual Defendants ................................................................154

D.   Underwriter Defendants......................................................................................159

XVII.   SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A.   PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations..............................................................................................................162

1.   Overview of Laws and Regulations Governing PG&E's Operations.................. 162

2.   PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires........ 164

XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS.................................................................................................................... 186

A.   The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance....................................................................187

1.   The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices.......... 188

2.  The Offering Documents Did Not Disclose PG&E's Investments in,
Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B.  The Securities Act Defendants Materially Misled Investors Regarding
PG&E's Liability for Wildfires ..................................................................................203

C.  PG&E's Offering Documents Misled Investors by Failing to Comply with
Item 303's Disclosure Requirements and Disclosure Safety Violations ..................208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS ..................................... 211

XX.    CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS............. 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT .......................................... 214

XXII.  PRAYER FOR RELIEF .............................................................................................. 216

# EXHIBIT B
## YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND
## TRANSACTIONS

**Bonds**

| Date<br>Acquired | Type of<br>Debt | Face<br>Amount | Price |
|---|---|---|---|
| 05/03/2018 | 2.95% due 03/01/2026 | 112,000 | $92.16 |
| 05/30/2018 | 2.95% due 03/01/2026 | 212,000 | $91.95 |
| 11/27/2017 | 3.3% due 12/01/2027 | 162,000 | $99.70 |
| 11/27/2017 | 3.3% due 12/01/2027 | 162,000 | $99.99 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 212,000 | $92.51 |

| Date<br>Sold | Type of<br>Debt | Face<br>Amount | Price |
|---|---|---|---|
| 11/15/2018 | 2.95% due 03/01/2026 | 25,000 | $80.00 |
| 11/15/2018 | 2.95% due 03/01/2026 | 25,000 | $81.00 |
| 11/15/2018 | 2.95% due 03/01/2026 | 46,000 | $79.92 |
| 11/15/2018 | 2.95% due 03/01/2026 | 64,000 | $81.63 |
| 11/15/2018 | 2.95% due 03/01/2026 | 64,000 | $82.25 |
| 11/16/2018 | 2.95% due 03/01/2026 | 38,000 | $87.00 |
| 01/09/2019 | 2.95% due 03/01/2026 | 62,000 | $79.00 |
| 05/03/2018 | 3.3% due 12/01/2027 | 112,000 | $92.92 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 212,000 | $92.51 |
| 05/30/2018 | 3.3% due 12/01/2027 | 212,000 | $92.73 |

[e]Debt exchange offer.

# Electronic Proof of Claim_BJIYB27386

Final Audit Report                                                    2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZVCpf9oCkIKIEUTJ8DEaGXpWHODeAx9R |

## "Electronic Proof of Claim_BJIYB27386" History

📄 Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:56:49 PM GMT

📎 Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
📎 Attachment
2019-10-21 - 2:58:32 PM GMT

📄 Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:58:32 PM GMT- IP address: 199.127.9.1

✒ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 2:58:34 PM GMT- IP address: 199.127.9.1

✅ Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:58:34 PM GMT

**Prime Clerk**    POWERED BY    Adobe Sign

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 97 of 166

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

- [ ] PG&E Corporation (19-30088)
- [x] Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

City of Warren Police and Fire Retirement System

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

- [x] No
- [ ] Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Lowenstein Sandler LLP
Attn: Michael S. Etkin and Andrew Behlmann
One Lowenstein Drive
Roseland, NJ 07068

Contact phone 973-597-2500

Contact email 973-597-2400

**Where should payments to the creditor be sent?** (if different)

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

- [x] No
- [ ] Yes. Claim number on court claims registry (if known)_____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

- [x] No
- [ ] Yes. Who made the earlier filing? _____

Official Form 410

Proof of Claim

page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ <u>Unliquidated (see addendum)</u>

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410           **Proof of Claim**           page 2

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 99 of 166

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies.

$ _____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Andrew David Behlmann |
| | First name · Middle name · Last name |
| Title | Counsel |
| Company | Lowenstein Sandler LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | One Lowenstein Drive |
| | Number · Street |
| | Roseland · NJ · 07068 |
| | City · State · ZIP Code |
| Contact phone | 973-597-2332 · Email abehlmann@lowenstein.com |

Official Form 410

Proof of Claim

page 3

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 100 of 166

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do **not** have supporting documentation.

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 101 of 166

# Instructions for Proof of Claim

United States Bankruptcy Court                                                              12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 102 of 166

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

**Do not file these instructions with your form**

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 103 of 166

1  **LOWENSTEIN SANDLER LLP**          **MICHELSON LAW GROUP**
   Michael S. Etkin (pro hac vice)       Randy Michelson (SBN 114095)
2  Andrew Behlmann (pro hac vice)        220 Montgomery Street, Suite 2100
   One Lowenstein Drive                  San Francisco, California 94104
3  Roseland, New Jersey 07068

4  Bankruptcy Counsel to Claimant        Bankruptcy Counsel to Claimant

5  **ROBBINS GELLER RUDMAN & DOWD LLP**  **ROBBINS GELLER RUDMAN & DOWD LLP**
   Darren J. Robbins (SBN 168593)        Willow E. Radcliffe (SBN 200089)
6  Brian E. Cochran (SBN 286202)         Kenneth J. Black (SBN 291871)
   655 West Broadway, Suite 1900         Post Montgomery Center
7  San Diego, California 92101           One Montgomery Street, Suite 1800
   Telephone  619-231-1058              San Francisco, California 94104
8  darrenr@rgrdlaw.com                   Telephone  415-288-4545
   bcochran@rgrdlaw.com                  willowr@rgrdlaw.com
9                                        kennyb@rgrdlaw.com

   **VANOVERBEKE, MICHAUD &**
10 **TIMMONY, P.C.**
   Thomas C. Michaud
11 79 Alfred Street
   Detroit, Michigan 48201
12 Telephone  313-578-1200
   tmichaud@vmtlaw.com

13

14                          Counsel to Claimant

15               **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
16                    **SAN FRANCISCO DIVISION**

17  In re:

18  PG&E CORPORATION
                                          Case No. 19-30088 (DM) (Lead Case)
19          - and –
                                          Chapter 11
20  PACIFIC GAS AND ELECTRIC
    COMPANY,                              (Jointly Administered)
21
                        Debtors.
22

23  ☒ Affects Both Debtors
    ☐ Affects PG&E Corporation
24  ☐ Affects Pacific Gas and Electric   **ADDENDUM TO PROOF OF CLAIM**
    Company
25

26

27

28

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.    The Securities Litigation**

1.    On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]    Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]    Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 105 of 166

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2.  A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**.  The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.    The Claim**

3.  As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**").  The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim.   A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4.  Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5.  The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available.  In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6.  No payments have been made on account of the Claim.

7.  The Claim is not subject to any setoff or counterclaim.

8.  No security interest is held for the Claim.

9.  The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.      Reservation of Rights**

10.  Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.  This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;
- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding;**
- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Claimant is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT**[3]

---

[3] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

**LABATON SUCHAROW LLP**
THOMAS A. DUBBS (*pro hac vice*)
LOUIS GOTTLIEB (*pro hac vice*)
JEFFREY A. DUBBIN (#287199)
ARAM BOGHOSIAN (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: tdubbs@labaton.com
lgottlieb@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

*Counsel for Lead Plaintiff the Public Employees Retirement*
*Association of New Mexico and Lead Counsel for the Class*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
JAMES M. WAGSTAFFE (#95535)
FRANK BUSCH (#258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 371-0500
Email: wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE PG&E CORPORATION SECURITIES LITIGATION | Civil Action No. 3:18-cv-03509-EJD<br><br>THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................... 1

II.   NATURE OF THE CASE ......................................................................................... 4

III.   JURISDICTION AND VENUE .............................................................................. 5

IV.   OVERVIEW OF THE EXCHANGE ACT VIOLATIONS .................................... 5

    A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
       Wildfires in 2017 and Investors' Consequent Losses ........................................ 6

    B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
       Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
       Losses ................................................................................................................ 8

      1.   After the North Bay Fires, PG&E Continued to Make False and
           Misleading Statements and Omissions .................................................... 8

      2.   PG&E's Continuing Noncompliance With Safety Regulations Caused the
           Camp Fire ............................................................................................. 10

    C. Exchange Act Claims Being Asserted ............................................................. 12

V.   THE EXCHANGE ACT PARTIES ....................................................................... 13

VI.   SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

    A. PG&E Operates Within a Robust Legal Regime .............................................. 15

      1.   California Law Required PG&E to Maintain a Safe Distance Between Its
           Electrical Equipment and Nearby Vegetation ....................................... 15

      2.   California Law Required PG&E to Safely Maintain Its Electrical
           Equipment and Infrastructure ............................................................... 16

      3.   PG&E Is Regulated by the CPUC ........................................................ 17

          (a)   CPUC's General Orders 95 and 165 Impose Strict Safety
               Regulations on PG&E ................................................................ 17

          (b)   CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
               Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol ... 19

          (c)   PG&E Must Follow CPUC's Regulations Under Penalty of Law ... 20

      4.   Cal Fire Is the Duly Authorized Investigative Arm of the State of
           California for Wildfires .......................................................................... 20

      5.   Under California's Inverse Condemnation Law, PG&E Would Not Bear
           the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
           and Prudently ........................................................................................ 21

      6.   Federal Law Also Requires PG&E to Follow Minimum Safety Standards .......... 21

B.  PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point............22

C.  PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period ........................................................................................24

D.  After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal..................................................................................................25

E.  PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

    1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ...........................25

    2.  PG&E Concealed Its Use of Reclosers from Investors During the Class Period ............................................................................................................27

F.  PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period...........................................28

    1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ................28

    2.  PG&E Unsafely Flouts Safety Regulations .........................................................28

    3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ..........................................................................................30

    4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ................................................................................................30

        (a)  PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period............................30

        (b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards...............32

G.  Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

    1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires........................................33

    2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire.................................................34

        (a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations................................................................................................34

        (b)  The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations..........................................................................37

H.  PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety Violations ................................................................................................ 38

    1.  PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety Violations Caused the Deadly Butte Fire ........................................... 38

    2.  PG&E Internally Acknowledged, Extensively Documented, and Tolerated for Years the Safety Violations that Caused the Camp Fire ..................... 39

I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to Follow It Was a Proximate Cause of the Camp Fire ................................... 43

    1.  PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor of Shutting Off the Power ..................................................... 45

       (a)  Criterion 1: the National Fire Danger Rating System Rated Jarbo Gap as Having an "Extreme" Fire Danger Threat Level ........................... 45

       (b)  Criterion 2: the National Weather Service Declared a "Red Flag Warning" for the Area ....................................................... 47

       (c)  Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel) Weighed in Favor of a Shutoff ........................................... 47

       (d)  Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor of a Shutoff .................................................................... 49

    2.  All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

       (a)  Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity Levels ..................................................................... 52

       (b)  Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed ......... 53

       (c)  Criterion 5: Site-Specific Conditions Further Favored Shutoff .................. 54

    3.  PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed in Favor of Shutting Off the Power .................................... 54

J.  PG&E's Bankruptcy and Other Post-Class-Period Developments ............................ 56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS UNDER THE EXCHANGE ACT ........................................................ 59

A. Overview of Defendants' Fraudulent Course of Conduct ......................................... 59

B. Defendants Made Materially False and Misleading Statements and Omissions Regarding Its Vegetation Management Activities and Compliance with Wildfire Safety Regulations Before the North Bay Fires ........................................... 61

    1.  April 29, 2015 – Misstatement No. 1 ................................................................. 61

    2.  October 16, 2015 – Misstatement No. 2 ............................................................ 62

    3.  November 18, 2015 – Misstatement No. 3 ......................................................... 64

4.   October 6, 2016 – Misstatement No. 4 .................................................. 65

5.   August 9, 2017 – Misstatement No. 5 ................................................... 67

C.  Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ................................................69

1.   May 23, 2016 – Misstatement No. 6 ...................................................... 70

2.   November 4, 2016 – Misstatement No. 7 ............................................... 71

3.   May 31, 2017 – Misstatement No. 8 ...................................................... 72

D.  After the North Bay Fires Erupted, the Truth Began to Emerge ...............................74

E.  After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ........................................................75

1.   October 31, 2017 – Misstatement No. 9 ................................................. 75

2.   November 2, 2017 – Misstatement No. 10 .............................................. 76

3.   November 2, 2017 – Misstatement No. 11 .............................................. 79

4.   November 5, 2017 – Misstatement No. 12 .............................................. 81

5.   May 25, 2018 – Misstatement No. 13 ..................................................... 83

F.  While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ........................................................85

1.   June 8, 2018 – Misstatement No. 14 ...................................................... 85

2.   June 8, 2018 – Misstatement No. 15 ...................................................... 87

3.   September 27, 2018 – Misstatement No. 16 ............................................ 88

4.   October 9, 2018 – Misstatement No. 17 ................................................. 90

5.   October 9, 2018 – Misstatement No. 18 ................................................. 91

6.   November 8, 2018 – Misstatement No. 19 .............................................. 92

VIII.   MATERIALITY UNDER THE EXCHANGE ACT ..................................................... 93

IX.    LOSS CAUSATION UNDER THE EXCHANGE ACT ................................................ 94

A.  Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities .......................................................................94

B.  PG&E's Safety Violations Caused the Devastating North Bay Fires ........................95

C. PG&E's Safety Violations Caused the Devastating Camp Fire ..................................95

D. As the Market Learned About the Effects and Extent of PG&E's Inadequate Safety Practices, the Price of PG&E's Securities Fell Dramatically ..........................96

    1. October 12, 2017 – Corrective Disclosure and/or Materialization of Concealed Risk ........................................................................................ 96

        (a) The Market Began to Learn the Extent and Effects of PG&E's Responsibility for the North Bay Fires ......................................... 96

        (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on October 12, 2017 ........................................ 97

    2. October 13-16, 2017 – Corrective Disclosure and/or Materialization of Concealed Risk ........................................................................................ 99

        (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the North Bay Fires ......................................... 99

        (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on October 13, 2017 ........................................ 99

    3. December 20, 2017 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 100

        (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the North Bay Fires ....................................... 100

        (b) Market Commentators Confirmed the Proximate Cause of PG&E's Share Price Decline on December 20, 2017 .............................. 101

    4. May 25, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 102

        (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the North Bay Fires ....................................... 102

        (b) Market Commentators Confirmed that the News Regarding Safety Violations Proximately Caused PG&E's Share Price Decline on May 25-29, 2018 ............................................................................. 104

    5. June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 105

        (a) The Market Learned the Truth of PG&E's Continued, Unsafe Use of Reclosers ................................................................................. 107

        (b) The Market Continued to Learn the Extent and Effects of PG&E's Safety Violations and Responsibility for the North Bay Fires ................. 107

        (c) Market Commentators Confirmed that the Number and Range of Safety Violations Proximately Caused PG&E's Share Price Decline on June 8-11, 2018 ............................................................... 108

6.   November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 109

    (a)   The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire.................................................. 109

    (b)   Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline........................................................ 110

7.   November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 112

    (a)   The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.................................................. 112

    (b)   Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ............................................... 113

8.   November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 114

    (a)   The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.................................................. 114

    (b)   Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ...................................................... 115

9.   November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 116

    (a)   The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.................................................. 116

    (b)   Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ...................................................... 117

X.   SCIENTER UNDER THE EXCHANGE ACT ............................................................. 118

A.   PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations .............................118

B.   Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It ..........................................................120

C.   The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter .......................123

D.   PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations...................................................129

1.   PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

2.   PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ............................................................ 131

E.   PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority ................................................ 133

F.   The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ................................................................................ 135

G.   After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up .......................................... 136

H.   PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ............................................................................ 140

XI.   APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS ................................................ 141

XII.   CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII.   CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT ...................................... 144

XIV.   NATURE OF THE SECURITIES ACT CLAIMS ................................................ 151

XV.   OVERVIEW OF THE SECURITIES ACT VIOLATIONS ..................................... 151

XVI.   THE SECURITIES ACT PARTIES ................................................................. 153

A.   Securities Act Named Plaintiffs ...................................................................... 153

B.   Bankrupt Entities ........................................................................................... 154

C.   Securities Act Individual Defendants .............................................................. 154

D.   Underwriter Defendants .................................................................................. 159

XVII.   SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A.   PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations ................................................................................................. 162

1.   Overview of Laws and Regulations Governing PG&E's Operations ................. 162

2.   PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ........ 164

XVIII.   THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS ................................................................................................. 186

A.   The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance .................................................................. 187

1.   The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices .......... 188

2.  The Offering Documents Did Not Disclose PG&E's Investments in,
Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B.  The Securities Act Defendants Materially Misled Investors Regarding
PG&E's Liability for Wildfires ................................................................................203

C.  PG&E's Offering Documents Misled Investors by Failing to Comply with
Item 303's Disclosure Requirements and Disclosure Safety Violations ..................208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX.    CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............ 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT .......................................... 214

XXII.  PRAYER FOR RELIEF ................................................................................. 216

**EXHIBIT B**
**CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM**
**TRANSACTIONS**

**Common Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 05/29/2015 | 21 | $53.47 |
| 12/18/2015 | 19 | $53.11 |
| 02/29/2016 | 15 | $56.73 |
| 03/31/2016 | 9 | $59.72 |
| 05/05/2016 | 956 | $59.15 |
| 05/31/2016 | 16 | $60.08 |
| 06/24/2016 | 65 | $62.66 |
| 07/06/2016 | 18 | $65.39 |
| 09/14/2016 | 23 | $61.43 |
| 12/16/2016 | 23 | $61.04 |
| 02/28/2017 | 19 | $66.75 |
| 03/31/2017 | 19 | $66.36 |
| 09/15/2017 | 29 | $70.28 |
| 12/15/2017 | 27 | $53.05 |
| 03/16/2018 | 25 | $45.08 |

| Date Sold | Amount of Shares Sold | Price |
|---|---|---|
| 07/08/2016 | 6 | $64.83 |
| 03/01/2017 | 8 | $65.85 |
| 03/27/2017 | 142 | $67.19 |
| 06/23/2017 | 27 | $68.03 |
| 06/22/2018 | 125 | $42.92 |
| 09/21/2018 | 223 | $46.79 |
| 10/15/2018 | 1,170 | $47.84 |

*Opening position of 1,081 shares for common stock.

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 12/21/2017 | 3.3% due 12/01/2027 | 75,000 | $98.89 |
| 05/01/2018 | 3.3% due 12/01/2027 | 25,000 | $93.09 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 100,000 | $92.51 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 05/14/2018[e] | 3.3% due 12/01/2027 | 100,000 | $92.51 |
| 01/14/2019 | 3.3% due 12/01/2027 | 100,000 | $78.00 |

[e]Debt exchange offer.

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page
119 of 166

# Electronic Proof of Claim_@A@EQ27386

Final Audit Report                                                         2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAScGC1hcgT2a2j4aCuGECxXWUq7rQqDYt |

## "Electronic Proof of Claim_@A@EQ27386" History

Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:03:47 PM GMT

Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
Attachment
2019-10-21 - 3:05:26 PM GMT

Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 3:05:26 PM GMT- IP address: 199.127.9.1

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 3:05:29 PM GMT- IP address: 199.127.9.1

Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:05:29 PM GMT

**Prime Clerk**        POWERED BY  Adobe Sign

**United States Bankruptcy Court, Northern District of California**

<table>
<tr><td colspan="2">Fill in this information to identify the case (Select only one Debtor per claim form):</td></tr>
<tr><td>☐</td><td>PG&E Corporation (19-30088)</td></tr>
<tr><td>☒</td><td>Pacific Gas and Electric Company (19-30089)</td></tr>
</table>

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
| --- | --- |

| | |
| --- | --- |
| 1. **Who is the current creditor?** | Mid-Jersey Trucking Industry & Local No. 701 Pension Fund<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Lowenstein Sandler LLP<br>Attn: Michael S. Etkin & Andrew Behlmann<br>One Lowenstein Drive<br>Roseland, NJ 07068<br><br>Contact phone  973-597-2500<br>Contact email  973-597-2400 | **Where should payments to the creditor be sent?** (if different)<br><br><br>Contact phone _____<br>Contact email _____ |
| 4. **Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known)_____  Filed on _____<br>                                                   MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 121 of 166

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ Unliquidated (see addendum)

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 122 of 166

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).     $_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).     $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.     $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Andrew David Behlmann |
| | First name     Middle name     Last name |
| Title | Counsel |
| Company | Lowenstein Sandler LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | One Lowenstein Drive |
| | Number     Street |
| | Roseland     NJ     07068 |
| | City     State     ZIP Code |
| Contact phone | 973-597-2332     Email   abehlmann@lowenstein.com |

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 123 of 166

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do **not** have supporting documentation.

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 124 of 166

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Page 124 of 165

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 125 of 166

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

| Do not file these instructions with your form |
| --- |

1  **LOWENSTEIN SANDLER LLP**          **MICHELSON LAW GROUP**
   Michael S. Etkin *(pro hac vice)*     Randy Michelson (SBN 114095)
2  Andrew Behlmann *(pro hac vice)*      220 Montgomery Street, Suite 2100
   One Lowenstein Drive                  San Francisco, California 94104
3  Roseland, New Jersey 07068

4  *Bankruptcy Counsel to Claimant*      *Bankruptcy Counsel to Claimant*

5  **ROBBINS GELLER RUDMAN & DOWD LLP**  **ROBBINS GELLER RUDMAN & DOWD LLP**
   Darren J. Robbins (SBN 168593)        Willow E. Radcliffe (SBN 200089)
6  Brian E. Cochran (SBN 286202)         Kenneth J. Black (SBN 291871)
   655 West Broadway, Suite 1900         Post Montgomery Center
7  San Diego, California 92101           One Montgomery Street, Suite 1800
   Telephone  619-231-1058               San Francisco, California 94104
8  darrenr@rgrdlaw.com                   Telephone  415-288-4545
   bcochran@rgrdlaw.com                  willowr@rgrdlaw.com
9                                        kennyb@rgrdlaw.com

   **VANOVERBEKE, MICHAUD &**
10 **TIMMONY, P.C.**
   Thomas C. Michaud
11 79 Alfred Street
   Detroit, Michigan 48201
12 Telephone  313-578-1200
   tmichaud@vmtlaw.com

13
                           *Counsel to Claimant*
14
15                **UNITED STATES BANKRUPTCY COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
16                     **SAN FRANCISCO DIVISION**

17 In re:

18 PG&E CORPORATION
                                    Case No. 19-30088 (DM) (Lead Case)
19          - and –
                                    Chapter 11
20 PACIFIC GAS AND ELECTRIC
   COMPANY,                         (Jointly Administered)
21
                   Debtors.
22

23 ☒ Affects Both Debtors
   ☐ Affects PG&E Corporation
24 ☐ Affects Pacific Gas and Electric  **ADDENDUM TO PROOF OF CLAIM**
   Company
25

26

27

28

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.     The Securities Litigation**

1.     On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]     Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]     Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2. A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**. The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.      The Claim**

3. As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**"). The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim. A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4. Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5. The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available. In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6. No payments have been made on account of the Claim.

7. The Claim is not subject to any setoff or counterclaim.

8. No security interest is held for the Claim.

9. The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.      Reservation of Rights**

10.  Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.  This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;
- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;
- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 130 of 166

sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Claimant is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.

**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT[3]**

---

[3] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

**LABATON SUCHAROW LLP**
THOMAS A. DUBBS (*pro hac vice*)
LOUIS GOTTLIEB (*pro hac vice*)
JEFFREY A. DUBBIN (#287199)
ARAM BOGHOSIAN (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: tdubbs@labaton.com
lgottlieb@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

*Counsel for Lead Plaintiff the Public Employees Retirement
Association of New Mexico and Lead Counsel for the Class*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
JAMES M. WAGSTAFFE (#95535)
FRANK BUSCH (#258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 371-0500
Email: wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE PG&E CORPORATION SECURITIES LITIGATION | Civil Action No. 3:18-cv-03509-EJD |
| | THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| | JURY TRIAL DEMANDED |

1

**TABLE OF CONTENTS**

2   I.     INTRODUCTION ............................................................................................ 1

3   II.    NATURE OF THE CASE ............................................................................... 4

4   III.   JURISDICTION AND VENUE ...................................................................... 5

5   IV.    OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ............................. 5

6          A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
               Wildfires in 2017 and Investors' Consequent Losses ...................................... 6

7

8          B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
               Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
               Losses ................................................................................................................ 8

9

10              1.   After the North Bay Fires, PG&E Continued to Make False and
                     Misleading Statements and Omissions ...................................................... 8

11              2.   PG&E's Continuing Noncompliance With Safety Regulations Caused the
                     Camp Fire .................................................................................................. 10

12

13         C. Exchange Act Claims Being Asserted ............................................................. 12

    V.     THE EXCHANGE ACT PARTIES .............................................................. 13

14

    VI.    SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

15

         A. PG&E Operates Within a Robust Legal Regime ............................................. 15

16
                1.   California Law Required PG&E to Maintain a Safe Distance Between Its
17                   Electrical Equipment and Nearby Vegetation ......................................... 15

18              2.   California Law Required PG&E to Safely Maintain Its Electrical
                     Equipment and Infrastructure .................................................................. 16

19
                3.   PG&E Is Regulated by the CPUC ........................................................... 17
20
                     (a)   CPUC's General Orders 95 and 165 Impose Strict Safety
21                         Regulations on PG&E .................................................................... 17

22                   (b)   CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
                           Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol .... 19

23
                     (c)   PG&E Must Follow CPUC's Regulations Under Penalty of Law ... 20
24
                4.   Cal Fire Is the Duly Authorized Investigative Arm of the State of
25                   California for Wildfires .............................................................................. 20

26              5.   Under California's Inverse Condemnation Law, PG&E Would Not Bear
                     the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
27                   and Prudently ............................................................................................ 21

28              6.   Federal Law Also Requires PG&E to Follow Minimum Safety Standards .......... 21

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
134 of 166

B.  PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point.............22

C.  PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period ......................................................................................24

D.  After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal.............................................................................................25

E.  PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

   1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ............................25

   2.  PG&E Concealed Its Use of Reclosers from Investors During the Class Period ..........................................................................................................27

F.  PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period...........................................28

   1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ...............28

   2.  PG&E Unsafely Flouts Safety Regulations ......................................................28

   3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 .........................................................................................30

   4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period .................................................................................................30

      (a)  PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period ............................30

      (b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards...............32

G.  Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

   1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires......................................................33

   2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire.............................................................34

      (a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations.............................................................................................34

      (b)  The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations.......................................................................37

H.  PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety Violations ................................................................................................... 38

    1.   PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety Violations Caused the Deadly Butte Fire ................................................ 38

    2.   PG&E Internally Acknowledged, Extensively Documented, and Tolerated for Years the Safety Violations that Caused the Camp Fire ..................... 39

  I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to Follow It Was a Proximate Cause of the Camp Fire ................................... 43

    1.   PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor of Shutting Off the Power ............................................................... 45

        (a)   Criterion 1: the National Fire Danger Rating System Rated Jarbo Gap as Having an "Extreme" Fire Danger Threat Level ........................... 45

        (b)   Criterion 2: the National Weather Service Declared a "Red Flag Warning" for the Area ...................................................................... 47

        (c)   Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel) Weighed in Favor of a Shutoff ................................................................ 47

        (d)   Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor of a Shutoff ................................................................................ 49

    2.   All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

        (a)   Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity Levels .................................................................................................. 52

        (b)   Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed ......... 53

        (c)   Criterion 5: Site-Specific Conditions Further Favored Shutoff ................... 54

    3.   PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed in Favor of Shutting Off the Power .................................................... 54

  J.  PG&E's Bankruptcy and Other Post-Class-Period Developments ........................... 56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS UNDER THE EXCHANGE ACT ................................................................................. 59

  A. Overview of Defendants' Fraudulent Course of Conduct ......................................... 59

  B. Defendants Made Materially False and Misleading Statements and Omissions Regarding Its Vegetation Management Activities and Compliance with Wildfire Safety Regulations Before the North Bay Fires ........................................... 61

    1.   April 29, 2015 – Misstatement No. 1 ....................................................... 61

    2.   October 16, 2015 – Misstatement No. 2 ................................................... 62

    3.   November 18, 2015 – Misstatement No. 3 ................................................ 64

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

iii

4.  October 6, 2016 – Misstatement No. 4 ................................................................. 65

5.  August 9, 2017 – Misstatement No. 5 ................................................................. 67

C.  Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ...........................................................69

1.  May 23, 2016 – Misstatement No. 6....................................................................... 70

2.  November 4, 2016 – Misstatement No. 7 .............................................................. 71

3.  May 31, 2017 – Misstatement No. 8 ...................................................................... 72

D.  After the North Bay Fires Erupted, the Truth Began to Emerge ...............................74

E.  After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ...........................................................................75

1.  October 31, 2017 – Misstatement No. 9 ................................................................ 75

2.  November 2, 2017 – Misstatement No. 10 ............................................................ 76

3.  November 2, 2017 – Misstatement No. 11 ............................................................ 79

4.  November 5, 2017 – Misstatement No. 12 ............................................................ 81

5.  May 25, 2018 – Misstatement No. 13 .................................................................... 83

F.  While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ..................................................85

1.  June 8, 2018 – Misstatement No. 14 ...................................................................... 85

2.  June 8, 2018 – Misstatement No. 15....................................................................... 87

3.  September 27, 2018 – Misstatement No. 16 .......................................................... 88

4.  October 9, 2018 – Misstatement No. 17 ................................................................ 90

5.  October 9, 2018 – Misstatement No. 18 ................................................................ 91

6.  November 8, 2018 – Misstatement No. 19 ............................................................ 92

VIII.  MATERIALITY UNDER THE EXCHANGE ACT..................................................... 93

IX.  LOSS CAUSATION UNDER THE EXCHANGE ACT ................................................. 94

A.  Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities .........................................................................................94

B.  PG&E's Safety Violations Caused the Devastating North Bay Fires.........................95

C.  PG&E's Safety Violations Caused the Devastating Camp Fire ...................................95

D.  As the Market Learned About the Effects and Extent of PG&E's Inadequate
Safety Practices, the Price of PG&E's Securities Fell Dramatically..........................96

1.  October 12, 2017 – Corrective Disclosure and/or Materialization of
Concealed Risk ..................................................................................... 96

(a)  The Market Began to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires........................................ 96

(b)  Market Commentators Confirmed the Cause of PG&E's Share Price
Decline on October 12, 2017 ....................................................... 97

2.  October 13-16, 2017 – Corrective Disclosure and/or Materialization of
Concealed Risk ..................................................................................... 99

(a)  The Market Continued to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires........................................ 99

(b)  Market Commentators Confirmed the Cause of PG&E's Share Price
Decline on October 13, 2017 ....................................................... 99

3.  December 20, 2017 – Corrective Disclosure and/or Materialization of
Concealed Risk ................................................................................... 100

(a)  The Market Continued to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires...................................... 100

(b)  Market Commentators Confirmed the Proximate Cause of PG&E's
Share Price Decline on December 20, 2017 ............................... 101

4.  May 25, 2018 – Corrective Disclosure and/or Materialization of
Concealed Risk ................................................................................... 102

(a)  The Market Continued to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires...................................... 102

(b)  Market Commentators Confirmed that the News Regarding Safety
Violations Proximately Caused PG&E's Share Price Decline on May
25-29, 2018 ................................................................................ 104

5.  June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
Risk .................................................................................................... 105

(a)  The Market Learned the Truth of PG&E's Continued, Unsafe Use of
Reclosers.................................................................................... 107

(b)  The Market Continued to Learn the Extent and Effects of PG&E's
Safety Violations and Responsibility for the North Bay Fires ................. 107

(c)  Market Commentators Confirmed that the Number and Range of
Safety Violations Proximately Caused PG&E's Share Price Decline
on June 8-11, 2018 ..................................................................... 108

6. November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ........................................................................................ 109

   (a)  The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire ............................................ 109

   (b)  Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline .......................................................... 110

7. November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ........................................................................................ 112

   (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ............................................ 112

   (b)  Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ............................................. 113

8. November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ........................................................................................ 114

   (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ............................................ 114

   (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ............................................ 115

9. November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ........................................................................................ 116

   (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ............................................ 116

   (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ............................................ 117

X.    SCIENTER UNDER THE EXCHANGE ACT ............................................. 118

A. PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations .......................... 118

B. Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It ................................................... 120

C. The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter ...................... 123

D. PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations .................................... 129

1. PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

2. PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ....................................................... 131

E. PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority .......................................... 133

F. The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors .................................................................................. 135

G. After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up ........................................ 136

H. PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ........................................................................... 140

XI. APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS .................................................. 141

XII. CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII. CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT ........................................ 144

XIV. NATURE OF THE SECURITIES ACT CLAIMS ....................................................... 151

XV. OVERVIEW OF THE SECURITIES ACT VIOLATIONS ........................................ 151

XVI. THE SECURITIES ACT PARTIES ............................................................................. 153

A. Securities Act Named Plaintiffs ........................................................................ 153

B. Bankrupt Entities .............................................................................................. 154

C. Securities Act Individual Defendants ............................................................... 154

D. Underwriter Defendants .................................................................................... 159

XVII. SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A. PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations ............................................................................................ 162

1. Overview of Laws and Regulations Governing PG&E's Operations ................. 162

2. PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ........ 164

XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS .................................................................................................................. 186

A. The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance .................................................... 187

1. The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices .......... 188

2. The Offering Documents Did Not Disclose PG&E's Investments in, Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B. The Securities Act Defendants Materially Misled Investors Regarding PG&E's Liability for Wildfires ................................................................. 203

C. PG&E's Offering Documents Misled Investors by Failing to Comply with Item 303's Disclosure Requirements and Disclosure Safety Violations ................. 208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX.    CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............. 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT .......................................... 214

XXII.  PRAYER FOR RELIEF ............................................................................................... 216

**EXHIBIT B**
**MID-JERSEY TRUCKING INDUSTRY & LOCAL NO. 701 PENSION FUND**
**TRANSACTIONS**

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 12/22/2017 | 3.3% due 03/15/2027 | 65,000 | $98.80 |
| 01/31/2018 | 4.0% due 12/01/2046 | 20,000 | $97.97 |
| 11/14/2018 | 4.75% due 02/15/2044 | 5,000 | $77.76 |
| 10/19/2015 | 6.05% due 03/01/2034 | 16,000 | $121.84 |
| 10/21/2015 | 6.05% due 03/01/2034 | 4,000 | $122.19 |
| 11/03/2015 | 6.05% due 03/01/2034 | 10,000 | $120.06 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 01/14/2019 | 3.3% due 03/15/2027 | 65,000 | $78.00 |
| 01/14/2019 | 4.0% due 12/01/2046 | 20,000 | $75.75 |
| 01/14/2019 | 4.75% due 02/15/2044 | 5,000 | $76.57 |
| 03/10/2017 | 6.05% due 03/01/2034 | 5,000 | $123.44 |
| 01/29/2018 | 6.05% due 03/01/2034 | 15,000 | $123.00 |
| 01/31/2018 | 6.05% due 03/01/2034 | 10,000 | $122.65 |

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
142 of 166

# Electronic Proof of Claim_PDK#R27386

Final Audit Report 2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA1YqYW8CGCbKcCPd7eQMxZcbihhpryujc |

## "Electronic Proof of Claim_PDK#R27386" History

📄 Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:10:58 PM GMT

📎 Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
   📎 Attachment
2019-10-21 - 3:12:36 PM GMT

📄 Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 3:12:36 PM GMT- IP address: 199.127.9.1

🖊 (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 3:12:42 PM GMT- IP address: 199.127.9.1

✅ Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:12:42 PM GMT

**Prime Clerk** POWERED BY Adobe Sign

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

☒ PG&E Corporation (19-30088)

☐ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Mid-Jersey Trucking Industry & Local No. 701 Pension Fund
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Lowenstein Sandler LLP
Attn: Michael S. Etkin & Andrew Behlmann
One Lowenstein Drive
Roseland, NJ 07068

Contact phone 973-597-2500
Contact email 973-597-2400

Where should payments to the creditor be sent? (if different)

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known)_____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ _Unliquidated (see addendum)_

**Does this amount include interest or other charges?**

☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 145 of 166

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
$_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).
$_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).
$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).
$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).
$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.
$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3: Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

Print the name of the person who is completing and signing this claim:

Name: Andrew David Behlmann
First name / Middle name / Last name

Title: Counsel

Company: Lowenstein Sandler LLP
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: One Lowenstein Drive
Number / Street
Roseland          NJ      07068
City              State   ZIP Code

Contact phone: 973-597-2332          Email: abehlmann@lowenstein.com

Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page 146 of 166

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
    (attach below)

☐ I do **not** have supporting documentation.

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Proof of Claim

United States Bankruptcy Court                                                     12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Page 147 of 165

Case: 19-30088    Doc# 14619-4    Filed: 10/24/24    Entered: 10/24/24 21:37:07    Page 148 of 166

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

**Do not file these instructions with your form**

| | | |
|---|---|---|
| 1 | **LOWENSTEIN SANDLER LLP** | **MICHELSON LAW GROUP** |
| | Michael S. Etkin *(pro hac vice)* | Randy Michelson (SBN 114095) |
| 2 | Andrew Behlmann *(pro hac vice)* | 220 Montgomery Street, Suite 2100 |
| | One Lowenstein Drive | San Francisco, California 94104 |
| 3 | Roseland, New Jersey 07068 | |
| 4 | *Bankruptcy Counsel to Claimant* | *Bankruptcy Counsel to Claimant* |
| 5 | **ROBBINS GELLER RUDMAN & DOWD LLP** | **ROBBINS GELLER RUDMAN & DOWD LLP** |
| | Darren J. Robbins (SBN 168593) | Willow E. Radcliffe (SBN 200089) |
| 6 | Brian E. Cochran (SBN 286202) | Kenneth J. Black (SBN 291871) |
| | 655 West Broadway, Suite 1900 | Post Montgomery Center |
| 7 | San Diego, California 92101 | One Montgomery Street, Suite 1800 |
| | Telephone 619-231-1058 | San Francisco, California 94104 |
| 8 | darrenr@rgrdlaw.com | Telephone 415-288-4545 |
| | bcochran@rgrdlaw.com | willowr@rgrdlaw.com |
| 9 | | kennyb@rgrdlaw.com |
| 10 | **VANOVERBEKE, MICHAUD &** | |
| | **TIMMONY, P.C.** | |
| 11 | Thomas C. Michaud | |
| | 79 Alfred Street | |
| 12 | Detroit, Michigan 48201 | |
| | Telephone 313-578-1200 | |
| 13 | tmichaud@vmtlaw.com | |

*Counsel to Claimant*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | |
| | |
| PG&E CORPORATION | Case No. 19-30088 (DM) (Lead Case) |
| | |
| - and – | Chapter 11 |
| | |
| PACIFIC GAS AND ELECTRIC COMPANY, | (Jointly Administered) |
| | |
| Debtors. | |
| | |
| ☒ Affects Both Debtors | **ADDENDUM TO PROOF OF CLAIM** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

A.    **The Securities Litigation**

1.    On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]    Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]    Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading

investors in the Debtors' securities from April 29, 2015 through November 15,

2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2.    A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**.  The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.    The Claim**

3.    As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**").  The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim.   A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4.    Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5.    The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available.   In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6.    No payments have been made on account of the Claim.

7.    The Claim is not subject to any setoff or counterclaim.

8.    No security interest is held for the Claim.

9.    The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.     Reservation of Rights**

10.  Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.  This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;
- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;
- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Claimant is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT[3]**

---

[3] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

**LABATON SUCHAROW LLP**
THOMAS A. DUBBS (*pro hac vice*)
LOUIS GOTTLIEB (*pro hac vice*)
JEFFREY A. DUBBIN (#287199)
ARAM BOGHOSIAN (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: tdubbs@labaton.com
lgottlieb@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

*Counsel for Lead Plaintiff the Public Employees Retirement*
*Association of New Mexico and Lead Counsel for the Class*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
JAMES M. WAGSTAFFE (#95535)
FRANK BUSCH (#258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 371-0500
Email: wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PG&E CORPORATION SECURITIES LITIGATION | Civil Action No. 3:18-cv-03509-EJD<br><br>THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................ 1

II.    NATURE OF THE CASE ................................................................... 4

III.   JURISDICTION AND VENUE ......................................................... 5

IV.   OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ............... 5

    A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
       Wildfires in 2017 and Investors' Consequent Losses ...................................... 6

    B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
       Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
       Losses ................................................................................................................ 8

       1. After the North Bay Fires, PG&E Continued to Make False and
          Misleading Statements and Omissions ................................................... 8

       2. PG&E's Continuing Noncompliance With Safety Regulations Caused the
          Camp Fire ............................................................................................... 10

    C. Exchange Act Claims Being Asserted .......................................................... 12

V.     THE EXCHANGE ACT PARTIES ................................................... 13

VI.   SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

    A. PG&E Operates Within a Robust Legal Regime ........................................... 15

       1. California Law Required PG&E to Maintain a Safe Distance Between Its
          Electrical Equipment and Nearby Vegetation ........................................ 15

       2. California Law Required PG&E to Safely Maintain Its Electrical
          Equipment and Infrastructure ................................................................ 16

       3. PG&E Is Regulated by the CPUC ......................................................... 17

          (a)   CPUC's General Orders 95 and 165 Impose Strict Safety
              Regulations on PG&E ................................................................. 17

          (b)   CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
              Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol ... 19

          (c)   PG&E Must Follow CPUC's Regulations Under Penalty of Law ... 20

       4. Cal Fire Is the Duly Authorized Investigative Arm of the State of
          California for Wildfires ........................................................................... 20

       5. Under California's Inverse Condemnation Law, PG&E Would Not Bear
          the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
          and Prudently ......................................................................................... 21

       6. Federal Law Also Requires PG&E to Follow Minimum Safety Standards ... 21

B. PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point ............22

C. PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period ......................................................................................24

D. After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal ....................................................................................................25

E. PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

    1. PG&E Used Reclosers to Prioritize Convenience Over Safety ..........................25

    2. PG&E Concealed Its Use of Reclosers from Investors During the Class Period ..........................................................................................................27

F. PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period ...........................................28

    1. PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ...............28

    2. PG&E Unsafely Flouts Safety Regulations .......................................................28

    3. PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ..............................................................................................30

    4. PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period .........................................................................................................30

        (a) PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period ............................30

        (b) PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards ...............32

G. Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

    1. PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires ........................................................33

    2. PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire ................................................................34

        (a) The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations ....................................................................................................34

        (b) The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations ..........................................................................37

H. PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

ii

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety
Violations ................................................................................................................38

    1.  PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety
      Violations Caused the Deadly Butte Fire .............................................................. 38

    2.  PG&E Internally Acknowledged, Extensively Documented, and Tolerated
      for Years the Safety Violations that Caused the Camp Fire ................................ 39

  I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to
     Follow It Was a Proximate Cause of the Camp Fire ..................................................43

    1.  PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor
      of Shutting Off the Power .................................................................................... 45

        (a)  Criterion 1: the National Fire Danger Rating System Rated Jarbo
            Gap as Having an "Extreme" Fire Danger Threat Level ............................ 45

        (b)  Criterion 2: the National Weather Service Declared a "Red Flag
            Warning" for the Area ................................................................................ 47

        (c)  Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel)
            Weighed in Favor of a Shutoff .................................................................. 47

        (d)  Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor
            of a Shutoff .............................................................................................. 49

    2.  All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

        (a)  Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity
            Levels ........................................................................................................ 52

        (b)  Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed ......... 53

        (c)  Criterion 5: Site-Specific Conditions Further Favored Shutoff ................... 54

    3.  PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed
      in Favor of Shutting Off the Power ..................................................................... 54

  J.  PG&E's Bankruptcy and Other Post-Class-Period Developments ............................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS
UNDER THE EXCHANGE ACT ..............................................................................................59

  A. Overview of Defendants' Fraudulent Course of Conduct ...........................................59

  B. Defendants Made Materially False and Misleading Statements and Omissions
    Regarding Its Vegetation Management Activities and Compliance with
    Wildfire Safety Regulations Before the North Bay Fires ............................................61

    1.  April 29, 2015 – Misstatement No. 1....................................................................... 61

    2.  October 16, 2015 – Misstatement No. 2 .................................................................. 62

    3.  November 18, 2015 – Misstatement No. 3 ............................................................... 64

4. October 6, 2016 – Misstatement No. 4 ................................................................. 65

5. August 9, 2017 – Misstatement No. 5 .................................................................. 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ........................................................69

1. May 23, 2016 – Misstatement No. 6 .................................................................... 70

2. November 4, 2016 – Misstatement No. 7 ............................................................ 71

3. May 31, 2017 – Misstatement No. 8 .................................................................... 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge ...............................74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ........................................................................75

1. October 31, 2017 – Misstatement No. 9 .............................................................. 75

2. November 2, 2017 – Misstatement No. 10 .......................................................... 76

3. November 2, 2017 – Misstatement No. 11 .......................................................... 79

4. November 5, 2017 – Misstatement No. 12 .......................................................... 81

5. May 25, 2018 – Misstatement No. 13 .................................................................. 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ...............................................85

1. June 8, 2018 – Misstatement No. 14 .................................................................... 85

2. June 8, 2018 – Misstatement No. 15 .................................................................... 87

3. September 27, 2018 – Misstatement No. 16 ........................................................ 88

4. October 9, 2018 – Misstatement No. 17 .............................................................. 90

5. October 9, 2018 – Misstatement No. 18 .............................................................. 91

6. November 8, 2018 – Misstatement No. 19 .......................................................... 92

VIII.   MATERIALITY UNDER THE EXCHANGE ACT ................................................... 93

IX.   LOSS CAUSATION UNDER THE EXCHANGE ACT .............................................. 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities .................................................................................................94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires ........................95

C.  PG&E's Safety Violations Caused the Devastating Camp Fire .................................95

D.  As the Market Learned About the Effects and Extent of PG&E's Inadequate
    Safety Practices, the Price of PG&E's Securities Fell Dramatically.........................96

    1.  October 12, 2017 – Corrective Disclosure and/or Materialization of
        Concealed Risk ...................................................................................... 96

        (a)  The Market Began to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires .........................................96

        (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
             Decline on October 12, 2017 ........................................................97

    2.  October 13-16, 2017 – Corrective Disclosure and/or Materialization of
        Concealed Risk ...................................................................................... 99

        (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires ......................................... 99

        (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
             Decline on October 13, 2017 ........................................................ 99

    3.  December 20, 2017 – Corrective Disclosure and/or Materialization of
        Concealed Risk ...................................................................................... 100

        (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires ......................................... 100

        (b)  Market Commentators Confirmed the Proximate Cause of PG&E's
             Share Price Decline on December 20, 2017 ................................. 101

    4.  May 25, 2018 – Corrective Disclosure and/or Materialization of
        Concealed Risk ...................................................................................... 102

        (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires ......................................... 102

        (b)  Market Commentators Confirmed that the News Regarding Safety
             Violations Proximately Caused PG&E's Share Price Decline on May
             25-29, 2018 ................................................................................. 104

    5.  June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
        Risk ...................................................................................................... 105

        (a)  The Market Learned the Truth of PG&E's Continued, Unsafe Use of
             Reclosers...................................................................................... 107

        (b)  The Market Continued to Learn the Extent and Effects of PG&E's
             Safety Violations and Responsibility for the North Bay Fires ................. 107

        (c)  Market Commentators Confirmed that the Number and Range of
             Safety Violations Proximately Caused PG&E's Share Price Decline
             on June 8-11, 2018................................................................. 108

6. November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................ 109

    (a) The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire.................................. 109

    (b) Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline.................................. 110

7. November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................ 112

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.................................. 112

    (b) Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ................................ 113

8. November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................ 114

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.................................. 114

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ................................ 115

9. November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................ 116

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.................................. 116

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ................................ 117

X. SCIENTER UNDER THE EXCHANGE ACT ............................................................ 118

A. PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations ...........................118

B. Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It .................................................120

C. The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter .........................123

D. PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations....................................................129

    1. PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

2.  PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ........................................................................ 131

E.  PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority .......................................... 133

F.  The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ........................................................................ 135

G.  After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up ...................................... 136

H.  PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ................................................................ 140

XI.     APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS ............................................... 141

XII.    CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII.   CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT ...................................... 144

XIV.    NATURE OF THE SECURITIES ACT CLAIMS ................................................ 151

XV.     OVERVIEW OF THE SECURITIES ACT VIOLATIONS ..................................... 151

XVI.    THE SECURITIES ACT PARTIES .................................................................. 153

A.  Securities Act Named Plaintiffs ...................................................... 153

B.  Bankrupt Entities ........................................................................ 154

C.  Securities Act Individual Defendants .............................................. 154

D.  Underwriter Defendants ................................................................ 159

XVII.   SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS
         162

A.  PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations .................................................................... 162

1.  Overview of Laws and Regulations Governing PG&E's Operations ............... 162

2.  PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ........ 164

XVIII.  THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS ................................................................................................. 186

A.  The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance .................................................. 187

1.  The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices ........ 188

2.   The Offering Documents Did Not Disclose PG&E's Investments in,
Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B.   The Securities Act Defendants Materially Misled Investors Regarding
PG&E's Liability for Wildfires ................................................................................203

C.   PG&E's Offering Documents Misled Investors by Failing to Comply with
Item 303's Disclosure Requirements and Disclosure Safety Violations ..................208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX.   CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............. 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT .......................................... 214

XXII.   PRAYER FOR RELIEF ................................................................................. 216

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

viii

Page 163 of 165
Case: 19-30088   Doc# 14619-4   Filed: 10/24/24   Entered: 10/24/24 21:37:07   Page
164 of 166

**MID-JERSEY TRUCKING INDUSTRY & LOCAL NO. 701 PENSION FUND TRANSACTIONS**

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 12/22/2017 | 3.3% due 03/15/2027 | 65,000 | $98.80 |
| 01/31/2018 | 4.0% due 12/01/2046 | 20,000 | $97.97 |
| 11/14/2018 | 4.75% due 02/15/2044 | 5,000 | $77.76 |
| 10/19/2015 | 6.05% due 03/01/2034 | 16,000 | $121.84 |
| 10/21/2015 | 6.05% due 03/01/2034 | 4,000 | $122.19 |
| 11/03/2015 | 6.05% due 03/01/2034 | 10,000 | $120.06 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 01/14/2019 | 3.3% due 03/15/2027 | 65,000 | $78.00 |
| 01/14/2019 | 4.0% due 12/01/2046 | 20,000 | $75.75 |
| 01/14/2019 | 4.75% due 02/15/2044 | 5,000 | $76.57 |
| 03/10/2017 | 6.05% due 03/01/2034 | 5,000 | $123.44 |
| 01/29/2018 | 6.05% due 03/01/2034 | 15,000 | $123.00 |
| 01/31/2018 | 6.05% due 03/01/2034 | 10,000 | $122.65 |

# Electronic Proof of Claim_!MBXG27386

Final Audit Report                                                              2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA8BNIcfjQUpNRvWeubNFHOHYgT3vq5V1I |

## "Electronic Proof of Claim_!MBXG27386" History

Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:07:46 PM GMT

Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
  Attachment
2019-10-21 - 3:09:23 PM GMT

Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 3:09:23 PM GMT- IP address: 199.127.9.1

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 3:09:26 PM GMT- IP address: 199.127.9.1

Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:09:26 PM GMT

Prime Clerk    POWERED BY Adobe Sign