**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:    (212) 310-8000
Fax:    (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
425 Market St., 26th Floor
San Francisco, CA 94105
Tel: (415) 496-6723
Fax: (650) 636 9251

**LATHAM & WATKINS LLP**
Joshua G. Hamilton (#199610)
(joshua.hamilton@lw.com)
Michael J. Reiss (#275021)
(michael.reiss@lw.com)
10250 Constellation Blvd., Suite 1100
Los Angeles, California  90067
Tel: 424 653 5500

**LATHAM & WATKINS LLP**
James E. Brandt (*pro hac vice*)
(james.brandt@lw.com)
1271 Avenue of the Americas
New York, NY 10020
Tel: 212 906 1200

*Attorneys for the Debtors and Reorganized Debtors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>        **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' MOTION FOR LEAVE TO APPEAL AND MEMORANDUM OF POINTS AND AUTHORITIES** |

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

Pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004, PG&E Corporation ("PG&E Corp.") and Pacific Gas and Electric Company (the "Utility"), as debtors and reorganized debtors (collectively, the "Reorganized Debtors" or "PG&E") respectfully move the District Court for leave to file an appeal from the bankruptcy court's September 19, 2024 orders overruling in part and sustaining in part PG&E's Thirty-Third and Thirty-Fourth Omnibus Objections to Securities Claims. BDkt. Nos. 14594, 14595 (together, the "September 19 Orders"). Copies of the Bankruptcy Court's memorandum opinion and its September 19 Orders are attached as Exhibits A, B, and C to this motion.

This appeal involves the same securities claims that are at issue in another case pending in this Court: *In re PG&E Corporation Securities Litigation*, 5:18-cv-03509-EJD. Once this appeal is docketed in this Court, PG&E plans to file, pursuant to Civil L.R. 3-12, a Motion to Consider Whether Cases Should Be Related.

Dated: October 24, 2024                    Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**
**KELLER BENVENUTTI KIM LLP**
**LATHAM & WATKINS LLP**

By: _/s/_ Joshua G. Hamilton
Joshua G. Hamilton

Attorneys for the Debtors and Reorganized Debtors

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................2

    A.     PG&E'S Potential Liability .......................................................2

    B.     The District Court Securities Litigation....................................3

    C.     The Bankruptcy Court Securities Litigation ...........................4

    D.     The District Court Motion To Dismiss ....................................5

QUESTIONS PRESENTED....................................................................................5

RELIEF SOUGHT ..................................................................................................5

ARGUMENT ..........................................................................................................5

I.     INTERLOCUTORY REVIEW IS WARRANTED TO RESOLVE
      CONTROLLING LEGAL QUESTIONS ...................................................6

    A.     The Court Should Review Whether The PSLRA Applies To Securities
        Claims In Bankruptcy Court ....................................................6

    B.     The Court Should Review Whether The Bankruptcy Court Committed
        Legal Error In Allowing The 2018 Exchange Offering Claims To Survive.........11

II.    INTERLOCUTORY REVIEW WOULD PROMOTE CONSISTENT
      TREATMENT OF IDENTICAL CLAIMS AND PRESERVE JUDICIAL
      RESOURCES ............................................................................................13

CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................7

*Barnes v. Edison Int'l,*
   No. 18-cv-09690, WL 2325060 (C.D. Cal Apr. 27, 2021), *aff'd Barnes v.
   Edison Int'l*, No. 21-55589, WL 822191 (9th Cir. Mar. 18, 2022) ..........................11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................7

*Bennett v. Spear,*
   520 U.S. 154 (1997) ............................................................................................7

*Bhapinderpal S. Bhangal v. Hawaiian Electric Industries, Inc. et al.,*
   No. 23-cv-04332-JSC, 2024 WL 4505465 (N.D. Cal. Oct. 15, 2024) ................9, 11

*Brem-Air Disposal v. Cohen,*
   156 F.3d 1002 (9th Cir. 1998) ..............................................................................7

*Caiafa v. Sea Containers Ltd.,*
   331 F. App'x 14 (2d Cir. 2009) ............................................................................11

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund,*
   583 U.S. 416 (2018) ............................................................................................7

*Deutsche Bank Nat. Trust Co. v. F.D.I.C.,*
   854 F. Supp. 2d 756 (C.D. Cal. 2011) ....................................................................9

*Hildes v. Arthur Andersen LLP,*
   734 F.3d 854 (9th Cir. 2013) ..........................................................................12, 13

*In re Belli,*
   268 B.R. 851 (B.A.P. 9th Cir. 2001) ....................................................................14

*In re Blendheim,*
   No. 09-10283-MLB, 2016 WL 4264058 (Bankr. W.D. Wash. Aug. 11, 2016) ..........7

*In re Cement Antitrust Litig.,*
   673 F.2d 1020 (9th Cir. 1981) ..............................................................................9

*In re City of San Bernardino,*
   260 F. Supp. 3d 1216 (C.D. Cal. 2013) ............................................................9, 13

*In re Conseco Life Ins. Cost of Ins. Litig.*,
  No. ML 04-1610 AHM, 2005 WL 5678841 (C.D. Cal. May 31, 2005)...................................9

*In re Dozier Fin., Inc.*,
  No. AP 17-80113-HB, 2018 WL 6985219 (Bankr. D.S.C. Apr. 20, 2018)...........................8

*In re HealthSouth Corp. Sec. Litig.*,
  261 F.R.D. 616 (N.D. Ala. 2009)..................................................................12

*In re Heath*,
  331 B.R. 424 (B.A.P. 9th Cir. 2005)................................................................7

*In re Levi Strauss & Co. Sec. Litig.*,
  527 F.Supp.2d 965 (N.D. Cal. 2007)...........................................................12

*In re Price*,
  79 B.R. 888 (B.A.P. 9th Cir. 1987)................................................................5

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007)..........................................................12

*In re Wells*,
  No. BAP AZ-12-1308, 2013 WL 3770810 (B.A.P. 9th Cir. July 10, 2013) .................7

*Kuenher v. Dickinson & Co.*,
  84 F.3d 316 (9th Cir. 1996) ...........................................................................9

*Loritz v. Exide Techs.*,
  No. 2:13-cv-2607-SVW, 2014 WL 4058752 (C.D. Cal. Aug. 7, 2014) ...................11

*Mishkin v. Ageloff*,
  220 B.R. 784 (S.D.N.Y. 1998) .......................................................................8

*Murphy v. I.R.S.*,
  554 B.R. 533 (D. Me. 2014) ...........................................................................5

*Raleigh v. Illinois Dep't of Revenue*,
  530 U.S. 15 (2000)..........................................................................................7

*Rubke v. Capitol Bancorp. Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) .....................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................................................1, 6, 7, 8

*Webb v. Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018) .......................................................................10

**STATUTES**

15 U.S.C.
§ 78u-4(b)...................................................................................................4
§ 78u-4(b)(1)-(2)......................................................................................1, 7
§ 78u-4(b)(2)...............................................................................................6

28 U.S.C.
§ 158(a)(3)...................................................................................................5
§ 1292(b).............................................................................................1, 5, 9, 13

**RULES**

Civ. L.R. 3-12......................................................................................................14

# INTRODUCTION

This case involves federal securities claims that originated in a purported class action brought in this Court under the Private Securities Litigation Reform Act ("PSLRA") against PG&E Corporation and Pacific Gas and Electric Company (together, "PG&E") and former PG&E officers. In January 2019, PG&E filed for Chapter 11 bankruptcy, automatically staying the claims against PG&E in this Court. Various claimants—including the named plaintiff in the district court action—then filed proofs of claim in the bankruptcy court replicating the allegations made in this Court. In September 2024, the bankruptcy court largely denied PG&E's objections to those claims on the bankruptcy-law equivalent of a motion to dismiss, based on its view that the PSLRA's pleading standards do not apply in bankruptcy court. Meanwhile, the individual defendants in the parallel litigation in this Court have filed motions to dismiss the same claims. The defendants in both courts steadfastly maintain that the claims fail on virtually identical grounds.

PG&E now seeks this Court's leave to appeal the bankruptcy court's September 2024 orders denying dismissal of those claims. The Court has broad discretion to authorize the appeal under 28 U.S.C. § 158(a)(3). It should do so for two reasons.

*First*, this case satisfies the criteria set forth in 28 U.S.C. § 1292(b), which authorizes interlocutory appeals in district court cases when (1) a district court order "involves a controlling question of law as to which there is substantial ground for difference of opinion," and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Below, the bankruptcy court committed a pure legal error when it held that the PSLRA's heightened pleading standard does not apply to federal securities claims in bankruptcy court. The court did so even though (1) the PSLRA applies to "*any* private action arising under" the federal securities laws, 15 U.S.C. § 78u-4(b)(1)-(2) (emphasis added), and governs identical claims when brought in district court; (2) Congress intended the PSLRA to establish a "uniform pleading standard" governing all securities claims, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007); and (3) other bankruptcy courts have applied the PSLRA to similar claims. The bankruptcy court's failure to apply the PSLRA tainted its evaluation of virtually every aspect of the claims asserted under the Securities Exchange Act of 1934

("Exchange Act"). Separately, the bankruptcy court also committed legal error with respect to the claims brought under the Securities Act of 1933 ("Securities Act"), incorrectly holding that claimants could validly state a Section 11 claim based on the exchange of notes originally purchased in a private offering for publicly traded notes with the exact same terms. That holding conflicts with the majority of courts that have addressed the issue, thus allowing meritless Section 11 claims to move forward.

*Second*, interlocutory appeal is warranted to ensure that the virtually identical claims that claimants have filed against PG&E and the individual defendants in the bankruptcy court and this Court are adjudicated at the same time, by the same judge, applying the same legal standards—and presumably reaching consistent results. As noted, this Court will soon consider the individual defendants' motions to dismiss Exchange Act and Securities Act claims that are based on the *exact same complaint* underlying the bankruptcy proofs of claim. Granting interlocutory review would allow those motions to be considered together with this appeal of the bankruptcy court's orders on PG&E's equivalent motions. Such review would promote fairness, eliminate the need for multiple, piecemeal appeals on virtually identical issues, and avoid the risk of contradictory results.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. PG&E'S Potential Liability

PG&E issued the equity and debt securities giving rise to the claims at issue. PG&E Corporation is a publicly traded company, and Pacific Gas and Electric Company, its wholly owned subsidiary, is a utility that provides natural gas and electricity to approximately 16 million people in California. BDkt. 14208-4, Ex. 104.[1]

Investing in public utilities like PG&E comes with obvious risks. Because providing gas and electricity is inherently dangerous, the utility can potentially incur liability, including for contributing to wildfires. Third Amended Compl. ("TAC") ¶ 2, *In re PG&E Corporation Securities Litigation* ("District Court Action"), 5:18-cv-03509-EJD (N.D. Cal. May 28, 2019),

---

[1] "BDkt. _" refers to documents filed on the docket of the above-captioned bankruptcy case.

DCt. ECF No. 121.[2]  Utilities are also highly regulated, and the labyrinth of applicable laws and regulations increases the risk of liability.  *Id.* ¶¶ 53-76.  During the period at issue, PG&E repeatedly flagged these risks to shareholders.  *See, e.g.*, BDkt. 14208-1, Exs. 1-6.

These risks ultimately materialized in historically destructive wildfires in October 2017 (the North Bay Fires) and November 2018 (the Camp Fire).  *Id.* ¶¶ 19, 21, 327, 587.  The California Department of Forestry and Fire Protection found that PG&E equipment was responsible for igniting the wildfires.  *Id.* ¶¶ 33, 579-80, 588.  PG&E estimated that its liability for the fires could exceed $30 billion.  *Id.* ¶ 179.

### B.  The District Court Securities Litigation

In June 2018, two securities complaints related to the North Bay Fires were filed in this Court against PG&E and former PG&E officers.  DCt. ECF 1; *Moretti v. PG&E et al.*, 3:18-cv-03545-VC (N.D. Cal. June 14, 2018), ECF 1.  The Court consolidated the complaints and appointed the Public Employees Retirement Association of New Mexico ("PERA") as lead plaintiff.  DCt. ECF 62.

PERA's operative complaint now alleges that between April 29, 2015 and November 15, 2018, PG&E and the individual defendants made 19 materially false or misleading statements and omissions, in violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.  TAC ¶¶ 188-316.  The allegedly false statements addressed PG&E's efforts to mitigate wildfire risk and comply with applicable regulations.  *Id.* ¶¶ 328-390.

In January 2019, PG&E filed for bankruptcy.  The District Court Action was automatically stayed as to PG&E pursuant to Section 362(a) of the Bankruptcy Code, but it proceeded against the individual defendants.

In February 2019, three retirement funds that had purchased debt securities from PG&E ("Securities Act Plaintiffs") filed a new complaint against PG&E officers, directors, and underwriters for alleged violations of Section 11 of the Securities Act.  *See* DCt. ECF 113.  PG&E was not named as a defendant, given the bankruptcy stay.

---

[2] "DCt.ECF _" refers to documents filed in the District Court Action.

1    In May 2019, all of the above claims before this Court were combined in the TAC, which

2  is the operative complaint. DCt.ECF 121. Going forward, this brief will refer to all of the district

3  court defendants as the "Individual Defendants."

### C.    The Bankruptcy Court Securities Litigation

5    In October 2019, PERA and the Securities Act Plaintiffs filed proofs of claim in PG&E's

6  bankruptcy case. Those claims expressly incorporated the TAC, including the Exchange Act and

7  Securities Act claims.[3] Other parties in the bankruptcy court adopted the TAC as the basis for

8  their claims as well.[4] And in October 2023, the law firm Rolnick Kramer Sadighi LLP ("RKS"),

9  which had filed dozens of proofs of claim alleging similar securities violations by PG&E, based

10  its claims on a "complaint" called the RKS Amendment. *See* BDkt. 14049; 14049-1.[5]

11    In December 2023, PG&E filed its 33rd and 34th Omnibus Objections to Securities Claims

12  seeking dismissal of the proofs of claim based on the TAC and the RKS Amendment. BDkt.

13  14200, 14203. Among other things, the Omnibus Objections argued that (1) proofs of claim

14  alleging Exchange Act violations should be dismissed for failure to satisfy the PSLRA's

15  heightened pleading standard, 15 U.S.C. § 78u-4(b); and (2) proofs of claim alleging Securities

16  Act violations should be dismissed based on the statute of limitations, failure to state a claim under

17  Rule 9(b), or because the debt notes were acquired in transactions that do not give rise to Section

18  11 liability.

19    In September 2024, the bankruptcy court sustained PG&E's objections in part and

20  overruled them in part. BDkt. 14593 ("Op."), 14594, 14495; Exs. A-C. In doing so, the court held

21  that the PSLRA does not apply to Exchange Act claims brought in bankruptcy court. It also

22  rejected PG&E's arguments on the Securities Act claims. Op.52.

---

[3] The proofs of claim of PERA and the Securities Act Plaintiffs can be accessed at https://restructuring.ra.kroll.com/pge/Home-ClaimInfo (search for claims "69105," "71345," "61556," "68009," "72620," 69202," and "71310"), and are attached as Exhibit D.

[4] The claim numbers for these claimants are listed in BDkt. 14200-4. An example is attached as Exhibit E (*see* Annex A, Part III).

[5] The claim numbers for RKS claimants are listed in BDkt. 14061. That document explains the process by which RKS claimants adopted the RKS amendment.

**D.     The District Court Motion To Dismiss**

On October 24, 2024, the Individual Defendants filed their motions to dismiss the TAC in this Court.  DCt.ECF 284, 286.  Many of the arguments advanced in the motions replicate those raised by PG&E in its objections in the bankruptcy court.  *See infra* at 13-14.

## QUESTIONS PRESENTED

The overarching question presented by this appeal is whether claimants have validly stated claims that PG&E is liable for violating the Exchange Act and the Securities Act.   That question implicates multiple controlling questions of law, including (1) whether the PSLRA applies to Exchange Act claims litigated in bankruptcy court, and (2) whether Section 11 of the Securities Act can be violated when unregistered securities originally purchased in a private offering are later exchanged for registered, publicly tradable securities with materially identical terms.

## RELIEF SOUGHT

PG&E seeks leave to appeal the bankruptcy court's September 19 Orders addressing PG&E's 33rd and 34th Omnibus Objections.

## ARGUMENT

District courts have broad discretion to authorize appeals of interlocutory bankruptcy court orders.  28 U.S.C. § 158(a)(3).  In deciding whether to grant review, district courts draw guidance from the test set forth in 28 U.S.C. § 1292(b), which governs certification of non-bankruptcy interlocutory appeals.  *See, e.g.*, *In re Price*, 79 B.R. 888, 889 (B.A.P. 9th Cir. 1987).  Under Section 1292(b), interlocutory review is warranted if (1) "the order involves a controlling question of law as to which there is substantial ground for difference of opinion," and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  But Section 1292(b)'s test does not directly govern bankruptcy appeals, so "there is a greater measure of flexibility [to grant review] under § 158(a)(3)."  *Murphy v. I.R.S.*, 554 B.R. 533, 534 (D. Me. 2014).

Interlocutory review is warranted here for two reasons.  *First*, the bankruptcy court's orders involve controlling questions of law regarding (1) the application of the PSLRA to securities claims brought in bankruptcy court, and (2) the application of Section 11 of the Securities Act to

a plaintiff's exchange of restricted, unregistered notes originally acquired in a private offering but then swapped for publicly tradable, registered notes with identical terms. On each question, the bankruptcy court adopted an outlier position that conflicts with decisions of other district courts, and common sense. If the bankruptcy court had correctly interpreted the law, it likely would have dismissed several of the pending claims. *Second*, interlocutory review would promote judicial efficiency by allowing this Court to address the securities claims against PG&E together with the nearly identical claims pending in the District Court Action against the Individual Defendants.

## I. INTERLOCUTORY REVIEW IS WARRANTED TO RESOLVE CONTROLLING LEGAL QUESTIONS

### A. The Court Should Review Whether The PSLRA Applies To Securities Claims In Bankruptcy Court

Interlocutory review is warranted to determine whether the PSLRA applies to claims in bankruptcy. This issue plainly satisfies Section 1292(b) because (1) the bankruptcy court's holding that the PSLRA does *not* apply is erroneous (and certainly subject to reasonable disagreement), and (2) correcting that error should result in the dismissal of multiple claims.

1. Below, the bankruptcy court assessed the validity of claimants' allegations under the Rule 12(b)(6) test, instead of under the PSLRA's heightened pleading standard. That was error. Congress enacted the PSLRA to "set[] a uniform pleading standard" for securities actions. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007). Recognizing that securities actions could be "employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law," Congress imposed "[e]xacting pleading requirements," requiring plaintiffs to state their claims "with particularity." *Id.* at 313. Most relevant here, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). To determine whether the allegations meet this threshold, the court "must engage in a comparative evaluation" of the inferences that can be "rationally drawn from the facts alleged"; a claim can survive only if the inference of scienter is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

These requirements are significantly more demanding than Rule 12(b)(6), which merely requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). By contrast, the PSLRA requires that any "inference of scienter" be "*more* than merely plausible or reasonable." *Tellabs*, 551 U.S. at 314 (emphasis added).

The bankruptcy court's refusal to apply the PSLRA's heightened standards was erroneous. Bankruptcy courts generally treat objections to proofs of claims like motions to dismiss. *See, e.g.*, *In re Heath*, 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005) (noting that proofs of claim are "commonly" "analogized to complaints" and that "objections are like motions to dismiss"); *In re Wells*, No. BAP AZ-12-1308, 2013 WL 3770810, at *2 n.2 (B.A.P. 9th Cir. July 10, 2013) (same). Treating a debtor's objection to an asserted claim like a motion to dismiss makes sense because they share the same goal: "testing the sufficiency" of the claims. *In re Blendheim*, No. 09-10283-MLB, 2016 WL 4264058, at *10 (Bankr. W.D. Wash. Aug. 11, 2016). Indeed, the bankruptcy court itself recognized that PG&E "intend[ed] to make *sufficiency objections akin to a motion to dismiss* with respect to all claims set forth in the unresolved securities proofs of claims." BDkt. 13934-1 at 9 (emphasis added).

Congress itself specified that the PSLRA governs "*any* private action arising under" the securities laws. 15 U.S.C. § 78u-4(b)(1)-(2) (emphasis added). And as the Supreme Court and Ninth Circuit have made clear, "'any' means 'any.'" *Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1004 (9th Cir. 1998) (citing *Bennett v. Spear*, 520 U.S. 154, 166 (1997)). Indeed, the Supreme Court has emphasized that the PSLRA's heightened pleading standards apply even in state court. *See Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 432-34 (2018). There is no good reason to apply those heightened pleading standards in every context except bankruptcy. Moreover, the Supreme Court has made clear that absent a contrary congressional directive, substantive rules governing the adjudication of a claim in district court carry over to bankruptcy court. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 26 (2000) (applying this principle to hold

that "the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it").

Here, there is no dispute that if the bankruptcy court Exchange Act claims were instead proceeding in district court, the PSLRA would govern. *See* B Dkt. 14353 at 18-19 (RKS conceding that the PSLRA would apply to a "civil suit" alleging the same claims). It makes no sense to apply a different standard in bankruptcy court. As explained above, Congress established a heightened pleading standard to prevent "abusive litigation" and protect law-abiding companies from costly lawsuits. *Tellabs*, 551 U.S. at 313.

Notably, other bankruptcy courts have correctly applied the PSLRA to securities claims. For example, a bankruptcy court in South Carolina recently "appl[ied] the relevant standards under Fed. R. Civ. P. 8(a), 9(b), 12(b)(6), *and the PSLRA*" to determine whether a party had stated securities claims. *In re Dozier Fin., Inc.*, No. AP 17-80113-HB, 2018 WL 6985219, at *10 (Bankr. D.S.C. Apr. 20, 2018) (emphasis added). Similarly, a bankruptcy court in New York analyzed the application of the PSLRA's discovery stay and its exceptions to a securities claim in bankruptcy. *Mishkin v. Ageloff*, 220 B.R. 784, 789-90, 792-95 (S.D.N.Y. 1998).

Below, the bankruptcy court gave no valid reason for refusing to apply the PSLRA. It emphasized that the PSLRA is "unfamiliar territory for bankruptcy courts," Op.8, but that is not grounds for not applying it. The court also briefly suggested that the PSLRA applies only to class plaintiffs, *id*. at 7-8, but nothing in the PSLRA limits its heightened pleading standard to class actions, and motions to dismiss under the PSLRA are virtually always adjudicated before motions for class certification. Although the bankruptcy court also suggested that applying the PSLRA was somehow inconsistent with its chosen procedures, Op.4-8, 11, it did not explain what it meant—or why those procedures could supersede the PSLRA. Finally, while the court stated there was "no focus by the court or the parties as to whether the PSLRA applied" earlier in the case, Op.6-7, PG&E had no obligation to raise the PSLRA before filing its Omnibus Objections to the claims.

For all these reasons, the bankruptcy court's holding that the PSLRA does not apply in bankruptcy court was legal error. At minimum, there are "substantial ground[s] for difference[s]

of opinion" on the issue, 28 U.S.C. § 1292(b), especially given the "conflicting case law" recognizing that the PSLRA *does* apply in this context. *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 854 F. Supp. 2d 756, 769 (C.D. Cal. 2011).

2. The bankruptcy court's failure to apply the PSLRA also qualifies as "controlling" under Section 1292(b), insofar as its immediate resolution "could materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (defining issue as "controlling" where its "resolution … could materially affect the outcome of litigation[.]"). An appeal advances the ultimate termination of the litigation where it "may appreciably shorten the time, effort, or expense of conducting a lawsuit," *id.* at 1027, preventing "needless expense and delay," *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996). Courts frequently find this factor satisfied where a different outcome on appeal would lead to dismissal of some or all claims. *See, e.g., In re City of San Bernardino*, 260 F. Supp. 3d 1216, 1226 (C.D. Cal. 2013); *In re Conseco Life Ins. Cost of Ins. Litig.*, No. ML 04-1610 AHM, 2005 WL 5678841, at *1 (C.D. Cal. May 31, 2005) (no need for dismissal of all claims for issue to be considered "controlling").

The bankruptcy court's refusal to apply the PSLRA tainted its entire analysis of claimants' Exchange Act claims—and especially its evaluation of the scienter allegations. Claimants allege 19 false statements made by at least six different PG&E-affiliated speakers. TAC ¶¶ 194-316. Under the PSLRA, the bankruptcy court should have evaluated claimants' scienter allegations by analyzing (1) whether the speaker of each statement would be motivated to mislead the public; (2) whether the allegations include particularized facts indicating the speakers knew that each statement was false; (3) whether each statement was so fundamental to PG&E's business that a court could infer the corporate entity had scienter; and (4) whether the inference of scienter for each statement is at least compelling as any opposing inference one could draw from the allegations. *See Bhapinderpal S. Bhangal v. Hawaiian Electric Industries, Inc. et al.*, No. 23-cv-04332-JSC, 2024 WL 4505465, at *14-16 (N.D. Cal. Oct. 15, 2024).

Instead—because the bankruptcy court refused to apply the PSLRA—it rejected PG&E's scienter arguments in three cursory paragraphs. *See* Op.33. That analysis did not even try to

address the scienter of any particular speaker with respect to any particular statement, focusing instead on generalized corporate knowledge. *See* TAC ¶¶ 194-316; *cf.* Op.32 (declining PG&E's request to analyze falsity on a "statement-by-statement" basis "because it [did] not consider the PSLRA to be controlling"). But the PSLRA allows a court to impute such knowledge to specific speakers only in "rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Webb v. Solarcity Corp.*, 884 F.3d 844, 854 (9th Cir. 2018). The bankruptcy court never addressed that test, let alone applied it. *See* TAC ¶¶ 397-403; BDkt. 14200 at 56-58; BDkt. 14453 at 21-23.

Similarly, the bankruptcy court's approach to scienter failed to consider the competing inferences raised by PG&E and assess whether they were more compelling than claimants' proposed inferences. For example, the bankruptcy court found scienter for a 2015 statement that PG&E was nearing completion of a project to disable reclosers because a non-disabled recloser was an ignition point for one of the 2017 fires. Op.33. But that does not show knowledge at the time of the statement. While one possible inference from the fire is that PG&E misrepresented its plan to disable reclosers, a more plausible inference is that PG&E intended to disable them but either missed one or did not complete the project before the fire. *See* BDkt. 14200 at 40-41; BDkt. 14453 at 13. Under the PSLRA's heightened standard, claimants' scienter allegations as to the 2015 statement would not have sufficed. But the bankruptcy court green-lighted the claim under the more lax Rule 12(b)(6) test.

Finally, the bankruptcy court's errors were not limited to scienter. Because the court declined to engage in a statement-by-statement analysis, it let obvious puffery survive. *See* Op.21-23. As just one example, the court allowed claims arising from obviously generic, unquantifiable PG&E statements like "[w]e're stepping up our vegetation management activities to mitigate wildfire risk and improve access for firefighters" to survive. TAC ¶ 194. Similarly, it refused to dismiss claims based on PG&E's statement that "We've continued to demonstrate leadership and commitment on safety. We're delivering the most reliable service in our company's history." *Id.* ¶ 233.

As these examples show, the bankruptcy court's PSLRA error was the dispositive factor allowing meritless Exchange Act claims to survive. Indeed, the bankruptcy court's ruling sharply contrasts with district courts that have relied on the PSLRA to dismiss federal securities claims against utilities based on similar allegations of misleading investors with respect to potential wildfire liability. *See Barnes v. Edison Int'l*, No. 18-cv-09690, WL 2325060, at *10 (C.D. Cal Apr. 27, 2021), *aff'd Barnes v. Edison Int'l*, No. 21-55589, WL 822191 (9th Cir. Mar. 18, 2022); *Hawaiian Electric Industries*, 2024 WL 4505465, at *1. Correcting the bankruptcy court's error here should result in dismissal of many of the Exchange Act claims against PG&E, thereby materially advancing the termination of this case. The PSLRA issue plainly satisfies Section 1292(b)'s test for interlocutory review.[6]

### B. The Court Should Review Whether The Bankruptcy Court Committed Legal Error In Allowing The 2018 Exchange Offering Claims To Survive

A subset of the Securities Act claims allege that PG&E violated Section 11 by making misstatements in the offering documents for PG&E's 2018 exchange of registered for unregistered notes. TAC ¶ 631; Op.51. The bankruptcy court erred by rejecting PG&E's argument that this theory fails as a matter of law. Op.52.

The 2018 exchange offering involved what is called an Exxon Capital exchange. In such an exchange, an investor has previously purchased—in a private offering—unregistered securities that cannot be sold on the open market; the investor later exchanges those unregistered securities for registered securities that can be publicly traded but are otherwise identical. *Loritz v. Exide Techs.*, No. 2:13-cv-2607-SVW, 2014 WL 4058752, *14 (C.D. Cal. Aug. 7, 2014). Here, claimants allege that in May 2018, they exchanged unregistered PG&E notes that they had

---

[6] The bankruptcy court committed a similar error as to the pleading standards when it declined to apply Rule 9(b) to the Securities Act claims on the grounds that "a Section 11 claim is not a fraud claim." Op.45 (citation omitted). Here, claimants' Section 11 claims *do* "sound in fraud," because they "allege[] a unified course of fraudulent conduct" with the Section 10(b) claims. *Rubke v. Capitol Bancorp. Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (applying Rule 9(b) to Section 11 claim); *see also, e.g.*, *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009). This legal question is controlling as to the Securities Act claims—and resolving it would materially advance termination of the litigation—for many of the reasons discussed above as to the PSLRA and the Exchange Act claims.

previously obtained in a private offering for registered PG&E notes with identical terms.  *See* TAC, Attachs. B & C; TAC ¶¶ 506-07; B<mark>Dkt. 14208-1 at 1757</mark>.  Claimants allege that PG&E violated Section 11 of the Securities Act by making misstatements in the offering documents for that exchange offering.  TAC ¶ 631.

Claimants' theory is legally defective:  The "majority of courts have held that [investors] who acquire their securities in an Exxon Capital exchange cannot bring § 11 claims" under the Securities Act.  *Id.*; *see, e.g.*, *In re Levi Strauss & Co. Sec. Litig.*, <mark>527 F.Supp.2d 965, 978</mark> (N.D. Cal. 2007); *In re Refco, Inc. Sec. Litig.*, <mark>503 F. Supp. 2d 611, 637</mark> (S.D.N.Y. 2007); *In re HealthSouth Corp. Sec. Litig.*, <mark>261 F.R.D. 616, 647</mark> (N.D. Ala. 2009).  That is because such investors cannot prove that misstatements made at the time of the exchange offering were material.  After all, it is always rational to exchange "unregistered [securities] for [securities] that are identical in all respects except that they are freely tradeable."  *In re Levi Strauss*, <mark>527 F. Supp. 2d at 976</mark>.  There is no downside—and only upside—associated with exchanging non-tradeable securities for otherwise-identical tradeable securities.  Accordingly, any "alleged misstatements" in a registration statement governing the exchange offering "would not have been material" to the decision to exchange the unregistered securities for the new registered ones.  *Id.* at 978.  Even if the registration statement contained misstatements and even if investors had learned the truth about them, "they would have had no reason to avoid making their holdings tradeable; on the contrary, they would have had every reason to rid themselves of the [unregistered securities] as soon as possible."  *In re Refco*, <mark>503 F. Supp. 2d at 636</mark>.[7]

If the bankruptcy court had applied this settled law, it would have dismissed claimants' Section 11 claims based on the 2018 exchange offering.  Instead, it rejected the majority view and allowed those claims to go forward.  It did so based on the Ninth Circuit's statement in *Hildes v. Arthur Andersen LLP* that a plaintiff has standing to bring a Section 11 claim if "'misrepresentations contained in the Registration Statement played a role in the causal chain that

---

[7] Investors in these circumstances cannot bring Section 11 claims based on their *initial* acquisition of the unregistered securities in a private offering, because "Section 11 liability . . . is not available for [private] offerings."  *In re Levi Strauss*, <mark>527 F. Supp. 2d at 975</mark>.

resulted in the exchange of stock.'"  Op.52 (quoting 734 F.3d 854, 862 (9th Cir. 2013)).  But the court ignored that *Hildes*—unlike this case—did not involve an Exxon Capital exchange in which alleged misrepresentations *could not have played a causal role* because any rational person would have traded unregistered securities for identical, registered ones that can be publicly traded. Indeed, *Hildes* itself distinguished Exxon Capital exchanges on precisely that basis, explaining that in such exchanges, "the unregistered bondholders would have incentive to exchange their bonds for registered ones *regardless of [the] contents of [the] registration statement*."  734 F.3d at 862 (emphasis added).  *Hildes* is thus consistent with the majority rule that there is no Section 11 liability for Exxon Capital exchanges.

The bankruptcy court's Section 11 holding readily satisfies Section 1292(b)'s test for interlocutory review.  That holding is wrong—and, at a minimum, is subject to reasonable disagreement on the grounds set forth in cases like *In re Levi Strauss* and *In re Refco*.  It is also "controlling":  Overturning it will require dismissal of claimants' Section 11 claims based on the 2018 exchange offering and will therefore "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *In re City of San Bernardino*, 260 F. Supp. 3d at 1226. Interlocutory review is warranted on this issue as well.

## II.  INTERLOCUTORY REVIEW WOULD PROMOTE CONSISTENT TREATMENT OF IDENTICAL CLAIMS AND PRESERVE JUDICIAL RESOURCES

As explained above, the motions at issue are virtually identical to the Individual Defendants' motions to dismiss now pending before the Court in the District Court Action, with the TAC at issue in both forums.  Both cases turn on virtually identical Exchange Act and Securities Act claims raised against PG&E and its senior leaders.  *See supra* at 3-5; Ex. D at 9 ("The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference."); Ex. D at 34 (same); BDkt. 14049-1 (RKS Amendment making similar allegations to TAC).  Both are now at the same threshold motion-to-dismiss stage of litigation. *See* DCt.ECF 282 (setting briefing schedule, which will be complete in January 2025).   And the arguments the Individual Defendants have made in their motions to dismiss almost entirely overlap with arguments PG&E itself made to the bankruptcy court (and hopes to make here on appeal).

1    *Compare* Dct. ECF 286 at 7-24 (arguing claimants fail to allege a false or misleading statement or

2    omission), *and* Dct. ECF 284 at 11-12, 15-19, 21-23, 25-30 (same), *with* B.Dkt 14200 at 28-53, 80-

3    85 (same); *compare* Dct. ECF 284 at 12-15, 19-24, 29-31 (arguing claimants fail to allege scienter),

4    *with* B.Dkt 14200 at 54-61 (same); *compare* Dct. ECF 286 at 28-33 (arguing various Securities Act

5    claims are time-barred), *with* B.Dkt 14200 at 77-80 (same); *compare* Dct. ECF 286 at 33-34

6    (arguing Section 11 doesn't apply to 2018 exchange offering), *with* B.Dkt 14200 at 90-91 (same).

7      In these unusual circumstances, it makes perfect sense for this Court to adjudicate the core

8    threshold issues in the two cases in tandem.  *See* Civ. L.R. 3-12 (providing for process to refer case

9    to judge presiding over related case).  Doing so will ensure that the cases are treated fairly and

10   equitably, under the same legal standards, and will eliminate the potential for inconsistent rulings

11   on key threshold issues.  It will also promote judicial economy and conserve resources.  After all,

12   this Court will necessarily have to resolve these issues in the context of the Individual Defendants'

13   motions to dismiss.  If the Court agrees with the Individual Defendants that certain claims should

14   be dismissed, that holding should carry over to the identical bankruptcy court claims against

15   PG&E.  In such circumstances, it would be a waste of time and effort for the bankruptcy court to

16   adjudicate claims that should not have survived the pleading stage.

17     Section 158(a)(3) is a flexible tool granting this Court broad discretion to authorize

18   interlocutory review when necessary to do justice and "avoid wasteful litigation and expense."  *In*

19   *re Belli*, 268 B.R. 851, 858 (B.A.P. 9th Cir. 2001).  These considerations strongly support PG&E's

20   proposed appeal.

21              **CONCLUSION**

22     This Court should grant PG&E's motion for leave to appeal.

23

24

25

26

27

28

1

2 | Dated:  October 24, 2024                          Respectfully submitted,

3

4                                                                    **WEIL, GOTSHAL & MANGES LLP**
                                                                     **KELLER BENVENUTTI KIM LLP**
5                                                                    **LATHAM & WATKINS LLP**

6                                                                    By:  _/s/ Joshua G. Hamilton_

7                                                                    Joshua G. Hamilton

8                                                                    Attorneys for the Debtors and Reorganized
9                                                                    Debtors

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A



Signed and Filed: September 18, 2024

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Bankruptcy Case |
| | ) No. 19-30088-DM |
| PG&E CORPORATION, | ) |
| | ) Chapter 11 |
| - and - | ) |
| | ) Jointly Administered |
| PACIFIC GAS AND ELECTRIC COMPANY, | ) |
| | ) |
| Reorganized Debtors | ) |
| ☐ Affects PG&E Corporation | ) |
| ☐ Affects Pacific Gas and | ) |
| Electric Company | ) |
| ☒ Affects both Debtors | ) |
| | ) |
| *All papers shall be filed in | ) |
| the Lead Case, No. 19-30088 (DM).* | ) |
| | ) |
| | ) |

**MEMORANDUM DECISION ON THIRTY-THIRD AND THIRTY-FOURTH
SECURITIES OMNIBUS CLAIMS OBJECTIONS**

I. <u>**Introduction**</u>

The court has had under submission PG&E's Thirty-Third
Securities Omnibus Claims Objection to PERA and Securities Act
Plaintiffs' TAC, Including to Certain Claimants That Adopted the
TAC ("33rd Omnibus Objection") (Dkt. 14200) and PG&E's Thirty-
Fourth Securities Claims Omnibus Objection to Claims Adopting

-1-

RKS Amendment ("34th Omnibus Objection" and together, the "Omnibus Objections"). (Dkt. 14203).[1]  Rule 3007(d)[2] permits the filing of omnibus objections.[3]

The court has considered the Omnibus Objections; Lead Plaintiff PERA and The Securities Act Plaintiffs' Response and Opposition to the Reorganized Debtors' Thirty-Third Securities Omnibus Claims Objection (Dkt. 14342); the RKS Claimants' Opposition to Reorganized Debtors' Thirty-Fourth Securities Claims Omnibus Objection to Claims Adopting the RKS Amendment (Dkt. 14353); the Omnibus Reply in Support of Reorganized Debtors' Thirty-Third and Thirty-Fourth Securities Claims Omnibus Objections ("Reply") (Dkt. 14453); the Further Reply in Support of Reorganized Debtors' Thirty-Fourth Securities Claims Omnibus Objection to Claims Adopting RKS Amendment (Dkt. 14454); the Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (filed in USDC action 3:18-cv-03509-EJD); the Amended Statement of Claim on Behalf of

---

[1] Defined terms used throughout this Memorandum Decision are found in the Glossary of Defined Terms (with some entries deleted) that accompanied the 33rd Omnibus Objections and are set forth following this discussion.

[2] Unless otherwise indicated, Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037 and Code references are to the United States Bankruptcy Code, 11 U.S.C. § 101 et. seq. B.L.R. refers to the Bankruptcy Local Rules for this district.

[3] Rule 3007(c)(6) limits omnibus objections to no more than 100 claims. Several hundred claims are the subject of the 34th Omnibus Objection and no party objected to that joinder.  The court considers that minor procedural point waived.

-2-

the RKS Claimants (Dkt. 14061-2); and the numerous filings
related to the foregoing submissions.

　　For the reasons that follow, the Omnibus Objections are
OVERRULED in part and SUSTAINED in part.  While the court does
not believe it will be necessary for PERA or the RKS Claimants
to seek to amend their respective submissions, given the breadth
of what survives the Omnibus Objections, the rules permit them
to do so.  If either does amend, the court will not consider any
renewed attempts by PG&E to dismiss at this stage.  Any
amendments to the TAC or the RKS Amendments must be filed by
**October 8, 2024.**  These matters must proceed with the pleadings
as modified by this ruling and any further amendments so
discovery, more typical pre-trial proceedings, mediation, and
then trial as necessary.

## II.　**Procedural Setting**

### 　A.　**Background**

　　The PSLRA was enacted by Congress nearly thirty years ago
to protect defendants from unfounded class actions.  As PG&E
stated:

> Congress recognized that "[p]rivate securities fraud
> actions, however, if not adequately contained, can
> be employed abusively to impose substantial costs on
> companies and individuals whose conduct conforms to
> the law." *Tellabs, Inc. v. Makor Issues & Rights,*
> *Ltd.,* 551 U.S. 308, 313 (2007). Therefore,
> "[s]etting a uniform pleading standard for § 10(b)
> actions was among Congress' objectives when it
> enacted the PSLRA." *Id.* at 320. Congress ensured
> that "[a]s a check against abusive litigation by
> private parties," the PSLRA includes "[e]xacting
> pleading requirements." *Id.* at 313.

33rd Omnibus Objection at 25.

1   PG&E is clear that the PSLRA is a shield to protect law
2   abiding companies from frivolous lawsuits from investors.  It is
3   not a sword for bankruptcy debtors to hinder claimants.
4       The original TAC was filed by PERA and other plaintiffs
5   before the bankruptcy filing.  For all practical purposes the
6   bankruptcy removed PG&E from the TAC.  Any attendant procedural
7   benefits of the PSLRA might remain in the District Court Action.
8       On May 19, 2019, PG&E filed the Motion to Set Last Day to
9   File Proofs of Claim (Dkt. 1784).  That motion sought to set a
10  bar date for filing proofs of claim by Wildfire Claimants;
11  Wildfire Subrogation Claimants; Customers, and governmental
12  units.  Proofs of Claim were not required to be filed by holders
13  of equity security interests[4] or Debt Claims[5] (without any carve-
14  out for claims relating to the purchase or sale of such a Debt
15  Claim).  The motion did not mention any claim for securities
16  fraud as later alleged in the TAC or the RKS Amendment.
17      The court initially set a claims bar date of October 21,
18  2019 (Dkt. 2806).  Proofs of claim on behalf of the class
19  described in the TAC were duly filed October 21, 2019 (Proof of
20  Claim Nos. 72193, 72273).  On December 19, 2019, PERA filed a

21  _____

22  [4] Sec. V. a. (o)(7) stated: ". . . *provided, however,* that if any
    such holder asserts a claim (as opposed to an ownership
23  interest) against the Debtors (including a claim relating to an
    equity interest or the purchase or sale of such equity
24  interest), a Standard Proof of Claim must be filed on or before
25  the Bar Date." (Emphasis in original).

26  [5] Sec. V. a. (o)(7) defines a Debt Claim as one that "is limited
    exclusively to the repayment of principal, interest, and other
27  fees and expenses under any agreements governing any prepetition
    unsecured revolving credit loan, term loan, notes, bonds,
28  debentures, or other debt securities, in each case, issued by or
    on behalf of the Debtors . . . ."

                            -4-

Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim (Dkt. 5042), which PG&E opposed (Dkt. 5369).  PG&E insisted that the proof of claim process was superior to PERA's proposal. After further briefing, the court sided with PG&E, and instead of proceeding with a Rule 7023 class action as requested by PERA, set a new bar date of April 16, 2020, for what the court's Order defined as Securities Claimants, and broadened the types of claims that could be filed by the extended bar date (Dkt. 5943).[6]

In the rounds of briefing and supplemental briefing, the only time the PSLRA was even mentioned was by Mr. Etkin, counsel for PERA, at the hearing on PERA's Motion to Apply Bankruptcy Rule 7023 to Class Proof of Claim.  Mr. Etkin's mention of the PSLRA stay indicates that he believed the PSLRA's stay on discovery applied during the pendency of a motion to dismiss a class action lawsuit arising under the statute. (Dkt. 5562, p. 92).  While PERA may have believed the PSLRA to apply to its proposed class, PG&E at no point suggested the heightened pleading standards of the PSLRA would apply to its proposed

---

[6] Exhibit B to that order included the following prominent notice:

IMPORTANT COURT ORDERED NOTICE
YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY HAVE PURCHASED OR ACQUIRED SECURITIES OF PG&E CORPORATION, PACIFIC GAS AND ELECTRIC COMPANY, OR BOTH, FROM APRIL 29, 2015 THROUGH NOVEMBER 15, 2018 (INCLUSIVE) AND MAY BE ENTITLED TO A RECOVERY IN THE PG&E CHAPTER 11 CASES.
YOU HAVE BEEN GIVEN ADDITIONAL TIME BY THE BANKRUPTCY COURT TO FILE A CLAIM IN THE PG&E CHAPTER 11 CASES FOR RESCISSION OR DAMAGES BASED UPON YOUR PURCHASE OR ACQUISITION OF SUCH SECURITIES. IF YOU WISH TO FILE SUCH A CLAIM, PLEASE FOLLOW THE INSTRUCTIONS BELOW.

–5–

claims objection process that, again, was strictly in opposition to a proposed class process.

An amended Plan was confirmed on June 20, 2020 (Dkt. 8053). On September 29, 2020, PERA filed a second motion to apply Rule 7023 and certify a class of the thousands of securities claims (Dkt. 9152). The court again sided with PG&E and denied that motion as well (Dkt. 10020), and instead entered an Order Approving Securities ADR and Related Procedures for Resolving Subordinated Securities Claim (Dkt. 10015). That order approved detailed Securities Claim Procedures, along with Securities Omnibus Objection Procedures. That order also provided that to the extent there were unresolved objections after settlement negotiations and mediation, "merits-based objections . . . will be made pursuant to section 502 of the Bankruptcy Code and consistent with Rule 3007 of the Federal Rules of Bankruptcy Procedure." (Dkt. 10015, Ex. A at 3). The only reference to the PSLRA was in a footnote.[7]

In short, PG&E designed and supported the procedures that the court implemented over the objections of PERA. Yet now, PG&E seeks to use the PSLRA as a shield notwithstanding the fact that PG&E chose bankruptcy and the now well-established Securities Claim Procedures. PG&E must continue with rather than frustrate these procedures.

On July 28, 2023, the court entered the Order Authorizing Amendment and Objection Procedures for Securities Claims (Dkt.

---

[7] "The Reorganized Debtors believe that this information is necessary to calculate potential damages (and therefore potential settlement amounts) under 15 U.S.C. § 78u-4(e) of the PSLRA" (Dkt. 10015, Ex. A-1 at fn.1)).

-6-

13934) (the "Objections Procedures Order").  The Objections Procedures Order was agreed to by RKS (but not PERA). The Objections Procedures Order states in Para. 10(b) of Exhibit A: "While the motions to dismiss set forth in the above paragraph are pending, the parties will agree to meet and confer on certain procedures for coordination of discovery should such discovery be necessary after the motions to dismiss are decided by the Court".  Discovery was not to take place until motions to dismiss the claims were decided.

In the summer of 2023, there was no focus by the court or the parties as to whether the PSLRA even applied.  As the situation has progressed, it is evident that PG&E was of the view that the PSLRA should apply and therefore a stay of discovery was appropriate.

Later the court issued the *Order Denying Requests for Limited Discovery* (Dkt. 14292) on January 25, 2024 and included its explanation about timing discovery after the sufficiency objections were ruled upon.[8]

The opposition by PERA and RKS in their subsequent filings demonstrate that the underlying premise of the applicability of the PSLRA must be reconsidered.  Indeed, the court never formally held that it did apply.  It is particularly inappropriate to use in opposition to claims that have been

---

[8] In the oral ruling, the court stated: "PERA . . . and RKS, their claims will survive the sufficiency on their own face (sic)), on their strength of themselves, not on the weakness of what they believe exists in PG&E's defenses. Those will be tested after the sufficiency objections are favorably disposed of in favor of the claimants and will not be at all relevant if the sufficiency objections are sustained." Dkt. 14293, at 50:17-23.

–7–

filed against debtors in bankruptcy court, and not in opposition to actions filed by class plaintiffs against it, as contemplated by the PSLRA.

The court cannot and will not depart from the traditional procedure of deferring any disputed fact questions until after completion of appropriate discovery. The PSLRA is unfamiliar territory for bankruptcy courts to navigate and this court will not venture there.

**B.  Bankruptcy Court Objections vs PSLRA**

This case appears to be one of first impression, namely, where the Bankruptcy Court has been called upon to alter the Claims Procedures Order mid-stream and invoke the PSLRA.

There are very few reported cases of bankruptcy courts dealing head-on with the PSLRA. In its Reply, PG&E cites only *Mishkin v. Ageloff,* 220 B.R. 784 (S.D.N.Y. 1998) and *In re Dozier Fin., Inc.,* 2018 WL 6985219 (Bankr. D.S.C. Apr. 20, 2018). PG&E also cites in a footnote two other cases that appear to have the same intersection and were cited by RKS as well: *In re Tronox Inc.,* 2010 WL 1849394 (Bankr. S.D.N.Y. May 6, 2010) and *In re Recoton Corp.,* 307 B.R. 751 (Bankr. S.D.N.Y. 2004). None of these cases reflect the situation at hand.

In *Mishkin*, an SIPC trustee filed an adversary proceeding in the Bankruptcy Court and sought relief from the PSLRA's stay of discovery against the defendant under 15 U.S.C. § 78u-4(b)(3)(B). *Mishkin*, 220 B.R. at 789. The Bankruptcy Court granted such a stay, but the District Court reversed, pointing out that the trustee had not met his burden of showing undue prejudice as a result of that stay. *Id.* Unrelated to the

-8-

merits, but not to go unnoticed, the District Court withdrew the reference of that adversary proceeding, thus apparently terminating involvement of the Bankruptcy Court. *Id.* at 799-801.

In *Recoton*, a creditors' committee sought to proceed under Rule 2004. *Recoton,* 307 B.R. at 751. Respondents argued that the PSLRA and discovery under the Securities Litigation Uniform of Standards Act of 1998 prohibited such discovery. *Id.* The Bankruptcy Court overruled the objections, in part because no action had even been commenced against the defendant. *Id.* at 757-58.

In *Tronox*, the same bankruptcy judge who decided *Recoton* a few years earlier dealt with an attempt by plaintiffs to extend the time for filing a class proof of claim. *Tronox,* 2010 WL 1849394. The ruling that the PSLRA did not regulate the filing of class claims in Bankruptcy Court is again, of no relevance to the present dispute.

Finally, in *Dozier*, the Bankruptcy Court contended with the defendants' argument that a complaint did not comply with the heightened standards of the PSLRA. *Dozier*, 2018 WL 6985219. In overruling that objection, the court indicated its satisfaction that the plaintiff had adequately alleged securities violations and found that the defendants' attack on the merits of those claims were not appropriate at the Rule 7012(b)(6) stage. *Dozier*, 2018 WL 6985219 at *10.

## C. <u>Traditional Claims Objections Procedures</u>

Under Section 502(a), "A claim or interest, proof of which is filed under Section 501 . . . is deemed allowed, unless a

-9-

party in interest . . . objects." Thus, all proofs of claim
included within the TAC and RKS Amendment were deemed allowed
until the Omnibus Objections were filed. After that, the
provisions of BLR 3007-1(b) come into play. Under that Local
Rule, when a factual dispute is involved, the initial hearing on
the objection shall be deemed a status conference. Where an
objection involves only a matter of law, the matter may be
argued and decided at the initial hearing.

The TAC contains six claims for relief, four of which are
directed at PG&E. In its entirety, it includes 706 numbered
paragraphs spanning 216 pages. The RKS Amendment covers 195
pages of text and 673 numbered paragraphs. It consists of five
claims for relief, all against PG&E.

Albeit with differing pleading standards, the Omnibus
Objections are taken as motions to dismiss the TAC and the RKS
Amendment. Generally, the standard for a motion to dismiss a
pleading under Rule 7012(b)(6), which incorporates Fed. R. Civ.
P. ("FRCP") 12(b)(6), is that a plaintiff must plead "enough
facts to state a claim to relief that is plausible on its face."
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility
standard is not akin to a probability requirement, but it asks
for more than a sheer possibility that a defendant has acted
unlawfully." *Id*. This regime applies to Securities Act
violations complained of here.

-10-

The standards for overcoming a motion to dismiss under the Exchange Act are higher, incorporating FRCP 12(b)(6) and 9(b) because of the fraud allegations, requiring "exacting pleading standards" and more particularity as to the claims plead than the standard of FRCP 12(b)(6) alone. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). No matter the standard, all facts asserted in the claims must be assumed to be true, and the court must determine whether those facts amount to a plausible claim for relief.

In the context of this matter, at PG&E's urging, the court stayed the discovery process when it allowed a dual track of potential class certification and claims objections to move forward (Dkt. 14292). That means all that is in front of this court are the claims in the TAC and RKS amendments, subject to the Securities Act or Exchange Act plausibility standards, and not the more rigorous ones of the PSLRA set against conflicting facts as alleged by PG&E.

Thus, in this context, when either pleading standard leads to conflicting evidence, that evidence cannot be resolved at the motion/objection stage. It is of note that to rebut the presumption of truth in the pleading does not create a presumption of falsity; rather, it underscores the fact that material fact questions must be determined after discovery, summary judgment and perhaps trial.

With that in mind, the court rejects the notion that the Omnibus Objections (as for alleged Exchange Act violations) must meet the higher pleading standards of the PSLRA, although they must meet the plausibility standards of FRCP 12(b)(6). Stated

Case: 19-30088 Doc# 14629-1 Filed: 09/10/24 Entered: 09/10/24 19:27:03 Page 1 of 278

otherwise, the claims made in the TAC and RKS Amendment must be plausible, meaning that they must be sufficient to pass muster of the threshold requirements of the applicable provisions of the Exchange Act and the Securities Act as discussed below.

**III.  Summary of Claims**

As noted above, PERA and RKS assert two different types of causes of action asserted under two different statutory schemes:

First are the Exchange Act claims.  These claims originate under the Securities Exchange Act of 1934 and are based on equity interests purchased by Securities Fraud claimants.  The thrust of the Exchange Act claims are that PG&E's false statements regarding safety practices during the Alleged Relevant Period led to artificially inflated prices of shares purchased by the Exchange Act Claimants.  Once those false statements and concealed safety failures came to light in the wake of the various wildfires eventually found by California's Department of Forestry and Fire Protection ("Cal Fire") to be caused by PG&E, the prices of those shares sharply dropped several times and resulted in harm to the claimants.

Next are the Securities Act claims, asserted by purchasers of debt securities purchased during the Notes and Exchange Offerings.  These claims allege that the disclosures related to those Offerings materially misled investors as to the risk of wildfire, that risk's impact on PG&E's business, the sufficiency PG&E's actions undertaken to prevent wildfires, and PG&E's liability with respect to potential wildfires.  Liability under this law does not require scienter, nor in some cases, reliance.

-12-

It is also restricted by a shorter statute of limitations than the Exchange Act.

These claims were either paid or left in place under the Confirmed Plan, but as with the Exchange Act claims, the individual damage amounts remain undetermined.

**IV. Merits – Specific Legal Challenges**

    **A. Statute of Limitations on Section 11 Claims Based on the Notes and Exchange Offerings**

Section 11 of the Securities Act imposes civil liabilities on those involved in the making of a false registration statement. 15 U.S.C. § 77k. Claims to enforce this section must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." Otherwise, the claims are time barred. 15 U.S.C. § 77m.[9]

This means that the Securities Act Plaintiffs' and RKS Claimants' Section 11 claims could be time-barred, because the TAC[10] itself states that the misrepresentations were beginning to become clear in 2017 after the North Bay Fires. PG&E points to Paragraph 321 of the TAC, which discusses artificially inflated stock price levels that reached a high on September 11, 2017,

---

[9] Cases construing securities fraud statute of limitations defense deal more often with the two-year period for Exchange Act claims, rather than the one-year period for Securities Act claims, but the analysis is the same.

[10] Because Debtors assert the RKS Claimants have plead the same facts as in the TAC, and because Debtors' argument in the 33rd Omnibus Objection regarding the statute of limitations are the same in the 34th Omnibus Objection, the court refers only to the TAC and not the RKS Amendment for efficiency.

-13-

"a month before **the truth started to emerge** on October 12, 2017"
(emphasis added). PG&E contends that the one-year statute of
limitations set forth in § 77m began to run in October 2017 (or
at the latest, December 2017).

The statute says what is critical is not when the truth
starts to emerge, but when that truth can or should be known
after reasonable diligence, and what that reasonable diligence
should have been is a fact-specific inquiry. That is sufficient
reason to preserve these claims here at the pleading stage.

In *In re Bare Escentuals, Inc. Securities Litig.*, 745 F.
Supp. 2d 1052 (N.D. Cal. 2010), the court declined to dismiss at
the initial pleading stage of similar allegations as those here:

> Here, in light of the various purported disclosures
> and relevant dates that plaintiffs allege, stemming
> throughout the class period — the last of which
> allegedly occurred in the October 30, 2008,
> earnings release statement — the court finds that
> resolution of the limitations issue is not
> appropriate at the pleading stage, but must be
> determined once an evidentiary record has been
> developed. Moreover, while defendants are correct
> that plaintiffs allege multiple disclosures
> beginning as early as June 5, 2007, regarding the
> exposure of defendants' fraud, plaintiffs are also
> entitled to the reasonable inference that it is the
> course of all disclosures collectively that
> ultimately placed plaintiffs on notice of the need
> to investigate for fraud — i.e., that it was no
> single disclosure that was dispositive, but rather
> all the disclosures collectively.

*Bare Escentuals*, 745 F. Supp. 2d at 1081. PG&E downplays this
case as a single district court decision,[11] but cannot avoid the

---

[11] *Bare Escentuals* is hardly a maverick case as Debtors suggest,
as it cites several other circuit and district court decisions,
as did RKS (Dkt. 14353) for the same proposition: the statute
of limitations inquiry is fact intensive.

-14-

more recent Ninth Circuit decision, *York County, et al. v. HP, Inc, et al.*, 65 F.4th 459 (9th Cir. 2023). *York County* was decided under a different federal statute of limitation but stands for the same proposition. There, the Ninth Circuit dealt with disposition of a motion to dismiss and the applicable discovery rule. It concluded that the defendant had not demonstrated that the plaintiff could have pleaded an adequate complaint prior to the critical date. It also discussed at length *Merck & Co, Inc. v. Reynolds*, 559 U.S. 633 (2010) and the tension between inquiry notice and statutory language that states accrual of a claim begins after discovery.

Here the minimal facts alleged in 2017 do not convince the court that PERA and RKS could have pleaded adequate facts prior to one year before the petition date.

PG&E's statute of limitation defense fails at this stage. For this reason, there is no need to speculate on the issues debated by PG&E and RKS about the fact that Securities Act Plaintiffs did file suit against certain PG&E officers, directors, and underwriters for Section 11 violations on February 22, 2019,[12] which was later incorporated into the TAC on May 28, 2019. Neither side mentioned that the operative law here is that Debtors filed Chapter 11 on January 29, 2019, triggering Section 108(a) and tolling the statute of limitations under the securities laws for claims against them.

---

[12] U.S.D.C. No. 19-0994, *York County, etc. v. Rambo*, was filed on February 22, 2019. It did not name Debtors as defendants as the bankruptcy case was pending then.

-15-

1    PG&E also points out that by this same time – when the

2    truth started to emerge - the TAC alleges the market became

3    aware of the truth that results in damages under the Exchange

4    Act and that the claimants cannot have it both ways.  While

5    true, the Securities Act Plaintiffs, PERA and the RKS Claims are

6    free to plead in the alternative, and their Securities Act

7    claims do not fail because of what is alleged in the Exchange

8    Act claims.

9    **B.  <u>Prior Release of Certain Bond Issues</u>**

10   PG&E argues that Plan Sections 1.180 (defining "Releasing

11   Parties" as "holders of Utility Senior Note Claims"); 1.245

12   (defining "Utility Senior Note Claims"); and 10.9(b) (listing

13   exceptions to Releasing Parties); along with Para. 56 of the

14   Confirmation Order extends to some of the affected claimants,

15   meaning that those claims have long been released and thus must

16   be dismissed.

17   PERA rightly notes that these classifications relate to

18   classes of claims for voting purposes and general plan

19   treatment.  PERA also rightly notes that prosecution of the

20   Securities Claims falls within the release exception of Section

21   10.9(b) in the Plan, excepting from release "the rights that

22   remain in effect from and after the Effective Date to enforce

23   the Plan and the Plan Documents[.]"  Here, those holding

24   Securities Claims are appropriately enforcing their rights under

25   the Plan by seeking to have their Securities Claims allowed and

26   to receive a distribution in accordance with the Plan's terms.

27   In this instance, it does appear that PG&E is conflating the

28   Plan's satisfaction of Note Claims with Securities Claims.

-16-

1      More critically, Section 1.180 of the Plan qualifies

2  "Releasing Parties" with . . . *in their capacities as such*"

3  (emphasis added).  RKS Claimants (and PERA and the Securities

4  Act Plaintiffs) are subordinated by Section 510(b) of the Code

5  and the Plan Sections listed in Exhibit A attached to this

6  Memorandum Decision.  These parties are claiming harm against

7  PG&E in the capacities as holders of securities fraud claims,

8  and as the holders of Utility Subordinated Debt Claims, which

9  were not part of any release of under Section 10.9(b) of the

10  Plan.

11      Quite apart from any wordsmithing about plan terms and

12  their definitions, the court notes the detailed notice

13  provisions quoted in footnote 6 that went to thousands of

14  claimants and produced over 8,000 fraud claims.  There can be no

15  doubt the Plan informed these claimants they were being provided

16  for, nor can there be any reason to believe the court would

17  later take back that statement and disallow those thousands of

18  claims by reading the Plan Definitions as PG&E wishes.[13]

---

[13] Note also what the Plan said about treatment of these claims:

> Plan Sec. 4.12 ("[E]ach holder of an Allowed HoldCo
> Subordinated Debt Claim shall receive Cash in an
> amount equal to such holder's Allowed HoldCo
> Subordinated Debt Claim."): Sec. 4.14 ("[E]ach holder
> of an Allowed HoldCo Rescission or Damage Claim shall
> receive a number of shares of New HoldCo Common Stock
> equal to such holder's HoldCo Rescission or Damage
> Claim Share."). Sec. 4.32 ("[E]ach holder of an
> Allowed Utility Subordinated Debt Claim shall receive
> Cash in an amount equal to such holder's Allowed
> Utility Subordinated Debt Claim."

-17-

1   Note, also, in excerpts of the Plan attached as Exhibit A,

2   that set forth the provisions of the Plan that treat the Section

3   510(b) subordinated claims and interests.

4   The PG&E's Release defense fails.

5   **V.   Merits – Critical Components of Exchange Act Claims**

6   Both the TAC and RKS Amendment assert claims under Section

7   10(b) of the Exchange Act and SEC Rule 10-5(b) promulgated

8   thereunder. The relevant elements of these claims are enumerated

9   below.

10  Both the TAC and RKS Amendment also assert claims for

11  control person liability, a violation of Section 20(a) of the

12  Exchange Act.  Section 20(a) "imposes liability on a person who

13  is in control of the person who is directly responsible for a

14  securities fraud violation." *In re Alphabet*, 1 F.4th at 701.

15  Any person who caused the direction or the management and

16  policies of the securities violator, therefore, is jointly

17  liable for the actions of the violator itself. *Id.*  This

18  liability is derivative, such that there is no individual

19  liability where there is no primary violation of the securities

20  law. *In re Genius Brands,* 97 F.4th at 1180.  Because the

21  liability is derivative, the court incorporates the claim by

22  reference in its discussion of misstatement liability below.

23  Only the RKS Amendment asserts scheme liability against

24  Debtors.  Scheme liability is the term used for violations of

25  Rule 10b-5(a) and (c), which makes it unlawful for a defendant

26  to "employ any device, scheme or artifice to defraud" or "engage

27  in any act, practice, or course of business which operates or

28  would operate as a fraud or deceit upon any person[.]" 17 CFR §

-18-

240.10b-5.   Under recent Supreme Court and Ninth Circuit
precedent, the same misstatements or omissions which may give
rise to liability under Rule 10b-5(b) may also be used to prove
a scheme to defraud under Rule 10b-5(a) and (c).  *Lorenzo v.
SEC*, 139 S. Ct. 1094, 1100 (2019) ("dissemination of false or
misleading statements with intent to defraud can fall within the
scope of subsections (a) and (c) of Rule 10b-5, as well as the
relevant statutory provisions."); *In re Alphabet, Inc.
Securities Litigation*, 1 F.4th 687, (9th Cir. 2021) ("Alphabet's
argument that Rule 10b-5(a) and (c) claims cannot overlap with
Rule 10b-5(b) statement liability claims is foreclosed by
*Lorenzo*, which rejected the petitioner's argument that Rule 10b-
5(a) and (c) "concern 'scheme liability claims' and are violated
only when conduct other than misstatements is involved.")
(internal citations omitted).  The first element of scheme
liability requires an allegation of sufficient facts to show a
defendant "committed a deceptive or manipulative act (or, in
light of *Lorenzo*, a misstatement) in furtherance of the alleged
scheme." *Borteneau v. Nikola Corp.*, *Simpson v. AOL Time Warner,
Inc.*, 452 F.3d 1040, 1047 (9th Cir. 2006) (citing *Dura Pharms.*,
544 U.S. at 341-42), *vacated on other grounds*, 519 F.3d 1041
(9th Cir. 2008).  The rest of the elements are identical to a
claim under Rule 10b-5(b).  *In re Genius Brands Int'l, Inc.
Securities Litigation*, 97 F.4th 1171, 1180 (9th Cir. 2024).

To the extent misstatement liability is plausibly alleged
as discussed below, the court holds that the same misstatements
that plausibly give rise to an allegation of that liability also
plausibly give rise to an allegation that PG&E used those

-19-

misstatements in a scheme to artificially inflate stock prices and convince claimants to purchase securities at those prices is also plausibly alleged.  Because the rest of the elements of scheme liability and misstatement liability are identical, the court addresses those elements in turn below.

PG&E argues that the Exchange Act claims under should be rejected for four independent reasons: insufficient pleading of falsity; failure to allege strong inference of scienter; no loss causation; and failure to plead reliance for purchases after October 8, 2017.

The Ninth Circuit recently repeated the familiar list of six necessary elements to allege a claim under Exchange Act Section 10(b) and Rule 10b-5(b).  *In re Genius Brands Int'l Inc. Sec. Litig.*, 97 F.4th 1171, 1180 (Ninth Cir. 2024).  This court will follow a shorthand version of that list, and eliminate any discussion of two on that list - purchase and sale of a security and economic loss - as neither has been argued by PG&E here. In short, this court must determine whether, under relevant portions of the Exchange Act, the TAC and/or the RKS Amendment adequately allege that a multitude of statements by PG&E regarding its safety practices were (1) materially misleading; (2) made with scienter; (3) were the cause of the losses suffered by investors; and (4) for those who bought shares after the North Bay Fires, that those statements highlighting renewed and revamped safety efforts were relied on by those purchasers.

### A.  Falsity

The TAC and RKS Amendment both detail nineteen alleged materially false and misleading statements or omissions by PG&E

-20-

during the relevant time period, made all the more misleading given the years-long course of conduct by PG&E that led to unsafe fire conditions, and to some of the North Bay fires directly.

The first five material statements or omissions relate to PG&E's vegetation management practices and compliance with wildfire safety regulations before the North Bay Fires, namely, that PG&E was meeting or exceeding state and federal safety practices:

1. On April 29, 2015, during a conference call with investors, then president of PG&E stated that the company "was stepping up our vegetation management activities to mitigate wildfire risk and improve access for firefighters."

2. On October 16, 2015, PG&E released its 2015 Corporate Responsibility and Sustainability Report that assured investors (and potential investors) its vegetation management practices were "in compliance with relevant laws."

3. On November 18, 2015, in sworn testimony before the California legislature, a representative of PG&E stated that the company was "just about done" implementing a program to remotely disable recloser devices (which are known ignition dangers in wildfire risk areas)[14] with a focus on high-risk areas, and

---

[14] In brief, reclosers send pulses of electricity to lines that have been downed or shut off as a quick way to re-power the lines. These recloser pulses are a known wildfire risk when conditions are too dry. TAC at 169.

-21-

that most would be taken out of service by the end of
the year with the final six reclosers to be taken out
of service in 2016.

4. On October 6, 2016, PG&E issued its 2016 Corporate
Responsibility and Sustainability Report that ensured
investors (and potential investors) again that its
vegetation management and power line inspection
practices complied with relevant laws.

5. On August 9, 2017, PG&E issued its 2017 Corporate
Responsibility and Sustainability Report that ensured
investors (and potential investors) that its
vegetation management practices complied with state
and federal laws, in particular pruning and removing
trees that grow too close to powerlines.

The TAC and the RKS Amendment both sufficiently allege that
these statements were false by using PG&E's own corrections,
including statements made by PG&E on May 25 and June 8, 2019,
that disclosed PG&E had violated multiple relevant laws at
multiple points in time.  The TAC and RKS Amendment further
sufficiently allege that Cal Fire found sufficient evidence of
PG&E's noncompliance; and that during criminal proceedings (CR-
14-0175-WHA (N.D. Cal.) Judge Alsup determined that "as of 2017,
there were 3,962 unworked trees PG&E had identified in 2016 as
hazardous with the potential" to fall into power lines,
conductors, and other PG&E equipment; and that other findings
from Judge Alsup and the Butte County DA establish that it was
PG&E's inspection failures, and failure to actually complete its

reclosure disabling program, that substantially contributed to, if not outright caused, the North Bay and Camp Fires.

The Omnibus Objections are overruled as to these five misstatements.

The next three alleged misstatements or omissions relate to PG&E's announcements that it raised common stock dividends due in large part to PG&E's progress and commitment to its safety programs:

> 6. On May 23, 2016, PG&E issued a press release titled "PG&E Corporation raises Common Stock Dividend, Highlights Progress at Annual Shareholder Meeting." That press release linked the increase to bringing PG&E's dividend in line with other utilities, and touted "continued progress on safety, reliability, and other goals . . .[former PG&E CEO] Earley said, 'We've continued to demonstrate leadership and commitment on safety. We're delivering the most reliable service in our company's history.'"
>
> 7. On November 4, 2016, PG&E hosted a conference call for analysts, during which call an executive stated "the improvements we have made in safety and reliability over the last six years have put us in a position to deliver strong financial results going forward."
>
> 8. On May 31, 2017, PG&E issued a press release titled "PG&E Corporation Raises Common Stock Dividend, Shareholders Elect Forer Secretary of Homeland Security Jeh C. Johnson to Boards of Directors." In

-23-

1     addition to announcing the raised dividend, the

2     release discussed remarks made by the CEO of the

3     company at the annual shareholders meeting that

4     highlighted the company's progress on safety among

5     other goals, and "commitment to safety and

6     operational excellence."

7  As investors, and the public, now know, PG&E had been

8 neglecting safety standards and practices over decades,

9 including the six years leading up to statements made in 2016.

10 PG&E was either not implementing those safety practices as

11 touted, or was potentially willfully ignoring those stated

12 safety practices, while explicitly tying increased share prices

13 to enhanced safety practices in the above statements.

14  These statements are sufficiently plead as misleading, and

15 the Omnibus Objections will be overruled as to these statements.

16  After the North Bay Fires in 2017, PG&E reiterated its

17 compliance with federal and state requirements in five

18 statements:

19   9. On October 31, 2017, PG&E issued a press release

20     titled "Facts About PG&E's Electric Vegetation

21     Management Efforts" that stated "PG&E follows all

22     applicable federal and state vegetation clearance

23     requirements and performs regular power line tree

24     safety activities in accordance with industry

25     standards, guidelines, and acceptable procedures that

26     help to reduce outages or fires caused by trees or

27     other vegetation."

28

10. On November 2, 2017 in a conference call with analysts, PG&E's current CEO stated that PG&E performed regular tree inspections in accordance with industry standards; that PG&E has "one of, if not, the most comprehensive vegetation management programs in the country;" that "every year, we inspect every segment of the 99,000 miles of overhead line and we clear vegetation as needed;" that wood treatment is performed as needed; that vegetation management work has been expanding since 2014; and that efforts doubled in 2016.

11. On the same conference call, further assurances to analysts were made that PG&E does patrols of overhead lines at least twice per year and as often as four times per year.

12. On November 5, 2017, in an article on its public facing website, pgecurrents.com, titled "Facts about PG&E's Wildfire Prevention Safety Efforts," PG&E ensured the public that the utility "meets or exceeds all applicable federal and state vegetation clearance requirements."

13. On May 25, 2018, in a press release issued in response to Cal Fire reports on the 2017 North Bay Fires, PG&E detailed safety practices and again stated that the utility "meets or exceeds regulatory requirements for pole integrity management" via a comprehensive database and inspection schedule.

-25-

For the reasons outlined above discussing the allegations that contradict PG&E's statements that it increased safety practices and complied with state laws, these statements are sufficiently plead as misleading and the Omnibus Objections to them are overruled.

Finally, the last six alleged statements after the North Bay Fires related to compliance with wildfire safety regulations, including PG&E's state-mandated electricity shutoff protocol:

14. On June 8, 2018, shortly after Cal Fire announced its conclusions that PG&E caused a preponderance of the North Bay Fires, PG&E issued a press release titled "PG&E Responds to Latest CAL FIRE Announcement" reiterating that "PG&E meets or exceeds regulatory requirements for pole integrity management" and that its Vegetation Management Program was "industry leading[.]"

15. The same release also stated that the prior year it launched the Community Wildfire Safety Program "to proactively turn off electric power for safety when extreme fire danger conditions occur."

16. On September 27, 2018, PG&E announced on its website and filed with the CPUC its new, legally required ESRB-8 Shutoff Protocol, listing the specific criteria it would use to determine when electricity shutoffs were necessary to prevent wildfires.

17. On October 9, 2018, after Cal Fire announced PG&E's fault for causing the Cascade Fire in 2017, PG&E

-26-

released a press release titled "PG&E Responds to Cascade Wildfire Announcement" reiterating its focus on increasing safety measures "such as working to remove and reduce dangerous vegetation, improving weather forecasting, upgrading emergency response warnings, making lines and poles stronger in high threat areas" among other precautions.

18. In the same press release, PG&E again touted its Community Wildfire Safety Program that would proactively shut off electric power in extreme fire conditions.

19. On November 9, 2018, the day the Camp Fire started, PG&E announced via its official Twitter.com account at 6:14 a.m. that it "will not proceed with plans today for a Public Safety Power Shutoff in portions of 8 Northern CA counties, as weather conditions did not warrant this safety measure."

The statements touching on general safety measures have been discussed above, and the TAC and RKS Amendment allege facts to establish that the Community Safety Program touted in the above statements was subsequently ignored in the exact conditions set forth by PG&E, leading to the Camp Fire. The statements are plausibly alleged as misleading and false.

The TAC and RKS Amendment also plausibly allege that none of these statements were true at the time of making them, and PG&E knew this—Judge Alsup called PG&Es' vegetation management practices "dismal" during its criminal proceeding; critical failures that led or contributed to the North Bay fires had not

-27-

been checked since 2014 or were caused by a nearly 100 year old pole that PG&E noted was in need of replacement in the case of the Camp Fire. Cal Fire and a criminal proceeding found that PG&E did not comply with, but rather violated multiple state regulations, and a PG&E Vegetation Program Manager admitted in April 2017 that the utility had not changed or expanded its vegetation management practices since the Butte Fire took place in 2015.

In short, the misleading statements as plead by the TAC and PERA are plausible and pass the threshold for dismissal. PG&E's Omnibus Objections regarding these statements are overruled.

The RKS Amendment goes beyond the TAC, adding eight alleged misstatements regarding wildfire safety practices:

1. On March 2, 2018, PG&E released a YouTube video in which a PG&E arborist touts the company's vegetation management practices and states "since the onset of the drought we've doubled our efforts." The video description states the video was paid for "by PG&E shareholders."

2. On March 22, 2018, PG&E issued a press release announcing its new Community Wildfire Safety Program, stating that the program will "do more over the long term to harden the electric system to reduce wildfire threats" including by "investing in stronger, coated power lines, spacing lines farther apart to prevent line-on-line contact during windstorms, and replacing wood poles with non-wood poles in the coming years."

-28-

The statement also touted an augmentation of "already
rigorous vegetation management practices."

3. On March 27, 2018, PG&E issued a press release
   touting its "industry-leading Vegetation Management
   Program, [in which] the company inspects and monitors
   every PG&E overhead electric transmission and
   distribution line each year, with some locations
   patrolled multiple times."

4. On May 3, 2018, during a conference call with
   analysts regarding PG&E's financial outlook for the
   first quarter of 2018, PG&E's then CEO stated that
   the company had more than doubled its annual spending
   for vegetation management and increased frequency of
   patrols.

5. On July 16, 2018, PG&E's Chief Operating Officer
   Nickolas Stavropoulos stated "over the last seven
   years, we have accomplished so much together on our
   journey to become one of the safest, most reliable
   energy companies in the country. As a team, we've
   worked to improve our culture, upskill our people
   and, most importantly, improve public and employee
   safety."

6. On September 27, 2018, in addition to the safety
   measures alleged by the TAC, PG&E's website and ESRB-
   8 Shutoff Protocol included the implementation of
   "[d]isabling [of] automatic reclosing of circuit
   breakers and reclosers[.]"

-29-

7. On October 1, 2018, PG&E applied to FERC for revisions to its "Transmission Owner Tariff." Part of that application was written testimony from PG&E's Senior Director of Transmission Asset Management stating that "PG&E is currently implementing four mitigations to reduce overhead conductor risk." Those mitigations described in the written testimony included increased insulator and conductor replacement. The testimony also discussed replacement of deteriorated towers.

8. On November 5, 2018, just days before the Camp Fire erupted due to PG&E's failure to shut off power in extremely dangerous conditions, during a conference call PG&E's then-CEO again touted its public safety shutoff program as part of a larger comprehensive safety program targeting wildfire areas.

The July 26, 2018 statement of Mr. Stavropoulos (No. 5) has no source, there is no context of the statement, whether it was public, widely disseminated, or meant for investors. It also appears to be a general statement of pride at the company striving on a "journey" to become one of the safest energy companies in the country. This lack of sourcing and superlative language places this statement in the realm of general puffery and is not a properly plead as a misrepresentation or false. All other statements, however, are sufficiently plead for all the reasons explained above in relation to other similar alleged misstatements by the TAC and the RKS Amendment.

-30-

PG&E argues that any of its statements regarding compliance "are reasonably interpreted to mean the PG&E's programs were designed to comply with the law, and not a warranty that at all times PG&E was compliant." Meaning that, PG&E's repeated statements that it met or exceeded state regulations was simply the company expressing an "opinion that it's program was designed to comply with the law," rather than a factual statement of its compliance. PG&E relies heavily on the analysis of *Edison I* and *Omnicare, Inc. v. Laborers Dist. Council Cont. Indus. Pension Fund*, 575 U.S. 175 (2015) to then argue that there are more stringent standards of pleading for such opinion statements. Given this more stringent standard of pleading, PG&E argues that almost all the statements relating to safety compliance are improperly plead.

The Supreme Court in *Omnicare* distinguishes opinion and fact statements, noting that "[m]ost important, a statement of fact ('the coffee is hot') expresses certainty about a thing, whereas a statement of opinion ('I think the coffee is hot') does not." *Id.* at 183. *Omnicare* stated repeatedly that "we believe we are obeying the law." *Id.* at 186. The Supreme Courted that these were statements of belief on the part of the defendant, meaning that they were statements of opinion and not fact. *Id.*

There are no such qualifiers in any of the alleged misrepresentations above (aside from Mr. Stavropoulos' statement, which the court agrees should be stricken). The court disagrees that the statements were that of opinion or that a higher pleading standard must be applied.

-31-

PG&E has argued that the court should make a statement-by-statement analysis of what they called the False and Misleading Statements Alleged in the TAC: the Camp Fire Allegations; and the False and Misleading Statements Alleged in the RKS Amendment. (Dkt. 14200-1 at 1-12; Dkt. 14203-1, at 1-5). The court will not follow the specific request because it does not consider the PSLRA to be controlling, and because it believes the analysis performed above in grouping like statements is sufficient. That said, it is worth noting that PG&E almost entirely challenges the statements for being insufficiently plead. As noted above, they are not. Statements relating to investor calls, PG&E says, were solely a "general statement of effort, corporate optimism or puffery" which are by law, not misleading and allowable. PG&E's Objection to the October 1, 2018 statement relating to the FERC application argues that the statement was not a guarantee of compliance when taken in context with the rest of the statement to FERC; that the statement was not false when made; and that PG&E had no duty to disclose unproven violations.

Repeated statements regarding all-important safety practices and standards, considering an alleged reality in which safety measures were continually and willfully underfunded or ignored, are not simply puffery or not misleading when taken in a broader context. PG&E's argument for further context from is, a cry for further discovery and fact-finding to fully flesh out that context, all which must be accomplished after this pleading stage.

-32-

1  Except for the statement by Mr. Stavropoulos, all the
2  Omnibus Objections based on the Falsity component of Exchange
3  Act claims are overruled.

4  **B.  <u>Scienter</u>**

5  The TAC recounts PG&E' own admissions in its criminal
6  proceedings that it "admitted its actual knowledge from 2015 to
7  2017 that its vegetation management practices did not comply
8  with California safety regulations on the order of thousands of
9  violations per year." TAC at 119.  For the purposes of the
10 pleading stage, the court can and will stop here.  The PG&E own
11 admitted knowledge that it did not comply with safety
12 regulations is enough to plausibly plead that those statements
13 to the contrary were made with scienter.

14 The RKS Amendment further describes other California
15 utilities disabling reclosers, and PG&E officials telling the
16 California legislature in 2015 that the utility would complete a
17 project to disable reclosers by sometime in 2016.  These
18 statements are directly contradicted by a non-disabled recloser
19 being an ignition point of at least one the North Bay Fires in
20 2017.  Such statements in the face of the complete opposite
21 actions are enough to plausibly plead that those statements to
22 the contrary were made with scienter.

23 Further, both the TAC and RKS Amendment allege that PG&E's
24 lack of safety compliance was well known within the company,
25 that the CPUC uncovered widescale falsification of safety
26 records, and PG&E's ultimate guilty plea in its criminal case
27 all establish scienter.  These assertions are all plausibly
28 alleged at this stage.

-33-

All the Omnibus Objections based on the Scienter component of Exchange Act claims are overruled.

**C.  Reliance (for Purchasers after October 17, 2017)**

**i.  Reliance based on the fraud-on-the-market presumption is adequately plead, and rebuttal evidence is not appropriate at the dismissal stage.**

Both the TAC and the RKS Amendment allege that (1) a rebuttable presumption of reliance is established based on the fraud-on-the-market-doctrine and (2) a presumption of reliance based on PG&E's omissions of fact regarding known safety failures is established. First, the fraud-on-the-market doctrine posits that:

> "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations. Because the market transmits information to the investor in the processed form of a market price, we can assume . . . that an investor relies on public misstatements whenever he "buys or sells stock at the price set by the market."" *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988)) (internal quotations omitted).

To establish the presumption, "plaintiffs must demonstrate that the alleged misrepresentations were publicly known (else how would the market take them into account?), that the stock traded in an efficient market, and that the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." *Halliburton*, 563 U.S. at 811.

Here, the TAC pleads that the statements were made via press releases and investor calls and were thus publicly known; that the stock traded on the New York Stock Exchange, an

-34-

unquestionably efficient market; and that the relevant transactions were made during the Class Period of April 29, 2015, through November 15, 2018, when the alleged misrepresentations were made, and the truth was revealed.

PG&E seeks to rebut this presumption with the truth-on-the-market doctrine. While some courts call this a doctrine and some a defense, the heart of the concept is that "if, despite [defendants'] allegedly fraudulent attempt to manipulate market price, [the truth] credibly entered the market and dissipated the effects of the misstatements, those who traded ... after the corrective statements would have no direct or indirect connection with the fraud." *Basic*, 485 U.S. at 248-49. "However, any material information which insiders fail to disclose must be transmitted to the public with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by the insiders' one-sided representations. Accordingly, the truth-on-the-market defense is intensely fact-specific, so courts rarely dismiss a complaint on this basis." *Brendon v. Allegiant Travel Co.*, 412 F.Supp.3d 1244, 1257 (D. Nev. 2019) (citing *In re Apple Computer Sec. Lit.*, 886 F.2d 1109, 1115 (9th Cir. 1989); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008) (internal citations omitted).

PG&E's heavily fact laden rebuttal demonstrates why evaluation of this defense is inappropriate at the dismissal stage and indicates that the parties' presentation and interpretation of facts are so far apart that a court needs to weigh those facts, which is not appropriate at the pleading

stage.  The TAC and RKS Amendment argue that PG&E's misleading statements and omissions led the investing (and general) public to believe that PG&E had robust and ever-improving safety policies that met or exceeded state standards, and that any fires PG&E was connected to were unfortunate but not caused by PG&E's lack of compliance with the law.  The truth that was hidden from that investing public was that PG&E had hidden its subpar and noncompliant safety practices, and that the many fires from 2015 onwards did not ignite despite PG&E's safety practices, but largely because of them.  PG&E's rebuttal dodges that distinction, and instead rests on the reporting that the potential for PG&E's financial liability for the North Bay Fires had been known since October 2017.

Which doctrine (and underlying theory of the market) will win out is for another day, when this court is able to find and weigh facts.  Until then, the Omnibus Objections based on the truth overcoming fraud-on-the-market theory of reliance are overruled.

### ii. Reliance based on the *Ute* Line of Cases is not properly plead.

The line of cases borne out of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) creates a presumption of reliance on a defendant's failure to disclose material facts that it had a duty to disclose.  This presumption cuts out the difficulties of the attempts to prove a negative. *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999).  The Ninth Circuit has "held that the presumption should not be applied to cases that allege both misstatements and omissions unless the

-36-

case can be characterized as one that primarily alleges omissions." *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2 F.4th 1199, 1204 (9th Cir. 2021) (quoting *Binder*, 184 F.3d at 1064) (internal quotations omitted).  Courts in the Ninth Circuit must characterize any action invoking this presumption as "primarily a nondisclosure case (which would make the presumption applicable), or a positive misrepresentation case (where the presumption would be unavailable)." *Volkswagen*, 2 F.4th at 1204.

As discussed above, the TAC alleges nineteen affirmative misstatements, all of which elide the alleged truth that the safety standards and programs touted by PG&E were not what PG&E made them out to be.  Even at the pleading stage, by the TAC's own language, these are misstatements, not omissions.  The presumption, afforded one conclusory sentence in the TAC and RKS Amendment (TAC at 142; RKS Amendment at 186), is not sufficiently plead and the presumption is unavailable to claimant.  Accordingly, the Omnibus Objections on reliance based on the *Ute* line of cases are sustained.

**D.  Cause**

The TAC alleges nine specific events of market price decline, the first being on October 12, 2017:

**1.  October 12, 2017**

On October 11, 2017, days after the North Bay Fires erupted, the closing price of PG&E shares was **$69.15**.  The next day, on October 12, a litigation letter sent from the CPUC to PG&E directing the company to preserve all evidence of the potential cause of the fires, "includ[ing] all failed poles,

-37-

conductors, and associated equipment from each fire event" was made public.  The letter also directed PG&E to preserve all communications related to "vegetation management, maintenance and/or tree trimming."  At the close of the day, PG&E's stock price dropped to **$64.50,** with unusually heavy trading volume of 13 million shares when a typical trading day would involve a volume of around 3.5 million.  Even so, at this point the stock remained artificially inflated.

The letter, which apparently caused the drop in stock price, is alleged only to be a protective/investigatory letter to PG&E after the devastating fires, but not an indicator either PG&E was indeed the cause of the fires or had been lying to shareholders and the general public regarding safety practices. The affected claimants do not plausibly allege that this price drop is due to the truth regarding any misleading statement by PG&E coming to light.  Stated otherwise, there is no allegation that links the price drop to any misleading or false statements by PG&E.

Accordingly, the Omnibus Objections as to this price drop are sustained.

### 2.  October 13-16, 2017

PG&E's share price opened at **$63.95** on October 13, 2017. That day, PG&E filed a form 8-K with the SEC regarding the investigation of the North Bay Fires.  In that disclosure form, PG&E stated that Cal Fire is investigating the fires, as well as PG&E's connection to the fires.  The disclosure noted PG&E's $800 million in liability insurance for potential losses and

-38-

that any liability beyond that amount could materially affect business and/or operations.

Market analysts regarded the disclosure of previously undisclosed liability insurance as a slow trickle from PG&E that it indeed expected to be held liable, at least in part, for the fires.  By the opening of the next trading day on October 16, 2017, stock prices had dropped to **$53.43** per share with unusually heavy trading.

The affected claimants plausibly allege that this price drop is associated with the new knowledge that PG&E expected to be held liable for the fires, though at this point the public did not know why PG&E held this expectation.

Accordingly, the Omnibus Objections as to this price drop are overruled.

### 3.  December 20, 2017

On this day, PG&E stock was **$51.12** per share.  After the day's trading had closed, PG&E issued a press release stating that it was suspending quarterly dividends on common stock and suspending dividends on preferred stock, given potential liability for the wildfires during an ongoing investigation and noting that under California law, the utility may be held liable for causing the fires even if it had complied with applicable laws. By the following trading day, share prices had fallen to **$44.50.**

This suspension appears to have been made because PG&E recognized potential liability, even if no wrongdoing were to be found, was likely, and there does not appear to be a causal link between the price drop any misleading statements or omissions

Case: 19-30088    Doc# 14629-1    Filed: 09/10/24    Entered: 09/10/24 13:27:05    Page 39
of 65573

1    Accordingly, the Omnibus Objections as to this price drop

2    are sustained.

3         **4.  May 25, 2018**

4    On this day, PG&E stock was $**44.66.**  Cal Fire released a

5    report stating there was evidence PG&E was the cause of four

6    North Bay Fires, and that in three of those fires, the cause was

7    PG&E's violation of state regulations regarding vegetation

8    management.  The next day, PG&E filed a form 8-K Current Report

9    with the SEC largely quoting from this report.  By the end of

10   the **29th,** stock price had fallen to **$42.34,** which was still

11   over-inflated per the TAC.

12        The TAC plausibly alleges this disclosure and drop in stock

13   price is in direct relation to findings that PG&E both caused

14   fires and violated state law in practices that led to the fires.

15        Accordingly, the Omnibus Objections as to this price drop

16   are overruled.

17        **5.  June 8, 2018**

18   On this day, PG&E stock closed at **$41.45** per share.  After

19   the markets had closed, Cal Fire released a report finding PG&E

20   responsible for twelve fires that erupted across Northern

21   California in 2017, due to alleged violations of state law, and

22   due to attempts to re-energize downed power lines, which sparked

23   the fires.  The report further stated that the investigation

24   would be turned over to appropriate county district attorneys

25   due to the alleged violations of state law.  The next trading

26   day, shares dropped to **$39.76.**

27        The TAC plausibly alleges the disclosure and drop in stock

28   price is in direct relation to findings that PG&E caused fires

-40-

and violated state law in practices that led to the fires, including practices of re-energizing utility poles automatically, when previous statements by PG&E that it would have removed all reclosures (that are the mechanism for said pole re-energization) in 2016.

Accordingly, the Omnibus Objections as to this price drop are overruled.

### 6. November 8-9, 2018

Early on November 8, the devastating Camp Fire erupted. PG&E admitted later that day that it did not follow its safety shutoff protocols (those very safety protocols touted to the public and investors earlier in the year). Late in the day, PG&E also filed a report with the CPUC that early that day it had experienced a problem with its Caribou-Palermo high-voltage transmission line on "Pulga Rd. Pulga, Butte County" only fourteen minutes before the Camp Fire began, "in the area of the Camp Fire." The report also acknowledged aerial patrol visuals from that day showed damage to the pole. As the news of the report spread, PG&E shares dropped by the closing of the markets on November 9, 2018, from **$47.80** per share to **$39.92**.

The TAC plausibly alleges that the market drop was due to PG&E's damaged poles and the fires resulting therefrom and failure to follow safety practices.

Accordingly, the Omnibus Objections as to this price drop are overruled.

### 7. November 9-12, 2018.

As noted above. By the end of November 9, 2018, PG&E stock was **$39.92** per share. As the Camp Fire continued to burn across Paradise, CA, reports emerged that PG&E knew the pole that may

Case: 19-30088 Doc# 14629-1 Filed: 09/10/24 Entered: 09/10/24 13:37:07 Page 41 of 253

have caused the fire was "sparking" and still did not shut off power to that line.  Upon the spread of the fire, and of the reporting on the sparking pole, at the end of November 12, the stock was trading at **$32.98** per share.

The TAC plausibly alleges that the market drop was due to PG&E's knowingly damaged poles and failure to follow safety practices considering that knowledge.

Accordingly, the Omnibus Objections as to this price drop are overruled.

### 8.  November 13-14, 2018

As noted above, by November 13 PG&E stock was trading around **$32.98** per share.  Then, PG&E released an updated SEC filing admitted that its revolving credit facilities were tapped and, if found liable for the Camp fire, its liability would outstrip its insurance coverage.  By the end of November 14, stock prices fell to **$25.59** per share.

It appears that this market adjustment comes from a statement on finances, and not in relation to any revealed wrongdoing of PG&E.  The TAC does not plausibly allege that this price drop was due to a market reaction to PG&E's newly revealed wrongdoing.

Accordingly, the Omnibus Objections as to this price drop are sustained.

### 9.  November 15, 2018

On this day Cal Fire announced it had identified a second ignition point of the Camp Fire that was also likely PG&E's responsibility.  PG&E's stock closed at **$17.74** that day.

The TAC plausibly alleges that the market drop was due to news that PG&E was likely responsible for not just one, but two ignition points of the Camp Fire.

-42-

Accordingly, the Omnibus Objections as to this price drop are overruled.

PG&E argues the TAC does not establish loss causation, as the burden was on PERA to "to allege that the market learned and reacted to those [false statements and omissions] themselves. This reaction, in turn, must be the cause of a plaintiff's loss." (internal citations omitted). PG&E goes on to state that none of the successive disclosures show that the market "learned and reacted to the 'very facts' allegedly misrepresented in any of the challenged statements."

Very generally, first and third price drops as plead, markets were reacting to the fires themselves and disclosures of previously available information, and not disclosures of previously hidden or unrelated information. From the fourth price drop onward (excepting the eighth drop, which was an acknowledgment of financial precarity alone), the TAC plausibly alleges that the price drops were connected to disclosures of previously hidden information or information that contradicted PG&E's own previous statements regarding safety practices and state law compliance.

Accordingly, aside from objections to one alleged misleading statement and price drops that are sustained as explained above, the Omnibus Objections to the TAC and RKS Amendment's Section 10(b) and Section 20(a) claims (which are entirely derivative of the 10(b) claims) and the RKS' Amendment's Section 10(a)-(c) claim under the Exchange Act are overruled.

-43-

## VI.  MERITS — COMPONENTS OF SECURITIES ACT CLAIMS

Section 11 of the Securities Act prohibits the publication of registration statements that "contain[] an untrue statement of a material fact or omit[] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a).  Section 15 of the Securities Act allows for control person liability—that is, any person or entity who controls an entity liable under Section 11 of the Securities Act, is liable to the same extent as the entity it controls. 15 U.S.C. § 77o.  As Section 15 liability is ultimately dependent on findings of Section 11 liability, the court only focuses on Section 11.  A plaintiff seeking relief under Section 11 of the Securities Act must have "purchased shares traceable to the allegedly defective registration statement." *Slack Technologies LLC v, Pirani*, 598 U.S. 759, 770 (2023), and that the registration statement contained materially misleading statements or omissions. 15 U.S.C. § 77k(a).  The Securities Act is "narrower" than the Exchange Act and focused "primarily on the regulation of new offerings." *Id* at 762 (internal quotations and citations omitted).

Because a successful Section 11 claim largely depends on the misrepresentations of specific offerings, it is important to remember that the specific offerings are from March 2016 (Notes Offering); December 2016 (Notes Offering); March 2017 (Notes Offering); and April 2018 (Exchange Offering, specifically an offer to exchange restricted notes from an unrelated private placement in 2017 for equivalent publicly traded notes).

PG&E's challenge to the Securities Act claims set forth various separate grounds for sustaining them.  The court has

-44-

already discussed PG&E's arguments regarding the statute of limitations and release of certain bond issues above. The court addresses the remaining components of the claims so challenged below.

**A. <u>Falsity</u>**

As a gating issue, PG&E insists, as with the Exchange Act claims, that the Section 11 claims are subject to the heightened pleading standards of Rule 9(b) because the alleged false and misleading statements sound in fraud. The court disagrees:

> Whether Rule 8(a) or 9(b) is triggered turns on the type of claim alleged (*i.e.*, the cause of action) rather than the factual allegations on which that claim is based. . . . Rule 9(b) only applies to claims that fall under the category of fraud or mistake. Because a Section 11 claim is not a fraud claim, Rule 8(a) applies. That the same factual allegations also give rise to a Rule 10b-5 claim is irrelevant to this analysis.

*In re Initial Pub. Offering Sec. Lit.*, 241 F.Supp 2d 281, 341-42 (S.D.N.Y. 2003).

Exhibit A of the TAC lists the alleged thirty-four false and misleading statements (and inferences of omissions) embedded in the Offering Documents upon which the Section 11 claims are based. The TAC bases its Section 11 claims on negligence, not fraud, and asserts that the statements regarding safety practices were false at the time when made and omitted that any increase in spending on such practices was dangerously inadequate due to PG&E's long-term neglect of such practices.

The RKS Amendment includes the same alleged false and misleading statements and inferences of omissions embedded in the Offering Documents. Like the TAC, the RKS Amendment

-45-

emphasizes, as will be discussed below, that the statements in the Offering Documents were misleading because the potential risks to investors identified in the Offering Documents had already materialized. Because the same alleged misstatements are asserted by both the TAC and RKS Amendment, references to the TAC or related documents should also be taken to reference the RKS Amendment and related documents.[15]

PG&E argues that statements concerning investment in its wildfire safety programs were not false and thus not actionable; that investors knew the risk of wildfires and the Offering Documents themselves referenced the Butte Fire as an example of wildfire risk; and that allegations that the Offering Documents were misleading because they did not disclose that PG&E's safety practices had already increased the risk of wildfires, are premised entirely on conclusions not reached until after late 2018 and 2019, meaning that the TAC fails to allege facts to show the disclosures were false when made. PG&E also argues that the Offering Documents incorporate by reference various 10-Q statements filed with the SEC that do describe real-time findings that PG&E caused certain fires, and its mounting liabilities due to those fires—meaning that there can be no misleading statements when there are documents available to investors that did reveal the truth.[16]

---

[15] The court declines to restate each alleged misstatement, and notes PG&E declined to engage in such an analysis as well.

[16] The entirety of the 10-Q statements, among other documents are found in PG&E's voluminous Request for Judicial Notice (RJN) (Dkt. 14208). PERA and RKS object to the RJN for a variety of reasons (Dkts. 14343 and 14353, respectively), namely that the documents in the RJN reach beyond the four corners of the

-46-

As for statements emphasizing increases in vegetation management and other safety practices, the Securities Plaintiffs' Opposition explains those statements "were verifiably inconsistent with and contradicted by material adverse facts that existed at the time . . ." (Dkt. 14342 at 74; see also RKS Amendment at 115). For example, internal emails from 2014 noted "the likelihood of failed structures [on the power line that caused the Camp Fire] happening is high," because the Company never replaced those structures. The court agrees that such statements created an impression that was inconsistent with real-time information. *See In re Quality Sis. Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017) (finding that statements from officers that were inconsistent with real-time financial information was materially false or misleading). This, along with pleadings in the TAC alleging that PG&E had allowed its vegetation management budget to "wither" and promoted financial incentives for field workers that discouraged active vegetation management, there is enough inconsistency alleged between the Notes Offerings real-time information that the statements are plausibly alleged as misleading.

Regarding the Offerings Documents' reference to the Butte Fire as an example of wildfire risk already known to investors, the reference was one parenthetical example of risks that could impact future financial results of the offered notes, that also included drought, climate change, natural disasters, acts of

complaints underlying the claims and thus should not be considered at the dismissal stage. The court agrees with PG&E that the documents contained in the RJN are properly considered at the pleading stage, as the TAC and RKS Amendment necessarily reference such documents.

-47-

terrorism, war, and vandalism (TAC, Ex. 1). This rebuttal from PG&E obfuscates the thrust of the TAC. The issue is not that wildfires out of anyone's control ignited. The allegation is that it was PG&E's practices that increased the risk of, or was the cause of, such fires. Whether the merits of the allegations bear out is a question for later, but the allegation itself is plausible.

PG&E argues that certain statements inadequately plead falsity because the falsity or misleading nature of the statements were "premised entirely on conclusions reached in December 2018 and later in 2019." The situation is akin to *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 949–50. In *Facebook*, the Ninth Circuit concluded that plaintiffs had adequately plead that Facebook's risk statements regarding third party security breaches in its notes offerings were false or misleading. *Id.* In reaching this conclusion, the Ninth Circuit stated: "Facebook's statement was plausibly materially misleading even if Facebook did not yet know the extent of the reputational harm it would suffer as a result of the breach: Because Facebook presented the prospect of a breach as purely hypothetical when it had already occurred, such a statement could be misleading even if the magnitude of the ensuing harm was still unknown." *Id.* Here, the risk was PG&E's diminished safety practices already increasing the risk of (and causing) wildfires. The statements are alleged to be misleading because the Offering Documents present this risk as a hypothetical, when PG&E knew at the time the risk had already arisen.

-48-

1    Regarding PG&E's argument that the Offering Documents'
2  incorporation by reference of various 10-Q statements that went
3  into more detail about PG&E's past actions and liabilities, the
4  10-Q statements appear to contradict, as opposed to supplement
5  the Offering Documents as presented.  Where the Offering
6  Documents present potential risks, the 10-Q statements discuss
7  realities.  Whether this incongruence between the 10-Q filings
8  and the rest of the Offering Documents weighs in favor of PG&E
9  or the claimants is appropriately decided at a later stage of
10  litigation.  As of now, especially considering such incongruity,
11  the statements of the Offering Documents are plausibly alleged
12  as misleading for the reasons outline above.
13    Accordingly, the TAC and RKS Amendment plausibly allege
14  that the Offering Documents contained misleading statements and
15  omissions.
16    For similar reasons, allegations that PG&E violated
17  Regulation S-K under the Securities Act are plausibly alleged.
18  These SEC Rules require notes issuers to disclose "known trends
19  and uncertainties," 17 C.F.R. § 229.303(a)(3)(i)-(ii) (currently
20  § 229.303(b)(2)(ii)) and within its own caption titled "'Risk
21  Factors' [provide] a discussion of the material factors that
22  make an investment in the registrant or offering speculative or
23  risky." 17 C.F.R. § 229.105(a). PG&E may have disclosed the
24  trend of climate change and increasingly dry conditions, but not
25  the trend of prolonged lack of investment in safety, which the
26  TAC plausibly alleges was a known practice by PG&E over many
27  years leading up to the proposed Class Period in the TAC which
28

-49-

could have made the offerings more speculative or risky than initially disclosed.

Accordingly, the Omnibus Objections regarding falsity in the Offering Documents under various portions of the Securities Act are overruled.

### B. Reliance by Certain Claimants

PG&E argues that certain claimants, whom PG&E terms "aftermarket purchasers", fail to plead reliance as required of such purchasers, citing 15 U.S.C. 77k(a); *In re Metro.Sec. Litig.*, 532 F.Supp.2d 1260 (E.D. Wash. 2007); *Lee v. Ernst & Young, LLP*, 294 F.3d 969, 977 (8th Cir. 2002) (explaining that alleging reliance is "a requirement for certain aftermarket purchasers").

Establishing reliance is a requirement for plaintiffs who purchased the security in question "after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement." 15 U.S.C. 77k(a). The affected claimants argue that "Rule 8 does not require plaintiffs to plead the elements of a claim" including reliance, *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 342. Thus, the element of reliance is not gating at the pleading stage in this case. When reliance must be proven, the affected claimants will need to do so through legitimate inferences of reliance on the face of the TAC. In other words, the TAC argues that the issue of reliance is a matter of proof they must sustain, not a burden of pleading at this point, and is thus not an issue to be decided at this time.

-50-

1    Likewise, RKS Claimants argue that 75% of its purchasers

2 have no statutory requirement of reliance at all, as the Notes

3 purchases were made within twelve months of the Notes Offerings.

4 Because PG&E's challenge as to reliance applies only to a small

5 subset of RKS Claimants, RKS argues this issue of reliance

6 should be disposed of on a claimant-by-claimant basis after

7 discovery has been completed.

8    The court agrees with the Securities Act Claimants and RKS.

9 Given the omnibus nature of the objections process that was

10 proposed by PG&E and the very few claimants that must prove

11 reliance, "this is precisely the kind of issue that lends itself

12 to a full claimant by claimant factual record before

13 disposition." (RKS Amendment, Dkt. 14353 at 85).  Further, the

14 court cannot penalize the affected claimants for not pleading an

15 element that is not required by Fed. R. Civ. P. 8.

16    Accordingly, PG&E's attempt to eliminate certain claimants

17 for failure to plead reliance fails and the Omnibus Objections

18 based on failure to plead reliance are overruled.  Those

19 claimants who must prove reliance as to their claims may do so

20 as a part of their proof at trial or on any dispositive pre-

21 trial motion.

22    **C.  Claims Based on the 2018 Exchange Offering**

23    As noted above, the April 2018 Offering was an Exchange

24 Offering, exchanging restricted private notes for public notes.

25 PG&E argues that because the basis of exchange was for private

26 notes, and Section 11 liability is not available for private

27 offerings, claims based on the 2018 Exchange Offering fail as a

28 matter of law.  *See In re Levi Strauss & Co. Sec. Litig.*, 527

-51-

F.Supp. 2d 965, 975 (N.D. Cal. 2007). "Because the unregistered bondholders had already invested in [unregistered] bonds through the [private] offerings, they were not presented with the decision of whether or not to purchase [registered] bonds pursuant to the registration statement." *Id.* at 978.

The affected claimants argue that simply because a claimant Plaintiff participated in an exchange of previously purchased private notes for public notes in an Exchange Offering does not negate standing to bring a claim relating to misleading statements in the registration documents for that Exchange Offering. *See Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 862 (9th Cir. 2013) (plaintiff has standing if "misrepresentations contained in the Registration Statement played a role in the causal chain that resulted in the exchange of stock"). This court will follow the more recently articulated and binding precedent of Ninth Circuit as articulated in *Hildes*.

Accordingly, PG&E's attempt to eliminate claims based on the 2018 Exchange Offering fails and the Omnibus Objections based on this theory are overruled.

**D. Doctrine of "Negative Causation"**

PG&E alleges the doctrine of "negative causation" negates any statutory damages that may be available to the affected claimants meaning no economic loss can be established. The doctrine of negative causation limits statutory damages if the defendant proves the depreciation of the security in question arose from something other than the alleged misstatement or omission. "The burden to prove negative loss causation is heavy." *See, e.g. Fed. Hous. Fin. Agency v. Monura Holding Am.*,

*Inc.*, 873 F.3d 85, 153 (2nd Cir. 2017). It is thus not appropriate to evaluate an affirmative defense regarding loss causation at the pleading stage, and the court will not do so until the appropriate stage of litigation.

Accordingly, PG&E's Omnibus Objections based on failure to sufficiently plead economic loss due are overruled.

### E. <u>Statutory Damages</u>

Damages for Section 11 claims are calculated in one of three ways, "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public)" and either (1) the value of the security at the time of filing suit; (2) the value the security was disposed of before filing suit; (3) or the amount the security was disposed of after filing suit but before judgment was rendered (with caveats). 15 U.S.C. § 77k(e).

PG&E argues that while at the time of filing, there was a temporary dip in securities values, the notes at issue have since either been paid in full or were reinstated, meaning that the value of the notes has not changed and there are no statutory damages to be had.

The affected claimants argue damages are a remedy, not an element of the cause of action, and that the question of damages is so fact-intensive that it is not an appropriate question at the pleading stage. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp. 2d 1132, 1169 (C.D. Cal. 2008) ("So long as the other allegations in the complaint (and matters of which a court may take judicial notice) do not conclusively demonstrate that plaintiffs cannot prove a loss, the complaint survives a

-53-

motion to dismiss. The statute, the Ninth Circuit, and the Supreme Court do not require more."). The court agrees with this rebuttal. While it may be that they cannot prove a loss in the face of confounding factors of price drops, and PG&E has not conclusively demonstrated that a loss cannot be proven. This is a fact-finding issue not appropriate for the pleading stage.

Accordingly, the Omnibus Objections based on failure to plead damages or loss are overruled.

**VII.  CONCLUSION**

For the foregoing reasons, the 33rd Omnibus Objection and the 34th Omnibus Objection are OVERRULED IN PART AND SUSTAINED IN PART. Promptly after the issuance of this Memorandum Decision, the court will issue specific orders disposing of those Omnibus Objections for the reasons stated here.

The court will conduct a status conference on these matters on **October 22, 2024 at 10:00 AM.** The purpose of that conference will be to discuss with counsel the further conduct of the remaining securities fraud claims asserted by PERA and RKS. Prior to that time, counsel should meet and confer to discuss such matters as discovery, motions, whether any mediation efforts should be coordinated with the mediation the district court has ordered and other matters as appropriate.

One week prior to the status conference, the parties should submit updated reports concerning unresolved claims filed in their respective June 21, 2024, submissions (Dkts. 14497, 14499, and 14500).

**\*\*END OF MEMORANDUM DECISION\*\***

Case: 19-30088   Doc# 14629-1   Filed: 09/10/24   Entered: 09/10/24 19:27:06   Page 4
of 55

**Partial Glossary of Defined Terms**

| Defined Term | Definition |
|---|---|
| Alleged Relevant Period | April 29, 2015, through November 15, 2018 |
| District Court Action | *In re PG&E Corporation Securities Litigation*, No. 5:18-cv-03509 (N.D. Cal.) |
| *Edison I* | *Barnes v. Edison Int'l*, No. CV 18-09690 CBM, 2021 WL 2325060 (C.D. Cal. Apr. 27, 2021) |
| *Edison II* | *Barnes v. Edison Int'l*, No. 21-55589, 2022 WL 822191 (9th Cir. 2022) |
| Exchange Act | Securities Act of 1934, 15 U.S.C. § 78a *et seq.* |
| Exchange Offer | PG&E's April 2018 exchange offer |
| FAC | Consolidated Class Action Complaint for Violation of the Federal Securities Laws filed by PERA in the District Court Action on November 9, 2018 |
| Mid-Jersey | Mid-Jersey Trucking & Local 701 Pension Fund |
| Notes Offerings | PG&E's note offerings in March 2016, December 2016, and March 2017 |
| Offering Documents | Registration statements, prospectuses and prospectus supplements filed with the SEC in connection with the Notes Offerings and Exchange Offer |
| PERA | Public Employees Retirement Association of New Mexico |
| PG&E | PG&E Corporation and Pacific Gas and Electric Company (the "Utility") are referred to as "PG&E" solely for purposes of the Objections |
| Plan | Joint Chapter 11 Plan of Reorganization |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 |
| RKS | The law firm of Rolnick Kramer Sadighi LLP |
| RKS Amendment or RKS Am. | The Amended Statement of Claim on Behalf of the RKS Claimants |
| RKS Claimants | Claimants represented by RKS in this matter, and also any non-RKS-represented claimants that adopted, in whole or in part, the allegations in the RKS Amendment |
| SAC | Second Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws filed by PERA in the District Court Action on December 14, 2018 |

| | |
|---|---|
| Securities Act | Securities Act of 1933, 15 U.S.C. § 77a *et seq.* |
| Securities Act Plaintiffs | County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking & Local 701 Pension Fund |
| TAC | Third Amended Complaint filed by PERA and the Securities Act Plaintiffs in the District Court Action, attached as Exhibit 92 to the accompanying Request for Judicial Notice |
| Warren | City of Warren Police and Fire Retirement System |
| York | County of York Retirement Fund |

**MEMORANDUM DECISION - EXHIBIT A — EXCERPTS FROM PLAN**

**4.32 Class 10B — Utility Subordinated Debt Claims.**

(a) Treatment: In full and final satisfaction, settlement, release, and discharge of any Utility Subordinated Debt Claim, except to the extent that the PG&E or the Reorganized PG&E, as applicable, and a holder of an Allowed Utility Subordinated Debt Claim agree to a less favorable treatment of such Claim, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed Utility Subordinated Debt Claim shall receive Cash in an amount equal to such holder's Allowed Utility Subordinated Debt Claim.

(b) Impairment and Voting: The Utility Subordinated Debt Claims are Unimpaired, and the holders of Utility Subordinated Debt Claims are presumed to have accepted the Plan.

**4.14 Class 10A-II — HoldCo Rescission or Damage Claims.**

(a) Treatment: In full and final satisfaction, settlement, release, and discharge of any HoldCo Rescission or Damage Claim, except to the extent that the PG&E or the Reorganized PG&E, as applicable, and a holder of an Allowed HoldCo Rescission or Damage Claim agree to a favorable treatment of such Claim, on the Effective Date or as soon as reasonably practicable thereafter but in no event later than thirty (30) days after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim, each holder of an Allowed HoldCo Rescission or Damage Claim shall receive a number of shares of New HoldCo Common Stock equal to such holder's HoldCo Rescission or Damage Claim Share.

(b) Impairment and Voting: The HoldCo Rescission or Damage Claims are Impaired, and the holders of HoldCo Rescission or Damage Claims are entitled to vote to accept or reject the Plan.

**4.12 Class 9A — HoldCo Subordinated Debt Claims.**

(a) Treatment: In full and final satisfaction, settlement, release, and discharge of any HoldCo Subordinated Debt Claim, except to the extent that the PG&E or the Reorganized PG&E, as applicable, and a holder of an Allowed HoldCo Subordinated Debt Claim agree to a less favorable treatment of such Claim, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed HoldCo

–57–

Subordinated Debt Claim shall receive Cash in an amount equal to such holder's Allowed HoldCo Subordinated Debt Claim.

(b) Impairment and Voting: The HoldCo Subordinated Debt Claims are Unimpaired, and the holders of HoldCo Subordinated Debt Claims are presumed to have accepted the Plan.

-58-

# Exhibit B



Signed and Filed: September 19, 2024

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Bankruptcy Case |
| | ) No. 19-30088-DM |
| PG&E CORPORATION, | ) |
| | ) Chapter 11 |
|     - and - | ) |
| | ) Jointly Administered |
| PACIFIC GAS AND ELECTRIC COMPANY, | ) |
| | ) |
|     Reorganized Debtors. | ) |
| | ) |
| ☐ Affects PG&E Corporation | ) |
| ☐ Affects Pacific Gas and | ) |
|     Electric Company | ) |
| ☒ Affects both Debtors | ) |
| | ) |
| *\* All papers shall be filed in* | ) |
| *the Lead Case, No. 19-30088 (DM).* | ) |
| | ) |

**ORDER OVERRULING IN PART AND SUSTAINING IN PART**
**THIRTY-THIRD SECURITIES CLAIMS OMNIBUS OBJECTION**

For the reasons stated in the court's *Memorandum Decision on Thirty-Third and Thirty-Fourth Securities Claims Omnibus Objections* (Dkt. 14593), the Reorganized Debtors' Thirty-Third Securities Omnibus Claims Objection to PERA and Securities Act Plaintiffs' TAC, Including to Certain Claimants That Adopted the TAC (Dkt. 14200) is OVERRULED IN PART AND SUSTAINED IN PART.

-1-

1      More particularly, the Reorganized Debtors' Objections to
the following allegations in the TAC are SUSTAINED and ordered
stricken, regardless of the specific paragraph(s) they appear in
the TAC:

1.  The July 16, 2018 statements attributed to Mr.
     Stavropoulos;

2.  The October 12, 2017 price drop;

3.  The December 20, 2017 price drop;

4.  The November 13-14, 2018 price drop.

All other Objections are OVERRULED.

**\*\*END OF ORDER\*\***

-2-

COURT SERVICE LIST

1

2    ECF Recipients

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

# Exhibit C

Signed and Filed: September 19, 2024

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Bankruptcy Case |
| | ) No. 19-30088-DM |
| PG&E CORPORATION, | ) |
| | ) Chapter 11 |
|      - and - | ) |
| | ) Jointly Administered |
| PACIFIC GAS AND ELECTRIC COMPANY, | ) |
| | ) |
|     Reorganized Debtors. | ) |
| | ) |
| ☐ Affects PG&E Corporation | ) |
| ☐ Affects Pacific Gas and | ) |
|     Electric Company | ) |
| ☒ Affects both Debtors | ) |
| | ) |
| _* All papers shall be filed in_ | ) |
| _the Lead Case, No. 19-30088 (DM)._ | ) |
| | ) |

**ORDER OVERRULING IN PART AND SUSTAINING IN PART
THIRTY-FOURTH SECURITIES CLAIMS OMNIBUS OBJECTION**

For the reasons stated in the court's _Memorandum Decision
on Thirty-Third and Thirty-Fourth Securities Claims Omnibus
Objections_ (Dkt. 14593), the Reorganized Debtors' Thirty-Fourth
Securities Claims Omnibus Objection to Claims Adopting RKS
Amendment (Dkt. 14203) is OVERRULED IN PART AND SUSTAINED IN
PART.

-1-

More particularly, the Reorganized Debtors' Objections to the following allegations in the TAC are SUSTAINED and ordered stricken, regardless of the specific paragraph(s) they appear in the TAC:

1. The July 16, 2018 statements attributed to Mr. Stavropoulos;
2. The October 12, 2017 price drop;
3. The December 20, 2017 price drop;
4. The November 13-14, 2018 price drop.

All other Objections are OVERRULED.

**\*\*END OF ORDER\*\***

-2-

COURT SERVICE LIST

ECF Recipients

-3-

# Exhibit D

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

## Part 1: Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☒ No <br> ☐ Yes. From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Lowenstein Sandler LLP <br> Attn: Michael S. Etkin and Andrew Behlmann <br> One Lowenstein Drive <br> Roseland, NJ 07068 <br><br> Contact phone 973-597-2500 <br> Contact email 973-597-2400 | Contact phone _____ <br> Contact email _____ |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☒ No <br> ☐ Yes. Claim number on court claims registry (if known)_____  Filed on ___/___/___ <br> MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No <br> ☐ Yes. Who made the earlier filing? _____ |

Case: 19-30088   Doc# 14641   Filed: 10/28/24   Entered: 10/28/24 15:37:06   Page 2 of 678

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ <u>Unliquidated (see addendum)</u>

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Violations of federal securities laws (see addendum)</u>

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410         **Proof of Claim**         page 2

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No
☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Andrew David Behlmann | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Counsel | | |
| Company | Lowenstein Sandler LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | One Lowenstein Drive | | |
| | Number    Street | | |
| | Roseland | NJ | 07068 |
| | City | State | ZIP Code |
| Contact phone | 973-597-2332 | Email | abehlmann@lowenstein.com |

Case 19-30088    Doc# 4462741    Filed 10/24/24    Entered 10/24/24 15:37:06    Page 4
92 of 267

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
    (attach below)

☐ I do **not** have supporting documentation.

📎 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

| Do not file these instructions with your form |
| --- |

| | |
|---|---|
| **LABATON SUCHAROW LLP** | **LOWENSTEIN SANDLER LLP** |
| Thomas A. Dubbs | Michael S. Etkin *(pro hac vice)* |
| Louis Gottlieb | Andrew Behlmann *(pro hac vice)* |
| Carol C. Villegas | One Lowenstein Drive |
| Jeffrey A. Dubbin (SBN 287199) | Roseland, New Jersey 07068 |
| 140 Broadway | |
| New York, New York 10005 | |

*Lead Counsel to PERA*                    *Bankruptcy Counsel to PERA*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100          *Additional counsel listed on Exhibit C*
San Francisco, California 94104

*Bankruptcy Counsel to PERA*

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | |
| | |
| PG&E CORPORATION | Case No. 19-30088 (DM) (Lead Case) |
| | |
| - and – | Chapter 11 |
| | |
| PACIFIC GAS AND ELECTRIC COMPANY, | (Jointly Administered) |
| | |
| Debtors. | |
| ☒ Affects Both Debtors | **ADDENDUM TO PROOF OF CLAIM** |
| ☐ Affects PG&E Corporation | **OF PUBLIC EMPLOYEES RETIREMENT** |
| ☐ Affects Pacific Gas and Electric Company | **ASSOCIATION OF NEW MEXICO** |

Public Employees Retirement Association of New Mexico ("**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.      The Securities Litigation**

1.      On May 28, 2019, Lead Plaintiff filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[1] In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**") against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**") and (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the

---

[1]      The Debtors are named as Exchange Act Defendants in the TAC, subject to an express acknowledgment that the Securities Litigation cannot proceed against them in the District Court at this time due to the automatic stay.

1  Securities Act in connection with the Notes Offerings, for which the offering

2  documents contained thirty-four materially misleading statements.

3  2.  A true and correct copy of the cover page and table of contents of the TAC is

4  annexed hereto as **Exhibit A**.  The TAC and the allegations set forth therein are incorporated in

5  their entirety into this Proof of Claim by reference.

6  **B.  The Claim**

7  3.  As of the Petition Date, the Debtors were, and currently remain, liable to PERA in an

8  amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the

9  "**Claim**").  The facts, circumstances, acts, and omissions described in the allegations of the TAC,

10  as may be amended and/or supplemented from time to time, form the basis of the Claim.  A

11  schedule of PERA's transactions in the Debtors' securities during the Class Period is annexed

12  hereto as **Exhibit B**.

13  4.  PERA reserves the right to amend and/or supplement this Proof of Claim from time

14  to time for any appropriate purpose.

15  5.  The Claim is not founded upon a specific writing, although certain documents, too

16  voluminous and burdensome to annex hereto, which, upon information and belief, relate to the

17  violations of various laws and duties and actionable conduct by the Debtors, from which the

18  Claim arises, may be available.  In addition, certain of these documents, as well as other

19  documents, may become available through discovery with respect to the Claim and/or the

20  Securities Litigation.

21  6.  No payments have been made on account of the Claim.

22  7.  The Claim is not subject to any setoff or counterclaim.

23  8.  No security interest is held for the Claim.

24  9.  The Claim is asserted in addition to, and not in lieu of, any and all other claims that

25  PERA may have against the Debtors, the Defendants, and any other defendants now or hereafter

26  named, or that could be named, in the Securities Litigation.

27  **D.  Reservation of Rights**

28  10.  PERA reserves all rights (including but not limited to arguments, counterarguments,

and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11. This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by PERA, whether in its individual capacity or as lead plaintiff in the Securities Litigation, shall not be deemed to:

- constitute a submission by PERA to the jurisdiction of the Bankruptcy Court;
- constitute consent by PERA to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;
- waive any substantive or procedural rights of PERA, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which PERA is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights,

Case: 19-30088   Doc# 14629-1   Filed: 10/28/24   Entered: 10/28/24 25:37:07   Page
99 of 278



claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 15:37:07    Page
100 of 278



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT[2]**

---

[2] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

1   **LABATON SUCHAROW LLP**
    THOMAS A. DUBBS (*pro hac vice*)
2   LOUIS GOTTLIEB (*pro hac vice*)
    JEFFREY A. DUBBIN (#287199)
3   ARAM BOGHOSIAN (*pro hac vice*)
    140 Broadway
4   New York, New York 10005
    Telephone: (212) 907-0700
5   Facsimile: (212) 818-0477
    Email: tdubbs@labaton.com
6   lgottlieb@labaton.com
    jdubbin@labaton.com
7   aboghosian@labaton.com

8   *Counsel for Lead Plaintiff the Public Employees Retirement*
    *Association of New Mexico and Lead Counsel for the Class*
9
    **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
10  JAMES M. WAGSTAFFE (#95535)
    FRANK BUSCH (#258288)
11  100 Pine Street, Suite 725
    San Francisco, California 94111
12  Telephone: (415) 357-8900
    Facsimile: (415) 371-0500
13  Email: wagstaffe@wvbrlaw.com
    busch@wvbrlaw.com
14
    *Liaison Counsel for the Class*
15

16              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17                 **SAN FRANCISCO DIVISION**

18
19                                      Civil Action No. 3:18-cv-03509-EJD

20  IN RE PG&E CORPORATION               THIRD AMENDED CONSOLIDATED CLASS
    SECURITIES LITIGATION                ACTION COMPLAINT FOR VIOLATION OF
21                                       THE FEDERAL SECURITIES LAWS

22                                       JURY TRIAL DEMANDED

23
24
25
26
27
28

1
**TABLE OF CONTENTS**

2   I.      INTRODUCTION ................................................................................................. 1

3   II.     NATURE OF THE CASE ..................................................................................... 4

4   III.    JURISDICTION AND VENUE ............................................................................ 5

5   IV.     OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ................................. 5

6           A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
               Wildfires in 2017 and Investors' Consequent Losses ...................................... 6
7
8           B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
               Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
               Losses ................................................................................................................. 8
9
10               1.  After the North Bay Fires, PG&E Continued to Make False and
                     Misleading Statements and Omissions ..................................................... 8

11               2.  PG&E's Continuing Noncompliance With Safety Regulations Caused the
                     Camp Fire ............................................................................................... 10
12
13          C. Exchange Act Claims Being Asserted ............................................................. 12

    V.      THE EXCHANGE ACT PARTIES ..................................................................... 13
14
15  VI.     SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

16          A. PG&E Operates Within a Robust Legal Regime ............................................. 15

17               1.  California Law Required PG&E to Maintain a Safe Distance Between Its
                     Electrical Equipment and Nearby Vegetation ........................................ 15

18               2.  California Law Required PG&E to Safely Maintain Its Electrical
                     Equipment and Infrastructure ................................................................. 16
19
20               3.  PG&E Is Regulated by the CPUC ......................................................... 17

21                   (a)  CPUC's General Orders 95 and 165 Impose Strict Safety
                           Regulations on PG&E ...................................................................... 17

22                   (b)  CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
                           Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol .......... 19
23
24                   (c)  PG&E Must Follow CPUC's Regulations Under Penalty of Law ....... 20

25               4.  Cal Fire Is the Duly Authorized Investigative Arm of the State of
                     California for Wildfires ........................................................................... 20

26               5.  Under California's Inverse Condemnation Law, PG&E Would Not Bear
                     the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
27                   and Prudently ......................................................................................... 21

28               6.  Federal Law Also Requires PG&E to Follow Minimum Safety Standards .......... 21

B. PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point ............22

C. PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period ........................................................................24

D. After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal ........................................................................25

E. PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

   1. PG&E Used Reclosers to Prioritize Convenience Over Safety ...........................25

   2. PG&E Concealed Its Use of Reclosers from Investors During the Class Period ........................................................................27

F. PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period ........................................28

   1. PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ...............28

   2. PG&E Unsafely Flouts Safety Regulations ........................................28

   3. PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ........................................................................30

   4. PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ........................................................................30

      (a) PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period ...........................30

      (b) PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards ...............32

G. Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

   1. PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires ........................................33

   2. PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire ........................................34

      (a) The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations ........................................................................34

      (b) The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations ........................................................37

H. PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety Violations .......................................................................................................38

    1.   PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety Violations Caused the Deadly Butte Fire ...................................................... 38

    2.   PG&E Internally Acknowledged, Extensively Documented, and Tolerated for Years the Safety Violations that Caused the Camp Fire ........................ 39

   I.   PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to Follow It Was a Proximate Cause of the Camp Fire .......................................43

    1.   PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor of Shutting Off the Power ...................................................................... 45

      (a)   Criterion 1: the National Fire Danger Rating System Rated Jarbo Gap as Having an "Extreme" Fire Danger Threat Level ............................ 45

      (b)   Criterion 2: the National Weather Service Declared a "Red Flag Warning" for the Area ....................................................................... 47

      (c)   Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel) Weighed in Favor of a Shutoff ....................................................... 47

      (d)   Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor of a Shutoff ........................................................................... 49

    2.   All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

      (a)   Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity Levels................................................................................................ 52

      (b)   Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed......... 53

      (c)   Criterion 5: Site-Specific Conditions Further Favored Shutoff................... 54

    3.   PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed in Favor of Shutting Off the Power.......................................................... 54

   J.   PG&E's Bankruptcy and Other Post-Class-Period Developments.............................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS UNDER THE EXCHANGE ACT .................................................................................. 59

   A.   Overview of Defendants' Fraudulent Course of Conduct ..........................................59

   B.   Defendants Made Materially False and Misleading Statements and Omissions Regarding Its Vegetation Management Activities and Compliance with Wildfire Safety Regulations Before the North Bay Fires ...........................................61

    1.   April 29, 2015 – Misstatement No. 1................................................................ 61

    2.   October 16, 2015 – Misstatement No. 2 .......................................................... 62

    3.   November 18, 2015 – Misstatement No. 3 ....................................................... 64

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

iii

4.  October 6, 2016 – Misstatement No. 4 ................................................................. 65

5.  August 9, 2017 – Misstatement No. 5 ................................................................. 67

C.  Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ........................................................69

1.  May 23, 2016 – Misstatement No. 6 ................................................................. 70

2.  November 4, 2016 – Misstatement No. 7 .......................................................... 71

3.  May 31, 2017 – Misstatement No. 8 ................................................................. 72

D.  After the North Bay Fires Erupted, the Truth Began to Emerge ...............................74

E.  After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ...........................................................................75

1.  October 31, 2017 – Misstatement No. 9 ........................................................... 75

2.  November 2, 2017 – Misstatement No. 10 ........................................................ 76

3.  November 2, 2017 – Misstatement No. 11 ........................................................ 79

4.  November 5, 2017 – Misstatement No. 12 ........................................................ 81

5.  May 25, 2018 – Misstatement No. 13 ............................................................... 83

F.  While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol .................................................85

1.  June 8, 2018 – Misstatement No. 14 ................................................................. 85

2.  June 8, 2018 – Misstatement No. 15 ................................................................. 87

3.  September 27, 2018 – Misstatement No. 16 ...................................................... 88

4.  October 9, 2018 – Misstatement No. 17 ........................................................... 90

5.  October 9, 2018 – Misstatement No. 18 ........................................................... 91

6.  November 8, 2018 – Misstatement No. 19 ........................................................ 92

VIII.  MATERIALITY UNDER THE EXCHANGE ACT ...............................................................93

IX.  LOSS CAUSATION UNDER THE EXCHANGE ACT .........................................................94

A.  Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ................................................................................................94

B.  PG&E's Safety Violations Caused the Devastating North Bay Fires .........................95

C.  PG&E's Safety Violations Caused the Devastating Camp Fire .....................................95

D.  As the Market Learned About the Effects and Extent of PG&E's Inadequate
     Safety Practices, the Price of PG&E's Securities Fell Dramatically ..........................96

     1.  October 12, 2017 – Corrective Disclosure and/or Materialization of
          Concealed Risk ............................................................................................... 96

          (a)  The Market Began to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires .......................................................... 96

          (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
                Decline on October 12, 2017 .......................................................................... 97

     2.  October 13-16, 2017 – Corrective Disclosure and/or Materialization of
          Concealed Risk ............................................................................................... 99

          (a)  The Market Continued to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires .......................................................... 99

          (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
                Decline on October 13, 2017 .......................................................................... 99

     3.  December 20, 2017 – Corrective Disclosure and/or Materialization of
          Concealed Risk ............................................................................................. 100

          (a)  The Market Continued to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires ........................................................ 100

          (b)  Market Commentators Confirmed the Proximate Cause of PG&E's
                Share Price Decline on December 20, 2017 ................................................ 101

     4.  May 25, 2018 – Corrective Disclosure and/or Materialization of
          Concealed Risk ............................................................................................. 102

          (a)  The Market Continued to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires ........................................................ 102

          (b)  Market Commentators Confirmed that the News Regarding Safety
                Violations Proximately Caused PG&E's Share Price Decline on May
                25-29, 2018 .................................................................................................. 104

     5.  June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
          Risk .............................................................................................................. 105

          (a)  The Market Learned the Truth of PG&E's Continued, Unsafe Use of
                Reclosers....................................................................................................... 107

          (b)  The Market Continued to Learn the Extent and Effects of PG&E's
                Safety Violations and Responsibility for the North Bay Fires ................. 107

          (c)  Market Commentators Confirmed that the Number and Range of
                Safety Violations Proximately Caused PG&E's Share Price Decline
                on June 8-11, 2018........................................................................................ 108

6. November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................... 109

   (a) The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire............................................ 109

   (b) Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline........................................................ 110

7. November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................... 112

   (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.............................. 112

   (b) Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. .................................................. 113

8. November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ........................................................... 114

   (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.............................. 114

   (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ........................................ 115

9. November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................... 116

   (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.............................. 116

   (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ........................................ 117

X. SCIENTER UNDER THE EXCHANGE ACT ........................................................... 118

A. PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations ...........................118

B. Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It...........................120

C. The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter ........................123

D. PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations....................................................129

   1. PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

2.  PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ......................................................... 131

E.  PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority ................................................ 133

F.  The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ...................................................................................... 135

G.  After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up ........................................... 136

H.  PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter .............................................................................. 140

XI.  APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS .................................................. 141

XII.  CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII.  CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT .......................................... 144

XIV.  NATURE OF THE SECURITIES ACT CLAIMS ......................................................... 151

XV.  OVERVIEW OF THE SECURITIES ACT VIOLATIONS .......................................... 151

XVI.  THE SECURITIES ACT PARTIES ............................................................................... 153

A.  Securities Act Named Plaintiffs ................................................................... 153

B.  Bankrupt Entities .......................................................................................... 154

C.  Securities Act Individual Defendants .......................................................... 154

D.  Underwriter Defendants ................................................................................ 159

XVII.  SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A.  PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations .......................................................................................... 162

1.  Overview of Laws and Regulations Governing PG&E's Operations ................. 162

2.  PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ........ 164

XVIII.  THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS ................................................................................................................. 186

A.  The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance .............................................................. 187

1.  The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices .............. 188

2.   The Offering Documents Did Not Disclose PG&E's Investments in,
Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B.   The Securities Act Defendants Materially Misled Investors Regarding
PG&E's Liability for Wildfires ................................................................................. 203

C.   PG&E's Offering Documents Misled Investors by Failing to Comply with
Item 303's Disclosure Requirements and Disclosure Safety Violations ................. 208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX.   CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............ 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT .......................................... 214

XXII.  PRAYER FOR RELIEF ............................................................................................... 216

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

viii

Page 21 of 165

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:06   Page
110 of 156

| PG&E CORP. COMMON STOCK | | | |
|---|---|---|---|
| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
| Purchase | 06/03/15 | 1,000 | $51.97 | ($51,970.00) |
| Purchase | 06/03/15 | 2,000 | $51.97 | ($103,940.00) |
| Purchase | 07/13/15 | 2,500 | $51.15 | ($127,872.75) |
| Purchase | 03/10/16 | 1,100 | $56.95 | ($62,645.99) |
| Purchase | 06/24/16 | 3,200 | $62.66 | ($200,512.00) |
| Purchase | 08/09/16 | 94,400 | $63.60 | ($6,004,113.76) |
| Sale | 08/25/16 | -54 | $63.56 | $3,432.41 |
| Sale | 08/25/16 | -1,691 | $63.58 | $107,512.43 |
| Purchase | 08/25/16 | 11,768 | $63.66 | ($749,143.82) |
| Sale | 08/26/16 | -1,315 | $62.99 | $82,826.06 |
| Sale | 08/26/16 | -1,503 | $63.08 | $94,803.98 |
| Sale | 08/29/16 | -376 | $62.50 | $23,500.00 |
| Sale | 08/29/16 | -1,865 | $62.55 | $116,646.98 |
| Sale | 08/30/16 | -1,878 | $62.04 | $116,508.87 |
| Sale | 08/31/16 | -126 | $61.80 | $7,786.99 |
| Purchase | 08/31/16 | 74,700 | $61.94 | ($4,627,052.46) |
| Purchase | 09/27/16 | 6,153 | $63.80 | ($392,539.25) |
| Purchase | 10/20/16 | 8,307 | $60.96 | ($506,386.41) |
| Purchase | 11/08/16 | 700 | $62.02 | ($43,414.00) |
| Sale | 11/17/16 | -8,258 | $58.72 | $484,925.45 |
| Sale | 11/17/16 | -227 | $58.96 | $13,383.38 |
| Sale | 11/17/16 | -7,285 | $59.03 | $430,058.32 |
| Sale | 11/18/16 | -4,630 | $58.40 | $270,409.59 |
| Purchase | 11/22/16 | 6,224 | $59.28 | ($368,962.45) |
| Sale | 11/29/16 | -4,519 | $60.69 | $274,260.37 |
| Sale | 11/30/16 | -2,288 | $59.21 | $135,469.51 |
| Sale | 12/01/16 | -1,197 | $57.90 | $69,308.57 |
| Sale | 12/02/16 | -796 | $58.32 | $46,424.55 |
| Purchase | 12/13/16 | 7,217 | $60.40 | ($435,937.11) |
| Sale | 01/06/17 | -3,108 | $60.84 | $189,090.72 |
| Sale | 01/06/17 | -8,392 | $60.97 | $511,683.74 |
| Purchase | 01/20/17 | 10,349 | $61.41 | ($635,532.09) |
| Purchase | 02/13/17 | 400 | $63.69 | ($25,476.00) |
| Purchase | 02/24/17 | 7,378 | $65.95 | ($486,588.69) |
| Sale | 03/08/17 | -4,763 | $65.24 | $310,739.07 |
| Sale | 03/09/17 | -1,809 | $65.29 | $118,105.63 |
| Sale | 03/10/17 | -928 | $65.35 | $60,648.33 |
| Purchase | 03/22/17 | 1,010 | $67.57 | ($68,241.56) |
| Sale | 04/07/17 | -8,900 | $67.11 | $597,294.13 |
| Purchase | 04/10/17 | 50,200 | $66.93 | ($3,359,735.40) |
| Purchase | 05/25/17 | 5,600 | $66.80 | ($374,085.04) |
| Sale | 05/31/17 | -427 | $68.38 | $29,198.26 |
| Sale | 05/31/17 | -1,710 | $68.38 | $116,929.80 |
| Purchase | 06/06/17 | 2,323 | $68.74 | ($159,680.93) |
| Purchase | 06/30/17 | 11,240 | $66.61 | ($748,694.15) |

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 25:37:07   Page
123 of 1276

## PG&E CORP. COMMON STOCK

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 07/24/17 | 1,168 | $67.90 | ($79,307.20) |
| Purchase | 08/31/17 | 1,700 | $70.30 | ($119,510.51) |
| Sale | 10/10/17 | -8,637 | $69.16 | $597,294.33 |
| Sale | 10/11/17 | -977 | $69.08 | $67,494.38 |
| Sale | 10/11/17 | -4,936 | $69.30 | $342,064.80 |
| Purchase | 10/30/17 | 4,180 | $57.23 | ($239,222.65) |
| Sale | 11/20/17 | -2,900 | $52.65 | $152,685.00 |
| Sale | 11/30/17 | -13,862 | $54.24 | $751,874.88 |
| Sale | 11/30/17 | -41,586 | $54.24 | $2,255,624.64 |
| Sale | 11/30/17 | -7,887 | $54.25 | $427,869.75 |
| Sale | 12/01/17 | -15,727 | $54.28 | $853,636.40 |
| Sale | 12/04/17 | -9,743 | $54.13 | $527,404.18 |
| Sale | 12/05/17 | -12,339 | $53.54 | $660,590.58 |
| Sale | 12/06/17 | -2,135 | $53.53 | $114,282.07 |
| Sale | 12/07/17 | -4 | $53.01 | $212.03 |
| Sale | 12/08/17 | -665 | $53.19 | $35,369.69 |
| Sale | 12/15/17 | -5,000 | $53.05 | $265,250.00 |
| Sale | 01/31/18 | -2,040 | $41.79 | $85,260.37 |
| Sale | 02/21/18 | -500 | $39.79 | $19,895.00 |
| Purchase | 04/16/18 | 5,859 | $45.08 | ($264,123.72) |
| Purchase | 04/16/18 | 94 | $45.30 | ($4,257.97) |
| Purchase | 04/16/18 | 40,480 | $45.50 | ($1,842,026.21) |
| Purchase | 04/17/18 | 3,307 | $45.91 | ($151,838.92) |
| Sale | 05/31/18 | -24,012 | $43.33 | $1,040,439.96 |

## PACIFIC GAS & ELECTRIC CO. 6.050% due 03/01/2034

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 05/11/16 | 850,000 | $132.53 | ($1,126,471.00) |

## PACIFIC GAS & ELECTRIC CO 4.600% due 06/15/2043

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 06/03/15 | 125,000 | $101.50 | ($126,875.00) |
| Sale | 08/14/15 | -875,000 | $103.58 | $906,298.75 |

## PACIFIC GAS & ELECTRIC CO 3.300% due 03/15/2027

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 03/07/17 | 95,000 | $99.65 | ($94,662.75) |

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
112 of 278

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT C
### COUNSEL

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone  973-597-2500
Facsimile  973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone  415-512-8600
Facsimile  415-512-8601
randy.michelson@michelsonlawgroup.com

*Bankruptcy Counsel to PERA*

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Louis Gottlieb
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
Aram Boghosian
140 Broadway
New York, New York 10005
Telephone  212-907-0700
tdubbs@labaton.com
lgottlieb@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone  415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for PERA*

*Lead Counsel to PERA*

# Electronic Proof of Claim_QXAUV27386

Final Audit Report

2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA1ilCq1qVC8k9_Fzlyg02krKNp5niZrnk |

## "Electronic Proof of Claim_QXAUV27386" History

Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:48:00 PM GMT

Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
  Attachment
2019-10-21 - 2:50:08 PM GMT

Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:50:08 PM GMT- IP address: 199.127.9.1

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 2:50:10 PM GMT- IP address: 199.127.9.1

Signed document emailed to Prime Clerk E-Filing (efiling@primeclerk.com) and Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:50:10 PM GMT

**Prime Clerk**

POWERED BY
Adobe Sign

**United States Bankruptcy Court, Northern District of California**

| Fill in this information to identify the case (Select only one Debtor per claim form): |
| --- |
| ☒ PG&E Corporation (19-30088) |
| ☐ Pacific Gas and Electric Company (19-30089) |

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Lowenstein Sandler LLP
Attn: Michael S. Etkin and Andrew Behlmann
One Lowenstein Drive
Roseland, NJ 07068

Contact phone 973-597-2500
Contact email abehlmann@lowenstein.com

Where should payments to the creditor be sent? (if different)

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known)_____
Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____ |

| | | |
|---|---|---|
| 7. **How much is the claim?** | $ <u>Unliquidated (see addendum)</u> | **Does this amount include interest or other charges?**<br>☒ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Violations of federal securities laws (see addendum) |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $_____<br><br>**Amount of the claim that is secured:** $_____<br><br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 15:37:07    Page 126 of 156

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:**    **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

Print the name of the person who is completing and signing this claim:

Name: Andrew David Behlmann
First name      Middle name      Last name

Title: Counsel

Company: Lowenstein Sandler LLP
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: One Lowenstein Drive
Number    Street
Roseland        NJ     07068
City        State    ZIP Code

Contact phone: 973-597-2332     Email: abehlmann@lowenstein.com

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 15:37:03    Page
297 of 1568

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do <u>not</u> have supporting documentation.

📎 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 25:37:07    Page 119 of 156

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

**Do not file these instructions with your form**

| 1 | **LABATON SUCHAROW LLP** | **LOWENSTEIN SANDLER LLP** |
| | Thomas A. Dubbs | Michael S. Etkin (*pro hac vice*) |
| 2 | Louis Gottlieb | Andrew Behlmann (*pro hac vice*) |
| | Carol C. Villegas | One Lowenstein Drive |
| 3 | Jeffrey A. Dubbin (SBN 287199) | Roseland, New Jersey 07068 |
| | 140 Broadway | |
| 4 | New York, New York 10005 | |

5   *Lead Counsel to PERA*                          *Bankruptcy Counsel to PERA*

6   **MICHELSON LAW GROUP**
    Randy Michelson (SBN 114095)
7   220 Montgomery Street, Suite 2100               *Additional counsel listed on Exhibit C*
    San Francisco, California 94104
8
    *Bankruptcy Counsel to PERA*

9

<div align="center">

**UNITED STATES BANKRUPTCY COURT**

10      **NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

</div>

11

| 12 | In re: | |
| 13 | PG&E CORPORATION | Case No. 19-30088 (DM) (Lead Case) |
| 14 | - and – | Chapter 11 |
| 15 | PACIFIC GAS AND ELECTRIC COMPANY, | (Jointly Administered) |
| 16 | | |
| 17 | Debtors. | |
| 18 | ☒ Affects Both Debtors | **ADDENDUM TO PROOF OF CLAIM** |
| 19 | ☐ Affects PG&E Corporation | **OF PUBLIC EMPLOYEES RETIREMENT** |
| | ☐ Affects Pacific Gas and Electric Company | **ASSOCIATION OF NEW MEXICO** |

20

21

22

23

24

25

26

27

28

Public Employees Retirement Association of New Mexico ("**PERA**"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.    The Securities Litigation**

1.    On May 28, 2019, Lead Plaintiff filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[1] In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**") against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**") and (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the

---

[1]    The Debtors are named as Exchange Act Defendants in the TAC, subject to an express acknowledgment that the Securities Litigation cannot proceed against them in the District Court at this time due to the automatic stay.

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 25:37:07    Page
122 of 278

Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2.    A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**.  The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.    The Claim**

3.    As of the Petition Date, the Debtors were, and currently remain, liable to PERA in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**").  The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim.   A schedule of PERA's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4.    PERA reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5.    The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available.   In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6.    No payments have been made on account of the Claim.

7.    The Claim is not subject to any setoff or counterclaim.

8.    No security interest is held for the Claim.

9.    The Claim is asserted in addition to, and not in lieu of, any and all other claims that PERA may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.    Reservation of Rights**

10.    PERA reserves all rights (including but not limited to arguments, counterarguments,

and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11. This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by PERA, whether in its individual capacity or as lead plaintiff in the Securities Litigation, shall not be deemed to:

- constitute a submission by PERA to the jurisdiction of the Bankruptcy Court;
- constitute consent by PERA to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;
- waive any substantive or procedural rights of PERA, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which PERA is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights,

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 25:37:07    Page
1364 of 1568

claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 15:37:07    Page
125 of 278



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT[2]**

---

2    Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

1  **LABATON SUCHAROW LLP**
   THOMAS A. DUBBS (*pro hac vice*)
2  LOUIS GOTTLIEB (*pro hac vice*)
   JEFFREY A. DUBBIN (#287199)
3  ARAM BOGHOSIAN (*pro hac vice*)
   140 Broadway
4  New York, New York 10005
   Telephone: (212) 907-0700
5  Facsimile: (212) 818-0477
   Email: tdubbs@labaton.com
6  lgottlieb@labaton.com
   jdubbin@labaton.com
7  aboghosian@labaton.com

8  *Counsel for Lead Plaintiff the Public Employees Retirement*
   *Association of New Mexico and Lead Counsel for the Class*
9
   **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
10 JAMES M. WAGSTAFFE (#95535)
   FRANK BUSCH (#258288)
11 100 Pine Street, Suite 725
   San Francisco, California 94111
12 Telephone: (415) 357-8900
   Facsimile: (415) 371-0500
13 Email: wagstaffe@wvbrlaw.com
   busch@wvbrlaw.com
14
   *Liaison Counsel for the Class*
15
16            **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
17               **SAN FRANCISCO DIVISION**

18                                        Civil Action No. 3:18-cv-03509-EJD
19
                                          THIRD AMENDED CONSOLIDATED CLASS
20 IN RE PG&E CORPORATION               ACTION COMPLAINT FOR VIOLATION OF
   SECURITIES LITIGATION                 THE FEDERAL SECURITIES LAWS
21
22                                        JURY TRIAL DEMANDED

23

24

25

26

27

28

Third Amended Consolidated Class Action Complaint
Civil Action No. 3:18-cv-03509-EJD

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................ 1

II.    NATURE OF THE CASE ............................................................................... 4

III.   JURISDICTION AND VENUE ..................................................................... 5

IV.    OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ........................... 5

       A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
          Wildfires in 2017 and Investors' Consequent Losses ................................... 6

       B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
          Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
          Losses .......................................................................................................... 8

          1. After the North Bay Fires, PG&E Continued to Make False and
             Misleading Statements and Omissions ..................................................... 8

          2. PG&E's Continuing Noncompliance With Safety Regulations Caused the
             Camp Fire ............................................................................................... 10

       C. Exchange Act Claims Being Asserted .......................................................... 12

V.     THE EXCHANGE ACT PARTIES ................................................................ 13

VI.    SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

       A. PG&E Operates Within a Robust Legal Regime .......................................... 15

          1. California Law Required PG&E to Maintain a Safe Distance Between Its
             Electrical Equipment and Nearby Vegetation ......................................... 15

          2. California Law Required PG&E to Safely Maintain Its Electrical
             Equipment and Infrastructure ................................................................. 16

          3. PG&E Is Regulated by the CPUC ........................................................... 17

             (a)   CPUC's General Orders 95 and 165 Impose Strict Safety
                   Regulations on PG&E ..................................................................... 17

             (b)   CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
                   Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol ...... 19

             (c)   PG&E Must Follow CPUC's Regulations Under Penalty of Law ........... 20

          4. Cal Fire Is the Duly Authorized Investigative Arm of the State of
             California for Wildfires ............................................................................ 20

          5. Under California's Inverse Condemnation Law, PG&E Would Not Bear
             the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
             and Prudently ......................................................................................... 21

          6. Federal Law Also Requires PG&E to Follow Minimum Safety Standards .......... 21

Third Amended Consolidated Class Action Complaint                                                i
Civil Action No. 3:18-cv-03509-EJD

B.  PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point............22

C.  PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period .................................................................................24

D.  After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal .........................................................................................25

E.  PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ...........................25

2.  PG&E Concealed Its Use of Reclosers from Investors During the Class Period ............................................................................................27

F.  PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period.......................................28

1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ................28

2.  PG&E Unsafely Flouts Safety Regulations ........................................................28

3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ..............................................................................................30

4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period .............................................................................................30

(a)  PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period............................30

(b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards................32

G.  Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires.......................................................33

2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire ..............................................................34

(a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations....................................................................................34

(b)  The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations...........................................................................37

H.  PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety Violations ................................................................................................38

    1.  PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety Violations Caused the Deadly Butte Fire ..............................................38

    2.  PG&E Internally Acknowledged, Extensively Documented, and Tolerated for Years the Safety Violations that Caused the Camp Fire ......................39

I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to Follow It Was a Proximate Cause of the Camp Fire ....................................................43

    1.  PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor of Shutting Off the Power ....................................................................45

        (a)  Criterion 1: the National Fire Danger Rating System Rated Jarbo Gap as Having an "Extreme" Fire Danger Threat Level ............................45

        (b)  Criterion 2: the National Weather Service Declared a "Red Flag Warning" for the Area ........................................................................47

        (c)  Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel) Weighed in Favor of a Shutoff ..............................................................47

        (d)  Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor of a Shutoff ........................................................................................49

    2.  All of the Weather Criteria Weighed in Favor of Shutting Off the Power ..........50

        (a)  Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity Levels ........................................................................................52

        (b)  Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed .........53

        (c)  Criterion 5: Site-Specific Conditions Further Favored Shutoff ..................54

    3.  PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed in Favor of Shutting Off the Power ................................................................54

J.  PG&E's Bankruptcy and Other Post-Class-Period Developments ............................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS UNDER THE EXCHANGE ACT ..............................................................................59

A.  Overview of Defendants' Fraudulent Course of Conduct ..........................................59

B.  Defendants Made Materially False and Misleading Statements and Omissions Regarding Its Vegetation Management Activities and Compliance with Wildfire Safety Regulations Before the North Bay Fires ............................................61

    1.  April 29, 2015 – Misstatement No. 1 ..................................................................61

    2.  October 16, 2015 – Misstatement No. 2 ..............................................................62

    3.  November 18, 2015 – Misstatement No. 3 ..........................................................64

4. October 6, 2016 – Misstatement No. 4 ................................................................. 65

5. August 9, 2017 – Misstatement No. 5 .................................................................. 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ......................................................... 69

1. May 23, 2016 – Misstatement No. 6 ..................................................................... 70

2. November 4, 2016 – Misstatement No. 7 ............................................................. 71

3. May 31, 2017 – Misstatement No. 8 ..................................................................... 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge ............................ 74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ......................................................................... 75

1. October 31, 2017 – Misstatement No. 9 ............................................................... 75

2. November 2, 2017 – Misstatement No. 10 ........................................................... 76

3. November 2, 2017 – Misstatement No. 11 ........................................................... 79

4. November 5, 2017 – Misstatement No. 12 ........................................................... 81

5. May 25, 2018 – Misstatement No. 13 ................................................................... 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol .......................................................... 85

1. June 8, 2018 – Misstatement No. 14 ..................................................................... 85

2. June 8, 2018 – Misstatement No. 15 ..................................................................... 87

3. September 27, 2018 – Misstatement No. 16 .......................................................... 88

4. October 9, 2018 – Misstatement No. 17 ............................................................... 90

5. October 9, 2018 – Misstatement No. 18 ............................................................... 91

6. November 8, 2018 – Misstatement No. 19 ........................................................... 92

VIII. MATERIALITY UNDER THE EXCHANGE ACT ...................................................... 93

IX. LOSS CAUSATION UNDER THE EXCHANGE ACT ................................................ 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ................................................................................................ 94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires ..................... 95

C. PG&E's Safety Violations Caused the Devastating Camp Fire .................................. 95

D. As the Market Learned About the Effects and Extent of PG&E's Inadequate
Safety Practices, the Price of PG&E's Securities Fell Dramatically ........................ 96

    1. October 12, 2017 – Corrective Disclosure and/or Materialization of
Concealed Risk ............................................................................................ 96

        (a) The Market Began to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires ........................................... 96

        (b) Market Commentators Confirmed the Cause of PG&E's Share Price
Decline on October 12, 2017 ........................................................... 97

    2. October 13-16, 2017 – Corrective Disclosure and/or Materialization of
Concealed Risk ............................................................................................ 99

        (a) The Market Continued to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires ........................................... 99

        (b) Market Commentators Confirmed the Cause of PG&E's Share Price
Decline on October 13, 2017 ........................................................... 99

    3. December 20, 2017 – Corrective Disclosure and/or Materialization of
Concealed Risk ............................................................................................ 100

        (a) The Market Continued to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires ........................................... 100

        (b) Market Commentators Confirmed the Proximate Cause of PG&E's
Share Price Decline on December 20, 2017 .................................... 101

    4. May 25, 2018 – Corrective Disclosure and/or Materialization of
Concealed Risk ............................................................................................ 102

        (a) The Market Continued to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires ........................................... 102

        (b) Market Commentators Confirmed that the News Regarding Safety
Violations Proximately Caused PG&E's Share Price Decline on May
25-29, 2018 ..................................................................................... 104

    5. June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
Risk ............................................................................................................. 105

        (a) The Market Learned the Truth of PG&E's Continued, Unsafe Use of
Reclosers ......................................................................................... 107

        (b) The Market Continued to Learn the Extent and Effects of PG&E's
Safety Violations and Responsibility for the North Bay Fires ......... 107

        (c) Market Commentators Confirmed that the Number and Range of
Safety Violations Proximately Caused PG&E's Share Price Decline
on June 8-11, 2018 .......................................................................... 108

6.  November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 109

    (a)  The Market Began to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................ 109

    (b)  Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline ........................................... 110

7.  November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 112

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................... 112

    (b)  Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ................................. 113

8.  November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ......................................................................... 114

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................... 114

    (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ................................... 115

9.  November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 116

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................... 116

    (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ................................... 117

X.   SCIENTER UNDER THE EXCHANGE ACT ............................................................. 118

     A.  PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations .................. 118

     B.  Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It .......................................... 120

     C.  The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter ................ 123

     D.  PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations .................................... 129

         1.  PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

2.  PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ........................................................ 131

E.  PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority .......................................... 133

F.  The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ............................................................................... 135

G.  After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up .......................................... 136

H.  PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ........................................................................ 140

XI.   APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS .................................................. 141

XII.   CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII.   CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT ....................................... 144

XIV.   NATURE OF THE SECURITIES ACT CLAIMS .................................................... 151

XV.   OVERVIEW OF THE SECURITIES ACT VIOLATIONS ........................................ 151

XVI.   THE SECURITIES ACT PARTIES ....................................................................... 153

A.  Securities Act Named Plaintiffs .............................................................. 153

B.  Bankrupt Entities .................................................................................... 154

C.  Securities Act Individual Defendants ...................................................... 154

D.  Underwriter Defendants .......................................................................... 159

XVII.  SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A.  PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations ............................................................................................... 162

1.   Overview of Laws and Regulations Governing PG&E's Operations ................ 162

2.   PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ........ 164

XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS ................................................................................................... 186

A.  The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance .......................................................... 187

1.   The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices ........ 188

1

2. The Offering Documents Did Not Disclose PG&E's Investments in, Commitment to, and Practices Related to Safety Were Inadequate ................... 194

2

B. The Securities Act Defendants Materially Misled Investors Regarding PG&E's Liability for Wildfires ................................................................. 203

3

C. PG&E's Offering Documents Misled Investors by Failing to Comply with Item 303's Disclosure Requirements and Disclosure Safety Violations .................. 208

4

5

XIX. NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

6

XX. CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............. 212

7

XXI. CLAIMS FOR RELIEF UNDER THE SECURITIES ACT .......................................... 214

8

XXII. PRAYER FOR RELIEF ................................................................................................ 216

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| PG&E CORP. COMMON STOCK | | | |
|---|---|---|---|
| **Transaction Type** | **Trade Date** | **Shares** | **Price Per Share** | **Cost / Proceeds** |
| Purchase | 06/03/15 | 1,000 | $51.97 | ($51,970.00) |
| Purchase | 06/03/15 | 2,000 | $51.97 | ($103,940.00) |
| Purchase | 07/13/15 | 2,500 | $51.15 | ($127,872.75) |
| Purchase | 03/10/16 | 1,100 | $56.95 | ($62,645.99) |
| Purchase | 06/24/16 | 3,200 | $62.66 | ($200,512.00) |
| Purchase | 08/09/16 | 94,400 | $63.60 | ($6,004,113.76) |
| Sale | 08/25/16 | -54 | $63.56 | $3,432.41 |
| Sale | 08/25/16 | -1,691 | $63.58 | $107,512.43 |
| Purchase | 08/25/16 | 11,768 | $63.66 | ($749,143.82) |
| Sale | 08/26/16 | -1,315 | $62.99 | $82,826.06 |
| Sale | 08/26/16 | -1,503 | $63.08 | $94,803.98 |
| Sale | 08/29/16 | -376 | $62.50 | $23,500.00 |
| Sale | 08/29/16 | -1,865 | $62.55 | $116,646.98 |
| Sale | 08/30/16 | -1,878 | $62.04 | $116,508.87 |
| Sale | 08/31/16 | -126 | $61.80 | $7,786.99 |
| Purchase | 08/31/16 | 74,700 | $61.94 | ($4,627,052.46) |
| Purchase | 09/27/16 | 6,153 | $63.80 | ($392,539.25) |
| Purchase | 10/20/16 | 8,307 | $60.96 | ($506,386.41) |
| Purchase | 11/08/16 | 700 | $62.02 | ($43,414.00) |
| Sale | 11/17/16 | -8,258 | $58.72 | $484,925.45 |
| Sale | 11/17/16 | -227 | $58.96 | $13,383.38 |
| Sale | 11/17/16 | -7,285 | $59.03 | $430,058.32 |
| Sale | 11/18/16 | -4,630 | $58.40 | $270,409.59 |
| Purchase | 11/22/16 | 6,224 | $59.28 | ($368,962.45) |
| Sale | 11/29/16 | -4,519 | $60.69 | $274,260.37 |
| Sale | 11/30/16 | -2,288 | $59.21 | $135,469.51 |
| Sale | 12/01/16 | -1,197 | $57.90 | $69,308.57 |
| Sale | 12/02/16 | -796 | $58.32 | $46,424.55 |
| Purchase | 12/13/16 | 7,217 | $60.40 | ($435,937.11) |
| Sale | 01/06/17 | -3,108 | $60.84 | $189,090.72 |
| Sale | 01/06/17 | -8,392 | $60.97 | $511,683.74 |
| Purchase | 01/20/17 | 10,349 | $61.41 | ($635,532.09) |
| Purchase | 02/13/17 | 400 | $63.69 | ($25,476.00) |
| Purchase | 02/24/17 | 7,378 | $65.95 | ($486,588.69) |
| Sale | 03/08/17 | -4,763 | $65.24 | $310,739.07 |
| Sale | 03/09/17 | -1,809 | $65.29 | $118,105.63 |
| Sale | 03/10/17 | -928 | $65.35 | $60,648.33 |
| Purchase | 03/22/17 | 1,010 | $67.57 | ($68,241.56) |
| Sale | 04/07/17 | -8,900 | $67.11 | $597,294.13 |
| Purchase | 04/10/17 | 50,200 | $66.93 | ($3,359,735.40) |
| Purchase | 05/25/17 | 5,600 | $66.80 | ($374,085.04) |
| Sale | 05/31/17 | -427 | $68.38 | $29,198.26 |
| Sale | 05/31/17 | -1,710 | $68.38 | $116,929.80 |
| Purchase | 06/06/17 | 2,323 | $68.74 | ($159,680.93) |
| Purchase | 06/30/17 | 11,240 | $66.61 | ($748,694.15) |

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 25:37:07   Page
136 of 278

## PG&E CORP. COMMON STOCK

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 07/24/17 | 1,168 | $67.90 | ($79,307.20) |
| Purchase | 08/31/17 | 1,700 | $70.30 | ($119,510.51) |
| Sale | 10/10/17 | -8,637 | $69.16 | $597,294.33 |
| Sale | 10/11/17 | -977 | $69.08 | $67,494.38 |
| Sale | 10/11/17 | -4,936 | $69.30 | $342,064.80 |
| Purchase | 10/30/17 | 4,180 | $57.23 | ($239,222.65) |
| Sale | 11/20/17 | -2,900 | $52.65 | $152,685.00 |
| Sale | 11/30/17 | -13,862 | $54.24 | $751,874.88 |
| Sale | 11/30/17 | -41,586 | $54.24 | $2,255,624.64 |
| Sale | 11/30/17 | -7,887 | $54.25 | $427,869.75 |
| Sale | 12/01/17 | -15,727 | $54.28 | $853,636.40 |
| Sale | 12/04/17 | -9,743 | $54.13 | $527,404.18 |
| Sale | 12/05/17 | -12,339 | $53.54 | $660,590.58 |
| Sale | 12/06/17 | -2,135 | $53.53 | $114,282.07 |
| Sale | 12/07/17 | -4 | $53.01 | $212.03 |
| Sale | 12/08/17 | -665 | $53.19 | $35,369.69 |
| Sale | 12/15/17 | -5,000 | $53.05 | $265,250.00 |
| Sale | 01/31/18 | -2,040 | $41.79 | $85,260.37 |
| Sale | 02/21/18 | -500 | $39.79 | $19,895.00 |
| Purchase | 04/16/18 | 5,859 | $45.08 | ($264,123.72) |
| Purchase | 04/16/18 | 94 | $45.30 | ($4,257.97) |
| Purchase | 04/16/18 | 40,480 | $45.50 | ($1,842,026.21) |
| Purchase | 04/17/18 | 3,307 | $45.91 | ($151,838.92) |
| Sale | 05/31/18 | -24,012 | $43.33 | $1,040,439.96 |

## PACIFIC GAS & ELECTRIC CO. 6.050% due 03/01/2034

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 05/11/16 | 850,000 | $132.53 | ($1,126,471.00) |

## PACIFIC GAS & ELECTRIC CO 4.600% due 06/15/2043

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 06/03/15 | 125,000 | $101.50 | ($126,875.00) |
| Sale | 08/14/15 | -875,000 | $103.58 | $906,298.75 |

## PACIFIC GAS & ELECTRIC CO 3.300% due 03/15/2027

| Transaction Type | Trade Date | Par Value | Price | Cost / Proceeds |
|---|---|---|---|---|
| Purchase | 03/07/17 | 95,000 | $99.65 | ($94,662.75) |

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
137 of 256

**EXHIBIT C**
**COUNSEL**

| | |
|---|---|
| **LOWENSTEIN SANDLER LLP** | **MICHELSON LAW GROUP** |
| Michael S. Etkin (*pro hac vice*) | Randy Michelson, Esq. (SBN 114095) |
| Andrew Behlmann (*pro hac vice*) | 220 Montgomery Street, Suite 2100 |
| One Lowenstein Drive | San Francisco, CA 94104 |
| Roseland, New Jersey 07068 | Telephone   415-512-8600 |
| Telephone   973-597-2500 | Facsimile   415-512-8601 |
| Facsimile   973-597-2333 | randy.michelson@michelsonlawgroup.com |
| metkin@lowenstein.com | |
| abehlmann@lowenstein.com | |

*Bankruptcy Counsel to PERA*

| | |
|---|---|
| **LABATON SUCHAROW LLP** | **WAGSTAFFE, VON LOEWENFELDT,** |
| Thomas A. Dubbs | **BUSCH & RADWICK, LLP** |
| Louis Gottlieb | James M. Wagstaffe (SBN 95535) |
| Carol C. Villegas | Frank Busch (SBN 258288) |
| Jeffrey A. Dubbin (SBN 287199) | 100 Pine Street, Suite 725 |
| Aram Boghosian | San Francisco, California 94111 |
| 140 Broadway | Telephone   415-357-8900 |
| New York, New York 10005 | wagstaffe@wvbrlaw.com |
| Telephone   212-907-0700 | busch@wvbrlaw.com |
| tdubbs@labaton.com | |
| lgottlieb@labaton.com | |
| cvillegas@labaton.com | |
| jdubbin@labaton.com | |
| aboghosian@labaton.com | *Liaison Counsel for PERA* |

*Lead Counsel to PERA*

# Electronic Proof of Claim_CTNKU27386

Final Audit Report                                                                2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAlmK79yaxosDZDfs1ZAovxLKiXBTXl2h0 |

## "Electronic Proof of Claim_CTNKU27386" History

📄 Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:38:39 PM GMT

📎 Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
📎 Attachment
2019-10-21 - 2:41:02 PM GMT

📄 Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:41:02 PM GMT- IP address: 199.127.9.1

🖉 (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 2:41:04 PM GMT- IP address: 199.127.9.1

✅ Signed document emailed to Prime Clerk E-Filing (efiling@primeclerk.com) and Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:41:04 PM GMT

**Prime Clerk** 🟡  POWERED BY Adobe Sign

**United States Bankruptcy Court, Northern District of California**

Fill in this information to identify the case (Select only one Debtor per claim form):

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

---

**Part 1:** Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | York County on behalf of the County of York Retirement Fund |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Lowenstein Sandler LLP<br>Attn: Michael S. Etkin and Andrew Behlmann<br>One Lowenstein Drive<br>Roseland, NJ 07068 | |
| Contact phone 973-597-2500 | Contact phone |
| Contact email 973-597-2400 | Contact email |

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☒ No<br>☐ Yes. Claim number on court claims registry (if known)_____ Filed on ___/___/___ MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 21:37:03    Page
140 of 278

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ _Unliquidated (see addendum)_

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Case: 19-30088   Doc# 14629-1   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
141 of 278

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:** **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Andrew David Behlmann |
| | First name          Middle name          Last name |
| Title | Counsel |
| Company | Lowenstein Sandler LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | One Lowenstein Drive |
| | Number          Street |
| | Roseland          NJ          07068 |
| | City          State          ZIP Code |
| Contact phone | 973-597-2332          Email          abehlmann@lowenstein.com |

Case: 19-30088     Doc# 14629-4     Filed: 10/28/24     Entered: 10/28/24 15:37:07     Page
142 of 278

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do __not__ have supporting documentation.

📎 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA  95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

**Do not file these instructions with your form**

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin *(pro hac vice)*
Andrew Behlmann *(pro hac vice)*
One Lowenstein Drive
Roseland, New Jersey 07068

*Bankruptcy Counsel to Claimant*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone  619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD &
TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone  313-578-1200
tmichaud@vmtlaw.com

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Claimant*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone  415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Counsel to Claimant*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered) |
| ☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | **ADDENDUM TO PROOF OF CLAIM** |

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.    The Securities Litigation**

1.    On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]    Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]    Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2. A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**. The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.    The Claim**

3. As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**"). The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim. A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4. Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5. The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available. In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6. No payments have been made on account of the Claim.

7. The Claim is not subject to any setoff or counterclaim.

8. No security interest is held for the Claim.

9. The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.      Reservation of Rights**

10.   Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.   This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;
- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding;**
- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Claimant is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT[3]**

---
[3] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

1  **LABATON SUCHAROW LLP**
   THOMAS A. DUBBS (*pro hac vice*)
2  LOUIS GOTTLIEB (*pro hac vice*)
   JEFFREY A. DUBBIN (#287199)
3  ARAM BOGHOSIAN (*pro hac vice*)
   140 Broadway
4  New York, New York 10005
   Telephone: (212) 907-0700
5  Facsimile: (212) 818-0477
   Email: tdubbs@labaton.com
6  lgottlieb@labaton.com
   jdubbin@labaton.com
7  aboghosian@labaton.com

8  *Counsel for Lead Plaintiff the Public Employees Retirement*
   *Association of New Mexico and Lead Counsel for the Class*
9
   **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
10 JAMES M. WAGSTAFFE (#95535)
   FRANK BUSCH (#258288)
11 100 Pine Street, Suite 725
   San Francisco, California 94111
12 Telephone: (415) 357-8900
   Facsimile: (415) 371-0500
13 Email: wagstaffe@wvbrlaw.com
   busch@wvbrlaw.com
14
   *Liaison Counsel for the Class*
15

16          **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
17               **SAN FRANCISCO DIVISION**

18

19                                  Civil Action No. 3:18-cv-03509-EJD

20 IN RE PG&E CORPORATION              THIRD AMENDED CONSOLIDATED CLASS
   SECURITIES LITIGATION              ACTION COMPLAINT FOR VIOLATION OF
21                                     THE FEDERAL SECURITIES LAWS

22                                     JURY TRIAL DEMANDED

23

24

25

26

27

28

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE OF THE CASE ..................................................................................... 4

III.    JURISDICTION AND VENUE ........................................................................... 5

IV.     OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ................................ 5

        A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
           Wildfires in 2017 and Investors' Consequent Losses....................................6

        B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
           Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
           Losses...............................................................................................................8

            1. After the North Bay Fires, PG&E Continued to Make False and
               Misleading Statements and Omissions ................................................. 8

            2. PG&E's Continuing Noncompliance With Safety Regulations Caused the
               Camp Fire............................................................................................ 10

        C. Exchange Act Claims Being Asserted ...........................................................12

V.      THE EXCHANGE ACT PARTIES..................................................................... 13

VI.     SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

        A. PG&E Operates Within a Robust Legal Regime ...........................................15

            1. California Law Required PG&E to Maintain a Safe Distance Between Its
               Electrical Equipment and Nearby Vegetation.................................... 15

            2. California Law Required PG&E to Safely Maintain Its Electrical
               Equipment and Infrastructure ............................................................ 16

            3. PG&E Is Regulated by the CPUC ...................................................... 17

                (a)   CPUC's General Orders 95 and 165 Impose Strict Safety
                      Regulations on PG&E............................................................. 17

                (b)   CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
                      Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol .................. 19

                (c)   PG&E Must Follow CPUC's Regulations Under Penalty of Law ............. 20

            4. Cal Fire Is the Duly Authorized Investigative Arm of the State of
               California for Wildfires........................................................................ 20

            5. Under California's Inverse Condemnation Law, PG&E Would Not Bear
               the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
               and Prudently ...................................................................................... 21

            6. Federal Law Also Requires PG&E to Follow Minimum Safety Standards.......... 21

B.  PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point ............22

C.  PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period ........................................................................................24

D.  After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal ............................................................................................................25

E.  PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

   1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ...........................25

   2.  PG&E Concealed Its Use of Reclosers from Investors During the Class Period ......................................................................................................................27

F.  PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period ..........................................28

   1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ................28

   2.  PG&E Unsafely Flouts Safety Regulations ........................................................28

   3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 .........................................................................................................30

   4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ...................................................................................................................30

      (a)  PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period ...........................30

      (b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards ...............32

G.  Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

   1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires ........................................................33

   2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire ................................................................34

      (a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations ................................................................................................34

      (b)  The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations ........................................................................37

H.  PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety
Violations ................................................................................................38

  1.  PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety
Violations Caused the Deadly Butte Fire ..............................................38

  2.  PG&E Internally Acknowledged, Extensively Documented, and Tolerated
for Years the Safety Violations that Caused the Camp Fire ....................39

I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to
Follow It Was a Proximate Cause of the Camp Fire .....................................43

  1.  PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor
of Shutting Off the Power .....................................................................45

    (a)  Criterion 1: the National Fire Danger Rating System Rated Jarbo
Gap as Having an "Extreme" Fire Danger Threat Level ..............................45

    (b)  Criterion 2: the National Weather Service Declared a "Red Flag
Warning" for the Area ........................................................................47

    (c)  Criterion 6: "Critically Dry Vegetation" (i.e., Wildfire Fuel)
Weighed in Favor of a Shutoff ............................................................47

    (d)  Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor
of a Shutoff ......................................................................................49

  2.  All of the Weather Criteria Weighed in Favor of Shutting Off the Power ..........50

    (a)  Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity
Levels................................................................................................52

    (b)  Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed.........53

    (c)  Criterion 5: Site-Specific Conditions Further Favored Shutoff..................54

  3.  PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed
in Favor of Shutting Off the Power ........................................................54

J.  PG&E's Bankruptcy and Other Post-Class-Period Developments...........................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS
UNDER THE EXCHANGE ACT .................................................................................59

A. Overview of Defendants' Fraudulent Course of Conduct ...........................................59

B. Defendants Made Materially False and Misleading Statements and Omissions
Regarding Its Vegetation Management Activities and Compliance with
Wildfire Safety Regulations Before the North Bay Fires ............................................61

  1.  April 29, 2015 – Misstatement No. 1....................................................61

  2.  October 16, 2015 – Misstatement No. 2 ...............................................62

  3.  November 18, 2015 – Misstatement No. 3 ............................................64

4. October 6, 2016 – Misstatement No. 4 .................................................................. 65

5. August 9, 2017 – Misstatement No. 5 .................................................................. 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ..................................................69

1. May 23, 2016 – Misstatement No. 6.................................................................... 70

2. November 4, 2016 – Misstatement No. 7 ............................................................ 71

3. May 31, 2017 – Misstatement No. 8.................................................................... 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge ...............................74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ..................................................................75

1. October 31, 2017 – Misstatement No. 9 ............................................................. 75

2. November 2, 2017 – Misstatement No. 10 .......................................................... 76

3. November 2, 2017 – Misstatement No. 11 .......................................................... 79

4. November 5, 2017 – Misstatement No. 12 .......................................................... 81

5. May 25, 2018 – Misstatement No. 13.................................................................. 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ..............................................85

1. June 8, 2018 – Misstatement No. 14 ................................................................... 85

2. June 8, 2018 – Misstatement No. 15 ................................................................... 87

3. September 27, 2018 – Misstatement No. 16 ........................................................ 88

4. October 9, 2018 – Misstatement No. 17 ............................................................. 90

5. October 9, 2018 – Misstatement No. 18 ............................................................. 91

6. November 8, 2018 – Misstatement No. 19 .......................................................... 92

VIII.   MATERIALITY UNDER THE EXCHANGE ACT.................................................. 93

IX.    LOSS CAUSATION UNDER THE EXCHANGE ACT .............................................. 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ..................................................................................94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires........................95

1       C.  PG&E's Safety Violations Caused the Devastating Camp Fire ..................................95

2      D.  As the Market Learned About the Effects and Extent of PG&E's Inadequate
3          Safety Practices, the Price of PG&E's Securities Fell Dramatically .........................96

4         1.  October 12, 2017 – Corrective Disclosure and/or Materialization of
            Concealed Risk ..................................................................................... 96

5            (a)  The Market Began to Learn the Extent and Effects of PG&E's
6                Responsibility for the North Bay Fires ......................................... 96

7            (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
             Decline on October 12, 2017 ......................................................... 97

8         2.  October 13-16, 2017 – Corrective Disclosure and/or Materialization of
9               Concealed Risk ..................................................................................... 99

10           (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires ......................................... 99

11           (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
12               Decline on October 13, 2017 ......................................................... 99

13        3.  December 20, 2017 – Corrective Disclosure and/or Materialization of
            Concealed Risk ................................................................................... 100

14           (a)  The Market Continued to Learn the Extent and Effects of PG&E's
15               Responsibility for the North Bay Fires ....................................... 100

16           (b)  Market Commentators Confirmed the Proximate Cause of PG&E's
             Share Price Decline on December 20, 2017 ............................... 101

17        4.  May 25, 2018 – Corrective Disclosure and/or Materialization of
18              Concealed Risk ................................................................................... 102

19           (a)  The Market Continued to Learn the Extent and Effects of PG&E's
             Responsibility for the North Bay Fires ....................................... 102

20           (b)  Market Commentators Confirmed that the News Regarding Safety
21               Violations Proximately Caused PG&E's Share Price Decline on May
             25-29, 2018 .................................................................................. 104

22        5.  June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
23              Risk .................................................................................................... 105

24           (a)  The Market Learned the Truth of PG&E's Continued, Unsafe Use of
             Reclosers .................................................................................... 107

25           (b)  The Market Continued to Learn the Extent and Effects of PG&E's
26               Safety Violations and Responsibility for the North Bay Fires ................ 107

27           (c)  Market Commentators Confirmed that the Number and Range of
            Safety Violations Proximately Caused PG&E's Share Price Decline
28              on June 8-11, 2018 ...................................................................... 108

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

v

6.  November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 109

    (a)  The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire ..................................... 109

    (b)  Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline ............................................. 110

7.  November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 112

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ..................................... 112

    (b)  Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. .................................. 113

8.  November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 114

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ..................................... 114

    (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ................................... 115

9.  November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 116

    (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ..................................... 116

    (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ................................... 117

X.  SCIENTER UNDER THE EXCHANGE ACT ............................................. 118

A.  PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations ............................ 118

B.  Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It ........................ 120

C.  The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter ...................... 123

D.  PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations ...................................... 129

1.  PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

---

*Third Amended Consolidated Class Action Complaint*
*Civil Action No. 3:18-cv-03509-EJD*

vi

2. PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ................................................................................ 131

E. PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority ........................................................ 133

F. The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ........................................................................................... 135

G. After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up .................................................. 136

H. PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ..................................................................................... 140

XI. APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS ................................................. 141

XII. CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII. CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT ...................................... 144

XIV. NATURE OF THE SECURITIES ACT CLAIMS ................................................. 151

XV. OVERVIEW OF THE SECURITIES ACT VIOLATIONS ...................................... 151

XVI. THE SECURITIES ACT PARTIES ................................................................... 153

A. Securities Act Named Plaintiffs ....................................................................... 153

B. Bankrupt Entities ........................................................................................... 154

C. Securities Act Individual Defendants .............................................................. 154

D. Underwriter Defendants .................................................................................. 159

XVII. SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A. PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations ...................................................................................................... 162

1. Overview of Laws and Regulations Governing PG&E's Operations ............. 162

2. PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ..... 164

XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS ................................................................................................... 186

A. The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance ................................................................. 187

1. The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices ............. 188

2.   The Offering Documents Did Not Disclose PG&E's Investments in, Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B.   The Securities Act Defendants Materially Misled Investors Regarding PG&E's Liability for Wildfires ................................................................. 203

C.   PG&E's Offering Documents Misled Investors by Failing to Comply with Item 303's Disclosure Requirements and Disclosure Safety Violations ................. 208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX.     CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............. 212

XXI.    CLAIMS FOR RELIEF UNDER THE SECURITIES ACT .......................................... 214

XXII.  PRAYER FOR RELIEF ................................................................................... 216

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

viii

Page 71 of 165

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
160 of 278

**EXHIBIT B**
**YORK COUNTY ON BEHALF OF THE COUNTY OF YORK RETIREMENT FUND**
**TRANSACTIONS**

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 05/03/2018 | 2.95% due 03/01/2026 | 112,000 | $92.16 |
| 05/30/2018 | 2.95% due 03/01/2026 | 212,000 | $91.95 |
| 11/27/2017 | 3.3% due 12/01/2027 | 162,000 | $99.70 |
| 11/27/2017 | 3.3% due 12/01/2027 | 162,000 | $99.99 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 212,000 | $92.51 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 11/15/2018 | 2.95% due 03/01/2026 | 25,000 | $80.00 |
| 11/15/2018 | 2.95% due 03/01/2026 | 25,000 | $81.00 |
| 11/15/2018 | 2.95% due 03/01/2026 | 46,000 | $79.92 |
| 11/15/2018 | 2.95% due 03/01/2026 | 64,000 | $81.63 |
| 11/15/2018 | 2.95% due 03/01/2026 | 64,000 | $82.25 |
| 11/16/2018 | 2.95% due 03/01/2026 | 38,000 | $87.00 |
| 01/09/2019 | 2.95% due 03/01/2026 | 62,000 | $79.00 |
| 05/03/2018 | 3.3% due 12/01/2027 | 112,000 | $92.92 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 212,000 | $92.51 |
| 05/30/2018 | 3.3% due 12/01/2027 | 212,000 | $92.73 |

[e]Debt exchange offer.

# Electronic Proof of Claim_BJIYB27386

Final Audit Report                                                     2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZVCpf9oCkIKIEUTJ8DEaGXpWHODeAx9R |

## "Electronic Proof of Claim_BJIYB27386" History

📄 Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:56:49 PM GMT

📎 Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
   📎 Attachment
2019-10-21 - 2:58:32 PM GMT

📄 Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:58:32 PM GMT- IP address: 199.127.9.1

🖋 (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 2:58:34 PM GMT- IP address: 199.127.9.1

✅ Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:58:34 PM GMT

**Prime Clerk**    POWERED BY Adobe Sign

**United States Bankruptcy Court, Northern District of California**

Fill in this information to identify the case (Select only one Debtor per claim form):

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

York County on behalf of the County of York Retirement Fund

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Lowenstein Sandler LLP
Attn: Michael S. Etkin and Andrew Behlmann
One Lowenstein Drive
Roseland, NJ 07068

Contact phone 973-597-2500
Contact email 973-597-2400

Where should payments to the creditor be sent? (if different)

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 25:37:07    Page
163 of 1566

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ <u>Unliquidated (see addendum)</u>

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Case: 19-30088   Doc# 14629-1   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
164 of 278

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Yes. Check one:

| | | Amount entitled to priority |
|---|---|---|
| ☐ | Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ | Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ | Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ | Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ | Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ | Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

**Email:** abehlmann@lowenstein.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Andrew David Behlmann | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Counsel | | |
| Company | Lowenstein Sandler LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | One Lowenstein Drive | | |
| | Number     Street | | |
| | Roseland | NJ | 07068 |
| | City | State | ZIP Code |
| Contact phone | 973-597-2332 | Email | abehlmann@lowenstein.com |

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 15:37:07    Page
165 of 278

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
    (attach below)

☐ I do **not** have supporting documentation.

📎 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim

United States Bankruptcy Court                                      12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian. For** example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Case: 19-30088    Doc# 14627-4    Filed: 10/28/24    Entered: 10/28/24 25:37:07    Page
167 of 278

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

| Do not file these instructions with your form |
| --- |

| | |
|---|---|
| **LOWENSTEIN SANDLER LLP**<br>Michael S. Etkin *(pro hac vice)*<br>Andrew Behlmann *(pro hac vice)*<br>One Lowenstein Drive<br>Roseland, New Jersey 07068 | **MICHELSON LAW GROUP**<br>Randy Michelson (SBN 114095)<br>220 Montgomery Street, Suite 2100<br>San Francisco, California 94104 |
| *Bankruptcy Counsel to Claimant* | *Bankruptcy Counsel to Claimant* |
| **ROBBINS GELLER RUDMAN & DOWD LLP**<br>Darren J. Robbins (SBN 168593)<br>Brian E. Cochran (SBN 286202)<br>655 West Broadway, Suite 1900<br>San Diego, California 92101<br>Telephone 619-231-1058<br>darrenr@rgrdlaw.com<br>bcochran@rgrdlaw.com | **ROBBINS GELLER RUDMAN & DOWD LLP**<br>Willow E. Radcliffe (SBN 200089)<br>Kenneth J. Black (SBN 291871)<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, California 94104<br>Telephone 415-288-4545<br>willowr@rgrdlaw.com<br>kennyb@rgrdlaw.com |
| **VANOVERBEKE, MICHAUD & TIMMONY, P.C.**<br>Thomas C. Michaud<br>79 Alfred Street<br>Detroit, Michigan 48201<br>Telephone 313-578-1200<br>tmichaud@vmtlaw.com | |

*Counsel to Claimant*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>     - and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>               Debtors. | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered) |
| ☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | **ADDENDUM TO PROOF OF CLAIM** |

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:06   Page
169 of 278

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.    The Securities Litigation**

1.    On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]    Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]    Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2. A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**. The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B. The Claim**

3. As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**"). The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim. A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4. Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5. The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available. In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6. No payments have been made on account of the Claim.

7. The Claim is not subject to any setoff or counterclaim.

8. No security interest is held for the Claim.

9. The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.      Reservation of Rights**

10.  Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.  This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;
- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;
- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Claimant is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT**[3]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

3    Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto.  However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 15:37:03    Page
174 of 278

1   **LABATON SUCHAROW LLP**
    THOMAS A. DUBBS (*pro hac vice*)
2   LOUIS GOTTLIEB (*pro hac vice*)
    JEFFREY A. DUBBIN (#287199)
3   ARAM BOGHOSIAN (*pro hac vice*)
    140 Broadway
4   New York, New York 10005
    Telephone: (212) 907-0700
5   Facsimile: (212) 818-0477
    Email: tdubbs@labaton.com
6   lgottlieb@labaton.com
    jdubbin@labaton.com
7   aboghosian@labaton.com

8   *Counsel for Lead Plaintiff the Public Employees Retirement*
    *Association of New Mexico and Lead Counsel for the Class*
9
    **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
10  JAMES M. WAGSTAFFE (#95535)
    FRANK BUSCH (#258288)
11  100 Pine Street, Suite 725
    San Francisco, California 94111
12  Telephone: (415) 357-8900
    Facsimile: (415) 371-0500
13  Email: wagstaffe@wvbrlaw.com
    busch@wvbrlaw.com
14
    *Liaison Counsel for the Class*
15

16              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17                 **SAN FRANCISCO DIVISION**

18
19                                        Civil Action No. 3:18-cv-03509-EJD

20  IN RE PG&E CORPORATION               THIRD AMENDED CONSOLIDATED CLASS
    SECURITIES LITIGATION                ACTION COMPLAINT FOR VIOLATION OF
21                                       THE FEDERAL SECURITIES LAWS

22                                       JURY TRIAL DEMANDED

23
24
25
26
27
28

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

<p style="text-align:center">**TABLE OF CONTENTS**</p>

I.     INTRODUCTION ...................................................................................................... 1

II.    NATURE OF THE CASE ......................................................................................... 4

III.   JURISDICTION AND VENUE .............................................................................. 5

IV.   OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ................................... 5

    A.  PG&E's Failure to Comply with Safety Regulations Proximately Caused Wildfires in 2017 and Investors' Consequent Losses ...................................... 6

    B.  PG&E's Failure to Prioritize Safety Continued Unabated, Proximately Causing a Disastrous Wildfire in November 2018 as Well as Further Investor Losses .................................................................................................................. 8

       1.  After the North Bay Fires, PG&E Continued to Make False and Misleading Statements and Omissions ....................................................... 8

       2.  PG&E's Continuing Noncompliance With Safety Regulations Caused the Camp Fire .................................................................................................. 10

    C.  Exchange Act Claims Being Asserted ...................................................................12

V.    THE EXCHANGE ACT PARTIES ........................................................................ 13

VI.   SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

    A.  PG&E Operates Within a Robust Legal Regime ........................................................15

       1.  California Law Required PG&E to Maintain a Safe Distance Between Its Electrical Equipment and Nearby Vegetation ............................................. 15

       2.  California Law Required PG&E to Safely Maintain Its Electrical Equipment and Infrastructure .................................................................... 16

       3.  PG&E Is Regulated by the CPUC ............................................................... 17

          (a)  CPUC's General Orders 95 and 165 Impose Strict Safety Regulations on PG&E ........................................................................ 17

          (b)  CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol ................... 19

          (c)  PG&E Must Follow CPUC's Regulations Under Penalty of Law ............. 20

       4.  Cal Fire Is the Duly Authorized Investigative Arm of the State of California for Wildfires ........................................................................... 20

       5.  Under California's Inverse Condemnation Law, PG&E Would Not Bear the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably and Prudently .............................................................................................. 21

       6.  Federal Law Also Requires PG&E to Follow Minimum Safety Standards.......... 21

B. PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point............22

C. PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period .................................................................................................24

D. After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal ...........................................................................................................25

E. PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ................25

   1. PG&E Used Reclosers to Prioritize Convenience Over Safety ............................25

   2. PG&E Concealed Its Use of Reclosers from Investors During the Class Period ..................................................................................................................27

F. PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period .........................................28

   1. PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ................28

   2. PG&E Unsafely Flouts Safety Regulations ..........................................................28

   3. PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ....................................................................................................30

   4. PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ................................................................................................................30

      (a) PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period .............................30

      (b) PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards ...............32

G. Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

   1. PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires ..........................................................33

   2. PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire ....................................................................34

      (a) The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations ..................................................................................................34

      (b) The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations ..........................................................................37

H. PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety
Violations ..................................................................................................................38

    1.  PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety
Violations Caused the Deadly Butte Fire ............................................................. 38

    2.  PG&E Internally Acknowledged, Extensively Documented, and Tolerated
for Years the Safety Violations that Caused the Camp Fire ................................. 39

  I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to
Follow It Was a Proximate Cause of the Camp Fire .................................................43

    1.  PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor
of Shutting Off the Power ................................................................................... 45

      (a)  Criterion 1: the National Fire Danger Rating System Rated Jarbo
Gap as Having an "Extreme" Fire Danger Threat Level ............................. 45

      (b)  Criterion 2: the National Weather Service Declared a "Red Flag
Warning" for the Area ............................................................................... 47

      (c)  Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel)
Weighed in Favor of a Shutoff ................................................................... 47

      (d)  Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor
of a Shutoff ............................................................................................... 49

    2.  All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

      (a)  Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity
Levels ....................................................................................................... 52

      (b)  Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed......... 53

      (c)  Criterion 5: Site-Specific Conditions Further Favored Shutoff................... 54

    3.  PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed
in Favor of Shutting Off the Power ...................................................................... 54

  J.  PG&E's Bankruptcy and Other Post-Class-Period Developments............................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS
UNDER THE EXCHANGE ACT ......................................................................................... 59

  A. Overview of Defendants' Fraudulent Course of Conduct ..........................................59

  B. Defendants Made Materially False and Misleading Statements and Omissions
Regarding Its Vegetation Management Activities and Compliance with
Wildfire Safety Regulations Before the North Bay Fires ...........................................61

    1.  April 29, 2015 – Misstatement No. 1....................................................................... 61

    2.  October 16, 2015 – Misstatement No. 2 ................................................................. 62

    3.  November 18, 2015 – Misstatement No. 3 ............................................................. 64

4. October 6, 2016 – Misstatement No. 4 .................................................................. 65

5. August 9, 2017 – Misstatement No. 5 .................................................................. 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ........................................................ 69

1. May 23, 2016 – Misstatement No. 6 ................................................................... 70

2. November 4, 2016 – Misstatement No. 7 ........................................................... 71

3. May 31, 2017 – Misstatement No. 8 .................................................................. 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge ............................... 74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ............................................................ 75

1. October 31, 2017 – Misstatement No. 9 .............................................................. 75

2. November 2, 2017 – Misstatement No. 10 .......................................................... 76

3. November 2, 2017 – Misstatement No. 11 .......................................................... 79

4. November 5, 2017 – Misstatement No. 12 .......................................................... 81

5. May 25, 2018 – Misstatement No. 13 ................................................................. 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ........................................... 85

1. June 8, 2018 – Misstatement No. 14 .................................................................. 85

2. June 8, 2018 – Misstatement No. 15 .................................................................. 87

3. September 27, 2018 – Misstatement No. 16 ....................................................... 88

4. October 9, 2018 – Misstatement No. 17 ............................................................. 90

5. October 9, 2018 – Misstatement No. 18 ............................................................. 91

6. November 8, 2018 – Misstatement No. 19 .......................................................... 92

VIII. MATERIALITY UNDER THE EXCHANGE ACT ............................................... 93

IX. LOSS CAUSATION UNDER THE EXCHANGE ACT ......................................... 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ......................................................................................... 94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires ......................... 95

C. PG&E's Safety Violations Caused the Devastating Camp Fire ...................................95

D. As the Market Learned About the Effects and Extent of PG&E's Inadequate
   Safety Practices, the Price of PG&E's Securities Fell Dramatically ...........................96

   1. October 12, 2017 – Corrective Disclosure and/or Materialization of
   Concealed Risk ....................................................................................................96

      (a)  The Market Began to Learn the Extent and Effects of PG&E's
         Responsibility for the North Bay Fires ........................................................96

      (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
         Decline on October 12, 2017 .......................................................................97

   2. October 13-16, 2017 – Corrective Disclosure and/or Materialization of
   Concealed Risk ....................................................................................................99

      (a)  The Market Continued to Learn the Extent and Effects of PG&E's
         Responsibility for the North Bay Fires ........................................................99

      (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
         Decline on October 13, 2017 .......................................................................99

   3. December 20, 2017 – Corrective Disclosure and/or Materialization of
   Concealed Risk ..................................................................................................100

      (a)  The Market Continued to Learn the Extent and Effects of PG&E's
         Responsibility for the North Bay Fires ......................................................100

      (b)  Market Commentators Confirmed the Proximate Cause of PG&E's
         Share Price Decline on December 20, 2017 ...............................................101

   4. May 25, 2018 – Corrective Disclosure and/or Materialization of
   Concealed Risk ..................................................................................................102

      (a)  The Market Continued to Learn the Extent and Effects of PG&E's
         Responsibility for the North Bay Fires ......................................................102

      (b)  Market Commentators Confirmed that the News Regarding Safety
         Violations Proximately Caused PG&E's Share Price Decline on May
         25-29, 2018 ................................................................................................104

   5. June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
   Risk ...................................................................................................................105

      (a)  The Market Learned the Truth of PG&E's Continued, Unsafe Use of
         Reclosers.....................................................................................................107

      (b)  The Market Continued to Learn the Extent and Effects of PG&E's
         Safety Violations and Responsibility for the North Bay Fires .................107

      (c)  Market Commentators Confirmed the Number and Range of
         Safety Violations Proximately Caused PG&E's Share Price Decline
         on June 8-11, 2018......................................................................................108

6. November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 109

    (a) The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire ................................................ 109

    (b) Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline ................................................................ 110

7. November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 112

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................ 112

    (b) Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ................................................ 113

8. November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 114

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................ 114

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ................................................ 115

9. November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................................ 116

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ................................................ 116

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ................................................ 117

X. SCIENTER UNDER THE EXCHANGE ACT ................................................ 118

A. PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations .................... 118

B. Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It .................... 120

C. The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter .................... 123

D. PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations .................... 129

    1. PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

|  |  | 2. | PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ....................... 131 |
|  | E. | PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority ....................... 133 |
|  | F. | The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ....................... 135 |
|  | G. | After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up ....................... 136 |
|  | H. | PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ....................... 140 |

XI. APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS ....................... 141

XII. CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII. CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT ....................... 144

XIV. NATURE OF THE SECURITIES ACT CLAIMS ....................... 151

XV. OVERVIEW OF THE SECURITIES ACT VIOLATIONS ....................... 151

XVI. THE SECURITIES ACT PARTIES ....................... 153

    A. Securities Act Named Plaintiffs ....................... 153

    B. Bankrupt Entities ....................... 154

    C. Securities Act Individual Defendants ....................... 154

    D. Underwriter Defendants ....................... 159

XVII. SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS ....................... 162

    A. PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations ....................... 162

        1. Overview of Laws and Regulations Governing PG&E's Operations ....................... 162

        2. PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ....................... 164

XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS ....................... 186

    A. The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance ....................... 187

        1. The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices ....................... 188

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

vii

2.   The Offering Documents Did Not Disclose PG&E's Investments in,
Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B.   The Securities Act Defendants Materially Misled Investors Regarding
PG&E's Liability for Wildfires ................................................................................203

C.   PG&E's Offering Documents Misled Investors by Failing to Comply with
Item 303's Disclosure Requirements and Disclosure Safety Violations ..................208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX.    CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS............. 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT .......................................... 214

XXII.  PRAYER FOR RELIEF ................................................................................................. 216

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 05/03/2018 | 2.95% due 03/01/2026 | 112,000 | $92.16 |
| 05/30/2018 | 2.95% due 03/01/2026 | 212,000 | $91.95 |
| 11/27/2017 | 3.3% due 12/01/2027 | 162,000 | $99.70 |
| 11/27/2017 | 3.3% due 12/01/2027 | 162,000 | $99.99 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 212,000 | $92.51 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 11/15/2018 | 2.95% due 03/01/2026 | 25,000 | $80.00 |
| 11/15/2018 | 2.95% due 03/01/2026 | 25,000 | $81.00 |
| 11/15/2018 | 2.95% due 03/01/2026 | 46,000 | $79.92 |
| 11/15/2018 | 2.95% due 03/01/2026 | 64,000 | $81.63 |
| 11/15/2018 | 2.95% due 03/01/2026 | 64,000 | $82.25 |
| 11/16/2018 | 2.95% due 03/01/2026 | 38,000 | $87.00 |
| 01/09/2019 | 2.95% due 03/01/2026 | 62,000 | $79.00 |
| 05/03/2018 | 3.3% due 12/01/2027 | 112,000 | $92.92 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 212,000 | $92.51 |
| 05/30/2018 | 3.3% due 12/01/2027 | 212,000 | $92.73 |

[e]Debt exchange offer.

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 25:37:06   Page
1964 of 1568

# Electronic Proof of Claim_BJIYB27386

Final Audit Report                                                        2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZVCpf9oCkIKIEUTJ8DEaGXpWHODeAx9R |

## "Electronic Proof of Claim_BJIYB27386" History

Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:56:49 PM GMT

Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
Attachment
2019-10-21 - 2:58:32 PM GMT

Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 2:58:32 PM GMT- IP address: 199.127.9.1

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 2:58:34 PM GMT- IP address: 199.127.9.1

Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 2:58:34 PM GMT

**Prime Clerk**  POWERED BY Adobe Sign

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

**Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.**

## Part 1: Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | City of Warren Police and Fire Retirement System |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

2. Has this claim been acquired from someone else?
☒ No
☐ Yes. From whom? _____

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Lowenstein Sandler LLP
Attn: Michael S. Etkin and Andrew Behlmann
One Lowenstein Drive
Roseland, NJ 07068

Contact phone 973-597-2500
Contact email 973-597-2400

**Where should payments to the creditor be sent?** (if different)

Contact phone _____
Contact email _____

4. Does this claim amend one already filed?
☒ No
☐ Yes. Claim number on court claims registry (if known)_____

Filed on _____ MM / DD / YYYY

5. Do you know if anyone else has filed a proof of claim for this claim?
☒ No
☐ Yes. Who made the earlier filing? _____

Official Form 410 Proof of Claim page 1

Claim Number: 72620

Page 97 of 165

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
186 of 256

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ <u>Unliquidated (see addendum)</u>

**Does this amount include interest or other charges?**

☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**      $_____

**Amount of the claim that is secured:**      $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**      $_____

**Annual Interest Rate** (when case was filed) _____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**      $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

| Part 3: | Sign Below |
|---|---|

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Andrew David Behlmann |
|---|---|
| | First name       Middle name       Last name |

| Title | Counsel |
|---|---|

| Company | Lowenstein Sandler LLP |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | One Lowenstein Drive |
|---|---|
| | Number       Street |
| | Roseland       NJ       07068 |
| | City       State       ZIP Code |

| Contact phone | 973-597-2332 | Email | abehlmann@lowenstein.com |
|---|---|---|---|

---

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do **not** have supporting documentation.

📎 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

---

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

---

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

---

**Do not file these instructions with your form**

Case: 19-30088    Doc# 14629-1    Filed: 10/28/24    Entered: 10/28/24 15:37:07    Page
193 of 278

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin *(pro hac vice)*
Andrew Behlmann *(pro hac vice)*
One Lowenstein Drive
Roseland, New Jersey 07068

*Bankruptcy Counsel to Claimant*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone  619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD &
TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone  313-578-1200
tmichaud@vmtlaw.com

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Claimant*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone  415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Counsel to Claimant*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered) |
| ☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | **ADDENDUM TO PROOF OF CLAIM** |

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.     The Securities Litigation**

1.     On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]  Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]  Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading

investors in the Debtors' securities from April 29, 2015 through November 15,

2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the
  Securities Act in connection with the Notes Offerings, for which the offering
  documents contained thirty-four materially misleading statements.

2. A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**. The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.     The Claim**

3. As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**"). The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim. A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4. Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5. The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available. In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6. No payments have been made on account of the Claim.

7. The Claim is not subject to any setoff or counterclaim.

8. No security interest is held for the Claim.

9. The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.     Reservation of Rights**

10.  Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.  This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;
- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;
- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Claimant is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT**[3]

---

[3] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

1   **LABATON SUCHAROW LLP**
    THOMAS A. DUBBS (*pro hac vice*)
2   LOUIS GOTTLIEB (*pro hac vice*)
    JEFFREY A. DUBBIN (#287199)
3   ARAM BOGHOSIAN (*pro hac vice*)
    140 Broadway
4   New York, New York 10005
    Telephone: (212) 907-0700
5   Facsimile: (212) 818-0477
    Email: tdubbs@labaton.com
6   lgottlieb@labaton.com
    jdubbin@labaton.com
7   aboghosian@labaton.com

8   *Counsel for Lead Plaintiff the Public Employees Retirement*
    *Association of New Mexico and Lead Counsel for the Class*
9

    **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
10  JAMES M. WAGSTAFFE (#95535)
    FRANK BUSCH (#258288)
11  100 Pine Street, Suite 725
    San Francisco, California 94111
12  Telephone: (415) 357-8900
    Facsimile: (415) 371-0500
13  Email: wagstaffe@wvbrlaw.com
    busch@wvbrlaw.com
14
    *Liaison Counsel for the Class*
15

16              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17              **SAN FRANCISCO DIVISION**

18

19                                          Civil Action No. 3:18-cv-03509-EJD

20  IN RE PG&E CORPORATION            THIRD AMENDED CONSOLIDATED CLASS
    SECURITIES LITIGATION             ACTION COMPLAINT FOR VIOLATION OF
21                                    THE FEDERAL SECURITIES LAWS

22                                    JURY TRIAL DEMANDED

23

24

25

26

27

28

---

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................. 1

II.     NATURE OF THE CASE .................................................................. 4

III.    JURISDICTION AND VENUE ........................................................ 5

IV.     OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ................ 5

        A.  PG&E's Failure to Comply with Safety Regulations Proximately Caused
            Wildfires in 2017 and Investors' Consequent Losses ..................... 6

        B.  PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
            Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
            Losses ............................................................................................. 8

            1.  After the North Bay Fires, PG&E Continued to Make False and
                Misleading Statements and Omissions ...................................... 8

            2.  PG&E's Continuing Noncompliance With Safety Regulations Caused the
                Camp Fire .................................................................................. 10

        C.  Exchange Act Claims Being Asserted ........................................... 12

V.      THE EXCHANGE ACT PARTIES .................................................. 13

VI.     SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

        A.  PG&E Operates Within a Robust Legal Regime ............................ 15

            1.  California Law Required PG&E to Maintain a Safe Distance Between Its
                Electrical Equipment and Nearby Vegetation ........................... 15

            2.  California Law Required PG&E to Safely Maintain Its Electrical
                Equipment and Infrastructure ................................................... 16

            3.  PG&E Is Regulated by the CPUC .............................................. 17

                (a)  CPUC's General Orders 95 and 165 Impose Strict Safety
                     Regulations on PG&E ........................................................ 17

                (b)  CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
                     Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol ..... 19

                (c)  PG&E Must Follow CPUC's Regulations Under Penalty of Law ..... 20

            4.  Cal Fire Is the Duly Authorized Investigative Arm of the State of
                California for Wildfires .............................................................. 20

            5.  Under California's Inverse Condemnation Law, PG&E Would Not Bear
                the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
                and Prudently ............................................................................. 21

            6.  Federal Law Also Requires PG&E to Follow Minimum Safety Standards .......... 21

B.  PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point.............22

C.  PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period ...............................................................24

D.  After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal..........................................................................25

E.  PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

    1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ...........................25

    2.  PG&E Concealed Its Use of Reclosers from Investors During the Class Period .......................................................................27

F.  PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period................................28

    1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ...............28

    2.  PG&E Unsafely Flouts Safety Regulations .......................................28

    3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ...............................................................30

    4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ...................................................................30

        (a)  PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period...........................30

        (b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards...............32

G.  Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire .......33

    1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires........................................33

    2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire...........................................34

        (a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations.............................................................34

        (b)  The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations......................................................37

H.  PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety
Violations .................................................................................................................38

   1.  PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety
Violations Caused the Deadly Butte Fire ............................................................. 38

   2.  PG&E Internally Acknowledged, Extensively Documented, and Tolerated
for Years the Safety Violations that Caused the Camp Fire ................................ 39

  I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to
Follow It Was a Proximate Cause of the Camp Fire ...................................................43

   1.  PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor
of Shutting Off the Power ................................................................................... 45

     (a)  Criterion 1: the National Fire Danger Rating System Rated Jarbo
Gap as Having an "Extreme" Fire Danger Threat Level ............................ 45

     (b)  Criterion 2: the National Weather Service Declared a "Red Flag
Warning" for the Area ................................................................................ 47

     (c)  Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel)
Weighed in Favor of a Shutoff ................................................................... 47

     (d)  Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor
of a Shutoff ................................................................................................ 49

   2.  All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

     (a)  Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity
Levels ........................................................................................................ 52

     (b)  Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed ......... 53

     (c)  Criterion 5: Site-Specific Conditions Further Favored Shutoff ................... 54

   3.  PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed
in Favor of Shutting Off the Power ..................................................................... 54

  J.  PG&E's Bankruptcy and Other Post-Class-Period Developments .............................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS
UNDER THE EXCHANGE ACT ....................................................................................... 59

  A.  Overview of Defendants' Fraudulent Course of Conduct ..........................................59

  B.  Defendants Made Materially False and Misleading Statements and Omissions
Regarding Its Vegetation Management Activities and Compliance with
Wildfire Safety Regulations Before the North Bay Fires ...........................................61

   1.  April 29, 2015 – Misstatement No. 1 .................................................................. 61

   2.  October 16, 2015 – Misstatement No. 2 ............................................................. 62

   3.  November 18, 2015 – Misstatement No. 3 .......................................................... 64

4. October 6, 2016 – Misstatement No. 4 ............................................................. 65

5. August 9, 2017 – Misstatement No. 5 ............................................................... 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires .........................................................69

1. May 23, 2016 – Misstatement No. 6 .................................................................. 70

2. November 4, 2016 – Misstatement No. 7 ........................................................... 71

3. May 31, 2017 – Misstatement No. 8 .................................................................. 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge ................................74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations .............................................................75

1. October 31, 2017 – Misstatement No. 9 ............................................................ 75

2. November 2, 2017 – Misstatement No. 10 ......................................................... 76

3. November 2, 2017 – Misstatement No. 11 ......................................................... 79

4. November 5, 2017 – Misstatement No. 12 ......................................................... 81

5. May 25, 2018 – Misstatement No. 13 ................................................................ 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ......................................................85

1. June 8, 2018 – Misstatement No. 14 .................................................................. 85

2. June 8, 2018 – Misstatement No. 15 .................................................................. 87

3. September 27, 2018 – Misstatement No. 16 ....................................................... 88

4. October 9, 2018 – Misstatement No. 17 ............................................................ 90

5. October 9, 2018 – Misstatement No. 18 ............................................................ 91

6. November 8, 2018 – Misstatement No. 19 ......................................................... 92

VIII.   MATERIALITY UNDER THE EXCHANGE ACT ............................................................ 93

IX.     LOSS CAUSATION UNDER THE EXCHANGE ACT ...................................................... 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ...........................................................................94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires ........................95

C.  PG&E's Safety Violations Caused the Devastating Camp Fire ................................. 95

D.  As the Market Learned About the Effects and Extent of PG&E's Inadequate
     Safety Practices, the Price of PG&E's Securities Fell Dramatically .......................... 96

     1.  October 12, 2017 – Corrective Disclosure and/or Materialization of
          Concealed Risk ................................................................................................... 96

          (a)   The Market Began to Learn the Extent and Effects of PG&E's
                 Responsibility for the North Bay Fires ....................................................... 96

          (b)   Market Commentators Confirmed the Cause of PG&E's Share Price
                 Decline on October 12, 2017 ..................................................................... 97

     2.  October 13-16, 2017 – Corrective Disclosure and/or Materialization of
          Concealed Risk ................................................................................................... 99

          (a)   The Market Continued to Learn the Extent and Effects of PG&E's
                 Responsibility for the North Bay Fires ....................................................... 99

          (b)   Market Commentators Confirmed the Cause of PG&E's Share Price
                 Decline on October 13, 2017 ..................................................................... 99

     3.  December 20, 2017 – Corrective Disclosure and/or Materialization of
          Concealed Risk ................................................................................................. 100

          (a)   The Market Continued to Learn the Extent and Effects of PG&E's
                 Responsibility for the North Bay Fires ..................................................... 100

          (b)   Market Commentators Confirmed the Proximate Cause of PG&E's
                 Share Price Decline on December 20, 2017 .............................................. 101

     4.  May 25, 2018 – Corrective Disclosure and/or Materialization of
          Concealed Risk ................................................................................................. 102

          (a)   The Market Continued to Learn the Extent and Effects of PG&E's
                 Responsibility for the North Bay Fires ..................................................... 102

          (b)   Market Commentators Confirmed that the News Regarding Safety
                 Violations Proximately Caused PG&E's Share Price Decline on May
                 25-29, 2018 .......................................................................................... 104

     5.  June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
          Risk ................................................................................................................. 105

          (a)   The Market Learned the Truth of PG&E's Continued, Unsafe Use of
                 Reclosers ............................................................................................... 107

          (b)   The Market Continued to Learn the Extent and Effects of PG&E's
                 Safety Violations and Responsibility for the North Bay Fires ................ 107

          (c)   Market Commentators Confirmed that the Number and Range of
                 Safety Violations Proximately Caused PG&E's Share Price Decline
                 on June 8-11, 2018 ................................................................................. 108

6.  November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ....................................................................................... 109

   (a)  The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire ........................................... 109

   (b)  Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline ........................................................... 110

7.  November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ....................................................................................... 112

   (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ........................................... 112

   (b)  Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ............................................... 113

8.  November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ....................................................................................... 114

   (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ........................................... 114

   (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ................................................. 115

9.  November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ....................................................................................... 116

   (a)  The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire ........................................... 116

   (b)  Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ................................................. 117

X.  SCIENTER UNDER THE EXCHANGE ACT ............................................................ 118

A.  PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations ......................... 118

B.  Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It ........................................................ 120

C.  The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter ..................... 123

D.  PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations .......................................... 129

1.  PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

| | | |
|---|---|---|
| 1 | 2.  PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored | 131 |
| 2 | | |
| 3 | E.  PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority | 133 |
| 4 | | |
| 5 | F.  The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors | 135 |
| 6 | G.  After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up | 136 |
| 7 | | |
| 8 | H.  PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter | 140 |
| 9 | XI.     APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS | 141 |
| 10 | | |
| 11 | XII.    CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS | 142 |
| 12 | XIII.   CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT | 144 |
| 13 | XIV.   NATURE OF THE SECURITIES ACT CLAIMS | 151 |
| 14 | XV.    OVERVIEW OF THE SECURITIES ACT VIOLATIONS | 151 |
| 15 | XVI.   THE SECURITIES ACT PARTIES | 153 |
| 16 | A.  Securities Act Named Plaintiffs | 153 |
| 17 | B.  Bankrupt Entities | 154 |
| 18 | C.  Securities Act Individual Defendants | 154 |
| 19 | D.  Underwriter Defendants | 159 |
| 20 | XVII.  SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS | 162 |
| 21 | A.  PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations | 162 |
| 22 | 1.  Overview of Laws and Regulations Governing PG&E's Operations | 162 |
| 23 | 2.  PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires | 164 |
| 24 | XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS | 186 |
| 25 | | |
| 26 | A.  The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance | 187 |
| 27 | 1.  The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices | 188 |
| 28 | | |

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

1

      2.  The Offering Documents Did Not Disclose PG&E's Investments in, Commitment to, and Practices Related to Safety Were Inadequate ................... 194

2

   B.  The Securities Act Defendants Materially Misled Investors Regarding PG&E's Liability for Wildfires ................................................................203

3

   C.  PG&E's Offering Documents Misled Investors by Failing to Comply with Item 303's Disclosure Requirements and Disclosure Safety Violations ..................208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS ...................................... 211

XX.   CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS............. 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT ........................................... 214

XXII.  PRAYER FOR RELIEF ................................................................................................ 216

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Common Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 05/29/2015 | 21 | $53.47 |
| 12/18/2015 | 19 | $53.11 |
| 02/29/2016 | 15 | $56.73 |
| 03/31/2016 | 9 | $59.72 |
| 05/05/2016 | 956 | $59.15 |
| 05/31/2016 | 16 | $60.08 |
| 06/24/2016 | 65 | $62.66 |
| 07/06/2016 | 18 | $65.39 |
| 09/14/2016 | 23 | $61.43 |
| 12/16/2016 | 23 | $61.04 |
| 02/28/2017 | 19 | $66.75 |
| 03/31/2017 | 19 | $66.36 |
| 09/15/2017 | 29 | $70.28 |
| 12/15/2017 | 27 | $53.05 |
| 03/16/2018 | 25 | $45.08 |

| Date Sold | Amount of Shares Sold | Price |
|---|---|---|
| 07/08/2016 | 6 | $64.83 |
| 03/01/2017 | 8 | $65.85 |
| 03/27/2017 | 142 | $67.19 |
| 06/23/2017 | 27 | $68.03 |
| 06/22/2018 | 125 | $42.92 |
| 09/21/2018 | 223 | $46.79 |
| 10/15/2018 | 1,170 | $47.84 |

*Opening position of 1,081 shares for common stock.

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 12/21/2017 | 3.3% due 12/01/2027 | 75,000 | $98.89 |
| 05/01/2018 | 3.3% due 12/01/2027 | 25,000 | $93.09 |
| 05/14/2018[e] | 3.3% due 12/01/2027 | 100,000 | $92.51 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 05/14/2018[e] | 3.3% due 12/01/2027 | 100,000 | $92.51 |
| 01/14/2019 | 3.3% due 12/01/2027 | 100,000 | $78.00 |

[e]Debt exchange offer.

# Electronic Proof of Claim_@A@EQ27386

Final Audit Report                                                    2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAScGC1hcgT2a2j4aCuGECxXWUq7rQqDYt |

## "Electronic Proof of Claim_@A@EQ27386" History

📄 Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:03:47 PM GMT

📎 Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
📎 Attachment
2019-10-21 - 3:05:26 PM GMT

📄 Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 3:05:26 PM GMT- IP address: 199.127.9.1

🖊 (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 3:05:29 PM GMT- IP address: 199.127.9.1

✅ Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:05:29 PM GMT

**Prime Clerk**  POWERED BY Adobe Sign

# United States Bankruptcy Court, Northern District of California

**Fill in this information to identify the case (Select only one Debtor per claim form):**

☐ PG&E Corporation (19-30088)

☒ Pacific Gas and Electric Company (19-30089)

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

## Part 1:  Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Mid-Jersey Trucking Industry & Local No. 701 Pension Fund |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

2. **Has this claim been acquired from someone else?**
☒ No
☐ Yes. From whom? _____

3. **Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Lowenstein Sandler LLP<br>Attn: Michael S. Etkin & Andrew Behlmann<br>One Lowenstein Drive<br>Roseland, NJ 07068 | |
| Contact phone 973-597-2500 | Contact phone _____ |
| Contact email 973-597-2400 | Contact email _____ |

4. **Does this claim amend one already filed?**
☒ No
☐ Yes.  Claim number on court claims registry (if known) _____  Filed on ___/___/___ (MM / DD / YYYY)

5. **Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes. Who made the earlier filing? _____

Claim Number: 69202

Official Form 410

Proof of Claim

Page 120 of 165

page 1

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
209 of 278

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

**7. How much is the claim?**

$ _Unliquidated (see addendum)_

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:

| | Amount entitled to priority |
|---|---|

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3: Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

Email: abehlmann@lowenstein.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Andrew David Behlmann |
|---|---|
| | First name        Middle name        Last name |
| Title | Counsel |
| Company | Lowenstein Sandler LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | One Lowenstein Drive |
| | Number        Street |
| | Roseland        NJ        07068 |
| | City        State        ZIP Code |
| Contact phone | 973-597-2332        Email  abehlmann@lowenstein.com |

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 15:37:07    Page
213 of 278

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do **not** have supporting documentation.

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Proof of Claim

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 25:37:03    Page
225 of 268

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

| **Do not file these instructions with your form** |
| --- |

Case: 19-30088    Doc# 14629-1    Filed: 10/28/24    Entered: 10/28/24 15:37:03    Page
226 of 278

1 | **LOWENSTEIN SANDLER LLP**
Michael S. Etkin *(pro hac vice)*
2 | Andrew Behlmann *(pro hac vice)*
One Lowenstein Drive
3 | Roseland, New Jersey 07068

4 | *Bankruptcy Counsel to Claimant*

5 | **ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
6 | Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
7 | San Diego, California 92101
Telephone  619-231-1058
8 | darrenr@rgrdlaw.com
bcochran@rgrdlaw.com
9 |
**VANOVERBEKE, MICHAUD &**
10 | **TIMMONY, P.C.**
Thomas C. Michaud
11 | 79 Alfred Street
Detroit, Michigan 48201
12 | Telephone  313-578-1200
tmichaud@vmtlaw.com
13 |

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Claimant*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone  415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Counsel to Claimant*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

In re:

PG&E CORPORATION

- and –

PACIFIC GAS AND ELECTRIC
COMPANY,

Debtors.

☒ Affects Both Debtors
☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric
Company

Case No. 19-30088 (DM) (Lead Case)

Chapter 11

(Jointly Administered)

**ADDENDUM TO PROOF OF CLAIM**

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

A.     **The Securities Litigation**

1.     On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]  Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]  Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2. A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**. The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.     The Claim**

3. As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**"). The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim. A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4. Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5. The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available. In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6. No payments have been made on account of the Claim.

7. The Claim is not subject to any setoff or counterclaim.

8. No security interest is held for the Claim.

9. The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.    Reservation of Rights**

10.    Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.    This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;
- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;
- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Claimant is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT**[3]

---

[3]    Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

1 | **LABATON SUCHAROW LLP**
THOMAS A. DUBBS (*pro hac vice*)
2 | LOUIS GOTTLIEB (*pro hac vice*)
JEFFREY A. DUBBIN (#287199)
3 | ARAM BOGHOSIAN (*pro hac vice*)
140 Broadway
4 | New York, New York 10005
Telephone: (212) 907-0700
5 | Facsimile: (212) 818-0477
Email: tdubbs@labaton.com
6 | lgottlieb@labaton.com
jdubbin@labaton.com
7 | aboghosian@labaton.com

8 | *Counsel for Lead Plaintiff the Public Employees Retirement*
*Association of New Mexico and Lead Counsel for the Class*
9

10 | **WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
JAMES M. WAGSTAFFE (#95535)
11 | FRANK BUSCH (#258288)
100 Pine Street, Suite 725
12 | San Francisco, California 94111
Telephone: (415) 357-8900
13 | Facsimile: (415) 371-0500
Email: wagstaffe@wvbrlaw.com
14 | busch@wvbrlaw.com

15 | *Liaison Counsel for the Class*

16 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
17 | **SAN FRANCISCO DIVISION**

18

19 | Civil Action No. 3:18-cv-03509-EJD

20 | IN RE PG&E CORPORATION
SECURITIES LITIGATION
21 |

THIRD AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT FOR VIOLATION OF
THE FEDERAL SECURITIES LAWS

JURY TRIAL DEMANDED

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................... 1

II.  NATURE OF THE CASE ................................................................................. 4

III.  JURISDICTION AND VENUE ....................................................................... 5

IV.  OVERVIEW OF THE EXCHANGE ACT VIOLATIONS .............................. 5

 A.  PG&E's Failure to Comply with Safety Regulations Proximately Caused Wildfires in 2017 and Investors' Consequent Losses ..................................... 6

 B.  PG&E's Failure to Prioritize Safety Continued Unabated, Proximately Causing a Disastrous Wildfire in November 2018 as Well as Further Investor Losses ............................................................................................................... 8

  1.  After the North Bay Fires, PG&E Continued to Make False and Misleading Statements and Omissions ....................................................... 8

  2.  PG&E's Continuing Noncompliance With Safety Regulations Caused the Camp Fire ............................................................................................... 10

 C.  Exchange Act Claims Being Asserted .......................................................... 12

V.  THE EXCHANGE ACT PARTIES .............................................................. 13

VI.  SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

 A.  PG&E Operates Within a Robust Legal Regime ......................................... 15

  1.  California Law Required PG&E to Maintain a Safe Distance Between Its Electrical Equipment and Nearby Vegetation .......................................... 15

  2.  California Law Required PG&E to Safely Maintain Its Electrical Equipment and Infrastructure ................................................................... 16

  3.  PG&E Is Regulated by the CPUC ............................................................. 17

   (a)  CPUC's General Orders 95 and 165 Impose Strict Safety Regulations on PG&E ........................................................................ 17

   (b)  CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol ................... 19

   (c)  PG&E Must Follow CPUC's Regulations Under Penalty of Law ............. 20

  4.  Cal Fire Is the Duly Authorized Investigative Arm of the State of California for Wildfires ............................................................................... 20

  5.  Under California's Inverse Condemnation Law, PG&E Would Not Bear the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably and Prudently ............................................................................................. 21

  6.  Federal Law Also Requires PG&E to Follow Minimum Safety Standards .......... 21

B.  PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point ............ 22

C.  PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period .......................................................................... 24

D.  After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal ......................................................................................... 25

E.  PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ................. 25

1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ........................... 25

2.  PG&E Concealed Its Use of Reclosers from Investors During the Class Period ........................................................................................................ 27

F.  PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period .......................................... 28

1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ................ 28

2.  PG&E Unsafely Flouts Safety Regulations ....................................................... 28

3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ......................................................................................... 30

4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ...................................................................................................... 30

(a)  PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period ............................ 30

(b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards ............... 32

G.  Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........ 33

1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires ...................................................... 33

2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire .............................................................. 34

(a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations .............................................................................................. 34

(b)  The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations ..................................................................... 37

H.  PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

ii

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety Violations ................................................................................................38

    1.  PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety Violations Caused the Deadly Butte Fire ...............................................38

    2.  PG&E Internally Acknowledged, Extensively Documented, and Tolerated for Years the Safety Violations that Caused the Camp Fire ....................39

I.  PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to Follow It Was a Proximate Cause of the Camp Fire ...................................................43

    1.  PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor of Shutting Off the Power ...............................................................45

        (a)  Criterion 1: the National Fire Danger Rating System Rated Jarbo Gap as Having an "Extreme" Fire Danger Threat Level ..............................45

        (b)  Criterion 2: the National Weather Service Declared a "Red Flag Warning" for the Area ....................................................................47

        (c)  Criterion 6: "Critically Dry Vegetation" (*i.e.*, Wildfire Fuel) Weighed in Favor of a Shutoff .....................................................47

        (d)  Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor of a Shutoff ...................................................................49

    2.  All of the Weather Criteria Weighed in Favor of Shutting Off the Power ..........50

        (a)  Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity Levels.......................................................................................52

        (b)  Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed.........53

        (c)  Criterion 5: Site-Specific Conditions Further Favored Shutoff...................54

    3.  PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed in Favor of Shutting Off the Power...............................................................54

J.  PG&E's Bankruptcy and Other Post-Class-Period Developments............................56

VII.    DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS UNDER THE EXCHANGE ACT ...........................................................................59

A. Overview of Defendants' Fraudulent Course of Conduct ..........................................59

B. Defendants Made Materially False and Misleading Statements and Omissions Regarding Its Vegetation Management Activities and Compliance with Wildfire Safety Regulations Before the North Bay Fires ............................................61

    1.  April 29, 2015 – Misstatement No. 1.................................................................61

    2.  October 16, 2015 – Misstatement No. 2 ............................................................62

    3.  November 18, 2015 – Misstatement No. 3 .........................................................64

4. October 6, 2016 – Misstatement No. 4 ................................................................ 65

5. August 9, 2017 – Misstatement No. 5 ................................................................ 67

C. Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires ........................................................ 69

1. May 23, 2016 – Misstatement No. 6 ................................................................. 70

2. November 4, 2016 – Misstatement No. 7 ......................................................... 71

3. May 31, 2017 – Misstatement No. 8 ................................................................. 72

D. After the North Bay Fires Erupted, the Truth Began to Emerge ............................... 74

E. After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ........................................................................ 75

1. October 31, 2017 – Misstatement No. 9 ........................................................... 75

2. November 2, 2017 – Misstatement No. 10 ....................................................... 76

3. November 2, 2017 – Misstatement No. 11 ....................................................... 79

4. November 5, 2017 – Misstatement No. 12 ....................................................... 81

5. May 25, 2018 – Misstatement No. 13 ............................................................... 83

F. While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ..................................................... 85

1. June 8, 2018 – Misstatement No. 14 ................................................................. 85

2. June 8, 2018 – Misstatement No. 15 ................................................................. 87

3. September 27, 2018 – Misstatement No. 16 ..................................................... 88

4. October 9, 2018 – Misstatement No. 17 ........................................................... 90

5. October 9, 2018 – Misstatement No. 18 ........................................................... 91

6. November 8, 2018 – Misstatement No. 19 ....................................................... 92

VIII. MATERIALITY UNDER THE EXCHANGE ACT ........................................................... 93

IX. LOSS CAUSATION UNDER THE EXCHANGE ACT ..................................................... 94

A. Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ............................................................................................... 94

B. PG&E's Safety Violations Caused the Devastating North Bay Fires ........................ 95

1      C.  PG&E's Safety Violations Caused the Devastating Camp Fire ...................................95

2      D.  As the Market Learned About the Effects and Extent of PG&E's Inadequate
          Safety Practices, the Price of PG&E's Securities Fell Dramatically .........................96

3

4         1.  October 12, 2017 – Corrective Disclosure and/or Materialization of
            Concealed Risk ........................................................................................... 96

5            (a)  The Market Began to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires .......................................... 96

6

7            (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
                Decline on October 12, 2017 ........................................................... 97

8         2.  October 13-16, 2017 – Corrective Disclosure and/or Materialization of
            Concealed Risk ........................................................................................... 99

9

10           (a)  The Market Continued to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires .......................................... 99

11            (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
                Decline on October 13, 2017 ........................................................... 99

12

13         3.  December 20, 2017 – Corrective Disclosure and/or Materialization of
            Concealed Risk ......................................................................................... 100

14           (a)  The Market Continued to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires ........................................ 100

15

16           (b)  Market Commentators Confirmed the Proximate Cause of PG&E's
                Share Price Decline on December 20, 2017 ................................ 101

17         4.  May 25, 2018 – Corrective Disclosure and/or Materialization of
            Concealed Risk ......................................................................................... 102

18

19           (a)  The Market Continued to Learn the Extent and Effects of PG&E's
                Responsibility for the North Bay Fires ........................................ 102

20            (b)  Market Commentators Confirmed that the News Regarding Safety
                Violations Proximately Caused PG&E's Share Price Decline on May

21                 25-29, 2018 ................................................................................ 104

22         5.  June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
            Risk ......................................................................................................... 105

23

24           (a)  The Market Learned the Truth of PG&E's Continued, Unsafe Use of
                Reclosers ...................................................................................... 107

25            (b)  The Market Continued to Learn the Extent and Effects of PG&E's
                Safety Violations and Responsibility for the North Bay Fires ................. 107

26

27           (c)  Market Commentators Confirmed that the Number and Range of
                Safety Violations Proximately Caused PG&E's Share Price Decline
                on June 8-11, 2018 ...................................................................... 108

28

6. November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 109

    (a) The Market Began to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.......................................................... 109

    (b) Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline................................................................ 110

7. November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 112

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.......................................................... 112

    (b) Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ................................................................ 113

8. November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 114

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.......................................................... 114

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ............................................................ 115

9. November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ...................................................................................... 116

    (a) The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire.......................................................... 116

    (b) Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ............................................................ 117

X. SCIENTER UNDER THE EXCHANGE ACT ............................................................ 118

A. PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations ..........................118

B. Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It ..........................................................120

C. The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter ......................123

D. PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations..................................................129

    1. PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

2. PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored .................................................................. 131

E. PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority .................................................. 133

F. The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors .................................................................................... 135

G. After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up ........................................... 136

H. PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter .......................................................................... 140

XI. APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS ................................................. 141

XII. CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII. CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT ...................................... 144

XIV. NATURE OF THE SECURITIES ACT CLAIMS ................................................. 151

XV. OVERVIEW OF THE SECURITIES ACT VIOLATIONS ..................................... 151

XVI. THE SECURITIES ACT PARTIES ................................................................... 153

A. Securities Act Named Plaintiffs ............................................................... 153

B. Bankrupt Entities ..................................................................................... 154

C. Securities Act Individual Defendants ....................................................... 154

D. Underwriter Defendants ........................................................................... 159

XVII. SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A. PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations ................................................................................................ 162

1. Overview of Laws and Regulations Governing PG&E's Operations ................. 162

2. PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ........ 164

XVIII. THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS .................................................................................................... 186

A. The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance .......................................................... 187

1. The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices ........ 188

2.   The Offering Documents Did Not Disclose PG&E's Investments in,
Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B.   The Securities Act Defendants Materially Misled Investors Regarding
PG&E's Liability for Wildfires ................................................................................ 203

C.   PG&E's Offering Documents Misled Investors by Failing to Comply with
Item 303's Disclosure Requirements and Disclosure Safety Violations ................. 208

XIX.   NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX.    CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............. 212

XXI.   CLAIMS FOR RELIEF UNDER THE SECURITIES ACT .......................................... 214

XXII.  PRAYER FOR RELIEF ................................................................................................. 216

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

viii

Page 140 of 165

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
229 of 278

**EXHIBIT B**
**MID-JERSEY TRUCKING INDUSTRY & LOCAL NO. 701 PENSION FUND TRANSACTIONS**

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 12/22/2017 | 3.3% due 03/15/2027 | 65,000 | $98.80 |
| 01/31/2018 | 4.0% due 12/01/2046 | 20,000 | $97.97 |
| 11/14/2018 | 4.75% due 02/15/2044 | 5,000 | $77.76 |
| 10/19/2015 | 6.05% due 03/01/2034 | 16,000 | $121.84 |
| 10/21/2015 | 6.05% due 03/01/2034 | 4,000 | $122.19 |
| 11/03/2015 | 6.05% due 03/01/2034 | 10,000 | $120.06 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 01/14/2019 | 3.3% due 03/15/2027 | 65,000 | $78.00 |
| 01/14/2019 | 4.0% due 12/01/2046 | 20,000 | $75.75 |
| 01/14/2019 | 4.75% due 02/15/2044 | 5,000 | $76.57 |
| 03/10/2017 | 6.05% due 03/01/2034 | 5,000 | $123.44 |
| 01/29/2018 | 6.05% due 03/01/2034 | 15,000 | $123.00 |
| 01/31/2018 | 6.05% due 03/01/2034 | 10,000 | $122.65 |

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:03   Page
230 of 278

# Electronic Proof of Claim_PDK#R27386

Final Audit Report                                                    2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA1YqYW8CGCbKcCPd7eQMxZcbihhpryujc |

## "Electronic Proof of Claim_PDK#R27386" History

Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:10:58 PM GMT

Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
Attachment
2019-10-21 - 3:12:36 PM GMT

Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 3:12:36 PM GMT- IP address: 199.127.9.1

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 3:12:42 PM GMT- IP address: 199.127.9.1

Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:12:42 PM GMT

Prime Clerk    POWERED BY Adobe Sign

**United States Bankruptcy Court, Northern District of California**

| Fill in this information to identify the case (Select only one Debtor per claim form): |
|---|
| ☒ PG&E Corporation (19-30088) |
| ☐ Pacific Gas and Electric Company (19-30089) |

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

Unless an exception in the Bar Date Order applies to you, you should not use this form to submit a claim that arises out of or relates to the fires that occurred in Northern California prior to January 29, 2019.

| Part 1: | Identify the Claim |
|---|---|

| 1. Who is the current creditor? | Mid-Jersey Trucking Industry & Local No. 701 Pension Fund |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. Has this claim been acquired from someone else? | ☒ No |
|---|---|
| | ☐ Yes. From whom? |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Lowenstein Sandler LLP Attn: Michael S. Etkin & Andrew Behlmann One Lowenstein Drive Roseland, NJ 07068 | |
| | Contact phone 973-597-2500 | Contact phone |
| | Contact email 973-597-2400 | Contact email |

| 4. Does this claim amend one already filed? | ☒ No |  |  | Filed on |
|---|---|---|---|---|
| | ☐ Yes. Claim number on court claims registry (if known) | | | MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
|---|---|
| | ☐ Yes. Who made the earlier filing? |

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 25:37:07    Page
232 of 278

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

---

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ _____ _____ _____

---

**7. How much is the claim?**

$ <u>Unliquidated (see addendum)</u> . **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Violations of federal securities laws (see addendum)

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No
☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Andrew Behlmann*
Andrew Behlmann (Oct 21, 2019)

**Email:** abehlmann@lowenstein.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Andrew David Behlmann |
| | First name          Middle name          Last name |
| Title | Counsel |
| Company | Lowenstein Sandler LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | One Lowenstein Drive |
| | Number          Street |
| | Roseland                    NJ          07068 |
| | City                    State          ZIP Code |
| Contact phone | 973-597-2332          Email  abehlmann@lowenstein.com |

---

Case: 19-30088   Doc# 14629-4   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
234 of 278

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
    (attach below)

☐ I do __not__ have supporting documentation.

📎 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                    12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of January 29, 2019.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A** *Proof of Claim* **form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://restructuring.primeclerk.com/pge.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

Case: 19-30088    Doc# 14629-4    Filed: 10/28/24    Entered: 10/28/24 25:37:07    Page 236 of 278

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Proof(s) of Claim to:**

**If by first class mail:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also hand deliver your completed Proof(s) of Claim to any of the following service center offices (beginning July 15, 2019 through the Bar Date (October 21, 2019) during the hours of 8:30 a.m. – 5:00 p.m. Prevailing Pacific Time):**

Chico Service Center
350 Salem Street
Chico, CA 95928

Marysville Service Center
231 "D" Street
Marysville, CA 95901

Napa Service Center
1850 Soscol Ave. Ste 105
Napa, CA 94559

Oroville Service Center
1567 Huntoon Street
Oroville, CA 95965

Redding Service Center
3600 Meadow View Road
Redding, CA 96002

Santa Rosa Service Center
111 Stony Circle
Santa Rosa, CA 95401

**Photocopy machines will not be available at the Claim Service Centers; you must bring a photocopy of your claim if you wish to receive a date-stamped copy.**

---

**Do not file these instructions with your form**

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (pro hac vice)
Andrew Behlmann (pro hac vice)
One Lowenstein Drive
Roseland, New Jersey 07068

*Bankruptcy Counsel to Claimant*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone  619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD &
TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone  313-578-1200
tmichaud@vmtlaw.com

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Claimant*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone  415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Counsel to Claimant*

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered) |
| ☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | **ADDENDUM TO PROOF OF CLAIM** |

The creditor identified on the accompanying proof of claim form ("**Claimant**"), one of the named plaintiffs in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "**Securities Litigation**"), pending in the United States District Court for the Northern District of California (the "**District Court**"), hereby submits this proof of claim (the "**Proof of Claim**") against each of the debtors in possession (the "**Debtors**") in the above-captioned chapter 11 bankruptcy cases (the "**Chapter 11 Cases**").

**A.      The Securities Litigation**

1.      On May 28, 2019, Claimant and the other plaintiffs in the Securities Litigation[1] filed the *Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws* (the "**TAC**") in the Securities Litigation.[2]  In the TAC, Lead Plaintiff, on behalf of itself and a proposed class comprised of all persons and entities who, during the period from April 29, 2015 through November 15, 2018, inclusive (the "**Class Period**"), purchased or otherwise acquired publicly traded securities of the Debtors and were damaged thereby, together with the other plaintiffs in the Securities Litigation, asserts claims pursuant to (a) the Securities Exchange Act of 1934 (the "**Exchange Act**"), against certain of the Debtors' current and former officers and directors (the "**Exchange Act Defendants**"), (b) the Securities Act of 1933 (the "**Securities Act**"), against certain of the Debtors' current and former officers and directors and the underwriters (collectively, the "**Securities Act Defendants**" and together with the Exchange Act Defendants, the "**Defendants**") of the Debtors' four public senior notes offerings (the "**Notes Offerings**") on March 1, 2016, December 1, 2016, March 10, 2017, and April 2, 2018, in which the Debtors offered and sold approximately $4.35 billion of registered senior notes.  As more fully set forth in the TAC:

- the Debtors and the Exchange Act Defendants violated Sections 10(b) and 20(a)

---

[1]      Public Employees Retirement Association of New Mexico is the court-appointed lead plaintiff in the Securities Litigation ("**Lead Plaintiff**").  York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund are additional named plaintiffs.

[2]      Before the Debtors filed these Chapter 11 Cases, the Debtors were named as defendants in the cases that have been consolidated into the Securities Litigation.  The Debtors are named as Exchange Act Defendants in the TAC, but the Securities Litigation is not proceeding against them due to the automatic stay.

of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by misleading investors in the Debtors' securities from April 29, 2015 through November 15, 2018, and

- the Debtors and the Securities Act Defendants violated Sections 11 and 15 of the Securities Act in connection with the Notes Offerings, for which the offering documents contained thirty-four materially misleading statements.

2.    A true and correct copy of the cover page and table of contents of the TAC is annexed hereto as **Exhibit A**.  The TAC and the allegations set forth therein are incorporated in their entirety into this Proof of Claim by reference.

**B.    The Claim**

3.    As of the Petition Date, the Debtors were, and currently remain, liable to Claimant in an amount not yet determined, plus interest, costs, and attorneys' fees as may be allowed (the "**Claim**").  The facts, circumstances, acts, and omissions described in the allegations of the TAC, as may be amended and/or supplemented from time to time, form the basis of the Claim.   A schedule of Claimant's transactions in the Debtors' securities during the Class Period is annexed hereto as **Exhibit B**.

4.    Claimant reserves the right to amend and/or supplement this Proof of Claim from time to time for any appropriate purpose.

5.    The Claim is not founded upon a specific writing, although certain documents, too voluminous and burdensome to annex hereto, which, upon information and belief, relate to the violations of various laws and duties and actionable conduct by the Debtors, from which the Claim arises, may be available.   In addition, certain of these documents, as well as other documents, may become available through discovery with respect to the Claim and/or the Securities Litigation.

6.    No payments have been made on account of the Claim.

7.    The Claim is not subject to any setoff or counterclaim.

8.    No security interest is held for the Claim.

9.    The Claim is asserted in addition to, and not in lieu of, any and all other claims that

Claimant may have against the Debtors, the Defendants, and any other defendants now or hereafter named, or that could be named, in the Securities Litigation.

**D.    Reservation of Rights**

10.  Claimant reserves all rights (including but not limited to arguments, counterarguments, and defenses) in connection with the Securities Litigation, and further reserves all rights with respect to the Claim, including but not limited to the right to amend and/or supplement this Proof of Claim from time to time and/or move to withdraw the bankruptcy reference with respect to any claim, cause of action, issue, or proceeding, whether or not encompassed in the Claim or asserted in this Proof of Claim.

11.  This Proof of Claim and any subsequent appearance, pleading, claim, or suit made or filed by Claimant shall not be deemed to:

- constitute a submission by Claimant to the jurisdiction of the Bankruptcy Court;
- constitute consent by Claimant to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless - and solely to the extent - expressly granted in the future with respect to a specific proceeding**;
- waive any substantive or procedural rights of Claimant, including but not limited to (a) the right to challenge the constitutional authority of this Bankruptcy Court to enter a final order or judgment on any matter; (b) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) the right to trial by jury in any proceedings so triable herein, in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, these chapter 11 cases, any related proceedings, or the Securities Litigation; (d) the right to have a United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (e) the right to request that the Bankruptcy Court abstain from hearing the merits of the Claim pursuant to 28 U.S.C. § 1334(c); (f) the right to assert any and all claims or rights against others jointly or severally liable for the

sums claimed herein; or (g) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Claimant is or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved, nor shall this proof of claim be deemed to constitute consent to electronic service of any pleading or papers for which mailed or personal service is required under any applicable law, rule, regulation, or order.



**EXHIBIT A**
**COVER PAGE AND TOC OF THIRD AMENDED COMPLAINT[3]**

---

[3] Due to page length and file size limitations imposed by the Debtors' claims and noticing agent, only the cover page and table of contents of the TAC are annexed hereto. However, as indicated above, the TAC is incorporated in its entirety into this Proof of Claim by reference.

| 1 | **LABATON SUCHAROW LLP** |
| | THOMAS A. DUBBS (*pro hac vice*) |
| 2 | LOUIS GOTTLIEB (*pro hac vice*) |
| | JEFFREY A. DUBBIN (#287199) |
| 3 | ARAM BOGHOSIAN (*pro hac vice*) |
| | 140 Broadway |
| 4 | New York, New York 10005 |
| | Telephone: (212) 907-0700 |
| 5 | Facsimile: (212) 818-0477 |
| | Email: tdubbs@labaton.com |
| 6 | lgottlieb@labaton.com |
| | jdubbin@labaton.com |
| 7 | aboghosian@labaton.com |

<p style="text-align:right">8</p>

*Counsel for Lead Plaintiff the Public Employees Retirement Association of New Mexico and Lead Counsel for the Class*

9

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**

| 10 | JAMES M. WAGSTAFFE (#95535) |
| | FRANK BUSCH (#258288) |
| 11 | 100 Pine Street, Suite 725 |
| | San Francisco, California 94111 |
| 12 | Telephone: (415) 357-8900 |
| | Facsimile: (415) 371-0500 |
| 13 | Email: wagstaffe@wvbrlaw.com |
| | busch@wvbrlaw.com |

14

*Liaison Counsel for the Class*

15

16 **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
17 **SAN FRANCISCO DIVISION**

18

| | Civil Action No. 3:18-cv-03509-EJD |
|---|---|
| 19 | |
| 20 | IN RE PG&E CORPORATION SECURITIES LITIGATION | THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| 21 | |
| 22 | | JURY TRIAL DEMANDED |
| 23 | |

24

25

26

27

28

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CIVIL ACTION NO. 3:18-CV-03509-EJD

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    NATURE OF THE CASE ..................................................................................... 4

III.   JURISDICTION AND VENUE .......................................................................... 5

IV.    OVERVIEW OF THE EXCHANGE ACT VIOLATIONS ............................... 5

       A. PG&E's Failure to Comply with Safety Regulations Proximately Caused
          Wildfires in 2017 and Investors' Consequent Losses ................................... 6

       B. PG&E's Failure to Prioritize Safety Continued Unabated, Proximately
          Causing a Disastrous Wildfire in November 2018 as Well as Further Investor
          Losses ............................................................................................................ 8

          1. After the North Bay Fires, PG&E Continued to Make False and
             Misleading Statements and Omissions ..................................................... 8

          2. PG&E's Continuing Noncompliance With Safety Regulations Caused the
             Camp Fire ................................................................................................ 10

       C. Exchange Act Claims Being Asserted ........................................................... 12

V.     THE EXCHANGE ACT PARTIES ....................................................................... 13

VI.    SUBSTANTIVE ALLEGATIONS SUPPORTING THE EXCHANGE ACT CLAIMS 15

       A. PG&E Operates Within a Robust Legal Regime ........................................... 15

          1. California Law Required PG&E to Maintain a Safe Distance Between Its
             Electrical Equipment and Nearby Vegetation .......................................... 15

          2. California Law Required PG&E to Safely Maintain Its Electrical
             Equipment and Infrastructure .................................................................. 16

          3. PG&E Is Regulated by the CPUC ........................................................... 17

             (a)  CPUC's General Orders 95 and 165 Impose Strict Safety
                  Regulations on PG&E ...................................................................... 17

             (b)  CPUC's Resolution ESRB-8 Imposes on PG&E an Obligation to
                  Adopt, Promulgate and Follow the ESRB-8 Shutoff Protocol .......... 19

             (c)  PG&E Must Follow CPUC's Regulations Under Penalty of Law ...... 20

          4. Cal Fire Is the Duly Authorized Investigative Arm of the State of
             California for Wildfires ............................................................................. 20

          5. Under California's Inverse Condemnation Law, PG&E Would Not Bear
             the Cost of Wildfires It Causes if It Could Prove That It Acted Reasonably
             and Prudently ........................................................................................... 21

          6. Federal Law Also Requires PG&E to Follow Minimum Safety Standards.......... 21

B. PG&E's Vegetation Management Expenditures Did Not Materially Change from Year to Year During the Class Period, Let Alone Double at Any Point............22

C. PG&E's Tree Trimming and Removal Did Not Come Close to Doubling During the Class Period .........................................................................24

D. After the North Bay Fires, PG&E Started Reporting Inflated Numbers for Tree Removal ...........................................................................25

E. PG&E Concealed Its Unsafe Use of Reclosers During the Class Period ...................25

   1.  PG&E Used Reclosers to Prioritize Convenience Over Safety ............................ 25

   2.  PG&E Concealed Its Use of Reclosers from Investors During the Class Period ....................................................................................... 27

F. PG&E Engaged in an Unsafe Pattern of Noncompliance with Safety Requirements Before and Throughout the Class Period...............................28

   1.  PG&E Was Convicted of Negligence for Starting a Wildfire in 1994 ................. 28

   2.  PG&E Unsafely Flouts Safety Regulations ......................................... 28

   3.  PG&E's Unsafe, Noncompliant Vegetation Management Caused the Butte Fire in 2015 ........................................................................ 30

   4.  PG&E's Insufficient Safety Practices Allowed Numerous, Company-Wide Vegetation Management and Other Safety Violations During the Class Period ................................................................................. 30

      (a)  PG&E Documented and Tolerated Thousands of Dangerous Safety Violations Across Its Territory During the Class Period............................ 30

      (b)  PG&E Had Actual Knowledge That Its Insufficient Safety Practices Had the Potential to Allow for Dangerous Safety Violations on the Order of Hundreds of Thousands to a Million Wildfire Hazards ............... 32

G. Investors Could Not Have Reasonably Expected the Extent of PG&E's Unsafe Pattern of Noncompliance that Caused the North Bay Fires and the Camp Fire ........33

   1.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the North Bay Fires .......................................... 33

   2.  PG&E's Noncompliance with Vegetation Management and Pole Integrity Requirements Caused the Camp Fire .............................................. 34

      (a)  The Camp Fire's First Ignition Point Was Caused by PG&E Safety Violations ........................................................................... 34

      (b)  The Camp Fire's Second Ignition Point Was Also Caused by PG&E's Safety Violations .......................................................... 37

H. PG&E's Repeated Vegetation Management and Pole Integrity Safety Violations Show that the Company Knew of Its Numerous and Widespread Violations of Fire Safety Regulations Throughout the Class Period, but Did

Not Change Its Practices to Reduce, Much Less Eliminate, Those Safety
Violations ...................................................................................................................38

1.   PG&E Did Not Improve Its Inadequate Safety Practices After Its Safety
Violations Caused the Deadly Butte Fire .............................................................. 38

2.   PG&E Internally Acknowledged, Extensively Documented, and Tolerated
for Years the Safety Violations that Caused the Camp Fire ................................. 39

I.   PG&E's ESRB-8 Shutoff Protocol Was Illusory, and PG&E's Failure to
Follow It Was a Proximate Cause of the Camp Fire .......................................................43

1.   PG&E Admitted that All of the Non-Weather Criteria Weighed in Favor
of Shutting Off the Power ..................................................................................... 45

(a)   Criterion 1: the National Fire Danger Rating System Rated Jarbo
Gap as Having an "Extreme" Fire Danger Threat Level ............................ 45

(b)   Criterion 2: the National Weather Service Declared a "Red Flag
Warning" for the Area ............................................................................... 47

(c)   Criterion 6: "Critically Dry Vegetation" (i.e., Wildfire Fuel)
Weighed in Favor of a Shutoff .................................................................. 47

(d)   Criterion 7: PG&E's On-the-Ground Observations Weighed in Favor
of a Shutoff ............................................................................................... 49

2.   All of the Weather Criteria Weighed in Favor of Shutting Off the Power .......... 50

(a)   Criterion 3: The Jarbo Gap Recorded Sufficiently Low Humidity
Levels ........................................................................................................ 52

(b)   Criterion 4: The Jarbo Gap Recorded Sufficiently High Wind Speed......... 53

(c)   Criterion 5: Site-Specific Conditions Further Favored Shutoff.................. 54

3.   PG&E Knew, or Recklessly Disregarded, that All Seven Criteria Weighed
in Favor of Shutting Off the Power ....................................................................... 54

J.   PG&E's Bankruptcy and Other Post-Class-Period Developments.............................56

VII.   DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS
UNDER THE EXCHANGE ACT ....................................................................................... 59

A. Overview of Defendants' Fraudulent Course of Conduct ...........................................59

B. Defendants Made Materially False and Misleading Statements and Omissions
Regarding Its Vegetation Management Activities and Compliance with
Wildfire Safety Regulations Before the North Bay Fires ...........................................61

1.   April 29, 2015 – Misstatement No. 1.................................................................... 61

2.   October 16, 2015 – Misstatement No. 2 ............................................................... 62

3.   November 18, 2015 – Misstatement No. 3 ........................................................... 64

4.  October 6, 2016 – Misstatement No. 4 ................................................................. 65

5.  August 9, 2017 – Misstatement No. 5 .................................................................. 67

C.  Defendants Tied the Company's Dividend to Safety Compliance, Making Materially False and Misleading Statements and Omissions Regarding Its Dividend and Safety Before the North Bay Fires .................................................... 69

1.  May 23, 2016 – Misstatement No. 6 .................................................................... 70

2.  November 4, 2016 – Misstatement No. 7 ............................................................ 71

3.  May 31, 2017 – Misstatement No. 8 .................................................................... 72

D.  After the North Bay Fires Erupted, the Truth Began to Emerge ............................... 74

E.  After the North Bay Fires Were Contained, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations ....................................................................... 75

1.  October 31, 2017 – Misstatement No. 9 .............................................................. 75

2.  November 2, 2017 – Misstatement No. 10 .......................................................... 76

3.  November 2, 2017 – Misstatement No. 11 .......................................................... 79

4.  November 5, 2017 – Misstatement No. 12 .......................................................... 81

5.  May 25, 2018 – Misstatement No. 13 .................................................................. 83

F.  While the Truth Regarding PG&E's Role in Causing the North Bay Fires Emerged, the Company Made Additional False and Misleading Statements and Omissions Regarding Compliance with Wildfire-Related Safety Regulations, Including Its ESRB-8 Shutoff Protocol ................................................. 85

1.  June 8, 2018 – Misstatement No. 14 .................................................................... 85

2.  June 8, 2018 – Misstatement No. 15 .................................................................... 87

3.  September 27, 2018 – Misstatement No. 16 ........................................................ 88

4.  October 9, 2018 – Misstatement No. 17 .............................................................. 90

5.  October 9, 2018 – Misstatement No. 18 .............................................................. 91

6.  November 8, 2018 – Misstatement No. 19 .......................................................... 92

VIII.  MATERIALITY UNDER THE EXCHANGE ACT .................................................... 93

IX.  LOSS CAUSATION UNDER THE EXCHANGE ACT ............................................. 94

A.  Defendants' False and Misleading Statements Artificially Inflated the Price of PG&E's Securities ..................................................................................................... 94

B.  PG&E's Safety Violations Caused the Devastating North Bay Fires ........................ 95

C.  PG&E's Safety Violations Caused the Devastating Camp Fire ...................................95

D.  As the Market Learned About the Effects and Extent of PG&E's Inadequate
Safety Practices, the Price of PG&E's Securities Fell Dramatically..........................96

   1.  October 12, 2017 – Corrective Disclosure and/or Materialization of
Concealed Risk ................................................................................................ 96

      (a)  The Market Began to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires.........................................................96

      (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
Decline on October 12, 2017 ..................................................................... 97

   2.  October 13-16, 2017 – Corrective Disclosure and/or Materialization of
Concealed Risk ................................................................................................ 99

      (a)  The Market Continued to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires.........................................................99

      (b)  Market Commentators Confirmed the Cause of PG&E's Share Price
Decline on October 13, 2017 ..................................................................... 99

   3.  December 20, 2017 – Corrective Disclosure and/or Materialization of
Concealed Risk .............................................................................................. 100

      (a)  The Market Continued to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires....................................................... 100

      (b)  Market Commentators Confirmed the Proximate Cause of PG&E's
Share Price Decline on December 20, 2017 ............................................... 101

   4.  May 25, 2018 – Corrective Disclosure and/or Materialization of
Concealed Risk .............................................................................................. 102

      (a)  The Market Continued to Learn the Extent and Effects of PG&E's
Responsibility for the North Bay Fires....................................................... 102

      (b)  Market Commentators Confirmed that the News Regarding Safety
Violations Proximately Caused PG&E's Share Price Decline on May
25-29, 2018 ............................................................................................. 104

   5.  June 8, 2018 – Corrective Disclosure and/or Materialization of Concealed
Risk .............................................................................................................. 105

      (a)  The Market Learned the Truth of PG&E's Continued, Unsafe Use of
Reclosers.................................................................................................. 107

      (b)  The Market Continued to Learn the Extent and Effects of PG&E's
Safety Violations and Responsibility for the North Bay Fires ................. 107

      (c)  Market Commentators Confirmed that the Number and Range of
Safety Violations Proximately Caused PG&E's Share Price Decline
on June 8-11, 2018.................................................................................. 108

6.   November 8-9, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 109

(a)   The Market Began to Learn the Extent and  Effects of PG&E's Responsibility for the Camp Fire............................................... 109

(b)   Market Commentators Confirmed the Cause of PG&E's November 9, 2018 Share Price Decline............................................................... 110

7.   November 9-12, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 112

(a)   The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire............................................... 112

(b)   Market Commentators Confirmed the Cause of PG&E's November 9-12, 2018 Share Price Decline. ............................................... 113

8.   November 13-14, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 114

(a)   The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire............................................... 114

(b)   Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 14, 2018 ............................................... 115

9.   November 15, 2018 – Corrective Disclosure and/or Materialization of Concealed Risk ................................................................................. 116

(a)   The Market Continued to Learn the Extent and Effects of PG&E's Responsibility for the Camp Fire............................................... 116

(b)   Market Commentators Confirmed the Cause of PG&E's Share Price Decline on November 15, 2018 ............................................... 117

X.   SCIENTER UNDER THE EXCHANGE ACT ............................................................. 118

A.   PG&E Knew that Its Safety Practices Continued to Violate the Law Even After PG&E Was on Notice of the Butte Fire Safety Violations ............................ 118

B.   Safety Was Core to PG&E's Operations, and the Exchange Act Individual Defendants Were Directly Involved in It ..........................................................120

C.   The Federal Court Overseeing PG&E's Probation, Including Safety Monitoring, Has Uncovered Additional Facts Supporting Scienter .......................123

D.   PG&E's Noncompliance with Safety Regulations Was Well-Known Throughout the Company, Including at the Highest Levels, with Real-Time Access to a Database of Known Safety Violations....................................................129

1.   PG&E Recorded Its Violations of Safety Regulations in a Sophisticated Database, Readily Accessible by the Exchange Act Individual Defendants ...... 129

2.  PG&E Instituted a Culture Among Its On-the-Ground Employees of Reporting Problems up the Corporate Chain, Which Upper Management Was Aware of and Monitored ............................................................. 131

E.  PG&E's Compliance Statements Were Authorized by Defendant Kane and Were Made under Her Ultimate Authority ................................................ 133

F.  The Threat of a Potential Bankruptcy Gave Defendants a Strong Motive to Mislead Investors ......................................................................................... 135

G.  After PG&E Failed to Follow Its ESRB-8 Shutoff Protocol and Caused the Camp Fire, PG&E Attempted to Cover It Up .......................................... 136

H.  PG&E's Unprecedented Departure of Officers and Directors Strengthens the Inference of Scienter ................................................................................. 140

XI.  APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET FOR THE EXCHANGE ACT CLAIMS ........................................... 141

XII.  CLASS ACTION ALLEGATIONS FOR THE EXCHANGE ACT CLAIMS ............. 142

XIII.  CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT ...................................... 144

XIV.  NATURE OF THE SECURITIES ACT CLAIMS .................................................... 151

XV.  OVERVIEW OF THE SECURITIES ACT VIOLATIONS ..................................... 151

XVI.  THE SECURITIES ACT PARTIES .......................................................................... 153

A.  Securities Act Named Plaintiffs ................................................................... 153

B.  Bankrupt Entities ......................................................................................... 154

C.  Securities Act Individual Defendants ........................................................... 154

D.  Underwriter Defendants ............................................................................... 159

XVII.  SUBSTANTIVE ALLEGATIONS SUPPORTING THE SECURITIES ACT CLAIMS 162

A.  PG&E's Systemic Failure to Take Measures to Mitigate Wildfires and Safety Violations ...................................................................................................... 162

1.  Overview of Laws and Regulations Governing PG&E's Operations ................ 162

2.  PG&E's Lax Safety Practices, Safety Violations and Resulting Wildfires ........ 164

XVIII.  THE SECURITIES ACT DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING DOCUMENTS FOR THE NOTES OFFERINGS ........................................................................................................... 186

A.  The Securities Act Defendants Misled Investors Regarding PG&E's Safety Practices, Policies and Compliance ............................................................. 187

1.  The Offering Documents Omitted PG&E's Widespread Safety Failures and the Existing Risks Associated with Its Inadequate Safety Practices ........ 188

2. The Offering Documents Did Not Disclose PG&E's Investments in, Commitment to, and Practices Related to Safety Were Inadequate ................... 194

B. The Securities Act Defendants Materially Misled Investors Regarding PG&E's Liability for Wildfires ............................................................. 203

C. PG&E's Offering Documents Misled Investors by Failing to Comply with Item 303's Disclosure Requirements and Disclosure Safety Violations .................. 208

XIX. NO SAFE HARBOR FOR THE SECURITIES ACT CLAIMS .................................... 211

XX. CLASS ACTION ALLEGATIONS FOR THE SECURITIES ACT CLAIMS ............. 212

XXI. CLAIMS FOR RELIEF UNDER THE SECURITIES ACT ........................................ 214

XXII. PRAYER FOR RELIEF ................................................................................. 216

**EXHIBIT B**
**MID-JERSEY TRUCKING INDUSTRY & LOCAL NO. 701 PENSION FUND TRANSACTIONS**

**Bonds**

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 12/22/2017 | 3.3% due 03/15/2027 | 65,000 | $98.80 |
| 01/31/2018 | 4.0% due 12/01/2046 | 20,000 | $97.97 |
| 11/14/2018 | 4.75% due 02/15/2044 | 5,000 | $77.76 |
| 10/19/2015 | 6.05% due 03/01/2034 | 16,000 | $121.84 |
| 10/21/2015 | 6.05% due 03/01/2034 | 4,000 | $122.19 |
| 11/03/2015 | 6.05% due 03/01/2034 | 10,000 | $120.06 |

| Date Sold | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 01/14/2019 | 3.3% due 03/15/2027 | 65,000 | $78.00 |
| 01/14/2019 | 4.0% due 12/01/2046 | 20,000 | $75.75 |
| 01/14/2019 | 4.75% due 02/15/2044 | 5,000 | $76.57 |
| 03/10/2017 | 6.05% due 03/01/2034 | 5,000 | $123.44 |
| 01/29/2018 | 6.05% due 03/01/2034 | 15,000 | $123.00 |
| 01/31/2018 | 6.05% due 03/01/2034 | 10,000 | $122.65 |

# Electronic Proof of Claim_!MBXG27386

Final Audit Report                                                                2019-10-21

| | |
|---|---|
| Created: | 2019-10-21 |
| By: | Prime Clerk E-Filing (efiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA8BNIcfjQUpNRvWeubNFHOHYgT3vq5V1I |

## "Electronic Proof of Claim_!MBXG27386" History

Web Form created by Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:07:46 PM GMT

Andrew Behlmann (abehlmann@lowenstein.com) uploaded the following supporting documents:
   Attachment
2019-10-21 - 3:09:23 PM GMT

Web Form filled in by Andrew Behlmann (abehlmann@lowenstein.com)
2019-10-21 - 3:09:23 PM GMT- IP address: 199.127.9.1

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/76.0.3809.100 Safari/537.36)
2019-10-21 - 3:09:26 PM GMT- IP address: 199.127.9.1

Signed document emailed to Andrew Behlmann (abehlmann@lowenstein.com) and Prime Clerk E-Filing (efiling@primeclerk.com)
2019-10-21 - 3:09:26 PM GMT

Prime Clerk   POWERED BY Adobe Sign

# Exhibit E

## United States Bankruptcy Court, Northern District of California

| Fill in this information to identify the case (Select only one Debtor per claim form): |
|---|
| ☒ PG&E Corporation (19-30088) |
| ☐ Pacific Gas and Electric Company (19-30089) |

# Rescission or Damage Claim Proof of Claim

This form is for purchasers of the Debtors' publicly traded debt and/or equity securities listed on Annex A during the period from April 29, 2015 through November 15, 2018, inclusive, who are asserting claims against the Debtors for rescission or damages under the securities laws and Section 510(b) of the Bankruptcy Code. Read the instructions before filing this Rescission or Damage Claim Proof of Claim Form.

> THIS FORM IS TO BE USED <u>ONLY</u> FOR CLAIMANTS THAT PURCHASED OR ACQUIRED THE DEBTORS' PUBLICLY TRADED DEBT AND/OR EQUITY SECURITIES LISTED ON ANNEX A FROM APRIL 29, 2015 THROUGH NOVEMBER 15, 2018 TO ASSERT CLAIMS FOR RESCISSION OR DAMAGES UNDER THE SECURITIES LAWS AND SECTION 510(b) OF THE BANKRUPTCY CODE AND NOT ANY OTHER CLAIMS.
>
> DO <u>NOT</u> USE THIS FORM TO ASSERT A CLAIM IF YOU DID NOT PURCHASE OR ACQUIRE PUBLICLY TRADED DEBT OR EQUITY SECURITIES OF THE DEBTORS FROM APRIL 29, 2015 THROUGH NOVEMBER 15, 2018 AND YOUR CLAIM IS BASED SOLELY ON YOUR CURRENT AND CONTINUOUS OWNERSHIP OF SUCH SECURITIES.

Filers must leave out or partially redact SSNs/TINs/birthdates/names of minors/full account numbers. Attach redacted copies of any documents that support the claim. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of January 29, 2019, the date these Chapter 11 Cases were filed.** For purposes of this form, "creditor" means the beneficial owner of the securities that form the basis of the claim.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. | Who is the current creditor? | Central States, Southeast and Southwest Areas Pension Fund |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the Debtor _____ |
| 2. | Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? _____ |
| 3. | Are you asserting a Claim for rescission or damages under the securities laws and Section 510(b) of the Bankruptcy Code? | <u>Check the box below to indicate whether you are asserting a claim for rescission or damages under the securities laws and section 510(b) of the Bankruptcy Code, arising from the purchase and/or acquisition of the Debtors' publicly traded debt and/or equity securities during the period from April 29, 2015 through November 15, 2018. You are directed to check only one box below:</u><br><br>☐ Debt Securities;<br>☐ Equity Securities; or<br>☒ Debt Securities and Equity Securities<br><br>Please also check all applicable CUSIP(s) on Annex A, Part I (attached hereto) for the equity or debt securities to which this Proof of Claim applies (hereinafter "the Securities"). If you purchased/acquired multiple CUSIPs, you must make additional copies of Annex A, Part II, so that you submit a <u>separate</u> corresponding Annex A, Part II for each CUSIP, with the requested documentation.<br><br>In addition to completing this Rescission or Damage Claim Proof of Claim Form, including checking the appropriate boxes on Annex A, Part I and providing the detail in Annex A, Part II, you are also required to attach to this Rescission or Damage Claim Proof of Claim Form any applicable detail regarding your purchases/acquisition of the securities from April 29, 2015 through November 15, 2018.<br><br>Once you have completed Annex A, Part I and Part II, please affix them to this Rescission or Damage Claim Proof of Claim Form. If you are submitting your Proof of Claim electronically, you will be asked to scan all Annex A, Part I and Part II and supporting documentation. If you have numerous transactions to report in Annex A, Part II, Claimants with more than 100 transactions in the Debtors' securities may contact Prime Clerk for instructions on how to file |

Case: 19-30088    Doc# 10251    Filed: 10/28/24    Entered: 10/28/24 15:37:06    Page 2<br>Claim Number: 110003                            25 of 278

| 4. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|---|

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Charles H. Lee
Deputy General Counsel
8647 W. Higgins Road
Chicago, IL 60631

Contact phone  (847) 939-2481

Contact email  chlee@centralstatesfunds.org

Contact phone  _____

Contact email  _____

---

**5. Does this claim amend one already filed?**

☐ No
☒ Yes.  Claim number on court claims registry (if known) 102288

Filed on 04/16/2020
            MM  / DD  / YYYY

**6. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing?  _____

---

| Part 2: | Give Information About the Claim as of January 29, 2019 |
|---|---|

**7. Do you have any number you use to identify the debtor?**

☒ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

---

**8. How much is the claim?**  $ UNLIQUIDATED .  **Does this amount include interest or other charges?**

☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**9. Is all or part of the claim secured?**

☒ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:  _____

**Basis for perfection:**  _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $_____

**Amount of the claim that is secured:**  $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $_____

**Annual Interest Rate** (when case was filed) _____%
☐ Fixed
☐ Variable

---

**10. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property:  _____

Case 19-30088 Doc# 14612751 Filed 10/28/24 Entered 10/28/24 15:37:06 Page 3
257 of 278
Case 19-30088  Doc# 14612751  Filed 10/28/24  Entered 10/28/24 15:37:06  Page 3

Rescission or Damage Claim Proof of Claim

| **Part 3:** | **Sign Below** |
|---|---|

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☒ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |

**Signature:** *Charles H. Lee*
Charles H. Lee (Oct 11, 2023 11:18 CDT)

**Email:** chlee@centralstatesfunds.org

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Charles H. Lee | | |
| | First name | Middle name | Last name |
| Title | Deputy General Counsel | | |
| Company | Central States, Southeast and Southwest Areas Pension Fund | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 8647 W. Higgins Road | | |
| | Number          Street | | |
| | Chicago | IL | 60631 |
| | City | State | ZIP Code |
| Contact phone | 8479392481 | Email | chlee@centralstatesfunds.org |

**Attach Supporting Documentation** <u>Including Annex A</u> (available for download on https://restructuring.primeclerk.com/pge)
(limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**　　☐ **I do <u>not</u> have supporting documentation.**
(attach below)

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT
ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS
ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING
DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show
only the last four digits of any social-security, individual's tax-identification, or financial-account number,
only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on
the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid
embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain
information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of
Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel.
Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this
Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the
disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk
of the Court discover that personal identifier data or information concerning a minor individual has been
included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to
redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Rescission or Damage Claim Proof of Claim

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

---

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

---

### How to fill out this form

- **Fill in all of the information about any claim you may have based on your belief that you have suffered losses as a result of alleged inadequate or fraudulent disclosure or non-disclosure of information about the Debtors that may have led you to purchase or acquire publicly traded debt and/or equity securities during the period from April 29, 2015 through November 15, 2018, inclusive**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Complete Annex A, Part I by checking all applicable CUSIP(s) and provide the information requested in Annex A, Part II for that CUSIP. If you are asserting a claim based on more than one CUSIP, you must attach a separate Annex A, Part II for each CUSIP.**

- **Attach any supporting documents to this form.**

  Attach documentation requested in Annex A, Part II of the Form. (See the definition of *redaction* on the next page.)

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

### Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at:

https://restructuring.primeclerk.com/pge.

### Understand the terms used in this form

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

**Please send completed Securities Proof(s) of Claim to:**

### If electronically:

Through the website established by the Debtors' Court-approved claims and noticing agent, Prime Clerk LLC ("**Prime Clerk**"), located at https://restructuring.primeclerk.com/pge (the "**Case Website**"), using the interface available under the linked entitled "Submit a Claim" (the "**Electronic Filing System**").

### If by first class mail:

PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

### If by overnight courier or hand delivery:

PG&E Corporation Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

Claimants with more than 100 transactions in the Debtors' securities may contact Prime Clerk for instructions on how to file their claims electronically.

<div style="border:1px solid black; padding:8px;">

# Do not file these instructions with your form

</div>

*IF SUBMITTING YOUR RESCISSION OR DAMAGE CLAIM PROOF OF CLAIM THROUGH PRIME CLERK'S ELECTRONIC PORTAL, THIS ANNEX (ALONG WITH ALL OTHER SUPPORTING DOCUMENTATION) WILL NEED TO BE SCANNED AND UPLOADED*

# Annex A

## Part I

**Check all relevant boxes below. If you purchased multiple CUSIPs, you must make additional copies of Part II.**

| Check One Box Below | Issuer of Securities | Securities Description | CUSIP Number | ISIN Number |
|---|---|---|---|---|
| ☑ | PG&E Corp | Common Stock (including any contract options related thereto) | 69331C108 | US69331C1080 |
| ☐ | Pacific Gas & Electric Co | Preferred 4.36 PERP/CALL | 694308883 | US6943088830 |
| ☐ | Pacific Gas & Electric Co | Preferred 4.5 PERP/CALL | 694308800 | US6943088004 |
| ☐ | Pacific Gas & Electric Co | Preferred 4.8 PERP/CALL | 694308701 | US6943087014 |
| ☐ | Pacific Gas & Electric Co | Preferred 5 PERP/CALL | 694308503 | US6943085034 |
| ☐ | Pacific Gas & Electric Co | Preferred 5 PERP/CALL | 694308602 | US6943086024 |
| ☐ | Pacific Gas & Electric Co | Preferred 5 PERPETUAL | 694308404 | US6943084045 |
| ☐ | Pacific Gas & Electric Co | Preferred 5.5 PERPETUAL | 694308305 | US6943083054 |
| ☐ | Pacific Gas & Electric Co | Preferred 6% Dividend PERPETUAL | 694308206 | US6943082064 |
| ☐ | Pacific Gas & Electric Co | 0.45835% due 5/11/2015 | 694308HJ9 | US694308HJ92 |
| ☐ | Pacific Gas & Electric Co | 1.51778% due 11/30/2017 | 694308HQ3 | US694308HQ36 |
| ☐ | Pacific Gas & Electric Co | 2.45% due 8/15/2022 | 694308HB6 | US694308HB66 |
| ☐ | Pacific Gas & Electric Co | 2.54138% due 11/28/2018 | 694308HU4 | US694308HU48 |
| ☐ | Pacific Gas & Electric Co | 2.54138% due 11/28/2018 | 694308HT7 | US694308HT74 |
| ☐ | Pacific Gas & Electric Co | 2.54138% due 11/28/2018 | U69430AD5 | USU69430AD52 |
| ☑ | Pacific Gas & Electric Co | 2.95% due 3/1/2026 | 694308HP5 | US694308HP52 |
| ☑ | Pacific Gas & Electric Co | 3.25% due 6/15/2023 | 694308HC4 | US694308HC40 |
| ☐ | Pacific Gas & Electric Co | 3.25% due 9/15/2021 | 694308GW1 | US694308GW13 |
| ☑ | Pacific Gas & Electric Co | 3.3% due 12/1/2027 | 694308HW0 | US694308HW04 |
| ☐ | Pacific Gas & Electric Co | 3.3% due 12/1/2027 | U69430AE3 | USU69430AE36 |
| ☐ | Pacific Gas & Electric Co | 3.3% due 12/1/2027 | 694308HV2 | US694308HV21 |
| ☑ | Pacific Gas & Electric Co | 3.3% due 3/15/2027 | 694308HS9 | US694308HS91 |
| ☐ | Pacific Gas & Electric Co | 3.4% due 8/15/2024 | 694308HK6 | US694308HK65 |
| ☑ | Pacific Gas & Electric Co | 3.5% due 10/1/2020 | 694308GT8 | US694308GT83 |
| ☑ | Pacific Gas & Electric Co | 3.5% due 6/15/2025 | 694308HM2 | US694308HM22 |
| ☐ | Pacific Gas & Electric Co | 3.75% due 2/15/2024 | 694308HG5 | US694308HG53 |
| ☐ | Pacific Gas & Electric Co | 3.75% due 8/15/2042 | 694308HA8 | US694308HA83 |
| ☐ | Pacific Gas & Electric Co | 3.85% due 11/15/2023 | 694308HE0 | US694308HE06 |
| ☐ | Pacific Gas & Electric Co | 3.95% due 12/1/2047 | 694308HY6 | US694308HY69 |
| ☐ | Pacific Gas & Electric Co | 3.95% due 12/1/2047 | 694308HX8 | US694308HX86 |
| ☐ | Pacific Gas & Electric Co | 3.95% due 12/1/2047 | U69430AF0 | USU69430AF01 |
| ☐ | Pacific Gas & Electric Co | 4% due 12/1/2046 | 694308HR1 | US694308HR19 |
| ☐ | Pacific Gas & Electric Co | 4.25% due 3/15/2046 | 694308HN0 | US694308HN05 |
| ☐ | Pacific Gas & Electric Co | 4.25% due 5/15/2021 | 694308GV3 | US694308GV30 |
| ☑ | Pacific Gas & Electric Co | 4.25% due 8/1/2023 | 694308HZ3 | US694308HZ35 |
| ☐ | Pacific Gas & Electric Co | 4.25% due 8/1/2023 | U69430AG8 | USU69430AG83 |
| ☐ | Pacific Gas & Electric Co | 4.3% due 3/15/2045 | 694308HL4 | US694308HL49 |
| ☐ | Pacific Gas & Electric Co | 4.45% due 4/15/2042 | 694308GZ4 | US694308GZ44 |
| ☐ | Pacific Gas & Electric Co | 4.5% due 12/15/2041 | 694308GY7 | US694308GY78 |
| ☐ | Pacific Gas & Electric Co | 4.6% due 6/15/2043 | 694308HD2 | US694308HD23 |
| ☑ | Pacific Gas & Electric Co | 4.65% due 8/1/2028 | 694308JA6 | US694308JA65 |
| ☐ | Pacific Gas & Electric Co | 4.65% due 8/1/2028 | U69430AH6 | USU69430AH66 |

| Check One Box Below | Issuer of Securities | Securities Description | CUSIP Number | ISIN Number |
|---|---|---|---|---|
| ☐ | Pacific Gas & Electric Co | 4.75% due 2/15/2044 | 694308HH3 | US694308HH37 |
| ☐ | Pacific Gas & Electric Co | 5.125% due 11/15/2043 | 694308HF7 | US694308HF70 |
| ☐ | Pacific Gas & Electric Co | 5.4% due 1/15/2040 | 694308GS0 | US694308GS01 |
| ☐ | Pacific Gas & Electric Co | 5.625% due 11/30/2017 | 694308GL5 | US694308GL57 |
| ☐ | Pacific Gas & Electric Co | 5.8% due 3/1/2037 | 694308GJ0 | US694308GJ02 |
| ☐ | Pacific Gas & Electric Co | 5.8% due 3/1/2037 | 694308GK7 | US694308GK74 |
| ☐ | Pacific Gas & Electric Co | 6.05% due 3/1/2034 | 694308GE1 | US694308GE15 |
| ☐ | Pacific Gas & Electric Co | 6.05% due 3/1/2034 | 694308GH4 | US694308GH46 |
| ☐ | Pacific Gas & Electric Co | 6.25% due 3/1/2039 | 694308GQ4 | US694308GQ45 |
| ☐ | Pacific Gas & Electric Co | 6.35% due 2/15/2038 | 694308GM3 | US694308GM31 |
| ☐ | Pacific Gas & Electric Co | 6.75% due 10/1/2023 | 694308EY9 | US694308EY96 |
| ☐ | Pacific Gas & Electric Co | 6.75% due 10/1/2023 | 694308EZ6 | US694308EZ61 |
| ☐ | Pacific Gas & Electric Co | 7.05% due 3/1/2024 | 694308FB8 | US694308FB84 |
| ☐ | Pacific Gas & Electric Co | 7.05% due 3/1/2024 | 694308FP7 | US694308FP70 |
| ☐ | Pacific Gas & Electric Co | 7.25% due 3/1/2026 | 694308EM5 | US694308EM58 |
| ☐ | Pacific Gas & Electric Co | 7.25% due 3/1/2026 | 694308ET0 | US694308ET02 |
| ☐ | Pacific Gas & Electric Co | 7.25% due 3/1/2026 | 694308FQ5 | US694308FQ53 |
| ☐ | Pacific Gas & Electric Co | 7.25% due 3/1/2026 | 694308FY8 | US694308FY87 |
| ☐ | Pacific Gas & Electric Co | 7.25% due 8/1/2026 | 694308EV5 | US694308EV57 |
| ☐ | Pacific Gas & Electric Co | 7.25% due 8/1/2026 | 694308FF9 | US694308FF98 |
| ☐ | Pacific Gas & Electric Co | 7.25% due 8/1/2026 | 694308EX1 | US694308EX14 |
| ☐ | Pacific Gas & Electric Co | 7.25% due 8/1/2026 | 694308FR3 | US694308FR37 |
| ☐ | Pacific Gas & Electric Co | 7.25% due 8/1/2026 | 694308FZ5 | US694308FZ52 |
| ☐ | Pacific Gas & Electric Co | 8% due 10/1/2025 | 694308EP8 | US694308EP89 |
| ☐ | Pacific Gas & Electric Co | 8% due 10/1/2025 | 694308EL7 | US694308EL75 |
| ☐ | Pacific Gas & Electric Co | 8% due 10/1/2025 | 694308FM4 | US694308FM40 |
| ☐ | Pacific Gas & Electric Co | 8% due 10/1/2025 | 694308FG7 | US694308FG71 |
| ☐ | Pacific Gas & Electric Co | 8% due 10/1/2025 | 694308EK9 | US694308EK92 |
| ☐ | Pacific Gas & Electric Co | 8.25% due 10/15/2018 | 694308GN1 | US694308GN14 |
| ☐ | Pacific Gas & Electric Co | 8.25% due 11/1/2022 | 694308EQ6 | US694308EQ62 |
| ☐ | Pacific Gas & Electric Co | 8.25% due 11/1/2022 | 694308EG8 | US694308EG80 |
| ☐ | Pacific Gas & Electric Co | 8.25% due 11/1/2022 | 694308EN3 | US694308EN32 |
| ☐ | Pacific Gas & Electric Co | 8.25% due 11/1/2022 | 694308FJ1 | US694308FJ11 |
| ☐ | Pacific Gas & Electric Co | 8.25% due 11/1/2022 | 694308FW2 | US694308FW22 |
| ☐ | Pacific Gas & Electric Co | 8.375% due 5/1/2025 | 694308EF0 | US694308EF08 |
| ☐ | Pacific Gas & Electric Co | 8.375% due 5/1/2025 | 694308EJ2 | US694308EJ20 |
| ☐ | Pacific Gas & Electric Co | 8.375% due 5/1/2025 | 694308FX0 | US694308FX05 |
| ☐ | Pacific Gas & Electric Co | 8.8% due 5/1/2024 | 694308DV6 | US694308DV66 |
| ☐ | CA DEV VAR-A-PACIFIC | Municipal Bond ADJ% due 11/1/2026 | 13033WG31 | |
| ☐ | CA DEV VAR-B-PACIFIC | Municipal Bond ADJ% due 11/1/2026 | 13033WG49 | |
| ☐ | CA DEV VAR-C-PACIFIC | Municipal Bond due 12/1/2016 | 13033WG56 | |
| ☐ | CA ECON-VAR-RF-3/14 | Municipal Bond due 12/1/2018 | 13033WG23 | |
| ☐ | CA ECON-VAR-RF-D-3/11 | Municipal Bond due 12/1/2016 | 13033WF73 | |
| ☐ | CA ECON-VAR-RF-E-3/11 | Municipal Bond ADJ% due 11/1/2026 | 13033WF81 | |
| ☐ | CA ECON-VAR-RF-F-3/12 | Municipal Bond ADJ% due 11/1/2026 | 13033WF99 | |
| ☐ | CA INFRA ECON DEV-F | Municipal Bond 1.75% due 11/1/2026 | 13034ASX9 | US13034ASX99 |
| ☐ | CA INFRA REF-GAS-F | Municipal Bond 3.75% due 11/1/2026 | 13033WU84 | |
| ☐ | CA INFRA VAR-A-PACIFI | Municipal Bond ADJ% due 11/1/2026 | 13033WRZ8 | |

| Check One Box Below | Issuer of Securities | Securities Description | CUSIP Number | ISIN Number |
|---|---|---|---|---|
| ☐ | CA INFRA VAR-B-PACIFI | Municipal Bond ADJ% due 11/1/2026 | 13033WSA2 | |
| ☐ | CA INFRA VAR-C-PACIFI | Municipal Bond due 12/1/2016 | 13033WSB0 | |
| ☐ | CA INFRA VAR-D-PACIFI | Municipal Bond due 12/1/2016 | 13033WSC8 | |
| ☐ | CA INFRA VAR-E-PACIFI | Municipal Bond due 12/1/2016 | 13033WSD6 | |
| ☐ | CA INFRA VAR-F-PACIFI | Municipal Bond ADJ% due 11/1/2026 | 13033WSE4 | |
| ☐ | CA INFRA VAR-GAS-PACIFI | Municipal Bond due 12/1/2018 | 13033WU92 | |
| ☐ | CA INFRA VAR-G-PACIFI | Municipal Bond due 12/1/2018 | 13033WSF1 | |
| ☐ | CA INFRA VAR-PACIFIC | Municipal Bond ADJ% due 11/1/2026 | 13033WW33 | |
| ☐ | CA INFRA VAR-PACIFIC | Municipal Bond due 12/1/2016 | 13033WW41 | |
| ☐ | CA INFRA VAR-PACIFIC | Municipal Bond due 12/1/2016 | 13033WW58 | |
| ☐ | CA INFRA VAR-REF-PACI | Municipal Bond ADJ% due 11/1/2026 | 13033WW25 | |
| ☐ | CA INFRA-RF-C-PACIFIC | Municipal Bond due 12/1/2016 | 13033W3G6 | |
| ☐ | CA INFRA-RF-D-PACIFIC | Municipal Bond due 12/1/2016 | 13033W3K7 | |
| ☐ | CA INFRA-RF-E-PACIFIC | Municipal Bond 2.25% due 11/1/2026 | 13033W3Z4 | |
| ☐ | CA INFRA-RF-VAR-A-PAC | Municipal Bond 3.75% due 11/1/2026 | 13033W3H4 | US13033W3H41 |
| ☐ | CA INFR-VR-RF-B-PACIF | Municipal Bond 3.75% due 11/1/2026 | 13033W3J0 | US13033W3J07 |
| ☐ | CA PCR DLY PAPER-PACI | Municipal Bond 4% due 11/1/2026 | 130534XA3 | US130534XA35 |
| ☐ | CA PCR DLY-PAC-E-CONV | Municipal Bond 3.5% due 11/1/2026 | 130534XX3 | US130534XX38 |
| ☐ | CA PCR DLY-REF-F-PACI | Municipal Bond 3.25% due 11/1/2026 | 130534XD7 | US130534XD73 |
| ☐ | CA PCR DLY-REF-G-PACI | Municipal Bond ADJ% due 2/1/2016 | 130534XE5 | |
| ☐ | CA PCR VAR CAPCO MADR | Municipal Bond ADJ% due 9/1/2019 | 130535BA4 | US130535BA48 |
| ☐ | CA PCR VAR-REF-B-PACI | Municipal Bond 3.25% due 11/1/2026 | 130534XL9 | US130534XL99 |
| ☐ | CA PCR-REF-A-PAC | Municipal Bond 5.35% due 12/1/2016 | 130534WY2 | |
| ☐ | CA POLLT-PAC GAS-REMK | Municipal Bond 4.75% due 12/1/2023 | 130534A83 | |
| ☐ | CA POLLT-PAC GAS-REMK | Municipal Bond 4.75% due 12/1/2023 | 130534B66 | |
| ☐ | CA POLLT-PAC GAS-REMK | Municipal Bond 4.75% due 12/1/2023 | 130534A91 | |
| ☐ | CA POLLUTN-REF-A-PACI | Municipal Bond 3.5% due 12/1/2023 | 130534ZP8 | |
| ☐ | CA POLLUTN-REF-B-PACI | Municipal Bond 3.5% due 12/1/2023 | 130534ZQ6 | |
| ☐ | CA POLLUTN-REF-C-PACI | Municipal Bond 3.5% due 12/1/2023 | 130534ZR4 | US130534ZR42 |
| ☐ | CA POLLUTN-REF-D-PACI | Municipal Bond 3.5% due 12/1/2023 | 130534ZS2 | |
| ☐ | CA POOLT-PAC GAS-REMK | Municipal Bond 4.75% due 12/1/2023 | 130534B25 | |
| ☐ | CA POOLT-PCS GAS REMK | Municipal Bond 4.75% due 12/1/2023 | 130534B33 | |
| ☐ | CALIFORNIA ST INFRAST | Municipal Bond 1.75% due 11/1/2026 | 13034ASZ4 | US13034ASZ48 |
| ☐ | NEVADA IRR YUBA PAC | Municipal Bond 3.75% due 7/1/2013 | 641321BT0 | |
| ☐ | SOLANO IRR DIST DIV 1 | Municipal Bond 9.15% due 1/1/2020 | 834125AN6 | US834125AN62 |
| ☐ | SOLANO IRR DIST DIV 2 | Municipal Bond 9.25% due 1/1/2020 | 834125AM8 | US834125AM89 |
| ☐ | SOLANO IRR REF-MONTIC | Municipal Bond 5.47% due 1/1/2020 | 834125BC9 | US834125BC98 |
| ☐ | SOLANO IRR-REF-MONTIC | Municipal Bond 5.29% due 1/1/2016 | 834125AY2 | |
| ☐ | SOLANO IRR-UNREF-#2 | Municipal Bond 9.15% due 1/1/2020 | 834125BF2 | |
| ☐ | SOLANO IRR-UNREF-#2 | Municipal Bond 9.25% due 1/1/2020 | 834125BG0 | US834125BG03 |

| CUSIP (Provide a Separate Tab for Each CUSIP): | 69331C108 | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | 366,506 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): | 87,497 |

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| PURCHASE | 5/4/2015 | 8065 | $53.76 | $433,602.63 |
| PURCHASE | 5/5/2015 | 4345 | $52.71 | $229,020.52 |
| SALE | 5/7/2015 | 1535 | $52.08 | $79,937.89 |
| PURCHASE | 6/10/2015 | 11100 | $50.56 | $561,262.62 |
| SALE | 7/9/2015 | 14400 | $50.63 | $729,023.04 |
| SALE | 7/10/2015 | 4725 | $51.12 | $241,542.00 |
| SALE | 8/31/2015 | 3724 | $49.68 | $185,016.89 |
| SALE | 9/22/2015 | 74640 | $51.27 | $3,826,598.74 |
| PURCHASE | 10/13/2015 | 6600 | $52.98 | $349,636.98 |
| SALE | 10/19/2015 | 2708 | $53.76 | $145,590.75 |
| SALE | 12/1/2015 | 6003 | $52.71 | $316,432.54 |
| SALE | 12/15/2015 | 2563 | $53.08 | $136,055.57 |
| PURCHASE | 12/23/2015 | 15500 | $53.96 | $836,378.45 |
| PURCHASE | 2/9/2016 | 3400 | $56.23 | $191,194.58 |
| PURCHASE | 2/26/2016 | 2878 | $57.10 | $164,319.70 |
| PURCHASE | 2/29/2016 | 12824 | $56.90 | $729,667.65 |
| PURCHASE | 2/29/2016 | 1532 | $56.62 | $86,734.18 |
| PURCHASE | 3/1/2016 | 7915 | $56.49 | $447,123.89 |
| PURCHASE | 3/4/2016 | 5388 | $56.37 | $303,746.88 |
| PURCHASE | 3/17/2016 | 4400 | $58.47 | $257,275.92 |
| PURCHASE | 3/17/2016 | 1900 | $58.83 | $111,781.37 |
| PURCHASE | 3/29/2016 | 3880 | $58.61 | $227,401.37 |
| SALE | 4/7/2016 | 3869 | $58.67 | $227,000.81 |
| SALE | 4/12/2016 | 16500 | $58.87 | $971,371.50 |
| SALE | 4/19/2016 | 1368 | $59.48 | $81,371.65 |
| PURCHASE | 6/7/2016 | 18086 | $61.45 | $1,111,419.06 |
| PURCHASE | 6/29/2016 | 4400 | $62.55 | $275,233.64 |
| PURCHASE | 7/7/2016 | 6150 | $64.47 | $396,488.04 |
| SALE | 7/11/2016 | 13945 | $64.06 | $893,358.54 |
| PURCHASE | 7/12/2016 | 5140 | $63.96 | $328,763.14 |
| SALE | 7/12/2016 | 9500 | $64.14 | $609,309.10 |
| PURCHASE | 7/14/2016 | 6054 | $64.22 | $388,791.51 |

| CUSIP (Provide a Separate Tab for Each CUSIP): 69331C108 | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): 366,506 | | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): 87,497 |
|---|---|---|---|
| Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018) | | | |
| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
| PURCHASE | 7/14/2016 | 3478 | $64.22 | $223,359.59 |
| PURCHASE | 8/3/2016 | 1800 | $64.44 | $115,986.42 |
| PURCHASE | 8/5/2016 | 1506 | $64.09 | $96,512.01 |
| PURCHASE | 8/5/2016 | 17374 | $64.03 | $1,112,483.28 |
| PURCHASE | 8/12/2016 | 2368 | $64.34 | $152,345.99 |
| PURCHASE | 8/15/2016 | 8956 | $63.64 | $570,002.83 |
| PURCHASE | 9/21/2016 | 5400 | $62.57 | $337,877.46 |
| PURCHASE | 9/23/2016 | 2022 | $64.19 | $129,784.70 |
| PURCHASE | 9/29/2016 | 4918 | $62.04 | $305,113.70 |
| SALE | 10/10/2016 | 17087 | $59.45 | $1,015,752.09 |
| SALE | 10/11/2016 | 10700 | $59.01 | $631,450.87 |
| SALE | 10/19/2016 | 1900 | $60.66 | $115,256.09 |
| PURCHASE | 10/26/2016 | 4313 | $60.81 | $262,255.85 |
| SALE | 11/4/2016 | 5200 | $60.67 | $315,508.44 |
| SALE | 11/14/2016 | 3894 | $58.13 | $226,375.74 |
| SALE | 11/18/2016 | 2945 | $58.39 | $171,957.08 |
| SALE | 11/21/2016 | 5957 | $58.97 | $351,264.04 |
| PURCHASE | 12/8/2016 | 2948 | $58.83 | $173,425.24 |
| PURCHASE | 12/9/2016 | 4499 | $59.41 | $267,275.24 |
| SALE | 12/9/2016 | 128800 | $59.45 | $7,656,709.20 |
| SALE | 12/19/2016 | 1188 | $60.72 | $72,132.39 |
| SALE | 12/19/2016 | 9051 | $60.81 | $550,392.22 |
| PURCHASE | 2/27/2017 | 2034 | $66.08 | $134,413.84 |
| PURCHASE | 2/27/2017 | 797 | $66.08 | $52,668.95 |
| SALE | 3/10/2017 | 8323 | $65.42 | $544,509.79 |
| SALE | 3/13/2017 | 3061 | $65.51 | $200,531.62 |
| SALE | 3/13/2017 | 3844 | $65.51 | $251,821.59 |
| SALE | 3/14/2017 | 3672 | $65.66 | $241,119.31 |
| SALE | 3/14/2017 | 3490 | $65.56 | $228,786.95 |
| SALE | 3/15/2017 | 1396 | $66.06 | $92,226.04 |
| SALE | 3/15/2017 | 5709 | $66.29 | $378,444.47 |
| SALE | 3/16/2017 | 416 | $66.61 | $27,707.68 |

Case: 19-30088    Doc# 14629-5    Filed: 10/28/24    Entered: 10/28/24 15:37:07    Page
266 of 278

| CUSIP (Provide a Separate Tab for Each CUSIP): 69331C108 | | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "s0"): | | 366,506 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "s0"): | | 87,497 |
|---|---|---|---|---|---|---|---|
| Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018) | | | | | | | |
| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) | | |
| SALE | 3/16/2017 | 3590 | | $66.19 | $237,622.10 | | |
| SALE | 4/11/2017 | 22688 | | $66.87 | $1,517,060.35 | | |
| SALE | 4/28/2017 | 18083 | | $66.94 | $1,210,479.64 | | |
| SALE | 5/16/2017 | 3080 | | $65.93 | $203,064.09 | | |
| SALE | 5/16/2017 | 271 | | $66.55 | $18,033.70 | | |
| SALE | 5/16/2017 | 368 | | $65.94 | $24,264.08 | | |
| PURCHASE | 9/14/2017 | 3004 | | $69.82 | $209,742.58 | | |
| PURCHASE | 9/14/2017 | 12719 | | $69.96 | $889,785.63 | | |
| PURCHASE | 9/15/2017 | 8474 | | $70.18 | $594,734.98 | | |
| PURCHASE | 9/18/2017 | 4840 | | $69.72 | $337,440.44 | | |
| PURCHASE | 9/22/2017 | 2217 | | $68.99 | $152,950.16 | | |
| PURCHASE | 9/22/2017 | 5681 | | $69.04 | $392,238.96 | | |
| SALE | 10/10/2017 | 10946 | | $68.74 | $752,384.26 | | |
| SALE | 10/12/2017 | 1142 | | $64.50 | $73,659.00 | | |
| PURCHASE | 1/8/2018 | 539 | | $44.95 | $24,228.05 | | |
| SALE | 1/11/2018 | 1308 | | $43.88 | $57,395.04 | | |
| SALE | 3/6/2018 | 37104 | | $41.77 | $1,549,908.29 | | |
| SALE | 4/13/2018 | 1119 | | $45.34 | $50,735.46 | | |
| SALE | 5/3/2018 | 1864 | | $44.54 | $83,031.69 | | |
| SALE | 5/3/2018 | 10348 | | $44.32 | $458,655.44 | | |
| SALE | 5/4/2018 | 6726 | | $44.99 | $302,616.86 | | |
| PURCHASE | 7/6/2018 | 3583 | | $44.76 | $160,380.81 | | |
| PURCHASE | 7/9/2018 | 7081 | | $45.03 | $318,832.65 | | |
| PURCHASE | 7/9/2018 | 239 | | $45.24 | $10,811.21 | | |
| PURCHASE | 7/11/2018 | 2123 | | $43.65 | $92,668.95 | | |
| PURCHASE | 7/18/2018 | 4404 | | $42.17 | $185,731.65 | | |
| PURCHASE | 7/23/2018 | 4341 | | $41.54 | $180,322.11 | | |
| PURCHASE | 7/23/2018 | 2545 | | $41.56 | $105,764.35 | | |
| SALE | 9/6/2018 | 3383 | | $45.23 | $152,996.18 | | |
| SALE | 9/6/2018 | 2035 | | $45.34 | $92,274.84 | | |
| SALE | 9/6/2018 | 12308 | | $45.66 | $561,995.59 | | |
| SALE | 10/10/2018 | 1393 | | $47.65 | $66,376.45 | | |

Case: 19-30088   Doc# 14629-5   Filed: 10/28/24   Entered: 10/28/24 15:37:07   Page
267 of 278

| CUSIP (Provide a Separate Tab for Each CUSIP): 69331C108 | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | 366,506 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): | 87,497 |
|---|---|---|---|---|

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| SALE | 11/15/2018 | 18654 | $18.60 | $346,908.44 |

| CUSIP (Provide a Separate Tab for Each CUSIP): | 694308GT8 | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | $0.00 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): | $0.00 |

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| PURCHASE | 10/16/2017 | $500,000.00 | $103.53 | $517,665.00 |
| SALE | 9/25/2018 | $500,000.00 | $100.12 | $500,585.00 |

Case: 19-30088    Doc# 14629-5    Filed: 10/28/24    Entered: 10/28/24 15:37:07    Page
269 of 278

| CUSIP (Provide a Separate Tab for Each CUSIP): 694308HC4 | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | $0.00 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): | $0.00 |
|---|---|---|---|---|

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| PURCHASE | 10/18/2016 | $500,000.00 | $105.91 | $529,525.00 |
| SALE | 9/25/2018 | $500,000.00 | $96.36 | $481,795.00 |

Annex A - Part II
Central States, Southeast and Southwest Areas Pension Fund
CUSIP 694308HM2

| CUSIP (Provide a Separate Tab for Each CUSIP): | 694308HM2 | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | $0.00 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): | $1,215,000.00 |
|---|---|---|---|---|---|

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| PURCHASE | 6/7/2018 | $400,000.00 | $96.13 | $384,536.00 |
| PURCHASE | 6/13/2018 | $815,000.00 | $95.05 | $774,665.65 |

| CUSIP (Provide a Separate Tab for Each CUSIP): | 694308HP5 | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | $244,000.00 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): | $244,000.00 |

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| PURCHASE | 6/1/2018 | $244,000.00 | $91.68 | $223,708.96 |

| CUSIP (Provide a Separate Tab for Each CUSIP): 694308HS9 | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | $0.00 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): | $0.00 |
|---|---|---|---|---|

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| PURCHASE | 6/15/2017 | $500,000.00 | $102.98 | $514,885.00 |
| PURCHASE | 3/15/2018 | $1,000,000.00 | $95.52 | $955,230.00 |
| SALE | 9/25/2018 | $1,500,000.00 | $91.97 | $1,379,595.00 |

Case: 19-30088   Doc# 14629-5   Filed: 10/28/24   Entered: 10/28/24 15:37:06   Page
279 of 278

| CUSIP (Provide a Separate Tab for Each CUSIP): 694308HW0 | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | $0.00 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): | $1,375,000.00 |
|---|---|---|---|---|

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| PURCHASE | 11/27/2017 | $1,495,000.00 | $99.70 | $1,490,574.80 |
| PURCHASE | 12/1/2017 | $80,000.00 | $100.36 | $80,286.40 |
| SALE | 1/11/2018 | $275,000.00 | $98.18 | $269,981.25 |
| PURCHASE | 6/11/2018 | $570,000.00 | $91.02 | $518,836.80 |
| PURCHASE | 6/13/2018 | $405,000.00 | $91.00 | $368,554.05 |
| PURCHASE | 10/17/2018 | $75,000.00 | $89.84 | $67,382.25 |
| SALE | 11/13/2018 | $390,000.00 | $81.09 | $316,231.50 |
| SALE | 11/14/2018 | $585,000.00 | $78.50 | $45,922,500.00 |

Annex A - Part II
Central States, Southeast and Southwest Areas Pension Fund
CUSIP 694308H23

| CUSIP (Provide a Separate Tab for Each CUSIP): | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): |
|---|---|---|
| 694308H23 | $0.00 | $4,555,000.00 |

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| PURCHASE | 8/2/2018 | $5,385,000.00 | $99.77 | $5,372,345.25 |
| SALE | 11/15/2018 | $830,000.00 | $89.00 | $738,700.00 |

Case: 19-30088    Doc# 14629-5    Filed: 10/28/24    Entered: 10/28/24 15:37:07    Page 275 of 278

| CUSIP (Provide a Separate Tab for Each CUSIP): 694308JA6 | | Beginning position held as of opening of trading on April 29, 2015 (if none, enter "0 shares" or "$0"): | $0.00 | Ending position held as of the close of trading on November 15, 2018 (if none, enter "0 shares" or "$0"): | $0.00 |
|---|---|---|---|---|---|

Transaction Detail (Provide one row for each transaction for the above CUSIP between April 29, 2015 and November 15, 2018)

| Purchase or Sale | Transaction Date (Purchase/Acquisition or Sale) (mm/dd/yyyy) | Number of Shares or Amount of Notes (in dollars) | Price per Share / Note | Total Cost (excluding Commissions, Taxes, and Fees) |
|---|---|---|---|---|
| PURCHASE | 8/2/2018 | $345,000.00 | $99.72 | $344,020.20 |
| SALE | 8/3/2018 | $345,000.00 | $100.39 | $346,359.30 |
| PURCHASE | 8/28/2018 | $400,000.00 | $100.96 | $403,828.00 |
| SALE | 9/25/2018 | $400,000.00 | $100.76 | $403,020.00 |

**Annex A – Part III**

Central States, Southeast and Southwest Areas Pension Fund submits this amended proof of claim and adopts the allegations set forth in the Third Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 121) filed in *In re PG&E Corp. Secs. Litig.*, No. 3:18-cv-03509 (N.D. Cal.), to the extent the allegations are relevant and as they pertain to the Fund's investment decisions for the applicable time periods.  The proof of claim is only amended to adopt those allegations and is otherwise the same as originally submitted.

# Electronic Proof of Claim_LLWV#27423[[CSLT# 4025#CF]]

Final Audit Report                                    2023-10-11

| | |
|---|---|
| Created: | 2023-10-11 |
| By: | Kroll (efiling@ra.kroll.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAkYqwrWd-XHR45DbTPzqkG_7HANShlnlg |

## "Electronic Proof of Claim_LLWV#27423[[CSLT#4025#CF]]" History

📄 Web Form created by Kroll (efiling@ra.kroll.com)
2023-10-11 - 4:11:04 PM GMT

📎 Charles H. Lee (chlee@centralstatesfunds.org) uploaded the following supporting documents:
📎 Attachment
2023-10-11 - 4:18:44 PM GMT

📄 Web Form filled in by Charles H. Lee (chlee@centralstatesfunds.org)
2023-10-11 - 4:18:44 PM GMT- IP address: 216.115.190.121

✍️ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/118.0.0.0 Safari/537.36)
2023-10-11 - 4:18:47 PM GMT- IP address: 216.115.190.121

✅ Agreement completed.
2023-10-11 - 4:18:47 PM GMT

**KROLL** Powered by **Adobe Acrobat Sign**