**WEIL, GOTSHAL & MANGES LLP**
Richard W. Slack (*pro hac vice*)
(richard.slack@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel:      (212) 310-8000
Fax:      (212) 310-8007

**KELLER BENVENUTTI KIM LLP**
Jane Kim (#298192)
(jkim@kbkllp.com)
David A. Taylor (#247433)
(dtaylor@kbkllp.com)
Thomas B. Rupp (#278041)
(trupp@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, CA 94105
Tel: (415) 496-6723
Fax: (650) 636 9251

**LATHAM & WATKINS LLP**
Joshua G. Hamilton (#199610)
(joshua.hamilton@lw.com)
Michael J. Reiss (#275021)
(michael.reiss@lw.com)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Tel: 424 653 5500

**LATHAM & WATKINS LLP**
James E. Brandt (*pro hac vice*)
(james.brandt@lw.com)
1271 Avenue of the Americas
New York, NY 10020
Tel: 212 906 1200

*Attorneys for the Debtors and Reorganized Debtors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                    **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**STATEMENT IN SUPPORT OF REORGANIZED DEBTORS' PROPOSED CASE SCHEDULE** |

PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (collectively, "PG&E," the "Debtors" or the "Reorganized Debtors"), submit this statement in support of PG&E's proposed case management schedule in advance of the October 30, 2024 status conference.

## I.    PG&E'S PROPOSED SCHEDULE

PG&E proposes the following schedule for resolving the claims of the remaining 86 securities claimants (the "Claimants"):

- **November 21, 2024** – Parties may begin serving discovery requests
- **December 5, 2024** – Parties to exchange initial disclosures
- **January 10, 2025** – PG&E to begin producing, after meeting and conferring with Claimants, relevant documents from among the *more than 5 million documents* produced in prior litigations related to the North Bay Fires and Camp Fire
- **June 18, 2025** – Parties to substantially complete rolling document productions for document requests served on or before December 31, 2024
- **November 20, 2025** – Fact discovery cutoff
- **December 17, 2025** – Opening expert reports for the party bearing the burden of proof
- **January 29, 2026** – Rebuttal expert reports
- **February 26, 2026** – Reply expert reports
- **March 25, 2026** – Expert discovery cutoff
- **April – August 2026** – Summary judgment briefing and hearing
- **September 2026** – Evidentiary hearing

## II.    OVERVIEW OF SCHEDULES

PG&E has proposed a reasonable and appropriate case management schedule for resolving the securities claims asserted by the Claimants that is consistent with the parties' agreement and the Court's July 2023 *Order Authorizing Amendment and Objection Procedures for Securities Claims* (ECF No. 13934) that mandates at least 9 months for fact discovery and then at least 3 months for expert discovery.  PG&E's schedule is efficient for a securities case, allowing both sides the time needed to address the relevant issues related to discovery, class certification, and experts.  Although discovery will potentially be significant, the schedule PG&E proposes provides for aggressive progress.  For example, it contemplates that, within the next 10 weeks, PG&E will begin producing potentially *millions* of documents that PG&E produced in prior wildfire litigations.

Conversely, PERA and the RKS Claimants' proposed schedule (the "<u>Claimants' Proposed Schedule</u>")—attached hereto as Exhibit A—is fundamentally flawed. For example, in addition to being entirely impractical as a matter of timing and procedure, it would allow Claimants to take all the discovery they want from PG&E while barring PG&E from taking any discovery of the Claimants until after a "Phase I" trial. This bifurcated and one-way discovery approach is aimed at putting all of the discovery burden on PG&E with no burden at all on Claimants to provide even basic discovery relating to their decisions to purchase PG&E securities. Aside from the obvious unfairness and legal infirmity of this approach, it is downright inefficient, leading to, among other things, the potential need for two trials per Claimant. Moreover, Claimants' Proposed Schedule is a baldfaced attempt to bury until "Phase II" (and trial number two) one of their most significant weaknesses—establishing that Claimants actually relied on the alleged misstatements. Under Claimants' proposal, all of the work done in Phase I could be borne out only to discover at the end of Phase II that it was all unnecessary because the Claimants did not rely on the alleged misstatements. Of course, reliance is an essential element of the Claimants' Section 10b-5 claim. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008) (holding that "[r]eliance by the plaintiff upon the defendant's deceptive acts is an essential element" of a Section 10b-5 securities claim).

In summary, Claimants' Proposed Schedule should be rejected in favor of PG&E's schedule because Claimants' Proposed Schedule is prejudicial to PG&E by barring PG&E from taking reciprocal discovery or moving for summary judgment, unworkable because of the truncated timeframe it imposes on PG&E to review and produce documents and oppose class certification, and irreconcilable with the parties' agreement and this Court's order that fact discovery last at least 9 months and expert discovery last at least 3 months.

### III. THE CLAIMANTS' PROPOSED SCHEDULE PREJUDICES PG&E

Claimants' Proposed Schedule would benefit only Claimants, and it fails to allow for standard case management tools to allow PG&E to defend itself by seeking an early resolution or narrowing of issues in this litigation. For example, Claimants' Proposed Schedule would completely omit summary judgment, and foreclose PG&E's ability to take discovery on reliance, which is a prime issue for summary judgment in this case.

To establish a Section 10b-5 securities claim, a Claimant must not only prove that PG&E knowingly made material false statements (which the Claimants cannot do), but also that the Claimant *relied* on those statements when purchasing PG&E shares. *Stoneridge*, 552 U.S. at 159.[1] The notion that the remaining Claimants—most of which are sophisticated financial institutions and investment companies—relied on the alleged misstatements is not believable. As just one example, 63 of the 78 remaining Claimants that purchased PG&E stock during the relevant period purchased PG&E shares *while the North Bay Fires or the Camp Fire were still burning*. In other words, the evidence will show that these Claimants purchased PG&E stock knowing all too well the risks of doing so, and certainly not because of some generic statement PG&E made months or years prior about how it was "stepping up" its fire safety efforts.

The Claimants also know that they cannot establish reliance. That is why they have rejected a schedule that allows for summary judgment at all, and instead proposed a schedule that forecloses PG&E from taking discovery regarding the Claimants' purported reliance until after a "Phase I" trial on every element of their Section 10b-5 claim *except reliance*. Moreover, requiring all parties to be subject to discovery at the same time is more likely to lead to an expedited resolution of outstanding claims, as all parties will have burdens in discovery and the opportunity to uncover and use in settlement negotiations the evidence establishing perceived weaknesses in the other side's case. Claimants' bifurcated proposal is patently unfair, prejudicial, and inefficient.

There is simply no basis to bar PG&E from taking discovery of the Claimants or to eliminate PG&E's right to move for summary judgment, which is always available in state and federal securities cases, and likewise "applies in contested matters, without the summary judgment becoming a separate contested matter." *In re Santos*, 2005 WL 6960216, at *3 (B.A.P. 9th Cir. Dec. 20, 2005); *see also In*

---

[1] The Supreme Court has made clear that the rebuttable "presumption of reliance" is a product of necessity in class actions because a class could never get certified if each class member were required to individually prove actual reliance on the alleged misstatements or on the market price. *Halliburton Co v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267–68 (2014); *see also id.* at 281 ("[W]ithout the presumption of reliance, a Rule 10b–5 suit cannot proceed as a class action."). The presumption should not apply here, outside the class context. But even if the Court decides that the presumption applies, PG&E has the right to rebut it. *Id.* at 276. PG&E must be permitted to take discovery of Claimants to establish that they either cannot prove reliance in the first instance or that PG&E has rebutted a presumption of reliance.

*re Locklin*, 2015 WL 8267995, at *7 (B.A.P. 9th Cir. Dec. 7, 2015) ("Summary judgment procedures are available in bankruptcy court contested matters . . . "). Indeed, courts have granted summary judgment based on a claimant's lack of reliance. *See In re Vivendi, S.A. Securities Litig.*, 123 F. Supp. 3d 424, 436 (S.D.N.Y. 2015) (granting summary judgment where, like here for several Claimants, the plaintiff "did not even start investing in Vivendi until after the fourth (of nine) corrective disclosure was disseminated to the market").[2] Claimants that traded on known risks—which is likely all of them—did not rely on the alleged misstatements, and PG&E should be permitted to move for summary judgment on that basis. *See generally*, *Halliburton*, 573 U.S. at 279 ("[D]efendants may introduce [] evidence at the merits stage to rebut the *Basic* presumption.").

## IV.     THE CLAIMANTS' PROPOSED SCHEDULE IS UNWORKABLE

Among other things, the Claimants' Proposed Schedule would require PG&E to review and produce *millions of documents* that PG&E produced in prior litigations within 6 weeks—a large portion of which likely have no relevance to this litigation—and substantially complete its fact discovery productions by the end of January 2025, despite the fact that neither PERA nor the RKS Claimants have even served their discovery requests yet. That is not realistic in a case with millions of documents to potentially review and produce.[3]

Likewise, PERA's proposed class certification briefing schedule for the 27 remaining non-RKS Claimants (or Claimant groups)—a motion that will be a waste of the parties' and the Court's time—has PERA filing its class certification motion on December 23, 2024 (right before the holidays) and then affords PG&E only about 6 weeks to conduct discovery and oppose the motion. In opposition to that motion, PG&E intends to show, for example, that the class is not "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), and that common issues do not predominate over individualized issues among the 27 Claimants, all of whom bought and sold at different times,

---

[2]     Courts likewise grant summary judgment when an individual plaintiff is unable to establish damages. *Arenson v. Broadcom Corp.*, 2004 WL 3253646, at *1 (C.D. Cal. Dec. 6, 2004) (granting motion for summary judgment as to 26 plaintiffs because they "profited from the alleged fraud by selling their shares of stock at an artificially inflated price.").

[3]     While the RKS Claimants agreed to avoid duplicative discovery, PERA has refused to coordinate discovery with the parties to the District Court action, which guarantees inefficiency, including potentially forcing the same individuals to sit for multiple depositions.

after different of the allegedly fraudulent statements, and during and after different wildfires and public announcements, Fed R. Civ. P. 23(b)(3).[4]  PG&E will need significantly more time than 6 weeks to oppose that motion.[5]

## V.    THE CLAIMANTS' PROPOSED SCHEDULE IS INCONSISTENT WITH THE COURT'S ORDER

After long negotiations that preceded the Claim Objections, the parties agreed that if the Claim Objections were denied in part, the parties would allow for at least 9 months of fact discovery and 3 months of expert discovery.  That agreement was incorporated into the Court's July 2023 Order Authorizing Amendment and Objection Procedures for Securities Claims (ECF No. 13934), which reads as follows:  "If discovery is permitted by the Court to proceed, any case management plan shall provide at least 9 months for fact discovery and 3 months for any expert discovery."  *Id.* ¶ 10(e).

The Claimants' Proposed Schedule runs afoul of that order by requiring PG&E to complete its productions within 3 months, and complete all fact discovery within 6 months, while providing PG&E only a short period in "Phase II" (starting more than a year from now) to conduct its affirmative discovery, if necessary.  The purpose of that agreement (and ultimately, the Court order) was to ensure that PG&E had sufficient time to review and produce millions of pages of documents and marshal that information for depositions.  Truncating that time is inconsistent with the entire purpose of the proposed schedule, and PG&E would not have agreed to that proposal if the Claimants had disclosed that they intended to bifurcate the schedule in this manner.

---

[4]    PG&E will take discovery of individualized reliance in any event if PERA moves to certify a class.  *See, e.g.*, *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1006 (7th Cir. 1971) (holding that "absent members of a class . . . may be subjected to the party discovery procedures permitted under the Federal Rules"); *Schwartz v. Celestial Seasonings, Inc.*, 185 F.R.D. 313, 316-17 (D. Colo. 1999) (allowing for individualized discovery regarding the issue of reliance) (citing 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1787 at 218–19 (2d ed. 1986)).  PG&E will take discovery to establish, among other things, that the 27 Claimants are all differently situated— *i.e.*, that they purchased different securities at different times for different reasons.  This is yet another reason why bifurcating discovery makes little sense here.

[5]    PG&E proposes 90 days to oppose the class certification motion and 45 days for PERA to file a reply.

VI.    CONCLUSION

PG&E respectfully requests the Court enter an order allowing for discovery to be conducted in a single phase and on the schedule proposed by PG&E.

Dated: October 29, 2024

**WEIL, GOTSHAL & MANGES LLP**
**LATHAM & WATKINS LLP**
**KELLER BENVENUTTI KIM LLP**

By:  /s/ *Joshua G. Hamilton*
Joshua G. Hamilton

*Attorneys for Debtors and Reorganized Debtors*