1               UNITED STATES BANKRUPTCY COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                      -oOo-

4  In Re:                  ) Case No. 19-30088
                       ) Chapter 11

5  PG&E CORPORATION AND PACIFIC  )
  GAS AND ELECTRIC COMPANY     ) San Francisco, California

6                      ) Wednesday, October 30, 2024
        Reorganized Debtors.  ) 10:00 AM

7  _____

8                      STATUS CONFERENCE RE OMNIBUS
                      OBJECTION TO SECURITIES

9                      CLAIMS (THIRTY-THIRD) (PERA
                      AND SECURITIES ACT

10                    PLAINTIFFS' TAC, INCLUDING
                    CERTAIN CLAIMANTS THAT

11                    ADOPTED THE TAC) [14200] AND
                    STATUS CONFERENCE RE OMNIBUS

12                    OBJECTION TO SECURITIES
                    CLAIMS (THIRTY-FOURTH)

13                    (CLAIMS ADOPTING RKS
                    AMENDMENT) [14203]

14               TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE DENNIS MONTALI

15          UNITED STATES BANKRUPTCY JUDGE

16  APPEARANCES (All present by video or telephone):
  For the Reorganized      RICHARD W. SLACK, ESQ.

17  Debtors:               Weil, Gotshal & Manges LLP
                      767 Fifth Avenue

18                    New York, NY 10153
                    (212)310-8000

19

20                    JOSHUA G. HAMILTON, ESQ.
                    Latham & Watkins LLP

21                    10250 Constellation Boulevard
                    Suite 1100

22                    Los Angeles, CA 90067
                    (424)653-5500

23

24

25

```
 1   For PERA:                  MICHAEL P. CANTY, ESQ.
                                THOMAS A. DUBBS, ESQ.
 2                              Labaton Keller Sucharow LLP
                                140 Broadway
 3                              New York, NY 10005
                                (212)907-0700
 4
                                MICHAEL S. ETKIN, ESQ.
 5                              Lowenstein Sandler LLP
                                One Lowenstein Drive
 6                              Roseland, NJ 07068
                                (973)597-2500
 7
     For RKS Claimants:         RICHARD A. BODNAR, ESQ.
 8                              Rolnick Kramer Sadighi LLP
                                One Pennsylvania Plaza
 9                              Suite 3401
                                New York, NY 10119
10                              (212)597-2800

11

12

13

14

15

16

17

18   Court Recorder:            LORENA PARADA/ ANKEY THOMAS
                                United States Bankruptcy Court
19                              450 Golden Gate Avenue
                                San Francisco, CA 94102
20

21   Transcriber:               RIVER WOLFE
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (800) 257-0885
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 2 of 44

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, OCTOBER 30, 2024, 10:00

2                              AM

3                             -oOo-

4       (Call to order of the Court.)

5           THE CLERK:  Court is now in session, the Honorable

6    Dennis Montali presiding.  Calling the matter of PG&E

7    Corporation.

8           THE COURT:  Morning.  Morning, Mr. Hamilton.  Your

9    appearance.

10          MR. HAMILTON:  Good morning, Your Honor.  Joshua

11   Hamilton on behalf of PG&E.

12          THE COURT:  Mr. Bodnar.

13          MR. BODNAR:  Good morning, Your Honor.  Rich Bodnar on

14   behalf of the claimants.

15          THE COURT:  Mr. Canty.

16          MR. CANTY:  Good morning Your Honor.  Michael Canty

17   from Labaton Keller Sucharow on behalf of PERA.

18          THE COURT:  Where am I?  My usual friends, not the --

19   the regulars aren't here today?  Mr. Hamilton.

20          MR. HAMILTON:  Mr. Etkin, I believe, is joining us.

21   And Mr. Dubbs is present, but I'll be handling the argument.

22   I'm sure, if you want to hear from him, he can make himself

23   available.  But you're stuck with me.

24          THE COURT:  All right.  I see Mr. Slack.  Mr. Etkin.

25   Appearances.

1          MR. SLACK:  Richard Slack from Weil, Gotshal & Manges

2     for PG&E.

3          MR. ETKIN:  Good morning, Your Honor.  Michael Etkin

4     on behalf of PERA.

5          THE COURT:  Mr. Slack, where is your Yankees poster?

6          MR. SLACK:  No Yankees poster.  It was actually an

7     Ernie Banks jersey.

8          THE COURT:  Oh, that's right.  Ernie Banks.  Okay.  I

9     thought nobody would show a Yankees poster today if they had

10    good sense, even though I can't root for the Dodgers.

11         So I have a couple of preliminary questions before we

12    get to the merits.  In looking over the papers, there's

13    reference, I think, in the PERA filing, or maybe it's the other

14    one, of the Orbis litigation.  That's not a name I ring a bell.

15    Is that a name being used for the third amended complaint for

16    Judge Davila, or is that some other action?

17         MR. BODNAR:  Your Honor, Rich Bodnar from RKS.  I'll

18    speak to that very briefly.

19         One of the RKS claimants is a fund by the name of

20    Orbis, which has also filed a direct action against PG&E's

21    officer and director defendants in the district court before

22    Judge Davila.  That action is consensually stayed, pending

23    proceedings in the district court Class action.

24         THE COURT:  Okay.  So the district court class action,

25    which we've been referring to as the third amended complaint,

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 4
of 44

1 that just doesn't have a separate name. I mean, it's not Orbis

2 so okay. And that --

3       UNIDENTIFIED SPEAKER: It is PERA, Your Honor.

4       THE COURT: And then the other question I have, I was

5 looking over the summary from last year on what was reserved

6 and all the stipulations regarding the amendment to the

7 objections procedure. And my memory was refreshed that PG&E

8 said it wouldn't seek a stay of any ruling. It didn't waive

9 any right to appeal, which, of course, it has done.

10       And I'm curious as to -- yeah, Mr. Bodnar or Mr.

11 Etkin, if you're free to tell me whether either or both of you

12 are going to intervene or respond to the motion. Because it's

13 an interlocutory order, are you going to do anything about that

14 or are you just going to live with it or what? I just curious

15 as to what's going to likely the cycle of that process. Can

16 you tell me or not?

17       MR. BODNAR: No, Your Honor. The RKS case claimants

18 intend to oppose PG&E's motion.

19       THE COURT: Okay. Okay. Well, that's all I need to

20 know.

21       Well look, I'm kind of at a standstill here because

22 I'm going back in my memory to over a year ago, or maybe just a

23 year ago, when we first understood or I understood the

24 sequencing that would follow that led to the omnibus objections

25 and the briefing and my ruling. But I never dreamed that it

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 5
of 44

1 would now look like a trial on the merits out roughly two years

2 from now. I guess I can't -- I mean, nothing I can do about

3 it, I guess. I mean, I just don't understand why it can't be

4 on a more accelerated basis. But both sides seem to say that,

5 whether it's in one phase or two phases, it's going to be

6 possibly in September of 2026.

7 But my question is this. Well, I guess, Mr. Hamilton,

8 I should put it to you. The argument seemed to be, and

9 repeatedly, that you think you got a silver bullet with the

10 reliance issue. Why can't you zero in on the reliance issue

11 and do whatever you have to do and see if you can put this

12 thing to bed with a summary judgment motion on reliance?

13 Because it seems to me if you can defeat reliance, you're done.

14 So why do we have to go through all these phases of all this

15 other stuff if there's a silver bullet there for you?

16 MR. HAMILTON: Well, we agree with you, Your Honor.

17 We've asked for all the discovery to be done without phases and

18 that they should have an obligation to provide discovery on an

19 essential element of their claims, which is reliance, which

20 then we can address and it potentially narrow or eliminate a

21 lot of these claims. We've asked for that to be done now, and

22 we agree with you that that's the most efficient way to

23 proceed.

24 THE COURT: But what if I -- again, I'm sure the other

25 side isn't thrilled with that idea, but if I said I'm going to

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 6
of 44

1    do that, I'm going to -- I'm going to put this case back on the

2    back burner, except to the extent that PG&E can develop, it

3    seems to me, its most critical defense.  The damages for any

4    particular claimant may vary, but if the claimant can't carry

5    its burden of reliance, it loses.

6            So what would be the reasonable timetable to let you

7    play out that strategy?  And in fact, that -- put your

8    affirmative burdens on the hold and focus in on that as a

9    defensive weapon, that might be the winner.

10           MR. HAMILTON:  If they were to produce all of their

11   trading and other documents to support the reliance claim, and

12   then we were to move for summary judgment on those claims; is

13   that what you're --

14           THE COURT:  Well, I'm just saying, if that's the

15   issue -- I mean, I'm just --

16           MR. HAMILTON:  I see.

17           THE COURT:  Let's, for the moment, pretend that

18   instead of several hundred claimants, we had one claimant.

19           MR. HAMILTON:  Right.

20           THE COURT:  And one claimant said, I was deceived, and

21   I lost ten-million dollars.  And here's my proof.  And your

22   defense was you didn't rely on it.  So you might take that

23   person's deposition.  You might review the documents.  And you

24   might be able to win summary judgment.  So again, what would

25   you --

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 7
of 44

1        MR. HAMILTON:  Right.

2        THE COURT:  And I realize I can't oversimplify it

3   beyond this hypothetical.  And it isn't just one claimant, but

4   okay, it's whatever the current count is.  I'm a little

5   confused, but it looks like it's about 400, if I got the

6   numbers right.  Maybe I'm wrong.  Well, what do you need?  Does

7   that mean 400 depositions, or does it mean something else?

8        MR. HAMILTON:  Yeah.  I mean, I think you hit it right

9   on the head.  We actually think there's about eighty-six

10  claimant groups.  There is fifty-nine from RKS and twenty-seven

11  in sort of the PERA group.

12       THE COURT:  Well, I know.  But there are individual

13  members of those groups that either did or didn't rely, right?

14       MR. HAMILTON:  Well, right.

15       THE COURT:  Okay.

16       MR. HAMILTON:  A lot of them -- a lot of them are the

17  same investment manager.  But yes, I understand what you're

18  saying.  I think we could do that.  I think if -- I think if --

19       THE COURT:  Well, Mr. Hamilton, let me rephrase the

20  question.

21       MR. HAMILTON:  Yeah.

22       THE COURT:  If we were -- if we were now having a pre-

23  trial for all 400, or whatever the count is, and I said to the

24  other side, how many witnesses are going to be there, I presume

25  they'll have a smaller number.  So if Mr. X was the investment

1    advisor for twenty claimants, then maybe he's your witness.

2              MR. HAMILTON:  Right.

3              THE COURT:  But so what do you need to prepare that

4    portion of your case?

5              MR. HAMILTON:  I think we would -- yeah, we would need

6    all of their trading information from their investment manager

7    and then depositions.  And then, I mean, we would commit to

8    move as quickly as possible, if that were the phase to get it

9    on the reliance to move on all of that as efficiently as

10   possible.

11             THE COURT:  I'm trying to avoid the concept of

12   phases --

13             MR. HAMILTON:  Agree.

14             THE COURT:  -- and focus on -- look, let's try it a

15   different way.  If, two years from now, after countless expense

16   and countless pre-trials and countless hearings, at the end of

17   the day, the finder of fact says A, B, and C did not rely.  D

18   did.  D has a claim.  A, B, and C are out.  It doesn't matter

19   all these other elements, it seems to me.

20             So my question, then, is if I said to you, okay, Mr.

21   Hamilton, we're going to go -- we're going to bifurcate it my

22   way with this potential defense up first, the question is, what

23   would be a reasonable time for you to be able to do that?

24             MR. HAMILTON:  I mean, if they could --

25             THE COURT:  To prepare for it.  Hmm?

1          MR. HAMILTON:  If they could produce the documents,

2     all of those documents, to us in the next sixty days, and then

3     we could take the depositions, I think we could do that in nine

4     months, six-to-nine months, possibly, if we could get all the

5     all the information and do the depos.

6          THE COURT:  Okay.  Well, Mr. Bodnar and --

7          MR. CANTY:  Your Honor, yes.

8          THE COURT:  -- or Mr. Canty, whoever's going to speak,

9     I'm not making my mind up to do this.  I've just thought about

10    it.  But what's wrong with that approach?

11         MR. CANTY:  Well, it flies in the face of the general

12    practice, especially in class actions.  Here, we would put

13    forth a market efficiency expert, and we would get the basic

14    presumption of reliance.  And then the defendants could then

15    rebut that presumption.

16         THE COURT:  Well, I understand that.  I understand

17    that --

18         MR. CANTY:  (Indiscernible).

19         THE COURT:  -- but let's just -- yeah, but let's

20    assume the -- first of all, this is not a traditional class

21    action.  It's not a class action at all yet.  And it's not --

22         MR. CANTY:  Right.

23         THE COURT:  -- a PSALP (phonetic).  It's a claims

24    objection so -- but let's assume that I decree that the

25    presumption of reliance is applicable.  The defense has the

1  burden of overcoming the presumption.  So Mr. Hamilton says

2  we'll overcome it.

3           MR. CANTY:  There are other -- I'm sorry, Your Honor.

4           THE COURT:  Go ahead.

5           MR. CANTY:  Yeah, I mean, there are other -- there are

6  other, essentially -- I didn't want to call them class-wide

7  issues that can be resolved that would make it much more

8  efficient for the Court, where you wouldn't -- I mean, let's

9  talk about what we're discussing here, which would be taking

10  hundreds of depositions on individualized issues of reliance

11  based on what discovery.  What information they did or didn't

12  have.  The phased approach, where you deal with those issues

13  that apply to everyone first, may obviate the need to have to

14  take discovery from certain groups or certain individuals.

15           So certainly, we believe that the most efficient way

16  forward and the most expeditious way to get this resolved is to

17  put those up front.

18           THE COURT:  No, I know.  I know you do.  I know you

19  do.  And I'm trying to just explore a different approach.  And

20  Mr. Bodnar might have a different take, but let's stick with

21  you, Mr. Canty, first.

22           MR. CANTY:  Okay.

23           THE COURT:  How many people, human beings, would be

24  called as witnesses to carry your burden on reliance?  Are we

25  talking about ten, twenty, fifty?  I mean, it isn't hundreds of

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 11
of 44

1  people for multiple days.  You don't have that many claims.

2        MR. CANTY:  Well, what we would do is we would move --

3  we would file for class certification asking for the -- in

4  December of this year asking for the presumption.  And at that

5  point, it's a rebuttable presumption.  They could attack

6  whoever they want.  Then it's up to the defendants to say,

7  we're going to go after these individuals saying that we want

8  to rebut that presumption.

9        So from our perspective, it's one witness.  It's a

10  witness from PERA that would testify.  We would get the

11  rebuttable presumption, and then it would be up to the

12  defendants, who are here -- the debtors, excuse me, to

13  challenge on an individual basis.

14        THE COURT:  Okay.  But you're missing my point.  What

15  if I --

16        MR. CANTY:  Well, in trial, Your Honor, that would

17  happen in a second phase of a trial.  We would go to trial.

18  All of those --

19        THE COURT:  But Mr. Canty, you keep jumping the gun.

20  There is no class certification yet.  And certainly, the

21  company has raised the question, is there enough to justify a

22  class at this point?  And I'm trying to skip that and pretend

23  that you have all the things you want in place.

24        But again, envision where we are in two years, and at

25  the end of the day, after carrying all of your burdens and

1  applying all your presumptions, the finder of fact says Mr. A

2  from PERA did not rely reasonably.  Mr. B from some other

3  company that's part of your group didn't know.  Mr. C did.

4  Therefore, C gets a recovery, and A and B are out.  It's that

5  simple.  What am I missing?

6        MR. CANTY:  Well, I mean, that's certainly an

7  approach.  We respectfully submit that that's not the most

8  efficient path forward to resolve --

9        THE COURT:  Well, that's because you might lose, but

10 it's pretty efficient if it gets rid of cases that are destined

11 to lose.  I mean, I'm not saying that.  Obviously, I'm not

12 making my mind up at all.  But what I'm saying is we don't need

13 to -- we don't need to run and touch first, second, and third

14 if the batter is going to be called out at home.  And if home

15 is where you lose the reliance argument, then it doesn't matter

16 how you got there.  You got thrown out at home.  So there's my

17 baseball metaphor for the day.

18       Mr. Bodnar, what's your take on this same question, on

19 my very, very narrow but specific hypothetical?

20       MR. BODNAR:  I will answer your very, very narrow

21 question, Your Honor.  Mr. Hamilton alighted passed one

22 important point.  It would not be one summary judgment motion

23 on reliance.  It would be fifty-nine as to my clients alone.

24 That's because every one of my clients would be individualized

25 in that inquiry.

1          THE COURT:  Okay.  Okay.

2          MR. BODNAR:  Fifty-nine motions for you, if there's

3     even summary judgment, or fifty-nine mini trials.  You asked

4     how many deponents or how many people would I have to bring to

5     trial.  Well, I'd have to bring at least fifty-nine.

6          THE COURT:  Yeah.  Right.

7          MR. BODNAR:  Some of my clients would have to bring

8     more than one person because they have multi-manager

9     situations.  So they're a beneficial owner, but they have

10    investments with multiple managers.  So it might be a hundred.

11         THE COURT:  Okay.

12         MR. BODNAR:  And Your Honor, on the phasing aspect,

13    the efficient approach, we think the better approach, PG&E has

14    obviously said we intend to win on reliance.  Yeah, but they've

15    said they intend to win on everything else too.  And as Your

16    Honor is absolutely right, if they win on falsity, that's one

17    trial, and we're all done.  If they win on scienter, that's one

18    trial, and we're all done.  If they win on loss causation, one

19    trial, and we're all done.  I have to survive those trials.

20    That's very frank.

21         It's one trial of all those elements.  And if any of

22    those -- if falsity goes entirely their way, all fifty-nine of

23    my clients are done.  I understand that.  On the other hand,

24    Your Honor, if one of my clients survives on reliance, just one

25    of the fifty-nine, we have to do everything that we've put

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 14
of 44

1   aside for another year and a half.

2        So from our perspective, Your Honor, it's far more

3   efficient to take the issues that can wipe out everyone first

4   and then deal with the individualized issues second.

5        THE COURT:  Well, I'm using -- I'm struggling with my

6   observation that I never dreamed at the outset, or whatever the

7   definition of outset is, that this would be going on as long as

8   it would.  I must say, I go back to last year.  If I had

9   realized how long the cycle would run for even the omnibus

10  objections, I wouldn't have agreed to such a long time.  I'll

11  agree that it took me a while to make a decision too.

12       But right or wrong, the whole process was -- at least

13  maybe for those of you that live in the class action world,

14  that was a -- that was a quick trip.  But for me, in the

15  bankruptcy community, it was interminably long.  And I'm

16  concerned about it continuing to be in that way.

17       But okay.  So your point is that maybe the -- I'll

18  call him the plaintiff.  Maybe the debtor will fail on carrying

19  its prima facie case on one of these other elements, in which

20  case here -- or I'm sorry.  Will be the -- I'm sorry, that's a

21  class or not.  Well, no, I didn't -- just restate that again so

22  I don't misstate it.  So how can you -- how can you lose on a

23  point that that PG&E has to carry the --

24       MR. BODNAR:  Right.  Quite the opposite, Your Honor.

25  And I'll be very frank.  I have to --

1          THE COURT:  Yeah.

2          MR. BODNAR:  -- carry the burden on falsity.

3    Scienter --

4          THE COURT:  Right, right.

5          MR. BODNAR:  Loss causation.  Right.  These issues

6    that apply --

7          THE COURT:  Right.  No, I understand that.  So but how

8    do you carry your burden efficiently?

9          MR. BODNAR:  By going forward, Your Honor, with issue

10   or discovery and then putting forth an evidentiary hearing

11   where I need to prove that certain statements were false.  I

12   need to prove that those statements were made with scienter or

13   on a negligence-based standard.  And I need to prove that they

14   caused loss.

15         And if I do that, that ruling -- or that evidentiary

16   hearing ruling, which we would like to have in December of

17   2025, is effectively sticky, Your Honor, as to all of my fifty-

18   nine claimants, or fifty-nine claimant groups.  It's the same

19   for all of them effectively.  Then we can go into

20   individualized issues.

21         And with due respect to the position to the other side

22   or that a reversal of the phasing, there is certainly a world,

23   Your Honor, where a decision on falsity or loss causation could

24   narrow this case in a way that eliminates certain claimants.

25   So it's not an all-or-nothing proposition.  But these issues,

1  these elements that apply to all claimants, falsity, scienter,

2  loss causation, the three I am focusing on, they have the

3  possibility of being dispositive to all fifty-nine.

4         Reliance is the exact opposite. There is no world

5  outside of Your Honor finding that no one could rely on

6  anything PG&E said, ever, which I'll leave that aside for the

7  moment. But assuming Your Honor did not find that, there's no

8  reliance decision that can eliminate all fifty-nine of my

9  clients in one shot.

10        So we're talking about fifty-nine trials. We're

11 talking about a hundred-plus evidentiary -- I'm sorry, a

12 hundred-plus witnesses, potentially. At least fifty-nine

13 witnesses. And we don't see any efficiency there, Your Honor,

14 and I'm going to set aside the class and their issues because

15 as I said, if one makes it through, if just one reasonably

16 relied on PG&E's statements or the basic presumption applies,

17 that would take all of them, and PG&E is unsuccessful in

18 rebutting that, just for one, then we still have to do all the

19 other work anyway.

20        THE COURT: Okay. All right. Well, I --

21        MR. CANTY: Your Honor, with respect to that number,

22 because I did want to give you -- I mean, we have at least 107

23 claims if you don't treat -- if we don't get class treatment.

24 So to Mr. Bodnar's point, you're talking about hundreds of

25 additional witnesses that you'd need to depose. And again,

1  it's not an all-or-nothing proposition, which I think Your

2  Honor has recognized.  But to Mr. Bodnar's point, doing it in

3  the inverse could kind of clear the field so the Court can move

4  forward efficiently.

5       THE COURT:  Okay.  Well, I appreciate the explanation.

6       Mr. Hamilton, do you want to challenge that?  I mean,

7  I don't want to -- I'm not going to make a decision on this

8  phone call, or this conference.  I just need to let it sink in.

9  But what do you think?  What's wrong with what the way Mr.

10 Bodnar explained it?

11      MR. HAMILTON:  Yeah, a couple of things, Your Honor --

12 and thank you -- is they're basically -- the claimants are

13 basically saying there's a number of ways we could lose before

14 we lose on reliance.  So you should let us lose on those before

15 you're going to have to make us prove an essential claim of

16 reliance later.  There's no dispute that at the end of the day

17 they're going to have to satisfy this essential element.

18      So I think what this underscores is there's certainly

19 no reason to ever bifurcate discovery, which is what -- they've

20 asked to not have any burden at all or produce any documents in

21 discovery on their obligation on reliance, but instead put the

22 onus on PG&E to produce millions of pages of documents and

23 depositions at this initial stage because they might lose on

24 all those -- falsity.  Scienter.  Loss causation.  So there's

25 certainly no reason not to have discovery on this essential

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 18
of 44

1 element of reliance now. But also, regardless of if they get

2 past those other stages, we're going to have to challenge

3 reliance. It's an essential element that's going to have to

4 happen.

5 So I think your approach is workable, and we can try

6 to do it faster than six months if they produce the documents

7 and we take the depositions. But under no circumstances should

8 discovery be phased until to allow them not to have to produce

9 their trading documents and other information now that goes to

10 an essential element of their claims.

11 THE COURT: Well, but that's a question that was

12 framed by the statements you both filed and not by my

13 hypothetical so --

14 MR. HAMILTON: Right. I'm just making that clear.

15 Yeah.

16 THE COURT: Yeah. Okay. And by the way, on that

17 subject, Mr. Canty and Mr. Bodnar, I only caught up with your

18 statement this morning, and it's not -- I mean, I realize you

19 filed it, when, late yesterday, I think. And it doesn't matter

20 when you filed. You filed it. But I didn't get to it today,

21 and so if no other reason, I just have to listen to what you're

22 all saying today and then perhaps reflect on that.

23 So I'm not sure what's the best thing to do. You're

24 welcome to make some further argument, but what I'm inclined to

25 do is to just take a short period of time. A couple of days

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 19
of 44

1   maybe.  I don't know.  We got some distractions coming up next

2   Tuesday, so maybe I can get it done by then, and just come up

3   with what I think is workable.  And I am more inclined to

4   approach this more like we would prepare for any trial.  And

5   that is not to stagger the discovery, but to start the

6   discovery going both ways.

7         And on that subject, Mr. Canty, I know you and your

8   client and Mr. Etkin and others feel strongly about the class

9   issue, but I'm really wondering whether it makes sense to have

10   a class certification for 107 claimants, particularly with

11   whatever the total count from RKS is, who are not interested in

12   participating.  And I'm not saying I won't consider your

13   motion, but to me, this case is not the same case that I was

14   presiding over a year ago, or more than that, going back when I

15   first met Mr. Etkin, what, five-and-a-half years ago, Mr. Etkin

16   and Mr. Slack.  And it's taking a different profile.

17         So I don't I don't need you to argue today why I

18   should certify a class.  Let me just say that I've had a lot of

19   time to reflect on whether that's the right thing to do at this

20   point.  But there's no motion on for action today, so I'm not

21   going to make any decision either way.  But just --

22         MR. CANTY:  Your Honor, if I can make one point on

23   that because --

24         THE COURT:  Yes, sir.

25         MR. CANTY:  -- regardless of the number, I mean, this

1   is just a pattern of putting a burden on these claimants.  We

2   had the filing.

3          And we all know the history, so we don't have to go

4   back to 2020, but the allowing for class treatment and the

5   rebuttable presumption through a market efficiency expert and

6   putting the burden back on defendant, who essentially availed

7   themselves of coming into bankruptcy court, right, this is

8   their decision to come into bankruptcy court, it has put a

9   tremendous amount of burden on these individual claimants.

10  Whereas if we go through the class treatment and we allow the

11  rebuttable presumption to move forward, you don't get to the

12  issue of the individual reliance and the production of

13  documents from these claimants until much later.  It gives us

14  a -- and as you know, we put it in our submission, we are in

15  mediation.

16         So my point is that the whole process here is set up

17  for efficiency and to not put burden on those individual

18  claimants.  And there's a huge benefit there.  So I know

19  there's no motion pending or you haven't asked for a formal

20  position, but I think that highlights the benefit of the class

21  treatment.

22         THE COURT:  Well, look, I understand that.  And even

23  though we don't have much class action in the bankruptcy court,

24  I did a national certification in one of the -- one of the

25  student loan situations.  So I've been there at least once or

1 twice on smaller-sized ones. And I might have a much different

2 take if Mr. Bodnar and his group said, sign me up. We want to

3 be in the class. But they've been resisting it since day 1.

4     And so there's something about just the pure math of

5 the body count of the number of folks who are in your side of

6 this issue, Mr. Canty, and the larger number on Mr. Bodnar's

7 side. And at least for now, it seems like something that that

8 may not be the right thing to do. But you've made your point,

9 and I understand it. And if the presumption is --

10     Well, let me ask Mr. Bodnar. Is there a presumption

11 of reliance for your group, who are not in a class? They're

12 just your group of fifty-nine different individual entities.

13     MR. BODNAR: Your Honor, we believe there is. PG&E

14 (indiscernible) --

15     THE COURT: And how do -- but where do you get it?

16 Where did it come from? Is it from --

17     MR. BODNAR: Basically, Levinson, Your Honor. It's

18 the standard Supreme Court finding that if the market was

19 efficient and we can create a rebuttable presumption, then the

20 stock price impounded the misinformation.

21     THE COURT: Okay.

22     MR. BODNAR: When this information was released, it

23 was corrected.

24     Your Honor, this is actually a great point, though,

25 that you make, which is PG&E has raised this somewhat unique

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 22
of 44

1    argument -- I've certainly never seen it, and I've been doing

2    securities litigation for thirteen years -- that an individual

3    claimant cannot rely on the presumption of reliance.  That's a

4    legal issue that Your Honor can decide in phase 2.  It doesn't

5    have to come up now.

6            THE COURT:  But what if there's a -- what if there's a

7    factual matter.  One of your clients said, what the hell.  I

8    don't care.  The fires, we just heard -- the campfires are

9    still burning, but I want to buy some more shares.  I mean --

10           MR. BODNAR:  Precisely, Your Honor.  If one of my

11   clients has that exact statement --

12           THE COURT:  Right.

13           MR. BODNAR:  -- then may have a silver bullet for that

14   one client.

15           THE COURT:  That's right.

16           MR. BODNAR:  Not (indiscernible) fifty-eight.

17           THE COURT:  So the presumption won't

18   (indiscernible) --

19           MR. BODNAR:  Correct.  They would rebut the

20   presumption in that instance, Your Honor.  But that would

21   require --

22           THE COURT:  Oh, it'd be pretty easy to rebut

23   (indiscernible) --

24           MR. BODNAR:  With that fact pattern.  I represent a

25   lot of investment managers, Your Honor, and I don't think I've

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 23
of 44

1   ever seen something quite that blatant said.

2           On bifurcation of discovery, which is something Mr.

3   Hamilton raised for the first time, as opposed to no

4   bifurcation at all, I would like to note, Your Honor, that the

5   efficiency gains we're talking about are not one-sided.

6   They're actually efficiency gains for PG&E as well, which,

7   since my clients are putative creditors, effectively, of PG&E,

8   they kind of care about that a lot less than their own claims,

9   certainly, but it's not lost on them.

10           PG&E is saying here that they want to do hundreds of

11   depositions, conduct millions of pages of discovery, and as

12   long as one claimant survives the reliance challenges, and

13   fifty-nine summary judgment motions, let's be clear about that.

14   I'm sure Your Honor will enjoy reading those.  But as long as

15   one claimant survives, we're going to have to do all the issuer

16   discovery anyway.

17           Mr. Hamilton says PG&E is going to have to look at

18   millions of pages of documents.  Not really, Your Honor.  In

19   their own statement, they say that they've already produced

20   five-million documents in prior litigations.  They can produce

21   those to us with the click of a button.  In fact, they've

22   basically offered to.

23           So I'm not entirely sure, Your Honor, why it would be

24   more efficient to start with claimants or even run both at the

25   same time when we have an issue we're already produced huge

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 24
of 44

1  amounts of information they can produce to us.  We have an

2  issue where who already had people deposed.  We probably can

3  take ten depositions of PG&E or maybe fifteen, and we can tee

4  up at an evidentiary hearing the most important issues across

5  all the claimants.  PG&E, Your Honor, frankly, should be

6  salivating at this prospect.  They can wipe out the whole

7  litigation in one shot.  But instead they want to turn the

8  burden, as Mr. Canty said, onto the claimants.

9         And by the way, I don't just represent investment

10 managers, I also represent an individual investor, so as a

11 person --

12        THE COURT:  No, I understand.  I know you do.

13        MR. BODNAR:  And they want to turn the burden on the

14 claimants to go first, if you will.  Right.  For the claimants

15 to prove up their reliance element.  Your Honor, let's say my

16 claimant does.  Let's say all fifty-nine do.  We're in no

17 better spot.  They've eliminated none.  And we still have to

18 prove falsity.  Scienter.  Loss causation.

19        I cannot fathom, Your Honor, why PG&E would not want

20 to tee up the big elements, the four big elements, four shots

21 in one evidentiary hearing with one record, and instead want

22 fifty-nine records.  Fifty-nine SJ motions.  Fifty-nine trials.

23        THE COURT:  What would that evidentiary hearing be?

24 Would it be a summary judgment?

25        MR. BODNAR:  Your Honor, we oppose a summary

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 25
of 44

1  judgment --

2  THE COURT: Yes, I know, and that's why I don't

3  understand. What we call that hearing? What would you come

4  out of that hearing if you won?

5  MR. BODNAR: If I won, I would have findings from the

6  Court on a limited set of elements. But there would be a phase

7  2 expected before I could get a claim allowed. That's what

8  (indiscernible).

9  THE COURT: Okay. So there may not be a judgment.

10  There may be -- there may be -- there may be a ruling or

11  narrowing of the issue, like you would do in any case.

12  MR. BODNAR: Absolutely correct, Your Honor. Yes.

13  THE COURT: Okay. Okay. Okay. So it's not a

14  question of a case dispositive -- it's more in the nature of a

15  partial summary judgment, isn't it? In other words --

16  MR. BODNAR: That's a way to look at it, Your Honor.

17  Sure.

18  THE COURT: Well, I mean, it's a very --

19  MR. HAMILTON: Well, we could resolve it -- the

20  defense could resolve the whole case. They can't win on the

21  first -- that's why it's inefficient because the claimants

22  can't win on the first phase.

23  THE COURT: No, no. That's right. They can't win.

24  MR. BODNAR: They can't win on the first phase if it's

25  reliance either.

1      THE COURT:  That's right.  They can't.  But the point
2  is, to use a more traditional thing, if we had a trial --
3  again, my simple case involving no securities laws, just some
4  run-of-the-mill dispute between a plaintiff and a defendant, I
5  could have a trial on certain of the issues, and the result
6  wouldn't be a judgment.  It would be a partial, a partial
7  adjudication, I think, is the correct words under the Federal
8  Rules, of a fact.  And so the only thing that would then go
9  either to a jury, if it were a jury case, or for a further
10  evidentiary trial would be an adjudication of the issues that
11  require fact dispute, rather than legal dispute.  Okay.  I got
12  it.  I got it.
13      MR. CANTY:  Your Honor, if I make one point, and I
14  think --
15      THE COURT:  Yes.
16      MR. CANTY:  -- it distinguishes our group from Mr.
17  Bodnar's group.  With respect to burden, Mr. Bodnar's clients
18  have made a decision that they want to effectively opt out, so
19  that is that they've accepted that burden.  There are a number
20  of claimants that have either not opted out, so to speak, or
21  adopted the third amended complaint.  And the proposal that the
22  reorganized debtors have put forward would put a tremendous
23  burden on them.  And this is why the class treatment is the
24  appropriate way because they have essentially said, we want
25  PERA to lead the way.  We want the class issues to go forward

1    in the first instance.

2         It may come to a point where the defendants want to

3    challenge that, but essentially they wanted as little burden on

4    themselves as possible, and that's the most efficient way

5    forward.  They haven't opted out.  They haven't asked to go it

6    alone.  That's why we think class treatment's appropriate, at

7    least for now.

8         THE COURT:  Well, but in a sense -- in a sense,

9    they've been going it alone so far.  But I understand your

10   point.  And maybe the proof will be in the pudding.

11        If you persuade me or if we set a hearing on class

12   certification and I agree that there is to be one, then Mr.

13   Bodnar and his group can decide in or out at that point.  They

14   don't have to decide ahead of time if they're -- right?  It's

15   same with anybody else.  I mean, any of these people that have

16   signed on to the third amended complaint that weren't part of

17   the original group, the so-called individuals, they can make a

18   choice.

19        And like any other class, any other class action that

20   I'm aware of, you have an opportunity to be out of the class.

21   And you're right, if there is a class, then it seems to me

22   everybody has to have that choice.

23        MR. SLACK:  And Your Honor, with respect to --

24        THE COURT:  Right?  I think I just got --

25        MR. CANTY:  Mr. Hamilton made a comment.  He said, if

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 28
of 44

1  we go with the way RKS and PERA had suggested, they can't win

2  in the first phase.  Only we can win.  Only the reorganized

3  debtor can win and make the case dispositive.  And somehow that

4  is inefficient, which kind of belies common sense.  You would

5  think that PG&E would say, we want the approach that can

6  essentially have dispositive decisions in our favor up front,

7  and they're not.

8          MR. HAMILTON:  Well, can I address that?  Your Honor,

9  I think the issue, and you kind of hit it at the beginning, is

10 they're the claimants.  They brought claims.  We're asking for

11 them to produce discovery to support their claims on the

12 reliance issue, which they don't want to do.  They want all the

13 burden on discovery to be on PG&E, and that's what the phases

14 are really designed to do.  They're not designed to get a

15 resolution.  They're designed to put all the burden of

16 discovery on PG&E and none on them.

17         So I think that that's what's really important about

18 having them have the obligation to produce their trading

19 information and the reliance issues now.  And that's why the

20 phased approach that they're doing is really designed to put

21 the entire discovery burden on PG&E.

22         MR. SLACK:  Your Honor, if I could jump in and just

23 correct something that Mr. Canty had said.  Mr. Canty had said

24 that --

25         THE COURT:  Yes.

1          MR. SLACK:  -- there were a number of these -- there
2    are only twenty-seven unique claimants or claimant groups that
3    aren't with RKS.  And out of those twenty-seven claimant
4    groups, there's only a very small number, somewhere in about
5    the eight-to-ten range, that have said they want to adopt the
6    PERA complaint.  They haven't said they want -- they haven't
7    said they want PERA to represent them.  Some of them are
8    represented.

9          So Mr. Canty is completely conflating two things.
10   There are people who said they wanted to adopt PERA the
11   complaint.  In fact, there were thirty-some people who wanted
12   to say -- who wanted to adopt the PERA complaint.  We settled
13   with more than twenty of them.

14         And so there's obviously no -- there's no link between
15   adopting the PERA complaint and somebody saying they want PERA
16   to represent them.  PERA had the opportunity to go to people
17   and say, do you want us to represent you?  And they haven't
18   done that.  And those people haven't said that.

19         It may very well be that some of the people who've
20   said they want to adopt the PERA complaint want to join a
21   class, if there was one.  There may be people who don't want to
22   join a class.  But conflating the idea of adopting the PERA
23   complaint to wanting PERA to represent them is not accurate.

24         MR. CANTY:  I don't believe that's what I said, but I
25   think you understand my point.  They have not affirmatively

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 30
of 44

1   opted out.  That was my point, Your Honor.

2           THE COURT:  Well, again.  But my point is, there's

3   nothing to opt out of yet.

4           MR. CANTY:  Right.  Well, we --

5           THE COURT:  Okay.

6           MR. CANTY:  -- know that the RKS group has made it

7   clear what (indiscernible) --

8           THE COURT:  No, I know.  But what I'm saying is RKS is

9   not precluded from joining a class, if there is one, right?

10           MR. BODNAR:  Correct.

11           THE COURT:  Isn't that right, Mr. Canty?

12           MR. CANTY:  Yes.

13           THE COURT:  I mean, if I do certify a class, any

14   individual member of RKS' group can join the class.  But again,

15   we're jumping ahead.  We're not there yet.  And I said at the

16   outset, I have my doubts, but that doesn't mean I won't

17   consider it when it's properly presented.  And it's not being

18   presented.

19           Well, gentlemen, I mean, I appreciate your different

20   points of view.  I just have to make a decision, and I'll take

21   into account everything we've just talked about and do my best

22   to come up with something fair.  I would still like to make

23   this happen more quickly, but I understand the issues.  And

24   it's interesting that both of your statements end up with an

25   evidentiary hearing at just under two years from now.  Like, oh

1  my God.  But I guess I can't change that, so I won't attempt

2  to.

3          And so unless any of you want to make any further

4  argument, I'm just going to take it under advisement and either

5  have a hearing as soon as I can to explain something to you or

6  if I have any questions, otherwise, just to issue a brief,

7  maybe, what would be something, either one of your schedules or

8  the other one or something in between.  But I realize we're not

9  going to -- we can't take months to decide the shape of the

10 table for the bargaining.

11         I will ask one further question that was unanswered in

12 the filings, and that is whether -- I think Mr. Bodnar or your

13 side said that you don't think coordinating any mediation with

14 the district court would be useful.  But what about having our

15 own attempt through a third-party mediator if the parties would

16 like to pick one and pay one?  And do you think it's worth an

17 effort, or is it a lost cause at this point?

18         MR. BODNAR:  Your Honor, I actually am very happy you

19 asked me that question.  We certainly don't think it's a lost

20 cause.  And I do want to give credit to procedures.  Our case

21 came into this case representing something in excess of 800 or

22 900 claims across 170-plus claimant groups.  Through efforts,

23 and I will give Latham & Watkins a lot of credit here --

24 through efforts, we've brought that down to fifty-nine through

25 consensual resolution.

1          THE COURT:  Right.

2          MR. BODNAR:  And we continue to talk.  I mean, myself

3    and my counterpart at Latham, we speak, I think, weekly at this

4    point.  And so we're still working to resolve additional

5    claims.  But at the end of the day, there simply are RKS

6    claimants who have every expectation of going to an evidentiary

7    hearing.  For them, I don't know that a mediation's going to

8    change anything.

9          But as Mr. Slack knows, our line is always open.

10   We've conducted a couple mediations.  They have not been

11   successful, but they've been for specific claimants.  I think

12   we've learned some things in those mediations.  We're always

13   open to it.  Our position, Your Honor, was simply that there's

14   no reason to coordinate that with whatever is going on with

15   PERA and the district court.

16         THE COURT:  One second, please.  One second.  Wait.

17   Hold on one second, please.

18     (Pause.)

19         THE COURT:  Okay.  I'm sorry.  Had to take care of a

20   domestic matter.  All right.  Say again, the last thing.

21         MR. BODNAR:  You know how priorities work.  All I was

22   saying, Your Honor, is we just don't think that there's any

23   need to coordinate mediations on our side or settlement

24   negotiations on our side with whatever is going on with the

25   class.  We're just, we're (indiscernible) --

1          THE COURT:  Okay.  All right.  Listen, I won't -- I
2    know that -- I know that the number on your side, and I think
3    the PERA number too, but certainly on the RKS side, has dropped
4    dramatically.  And it probably wasn't just by accident.  So
5    I'll assume that that communication is going to keep on going.
6          And Mr. Canty, the same is true for you.  I don't need
7    to push it anymore.  I won't try to sell any third-party
8    mediation to either side at this point.
9          So I will take my word and keep my word and review
10   everything you talked to me about and the statements and come
11   up with something.  I'm just not sure.  I want to just let it
12   all sink in.  So anything further?  Anyone want to add a
13   closing thought?
14         MR. ETKIN:  Just one thing, Your Honor.  All right.
15   In keeping with what you just said --
16         THE COURT:  Yes.  Yes, say again, Mr. Etkin.  Wait.  I
17   can't --
18         MR. ETKIN:  Yeah.  I'm sorry.  I'm sorry.  Just one
19   thing, Your Honor.
20         In keeping with what you just, and given these issues
21   and the complexities associated with them, if the Court has any
22   further questions or we want to send you further submission as
23   you're going through, we and I'm sure my colleagues on the call
24   stand ready to provide whatever you need as you're considering
25   what to do in terms of the handling in this case going forward.

1        THE COURT:  Okay.  Well, I knew you would do that.

2    All right.  Well, I will talk to you or be in touch with you

3    soon.  I won't make any predictions about World Series or

4    national elections, but I'll try to get going on this issue and

5    very promptly.  Thank you for your time and your participation.

6        IN UNISON:  Thank you, Your Honor.

7        THE COURT:  And I'm going to conclude the matter now.

8    Thank you.

9        (Whereupon these proceedings were concluded at 10:43 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3  I, River Wolfe, certify that the foregoing transcript is a true

4  and accurate record of the proceedings.

5

6

7

8      [signature]

9  _____

10 /s/ RIVER WOLFE, CDLT-265

11

12 eScribers

13 7227 N. 16th Street, Suite #207

14 Phoenix, AZ 85020

15

16 Date:  October 31, 2024

17

18

19

20

21

22

23

24

25

## A

**able (2)**
7:24;9:23
**absolutely (2)**
14:16;26:12
**accelerated (1)**
6:4
**accepted (1)**
27:19
**accident (1)**
34:4
**account (1)**
31:21
**accurate (1)**
30:23
**across (2)**
25:4;32:22
**action (11)**
4:16,20,22,23,24;
10:21,21;15:13;
20:20;21:23;28:19
**actions (1)**
10:12
**actually (5)**
4:6;8:9;22:24;24:6;
32:18
**add (1)**
34:12
**additional (2)**
17:25;33:4
**address (2)**
6:20;29:8
**adjudication (2)**
27:7,10
**adopt (4)**
30:5,10,12,20
**adopted (1)**
27:21
**adopting (2)**
30:15,22
**advisement (1)**
32:4
**advisor (1)**
9:1
**affirmative (1)**
7:8
**affirmatively (1)**
30:25
**again (10)**
6:24;7:24;12:24;
15:21;17:25;27:3;
31:2,14;33:20;34:16
**against (1)**
4:20
**ago (4)**
5:22,23;20:14,15
**agree (5)**
6:16,22;9:13;15:11;
28:12
**agreed (1)**
15:10

**ahead (3)**
11:4;28:14;31:15
**alighted (1)**
13:21
**all-or-nothing (2)**
16:25;18:1
**allow (2)**
19:8;21:10
**allowed (1)**
26:7
**allowing (1)**
21:4
**alone (3)**
13:23;28:6,9
**always (2)**
33:9,12
**amended (4)**
4:15,25;27:21;
28:16
**amendment (1)**
5:6
**amount (1)**
21:9
**amounts (1)**
25:1
**anymore (1)**
34:7
**appeal (1)**
5:9
**appearance (1)**
3:9
**Appearances (1)**
3:25
**applicable (1)**
10:25
**applies (1)**
17:16
**apply (3)**
11:13;16:6;17:1
**applying (1)**
13:1
**appreciate (2)**
18:5;31:19
**approach (10)**
10:10;11:12,19;
13:7;14:13,13;19:5;
20:4;29:5,20
**appropriate (2)**
27:24;28:6
**argue (1)**
20:17
**argument (6)**
3:21;6:8;13:15;
19:24;23:1;32:4
**aside (3)**
15:1;17:6,14
**aspect (1)**
14:12
**associated (1)**
34:21
**assume (3)**
10:20,24;34:5
**assuming (1)**

17:7
**attack (1)**
12:5
**attempt (2)**
32:1,15
**available (1)**
3:23
**availed (1)**
21:6
**avoid (1)**
9:11
**aware (1)**
28:20

## B

**back (7)**
5:22;7:1,2;15:8;
20:14;21:4,6
**bankruptcy (4)**
15:15;21:7,8,23
**Banks (2)**
4:7,8
**bargaining (1)**
32:10
**baseball (1)**
13:17
**based (1)**
11:11
**basic (2)**
10:13;17:16
**basically (4)**
18:12,13;22:17;
24:22
**basis (2)**
6:4;12:13
**batter (1)**
13:14
**bed (1)**
6:12
**beginning (1)**
29:9
**behalf (4)**
3:11,14,17;4:4
**beings (1)**
11:23
**belies (1)**
29:4
**bell (1)**
4:14
**beneficial (1)**
14:9
**benefit (2)**
21:18,20
**best (2)**
19:23;31:21
**better (2)**
14:13;25:17
**beyond (1)**
8:3
**bifurcate (2)**
9:21;18:19
**bifurcation (2)**

24:2,4
**big (2)**
25:20,20
**blatant (1)**
24:1
**Bodnar (42)**
3:12,13,13;4:17,17;
5:10,17;10:6;11:20;
13:18,20;14:2,7,12;
15:24;16:2,5,9;18:10;
19:17;22:2,10,13,17,
22;23:10,13,16,19,24;
25:13,23;26:5,12,16,
24;28:13;31:10;
32:12,18;33:2,21
**Bodnar's (5)**
17:24;18:2;22:6;
27:17,17
**body (1)**
22:5
**both (6)**
5:11;6:4;19:12;
20:6;24:24;31:24
**brief (1)**
32:6
**briefing (1)**
5:25
**briefly (1)**
4:18
**bring (3)**
14:4,5,7
**brought (1)**
29:10;32:24
**bullet (3)**
6:9,15;23:13
**burden (19)**
7:5;11:1,24;16:2,8;
18:20;21:1,6,9,17;
25:8,13;27:17,19,23;
28:3;29:13,15,21
**burdens (2)**
7:8;12:25
**burner (1)**
7:2
**burning (1)**
23:9
**button (1)**
24:21
**buy (1)**
23:9

## C

**CALIFORNIA (1)**
3:1
**Call (6)**
3:4;11:6;15:18;
18:8;26:3;34:23
**called (2)**
11:24;13:14
**Calling (1)**
3:6
**came (1)**

32:21
**campfires (1)**
23:8
**can (32)**
3:22;5:15;6:2,11,
13,20;7:2;11:7;15:3,
22,22;16:19;17:8;
18:3;19:5;20:2,22;
22:19;23:4;24:20;
25:1,2,3,6;28:13,17;
29:2,3,5,8;31:14;32:5
**Canty (35)**
3:15,16,16;10:7,8,
11,18,22;11:3,5,21,
22;12:2,16,19;13:6;
17:21;19:17;20:7,22,
25;22:6;25:8;27:13,
16;28:25;29:23,23;
30:9,24;31:4,6,11,12;
34:6
**care (5)**
23:8;24:8;33:19
**carry (5)**
7:4;11:24;15:23;
16:2,8
**carrying (2)**
12:25;15:18
**case (17)**
5:17;7:1;9:4;15:19,
20;16:24;20:13,13;
26:11,14,20;27:3,9;
29:3;32:20,21;34:25
**cases (1)**
13:10
**caught (1)**
19:17
**causation (6)**
14:18;16:5,23;17:2;
18:24;25:18
**cause (2)**
32:17,20
**caused (1)**
16:14
**certain (5)**
11:14,14;16:11,24;
27:5
**certainly (10)**
11:15;12:20;13:6;
16:22;18:18,25;23:1;
24:9;32:19;34:3
**certification (5)**
12:3,20;20:10;
21:24;28:12
**certify (2)**
20:18;31:13
**challenge (4)**
12:13;18:6;19:2;
28:3
**challenges (1)**
24:12
**change (2)**
32:1;33:8
**choice (2)**

Case: 19-30088     Doc# 14637     Filed: 10/31/24     Entered: 10/31/24 13:05:50     Page 37
of 44

28:18,22
**circumstances (1)**
19:7
**claim (4)**
7:11;9:18;18:15;
26:7
**claimant (14)**
7:4,4,18,20;8:3,10;
16:18;23:3;24:12,15;
25:16;30:2,3;32:22
**claimants (25)**
3:14;4:19;5:17;
7:18;9:1;16:18,24;
17:1;18:12;20:10;
21:1,9,13,18;24:24;
25:5,8,14,14;26:21;
27:20;29:10;30:2;
33:6,11
**claims (12)**
6:19,21;7:12;10:23;
12:1;17:23;19:10;
24:8;29:10,11;32:22;
33:5
**Class (35)**
4:23,24;10:12,20,
21;12:3,20,22;15:13,
21;17:14,23;20:8,10,
18;21:4,10,20,23;
22:3,11;27:23,25;
28:6,11,19,20,21;
30:21,22;31:9,13,14;
33:25
**class-wide (1)**
11:6
**clear (4)**
18:3;19:14;24:13;
31:7
**CLERK (1)**
3:5
**click (1)**
24:21
**client (2)**
20:8;23:14
**clients (10)**
13:23,24;14:7,23,
24;17:9;23:7,11;24:7;
27:17
**closing (1)**
34:13
**colleagues (1)**
34:23
**coming (2)**
20:1;21:7
**comment (1)**
28:25
**commit (1)**
9:7
**common (1)**
29:4
**communication (1)**
34:5
**community (1)**
15:15

**company (2)**
12:21;13:3
**complaint (10)**
4:15,25;27:21;
28:16;30:6,11,12,15,
20,23
**completely (1)**
30:9
**complexities (1)**
34:21
**concept (1)**
9:11
**concerned (1)**
15:16
**conclude (1)**
35:7
**concluded (1)**
35:9
**conduct (1)**
24:11
**conducted (1)**
33:10
**conference (1)**
18:8
**conflating (2)**
30:9,22
**confused (1)**
8:5
**consensual (1)**
32:25
**consensually (1)**
4:22
**consider (2)**
20:12;31:17
**considering (1)**
34:24
**continue (1)**
33:2
**continuing (1)**
15:16
**coordinate (2)**
33:14,23
**coordinating (1)**
32:13
**Corporation (1)**
3:7
**corrected (1)**
22:23
**count (4)**
8:4,23;20:11;22:5
**counterpart (1)**
33:3
**countless (3)**
9:15,16,16
**couple (4)**
4:11;18:11;19:25;
33:10
**course (1)**
5:9
**Court (93)**
3:4,5,8,12,15,18,24;
4:5,8,21,23,24,24;5:4,
19;6:24;7:14,17,20;

8:2,12,15,19,22;9:3,
11,14,25;10:6,8,16,
19,23;11:4,8,18,23;
12:14,19;13:9;14:1,6,
11;15:5;16:1,4,7;
17:20;18:3,5;19:11,
16;20:24;21:7,8,22,
23;22:15,18,21;23:6,
12,15,17,22;25:12,23;
26:2,6,9,13,18,23;
27:1,15;28:8,24;
29:25;31:2,5,8,11,13;
32:14;33:1,15,16,19;
34:1,16,21;35:1,7
**create (1)**
22:19
**credit (2)**
32:20,23
**creditors (1)**
24:7
**critical (1)**
7:3
**curious (2)**
5:10,14
**current (1)**
8:4
**cycle (2)**
5:15;15:9

**D**

**damages (1)**
7:3
**Davila (2)**
4:16,22
**day (6)**
9:17;12:25;13:17;
18:16;22:3;33:5
**days (3)**
10:2;12:1;19:25
**deal (2)**
11:12;15:4
**debtor (2)**
15:18;29:3
**debtors (2)**
12:12;27:22
**deceived (1)**
7:20
**December (2)**
12:4;16:16
**decide (4)**
23:4;28:13,14;32:9
**decision (8)**
15:11;16:23;17:8;
18:7;20:21;21:8;
27:18;31:20
**decisions (1)**
29:6
**decree (1)**
10:24
**defeat (1)**
6:13
**defendant (2)**

21:6;27:4
**defendants (5)**
4:21;10:14;12:6,12;
28:2
**defense (5)**
7:3,22;9:22;10:25;
26:20
**defensive (1)**
7:9
**definition (1)**
15:7
**Dennis (1)**
3:6
**deponents (1)**
14:4
**depos (1)**
10:5
**depose (1)**
17:25
**deposed (1)**
25:2
**deposition (1)**
7:23
**depositions (8)**
8:7;9:7;10:3;11:10;
18:23;19:7;24:11;
25:3
**designed (4)**
29:14,14,15,20
**destined (1)**
13:10
**develop (1)**
7:2
**different (7)**
9:15;11:19,20;
20:16;22:1,12;31:19
**direct (1)**
4:20
**director (1)**
4:21
**discovery (18)**
6:17,18;11:11,14;
16:10;18:19,21,25;
19:8;20:5,6;24:2,11,
16;29:11,13,16,21
**discussing (1)**
11:9
**dispositive (4)**
17:3;26:14;29:3,6
**dispute (4)**
18:16;27:4,11,11
**distinguishes (1)**
27:16
**distractions (1)**
20:1
**district (5)**
4:21,23,24;32:14;
33:15
**documents (11)**
7:11,23;10:1,2;
18:20,22;19:6,9;
21:13;24:18,20
**Dodgers (1)**

4:10
**dollars (1)**
7:21
**domestic (1)**
33:20
**done (10)**
5:9;6:13,17,21;
14:17,18,19,23;20:2;
30:18
**doubts (1)**
31:16
**down (1)**
32:24
**dramatically (1)**
34:4
**dreamed (2)**
5:25;15:6
**dropped (1)**
34:3
**Dubbs (1)**
3:21
**due (1)**
16:21

**E**

**easy (1)**
23:22
**effectively (4)**
16:17,19;24:7;
27:18
**efficiency (6)**
10:13;17:13;21:5,
17;24:5,6
**efficient (10)**
6:22;11:8,15;13:8,
10;14:13;15:3;22:19;
24:24;28:4
**efficiently (3)**
9:9;16:8;18:4
**effort (1)**
32:17
**efforts (2)**
32:22,24
**eight-to-ten (1)**
30:5
**eighty-six (1)**
8:9
**either (9)**
5:11;8:13;20:21;
26:25;27:9,20;32:4,7;
34:8
**elections (1)**
35:4
**element (6)**
6:19;18:17;19:1,3,
10;25:15
**elements (7)**
9:19;14:21;15:19;
17:1;25:20,20;26:6
**eliminate (2)**
6:20;17:8
**eliminated (1)**

25:17
**eliminates (1)**
16:24
**else (3)**
8:7;14:15;28:15
**end (5)**
9:16;12:25;18:16;
31:24;33:5
**enjoy (1)**
24:14
**enough (1)**
12:21
**entire (1)**
29:21
**entirely (2)**
14:22;24:23
**entities (1)**
22:12
**envision (1)**
12:24
**Ernie (2)**
4:7,8
**especially (1)**
10:12
**essential (6)**
6:19;18:15,17,25;
19:3,10
**essentially (5)**
11:6;21:6;27:24;
28:3;29:6
**Etkin (11)**
3:20,24;4:3,3;5:11;
20:8,15,15;34:14,16,
18
**even (5)**
4:10;14:3;15:9;
21:22;24:24
**everybody (1)**
28:22
**everyone (2)**
11:13;15:3
**evidentiary (9)**
16:10,15;17:11;
25:4,21,23;27:10;
31:25;33:6
**exact (2)**
17:4;23:11
**except (1)**
7:2
**excess (1)**
32:21
**excuse (1)**
12:12
**expectation (1)**
33:6
**expected (1)**
26:7
**expeditious (1)**
11:16
**expense (1)**
9:15
**expert (2)**
10:13;21:5

**explain (1)**
32:5
**explained (1)**
18:10
**explanation (1)**
18:5
**explore (1)**
11:19
**extent (1)**
7:2

**F**

**face (1)**
10:11
**facie (1)**
15:19
**fact (8)**
7:7;9:17;13:1;
23:24;24:21;27:8,11;
30:11
**factual (1)**
23:7
**fail (1)**
15:18
**fair (1)**
31:22
**false (1)**
16:11
**falsity (7)**
14:16,22;16:2,23;
17:1;18:24;25:18
**far (2)**
15:2;28:9
**faster (1)**
19:6
**fathom (1)**
25:19
**favor (1)**
29:6
**Federal (1)**
27:7
**feel (1)**
20:8
**field (1)**
18:3
**fifteen (1)**
25:3
**fifty (1)**
11:25
**fifty- (1)**
16:17
**fifty-eight (1)**
23:16
**fifty-nine (19)**
8:10;13:23;14:2,3,
5,22,25;16:18;17:3,8,
10,12;22:12;24:13;
25:16,22,22,22;32:24
**file (1)**
12:3
**filed (5)**
4:20;19:12,19,20,

20
**filing (2)**
4:13;21:2
**filings (1)**
32:12
**find (1)**
17:7
**finder (2)**
9:17;13:1
**finding (2)**
17:5;22:18
**findings (1)**
26:5
**fires (1)**
23:8
**first (15)**
5:23;9:22;10:20;
11:13,21;13:13;15:3;
20:15;24:3;25:14;
26:21,22,24;28:1;
29:2
**five-and-a-half (1)**
20:15
**five-million (1)**
24:20
**flies (1)**
10:11
**focus (2)**
7:8;9:14
**focusing (1)**
17:2
**folks (1)**
22:5
**follow (1)**
5:24
**formal (1)**
21:19
**forth (2)**
10:13;16:10
**forward (9)**
11:16;13:8;16:9;
18:4;21:11;27:22,25;
28:5;34:25
**four (2)**
25:20,20
**framed (1)**
19:12
**FRANCISCO (1)**
3:1
**frank (2)**
14:20;15:25
**frankly (1)**
25:5
**free (1)**
5:11
**friends (1)**
3:18
**front (1)**
11:17;29:6
**fund (1)**
4:19
**further (7)**
19:24;27:9;32:3,11;

34:12,22,22

**G**

**gains (2)**
24:5,6
**general (1)**
10:11
**gentlemen (1)**
31:19
**gets (2)**
13:4,10
**given (1)**
34:20
**gives (1)**
21:13
**God (1)**
32:1
**goes (2)**
14:22;19:9
**Good (5)**
3:10,13,16;4:3,10
**Gotshal (1)**
4:1
**great (1)**
22:24
**group (11)**
8:11;13:3;22:2,11,
12;27:16,17;28:13,
17;31:6,14
**groups (7)**
8:10,13;11:14;
16:18;30:2,4;32:22
**guess (4)**
6:2,3,7;32:1
**gun (1)**
12:19

**H**

**half (1)**
15:1
**Hamilton (32)**
3:8,10,11,19,20;6:7,
16;7:10,16,19;8:1,8,
14,16,19,21;9:2,5,13,
21,24;10:1;11:1;
13:21;18:6,11;19:14;
24:3,17;26:19;28:25;
29:8
**hand (1)**
14:23
**handling (2)**
3:21;34:25
**happen (3)**
12:17;19:4;31:23
**happy (1)**
32:18
**head (1)**
8:9
**hear (1)**
3:22
**heard (1)**

23:8
**hearing (11)**
16:10,16;25:4,21,
23;26:3,4;28:11;
31:25;32:5;33:7
**hearings (1)**
9:16
**hell (1)**
23:7
**here's (1)**
7:21
**highlights (1)**
21:20
**himself (1)**
3:22
**history (1)**
21:3
**hit (2)**
8:8;29:9
**Hmm (1)**
9:25
**hold (2)**
7:8;33:17
**home (3)**
13:14,14,16
**Honor (55)**
3:10,13,16;4:3,17;
5:3,17;6:16;10:7;
11:3;12:16;13:21;
14:12,16,24;15:2,24;
16:9,17,23;17:5,7,13,
21;18:2,11;20:22;
22:13,17,24;23:4,10,
20,25;24:4,14,18,23;
25:5,15,19,25;26:12,
16;27:13;28:23;29:8,
22;31:1;32:18;33:13,
22;34:14,19;35:6
**Honorable (1)**
3:5
**huge (2)**
21:18;24:25
**human (1)**
11:23
**hundred (2)**
7:18;14:10
**hundred-plus (2)**
17:11,12
**hundreds (4)**
11:10,25;17:24;
24:10
**hypothetical (3)**
8:3;13:19;19:13

**I**

**idea (2)**
6:25;30:22
**important (3)**
13:22;25:4;29:17
**impounded (1)**
22:20
**inclined (2)**

19:24;20:3
**Indiscernible (8)**
10:18;22:14;23:16,
18,23;26:8;31:7;
33:25
**individual (9)**
8:12;12:13;21:9,12,
17;22:12;23:2;25:10;
31:14
**individualized (4)**
11:10;13:24;15:4;
16:20
**individuals (3)**
11:14;12:7;28:17
**inefficient (2)**
26:21;29:4
**information (7)**
9:6;10:5;11:11;
19:9;22:22;25:1;
29:19
**initial (1)**
18:23
**inquiry (1)**
13:25
**instance (2)**
23:20;28:1
**instead (4)**
7:18;18:21;25:7,21
**intend (3)**
5:18;14:14,15
**interested (1)**
20:11
**interesting (1)**
31:24
**interlocutory (1)**
5:13
**interminably (1)**
15:15
**intervene (1)**
5:12
**into (5)**
16:19;21:7,8;31:21;
32:21
**inverse (1)**
18:3
**investment (5)**
8:17,25;9:6;23:25;
25:9
**investments (1)**
14:10
**investor (1)**
25:10
**involving (1)**
27:3
**issue (15)**
6:10,10;7:15;16:9;
20:9;21:12;22:6;23:4;
24:25;25:2;26:11;
29:9,12;32:6;35:4
**issuer (1)**
24:15
**issues (16)**
11:7,10,12;15:3,4;

16:5,20,25;17:14;
25:4;27:5,10,25;
29:19;31:23;34:20

**J**

**jersey (1)**
4:7
**join (3)**
30:20,22;31:14
**joining (2)**
3:20;31:9
**Joshua (1)**
3:10
**Judge (2)**
4:16,22
**judgment (11)**
6:12;7:12,24;13:22;
14:3;24:13;25:24;
26:1,9,15;27:6
**jump (1)**
29:22
**jumping (2)**
12:19;31:15
**jury (2)**
27:9,9
**justify (1)**
12:21

**K**

**keep (3)**
12:19;34:5,9
**keeping (2)**
34:15,20
**Keller (1)**
3:17
**kind (5)**
5:21;18:3;24:8;
29:4,9
**knew (1)**
35:1
**knows (1)**
33:9

**L**

**Labaton (1)**
3:17
**larger (1)**
22:6
**last (3)**
5:5;15:8;33:20
**late (1)**
19:19
**later (2)**
18:16;21:13
**Latham (2)**
32:23;33:3
**laws (1)**
27:3
**lead (1)**
27:25

**learned (1)**
33:12
**least (7)**
14:5;15:12;17:12,
22;21:25;22:7;28:7
**leave (1)**
17:6
**led (1)**
5:24
**legal (2)**
23:4;27:11
**less (1)**
24:8
**Levinson (1)**
22:17
**likely (1)**
5:15
**limited (1)**
26:6
**line (1)**
33:9
**link (1)**
30:14
**listen (1)**
19:21;34:1
**litigation (3)**
4:14;23:2;25:7
**litigations (1)**
24:20
**little (2)**
8:4;28:3
**live (2)**
5:14;15:13
**loan (1)**
21:25
**long (6)**
15:7,9,10,15;24:12,
14
**look (6)**
5:21;6:1;9:14;
21:22;24:17;26:16
**looking (2)**
4:12;5:5
**looks (1)**
8:5
**lose (8)**
13:9,11,15;15:22;
18:13,14,14,23
**loses (1)**
7:5
**loss (7)**
14:18;16:5,14,23;
17:2;18:24;25:18
**lost (4)**
7:21;24:9;32:17,19
**lot (7)**
6:21;8:16,16;20:18;
23:25;24:8;32:23

**M**

**makes (2)**
17:15;20:9

**making (3)**
10:9;13:12;19:14
**manager (2)**
8:17;9:6
**managers (3)**
14:10;23:25;25:10
**Manges (1)**
4:1
**many (5)**
8:24;11:23;12:1;
14:4,4
**market (3)**
10:13;21:5;22:18
**math (1)**
22:4
**matter (7)**
3:6;9:18;13:15;
19:19;23:7;33:20;
35:7
**may (11)**
7:4;11:13;22:8;
23:13;26:9,10,10,10;
28:2;30:19,21
**maybe (12)**
4:13;5:22;8:6;9:1;
15:13,17,18;20:1,2;
25:3;28:10;32:7
**mean (25)**
5:1;6:2,3;7:15;8:7,
7,8;9:7,24;11:5,8,25;
13:6,11;17:22;18:6;
19:18;20:25;23:9;
26:18;28:15;31:13,
16,19;33:2
**mediation (3)**
21:15;32:13;34:8
**mediations (3)**
33:10,12,23
**mediation's (1)**
33:7
**mediator (1)**
32:15
**member (1)**
31:14
**members (1)**
8:13
**memory (2)**
5:7,22
**merits (2)**
4:12;6:1
**met (1)**
20:15
**metaphor (1)**
13:17
**Michael (2)**
3:16;4:3
**might (9)**
7:9,22,23,24;11:20;
13:9;14:10;18:23;
22:1
**millions (2)**
18:22;24:11,18
**mind (2)**

10:9;13:12
**mini (1)**
14:3
**misinformation (1)**
22:20
**missing (2)**
12:14;13:5
**misstate (1)**
15:22
**moment (2)**
7:17;17:7
**Montali (1)**
3:6
**months (4)**
10:4,4;19:6;32:9
**more (13)**
6:4;11:7;14:8;15:2;
20:3,4,14;23:9;24:24;
26:14;27:2;30:13;
31:23
**Morning (7)**
3:8,8,10,13,16;4:3;
19:18
**most (7)**
6:22;7:3;11:15,16;
13:7;25:4;28:4
**motion (7)**
5:12,18;6:12;13:22;
20:13,20;21:19
**motions (3)**
14:2;24:13;25:22
**move (6)**
7:12;9:8,9;12:2;
18:3;21:11
**much (4)**
11:7;21:13,23;22:1
**multi-manager (1)**
14:8
**multiple (2)**
12:1;14:10
**must (1)**
15:8
**myself (1)**
33:2

**N**

**name (4)**
4:14,15,19;5:1
**narrow (4)**
6:20;13:19,20;
16:24
**narrowing (1)**
26:11
**national (2)**
21:24;35:4
**nature (1)**
26:14
**need (16)**
5:19;8:6;9:3,5;
11:13;13:12,13;
16:11,12,13;17:25;
18:8;20:17;33:23;

34:6,24
**negligence-based (1)**
16:13
**negotiations (1)**
33:24
**next (2)**
10:2;20:1
**nine (2)**
10:3;16:18
**nobody (1)**
4:9
**none (2)**
25:17;29:16
**note (1)**
24:4
**number (11)**
8:25;17:21;18:13;
20:25;22:5,6;27:19;
30:1,4;34:2,3
**numbers (1)**
8:6

**O**

**objection (1)**
10:24
**objections (3)**
5:7,24;15:10
**obligation (3)**
6:18;18:21;29:18
**observation (1)**
15:6
**obviate (1)**
11:13
**Obviously (3)**
13:11;14:14;30:14
**OCTOBER (1)**
3:1
**offered (1)**
24:22
**officer (1)**
4:21
**omnibus (2)**
5:24;15:9
**once (1)**
21:25
**one (48)**
4:14,19;6:5;7:18,
20;8:3;12:9;13:21,22,
24;14:8,16,17,18,21,
24,24;15:19;17:5,9,
15,15,18;20:22;21:24,
24;23:7,10,14;24:12,
15;25:7,21,21;27:13;
28:12;30:21;31:9;
32:7,8,11,16,16;
33:16,16,17;34:14,18
**ones (1)**
22:1
**one-sided (1)**
24:5
**only (6)**
19:17;27:8;29:2,2;

30:2,4
**onto (1)**
25:8
**onus (1)**
18:22
**oOo- (1)**
3:3
**open (2)**
33:9,13
**opportunity (2)**
28:20;30:16
**oppose (2)**
5:18;25:25
**opposed (1)**
24:3
**opposite (2)**
15:24;17:4
**opt (2)**
27:18;31:3
**opted (3)**
27:20;28:5;31:1
**Orbis (3)**
4:14,20;5:1
**order (2)**
3:4;5:13
**original (1)**
28:17
**others (1)**
20:8
**otherwise (1)**
32:6
**out (17)**
6:1;7:7;9:18;13:4,
14,16;15:3;25:6;26:4;
27:18,20;28:5,13,20;
30:3;31:1,3
**outset (3)**
15:6,7;31:16
**outside (1)**
17:5
**over (4)**
4:12;5:5,22;20:14
**overcome (1)**
11:2
**overcoming (1)**
11:1
**oversimplify (1)**
8:2
**own (3)**
24:8,19;32:15
**owner (1)**
14:9

**P**

**pages (2)**
18:22;24:11,18
**papers (1)**
4:12
**part (2)**
13:3;28:16
**partial (3)**
26:15;27:6,6

**participating (1)**
20:12
**participation (1)**
35:5
**particular (1)**
7:4
**particularly (1)**
20:10
**parties (1)**
32:15
**passed (1)**
13:21
**past (1)**
19:2
**path (1)**
13:8
**pattern (2)**
21:1;23:24
**Pause (1)**
33:18
**pay (1)**
32:16
**pending (2)**
4:22;21:19
**people (11)**
11:23;12:1;14:4;
25:2;28:15;30:10,11,
16,18,19,21
**PERA (21)**
3:17;4:4,13;5:3;
8:11;12:10;13:2;
27:25;29:1;30:6,7,10,
12,15,15,16,20,22,23;
33:15;34:3
**perhaps (1)**
19:22
**period (1)**
19:25
**person (2)**
14:8;25:11
**person's (1)**
7:23
**perspective (2)**
12:9;15:2
**persuade (1)**
28:11
**PG&E (23)**
3:6,11;4:2;5:7;7:2;
14:13;15:23;17:6,17;
18:22;22:13,25;24:6,
7,10,17;25:3,5,19;
29:5,13,16,21
**PG&E's (3)**
4:20;5:18;17:16
**phase (8)**
6:5;9:8;12:17;23:4;
26:6,22,24;29:2
**phased (3)**
11:12;19:8;29:20
**phases (5)**
6:5,14,17;9:12;
29:13
**phasing (2)**

14:12;16:22
**phone (1)**
18:8
**phonetic (1)**
10:23
**pick (1)**
32:16
**place (1)**
12:23
**plaintiff (2)**
15:18;27:4
**play (1)**
7:7
**please (2)**
33:16,17
**point (24)**
12:5,14,22;13:22;
15:17,23;17:24;18:2;
20:20,22;21:16;22:8,
24;27:1,13;28:2,10,
13;30:25;31:1,2;
32:17;33:4;34:8
**points (1)**
31:20
**portion (1)**
9:4
**position (3)**
16:21;21:20;33:13
**possibility (1)**
17:3
**possible (3)**
9:8,10;28:4
**possibly (2)**
6:6;10:4
**poster (3)**
4:5,6,9
**potential (1)**
9:22
**potentially (2)**
6:20;17:12
**practice (1)**
10:12
**pre- (1)**
8:22
**Precisely (1)**
23:10
**precluded (1)**
31:9
**predictions (1)**
35:3
**preliminary (1)**
4:11
**prepare (3)**
9:3,25;20:4
**present (1)**
3:21
**presented (2)**
31:17,18
**presiding (2)**
3:6;20:14
**presume (1)**
8:24
**presumption (17)**

10:14,15,25;11:1;
12:4,5,8,11;17:16;
21:5,11,22;22:9,10,19;
23:3,17,20
**presumptions (1)**
13:1
**pretend (2)**
7:17;12:22
**pre-trials (1)**
9:16
**pretty (2)**
13:10;23:22
**price (1)**
22:20
**prima (1)**
15:19
**prior (1)**
24:20
**priorities (1)**
33:21
**probably (2)**
25:2;34:4
**procedure (1)**
5:7
**procedures (1)**
32:20
**proceed (1)**
6:23
**proceedings (2)**
4:23;35:9
**process (3)**
5:15;15:12;21:16
**produce (10)**
7:10;10:1;18:20,22;
19:6,8;24:20;25:1;
29:11,18
**produced (2)**
24:19,25
**production (1)**
21:12
**profile (1)**
20:16
**promptly (1)**
35:5
**proof (2)**
7:21;28:10
**properly (1)**
31:17
**proposal (1)**
27:21
**proposition (2)**
16:25;18:1
**prospect (1)**
25:6
**prove (6)**
16:11,12,13;18:15;
25:15,18
**provide (2)**
6:18;34:24
**PSALP (1)**
10:23
**pudding (1)**
28:10

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 41
of 44

**pure (1)**
22:4
**push (1)**
34:7
**put (15)**
6:8,11;7:1,7;10:12;
11:17;14:25;18:21;
21:8,14,17;27:22,22;
29:15,20
**putative (1)**
24:7
**putting (3)**
16:10;21:1,6

## Q

**quick (1)**
15:14
**quickly (2)**
9:8;31:23
**Quite (2)**
15:24;24:1

## R

**raised (3)**
12:21;22:25;24:3
**range (1)**
30:5
**rather (1)**
27:11
**reading (1)**
24:14
**ready (1)**
34:24
**realize (3)**
8:2;19:18;32:8
**realized (1)**
15:9
**really (5)**
20:9;24:18;29:14,
17,20
**reason (4)**
18:19,25;19:21;
33:14
**reasonable (2)**
7:6;9:23
**reasonably (2)**
13:2;17:15
**rebut (4)**
10:15;12:8;23:19,
22
**rebuttable (5)**
12:5,11;21:5,11;
22:19
**rebutting (1)**
17:18
**recognized (1)**
18:2
**record (1)**
25:21
**records (1)**
25:22

**recovery (1)**
13:4
**reference (1)**
4:13
**referring (1)**
4:25
**reflect (2)**
19:22;20:19
**refreshed (1)**
5:7
**regarding (1)**
5:6
**regardless (2)**
19:1;20:25
**regulars (1)**
3:19
**released (1)**
22:22
**reliance (31)**
6:10,10,12,13,19;
7:5,11;9:9;10:14,25;
11:10,24;13:15,23;
14:14,24;17:4,8;
18:14,16,21;19:1,3;
21:12;22:11;23:3;
24:12;25:15;26:25;
29:12,19
**relied (1)**
17:16
**rely (6)**
7:22;8:13;9:17;
13:2;17:5;23:3
**reorganized (2)**
27:22;29:2
**repeatedly (1)**
6:9
**rephrase (1)**
8:19
**represent (7)**
23:24;25:9,10;30:7,
16,17,23
**represented (1)**
30:8
**representing (1)**
32:21
**require (2)**
23:21;27:11
**reserved (1)**
5:5
**resisting (1)**
22:3
**resolution (2)**
29:15;32:25
**resolve (4)**
13:8;26:19,20;33:4
**resolved (2)**
11:7,16
**respect (4)**
16:21;17:21;27:17;
28:23
**respectfully (1)**
13:7
**respond (1)**

5:12
**restate (1)**
15:21
**result (1)**
27:5
**reversal (1)**
16:22
**review (2)**
7:23;34:9
**Rich (2)**
3:13;4:17
**Richard (1)**
4:1
**rid (1)**
13:10
**right (40)**
3:24;4:8;5:9;7:19;
8:1,6,8,13,14;9:2;
10:22;14:6,16;15:12,
24;16:4,4,5,7;17:20;
19:14;20:19;21:7;
22:8;23:12,15;25:14;
26:23;27:1;28:14,21,
24;31:4,9,11;33:1,20;
34:1,14;35:2
**ring (1)**
4:14
**RKS (11)**
4:17,19;5:17;8:10;
20:11;29:1;30:3;31:6,
8;33:5;34:3
**RKS' (1)**
31:14
**root (1)**
4:10
**roughly (1)**
6:1
**Rules (1)**
27:8
**ruling (5)**
5:8,25;16:15,16;
26:10
**run (3)**
13:13;15:9;24:24
**run-of-the-mill (1)**
27:4

## S

**salivating (1)**
25:6
**same (7)**
8:17;13:18;16:18;
20:13;24:25;28:15;
34:6
**SAN (1)**
3:1
**satisfy (1)**
18:17
**saying (12)**
7:14;8:18;12:7;
13:11,12;18:13;
19:22;20:12;24:10;

30:15;31:8;33:22
**schedules (1)**
32:7
**scienter (6)**
14:17;16:3,12;17:1;
18:24;25:18
**second (6)**
12:17;13:13;15:4;
33:16,16,17
**securities (2)**
23:2;27:3
**seek (1)**
5:8
**seem (1)**
6:4
**seemed (1)**
6:8
**seems (5)**
6:13;7:3;9:19;22:7;
28:21
**sell (1)**
34:7
**send (1)**
34:22
**sense (5)**
4:10;20:9;28:8,8;
29:4
**separate (1)**
5:1
**September (1)**
6:6
**sequencing (1)**
5:24
**Series (1)**
35:3
**session (1)**
3:5
**set (4)**
17:14;21:16;26:6;
28:11
**settled (1)**
30:12
**settlement (1)**
33:23
**several (1)**
7:18
**shape (1)**
32:9
**shares (1)**
23:9
**short (1)**
19:25
**shot (2)**
17:9;25:7
**shots (1)**
25:20
**show (1)**
4:9
**side (11)**
6:25;8:24;16:21;
22:5,7;32:13;33:23,
24;34:2,3,8
**sides (1)**

6:4
**sign (1)**
22:2
**signed (1)**
28:16
**silver (3)**
6:9,15;23:13
**simple (2)**
13:5;27:3
**simply (2)**
33:5,13
**sink (2)**
18:8;34:12
**situations (2)**
14:9;21:25
**six (1)**
19:6
**six-to-nine (1)**
10:4
**sixty (1)**
10:2
**SJ (1)**
25:22
**skip (1)**
12:22
**Slack (10)**
3:24;4:1,1,5,6;
20:16;28:23;29:22;
30:1;33:9
**small (1)**
30:4
**smaller (1)**
8:25
**smaller-sized (1)**
22:1
**so-called (1)**
28:17
**somebody (1)**
30:15
**somehow (1)**
29:3
**somewhat (1)**
22:25
**somewhere (1)**
30:4
**soon (2)**
32:5;35:3
**sorry (7)**
11:3;15:20,20;
17:11;33:19;34:18,18
**sort (1)**
8:11
**speak (4)**
4:18;10:8;27:20;
33:3
**SPEAKER (1)**
5:3
**specific (2)**
13:19;33:11
**spot (1)**
25:17
**stage (1)**
18:23

Case: 19-30088    Doc# 14637    Filed: 10/31/24    Entered: 10/31/24 13:05:50    Page 42
of 44

**stages (1)**
19:2
**stagger (1)**
20:5
**stand (1)**
34:24
**standard (2)**
16:13;22:18
**standstill (1)**
5:21
**start (2)**
20:5;24:24
**statement (3)**
19:18;23:11;24:19
**statements (6)**
16:11,12;17:16;
19:12;31:24;34:10
**stay (1)**
5:8
**stayed (1)**
4:22
**stick (1)**
11:20
**sticky (1)**
16:17
**still (5)**
17:18;23:9;25:17;
31:22;33:4
**stipulations (1)**
5:6
**stock (1)**
22:20
**strategy (1)**
7:7
**strongly (1)**
20:8
**struggling (1)**
15:5
**stuck (1)**
3:23
**student (1)**
21:25
**stuff (1)**
6:15
**subject (2)**
19:17;20:7
**submission (2)**
21:14;34:22
**submit (1)**
13:7
**successful (1)**
33:11
**Sucharow (1)**
3:17
**suggested (1)**
29:1
**summary (10)**
5:5;6:12;7:12,24;
13:22;14:3;24:13;
25:24,25;26:15
**support (2)**
7:11;29:11
**Supreme (1)**

22:18
**sure (8)**
3:22;6:24;19:23;
24:14,23;26:17;
34:11,23
**survive (1)**
14:19
**survives (3)**
14:24;24:12,15

**T**

**table (1)**
32:10
**talk (3)**
11:9;33:2;35:2
**talked (2)**
31:21;34:10
**talking (5)**
11:25;17:10,11,24;
24:5
**tee (2)**
25:3,20
**ten (2)**
11:25;25:3
**ten-million (1)**
7:21
**terms (1)**
34:25
**testify (1)**
12:10
**Therefore (1)**
13:4
**third (5)**
4:15,25;13:13;
27:21;28:16
**third-party (2)**
32:15;34:7
**thirteen (1)**
23:2
**thirty-some (1)**
30:11
**though (3)**
4:10;21:23;22:24
**thought (3)**
4:9;10:9;34:13
**three (1)**
17:2
**thrilled (1)**
6:25
**thrown (1)**
13:16
**timetable (1)**
7:6
**today (6)**
3:19;4:9;19:20,22;
20:17,20
**took (1)**
15:11
**total (1)**
20:11
**touch (1)**
13:13;35:2

**trading (4)**
7:11;9:6;19:9;
29:18
**traditional (2)**
10:20;27:2
**treat (1)**
17:23
**treatment (5)**
17:23;21:4,10,21;
27:23
**treatment's (1)**
28:6
**tremendous (2)**
21:9;27:22
**trial (14)**
6:1;8:23;12:16,17,
17;14:5,17,18,19,21;
20:4;27:2,5,10
**trials (4)**
14:3,19;17:10;
25:22
**trip (1)**
15:14
**true (1)**
34:6
**try (4)**
9:14;19:5;34:7;
35:4
**trying (3)**
9:11;11:19;12:22
**Tuesday (1)**
20:2
**turn (2)**
25:7,13
**twenty (3)**
9:1;11:25;30:13
**twenty-seven (3)**
8:10;30:2,3
**twice (1)**
22:1
**two (6)**
6:1,5;9:15;12:24;
30:9;31:25

**U**

**unanswered (1)**
32:11
**under (4)**
19:7;27:7;31:25;
32:4
**underscores (1)**
18:18
**understood (2)**
5:23,23
**UNIDENTIFIED (1)**
5:3
**unique (2)**
22:25;30:2
**UNISON (1)**
35:6
**unless (1)**
32:3

**unsuccessful (1)**
17:17
**up (19)**
9:22;10:9;11:17;
12:6,11;13:12;19:17;
20:1,2;21:16;22:2;
23:5;25:4,15,20;29:6;
31:22,24;34:11
**use (1)**
27:2
**used (1)**
4:15
**useful (1)**
32:14
**using (1)**
15:5
**usual (1)**
3:18

**V**

**vary (1)**
7:4
**view (1)**
31:20

**W**

**Wait (2)**
33:16;34:16
**waive (1)**
5:8
**Watkins (1)**
32:23
**way (17)**
6:22;9:15,22;11:15,
16;14:22;15:16;
16:24;18:9;19:16;
20:21;25:9;26:16;
27:24,25;28:4;29:1
**ways (2)**
18:13;20:6
**weapon (1)**
7:9
**WEDNESDAY (1)**
3:1
**weekly (1)**
33:3
**Weil (1)**
4:1
**welcome (1)**
19:24
**weren't (1)**
28:16
**what's (6)**
5:15;10:10;13:18;
18:9;19:23;29:17
**Whereas (1)**
21:10
**Whereupon (1)**
35:9
**whoever's (1)**
10:8

**whole (4)**
15:12;21:16;25:6;
26:20
**who've (1)**
30:19
**win (13)**
7:24;14:14,15,16,
17,18;26:20,22,23,24;
29:1,2,3
**winner (1)**
7:9
**wipe (2)**
15:3;25:6
**without (1)**
6:17
**witness (3)**
9:1;12:9,10
**witnesses (5)**
8:24;11:24;17:12,
13,25
**won (2)**
26:4,5
**wondering (1)**
20:9
**word (2)**
34:9,9
**words (2)**
26:15;27:7
**work (2)**
17:19;33:21
**workable (2)**
19:5;20:3
**working (1)**
33:4
**world (4)**
15:13;16:22;17:4;
35:3
**worth (1)**
32:16
**wrong (4)**
8:6;10:10;15:12;
18:9

**Y**

**Yankees (3)**
4:5,6,9
**year (7)**
5:5,22,23;12:4;
15:1,8;20:14
**years (6)**
6:1;9:15;12:24;
20:15;23:2;31:25
**yesterday (1)**
19:19

**Z**

**zero (1)**
6:10

**1**

Case: 19-30088    Doc# 14637    Filed: 10/31/24    Entered: 10/31/24 13:05:50    Page 43
of 44

**1 (1)**
  22:3
**10:00 (1)**
  3:1
**10:43 (1)**
  35:9
**107 (2)**
  17:22;20:10
**170-plus (1)**
  32:22

**2**

**2 (2)**
  23:4;26:7
**2020 (1)**
  21:4
**2024 (1)**
  3:1
**2025 (1)**
  16:17
**2026 (1)**
  6:6

**3**

**30 (1)**
  3:1

**4**

**400 (3)**
  8:5,7,23

**8**

**800 (1)**
  32:21

**9**

**900 (1)**
  32:22

Case: 19-30088   Doc# 14637   Filed: 10/31/24   Entered: 10/31/24 13:05:50   Page 44 of 44