| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP**<br>Richard W. Slack (*pro hac vice*)<br>(richard.slack@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel:    (212) 310-8000<br>Fax:   (212) 310-8007<br><br>**KELLER BENVENUTTI KIM LLP**<br>Jane Kim (#298192)<br>(jkim@kbkllp.com)<br>David A. Taylor (#247433)<br>(dtaylor@kbkllp.com)<br>Thomas B. Rupp (#278041)<br>(trupp@kbkllp.com)<br>425 Market Street, 26th Floor<br>San Francisco, CA 94105<br>Tel: (415) 496-6723<br>Fax: (650) 636 9251 | **LATHAM & WATKINS LLP**<br>Joshua G. Hamilton (#199610)<br>(joshua.hamilton@lw.com)<br>Michael J. Reiss (#275021)<br>(michael.reiss@lw.com)<br>10250 Constellation Blvd., Suite 1100<br>Los Angeles, CA 90067<br>Tel: 424 653 5500<br><br>**LATHAM & WATKINS LLP**<br>James E. Brandt (*pro hac vice*)<br>(james.brandt@lw.com)<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Tel: 212 906 1200 |

*Attorneys for the Debtors and Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>     - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                              **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**REORGANIZED DEBTORS' FORTIETH SECURITIES CLAIMS LIMITED SUPPLEMENTAL OMNIBUS OBJECTION TO CLAIMS ADOPTING THE SECOND RKS AMENDMENT** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARD..............................................................................................2

III. ARGUMENT ...........................................................................................................3

    A. The Court Should Again Dismiss The December 20, 2017 Dividend Disclosure ...................................................................................................3

        1. The Court Dismisses The Dividend Disclosure............................................3

        2. The RKS SAC's New Allegations Fail To Salvage The Dividend Disclosure ......................................................................................................3

    B. The Court Should Again Dismiss The Stock Drop On November 14, 2018 ...........4

        1. The Court Dismisses The Credit Facilities Disclosure ................................4

        2. The RKS SAC's New Theory Regarding The November 14, 2018 Stock Drop Fails As A Matter Of Law And Common Sense ......................5

    C. The RKS Claimants Cannot Plead Both The October 12, 2017 "YouTube Disclosure" And The October 13, 2017 "8-K Disclosure" ......................................7

        1. The Court Dismisses The Preservation Notice Disclosure .........................7

        2. The RKS Claimants Cannot Allege That The Same Information Entering The Market On Different Days Caused Multiple Stock Drops.....8

IV. CONCLUSION.......................................................................................................10

ii

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 2

*Cole v. Sunnyvale*,
    2010 WL 532428 (N.D. Cal. Feb. 9, 2010) ........................................................................ 5

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ......................................................................................................... 2, 6

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) .................... 2

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) .......................................................................................... 6, 9

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) .............................................................................................. 2

*In re Omnicom Group, Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010) ............................................................................................... 6

*In re YogaWorks, Inc. Sec. Litig.*,
    2020 WL 2549290 (C.D. Cal. Apr. 23, 2020) .................................................................... 5

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014) .......................................................................................... 3, 6

*Marsh v. Armada Corp.*,
    533 F.2d 978 (6th Cir. 1976) ............................................................................................. 4

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ....................................................................................... 9, 10

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ......................................................................................... 6

*Or. Pub. Emples. Ret. Fund v. Apollo Group Inc.*,
    774 F.3d 598 (9th Cir. 2014) .............................................................................................. 2

*Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*,
    2023 WL 4161355 (D. Ariz. June 23, 2023) ....................................................................... 4

*Plumbers and Steamfitters Local 60 Pension Trust v. Meta Platforms, Inc.*,
    2024 WL 4251896 (N.D. Cal. Sept. 17, 2024) .................................................................. 10

**RULES**

Fed. R. Bankr. P. 7012(b) ............................................................................................................. 2

PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (together, "PG&E" or the "Reorganized Debtors"), submit this limited supplemental objection solely relating to the RKS SAC's (defined below) amended allegations concerning the three alleged corrective disclosures that the Court dismissed in its September 18, 2024 order (ECF No. 14593, the "Order").[1] This Objection does not seek to relitigate matters on which the Court has already ruled, but addresses only the new allegations in the RKS Claimants' October 8, 2024 amendment to the RKS Amendment (ECF No. 14603, the "RKS SAC"), which is directed to the pleading defects that resulted in this Court's dismissal of three alleged corrective disclosures and the corresponding stock drops.[2]

## I.  INTRODUCTION

In its September 18, 2024 Order, the Court held that the RKS Amendment failed to plead loss causation as to three of nine alleged "corrective disclosures"—*i.e.*, disclosures supposedly revealing that PG&E's prior statements were in fact false, resulting in a stock drop—and on that basis dismissed each of them. Order at 37–43. On October 8, 2024, the RKS Claimants filed the RKS SAC attempting to revive these three dismissed stock drops. ECF No. 14603.

In summary, the RKS Claimants responded to the Court's Order by: (1) making new allegations that still fail to show that the market learned anything new about PG&E's fire safety efforts when PG&E suspended its dividend (the December 20, 2017 "Dividend Disclosure"); (2) deleting their prior allegations that PG&E's SEC filing about its credit facilities caused the November 14, 2018 stock drop (the November 13–14, 2018 "Credit Facilities Disclosure"), and replacing that argument with a new theory based on a single conclusory allegation that the November 14 stock drop was actually caused by an earlier disclosure; and (3) deleting their prior allegations that the October 12, 2017 stock drop was caused by the disclosure of a document preservation notice (the "Preservation Notice Disclosure"), and instead claiming that information similar to that which allegedly caused the October 13 stock drop also caused the October 12 stock drop. None of these new allegations and

---

[1] All capitalized terms that are not defined herein have the definitions set forth in PG&E's 33rd and 34th Omnibus Objections. ECF Nos. 14200, 14203.

[2] PERA did not file an amendment. Consequently, every securities claimant who adopted PERA's TAC asserts only the six remaining corrective disclosures.

constructs provide a basis for the Court to revive claims based on the stock declines purportedly associated with the three corrective disclosures it dismissed.

Accordingly, PG&E respectfully requests that the Court, consistent with its prior ruling, dismiss or strike the RKS Claimants' alleged corrective disclosures and any claim based on the stock drops on December 20, 2017 (RKS SAC ¶¶ 449–63), November 14, 2018 (*id.* ¶ 514), and either October 12, 2017 (*id.* ¶¶ 433–42) or October 13, 2017 (*id.* ¶¶ 443–48).

## II. LEGAL STANDARD

The Court previously instructed that, to survive PG&E's omnibus objection, the RKS Claimants "must plead 'enough facts to state a claim to relief that is *plausible* on its face.'" Order at 11 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] To plausibly plead that an alleged corrective disclosure caused a PG&E stock drop, the RKS Claimants must plead with particularity that the stock price dropped because the truth about an actionable alleged misstatement or omission "became known" to the market. *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347 (2005); *see also In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022) (requiring a "causal connection" between the loss and the "very facts about which the defendant lied") (citation omitted); *Or. Pub. Emples. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) (loss causation must be pled "with particularity" under Rule 9(b)). Price drops where the market was "reacting to the fires themselves [or] disclosures of previously available information" are not sufficient. Order at 43. Only factual allegations establishing the disclosure of "previously hidden" information "that contradicted PG&E's . . . statements regarding safety practices and state law compliance" can satisfy the RKS Claimants' pleading burden. *Id.* Further, the Court may grant a Rule "12(f) motion to strike [] to avoid the expenditure of time and money . . . from litigating spurious issues by dispensing with those issues prior to trial[.]" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted), *rev'd on other grounds*, 510 U.S. 517 (1994); *see* FRBP 7012(b) (incorporating Rule 12(f)).

---

[3] In its 33rd and 34th Omnibus Objections, PG&E argued that the PSLRA's heightened pleading standards applied. *See* ECF Nos. 14200 at 42–45, 14203 at 19. The Court disagreed and held that the RKS Claimants needed only to satisfy Rules 12(b)(6) and 9(b). Order at 11. While PG&E is seeking leave to appeal that determination and others, ECF No. 14632, the RKS SAC's amended corrective disclosure allegations fail even under the lower pleading standards of Rule 12(b)(6) and 9(b). PG&E submits this Omnibus Objection without prejudice to the issues raised in its motion for leave to appeal.

3

## III. ARGUMENT

### A. The Court Should Again Dismiss The December 20, 2017 Dividend Disclosure

#### 1. The Court Dismisses The Dividend Disclosure

The RKS Amendment alleged that PG&E's share price fell when, on December 20, 2017, PG&E announced that it would suspend its quarterly dividend. *See* RKS Am. ¶¶ 447–48. In its announcement, PG&E explained that "California is one of the only states in the country in which courts have applied inverse condemnation to [fires] caused by utility equipment," and "even if the utility has followed established inspection and safety rules - the utility may still be liable for property damages and attorneys' fees associated with [the North Bay Fires]." *Id.* at ¶ 447. The RKS Amendment further alleged that this disclosure "shocked" investors because "PG&E had previously intertwined safety, fires, and its dividend." RKS Am. ¶ 450.

The Court dismissed the Dividend Disclosure, finding that PG&E suspended its dividend because it could face liability "even if no wrongdoing were to be found." Order at 39–40. The Court held that the RKS Claimants failed to plausibly plead a "causal link between the price drop [and] any misleading statements or omissions" about PG&E's wildfire safety program. *Id.*

#### 2. The RKS SAC's New Allegations Fail To Salvage The Dividend Disclosure

The RKS SAC attempts to plead that the Dividend Disclosure revealed a prior misstatement that resulted in loss by adding allegations that (i) PG&E's prior SEC filings "did not discuss *any* possibility of a dividend cut," RKS SAC ¶ 454 (emphasis in original); (ii) the Dividend Disclosure indicated that PG&E believed that its "potential liabilities [were] large enough[] to require cash conservation," *id.* ¶ 456; and (iii) Judge Alsup found that PG&E should have allocated its shareholder dividends in 2016 and 2017 to "'bring PG&E into compliance,'" *id.* ¶ 457.

These amended allegations miss the fundamental point of the Court's holding—that the RKS Claimants failed to allege a causal link between the stock drop and any newly revealed "wrongdoing" by PG&E. Order at 39. Indeed, none of the new allegations alter that PG&E suspended the dividend because it "may be held liable for causing the fires even if it had complied with applicable laws." *Id.* Moreover, none of the new allegations concern PG&E's fire safety efforts at all. *See Loos v.*

*Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) (affirming dismissal of corrective disclosure that "simply pu[t] investors on notice of a *potential* future disclosure of fraudulent conduct"); *c.f. Marsh v. Armada Corp.*, 533 F.2d 978, 983 (6th Cir. 1976) ("Shareholders generally know that a company with a long history of dividend payments may face a short term drop in the market value of its stock when it announces the elimination of dividends, the drop being caused largely by the immediate desire to sell by many income-seeking investors.").

Accordingly, the Court should again dismiss the Dividend Disclosure (RKS SAC ¶¶ 449–63) because the RKS Claimants have failed still to allege the necessary causal link. *See Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*, 2023 WL 4161355, at *6–7 (D. Ariz. June 23, 2023) (dismissing second amended complaint: "the [original corrective] disclosures remain deficient . . . . Plaintiffs fail to connect the [alleged] disclosure to any allegedly fraudulent statements").

### B. The Court Should Again Dismiss The Stock Drop On November 14, 2018

#### 1. The Court Dismisses The Credit Facilities Disclosure

The RKS Amendment alleged that after the close of trading on November 13, 2018 (five days after the Camp Fire ignited), PG&E informed investors that (i) its $3.3 billion credit facilities were fully utilized and "[n]o additional amounts are available," and (ii) if PG&E's equipment was "determined to be the cause [of the Camp Fire]," PG&E may face "significant liability in excess of insurance coverage." RKS Am. ¶ 504. The RKS Claimants alleged that analysts "attributed the drop in PG&E's stock price to news about PG&E's insufficient insurance coverage and deteriorating financial situation." *Id.* ¶ 506.

The Court sustained PG&E's objection with respect to the Credit Facilities Disclosure because the decline in PG&E's share price on November 14, 2018 "comes from [PG&E's] statement on finances, and not in relation to any revealed wrongdoing." Order at 42. Because the RKS Claimants had not "plausibly allege[d] that this price drop was due to a market reaction to PG&E's newly revealed wrongdoing," the Court sustained PG&E's objections "as to this price drop." *Id.*

## 2. The RKS SAC's New Theory Regarding The November 14, 2018 Stock Drop Fails As A Matter Of Law And Common Sense

In response, the RKS Claimants have completely reversed course regarding the November 14, 2018 stock drop. They no longer assert that the Credit Facilities Disclosure caused the stock drop, deleting *all* of those allegations from the RKS Amendment. *See* ECF No. 14604-1 at 161–64 (redline showing that the RKS SAC deleted the entirety of its substantive allegations about the Credit Facilities Disclosure). Instead, for the first time and without any supporting factual allegations, the RKS Claimants now make the conclusory allegation that "complex value-relevant information released November 9th–12th" caused declines in PG&E's securities prices "through and including November 14th"—*i.e.*, that the market was *not* responding to the November 13 Credit Facilities Disclosure, but rather to a disclosure made 5 days earlier. RKS SAC ¶ 514. The RKS SAC does not even attempt to explain what was so "complex" about the information disclosed on November 9 that it took until November 14 for the market to fully ingest that information.

The RKS Claimants' attempt to recover for the stock price decline on November 14 fails for several reasons. *First*, the Court already determined that the November 14 stock drop "comes from a statement on finances, and not in relation to any revealed wrongdoing of PG&E." Order at 42. The RKS Claimants cannot plausibly amend their way around the Court's ruling that, as they previously alleged, PG&E's November 13 8-K caused analysts to increase their estimate of PG&E's liabilities from $8 billion to "**$15 billion**," RKS Am. ¶¶ 502, 508 (emphasis added), suggesting that if PG&E were "found liable for the Camp Fire, its liability would outstrip its insurance coverage," Order at 42. *See Cole v. Sunnyvale*, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) ("The court may also consider the prior allegations[,] . . . judicial experience and common sense to assess whether the [] Amended Complaint plausibly suggests an entitlement to relief[.]"); *In re YogaWorks, Inc. Sec. Litig.*, 2020 WL 2549290, at *3 (C.D. Cal. Apr. 23, 2020) (removing facts from the complaint does not "simply erase those allegations from the case") (citations omitted). Deleting references to PG&E's November 13, 2018 Form 8-K does not, and cannot, change the fact that PG&E released the 8-K and the 8-K disclosed information to the market. Because RKS's prior allegations indicate that the market was reacting to PG&E's disclosure of its potential liability on November 13, and not to a revelation about wrongdoing, the RKS Claimants still fail to sufficiently plead "a causal connection between the

defendant's misstatements and the plaintiff's economic loss" concerning the November 14, 2018 stock drop. *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (citing *Dura*, 544 U.S. at 346); *Loos*, 762 F.3d at 887 (price drop must be "caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors"); *see also* Order at 42.

*Second*, the RKS SAC fails to allege that the market learned any *new* information after November 12, 2018 that caused the November 14, 2018 stock drop. "A corrective disclosure . . . by definition reveal[s] new information to the market that has not yet been incorporated into the price." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d at 794 (affirming dismissal of claims for failure to plead loss causation). On this separate basis alone, the RKS Claimants have failed to allege a causal link between an alleged misstatement and the November 14 stock drop.

*Third*, the RKS Claimants' new theory—*i.e.*, that information disclosed in prior days was processed by the market over the several days that followed—is not only implausible, it is contradicted both by their prior allegations that the November 14, 2018 stock drop was caused by the Credit Facilities Disclosure and that PG&E's stock traded in an "efficient market" that "promptly digested current information regarding PG&E." RKS SAC ¶¶ 621, 623; Order at 34–35. The RKS Claimants' new allegations now rest on the premise that the market did *not* "promptly digest[]" the new information. *See* RKS SAC ¶ 514. "[I]nvestors cannot contend that the market is efficient for purposes of reliance and then cast the theory aside when it no longer suits their needs for purposes of loss causation." *Meyer v. Greene*, 710 F.3d 1189, 1198-99 (11th Cir. 2013). "Either the market is efficient or it is not." *Id*. at 1199; *see In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 513 (2d Cir. 2010) (rejecting argument that stock price drop was caused by previously disclosed information: "[this allegation] runs squarely into . . . [the] allegation that the market for [defendant's] securities at all times promptly digested and reflected in its share price all public information").[4]

---

[4] In fact, the Order cited the RKS Amendment's allegations that the market was efficient when it held the RKS Claimants adequately pled reliance. Order at 34–35. Unlike the Second and Eleventh Circuits, the Ninth Circuit has not addressed whether a claimant can selectively plead market efficiency.

Accordingly, the Court should again hold that PG&E's objections "as to this price drop are sustained," Order at 42, because the RKS Claimants fail still to allege a necessary causal link between any revealed wrongdoing and the November 14, 2018 stock drop.

C. **The RKS Claimants Cannot Plead Both The October 12, 2017 "YouTube Disclosure" And The October 13, 2017 "8-K Disclosure"**

1. **The Court Dismisses The Preservation Notice Disclosure**

The RKS Amendment alleged that PG&E's share price decline on Thursday, October 12, 2017 (four days after the North Bay Fires ignited) was caused by the revelation that PG&E received a document preservation notice from the CPUC. RKS Am. ¶ 435. That preservation notice instructed PG&E to "preserve any factual or physical evidence . . . [and] all electronic (including emails) and non-electronic documents related to potential causes of the [North Bay] fires." *Id.* (internal quotation marks omitted). According to the RKS Amendment, market commentators connected this notice and PG&E's share price decline to "concerns that [PG&E] may be responsible for damage caused by the North Bay Fires," *id.* ¶ 437, and that "PG&E's vegetation management practices may have caused the North Bay Fires," *id.* ¶ 438.

The RKS Amendment further alleged that PG&E's Form 8-K filing the next day—October 13, 2017 (the "8-K Disclosure")—caused additional stock drops through the next full trading day on Monday, October 16, 2017. RKS Am. ¶¶ 441–42. In its 8-K, PG&E informed investors that: (i) Cal Fire was investigating the cause of the North Bay Fires, "including the possible role of [PG&E's] power lines and other facilities"; and (ii) that PG&E "has approximately $800 million in liability insurance for potential losses that may result from the fires." *Id.* ¶ 441. According to the RKS Amendment, PG&E's Form 8-K revealed "that PG&E's conduct . . . was greater in severity than previously disclosed," and "that at least some of the North Bay Fires were caused by PG&E's negligence or worse." *Id.* at ¶ 445.

The Court sustained PG&E's objection with respect to the Preservation Notice Disclosure, holding that the CPUC litigation hold letter did not correct any alleged misinformation because it was "only . . . a protective/investigatory letter to PG&E after the devastating fires, . . . not an indicator either PG&E was indeed the cause of the fires or had been lying to shareholders and the general public

regarding safety practices." Order at 38. Because there was "no allegation that links the price drop [on October 12, 2017] to any misleading or false statements by PG&E," the RKS Claimants failed to allege loss causation for the Preservation Notice Disclosure. *Id.*

The Court also held that the RKS Amendment did adequately allege that the 8-K Disclosure corrected PG&E's challenged statements because it informed the market that "Cal Fire [was] investigating the [North Bay] fires, as well as PG&E's connection to the fires." *Id.* at 38. The Court found that the RKS Claimants sufficiently pled this disclosure because it allegedly revealed, for the first time, that the North Bay Fires may have been "caused by PG&E's negligence." Order at 39; RKS Am. ¶ 445.

### 2. The RKS Claimants Cannot Allege That The Same Information Entering The Market On Different Days Caused Multiple Stock Drops

The RKS SAC deletes all of the RKS Amendment's allegations about the Preservation Notice. Instead, the RKS SAC now alleges that the market actually first learned that PG&E may be responsible for the North Bay Fires on October 12, 2017 (and not October 13, 2017), *see* RKS SAC ¶¶ 433–42, pointing to a Mercury News YouTube video entitled, "'PG&E power lines may be linked to Wine Country fires,'" (the "YouTube Disclosure"), which allegedly "connected the [North Bay] fires to PG&E's inadequate safety regime." *Id.* ¶¶ 434–35. The RKS SAC alleges that the information in the video "connected the North Bay Fires to poor vegetation management, complete disregard of vegetation management requirements, and inadequate maintenance of power lines – the exact risks concealed by PG&E." *Id.* ¶ 437 (emphasis omitted). The RKS SAC further alleges that the market learned on October 12 that "California fire officials [were] investigating the role of downed power lines, and . . . . PG&E's maintenance activities." *Id.* ¶ 440.

Having revised their allegations regarding the supposed October 12 disclosure, the RKS Claimants failed to amend their allegations regarding the purported October 13, 2017 disclosure. The RKS SAC still alleges that the October 13 8-K Disclosure informed the market that California fire officials were "investigat[ing]" the North Bay Fires, SAC ¶ 443, that this investigation was looking into "the possible role of power lines and other [PG&E] facilities," *id.*, and that "at least some of the North Bay Fires were caused by PG&E's negligence." *Id.* ¶ 447.

1    To begin with, the RKS SAC fails to plead loss causation as to the YouTube Disclosure. The
2  video did not reveal that PG&E was actually negligent or that a government agency determined that
3  PG&E's equipment was non-compliant (let alone that this non-compliance caused the North Bay
4  Fires). *See generally* RKS SAC ¶¶ 433–42. And like the "litigation hold letter" in the previously
5  dismissed Preservation Notice Disclosure, RKS Am. ¶ 435, information that an investigation is being
6  launched does not "indicat[e] either PG&E was indeed the cause of the fires or had been lying to
7  shareholders," Order at 38. Because the RKS Claimants have failed to adequately allege a link
8  between the YouTube Disclosure and "information that contradicted PG&E's own previous statements
9  regarding safety practices and state law compliance," *id.* at 43, the Court should dismiss the YouTube
10 Disclosure. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008)
11 (dismissing news article as a corrective disclosure because it did not "disclose[]—or even suggest[]—
12 to the market . . . the fraudulent activity that [plaintiff] contends forced down the stock").

13   However, if the Court nonetheless determines that the RKS Claimants *did* adequately plead
14 that PG&E's $4.65 in share price decline was caused by the October 12 YouTube Disclosure, because
15 it revealed information that at least some of the North Bay Fires may have been caused by PG&E's
16 negligence, then RKS can no longer contend that the October 13 8-K, which assertedly revealed no
17 more, still constitutes a corrective disclosure or that the subsequent share price decline is actionable.
18 It is black letter law that a "corrective disclosure" must disclose "new" information to the market. *In*
19 *re BofI Holding, Inc.*, 977 F.3d at 794; Order at 43 ("disclosures of previously available information"
20 insufficient to plead loss causation). If the Court determines that the RKS Claimants adequately pled
21 that the information entering the market on October 12, 2017 corrected PG&E's misstatements, then
22 the October 13 alleged corrective disclosure must be dismissed because the RKS claimants have not
23 alleged that any *new* information was disclosed on that date, and the Court should therefore find that
24 the subsequent $10.52 share price decline is not actionable. *Compare* RKS SAC ¶ 441 (on October
25 12, local media reported on "PG&E's safety and vegetation management failures"), *with* ¶ 447 (on
26 October 13, the market learned "some of the North Bay Fires were caused by PG&E's negligence");
27 *compare id.* ¶ 440 (on October 12, the market learned "California fire officials had confirmed they're
28 investigating the role of [PG&E's] downed power lines"), *with* ¶ 443 (on October 13, the market

learned that "[t]he causes of [the North Bay Fires] are being investigated by [California fire officials]"). Claimants fail to plead loss causation when an alleged corrective disclosure is "in line with earlier disclosures," and thus does not "contai[n] new information." *Plumbers and Steamfitters Local 60 Pension Trust v. Meta Platforms, Inc.*, 2024 WL 4251896, at *11 (N.D. Cal. Sept. 17, 2024) (dismissing claims for failure to plead loss causation).

Either the RKS Claimants failed to adequately plead a corrective disclosure on October 12, 2017 or their October 13, 2017 corrective disclosure must now be dismissed.[5] The RKS Claimants cannot have it both ways. Accordingly, the Court should dismiss the YouTube Disclosure (RKS SAC ¶¶ 433–42) or the 8-K Disclosure (*id.* ¶¶ 443–448).

## IV. CONCLUSION

For the foregoing reasons, PG&E respectfully requests that the Court dismiss or strike the RKS Claimants' allegations regarding the corrective disclosures and drops in PG&E's stock price on December 20, 2017 (RKS SAC ¶¶ 449–63), November 14, 2018 (*id.* ¶ 514), and either October 12, 12, 2017 (*id.* ¶¶ 433–42) or October 13–16, 2017 (*id.* ¶¶ 443–48).

Dated: November 21, 2024

                                 **WEIL, GOTSHAL & MANGES LLP**
                                 **LATHAM & WATKINS LLP**
                                 **KELLER BENVENUTTI KIM LLP**

                                 By: /s/ *Michael J. Reiss*
                                 Michael J. Reiss

                                 *Attorneys for Debtors and Reorganized Debtors*

---

[5] While the October 13, 2017 8-K disclosed (for the first time) that PG&E had $800 million in liability insurance, this information did not reveal the "truth" behind any challenged statement. Rather, it was a "statement on finances," which did not "revea[l] wrongdoing[.]" *See* Order at 42 (discussing the Credit Facilities Disclosure); *see also Metzler*, 540 F.3d at 1063 ("[T]he market [must have] learned of and reacted to this fraud, as opposed to merely reacting to reports of the defendant's poor financial health generally.").