1
**LABATON KELLER SUCHAROW LLP**          **LOWENSTEIN SANDLER LLP**
2  Thomas A. Dubbs (*pro hac vice*)          Michael S. Etkin (*pro hac vice*)
   Michael P. Canty (*pro hac vice*)          Andrew Behlmann (*pro hac vice*)
3  Thomas G. Hoffman, Jr. (*pro hac vice*)    Scott Cargill (*pro hac vice*)
   140 Broadway                               One Lowenstein Drive
   New York, New York 10005                   Roseland, New Jersey 07068
4
5  *Lead Counsel to Lead Plaintiff PERA and*   *Special Bankruptcy Counsel to*
   *the Proposed Class*                         *Lead Plaintiff PERA*
6
   **MICHELSON LAW GROUP**
7  Randy Michelson (SBN 114095)
   220 Montgomery Street, Suite 2100
8  San Francisco, California 94104
                                              *(additional counsel on Exhibit A)*
   *Local Bankruptcy Counsel to Lead*
9  *Plaintiff PERA*

10              **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11                    **SAN FRANCISCO DIVISION**

12
13  In re:                                  Case No. 19-30088 (DM) (Lead Case)
                                            Chapter 11
    PG&E CORPORATION                        (Jointly Administered)
14
    - and –                                **SECURITIES PLAINTIFFS'**
15                                          **MOTION AND MEMORANDUM OF**
    PACIFIC GAS AND ELECTRIC                **POINTS AND AUTHORITIES IN**
16  COMPANY,                                **SUPPORT OF MOTION FOR CLASS**
                                            **CERTIFICATION**
17  Debtors.
                                            Date:    March 11, 2025
18  ☒ Affects Both Debtors                  Time:    10:00 a.m.
    ☐ Affects PG&E Corporation              Before:  Hon. Dennis J. Montali
19  ☐ Affects Pacific Gas and Electric Company

20
                                            **Objection Deadline: February 6, 2025**
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   RELEVANT PROCEDURAL HISTORY ............................................................... 3

III.  ARGUMENT ............................................................................................................ 5

    A.    The Proposed Class Satisfies Rule 23(a) ..................................................... 6

        1.    *Numerosity*: Members of the Proposed Class Are So Numerous that Joinder of All Members is Impracticable ......................................... 6

        2.    *Commonality*: The Proposed Class Shares Questions of Law and Fact .......... 7

        3.    *Typicality*: The Securities Plaintiffs' Claims Are Typical of the Proposed Class's Claims ................................................................. 9

        4.    *Adequacy of Representation*: The Securities Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Proposed Class ................................................................................. 10

            a.    The Securities Plaintiffs and Their Counsel Have No Conflicts with the Proposed Class of Securities Claimants ............................... 11

            b.    The Securities Plaintiffs and Their Counsel Will Prosecute the Securities Claims Vigorously on behalf of the Class ......................... 12

    B.    The Proposed Class Satisfies Rule 23(b)(3) ................................................. 13

        1.    Predominance Is Satisfied ................................................................. 13

            a.    Predominance Is Satisfied with Respect to the Exchange Act Claims ........................................................................................... 13

            b.    Predominance Is Satisfied with Respect to the Securities Act Claims ........................................................................................... 15

        2.    Superiority Is Satisfied ...................................................................... 16

    C.    Damages are Easily Determined on a Class-Wide Basis ............................. 17

    D.    The Court Should Appoint Labaton and Robbins Geller as Class Counsel Under Rule 23(g) ................................................................................. 17

IV.   CONCLUSION ....................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 15

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S 455 (2013) ......................................................................................... 14, 15

*In re Banc of Cal. Sec. Litig.*,
    326 F.R.D 640 (C.D. Cal. 2018) ........................................................................... 17

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ......................................................................................... 2, 14

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) .......................................................................... 14

*In re Celera Corp. Sec. Litig.*,
    No. 5:10-cv-02604-EJD, 2014 WL 722408 (N.D. Cal. Feb. 25, 2014) ................... 9

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig*,
    No. CV 11-1768 PSG, 2013 WL 5789237 (C.D. Cal. Oct. 25, 2013) ..................... 8

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
    No. 17-cv-00554-YGR, 2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) .................. 17

*In re Comput. Memories Sec. Litig.*,
    111 F.R.D. 675 (N.D. Cal. 1986) ............................................................................ 5

*In re Cooper Companies Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) .......................................................................... 16

*In re Death Row Records, Inc.*
    Adversary No. 10-ap-02574, 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21, 2012) ................. 10

*In re Diamond Foods, Inc., Sec. Litig.*,
    295 F.R.D. 240 (N.D. Cal. 2013) ............................................................................ 5

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .............................................................................. 9, 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804, 810 (2011) ("*Halliburton I*") ...................................................... 13, 14

*Gilbert v. MoneyMutual, LLC*,
    318 F.R.D. 614 (N.D. Cal. 2016) ......................................................................... 6, 7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) *(Halliburton II)* ............................................................ 14

*Harris v. Palm Springs Alpine Ests., Inc.*,
   329 F.2d 909 (9th Cir. 1964) ............................................................................ 6

*Hatamian v. Advanced Micro Devices, Inc.*,
   No. 14-cv-00226 YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ........................... 6, 7

*Hildes v. Arthur Andersen LLP*,
   734 F.3d 845 (9th Cir. 2013) ............................................................................ 15

*In re La. Safety Assoc. of Timbermen-Self I*,
   No. 17-8003, 2018 WL 4043228 (Bankr. W.D. La. Aug. 22, 2018). ........................... 7

*In re LendingClub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) ................................................. 9, 14, 17

*In re Lyft Sec. Litig.*,
   No. 19-cv-02690, 2021 WL 3711470 (N.D. Cal. Aug 20, 2021) ........................... 8

*In re Mattel, Inc. Sec. Litig.*,
   No. 2:19-cv-10860, 2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) ........................... 54

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ........................................................................... 9

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ........................................................................... 5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ........................................................................... 5

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014).......................................................... 6, 7, 9, 10

*PERA v. Earley*,
   No. 22-16711 (9th Cir. May 3, 2024) ................................................................ 4

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .................................................................................... 16

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ..................................................................... 6

*Richie v. Blue Shield of Cal.*,
   No. C–13–2693 EMC, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014)........................... 6

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010).......................................................... 7, 9, 10

*In re Sandisk LLC Sec. Litig.*,
  No. 15-cv-01455-VC, 2018 WL 4293336 (N.D. Cal. Sept. 4, 2018) ............................ 15, 17

*Stockwell v. City & Cnty. of S.F.*,
  749 F.3d 1107 (9th Cir. 2014) ................................................................................. 7

*Tietz v. Bowen*,
  695 F. Supp. 441 (N.D. Cal. 1987) ........................................................................ 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*,
  No. MDL 2672, 2017 WL 3058563 (N.D. Cal. July 19, 2017) ........................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................... 7

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................ 5

**Docketed Case**

*In re PG&E Corporation Securities Litigation*,
  Case No. 5:18-cv-03509-EJD (N.D. Cal.) .................................................. *passim*

**Statutes**

15 U.S.C. §77k(e) ........................................................................................... 15, 16

Securities Act of 1933 .......................................................................................... *passim*

Securities Exchange Act of 1934 .......................................................................... *passim*

  Setion 10(b) .......................................................................................................... 17

**Rules**

Fed. R. Bankr. P. 7023 ................................................................................. 1, 4, 9

Fed. R. Bankr. P. 9014(a) ......................................................................................... 1

Fed. R. Bankr. P. 9014(c) ......................................................................................... 1

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Fed. R. Civ. P. 23(a) ....................................................................................... *passim*

Fed. R. Civ. P. 23(a)(1) .................................................................................... 1, 6

Fed. R. Civ. P. 23(a)(2) .................................................................................... 1, 7, 8

Fed. R. Civ. P. 23(a)(3) .................................................................................... 1, 9

Fed. R. Civ. P. 23(a)(4) .................................................................................... 1, 10, 13

Fed. R. Civ. P. 23(b) ........................................................................................ 2, 5

Fed. R. Civ. P. 23(b)(3) ................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3)(A) .............................................................................. 16

Fed. R. Civ. P. 23(b)(3)(B) .............................................................................. 16

Fed. R. Civ. P. 23(b)(3)(C) .............................................................................. 16

Fed. R. Civ. P. 23(b)(3) (D) ............................................................................. 16

Fed. R. Civ. P. 23(g) ........................................................................................ 1, 17, 18

Fed. R. Civ. P. 23(g)(1) .................................................................................... 17

Fed. R. Civ. P. 23(g)(1)(A)(i) ........................................................................... 17

Fed. R. Civ. P. 23(g)(1)(A)(ii) .......................................................................... 17

Fed. R. Civ. P. 23(g)(1)(A)(iii) ......................................................................... 17

Fed. R. Civ. P. 23(g)(1)(A)(iv) ......................................................................... 17

**Other Authorities**

7 Newberg and Rubenstein on Class Actions § 22:6 (6th ed. Nov. 2024 update) ...................... 15

7 Newberg and Rubenstein on Class Actions § 22:63 (6th ed. Nov. 2024 update) ...................... 5

Lead Plaintiff Public Employees Retirement Association of New Mexico (**"Lead Plaintiff"** or **"PERA"**), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 5:18-cv-03509-EJD (the **"Securities Action"**) pending in the U.S. District Court for the Northern District of California (the **"District Court"**), on behalf of itself and the proposed class it represents in the Securities Action (the **"Class"**), together with Claimants York County on behalf of the County of York Retirement Fund (**"York County"**), City of Warren Police and Fire Retirement System (**"City of Warren"**), and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund (**"Mid-Jersey Trucking"**) (collectively, the **"Securities Act Plaintiffs"** and, together with Securities Lead Plaintiff, the **"Securities Plaintiffs"**), hereby submit this motion (the **"Motion"**) for entry of an order, pursuant to Rules 7023 and 9014(a) and (c) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), substantially in the form submitted herewith (the **"Proposed Order"**) as Exhibit C:

- Holding that Rules 23(a)(1)-(4) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, made applicable through Bankruptcy Rule 7023, are satisfied;

- Appointing Lead Counsel as Class Counsel under Rule 23(g); and

- Certifying a proposed class (the **"Class"**) of all those who purchased or otherwise acquired the publicly traded debt or equity securities of PG&E Corporation, Pacific Gas and Electric Company, or both,[1] from April 29, 2015 through November 15, 2018 (inclusive), and who were damaged thereby and timely submitted Rescission or Damage Claims classified as Classes 9A, 10A-II, and 10B (the **"Securities Claims"**) in these proceedings (the "Chapter 11 Cases"), which Securities Claims have not otherwise been resolved.[2]

## I.    INTRODUCTION

Under Rule 23, an action may be certified for class treatment where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the

---

[1] Herein, Reorganized Debtors PG&E Corporation and Pacific Gas and Electric Company are referred to collectively as **"PG&E."**

[2] The Class claims under the Securities Exchange Act of 1934 (the **"Exchange Act"**) include those based on transactions in the PG&E securities listed in Hoffman Decl. Ex. A (Report of Chad Coffman ("Coffman Report")), Ex. 1. The Class claims under Securities Act of 1933 (the **"Securities Act"**) are limited to those based on the bond offerings listed in Third Amended Complaint (DC ECF No. 121 (the **"TAC"**)). *See* TAC ¶496 n.149. Herein, documents filed in the Securities Action, No. 5:18-cv-03509-EJD (N.D. Cal.), are referred to as "DC ECF No. ___."

class." Fed. R. Civ. P. 23(a). Where an action additionally presents "common" issues of law or fact that "predominate over any questions affecting only individual members," a class action is "superior" to other methods of adjudication and class certification is appropriate. Fed. R. Civ. P. 23(b)(3).

The resolution of the remaining Securities Claims is ideally suited for class treatment under Rule 23. *First*, the proposed Class is sufficiently numerous. *See infra* ¶III.A.1. *Second*, the resolution of the remaining Securities Claims involves countless common questions of law and fact, including: (i) whether the federal securities laws were violated by Defendants' acts; (ii) whether statements made by PG&E to the investing public during the Class Period misrepresented material facts about the business and operations of PG&E; (iii) whether the prices of PG&E's securities during the Class Period were artificially inflated because of the misconduct alleged; and (iv) whether the members of the Class have sustained damages. These questions are subject to common evidence and proof. *See infra* ¶III.A.2. *Third*, Plaintiffs' claims are "typical" of the claims of the Class because, like all other Class members, Plaintiffs purchased or otherwise acquired PG&E securities at market prices artificially inflated by Defendants' false and misleading statements and omissions. Additionally, Plaintiffs and all other Class members suffered the same injuries arising from the same misconduct – the losses incurred as a result of the revelation of the concealed truth and the resulting decline in the price of PG&E securities. *See infra* ¶III.A.3. *Fourth*, Securities Plaintiffs will "fairly and adequately" protect the interests of the Class. Plaintiffs have retained experienced counsel, including bankruptcy counsel, to represent their interests and those of the proposed Class. *See infra* ¶III.A.4.

The proposed Class also satisfies the elements of Rule 23(b)(3). Pursuant to Rule 23(b)(3), predominance is satisfied because common questions of law and fact predominate over Class members' potential individual issues. *See infra* ¶III.B.1. The elements of the claims stem from common questions of law and fact. Reliance for the claims asserted under the Exchange Act, the only possible individualized issue, is uniformly addressed through the fraud-on-the-market presumption. *See Basic Inc. v. Levinson*, 485 U.S. 224, 240-42 (1988). Finally, the class action mechanism is superior to any alternate means of dispute resolution because class certification would ameliorate a myriad of problems and inefficiencies that will arise if Securities Claimants must litigate the merits of their claims individually.

Securities Claimants, PG&E, and the Court will all benefit from the procedures and tools provided by class certification to streamline the resolution of claims that satisfy the Rule 23 requirements, as they do here. Securities Claimants' due process rights would be protected by the mechanisms of Rule 23. They will benefit from representation by counsel who have expended considerable resources to investigate the claims at issue, who have expertise in the federal securities laws, and who have retained counsel with expertise in bankruptcy procedure. PG&E would also benefit from this process because negotiations and litigation would be streamlined for the most part, saving the estate significant expense and time. Class certification would allow the estate to avoid the waste and inefficiency inherent in litigating the Securities Claims separately, including unnecessarily duplicative motion practice. Notably, class certification would also conserve judicial resources, as the Court would be primarily dealing with one set of representative claimants and one set of counsel representing the Class, including at summary judgment and the evidentiary hearing.

Thus, Securities Plaintiffs respectfully submits that the Court should certify the Class, appoint them as Class Representatives, and appoint Lead Counsel as Class Counsel

## II. RELEVANT PROCEDURAL HISTORY

On June 12, 2018, an initial complaint was filed in the related Securities Action pending in the District Court for the Northern District of California before the Honorable Edward J. Davila. DC ECF No. 1. On September 10, 2018, the District Court consolidated the Securities Action and appointed PERA as Lead Plaintiff and Labaton Keller Sucharow LLP as lead counsel for the Class. DC ECF No. 62. Pursuant to that order, on December 14, 2018, PERA filed a second amended complaint. *See* DC ECF No. 95.

On January 29, 2019, as a result of PG&E's bankruptcy filing, the Securities Litigation was automatically stayed with respect to the Company. *See* ECF No. 1; *see also* DC ECF No. 103.

On May 28, 2019, PERA, with the Securities Act Plaintiffs, filed the TAC against twenty of PG&E's then current and former directors and officers and twenty-four investment banks that underwrote the Notes Offerings (the **"Non-Debtor Defendants"**). DC ECF No. 121. On October 4, 2019 (after this Court denied PG&E's motion to extend the automatic stay to the Non-Debtor

Defendants), the Non-Debtor Defendants filed motions to dismiss the TAC. DC ECF Nos. 148, 155. Judge Davila never ruled on those motions.

On October 21, 2019, the Securities Plaintiffs timely filed proofs of claim on behalf of themselves and the putative class against PG&E, based on the claims alleged in the Securities Action. *See* Claim Nos. 69105, 71345, 72193 and 72273 (PERA); 69202 and 71310 (Mid-Jersey Trucking); 61556 and 68009 (York County); 72620 and 72200 (City of Warren).

On April 29, 2021, the District Court issued a Notice of Intent to Stay Action Pending Conclusion of Bankruptcy Proceedings and directed the parties to file submissions of their positions in response. DC ECF No. 198. On September 30, 2022, after receiving the parties' submissions, the District Court issued an Order Staying Action Pending Resolution of Chapter 11 Bankruptcy. DC ECF No. 217 (the "Stay Order"). PERA appealed. District Court ECF 218.

On July 7, 2023, the Securities Plaintiffs filed their Motion for the Application of Bankruptcy Rule 7023 and the Certification of a Class of Securities Claimants. ECF No. 13865 (the "Rule 7023 Application Motion"). On September 12, 2023, this Court rendered an oral ruling granting the Rule 7023 Application Motion, which ruling found that it "does appear to me, on the face of [the Rule 7023 Application Motion], that at least the prerequisites of Rule 7023(a) will be satisfied." Sept. 12, 2023 Hearing Trans. at 8:13-15.[3]

On May 3, 2024, the Ninth Circuit vacated and remanded Judge Davila's Stay Order. *See* Opinion at 22, *PERA v. Earley*, No. 22-16711 (9th Cir. May 3, 2024) (9th Cir. ECF No. 49-1, DC ECF No. 256).

On September 18, 2024, this Court issued a Memorandum Decision upholding all the violations of the federal securities laws pled in the TAC. *See* ECF No. 14593.

Pursuant to Judge Davila's scheduling order (DC ECF No. 282), the Non-Debtor Defendants in the Securities Action filed renewed motions to dismiss the TAC on October 24, 2024 (DC ECF Nos. 284, 286); Securities Plaintiffs filed their oppositions on December 20, 2024 (DC ECF Nos. 292, 293; and any reply briefs are due by January 31, 2024.

---

[3] The Court is well aware of the procedural history of the Securities Plaintiffs' prior class certification motions, and so Securities Plaintiffs will not address that history here.

## III. ARGUMENT

"[T]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re Mattel, Inc. Sec. Litig.*, No. 2:19-cv-10860, 2021 WL 4704578, at *3 (C.D. Cal. Oct. 6, 2021) (alteration in original)[4]; *see also In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) ("The Ninth Circuit and this District in particular have taken a liberal view of class certification motions brought in securities cases."). This is because securities class actions are best suited for class treatment. *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009) ("[C]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws."). Thus, class certification is inherently favorable for the resolution of the Securities Claims of members of the proposed Class.

A class must satisfy all four of the Rule 23(a) factors, and match at least one Rule 23(b) scenario. *See* Fed. R. Civ. P. 23(a)-(b); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (holding that the preponderance of the evidence standard applies to the inquiry); 7 Newberg and Rubenstein on Class Actions § 22:63 (6th ed. Nov. 2024 update) ("[M]ost of the prongs of class certification are easily met in most securities cases . . . ."). "'[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met.'" *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 245 (N.D. Cal. 2013) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)).

Here, the proposed Class meet the Rule 23(a) factors, and match the scenario for certification set out in Rule 23(b)(3).[5]

---

[4] Herein, internal citations and quotations are omitted.

[5] The Court may certify a class composed of Securities Claimants seeking damages based on purchases of equity and/or debt securities because of the "great identity of issues that affect both stock and bond holders." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 287 (S.D.N.Y. 2003) (certifying a class of debt and equity purchasers, even where—unlike here—the putative lead plaintiff did not purchase any debt securities).

## A. The Proposed Class Satisfies Rule 23(a)

Class certification is appropriate because the Securities Claims satisfy each of the four prerequisites set forth in Federal Rule 23(a): "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

### 1. *Numerosity*: Members of the Proposed Class Are So Numerous that Joinder of All Members is Impracticable

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members is impracticable." Here, "'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Although "'[t]here is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] . . . [j]oinder has been deemed impracticable in cases involving as few as 25 class members.'" *Gilbert v. MoneyMutual, LLC*, 318 F.R.D. 614, 621 (N.D. Cal. 2016) (alterations in original); *see also Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226 YGR, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016) (forty members presumptively numerous); *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (collecting cases certifying classes with fewer than forty members and finding that a class of 20 satisfied numerosity); *Tietz v. Bowen*, 695 F. Supp. 441 (N.D. Cal. 1987) (certifying class with 27 members).

According to PG&E's latest report, there are 596 unresolved Securities Claims, including 482 brough by claimants represented by the law firm Rolnick Kramer Sadighi LLP ("RKS" and the "RKS Claimants") and 114 unresolved non-RKS Securities Claims. *See* ECF No. 14500 at 2.[6]

"Other relevant factors a court should consider in addition to class size include judicial economy, the geographical dispersion of the class, the size of each individual claim, and the ease with which class members may be identified." *In re La. Safety Assoc. of Timbermen-Self I*, No. 17-8003, 2018 WL 4043228, at *4 (Bankr. W.D. La. Aug. 22, 2018).

---

[6] An unknown number of RKS Claimants might remain in the Class. Each RKS Claimant "has the right to make their own decisions in this matter, including with respect to class membership." ECF No. 13977 at 3 n.4; *see also Richie v. Blue Shield of Cal.*, No. C–13–2693 EMC, 2014 WL 6982943, at *15 (N.D. Cal. Dec. 9, 2014) (To satisfy the "numerosity" requirement, one "need not state the exact number of potential class members.").

Thus, the numerosity requirement is satisfied.

### 2. *Commonality*: The Proposed Class Shares Questions of Law and Fact

Rule 23(a)(2) requires a showing that "questions of law or fact" are common to the class. Rule 23(a)(2) is met where the plaintiffs demonstrate that class members "have suffered the same injury" that "is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or the purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 359 (alterations omitted).

"The commonality requirement serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Gilbert*, 318 F.R.D. at 622 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)). "Plaintiffs need not show, however, that every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons*, 754 F.3d at 675; *see also Stockwell v. City & Cnty. of S.F.*, 749 F.3d 1107, 1112 (9th Cir. 2014) ("[A] common contention need not be one that 'will be answered, on the merits, in favor of the class.' Instead, it only 'must be of such a nature that it is capable of classwide *resolution* – which means that determination of its *truth or falsity* will resolve an issue that is central to the validity of each one of the claims in one stroke.'") (emphasis in original) (quoting *Wal-Mart*, 564 U.S at 350). In securities actions, courts have recognized that "public disclosures alleged to contain material misrepresentations and omissions . . . present common questions of law and fact." *Hatamian*, 2016 WL 1042502, at *4 ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable." (quoting *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)).

Here, multiple common questions of law and fact underlie the claims at issue and span across the proposed Class.[7] Putting aside the manifest common issues that go to the merits of class claims, including every element of each Securities Claim asserted, the mere administration of these numerous similar claims presents substantial common factual and legal issues, each of which impacts claim values on a class-wide basis, including:

- Whether the federal securities laws were violated by PG&E's acts;
- Whether statements made by PG&E to the investing public misrepresented material facts about the financial condition, business, operations, and safety of PG&E;
- Whether PG&E issued materially false and misleading financial statements;
- Whether PG&E omitted material facts about their business and operations from statements issued to investors;
- Whether PG&E acted with actual knowledge of falsity or recklessly in issuing false and misleading financial statements for the Exchange Act claims;
- Whether the prices of PG&E securities were artificially inflated because of the Company's alleged violations of the securities laws;
- Whether some or all of PG&E's false and misleading misstatements or omissions maintained PG&E's artificially inflated securities prices;
- Whether the Securities Claimants have sustained damages and, if so, the proper measure of damages; and
- The application of the Plan's terms related to claim valuation, including the term "Allowed HoldCo Rescission or Damage Claim" (*see* Plan §1.109, ECF No. 8053-1).

The above are common questions of law and fact, any of which is sufficient to satisfy Rule 23(a)(2). These common questions establish commonality. *See In re Lyft Sec. Litig.*, No. 19-cv-02690, 2021 WL 3711470, at *3 (N.D. Cal. Aug 20, 2021) (whether the registration statement "contained untrue statements of material fact or omitted to disclose material facts, whether public sources of information could have revealed the purportedly untrue statements or omissions, and whether Defendants violated the Securities Act . . . are sufficient [questions] to satisfy" commonality); *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig*, No. CV 11-1768 PSG, 2013 WL 5789237, at *4 (C.D. Cal. Oct. 25, 2013) (where "members of the Class were all allegedly injured by the same misstatements and omissions in the Offering Documents . . . there are numerous common questions

[7] PG&E conceded as much by suggesting that all Securities Claimants may adopt PERA's class action complaint. ECF No. 13791.

Case: 19-30088 Doc# 14674 Filed: 12/23/24 Entered: 12/23/24 16:07:02 Page 14 of 25

of law or fact that can be resolved on a classwide basis"); *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017) (commonality satisfied where investors "suffered similar losses as a result" of "the same misleading registration statement").

Notably, in opposing the Securities Plaintiffs' prior motion for class certification, PG&E did not challenge commonality. *See* Reorganized Debtors' Objection to Securities Plaintiffs' Motion for the Application of Bankruptcy Rule 7023 and the Certification of a Class of Securities Claimants, dated July 25, 2023 (ECF No. 13922).

Thus, the commonality requirement is satisfied.

### 3. *Typicality*: The Securities Plaintiffs' Claims Are Typical of the Proposed Class's Claims

Rule 23(a)(3) requires that the class representative's claims or defenses be "typical" of the claims or defenses of the prospective class. Under Rule 23(a)(3)'s "permissive standards" for typicality, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Typicality "[is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *see also In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2014 WL 722408, at *3 (N.D. Cal. Feb. 25, 2014) (typicality met where "claims are based upon the same course of events as the claims of all class members, and all claims are based on the same theories and will be proven by the same evidence").

Here, Securities Plaintiffs' claims and injuries are typical of those of the Class. In particular, PERA has Securities Claims based on both equity and debt, and is a claimant in Plan Classes 9A, 10A-II, and 10B. *See* Claim Nos. 69105 & 71345. Securities Act Plaintiffs all filed debt claims and are members of Class 9A and Class 10B. Securities Act Plaintiff City of Warren additionally filed

equity claims and is also a member of Plan Class 10A-II. *See* Claim Nos. 69202, 71310 (Mid-Jersey Trucking); Claim Nos. 61556, 68009 (York County); Claim Nos. 72620, 72200 (City of Warren).

Accordingly, Securities Plaintiffs' claims and injuries are "reasonably co-extensive" with those of all members of the proposed Class. *See Parsons*, 754 F.3d at 685; *see also Melendres v. Arpaio*, 784 F.3d 1254, 1261-64 (9th Cir. 2015) (holding that representative parties with a direct and substantial interest may present claims on behalf of others with similar but not identical interests, provided they otherwise meet the Rule 23(a) factors); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, No. MDL 2672, 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017) (holding, in the securities context, that "*Melendres* clearly forecloses [d]efendants' argument that [a class representative] lacks standing to represent other putative class members who purchased bonds in different tranches or offerings").

Further, because all Securities Claims filed pursuant to the Extended Bar Date are based on the claims in Securities Plaintiffs' putative class action complaint, their typicality was cemented for the independent reason that they are best positioned to be making "similar legal arguments to prove the defendant's liability." *Rodriguez*, 591 F.3d at 1124 (9th Cir. 2010).

Thus, the typicality requirement is satisfied.

### 4. *Adequacy of Representation*: The Securities Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Proposed Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The test for adequacy of representation for the class is two-pronged: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988)); *see also Rodriguez*, 591 F.3d at 1125 ("Whether the class representatives satisfy the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."); *In re Death Row Records, Inc.*, Adversary No. 10-ap-02574, 2012 WL 952292, at *16 (B.A.P. 9th Cir. Mar. 21, 2012) ("In

determining whether the interests of a class will be adequately represented, the court must determine that the class representative does not have an interest antagonistic to the class; and, that the class counsel must be qualified, experienced and able to conduct the litigation.").

### a. The Securities Plaintiffs and Their Counsel Have No Conflicts with the Proposed Class of Securities Claimants

The Securities Plaintiffs are committed to safeguarding the best interests of the proposed Class[8] and have no known actual or potential conflicts of interest—and indeed, no interests antagonistic to—the other Securities Claimants. In fact, their interests are directly aligned. *See* Claim Nos. 69105, 71345 (PERA claims); Claim Nos. 69202, 71310 (Mid-Jersey Trucking); Claim Nos. 61556, 68009 (York County); Claim Nos. 72620, 72200 (City of Warren). As members of Classes 9A and 10B, PERA and the Securities Act Plaintiffs are squarely incentivized to prosecute debt-based Securities Claims in Plan Classes 9A and 10B to recover the greatest amount of actual damages, to be paid in full in cash. As members of Plan Class 10A-II, PERA and City of Warren are equally incentivized to prosecute equity-based Securities Claims in Plan Class 10A-II to recover the greatest amount of actual damages for stockholder victims, to be paid in stock pursuant to the formula under the confirmed Plan. *See* ECF No. 8053-1 (Plan) §§4.12, 4.14, and 4.32.

Securities Plaintiffs purchased PG&E's equity and/or debt securities and are asserting claims resulting from the same public statements and/or omissions as Securities Claimants in the bankruptcy proceeding. Indeed, Securities Plaintiffs have proven their willingness and ability to take an active role in the Chapter 11 Cases to protect the interests of all Securities Claimants.

Moreover, Securities Plaintiffs have engaged qualified, experienced, and capable attorneys with excellent track records in prosecuting complex securities class actions and complex litigation throughout the United States, such as this litigation. PERA's chosen counsel, Labaton Keller Sucharow LLP ("Labaton"), together with Securities Act Plaintiffs' retained counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as detailed further *infra*, have fairly and more than adequately represented the interests of the class to date. Furthermore, Securities Plaintiffs retained and have supervised the qualified, experienced, and capable bankruptcy counsel of

---

[8] *See* Declaration of Thomas G. Hoffman, Jr. ("Hoffman Decl."), filed herewith, Exs. B-E (declarations of PERA, City of Warren, York County, and Mid-Jersey Trucking).

1 Lowenstein Sandler LLP and the Michelson Law Group, whose expertise in complex bankruptcy

2 proceedings, especially in the context of investor-related claims, is well known to this Court.

### b. The Securities Plaintiffs and Their Counsel Will Prosecute the Securities Claims Vigorously on behalf of the Class

The Securities Plaintiffs and their counsel have demonstrated their willingness and ability to

5 serve as class representatives and class counsel. They have already vigorously advocated for the

6 rights of all Securities Claimants, including in these Chapter 11 Cases since their outset.

Specifically, in addition to conducting an investigation and drafting pleadings in the

8 Securities Action, they have: (i) defeated PG&E's Section 105 motion for preliminary injunction;

9 (ii) led efforts that resulted in an extension of the bar date for thousands of class member claimants

10 whose claims would otherwise have been time barred; (iii) defeated the Tort Claimants Committee

11 motion for standing to transform, assume, and otherwise co-opt Securities Claims – which would

12 have diverted recoveries away from the shareholder and bondholder members of Classes 9A, 10A-

13 II, and 10B; (iv) successfully opposed PG&E's attempt to require Securities Claimants to file

14 extensive pleadings supporting their Securities Claims; (v) briefed and defeated PG&E's sufficiency

15 objection against the TAC; (vi) prepared this motion for class certification; and, (vii) have served

16 (and begun to negotiate the scope of) discovery on PG&E and third parties to support the putative

17 Class's claims. Further, proposed Class Counsel were principally responsible for the extensive

18 negotiations right up to Plan confirmation, which provided a significant benefit to Securities

19 Claimants, by working directly with PG&E, Plan Proponents, and Mediator Judge Newsome.

This track record demonstrates that the Securities Plaintiffs and their counsel are ready and

21 able to resolve the pertinent class-wide issues, identified herein, fairly and adequately. As their

22 actions demonstrate, the Securities Plaintiffs and their counsel have committed considerable

23 resources to representing the interests of Securities Claimants. The hard-fought proceedings to date

24 establish there is no reason to doubt that the Securities Plaintiffs and their counsel will continue to

25 do so on behalf of the proposed Class.

In sum, the Securities Plaintiffs are well-suited to represent the Securities Claimants, have

27 no antagonistic interests, and have suffered injuries substantially similar to all others. They have

demonstrated the willingness and ability to advocate tirelessly on behalf of the Securities Claimants, and "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4).

Thus, the adequacy requirement is satisfied, and the Court should appoint the Securities Plaintiffs as class representatives and Labaton and Robbins Geller as class counsel.[9]

### B. The Proposed Class Satisfies Rule 23(b)(3)

Once the elements of Rule 23(a) are satisfied, a proposed class plaintiff must satisfy one subsection of Rule 23(b). Here, the proposed class satisfies subsection (b)(3) of Rule 23, which permits certification where:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

As set forth below, the "predominance" and "superiority" criteria are satisfied.

#### 1. Predominance Is Satisfied

##### a. Predominance Is Satisfied with Respect to the Exchange Act Claims

The elements of the Securities Claims brought under the Exchange Act are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Erica P. John Fund, Inc. v. Halliburton, Inc.*, 563 U.S. 804, 810 (2011) ("*Halliburton I*"). The Supreme Court has held that the issues of whether a defendant knowingly and/or recklessly made public material misstatements and/or omissions (*i.e.*, materiality, falsity, and scienter) and whether the revelation(s) of the alleged fraud proximately caused that company's stock price to decline (*i.e.*, loss causation) involve common questions of law and fact that predominate over individualized ones. *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 555 (2013; *Halliburton I*. 563 U.S. at 812-13.

---

[9] The law firm resumes for proposed Class Counsel and bankruptcy counsel are attached to the Hoffman Declaration, filed herewith.

13

"Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." *See id*. at 810. Plaintiffs can establish class-wide reliance (and satisfy their burden of proving predominance) by invoking the "fraud-on-the-market" presumption of reliance, which the Supreme Court adopted in *Basic*, 485 U.S. 224. Plaintiffs may invoke the fraud-on-the-market presumption based on the facts that PG&E securities traded in an efficient market and, in that market, the price of PG&E securities reflected all publicly available information about the company. For these reasons, all purchasers and acquirers of PG&E securities are uniformly presumed to have relied on all available public information. *Amgen*, 568 U.S. at 458; *see Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014) *(Halliburton II)* ("Even the foremost critics of the efficient-capital-markets hypothesis acknowledge that public information generally affects stock prices."). Because all Class members invoke the fraud-on-the-market presumption, there are no individual reliance issues to be considered here. *See Basic,* 485 U.S. at 241-242.

Four factors must be satisfied to invoke the *Basic* presumption of reliance: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton II*, 573 U.S. at 268. Plaintiffs establish these four factors allowing the presumption to apply. Plaintiffs allege that Defendants' misrepresentations were made publicly and that they were material. *See* TAC ¶¶188-316. All Class members "traded [PG&E] stock between the time the misrepresentations were made and when the truth was revealed." *Id.* For the reasons stated below, PG&E stock traded in an efficient market.

Where, as here, a company's stock trades on an open and developed exchange, courts need not conduct any further analysis to determine whether market efficiency exists. *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989). Here, PG&E was widely traded on the NYSE—a developed exchange—which alone establishes market efficiency. Moreover, according to Plaintiffs' expert, Chad Coffman, PG&E securities satisfy the *Basic* factors and, thus, traded in an efficient market. Coffman Report ¶8. This includes PG&E common stock (*see* Coffman Report ¶¶26-80), as well as certain bonds (*see id.* ¶¶83-123) and preferred stock (*see id.* ¶¶125-129); *see also LendingClub*, 282 F. Supp. 3d at 1184 (proof of damages not a prerequisite to class certification).

14

**b.    Predominance Is Satisfied with Respect to the Securities Act Claims**

Class treatment is even easier to show for the Securities Act claims because the elements of those claims are a subset of the elements for the Exchange Act claims. A plaintiff can make out a *prima facie* case for a Securities Act claim "simply by alleging a material misrepresentation or omission." 7 Newberg and Rubenstein on Class Actions § 22:6 (6th ed. Nov. 2024 update). Scienter and reliance are not elements of Securities Act claims. *See id.* (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) ("If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements.")); *see also Hildes v. Arthur Anderson LLP*, 734 F.3d 845, 859 (9th Cir. 2013). Indeed, for class certification purposes, the Supreme Court has consistently found that falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified. *Amgen*, 568 U.S at 468, 475 (stating "this Court has held that . . . the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified" because "the element of materiality would end the case for one and for all"). Further, Damages are set by statute, 15 U.S.C. §77k(e), and can be determined on a class-wide basis. In any event, damage calculations alone cannot defeat certification. *In re Sandisk LLC Sec. Litit.*, No. 15-cv-01455, 2018 WL 4293336, at *2 (N.D. Sept. 4, 2018) (damages calculations alone cannot defeat certification) (citing *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016)).

Certification under this subsection is also appropriate when common questions predominate and "the amounts at stake for individuals may be so small that separate suits would be impracticable" (*Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 616 (1997)), which is likely true for many if not most of the absent class members who have not yet resolved their Securities Claims. Further, Securities Act damages are set by statute, 15 U.S.C. §77k(e), and can be determined on a class-wide basis. In any event, damage calculations alone cannot defeat certification. *Sandisk*, 2018 WL 4293336, at *2 (citing *Vaquero*, 824 F.3d at 1155).

15

### 2. Superiority Is Satisfied

The second requirement of Rule 23(b)(3) is also satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In determining whether the "superiority" requirement is met, courts consider four factors:

1. "the class members' interests in individually controlling the prosecution or defense of separate actions";

2. "the extent and nature of any litigation concerning the controversy already begun by or against class members";

3. "the desirability or undesirability of concentrating the litigation in [a] particular forum"; and

4. "the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3)(A)-(D). Here, each factor weighs strongly in favor of class certification. Indeed, "[a]s the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'" *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) (quoting *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996)).

The first factor is satisfied because many Securities Claimants likely have small claims, and the expense of retaining counsel to negotiate, and if necessary litigate, is likely prohibitive. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (recognizing that class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate individually," and that "most of the plaintiffs would have no realistic day in court if a class action were not available").

The second and third factors are satisfied because this Court is the only possible forum for claims against PG&E.

Finally, the fourth factor (*i.e.*, manageability) is satisfied because it essentially involves the same inquiry as that in which the Court engaged when exercising its discretion to apply Rule 23 (*see generally* ECF No. 14023 (Bankr. Hr'g Tr., Sept. 12, 2023))—and that inquiry should be answered in the affirmative for the same reasons here.

Case: 19-30088    Doc# 14674    Filed: 12/23/24    Entered: 12/23/24 16:07:02    Page 22 of 25

### C. Damages are Easily Determined on a Class-Wide Basis

While, proof of damages is not a prerequisite to class certification, the class-proof requirement is easily established. *See LendingClub*, 282 F. Supp. 3d at 1184. The damages calculation for the Exchange Act claims does not present individual issues that predominate over Class-wide considerations. *In re Banc of Cal. Sec. Litig.*, 326 F.R.D 640, 651 (C.D. Cal. 2018). Plaintiffs intend to prove damages and economic loss through the "out-of-pocket" method of damages (*i.e.*, "that damages are equal to the artificial inflation in the share price at the time of purchase minus the artificial inflation per share at the time of sale"). *See* Coffman Report ¶145. The out-of-pocket method is a widely accepted method of measuring damages in Exchange Act cases. *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, No. 17-cv-00554-YGR, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) ("Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action.") (citing *SanDisk* 2018 WL 4293336, at *2). For the reasons set forth in the Coffman Report, Plaintiffs clearly demonstrate that damages can be calculated on a class-wide basis.

For the separately pled Securities Act clams, damages are calculated by statutory formula and are easily calculated here. *See* Coffman Report ¶¶145-152.

Thus, Rule 23(b)(3) is satisfied, and class certification is appropriate here.

### D. The Court Should Appoint Labaton and Robbins Geller as Class Counsel Under Rule 23(g)

Labaton and Robbins Geller should be appointed as class counsel pursuant to Rule 23(g). Fed. R. Civ. P. 23(g)(1) ("a court that certifies a class must appoint class counsel"). When appointing class counsel, a court "must consider" the following factors: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Both Labaton and Robbins Geller have performed substantial work in connection with these Chapter 11 Cases, have substantial experience handling class actions asserting claims of this type,

have committed and will continue to commit substantial resources to representing the proposed Class, and have worked vigorously to prosecute the Securities Claims. *See* Section ¶III.A.4, *supra*. In appointing Labaton as Lead Counsel, this Court already made a preliminary (and proper) determination that Labaton will fairly and adequately protect the interests of the putative Class. *See* ECF Nos. 14283, 14300. Separately, Robbins Geller has substantially contributed to these matters including efforts to oppose dismissal of the Securities Act claims against PG&E. For these reasons, Labaton and Robbins Geller will fairly and adequately represent the Class and should be appointed Class Counsel pursuant to Rule 23(g).

## IV. CONCLUSION

For the foregoing reasons, the Court should exercise its discretion to apply Rule 23 to the Securities Claims and certify a class of Securities Claimants.

Dated: December 23, 2024

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

By: */s/ Michael P. Canty*
Michael P. Canty (*pro hac vice*)

*Lead Counsel to Securities Lead Plaintiff and the Class*

- and –

**MICHELSON LAW GROUP**

*Local Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

- and -

**LOWENSTEIN SANDLER LLP**

*Special Bankruptcy Counsel to Securities Lead Plaintiff and the Class*

- and -

**ADAMSKI, MORISKI, MADDEN, CUMBERLAND & GREEN LLP**

18

*Liaison Counsel for the Class*

- and -

**ROBBINS GELLER RUDMAN & DOWD LLP**

*Counsel for the Securities Act Plaintiffs*

- and -

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**

*Additional Counsel for the Securities Act Plaintiffs*

19